# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | ) | MDL NO. 1657 |
| | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION: L |
| | ) | |
| | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| ALL MEDICAL MONITORING | ) | |
| CLASS ACTION COMPLAINTS | ) | MAGISTRATE JUDGE KNOWLES |
| PENDING OR SUBJECT TO | ) | |
| TRANSFER TO MDL 1657 | ) | |
| | ) | |
| | ) | |
| | ) | |

**MERCK'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS IN
PLAINTIFFS' MEDICAL MONITORING MASTER CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      PLAINTIFFS ASK THIS COURT TO IGNORE BINDING CASELAW
        THAT PROHIBITS CERTIFICATION OF THE PROPOSED MEDICAL
        MONITORING CLASS ................................................................................. 2

II.     THERE IS NO REASON TO WAIT FOR THE NEW JERSEY
        SUPREME COURT'S RULINGS IN SINCLAIR OR ENGINEERS
        BEFORE RULING ON CLASS CERTIFICATION ........................................... 6

III.    NO MATTER HOW MUCH DISCOVERY PLAINTIFFS UNDERTAKE
        OR WHAT EXPERTS THEY RETAIN, THEY WILL NOT BE ABLE
        TO SATISFY THE REQUIREMENTS OF RULE 23 ....................................... 9

CONCLUSION ................................................................................................................ 16

-i-

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ayers v. Jackson*
  525 A.2d 287 (N.J. 1987).................................................................. 12

*Barnes v. American Tobacco Co.*
  161 F.3d 127 (3d Cir. 1998)............................................................... 5

*Bower v. Westinghouse Elec. Corp.*
  522 S.E.2d 424 (W. Va. 1999)........................................................... 12

*Burns v. Jaquays Mining Corp.,*
  752 P.2d 28 (Ariz. Ct. App. 1987) .................................................. 12

*Castano v. Am. Tobacco*
  84 F.3d 734 (5th Cir. 1996)........................................................... 2, 3

*Day v. NLO*
  851 F. Supp. 869 (S.D. Ohio 1994).................................................. 13

*Hansen v. Mountain Fuel Supply Co.*
  858 P.2d 970 (Utah 1993)................................................................ 13

*In re Baycol Prods. Liab. Litig.*
  218 F.R.D. 197 (D. Minn. 2003)................................................. 12, 14

*In re Copley Pharma., Inc.*
  161 F.R.D. 456 (D. Wyo. 1995)..................................................... 5, 6

*In re Diet Drugs Prods. Liab. Litig.*
  1999 WL 673066 (E.D. Pa. Aug. 26, 1999) .................................... 4, 5

*In re Diet Drugs Prods. Liab. Litig.*
  2000 WL 1222042 (E.D. Pa. Aug. 28, 2000)...................................... 5

*In re Norplant Contraceptive Prods. Liab. Litig.*
  955 F. Supp. 700 (E.D. Tex. 1997) ................................................. 12

*In re Paxil Litig.*
  212 F.R.D. 539 (C.D. Cal. 2003) .................................................... 10

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*
  208 F.R.D. 625 (W.D. Wash. 2002).................................................. 11

*In re Prempro Prods. Liab. Litig.*
  230 F.R.D. 555 (E.D. Ark. 2005)...........................................3, 12, 14

*In re Propulsid Prods. Liab. Litig.*
  208 F.R.D. 133 (E.D. La. 2002) ............................................... 2, 3, 5

i

## TABLE OF AUTHORITIES

### (continued)

Page

*In re Telectronics Pacing Systems, Inc.*
172 F.R.D. 271 (S.D. Ohio 1997) ................................................................. 3, 4

*In re Vioxx Products Liability Litigation*
239 F.R.D. 450 (E.D. La. 2006)................................................................. passim

*Int'l. Union of Operating Eng'rs. Local #68 Welfare Fund v. Merck & Co., Inc.*
894 A.2d 1136 (N.J. Super. Ct. App. Div. 2006)......................................... 7

*Lewallen v. Medtronic USA, Inc.*
2002 WL 31300899 (N.D. Cal. Aug. 28, 2002)............................................ 16

*Petito v. A.H. Robins Co.*
750 So. 2d 103 (Fla. App. 1999) ................................................................. 12

*Perez v. Metabolife Int'l, Inc.*
218 F.R.D. 262 (S.D. Fla. 2003) .......................................................3, 13, 14

*Potter v. Firestone Tire & Rubber Co.*
863 P.2d 795 (Cal. 1993) ............................................................................ 12

*Redland Soccer Club v. Dept. of the Army*
696 A.2d 137 (Pa. 1997)............................................................................. 12

