## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION : | |
| | SECTION: L |
| | |
| | JUDGE FALLON |
| ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ | MAG. JUDGE KNOWLES |

**THIS DOCUMENT RELATES TO:**
*Randall Smith v. Merck & Co., Inc., et al.,*
**No. 2:07-cv-700 (previously 4:06-cv-01717-CEJ EDMO USDC)**

### FIRST AMENDED COMPLAINT

COME NOW the Plaintiff, by and through his undersigned attorney, and for his Petition against Defendant Merck & Co., Inc., ("Merck"), allege as follows:

1.      This action is brought by Plaintiff seeking damages for personal injuries and economic damages suffered as a result of a defective and dangerous pharmaceutical product, Vioxx, which was manufactured, marketed, distributed and/or sold by Merck & Co. Inc., hereafter "Merck".

### PARTIES

2.      Plaintiff Randall Smith, a resident of the State of Minnesota, was sold Vioxx in the State of Minnesota.  His thrombotic cardiovascular event was caused or significantly contributed to be caused by her usage of Vioxx.  As more particularly pleaded below, Plaintiff maintains that Vioxx is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

3.      The Defendant, Merck & Co. Inc., ("Merck"), is a foreign corporation, which is in good standing with the State of Missouri, having its principal place of business at One Merck Drive, White House Station, New Jersey 08889.  At all times relevant hereto, Defendant Merck

was and continues to be engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical drug, Vioxx, in Missouri and throughout the United States.

4.     Merck is a Delaware Corporation licensed and registered to do business in Missouri and can be served through its registered agent: The Corporation Company, 120 South Central Avenue, Clayton, MO 63105.

## JURISDICTION AND VENUE

5.     As a direct and proximate result of the acts and omissions of Merck, Plaintiff has sustained permanent and devastating injuries.  These injuries have caused, and will continue in the future to cause, extensive pain and suffering, emotional distress, loss in Plaintiff's ability to enjoy life; lost wages and future lost wages, and the expenditure, past and future, of substantial sums of money for medical, hospital, and related care, all to the Plaintiff's general damages in a sum in excess of seventy-five thousand dollars, ($75,000.00).

6.     This Court has jurisdiction pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, and because there is complete diversity of citizenship between the Plaintiff and Merck.

## FACTUAL BACKGROUND

7.     Vioxx is the brand name of rofecoxib, one of a class of drugs called "prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis and muscle pain. Prostaglandins are COX (cyclooxygenase) inhibitors; COX enzymes metabolize arachidonic acid to produce prostaglandins.

8.      Vioxx is a COX-2 inhibitor, which is designed to produce prostaglandins at inflammatory sites, and to produce prostacyclin, a vasodilator and an inhibitor of platelet aggregation.

9.      Defendant Merck submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA"), on November 23, 1998, for tablets, at doses of 12.5mg and 25mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrheal. This application was denoted NDA 21-042 by the FDA.

10.     Defendant Merck also submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the FDA on November 23, 1998, for oral suspension, at doses of 12.5mg/mL and 25mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrheal. This application was denoted NDA 21-052 by the FDA.

11.     On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 (hereafter the "NDA"), for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrheal.

12.     At the time the drug was approved by the FDA the labeling for rofecoxib stated, in the section entitled "Special Studies – Upper Endoscopy in Patients with Osteoarthritis," "Treatment with Vioxx 25 mg daily or 50 mg daily was associated with a significantly lower percentage of patients with endoscopic gastroduodenal ulcers than treatment with ibuprofen 2400mg daily. However, the studies cannot rule out at least some increase in the rate of endoscopic gastroduodenal ulcers when comparing VIOXX to placebo."

3

13.     The "Warnings" section of the labeling for rofecoxib, at the time the drug was approved by the FDA, contains a section, "Gastrointestinal (GI) Effects – Risk of GI Ulceration, Bleeding, and Perforation."

14.     Defendant Merck submitted NDA-007 with the goal of establishing a gastrointestinal ("GI") safety claim for rofecoxib. In conjunction with the NDA, Defendant Merck performed the Vioxx GI Outcomes Research (VIGOR) Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-0966 or Naproxen in Patients With Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was performed from January 6, 1999, through March 17, 2000.

15.     The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MK-0966 50mg daily compared to patients in the group taking naproxen 1000 mg/day," and (2) "study the safety and tolerability of MK-0966 in patients with rheumatoid arthritis."

