**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re: VIOXX<br><br>PRODUCTS LIABILITY LITIGATION<br><br>***This document relates to ALL MEDICAL*** **MONITORING COMPLAINTS** | MDL Docket No. 1657<br><br>SECTION L<br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

**THE PSC'S SURREPLY IN OPPOSITION TO MERCK'S MOTION TO STRIKE CLASS ACTION ALLEGATIONS IN PLAINTIFF'S MEDICAL MONITORING MASTER CLASS ACTION COMPLAINT**

## I. INTRODUCTION

Faced with the impossible task of meeting the Fifth Circuit's standard to strike a pleading, Merck attempts to side step its burden by posturing its motion to strike as an opposition to a motion for class certification.[1] Merck's efforts to brief this Court on the propriety of class certification are premature and Merck, not plaintiffs, has the burden of proof on its motion to strike. For the reasons

---

[1] The standard to strike a pleading, which Merck fails to acknowledge anywhere in its pleadings, is set forth in the PSC's Memorandum of Law in Opposition to Merck's Motion to Strike. *See* Memo in Opp to Merck's Mtn to Strike at 6-8.

Under this standard, as established by such cases as *Augustus v. Board of Public Instruction*, 306 F.2d 862, 868 (5th Cir. 1962), questions of fact and/or mixed questions of law and fact, such as those involving class certification, are not to be determined through a motion to strike. Additionally, the party moving to strike a pleading is required to establish that it will be prejudiced if the motion is denied. *Id. See also Alton v. Ochsner Medical Foundation v. Servicemaster Home Health Care Services, Inc.*, 2002 WL 553499, * 1 (E.D.La. 2002)(Zainey, J.) (Courts will only strike pleadings if "the challenged allegations are prejudicial to the defendant or immaterial to the lawsuit."). Pursuant to this authority, Merck's motion to strike is improper since class certification is a mixed question of law and fact. Similarly, to date Merck has made no efforts to establish that the challenged class action allegations are in any way prejudicial. It is crystal clear that Merck chose not to meet the class certification issue up front when they decided to file there Rule 12 Motion. There has been no change in Rule 23 jurisprudence to justify Merck's about face.

set forth below as well as those in the PSC's opening memorandum, Merck has failed to meet its burden and the motion to strike should be denied.

## II. ARGUMENT

### 1. Merck's Reply Brief Merely Repeats the Flawed Logic of its Opening Memorandum

First, Merck blends its analysis of the proposed national and statewide medical monitoring classes.[2] Such analysis is flawed since many of the hurdles to certification of a national class are removed when a court addresses a proposed statewide class. Manageability concerns arising from the need to apply the law of multiple jurisdictions are completely eliminated since the claims will be governed by one uniform body of law. Although this distinction is addressed at length in the PSC's opposition, Merck makes little or no effort to directly challenge the proposed statewide medical monitoring classes. Merck's decision to blend its analysis in this regard demonstrates that it has no real answer to the proposed statewide medical monitoring classes.[3]

Merck next repeats its earlier argument that several of the states at issue require proof of an actual injury. Again, this argument presents a false issue since the PSC purposely excluded those states that require proof of an actual injury as part of a medical monitoring claim from the medical monitoring master class action complain. *See* Memo in Opp to Merck's Mtn to Strike at pg. 25, Fn.

---

[2] It cannot be overemphasized that the proposed state class actions are not sub-classes but rather stand alone classes requiring application of individual state's jurisprudence.

[3] Merck also falsely asserts that this Court's order denying certification of the national personal injury class is dispositive of the current dispute. Because that order is specific to the personal injury class it should have no bearing on the current dispute. *See In re Vioxx Prods. Liab. Litig.*, 2006 WL 3391432, at Fn. 5 (E.D.La. 2006) (declining to make any ruling with respect to the PSC's request for certification of statewide classes where, as here, the issue had not been briefed). Based on this aspect of the order, it has no application to the proposed statewide medical monitoring class actions.

