IN THE UNITED STATES DISTRICT COURT,
IN AND FOR THE EASTERN DISTRICT OF LOUISIANA

DIVISION:  NEW ORLEANS

CASE NO.:   MDL 1657

In Re: VIOXX
　　　PRODUCT LIABILITY LITIGATION

_____

This document relates to:

AILER, *et al.*, v.  MERCK, etc.,
Case No.  2:06-CV-10099

_____/

**PLAINTIFFS' MOTION TO ADD
PARTY PLAINTIFFS, PURSUANT TO
RULE 15(A), FED.R.CIV.P.**

COME NOW, the Plaintiffs, CHERYL D.  AILER, Individually; CHERYL D.  AILER,
as natural mother and guardian of LOUIS L.  McCOY, JR., a minor; ESTATE OF CLARA
F.  BROWN; CHARLIE BROWN, as surviving spouse of CLARA F.  BROWN, deceased;
JOSEPH J.  MORGESE, a married  man; ANGELA M.  MORGESE; ESTATE OF
ELWOOD M.  PARKERSON; ESTATE OF EILEEN E.  RAINS; PATRICK RAINS, as
surviving spouse of EILEEN E.  RAINS, deceased; and BRYAN LEE ROBERTS, a single
man, by and through their undersigned counsel and pursuant to Rule 15(a), Fed.R.Civ.P.,
respectfully move this Honorable Court for entry of an Order permitting the addition of Party
Plaintiffs, and state:

1.	Plaintiffs wish to add HAROLD ALLEN PULLEY and STACEY ELIZABETH
	PULLEY, his wife, as party Plaintiffs in the instant cause.

2.	Plaintiffs' First Amended Complaint has heretofore been filed and a copy is
	attached hereto as Exhibit "A."

-1-

Ailer, et al.  v.  Merck, etc.
U.S. District Court, Southern District of Florida

3.      Defendant's counsel has agreed to the proposed amendment to add party

Plaintiffs (see copy of e-mail response attached hereto as Exhibit "B").

WHEREFORE, the Plaintiffs, CHERYL D.  AILER, Individually; CHERYL D.  AILER,

as natural mother and guardian of LOUIS L.  McCOY, JR., a minor; ESTATE OF CLARA

F.  BROWN; CHARLIE BROWN, as surviving spouse of CLARA F.  BROWN, deceased;

JOSEPH J.  MORGESE, a married  man; ANGELA M.  MORGESE; ESTATE OF

ELWOOD M.  PARKERSON; ESTATE OF EILEEN E.  RAINS; PATRICK RAINS, as

surviving spouse of EILEEN E.  RAINS, deceased; and BRYAN LEE ROBERTS, a single

man, respectfully requests that this Honorable Court enter an Order granting the relief

requested.

I HEREBY CERTIFY that the above and foregoing Plaintiff's Motion to Add Party

Plaintiffs, Pursuant to Rule 15(A), Fed.R.Civ.P., has been served on Liaison Counsel, Russ

M. Herman, Esquire, Herman, Herman, et al., 820 O'Keefe Ave., New Orleans, LA 70113,

and Phillip Wittmann, Esquire, Stone, Pigman, et al., 546 Carondelet St., New Orleans, LA

70130, by U.S. Mail and email (rherman@hhkc.com and pwittmann@stonepigman.com,

respectively) and upon all parties by electronically uploading the same to LexisNexis File

& Serve Advanced in accordance with PreTrial Order No.  8(B), and that the foregoing was

electronically filed with the Clerk of Court of the United States District Court for the  Eastern

District fo Louisiana by using the CM/ECF system which will send a Notice of Electronic

-2-

Ailer, et al.  v.  Merck, etc.
U.S. District Court, Southern District of Florida

Filing in accordance with the procedures established in MDL 1657 on this 10 day of April,

2007, *with the original hereof on file with the Clerk of this Court*.

 

_____

Brian J.  Glick
Florida Bar No. 328359
GLICK LAW FIRM, P.A.
Counsel for Plaintiffs
2255 Glades Rd., #324-A
Boca Raton, FL  33431
Tel. 561/391-0448
FAX      330-3593
lawboca@aol.com

Ailer, et al.  v.  Merck, etc.
U.S. District Court, Southern District of Florida

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT,
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

DIVISION: MIAMI

CASE NO. 06-61450

CIV MOORE

CHERYL D. AILER, Individually;
CHERYL D. AILER, as natural mother
and guardian of LOUIS L. McCOY, JR., a
minor;
ESTATE OF CLARA F. BROWN; CHAR-
LIE BROWN, as surviving spouse of
CLARA F. BROWN, deceased; JOSEPH
J. MORGESE, a married man; ANGELA
M. MORGESE, his wife; ESTATE OF
ELWOOD M. PARKERSON;
ESTATE OF EILEEN E. RAINS;
PATRICK RAINS, as surviving spouse of
EILEEN E. RAINS, deceased; BRYAN
LEE ROBERTS, a single man;
HAROLD ALLEN PULLEY, a married
man, and
STACEY ELIZABETH PULLEY, his wife,

        Plaintiffs,                                    **FIRST AMENDED COMPLAINT**

vs.

MERCK & COMPANY, INC., a foreign
corporation,

        Defendant.

_____/

        COME NOW, the Plaintiffs, CHERYL D. AILER, Individually; CHERYL D. AILER,

as natural mother and guardian of LOUIS L. McCOY, JR., a minor; ESTATE OF CLARA

F. BROWN; CHARLIE BROWN, as surviving spouse of CLARA F. BROWN, deceased;

JOSEPH J. MORGESE, a married man; ANGELA M. MORGESE; ESTATE OF ELWOOD

M. PARKERSON; ESTATE OF EILEEN E. RAINS; PATRICK RAINS, as surviving spouse

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

of EILEEN E. RAINS, deceased; BRYAN LEE ROBERTS, a single man; HAROLD ALLEN

PULLEY, a married man, and STACEY ELIZABETH PULLEY, his wife, by and through

their undersigned counsel and sue Defendant, MERCK  & COMPANY, INC., and allege:

**A.**    **The Parties.**

   **The Plaintiffs.**

1.    CHERYL D. AILER, at all times material hereto was and is an

individual, was and is a resident of the State of Georgia, and is *sui*

*juris*.

2.    CHERYL D. AILER, at all times material hereto is the natural mother

and guardian of LOUIS L. McCOY, JR., a minor, who resides with the

minor in the State of Georgia.

3.    CLARA F. BROWN, deceased, at all times material hereto was a

resident of the State of Georgia and was *sui juris* until the time of her

death in 2001.

4.    CHARLIE BROWN, at all times material hereto was and is a resident

of the State of Georgia, is *sui juris* and is the surviving spouse of

CLARA F. BROWN, deceased.

5.    JOSEPH J. MORGESE, a married man, at all times material hereto

was and is a resident of the State of Florida, and is *sui juris*.

-2-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

6.    ANGELA M. MORGESE, at all times material hereto was and is the wife of JOSEPH J. MORGESE, was and is a resident of the State of Florida and is *sui juris*.

7.    ELWOOD M. PARKERSON, deceased, at all times material hereto was a resident of the State of Florida and was *sui juris* until the time of his death on October 5, 2005, in Brevard County, FL.

8.    EILEEN E. RAINS, deceased, at all times material hereto was a resident of the State of California, was *sui juris* until the time of her death on October 5, 2005, in Madera County, California.

