**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to all cases | * | |
| | * | MAGISTRATE |
| | * | JUDGE KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * *

**OPPOSITION OF MERCK AND CO., INC. ("MERCK") TO PSC'S**
**MOTION TO COMPEL THE RETURN OF ATTORNEY WORK PRODUCT**

The PSC seeks the return of a document that counsel for plaintiffs turned over to at least two of their retained experts, Drs. Moye and Plunkett, in connection with the testimony those experts are providing in this litigation and related state court proceedings.[1]  The PSC contends that the disclosure was unintentional – a point Merck does not contest.  According to the PSC, counsel cooperating with the PSC mistakenly gave the document – a PSC Science Committee memo dated August 19, 2005 – to plaintiffs' expert broker, Scientific Evidence, who then included the document in the materials sent to Drs. Moye and Plunkett for their review. Assuming the disclosure was unintentional, the question before the Court is this: Does attorney work product lose its privileged status when provided to a testifying expert who "considers" the document (within the meaning of Rule 26) when forming his or her opinions?  The answer, consistent with the purposes of the federal rules, must be yes.  This is not an instance of

---

[1] Yesterday, Judge Wilson, the Texas state-court Judge presiding over *In re: Texas State Vioxx Litigation*, found the document privileged but rejected plaintiffs' "grab back" request.  He also stated that his ruling applies only in the Texas state court proceedings and does not purport to apply in other jurisdictions.  A transcript of the hearing is not yet available.

inadvertent production of a privileged document to opposing counsel.  This is an instance in which a purportedly privileged document has undeniably become part of the record underlying the testimony of two experts in this litigation.  That bell cannot be unrung.  For the reasons detailed below, the Court simply cannot pretend that the experts did not consider the document. The PSC's demand that the document be returned therefore must be rejected.

**I.   UNDER THE CIRCUMSTANCES PRESENTED HERE, THE COURT SHOULD NOT COMPEL MERCK TO RETURN THE DOCUMENT.**

In support of its motion, the PSC argues that, "[a]lthough both experts briefly reviewed the voluminous materials received from Scientific Evidence prior to preparing their expert reports, each has represented that the Agenda was not relevant and/or was not considered during the preparation of their reports."  (PSC's Mot. at 3.)  Both Dr. Moye and Dr. Plunkett have submitted affidavits to this effect.   Dr. Moye swears, for example, that he has "no specific recollection" of the document, and that he is confident that he would not have reviewed it in detail even if he had seem it during his review.  (Moye Aff. at 2, attached as Ex. E to PSC's Mot.)  In other words, the PSC would have this Court take Dr. Moye's word that he does not remember seeing the document and would not have paid any attention to it.  But Dr. Moye's credibility is in serious question, for several reasons:

- First, Dr. Moye has testified on two previous occasions that he looked at every single document on his list of materials reviewed.  (*See* 6/2/06 Dep. of L. Moye at 71:9-72:17, attached as Ex. D to PSC's Mot.; 7/6/06 Test. of L. Moye in *Grossberg v. Merck* at 1639:10-1640:10, attached hereto as Ex. E.)  Now, he claims that he did not review this document or others like it that were not "significant to [his] review." (Moye Aff. at 2, attached as Ex. E to PSC's Mot.)  His conflicting versions of the

866958v.1

thoroughness of his review, each shaped so as to provide maximum benefit to the lawyers who are paying him, is itself a legitimate subject for cross-examination.

- Second, the document is in fact the very first item on his 88-page list of materials reviewed.  (*See* "Documents Reviewed by Dr. Lemuel A. Moye," attached hereto as Ex. A.)  It is simply not credible that – if Dr. Moye was telling the truth in his previous testimony about the scope of his review – he skipped over the very first item on his list.  This is a classic credibility issue for the jury.

- Third, Dr. Moye's expert report parrots the language used in the PSC document.  The document notes that the PSC's "objective" was to find an expert witness who would say that the Watson analysis performed in 1997-1998 was a "signal" that excess cardiovascular events were associated with Vioxx.  (*See* "Vioxx Science Committee, August 19, 2005" at 8.[2])  In Dr. Moye's May 22, 2006 expert report, he refers to the Watson analysis as a "signal" of excess cardiovascular events.  (*See* Moye Expert Rpt. at ¶ 90, attached hereto as Ex. G.)  Dr. Moye's use of the precise phrase from the memo he claims not to have reviewed further undermines his credibility.

- Fourth, Dr. Moye has already been shown to lack credibility concerning the preparation of his reports and the real bases for them.  As the Court no doubt recalls, in *Barnett*, *Smith*, and *Dedrick*, Dr. Moye persisted in his refusal to concede that he had simply cut and pasted a paragraph from his Fen-Phen report into his Vioxx report, although he plainly had done so.  (*See Barnett v. Merck* 8/3/06 Tr. at 852:20-856:1, attached hereto as Ex. B; *Smith v. Merck* 9/16/06 Tr. at 1494:11-1499:14,

---

[2]     A copy of the document has been provided to the Court, and is not attached here out of an abundance of caution.

