UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  VIOXX | : |
| | : MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : |
| | : SECTION L |
| | : |
| *This document relates to ALL CASES* | : JUDGE FALLON |
| | : MAG. JUDGE KNOWLES |

## THE PLAINTIFFS' STEERING COMMITTEE'S REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER

**I.   INTRODUCTION**

As demonstrated by Merck's opposition to the PSC's motion for protective order, Merck seeks to use this Federal MDL court without regard to state court actions, which have a substantial interest in participating in these proceedings. Merck's proposed use of *federal de bene esse* deposition for use in state court is both disrespectful and an unwarranted intrusion into the state court actions, which are neither connected with nor coordinated with this federal MDL.[1] Of the fourteen cases that Merck cites as upcoming cases—just one, the *Barnett* retrial—is in the Federal Court. None of the other cases are directly connected with these proceedings. Since there is just one MDL trial scheduled to occur in 2007, Merck will not be burdened by delaying the depositions until after this Court has completed its review of materials being withheld by Merck as privileged.[2]

---

[1] Although the state court actions are not coordinated with the MDL, some of the lawyers involved in the state court actions have coordinating agreements with the MDL. The PSC is willing to cooperate with these attorneys but not to the detriment of the MDL.

[2] A ruling by this Court and a corresponding production of documents is anticipated well in advance of the next MDL trial, *Barnett*, which is scheduled to occur on October 29, 2007. Since the *de bene esse* depositions can be conducted prior to the next MDL trial date, there is absolutely no reason to deny the PSC's motion for a protective order.

In actuality the burden of conducting *de bene esse* depositions at this time rests squarely on plaintiffs, who will be forced to conduct depositions of witnesses that will need to be re-deposed after this Court completes its review of documents being withheld by Merck. Merck's proposed remedy of bifurcating the preservation depositions fails to cure such prejudice since without the materials being withheld by Merck, plaintiffs will be at a clear disadvantage during the initial depositions of the witnesses. This disadvantage will necessitate that the depositions be repeated in their entirety after the materials being withheld as privileged are produced.

## II. ARGUMENT

### A. Merck is Attempting to Use *De Bene Esse* Depositions in order to Gain an Unfair Advantage in State Court Proceedings

The PSC's motion for a protective order should be granted in light of Merck's thinly veiled efforts to use the MDL to circumvent proceeding in the various state courts, which it cites as the basis for scheduling depositions in this Court.[3] As noted above, there is currently just one MDL trial scheduled to occur in 2007. While the circumstances may change at some point in the future, the fact remains, as Merck acknowledges, *see* Merck's Opposition at pg. 3, that its efforts to conduct *de bene esse* deposition are aimed primarily at gaining an unfair advantage with regard to the fourteen state court trials that are scheduled to occur in 2007. However, these state court proceedings lack any relevance to the MDL so far as *de bene esse* depositions are concerned and Merck should be denied an opportunity to leverage the MDL for an advantage in the state court proceedings---particularly where Merck has made no effort to involve the courts and litigants in those state court proceedings.

In any event, Merck's contention that the *de bene esse* depositions are essential at this time in

---

[3] As predicted by the PSC in its motion for protective order, Merck's opposition makes it abundantly clear that it intends to use the *de bene esse* depositions in state court proceedings.

order to avoid the burden of producing witnesses at state court proceedings is overstated. This alleged burden is actually illusory since the witnesses Merck intends to depose are likely beyond the subpoena power of the state courts where trials are presently scheduled to occur. If Merck wishes to use such witnesses at trial its decision to do so will be a product of its litigation strategy.[4] Moreover, because Merck has deliberately undertaken to litigate each and every Vioxx case regardless of the merits, Merck is destined to experience considerable burden. Why should this Court make any effort to save Merck from a burden that is has deliberately undertaken? Especially when such efforts will be prejudicial to plaintiffs.

### B. The Taking of *De Bene Esse* Depositions at this Time will be Prejudicial to Plaintiffs

Because conducting *de bene esse* depositions at this time will result in a tremendous disadvantage to plaintiffs, this Court should intervene and order that the depositions be delayed until after the *in camera* inspection of the privileged material is completed. Unlike plaintiffs who have used preservation depositions with regard to expert witnesses whose opinions and basis for opinions have been fully disclosed and whose testimony was purposefully cross noticed in the various jurisdictions where the PSC and its attorneys are actively litigating Vioxx cases, Merck proposes to use such depositions to examine critical fact witnesses whose documents have not been fully disclosed in jurisdictions which have no connection to this Court or to the PSC. Indeed, Merck has gone so far as to specifically avoid cross noticing these depositions in the jurisdictions where those trial are pending so as to foreclose the involvement of those courts and those plaintiffs until the testimony has literally been foisted upon them. This is not the kind of cooperation and coordination that the court has envisioned and which the PSC has sought throughout these proceedings.

