FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2007 APR 25  PM 2:52
LORETTA G. WHYTE
CLERK

**Mark P. Robinson, Jr., SBN 054426**
**Carlos A. Prietto, III, SBN 166410**
**Ted B. Wacker, SBN 157416**
**ROBINSON, CALCAGNIE & ROBINSON**
**620 Newport Center Drive, 7th Floor**
**Newport Beach, CA 92660**
**949-720-1288; Fax 949-720-1292**
**e-mail: mrobinson@rcrlaw.net**
**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [Rule 1550(b)]<br><br>IN RE VIOXX® CASES<br>_____<br><br>FRED BENGEN, individually and as Successor-in-Interest of the Estate of JOAN BENGEN, Deceased;<br><br><br>JLENE HANSEN and BETTY McMURTREY, individually and as Successors-in-Interest of the Estate of MAURINE McMURTREY, Deceased<br><br><br>TERRI HENDERSON, PATRICIA FRANCES FRENES, TAMMY LYNN HEILDELBERGER, CLIFFORD MIRANDA, and RHONDA ESRY, individually and as Successors-in-Interest of the Estate of WILLIE HENDERSON, Deceased;<br>_____ | DOCKET NO. 2:06cv03311<br><br>MDL NO. 1657<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. Strict Liability –<br>   Failure to Warn<br>2. Negligence<br>3. Breach of Implied Warranty<br>4. Breach of Express Warranty<br>5. Deceit by Concealment<br>6. Negligent Misrepresentation<br>7. Wrongful Death<br>8. Survival Action<br><br>**DEMAND FOR JURY TRIAL** |

Fee_____
X Process_____
X Dktd _____
___ CtRmDep_____
___ Doc. No_____

1

DONALD LOCKLEAR and TINA
LOCKLEAR, individually and as
Successors-in-Interest of the
Estate of JOE LOCKLEAR,
Deceased;

EARL MCNEIL, individually and
as successor in interest for
GUIANA MCNEIL, Deceased;

SUSAN PETTY, individually and
as successor in interest for
JOHN J. PETTY, Deceased;

KARL SCHREIBER, individually
and as Successor-in-Interest
for TRAUDEL SCHREIBER, Deceased

LUPE SIERRA, individually and
as Successor-in-Interest for
RITA SIERRA, Deceased

MARLEEN VILLAREAL, individually
and as Successor-in-Interest
for ARTHUR VALVERDE, Deceased;

ROSIE WAMBA, individually and
as Successor-in-Interest for
DONALD WAMBA, Deceased;

MARY ANN WOODS, individually
and as Successor-in-Interest
for MARY A. WOODS, Deceased;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

LORI ZEMIANEK, individually    )
and as Successor-in-Interest   )
for KEVIN ZEMIANEK, Deceased,  )
                               )
                               )
              Plaintiffs,      )
                               )
    vs.                        )
                               )
                               )
MERCK & COMPANY, INC.,         )
                               )
                               )
              Defendants.      )
                               )

## COMPLAINT

## INTRODUCTION

This case involves the prescription drug Vioxx®, which was manufactured, sold, distributed and promoted by defendants primarily as a pain reliever. Defendants misrepresented that Vioxx® was a safe and effective treatment for osteoarthritis, management of acute pain in adults, and treatment of menstrual pain, when in fact the drug caused serious medical problems. Vioxx® was withdrawn from the market worldwide on September 30, 2004.

## JURISDICTION AND VENUE

1.    The jurisdiction of this Court over the subject matter of this action is predicated on 28 USC Section 1332.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Venue in this Court is proper pursuant to 28 U.S.C. §1391 in that substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendants are subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

2. This action is for wrongful death and is a survival action brought on behalf of the Plaintiffs who are the heirs and successors in interest of Decedents, who were prescribed and supplied with, received, and who have taken and ingested and consumed the prescription drug Vioxx®, as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise placed in the stream of interstate commerce by Defendant Merck & Company, Inc. This action seeks, among other relief, damages from wrongful death, damages for medical care provided to Decedent prior to death and for punitive damages for Defendants' conscious disregard for each Decedent's safety.

