## COUNT III.

### INTENTIONAL/NEGLIGENT MISREPRESENTATION TO A LEARNED INTERMEDIARY

46.     Plaintiffs reallege all prior paragraphs of this as if fully set out herein.

47.     Merck, Jeanna Dampier, and Does 1-5, had a duty to adequately warn Mary Roberts' physician of any known adverse effects which might result from her use of VIOXX. In the exercise of this duty, Merck, Jeanna Dampier, and Does 1-5 knew or should have known that as a medical expert, Mrs. Roberts' prescribing physician would take into account representations made by Merck, Jeanna Dampier, and Does 1-5, in determining whether or not to prescribe the drug VIOXX to Jeanna Dampier at all, and/or in making a determination regarding dosage amount, and length of use. Because VIOXX was administered as a prescription drug, Merck, Jeanna Dampier, and Does 1-5, were required to warn the prescribing physician, who was to act as a learned intermediary between Merck, Jeanna Dampier, Does 1-5, and Mrs. Roberts. In violation of this duty, Merck, Jeanna Dampier, and Does 1-5, ("Defendants"), acted as follows:

a.      Defendants made representations to Mary Roberts' physician about VIOXX, and it's effects, and side effects, which Defendants knew and/or should have known were false, inaccurate, and/or misleading;

b.      Defendants knew or should have known that the false, inaccurate, and/or misleading information which they provided to the prescribing physician regarding VIOXX was material in nature;

c.      Defendants knew or should have known that the physician would rely on and act upon the false, inaccurate, and/or misleading information by

-20-

M00C510900

prescribing the drug VIOXX to Mary Roberts, and those patients of her physician similarly situated;

d. Defendants knew or should have known that Mary Roberts' physician would rely on the false, inaccurate, and/or misleading representations made by Defendants when determining whether or not and/or how to prescribe the drug VIOXX to her and other patients of her physician similarly situated;

e. Defendants knew and/or should have known that Mary Roberts' physician had a right to rely on the representations made by Defendants regarding the propensities of the drug VIOXX when determining whether or not to prescribe VIOXX to Mrs. Roberts, and other patients of her physician similarly situated; and

f. Defendants knew and/or should have known that Mary Roberts had a right to rely on the medical recommendations of her physician, and accept his advice to take the drug VIOXX as treatment for her medical condition.

48. Merck, Jeanna Dampier, and Does 1-5 acted intentionally in making the false, inaccurate, and misleading representations, described more fully above, to Mary Roberts' prescribing physician.

49. In the alternative, Merck, Jeanna Dampier, and Does 1-5 were negligent in that they should have known that representations, described more fully above, which they made to Mary Roberts' physician were false, inaccurate, and misleading.

-21-

093a815894c53266

50.     As a direct and proximate result of the misrepresentations of Merck, Jeanna Dampier, and Does 1-5, described more fully above, Mary Roberts sustained injury and damages, as set forth fully hereinafter.

## COUNT IV

### FRAUD

51.     Plaintiffs reallege all prior paragraphs of this as if fully set out herein.

52.     Merck, Jeanna Dampier, and Does 1-5 made false, inaccurate, and misleading statements regarding the efficacy and safety of the drug VIOXX to Mary Roberts, her prescribing physician, and the public at large. The specific actions of these Defendants are described more fully in paragraphs 46 through 50 above. In summary, these Defendants committed fraud when they manipulated data from various studies, and/or represented that data from various studies indicated that there were no cardiovascular risks associated with taking the drug VIOXX.

53.     As a direct and proximate result of the fraud committed by Merck, Jeanna Dampier, and Does 1 - 5, Mary Roberts, Deceased, sustained injury and damages as set forth more fully herein.

## COUNT V

### BREACH OF WARRANTY

54.     Plaintiffs reallege all prior paragraphs of this as if fully set out herein.

55.     At all times material herein, Merck marketed, sold and distributed VIOXX and knew of the use for which the aforesaid drug was being used by Mary Roberts, Deceased and impliedly warranted that the aforesaid drug was of merchantable quality and safe for its intended use.

-22-

M00C510902

56.   Further, Merck and its sales representatives represented to the treating physicians, the population of VIOXX consumers, and to the public at large and thus to Mary Roberts and her doctors that VIOXX was safe to prescribe and ingest.

57.   Such representations by Merck constituted an express warranty and/or an express factual representation upon which Mary Robert's justifiably relied in ingesting VIOXX.

58.   Merck breached its warranties to Mary Roberts described above because VIOXX is not safe to prescribe or to ingest.

59.   Mary Roberts was damaged by Merck's breach of warranty because she suffered physical injuries as a result of her reliance on the representations made by the Defendants.

