purpose of destroying diversity'"); <u>Davis v. American Commercial</u> <u>Barge Line Co.</u>, No. Civ. A. 98-537, 1998 WL 341840, at *2 (E.D. La. June 25, 1998) (substitution of real party for fictitious party named prior to removal indicates purpose of joinder is not solely to destroy diversity). Here, however, the court is persuaded that plaintiffs' motivation, not just for undertaking to now substitute these doctors as the real party defendants, but for having undertaken to sue them in the first place, was to avoid federal jurisdiction.

Plaintiffs' complaint contains eleven counts, ten of which are directed against the manufacturer defendants, and assert products liability based claims, and fraudulent and negligent misrepresentation by those defendants as to the safety and efficacy of the products at issue. A major theme of these counts – in fact, the major theme – is that the manufacturer defendants knew of the dangers posed by these drugs all along, and yet they withheld this information and intentionally marketed them, "both directly to the consuming public and indirectly to physicians through drugs sales representatives," as safe and effective, and at all times, before, during and after marketing the products, failed to provide adequate warnings or instructions of the defective nature of the products. The complaint alleges throughout that in addition to their marketing to the consuming public, the manufacturer defendants' sales representatives, who marketed the products to doctors, made fraudulent misrepresentations concerning the safety and efficacy of these

7

products.  As to the doctors themselves, plaintiffs' complaint contains one count charging medical negligence in which plaintiffs bluntly allege that these physicians prescribed these drugs to plaintiffs, that they "knew, or should have known, of the dangerous side effects of these medications," and that their prescribing these medications "presents a deviation from the standard of care generally exercised by physicians. . . ."

Although the court is aware of the propriety of pleading in the alternative, here, given plaintiffs' explicit, repeated and consistent charge that the manufacturer defendants concealed and misrepresented information about the subject drugs to physicians, plaintiffs' entirely conclusory allegation that the doctors "knew, or should have known, of dangerous side effects of these medications," without any indication of a factual basis for such an allegation, strongly suggests to the court that plaintiffs have sued the physicians only as a means of avoiding federal court. Cf. Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civil Action No. 5:00CVG102LN (S.D. Miss. Sept. 25, 2000) (notwithstanding the plaintiffs' general references to knowledge possessed by "defendants," the complaints, which alleged that the manufacturers undertook to deceive everyone, including the pharmacist defendants, about the safety of their drugs, could not "reasonably and legitimately be construed as alleging any factual basis for the conclusion that any of the pharmacy defendants had any knowledge or reason to know of any of the dangers associated with the product(s) of which plaintiffs contend they were unaware");

8

Brown v. Bristol-Myers Squibb Co., Civil Action No. 4:02CV301LN
(S.D. Miss. Dec. 2, 2002) (same).

While the proposed amended complaint does not disclose any
legitimate basis for suing these defendants, if it were to turn
out that plaintiffs, in fact, do have some basis for suing them,
there is nothing to prevent them from bringing a separate action
against them in state court, and in the court's opinion,
plaintiffs will not be prejudiced if required to proceed against
the doctors separately.* The court herein holds only that
plaintiffs may not sue them in this action.

For the foregoing reasons, it is ordered that plaintiffs'
motion to remand and to amend is denied.

SO ORDERED this 17th day of June, 2003.

_____
UNITED STATES DISTRICT JUDGE

---

* Of course, if required to proceed separately against the
doctor defendants, plaintiffs would no doubt find their claims
subject to the newly enacted medical malpractice tort reform law;
but their efforts to avoid that law in the manner they chose was
of questionable legitimacy to begin with. Had they a genuinely
cognizable claim against the doctors, they could and should have
made every reasonable effort to properly name them at the outset,
and could and should have pled a proper claim against them. They
did neither.

9

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF JASPER COUNTY, MISSISSIPPI

AMOS PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO

                                                              PLAINTIFFS

VS.

                                                              NO. 2002- 12-0236

MERCK & COMPANY, INC.
(hereinafter "Merck"); G.D. Searle and Co.
(hereinafter "Searle") a subsidiary of
Pharmacia, Inc. (hereinafter "Pharmacia"), a
foreign corporation; Monsanto Company;
Pfizer, Inc.; John Doe #1, M.D., John Doe #2,
M.D., John Doe #3, M.D., and John Doe #4,
M.D., all Mississippi physicians whose true
names and identities are presently unknown
or unconfirmed but will be substituted by
amendment

                                                              DEFENDANTS

                    F I L E D
                JASPER COUNTY, MISS.

