16. Additionally Defendant Merck failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Vioxx, via post-marketing data. The defective nature of this product is a contributing cause of Plaintiff's decedent's injuries and death.

WHEREFORE, this Plaintiff demands judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT II

17. Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

18. Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce. Defendant Merck failed to exercise ordinary care in the design, manufacturer, marketing, sale testing and/or distribution of Vioxx into the stream of commerce. Defendant Merck knew or should have known that Vioxx created an unreasonable risk of bodily harm, including the risk of death.

19. Despite the fact that Defendant Merck knew or should have known that Vioxx caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, this Defendant continued to market, and to this day continues to market, Vioxx to the consuming public when there were and are adequate and safer alternative methods of treatment or opportunities for more meaningful warnings.

20. Defendant Merck knew or should have known that consumers such as Plaintiff's decedent would foreseeably suffer injury or death as a result of the Defendant's failure to exercise ordinary care as described herein. Defendant's negligence was a contributing cause of Plaintiff's decedent's injuries and death.

WHEREFORE, Plaintiff demands judgment against Defendant Merck in such an

-4-

amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT III

21. Plaintiff realleges all prior paragraphs of this complaint as if fully set out hereto.

22. Defendant Merck made express representations to the consuming public at large through its aggressive marketing and advertising campaigns relative to its product, Vioxx.

23. Defendant Merck through its detail sales representatives, made representations regarding the safety and efficacy of its product, Vioxx.

24. Vioxx does not conform to the express representations made through Defendant Merck's advertising.

25. Vioxx does not conform to the express representations made by Defendant Merck's agents/sales representatives.

26. Defendants Merck's conduct in this matter was a contributing cause of the injuries and damages suffered by Plaintiff's decedent, including her death.

WHEREFORE, this Plaintiff demands judgment against Defendant Merck in such and amount of compensatory and damages as a jury deems reasonable, plus costs.

## COUNT IV

27. Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

28. At the time Defendant Merck marketed, sold, and distributed Vioxx for use by the general consuming public, including Plaintiff's decedent, this Defendant knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

29. Plaintiff's decedent reasonably relied upon the skill and judgment of

-5-

Defendant Merck as to whether Vioxx was of merchantable quality, and safe and fit for its intended use.

30. Contrary to such implied warranty, Vioxx was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which they were intended and used described above.

31. Defendant's conduct in this regard was contributing cause of injuries and damages, including the death of Plaintiff's decedent.

WHEREFORE, this Plaintiff demands judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT V

53. Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

54. Defendant Merck negligently, recklessly, intentionally and fraudulently made material misrepresentations that Vioxx was safe and effective. Defendant represented Vioxx as safe so that the general consuming public, including Plaintiff's decedent in particular, would rely upon said representations when purchasing said products.

55. Prior to and following the introduction of Vioxx into the market as a prescribable pharmaceutical medication, Defendant Merck set in motion a public relations and advertising/marketing campaign to market its product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising. Defendant Merck's representations made concerning Vioxx as a safe and effective drug were made so that Plaintiff's decedent, and the general consuming public, would rely on said representations and seek prescriptions for this drug from their treating physicians. In fact, Plaintiff's decedent did rely on Defendant Merck's representations in this regard.

-6-

60. At the time Defendant Merck made these representations, it was aware that these representations were false and/or made these representations with reckless disregard to their truth. As a result of Defendant's fraud and misrepresentation, Plaintiff's decedent suffered a premature death and Plaintiff has suffered and will continue to suffer the loss of his mother/decedent.

WHEREFORE, this Plaintiff demands judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VI

61. Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

62. Plaintiff's decedent sought the care and treatment of Defendant Robert M. Evans, M.D. (hereafter "Evans") for various ailments and maladies.

63. In relation to said care and treatment, Defendant Evans prescribed Vioxx.

64. Defendant Evans knew, or should have known, of the dangerous side effects of these medications, and his prescribing said medications in light of such knowledge presents a deviation from the standard of care generally exercised by physicians under like or similar circumstances and rises to the level of medical negligence.

65. Defendant Evans's medical negligence was a direct and proximate cause of the decedent's injuries and death.

WHEREFORE, this Plaintiff demands judgment against Defendant Evans in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## DAMAGES

66. Upon the trial of this case, it will be shown that Plaintiff's decedent was caused to sustain injuries and damages as a direct and proximate result of Defendants' actions; and Plaintiff will respectfully request the Court and jury to determine the amount of

-7-

loss Plaintiff has suffered and incurred, in the past and in the future. Plaintiff seeks damages for medical expenses; pain and suffering; emotional distress; loss of enjoyment of life; loss of the companionship, love and society of decedent; lost wages and other accumulations of decedent; and other such damages as may be shown at trial of this matter.

67. At all times relevant hereto, Defendant Merck actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this produce. Defendant Merck's conduct exhibits such an entire want of care as to establish that their actions were a results of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiff and the Plaintiff's decedent's individual rights. The Plaintiff, therefore, is separately and singularly entitled to punitive damages from the Defendant Merck.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiffs recover damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rate, and that Plaintiffs have such other and further relief, general and special, to which they may be justly entitled under the facts and attending circumstances.

