THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
Matthew J. Zuchetto
926 W. Sprague Avenue, Suite 583
Spokane, WA 99201
Telephone: (509) 455-3966
Email: scottgroup@mac.com

Attorneys for the Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re VIOXX® PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1657 |
| THIS DOCUMENT RELATES TO: | FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |
| Amsden vs. Merck & Co., Inc. | |
| Civil Action No. 2:06cv 1050 | |

Plaintiff alleges:

## I.  JURISDICTION

1.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity of citizenship exists between the parties.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL: 1

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

## II.   **PARTIES AND VENUE**

2.      Plaintiff Margaret Hobson is a single individual and a resident of Bonner County, Idaho.  Cleta Amsden has power of attorney for Plaintiff Hobson. Ms. Hobson passed away on January 13, 2007.  She was survived by her daughter, Clarice Jacobson, and her son, Leroy Hokenson, statutory beneficiaries under RCW 4.20.005 - .060.  Ms. Hobson's sister, Cleta Amsden, is the personal representative for Ms. Hobson's estate.

3.      Defendant Merck & Co., Inc. [Merck], is a New Jersey corporation, with its principal place of business at One Merck Drive, White House Station, New Jersey 08889.  Merck is registered to do business in Washington and has done business by and through its subsidiaries, divisions, predecessors in interest, and/or agents in Washington at all times relevant to this Complaint.  Merck manufactured Vioxx for distribution and sale in Pend Oreille County, Washington, and in Bonner County, Idaho.

4.      Venue is proper in the Eastern District of Washington, under 28 U.S.C. §1391(a)(2).

## III.   **FACTUAL ALLEGATIONS**

5.      Margaret Hobson suffered a heart attack because she took Merck's prescription medication, Vioxx.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL: 2

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

6.     Merck, itself, or through use of its agents, researched, developed, manufactured, created, designed, tested, labeled, packaged, distributed, supplied, marketed, sold, promoted and advertised, the prescription drug Vioxx, also called rofecoxib.

7.     Vioxx belongs to a class of prescription medications called non-steroidal anti-inflammatory drugs [NSAIDs].  NSAIDs reduce pain by blocking the body's production of enzymes called cyclooxygenase [COX].  There are two forms of COX enzymes: COX-1 and COX-2.  Most traditional NSAIDs (for example, ibuprofen and naproxen) work by blocking COX-1 and COX-2 enzymes, which reduces pain but may lead to gastrointestinal bleeding.

8.     Unlike other NSAIDs, Vioxx is alleged to selectively block the COX-2 enzymes that trigger pain and inflammation, while sparing the COX-1 enzymes that help maintain a normal stomach lining.  As a result, Vioxx was marketed as being easier or safer on the stomach than traditional NSAIDs.

9.     However, ingestion of Vioxx is linked with an increased risk of adverse health effects, including heart attack and ischemic stroke.

10.    The Food and Drug Administration [FDA] approved Vioxx for the reduction of pain and inflammation caused by osteoarthritis, as well as for acute pain in adults and for the treatment of menstrual pain, on or about May 20, 1999.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  3

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 342
SPOKANE, WA 99201
(509) 455-3966

The FDA accelerated the approval process for Vioxx because of a perceived benefit to consumers over available alternatives at the time, including ibuprofen and naproxen.

11.     Before the FDA approved Vioxx for use in the United States, Merck knew Vioxx was associated with serious health risks.  Merck identified these risks at least as early as its pre-approval clinical trials.  Those trials and one or more of the Merck-sponsored studies completed shortly after FDA approval of Vioxx showed statistically significant increases in adverse cardiovascular events among Vioxx users.

12.     A memorandum dated November 21, 1996, by a Merck official said "there is a substantial chance that significantly higher rates" of cardiovascular problems will be seen in patients taking Vioxx, unless aspirin was taken in conjunction with Vioxx.  Merck knew that taking aspirin with Vioxx would cancel out Vioxx's alleged benefit of sparing the COX-1 enzyme that helps maintain a normal stomach lining.

13.     In February, 1997, a Merck internal e-mail warned that a proposed clinical trial of Vioxx will show that patients have more blood clots on Vioxx, if aspirin is not taken in conjunction with Vioxx, compared to patients who take

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  4

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

another medication.  The e-mail said that with Vioxx "you will get more thrombotic events" -- that is, blood clots -- "and kill [the] drug."

