UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX<br><br>PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>LENE ARNOLD<br><br>v.<br><br>MERCK & CO., INC.<br><br>Case No. 05-2627<br><br>and<br><br>ALICIA GOMEZ<br><br>v.<br><br>MERCK & CO., INC.<br><br>Case No. 05-1163 | MDL Docket NO. 1657<br><br>SECTION L<br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

### REPLY IN SUPPORT OF EIGHTH NOTICE OF SUPPLEMENTAL AUTHORITY OF PLAINTIFFS LENE ARNOLD AND ALICIA GOMEZ

Agency deference is of critical importance to Merck's motion for summary judgment. In its preemption motion, Merck suggests that deference is owed to an FDA interpretation set forth in an advisory opinion, *i.e.*, the Preamble. *See Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products*, 71 FR 3922 (2006). It is surprising then that Merck contends that *Watters v. Wachovia Bank, N.A.*, 127 S.Ct. 1559 (U.S. April 17, 2007), is

1

irrelevant to its motion for summary judgment as the issue of agency deference was extensively briefed and argued in that case. *See* Brief of Petitioner, 2006 WL 2570336, * 12-39 (arguing regulations of Comptroller of the Currency ("OCC") are not entitled to deference); Brief of Respondent, 2006 WL 3243131, * 39-43 (arguing OCC's interpretation of the National Bank Act is entitled to *Chevron* Deference).[1] Because the five Justice majority considered the agency deference issue to be "academic" and based its decision on the text of the National Bank Act, *see Watters*, 127 S.Ct. at 1572, the dissent's opinion, which reached the agency deference issue in the context of preemption, is highly relevant.[2]

*Watters* provides the most recent insight into the Supreme Court's jurisprudence on deference owed to an agency in the instance where an agency attempts through regulation to preempt state law. In *Watters*, the Chief Justice and Justices Stevens and Scalia,[3] determined they would not accord *Chevron* deference to the OCC's position favoring preemption, and that they would be reluctant to accord such deference to any agency's attempt to preempt state law. *Id.* at 1582-1584. This reasoning stands in marked contrast to Merck's contention that the FDA's position espoused in the preamble is entitled to controlling deference.

More importantly, when *Watters* is read in conjunction with *Bates v. Dow Agrosciences*,

---

[1] *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

[2] Justice Thomas did not take part in the consideration or decision of *Watters*.

[3] An interesting footnote about *Watters* is that Justice Stevens joined in the dissent, which determined the OCC regulation at issue was not entitled to *Chevron* deference. Justice Stevens is the author of *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), a case heavily relied upon by Merck in its preemption motion. Justice Stevens participation in the *Watters* dissent completely discredits each of Merck's efforts to expand *Buckman* beyond merely precluding fraud-on-the agency claims. *See also In re Vioxx Products Liability Litigation*, 401 F.Supp.2d 565, 587 (E.D.La. Nov. 18, 2005) (*Buckman* merely precludes fraud-on-the agency claims).

*LLC*, 544 U.S. 431 (2005), the Supreme Court's rulings suggest that the position favoring preemption that is being advocated by the FDA in its preamble is not tenable. In *Bates*, the Supreme Court determined that both the EPA and the defendants had exaggerated the disruptive effect of common law suits. *Id.* at 452. The Supreme Court held that, "[p]rivate remedies that enforce federal misbranding requirements would seem to aid, rather than hinder, the function of FIFRA." *Id.* at 451. The Supreme Court also flatly rejected what it termed an "inducement test," *i.e.*, an argument that common law suits are preempted since jury verdicts pressure or induce manufacturers to make labeling changes in a manner that conflicts with federal law. *Id.* at 443-445. Since the FDA's arguments for the preemption of failure to warn claims are very similar to those rejected by the Supreme Court in *Bates*, *Watters* serves as further evidence that the Supreme Court is unlikely to tolerate the FDA's recent stance on preemption.

