**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
|  | : | **MDL NO. 1657** |
| **IN RE: VIOXX** | : |  |
|    **PRODUCTS LIABILITY LITIGATION** | : | **SECTION:  L** |
|  | : |  |
|  | : | **JUDGE FALLON** |
|  | : | **MAG. JUDGE KNOWLES** |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO ALL CASES**

**ORDER & REASONS**

Before the Court is the Plaintiffs' Steering Committee's ("PSC") Motion to Compel the

Return of Attorney Work Product (Rec. Doc. 10601).  During the course of discovery, a

document that contains PSC attorney work product related to the subject matter of this litigation

was inadvertently disclosed to two testifying expert witnesses and to opposing counsel.  Pursuant

to Rule 26 of the *Federal Rules of Civil Procedure*, the Court finds that opposing counsel is

entitled to retain the document at issue and use it during cross-examination of experts who have

been provided the document.  Accordingly, for the following reasons, the PSC's motion is now

DENIED.

**I.      BACKGROUND**

This multidistrict products liability litigation involves the prescription drug Vioxx,

known generically as Rofecoxib and manufactured by Merck & Co., Inc.  The Court will assume

familiarity with the underlying facts and progress of the litigation, which have been discussed in

previous orders.[1]

The instant dispute concerns a document entitled "Agenda for August 19, 2005 Vioxx

MDL Science Committee Conference Call" (hereinafter, "Agenda").  This twenty-nine page

document has a "Confidential Attorney Work Product" watermark legend on each page and was

prepared and circulated by the PSC in anticipation of an internal conference call.  The document

is a detailed litigation strategy outline that discusses the various scientific issues in this case.

The Agenda notes which attorneys are working on each topic, and discusses their respective

"objectives" with potential witnesses.  It is undisputed for purposes of the instant motion that

this document is PSC attorney work product and that it was inadvertently produced to two expert

witnesses and opposing counsel in the following manner.

On December 9, 2005, a Texas law firm cooperating with the PSC provided Scientific

Evidence, an expert witness consulting and brokerage firm hired by the plaintiffs, with a volume

of materials, including the document at issue.  Scientific Evidence, in turn, organized and

forwarded the materials to two expert witnesses, Lemuel A. Moye, M.D., Ph.D. and Laura M.

Plunkett, Ph.D., DABT, to assist them in preparing their expert reports and trial testimony.  The

Agenda was included in the materials sent to the experts.

The experts completed their expert reports in late May 2006.  Pursuant to Rule

26(a)(2)(B) of the *Federal Rules of Civil Procedure*, Merck requested and was provided copies

of the expert reports, and copies of the materials reviewed by each expert in formulating their

---

[1]  *See, e.g., In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006) (denying
certification of a nationwide personal injury class action); *In re Vioxx Prods. Liab. Litig.*, 401 F.
Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).

reports, prior to their respective depositions in June 2006.  Included in the materials sent to

Merck were copies of the Agenda.  Scientific Evidence also prepared a list of the materials

considered by the experts in formulating their reports; the Agenda is the first document on each

expert's list.

Dr. Plunkett was questioned about the Agenda by Merck's counsel during her deposition

on June 1, 2006, but the witness was not shown a copy of the document and plaintiffs' counsel

did not discover the inadvertent production at that time.  Thus, the matter was not immediately

presented to the Court.[2]

The matter first came to the Court's attention on March 8, 2007 during the trial

preservation deposition of Dr. John Farquhar, an expert witness who had not previously been

provided a copy of the Agenda.  During the deposition, which was being held in California,

Merck's counsel handed the witness a copy of the Agenda and sought to cross-examine him on

its contents.  Plaintiffs' counsel objected and halted the deposition; the parties then called the

Court.

During the telephone conference, the Court heard argument from the parties as to (1)

whether the Agenda could be used during Dr. Farquhar's deposition and (2) whether Merck was

required to return and/or destroy all copies of the Agenda given its inadvertent production.  With

respect to Dr. Farquhar, the Court directed Merck's counsel to first ask the witness whether he

---

[2]  Merck contends that the PSC was on notice of the inadvertent disclosure as of the date of Dr. Plunkett's deposition, and that the PSC has therefore constructively waived its present position by not raising the issue at that time.  On the other hand, the PSC contends that Merck improperly withheld the Agenda for strategic purposes for several months following Dr. Plunkett's deposition and then "surprise[d] some unsuspecting MDL expert with the document," namely, Dr. Farquhar.  The Court will not address these paltry arguments.

had seen, or was familiar with, the Agenda.  If not, the Court ruled that the document could not

be used at the deposition.  *See* Minute Entry dated Mar. 8, 2007 (Rec. Doc. 10410).  The Court

deferred ruling on whether an inadvertent disclosure of attorney work product to a testifying

expert who looks at it and/or considers it in formulating his or her opinion results in a waiver of

the work-product privilege, and directed the parties to brief the issue.  *Id.*

## II.    PRESENT MOTION

Pursuant to the Court's directive, the PSC filed the instant motion to compel the return of

its attorney work product.  The issue has been fully briefed and the Court heard oral argument

following the April 12, 2007 monthly pretrial conference.

