UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | : | MDL NO. 1657 |
| IN RE: VIOXX | : | |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
| | : | |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

THIS DOCUMENT RELATES TO
    *Barnett v. Merck & Co., Inc.*, 06-485

**ORDER & REASONS**

Following a $51 million jury verdict for the Plaintiff in this bellwether case, $50 million of which was awarded as compensatory damages, the Court ordered a new trial on the issue of damages.  *See In re Vioxx Prods. Liab. Litig.*, 448 F. Supp. 2d 737 (E.D. La. Aug. 30, 2006).  Before the Court are Merck's Renewed Motion for Judgment as a Matter of Law (Rec. Doc. 7054) and alternative Motion for a New Trial on All Issues (Rec. Doc. 6739).  In opposing these motions, the Plaintiff also asks the Court to reconsider its decision to order a new trial and argues that a remission of the jury's verdict is appropriate in this case.  The Plaintiffs' Steering Committee has filed an amicus curiae brief supporting the Plaintiff's request for a remittitur.

The Court heard oral argument on this matter and took Merck's motions under submission.  For the following reasons, Merck's renewed motion for judgment as a matter of law

is now DENIED, Merck's motion for a new trial on all issues is DENIED IN PART, and the Court's Order and Reasons of August 30, 2006 is MODIFIED in several respects, including to provide that there shall only be a new trial if the Plaintiff refuses to accept a remittitur of $1,600,000.00, consisting of $600,000.00 in compensatory damages and $1,000,000.00 in punitive damages. The Court will defer reconsidering the scope of the new trial at this time.

**I.    BACKGROUND**

This is one of thousands of products liability cases currently pending in this multidistrict litigation involving the prescription drug Vioxx, which was manufactured by Merck & Co., Inc. ("Merck").[1] The Plaintiff in this case, Mr. Gerald Barnett, is a former FBI agent and a citizen of South Carolina. He was first prescribed Vioxx in 1999 to relieve chronic neck and back pain. Mr. Barnett suffered a heart attack in September 2002 at the age of fifty-eight, and has endured subsequent complications, all allegedly as a result of his use of Vioxx.

On January 31, 2006, the Plaintiff filed suit against Merck in this Court pursuant to Pretrial Order No. 11.[2] With the consent of the parties, Mr. Barnett's case was selected to be the second bellwether trial in this multidistrict litigation. Accordingly, on July 31, 2006, a jury trial in this matter commenced in New Orleans. On August 17, 2006, the jury returned a verdict in favor of the Plaintiff, finding by a preponderance of the evidence that Merck negligently failed to

---

[1] The Court will assume familiarity with the underlying facts and progress of the litigation, which have been discussed in previous orders. *See, e.g., In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006) (denying certification of a nationwide personal injury class action); *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).

[2] For a discussion of Pretrial Order No. 11 and the use of direct filing in this multidistrict litigation, see *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897 (E.D. La. 2007).

warn Mr. Barnett's treating physicians of the risks associated with taking Vioxx and that the drug was a contributing cause of the Plaintiff's injuries.  The jury also found by clear and convincing evidence that Merck concealed information about Vioxx's risks from Mr. Barnett's physicians.  However, the jury rejected the Plaintiff's strict liability claim.  Based on these findings of liability, the jury awarded the Plaintiff $50 million in compensatory damages.[3]  Following the announcement of the verdict, and outside of the jury's presence, Merck orally moved for judgment notwithstanding the verdict, or alternatively, for a new trial.  The Court took this motion under submission and noted that Merck could supplement its arguments in writing.  After brief presentations on the issue of punitive damages, the jury then found by clear and convincing evidence that Merck's conduct was willful, wanton, and/or in reckless disregard of the Plaintiff's rights and awarded him an additional $1 million.  Following the punitive damages phase, Merck made several additional oral motions which were also taken under submission.

Troubled by the excessiveness of the jury's compensatory damage award, the Court withheld entry of judgment for several weeks.  On August 30, 2006, the Court then entered the $51 million judgment and, on its own initiative, immediately ordered a new trial on the issue of damages pursuant to Rule 59(d) and denied Merck's post-trial oral motions as moot.  *See In re Vioxx Prods. Liab. Litig.*, 448 F. Supp. 2d 737 (E.D. La. 2006).  The instant motions followed.

