Theodore V. H. Mayer (5/19/95)
Vilia B. Hayes (4/13/05)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

Attorneys for Defendant Merck & Co., Inc.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - x
                       :

EUGENIA B. LUKASIK, Individually and as
Executrix of the ESTATE OF RICHARD
LUKASIK, SR. A/K/A RICHARD PAUL    :    **No.:** _____
LUKASIK A/K/A SR.,
                       :

                   Plaintiff,  :    **<u>NOTICE OF REMOVAL OF</u>**
                       :    **<u>DEFENDANT MERCK & CO.,</u>**
           -against-        :    **<u>INC.</u>**

MERCK & CO., INC., LIFETIME HEALTH   :
MEDICAL CENTER, LIFETIME
HEALTHCARE, INC.,               :

               Defendants.  :
- - - - - - - - - - - - - - - - - - - - - x

       PLEASE TAKE NOTICE that Merck & Co., Inc. ("Merck") hereby removes this

action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 from the Supreme Court of the State of

New York, County of Erie to the United States District Court for the Western District of New

York and respectfully states to this Court the following:

       1.     This action involves allegations regarding the prescription drug Vioxx®.

On February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order transferring

148 Vioxx products liability cases to the United States District Court for the Eastern District of

Louisiana (Fallon, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407. Merck

intends to seek the transfer of this action to that Multidistrict Litigation, *In re VIOXX Products*

*Liability Litigation,* MDL No. 1657, and will shortly provide to the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

        2.      Plaintiff Eugenia B. Lukasik ("Plaintiff") filed this civil action against Merck in the Supreme Court of the State of New York, County of Erie, bearing Index Number 2005-10062. Plaintiff seeks damages for "permanent injuries and death" that she alleges were caused by her decedent's use of the prescription medicine Vioxx. (Compl. ¶ 14.) Plaintiff's claims are based on theories of negligence, breach of warranty, strict liability, wrongful death and loss of consortium.

        3.      As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because Merck has (1) satisfied the procedural requirements for removal and (2) this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## I.   MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

        4.      Merck has not yet been served with a copy of Plaintiff's Complaint ("Complaint"). Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1441. A true and correct copy of the Summons and Complaint filed in Erie County is attached hereto as Exhibit 1.

        5.      Venue is proper in this Court pursuant to 28 U.S.C. § 89(c) because it is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

6.      All Defendants required for removal have consented to and/or joined in this removal. Defendants who are fraudulently joined need not consent to removal.[1]

7.      No previous application has been made for the relief requested herein.

8.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Court for the Supreme Court of the State of New York, Erie County.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest and is between citizens of different states.

### A.      Complete Diversity Of Citizenship

10.     There is complete diversity between Plaintiff, a citizen of New York, and Merck, a citizen of New Jersey, the only properly joined parties to this action.

11.     Upon information and belief, Plaintiff is a citizen of the State of New York.[2]

---

1. Because Defendants Lifetime Health Medical Center and Lifetime Healthcare, Inc. are fraudulently joined under New York State law, *Negrin v. Alza Corporation*, 98 Civ. 4772 (DAB),1999 U.S. Dist. LEXIS 3006, *8-*9 (S.D.N.Y. March 17, 1999) *citing Bichler v. Willing*, 58 A.D.2d 331, 333-334 (N.Y. App. Div. 1st Dep't 1977), their consent to removal is unnecessary. *See Jernigan v. Ashland Oil Inc.* 989 F.2d 812, 815 (5th Cir. 1993); *Miami Pipe Line Co., Inc. v. Panhandle Eastern Pipe Line Co.*, 384 F.2d 21, 27 (10th Cir. 1967).

2. Plaintiff alleges that she is a resident of New York. (Compl. ¶ 1.) Plaintiff alleges no other alternative state of residence. Accordingly, New York is the state in which Plaintiff is domiciled and, therefore, the state of which she is a citizen. *See* 28 U.S.C. § 1332(a); *see also Linardos v. Fortuna*, 157 F.3d 945, 946 (2d Cir. 1998) ("[f]or purposes of diversity jurisdiction, a party's citizenship depends on his domicile."). Plaintiff also alleges that Letters Testamentary on the Estate of Richard Lukasik were issued by Surrogate's Court of the County of Erie. (Compl. ¶2.) A review of the records of the Surrogate's Court (attached hereto as Exhibit 2) shows that Plaintiff's decedent was a resident of New York State at the time of his death. Therefore, Plaintiff is deemed to be domiciled in the State of New York and, a citizen of New York. *See* 28 U.S.C. § 1332(c)(2).

12.     Merck is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, White House Station, New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

13.     For the reasons set forth below, the other named defendants – Lifetime Health Medical Center and Lifetime Healthcare, Inc. ("Pharmacy Defendants") – are fraudulently joined. Therefore, their citizenship must be ignored for the purpose of determining the propriety of removal. *See, e.g., Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359-1360 (11th Cir. 1996) *abrogated on other grounds*. A defendant is fraudulently joined when "there is no possibility, based on the pleadings, that plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). Courts have interpreted this language to mean that a "reasonable basis" must exist for a plaintiff's claim against a non-diverse party. *In Re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 280 n. 4 (S.D.N.Y. 2001). The Pharmacy Defendants are fraudulently joined because, as demonstrated below, no reasonable basis exists for Plaintiff's claims against them.

14.     Plaintiff alleges that her decedent "used the product Vioxx which resulted in personal injuries," (Compl. ¶ 5), that his "injuries were caused solely by the negligence of the Defendants" (*id.* ¶ 9), that "[a]s a result of the breach of warranties by the Defendants, Plaintiff's decedent, RICHARD LUKASIK sustained permanent injuries and death" (*id.* ¶ 14), and that "[t]he Defendants…are…liable for the injuries sustained by Plaintiff's decedent, RICHARD LUKASIK in strict products liability" (*id.* ¶ 16).

15.     There is no reasonable basis for predicting that Plaintiff could prevail on her asserted claims against the Pharmacy Defendants for the reasons set forth below.

4

16.     New York law is clear that negligence, breach of warranty, and strict liability

claims are untenable as a matter of law against a pharmacy:

> [There is] no basis in law for liability under theories of negligence or
> breach of warranty where there [are] no allegations that the
> pharmacist altered the product in any way...Moreover...retail
> druggists dispensing prescription drugs [are] not liable under strict
> products liability.

*Negrin v. Alza Corporation*, 98 Civ. 4772 (DAB),1999 U.S. Dist. LEXIS 3006, *8-*9 (S.D.N.Y.

March 17, 1999) *citing Bichler v. Willing*, 58 A.D.2d 331, 333-334 (N.Y. App. Div. 1st Dep't

1977).  Since there is no reasonable basis to predict that Plaintiff could prevail against the

Pharmacy Defendants on any of her claims, the Pharmacy Defendants are fraudulently joined.

**B.     The Amount In Controversy Requirement Is Satisfied.**

17.     It is apparent from the face of the Complaint that Plaintiff seeks recovery of an

amount in excess of $75,000, exclusive of costs and interest.  Plaintiff seeks compensatory and

exemplary damages for alleged "permanent injuries and death" that Plaintiff alleges were caused

by her decedent's use of the pharmaceutical Vioxx, which was manufactured by Merck.  (Compl.

¶ 14.)  The foregoing makes it apparent that the amount in controversy for Plaintiff is well in

excess of $75,000.  *See, e.g., James v. Gardner*, 2004 U.S. Dist. LEXIS 23174, *10 (E.D.N.Y.

2004) (where plaintiff fails to represent a definitive amount in controversy, the court may look to

defendant's petition for removal for a showing of reasonable probability that plaintiff's claim for

damages exceeds the jurisdictional amount).

18.     Federal courts confronted by similar complaints in which plaintiffs alleged that

they suffered similar injuries as a result of their use of Vioxx found that they have subject matter

jurisdiction pursuant to 28 U.S.C. § 1332 and, either explicitly or implicitly, concluded that the

amount in controversy exceeded $75,000.  *See, e.g., Porter v. Merck & Co., Inc.*, No.

4:03CV12LN, Memorandum and Order at 2 (S.D. Miss. June 17, 2003);[3] *Zeedyk v. Merck &*

*Co., Inc.*, No. 02C4203, Order at 2 (N.D. Ill. August 30, 2002).[4]

---

3.   True and correct copies of the complaint and unpublished decision in *Porter* is attached hereto as Exhibit 3.

4.   True and correct copies of the complaint and Court's Order in *Zeedyk* is attached hereto as Exhibit 4.

WHEREFORE, Defendant Merck respectfully removes this action from the

Supreme Court of the State of New York, County of Erie, pursuant to 28 U.S.C. § 1441.

DATED:      New York, New York
              February ⟨ , 2006

                            Respectfully submitted,

                            HUGHES HUBBARD & REED LLP

                            By: *Vilia B. Hayes*

                              Theodore V. H. Mayer (5/19/95)
                              Vilia B. Hayes (4/13/05)

                            One Battery Park Plaza
                            New York, New York 10004-1482
                            (212) 837-6000

                            PHILLIPS LYTLE LLP
                            Peter D. Braun
                            Tamar P. Halpern
                            Cindy Kaplan Bennes
                            Suite 3400
                            One HSBC Center
                            Buffalo, New York 14203-2887
                            (716) 847-8400

                            *Attorneys for Defendant Merck & Co., Inc.*

Case 2:95-md-01657-EEF-DEK Document 11456-1 Filed 06/21/07 Page 8 of 64

# Exhibit 1

STATE OF NEW YORK   :
SUPREME COURT   :     COUNTY OF ERIE

---

EUGENIA B. LUKASIK, Individually and
as Executrix of the ESTATE OF RICHARD
LUKASIK, SR. A/K/A RICHARD PAUL
LUKASIK A/K/A SR.
27 Theresa Drive
Cheektowaga, New York 14227

                         Plaintiff

        vs.                         **COMPLAINT**
                                       **Index#:**

MERCK & CO., INC.
One Merck Drive
P.O. Box 100
Whitehouse Station, New Jersey 08889

LIFETIME HEALTH MEDICAL CENTER
120 Gardenville Parkway
West Seneca, New York 14224

LIFETIME HEALTHCARE, INC.
165 Court Street
Rochester, New York 14642

                         Defendants



FILED
ACTIONS & PROCEEDINGS
OCT 2 5 2005
ERIE COUNTY
CLERK'S OFFICE

---

       PLAINTIFF, by her attorneys, BROWN CHIARI, LLP, for her Complaint in the above-entitled action, alleges:

       1. That Plaintiff, EUGENIA B. LUKASIK, at all times herein mentioned has been a resident of the County of Erie, State of New York.

