WHEREFORE, Plaintiffs demand judgment against these Defendants as applicable to each in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## DAMAGES

70.     Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain injuries and damages as a direct and proximate result of Defendants' conduct; and Plaintiffs will respectfully request the Court and jury to determine the amount of loss Plaintiff has suffered and incurred, in the past and in the future. Plaintiffs seek damages for medical expense, past, present, and future; emotional distress, past, present, and future; lost wages, past, present, and future; pain and suffering, past, present and future; permanent physical impairment, and other such injuries as Plaintiffs may show at trial.

71.     At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this produce. These Defendants' conduct exhibits such an entire want of care as to establish that their actions were a results of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiffs' rights. The Plaintiffs are separately and singularly entitled to punitive damages from the corporate Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiffs recover

-15-

damages as set forth above from Defendants, including cost of Court, pre-judgment and

post-judgment interest at the legal rate, and that Plaintiffs have such other and further

relief, both general and special, to which they may be justly entitled under the facts and

attending circumstances.

Respectfully submitted,

AMOS PORTER, FLORA SUMRALL, AND
ANNIE LAURIE VARNADO, PLAINTIFFS

BY _____
    Attorneys for Plaintiffs

SHANNON LAW FIRM, PLLC
James D. Shannon, MSB# 6731
Elise B. Munn, MSB# 9654
100 West Gallatin Street
Hazlehurst, Mississippi 39083
Telephone: 601-894-2202
Facsimile: 601-894-5033

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

**JUN 17 2003**

J.T. NOBLIN, CLERK
BY_____ DEPUTY

ANNIE PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO                                    PLAINTIFFS

VS.                                          CIVIL ACTION NO. 4:03CV12LN

MERCK & CO., INC.; G.D. SEARLE
AND CO., A SUBSIDIARY OF PHARMACIA,
INC., A FOREIGN CORPORATION;
MONSANTO COMPANY; PFIZER, INC.;
JOHN DOE #1, M.D.; JOHN DOE #2,
M.D., JOHN DOE #3, M.D., AND JOHN
DOE #4 M.D., ALL MISSISSIPPI
PHYSICIANS WHOSE TRUE NAMES AND
IDENTITIES ARE PRESENTLY UNKNOWN
OR UNCONFIRMED BUT WILL BE
SUBSTITUTED BY AMENDMENT                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs
Amos Porter, Flora Sumrall and Annie Laurie Varnado to remand and
motion for leave to amend the complaint. Defendants G.D. Searle
LLC, Pharmacia Corporation, Monsanto Company (now known as
Pharmacia Corporation) and Pfizer, Inc. have responded in
opposition to the motion and the court, having considered the
memoranda of authorities submitted by the parties, concludes that
both the motion to amend and the motion to remand should be
denied.

Plaintiffs, through counsel, filed this lawsuit in the
Circuit Court of Jasper County on December 31, 2002, seeking to
recover damages for injuries allegedly sustained as a result of
their having taken one or both of the prescription pain relief

drugs Celebrex and Vioxx. Plaintiffs, all Mississippi residents, named as defendants five non-resident pharmaceutical manufacturers, and also included four "John Doe" defendants, all of whom were alleged to be "Mississippi physicians whose true names and identities are presently unknown or unconfirmed." On January 10, 2003, the manufacturer defendants, who had not yet been served with process, removed the case to this court on the basis of diversity jurisdiction. In their motion to remand, filed promptly following removal, plaintiffs contend that defendants' pre-service removal constitutes a defect in the removal procedure which necessitates remand. Plaintiffs further urge that in the event the case is not remanded on that basis, they should be allowed to amend their complaint to identify those "Mississippi physicians" who were initially identified only as "John Doe" defendants, as a consequence of which complete diversity will be lacking, and remand thus required pursuant to 28 U.S.C. § 1447(e).

There is no question but that there is now (and that there was at the time of removal) jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the $75,000 threshold for jurisdiction under the diversity statute (a point which plaintiffs do not dispute); and although plaintiffs, themselves Mississippi residents, named John Doe defendants whom they represented were also Mississippi residents, the law is clear that "the citizenship of defendants sued under fictitious names shall be disregarded" in determining whether there is complete diversity for removal purposes. 28

2

U.S.C. § 1441(a). The remaining defendants named by plaintiffs in the complaint are all citizens of states other than Mississippi, and consequently there is complete diversity of citizenship between the parties.

Moreover, while plaintiffs contend that under the Supreme Court's decision in Murphy Brothers v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999), defendants could not properly remove the case until they were formally served with process and that defendants' pre-service removal was therefore defective, neither this court, nor any court identified by plaintiff or of which this court is aware, has interpreted Murphy Brothers as precluding removal by a defendant prior to formal service of process. The Court in Murphy Brothers held only that a defendant is not obligated to take action in a case until after it has been properly served with process;[1] it did not hold that a defendant must await service to take action. See Mauldin v. Blackhawk Area Credit Union, No. 01 C 50221, 2002 WL 23630, *1 (N.D. Ill. January 2002) (holding that since the defendant was not properly served with process, "the thirty-day removal technically never really began," and therefore, "[the

---

[1]    In Murphy Brothers, the Supreme Court, applying the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process," concluded that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." Id. at 347-48.

