UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: VIOXX | : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | |
| | : | SECTION L |
| | : | |
| *This document relates to ALL CASES* | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

**THE PLAINTIFFS' STEERING COMMITTEE'S SUPPLEMENTAL
BRIEF IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER**

**I. INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC"), submits this memorandum to supplement the instant motion pending before the Court. Since our motion was filed on March 30, 2007, much has happened. Standing out amongst the numerous events are

1) this Court's protective order of April 12, 2007, granting a temporary stay of the *de bene esse* depositions at issue until May 31, 2007;

2) the appointment of Special Master Rice to review documents asserted to be privileged by Merck; and

3) the June 5, 2007 order granting remittitur in the Barnett case (which remittitur has been accepted by Mr. Barnett) obviating the need for retrial of that matter.

The constellation of these facts and others, reveal that there is no urgency within the MDL to complete any *de bene esse* deposition in advance of the Special Master's completion of his review

1

of Merck's privilege log and the documents withheld as privileged.

Merck is attempting to accelerate discovery in the MDL for tactical advantages that inure only to Merck's benefit in uncoordinated state court proceedings. Proof that the matter relates solely to state court timing issues is obvious. On June 20, 2007, Merck re-issued notices of *de bene esse* depositions for Drs. Briggs Morrison and one of its retained generic experts, Lisa Rarick, MD for July and August (respectively). Merck's re-noticing of the deposition of Dr. Rarick in particular serves as a poster child of Merck's overreaching.

Dr. Rarick is a retained expert by Merck only in certain state court litigation.[1] Merck has never served the PSC with an expert report by Dr. Rarick or identified her as a generic witness in the MDL. Nor has the PSC been able to depose Dr. Rarick or subject her to any other discovery as she has never been named as a witness here. Yet, Merck demands that her trial preservation deposition be conducted here in the MDL on August 27 & 28, 2007 and not in any of the state courts where she was named. Postponing this deposition until the MDL receives a proper Rule 26 expert report by Dr. Rarick's report and until after more discovery are obtained by the PSC will not prejudice Merck in the MDL. On the other hand, the PSC will be severely prejudiced if her *de bene esse* deposition

---

[1] Dr. Rarick started her career as a physician specializing in Obstetrics and Gynecology and then spent 15 years at the FDA from 1988 through 2003. In the New Jersey Vioxx litigation before Judge Higbee, she has been presented as Merck's "FDA" expert and has testified on such wide-ranging topics as FDA regulations regarding product labeling, sales and promotion; Merck's compliance with FDA regulations; Merck's communications with the FDA; Merck's conduct and reasonableness in communicating with the FDA; and generally commenting on Merck's appropriate and/or reasonable conduct regarding Vioxx. She claims to have reviewed all of Merck's submissions to the FDA, as well as communications by Merck to physicians and other documents.

2

of this previously unnamed expert is permitted to proceed in advance of these conditions.[2]

Under these circumstances, the existing protective order should be extended to allow time for the Special Master to complete his efforts, for Merck to appeal the Special Master's rulings to this Court and presumably the Fifth Circuit, to allow the PSC time to analyze the documents improperly withheld by Merck, and to provide Merck time to submit an expert report for its expert witness in the MDL and to allow the PSC an opportunity to first obtain a discovery deposition in advance of any *de bene esse* deposition of Dr. Rarick. Forcing the PSC to prematurely engage in trial preservation depositions prior to the time that the PSC obtains Merck's declassified documents is an invitation to even more delay as the depositions would only have to be repeated once the withheld documents are finally produced.

Importantly, Merck is seeking these depositions at this premature time not because of any pressing MDL need to do so but because of a perceived need in the uncoordinated State court proceedings where there are trials set. One of these venues is in New Jersey where Judge Carol

---

[2] The other deponent noticed for a *de bene esse* deposition is Briggs W. Morrison, M.D., a current employee of Merck. He is a physician who was in private practice for ten years before joining Merck in 1995. He was involved with Vioxx from it's very early development and was a member of the Vioxx Project Team. He remained on the Vioxx Project Team until approval of the drug in May of 1999. After that date, he continued to be involved in investigating Vioxx as a potential treatment for prevention of Cancer. His anticipated testimony extends from invention of the Vioxx molecule, to the difference between the two COX mechanisms and the discovery thereof, to clinical studies of Vioxx, to gastrointestinal effects of traditional NSAIDs, to medical research and literature regarding COX 2 inhibition, to the propriety of Merck's decisions and/or actions regarding the pre-approval and approval of Vioxx, to adjudication of adverse events in clinical studies involving Vioxx, to Standard Operating Procedures in Merck clinical trials, to whether or not there was anything to indicate an increased risk of cardiovascular events with Vioxx. Generally, Dr. Morrison is expected to testify, as he has previously in other trials, as to all aspects of Merck's behavior in the pre-approval phase of Vioxx and then, additionally, as to further studies undertaken by Merck after the drug was on the market. To adequately prepare to cross-examine Dr. Morrison it is vital that the PSC have access to all of the declassified documents that are currently being withheld by Merck.

