UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| Case No. 06-0485 | * | |
| | * | |
| | * | MAGISTRATE |
| GERALD D. BARNETT | * | JUDGE KNOWLES |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

**MOTION AND INCORPORATED MEMORANDUM
OF MERCK & CO., INC. ("MERCK") FOR NEW TRIAL**

Having correctly found that the jury's $50 million compensatory damages award in this case was "excessive under any conceivable substantive standard of excessiveness," this Court, on August 30, 2006, ordered a new trial on the issue of damages.  (Aug. 30, 2006 Order at 6.)  On June 5, 2007, following post-trial briefing by the parties, the Court reiterated its finding regarding the excessiveness of the jury's compensatory damages award, but modified its initial ruling by conditioning a new trial on plaintiff's "refus[al] to accept a remittitur of $1,600,000.00, consisting of $600,000.00 in compensatory damages and $1,000,000.00 in punitive damages."[1] (June 5, 2007 Order at 2.)  Plaintiff accepted the remitted amount on June 20th, and the Court

---

[1]   The Court also modified its August 30th ruling in several other respects.  In addition, the Court left open the question of whether a new trial would cover all issues or be limited to the issue of damages.  (June 5, 2007 Order at 8, n.6.)

entered judgment on June 28th. Merck now moves for a new trial on all issues, pursuant to Federal Rule of Civil Procedure 59.

A new trial on all issues is warranted for the reasons articulated in Merck's September 5, 2006 motion for a new trial on all issues – and, in that sense, this motion seeks reconsideration of the Court's June 5, 2007 Order denying in part and deferring ruling in part on Merck's September 5, 2006 motion. But, a new trial is also necessary to prevent an additional injustice – namely, the Court's remission of the jury's compensatory damages award, which is not tied in any way to the jury's findings or the evidence in the record, and thus usurps the jury's function and violates the Seventh Amendment. *See United States v. Flores*, 981 F.2d 231, 237 (5th Cir. 1993) ("The district court has discretion to grant a new trial under [Rule] 59(a) where it is necessary to prevent an injustice." (citation and internal quotation marks omitted)). Merck has addressed the propriety of remittitur before, in its reply brief in support of its September 5, 2006 motion for a new trial on all issues. However, Merck did not make the precise argument presented in this brief – because, at the time, it understood the Court's August 30, 2006 ruling to be, in relevant part, that the jury's compensatory damages award was the result of passion or prejudice. The Court later stated that such a reading of its August 30th Order was an "unintended consequence," and that the Court simply meant to find that the jury's award was excessive. (June 5, 2007 Order at 6.) As discussed below, even with that clarification, remittitur is impermissible in this case.

As the Court well knows, the injuries Mr. Barnett attributed to his Vioxx use were numerous. They included a first heart attack in September 2002, increased atherosclerosis, a second alleged heart attack in July 2004, alleged reduced life expectancy, and the possibility of additional heart problems in the future. From the jury's general liability and damages findings, it

is impossible to determine whether the jury believed Merck was liable for all of these injuries, some but not others, or none at all. (The jury might have intended simply to punish Merck generally for its alleged conduct, without regard to Mr. Barnett.) To the extent the jury meant to compensate Mr. Barnett for *any* of the harms he allegedly suffered, it is also impossible to determine from the record how much the jury awarded him for each alleged harm. In other words, one cannot parse, from the evidence in the record and the jury's findings, the various sub-parts of the jury's compensatory damages award. Because we cannot determine which injuries the jury ascribed to Merck, we also cannot know which if any of Mr. Barnett's medical expenses the jury intended to award as part of verdict, or whether it included general damages with respect to some or all of the alleged injuries. Where there is so little information to guide the Court in its review of an excessive damages award – where there is no principled way to "lop[] off an excrescence," leaving the reasoned portion of the jury's verdict intact – remittitur is inappropriate. *See Dimick v. Schiedt*, 293 U.S. 474, 486 (1935). Without concrete findings on liability or damages, the Court necessarily made those findings for itself – making liability determinations with respect to each of Mr. Barnett's alleged harms, for example – in violation of Merck's Seventh Amendment right to a jury. The Court's decision to remit the jury's compensatory damages award thus constitutes reversible error. To rectify the error, Merck respectfully requests that the Court order a new trial.

## I. BECAUSE THE JURY'S COMPENSATORY DAMAGES AWARD CANNOT BE SEPARATED INTO "REASONED" AND "EXCESSIVE" PORTIONS, THE COURT'S REMITTITUR WAS INAPPROPRIATE AND CONSTITUTES REVERSIBLE ERROR.

