# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | **MDL DOCKET NO. 1657** |
| | **SECTION L** |
| DANIEL KOPALYAN, SHUSHANIK KOPALYAN | **EDLA** |
| | **CASE NO. 07-2701** |
| Plaintiffs | |
| vs. | **JUDGE FALLON** |
| MERCK & COMPANY, INC., a corporation; PMSI, INC. d/b/a/ a Florida Corporation, PMSI, INC ROE INDIVIDUAL PHARMACISTS 1-50, ROE BUSINESS ENTITIES 1 to 100 Inclusive, ROE DETAILERS 1 through 50 and DOES 1 to 50 inclusive inclusive, | **MAGISTRATE JUDGE** |
| | **DANIEL E. KNOWLES, III** |
| Defendants. | |

## PLAINTIFFS' REQUEST TO ISSUE SUMMONS

COME NOW Plaintiffs, by and through their attorneys of record, MAINOR, EGLET,

COTTLE and hereby request that Summons be issued in the above captioned case for Defendant,

PMSI, INC. See Summons attached to this document.

Dated this 18th day of July, 2007.

By: _____

ROBERT W. COTTLE, ESQ.
Nevada Bar No. 4576
**MAINOR EGLET COTTLE**
400 South Fourth Street, Suite 600
Las Vegas, NV 89101
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b) and in accordance with Pretrial Order No. 8(b), the following document was served on Liaison Counsel, Russ Herman and Philip Wittmann, by U.S. mail and E-mail or by hand delivery and upon all parties and by electronically uploading the same to Lexis Nexis File & Serve and that the foregoing was electronically filed with the Clerk of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, that the I certify that I am an employee of MAINOR EGLET & COTTLE, and that the following documents were served via electronic service with the procedures established in MDL 1657:

**PLAINTIFFS' REQUEST TO ISSUE SUMMONS**

DATED this 18th day of July, 2007

    /s/   *Robert W. Cottle*
ROBERT W. COTTLE, ESQ.

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ EASTERN _____ DISTRICT OF _____ LOUISIANA _____

DANIEL KOPALYAN, SHUSHANIK
KOPALYAN,

### SUMMONS IN A CIVIL CASE
CASE NUMBER: 2:07-cv-02701

Plaintiff,

**V.**

MERCK & COMPANY, INC., a corporation;
PMSI, INC. d/b/a Florida, PMSI Inc., ROE
INDIVIDUAL PHARMACISTS 1 to 50 ROE
BUSINESS ENTITIES 1 to 100, inclusive ROE
DETAILERS 1 through 50 and DOES 1 to 50,
inclusive

**TO:**   (Name and address of defendant)

**PMSI, INC. d/b/a Florida, PMSI, Inc.**
**Corporation Trust Company of Nevada, Resident Agent**
**6100 Neil Road Ste. 500 Reno, NV. 89511**

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name
and address)

ROBERT W. COTTLE, ESQ.
**MAINOR EGLET COTTLE**
400 South Fourth Street 6th Floor
Las Vegas, Nevada 89101

an answer to the complaint which is herewith served upon you, within ___20___ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____        _____

CLERK                                                          DATE


_____

(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons in a Civil Action (Reverse)

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me [1] | |
| NAME OF SERVER (*PRINT*) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of
suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:_____

_____

☐ Returned unexecuted: _____

_____

_____

_____

☐ Other (*specify*): _____

_____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing
information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
            *Date*                        *Signature of Server*

                                        _____
                                        *Address of Server*

---

[1] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

COPY

**COMP**
ROBERT W. COTTLE, ESQ.
Nevada Bar No. 4576
ROBERT T. EGLET, ESQ.
Nevada Bar No. 3402
DAVID A. TANNER, ESQ.
Nevada Bar No. 8282
**MAINOR EGLET COTTLE**
400 South Fourth Street, Suite 600
Las Vegas, NV 89101
(702) 450-5400
Attorney for Plaintiffs

CLERK OF THE COURT

FILED

# DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| DANIEL KOPALYAN, SHUSHANIK KOPALYAN, <br><br> Plaintiffs <br><br> vs. <br><br> MERCK & COMPANY, INC., a corporation; PMSI , INC. d/b/a Florida, PMSI Inc., ROE  INDIVIDUAL PHARMACISTS 1 to 50 ROE BUSINESS ENTITIES 1 to 100, inclusive ROE DETAILERS 1 through 50 and DOES 1 to 50, inclusive <br><br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

A537796

CASE NO.

