# EXHIBIT A

# EXHIBIT A

1 | MORRIS PICKERING PETERSON & TRACHOK
Kristina Pickering, No. 992
2 | Denise Barton, No. 5579
Robert R. McCoy, No. 9121
3 | 900 Bank of America Plaza
4 | 300 South Fourth Street
Las Vegas, Nevada 89101
5 | Telephone:  (702) 474-9400
Facsimile:  (702) 474-9422
6

Attorneys for Defendant
7 | Merck & Co., Inc.

8

9 | IN THE UNITED STATES DISTRICT COURT

10 | DISTRICT OF NEVADA

11 | ALBERTINE AVANT, a Nevada resident;  )   Case No. 2:06-cv-01313-RCJ-PAL
JOE CAVIN, a Nevada resident; ERNEST  )
12 | MACIAS, a Nevada resident; GLORIA  )
MACIAS, a Nevada resident; LYNELL  )
13 | MICHELS, a Nevada resident,  )
 )
14 | )
               Plaintiffs,  )
15 | vs.  )
 )
16 | MERCK & COMPANY, INC., a  )   **OPPOSITION TO PLAINTIFFS'**
corporation; AMERICAN DRUG STORES,  )   **MOTION TO REMAND**
17 | INC.; AMERICAN DRUG STORES, INC.,  )
d/b/a SAV-ON ; ALBERTSON'S, INC.;  )
18 | ALBERTSON'S, INC., d/b/a SAV-ON;  )
AMERICAN DRUG STORES, LLC; NEW  )
19 | ALBERTSON'S, INC.; ALBERTSON'S,  )
LLC; SUPERVALU, INC.; LISA DAVIS, a  )
20 | Nevada resident; MISTY KUPERMAN, a  )
Nevada resident; RICKY GULATI, a  )
21 | Nevada resident; FRED AVUENE; a  )
Nevada resident; SERGE BRUNRY, a  )
22 | Nevada resident; DEBBIE LEE, a Nevada  )
resident; KAREN SHOUSE, a Nevada  )
23 | resident; NANCY MOREDOCK, a Nevada )
resident; JERRY SHAW, a Nevada  )
24 | resident; KERRY EDWARDS, a Nevada  )
resident; TINA DIMORE, a Nevada  )
25 | resident TRACEY PHILLIPI, a Nevada  )
resident; JULIE WURCH, a Nevada  )
26 | resident; LADON SILVEA, a Nevada  )
27 | resident; ROE INDIVIDUAL  )
28 | PHARMACISTS 1 TO 50; ROE BUSINESS  )

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

ENTITIES 1 TO 100, inclusive, and DOES 1 )
to 50, inclusive,                         )
                                          )
                    Defendants.           )
_____ )

As set forth below and in Merck's pending motion to stay (#5), the Court should stay this case and defer ruling on plaintiffs' motion to remand pending transfer of this case to *In re Vioxx Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 1657, the multidistrict litigation ("MDL") proceeding that has been established in the Eastern District of Louisiana to coordinate all product liability cases involving alleged health risks allegedly associated with Vioxx®. That was the course taken by several judges in this District in previously-pending Vioxx cases, is the course taken by most courts facing remand motions in the Vioxx litigation, and it is the course preferred both by the MDL judge and the Judicial Panel on Multidistrict Litigation ("MDL Panel").

If the Court does consider plaintiffs' motion prior to transfer, however, it should be denied because complete diversity exists between plaintiffs and Merck, the only properly joined defendant, and the amount in controversy, exclusive of interest and costs, exceeds $75,000. While *some* of the named defendants are citizens of Nevada, they were fraudulently joined as defendants solely to defeat diversity jurisdiction and their citizenship should therefore be ignored.

I.    **INTRODUCTION AND BACKGROUND**

This is one of numerous lawsuits that have been filed in federal and state courts across the country involving Vioxx, a prescription pharmaceutical drug that Merck voluntarily withdrew from the market on September 30, 2004. Thirty-eight virtually identical Vioxx cases have been filed in Nevada state courts in Clark and Washoe Counties, including twelve other multi-plaintiff cases removed concurrently with this one.

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1    On February 16, 2005, the MDL Panel established an MDL

2 proceeding in the Eastern District of Louisiana (Judge Eldon E. Fallon) for

3 pretrial coordination of Vioxx cases. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp.

4 2d 1352, 1353-54 (J.P.M.L. 2005). Since the designation of the MDL, hundreds of

5 cases have been transferred to it, including at least four cases that, like this one,

6 were removed from Nevada state courts on the basis of fraudulent joinder of

7 Merck's professional representatives as defendants and thereafter transferred to

8 the MDL. *See Carlson v. Merck & Co., Inc.* (CV-S-05-0599-KJD-PAL); *Morrison v.*

9 *Merck & Co., Inc.* (CV-S-05-0627-KJD-LRL); *Himmel v. Merck & Co., Inc.*

10 (CV-N-05-0334-ECR-VPC); *Regan v. Merck & Co., Inc.* (CV-N-05-0336-ECR-

11 RAM).[1] The MDL Panel recently issued a conditional order transferring this case

12 to the MDL proceeding. Ex. A, Conditional Transfer Order 72, *In re Vioxx*

13 *Marketing, Sales Practices and Prods. Liab. Litig.* (J.P.M.L. 2006).[2]

14    In this case, plaintiffs' counsel has predictably sought to avoid

15 removal by including general and conclusory allegations in the complaint against

16 fourteen of Merck's current or former professional representatives, at least three

17

18    [1] In addition, in *Baker v. Merck & Co., Inc.* (CV-S-05-0625-RCJ-RJJ), this
19 Court severed two plaintiffs and retained jurisdiction over them before
   remanding the remaining plaintiffs. The two severed plaintiffs were ultimately
20 transferred to the MDL.

21    [2] Because plaintiffs objected to transfer within the 15-day period set forth
   in Judicial Panel on Multidistrict Litigation Rule of Procedure 7.4(c), there is a
22 separate procedure for filing papers objecting to the transfer with the MDL Panel.
   The issue as to whether the case should be transferred will be set for the next
23 available Panel hearing session. Given the overlapping factual issues this case
   appears to have with those already in the MDL proceedings, any opposition
24 would almost certainly be futile for the reasons outlined in Merck's motion to
   stay. *See* Mot. to Stay (#5), pp. 5-6 n.3. In point of fact, the MDL Panel denied
25 motions to vacate a conditional transfer order brought by plaintiffs in the other
   Vioxx-related cases previously pending in this District (even though motions to
26 remand were pending in both cases) and ordered both cases transferred to the
   MDL. *See* Ex. B, Transfer Order, *In re Vioxx Prods. Liab. Litig.* (J.P.M.L. Dec. 2,
27 2005) (rejecting plaintiffs' argument that "individual and/or local questions of
   fact as well as different legal theories" means that case should not be transferred
28 to MDL proceeding for consideration of motion to remand).

