UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX<br><br>PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>LENE ARNOLD<br><br>v.<br><br>MERCK & CO., INC.<br><br>Case No. 05-2627<br><br>and<br><br>ALICIA GOMEZ<br><br>v.<br><br>MERCK & CO., INC.<br><br>Case No. 05-1163 | MDL Docket NO. 1657<br><br>SECTION L<br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLES |

**THE PLAINTIFFS' STEERING COMMITTEE'S
MEMORANDUM OF LAW IN OPPOSITION TO MERCK'S
MOTION AND MEMORANDUM TO ALTER OR AMEND THE
COURT'S JULY 3, 2007 ORDER DENYING MERCK'S MOTION
FOR SUMMARY JUDGMENT TO INCLUDE CERTIFICATION
FOR INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(b)**

**I.    INTRODUCTION**

In the July 3, 2007 Order denying Merck's Motion for Summary Judgment, this Court

determined that the FDA's Final Rule[1] was not entitled to deference and that the plaintiffs' claims were not preempted by virtue of the Final Rule or otherwise. As a threshold matter, this Court also found the factual record to be incomplete such that summary judgment would not be warranted even if the FDA's Final Rule had been entitled to deference. *See In re Vioxx Products Liability Litigation*, MDL No. 1657, Order and Reasons at 7, Fn. 5 (E.D.La. July 3, 2007). Under these circumstances the certification of an immediate appeal will not materially advance the litigation since any appellate resolution would require the Fifth Circuit to remand the cases back to this Court to more fully develop the record.

In addition to the insufficiency of the factual record, Merck has also failed to demonstrate a controlling question of law that would warrant certification since the Fifth Circuit has consistently rejected the argument that the FDCA and/or FDA regulations preempt state law claims against prescription drug manufacturers. Nor has Merck been able to demonstrate "substantial grounds for a difference of opinion" that would warrant immediate appellate review. That less than a handful of district courts from around the country have reached opinions contrary to the July 3, 2007 Order and Reasons establishes that the differences of opinion do not rise to a sufficiently "substantial" level to warrant certification.

**II.    Argument**

    **A.    The Applicable Legal Standard Does Not Favor Appellate Review**

"Section 1292(b) was not intended 'to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation', or to be a 'vehicle to provide early review of difficult

---

[1] *See Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products*, 71 FR 3922 (January 24, 2006)[hereafter "Final Rule"].

2

rulings in hard cases.'" *In re Nasdaq Market Makers Antitrust Litig*, 938 F.Supp. 232, 234 (S.D.N.Y. 1996). Rather, a case should be certified for interlocutory appeal under 28 U.S.C. §1292(b) only if it satisfies two specific standards: first, the decision sought to be reviewed must involve "a controlling question of law" that presents "substantial ground for difference of opinion." And second, an immediate appeal from the order must "materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). *See also Belt v. Emcaer, Inc.*, 444 F.3d 403, 407 n. 6 (5th Cir. 2006).

Courts construe the two requirements for interlocutory appeal "narrowly," *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 (9th Cir. 2002), because Congress intended to reserve interlocutory review only for "exceptional" cases, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996), and did not intend to provide interlocutory appellate review to 'answer the mere question as to the correctness of [a] ruling," *Binkley v. Loughran*, 714 F.Supp. 774, 775 (M.D.N.C. 1989). *See also Cardona v. Gen. Motors Corp.*, 939 F.Supp. 351, 353 (D.N.J. 1996)(Section 1292(b) "motion should not be granted merely because a party disagrees with the ruling of the district judge")(quoting *Max Daetwyler Corp. v. Meyer*, 575 F.Supp. 280, 282 (E.D.Pa. 1983)); *United States v. Grand Trunk Western R.R.*, 95 F.R.D. 463, 471 (W.D.Mich. 1980)(denying certification because the moving party "merely question[ed] the correctness" of the court's ruling); *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F.Supp. 2d 16, 20 (D.D.C. 2002)(recognizing that 1292(b) certification is reserved for "truly exceptional" cases).

