UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>    Products Liability Litigation | *<br>*<br>* |
| This Document Relates to: | * MDL No. 1657<br>* |
| LENE ARNOLD | * SECTION L<br>* |
| versus | * JUDGE ELDON E. FALLON<br>* |
| MERCK & CO., INC.<br>    Defendant | * MAGISTRATE JUDGE<br>* KNOWLES<br>* |
| Case No. 05-2627 | *<br>* |
| & | *<br>* |
| ALICIA GOMEZ | *<br>* |
| versus | *<br>* |
| MERCK & CO., INC.<br>    Defendant | |
| Case No. 05-1163 | |

* * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY IN SUPPORT OF MOTION AND MEMORANDUM TO ALTER OR AMEND THE COURT'S JULY 3, 2007 ORDER DENYING MERCK'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.    There Is No Serious Question That FDA Preemption Of State Law Claims Is A Controlling Issue Of Law On Which There Are Substantial Grounds For Differences Of Opinion. ........................................................................................... 2

II.    Resolution Of The Preemption Question Would Materially Advance The Termination Of This Litigation. ................................................................................ 4

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page

**Cases**

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ........................................................................................................... 7

*Dusek v. Pfizer, Inc.*,
  No. 02-3559, 2004 U.S. Dist. LEXIS 28056 (S.D. Tex. Feb. 20, 2004)) ................................ 3

*Garcia v. Wyeth-Ayerst Labs.*,
  385 F.3d 961, 966 (6th Cir. 2004) ....................................................................................... 7

*Hurley v. Lederle Labs.*,
  863 F.2d 1173 (5th Cir. 1988)) ............................................................................................ 3

*In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.*,
  2006 WL 2374742, at *10 (N.D. Cal. Aug. 16, 2006) ........................................................... 8

*In re Uranium Antitrust Litig.*,
  617 F.2d 1248, 1263 (7th Cir. 1980) .................................................................................... 5

*In re Vioxx Prods. Liab. Litig.*,
  360 F. Supp. 2d 1352 (J.P.M.L. 2005) ................................................................................ 10

*Kobar v. Novartis Corp.*,
  378 F. Supp. 2d 1166, 1173 (D. Ariz. 2005) ........................................................................ 7

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) ............................................................................................................. 10

*McNellis ex rel. DeAngelis v. Pfizer, Inc.*,
  No. Civ. 05-1286(JBS), 2006 WL 2819046, at *11 (D.N.J. Sept. 29, 2006) ......................... 2

*Needleman v. Pfizer, Inc.*,
  No. 03-3074, 2004 U.S. Dist. LEXIS 15495 (N.D. Tex. Aug. 6, 2004) ................................. 3

*Osburn v. Anchor Labs.*,
  825 F.2d 908 (5th Cir. 1987) ............................................................................................... 3

*Zammit v. Shire U.S., Inc.*,
  415 F. Supp. 2d 760, 767-68 (E.D. Mich. 2006) .................................................................. 7

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................................ 10

28 U.S.C. § 1407(b) ................................................................................................................ 10

**INTRODUCTION**

Defendant Merck & Co., Inc. ("Merck") respectfully submits this reply brief in support of its Motion to Alter or Amend the Court's July 3, 2007 Order Denying Merck's Motion for Summary Judgment to Include Certification For Interlocutory Review Pursuant to 28 U.S.C. § 1292(b).

There is no serious question that this Court's ruling on Merck's preemption-based motion for summary judgment "involves a controlling question of law as to which there is substantial ground for differences of opinion." *Hartz v. Adm'rs of Tulane Educ. Fund*, CA No. 06-2977, 2007 WL 1232211, at *2 (E.D. La. Apr. 25, 2007). The Court acknowledged as much in its Order, which cited a number of conflicting rulings on the fundamental question of what preemptive force, if any, the FDA's prescription-drug labeling regulations have on claims challenging FDA-approved labels. Accordingly, plaintiffs focus most of their efforts on the second criterion for interlocutory review, conjuring up disputed issues of fact to support their argument that review will not "materially advance the ultimate termination" of this litigation. *Id.*

Plaintiffs' sudden desire to depose two sitting state governors (never mentioned until the Court issued its ruling and Merck sought certification for interlocutory review),[1] along with their newfound interest in a four-week study of 227 people, are nothing more than a stalling attempt to prevent the Fifth Circuit from ruling on preemption issues at this critical point in the litigation. Plaintiffs fail to note, of course, that if the Fifth Circuit sides with Merck, the factual disputes they identify would be rendered irrelevant. Under Merck's view of the preemption question here, the FDA, not the states, has exclusive authority to regulate applicants' communications with the agency. If the Fifth Circuit agrees with that view (grounded in the Supreme Court's

---

[1] The names of the potential deponents are drawn from a document the FDA placed in its rulemaking docket months ago and of which plaintiffs were aware long before the Court's ruling.

