# EXHIBIT A

Westlaw.

Slip Copy
Slip Copy, 2007 WL 2155665 (E.D.Pa.)
(Cite as: Slip Copy)

Page 1

**Gates** v. Rohm and **Haas** Co.
E.D.Pa.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Glenn **GATES**, et al., Plaintiffs,
v.
ROHM AND **HAAS** COMPANY, et al., Defendants.
**Civil Action No. 06-1743.**

July 26, 2007.

Aaron J. Freiwald, Layser & Freiwald PC, Philadelphia, PA, for Plaintiffs.
Dennis R. Suplee, Jennifer A. Battle, Ralph G. Wellington, Stephen Andrew Fogdall, Kate A. Kleba, Schnader Harrison Segal and Lewis, L.L.P., Albert G. Bixler, Elizabeth S. Gallard, Anita J. Murray, Eckert Seamans Cherin & Mellott LLC, Philadelphia, PA, Arthur A. Vogel, Jr., Catherine A. Faught, Cristina D. Hernandez-Malaby, David B. Bartel, Christine Cowles, Quarles and Brady LLP, Milwaukee, WI, for Defendants.

*MEMORANDUM*
PRATTER, J.
*1 In this putative class action, Glenn and Donna Gates, on behalf of themselves and all others similarly situated, sued Rohm and Haas Company, Rohm and Haas Chemicals, LLC (collectively, "Rohm and Haas"), Morton International, Inc. and Modine Manufacturing Company [FN1] pursuant to the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.,* and state law for damages allegedly resulting from contamination of their drinking water by pollutants that the Plaintiffs claim were generated and released by the Defendants.

> FN1. Defendants Huntsman and Huntsman Polyurethanes were dismissed without prejudice 1 by stipulation on March 23, 2007 (Docket Nos. 91 and 93).

Rohm and Haas and Morton filed a Motion for Judgment on the Pleadings with respect to the Plaintiffs' medical monitoring claim, contending that no such cause of action exists under Illinois law. The Gateses oppose the Motion. For the reasons discussed more fully below, the Court will deny the Motion.

**FACTUAL BACKGROUND**

The Gateses and the proposed class members are residents and property owners in McCullom Lake Village, an Illinois town of approximately 1000 people and just over 400 homes, according to the 2000 Census. (*See* McCullom Lake Village, Illinois Fact Sheet, American Factfinder, United States Census Bureau, *available at* http://factfinder.census.gov (last visited 4/27/07)).

Rohm and Haas Company is an international specialty chemicals company; Morton International, Inc. is its wholly owned subsidiary. Until January 1, 2005, Morton operated a speciality chemicals manufacturing facility in Ringwood, Illinois (the "Rohm/Morton facility"), located directly north and allegedly hydrologically [FN2] and hydrogeologically [FN3] "up gradient" from McCullom Lake Village. As of January 1, 2005, Rohm and Haas Chemicals, LLC, a wholly owned subsidiary of Rohm and Haas, has been operating the Rohm/Morton Facility. Modine Manufacturing Company is an international manufacturer of heating and cooling technology. Since 1961, Modine has operated a manufacturing facility in Ringwood, Illinois (the "Modine Facility"), also located directly north and allegedly hydrologically and hydrogeologically "up gradient" from McCullom Lake Village.

> FN2. Hydrology is "a science dealing with the properties, distribution, and circulation of water on and below the earth's surface and in the atmosphere." Merriam-Webster Dictionary

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy Page 2
Slip Copy, 2007 WL 2155665 (E.D.Pa.)
**(Cite as: Slip Copy)**

609 (11th ed.2003).

FN3. Hydrogeology is "a branch of geology concerned with the occurrence, use, and functions of surface water and groundwater." Merriam-Webster Dictionary 608 (11th ed.2003).

Mr. and Mrs. Gates allege that the Defendants generated and released "chlorinated solvents," "volatile organic compounds," FN4 "other noxious and toxic substances" and/or "hazardous substances" (Compl.¶¶ 23, 28, 55, 61, 64, 66, 131, 134, 140, 145, 146, 150, 152-54, 172(a) and p. 6), that have contaminated the drinking water and air in McCullom Lake Village. According to the Gateses, the release of these hazardous substances has caused at least five cases of malignant brain cancer in residents of McCollum Lake Village, has engendered fear on the part of the residents, and has resulted in expenditures associated with obtaining safe drinking water and taking precautions against further exposure. The Gateses and the proposed class seek relief that would, *inter alia*, require the Defendants to fund testing and medical monitoring of the Gateses and putative class members.

FN4. Specifically, the "VOC's" allegedly at issue here are trichloroethene ("TCE"), 1,1-dichloroethylene ("1, 1-DCE") and vinyl chloride ("VC").

**LEGAL STANDARD**

*2 Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time so as not to delay the trial, any party may move for judgment on the pleadings." Judgment on the pleadings will not be granted unless the movant clearly establishes that there are no material issues of fact, and that he or she is entitled to judgment as a matter of law. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219-20 (3d Cir.2005). To decide a motion for judgment on the pleadings, a court must view the facts presented in the pleadings and draw any inferences therefrom in a light most favorable to the nonmoving party. *Id.* If matters outside the pleadings are presented to, and not excluded by, the court on a motion for judgment on the pleadings, the motion shall be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56. Fed.R.Civ.P. 12(c).

**DISCUSSION**FN5

FN5. The parties dispute whether Illinois law, which is unclear with respect to medical monitoring, or Pennsylvania law, which unequivocally recognizes a claim for medical monitoring, should apply here. The Court need not resolve this dispute at this juncture because the Court holds that the Illinois Supreme Court likely would recognize a claim for medical monitoring, thus mooting the conflict of law issue.

While the Supreme Court of Illinois has not yet recognized a cause of action for medical monitoring, "[b]ecause diseases and injuries caused by the exposure of toxic substances are often latent, relief in the form of medical monitoring has developed as a means to compensate plaintiffs that have been wrongfully exposed to various toxic substances and require medical testing because of that exposure." *Muniz v. Rexnord Corp.*, No. 04-2405, 2006 WL 1519571 (N.D.Ill. May 26, 2006). The Defendants contend that because the Supreme Court of Illinois has not recognized medical monitoring damages in a case where there is no present physical injury, the Court cannot do so today. The Plaintiffs respond that prior decisions of the Illinois Supreme Court, as well as decisions of the lower Illinois appellate courts, indicate a strong likelihood that the Illinois Supreme Court would recognize a medical monitoring claim under such circumstances as those presented here.

When the state's highest court has not addressed the precise question of state law presented, federal courts "must forecast the position the supreme court of the [appropriate jurisdiction] would take on the issue." *Clark v. Modern Group,* 9 F.3d 321, 326 (3d Cir.1993); *Borman v. Raymark Indus., Inc.,* 960 F.2d 327, 331 (3d Cir.1992). "An authoritative signal that a state's highest

court would modify existing state law may be gleaned from lower state court decisions, the decisions of other courts, and treatises or other scholarly works." *City of Philadelphia v. Lead Industries Ass'n, Inc.,* 994 F.2d 112, 123 (3d Cir.1993). Although not dispositive, decisions of state intermediate appellate courts "should be accorded significant weight in the absence of an indication that the highest state court would rule otherwise." *Id.* (*citing Rolick v. Collins Pine Co.,* 925 F.2d 661, 664 (3d Cir.1991)).

Thus, this Court is not free to shape state common law as it sees fit, *Adams v. Madison Realty & Dev., Inc.,* 853 F.2d 163, 168 (3d Cir.1988), and must leave it to the state courts to expand their common law, *Tidler v. Eli Lilly & Co.,* 851 F.2d 418, 424 (D.C.Cir.1988). The Court's role "is to apply the current law of the appropriate jurisdiction, and leave it undisturbed." *Id.* ("We must apply the law of the forum as we infer it presently to be, not as it might come to be.") Mindful of these federalism concerns, the Court predicts that in a case such as presented here the Illinois Supreme Court would recognize a claim for medical monitoring under Illinois law and, therefore, the Court so holds today.

*3 The issue presented in this case is whether, under Illinois law, a plaintiff may recover the cost of medical testing and future medical monitoring where the plaintiff has no present physical injury. To predict the position of the Illinois Supreme Court with respect to this issue, the Court must reconcile two bedrock principles of Illinois law. On the one hand, there is the longstanding principle that "[i]n order to recover for medical expenses, the plaintiff must prove that he or she has paid or become liable to pay a medical bill, that he or she necessarily incurred the medical expenses *because of injuries resulting from the defendant's negligence,* and that the charges were reasonable for services of that nature." *Arthur v. Catour,* 216 Ill.2d 72, 295 Ill.Dec. 641, 833 N.E.2d 847, 853 (Ill.2005) (*citing North Chicago Street Ry. Co. v. Cotton,* 140 Ill. 486, 29 N.E. 899, 902 (1892)). On the other hand, there is the single recovery principle, which "requires that all damages, future as well as past, must be presented and considered at the time of trial." *Dillon v. Evanston Hospital,* 199 Ill.2d 483, 264 Ill.Dec. 653, 771 N.E.2d 357, 369 (Ill.2002). In light of the single recovery principle, the Illinois Supreme Court held that "[a] plaintiff can obtain compensation for a future injury that is not reasonably certain to occur, but the compensation would reflect the low probability of occurrence." *Id.* at 370.

The defense would reconcile the tension between these two principles by distinguishing *Dillon* on the ground that the plaintiff in *Dillon* had a present physical injury. However, the distinction between *Dillon* and the present case is *not* the existence or absence of a present physical injury, but rather the cause of action at issue. In *Dillon,* the plaintiff sought to recover for her *increased risk of future harm* due to her present physical injury. *Dillon* held that a plaintiff could recover for *an increased risk of future harm* only if he or she established that the defendant's breach of duty caused a present injury that, in turn, resulted in the increased risk. *Dillon,* 264 Ill.Dec. 653, 771 N.E.2d at 369.

An action to recover the cost of medical monitoring is distinct from an action for compensation for an increased risk of future harm; the former does not require a present physical injury while the latter does.[FN6] The distinction between a claim for medical monitoring and a claim for increased risk of future harm lies in the fact that the cost of diagnostic testing is a compensable "injury," albeit financial, in and of itself. In keeping with the principle of single recovery, the Illinois state and federal courts that have addressed the issue of medical monitoring in the absence of a present physical injury have either assumed that such a cause of action exists, or recognized that the cost of diagnostic testing is a compensable injury.

> FN6. While the specific holding in *Dillon* may be distinguished on these grounds, the broader principle of single recovery remains entirely applicable even where there is no present physical injury.

In *Lewis v. Lead Industries Association, Inc.,* 342 Ill.App.3d 95, 276 Ill.Dec. 110, 793 N.E.2d 869 (Ill.App.2003), the Appellate Court of Illinois for the First District, Third Division held that the cost of

diagnostic testing to detect an injury or disease made necessary by a defendant's breach of duty is a compensable injury, even in the absence of any present physical injury. *Id.* at 873. That court explained that "[t]here is a fundamental difference between a claim seeking damages for an increased risk of future harm and one which seeks compensation for the cost of medical examinations. As opposed to a claim for increased risk of future harm, "a claim seeking damages for the cost of a medical examination is not speculative and the necessity for such an examination is capable of proof within a 'reasonable degrees of medical certainty.'" *Id.* at 874.

*4 More recently, in *Jensen v. Bayer AG*, 371 Ill.App.3d 682, 308 Ill.Dec. 888, 862 N.E.2d 1091 (Ill.App.2007), the Appellate Court of Illinois for the First District, Sixth Division assumed without deciding that the Illinois Supreme Court would recognize a claim for medical monitoring without proof of present physical injury. *Id.* at 1100. That court did not reach the issue because the plaintiff in that case "presented no evidence to the effect that 'medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease.'" *Id.* (quoting *Carey v. Kerr-McGee Chemical Corp.*, 999 F.Supp. 1109, 1119 (N.D.Ill.1998)).

Federal courts in Illinois have reached similar conclusions, holding that "if faced with the precise issue now before the court, the Illinois Supreme Court would uphold a claim for medical monitoring without requiring plaintiffs to plead and prove either a present physical injury or a reasonable certainty of contracting a disease in the future." *Carey*, 999 F.Supp. at 1119. As the *Carey* court explained,

[m]edical monitoring claims acknowledge that, in a toxic age, significant harm can be done to an individual by a tortfeasor, not withstanding latent manifestation of that harm. Moreover, as we have explained, recognizing this tort does not require courts to speculate about the probability of future injury. It merely requires courts to ascertain probability that the far less costly remedy of medical supervision is appropriate. Allowing plaintiffs to recover the cost of this care deters irresponsible discharge of toxic chemicals by defendants and encourages plaintiffs to detect and treat their injuries as soon as possible....

That policy is certainly equally valid in Illinois. Recognizing the very real present need for medical monitoring, should expert testimony establish that such expenditures are necessary 'to a reasonable degree of medical certainty,' is totally consistent with and in no way compromises the Illinois courts' refusal to award damages for future injuries that cannot be established to such a degree of medical certainty.

*Id.* at 1119-20. Likewise, in *Muniz,* a case factually similar to the present case, the district court upheld a claim for long-term medical monitoring of residents in an area affected by groundwater and air contamination. Taking care to distinguish the plaintiffs' claim seeking compensation for the costs of medical examination from a claim seeking damages for an increased risk of future harm, the court held that relief in the form of medical monitoring is cognizable under Illinois law. *Muniz*, 2006 WL 1519571, at *6-7.

The single case holding otherwise, *Morissey v. Eli Lilly & Co.*, 76 Ill.App.3d 753, 32 Ill.Dec. 30, 394 N.E.2d 1369 (Ill.App.1979), is not directly on point. The dispositive issue in that case was the inadequacy of the nexus between the alleged exposure and "the possibility of developing cancer or other injurious conditions in the future." Explaining that the alleged "existence of latent disease" is an insufficient basis upon which to recognize a present injury," the Court held that "possible future damages in a personal injury action are not compensable unless reasonably certain to occur." *Id.* at 1376 (citing *Steven v. Illinois Central R.R. Co.*, 306 Ill. 370, 137 N.E. 859 (Ill.1922)). *Morrissy* thus addressed circumstances where the alleged exposure was not sufficiently linked to the need for future medical monitoring. Given the significant distinction between the speculative claim for recovery for an increased risk of future harm and the more concrete claim seeking compensation for the costs of medical monitoring, *Morrissy* cannot be stretched to preclude a claim for medical monitoring under all factual circumstances. Moreover, *Dillon* expressly abrogated *Steven*, 306 Ill. 370, 137 N.E. 859 (Ill.1922), the case upon which *Morrissy* relied for the proposition that a plaintiff cannot recover for future injury in the absence of a present physical injury.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2155665 (E.D.Pa.)
**(Cite as: Slip Copy)**

Page 5

*5 Here, the circumstances presented are more closely analogous to *Muniz, Lewis* and *Carey* than they are to *Jensen* and *Morrissy*. In their Prayer for Relief, the Plaintiffs seek to create "a court supervised fund, to be paid for by defendants, which will cover the costs of medical monitoring for plaintiffs and others in the class area who wish to partake of the prescribed medical testing, screening and evaluations ...." (Am. Compl. Prayer for Relief ¶ F.) The Plaintiffs have sufficiently alleged that this need for medical monitoring and testing is the result of the exposure to chemicals produced and released by the Defendants and that such exposure can cause various serious injuries and diseases. (*See id.* at ¶¶ 67-72, 91, 92, 98, 102.) The Plaintiffs also alleged that "[t]he requested medical monitoring is reasonably necessary according to scientific and medical principles." (*Id.* at ¶ 101, 308 Ill.Dec. 888, 862 N.E.2d 1091.)

The Defendants rely heavily on a statement in *Jensen* distinguishing *Lewis* on the grounds that the plaintiff in *Lewis* sought compensation for the cost of "medical testing to detect a *present* physical injury." *Jensen*, 308 Ill.Dec. 888, 862 N.E.2d at 1101 (*citing Lewis*, 276 Ill.Dec. 110, 793 N.E.2d at 873-74). Thus, concluded *Jensen*, the *Lewis* court "did not address the question posed by plaintiff here; namely, whether a plaintiff may bring a claim for medical monitoring for potential *future* harm, where no present injury is shown." *Id.* Upon close analysis, however, nothing in *Lewis* suggests an attempt to distinguish between a one-time diagnostic test to detect a *present* physical injury and multiple diagnostic tests, perhaps recurring over time, to detect then-*present* physical injuries.[FN7] Indeed, there is little logic in drawing such a distinction. The distinction emphasized in *Lewis* was "the difference between a claim seeking damages for an increased risk of future harm and one which seeks compensation for the cost of medical examination." *Lewis*, 276 Ill.Dec. 110, 793 N.E.2d at 873. The cost of a medical examination is the cost of a medical examination, whether that examination takes place next week or next year. As the Supreme Court of Illinois has recognized, under the principle of single recovery, plaintiffs do not have the option to wait until symptoms appear; nor would it be preferable for them to so. Given the apparent trend of the federal and appellate courts in Illinois, the cost of diagnostic testing, even if periodic or ongoing, likely is a compensable injury under Illinois law.

> FN7. Moreover, the plaintiffs in *Lewis* did in fact seek not only "medical screenings" and "assessments," but also "monitoring," which indicates an on-going aspect of the claim.

Whether the Plaintiffs' allegations will be borne out by the evidence remains to be seen after the close of discovery on the merits. In the context of a motion for judgment on the pleadings, the question is not whether the Plaintiffs have presented sufficient "evidence to the effect that 'medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease." *Jensen*, 308 Ill.Dec. 888, 862 N.E.2d at 1100. Rather, the question is whether there are any material issues of fact and whether the movant is entitled to judgment as a matter of law. *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219-20 (3d Cir.2005) (holding that judgment on the pleadings will not be granted unless the movant clearly establishes that there are no material issues of fact, and that he or she is entitled to judgment as a matter of law). At this stage of the proceedings, however, viewing the facts presented in the pleadings and drawing all inferences therefrom in a light most favorable to the nonmoving party, as the Court must in the context of this Motion, *id.*, the pleadings here suffice to demonstrate a cognizable cause of action for medical monitoring, according to what this Court predicts the Illinois Supreme Court would decide under these circumstances.

### CONCLUSION

*6 For the foregoing reasons, the Court concludes that the Supreme of Illinois is likely to recognize a compensable claim for medical monitoring even where no present physical injury exists. Therefore, the Court will deny the Motion for Judgment on the Pleadings. An Order consistent with this Memorandum follows.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 6
Slip Copy, 2007 WL 2155665 (E.D.Pa.)
**(Cite as: Slip Copy)**

## *ORDER*

AND NOW, this 26th day of July, 2007, upon consideration of the Rohm and Haas Motion for Judgment on the Pleadings (Doc. No. 107), Plaintiffs' response thereto (Doc. No. 111), the Rohm and Haas reply (Doc. No. 114) and Plaintiffs' surreply (Doc. No. 117), it is hereby ORDERED that the Motion is DENIED.

E.D.Pa.,2007.
Gates v. Rohm and Haas Co.
Slip Copy, 2007 WL 2155665 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.