IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FILED
JAN 0 6 2003
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

JUDITH LEHR, on behalf of herself and )
   all others similarly situated, )
)
   Plaintiff, )
)
vs. )   Case No. 01-cv-0516-MJR
)
MERCK & CO., INC., )
)
   Defendant. )

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### I. Introduction

On December 16, 2002, the Court held a hearing on all pending motions including Merck's motion to dismiss (Doc. 61) and motion for summary judgment (Doc. 108), which the Court took under advisement.

### II. Merck's Motion for Summary Judgment

Citing a variety of reasons, Merck moves for summary judgment on each count contained in Lehr's latest complaint. Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c)**; *Wyatt v. UNUM Life Insurance Company of America*, 223 F.3d 543, 545 (7th Cir. 2000); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

1

movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999). The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Fortis Insurance Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). The Court addresses Lehr's claim under the Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), first.

Lehr's only RICO allegation is plead under Count XI. The entirety of the allegation is that Merck violated the RICO statute by "conduct[ing] an enterprise through a pattern of mail, wire, radio and TV fraud to induce [Lehr] to purchase VIOXX® at exorbitant prices in violation of the Mail Fraud Act." The mail fraud statute, **18 U.S.C. § 1341**, makes it a crime for any person to use the United States Postal Service for the purpose of executing "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises...." The wire fraud statute, **18 U.S.C. § 1343**, likewise prohibits the use of "wire, radio, or television communication in interstate or foreign commerce" for the purpose of executing a scheme or artifice to defraud.

To state a claim for mail fraud under **18 U.S.C. § 1341** or for wire fraud under **18 U.S.C. § 1343**, Lehr must show (1) that Merck is an enterprise, (2) engaged in a pattern, (3) of racketeering activity, (4) which constituted an intentional scheme to defraud, (5) involving use of the mails or interstate wires in furtherance of the scheme; and (6) that the scheme proximately caused Lehr's injury. *American Automotive Accessories, Inc. v. Fishman*, 175 F.3d 534, 542 (7th Cir. 1999); *United States v. Ross*, 77 F.3d 1525, 1542 (7th Cir. 1996); *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir. 1994). Under **18 U.S.C. § 1964(c)**, the injury complained of must be to the

M001543582

plaintiff's business or property. If not, the plaintiff lacks an injury on which to sue under RICO, or lacks standing to sue under RICO.

Among other reasons which may be cured by repleading, Merck argues that Lehr's RICO claim should be dismissed with prejudice because she has not alleged damage to her "business or property" as required by **18 U.S.C. § 1964(c)**. The Court agrees.

In order to have standing under **18 U.S.C. § 1964(c)**, a RICO plaintiff must make two related, but analytically distinct, threshold showings: (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of **18 U.S.C. § 1962**. *Maio v. Aetna, Inc.*, **221 F.3d 472, 483 (3rd Cir. 2000)** *citing First Nationwide Bank v. Gelt Funding Corp.*, **27 F.3d 763, 767 (2nd Cir. 1994)**; *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, **140 F.3d 494, 520-21 (3rd Cir. 1998)**. The Court finds that Lehr fails to make either showing.

First, Lehr has not plead and cannot show an injury to business or property. The Court takes guidance from the Third Circuit's opinion on this issue in *Maio*. In *Maio*, the plaintiffs asserted RICO claims based on Aetna's alleged fraudulent advertising about the quality and features of an HMO plan and argued that they were injured because Aetna actually maintained procedures and practices inconsistent with their advertising campaign. *Maio*, **221 F.3d at 474**. When confronted with the issue of RICO standing, the plaintiffs argued they had suffered an injury to property because they paid too much in premium dollars for health insurance they received from Aetna. *Id.* **at 484**. Specifically, the *Maio* plaintiffs claimed that each member of the nationwide class paid too much in premiums for an "inferior" health care product or paid more for their HMO plans than the plans were worth. *Id.* **at 480, 484**.

3

In determining that the *Maio* plaintiffs lacked RICO standing, the *Maio* Court found the plaintiffs could not

> establish that they suffered a tangible economic harm compensable under RICO unless they allege that the health care they received under Aetna's plan actually was compromised or diminished as a result of Aetna's management decisions challenged in the complaint. ... There is no factual basis for [plaintiffs'] conclusory allegation that they have been injured in their 'property' because the health insurance they actually received was inferior and therefore 'worth less' than what they paid for. ... We also reject [plaintiffs'] theory of RICO injury resting on the purported diminution in product value because, ... as a matter of simple logic, they obviously cannot show that they actually received something 'inferior' and 'worth less' absent individualized allegations concerning the quantity and quality of health care benefits Aetna provided under its HMO plan. Put differently, assuming *arguendo* that the injury claimed is predicated solely on the alleged financial loss of premium dollars stemming from [plaintiffs'] purchase of an 'inferior health care product,' the harm alleged, *i.e.*, overpayment, cannot exist absent proof of some level of inferior treatment under Aetna's HMO plan.

*Id.* **at 492-94.** In other words, a "diminished value" theory does not satisfy the requirements of § **1964(c).** *Id.* **See also In re Bridgestone/Firestone, Inc. Tires Product Liability Litigation, 155 F.Supp.2d 1069, 1094 (S.D. Ind. 2001),** *rev'd on other grounds,* **288 F.3d 1012 (7th Cir. 2002).**

In the case at bar, Lehr's RICO theory is identical to that made in *Maio* - that because of Merck's alleged fraudulent advertising campaign, Lehr suffered a property loss by purchasing VIOXX® at a grossly inflated cost with no better safety or efficacy than other NSAIDs. Given these allegations, Lehr has failed to prove she has standing under § **1964(c).**

Although the Court's analysis of Lehr's standing under RICO need not go further, the Court also finds that Lehr has failed to prove that her injury was proximately caused by the Merck's RICO violation since she has testified that she never saw any of Merck's advertising before she

4

began taking VIOXX®, let alone relied on it when deciding to purchase VIOXX®. Therefore, Merck's alleged RICO violation - its alleged fraudulent advertising campaign - cannot be the proximate cause of any alleged injury that Lehr may have suffered.

Accordingly, Lehr has failed to prove she has standing under § 1964(c). Thus, Merck is entitled to summary judgment on Lehr's RICO claim found under Count XI.

### III. The Court's Jurisdiction Over Lehr's Remaining Claims

Lehr's latest complaint asserts that this Court has jurisdiction over her claims under **28 U.S.C. § 1331**, providing jurisdiction over federal questions, and under **§ 1332**, providing jurisdiction over cases where there is a diversity of citizenship and the amount in controversy exceeds $75,000.00. Given that Lehr's RICO claim was the only claim over which this Court had federal question jurisdiction, the only possible jurisdiction this Court may now have is diversity jurisdiction, which the Court now questions.

As stated above, Lehr has conceded in her pleadings and at the last Court hearing that she seeks damages for economic loss only and makes no claim for physical injury. In light of this concession, the Court finds that Lehr has not shown and cannot show that the amount in controversy exceeds the jurisdictional threshold limit of $75,000.00.

In order to establish diversity jurisdiction, at least one of the *named* plaintiffs must have a claim which exceeds the $75,000 threshold. *In re Brand Prescription Drugs Antitrust Litigation*, **123 F.3d 599, 607 (7th Cir. 2000),** *cert. denied,* **522 U.S. 1153 (1998);** *Garbie v. DaimlerChrysler Corp.*, **211 F.3d 407, 409 (7th Cir. 2000).** If one named plaintiff's claim exceeds that amount, any other named plaintiffs "and the unnamed class members can, by virtue of the supplemental jurisdiction conferred on the federal courts by **28 U.S.C. § 1367**, piggyback on that

5

M001543585

plaintiff's claim." *Brand Name Prescriptions*, **123 F.3d at 607.**

In this case, there is only one named plaintiff, Judith Lehr. Therefore, her claim must exceed $75,000. The Court's review of Lehr's latest complaint reveals that VIOXX® was sold "at a wholesale cost of approximately $72.00 for a 30-day supply, compare to a wholesale cost of approximately $9.00 or less for traditional NSAIDs." Lehr's Amended Class Action Complaint, ¶ 11. Based upon her concession that she seeks only economic loss or, in other words, recovery of the amount she "overspent" on the purchase of VIOXX®, as well as her deposition testimony that she only used VIOXX® for approximately one year, Lehr's actual damages could only be $756.00 ($72 minus $9 equals the amount Lehr allegedly overspent on VIOXX®, multiplied by the 12 months that she took VIOXX®).

Even if the Court employs the "either viewpoint" rule and considers how much it would cost Merck to comply with the injunctive relief that Lehr has sought, *i.e.*, "to fully inform consumers of the increased risks of hypertension, stroke and/or myocardial infarctions caused by the ordinary use of VIOXX®, the Court need only look at what it would cost to provide this relief to Lehr herself, not to all potential members of the class. Obviously, such information could be conveyed in a letter which does nothing to bring Lehr's amount in controversy any closer to the jurisdictional threshold. *See McCarty v. Amoco*, **595 F.2d 389, 395 (7**[th] **Cir. 1979);** *Gottlieb v. Westin Hotel Co.*, **990 F.2d 323, 329 (7**[th] **Cir. 1993).**

Therefore, Lehr's remaining claims fail to involve an amount in controversy which exceeds the $75,000.00 threshold required for this Court to have diversity jurisdiction. Accordingly, the Court has no jurisdiction over Lehr's remaining claims.

6

M001543586

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Merck's motion for summary judgment **IN PART** with regard to Lehr's RICO claim under XI (Doc. 108) and **DISMISSES** the remainder of Lehr's case **WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

DATED this 6th day of January, 2003.

*Michael J. Reagan*
**MICHAEL J. REAGAN**
**United States District Judge**

M001543587