UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  VIOXX | : MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : |
| | : SECTION L |
| This document relates to | : JUDGE FALLON |
| | : |
| Gerald Barnett v. Merck & Co., Inc. | : MAG. JUDGE KNOWLES |
| Case No. 02:06CV00485 | : |

**PLAINTIFFS' STEERING COMMITTEE AS *AMICUS CURIAE* IN RESPONSE TO THE [RENEWED] MOTION OF MERCK & CO., INC. FOR A NEW TRIAL**

**I.   INTRODUCTION**

The Plaintiffs' Steering Committee (PSC) submits this memorandum as *Amicus Curiae* for the Court and plaintiff, Gerald Barnett, in response to the [renewed] Motion of Merck & Co., Inc. ("Merck") for a New Trial. Just as in the fall of 2006, Merck requests that "a new trial on all issues" is warranted in this case. Merck Brf. at 2. The PSC disagrees.

Time has not created a better vintage of Merck's restated arguments. Although carefully repackaged, Merck's most recent argument fails to ascend the threshold for a motion for reconsideration and offers little justification for altering this Court's June 5, 2007 decision to allow Mr. Barnett to accept a remittitur of $1.6 million. In the broad exercise of this Court's discretion, it determined (to Merck's benefit) that Mr. Barnett's $50 million compensatory damage award was excessive and that the proper remedy of this excessive award was to offer plaintiff a remittitur to $600,000. Having already employed its "best judgment" to reduce the compensatory damage verdict

1

over 800-fold, this Court should not have to re-evaluate whether its judgment was correct.

Mr. Barnett has respectfully accepted this Court's judgment and remittitur. If Merck disagrees, it should not argue that there was insufficient evidence to support this Court's determination that Mr. Barnett's largely non-economic losses permitted such an award. That confected argument (much disputed by Mr. Barnett), is not good grounds for this Court reversing its decision. This Court's allowance of non-economic injuries in an amount approaching only 3 times Mr. Barnett's medical bills is hardly excessive, nor unfounded, but based upon this Court's evaluation of the totality of the record and its experience as a trial court employing its "best judgment."

Under these circumstances, Merck should be expressing gratitude, not complaining of error. This Court should stand by its June 5, 2007 Order and Reasons, and deny Merck's motion for a new trial.

## II. ARGUMENT

### A. THE "MAXIMUM RECOVERY RULE" PROVIDES THIS COURT BROAD DISCRETION WHEN REDUCING EXCESSIVE DAMAGE AWARDS

In the Fifth Circuit, calculation of remittitur is accomplished by the "maximum recovery rule." *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983); *Osburn v. Anchor Laboratories, Inc.*, 825 F.2d 908, 918-19 (5th Cir. 1987). This rule is the "least defendant-favorable" of the several ways remittitur can be calculated, nevertheless, the standard still enjoys the endorsement of the Fifth Circuit. *See Zeno v. Great Atlantic & Pacific Tea Co.*, 803 F.2d 178, 181 n.2 (5th Cir. 1986); *Smith v. Harrah's New Orleans Management Co.*, 213 Fed.Appx. 353, 358 (5th Cir. 2007)(non-precedential opinion referenced merely to exemplify the continued vitality of the

2

rule).

When a jury award is so excessive that remittitur is deemed appropriate, the district judge is directed to reduce "the excessive portion of the award." *Osburn*, 825 F.2d at 919. Because of the district court's familiarity with the trial evidence, its determination of remittitur is entitled to substantial deference.

The standard to be employed by the district courts when ordering remission is not the paradigm of clarity. *See, e.g., Zeno,* 803 F.2d at 181 ("The rule requires us to reconstruct the evidence and then to make a guess as to the maximum award a jury might have made."). Nevertheless, some guideposts are present. For example, in *Zeno*, the Fifth Circuit suggested that, "[o]ne way to apply this rule is to look at cases that in the recent past have properly applied Louisiana damages law in order to find the *greatest* amount that they have awarded for similar injuries." *Id.* Once this figure is set upon, the court is to employ a 150% enhancement multiplier. *See Salinas v. O'Neill*, 286 F.2d 827, 831 n.6 (5th Cir. 2002). This method, however, has been the subject of substantial criticism. *See* Madigan, *Excessive Damage Review in the Fifth Circuit: A Quagmire of Inconsistency*, 34 Texas Tech L.Rev. 429, 441 (2003).

The preferred method, and the one employed by this Court, is described by *Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1141(5th Cir. 1991), as requiring the district court to "consider carefully the specific circumstances of each case." Provided the court has not "reached into the air for a figure or proceeded by hunch or intuition," *Gleason v. Hall*, 555 F.2d 514, 520 (5th Cir.), *opinion withdrawn on other grounds*, 557 F.2d 1052 (5th Cir. 1977), or "substitute[d] his judgment of damages for that of the jury," the district court's ruling on remission is presumed valid. *Bonura v. Sea Land Service, Inc.*, 505 F.2d 665, 669 (5th Cir. 1974), *reh'g denied*, 512 F.2d 671 (5th

3

Cir. 1975). The *Bonura* standard provides:

> Once it has been determined that the trial court has not abused its discretion in demanding some remittitur, then the appellate court must determine whether the amount of the award which remains after the remittitur reflects the maximum award which the evidence will support or whether it merely represents the trial court's opinion of what the proper award should have been. At this point deference will be given to the trial court's determination since he, and not the appellate court, was present during the ebb and flow of the trial, and it will be presumed that the amount which he has chosen is the amount which will reduce the jury's verdict to the 'maximum possible' award unless the party opposed to the remittitur can point to credible evidence which would support a <u>greater</u> recovery.

*Id.* at 670 (emphasis added).

Under the *Bonura* standard, the only means to challenge on appeal the district court's remittitur award is to point to credible evidence which would support a *greater* recovery. Merck's challenge is just the opposite. It contends that there should have been a lesser recovery or no recovery at all. As a consequence, there is no basis for the pending motion.

### B. THIS COURT'S ORDER OF REMITTITUR IS WELL WITHIN THE RANGE OF REASONABLENESS ESTABLISHED BY FIFTH CIRCUIT PRECEDENT

There is no doubt that this Court met the *Seidman* requirements and carefully considered the specific circumstances of Mr. Barnett's case. The June 5, 2007 Order and Reasons is replete with the Court's scrupulous parsing of the record in its inquiry for reaching the proper valuation of Mr. Barnett's maximum possible recovery. Consider:

- "Mr. Barnett suffered a heart attack in September 2002 at the age of fifty-eight, and has endured subsequent complications, all allegedly as a result of his use of Vioxx." Order & Reasons at 2.

- "On August 17, 2006, the jury returned a verdict in favor of the Plaintiff, finding by a preponderance of the evidence that Merck negligently failed to warn Mr. Barnett's treating physicians of the risks associated with taking Vioxx and that the drug was

4

- a contributing cause of the Plaintiff's injuries. The jury also found by clear and convincing evidence that Merck concealed information about Vioxx's risks from Mr. Barnett's physicians." Order & Reasons at 2-3.

- "The Court has previously noted that 'the Plaintiff is retired, and therefore he cannot recover for lost wages or lost earning capacity.' 448 F.Supp.2d at 740. Although the Plaintiff did introduce evidence of some out-of-pocket expenses at trial, his losses in this cases are primarily non-economic. However, <u>considering the entire record</u>, the Court finds that the evidence does not justify a $50 million award for Mr. Barnett's medical expenses and noneconomic damages." Order & Reasons at 7 (emphasis added).

- "<u>Considering the specific testimony and evidence introduced at trial</u>, the Court believes in its best judgment that $600,000 is the most the jury could have properly awarded the plaintiffs as compensatory damages." Order and Reasons at 7 (emphasis added).

- "While the Plaintiff's injuries and intangible feelings of insecurity undoubtedly affect the normal pursuits and pleasures of his life, he has been able to undergo preventative medical treatment as a result of his experience and has even returned to certain of his beloved recreations, including golf and Carolina shag dancing, apparently with the same gusto and commitment that he previously displayed." Order & Reasons at 7 n.5.

These considerations were not random ideas sieved through some unconstrained gestalt process. Rather, they represent carefully selected pieces of record evidence employed to arrive upon a proper award through the spectral prism of the maximum possible award rule.

The Court's reasoning reflects its awareness of evidence establishing out of pocket medical costs amounting to approximately $155,000.[1] To determine Mr. Barnett's non-economic damages, this Court utilized its understanding of all the testimony and evidence introduced at trial, its experience, and reached its best judgment that the total compensatory damage award would be $600,000. This figure reflects a modest trebling of Mr. Barnett's special damages, a figure well

---

[1] *See* Order & Reasons at 7 n.4.

5

below the $50 million award found earlier to be excessive.[2]

Even employing a case comparison cross-check reveals the propriety of this Court's remittitur award. In *Daves v. Cleary*, 355 S.C. 216, 584 N.E.2d 423 (S.C.App. 2004), the plaintiff brought a malpractice action against his physician for failure to diagnose plaintiff's heart attack. The plaintiff incurred approximately $140,000 in medical bills, slightly less than Mr. Barnett. *Id.*, 584 N.E.2d at 425. Similarly, the jury awarded Mr. Daves slightly less than Mr. Barnett, only $500,000. *Id.* at 426. This verdict was affirmed on appeal. Employing the *Salinas* enhancement multiplier of 150% to the *Daves* verdict results in a maximum possible recovery of $750,000.

This Court's award of $600,000 falls well below the $750,000 maximum possible recovery. As it was accepted by Mr. Barnett, however, there should be no question as to its fit within the case comparison paradigm suggested by some Fifth Circuit precedent. *See, e.g., Salinas, supra.*

### III.  CONCLUSION

There is little merit to warrant this Court reconsidering its decision on remittitur. Merck offers no new evidence, nor new or intervening case-law to support such a motion. Merck simply

---

[2]To this end, the authorities Merck relies upon are inapposite. For example, *Betancourt v. J.C. Penny Co., Inc.*, 554 F.2d 1206, 1209 (1st Cir. 1977), found that a compensatory damage award of "roughly one hundred times the amount of past and future medical bills . . . makes no sense." That case is not comparable to Mr. Barnett's situation, and even the panel in *Betancourt* recognized that, "In a case where it is possible even roughly to compute the excessiveness of the verdict, we might give the plaintiff the choice of a remittitur in lieu of a new trial." *Id.* at 1209 n.5. *See also DeCenteno v. Gulf Fleet Crews, Inc.*, 798 F.2d 139, 142-43 (5th Cir. 1986)(jury award "erroneously inflated" by counsel's arguments which were characterized as having "no legitimate grounds."); *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (5th Cir. 1984)(trial errors so infected defendants' ability to have a fair trial that there was "no particular quantifiable amount by which to reduce the award for pecuniary loss."); *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1547 (5th Cir. 1984)(Inapposite case solely involving contractual damages, where jury's general award precluded a determination of lost profits during suspension period necessary for a remittitur).

is dispirited by the Court's finding that a remittitur could be awarded, rather than a wholesale trial *de novo*. Such grounds are not worthy of reversing this Court's well reasoned opinion.

This Court presided over a well tried case litigated by experienced and capable lawyers. They presented credible evidence on both sides (obviously more on Plaintiff's side, than Merck's) that resulted in the jury finding for Mr. Barnett. This Court's finding that the compensatory damage award was excessive and subject to a remittitur to $600,000 was performed after taking into consideration all of the facts of record specific to Mr. Barnett's case. That figure is not only supported by this Court's best judgment but also by comparing it to other cases from the relevant jurisdiction that actually would have supported an even higher award to Mr. Barnett. Merck's motivation for filing this renewed motion can only be justified if seen as its effort to seek reaffirmation of its litigation strategy of trying every case to verdict, giving no quarter to worthy plaintiffs, and taxing this able Court's efforts to administer this explosive litigation crisis brought about by Merck's own culpability.

Under all of these circumstances, Merck's motion for a new trial should be denied.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: August 10, 2007

By: /s/ Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

8

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

## PLAINTIFFS' STEERING COMMITTEE

**OF COUNSEL:**
Harry T. Lemmon, Esquire **(on brief)**
650 Poydras Street
Suite 2335
New Orleans, LA 70130

Edward F. Sherman, Esquire **(on brief)**
Tulane Law School
Weinmann Hall
6329 Freret Street
Room 216G
New Orleans, LA 70118-6231

9

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of August, 2007.

                                        /s/ Leonard A. Davis
                                        Leonard A. Davis (Bar No. 14190)
                                        ***Herman, Herman, Katz & Cotlar, LLP***
                                        820 O'Keefe Avenue
                                        New Orleans, LA  70113
                                        PH:     (504) 581-4892
                                        FAX:  (504) 561-6024
                                        ldavis@hhkc.com