IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX ) | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION ) | SECTION: L |
| ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: ) | |
| ALL MEDICAL MONITORING CLASS ACTION COMPLAINTS PENDING OR SUBJECT TO TRANSFER TO MDL 1657 ) | MAGISTRATE JUDGE KNOWLES |

**RESPONSE OF MERCK & CO., INC. TO PLAINTIFFS' THIRD
NOTICE OF SUPPLEMENTAL AUTHORITY RE: MOTION TO
DISMISS MEDICAL MONITORING MASTER CLASS ACTION COMPLAINT**

Defendant Merck & Co., Inc. ("Merck") respectfully submits this response to plaintiffs' Third Notice of Supplemental Authority Re: Motion to Dismiss Medical Monitoring Class Action Complaint.

In an attempt to bolster their argument that Illinois would recognize a claim for medical monitoring absent a present physical injury, plaintiffs have submitted supplemental authority in the form of an Eastern District of Pennsylvania case, *Gates v. Rohm & Haas, Co.*, 2007 WL 2155665 (E.D. Pa. July 26, 2007), predicting that the Illinois Supreme Court would find such a claim cognizable under Illinois law. However, the *Gates* opinion stretches Illinois law to reach its conclusions and is contrary to the well-established principle that federal courts should not expand substantive state law where there is no clear state law precedent or legislative intent.

1

Accordingly, the Court should not rely on *Gates* to create a cause of action in Illinois not recognized by that state's own Supreme Court.

As set forth in Merck's prior briefing, the lower courts in Illinois are split on the question whether a plaintiff can state a cause of action for medical monitoring absent present injury. The only state court case *Gates* adds to the mix of cases already discussed in Merck's prior briefing (*see* Merck's Mot. to Dismiss Pls.' Med. Monitoring Master Class Action Compl. at 26-27; Merck's Reply Mem. in Supp. of Mot. to Dismiss at 31-32) is *Jensen v. Bayer AG*, 862 N.E.2d 1091 (Ill. App. Ct. 2007). However, while the *Gates* court seems to rely on *Jensen* to support its prediction that the Illinois Supreme Court would recognize plaintiffs' medical monitoring claim here, the district court (and plaintiffs) have it backwards. Plaintiffs make much of the fact that the *Jensen* court assumes "*arguendo*" that such a claim would be recognized in Illinois in the course of denying class certification of a proposed class of Baycol users. Assuming something *arguendo*, however, is a far cry from recognizing it as a legal principle, and the *Jensen* court was in fact quite dubious about recognition of a medical monitoring cause of action absent present injury. In criticizing plaintiffs' reliance on the *Lewis v. Lead Indus. Ass'n, Inc.*, 793 N.E.2d 869 (Ill. App. Ct. 2003) case, also relied on by plaintiffs here, the *Jensen* court stated:

> The plaintiff in *Lewis* sought compensation for the cost of medical testing made necessary by the defendant's manufacturing, marketing, and sale of lead pigment. We consider Lewis to be inapplicable because there, unlike here, the plaintiff sought compensation for medical testing to detect a ***present*** physical injury . . . Thus, the court did not address the question posed by plaintiff here; namely, whether a plaintiff may bring a claim for medical monitoring for potential ***future*** harm, where no present injury is shown.

*Id.* at 1101.

The remaining cases *Gates* cites in support of its prediction are two Illinois federal district court cases, which themselves are merely "predicting" what the Illinois Supreme Court would do. *See Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109 (N.D. Ill. 1998); *Muniz v.*

*Rexnord Corp.*, No. 04-2405, 2006 WL 1519571 (N.D. Ill. May 26, 2006).  Notably, the court in *Carey* acknowledged that whether a medical monitoring claim was cognizable absent present injury was an open question when it certified the issue for immediate interlocutory review.  *See* 999 F. Supp. at 1109 (certifying the question whether such a claim is cognizable for 1292(b) interlocutory appeal because the issue is a controlling question of law as to which ***there is a substantial difference of opinion***) (emphasis added).[1]  And the *Muniz* court relied solely on *Carey* and *Lewis* in making its prediction and did not even consider *Morissey v. Eli Lilly & Co.*, 349 N.E.2d 1369, 1372 (Ill. App. Ct. 1979), which specifically rejects a claim for "adequate medical management of [each plaintiff's] condition" absent any present physical injury as "insufficient."  (*See* Merck's Mot. to Dismiss at 26.)  Moreover, these cases are contrary to the fundamental principle of Illinois law that to recover in tort, a plaintiff must suffer a present, ascertainable injury.  *See, e.g.*, *Betts v. Manville Personal Injury Settlement Trust*, 588 N.E.2d 1193, 1204 (Ill. App. Ct. 1992) (upholding directed verdict regarding asbestos claim where plaintiffs in asbestos exposure case did not suffer from asbestosis; "[t]here must be a present injury to warrant recovery under Illinois law").

In addition, each of the cases cited by *Gates* and relied on by plaintiffs involved a claim for some type of public exposure to a hazardous, environmental substance.  *See, e.g.*, *Lewis*, 793 N.E.2d 869 (lead paint); *Carey*, 999 F. Supp. 1109 (toxic thorium tailings produced at a rare earth facility); *Muniz*, 2006 WL 1519571 (groundwater and air contamination).  Environmental exposure cases differ fundamentally from product liability cases like this one because of the near-impossibility of proving causation in the context of latent injuries that remain dormant for years.  Product manufacturers are already subject to substantial (if not excessive) compensatory and punitive liability for defective products.  Therefore, while these cases may predict that the

---

[1]  Despite certification by the trial court, the Seventh Circuit denied review of the case.

Illinois Supreme Court may some day find a cause of action for medical monitoring absent present injury in ***environmental cases*** with latent injuries that remain dormant for years, that does not mean it would find a cause of action here, where any actual resulting products-related injury would be more immediate and more easily traced to the alleged exposure.

Finally, as discussed in Merck's prior briefing, the Fifth Circuit has consistently refused invitations to rewrite state law by "predict[ing]" dramatic changes in state law as the *Gates* court did. For example, in *Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409 (5th Cir. 1980), the Fifth Circuit rejected a personal-injury plaintiff's suggestion that Texas would adopt an innovative theory of product liability on the ground that it should tread lightly when asked to embrace a "substantive innovation" in state law. *Id.* at 410 ("[w]hatever the merits or demerits of the proposed new rule, for us to adopt it for Texas would be presumptuous"). *See also City of Phila. v. Lead Indus. Ass'n*, 994 F.2d 112, 123 (3d Cir. 1993) ("[F]ederal courts may not engage in judicial activism. Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law. Our role is to apply the current law of the appropriate jurisdiction, and leave it undisturbed."). Other federal courts have declined to predict that states would recognize medical monitoring claims based on this very concern. *See, e.g.*, *Trimble v. Asarco, Inc.*, 232 F.3d 946, 963 (8th Cir. 2000) (rejecting claim because plaintiffs had "not cited any Nebraska authority for the proposition that damages may be awarded for future medical monitoring costs in the absence of a present physical injury . . . . Thus, our recognition of such a cause of action would, in effect, expand substantive liability under Nebraska law."), *overruled on other grounds by Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005). Here too, given that Illinois appellate courts are themselves divided on the

4

question at issue, it would be inappropriate for a federal court to predict that the Illinois Supreme Court would so dramatically "expand substantive liability under [Illinois] law."

    Respectfully submitted,

    /s/ Dorothy H. Wimberly
    Phillip A. Wittmann, 13625
    Dorothy H. Wimberly, 18509
    STONE PIGMAN WALTHER WITTMANN L.L.C.
    546 Carondelet Street
    New Orleans, LA 70130

    Defendants' Liaison Counsel

    And

    John H. Beisner
    Jessica Davidson Miller
    O'MELVENY & MYERS LLP
    1625 Eye Street, NW
    Washington, DC 20006

    Douglas R. Marvin
    WILLIAMS & CONNOLLY LLP
    725 Twelfth St., N.W.
    Washington, DC 20005

    Attorneys for Merck & Co., Inc.

888739v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Response has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 16th day of August, 2007.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

888739v.1