UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
|     LENE ARNOLD | * | SECTION L |
| | * | |
| versus | * | JUDGE ELDON E. FALLON |
| | * | |
| MERCK & CO., INC. | * | MAGISTRATE JUDGE |
|     Defendant | * | KNOWLES |
| | * | |
|   Case No. 05-2627 | * | |
| | * | |
|        & | * | |
| | * | |
| ALICIA GOMEZ | * | |
| | * | |
| versus | * | |
| | * | |
| MERCK & CO., INC. | | |
|     Defendant | | |

Case No.  05-1163

* * * * * * * * * * * * * * * * * * * * * * * * * *

**RESPONSE TO PLAINTIFFS' SUBMISSIONS OF SUPPLEMENTAL
AUTHORITY IN OPPOSITION TO MERCK'S MOTION TO
ALTER OR AMEND THE COURT'S JULY 3, 2007 ORDER**

Defendant Merck & Co., Inc. ("Merck") submits this joint response to plaintiffs' two

recent submissions of supplemental authority in opposition to Merck's motion to alter or amend

the Court's July 3, 2007 order.  (*See* Notice of Supplemental Authority (dated Aug. 13, 2007)

("First Notice") and Second Notice of Supplemental Authority (dated Aug. 23, 2007) ("Second

Notice").)

Plaintiffs have submitted several authorities to the Court: (1) a January 13, 2006 letter from Illinois State Senator Steven J. Rauschenberger, President of the National Conference of State Legislators ("NCSL") to the Honorable Mike Leavitt, Secretary of the U.S. Department of Health and Human Services; (2) an August 7, 2007 letter from H. Colby Lane, counsel to Mississippi Governor Haley Barbour, to Leonard A. Davis, Esq., first offered by plaintiffs at oral argument earlier this month, as well as a collection of documents obtained from Governor Barbour's office; and (3) an August 20, 2007 letter from Chadwick Duran, Deputy Attorney General of Indiana, to Leonard A. Davis, Esq. None of these documents supports plaintiffs' argument that outstanding factual issues make this matter inappropriate for interlocutory appellate review.

As the Court knows, Executive Order 13132 requires that "[w]hen an agency foresees the possibility of a conflict between State law and Federally protected interests within its area of regulatory responsibility, the agency shall consult, to the extent practicable, with appropriate State and local officials in an effort to avoid such a conflict." 64 Fed. Reg. 43255, 43257. In compliance with that Executive Order, the FDA has stated that it "consulted with" both NCSL and the "Office of Mississippi Governor Haley Barbour," among others, regarding the preemption language in the Preamble. (*See* FDA Consultation Memo.) The list of parties that had been consulted by the FDA was placed in the rulemaking docket in March 2006, shortly after the Final Rule was released. Plaintiffs have long been aware of the existence of the document – in fact, they attached it as an exhibit to their September 15, 2006 opposition to Merck's motion for summary judgment, in support of their argument that the FDA did not comply with the Order. (*See* Pls.' Opp'n Br. at 44 n.38 and Ex. 41.) Yet plaintiffs waited until late July 2007 – after Merck filed the instant motion to certify the Court's preemption ruling for

interlocutory appellate review – to argue that they need discovery related to those consultations and to issue subpoenas to the parties listed by the FDA.  The reason for the delay is obvious – plaintiffs' purported need to obtain discovery regarding the FDA's compliance with the Order is nothing but a diversion intended to forestall review by the Fifth Circuit.

Contrary to plaintiffs' arguments, whether the FDA "meaningfully complied" with the Executive Order is irrelevant to the preemption question at issue here.  The Administrative Procedure Act ("APA") establishes the terms under which agency interpretive and legislative rules have legal effect enforceable in court, *see* Richard J. Pierce, Jr., ADMINISTRATIVE LAW TREATISE § 7.1, at 411-12 (4th ed. 2002), and the APA does not make consultation with state and local officials a condition of agency rulemaking.  The Executive Order is the only source of any consultation requirement, but that Order expressly provides that it "is intended only to improve the internal management of the executive branch, ***and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party*** against the United States, its agencies, its officers, or any person."  64 Fed. Reg. at 43259 (emphasis added).  This caveat is common in Executive Branch directives, and courts have consistently held that it categorically bars judicial challenges to agency actions on the basis of purported noncompliance with such directives.  For instance, in *Cal-Almond, Inc. v. United States Dep't of Agriculture*, 14 F.3d 429, 445 (9th Cir. 1993), the plaintiff claimed that agency rules were "arbitrary and capricious" because the agency did not comply with a Departmental Regulation ("DR") in promulgating them.  That DR included language nearly identical to Executive Order 13132, stating that "this directive . . . is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the Department, its agencies, its officers or employees or any other

person." *Id.*  In the face of this language, the court held that it had "no authority to review appellants' challenge" to the promulgation of the rules.  *Id.*

Likewise, in *Michigan v. Thomas*, 805 F.2d 176 (6th Cir. 1986), the Sixth Circuit reviewed a challenge to agency action based on alleged noncompliance with Executive Order 12,291, which "states in relevant part that 'this Order is intended only to improve the internal management of the Federal government, and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers or any person.'" *Id.* at 187.  The court found that this language provides "clear and unequivocal intent that agency compliance with Executive Order 12,291 not be subject to judicial review," and therefore "provides no basis for rejecting the EPA's final action." *Id.*  As the court explained, "[t]he Order was intended 'to improve the internal management of the Federal government' and not to confer rights judicially enforceable in private litigation." *Id.*

Finally, in *Murphy v. SmithKline Beecham Animal Health Group*, 898 F. Supp. 811 (D. Kan. 1995), plaintiffs argued that an agency lacked the power to preempt state law under Executive Order 12162, which required "firm and palpable evidence compelling the conclusion that the Congress intended to delegate to the department or agency the authority to issue regulations preempting State law." *Id.* at 815.  The Court rejected this argument, holding that the Order "does not operate to invalidate an agency's pre-emption of state law.  Rather, the order serves ***only as a guideline for executive agencies***." *Id.* (emphasis added).  In reaching this conclusion, the court noted that Executive Order 12162 contains the same limiting language that appears in Executive Order 13132. *Id.  See also Meyer v. Bush*, 981 F.2d 1288, 1296 n.8 (D.C. Cir. 1993) ("The Executive Order carefully stated that its purpose was only for internal management and that it created no private rights.  As such, it is doubtful that it had any legal

4

significance.  An Executive Order devoted solely to the internal management of the executive branch – and one which does not create any private rights – is not, for instance, subject to judicial review."); *U.S. Dep't of Health & Human Servs. v. Fed. Labor Rel. Auth.*, 844 F.2d 1087, 1095 (4th Cir. 1988) ("Whether an agency head is following the directives of the President is not for an arbitrator to determine.  Were the internal management directives of the executive branch held to give rise to enforceable third party rights, the obvious result would be chaos."); *Idaho Mining Ass'n v. Browner*, 90 F. Supp. 2d 1078, 1102 (D. Idaho 2000) ("[T]he use of such language in an Executive Order demonstrates that any actions taken by an agency to comply with the order are not subject to judicial review. . . .  Thus, this Court has no authority to review the merits of Plaintiff's challenge to the substance of the EPA's cost analysis in this case.").[1]

As these cases make clear, plaintiffs cannot challenge the FDA Preamble on the basis of Executive Order 13132.  That Order is an internal Executive Branch directive, from the President as head of the Branch, to subordinate, non-independent executive agencies, advising them on how to implement the President's policies on federalism in their APA-rulemaking processes. The Order expressly states, in language substantially identical to that relied upon in the cases just discussed, that it creates no private rights and is not enforceable in a judicial proceeding.

---

[1]    Even in the absence of the limiting language present in the Executive Order here and in the cases just cited, courts have held that "Executive Orders cannot be enforced privately unless they were intended by the executive to create a private right of action."  *Xin-Chang Zhang v. Slattery*, 55 F.3d 732, 748 (2d Cir. 1995).  In *Slattery*, the President had issued an Executive Order directing the Attorney General to take action to overrule a decision of the Board of Immigration Appeals, but the Attorney General failed to do so for almost three years.  *Id.* at 747.  In a petition for habeas corpus, the petitioner argued that the BIA decision had effectively been overruled by the Executive Order even in the absence of the Attorney General's compliance with the Order.  The Second Circuit, however, refused to interfere in internal matters of the executive branch.  As the court explained,

> [i]t has long been held that the executive branch may promulgate [directives] without creating rights and obligations enforceable by third parties.  Nothing in President Bush's Executive Order indicated that the order was anything other than a directive issued to one of his cabinet officers. For whatever reasons, the Attorney General did not adhere to this order and the Bush Administration did not follow up on it.  However, it is not the role of the federal courts to administer the executive branch.

*Id.* (internal quotations and citations omitted).

Accordingly, the FDA's compliance with Executive Order 13132 is not subject to judicial review and provides no basis for ignoring the FDA's expert views on preemption or for stalling interlocutory appellate review of the Court's decision.

Even if compliance with the Executive Order were relevant to the legal force of the Preamble and the expert policy views expressed therein, the documents submitted by plaintiffs all demonstrate that the FDA **did** do everything required by the Order.  Plaintiffs first argue that the "NCSL letter refutes any assertion that FDA meaningfully complied with Executive Order 13132." (First Notice at 2.)  To the contrary, the letter confirms that this group's views regarding preemption were communicated to the FDA prior to promulgation of the final rule, via both the letter itself and prior communications with the FDA referenced in the letter.  As NCSL explains, it had "recently asked FDA officials why it was including this harmful language," had previously offered to provide FDA with references to authority that supported its position, and the FDA had "informed NCSL" that it would not re-publish the Notice.  (NCSL Letter at 2.)  In addition, the letter itself conveys the group's strong opposition to federal preemption.  The fact that NCSL had opposed the preemption determination, however, is immaterial.  NCSL's views are those of one interested constituency and in no way control the ultimate conclusion to be reached by an expert federal agency.  Executive Order 13132 requires only consultation; it certainly does not require the FDA to adopt the views of every interested party that expresses an opinion.

Likewise, the Lane letter conclusively establishes that Governor Barbour's staff was consulted about the preemption determination.  As Mr. Lane explains, "[t]he Governor's healthcare policy advisor was contacted in connection with the labeling rule."  (Lane Letter at 1.)  In other words, the FDA consulted with the "Office of Mississippi Governor Haley Barbour," as the FDA has stated.  Plaintiffs complain that "FDA should have consulted with Governor

Barbour himself and not with a mere advisor." (First Notice at 4.) But the Executive Order does not dictate precisely with whom the FDA must consult, and it does not require sitting state governors to make themselves available for such consultation, as opposed to the policy advisor steeped in the issue and responsible for implementing the governor's policy agenda. Instead, the Order requires only (and without elaboration) that the agency "consult, to the extent practicable, with appropriate State and local officials." It is not for plaintiffs to decide *post hoc*, and without any legal support, which officials FDA should have spoken to in order to satisfy the consultation requirement; and it is absurd to suggest that the Governor's designated "healthcare policy advisor" does not qualify as an "appropriate State . . . official." The Lane letter clearly proves that the FDA complied with its obligations under the Order.

The additional materials provided by Governor Barbour's office likewise confirm that the FDA consulted with his office – via healthcare policy advisor Nicole Stofer – regarding the Preemption Preamble. In their Second Notice, plaintiffs now complain that "FDA's Consultation Memo suggests to the reader that FDA consulted with Governor Barbour himself." (Second Notice at 4.) That argument is meritless. As noted above, FDA specifically stated that it consulted with the "***Office of*** Mississippi Governor Haley Barbour," not the Governor himself. Plaintiffs also rely on materials Ms. Stofer apparently received from the National Governors Association ("NGA"), which reflect the views of that group in opposition to FDA's preemption decision. Those materials as well do nothing but confirm that FDA solicited the views of the NGA; the fact that those views were not adopted by the FDA does not mean the agency failed to comply with its consultation obligations. Plaintiffs continue to misunderstand this crucial point – consultation does not mean acquiescence. (Second Notice at 7 (arguing that consulted groups did not support the preemption finding and that this lack of support "discredits the Final Rule").)

Similarly, the Duran letter states that FDA sought input from the Office of Indiana Governor Mitch Daniels.  As Duran explains, "HHS and/or FDA did solicit consultation from Indiana's federal representative."  (Duran Letter at 1.)  As already explained, nothing more is required.

In short, plaintiffs' supplemental authorities defeat their own argument that review of this Court's ruling should be delayed pending further discovery, as they completely refute any suggestion of a factual dispute on that score.  Indeed, their primary relevance is to demonstrate that plaintiffs' eleventh-hour focus on FDA compliance with the Executive Order is merely a diversion concocted to delay appellate review of the Court's order.  The Court should put an end to this irrelevant fishing expedition and certify its order for interlocutory review.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

John H. Beisner
Jonathan D. Hacker
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Response has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 24th day of August, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel