UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
|     CHARLES M. FLIPPIN and | * | SECTION L |
|     KATHERINE C. FLIPPIN | * | |
| | * | JUDGE ELDON E. FALLON |
|         Plaintiffs, | * | |
| | * | MAGISTRATE JUDGE |
|     versus | * | KNOWLES |
| | * | |
|     MERCK & CO., INC.; NICHOLAS TERRY | * | |
|     WARREN, DPH; STEVE C. JACKSON, | * | |
|     DPH; RICHARD W. HAYES, DPH; | * | |
|     STEPHANIE B. (BUCK) ISON; | * | |
|     COURTNEY SHAY (INGRAM) McMAKIN; | * | |
|     VINAY KRISHAN SOOD; MELISSA | * | |
|     CARROL (McCALLISTER) BARNES; | * | |
|     MICHAEL RICHARDS; PATRICIA | * | |
|     BLASINGAME and SCOTT EVANS, | * | |
| | * | |
|         Defendants | * | |
| | * | |
|         Case No. 05-1797 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## MERCK'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

# TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................................................................ 4

ARGUMENT............................................................................................................................... 6

I.  THE COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION
    BECAUSE THERE IS NO POSSIBILITY THAT PLAINTIFFS CAN PREVAIL
    ON THEIR CLAIMS AGAINST THE NON-DIVERSE SALES
    REPRESENTATIVE DEFENDANTS .............................................................................. 7

   A.  Plaintiffs Cannot Prevail On Their Claims Against The Sales
       Representatives Because They Did Not Owe Plaintiffs A Duty To Warn ............ 7

   B.  Plaintiffs' Claims Against The Sales Representatives Are Entirely
       Conclusory And Do Not Allege Any Independent Action On The Part Of
       The Sales Representatives...................................................................................... 9

   C.  Plaintiffs' Misrepresentation Claim Against The Sales Representatives Is
       Not Pled With Sufficient Particularity ................................................................ 14

II. THE COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION
    BECAUSE THERE IS NO POSSIBILITY THAT PLAINTIFFS CAN PREVAIL
    ON THEIR CLAIMS AGAINST THE NON-DIVERSE PHARMACIST
    DEFENDANTS .............................................................................................................. 16

   A.  Pharmacists Are Not Obligated To Warn Consumers Of The Risks Of
       Prescription Drugs .............................................................................................. 17

   B.  The Contradictory Nature Of Plaintiffs' Claims Against The Pharmacists
       Is Clear Evidence Of Fraudulent Joinder........................................................... 20

CONCLUSION......................................................................................................................... 23

# TABLE OF AUTHORITIES

Page

**Cases**

*Badon v. RJR Nabisco Inc.*,
224 F.3d 382 (5th Cir. 2000) ................................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (May 21, 2007).............................................................................................. 10

*Bell v. Am. Gen. Fin. Inc.*,
267 F. Supp. 2d 582 (S.D. Miss. 2003)................................................................................... 10

*Black v. Black*,
166 S.W.3d 699 (Tenn. 2005).................................................................................................. 11

*Boyer v. Snap-On Tools Corp.*,
913 F.2d 108 (3d Cir. 1990)...................................................................................................... 4

*Burns v. Wyeth, Inc.*,
352 F. Supp. 2d 773 (E.D. Ky. 2004) ............................................................................... 12, 14

*Dooley v. Everett*,
805 S.W.2d 380 (Tenn. Ct. App. 1990) ............................................................................. 19, 20

*Falco v. Warner-Lambert Co.*,
C.A. No. 01-1140 (E.D. La. May 16, 2001) ........................................................................... 19

*Gardner v. Anesthesia & Pain Consultants*,
No. E2003-03027-COA-R3-CV, 2004 WL 2715304 (Tenn. Ct. App. Nov. 30, 2004)............ 14

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) .................................................................................................... 7

*Guidry v. Aventis Pharms., Inc.*,
No. 03-493-C (M.D. La. Oct. 9, 2003) .................................................................................... 18

*Hernandez v. Merck & Co.*,
No. 6:05-cv-221-Orl-31KRS, Order (M.D. Fl. May 3, 2005) .................................................. 12

*In re Baycol Prods. Liab. Litig.*,
MDL. No. 1431 (MJD/JGL), Civ. 03-4954, 2004 WL 1118642 (D. Minn. May 17, 2004) .... 18

*In re Diet Drugs Prods. Liab. Litig.*,
220 F. Supp. 2d 414 (E.D. Pa. 2002) ................................................................................ passim

*In re Diet Drugs Prods. Liab. Litig.*,
No. Civ.A.03-20376, 2004 WL 1535806 (E.D. Pa. June 18, 2004) ........................................ 18

*In re Rezulin Prods. Liab. Litig.*,
133 F. Supp. 2d 272 (S.D.N.Y. 2001)................................................................. 14, 15, 21, 22

*In re Rezulin Prods. Liab. Litig.*,
2002 WL 31852826 (S.D.N.Y. Dec. 18, 2002) ................................................................. 21, 22

*In re Vioxx Prods. Liab. Litig.*,
MDL 1657 (E.D. La. June 15, 2005) ....................................................................................... 23

*Jernigan v. Ashland Oil Inc.*,
989 F.2d 812 (5th Cir. 1993) .................................................................................................... 7

*Johnson v. Parke-Davis*,
114 F. Supp. 2d 522 (S.D. Miss. 2000)......................................................................... 8, 12, 13

*Laws v. Johnson*,
799 S.W.2d 249 (Tenn. Ct. App. 1990) ................................................................................... 17

## TABLE OF AUTHORITIES
### (continued)

Page

*Legg v. Wyeth*,
  428 F.3d 1317 (11th Cir. 2005) (collecting cases).................................................................. 3, 4
*Lizana v. Guidant Corp.*,
  Civ. No. 1:03cv254 (S.D. Miss. Jan. 21, 2004) ........................................................................ 14
*Louis v. Wyeth-Ayerst Pharms., Inc.*,
  No. 5:00-CV-102-LN (S.D. Miss. Sept. 25, 2000) ............................................................... 21, 22
*Lyons v. Am. Tobacco Co.*,
  No. Civ. A. 96-0881-BH-S, 1997 U.S. Dist. LEXIS 18365 (S.D. Ala. Sept. 30, 1997) .... 11, 14
*Omobude v. Merck & Co.*,
  No. 3:03CV528LN, 2003 U.S. Dist. LEXIS 27006 (S.D. Miss. Oct. 3, 2003) ......................... 22
*Pittman v. Upjohn Co.*,
  890 S.W.2d 425 (Tenn. 1994)................................................................................................. 20
*Reyes v. Wyeth Labs.*,
  498 F.2d 1264 (5th Cir. 1974) ............................................................................................... 17
*Romero v. Danek Med., Inc.*,
  No. 96-3241, 1999 U.S. Dist. LEXIS 6491 (W.D. Tenn. April 19, 1999) ........................... 8, 17
*Sanks v. Parke-Davis*,
  No. 00-S-1122-E, 2000 WL 33910097 (M.D. Ala. Oct. 30, 2000) ......................................... 18
*Smallwood v. Illinois Cent. Ry. Co.*,
  385 F.3d 568 n.1 (5th Cir. 2004) ............................................................................................. 6
*Southern v. Pfizer, Inc.*,
  471 F. Supp. 2d 1207 (N.D. Ala. 2006).................................................................................. 8, 9
*Stern v. Wyeth*,
  Case No. 02-80620-CIV-MARRA (S.D. Fla. Jan. 22, 2003) .................................................... 11
*Strickland v. Brown Morris Pharmacy, Inc.*,
  No. Civ. A. 96-815, 1996 WL 537736 (E.D. La. Sept. 20, 1996) ........................................... 19
*Tedford v. Warner-Lambert Co.*,
  327 F.3d 423 (5th Cir. 2003) ................................................................................................... 3
*Tillman v. R.J. Reynolds Tobacco*,
  253 F.3d 1302 (11th Cir. 2001) .............................................................................................. 13
*Wakeland v. Brown & Williamson Tobacco Corp.*,
  996 F. Supp. 1213 (S.D. Ala. 1998)................................................................................... 15, 16
*Walker v. Medtronic, Inc.*,
  No. 1:03CV74-D-D, 2003 WL 21517997 (N.D. Miss. June 4, 2003)........................................ 8
*Wecker v. Nat'l Enameling and Stamping Co.*,
  204 U.S. 176 (1907)................................................................................................................ 4
*Wiggins v. Am. Home Prods. Corp.*,
  No. CV-01-J-2303-NW, 2001 WL 34013629 n. 4 (N.D. Ala. Oct. 2, 2001) ........................... 14
*Wilson v. Republic Iron & Steel Co.*,
  257 U.S. 92 (1921).................................................................................................................. 6
*Zellmer v. Merck & Co., Inc.*,
  Civ. No. 1:03-CV-2530 (N.D. Ga. Nov. 17, 2003)................................................................... 14

-ii-

## TABLE OF AUTHORITIES
### (continued)

Page

**Statutes & Rules**
Fed. R. Civ. P. 9(b) ....................................................................................................................... 14
Tenn. R. Civ. P. 9.02..................................................................................................................... 14

**Other Authorities**
27 Am. Jur. 2d Employment Relationship § 409........................................................................... 10
Restatement (Second) of Agency § 350........................................................................................ 10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
| Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| CHARLES M. FLIPPIN and | * | SECTION L |
| KATHERINE C. FLIPPIN | * | |
| | * | JUDGE ELDON E. FALLON |
| Plaintiffs, | * | |
| | * | MAGISTRATE JUDGE |
| versus | * | KNOWLES |
| | * | |
| MERCK & CO., INC.; NICHOLAS TERRY | * | |
| WARREN, DPH; STEVE C. JACKSON, | * | |
| DPH; RICHARD W. HAYES, DPH; | * | |
| STEPHANIE B. (BUCK) ISON; | * | |
| COURTNEY SHAY (INGRAM) McMAKIN; | * | |
| VINAY KRISHAN SOOD; MELISSA | * | |
| CARROL (McCALLISTER) BARNES; | * | |
| MICHAEL RICHARDS; PATRICIA | * | |
| BLASINGAME and SCOTT EVANS, | * | |
| | * | |
| Defendants | * | |
| | * | |
| Case No. 05-1797 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MERCK'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

The plaintiffs in this case seek to evade federal jurisdiction by joining their product liability claims against Merck & Co., Inc. ("Merck") – which meet all of the requirements for federal diversity jurisdiction – with claims against certain in-state sales representatives and pharmacists. As set forth below, plaintiffs have no real intention of pursuing relief from these non-diverse defendants; nor could they if they so desired. Accordingly, these defendants must be ignored for purposes of determining jurisdiction.

The fraudulent joinder of non-diverse sales representatives, physicians, and pharmacists has become a common tactic in pharmaceutical litigation by plaintiffs who seek to avoid federal court and – in cases such as this one – inclusion in an MDL proceeding. Plaintiffs' playbook is generally the same: in addition to the diverse manufacturer-defendant, from whom actual relief is sought, plaintiffs also haul into court sales representatives, physicians, and pharmacists. Of course, plaintiffs have no real intention of pursuing these non-diverse parties to judgment (indeed, no Vioxx case has ever gone to trial against a sales representative or other local party). Rather, plaintiffs wait until the one-year removal deadline has passed and a court has ruled on defendants' motion for remand. Then, all of the non-diverse defendants are inevitably dismissed from the lawsuit.

Numerous courts around the country have observed that this practice is little more than a sham, designed only to prevent removal, at the expense of the numerous parties dragged into court for what amounts to an improper purpose. As the MDL court in the diet drug litigation recently observed, "there is a pattern of pharmacies being named in complaints, but never pursued to judgment, typically being voluntarily dismissed at some point after the defendants' ability to remove the case has expired." *In re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002). This practice, the court noted, "can only be characterized as a sham, at the unfair expense not only of [the drug maker] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [the drug maker], the real target, in a federal forum." *Id.* at 425.[1] The Court of Appeals for the

---

[1]     As the MDL court in the diet drug litigation pointed out, this sham practice can have serious consequences for the small parties that are forced to hire lawyers and purchase insurance to defend against these meritless claims. "By way of flagrant example, there is the Bankston Drugstore, in Fayette, Mississippi. As the only pharmacy in

Eleventh Circuit similarly observed that the diet drug litigation alone had spawned "dozens" of cases wherein district courts concluded local sales representatives were fraudulently joined to defeat removal. *Legg v. Wyeth*, 428 F.3d 1317, 1320-21 (11th Cir. 2005) (collecting cases). The Court of Appeals for the Fifth Circuit has also recognized the inequities inherent in such efforts at forum manipulation. *See Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 425-26 (5th Cir. 2003). In *Tedford*, the plaintiff in a Rezulin case named successive non-diverse physicians in an attempt to thwart the defendant's effort to remove the case to federal court. The court stated that Congress did not intend to allow plaintiffs to "circumvent" the removal statute; rather, "[w]here a plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights," *id.* at 428-29, the equities require a district court to reject plaintiffs' evasive tactics and deny remand to state court.

The plaintiffs' effort to defeat removal in the present case is no different. If plaintiffs are permitted to avoid inclusion in the MDL by simply tacking non-diverse defendants on to their complaint, plaintiffs will not only succeed in subverting the intent of Congress in creating diversity jurisdiction, but will also create a two-tiered trial track: on the one hand are plaintiffs who do not purport to seek relief against sham local defendants and are properly removed to federal court; on the other are plaintiffs who also sue a local sales representative or pharmacist,

---

Jefferson County, Mississippi, the store is named in hundreds of lawsuits involving the sale of allegedly defective drugs, including fen-phen. . . . Hilda Bankston, the former owner of the pharmacy, testified that because of this 'lawsuit frenzy' she has had to spend innumerable hours retrieving information for potential plaintiffs, testifying in court, enduring the whispers and questions of customers and neighbors who wonder what the pharmacy did to end up in court so often, and worrying about whether her business would survive. Although she sold the pharmacy in January, 2000, she is still deeply mired in the lawsuits, as is her successor. Although the pharmacy is usually dropped from the lawsuits, the costs of hiring lawyers and obtaining insurance can become prohibitive . . . As Ms. Bankston sees it, her 'life's work was merely a means to an end for trial lawyers seeking to cash in on lucrative class actions - a back door into the Jefferson County court system.'" *In re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d at 424 (citations omitted).

890514v.1

push for remand and a trial setting in state court, and dismiss the local defendants from the case a day after the one-year limitation on removal has expired.  Merely suing a number of defendants against whom no relief is actually sought should not entitle a particular plaintiff to preferential treatment – much less remand to state court.  Indeed, the admonition of the Court of Appeals for the Third Circuit is particularly apt in the context of fraudulent joinder in pharmaceutical litigation: "[s]o long as federal diversity jurisdiction exists . . . the need for its assertion may well be greatest when the plaintiff tries hardest to defeat it."  *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (citation and punctuation omitted).  *See also In re Diet Drugs*, 220 F. Supp. 2d at 425 (defendants' right to removal "emanates from Article III, Section 2 of the Constitution.  As long as Congress authorizes the federal district courts to exercise subject matter jurisdiction over diversity actions we must protect the right of parties to invoke it.").

Plaintiffs' pleading in the present case amounts to no more than a charade – a feigned effort to seek relief against a host of individuals with the sole goal of thwarting Merck's statutory right to defend against plaintiffs' allegations in federal court.  Because it is clear that "the federal courts should not sanction devices intended to prevent removal to a federal court where one has that right, and should be equally vigilant to protect the right to proceed to federal court," *Legg*, 428 F.3d at 1325 (quoting *Wecker v. Nat'l Enameling and Stamping Co.*, 204 U.S. 176, 186 (1907)), plaintiffs' motion to remand must be denied.

## BACKGROUND

This lawsuit concerns Charles M. Flippin's use of the prescription medication Vioxx, a pharmaceutical drug manufactured, marketed and distributed by Merck.

890514v.1

On January 31, 2005, plaintiffs Charles M. Flippin and Katherine C. Flippin filed suit in state court in Carroll County, Tennessee against Merck, alleging personal injuries as a result of ingesting Vioxx. In a transparent attempt to defeat diversity jurisdiction, plaintiffs also named as defendants seven non-diverse individual Merck sales representatives:  Stephanie B. (Buck) Ison; Courtney Shay (Ingram) McMakin; Vinay Krishan Sood; Melissa Carrol (McCallister) Barnes; Michael Richards; Patricia Blasingame, and Scott Evans (the "sales representatives").  Plaintiffs also named as defendants three non-diverse individual pharmacists:  Nicholas Terry Warren, DPH; Steve C. Jackson, DPH; and Richard W. Hayes, DPH.  On March 8, 2005, Merck removed the case to the Western District of Tennessee, asserting complete diversity on the ground that the sales representatives and pharmacists were fraudulently joined in an attempt to defeat removal. On March 11, 2007, Merck moved to stay all proceedings in the case pending transfer to this Court.  On March 25, 2007, plaintiffs opposed Merck's motion to stay and filed a motion to remand back to state court, based solely on the argument that the inclusion of these defendants destroys complete diversity.  Plaintiff did not alleged that any other element for removal, including timeliness and requisite amount-in-controversy, is lacking.  On April 7, 2005, before Merck's remand opposition brief was due, Judge James Todd, chief judge of the Western District of Tennessee, stayed the case pending MDL transfer. On October 15, 2005, plaintiffs filed a supplemental motion to remand in this Court, asserting that medical necessity and economic hardship required immediate remand to state court in Tennessee.[2]  Merck now opposes plaintiffs' motion to remand to state court for lack of diversity jurisdiction.

---

[2]     In response to plaintiffs' supplemental motion, Merck notes that a remand to state court is no guarantee of a speedy trial and, of course, a trial itself does not guarantee recovery.  Moreover, if plaintiffs sought expedited trial of their claims, they would presumably have approached the PSC to be included in the MDL trial selection process.

## ARGUMENT

Plaintiffs' motion to remand should be denied because all of the properly joined parties to this action are diverse and the jurisdictional threshold is satisfied. In their remand motions, plaintiffs do not dispute that the amount-in-controversy requirement is satisfied; thus, the only question facing the Court is whether the non-diverse sales representatives and non-diverse pharmacists are fraudulently joined. As the United States Supreme Court has long recognized, a defendant's "right to removal cannot be defeated by a fraudulent joinder of a resident defendant" against whom the plaintiff has no possibility of prevailing. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

The doctrine of fraudulent or improper joinder[3] is designed to prevent plaintiffs from naming parties of the same citizenship merely to avoid removal of an action to federal court. A defendant is improperly joined if "there is no reasonable basis for predicting that plaintiffs might establish liability . . . against the in-state defendants" on the pleaded claims in state court. *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 393 (5th Cir. 2000) (the "mere assertion of metaphysical doubt as to the material facts i[s] insufficient" to establish reasonable basis for predicting recovery under state law) (quoting *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993) (internal quotation marks omitted)); *accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312, 328-29 (5th Cir. 2002) (possibility of liability must be reasonable, not merely "theoretical"). As set forth below, this standard is clearly met here because plaintiffs cannot prevail on any cause of action against the sales representative or

---

[3]    Historically, courts have used the term "fraudulent joinder" to refer to this doctrine. In *Smallwood v. Illinois Cent. Ry. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc), the United States Court of Appeals for the Fifth Circuit endorsed the use of the term "improper joinder" as being more consistent with related statutory language.

890514v.1

pharmacist defendants.

## I.     THE COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION BECAUSE THERE IS NO POSSIBILITY THAT PLAINTIFFS CAN PREVAIL ON THEIR CLAIMS AGAINST THE NON-DIVERSE SALES REPRESENTATIVE DEFENDANTS.

Plaintiffs allege claims against the sales representative defendants for negligence (*see*

Compl. ¶ 22) and misrepresentation (*see* Compl. ¶¶ 17-21). As set forth below and in Merck's

removal notice, there is no reasonable basis to predict that the plaintiffs could prevail on these

causes of action because: (1) the sales representatives do not owe plaintiffs a duty to warn under

Tennessee law; (2) even if the sales representatives owed plaintiffs a duty to warn, courts have

concluded under similar circumstances that wholly conclusory allegations, like those in

plaintiffs' complaint, are evidence of fraudulent joinder; and (3) plaintiffs' misrepresentation

claim against the sales representatives is not pled with the requisite particularity. Accordingly,

the sales representative defendants must be ignored for purposes of determining diversity

jurisdiction.

### A.     Plaintiffs Cannot Prevail On Their Claims Against The Sales Representatives Because They Did Not Owe Plaintiffs A Duty To Warn.

There is no reasonable basis to predict that plaintiffs will prevail on their negligence and

misrepresentation claims against the sales representatives because the sales representatives did

not owe plaintiffs a duty to warn of the potential dangers of Vioxx independent of Merck's duty

to warn. Rather, under the learned intermediary doctrine, the ***manufacturer owes the doctor*** a

duty to warn. *See Romero v. Danek Med., Inc.*, No. 96-3241, 1999 U.S. Dist. LEXIS 6491

(W.D. Tenn. April 19, 1999) (in Tennessee, "a manufacturer meets its burden if its directions and

warnings are provided to a 'learned intermediary'").

Courts have recognized in similar cases that sales representatives are fraudulently joined for this very reason. *See, e.g., Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 524-25 (S.D. Miss. 2000) ("Plaintiffs have cited no authority for the proposition that the sales representatives, as opposed to the manufacturer, had any duty to warn."); *In re Diet Drugs*, 220 F. Supp. 2d at 425 (finding that sales representatives were fraudulently joined in a suit against the pharmaceutical manufacturer on various grounds, including application of the learned intermediary doctrine); *Walker v. Medtronic, Inc.*, No. 1:03CV74-D-D, 2003 WL 21517997, at *3 (N.D. Miss. June 4, 2003) ("Under the learned intermediary doctrine, any duty to warn a physician about the dangers of a medical device is placed upon the device's manufacturer; the sales representative selling the device is under no duty to warn patients (or potential future patients, assuming they could even be identified) concerning the device."); *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1221 (N.D. Ala. 2006) (concluding sales representatives were fraudulently joined and that plaintiff's claims for, *inter alia*, negligence and misrepresentation could not be maintained against the sales representatives because sales representatives do not owe a duty to warn).

For example, in *Southern*, the plaintiff joined two local sales representatives in her lawsuit against Pfizer for damages based on allegations that the drug Neurontin caused her attempted suicide. The court concluded that plaintiff's claims for negligence and misrepresentation failed as to the sales representatives because there was no independent duty to warn running from the sales representatives to the plaintiff. Rather, "any duty to disclose would be owed to Southern's prescribing physician, and not to Southern, ***by Pfizer Inc., and not by [the sales representatives] individually***." *Id.* at 1218 (emphasis).

The same is true here. Because the sales representatives had no duty – separate from

Merck's – to warn of the risks of Vioxx, the plaintiffs' claims against the sales representatives necessarily fail.  For this reason alone, the sales representatives are fraudulently joined.

**B.      Plaintiffs' Claims Against The Sales Representatives Are Entirely Conclusory And Do Not Allege Any Independent Action On The Part Of The Sales Representatives.**

The sales representatives are also fraudulently joined because even if recovery against them were theoretically possible, plaintiffs' conclusory allegations fail to identify any independent action on the part of the sales representatives.  Plaintiffs assert that "Merck and its sales representatives made material representations to the general public, to prescribing physicians, the Food and Drug Administration and/or to potential users" regarding Vioxx (Compl. ¶ 17), and that "Defendant Merck and its sales representatives failed to tell the plaintiff and his physician that Vioxx could cause heart attacks . . . " (*id.* ¶ 20).  Plaintiffs also contend that the sales representatives "[m]ade material representations to plaintiff's physician that Vioxx was thoroughly tested and proven safe" (*id.* ¶ 22(a)); that they "[f]ailed to warn plaintiff's physician that Vioxx was unsafe" (*id.* ¶ 22(b)); that they "[c]oncealed relevant information that should have been shared with plaintiff's physician" (*id.* ¶ 22(c)); and that they "[c]onspired with Defendant Merck to conceal relevant health information from plaintiff's physician" (*id.* ¶ 22(d)).  However, plaintiffs provide no factual averments that would establish the sales representatives' liability independent from that of Merck.  And even though plaintiffs name seven different sales representatives in their complaint, the Complaint is devoid of a single, individual allegation regarding the specific conduct of any single sales representative.

As the Supreme Court recently reiterated, while a complaint "does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

890514v.1

relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (May 21, 2007). Here, the allegations in the Complaint make clear that plaintiffs' effort in naming these sales representatives is a scattershot (and transparent) attempt to defeat removal.

Company employees are liable as joint tortfeasors only "[t]o the extent that they aid in producing something which they should realize is likely to harm others." Restatement (Second) of Agency § 350, cmt. c; *see also* 27 Am. Jur. 2d Employment Relationship § 409 ("[t]he fact that an employee was acting under directions will . . . protect him from liability for the employer's negligence unless the employee knew or had reason to know that the acts were . . . liable to cause injury."). Although plaintiffs note that the sales representatives "detailed" Vioxx, plaintiffs do not allege the sales representatives engaged in any conduct independent of Merck's alleged misrepresentations or alleged concealments, and therefore, plaintiffs cannot prevail on their claims as pleaded. *See, e.g.*, *Bell v. Am. Gen. Fin. Inc.*, 267 F. Supp. 2d 582, 584 (S.D. Miss. 2003) ("Conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined."); *Stern v. Wyeth*, Case No. 02-80620-CIV-MARRA, slip op. at 6 (S.D. Fla. Jan. 22, 2003) (high-ranking pharmaceutical employee fraudulently joined because "Plaintiff's Complaint . . . failed to allege personal involvement by [the employee defendant] in the tortious conduct which has allegedly resulted in injury to the Plaintiff.") (attached as Ex. 1); *Lyons v. Am. Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 U.S. Dist. LEXIS 18365, at *19 (S.D. Ala. Sept. 30, 1997) (holding that

there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure

of the plaintiff "to set forth any specific factual allegations" against them).  In addition to

personal participation, awareness of the alleged falsity – or negligently failing to ascertain the

alleged falsity – is an element essential to plaintiffs' claims against the sales representatives.

*Black v. Black*, 166 S.W.3d 699, 705 (Tenn. 2005) (observing that fraud requires a showing that

"[t]he representation must have been made with knowledge of its falsity and with a fraudulent

intent") (citation omitted).  However, plaintiffs' Complaint does not allege that the sales

representatives had any knowledge independent from that of Merck; nor does the Complaint

allege that the sales representatives were negligent in ascertaining the alleged falsity of the

representations.  Rather, the Complaint asserts liability against the sales representatives based

upon *Merck's* alleged knowledge.  (Compl. ¶ 17 ("Merck and its sales representatives made

material representations to the general public, to prescribing physicians, the Food and Drug

Administration and/or to potential users . . . that Vioxx was thoroughly tested and proven

safe.").)

In their motion to remand, aside from merely restating the bare-bones allegations in their

Complaint, plaintiffs rely on a media account for the proposition that "Merck's sales force was

specifically trained to mislead physicians about the safety of Vioxx."  (Pls.' Mot. To Remand,

With Supporting Mem. Of Law ("Pls.' Mot.") at 3.)  Even if the averments in plaintiffs' motion

papers could properly be considered for jurisdictional purposes – which they cannot – plaintiffs'

reliance on additional generalized allegations further supports Merck's argument that plaintiffs

have utterly failed to provide any allegations that the sales representative *at issue in this case*

engaged in any conduct independent of Merck's alleged misrepresentations or alleged

concealments.

Where, as here, there is no allegation that the sales representatives acted outside the scope of their proscribed duties for Merck, plaintiffs have no actionable claim against the sales representatives. Accordingly, numerous courts have recognized that professional representatives are fraudulently joined where – as here – the plaintiff fails to allege individualized facts connecting the representative to his claims. *See* Order, *Hernandez v. Merck & Co.*, No. 6:05-cv-221-Orl-31KRS, Order (M.D. Fl. May 3, 2005) (attached as Ex. 2); *see, e.g.*, *Burns v. Wyeth, Inc.*, 352 F. Supp. 2d 773, 777 (E.D. Ky. 2004) (denying plaintiffs' motion to remand and finding that sales representatives were fraudulently joined because plaintiffs failed to plead with any particularity or specificity when or where the alleged misrepresentations occurred).

For instance, in *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522 (S.D. Miss. 2000), plaintiffs brought suit against a pharmaceutical manufacturer and five sales representative defendants for injuries they allegedly sustained as a result of taking the drug Rezulin. *Id.* at 523. The plaintiffs' claims against the sales representatives were based on negligence, fraudulent or negligent misrepresentation, and breach of warranty. *Id.* at 524. Although the plaintiffs alleged that the sales representative breached a duty to warn them about the risks of Rezulin, the court held that the non-diverse defendants were fraudulently joined:

> While Plaintiffs claim that the sales representatives owed them a duty to warn, there is no evidence, nor do Plaintiffs argue in their motion, that any of the named Plaintiffs, or their physicians, ever received any Rezulin from the named sales representatives.  Plaintiffs have failed to establish any connection between themselves and the named sales representatives.

*Id.* In addressing the plaintiffs' misrepresentation claims, the *Johnson* court stated:

> Suffice it to say that Plaintiffs have no proof, and in fact do not argue in their motion to remand, that any of the named representatives made any

> representations directly to any of the Plaintiffs. Thus, none of the Plaintiffs was
> the "hearer" of any of the sales representatives' alleged misrepresentations. Nor
> is there proof that any representations were made to any of the Plaintiffs'
> physicians. Again Plaintiffs have failed to establish any connection between
> themselves and the named sales representatives.

*Id.* at 525 (internal citation omitted). Concluding that the plaintiffs' failure to establish a factual

connection between themselves and any of the named sales representatives "dooms their claim,"

the Court held that the plaintiffs had no cause of action against the named sales representatives

and the case was therefore properly removed. *Id.*

The same is true here. Plaintiffs do not allege in their Complaint that the sales

representatives at issue ever said or did anything that led to their consumption of Vioxx; nor is

there any reasonable basis to infer that the sales representatives personally did anything from

which individual liability could flow. (Compl. ¶¶ 17-22.) Because such collective allegations

are not sufficient to state a factual basis for any claim against the sales representatives, this alone

is reason to deny plaintiffs' motion for remand. *See Tillman v. R.J. Reynolds Tobacco,* 253 F.3d

1302, 1305 (11th Cir. 2001) (non-diverse employee defendants fraudulently joined where

"plaintiff failed to tie these defendants to the underlying allegations of the complaint"); *Lizana v.*

*Guidant Corp.*, Civ. No. 1:03cv254, slip op. at 5 (S.D. Miss. Jan. 21, 2004) (finding sales

representative fraudulently joined, and observing that a "plaintiff wishing to defeat a fraudulent

joinder claim must plead specific facts and avoid advancing claims in general terms or make

mere allegations of wrongdoing on the part of the non-diverse defendant") (attached as Ex. 3);

*Zellmer v. Merck & Co., Inc.*, Civ. No. 1:03-CV-2530, slip op. at 6 (N.D. Ga. Nov. 17, 2003)

(sales representatives fraudulently joined where "Plaintiff . . . failed to allege specific facts

supporting claims against the individual Defendants") (attached as Ex. 4).[4]

### C.    Plaintiffs' Misrepresentation Claim Against The Sales Representatives Is Not Pled With Sufficient Particularity.

Plaintiffs' misrepresentation claim is deficient for the additional reason that plaintiffs

have failed to plead fraud with particularity. *See Gardner v. Anesthesia & Pain Consultants*, No.

E2003-03027-COA-R3-CV, 2004 WL 2715304, at *7 (Tenn. Ct. App. Nov. 30, 2004); *see also*

Fed. R. Civ. P. 9(b); Tenn. R. Civ. P. 9.02. As numerous courts have recognized, unsupported

fraud allegations against a non-diverse defendant cannot defeat diversity jurisdiction. *See In re*

*Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 283-84 (S.D.N.Y. 2001) (finding in-state

defendants fraudulently joined due to plaintiff's failure to plead fraud claims with particularity);

*Burns v. Wyeth*, 352 F. Supp. 2d 773 (E.D. Ky. 2004) (same; applying Kentucky law); *Zellmer v.*

*Merck & Co.*, No 1:03-CV-2530-RWS, slip op. at 5 (N.D. Ga. Nov. 17, 2003) (same; applying

Georgia law) (attached as Ex. 5); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F.

Supp. 1213, 1221 (S.D. Ala. 1998) (finding that the failure to allege particular facts supporting

claims against defendants violated Rule 9(b) and resulted in finding of fraudulent joinder).

In *In re Rezulin Prods. Liab. Litig.*, for example, plaintiffs joined local sales

representatives in an attempt to defeat diversity jurisdiction in a suit seeking recovery for

personal injuries allegedly resulting from the use of a prescription diabetes medication. The

court concluded the sales representatives were fraudulently joined because, *inter alia*, plaintiffs'

claim for misrepresentation was not pled with the required particularity. According to the court,

---

[4]     *See also Wiggins v. Am. Home Prods. Corp.*, No. CV-01-J-2303-NW, 2001 WL 34013629, at *3 n. 4 (N.D. Ala. Oct. 2, 2001) (finding resident defendant fraudulently joined because "plaintiffs ma[de] no specific allegation[s] against [the in-state defendant] at all in any of the eight counts of the complaint"), *aff'd*, 37 Fed. Appx. 980 (11th Cir. 2002); *Lyons v. Am. Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 U.S. Dist. LEXIS 18365, at *15-19 (S.D. Ala. Sept. 30, 1997).

such a claim "will be sustained only if the circumstances of the alleged fraud -- including matters such as the time, place, content and speaker of the allegedly fraudulent misrepresentations -- are set forth." *Id.* at 283. Merely "peppering" a complaint "with allegations of management-level corporate wrongdoing, which they ascribe to salespeople through the use of the catch-all attribution to 'defendants' . . . [does] not meet the Rule 9(b) requirements." *Id.* at 283-84. The court explained that numerous federal courts have denied remand "based on inadequate pleadings" and that "it would be difficult to justify any different approach in resolving claims of improper joinder in the removal context, as another approach could close the doors to federal courts solely on the basis of plaintiffs' wishful speculation." *Id.* at 284-85. Similarly, in *Wakeland*, a tobacco case, plaintiffs joined, in an attempt to defeat removal, several local entities who allegedly participated in the distribution and retail sale of cigarettes that plaintiffs alleged were the cause of their injuries. The court concluded the local entities were fraudulently joined, in part because the plaintiffs' fraud-based claims were not pled with the required particularity. As the court explained, "the complaint simply does not specify what affirmative misrepresentation any defendant – let alone any distributor defendant – is alleged to have made." *Wakeland*, 996 F. Supp. at 1221. Moreover, the court explained the deficiency was incurable:

> Any such misrepresentations would have been made directly to [plaintiff]. The knowledge of the misrepresentations would necessarily be in his possession; therefore, he can not be heard to complain that he needs additional discovery in order to substantiate the claim. "If plaintiffs were unable at the time they formulated their complaint to set forth any specific factual allegations against the distributor defendants upon which could be based any claim of fraud or breach of warranty, there can be no better admission of fraudulent joinder of these defendants."
> *Id.* (citation omitted).

In the present case, plaintiffs do not identify with the requisite particularity the alleged material misrepresentations of past or present fact made by the sales representative defendants. To the contrary, plaintiffs' claims against the sales representative defendants do not even meet basic pleading standards, much less the heightened standard for pleading fraud. Plaintiffs do not make any specific allegations as to what any particular sales representative defendant said, or to whom s/he said it, and do not even identify Mr. Flippin's prescribing physician(s). Accordingly, there is no reasonable basis to predict that plaintiffs could prevail on their misrepresentation claim against the sales representative defendants. For this reason too, plaintiffs have no possibility of prevailing on their misrepresentation claim against the sales representative defendants, and the sales representatives should not be considered in assessing the Court's jurisdiction over this action.

## II. THE COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION BECAUSE THERE IS NO POSSIBILITY THAT PLAINTIFFS CAN PREVAIL ON THEIR CLAIMS AGAINST THE NON-DIVERSE PHARMACIST DEFENDANTS.

Plaintiffs also purport to state a claim for negligence against three non-diverse pharmacist defendants. (*See* Compl. ¶¶ 23-25.) Specifically, plaintiffs allege that these pharmacists were negligent "in filling plaintiff's Vioxx prescription when they knew or should have known of the increased risk of heart attack and for failing to adequately warn the plaintiff of the risk" associated with Vioxx. (*Id.*) However, plaintiffs have no possibility of prevailing on their negligence claim against the pharmacist defendants because: (1) the law is clear in Tennessee that pharmacists have no duty to warn about the potential side-effects of prescription medications; and (2) the contradictory nature of plaintiffs' allegations against the pharmacists is

890514v.1

clear evidence of fraudulent joinder.

## A.   Pharmacists Are Not Obligated To Warn Consumers Of The Risks Of Prescription Drugs.

There is no reasonable basis to predict that plaintiffs would prevail on their negligence claim against the pharmacists because the pharmacists do not owe plaintiffs a duty to warn of the potential dangers of Vioxx. As set forth above, Tennessee adheres to the learned intermediary doctrine, whereby "a manufacturer meets its burden if its directions and warnings are provided to a 'learned intermediary.'" *Romero v. Danek Med., Inc.*, 1999 U.S. Dist. LEXIS 6491. Moreover, the law is clear in Tennessee that pharmacists do not have a duty to warn consumers about the risks of drugs. *See Laws v. Johnson*, 799 S.W.2d 249, 253 (Tenn. Ct. App. 1990) (citing *Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1276 (5th Cir. 1974).

In *Laws*, plaintiffs appealed an adverse summary judgment ruling, arguing that the defendant pharmacists had incorrectly filled a prescription. In affirming the trial court's grant of summary judgment, the court made clear that pharmacists owe no duty to warn consumers of the risks of the drugs they dispense; rather, "[t]heir only function [is] to fill the prescription." *Laws*, 799 S.W.2d at 255. Here, plaintiffs' allegations against the in-state pharmacists are premised on the alleged failure of the pharmacists "to adequately warn the plaintiff of the risk of heart attack associated with ingesting Vioxx." (Compl. ¶ 25.) Plaintiffs' allegations fall squarely within the scope of the rule set forth in *Laws*; accordingly, there is no possibility plaintiffs can recover under their claim of negligence against the in-state pharmacist defendants.

Applying the same logic, a number of courts have concluded that there is no possibility of prevailing against a pharmacist in a failure-to-warn case and, thus, such parties are fraudulently joined. *See In re Diet Drugs Prods. Liab. Litig.*, No. Civ.A.03-20376, 2004 WL 1535806, at *3

(E.D. Pa. June 18, 2004) ("because pharmacists have no duty to warn . . . except in limited circumstances that do not apply here, plaintiff's claims against the in-state pharmacy defendants must fail"); *In re Baycol Prods. Liab. Litig.*, MDL. No. 1431 (MJD/JGL), Civ. 03-4954, 2004 WL 1118642, *4 (D. Minn. May 17, 2004) (finding pharmacies fraudulently joined where "the thrust of the Complaint is that Bayer and GSK failed to inform the public that Baycol was dangerous. The state of Mississippi does not recognize a failure to warn cause of action against a pharmacy for merely filling a prescription in accordance with physician's orders, based on the learned intermediary doctrine."); *Sanks v. Parke-Davis*, No. 00-S-1122-E, 2000 WL 33910097, at *4 (M.D. Ala. Oct. 30, 2000) (concluding pharmacy defendant was fraudulently joined because "a pharmacy or pharmacist who correctly fills a prescription in strict accordance with the prescribing physician's directions is protected by the learned intermediary doctrine and is not required to warn patients of potential adverse side effects").[5]

For example, in *Strickland v. Brown Morris Pharmacy, Inc.*, No. Civ. A. 96-815, 1996 WL 537736, at *2 (E.D. La. Sept. 20, 1996), this Court refused to remand a case to state court where the plaintiff had named a non-diverse pharmacist in an attempt to defeat complete diversity. In *Strickland*, the Court observed that the pharmacy was fraudulently joined because "no facts ha[d] been avowed which would go to show that [the pharmacy] knew or should have known that [the drug] Primatine Mist was an unsafe product in its normal and intended use; [a]ll plaintiff ha[d] done in her petition [wa]s make conclusory allegations or legal conclusions put

---

[5]      *See also Guidry v. Aventis Pharms., Inc.*, No. 03-493-C, slip op. at 4 (M.D. La. Oct. 9, 2003) (denying motion to remand where defendant pharmacists had no "duty to warn a patient of adverse reactions from taking prescription medication" and were therefore fraudulently joined) (attached as Ex. 6); *Falco v. Warner-Lambert Co.*, C.A. No. 01-1140, slip op. at 2 (E.D. La. May 16, 2001) (denying remand because non-diverse pharmacy defendant was fraudulently joined where pharmacist had no duty to warn plaintiff of drug's harmful effects) (attached as Ex. 7).

forward as factual findings which d[id] not go toward establishing a cause of action." *Strickland*, 1996 WL 537736, at *2. Similarly, in *In re Diet Drugs*, plaintiff joined local pharmacies to her product liability complaint in an attempt to defeat removal to federal court. The court, however, concluded the in-state pharmacy defendants were fraudulently joined because pharmacists have no duty to warn consumers in a failure-to-warn products liability action. *In re Diet Drugs*, 2004 WL 1535806, at *3. Plaintiffs' motion to remand was denied. *Id.*

In support of their contention that a cause of action will lie against the in-state pharmacists in the present case, plaintiffs rely on *Dooley v. Everett*, 805 S.W.2d 380 (Tenn. Ct. App. 1990) (Pls.' Mot. at 7), for the proposition that pharmacists owe an independent duty to their customers to exercise that degree of care as would be employed by a pharmacist of reasonable prudence. But reliance on *Dooley* is misplaced because the rule announced in *Dooley* simply does not apply in this case. *Dooley* involved allegations that a pharmacist was liable for failing to warn a customer regarding the potential interaction of two drugs, prescribed by the same doctor and dispensed by the same pharmacist on two different occasions. As the court in *Dooley* observed, that case did not "involve a relationship between the drug manufacturer and the patient or the physician and the patient." *Id.* at 386. Rather, the court in *Dooley* merely concluded that "whether the duty to warn of potential drug interaction is included within the pharmacist's duty to his customer is a disputed issue of fact preventing the granting of summary judgment." *Id.* Here, plaintiffs' Complaint asserts that the in-state pharmacists owed a duty to warn of the known or knowable risks of Vioxx – a proposition that *Dooley* explicitly fails to address. *See id.* (observing that authorities relied on by defendant were inapposite because in "each of the foregoing cases the plaintiff argued that there was a duty to warn on the part of the

890514v.1

druggist as a matter of law either relying on common law or statutes which the courts found to be inapplicable").

Plaintiffs' reliance on *Pittman v. Upjohn Co.*, 890 S.W.2d 425 (Tenn. 1994) (Pls.' Mot. at 7) is similarly unavailing. In *Pittman*, the plaintiff mistakenly ingested a diabetes drug, Micronase – which was prescribed and dispensed for his grandmother – and alleged, *inter alia*, that the dispensing pharmacy had failed to warn of the risk of injury from ingesting Micronase. The court concluded that "the duty to warn of the danger posed by the drug did not extend to the plaintiff, and the pharmacy is entitled to summary judgment." *Id.* at 435. Thus, *Pittman* simply does not support plaintiffs' assertion that Merck "has not demonstrated that there is no possibility Plaintiffs can establish that [Mr. Flippin's] pharmacists . . . are partly responsible for his injuries." (Pls.' Mot. at 7-8.) To the contrary, under Tennessee law, pharmacists do not have a duty to warn consumers about the risks of drugs and, thus, the in-state pharmacists in this case are fraudulently joined.

**B.    The Contradictory Nature Of Plaintiffs' Claims Against The Pharmacists Is Clear Evidence Of Fraudulent Joinder.**

Even if the in-state pharmacists owed plaintiffs a duty to warn – which they do not – it is clear the pharmacists are fraudulently joined for the further reason that plaintiffs' claims against the pharmacists are contrary to the very premise of their case against Merck. As numerous other courts have recognized, in pharmaceutical litigation, a healthcare defendant (whether a pharmacist or a doctor) is fraudulently joined where, as here, a plaintiff makes conclusory allegations of the provider's knowledge of the alleged risks of the drug that are contradicted by the specific allegations in the complaint that the manufacturer-defendant concealed such information from the general public, including healthcare providers. *See, e.g., Louis v. Wyeth-*

*Ayerst Pharms., Inc.*, No. 5:00-CV-102-LN, slip op. at 2 (S.D. Miss. Sept. 25, 2000) (in-state

pharmacy fraudulently joined where allegations of in-state defendant's knowledge were

contradicted by specific allegations that the pharmaceutical manufacturer concealed and/or

misrepresented information) (attached as Ex. 8); *In re Diet Drugs*, 220 F. Supp. 2d at 424

(same); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 295 ("*Rezulin I*") (in-state physician

fraudulently joined when minimal conclusory  allegations of physician's knowledge were

contradicted by specific allegations that the pharmaceutical manufacturer concealed and/or

misrepresented information); *In re Rezulin Prods. Liab. Litig.*, 2002 WL 31852826, at *2

(S.D.N.Y. Dec. 18, 2002) ("*Rezulin II*") (non-diverse physician defendant fraudulently joined

where "main tenor of plaintiffs' complaint is that [drug] was an unsafe drug and that

manufacturers concealed its risks from the public, physicians, and others"); *Omobude v. Merck

& Co.*, No. 3:03CV528LN, 2003 U.S. Dist. LEXIS 27006, at *6-7 (S.D. Miss. Oct. 3, 2003).

(physician fraudulently joined where plaintiff alleged that "Merck withheld and concealed and

misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the

charge, plaintiff conclude[d] that [physician] 'knew or should have known' the truth about

Vioxx").

Like the plaintiffs in *Louis*, *Diet Drugs*, *Rezulin I* and *II*, and *Omobude*, plaintiffs here

make only minimal and conclusory allegations of the pharmacists' knowledge of the risks of

Vioxx.  Plaintiffs allege that the pharmacists were negligent "in filling plaintiff's Vioxx

prescription when they knew or should have known of the increased risk of heart attack and for

failing to adequately warn the plaintiff of the risk" associated with Vioxx. (Compl. ¶ 25.)

In stark contrast to the plaintiffs' unsupported and generic count of negligence against the pharmacists stand the detailed allegations of concealment and misrepresentation by Merck, which clearly constitute the main tenor of the Complaint. In that regard, plaintiffs allege that Merck "[f]ailed to adequately warn physicians and patients of the risk of the risk of serious injury, including heart attack, stroke and death from taking Vioxx" (Compl. ¶ 15(g)), and that Merck "[m]isrepresented the safety of Vioxx to the Food and Drug Administration (FDA), to physicians and to the public" (*id.* ¶ 15(h)). Nowhere in the Complaint do the plaintiffs allege how the pharmacists could have learned the "true" risks allegedly associated with Vioxx; in fact, they allege quite the opposite, claiming that Merck provided misleading information to the FDA and the general public regarding the drug's risks. (Compl ¶ 15.) Such contradictory pleading demonstrates that the non-diverse pharmacist defendants are fraudulently joined. Notably, even the PSC has recognized that joinder of a healthcare provider as a defendant is generally improper in cases, such as this one, where the claims against Merck are "by and large incompatible with a claim that the [healthcare provider] is at fault." (*See* Pls. Mem. in Supp. of Mot. to Modify Order of June 6, 2005 Regarding Physician Contacts, at 3, *In re Vioxx Prods. Liab. Litig.*, MDL 1657 (E.D. La. June 15, 2005) (attached as Ex. 9).)

In an attempt to evade the long line of cases denying remand in precisely these circumstances, plaintiffs argue in their remand papers that Merck should be estopped from asserting fraudulent joinder because of statements allegedly made by Merck in other Vioxx cases. (Pls.' Mot. at 6-7.) However, this argument is a red herring. Plaintiffs allege that in its answers to complaints in the Vioxx litigation, Merck has taken the position that "pharmacists, among others, are at least partly responsible for the injuries suffered by those who took" Vioxx.

(Pls.' Mot. at 6; *see also* Compl. ¶¶ 24, 25.) Plaintiffs further assert that Merck, "having staked out that position," is disingenuous in arguing that "it is impossible that Plaintiffs could make the same case" against a pharmacist. (Pls.' Mot. at 6.) However, the mere fact that Merck has denied liability in this litigation is irrelevant – and, moreover, plaintiffs concede that in the present case Merck did not attempt to disclaim liability based on the actions of treating physicians or other healthcare providers. (*See* Pls.' Mot. at 6-7.) In short, simply to keep this case out of federal court, plaintiffs have named three pharmacists as defendants against whom they have no claim and have no intention of pursuing a claim. Merck's denials of *other* plaintiffs' allegations in *other* Vioxx cases are immaterial to the jurisdictional issues presented here.

In sum, there is simply no basis to predict that the pharmacist defendants could be held liable for the claims asserted against them by plaintiffs. Thus, the pharmacists are fraudulently joined, and their citizenship must be disregarded for jurisdictional purposes.

## CONCLUSION

For these reasons, as well as those stated in the Merck's Notice of Removal and Motion to Stay and Memorandum of Law in Support of same, Merck respectfully requests that plaintiffs' Motion to Remand be denied.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Defendants' Liaison Counsel

890514v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Remand Opposition has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 28th day of August, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

890514v.1