## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**JOSEPHINE COKER, CHARLIE**
**CRISS, AND ROSE PURNELL,**                               **PLAINTIFFS,**

**VS.**                               **CIVIL ACTION NO. 4:07CV100-P-B**

**MERCK & COMPANY, INC.;**
**MISTY AUSTIN, ANDREA ELIZABETH**
**BEAVERS, DAN SHEALS, WILLIAM**
**UMPHLETT, AND JOHN DOES 1-20,**                               **DEFENDANTS.**

### ORDER OF REMAND

In accordance with a Memorandum Opinion issued this day, **IT IS ORDERED AND**
**ADJUDGED** that:

(1) Plaintiffs' Motion to Remand [11] is **GRANTED**; therefore,

(2) This case is **REMANDED** to the Circuit Court of Leflore County, Mississippi from
whence it came; and

(3) This case is **CLOSED**.

**SO ORDERED** this the 14th day of August, A.D., 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JOSEPHINE COKER, CHARLIE
CRISS, AND ROSE PURNELL,                                    PLAINTIFFS,

VS.                                         CIVIL ACTION NO. 4:07CV100-P-B

MERCK & COMPANY, INC.;
MISTY AUSTIN, ANDREA ELIZABETH
BEAVERS, DAN SHEALS, WILLIAM
UMPHLETT, AND JOHN DOES 1-20,                               DEFENDANTS.

## MEMORANDUM OPINION

This matter comes before the court upon Plaintiff's Motion to Remand [11]. After due

consideration of the motion and the response filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

On June 18, 2007 the plaintiffs filed their Complaint in the Circuit Court of Leflore County,

Mississippi against the pharmaceutical company Merck & Company, Inc., four named sales

representatives of Merck, and twenty John Does seeking compensatory and punitive damages for

injuries allegedly caused by Merck's arthritis drug, Vioxx.

The Complaint asserts the following claims: (1) defective-design product liability pursuant

to Miss. Code Ann. § 11-1-63 against Defendant Merck; (2) inadequate- warnings product liability

pursuant to Miss. Code Ann. § 11-1-63 against "Defendants"; (3) breach of express warranty

pursuant to Miss. Code Ann. §§ 11-1-63 and 75-2-213 against "Defendants"; (4) breach of implied

warranty of fitness for particular purpose pursuant to Miss. Code Ann. §§ 11-1-63 and 75-2-215

against "Defendants"; (5) negligence against "Defendant Merck" and "Defendant Sales Reps and/or

Defendant John Does 1-20"; (6) fraudulent misrepresentation against "Defendants"; (7)

1



intentional/negligent misrepresentation to a learned intermediary against "Merck, Sales Rep[s] and John Does 1-20"; (8) common law fraud against "Defendants"; (9) fraudulent suppression against "Defendant Merck through its agent, Defendant Sales Rep and/or Defendant John Does 1-20"; (10) negligent misrepresentation against "Defendants"; and (11) agent misrepresentation against "Defendants, acting in two capacities herein, as sales agents and independent advisers to the physicians."

The defendants removed this action to federal court on July 3, 2007 arguing that the plaintiffs improperly joined the four named sales representatives, all of whom are Mississippi residents, in order to defeat diversity jurisdiction. The defendants filed a motion to stay proceedings pending transfer of the case to an MDL Panel which this court denied on July 23, 2007.[1]

On July 11, 2007 the plaintiffs filed the instant motion to remand arguing that the defendants have not met their burden in demonstrating that there is no reasonable possibility of recovery against the four resident defendants.

## II. DISCUSSION

### A. Improper Joinder Standards

The burden in this case is upon the defendants to persuade the Court of fraudulent, or improper, joinder. *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000) This burden is a heavy one.

---

[1] At the time the defendants filed their motion to stay pending transfer by the MDL Panel on July 5, 2007, there was no conditional transfer order regarding the instant case. On July 19, 2007 the MDL Panel sent the parties a conditional transfer order naming the instant case among other "tag along" actions. However, since there has yet to be a full transfer order, this court is still vested with jurisdiction in this case. *See* Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.").

2

*Id.* Furthermore, when dealing with an improper joinder claim the court should not focus on who will ultimately prevail in the action. *Reed v. American General Life & Accident Ins. Co.*, 192 F.Supp.2d 641 (N.D. Miss. 2002). When moving for remand the plaintiff's burden is "much lighter" than that necessary with summary judgment. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981).

There are two ways in which the defendants can establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Since there is no dispute that the resident defendants are indeed residents of Mississippi, the second test applies in the instant case.

With regard to the second test, the Fifth Circuit in *Smallwood v. Illinois Central Railroad Company*, 385 F.3d 568, 573 (5th Cir. (Miss.) 2004) (en banc) wrote:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.

*Id.* (citing *Travis*, 326 F.3d at 646-7).

The Fifth Circuit in *Hart* wrote that they "have cautioned against 'pretrying a case to determine removal jurisdiction,' [and have stated] that fraudulent joinder claims can be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." 199 F.3d at 246-247 (quoting *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990)). However, "the court 'must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff' and

3

resolve any contested issues of fact and legal ambiguities in the plaintiff's favor." *Hart*, 199 F.3d at 246.

Whether the plaintiffs in the instant case can establish a reasonable basis for a state claim against the resident agent defendants must be tempered by Mississippi law. *Hart*, 199 F.3d at 247. Although "the general rule in Mississippi law is that the defendant-agent incurs no liability for a principal's breach of duty ... an agent for a disclosed principal can be held personally liable for his own tortious acts committed within the scope of his employment." *Id.* (citing *Wheeler v. Frito-Lay, Inc.*, 743 F.Supp. 483 (S.D. Miss. 1990) (interpreting Mississippi law)). Moreover, an agent is "subject to personal liability when he 'directly participates in or authorizes the commission of a tort.'" *Id.* (quoting *Mississippi Printing Co., Inc. v. Maris, West & Baker, Inc.*, 492 So.2d 977, 978 (Miss. 1986)). At the same time, however, "individual liability may not be predicated merely on [the agent's] connection to the corporation but must have as its foundation 'individual wrongdoing.'" *Id.* (quoting *Turner v. Wilson*, 620 So.2d 545, 548 (Miss. 1993)).

Thus, in order to defeat the plaintiffs' motion to remand, the defendants in this case bear the burden of demonstrating that there is no reasonable basis to predict that the plaintiff might be able to establish that the sale representatives "directly participated in the commission of tort," *Hart*, 199 F.3d at 248, at least one of which is asserted in the Complaint.

**B. Analysis**

Having taken into account all of the unchallenged factual allegations in a light most favorable to the plaintiffs and having resolving any contested issues of fact and legal ambiguities in the plaintiffs' favor, the court concludes that the defendants have not met their burden in demonstrating that there is no reasonable basis for recovery against all of the sale representatives under all of the

theories advanced for liability.

As cited above, an agent for a disclosed principal can be held personally liable for his own tortious acts committed within the scope of his employment. The Complaint alleges that Merck instructed their sales representatives to intentionally "dodge" any questions posed by doctors regarding certain harmful effects of the prescription drug Vioxx through training programs like the "Vioxx Obstacle Dodge Ball Program" and the "JeopardXX" training game. These allegations alone suggest that the resident sales representatives were joint-tortfeasors along with Merck in the sense that they are alleged to have been instructed by their employer to misrepresent the health risks of Vioxx, they knew the dodging techniques were misleading, and they nevertheless knowingly misrepresented the risks of Vioxx to their physician clients. Thus, the Complaint sufficiently alleges that the resident sales representatives directly participated in a tort rendering it reasonably possible for the plaintiffs to recover against the sales representatives under Mississippi law as joint-tortfeasors.

### III. CONCLUSION

The defendants have not met their burden in proving that there is no reasonable possibility of recovery under all of the causes of action with respect to all of the named resident defendants. All that is necessary for this case to be remanded is that there be a reasonable possibility of recovery under at least one cause of action asserted in the Complaint against one resident defendant. As explained above, the court has concluded that there is a reasonable possibility of recovery against the resident defendants for at least negligence, fraudulent misrepresentation, negligent misrepresentation, and intentional/negligent misrepresentation to a learned intermediary. The court, however, expresses no opinion on the likelihood of success on the merits of these claims or the other

claims contained in the Complaint. Accordingly, an Order shall issue forthwith,

**THIS DAY** of August 14, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

JOSEPHINE COKER, CHARLIE          )
CRISS, and ROSE PURNELL,          )
                                  )
          Plaintiffs,             )
v.                                )          Case No.: 4:07cv100-P-B
                                  )
MERCK & COMPANY, INC., MISTY      )
AUSTIN, ANDREA ELIZABETH          )
BEAVERS, DAN SHEALS, WILLIAM      )
UMPHLETT, and JOHN DOES 1-20,     )
                                  )
          Defendants.             )

### PLAINTIFFS' MOTION TO REMAND

COME NOW the Plaintiffs, by and through the undersigned counsel of record, to request that

this Honorable Court remand this action to the Circuit Court of Leflore County, Mississippi, pursuant to

28 U.S.C. §1447(c).  As grounds for this motion, the Plaintiffs offer the following:

1.       This is a personal injury and product liability case related to the Plaintiffs' ingestion of

the pharmaceutical drug rofecoxib, previously sold under the trade name of "Vioxx."   In addition to

Defendant Merck & Company, Inc. (hereinafter "Merck"), there are four other named defendants, all

of which, based on information and belief, are Mississippi residents (hereinafter "Resident

Defendants").  Merck has improperly removed this action and jurisdiction is proper in the Circuit Court

of Leflore County.

2.       Diversity of Citizenship does not exist in this case.   The only way for diversity of

citizenship to exist in this case is for Defendant Merck to establish that the Resident Defendants were

1



improperly/fraudulently joined and that there "is no possibility that [plaintiffs] would be able to establish a cause of action against them in state court." *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000). To prove that non-diverse parties have been fraudulently joined in order to defeat diversity, the removing party must demonstrate either "outright fraud in the plaintiff's recitation of jurisdictional facts," or that "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court." *Rodriguez v. Sabatino*, 120 F.3d 589, 591 (5th Cir. 1997); *citing Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995). Defendant Merck has not done so. The Fifth Circuit has warned, "[t]he burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *Hart*, 199 F.3d at 246.

3. The Plaintiffs have alleged several viable causes of action against the Mississippi Resident Defendants, any one of which preclude removal of this action from state court. In their Complaint, originally filed in the Circuit Court of Leflore County, Mississippi, Plaintiffs pled facts and claims against the Resident Defendants for fraudulent misrepresentation, intentional/negligent misrepresentation to a learned intermediary, common law fraud, fraudulent suppression, negligent misrepresentation, and agent misrepresentation. *See Complaint*, Counts 5-11. The standard in the Fifth Circuit is very clear and simple - Merck must show this Court that the claims against the Resident Defendants are precluded by law or that these particular plaintiffs cannot prevail under any factual scenario. Because Defendant Merck cannot meet this burden, their argument fails, diversity of citizenship does not exist, and this case must be remanded to state court.

4. Without establishing the consent of the Resident Defendants, Defendant Merck removed this action from the Circuit Court of Leflore County, Mississippi on July 3, 2007. The Fifth

2

Circuit is clear that "[w]here a joint cause of action is alleged, all defendants who are not 'nominal defendants' and may properly join in a removal petition must do so." *Coogan v. DeBoer Prop. Corp.*, 254 F.Supp. 1058 (S.D. Tex. 1973). In *Spillers*, District Judge Bramlette of the Southern District of Mississippi remanded the case to state court, stating, "[a]lthough it is not necessary that all defendants sign the notice of removal, each defendant who has been served must at least communicate its consent to the court no later than thirty days from the day on which the defendant was first served." *Spillers v. Tillman*, 959 F.Supp. 364, 368 (S.D.Miss. 1997). In the same opinion, Judge Bramlette also stated that, "[t]he right to remove is purely statutory. Most cases emphasize that the procedural requirements for removal from state to federal court, although not jurisdictional, **are to be strictly construed and enforced in favor of state court jurisdiction.**" *Id*. (emphasis added). Because the non-removing defendants did not communicate their consent to the Court, Defendant Merck did not strictly comply with the removal statute; thus, strict construction favors the Plaintiffs and this case should be remanded back to the Circuit Court of Leflore County without delay.

5.      Moreover, Plaintiffs aver that Defendant Merck's sole motivation in removing the case at bar is to create an unfair, unnecessary delay in the present Plaintiffs' prosecution of their case while obtaining transfer to the U.S. District Court for the Eastern District of Louisiana, where Defendant Merck hopes for a significant delay while this case languishes among the more than 8,000 other cases previously transferred to the MDL court. Filing a pleading for the purposes of unnecessary delay is clearly prohibited by Rule 11 of the Federal Rules of Civil Procedure. *See Ident Corp. of America v. Wendt*, 638 F.Supp. 116, 118 (E.D.MO. 1986) (costs and attorney fees were awarded for filing removal notice for purposes of delay); *In re Oximetrix, Inc.*, 748 F.2d 637, 644 (Fed.Cir. 1984)

(upholding sanctions for using removal notice for purposes of improper delay).

6.      As additional grounds, Plaintiffs incorporate by reference, as if set forth fully herein, their Brief filed in support of this Motion to Remand and Response in Opposition to Merck's Motion to Stay.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully request that this Honorable Court remand this case back to the Circuit Court of Leflore County, Mississippi, pursuant to 28 U.S.C. § 1447(c), from where it was improvidently removed.

Respectfully submitted this 11th day of July, 2007.


                                        /s/ James V. Doyle, Jr.
                                        James V. Doyle, Jr. (MB #100727)
                                        *Attorney for Plaintiffs*



**OF COUNSEL:**

**WIGGINS CHILDS QUINN & PANTAZIS, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
(205) 314-0500  phone
(205) 254-1500  fax

4

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing document was served via First Class U.S. Mail, postage prepaid, upon the following counsel of record:

Christy D. Jones, Esq.
Charles C. Harrell, Esq.
Anita Modak-Truran, Esq.
J. Kennedy Turner, III, Esq.
Alyson B. Jones, Esq.
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
17TH Floor, Amsouth Plaza
210 East Capitol Street
P.O. Box 22567
Jackson, MS 39225

*Attorneys for Defendant Merck & Company, Inc.*

On this the 11th day of July, 2007.

   /s/ James V. Doyle, Jr.
James V. Doyle, Jr. (MB #100727)

5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

| | |
|---|---|
| JOSEPHINE COKER, CHARLIE CRISS, and ROSE PURNELL, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No.: 4:07cv100-P-B |
| ) | |
| MERCK & COMPANY, INC., MISTY AUSTIN, ANDREA ELIZABETH BEAVERS, DAN SHEALS, WILLIAM UMPHLETT, and JOHN DOES 1-20, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO REMAND AND RESPONSE IN OPPOSITION TO MERCK'S MOTION TO STAY

**COME NOW** the Plaintiffs to move this Honorable Court to remand this action to the Circuit Court of Leflore County, Mississippi, pursuant to 28 U.S.C. § 1447(c), and to oppose Defendant Merck's Motion to Stay. This case should be remanded to the Circuit Court of Leflore County, Mississippi, the court from which it was improperly removed. Defendant Merck & Company, Inc. has failed to prove that Defendants Misty Austin, Andrea Elizabeth Beavers, Dan Sheals, and William Umphlett (hereinafter "Resident Defendants") have been fraudulently joined; thus, this Court does not have jurisdiction over these proceedings and Plaintiffs' Motion to Remand is due to be **GRANTED**.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On June 18, 2007, Plaintiffs filed this lawsuit in Leflore County, Mississippi, for their injuries resulting from their ingestion of Vioxx (rofecoxib), which was manufactured by Defendant Merck and marketed, distributed and sold by its sales force, including the Resident Defendants. For the sake of

1



clarity, all four of the Resident Defendants were sales representatives employed by Merck to promote the use of Vioxx among doctors and patients in the Leflore County area.

As a result of ingesting Vioxx, each Plaintiff suffered a thrombotic cardiovascular event (heart attack, stroke, etc.).  Complaint ¶ 13.  Plaintiffs ingested the prescription medication Vioxx in Leflore County, Mississippi and the damages and injuries resulting from their ingestion of Vioxx occurred in Leflore County, Mississippi.  Complaint ¶ 12.

In their Complaint, Plaintiffs allege claims specifically against the Resident Defendants including fraudulent misrepresentation, intentional/negligent misrepresentation to a learned intermediary, common law fraud, fraudulent suppression, negligent misrepresentation, and agent misrepresentation.  Plaintiffs contend that the actions of all Defendants, including the Resident Defendants, combined and contributed to cause Plaintiffs' injuries and that each defendant is jointly and severally liable to the Plaintiffs. Complaint ¶¶ 133-139.  At all times, each Defendant's actions, including Resident Defendants, were the result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard.

Specifically, the Resident Defendants misrepresented the safety and efficacy of Vioxx to induce reliance by prescribing physicians and the consuming public, including the Plaintiffs.  The Resident Defendants utilized training programs such as the "Vioxx Obstacle Dodge Ball Program" to misstate and misrepresent the efficacy and dangers of Vioxx.  The programs were utilized by the Resident Defendants to "dodge" relevant safety questions from physicians.  The misrepresentations regarding the safety of Vioxx were made by the Resident Defendants intentionally, knowingly, recklessly, wantonly, and/or negligently to treating physicians, including the Plaintiffs' prescribing physicians.  The Resident

2

Defendants further provided written literature to prescribing physicians which included false statements regarding the safety of Vioxx.

On July 3, 2007, Defendant Merck filed a Notice of Removal with this Court. The Resident Defendants did not expressly consent to Defendant Merck's removal of this action.

## JURISDICTION AND REMOVAL STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Com. of Am.*, 511 U.S. 375, 377 (1994). When diversity of citizenship is the basis of removal, there must be complete diversity of citizenship between all primary plaintiffs and all primary defendants; i.e., no plaintiff and no defendant may be a citizen of the same state. *Sullivan v. Leaf River Forest Products*, 791 F. Supp. 627, 630 (S.D. Miss. 1991); *Day-Brite v. Lighting Div. v. International Bro. of Elec.*, 303 F. Supp. 1086, 1088 (N.D. Miss. 1969). The court must consider the citizenship of all properly joined parties. *Oliva v. Chrysler Corp.*, 978 F. Supp. 685, 688 (S.D. Tex 1997). The removing defendants have the burden of proving that complete diversity exists. *Getty Oil Co. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988). As the court pointed out in *Oliva*:

> [It is a] well established fact that every potential plaintiff in our dual court system has a choice between a state forum and a federal forum and that **it is the plaintiff's privilege to exercise that choice subject only to legal limitation**. '[I]f [the plaintiff] can avoid the federal forum by the device of properly joining a nondiverse defendant or a nondiverse co-plaintiff, he is free to do so.' (Emphasis added).

978 F.Supp. at 688-689 (citations omitted).

Further, the scope of removal jurisdiction based on diversity is narrower than the scope of diversity jurisdiction in actions originally filed in federal court. *Day-Brite v. Lighting Div. v.*

3

*International Bro. of Elec.*, 303 F.Supp. 1086, 1088 (N.D. Miss. 1969) (citing *Monroe v. United Carbon Co.*, 196 F.2d 455 (5th Cir. 1952)).  Pursuant to 28 U.S.C. § 1447(c), after a case has been removed to federal district court but "at any time before final judgment," the plaintiff may move for remand, and "the case **shall be remanded [if] it appears that the district court lacks subject matter jurisdiction**." *Id.* (Emphasis added).  Within the limited jurisdiction of federal courts, the nature of removal jurisdiction is very limited and the scope of the removal statute must be strictly construed in favor of state court jurisdiction.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.2d 720, 723 (5th Cir. 2002) (*citing Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)); *Gandy v. Peoples Bank & Trust Co.*, 224 B.R. 340, 342 (S.D. Miss. 1998).  A federal court faced with a motion to remand must initially presume that a suit lies outside this limited jurisdiction. *Kokkonen*, 511 U.S. at 377.

The burden of establishing that a case should be removed from state to federal court based upon the fraudulent joinder of a non-diverse defendant falls upon the party seeking removal.  *Manguno*, 276 F.3d at 723 (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 815 (5th Cir. 1993)); *see also Gandy*, 224 B.R. at 342.  This burden is a heavy one. *See Jernigan*, 989 F.2d at 814; *see also Williams v. Tri-County Community Center*, 323 F.Supp. 286 (S.D. Miss. 1971), aff'd, 452 F.2d 221 (5th Cir. 1971); *Doe v. Cloverleaf Mall*, 829 F.Supp. 866 (S.D. Miss. 1993). "The question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.  If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).  Any doubt regarding whether an

4

action is removable must be resolved in favor of remand. *Manguno*, 276 F.3d; Gandy, 224 B.R. at

342.

In 2000, the Fifth Circuit Court of Appeals followed the same line of reasoning, stating the

following position on fraudulent joinder:

> Where charges of fraudulent joinder are used to establish [federal]
> jurisdiction, the removing party has the burden of proving the
> claimed fraud - To prove their allegation of fraudulent joinder
> [removing parties] must demonstrate that there is no possibility that
> [plaintiff] would be able to establish a cause of action against them
> in state court. In evaluating fraudulent joinder claims, we must
> initially resolve all disputed questions of fact and all ambiguities in
> the controlling state law in favor of the non-removing party. We are
> then to determine whether that party has any possibility of recovery
> against the party whose joinder is questioned.

*Hart v. Bayer Corporation*, 199 F.3d 239, 246 (5th Cir. 2000) (quoting *Dodson v. Spiliada Maritime*

*Corp.*, 951 F.2d 40, 42 (5th Cir. 1992); *see also Miller Brewing*, 663 F.2d at 550; *Butler v. R.J.*

*Reynolds Tobacco Co.*, 815 F. Supp. 982, 984 (S.D. Miss. 1993); *Sims v. Shell Oil Co.*, 130 F.Supp.2d

788, 796-7 (S.D. Miss. 1999).

In addition, the Fifth Circuit states:

> To prove that non-diverse parties have been fraudulently joined in
> order to defeat diversity, the removing party must demonstrate
> either "outright fraud in the plaintiff's recitation of jurisdictional
> facts," *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217
> (5th Cir. 1995), or that "there is absolutely no possibility that the
> plaintiff will be able to establish a cause of action against the in-state
> defendant in state court." *Cavallini v. State Farm Mut. Auto Ins.*
> *Co.*, 44 F.3d 256, 259 (5th Cir. 1995). In evaluating a claim of
> fraudulent joinder, we do not determine whether the plaintiff will
> actually or even probably prevail on the merits of the claim, but
> look only for a *possibility* that the plaintiff may do so. *Burden*, 60
> F.3d at 216. (Emphasis added).

5

*Rodriguez v. Sabatino*, 120 F.3d 589, 591 (5th Cir. 1997); *Marble v. American general Life and Accident Insurance Co.*, 996 F.Supp. 571, 573 (N.D. Miss. 1998); *Miller Brewing*, 663 F.2d at 549; *Green*, 707 F.2d at 205; *Dodson*, 951 F.2d at 42; *Butler*, 815 F. Supp. at 984; *Sims*, 130 F.Supp.2d at 796. The proof that there is no possibility that the plaintiff will be able to establish a cause of action against the in-state or non-diverse defendant must be shown with particularity and must be clear and convincing. *Miller Brewing*, 663 F.2d at 549; *American Brahmental Ass'n v. American Summental Ass'n* 443 F.Supp. 163, 165 (W.D.Tex. 1977).

In *Great Plains Trust Company v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th cir. 2002), the 5th Circuit reaffirmed the "absolutely no possibility" standard pointing out that all that is necessary is that there be an "arguably reasonable" basis for the possibility:

> The removing party carries a heavy burden when attempting to prove fraudulent joinder. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995). "The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiffs' pleading of jurisdictional facts." *Id.* (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983)). "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party who joinder is questioned." *Carriere v. Sears Roebuck & Co.* 893 F.2d 98, 100 (5th Cir. 1990). "If there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved," then there is no fraudulent joinder." *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 (5th Cir. 2001) (quoting *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993)). This possibility, however, must be reasonable, not merely theoretical. *See Id.* at 286 n.4.

*Great Plains Trust Company v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

6

## ARGUMENT

I.      **Plaintiffs Have Asserted Viable Claims Against The Resident Defendants and Defendant Merck has Failed To Meet Its  Burden of Proving Fraudulent Joinder; Consequently, This Court Lacks Subject Matter Jurisdiction and This Case Should Be Remanded.**

Defendant Merck cannot meet its heavy burden of establishing that the Resident Defendants were fraudulently joined; consequently, this Court cannot exercise subject matter jurisdiction over this case. Defendant Merck has made no claim that Plaintiffs fraudulently pleaded jurisdictional facts; rather, Defendant Merck contends that there is no reasonable basis for predicting that Plaintiffs might establish liability against the Resident Defendants. *Notice of Removal* ¶ 16. Defendant Merck offers the following in support of its Notice of Removal: that Plaintiffs' Complaint failed to allege even a "minimally sufficient factual basis" to support claims against the Resident Defendants, *Notice of Removal* ¶ 17; that Plaintiffs' Complaint contained only conclusory allegations, *Notice of Removal* ¶ 17; that the Resident Defendants did not make any representation directly to Plaintiffs upon which Plaintiffs relied, *Notice of Removal* ¶ 18; that Plaintiffs' fraud claims are not pled with particularity, *Notice of Removal* ¶ 19; that the Resident Defendants are not "warrantors" of Vioxx, that Plaintiffs failed to allege in their Complaint that Plaintiffs' prescribing physician received Vioxx from the Resident Defendants, *Notice of Removal* ¶ 20; and, finally, that the Resident Defendants had no duty to warn Plaintiffs directly, *Notice of Removal* ¶ 21.

Despite Defendant Merck's conclusory statements in its Notice of Removal that Plaintiffs' Complaint was not even "minimally sufficient" to assert claims against the Resident Defendants, as set forth more fully below, Plaintiffs' Complaint was more than sufficient to put the Resident Defendants on notice of the claims being pursued against them. In fact, Plaintiffs articulated specific facts in their Complaint which

7

outlined the fraudulent information being provided by the Resident Defendants to physicians, including Plaintiffs' prescribing physicians.

As set forth in the Complaint, the Resident Defendants went to great lengths to hide the increased cardiovascular risks associated with Vioxx. These efforts were accomplished primarily by the sales representatives adopting and promoting the company's policy to suppress material facts and information about the dangerous aspects of Vioxx from physicians who commonly prescribed Vioxx. Part of that process involved the infamous "Dodge Ball" training, where sales representatives learned to dodge or avoid the questions of suspecting physicians. (See Complaint ¶ 47). Questions from physicians became known as "obstacles" to the sale of the drug Vioxx. The level of prescriptions directly impacted sales, which were used to determine each sales representative's commission. (See Complaint ¶ 130). Some of the "obstacles" specifically identified the cardiovascular risk issues to the sales representatives. (See Complaint ¶ 47).

In response to these perceived "Obstacles," or questions from physicians, the sales representatives employed a practice of responding in a fashion to downplay or suppress the seriousness of the cardiovascular risks associated with Defendant Merck's blockbuster drug, Vioxx. (See Complaint ¶ 47).

Plaintiffs' Complaint establishes that there is more than a mere possibility that the Resident Defendants were active participants in providing misinformation to physicians, in suppressing the known dangers of Vioxx, and in placing Vioxx, a drug that they knew to be defective, in the stream of commerce.

Although Plaintiffs rigorously oppose the contention that the Complaint is deficient to satisfy heightened pleading requirements, such a finding should not lead this Court to an automatic finding of fraudulent joinder. *See Duffin v. Honeywell Intern., Inc.*, 312 F.Supp. 2d 869, 870 (N.D.Miss. 2004)

8

("observing 'that a plaintiff should ordinarily be given an opportunity to amend her complaint to allege fraud with greater particularity, before such claims are dismissed with prejudice upon a finding of fraudulent joinder'")(citing *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th cir. 2000)).

Defendant Merck incorrectly asserts that Plaintiffs cannot maintain viable claims against the Resident Defendants for their fraudulent activities because the statements were not directed to the Plaintiffs. At least one federal court in Mississippi has recognized the viability of claims for misrepresentations even where the representations were not made directly to the claimant. *Crook Motor Co., Inc. v. Goolsby*, 703 F.Supp. 511, 519 (N.D. Miss. 1988). That Court states:

> [I]t is not essential to liability that there should be privity of contract or personal dealings between defendant and the injured party, and if defendant intended to do an act necessarily resulting in injury to plaintiff he will be held liable, although he lacked a specific intent to deceive the particular person injured.

*Crook*, 703 F. Supp. at 519 (citing 37 C.J.S., Fraud, § 61(a), p. 347-8).

In this case, Misty Austin, Andrea Elizabeth Beavers, Dan Sheals, and William Umphlett, the Resident Defendants directly participated in providing fraudulent information and misrepresenting the safety and efficacy of Vioxx to physicians, including the Plaintiffs' physicians. The Resident Defendants did this to induce these physicians to prescribe Vioxx. As a direct and proximate result of these misrepresentations, the physicians prescribed and numerous patients, including the Plaintiffs, ingested Vioxx and were injured thereby. Plaintiffs and their prescribing physicians were clearly in the group or class intended to be influenced by the fraudulent statements of the Resident Defendants. *See Crook Motor Co.*, 703 F.Supp. at 719. Thus, Plaintiffs' claims stemming from the fraudulent statements of the Resident Defendants are viable despite the statements not being made directly to Plaintiffs, but because they were within the class

9

intended to be influenced by the Fraud. *See Crook Motor Co.*, 703 F.Supp. at 719.

Defendant Merck incorrectly asserts that the learned intermediary doctrine insulates the Resident Defendants from liability for their fraudulent statements. The learned intermediary defense is only available where the physician has been provided accurate and complete information about a prescription drug. *See Wyeth Lab, Inc. v. Fortenberry*, 530 So. 2d 688, 692 (Miss. 1988). If there is no physician in the role of learned intermediary, then there is a duty to warn the ultimate consumer. *Id.*

Defendant Merck cites *Johnson v. Parke-Davis*, 114 F.Supp.2d 522 (S.D. Miss. 2000), for the proposition that sales representatives cannot be held liable for breach of warranty. In *Johnson*, the court found that the sales representatives had been fraudulently joined where the plaintiff did not cite any authority to support the sales representatives being held liable for breach of warranty and where there was no proof that the plaintiffs or her physicians purchased or received the prescription drug from any of the named sales representatives. *Johnson*, 114 F.Supp.2d at 525.

First, Mississippi law clearly no longer requires privity as a prerequisite to pursuing any action for personal injury resulting from negligence, strict liability, or breach of warranty. *See* Miss. Code Ann. § 11-7-20. And, both "sellers" and "manufacturers" can be held liable for placing a defective product into the stream of commerce under Mississippi law. *See* Miss. Code Ann. § 11-1-63. ("The manufacturer or *seller* of the product shall not be liable if the claimant does not prove...") (emphasis added). Thus, Defendant Merck's position that the Resident Defendants cannot be held liable for breach of warranty, or even under arguments of strict liability, based upon Plaintiffs' alleged failure to claim that the prescribing physician purchased or received Vioxx from the Resident Defendants, is in contravention of well-settled Mississippi statutory authority.

10

Second, the *Johnson* court erred by taking the burden off of the defendant to establish that there was "absolutely no possibility" that plaintiff could state a claim against the sales representatives. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995). Any ambiguity in state law must be resolved in favor of the non-removing party. *See Carriere v. Sears, Roebuck & Co.*, 839 F.2d 98, 100 (5th Cir. 1990). To the extent that it remains unresolved under Mississippi law whether a pharmaceutical sales representative is a seller, or a warrantor, for the purposes of establishing liability under strict liability or breach of warranty, there remains a "possibility" that Plaintiffs' claims against the Resident Defendants are viable.

In the case at bar, Plaintiffs specifically allege in their Complaint how the Resident Defendants directly participated in the misrepresentations and fraudulent conduct causing Plaintiffs to ingest Vioxx, which led to their injuries. Further, Plaintiffs allege that the misrepresentations about Vioxx were made to the Plaintiffs' prescribing physician who prescribed Vioxx based upon the misrepresentations of the Resident Defendants. Unlike in *Johnson*, Plaintiffs have established a connection between themselves and the Resident Defendants sufficient to support a breach of warranty claim against the Resident Defendants.

In this instance, the Notice of Removal was filed before the Plaintiffs have had any opportunity to develop claims against the Resident Defendants through discovery. Other federal courts faced with a similar circumstance have assessed those claims in accordance with Rule 11 of the Federal Rules of Civil Procedure. *See, e.g., Clay v. Brown & Williamson Tobacco Corp.*, 77 F.Supp.2d 1220, 1224 (M.D.Ala. 1999) (where court found that the plaintiff might be able to show that the Alabama retailer had superior knowledge "with further discovery").

Finally, under Mississippi law, an agent for a disclosed principal can be held personally liable for

11

his or her own tortious acts that are committed within the scope of his or her employment. *Hart v. Bayer Corp.*, 199 F.3d 239, 247 (5th Cir. 2000); *Turner v. Wilson*, 620 So.2d 545, 548 (Miss. 1993). A tort claim can be maintained against a sales representative when he or she "directly participates in or authorizes the commission of a tort." *Hart*, 199 F.3d at 247; *Mozing v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985).

> **II.** **This Court Should Examine Its Own Jurisdiction Before Ruling On Merck's Motion To Stay Pending Transfer to MDL-1657.**

This Court is under a duty to examine its own jurisdiction prior to undertaking any action. *See Saxton v. Capital One Bank*, 392 F. Supp. 2d 772 (S.D. Miss. 2005); *see also Dominguez-Cota v. Cooper Tire & Rubber Co.*, 396 F.3d 650 (5th Cir. Miss. 2005) ("before proceeding with a case, federal trial and appellate courts have the duty to examine the basis for their subject matter jurisdiction, doing so on their own motion if necessary" (*citing Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997))). It is incumbent upon a court whose subject matter jurisdiction is questioned to make a determination as to whether it has, or does not have, jurisdiction over the action."). *See also U.S. v. Hays*, 515 U.S. 737-744, 155 S.Ct. 2431, 2435 (1995) ("The court has an independent obligation to examine the petition for removal to determine if federal jurisdiction exists over the case.")

In its Motion to Stay, counsel for Defendant Merck cites several Orders by various district court judges agreeing to stay similar pharmaceutical cases. There are an equal or greater number of federal judges who do not defer the jurisdictional issue to an MDL. In *Aetna U.S. Healthcare, Inc. v. Hoeschst Aktiengesellschaft*, the court states:

> The Court sees no reason to delay ruling on plaintiffs' motion to remand. The Court retains jurisdiction to decide the remand issue, despite defendants' motion to the

JPMDL.  See Panel Rule 1.5, 181 F.R.D. 1, 3 (1998).

...

> While staying the proceedings might allow a single district court to rule on the
> jurisdictional issue in the various cases, as stay would not affect the law that applies to
> the present case and little would be gained by a stay of decision on the motion to
> remand.  The parties would still be subject to Kansas law.

*Aetna U.S. Healthcare, Inc. v. Hoeschst Aktiengesellschaft*, 54 F.Supp.2d 1042, 1047-1048 (D.

Kan. 1999).

In *Lloyd v. Cabell Huntington Hospital, Inc.*, 58 F. Supp.2d 694 (S.D. W.Va. 1999), the

court rules that it is without the power to stay proceedings in cases where no federal jurisdiction is

present.  The court stated:

> This Court cannot, however, stay proceedings in an action over which it lacks
> jurisdiction.  Removal statutes must be construed strictly against removal.  The burden
> of establishing the propriety of removal falls upon the removing party.  If federal
> jurisdiction is doubtful, remand is necessary.

*Lloyd,* 58 F. Supp.2d at 696 (citations omitted).

In *Tortola Restaurants v. Kimberly-Clark Corp.*, 987 F. Supp. 1186 (N.D. Cal. 1997), the

United States District Court for the Northern District of California, stated:

> **A putative transferor court need not automatically postpone rulings on pending**
> **motions, or in any way generally suspend proceedings, merely on grounds that**
> **an MDL transfer motion has been filed**. *See Manual for Complex Litigation 3d*
> §§ 31.131, p. 252 (3d ed.1995); *see also Villarreal v. Chrysler Corp.,* No. C-95-
> 4414, 1996, WL 116832, at *1 (N.D.Cal. Mar. 12, 1996) (""a stay is improper.
> Judicial economy will be best served by addressing the remand issue [as it] will facilitate
> litigation in the appropriate forum."").

> Here, a motion has been filed with this Court seeking a determination of the appropriate
> forum in which to litigate this matter. ""The appropriate forum, moreover, is a threshold
> issue to class certification and defendant's petition to the Panel does not affect

scheduled pretrial proceedings.'"" *Villarreal, supra* at *1. This Court, as transferor
Court, ""retains exclusive jurisdiction until the §§ 1407 transfer becomes effective and
as such, motions to remand should be resolved before the panel acts on the motion to
transfer.'"" *Spitzfaden v. Dow Corning Corp.*, No. 95-2578, 1995 WL 662663, *4
n. 1 (E.D.La. Nov.8, 1995) (citing *Manual for Complex Litigation, 3d* §§ 31.131.).
Accordingly, defendants' motion for stay of proceedings pending a decision by the
Panel is hereby DENIED, and the Court addresses the merits of plaintiff's remand motion.

*Tortola Restaurants v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1188-1189 (N.D. Cal. 1997)

(emphasis added).

In *Betts v. Eli Lilly and Company*, the United States District Court for the Southern District of

Alabama addressed the issue of staying remand decisions pending transfer to an MDL.  Judge William

Steele found that the resources of the federal courts are better expended by having the transferor court

deciding the jurisdictional issues rather than the Judicial Panel:

> The economy of the transferor court presumably is always enhances by deferring ruling
> on a motion to remand, since it takes no effort to do nothing.  However, an accurate
> assessment of judicial economy requires consideration of the time and effort of all
> courts involved; a deferral that saves one court an hour's work but costs other courts
> several more is scarcely a conservator of judicial resources.
>
> ...
>
> To defer ruling on a plainly meritorious motion to remand forces a body of seven judges
> (who have their own dockets in addition to the Panel's) to needlessly review and hear
> argument on requests for transfer, objections thereto, and post-transfer matters.

*Betts v. Eli Lilly and Company, et al.*, Case No. 06-0259-WS-B, *Slip Op.* at 3 (S.D. Ala. June 5,

2006) (attached hereto as Exhibit 1).

Moreover, Judge Steele addressed the practical aspects of having a foreign court decide issues

involving unfamiliar state law:

14

> A transferee court sitting elsewhere is not only unlikely to possess unusual familiarity
> with the Alabama law, but is likely to be less conversant with that law than a transferor
> court that regularly considers Alabama legal issues when it sits in diversity.  In such
> cases, the transferee court will require more time than the transferor court to resolve the
> motion, because it must first acquaint itself with Alabama law the transferor court
> already knows, resulting in an additional tax on judicial economy.  Moreover, the
> transferee court stands at a similar comparative disadvantage with respect to motions to
> remand involving the law of the remaining 50 or more local jurisdictions outside its own.

*Id.* at 6.

Plaintiffs respectfully urge this Court to follow Judge Steele's lead and deny Defendant Merck's Motion to Stay.

## CONCLUSION

Defendant Merck has wholly failed to cite any applicable or controlling authority to preclude the claims made by Plaintiffs against the Resident Defendants; consequently, it has failed to meet the burden of proving improper/fraudulent joinder.  For this reason, diversity of citizenship does not exist and this court does not have subject matter jurisdiction; therefore, Plaintiffs respectfully request an Order from this Court remanding this action in its entirety back to the Circuit Court of Leflore County, Mississippi, without delay.

In addition, there is no reason for this Court to postpone its decision on the jurisdictional issue hwile awaiting a decision of the Judicial Panel.  For the sake of true judicial economy and efficiency, this Court should remand this matter back to the Circuit Court of Leflore County, Mississippi, where subject matter jurisdiction is proper.

For the reasons stated above, Plaintiffs Motion to Remand is due to be granted and Defendant Merck's Motion to Stay is due to be denied.

Respectfully submitted this 11th day of July, 2007.

/s/ James V. Doyle, Jr.
James V. Doyle, Jr. (MB #100727)
*Attorney for Plaintiffs*

**OF COUNSEL**:

**WIGGINS CHILDS QUINN & PANTAZIS, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
(205) 314-0500  phone
(205) 254-1500  fax

### CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing document was served via First Class U.S. Mail, postage prepaid, upon the following counsel of record:

Christy D. Jones, Esq.
Charles C. Harrell, Esq.
Anita Modak-Truran, Esq.
J. Kennedy Turner, III, Esq.
Alyson B. Jones, Esq.
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
17TH Floor, Amsouth Plaza
210 East Capitol Street
P.O. Box 22567
Jackson, MS 39225

*Attorneys for Defendant Merck & Company, Inc.*

On this the 11th day of July, 2007.

/s/ James V. Doyle, Jr.
James V. Doyle, Jr. (MB #100727)

16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DEBRA BETTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION 06-0259-WS-B** |
| | ) | |
| **ELI LILLY AND COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER

This matter is before the Court on the motion of defendant Eli Lilly and Company ("Lilly") to stay all proceedings, (Doc. 4), and on the plaintiff's motion to remand.  (Doc. 14). The parties have submitted briefs and other materials in support of their respective positions, (Docs. 5, 15, 21, 22), and the motions are ripe for resolution. After carefully considering the foregoing, as well as other relevant materials in the file,[1] the Court concludes that the motion to stay is due to be denied and the motion to remand is due to be granted.

### BACKGROUND

This suit is one of hundreds brought against Lilly as the manufacturer of Zyprexa.  The plaintiff sued Lilly in state court on several causes of action and also sued her treating physician for medical negligence.  (Complaint at 8).  Both the plaintiff and the physician are citizens of Alabama, but Lilly removed on the basis of diversity of citizenship, claiming that the physician was fraudulently joined and so could be ignored for purposes of showing complete diversity.

Multidistrict litigation concerning Zyprexa has been established in the Eastern District of New York, and Lilly intends to seek transfer of this case to the MDL Court.  Lilly's motion requests a stay of all proceedings in this Court pending transfer, including the plaintiff's motion to remand.

---

[1]In particular, the Court has considered the notice of removal and appended complaint, (Doc. 1), the motion to dismiss filed by defendant John Richard Cranton, (Doc. 8), and the parties' briefs on the motion to dismiss.  (Docs. 16, 20).

## DISCUSSION

The parties agree that the Court has the authority to rule on a motion to remand whatever the likelihood that the MDL Panel will order transfer to the MDL Court. They differ as to whether the Court should exercise that authority or defer ruling by staying these proceedings pending transfer.

## I. Motion to Stay.

Lilly argues that a stay of proceedings without reaching the motion to remand "will promote judicial economy, avoid inconsistent rulings by different district courts and avoid prejudice to both plaintiff and defendant." (Doc. 5 at 7). District courts have routinely isolated these as the key considerations in whether to grant a stay pending transfer to an MDL court, including when a motion to remand is pending. The rub comes in the courts' varied ways of assessing and valuing these considerations. It would serve no good purpose to engage in a thorough review of the many opinions in this arena, both because most of them lack detailed analysis and because this Court has already adopted a standard for gauging motions to defer ruling on a pending motion to remand: "'[a] court should first give preliminary scrutiny to the merits of the motion to remand' and ..., 'if this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court.'" *Moton v. Bayer Corp.*, 2005 WL 1653731 at *2 (S.D. Ala. 2005)(quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001)).[2]

The Court has adopted this portion of *Meyers* because it appears better calculated to vindicate the interests of judicial economy, consistency of result, and minimization of prejudice to the parties than a reflexive rule that automatically defers decision to an MDL court whenever

---

[2]Under *Meyers*, even when a jurisdictional issue is difficult, the transferor court should not automatically defer ruling but should first "determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceedings." 143 F. Supp. 2d at 1049. Because neither *Moton* nor this case presents a difficult jurisdictional issue, the Court need not decide whether it would adopt this second step of the *Meyers* approach.

it can be predicted that an issue at least superficially similar may arise in other transferred cases. Because the question is a recurring one, the Court pauses to amplify the reasons it gave in *Moton* for drawing this conclusion.

The economy of the transferor court presumably is always enhanced by deferring ruling on a motion to remand, since it takes no effort to do nothing.  However, an accurate assessment of judicial economy requires consideration of the time and effort of all courts involved; a deferral that saves one court an hour's work but costs other courts several more is scarcely a conservator of judicial resources.  The *Meyers* approach respects this economic fact.  Because the result in a motion to remand captured by the first *Meyers* step is apparent on initial review, the transferor court's investment in resolving the motion is minimal or at least minor.  All things being equal, the investment of the transferee court in deciding the same motion would be roughly equivalent, resulting in a neutral effect on judicial economy — scarcely an argument in favor of deferral.  But in the MDL context there is always a third court involved: the MDL Panel.  To defer ruling on a plainly meritorious motion to remand forces that body of seven judges (who have their own dockets in addition to the Panel's) to needlessly review and hear argument on requests for transfer, objections thereto, and post-transfer matters.  Because the first step of *Meyers* assumes it is clear that the case must be remanded, every minute of time spent by the Panel on the case is wasted, guaranteeing that deferral results in a net loss of judicial economy.[3]

The only means possible to overcome the negative judicial economy created when a transferor court defers ruling on a clear motion to remand is to invoke the economies of scale. The idea is that, although it would be inefficient to transfer to an MDL court a single case with a motion to remand, it is efficient to transfer twenty such cases, because the MDL court can dispose of twenty motions to remand  more efficiently than twenty courts can dispose of one motion to remand each.

The anticipated economies of scale, however, disappear when the motions to remand are straightforward and easily resolved.  This follows from two related phenomena: first, in a simple

---

[3]This is true without considering the wasted efforts of clerks in three courts who must manage the  flow of filings and physically ship what paper products remain in this electronic age.

case each transferor court will invest little time in resolving the issue (which provides a limited pool of potential savings from deferral); and second, the transferee court must of course review each case individually before reaching its conclusion (which drains the potential savings from deferral).[4] The Panel's investment in transferring twenty cases consumes whatever marginal savings remain. Judicial economy thus remains unimproved by even a large-scale transfer of cases with identical, plainly meritorious motions to remand.[5]

Implementing the first step of the *Meyers* approach imposes costs on the transferor court that should be considered in evaluating the net effect of the approach on judicial economy. The preliminary assessment required by *Meyers* naturally consumes judicial time. When the assessment confirms that the motion is due to be granted, the time spent performing it is recaptured without loss in the disposition of the motion. When, however, the assessment reflects that deferral is appropriate, the transferor court cannot directly recapture the time expended in making the assessment. Performing the assessment thus results in an arguable loss of judicial economy in such cases.

This incidental cost of following *Meyers*, however, does not warrant rejecting it. First, the cost does not reflect a true loss of judicial economy, any more than does a court's sua sponte examination of its subject matter jurisdiction which confirms the existence of such jurisdiction. In both situations, it is highly economical to scrutinize jurisdictional matters at an early stage,

---

[4]This (along with the increased risk of inconsistent results) explain why *Meyers* treats complicated motions to remand differently. When the analysis is difficult to develop or apply, each transferor court must expend significant resources to decide its motion to remand. The transferee court initially must do so as well but, once the analysis and its application are mastered, it can resolve additional motions to remand more efficiently than a transferor court starting from scratch.

[5]Truly identical motions to remand are perhaps more the exception than the rule. Defendants typically label motions to remand as "similar" if only they involve the same general challenge to jurisdiction — for example, amount in controversy or, as in this case, fraudulent joinder. But these broad labels often hide a welter of individual issues — as well as unique facts and varying bodies of controlling state law — that would require individual attention if left for the transferee court to decide. All such variations increase the time the transferee court must devote to each motion, exacerbating the inefficiencies of deferral when the outcome of an individual case is clear.

regardless of whether in a particular case that scrutiny discloses the presence or absence of jurisdiction.[6]  Second, the amount of time required to perform a preliminary assessment is almost always measured in minutes and so cannot have a significant effect on overall judicial economy. Most importantly, the time so spent is dwarfed by the time that MDL courts and the Panel would waste were *Meyers* rejected so that transferor courts automatically deferred ruling on even obvious motions to remand.

        With judicial economy eliminated as a justification for rejecting the *Meyers* approach, only the risk of inconsistent results and prejudice to the parties remain for consideration. Because the first step of *Meyers* contemplates that different judges will review similar motions to remand, it is of course possible they will reach different results.  To the extent the motions are similar but not identical in terms of the facts presented, the law governing, and the arguments asserted, such disparity in result is neither surprising nor undesirable and would probably be mimicked by the transferee judge.  But because *Meyers* contemplates that only obvious motions to remand will be decided by the transferor court, the possibility of inconsistent results on truly indistinguishable facts, law and argument is largely theoretical.[7]  As for prejudice, no party has a right to remain in federal court when subject matter jurisdiction is plainly lacking, and a defendant caught by *Meyers* is thus not prejudiced in any meaningful sense by an early rather than late remand to state court.

        Lilly proffers a fistful of ineffectual arguments why the Court should not reach the plaintiff's motion to remand.  First, Lilly argues that "[t]he issue of fraudulent joinder ... is much more complex than a simple amount in controversy inquiry" as in *Meyers*, such that a preliminary assessment is inadequate to determine whether removal was improper.  (Doc. 21 at 5).  It is doubtlessly true that some fraudulent joinder issues are sufficiently intricate that a

---

        [6]*See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)(because a court is powerless to act without jurisdiction, it "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings.").

        [7]*Accord Board of Trustees v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 903 (N.D. Ill. 2002) ("The threat of inconsistent judgments [under *Meyers*] is de minimus.").

preliminary assessment of them would not enable a court to reach a confident conclusion.[8]  This Court, however, is not considering a hypothetical or even typical case, but rather the specific case pleaded by the plaintiff now before the Court.  It is simply irrelevant whether different fraudulent joinder issues might be immune to resolution by preliminary assessment; the only question is whether *this* fraudulent joinder issue, presented by *this* defendant in *this* manner in *this* case, is susceptible of such a resolution.  As discussed in Part II, it is.

Indeed, fraudulent joinder issues are particularly poor candidates for reflexive deferral.  As noted in Part II, whether a resident defendant is fraudulently joined depends on the plaintiff's ability to establish a cause of action under state law, in this case the law of Alabama.  A transferee court sitting elsewhere is not only unlikely to possess unusual familiarity with Alabama law but is likely to be less conversant with that law than a transferor court that regularly considers Alabama legal issues when it sits in diversity.  In such cases, the transferee court will require more time than the transferor court to resolve the motion, because it must first acquaint itself with Alabama law the transferor court already knows, resulting in an additional tax on judicial economy.  Moreover, the transferee court stands at a similar comparative disadvantage with respect to motions to remand involving the law of the remaining 50 or more local jurisdictions outside its own.  It is thus unsurprising that courts have repeatedly cited the necessity of resort to local law as bolstering the case for deciding a motion to remand prior to transfer.[9]

Second, Lilly asserts that other MDL courts have addressed fraudulent joinder issues and

_____

[8]This was the case in *Stempien v. Eli Lilly & Co.*, 2006 WL 1214836 (N.D. Cal. 2006), on which Lilly relies for its argument.

[9]*See Cordle v. Merck & Co.*, 405 F. Supp. 800, 803 n.4 (E.D. Ky. 2005); *Galati v. Eli Lilly & Co.*, 2005 WL 3533387 at *1 (W.D. Mo. 2005); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 679 (D. Nev. 2004); *In re: Massachusetts Diet Drug Litigation*, 338 F. Supp. 2d 198, 201 (D. Mass. 2004); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1054 (N.D. Cal. 2004); *Speaker v. Wyeth-Ayerst Laboratories*, 2003 WL 22938955 at *1 (N.D. Tex. 2003); *Morales v. American Home Products Corp.*, 214 F. Supp. 2d 723, 725 (S.D. Tex. 2002); *McQuilkin v. Ford Motor Co.*, 2001 WL 197840 at *1 (E.D. La. 2001); *Bellinder v. Microsoft Corp.*, 2000 WL 575021 at *2 (D. Kan. 2000); *Kohl v. American Home Products Corp.*, 78 F. Supp. 2d 885, 888 (W.D. Ark. 1999).

thereby "created a body of case law that provides valuable consistency and guidance for all involved," (Doc. 5 at 10), apparently to suggest that unusual efficiencies accompany deferral of such issues.  There is of course no separate fraudulent joinder jurisprudence applicable only to MDL litigation and, at any rate, the Court is as able to apply principles emerging from MDL litigation as is a transferee court.  To the extent Lilly in opposition to remand relies on fraudulent joinder cases decided in the MDL context, the Court in Part II reviews and distinguishes them.

Third, Lilly points out that plaintiff's counsel has filed a total of nine Zyprexa actions in Alabama, all including substantially similar allegations against a treating physician and all generating the same arguments from Lilly as to why the physicians were fraudulently joined.  To further judicial economy and ensure consistency, Lilly argues, all nine motions to remand should be deferred to the MDL Court.  (Doc. 5 at 14-15; Doc. 21 at 12-13).  Because this is an easy case, however, as discussed above there is no economy or consistency to be gained by deferral.  Indeed, by insisting that the nine rise or fall together, Lilly concedes that motions to remand in the other eight cases are as clear cut as the motion to remand in this one and so will neither consume significant resources of the transferor courts nor pose an appreciable risk of inconsistent results.[10]

Fourth, Lilly complains that it will be prejudiced if the Court remands this case but the MDL Court would not.  (Doc. 21 at 14).  Although couched in terms of prejudice, this is actually an attempt to revisit consistency.  Because, as discussed in Part II and as contemplated by the *Meyers* test, the absence of subject matter jurisdiction is perfectly clear, there is no real risk of inconsistent results.

Next, Lilly insists that the MDL Court, the Panel, and another MDL court have all encouraged transferor courts to defer ruling on motions to remand.  (Doc. 5 at 18; Doc. 21 at 2, 11-12).  The Court, however, finds no such imprimatur.  The Panel routinely issues a letter to transferor courts after a request for transfer has been received, which includes the following language:

> If you have a motion pending — such as a motion to remand to state

_____

[10]Although unnecessary to the Court's conclusion, five of the nine cases are on its docket, cutting Lilly's argument in half before it begins.

> court (if the action was removed to your court) — you are free to rule on the
> motion, of course, or wait until the Panel has decided the transfer issue. The
> latter course may be especially appropriate if the motion raises questions likely
> to arise in other actions in the transferee court and, in the interest of uniformity,
> might best be decided there if the Panel orders centralization.

(Doc. 21, Exhibit A). By its terms, the Panel's invitation extends only to motions whose

resolution by the transferor court threatens "the interest of uniformity" and, as discussed above,

motions to remand captured by the first step of *Meyers* do not threaten that interest.

Judge Weinstein's suggestion, issued just after establishment of the Zyprexa MDL

litigation in early 2004, is even more remote:

> The parties shall send a letter to the litigants in, and judges for, each
> of the state court cases indicating that this court intends to provide for
> coordinated discovery on the underlying scientific and related issues. The
> letter shall notify the addressees that they may wish to take appropriate action
> to coordinate or integrate discovery with that in this court. Appropriate action
> may include stays, stipulations to be bound by discovery in the MDL cases,
> stipulations to receive notice of any discovery in the MDL cases, and stipulations
> or orders to participate in any discovery in those cases.

(Doc. 5, Exhibit L). On its face, this letter suggests only a stay of state-court cases, not of

removed cases and certainly not of removed cases harboring facially meritorious motions to

remand.

The comments of the fen-phen MDL Court merit the closest attention:

> [W]e are continuing to address the fraudulent joinder of individual physicians
> and pharmacies as defendants as a means to prevent removal. Many of these
> issues have common patterns as well as ramifications far beyond any specific
> case. Again, we believe these issues are best resolved in a uniform manner
> through the coordinated proceedings of MDL 1203.

*Braden v. Wyeth*, U.S. Dist. LEXIS 28734 at *65-66 (N.D. Ala. 2004)(quoting *In re: Diet Drugs*

*Product Liability Litigation*, MDL No. 1203, PTO-2984). Implicit in the MDL Court's

statement are its extensive experience with such issues and the complexity of them. *See id.* at

*65 ("We have now developed a broader perspective than is usually available to individual

transferor courts in dealing with widespread efforts fraudulently to join Phentermine

manufacturers as a tactic to thwart removal ...."). Complex remand motions, of course, lie

beyond the first step of *Meyers* and so may well be fit for resolution by a transferee court, but

this plaintiff's motion is anything but complex. Moreover, when as here the motion to remand is

-8-

simple, a transferee court's experience with such motions does not give it a significant advantage
in deciding others of like simplicity. At any rate, Lilly has not identified any particular expertise
of the MDL Court with respect to motions to remand centered on the fraudulent joinder vel non
of a treating physician under Alabama or other law.

Finally, Lilly lists numerous transferor courts that have granted stays pending transfer in
this and other MDL litigation. Many of the cases cited are inapposite because no motion to
remand had been filed. Additional padding stems from Lilly's practice of citing multiple
decisions by the same judge in the same MDL litigation as if they represented independent
conclusions. These and other methodological flaws make it difficult to accept at face value
Lilly's representation that the "overwhelming majority of courts" defer ruling on motions to
remand. (Doc. 21 at 1).[11] Moreover, few of Lilly's cited cases involve issues of fraudulent
joinder, certainly fewer than the decisions of which the Court is aware in which the transferor
court addressed fraudulent joinder prior to transfer.[12] Finally, because most of the cited orders
provide little or no information about the motion to remand or its complexity, they are not
facially inconsistent with *Meyers*.

At any rate, the Court does not believe that its decision should be based on a simple tally

_____

[11]The statement is certainly incorrect with respect to the three federal districts in
Alabama, as the plaintiff has submitted recent unpublished orders from eleven district judges
(excluding the undersigned) and three magistrate judges remanding cases that were awaiting
transfer to an MDL court. (Doc. 15, Exhibit 1).

[12]*See, e.g, Hedges v. Pfizer, Inc.*, 2006 WL 1970545 at *3-6 (E.D. Ky. 2006); *Riddle v.
Merck & Co.*, 2006 WL 1064070 at *1-2 (S.D. Ill. 2006); *Davis v. Ocwen Federal Bank*, 2006
WL 155241 at *2 n.11 (M.D. Ala. 2006); *Copeland v. Eli Lilly & Co.*, 2005 WL 3533394 at *1-2
(W.D. Mo. 2005); *Martin v. Merck & Co.*, 2005 WL 1984483 at *5-6 (E.D. Cal. 2005); *Greene
v. Wyeth*, 344 F. Supp. 2d 674, 679 (D. Nev. 2004); *In re: Massachusetts Diet Drug Litigation*,
338 F. Supp. 2d 198, 201 (D. Mass. 2004); *Speaker v. Wyeth-Ayerst Laboratories*, 2003 WL
22938955 at *1 (N.D. Tex. 2003); *Danos v. Bristol-Myers Squibb Co.*, 2003 WL 21056815 at
*1-2 (E.D. La. 2003); *Shields v. Bridgestone/Firestone, Inc.*, 232 F. Supp. 2d 715, 718 (E.D.
Tex. 2002); *Morales v. American Home Products Corp.*, 214 F. Supp. 2d 723, 725 (S.D. Tex.
2002); *Bellorin v. Bridgestone/Firestone, Inc.*, 236 F. Supp. 2d 670, 676 (W.D. Tex. 2001);
*Carden v. Bridgestone/Firestone, Inc.*, 2000 WL 33520302 at *4 (S.D. Fla. 2000); *Bellinder v.
Microsoft Corp.*, 2000 WL 575021 at *2 (D. Kan. 2000); *Kohl v. American Home Products
Corp.*, 78 F. Supp. 2d 885, 888 (W.D. Ark. 1999).

of results in other cases.[13]   More important to the Court is the strength of the reasoning

employed to reach those results, and the orders relied on by Lilly that offer explanation for their

rulings do little more than articulate the conclusion that the interests of judicial economy,

consistency of result and minimization of prejudice to the parties will best be furthered by a stay.

Suffice it to say that nothing to which Lilly has drawn the Court's attention undermines the

Court's confidence in the *Meyers* approach and its application here.

　　　　In summary, Lilly's motion to stay — and thereby defer ruling on the plaintiff's motion

to remand — is due to be denied.

## II. Motion to Remand.

　　　　"Fraudulent joinder is a judicially created doctrine that provides an exception to the

requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287

(11th Cir. 1998).   "[T]he removing party has the burden of proving that ... there is no possibility

the plaintiff can establish a cause of action against the resident defendant ...." *Crowe v.

Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).   The possibility of establishing a cause of action

must be reasonable rather than merely theoretical.   *Legg v. Wyeth*, 428 F.3d 1317, 1324, 1325 n.5

(11th Cir. 2005).   In making its determination, the Court "must ... resolve any uncertainties about

the applicable law in the plaintiff's favor." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380

---

　　　　[13]If it did, the numbers would favor *Meyers*.   At least twelve courts have embraced
*Meyers*, and the only opinion known to have rejected it adopted instead an approach less
favorable to removing defendants. *See Rutherford v. Merck & Co.*, 2006 WL 1064071 at *2
(S.D. Ill. 2006); *Martin v. Merck & Co.*, 2005 WL 1984483 at *1-2 (E.D. Cal. 2005); *Edsall v.
Merck & Co.*, 2005 WL 1867730 at *3 (N.D. Cal. 2005)(Patel, J.); *Moton v. Bayer Corp.*, 2005
WL 1653731 at *2 (S.D. Ala. 2005); *Hotseller v. Pfizer, Inc.*, 2005 WL 756224 at *2 (S.D. Ind.
2005); *Wisconsin v. Abbott Laboratories*, 2004 WL 2055717 at *1 (W.D. Wis. 2004); *Brock v.
Stolt-Nielsen SA*, 2004 WL 1837934 at *2 (N.D. Cal. 2004)(Smith, J.); *Nekritz v. Canary Capital
Partners, LLC*, 2004 WL 1462035 at *2 (D.N.J. 2004); *Conroy v. Fresh Del Monte Produce,
Inc.*, 325 F. Supp. 2d 1049, 1053-54 (N.D. Cal. 2004)(Armstrong, J.); *New Mexico State
Investment Council v. Alexander*, 317 B.R. 440, 443-44 (D.N.M. 2004); *Chinn v. Belfer*, 2002
WL 31474189 at *3 (D. Or. 2002); *Board of Trustees v. Worldcom, Inc.*, 244 F. Supp. 2d 900,
902-03 (N.D. Ill. 2002); *cf. Pennsylvania v. Tap Pharmaceutical Products, Inc.*, 415 F. Supp. 2d
516, 521 & n.3 (E.D. Pa. 2005)(rejecting *Meyers* in favor of an inflexible rule of addressing
motions to remand prior to motions to stay).

(11th Cir. 1998).

Lilly offers three reasons why the Court should conclude that the treating physician was fraudulently joined:  (1) the complaint does not satisfy the pleading requirements imposed on medical malpractice plaintiffs by Alabama statute; (2) the plaintiff's claim against the physician is negated by irreconcilable allegations she makes against Lilly; and (3) her allegations against the physician are conclusory, without accompanying factual detail.  A preliminary assessment exposed these arguments' plain lack of merit, as discussed below.

### A. State Pleading Requirements.

In any action for injury, damages, or wrongful death ... against a health care provider for breach of the standard of care, ... [t]he plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. ...  Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.

Ala. Code § 6-5-551.

The complaint alleges that the plaintiff's physician prescribed Zyprexa "from approximately October 1996 to November 2004." (Complaint, ¶ 8).  It alleges that the physician knew or should have known that possible side effects and dangers of Zyprexa include glucose intolerance, pancreatitis, hyperglycemia and diabetes, and it alleges further that he violated the applicable standard of care by failing to warn the plaintiff of these risks and failing to advise her to monitor for early signs of these conditions.  (Id., ¶¶ 26-30).[14]

Lilly first argues that the complaint lacks "a detailed specification and factual description of each act and omission." (Doc. 1 at 11).  As pointed out by the plaintiff, however, the Alabama Supreme Court has construed the quoted language as requiring the plaintiff to give "fair notice of the allegedly negligent act"; as long as fair notice is provided, "courts should

---

[14]In addition to failure to warn, the complaint alleges that the physician wrongfully prescribed Zyprexa.  (Id.).  Because a fraudulent joinder argument fails if it is reasonably possible that the plaintiff can establish any of her alleged causes of action, the Court confines its attention to the failure-to-warn claim, which is also the principal focus of Lilly's attack.

strive to find that the complaint includes the necessary 'detailed specification and factual description of each act and omission alleged.'" *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993). The third-party complaint in *Mikkelsen* alleged that the defendant's physician prescribed a medication for bipolar disorder but failed to warn her not to operate a motor vehicle while taking the medication or suffering from the disorder. *Id.* at 1384-85. The Supreme Court held that these simple allegations satisfied the pleading requirements of Section 6-5-551 for a claim of failure to warn. *Id.* at 1385. In light of the similarity of the allegations in *Mikkelsen* to those in this case, there is plainly more than a reasonable possibility that an Alabama court would find the plaintiff's allegations to satisfy the statute. Lilly, confronted with *Mikkelsen* in the motion to remand, has not attempted to disagree. (Doc. 22 at 8-9).

The bulk of Lilly's thin statutory argument is dedicated to the proposition that the complaint fails to provide "the date, time, and place of the act or acts." In the first place, the obligation to address time and location applies to acts, not omissions, and the plaintiff's claim of failure to warn concerns an omission, not an act. The Alabama Legislature plainly understood the difference between acts and omissions, since Section 6-5-551 uses the term "act or omission" three times, such that its use of "act or acts" cannot easily be disregarded as unintended or inconsequential. Limiting the requirement to acts also makes sense because, while an act usually occurs at a specific site and at a specific time that can be readily identified, an omission is almost always ongoing and not easily described in terms of a specific time and location.

In the second place, Section 6-5-551 requires that information as to time and place be provided only "when feasible and ascertainable." Because a failure to warn is an ongoing wrong, providing such specifics may not be feasible. The physician (but not Lilly) suggests that it would be feasible to identify the dates on which he prescribed Zyprexa, (Doc. 20 at 3), but prescribing medication, while an "act" and not an omission, is not obviously an act "alleged by plaintiff to render the health care provider liable" for purposes of her failure-to-warn claim. At any rate, neither the physician nor Lilly provides any basis for concluding either that the plaintiff had access to this information before filing suit or that the information was "ascertainable"

-12-

within the contemplation of the statute even absent such access.[15]

In the third place, Section 6-5-551 limits the grounds for dismissal to the failure to provide "such detailed specification and factual description of each act and omission." A comparison of this language with that setting forth the statutory pleading requirements suggests that the sanction of dismissal is available only for inadequately identifying and describing the wrongful act or omission, not for deficiencies in pleading time or place.

The Court need not and does not hold that Section 6-5-551 is as narrow as depicted in the preceding paragraphs; to dispose of Lilly's fraudulent joinder argument, the Court need only determine that it is reasonably possible the Alabama courts would adopt at least one of these three interpretations. Given their facial plausibility, their consistency with the statutory language employed, and the Supreme Court's focus in *Mikkelsen* on fair notice rather than technical precision, that reasonable possibility plainly exists.

The result is not altered even if these arguments are ignored and it is assumed that the plaintiff was required on pain of dismissal to allege the time and place of the physician's failure to warn. The third-party complaint in *Mikkelsen* alleged that the physician's failure to warn occurred "[w]hile [he was] treating" the defendant, which treatment began several weeks before the motor vehicle accident that prompted the lawsuit. 619 So. 2d at 1385. Without discussion, the *Mikkelsen* Court held that the complaint "sufficiently alleged the date and place of [the doctor's] negligent act." *Id.* Lilly argues that *Mikkelsen* stands for the proposition that, while an allegation of time in a failure-to-warn case need not identify specific dates, it must isolate a narrow window of time, such as the "several weeks" at issue in *Mikkelsen*. (Doc. 22 at 9). This is certainly one plausible way to spin *Mikkelsen*, but it is not the only one. It is equally reasonable to read *Mikkelsen* for the proposition that, in a failure-to-warn case, Section 6-5-551 is satisfied by an allegation that the failure to warn occurred throughout the treatment period, with the inclusive dates of treatment provided. The reasonableness of this interpretation is only enhanced by the *Mikkelsen* Court's identification of "fair notice" as the touchstone for

---

[15]The physician's "assum[ption]" that the plaintiff acquired her medical records before filing suit, (*id.*), is scarcely an assurance that she did so. Indeed, his ignorance of whether she obtained medical records of which he is presumably the custodian indicates that she did not have access to them when she filed suit.

construing the statute's pleading requirements.  Because it is reasonably possible that the

Alabama courts would adopt the latter view, and because the complaint's allegation that the

physician prescribed the plaintiff Zyprexa from approximately October 1996 to November 2004

falls within its parameters, Lilly's fraudulent joinder argument fails.[16]

### B.  Mutually Exclusive Allegations.

Count Seven, which asserts a claim of fraud, misrepresentation and suppression against

Lilly, alleges in part as follows:

> The Defendants [sic] knew or should have known that these representations
> were false and made the representations with the intent or purpose that the Plaintiff
> and/or Plaintiff's physician would rely on them, leading to the use of the drug by
> the Plaintiff.

(Complaint, ¶ 72).  Drawing from this assertion, Lilly argues that "[t]he allegations that Lilly

failed to provide accurate representations regarding the safety of Zyprexa to Plaintiff's physician

render untenable any allegation that [the treating physician] is liable to Plaintiff for ...

negligently monitoring and informing Plaintiff."  (Doc. 1 at 12; Doc. 22 at 6).  Lilly cites several

cases which found fraudulent joinder when a claim that a physician failed to warn of risks in the

use of a prescribed medication was contradicted by allegations that the manufacturer failed to

disclose those risks to the physician; the latter allegations made it impossible for the plaintiff to

establish a claim because a physician has no duty to warn of dangers of which he could not have

known.[17]               Assuming without deciding that the same test should be applied here, it

does not undermine the plaintiff's claim against her physician.  The critical circumstance in the

---

[16]*Mikkelsen* held that the third-party complaint adequately alleged the place of the
wrongful conduct even though the pleading was silent as to where the conduct occurred.  619 So.
2d at 1384-85.  Lilly makes no separate argument concerning the pleading of place but, in any
event, *Mikkelsen* establishes a reasonable possibility that the Alabama courts would conclude
that the plaintiff's complaint is not deficient in this regard.

[17]*See Flores v. Merck & Co.*, 2004 U.S. Dist. LEXIS 28017 at *2 (S.D. Tex. 2004); *In re:
Baycol Products Litigation*, 2004 U.S. Dist. LEXIS 28068 at *5 (D. Minn. 2003); *Baisden v.
Bayer Corp.*, 275 F. Supp. 2d 759, 763 (S.D.W. Va. 2003); *Omobude v. Merck & Co.*, 2003 U.S.
Dist. LEXIS 27006 at *4 (S.D. Miss. 2003); *Brown v. Bristol-Myers Squibb Co.*, 2002 U.S. Dist.
LEXIS 27445 at *17 (S.D. Miss. 2002).

cases upon which Lilly relies is that the complaint identified no source of information available to the physician other than the manufacturer.  When the allegations of such a complaint negate the manufacturer as a source of information about the drug's risks, it follows that the physician could not have known of the risks he failed to address.  The situation is entirely different when the complaint alleges that the physician knew or should have known of the drug's dangers from other sources, and Lilly's own authority acknowledges that "a specific allegation as to the source of such knowledge" takes the case outside the scope of the rule.  *Omobude v. Merck & Co.*, 2003 U.S. Dist. LEXIS 27006 at *6-7 (S.D. Miss. 2003).

Here, the complaint lists and discusses a number of studies and reports in the medical literature, as well as governmental and health organizational advisories, appearing as early as 1996 and continuing through the 2005 Physician's Desk Reference.  According to the descriptions provided in the complaint, these documents support and even warn of a link between Zyprexa (and the family of atypical antipsychotic drugs to which it belongs) and diabetes, pancreatitis and hyperglycemia.  (Complaint, ¶¶ 14-23).  Because it contains "a specific allegation as to the source [other than the manufacturer] of" the physician's actual or constructive awareness of the risks of which he failed to warn, the complaint does not negate the existence of a duty to warn.

## C.  Conclusory Allegations.

"Although the Fifth Circuit has not drawn a bright-line distinction between a reasonable possibility and a theoretical one, it has held that, when plaintiffs make general allegations and fail to support them with specific, underlying facts, they have not established a reasonable basis for the Court to predict that relief may be granted."  *Staples v. Merck & Co.*, 270 F. Supp. 2d 833, 837 (N.D. Tex. 2003).  Lilly argues that the plaintiff's failure-to-warn claim makes only general allegations without specific underlying facts and thus lacks a reasonable possibility of success under this principle.  (Doc. 1 at 9-10).

Assuming without deciding that application of the quoted rule is appropriate,[18] it does not

---

[18]It is not clear that the Fifth Circuit has in fact embraced the quoted rule.  The *Staples* Court cited two cases for the proposition, but neither seems to support the expansive sweep

aid Lilly's case.  Lilly argues the allegation that the physician "knew or should have known that the drug was unreasonably dangerous and/or would cause injury to Plaintiff" is conclusory but, as discussed in Part II.B, the complaint specifies in great detail the available medical, governmental and non-governmental information on which the physician's alleged actual or constructive knowledge is based.  Lilly argues the allegation that the physician "never alerted Plaintiff to the possible dangers or advised Plaintiff to monitor blood sugars or undergo any examination, and/or diagnostic testing to determine if Plaintiff had sustained injuries" is conclusory but, as the plaintiff surely possesses personal knowledge of what her physician did and did not tell her, it is difficult to imagine what additional detail could be required to confirm that she has a basis for making the allegation.  It is thus unsurprising that Lilly has been unable to suggest a single missing "underlying fact."

In short, Lilly plainly has not met its burden of showing that the resident physician was fraudulently joined.  Thus, complete diversity is lacking and the case is due to be remanded.


### CONCLUSION

For the reasons set forth above, Lilly's motion to stay is **denied** and the plaintiff's motion to remand is **granted**.  This case is **remanded** to the Circuit Court of Monroe County.


DONE and ORDERED this 5th day of June, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

urged by Lilly.  The Court in *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382 (5th Cir. 2000), noted that "Plaintiff's conspiracy allegations are completely general," *id.* at 391, but the Court grounded its conclusion of fraudulent joinder on the plaintiff's failure to present evidence in response to the resident defendants' affidavits denying their participation in a conspiracy.  *Id.* at 393.  The Court in *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002), held only that, "considering the constraints on claims by individuals peripheral to a legal relationship between other parties [in *Great Plains*, a suit by debenture holders against the issuer's financial advisor], we conclude that plaintiffs must plead facts that, viewed favorably, demonstrate that they fall within the circumscribed class of individuals eligible to bring a claim." *Id.* at 329.  Because the plaintiff had direct dealings with her physician, she is not captured by the *Great Plains* rule.