# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

JOSEPHINE COKER, CHARLIE     )
CRISS, and ROSE PURNELL,      )
                               )
          **Plaintiffs,**       )
v.                          )     **Case No.: 4:07cv100-WAP-EMB**
                               )
MERCK & COMPANY, INC., MISTY  )
AUSTIN, ANDREA ELIZABETH     )
BEAVERS, DAN SHEALS, WILLIAM  )
UMPHLETT, and JOHN DOES 1-20,   )
                               )
          **Defendants.**     )

## MOTION FOR EXPEDITED RULING ON MOTION FOR REMAND

**COME NOW** the Plaintiffs, by and through the undersigned counsel of record, to request

that this Honorable Court expeditiously rule Plaintiffs' previously-filed *Motion to Remand* this

action to the Circuit Court of Leflore County, Mississippi, pursuant to 28 U.S.C. §1447(c). As

grounds for this motion, the Plaintiffs offer the following:

      1.     Plaintiffs filed their *Motion to Remand* on or about July 11, 2007, within days of

receiving notice that Defendant Merck had filed a petition for removal of this case. Plaintiffs

also filed an opposition to Defendant Merck's *Motion to Stay* this case pending transfer to MDL-

1657 in the Eastern District of Lousisiana.

      2.     This action was originally filed in the Circuit Court of Leflore County,

Mississippi, naming Merck, Misty Austin, Andrea Elizabeth Beavers, Dan Sheals, William

Umphlett, and John Does 1-20, as the defendants. In their Complaint, Plaintiffs made specific

allegations about each defendant, particularly regarding the sales tactics, suppression of

1



information, and fraudulent statements made by the defendants as they pursued pecuniary gain.

      3.      The removing defendants have failed to provide sufficient proof that the resident defendants, Misty Austin, Andrea Elizabeth Beavers, Dan Sheals, William Umphlett, have been fraudulently joined to this action or that a stay is required in the present proceeding.

      4.      The Complaint provides detailed allegations regarding the conduct of the defendants and asserts claims that are colorable under Mississippi law.

      5.      Unlike Defendant Merck, Plaintiffs do not suggest that this court should avoid applying the law now; Plaintiffs do not suggest that this Court should choose to avoid or disregard precedent; and, Plaintiffs do not suggest that this Court should delay ruling on their motion to allow transfer to another court, thereby side-stepping a challenge to this Court's jurisdiction. Plaintiffs urge this Court to examine its jurisdiction now and rule accordingly. Any delay by this Court could result in transfer to the Eastern District of Louisiana, to a foreign court not of the Plaintiffs' choosing, to an MDL court which is bogged down with over 8,000 other cases, none of which, based on information and belief, have been remanded to either a transferor court or a state court.

      6.      This Court should simply apply the law. Precedent from the Fifth Circuit Court of Appeals is clear regarding the standard for removal and fraudulent joinder. Defendants have failed to meet their burden in establishing fraudulent joinder; thus, complete diversity does not exist, this court lacks subject matter jurisdiction and the case should be sent back to the Circuit Court of Leflore County, Mississippi. "There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged." *Parks v. New York Times Company*, 308 F.2d 474 (5th Cir.1962). If there is any possibility that the plaintiffs have

stated a cause of action against any non-diverse defendant, this Court must conclude that joinder

is proper, thereby defeating complete diversity, and the case must be remanded. *Gillis v. Great*

*Atlantic & Pacific Tea Co., Inc.*, 153 F.Supp.2d 883 (S.D.Miss. 2001). And, more recently than

the *Parks* case, the Fifth Circuit provided guidance for the determination of fraudulent joinder:

> If, having assumed all of the facts set forth by the plaintiff to be true and having
> resolved all uncertainties as to state substantive law against the defendants, the
> district court should find that there is no possibility of a valid cause of action being
> set forth against the in-state defendant(s), only then can it be said that there has been
> a "fraudulent joinder." *Tedder v. F.M.C., supra; Keating v. Shell Chemical Company,
> supra* at 332. However, if there is even a possibility that a state court would find a
> cause of action stated against any one of the named in-state defendants on the facts
> alleged by the plaintiff, then the federal court must find that the in-state defendant(s)
> have been properly joined, that there is incomplete diversity, and that the case must
> be remanded to the state courts. *Parks v. New York Times Company, supra; Bobby
> Jones Garden Apartments v. Suleski, supra; Keating v. Shell Chemical Company,
> supra* at 333.

*Gray v. United States Fidelity and Guaranty*, 646 F.Supp. 27 (S.D. Miss. 1986); *citing B., Inc. v.*

*Miller Brewing Co.*, 663 F.2d 545 549 (5th Cir. 1981); *see also, Green v. Amerada Hess. Corp.*,

707 F.2d 201 (5th Cir.1983).

7.     Because the Plaintiffs' *Motion to Remand* directly calls into question the bedrock

issue of this Court's jurisdiction, it is compulsory this Court first examine Plaintiffs' remand

petition in accordance with 5th Circuit guidance."The plain language of section 1447(c) requires

the district court to remand a case when it finds that subject matter jurisdiction is lacking."

*Hexamer v. Foreness*, 981 F.2d 821, 824 (5th Cir. 1993). The statute states:

> **If at any time before final judgment it appears that the district court lacks
> subject matter jurisdiction, the case shall be remanded.**

28 U.S.C.A. § 1447(c) (emphasis added).

8.     The jurisdiction of this Court is a threshold issue. Thus, there is a question

regarding whether this Court has authority to issue a stay without first addressing Plaintiffs'

jurisdictional challenge. "Where removal of action from state court is challenged, district court

may retain jurisdiction only where its authority to do so is clear." *Spillers v. Tillman*, 959 F.

Supp. 364 (S.D.Miss.1997). Because this Court sits in the 5th Circuit, it is under a duty to

examine its own jurisdiction prior to undertaking any formal action, including entry of a stay

pending transfer to an MDL. Judge Jack of the United State District Court for the Southern

District of Texas stated, "[u]nless a federal court possesses subject matter jurisdiction over a

dispute, ... any order it makes (other than an order of dismissal or remand) is void." *In re Silica*

*Products Liability Litigation*, 398 F.Supp.3d 563, 644-645 (S.D. Tex. 2005); *citing Dahiya v.*

*Talmidge Int'l, Ltd.*, 371 F.3d 207, 210 (5th Cir.2004) (citing *John G. & Marie Stella Kenedy*

*Mem'l Found. v. Mauro*, 21 F.3d 667, 674 (5th Cir.1994); *Shirley v. Maxicare Tex. Inc.,* 921 F.2d

565, 568 (5th Cir.1991)). "The Fifth Circuit has explained: Where a federal court proceeds in a

matter without first establishing that the dispute is within the province of controversies assigned

to it by the Constitution and statute, the federal tribunal poaches upon the territory of a

coordinate judicial system, and its decisions, opinions, and orders are of no effect." *Id. citing*

*Howery*, 243 F.3d at 916 n.6 (quotation omitted). "Because the establishment of a basis for the

exercise of subject matter jurisdiction is the *sine qua non* of federal litigation, we have

consistently held that it is the party who urges jurisdiction upon the court who must always bear

the burden of demonstrating that the case is one which is properly before the federal tribunal." *B.,*

*Inc. v. Miller Brewing Co.*, 663 F.2d 545 549 (5th Cir. 1981) (*citing Village Fair Shopping Co. v.*

*Sam Broadhead Trust*, 588 F.2d 431 (5th Cir. 1978); *Ray v. Bird & Son & Asset Realization Co.,*

*Inc.*, 519 F.2d 1081 (5th Cir. 1975)).

9.      Defendants are incorrect in their assertion that the transfer of this case to the Eastern District of Louisiana would be without prejudice to the Plaintiffs.  It would be highly prejudicial because transfer to MDL-1657 would result in unnecessary delay.  It would also result in a waste of judicial resources.  After languishing in MDL-1657 for some period of time, this case will one day be transferred back to this court for further proceedings.  This court will then be faced with examining the challenge to subject matter jurisdiction again, for the **second** time.  Clearly, duplication of effort by this Court, coupled with the challenges to the jurisdiction of both the JPML and MDL-1657 is not a judicious use of federal judicial resources.

10.     Had the Plaintiffs wished to proceed in federal court, they would have filed their Complaint here, but they didn't.  Plaintiffs wish to proceed against the Mississippi resident drug sales representatives and Merck in the Circuit Court of Leflore County, Mississippi.  The Court should not "defer consideration" as Defendant Merck suggests.

11.     This Court is in a far better position to resolve the jurisdictional issue presently at bar.  Judge Bartle, who currently presides over MDL-1203, In re Diet Drugs (Phentermine/Fenfluramine Litigation) prefers that motions to remand be decided by the transferor court.  At a hearing to consider remanding certain cases to a transferor court to decide whether certain parties were properly joined, Judge Bartle explained that **the local federal court is better suited to decide removal/remand issues.**  In re Diet-drugs Product Liability Litigation, [MDL-1203] *Hearing Transcript* (E.D. Penn. July 16, 2002), pp.104-105, 126, 127 and 128, respectively.  During that hearing, the following exchanges ensued:

> "Why shouldn't that matter be decided by the federal court in Louisiana rather
> than my remanding cases to the State Court?" *Id.* at 15.

"Is that really a matter for me to get involved in? Isn't it better for a federal court in Mississippi to decide that? I mean, that court would certainly be better versed in the nuances of Mississippi law than I." *Id.* at 102.

"Wouldn't it be better for a federal court in Mississippi - in Mississippi to decide whether a party is proper?" *Id.* at 103.

(Attached as Exhibit A).   Clearly, these statements illustrate the plain truth; that a Mississippi federal court is in a superior position to decide the jurisdictional issues related to Mississippi Plaintiffs' *Motion to Remand*.

12.    Because this Court lacks any jurisdiction over this case, it would be inappropriate to issue any stay of the proceedings at bar.  Defendants should not be allowed to remove a case without justification and thereafter be rewarded with having it transferred to an MDL merely because one exists. Here, Plaintiffs filed their case in Leflore County, Mississippi, where jurisdiction is entirely proper and hereby renew their motion, as master of their complaint, to remand this case back to state court for further proceedings without delay.

13.    Plaintiffs' counsel respectfully requests an opportunity to appear before this Court to more fully explain the positions stated herein, as well as the positions previously asserted in Plaintiffs' Motion to Remand and Plaintiffs' Opposition to Defendant Merck's Motion to Stay.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests that this Honorable Court expeditiously set a date and time for the parties to present their positions regarding remand of this case to the Circuit Court of Leflore County, Mississippi.

Respectfully submitted this 13th day of August, 2007.

_/s/ James V. Doyle, Jr._____
James V. Doyle, Jr. (MB #100727)
*Attorney for Plaintiffs*

6

**OF COUNSEL**:

**WIGGINS CHILDS QUINN & PANTAZIS, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
(205) 314-0500  phone
(205) 254-1500  fax

## CERTIFICATE OF SERVICE

A copy of the foregoing document was submitted to the Court via the ECF system and the following counsel of record will be served accordingly:

Christy D. Jones, Esq.
Charles C. Harrell, Esq.
Anita Modak-Truran, Esq.
J. Kennedy Turner, III, Esq.
Alyson B. Jones, Esq.
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
17TH Floor, Amsouth Plaza
210 East Capitol Street
P.O. Box 22567
Jackson, MS 39225

*Attorneys for Defendant Merck & Company, Inc.*

On this the 13th day of August, 2007.

_/s/ James V. Doyle, Jr._
James V. Doyle, Jr. (MB #100727)

7

1

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2

 3
         IN RE:  DIET DRUGS (Phentermine/  : MDL NO. 1203
 4       Fenfluramine/Dexfenfluramine)     :
         PRODUCTS LIABILITY LITIGATION     :
 5                                         :
                                           :
 6       SHEILA BROWN, et al.              :
                                           :
 7           V.                            :
                                           :
 8       AMERICAN HOME PRODUCTS            :
         CORPORATION                       :
 9

10                    - - - - - - - - - - - -
11                  PHILADELPHIA, PENNSYLVANIA
                    TUESDAY, JULY 16, 2002
12                    - - - - - - - - - - - -

13

14          BEFORE:  HONORABLE HARVEY BARTLE, III, J

15

16                        HEARING

17

18                    -  -  -  -  -  -

19

20

21                 SUZANNE R. WHITE, C.M.
22          FEDERAL CERTIFIED REALTIME REPORTER
                    601 MARKET STREET
23                 1234 U.S. COURTHOUSE
                    PHILADELPHIA, PA
24                    (215) 627-1882

25
```

44

1   no more need for an MDL.

2              THE COURT:  We certainly --

3              MR. ZIMROTH:  So, if there is an MDL, then

4   the answer to the question is, absolutely yes.

5              THE COURT:  It does not go back there until

6   all discovery is completed, ready.

7              MR. ZIMROTH:  Exactly.  Pretrial

8   proceedings.  Then we have a remand, and then it goes

9   back and it gets tried in the District Court where --

10   so, we are now in a situation where we put the

11   settlement agreement aside altogether and, in our view,

12   we have a right to -- if there is diversity

13   jurisdiction, we have a right to remove this case and

14   the joint panel on multi district litigation has said

15   in the face of arguments by Mr. Pirtle and many, many

16   others, no, you should -- you should insist that the

17   local district judge decide these issues.  They have

18   said, we can provide you with authority for this.  They

19   have said, the issue of diversity in remand is an

20   appropriate question.  It's a pretrial issue that

21   should be decided or appropriate for decision by the

22   MDL court.  That is why we are here.

23              And so, I mean, I would like to address why

24   we think we are appropriately in federal court.

25              THE COURT:  We have hundreds of these cases

45

1   where every one of them I'm going to have to do a fact

2   intensive hearing and decision on whether or not there

3   was fraudulent joinder.  We are going to have to,

4   because there may or may not be.  Just because there

5   may be in one case does not mean that there is in

6   another case.  Even with the same defendants.

7              MR. ZIMROTH:  I think, your Honor, you know,

8   I don't know what is going to happen.

9              THE COURT:  I'm asking you.

10             MR. ZIMROTH:  I don't know what the other

11  issues are going to be in a future case.  I don't know

12  the answer.

13             THE COURT:  Let's assume hypothetically that

14  there is some fraudulent joinder in the phentermine

15  defenders in case number one.  Let's assume that I make

16  a finding.  And let's say it's in state X.  Now, that

17  may not be true when the phentermines are joined in the

18  case in statewide by different attorneys.  They may

19  have a claim.  They may -- it may be different.  So,

20  simply because I might make a finding one way in one

21  case does not mean I would be making the same finding

22  in the second case.

23             MR. ZIMROTH:  That may be, but I think the

24  point is, your Honor, that the MDL court is supposed to

25  be, at least my understanding of what the purpose of

46

1    what an MDL is, is supposed to be dealing with all

2    those questions so that all of the district judges all

3    over the country don't have to deal with them in

4    inconsistent ways.

5              THE COURT:  They are going to have to,

6    because when you talk, there is nothing more fact

7    intensive than fraudulent joinder.  I mean, that is

8    very fact intensive, talking about somebody committing

9    a fraud.

10             MR. ZIMROTH:  They used the word fraud.

11             THE COURT:  I know, but regardless of how

12   whether it's common law.  But it's -- it's a very,

13   let's say, fact intensive.

14             MR. ZIMROTH:  Some issues are fact

15   intensive.  Some issues are --

16             THE COURT:  Not on whether a particular

17   doctor in Louisiana ought to be joined or not, whether

18   he is a proper defendant, and then you have a different

19   doctor in Minnesota or different one in New Hampshire.

20   I mean, that is all going to have --

21             MR. ZIMROTH:  There is no way to avoid the

22   fact that some of these -- some questions might be fact

23   intensive, your Honor.

24             THE COURT:  But it's also you get into

25   questions of state law.  What is the Mississippi law on

47

1   -- when you talk about joinder.  That is another issue,

2   about joinder of plaintiffs.  Or who has a cause of

3   action.  Maybe in Mississippi you would not have a

4   cause of action against the doctor, but in Louisiana

5   you would.

6        MR. ZIMROTH:  And then the answer would be

7   different.

8        THE COURT:  But the question is, is that a

9   matter for the MDL?  There is no -- that does not deal

10  with national uniformity, whether under Louisiana law

11  you can sue a particular person or you can't.

12       MR. ZIMROTH:  All I can say, your Honor --

13       THE COURT:  I'm asking.

14       MR. ZIMROTH:  I'm trying to answer, as best

15  I can.

16       The very -- I know you are not making

17  argument.  You are asking questions.  I understand

18  that.  But the questions that you are asking are the

19  arguments that plaintiffs have made over and over again

20  to the JPML.  They have said, don't transfer this case

21  to the MDL before the remand motion is heard.

22       THE COURT:  Well.  Well.

23       MR. ZIMROTH:  So, in other words, they are

24  saying, look, the MDL judge will deal with the remand

25  motion.  It's the same thing --

48

1          THE COURT: But the MDL does not require

2     that under its rules. Isn't there some leeway about

3     sometimes the federal court to which a case is removed

4     will make the decision.

5          MR. ZIMROTH: And they --

6          THE COURT: They go both ways.

7          MR. ZIMROTH: You know, the plaintiffs, what

8     happens here, is, the plaintiffs first will be removed

9     to the District Court in Mississippi, let's say, or

10    whatever. The first thing that the plaintiffs do is to

11    say, judge X, you should decide the remand motion. If

12    that judge decides the remand motion, we are not here.

13    The only way that we get here is if that judge says,

14    no, I'm going to let this go to the JPML. Then it gets

15    here. So that -- and in fact in this very case, that

16    was the argument that they made. They said, you know,

17    we should go to -- the Louisiana judge should make this

18    decision. Judges all over the country are faced with

19    that. And some of them may decide they want to decide

20    the remand motion. But if they don't, then it comes

21    here. I think that that is, frankly, one of the most

22    important purposes of an MDL, is to -- because some of

23    the issues are fact intensive, some of them deal with

24    the question of state law. That happens all the time.

25    But when you are talking about mass Torts, the core of

102

1    doctors since the Moorik decision came down.  And at

2    the end of the day, when we go to trial, and one case

3    that did go to trial in Mississippi in Jefferson county

4    in 1999 that is emblematic of this, everybody else

5    disappears.  No evidence was presented against the

6    phentermine defendant, no evidence was presented

7    against the pharmacy defendant.  The pharmacy made a

8    motion for directed verdict after the plaintiff's

9    evidence came through.  It was not even opposed by the

10   plaintiff.  The phentermines got out without any

11   opposition, as well.  That has been happening just

12   repeatedly.  And there is really just no reason to

13   think that this case is different.

14          And to start, to take things backwards

15   from -- from what my adversary was talking about.

16   Let's talk about the sales reps.  There is not a single

17   decision in Mississippi State Court saying that sales

18   reps can be liable.  Not a single one.

19          THE COURT:  Is that really a matter for me

20   to get involved in?  Isn't it better for a federal

21   court in Mississippi to decide that?  I mean, that

22   court would certainly be better versed in the nuances

23   of Mississippi law than I.  Cases come down in courts

24   every day, the nuances of Mississippi law are not

25   something that I obviously deal with every day.

103

1       MR. AGNESHWAR:  I understand, you know,

2    that's the position that you are articulating.

3       THE COURT:  I'm asking in running an MDL,

4    there are a lot of issues we deal with, and rightly so.

5    As I said, for example, they were claims, punitive

6    damages.  It seems to me I have a right to step in and

7    join the plaintiffs or take some action to prevent them

8    from seeking punitive damages, or doing certain other

9    things.  But to get into whether or not individual

10    defendants can be sued under state law in Mississippi

11    and Louisiana, this is an unprecedented case, as we

12    said, in a lot of respects.  For an MDL judge to sit

13    here and decide what the latest law is in Mississippi

14    and Louisiana, and Texas and Montana and New Hampshire

15    and Virginia and Florida.

16       MR. AGNESHWAR:  I see what -- I understand

17    what you are --

18       THE COURT:  I raise the question now,

19    wouldn't it be better for a federal court in

20    Mississippi -- in Mississippi to decide whether a party

21    is proper?

22       MR. AGNESHWAR:  I think --

23       THE COURT:  All the people are there.

24    Discovery can be taken there of that limited issue, if

25    necessary.

104

1              MR. AGNESHWAR:  Your Honor, there might be

2      cases where the issues are really complicated and the

3      Federal Judge in Mississippi might be closer to this

4      situation.  This case, I don't think, is one of them.

5      But in any event, let me respond with two things.  The

6      first, procedurally, this is another case like the

7      Anderson case, where the plaintiffs, they moved for an

8      emergency hearing actually and went to the judge in

9      Mississippi, the Federal Judge, and said, we want you

10     to decide this.  And this was a situation where our

11     position was, and I think this is still -- this is what

12     I feel very strongly is, there is an advantage, and

13     this is the whole purpose of MDLs, for one judge to get

14     the picture of what is going on throughout the country,

15     really.  And that picture is consistent.

16             THE COURT:  In terms of a specific doctor in

17     Louisiana.  Now, what is the big picture nationally

18     that I have to get?  Maybe that is happening other

19     places but I have to be case specific.  Maybe doctor X

20     did prescribe the drug for a plaintiff in Mississippi

21     and that doctor is appropriately joined.  Maybe in

22     another case in Texas, a particular doctor who is

23     joined didn't do so.

24             Now, there is no big picture about it.  It's

25     just a specific case.  One place, it is right; one

105

```
 1    place it is wrong.  Maybe it was wrong that that
 2    pharmacy in Mississippi that was being sued.  But why
 3    would I have a better grasp of that than a Federal
 4    Judge in Mississippi, who would probably have a better
 5    view of it in terms of a small pharmacy.  A pharmacist
 6    can come in and say, judge, look, they are strangling
 7    me economically here.  And there is no reason in the
 8    world to bring me in.  I have a -- you know, a place is
 9    open, I'm closed on weekends.  You know, I have two
10    employees, and I'm in this particular county and
11    it's -- the judge may know the county and say; this is
12    really crazy what is going on.
13              MR. AGNESHWAR:  Actually, in Castal in
14    particular, I don't think it raises these kinds of
15    factual issues that make it any more difficult for your
16    Honor to decide the issues here about what the state
17    law cause than a Mississippi Federal Judge.  And I do
18    think it's helpful, rather than we have cases -- and
19    just a little bit.  I have been managing the
20    Mississippi diet drug litigation for quite a while, for
21    a couple of years.
22              THE COURT:  Apparently you have your hands
23    full.
24              MR. AGNESHWAR:  I certainly do.  And we have
25    seen every stripe.  I'm going to be candid with you.  I
```

106

1    mean, it makes a huge difference to the parties whether

2    this case -- these cases stay in Jefferson County,

3    Mississippi or get removed to federal court.

4              THE COURT:  I don't have any doubt about

5    that at all.  I understand the reality.  That is not

6    the real question.  The question I'm wrestling with is

7    whether I'm the better -- this is a better court to

8    decide those issues, which may be so case specific, or

9    is it better for the Federal Judge in Mississippi, I'm

10   not talking about not having a Federal Judge decide it,

11   or the Federal Judge in New Orleans decide it, or the

12   Federal Judge in Houston or Galveston or wherever, to

13   decide those issues, because I'm having -- I understand

14   your argument about the phentermines but, you know, if,

15   for example, there is under state law some kind of a

16   doctrine of civil conspiracy, isn't it better for --

17   even in terms of commonality for a Federal Judge in

18   Louisiana to decide what the -- what the Louisiana law

19   is with respect to civil conspiracy than having me

20   sitting here in Philadelphia do that?

21             As I say, it would be one thing if they are

22   coming in here and claiming punitive damages.  That,

23   obviously, they cannot do.  It has a direct effect on

24   the settlement, on what the parties agreed to.  And I

25   would agree in a minute to handle that.  Or, if the

128

```
 1              MR. ZIMROTH:  I'm sure 40 or 50.

 2              THE COURT:  That is probably right.  So then

 3    I would have to sit here and decide, well, you can have

 4    30 complaints, 30 different theories against

 5    pharmacies.  So the fact that I decided case A doesn't

 6    make it simple to deciding case B necessarily.

 7              MR. ZIMROTH:  Nor for any other Federal

 8    Judge.

 9              THE COURT:  I understand that.  I'm just

10    saying to you that it's simply, you know, deciding one

11    Mississippi case related to pharmacies may not be the

12    end of the story.

13              MR. ZIMROTH:  It may not, your Honor.  And I

14    say this with some trepidation because I know you won't

15    --

16              THE COURT:  Go ahead.  It's ten of six.  We

17    are going to spend five more minutes.

18              MR. ZIMROTH:  I think as long as there is an

19    MDL here, that that is --

20              THE COURT:  The job -- you would be saying I

21    would be shirking my responsibilities if I did not

22    handle that.

23              MR. ZIMROTH:  That is not what -- I did not

24    want to say that, judge.  But that's -- there is an

25    MDL.  And the MDL judges do this all the time.  I mean,
```

129

1   it's common.  That is what happens in MDL's.

2                Now, if you think -- if any particular judge

3   thinks there should not be an MDL, then that is another

4   story.

5                THE COURT:  I think MDL, just for the

6   record, serves a very useful purpose.  There would be

7   chaos without them.  And as I say, just the extent, how

8   far --  what should an MDL judge do.  There is plenty

9   to do here, as we all know, and there are a lot of

10  important things to do.  And certainly any violation of

11  this agreement would be a matter that I would certainly

12  deal with quickly and willingly.  We are now a step

13  removed from that.

14               MR. ZIMROTH:  Can I say one thing about

15  that, your Honor?

16               That power to enforce the settlement

17  agreement would exist regardless of whether there was

18  an MDL.

19               In other words, your Honor sits really in

20  two capacities.

21               THE COURT:  There might not be a settlement

22  agreement if it weren't for the MDL.

23               MR. ZIMROTH:  It might or might not.  I

24  mean, there are settlements that occur with MDL's and

25  without MDL's.

# BUTLER|SNOW

August 17, 2007

**VIA FACSIMILE & ECF FILING**

W. Allen Pepper, Jr., District Judge
United States District Court
Northern District of Mississippi
305 Main Street, Room 329
Greenville, MS 38701

      Re:   *Jacqueline Blackshire, et al. v Merck & Co., Inc., et al.,*
           United States District Court for the Northern District of Mississippi,
           Case No.: 4:07cv101 WAP-EMB

Dear Judge Pepper:

    I am writing in response to the Notice, filed by plaintiffs yesterday, in which they bring to the Court's attention a decision issued by this Court remanding the *Coker v. Merck* case, also pending in this District, to state court.

    The Court should disregard plaintiffs' Notice for two reasons.

    First, the *Blackshire* case is no longer pending before this Court. Rather, effective August 6, 2007, the case has been coordinated in the Vioxx product liability MDL proceeding and this Court no longer has jurisdiction to issue rulings in these matters. *See* Transfer Order 108, attached as Exhibit A. The Transfer Order was entered by the MDL Panel and filed with the MDL Court on August 6, 2007, effectuating the transfer of these cases to MDL 1657. *See* JPML Rule 1.5 ("A transfer...shall be effective when the transfer...order is filed in the office of the clerk of the district court of the transferee district."); Rule 1.5 commentary ("Transfer of jurisdiction occurs when the Panel's order of transfer is filed in the transferee court.").



*Post Office Box 22567*    |    **ALYSON BUSTAMANTE JONES**    |    *210 East Capitol Street, 17th Floor*
*Jackson, MS 39225-2567*    |    601.985.4427    |    *Jackson, MS 39201*
        alyson.jones@butlersnow.com

*T 601.948.5711 • F 601.985.4500 • www.butlersnow.com*
**BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC**

Second, the *Coker* decision is null and void because it was entered after transfer of the *Coker* case to the federal MDL proceeding was complete. The *Coker* matter, like the *Blackshire* case, was listed on CTO-108 that was filed with the MDL Court on August 6. This Court's decision that Plaintiffs attached to the Notice was made on August 14, *after transfer of the matter to the MDL*. Because the Court lacked jurisdiction over the case, the order remanding it is invalid. *See In re Prudential Insurance Company Of America Sales Practices Litig.*, 177 F.R.D. 216 (D.N.J. 1997) ("Judge Campos's Remand Order, filed August 19, 1997, is a nullity . . . because Judge Campos no longer had jurisdiction over the Ortegas' case as of August 18, 1997, the filing date of the MDL Panel's order to the transferee district."); *In re: G.A.D., Inc. v. Loyer*, 340 F.3d 331, 335-336 (6th Cir. 2003) (if the rendering court lacked subject matter jurisdiction, the underlying judgment is void).

Accordingly, Merck represents that plaintiffs' Notice, Docket No. 21, has no bearing on these matters and the parties shall proceed with these actions in the United States District Court for the Eastern District of Louisiana.

Sincerely,

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC

*Alyson Jones*

Alyson B. Jones

Enclosures

cc:     All Counsel of Record (w/enc.)
        Clerk of Court



An Introduction to the Judicial Panel on Multidistrict Litigation

For additional information, please contact the Clerk's Office:

Judicial Panel on Multidistrict Litigation
One Columbus Circle, N.E.
North Lobby, Room G-255
Washington, DC 20002-8004

http://www.jpml.uscourts.gov

(202) 502-2800

(202) 502-2888 (Fax)



**Judicial Panel on Multidistrict Litigation**
One Columbus Circle, N.E.
North Lobby, Room G-255
Washington, DC 20002-8004
(202) 502-2800



## Origin and Purposes



The Judicial Panel on Multidistrict Litigation, known informally as the MDL Panel, was created by an Act of Congress in 1968 – 28 U.S.C. §1407. The job of the Panel is to 1) determine whether civil actions pending in different federal districts involve one or more common questions of fact such that the actions should be transferred to one federal district for coordinated or consolidated pretrial proceedings; and 2) select the judge or judges and court assigned to conduct such proceedings. The purposes of this transfer or "centralization" process are to avoid duplication of discovery, to prevent inconsistent pretrial rulings, and to conserve the resources of the parties, their counsel and the judiciary. Transferred actions not terminated in the transferee district are remanded to their originating transferor districts by the Panel at or before the conclusion of centralized pretrial proceedings.

## Historical Summary



Since its inception, the Panel has considered motions for centralization in over 1,600 dockets involving more than 200,000 cases and millions of claims therein. These dockets encompass litigation categories as diverse as airplane crashes, such as the SwissAir crash in Nova Scotia in 1998 and the TWA crash off Long Island, New York, in 1996; other single accidents such as train wrecks or hotel fires; mass torts, such as those involving asbestos, fen/phen diet drugs and hormone replacement therapy; patent validity and infringement; antitrust price fixing; securities fraud; and employment practices.

## Membership of the MDL Panel



The MDL Panel consists of seven sitting federal judges, who are appointed to serve on the Panel by the Chief Justice of the United States. The multidistrict litigation statute provides that no two Panel members may be from the same federal judicial circuit. The current Chairman of the Panel is Judge John G. Heyburn II, who sits in the Western District of Kentucky. The remaining Panel members, in order of seniority on the Panel, are Judges D. Lowell Jensen (N.D. California), J. Frederick Motz (D. Maryland), Robert L. Miller, Jr. (N.D. Indiana), Kathryn H. Vratil (D. Kansas), David R. Hansen (C.A. Eighth Circuit) and Anthony J. Scirica (C.A. Third Circuit).