IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE VIOXX MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) | MDL DOCKET NO. 1657 ALL CASES<br><br>2:05-CV-01005 |
| In re: Johnson v. Dabhade, et al. | ) | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>

NOW COME the Defendants, NARENDRA DABHADE, M.D., and NARENDRA DABHADE, M.D., LTD., by their attorneys, PRETZEL & STOUFFER, CHARTERED, and move this Honorable Court to dismiss Plaintiff's Complaint at Law with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support thereof, these Defendants hereby state as follows:

1.     The Plaintiff initiated the above-captioned lawsuit by filing a Complaint at Law on January 14, 2005. The allegations set forth in the Plaintiff's Complaint raise a cause of action for medical malpractice. A copy of Plaintiff's Complaint at Law is attached to this Motion and designated as Exhibit "A."

2.     Federal courts apply the requirements set forth in Section 5/2-622 of the Illinois Code of Civil Procedure to medical malpractice lawsuits pending in federal court. *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). In *Sherrod*, the Seventh Circuit stated that "Illinois law requires the plaintiff to file a physician's certificate of merit and accompanying report with every malpractice complaint in order to prevent frivolous lawsuits." 233 F.3d 605, 613.

1

3.      Attached to the Plaintiff's Complaint at Law is a physician's 2-622 report which sets forth alleged violations of the standard of care by the Defendants. A copy of the Physician's Report is attached to this Motion and designated as Exhibit "B." However, this medical report fails to identify the name or address of the certifying healthcare professional.

4.      In direct violation of 735 ILCS 5/2-622(a)(1), Plaintiff did not identify the name or address of her reviewing healthcare professional in her Section 2-622 report. As such, the Defendants are unable to determine the veracity of Plaintiff's certifying healthcare professional, whose opinions formed the basis for the filing of Plaintiff's Complaint at Law. The failure to identify the name and address of the health professional/consultant is contrary to 5/2-622(a)(1) (P.A. 90-579), which states as follows:

> "A copy of the written report clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists must be attached to the affidavit.  <u>The report shall include the name and address of the health professional</u>." (Emphasis Added)

5.      These two sentences are the last two sentences in the first paragraph of Section "a" of 735 ILCS 5/2-622 as it was adopted by the General Assembly and approved on May 1, 1998, the effective date of this law. This Act, PA 90-579, sets forth the most current and complete version of the statute. This Act was passed after the decision rendered by the Illinois Supreme Court in *Best v. Taylor*, which was issued by the Supreme Court on December 17, 1997.  179 Ill.2d 367, 689 N.E.2d 1057 (1997).

6.      Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law. *Illinois Power Company v. City of Jacksonville*, 18 Ill. App. 2d 618 (1960); *In Re: Sappington*, 106 Ill.2d 456

(1985). Furthermore, unless prohibited by the Constitution, the legislature has plenary power to enact such laws as it may see fit. It must be presumed in favor of an act of the legislature that the latter considered the constitutionality of its actions and determined that it was valid.

7.      In the instant case, the legislature passed P.A. 90-579 in May of 1998. This was approximately five months after the *Best v. Taylor* decision was handed down. The Act, which was passed by the legislature in May of 1998, sets forth the entire statute including the language as set forth above which requires a plaintiff's 2-622 report in medical negligence actions to include the name and address of the healthcare professional. Thus, the legislature acted after the *Best* decision and reaffirmed the version of 735 ILCS 5/2-622 as amended to include the language requiring the name and address of the reviewing health professional.

8.      The Illinois Appellate Court Fourth District in *Cargill v. Czelatdko*, 353 Ill. App. 3d 654, 818 N.E.2d 898, (4th Dist. 2004), ruled that Section 2-622 requires the name and address of the physician who authored the 2-622 report to be disclosed on the basis that Public Act 90-579 became effective after the Supreme Court's decision striking down amendments to the Healing Arts Malpractice Act in *Best*, effectively adding back in the requirement of Section 2-622. On March 30, 2005, the Illinois Supreme Court denied a petition for leave to appeal the *Cargill* ruling. 2005 WL 712405 (Ill. Mar. 30, 2005). "Section 2-622 is designed to reduce the number of frivolous lawsuits that are filed and to eliminate such actions at an early stage." *Cuthbertson v. Axelrod*, 282 Ill. App. 3d 1027, 1034, 669 N.E.2d 601 (1st Dist. 1996).

9.      In the instant litigation, Plaintiff's 2-622 report fails to comply with Section 2-622 in that it does not identify the name and address of the reviewing healthcare professional. Defendants sued in healing arts malpractice cases should have the right to know and confront their

3

accusers, to be able to investigate and challenge the background and qualifications of their accuser and be able to prevent false and unqualified accusations from being filed against them. Plaintiff suffers no prejudice by complying with Section 2-622, and this Court is empowered to enforce the applicable Illinois statute.

10.     "If a plaintiff does not comply with section 2-622, the trial court may in its discretion dismiss the complaint *with prejudice*." *Hobbs v. Lorenz*, 337 Ill. App. 3d 566, 786 N.E.2d 260, 263 (2nd Dist. 2003) (Emphasis added).

WHEREFORE, Defendants, NARENDRA DABHADE, M.D., and NARENDRA DABHADE, M.D., LTD., request this Court to enter an order dismissing the Plaintiff's claims against these Defendants, and any other relief this Court deems appropriate.

/s/Edward B. Ruff, III, Esq.
IL Bar No. _ARDC # 618332_
Michael P. Turiello
IL Bar No. _ARDC # 6238272_
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
(312) 346-7507 - Phone
(312) 346-8242 - Fax
ERuff@pretzel-stouffer.com
*Attorneys for Defendant*

4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that Memorandum of Law in Support of Motion to Dismiss was filed electronically this 21st day of September, 2007.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic system.

Antonio Maurizio Romanucci
Romanucci & Blandin
33 North LaSalle St.
Ste. 2200
Chicago, IL 60602

Stephen G. Strauss
Bryan Cave, LLP- St. Louis
211 N. Broadway
Suite 360
St. Louis, MO 63102-2750

Eugene Edward Murphy, Jr.
Bryan Cave - Chicago
161 N. Clark Street
Suite 4300
Chicago, IL 60601

/s/Edward B. Ruff, III, Esq.
IL Bar No.  ARDC # 618332
Michael P. Turiello
IL Bar No.  ARDC # 6238272
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive, Suite 2500
Chicago, Illinois  60606
(312) 346-7507 - Phone
(312) 346-8242 - Fax
ERuff@pretzel-stouffer.com
*Attorneys for Defendant*

5

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

LINDA JOHNSON, as Special Administrator )
of the Estate of JOHN JOHNSON, Deceased, )
                                            )
          Plaintiff, )
                                             )
      v.                                ) No.
                                            ) Plaintiff Demands a Trial by Jury
NARENDRA DABHADE, M.D., )
NARENDRA D. DABHADE, M.D., LTD., )
MERCK CO., INC., )
                                            )
         Defendants. )

04L 014533
CALENDAR E
MED. MAL PRACTICE

## COMPLAINT AT LAW

NOW COMES Plaintiff LINDA JOHNSON, as Special Administrator of the Estate

of JOHN JOHNSON, Deceased, by and through his attorneys, ROMANUCCI & BLANDIN,

L.L.C., and complaining of Defendant NARENDRA DABHADE, M.D., NARENDRA D.

DABHADE, M.D., LTD., MERCK CO., INC., pleading hypothetically and in the alternative,

states as follows:

### COUNT I - WRONGFUL DEATH/SURVIVAL/FAMILY EXPENSE ACT
### NARENDRA DABHADE, M.D.

1.     On September 19, 2004, LINDA JOHNSON was the lawful wife of JOHN

JOHNSON.

2.     On December 30, 2004, LINDA JOHNSON was appointed Special

Administrator of the Estate of JOHN JOHNSON, deceased, by the Circuit Court of Cook

County, Law Division.

3.     That at all times relevant herein, NARENDRA DABHADE, M.D., was a

1



physician duly licensed in the practice of his profession in the County of Cook, State of Illinois.

4.     That JOHN JOHNSON was under the continuous care and treatment of the Defendant, NARENDRA DABHADE, M.D., from January 1, 2004-September 19, 2004, and prior thereto.

5.     That it then and there became the duty of defendant NARENDRA DABHADE, M.D., to render medical services consistent with the medical needs of JOHN JOHNSON.

6.     That there was a duty on the part of the Defendant, NARENDRA DABHADE, M.D., to treat JOHN JOHNSON in accordance with accepted standards of prevailing medical practices and opinion.

7.     On September 13, 2004, and prior thereto, plaintiff JOHN JOHNSON was prescribed VIOXX by defendant NARENDRA DABHADE, M.D.

8.     On September 13, 2004, and prior thereto, plaintiff JOHN JOHNSON was under the care of Defendant NARENDRA DABHADE, M.D., and  NARENDRA D. DABHADE, M.D., LTD.

9.     That the Defendant, NARENDRA DABHADE, M.D., knew and/or should have known that VIOXX was contraindicated for plaintiff JOHN JOHNSON and created a risk of the occurrence of serious cardiovascular events.

10.     After assuming the care of JOHN JOHNSON, the Defendant, NARENDRA DABHADE, M.D., committed one or more of the following acts and/or omissions:

2

    a.       Improperly prescribed VIOXX to Plaintiff knowing that it was contraindicated for JOHN JOHNSON;

    b.       Improperly prescribed VIOXX to Plaintiff knowing that he was at risk for future cardiac problems;

    c.       Improperly prescribed VIOXX to Plaintiff knowing that he had a history of cardiac problems;

    d.       Failed to warn the plaintiff that VIOXX should not be used in patients with a history of cardiac problems;

    e.       Failed to warn the plaintiff of the risks associated with the use of VIOXX in individuals with a history of cardiac problems;

    f.       Improperly prescribed VIOXX by phone without regard for Plaintiff's medical history.

10.      That as a result of one or more of the foregoing negligent acts and/or omissions, JOHN JOHNSON suffered injuries of a personal and pecuniary nature that caused his death on September 19, 2004.

11.      That JOHN JOHNSON's injuries and subsequent death were a direct and proximate result of one or more of the foregoing acts and/or omissions of Defendant, NARENDRA DABHADE, M.D.

12.      As a proximate result of defendants' negligence and of JOHN JOHNSON's death, his next of kin have suffered injuries and damages, including but not limited to, loss of support and loss of society, for which the LINDA JOHNSON, as Special Administrator of the Estate of JOHN JOHNSON, demands compensation pursuant to the Illinois Wrongful Death Act.

13.      At the time of his death, JOHN JOHNSON left surviving as his next of kin:

3

LINDA JOHNSON, decedent's surviving wife, and Anthony Johnson, Richard Johnson, Daniel Johnson, Joseph Johnson, Christina Johnson, and Angela Johnson, decedent's children.

14.    As a proximate result of defendant's negligence, JOHN JOHNSON sustained injuries and damages on September 19, 2004, continuing until his death, including pain, suffering, disability, disfigurement and obligations for hospital, physician and medical services, for which his Estate demands compensation pursuant to the Illinois Survival Act.

15.    As a proximate result of defendants' negligence, and of the treatment necessitated for the injuries sustained by JOHN JOHNSON, LINDA JOHNSON has become obligated to pay various medical, hospital, funeral, and burial expenses, for which she claims damages pursuant to the Illinois Family Expense Act.

WHEREFORE, plaintiff LINDA JOHNSON, as Special Administrator of the Estate of JOHN JOHNSON, Deceased, PRAYS judgment against defendant NARENDRA DABHADE, M.D., in such an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus the costs of this lawsuit.

## COUNT II - WRONGFUL DEATH/SURVIVAL/FAMILY EXPENSE ACT
### NARENDRA D. DABHADE, M.D., LTD.

1.    On September 19, 2004, LINDA JOHNSON was the lawful wife of JOHN JOHNSON.

2.    On December 30, 2004, LINDA JOHNSON was appointed Special Administrator of the Estate of JOHN JOHNSON, deceased, by the Circuit Court of Cook County, Law Division.

4

3.      On or about September 19, 2004, prior thereto and thereafter, defendant NARENDRA D. DABHADE, M.D., LTD., was a medical service corporation, licensed and doing business in the State of Illinois and employed medical personnel and held itself out to the general public as a medical service corporation, properly skilled in the care and treatment of persons in the condition of the plaintiff JOHN JOHNSON, with offices in the County of Cook and State of Illinois.

4.      Plaintiff JOHN JOHNSON presented to/contacted defendant NARENDRA D. DABHADE, M.D., LTD., on or about September 19, 2004, and prior thereto, for medical treatment.

5.      Plaintiff JOHN JOHNSON was continuously treated by defendants NARENDRA DABHADE, M.D., and NARENDRA D. DABHADE, M.D., LTD., from January 1, 2004- September 19, 2004, and prior thereto.

6.      On or about September 13, 2004, and thereafter, medical doctors, nurses, and other health care workers were employees, servants and/or agents of defendant NARENDRA D. DABHADE, M.D., LTD., and were under the direction, supervision and/or control of NARENDRA D. DABHADE, M.D., LTD.

7.      It then and there became the duty of NARENDRA D. DABHADE, M.D., LTD., through its agents, employees, and servants, to act like a reasonably well qualified health care personnel of the same or similar training would act in the same or similar circumstances.

8.      On September 13, 2004, and prior thereto, plaintiff JOHN JOHNSON was

5

prescribed VIOXX by defendant NARENDRA DABHADE, M.D.

9. That the Defendant, NARENDRA DABHADE, M.D., knew and/or should have known that VIOXX was contraindicated for plaintiff JOHN JOHNSON and created a risk of the occurrence of serious cardiovascular events.

10. Defendant NARENDRA DABHADE, M.D., was an agent and/or employee of defendant NARENDRA D. DABHADE, M.D., LTD., at all relevant times herein.

11. Defendant NARENDRA DABHADE, M.D.'s care of the plaintiff was within the scope of her duties as an employee and agent of defendant NARENDRA D. DABHADE, M.D., LTD., at all relevant times herein.

12. Defendant NARENDRA D. DABHADE, M.D., LTD., held defendant NARENDRA DABHADE, M.D., out to the community and to the Plaintiff as an actual and/or apparent agent.

13. After assuming the care of JOHN JOHNSON, the Defendant, NARENDRA D. DABHADE, M.D., LTD., committed one or more of the following acts and/or omissions:

    a. Improperly prescribed VIOXX to Plaintiff knowing that it was contraindicated for JOHN JOHNSON;

    b. Improperly prescribed VIOXX to Plaintiff knowing that he was at risk for future cardiac problems;

    c. Improperly prescribed VIOXX to Plaintiff knowing that he had a history of cardiac problems;

    d. Failed to warn the plaintiff that VIOXX should not be used in patients with a history of cardiac problems;

    e. Failed to warn the plaintiff of the risks associated with the use of VIOXX in individuals with a history of cardiac problems;

6

     f.     Improperly prescribed VIOXX by phone without regard for Plaintiff's medical history.

14.     That as a result of one or more of the foregoing negligent acts and/or omissions, JOHN JOHNSON suffered injuries of a personal and pecuniary nature that caused his death on September 19, 2004.

15.     That JOHN JOHNSON's injuries and subsequent death were a direct and proximate result of one or more of the foregoing acts and/or omissions of Defendant, NARENDRA D. DABHADE, M.D., LTD.

16.     As a proximate result of defendants' negligence and of JOHN JOHNSON's death, his next of kin have suffered injuries and damages, including but not limited to, loss of support and loss of society, for which the LINDA JOHNSON, as Special Administrator of the Estate of JOHN JOHNSON, demands compensation pursuant to the Illinois Wrongful Death Act.

17.     At the time of his death, JOHN JOHNSON left surviving as his next of kin: LINDA JOHNSON, decedent's surviving wife, and Anthony Johnson, Richard Johnson, Daniel Johnson, Joseph Johnson, Christina Johnson, and Angela Johnson, decedent's minor children.

18.     As a proximate result of defendant's negligence, JOHN JOHNSON sustained injuries and damages on September 19, 2004, continuing until his death, including pain, suffering, disability, disfigurement and obligations for hospital, physician and medical services, for which his Estate demands compensation pursuant to the Illinois Survival Act.

7

19.     As a proximate result of defendants' negligence, and of the treatment necessitated for the injuries sustained by JOHN JOHNSON, LINDA JOHNSON has become obligated to pay various medical, hospital, funeral, and burial expenses, for which she claims damages pursuant to the Illinois Family Expense Act.

WHEREFORE, plaintiff LINDA JOHNSON, as Special Administrator of the Estate of JOHN JOHNSON, Deceased, PRAYS judgment against defendant NARENDRA D. DABHADE, M.D., LTD., in such an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus the costs of this lawsuit.

## COUNT III - WRONGFUL DEATH/SURVIVAL/FAMILY EXPENSE ACT
### MERCK CO., INC.

1.     On September 19, 2004, LINDA JOHNSON was the lawful wife of JOHN JOHNSON.

2.     On December 30, 2004, LINDA JOHNSON was appointed Special Administrator of the Estate of JOHN JOHNSON, deceased, by the Circuit Court of Cook County, Law Division.

3.     On and before September 19, 2004, and at all times material, JOHN JOHNSON, was a resident of the State of Illinois.

4.     On and before September 19, 2004, and at all times material, MERCK was incorporated in the State of New Jersey with its principal place of business in State of New Jersey.

5.     On and before September 19, 2004, and at all times material, MERCK was transacting business in Cook County, in Illinois.

8

6.     On and or before September 19, 2004, and at all times material, MERCK researched a pharmaceutical known as VIOXX.

7.     On and or before September 19, 2004, and at all times material, MERCK developed a pharmaceutical known as VIOXX.

8.     On and before September 19, 2004, and at all times material, MERCK formulated a pharmaceutical known as VIOXX.

9.     On and before September 19, 2004, and at all times material, MERCK manufactured a pharmaceutical known as VIOXX.

10.    On and before September 19, 2004, and at all times material, MERCK produced a pharmaceutical known as VIOXX.

11.    On and before September 19, 2004, and at all times material, MERCK marketed a pharmaceutical drug known as VIOXX.

12.    On and before September 19, 2004, and at all times material, MERCK sold a pharmaceutical known as VIOXX.

13.    On and about September 13, 2004, JOHN JOHNSON was prescribed VIOXX.

14.    JOHN JOHNSON was administered VIOXX from September 13, 2004, or prior thereto, until his date of death, September 19, 2004.

15.    On or about September 19, 2004, JOHN JOHNSON suffered ventricular fibrillation, due to, or as a consequence of, VIOXX.

16.    On September 19, 2004, JOHN JOHNSON died as a result of the aforementioned ventricular fibrillation due to VIOXX.

9

17.     On or before September 19, 2004, and at all times material, MERCK was negligent in one or more of the following respects:

a.     Formulating VIOXX in a manner which increased the risk of cardiovascular problems at a higher rate than those individuals taking other similar drugs; or

b.     Failing to properly address and/or investigate the issue of cardiovascular risks through controlled clinical trials;

c.     Failing to properly warn doctors of the increased cardiovascular risks of VIOXX; or

d.     Failing to properly warn the public of the increased cardiovascular risks resulting from VIOXX; or

e.     Failing to properly warn doctors of known potentially dangerous interactions that VIOXX would have with other prescriptions medications; or

f.     Failing to properly warn the general public of the known potentially dangerous interactions that VIOXX would have with other prescription medications; or

g.     Misrepresenting the safety of VIOXX to the public at large and minimizing the significant cardiovascular risks presented by the drug; or

h.     Was otherwise negligent.

18.     As a direct and proximate result of one or more of the foregoing negligent acts or omissions committed by Defendant MERCK, Plaintiff JOHN JOHNSON sustained injuries and damages on September 19, 2004, continuing until his death, including pain, suffering, disability, disfigurement and obligations for hospital, physician and medical services, for which his Estate demands compensation pursuant to the Illinois Survival Act.

19.     As a proximate result of defendants' negligence and of JOHN JOHNSON's

10

death, his next of kin have suffered injuries and damages, including but not limited to, loss of support and loss of society, for which the LINDA JOHNSON, as Special Administrator of the Estate of JOHN JOHNSON, demands compensation pursuant to the Illinois Wrongful Death Act.

20.     At the time of his death, JOHN JOHNSON left surviving as his next of kin: LINDA JOHNSON, decedent's surviving wife, and Anthony Johnson, Richard Johnson, Daniel Johnson, Joseph Johnson, Christina Johnson, and Angela Johnson, decedent's minor children.

21.     As a proximate result of defendants' negligence, and of the treatment necessitated for the injuries sustained by JOHN JOHNSON, LINDA JOHNSON has become obligated to pay various medical, hospital, funeral, and burial expenses, for which she claims damages pursuant to the Illinois Family Expense Act. injuries of a personal and pecuniary nature that caused his death on September 19, 2004.

22.     On or about September 20, 2004, Defendant MERCK withdrew VIOXX from the market.

23.     Plaintiff, JOHN JOHNSON, did not know, and could not have known, of the potential relationship between VIOXX and his cardiovascular injuries before September 20, 2004.

WHEREFORE Plaintiff JOHN JOHNSON prays for judgment against Defendant MERCK, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000), which shall represent fair and just compensation.

11

## COUNT IV - PRODUCTS LIABILITY
### MERCK CO., INC.

1.      On and before September 19, 2004, and at all times material, JOHN JOHNSON, was a resident of the State of Illinois.

2.      On and before September 19, 2004, and at all times material, MERCK was incorporated in the State of New Jersey with its principal place of business in the

3.      On and or before September 19, 2004, and at all times material, MERCK was transacting business in Cook County, in Illinois.

4.      On and or before September 19, 2004, and at all times material, MERCK researched a pharmaceutical known as VIOXX.

5.      On and or before September 19, 2004, and at all times material, MERCK developed a pharmaceutical known as VIOXX.

6.      On and or before September 19, 2004, and at all times material, MERCK formulated a pharmaceutical known as VIOXX.

7.      On and or before September 19, 2004, and at all times material, MERCK manufactured a pharmaceutical known as VIOXX.

8.      On and or before September 19, 2004, and at all times material, MERCK produced a pharmaceutical known as VIOXX.

9.      On and or before September 19, 2004, and at all times material, MERCK marketed a pharmaceutical drug known as VIOXX.

10.     On and or before September 19, 2004, and at all times material, MERCK sold a pharmaceutical known as VIOXX.

12

11.     On and about September 13, 2004, JOHN JOHNSON was prescribed VIOXX.

12.     JOHN JOHNSON was administered VIOXX from September 13, 2004, or prior thereto, until his date of death, September 19, 2004.

13.     JOHN JOHNSON consumed VIOXX in the manner in which it was intended to be used.

14.     JOHN JOHNSON consumed VIOXX in the same condition as when it left the control of MERCK.

15.     On or about September 19, 2004, JOHN JOHNSON suffered ventricular fibrillation, due to, or as a consequence of, VIOXX

16.     On September 19, 2004, JOHN JOHNSON died as a result of the aforementioned ventricular fibrillation as a result of VIOXX

17.     On or before September 19, 2004, and at all times material, VIOXX was unreasonably dangerous in one or more of the following respects:

a.     Its consumers at a greater risk for cardiovascular problems, as compared to individuals taking other similar drugs; or

b.     Its cardiovascular risks were not properly investigated through controlled clinical trials; or

c.     It was not labeled with a warning sufficient to alert doctors of the increased cardiovascular risks of VIOXX; or

d.     It was not labeled with a warning sufficient to alert the public of the increased cardiovascular risks resulting from VIOXX; or

e.     It was not labeled with a warning sufficient to alert doctors of known potentially dangerous interactions that VIOXX would have with other

13

prescription medications; or

f.    It was not labeled with a warning sufficient to alert the general public of the known potentially dangerous interactions that VIOXX would have with other prescription medications; or

g.    It was labeled and marketed in a way that misrepresented it as safe to the public at large and minimized the cardiovascular risks it posed to consumers; or

h.    Was otherwise negligent.

18.    As a proximate result of defendants' negligence and of JOHN JOHNSON's death, his next of kin have suffered injuries and damages, including but not limited to, loss of support and loss of society, for which the LINDA JOHNSON, as Special Administrator of the Estate of JOHN JOHNSON, demands compensation pursuant to the Illinois Wrongful Death Act.

19.    At the time of his death, JOHN JOHNSON left surviving as his next of kin: LINDA JOHNSON, decedent's surviving wife, and Anthony Johnson, Richard Johnson, Daniel Johnson, Joseph Johnson, Christina Johnson, and Angela Johnson, decedent's minor children.

20.    As a direct and proximate result of one or more of the aforementioned acts or omissions, Plaintiff JOHN JOHNSON sustained injuries and damages on September 19, 2004, continuing until his death, including pain, suffering, disability, disfigurement and obligations for hospital, physician and medical services, for which his Estate demands compensation pursuant to the Illinois Survival Act.

21.    As a proximate result of defendants' negligence, and of the treatment

14

necessitated for the injuries sustained by JOHN JOHNSON, LINDA JOHNSON has become obligated to pay various medical, hospital, funeral, and burial expenses, for which she claims damages pursuant to the Illinois Family Expense Act. injuries of a personal and pecuniary nature that caused his death on September 19, 2004.

22.    On or about September 20, 2004, Defendant MERCK withdrew VIOXX from the market.

23.    Plaintiff JOHN JOHNSON did not know, and could not have known, of the potential relationship between VIOXX and his cardiovascular injuries before September 20, 2004.

WHEREFORE Plaintiff JOHN JOHNSON prays for judgment against Defendant MERCK, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000), which shall represent fair and just compensation.

Respectfully Submitted,

*Stephanie Nathanson*

One of Plaintiffs' Attorneys

Antonio M. Romanucci, Esq.
Stephanie K. Nathanson, Esq.
ROMANUCCI & BLANDIN
33 North LaSalle Street
Suite 2000
Chicago, Illinois 60602
(312) 458-1000

15

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

LINDA JOHNSON, as Special Administrator )
of the Estate of John Johnson, Deceased, )
                                         )
            Plaintiff,                   )
                                         )
                                         )
v.                                       )
                                         )   No. 04L 014533
                                         )
NARENDRA DABHADE, M.D.,                  )
NARENDRA D. DABHADE, M.D., LTD.,         )
MERCK CO., INC                           )
                                         )
            Defendant.                   )

## NOTICE TO CIRCUIT CLERK

PLEASE TAKE NOTICE that on the 20th day of January, 2005, Defendant Merck & Co., Inc. filed in the United States District Court for the Northern District of Illinois, Eastern Division, a Notice of Removal in the above entitled action to remove said action to the United States District Court for the Northern District of Illinois, Eastern Division, a true and correct copy of which is attached hereto and filed herewith, pursuant to provisions of § 1446(d) of Title 28 United States Code.

Dated: January 20th, 2005.

Respectfully submitted,

BRYAN CAVE LLP

By: _____
Eugene E. Murphy, Jr.
Erin F. Martin
161 North Clark Street
Suite 4800
Chicago, IL 60601
Attorney No. 40886
Telephone: (312) 602-5000
Facsimile: (312) 602-5050

2014811

1

Stephen G. Strauss
Bryan Cave LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
Telephone: (314) 259-2000
Facsimile: (314) 259-2020

and

Norman C. Kleinberg
Theodore V.H. Mayer
Charles Avrith
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000

*Attorneys for Merck & Co., Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing NOTICE TO CIRCUIT CLERK was served via U. S. First Class Mail, postage prepaid, this 20th day of January, 2005, to the following:

> Antonio M. Romanucci, Esq.
> Stephanie K. Nathanson, Esq.
> Romanucci & Blandin
> 33 North LaSalle Street
> Suite 2000
> Chicago, IL 60602

Erin F. Martin

2014811

Antonio M. Romanucci
Stephanie K. Nathanson
ROMANUCCI & BLANDIN
33 N. LaSalle Street, 20th Floor
Chicago, Il 60602

re:     John Johnson, deceased

Dear Counsel:

I have reviewed the medical records from Dr. Narendrea Dabhade, Narenda D. Dabhade, M.D., Ltd, Dr. Jeffrey S. Meisles, Gottlieb Memorial Hospital, Elmhurst Memorial Hospital, Midwest Heart Specialists and Dr. Brottman, concerning John Johnson, deceased. I am currently an internist and rheumatologist licensed to practice medicine in all of its branches; I have actively practiced within the past ten years; and I am board certified in Internal Medicine. I am knowledgeable about the management of VIOXX. Based upon my review of these records, I find there is a reasonable and meritorious basis for filing a lawsuit against Dr. Narendrea Dabhade, Narenda D. Dabhade, M.D., Ltd.

### Dr. Narendrea Dabhade, Narenda D. Dabhade, M.D., Ltd.

The facts upon which I base this opinion are that in February of 2004, Dr.Jeffrey S. Meisles performed arthroscopy and prescribed VIOXX to John Johnson, deceased. Dr. Meisles corresponded with Dr. Dabhade, John Johnson's primary care physician, on March 11, 2004, suggesting that Dr. Dabhade ensure that John Johnson fill and take the VIOXX prescription. Dr. Dabhade then prescribed VIOXX to John Johnson starting in March of 2004 through September of 2004. The VIOXX prescriptions caused a significant elevation in John Johnson's blood pressure and he was significantly hypertensive. John Johnson was given VIOXX without regard to his previous medical history of cardiomyopathy, which constituted a breach in the standard of care. John Johnson's elevation in his blood pressure caused and/or contributed to his untimely death at the age of fifty years old. But for the aforesaid VIOXX prescription, consistently prescribed by Dr. Dabhade, John Johnson would have died. From 2001 to present, physicians knew and had been given ample warning that VIOXX was a risk factor for cardiovascular patients. In cardiovascular patients, VIOXX was a risk factor for heart disease and death. Specifically, in March of 2004, physicians, such as Dr. Dabhade, were aware that prescribing VIOXX to patients with heart disease was a significant risk factor. Physicians, such as Dr. Dabhade, had and have an independent duty to their patients to evaluate whether the prescription of VIOXX was safe for that particular patient. In this case, the prescription of VIOXX was not safe for John Johnson due to his cardiovascular medical history.  These breaches in the standard of care were a proximate cause of the heart failure and subsequent death of John Johnson on September 19, 2004.

Sincerely,



DEFENDANT'S EXHIBIT
B