IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE VIOXX MARKETING, | ) | MDL DOCKET NO. 1657 |
| SALES PRACTICES, AND | ) | ALL CASES |
| PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | 2:05-CV-02562 |
|  | ) | |
|  | ) | |
| In Re: Brown v. Merck & Co.  Inc., et al | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

NOW COME the Defendants, THOMAS A. STERN, M.D., and THOMAS A STERN, M.D.,

S.C.,  by their attorneys, PRETZEL & STOUFFER, CHARTERED, and pursuant to Federal Rule

of Civil Procedure 12(b)(6), move this Honorable Court to enter an order dismissing these

Defendants from the above-captioned lawsuit, with prejudice, as the Plaintiff has failed to file the

Healthcare Professional Report required by Illinois law.  In support thereof, these Defendants state

as follows:

1.      The Plaintiff initiated the above-captioned lawsuit by filing a Complaint at Law

in the Circuit Court for Cook County, Illinois, on January 14, 2005.  The allegations set forth in the

Plaintiff's Complaint allege a cause of action for medical malpractice.  A copy of the Plaintiff's

Complaint is attached to this Motion and designated as Exhibit "A."

2.      Federal courts apply the requirements set forth in 735 ILCS 5/2-622 of the Illinois

Code of Civil Procedure to medical malpractice lawsuits pending in federal court.  Sherrod v.

Lingle, 223 F.3d 605, 613 (7th Cir. 2000).  In Sherrod, the Seventh Circuit stated that "Illinois law

1

requires the plaintiff to file a physician's certificate of merit and accompanying report with every malpractice complaint in order to prevent frivolous lawsuits." 233 F.3d at 613.

    3.     Pursuant to 735 ILCS 5/2-622(a)(2), an Affidavit of Counsel provides the plaintiff with an extension of 90-days for the filing of the Healthcare Professional Report.

    4.     Further, no additional 90-day extensions pursuant to 735 ILCS 5/2-622(a)(2) shall be granted, except where there has been a withdrawal of the plaintiff's counsel.  There has not been a withdrawal of plaintiff's counsel in the instant matter.

    5.     Neither an Affidavit of Counsel nor a Healthcare Professional Report were attached to Plaintiff's Complaint or timely filed in this case.

    6.     735 ILCS 5/2–622(g) specifies that a failure to file the certificate required "shall be grounds for dismissal under Section 2-619."  Accordingly, the trial court has the discretion under Illinois law to dismiss with prejudice any medical malpractice action filed when a plaintiff fails to timely file the Healthcare Professional Report and Attorney Certificate required by Illinois Law. Premo v. Falcone, 197 Ill. App. 3d 625, 554 N.E.2d 1071 (2nd Dist. 1990).

    7.     Plaintiff has failed to comply with 735 ILCS 5/2-622 of the Illinois Code of Civil Procedure because she has not filed a report of a health professional who determined that there is a reasonable and meritorious cause for filing this action.  Accordingly, the Court should dismiss the Plaintiff's Complaint at Law with prejudice pursuant to 735 ILCS 5/2-622 and Federal Rule of Civil Procedure 12(b)(6).

WHEREFORE, Defendants, THOMAS A. STERN, M.D., and THOMAS A STERN, M.D.,

S.C., request this Court to enter an order dismissing the Plaintiff's claims against these Defendants,

and any other relief this Court deems appropriate.

/s/Edward B. Ruff, III, Esq.
IL Bar No.  ARDC # 618332
Michael P. Turiello
IL Bar No.  ARDC # 6238272
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
(312) 346-7507 - Phone
(312) 346-8242 - Fax
ERuff@pretzel-stouffer.com
*Attorneys for Defendant*

3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that Memorandum of Law in Support of Motion to Dismiss was filed electronically this 24th day of September, 2007. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

Richard Frances Burke, Jr.
Clifford Law Offices, P.C.
120 N. LaSalle St.
31st Floor
Chicago, IL 60602

Eugene Edward Murphy, Jr.
Bryan Cave - Chicago
161 N. Clark Street
Suite 4300
Chicago, IL 60601

Richard C. Stanley
Stanley, Flanagan & Reuter, LLC
LL&E Tower
909 Poydras St.
Suite 2630
New Orleans, LA 70112

Norman Charles Kleinberg
Hughes, Hubbard & Reed, LLP
Battery Park Ofc.
One Battery Park Plaza
New York, NY 10004

Phillip A. Whittmann
Stone Pigman Walther Wittmann, LLC
546 Carondelet St.
New Orleans, LA 70130

Stephen G. Strauss
Bryan Cave, LLP - St. Louis
211 N. Broadway
Suite 3600
St. Louis, MO 63102

Thomas J. Andrews
Johnson & Bell, Ltd.
55 East Monroe Street
Suite 4100
Chicago, IL 60603

Sherri L.Tarr
Clifford Law Offices, PC
120 N. LaSalle Street
31st Floor
Chicago, IL 60602

/s/Edward B. Ruff, III, Esq.
IL Bar No.  ARDC # 618332
Michael P. Turiello
IL Bar No.  ARDC # 6238272
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive, Suite 2500
Chicago, Illinois  60606
(312) 346-7507 - Phone
(312) 346-8242 - Fax
ERuff@pretzel-stouffer.com
*Attorneys for Defendant*

3LT   (04-0151)

FILED
2005 JAN 14 PM 4: 22
DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

KATHLEEN E. BROWN, Special Administrator )
of the Estate of ROSS SILVESTRI BROWN, )
Deceased, )
 )
                Plaintiff, )
 )
v. )
 )
MERCK & CO., INC., a corporation, )
AMERICAN STORES COMPANY, a corporation, )
AMERICAN DRUG STORES, INC., a corporation, )
d/b/a OSCO DRUG, a corporation, )
THOMAS A. STERN, M.D. ......, )
THOMAS A. STERN, M.D., S.C., a corporation, )
 )
              Defendants. )

No.:

*Plaintiff Demands Trial by Jury*

05L 000540
CALENDAR B
PRODUCT LIABILITY

## COMPLAINT AT LAW

NOW COMES Plaintiff, KATHLEEN E. BROWN, Special Administrator of the Estate of

ROSS SILVESTRI BROWN, by and through her attorneys, CLIFFORD LAW OFFICES, P.C., and

complaining of Defendants, MERCK & CO., INC., a corporation, AMERICAN STORES

COMPANY, a corporation, AMERICAN DRUG STORES INC., a corporation, d/b/a OSCO DRUG,

a corporation, THOMAS A. STERN, M.D., and THOMAS A. STERN, M.D., S.C., a corporation,

states as follows:

### PARTIES

1.    At all times relevant to this action, Plaintiff, KATHLEEN BROWN, Special

Administrator of the Estate of ROSS SILVESTRI BROWN, and ROSS SILVESTRI BROWN,

Deceased, were residents of Cook County, in the State of Illinois.

1



2.    At all times relevant to this action, Defendant, MERCK & CO. [hereinafter "MERCK"], was a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at One MERCK Drive, White House Station, New Jersey 08889.

3.    At all times relevant hereto, Defendant, MERCK & CO., was doing and transacting business in Cook County, the State of Illinois.

4.    At all times relevant hereto, Defendant, MERCK was engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical drug, VIOXX.

5.    At all times relevant hereto, Defendant, MERCK, knew that VIOXX would be prescribed by physicians to patients and those patients would ingest VIOXX.

6.    On or about January 2002, Plaintiff's Decedent, ROSS SILVESTRI BROWN, was prescribed VIOXX by his physician, Defendant, THOMAS A. STERN, M.D. [hereinafter "STERN, M.D."]

7.    On and after January 2002, and at all times mentioned herein, Defendant, STERN, M.D., was a physician duly licenced to practice medicine in the State of Illinois.

8.    On and after January 2002, and at all times mentioned herein, Defendant, STERN, M.D., was a duly authorized agent and employee of Defendant, THOMAS A. STERN, M.D., S.C., [hereinafter "STERN, M.D., S.C."], and was acting within the scope of his agency and employment.

9.    On and after January 2002, and at all times mentioned herein, Defendant, AMERICAN DRUG STORES, INC., an Illinois corporation, was a wholly-owned subsidiary of Defendant, AMERICAN STORES COMPANY, an Illinois corporation.

10.     On and after January 2002, and at all times mentioned herein, Defendant, AMERICAN DRUG STORES, INC, an Illinois corporation, was doing business as Defendant, OSCO DRUG [hereinafter "OSCO"], a pharmacy chain duly authorized to provide pharmaceutical care and treatment to patients like Plaintiff's decedent, ROSS SILVESTRI BROWN.

11.     On and after January 2002, and at all times mentioned herein, Defendant, AMERICAN   DRUG STORES, INC., doing business as Defendant, OSCO DRUG            , owned, operated, managed, maintained and controlled a drug store located at 2502 Waukegan Road in the City of Glenview, in the State of Illinois, where Plaintiff's decedent had his prescription for VIOXX filled.

## FACTS COMMON TO ALL COUNTS

12.     VIOXX is the brand name of rofecoxib, one of class of drugs called "prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis and muscle pain. Prostaglandins are COX (cyclooxygenase) inhibitors; COX enzymes metabolize arachidonic acid to produce prostaglandins.

13.     VIOXX is a COX-2 inhibitor, which is designed to produce prostaglandins at inflammatory sites, and to produce prostacyclin, a vasodilator and an inhibitor of platelet aggregation.

14.     Defendant, MERCK submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on November

3

'23, 1998, for tablets, at doses of 12.5 mg and 25 mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-042 by the FDA.

15.    Defendant, MERCK also submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on November 23, 1998, for oral suspension, at doses of 12.5 mg/mL and 25 mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted NDA 21-052 by the FDA.

16.    On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 (hereinafter the "NDA") for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.

17.    At the time the drug was approved by the FDA the labeling for rofecoxib stated, in the section entitled "Special Studies -- Upper Endoscopy in Patients with Osteoarthritis," "Treatment with VIOXX 25 mg daily or 50 mg daily was associated with a significantly lower percentage of patients with endoscopic gastroduodenal ulcers than treatment with ibuprofen 2400 mg daily. However, the studies could rule out at least some increase in the rate of endoscopic gastroduodenal ulcers when comparing VIOXX to placebo."

18.    The "Warnings" section of the labeling for rofecoxib, at the time the drug was approved by the FDA, contained a section, "Gastrointestinal (GI) Effects -- Risk of GI Ulceration, Bleeding, and Perforation."

19.    Defendant, MERCK submitted NDA-007 with the goal of establishing a gastrointestinal ("GI") safety claim for rofecoxib. In conjunction with the FDA, Defendant, MERCK

4

performed the VIOXX GI Outcomes Research (VIGOR) Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-0966 or Naproxen in Patients With Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was performed from January 6, 1999 through March 17, 2000.

20.     The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MK-0966 50 mg daily compared to patients in the group taking naproxen 1000 mg/day," and '2) "study the safety and tolerability of MK-0966 in patients with rheumatoid arthritis."

21.     In industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which MERCK is a member and corporate sponsor, in June of 2000, it was shown that VIOXX use resulted in a statistically significant increase in hypertension and stroke. Not only did MERCK do nothing to further accurately publish these studies, or warn consumers, but it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today, *Spin War Aside, Lessons Emerge From COX-2 Trials,* in August 2000, page 3.

22.     MERCK continued to deny the ill health effects associated with VIOXX while at the same time reaping profits obtained through its non-disclosure and concealment. MERCK engaged in a massive advertising and sampling program and gained continued increases in the market share, which enhanced MERCK's financial stability to the detriment of its consumers. As a result of MERCK's scheme, it reaped more than $2 billion in profit in the year 2000 alone, and appropriated approximately 23 percent share of the market.

23.     MERCK continued to profit from its scheme by withholding information from

5

Plaintiff, the consuming public, and the health care industry. For example, in November of 2000, MERCK caused the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with VIOXX consumption over naproxen consumption.

24.     On or about August 29, 2001, the Journal of the American Medical Association (JAMA) published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukhisjee, et al., showing what MERCK had concealed that the relative risk of developing a "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") among VIOXX users in MERCK's trials, including VIGOR, at a 95% confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients. *See* Mukhisjee, D., et al., Risk *of Cardiovascular Events Associated With Selective Cox-2 Inhibitors, J.A.M.A. 286:8,* 954-959, Aug. 22/29, 2001. In addition, the annualized myocardial infarction rates for VIOXX users compared to placebo revealed a statistically significant increase among VIOXX users.

25.     In the JAMA study, the authors stated that "by decreasing PG12 production [VIOXX] may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PG12, potentially leading to an increase in thrombotic cardiovascular events." *Id.* at 957. In a follow-up peer-reviewed study reported in the Journal of the American College of Cardiology on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the Cox-2 inhibitor "tips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased

6

vascular and thrombotic events." Bing, R., & Lomnicka, M., *Why Do CycloOxygenase-2 Inhibitors Cause Cardiovascular Events?, J.A.C.C., 39:3,* Feb. 6, 2002. This was further supported by studies completed at the University of Pennsylvania. Cheng, Y., et al., *Role of Prostacy=clip in the Cardiovascular Response to Thromboxane A2,* Journal of Science, V. *296:539-541, Apr. 19, 2002.*

26.     On September 17, 2001, Thomas W. Abrams, R.Ph., MBA, Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin, President and CEO of Defendant, MERCK, relating to "promotional activities and materials for the marketing of VIOXX (rofecoxib) tablets."

27.     The Warning Letter stated *inter alia* that Defendant, MERCK had "engaged in a promotional campaign for VIOXX that minimizes the potentially serious cardiovascular findings that were observed in the VIOXX Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for VIOXX."

28.     On April 11, 2002, the FDA approved a supplemental application for the use of VIOXX (rofecoxib) for rheumatoid arthritis, adding this indication to the previously approved indications for osteoarthritis and pain. The FDA also approved new labeling, a "Dear Doctor" letter, and a new patient package insert. The labeling and the "Dear Doctor" letter contained information concerning the results of the VIGOR study.

29.     The revised labeling further stated that the administration of VIOXX 50 mg was associated with a higher incidence of gastrointestinal symptoms, however, the revised "Patient Information" sheet did not add any information about the results of the VIGOR study."

30.     The "Patient Information" sheet is the only written document that was provided to a patient for whom VIOXX was prescribed.

7

31.     Despite knowledge of the ineffectiveness of the warnings, and despite knowledge that VIOXX may cause serious gastrointestinal side effects, Defendant, MERCK concealed and/or downplayed the dangers associated with VIOXX, and continued to market the drug in the United States and abroad.

32.     Despite knowledge of the foregoing, Defendant, MERCK continued to represent to consumers that VIOXX was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug.   Similarly, Defendant, MERCK downplayed any potential gastrointestinal side effects of the drug, promoting it as safer and more efficacious than other medications approved for treatment of similar conditions.

## COUNT I

## WRONGFUL DEATH

## NEGLIGENCE - MERCK & CO., INC.

33.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

34.     Defendant, MERCK was the researcher, developer, manufacturer, distributor, marketer, promoter, supplier and seller of VIOXX, which was defective and unreasonably dangerous to consumers.

35.     VIOXX was defective in its design or formulation in that it was not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceeded the benefits associated with its design and formulation. VIOXX was defective in design or formulation in that it lacked efficacy and/or it posed a greater likelihood of injury than other non-steroidal anti-inflammatory medicines and similar drugs on the market and was more dangerous than ordinary consumers could

8

have reasonably foreseen.

36.     The defective condition of VIOXX rendered it unreasonably dangerous, and VIOXX was in this defective condition at the time it left the hands of Defendant, MERCK   VIOXX was expected to and did reach consumers, including Plaintiff's decedent, without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

37.     Plaintiff's decedent was unaware of the significant hazards and defects in VIOXX. VIOXX was unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user. During the period that Plaintiff's decedent was taking VIOXX, the medication was being utilized in a manner that was intended by Defendant, MERCK. At the time Plaintiff's decedent received and consumed VIOXX, it was represented to be safe and free from latent defects.

38.     Defendant, MERCK is strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendant, MERCK because of the design defects.

39.     Defendant, MERCK knew or should have known of the danger associated with the use of VIOXX, as well as the defective nature of VIOXX, but it continued to design, manufacture, sell, distribute, market, promote and/or supply VIOXX so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by VIOXX.

40.     As a direct and proximate cause of the design defect and Defendant, MERCK's misconduct as set forth herein, Plaintiff's decedent, ROSS SILVESTRI BROWN, sustained injuries

9

that resulted in his death on January 17, 2003.

41.     Decedent, ROSS SILVESTRI BROWN, left surviving him his wife, KATHLEEN E. BROWN, and two children, R. JUSTIN BROWN and JONATHAN E. BROWN, all of whom have and will suffer damages of a personal and pecuniary nature, including the loss of society, support, companionship, affection, advice and guidance of ROSS SILVESTRI BROWN.

42.     Plaintiff, KATHLEEN E. BROWN, is the duly appointed Special Administrator of the Estate of ROSS SILVESTRI BROWN, and brings this cause of action pursuant to all applicable laws including the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*

WHEREFORE, Plaintiff, KATHLEEN E. BROWN, Special Administrator of the Estate of Special Administrator, demands judgment against Defendant, MERCK & CO., INC, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), and all other such relief this Court shall deem proper.

## COUNT II

## WRONGFUL DEATH

## PRODUCTS LIABILITY – FAILURE TO WARN - MERCK, CO., INC.

43.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

44.     Defendant, MERCK researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the pharmaceutical, VIOXX, and in the course of same, directly advertised or marketed the product to FDA, consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of VIOXX.

10

45.     VIOXX was under the exclusive control of the Defendant as aforesaid, and was unaccompanied by appropriate warnings regarding all possible adverse side effects and complications associated with the use of VIOXX, dangerous drug-drug interactions and food-drug interactions, and the comparative severity, duration and the extent of the risk of injury with such use.

46.     Defendant, MERCK failed to timely and reasonably warn of material facts regarding the safety and efficacy of VIOXX so that no medical care provider would have prescribed, or no consumer would have used, VIOXX had those facts been made known to such providers and consumers.

47.     Defendant, MERCK had failed to perform or otherwise facilitate adequate testing in that such testing would have shown that VIOXX posed serious and potentially life-threatening side effects and complications with respect to which full and proper warning accurately and fully reflecting the symptoms, scope and severity should have been made to medical care providers, the FDA and the public, including Plaintiff' decedent.

48.     VIOXX, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by Defendant, MERCK was defective due to inadequate post-marketing warnings and/or instruction because, after Defendant knew or should have known of the risk of serious and potentially life-threatening side effects and complications from the use of VIOXX, Defendant failed to provided adequate warnings to medical care providers, the FDA and the consuming public, including Plaintiff(s), and continued to promote VIOXX aggressively.

49.     As direct and proximate result of the misconduct of Defendant, MERCK as as set forth herein, Plaintiff's decedent, ROSS SILVESTRI BROWN, sustained injuries that resulted

11

in his death on January 17, 2003.

50.    Decedent, ROSS SILVESTRI BROWN, left surviving him his wife, KATHLEEN E. BROWN, and two children, R. JUSTIN BROWN and JONATHAN E. BROWN, all of whom have and will suffer damages of a personal and pecuniary nature, including the loss of society, support, companionship, affection, advice and guidance of ROSS SILVESTRI BROWN.

51.    Plaintiff, KATHLEEN E. BROWN, is the duly appointed Special Administrator of the Estate of ROSS SILVESTRI BROWN, and brings this cause of action pursuant to all applicable laws including the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq.

WHEREFORE, Plaintiff, KATHLEEN E. BROWN, Special Administrator of the Estate of Special Administrator, demands judgment against Defendant, MERCK & CO., INC, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), and all other such relief this Court shall deem proper.

## COUNT III

## WRONGFUL DEATH

## CONSUMER FRAUD - MERCK, CO., INC.

52.    Plaintiff repeats and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

53.    Defendant, MERCK placed VIOXX into the stream of commerce for sale and recommended its use to physicians, the FDA and consumers without adequately warning physicians, the FDA and consumers, including the Plaintiff(s), of the risks associated with the use of VIOXX.

54.    Defendant, Merck is the researcher, developer, designer, tester, manufacturer, inspector, labeler, distributor, marketer, promoter, seller and/or otherwise released VIOXX into the

stream of commerce.

55.     Defendant, Merck knew or should have known that the use of VIOXX causes serious and life threatening injuries but failed to warn the public, including Plaintiff's Decedent, of same.

56.     In violation of the Act, Defendant, Merck made untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts from Plaintiff's Decedent in product packaging, labeling, medical advertising, direct-to-consumer advertising, promotional campaigns and materials, among other ways, regarding the safety and use of VIOXX. Moreover, Defendant downplayed and/or understated the serious nature of the risks associated with VIOXX in other to increase the sales of VIOXX and secure a greater share of the COX-2 market.

57.     Defendant's statements and omissions were undertaken with the intent that the FDA, physicians, and consumers, including the Plaintiff's decedent, would rely on the Defendant's statements and/or omissions.

58.     Defendant knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of VIOXX but remained silent because Merck's appetite for significant future profits far outweighed its concern for the health and safety of the Plaintiff's Decedent.

59.     Plaintiff's decedent's physician prescribed and/or otherwise provided Plaintiff's Decedent with VIOXX, and Plaintiff's Decedent consumed VIOXX, primarily for personal and family reasons and suffered ascertainable losses of money as a result of the Defendant's use or employment of the methods, acts, or practices alleged herein.

60.     The aforesaid promotion and release of VIOXX into the stream of commerce constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations,

and/or the knowing concealment, suppression, or omission of material facts with the intent that others would rely upon such concealment, suppression or omission in connection with the sale or advertisement of such merchandise or services by Defendant.

61.     Defendant, Merck concealed, omitted, or minimized the side effects of VIOXX or provided misinformation about adverse reactions, risks and potential harms from VIOXX and succeeded in persuading consumers to purchase and ingest VIOXX despite the lack of safety and the risk of adverse medical reactions, including cardiovascular events and gastrointestinal effects.

62.     Defendant, Merck's practice of promoting and marketing VIOXX created and reinforced a false impression as to the safety of VIOXX, thereby placing consumers at risk of serious and potential lethal effects.

63.     VIOXX lacked appropriate warnings, and the packaging and labels used by Defendant are misleading, inaccurate, incomplete, and/or untimely.

64.     Defendant, Merck violated its post-manufacture duty to warn which arose when Merck knew, or with reasonable care should have known, that VIOXX was injurious and sometimes fatal.

65.     At the time when consumers purchased and ingested VIOXX, Defendant, Merck intended that others would rely upon the concealment, suppression or omission of the risks of ingesting VIOXX.

66.     Defendant's actions in connection with manufacturing, distributing, and marketing of VIOXX as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

67.     Defendant, Merck acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when committing these acts of consumer fraud.

68.     As direct and proximate result of the misconduct of Defendant, MERCK as set forth herein, Plaintiff's decedent, ROSS SILVESTRI BROWN, sustained injuries that resulted in his death on January 17, 2003.

69.     Decedent, ROSS SILVESTRI BROWN, left surviving him his wife, KATHLEEN E. BROWN, and two children, R. JUSTIN BROWN and JONATHAN E. BROWN, all of whom have and will suffer damages of a personal and pecuniary nature, including the loss of society, support, companionship, affection, advice and guidance of ROSS SILVESTRI BROWN.

70.     Plaintiff, KATHLEEN E. BROWN, is the duly appointed Special Administrator of the Estate of ROSS SILVESTRI BROWN, and brings this cause of action pursuant to all applicable laws including the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*

WHEREFORE, Plaintiff, KATHLEEN E. BROWN, Special Administrator of the Estate of Special Administrator, demands judgment against Defendant, MERCK & CO., INC, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), and all other such relief this Court shall deem proper.

## COUNT IV

## WRONGFUL DEATH - PUNITIVE DAMAGES - MERCK & CO., INC.

71.     Plaintiff(s) repeat and incorporate by reference all other paragraphs of this Master Complaint as if fully set forth herein.

72.     The Plaintiff(s) are entitled to punitive damages because the Defendant's failure to warn was reckless and without regard for the public's safety and welfare. Defendant misled both the medical community and the public at large, including the Plaintiff(s) herein, by making false representations about the safety of VIOXX. Defendant downplayed, understated and/or disregarded

15

its knowledge of the serious and permanent side effects and risks associated with the use of VIOXX despite available information demonstrating that VIOXX was likely to cause serious and even fatal side effects to users.

73.     Defendant was or should have been in possession of evidence demonstrating that VIOXX caused serious side effects. Nevertheless, Defendant continued to market VIOXX by providing false and misleading information with regard to safety and efficacy.

74.     Defendant failed to provide warnings that would have dissuaded physicians from prescribing VIOXX and consumers from purchasing and consuming VIOXX, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and/or purchasing and consuming VIOXX.

WHEREFORE, Plaintiff(s) demand judgment against Defendant, MERCK & CO., for compensatory damages and punitive damages, together with interest, costs of suit and attorneys' fees and such other relief as the Court deems proper.

## COUNT V

## WRONGFUL DEATH - NEGLIGENCE

## THOMAS STERN, M.D. and THOMAS STERN, M.D., S.C.

Plaintiff, KATHLEEN E. BROWN, Special Administrator of the Estate of ROSS SILVESTRI BROWN, Deceased, by and through his attorneys, CLIFFORD LAW OFFICES, P.C. complaining of Defendants, THOMAS A. STERN, M.D. and THOMAS A. STERN, M.D., S.C., states as follows:

75.     Plaintiff repeats and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

16

76. On and after January 2002, and at all times mentioned herein, Defendant, STERN, M.D., was a physician duly licenced to practice medicine in the State of Illinois.

77. On and after January 2002, and at all times mentioned herein, Defendant, STERN, M.D., was a duly authorized agent and employee of Defendant, THOMAS A. STERN, M.D., S.C., [hereinafter "STERN, M.D., S.C."], was acting within the scope of his agency and employment.

78. On or about January 2002, Plaintiff's Decedent, ROSS SILVESTRI BROWN, was prescribed VIOXX by his physician, Defendant, THOMAS A. STERN, M.D. [hereinafter "STERN, M.D."]

79. On and after January 2002, Defendants, STERN, M.D. and STERN, M.D., S.C., had a duty to possess the applicable knowledge and to use the skill and care ordinarily used by a reasonably well qualified physician in similar circumstances relating to Plaintiff's decedent, ROSS SILVESTRI BROWN.

80. On and after January 2002, and at all times mentioned herein, Defendant, STERN, M.D., was negligent in the medical professional care he rendered to Plaintiffs' decedent, in that he knew or should have known of the Defendant knew or should have known of the risk of serious and potentially life-threatening side effects and complications from the use of VIOXX that would or could befall his patient, ROSS SILVESTRI BROWN as a result of taking VIOXX, yet negligently and carelessly prescribed VIOXX on or about January 2002 and continued to prescribe VIOXX thereafter.

81. As direct and proximate result of the misconduct of Defendants, STERN, M.D., and STERN, M.D., S.C., as set forth herein, Plaintiff's decedent, ROSS SILVESTRI BROWN, sustained injuries that resulted in his death on January 17, 2003.

17

82.     Decedent, ROSS SILVESTRI BROWN, left surviving him his wife, KATHLEEN E. BROWN, and two children, R. JUSTIN BROWN and JONATHAN E. BROWN, all of whom have and will suffer damages of a personal and pecuniary nature, including the loss of society, support, companionship, affection, advice and guidance of ROSS SILVESTRI BROWN.

83.     Plaintiff, KATHLEEN E. BROWN, is the duly appointed Special Administrator of the Estate of ROSS SILVESTRI BROWN, and brings this cause of action pursuant to all applicable laws including the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*

WHEREFORE, Plaintiff, KATHLEEN E. BROWN, Special Administrator of the Estate of ROSS SILVESTRI BROWN, Deceased, demands judgment against Defendants THOMAS A. STERN, M.D., and THOMAS A. STERN, M.D., S.C., in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), and all other such relief this Court shall deem proper.

## COUNT VI

### WRONGFUL DEATH - PHARMACY NEGLIGENCE - AMERICAN STORES COMPANY, AMERICAN DRUG STORES, OSCO DRUG

Plaintiff, KATHLEEN E. BROWN, Special Administrator of the Estate of ROSS SILVESTRI BROWN, by and through her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendants, AMERICAN STORES COMPANY, a corporation, AMERICAN DRUG STORES, INC., a corporation, d/b/a OSCO DRUG, states as follows:

84.     Plaintiff repeats and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

85.     On or about January 2002, and at all times mentioned herein, Defendant, OSCO DRUG, was a pharmacy duly authorized to provide pharmaceutical care and treatment to patients like Plaintiff's,

18

decedent, ROSS SILVESTRI BROWN.

86. On or about January 2002, Defendant, AMERICAN DRUG STORES, INC., owned, operated, managed, maintained and controlled a drug store located on 2502 Waukegan Road in the City of Glenview and in the State of Illinois.

87. On or about January 2002, and thereafter, Plaintiff's decedent filled his prescription for VIOXX at Defendant, OSCO DRUG, at its location in Glenview, Illinois.

88. On or about January 2002, and at all times mentioned herein, Defendant, OSCO DRUG, had a duty to possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified pharmacy under the circumstances similar to those involving Plaintiff's decedent, ROSS SILVESTRI BROWN, in providing professional services to him.

89. On or about January 2002, and at all times mentioned herein, Defendant, OSCO DRUG negligently provided professional pharmacy care to Plaintiff's decedent, ROSS SILVESTRI BROWN, in one or more of the following respects:

a. Negligently provided VIOXX when it knew or should have know of the risk of serious and potentially life-threatening side effects and complications from the use of VIOXX that would or could befall its customer, ROSS SILVESTRI BROWN as a result of taking VIOXX;

b. Negligently failed to warn or provide adequate instructions to its consumers, including, ROSS SILVESTRI BROWN, Deceased, when it knew or should have know of the risk of serious and potentially life-threatening side effects and complications from the use of VIOXX that would or could befall its customer, ROSS SILVESTRI BROWN as a result of taking VIOXX;

c. Was otherwise careless and negligent.

90. As direct and proximate result of the misconduct of Defendants, AMERICAN STORES COMPANY, a corporation, AMERICAN DRUG STORES, INC., a corporation, d/b/a OSCO DRUG,

as set forth herein, Plaintiff's decedent, ROSS SILVESTRI BROWN, sustained injuries that resulted in his death on January 17, 2003.

91.     Decedent, ROSS SILVESTRI BROWN, left surviving him his wife, KATHLEEN E. BROWN, and two children, R. JUSTIN BROWN and JONATHAN E. BROWN, all of whom have and will suffer damages of a personal and pecuniary nature, including the loss of society, support, companionship, affection, advice and guidance of ROSS SILVESTRI BROWN.

92.     Plaintiff, KATHLEEN E. BROWN, is the duly appointed Special Administrator of the Estate of ROSS SILVESTRI BROWN, and brings this cause of action pursuant to all applicable laws including the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*

WHEREFORE, Plaintiff, KATHLEEN E. BROWN, Special Administrator of the Estate of ROSS SILVESTRI BROWN, Deceased, demands judgment against Defendants, AMERICAN STORES COMPANY, a corporation, AMERICAN DRUG STORES, INC., a corporation, d/b/a OSCO DRUG, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), and all other such relief this Court shall deem proper.

_____
One Attorney for Plaintiff

Ms. Sheri L. Tarr
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street
31st Floor
Chicago, Illinois 60602
(312) 899-9090
Atty. No.: 32640

20