ROBERT W. COTTLE, ESQ.
Nevada Bar No. 4576
**MAINOR EGLET COTTLE**
400 South Fourth Street, Suite 600
Las Vegas, NV 89101
(702) 450-5400
Attorney for Plaintiffs

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHARLES FITZGERALD, a Nevada resident; CHERYL LYNN FITZGERALD, a Nevada resident; WILLIAM HUNTER, a Nevada resident; LUCRETIA HUNTER, a Nevada resident; RUTH LINTON, a Nevada resident; CHARLES LINTON, a Nevada resident; PETER PINTAR, A Nevada resident; JEANETTE PINTAR, a Nevada resident, <br><br>Plaintiffs<br><br>This document relates to:<br>**EDLA CASE NO. 07-2099**<br><br>vs.<br><br>MERCK & COMPANY, INC., a corporation; WALGREENS COMPANY, an Illinois corporation; RXSOLUTIONS, INC., d/b/a PRESCRIPTION SOLUTIONS; EXPRESS SCRIPTS, INCORPORATED; THRIFTY PAYLESS, INC., d/b/a RITE AID; LISA DAVIS, a Nevada resident; MISTY KUPERMAN, a Nevada resident; RICKY GULATI, a Nevada resident; FRED AVUENE, a Nevada resident; SERGE BRUNRY, a Nevada resident; DEBBIE LEE, a Nevada resident; KAREN SHOUSE, a Nevada resident; NANCY MOREDOCK, a Nevada resident; JERRY SHAW, a Nevada resident; KERRY EDWARDS, a Nevada resident; TINA DIMORE, a Nevada resident; TRACEY PHILLIPI, a Nevada resident; JULIE WURCH, a Nevada resident; LADON SILVEA, a Nevada resident; ROE INDIVIDUAL PHARMACISTS 1 to 50; ROE BUSINESS ENTITIES 1 to 100, inclusive, and DOES 1 to 50, inclusive,<br><br>Defendants. | **MDL DOCKET NO. 1657**<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE KNOWLES<br><br>**OPPOSITION TO RX SOLUTIONS, INC.'S MOTION TO DISMISS PLAINTIFFS PETER PINTAR AND JEANETTE PINTAR'S COMPLAINT AGAINST DEFENDANT Rx SOLUTIONS, INC.** |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO Rx SOLUTIONS, INC.'S MOTION TO DISMISS PLAINTIFFS PETER PINTAR AND JEANETTE PINTAR'S COMPLAINT AGAINST DEFENDANT RX SOLUTIONS, INC.

COME NOW Plaintiffs, by and through their undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Support of its Opposition to Defendant, Rx Solutions, Inc.'s Motion to Dismiss Plaintiffs Peter Pintar and Jeanette Pintar's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief may be granted.

## PRELIMINARY STATEMENT

The Defendants Motion to Dismiss is a red-herring; this Complaint for strict liability and negligence has nothing to do with the ERISA Plan and the private pharmacy cannot limit its liability thereby. Plaintiffs' herein are part of a large group of Nevadans whose physicians were negligently and/or fraudulently induced by MERCK and its sales representatives to prescribe expensive VIOXX pills in lieu of other less costly but equally effective prescription and/or over-the-counter painkillers. These plaintiffs, relying on Merek's and its sales representatives' statements of safety and effectiveness, passed through to them by these physicians, and also relying on Merck's direct marketing and advertising of VIOXX to consumers, thereafter filled and dutifully took their prescriptions for VIOXX. These plaintiffs subsequently had a heart attack or stroke or other cardiovascular event attributable to Vioxx. This case is one of several multi-plaintiff Vioxx cases filed in Clark County and Washoe Counties making the aforementioned allegations against Merck, its Nevada sales force and defendant pharmacists.

MERCK widely and successfully marketed Vioxx in the United States, by undertaking an advertising blitz extolling the virtues of Vioxx in order to induce widespread use of the drug. The marketing campaign consisted of advertisements, promotional literature directed to

Doctors by Merck sales representatives. These local drug salespersons directly "detailed" (i.e., promoted and marketed) Vioxx to physicians and otherwise participated in the overall marketing of Vioxx in Nevada, primarily in Las Vegas and Reno. Local pharmacists, including the above-named defendants, distributed Vioxx to customers throughout Nevada.

This brief will demonstrate that this Court should follow other United States District Courts and prior Nevada Federal Court precedent and deny Defendant, Rx Solutions, Inc.'s Motion to Dismiss.

## STATEMENT OF FACTS

Rx Solutions is a pharmacy which filled Vioxx prescriptions for Plaintiff. The Pintar's are not making a claim for any benefits under the plan which Defendant desperately refers to in its motion. The Benefit Plan is not required or referred to in the Complaint filed by the Plaintiff's (See Complaint Exhibit 1). Plaintiffs did not sue ERISA or the benefit plan administrator, therefore the plan is not at issue. To sum up, the existence of ERISA is absolutely without consequence regarding claims made by Plaintiffs or the Defense of RX Solutions.

## I.

## LEGAL STANDARD

**A.   Motion to Dismiss**

A complaint may be dismissed under *Rule 12(b)(6)* of the Federal Rules of Civil Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)); *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). A *Rule 12(b)(6)* dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. *Robertson v.*

*Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Relief can be granted without considering the ERISA plan under a set of facts that are consistent with the complaint's allegations, the complaint states viable state law claims. See *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

**B.     ERISA Preemption § 514 and the Simple Conclusion that in no way do the Pintar's State Claims even remotely "relate to" the plan.**

In *McCabe v. Henpril Inc.*, the Court laid out the correct analysis and law precisely:

> Plaintiff's state law negligence and strict liability claims seek damages for her personal injuries rather than benefits under the plan. Hence, these claims do not have the necessary connection with or reference to Kroger's plan, and, therefore, these claims do not "relate to" Kroger's plan. Consequently, these claims are not subject to preemption.

*McCabe v. Henpril Inc.*, 889 F. Supp. 983, 988 (1995).[1]

Moreover, "lawsuits against ERISA plans for run of the mill state law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan — are relatively commonplace. . . These suits, although obviously affecting and involving ERISA

---

[1] *See also Hook v. Morrison Milling Co.*, 38 F.3d 776, 784 (5th Cir. 1994); *Pyle v. Beverly Enterprises-Texas, Inc.*, 826 F. Supp. 206, 210 (N.D. Tex. 1993); *Gibson v. Wyatt Cafeterias, Inc.*, 782 F. Supp. 331, 334-35 (E.D. Tex. 1992); *Eurine v. Wyatt Cafeterias, Inc.*, No. 3-91-0408-H, 1991 WL 207468 (N.D. Tex. Aug. 21, 1991).

plans and their trustees, are not preempted by ERISA 514(a)." *Mackey v. Lanier Collection Agency and Service*, 486 U.S. 825, 833 (1988).

> Claims for negligence, invasion of privacy and infliction of emotional distress are exactly the sort of generally applicable personal injury laws that § 514 of ERISA does not preempt. State tort laws of general applicability are matters of local concern which impose only indirect economic effects and costs on health plans. To hold that such claims are preempted by ERISA would federalize all tort claims on behalf of plaintiffs who obtain medical treatment through ERISA insurance plans. The United States District Court for the District of Nevada will not impose such a sweeping federalization of basic personal injury claims in the absence of any language in the text of ERISA or in the absence of any evidence of Congressional intent.

*Ray v. Value Behavioral Health, Inc.*, 967 F. Supp. 417, 423 (Nev. 1997).

Rx Solutions alleges that even if it would be liable under a theories of negligence, failure to warn, and breach of implied warranty of merchantability, Pintar's action is preempted by provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). The preemptive scope of the Employment Retirement Income Security Act, 29 U.S.C.S. § 1001 .. may be broad but it does not reach claims that do not involve the administration of plans, even though the plan may be a party to the suit or the claim relies on the details of the plan. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 784 (5th Cir. 1994).

A preemption provision designed to prevent state interference with federal control of plans under the Employment Income Security Act (ERISA), 29 U.S.C.S. § 1001 , does not require the creation of a fully insulated legal world that excludes these plans from regulation of any purely local transaction. In other words, ERISA was not meant to consume everything in its path. A common law negligence claim which alleges only that an employer failed to maintain a safe workplace does not relate to an ERISA plan merely because the employer has inserted a waiver of the right to bring such a claim into its ERISA plan.

*Hook v. Morrison Milling Co.*, 38 F.3d 776, 784 (5th Cir. 1994).

What is of equal importance and cannot be disputed by Defendant:

> The critical determination for determining the applicability
> of ERISA preemption is whether the state law claim itself
> creates a relationship between the plaintiff and the
> defendant that is so intertwined with ERISA plan that it
> cannot be separated.

*Maria v. First Allmerica Financial Life Insurance*, 379 F. Supp. 2d 20, 46-47(2005).

In the present case, Pintar's claims do not relate to an ERISA plan. The harm to Pintar would have occurred regardless of whether or not Rx Solution's services were secured through an insurance plan covered by ERISA. There is no reference to the ERISA plan, and there is no dispute as to coverage or to what benefits the Pintars are or were entitled to. In sum, the Pintar's tort claims against Rx Solutions cannot be said to make 'reference to' ERISA plan in any manner.

ERISA preemption is substantially limited, some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan. *Pyle v. Beverly Enterprises-Texas, Inc.*, 826 F. Supp. 206, 210 (N.D. Tex. 1993).:

What is more,

> The reach of Employee Retirement Income Security Act's (ERISA)
> preemption clause is not boundless. Instead, courts must start with
> the presumption that federal law does not supplant state law unless
> Congress clearly and manifestly intended to do so and must use the
> objectives of the ERISA statute as a guide to that intent. If a state
> law of general applicability has no more than an incidental effect
> on an ERISA plan, such as an indirect economic influence, it will
> not be preempted.

*Harris Trust v. Salomon Bros.*, 1997 U.S. Dist. LEXIS 15365, 7-12 (1997).

Defendant does not argue that all strict liability claims and warrantee claims are preempted by federal law because it is simply not the case. Going further, in order for Defendant's argument to carry any weight, the federal government would have clearly manifested an intent for all strict liability and warrantee claims to be federal questions.

6

Furthermore, the absence of an explicit reference to strict liability and warranty provisions in ERISA 514, illustrates that Congress did not intend to preempt a whole panoply of state law in this area. Thus, the only conclusion is that ERISA does not preempt warning defect claims, warranty claims, derivative claims and has no bearing on punitive damages.

The Employee Retirement Income Security Act's (ERISA) goals and its legislative history evidence Congress' manifest intent to preempt state tort law insofar as it applies to parties in interest who have engaged in transactions prohibited by 29 U.S.C.S. § 1106. One of Congress' primary concerns in enacting ERISA was the mismanagement of plan funds, and Congress' goal in 29 U.S.C.S. § 1106(a) is to bar categorically a transaction that is likely to injure the pension plan. Moreover, Congress specifically authorizes plans to seek equitable relief from parties in interest who allegedly engage in such transactions. 29 U.S.C.S. § 1132(a)(3). *Harris Trust v. Salomon Bros.*, 1997 U.S. Dist. LEXIS 15365, 7-12 (1997). In *Travelers*, the Court unequivocally concluded that the "relates to" language was not intended to modify "the starting presumption that Congress does not intend to supplant state law." *New York State Conference on Blue Cross and Blue Shield v. Travelers*, 514 U.S. 645, 654 (1995). In evaluating whether the normal presumption against pre-emption has been overcome in a particular case, this Court must look to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive. *New York State Conference on Blue Cross and Blue Shield v. Travelers*, 514 U.S. 645, 656 (1995). Here, the claims for warning defect and warranty do not affect the structure, the administration, or the type of benefits provided by an ERISA plan. Nor does such claims implicate the relations among traditional ERISA plan entities, the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.

In *The Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995), the Ninth Circuit addressed misrepresentations made by an ERISA entity. The *Meadows*, involved a

7

suit for damages based on misrepresentations made as to the scope of benefits and coverage rather than for the payment of benefits under a plan. *Id.* at 1008. Employers Health Insurance removed the case to federal court claiming the state claims were preempted by ERISA. *Id.* The district court decided the state claims were not preempted by ERISA. *Id.* The Ninth Circuit affirmed the decision. *Id.* at 1009.

**The Ninth Circuit outright rejected the argument that an ERISA plan was sufficiently involved because one needed to consult the policy in order to determine coverage.** The Ninth Circuit explained that "The Meadows' state law claims for misrepresentation and estoppel make no reference to, and function irrespective of the existence of an ERISA plan." *Id.*

**C.     The *Ray* Decision is an intelligent review of Preemption and applies Binding Authority.**

Claims for negligence, invasion of privacy and infliction of emotional distress are exactly the sort of generally applicable personal injury laws that § 514 of ERISA does not preempt. State tort laws of general applicability are matters of local concern which impose only indirect economic effects and costs on health plans. To hold that such claims are preempted by ERISA would federalize all tort claims on behalf of plaintiffs who obtain medical treatment through ERISA insurance plans. "The United States District Court for the District of Nevada will not impose such a sweeping federalization of basic personal injury claims in the absence of any language in the text of ERISA or in the absence of any evidence of Congressional intent". *Ray v. Value Behavioral Health, Inc.*, 967 F. Supp. 417, 423 (Nev. 1997).

Rx Solutions alleges that the Pintar's action is preempted by provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA governs employee benefit plans such as medical, surgical, or hospital care or benefits provided through the

purchase of insurance or otherwise. See 29 U.S.C. § 1002. ERISA contains a preemption provision superseding "any and all State laws insofar as they relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). Rx Solutions argues that the Pintar's claims "relate to" the California Ironworkers Field Welfare Plan, and therefore ERISA preempts his claims.

The Supreme Court examined what it means for state laws to "relate to" an employee benefit plan in *New York State Conference of Blue Cross & Blue Shield Plans, et. al., v. Travelers Ins. Co. et. al.*, 514 U.S. 645, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995). The Court specifically stated that not all state laws are preempted, and that the phrase "relate to" is a phrase of limitation. 115 S. Ct. at 1677. The Court examined its prior holding in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983), which defined "relates to" as a "connection with or reference to such a plan." *Shaw*, 463 U.S. at 96-97. In *Travelers*, pursuant to state law, surcharges were collected from patients covered by commercial insurers but not from patients insured by a Blue Cross/Blue Shield plan. 115 S. Ct. at 1673. The Court found the plan at issue in Travelers did not refer to an ERISA plan, since the charges were imposed regardless of whether the coverage at issue was secured by an ERISA plan. *Id.* at 1677.

Since the state law did not refer to the plan, the Court went on to analyze whether or not the law had a connection with an ERISA plan. To determine this, the Court looked to the objectives of the ERISA statute. *Travelers*, 115 S. Ct. at 1677. The main purpose of the preemption clause was to avoid a multiplicity of regulation in order to allow nationally uniform administration of employee benefit plans. *Id.* at 1677-78. Despite Congress' deliberately expansive view of ERISA preemption, ERISA was not meant to bar state laws having an indirect economic influence on insurance plans. *Id.* at 1679. The Travelers Court based this finding on the premise that laws such as quality control and workplace regulations

were not likely to affect premium differentials among competing insurers, even though such state regulation will indirectly affect the costs of an ERISA plan. Cost uniformity was not the object of preemption, and laws imposing indirect economic effects on health insurance plans are a far cry from the conflicting state laws from which Congress meant to insulate ERISA plans. Id. at 1679.

The Court analyzed *Shaw* and *FMC Corp. v. Holliday*, 498 U.S. 52, 60, 112 L. Ed. 2d 356, 111 S. Ct. 403 (1990), and found that in each of those cases the laws preempted by ERISA mandated employee benefit structures or their administration. 115 S. Ct. at 1678.

In determining which state laws Congress intended to be preempted by ERISA, the Court noted that "the bigger the package of regulation with indirect effects that would fall on the respondent's reading of § 514, the less likely it is that federal regulation of benefits plans was intended to eliminate state regulation of health care costs." *Travelers*, 115 S. Ct. at 1679. Additionally, preemption does not exist if the state law has only a "tenuous, remote, or peripheral" connection with an ERISA plan, as is the case with many laws of general applicability. Id. (citing *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, n. 1, 121 L. Ed. 2d 513, 113 S. Ct. 580, (1992). The Court found nothing in the language of the Act or in its legislative history indicating that Congress intended to eviscerate general health care regulation, which historically is a matter of local concern. *115 S. Ct.* at 1680.

In the present case, Pintar's claims do not relate to an ERISA plan. The harm to Pintar would have occurred regardless of whether or not Rx Solution's services were secured through an insurance plan covered by ERISA. There is no reference to the ERISA plan, and there is no dispute as to coverage or to what benefits Pintar was entitled to. As such, like the plans at issue in *Travelers*, Pintar's claims against Rx Solutions cannot be said to make 'reference to' ERISA plans in any manner.

The second step in the "relates to" analysis is to determine whether there is a

connection with an ERISA plan. In doing so, the Court must look to the legislative intent behind ERISA, as did the *Travelers* Court. This Court will find that Pintar's claims for negligence, failure to warn, breach of implied warranty of merchantability and loss of consortium are exactly the sort of generally applicable personal injury laws that § 514 of ERISA does not preempt. State tort laws of general applicability are matters of local concern which impose only indirect economic effects and costs on health plans. In addition, the Pintar's claims will have no effect on health plans direct or indirect. Defendant may argue that a big award would effect the costs of health plans, however, that type of effect is not what the case law is referring to.

The Ninth Circuit has held that common law negligence claims may be preempted by ERISA if the duty cannot be separated from the duties created by the plan itself. *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 817-19 (9th Cir. 1992). Looking at the facts in a light most favorable to Pintar, it cannot be said that his claims refer to an ERISA plan in such a manner. Pintar's claims of negligence, failure to warn, and breach of implied warranty of merchantability will be proven without any reference to an ERISA plan.

**D.   Defendants case law is Not Analogous to the facts of the Case at hand and classifying Plaintiff's claims as "mishandling" is Nonsensical .**

Defendant cites *Advance PCS v. Bauer*, 280 Ga. 639, 642, 632 S.E. 2d 95, 99(2006). The facts of this case entail a participant under an ERISA plan disputing the price of drugs as it applies to generic prescriptions. Clearly this type of action arises from grounds laid out in an ERISA plan. However, in the case at hand, Mr. Pintar's claim arises from an independent legal duty, this duty is created by a pharmacist's duty as a distributor, this duty is described below, however briefly, this case law will articulate a failure to warn duty that in no way related to a plan benefit remedies.

11

Defendant wishes to mislead this Court into the mistaken impression that Plaintiff brings a claim that fits a "mishandling" categorization. This would allow the claims to fall under the complete preemption doctrine and then be dismissed. For this to be true, the plan would have to lay out the exact policy for warning or not warning as it relates to prescriptions and warranties. Nonetheless, if the policy did exist, Plaintiff would still have the credible argument that a pharmacist duty is not derivative of the plan.

To prove its contention Defendant cites *Davila* , 542 US 200 (2004) were Plaintiff's insurance would not allow for certain treatments for his illness. Thus, the Court found ERISA preemption because the concern was the managing of the benefit plan. Unimpeachably, *Davila* is not a case which is factually related to the case at hand. Defendant goes on to cite cases which discuss contract disputes, bad faith claims, and the fiduciary duty of loyalty. All of these claims exist because of the terms of the paln.

Here, the terms of the plan are not needed to establish liability and certainly are not a "critical factor in establishing liability". The claims against RX solutions are viable claims and do not need the existence of a plan to prove or disprove liability. The Federal government does not regulate strict liability or warranty law. Pintar's complaint focuses on the relationship between Plaintiffs and Rx Solutions, Inc.; Defendant is neither an employer nor a plan sponsor. Defendant merely is a third-party corporation which Plaintiff went to fill a prescription and that is all that is needed for these claims.

Defendant cites *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) heavily and for broad assertions that do not apply to this case. *Metropolitan* focuses on the removal of an action focusing on the well pleaded complaint and a federal question. The Court articulated:

"A cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. The well-pleaded complaint rule is the basic principle

marking the boundaries of the federal question jurisdiction of the federal district courts." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

Justice Brennan correctly clarified the Courts opinion with is concurrence:

> While I join the Court's opinion, I note that our decision should not be interpreted as adopting a broad rule that *any* defense premised on congressional intent to pre-empt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has *clearly* manifested an intent to make causes of action . . . *removable to federal court.*" *Ibid.* (emphasis added). In future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court.

*Id.* at 67-68

In this instance, the duty to warn has never been or never will be a cause of action that Congress has clearly manifested an intent to make causes of action . . . . removable to federal court. The duty of Defendant is completely exclusive of any cause of action created by ERISA. These claims form from a pharmacist duty as a doctor and distributor. The fact that ERISA is involved in this case has absolutely no bearing on any issue in this case. The fact that a plan exist in this case is completely irrelevant, it provides no credible evidence or any useful defense.

The Defense next cited: *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 48 (1987) The issue was state common law causes of action asserting improper processing of a claim for benefits under an employee benefit plan regulated by the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, 29 U. S. C. § 1001 *et seq.*, are pre-empted by the Act, 29 U. S. C. § 1144(a).

Plaintiff does not dispute that any action brought for benefits under a plan maybe preempted by ERISA. That is, any claim that seeks rights or monetary gain through what is described as a avenue and remedy, under the benefit plan is more than likely, preempted by

ERISA. Unarguably, a claim asserting "improper processing of claim" is vastly dissimilar to a claims rooted in common law with absolutely no reference or relevance to the plan itself. The RX solutions duty to warn is not consumed by the ERISA plan simply because the administration of the plan includes pharmaceuticals. A pharmacist has independent duties which do not involve the administration of a plan, this duty derives from a pharmacists classification as a distributor under Nevada law.

E.  **Nevada Recognizes Strict Liability And Misrepresentation Claims Against Pharmacists as Distributors regardless of a Benefit Plan.**

Nevada precedent allows strict liability claims against a pharmacy or pharmacist. *See Heredia v. Johnson*, 827 F. Supp. 1522, 1525 (D.Nev.1993) "this court cannot find that the Nevada Supreme Court would hold that the strict liability doctrine does not apply to Defendant[pharmacy] simply because the subject transaction was a sale by defendant of a prescription drug." In addition, the Honorable Lloyd D. George held as follows in *Copeland v. American Home Products*, CV-S-00-0089-LDG (LRL), on March 30, 2001, "this court has previously determined that there is no reason to conclude that the Nevada Supreme Court would not apply the strict liability doctrine to pharmacies."

Thirty-four Nevada Courts have held that retail pharmacies are strictly liable to patients. The seminal case is *Heredia v. Johnson*, 827 F. Supp. 1522, 1525 (D.Nev.1993). Based upon *Heredia* alone, it can not be said that Plaintiff's strict liability claim is "wholly insubstantial and frivolous." In *Heredia*, Plaintiff took 3 written prescriptions to Payless Drug Store in Elko, Nevada where they were filled by the pharmacist on duty. The *Heredia* Plaintiff contended that Payless was strictly liable for failure to provide an adequate warning. Payless filed a Motion for Summary Judgment arguing that the strict liability doctrine did not apply to sales of retail drugs.

United States District Court Judge Reed expressly rejected the argument that pharmacies were immune from strict liability principles:

> "This court cannot find that the Nevada Supreme Court would hold that the strict liability doctrine does not apply to Defendant simply because the subject transaction was a sale by defendant of a prescription drug." Id. at 1525.

*Heredia*, discussed the rationale for imposing strict liability and held that, given the critical role in the prescription medicine distribution chain played by a retail pharmacist, strict liability applied to retail pharmacists:

> "Count Three of Plaintiff's Complaint sets forth the strict liability Cause of action. The claim is that the Pediotic Otic Suspension was In a "defective condition" which rendered it "unreasonably dangerous" when it left the control of Payless and was delivered to the Plaintiff. Strict tort liability may be imposed upon sellers and those in the chain of distribution as well as manufacturers for their role in placing a defective product into the stream of commerce. To the extent that the Plaintiff here bases his strict liability count against Defendant Payless on the pharmacy's role in the chain of distribution, standing between the patient and the drug manufacturer and doctor, the claim is valid. For purposes of the strict liability claim, the allegation is not directed at the conduct of the pharmacist but rather the nature of the product as it made its way through the stream of commerce. The Nevada Supreme Court has extended the doctrine of strict liability to all types of products, and the Nevada Courts recognize that strict liability may be imposed even though the product is faultlessly made if it is unreasonably dangerous to place the product in the hands of the user without suitable and adequate warning concerning safe and proper use." Id. at 1524-1525.

In the instant case, the strict liability claim is directed to the nature of the product, i.e., Vioxx, a drug that is proven to cause heart attack and stroke. Thus, *Heredia*, endorses a strict liability claim against the dispensing pharmacist in this case. The benefit plan could not be more irrelevant.

/ / / /

/ / / /

/ / / /

/ / / /

15

## CONCLUSION

Plaintiffs respectfully request that Defendant, Rx Solutions, Inc.'s Motion to Dismiss be denied.

DATED this 24th day of September, 2007.

**MAINOR EGLET COTTLE**

ROBERT W. COTTLE, ESQ.
Nevada Bar No. 4576
400 South Fourth Street, Suite 600
Las Vegas, NV 89101
Attorney for Plaintiffs

16

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b) and in accordance with Pretrial Order No. 8(B), the following document was served with the procedures established in MDL 1657 on Liaison Counsel, Russ Herman and Philip Wittmann, upon all parties and that I certify that I am an employee of MAINOR EGLET & COTTLE :

**OPPOSITION TO RX SOLUTIONS, INC.'S MOTION TO DISMISS PLAINTIFFS PETER PINTAR AND JEANETTE PINTAR'S COMPLAINT AGAINST DEFENDANT RX SOLUTIONS, INC.**

Kristina Pickering, Esq.
Robert R. McCoy, Esq.
MORRIS PICKERING & PETERSON
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone (702) 474-9400

Steven E. Guinn, Esq.
LAXALT & NOMURA
9600 Gateway Drive
Reno, Nevada 89521
Telephone (775) 322-1170

August A. Imholtz III, Esq.
GROOM LAW GROUP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5811
Telephone (202) 857-0620

Phillip A. Wittmann, Esq.
Stone, Pigman, Walther & Wittmann, L.L.C.
546 Carondelet Street
New Orleans, LA 70130-3588

Russ M. Herman, Esq.
Herman, Herman, Katz & Cotlar, L.L.P.
820 O'Keefe Avenue
New Orleans, LA 70113

DATED this 24th day of September, 2007

/s/ *Robert W. Cottle*
ROBERT W. COTTLE, ESQ.