**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  VIOXX | ) | **MDL NO. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | ) | |
| | ) | **SECTION: L** |
| **THIS DOCUMENT RELATES TO ALL** | ) | |
| **CASES** | ) | **JUDGE FALLON** |
| | ) | **MAG. JUDGE KNOWLES** |
| | ) | **SPECIAL MASTER RICE** |
| | ) | |

**NOTICE OF SUPPLEMENTAL AUTHORITY AND**
**STATUS REPORT ON PENDING MDL CLASS ACTIONS**

Defendant Merck & Co., Inc. ("Merck") respectfully submits this notice of supplemental authority and status report to address certain issues relating to the proposed class actions pending before this Court.  Specifically, Merck addresses the current status of these actions in light of the New Jersey Supreme Court's recent decision reversing the certification of a nationwide consumer fraud class in *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, No. A-22-06, 2007 N.J. LEXIS 1055 (N.J. Sept. 6, 2007) ("*Engineers*").

As set forth below, the parties await rulings from this Court regarding the fate of plaintiffs' proposed personal injury, purchaser, and medical monitoring class actions. Specifically, although the Court has already found that the individualized factual questions inherent in personal injury claims preclude certification of a nationwide personal injury class, it has not yet entered a specific order confirming that the proposed statewide personal injury classes are foreclosed as well for the very same reasons.  In addition, the Court has yet to rule on Merck's motion to dismiss the Purchase Claims Master Class Action Complaint ("Purchase Claims Complaint") for failure to allege cognizable claims under the applicable states' laws. Finally, the Court has not yet ruled on either Merck's motion to dismiss plaintiffs' Master Class

1

Action Complaint for Medical Monitoring ("Medical Monitoring Complaint") or Merck's motion to strike plaintiffs' class allegations in the Medical Monitoring Complaint. Merck asks that the Court consider these pending motions in light of the recent *Engineers* decision and proceed with issuing rulings on those motions.

## BACKGROUND

In *Engineers*, the New Jersey Supreme Court reversed certification of a nationwide third-party payor class seeking recovery for alleged economic injuries resulting from the purchase of Vioxx under the New Jersey Consumer Fraud Act ("NJCFA"). Class certification was inappropriate, the court held, because common factual questions did not predominate as to either the causation or ascertainable loss elements of an NJCFA claim.[1] ***First,*** the court rejected plaintiff's argument that common questions of fact predominated because fraud could be proven by focusing on evidence of "defendant's behavior and its marketing campaign." *Id*. at *35. Instead, the court held that the proper focus is on causation, *i.e.*, the effect of that alleged conduct on the proposed class members' purchasing decisions, a highly individualized inquiry that precludes class certification. As the *Engineers* court explained, "the record speaks loudly in its demonstration that each third-party payor, relying on PBMs and P&T Committees, made individualized decisions concerning the benefits that would be available to its members for whom Vioxx was prescribed." *Id*. at *36. The "evidence about separately created formularies, different types of tier systems, and individualized requirements for approval or reimbursement imposed on various plans' members and, to some extent, their prescribing physicians, are significant." *Id*.

---

[1] The NJCFA requires proof of (1) "any method, act, or practice declared unlawful" by the Act; (2) "any ascertainable loss of moneys or property, real or personal"; and (3) a causal connection between defendant's conduct and the plaintiff's loss. N.J. Stat. Ann. § 56:8-19.

*Second*, the court also found that plaintiffs could not prove ascertainable loss on a classwide basis through the use of expert testimony concerning any "price effect" of Merck's alleged conduct. *Id.* at *39. As the court noted, "[t]o the extent that plaintiff intends to rely on a single expert to establish a price effect in place of a demonstration of an ascertainable loss . . . plaintiff's proofs would fail. That proof theory would indeed be the equivalent of fraud on the market, a theory we have not extended to CFA claims." *Id.*

In light of the New Jersey Supreme Court's finding that individualized factual issues precluded class certification of the third-party payor claims, the court did not resolve the question whether New Jersey's consumer fraud law applies to the claims of all Vioxx purchasers nationwide. The court noted, however, that "certification of a nationwide class is 'rare,' and application of the law of a single state to all members of such a class is even more rare." *Id.* at *32 n.3 (citation omitted). Thus, the court strongly suggested that if it had addressed the choice-of-law issue, it would have accepted Merck's "strong arguments" that the law of each plaintiff's home state governs his or her claims. *Id.*

As explained below, the *Engineers* decision provides further support for Merck's pending motions addressing the statewide personal injury class actions, the purchaser class action and the medical monitoring class action.

## I.    THE COURT SHOULD REJECT STATEWIDE CERTIFICATION OF PLAINTIFFS' PERSONAL INJURY CLAIMS.

On November 22, 2006, the Court denied plaintiffs' motion for certification of a nationwide personal injury class. *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006). The Court's reasoning in that decision, as well as the analysis of the New Jersey Supreme Court in *Engineers*, compel the conclusion that the Court should similarly dispose of plaintiffs' alternative request for the certification of statewide personal injury classes. And because the

3

purpose of MDL proceedings is to resolve pre-trial issues – including class certification – this Court is the proper court to assess the viability of the proposed statewide classes.

*First*, it is this Court – not the district courts from which plaintiffs' personal injury actions were transferred – that is in the best position to resolve the question whether the proposed statewide personal injury classes should be certified.  The PSC has urged this Court to suggest to the MDL Panel that the personal injury class actions be transferred back to the district courts in which they were filed for separate rulings on statewide certification.[2]  (*See* Mem. of Law in Supp. of Pls.' Steering Comm.'s Mot. for a Suggestion of Remand in Connection with Class Certification Proceedings Pursuant to Pls.' Request in the Alternative for Individual State Class Certifications and for Leave to Seek This MDL Court to Sit by Designation in Each of the Transferor Fed. Dist. Court Jurisdictions at Issue, Nov. 4, 2005.)  However, federal law is clear that an MDL court should resolve the issue of class certification before cases are returned to their courts of origin.

There is no question that the "pretrial" proceedings for which MDLs were created include class certification.  In fact, the MDL Panel has frequently listed class certification as a common issue that makes Section 1407 transfer appropriate.  *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005) (ordering Section 1407 transfer of class actions in part because of the need to prevent inconsistent pretrial rulings on class certification); *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 344 F. Supp. 2d  755, 757 (J.P.M.L. 2004) (same); *In re Immunex Corp. Avg. Wholesale Price Litig.*, 201 F. Supp. 2d 1378, 1380 (J.P.M.L. 2002) (same); *In re Bridgestone/Firestone, Inc., ATX, ATX II & Wilderness Tires*

---

[2]     Eighteen of the 156 personal injury class actions law suits currently pending in the MDL were initially filed in the Eastern District of Louisiana.  As a result, this Court would be required to resolve the class certification issues remaining in those cases regardless of any decision to remand the other cases to transferor courts.  The vast majority of the personal injury class actions were filed in West Virginia.  The remaining actions were filed in 20 other states throughout the country.

4

*Prods. Liab. Litig.*, No. 1373, 2000 U.S. Dist. LEXIS 15926, at \*6 (J.P.M.L. Oct. 24, 2000) (same). *See also In re Multidistrict Private Civil Treble Damage Litig. Involving Plumbing Fixtures*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) ("*In re Plumbing Fixture Cases*") ("It is the clear intent of Section 1407 to invest the transferee court with the exclusive powers, after transfer, to make the pretrial determinations of the class action questions.").

Merck is not aware of any instance in which the MDL Panel has remanded a case ***before*** class certification had been decided.  To the contrary, the MDL Panel has recognized that all pretrial proceedings in class actions are best conducted in MDL proceedings.  For example, in *In re Great Southern Life Insurance Co. Sales Practices Litigation*, 217 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002), the Panel denied a suggestion of remand from the transferee judge where certain plaintiffs opted out of a class settlement arrived at during MDL proceedings and wished to remand their cases to the transferor courts.  The Panel concluded that remand was premature where, as here, "very few pretrial proceedings have been conducted."  *Id.*

The *Great Southern* decision is consistent with the general recognition by the MDL Panel and transferee courts that remand is inappropriate when continued coordination will "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Nat'l Century Fin. Enters., Inc., Fin. Inv. Litig.*, No. 2:03-md-1565, 2004 U.S. Dist. LEXIS 10605, at \*7 (S.D. Ohio Mar. 25, 2004) (*citing In re Heritage Bonds Litig.*, 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002)).  As one court explained, "motions for class certification are 'particularly suited for decision by the transferee court because it is important there not be a conflict between or among the transferor courts as to how related actions are to be treated.'" *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 220 F.R.D. 195, 200-01 (S.D.N.Y. 2003) (quoting Charles Alan Wright *et al.*, FEDERAL PRACTICE

AND PROCEDURE § 3866 at 619 (2d ed. Supp. 1999)).  Because the resolution of class

certification during the MDL process will avoid the risk of inconsistent pretrial rulings and

increase judicial efficiency, this Court should resolve plaintiffs' proposed statewide personal

injury classes at this time, rather than suggest that the cases be remanded to their transferor

courts for multiple class certification proceedings.

     ***Second***, this Court's prior decision rejecting certification of a nationwide class foreclosed

the possibility of single-state personal injury class actions.  As the Court explained, plaintiffs'

nationwide personal injury class failed not only because of the significant variations in

applicable laws resulting from the necessary application of the law of each plaintiff's home state,

but also for the "independent" reason that plaintiffs' claims turned on highly individualized

factual inquiries.  239 F.R.D. at 459.  The Court found that there is simply no way to resolve

personal injury claims on the basis of common evidence because:

> The plaintiffs' allegations that Merck failed to warn doctors adequately regarding
> the alleged health risks of Vioxx – whether they sound in strict liability or
> negligence – necessarily turn on numerous individualized issues such as: the
> alleged injury; what Merck knew about the risks of the alleged injury when the
> patient was prescribed Vioxx; what Merck told physicians and consumers about
> those risks in the Vioxx label and other media, what the plaintiffs' physicians
> knew about these risks from other sources, and whether the plaintiffs' physicians
> would still have prescribed Vioxx had stronger warnings been given.

*Id*. at 461.

     The Court also recognized that the issue of causation is similarly fraught with

individualized proof problems.  As the Court found, "individualized factual issues concerning

specific causation and damages dominate [the Vioxx] litigation and create independent hurdles to

certification."  *Id.* at 459.  This is so because there is simply no way to establish on a classwide

basis that each of the putative class members suffered cardiovascular injuries ***as a result of***

Vioxx use.  "The plaintiffs' claims in this case that Vioxx proximately caused their injuries are . .

. highly individualized and inappropriate for classwide adjudication." *Id*. at 461. For example, as the trials conducted thus far in this litigation have shown, many Vioxx users have pre-existing risk factors for cardiovascular injury – such as tobacco use, diabetes, prior heart attacks, hypertension, and/or obesity – that put them at increased risk of cardiovascular injury separate and apart from their Vioxx use. *Id*. at 462 (noting "highly individualized inquiry of whether Vioxx specifically caused the injury alleged by each plaintiff in light of his or her medical history, family history, other risk factors, and use of the drug"). Others have no risk factors at all. Thus, "[t]he number, uniqueness, singularity, and complexity of the factual scenarios surrounding each case swamp any predominating issues." *Id*. at 462-63.

Plaintiffs' fall-back proposal that the Court certify 51 "statewide" personal injury classes does nothing to solve these serious predominance problems. Although single-state classes might alleviate (though not eliminate) the problems arising from choice of law, highly individualized factual inquiries would still be necessary to resolve each class member's claim and would defeat a finding that common questions of fact predominate.

The New Jersey Supreme Court's decision in *Engineers* further supports Merck's argument that Vioxx cases turn on highly individual issues, making certification of statewide classes inappropriate. In *Engineers*, the court held that Vioxx plaintiffs cannot establish that Merck misled third-party payors on the basis of common evidence, noting that "evidence about separately created formularies, different types of tier systems, and individualized requirements for approval or reimbursement imposed on various plans' members and, to some extent, their prescribing physicians, are significant." 2007 N.J. LEXIS 1055, at *36. The same kinds of individualized considerations preclude a statewide class of personal injury cases based on failure to warn. Different class members will have confronted different statements and advertisements

7

by the company; different doctors will have prescribed Vioxx for different reasons; and different class members will have decided to take Vioxx for different reasons.  As a result, there is simply no way for this Court – or any other – to adjudicate the personal injury claims of all Vioxx users in one state in a single proceeding.

## II.    PLAINTIFFS' PURCHASE CLASS ACTION CLAIMS SHOULD BE DISMISSED.

In their Master Purchase Claims Complaint, plaintiffs assert claims for statutory consumer fraud, breach of implied warranty, and unjust enrichment on behalf of 27 named plaintiffs from 12 states and the District of Columbia.  Those named plaintiffs include both individual consumers who bought Vioxx for themselves and third-party payor entities such as health insurance plans that paid for Vioxx for their members and/or insureds.  Plaintiffs seek to establish a nationwide class based on New Jersey substantive law.  (Purchase Claims Master Compl. ¶¶ 183-84.)  Failing that, plaintiffs seek to certify 51 single-state classes.  (*Id*. ¶¶ 186-87.)

On September 19, 2005, Merck filed its motion to dismiss the Purchase Claims Complaint, arguing that a choice-of-law analysis requires the court to apply the substantive law of each plaintiff's home state to his or her claims, and that plaintiffs have not stated valid claims under each of the applicable states' laws.  Both this Court's denial of the nationwide personal injury class and the recent *Engineers* decision support Merck's argument that plaintiffs' claims must be decided under the law of their home states.

In denying certification of a nationwide personal injury class, this Court acknowledged that Vioxx plaintiffs' claims must be evaluated under the laws of their home states.  In its opinion, the Court determined that New Jersey choice-of-law rules "confirm that New Jersey substantive law should not be applied to the entire class."  239 F.R.D. at 458.  This is because, *inter alia*, "[e]ach plaintiff most likely was prescribed Vioxx, ingested Vioxx, and allegedly

8

suffered personal injury in his or her state of residence." *Id*. The same is true with respect to plaintiffs' Purchase Claims Complaint. Each proposed class member likely was prescribed Vioxx, purchased Vioxx, and suffered any alleged economic injury in his or her home state. Thus, just as in personal injury cases, "the substantive law of each plaintiff's home jurisdiction must be applied to his or her respective claims." *Id*. at 458.

The *Engineers* decision similarly supports the application of the law of each named plaintiff's home state. Although it did not squarely decide the issue, the New Jersey Supreme Court strongly suggests in a footnote to the *Engineers* decision that the New Jersey Consumer Fraud Act cannot be applied to the claims of all Vioxx purchasers nationwide. According to the court, "certification of a nationwide class is 'rare,' and application of the law of a single state to all members of such a class is even more rare." *Engineers*, 2007 N.J. LEXIS 1055, at *32 n.3 (citation omitted). Thus, although the court "express[ed] no view on the Appellate Division's choice of law reasoning or the result it reached as to the applicability of our law to all members of a nationwide class" in light of its finding that factual variations precluded certification, the court nonetheless stated that Merck "advances strong arguments in support of its appeal from the Appellate Division's choice of law analysis." *Id*. Thus, the New Jersey Supreme Court appears to agree with this Court that each Vioxx plaintiff's claims must be evaluated under the law of his or her state of residence. And as set forth in great detail in Merck's Motion to Dismiss and related briefing, plaintiffs' claims fail under the applicable states' laws.

In the event the Court denies Merck's pending Motion to Dismiss plaintiffs' Purchaser Complaint, the *Engineers* decision makes clear that the proposed class cannot be certified. In the MDL, plaintiffs assert claims on behalf of individuals and third-party payors claiming they have suffered economic damages as a result of Merck's alleged misstatements about the safety and

efficacy of Vioxx.  (Purchase Claims Master Compl. ¶¶ 172-74.)  As set forth above, the New Jersey Supreme Court ruled that the third-party payor claims at issue there could not be tried on a classwide basis in light of the highly individualized nature of the causation and ascertainable loss inquiries.  *Engineers*, 2007 N.J. LEXIS 1055, at *35-39.  The same is true for the third-party payors in this case.

Likewise, the individual purchaser plaintiffs' claims will turn on individualized evidence concerning why each prescribing physician decided to prescribe Vioxx, why each purchaser decided to purchase and use the drug, what information about Vioxx each purchaser had been exposed to prior to making the purchasing decision, and whether each plaintiff would have purchased the drug at the same price even if he or she had different information about its risks.  Thus, it is not possible to resolve the question whether Merck's alleged misrepresentations actually caused injury on a classwide basis.  *See id.* at *35.  As a result, even if the MDL plaintiffs' purchaser claims were viable – and they are not – they cannot be certified for class treatment.

## III.    PLAINTIFFS' MEDICAL MONITORING CLASS CLAIMS SHOULD BE DISMISSED OR, IN THE ALTERNATIVE, STRICKEN.

Plaintiffs have proposed a nationwide class of Vioxx users who allegedly suffered an increased risk of injury as a result of using the drug and seek to establish a medical monitoring fund under New Jersey law.  (Med. Mon. Master Compl. ¶ 150.)  In the alternative, plaintiffs seek to certify 46 state-wide medical monitoring classes.  (*Id.* ¶ 151.)

On September 15, 2005, Merck filed a motion to dismiss plaintiffs' medical monitoring claims, arguing that the law of each plaintiff's home state, not New Jersey law, applies to his or her claims, and that plaintiffs failed to state valid claims under the laws of the applicable states.  That motion – like Merck's motion to dismiss the Purchase Claims Complaint – is fully briefed

10

and argued.  Merck has also filed a motion to strike plaintiffs' class claims in light of this Court's ruling denying certification of the personal injury class.  The same individualized issues this Court indicated destroy predominance in the personal injury class – including "what Merck knew about the risks of the alleged injury when the patient was prescribed Vioxx, what Merck told physicians and consumers about those risks in the Vioxx label and other media, what the plaintiffs' physicians knew about these risks from other sources, and whether the plaintiffs' physicians would still have prescribed Vioxx had stronger warnings been given," *In re Vioxx*, 239 F.R.D. at 461 – also prevent certification of medical monitoring claims.  The *Engineers* decision also bolsters Merck's pending motions in two ways:  (1) the decision supports Merck's argument that New Jersey law cannot be applied to all Vioxx plaintiffs' claims nationwide, and (2) the decision reinforces this Court's finding that the question whether Merck failed to adequately warn plaintiffs of the risks of Vioxx cannot be resolved on a classwide basis.

*First*, as set forth above, this Court has acknowledged that the law of each Vioxx plaintiff's home state must apply to his or her personal injury claims.  The same is true of the medical monitoring claims.  Plaintiffs' medical monitoring claims, just like their personal injury claims, are based on the allegation that they have been injured – in the form of an increased risk of future physical harm[3] – as a result of their Vioxx use.  Thus, just as in personal injury cases, the medical monitoring plaintiffs' alleged injuries occurred in the states in which they reside and

---

[3]    Merck strongly disputes that the increased risk of future harm constitutes a valid injury under the various states' laws.  *See, e.g.*, *Paz v. Brush Engineered Materials, Inc.*, 351 F. Supp. 2d 580, 586 (S.D. Miss. 2005) (dismissing medical monitoring claims brought under Mississippi law by workers exposed to beryllium because "recognizing a medical monitoring claim would conflict with precedent establishing that a plaintiff allegedly exposed to a toxic or hazardous substances does not have a compensable injury until a disease caused by such exposure results"); *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 686 (Mich. 2005) (dismissing medical monitoring claims alleged by plaintiffs who were exposed to dioxin emitted by the defendant's plant and refusing to recognize "medical monitoring" as a new cause of action or as a theory of negligence because the plaintiffs could show no actual injury); *Bowerman v. United Illuminating*, No. X04CV 940115436S, 1998 Conn. Super. LEXIS 3575, at *26 (Conn. Super. Ct. Dec. 15, 1998) (dismissing medical monitoring claims based on asbestos exposure because "such expenses would only be allowable if these plaintiffs have sustained actionable injuries").

11

therefore likely ingested Vioxx.  239 F.R.D. at 457-58.  In addition, the relationship between

Merck and the medical monitoring plaintiffs – just like the personal injury plaintiffs – is centered

"where each plaintiff most likely was prescribed, purchased, ingested, and allegedly harmed by

Vioxx."  *Id.* at 458.  Thus, the law of each plaintiff's home state should be applied to his or her

medical monitoring claim.  As set forth above, the *Engineers* decision supports this conclusion,

indicating that New Jersey law cannot be applied to the claims of all Vioxx plaintiffs nationwide.

*Engineers*, 2007 N.J. LEXIS 1055, at *31 n.3.

     **Second**, the *Engineers* decision supports Merck's argument that plaintiffs' medical

monitoring claims cannot be certified and the class allegations should therefore be stricken.  In

its Motion to Strike, Merck explained that this Court has already held that failure-to-warn claims

related to Vioxx raise individualized issues that preclude a finding of predominance.  In the

Court's words:  "even if New Jersey law could be applied to the entire class, individualized

factual issues concerning specific causation and damages dominate this litigation and create

independent hurdles to certification."  *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. at 459.

     The *Engineers* decision confirms this Court's finding, holding that the question whether

Merck's alleged misrepresentations about Vioxx caused harm to plaintiffs turns on highly

individual issues that preclude certification.  2007 N.J. LEXIS 1055, at *35-39; *see also Buynie*

*v. Airco, Inc.*, No. A-3193-05T1, 2007 WL 2275013 (N.J. Super. App. Div. Aug. 10, 2007)

(affirming denial of class certification in case involving exposure to vinyl chloride because the

plaintiffs had different levels of exposure and medical histories and the proposed class thus

lacked the cohesiveness required for class certification).  Individualized considerations similar to

those that made class certification of third-party payors impossible in *Engineers* preclude

classwide resolution of plaintiffs' allegations that Merck failed to warn medical monitoring plaintiffs.

As explained in Merck's Motion to Strike, the medical monitoring laws applicable to each class member's claim generally require plaintiffs to prove that Merck engaged in some wrongful conduct – in this case, failure to warn about the risks of Vioxx – that caused each class member to use the drug.  (*See* Med. Mon. Master Compl. ¶ 171 (alleging that Merck "intentionally and negligently misrepresented the safety and effectiveness of Vioxx and intentionally and negligently concealed material adverse information regarding the safety and effectiveness of Vioxx").  However, plaintiffs cannot make such a showing based on common evidence alone.  Different class members will have confronted different statements and advertisements by the company; different doctors will have prescribed Vioxx for different reasons; and different class members will have decided to take Vioxx for different reasons.  Accordingly, just as in *Engineers*, individualized factual issues predominate, dooming plaintiffs' proposed medical monitoring class.

## CONCLUSION

For the reasons set forth above, the Court should: (1) deny plaintiffs' fall-back request to certify statewide personal injury classes; (2) grant Merck's Motion to Dismiss plaintiffs' Purchase Claims Complaint; and (3) grant Merck's Motion to Dismiss plaintiffs' Medical Monitoring Complaint or, in the alternative, grant Merck's Motion to Strike plaintiffs' medical monitoring class claims.

894233v.1

Respectfully submitted,


*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

14

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice of Supplemental Authority and Status Report on Pending MDL Class Actions has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 26th day of September, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

894233v.1