# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: VIOXX | : | |
| | : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION L |
| | : | |
| This document relates to All Actions | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |
| | : | |

## PLAINTIFF'S STEERING COMMITTEE'S RESPONSE TO DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY AND STATUS REPORT ON PENDING MDL CLASS ACTIONS

## I.    INTRODUCTION

The Plaintiff's Steering Committee ("PSC") respectfully submits this response to Merck & Co., Inc.'s ("Merck") Notice of Supplemental Authority and Status Report on Pending MDL Class Actions. Therein, Merck presents the September 6, 2007 Per Curium opinion of the New Jersey Supreme Court in *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076 (N.J. 2007)["Local 68"], in an attempt to find fault with the still pending class actions of the PSC regarding individual state personal injury classes, medical monitoring class actions and purchaser claim class.

The *Local 68* opinion found that Judge Higbee's certification of a nationwide consumer fraud class under the New Jersey Rules of Civil Procedure could not be accomplished for two reasons: 1) a lack of predominating common questions and 2) because the superiority requirement could not be established given the magnitude of the representative plaintiff's individual claim. Because the New Jersey Supreme Court's rulings do not address personal injury and medical monitoring proceedings, the holdings of *Local 68* have little significance compared to that attributed to them by Merck.

1

Where *Local 68* compares to the pending consumer class action, Merck overstates the influence of the New Jersey Supreme Court's rulings over these proceedings.

## II.     THE RULING BY THE NEW JERSEY SUPREME COURT IN *LOCAL 68*

Without doubt, *Local 68* is a landmark opinion in New Jersey. *Local 68* represents a retreat by the New Jersey Supreme Court from its prior precedents that liberally construed class certification procedure with the intent to economize on the efficiencies gained by conducting a common trial on common questions.   The *Local 68* opinion broke with this tradition by misconstruing the plaintiff's consumer fraud claim as a "fraud on the market" claim. The *Local 68* Plaintiff always claimed that Merck's marketing strategy was designed to authorize the purchase of Vioxx by the addition of the drug to class members' formularies or according it preferential treatment. It never claimed that Merck's concealment of information distorted the price of the drug, an analogy closer to the fraud of the market theory accepted by the New Jersey Supreme Court. Nevertheless, the New Jersey Supreme Court fixated upon expert proofs of a "price effect" to find that the plaintiff's claims equated with a fraud on the market theory. Finding such claims prohibited, the New Jersey Supreme Court reversed the class certification.   *Id.* at 392.

The New Jersey Supreme Court also focused upon the magnitude of the potential damages attributable to Local 68, alone, to find error in Judge Higbee's certification order.   The Supreme Court rejected class certification under the existing factual circumstances it attributed to the plaintiff, a Taft Hartley Welfare Fund.   The New Jersey Supreme Court found that because the plaintiff and class members were "well-organized institutional entities with considerable resources," *id.* at 394, there was "no disparity in bargaining power and no likelihood that the claims are individually so small that they will not be pursued." *Id.* Based upon these assumptions, the New Jersey Supreme

2

Court found that the superiority requirement of N.J.R.Civ.P 4:32-1(b)(3) had not been met.

Despite these reversals, the New Jersey Supreme Court left intact the possibility that it would approve the uniform application of New Jersey law to a national class. *Id.*, 929 A.2d at 1086 n. 3 ("We express no view on the Appellate Division's choice of law reasoning or the result it reached as to the applicability of our law to all members of a nationwide class."). This ruling necessarily permits this Court to endorse the finding of the New Jersey Appellate Division's finding that a nationwide class could still be accomplished by the unitary application of New Jersey law. *See International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 894 A.2d 1136 (N.J.App.Div. 2006), *rev'd on other grounds*, 929 A.2d 1076 (N.J. 2007).

Merck's efforts to link *Local 68* to this federal litigation is even further attenuated as Merck attempts to apply the reasoning of the Per Curium opinion  to the personal injury and medical monitoring claims still pending.  Merck's efforts to link *Local 68* to the proposed personal injury claims and its Motion to Dismiss Plaintiff's Master Class Action Complaint for medical monitoring and Merck's Motion to Strike Plaintiff's Class Allegations in the medical monitoring complaint is misguided.  While the *Local 68* opinion is dispositive on the procedural matters of New Jersey law raised in that case, it is at best merely anecdotal authority in connection with the determination of Merck's Motion to Dismiss the purchase claims master class action complaint.

The effect of *Local 68* on each of the personal injury, medical monitoring and purchase claim class actions will be addressed below.

## III.   ARGUMENT

### A.   THE *LOCAL 68* DECISION HAS LITTLE BEARING ON THE PERSONAL INJURY CLASS ACTIONS

Merck challenges the ability of this Court to determine the pending individual state personal

injury class actions by resorting to an argument whose basis has been undermined by *Lexecon Inc.*

*v. Milberg, Weiss, Bershad, Hynes & Lerach,* 523 U.S. 26 (1998). Merck contends that application

of this Court's November 22, 2006 Order & Reasons[1] denying the national personal injury class and

*Local 68* require that the remaining individual state classes must be denied within the confines of

this MDL proceeding.  This Court has stated:

> The PSC asks, however, that this Court file a suggestion of remand pursuant to JPML Rule 7.6 to sever the question of single-state class certification and remand to the transferor forum each state class action as to which certification is sought, solely for purposes of addressing the class certification question. The PSC further requests, in the interest of uniformity and judicial efficiency, that the JPML suggest to the Chief Judge of each transferor court that this Court be appointed to sit by *ad hoc* designation over the class certification issues.
>
> This proposal would allow appellate review under Rule 23(f) to be sought in the relevant United States Court of Appeals encompassing the district in which the original complaint was filed, thereby guaranteeing that no party is prejudiced by the random selection of an MDL transferee forum whose procedural jurisprudence would determine the class certification issue differently from the transferor forum. This somewhat novel alternative has not been fully briefed and, therefore, the Court will not address the issue of individual state certification at this time.

*Vioxx,* 239 F.R.D. at 454 n. 5.

Merck challenges this Court's pronouncement to merely consider the class action remands

by arguing that pretrial proceedings encompassing class certification must be accomplished by the

transferee court. Nothing in 28 U.S.C. §1407 compels such a result.  Indeed, as a result of *Lexecon,*

*supra,* MDL courts are prohibited from presiding over the trial of cases originating in other

jurisdictions, absent the procedures Merck seeks to avoid.  Yet, the MDL statute, 28 U.S.C. §1407,

---

[1]*In re Vioxx Products Liability Litigation,* 239 F.R.D. 450 (E.D.La. 2006)[hereafter "Vioxx"].

and MDL Rules permit the transferee court to request the ability to sit by designation in the transferor forums, thus enabling it to do precisely what Merck challenges – preside over class actions that were filed outside of the transferee forum.

Because the Circuit Court of Appeals overseeing the transferor courts regularly work with their local forum law, they are more familiar with that body of law and, generally speaking, are in a better position to apply that law to the proposed state-wide classes. Given this familiarity, the PSC's proposal to have this transferee Court remand the individual state class actions back to their original forums makes practical sense and would improve upon the MDL model *in situ,* because it allows the class certification rulings to become subject to appellate review in their original federal circuits. Merck prefers a static MDL model because such a model, last modified in March 1998 in *Lexecon,* before the amendment of Rule 23 by the addition or Rule 23(f)'s certification appeals process (effective December 1, 1998), and before the 2005 enactment of CAFA, fails to take into account local nuances, applies a uniform ruling to each case despite the variance of circuit laws, and has the potential to dispose of the numerous classes in one case. Merck should not be permitted to tilt the playing field by taking advantage of the class device to achieve a substantive advantage, however. The class mechanism is merely procedural and should not be wielded about to achieve a substantive difference. *See Blaz v. Belfer*, 368 F.3d 501, 504 (5th Cir. 2004). Where substantive considerations are available in other jurisdictions that may permit more favorable findings regarding the certification standard, the argument that these advantages are lost because the MDL was centralized in this district is far from persuasive.

The MDL model invoked by Merck – where class certification is a central feature of the JPML's decision to transfer – is useful in the antitrust arena, from whence most of Merck's authority

derives.  The federal antitrust laws lend themselves to uniform application, thus permitting uniform considerations of class certification.  *See, e.g., In re Hydrogen Peroxide Antitrust Litigation*, 374 F.Supp. 2d 1345 (J.P.M.L 2005); *In re Immunex Corp. Average Wholesale Price Litigation,* 201 F.Supp.2d 1378 (J.P.M.L. 2004).  As this Court has already determined that conflicts of laws prevent the uniform application of one law, the antitrust cases, as well as the other cases that declined to permit the unitary application of law referenced in Merck's papers are inapposite.

Equally inappropriate is Merck's efforts to pre-brief the individual state personal injury class certification issues.   Merck makes an inordinate attempt to challenge the viability of these state class actions based upon this Court's November 22, 2006 Order & Reasons denying the national class.  That opinion, however, makes clear that "the Court will not address the issue of individual state certification at this time." *Vioxx*, 239 F.R.D. at 454 n. 5.  It is therefore premature to address Merck's contention that individualized factual inquiries will pervade any state certification motion.  The PSC has yet to even present their moving papers on the issue.

Moreover, as this Court recognized after having presided over the first round of bellwether trials, one can be "confident that common questions [of fact and law] exist" throughout every single Vioxx case. *Id.* at 459.   And while this Court found that in a nationwide class action numerous individualized issues precluded a finding of predominance, *id.* at 461, that ruling does not necessarily translate to individual state class actions where the thorny choice of law issue that frustrated the national class as first posited herein will be avoided.  Indeed, some of the factual questions raised by the Court as disqualifying the national class might be embraced within the context of each individual state class as a sub-class issue.  For example, for each label change of the Vioxx package insert, there could exist a separate and discrete sub-class employed to avoid

arguments about differences in Merck's knowledge over time.

Merck's treatment of *Local 68* as persuasive authority regarding the predominance requirement is similarly misplaced. The New Jersey Supreme Court only addressed evidence relating to the misrepresentations applicable to the Third-Party Payors' placement of Vioxx in their formularies. Merck's effort to analogize the evidence presented in that case, where "primary information" material was extensively relied upon, with claims of individual personal injury claimants is unavailing. *See Local 68*, 929 A.2d at 1080. The cases are too dissimilar to support such a comparison.

Even at this early juncture, it is apparent that the New Jersey Supreme Court's decision in *Local 68* has little bearing on the outcome of the individual state personal injury class actions. Only after briefing on the matter and argument should this Court address the factual and legal issues presented in Merck's Status Report. For now, the matter is premature as it relates to the personal injury class actions.

**B.    THE *LOCAL 68* DECISION SUPPORTS THE**
**MEDICAL MONITORING CLASS ACTIONS**

Merck perceives the *Local 68* decision as being supportive of its motions to dismiss the Medical Monitoring Class Action Complaint and Motion to Strike the Medical Monitoring Class Allegations. Merck's argument fails to account for the fact that the New Jersey Supreme Court left intact the ruling of the Appellate Division that permitted the unitary application of New Jersey law to a nationwide class and made no ruling addressing the conduct that gives rise to culpability in a medical monitoring claim. Nor does Merck acknowledge that the New Jersey Supreme Court recognized in *Local 68* that negative value suits, *i.e.*, cases where the cost of recovery exceeds the expected recovery, present themselves as "quintessential examples" for class certification. Medical

monitoring claims fall directly within the mold of a negative value suit.  Thus, rather than favoring

Merck, *Local 68* supports the medical monitoring class action.

As already discussed the unitary application of New Jersey law to the Medical Monitoring

Master complaint remains viable under New Jersey law.  While this Court's conflicts of law analysis

in the context of the personal injury class resulted in the application of individual state laws,

applying that ruling here would result in the alternative consideration of individual state medical

monitoring class actions.  The PSC has discussed at length the availability of medical monitoring

claims under the several states' laws.  For those jurisdictions where medical monitoring claims are

available, including New Jersey, *Local 68* is no obstacle to class certification.  *See, e.g., In re: West

Virginia Rezulin Litig.*, 585 S.E. 2d 52 (W.Va. 2003); *Petito v. A.H. Robbins Co., Inc.*, 750 S.2d 103,

106 (Fla. App. 2000); *Redland Soccer Club, Inc. v. Department of the Army*, 696 A.2d 137, 145-46

(Pa. 1997); *Sinclair v. Merck & Co., Inc., Sinclair v. Merck & Co., Inc.*, 913 A.2d 832 (N.J. App.

Div. 2007), *cert. granted*, 921 A.2d 832 (NJ. 2007); *Burns v. Jaquays Mining Corp.*, 752 P.2d 28

(Ariz. App. 1987); *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970 (Utah 1993).

Merck argues that this Court's finding that individual factual questions overwhelmed the

claims of the national personal injury class also defeats any medical monitoring class.  This Court's

November 22, 2006 ruling focused on facts surrounding the failure to warn claims of the personal

injury class members.  *Vioxx*, 239 F.R.D. at 461.  Medical monitoring claims do not share an identity

of the elements with failure to warn claims.  In medical monitoring claims, the culpable conduct

required is frequently only proof of some actionable negligence resulting in the class becoming

exposed to the hazardous substance.  *See, e.g., Redland Soccer*, 696 A.2d at 145-46.  Merck's

conduct easily meets this element.  For example, Merck's misrepresentation of its clinical trial

results to the New England Journal of Medicine (NEJM) regarding the VIGOR study resulted in the November 23, 2000 publication of a misleading article that Merck exploited to market Vioxx.[2]  Only years later did the NEJM issue its *Expression of Concern* but by then class members had already been exposed to the drug.[3]  This behavior, on the part of a single defendant as to a single drug, and committed consistently in a single location, is common to all class members that used the drug from November 23, 2000 until the drug was withdrawn from the market and readily supports the duty element of any medical monitoring claim.

Finally, *Local 68* fully supports the superiority principles underlying a medical monitoring action.  The New Jersey Supreme Court held that a class action is superior to individual litigation when the aggregation of small claims would not be economical to address through binary litigation.  Specifically, the New Jersey Supreme Court held that where the defendant's actions are commonly directed against the class, "the small amount that any one class member would be due, and the large number of class members for whom relief would otherwise not be practically available, all militated in favor of a conclusion that the common issues predominated and the class action mechanism was superior to any other forum for relief." *Local 68*, 929 A.2d at 1089, *citing, Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710 (2007)(directing certification of a class of Wal-Mart employees subject to disparate treatment by different managers, in numerous stores over a lengthy period of time).  This reasoning fits the medical monitoring class precisely, which is an *Iliadis* class.

----

[2]Bombardier, et al, *Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis*, N. Engl. J. Med. 2000; 343: 1520-8.

[3]Curfman, et al., *Expression of Concern:  Bombardier, et al, "Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis,"* N. Engl. J. Med. 2000; 343: 1520-8, N.Engl.J.Med. 2005, 355: 2813-14.

Unlike the Taft-Hartly Fund plaintiff in *Local* 68, whose individual claim, according to the New Jersey Supreme Court, was individually too valuable to combine with other claims,[4] a medical monitoring plaintiff is only seeking the establishment of a trust fund to pay for periodic medical surveillance. Individually, the cost of such diagnostic testing is hardly significant. Simply by way of example, the cost of testing such as blood work, an EKG, echocardiogram and an office visit combined, should not exceed $2000.[5] Litigating an individual claim to recover such a small sum is difficult to justify economically. However, by employing the class procedure to capitalize on the economies of common proofs and the ability aggregate the individual recoveries medical monitoring class action litigation can be rationalized. And, the New Jersey Supreme Court endorses such small claims class actions. *See Local 68, 929 A.2d at 1089. See also Iliadis, supra.*

Accordingly, the Court should view the *Local 68* case as favoring the medical monitoring class actions.

## C.    **PLAINTIFFS' PURCHASE CLAIMS SHOULD PROCEED**

Nothing in the *Local 68* decision ordains the dismissal of any of the Vioxx purchasers' claims, either of Vioxx consumers themselves, or of Third Party Payors. This Court has under submission, fully briefed and argued, defendants' motion to dismiss the Purchase Claims Complaint.

---

[4] The New Jersey Supreme Court's reasoning that the magnitude of the plaintiff's claim defeated a finding of superiority is at odds with federal policy and law regarding class certification. For example, under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb), federal law presumes that the largest shareholder is the most adequate representative plaintiff. *See, e.g., Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004)("the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case."). This Court should not be persuaded by the superiority finding in the *Local 68* opinion as it is contrary to federal policy.

[5] This example is provided merely for demonstrative purposes and should not be assumed to be the precise medical monitoring regimen that would be proposed for any class.

Nothing in *Local 68* requires or permits the dismissal of any of these claims on the merits. Defendants seem to imply that *Local 68* does require, however, or at least allow, this Court to dismiss the class allegations in the Purchase Claims Master Complaint. Such is not the case, for the same reasons explored in the preceding sections. This Court has yet to determine whether New Jersey law, or the law of some other state, may or shall apply to purchaser claims nationwide; as the Purchase Claims Master Complaint provides, the alternative of proceeding on the merits, as well as on class certification, under each purchaser's home state's laws has been preserved, and may be elected by the Purchaser Plaintiffs, either here, in the MDL transferee court, or pursuant to remand, in the transferor courts of their home states. The Purchaser Plaintiffs have not yet filed a class certification motion. They have not elected whether to proceed on a nationwide class basis, under New Jersey's law, whether to proceed on a regional basis, or whether to proceed on a state-by-state basis. Additionally, the Purchaser Plaintiffs may elect to request this Court to select one or more consumers and Third Party Payors as bellwether plaintiffs in MDL trials under specific states' consumer laws. As this Court is well aware, the Vioxx consumers themselves have small monetary claims, and even claims of the magnitude of that of the *Local 68* Third Party Payor Plaintiff (less than $200,000) are not economically feasible given the vast sums defendants have spent in a war of attrition over the past three years. Thus, this Court conducting a superiority inquiry using actual economic data, rather than supposition, may well determine that, as a matter of propriety and necessity, to assure access for consumers and Third Party Payors to the federal courts for purposes of adjudication of their claims on the merits, some form of class certification must be provided. The Purchaser Plaintiffs do not accept defendants' veiled invitation to pre-brief or pre-argue the issue

of class certification.[6]  However, once this Court has ruled upon the pending and submitted motion to dismiss the Purchase Claims Class Action Complaint, purchase plaintiffs will proceed with alacrity to file any appropriate class certification, remand, and/or bellwether trial motions and proposals.  Nothing in *Local 68* has foreclosed any of these alternatives in this MDL court.

## IV.    CONCLUSION

The PSC appreciates the Court's consideration of this response when ruling upon the pending motions at issue.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: October 5, 2007          By:    /s/ Leonard A. Davis
                                      **Russ M. Herman (Bar No. 6819)**
                                      Leonard A. Davis (Bar No. 14190)
                                      Stephen J. Herman (Bar No. 23129)
                                      *Herman, Herman, Katz & Cotlar, L.L.P.*
                                      820 O'Keefe Avenue
                                      New Orleans, Louisiana  70113
                                      Telephone: (504) 581-4892
                                      Facsimile: (504) 561-6024

                                      **PLAINTIFFS' LIAISON COUNSEL**

---

[6]The Purchaser Plaintiffs do note that several federal courts have quite recently certified nationwide purchase classes of consumers and/or third party payors.  *See, e.g. New England Carpenters Health Benefits Fund v. First Data Bank, Inc.*, 2007 U.S. Dist. LEXIS 63159 (D. Mass. August 27, 2007.) (Consumer class certified; certification of third party payor class deferred; *In re Abbott Labs Norvir Anti-trust Litigation*, 2007 U.S. Dist. LEXIS 44459 (N.D. Cal. June 11, 2007) (consumers and third party payor class certified); *Burch v. Qwest Communications International, Inc.*, 2007 U.S. Dist. LEXIS 59795 (D.Minn. July 27, 2007) (nationwide consumer class certified).

12

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
  MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire **(on brief)**
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 5th day of October, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH:     (504) 581-4892
FAX:   (504) 561-6024
ldavis@hhkc.com