*Rink v. Cheminova, Inc.*
203 F.R.D. 648 (M.D. Fla. 2001) ............................................................... 14

*Rowe v. Hoffman-LaRoche, Inc.*
No. A-19-06, Slip. Op. (N.J. Mar. 29, 2007) ............................................. 7

*Silzone Heart Valve Prods. Liab. Litig. v. St. Jude Med. Inc. (In re St. Jude Med., Inc.)*
425 F.3d 1116 (8th Cir. 2005)..................................................................... 15

*Sinclair v. Merck & Co., Inc.*
913 A.2d 832 (N.J. App. 2007) ................................................................... 9

*Thompson v. Merck & Co.*
2004 U.S. Dist. LEXIS 540 (E.D. Pa. Jan. 6, 2004)................................... 9

## Rules

Fed. R. Civ. P. 23(c)(1).................................................................................. 5

Rule 23(b)(1), (b)(2), and (b)(3).................................................................... 3

Rule 23(f) ....................................................................................................... 6

865635v.1

**TABLE OF AUTHORITIES**

**(continued)**

**Page**

## Other Authorities

Report of the Judicial Conference Committee on Rules of Practice and Procedure (September 2002) ................................................................................................................. 5

## INTRODUCTION

Plaintiffs' Opposition To Merck's Motion To Strike The Class Allegations In Plaintiffs' Medical Monitoring Class Action Complaint ("Plaintiffs' Opposition" or "Pls.' Opp.") appears to argue that Merck's motion is both too late and too early.  On the one hand, plaintiffs ask why Merck waited so long to file the motion.  According to plaintiffs, Merck's decision to file a motion to strike 17 months after filing its motion to dismiss is "oddly staged."  (Pls.' Opp. at 2.)  On the other hand, plaintiffs argue that Merck's motion is too early – that the Court should wait until the New Jersey Supreme Court issues rulings in three pending cases (one of which was ruled on last week) before ruling on Merck's motion here.

As set forth below, plaintiffs' arguments are all without merit.  Merck filed its Motion to Strike on the heels of this Court's order denying class certification of plaintiffs' personal injury claims because that decision, taken together with the Fifth Circuit's ruling in *Castano* and this Court's ruling in *Propulsid*, effectively closes the door on certification of a Vioxx-related medical monitoring class.  Moreover, plaintiffs' suggestion that this Court cannot rule on class certification until the New Jersey Supreme Court has resolved the appeals pending in the *Engineers*, *Rowe* and *Sinclair* cases (one of which has since been ruled on) makes no sense.  In fact, the questions at issue in those actions will have absolutely no effect on the propriety of class certification here because no matter how those cases are resolved, class action treatment will remain inappropriate in this case.  Not only is there binding, relevant caselaw precluding class certification of product liability classes like this in the Fifth Circuit, but every federal court to consider analogous product liability medical monitoring class actions has recognized that these cases are simply not certifiable.  Accordingly, plaintiffs' claim that further fact and expert discovery is necessary before this Court can properly determine whether plaintiffs' medical

monitoring class may be certified is simply a delay tactic.  The pleadings themselves reveal that plaintiffs' claims will involve highly individualized questions regarding each class member's Vioxx use, exposure to warnings, and need for the monitoring sought, and no amount of discovery will change that result.

For these reasons, and for all the reasons set forth in Merck's opening brief, the Court should strike the class action allegations in plaintiffs' Medical Monitoring Master Complaint ("MM Compl.").[1]

## ARGUMENT

### I.      PLAINTIFFS ASK THIS COURT TO IGNORE BINDING CASELAW THAT PROHIBITS CERTIFICATION OF THE PROPOSED MEDICAL MONITORING CLASS.

As Merck explained in its opening brief, this Court has already determined that a nationwide personal injury class of Vioxx users cannot be certified – and has at least implicitly barred single-state class actions as well.  *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 461 (E.D. La. 2006).  In reaching this conclusion, the Court relied both on the legal variations among the claims of class members who reside in different states and the factual variations that make certification of even single-state classes inappropriate.  The Court's conclusion was in accord with the Fifth Circuit's ruling in *Castano v. Am. Tobacco*, 84 F.3d 734, 741 (5th Cir. 1996), this Court's own opinion in *In re Propulsid Prods. Liab. Litig*, 208 F.R.D. 133, 145 (E.D. La. 2002), and a host of decisions from courts around the country rejecting certification of medical

---

[1]      Merck's motion to strike is not intended to supersede its pending Motion to Dismiss Medical Monitoring Class Action Complaint, which explains that the majority of states at issue in plaintiffs' master complaint do not recognize – or have explicitly rejected – medical monitoring claims under these circumstances.  For these reasons, the Medical Monitoring Complaint should be dismissed in its entirety.  However, in the event that the Court chooses not to dismiss plaintiffs' claims altogether, Merck also asserts that this Court's recent order denying certification of plaintiffs' personal injury claims – as well as other binding, relevant case law – clearly preclude class certification in

2

monitoring class actions, **both on grounds of legal variations and factual variations**.  *See, e.g.*, *Castano*, 84 F.3d at 741 (noting, in addition to manageability problems posed by nationwide class proposal, that plaintiffs' tobacco class action was not certifiable due to variations in exposure and knowledge of risk); *Propulsid*, 208 F.R.D. at 145 (denying certification of a prescription drug medical monitoring class because, *inter alia*, "variations involving proof of causation, the effect of warnings, the significance of defendants' direct marketing to consumers, and other similar issues may swamp any common issues and defeat cohesiveness"); *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 570 (E.D. Ark. 2005) (denying certification of a medical monitoring class of women who took estrogen replacement therapy because of variations in state law, individualized issues related to specific causation, and the lack of a recommendation within the medical community that women using the therapy receive monitoring); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 270 (S.D. Fla. 2003) (denying statewide class certification of medical monitoring claims against the manufacturer of a dietary supplement under Rule 23(b)(1), (b)(2), and (b)(3) because virtually none of the requirements of Rule 23 were satisfied).

Against this overwhelming weight of authority, including binding Fifth Circuit precedent, plaintiffs cite three lone district court cases from other circuits in an attempt to suggest that their medical monitoring claims may proceed as a class action.  However, these cases are decidedly in the minority and have been criticized repeatedly by other federal courts.

First, *In re Telectronics Pacing Sys., Inc.*,172 F.R.D. 271 (S.D. Ohio 1997) (Pls.' Resp. at 10-11), is not relevant to the Court's inquiry here because the defendant manufacturer in that

---

these circumstances.  If the Court grants Merck's Motion to Strike, it will effectively dispose of plaintiffs' proposed class action without requiring a ruling on the Motion to Dismiss.

865635v.1

case had already acknowledged that medical monitoring was necessary, and the class sought

certification simply to alter the medical monitoring already in place. *Id.* at 286. This unique

procedural posture played an integral role in the court's decision to certify medical monitoring

subclasses. According to the court:

> [Defendant] acknowledges that all implantees require medical monitoring. The critical questions are whether the present monitoring program is adequate and whether [defendant] will be required to continue it. Thus, most variations in state law regarding medical monitoring are immaterial.

*Id.* at 287. For the same reasons, the court found that factual variations did not preclude

certification; after all, the court did not have to decide whether the implantees were at a

"significantly increased risk" of injury "as a result of" the defendant's conduct. Instead, the class

trial there would center only on "issues common for all of the negligence and strict liability

claims" including whether the defendant "negligently designed or manufactured" the products at

issue "or whether [the defendants' products] are defective." *Id.* at 288. For this reason, the court

itself concluded that the "controversy appears to be the ***exception to the general rule that***

***medical products liability actions require extensive proof of individualized issues***." *Id.*

(emphasis added).

Next, plaintiffs' reliance on *In re Diet Drugs Prods. Liab. Litig.*, No. Civ. A 98-20626,

1999 WL 673066, at *17 (E.D. Pa. Aug. 26, 1999) (Pls.' Resp. at 11-12), as an example of a

successful medical monitoring class certification is similarly unpersuasive for several reasons.

As a threshold matter, plaintiffs fail to note that the *Diet Drugs* decision was a "conditional"

class certification ruling, a procedure which is now barred by the Federal Rules. In *Diet Drugs*,

the court declared that it would "conditionally certify" a class and establish subclasses dependent

on whether the elements of medical monitoring and/or the underlying legal action differ

4

significantly.  *Id.* at *16.  The court did this without any consideration of the variations in state laws and requested briefing on such variations at a later date.  *Id.*

The *Diet Drugs* court's use of conditional certification to defer the consideration of variations in state law renders the case wholly inapposite.  As this Court has recognized, "[c]onditional certification of a class action involving multiple state laws without analyzing the effect of this variation on the manageability of the trial is not permitted in the Fifth Circuit." *Propulsid*, 208 F.R.D. at 147.  Moreover, conditional class certification is now expressly prohibited by the Federal Rules of Civil Procedure.  *See* Report of the Judicial Conference Committee on Rules of Practice and Procedure at 12 (September 2002), *available at* http://www.uscourts. gov/rules/reports.htm (explaining that deletion of "conditional certification" language from Rule 23(e) is intended "to avoid the unintended suggestion, which some courts [had] adopted, that class certification may be granted on a tentative basis, even if it is unclear that the rule requirements are satisfied").  *See also* Fed. R. Civ. P. 23(c)(1), 2003 advisory comm. note ("A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.").

The *Diet Drugs* certification order also lacks persuasive authority because the case settled and thus was never reviewed on appeal.  *See In re Diet Drugs Prods. Liab. Litig.*, Nos. 1203, 99-20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000).  The Third Circuit's ruling in *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 146 (3d Cir. 1998), rejecting a medical monitoring tobacco class action, leaves little doubt that the trial court's ruling in *Diet Drugs* would have been overturned had it been subject to appellate review.  *See id.* ("In order to prove the [medical monitoring] program he requires, a plaintiff must present evidence about his individual smoking history and subject himself to cross-examination by the defendant about that history.  This element of the

5

medical monitoring claim therefore raises many individual issues.").

Plaintiffs' third and final case, *In re Copley Pharma., Inc.*, 161 F.R.D. 456 (D. Wyo. 1995) (Pls.' Resp. at 10), is similarly inapposite. In *Copley*, the court admitted that it was deviating from the great weight of authority in certifying a product liability medical monitoring class action. *See* 161 F.R.D. at 466. Moreover, *Copley* was decided before the availability of interlocutory review for class certification under Rule 23(f) and thus does not reflect increased appellate guidance on class certification issues after 1998. In any event, the factual variations at issue in *Copley* pale in comparison to those at play here. *Copley* did not involve alleged failure-to-warn based on a drug's potential side-effects; rather, *Copley* involved claims based on contaminated batches of Albuterol and many individual issues were eliminated because the defendant admitted that "some of its product was contaminated and that it is liable for any resulting injuries." *Id.* at 461.

In sum, not one of plaintiffs' key cases was decided in this Circuit or even by another Court of Appeals, none of the cases was tested on appeal, and all three have been at least implicitly criticized in this Circuit. Because plaintiffs' class certification proposal is barred by binding Fifth Circuit precedent and contrary to a long line of analogous cases from courts around the country (including several courts of appeals) rejecting product liability pharmaceutical class actions, there is no prospect of certification here, and the Court should grant Merck's motion to strike.

## II. THERE IS NO REASON TO WAIT FOR THE NEW JERSEY SUPREME COURT'S RULINGS IN *SINCLAIR* OR *ENGINEERS* BEFORE RULING ON CLASS CERTIFICATION.

Plaintiffs' argument that Merck's motion to strike is "premature" and should not be considered until the *Engineers*, *Rowe*, and *Sinclair* cases are resolved by the New Jersey

6

865635v.1

Supreme Court (Pls.' Resp. at 13-16), merely seeks to delay the inevitable.  There is no merit to plaintiffs' assertion that the New Jersey Supreme Court's rulings in these cases will affect the question whether this Court can certify the proposed class here, and the only even potentially relevant ruling has now been issued.  As set forth below:  (1) the New Jersey Supreme Court has already issued its opinion in *Rowe*, concurring with this Court that New Jersey tort law cannot be applied to out-of-state plaintiffs; (2) this Court has rejected the choice-of-law approach taken by the New Jersey Appellate Division in *Engineers* in the context of the personal injury class actions; and (3) the question before the New Jersey court in *Sinclair* – whether actual injury is a required element of a medical monitoring claim brought under New Jersey law – has no bearing on whether the medical monitoring claims asserted here can be resolved through common, classwide proof.

*First*, the New Jersey Supreme Court has already issued its ruling in *Rowe v. Hoffman-LaRoche, Inc.*, No. A-19-06, Slip. Op. (N.J. Mar. 29, 2007), agreeing with this Court's position that New Jersey law does not apply to out-of-state plaintiffs' failure-to-warn claims.  According to the *Rowe* decision, the New Jersey Appellate Division was incorrect in holding that New Jersey's interest in applying its own law to the claims of plaintiffs outside the state outweighed the interest of the plaintiff's home state in protecting its citizens.  *Id*. at 20.  Specifically, the court held that "[t]o allow a life-long Michigan resident who received a FDA-approved drug in Michigan to by-pass his own state's law and obtain compensation for his injuries in [New Jersey's] courts completely undercuts Michigan's interests, while overvaluing [New Jersey's] true interest in this litigation."  *Id*.  As a result, the *Rowe* decision supports this Court's ruling in *In re Vioxx* that New Jersey law does not apply to the personal injury claims of non-New Jersey Vioxx users and that legal variations among the claims of plaintiffs from different states

therefore preclude class certification.  239 F.R.D. at 458.

      ***Second***, the outcome of *Int'l. Union of Operating Eng'rs. Local #68 Welfare Fund v. Merck & Co., Inc.*, 894 A.2d 1136 (N.J. Super. Ct. App. Div. 2006), will have no impact on whether class certification is appropriate in this case.  *Engineers* is currently on appeal to the New Jersey Supreme Court to determine if New Jersey's consumer fraud law can be applied to plaintiffs outside that state.  The New Jersey Supreme Court's decision in *Engineers* – whatever the result – will be entirely irrelevant to this case because the Court has already held that the substantive law of plaintiffs' home states should apply to tort claims like those asserted here.  *In re Vioxx*, 239 F.R.D. at 458.  Notably, in so holding, this Court actually distinguished *Engineers* and outlined the reasons why that case was not relevant to the Court's choice-of-law analysis.

      Specifically, the Court found that while a ruling in *Engineers* will be relevant to  this Court's consideration of the Purchase Claims Master Class Action Complaint, it would not affect the choice-of-law inquiry in personal injury cases.  *Id.*  This is due to the fact that in consumer fraud cases, "the primary purpose of the tort rule involved is to deter or punish misconduct" and therefore the place where the conduct occurred has peculiar significance.  *Id.*  In contrast, the Court found, "in personal injury cases the focus shifts to compensation and therefore the place of injury has peculiar significance."  *Id.*  Thus, the Court found that the properly applicable law in personal injury cases is the law of the state where each plaintiff consumed Vioxx and alleges injury from it.

      The same reasoning applies to the medical monitoring class actions as well.  The *Sinclair* action cited by plaintiffs and currently pending in New Jersey will allow New Jersey to adequately deter future conduct warranting medical monitoring.  Moreover, medical monitoring laws are designed to compensate individuals harmed by a particular product or exposure – not to

punish the wrongdoer. Therefore, *Engineers* is irrelevant here, and the Court should not wait for the ultimate resolution of that case to rule on plaintiffs' proposed class.

   **Third**, the issue before the New Jersey Supreme Court in *Sinclair* – whether, as a matter of New Jersey law, plaintiffs may survive a motion to dismiss on a claim for medical monitoring absent any allegation that they have suffered actual physical injury – is similarly irrelevant to the certification analysis here. *See Sinclair v. Merck & Co., Inc.*, 913 A.2d 832, 842 (N.J. Super. Ct. App. Div. 2007). If the New Jersey Supreme Court grants Merck's pending application for review, the court will be ruling only on the required elements of a New Jersey medical monitoring action – not the requirements for class certification or the question whether highly individualized medical monitoring claims may be fairly resolved through class proceedings. Moreover, because the New Jersey Supreme Court's recent decision in *Rowe* confirms that New Jersey law cannot be applied to out-of-state plaintiffs, even if the court finds that New Jersey medical monitoring law does not require a showing of present injury, that decision will only apply to plaintiffs residing in New Jersey. In short, regardless of how the court rules, plaintiffs here cannot satisfy the requirements for class certification because their nationwide class would be overridden by legal variations and their alternative single-state classes would be overridden with factual variations. Thus, the New Jersey Supreme Court's decision in *Sinclair* (assuming it grants Merck's petition for review) will shed no light on Merck's motion here.

**III.   NO MATTER HOW MUCH DISCOVERY PLAINTIFFS UNDERTAKE OR WHAT EXPERTS THEY RETAIN, THEY WILL NOT BE ABLE TO SATISFY THE REQUIREMENTS OF RULE 23.**

   Finally, plaintiffs' proposed approach – *i.e.*, deferring consideration of class certification issues until after a "factual record" has been developed in this case – would waste the parties' and courts' resources (Pls.' Resp. at 24) because "[n]o amount of additional class discovery

9

[would] alter" the fact that plaintiffs' claims do not meet the Rule 23 certification requirements. *Thompson v. Merck & Co.*, No. 01cv1004, 2004 U.S. Dist. LEXIS 540, at *8-9 (E.D. Pa. Jan. 6, 2004).

This Court has already made clear that Vioxx-related claims cannot be resolved through class treatment because of factual variations. *See In re Vioxx*, 239 F.R.D. at 461-62. Specifically, the Court held that class certification of the personal injury cases was inappropriate because, *inter alia*, the claims turn on:

> what Merck knew about the risks of the alleged injury when the patient was prescribed Vioxx; what Merck told physicians and consumers about those risks in the Vioxx label and other media, what the plaintiffs' physicians knew about these risks from other sources, and whether the plaintiffs' physicians would still have prescribed Vioxx had stronger warnings been given.

*Id.* at 461.

The very same factual variations (and others) bar certification of plaintiffs' medical monitoring claims as well. For example:

***(a) Evidence Of Actual Injury, Where Required, Will Require Plaintiff-Specific Evidence.*** As set forth in Merck's pending Motion to Dismiss, many states allow medical monitoring claims to proceed only where plaintiffs allege an injury caused by Vioxx prior to suing in tort. (*See, e.g.*, Mot. to Dismiss at 20 (Connecticut bars claims for medical monitoring absent an allegation of present injury); *id.* at 22 (District of Columbia courts "have never recognized a claim for medical monitoring absent an allegation of injury"); *id.* at 28 (under Kansas law, "medical monitoring is, at most, additional form of relief available to a tort plaintiff who alleges a present injury"); *id.* at 35 (Michigan has "expressly and unequivocally rejected 'medical monitoring' claims absent actual injury"). Merck asserts that the Court should dismiss the majority of plaintiffs' claims on this basis. (*See id.* at 12-14.) However, if the Court

10

should choose to allow plaintiffs' claims to proceed, it will be necessary for plaintiffs in these states to prove that they have already suffered a present injury as a result of using Vioxx.  Such a showing will necessarily require proof of specific causation, including the details of the specific injury alleged, as well as information relating to each class member's Vioxx use, family history, and preexisting medical risk factors.  *See In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003) ("Not only do individual physiologies affect the causation issues, but so too do the underlying illnesses and medical history of each individual plaintiff.")  Plaintiffs are unable to dispute that claims requiring such a showing of specific causation cannot be appropriately certified as a class action.  *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 632 (W.D. Wash. 2002) (denying class certification of product liability claims in part because "[a]n assessment of specific causation . . . necessarily dissolves into a myriad of individualized causation inquiries").

*(b) Evidence Relating To Merck's Allegedly Wrongful Conduct Will Be Highly Individualized*.  As set forth in Merck's Motion to Strike (*see* Mot. to Strike at 15-17), all states that have recognized medical monitoring as a cause of action or form of relief require plaintiffs asserting medical monitoring claims to make some type of showing that the defendant actually engaged in some wrongful conduct.[2]  In their Complaint, plaintiffs explicitly claim that the wrongful act at issue in this case is Merck's alleged misrepresentation of "the safety and effectiveness of Vioxx" as well as Merck's alleged concealment of "material adverse information regarding the safety and effectiveness of Vioxx from consumers and health care providers." (MM Compl. ¶ 171.)  Tacitly admitting that these failure-to-warn allegations cannot be proven

---

[2]       Though each state's medical monitoring laws require a showing of some wrongdoing on the part of a defendant, the nature of that showing varies from state to state.  (*See* Mot. to Strike at 15 n.5.)

11

through common evidence, plaintiffs now attempt to convince the Court that they need not show that Merck failed to warn class members or their physicians in order to prevail on their medical monitoring claims.  Instead, plaintiffs argue that they may prove wrongful conduct merely by showing, for example, that Merck "misrepresented its clinical studies to the FDA or New England Journal of Medicine to further its sales of Vioxx."  (Pls.' Resp. at 27.)  However, this argument ignores the fact that nowhere in plaintiffs' claims for relief do they allege that they are entitled to medical monitoring as a result of Merck's conduct with regard to the FDA or New England Journal of Medicine.  It is also contrary to law since plaintiffs cannot base their claims on isolated "common" conduct, ignoring the fact that plaintiffs or their physicians could have been aware of the alleged risks of Vioxx from other sources.  *See In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 711 (E.D. Tex. 1997) ("when the prescribing physician was aware of the possible side effects of a drug, yet, chose to use it regardless of the adequacy of the warning, then as a matter of law, the adequacy of the warning was not a producing cause of the plaintiff's injury").

Because, as set forth in Merck's motion to strike, court after court (including this one) has held that failure-to-warn claims cannot be proven on a classwide basis, *see, e.g.*, *In re Vioxx*, 239 F.R.D. at 461 (Mot. to Strike at 16); *In re Baycol Prods. Liab. Litig.*, 218 F.R.D. 197, 208 (D. Minn. 2003) (Mot. to Strike at 16); *In re Prempro*, 230 F.R.D. at 570 (Mot. to Strike at 16), plaintiffs' class claims should be stricken for this reason too.

*(c) Exposure To Vioxx Will Vary From Class Member To Class Member.*  In order to prevail on their medical monitoring claims in the states that have recognized such a cause of action, plaintiffs will generally be required to show that they were significantly exposed to a

12

865635v.1

hazardous substance.[3]  (*See* Mot. to Strike at 17-22.)  While plaintiffs argue that significant

exposure is always common to putative class members in a prescription drug case because "there

are 'no background levels' for prescription medication" (Pls.' Mot. at 29), court after court has

disagreed, finding that the "significant exposure" elements "will require individualized

determinations" such as "whether each class member had actually ingested this product" and

whether the level of exposure was actually "dangerous or hazardous" to each class member.

*Perez*, 218 F.R.D. at 271 (S.D. Fla. 2003).  Indeed, as Merck noted in its opening brief, plaintiffs

themselves have admitted that each Vioxx user's exposure to the drug – and risk of injury – will

vary according to his or her dose, as well as the length and frequency of use.  (*See* MM Compl. ¶

144 (noting that individuals "who have ingested Vioxx ***continuously for six consecutive weeks***

***or greater*** are at a significantly increased risk" of injury) (emphasis added).)[4]  As a result, each

putative class member's exposure to Vioxx will necessarily vary according to whether, how

long, and at what dose he or she actually took the drug.

---

[3]    Once again, the precise nature of this element and its application vary from state to state.  For example, while Florida and Pennsylvania require "exposure greater than normal background levels," *see Petito v. A.H. Robins Co.*, 750 So. 2d 103,106 (Fla. App. 1999); *Redland Soccer Club v. Dept. of the Army*, 696 A.2d 137, 145 (Pa. 1997), Arizona, California, and New Jersey simply note that "significance and extent of exposure" are relevant to medical monitoring claims.  *See Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 33 (Ariz. Ct. App. 1987); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 823 (Cal. 1993); *Ayers v. Jackson*, 525 A.2d 287, 312 (N.J. 1987).  Further, West Virginia requires a plaintiff to have been "significantly exposed."  *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 432-33 (W. Va. 1999).  In addition, Ohio and Utah do not expressly require significant exposure, but obviously some elevated exposure level is warranted for a finding of liability.  *See Day v. NLO*, 851 F. Supp. 869, 881 (S.D. Ohio 1994) (no exposure language at all);  *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 979 (Utah 1993) ("exposure" required).

[4]    Plaintiffs' claim that "discovery will show that the six-weeks' use criterion is a reasonable factor to identify class members for whom monitoring is  appropriate" (Pls.' Resp. at 31), only reinforces the notion that the significance of each class member's exposure and risk of injury cannot be resolved on a classwide basis.  Plaintiffs' proposed class includes "all persons residing in the United States who took Vioxx ***in any dose at any time***" while the drug was on the market.  (MM Compl. ¶5.)  However, plaintiffs now appear to admit that monitoring is appropriate only as to those class members who took the drug continuously for six weeks or more.  As a result, in order to prove their entitlement to medical monitoring, each class member would necessarily have to prove that he or she actually ingested Vioxx on a continuous basis for at least six weeks.  These individualized showings would further overwhelm any common issues at trial.

865635v.1

***(d) Increased Risk Of Injury Must Be Shown Individually As To Each Class Member.***

In order to prevail on their medical monitoring claims, plaintiffs in states that recognize medical monitoring but do not require present injury will, at the least, be required to make some showing that each proposed class member suffered a "significantly increased risk" of injury as a result of his or her exposure to Vioxx.[5]  (*See* Mot. to Strike at 19.)  Plaintiffs attempt to persuade the Court that they can prove this element on a class-wide basis merely by presenting expert testimony "to determine the percentage of risk caused by the defendant's conduct."  (Pls.' Resp. at 30.)  However, plaintiffs are unable to rebut the long line of cases holding that class certification of medical monitoring claims is inappropriate because each medical monitoring plaintiff must make an individualized showing that he or she actually suffered increased risk as a result of using a product.  For example, in *Perez*, the court specifically noted that the "significantly increased risk" requirement is "particularly unsuitable for class treatment" because it "requires essentially proof of proximate causation:  each Plaintiff must demonstrate that the use of [the drug] significantly increased the risk of contracting a serious latent disease."  218 F.R.D. 271.  "Given the vast differences in individual class members" and their medical histories, the court noted that it would be "unmanageable in the framework of a class action" to determine whether each plaintiff experienced increased risk.  *Id*. at 272.  *See also In re Prempro*, 230 F.R.D. at 570 (E.D. Ark. 2005) (denying certification of class of prescription drug users because even "[a]ssuming Plaintiffs could prove that the increased risk of latent disease is generally caused by Prempro," members of the class must still "prove that Prempro increased the risk of disease in each particular Plaintiff"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 661 (M.D.

---

[5]      Again, though most states that recognize medical monitoring require some level of significantly increased risk, the specific quantum of evidence that is required varies from state to state.  (*See* Mot. to Strike at 19 n.8.)

14

Fla. 2001) ("Whether a putative class member has a significantly increased risk of contracting a serious latent disease . . . is not at all a common issue . . . and would necessarily depend upon the varied circumstances of the class members' exposure and other factors which may increase risk of disease."). As a result, plaintiffs' suggestion that they can prove increased risk as to all class members generally through expert proof alone has no merit.

> **(e) Each Class Member's Evidence Of Need For Monitoring Will Also Vary.** Most states that recognize medical monitoring as a cause of action also require plaintiffs to make some showing that they have a need for monitoring beyond that which would be recommended in the absence of exposure.[6] Plaintiffs claim that this element is a "factual matter that will be the subject of expert opinions" and is therefore "inappropriate for resolution on a motion to strike." (Pls.' Resp at 32.) However, courts are clear that class certification of medical monitoring claims is inappropriate because "each plaintiff's need (or lack of need) for medical monitoring is highly individualized." *Silzone Heart Valve Prods. Liab. Litig. v. St. Jude Med. Inc. (In re St. Jude Med., Inc.)*, 425 F.3d 1116, 1122 (8th Cir. 2005). As plaintiffs well know, many of the proposed class members will have risk factors for cardiovascular injuries separate and apart from their use of Vioxx that would require regular exams and screenings for heart-related injuries. Contrary to plaintiffs' assertions, no amount of expert discovery showing that "central procedure[s] in the medical monitoring program" are not "routinely administered to the vast majority of patients" (Pls.' Resp. at 33), will lead to the conclusion that not one single class member would have been recommended and/or received roughly the same monitoring requested here. It is common knowledge, for example, that electrocardiograms, which plaintiffs have

---

[6]    As set forth in Merck's Motion to Strike, state laws vary as to what plaintiffs must prove in order to establish that the monitoring they seek is necessary. (Mot. to Strike at 20 n. 9.)

specifically identified as part of their proposed medical monitoring plan (MM Compl. ¶ 149), are widely and commonly used to monitor patients with elevated risk of cardiovascular injury.

In sum, plaintiffs may not succeed on their claims unless they can show that each member of the putative class would not have required the monitoring requested absent his or her use of Vioxx.  Such a fact-specific showing would further overwhelm any common issues at trial.

*(f) Merck's Affirmative Defenses Will Necessarily Require Individualized Inquiry*.  As set forth in the Motion to Strike, class certification is also inappropriate in this case because of the inherently fact-specific nature of Merck's affirmative defenses, including, among others, the learned intermediary defense, assumption of the risk, and statute of limitations.  (Mot. to Strike at 22.)  In their Opposition, plaintiffs offer absolutely no argument to rebut the fact that medical monitoring classes are especially unsuited for certification where defendant's "various affirmative defenses require individualized proof." *Lewallen v. Medtronic USA, Inc.*, No. C 01-20395, 2002 WL 31300899, at *4 (N.D. Cal. Aug. 28, 2002).  Thus, plaintiffs essentially admit that Merck's affirmative defenses will require individualized proof not workable in a class action format.  As a result, their class claims should be stricken for this reason as well.

## CONCLUSION

Plaintiffs attempt to persuade the Court that their medical monitoring claims may proceed on a classwide basis by ignoring binding precedent rejecting classes like the one proposed here and instead relying on a few inapposite and/or widely criticized cases from other jurisdictions. As this Court has already made clear in denying plaintiffs' motion to certify their personal injury claims, however, Vioxx cases are highly individualized and turn in large part on the specific circumstances of each plaintiff's Vioxx use, exposure to information regarding Vioxx, and

16

preexisting cardiovascular risk factors.  Plaintiffs' medical monitoring claims are no different, and no amount of discovery will make them so.

For these reasons and those set forth in Merck's opening brief, the Court should nip plaintiffs' class proposal in the bud and strike their medical monitoring claims without the need to undertake class discovery.

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

17

865635v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 2d day of April, 2007.

_/s/ Dorothy H. Wimberly_
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

18