16.     In industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and stroke.  Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today, *Spin War Aside, Lessons Emerge From COX-2 Trials*, in August 2000, page 3.

17.     Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping profits obtained through its non-disclosure and concealments.  Merck engaged in a massive advertising and sampling program and gained continued increases in the market

share, which enhanced Merck's financial stability to the detriment of its consumers. As a result of Merck's scheme, it reaped more than $2 billion in profit in the year 2000 alone, and appropriated approximately 23 percent share of the market.

18.     Merck continued to profit from its scheme by withholding information from the Plaintiff, the consuming public, and the healthcare industry.  For example, in November of 2000, Merck caused the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption.

19.     On, or about, August 29, 2001, the Journal of the American Medical Association (JAMA) published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukhisjee, et al., showing that Merck had concealed that the relative risk of developing a confirmed adjudicated thrombotic cardiovascular event (defined in the article as myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks) among Vioxx users in Merck's trials, including VIGOR, at a 95% confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients. *See* Mukhisjee, D., et al., *Risk of Cardiovascular Events Associated With Selective Cox-2 Inhibitors*, J.A.M.A. 286:8, 954-959, Aug. 22/29, 2001. In addition, the annualized myocardial infarction rates for Vioxx users compared to placebo revealed a statistically significant increase among Vioxx users.

20.     In the JAMA study, the authors stated that by decreasing PGI2 production, Vioxx may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PGI2, potentially leading to an increase in thrombotic cardiovascular events. In a follow-up peer-

reviewed study reported in the Journal of the American College of Cardiology on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the COX-2 inhibitor tips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased vascular and thrombotic events.   Bing, R., & Lomnicka, M., *Why Do Cyclo-Oxygenase-2 Inhibitors Cause Cardiovascular Events?*, J.A.C.C., 39:3, Feb. 6, 2002. This is further supported by studies completed at the University of Pennsylvania. Cheng, Y., et al., *Role of Prostacyclin in the Cardiovascular Response to Thromboxane A2*, Journal of Science, V. 296:539-541, Apr. 19, 2002.

21.    On September 17, 2001, Thomas W. Abrams, R.Ph., MDA Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin, President and CEO of Defendant Merck, relating to "promotional activities and materials for the marketing of Vioxx (rofecoxib) tablets."

22.    The Warning Letter stated that Defendant Merck had "engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx."  The letter stated:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have a four to five fold increase in myocardial infarctions (MI's) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naproxen (naproxen).

23.    The eight (8) page Warning Letter outlines, in detail, the conduct of Defendant Merck that supports the FDA's issuance of the Warning Letter, and makes the following "**Conclusions and Requested Actions:**"

> The promotional activities and materials described above minimize the potentially serious Cardiovascular findings that were observed in the VIGOR study, minimize the Vioxx / Coumadin drug interaction, omit crucial risk information

associated with Vioxx therapy, contain unsubstantiated comparative claims, and promote unapproved uses. On December 16, 1999, we also objected to your dissemination of promotional materials for Vioxx that misrepresented Vioxx's safety profile, contained unsubstantiated comparative claims, and lacked fair balance.

Due to the seriousness of these violations, and the fact that your violative promotion of Vioxx has continued despite our prior written notification regarding similar violations, we request that you provide a detailed response to the issues raised in this Warning Letter on or before October 1, 2001.

This response should contain an action plan that includes a comprehensive plan to disseminate corrective messages about the issues discussed in this letter to the audiences that received these misleading messages. This corrective action plan should also include:

a.      Immediately ceasing all violative promotional activities, and the dissemination of violative promotional materials for Vioxx.

b.      Issuing a "Dear Healthcare provider" letter to correct false or misleading impressions and information.  This proposed letter should be submitted to us for review prior to its release.  After agreement is reached on the content and audience, the letter should be disseminated by direct mail to all healthcare providers who were, or may have been exposed to the violative promotion.

c.      A written statement of your intent to comply with "1" and "2" above.

24.     On April 11, 2002, the FDA approved a supplemental application for the use of Vioxx for rheumatoid arthritis, adding this indication to the previously approved indications for osteoarthritis and pain. The FDA also approved new labeling, a "Dear Doctor" letter, and a new patient package insert. The labeling and the "Dear Doctor" letter contained information concerning the results of the VIGOR study.

25.     The revised labeling further states that the administration of Vioxx 50mg was associated with a higher incidence of gastrointestinal symptoms.

26.     Further, the "Dear Doctor" letter, approved in conjunction with the revisions to the Vioxx labeling, outlines the changes to the Vioxx labeling.

27.     The revised "Patient Information" sheet does not add any information about the results of the VIGOR study.

28.     The "Patient Information" sheet is the only written document that is provided to a patient for whom Vioxx is prescribed.

29.     Both the initial labeling and the revised labeling are ineffective because they do not properly advise physicians and patients of the potential gastrointestinal side effects of Vioxx.

30.     Despite knowledge of the ineffectiveness of the warnings, and despite knowledge that Vioxx may cause serious gastrointestinal side effects, Defendant Merck has concealed and/or suppressed the dangers associated with Vioxx, and continues to market the drug in the United States and abroad.  In its 2001 Annual Report, for example, Defendant Merck states:

> The Company also noted that a number of federal and state lawsuits, involving individual claims as well as purported class actions, have been filed against the Company with respect to Vioxx….The lawsuits include allegations regarding gastrointestinal bleeding and cardiovascular events.  The Company believes that these lawsuits are completely without merit and will vigorously defend them.

31.     Further, in its January 23, 2001, 8-K filing with the Securities and Exchange Commission, Merck fails to mention the cardiac and cardiothrombotic findings of the VIGOR study:

> "Our results reflect the strength of our growth strategy," Mr. Gilmartin said.  "Our five key products, VIOXX, ZOCOR, COZAAR/HYZAAR*, FOSAMAX AND SINGULAIR, drove Merck's performance for the year and created a powerful platform for growth."  These products accounted for 57% of Merck's worldwide human health sales for 2000 and 61% for the fourth quarter.

> "Each of the five medicines offers unique competitive advantages," Mr. Gilmartin said. VIOXX, a once-a-day medicine, is the only COX-2 indicated in the United States both for osteoarthritis and acute pain.  Since its extraordinarily successful 1999 launch, VIOXX has become the world's fastest growing branded prescription arthritis medicine, and it is already Merck's second largest-selling medicine. In the United States, VIOXX now accounts for approximately 50 percent of new prescriptions in the COX-2 class, despite being second to market

in this class in the United States. VIOXX achieved $2.2 billion in sales for the full year 2000, with $700 million in the fourth quarter.

A Food and Drug Administration (FDA) Advisory Committee meeting is scheduled for Feb. 8 to review labeling changes Merck has requested based on the strong results of the VIGOR Study. This 8,000-patient gastrointestinal outcomes research study, in which VIOXX reduced the risk of serious gastrointestinal complications by half compared to the NSAID naproxen, was published in November in THE NEW ENGLAND JOURNAL OF MEDICINE. Another study, presented in November, showed that VIOXX significantly reduced moderate-to-severe acute pain after dental surgery to a greater degree compared to codeine combined with acetaminophen.

32.     Despite the foregoing, Defendant Merck has continued to represent to consumers that Vioxx is safe, and that any cardiovascular and/or cardiothrombotic side effects are not associated with the drug. Merck has also downplayed any potential gastrointestinal side effects of the drug, promoting it as safer as and more efficacious than other medications approved for treatment of similar conditions.

33.     Pursuant to prescriptions received from his treating physicians, the Plaintiff regularly purchased and ingested Vioxx for various periods of time. The Plaintiff now suffer from heart attacks, strokes, TIAs, coronary artery disease, atherosclerosis, blood clots, and/or other diseases caused by the use of Vioxx.

34.     Vioxx is primarily prescribed to reduce pain from inflammation.  However, the Defendant failed to conduct sufficient research in manufacturing and marketing Vioxx to determine the severity of the drug's potential side effects.  Defendant also withheld adverse reports, or gave incorrect information about such reports; they had received about side effects such as heart attacks and strokes.  As a result of Defendant's failure and the undisclosed defects of Vioxx, the Plaintiff have sustained heart attacks, strokes, TIAs, and/or other ill-effects. Plaintiff was not aware of, and reasonably could not have discovered, the dangerous nature of Vioxx.

35.     Defendant Merck & Company, Inc., is a New Jersey corporation with its principal place of business located in New Jersey.  Merck is engaged in the business of producing, marketing and distributing pharmaceutical products for sale to the general public and is the manufacturer of Rofecoxib, distributed under the brand name Vioxx.  Merck conducts business in the State of Missouri, and at all times relevant hereto, it developed and sold the pharmaceutical drug Vioxx in the State of Missouri.

36.     Plaintiff did not know of the potential connection between the use of Vioxx and his injuries until after the FDA issued its recommendation, on September 30, 2004, that Vioxx be removed from the market.

### FRAUDULENT CONCEALMENT

37.     Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of the facts as alleged herein by Merck.  Plaintiff and his physicians have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiff could not reasonably have discovered the dangerous nature of, and unreasonable adverse side effects associated with, Vioxx prior to September 30, 2004.

38.     Merck is and was under a continuing duty to disclose the true character, quality, and nature of Vioxx to the Plaintiff and his physicians.  Because of its concealment of the true character, quality and nature of these drugs, Merck is estopped from relying on any statute of limitations defense.

**CAUSES OF ACTION**

**COUNT I**

**STRICT PRODUCTS LIABILITY/ DEFECTIVE DESIGN**

39.     Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

40.     Defendant Merck designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Vioxx which it knew would be used by Plaintiff and others.

41.     At the time Vioxx was manufactured and sold to Plaintiff by Merck, it was defective in design and unreasonably dangerous, subjecting users to risks of heart attacks, strokes, and other illnesses which exceeded the benefits of the products, and for which other safer products were available. This defective condition made the product unreasonably dangerous when put to a reasonably anticipated use as treatment for pain relief, which was the use for which Vioxx was advertised.

42.     Alternatively, when the Vioxx products were manufactured and sold to Plaintiff by Defendant, the products were defective in design and formulation, making use of the product more dangerous than other drugs for pain relief.

43.     Plaintiff used Vioxx in a manner reasonably anticipated.

44.     The Vioxx sold to the Plaintiff reached the Plaintiff without substantial change. Plaintiff was unaware of the dangerous propensities of the product until well after their use and subsequent thrombotic cardiovascular event requiring hospitalization. The Plaintiff ingested the Vioxx without making any changes or alterations to the drug.

45.     As a direct and proximate result of the defective and dangerous design of the Vioxx, Plaintiff has been damaged.

46.     Defendant's conduct was done with conscious disregard for the safety of users of Vioxx, including Plaintiff.

WHEREFORE, the Plaintiff prays judgment in his favor and against Merck in a sum in excess of the jurisdictional requirement of this Court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT II

## STRICT PRODUCTS LIABILITY/FAILURE TO WARN

47.     Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

48.     The Vioxx manufactured, supplied, and sold by Merck was unaccompanied by proper and adequate warnings regarding all adverse side effects associated with the use of Vioxx, and the comparative severity and duration of the adverse effects.  The warnings given by Merck did not accurately reflect the symptoms, type, scope, or severity of the side effects.

49.     The Vioxx manufactured, supplied, and sold by Merck was an unreasonably dangerous defective product, which posed unacceptable risks to human health when put to a reasonably anticipated use by Plaintiff who was without knowledge of its dangerous characteristics.

50.     Merck failed to perform adequate testing and study Vioxx prior to marketing it, or properly analyze and warn based upon its VIGOR study.  Such adequate testing, study or analysis of the VIGOR would have shown that Vioxx possessed serious life threatening side

effects, with respect to which full and proper warnings accurately and fully reflecting symptoms, type of illness, scope and severity should have been given with respect to the use of Vioxx.

51.     Merck also failed to act properly on adverse event reports it received about Vioxx, and failed to properly study Vioxx pre-market, as well as post-market, and analyze and follow up on its VIGOR study as well as other studies.

52.     Merck also failed to effectively warn users and physicians that numerous other methods of pain relievers, including Ibuprofen, Naproxen, and/or Mobic were safer.

53.     Merck failed to give adequate post-marketing warnings or instructions for the use of Vioxx because after Merck knew or should have known of the risk of injury from Vioxx use, Merck failed to provide adequate warnings to users or consumers and continued to aggressively promote the product to doctors, hospitals, and directly to consumers.

54.     Plaintiff used Vioxx in a manner reasonably anticipated.

55.     As a direct and proximate result of Defendant's selling Vioxx without adequate warnings, as well as the other conduct mentioned in this Count, Plaintiff have been damaged.

56.     Merck's conduct was done with conscious disregard for safety.

WHEREFORE, the Plaintiff pray judgment in his favor and against Merck in a sum in excess of the jurisdictional requirement of this Court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT III

### NEGLIGENT DESIGN

57.     Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

58.     Defendant Merck designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Vioxx which it knew would be used by Plaintiff and others.

59.     At the time the Vioxx was manufactured and sold to Plaintiff by Merck, it was defective in design and unreasonably dangerous, subjecting users to risks of heart attacks, strokes, blood clots, and other illnesses which exceeded the benefits of the product, and for which other safer products were available.

60.     Alternatively, when the Vioxx product was manufactured and sold to the Plaintiff by Defendant, the product was defective in design and formulation, making use of the product more dangerous than other drugs for pain relief.

61.     The Vioxx sold to Plaintiff reached the Plaintiff without substantial change. Plaintiff was unaware of the dangerous propensities of the product until well after his use and subsequent thrombotic cardiovascular events. Plaintiff ingested the Vioxx without making any changes or alterations.

62.     In designing and manufacturing Vioxx, Merck failed to exercise the ordinary care that a careful and prudent drug manufacturer would exercise in the same or similar circumstances.

63.     As a direct and proximate result of the negligent design of the Vioxx, Plaintiff has been damaged.

64.     Merck's conduct was done with conscious disregard for the safety of users of Vioxx, including Plaintiff.

WHEREFORE, the Plaintiff prays judgment in his favor and against Merck in a sum in excess of the jurisdictional requirement of this Court; for costs herein incurred;  for such other

and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT IV

## NEGLIGENT FAILURE TO WARN

65.     Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

66.     Merck owed Plaintiff a duty to warn of any dangerous defects or side effects; a duty to assure its product did not cause users unreasonable and dangerous risks, reactions, side effects; and a duty to provide adequate post-market surveillance and warnings as it learned of Vioxx's substantial dangers.

67.     Merck breached its duty of reasonable care to Plaintiff in that Merck failed to:

    a.  Conduct sufficient testing which, if properly performed, would have shown that Vioxx had serious side effects, including heart attacks, strokes, hypertension, atherosclerosis, blood clots, and other serious side effects, and warn users of those risks;  and/or

    b.  Include adequate warnings with the Vioxx products that would alert users to the potential risks and serious side effects the drugs; and/or

    c.  Warn the Plaintiff that use of Vioxx carried a risk of death or permanent disability from heart attacks, strokes, blood clots, other cardiovascular disorders and other serious side effects;  and/or

    d.  Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Vioxx; and/or

    e.  Provide Plaintiff with other appropriate warnings.

68.     Merck should have known that Vioxx caused unreasonably dangerous risks and serious side effects of which the general public would not be aware.  Merck nevertheless advertised, marketed and promoted its product knowing there were safer methods and products for pain control.

15

69.     As a direct and proximate result of Merck's negligence and breaches of its duty of reasonable care, Plaintiff has been damaged.

WHEREFORE, the Plaintiff prays judgment in his favor and against Merck in a sum in excess of the jurisdictional requirement of this Court;  for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT V

## BREACH OF IMPLIED WARRANTY

70.     Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

71.     When Defendant placed the Vioxx into the stream of commerce, Defendant knew of the use for which the supplement was intended and impliedly warranted to consumers including Plaintiff that the use of Vioxx was a safe and acceptable means of relieving pain and impliedly warranted that the product was of merchantable quality and safe for its intended use.

72.     Plaintiff relied upon Defendant and its judgment when they purchased and utilized Vioxx.

73.     The Vioxx was not of merchantable quality and was not safe or fit for its intended use because it was unreasonably dangerous and incapable of satisfying the ordinary purpose for which it was intended, and because it caused serious injury to Plaintiff.

74.     As a direct and proximate result of the dangerous and defective condition of the Vioxx, Plaintiff suffered a thrombotic cardiovascular event, and they incurred economic damages in the form of medical expense.

16

75.     Plaintiff is entitled to recover from Defendant for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, loss of the capacity to enjoy life, lost past and future income and incurred expense.

WHEREFORE, the Plaintiff prays judgment in his favor and against Merck in a sum in excess of the jurisdictional requirement of this Court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT VI

## BREACH OF EXPRESS WARRANTY

76.     Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

77.     At all relevant times, Defendant expressly warranted to Plaintiff by statements made by Defendant or its authorized agents, orally or in written publications, package labels, and/or inserts, that the Vioxx was safe, effective, fit, and proper for its intended use. The express warranties include, but were not limited to:

78.     Vioxx is used in adults for:

    a.  relief of the pain and inflammation (swelling and soreness) of osteoarthritis (arthritis from wear and tear on your bones and your joints);

    b.  relief of the pain and inflammation of rheumatoid arthritis in adults (arthritis caused by a condition where your immune system attacks your joints);

    c.  management of short-term pain;

    d.  treatment of menstrual pain (pain during women's monthly periods); and,

    e.  treatment of migraine headache attacks with or without aura.

17

79.     In utilizing Vioxx, Plaintiff relied upon the skill, judgment, representations, and express warranties of the Defendant.

80.     The express warranties and representations made by Defendant were false in that Vioxx was not safe and was not fit for the use for which it was intended.

81.     As a direct and proximate result of the dangerous and defective condition of Vioxx, Plaintiff suffered a thrombotic cardiovascular event, and they incurred economic damages in the form of medical expense.

82.     Plaintiff is entitled to recover from Defendant for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, loss of the capacity to enjoy life, lost past and future income and incurred expense.

WHEREFORE, the Plaintiff prays judgment in his favor and against Merck in a sum in excess of the jurisdictional requirement of this Court; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT VII

## NEGLIGENT MISREPRESENTATION

83.     Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

84.     At all relevant times, Defendant knew, or should have known, that there were dangerous side effects resulting from the ingestion of Vioxx.

85.     Defendant knew or reasonably should have known that consumers such as Plaintiff would not have known about the increased risk of a thrombotic cardiovascular event associated with the ingestion of Vioxx.

86.     Defendant armed with the knowledge stated in the preceding two paragraphs, preceded with the design, production, manufacture, promotion, advertising, and sale of Vioxx without adequate warning of the side effects and dangerous risks to the consuming public including Plaintiff.

87.     Defendant negligently represented to Plaintiff the safety and effectiveness of Vioxx and concealed material information, including adverse information regarding the safety and effectiveness of Vioxx. The misrepresentations and/or material omissions made by or perpetuated by Defendant are as follows, Merck failed to:

     a.  Conduct sufficient testing which, if properly performed, would have shown that Vioxx had serious side effects, including heart attacks, strokes, hypertension, atherosclerosis, blood clots, and other serious side effects, and warn users of those risks;  and/or

     b.  Include adequate warnings with the Vioxx products that would alert users to the potential risks and serious side effects the drugs; and/or

     c.  Warn the Plaintiff that use of Vioxx carried a risk of death or permanent disability from heart attacks, strokes, blood clots, other cardiovascular disorders and other serious side effects;  and/or

     d.  Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Vioxx; and/or

     e.  Provide Plaintiff with other appropriate warnings.

88.     Defendant made the misrepresentations and omissions with the intent for Plaintiff and the consuming public to rely upon such information or the absence of such information in selection Vioxx as a treatment for pain relief.

89.     Plaintiff justifiably relied on and/or were induced by the misrepresentations and/or active concealment by Defendant, and they relied upon the absence of safety information which Defendants suppressed, concealed, or failed to disclose, all to Plaintiff' detriment.

90.     As a direct and proximate result of the dangerous and defective condition of Vioxx, Plaintiff suffered a thrombotic cardiovascular event, and they incurred economic damages in the form of medical expenses.

91.     Plaintiff is entitled to recover from Defendant for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, loss of the capacity to enjoy life, lost past and future income and occurred expense.

WHEREFORE, the Plaintiff prays judgment in his favor and against Merck in a sum in excess of the jurisdictional requirement of this Court;  for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT VIII

## COMMON LAW FRAUD

92.     Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

93.     Merck, having undertaken the preparation, design, research, development, testing, manufacturing, inspection, labeling, marketing, promotion, and selling of Vioxx, owed a duty to provide complete and accurate information regarding said drugs to Plaintiff, his physicians, and anyone else they knew or should have known would ingest, prescribe or recommend the ingestion of said drugs.

94.     Merck misrepresented material facts regarding the safety and efficacy of Vioxx and failed to inform and did conceal these material facts from Plaintiff, his physicians and the general public.

95.     Merck fraudulently, intentionally and/or with gross negligence and recklessness misrepresented to Plaintiff, his physicians and the general public that Vioxx was safe and effective, that the benefits of taking said drug outweighed any risks, and/or fraudulently, intentionally and/or in a grossly negligent and reckless manner misrepresented and concealed safety and effectiveness information regarding said drug, including but not limited to, the propensity of said drug, to cause serious harm.

96.     The continuous and ongoing course of action constituting fraud and misrepresentation on Plaintiff, his physicians and the general public started as early as November 23, 1998, when Merck submitted an application to market Vioxx for human use, if not earlier, and continued through repeated acts and non-disclosure every year since then, throughout the United States and elsewhere.

97.     Vioxx was in fact unsafe and the use of it posed a risk of injury and death, which outweighed the purported benefits of their use, such that injury was in fact caused to Plaintiff and others.

98.     Merck made misrepresentations and actively concealed adverse information at a time when Merck knew, or should have known, that Vioxx had defects, dangers, and characteristics that were other than what Merck had represented to the prescribing doctors or other dispensing entities, the FDA, and the consuming public, including Plaintiff.

99.     Specific misrepresentations and/or active concealment by Merck include, but are not limited to, the following:

21

a. Failure to disclose that there had been insufficient studies regarding the safety and efficacy of Vioxx in treating the symptoms of osteoarthritis;

b. Marketing, promoting and/or selling Vioxx as if it was fully and adequately tested, when it was not;

c. Misrepresenting the safety and efficacy of Vioxx in its labeling, advertising, product inserts, promotional materials, or other marketing and/or safety surveillance efforts;

d. Misrepresenting the existence and adequacy of testing of Vioxx both pre- and post-marketing; and,

e. Concealing or failing to disclose the severity and frequency of adverse health effects caused by Vioxx.

100.     The misrepresentation and/or active concealment alleged above were perpetuated directly and/or indirectly by Merck, and those acting on their behalf.

101.     The fraudulent misrepresentations of Merck took the form of, among other things, express and implied statements, publicly disseminated misinformation, misinformation provided to regulatory agencies, inadequate, incomplete and misleading warnings about Vioxx, failure to disclose important safety and injury information regarding said drugs, and elaborate marketing, promotional, and advertising activities designed to conceal and mislead regarding the safety of said drug, all while having a duty to disclose such information to Plaintiff and others.

102.     Merck knew or should have known that these representations were false and material at the time they were made or omitted or concealed, and made the representations with the intent or purpose that Plaintiff and his physicians would rely on them, leading to the use of Vioxx by Plaintiff.

103.     At the time of Merck's fraudulent misrepresentations, Plaintiff and his physicians were unaware of the falsity of the statements being made and believed them to be true.  Plaintiff and his physicians had no knowledge of the information concealed and/or suppressed by Merck.

104.    Plaintiff and his physicians justifiably and reasonably relied on and/or were induced by the misrepresentations and/or active concealment of Merck, and reasonably relied on the absence of safety information, which Merck did suppress, conceal or fail to disclose to the detriment of the Plaintiff.

105.    The misrepresentations and/or active concealment by Merck constitute a continuing tort.

106.    Merck made the misrepresentations and or actively concealed information with the intention and specific desire that Plaintiff, his physicians and the general public would rely on such misrepresentations or on the absence of information concealed by Merck in selecting Vioxx as a treatment for osteoarthritis symptoms.

107.    One or more of Merck's representatives aided and abetted Merck in the misrepresentations and concealment set forth in this and other Counts.

108.    As a direct and legal result of the matters set forth in this Count, Plaintiff sustained serious and permanent injuries, disability, mental and physical anguish both past and present, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money in the future.

109.    Said injuries and losses are continuing in nature.

WHEREFORE, the Plaintiff prays judgment in his favor and against Merck in a sum in excess of the jurisdictional requirement of this Court;  for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that this Court enter judgment against Defendant,

Merck, and award relief as follows:

    A.  Compensatory damages in an amount supported by the evidence at trial;

    B.  An award of attorney's fees, pre-judgment and post-judgment interest, and

       costs of suit, as provided by law;

    C.  Trial by jurors on all issues so triable; and,

    D.  Such other legal and equitable relief as this Court deems just and proper.


Respectfully submitted,


By:  /S/ Seth S. Webb
SETH SHARROCK WEBB, MO Fed #505666
BROWN & CROUPPEN, P.C.
720 Olive Street
Suite 1800
St. Louis, Missouri  63101
Ph: (314) 421-0216
Fx: (314) 421-0359
swebb@brownandcrouppen.com

***ATTORNEY FOR PLAINTIFF***
***RANDALL SMITH***