8. In any event, to the extent the parties disagree as to whether particular states impose such a personal injury requirement as part of a medical monitoring claim, this issue is more appropriately resolved after full briefing on a motion for class certification.

Additionally, Merck once again attempts to limit the medical monitoring claims to instances where plaintiffs can establish that Merck is liable under a failure to warn theory. While it is true that plaintiffs must establish culpable conduct as part of a medical monitoring claim, such culpable conduct can be established through any number of legal theories. Failure to warn is just one of the theories that can be used to justifying medical monitoring in this case. This is why the Medical Monitoring Master Class Complaint ¶ 172 expresses numerous facets by which to measure Merck's culpable conduct, be it marketing, testing or warning. Merck's efforts to pigeonhole the plaintiffs into one legal theory should be disregarded.

**2. Merck's Assertion that the Medical Monitoring Class Action Should be Stricken Lacks Merit Since Other Courts have Certified Medical Monitoring Class Actions Under similar Circumstances**

Although Merck postures its motion to strike as an opposition to a motion for class certification, the fact remains that in actuality it is still just a motion to strike. In the Fifth Circuit, a motion to strike is an inappropriate device for determining mixed questions of law and fact, *i.e.*, whether class certification is proper in a particular case, and Merck, not the plaintiffs, has the burden of proof. *See Augustus*, *supra*. Notwithstanding these limitations on the use of motions to strike to challenge pleadings, what Merck appears to be arguing is that medical monitoring class actions are not certifiable as a matter of law. Unfortunately for Merck, this argument has been refuted by those courts that have certified medical monitoring class actions.

For instance, several courts have granted certification of national medical monitoring class

actions. *See In re Diet Drugs Products Liability Litigation (Jeffers),* 1999 WL 673066 (E.D.Pa. 1999);[4] *In Re: Copley Pharmaceutical, Inc. "Albuterol" Products Liability Litigation*, (MDL 1013), 161 F.R.D. 456 (D. Wyoming); *In Re Telectronics Pacing Systems, Inc., Accufix Atrial "J" Leads Products Liability Litigation*, (MDL 1057), 172 F.R.D. 271 (S.D. Ohio 1997). Although Merck makes a weak effort to distinguish each of these cases, the fact remains that each of these cases have certified national medical monitoring class actions notwithstanding Merck's assertion that such actions are not certifiable.

Likewise, numerous courts have granted certification to statewide medical monitoring class actions, especially in pharmaceutical cases such as Fen-Phen, Bayer, etc. *See, e.g., In re Pennsylvania Diet Drugs Litigation*, 1999 WL 962583 (Pa.Com.Pl. 1999) (certifying statewide medical monitoring class); *Lewis v. Bayer AG*, 2004 WL 1146692 (Pa.Com.Pl. 2004) (certifying a statewide Baycol medical monitoring class); *Earthman v. American Home Products*, No. 97-10-0390-CV (Dist. Ct. Texas, Oct. 14, 1998) (Diet Drugs); *St. John, et al. v. American Home Products*, No. 97-2-06368-4 (Wash. 1998) (Diet Drugs); *Vadino v. American Home Products*, MDL-L0425-98 (N.J.Super. 1998) (Diet Drugs); *Burch v. American Home Products Corp.*, Civil Action No. 97-C-

[4] In its reply, Merck attempts to distinguish *Jeffers* because the court therein granted conditional certification and this procedure is no longer permitted by the Federal Rules. However, this argument is disingenuous since at the time of the court's ruling in *Jeffers*, conditional certification was both permissible and common. The fact that the Federal Rules have since changed in no way diminishes *Jeffers* as persuasive authority. In fact, were this Court to issue an order granting certification, like any other decision it would not be written in stone, and this Court could decertify the class should the facts evolve and certification no longer be warranted. *See Myers ex rel. Coplin v. Fluor Corporation*, 2007 WL 827762, * 2 (Mo. 2007) ("Although the class certification decision lies in the circuit court's discretion, the courts should err in close cases in favor of certification because the class can be modified as the case progresses."), *citing*, *Dale v. Daimler Chrysler Corp.*, 204 S.W.3d 151, 164 (Mo.App. 2006), and *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602 (D.Col. 1990).

204(1-11)(W.Va.Cir.Ct. 1999) (Diet Drugs); *Rhyne v. American Home Products Corp.*, No. 98 Ch 04099 (Ill.Cir.Ct. 1999) (Diet Drugs); *In re New York Diet Drugs Litigation*, No. 70000198 (N.Y.Sup. Ct. 1999) (Diet Drugs); *Lamping v. American Home Products, Inc.*, No. Dv-97-85786 (Dist. Ct. Montana 2000) (Diet Drugs); *Scott v. American Tobacco Co.*, 725 So.2d 10 (La.App., 4th Cir. 1998) (affirming certification of statewide medical monitoring class).[5] In fact, the Missouri Supreme Court just recently confirmed that medical monitoring class actions are certifiable. *See Myers ex rel. Coplin v. Fluor Corporation*, 2007 WL 827762, * 2 (Mo. 2007).

In light of the above authority, and the complete absence of any Fifth Circuit case law establishing that medical monitoring class actions cannot be certified as a matter of law, Merck's current position is untenable.

### 3. Contrary to Merck's Assertions, the Medical Monitoring Claims Can be Resolved on a Class-Wide Basis

Merck's most persistent argument is opposing the proposed medical monitoring class action allegations is that individual fact issues preclude certification. Merck contends that factual issues preclude certification with respect to the medical monitoring claim since each class member will be required to establish Merck's wrongful conduct, expose to a hazardous substance, that expose to the hazardous substance increased the claimants risk of injury, and that the claimant requires medical monitoring beyond the treatment normally required by the claimant.[6] Merck also contends that it

---

[5] The opinions in *Earthman, St. John, Vadino, Burch, Rhyne, In re New York Diet Drugs Litigation*, and *Lamping*, were all previously provided to the Court as exhibits to the PSC's response in opposition to Merck's motion to dismiss the Medical Monitoring Master Complaint.

[6] Although Merck contends that each prospective class member must conclusively establish a need for medical monitoring over and above his or her regular treatment needs, there is case law directly refuting this assertion. *See In re Pennsylvania Diet Drugs Litigation*, 1999

(continued...)

has affirmative defenses that preclude class certification. However, such individual issues do not preclude certification of national and/or statewide medical monitoring classes.

As noted in the PSC's opposition, most if not all of these issues are capable of resolution on a class-wide basis. For instance, cases such as *Jeffers* have rejected each of Merck's arguments and have determined that individual factual issues do not preclude certification of a medical monitoring class action. *See Jeffers*, 1999 WL 673066 at * 11; *see also Myers ex rel. Coplin*, 2007 WL 827762, * 5-6. For instance, expert witnesses and the use of risk ratios can be implemented to establish that a class has been exposed to an increased risk of developing a future disease and/or injury. *See In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 788 (3rd Cir. 1994), *cert. denied*, 513 U.S. 1190 (1995); *In re Pennsylvania Diet Drugs Litigation*, 1999 WL 962583 at * 14. This is possible since, unlike personal injury cases, medical monitoring claims do not require a showing of specific causation.[7] For this reason, experts can be used to account for individual differences amongst class

---

[6](...continued)
WL 962583, * 13 ("*Redland* requires that the recommended monitoring program be compared with what is normally recommended for the general population, not a particular individual ... plaintiffs' experts' monitoring regimen for the entire class must be compared with what is recommended for asymptomatic persons who have not been exposed ...".), *citing Redland Soccer Club, Inc. v. Department of the Army and Dept. Of Defense for the U.S.*, 696 A.2d 137, 146-47 (Pa. 1997).

[7] Merck's entire argument is actually an attempt to improperly import personal injury concepts into the realm of medical monitoring. *See Myers ex rel. Coplin*, 2007 WL 827762, * 5-6 (reversing the denial of class certification in medical monitoring case where the lower court improperly applied personal injury concepts, including the existence of individual factual issues, and had held that such personal injury issues predominated over the common issues). In rejecting the argument that such personal injury concepts had any relevance to a medical monitoring class action, the court in *Meyers* observed as follows:

> Each of these ... individual issues is primarily relevant to a personal injury action, not a medical monitoring claim for which

(continued...)

members such as pre-existing health conditions and the level of exposure to Vioxx.[8] A jury can make factual determinations that account for differences amongst class members based on such expert testimony.

Moreover, proof of Merck's wrongful conduct and the availability of affirmative defenses similarly does not preclude class certification. It is indisputable that there is sufficient evidence to establish that Merck engaged in wrongful conduct directed to the class as a whole. What Merck is actually arguing is that there must be a particularized showing that its wrongful conduct resulted in the exposure of each claimant to Vioxx. This argument ties into its assertion that affirmative defenses, such as the learned intermediary doctrine, preclude class certification.[9] However, because

---

[7](...continued)

> there is no necessity of establishing a present physical injury. This is particularly true give Plaintiff's theory of liability, which posits that liability is premised upon the exposure to toxins from a single source during a specified age range in childhood ... It is the common fact of exposure to a set of toxins from a single source that is the common and overriding issue in Plaintiff's case. The significance and extent of toxic exposure is primarily an issue of common proof. Under this theory of liability, the individual factors identified by the circuit court are not particularly relevant because the need for monitoring is based on a common threshold of exposure.

*Myers ex rel. Coplin*, 2007 WL 827762, * 5. For these same reasons, the individual factual issues and personal injury concepts identified by Merck have no relevance to whether certification of a medical monitoring class is appropriate.

[8] Although Merck contends otherwise, exposure in drug cases is easily quantifiable from medical records. Numerous courts have also recognized that exposure higher than normal background levels is conclusively established in such cases since there are no background levels for exposure to prescription medications. *See In re Pennsylvania Diet Drugs Litigation*, 1999 WL 962583, * 13; *Lewis v. Bayer AG*, 2004 WL 1146692, * 16 (Pa.Com.Pl. 2004). This jurisprudence distinguishes medical monitoring from traditional personal injury actions.

[9] "Challenges based on the statute of limitations, fraudulent concealment, releases, (continued...)

the remedy in a medical monitoring claim is a surveillance program and obtaining diagnoses funded by the defendant which is not dependent on determinations of individual causation of any injury, nor calculation of compensatory damages, these issues are not insurmountable and can be addressed after a medical monitoring fund, that carefully sets forth criteria for participation in the program, has been established.[10]

**4. This Court Should Await Decisions by the New Jersey Supreme Court in *Local #68* and *Sinclair* Before Making any Determination as to the Propriety <u>of a National Medical Monitoring Class</u>**

Although Merck dismisses *International Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co., Inc.*, 384 N.J. Super. 275, 894 A.2d 1136 (N.J. App. 2006), and *Sinclair v.*

---

[9](...continued) causation, or reliance often are rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability." 1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 4:26, at pg. 241 (4th ed. 2002). *See also George Lussier Enterprises, Inc. v Subaru of New England Inc.*, 2001 WL 920060, * 19 (D.N.H. 2001) ("While I recognize that there may be different affirmative defenses or procedural requirements, such as exhaustion of administrative remedies, relevant to claims under each state statute, there is no "per se rule that treats the presence of such issues as an automatic disqualifier. In other words, the mere fact that such concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones."), *quoting*, *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, at 296 (1st Cir. 2000) (rejecting the argument that the need for individualized statute-of-limitations determinations among class members automatically defeats a motion for class certification); *see also Jeffers*, 1999 WL 673066 at *11; *In re Pennsylvania Diet Drugs Litigation*, 1999 WL 962583 at * 13 and 21; *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 924 (3rd Cir. 1992); *Gunter v. Ridgewood Energy Corp.*, 164 F.R.D. 391 (D.N.J. 1996); *Bryan v. Amrep Corp.*, 429 F.Supp. 313 (S.D.N.Y. 1977) (class granted though some class members may be subject to affirmative defenses); *Lorber v. Beebe*, 407 F.Supp. 279 (S.D.N.Y. 1975) (affirmative defenses not considered in certification decision).

[10] Finally, to the extent any of the individual issues identified by Merck cannot be resolved in a class format, which plaintiffs contest, such issues can be resolved through the use of subclasses and exclusion. *See Jeffers*, 1999 WL 673066 at *1.

*Merck & Co., Inc.*, 913 A.2d 832 (N.J. App. 2007), as irrelevant to this Court's inquiry, both cases are significant to whether certification of a national medical monitoring class is warranted.

First, *Sinclair* has indisputably relevance since plaintiffs have proposed a national medical monitoring class under New Jersey law. Resolution of this case will effectively determine the law applicable to such a class since the New Jersey Supreme Court is being asked to determine whether a medical monitoring claim requires a showing of actual injury. *Sinclair* has further relevance to a national class under New Jersey law since by affirming the intermediate appellate court, the New Jersey Supreme Court would effectively put an end to Merck's assertion that such a class cannot be certified since each class member is required to make a showing of specific causation. In short, once this actual injury component is taken out of the equation, a national medical monitoring class can proceed through the use of expert testimony.

Finally, a ruling in *Local #68* takes on added significance in light of the recent opinion by the New Jersey Supreme Court in *Rowe v. Hoffman-LaRoche, Inc.*, No. A-19-06, Slip. Op. (N.J. March 29, 2007). Although Merck contends that *Rowe* precludes certification of a medical monitoring class, such a conclusion is strained since *Rowe* involved a personal injury claim.[11] In personal injury cases, the location of the injury is often accorded great weight in a choice of law analysis since that forum will have a significant interest in assuring that its citizens are compensated under its tort regime. In contrast, as Merck admits, *see* Merck's Reply at 8, in a choice of law analysis in cases such as *Local # 68*, which involves a consumer fraud statute, courts are willing to accord greater weight to the interests of the place of the wrongful conduct since the purpose of consumer fraud claims is to punish wrongful conduct.

---

[11] *Rowe* is completely irrelevant to the proposed statewide medical monitoring classes.

Similarly, since medical monitoring claimants are not seeking individual damages, as in personal injury cases, and because the remedy in a medical monitoring claim is a court supervised surveillance program, the law of the place where the wrongful conduct occurred should be accorded more weight in a choice of law analysis. That is, the forum where the wrongful conduct occurred in a medical monitoring case will have a strong deterrence interest as well as an interest in assuring that its corporate citizens act responsibly by establishing medical monitoring funds. The interests such forums have in establishing medical monitoring programs is especially strong since such programs can be designed to conduct research as well as to provide therapeutic benefits to those who have been exposed to a harmful substance as a result of the wrongful conduct of a corporate resident. It is important that such a program be subject to the supervision of a single court for purposes of ensuring that the program is properly implemented. Finally, since none of the members of the class proposed by plaintiffs have suffered any personal injuries, the law of the place of the injury does not exist for purposes of a choice of law analysis.

Accordingly, it would behoove this Court to await rulings by the New Jersey Supreme Court in *Sinclair* and *Local # 68* before addressing class certification on the merits.

## III. CONCLUSION

For the reasons set forth above as well as those stated in the PSC's opposition to Merck's motion to strike, Merck's motion to strike should be denied.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

**Dated: April 9, 2007**

By:/s/ Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID, MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire **(on brief)**
Donald C. Arbitblit, Esquire **(on brief)**
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 9th day of April, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
830 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
ldavis@hhkc.com