9.    PATRICK RAINS, at all times material hereto was and is a resident of the State of California, is *sui juris* and is the surviving spouse of EILEEN E. RAINS, deceased.

10.   BRYAN LEE ROBERTS, a single man, at all limes material hereto, was and is a resident of the State of Florida and is *sui juris*.

11.   HAROLD ALLEN PULLEY, a married man, at all times material hereto, was and is a resident of the State of Pennsylvania and is *sui juris*.

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

12.    STACEY ELIZABETH PULLEY, at all times material hereto, was and is the wife of HAROLD ALLEN PULLEY, was and is a resident of the State of Pennsylvania and is *sui juris*.

13.    The Defendant, Merck & Co., Inc. is a foreign corporation with its principal office located at One Merck Drive, White House Station, NJ 08869 (hereinafter "MERCK").

14.    MERCK is in the business of designing, studying, manufacturing and marketing prescription drugs.

15.    Plaintiffs, as stated above, are citizens of their respective residential states and MERCK is incorporated and has its principal place of business in White House New Jersey.

16.    MERCK does and at all times mentioned in this Complaint, did business in Florida, Georgia and California through the sale of prescription drugs in said States.

17.    MERCK did business in the States of Florida, Georgia and California through the sales of the prescription drug VIOXX in said States until on or about September 30, 2004.

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

18. CHERYL D. AILER's ingestion of VIOXX occurred in Georgia and the harm claimed to have resulted to her minor son, LOUIS McCOY, JR., from her ingestion of VIOXX occurred in Georgia.

19. CLARA F. BROW N's ingestion of VIOXX occurred in Georgia and the harm claimed to have resulted to her from her ingestion of VIOXX occurred in Georgia.

20. JOSEPH J. MORGESE's ingestion of VIOXX occurred in Florida and the harm claimed to have resulted to him from his ingestion of VIOXX occurred in Florida.

21. ELWOOD M. PARKERSON's ingestion of VIOXX occurred in Florida and the harm claimed to have resulted to him (death) from his ingestion of VIOXX occurred in Florida.

22. EILEEN E. RAINS's ingestion of VIOXX occurred in California and the harm claimed to have resulted to her (death) from her ingestion of VIOXX occurred in California.

23. BRYAN LEE ROBERTS's ingestion of VIOXX occurred in Florida and the harm claimed to have resulted to him from his ingestion of VIOXX occurred in Florida.

-5-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

**B.    Venue.**

24.    MERCK does, and at the times mentioned in this Complaint did, business in the States of Florida, Georgia and California, through the sale of prescription drugs in the Plaintiffs' counties of residence in said States.

25.    MERCK did business in the States of Florida, Georgia and California, through the sale of prescription drugs in the Plaintiffs' counties of residence in said States through the sale of the prescription drug VIOXX in said Plaintiffs' counties of residence in the States of Florida, Georgia and California until September 30, 2004.

26.    CHERYL D. AILER's ingestion of VIOXX occurred in Pills, Georgia, and the harm claimed to have resulted to her minor son, LOWS L. McCOY, JR., from his mother, CHERYL D. AILER's ingestion of it occurred in said City and State.

27.    CLARA F. BROWN's ingestion of VIOXX occurred in Albany, Georgia, and the harm claimed to have resulted from her ingestion of it occurred in said City and State.

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

28. JOSEPH J. MORGESE's ingestion of VIOXX occurred in Sarasota, Florida, and the harm claimed to have resulted from his ingestion of it occurred in said City and State.

29. ELWOOD M. PARKERSON's ingestion of VIOXX occurred in cocoa Beach, Florida, and the harm claimed to have resulted from his ingestion of it occurred .in said City and State.

30. EILEEN E. RAINS's ingestion of VIOXX occurred in Ahwahnee, California, and the harm claimed to have resulted from her ingestion of it occurred in said City and State.

31. BRYAN LEE ROBERTS's ingestion of VIOXX occurred in Miami-Dade County, Florida, and the harm claimed to have resulted from his ingestion of it occurred in Miami-Dade County, Florida.

32. HAROLD ALLEN PULLEY's ingestion of VIOXX occurred in McClellandtown, PA, and continued in Mason-Town, PA, and the harm claimed to have resulted from his ingestion of it occurred in McClellandtown, PA and Masontown, PA.

33. Each Plaintiffs place of residence is stated hereinabove and at all times material hereto were and/or are residents of said Cities and States.

-7-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

## C.   VIOXX.

### Facts.

34    VIOXX is the brand name of "Rofecoxib," a prescription drug in the class of non-steroidal inflammatory drugs known as Cox-2 inhibitors.

35.    MERCK submitted an Application to Market a New Drug for Human Use (NDA) for rofecoxib to the United States Food and Drug Administration (FDA) on November 23, 1998, for tablets, at doses of 12.5 mg and 25 mg, for treatment of osteoarthritic pain, acute pain and menstrual pain. This application is designated as NDA 21-042 by the FDA.

36.    MERCK also submitted an NDA for rofecoxib to the FDA on November 23, 1998, for oral suspension, at doses of 12.5 mg/ml and 25 mg/ml, for treatment of osteoarthritic pain, acute pain, and menstrual pain. This application is designated as NDA 21-052 by the FDA.

37.    On May 20, 1999, the FDA approved both NDAs for treatment of osteoarthritic pain, of acute pain, and menstrual pain.

38.    MERCK launched an aggressive marketing campaign for VIOXX immediately after its approval in May 1999. This campaign included extensive direct to consumer advertising, and its success would

-8-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

ultimately be demonstrated by sales growth leading to $2.5 billion in sales for the year 2003.

39.   MERCK submitted a Supplemental New Drug Application (sNDA), designated as sNDA-007, with the goal of establishing a gastrointestinal safety claim for rofecoxib. To support this NDA, MERCK conducted a study known as the VIGOR (VIOXX GI Outcomes Research) study, between January 6, 1999, and March 17, 2000.

40.   The VIGOR study, a prospective, randomized, double-blind, one-year study, evaluated approximately 4000 patients on VIOXX 50 mg a day (twice the highest approved dose for chronic use) and approximately 4000 patients on the standard dose of naproxen (1000 mg a day), a non-steroidal anti-inflammatory drug (NSAID). Patients who were under treatment with low dose aspirin for heart attack prevention were excluded from the study.

41.   The study demonstrates that VIOXX is associated with a lower incidence of serious upper gastrointestinal adverse events of major bleeding, perforation and obstruction compared to naproxen. The reduction in risk is over 50 percent in cumulative rates for VIOXX (.52%) compared to naproxen (1.22%).

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

42.     However, the VIGOR study also shows a higher cumulative rate of serious cardiovascular thromboembolic adverse events (such as heart attacks, angina pectoris, and peripheral vascular events) in the VIOXX group (1.8%) compared to the naproxen group (0.6%).

43.     A study comparing VIOXX, Celebrex (another cox-2 inhibitor), and aspirin was reported at a June 22, 2000, European League against Rheumatism (EULAR) meeting in Nice, France. This study shows that VIOXX reduces night time osteoarthritic pain more effectively than Celebrex or aspirin.  Differences in the incidence of clinical adverse events for the three drugs were not reported in connection with this study.

44      A second study, a head-to-head safety study comparing Celebrex with VIOXX, was also presented at the EULAR meeting in Nice. This study shows that nearly 60% more patients on VIOXX than on Celebrex experienced significant systolic blood pressure elevations of 20 mmHg or more. This was observed as early as week two of the study and was confirmed at week six.

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

45.   Andrew Whelton, M.D., who presented the Celebrex vs. VIOXX study,

and who is a nephrologist and adjunct professor of medicine at Johns

Hopkins, commented:

"For the first time we have a direct safety com-
parison of these compounds on a level playing
field, in the same patient population, which helps
us gain a better assessment of safety differ-
ences between these two COX-2 inhibitors,"

"This study provides compelling evidence that
Celebrex and VIOXX affect hypertensive arthritis
patients differently, suggesting that not all COX-2
inhibitors are the same."

46.   MERCK contested the validity of cardiovascular risk findings in the

VIOXX vs. Celebrex study in the August 2000 edition of Pharmacy

Today, a newspaper published by the American Pharmacists

Association.

47.   On June 22, 1999, MERCK contracted with Peter Holt, M.D., to

conduct VIOXX promotional audio conferences, using content

provided by MERCK, which were to be presented to heath care

professionals as educational programs.

48.   The FDA sent a letter to MERCK dated December 16, 1999, saying

that certain VIOXX promotional pieces:   "are false or misleading

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

because they contain misrepresentations of VIOXX's safety profile, unsubstantiated comparative claims, and are lacking in fair balance."

49. By November 18, 1999, the Data and Safety Monitoring Board of the VIGOR study, a committee independent from the MERCK, the sponsor, had become concerned over the "excess deaths and cardiovascular events experiences in Group A [VIOXX] compared to Group B [naproxen]." (See paragraph 33 for the quote source)

50. Dr. Peter Holt conducted six VIOXX promotional audio conferences, which were arranged by MERCK, presented on behalf of MERCK, and moderated by MERCK employees: one on June 8, one on June 13, one on June 16, and three on June 21, 2000. Some of the content of these conferences was later found by the FDA to be:

"false or misleading in that they minimized the MI results of the VIGOR study, minimized the VIOXX/Coumadin drug interaction, omitted important risk information, made unsubstantiated superiority claims, and promoted VIOXX for unapproved uses and an unapproved dosing regimen."

51. The FDA sent a letter to MERCK dated December 12, 2000, asking MERCK to explain its involvement in, and influence on, the initiation, preparation, development, and publication of the Host audio confer-

-12-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

ences conducted in June 2000. This letter also asks MERCK to tell

the FDA about the nature of its relationship with Dr. Holt.

52.     MERCK responded to the FDA's inquiry about Dr. Holt in a January

5, 2001, letter to the FDA, saying:

"Dr. Holt entered into a speaker contract with
Merck on June 22, 1999." ... "Merck has deter-
mined that we arranged for Dr. Halt to speak at
ten audio conferences in 2000. Merck Business
Managers provided him with the topic for the
audio conferences and, for two of the audio
conferences, asked him to address the safety
profiles of VIOXX and other NSAIDs."

53.     An FDA report, written by Shari L. Targum, M.D., a Project Manager

for the FDA's Division of Anti-inflammatory Drug Products and dated

February 1, 2000, says, "by November 18, 1999, the Data and Safety

Monitoring Board of the VIGOR study, a committee independent from

the sponsor, was concerned over the 'excess deaths and cardiovas-

cular events experiences in Group A [VIOXX group] compared to

Group B [naproxen] (52 v. 29 respectively)."

54.     Results from the VIGOR study were submitted by MERCK to the New

England Journal of Medicine in the form of an article titled, Compari-

son of upper gastrointestinal toxicity of rofecoxib and naproxen in

patients with rheumatoid arthritis VIGOR Study Group, which was

-13-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

published In the November 23, 2000, edition of the NUM. This article had several coauthors, including Alise Reicin, MERCK's Vice President of Clinical Research. The lead author, Toronto rheumatologist Claire Bombardier, M.D., had then, and has had since, various relationships with MERCK, including being the chief investigator for the VIGOR study.

55.    The Bombardier/Reicin article addresses adverse cardiovascular event data by saying:

"The incidence of myocardial infarction was lower among patients in the naproxen group than among those in the rofecoxib group (0.1 percent vs. 0.4 percent; relative risk, 0.2; 95 percent confidence interval, 0.1 to 0.7); the overall mortality rate and the rate of death from cardiovascular causes were similar in the two groups."

56.    The conclusions reached in the Bombardier/Reicin article do not mention an increase in cardiovascular risks with VIOXX, saying only:

"CONCLUSIONS: In patients with rheumatoid arthritis, treatment with rofecoxib, a selective inhibitor of cyclooxygenase-2, is associated with significantly fewer clinically important upper gastrointestinal events than treatment with naproxen, a nonselective inhibitor."

57.    In response to growing public expressions of concern over the cardiovascular safety profile of VIOXX, MERCK issued a press

-14-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

release titled "Merck Confirms Favorable Cardiovascular Safety Profile of VIOXX," dated May 22, 2001. This press release says VIOXX has a "favorable cardiovascular safety profile." The FDA would later tell MERCK:

> "your claim in the press release that VIOXX has a 'favorable cardiovascular profile is simply incomprehensible, given the rate of MI and serious cardiovascular events compared to naproxen. The implication that VIOXX's cardio-vascular profile is superior to other NSAIDs is misleading; in fact, serious cardiovascular events were twice as frequent in the VIOXX treatment group ... as in the naproxen treatment group ... in the VIGOR study."

58.  An article titled Risk of Cardiovascular Events Associated With Selective COX-2 inhibitors, written by Drs. Mukherjee, Nissen, and Topol at the Cleveland Clinic, was published in the August 29, 2001, edition of the Journal of the American Medical Association.

59.  These Cleveland Clinic doctors found that the risk of serious cardio-vascular adverse events in the studies they analyzed, including VIGOR, is 238% higher for VIOXX than naproxen, and in the subgroup of people for whom aspirin is indicated, the risk is 489% higher for V1OXX than naproxen.

60   Drs. Mukherjee, Nissen, and Topol conclude their article by saying:

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

"The available data raise a cautionary flag about
the risk of cardiovascular events with COX-2
inhibitors. Further prospective trial evaluation
may characterize and determine the magnitude
of the risk."

61.    RXintelligence is a non-profit pharmaceutical research organization

founded by the Blue Cross and Blue Shield Association to study the

risks, cost, and benefits of new drugs in comparison to older ones. On

September 12, 2001, Rxintelligence, in conjunction with Blue Cross

Blue Shield of Illinois, released the results of a comprehensive

analysis of the VIOXX studies on file with the FDA at that time. This

analysis shows a higher incidence of hypertension among those

taking VIOXX than in those taking Celebrex.

62.    Thomas W. Abrams, Director of Drug Marketing, Advertising, and

Communications at the FDA, issued a Warning Letter dated Septem-

ber' 7, 2001, to MERCK's CEO Raymond V. Gilmartin, relating to

"promotional activities and material for the marketing of VIOXX

(rofecoxib) tablets."

63.    This Warning Letter says:

"(Merck] engaged in a promotional campaign for
VIOXX that minimized the potentially serious
cardiovascular findings that were observed in the
VIOXX Gastrointestinal Outcomes Research

-16-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

(VIGOR) study, and thus, misrepresents the safety profile for VIOXX.

Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on VIOXX were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (naproxen). ...

The promotional activities and materials described above minimize the potentially serious Cardiovascular findings that were observed in the VIGOR study, minimized the VIOXX Coumadin drug interaction, omit crucial risk information associated with VIOXX therapy, contain unsubstantiated comparative claims, and promote unapproved uses. On December 16, 1999, we also objected to your dissemination of promotional materials for VIOXX that misrepresented VIOXX's safety profile, contained unsubstantiated comparative claims, and lacked fair balance. Due to the seriousness of these violations, and the fact that your violative promotion of VIOXX has continued despite our prior written notification regarding similar violations, we request that you provide a detailed response to the issues raised in this Warning Letter on or before October 1, 2001.

This response should contain an action plan that included a comprehensive plan to disseminate corrective messages about the issues discussed in this letter to the audiences that received these misleading messages. This corrective action plan should also include:

-17-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

Immediately ceasing all violative promotional activities, and the dissemination of violative promotional materials for VIOXX.

Issuing a Dear Healthcare provider' letter to correct false or misleading impressions and information. This proposed letter should be submitted to us for review prior to its release. After agreement is reached on the content and audience, the letter should be disseminated by direct mail to all healthcare providers who were, or may have been exposed to the violative promotion.

A written statement of your intent to comply with '1' and '2' above."

64.    An article titled Non-Steroidal Anti-Inflammatory Drugs and Risk of Serious Coronary Heart Disease: An Observational Cohort Study, authored by Vanderbilt University researchers headed by Wayne Ray, was published in the January 12, 2002, edition of the Lancet. This article posits an explanation of how Cox-2 inhibitors promote thromboembolic events.

65.    MERCK's Vice President of Clinical Research, Dr. Alise Reicin, and others authored an article in defense of VIOXX's cardiovascular risk profile titled Cardiovascular thrombotic events in controlled, clinical trials of rofecoxib, which was published in the November 6, 2001,

-18-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

edition of the journal Circulation. Dr. Reicin and her companion

authors summarize their assessment of VIOXX as follows:

"This analysis provides no evidence for an
excess of CV [cardiovascular] events for
rofecoxib [VIOXX] relative to either placebo or
the non-naproxen NSAIDs that were studied.
Differences observed between rofecoxib and
naproxen are likely the result of the antiplatelet
effects of the latter agent."

66.    A work sponsored by MERCK and conducted and written by MERCK

employees led by Alise Reicin, MERCK's Vice President of Clinical

Research, titled Comparison of cardiovascular thrombotic events in

patients with osteoarthritis treated with Rofecoxib versus nonselective,

non-steroidal anti-inflammatory drugs (Ibuprofen, Diclofenac, and

Nabumetone), was published in the January 15, 2002, edition of the

American Journal of Cardiology. The MERCK authors, seeking to

defend VIOXX, conclude:

"... an analysis from the rofecoxib osteoarthritis
development program found no difference
between rofecoxib, comparator nonselective
NSAIDs, and placebo in the risks of cardiovascu-
lar thrombotic events ... ."

67.    An article titled Why Do Cyclooxygenase-2 inhibitors Cause Cardio-

vascular Events? Authored by Drs. Bing, Lomnicka and others at the

-19-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

Department of Experimental Cardiology at the Huntington Medical Research Institutes was published in the journal Pharmacology on February 6, 2002. The authors explain that a selective Cox-2 inhibitor, such as VIOXX, can promote adverse cardiovascular events by tipping the balance of prostacyclin and thromboxane in favor of thromboxane. This imbalance promotes both platelet aggregation and vasoconstriction, which can lead to catastrophic cardiovascular events, including stroke, heart attack, and pulmonary embolism.

68.    An article by FitzGerald, Cheng, and others at the University of Pennsylvania titled Role of Prostacyclin in the Cardiovascular Response to Thromboxane A2, published in the April 19, 2002, Journal of Science, explains:

> "... PGI2 modulates platelet-vascular interactions in vivo and specifically limits the response to TxA2. This interplay may help explain the adverse cardiovascular effects associated with selective COX-2 inhibitors, which, unlike aspirin and non-steroidal anti-inflammatory drugs NSAIDs), inhibit PGI2 but not TxA2."

69.    Dr. Reicin continued her defense of VIOXX in an article titled Selective COX-2 inhibition and cardiovascular effects: a review of the rofecoxib development program, which was published in the October

-20-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

1, 2003, edition of the American Heart Journal. Dr. Reicin and her

colleagues say in this publication:

"... Rofecoxib [VIOXX] was not associated with
excess CV [cardiovascular] thrombotic events
compared with either placebo or nonnaproxen
NSAIDs. Again, naproxen appeared to be the
outlier, suggesting a cardioprotective benefit of
naproxen."

"... The totality of data is not consistent with an
increased CV [cardiovascular] risk among pa-
tients taking rofecoxib [VIOXX]."

70.    An article by Solomon and others at the Harvard Medical School,

titled Relationship Between Selective Cyclooxygenase-2 Inhibitors

and Acute Myocardial Infarction in Older Adults, was published in the

April 2004 edition of the journal Circulation. The Harvard authors

conclude from their study:

" ... rofecoxib [VIOXX] use was associated with
an elevated relative risk of AMI [acute myocar-
dial infarction] compared with celecoxib
[Celebrex] use and no NSAID use. Dosages of
rofecoxib [greater than] 25 mg were associated
with a higher risk than dosages [less than or
equal to] 25 mg."

71.    An article by H.K. Choi in the May 1, 2004, edition of the American

Journal of Medicine, titled Effects of rofecoxib and naproxen on life

-21-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

expectancy among patients with rheumatoid arthritis: a decision analysis concludes:

"Our analysis suggests a longer life expectancy with naproxen than rofecoxib [VIOXX] ... except in those at low risk of myocardial infarction or at high risk of upper gastrointestinal toxicity."

72.    David Graham, M.D., made a poster presentation titled "Risk of Acute Myocardial Infarction and Sudden Cardiac Death with Use of COX-2Selective and Non-Selective NSAIDS" at the 20th International Conference on Pharmacoepidemiology and Therapeutic Risk Management, held from August 22-25, 2004, in Bordeaux, France. The data for-the presentation was taken from a study done by Kaiser Permanente under a contract funded by the FDA.

73.    VIOXX taken at more than 25 mg per day increased the risk of heart attack and sudden cardiac death by 300% in those enrolled in the Kaiser Permanente study.

74.    On August 26, 2004, Peter Kim, President of MERCK Research Laboratories, issued a press release saying:

"Merck strongly disagrees with the conclusions of an observational analysis by Graham et al, presented at an international medical meeting this week ... ."

-22-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

"... Merck stands behind the efficacy and safety,
including cardiovascular safety, of VIOXX."

75. On September 27, 2004, MERCK informed the FDA that the. Data

Safety Monitoring Board for an ongoing long-term study of VIOXX,

known as the APPROVe study, had recommended that the study be

stopped early for safety reasons.

76. The APPROVe study was not intended to be a cardiovascular risk

assessment study. It was commissioned by MERCK to look at the

effect of VIOXX in people at risk for developing recurrent colon

polyps.

77. The APPROVe study demonstrates an increased risk of cardiovascu-

lar adverse events, including heart attacks and strokes, for the VIOXX

population relative to the placebo population in the study, particularly

for people taking VIOXX for more than 18 months.

78 MERCK representatives informed the FDA in a September 28, 2004,

meeting that MERCK would withdraw VIOXX from the United States

market.

79. MERCK and the FDA each announced the withdrawal of VIOXX from

the United States market on September 30, 2004. MERCK also

announced worldwide withdrawal the same day.

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

80.   An FDA analysis, based on data from the Kaiser Permanente study, projects that 27,785 heart attacks and sudden cardiac deaths "would have been avoided" had Celebrex been used instead of VIOXX.

81.   Approximately 20 million people in the United States took VIOXX between its introduction in 1999 and its withdrawal in 2004.

**E.   First Basis for Imposing Liability: Strict Liability in Tort Under 402A**

82.   MERCK developed, patented, studied, manufactured, and marketed VIOXX.

83.   The VIOXX taken by Plaintiffs, CHERYL D. AILER, CLARA F. BROWN, JOSEPH J. MORGESE, ELWOOD M. PARKERSON, EILEEN E. RAINS, BRYAN LEE ROBERTS and HAROLD ALLEN PULLEY, was not materially altered between the time it was placed into the stream of commerce by MERCK and the time it was taken by Plaintiffs, CHERYL D. AILER, CLARA F. BROWN, JOSEPH J. MORGESE, ELWOOD M. PARKERSON, EILEEN E. RAINS, BRYAN LEE ROBERTS and HAROLD ALLEN PULLEY.

84.   VIOXX is a defective product in the sense that it is not reasonably safe for its intended use,' based on an objective analysis weighing its

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

risks and benefits against those of alternative pain relief drugs, which were available throughout the time VIOXX was on the market.

85.   The design of the chemical formula for VIOXX is defective.

86.   VIOXX is also defective because it was not accompanied by adequate warnings to health care professionals or to those who took the drug of its cardiovascular adverse event risks. Moreover, the warnings that were given were diluted and substantially rendered ineffective by MERCK'S misleading promotional efforts directed both at health care professionals and the public.

87.   VIOXX's risk of cardiovascular adverse events made it more dangerous than its consumers would expect or anticipate.

88.   Plaintiffs, CHERYL D. AI LER, CLARA F. BROWN, JOSEPH J. MORGESE, ELWOOD M. PARKERSON, EILEEN E. RAINS, BRYAN LEE ROBERTS and HAROLD ALLEN PULLEY, did not know, and a reasonable person under the same or similar circumstances would not have had reason to know, of the VIOXX's defects.

89.   Plaintiffs, CHERYL D. AI LER, CLARA F. BROWN, JOSEPH J. MORGESE, ELWOOD M. PARKERSON, EILEEN E. RAINS, BRYAN LEE ROBERTS and HAROLD ALLEN PULLEY, took VIOXX under

-25-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

circumstances that were within the range of intended uses that were anticipated by MERCK.

**F.      Second Basis for Imposing Liability: Strict Liability Under 402E**

90.    MERCK's VIOXX marketing, including direct-to-consumer advertising and promotions directed toward health care professionals, was a sustained campaign for over five years characterized by misrepresentations by commission and omission as to the risks and benefits, particularly as to cardiovascular adverse event risks, of the drug.

91.    The public, including Plaintiffs, CHERYL D. AILER, CLARA F. BROWN, JOSEPH J. MORGESE, ELWOOD M. PARKERSON, EILEEN E. RAINS, BRYAN LEE ROBERTS and HAROLD ALLEN PULLEY, and prescribing physicians, including Plaintiffs' prescribing physician, reasonably relied on MERCK's misrepresentations as to VIOXX's risks and benefits in deciding to take it and prescribe it.

**G.      Third Basis for Imposing Liability: Negligence.**

92.    MERCK did not use reasonable care in designing VIOXX.

93.    MERCK did an unreasonably poor job of studying the cardiovascular risks of VIOXX before seeking approval to market it.

-26-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

94.    MERCK acted unreasonably each year VIOXX was on the market by not initiating a study to assess its cardiovascular risks in light of mounting evidence that VIOXX could be contributing to avoidable heart attacks, strokes, and other cardiovascular adverse events.

95.    MERCK unreasonably failed to advise health care professionals and the public to restrict the use of VIOXX to short term therapy for those at high risk for gastrointestinal adverse events.

96.    MERCK unreasonably failed to adequately warn of VIOXX's risk of cardiovascular adverse events.

97.    MERCK unreasonably presented unsubstantiated, false, and/or misleading information as to the risks and benefits of VIOXX to health care professionals and to the public.

98.    It was unreasonable for MERCK to eviscerate the cardiovascular risk information in VIOXX's prescribing information by minimizing these risks, making unsubstantiated comparison claims, and exaggerating the benefits and approved uses of the drug in MERCK's promotional campaigns for it.

99.    MERCK acted unreasonably in making a series 9f marketing decisions to defend VIOXX, despite growing evidence that it contrib-

-27-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

utes to serious and sometimes fatal cardiovascular events, in an effort to maintain the share of the Cox-2 inhibitor market represented by VIOXX, until MERCK could get its new cox-2 inhibitor, Arcoxia, on the market to replace VIOXX.

**H.    Fourth Basis for Imposing Liability: Breach of Implied Warranty.**

100.    A warranty that a product is reasonably fit for its intended purpose is imposed by law on the seller of the product, including MERCK in the sate of VIOXX.

101.    MERCK breached this implied warranty, because VIOXX is not reasonably fit for its intended purpose for the reasons explained in Sections E, F, and G of this complaint.

102.    Plaintiffs, CHERYL D. AI LER, CLARA F. BROWN, JOSEPH J. MORGESE, ELWOOD M. PARKERSON, EILEEN E. RAINS, BRYAN LEE ROBERTS and HAROLD ALLEN PULLEY, reasonably relied on the belief that VIOXX is reasonably safe for its intended purpose in making the decision to take the drug.

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

I.    **Fifth Basis for Imposing Liability: Breach of Express Warranty.**

103.  MERCK created an express warranty that VIOXX is reasonably safe for its intended purpose through the representations, described earlier in this complaint, made to health care professionals and to the public.

104.  MERCK breached this express warranty, because VIOXX is not reasonably safe for its intended purpose.

105.  Plaintiffs, CHERYL D. AILER, CLARA F. BROWN, JOSEPH J. MORGESE, ELWOOD M. PARKERSON, EILEEN E. RAINS, BRYAN LEE ROBERTS and HAROLD ALLEN PULLEY, reasonably relied on MERCK's express warranty in making the decision to take the drug.

J.    **LOUIS L. McCOY, JR.'s personal injury claim.**

106.  LOUIS L. McCOY, JR.'s mother, CHERYL D. AILER, began taking VIOXX on September 24, 2004, while she was pregnant with LOUIS L. McCOY, JR..

107.  On June 22, 2005, LOUIS L. McCOY, JR. was born in Georgia.

108.  CHERYL D. AILER's treating physician(s) stated that LOUIS L. McCOY, JR. suffered a stroke while in his mother's womb, prior to his birth, and again suffered another stroke on or about at the age of eight (8) months, both as a result of taking VIOXX.

-29-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

109.    CHERYL D. AILER's ingestion of VIOXX during her pregnancy with
        LOUIS L. McCOY JR. was a substantial contributing cause, or the
        proximate legal cause, of LOUIS L. McCOY, JR.'s strokes and
        disabilities.

110.    MERCK's conduct, as identified in any one, all, or a combination of
        the five bases of liability identified in this complaint, was a substantial
        contributing cause, or the proximate legal cause, of this heart attack.

111.    These strokes resulted in:

        a.    permanent disability,

        b.    shortened life expectancy,

        c.    otherwise unnecessary medical expenses to date,

        d.    otherwise unnecessary future medical expenses,

        e.    other unnecessary physical therapy and educational training
              expenses to date,

        f.    otherwise unnecessary future physical therapy and educational
              training expenses,

        g.    loss of an impaired quality of life and the benefits associated
              therewith to date, and

-30-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

> h.  permanent impairment of physical handicaps, educational inability, earning capacity and related benefits.

**K.  CHERYL D. AILER's loss of the company of a normal natural child and other related claims.**

112.  As results of the strokes suffered by her son, LOUIS L. McCOY, JR., during the time she was pregnant with her son and eight (8) months after his birth, CHERYL D. AILER:

> a.  has lost a substantial measure of her non-normal minor son's company to date,
>
> b.  will lose a substantial measure of her non-normal minor son's company in the future,
>
> c.  has lost the past and future of her minor son, LOUIS L. McCOY, JR.'s support and services;
>
> d.  has lost her ability to be gainfully employed as she has to devote her time and energies to the attention to her minor son's needs and requirements to date,
>
> e.  has lot a substantial measure of ability to be gainfully employed in the future as she has to devote all of her time and

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

energies to the attention to her minor son's needs and require-

ments in the future„

f.      has lost a substantial measure of the value of her minor son's

love, affection and company to date, and

g.      will lose a substantial measure of the value of her minor son's

love, affection and company in the future.

**L.      CLARA F. BROWN's personal injury claim.**

113.    CLARA F. BROWN began taking VIOXX in 2001.

114.    In 2001, CLARA F. BROWN, at the age of 76 years, suffered a heart

attack and subsequent death.

115.    CLARA F. BROWN's ingestion of VIOXX was a substantial contribut-

ing cause, or the proximate legal cause, of this heart attack and

death.

116.    MERCK's conduct, as identified in any one, all, or a combination of

the five bases of liability identified in this complaint, was a substantial

contributing cause, or the proximate legal cause, of this heart attack.

117.    This heart attack resulted in:

a.      permanent disability,

b.      shortened life expectancy,

-32-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

    c.    otherwise unnecessary medical expenses to date,

    d.    otherwise unnecessary future medical expenses,

    e.    loss of income and related benefits to date,

    f.    permanent impairment of earning capacity and related bene-

fits,

    g.    .loss of the enjoyment of life, and

    h.    unexpected death.

**K.**    **CHARLIE BROWN's loss of consortium and household services claims.**

118.    As results of the heart attack of his wife in 2001 and her subsequent

death, CHARLIE BROWN:

    a.    has lost a substantial measure of his wife's consortium to date,

    b.    will lose a substantial measure of his husband's consortium in

the future,

    c.    has lost a substantial measure of the value of his wife's

household services,

    d.    will lose a substantial measure of the value of his wife's

household services in the future, and has incurred the unex-

pected expenses of his wife's death.

-33-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

**M.    JOSEPH J. MORGESE's personal injury claim.**

119.   JOSEPH J. MORGESE began taking VIOXX in 1999.

120.   On 2001, JOSEPH J. MORGESE, at the age of 71 years, suffered internal. bleeding necessitating a three (3) pint blood transfer and a myriad of other serious health problems.

121.   JOSEPH J. MORGESE's ingestion of VIOXX was a substantial contributing cause, or the proximate legal cause, of his health problems.

122.   MERCK's conduct, as identified in any one, all, or a combination of the five bases of liability identified in this complaint, was a substantial contributing cause, or the proximate legal cause, of this internal bleeding and a myriad of other serious health problems.

123.   This heart attack resulted in:

a.    permanent disability,

b.    shortened life expectancy,

c.    otherwise unnecessary medical expenses to date,

d.    otherwise unnecessary future medical expenses,

e.    loss of income and related benefits to date, and

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

    f.    permanent impairment of earning capacity and related bene-

        fits.

**K.**    **ANGELA M. MORGESE's loss of consortium and household services claims.**

124.    As results of the internal bleeding and other serious health problems suffered by her husband in 2001, ANGELA M. MORGESE:

    a.    has lost a substantial measure of her husband's consortium to date,

    b.    will lose a substantial measure of her husband's consortium in the future,

    c.    has lost a substantial measure of the value of her husband's household services, and

    d.    will lose a substantial measure of the value of her husband's household services in the future.

**L.**    **ELWOOD M. PARKERSON's personal injury claim.**

125.    ELWOOD M. PARKERSON began taking VIOXX on a date to be determined.

126.    As a result of taking VIOXX, ELWOOD M. PARKERSON, suffered a severe disabilitating stroke and subsequent death.

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

127. ELWOOD M. PARKERSON's ingestion of V10XX was a substantial contributing cause, or the proximate legal cause, of this debilitating stroke.

128. MERCK's conduct, as identified in any one, all, or a combination of the five bases of liability identified in this complaint, was a substantial contributing cause, or the proximate legal cause, of this debilitating stroke.

129. This debilitating stroke resulted in:

    a.      permanent disability,

    b.      shortened life expectancy,

    c.      otherwise unnecessary medical expenses to date,

    d.      otherwise unnecessary future medical expenses,

    e.      loss of income and related benefits to date,

    f.      permanent impairment of earning capacity and related bene-fits, and

    g.      death.

**M.    EILEEN E. RAINS' personal injury claim.**

130. EILEEN E. RAINS began taking VIOXX in 2002.

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

131.    On October 5, 2005, EILEEN M. RAINS, at the age of 59 years, suffered sudden cardiac arrest and subsequent death.

132.    EILEEN E. RAINS' ingestion of VIOXX was a substantial contributing cause, or the proximate legal cause, of this sudden cardiac arrest and subsequent death.

133.    MERCK's conduct, as identified in any one, all, or a combination of the five bases of liability identified in this complaint, was a substantial contributing cause, or the proximate legal cause, of this heart attack.

134.    This sudden cardiac arrest attack resulted in:

a.      permanent disability,

b.      shortened life expectancy,

c.      otherwise unnecessary medical expenses to date,

d.      otherwise unnecessary future medical expenses,

e.      loss of income and related benefits to date,

f.      permanent impairment of earning capacity and related bene-fits, and

g.      death.

-37-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

**N.    PATRICK RAINS' loss of consortium and household services claims.**

135.   As results of the sudden cardiac arrest and subsequent death of his

wife on October 5, 2005, PATRICK RAINS:

a.    has lost a substantial measure of his wife's consortium to date,

b.    will rose a substantial measure of his wife's in the future,

c.    has lost a substantial measure of the value of his wife's

household services,

d.    will lose a substantial measure of the value of his wife's

household services in the future, and

e.    the unexpected death expenses of his wife.

**0.    BRYAN LEE ROBERT's personal injury claim.**

136.   BRIAN LEE ROBERTS began taking VIOXX in early to mid 2002.

137.   On November 1, 2002, BRYAN LEE ROBERTS, at the age of 44

years, suffered a massive heart attack.

138.   BRYAN LEE ROBERTS's ingestion of VIOXX was a substantial

contributing cause, or the proximate legal cause, of this heart attack.

139.   MERCK's conduct, as identified in any one, all, or a combination of

the five bases of liability identified in this complaint, was a substantial

contributing cause, or the proximate legal cause, of this heart attack.

-38-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

140.   This heart attack resulted in:

a.      permanent disability,

b.      shortened life expectancy,

c.      otherwise unnecessary medical expenses to date,

d.      otherwise unnecessary future medical expenses,

e.      loss of income and related benefits to date, and

f.      permanent impairment of earning capacity and related benefits.

**P.      HAROLD ALLEN PULLEY's personal injury claim.**

141.   HAROLD ALLEN PULLEY began taking VIOXX in December, 2003.

142.   In December, 2003, HAROLD ALLEN PULLEY began having severe chest pains which continued through November 24, 2005, when HAROLD ALLEN PULLEY was diagnosed with congestive heart failure.

143.   HAROLD ALLEN PULLEY's ingestion of VIOXX was a substantial contributing cause, or the proximate legal cause, of this congestive heart failure.

144.   MERCK's conduct, as identified in any one, all, or a combination of the five bases of liability identified in this complaint, was a substantial contributing cause, or the proximate legal cause, of this heart attack.

-39-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

145.   This congestive heart failure resulted in:

    a.   permanent disability,

    b.   shortened life expectancy,

    c.   otherwise unnecessary medical expenses to date,

    d.   otherwise unnecessary future medical expenses,

    e.   loss of income and related benefits to date, and

    f.   permanent impairment of earning capacity and related benefits.

**Q.   STACEY ELIZABETH PULLEY's loss of consortium and household services claims.**

146.   As results of the congestive heart failure and other serious health problems suffered by her husband in 2003, STACEY ELIZABETH PULLEY:

    a.   has lost a substantial measure of her husband's consortium to date,

    b.   will lose a substantial measure of her husband's consortium in the future,

    c.   has lost a substantial measure of the value of her husband's household services, and

-40-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

        d.       will lose a substantial measure of the value of her husband's household services in the future.

**R.    Intentional, reckless and/or malicious conduct.**

    147.    The totality of MERCK's conduct, as described in this complaint, is susceptible of being interpreted by reasonable people as demonstrating an irresponsible attitude toward drug safety, and as being willful, intentional, reckless, and/or malicious.

**S.    Relief Requested.**

WHEREFORE, the Plaintiffs, CHERYL D. AILER, Individually, and as natural mother and guardian of LOUIS L. McCOY, JR., a minor; CHARLIE BROWN, as surviving spouse of CLARA F. BROWN, deceased; JOSEPH J. MORGESE, a married man, joined by his wife, ANGELA M. MORGESE; ELWOOD M. PARKERSON, deceased; PATRICK RAINS, as surviving spouse of EILEEN E. RAINS, deceased; BRYAN LEE ROBERTS, a single man; and HAROLD ALLEN PULLEY, a married man, joined by his wife, STACEY ELIZABETH PULLEY, request the following relief:

        a.       Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do it, put them where they would have been if each of the Plaintiffs had

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

not had a serious and/or deadly medical problems as a result of VIOXX described more fully above;

b.     All statutory wrongful death damages as permitted by taw;

c.     Judgment against MERCK for punitive damages in an amount found by a jury to represent fair punishment for a company with MERCK's financial resources for willfully, intentionally, recklessly, and/or maliciously breaching its duty to act in the interest of public safety and in the interest of the health of its customers, and in an amount which will deter MERCK and other pharmaceutical manufacturers from the same or similar disregard for the public's trust, health, and safety in the future.

d.     Prejudgment interest on any verdict in each of their favor to the extent allowed by applicable law.

e.     The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

f.     A trial by jury..

FURTHER, the Plaintiffs each request the following relief:

A.     CHERYL D. AILER, Individually, requests

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

1.  Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do it, put them where they would have been if each of the Plaintiffs had not had a serious and/or deadly medical problems as a result of VIOXX described more fully above;

a.  All statutory wrongful death damages as permitted by law;

b.  Judgment against MERCK for punitive damages in an amount found by a jury to represent fair punishment for a company with MERCK's financial resources for willfully, intentionally, recklessly, and/or maliciously breaching its duty to act in the interest of public safety and in the interest of the health of its customers, and in an amount which will deter MERCK and other pharmaceutical manufacturers from the same or similar disregard for the public's trust, health, and safety in the future.

c.  Prejudgment interest on any verdict in each of their favor to the extent allowed by applicable law.

d.  The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

e.  A trial by jury.

-43-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

B.    CHERYL 0. AILER, as natural mother and guardian of LOUIS L. McCOY,

JR., a minor, requests

1.    Judgment against MERCK for economic and noneconomic compen-

satory damages in an amount which will, to the extent money can do

it, put them where they would have been if each of the Plaintiffs had

not had a serious and/or deadly medical problems as a result of

VIOXX described more fully above;

a.    All statutory wrongful death damages as permitted by law;

b.    Judgment against MERCK for punitive damages in an amount

found by a jury to represent fair punishment for a company

with MERCK's financial resources for willfully, intentionally,

recklessly, and/or maliciously breaching its duty to act in the

interest of public safety and in the interest of the health of its

customers, and in an amount which will deter MERCK and

other pharmaceutical manufacturers from the same or similar

disregard for the public's trust, health, and safety in the future.

c.    Prejudgment interest on any verdict in each of their favor to the

extent allowed by applicable law.

-44-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

  d. The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

  e. A trial by jury.

C. ESTATE OF CLARA F. BROWN, requests

  1. Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do it, put them where they would have been if each of the Plaintiffs had not had a serious and/or deadly medical problems as a result of VIOXX described more fully above;

  a. All statutory wrongful death damages as permitted by law;

  b. Judgment against MERCK for punitive damages in an amount found by a jury to represent fair punishment for a company with 1VIERCK's financial resources for willfully, intentionally, recklessly, and/or maliciously breaching its duty to act in the interest of public safety and in the interest of the health of its customers, and in an amount which will deter MERCK and other pharmaceutical manufacturers from the same or similar disregard for the public's trust, health, and safety in the future.

-45-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

      c.     Prejudgment interest on any verdict in each of their favor to the extent allowed by applicable law.

      d.     The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

      e.     A trial by jury.

D.    CHARLIE BROWN, as surviving spouse of CLARA F. BROWN, deceased, requests

    1.    Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do it, put them where they would have been if each of the Plaintiffs had not had a serious and/or deadly medical problems as a result of V10)0‹ described more fully above;

      a.     All statutory wrongful death damages as permitted by law;

      b.     Judgment against MERCK for punitive damages in an amount found by a jury to represent fair punishment for a company with MERCK's financial resources for willfully, intentionally, recklessly, and/or maliciously breaching its duty to act in the interest of public safety and in the interest of the health of its customers, and in an amount which will deter MERCK and

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

other pharmaceutical manufacturers from the same or similar disregard for the public's trust, health, and safety in the future.

c.    Prejudgment interest on any verdict in each of their favor to the extent Mowed by applicable law.

d.    The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

e.    A trial by jury.

E.    JOSEPH J. MORGESE, a married man, requests:

1.    Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do it, put them where they would have been if each of the Plaintiffs had not had a serious and/or deadly medical problems as a result of VIOXX described more fully above:

a.    All statutory wrongful death damages as permitted by law;

b.    Judgment against MERCK for punitive damages in an amount found by a jury to represent fair punishment for a company with MERCK's financial resources for willfully, intentionally, recklessly, and/or maliciously breaching its duty to act in the interest of public safety and in the interest of the health of its

-47-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

customers, and in an amount which will deter MERCK and other pharmaceutical manufacturers from the same or similar disregard for the public's trust, health, and safety in the future.

c.     Prejudgment interest on any verdict in each of their favor to the extent allowed by applicable law.

d.     The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

e.     A trial by jury.

F.     ANGELA M. MORGESE, wife of JOSEPH J. MORGESE, requests

1.     Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do it, put them where they would have been if each of the Plaintiffs had not had a serious and/or deadly medical problems as a result of VIOXX described more fully above;

a.     All statutory wrongful death damages as permitted by law;

b.     Judgment against MERCK for punitive damages in an amount found by a jury to represent fair punishment for a company with MERCK's financial resources for willfully, intentionally, recklessly, and/or maliciously breaching its duty to act in the

-48-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

interest of public safety and in the interest of the health of its customers, and in an amount which will deter MERCK and other pharmaceutical manufacturers from the same or similar disregard for the public's trust, health, and safety in the future.

c.   Prejudgment interest on any verdict in each of their favor to the extent allowed by applicable law.

d.   The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

e.   A trial by jury.

G.   ESTATE OF ELWOOD M. PARKERSON, requests

1.   Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do it, put them where they would have been if each of the Plaintiffs had not had a serious and/or deadly medical problems as a result of VIOXX described more fully above;

a.   All statutory wrongful death damages as permitted by law;

b.   Judgment against MERCK for punitive damages in an amount found by a jury to represent fair punishment for a company with MERCK's financial resources for willfully, intentionally,

-49-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

recklessly, and/or maliciously breaching its duty to act in the interest of public safety and in the interest of the health of its customers, and in an amount which will deter MERCK and other pharmaceutical manufacturers from the same or similar disregard for the public's trust, health, and safety in the future.

c.     Prejudgment interest on any verdict in each of their favor to the extent allowed by applicable law.

d.     The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

e.     A trial by jury.

H.     ESTATE OF EILEEN E. RAINES, requests

1.     Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do it, put them where they would have been if each of the Plaintiffs had not had a serious and/or deadly medical problems as a result of VIOXX described more fully above;

a.     All statutory wrongful death damages as permitted by law;

b.     Judgment against MERCK for punitive damages in an amount found by a jury to represent fair punishment for a company

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

with MERCK'S financial resources for willfully, intentionally, recklessly, and/or maliciously breaching its duty to act in the interest of public safety and in the interest of the health of its customers, and in an amount which will deter MERCK and other pharmaceutical manufacturers from the same or similar disregard for the public's trust, health, and safety in the future.

c.   Prejudgment interest on any verdict in each of their favor to the extent allowed by applicable law.

d.   The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

e.   A trial by jury.

I.   PATRICK RAINS, as surviving spouse of EILEEN E. RAINS, deceased, requests

1.   Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do it, put them where they would have been if each of the Plaintiffs had not had a serious and/or deadly medical problems as a result of VIOXX described more fully above;

a.   All statutory wrongful death damages as permitted by law;

-51-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

b.   Judgment against MERCK for punitive damages in an amount found by a jury to represent fair punishment for a company with MERCK's financial resources for willfully, intentionally, recklessly, and/or maliciously breaching its duty to act in the interest of public safety and in the interest of the health of its customers, and in an amount which will deter MERCK and other pharmaceutical manufacturers from the same or similar disregard for the public's trust, health, and safety in the future.

c.   Prejudgment interest on any verdict in each of their favor to the extent allowed by applicable law.

d.   The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

e.   A trial by jury.

J.   BRYAN LEE ROBERTS, a single man, requests

1.   Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do it, put them where they would have been if each of the Plaintiffs had not had a serious and/or deadly medical problems as a result of VIOXX described more fully above;.

-52-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

    a.     All statutory wrongful death damages as permitted by law;

    b.     Judgment against MERCK for punitive damages in an amount found by a jury to represent fair punishment for a company with MERCK's financial resources for willfully, intentionally, recklessly, and/or maliciously breaching its duty to act in the interest of public safety and in the interest of the health of its customers, and in an amount which will deter MERCK and other pharmaceutical manufacturers from the same or similar disregard for the public's trust, health, and safety in the future.

    c.     Prejudgment interest on any verdict in each of their favor to the extent allowed by applicable law.

    d.     The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

    e.     A trial by jury.

K.    HAROLD ALLEN PULLEY, a married man, requests:

    1.     Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do it, put them where they would have been if each of the Plaintiffs had

-53-

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

not had a serious and/or deadly medical problems as a result of VIOXX described more fully above:

    a.     All statutory wrongful death damages as permitted by law;

    b.     Judgment against MERCK for punitive damages in an amount found by a jury to represent fair punishment for a company with MERCK's financial resources for willfully, intentionally, recklessly, and/or maliciously breaching its duty to act in the interest of public safety and in the interest of the health of its customers, and in an amount which will deter MERCK and other pharmaceutical manufacturers from the same or similar disregard for the public's trust, health, and safety in the future.

    c.     Prejudgment interest on any verdict in each of their favor to the extent allowed by applicable law.

    d.     The amount sought in compensatory damages exceeds the sum of $75,000 exclusive of interest and costs.

    e.     A trial by jury.

L.    STACEY ELIZABETH PULLEY, wife of HAROLD ALLEN PULLEY, requests:

    1.     Judgment against MERCK for economic and noneconomic compensatory damages in an amount which will, to the extent money can do

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

it, put them where they would have been if each of the Plaintiffs had

not had a serious and/or deadly medical problems as a result of

VIOXX described more fully above;

a.    All statutory wrongful death damages as permitted by law;

b.    Judgment against MERCK for punitive damages in an amount

found by a jury to represent fair punishment for a company

with MERCK's financial resources for willfully, intentionally,

recklessly, and/or maliciously breaching its duty to act in the

interest of public safety and in the interest of the health of its

customers, and in an amount which will deter MERCK and

other pharmaceutical manufacturers from the same or similar

disregard for the public's trust, health, and safety in the future.

c.    Prejudgment interest on any verdict in each of their favor to the

extent allowed by applicable law.

d.    The amount sought in compensatory damages exceeds the

sum of $75,000 exclusive of interest and costs.

e.    A trial by jury.

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

DATED this 17th day of October, 2006.

GLICK LAW FIRM, P.A.
Counsel for Plaintiffs
2255 Glades Rd., #324-A
Boca Raton, FL 33431
Tel. 561/391-0448
FAX 330-359

By:     /s/ Brian J.  Glick
        Brian J. Glick
        Fla. Bar No. 328359
        lawboca@aol.com

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE

# EXHIBIT "B"

Ailer, et al. v. Merck, etc.
U.S. District Court, Southern District of Florida
Division: Miami
Case No. 06-61450 CIV MOORE


Ms. Cutler, thank you for getting back to me on the motion to stay. Our unopposed motion to stay was filed on October 25.

As of today, October 30, I have not received an e-mail or telephone call from Brian Glick. We will agree to the proposed amendment to add plaintiffs, provided a motion to amend in accordance with Fed. R. Civ. P. 15(a) is filed. (As you are aware, Merck's answer to the complaint was filed October 18, before the notice was filed, on October 23.)

Please ask Mr. Glick to call me at 305.577.7051 if he wishes to discuss this. Catherine

**From: Laura Cutler [mailto:laura@theglicklawfirm.com]**
**Sent: Tuesday, October 24, 2006 3:52 PM**
**To: Whitfield, Catherine**
**Subject: Ailer, et al. v. Merck**



Ms. Whitfield,

This will confirm your request of yesterday wherein Brian J. Glick, as counsel for Plaintiffs in this case, will agree to a stay (so that Merck can obtain the MDL in Louisiana), but requests some consideration re the addition of the new Plaintiffs as the pleadings crossed in the mail.

He is sending you an e-mail and, since he is out of town for depositions today and tomorrow, I presume he'll call you when he returns or gets a break.

Brian's e-mail is: lawboca@aol.com

Thank you.

Laura M. Cutler
Legal Assistant to Brian J. Glick
Glick Law Firm, P.A.
2255 Glades Road, Suite 324-A
Boca Raton, FL 33431
Tel. 561/330-3559 direct
FAX 561/330-3593
laura@theglicklawfirm.com