3

attached hereto as Ex. D; *Dedrick* 11/29/06 Tr. at 596:16-599:21, attached hereto as Ex. I.)

In short, the Court should not accept Dr. Moye's affidavit at face value.  As other federal courts have recognized in analogous circumstances, affidavits of this sort carry little weight.  In *Simon Property Group LP v. mySimon, Inc.*, 194 F.R.D. 644 (S.D. Ind. 2000), for example, the United States District Court for the Southern District of Indiana noted that "such an assertion by an expert witness could become too easy a dodge."  *Id.* at 649-50; *see also United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995) ("Where the expert has acquired information relevant to his opinion, [opposing counsel] should not be bound by his statements that he did not consider it."); *Bitler Investment Venture II, LLC v. Marathon Ashland Petroleum, LLC*, No. 1:04-CV-477, 2007 WL 465444 (N.D. Ind. Feb. 7, 2007) (finding that an expert's affidavit that he did not believe certain inadvertently disclosed documents related to his expert opinions was "hardly convincing evidence").  Here, given especially the parroting of the Science Committee memo in Dr. Moye's expert report and his explicit listing of the document as an item that he reviewed in forming his opinions and preparing his expert report, the Court should not accept his affidavit as conclusively answering the question whether he considered the memo when reaching his opinions.  That is a credibility determination for the jury to make.

## II.   EVEN ACCEPTING THE AFFIDAVITS OF DRS. MOYE AND PLUNKETT AS TRUE, THE PSC'S MOTION SHOULD STILL BE DENIED AS A MATTER OF LAW.

Because there is no dispute that both Drs. Moye and Plunkett received the Science Committee memo from plaintiffs' counsel, it is discoverable under Federal Rule of Civil Procedure 26(a)(2)(B) – whether the disclosure was intended or not.  Rule 26 requires disclosure

of all "data or other information considered by the witness in forming [his] opinions."[3]  As the advisory committee notes to the rule further explain:

> Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

(Fed. R. Civ. P. 26, advisory committee notes to the 1993 amendments.)

The general rule is thus that "documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report." *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001).  Under this rule, it is irrelevant that Drs. Moye and Plunkett now claim that the Science Committee memo "does not form the basis of any of [their] opinions."  So long as it was provided to them in anticipation of their expert testimony – a fact that the PSC does not dispute – Merck is entitled to a copy of the document.[4]

The PSC makes two arguments in response, each unpersuasive.  First, the PSC claims that the inadvertence of the production somehow bends the rule.  It does not.  As other federal courts have recognized, inadvertent disclosure of documents to testifying experts is disclosure

---

[3]    The PSC acknowledges this rule, but argues at the same time that "only documents used to 'form' the experts [*sic*] opinions are subject to disclosure."  (PSC's Mot. at 6-7.)  That is not the case.  In fact, the majority view is to the contrary.  *See, e.g.*, *Karn v. Ingersoll-Rand*, 168 F.R.D. 633 (N.D. Ind. 1996) ("considered" means "'to take into account'" and "invokes a broader spectrum of thought than the phrase 'relied upon'"); *accord Bitler*, 2007 W: 465444, *2 n.2 (acknowledging *Kern* ruling as the "majority view").

[4]    Merck notes, in passing, the PSC's claim that it "first learned of the inadvertent disclosure during the deposition of Dr. Farquhar."  (PSC's Mot. at 5.)  As the testimony of Dr. Plunkett's deposition that is cited by the PSC reveals, the PSC was on notice that Merck had a copy of the Science Committee document at least as early as June 1, 2006, when counsel for Merck asked Dr. Plunkett about the document.  (*See* Plunkett Dep. at 66:22-67:24, attached as Ex. C to PSC's Mot.)  That they raised no objection at that time is, in essence, a constructive waiver of their present position.

nonetheless, and nullifies a claim of privilege.  For example, in *Boring v. Keller*, the United States District Court for the District of Colorado found that attorney work product mistakenly sent to one of defendant's testifying experts – including an "expert witness letter" that "contained general suggestions to experts for their deposition testimony, as well as counsel's impressions, thoughts and opinions regarding issues" – was discoverable by plaintiff, notwithstanding defendant's claim of privilege.  *Boring v. Keller*, 97 F.R.D. 404, 405, 408 (D. Colo. 1983) (interpreting prior version of Federal Rule of Civil Procedure 26); *accord U.S. Energy Corp. v. Nukem, Inc.*, 163 F.R.D. 344 (D. Colo. 1995) (same).  The court explained, in part, that the purposes of the federal discovery rules would be frustrated if defendant were permitted to shield "critical information which was shared with defendant's expert witnesses" and "w[ould] affect the credibility of the witnesses." *Boring*, 97 F.R.D. at 408.

Here, too, the purposes of the federal discovery rules would be frustrated if this Court were to permit the PSC to "grab back" a document that it readily admits to providing to at least two testifying experts.  The document bears directly on those experts' credibility, because it suggests that their expert opinions on the Watson analysis were coached by plaintiffs' counsel.  And, Dr. Moye has essentially contradicted his prior sworn testimony regarding whether he even reviewed the document – which also goes to his credibility.  To deny Merck access to the document would be to deprive it of its ability to cross-examine plaintiffs' expert witnesses effectively, and unfairly so.

Even cases such as *Simon Property Group LP v. mySimon, Inc.* – cited by the PSC in its motion – bolster Merck's position. They are the exceptions that prove the point.  In *Simon*, defendant's counsel mistakenly disclosed to their damages expert four documents, which were then included on the expert's list of materials reviewed but (in contrast to this case) were not

866958v.1

provided to opposing counsel.  *Simon*, 194 F.R.D. at 645-46.  When plaintiff requested copies of the documents, defendant's counsel realized their mistake and sought relief from the court.  *Id.* at 646.  In support of defendant's motion, the damages expert submitted an affidavit "explaining that she 'reviewed' the four documents in question but did not 'consider, rely or take into account' these four documents in developing her opinions."  *Id.*  The court found that defendant had not waived work product protection with respect to the four documents, based in part on two factors that clearly distinguish the case:

> First, the disclosure here *was not to [plaintiff] or its lawyers*, but to an expert witness for mySimon.  This is not a case where the court is being asked to "unring a bell" that has already rung, by asking lawyers for the opposing party to forget, or pretend to forget, a critical document . . . .  Second, the documents inadvertently provided to the expert witness have essentially *nothing to do with the subject matter of her testimony. . . .*  If the documents in question had laid out mySimon's counsel's theories on damages issues or had contained factual information that counsel had gathered from witnesses on the issue of damages, the court would have little difficulty concluding that [plaintiff] would be entitled to see the documents for the purpose of cross-examining [the expert].

*Id.* at 649 (emphasis added).

Here, in contrast, the PSC is seeking to "unring the bell."  The document is related directly to Dr. Moye's and Dr. Plunkett's testimony.[5]  In other words, this is precisely the kind of case in which even the *Simon* court would have "little difficulty" finding that Merck is entitled to the document the PSC now seeks to "grab back."

Second, in citing to the *Alldread* factors, the PSC suggests that this scenario is somehow analogous to a situation in which protected documents are inadvertently disclosed to opposing

---

[5]     The document is also included on Dr. Plunkett's 80-page list of documents reviewed. (*See* "Documents Provided to Dr. Plunkett as of 5/24/2006," attached hereto as Ex. C.)  Here, too, it is the first item on the list.  Moreover, Dr. Plunkett's export report and deposition testimony also parrot the language in the document.  (*See* Plunkett Expert Rpt. at ¶ 17, attached hereto as Ex. H; Plunkett Dep. at 263:22-264:17, attached hereto as Ex. F.)

7

counsel.  Here, too, the PSC is wrong.  When work product is unintentionally disclosed to opposing counsel, only privilege rules are implicated, and they provide for a clear remedy.  On the other hand, when material is disclosed to testifying experts, the Rule 26 provisions authorizing disclosure of the bases for these experts' opinions come into play.  In these cases, fundamental fairness dictates that opposing counsel be given an opportunity to examine and utilize all materials provided to testifying experts.  *In re Pioneer*, 238 F.3d at 1375 ("[F]undamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony.  Indeed, we are quite unable to perceive what interests would be served by permitting counsel to provide core work product to a testifying expert and then to deny discovery of such material to the opposing party.").  Here, the document the PSC claims is privileged has, in fact, lost its work product protection – not because of inadvertent disclosure to Merck, but because it was turned over to plaintiffs' testifying experts.

## IV.    CONCLUSION.

For the reasons articulated above, Merck respectfully requests that this Court deny the PSC's motion.

Dated:  April 10, 2006                                  Respectfully submitted,

<div style="margin-left:40%">

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

</div>

8

Philip S. Beck
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:      312-494-4440

Douglas Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:      202-434-5029

And

John Beisner
Brian S. Currey
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:      213-430-6407

Attorneys for Merck & Co., Inc.

866958v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition to PSC's Motion to Compel the Return of Attorney Work Product has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 9th day of April, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE        PIGMAN        WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

866958v.1