---

[4] The production of such witnesses is also uniquely within the control of Merck as such witnesses are Merck's employees.

To illustrate the point, Liason Counsel for the New Jersey litigation had written to Merck Counsel to determine whether or not they intended to cross notice these depositions in that forum. In a carefully crafted report, Merck's counsel indicated that it "had not yet decided" whether they would cross-notice these depositions there. *See* E-mail from Theodore Mayer, Esq. to David R. Buchanan, Esq., March 30, 2007, attached hereto as Exhibit "A". It is disingenuous for Merck to say that, on the one hand, it needs to use this Court to schedule *de benne esse* depositions in this federal court for use in state court proceedings and then coyly deny those state court litigants and their judges the opportunity to weigh in on the propriety of using these depositions in their venue. Clearly, Merck intends to gain every advantage that it can in this Court and then, when the table is set, foist these depositions on those state court litigants.[5]

To properly prepare a trial package, however, the PSC must have at its disposal all of the key documents produced by Merck when conducting the *de bene esse* depositions. To force the PSC to engage in depositions of Merck's key witnesses lacking the "crown jewels" that may become available following this court's re-review of Merck's privilege log, imposes an undue burden and prejudice upon the PSC.[6] At the time plaintiffs *de bene esse* witnesses where deposed, Merck had

---

[5] As predicted by the PSC in its motion for protective order, Merck's opposition makes it abundantly clear that it intends to use the *de bene esse* depositions in state court proceedings.

[6] Although Merck likens its proposed use of *de bene esse* depositions to preservation depositions that have been taken by plaintiffs in the past, this comparison is disingenuous. In contrast to Merck, the PSC has made every effort to coordinate *de bene esse* depositions with ongoing state court proceedings, *i.e.*, with California, Texas and New Jersey. This procedure has permitted the various state courts to weigh in before the depositions are conducted. By failing to cross-notice the depositions, Merck has effectively taken the state courts out of the equation.

Plaintiffs have also invariably conducted such depositions to work around unavoidable scheduling issues. The Witnesses Merck proposes to depose are uniquely within its control and can be produced by Merck at any time. Thus, Merck's proposed use of the *de bene esse* depositions is for the sole purpose of evading a burden it has deliberately undertaken by choosing to try each and every Vioxx case regardless of the merits.

access to all relevant materials. In contrast Merck proposes that *de bene esse* depositions of its witnesses be conducted at a time when it is still withholding some sixty six thousand documents. It should be crystal clear that the circumstances are different, and that to go forward with the depositions at this time would be prejudicial to plaintiffs.

Merck's half-baked proposal that the *de bene esse* depositions be conducted in a bifurcated manner fails to reduce the prejudice to plaintiffs. This proposal is no less prejudicial to plaintiffs since plaintiffs will be without critical documents during the first phase of the depositions. Forcing premature preservation depositions when plaintiffs do not have all the arrows in the quiver will give Merck an unfair advantage at the time of the initial depositions and will no doubt impact the tone of such depositions. Merck's proposal fails to adequately address this deficiency since it proposes to limit the second round of depositions to the newly produced documents. Merck's proposal would also make previously explored topics off limits during the second round of depositions notwithstanding the need to re-explore prior topics in light of newly produced documents. *See* Merck's Opposition at pg. 3 ("Merck would reserve for the supplemental depositions any objections to questions that are not specifically relevant to newly released documents resulting from the Court's privilege review or that address subjects fully covered by prior testimony."). Because plaintiffs will not have critical documents during the initial deposition, plaintiffs will very likely need to depose the *de bene esse* witnesses without regard to the earlier depositions.[7] Otherwise the deposition

---

[7] Merck's efforts to distinguish *Lone star Industries, Inc. v. Liberty Mutual Ins. Co.*, 1990 WL1104267, *1 (Del. Super. 1990), in this regard is misguided. *Lone Star* stands for the proposition that a deposition will cause "undue burden" when it is "premature" and will need "to be repeated after ... [a] document production is completed." *Id.* This is the precise scenario faced by this Court with regard to the PSC's motion for a protective order. Moreover, contrary to the assertion in Merck's opposition, *see* Merck's opposition at pg. 4, Fn. 1, the proposed discovery at issue in *Lone star* was not in violation of a pretrial order. *Id.* ("The Court finds that Standing Order No. 1 does not prohibit the taking of depositions prior to the time period outlined in the Order.").

transcripts will reflect an inaccurate barometer of how each witness would have testified had he or she been present at trial.

For the reasons set forth above, order and logic suggests that given the importance of these depositions they should be done properly the first time.

### III. CONCLUSION

Accordingly, the PSC's motion for a protective order should be granted.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: April 11, 2007

By:/s/ Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
  MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 11th day of April, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:   (504) 561-6024
ldavis@hhkc.com