4

3. The injuries and damages of Plaintiffs were caused by the wrongful acts, omissions, and fraudulent misrepresentations of Defendants.

4. At all times herein mentioned, the Defendants were engaged in the business of, or were successors in interest to, entities engaged in the business of research, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the prescription drug known as Vioxx® for the use and ingestion by the Decedents.

5. At all times herein mentioned, the Defendants were authorized to do business in the state of residence of each individually named Plaintiff.

6. At all times herein mentioned, the officers and directors of the Defendants named herein participated in, authorized and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries suffered by Plaintiffs herein.

7. Plaintiffs file this lawsuit within the applicable limitations period of first suspecting that said drugs were the

5

cause of any appreciable harm sustained by Decedents and Plaintiffs. Plaintiffs could not, by the exercise or reasonable diligence, have discovered the wrongful cause of the Decedents' injuries at an earlier time because the injuries were caused without perceptible trauma or harm, and when the Decedents' injuries were discovered their cause was unknown to Plaintiffs. Plaintiffs did not suspect, nor did Plaintiffs have reason to suspect, that Decedents had been injured, the cause of the injuries, or the tortious nature of the conduct causing the injuries, until less than the applicable statute of limitations period prior to the filing of this action. Additionally, Plaintiffs were prevented from discovering this information sooner because Defendants herein misrepresented and continue to misrepresent to the public and to the medical profession that the drugs are safe and free from serious side effects, and Defendants have fraudulently concealed facts and information that could have led Plaintiffs to discover a potential cause of action.

## THE PARTIES

### The Plaintiffs

8. The Plaintiffs named herein are the known surviving heirs and successors in interest of the Decedents, who were prescribed and supplied with, received, and who took, ingested and consumed the prescription drug Vioxx® and were injured as a result.

6

1)   Plaintiff FRED BENGEN is the surviving heir of
     Decedent JOAN BENGEN who took Vioxx® and was
     injured as a result.

2)   Plaintiffs JLENE HANSEN and BETTY McMURTREY are
     the surviving heirs of Decedent MAURINE McMURTREY
     who took Vioxx® and was injured as a result.

3)   Plaintiffs TERRI HENDERSON, PATRICIA FRANCES
     FRENES, TAMMY LYNN HEILDELBERGER, CLIFFORD
     MIRANDA, and RHONDA ESRY are the surviving heirs
     of Decedent WILLIE HENDERSON who took Vioxx® and
     was injured as a result.

4)   Plaintiffs DONALD LOCKLEAR and TINA LOCKLEAR are
     the surviving heirs of Decedent JOE LOCKLEAR who
     took Vioxx® and was injured as a result.

5)   Plaintiff EARL MCNEIL is the surviving heir of
     Decedent GUIANA MCNEIL who took Vioxx® and was
     injured as a result.

6)   Plaintiff SUSAN PETTY is the surviving heir of
     Decedent JOHN J. PETTY who took Vioxx® and was
     injured as a result.

7)   Plaintiff KARL SCHREIBER is the surviving heir of
     Decedent TRAUDEL SCHREIBER who took Vioxx® and
     was injured as a result.

7

8)  Plaintiff LUPE SIERRA is the surviving heir of Decedent RITA SIERRA who took Vioxx® and was injured as a result.

9)  Plaintiff MARLEEN VILLAREAL is the surviving heir of Decedent ARTHUR VALVERDE who took Vioxx® and was injured as a result.

10)  Plaintiff ROSIE WAMBA is the surviving heir of Decedent DONALD WAMBA who took Vioxx® and was injured as a result.

11)  Plaintiff MARY ANN WOODS is the surviving heir of Decedent MARY A. WOODS who took Vioxx® and was injured as a result.

12)  Plaintiff LORI ZEMIANEK is the surviving heir of Decedent KEVIN ZEMIANEK who took Vioxx® and was injured as a result.


<u>The Defendants</u>

9. Defendant Merck & Company Inc., tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold and distributed, or otherwise placed in the stream of interstate commerce, Vioxx®, which was ingested by the Decedents. Defendant Merck & Company

8

Inc. was and is an American pharmaceutical company, incorporated under the laws of the State of New Jersey, whose principal place of business is One Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey. On information and belief, said entity does business in the state of residence of each individually named Plaintiff, and at all times relevant herein, it developed, manufactured, marketed, distributed, and sold Vioxx® in interstate commerce.

10.   This Complaint seeks redress for damages sustained by Plaintiff for Plaintiff's use of Vioxx®, manufactured and sold by the Defendants herein.

**OVERVIEW**

11.   Vioxx® was promoted by Defendants as a pain reliever, similar to Ibuprofen, but without any of the known Ibuprofen side effects. Consumers relied on Defendants' promises of safety and ease and flocked to pharmacies where millions of prescriptions were filled. What consumers received, however, were not safe drugs, but drugs which cause life-threatening heart problems, renal complications, and gastrointestinal infirmities.

12.   The market for such pain relieving drugs is huge. Vioxx® was originally indicated for osteoarthritis and pain. Approximately twenty million Americans suffer from

9

osteoarthritis alone.[1]  In 2002, the FDA approved an additional indication for rheumatoid arthritis, which affects an additional two million Americans.

13.  According to Merck, more than 52 million prescriptions have been written for Vioxx® since 1999. Defendant Merck & Company Inc. spent $135 million to promote the drug in the United States. In the year 2001, Vioxx® was the most heavily advertised drug to consumers. That advertising paid off in a return of $2.6 billion in revenue in 2001 making Vioxx® the world's tenth-biggest selling medicine.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14.  The Food and Drug Administration approved Vioxx® on May 20, 1999 for the treatment of dysmenorrhea (painful menstrual cramps), management of acute pain in adults, and for relief of the signs and symptoms of osteoarthritis. Subsequent to FDA approval, Vioxx® was widely advertised and marketed by all named Defendants as a safe and effective pain relief medication.

15.  Vioxx® is a member of a class of drugs known as "NSAIDs" (non-steroidal anti-inflammatory drug), but more specifically contains cyclooxygenase 2 ("COX-2") inhibitory

_____

[1] Statistics are from Centers for Disease Control and Prevention (CDC), National Institute of Arthritis and Musculoskeletal and Skin Diseases, part of the National Institutes of Health, and the Arthritis Foundation.

properties. Generally, NSAIDs prevent the formation of fatty acid cyclooxygenases, of which there are two known types ("COX-1" and "COX-2"). Vioxx® is generally different than NSAIDs in that it is solely a COX-2 inhibitor. The rationale being that if the COX-1 enzyme is unaltered, the patient will experience fewer gastrointestinal complications commonly associated with NSAIDs. Further, the inhibition of COX-2 enzymes is said to decrease pain and inflammation.

16.   After Vioxx® was approved and made available to the public, Merck sponsored the VIGOR study to obtain information regarding clinically meaningful gastrointestinal events and to develop a large controlled database for overall safety assessment.[2] At the conclusion of the VIGOR study, it was reported that serious cardiovascular events occurred in 101 patients who took Vioxx®, compared to 46 patients who took naproxen (a type of over-the-counter NSAID). Additionally, myocardial infarctions ("MI") occurred in 20 patients in the Vioxx® treatment group as opposed to only four patients in the naproxen treatment group.

17.   In addition to the aforementioned, Vioxx® has been linked to several severe and life threatening medical disorders including, but not limited to, edema, changes in blood pressure,

---

[2] "VIGOR" stands for Vioxx® Gastrointestinal Outcomes Research".

heart attack, stroke, seizures, kidney and liver damage, pregnancy complications and death. These known material risks were not disclosed to or shared with Decedents and Plaintiffs by any Defendant.

18.   Defendants' strategy beginning in the 1990's has been to aggressively market and sell their products by falsely misleading potential users about the products and by failing to protect users from serious dangers that Defendant knew or should have known to result from use of these products.

19.   Defendants widely and successfully marketed Vioxx® in the United States, by undertaking an advertising blitz extolling the virtues of Vioxx® in order to induce widespread use of the products. The marketing campaign consisted of advertisements, promotional literature to be placed in the offices of doctors and other health care providers, and other promotional materials provided to potential Vioxx® users.

20.   The advertising program, as a whole, sought to create the image, impression and belief by consumers and physicians that the use of Vioxx® was safe for human use, had fewer side effects and adverse reactions than other pain relief medications and would not interfere with daily life, even though the Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true.

12

21.   Defendants purposefully downplayed and understated the health hazards and risks associated with Vioxx®. Defendants, through promotional literature, audio conferences, professional meetings, and press releases deceived potential users of Vioxx® by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects. Defendants concealed material relevant information from potential Vioxx® users and minimized user and prescriber concern regarding the safety of Vioxx®.

22.   In particular, in the materials produced by Defendants, Defendants falsely misrepresented the severity, frequency and nature of adverse health effects caused by Vioxx®, and falsely represented that adequate testing had been conducted concerning Vioxx®.

23.   Defendant Merck's conduct was such that the FDA wrote the company a "Warning Letter" in September 2001 which demanded Merck correct the false and/or misleading messages contained in the promotional campaign for Vioxx®. Most if not all of the noted misrepresentations were made in reference to the VIGOR study conducted by Merck.[3]  The aforesaid warning letter delineated the following misrepresentations made during six

---

[3] The study compared the safety and tolerability of two treatments (Vioxx® vs. naproxen) inpatients with rheumatoid arthritis.

promotional audio conferences presented on behalf of Merck by
Peter Holt, M.D. Defendants misrepresented that:

a) "When you looked at the MI (myocardial
infarction) rate the rate was different for the
two groups. The MI rate for Vioxx® was 0.4
percent and if you looked at the Naprosyn arm it
was 0.1 percent, so there was a reduction in the
MIs in the Naprosyn group."

b) Defendants knew that this statement was false as
the reason for the difference between Vioxx and
naproxen has not yet been determined. Defendants
publicly asserted that the naproxen is a
"wonderful platelet inhibitor" when in fact this
has not been proven. An alternative explanation
that Defendants carefully excluded from their
promotional campaign is that Vioxx® may have pro-
thrombotic properties, therefore providing an
explanation for the increase in adverse cardiac
events.

c) Merck and its agents and/or representatives also
falsely claimed that the myocardial infarction
rate associated with the use of Vioxx® was 0.4%,
when in fact it was clearly 0.5%. Though the
difference in the number seems miniscule, when

14

dealing with tens of millions of prescriptions, the number of people effected by that 0.1% increase is very significant. Furthermore, Defendants failed to point out that the more affordable alternative, naproxen, has been statistically proven to produce **half** as many myocardial infarctions than Vioxx®.[4]

d)   Merck and its agents and/or representatives misrepresented claims regarding the efficacy of Vioxx® as compared to its competitor, Celebrex. When publicly comparing the VIGOR study to a study done on Celebrex known as "CLASS", Defendants failed to inform consumers that the patient populations in the two studies were extremely different.[5]  For instance, the VIGOR study *excluded* patients who had angina or congestive heart failure with symptoms that occurred at rest or with minimal activity, as well as patients taking aspirin or other anti-platelet agents. The CLASS study did not exclude

---

[4] Such misrepresentation and omissions were made not only at promotional audio conferences in June 2000, but also at the Annual Meeting of the American Society of Health-Systems Pharmacists (ASHP), in Los Angeles, California, on June 3-June 6, 2001.

[5] "CLASS" stands for Celebrex Long-Term Arthritis Safety Study.

these patients, therefore making it more than likely that the CLASS trial included patients with a higher risk for myocardial infarctions prior to their ingestion of Celebrex. Nevertheless, Defendants used the results from aforementioned studies to misrepresent that Vioxx® was the better drug.

e)  Merck and its agents and/or representatives made false statements about the risk of Vioxx® therapy in patients who are taking warfarin. At an audio conference on June 16, 2000, Defendants stated, "…if you look at the thromboembolic events it's very clear that these selective COX-2 inhibitors (of which Vioxx® is a member) have the benefit of not having platelet aggregation and bleeding time, and therefore, can be used safely in terms of post-op and with Coumadin[6]."  This statement flies in the face of the product insert (PI) included with each prescription of Vioxx®. Said insert states that "…in post-marketing experience, bleeding events have been reported, predominately in the elderly, in association with

---

[6] Coumadin is a specific type of warfarin.

increases in prothrombin time in patients

receiving Vioxx® concurrently with warfarin."

f) Defendants' promotional audio conferences failed

to present serious and significant risks

associated with Vioxx® therapy. For example,

Defendants failed to state that Vioxx® is

contraindicated in patients who have experienced

asthma, urticaria, or allergic-type reactions

after taking aspirin or other NSAIDs. Defendants

also failed to present the gastrointestinal

("GI") warning about the possibility of serious

GI toxicity such as bleeding, ulceration, or

perforation in patients taking Vioxx®. Moreover,

Defendants failed to present Vioxx®'s precautions

for use in patients who have liver and kidney

disease, information about patient populations in

which Vioxx®'s use is not recommended, such as

women in late pregnancy, and information about

Vioxx®'s most common adverse events.

24. As a result of the Defendants' advertising and

marketing efforts, and representations concerning the subject

products, Vioxx® was and continued to be pervasively prescribed

throughout the United States, until it was voluntarily withdrawn

from the market in September of 2004.

25.  If Decedents in this action had known the risks and dangers associated with Vioxx®, the Decedents would not have taken Vioxx and consequentially would not have been subject to its fatal side effects.

## FIRST CAUSE OF ACTION

## STRICT LIABILITY – FAILURE TO WARN

26.  Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

27.  The drug product previously described was defective at the time of its manufacture, development, production, testing, inspection, endorsement, prescription, sale and distribution, in that, and not by way of limitation, said product and its warnings, instructions and directions failed to warn of the dangerous propensities of said product, which risks were known or reasonably scientifically knowable to Defendants. The Defendants and each of them, knew or should have known of the defective condition, characteristics and risks associated with said product, as previously set forth herein.

28.  At all times herein mentioned, the aforementioned product was defective, and Defendants knew that the product was to be used by the user without inspection for defects therein. Moreover, Decedents neither knew, nor had reason to know at the

time of the use of the subject products, of the existence of the aforementioned defects.

29.   As a result of the defective condition of the aforementioned product, Decedents suffered injuries and damages as alleged herein.

## SECOND CAUSE OF ACTION

### NEGLIGENCE

30.   Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

31.   At all times herein mentioned, Defendants had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of Vioxx®.

32.   At all times herein mentioned, Defendants negligently and carelessly manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold the aforementioned products and failed to adequately test and warn of the risks and dangers of the aforementioned products.

33.   Despite the fact that Defendants knew or should have known that Vioxx® caused unreasonable, dangerous side effects, Defendants continued to market Vioxx® to consumers including Plaintiff, when there were safer alternative methods of treating osteoarthritis and acute pain.

34.   Defendants knew or should have known that consumers such as Decedents would foreseeably suffer injury as result of Defendants' failure to exercise ordinary care as described above. Defendants' negligence was a proximate cause of the Decedents' injuries, harm and economic loss that Plaintiffs suffered, and will continue to suffer, as described and prayed for herein.

### THIRD CAUSE OF ACTION

### FOR BREACH OF IMPLIED WARRANTY

35.   Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

36.   Prior to the time that Decedents used the aforementioned products, Defendants impliedly warranted to Decedents and Decedents' agents and physicians that said products were of merchantable quality and safe and fit for the use for which they were intended.

37.   Plaintiffs were and are unskilled in the research, design and manufacture of the aforementioned products and

20

reasonably relied entirely on the skill, judgment and implied warranty of the Defendants in using the aforementioned products.

38.   The aforementioned product was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that Vioxx® had dangerous propensities when put to its intended use and would cause severe injuries to the user.

39.   As a result of the aforementioned breach of implied warranties by Defendants and each of them, Decedents and Plaintiffs suffered injuries and damages as alleged herein.

### FOURTH CAUSE OF ACTION

### FOR BREACH OF EXPRESS WARRANTY

40.   Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

41.   At all times herein mentioned, Defendants expressly represented and warranted to Decedents and Decedents' agents and physicians, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that the aforementioned product was safe, effective, fit and proper for their intended use. In reliance upon said warranties, Decedents purchased said product.

21

42.  In utilizing the aforementioned products, Decedents relied on the skill, judgment, representations and foregoing express warranties of the Defendants, and each of them. Said warranties and representations were false in that the aforementioned products were not safe and were unfit for the uses for which they were intended.

43.  As a result of the foregoing breach of express warranties by the Defendants Decedents and Plaintiffs sustained the injuries and damages as herein alleged.

## FIFTH CAUSE OF ACTION

## DECEIT BY CONCEALMENT

44.  Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

45.  Defendants from the time that Vioxx® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, willfully deceived Decedents by concealing from the Decedents, Decedents' physicians and the general public, the true facts concerning said pharmaceutical products, which the Defendants, had a duty to disclose.

46.  As set forth above, Defendant Merck & Company, Inc. sponsored a large study which concluded that patients taking

22

Vioxx® had four times the risk of heart attacks and that the risk appears to increase over time.

47.   As set forth above, Defendant Merck & Co., Inc. received letters from the Department of Health and Human Services in December of 1999 stating that it had been determined that the promotional pieces utilized by Defendant Merck & Co., Inc. were false and misleading because they contained misrepresentations of Vioxx®'s safety profile, unsubstantiated comparative claims, and were lacking in fair balance.

48.   At all times herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of the aforementioned drug products and willfully deceive Decedents, Decedents' physicians and the general public as to the health risks and consequences of the use of Vioxx®. Defendants were aware of the foregoing, and that Vioxx® was not safe, fit and effective for human consumption, the use of Vioxx® is hazardous to health, and Vioxx® has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Decedents and Plaintiffs as delineated herein.

49.   The Defendants intentionally concealed and suppressed the true facts concerning Vioxx® with the intent to defraud Decedents, in that the Defendants knew that Decedents' physicians would not prescribe Vioxx®, and Decedents would not

23

have used Vioxx®, if they were aware of the true facts concerning the dangers of Vioxx®.

50.   As a result of the foregoing fraudulent and deceitful conduct by the Defendants Decedents and Plaintiffs suffered injuries and damages as alleged herein.

## SIXTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

51.   Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

52.   Defendants from the time that Vioxx® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, made false misrepresentations, as previously set forth herein, to Decedents, Decedents' physicians and the general public, including but not limited to the misrepresentation that Vioxx® was safe, fit and effective for human consumption. At all times herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of Vioxx® and willfully deceive Decedents, Decedents' physicians and the general public as to the health risks and consequences of the use of the aforementioned products.

53.   The Defendants made the foregoing representation without any reasonable ground for believing them to be true.

These representations were made directly by Defendants, by sales representatives and other authorized agents of said Defendants, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance and the prescription, purchase and use of the subject products.

54.   The foregoing representations by the Defendants were in fact false, in that Vioxx® was not safe, fit and effective for human consumption, the use of Vioxx® is hazardous to health, and Vioxx® has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Decedents and Plaintiffs as delineated herein.

55.   The foregoing representations by Defendants were made with the intention of inducing reliance and the prescription, purchase and use of Vioxx®.

56.   In reliance on the misrepresentations by the Defendants Decedents were induced to purchase and use Vioxx®. If Decedents had known of the true facts and the facts concealed by the Defendants, Decedents would not have used Vioxx®. The reliance of Decedents upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

25

57.  As a result of the foregoing negligent misrepresentations by the Defendants Decedents and Plaintiffs suffered injuries and damages as alleged herein.

## SEVENTH CAUSE OF ACTION

### WRONGFUL DEATH

58.  Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

59.  As a result of the conduct of Defendants and the ingestion of Vioxx® by Decedent, the Decedents suffered fatal injuries.

60.  As a result of the death of the Decedents, Plaintiffs were deprived of love, companionship, comfort, support, affection, society, solace and moral support of the Decedents.

61.  Plaintiffs are entitled to recover economic and non-economic damages against all defendants for wrongful death directly and legally caused by Defendants' product and the negligence acts, errors, omissions and intentional and negligent misrepresentations of Defendants and each of them.

### EIGHTH CAUSE OF ACTION

### SURVIVAL ACTION

62.   Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

63.   Plaintiffs incurred special damages in the form of the reasonable value of services rendered for medical care for the injuries that Decedents sustained prior to Decedents' deaths, all caused by the ingestion of Vioxx®.  A cause of action for recovery of such damages by Decedents' successor(s) in interest survives death.

64.   Defendants acted in conscious disregard for the safety of Decedents with respect to matters alleged herein. Said disregard resulted in injuries and special damages, and warrants recovery of punitive damages by Decedents' successor(s) in interest against said Defendants.  The aforementioned damages survive Decedents' deaths.

### PUNITIVE DAMAGES ALLEGATIONS

### (As to the First, Second, Fifth, Sixth, Seventh, and Eighth Causes of Action, only)

65.   Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

66.   The acts, conduct, and omissions of Defendants as alleged throughout this Complaint were willful and malicious and were done with a conscious disregard for the rights of Decedents and other users of the Defendants' product and for the primary purpose of increasing defendant's profits from the sale and distribution of Vioxx®. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

67.   Prior to the manufacturing, sale and distribution of said prescribed medication Defendants and each of them knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further, Defendants through their officers, directors, managers, and agents, had knowledge that the medication presented a substantial and unreasonable risk of harm to the public, including Decedents and as such, said consumers of said drugs were unreasonably subjected to risk of injury or death from the consumption of said product.

68.   Despite such knowledge, Defendants acting through their officers, directors and managing agents for the purpose of enhancing defendant's profits, knowingly and deliberately failed to remedy the known defects in said medication and failed to

28

warn the public, including Decedents, of the extreme risk of injury occasioned by said defects inherent in said medication. Said Defendants and their individual agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of said medication knowing persons would be exposed to serious danger in order to advance Defendants' own pecuniary interest and monetary profits.

69.  Defendants' conduct was despicable, and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Decedents, entitling Plaintiffs to exemplary damages.

**WHEREFORE**, Plaintiffs pray for judgment against the Defendants as follows, as appropriate to each cause of action alleged:

1. General damages in an amount that will conform to proof at time of trial;

2. Special damages in an amount within the jurisdiction of the this Court and according to proof at the time of trial;

3. Loss of earnings and impaired earning capacity according to proof at the time of trial;

4. Medical expenses, past and future, according to proof at the time of trial;

29

5. For past and future mental and emotional distress, according to proof;

6. For punitive or exemplary damages according to proof on the First, Second, Fifth, and Sixth causes of action;

7.   Restitution, disgorgement of profits, and other equitable relief;

8.   Injunctive relief;

9.   Attorney's fees;

10.   For costs of suit incurred herein;

11.   For pre-judgment interest as provided by law; and

12.   For such other and further relief as the Court may deem just and proper.

Dated: April 9, 2007

ROBINSON, CALCAGNIE & ROBINSON

By   *Mark P. Robinson, Jr.*

MARK P. ROBINSON, JR.
CARLOS A. PRIETTO, III
TED B. WACKER
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)
Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury.

Dated: April 9, 2007

ROBINSON, CALCAGNIE & ROBINSON

By _Mark P. Robinson, Jr._

MARK P. ROBINSON, JR.
CARLOS A. PRIETTO, III
TED B. WACKER
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Attorneys for Plaintiffs