60.   As a direct and proximate result of Defendants breach of warranties, as set forth herein above, Mary Roberts sustained injuries and damages, as set forth more fully hereinafter.

## COUNT VI

### COMMON LAW FRAUD

61.   Plaintiffs reallege all prior paragraphs of this as if fully set out herein.

62.   Merck, Jeanna Dampier, and John Does 1-5 misrepresented to treating physicians, the population of VIOXX consumers, and the public at large, and thus to Mary Roberts and her doctors, that VIOXX was safe to prescribe and take by falsely minimizing the cardiovascular risks associated with VIOXX, which risks were known to there Defendants.

63.   At the time they made these misrepresentations, Merck, Jeanna Dampier, and John Does 1-5 knew or should have known that these statements were false.

64.   These statements were made with the intent that those to whom they were directed would rely on them to their detriment; and Mary Roberts and her physicians did so.

-23-

M005109503

65.     As a result of Merck's, Jeanna Dampier's, and John Does 1-5's misrepresentations as above alleged, Mary Roberts suffered the damages alleged in paragraphs above.

### COUNT VII

### FRAUD BY OMISSION

66.     Plaintiffs reallege all prior paragraphs of this Complaint as if fully set out herein.

67.     Merck, Jeanna Dampier, and John Does 1-5 were in a position of superior knowledge as to the information above alleged when compared with the Mary Roberts' physician. Merck, Jeanna Dampier, and John Does 1-5 knew that Mrs. Roberts, and other members of the consuming public who were suffering from arthritis or other pain causing conditions, did not possess the knowledge and information necessary to enable them to appreciate the risks and dangers to which they were subjecting themselves by taking VIOXX to relieve the symptoms of these conditions rather than taking other available effective products. As a result of the relationship between Merck, Jeanna Dampier, John Does 1-5 and Mary Robert's treating physicians, Merck, Jeanna Dampier, and John Does 1-5 had a duty to inform physicians of these risks and dangers.

68.     Merck, Jeanna Dampier, and John Does 1-5 violated the duties owed to Mary Roberts' physician by remaining silent or issuing misleading statements when they had a duty to warn.

69.     Mary Roberts' physician reasonably relied upon these misleading statements as indicating that VIOXX continued to be safe to use. Merck thereby obtained an advantage at the expense of Mary Roberts as they continued to sell VIOXX as safe when it in fact was not.

70.     These failures to so advise, as herein alleged, constituted fraud by omission.

-24-

MOOC510604

71.     As a direct and proximate result of Defendants remaining silent or issuing misleading information, as set forth herein above, Mary Roberts sustained injuries and damages, as set forth hereinafter.

## COUNT VIII

### AIDING AND ABETTING BY JEANNA DAMPIER AND JOHN DOES 1-5

72.     Plaintiffs allege all prior paragraphs of this Complaint as if fully set out herein.

73.     As has been alleged in this Complaint, Merck has committed torts based on both intentional, and negligent conduct, resulting in injury and damage to Mary Roberts. Jeanna Dampier, and Does 1-5 knew or should have known that the actions of Merck were tortious, and were a breach of Merck's legal duties, as have been described more fully herein.

74.     Jeanna Dampier, and Does 1-5 provided substantial assistance and/or encouragement to the tortious conduct of Merck, including, but not limited to:

a.      Misrepresenting to Mary Roberts' physician that Vioxx was a safe and effective product, which could be prescribed to him in the manner determined by her physician to be appropriate to address his medical concerns.

b.      Engaging in gamesmanship with Mary Roberts' physician by avoiding providing the physician with information regarding the known adverse safety characteristics of Vioxx.

c.      By engaging in such other additional conduct, known and/or unknown, some of which has been described more fully herein.

75.     As a direct and proximate result of Defendants misrepresentations, as set forth herein above, Mary Roberts' sustained injuries and damages, as set forth hereinafter.

-25-

M00C510505

## IX. DAMAGES

### COMPENSATORY DAMAGES

76.    As a direct and proximate result of the wrongful and tortious conduct of Merck, Jeanna Dampier, and John Does 1 - 5, as set forth hereinabove, Mary Roberts sustained special damages consisting of medical expenses for the treatment of conditions arising as a result of her ingestion of VIOXX in an amount in excess of $24,250.97.

77.    Mary Roberts sustained the following non-economic damages as a direct and proximate result of the conduct of the Defendants as follows:

a.    Pain and Suffering;

b.    Mental anguish; and

c.    Loss of enjoyment of life.

### PUNITIVE DAMAGES

78.    Merck, Jeanna Dampier, and John Does 1-5 acted with actual malice, and gross negligence which evidences a willful, wanton, or reckless disregard for the safety of Mary Roberts and also committed actual fraud.

79.    An award of punitive damages against Merck, Jeanna Dampier, and John Does 1-5 is necessary and appropriate to deter Merck, Jeanna Dampier, John Does 1-5 and others similarly situated from engaging in similar conduct in the future.

-26-

M00C510906

## AD DAMNUM

WHEREFORE, Plaintiffs bring these actions against Defendants herein above named and demand judgment of and against said Defendants, jointly and severally, in an amount sufficient to reasonably and fully compensate the Plaintiffs in an amount in excess of the jurisdictional limit of this Court and for punitive damages to serve as an example to those who so act in the future, pre- and post-judgment interest and all costs of court.

> DRUG LITIGATION LIABILITY GROUP, PLLC
> Comprised of:
>
> Liston/Lancaster, PLLC
> 126 North Quitman Avenue
> Post Office Box 645
> Winona, MS 38967
>
> David H. Nutt & Associates, P.C
> 605 Crescent Blvd., Suite 200
> Ridgeland, MS 39157
>
> Pittman, Germany, Roberts & Welsh, L.L.P.
> Post Office Box 22985
> Jackson, MS 39225-2985
>
> By: _____
> ATTORNEYS FOR PLAINTIFFS

H:\04-110\P&O\Roberts Complaint.wpd

**FILED**

FEB 16 2007

JULIE H. HALFACRE, CIRCUIT CLERK

BY _____ D.C.

-27-

M00C510007



**COPY**

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY
## STATE OF MISSISSIPPI

VICKIE ROBERTS and JACKIE
AMMONS, Co-Executrixes of the
Estate of MARY ROBERTS,
deceased

**PLAINTIFFS**

VS.

CAUSE NO. 2007-028CVM

MERCK & CO., INC., JEANNA DAMPIER
AND DOES 1- 5

**DEFENDANTS**

### S U M M O N S

THE STATE OF MISSISSIPPI

TO:   MERCK & CO., INC., By service upon C T Corporation System of Mississippi, 645
Lakeland East Drive, Suite 101, Flowood, Mississippi 39232, its agent for service of
process

#### NOTICE TO DEFENDANT(S)

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND
YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Complaint to
**William Liston, Liston/Lancaster, PLLC**, the attorney for the Plaintiff(s) whose post office
address is Post Office Box 645, Winona, MS 38967; and whose street address is 126 North Quitman
Avenue, Winona, MS 38967. Your response must be mailed or delivered within thirty (30) days
from the date of delivery of this summons and Complaint or a judgment by default will be entered
against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a
reasonable time afterward.

ISSUED under my hand and the seal of said Court, this 16th day of February, 2007.

*Julie H. Halfacre*

JULIE HALFACRE, CLERK
Montgomery County Circuit Court
P. O. Box 765
Winona, MS 38967

By: _____ D.C.

MDOC510008

## PROOF OF SERVICE - SUMMONS
(Process Server)

**MERCK & CO, INC.**
**By service upon**
**C T Corporation System of Mississippi**
**645 Lakeland East Drive, Suite 101**
**Flowood, Mississippi 39232**

I, the undersigned process server, served the Summons and Complaint upon the person or entity named above in the manner set forth below:

____ **First class mail and acknowledgment service.** By mailing (by first class mail, postage prepaid), on the date stated in the Notice, copies to the person served, together with copies of the Form of Notice and Acknowledgment and return envelope, postage prepaid, addressed to the sender.

____ **Personal Service.** I personally delivered copies to _____ on the _____ day of _____, 2007, where I found said person in _____ _____ County of the State of Mississippi.

____ **Residence Service.** After exercising reasonable diligence I was unable to deliver copies to said person within _____ County, Mississippi. I served the Summons and Complaint on the _____ day of _____, 2007, at the usual place of abode of said person by leaving a true copy of the Summons and Complaint with _____ who is the _____(here insert wife, husband, son, daughter or other person as the case may be), a member of the family of the person served above the age of sixteen years and willing to receive the Summons and Complaint, and thereafter on the _____ day of _____ _____, 2007, I mailed (by first class mail, postage prepaid) copies to the person served. (Attach signed return receipt card or other evidence of actual delivery to the person served.)

____ **Certified Mail Service.** By mailing to an address outside Mississippi (by first class mail, postage prepaid, requiring a return receipt) copies to the person served. (Attach signed return receipt or the return envelope marked "Refused")

-2-

MW001510509

At the time of service I was at least 18 years of age and not a party to this action.

Fee for service $_____.

Process Server must list below:

Name:   John Basinger
Address: 511 Herod Dr.
          Winona, MS 38967
Telephone Number: (662) 283-4281
Social Security Number: 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

State of Mississippi
County of Montgomery

Personally appeared before me, the undersigned authority in and for the state and county aforesaid, the within named John Basinger who, being first by me duly sworn, states on oath that the matters and facts set forth in the foregoing "Proof of Service - Summons" are true and correct as therein stated.

_____
PROCESS SERVER

Sworn to and subscribed before me on this the ____ day of _____, A.D., 2007.

_____
NOTARY PUBLIC

My commission expires:

H:\04-110\P&O\Roberts - Merck Summons.wpd

-3-

M00C5l0910

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
02/16/2007
Log Number 511926397

**TO:**   Ellen Gregg
Womble Carlyle Sandridge & Rice, PLLC
301 North Main Street, Suite 300
Winston-Salem, NC, 27101

**RE:**   **Process Served in Mississippi**

**FOR:**   Merck & Co., Inc. (Domestic State: NJ)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Vickie Roberts and Jackie Ammons, Co-Executrixes of the Estate of Mary Roberts, Deceased., Pltfs. vs. Merck & Co., et al. Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Proof of Service, Complaint |
| **COURT/AGENCY:** | Montgomery County Circuit Court, MS<br>Case # 2007-0028CVM |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - Vioxx Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Flowood, MS |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/16/2007 at 14:03 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days of service |
| **ATTORNEY(S) / SENDER(S):** | William Liston<br>Liston/Lancaster<br>126 North Quitman Ave.<br>Winona, Ms, 38976 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Priority Overnight, 791234403924<br>Email Notification, Debra A Bollwage DEBRA_BOLLWAGE@MERCK.COM<br>Email Notification, Kristin L. Sunderman kristin_sunderman@merck.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>645 Lakeland East Drive<br>Suite 101<br>Flowood, MS, 39232 |
| **TELEPHONE:** | 601-936-7400 |

Page 1 of  1 / JS

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of the package only, not of its contents.

M00C510911

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JANET SUE MORGAN, ET AL.

**PLAINTIFFS**

VS.

CIVIL ACTION NO.3:03cv435WS

MERCK & CO, INC., ET AL.

**DEFENDANTS**

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND
## AND GRANTING DEFENDANTS' PENDING MOTIONS

THIS CAUSE came before the Court on:

1.    Plaintiffs' Motion to Remand (#6);

2.    Defendant Dr. Randall Smith's Motion for Summary Judgment (#19);

3.    Defendant Merck & Co., Inc.'s ("Merck") Motion to Reconsider the Court's Order
Granting Plaintiffs' Leave to File First Amended Complaint (#23);

4.    Merck's Motion to Stay Order Granting Plaintiffs Leave to File Amended
Complaint (#24);

5.    Plaintiffs' Motion For Leave To File First Amended Complaint (#14).

Having reviewed the Motions, briefs, supplemental submissions, exhibits and legal
authorities submitted by the parties, having heard the argument of counsel and having otherwise
fully considered the above-referenced Motions, the Court is of the opinion that the Defendants'
Motions are well-taken and should be granted and that Plaintiffs' Motion to Remand and
Plaintiffs' Motion For Leave To File First Amended Complaint are not well-taken and should be
denied.



IT IS HEREBY ORDERED that:

1.     Plaintiffs' Motion to Remand (#6) is denied, because Dr. Randall Smith is fraudulently joined. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship as between Plaintiffs and Merck, the only properly joined defendant, and the amount in controversy for each plaintiff exceeds $75,000, exclusive of interest and costs.

2.     Dr. Randall Smith's Motion for Summary Judgment (#19) is granted. Judgment is hereby entered in favor of Dr. Smith.

3.     Dr. Smith and Fictitious Defendants A, B, C and D are dismissed with prejudice from this lawsuit.

4.     Merck's Motion to Reconsider the Court's Order Granting Plaintiffs Leave to File First Amended Complaint (#23) and Merck's Motion to Stay Order Granting Plaintiffs Leave to File Amended Complaint (#24) are granted. Accordingly, the Court's Order granting Plaintiffs' Motion For Leave To File First Amended Complaint (#17) is vacated, Plaintiffs' Motion For Leave To File First Amended Complaint (#14) is denied, and Plaintiffs' First Amended Complaint (#13) is stricken and dismissed.

5.     The Stay Order entered on the Rule 16.1 Case Management Conference (#9) is lifted. The parties shall submit a Case Management Order to the Court by 5:00 p.m. on Friday, February 27, 2004.

SO ORDERED this the _____ day of _____ 2004.


_____
UNITED STATES DISTRICT JUDGE

2

Approved as to form:

_Dave Micell_ (SAT w/ Permission)
Counsel for Plaintiffs

_Anta Madaka Yum_
Counsel for Defendant Merck & Co., Inc.

_Michael Coleman_ (Antthy permission)
Counsel for Defendant Randall Smith, M.D.

JACKSON 859579v1

3

IN THE CIRCUIT COURT OF
SMITH COUNTY, MISSISSIPPI

Janet Sue Morgan, an Individual,          §
and the individuals listed on Exhibit "A",  §
                                          §
    PLAINTIFF,        §
                                          §
VS.                                       §
                                          §     CIVIL ACTION NO. 2002-561
                                          §
MERCK AND CO. (hereinafter "Merck");      §
RANDALL SMITH, M.D.,                      §
a Mississippi resident; and fictitious    §
Defendants A, B, C and D being those      §
persons, firms or corporations whose      §
actions, inactions, fraudulent suppression, §
fraud, scheme to defraud and/or other     §
wrongful conduct caused or contributed to §
the Plaintiff's injuries and damages, and §
whose true names and identities are       §
presently unknown to the Plaintiff but will §
be substituted by amendment when          §
ascertained,                              §
                                          §
    DEFENDANTS.        §
                                          §

## COMPLAINT

Trial By Jury is Requested

1.    This is a civil action brought on behalf of Plaintiff, Janet Sue Morgan, who was prescribed and used the prescription medication VIOXX (Rofecoxib). This action seeks monetary damages for personal injuries and or death pursuant to MS Code Ann. Sec. 11-7-13, and damages caused by the drugs named herein and ingested by Plaintiffs.

2.    Plaintiff, Janet Sue Morgan, is an adult resident of Smith County, Mississippi.

3.    The individuals listed on the attached Exhibit "A", are additional Mississippi resident Plaintiffs joined under Rule 20 of the Mississippi Rules Of Civil Procedure. Exhibit "A", is a one page document containing an alphabetized list of the names of twenty-nine (29)

FILED

DEC 3 1 2002

Plaintiffs, beginning with Eddie William Adams, on behalf of Janet Adams, Deceased and ending with Rosie C. Wheaton.

4.    When the word "Plaintiffs" is used herein, it is meant to refer to all Plaintiffs mentioned in Exhibit "A" and the Plaintiffs named in the style of this Complaint, except as to Count VI, which relates solely to Defendant Randell Smith, M.D.

5.    Defendant, Merck & Co., Inc., (hereinafter "Merck") is a New Jersey corporation. At all times relevant hereto, Merck was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Vioxx (Rofecoxib).  Defendant Merck may be served through its registered agent:  CT Corporation System; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

6.    Defendant Randell Smith, M.D. is a physician licensed by the State of Mississippi with his residence and principal place of business in Forrest County, Mississippi and can be served at 415 S 28th Avenue, Hattiesburg, Mississippi 39401.  Venue is proper in Smith County, Mississippi as one or more of the Defendants do business in Smith County, Mississippi, one or more of the Plaintiffs reside in Smith County, Mississippi; and one or more of the Plaintiffs' actions occurred in Smith County.

7.    Personal jurisdiction and subject matter jurisdiction are appropriate in this court as to all Defendants, as all Defendants have done business in Smith County, either directly or by agent, and have thus availed themselves of this jurisdiction.

8.    The Plaintiffs' claims accrued in whole or in part in this judicial district and one or more of the Plaintiffs resides in this judicial circuit. Defendant Merck is a foreign corporation which has been and is currently engaged in business, directly or by authorized agent, in this

2

judicial district. Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

9.     Vioxx is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendant Merck did manufacture, design, package, market and distribute this drug. Defendant Merck encouraged the use of this drug in improper patients, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. Merck aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. Merck did this to increase sales and profits.

10.     At all times relevant hereto, Merck actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Merck's conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

## COUNT I

11.     Plaintiff alleges all prior paragraphs of this complaint as if fully set out herein.

12.     The pharmaceutical Vioxx (Rofecoxib) designed, manufactured, sold and/or supplied by Defendant Merck, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

3

 

13.     Further, the pharmaceutical Vioxx designed, manufactured, marketed, sold and/or supplied by Merck was defective in its marketing due to inadequate warnings or instructions, both independently and when coupled with the aggressive marketing campaign that Merck initiated in relation to this product, both directly to the consuming public and indirectly to the physicians through drug sales representatives.

14.     Vioxx was defective due to inadequate testing and inadequate warnings.

15.     Additionally, Merck failed to provide timely and adequate post-marketing warnings or instructions after it knew or learned of the risk of injury from Vioxx via post-marketing data. The defective nature of this product is a contributing cause of Plaintiff's injury and damages.

WHEREFORE, this Plaintiff demands judgment against Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

**COUNT II**

16.     Plaintiff realleges all prior paragraphs of the Complaint as if set out herein.

17.     Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of Vioxx (Rofecoxib) into the stream of commerce.  Merck failed to exercise ordinary care in the design, manufacture, sale, testing and/or distribution of Vioxx into the stream of commerce.

18.     Merck knew or should have known that Vioxx created an unreasonable risk of bodily harm, including the risk of death.

19.     Despite the fact that Defendant Merck knew or should have known that Vioxx caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, Merck continued to market, and continue to market to this day, Vioxx to the

4

consuming public, when there were and are adequate and safer alternative methods of treatment, or opportunities for more meaningful warnings.

20.    Defendant Merck knew or should have known that consumers such as Plaintiff would foreseeably suffer injury or death as a result of its failure to exercise ordinary care as described above. Defendant's negligence was a contributing cause of Plaintiff's injuries.

WHEREFORE, this Plaintiff demands judgment against Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT III

21.    Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

22.    Defendant Merck made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to its product, Vioxx.

23.    Defendant Merck through their detail sales representatives, made representations of the safety and efficacy of the product, Vioxx.

24.    Vioxx does not conform to the express representations made through Merck's advertising and marketing efforts.

25.    Vioxx does not conform to the express representations made by Merck's agents/sales representatives.

26.    Merck's conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiff.

WHEREFORE, this Plaintiff demands judgment against Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT IV

27.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

28.    At the time Merck marketed, sold and distributed Vioxx for use by the general consuming public, including Plaintiff, Merck knew of the use for which Vioxx was intended and implicitly warranted the product to be of merchantable quality, and safe and fit for such use.

29.    Plaintiff reasonably relied upon the skill and judgment of Merck as to whether Vioxx was of merchantable quality and safe and fit for its intended use.

30.    Contrary to such implied warranty, Vioxx was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used as described above.

31.    Merck's conduct in this regard was a contributing cause of Plaintiff's injuries and damage.

WHEREFORE, this Plaintiff demands judgment against Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

### COUNT V

32.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

33.    Defendant Merck negligently, recklessly, intentionally and fraudulently made material misrepresentations that Vioxx was safe and effective. Merck represented Vioxx as safe so that the general consuming public, including Plaintiffs, in particular, would rely upon said representations when purchasing said product.

34.    Prior to and following the introduction of Vioxx into the market as a prescribable pharmaceutical medication, Defendant Merck set in motion a public relations and advertising/marketing campaign to market their product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising. Defendant's representations made concerning Vioxx as a safe and effective drug were made so

that Plaintiffs and the general consuming public would rely on said representations and seek prescriptions for this drug from their treating physicians. In fact, Plaintiff did rely on Defendant Merck's representations.

35.     At the time Defendant Merck made these representations, it was aware that these representations were false and/or made these representations with a reckless disregard to their truth. As a result of Defendants' fraud and misrepresentation, Plaintiffs suffered various injuries and damages.

WHEREFORE, this Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT VI

36.     Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

37.     Plaintiff Janet Sue Morgan sought the care and treatment of Defendant Randell Smith, M.D. (hereafter "Smith") for various ailments and maladies.

38.     In relation to said care and treatment, Defendant Smith prescribed Vioxx to Plaintiff

39.     Defendant Smith knew, or should have known, of the dangerous side effects of selectively inhibiting the COX-2 enzyme, and his prescribing said medication in light of such knowledge presents a deviation from the standard of care generally exercised by physicians under like or similar circumstances and rises to the level of medical negligence.

40.     Defendant Smith's medical negligence was a direct and proximate cause of the Plaintiff's injuries

WHEREFORE, this Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

7

 

## DAMAGES

41.     Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain injuries and damages as a direct and proximate result of Defendant's conduct and Plaintiffs will respectfully request the Court and jury to determine the amount of loss Plaintiffs have suffered and incurred, in the past and in the future, not only from a financial standpoint, but also in terms of good faith, freedom from pain, and worry.

42.     At all times relevant hereto, Defendant Merck actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this product. Merck's conduct exhibits such a entire want of care as to establish that its actions were a result of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiffs' individual rights. The Plaintiffs, therefore, are entitled to punitive damages from Merck.

43.     Plaintiffs hereby request a trial by jury on all issues in this case and hereby tenders the requisite jury fee simultaneously with this Complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs prays that the Defendant be cited to appear and answer herein; that upon final trial herein, Plaintiff recovers damages as set forth above from Defendant, including cost of Court, pre-judgment and post-judgment interest at the legal rates, and that Plaintiffs have such other and further relief, both general and special, at law and in equity, to which she may be justly entitled under the facts and attending circumstances.

JOHN RAYMOND TULLOS (MSN8303)

TULLOS & TULLOS
Post Office Box 74
Raleigh, Mississippi 39153
Phone (601) 782-4242
Fax   (601) 782-4439

ROMAN SHAUL (MSN99873)
ANDY D. BIRCHFIELD, JR.
DAVID F. MICELI
Attorneys for Plaintiff

OF COUNSEL:
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone (334) 269-2343
Fax   (334) 223-1236

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES

9

 

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

JUN 17 2003

J.T. NOBLIN, CLERK
BY_____ DEPUTY

ANNIE PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO                                                    PLAINTIFFS

VS.                                           CIVIL ACTION NO. 4:03CV12LN

MERCK & CO., INC.; G.D. SEARLE
AND CO., A SUBSIDIARY OF PHARMACIA,
INC., A FOREIGN CORPORATION;
MONSANTO COMPANY; PFIZER, INC.;
JOHN DOE #1, M.D.; JOHN DOE #2,
M.D., JOHN DOE #3, M.D., AND JOHN
DOE #4 M.D., ALL MISSISSIPPI
PHYSICIANS WHOSE TRUE NAMES AND
IDENTITIES ARE PRESENTLY UNKNOWN
OR UNCONFIRMED BUT WILL BE
SUBSTITUTED BY AMENDMENT

                                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs Amos Porter, Flora Sumrall and Annie Laurie Varnado to remand and motion for leave to amend the complaint. Defendants G.D. Searle LLC, Pharmacia Corporation, Monsanto Company (now known as Pharmacia Corporation) and Pfizer, Inc. have responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that both the motion to amend and the motion to remand should be denied.

Plaintiffs, through counsel, filed this lawsuit in the Circuit Court of Jasper County on December 31, 2002, seeking to recover damages for injuries allegedly sustained as a result of their having taken one or both of the prescription pain relief



drugs Celebrex and Vioxx.  Plaintiffs, all Mississippi residents,
named as defendants five non-resident pharmaceutical
manufacturers, and also included four "John Doe" defendants, all
of whom were alleged to be "Mississippi physicians whose true
names and identities are presently unknown or unconfirmed."
On January 10, 2003, the manufacturer defendants, who had not yet
been served with process, removed the case to this court on the
basis of diversity jurisdiction.  In their motion to remand, filed
promptly following removal, plaintiffs contend that defendants'
pre-service removal constitutes a defect in the removal procedure
which necessitates remand.  Plaintiffs further urge that in the
event the case is not remanded on that basis, they should be
allowed to amend their complaint to identify those "Mississippi
physicians" who were initially identified only as "John Doe"
defendants, as a consequence of which complete diversity will be
lacking, and remand thus required pursuant to 28 U.S.C. § 1447(e).

    There is no question but that there is now (and that there
was at the time of removal) jurisdiction based on diversity of
citizenship pursuant to 28 U.S.C. § 1332.  The amount in
controversy exceeds the $75,000 threshold for jurisdiction under
the diversity statute (a point which plaintiffs do not dispute);
and although plaintiffs, themselves Mississippi residents, named
John Doe defendants whom they represented were also Mississippi
residents, the law is clear that "the citizenship of defendants
sued under fictitious names shall be disregarded" in determining
whether there is complete diversity for removal purposes.  28

2



U.S.C. § 1441(a).  The remaining defendants named by plaintiffs in the complaint are all citizens of states other than Mississippi, and consequently there is complete diversity of citizenship between the parties.

Moreover, while plaintiffs contend that under the Supreme Court's decision in Murphy Brothers v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999), defendants could not properly remove the case until they were formally served with process and that defendants' pre-service removal was therefore defective, neither this court, nor any court identified by plaintiff or of which this court is aware, has interpreted Murphy Brothers as precluding removal by a defendant prior to formal service of process.  The Court in Murphy Brothers held only that a defendant is not obligated to take action in a case until after it has been properly served with process; it did not hold that a defendant must await service to take action.  See Mauldin v. Blackhawk Area Credit Union, No. 01 C 50221, 2002 WL 23830, *1 (N.D. Ill. January 2002)(holding that since the defendant was not properly served with process, "the thirty-day removal technically never really began," and therefore, "[the

---

¹    In Murphy Brothers, the Supreme Court, applying the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process," concluded that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service."  Id. at 347-48.

3

defendant's] notice of removal was timely"). Defendants' removal
was therefore both substantively and procedurally proper.
The question then becomes whether plaintiffs should now be
permitted to amend their complaint, post-removal, to include as
defendants those physicians who were identified as John Doe
defendants in their original complaint. For the reasons that
follow, the court is of the opinion that in this case, plaintiffs'
request to amend should be denied.

   28 U.S.C. § 1447(e) states:

   (e) If after removal the plaintiff seeks to join
   additional defendants whose joinder would destroy
   subject matter jurisdiction, the court may deny joinder,
   or permit joinder and remand the action to the State
   court.

While the statute, by its terms, refers only to post-removal
efforts by plaintiffs to "join additional defendants," the Fifth
Circuit has recognized that § 1447(e) applies, as well, to the
identification of fictitious defendants after removal. See Doleac
ex rel. Doleac v. Michalson, 264 F.3d 470, 475 (5th Cir. 2001).

   In Hensgens v. Deere & Company, 833 F.2d 1179 (5th Cir.
1987), the Fifth Circuit addressed the standard applicable to
where a plaintiff seeks to amend to add a non-diverse defendant
following removal of an action on the basis of diversity
jurisdiction. The court held that in such cases, the district
court "should consider the extent to which the purpose of the
amendment is to defeat federal jurisdiction, whether plaintiff has
been dilatory in asking for amendment, whether plaintiff will be
significantly injured if amendment is not allowed, and any other

4

factors bearing on the equities." Id. at 1182.  Although this case differs somewhat from the typical § 1447(e) case in that the non-diverse defendants proposed to be identified by the amendment were fictitiously named in the original complaint, that circumstance does not render the Hensgens analysis inappropriate since "the equitable nature of the Hensgens analysis allows the court to consider not only the plaintiff's motive, but other equitable factors," as well.  Lacy v. ABC Ins. Co., No. Civ. A. 95-3122, 1995 WL 688786, *2 (E.D. La. Nov. 17, 1995) (such factors might include "the strength of plaintiff's case against the non-diverse defendants and the diverse defendant's ability to anticipate the citizenship of the fictitiously named defendant(s) at the time of removal").

    Turning, then, to the Hensgens factors, in the case at bar, it may be somewhat difficult to characterize as truly 'dilatory' plaintiffs' request to amend since plaintiffs did indicate in their original complaint that they were desirous of suing the physicians who prescribed Vioxx and/or Celebrex to them.  On the other hand, there can be no doubt that plaintiffs themselves knew - they must have known - the identity of their own prescribing physicians at the time the complaint was filed; and yet their attorneys, rather than take the time to ascertain this information from their clients, resorted to the expedient of suing the doctors as fictitious parties.  Apparently, this was done in counsels' haste to get the complaint filed before Mississippi's recently enacted medical malpractice tort reform law took effect on January



1, 2003.[2]  The simple fact is, plaintiffs' counsel could easily have known and confirmed the identity of the John Doe defendants before filing this suit, and yet did not seek to learn the identity of the John Doe defendants, or any of them, until after the case was removed.[3]  Given that the identity of these defendants could have been known before suit was filed, it can fairly be said that the post-removal attempt to join them as defendants is "dilatory."

That brings the court to the question of plaintiffs' purpose, or motivation, in suing, or attempting to sue, these doctors.  It is perhaps true in the usual case that the fact that a plaintiff has included a defendant as a fictitious defendant in his state court pleading would tend to belie an inference that the plaintiff's motivation for seeking to amend post-removal to substitute a real party for the one previously identified only as a fictitious party is to defeat diversity jurisdiction.  <u>See</u> <u>Gilberg v. Stepan Co.</u>, 24 F. Supp. 2d 355, 358 (E.D. La. 1998) (fact that the plaintiff was unable to effect the substitution before the defendant removed "does not somehow convert any subsequent effort at substitution into a joinder "for the sole

_____

[2]    As defendants note, this new legislation, which took effect the day after plaintiffs' complaint was filed, placed significant restrictions on filing lawsuits against physicians.

[3]    Perhaps they had intended to do this prior to serving the diverse defendants, working under the mistaken impression that the case would not be removable until at least one of the diverse defendants was served, and were foiled in their efforts when the diverse defendants filed their notice of removal prior to service of process.

6