                    DEC 3 1 2002

                MARK A. ISHEE
                CIRCUIT CLERK

## COMPLAINT

COME NOW the Plaintiffs, Amos Porter, Flora Sumrall, and Annie Laurie Varnado, in the above-styled and numbered cause, by and through their attorneys of record, and file this their Complaint against the Defendants, and in support thereof would show unto the Court the following, to-wit:

1.     This is a civil action brought on behalf of Plaintiffs who were prescribed and used the prescription medication VIOXX (Rofecoxib) and/or CELEBREX (Celecoxib). Plaintiff Sumrall used Vioxx and Celebrex which caused her to suffer renal problems, severe edema, and other injuries. Plaintiff Porter used Celebrex which caused him to suffer a stroke and other injuries. Plaintiff Varnado used Vioxx which caused her to suffer from heart problems, edema and other injuries. This action seeks damages for personal injuries and damages caused by the drugs named herein and

ingested by Plaintiffs.

2.     Plaintiff Amos Porter is an adult resident of The First Judicial District of Jasper County, Mississippi.  Plaintiff Flora Sumrall and Annie Laura Varnado are adult residents of Clarke County, Mississippi.

3.     Defendant, Merck & Co., Inc., (hereinafter "Merck") is a New Jersey corporation.  At all times relevant hereto, Merck was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Vioxx (Rofecoxib). Defendant Merck may be served through its registered agent: CT Corporation System; 631 Lakeland East Drive: Flowood, Mississippi, 39208.

4.     Defendant G. D. Searle & Co. (hereinafter "Searle") is a subsidiary of Pharmacia, Inc., and is upon information, knowledge and belief an Illinois Corporation, and is not registered to do business in Mississippi.  As such, Defendant Searle can be served via certified mail through its CEO Alan L. Heller at its principle place of business: 5200 Old Orchard Road, Skobie, Illinois, 60077.  At all times relevant to this action was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib).   Defendant Pharmacia is a Deleware Corporation licensed and registered to do business in Mississippi and can be served through its registered agent:  CT Corporation System: 631 Lakeland East Drive; Flowood, Mississippi, 39208.

5.     Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia Inc. and is a Delaware Corporation.  At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib).  Defendant Monsanto is

licensed and registered to do business in Mississippi, and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

6.      Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib).   Defendant Pfizer is licenses and registered to do business in Mississippi and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

7.      Defendants John Doe #1, M.D., John Doe #2, M.D., John Doe #3, M.D., and John Doe #4, M.D., are physicians licensed by the State of Mississippi with residence and/or principal place of business in Mississippi, whose identities are at present unknown or unconfirmed and will be substituted by amendment.

8.      Venue is proper in The First Judicial District of Jasper County, Mississippi as the part of the cause of action and injury occurred in The First Judicial District of Jasper County, Mississippi.

9.      The claims of Plaintiffs accrued in whole or in part in this judicial district and the Plaintiff resides in this judicial circuit.  Some of these Defendants are foreign corporations which have been and are currently engaged in business, directly or by authorized agent, in this judicial district. Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10.     Vioxx is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies.   Defendant Merck did manufacture, design, package, market and distribute this drug.   This Defendant encouraged the use of this drug in improper customers, misrepresented the safety and



effectiveness of this drug and concealed or understated its dangerous side effects. This Defendant aggressively marketed this drug directly to the consuming mediums, including, but not limited to, print and television advertisements. This Defendant did this to increase sales and profits.

11.    Celebrex is a pharmaceutical treatment for musculaskeletal joint pain associated with osteoarthritis among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug. Defendants Searle, Pharmacia, Monsanto and Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

12.    At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their products as herein set forth, yet continued to design, manufacture, market, distribute and sell their products so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by these products. The drug company Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.



## COUNT I

13.    Plaintiffs allege all prior paragraphs of this complaint as if fully set out herein.

14.    The pharmaceutical Vioxx (Rofecoxib) designed, manufactured, sold and/or supplied by Defendant Merck, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

15.    Further, the pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign, both directly to the consuming public and indirectly to physicians through drug sales representatives.

16.    The pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective due to inadequate testing.

17.    Additionally Defendant Merck failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Vioxx, via post-marketing data.  The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Varnados' injuries.

WHEREFORE, Plaintiffs Sumrall and Varnado deny judgment against Defendant Merck in an amount of compensatory and punitive damages as a jury deems reasonable plus costs.

## COUNT II

18.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out

herein.

19.    The pharmaceutical Celebrex (Celecoxib) designed, manufactured, sold and/or supplied by Defendants Searle, Pharmacia, Monsanto and/or Pfizer, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

20.    Further, the pharmaceutical Celebrex designed, manufactured, sold and/or supplied by one or more of the above-referenced Defendants was defective in its marketing due to inadequate warnings or instructions, both independently and when coupled with the aggressive marketing warnings or instructions, both independently and when coupled with the aggressive marketing campaign the above-referenced Defendants initiated in relation to this product, both directly to the consuming public and indirectly to the physicians through drug sales representatives.

21.    The pharmaceutical Celebrex designed, manufactured, distributed, marketed, sold and/or supplied by one or more of the above-referenced Defendants was defective due to inadequate testing.

22.    Additionally, Defendants Searle, Pharmacia, Monsanto and Pfizer failed to provide timely and adequate post-marketing warnings or instructions after the Defendants knew or learned of the risk of injury from Celebrex via post-marketing data. The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT III

23.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out herein.

24.    Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce.  Defendant Merck failed to exercise ordinary care in the design, manufacturer, marketing, sale testing and/or distribution of Vioxx into the stream of commerce.  Defendant Merck knew or should have known that Vioxx created an unreasonable risk of bodily harm, including the risk of death.

25.    Despite the fact that Defendant Merck knew or should have known that Vioxx caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, this Defendant continued to market, and to this day continues to market, Vioxx to the consuming public when there were and are adequate and safer alternative methods of treatment or opportunities for more meaningful warnings.

26.    Defendant Merck knew or should have known that consumers such as Plaintiffs Sumrall and Varnado would foreseeably suffer injury or death as a result of the Defendant's failure to exercise ordinary care as described herein.  Defendant's negligence was a contributing cause of Plaintiffs Sumrall and Varnado's injuries.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IV

27.    Plaintiffs reallege all prior paragraphs of the Complaint as if set out herein.

28.   Defendants Searle, Pharmacia, Monsanto and Pfizer had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of Celebrex (Celecoxib) into the stream of commerce.  These Defendants failed to exercise ordinary care in the design, manufacture, sale, testing and/or distribution of Celebrex in the stream of commerce.

29.   These Defendants knew or should have known that Celebrex created an unreasonable risk or bodily harm, including the risk of death.

30.   Despite the fact that Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that Celebrex caused unreasonably, dangerous side effects which many users would by unable to remedy by any means, these Defendants continued to market, and continue to, market to this day, Celebrex to the consuming public, when there were and are adequate and safer alternative methods of treatment, or opportunities for more meaningful warnings.

31.   Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that consumers such as Plaintiffs Sumrall and Porter would foreseeably suffer injury or death as a result of Defendants' failure to exercise ordinary care as described above.  Defendants' negligence was a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT V

32.   Plaintiffs reallege all prior paragraphs of this complaint as if fully set out



hereto.

33.    Defendant Merck made express representations to the consuming public at large through its aggressive marketing and advertising campaigns relative to its product, Vioxx.

34.    Defendant Merck, through its detail sales representatives, made representations regarding the safety and efficacy of its product, Vioxx.

35.    Vioxx does not conform to the express representations made through Defendant Merck's advertising.

36.    Vioxx does not conform to the express representations made by Defendant Merck's agents/sales representatives.

37.    Defendants Merck conduct in this matter was contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demands judgment against Defendant Merck in such and amount of compensatory and damages as a jury deems reasonable, plus costs.

<u>**COUNT VI**</u>

38.    Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

39.    Defendants Searle, Pharmacia, Monsanto and Pfizer made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Celebrex.

40.    Defendants Searle, Pharmacia, Monsanto and Pfizer through their detail sales representatives, made representations of the safety and efficacy of their product,



Celebrex.

41.   Celebrex does not conform to the express representations made through Defendants' advertising.

42.   Celebrex does not conform to the express representations made by Defendants' agents/sales representatives.

43.   These Defendants' conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Porter.

WHEREFORE, plaintiffs Sumrall and Porter demand judgment against Defendants Searle Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VII

44.   Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

45.   At the time Defendant Merck marketed, sold, and distributed Vioxx for use by the general consuming public, including Plaintiffs Sumrall and Varnado, this Defendant knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

46.   Plaintiffs Sumrall and Varnado reasonably relied upon the skill and judgment of Defendant Merck as to whether Vioxx was of merchantable quality, and safe and fit for its intended use.

47.   Contrary to such implied warranty, Vioxx was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which they were intended and used

 

described above.

48.    Defendant Merck conduct in this regard was contributing cause of injuries and damages of Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT VIII

49.    Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

50.    At the time Defendants Searle, Pharmacia, Monsanto and Pfizer marketed, sold and distributed Celebrex for use by the general consuming public, including Plaintiffs Sumrall and Porter, these Defendants knew of the use for which Celebrex was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

51.    Plaintiffs Sumrall and Porter reasonably relied upon the skill and judgment of these Defendants as to whether Celebrex was of merchantable quality and safe and fit for its intended use.

52.    Contrary to such implied warranty, Celebrex was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used as described above.

53.    These Defendants' conduct in this regard was a contributing cause of Plaintiffs Sumrall and Porter's injuries and damages.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Mansanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IX

54.   Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

55.   Defendant Merck negligently, recklessly, intentionally and fraudulently made material misrepresentations that Vioxx was safe and effective. Defendant Merck represented Vioxx as safe so that the general consuming public, including Plaintiffs Sumrall and Varnado in particular, would rely upon said representations when purchasing said products.

56.   Prior to and following the introduction of Vioxx into the market as a prescribable pharmaceutical medication, Defendant Merck set in motion a public relations and advertising/marketing campaign to market its product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising.   Defendant Merck's representations made concerning Vioxx as a safe and effective drug were made so that Plaintiffs Sumrall and Varnado, and the general consuming public, would rely on said representations and seek prescriptions for this drug from their treating physicians. In fact, Plaintiffs Sumrall and Varnado did rely on Defendant Merck's representations in this regard.

60.   At the time Defendant Merck made these representations, it was aware that these representations were false and/or made these representations with

-12-

reckless disregard to their truth.  As a result of Defendant Merck's fraud and misrepresentation, Plaintiffs Sumrall and Varnado suffered injuries and damages.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT X

61.     Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

62.     Defendants Searle, Pharmacia, Monsanto and Pfizer negligently, recklessly, intentionally and fraudulently made material misrepresentations that Celebrex was safe and effective.  These Defendants represented Celebrex as safe so that the general consuming public, including Plaintiff's decedent in particular, would rely upon said representations when purchasing said products.

63.     Prior to and following the introduction of Celebrex into the market as a prescribable pharmaceutical medication, Defendants Searle, Pharmacia, Monsanto and Pfizer set in motion a public relations and advertising/marketing campaign to market their product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising.  Defendants' representations made concerning Celebrex as a safe and effective drug were made so that Plaintiffs Sumrall and Porter and the general consuming public would rely on said representations and seek prescriptions for this drug from their treating physicians.  In fact, Plaintiffs Sumrall and Porter did rely on Defendants Searle, Pharmacia, Monsanto and Pfizer's representations.

64.      At the time Defendants Searle, Pharmacia, Monsanto and Pfizer made these representations, it was aware that these representations were false and/or made these representations with a reckless disregard to their truth.  As a result of these Defendants' fraud and misrepresentation, Plaintiffs Sumrall and Porter suffered injuries.

WHEREFORE, this Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT XI

65.      Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

66.      Plaintiffs sought the care and treatment of Defendants John Doe #1, M.D., John Doe, M.D. #2, John Doe #3, M.D., and John Doe #4 M.D. for various ailments and maladies.

67.      In relation to said care and treatment, these Defendants prescribed Vioxx to Plaintiffs Sumrall and Varnado and Celebrex to Plaintiffs Sumrall and Porter.

68.      Defendants John Does, M.D., #1, #2, #3 and #4 knew, or should have known, of the dangerous side effects of these medications, and prescribing said medications in light of such knowledge presents a deviation from the standard of care generally exercised by physicians under like or similar circumstances and rises to the level of medical negligence.

69.      The medical negligence of Defendants John Does, M.D., #1, #2, #3 and #4 was a direct and proximate cause of the Plaintiffs' injuries.

WHEREFORE, Plaintiffs demand judgment against these Defendants as applicable to each in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## DAMAGES

70.      Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain injuries and damages as a direct and proximate result of Defendants' conduct; and Plaintiffs will respectfully request the Court and jury to determine the amount of loss Plaintiff has suffered and incurred, in the past and in the future. Plaintiffs seek damages for medical expense, past, present, and future; emotional distress, past, present, and future; lost wages, past, present, and future; pain and suffering, past, present and future; permanent physical impairment, and other such injuries as Plaintiffs may show at trial.

71.      At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this produce. These Defendants' conduct exhibits such an entire want of care as to establish that their actions were a results of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiffs' rights. The Plaintiffs are separately and singularly entitled to punitive damages from the corporate Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiffs recover



damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rate, and that Plaintiffs have such other and further relief, both general and special, to which they may be justly entitled under the facts and attending circumstances.

Respectfully submitted,

AMOS PORTER, FLORA SUMRALL, AND ANNIE LAURIE VARNADO, PLAINTIFFS

BY _____

Attorneys for Plaintiffs

SHANNON LAW FIRM, PLLC
James D. Shannon, MSB# 6731
Elise B. Munn, MSB# 9654
100 West Gallatin Street
Hazlehurst, Mississippi 39083
Telephone: 601-894-2202
Facsimile: 601-894-5033



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

FILED

OCT 03 2003

BY _____ DEPUTY

FRANK OMOBUDE, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF JOSEPHINE
OMOBUDE, DECEASED

                                          PLAINTIFF

VS.

                             CIVIL ACTION NO. 3:03CVS28LN

MERCK & CO., INC. AND
ROBERT H. EVANS, M.D.

                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff Frank Omobude, individually and on behalf of the wrongful death beneficiaries of Josephine Omobude, to remand pursuant to 28 U.S.C. § 1447. Defendant Merck & Co., Inc. has responded to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that the motion is not well taken and should be denied.

Plaintiff, a citizen of Mississippi, brought this suit in the Circuit Court of Hinds County, Mississippi seeking to recover damages for the alleged wrongful death of his mother, Josephine Omobude, which he alleges resulted from her use of the prescription drug Vioxx. Plaintiff sued Merck, the non-resident corporation that manufactured and distributed Vioxx, and also named as a defendant Robert H. Evans, M.D., the local physician who is alleged to have prescribed Vioxx to Josephine Omobude. Merck timely removed the case on the basis of diversity



jurisdiction under 28 U.S.C. § 1332,[1] contending, based on the
allegations of plaintiff's complaint, that the requirement of an
amount in controversy in excess of $75,000 is clearly satisfied,[2]
and contending further that there is complete diversity of
citizenship since Dr. Evans, though a Mississippi resident, has
been fraudulently joined to defeat diversity.  See Heritage Bank
v. Redcom Labs., Inc., 250 F.3d 319, 323 (5th Cir. 2001)
(fraudulent joinder of non-diverse will not defeat diversity
jurisdiction).

The premise of Merck's fraudulent joinder argument, as
gleaned from its notice of removal and its response to plaintiff's
motion to remand, is that plaintiff's complaint does not allege a
sufficient factual basis for his putative claim against Dr. Evans.
In particular, Merck notes that throughout his complaint,
plaintiff repeatedly and consistently asserts that Merck
encouraged the use of Vioxx in "improper customers;" that it
"misrepresented the safety and effectiveness of this drug and
concealed or understated its dangerous side effects;" that despite
knowledge of the defective nature of its product and for the
purpose of increasing its sales and profits at the expense of the

---

[1]     That statute provides, in pertinent part, as follows:
(a) The district courts shall have original jurisdiction
of all civil actions where the matter in controversy
exceeds the sum or value of $75,000, exclusive of
interest and costs, and is between (1) citizens of
different states.

[2]     The court notes that plaintiff has not disputed that the
amount in controversy exceeds $75,000.



general public's health and safety, Merck aggressively marketed Vioxx both directly to the consuming public and indirectly to physicians through drug sales representatives as effective and safe and with inadequate warnings and instructions; and that Merck failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Vioxx.  On the basis of these allegations, plaintiff alleges claims against Merck for strict liability, negligence, breach of express and implied warranties and fraudulent misrepresentation. Merck argues that in light of plaintiff's repeated allegations that Merck misrepresented the safety and efficacy of its product and consistently concealed the known risks and dangers not only from the consuming public but also from physicians, plaintiff's charge of medical negligence against Dr. Evans based on nothing more than a conclusory allegation, wholly unaccompanied by any factual support, that Dr. Evans "knew, or should have known, of the dangerous side effects of these medications," and that "his prescribing such medications in light of such knowledge presents a deviation from the standard of care," is manifestly insufficient to state a cognizable claim.

In similar cases, this court has held that conclusory and contradictory allegations of knowledge, which were belied by the factual allegations of the complaint, demonstrated that the resident defendants against whom such allegations of knowledge were made, had been fraudulently joined.  See Brown v. Bristol Myers Squibb Co., Civ. Action No. 4:02CV301LN, slip op. at 11-12

3

(S.D. Miss. Dec. 2, 2002) (resident physician fraudulently joined where claim was asserted in conclusory terms and contradicted by allegations of the pharmaceutical manufacturer's concealment or misrepresentation of information); Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civ. Action No. 5:02CV102LN (S.D. Miss. Sept. 25, 2000) (same with respect to resident pharmacy defendant); see also In re Rezulin Prods. Liab. Litig., No. 00 Civ. 2843, 2003 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002) (physician defendant fraudulently joined based on conclusory allegations). In the court's opinion, the same conclusion is in order here.

In so concluding, the court is aware of plaintiff's argument that "[a] party may plead alternative and inconsistent facts or remedies against several parties without being barred." Guy James Constr. Co. v. Trinity Indus., Inc., 644 525, 530 (5ᵗʰ Cir. 1981). While this may be true generally, the court's point here is that the plaintiff has not pled inconsistent facts, but rather has pled consistent facts that are inconsistent with the conclusion he pleads as to Dr. Evans. Every factual allegation this plaintiff has made is to the effect that Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the charge, plaintiff concludes that Dr. Evans "knew or should have known" the truth about Vioxx that Merck had misrepresented and concealed.

The court does not suggest that a "knew or should have known" allegation" will necessarily always be conclusory and hence

4



insufficient to state a cognizable claim simply because it is not attended by a specific factual allegation as to the source of such knowledge. However, in cases like this, where a plaintiff has specifically alleged facts from which one would necessarily infer that the defendant in question would not have known information otherwise alleged to have been misrepresented or concealed from him, then in the court's opinion, in that limited circumstance, to sustain his pleading burden, the plaintiff would have to plead at least some facts tending to show why or how the defendant knew or should have known of the information that has been misrepresented to or concealed from him. Otherwise, the court would be in the untenable position of assuming that a factual basis exists for a conclusory allegation that is entirely inconsistent with every factual allegation in the complaint. No precedent of which this court is aware suggests that this would be proper.[3]  The caselaw,

---

[3]   Plaintiff has cited a number of cases from this district in which claims against physician and pharmacy defendants have been found sufficient to state a claim, but in the court's opinion, these cases are readily distinguishable. Henderson v. GlaxoSmithKline, No. 5:01CV159BrS (S.D. Miss. March 21, 2000), involved a question of fraudulent misjoinder, which is not an issue here. In Hancock v. Bayer Corp., No. 3:03CV67WS (S.D. Miss. Apr. 18, 2003), plaintiff alleged that the physicians in question had committed numerous acts of negligence other than merely prescribing an allegedly defective drug, such as failing to timely recognize the plaintiffs' adverse drug reactions, failing to monitor the plaintiffs, and prescribing the drug in the wrong dosage and in a manner inconsistent with the product labeling and contraindicated usages. Womack v. Bayer Corp., No. 3:03CV157WS (S.D. Miss. Apr. 18, 2003), involved specific allegations of alleged negligence by the defendant doctor, including that the physicians should have known of the risks in light of warnings actually issued to physicians by Bayer. No such claims were pled here. Likewise in the several Bayer cases remanded by Judge Pickering and cited by plaintiff, including Easterling v. Bayer



in fact, is to the contrary.  See Great Plains Trust Co. v. Morgan
Stanley Dean Witter & Co., 313 F.3d 305, 313 (5th Cir. 2002)
(stating that the court will not "accept as true conclusory
allegations or unwarranted deductions of fact"); Sago v. Wal-Mart
Stores, Inc., 2003 WL 22076954, at *2 (S.D. Miss. 2003) (holding
that "conclusory or generic allegations of wrongdoing on the part
of the non-diverse defendant are not sufficient to show that the
defendant was not fraudulently joined") (citing Badon v. RJR
Nabisco, Inc., 224 F.3d 382, 392-93 (5th Cir. 2000); cf.
Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th
Cir. 1996) ("When considering a motion to dismiss for failure to
state a claim, the district court must take the factual
allegations of the complaint as true and resolve any ambiguities
or doubts regarding the sufficiency of the claim in favor of the
plaintiff.  However, conclusory allegations or legal conclusions
masquerading as factual conclusions will not suffice to prevent a
motion to dismiss."); Ross v. Citifinancial, Inc., 2003 WL
22026346, at *3 (5th Cir. 2003) (noting court's recognition of
"the similarity between standards for Federal Rule of Civil
Procedure 12(b)(6) (failure to state claim) and fraudulent

---

Corp., No. 2:03CV37PG (S.D. Miss. Apr. 24, 2003), Dearman v. Bayer
Corp., No. 2:03CV38PG (S.D. Miss. Apr. 24, 2003), Jones v. Bayer
Corp., No. 2:03CV53PG (S.D. Miss. Apr. 24, 2003), Keys v. Bayer
Corp., No. 2:03CV39PG (S.D. Miss. Apr. 24, 2003), and Sumrall v.
Bayer, No. 2:03CV52PG (S.D. Miss. Apr. 24, 2003), the court found
that the plaintiffs had made specific allegations of negligence
against the resident doctors "for failing to properly monitor and
test each of the Plaintiffs according to the defendant drug
companies' recommendations."  No such allegations were made in
plaintiff's complaint in the case at bar.  See infra note 4.

joinder" but noting that the latter inquiry is broader); Cranston
v. Mariner Healthcare Mgmt. Co., 2003 WL 21517999, at *4 (N.D.
Miss. 2003)(stating that on motion to dismiss, "[t]he court will
not accept as true any conclusory allegations or unwarranted
deductions of fact").[4]

---

[4]     The court notes that the only claim plaintiff has
alleged against Dr. Evans in his complaint is medical negligence
based on the allegation that Dr. Evans "knew, or should have
known, of the dangerous side effects of these medications" and his
prescribing "said medications in light of such knowledge." In his
motion to remand, however, plaintiff attempts to recharacterize
and add to his claim against Dr. Evans. He argues, for example,
that his claim that Merck produced and distributed defective
products does not preclude his claim against Dr. Evans with regard
to his "negligence in prescribing Vioxx or his negligence in
monitoring plaintiff." He argues further that

    [j]ust as Merck failed to adequately warn Plaintiff's
    Decedent's physician, Dr. Evans failed to conduct
    regular monitoring of Plaintiff's Decedent to ensure the
    discovery of potentially serious side effects. . . .
    including, not limited to, failing to perform adequate
    tests before the initiation of Vioxx treatment, and
    failing to subsequently perform other tests after
    initiation of Vioxx therapy to monitor any change in the
    status of Plaintiff's decedent. . . . Defendant Evans
    also failed to warn Plaintiff's Decedent of possible
    side effects. . . .

None of these allegations, or any hint of such allegations,
appears anywhere in the complaint which, as to Dr. Evans, alleges
only that he was negligent in prescribing Vioxx when he knew, or
should have known, of the dangers of the drug. Plaintiff cannot
secure remand on the basis of allegations and claims that are not
set forth in his state court pleading. See However, the
Cavallinis did not cite, nor have we found, any case in which such
evidence has been considered to determine whether a claim has been
stated against the nondiverse defendant under a legal theory not
alleged in the state court complaint.
Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 263
263 n.14 (5th Cir. 1995)(rejecting plaintiff's "assertion that
post-removal affidavits can be used to defeat removal by
presenting new causes of action").

7

For the foregoing reasons, the court concludes that plaintiff's motion to remand is not well taken and should be denied.

Accordingly, it is ordered that plaintiff's motion to remand is denied.

SO ORDERED this 3rd day of October, 2003.

_____
UNITED STATES DISTRICT JUDGE

8



COPY

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL
## DISTRICT OF HINDS COUNTY, MISSISSIPPI

FRANK OMOBUDE, INDIVIDUALLY
AND ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF
JOSEPHINE OMOBUDE, DECEASED

**PLAINTIFF**

FILED
DEC 3 1 2002
BARBARA DUNN
CIRCUIT CLERK       D.C.

VS.

**NO. 2002-____**

MERCK & COMPANY, INC. AND
ROBERT M. EVANS, M.D.

**DEFENDANTS**

### COMPLAINT

COMES NOW the Plaintiff, Frank Omobude, individually and on behalf of the wrongful death beneficiaries of Josephine Omobude, Deceased, in the above-styled and numbered cause, by and through his attorneys of record, and files this, his Complaint against the Defendants, and in support thereof would show unto the Court the following, to-wit:

1.     This is a civil action brought on behalf of Plaintiff's decedent and the wrongful death beneficiaries of Plaintiff's decedent, who was prescribed and used the prescription medication VIOXX (Rofecoxib). This drug caused Plaintiff's decedent to suffer a series of strokes, edema, severe blood clotting, and other injuries and ultimately her death on or about August 23, 2002. This action seeks damages for personal injuries, including death pursuant to MS Code Ann. Sec. 11-7-13, and damages caused by the drug named herein and ingested by Plaintiff's decedent.

2.     Plaintiff, Frank Omobude, is an adult resident of the First Judicial District of Hinds County, Mississippi and is the son of the Decedent, Josephine Omobude.

3.     Plaintiff's decedent, Josephine Omobude, was as adult resident of the First Judicial District of Hinds County, Mississippi at the time of her death.

4.      Josephine Omobude had five children and her marital status at the time of her death was divorced.   Therefore, the wrongful death beneficiaries of Josephine Omobude are her children, Frank Omobude, Benjamin Omobude, Tony Omobude, Victor Omobude, and Isi Omobude.

5.      Defendant, Merck & Co., Inc., (hereinafter "Merck") is a New Jersey corporation.  At all times relevant hereto, Merck was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Vioxx (Rofecoxib). Defendant Merck may be served through its registered agent: CT Corporation System; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

6.      Defendant Robert Evans, M.D. is a physician licensed by the State of Mississippi with his residence and/or principal place of business in the First Judicial District of Hinds County, Mississippi and may be served at his business 1151 N. State Street Suite 601, Jackson, Mississippi 39202.

7.      Venue is proper in the First Judicial District of Hinds County, Mississippi as the cause of action occurred in the First Judicial District of Hinds County, Mississippi.

8.      Personal jurisdiction and subject matter jurisdiction are appropriate in this court as to all Defendants, as all Defendants have done business in the First Judicial District of Hinds County, either directly or by agent, and have thus availed themselves of this jurisdiction.

9.      The Plaintiff's claim accrued in whole or in part in this judicial district and the Plaintiff resides in this judicial circuit. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10.     Vioxx is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies.   Defendant Merck did manufacture, design, package, market and distribute this drug. This Defendant encouraged the use of this drug

-2-

in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. This Defendant aggressively marketed this drug directly to the consuming mediums; including, but not limited to, print and television advertisements. This Defendant did this to increase sales and profits.

11.     At all times relevant hereto, Defendant Merck actually knew of the defective nature of its product as herein set forth, yet continued to design, manufacture, market, distribute and sell its product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by the product. Defendant's conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's decedent's individual rights, and hence punitive damages are appropriate.

### COUNT I

12.     Plaintiff alleges all prior paragraphs of this complaint as if fully set out herein.

13.     The pharmaceutical Vioxx (Rofecoxib) designed, manufactured, sold and/or supplied by one or more of these Defendants, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

14.     Further, the pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendants Merck was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign, both directly to the consuming public and indirectly to physicians through drug sales representatives.

15.     The pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective due to inadequate testing.

-3-