Respectfully submitted,

FRANK OMOBUDE, INDIVIDUALLY AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF JOSEPHINE OMOBUDE, PLAINTIFF

BY _____
Attorneys for Plaintiff

-8-

SHANNON LAW FIRM, PLLC
James D. Shannon, MSB# 6731
Elise B. Munn, MSB# 9654
100 West Gallatin Street
Hazlehurst, Mississippi 39083
Telephone: 601-894-2202
Facsimile: 601-894-5033

-9-

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 1

Not Reported in F.Supp.2d, 2003 WL 21991717 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.
Gerald GULOTTA, et al.
v.
GE CAPITAL MODULAR SPACE, et al.
No. Civ.A. 03-1669.

Aug. 15, 2003.
Aug. 19, 2003.

DUVAL, J.
*1 Before the Court is plaintiffs Gerald and Sena Gulotta's Motion to Remand. (Doc. No. 7). Having reviewed the pleadings, memoranda, exhibits and the relevant law, the Court finds no merit in the motion.

Plaintiffs filed suit in the Fortieth Judicial District Court for the Parish of St. John, Louisiana on May 13, 2003. In the petition, plaintiffs contend that Gerald Gulotta was preparing to descend a ramp allegedly provided by defendant GE Capital Modular Space ("GE") when the ramp suddenly swayed, causing plaintiff to lose his balance and fall four feet. He alleges that his injuries were caused by the dangerous and defective condition of the ramp owned by GE. The petition itself does not contain a single allegation as to the actions taken by Sandy Theriot that would cause her to be liable to plaintiffs.

The matter was removed by the defendants on June 12, 2003 in which defendants contended that diversity of citizenship form the basis for the removal as Sandy Theriot, an employee of GE Capital Modular Space was fraudulently joined in order to destroy diversity.

Plaintiffs then filed the instant motion to remand contend that "Ms. Theriot is in fact a proper defendant in this action, as she was not only the agent for GE Captial (sic), but also had a direct role in the design and installation of the platform which ultimately caused plaintiff's injuries." (Memorandum in Support of Motion to Remand p. 5). Pretermitting the fact that the allegations are absent from the petition, defendant Sandy Theriot has filed an affidavit stating that she is a sales representative for GE. As such she communicates with customers about the modular buildings accessories, and options that they wan to lease from GE and executing the necessary paperwork to finalize the lease. She does not participate in preparing transporting, or setting up the modular buildings or their accessories or options.

Standard for Motion to Remand

The non-movant carries a heavy burden in establishing fraudulent joinder and must demonstrate it by clear and convincing evidence. *Jernigan v. Ashland Oil,* 989 F.2d 812, 814 (5th Cir.1993). "[T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law." *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir.2003). This possibility that state law may impose liability, however, must be reasonable, not merely theoretical. *Travis,* at 648 (5th Cir.2003); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2002).

Fraudulent joinder claims can be resolved by " piercing the pleadings" and considering summary judgment-type evidence such as affidavits and deposition testimony. *Ford v. Elsbury,* 32 F.3d 931, 935 (5th Cir.1994). Furthermore, district courts should resolve all disputed questions of fact and substantive law in favor of the plaintiff. *Jackson v. Pneumatic Prod. Corp.,* No. 00-3615, 2001 WL 238214, *1 (E.D.La. Mar. 6, 2001). Finally, "[i]f

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                             Page 2

Not Reported in F.Supp.2d, 2003 WL 21991717 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

the right to remove is doubtful, the case should be remanded." *Sullivan v. Gen-Corp, Inc.,* 1995 WL 321743, *2 (E.D.La. May 24, 1995) (Duval, J.)(quoting *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 939 (E.D.N.Y.1992)).

*2 Under Louisiana law, individual liability of an employee for a work-related function can only exist if there was a breach of a personal duty of care to another. The conditions to be met in order to find such a breach of a personal duty are outlined by the Louisiana Supreme Court as follows:

(1) The employer must owe a duty of care to the third person, the breach of which has caused the damage for which recovery is sought;

(2) This duty is delegated by the employer to the employee;

(3) The employee has breached this duty through personal fault (as contrasted with technical or vicarious fault);

(4) With regard to personal fault, personal liability cannot be imposed upon an employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages.

*Hayden v. Acadian Gas Pipeline,* 1997 WL 180380, *2 (E.D.La. Apr. 10, 1997) (quoting *Canter v. Koehring Co.,* 283 So.2d 716, 721 (La.1973). Considering that Sandy Theriot had no duty to inspect or install the ramp in question, there can be no liability and thus, she has been fraudulently joined. Oddly, there is also evidence that GE had no ownership over or responsibility for the ramp in question; however, the question of GE's liability will be for another day. Accordingly,

IT IS ORDERED that the Motion to Remand is DENIED.

E.D.La.,2003.
Gulotta v. GE Capital Modular Space
Not Reported in F.Supp.2d, 2003 WL 21991717 (E.D.La.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3099905 () (Report or Affidavit) (Jul. 05, 2005)
• 2005 WL 3099904 () (Report or Affidavit) (Jan. 31, 2005)
• 2:03cv01669 (Docket) (Jun. 12, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

M0061 63547

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 21517997 (N.D.Miss.)
(Cite as: Not Reported in F.Supp.2d)

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Mississippi, Eastern Division.
Michael J. WALKER; et al. Plaintiffs
v.
MEDTRONIC, INC.; et al. Defendants
No. 1:03CV74-D-D.

June 4, 2003.

OPINION DENYING MOTION TO REMAND
DAVIDSON, Chief J.
*1 Presently before the court is the Plaintiffs' motion to remand this cause to the Circuit Court of Monroe County, Mississippi. Upon due consideration, the court finds that the motion should be denied because diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a).

A. Factual Background

On August 27, 1993, the decedent Jessie Mae Walker had a pacemaker manufactured by the Defendant St. Jude Medical, Inc. f/k/a Telectronics inserted into her chest. Thereafter, on February 14, 2000, Ms. Walker had her Telectronics pacemaker exchanged for a pacemaker manufactured by the Defendant Medtronic, Inc. Ms. Walker began having problems with the pacemaker in the fall of 2000, and she was found dead at her residence on March 24, 2001. The official cause of Ms. Walker's death was determined to be a non-functional pacemaker.

The Plaintiffs filed this products liability wrongful death action on December 30, 2002, alleging that Ms. Walker died as a result of the failure of a defective pacemaker. The Plaintiffs seek compensatory and punitive damages from the Defendants Medtronic, Inc .; Medtronic, Med Rel, Inc.; and St. Jude Medical, Inc. f/k/a Telectronics. Lynn Vuncannon, the Medtronic sales representative who likely sold the subject pacemaker to the non-party North Mississippi Medical Center, is also named as a Defendant.

On February 6, 2003, the Defendants removed the action to this court on the basis of federal diversity jurisdiction as set forth in 28 U.S.C. § 1332(a), asserting that the Plaintiffs have fraudulently joined the individual Defendant Lynn Vuncannon in order to defeat this court's diversity jurisdiction. Thereafter, the Plaintiffs requested that the court remand this matter to state court, contending that because Vuncannon is properly joined, complete diversity does not exist and this court lacks jurisdiction over the case.

B. Standard for Remand

The Judiciary Act of 1789 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Original federal diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir.1996). After removal of a case, the plaintiff may move for remand, and "[if] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). In the case *sub judice,* there is no dispute that the amount in controversy exceeds $75,000. The Plaintiffs, however, assert that the court does not possess diversity jurisdiction because this action is not between citizens of different states, as is required by 28 U.S.C. § 1332.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                         Page 2

Not Reported in F.Supp.2d, 2003 WL 21517997 (N.D.Miss.)
(Cite as: Not Reported in F.Supp.2d)

*2 The Plaintiffs and the individual Defendant Lynn Vuncannon are indisputably resident citizens of Mississippi. This fact, however, will not destroy federal diversity jurisdiction if the Plaintiffs fraudulently joined Vuncannon in order to defeat diversity. *Rodriguez v. Sabatino,* 120 F.3d 589, 591 (5th Cir.1997). But, if the court finds that Vuncannon has not been fraudulently joined, then federal diversity jurisdiction is lacking, and the court must remand this matter to state court. *See Whalen v. Carter,* 954 F.2d 1087, 1094 (5th Cir.1992) (federal diversity jurisdiction exists only if no plaintiff is a citizen of the same state as any defendant); *Wright v. Combined Ins. Co. of America,* 959 F.Supp. 356, 361 (N.D.Miss.1997).

The party alleging fraudulent joinder bears the burden of persuasion, and that burden is quite stringent. *See Hart v. Bayer Corp.,* 199 F.3d 239, 246 (5th Cir.2000) ("The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one."). In order to prove that a non-diverse party has been fraudulently joined by a plaintiff hoping to defeat federal diversity jurisdiction, the removing party must demonstrate either "outright fraud in the plaintiff's recitation of jurisdictional facts," or that there is "absolutely no possibility that [the plaintiff] will be able to establish a cause of action against [the allegedly fraudulently joined in-state defendant] in state court." *Hart,* 199 F.3d at 246.

The Defendants here do not allege outright fraud, so the court must determine whether there is absolutely no possibility that the Plaintiffs will be able to establish a cause of action against Vuncannon in state court. In making this determination, the court evaluates all of the factual allegations in the Plaintiffs' pleadings in the light most favorable to the Plaintiffs, and the court examines relevant state law and resolves all uncertainties in favor of the Plaintiffs. *Hart,* 199 F.3d at 246.

Likewise, in evaluating a claim of fraudulent joinder, the court does not focus on whether the Plaintiffs will prevail on the merits of their claims. Instead, the court simply determines whether there is a possibility that the Plaintiffs will be able to state a claim against the allegedly fraudulently joined individual Defendant. *Rodriguez,* 120 F.3d at 591; *see B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 550 (5th Cir. Unit A 1981) (holding that, to successfully move for remand, plaintiffs burden is " much lighter" than that required to survive motion for summary judgment; instead, there need only be " a reasonable basis for predicting that the state law might impose liability on the facts involved" in order for case to be remanded). Further, it is axiomatic that federal courts are to construe removal statutes "strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100, 106 (5th Cir.1996); *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-109, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941).

C. *Discussion*

1. General Principles

*3 Whether a plaintiff states a cognizable claim against a defendant is determined by reference to the allegations made in the plaintiff's original pleadings, although the court may "pierce" those pleadings in making its determination. *B., Inc.,* 663 F.2d at 549; *Wheeler v. Frito Lay, Inc.,* 743 F.Supp. 483, 485 (S.D.Miss.1990). In the case at bar, the Plaintiffs allege that the Defendants collectively are liable for the decedent's death. The Plaintiffs also allege, in very general and nonspecific terms, that the individual Defendant Vuncannon failed to provide adequate warnings concerning the pacemaker to the decedent or to her treating physician, and that Vuncannon falsely represented to purchasers and patients that the Medtronic pacemaker was fit for its intended purpose.

Under Mississippi law, an agent for a disclosed principal can be held personally liable for her own tortious acts committed within the scope of her employment, and a tort claim can be maintained against that agent so long as the foundation of the agent's liability is her own individual wrongdoing. *Hart,* 199 F.3d at 247; *Turner v. Wilson,* 620 So.2d 545, 548 (Miss.1993). In other words, the agent is subject to personal liability only when she "directly participates in or authorizes the commission of a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2003 WL 21517997 (N.D.Miss.)
(Cite as: Not Reported in F.Supp.2d)

tort." *Hart*, 199 F.3d at 247; *see Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir.1985) (stating that agent does not incur liability unless he had more than simply "peripheral involvement" in alleged tortious conduct).

In piercing the pleadings to determine whether there is a possibility that a state court would find a cause of action stated on the facts alleged by the plaintiff, it is axiomatic that where a plaintiff's complaint is devoid of any factual allegations suggesting a basis for recovery against a particular defendant, there can be no ground for concluding that a claim has been stated. *See, e.g., Henley v. Pioneer Credit Co.*, No. 1:01CV349-D-D, 2002 WL 1013110, at *3 (N.D. Miss. April 10, 2002); *Addison v. Allstate Ins. Co.*, 58 F.Supp.2d 729, 732 (S.D.Miss.1999). Failure to specify a factual basis for recovery against a nondiverse party, therefore, constitutes a fraudulent joinder of that party. *Addison*, 58 F.Supp.2d at 732.

2. The Plaintiffs' Claims

Here, the Plaintiffs merely allege, in very general and conclusory terms, that the Defendant Vuncannon engaged in fraudulent and tortious conduct. As for the Plaintiffs' assertions that Vuncannon failed to provide adequate warnings concerning the pacemaker, the Mississippi Supreme Court has made clear that the "learned intermediary doctrine" applies to medical devices. *Moore v. Memorial Hosp. of Gulfport*, 825 So.2d 658, 661-62 (Miss.2002); *Wyeth Labs., Inc. v. Fortenberry*, 530 So.2d 688, 690 (Miss.1988). Under the learned intermediary doctrine, any duty to warn a physician about the dangers of a medical device is placed upon the device's manufacturer; the sales representative selling the device is under no duty to warn patients (or potential future patients, assuming they could even be identified) concerning the device. *Bennett v. Madakasira*, 821 So.2d 794, 804 (Miss.2002); *Wyeth*, 530 So.2d at 690; *Johnson v. Parke-Davis*, 114 F.Supp.2d 522, 525 (S.D.Miss.2000).

*4 As for the Plaintiffs' claims of fraudulent misrepresentation, there are no specific factual allegations in the complaint concerning Vuncannon's participation in any alleged fraudulent acts, much less any factual allegations that would tend to suggest that her involvement was anything other than merely peripheral. *See, e.g., Brabham v. Brabham*, 483 So.2d 341, 342 (Miss.1986) ( "In all averments of fraud, the circumstances constituting the fraud shall be stated with particularity. Fraud will not be inferred or presumed and may not be charged in general terms. The circumstances of the alleged fraud such as the time, place and contents of any false representations or conduct must be stated." ); *Buford v. Howe*, 10 F.3d 1184, 1188 (5th Cir.1994). Instead, the Plaintiffs simply allege in very general terms that Vuncannon engaged in fraudulent conduct. Nowhere in the complaint do the Plaintiffs specifically allege how Vuncannon directly participated in or authorized the commission of the tort of fraudulent misrepresentation, or how her alleged liability is based on her own individual wrongdoing; instead, the Plaintiffs merely use boilerplate language that collectively implicates the Defendants as a group. As the court has already noted, hypothetical allegations of this sort are plainly deficient. *See, e.g., Addison*, 58 F.Supp.2d at 732-33. Nowhere in the complaint do the Plaintiffs identify with the requisite particularity the date, time, place or content of Vuncannon's alleged false representations.

Accordingly, without a factual basis for concluding that Vuncannon directly, personally, or actively participated in any alleged tortious conduct, the court finds that the Plaintiffs have no possibility of establishing a cause of action against Vuncannon in state court, and that she was fraudulently joined to defeat diversity. *See, e.g., Coleman v. Conseco, Inc.*, 238 F.Supp.2d 804 (S.D.Miss.2002) (denying motion to remand for failure to plead fraud with particularity); *Addison*, 58 F.Supp.2d at 733 (denying motion to remand where, "other than a bare allegation, plaintiffs have factually alleged nothing" that would satisfy required elements of claim against resident defendants); *Christmon v. Allstate Ins. Co.*, 57 F.Supp.2d 380, 382 (S.D.Miss.1999).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                     Page 4
Not Reported in F.Supp.2d, 2003 WL 21517997 (N.D.Miss.)
(Cite as: Not Reported in F.Supp.2d)

### 3. Dismissal of Plaintiffs' Claims Against Vuncannon

Having determined that Vuncannon was fraudulently joined, the court has little trouble also concluding that the claims against her should be dismissed. The standards to be applied for a fraudulent joinder claim and for dismissal for failure to state a claim are virtually identical. *Addison,* 58 F.Supp.2d at 733-34; *Christmon,* 57 F.Supp.2d at 382. Dismissal should be granted if the court finds that a plaintiff can prove no set of facts in support of his claim that would entitle him to the relief he seeks. *Rubinstein v. Collins,* 20 F.3d 160, 166 (5th Cir.1994). Stated another way, dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *See Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995).

*5 In addition, as is the case with a fraudulent joinder claim, to avoid dismissal for failure to state a claim, a plaintiff "must plead specific facts, not mere conclusory allegations." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992). The court will not accept as true any conclusory allegations or unwarranted deductions of fact. *See Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

As already discussed, the Plaintiffs have merely alleged, in vague and conclusory fashion, that the Defendant Vuncannon engaged in tortious conduct. The Plaintiffs have failed, however, to adequately plead any facts sufficient to potentially state a claim against Vuncannon. The court finds, therefore, that the claims against Vuncannon should be dismissed.

### D. Conclusion

In sum, because the individual Defendant Lynn Vuncannon was fraudulently joined to defeat diversity, and because the amount in controversy requirement has been satisfied, the court finds that federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332 exists. The matter in controversy exceeds the sum of $75,000, and is between citizens of different states. As such, this court possesses subject matter jurisdiction to adjudicate this cause and the Plaintiffs' motion to remand shall be denied. In addition, the Plaintiffs' claims against Vuncannon shall be dismissed without prejudice.

A separate order in accordance with this opinion shall issue this day.

### ORDER DENYING MOTION TO REMAND

Pursuant to an opinion issued this day, it is hereby ORDERED that:
(1) the Plaintiffs' motion to remand this cause to the Circuit Court of Monroe County, Mississippi, (docket entry 10) is DENIED;
(2) the Plaintiffs' claims against Lynn Vuncannon are DISMISSED WITHOUT PREJUDICE; and
(3) this cause of action remains in the jurisdiction of the United States District Court for the Northern District of Mississippi.

N.D.Miss.,2003.
Walker v. Medtronic, Inc.
Not Reported in F.Supp.2d, 2003 WL 21517997 (N.D.Miss.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00074 (Docket) (Feb. 06, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2005 WL 1719206 (W.D.La.)

(Cite as: 2005 WL 1719206 (W.D.La.))

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Louisiana.
Ronnie HARDY, et al.
v.
Randall DUCOTE, et al.
No. Civ.A. 02-CV-1520-A.

July 21, 2005.

Gary J. Gambel, Murphy Rogers & Sloss, David S. Scalia, Joseph M. Bruno, Bruno & Bruno, Jennifer Nell Willis, R. Glenn Cater, Samuel O. Buckley, III, Cater & Willis, Brian P. Quirk, Irwin Fritchie et al., New Orleans, LA, Jerold Edward Knoll, Triston K. Knoll, Knoll Law Firm, Marksville, LA, for Ronnie Hardy, et al.

James B. Irwin, Brian P. Quirk, David O'Quinn, John W. Sinnott, Irwin Fritchie et al., Robert E. Kerrigan, Jr., Alexis Marie Myers, Kristen Michael Baumer, Deutsch Kerrigan & Stiles, New Orleans, LA, Matthew J. Ungarino, Ungarino & Eckert, Metairie, LA, Jeanne Marie Bourque, Dawn L. Morris, L. Lane Roy, Preis Kraft & Roy, Lafayette, LA, David Edwin Lafargue, Lafargue Law Office, Douglas L. Bryan, Marksville, LA, for Randall Ducote, et al.

*MEMORANDUM RULING*

LITTLE, J.

*1 Before the court is the Motion for Summary Judgment filed by Defendant, Century Surety Insurance Co. ("Century"). Inexplicably, Century's motion requests that the court grant it summary judgment on an action for a declaratory judgment that it has not filed. In its Memorandum in Support of Motion for Summary Judgment ("Memorandum"), however, Century requests summary judgment on the claims against it by Plaintiffs, Ronnie Hardy ("Hardy") and Chad Gauthier ("Gauthier"), and by Third-Party Plaintiff, X L Insurance America, Inc. (formerly known as Winterthur International America Insurance Co.) ("Winterthur"). The court, therefore, will interpret Century's motion as one for summary judgment on those claims and will proceed on that basis.

*Factual and Procedural Background*

Exide Technologies, Inc. ("Exide") contracted with Randal Ducote, d/b/a Ducote Wrecking & Demolition Co. ("Ducote"), for the performance of construction and maintenance at one of Exide's battery recycling plants. In connection with that contract, Exide and Ducote executed a Hold Harmless and Indemnity Agreement whereby Ducote agreed to assume any liability that Exide may incur arising from Ducote's work at the Exide facility and to insure Exide "with respect to any liability with [sic] may accrue ... as a result of exposure to, or other handling of, hazardous materials or other materials on or off the Site in connection with this contract."

Gauthier and Hardy were employees of Ducote's who participated in Ducote's work at the battery recycling plant owned and operated by Exide. They allege that while working at that plant, they were injured by exposure to "lead, acid and/or other heavy metals and toxic substances." Neither Ducote nor Exide, however, may be sued by Plaintiffs. Ducote is immune from liability in this action because "[t]he Louisiana Workers Compensation Act provides that workers compensation is the exclusive remedy of an employee against his employer for an injury or a compensable sickness or disease." *See* La.Rev.Stat. Ann. § 22:1032 (West 2005). Exide, on the other hand, is not immune from liability under the Louisiana Workers

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2005 WL 1719206 (W.D.La.)

(Cite as: 2005 WL 1719206 (W.D.La.))

Compensation Act, as the court explained in its Memorandum Ruling of 18 March 2005; but, it is unamenable to suit because it is bankrupt. *See* La.Rev.Stat. Ann. § 22:655 (West 2005). Plaintiffs, therefore, seek redress for their alleged damages from Winterthur pursuant to the Louisiana Direct Action Statue. *Id.*

Winterthur, as Exide's subrogee, filed a third-party complaint against Ducote, Century, and Evanston Insurance Co. ("Evanston"). Winterthur's cause of action against Ducote is based on Ducote's promise to indemnify and provide insurance for Exide. Winterthur's asserted causes of action against Century and Evanston, Ducote's liability insurers, are brought pursuant to the Louisiana Direct Action Statue and are premised upon two claims. First, Winterthur claims that, pursuant to its obligations under the Hold Harmless and Indemnity Agreement, Ducote made Exide an additional insured under its insurance policies with Century and Evanston. Accordingly, as Exide's subrogee, Winterthur seeks to enforce Exide's rights as an insured under those policies. Second, Winterthur claims that the Century and Evanston Policies provide coverage to Ducote for any liability it may have to Winterthur under the indemnity provisions of the Hold Harmless and Indemnity Agreement, and therefore, Winterthur is entitled to bring a direct action against Century and Evanston pursuant to the Louisiana Direct Action Statue because their policies provide coverage to Ducote for any contractual liability he may have to Winterthur in this case.

*2 After Winterthur filed its third-party complaint, Plaintiffs' amended their complaint to assert a direct cause of action against Century and Evanston, alleging that Exide is an additional insured under their respective policies. Evanston then moved for dismissal or summary judgment upon Winterthur's claims against it. The court found that Exide was an additional insured under Evanston's policy and that the policy provided coverage for Ducote's liability pursuant to the Hold Harmless and Indemnity Agreement. The same claims are made against Century, who now moves for summary judgment, claiming that the terms of its policy exclude coverage of these claims.

*Applicable Legal Standards*

Century asserts that it is entitled to summary judgment pursuant to the terms of the insurance policy by which it provided general liability coverage to Ducote, the employer of Hardy and Gauthier. "An unambiguous contract is interpreted as a matter of law." *First Nat'l Bank of Jackson v. Pursue Energy Corp.*, 799 F.2d 149, 151 (5th Cir.1986). "A district court may grant summary judgment when a contract is unambiguous .... and [its] determination that a contract is unambiguous is a conclusion of law." *Id.* Under Fed. R. Civ. P. 56, summary judgment may be granted to the moving party only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. In making this determination, a court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255. Once the moving party has shown "that there is an absence of evidence to support the non-moving party's case," the non-moving party must come forward with "specific facts" showing a genuine factual issue for trial. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory denials, improbable inferences, and legalistic argumentation are not an adequate substitute for specific facts showing that there is a genuine issue for trial. *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993).

*Discussion*

Century contends that all causes of action against it should be denied as a matter of law because the policies by which it insured Ducote, Commercial Lines Policies Nos. CCP-207264 and CCP-188630 ("Century Policies"), do not provide coverage for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

M006163553

Not Reported in F.Supp.2d                                                                                Page 3
Not Reported in F.Supp.2d, 2005 WL 1719206 (W.D.La.)
(Cite as: 2005 WL 1719206 (W.D.La.))

liability resulting from exposure to lead. It claims that, under the terms of its policies, it has neither a duty to defend nor to indemnify any party to this suit. For the following reasons, Century's motion is denied.

*3 As mentioned above, two causes of action have been asserted against Century. First, premised upon the contention that Exide is an additional insured under the Century Policies, Winterthur, as Exide's subrogee, asserts that the Century Policies provide coverage for the claims against it. Under this theory, Plaintiffs also seek redress directly from Century for Exide's alleged negligence pursuant to the Louisiana Direct Action Statute. Assuming for the sake of argument that Exide is an additional insured under the Century Policies, those policies would clearly exclude any liability that Exide may have to Plaintiffs for exposure to lead. The Century Policies unambiguously exclude coverage for " 'bodily injury' or 'property damage' resulting from the disposal, existence, ingestion, inhalation, installation or removal of lead...." As a matter of law, therefore, neither Plaintiffs nor Winterthur may recover from Century for any damages paid for injuries caused by lead based on the theory that the Centuries Policies provide coverage to Exide for such liability.

Winterthur, however, also contends that because Ducote is contractually obligated to reimburse it for any monies it pays on behalf of Exide, Century, as Ducote's insurer, must indemnify it for at least some portion of those payments. Although the Century Policies generally exclude coverage for contractual liability, that exclusion clearly states that coverage is provided for liability for "bodily injury" that has been "[a]ssumed in a contract or agreement that is an 'insured contract.' ' [FN1] An "insured contract," among other things, includes an "agreement pertaining to your business ... under which you assume the tort liability of another party to pay for 'bodily injury' ..." [FN2] Some coverage of Ducote's liability under the Hold Harmless and Indemnity Agreement is, therefore, provided by the Century Policies. The contentious issue, however, is whether the lead exclusion clause excludes coverage for the alleged contractual liability.

FN1. Century Policies § 1(A)(2)(b)(2)(b).

FN2. Century Policies § V(8)(f).

Evanston presents two arguments as to why the lead exclusions should be deemed inapplicable to Ducote's contractual liability. Evanston first asserts that because the [contractual liability provision] is more specific that the *general* 'lead exclusion' ... Louisiana law mandates that coverage be afforded." *See Aikman v. Thomas,* 2003-2241, *6, 887 So.2d 86, 90, (La.App. 1 Cir. 9/17/04) (stating that "in the interpretation of statutes and contracts, the specific controls the general"). Evanston, however, equivocates between two meanings of the term "specific." While it is true that the contractual liability provision "sets forth several, specific qualifications and limitations to the 'insured contract' coverage," whereas the lead exclusion clause is more general in nature, it is not with the specificity of a clause itself that the court should be. The contractual liability clause uses the general term "bodily injury." The lead exclusion clause, however, further specifies what constitutes a covered bodily injury. *Aikman,* 887 So.2d at 90 (stating that a "policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another"). Therefore, the general maximum that in the interpretation of statutes and contracts that "the specific controls the general" does not support the conclusion for which Evanston argues.

*4 Second, Evanston argues that, under Louisiana law, the court should find in favor of coverage because the contractual liability and lead exclusion clauses are incongruous and this creates an ambiguity in the policy. Evanston contends that "where an accident is covered by one clause in an insurance policy, but it is excluded by another clause of the same policy, the clause providing coverage must prevail." *Lee v. Liberty Mut. Ins.* 387 So.2d 621, 623 (La.App. 4th Cir.1980). The decision in *Lee,* however, does not support Evanston's argument. Evanston's conclusion that the contractual liability clause in the Century Policies provides coverage begs the question. As mentioned above, the contractual liability clause provides

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 4

Not Reported in F.Supp.2d, 2005 WL 1719206 (W.D.La.)

(Cite as: 2005 WL 1719206 (W.D.La.))

coverage for liability due to" bodily injury," but what constitutes covered "bodily injury" is narrowed by the lead exclusion clause. The contractual liability clause, therefore, does not does not, as a matter of law, provide coverage for liability based on the exposure to lead.

While the lead exclusion clause may prohibit coverage under each of the theories of liability asserted against Century, there are genuine issues of material fact regarding the cause of any injuries Plaintiffs may have suffered. This precludes the court's granting Century's motion.

Gauthier and Hardy allege that they were injured by exposure to "lead, acid and/or other heavy metals and toxic substances." Among these various substances, only damages caused by exposure to lead are excluded by the Century Policies. Plaintiffs might establish that they were harmed by exposure to various deleterious substances, but be unable to isolate which substances caused which injuries. Century, as the insurance carrier, shoulders the burden of proving that the coverage exclusion is applicable. *Doerr v. Mobil Oil Corp.*, 00-0947, *5, 774 So.2d 119, 124 (La.12/19/2000) (holding that he insurer to each of the causes of action stated).

There are also genuine issues of material fact concerning Century's claim that it does not have a duty to defend Exide. An insurer's duty to defend a suit is determined solely by reference to the pleadings filed in that suit. *Gregory v. Tenn. Gas Pipeline Co.*, 948 F.2d 203, 205 (5th Cir.1991). "An insurer owes a duty to defend unless the claims made against the insured are clearly excluded from coverage. If only one claim falls within the duty to defend then the insurer must defend the entire case and the court should liberally construe the complaints to determine whether any one claim triggers the duty to defend." *Id.* Because only the claims for lead exposure are excluded from coverage under the Century Policies, it may be the case that Century has a duty to defend Exide. The Century policies, however, require, as a prerequisite to defending an insured, that certain notice procedures be met. There is nothing in the record from which the court can determine whether these prerequisites have been satisfied.

*5 Century's Motion for Summary Judgment, therefore, is DENIED because there are genuine issues of material fact yet to be resolved.

Not Reported in F.Supp.2d, 2005 WL 1719206 (W.D.La.)

Motions, Pleadings and Filings (Back to top)

• 2004 WL 2028478 (Trial Pleading) Answer to Third Party Complaint (Aug. 16, 2004)

• 2003 WL 23528414 (Trial Motion, Memorandum and Affidavit) Joint Motion to Dismiss Without Prejudice (May. 29, 2003)

• 2003 WL 23528447 (Trial Motion, Memorandum and Affidavit) Motion for Summary Judgment (Apr. 03, 2003)

• 2003 WL 23528448 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss for Insufficient Service of Process (Apr. 03, 2003)

• 2003 WL 23528413 (Trial Motion, Memorandum and Affidavit) Winterthur International American Insurance Company's Opposition to Plaintiffs' Motion to Amend Order to Certify for Interlocutory Appeal (Mar. 03, 2003)

• 2003 WL 23767896 (Trial Motion, Memorandum and Affidavit) Winterthur International American Insurance Company's Opposition to Plaintiffs' Motion to Amend Order to Certify for Interlocutory Appeal (Mar. 3, 2003)

• 2003 WL 23767904 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Amend Order to Certify for Interlocutory Appeal (Mar. 3, 2003)

• 2002 WL 32512060 (Trial Motion, Memorandum and Affidavit) Memorandum in Response to Supplemental Memorandum in Support of Plaintiffs' Motion to Remand (Nov. 19, 2002)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

M0061635S6

Not Reported in F.Supp.2d                                                                           Page 5
Not Reported in F.Supp.2d, 2005 WL 1719206 (W.D.La.)
(Cite as: 2005 WL 1719206 (W.D.La.))

• 2002 WL 32512127 (Trial Motion, Memorandum and Affidavit) Motion for Leave to File Memorandum in Response to Supplemental Memorandum (Nov. 19, 2002)

• 2002 WL 32651069 (Trial Motion, Memorandum and Affidavit) Memorandum in Response to Supplemental Memorandum in Support of Plaintiffs' Motion to Remand (Nov. 19, 2002)

• 2002 WL 32651064 (Trial Motion, Memorandum and Affidavit) Response of Mike Ashford to Plaintiffs' Supplemental Memorandum in Support of Motion to Remand (Nov. 15, 2002)

• 2002 WL 32512069 (Trial Motion, Memorandum and Affidavit) Motion of Mike Ashford for Leave to File Response to Plaintiffs' Supplemental Memorandum in Support of Motion to Remand (Nov. 14, 2002)

• 2002 WL 32512063 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Plaintiffs' Motion to Remand (Nov. 04, 2002)

• 2002 WL 32651055 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Plaintiffs' Motion to Remand (Nov. 4, 2002)

• 2002 WL 32651049 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Continue Hearing on Class Certification (Oct. 28, 2002)

• 2002 WL 32512124 (Trial Motion, Memorandum and Affidavit) Motion for Leave to File Supplemental Memorandum in Support of Plaintiff's Motion to Remand (Oct. 21, 2002)

• 2002 WL 32512007 (Trial Pleading) Answer (Oct. 15, 2002)

• 2002 WL 32512059 (Trial Motion, Memorandum and Affidavit) Motion to Continue Hearing on Plaintiffs' Motion for Class Certification (Oct. 15, 2002)

• 2002 WL 32512116 (Trial Motion, Memorandum and Affidavit) Motion for Leave to Substitute Original Exhibit (Oct. 15, 2002)

• 2002 WL 32651042 (Trial Pleading) Answer (Oct. 15, 2002)

• 2002 WL 32512058 (Trial Motion, Memorandum and Affidavit) Unopposed Motion for Extension to File Opposition to Plaintiffs' Motion to Certify (Oct. 07, 2002)

• 2002 WL 32512061 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Certify Class (Oct. 07, 2002)

• 2002 WL 32651026 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Certify Class (Oct. 7, 2002)

• 2002 WL 32512115 (Trial Motion, Memorandum and Affidavit) Motion to Certify Class (Sep. 18, 2002)

• 2002 WL 32512066 (Trial Motion, Memorandum and Affidavit) Motion for Leave to File Memorandum Supporting Motion for Extension to Submit Additional Evidence in Opposition to Plaintiffs' Motion to Remand (Sep. 13, 2002)

• 2002 WL 32512128 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Remand (Sep. 09, 2002)

• 2002 WL 32651002 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Remand (Sep. 9, 2002)

• 2002 WL 32512122 (Trial Motion, Memorandum and Affidavit) Unopposed Motion for Extension to File Opposition to Plaintiffs' Motion to Remand (Sep. 03, 2002)

• 2002 WL 32650995 (Trial Motion, Memorandum and Affidavit) Compliance with Removal Order (Aug. 22, 2002)

• 2002 WL 32512005 (Trial Pleading) Winterthur

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

M0061635S6

Not Reported in F.Supp.2d

Page 6

Not Reported in F.Supp.2d, 2005 WL 1719206 (W.D.La.)

(Cite as: 2005 WL 1719206 (W.D.La.))

International American Insurance Company's Answer to the Class Action Petition for Damages (Aug. 19, 2002)

• 2002 WL 32650973 (Trial Pleading) Winterthur International American Insurance Company's Answer to the Class Action Petition for Damages (Aug. 19, 2002)

• 2002 WL 32512055 (Trial Motion, Memorandum and Affidavit) Motion to Remand (Aug. 14, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.