14.    On or about January 1, 1999, Merck began its Vioxx Gastrointestinal Outcomes Research [VIGOR] pre-approval clinical trial to support its FDA application for approval of Vioxx.

15.    In designing the VIGOR study, Merck included an external Vascular Event Committee [VEC], which contained three separate subspecialty committees (cardiac, cerebrovascular, and peripheral), for surveillance, monitoring, and adjudication of vascular events that were happening in COX-2 inhibitor trials. Merck was aware of possible adverse cardiovascular effects and pro-thrombotic propensity of Vioxx before the VIGOR trial, because Merck set in place a separate adjudication procedure to study the events.

16.    During the VIGOR study, Merck received reports of death and cardiovascular events in the Vioxx group.  Merck completed the VIGOR study on or about March 17, 2000.

17.    Merck failed to disclose these serious health risks when it learned of them.  Disclosing the serious health risks associated with Vioxx would have drastically undermined Merck's position in the market as compared to Celebrex, a

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

competing drug. Celebrex was approved by the FDA approximately four to five months before Vioxx.

18.    Instead of properly disclosing the adverse events, Merck launched a massive marketing campaign, which included providing promotional materials to physicians, that touted the benefits of Vioxx. Merck also gave free samples of Vioxx to physicians.

19.    Merck's safety label for Vioxx set forth a warning concerning "Gastrointestinal [GI] Effects," such as the "Risk of GI Ulceration, Bleeding, and Perforation." The label did not adequately disclose the cardiovascular and thrombotic safety issues related to Vioxx.

20.    On or about November 18, 1999, the FDA issued a report noting that the VIGOR study Safety Monitoring Board "was concerned over the excess deaths and cardiovascular events in [the Vioxx] group."

21.    On or about December 16, 1999, the FDA admonished Merck in a letter, stating that the "promotion pieces that promote Vioxx (rofecoxib) are false and misleading because they contain misrepresentations of Vioxx's safety profile, unsubstantiated comparative claims, and are lacking in fair balance."

22.    In March, 2000, the results of Merck's VIGOR Study were available to Merck. The VIGOR Study results revealed that:

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  6

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

a.    Patients who took 50-mg doses of Vioxx were four to five times more likely to suffer a heart attack as compared to patients taking naproxen;

b.    Patients who took 50-mg doses of Vioxx were 2.3 times more likely to suffer serious cardiovascular disease (including heart attacks, ischemic stroke, unstable angina, and sudden unexplained death) as compared to patients taking naproxen; and

c.    Patients who took 50-mg doses of Vioxx suffered more cases of serious disease (either gastrointestinal or cardiovascular) than did naproxen users (61 and 57 cases respectively).

23.    In June, 2000, Merck submitted the results of its VIGOR study to the FDA.  Merck attributed the results of the VIGOR study to a purported "cardio-protective effect" of naproxen, and not to an increased risk of these events attributable to Vioxx.

24.    In June of 2000, industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), showed that Vioxx use resulted in a statistically significant increase in hypertension and myocardial infarction.  Merck is a member and corporate sponsor of this organization.  Merck did nothing to warn consumers about these studies.  Instead, Merck denied the results with

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  7

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICES CORPORATION
926 W. SPRAGUE AVENUE
SUITE 565
SPOKANE, WA 99201
(509) 455-3966

respect to hypertension in the American Pharmaceutical Association's official publication, Pharmacy Today, *Spin War Aside, Lessons Emerge From COX-2 Trials*, August 2000, page 3.

25.    In November of 2000, Merck published the results of its VIGOR study in the New England Journal of Medicine [NEJM].  Merck knowingly downplayed and/or withheld from the NEJM the severity of the cardiovascular risks associated with Vioxx consumption compared to naproxen consumption.

26.    By the end of the year 2000, Merck's share of the market with Vioxx increased to twenty-three percent.  Merck earned approximately one and a half billion dollars in profits.  In 2000, Merck spent $161 million advertising Vioxx to consumers--more than PepsiCo spent to advertise Pepsi and more than Budweiser spent to advertise its beer and more than Nike spent to advertise its top shoes and more than Campbell spent advertising its soups--according to a study by the National Institute for Health Care Management, Prescription Drugs and Mass Media, 2000, November 2001.

27.    An FDA advisory committee considered the VIGOR Study results in February 2001 and concluded that Vioxx had no safety advantage over the generic drug naproxen.  Naproxen sells at a fraction of the cost of Vioxx.  According to the *FDA Advisory Committee Briefing Document, VIOXX Gastrointestinal Safety*,

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL: 8

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

dated February 8, 2001: "[I]n the VIGOR Study the potential advantage of decreasing the risk of complicated [GI side effect] was paralleled by the increased risk of developing cardiovascular and thrombotic events." According to a memorandum prepared by an FDA Advisory Committee member, Lourdes Villalba, M.D., dated February 8, 2001, the VIGOR Study found that more VIGOR Study participants died while taking Vioxx than those taking naproxen (22 and 15, respectively).

28.    Merck issued a press release through the *PR Newswire* that touted the favorable cardiovascular safety profile of Vioxx, on or about May 22, 2001. The press release stated: "In response to news and analyst reports of data the Company first released a year ago, Merck & Co., Inc., today reconfirmed the favorable cardiovascular safety profile of Vioxx."

29.    The FDA reprimanded Merck for its May 22, 2001 press release, stating that: "Your claim in the press release is simply incomprehensible . . . The implications that Vioxx cardiovascular profile is superior to other NSAIDs is misleading."

30.    On August 22, 2001, the *Journal of the American Medical Association* (JAMA) published an article authored by cardiologists Eric J. Topol and Steven C. Nessen of the Cleveland Clinic Foundation. The article, entitled "Risk of

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  9

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

Cardiovascular Events Associated With Selective COX-2 Inhibitors," reported the results of a study of Vioxx and Celebrex.  The article reported the study's findings that "[c]urrent data would suggest that use of these so-called 'COX-2 inhibitors' might lead to increased cardiovascular events."  The study found that adverse cardiovascular events were 238 percent higher associated with the use of Vioxx than with naproxen.  In the JAMA article, the authors stated that "by decreasing PGI2 production [Vioxx] may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PGI2, potentially leading to an increase in thrombotic cardiovascular events."

31.    The day before the JAMA article was published, Merck commented, "We have additional data beyond what they cite, and the findings are very, very reassuring.  Vioxx does not result in any increase in cardiovascular events compared to placebo," *Bloomberg News* reported.  On August 23, 2001, the day after the JAMA article was published, Merck stated in a press release, "the Company stands behind the overall and cardiovascular safety profile of Vioxx."

32.    On or about September 17, 2001, the FDA again reprimanded Merck about Vioxx.  The FDA told Merck to stop misleading doctors about Vioxx's effect on the cardiovascular system.  That letter warned Merck that its marketing

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3466

of Vioxx was "false, lacking in fair balance, or otherwise misleading . . . ." The

FDA reprimanded Merck for:

> assert[ing] that Vioxx does not increase the risk of [heart attacks] and
> that the VIGOR finding is consistent with naproxen's ability to block
> platelet aggregation like aspirin. That is a possible explanation, but
> you fail to disclose that your explanation is hypothetical, has not been
> demonstrated by substantial evidence, and that there is another
> reasonable explanation, that Vioxx may have prothrombotic
> properties. . . . Your minimizing these potential risks and
> misrepresenting the safety profile for Vioxx raise significant public
> health and safety concerns.

33.    The eight page FDA Warning Letter details the Defendant's conduct

supporting the issuance of the Warning Letter, and makes the following

"Conclusions and Recommendations:"

> The promotional activities and materials described above
> minimize the potentially serious cardiovascular findings that
> were observed in the VIGOR study, minimize the
> Vioxx/Coumadin drug interaction, omit crucial risk information
> associated with Vioxx therapy, contain unsubstantiated
> comparative claims, and promote unapproved uses. On
> December 16, 1999, we also objected to your dissemination of
> promotional materials for Vioxx that misrepresented Vioxx's
> safety profile, contained unsubstantiated comparative claims,
> and lacked fair balance.

> Due to the seriousness of these violations, and the fact that your
> violative promotion of Vioxx has continued despite our prior
> written notification regarding similar violations, we request that
> you provide a detailed response to the issues raised in this
> Warning Letter on or before October 1, 2001. This response
> should contain an action plan that includes a comprehensive
> plan to disseminate corrective messages about the issues
> discussed in this letter to the audiences that received these

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL: 11

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 503
SPOKANE, WA 99201
(509) 455-3466

misleading messages. This corrective action plan should also include:

1.    Immediately ceasing all violative promotional activities, and the dissemination of violative promotional materials for Vioxx.

2.    Issuing a "Dear Healthcare provider" letter to correct false or misleading impressions and information. This proposed letter should be submitted to us for review prior to its release. After agreement is reached on the content and audience, the letter should be disseminated by direct mail to all healthcare providers who were, or may have been exposed to the violative promotion.

3.    A written statement of your intent to comply with "1" and "2" above.

34.    In the year 2001, Vioxx was the most heavily advertised drug to consumers.  Merck's advertising campaign paid off.  Merck received $2.6 billion in revenue from Vioxx in 2001, making Vioxx the world's tenth-highest selling medication.

35.    On or about January 12, 2002, *The Lancet* published a Vanderbilt University School of Medicine human epidemiological peer-reviewed study.  The study disproved Merck's unsupported theory that naproxen was cardio-protective and that naproxen's alleged cardio-protective effect accounted for higher cardiovascular risks among Vioxx users.  Ray, W., et al., "Non-Steroidal Anti-Inflammatory Drugs and Risk of Serious Coronary Heart Disease: An Observational Cohort Study," 359 *The Lancet* at 118-123 (Jan. 12, 2002).  That

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL: 12

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

study concluded that there is an absence of a protective effect of naproxen or other non-aspirin NSAIDs on risk of coronary heart disease.

36.    On February 6, 2002, the *Journal of the American College of Cardiology* published Dr. Richard J. Bing's study.  The study confirmed that COX-2 inhibitors tip the balance of prostacyclin/thromboxane in favor of thromboxane, which leads to increased vascular and thrombotic events.  Studies completed at the University of Pennsylvania and published in the Journal of Science, April 19, 2002, also supported Dr. Bing's conclusion.

37.    On April 11, 2002, the FDA approved a supplemental application for the use of Vioxx for rheumatoid arthritis, adding this indication to the previously approved indications for osteoarthritis and pain.  The FDA also directed Merck to add information about the cardiovascular risks associated with Vioxx to its product labeling.  As a result, Merck included information about the occurrence of cardiovascular events on Vioxx labeling, including heart attacks and stroke, in some patients.  The label failed to disclose the level of risk that consumers were subjected to because of Vioxx.

38.    The April 2002 labeling changes were insufficient to put the consuming public on notice regarding the risk of adverse health effects of Vioxx.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  13

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99204
(509) 455-3966

39.    On October 22, 2003, Reuters published an article that stated that the "arthritis drug is suffering from clinical trial data suggesting it might slightly raise the risk of heart attacks, and the growing perception that its pain-fighting capabilities are no better than traditional painkillers."

40.    On October 30, 2003, in an article entitled, "Vioxx Study Sees Heart-Attack Risk," the Wall Street Journal reported that another Merck-sponsored study had been presented at the annual meeting of the American College of Rheumatology and confirmed that there is an increased "risk of heart attacks in patients taking [Vioxx]." That article stated that within the first 30 days of taking Vioxx, the risk of a heart attack was increased thirty-nine percent as compared to Vioxx's competitor, Celebrex.

41.    By the end of October 2003, almost 2,000 adverse cardiovascular events were experienced by people taking Vioxx according to the FDA's Adverse Event Reporting System database. On information and belief, those adverse cardiovascular events may have been underreported by as much as ninety-nine percent.

42.    On or about August 11, 2004, Dr. David Graham reported that heart attacks associated with the use of Vioxx were 300 percent higher than with the use of Celebrex.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  14

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA. 99201
(509) 455-3966

43.    On or about August 27, 2004, Merck's own APPROVE Study found that Vioxx tripled the risk of heart attack.

44.    Merck continued to aggressively advertise, market, and defend the safety of Vioxx until September 30, 2004.  Merck then finally admitted that Vioxx doubled the risk of heart attack and stroke to consumers who took the drug for longer than eighteen months, compared to subjects taking a placebo.  Merck withdrew Vioxx from the market worldwide.

45.    Margaret Hobson received her first prescription for a twelve and one-half milligram dosage of Vioxx in May 2001, for pain relief from arthritis.  In January 2002 her Vioxx prescription was increased to twenty five milligrams and she took Vioxx at the twenty five milligram dosage until February 2004.  In sum, Margaret Hobson took Vioxx for nearly four years, while Merck kept secret from Ms. Hobson and her prescribing physicians the adverse drug event reports of death and cardiovascular and thrombotic events, such as a heart attack and stroke, associated with taking Vioxx.  Margaret Hobson purchased Vioxx from Safeway Pharmacy in Newport, Washington, from May 2001 through January 2004.

46.    On or about February 14, 2004, Margaret Hobson suffered a myocardial infarction causing her to be hospitalized.  She was admitted to Newport Community Hospital in Newport, Washington, and subsequently

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  15

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA  99201
(509) 455-3966

transferred to Deaconess Medical Center, in Spokane, Washington, on February 15, 2004, for further evaluation and therapy.  The following day, Margaret Hobson underwent a cardiac catheterization and on February 18, 2004, she underwent coronary artery bypass grafting x4 after an unsuccessful intra-aortic balloon pump placement.  Margaret Hobson was released to St. Luke's Rehabilitation Institute in Spokane, Washington, for comprehensive rehabilitation services on February 27, 2004, before returning home to Priest River, Idaho.  She was discharged from St. Luke's Rehabilitation on March 12, 2004, with continued coordination problems requiring modified-independent precautions with all basic self-care including the need for her to ambulate with a front-wheeled walker.  Margaret was also started on an anti-depressant medication due to feelings of anxiety and depression while in the care of St. Luke's Rehabilitation.  Upon her release, she was provided with assistance through Full Life Caregiving Service Agency for help in managing her medications, and also to provide assistance with her daily activities, such as cleaning and laundry.

47.    Margaret Hobson was seventy-five years old at the time of her February 2004 myocardial infarction which left her with decreased mobility and strength requiring the use of a walker.  She was always very independent and active prior to her heart attack and subsequent bypass surgery but the effects of

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  16

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W SPRAGUE AVENUE
SUITE 903
SPOKANE, WA 99201
(509) 455-3966

these events have weakened Margaret both mentally and physically.  Margaret Hobson's life has been permanently altered from the injuries she suffered while taking Vioxx.

48.    Merck failed to warn the FDA in a timely and adequate fashion about the known cardiovascular and thrombotic risks associated with Vioxx.

49.    Merck failed to warn the FDA in a timely and adequate fashion about the lack of comparative safety of Vioxx compared to other NSAIDs.

50.    Merck failed to warn physicians in a timely and adequate fashion about the known cardiovascular and thrombotic risks associated with Vioxx.

51.    Merck to failed warn physicians in a timely and adequate fashion about the lack of comparative safety of Vioxx compared to other NSAIDs.

52.    Merck's marketing strategies targeted potential Vioxx patients, including Margaret Hobson, to get them to purchase Vioxx.  At the time Merck distributed, manufactured, and marketed Vioxx, Merck intended that potential Vioxx patients, including Margaret Hobson, rely on the marketing, advertisements, and product information propounded by Merck in magazines and on television, as well as Merck's omission of relevant negative information from such materials.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  17

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

53.     Merck failed to timely and adequately warn patients, including Margaret Hobson, about the known cardiovascular and thrombotic risks associated with Vioxx.

54.     Merck failed to warn patients, including Margaret Hobson, in a timely and adequate fashion about the lack of comparative safety of Vioxx compared to other NSAIDs.

55.     If Margaret Hobson had been warned of the risk of cardiovascular and thrombotic events associated with Vioxx, and the lack of comparative safety of Vioxx compared to other NSAIDs, Margaret Hobson would not have ingested Vioxx.

## IV.   CLAIMS

### VIOLATION OF THE WASHINGTON PRODUCTS LIABILITY ACT

56.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

57.     This cause of action is brought pursuant to RCW §§ 7.72.010-070.

58.     Merck is a manufacturer, seller, and/or supplier of Vioxx.

59.     Merck had a duty to exercise reasonable care in the design, formulation, manufacture, sale, promotion, supply, and/or distribution of the drug

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  18

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA  99301
(509) 455-3966

Vioxx into the stream of commerce, including the duty to assure that the product did not cause users to suffer from unreasonably dangerous side effects.

60.   Merck breached its duty because Merck knew or should have known that Vioxx created a high risk of unreasonably dangerous side effects, some of which are fatal.

61.   Vioxx was not reasonably safe as designed and/or manufactured within the meaning of the Washington Products Liability Act, proximately causing injury and damages to Plaintiff.

62.   Merck failed to perform adequate pre-approval clinical trials for Vioxx. Adequate testing would have shown that Vioxx had serious potential side effects, of which Merck should have then made full and proper warnings to accurately and fully reflect the symptoms, scope, and severity of the side effects.

63.   Vioxx was defective in design or formulation at the time of manufacture, because the likelihood that Vioxx would cause the Plaintiff's harm or similar harms, and the seriousness of those harms, outweighed the burden on Merck to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product.

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

64.     Vioxx was defective in design or formulation because when it was manufactured Vioxx was unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other available alternatives.

65.     Vioxx was also defective due to inadequate warning and/or inadequate clinical trials, testing, studies and inadequate reporting regarding results of trials, testing and studies.

66.     Merck failed to provide adequate warnings or instructions with Vioxx, at the time of manufacture, and the likelihood that Vioxx would cause Plaintiff's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of Merck inadequate and Merck could have provided the warnings or instructions which would have been adequate.

67.     The warnings and information that Merck provided did not accurately and/or fully reflect the symptoms, scope, or severity of the possible adverse side effects.

68.     Merck was negligent in the design, manufacture, testing, advertising, marketing, promoting, labeling, warnings given, supply, and sale of Vioxx, because Merck:

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 582
SPOKANE, WA 99201
(509) 455-3966

a.     Failed to accompany Vioxx with proper warnings regarding all possible adverse side effects associated with Vioxx usage;

b.     Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Vioxx;

c.     Failed to provide adequate training and instructions to medical care providers for appropriate use of Vioxx;

d.     Failed to warn potential Vioxx patients, including Margaret Hobson, about the need for comprehensive, periodic medical monitoring to ensure early discovery of the potential side effects caused by Vioxx, before promoting the sale of Vioxx;

e.     Failed to warn that the risks associated with Vioxx exceed the risks of other comparable forms of treatment;

f.     Negligently marketed Vioxx despite the drug's high risks and speculative benefits;

g.     Recklessly, falsely, and deceptively represented and knowingly omitted, suppressed, or concealed material facts regarding the safety and efficacy of Vioxx to or from the FDA and/or the FDA's advisory committee such that, had the FDA or its advisory committee members known of such

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL: 21

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA  99201
(509) 455-3966

facts, Vioxx would never have been approved and no physician would have been able to prescribe Vioxx to Margaret Hobson;

     h.    Remained silent, despite its knowledge of the growing public acceptance of Merck's information, misrepresentations and omissions regarding the safety and efficacy of Vioxx.  Merck remained silent because the prospect of profits outweighed public health and safety concerns;

     i.    Failed to comply with its post-manufacturing duty to warn, which arose when Merck knew, or with reasonable care should have known, that Vioxx was being prescribed without warning of the true risks of dangerous side effects; and

     j.    Was otherwise careless, negligent, grossly negligent, reckless, and acted with willful and wanton disregard for the rights of Margaret Hobson.

69.    Merck knew or should have known that Vioxx users would suffer foreseeable injuries as a result of its failure to exercise ordinary care, as described above.

70.    Merck knew or should have known that the foreseeable risks of Vioxx exceeded its benefits.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL: 22

LAW OFFICES
**THE SCOTT LAW GROUP**
A PROFESSIONAL SERVICE CORPORATION
926 W SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-1966

71.    Merck knew or should have known that Vioxx was unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other alternatives.

72.    Despite the fact that Merck knew, or should have known, that Vioxx caused unreasonable, dangerous side effects, Merck continued to market Vioxx to consumers, including Margaret Hobson, when safer alternative methods and treatments existed.

73.    When Merck marketed, sold, and distributed Vioxx for use by J Margaret Hobson, Merck knew of the use for which Vioxx was intended and expressly warranted the product to be of merchantable quality and safe and fit for such use.  Merck expressly warranted that Vioxx was safe, efficacious and well tolerated by patients studied and therefore was safe for Margaret Hobson.

74.    Margaret Hobson ingested Vioxx so that she would obtain health benefits therefrom.

75.    Margaret Hobson reasonably relied upon the skill and judgment of Merck as to whether Vioxx was of merchantable quality and safe and fit for its intended use.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  23

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 582
SPOKANE, WA  99201
(509) 455-3966

76.     Vioxx did not conform to Merck's express representations because Vioxx is not safe and has high risk of serious side effects, including life-threatening side effects.

77.     Merck's negligence was the proximate cause of the harm suffered by Plaintiff.

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**

78.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further allege as follows:

79.     This cause of action is brought pursuant to RCW §§ 19.86.010-920.

80.     Merck engaged in unfair or deceptive acts or practices.  Merck's marketing and sales of Vioxx had the capacity to deceive a substantial portion of public.  Merck made untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts from the Plaintiff in product packaging, labeling, medical advertising, direct-to-consumer advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Vioxx.  Merck downplayed and/or understated the serious nature of the risks associated with Vioxx in order to increase sales of Vioxx and secure a greater share of the market.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  24

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 581
SPOKANE, WA 99201
(509) 455-3966

81. Merck's statements and omissions were done with the intent that Washington consumers, including Plaintiff, and their physicians would rely on the statements and omissions.

82. Merck knew of the growing public acceptance of the misinformation and misrepresentations about the safety and efficacy of Vioxx. Merck remained silent because Merck's appetite for profits outweighed its concern for the health and safety of the Plaintiff.

83. Merck's unfair or deceptive acts or practices occurred in the conduct of trade or commerce, which directly or indirectly affected the people of Washington.

84. Merck's deceptive or unfair acts and practices affected the public interest.

85. Plaintiff was injured in her property.

86. Merck's act or practice was the proximate cause of Plaintiff's injury.

## V.    DAMAGES

### Injuries to the Estate of Margaret Hobson

87. Pursuant to RCW 4.20.005 - .060, this claim is brought on behalf of the Estate of Margaret Hobson as follows:

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL: 25

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

88.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth.

89.     As a direct and proximate result of Merck's actions, Plaintiff, Margaret Hobson suffered physical injury, conscious pain and suffering, emotional distress, and mental anguish to the time of her death.

90.     As a direct and proximate result of Merck's actions, Plaintiff, Margaret Hobson incurred medical expenses related to the care and treatment of her physical injuries.

91.     As a direct and proximate result of Merck's unfair or deceptive practices or acts, Plaintiff incurred expenses related to the purchase of Vioxx.

## VI.     DEMAND FOR RELIEF

92.     Plaintiff respectfully requests that the Court enter judgment against Defendant Merck as follows:

A.     Awarding Plaintiff general and compensatory damages including, but not limited to, pain and suffering, mental anguish, emotional distress, and loss of capacity to enjoy life and loss of consortium;

B.     Awarding Plaintiff past medical expenses;

C.     Awarding Plaintiff pre-judgment and post judgment interest as provided by law;

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL:  26

LAW OFFICES
THE SCOTT LAW GROUP
A PROFESSIONAL SERVICE CORPORATION
926 W SPRAGUE AVENUE
SUITE 583
SPOKANE, WA 99201
(509) 455-3966

D.    Awarding Plaintiff a full refund of all purchase costs for Vioxx;

E.    Awarding Plaintiff consequential damages;

F.    Awarding Plaintiff treble damages as allowed under the Washington Consumer Protection Act;

G.    Awarding Plaintiff costs, expenses, and attorney fees as allowed by law; and

H.    Awarding Plaintiff such other relief as is just and equitable.

## VII.   JURY DEMAND.

93.   Plaintiff demands a trial by jury in this matter.

DATED this 2⁴ᵗʰ day of April, 2007.

THE SCOTT LAW GROUP, P.S.

By _____
Darrell W. Scott, WSBA #20241
Matthew J. Zuchetto, WSBA #33404

*Attorneys for Plaintiffs*

FIRST AMENDED COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL: 27

LAW OFFICES
**THE SCOTT LAW GROUP**
A PROFESSIONAL SERVICE CORPORATION
926 W. SPRAGUE AVENUE
SUITE 568
SPOKANE, WA 99201
(509) 455-3966