Merck's attempts to challenge/distinguish *Barnhill v. Teva Pharms. USA, Inc.*, No. 06-0282-CB-M (S.D.Ala. Apr. 24, 2007), and *Kelly v. Wyeth*, No. 2003-3314F (Mass.Super.Ct. Apr. 12, 2007), are similarly flawed.

Merck is very critical of the court's agency deference analysis in *Barnhill*. *Barnhill*, *however*, is in accord with FDA regulations that establish that a preamble is nothing more than an "advisory opinion". *See* 21 C.F.R. § 10.85(d)(1). Since such advisory opinions are not legal requirements and are to be used merely to illustrate acceptable and unacceptable procedures and standards, 21 C.F.R. 10.85(j), Merck's contention that the preamble is entitled to controlling deference seems strained in comparison to the analysis by the court in *Barnhill*. For instance, where Merck criticizes *Barnhill* because the court gave consideration to the fact that the FDA reversed its long-standing position on preemption, recent Supreme Court cases establish that it is appropriate for

3

a court to consider such position changes during a deference analysis. *See Bates*, 544 U.S. at 449 & n.24 (finding agency's position in favor of preemption "particularly dubious" given that just five years earlier the United States advocated the opposite position); *Norfolk Southern R.R. v. Shanklin*, 529 U.S. 344, 356 (2000) (agency's construction of own regulations not entitled to deference when that construction "contradicts the agency's own prior construction").

Merck's criticism that *Barnhill* erroneously found the recent FDA preamble inconsistent with the objectives of the FDCA is equally misplaced. Congress' stated intent when it enacted the FDCA was that the law "'must not weaken the existing law', but on the contrary 'it must strengthen and extend the law's protection of the consumer.'" *McNellis*, 2005 WL 3752269 at 7, *citing U.S. v. Sullivan*, 332 U.S. 689, 701-702 (1948), *citing* H.R. Rep. No. 75-2139, at 1 (1933); S. Rep. No. 75-361, at 1 (1933). Because the preamble would have the effect of eliminating common law damages claims that existed prior to the enactment of the FDCA, *Barnhill* properly found the agency's legal reasoning inconsistent with the objectives of the FDCA. Precluding citizens from redress by insulating manufacturers from liability caused by their negligence can hardly be reconciled with laws designed to protect and compensate consumers.

Recent activity in the United States Senate supports the determination by the court in *Barnhill* that the preemption is inconsistent with the objectives of the FDCA. The Senate recently approved a bill, the "Enhanced Drug Safety and Innovation Act of 2007", to provide the FDA with enhanced post-approval powers. *See* S. 484, 110th Cong. (2007). On the day the bill was approved by the Senate, its chief sponsor, Senator Kennedy, reiterated that the FDCA has no preemptive effect, and that FDA regulations are minimal requirements for drug labeling. Senator Kennedy stated:

> [W]e do not intend to alter existing State law duties imposed on the holder of an approved drug application to obtain and disclose information regarding drug safety hazards either before or after the drug receives FDA approval or labeling. Nor are we expressing a belief that the regulatory scheme embodied in the bill is comprehensive enough to preempt the field or every aspect of State law . FDA's approved label has always been understood to be the minimum requirement necessary for approval. In providing the FDA with new tools and enhanced authority to determine drug safety, we do not intend to convert this minimum requirement into a maximum.
>
> As the Institute of Medicine and others have found, the FDA's past performance has been inadequate. While we fully expect substantial improvement as a result of the enactment of this bill, we cannot and do not expect the FDA or this new process to identify every drug-specific safety concern before a drug manufacturer becomes aware or should have become aware of such concerns. Nor are the bill's requirements that holders disclose certain safety information to the Government intended to substitute for the disclosure requirements that may be required under State law.

153 Cong. Rec. S5764 (daily ed. May 9, 2007) (statement of Sen. Kennedy). In many ways the above statements by Senator Kennedy appear to be a direct Congressional response to the FDA's preamble.[4] In any event, Senator Kennedy's comments make it plain that the preamble is

---

[4] As was noted in the plaintiffs' initial response in opposition to Merck's motion for summary judgment, the FDA's Final Rule failed to comply with Executive Order 13132. *See* 64 Fed. Reg. 43255 (1999). In a weak effort to establish it had complied with its obligations under Executive Order 13132, the FDA posted a Memorandum "Consultations with State Officials and Organizations"(hereinafter, "FDA Consultation Memo") on its website. *See* Consultations Memo, available at http://www.fda.gov/ohrms/dockets/dockets/00n1269/00n-1269-m000001.pdf. In the Consultation Memo the agency claims that "in January" 2006, just days prior to publishing the preamble with the preemption language and the Final Labeling Rule on January 22, 2006, it conferred with several select entities regarding the inclusion of language on preempting State claims. *Id.* Those entities included the National Governors Association, the Council of State Governors, the American Legislative Exchange Council, National Conference of State Legislators, the Office of Mississippi Governor Haley Barbour, (a former lobbyist for the pharmaceutical industry). *See* Dao, *Using a Lobbyist's Pull From the Governors Seat*, NY Times, February 21, 2006, Exhibit 42 to Plaintiffs' Plaintiffs' Response to Merck's Statement of
(continued...)

5

inconsistent with the objectives of the FDCA.

Finally, Merck attempts to distinguish *Barnhill* and *Kelly* because the FDA did not have an opportunity to revisit labeling in either of those cases, whereas the FDA approved the post-VIGOR Vioxx labeling. Notwithstanding Merck's efforts to distinguish *Barnhill* and *Kelly*, in this litigation it is beyond dispute that Merck rebuffed the FDA's attempts to secure a post-VIGOR label with a CV warning. Thus, contrary to what Merck is suggesting, there has never been a finding by the FDA that a Vioxx CV warning is scientifically unsubstantiated. Accordingly, even if the preamble is entitled to deference, there would be no preemption since the FDA view on preemption is limited to circumstances "when [state laws] purport to compel a firm to include in labeling or advertising a statement that [the] FDA has considered and found scientifically unsubstantiated." 71 FR at 3935; *see also Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 97 Fn. 9 (2nd Cir. 2006), *petition for cert. pending, Warner-Lambert Company LLC and Pfizer Inc., v. Kimberly Kent, et al*, 06-1498 (U.S. May 10, 2007).

---

[4](...continued)
Material Facts as to Which There is no General Issue to be Tried and Plaintiffs' Counter-Statement of Material Facts as to Which There is no General Issue to be Tried (hereafter "SOF"), and the Office of Indiana Governor Mitch Daniels (former CEO of Eli Lilly), *see* Governor Daniels' Biographical Information, Exhibit 43 to Plaintiffs' SOF.

The PSC's motion to depose the individuals listed in the Consultation Memo is still pending before this Court.

The PSC respectfully requests that these matters be taken into consideration when ruling upon Merck's Motion for Summary Judgment.

Respectfully submitted,

PLAINTIFFS' STEERING COMMITTEE

Date: May 23, 2007

By: /s/ Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, L.L.P.*
820 O'Keefe Ave.
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
   MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

**AND**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier

**Counsel for Plaintiff Arnold**

**AND**

Kathryn A. Snapka, Esquire
SNAPKA, TURMAN & WATERHOUSE LLP
606 N. Carancahua, Suite 1511
P.O. Drawer 23017
Corpus Christi, TX 78403
(361) 888-7676 (telephone)
(361) 884-8545 (telecopier)

Zollie C. Steakley
TX State Bar No. 24029848
MS State Bar No. 100517
Attorney for Plaintiffs
CAMPBELL~CHERRY~HARRISON~
 DAVIS~DOVE, P.C.
P.O. Drawer 21387
Waco, Texas 76702
(254) 761-3300 (telephone)
(254) 761-3301 (telecopier)

**Counsel for Plaintiff Gomez**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 23rd day of May, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Ave.
New Orleans, LA 70113
PH:   (504) 581-4892
FAX: (504) 561-6024
ldavis@hhkc.com