The PSC contends that the inadvertent disclosure of the Agenda to Scientific Evidence,

and by Scientific Evidence to Dr. Moye, Dr. Plunkett, and Merck's counsel, does not waive the

work-product privilege with respect to this document.  The PSC argues that the balancing test set

forth in *Alldread v. City of Grenada*, 988 F.2d 1425 (5th Cir. 1993), which is generally used to

determine the effect of inadvertent disclosures of privileged materials, compels the return and/or

destruction of all copies of the Agenda held by Merck.  In support of its motion, the PSC has

submitted affidavits from Dr. Moye and Dr. Plunkett in which the experts swear they have no

specific recollection of reviewing the Agenda in forming their opinions in this case, although the

document was listed as having been received and reviewed by both experts.

Merck does not dispute that the disclosure of the Agenda was inadvertent.  Rather, Merck

argues that it is entitled to retain the document pursuant to Rule 26, regardless of whether the

experts remember reviewing it, because the Agenda was provided to the experts, it discusses the

subject matter of their testimony, and it was represented by the PSC and/or its representative as

having been considered by the experts in formulating their opinions.  Merck contends that an

inadvertence analysis is irrelevant and unnecessary under these circumstances.

## III.     LAW & ANALYSIS

Rule 26(a)(2) of the *Federal Rules of Civil Procedure* governs the disclosure of expert

testimony.  In addition to disclosing the identity of expert witnesses who may testify, parties

must also transmit "a written report prepared and signed by the witness."  Fed. R. Civ. P.

26(a)(2)(B).  The expert report shall contain, *inter alia*, "a complete statement of all opinions to

be expressed and the basis and reasons therefor [and] the data or other information considered by

the witness in forming the opinions."  *Id.*  These provisions were added to Rule 26 in 1993 to

"impose[] on parties a duty to disclose without awaiting formal discovery requests, certain basic

information that is needed in most cases to prepare for trial or make an informed decision about

settlement."  Fed. R. Civ. P. 26 advisory committee's note.  The advisory committee specifically

addressed the disclosure requirements of Rule 26(a)(2)(B):

> The report is to disclose the data and other information *considered* by the
> expert and any exhibits or charts that summarize or support the expert's opinions.
> Given this obligation  of disclosure, litigants should no longer be able to argue that
> materials furnished to their experts to be used in forming their opinions–*whether or
> not ultimately relied upon by the expert*–are privileged or otherwise protected from
> disclosure when such persons are testifying or being deposed.

*Id.* (emphasis added).  Indeed, "'considered,' which simply means 'to take into account,' clearly

invokes a broader spectrum of thought than the phrase 'relied upon.'"  *Karn v. Ingersoll-Rand

Co.*, 168 F.R.D. 633, 635 (N.D. Ind. 1996) (discussing the history of Rule 26 and collecting

authorities).  The *Karn* court held that the 1993 amendments to Rule 26 "lead to the fundamental

conclusion that work product protection does not apply to documents provided by counsel to

testifying experts related to the subject matter of the litigation."  *Id.* at 636-41 (explaining the

benefits of this "bright-line" rule); *see also In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370,

1375 (Fed. Cir. 2001) ("The revised rule proceeds on the assumption that fundamental fairness

requires disclosure of all information supplied to a testifying expert in connection with his

testimony."); *B.C.F. Oil Refining, Inc. v. Consol. Edison Co. of New York, Inc.*, 171 F.R.D. 57,

66-67 (S.D.N.Y. 1997) ("[T]he drafters of the rule understood the policies behind expert

disclosure and the work product doctrine and have decided that disclosure of material generated

or consulted by the expert is more important."); 8 Charles A. Wright, Arthur R. Miller & Richard

L. Marcus, *Federal Practice & Procedure* § 2016.2 (1994) ("At least with respect to experts who

testify at trial, the disclosure requirements of Rule 26(a)(2), adopted in 1993, were intended to

pretermit further discussion and mandate disclosure despite privilege.").

The PSC asks the Court to carve an exception into this "bright-line" rule for instances

where core attorney work product is inadvertently disclosed to testifying experts.  In support of

its argument, the PSC principally relies upon *Simon Property Group L.P. v. mySimon, Inc.*, 194

F.R.D. 644 (S.D. Ind. 2000).  In *Simon*, defense counsel inadvertently submitted a number of

documents to a damages expert, some of which consisted of attorney work product.  *Simon*, 194

F.R.D. at 645-46.  The court noted that "intentional disclosure of opinion work-product to a

testifying expert witness effectively waives the work-product privilege," but held that an

inadvertent disclosure of materials that "had nothing to do with [the witness's] testimony," and

which was made to only the expert (and not to opposing counsel), did not waive the privilege.

*Id.* at 650.[3]

---

[3]  The PSC contends that other courts have held that core work product is not
discoverable, even through expert witnesses.  However, the Court is not persuaded that these
decisions, most of which protect oral communications between expert and counsel, compel the

The *Simon* court engaged in a balancing analysis similar to that adopted by the United

States Court of Appeals for the Fifth Circuit in *Alldread v. City of Grenada*, 988 F.2d 1425 (5th

Cir. 1993).  In *Alldread*, the Fifth Circuit directed courts to consider the following factors in

determining whether an inadvertent disclosure waives privilege:  (1) the reasonableness of

precautions taken to prevent disclosure, (2) the amount of time taken to remedy the error, (3) the

scope of discovery, (4) the extent of the disclosure, and (5) the overriding issue of fairness.

*Alldread*, 988 F.2d at 1432.  The PSC contends that the Court should engage in such an analysis

in this case.  However, *Alldread* did not involve disclosure to a testifying expert witness and thus

does not control the instant dispute.

Furthermore, even if *Alldread* were applicable, the Court finds that the inadvertent

disclosure of the Agenda in this case waives the work-product privilege given the contents of the

document and the fact that it was provided to testifying experts and opposing counsel.  *See*

*Simon*, 194 F.R.D. at 649-50 ("This is not a case where the court is being asked to 'unring a bell'

that has already been rung, by asking lawyers for the opposing party to forget, or pretend to

forget, a critical document . . . .  If *in camera* inspection had shown that the documents were

relevant to [the expert's] testimony [and if the documents had been provided to opposing

counsel], the court would have found a waiver of the opinion work-product privilege.").  First,

the Court notes that the extent of this disclosure is complete, as opposing counsel has been in

---

relief sought by the PSC in this case.  *See, e.g., Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D.
289 (W.D. Mich. 1995) (expert witness cannot be compelled to testify about conversations he
had with plaintiff's counsel regarding his expert report).  Lastly, this Court respectfully declines
to follow those cases that hold that "the required disclosure under 26(a)(2)(B) & (b)(4)(A) does
not include core attorney work product considered by the expert."  *See, e.g., The Nexxus Prods.
Co. v. CVS New York, Inc.*, 188 F.R.D. 7, 10 (D. Mass. 1999).

possession of the Agenda for almost a year.  Second, when privileged material is provided to an

expert that concerns the subject matter of that expert's testimony, the fifth *Alldread* factor,

namely the overriding issue of fairness, overwhelms and outweighs the remaining factors.  *See,*

*e.g., Karn*, 168 F.R.D. at 639 ("[U]seful cross examination and possible impeachment can only

be accomplished by gaining access to all of the information that shaped *or potentially influenced*

the expert witness's opinion.") (emphasis added).

Accordingly, the Court finds that Rule 26(a)(2)(B) mandates disclosure of the Agenda

because the document was provided to Dr. Moye and Dr. Plunkett for their consideration in

forming their opinions in this case, and was subsequently disclosed to opposing counsel.  As the

advisory committee noted, whether or not the experts ultimately relied on this document is

irrelevant.  Indeed, inquiries into whether or not an expert considered any given document that

was provided to her are necessarily fraught with difficulties.  *See Simon*, 194 F.R.D. at 649-50

(noting that the court did not rely solely on the expert's statement that she did not "consider" the

documents at issue, in part because "such an assertion by an expert witness could become too

easy a dodge").  Thus, the Court finds that Merck is under no obligation to return or destroy

copies of the Agenda.  However, this does not mean that Merck may use the document to cross-

examine any given witness.  As the Court ruled with respect to Dr. Farquhar, the Agenda cannot

be used to cross-examine witnesses to whom the document was not disclosed and who are not

otherwise familiar with its contents.[4]

---

[4] Although this Court's pretrial orders address inadvertent production of privileged documents in general, *see* Pretrial Order No. 13 (¶ 19) and Pretrial Order No. 17 (¶ II.D), by their terms they do not contemplate an inadvertent disclosure of privileged material to a testifying expert.  Indeed, as explained in this Order and Reasons, the work product protection does not "otherwise apply to documents" disclosed to testifying experts.

## IV.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that the PSC's Motion to Compel the Return of Attorney Work Product (Rec. Doc. 10601) is DENIED.

To the extent that the transcript of Dr. Farquhar's deposition remains unavailable, IT IS FURTHER ORDERED that all Volumes of the transcript, except for Volume 2, be UNSEALED.[5]

New Orleans, Louisiana, this 29th day of May, 2007.

_____

UNITED STATES DISTRICT JUDGE

---

[5]  Volume 2 consists of an offer of proof on an unrelated issue, and shall remain under seal.