## II.   PRESENT MOTIONS

In its renewed motion for judgment as a matter of law, Merck again argues that the Plaintiff did not introduce sufficient evidence to prove his case.  In its alternative motion for a

---

[3] It should be noted that neither the parties, in their closing arguments, nor the Court, in its instructions, explicitly informed the jury that a second phase on punitive damages would be held should the jury return an initial verdict in the Plaintiff's favor.

new trial on all issues, Merck argues that the Seventh Amendment to the United States Constitution prohibits a re-trial limited to the issue of damages, under the rule announced in *Gasoline Products Co., Inc. v. Champlin Refining Co.*, 283 U.S. 494, 500-01 (1931) ("Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."). Merck also argues that a new trial on all issues is required because the jury's findings on strict liability, negligence, and deceit by concealment are fatally inconsistent. Lastly, Merck contends that the entire verdict is infected with passion and prejudice.

The Plaintiff opposes both motions and argues that the jury's findings of liability and causation are supported by the weight of the evidence, and are not inconsistent. But the Plaintiff also asks the Court to reconsider or modify its decision to order a new trial on the issue of damages, and to instead offer him an opportunity to accept a remitted award. The Plaintiffs' Steering Committee joins in this request, encouraging the Court to preserve the integrity of the jury's findings, eliminate the prospective burden on the litigants from retrying some or all of this bellwether case, and accelerate a final judgment that will assuredly be appealed.

### III.  LAW & ANALYSIS

#### A.  Merck's Renewed Motion for Judgment as a Matter of Law

As the Court has noted on many occasions, the plaintiffs' claims in this litigation "revolve around the safety risks of Vioxx, what Merck knew about any such risks, when Merck knew this information, and what Merck should have done about it." *In re Vioxx Prods. Liab. Litig.*, 448 F. Supp. 2d 737, 739-40 (E.D. La. 2006). With respect to this issue, the Court stands

4

by the conclusion it reached in its August 30, 2006 Order and Reasons:

> Considering all of the evidence in the light most favorable to the Plaintiff, the Court concludes that the jury's findings for the Plaintiff on his negligent failure-to-warn and deceit-by-concealment claims were reasonable.

*Id.* at 740. Accordingly, Merck's renewed motion for judgment as a matter of law will be denied.

### B. Merck's Motion for a New Trial on All Issues

With the benefit of comprehensive briefing by the parties, the Court now clarifies its Order and Reasons of August 30, 2006 by (1) replacing the third paragraph of the "Law & Analysis" section of that decision, 448 F. Supp. 2d at 740, with the following discussion on the consistency of the verdict issue; (2) explaining the unintended implication that the jury's compensatory damage award was the result of passion or prejudice; and (3) conditioning the order mandating a new trial upon the Plaintiff's rejection of a remitted award of $1,600,000.00, consisting of $600,000.00 in compensatory damages and $1,000,000.00 in punitive damages.

#### 1. *Liability Verdict Not Inconsistent*

Federal jurisdiction in this case is founded upon diversity of citizenship and the parties stipulated that South Carolina law would apply. Under the law of South Carolina, the jury's findings of liability on the Plaintiff's negligence and deceit claims are not fatally inconsistent with its finding of no liability on the Plaintiff's strict liability claim. *See Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 258 (4th Cir. 1998) ("In this diversity action, we follow the South Carolina appellate courts' consistent holdings that the doctrines of strict liability and negligence are distinct theories of recovery in a products liability case, and that the denial of liability under one of these doctrines does not automatically preclude the imposition of

5

liability under the other."); *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 325-26 (S.C. Ct. App. 1995) ("Although substantial similarities in analysis exist between strict liability for the sale of defective products and negligence principles of liability, especially in design and inadequate warning cases, differences do exist.  Strict liability and negligence are not mutually exclusive theories of recovery; that is, an injury may give rise to claims that can be established either under principles of strict liability or negligence, and failure to prove one theory does not preclude proving the other.") (citations omitted).

### 2. *Compensatory Damages Award Excessive, Not Passionate*

Although never explicitly stated, the Court's Order and Reasons of August 30, 2006 could be read to imply that the jury's compensatory damage award was the result of passion or prejudice.  This was an unintended consequence, as the Court has not made such a finding.  Instead, without discussion from the parties, the Court merely felt at that time that a new trial on damages was an appropriate remedy for the excessive compensatory damages award.  Accordingly, the Court takes this opportunity to find specifically that the jury's award was not the result of passion nor prejudice, although it was excessive.

### 3. *Remission of the Award*

To remedy the excessiveness of the jury's compensatory damages award, the Court now concludes that a new trial shall only be held if the Plaintiff rejects a remittitur.

The Court has previously noted that "the Plaintiff is retired, and therefore he cannot recover for lost wages or lost earning capacity."  448 F. Supp. 2d at 740.  Although the Plaintiff

did introduce evidence of some out-of-pocket medical expenses at trial,[4] his losses in this case are primarily noneconomic. However, considering the entire record, the Court finds that the evidence does not justify a $50 million award for Mr. Barnett's medical expenses and noneconomic damages.

As the United States Court of Appeals for the Fifth Circuit has explained, determining the maximum amount the jury properly could have awarded for noneconomic damages is not an easy task:

> In a very real sense, there is no way to place a monetary value on a person's pain and suffering, especially where the agony is spread over an indefinite period of time. Most of us would not trade two or three million dollars for [Mr. Barnett's] situation. That cannot be the measure, however, because few indeed would take any sum of money in exchange for severe terminal illness or impending death. Yet the very purpose of such damage awards is to affix dollar amounts for losses that cannot be measured in money. We must therefore exercise our best judgment and place some restraint on awards, for as Judge Rubin has said, 'the sky is simply not the limit for jury verdicts.'

*Osburn v. Anchor Labs., Inc.*, 825 F.2d 908, 920 (5th Cir. 1987).

Considering the specific testimony and evidence introduced at trial, the Court believes in its best judgment that $600,000.00 is the most the jury "could properly have awarded" the Plaintiff as compensatory damages. *Zeno v. Great Atl. & Pac. Tea Co.*, 803 F.2d 178, 181 (5th Cir. 1986).[5] And as previously noted, "the Court is not troubled by the $1 million punitive

---

[4] *See* "Exhibit 1," admitted during the Plaintiff's testimony. (Trial Transcript dated Aug. 8, 2006, at 1575-1576.)

[5] While the Plaintiff's injuries and intangible feelings of insecurity undoubtedly affect the normal pursuits and pleasures of his life, he has been able to undergo preventative medical treatment as a result of this experience and has even returned to certain of his beloved recreations, including golf and Carolina shag dancing, apparently with the same gusto and commitment that he previously displayed.

7

damage award in this case." 448 F. Supp. 2d at 741. Therefore, the Court will modify its Order and Reasons of August 30, 2006 to provide that there shall be a new trial unless Mr. Barnett will agree to a remittitur of $1,600,000.00, consisting of $600,000.00 in compensatory damages and $1,000,000.00 in punitive damages.[6]

### III.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that Merck's Renewed Motion for Judgment as a Matter of Law (Rec. Doc. 7054) is DENIED and Merck's Motion for a New Trial on All Issues (Rec. Doc. 6739) is DENIED IN PART. The Court will defer reconsidering the scope of the new trial at this time.

IT IS FURTHER ORDERED that the Judgment of August 30, 2006 (Rec. Doc. 6576) is hereby VACATED and the Court's Order and Reasons of August 30, 2006 (Rec. Doc. 6577) is MODIFIED as provided for in this decision.

IT IS FURTHER ORDERED that there shall be a new trial, unless Mr. Barnett notifies the Court in writing within thirty days of the entry of this Order and Reasons that he will agree to a remittitur of $1,600,000.00, consisting of $600,000.00 in compensatory damages and $1,000,000.00 in punitive damages.

New Orleans, Louisiana, this 5th day of June, 2007.

*Eldon E. Fallon*
UNITED STATES DISTRICT JUDGE

---

[6] In its Order and Reasons of August 30, 2006, the Court determined that the new trial would be limited to the issue of damages. If the Plaintiff refuses to accept the remitted award, the Court will need to address Merck's argument that a new trial limited to the issue of damages runs afoul of the Seventh Amendment. At this time, however, such an analysis is unnecessary.