- BROWN CHIARI LLP -

M0057169S2

- Page 2 -

2. That on or about July 7, 2005, Letters Testamentary on the Estate of RICHARD LUKASIK, SR. A/K/A RICHARD PAUL LUKASIK A/K/A SR. were issued to EUGENIA B. LUKASIK by the Surrogate's Court of the County of Erie.

3. Upon information and belief, Defendant, MERCK & CO., INC., is a New Jersey corporation authorized to do business in the State of New York.

4. Defendant, LIFETIME HEALTHCARE, INC., is a domestic corporation incorporated under the laws of the State of New York with offices at least at the locations of Defendant LIFETIME HEALTH MEDICAL CENTER, 120 Gardenville Parkway, West Seneca, New York 14224.

5. That Plaintiff's decedent, RICHARD LUKASIK, SR. used the product Vioxx which resulted in personal injuries.

6. The aforesaid product was designed, developed, manufactured, assembled, supplied, distributed, sold and marketed by the Defendants.

7. The aforesaid product was defective and not reasonably safe.

8. Upon information and belief, the Defendants' negligence, included but was not limited to, improper design, compounding and/or manufacturing of the product; improper and/or inadequate packaging; improper and/or incorrect filling of the prescription; improper and/or inadequate advertising; improper and/or inadequate warnings including failure to warn Plaintiff if the product was contraindicted for any condition she may have had.

9. The aforesaid incident and resulting injuries were caused solely by the negligence of the Defendants in failing to use reasonable care in designing, making, manufacturing, inspecting, testing, distributing, marketing and selling the product.

- BROWN CHIARI LLP -

M0057169653

## AS AND FOR A SECOND CAUSE OF ACTION, PLAINTIFF ALLEGES:

10. Plaintiff repeats and realleges paragraphs 1 through 9 as if fully setforth herein.

11. That the aforesaid incident and resulting injuries to Plaintiff's decedent, RICHARD LUKASIK were caused by the Defendants' breach of express and implied warranties that the aforesaid product was reasonably fit for use by the Plaintiff's decedent.

12. Upon information and belief, the Defendants proffered both oral and written warranties, including but not limited to, package literature and/or warranties on the bottle, that the product was safe and reasonably fit for use by the Plaintiff's decedent, RICHARD LUKASIK.

13. At the time of the occurrence, Plaintiff's decedent, RICHARD LUKASIK was using the product for the purpose and in the manner intended and that, by the use of reasonable care, would not have both discovered the breach and realized its danger.

14. As a result of the breach of warranties by the Defendants, Plaintiff's decedent, RICHARD LUKASIK sustained permanent injuries and death.

## AS AND FOR A THIRD CAUSE OF ACTION, PLAINTIFF ALLEGES:

15. Plaintiff repeats and realleges paragraphs 1 through 14 as if fully setforth herein.

16. The Defendants designed, produced, manufactured, distributed and sold the aforesaid product in a defective condition and are therefore liable for the injuries sustained by Plaintiff's decedent, RICHARD LUKASIK in strict products liability.

- Page 4 -

17. The product at issue at issue was defective, including but not limited to, in being improperly prepared, improperly marketed and not having proper directions and/or warnings.

18. The Defendants knew, or by application of reasonable, developed human skill and foresight, should have had knowledge the product was defective and should have warned the Plaintiff.

19. At all times herein mentioned, Plaintiff's decedent, RICHARD LUKASIK was using the product for its intended and foreseeable purpose.

## AS AND FOR A FOURTH CAUSE OF ACTION, PLAINTIFF ALLEGES:

20. Plaintiff repeats and realleges paragraphs 1 through 19 above as if fully setforth herein.

21. That on or about October 25, 2003, as a result of the negligence claimed herein and of the willful, wanton and reckless conduct of the defendant and/or through its various agents, servants, and/or employees, the Plaintiff's decedent, RICHARD LUKASIK was caused to suffer wrongful death.

22. Plaintiff's decedent was survived by distributees who have sustained pecuniary injuries.

M00571695S

- Page 5 -

## AS AND FOR A FIFTH CAUSE OF ACTION, PLAINTIFF ALLEGES:

23. Plaintiff repeats and realleges paragraphs 1 through 22 above as if fully set forth herein..

24. That Plaintiff EUGENIA B. LUKASIK was the wife of Plaintiff's decedent, RICHARD LUKASIK and was at all relevant times herein and, as such, was entitled to her husband's support, society, companionship, guidance, services, and consortium.

25. That as a result of the wrongdoing of Defendants, Plaintiff's decedent, RICHARD LUKASIK was seriously and permanently injured.

26. That due to the injuries suffered by Plaintiff's decedent, RICHARD LUKASIK, Plaintiff EUGENIA B. LUKASIK suffered a loss of support, society, companionship, guidance, services, and consortium.

.27. That as a result of the foregoing, Plaintiff EUGENIA B. LUKASIK has suffered injuries and damages.

28. One or more exceptions to CPLR Article 16 apply herein.

M005716956

- Page 6 -

WHEREFORE, the Plaintiff does hereby demand judgment against the Defendants, jointly and severally, in a sum that exceeds the jurisdictional limitations of all lower courts that would otherwise have jurisdiction in this action, together with the costs and disbursements of this action.

DATED: Lancaster, New York
       October 25, 2005

Theresa M. Walsh, Esq. for
BROWN CHIARI LLP
**Attorneys for Plaintiff**
5775 Broadway
Lancaster, New York 14086
(716) 681-7190

- BROWN CHIARI LLP -

M005716957

STATE OF NEW YORK     :
SUPREME COURT     :     COUNTY OF ERIE

---

EUGENIA B. LUKASIK, Individually
and as Executrix of the ESTATE OF RICHARD
LUKASIK,SR. A/K/A RICHARD PAUL
LUKASIK A/K/A SR.
27 Theresa Drive
Cheektowaga, New York 14227

Plaintiff

vs.

**SUMMONS**
**Served with Complaint**
**Index No.**

MERCK & CO., INC.
One Merck Drive
P.O. Box 100
Whitehouse Station, New Jersey 08889

LIFETIME HEALTH MEDICAL CENTER
120 Gardenville Parkway
West Seneca, New York 14224

LIFETIME HEALTHCARE, INC.
165 Court Street
Rochester, New York 14642

Defendants

---

To the above named Defendants:

    **YOU ARE HEREBY SUMMONED AND REQUIRED** to serve upon the Plaintiff's
attorneys, at the address stated below, a written Answer to the attached Complaint.

- BROWN CHIARI, LLP -

FILED
10/25/2005/ 15:52:37
ERIE COUNTY CLERK
CH# 4 2005064/530
I 2005010062     RCP1 4 57350

M005716958

If this Summons is served upon you within the State of New York by personal service you must respond within **TWENTY (20)** days after service, not counting the day of service. If this Summons is not personally delivered to you within the State of New York you must respond within **THIRTY (30)** days after service is completed, as provided by law.

If you do not respond to the attached Complaint within the applicable time limitation stated above, a Judgment will be entered against you, by default, for the relief demanded in the Complaint, without further notice to you.

This action is brought in the County of Erie because of:
[ X ]   Plaintiff's residence, or place of business;
[    ]   Defendants' residence;
[    ]   Designation made by Plaintiff.


DATED: Lancaster, New York
       October 25, 2005

Theresa M. Walsh, Esq.
BROWN CHIARI LLP
**Attorneys for Plaintiff**
5775 Broadway
Lancaster, New York 14086-2360
(716) 681-7190


- BROWN CHIARI, LLP -

# Exhibit 2

PETITION FOR PROBATE

Form 1

## Surrogate's Court, Erie County, State of New York

**BARBARA HOWE**, Surrogate

*In the Matter of Proving The Last Will and Testament of*

**Richard Paul Lukasik, Sr . a/k/a**

**Richard Lukasik, Sr.**

_____

_____ *Deceased.*

[X] Letters Testamentary
[ ] Letters Administration c.t.a
[ ] Letters Trusteeship
[ ] RECORD PURPOSES ONLY

FILE NUMBER: 2005-602

FILING FEE:

PHOTOCOPY FEE:

2005 JUN 29 PM 3:41
COUNTY OF ... N.Y.

FILED

## TO THE SURROGATE'S COURT OF THE COUNTY OF ERIE:

1. THE PETITION OF _____ **Eugenia B. Lukasik** _____

citizen(s) of the United States, domiciled at _____ **27 Theresa Drive, Cheektowaga, New York 14227** _____

_____, respectfully shows:

2. The proposed Executor [ ] is [X] is not an attorney. [Note: An Executor-Attorney must comply with EPTL 2307-a.]

3. The decedent _____ **Richard Lukasik, Sr.** _____ died on **October 25, 2003**

At the time of death, the decedent was domiciled at _____ **27 Theresa Drive** _____

in the _____ **Town** _____ of _____ **Cheektowaga** _____ in the County of Erie, State of New York.

4. To the best of the knowledge of the undersigned, the approximate total value of all property constituting the decedent's

gross testamentary estate is not more than $ _____ **10,000** _____ nor less than $ _____ **0** _____.

5. No cause of action exists on behalf of the estate, except as follows [Note: Insert "NONE" or specify] _____

**Wrongful Death/Personal Injury**

6. The said decedent left a LAST WILL AND TESTAMENT dated _____ **October 25, 1993** _____ witnessed by

**Richard S. Binko and Aimee Barillari** and nominates your petitioner(s)

**Eugenia B. Lukasik** _____ as (successor) Executor and nominates your

petitioner(s) (and/or _____ ) as (successor) Trustee(s).

7. The said decedent left _0_ CODICIL(S) to said LAST WILL AND TESTAMENT filed in this Surrogate's Court

dated _____, and witnessed by _____

8. The said decedent left _0_ prior LAST WILL AND TESTAMENT(S) filed in this Surrogate's Court dated

_____, and witnessed by _____

9. No other WILL or CODICIL of the decedent is on file in this Surrogate's Court, and upon information and belief after

a diligent search and inquiry, there exists no other WILL, CODICIL or other testamentary instrument of the decedent later in date

to any of those instruments mentioned above.

| RECORD ROOM ESTATE INDEX SEARCHED | MAIN DESK SAFEKEEPING FILE SEARCHED |
|---|---|
| Date: 02/10/05  By: CDM | Date: 2/10/05  By: |

10. Complete ALL information below by stating the number of intestate distributees of decedent in each class who would take the property of deceased if there were no Will pursuant to EPTL 4-1.1. [Note: **Insert the number of intestate distributees below; if none then insert "No" in that class and prior classes; strike out all subsequent classes that do not apply.** **Insert "No" in line 10(a.) below if decedent was divorced or marriage was annulled at time of death and attach a certified copy of Judgment of Divorce or Annulment Decree, respectively; insert the number "1" if decedent was legally separated at time of death and attach a certified copy of Judgement of Separation or Separation Agreement.**]

11. Decedent at the time of death left surviving him/her:

a. __0__ husband, __1__ wife (if predeceased, name and date of death _____);

b. __2__ child or children; and __0__ descendants of a predeceased child or children and
__0__ adopted child or children; and __0__ descendants of a predeceased adopted child or children;

c. __0__ non-marital child or children, or descendants of predeceased non-marital child or children (EPTL 4-1.2);

d. __0__ issue of decedent who were adopted by decedent's blood relatives or the spouse of a former spouse (DRL 117);

e. __n/a__ father and __n/a__ mother;

f. __0__ brothers and __0__ sisters of either whole or half-blood; __n/a__ descendants of predeceased brothers and sisters (i.e nieces and nephews, etc.) of either whole or half blood;

g. __n/a__ paternal grandparents; __n/a__ maternal grandparents;

h. __n/a__ paternal uncles and aunts; __n/a__ maternal uncles and aunts;

i. __n/a__ paternal first cousins; __n/a__ maternal first cousins;

j. __n/a__ paternal first cousins once removed; __n/a__ maternal first cousins once removed.

12. ALL KNOWN INTESTATE DISTRIBUTEES LISTED ABOVE of the said decedent with names, ages, relationships, and domicile addresses are as follows: [Note: If aged18 and over insert "F" for full age; otherwise insert age. See SCPA 307, 308.]

| Name | Age | Relationship | Address |
|------|-----|--------------|---------|
| Eugenia B. Lukasik | Full | Wife/Petitioner | 27 Theresa Drive, Cheektowaga, New York 14227 |
| Richard Lukasik, Jr. | Full | Son | 27 Theresa Drive, Cheektowaga, New York 14227 |
| Judith Ann Biller | Full | Daughter | 494 Penora Street, Depew, New York 14043 |

continue on separate page if necessary

13. Any interested person(s) named above or otherwise under disability as defined in SCPA 103(40) are as follows: [Note: If persons are unknown or whose whereabouts are unknown, you must cite N.Y.S. Attorney General above; if infant is to be cited see SCPA 307(3).]

| Name | Age | Nature of disability |
|------|-----|---------------------|
| None | | |

14. The names, ages, relationships and domicile addresses of ALL persons and parties designated as BENEFICIARIES, EXECUTORS, TRUSTEES or GUARDIANS:

a. Named in the *LAST WILL AND TESTAMENT* or any *INTER VIVOS* or *LIFETIME TRUSTS* designated in the propounded LAST WILL AND TESTAMENT and any others specified in SCPA 1409. They are as follows:

| Name | Age | Relationship | Address |
|---|---|---|---|
| Eugenia B. Lukasik | Full | Wife/Petitioner | 27 Theresa Drive, Cheektowaga, New York 14227 |
| Richard Lukasik, Jr. | Full | Son | 27 Theresa Drive, Cheektowaga, New York 14227 |
| Judith Ann Biller | Full | Daughter | 494 Penora Street, Depew, New York 14043 |

continue on separate page if necessary

b. Named in any other Will or Codicil of the decedent WHOSE RIGHTS OR INTERESTS ARE ADVERSELY AFFECTED by the *LAST WILL AND TESTAMENT* offered for probate as specified in SCPA 1403. They are as follows:

| Name | Age | Relationship | Address |
|---|---|---|---|
| None | | | |

continue on separate page if necessary

No persons, corporations or associations are interested in this proceeding other than those mentioned above.

Upon information and belief, no other petition for probate of any will of the decedent or for Letters of Administration of the decedent's estate has heretofore been filed in any court.

15. WHEREFORE YOUR PETITIONER(S) PRAY(S) the Last Will and Testament (and Codicil(s)) be admitted to probate and established as the Last Will and Testament (and Codicil) of said decedent valid to pass real and personal property thereof; and

[X]  a. LETTERS TESTAMENTARY without          bond issue to the Executor(s) named in said Will:
_____ ; and

[ ]  b. LETTERS OF TRUSTEESHIP without (with) bond issue to the Trustee(s) named in said Will:
_____ ; and

[ ]  c. LETTERS OF ADMINISTRATION c.t.a without (with) bond issue to:
_____ ; and

[ ]  d. OTHER OR ADDITIONAL RELIEF:
_____ ; and

[ ]  e. CITATION ISSUE herein and process be taken in this proceeding for the purpose stated and as the law may require;

and for such other and further relief as the Court deems just and proper.

Dated  10/21/2004                    *Eugenia Lukasik*
                                     Petitioner/**Eugenia B. Lukasik**

_____
Petitioner

**COMBINED VERIFICATION, OATH & DESIGNATION**

*FOR APPLICANTS DOMICILED WITHIN NEW YORK STATE*

State of New York )
County of **ERIE** ) ss.:
City of **BUFFALO** )

I, the undersigned, the petitioner named in the foregoing petition and domiciled at _____
**27 Theresa Drive, Cheektowaga, New York 14227**
_____ being duly sworn, say:

(1) **VERIFICATION:** I have read the foregoing petition subscribed by me and know the contents thereof, and the same is true of my own knowledge, except as to the matters therein stated to be alleged on information and belief, and to those matters I believe it to be true.

(2) **OATH OF [X] EXECUTOR [ ] TRUSTEE [ ] ADMINISTRATOR c.t.a. as indicated:** I am over eighteen (18) years of age and a citizen of the United States and I will well, faithfully and honestly discharge the duties of Fiduciary of the goods, chattel and credits of said decedent according to law. I am not ineligible to receive letters pursuant to SCPA 707 and will duly account for all moneys and other property that will come into my hands.

(3) **DESIGNATION OF CLERK FOR SERVICE OF PROCESS:** I hereby designate the Clerk of the Surrogate's Court of Erie County, and his/her successor in office, as a person on whom service of any process, issuing from such Court may be made in like manner and with like effect as if it were served personally upon me/us whenever I cannot be found and served within the State of New York after due diligence used.

*Signature*
Print Name: **Eugenia B. Lukasik**

On the **21st** day of **October** in the year **2004** before me, the undersigned, personally appeared **Eugenia B. Lukasik**

_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and by his/her signature on the instrument, the individual executed the instrument.

*Signature and Office of Individual Taking Acknowledgment*
*(affix stamp)*

HEATHER M. KLING
NOTARY PUBLIC, STATE OF NEW YORK
No. 01KL6071318
QUALIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES MARCH 18, 20__

*Surrogate's Court*
Erie County

Estate No.

In the Matter of Proving the Last Will and Testament of

**Richard Paul Lukasik, Sr.**
a/k/a

**Richard Lukasik, Sr.**, Deceased.

PETITION FOR
**PROBATE OF WILL**

Attorney Signature (Certification)
Print Name: Theresa M. Walsh

Brown Chiari, LLP
Attorney Name and/or Firm Name

5775 Broadway, Lancaster, NY 14086
Address

716-681-7190
Telephone Number

Exhibit 3

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF JASPER
COUNTY, MISSISSIPPI

AMOS PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO                    **PLAINTIFFS**

VS.                            **NO. 2002-_12-0236_**

MERCK & COMPANY, INC.
(hereinafter "Merck"); G.D. Searle and Co.
(hereinafter "Searle") a subsidiary of
Pharmacia, Inc. (hereinafter "Pharmacia"), a
foreign corporation; Monsanto Company;
Pfizer, Inc.; John Doe #1, M.D., John Doe #2,
M.D., John Doe #3, M.D., and John Doe #4,
M.D., all Mississippi physicians whose true
names and identities are presently unknown
or unconfirmed but will be substituted by
amendment                      **DEFENDANTS**

**F I L E D**
JASPER COUNTY, MISS.
DEC 3 1 2002
MARK A. ISHEE
CIRCUIT CLERK

<u>COMPLAINT</u>

COME NOW the Plaintiffs, Amos Porter, Flora Sumrall, and Annie Laurie
Varnado, in the above-styled and numbered cause, by and through their attorneys of
record, and file this their Complaint against the Defendants, and in support thereof
would show unto the Court the following, to-wit:

1.     This is a civil action brought on behalf of Plaintiffs who were prescribed
and used the prescription medication VIOXX (Rofecoxib) and/or CELEBREX
(Celecoxib). Plaintiff Sumrall used Vioxx and Celebrex which caused her to suffer renal
problems, severe edema, and other injuries. Plaintiff Porter used Celebrex which
caused him to suffer a stroke and other injuries. Plaintiff Varnado used Vioxx which
caused her to suffer from heart problems, edema and other injuries. This action seeks
damages for personal injuries and damages caused by the drugs named herein and

ingested by Plaintiffs.

2. Plaintiff Amos Porter is an adult resident of The First Judicial District of Jasper County, Mississippi. Plaintiff Flora Sumrall and Annie Laura Varnado are adult residents of Clarke County, Mississippi.

3. Defendant, Merck & Co., Inc., (hereinafter "Merck") is a New Jersey corporation. At all times relevant hereto, Merck was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Vioxx (Rofecoxib). Defendant Merck may be served through its registered agent: CT Corporation System; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

4. Defendant G. D. Searle & Co. (hereinafter "Searle") is a subsidiary of Pharmacia, Inc., and is upon information, knowledge and belief an Illinois Corporation, and is not registered to do business in Mississippi. As such, Defendant Searle can be served via certified mail through its CEO Alan L. Heller at its principle place of business: 5200 Old Orchard Road, Skobie, Illinois, 60077. At all times relevant to this action was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Pharmacia is a Deleware Corporation licensed and registered to do business in Mississippi and can be served through its registered agent: CT Corporation System: 631 Lakeland East Drive; Flowood, Mississippi, 39208.

5. Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia Inc. and is a Delaware Corporation. At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Monsanto is

-2-

licensed and registered to do business in Mississippi, and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

6.      Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Pfizer is licenses and registered to do business in Mississippi and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

7.      Defendants John Doe #1, M.D., John Doe #2, M.D., John Doe #3, M.D., and John Doe #4, M.D., are physicians licensed by the State of Mississippi with residence and/or principal place of business in Mississippi, whose identities are at present unknown or unconfirmed and will be substituted by amendment.

8.      Venue is proper in The First Judicial District of Jasper County, Mississippi as the part of the cause of action and injury occurred in The First Judicial District of Jasper County, Mississippi.

9.      The claims of Plaintiffs accrued in whole or in part in this judicial district and the Plaintiff resides in this judicial circuit. Some of these Defendants are foreign corporations which have been and are currently engaged in business, directly or by authorized agent, in this judicial district. Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10.      Vioxx is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendant Merck did manufacture, design, package, market and distribute this drug. This Defendant encouraged the use of this drug in improper customers, misrepresented the safety and

-3-

effectiveness of this drug and concealed or understated its dangerous side effects. This Defendant aggressively marketed this drug directly to the consuming mediums, including, but not limited to, print and television advertisements. This Defendant did this to increase sales and profits.

11.    Celebrex is a pharmaceutical treatment for musculaskeletal joint pain associated with osteoarthritis among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug. Defendants Seale, Pharmacia, Monsanto and Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

12.    At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their products as herein set forth, yet continued to design, manufacture, market, distribute and sell their products so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by these products. The drug company Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

<u>COUNT I</u>

13.    Plaintiffs allege all prior paragraphs of this complaint as if fully set out herein.

14.    The pharmaceutical Vioxx (Rofecoxib) designed, manufactured, sold and/or supplied by Defendant Merck, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

15.    Further, the pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign, both directly to the consuming public and indirectly to physicians through drug sales representatives.

16.    The pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective due to inadequate testing.

17.    Additionally Defendant Merck failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Vioxx, via post-marketing data. The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Varnados' injuries.

WHEREFORE, Plaintiffs Sumrall and Varnado deny judgment against Defendant Merck in an amount of compensatory and punitive damages as a jury deems reasonable plus costs.

<u>COUNT II</u>

18.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out

-5-

herein.

19. The pharmaceutical Celebrex (Celecoxib) designed, manufactured, sold and/or supplied by Defendants Searle, Pharmacia, Monsanto and/or Pfizer, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

20. Further, the pharmaceutical Celebrex designed, manufactured, sold and/or supplied by one or more of the above-referenced Defendants was defective in its marketing due to inadequate warnings or instructions, both independently and when coupled with the aggressive marketing warnings or instructions, both independently and when coupled with the aggressive marketing campaign the above-referenced Defendants initiated in relation to this product, both directly to the consuming public and indirectly to the physicians through drug sales representatives.

21. The pharmaceutical Celebrex designed, manufactured, distributed, marketed, sold and/or supplied by one or more of the above-referenced Defendants was defective due to inadequate testing.

22. Additionally, Defendants Searle, Pharmacia, Monsanto and Pfizer failed to provide timely and adequate post-marketing warnings or instructions after the Defendants knew or learned of the risk of injury from Celebrex via post-marketing data. The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

-6-

## COUNT III

23.     Plaintiffs reallege all prior paragraphs of this complaint as if fully set out herein.

24.     Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce. Defendant Merck failed to exercise ordinary care in the design, manufacturer, marketing, sale testing and/or distribution of Vioxx into the stream of commerce. Defendant Merck knew or should have known that Vioxx created an unreasonable risk of bodily harm, including the risk of death.

25.     Despite the fact that Defendant Merck knew or should have known that Vioxx caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, this Defendant continued to market, and to this day continues to market, Vioxx to the consuming public when there were and are adequate and safer alternative methods of treatment or opportunities for more meaningful warnings.

26.     Defendant Merck knew or should have known that consumers such as Plaintiffs Sumrall and Varnado would foreseeably suffer injury or death as a result of the Defendant's failure to exercise ordinary care as described herein. Defendant's negligence was a contributing cause of Plaintiffs Sumrall and Varnado's injuries.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IV

27.     Plaintiffs reallege all prior paragraphs of the Complaint as if set out herein.

-7-

28. Defendants Searle, Pharmacia, Monsanto and Pfizer had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of Celebrex (Celecoxib) into the stream of commerce. These Defendants failed to exercise ordinary care in the design, manufacture, sale, testing and/or distribution of Celebrex in the stream of commerce.

29. These Defendants knew or should have known that Celebrex created an unreasonable risk or bodily harm, including the risk of death.

30. Despite the fact that Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that Celebrex caused unreasonably, dangerous side effects which many users would by unable to remedy by any means, these Defendants continued to market, and continue to, market to this day, Celebrex to the consuming public, when there were and are adequate and safer alternative methods of treatment, or opportunities for more meaningful warnings.

31. Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that consumers such as Plaintiffs Sumrall and Porter would foreseeably suffer injury or death as a result of Defendants' failure to exercise ordinary care as described above. Defendants' negligence was a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT V

32. Plaintiffs reallege all prior paragraphs of this complaint as if fully set out

hereto.

33.    Defendant Merck made express representations to the consuming public at large through its aggressive marketing and advertising campaigns relative to its product, Vioxx.

34.    Defendant Merck, through its detail sales representatives, made representations regarding the safety and efficacy of its product, Vioxx.

35.    Vioxx does not conform to the express representations made through Defendant Merck's advertising.

36.    Vioxx does not conform to the express representations made by Defendant Merck's agents/sales representatives.

37.    Defendants Merck conduct in this matter was contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demands judgment against Defendant Merck in such and amount of compensatory and damages as a jury deems reasonable, plus costs.

## COUNT VI

38.    Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

39.    Defendants Searle, Pharmacia, Monsanto and Pfizer made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Celebrex.

40.    Defendants Searle, Pharmacia, Monsanto and Pfizer through their detail sales representatives, made representations of the safety and efficacy of their product,

Celebrex.

41.    Celebrex does not conform to the express representations made through Defendants' advertising.

42.    Celebrex does not conform to the express representations made by Defendants' agents/sales representatives.

43.    These Defendants' conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Porter.

WHEREFORE, plaintiffs Sumrall and Porter demand judgment against Defendants Searle Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT VII

44.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

45.    At the time Defendant Merck marketed, sold, and distributed Vioxx for use by the general consuming public, including Plaintiffs Sumrall and Vamado, this Defendant knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

46.    Plaintiffs Sumrall and Vamado reasonably relied upon the skill and judgment of Defendant Merck as to whether Vioxx was of merchantable quality, and safe and fit for its intended use.

47.    Contrary to such implied warranty, Vioxx was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which they were intended and used

described above.

48.    Defendant Merck conduct in this regard was contributing cause of injuries and damages of Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT VIII

49.    Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

50.    At the time Defendants Searle, Pharmacia, Monsanto and Pfizer marketed, sold and distributed Celebrex for use by the general consuming public, including Plaintiffs Sumrall and Porter, these Defendants knew of the use for which Celebrex was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

51.    Plaintiffs Sumrall and Porter reasonably relied upon the skill and judgment of these Defendants as to whether Celebrex was of merchantable quality and safe and fit for its intended use.

52.    Contrary to such implied warranty, Celebrex was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used as described above.

53.    These Defendants' conduct in this regard was a contributing cause of Plaintiffs Sumrall and Porter's injuries and damages.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Mansanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IX

54.     Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

55.     Defendant Merck negligently, recklessly, intentionally and fraudulently made material misrepresentations that Vioxx was safe and effective. Defendant Merck represented Vioxx as safe so that the general consuming public, including Plaintiffs Sumrall and Varnado in particular, would rely upon said representations when purchasing said products.

56.     Prior to and following the introduction of Vioxx into the market as a prescribable pharmaceutical medication, Defendant Merck set in motion a public relations and advertising/marketing campaign to market its product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising. Defendant Merck's representations made concerning Vioxx as a safe and effective drug were made so that Plaintiffs Sumrall and Varnado, and the general consuming public, would rely on said representations and seek prescriptions for this drug from their treating physicians. In fact, Plaintiffs Sumrall and Varnado did rely on Defendant Merck's representations in this regard.

60.     At the time Defendant Merck made these representations, it was aware that these representations were false and/or made these representations with

-12-

reckless disregard to their truth. As a result of Defendant Merck's fraud and misrepresentation, Plaintiffs Sumrall and Varnado suffered injuries and damages.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT X

61.     Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

62.     Defendants Searle, Pharmacia, Monsanto and Pfizer negligently, recklessly, intentionally and fraudulently made material misrepresentations that Celebrex was safe and effective. These Defendants represented Celebrex as safe so that the general consuming public, including Plaintiff's decedent in particular, would rely upon said representations when purchasing said products.

63.     Prior to and following the introduction of Celebrex into the market as a prescribable pharmaceutical medication, Defendants Searle, Pharmacia, Monsanto and Pfizer set in motion a public relations and advertising/marketing campaign to market their product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising. Defendants' representations made concerning Celebrex as a safe and effective drug were made so that Plaintiffs Sumrall and Porter and the general consuming public would rely on said representations and seek prescriptions for this drug from their treating physicians. In fact, Plaintiffs Sumrall and Porter did rely on Defendants Searle, Pharmacia, Monsanto and Pfizer's representations.

-13-

64.     At the time Defendants Searle, Pharmacia, Monsanto and Pfizer made these representations, it was aware that these representations were false and/or made these representations with a reckless disregard to their truth.  As a result of these Defendants' fraud and misrepresentation, Plaintiffs Sumrall and Porter suffered injuries.

WHEREFORE, this Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Mansanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT XI

65.     Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

66.     Plaintiffs sought the care and treatment of Defendants John Doe #1, M.D., John Doe, M.D. #2, John Doe #3, M.D., and John Doe, #4 M.D. for various ailments and maladies.

67.     In relation to said care and treatment, these Defendants prescribed Vioxx to Plaintiffs Sumrall and Varnado and Celebrex to Plaintiffs Sumrall and Porter.

68.     Defendants John Does, M.D., #1, #2, #3 and #4 knew, or should have known, of the dangerous side effects of these medications, and prescribing said medications in light of such knowledge presents a deviation from the standard of care generally exercised by physicians under like or similar circumstances and rises to the level of medical negligence.

69.     The medical negligence of Defendants John Does, M.D., #1, #2, #3 and #4 was a direct and proximate cause of the Plaintiffs' injuries.

-14-

WHEREFORE, Plaintiffs demand judgment against these Defendants as applicable to each in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## DAMAGES

70.    Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain injuries and damages as a direct and proximate result of Defendants' conduct; and Plaintiffs will respectfully request the Court and jury to determine the amount of loss Plaintiff has suffered and incurred, in the past and in the future. Plaintiffs seek damages for medical expense, past, present, and future; emotional distress, past, present, and future; lost wages, past, present, and future; pain and suffering, past, present and future; permanent physical impairment, and other such injuries as Plaintiffs may show at trial.

71.    At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this produce. These Defendants' conduct exhibits such an entire want of care as to establish that their actions were a results of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiffs' rights. The Plaintiffs are separately and singularly entitled to punitive damages from the corporate Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiffs recover

-15-

damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rate, and that Plaintiffs have such other and further relief, both general and special, to which they may be justly entitled under the facts and attending circumstances.

Respectfully submitted,

AMOS PORTER, FLORA SUMRALL, AND ANNIE LAURIE VARNADO, PLAINTIFFS

BY _____

Attorneys for Plaintiffs

**SHANNON LAW FIRM, PLLC**
James D. Shannon, MSB# 6731
Elise B. Munn, MSB# 9654
100 West Gallatin Street
Hazlehurst, Mississippi 39083
Telephone: 601-894-2202
Facsimile: 601-894-5033

-16-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUN 17 2003
J.T. NOBLIN, CLERK
BY_____ DEPUTY

ANNIE PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO                                    PLAINTIFFS

VS.                                    CIVIL ACTION NO. 4:03CV12LN

MERCK & CO., INC.; G.D. SEARLE
AND CO., A SUBSIDIARY OF PHARMACIA,
INC., A FOREIGN CORPORATION;
MONSANTO COMPANY; PFIZER, INC.;
JOHN DOE #1, M.D.; JOHN DOE #2,
M.D., JOHN DOE #3, M.D., AND JOHN
DOE #4 M.D., ALL MISSISSIPPI
PHYSICIANS WHOSE TRUE NAMES AND
IDENTITIES ARE PRESENTLY UNKNOWN
OR UNCONFIRMED BUT WILL BE
SUBSTITUTED BY AMENDMENT                                     DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of plaintiffs
Amos Porter, Flora Sumrall and Annie Laurie Varnado to remand and
motion for leave to amend the complaint. Defendants G.D. Searle
LLC, Pharmacia Corporation, Monsanto Company (now known as
Pharmacia Corporation) and Pfizer, Inc. have responded in
opposition to the motion and the court, having considered the
memoranda of authorities submitted by the parties, concludes that
both the motion to amend and the motion to remand should be
denied.

Plaintiffs, through counsel, filed this lawsuit in the
Circuit Court of Jasper County on December 31, 2002, seeking to
recover damages for injuries allegedly sustained as a result of
their having taken one or both of the prescription pain relief

drugs Celebrex and Vioxx. Plaintiffs, all Mississippi residents,
named as defendants five non-resident pharmaceutical
manufacturers, and also included four "John Doe" defendants, all
of whom were alleged to be "Mississippi physicians whose true
names and identities are presently unknown or unconfirmed."
On January 10, 2003, the manufacturer defendants, who had not yet
been served with process, removed the case to this court on the
basis of diversity jurisdiction. In their motion to remand, filed
promptly following removal, plaintiffs contend that defendants'
pre-service removal constitutes a defect in the removal procedure
which necessitates remand. Plaintiffs further urge that in the
event the case is not remanded on that basis, they should be
allowed to amend their complaint to identify those "Mississippi
physicians" who were initially identified only as "John Doe"
defendants, as a consequence of which complete diversity will be
lacking, and remand thus required pursuant to 28 U.S.C. § 1447(e).

There is no question but that there is now (and that there
was at the time of removal) jurisdiction based on diversity of
citizenship pursuant to 28 U.S.C. § 1332. The amount in
controversy exceeds the $75,000 threshold for jurisdiction under
the diversity statute (a point which plaintiffs do not dispute);
and although plaintiffs, themselves Mississippi residents, named
John Doe defendants whom they represented were also Mississippi
residents, the law is clear that "the citizenship of defendants
sued under fictitious names shall be disregarded" in determining
whether there is complete diversity for removal purposes.    28

2

Case 3:05-md-01657-EEF-DEK Document 114581-1 Filed 02/06/08 Page 41 of 64

U.S.C. § 1441(a). The remaining defendants named by plaintiffs in the complaint are all citizens of states other than Mississippi, and consequently there is complete diversity of citizenship between the parties.

Moreover, while plaintiffs contend that under the Supreme Court's decision in <u>Murphy Brothers v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 347-48, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999), defendants could not properly remove the case until they were formally served with process and that defendants' pre-service removal was therefore defective, neither this court, nor any court identified by plaintiff or of which this court is aware, has interpreted <u>Murphy Brothers</u> as precluding removal by a defendant <u>prior to</u> formal service of process. The Court in <u>Murphy Brothers</u> held only that a defendant is not obligated to take action in a case until after it has been properly served with process;[1] it did not hold that a defendant must await service to take action. <u>See</u> <u>Mauldin v. Blackhawk Area Credit Union</u>, No. 01 C 50221, 2002 WL 23630, *1 (N.D. Ill. January 2002)(holding that since the defendant was not properly served with process, "the thirty-day removal technically never really began," and therefore, "[the

---

[1]     In <u>Murphy Brothers</u>, the Supreme Court, applying the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process," concluded that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." <u>Id.</u> at 347-48.

3

defendant's] notice of removal was timely"). Defendants' removal
was therefore both substantively and procedurally proper.
The question then becomes whether plaintiffs should now be
permitted to amend their complaint, post-removal, to include as
defendants those physicians who were identified as John Doe
defendants in their original complaint. For the reasons that
follow, the court is of the opinion that in this case, plaintiffs'
request to amend should be denied.

28 U.S.C. § 1447(e) states:

(e) If after removal the plaintiff seeks to join
additional defendants whose joinder would destroy
subject matter jurisdiction, the court may deny joinder,
or permit joinder and remand the action to the State
court.

While the statute, by its terms, refers only to post-removal
efforts by plaintiffs to "join additional defendants," the Fifth
Circuit has recognized that § 1447(e) applies, as well, to the
identification of fictitious defendants after removal. See Doleac
ex rel. Doleac v. Michalson, 264 F.3d 470, 475 (5th Cir. 2001).

In Henscens v. Deere & Company, 833 F.2d 1179 (5th Cir.
1987), the Fifth Circuit addressed the standard applicable to
where a plaintiff seeks to amend to add a non-diverse defendant
following removal of an action on the basis of diversity
jurisdiction. The court held that in such cases, the district
court "should consider the extent to which the purpose of the
amendment is to defeat federal jurisdiction, whether plaintiff has
been dilatory in asking for amendment, whether plaintiff will be
significantly injured if amendment is not allowed, and any other

4

factors bearing on the equities." Id. at 1182. Although this case differs somewhat from the typical § 1447(e) case in that the non-diverse defendants proposed to be identified by the amendment were fictitiously named in the original complaint, that circumstance does not render the Hensgens analysis inappropriate since "the equitable nature of the Hensgens analysis allows the court to consider not only the plaintiff's motive, but other equitable factors," as well. Lacy v. ABC Ins. Co., No. Civ. A. 95-3122, 1995 WL 688786, *2 (E.D. La. Nov. 17, 1995) (such factors might include "the strength of plaintiff's case against the non-diverse defendants and the diverse defendant's ability to anticipate the citizenship of the fictitiously named defendant(s) at the time of removal").

Turning, then, to the Hensgens factors, in the case at bar, it may be somewhat difficult to characterize as truly "dilatory" plaintiffs' request to amend since plaintiffs did indicate in their original complaint that they were desirous of suing the physicians who prescribed Vioxx and/or Celebrex to them. On the other hand, there can be no doubt that plaintiffs themselves knew - they must have known - the identity of their own prescribing physicians at the time the complaint was filed; and yet their attorneys, rather than take the time to ascertain this information from their clients, resorted to the expedient of suing the doctors as fictitious parties. Apparently, this was done in counsels' haste to get the complaint filed before Mississippi's recently enacted medical malpractice tort reform law took effect on January

5

1, 2003.[2]  The simple fact is, plaintiffs' counsel could easily
have known and confirmed the identity of the John Doe defendants
before filing this suit, and yet did not seek to learn the
identity of the John Doe defendants, or any of them, until after
the case was removed.[3]  Given that the identity of these
defendants could have been known before suit was filed, it can
fairly be said that the post-removal attempt to join them as
defendants is "dilatory."

        That brings the court to the question of plaintiffs' purpose,
or motivation, in suing, or attempting to sue, these doctors.  It
is perhaps true in the usual case that the fact that a plaintiff
has included a defendant as a fictitious defendant in his state
court pleading would tend to belie an inference that the
plaintiff's motivation for seeking to amend post-removal to
substitute a real party for the one previously identified only as
a fictitious party is to defeat diversity jurisdiction.  See
Gilberg v. Stepan Co., 24 F. Supp. 2d 355, 356 (E.D. La. 1998)
(fact that the plaintiff was unable to effect the substitution
before the defendant removed "does not somehow convert any
subsequent effort at substitution into a joinder 'for the sole

---

        [2]    As defendants note, this new legislation, which took
effect the day after plaintiffs' complaint was filed, placed
significant restrictions on filing lawsuits against physicians.

        [3]    Perhaps they had intended to do this prior to serving
the diverse defendants, working under the mistaken impression that
the case would not be removable until at least one of the diverse
defendants was served, and were foiled in their efforts when the
diverse defendants filed their notice of removal prior to service
of process.

purpose of destroying diversity'"); Davis v. American Commercial
Barge Line Co., No. Civ. A. 98-537, 1998 WL 341840, at *2 (E.D.
La. June 25, 1998) (substitution of real party for fictitious
party named prior to removal indicates purpose of joinder is not
solely to destroy diversity). Here, however, the court is
persuaded that plaintiffs' motivation, not just for undertaking to
now substitute these doctors as the real party defendants, but for
having undertaken to sue them in the first place, was to avoid
federal jurisdiction.

Plaintiffs' complaint contains eleven counts, ten of which
are directed against the manufacturer defendants, and assert
products liability based claims, and fraudulent and negligent
misrepresentation by those defendants as to the safety and
efficacy of the products at issue. A major theme of these counts
- in fact, the major theme - is that the manufacturer defendants
knew of the dangers posed by these drugs all along, and yet they
withheld this information and intentionally marketed them, "both
directly to the consuming public and indirectly to physicians
through drugs sales representatives," as safe and effective, and
at all times, before, during and after marketing the products,
failed to provide adequate warnings or instructions of the
defective nature of the products. The complaint alleges
throughout that in addition to their marketing to the consuming
public, the manufacturer defendants' sales representatives, who
marketed the products to doctors, made fraudulent
misrepresentations concerning the safety and efficacy of these

7

products. As to the doctors themselves, plaintiffs' complaint contains one count charging medical negligence in which plaintiffs bluntly allege that these physicians prescribed these drugs to plaintiffs, that they "knew, or should have known, of the dangerous side effects of these medications," and that their prescribing these medications "presents a deviation from the standard of care generally exercised by physicians. . . ."

Although the court is aware of the propriety of pleading in the alternative, here, given plaintiffs' explicit, repeated and consistent charge that the manufacturer defendants concealed and misrepresented information about the subject drugs to physicians, plaintiffs' entirely conclusory allegation that the doctors "knew, or should have known, of dangerous side effects of these medications," without any indication of a factual basis for such an allegation, strongly suggests to the court that plaintiffs have sued the physicians only as a means of avoiding federal court. Cf. Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civil Action No. 5:00CVG102LN (S.D. Miss. Sept. 25, 2000) (notwithstanding the plaintiffs' general references to knowledge possessed by "defendants," the complaints, which alleged that the manufacturers undertook to deceive everyone, including the pharmacist defendants, about the safety of their drugs, could not "reasonably and legitimately be construed as alleging any factual basis for the conclusion that any of the pharmacy defendants had any knowledge or reason to know of any of the dangers associated with the product(s) of which plaintiffs contend they were unaware");

8

<u>Brown v. Bristol-Myers Squibb Co.</u>, Civil Action No. 4:02CV301LN
(S.D. Miss. Dec. 2, 2002) (same).

While the proposed amended complaint does not disclose any
legitimate basis for suing these defendants, if it were to turn
out that plaintiffs, in fact, do have some basis for suing them,
there is nothing to prevent them from bringing a separate action
against them in state court, and in the court's opinion,
plaintiffs will not be prejudiced if required to proceed against
the doctors separately.[4]  The court herein holds only that
plaintiffs may not sue them in this action.

For the foregoing reasons, it is ordered that plaintiffs'
motion to remand and to amend is denied.

SO ORDERED this 17th day of June, 2003.

_____
UNITED STATES DISTRICT JUDGE

---

[4]     Of course, if required to proceed separately against the
doctor defendants, plaintiffs would no doubt find their claims
subject to the newly enacted medical malpractice tort reform law;
but their efforts to avoid that law in the manner they chose was
of questionable legitimacy to begin with.  Had they a genuinely
cognizable claim against the doctors, they could and should have
made every reasonable effort to properly name them at the outset,
and could and should have pled a proper claim against them.  They
did neither.

9

# Exhibit 4

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

FILED

02 MAY -8 PM 3: 27

02CH09035

| | |
|---|---|
| SCOTT ZEEDYK on behalf of himself and all other persons similarly situated | ) Civil Action No. |
| Plaintiffs. | ) |
| | ) Amount Claimed: An amount necessary to |
| vs. | ) satisfy the jurisdictional requirements of this |
| | ) court |
| MERCK & CO., INC. | ) |
| Defendant | ) Plaintiffs demand a jury trial |
| | ) |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff Scott Zeedyk, on behalf of himself and all other persons similarly situated, by and through his attorney, John Xydakis, and Complains of Defendant Merck & Co., Inc. ("Merck"), as follows:

### A. PARTIES AND VENUE

1. Plaintiff, by his attorney, brings this Class Action Complaint on his own behalf and on behalf of all others similarly situated to, *inter alia*, obtain compensatory damages, refunds, disgorgement and the establishment of a medical monitoring program for diagnosis and treatment of the potentially life threatening side effects and diseases caused by the taking of the drug marketed under the brand name "Vioxx" by Defendant Merck.

2. Plaintiff is a resident and citizen of Stickney, Cook County, Illinois. Plaintiff was prescribed and consumed Vioxx during the relevant time period for acute pain management. Plaintiff was unaware of the serious risks associated with the taking of Vioxx.

3. Defendant Merck is a New Jersey corporation having its principal place of business in New York, New York.

4. The court has jurisdiction over the Defendant and the matters herein pursuant to 735 ILCS 5/2-209 as Defendant Merck transacts business within the State Of Illinois on a



regular and continuous basis and has made and performed contracts by the sale of Vioxx and other pharmaceutical products within the State of Illinois.

## B. CLASS OF PERSONS

5. Plaintiff brings this litigation as a class action pursuant to 735 ILCS 5/2-801 to certify a Plaintiff class. Plaintiff brings this action on his own behalf and on behalf of the following Class: all persons in the United States, including their successors in interest, who have ingested Vioxx for approved uses and in approved doses and for unapproved uses and unapproved doses.

6. Excluded from the Class are Defendant and its officers and directors.

7. _Numerosity:_ The Class is so numerous that joinder of all members is impracticable. Thousands of persons, throughout the United States, were and/or are prescribed Vioxx.

8. _Typicality:_ The claims of the representative Plaintiff are typical of the claims of each member of the Class. Plaintiff and all other members of the Class have used and/or continue to use Vioxx. Plaintiff has no interests antagonistic to the claims of the Class.

9. _Adequacy of representation:_ Plaintiff will fairly and adequately protect and pursue the interests of the members of the Class. Plaintiff understands the nature of the claims herein and his role in these proceedings, and will vigorously represent the interests of the Class. Plaintiff's counsel has experience in consumer class cases and is qualified to pursue this litigation for the Class.

10. _The class action is maintainable:_ This action is appropriate for class status because:

    (a) the prosecution of separate actions by or against individual members of the Class would create risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant;

    (b) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole; and

(c)    questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of the controversy. This class litigation is an appropriate method for the fair and efficient adjudication of the claims involved. The size of the expected recovery for an individual Class member is not expected to be substantial enough for any one Class member to incur the costs and expenses of this litigation. There are no foreseeable difficulties likely to be encountered in the management of a class action.

11.  *Commonality*: There are issues of fact and law common to the Class, and these questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to, the following:

(a)    whether Defendant has failed to adequately warn of the serious cardiovascular risks and other serious risks associated with the ingestion of Vioxx;

(b)    whether an emergency notice and revised patient insert warning of the hazards associated with Vioxx should be disseminated to Class members;

(c)    whether the Defendant negligently designed, manufactured, warned, marketed and advertised Vioxx;

(d)    whether Defendant adequately and appropriately tested Vioxx;

(e)    whether patients who have taken Vioxx are entitled to monetary relief;

(f)    whether the omissions, misrepresentations or false statements were made intentionally, willfully, wantonly, recklessly, or negligently;

(g)    whether Defendant owed a duty to the Class members, what is the scope of any duty, and was the duty breached;

(h)    whether the Class members have been damaged and, if so, what is the proper measure of damages;

(i)    whether Vioxx causes injury to its users;

(j)    whether Merck is strictly liable for sales and distribution of a dangerously defective product;

(k)     whether Merck negligently designed, manufactured, warned about, distributed and marketed Vioxx; and

(l)     whether the serious side effects, injuries and damages from the use of Vioxx support the need for medical monitoring of persons who have used the drug.

## C. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12.  At all relevant times hereto, Defendant Merck did or caused Vioxx to be manufactured, designed, tested, packaged, supplied, marketed, advertised and sold in the United States.

13.  Vioxx is a non-steroidal anti-inflammatory drug ("NSAID") with a COX-2 inhibitor, which was approved on May 20, 1999, for the treatment of primary dysmenorrhea (menstrual cramps), for acute pain management in adults and for relief of osteoarthritis. Vioxx reportedly reduces pain and inflammation while also significantly reducing incidents of stomach ulcers commonly associated with pain relievers such as aspirin and ibuprofen.

14.  Traditional NSAIDs such as ibuprofen and aspirin block both COX-2 and COX-1 enzymes. Because the COX-1 enzyme protects the lining of the stomach, blocking it can lead to stomach irritation. It is believed that COX-2 inhibitors reduce the incidence of stomach ulcers and bleeding because they do not block COX-1 enzymes.

15.  There are over 86 million users of Vioxx nationwide. Annual sales exceed $2.5 billion for Vioxx in the United States.

16.  The Vioxx Gastrointestinal Outcome Research Study (hereinafter "VIGOR"), sponsored by Merck, was designed to gather information regarding "clinically meaningful upper gastrointestinal ("GI") events and to develop a large controlled database for overall safety assessment."

17.  The VIGOR study included about 8000 patients, 4000 for the Vioxx 50 mg a day treatment group and 4000 for the naproxen 1000 mg a day treatment group, for a median time period of nine months. (Naproxen is an NSAID, sold under such brand names as Naprosyn and Aleve). The study compared the safety of the two patient groups. The results of the study concerning GI events demonstrated that the group on Vioxx has a

significantly lower incidence of GI events. 2.08% compared to Naproxen 4.49%. (GI events include perforations, symptomatic ulcers, and gastrointestinal bleeds).

18. The VIGOR study also found that serious cardiovascular events occurred in 101 patients (2.5%) in the Vioxx group compared to 46 (1.1%) in the Naproxen group. In addition, myocardial infarctions (heart attacks) occurred in 20 patients in the Vioxx group (0.5%) compared to 4 patients in the Naproxen group (0.1%).

19. According to the Department of Health and Human Services ("HHS"), Defendant Merck engaged in a campaign that minimized the serious cardiovascular findings observed in the VIGOR study. The VIGOR study observed patients on Vioxx with a four to five times increase in myocardial infarctions, compared to patients on the NSAID - Naprosyn (naproxen).

20. HHS also cited Defendant Merck for engaging in a promotional campaign that minimized the Vioxx/Coumadin (warfarin) drug interaction, (warfarin is an anticoagulant and the mixing of Vioxx and Coumadin can lead to the potentially serious risk of bleeding), making unsubstantiated superiority claims against other NSAIDs, and promoting Vioxx for unapproved uses and dosing regimens. HHS found Defendant Merck's misrepresentations particularly troubling because of HHS's previous objections to Defendant Merck's misrepresentations.

21. According to HHS, Merck's press release of May 20, 2001 entitled "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx," which stated that Vioxx has a "favorable cardiovascular profile" was "simply incomprehensible, given the rate of GI and serious cardiovascular events compared to Naproxen." HHS concluded that Defendant Merck minimized the potentially serious cardiovascular findings of the VIGOR study and minimized the Vioxx/Coumadin drug interaction.

22. After carefully reviewing the results of the VIGOR study, the U.S. Food and Drug Administration ("FDA") agreed with the Arthritis Advisory Committee recommendations of February 8, 2001 that the label for Vioxx should include the gastrointestinal and cardiovascular information. Hence, on April 11, 2002, the FDA approved new indication and label changes for Vioxx which included this information.

## D. CAUSES OF ACTION

### COUNT I -(Strict Products Liability)

23. Plaintiff alleges and incorporates paragraphs 1 through 22 as if set forth fully above.

24. Defendant Merck is the manufacturer and/or supplier of Vioxx.

25. Defendant Merck manufactured and/or supplied Vioxx, which was defective and hazardous in design and formulation in that, when left in the hands of Merck, the foreseeable risks exceeded the benefits associated with the design or formulation.

26. Alternatively, Defendant Merck manufactured and/or supplied Vioxx, which was defective or hazardous in design or formulation, in that, when it left the hands of Merck, it was unreasonably dangerous, more dangerous that an ordinary consumer would expect and more dangerous than other forms of NSAIDs.

27. The Defendant Merck manufactured and/or supplied Vioxx, which was defective or hazardous due to inadequate warning or instruction because Merck knew or should have known that Vioxx posed a greater risk to patients taking it than to those patients taking other NSAIDs.

28. As the procuring cause and legal result of the defective and hazardous condition of Vioxx as manufactured and/or supplied by Defendant Merck, and as a direct and legal result thereof, Plaintiff and other Class members require reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

29. Defendant Merck failed to adequately test Vioxx before its introduction into interstate commerce. Such tests would have demonstrated that when compared to other NSAIDs, patients taking Vioxx had increased risk of cardiovascular events and adverse drug interactions with Coumadin.

30. Defendant Merck supplied and/or distributed Vioxx, which was defective due to inadequate post-marketing warning or instruction. Defendant Merck knew or should

have known that Vioxx increased the risk of cardiovascular events and adverse drug interactions with Coumadin. when compared to other NSAIDs.

31. As the producing cause and legal result of the defective or hazardous condition of Vioxx. as manufactured and supplied by the Defendant Merck. and as a direct and legal result thereof. Plaintiff and other Class members require reasonable and necessary health care. attention and services and did incur medical, health, incidental and related expenses. and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and other members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT II – (Strict Products Liability - Failure to Warn)

32. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

33. Defendant Merck is the manufacturer and/or supplier of Vioxx.

34. Defendant Merck failed to adequately and fully warn of the higher risk of cardiovascular events. of Vioxx/Coumadin interaction, and of unapproved use, when compared to other NSAIDs.

35. Defendant Merck failed to adequately test Vioxx before its introduction into interstate commerce. Such test would have demonstrated that patients taking Vioxx had increased risk of cardiovascular event and adverse drug interaction with Coumadin. when compared to other NSAIDs.

36. Defendant Merck supplied and/or distributed Vioxx. which was defective due to inadequate post-marketing warning or instruction. Defendant Merck knew or should have known that Vioxx increased the risk of cardiovascular events and adverse drug interaction with Coumadin. when compared to other NSAIDs.

37. As the producing cause and legal result of the defective or hazardous condition of Vioxx, as manufactured and supplied by the Defendant Merck. and as a direct and legal result thereof. Plaintiff and other Class members require reasonable and necessary health care. attention and services. and did incur medical, health, incidental and related expenses.

and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and other members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT III - (Negligence)

38. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

39. Defendant Merck has had a duty to exercise reasonable care in the manufacture, sale, distribution, marketing and warning of Vioxx, including a duty to ensure that Vioxx did not cause users to suffer from unreasonable and dangerous side effects.

40. Defendant Merck breached its duty to Plaintiff and members of the Class, to exercise reasonable care in the manufacture, sale, distribution, marketing and warning of Vioxx in that Defendant Merck knew or should have known that Vioxx created an unreasonably high risk of dangerous side effects, including an unreasonably high risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

41. Defendant Merck was negligent in the manufacture, sale, testing, distribution, marketing and warning of Vioxx in that it:

    (a) failed to issue reasonable and proper warnings regarding all possible adverse effects associated with the use of Vioxx;

    (b) failed to conduct adequate pre-clinical testing, clinical testing and post-marketing oversight and surveillance to determine the effect of Vioxx;

    (c) failed to provide adequate instruction to health care providers for appropriate risks and uses of Vioxx;

    (d) failed to warn Plaintiff and the Class, prior to encouraging the use of Vioxx, that Vioxx increased the risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs;

    (e) failed to use reasonable care in the design and manufacturing of Vioxx to avoid and prevent the increased risk of cardiovascular events and adverse drug

interaction with Coumadin, when compared to other NSAIDs; and

(f) was otherwise careless or negligent.

42. Defendant Merck knew or should have known that Plaintiff and the Class would foreseeably suffer injury as a result of Defendant Merck's failure to exercise ordinary care as set forth above.

43. As the proximate cause of Defendant Merck's negligence, Plaintiff and the Class require reasonable and necessary health care and services, and did or will incur medical, health, incidental expenses, and other forms of economic loss.

## COUNT IV - (Breach of Express Warranty)

44. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

45. Defendant Merck expressly warranted that Vioxx was safe for use by Plaintiff and the Class for the treatment of conditions for which Vioxx was advertised.

46. Vioxx does not conform to Defendant Merck's express representations because Vioxx does not warn of increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

47. As a direct and proximate result of Defendant Merck's breach of express warranty, Plaintiff and the Class have suffered economic loss in an amount to be proven at trial.

## COUNT V - (Breach of Implied Warranty)

48. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

49. At the time Defendant Merck manufactured, sold, distributed, and marketed Vioxx, Defendant Merck knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

50. Plaintiff and the Class and their health care providers reasonably relied upon the skill and judgment of Defendant Merck as to whether Vioxx was of merchantable quality.

safe and fit for its intended use.

51. However, despite this implied warranty, Vioxx was not of merchantable quality, safe or fit for its intended use because Vioxx was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used.

52. As a direct and proximate result of Defendant Merck's breach of implied warranty of merchantability, Plaintiff and the Class require reasonable and necessary health care and services, and did or will incur medical, health, incidental expenses, and other economic loss.

## COUNT VI - (Medical Monitoring)

53. Plaintiff realleges and incorporates paragraphs 1 through 22 as if fully set forth above.

54. As a direct and proximate result of Defendant Merck's conduct as set forth herein, Plaintiff and members of the Class have been exposed to an unreasonably increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

55. The increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs, can only be mitigated or addressed by the creation of a comprehensive medical monitoring program that:

    (a) notifies individuals who used Vioxx of the potential harm from Vioxx;

    (b) funds further studies of the long-term effects of Vioxx use;

    (c) funds research into possible cures for the detrimental effects of Vioxx use;

    (d) gathers and forwards to treating health care providers information related to the diagnosis and treatment of injuries and diseases that may result from using Vioxx; and

    (e) aids in the early diagnosis and treatment of resulting injuries and diseases through ongoing testing and monitoring of Vioxx users.

56. Plaintiff and members of the Class have no adequate remedy at law in that monetary damages alone cannot adequately compensate for the continuing nature of the harm to them, and a monitoring program that notifies them of possible injury and aids in their

diagnosis and treatment can prevent the greater harms that may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur and worsen.

57.   Without a court approved and supervised medical monitoring program, Vioxx users will not receive prompt medical care.

## COUNT VII - (Consumer Fraud)

58.   Plaintiff realleges and incorporates paragraphs 1 through 22 as if fully set forth above.

59.   At all times relevant hereto and to date there was in force a statute in the State of Illinois 815 ILCS 505 *et seq.*, commonly known as the "Consumer Fraud and Deceptive Practices Act ("Act")," the scope of which covers all of the relevant acts, conduct, practices and transactions noted above and herein.

60.   The Plaintiff and members of the Class are consumers, as defined by the Act, of Defendant Merck's product, Vioxx.

61.   The acts, practices and conduct of Defendant Merck involved trade practices addressed to the market generally and/or otherwise implicate consumer protection concerns.

62.   By one or more of the following acts, practices and conduct noted above in Paragraphs 12-22, directly or by implication, Defendant Merck violated said Act and damaged the Plaintiffs and members of the Class by engaging in unfair and/or deceptive acts or practices, and/or engaging in conduct which creates a likelihood of confusion or misunderstanding, in the conduct of their trade or commerce.

63.   That Defendant Merck intended that the Plaintiff and members of the Class rely on its above-mentioned unfair and/or deceptive acts, practices and conduct.

64.   That Defendant Merck's acts, practices and conduct were done knowingly, intentionally, willfully, recklessly, with actual malice, and with a wanton disregard of the rights of the Plaintiff and members of the Class, an especially vulnerable group who are suffering from medical ailments and who are not as educated about pharmaceutical drugs as the Defendant Merck is, and as such the Plaintiff and members of the Class are entitled to

punitive. or exemplary. damages.

65. As a result of said unfair and/or deceptive acts. practices and conduct by Defendant Merck. and the Plaintiff's and members of the Class' justifiable and reasonable reliance thereupon. the Plaintiff and members of the Class have been damaged.

66. Should they prevail. the Plaintiff and members of the Class are entitled to reasonable attorney's fees and costs from Defendant Merck in an amount necessary to compensate the Plaintiff and members of the Class for the costs and disbursements of this action pursuant to 815 ILCS 505 *et seq.*.

## E. PRAYER FOR RELIEF

WHEREFORE. for each and/or any of the above-mentioned Counts. Plaintiff prays for the following relief:

A. an order certifying the Class as set forth herein. with the named Plaintiff as class representative and his counsel as class counsel;

B. a declaration that Defendant Merck's conduct violated the law as alleged in each cause of action;

C. a judgment for Plaintiff and the Class for compensatory damages sustained as a result of Defendant Merck's unlawful conduct. including medical. hospital and incidental expenses according to proof;

D. an order creating a comprehensive court supervised medical monitoring program as described herein which will notify users of Vioxx of the increased risks of cardiovascular event and adverse drug interaction with Coumadin. when compared to other NSAIDs. the costs of which are to be borne by Defendant Merck;

E. an order creating a court-supervised trust fund. funded by Defendant Merck. to pay for a medical monitoring program. including testing. screening and monitoring of potential adverse and harmful effects caused by the consumption of Vioxx;

F. an order requiring Defendant Merck to provide Plaintiff and the Class. and health

care providers with revised drug warnings. in substantially the same form and same delivery method as the original warnings were issued;

G. an order requiring Defendant Merck to refund and make restitution of all monies obtained from the sale of Vioxx to the Plaintiff and the Class;

H. an order awarding Plaintiff and the Class attorneys' fees. costs and expenses against Defendant Merck as allowed by law;

I. an order against Defendant Merck awarding Plaintiff and the Class an amount necessary to compensate the Plaintiff and the Class for the costs and disbursements of this action. including reasonable attorney's fees. pursuant to 815 ILCS 505 *et seq*:

J. pursuant to 815 ILCS 505 *et seq*., an order against Defendant Merck awarding Plaintiff and the Class punitive. or exemplary. money damages found to be suitable and sufficient to deter similar acts by Defendant Merck in the future and to punish Defendant Merck for its previous acts; and

K. such other or further relief as the Court may hold appropriate.

Respectfully submitted.
SCOTT ZEEDYK on behalf of himself
and all other persons similarly situated

BY: _____
John Xydakis. Attorney for Plaintiffs

John Xydakis
Atty No. 36859
Suite 201
125 W. 55th St.
Clarendon Hills. IL 60514
(630) 215-5515

DOROTHY BROWN – CLERK OF THE CIRCUIT COURT OF COOK COUNTY 13

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |
|---|---|
| SCOTT ZEEDYK on behalf of himself and all ) other persons similarly situated | Civil Action No. |
| Plaintiffs. ) | Amount Claimed: An amount necessary to satisfy the jurisdictional requirements of this court |
| vs. ) | |
| MERCK & CO., INC. ) | Plaintiffs demand a jury trial |
| Defendant. ) | |

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(B)

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth below are true and correct, except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid that he verily believes the same to be true.

> 1. The total money damages sought in the above-captioned case exceeds fifty thousand dollars ($50,000).

FURTHER AFFIANT SAYETH NAUGHT.

John Xydakis
Atty No. 36859
Suite 201
125 W. 55th St.
Clarendon Hills, IL 60514
(630) 215-5515

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4203 | **DATE** | 8/30/2002 |
| **CASE TITLE** | Scott Zeedyk, on behalf of himself and all other persons similarly situated vs. Merck & Co., Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion to Remand back to Circuit Court of Cook County for lack of jurisdiction pursuant to 28 U.S.C. § 1447(c)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons set forth on the reverse side of this minute order, Zeedyk's motion to remand for lack of subject matter jurisdiction is DENIED [7-1].

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | SEP 0 3 2002 | | |
| | Notified counsel by telephone. | | date docketed | | |
| X | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | | 10 |
| | Copy to judge/magistrate judge. | | | | |
| | klb (lc) | courtroom deputy's initials | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

(Reserved for use by the Court)

# ORDER

Before this Court is the motion of plaintiff, Scott Zeedyk, to strike or deny defendant's notice of removal. Plaintiff is a citizen of Illinois. Defendant, Merck, is a citizen of New Jersey. This case involves failure to warn claims and allegations that VIOXX, a prescription medicine manufactured by Merck, caused plaintiff, Zeedyk, to sustain life-threatening injuries.

On May 8, 2002, plaintiff filed his original complaint against the defendant in the Circuit Court of Cook County. On May 20, 2002, the defendant was served with service of process. On this date as well, plaintiff was granted leave of court by the Circuit Court to file an amended complaint instanter. On May 29, 2002, this amended complaint was served on the defendant. Pursuant to 28 U.S.C. § 1332, the defendant filed its first notice of removal, on June 12, 2002, based on its receipt of the original complaint, and on its subsequent receipt of the amended complaint, filed an amended notice of removal on June 25, 2002.

Plaintiff moves to remand because it alleges that Merck failed to conform to Local Rule 81.2. This rule requires that the notice of removal be accompanied by a statement of good faith that the jurisdictional limit is met and by either a response by plaintiff to a request to admit or a response to an interrogatory stating that the jurisdictional limit is met or proof of the failure to respond to such a request to admit or interrogatory. Merck did not provide any such responses with its notice of removal. Defendant argues that where, as here, the complaint clearly establishes that the amount in controversy is in excess of the jurisdictional minimum, the defendant need not establish satisfaction of the jurisdictional minimum through the procedure outlined in Local Rule 81.2.

This Court has previously explained that Local Rule 81.2 is "not the exclusive way in which the jurisdiction amount could be established in a case removed from an Illinois court." Murphy v. Avon Products, Inc., No. 02-C-146, 2002 WL 808386 (N.D. Ill. April 30, 2002); Huntsman v. Whitehouse, No. 97-C-3842, 1997 WL 548043 (N.D. Ill. Sept. 2, 1997). Zeedyk seeks, inter alia, compensatory and punitive damages for Merck's alleged knowing, intentional, willful, reckless, and malicious failure to warn. Plaintiffs seeking similar relief against other pharmaceutical manufacturer defendants and making similar allegations of failure to warn received jury awards well in excess of $75,000. See, e.g., Proctor v. Upjohn, 291 Ill.App.3d 265, 286-87 (Ill. App. 1997) (plaintiff received approximately $3 million in compensatory damages and $6 million in punitive damages for failure to warn claim); Batteast v. Wyeth Labs, Inc., 172 Ill. App.3d 114 (Ill. App. 1988) (upholding jury's award of approximately $9 million in compensatory damages and $13 million in punitive damages). Plaintiff attempted to defeat jurisdiction in this court by specifically pleading in the amended complaint that he was waiving his right to damages in excess of $75,000. However, this is impermissible under Illinois pleading rules, which forbid a plaintiff in a personal injury action from pleading in its complaint any amount of damages other than "the minimum necessary to comply with the circuit rules of assignment where the claim is filed." 735 Ill. Comp. Stat. Ann. § 5/2-604 (West 2002); In re Shell Oil Col., 970 F.2d 355, 356 (7th Cir. 1992). Thus, it is reasonably probable that the amount in controversy exceeds $75,000 where similar claims recovered damages well over that amount.

For the foregoing reasons, plaintiff's motion to remand for lack of subject matter jurisdiction is DENIED.