3

defendant's] notice of removal was timely"). Defendants' removal
was therefore both substantively and procedurally proper.
The question then becomes whether plaintiffs should now be
permitted to amend their complaint, post-removal, to include as
defendants those physicians who were identified as John Doe
defendants in their original complaint. For the reasons that
follow, the court is of the opinion that in this case, plaintiffs'
request to amend should be denied.

    28 U.S.C. § 1447(e) states:

> (e) If after removal the plaintiff seeks to join
> additional defendants whose joinder would destroy
> subject matter jurisdiction, the court may deny joinder,
> or permit joinder and remand the action to the State
> court.

While the statute, by its terms, refers only to post-removal
efforts by plaintiffs to "join additional defendants," the Fifth
Circuit has recognized that § 1447(e) applies, as well, to the
identification of fictitious defendants after removal. See Doleac
ex rel. Doleac v. Michalson, 264 F.3d 470, 475 (5th Cir. 2001).

    In Hensgens v. Deere & Company, 833 F.2d 1179 (5th Cir.
1987), the Fifth Circuit addressed the standard applicable to
where a plaintiff seeks to amend to add a non-diverse defendant
following removal of an action on the basis of diversity
jurisdiction. The court held that in such cases, the district
court "should consider the extent to which the purpose of the
amendment is to defeat federal jurisdiction, whether plaintiff has
been dilatory in asking for amendment, whether plaintiff will be
significantly injured if amendment is not allowed, and any other

4

factors bearing on the equities." <u>Id.</u> at 1182. Although this case differs somewhat from the typical § 1447(e) case in that the non-diverse defendants proposed to be identified by the amendment were fictitiously named in the original complaint, that circumstance does not render the <u>Hensgens</u> analysis inappropriate since "the equitable nature of the <u>Hensgens</u> analysis allows the court to consider not only the plaintiff's motive, but other equitable factors," as well. <u>Lacy v. ABC Ins. Co.</u>, No. Civ. A. 95-3122, 1995 WL 688786, *2 (E.D. La. Nov. 17, 1995) (such factors might include "the strength of plaintiff's case against the non-diverse defendants and the diverse defendant's ability to anticipate the citizenship of the fictitiously named defendant(s) at the time of removal").

Turning, then, to the <u>Hensgens</u> factors, in the case at bar, it may be somewhat difficult to characterize as truly "dilatory" plaintiffs' request to amend since plaintiffs did indicate in their original complaint that they were desirous of suing the physicians who prescribed Vioxx and/or Celebrex to them. On the other hand, there can be no doubt that plaintiffs themselves knew - they must have known - the identity of their own prescribing physicians at the time the complaint was filed; and yet their attorneys, rather than take the time to ascertain this information from their clients, resorted to the expedient of suing the doctors as fictitious parties. Apparently, this was done in counsels' haste to get the complaint filed before Mississippi's recently enacted medical malpractice tort reform law took effect on January

5

1, 2003.[2]  The simple fact is, plaintiffs' counsel could easily
have known and confirmed the identity of the John Doe defendants
before filing this suit, and yet did not seek to learn the
identity of the John Doe defendants, or any of them, until after
the case was removed.[3]  Given that the identity of these
defendants could have been known before suit was filed, it can
fairly be said that the post-removal attempt to join them as
defendants is "dilatory."

　　That brings the court to the question of plaintiffs' purpose,
or motivation, in suing, or attempting to sue, these doctors.  It
is perhaps true in the usual case that the fact that a plaintiff
has included a defendant as a fictitious defendant in his state
court pleading would tend to belie an inference that the
plaintiff's motivation for seeking to amend post-removal to
substitute a real party for the one previously identified only as
a fictitious party is to defeat diversity jurisdiction.  See
Gilberg v. Stepan Co., 24 F. Supp. 2d 355, 356 (E.D. La. 1998)
(fact that the plaintiff was unable to effect the substitution
before the defendant removed "does not somehow convert any
subsequent effort at substitution into a joinder 'for the sole

---

　　　[2]　　As defendants note, this new legislation, which took
effect the day after plaintiffs' complaint was filed, placed
significant restrictions on filing lawsuits against physicians.

　　　[3]　　Perhaps they had intended to do this prior to serving
the diverse defendants, working under the mistaken impression that
the case would not be removable until at least one of the diverse
defendants was served, and were foiled in their efforts when the
diverse defendants filed their notice of removal prior to service
of process.

6

purpose of destroying diversity'"); Davis v. American Commercial Barge Line Co., No. Civ. A. 98-537, 1998 WL 341840, at *2 (E.D. La. June 25, 1998) (substitution of real party for fictitious party named prior to removal indicates purpose of joinder is not solely to destroy diversity). Here, however, the court is persuaded that plaintiffs' motivation, not just for undertaking to now substitute these doctors as the real party defendants, but for having undertaken to sue them in the first place, was to avoid federal jurisdiction.

Plaintiffs' complaint contains eleven counts, ten of which are directed against the manufacturer defendants, and assert products liability based claims, and fraudulent and negligent misrepresentation by those defendants as to the safety and efficacy of the products at issue. A major theme of these counts – in fact, the major theme – is that the manufacturer defendants knew of the dangers posed by these drugs all along, and yet they withheld this information and intentionally marketed them, "both directly to the consuming public and indirectly to physicians through drugs sales representatives," as safe and effective, and at all times, before, during and after marketing the products, failed to provide adequate warnings or instructions of the defective nature of the products. The complaint alleges throughout that in addition to their marketing to the consuming public, the manufacturer defendants' sales representatives, who marketed the products to doctors, made fraudulent misrepresentations concerning the safety and efficacy of these

7

products.  As to the doctors themselves, plaintiffs' complaint
contains one count charging medical negligence in which plaintiffs
bluntly allege that these physicians prescribed these drugs to
plaintiffs, that they "knew, or should have known, of the
dangerous side effects of these medications," and that their
prescribing these medications "presents a deviation from the
standard of care generally exercised by physicians. . . ."

Although the court is aware of the propriety of pleading in
the alternative, here, given plaintiffs' explicit, repeated and
consistent charge that the manufacturer defendants concealed and
misrepresented information about the subject drugs to physicians,
plaintiffs' entirely conclusory allegation that the doctors "knew,
or should have known, of dangerous side effects of these
medications," without any indication of a factual basis for such
an allegation, strongly suggests to the court that plaintiffs have
sued the physicians only as a means of avoiding federal court.
Cf. Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civil Action No.
5:00CVG102LN (S.D. Miss. Sept. 25, 2000) (notwithstanding the
plaintiffs' general references to knowledge possessed by
"defendants," the complaints, which alleged that the manufacturers
undertook to deceive everyone, including the pharmacist
defendants, about the safety of their drugs, could not "reasonably
and legitimately be construed as alleging any factual basis for
the conclusion that any of the pharmacy defendants had any
knowledge or reason to know of any of the dangers associated with
the product(s) of which plaintiffs contend they were unaware");

8

<u>Brown v. Bristol-Myers Squibb Co.</u>, Civil Action No. 4:02CV301LN
(S.D. Miss. Dec. 2, 2002) (same).

While the proposed amended complaint does not disclose any
legitimate basis for suing these defendants, if it were to turn
out that plaintiffs, in fact, do have some basis for suing them,
there is nothing to prevent them from bringing a separate action
against them in state court, and in the court's opinion,
plaintiffs will not be prejudiced if required to proceed against
the doctors separately.[4] The court herein holds only that
plaintiffs may not sue them in this action.

For the foregoing reasons, it is ordered that plaintiffs'
motion to remand and to amend is denied.

SO ORDERED this 17th day of June, 2003.

_____
UNITED STATES DISTRICT JUDGE

_____

[4] Of course, if required to proceed separately against the
doctor defendants, plaintiffs would no doubt find their claims
subject to the newly enacted medical malpractice tort reform law;
but their efforts to avoid that law in the manner they chose was
of questionable legitimacy to begin with. Had they a genuinely
cognizable claim against the doctors, they could and should have
made every reasonable effort to properly name them at the outset,
and could and should have pled a proper claim against them. They
did neither.

9

# Exhibit 3

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

FILED

02 MAY -8 PH 3: 27

02CH09035

| | |
|---|---|
| SCOTT ZEEDYK on behalf of himself and all other persons similarly situated<br>Plaintiffs.<br><br>vs.<br><br>MERCK & CO., INC.<br>Defendant. | ) Civil Action No.<br>)<br>) Amount Claimed: An amount necessary to<br>) satisfy the jurisdictional requirements of this<br>) court<br>)<br>) Plaintiffs demand a jury trial<br>) |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff Scott Zeedyk, on behalf of himself and all other persons similarly situated, by and through his attorney, John Xydakis, and Complains of Defendant Merck & Co., Inc. ("Merck"), as follows:

### A. PARTIES AND VENUE

1. Plaintiff, by his attorney, brings this Class Action Complaint on his own behalf and on behalf of all others similarly situated to, *inter alia*, obtain compensatory damages, refunds, disgorgement and the establishment of a medical monitoring program for diagnosis and treatment of the potentially life threatening side effects and diseases caused by the taking of the drug marketed under the brand name "Vioxx" by Defendant Merck.

2. Plaintiff is a resident and citizen of Stickney, Cook County, Illinois. Plaintiff was prescribed and consumed Vioxx during the relevant time period for acute pain management. Plaintiff was unaware of the serious risks associated with the taking of Vioxx.

3. Defendant Merck is a New Jersey corporation having its principal place of business in New York, New York.

4. The court has jurisdiction over the Defendant and the matters herein pursuant to 735 ILCS 5/2-209 as Defendant Merck transacts business within the State Of Illinois on a

regular and continuous basis and has made and performed contracts by the sale of Vioxx and other pharmaceutical products within the State of Illinois.

## B. CLASS OF PERSONS

5. Plaintiff brings this litigation as a class action pursuant to 735 ILCS 5/2-801 to certify a Plaintiff class. Plaintiff brings this action on his own behalf and on behalf of the following Class: all persons in the United States, including their successors in interest, who have ingested Vioxx for approved uses and in approved doses and for unapproved uses and unapproved doses.

6. Excluded from the Class are Defendant and its officers and directors.

7. _Numerosity:_ The Class is so numerous that joinder of all members is impracticable. Thousands of persons, throughout the United States, were and/or are prescribed Vioxx.

8. _Typicality:_ The claims of the representative Plaintiff are typical of the claims of each member of the Class. Plaintiff and all other members of the Class have used and/or continue to use Vioxx. Plaintiff has no interests antagonistic to the claims of the Class.

9. _Adequacy of representation:_ Plaintiff will fairly and adequately protect and pursue the interests of the members of the Class. Plaintiff understands the nature of the claims herein and his role in these proceedings, and will vigorously represent the interests of the Class. Plaintiff's counsel has experience in consumer class cases and is qualified to pursue this litigation for the Class.

10. The class action is maintainable: This action is appropriate for class status because:

    (a) the prosecution of separate actions by or against individual members of the Class would create risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant;

    (b) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole; and

(c)      questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of the controversy. This class litigation is an appropriate method for the fair and efficient adjudication of the claims involved. The size of the expected recovery for an individual Class member is not expected to be substantial enough for any one Class member to incur the costs and expenses of this litigation. There are no foreseeable difficulties likely to be encountered in the management of a class action.

11.    Commonality: There are issues of fact and law common to the Class, and these questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to, the following:

(a)      whether Defendant has failed to adequately warn of the serious cardiovascular risks and other serious risks associated with the ingestion of Vioxx;

(b)      whether an emergency notice and revised patient insert warning of the hazards associated with Vioxx should be disseminated to Class members;

(c)      whether the Defendant negligently designed, manufactured, warned, marketed and advertised Vioxx;

(d)      whether Defendant adequately and appropriately tested Vioxx;

(e)      whether patients who have taken Vioxx are entitled to monetary relief;

(f)      whether the omissions, misrepresentations or false statements were made intentionally, willfully, wantonly, recklessly, or negligently;

(g)      whether Defendant owed a duty to the Class members, what is the scope of any duty, and was the duty breached;

(h)      whether the Class members have been damaged and, if so, what is the proper measure of damages;

(i)      whether Vioxx causes injury to its users;

(j)      whether Merck is strictly liable for sales and distribution of a dangerously defective product;

(k)     whether Merck negligently designed, manufactured, warned about, distributed and marketed Vioxx; and

(l)     whether the serious side effects, injuries and damages from the use of Vioxx support the need for medical monitoring of persons who have used the drug.

## C. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12.   At all relevant times hereto, Defendant Merck did or caused Vioxx to be manufactured, designed, tested, packaged, supplied, marketed, advertised and sold in the United States.

13.   Vioxx is a non-steroidal anti-inflammatory drug ("NSAID") with a COX-2 inhibitor, which was approved on May 20, 1999, for the treatment of primary dysmenorrhea (menstrual cramps), for acute pain management in adults and for relief of osteoarthritis. Vioxx reportedly reduces pain and inflammation while also significantly reducing incidents of stomach ulcers commonly associated with pain relievers such as aspirin and ibuprofen.

14.   Traditional NSAIDs such as ibuprofen and aspirin block both COX-2 and COX-1 enzymes. Because the COX-1 enzyme protects the lining of the stomach, blocking it can lead to stomach irritation. It is believed that COX-2 inhibitors reduce the incidence of stomach ulcers and bleeding because they do not block COX-1 enzymes.

15.   There are over 86 million users of Vioxx nationwide. Annual sales exceed $2.5 billion for Vioxx in the United States.

16.   The Vioxx Gastrointestinal Outcome Research Study (hereinafter "VIGOR"), sponsored by Merck, was designed to gather information regarding "clinically meaningful upper gastrointestinal ("GI") events and to develop a large controlled database for overall safety assessment."

17.   The VIGOR study included about 8000 patients, 4000 for the Vioxx 50 mg a day treatment group and 4000 for the naproxen 1000 mg a day treatment group, for a median time period of nine months. (Naproxen is an NSAID, sold under such brand names as Naprosyn and Aleve). The study compared the safety of the two patient groups. The results of the study concerning GI events demonstrated that the group on Vioxx has a

DOROTHY BROWN – CLERK OF THE CIRCUIT COURT OF COOK COUNTY     4

significantly lower incidence of GI events. 2.08% compared to Naproxen 4.49%. (GI events include perforations. symptomatic ulcers. and gastrointestinal bleeds).

18.   The VIGOR study also found that serious cardiovascular events occurred in 101 patients (2.5%) in the Vioxx group compared to 46 (1.1%) in the Naproxen group. In addition. myocardial infarctions (heart attacks) occurred in 20 patients in the Vioxx group (0.5%) compared to 4 patients in the Naproxen group (0.1%).

19.   According to the Department of Health and Human Services ("HHS"), Defendant Merck engaged in a campaign that minimized the serious cardiovascular findings observed in the VIGOR study. The VIGOR study observed patients on Vioxx with a four to five times increase in myocardial infarctions. compared to patients on the NSAID - Naprosyn (naproxen).

20.   HHS also cited Defendant Merck for engaging in a promotional campaign that minimized the Vioxx/Coumadin (warfarin) drug interaction, (warfarin is an anticoagulant and the mixing of Vioxx and Coumadin can lead to the potentially serious risk of bleeding). making unsubstantiated superiority claims against other NSAIDs, and promoting Vioxx for unapproved uses and dosing regimens. HHS found Defendant Merck's misrepresentations particularly troubling because of HHS's previous objections to Defendant Merck's misrepresentations.

21.   According to HHS. Merck's press release of May 20, 2001 entitled "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx." which stated that Vioxx has a "favorable cardiovascular profile" was "simply incomprehensible. given the rate of GI and serious cardiovascular events compared to Naproxen." HHS concluded that Defendant Merck minimized the potentially serious cardiovascular findings of the VIGOR study and minimized the Vioxx/Coumadin drug interaction.

22.   After carefully reviewing the results of the VIGOR study. the U.S. Food and Drug Administration ("FDA") agreed with the Arthritis Advisory Committee recommendations of February 8. 2001 that the label for Vioxx should include the gastrointestinal and cardiovascular information. Hence. on April 11, 2002, the FDA approved new indication and label changes for Vioxx which included this information.

## D. CAUSES OF ACTION

### COUNT I -(Strict Products Liability)

23.  Plaintiff alleges and incorporates paragraphs 1 through 22 as if set forth fully above.

24.  Defendant Merck is the manufacturer and/or supplier of Vioxx.

25.  Defendant Merck manufactured and/or supplied Vioxx, which was defective and hazardous in design and formulation in that, when left in the hands of Merck, the foreseeable risks exceeded the benefits associated with the design or formulation.

26.  Alternatively, Defendant Merck manufactured and/or supplied Vioxx, which was defective or hazardous in design or formulation, in that, when it left the hands of Merck, it was unreasonably dangerous, more dangerous that an ordinary consumer would expect and more dangerous than other forms of NSAIDs.

27.  The Defendant Merck manufactured and/or supplied Vioxx, which was defective or hazardous due to inadequate warning or instruction because Merck knew or should have known that Vioxx posed a greater risk to patients taking it than to those patients taking other NSAIDs.

28.  As the procuring cause and legal result of the defective and hazardous condition of Vioxx as manufactured and/or supplied by Defendant Merck, and as a direct and legal result thereof, Plaintiff and other Class members require reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

29.  Defendant Merck failed to adequately test Vioxx before its introduction into interstate commerce. Such tests would have demonstrated that when compared to other NSAIDs, patients taking Vioxx had increased risk of cardiovascular events and adverse drug interactions with Coumadin.

30.  Defendant Merck supplied and/or distributed Vioxx, which was defective due to inadequate post-marketing warning or instruction. Defendant Merck knew or should

have known that Vioxx increased the risk of cardiovascular events and adverse drug interactions with Coumadin. when compared to other NSAIDs.

31. As the producing cause and legal result of the defective or hazardous condition of Vioxx. as manufactured and supplied by the Defendant Merck. and as a direct and legal result thereof, Plaintiff and other Class members require reasonable and necessary health care. attention and services and did incur medical, health, incidental and related expenses. and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and other members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT II – (Strict Products Liability - Failure to Warn)

32. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

33. Defendant Merck is the manufacturer and/or supplier of Vioxx.

34. Defendant Merck failed to adequately and fully warn of the higher risk of cardiovascular events. of Vioxx/Coumadin interaction, and of unapproved use, when compared to other NSAIDs.

35. Defendant Merck failed to adequately test Vioxx before its introduction into interstate commerce. Such test would have demonstrated that patients taking Vioxx had increased risk of cardiovascular event and adverse drug interaction with Coumadin. when compared to other NSAIDs.

36. Defendant Merck supplied and/or distributed Vioxx, which was defective due to inadequate post-marketing warning or instruction. Defendant Merck knew or should have known that Vioxx increased the risk of cardiovascular events and adverse drug interaction with Coumadin. when compared to other NSAIDs.

37. As the producing cause and legal result of the defective or hazardous condition of Vioxx, as manufactured and supplied by the Defendant Merck, and as a direct and legal result thereof, Plaintiff and other Class members require reasonable and necessary health care. attention and services. and did incur medical, health, incidental and related expenses.

and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and other members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT III - (Negligence)

38. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

39. Defendant Merck has had a duty to exercise reasonable care in the manufacture, sale, distribution, marketing and warning of Vioxx, including a duty to ensure that Vioxx did not cause users to suffer from unreasonable and dangerous side effects.

40. Defendant Merck breached its duty to Plaintiff and members of the Class, to exercise reasonable care in the manufacture, sale, distribution, marketing and warning of Vioxx in that Defendant Merck knew or should have known that Vioxx created an unreasonably high risk of dangerous side effects, including an unreasonably high risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

41. Defendant Merck was negligent in the manufacture, sale, testing, distribution, marketing and warning of Vioxx in that it:

(a) failed to issue reasonable and proper warnings regarding all possible adverse effects associated with the use of Vioxx;

(b) failed to conduct adequate pre-clinical testing, clinical testing and post-marketing oversight and surveillance to determine the effect of Vioxx;

(c) failed to provide adequate instruction to health care providers for appropriate risks and uses of Vioxx;

(d) failed to warn Plaintiff and the Class, prior to encouraging the use of Vioxx, that Vioxx increased the risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs;

(e) failed to use reasonable care in the design and manufacturing of Vioxx to avoid and prevent the increased risk of cardiovascular events and adverse drug

interaction with Coumadin, when compared to other NSAIDs; and

(f) was otherwise careless or negligent.

42. Defendant Merck knew or should have known that Plaintiff and the Class would foreseeably suffer injury as a result of Defendant Merck's failure to exercise ordinary care as set forth above.

43. As the proximate cause of Defendant Merck's negligence, Plaintiff and the Class require reasonable and necessary health care and services, and did or will incur medical, health, incidental expenses, and other forms of economic loss.

## COUNT IV - (Breach of Express Warranty)

44. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

45. Defendant Merck expressly warranted that Vioxx was safe for use by Plaintiff and the Class for the treatment of conditions for which Vioxx was advertised.

46. Vioxx does not conform to Defendant Merck's express representations because Vioxx does not warn of increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

47. As a direct and proximate result of Defendant Merck's breach of express warranty, Plaintiff and the Class have suffered economic loss in an amount to be proven at trial.

## COUNT V - (Breach of Implied Warranty)

48. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

49. At the time Defendant Merck manufactured, sold, distributed, and marketed Vioxx, Defendant Merck knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

50. Plaintiff and the Class and their health care providers reasonably relied upon the skill and judgment of Defendant Merck as to whether Vioxx was of merchantable quality.

safe and fit for its intended use.

51. However, despite this implied warranty, Vioxx was not of merchantable quality, safe or fit for its intended use because Vioxx was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used.

52. As a direct and proximate result of Defendant Merck's breach of implied warranty of merchantability, Plaintiff and the Class require reasonable and necessary health care and services, and did or will incur medical, health, incidental expenses, and other economic loss.

## COUNT VI - (Medical Monitoring)

53. Plaintiff realleges and incorporates paragraphs 1 through 22 as if fully set forth above.

54. As a direct and proximate result of Defendant Merck's conduct as set forth herein, Plaintiff and members of the Class have been exposed to an unreasonably increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

55. The increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs, can only be mitigated or addressed by the creation of a comprehensive medical monitoring program that:

(a) notifies individuals who used Vioxx of the potential harm from Vioxx;

(b) funds further studies of the long-term effects of Vioxx use;

(c) funds research into possible cures for the detrimental effects of Vioxx use;

(d) gathers and forwards to treating health care providers information related to the diagnosis and treatment of injuries and diseases that may result from using Vioxx; and

(e) aids in the early diagnosis and treatment of resulting injuries and diseases through ongoing testing and monitoring of Vioxx users.

56. Plaintiff and members of the Class have no adequate remedy at law in that monetary damages alone cannot adequately compensate for the continuing nature of the harm to them, and a monitoring program that notifies them of possible injury and aids in their

diagnosis and treatment can prevent the greater harms that may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur and worsen.

57. Without a court approved and supervised medical monitoring program, Vioxx users will not receive prompt medical care.

## COUNT VII - (Consumer Fraud)

58. Plaintiff realleges and incorporates paragraphs 1 through 22 as if fully set forth above.

59. At all times relevant hereto and to date there was in force a statute in the State of Illinois 815 ILCS 505 *et seq.*, commonly known as the "Consumer Fraud and Deceptive Practices Act ("Act")," the scope of which covers all of the relevant acts, conduct, practices and transactions noted above and herein.

60. The Plaintiff and members of the Class are consumers, as defined by the Act, of Defendant Merck's product, Vioxx.

61. The acts, practices and conduct of Defendant Merck involved trade practices addressed to the market generally and/or otherwise implicate consumer protection concerns.

62. By one or more of the following acts, practices and conduct noted above in Paragraphs 12-22, directly or by implication, Defendant Merck violated said Act and damaged the Plaintiffs and members of the Class by engaging in unfair and/or deceptive acts or practices, and/or engaging in conduct which creates a likelihood of confusion or misunderstanding, in the conduct of their trade or commerce.

63. That Defendant Merck intended that the Plaintiff and members of the Class rely on its above-mentioned unfair and/or deceptive acts, practices and conduct.

64. That Defendant Merck's acts, practices and conduct were done knowingly, intentionally, willfully, recklessly, with actual malice, and with a wanton disregard of the rights of the Plaintiff and members of the Class, an especially vulnerable group who are suffering from medical ailments and who are not as educated about pharmaceutical drugs as the Defendant Merck is, and as such the Plaintiff and members of the Class are entitled to

punitive. or exemplary. damages.

65. As a result of said unfair and/or deceptive acts. practices and conduct by Defendant Merck. and the Plaintiff's and members of the Class' justifiable and reasonable reliance thereupon. the Plaintiff and members of the Class have been damaged.

66. Should they prevail. the Plaintiff and members of the Class are entitled to reasonable attorney's fees and costs from Defendant Merck in an amount necessary to compensate the Plaintiff and members of the Class for the costs and disbursements of this action pursuant to 815 ILCS 505 *et seq.*.

## E. PRAYER FOR RELIEF

WHEREFORE. for each and/or any of the above-mentioned Counts, Plaintiff prays for the following relief:

A.  an order certifying the Class as set forth herein. with the named Plaintiff as class representative and his counsel as class counsel;

B.  a declaration that Defendant Merck's conduct violated the law as alleged in each cause of action;

C.  a judgment for Plaintiff and the Class for compensatory damages sustained as a result of Defendant Merck's unlawful conduct. including medical, hospital and incidental expenses according to proof;

D.  an order creating a comprehensive court supervised medical monitoring program as described herein which will notify users of Vioxx of the increased risks of cardiovascular event and adverse drug interaction with Coumadin, when compared to other NSAIDs. the costs of which are to be borne by Defendant Merck;

E.  an order creating a court-supervised trust fund. funded by Defendant Merck, to pay for a medical monitoring program, including testing, screening and monitoring of potential adverse and harmful effects caused by the consumption of Vioxx;

F.  an order requiring Defendant Merck to provide Plaintiff and the Class, and health

care providers with revised drug warnings, in substantially the same form and same delivery method as the original warnings were issued;

G. an order requiring Defendant Merck to refund and make restitution of all monies obtained from the sale of Vioxx to the Plaintiff and the Class;

H. an order awarding Plaintiff and the Class attorneys' fees, costs and expenses against Defendant Merck as allowed by law;

I. an order against Defendant Merck awarding Plaintiff and the Class an amount necessary to compensate the Plaintiff and the Class for the costs and disbursements of this action, including reasonable attorney's fees, pursuant to 815 ILCS 505 et seq;

J. pursuant to 815 ILCS 505 et seq., an order against Defendant Merck awarding Plaintiff and the Class punitive, or exemplary, money damages found to be suitable and sufficient to deter similar acts by Defendant Merck in the future and to punish Defendant Merck for its previous acts; and

K. such other or further relief as the Court may hold appropriate.

Respectfully submitted,
SCOTT ZEEDYK on behalf of himself
and all other persons similarly situated

BY: _____
John Xydakis, Attorney for Plaintiffs

John Xydakis
Atty No. 36859
Suite 201
125 W. 55th St.
Clarendon Hills, IL 60514
(630) 215-5515

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| SCOTT ZEEDYK on behalf of himself and all other persons similarly situated<br>Plaintiffs.<br>vs.<br>MERCK & CO., INC.<br>Defendant. | ) ) ) ) ) ) ) ) ) | Civil Action No.<br><br>Amount Claimed: An amount necessary to satisfy the jurisdictional requirements of this court<br><br>Plaintiffs demand a jury trial |

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(B)

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth below are true and correct, except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid that he verily believes the same to be true.

1. The total money damages sought in the above-captioned case exceeds fifty thousand dollars ($50,000).

FURTHER AFFIANT SAYETH NAUGHT.

John Xydakis
Atty No. 36859
Suite 201
125 W. 55th St.
Clarendon Hills, IL 60514
(630) 215-5515

**DOROTHY BROWN – CLERK OF THE CIRCUIT COURT OF COOK COUNTY  14**

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4203 | **DATE** | 8/30/2002 |
| **CASE TITLE** | Scott Zeedyk, on behalf of himself and all other persons similarly situated vs. Merck & Co., Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Plaintiff's Motion to Remand back to Circuit Court of Cook County for lack of jurisdiction pursuant to 28 U.S.C. § 1447(c)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ___ ___.

(3) ☐ Answer brief to motion due ___. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on ____ set for _____ at ___.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ ___ set for ___ ___ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___. set for ____ at _____.

(7) ☐ Trial[set for/re-set for] on ___ at ____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ____ at ___.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the reverse side of this minute order, Zeedyk's motion to remand for lack of subject matter jurisdiction is DENIED [7-1]

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | |
| Notices mailed by judge's staff. | |
| Notified counsel by telephone. | |
| X Docketing to mail notices. | |
| Mail AO 450 form. | |
| Copy to judge/magistrate judge. | |

klb (lc)

courtroom deputy's initials

number of notices

SEP 03 2002

date docketed

docketing deputy initials

date mailed notice

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

10

(Reserved for use by the Court)

# ORDER

Before this Court is the motion of plaintiff, Scott Zeedyk, to strike or deny defendant's notice of removal. Plaintiff is a citizen of Illinois. Defendant, Merck, is a citizen of New Jersey. This case involves failure to warn clams and allegations that VIOXX, a prescription medicine manufactured by Merck, caused plaintiff, Zeedyk, to sustain life-threatening injuries.

On May 8, 2002, plaintiff filed his original complaint against the defendant in the Circuit Court of Cook County. On May 20, 2002, the defendant was served with service of process. On this date as well, plaintiff was granted leave of court by the Circuit Court to file an amended complaint instanter. On May 29, 2002, this amended complaint was served on the defendant. Pursuant to 28 U.S.C. § 1332, the defendant filed its first notice of removal, on June 12, 2002, based on its receipt of the original complaint, and on its subsequent receipt of the amended complaint, filed an amended notice of removal on June 25, 2002.

Plaintiff moves to remand because it alleges that Merck failed to conform to Local Rule 81.2. This rule requires that the notice of removal be accompanied by a statement of good faith that the jurisdictional limit is met and by either a response by plaintiff to a request to admit or a response to an interrogatory stating that the jurisdictional limit is met or proof of the failure to respond to such a request to admit or interrogatory. Merck did not provide any such responses with its notice of removal. Defendant argues that where, as here, the complaint clearly establishes that the amount in controversy is in excess of the jurisdictional minimum, the defendant need not establish satisfaction of the jurisdictional minimum through the procedure outlined in Local Rule 81.2.

This Court has previously explained that Local Rule 81.2 is "not the exclusive way in which the jurisdiction amount could be established in a case removed from an Illinois court." Murphy v. Avon Products, Inc., No. 02-C-146, 2002 WL 808386 (N.D. Ill. April 30, 2002); Huntsman v. Whitehouse, No. 97-C-3842, 1997 WL 548043 (N.D. Ill. Sept. 2, 1997). Zeedyk seeks, inter alia, compensatory and punitive damages for Merck's alleged knowing, intentional, willful, reckless, and malicious failure to warn. Plaintiffs seeking similar relief against other pharmaceutical manufacturer defendants and making similar allegations of failure to warn received jury awards well in excess of $75,000. See, e.g., Proctor v. Upjohn, 291 Ill.App.3d 265, 286-87 (Ill. App. 1997) (plaintiff received approximately $3 million in compensatory damages and $6 million in punitive damages for failure to warn claim); Batteast v. Wyeth Labs. Inc., 172 Ill. App.3d 114 (Ill. App. 1988) (upholding jury's award of approximately $9 million in compensatory damages and $13 million in punitive damages). Plaintiff attempted to defeat jurisdiction in this court by specifically pleading in the amended complaint that he was waiving his right to damages in excess of $75,000. However, this is impermissible under Illinois pleading rules, which forbid a plaintiff in a personal injury action from pleading in its complaint any amount of damages other than "the minimum necessary to comply with the circuit rules of assignment where the claim is filed." 735 Ill. Comp. Stat. Ann. § 5/2-604 (West 2002); In re Shell Oil Col., 970 F.2d 355, 356 (7th Cir. 1992). Thus, it is reasonably probable that the amount in controversy exceeds $75,000 where similar claims recovered damages well over that amount.

For the foregoing reasons, plaintiff's motion to remand for lack of subject matter jurisdiction is DENIED.