Higbee has proposed that several trials be scheduled for the fall of 2007. The issue of whether, and to what extent, Merck can even use these preservation depositions in any of those trials in light of the New Jersey Rules is a matter to be addressed by Judge Higbee this Thursday, June 28, 2007. Since it is the trial schedule before Judge Higbee that is driving Merck's attempt to preserve these depositions in the federal system and not any exigency in this MDL, this Court should refuse to condone Merck's efforts to leverage the MDL's authority over its state court counterparts.[3] While state/federal coordination is an objective of the MDL (and the PSC encourages that the Court reach out to Judge Higbee), this Court should not sacrifice the goal that it has set for the PSC – to establish the highest caliber trial package obtainable for the plaintiffs conditionally transferred to the MDL – if such cooperation prejudicially impinges on the orderly discovery process contemplated by this Court.

## II. ARGUMENT

This Court has already found that the PSC is entitled to some modicum of protection to prevent Merck from conducting trial preservation depositions too hastily. During the April 12, 2007 status conference the Court ordered that none of the *de bene esse* depositions originally noticed by Merck on March 28, 2007, should be allowed to go forward until May 31, 2007. *See In re Vioxx Products Liability Litigation*, MDL No. 1657, Minute Entry at 4 (E.D.La. April 12, 2007).

When the matter was revisited at the Status Conference of May 31, 2007, the Court took note of the anticipated Report and Recommendation of Special Master Rice expected at the end of June. *See In re Vioxx Products Liability Litigation*, MDL No. 1657, Minute Entry at 4 (E.D.La. May 31,

---

[3] Although the professed reason for these expedited preservation depositions is Merck's fall trial schedule in the various state court venues, it has not cross-noticed these depositions in those fora.

2007). With the anticipated report of the Special Master in mind, the Court ordered the parties to meet and confer regarding the deposition scheduled in June, but allowed "the July and August depositions [such as Drs. Morrison and Rarick] to remain scheduled as noticed for the time being." *Id.* (emphasis added).

Thereafter, the PSC engaged Merck in discussions about these depositions, specifically Merck's intent to cross-notice the depositions in state litigations and Dr. Rarick's infirmity as an MDL expert. Merck was less than forthcoming. Not until June 14, 2007, did Merck advise of its intent to cross-notice these witnesses. *See* emails of Chris Tisi to Ted Mayer (June 14, 2007), email chain of Ted Mayer and David Buchanan (June 15, 2007), and email of Chris Tisi to Ted Mayer (June 25, 2007) [Attached hereto as Exhibit A]. And even then, it still demurred "with regard to Dr. Rarick," simply by commenting that, "Chris has raised procedural questions which we will address in subsequent communication." *Id.* Instead of a substantive response to the "procedural questions" posed by Dr. Rarick, on June 21, 2007, Merck simply re-issued the notices of depositions for both Drs. Morrison and Rarick.

While these discussions were separately occurring, the Special Master was actively engaged in the review of Merck's privilege log and the documents withheld from production under the pretense of privilege. The Special Master has since issued several interim reviews. These glimpses into the Special Master's considered thoughts suggest that Merck will be unable to sustain its burden of establishing that a substantial number of the documents classified as privileged are, in fact, privileged. Indeed, as a result of just these initial reviews, Merck has surrendered any opportunity to challenge the Special Master's interim reviews for several documents.

Yet, even in defeat, Merck is still reluctant to produce the documents it has acknowledged

were wrongly withheld as being privileged. As evident from the June 21, 2007 letter of Leonard Davis [attached hereto as Exhibit "B"], Merck produced these newly de-classified documents on a CD that fails to comply with PTO No. 17A and amounts to nothing but a "document dump." Merck's sullen efforts simply delay and hamper the PSC's ability to review documents that should have been produced many months ago. However, what can be gleaned from this improper document production is that the withheld documents present a wealth of unknown evidence that should prove to be a virtual trove of useful material for cross-examination of Merck's witnesses.

Irrespective of these few surrendered documents, Merck still maintains that the majority of the other documents under review should remain privileged. The few declassified documents that have been produced to date, suggest that the expected production of the contested, declassified documents will contain significant evidence from which exceptional cross-examination can be developed. Given the import of these documents, the PSC has no doubt that Merck will appeal the Special Master's anticipated June Report and Recommendation to the District Court and again to the Fifth Circuit. Merck's resistence only serves to delay the impending day when production of these highly relevant documents that are not privileged are finally disclosed.

Until that day, however, the PSC is restricted and prejudiced in its ability to prepare for the *de bene esse* depositions Merck has re-noticed. Merck wants to force these depositions to be taken before the final production of the declassified documents occurs even though there are no federal cases pending and even though the earliest federal trial could not possibly be set until 2008.[4] That

---

[4]Even if this Court were to begin the process of remanding cases in September of this year, it is unlikely that an individual case would actually be transferred to a transferee court for at least 90 days. Thereafter, a status conference would likely occur and a discovery schedule set for case-specific issues. During this time, the PSC expects to continue to supplement and build its
(continued...)

is not a good reason to permit these depositions to go forward. Indeed, allowing the depositions to go forward, without first allowing the PSC to gain access to the declassified documents, is inefficient and invites duplication of effort as the depositions would have to be repeated once the documents are finally made available.

Patience is a virtue. This Court has previously demonstrated its willingness to await the privilege document review of the Special Master before forcing the PSC to conduct such critical depositions in an ill-prepared and vulnerable condition. Given the substantial progress of Professor Rice, the initial review of Merck's document selection and the documents selected by the PSC should be completed by the time of the June 29, 2007 Status Conference. Merck's efforts to have Professor Rice's Report reviewed on appeal should be accomplished by the end of the year. These appeals will only result in a few months delay of these *de bene esse* depositions as they are currently scheduled. In the absence of a compelling federal need for this testimony to be preserved, the need for an orderly preservation schedule, with the necessary documents, should be paramount.

Since the re-trial of the Barnett case is now off-calendar, there is no MDL trial imminent. Accordingly, there is no reason within the MDL to hurry these depositions along in advance of the resolution of the privilege document matters before the Special Master. While several trials are being scheduled in other venues,[5] that is not sound cause for prejudicing this MDL and the PSC by requiring the plaintiffs to participate in trial preservation depositions of Merck's witnesses without

---

[4](...continued)
trial package and assumed that Merck will be doing the same.

[5]Indeed, in the New Jersey Vioxx Litigation, Judge Higbee is scheduled to conduct a status conference on Thursday, June 28, 2007, to discuss trial preservation depositions of the same witnesses and trial scheduling.

7

being fully prepared with a complete accompaniment of Merck's document production.

To be clear, the PSC does not contest the taking of these depositions in anticipation of any Federal trial. Nor does the PSC have a position as to whether these depositions could properly be used in a given state trial. The only question is when they will occur. Since it is Merck's state court obligations that seem to be driving the timing of these depositions in the federal proceedings, the PSC respectfully suggests that, as a matter of comity, this Court permit the state court Judges (including Judge Higbee who is considering this very issue from her perspective on the same date of this Court's June Status Conference) to weigh in as to whether the depositions that Merck seeks are even useable.

Should Merck be permitted to conduct these *de bene esse* depositions in advance of the PSC obtaining all of Merck's declassified documents currently withheld as privileged, or, at any time, the PSC proposes that a condition should be imposed on Merck. If so deposed, Merck should be precluded from calling these witnesses live at trial. If preservation of these witnesses's testimony is so essential to Merck's interest in unburdening its witnesses with trial appearances, then Merck should not be entitled to selectively decide to call these witnesses at trial. Only the preserved testimony may be used by Merck.[6]

### III. CONCLUSION

For the reasons set forth above and in our moving papers, the PSC respectfully requests that the Motion for Protective Order be extended until the release of all Merck's declassified privileged documents takes place.

---

[6] Plaintiffs, of course, would retain the right to call the witnesses live in those jurisdictions where that option is available to them. In addition, Plaintiffs should also be entitled to another deposition of the witness once the declassified documents finally become available.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: June 26, 2007

By:/s/ Leonard A. Davis

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, L.L.P.*
820 O'Keefe Avenue
New Orleans, Louisiana  70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA  71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)

**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL  32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor

San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008  (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500 (telephone)
(215) 592-4663  (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX  77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA  70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC  20036-4914
(202) 783-6400 (telephone)
(307) 733-0028  (telecopier)

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 26th day of June, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:    (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhkc.com