As noted above, remittitur of a jury's damages award is only appropriate if the court has a basis on which to excise the excessive portion of a verdict, leaving the reasoned portion intact. *Dimick*, 293 U.S. at 486. A court must "confine its role to the removal of the excess portion of

3

the verdict so that the damage calculation leaves in the judgment a portion of what the jury awarded." *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir. 1984) (internal quotation marks and citations omitted). To do otherwise – to "build[] a damage award for pecuniary loss from zero up" – violates the Seventh Amendment, since it "disregards the jury's verdict entirely and deprives the defendants of their right to trial by jury." *Id.* at 50.

Separating the reasoned portion of a jury's verdict from the excessive portion is often a difficult task. To do so, the Fifth Circuit applies the "maximum recovery rule," according to which a court "must determine the maximum amount the jury could have properly awarded, *based on the evidence in th[e] record*." *Gautreaux v. Ins. Co. of N. Am.*, 811 F.2d 908, 913 (5th Cir. 1987) (emphasis added). This is especially challenging in cases where the jury awards a lump sum verdict rather than an itemized one, as the Fifth Circuit has recognized. In *Gautreaux*, for example, the Court determined it could not remit the jury's general damages award, where the evidence in the record made it impossible to calculate one component of the award: future lost wages. *Id.* at 915-16. The Court found the evidence at trial had established the maximum amount recoverable for the other portions of the award, including past and future lost meals and past lost wages. *Id.* at 914. It also determined that $100,000 was the most plaintiff could have recovered for pain and suffering – where, in contrast to this case, plaintiff's counsel asked for that amount during closing arguments, the plaintiff sought recovery for only one injury, and the Court found that amount supported by the evidence in the record. *Id.* Notwithstanding these findings, the Court rejected remittitur, explaining:

> Because we are unable to determine the maximum award that the record before us will support, and because we are completely unable to determine loss of future earnings, it is apparent that suggestion of a remittitur is inappropriate. It is true that we have been able to determine maximum recovery on all components of the jury's general verdict except future wage loss. When a jury

4

> renders a general award that contains numerous components of damages, however, we cannot invade the province of the jury by awarding an amount for each separate component. Because the general verdict conceals the jury's intended breakdown of the damages, the entire award must be called into question and remanded for a new trial.

*Id.* at 915-16 (citations omitted); *see also Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1547-48 (5th Cir. 1984) (finding remittitur inappropriate and remanding for a new trial on damages because the jury's general award of damages could not be broken into various components); *Betancourt v. J.C. Penney Co.*, 554 F.2d 1206, 1209 n.5, 1210 (1st Cir. 1977) (finding the jury's damages award excessive and remanding for a new trial because it was impossible "even roughly to compute the excessiveness of the verdict" and "an estimation of proper awards . . . would rest solely on speculation").

In this case, although it is evident that the jury's $50 million compensatory damages award was excessive, the specific defects in the award are neither easily identifiable nor measurable. *Cf. Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992) (finding remittitur an appropriate remedy for an excessive jury award in part because "the defects in the award are readily identifiable and measurable"). Because there is no way to determine what damages the jury concluded Mr. Barnett suffered, let alone what compensation it awarded for each component of his damages, there is no way to lop off – or even calculate – the "excessive" part of the jury's award. Nor is there any way to justify a reduction of the award to $600,000 by reference to the evidence in the record or the jury's findings.

In its June 5, 2007 Order, the Court made the following specific findings on damages:

- Because Mr. Barnett is retired, he cannot recover for lost wages or lost earning capacity.

- Mr. Barnett put in some evidence of out-of-pocket medical expenses at trial.

- Mr. Barnett's losses were "primarily noneconomic."

5

- "While the Plaintiff's injuries and intangible feelings of insecurity undoubtedly affect the normal pursuits and pleasures of his life, he has been able to undergo preventative medical treatment as a result of this experience and has even returned to certain of his beloved recreations . . . ."

(June 5, 2007 Order at 6-7.) The Court then found, "[c]onsidering the specific testimony and evidence introduced at trial," that "$600,000.00 is the most the jury could properly have awarded the Plaintiff as compensatory damages." (June 5, 2007 Order at 7 (citation and internal quotation marks omitted).) From the Court's specific findings, one can deduce that its $600,000 remitted award is comprised of approximately $155,000 in medical expenses and $445,000 in "noneconomic" losses.[2]

There is scant evidence of damages in the record, however. Indeed, Mr. Barnett made almost no effort to quantify his damages at trial. The only concrete evidence of damages he offered was approximately $155,000 in medical bills, which plaintiff's counsel introduced during Mr. Barnett's testimony but neither discussed nor totaled for the benefit of the jury. (Aug. 8, 2006 Trial Tr. at 1575:6-1576:6.) Nor did plaintiff's counsel attempt to quantify for the jury medical expenses due to the first heart attack versus those due to the progression of Mr. Barnett's atherosclerosis versus the alleged second heart attack. Further, Mr. Barnett presented no expert testimony to quantify his damages – and, while he proffered two medical witnesses who testified that his life expectancy had been reduced, one testified that he couldn't put a number on Mr. Barnett's alleged reduction in life expectancy, and the other offered no testimony on the value of what he characterized as a loss of "some nine or ten years." (Aug. 5, 2006 Trial Tr. at 1163:24-1164:8 (Test. of Dr. Karavan); Aug. 8, 2006 Trial Tr. at 1734:8-14 (Test. of Dr. Zipes).) There

---

[2] In its June 5th Order, the Court did not explain what types of "noneconomic" damages it found recoverable – loss of life enjoyment, mental anguish, or pain and suffering, for example – or which of Mr. Barnett's specific injuries it found compensable. Nor did the jury.

6

is no way of knowing whether the jury believed that Mr. Barnett's life expectancy was reduced, or, if so, by how much.

Nor is there any way to determine which of Mr. Barnett's many alleged injuries the jury intended to compensate with its $50 million award – or whether the award was tied to Mr. Barnett's injuries at all. The jury made no findings on the extent or quantum of Mr. Barnett's damages. In particular, the jury did not specify which of Mr. Barnett's claimed damages – first heart attack, increased atherosclerosis, second alleged heart attack, alleged reduced life expectancy, unspecified future heart problems – it ascribed to Merck. Which, if any, of these damages is attributable to Merck was hotly contested at trial. Because the jury's findings did not specify which injuries it intended to compensate, let alone the amount of compensation it awarded for each injury, the Court had no basis upon which to decide what damages Mr. Barnett suffered, or what they were worth.[3]

Given that there is insufficient evidence in the record on which to base a remitted compensatory damages award, it is impossible for the Court to have "confine[d] its role to the removal of the excess portion of the verdict so that the damage calculation leaves in the judgment a portion of what the jury awarded." *Shu-Tao Lin*, 742 F.2d at 49 (internal quotation marks and citations omitted); *see also De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 143 (5th Cir. 1986) ("In this circumstance where we cannot determine the reason the verdict is excessive . . . we elect to remand this case for a new damage trial."). A new trial on all issues,

---

[3] No one anticipated the grossly excessive verdict in this case. The Fifth Circuit has suggested – but does not require – that, in cases involving numerous elements of damages, litigants consider using special interrogatories under Federal Rule of Civil Procedure 49(a) to obtain an itemized award rather than a lump sum verdict. *Gautreaux*, 811 F.2d at 916 n.5. This is an option the parties and the Court should consider when and if the case is retried.

therefore, is required.[4]  To permit the remitted award to stand would be to deprive Merck of its Seventh Amendment right to a jury.  In order to prevent this injustice, the Court should grant Merck's motion for a new trial on all issues.

## II. CONCLUSION.

For the reasons stated above, as well as the reasons articulated in Merck's September 5, 2006 motion for new trial on all issues, Merck respectfully requests that the Court order a new trial in this case on all issues.

Dated:  July 13, 2007

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361

Defendants' Liaison Counsel

Philip S. Beck
Andrew Goldman
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois  60610
Phone:  312-494-4400
Fax:     312-494-4440

---

[4]  As explained in Merck's memorandum in support of its earlier motion for a new trial on all issues (which is incorporated by this reference), a new trial on damages alone is inappropriate in this case.

8

883895v.1

Douglas Marvin
Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  202-434-5000
Fax:     202-434-5029

And

Brian S. Currey
Catalina J. Vergara
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Phone:  213-430-6000
Fax:     213-430-6407

Attorneys for Merck & Co., Inc.

883895v.1

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Motion of Merck & Co., Inc. ("Merck") for New Trial has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Mr. Barnett, Mark Robinson, by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 13th day of July, 2007.

                */s/ Dorothy H. Wimberly*
                Dorothy H. Wimberly, 18509
                STONE PIGMAN WALTHER WITTMANN L.L.C.
                546 Carondelet Street
                New Orleans, Louisiana  70130
                Phone:  504-581-3200
                Fax:    504-581-3361
                dwimberly@stonepigman.com

                Defendants' Liaison Counsel

883895v.1