DEPT NO.

**PERSONAL INJURY
EXEMPTION RQUESTED**

Plaintiffs allege as follows:

## INTRODUCTION

This is an action for personal injuries and damages brought on behalf of the Plaintiffs who have been prescribed and supplied with, received, and who have taken and ingested and consumed VIOXX, a pharmaceutical compound researched, designed, formulated, compounded, tested, manufactured, produced, processed, assembled, inspected, distributed,

marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise placed in the stream of interstate commerce by Defendant MERCK & COMPANY, INC. VIOXX was manufactured, sold, distributed and promoted by Defendants as a pain reliever, similar to Ibuprofen, without any of the known Ibuprofen side effects.  Certain Roe and Doe Defendants, and each of them, misrepresented that VIOXX was a safe and effective medication to manage musculoskeltetal dysfunction and pain; whereas, VIOXX was known to cause serious, permanent and even fatal events and/or consequences with short and/or long-term use.  This lawsuit seeks, among other relief, general and special damages and equitable relief in order to enable the Plaintiffs to treat and monitor the dangerous, severe and life-threatening side effects caused by these drugs, including but not limited to edema, changes in blood pressure, heart attacks, kidney failure, strokes, cardiovascular events, deep vein thrombosis, death, and other diseases and health problems.

## PARTIES

1.     Plaintiff DANIEL KOPALYAN is and was at all times relevant hereto a resident of California who sustained a heart attack in Nevada and was hospitalized in Nevada and Plaintiff SHUSHANIK KOPALYAN is and was at all times relevant hereto married to Plaintiff DANIEL KOPALYAN.

2.     The true names or capacities whether individual, corporate or otherwise, of Defendants ROE BUSINESS ENTITIES 1 through 50, inclusive, and DOES 1 through 50, inclusive, are unknown to Plaintiffs who, therefore, sue said Defendants by such fictitious names. Defendants designated as ROE INDIVIDUAL PHARMACISTS 1 to 50 dispersed VIOXX to PLAINTIFF. DEFENDANTS designated as ROES and DOES 1 to 50 were, and still are, individuals, agents, corporations, or business entities otherwise who, at all times pertinent hereto, were in the business of and involved with the research, design, formulation,

compounding, testing, manufacture, production, processing, assembly, inspection, distribution, marketing, labeling, promotion, packaging, advertisement for sale, prescription, sale, or placement in the stream of interstate commerce of the drug VIOXX. Plaintiffs believe and allege that each of the Defendants designated herein by fictitious names ROE and/or DOE are in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiffs as alleged herein. Plaintiffs will seek leave to amend this Complaint to substitute in the names and identities of such Defendants when the same are ascertained.

3.     At all times herein mentioned, each of the Defendants were the agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty.

4.     At all times herein mentioned, there existed a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendants and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as any entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and would promote injustice.

5.     The injuries to Plaintiffs were caused by the wrongful acts, omissions, and fraudulent misrepresentations of Defendants. The wrongful acts, omissions, and fraudulent misrepresentations of Defendants described herein served to conceal the dangerous defects

3

and propensities of the drug VIOXX.  The dangerous defects and propensities of the drug VIOXX were unknown to the Plaintiffs herein.  The causal relationship between the use of VIOXX and the injuries to the Plaintiffs, and each of them, was discovered only because of and after the withdrawal of VIOXX on September 30, 2004.

6.      Plaintiffs are informed and believe, and thereupon allege that at all times relevant hereto, each one of Defendant DETAILERS (hereinafter referred to as "Defendant DETAILERS"), was and is a MERCK salesperson, authorized by Defendant MERCK & COMPANY, INC., to distribute and market  pharmaceutical medication including, but not limited to VIOXX; that at all times relevant hereto, one or more of the Defendant DETAILERS was engaged, either directly or indirectly, through third parties or related entities, in the business of distributing and selling the pharmaceutical VIOXX, including but not limited to undertaking distribution or marketing efforts regarding these Plaintiffs' prescribing doctor and/or medical staff of these Plaintiffs' prescribing doctor; that as part of such distribution or marketing efforts regarding VIOXX, oral or written statements were disseminated making exaggerated or false claims.  DETAILERS are directly and individually liable under State and Federal case law for false and/or misleading statements.

7.      At all times herein mentioned, Defendant MERCK & COMPANY, INC., Defendants ROE INDIVIDUAL PHARMACISTS and the ROE and DOE Defendants 1 through 50, and each of them, were engaged in the business of, or were successors in interest to entities engaged in the business of research, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the drug VIOXX. Plaintiffs are informed and believe, and thereupon allege that at all times relevant hereto, Defendants, ROE INDIVIDUAL PHARMACISTS were authorized to distribute

4

pharmaceutical medication including, but not limited to VIOXX and distributed VIOXX to Plaintiff, DANIEL KOPALYAN. At all times relevant hereto, Defendants, ROE INDIVIDUAL PHARMACISTS were engaged, either directly or indirectly, through third parties or related entities, in the business of distributing and selling the pharmaceutical VIOXX.

8.      At all times herein mentioned, Defendant MERCK & COMPANY, INC., the ROE INDIVIDUAL PHARMACISTS and the ROE and DOE Defendants 1 through 50, and each of them, did in fact supply the aforementioned products.

9.      At all times herein mentioned, the officers and directors of Defendant MERCK & COMPANY, INC. and the ROE and DOE Defendants 1 through 50 named herein, participated in, authorized and directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous and defective propensities of said products and thereby actively participated in the tortious conduct which resulted in the physical injuries described herein.

10.     That at all times pertinent hereto, VIOXX was sold and distributed by a variety of pharmacies and individual pharmacists, hereby designated as the ROE INDIVIDUAL PHARMACISTS, operating therein and, in particular, was sold and distributed to Plaintiff, DANIEL KOPALYAN by Defendant, PMSI , INC. d/b/a Florida, PMSI Inc., and ROE and DOE Defendants 1 through 50.

11.     Defendant MERCK & COMPANY, INC. and Doe Defendants 1 to 100, manufactured, marketed, sold and distributed VIOXX which was ingested by the Plaintiff.

12.     Defendant MERCK & COMPANY, INC., and ROES and DOES 1 to 50, and each of them, is in the business of researching, designing, formulating, compounding, testing,

5

manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale VIOXX (Rofecoxib).

13.     Defendant MERCK & COMPANY, INC. was, and is, an American pharmaceutical company, incorporated under the laws of the State of New Jersey, whose principal place of business is One Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey, which at all times relevant manufactured and marketed, sold and distributed VIOXX for Defendant.

14.     That at all times herein mentioned, Defendant, PMSI , INC. d/b/a Florida, PMSI Inc., and Defendant ROE, INDIVIDUAL PHARMACISTS or ROES and DOES 51 to 100 sold, distributed, and otherwise made available the drug VIOXX to the general public.

## FACTUAL ALLEGATIONS

15.     At all times hereinafter mentioned, Plaintiff is informed and believe that DETAILERS are employed by Defendant MERCK & COMPANY, INC. as sales representatives and presented oral and written materials to physicians that prescribed VIOXX to Plaintiff specified herein.

16.     At all times relevant, Defendants, and each of them, themselves, or by and through the use of others, did manufacture, create, design, test, label, sterilize, distribute, supply, prescribe, market, sell, advertise, warn, consult, or failed to consult, and otherwise distribute in interstate commerce the pharmaceutical product known as VIOXX.

17.     VIOXX is the trade name (consumer recognized name) of the generic drug Rofecoxib. VIOXX was and is utilized, prescribed, and sold by physicians for pain management and the relief of pain. VIOXX has been widely advertised and marketed by all named Defendants as a safe and effective pain relief medication.

18.     VIOXX is a cyclo-oxygenese-2-specific inhibitor. VIOXX is a non-steroidal anti-inflammatory drug that exhibits anti-inflammatory, analgesic and antipyretic activities in

6

animal models.  The mechanism of action of VIOXX is believed to be due to inhibitors of prostaglandin synthesis, via inhibition of cyclo-oxygenese-2 (Cox-2) (commonly referred to as Cox-2 inhibitor).

19.     VIOXX has been widely advertised by the Defendants as an effective pain reliever.

20.     Ibuprofen is a widely used drug to reduce pain and inflammation.  It is estimated that Ibuprofen sales exceed $10 billion per year.  A major side effect of Ibuprofen is gastrointestinal in nature.  Defendant MERCK & COMPANY, INC. endeavored to develop a drug with pain relieving and anti-inflammatory qualities that would not harm the user's stomach.  Defendant MERCK & COMPANY, INC. developed, tested and obtained FDA approval for VIOXX, a Cox-2 inhibitor designed to replace Ibuprofen.

21.     Defendant MERCK & COMPANY, INC. made filing(s) with the United States Food and Drug Administration in the United States for the approval of VIOXX for consumer use in the United States.

22.     VIOXX (and Cox-2 inhibitors) have been linked to several severe and life threatening medical disorders including, but not limited to, edema, changes in blood pressure, heart attack, stroke, seizures, kidney and liver damage, pregnancy complications, DVT, death and others.

23.     Evidence linking the subject drug formulations to significant edema, serious cardiovascular events, and death has been noted and reported in a large study that was sponsored by Defendant MERCK & COMPANY, INC. in 2000.  These known material risks were not disclosed to or shared with Plaintiffs by any Defendant.

24.     Defendants' strategy beginning in the 1990's has been to aggressively market and sell these products by falsely misleading potential users about the products and by failing to

7

protect users from serious dangers which Defendant knew or should have known to result from use of these products.

25.     Defendants widely and successfully marketed VIOXX in the United States by undertaking an advertising blitz extolling the virtues of VIOXX in order to induce widespread use of the products. The marketing campaign consisted of advertisements, promotional literature to be placed in the offices of doctors and other healthcare providers, and other promotional materials provided to potential VIOXX users.

26.     The advertising program, as a whole, sought to create the image, impression and belief by consumers and physicians that VIOXX was safe for human use, had fewer side effects and adverse reactions than other pain relief medications and would not interfere with daily life, even though the Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true.

27.     Defendants and each of them, including DETAILERS, purposefully downplayed and understated the health hazards and risks associated with VIOXX. Defendants, through promotional literature, deceived potential users (or their prescribing physicians) of VIOXX by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects. Defendants concealed material relevant information from potential VIOXX users and minimized user and prescriber concern regarding the safety of VIOXX. In addition, Defendants used economic incentives and severe economic pressure with certain doctors to induce these doctors to prescribe VIOXX.

28.     In particular, in the materials produced by Defendants, Defendants falsely misrepresented the severity, frequency and nature of adverse health effects caused by

8

VIOXX, and falsely represented that adequate testing had been conducted concerning

VIOXX.

29.    As a result of the Defendants' advertising and marketing efforts, and representations

concerning the subject products, the drugs were and are pervasively prescribed throughout the

United States.

## FIRST CAUSE OF ACTION

**(Strict Liability – Failure to Warn and Design Defect-Defendant
MERCK & COMPANY, INC.; Defendant, PMSI , INC. d/b/a Florida, PMSI
Inc., Defendant DETAILERS; ROES and DOES 1 through 100, inclusive; ROE
INDIVIDUAL PHARMACISTS)**

30.    Plaintiffs incorporate by reference herein the above Paragraphs as though fully set

forth herein.

31.    The drug product previously described was defective at the time of its design,

manufacture, testing, production, inspection, endorsement, prescription, sale and distribution,

including lack of warnings or consumer information at the time it was placed in the stream of

commerce, in that, and not by way of limitation, said product was inherently unreasonably

dangerous and defective in design and its warnings, instructions and directions failed to warn

of the dangerous and defective propensities of said product when used by the consumer as

intended; such defective and dangerous propensities were known or reasonably scientifically

knowable to Defendants.  The Defendants, and each of them, knew or should have known of

the defective condition, characteristics and risks associated with said product, as previously

set forth herein.

32.    At al times herein mentioned, the aforementioned product was defective, and

Defendants, and each of them, knew that the product was to be used by the consumer

(Plaintiffs herein) without inspection for defects therein.  Moreover, Plaintiffs neither knew,

nor had reason to know at the time of the use of the subject products, of the existence of the

9

MAINOR EGLET COTTLE

aforementioned defects. In addition, the subject product was more dangerous than expected by the ordinary consumer when used as intended by Defendants or when used in a reasonably foreseeable manner.

33.     As a direct and proximate result of the aforesaid failure to warn and design defect, Plaintiffs, and each of them, were injured in their health, strength and activity, sustained injury to their bodies and shock and injury to their nervous systems and persons, all of which have caused and will continue to cause the Plaintiffs physical, mental and nervous pain and suffering.

34.     As a direct and proximate result of the aforesaid failure to warn and design defect, Plaintiffs, and each of them, have incurred medical expenses, possible future medical expenses, loss of earnings, loss of future earning capacity, loss of household services, loss of future household services, and loss of enjoyment of life, all to Plaintiffs' general and special damages in an amount in excess of TEN THOUSAND DOLLARS ($10,000.00).

## SECOND CAUSE OF ACTION

### (Negligence - Defendant MERCK & COMPANY, INC.; ROES and DOES 1 through 50, inclusive)

35.     Plaintiffs incorporate by reference herein the above Paragraphs as though fully set forth herein.

36.     At all times herein mentioned, Defendants, and each of them, had a duty to properly design, formulate, compound, manufacture, test, produce, process, assemble, inspect, research, distribute, market, label, package, prepare for use, sell, prescribe, consult, and adequately warn of the risks and dangers of the aforementioned product.

37.     At all times herein mentioned, Defendants, and each of them, negligently and carelessly breached their respective duties when they manufactured, designed, formulated, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled,

10

packaged, consulted or failed to consult, prepared for use and sold the aforementioned defective and dangerous products and failed to adequately test and warn of the risks and dangers of the aforementioned products.

38.     As a direct and proximate result of the aforesaid negligence, Plaintiffs, and each of them, were injured in their health, strength and activity, sustained injury to their bodies and shock and injury to their nervous systems and persons, all of which have caused and will continue to cause the Plaintiffs physical, mental and nervous pain and suffering.

39.     As a direct and proximate result of the aforesaid negligence, Plaintiffs, have incurred medical expenses, possible future medical expenses, loss of earnings, loss of future earning capacity, loss of household services, loss of future household services, and loss of enjoyment of life, all to Plaintiffs' general and special damages in an amount in excess of TEN THOUSAND DOLLARS ($10,000.00).

## THIRD CAUSE OF ACTION

### (Negligence Per Se - Defendant MERCK & COMPANY, INC.; ROES and DOES 1 through 50, inclusive)

40.     Plaintiffs incorporate by reference herein the above Paragraphs as though fully set forth herein.

41.     At all times herein mentioned, Defendants, and each of them, had a duty and obligation not to violate the law in the design, formulation, compounding, manufacture, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, distributing, consulting, sale and warning of the risks and dangers of the aforementioned products.

42.     At all times herein mentioned, Defendants, and each of them, violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. Section 301, et seq., related amendments and codes

11

and federal regulations provided thereunder, and other applicable laws, statutes and regulations.

43.     Plaintiffs, as purchasers and consumers of the products, are within the class of persons the statutes and regulations described above are designed to protect, and Plaintiffs' injuries are the type of harm these statutes are designed to prevent.

44.     Defendants breached their statutory duty when they failed to comply with the minimum requirements of the following statutes and regulations, which were intended for the benefit of individuals such as Plaintiffs, making Defendants negligent per se.

45.     The labeling lacked adequate information the use of VIOXX, even though the Defendants were aware of the widespread use of the VIOXX. [21 C.F.R. Section 201.56(a) and (d)].

46.     The labeling lacked adequate information on the approximate kind, degree and duration of expected improvement, alone or in combination in violation of 21 C.F.R. Section 201.57(c)(3)(I).

47.     The labeling did not state that there was a lack of evidence to support the common belief of the safety and advocacy of VIOXX [21 C.F.R. 201.57(c)(3)(I) and (iv) and (c)(2)].

48.     The labeling failed to add warnings for serious cardiovascular events and death as soon as there was reasonable evidence of their association with the drug. [21 C.F.R. 201.57(e)].

49.     There was inadequate information for patients for the safe and effective use of Defendants' drugs, in violation of 21 C.F.R. 201.57(f)(2).

50.     There was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Defendants' drugs in violation of 21 C.F.R. 201.57(f)(1).

51.     The labeling was misleading promotion in violation of 21 C.F.R. 201.56(b).

MAINOR EGLET COTTLE

52.     As a direct and proximate result of the aforesaid breach by Defendants of their statutory duties and obligations and statutory violations, Plaintiffs, and each of them, were injured in their health, strength and activity, sustained injury to their bodies and shock and injury to their nervous systems and persons, all of which have caused and will continue to cause the Plaintiffs' physical, mental and nervous pain and suffering.

53.     As a direct and proximate result of the aforesaid negligence, Plaintiffs, have incurred medical expenses, possible future medical expenses, loss of earnings, loss of future earning capacity, loss of household services,  loss of future household services, and loss of enjoyment of life, all to Plaintiffs' general and special damages in an amount in excess of TEN THOUSAND DOLLARS ($10,000.00).

### FOURTH CAUSE OF ACTION

**(Breach of Implied Warranty - Defendant MERCK & COMPANY, INC.; Defendant, PMSI , INC. d/b/a Florida, PMSI Inc., Defendant DETAILERS; ROES and DOES 1 through 100, inclusive; ROE INDIVIDUAL PHARMACISTS)**

54.     Plaintiffs incorporate by reference herein the above Paragraphs as though fully set forth herein.

55.     Prior to the time that the aforementioned products were used by Plaintiffs, Defendants, and each of them, impliedly warranted to Plaintiffs and Plaintiff's agents and physicians that said products were of merchantable quality and safe and fit for the use for which they were intended.

56.     Plaintiffs were and are unskilled in the research, design and manufacture of the aforementioned products and reasonably relied entirely on the skill, judgment and implied warranty of the Defendants in using the aforementioned products.

57.   The aforementioned products were neither safe and/or fit for their intended use nor of merchantable quality, as warranted by Defendants, in that they had dangerous propensities when put to their intended use and would cause severe injuries to the user.

58.   As a direct and proximate result of the aforesaid breach of implied warranty, Plaintiffs, and each of them, were injured in their health, strength and activity, sustained injury to their bodies and shock and injury to their nervous systems and persons, all of which have caused and will continue to cause the Plaintiffs physical, mental and nervous pain and suffering.

59.   As a direct and proximate result of the aforesaid breach of implied warranty, Plaintiffs, have incurred medical expenses, possible future medical expenses, loss of earnings, loss of future earning capacity, loss of household services, loss of future household services, and loss of enjoyment of life, all to Plaintiffs' general and special damages in an amount in excess of TEN THOUSAND DOLLARS ($10,000.00).

## FIFTH CAUSE OF ACTION

### (Breach of Express Warranty - Defendant MERCK & COMPANY, INC.; Defendant DETAILERS; ROES and DOES 1 through 50, inclusive)

60.   Plaintiffs incorporate by reference herein the above Paragraphs as though fully set forth herein.

61.   At all times herein mentioned, Defendants expressly warranted to Plaintiffs and Plaintiffs' agents and physicians, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that the aforementioned products were safe, effective, fit and proper for their intended use.

62.   In utilizing the aforementioned products, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of the Defendants, and each of them. Said warranties and representations were false in that the aforementioned products were

14

dangerously defective, not safe and were unfit for the uses for which they were intended. By reason of the same facts Defendants breached the express warranties contained in the oral and written express warranties.

63.     As a direct and proximate result of the aforesaid breach of express warranty, Plaintiffs, and each of them, were injured in their health, strength and activity, sustained injury to their bodies and shock and injury to their nervous systems and persons, all of which have caused and will continue to cause the Plaintiffs physical, mental and nervous pain and suffering.

64.     As a direct and proximate result of the aforesaid breach of express warranty, Plaintiffs, have incurred medical expenses, possible future medical expenses, loss of earnings, loss of future earning capacity, loss of household services, loss of future household services, and loss of enjoyment of life, all to Plaintiffs' general and special damages in an amount in excess of TEN THOUSAND DOLLARS ($10,000.00).

## SIXTH CAUSE OF ACTION

### (Deceit by Concealment - Defendant MERCK & COMPANY, INC.; DETAILERS; ROES and DOES 1 through 50, inclusive)

65.     Plaintiffs incorporate by reference herein the above Paragraphs as though fully set forth herein.

66.     Defendants, and each of them, from the time that the aforementioned products were first manufactured, marketed and distributed, and up to the present, willfully deceived Plaintiffs by concealing from the Plaintiffs, Plaintiffs' physicians and the general public, the true facts concerning said pharmaceutical products, which the Defendants, as manufacturers, marketers and distributors of the products, had a duty to disclose.

67.     As set forth above, Defendant MERCK & COMPANY, INC. sponsored a large study which concluded, among other findings, that patients taking VIOXX had four times the risk of heart attacks and that the risk appears to increase over time.

15

68.     As set forth above, Defendant MERCK & COMPANY, INC. received letters from the Department of Health and Human Services in December of 1999, stating that it had been determined that the promotional information utilized by Defendant MERCK & COMPANY, INC. was false and misleading because it contained misrepresentations of VIOXX's safety profile, unsubstantiated comparative claims, and was lacking in fair balance.

69.     At all times herein mentioned, Defendants, and each of them, conducted a sales and marketing campaign to promote the sale of the aforementioned drug products and willfully deceived Plaintiffs, Plaintiffs' physicians and the general public as to the health risks and consequences of the use of the aforementioned products. Defendants, and each of them, were aware of the foregoing, and that the aforementioned products were not safe, fit and effective for human consumption, that the use of said products is hazardous to health, and that said products have a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiffs.

70.     The Defendants intentionally concealed and suppressed the true facts concerning said pharmaceutical products with the intent to defraud and deceive Plaintiffs, in that the Defendants knew that Plaintiffs' physicians would not prescribe the subject products, and Plaintiffs would not have used the subject products, if they were aware of the true facts concerning the dangers of said product. Plaintiffs relied upon the Defendants' intentional false and misleading representations to the Plaintiffs' detriment and physical injury.

71.     As a direct and proximate result of the aforesaid deceit by concealment, Plaintiffs, and each of them, were injured in their health, strength and activity, sustained injury to their bodies and shock and injury to their nervous systems and persons, all of which have caused and will continue to cause the Plaintiffs physical, mental and nervous pain and suffering.

72.     As a direct and proximate result of the aforesaid deceit by concealment, Plaintiffs,

have incurred medical expenses, possible future medical expenses, loss of earnings, loss of future earning capacity, loss of household services, loss of future household services, and loss of enjoyment of life, all to Plaintiffs' general and special damages in an amount in excess of TEN THOUSAND DOLLARS ($10,000.00).

73.     That the aforesaid intentional and deceptive acts on the part of Defendants constitute malice, fraud, oppression, and a conscious disregard of known safety procedures, and hereby entitle the Plaintiffs to punitive damages against the Defendants, and each of them.

## SEVENTH CAUSE OF ACTION

### (Negligent Misrepresentation - Defendant MERCK & COMPANY, INC.; Defendant DETAILERS; ROES and DOES 1 through 50, inclusive)

74.     Plaintiffs incorporate by reference herein the above Paragraphs as though fully set forth herein.

75.     Defendants, and each of them, had a duty and obligation to fairly and accurately represent the risks and benefits of the subject product, both the known risks and benefits, and/or with reasonable diligence the risks and benefits that should be known; from the time that the aforementioned products were first manufactured, marketed and distributed, and up to the present, made false representations, as previously set forth herein, to Plaintiffs, Plaintiffs' physicians and the general public, including but not limited to the misrepresentation that said pharmaceutical product was safe, fit and effective for human consumption. At all times herein mentioned, Defendants, and each of them, conducted a sales and marketing campaign to promote the sale of the aforementioned drug products and willfully deceived Plaintiffs, Plaintiffs' physicians and the general public as to the health risks and consequences of the use of the aforementioned products.

17

76.     The Defendants made the foregoing representation without any reasonable ground for believing them to be true.  These representations were made directly by Defendants, by sales representatives and other authorized agents of said Defendants, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance and the prescription, purchase and use of the subject product.

77.     The foregoing representations by the Defendants, and each of them, were in fact false, in that the aforementioned products were not safe, fit and effective for human consumption, the use of said products is hazardous to health, and said products have a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiffs as delineated herein.

78.     The foregoing representations by Defendants, and each of them, were made with the intention of inducing reliance on the prescription, purchase and use of the subject product.

79.     In reliance on the misrepresentations by the Defendants, and each of them, Plaintiffs were induced to purchase and use the aforementioned products.  If Plaintiffs had known of the true facts concealed by the Defendants, Plaintiffs would not have used the subject product. The reliance of Plaintiffs upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities who were in a position of trust and/or to know the true facts.

80.     As a direct and proximate result of the aforesaid deceit by negligent misrepresentation, Plaintiffs, and each of them, were injured in their health, strength and activity, sustained injury to their bodies and shock and injury to their nervous systems and persons, all of which have caused and will continue to cause the Plaintiffs physical, mental and nervous pain and suffering.

81.     As a direct and proximate result of the aforesaid deceit by negligent misrepresentation,

Plaintiffs, have incurred medical expenses, possible future medical expenses, loss of earnings, loss of future earning capacity, loss of household services, loss of future household services, and loss of enjoyment of life, all to Plaintiffs' general and special damages in an amount in excess of TEN THOUSAND DOLLARS ($10,000.00).

## EIGHTH CAUSE OF ACTION

**(Loss of Consortium – Plaintiff SHUSHANIK KOPALYAN-Defendant MERCK & COMPANY, INC.; Defendant ASTRAL PHARMACY; Defendant DETAILERS; ROES and DOES 1 through 100, inclusive; ROE INDIVIDUAL PHARMACISTS)**

82.     Plaintiffs incorporate by reference herein the above Paragraphs as though fully set forth herein.

83.     Plaintiff SHUSHANIK KOPALYAN, as the lawful wife of Plaintiff DANIEL KOPALYAN was and is entitled to the society, comfort, affection, services, companionship and consortium of her husband, DANIEL KOPALYAN.

84.     That as a direct and proximate results of the acts and/or omissions of the DEFENDANTS, and each of them, Plaintiff SHUSHANIK KOPALYAN has been denied the society, comfort, affection, services, companionship and consortium of her husband, DANIEL KOPALYAN, all to her general damages in excess of TEN THOUSAND DOLLARS ($10,000.00).

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.     For past and future general damages, according to proof;

2.     For past and future medical and incidental expenses, according to proof;

3.     For past and future loss of earnings and/or earning capacity, according to proof;

4.     For future medical monitoring costs, according to proof;

19

5.    For past and future mental and emotional distress, according to proof;

6.    For loss of consortium, companionship, society and comfort;

7.    For punitive and exemplary damages in an amount to be determined at trial;

8.    For a disgorgement of profits, according to proof;

9.    For injunctive relief, enjoining Defendants from the acts of unfair competition and untrue and misleading advertising;

10.   For past and future costs of suit incurred herein;

11.   For reasonable attorneys fees;

12.   For prejudgment interest on all damages as is allowed by law;

13.   For such other and further relief as the Court deems just and proper.

Dated this ___ day of March, 2007.

By: _____
ROBERT W. COTTLE, ESQ.
Nevada Bar No. 4576
ROBERT T. EGLET, ESQ.
Nevada Bar No. 3402
DAVID A. TANNER, ESQ.
Nevada Bar No. 8282
**MAINOR EGLET COTTLE**
400 South Fourth Street, Suite 600
Las Vegas, NV 89101
(702) 450-54-00
Attorney for Plaintiffs

20

# AFFIRMATION
## Pursuant to NRS 239B.030

The undersigned does hereby affirm that the preceding  Complaint  filed in District Court Case No. _____

X   Does not contain the social security number of any person.

-OR-

Contains the social security number of a person as required by:

A:     A specific state or federal law, to wit:

_____

(State specific law)

-OR-

B:     For the administration of a public program or for an application for a federal or state grant.

Aaron M. O'Brien, Esq.
Attorney for Plaintiff

Date: March 15, 2007

MAINOR EGLET COTTLE