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
DOG BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-0400
FAX 702/474-9422

3

1 │ of whom are not even Nevada residents. *See Morongo Band of Mission Indians v.*

2 │ *Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (diversity is

3 │ determined by citizenship of parties as of filing of the original complaint and not

4 │ before); Not. of Removal (#1), ¶ 12. The complaint contains no specific allegations

5 │ as to who, if any, among these fourteen opportunistically joined professional

6 │ representatives had contact with any of these plaintiff's Vioxx-prescribing

7 │ physician—if indeed any of them did at all.[3]

8 │        The Court should not allow these manipulative pleading tactics to

9 │ defeat Merck's congressionally assured right to removal. *See McKinney v. Bd. of*

10 │ *Md. Comm. College*, 955 F.2d 924, 928 (4th Cir. 1992) ("Congress created the

11 │ removal process to protect defendants. It did not extend such protection with

12 │ one hand, and with the other give plaintiffs a bag of tricks to overcome it."); 28

13 │ U.S.C. § 1441 (instructing courts to focus on the citizenship of *only* those

14 │ defendants who have been "*properly* joined and served" in determining whether

15 │ diversity and removal jurisdiction exists). Instead, it should stay decision on

16 │ remand pending transfer for decision in the MDL court. Alternatively, if the

17 │ Court decides to rule on the motion, it should conclude that the omnibus joinder

18 │ of the non-diverse defendants in this case is fraudulent and should be

19 │ disregarded in evaluating removal and diversity jurisdiction.

20 │ **II.   ARGUMENT**

21 │     **A.   The Court Should Defer Consideration of Plaintiffs' Remand**
22 │         **Motion Pending MDL Transfer.**

23 │        Both the MDL Panel and Judge Fallon, who is presiding over the

24 │ Vioxx MDL proceeding in the Eastern District of Louisiana, have expressed their

25 │

26 │ _____

27 │    [3] Plaintiffs also named several pharmacies as defendants, but the joinder of
    those pharmacies is not at issue in determining diversity jurisdiction because
28 │ none are Nevada residents, and are thus completely diverse from plaintiffs. *See*
    p. 12, *infra.*

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

4

1   preference that overlapping remand motions be presented to the MDL court for

2   coordinated treatment.  As Judge Fallon explained:

3           There are various issues of remand in various cases
            throughout the country.  Again, a significant advantage
4           of the MDL concept is some consistency.  The Rule of
            Law is really based on consistency.  If different
5           decisions are made by numerous judges, then you have
            no consistency and no predictability. . . . It's easier if
6           one court decides some of these matters than if 50 or 100
7           courts decide the matter.

8           I'm conscious of dealing with the remand [motions] as
            quickly as possible, but I do want to get them all
9           together . . . and deal with that issue in a consistent and
            fair fashion.
10

11  Tr. of Status Conference Before the Hon. Eldon E. Fallon, at 21, *In re VIOXX*

12  *Prods. Liab. Litig.*, MDL No. 1657 (June 23, 2005) (attached as Exhibit C).  *See also*

13  Letter dated July 25, 2006, from MDL Panel to Hon. Philip M. Pro (Exhibit D)

14  ("wait[ing] until the Panel has decided the transfer issue . . . may be especially

15  appropriate if the [remand] motion raises questions likely to arise in other actions

16  in the transferee court and, in the interest of uniformity, might best be decided

17  there if the Panel orders centralization").

18           Judge Fallon's concerns are consistent with the majority view—*i.e.*,

19  that the best way to ensure that MDL proceedings can achieve their statutory

20  goal of efficient, coordinated proceedings is by staying litigation pending transfer

21  to the MDL court, including the consideration of remand motions.  This is

22  particularly true where, as here, the issues raised by plaintiffs' remand motion

23  are similar to those raised in other cases likely to be transferred to the same MDL

24  proceeding.  *See, e.g., McCrerey v. Merck & Co., Inc.*, Civ. No. 04-2576 WQH

25  (Wmc), slip op. at 5 (S.D. Cal. Mar. 2, 2005) (staying proceedings "for judicial

26  economy and consistency purposes" and finding "that the jurisdictional issues

27  raised in the Motion to Remand can be decided either by the MDL, or post

28  transfer decision by the MDL") (attached as Exhibit E); *Pace v. Merck & Co., Inc.*,

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

5

1 │ No CIV 04-1356 MCA/ACT, slip op. at 3 (D.N.M. Jan. 10, 2005) (staying

2 │ proceedings despite pending motion to remand because of "significant risk of

3 │ duplicative motion practice and redundant discovery" from "more than 100

4 │ separate or similar actions [that] are currently pending against Merck") (attached

5 │ as Exhibit F).

6 │         This is why several judges in this District have deferred decision on

7 │ identical motions to remand in other previously pending Vioxx cases. For

8 │ example, just a few months ago, Judge Dawson granted Merck's motion to stay

9 │ (despite plaintiffs' pending motion to remand) in another Nevada Vioxx case

10 │ involving the exact same fraudulently joined defendants: .

11 │         The hundreds of Vioxx cases currently pending before
   │         MDL 1657 present similar factual and legal issues
12 │         regarding both the effects of Vioxx and remand issues
   │         such as fraudulent joinder. Because MDL 1657 is
13 │         gaining ample experience examining the relevant facts
   │         for fraudulent joinder analysis, the interests of
14 │         consistency, economy and fairness support their
15 │         addressing the present remand issue.

16 │ *Mangani v. Merck & Co., Inc.*, CV-S-06-0914-KJD-PAL, slip op. at 3 (D. Nev. 2006)

17 │ (same) (attached as Exhibit G). Without expressly granting Merck's motion to

18 │ stay, Judge Dawson reached the same conclusion in two other Vioxx

19 │ cases—*Carlson v. Merck & Co., Inc.* (CV-S-05-0599-KJD-PAL) and *Morrison v.*

20 │ *Merck & Co., Inc.* (CV-S-05-0627-KJD-LRL)—deferring ruling on plaintiffs' motion

21 │ to remand allowing the MDL Panel to consider (and deny) plaintiffs' motion to

22 │ vacate the conditional transfer order and, ultimately, transfer the cases. Judge

23 │ Reed also granted Merck's motion to stay in the two Vioxx cases that were

24 │ pending before him—*Himmel* and *Regan* (cited *supra*). *See* Mot. to Stay, pp. 7-8.

25 │         Just like in these five cases, deferral of plaintiffs' motion to remand

26 │ and other proceedings is *particularly appropriate in this case for two reasons.*

27 │ First, the fraudulent joinder issues implicated by plaintiffs' motion to remand are

28 │ being raised in other Vioxx cases from around the country that have already been

MORRIS PICKERING
PETERSON B TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

6

1  transferred to the MDL proceeding, including a dozen other cases removed

2  concurrently with this one that, like *Mangani, Carlson, Morrison, Himmel,* and

3  *Regan*, were filed in Nevada state courts against the very same professional

4  representatives. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (transfer to MDL court is

5  appropriate where same "jurisdictional issue in question is easily capable of

6  arising in hundreds or even thousands of cases in district courts throughout the

7  nation"); *Benjamin v. Bayer Corp.*, No. 02-0886, 2002 WL 1009475, at *1 (E.D. La.

8  May 16, 2002) ("[B]ecause the issues involved in this remand are likely to be

9  common to other transferred cases, the policies of efficiency and consistency of

10 pre-trial rulings are furthered by a stay of the proceedings."); *Aikins v. Microsoft*

11 *Corp.*, No. Civ. A. 00-0242, 2000 WL 310391, at *1 (E.D. La. Mar. 24, 2000)

12 (granting motion to stay pending transfer to MDL court despite pending motion

13 to remand because "the same jurisdictional questions raised [in motion to

14 remand] will likely be raised in many of the other cases pending against

15 Microsoft").

16         Second, plaintiffs' motion to remand should be deferred because the

17 factual connection between plaintiffs and the non-diverse defendants is dubious

18 (or non-existent) and warrants jurisdictional discovery. The complaint does not

19 specify which of the named professional representatives might have called on

20 any of the individual plaintiff's prescribing physician (and whether the resulting

21 claims run to the non-diverse or diverse professional representative defendants).

22 Instead, it is clear that some defendants are named only because of allegations

23 relating to a single individual plaintiff, and that some of the plaintiffs may have

24 no allegations running against any non-diverse defendant, or any defendant at all

25 other than Merck. For example, the complaint acknowledges that as few as one

26 of the fourteen professional representatives named as defendants actually has

27 allegations running from plaintiffs (or perhaps no more than a single plaintiff).

28 Compl., ¶ 11 ("[O]ne or more of the individual detailers" promoted Vioxx to

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

7

1  plaintiffs' Vioxx-prescribing physicians).  Moreover, three of the professional
2  representatives named as defendants are not even citizens of Nevada.  Not. of
3  Removal (#1), ¶ 12.

4          What results is a tangled web of individual plaintiffs on one side,
5  each of whose individual allegations may or may not run to different defendants
6  (only some of whom destroy diversity) on the other side.  By jumbling together
7  these unrelated claims in one complaint, making most allegations against
8  "defendants" generally, and not specifying where each plaintiff purchased Vioxx
9  or by whom it was prescribed, plaintiffs seek to confuse reasoned analysis of
10  each individual plaintiff's claims against the named defendants and the effect (or
11  lack thereof) of each such claim on diversity jurisdiction.

12          When this plaintiff-created jurisdictional tangle is sorted out, it is
13  likely that the named professional representatives never had *any* contact with one
14  or more of these plaintiffs' Vioxx-prescribing physicians.  For example, in two
15  other Vioxx cases in this District that were removed concurrently with this one,
16  early discovery materials produced by plaintiffs' counsel (responses to the
17  Plaintiff Fact Sheet) allowed Merck to search its records and determine that
18  several of the plaintiffs' Vioxx-prescribing physicians never had *any* contact with
19  any of the fourteen professional representatives named as defendants in that
20  case.  For example, in *Mayfield v. Merck & Co., Inc.* (2:06-cv-1328-PMP-LRL) only
21  two of the five plaintiffs' Vioxx-prescribing physicians ever were called on by one
22  of the professional representatives named as defendants in this case, meaning
23  that the other three plaintiffs have *no possible factual claim against any non-diverse*
24  *defendant.*[4]  Likewise, in *Wyman v. Merck & Co., Inc.* (2:06-cv-1329-RCJ-GWF), one
25  plaintiff's Vioxx-prescribing physician never had any contact with any of the
26
27

28          [4] Declarations establishing these facts will shortly be submitted in support
of the oppositions to the pending motions to remand in those two cases.

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

8

1   professional representatives named as defendants.[5]  Because these plaintiffs have

2   no possible claim against a non-diverse defendant—since no such defendants

3   ever promoted Vioxx to those plaintiffs' Vioxx-prescribing physicians—diversity

4   jurisdiction is clearly established as to these plaintiffs.

5          This result is identical to results in other Vioxx-related cases that

6   were previously pending in this Court.  *See Baker v. Merck & Co., Inc., supra.*  In

7   that case, this Court ordered plaintiffs to produce the names of their Vioxx-

8   prescribing physician(s) to Merck, and allowed Merck time to query its records to

9   determine if any of those physicians were called on by the professional

10  representatives named as defendants. Ex. H, Order (#35), p. 2.  The specification

11  that followed showed that some of the plaintiffs had never been prescribed Vioxx

12  by any Nevada physician and that many of the named non-diverse defendants

13  were not proper parties defendant to particular plaintiffs' claims. *Id.*  Given the

14  names of each plaintiff's prescribing physician and the relevant prescription

15  dates, Merck was able to link the plaintiffs to the prescriber to a professional

16  representative defendant and the Court was able to determine the jurisdictional

17  issue presented precisely, severing and transferring some claims and remanding

18  others. *Id.* at pp. 4-5. The same sort of analysis should be made in this case,

19  ideally in the MDL proceeding, but if not there, in this Court.

20         This analysis cannot be accomplished yet in this case, however,

21  because these plaintiffs have not produced information identifying their Vioxx-

22  prescribing physicians and their Vioxx prescription dates.  With that information,

23  Merck can analyze its records to determine whether or not any of the

24  professional representatives named as defendants in this case had any contact

25  with these plaintiffs' Vioxx-prescribing physicians.  If there was no such contact,

26  _____

27         [5]  Both cases named the same professional representatives as defendants as
    are named this case, further supporting Merck's argument that these defendants
28  are merely opportunistically joined without any real factual investigation or
    basis.

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1  the fraudulent joinder analysis ends (and fraudulent joinder of these defendants

2  is established) because there would be no factual connection between those

3  plaintiffs' claims against the Vioxx-related conduct of the non-diverse defendants

4  named in this case.  Even if there was contact with one of the professional

5  representatives named in this case, such discovery may also show that the only

6  professional representative that called on a particular plaintiff's Vioxx-

7  prescribing physicians is not a citizen of Nevada, meaning that diversity

8  jurisdiction would still exist.

9          Defendants are entitled to some discovery into these facts proving

10  fraudulent joinder.  *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)

11  ("The defendant seeking removal to the federal court is entitled to present the

12  facts showing the joinder to be fraudulent."); *Ritchey v. Upjohn Drug Co.*, 139 F.3d

13  1313, 1318 (9th Cir. 1998) (citing *McCabe* for same); *see also Wilson v. Republic Iron*

14  *& Steel Co.*, 257 U.S. 92, 97 (1921) (a removing defendant may establish federal

15  jurisdiction by submitting evidence that a resident defendant has "no real

16  connection with the controversy"); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061,

17  1068 (9th Cir. 2001) (court may pierce the pleadings and take into consideration

18  evidence from the defendant in the form of affidavits and depositions to

19  determine whether the fraudulent joinder doctrine should be allowed to effect

20  removal to federal court); *Dacosta v. Novartis AG*, 180 F. Supp. 2d 1178,1182-83 (D.

21  Or. 2001) (removing defendants are not limited to the allegations in the

22  complaint, but rather, are entitled to demonstrate to the Court the facts proving

23  that the non-diverse defendant has been fraudulently joined).

24          Plaintiffs' scatter-shot approach of naming the same fourteen

25  professional representatives as defendants without regard to whether they

26  actually ever called on an individual plaintiff's Vioxx-prescribing physician

27  makes it all the more appropriate for the Court to stay proceedings on plaintiffs'

28  motion to remand to allow the parties to conduct limited discovery into their

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1   fraudulent joinder. *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d

2   535, 540 (9th Cir.1986) (discovery should ordinarily be granted where pertinent

3   facts bearing on the question of jurisdiction are controverted or where a more

4   satisfactory showing of the facts is necessary") (citation omitted); *Wells Fargo &*

5   *Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (district court

6   abused its discretion in refusing to grant discovery on jurisdictional issue when

7   the jurisdictional facts are contested or more facts are needed ); *Laub v. U.S. Dept.*

8   *of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (reversing district court's decision to

9   not permit discovery into subject matter jurisdiction because additional facts

10   would be helpful in evaluating jurisdiction).  Given the outside one year limit the

11   federal removal statutes set on diversity-based removals, such jurisdictional

12   discovery must, as a practical matter, be conducted before decision on remand, or

13   the year will have passed and the federally-secured right to a federal forum in

14   diversity cases lost by artful pleading.  *Compare* 28 U.S.C. § 1446(b) (providing a

15   one year outside limitation for diversity-based removal) with M. Christian,

16   *Fraudulent Joinder: A Plaintiff's Newest Procedural Device to Destroy Diversity*

17   *Jurisdiction*, Communique, pp. 32-33 (February 2005) (noting stratagem of

18   improperly joining sales representative defendants as jurisdictional spoiling

19   co-defendants and then dismissing them after the year has passed before

20   discovery has revealed the lack of factual or legal basis for their inclusion as

21   parties to the suit).

22          The MDL proceeding is the ideal place to conduct this discovery and

23   evaluate these issues.  For example, the plaintiff questionnaire form that the MDL

24   adopted asks each plaintiff to provide information that bears directly on this

25   issue: who prescribed Vioxx to them; the dates on which they started and

26   stopped taking Vioxx; and whether they received any samples of Vioxx.  *See* Ex. I,

27   Plaintiff Profile Form.  Plaintiff-specific answers and other like questions will

28   allow Merck to determine whether any of its professional representatives had

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

11

1  any contact with these physicians, assisting the fraudulent joinder analysis. As

2  shown above, it is likely that, at least to some plaintiffs, this will not be the case.

3  At a minimum, if the Court is not inclined to stay plaintiffs' motion pending

4  MDL transfer for this determination, it should at least stay decision on the

5  motion to remand pending limited discovery in this Court on this issue. This

6  Court's handling of the jurisdictional issues presented in *Baker v. Merck* (*see supra*)

7  is illustrative of this possible course.

8  **B.   Removal Is Proper in this Case Because The Nevada Defendants
9    Are Fraudulently Joined Under Nevada Law.**

10  Should the Court decide to rule on plaintiffs' motion to remand, it

11  should be denied because the Nevada defendants were fraudulently joined.[6]

12  As an initial matter, there is no basis to remand this case based on

13  the presence of any pharmacy named as a defendant because, as shown in the

14  Notice of Removal (#1), none of these pharmacy defendants are citizens of

15  Nevada.  Not. of Removal (#1), ¶ 11. Although plaintiffs devote a substantial

16  portion of their brief arguing these pharmacy defendants were properly joined,

17  *see* Mot. at 2-4, 25-30, the fraudulent joinder of these defendants was never

18  alleged (because they are all completely diverse to plaintiffs) and is not at issue in

19  this case. The presence of any such defendant does not destroy diversity

20  jurisdiction.[7]

21  Instead, the jurisdictional issue in this case concerns plaintiffs'

22  fraudulent joinder of the fourteen professional representative defendants. Under

23

24  [6]  Plaintiffs do not dispute that the $75,000 amount-in-controversy
requirement of 28 U.S.C. § 1332 is satisfied.

25  [7]  The Court should disregard the statement in plaintiffs' opening brief that
26  "Defendants Santiago and Huynh are both Nevada residents and pharmacists
that provided Vioxx to Plaintiff," *see* Mot. at 2:18-19, because these two
27  individuals are not named as defendants in this case. These two individuals
were, instead, named as defendants in the *Mangani* case, *supra*, and mistakenly
28  included in this brief by plaintiffs' counsel in an apparent cut-and-paste of
portions of the motion to remand filed in the *Mangani* case.

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

12

1  the principle of "fraudulent joinder," a plaintiff cannot destroy diversity

2  jurisdiction by naming a non-diverse or local defendant against whom he has no

3  reasonable chance of prevailing. *See Ritchey*, 139 F.3d at 1318 (citing *McCabe*, 811

4  F.2d at 1339); *Morris*, 236 F.3d at 1067. A defendant is fraudulently joined "[i]f the

5  plaintiff fails to state a cause of action against a resident defendant, and the

6  failure is obvious according to the settled rules of the state." *Morris*, 236 F.3d at

7  1067 (quoting *McCabe*, 811 F.2d at 1339). A plaintiff fails to state a cause of action

8  against a defendant when "the relevant claim is patently spurious, or when there

9  is no reasonable basis for imposing liability on the resident defendant." *TPS*

10  *Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1102 (C.D. Cal. 2002).

11         The fraudulent joinder standard does *not* mean that, to defeat

12  plaintiffs' motion to remand, defendants must point to a Nevada Supreme Court

13  case explicitly holding that none of the causes of action at issue in this case are

14  available against pharmacists or pharmaceutical professional representatives.

15  Instead, as other federal courts have recognized, this Court can, and it is

16  submitted should, apply the general principles of Nevada law to predict how the

17  Nevada Supreme Court would decide whether plaintiffs have a possible claim

18  against these defendants. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d

19  272, 280 (S.D.N.Y. 2001) ("*Rezulin I*") ("in a case in which the defendants contend

20  that joinder is 'fraudulent' because the claim against a non-diverse defendant is

21  insufficiently substantial as a matter of law, the Court must consider the state law

22  upon which the claim rests and then determine only whether there is a

23  reasonable possibility that the relevant state's highest court would rule in favor of

24  the plaintiff were the issue presented to it."); *Poulos v. Naas Foods, Inc.*, 959 F.2d

25  69, 73 (7th Cir. 1992) ("At the point of decision, the federal court must engage in

26  an act of prediction: is there any reasonable possibility that a state court would

27  rule against the non-diverse defendant?"). Thus, even when the Nevada

28  Supreme Court has not yet specifically addressed the claims at issue here vis-à-

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

13

1   vis pharmaceutical professional representatives, this Court may still determine

2   that the professional representatives are fraudulently joined. *See Rezulin I*, 133 F.

3   Supp. 2d at 282 ("While no Mississippi court has resolved this precise issue, it

4   does not follow that a possibility exists that the plaintiff can establish any cause

5   of action against the defendants.").

6          The unpublished orders on which plaintiffs rely in their motion to

7   remand, each of which is predicated on the absence of a Nevada Supreme Court

8   case evaluating plaintiffs' claims when pleaded against pharmaceutical

9   professional representatives, misapply this standard of review. *See, e.g., Hellman*

10  *v. Wyeth*, CV-S-04-1614-RLH-LRL ("the determination of the worthiness of these

11  causes of action against the [professional representative defendants] could - and

12  should - be made at the state court level."). But when the appropriate standard is

13  applied to the claims asserted against the professional representatives named in

14  this case, it is clear that there is no reasonable basis for these claims under

15  Nevada law.

16          Just two weeks ago, this Court recognized this principle when it

17  denied plaintiffs' motion to remand in a case very similar to this one in which the

18  plaintiffs assert nearly identical claims against a medical device manufacturer

19  and its local sales entity. *See* Ex. J, Order, *Kite v. Zimmer* (2:06-cv-00745-RCJ-RJJ).

20  In that case, plaintiff moved to remand, arguing that the presence of the Nevada

21  sales representative destroyed diversity. This Court denied the motion to

22  remand, and ruled that the non-diverse defendant was fraudulently joined

23  because the plaintiff had failed to state a valid cause of action against the non-

24  diverse defendant. *Id*. at 4-7. Plaintiffs' motion to remand in this case should be

25  denied for exactly the same reasons as outlined by this Court in the *Kite* order.

26

27

28

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1

2

### 1.   No Strict Liability Claim Against Pharmaceutical Professional Representatives Exists Under Nevada Law.

3      It is well settled that Nevada law does not recognize a strict liability

4  claim against a pharmaceutical professional representative.   To be strictly liable

5  under Nevada law, a defendant must be a seller "engaged in the business of

6  selling . . . a [dangerously defective] product." *Calloway v. City of Reno*, 116 Nev.

7  250, 268, 993 P.2d 1259, 1270 (2000) (*quoting* Restatement (Second) of Torts §

8  402A), *overruled on other grounds*, 120 Nev. 240, 89 P.3d 31 (2004); *see also Allison v.*

9  *Merck and Co., Inc.*, 110 Nev. 762, 767 n.1, 878 P.2d 948, 952 n.1 (1994) (affirming

10  summary judgment in favor of defendant because that defendant was not "seller

11  of products" and therefore could not be held liable under either a strict liability or

12  warranty theory). Merck's professional representatives, like other sales

13  personnel, cannot be subject to strict liability in Nevada because they are not

14  "sellers" of products. Ex. J, *Kite*, slip op. at 5-6 (a sales representative who serves

15  only as conduit of information between healthcare providers and a manufacturer

16  is not a "seller" under Nevada law); Restatement (Third) of Torts § 20, Cmt. g

17  ("sales personnel, sales representatives, and other sales facilitators are not subject

18  to strict liability"). It is thus well-settled in Nevada that there is no possible

19  failure-to-warn or design defect claim against these defendants.[8]

20      There is also no legal basis for strict liability claims against the

21  professional representatives because these defendants do not owe plaintiffs a

22  duty to warn. Under Nevada law, the duty to warn is borne by the seller or

23      [8] This reasoning led to the same result in other jurisdictions. *In re Diet*
*Drugs Prods. Liab. Litig.*, No. Civ.A.03-20376, 2004 WL 1535806, at *2 (E.D. Pa. June

24  18, 2004) ("*Diet Drugs II*") (pharmaceutical sales representatives are not "sellers"
within the meaning of product liability statutes, rather, their employers are

25  "sellers" within the meaning of these statutes); *Dacosta v. Novartis AG*, No. CV 01-
800-BR, 2002 WL 31957424, at *6 (D. Or. Mar. 1, 2002) (finding that professional

26  representative was not seller of drug he promoted to physicians and thus could
not be held liable under strict liability theory); *McCurtis v. Dolgencorp, Inc.*, 968 F.

27  Supp. 1158, 1160-61 (S.D. Miss. 1997) (denying motion to remand based on
fraudulent joinder of employee of company that sold product that allegedly

28  caused harm because "the 'sellers' are the businesses, and not their employees").

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

15

1    distributor of a product. *See* Restatement (Second) of Torts § 402A, Cmt. j (cited

2    approvingly and relied upon in *Allison,* 110 Nev. at 774 n. 12, 878 P.2d at 956 n.

3    12). Given this well-settled law, there is no independent duty for a professional

4    representative—whose position is outside the manufacturing and distribution

5    chain—to warn, and thus no possible strict liability claim against such a

6    defendant. *See, e.g., In re Diet Drugs Litig.,* 2004 WL 1118714, at *4 (E.D. Pa. May

7    18, 2004) (a duty to warn does not extend to sales representatives); *In re Diet*

8    *Drugs Litig.,* 2004 WL 2203712, at *2 (E.D. Pa. Sept. 28, 2004) (sales

9    representatives do not assume individual liability because of employer's alleged

10   failure to provide adequate information).

11

         **2.**    **No Claim for Breach of Warranty Against the Professional**

12              **Representative Defendants Exists Under Nevada Law.**

13       In addition, there is no possible breach of warranty claim against

14   Merck's professional representatives. Under Nevada law, express and implied

15   warranties are only provided by "sellers" of products. NRS 104.2313-2315

16   (providing for express and implied warranties only by sellers). Thus only

17   "sellers" can be liable under a warranty theory. *See Allison,* 110 Nev. at 767 n.1,

18   878 P.2d at 952 n.1 (defendant who is not a seller of products could not be held

19   liable under a warranty theory). Since Merck's professional representative

20   defendants are not "sellers" within that statutory definition, as explained above, it

21   is well-settled that there is no basis for an express or implied warranty claims

22   against these defendants, as other courts around the country have concluded. *See*

23   Ex. J, *Kite,* slip op. at 7 (a claim for breach of warranty against a medical device

24   sales representative fails because sales representative is not a "seller" under

25   Nevada law); *Diet Drugs II,* 2004 WL 1535806, at *2; *Rezulin I,* 133 F. Supp. 2d at

26   286-88; *Dacosta,* 2002 WL 31957424, at * 6; and *McCurtis,* 968 F. Supp. at 1160-61.

27

28

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
800 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

16

3.   No Claim for Negligent Misrepresentation Against the Professional Representatives Exists Under Nevada Law.

There is also no possible claim under Nevada law against the named professional representatives for negligent misrepresentation.  It is a well-settled matter of law in Nevada that this tort is limited only to those who suffer *pecuniary loss* in the context of *a business transaction.  See Bill Stremmel Motors, Inc. v. First Nat. Bank of Nev.*, 94 Nev. 131, 134, 575 P.2d 938, 940 (1978) (adopting the test for negligent misrepresentation from the Restatement (Second) of Torts § 552, which limits liability for negligent misrepresentation to situations where the plaintiff has suffered a "pecuniary loss" in "business transactions").

This Court has applied Nevada's negligent misrepresentation test to deny relief to a plaintiff in a products liability action similar to this one.  *See Forest v. E.I. DuPont de Nemours & Co.*, 791 F. Supp. 1460 (D. Nev. 1992).  In that case, the plaintiff had received a joint implant and later brought an action against a manufacturer of one of the implant's materials.  *Id.* at 1461.  This Court granted summary judgment in favor of the defendant on the negligent misrepresentation claim, concluding that "[i]t is clear . . . that [this] tort is only available to those *suffering pecuniary injury in the context of a business transaction.*  As such, the facts of the instant case do not support even the allegation of negligent misrepresentation nor could plaintiffs recover damages for personal injury [under this theory]."  *Id.* at 1470 (emphasis added).  This Court reached the exact same conclusion in the *Kite* case, discussed *supra.* Ex. J, *Kite*, slip op. at 7 ("a claim for negligent misrepresentation is only available if the plaintiff suffers pecuniary losses in the context of a business transaction").  The same result obtains here.  Plaintiffs cannot possibly recover from Merck's professional representatives under this theory, making this claim patently spurious.

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

17

1         4.     **Plaintiffs State No Claim Against the Professional**
2              **Representatives for Fraudulent Misrepresentation (Deceit by Concealment) or Deceptive Trade Practices.**

3        Plaintiffs' fraud-based claims against the professional

4  representatives are also spurious and cannot be credited to defeat diversity

5  jurisdiction. Both fraudulent misrepresentation and deceptive trade practices

6  claims are fraud claims within the meaning of Nev. R. Civ. P. 9(b) and Fed. R.

7  Civ. P. 9(b), and must thus be pleaded with particularity to properly state a claim.

8  *See Golden Nugget, Inc. v. Ham*, 98 Nev. 311, 314-15, 646 P.2d 1221, 1224 (1982)

9  ("fraudulent concealment must be alleged with particularity"); *See Graziose v. Am.*

10  *Home Prods. Corp.*, 202 F.R.D. 638, 642 (D. Nev. 2001) (Rule 9(b)'s specificity

11  requirement applies to all allegations of intentional misrepresentation, fraudulent

12  concealment and civil conspiracy; *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp.

13  2d 1096, 1113 (D. Ariz. 2003) ("The Ninth Circuit requires that fraudulent

14  concealment claims be plead [sic] with particularity."); NRS 41.600 (creating

15  cause of action for fraud based on deceptive trade practices).

16        Particularity requires that plaintiffs *specify* the alleged fraudulent

17  representations, the maker of those representations, when and where those

18  representations were made and the manner in which those representations are

19  false. *In re GlenFed, Inc. Secur. Litig.*, 42 F.3d 1541, 1547 n.7 (9th Cir. 1994)

20  (requiring that allegations of fraud state "time, place, persons, statements made

21  [and] explanation of why or how such statements are false or misleading"); *Vess*

22  *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (particularity means

23  that fraud allegations must include the "who, what, when, where and how" the

24  fraud occurred.); *Arroyo v. Wheat*, 591 F. Supp. 136, 139 (D. Nev. 1984)

25  ("[s]tatements of the time, place and nature of the alleged fraudulent activities

26  must be included in the complaint. . . . [P]laintiffs should have to detail the

27  misrepresentations of which they complain, explain in what way they were false,

28

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1  and designate the facts that support an inference of fraud by each defendant.")

2  (citation omitted).[9]

3      Plaintiffs' conclusory allegations do not provide any of the details

4  necessary to properly state these claims against any defendants, including the

5  named professional representatives. Plaintiffs do not allege *any* detail as to the

6  who, what, when, where, and how surrounding these defendants' alleged

7  fraudulent activities. Instead, they make only conclusory allegations of fraud.

8  *E.g.*, Compl. at ¶¶ 71 (alleging that "[d]efendants" willfully deceived plaintiffs

9  "from the time that [Vioxx] was first tested, studied, researched, evaluated,

10  endorsed, manufactured, marketed and distributed, and up to present"); 74

11  (alleging that "defendants, and each of them" willfully deceived plaintiffs "[a]t all

12  times herein mentioned"); and 90 (not stating the relevant time, place, and party

13  who allegedly engaged in deceptive trade practices). Plaintiffs' failure to plead

14  fraud with the particularity required by Rule 9(b) means they have stated no

15  reasonable fraud-based cause of action against these defendants. *Vess*, 317 F.3d

16  at 1107 (recognizing the dismissal for failure to plead fraud in accordance with

17  Rule 9(b) is appropriate); *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)

18  (dismissing complaint for failure to satisfy Rule 9(b)).

19      Given these fatal defects in the fraud claims alleged against the

20  professional representatives, the Court should follow the lead of other federal

21  courts and refuse to credit these claims to defeat diversity jurisdiction and reject

22  plaintiffs' blatant attempt to destroy otherwise proper diversity jurisdiction.

23  *Burns v. Wyeth, Inc.*, 352 F. Supp. 2d 773, 777 (E.D. Ky. 2004) (finding fraudulent

24  joinder with respect to pharmaceutical representative where "Plaintiffs do not

25

26     [9] Plaintiffs cannot rely on allegations of fraud directed at defendants
generally to support a claim of fraud against the non-diverse defendants. *Rezulin*

27  *I*, 133 F. Supp. 2d at 283-84 (fraudulent joinder found because "allegations of
management-level corporate wrongdoing, . . . ascribe[d] to salespeople through

28  the use of the catch-all attribution to 'defendants' . . . do not meet the Rule 9(b)
requirements.").

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

19

1  plead with any particularity or specificity when or where the alleged

2  misrepresentations occurred, or for that matter, what was allegedly

3  misrepresented"); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp.

4  1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims

5  against in-state defendants violated Rule 9(b) and supported finding of

6  fraudulent joinder).

7        Recognizing they have completely failed to state valid fraud-based

8  claims against Merck's professional representatives, plaintiffs now make an

9  eleventh-hour attempt to supplement these defective allegations by filling their

10 moving papers with additional allegations that go well beyond those found in

11 the complaint. *See* Mot. to Remand at 14:25-16:9 and related exhibits.  These

12 additional allegations and the argument thereon cannot be credited to defeat

13 jurisdiction:  the question of whether these professional representatives are

14 fraudulently joined must be determined *only* from the allegations of the

15 complaint, *not* the new allegations in plaintiffs' motion. *Batoff v. State Farm Ins.*

16 *Co.*, 977 F.2d 848, 851 (3d Cir. 1992) ("In evaluating the alleged fraud, the district

17 court must "*focus on the plaintiff's complaint at* the time the petition for removal

18 was filed.") (emphasis added); *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 538

19 (1939) (the right to remove is "determined according to the plaintiffs' pleading at

20 the time of the petitioner for removal"); *Sparta Surgical Corp. v. Nat'l Assoc. of Sec.*

21 *Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (removal jurisdiction "must be

22 analyzed on the basis of pleadings filed at the time of removal without reference

23 to subsequent amendments").

24        5.    **Plaintiffs' Fraudulent Misrepresentation/Deceit by**
              **Concealment and Deceptive Trade Practices Claims Against**
25            **the Professional Representatives Also Fail Substantively.**

26        In addition to failing because the plaintiffs did not plead fraud with

27 the particularity required by both state and federal law, plaintiffs' fraudulent

28

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
800 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/434-9400
FAX 702/474-9422

1 | misrepresentation, deceit by concealment, and conspiracy claims fail
2 | substantively and cannot defeat removal.

3 |     Under Nevada law, a fraudulent misrepresentation claim, like a
4 | negligent misrepresentation claim, is limited to those who allegedly suffer
5 | *pecuniary loss*, not personal injuries. *See* Restatement (Second) of Torts § 533
6 | (1977) ("The maker of a fraudulent misrepresentation is subject to liability for
7 | *pecuniary loss* to another who acts in justifiable reliance upon it") (emphasis
8 | added). The Nevada Supreme Court has recognized and adopted this portion of
9 | the Restatement. *Epperson v. Roloff*, 102 Nev. 206, 212, 719 P.2d 799, 803 (1986)
10 | (citing § 533 with approval). It is accordingly clear that plaintiffs have no claim
11 | against the named professional representatives under this theory.

12 |     The deceptive trade practices claim against the professional
13 | representatives also fails because these defendants owe no duty to the plaintiffs,
14 | as outlined above. For an omission to constitute actionable fraud, "a plaintiff
15 | must first demonstrate that the defendant had a duty to disclose the fact at issue."
16 | *Dow Chemical Co. v. Mahlum*, 114 Nev. 1468, 1486, 970 P.2d 98, 110 (1998),
17 | *overruled in part on other grounds by* 117 Nev. 265, 21 P.3d 11 (2001); *accord*
18 | *Monsanto*, 891 F. Supp. 1406, 1415 (D. Nev. 1995) (required element of claim for
19 | fraudulent concealment is that "[t]he defendant must have been under a duty to
20 | disclose the fact to the plaintiff"). As the named professional representatives
21 | have no such duty, for the reasons explained above, plaintiffs have no possible
22 | deceit by concealment claim against these defendants.

23 |     In short, none of the claims asserted against the named professional
24 | representatives is available under Nevada law, meaning these defendants were
25 | fraudulently joined solely to defeat diversity jurisdiction, and their citizenship
26 | should be disregarded in analyzing subject matter jurisdiction.

27

28

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1   **C.   Plaintiffs' Motion to Remand Should be Denied Because of the**
2   **Misjoinder of Plaintiffs with No Possible Claims Against Non-**
    **Diverse Defendants.**

3       Plaintiffs' motion to remand should also be denied because another

4   "species" of fraudulent joinder exists in this case—the egregious misjoinder of

5   plaintiffs whose Vioxx-prescribing physicians never had any contact with the

6   professional representatives named as defendants in this case with those

7   plaintiffs whose Vioxx-prescribing physician was actually called on by one of the

8   non-diverse professional representative defendants.[10]  *See In re Rezulin Prods. Liab.*

9   *Litig.*, 168 F. Supp. 2d 136, 146-47 (S.D.N.Y. 2001) ("*Rezulin IV*") ("misjoinder of a

10  party with a unique claim against a non-diverse adversary is not alone a basis for

11  remand").  As discussed above, there is a substantial likelihood that the Vioxx-

12  prescribing physician(s) of one or more plaintiffs in this case never had any

13  Vioxx-related contact with any professional representative named as a defendant

14  in this case, meaning any such plaintiff has no possible factual claim against a

15  non-diverse defendant.

16       This is a textbook case of egregious misjoinder and should not be

17  allowed to defeat removal jurisdiction.  *Rezulin IV*, 168 F. Supp. 2d at 146-47

18  ("misjoinder of a party with a unique claim against a non-diverse adversary is not

19  alone a basis for remand"); *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th

20  Cir. 2002) ("fraudulent misjoinder of plaintiffs is no more permissible than

21  fraudulent misjoinder of defendants to circumvent diversity jurisdiction").

22  "Misjoinder may be just as fraudulent as the joinder of a resident defendant

23  against whom a plaintiff has no possibility of a cause of action." *Tapscott v. MS*

24  *Dealer Service Corp.*, 77 F.3d 1360 (11th Cir. 1996) (denying plaintiffs' motion to

25  remand due to misjoinder of plaintiffs with no claim against non-diverse

26  defendants with those plaintiffs who do have such a claim), abrogated on other

27

28  ───────────────────────────

[10]   Merck denies that there is any legal claim against the non-diverse
defendants—no matter the factual analysis—for the reasons stated above.

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1  grounds, 204 F.3d 1069 (11th Cir. 2000).[11]  Independent of how this Court resolves

2  the fraudulent joinder analysis under Nevada law, any joined plaintiff with no

3  possible factual claim against a non-diverse defendants should not be remanded.

4  Nothing in plaintiffs' moving papers undermines these points – plaintiffs point to

5  *no* authority (since none exists) supporting the proposition that their unrelated

6  claims are properly joined here.

7  **III.    CONCLUSION**

8              Plaintiffs are asking the Court to waste valuable judicial resources

9  by considering the very same jurisdictional issues raised in numerous other

10 Vioxx cases around the country, all of which will soon be before the MDL court.

11 For all of the foregoing reasons, and for the reasons set forth in Merck's motion

12 to stay briefing, Merck respectfully requests that the Court stay this case in its

13 entirety pending the MDL Panel's decision to transfer this case to the Vioxx

14 MDL proceeding where this motion can be considered consistently with remand

15

16

17

18

19

20

21

22

23

---

24  [11] Some courts, rather than simply ignoring the citizenship of non-diverse
defendants when plaintiffs' claims are misjoined, sever the plaintiffs with no
25  claims against non-diverse defendant and retain jurisdiction over the remaining
claims. *Rezulin IV*, 168 F. Supp. 2d at 147-49.  This is the approach that this Court
26  took in the *Baker* case, *supra*.  Merck submits that, should the Court determine
that severance is appropriate, such action should be deferred to the MDL court,
27  which, as outlined above, is well equipped to efficiently handle discovery and
resolution of the factual inquiry that would underlie such a determination in this
28  and the many other Vioxx cases presenting the exact same issues.

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

23

1   motions in other Vioxx-related cases from Nevada and elsewhere.  Alternatively,

2   if the Court decides to rule on the merits of plaintiffs' motion to remand, this

3   Court should deny that motion.

4                                                MORRIS PICKERING PETERSON
                                                 & TRACHOK
5

6

7   By_____
                                                 Kristina Pickering, No. 992
8                                                Denise Barton, No. 5579
                                                 Robert R. McCoy, No. 9121
9                                                900 Bank of America Plaza
                                                 300 South Fourth Street
10                                               Las Vegas, NV 89101

11                                               Attorneys for Defendant
                                                 Merck & Co., Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-0400
FAX 702/474-0422

24

1

## CERTIFICATE OF SERVICE

2          Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada

3   Electronic Filing Procedures, I certify that I am an employee of MORRIS

4   PICKERING PETERSON & TRACHOK, and that the following documents were

5   served via electronic service: **OPPOSITION TO PLAINTIFFS' MOTION TO**

6   **REMAND**

7   Robert W. Cottle, No. 4576
8   Robert T. Eglet, No. 3402
    David A. Tanner, No. 8282
9   MAINOR EGLET COTTLE
    400 South Fourth Street, Suite 600
10  Las Vegas, NV 89101
    Phone: (702) 450-5400
11

12  Attorneys for Plaintiffs

13          DATED this 5ᵗʰ day of December, 2006.

14

15                                    By: _____

16

17

18

19

20

21

22

23

24

25

26

27

28

MORRIS PICKERING
PETERSON & TRACHOK
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

## INDEX TO EXHIBITS

A.    Conditional Transfer Order 72

B.    December 2, 2005 Transfer Order

C.    *In re VIOXX Prods. Liab. Litig.*, MDL No. 1657-L

D.    Letter from MDL Panel to Hon. Philip M. Pro - July 25, 2006

E.    *McCrerey v. Merck & Co., Inc.*, Civ. No. 04-2576 WQH (Wmc),

F.    *Pace v. Merck & Co., Inc.*, No CIV 04-1356 MCA/ACT

G.    *Mangani v. Merck & Co., Inc.*, 2:06-cv-00914-KJD-PAL

H.    *Baker v. Merck & Co., Inc.*, No. CV-S-05-0625-RCJ-RJJ

I.    *Plaintiff Profile Form*, MDL No. 1657

J.    *Kite v. Zimmer US, Inc.*, No. 2:06-cv-0745-RCJ-RJJ