**B.    The Factual Record in this Case is Insufficient to Warrant Certification of an Immediate Appeal**

The July 3, 2007 Order and Reasons determined that factual issues precluded summary judgement in favor of Merck. *See In re Vioxx Products Liability Litigation*, MDL No. 1657, Order

3

and Reasons at 7, Fn. 5.  Although Merck disputes the significance of the factual issues identified by this Court, there are issues of fact that are implicated by Merck's motion and the attendant preemption analysis.  Amongst the more significant factual issues are those concerning the approval of the Post-VIGOR labeling in April 2002, Merck's interactions with the FDA, Merck's knowledge of the risks associated with Vioxx, *i.e.*, what Merck knew and when, as well as the process whereby the FDA included preemption language in the Final Rule.  *See* Executive Order 13132, 64 Fed. Reg. 43255 §4(d)(1999) ("When an agency foresees the possibility of a conflict between State law and Federally protected interests within its area of regulatory responsibility, the agency shall consult, to the extent practicable, with appropriate State and local officials in an effort to avoid such a conflict.").

The main thrust of Merck's motion for summary judgment is that the claims of plaintiffs Arnold and Gomez, as well as those of plaintiffs who are similarly situated, *i.e.*, the claims of those plaintiffs whose cardiac events occurred after the post-VIGOR label was approved by the FDA in April 2002, are purportedly preempted because the FDA approved the post-VIGOR label designed by Merck (not as proposed by FDA) and part of the claims rest upon data from the VIGOR study.  Evidence recently used in the New Jersey litigation calls this entire argument into question since Merck withheld critical data from the FDA to gain approval of the post-VIGOR labeling.  This additional evidence not only supports this Court's determination that the factual record is incomplete but also demonstrates that the plaintiffs' claims would not be preempted even under Merck's interpretation of the preemptive effect of FDA regulations.

On May 18, 2001, while in the process of reviewing Merck's supplemental NDA that included the VIGOR data, the FDA sent instructions to Merck regarding an upcoming submission

4

of safety data. *See* May 18, 2001 Fax from Sanrda Folkendt to Robert Silverman, MD (MRK-AAF0003971-72) [ attached hereto as Exhibit "A"]. The FDA specifically requested that the upcoming submission include:

> a.  All ongoing and completed studies of rofecoxib;
>
> b.  Analyses of cardiovascular events for each individual study; and
>
> c.  Where the studies included comparisons of Vioxx to another NSAID, analyses and comparisons of Vioxx to each of those individual NSAIDs.

*Id.*

On May 25, 2001, Merck replied to FDA's request, but proposed leaving out information from six completed short-term studies, including Protocol 906, explaining that the requested studies would provide only "minimal information." *See* May 25, 2001 Letter from Robert Silverman to Jonca Bull at MRK-AAF0003987 (MRK-AAF0003986-88), [attached hereto as Exhibit "B"].[2] Internal emails, however, indicate that Merck scientists questioned whether Protocol 906 provided only 'minimal' information, and, in fact, called the results "very serious," and stressed the need for the results to be kept "VERY TIGHT." *See* July 23, 2001 Email from Vandormael to Gabriel and Moan (MRK-NJ0199459-460) (emphasis in original), [attached hereto as Exhibit "D"].[3]

---

[2] Just three days earlier on May 22, 2001, Merck issued a press release that "reconfirmed the favorable cardiovascular safety of Vioxx". *See* Press Release "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx,"(MRK-ABI0003228-30) (May 22, 2001)[attached hereto as Exhibit "C"].

[3] Protocol 906 was a four-week study that compared the safety and efficacy of rofecoxib 25mg (Vioxx) and celecoxib 200mg (Celebrex) in the treatment of osteoarthritis of the knee and hip. *See* July 23, 2001 Memorandum "Preliminary Statistical Analysis of CDSP MK-966, Protocol 906-01" from W. Malbecq to A. Moan and M. Gabriel at MRK-NJ0199451 [MRK-
(continued...)

Protocol 906 revealed that "the proportion of patients with any type of edema was significantly higher after treatment with rofecoxib;" the results also revealed that the Vioxx patients had a higher rate of adverse experiences, drug related adverse experiences, discontinuations due to adverse experiences, hypertension adverse experiences, drug related hypertension adverse experiences, gastrointestinal adverse experiences, and drug related gastrointestinal adverse experiences. *See* July 23, 2001 Memorandum "Preliminary Statistical Analysis of CDSP MK-966, Protocol 906-01" at MRK-NJ0199452-3. Merck did keep this data 'very tight,' so tight, in fact, that it withheld the 906 results regarding the statistically significant increased risk of edema with Vioxx compared to Celebrex, and the increased risk of hypertension with Vioxx compared to Celebrex from the FDA by submitting only limited protocol 906 data. *See* July 30, 2001 Response to FDA Request for Information Safety Update Report at MRK-0120159578 (MRK-0120159554-83) [attached hereto as Exhibit "F"]. The result of Merck's reluctance to share its data is that the FDA never received the hypertension data from Protocol 906, and this data was never reflected in any iteration of the Vioxx label.

Based on this additional evidence it is now clear that Merck failed to provide the FDA with all relevant information prior to the approval of the post-VIGOR labeling. This overwhelming evidence undercuts Merck's argument in favor of preemption since the assertion that the FDA approved the post-VIGOR labeling after considering all relevant data is unfounded. Stated

---

[3](...continued)
NJ0199451- 455] ("A preliminary statistical analysis is currently being performed for MK-966, Protocol 906-01, an active comparator-controlled, parallel-group, 4-week, double-blind study, conducted under in-house blinding procedures, to further evaluate the safety and tolerability and to compare the clinical efficacy of refecoxib vs. celebrex in the treatment of osteoarthritis of the knee and hip ... the study was intended to show that rofecoxib 25 mg is superior to celecoxib 200 mg in reducing pain at night ...") [attached hereto as Exhibit "E"].

differently, the underlying premise of Merck's argument has been proven to be false. In any event, facts such as the above evidence reinforce this Court's determination that issues of fact preclude summary judgment in this case.

Even before this additional evidence came to light, this Court agreed that the Rule 56(f) affidavit of Plaintiffs' Liaison Counsel, Russ M. Herman, correctly identified several issues of fact regarding Merck's submission to the FDA, the labeling negotiations between Merck and the FDA, and Merck's employees' use of FDA labeling regulations. *See In re Vioxx Products Liability Litigation*, MDL No. 1657, Order and Reasons at 7, Fn. 5 (observing that Mr. Herman's Rule 56(f) affidavit was "well-founded" and that the Court "would seriously consider allowing such discovery to proceed."). Given the PSC's discovery this finding is amply supported by the record and it now appears that such additional discovery is essential.

In addition to issues of facts regarding Merck's interactions with the FDA, there are factual issues regarding whether Merck learned of additional data after the approval of the post-VIGOR labeling, from any source, that would have given rise to a duty to warn of an increased risks of cardiovascular injury. The July 3, 2007 Order & Reasons agrees with this reasoning:

> [F]actual disputes abound in this litigation regarding what Merck knew about the safety of Vioxx and when the company acquired such knowledge. Merck would have the Court find as a matter of law that the VIGOR study was the first and only indication (prior to APPROVe) of an increased cardiovascular risk, and that the FDA's approval of a revised Vioxx label that incorporated the VIGOR data preempts the claims of those plaintiffs who began taking the drug after April 11, 2002. But the extent of Merck's knowledge beyond this date, and thus whether or not the company had a renewed duty to warn in light of "newly discovered risks," are genuine questions of fact that are disputed.

*See In re Vioxx Products Liability Litigation*, MDL No. 1657, Order and Reasons at 7, Fn. 5.

There are also factual issues concerning the level of deference that should be accorded to the Final Rule since it is unclear whether the FDA complied with Executive Order 13132 when it decided to include the preemptive language in its Final Rule at the eleventh hour.  As if an afterthought, the FDA published its Memorandum "Consultations with State Officials and Organizations"(hereinafter, "FDA Consultation Memo") on March 1, 2006 to establish *post-hoc* that it had complied with Executive Order 13132 .[4]  In the FDA Consultation Memo the agency claims that "in January" 2006, just prior to publishing the Preamble with the Preemption language and the Final Labeling Rule on January 22, 2006, it conferred with several select entities regarding the inclusion of language on preempting state claims.  *Id*.  Those entities included the National Governors Association, the Council of State Governors, the American Legislative Exchange Council, National Conference of State Legislators, the Office of Mississippi Governor Haley Barbour, former lobbyist for the pharmaceutical industry, and the Office of Indiana Governor Mitch Daniels, former CEO of Eli Lilly,[5] some of whom vigorously objected to the addition of such language in the Final Rule.

Since the FDA Consultation Memo was published more than a month after the Final Rule, Plaintiffs wish to conduct discovery to confirm that the consultation did not justify publication of

---

[4] This memorandum is Exhibit 41 to Plaintiffs' Response to Merck's Statement of Material Facts as to Which There is no General Issue to be Tried and Plaintiffs' Counter-Statement of Material Facts as to Which There is no General Issue to be Tried.

[5] The PSC has recently filed notices of depositions with corresponding subpoenas to be served upon Governor Barbour, attached hereto as Exhibit "G", Governor Daniels, attached hereto as Exhibit "H",  as well as to the National Governors Association, attached hereto as Exhibit "I", the Council of State Governors, attached hereto as Exhibit "J", the American Legislative Exchange Council, attached hereto as Exhibit "K", and the National Conference of State Legislators, attached hereto as Exhibit "L", in order to fully develop the record regarding the level of deference that should be accorded to the agency and the Final Rule.

the Final Rule. Plaintiffs also wish to examine the extent of the FDA's purported consultation with state actors. Such discovery will bear directly on the level of deference that should be accorded to the Final Rule. If the FDA did not comply with Executive Order 13132 and/or did so in only a pretextual manner, there will be additional evidence supporting this Court's determination that the Final Rule is not entitled to deference.

Finally, in a last ditch effort to gain certification under 1292(b), Merck argues that Plaintiffs have somehow forfeited their right to pursue discovery concerning fact issues relevant to Merck's motion for summary judgment by not doing so immediately after the motion was filed. Merck ignores the fact that discovery is ongoing in the MDL. Not only that, but Merck is withholding undoubtedly relevant material that is the subject of Special Master Rice's review for privilege. Since it is very likely that the materials being withheld as privileged are directly related to outstanding issues of fact, it is entirely appropriate for Plaintiffs to await the results of Merck's objections to the Report and Recommendation of Special Master Rice.

### C. Merck Has Failed to Identify a Controlling Issue of Law Over Which There is Substantial Grounds for Disagreement

For certification to be warranted under section 1292(b) the party seeking certification must demonstrate that the decision sought to be reviewed involves "a controlling question of law" that presents "substantial ground for difference of opinion." 28 U.S.C. §1292(b). The central inquiry under section 1292(b) is whether there is substantial ground for difference of opinion regarding a controlling legal issue resolved by the trial court. To qualify as "substantial," the difference of opinion must: (a) exist between the courts rather than the parties; and (b) concern what the law is rather than the outcome of the law's application to the facts. *See Batton v. Georgia Gulf*, 261 F.Supp.2d 575, 585-86 (M.D.La. 2003) (characterizing substantial ground for difference of opinion

9

as "broad-based disagreement" among courts about the correct rule of law). Merck falls short of this standard. There is no broad-based difference of opinion on the legal principles underlying the Court's ruling. Indeed, only a few district judges have found state law claims against manufacturers of prescription medications to be preempted.

A "substantial difference of opinion" giving rise to interlocutory appeal is marked by conflicting judicial rulings on non-distinguishable facts, as well as the absence of higher court or statutory resolution of the debate. *Gavino v. Eurochem Italia*, No. CIV.A. 01-1314, 2001 WL 1491177, at *2 (E.D.La. Nov. 23, 2001)(denying plaintiff's motion to remand and motion for interlocutory appeal, because no substantial ground for disagreement where Fifth circuit opinion 'squarely reject[ed]" plaintiff's position on the law at issue); *Township of Ocean Board of Education v. H.O.*, No. 88-5487, 1989 WL48420 (D.N.J. May 4, 1989)(refusing 1292(b) certification for denial of plaintiff's remand motion where two other existing cases addressing the same legal issue, but making different determinations, were clearly distinguishable). As one district court has emphasized.

> The nub of the issue is whether there truly is a substantial ground for difference of opinion. Not just any close question should be certified for interlocutory appeal. The law is filled with close cases. Judicial economy counsels against sending every such close call to the courts for appeals, for district courts are quite capable of making those calls. Interlocutory appeals are most warranted ***when an issue appears to confound the district courts and divide them.***

*Batton*, 261 F.Supp.2d at 585 (emphasis added). *See also United States v. Atlas Lederer Co.*, 174 F.Supp. 2d 666, 671 (S.D.Ohio 2001)(finding no substantial ground for difference of opinion regarding legal question at issue, and, thus declining to consider the other two requirements for 1292(b) certification).

Merck cannot demonstrate that a 1292(b) appeal will involve a controlling issue of law since the Fifth Circuit has squarely rejected the argument that the FDCA and/or FDA regulations preempt state law claims against the manufacturers of prescription medications. *See Hurley v. Lederle Labs. Div. Of Am. Cyanamid Co.*, 863 F.2d 1173, 1176-78 (5th Cir. 1988) (determining failure-to-warn claim against vaccine manufacturer was not preempted); *see generally Osborn v. Anchor Laboratories, Inc.*, 825 F.2d 908, 912-13 (5th Cir. 1987) (rejecting preemption argument concerning failure to warn by plaintiff injured from contact with drug administered to cattle). Thus, although the issue of preemption is significant, the Fifth Circuit has already decided the issue in favor of Plaintiffs.[6]

Nor can Merck establish that there are substantial grounds for differences of opinion on whether claims against prescription drug manufacturers are preempted by the FDCA and/or FDA regulations since the overwhelming majority of cases to address the issue have rejected the argument. Perhaps for this reason, Merck's 1292(b) motion focuses on a narrow issue, the level of deference that should be accorded to the Final Rule, and completely ignores the long-line of cases rejecting arguments that claims against prescription drug manufacturers are preempted since FDA regulations establish only minimum standards.[7]

---

[6] Indeed, the fact that the Fifth Circuit has definitively rejected the argument that the FDCA and/or FDA regulations preempt state law claims against the manufacturers of prescription medications, disproves the FDA's current assertion that it is merely restating what the law has always been. *See* 71 FR at 3934 ("FDA believes that under existing preemption principles, FDA approval of labeling under the act, whether it be in the old or new format, preempts conflicting or contrary State law."). Since this assertion by the FDA is contrary to controlling Fifth Circuit precedent, the issue should not be revisited.

[7] Prior to the publication of the Final Rule the majority of courts rejected arguments for preemption since they viewed FDA regulations as minimum standards. *See Hill v. Searle*
(continued...)

11

However, even on the more narrow issue of whether or not the FDA's Final Rule is entitled to controlling deference, Merck has failed to show substantial grounds for difference of opinion. The vast majority of courts that have addressed preemption since the Final Rule was published have determined that claims against prescription drug manufacturers are not preempted. *See In re Vioxx Products Liability Litigation*, MDL No. 1657, Order and Reasons at 16 (E.D.La. July 3, 2007) (rejecting the FDA's Final Rule and observing that the majority of courts addressing preemption since the Final Rule have determined that there is no preemption); *see also Desiano v. Warner-Lambert & Co.*, 2006 WL2846454 (2nd Cir. Oct. 5, 2006) (no preemption); *In re Zyprexa Prods. Liab. Litig.*, 2007 WL 1678078 (E.D.N.Y. June 11, 2007) (same); *Weiss v. Fujisawa Pharm. Co.*, 464 F.Supp.2d 666 (E.D.Ky. 2006) (same); *Perry v. Novartis Pharma. Corp.*, 456 F.Supp. 678 (E.D.Pa. 2006) (same); *McNellis*, *supra*, (same); *In re Vioxx Litig.*, Nos. ATL-L-3553-05-MT & ATL-L-1296-05-MT, slip op. (N.J. Sup. Ct. June 8, 2007) (same); *Levine v. Wyeth*, 2006 WL

---

[7](...continued)
*Laboratories,* 884 F.2d 1064, 1068 (8th Cir. 1989) ("FDA approval is not a shield to liability ... FDA regulations are generally minimum standards of conduct ...") (citations omitted); *Wells v. Ortho Pharmaceutical Corp.*, 788 F.2d 741, 745-46 (11th Cir.), *cert. denied*, 479 U.S. 950 (1986) (same); *Cartwright v. Pfizer, Inc.*, 369 F.Supp.2d 876, 882 (E.D.Tex. 2005) (same); *Ohler v. Perdue Pharma., L.P.*, 2002 WL 88945, *10-11 (E.D.La. 2002)(Engelhardt J.) (same); *Walker v. Rite Aid of West Virginia, Inc.*, 2003 WL 24215831, * 6 (S.D.W.Va. 2003) (same); *Eve v. Sandoz Pharmaceutical Corp.*, 2002 WL 181972, * 3 (S.D.Ind. 2002) (same); *Noyola v. Johnson & Johnson*, 1987 WL 13586, * 2 (N.D. Ill. 1987) (same); *Caraker v. Sandoz,* 172 F. Supp. 2d 1018, 1041-42 (S.D. Ill. 2001) (same); *Miller, by and through Miller v. Connaught Laboratories, Inc.*, 1995 WL 579969, * 8 (D.Kan. 1995) (same); *In re Tetracycline Cases*, 747 F.Supp. 543, 549-50 (W.D.Mo. 1989) (same); *Brown v. McNeil Laboratories, Inc.*, 1988 WL 288975, * 3 (W.D.Mich. 1988) (same); *Graham by Graham v. Wyeth Laboratories*, 666 F.Supp. 1483, 1491 (D.Kan. 1987) (same); *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 795 P.2d 915, 931 (1990) (same); *Feldman v. Lederle Laboratories*, 479 A.2d 374, 391 (N.J. 1984) (same); *Kociemba v. Searle & Co.*, 680 F.Supp. 1293, 1299 (D.Minn. 1988) (same); *Mazur v. Merck & Co.*, 742 F.Supp. 239, 247 (E.D.Pa. 1990) (same); *Plenger v. Alza Corp.*, 13 Cal.Rptr.2d 811, 819, Fn. 7 (Cal. App.1992) (same); *Edwards v. Basel Pharmaceuticals*, 933 P.2d 298, 302-303 (Okla. 1997) (same).

3041078 (Vt. Oct. 27, 2006) (same), *cert. pending*, No. 06-1249 (U.S. 2007); *Coutu v. Tracy*, 2006 WL 1314261 (R.I.Super. May 11, 2006) (same); *Jackson v. Pfizer, Inc.*, 432 F.Supp.2d 964 (D. Neb. May 31, 2006) (same); *Reeves v. Wyeth*, 4:03CV1507-WRW (E.D. Ark June 15, 2005, Wilson, J.);[8] *Laisure-Radke v. Par Pharmaceuticals, Inc.*, 2006 WL 901657 (W.D. Wash. March 29, 2006) (same); *Peters v. Astrazenaca, L.P.*, 417 F.Supp.2d 1051, 1056-57 (W.D.Wis. 2006) (same); *In re Diet Drugs*, 2006 WL 1071545 (E.D.Pa. April 21, 2006) (same), *motion to vacate denied*, (E.D.Pa. August 24, 2006); *Nelson v. Wyeth, et al.*, No. 040101670, slip op. (Phila. C.P. Sept. 6, 2006) (same);[9] *Barnhill v. Teva Pharmaceuticals USA, Inc., et al.*, Civ. No. 06-0282-CB-M (S.D.Ala. Apr. 24, 2007);[10] *Kelly v. Wyeth*, 2007 WL 1302589 (Middlesex, Mass. Super. Ct. Apr. 12, 2007).

Against this great weight of authority, including an opinion by a Circuit Court in *Desiano*, are but three cases that have found preemption since the publication of the Final Rule. *See Colacicco v. Apotex, Inc.*, 432 F.Supp.2d 514 (E.D.Pa. 2006); *Sykes v. Glaxo-Smith Kline*, 484 F.Supp.2d 289 (E.D.Pa. 2007); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, MDL 1699, 2006 WL 2374742 (N.D.Cal. 2006). In light of this scant authority, Merck's reliance on cases like *Grant v. Chevron Phillips Chem Co.*, 309 F.3d 864 (5th Cir. 2002) and *McNellis v. Pfizer, Inc.*, 2006 WL 2819046 (D.N.J. 2006) to request the addition of §1292(b) language to the court's order is unavailing. In *Grant*, the Fifth Circuit found a substantial ground for differing

---

[8] A copy of *Reeves v. Wyeth* is attached as Exhibit "C" to Plaintiffs' Memorandum of Law in Opposition to Merck's Motion for Summary Judgment

[9] A copy of *Nelson v. Wyeth* is attached as Exhibit "F" to Plaintiffs' Memorandum of Law in Opposition to Merck's Motion for Summary Judgment.

[10] Exhibit "A" to the Eighth Notice of Supplemental Authority of Plaintiffs Lene Arnold and Alicia Gomez.

opinions because the jurisdictional issue in that case had "polarized the judges of the Eastern District of Louisiana." *Grant*, 309 F.3d at 866. Similarly, in *McNellis*, the district court sitting in Camden, New Jersey found substantial grounds for differences of opinion in part because his neighboring brothers sitting across the Delaware River in Philadelphia had reached the opposite result. *Compare Perry v. Novartis Pharma. Corp.*, 456 F.Supp. 678 (E.D.Pa. 2006) (finding no preemption); *McNellis v. Pfizer,* 2005 WL 3752269 (D. N.J. Dec. 29, 2005) (same); *with Colacicco* and *Sykes*. Based upon this conflicting authority there was a clear split amongst the district courts in the Third Circuit and certification of a 1292(b) appeal was deemed to be appropriate in *McNellis*.

No such broad-based differences of opinion exist in this district. Even outside of this district, but within the Fifth Circuit, the PSC is aware of just one case where a magistrate judge reached an opposite conclusion on preemption but that opinion has since been withdrawn. *See Ackermann v. Wyeth Pharmaceuticals*, 2006 WL 2591078 (E.D.Tex. Sept. 8, 2006)(Bush, M.J.) (recommending summary judgment in part based on preemption), withdrawn, 2006 WL 3780913 (E.D.Tex. Dec. 20, 2006). Since the district court in *Ackermann* ultimately adopted a version of the magistrate's Report and Recommendation that did not include any reference to preemption, there are no known judgments by any court sitting in the Fifth Circuit that conflict with this Court's July 3, 2007 Order. *Ackermann v. Wyeth Pharmaceuticals*, 471 F.Supp.2d 739 (E.D.Texas Dec. 7, 2006) (adopting Report and Recommendation recommending summary judgment based on learned intermediary doctrine), *appeal pending*, Case No. 06-41774 (5th Cir.).[11]

---

[11] In the *Ackermann* appeal, Wyeth has raised its preemption defense as an alternative grounds for affirmance. However, because the factual record in *Ackermann* is distinguishable from the record in this litigation, a ruling by the Fifth Circuit in *Ackermann* on the preemptive effect of the Final Rule should have little or no application to this litigation. In fact, the only
(continued...)

In any event, cases such as *Ackermann*, *Colacicco*, and *Sykes*, wherein there has been a preemption finding, are factually distinguishable since they involve a class of drugs, selective serotonin reuptake inhibitors (SSRIs), which were subject to intense FDA scrutiny, *i.e.*, the FDA had repeatedly and conclusively rejected labeling that would have included a stronger warning concerning the type of injuries suffered by the plaintiffs. *See Ackermann v. Wyeth Pharmaceuticals*, 2006 WL 2591078 (E.D.Tex. Sept. 8, 2006) (finding preemption in SSRI case where FDA had specially considered and rejected labeling sought by Plaintiffs on multiple occasions); *Colacicco*, *supra*, (same); *Sykes*, *supra*, (same); *but see McNellis*, *supra*, (finding no preemption in SSRI case). The record in these cases presents an entirely difference factual pattern to justify preemption where the plaintiffs had argued that the manufacturers should have used labeling that had been affirmatively rejected by the FDA prior to the dates of injury. *See* 71 FR 3935 ("FDA believes that State laws conflict with and stand as an obstacle to achievement of the full objectives and purposes of Federal law when they purport to compel a firm to include in labeling or advertising a statement that FDA has considered and found scientifically unsubstantiated.").

The record in this litigation is completely different since the FDA never rejected a CV warning for Vioxx or determined that such a warning would have deemed the drug misbranded. To the contrary, the FDA affirmatively sought a more stringent CV warning but was rebuffed by Merck and, as a result, approved the label now at issue. This critical distinction is likely responsible for

---

[11](...continued)
other court to consider preemption in the Vioxx context reached the same conclusion as this Court. *See In re Vioxx Litig.*, Nos. ATL-L-3553-05-MT & ATL-L-1296-05-MT, slip op. (N.J. Sup. Ct. June 8, 2007) (rejecting preemption argument).

15

the conspicuous absence of any pro-preemption FDA amicus curiae brief in this litigation to date.[12] If Merck is correct in arguing that it has set forth a textbook case for preemption based on the Final Rule and prior FDA amicus briefs, one would expect to have seen an FDA amicus brief addressed to this Court given the sheer magnitude of the Vioxx litigation.

Even the record in *Bextra*, the sole preemption opinion involving a class of drugs other than SSRIs, is factually distinguishable. Here, there is strong evidence that Merck withheld critical evidence from the FDA when it approved the post-VIGOR labeling, making *Bextra* distinguishable. Accordingly, because each of the cases finding preemption since the publication of the Final Rule is distinguishable, there are no substantial grounds for differences of opinion on a controlling issue of law, even with regard to the narrower issue of whether or not the Final Rule is entitled to controlling deference.

Finally, certification of an immediate appeal would not benefit the ultimate termination of this litigation. This MDL has received numerous cases transferred to it from district courts around the country. The JPML has asked this court to prepare these cases for trial in their original forums.[13] It ill-behooves this Court's mandate to force the 5th Circuit to address the factual and legal issues on the preemption issue on appeal. The matter is better left reserved for the transferor courts and their respective Circuit Courts. Those plaintiffs, whose cases were transferred for coordinated pretrial

---

[12] For instance, the FDA submitted a brief amicus curiae in *Colacicco*. *See* Brief of Amicus Curiae the United States of America, 2006 WL 1724170 (E.D.Pa. May 10, 2006) (arguing for preemption in an SSRI case).

[13] *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach et al.*, 523 U.S. 26 (1998) (MDL court must remand transferred cases for trial in their original forum).

proceedings, should be accorded the benefit of having their own Circuit Courts determine the preemptive effect of the Final Rule.

## IV.     CONCLUSION

For the reasons set forth above, the PSC respectfully requests that the Motion to Alter or Amend be denied.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: July 26, 2007                              By:     /s/ Leonard A. Davis
                                                                **Russ M. Herman (Bar No. 6819)**
                                                                Leonard A. Davis (Bar No. 14190)
                                                                Stephen J. Herman (Bar No. 23129)
                                                                ***Herman, Herman, Katz & Cotlar, L.L.P.***
                                                                820 O'Keefe Avenue
                                                                New Orleans, Louisiana 70113
                                                                Telephone: (504) 581-4892
                                                                Facsimile: (504) 561-6024

                                                                **PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire                 Richard J. Arsenault, Esquire
Leigh O'Dell, Esquire                             NEBLETT, BEARD & ARSENAULT
BEASLEY, ALLEN, CROW, METHVIN,     2220 Bonaventure Court, P.O. Box 1190
PORTIS & MILES, P.C.                              Alexandria, LA 71301-1190
P.O. Box 4160                                          (318) 487-9874 (telephone)
234 Commerce Street                              (318) 561-2591 (telecopier)
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)                    Christopher A. Seeger, Esquire
(334) 954-7555 (telecopier)                    SEEGER WEISS
**Co-Lead Counsel**                               One William Street
                                                                New York, NY 10004
                                                                (212) 584-0700 (telephone)
                                                                (212) 584-0799 (telecopier)
                                                                **Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL  32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008  (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire **(on brief)**
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500 (telephone)
(215) 592-4663  (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX  77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA  70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC  20036-4914
(202) 783-6400 (telephone)
(307) 733-0028  (telecopier)

**AND**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier

**Counsel for Plaintiff Arnold**

**AND**

| | |
|---|---|
| Kathryn A. Snapka, Esquire<br>SNAPKA, TURMAN & WATERHOUSE LLP<br>606 N. Carancahua, Suite 1511<br>P.O. Drawer 23017<br>Corpus Christi, TX  78403<br>(361) 888-7676 (telephone)<br>(361) 884-8545 (telecopier) | Zollie C. Steakley<br>TX State Bar No. 24029848<br>MS State Bar No. 100517<br>Attorney for Plaintiffs<br>CAMPBELL~CHERRY~HARRISON~<br> DAVIS~DOVE, P.C.<br>P.O. Drawer 21387<br>Waco, Texas 76702<br>(254) 761-3300 (telephone)<br>(254) 761-3301 (telecopier) |

**Counsel for Plaintiff Gomez**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 26th day of July, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:   (504) 561-6024
ldavis@hhkc.com