1

*Buckman* decision), the supposed factual disputes over Merck's communications with the FDA would not preclude an immediate termination of Arnold's and Gomez's claims in Merck's favor.

Despite plaintiffs' efforts to downplay the significance of this Court's ruling on the abstract legal issue presented by Merck's motion, the preemption question is critical to a substantial number of Vioxx cases and to pharmaceutical litigation throughout the Fifth Circuit. Accordingly, the only sensible solution is to present the question to the Fifth Circuit now so that it can render a binding decision on the preemptive force, if any, of the FDA's prescription-drug labeling regulations on claims challenging FDA-approved labels.

## ARGUMENT

**I.    There Is No Serious Question That FDA Preemption Of State Law Claims Is A Controlling Issue Of Law On Which There Are Substantial Grounds For Differences Of Opinion.**

The question whether plaintiffs' claims are preempted is plainly a controlling question of law, and plaintiffs do not argue otherwise. *See McNellis ex rel. DeAngelis v. Pfizer, Inc.*, No. Civ. 05-1286(JBS), 2006 WL 2819046, at *11 (D.N.J. Sept. 29, 2006) (preemption is a controlling question of law because it "would be dispositive if decided in [] favor" of the pharmaceutical manufacturer). But plaintiffs do contend, remarkably, that there are no "substantial grounds for a difference of opinion" on the question. That contention is belied by the conflicting results reached by numerous courts, as this Court itself explicitly noted. (Preemption Order at 16.)[2] In the *McNellis* court's words, the "split in authority" on the issue of

---

[2]    Plaintiffs seem to be suggesting that § 1292(b) certification is not warranted merely because more decisions reject preemption than find it. (Pls.' Opp. 12-13.) But that does nothing to refute the actual existence of a direct conflict, which is what matters for purposes of § 1292(b). What is more, the vast majority of the post-Preamble decisions relied upon by plaintiffs address cases involving the alleged failure to disclose ***newly-discovered*** risk information. As Merck has explained, those cases are readily distinguishable from the instant cases, which are ***not*** based on any information that became available after approval of the VIGOR label, but instead directly challenge the adequacy of the VIGOR label itself based on the information known to both Merck and the FDA at the time. (*See* Pls.' Stmt. of Material Facts at 31; *see also infra* at 4.)

2

FDA preemption "certainly constitutes a sufficient number of conflicting and contradictory opinions." 2006 WL 2819046, at *12.

Plaintiffs try to disparage this observation, suggesting that the *McNellis* court was motivated by disagreement with its "brothers sitting across the Delaware River in Philadelphia," and that there is no similar conflict among the district courts of the Fifth Circuit. (Pls.' Opp. 14.) But there was nothing provincial about the *McNellis* court's § 1292(b) certification; to the contrary, the court's order noted – quite correctly – that "district courts **throughout the country** have come to different conclusions" with respect to the preemptive force of the FDA's labeling regulations. 2006 WL 2819046, at *12 (emphasis added). And contrary to plaintiffs' assertion of uniformity within the Fifth Circuit, the *McNellis* court explicitly cited two decisions from within this Circuit that find federal preemption of failure-to-warn claims. *Id*. (citing *Needleman v. Pfizer, Inc*., No. 03-3074, 2004 U.S. Dist. LEXIS 15495 (N.D. Tex. Aug. 6, 2004) and *Dusek v. Pfizer, Inc*., No. 02-3559, 2004 U.S. Dist. LEXIS 28056 (S.D. Tex. Feb. 20, 2004)). Plaintiffs ignore these decisions completely.

Plaintiffs also contend that there is no ground for a difference of opinion because the Fifth Circuit "has already decided the issue in favor of Plaintiffs." (Pls.' Opp. 11 (citing *Osburn v. Anchor Labs*., 825 F.2d 908 (5th Cir. 1987) and *Hurley v. Lederle Labs*., 863 F.2d 1173 (5th Cir. 1988)).) Not so. As Merck has previously explained, both decisions relied on by plaintiffs addressed the prior labeling regulations, and neither speaks directly to the issue presented here. The court in *Osburn* held only that FDA regulations did not preempt a state-law claim based on a failure to disclose a **newly-discovered risk**, *see* 825 F.2d at 912-13, which is not the situation here, *see supra* note 1. And *Hurley* holds only that the FDCA itself does not occupy the entire field of vaccine regulation, *see* 863 F.2d at 1177, which nobody argues here. Indeed, if anything,

3

*Hurley* affirmatively **supports** preemption in the circumstances of these cases – after noting that the FDA determines the "proper warning based upon the information provided," the *Hurley* court held that a "[a] state law determination on this issue should not be interjected to overrule the decision of the FDA." *Id*. at 1179. "Thus, assuming that the FDA has processed all the relevant and available information in arriving at the prescribed warning, its decision as to the proper wording must preempt by implication that of a state." *Id*. at 1177.

At a minimum, plaintiffs certainly err in asserting that the Fifth Circuit has already decided the preemption question presented here in their favor. And even if there is any room to debate the question, that only underscores the need for review of this issue by the Fifth Circuit, so it can clarify its precedents, address the widespread controversy among lower courts, and conclusively resolve the preemptive effect of the FDA's current labeling regulations on state law cases within this Circuit.

## II. Resolution Of The Preemption Question Would Materially Advance The Termination Of This Litigation.

Given the clear, substantial grounds for differences of opinion reflected in the many decided cases on FDA preemption, the only remaining question is whether appellate resolution of that issue favorably to Merck would materially advance the ultimate termination of this litigation. The answer plainly is yes. Plaintiffs' argument to the contrary reflects a misunderstanding both of Merck's preemption argument and of the factual record pertinent to that argument.

Plaintiffs contend that a decision favorable to Merck would not advance termination of this case because no matter what the Fifth Circuit holds, this Court would still be required to address what they characterize as disputed issues of fact related to Merck's preemption defense. (Pls.' Opp. 3-9.) Specifically, plaintiffs identify three areas of supposed factual dispute: (1)

4

whether Merck adequately disclosed available information to the FDA before approval of the post-VIGOR label; (2) whether Merck came into possession of material information about Vioxx risks after approval of the post-VIGOR label; and (3) whether the FDA consulted adequately with state and local governments pursuant to Executive Order 13132.  None of these purported factual disputes precludes immediate Fifth Circuit review of this Court's Preemption Order.

As a threshold matter, plaintiffs ignore the basic principle that § 1292(b) review involves the certification of an "abstract issue of law" that could "materially advance" the litigation – here, whether FDA's prescription-drug labeling regulations preempt claims challenging FDA-approved labels – not necessarily a specific ruling that will immediately result in the appellate court directing the entry of judgment in one party's favor.  (*See* Merck Mem. 4-5.)  As explained below, it is true (contrary to plaintiffs' submission) that a ruling on FDA preemption by the Fifth Circuit *could* resolve these cases completely in Merck's favor – which should be all that matters here – but it is beyond question that, ***at a minimum***, a Fifth Circuit decision on the issue will facilitate the resolution of numerous potentially dispositive pre-trial motions, discovery and evidentiary disputes, and jury instructions.

The central function of § 1292(b) is to "minimize[e] the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings," 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3930 (2007), and "to assure orderly and efficient administration of complex cases," *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1263 (7th Cir. 1980).  In this case, essentially any ruling by the Fifth Circuit on the preemptive effect of FDA regulations could have substantial effects in terms of the efficiency of the litigation, by simplifying and streamlining various issues relating to the role of FDA regulations in failure-to-warn cases.  This Court itself acknowledged

as much in its Preemption Order, at 1 n.1, and plaintiffs likewise agreed that the Fifth Circuit is "the elephant in the room" on the preemption issue, Mot. Hr'g Tr. 41:24-42:1, Nov. 17, 2006. In short, the Fifth Circuit's views on FDA preemption will have a major impact either way on this litigation – and they may well be decisive.

Plaintiffs, however, insist that even a decision favorable to Merck will not materially advance the termination of the litigation, because of the supposedly disputed factual issues noted above. Plaintiffs have it backwards: whether these supposed factual issues have any impact on the preemptive effect of the FDA regulations is part and parcel of the legal issue Merck seeks to place before the Fifth Circuit.

The main alleged factual dispute raised by plaintiffs concerns the extent of Merck's disclosures to the FDA prior to approval of the post-VIGOR label. (Pls.' Opp. 4-7.)[3] Notably, plaintiffs never pointed to any such dispute before now, *see generally* Pls.' Stmt. of Material Facts, and for good reason – it simply does not respond to the preemption argument Merck is asserting. As Merck has previously explained, the regulatory determination reflected in an FDA-approved label preempts state-law claims challenging the label because the FDA is an expert agency much better positioned than lay jurors to weigh the costs and benefits of new drugs across the broad population of all potential users, and to make the expert determination about what balance should be struck between necessary warning and harmful overwarning. And as the Supreme Court has recognized, a crucial component of the agency's ability to make those

---

[3] Specifically, plaintiffs contend that Merck did not disclose the complete results of one four-week study of 227 patients comparing Vioxx and Celebrex ("Protocol 906"), even though plaintiffs' own exhibits show that Merck disclosed the two "serious adverse experiences" from the study – which is what the disclosure protocol required – and even though the same exhibits make clear that the FDA was fully aware of the study and could have pursued it further had the agency deemed the comparatively small study material in light of all the information it had available. (*See* Pls.' Ex. F at 16 (Safety Update Report submitted to FDA indicating that "[a] total of two patients had serious adverse clinical experiences" in Protocol 906).)

6

judgments is its exclusive control over communications between itself and new drug applicants. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).

In *Buckman*, the Court explained that in order to achieve the delicate balance of the various goals advanced by the FDCA, Congress "amply empower[ed] the FDA to punish and deter fraud against the Agency." *Id*. at 348. Permitting state courts to police the same conduct would "skew[]" that balance. *Id*. Pharmaceutical companies, the Court reasoned, would "fear that their disclosures to the FDA, although deemed appropriate by the Agency, will later be judged insufficient in state court." *Id*. at 351. Such fear would encourage pharmaceutical companies to submit mountains of unnecessary information, thereby placing additional burdens on the FDA and delaying the approval of beneficial drugs or indications. *See id*. Accordingly, the *Buckman* Court held that a claim is preempted if it rests on proof of fraud on the FDA – FDA has the exclusive authority to identify and punish asserted fraud against the agency. *See also Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 966 (6th Cir. 2004) ("state court findings of fraud on the FDA . . . would raise the same inter-branch meddling concerns that animated *Buckman*"); *Zammit v. Shire U.S., Inc.*, 415 F. Supp. 2d 760, 767-68 (E.D. Mich. 2006) (state law claim "impliedly preempted by federal law to the extent that it invites judicial inquiry, in the context of a private product liability action, into the question whether a drug manufacturer committed fraud on the FDA in securing the agency's approval of a drug"); *Kobar v. Novartis Corp.*, 378 F. Supp. 2d 1166, 1173 (D. Ariz. 2005) (state law claims "requir[ing] a plaintiff to prove fraud on the FDA in order to collect punitive damages place state courts, as finders of fact, in the uncomfortable and difficult position of having to answer the question of what role, if any, the allegedly withheld information would have played in the FDA's complicated approval process").

Thus, while Merck certainly disputes plaintiffs' suggestion that it withheld anything material from the FDA prior to approval of the post-VIGOR label, that factual dispute is beside the point for present purposes. What matters here is that even if plaintiffs assert that Merck failed to produce material information to the FDA, their state law claims still would be preempted by the FDA's labeling decision, because both the process and substance of such decisions are subject to the FDA's exclusive authority.[4] As Judge Breyer explained in an analogous setting: "Plaintiffs' allegations that Pfizer withheld material cardiovascular risk data from the FDA does not change the preemption analysis. The law is well established that a claim premised on a drug manufacturer's failure to provide data to the FDA is preempted." *In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.*, 2006 WL 2374742, at *10 (N.D. Cal. Aug. 16, 2006). Plaintiffs obviously disagree with that analysis of preemption on its merits, but that is precisely the point – it is an argument on the merits of the preemption issue, not a "disputed factual issue" that should delay review of the fundamental preemption question by the Fifth Circuit.

The other "factual disputes" plaintiffs identify are simply makeweight. Plaintiffs assert that there are factual issues concerning "whether Merck learned of additional data" after approval of the post-VIGOR label, and thus whether Merck might have had a renewed duty to warn. (Pls.' Opp. 7.) But plaintiffs in these cases have **never** argued that Merck came into possession of new risk information **after** the VIGOR label was approved – their claims have instead focused solely on what Merck and the FDA knew before the label was approved. *See supra* note 1. Notably, even after exhaustive discovery and multiple trials, they do not point in

---

[4] As Merck has previously explained (Reply Mem. in Supp. of Merck's Mot. for Summ. J. at 6, 10-11), states are free to impose "parallel" statutory and common law remedies for violations of the FDA's substantive labeling requirements, but they may not impose requirements "different from, or in addition to" those requirements established by the FDA. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996).

their opposition to a shred of evidence suggesting the existence of a factual controversy on this issue.

Nor is there any relevant factual dispute concerning "whether the FDA complied with Executive Order 13132." (Pls.' Opp. 8.) That Order merely requires an agency to "consult, to the extent practicable, with State and local officials." Plaintiffs fault the FDA for publishing a summary of those consultations after the preemption rule was finalized, and claim they now "wish to conduct discovery to confirm that the consultation did not justify publication of the Final Rule." (*Id.* at 8-9.) But on its face, Executive Order 13132 imposes no obligation on federal agencies to prove that their consultations with state and local officials "justify" their regulatory conclusions. Executive Order 13132 requires an agency only to "*consult*" – it imposes no requirement on a federal agency to obtain the agreement of state and local officials, or to otherwise establish that the rules they adopt are endorsed by those officials. Plaintiffs thus have no right to discover whether the FDA's conclusions were "justified," and this argument has no place in the preemption analysis. It is undisputed that the FDA consulted with state and local officials, which should end the inquiry. Again, if plaintiffs wish to argue that the degree of consultation as stated by the FDA is inadequate as a matter of law, or to argue that the Order is judicially enforceable (as opposed to enforceable against agencies by the Executive Branch of which they are part), those legal arguments can be made before the Fifth Circuit as substantive reasons to deny the FDA's labeling regulations any preemptive force. They are not genuine "factual" disputes that should preclude the presentation of those arguments to the Fifth Circuit now, when an appellate ruling on FDA preemption can and will have a substantial – and perhaps decisive – impact on the continuing progress of this litigation.

9

Finally, plaintiffs half-heartedly suggest that the "factual and legal issues on the preemption issue" are "better left reserved for the transferor courts and their respective Circuit Courts." (Pls.' Opp. 16.) The suggestion makes no sense. This Court has a statutory duty to resolve pre-trial motions. The MDL statute provides that the MDL court "shall" conduct pretrial proceedings, *see* 28 U.S.C. § 1407(b), and as the Supreme Court has noted – in a case construing the MDL statute – " the mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998). When pre-trial motions are otherwise appropriate for resolution, the fact that some cases may one day be returned to a transferor court does not defeat the need for such resolution. Indeed, the fact that this is an MDL proceeding makes interlocutory review all the more appropriate because it would promote the goals of efficiency and consistency by permitting swift resolution of a critical and controlling issue on a coordinated basis. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) (coordination of Vioxx litigation will "promote the just and efficient conduct of the litigation," "avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary"). Plaintiffs' proposal, on the other hand, would defeat these goals by deferring appellate guidance and inviting inconsistent decisions on the same question by other circuits. Indeed, plaintiffs' suggestion that each circuit should decide the question separately conflicts directly with their insistence that the question is not subject to serious differences of opinion.

## **CONCLUSION**

For the reasons stated above, and for the reasons previously stated, the Court should amend and certify its July 3, 2007 Preemption Order for immediate interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

10

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

John H. Beisner
Jonathan D. Hacker
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

11

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 1st day of July, 2007.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel