# EXHIBIT  107

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 SEP 29  PM 5: 23

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| JOSE ACEVEDO; JOSE ADAMS-ALONSO; CARMENALMARANTE, as the husband and Personal representative of MIGUEL ALMARANTE (deceased); ANTONIO BERRIOS; LEONOR CADELARIO-MALDANADO; IVANSKA CAPO-SILEN; FELIX CASIANO-MERCADO; MARGARITA CASTRO-JIMENEZ; LUIS CASTRO-RAMIREZ; JULIA CASTRO-ROBLEDO; ELISA CHAPARRO-CHAPARRO; JOSE CINTRO-ORTIZ; JUAN CLABAGUERA-SAVINON; MIRIAN CORCHADO-RIOS; MYRNA COSME-FERRER; ANGEL COSME-RUIZ; GLADYS CRESPO-GONZALEZ; JOSE CRUZ-JUARBE; CARMEN CRUZ-ORTIZ; MIGUEL CRUZ-VELAZQUEZ; CARMEN DALMAU-CASTRO; SONIA DAVILA-CABRERA; NATIVIDAD DE JESUS-DE JESUS; CARMEN DE JESUS-ROSARIO; VALINA DE LA CRUZ-MENDES; JESUS DE LA ROSA-GRULLON; MARILYN DIAZ-CABAN; ANGELICA DIAZ-IRIZARRY; MYRTA ECHAVARRY-COIRA; MARILUZ GUTIERREZ, as the daughter and personal representative of MANUAL GUTIERREZ (deceased); GLORIA HERNANDEZ; FERNANDO LOPEZ-DIRUBE; CAMELIA LOVELACE, individually, and as the Personal Representative of LEGIA LOVELACE (deceased); FRANCISCO MARTINEZ, as the son and personal representative of LUZ –LIBRADA-SANCHEZ; JOSEPHAT MONTANEZ-CAMACHO; LIZETTE MORALES-APONTE; ELUID MORALES-CARRASQUILLO; CARMEN MOREIRA-FRAGOSO; ANIBAL MUNOZ; ORLANDO NIEVES-QUILES; SERRANO OJEDA, as the wife and personal representative of VICTOR MOLINA-FIGUEROA (deceased), EDGARDO ORTIZ-AYALA; SONIA OTERO-AGOSTO; MARGARITA OTERO-CAMACHO ANA PAGAN-DEJESUS; CARMEN PAGAN-SANMIGUEL; | * * * IN RE: VIOXX PRODUCTS * LIABILITY LITIGATION * * **06 - 6997** * * MDL DOCKET NO. 1657 * SECTION L * * **SECT. L MAG. 3** * * * * * * * * * * * * JUDGE FALLON * MAGISTRATE JUDGE * KNOWLES * * * * * * * * * * * CIVIL ACTION NO. ___ * * * * * * |

$ 6,050.00
x3
350.- Rene
Fee _____
Process _____
Dktd _____
CtRmDep _____
Doc.No. _____

LUISA PARRILLA-TORRES; MIGUEL     \*
PEREIRA-CRUZ; SATURNINO PEREZ-ABUA;     \*
ORLANDO PEREZ-ALVAREZ; LUZ     \*
PEREZ-CABAN; GILBERTO PEREZ-VALENTIN;     \*
JESUS PUENTES-CASTRO; REINA     \*
QUINONES-MEDINA, as the daughter and personal     \*
representative of RAMONA MEDINA-SABATER     \*
(deceased); MIGUEL RAMAS-ROMAN; HECTOR     \*
RAMIREZ-GOMEZ; JOSE RAMOS-ACEVEDO;     \*
YOLANDA RAMOS-DIAZ; MELQUIADES     \*
REYES-COLON; LUZ REYES-NEGRON; EDGAR     \*
REYES-PEREZ; DOMINGO RIBOT-SANCHEZ;     \*
CARMEN RIOLLANO-MARRERO; NICOLAS     \*
RIVAS-SANTIAGO; JOAQUIN RIVERA; IRENE     \*
RIVERA-CASTRO; MILAGROS RIVERA-CRUZ;     \*
YOLANDA RIVERA-DIAZ; NIXSA     \*
RIVERA-RODRIGUEZ; MARIA RIVERA-TORRES;     \*
OTILIA RIVERA-VILLANUEVA; JOAQUIN     \*
RODRIGUEZ-MORALES; EMILIA     \*
RODRIGUEZ-PEREZ; FELIX     \*
RODRIGUEZ-RIVERA; JUAN     \*
RODRIGUEZ-RIVERA; JOVINO     \*
RODRIGUEZ-SEPULVEDA; VIRGINIA     \*
ROLDAN-GONZALEZ; MILDRED     \*
ROLDAN-RAMIREZ; GLADYS ROSA-VALLE;     \*
KAREN ROSA-VILLEGAS; MARIA RUIZ;     \*
JOSEFA RUIZ-ALVAREZ; EUSEBIA RUIZ-LEON;     \*
SHEILA SALDANA, as the daughter and personal     \*
representative of SHEILA SALDANA-RODRIGUEZ     \*
(deceased); RAFAELA SALGADO-OTERO;     \*
JUSTINIANO SANCHEZ-MARTINEZ;     \*
ALEXANDER SANTIAGO-RODRIGUEZ; HECTOR     \*
SANTIAGO-VALENTIN; MARIA SANTOS-CALIZ;     \*
LESVIA SANTO-VEGA; MARIA     \*
SEPULVEDA-TORRES; DALIA SERRANO-VELEZ;     \*
HECTOR SORIA-MELENDEZ; ANDRES     \*
SOTO-BURGOS; JEANNETTE SOTO-SANTIAGO;     \*
LUZ SOTO-SEGARRA; ELISA SOTO-VALLE;     \*
LAURA SUAREZ-COMA; FELIX     \*
TAPIA-VELAZQUEZ; JOSE TORRES-LOPEZ;     \*
ARACELIS TORRES-RODRIGUEZ; LUCILA     \*
TOSADO-CABAN; JOSE TRINIDAD-QUILES;     \*
DAVID VALENTIN-MILLAN, individually and as     \*
the son and personal representative of LUZ     \*
MILLAN-GUTIERREZ; DAVID     \*
VALENTIN-MILLAN; RAUL VALLE-MENDEZ;     \*

2

**GERMAN VARGAS-CUEBAS; VICTOR**    *
**VARGAS-ORTEGA; LUZ VAZQUEZ-PEREZ; JOSE**   *
**VAZQUEZ-VAZQUEZ; ISABEL VELEZ-IGLESIAS,**   *

       *
          **Plaintiffs,**        *

       *
**vs.**        *

       *
       *
**MERCK & CO., INC.**        *

       *
          **Defendant.**        *
       *

## COMPLAINT

COME NOW, the Plaintiffs, JOSE ACEVEDO; JOSE ADAMS-ALONSO; CARMEN ALMARANTE, as the husband and Personal Representative of MIGUEL ALMARANTE (deceased); ANTONIO BERRIOS; LEONOR CADELARIO-MALDANADO; IVANSKA CAPO-SILEN; FELIX CASIANO-MERCADO; MARGARITA CASTRO-JIMENEZ; LUIS CASTRO-RAMIREZ; JULIA CASTRO-ROBLEDO; ELISA CHAPARRO-CHAPARRO; JOSE CINTRO-ORTIZ; JUAN CLABAGUERA-SAVINON; MIRIAN CORCHADO-RIOS; MYRNA COSME-FERRER; ANGEL COSME-RUIZ; GLADYS CRESPO-GONZALEZ; JOSE CRUZ-JUARBE; CARMEN CRUZ-ORTIZ; MIGUEL CRUZ-VELAZQUEZ; CARMEN DALMAU-CASTRO; SONIA DAVILA-CABRERA; NATIVIDAD DE JESUS-DE JESUS; CARMEN DE JESUS-ROSARIO; VALINA DE LA CRUZ-MENDES; JESUS DE LA ROSA-GRULLON; MARILYN DIAZ-CABAN; ANGELICA DIAZ-IRIZARRY; MYRTA ECHAVARRY-COIRA; GLORIA FERNANDEZ; MARILUZ GUTIERREZ, as the daughter and Personal Representative of MANUAL GUTIERREZ (deceased); FERNANDO LOPEZ-DIRUBE; CAMELIA LOVELACE, individually, and

3

as the Personal Representative of LEGIA LOVELACE (deceased); FRANCISCO MARTINEZ; JOSEPHAT MONTANEZ-CAMACHO; LIZETTE MORALES-APONTE; ELUID MORALES-CARRASQUILLO; CARMEN MOREIRA-FRAGOSO; ANIBAL MUNOZ; ORLANDO NIEVES-QUILES; SERRANDO OJEDA, as the wife and Personal Representative of VICTOR MOLINA-FIGUEROA; EDGARDO ORTIZ-AYALA; SONIA OTERO-AGOSTO; MARGARITA OTERO-CAMACHO;  ANA PAGAN-DEJESUS; CARMEN PAGAN-SANMIGUEL; LUISA PARRILLA-TORRES; MIGUEL PEREIRA-CRUZ; SATURNINO PEREZ-ABUA; ORLANDO PEREZ-ALVAREZ; LUZ PEREZ-CABAN; GILBERTO PEREZ-VALENTIN; JESUS PUENTES-CASTRO; REINA QUINONES-MEDINA, as the daughter and Personal Representative of RAMON MEDINA-SABATER (deceased); MIGUEL RAMAS-ROMAN; HECTOR RAMIREZ-GOMEZ; JOSE RAMOS-ACEVEDO; YOLANDA RAMOS-DIAZ; MELQUIADES REYES-COLON; LUZ REYES-NEGRON; EDGAR-REYES-PEREZ; DOMINGO RIBOT-SANCHEZ; CARMEN RIOLLANO-MARRERO; NICOLAS RIVAS-SANTIAGO; JOAQUIN RIVERA; IRENE RIVERA-CASTRO; MILAGROS RIVERA-CRUZ; YOLANDA RIVERA-DIAZ; NIXSA RIVERA-RODRIGUEZ; MARIA RIVERA-TORRES; OTILIA RIVERA-VILLANUEVA; JOAQUIN RODRIGUEZ-MORALES; EMILIA RODRIGUEZ-PEREZ; FELIX RODRIGUEZ-RIVERA; JUAN RODRIGUEZ-RIVERA; JOVINO RODRIGUEZ-SEPULVEDA; VIRGINIA ROLDAN-GONZALEZ; MILDRED ROLDAN-RAMIREZ; GLADYS ROSA-VALLE; KAREN ROSA-VILLEGAS; MARIA RUIZ; JOSEFA RUIZ-ALVAREZ; EUSEBIA RUIZ-LEON; SHEILA SALDANA, as the daughter and Personal Representative of SHEILA SALDANA-RODRIGUEZ (deceased); RAFAELA

4

SALGADO-OTERO;   JUSTINIANO   SANCHEZ-MARTINEZ;   ALEXANDER SANTIAGO-RODRIGUEZ; HECTOR SANTIAGO-VALENTIN; MARIA SANTOS-CALIZ; LESVIA SANTO-VEGA; MARIA SEPULVEDA-TORRES; SERRANO-OJEDA; DALIA SERRANO-VELEZ; HECTOR SORIA-MELENDEZ; ANDRES SOTO-BURGOS; JEANNETTE SOTO-SANTIAGO; LUZ SOTO-SEGARRA; ELISA SOTO-VALLE; LAURA SUAREZ-COMA; FELIX TAPIA-VELAZQUEZ; JOSE TORRES-LOPEZ; ARACELIS TORRES-RODRIGUEZ; LUCILA TOSADO-CABAN; JOSE TRINIDAD-QUILES; DAVID VALENTIN-MILLAN, individually, and as the son and Personal Representative of LUZ MILLAN-GUTIERREZ; DAVID VALENTIN-MILLAN; RAUL VALLE-MENDEZ; GERMAN VARGAS-CUEBAS; VICTOR VARGAS-ORTEGA; LUZ VAZQUEZ-PEREZ; JOSE VAZQUEZ-VAZQUEZ; and ISABEL VELEZ-IGLESIAS; (hereinafter collectively referred to as "Plaintiffs"), by and through their undersigned counsel, and complaining of the Defendant, MERCK & CO., INC. (hereinafter referred to as "MERCK"), state as follows:

## I.   PARTIES

### A.   PLAINTIFFS

**Heart Attack Plaintiffs**

1.      Plaintiff, JOSEFA RUIZ-ALVAREZ, is a citizen and resident of Rio Piedras, Puerto Rico. Plaintiff ingested 25 mg and 50mg of Vioxx on a daily basis from 1999 to 2004. On or about December 2005, as a proximate result of her ingestion of Vioxx®, Plaintiff RUIZ-ALVAREZ suffered a heart attack and other health problems.

2.      Plaintiff, RAFAELA SALGADO-OTERO, is a citizen and resident of Bayamon, Puerto Rico. Plaintiff ingested 50 mg of Vioxx on a daily basis from 1999 to

2002. On or about 2001, as a proximate result of her ingestion of Vioxx®, Plaintiff SALGADO-OTERO suffered two heart attacks and other health problems.

3.      Plaintiff, CAMELIA LOVELACE, is a citizen and resident of Santo Domingo, Dominican Republic. Plaintiff LOVELACE was prescribed, purchased and ingested Vioxx® on a regular basis from 2001 through 2003. In April 2003, as a proximate result of her use of Vioxx®, Plaintiff LOVELACE suffered cardiovascular injuries resulting in the placement of stents in her heart. Plaintiff LOVELACE is also the sister and personal representative of LEGIA LOVELACE (deceased). Decedent LEGIA LOVELACE was prescribed, purchased and ingested Vioxx® on a daily basis. As a result of her use of Vioxx®, Decedent LEGIA LOVELACE suffered a heart attack and died.

4.      Plaintiff, LIZETTE MORALES-APONTE, is a citizen and resident of Salinas, Puerto Rico and is the daughter and personal representative of SARA APONTE-MARTINEZ, deceased. Decedent APONTE-MARTINEZ ingested 50 mg. of Vioxx® two times per day from December 2000 through February 2001. On or about March 9, 2001, as a proximate result of her ingestion of Vioxx®, Decedent APONTE-MARTINEZ suffered a stroke and on or about February 15, 2006, she suffered a heart attack causing her death.

5.      Plaintiff, ELISA CHAPARRO-CHAPARRO, is a citizen and resident of Aguada, Puerto Rico. Plaintiff was prescribed, purchased and ingested 25 mg Vioxx® tablets on a continuous basis from 2001 to 2003. As a proximate result of her Vioxx® ingestion, Plaintiff CHAPARRO-CHAPARRO suffered a cardiovascular event in 2004 and endured temporary paralysis.

6.      Plaintiff, MYRTA ECHAVARRY-COIRA, is a citizen and resident of Bayamon, Puerto Rico. Plaintiff was prescribed, purchased and ingested 50 mg Vioxx® tablets on a continuous basis from 2001 to 2003. As a proximate result of her Vioxx® ingestion, Plaintiff ECHAVARRY-COIRA suffered a heart attack in July of 2003.

7.      Plaintiff, GILBERTO PEREZ-VALENTIN, is a citizen and resident of Arecibo, Puerto Rico. Plaintiff ingested 25 mg of Vioxx® on a daily basis from 1998 to 2004. On or about June 2002, Plaintiff PEREZ-VALENTIN suffered high blood pressure and an aneurysm as a proximate result of his ingestion of Vioxx®.

8.      Plaintiff, MIGUEL RAMAS-ROMAN, is a citizen and resident of Moca, Puerto Rico. Plaintiff ingested 50 mg. of Vioxx® on a daily basis for one month in 2001. On or about 2001, Plaintiff ROMAS-ROMAN suffered a heart attack and clogged veins as a proximate result of his ingestion of Vioxx®.

9.      Plaintiff, DOMINGO RIBOT-SANCHEZ, is a citizen and resident of Fajardo, Puerto Rico. Plaintiff was prescribed, purchased and ingested Vioxx® and took it on a continuous basis. On or about August 2000, Plaintiff RIBOT-SANCHEZ suffered a heart attack as a proximate result of his ingestion of Vioxx®.

10.      Plaintiff, JOSE ADAMS-ALONSO, is a citizen and resident of San Juan, Puerto Rico. Plaintiff ingested 12.5 mg, 25 mg and 50 mg of Vioxx® on a daily basis from mid-1999 to 2002. On or about 2002 and on or about 2004, Plaintiff ADAMS-ALONSO suffered heart attacks as a proximate result of his ingestion of Vioxx®.

11.      Plaintiff, FERNANDO LOPEZ-DIRUBE, is a citizen and resident of Guaynabo, Puerto Rico. Plaintiff was prescribed, purchased and ingested Vioxx® and

took on a continuous basis during 2003.  On or about 2005, Plaintiff LOPEZ-DIRUBE suffered a heart attack as a proximate result of his ingestion of Vioxx®.

12.     Plaintiff, FELIX TAPIA-VELAZQUEZ, is a citizen and resident of Bayamon, Puerto Rico. Plaintiff ingested 12.5 mg and 50 mg of Vioxx on a daily basis from early January 2002 through April 2004. On or about 2002, Plaintiff TAPIA-VELAZQUEZ suffered 3 heart attacks and other health problems as a proximate result of his ingestion of Vioxx.

13.     Plaintiff, ARACELIS TORRES-RODRIGUEZ, is a citizen and resident of Sabana Grande, Puerto Rico. Plaintiff ingested 50 mg of Vioxx on a daily basis from early 2001 through 2003. On or about 2003, Plaintiff TORRES-RODRIGUEZ suffered, a heart attack, chest angina and other health problems as a proximate result of her ingestion of Vioxx.

14.     Plaintiff, ISABEL VELEZ-IGLESIAS, is a citizen and resident of Cabo Rojo, Puerto Rico.  Plaintiff ingested 25 mg of Vioxx® on a daily basis from October 2003 to May 2004.  On or about May 2004, Plaintiff VELEZ-IGLESIAS suffered a heart attack as a proximate result of her ingestion of Vioxx®.

**Non-Heart Attack Cardiovascular Injury Plaintiffs**

15.     Plaintiff, JOSEPHAT MONTANEZ-CAMACHO, is a citizen and resident of Caguas, Puerto Rico.  Plaintiff ingested 25 mg. of Vioxx®® on a daily basis in June 2004.   On or about June 19, 2004, Plaintiff MONTANEZ-CAMACHO suffered cardiovascular problems, including heart palpitations, headaches, dizziness and nervousness as a result of her ingestion of Vioxx®.

16.    Plaintiff, ELUID MORALES-CARRASQUILLO, is a citizen and resident of Caguas, Puerto Rico.   Plaintiff ingested 50 mg. of Vioxx® on a daily basis in September 2002.   On or about September 2002, Plaintiff MORALES-CARRASQUILLO suffered cardiovascular problems, such as heart palpitations, as a result of his ingestion of Vioxx®.

17.    Plaintiff, ORLANDO NIEVES-QUILES, is a citizen and resident of San Sebastian, Puerto Rico.   Plaintiff ingested 25 mg. and 50 mg. of Vioxx® on a daily basis from 2000 through 2004.   Between 2000 and 2003, Plaintiff NIEVES-QUILES suffered cardiovascular and emotional problems as a result of his ingestion of Vioxx®.

18.    Plaintiff, EDGARDO ORTIZ-AYALA, is a citizen and resident of Sabana Grande, Puerto Rico.   Plaintiff ingested 50 mg. of Vioxx® on a daily basis in 1993.   On or about 1993, Plaintiff ORTIZ-AYALA suffered cardiovascular problems, such as heart palpitations, and insomnia as a result of his ingestion of Vioxx®.

19.    Plaintiff, SONIA OTERO-AGOSTO, is a citizen and resident of San Juan, Puerto Rico.   Plaintiff ingested 25 mg. of Vioxx® two times per day from October 2001 through 2004.   Starting on or about October 2001, Plaintiff OTERO-AGOSTO suffered cardiovascular problems, such as high blood pressure, chest pains, heart palpitations, as well leg circulation problems (venous insufficiency) and depression as a result of her ingestion of Vioxx®.

20.    Plaintiff, MARGARITA OTERO-CAMACHO, is a citizen and resident of Bayamon, Puerto Rico.   Plaintiff ingested 50 mg. of Vioxx® on a daily basis for about one month in 2004.   On or about December 2004, Plaintiff OTERO-CAMACHO suffered chest pains and depression as a result of her ingestion of Vioxx®.

21.     Plaintiff, ANA PAGAN-DEJESUS, is a citizen and resident of Carolina, Puerto Rico.  Plaintiff ingested 12.5 mg. of Vioxx® two times per day on a continuous basis from January 2004 through September 2004.  On or about 2004, Plaintiff PAGAN-DEJESUS suffered high blood pressure, heart palpitations, muscular pain, swollen legs, and bad blood circulation as a result of her ingestion of Vioxx®.

22.     Plaintiff, CARMEN PAGAN-SANMIGUEL, is a citizen and resident of San Juan, Puerto Rico.  Plaintiff ingested 25 mg. and 50 mg. of Vioxx® two times per day on a continuous basis from 1999 through 2003.  On or about 2003-2004, Plaintiff PAGAN-SANMIGUEL suffered vascular necrosis and loss of balance which resulted in a hip replacement and arm operation as a result of her ingestion of Vioxx®.

23.     Plaintiff, MIGUEL PEREIRA-CRUZ, is a citizen and resident of Caguas, Puerto Rico.  Plaintiff ingested 25 mg. of Vioxx® three times per day on a continuous basis from 2001 through September 2004.  During this period, Plaintiff PEREIRA-CRUZ suffered heart palpitations and symptoms of a heart attack such as severe chest pain and arm pain/numbing as a result of his ingestion of Vioxx®.

24.     Plaintiff, JOAQUIN RODRIGUEZ-MORALES, is a citizen and resident of Fajardo, Puerto Rico.  Plaintiff was prescribed, purchased and ingested Vioxx® and took on a continuous basis from 2000 through 2004.  On or about April 2003, Plaintiff RODRIGUEZ-MORALES suffered from high blood pressure as a proximate result of his ingestion of Vioxx®.

25.     Plaintiff, EMILIA RODRIGUEZ-PEREZ, is a citizen and resident of San Sebastian, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® on a daily basis from 1999 to

10

2005. On or about 2002, Plaintiff RODRIGUEZ-PEREZ suffered high blood pressure, persistent headaches and other health problems as a result of her ingestion of Vioxx®.

26.     Plaintiff, JUAN RODRIGUEZ-RIVERA, is a citizen and resident of Juncos, Puerto Rico. Plaintiff ingested 25 mg of Vioxx® on a daily basis from 2000 to 2004. On or about late 2000, Plaintiff RODRIGUEZ-RIVERA suffered high blood pressure, chest pain, gastrointestinal problems and other health problems as a result of his ingestion of Vioxx®.

27.     Plaintiff, FELIX RODRIGUEZ-RIVERA, is a citizen and resident of Cidra, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® on a daily basis from 2002 to late 2004. On or about July and August 2003, Plaintiff RODRIGUEZ-RIVERA suffered chest pain, high blood pressure, allergies, headaches, blurry vision, stomachache and other health problems as a result of his ingestion of Vioxx®.

28.     Plaintiff, JOVINO RODRIGUEZ-SEPULVEDA, is a citizen and resident of Santa Isabel, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® on a daily basis from 2001 to 2004. On or about, 2003, Plaintiff RODRIGUEZ-SEPULVEDA suffered problems with the valves of his heart and brain oxygenation and other health problems as a result of his ingestion of Vioxx®.

29.     Plaintiff, EUSEBIA RUIZ-LEON, is a citizen and resident of Ponce, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® on a daily basis from March 2001 to September 2001. On or about 2001, Plaintiff RUIZ-LEON suffered from a tachycardia, asthma and other health problems as a result of her ingestion of Vioxx®.

30.     Plaintiff, ALEXANDER SANTIAGO-RODRIGUEZ, is a citizen and resident of Carolina, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® on a daily basis

from 1998 to 2002. On or about 1999, Plaintiff SANTIAGO-RODRIGUEZ suffered heart problems including episodes of tachycardia and other health problems as a result of his ingestion of Vioxx®.

31.   Plaintiff, LEONOR CADELARIO-MALDANADO, is a citizen and resident of Ponce, Puerto Rico. Plaintiff was prescribed, purchased and ingested 25 mg and/or 50 mg Vioxx® tablets once daily. Plaintiff took the drug on a continuous basis from 2000-2004 and as a proximate result of her Vioxx® ingestion, Plaintiff CADELARIO-MALDANADO suffered cardiovascular injury including arterial and valve damage.

32.   Plaintiff, IVANSKA CAPO-SILEN, is a citizen and resident of Carolina, Puerto Rico. Plaintff was prescribed, purchased and ingested 25 mg and 50 mg Vioxx® tablets each once daily to combat arthritis, back and knee pain. From 2002 through 2003, Plaintiff IVANSKA CAPO-SILEN took Vioxx® and as a proximate result of her Vioxx® ingestion, Plaintiff suffered tachycardia, angina, and fibrillation.

33.   Plaintiff, FELIX CASIANO-MERCADO, is a citizen and resident of San German, Puerto Rico. Plaintiff was prescribed, purchased and ingested 50 mg Vioxx® tablets to combat knee and ankle pain sustained after a fall. He took Vioxx® on a continuous basis from 2000 through 2002, and as a proximate result of his Vioxx® ingestion, Plaintiff CASIANO-MERCADO suffered cardiovascular injuries including high blood pressure in 2002.

34.   Plaintiff, MARGARITA CASTRO-JIMENEZ, is a citizen and resident of Humacao, Puerto Rico. Plaintiff was prescribed, purchased and ingested 25 mg Vioxx® tablets from 1999 until 2005. As a proximate result of her Vioxx® ingestion, in or

around December of 2005, Plaintiff CASTRO-JIMENEZ suffered tachycardia, chest pains, developed a rapid pulse and shortness of breath.

35.     Plaintiff, JULIA CASTRO-ROBLEDO, is a citizen and resident of San Juan, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 25 mg and/or 50 mg Vioxx® tablets to combat neck, back and intestinal pains.  She took Vioxx® on a continuous basis and as a proximate result of her Vioxx® ingestion, Plaintiff CASTRO-ROBLEDO suffered cardiovascular injury including chest pains and difficulty breathing.

36.     Plaintiff, MIRIAN CORCHADO-RIOS, is a citizen and resident of Isabela, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 25 mg Vioxx® tablets and/or 50 mg Vioxx® tablets twice daily to combat arthritis pain.  Plaintiff took Vioxx® on a continuous basis from 2003 to 2004 and as a proximate result of her Vioxx® ingestion, Plaintiff CORCHADO-RIOS suffered cardiovascular injury including high blood pressure in 2004.

37.     Plaintiff, GLADYS CRESPO-GONZALEZ, is a citizen and resident of Caguas, Puerto Rico.  Plaintiff was prescribed, purchased and ingested Vioxx® tablets, and as a proximate result of her Vioxx® ingestion, Plaintiff CRESPO-GONZALEZ suffered blood clots and circulation problems.

38.     Plaintiff, CARMEN CRUZ-ORTIZ, is a citizen and resident of Barceloneta, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 12.5 mg, 25 mg and/or 50 mg Vioxx® tablets once a day to combat back pain.  She took Vioxx® on a continuous basis from 1999 until the drug's recall, and as a proximate result of her Vioxx® ingestion, Plaintiff CRUZ-ORTIZ has suffered cardiovascular injury including vascular problems and high blood pressure since 2000.

39.     Plaintiff, MIGUEL CRUZ-VELAZQUEZ, is a citizen and resident of Caguas, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 50 mg Vioxx® tablets once daily on a continuous basis for several months in 2001, and as a proximate result of his Vioxx® ingestion, Plaintiff CRUZ-VELAZQUEZ suffered cardiovascular injury including high blood pressure.

40.     Plaintiff, CARMEN DALMAU-CASTRO, is a citizen and resident of Toa Baja, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 50 mg Vioxx® tablets in 2003 and as a proximate result of her Vioxx® ingestion, Plaintiff DALMAU-CASTRO suffered cardiovascular injury and gastric pains in or around July 2004.

41.     Plaintiff, SONIA DAVILA-CABRERA, is a citizen and resident of Morobys, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 12.5 mg Vioxx® tablets once daily to combat arthritis in 2003.  She took Vioxx® on a continuous basis for two months and as a proximate result of her Vioxx® ingestion, Plaintiff DAVILA-CABRERA suffered cardiovascular injury including chest pains, gastric problems and intestinal bleeding in or around 2003.

42.     Plaintiff, NATIVIDAD DE JESUS-DE JESUS, is a citizen and resident of Dorado, Puerto Rico.  Plaintiff was prescribed, purchased and ingested Vioxx® for approximately one year before the drug was taken off the market.  As a proximate result of her Vioxx® ingestion, Plaintiff DE JESUS-DE JESUS suffered cardiovascular injury including chest pains, high blood pressure, and difficulty breathing.

43.     Plaintiff, VALINA DE LA CRUZ-MENDES, is a citizen and resident of Las Piedras, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 25 mg and/or 50 mg Vioxx® tablets once a day to combat back pain, arthritis and a lumber fracture.

14

As a proximate result of her Vioxx® continuous ingestion between 2002 and 2003, Plaintiff DE LA CRUZ-MENDEZ suffered cardiovascular injury.

44.     Plaintiff, JESUS DE LA ROSA-GRULLON, is a citizen and resident of San Juan, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 50 mg Vioxx® tablets on a continuous basis in or around September of 2003.  As a proximate result of his Vioxx® ingestion, Plaintiff DE LA ROSA-GRULLON suffered cardiovascular injury including a thrombosis in his right leg, high blood, and circulatory problems.

45.     Plaintiff, MARILYN DIAZ-CABAN, is a citizen and resident of Trujillo Alto, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 50 mg Vioxx® tablets twice daily on a continuous basis from 1999 to 2002.  As a proximate result of her Vioxx® ingestion, Plaintiff DIAZ-CABAN suffered cardiovascular injury including strong heart palpitations and high blood pressure.

46.     Plaintiff, ANGELICA DIAZ-IRIZARRY, is a citizen and resident of Ponce, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 12.5 mg and/or 25 mg Vioxx® tablets twice daily from 2001 to 2002.  As a proximate result of her Vioxx® ingestion, Plaintiff DIAZ-IRIZARRY suffered cardiovascular injury including chest pains, numerous heart palpitations, dizziness, and fatigue.

47.     Plaintiff, SATURNINO PEREZ-ABUA, is a citizen and resident of Camuy, Puerto Rico.  Plaintiff was prescribed, purchased and ingested Vioxx® and took it on a continuous basis from 2000 through 2002.  During this time period, Plaintiff PEREZ-ABUA suffered high blood pressure as a proximate result of his ingestion of Vioxx®.

15

48.     Plaintiff, JESUS PUENTES-CASTRO, is a citizen and resident of Fajardo, Puerto Rico.  Plaintiff ingested 25 mg. and 50 mg. of Vioxx® two times per day from 2003 to 2004.  On or about January 2003, Plaintiff PUENTES-CASTRO suffered high blood pressure and irregular heart beats as a proximate result of his ingestion of Vioxx®.

49.     Plaintiff, HECTOR RAMIREZ-GOMEZ, is a citizen and resident of Ponce, Puerto Rico.  Plaintiff ingested 25 mg. of Vioxx® on a daily basis starting in April 2001.  On or about April 25, 2001, Plaintiff GOMEZ-RAMIREZ suffered heart palpitations, anxiety, nervousness and depressions as a proximate result of his ingestion of Vioxx®.

50.     Plaintiff, YOLANDA RAMOS-DIAZ, is a citizen and resident of Trujillo Alto, Puerto Rico.  Plaintiff ingested 12.5 mg, 25 mg, and 50 mg of Vioxx® up to three times per day from 2001 to 2003. On or about 2001 to 2003, Plaintiff RAMOS-DIAZ suffered high blood pressure, arrhythmia and chest pains as a proximate result of her ingestion of Vioxx®.

51.     Plaintiff, MELQUIADES REYES-COLON, is a citizen and resident of Humacao, Puerto Rico.  Plaintiff ingested 50 mg. of Vioxx® two times per day from 2003 to 2004.  On or about October 2005, Plaintiff REYES-COLON suffered high blood pressure, slow heart and loss of an eye as a proximate result of his ingestion of Vioxx®.

52.     Plaintiff, EDGAR REYES-PEREZ, is a citizen and resident of Utudao, Puerto Rico. Plaintiff ingested 25 mg and 50 mg of Vioxx® on a daily basis from 1999 to 2004. During this time period, Plaintiff REYES-PEREZ suffered loss of memory, loss of

coordination and other heart related problems as a proximate result of his ingestion of Vioxx®.

53.    Plaintiff, CARMEN RIOLLANO-MARRERO, is a citizen and resident of Guaynabo, Puerto Rico.  Plaintiff ingested 25 mg. of Vioxx® on a daily basis from 1999 to 2001.  During this time period, Plaintiff RIOLLANO-MARRERO suffered chest pains, vertigo, allergies and depression as a proximate result of her ingestion of Vioxx®.

54.    Plaintiff, IRENE RIVERA-CASTRO, is a citizen and resident of Fajardo, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 25 mg of Vioxx® and took it on a continuous basis.  Since on or about 2003-2004, Plaintiff RIVERA-CASTRO has suffered high blood pressure as a proximate result of her ingestion of Vioxx®.

55.    Plaintiff, MILAGROS RIVERA-CRUZ, is a citizen and resident of Rio Grande, Puerto Rico.  Plaintiff ingested 50 mg. of Vioxx® two times per day on a continuous basis from February 2001 to 2002.  On or about February 2002, Plaintiff RIVERA-CRUZ suffered high blood pressure and skin rashes as a proximate result of her ingestion of Vioxx®.

56.    Plaintiff, NIXSA RIVERA-RODRIGUEZ, is a citizen and resident of Rio Piedras, Puerto Rico.  Plaintiff ingested 12.5 mg, 25 mg and 50 mg of Vioxx® two times per day from 2002 to September 2004.  On or about 2003, Plaintiff RIVERA-RODRIGUEZ suffered high blood pressure as a proximate result of his ingestion of Vioxx®.

57.    Plaintiff, MARIA RIVERA-TORRES, is a citizen and resident of Carolina, Puerto Rico.  Plaintiff ingested 25 mg. of Vioxx® on a daily basis from 2000 to 2002.  From on or about 2001, Plaintiff RIVERA-TORRES suffered arrhythmia, heart

17

palpitations, chest pains, hypertension and dizziness as a proximate result of her ingestion of Vioxx®.

58.     Plaintiff, KAREN ROSA-VILLEGAS, is a citizen and resident of San Juan, Puerto Rico. Plaintiff ingested 25 mg and 50 mg of Vioxx® two times per day from 1997 to 2004. On or about October 2005, Plaintiff ROSA-VILLEGAS suffered high blood pressure as a proximate result of her ingestion of Vioxx®.

59.     Plaintiff, VIRGINIA ROLDAN-GONZALEZ, is a citizen and resident of San Lorenzo, Puerto Rico. Plaintiff ingested 25 mg and 50 mg of Vioxx® on a daily basis from 1989 to 2003. On or about 1999, Plaintiff ROLDAN-GONZALEZ suffered high blood pressure as a proximate result of her ingestion of Vioxx®.

60.     Plaintiff, LUZ SOTO-SEGARRA, is a citizen and resident of San Sebastian, Puerto Rico. Plaintiff ingested 25 mg of Vioxx® on a daily basis from 2003 to September 2004. On or about 2003, Plaintiff SOTO-SEGARRA suffered high blood pressure, heart palpitations and chest pains as a proximate result of her ingestion of Vioxx®.

61.     Plaintiff, JUAN CLABAGUERA-SAVINON, is a citizen and resident of San Juan, Puerto Rico. Plaintiff was prescribed, purchased and ingested Vioxx® and took on a continuous basis starting on January 2004.     On or about April 2004, Plaintiff CLABAGUERA-SAVINON suffered severe heart problems as a proximate result of his ingestion of Vioxx®.

62.     Plaintiff, LUIS CASTRO-RAMIREZ, is a citizen and resident of Massachusetts, United States. Plaintiff ingested 25 mg of Vioxx® on a daily basis from early 2002 through 2004. On or about 2003, Plaintiff CASTRO-RAMIREZ suffered, high

18

blood pressure, loss of memory, circulatory problems and other health problems as a proximate result of his ingestion of Vioxx®.

63.     Plaintiff, HECTOR SANTIAGO-VALENTIN, is a citizen and resident of San Antonio, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® on a daily basis from early 2001 through 2004. On or about March 2005, Plaintiff SANTIAGO-VALENTIN suffered heart problems, high blood pressure and other health problems as a proximate result of his ingestion of Vioxx®.

64.     Plaintiff, MARIA SANTOS-CALIZ, is a citizen and resident of Ponce, Puerto Rico. Plaintiff ingested 12.5 mg of Vioxx® on a daily basis from early 1999 through 2004. On or about 2000, Plaintiff SANTOS-CALIZ suffered, chest pain, tachycardia and other health problems as a proximate result of her ingestion of Vioxx®.

65.     Plaintiff, LESVIA SANTOS-VEGA, is a citizen and resident of Ponce, Puerto Rico. Plaintiff ingested 25mg and 50 mg of Vioxx® on a daily basis from 1999 through 2004. On or about 2000, Plaintiff SANTOS-VEGA suffered hypertension and other health problems as a proximate result of her ingestion of Vioxx®.

66.     Plaintiff, MARIA SEPULVEDA-TORRES, is a citizen and resident of Ponce, Puerto Rico. Plaintiff ingested 25mg and 50 mg of Vioxx® on a daily basis on 2002. On or about 2002, Plaintiff SEPULVEDA-TORRES suffered from high blood pressure, chest angina  and other health problems as a proximate result of her ingestion of Vioxx®.

67.     Plaintiff, DALIA SERRANO-VELEZ, is a citizen and resident of Carolina, Puerto Rico.  Plaintiff was prescribed, purchased and ingested Vioxx® and took on a continuous basis in 2002. On or about 2002, Plaintiff SERRANO-VELEZ

suffered high blood pressure and allergies as a proximate result of her ingestion of Vioxx®.

68.     Plaintiff, HECTOR SORIA-MELENDEZ, is a citizen and resident of Ponce, Puerto Rico. Plaintiff ingested 25 mg and 50 mg of Vioxx® on a daily basis from early 1997 through 2004. On or about 2000, Plaintiff SORIA-MELENDEZ suffered, high blood pressure and other health problems as a proximate result of his ingestion of Vioxx®.

69.     Plaintiff, JEANNETTE SOTO-SANTIAGO, is a citizen and resident of Ponce, Puerto Rico. Plaintiff ingested 25 mg and 50 mg of Vioxx® on a daily basis from early 2000. On or about 2000, Plaintiff SOTO-SANTIAGO suffered, chest pain, tachycardia, high blood pressure and other health problems as a proximate result of her ingestion of Vioxx®.

70.     Plaintiff, ELISA SOTO-VALLE, is a citizen and resident of Aguada, Puerto Rico. Plaintiff ingested 25 mg and 50 mg of Vioxx® on a daily basis from early 2002 through 2003. On or about 2002, Plaintiff SOTO-VALLE suffered high blood pressure, chest angina, respiratory problems and other health problems as a proximate result of her ingestion of Vioxx®.

71.     Plaintiff, VICTOR VARGAS-ORTEGA, is a citizen and resident of Cabo Rojo, Puerto Rico. Plaintiff ingested 25 mg and 50 mg of Vioxx® on a daily basis from 2001 to 2004.   During this period, Plaintiff VARGAS-ORTEGA suffered severe headaches, severe chest pain and shortness of breath as a proximate result of his ingestion of Vioxx®.

72.     Plaintiff, LUZ VAZQUEZ-PEREZ, is a citizen and resident of Toa Alta, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® two times per day from 1998 to 2004. On or about 2001, Plaintiff VAZQUEZ-PEREZ suffered high blood pressure, irregular heart beats, severe headaches and swollen stomach as a proximate result of her ingestion of Vioxx®.

73.     Plaintiff, JOSE VAZQUEZ-VAZQUEZ, is a citizen and resident of Bayamon, Puerto Rico. Plaintiff ingested 25 mg of Vioxx® two times per day starting in 1999. On or about 1999, Plaintiff VAZQUEZ-VAZQUEZ suffered high blood pressure, chest pains and insomnia as a proximate result of his ingestion of Vioxx®.

74.     Plaintiff, LUCILA TOSADO-CABAN, is a citizen and resident of Camuy, Puerto Rico. Plaintiff ingested 25 mg of Vioxx® on a daily basis from early 2000 through 2004. On or about 2003, Plaintiff TOSADO-CABAN suffered, high blood pressure, migraine, asthma and other health problems as a proximate result of her ingestion of Vioxx®.

75.     Plaintiff, JOSE TRINIDAD-QUILES, is a citizen and resident of Manati, Puerto Rico. Plaintiff ingested 25 mg and 50 mg of Vioxx® on a daily basis from early January 2003 through January 2004. On or about January 2005, Plaintiff TRINIDAD-QUILES suffered, chest pain, high blood pressure and other health problems as a proximate result of his ingestion of Vioxx®.

76.     Plaintiff, DAVID VALENTIN-MILLAN, is a citizen and resident of Toa Alta, Puerto Rico. Plaintiff ingested 25 mg and 50 mg of Vioxx® on a daily basis from 2000 to 2002.  On or about 2001, Plaintiff VALENTIN-MILLAN suffered high blood pressure, hypertension and chest pains as a proximate result of his ingestion of Vioxx®.

77.    Plaintiff, JOSE TORRES-LOPEZ, is a citizen and resident of Humacao, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® on a daily basis from early 2000 through 2004. On or about 2005, Plaintiff TORRES-LOPEZ suffered an enlarged heart, high blood pressure and other health problems as a proximate result of his ingestion of Vioxx®.

**Cerebrovascular Event (Stroke) Plaintiffs**

78.    Plaintiff, GLADYS ROSA-VALLE, is a citizen and resident of Fajardo, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® on a daily basis from 2001 to 2005.  On or about July and August 2004, Plaintiff ROSA-VALLE suffered stroke, severe stomach aches, loss of memory, high blood pressure and other health problems as a result of her ingestion of Vioxx®.

79.    Plaintiff, JUSTINIANO SANCHEZ-MARTINEZ, is a citizen and resident of San Juan, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® on a daily basis from 1990 to October 22, 2004.  On or about August 24, 2002, Plaintiff SANCHEZ-MARTINEZ suffered a stroke and other health problems as a result of his ingestion of Vioxx®.

80.    Plaintiff, MYRNA COSME-FERRER, is a citizen and resident of Bayamon, Puerto Rico. Plaintiff was prescribed, purchased and ingested 12.5 mg, 25 mg and/or 50 mg Vioxx® tablets twice a day from 2002 until a television announcement alerted her to the dangers of Vioxx®. She took Vioxx® on a continuous basis and as a proximate result of her Vioxx® ingestion, Plaintiff COSME-FERRER suffered a stroke that left her permanently paralyzed on the left side of her body in 2004.

81.    Plaintiff, ANGEL COSME-RUIZ, is a citizen and resident of Bayamon, Puerto Rico. Plaintiff was prescribed, purchased and ingested 12.5 mg Vioxx® tablets to

22

combat the pain of a herniated disk.  As a proximate result of his Vioxx® ingestion between 2004 and 2005, on or around December 29, 2005, Plaintiff COSME-RUIZ suffered a stroke.

82.     Plaintiff, CARMEN DE JESUS-ROSARIO, is a citizen and resident of Rio Grande, Puerto Rico.  Plaintiff was prescribed, purchased and ingested 50 mg Vioxx® tablets twice daily on a continuous basis from 2001 to 2003.  As a proximate result of her Vioxx® ingestion, Plaintiff DE JESUS-ROSARIO suffered a stroke on March 27, 2002.

83.     Plaintiff, CARMEN MOREIRA-FRAGOSO, is a citizen and resident of Naguabo, Puerto Rico. Plaintiff ingested 25 mg of Vioxx® on a daily basis from May 2002 to September 2004.  On or about February 2006, Plaintiff MOREIRA-FRAGOSO suffered a stroke as a proximate result of her ingestion of Vioxx®.

84.     Plaintiff, YOLANDA RIVERA-DIAZ, is a citizen and resident of Corozal, Puerto Rico.  Plaintiff ingested 25 mg. of Vioxx® on a daily basis from January 2000 to August 2001.  On or about May 2001, Plaintiff RIVERA-DIAZ suffered a stroke as a proximate result of her ingestion of Vioxx®.

85.     Plaintiff, OTILIA RIVERA-VILLANUEVA, is a citizen and resident of San Sebastian, Puerto Rico. Plaintiff ingested 25 mg of Vioxx® on a daily basis. On or about March 2005, Plaintiff RIVERA-VILLANUEVA suffered a stroke as a proximate result of her ingestion of Vioxx®.

86.     Plaintiff, LAURA SUAREZ-COMA, is a citizen and resident of Cataño, Puerto Rico. Plaintiff ingested 25 mg of Vioxx® on a daily basis from early 2003 through May 2004. On or about May 28, 2004, Plaintiff SUAREZ-COMA suffered a brain stroke,

23

enlarged heart and other health problems as a proximate result of her ingestion of Vioxx®.

87.     Plaintiff, RAUL VALLE-MENDEZ, is a citizen and resident of Aguada, Puerto Rico. Plaintiff ingested 12.5 mg of Vioxx® two times per day from 2000 to 2001. On or about 2001, Plaintiff VALLE-MENDEZ suffered a stroke, loss of lateral vision and chest angina as a proximate result of his ingestion of Vioxx®.

**Other Injury Plaintiffs**

88.     Plaintiff, MILDRED ROLDAN-RAMIREZ, is a citizen and resident of Canovanas, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® on a daily basis from May 2000 to July 2000. On or about 2004, Plaintiff ROLDAN-RAMIREZ suffered episodes of bladder problems and other health problems as a result of her ingestion of Vioxx®.

89.     Plaintiff, JOSE CRUZ-JUARBE, is a citizen and resident of Bayamon, Puerto Rico. Plaintiff was prescribed, purchased and ingested 50 mg Vioxx® tablets of which he took continuously, and as a proximate result of his Vioxx® ingestion, on September 30, 2001, Plaintiff CRUZ-JUARBE suffered injury including difficulty breathing.

90.     Plaintiff, LUISA PARRILLA-TORRES, is a citizen and resident of Bayamon, Puerto Rico. Plaintiff was prescribed, purchased and ingested 50 mg of Vioxx® and took it on a continuous basis from February 2002 to June 2002. On or about 2003, Plaintiff PARRILLA-TORRES suffered gastritis, vertigo, vein problems in both legs and depression as a proximate result of her ingestion of Vioxx®.

91.     Plaintiff, ORLANDO PEREZ-ALVAREZ, is a citizen and resident of Ponce, Puerto Rico. Plaintiff was prescribed, purchased and ingested Vioxx® three times

per day in 2004.  On or about 2004, Plaintiff PEREZ-ALVAREZ suffered cardiovascular problems and on or about 2006, Plaintiff suffered respiratory problems all a result of his ingestion of Vioxx®.

92.      Plaintiff, JOSE RAMOS-ACEVEDO, is a citizen and resident of Camuy, Puerto Rico.  Plaintiff ingested 50 mg. of Vioxx® on a daily basis from starting in October 2000. Plaintiff RAMOS-ACEVEDO suffered personal injury damages as a proximate result of her ingestion of Vioxx®.

93.      Plaintiff, LUZ REYES-NEGRON, is a citizen and resident of Utuado, Puerto Rico.  Plaintiff ingested 12.5 mg and 50 mg. of Vioxx® on a daily basis from 2000 through September 2004.   Plaintiff REYES-NEGRON suffered personal injury damages as a proximate result of her ingestion of Vioxx®.

94.      Plaintiff, NICOLAS RIVAS-SANTIAGO, is a citizen and resident of La Plata, Puerto Rico.  Plaintiff ingested 12.5 mg and 50 mg of Vioxx® on a daily basis from 2000 to 2004.  Starting on or about 2000, Plaintiff RIVAS-SANTIAGO suffered constant nervousness, stomach aches and loss of balance as a proximate result of his ingestion of Vioxx®.

95.      Plaintiff, GERMAN VARGAS-CUEBAS, minor, represented by his mother, EVELYN CUEBAS-AVILES, is a citizen and resident of Maricao, Puerto Rico. Plaintiff ingested 50 mg of Vioxx® on a continuous basis from August 2004 to September 2004.  On or about 2004, Plaintiff VARGAS-CUEBAS suffered pressure in his head, severe headaches and bloody nose as a proximate result of his ingestion of Vioxx®.

**Wrongful Death Clients**

96.     Plaintiff, SERRANO OJEDA, is a citizen and resident of Cidra, Puerto Rico and is the wife and personal representative of VICTOR MOLINA-FIGUEROA, deceased. Decedent MOLINA-FIGUEROA ingested 25mg and 50 mg of Vioxx® on a daily basis from early 2003 through 2004. On or about July 17, 2005, Decedent MOLINA-FIGUEROA suffered a massive heart attack resulting in his death as a proximate result of his ingestion of Vioxx®.

97.     Plaintiff, SHEILA SALDANA, is a citizen and resident of Toa Alta, Puerto Rico, and is the daughter and personal representative of SHEILA SALDANA-RODRIGUEZ, deceased.   Decedent SALDANA-RODRIGUEZ ingested 50mg of Vioxx® on a daily basis from 2000 to October 14, 2004.  On or about September 27, 2003, Decedent SALDANA-RODRIGUEZ died as a result of her ingestion of Vioxx®.

98.     Plaintiff, REINA QUINONES-MEDINA, is a citizen and resident of Ponce, Puerto Rico and is the daughter and personal representative of RAMONA MEDINA-SABATER, deceased. Decedent MEDINA-SABATER ingested 50 mg. of Vioxx® on a continuous basis from January 2002 through February 2003. On or about February 9, 2003, Decedent MEDINA-SABATER suffered a heart attack causing her death as a proximate result of her ingestion of Vioxx®.

99.     Plaintiff, DAVID VALENTIN-MILLAN, is a citizen and resident of Bayamon, Puerto Rico, and is the son and personal representative of LUZ MILLAN-GUTIERREZ, deceased.  Decedent MILLAN-GUTIERREZ ingested 25 mg of Vioxx® on a daily basis from early 2000 through 2002. On or about July 2003, Decedent

MILLAN-GUTIERREZ suffered from a shut down of her heart and lungs causing her death as a proximate result of her ingestion of Vioxx®.

100.    Plaintiff, FRANCISCO MARTINEZ, is a citizen and resident of La Vega, Dominican Republic and is the son and personal representative of LUZ LIBRADA SANCHEZ (deceased). Decedent LIBRADA-SANCHEZ was prescribed, purchased and ingested Vioxx® on a daily basis from April 2004 to June 2004. As a result of his use of Vioxx®, Decedent LIBRADA-SANCHEZ suffered a cerebrovascular accident on March 7, 2002 and August 13, 2005.

101.    Plaintiff, MARILUZ GUTIERREZ, is a citizen and resident of Santo Domingo, Dominican Republic. Plaintiff, MARILUZ GUTIERREZ is the daughter and personal representative of MANUEL GUTIERREZ (deceased). Decedent GUTIERREZ was prescribed, purchased and ingested Vioxx® on a daily basis from April 2004 to June 2004. As a result of his use of Vioxx®, Decedent GUTIERREZ suffered injuries that caused his death on or about June 23, 2004.

102.    Plaintiff, CARMEN ALMARANTE, is a citizen and resident of New York, New York. Plaintiff ALMARANTE is the husband and personal representative of MIGUEL ALMARANTE (deceased).    Decedent MIGUEL ALMARANTE was prescribed, purchased and ingested Vioxx®. As a result of his use of Vioxx®, Decedent MIGUEL ALMARANTE suffered injuries that caused his death.

**Loss of Consortium Plaintiffs**

103.    Plaintiff, ANIBAL MUNOZ, is a resident and citizen of Rio Grande, Puerto Rico and the husband of Plaintiff CARMEN DE JESUS-ROSARIO. As a proximate result of the injuries to his wife, Plaintiff MUNOZ has been deprived of the

27

love, companionship, affection, society, sexual consortium, comfort and physical support he had previously received from his wife.

104.    Plaintiff, JOSE ACEVEDO, is a resident and citizen of Humacao, Puerto Rico and the wife of Plaintiff MARGARITA CASTRO-JIMENEZ. As a proximate result of the injuries to his wife, Plaintiff ACEVEDO has been deprived of the love, companionship, affection, society, sexual consortium, comfort and physical support he had previously received from his wife.

105.    Plaintiff, JOAQUIN RIVERA, is a resident and citizen of Aguado, Puerto Rico and the wife of Plaintiff ELISA CHAPARRO-CHAPARRO. As a proximate result of the injuries to his wife, Plaintiff RIVERA has been deprived of the love, companionship, affection, society, sexual consortium, comfort and physical support he had previously received from his wife.

106.    Plaintiff, ANDRES SOTO-BURGOS, is a resident and citizen of Santurce, Puerto Rico and the husband of Plaintiff SONIA OTERO-AGOSTO. As a proximate result of the injuries to his wife, Plaintiff SOTO-BURGOS has been deprived of the love, companionship, affection, society, sexual consortium, comfort and physical support he had previously received from his wife.

107.    Plaintiff, LUZ PEREZ-CABAN, is a resident and citizen of Moco, Puerto Rico and the wife of Plaintiff MIGUEL RAMOS-ROMAN. As a proximate result of the injuries to her husband, Plaintiff PEREZ-CABAN has been deprived of the love, companionship, affection, society, sexual consortium, comfort and physical support he had previously received from her husband.

28

108.    Plaintiff, MARIA RUIZ, is a resident and citizen of Fajardo, Puerto Rico and the wife of Plaintiff DOMINGO RIBOT-SANCHEZ. As a proximate result of the injuries to her husband, Plaintiff RUIZ has been deprived of the love, companionship, affection, society, sexual consortium, comfort and physical support he had previously received from her husband.

109.    Plaintiff, GLORIA HERNANDEZ, is a resident and citizen of La Plata, Puerto Rico and the wife of Plaintiff NICOLAS RIVAS-SANTIAGO. As a proximate result of the injuries to her husband wife, Plaintiff HERNANDEZ has been deprived of the love, companionship, affection, society, sexual consortium, comfort and physical support he had previously received from her husband.

110.    Plaintiff, ANTONIO BERRIOS, is a resident and citizen of Bayamon, Puerto Rico and the husband of Plaintiff RAFAELA SALGADO-OTERO. As a proximate result of the injuries to his wife, Plaintiff BERRIOS has been deprived of the love, companionship, affection, society, sexual consortium, comfort and physical support he had previously received from his wife.

111.    Plaintiff, JOSE CINTRO-ORTIZ, is a resident and citizen of Ponce, Puerto Rico and the husband of Plaintiff MARIA SEPULVEDA-TORRES. As a proximate result of the injuries to his wife, Plaintiff ORTIZ has been deprived of the love, companionship, affection, society, sexual consortium, comfort and physical support he had previously received from his wife.

**B.      DEFENDANT**

112.    Defendant, MERCK & CO., INC., is headquartered in Whitehouse Station, New Jersey.

29

113.    At all times relevant hereto, Defendant MERCK, was engaged in the business of testing, marketing, distributing, and promoting the pharmaceutical Vioxx® throughout the United States, Puerto Rico and the Dominican Republic.

114.    The injuries and damages of Plaintiffs herein were caused by the wrongful acts, omissions, and fraudulent misrepresentations of MERCK in researching, testing, developing, manufacturing, distributing, licensing, labeling and marketing the drug Vioxx®.

115.    Plaintiffs file this lawsuit within the applicable limitations period either because the injury complained of occurred within two years of the filing of this complaint; or within two years of first suspecting that Vioxx® was the cause of the injuries sustained by Plaintiffs.   Plaintiffs could not, by the exercise of reasonable diligence, have discovered the wrongful cause of their injuries at an earlier time because the cause of the injuries were unknown to Plaintiffs.   Plaintiffs did not suspect, nor did they have any reason to suspect, that their ingestion of Vioxx® was the cause of their respective injuries until less than the applicable limitations period prior to the filing of this action. All Puerto Rico plaintiffs herein obtained knowledge of their right to sue only after the information was made available to them on or about August 2006. Additionally, Plaintiffs were prevented from discovering this information sooner because MERCK misrepresented and/or suppressed material information to the public and to the medical profession regarding the safety of Vioxx®.

## II.    JURISDICTION

116.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000 exclusive of

interest and costs, and because this is an action by individuals and representative Plaintiffs who are citizens of a different state from the Defendant MERCK.

117.    The filing of this claim directly in this Multidistrict Litigation proceeding is proper pursuant to Pretrial Order number 11 issued by this Court on May 18, 2005.

118.    Defendant MERCK is a corporation headquartered and with its principal place of business in the State of New Jersey. MERCK has, therefore, subjected itself to personal jurisdiction and venue is proper in this District pursuant to 28 U.S.C. § 1391.

119.    At all times relevant hereto, MERCK engaged in the business of researching, testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directly or indirectly through third parties, the pharmaceutical drug Vioxx® in the Dominican Republic, Puerto Rico and throughout the United States.

### III.    FACTUAL BACKGROUND OF VIOXX

120.    MERCK was incorporated more than 100 years ago and has its principal place of business and worldwide headquarters in Whitehouse Station, New Jersey. The research and development of Vioxx® (including the manufacture of its active ingredient Rofecoxib), took place at MERCK's research laboratories, which are located in Rahway, also in New Jersey.

121.    MERCK made every decision related to the development, design, manufacture, testing, marketing, distribution, and commercialization of Vioxx® from its headquarters in the state of New Jersey.   All aspects of Vioxx®'s worldwide commercialization and the ultimate decision to withdraw Vioxx® from the world market were orchestrated by MERCK from its headquarters in the state of New Jersey.

122.    Vioxx® is the brand name of rofecoxib and is classified as a nonsteroidal anti-inflammatory drug (NSAID) with anti-inflammatory, analgesic and antipyretic properties.  As such, it is indicated for pain, dysmenorrheal, osteoarthritis and rheumatoid arthritis.   The earlier marketed NSAID products (i.e., ibuprofen, naproxen, etc.) are approved for similar indications.

123.    Vioxx® is a Cyclooxygenase-2 (Cox-2) selective inhibitor and as such has a lower incidence of gastrointestinal upset and a lower ulcerogenic potential. However, inhibiting the Cox-2 enzyme selectively causes an imbalance between Prostacyclin (PGI) and Thromboxane A-2 (TX A2).  Because "TX A2 is a major compound in the clotting process, and is a potent platelet aggregator and vasoconstrictor," the resulting imbalance between PGI and TX A2 places patients at an increased risk of thromboembolic events, primarily heart attacks and strokes.  *The MERCK Manual (16th ed.  1992).*

124.    MERCK, the maker of Vioxx®, is also the publisher of *The MERCK Manual* (16th ed. 1992), which includes the following definition: "Thrombaxane A-2 is a major compound involved in the clotting process, and is a potent platelet aggregator and vasoconstrictor."  This section of *The MERCK Manual* was not included in the 17th edition, published in 1999.

125.    MERCK-employed physicians, as well as industry leaders supported by MERCK, have published on the subject of Cox-2 inhibition induced prostaglandin synthesis and TXA2, creating a pro-thrombotic state that places patients at an increase risk of heart attack and stroke.  *See Effects of Specific Inhibition of Cyclooxygenase-2 on*

*Sodium   Balance,   Hemo-dynamics,   and   Vasoactive   Eiosanoids,*   289   (2) PHARMACOLOGY & EXPERIMENTAL THERAPEUTICS (May 1999).

126.   Vioxx® was approved by the U.S. Food and Drug Administration on May 20, 1999. The "Warnings" section of the labeling for rofecoxib, at the time the drug was approved by the FDA, contained a section "Gastrointestinal (GI) Effects – Risk of GI Ulceration, Bleeding and Perforation." At this time the warning did not mention any risk of potential adverse cardiovascular effects or cerebrovascular effects.

127.   At the conclusion of the VIGOR study, it was reported that serious cardiovascular events, including heart attacks and strokes, occurred in patients taking Vioxx® compared to patients taking naproxen. In the VIGOR study, analysis of the cardiovascular data by the Safety Monitoring Board focused on "the excess deaths and cardiovascular adverse experiences in [the Vioxx group] compared to [the Naproxen group]."

128.   On March 27, 2000, MERCK issued a press release stating that Vioxx® caused fewer digestive tract problems than Naproxen. More importantly, the press release further stated that the VIGOR results did not show that Vioxx® caused cardiovascular problems, but that Naproxen protected against them.

129.   In June 2000, studies presented at the European United League Against Rheumatism (EULAR), an organization which MERCK is a member and sponsor, revealed that Vioxx® use resulted in a statistically significant increase in hypertension, myocardial infarction and stroke. MERCK failed to accurately publish or inform consumers about these studies and in fact denied some of the results in the industry magazine "Pharmacy Today."

130.   In November 2000, the New England Journal of Medicine published the results of the VIGOR study.  MERCK responded to the studies damning results by downplaying and/or withholding information regarding the severity of the cardiovascular risks associated with Vioxx®.  In a January 2001 public 8-K filing with the Securities and Exchange Commission, MERCK represented that the VIGOR study showed that Vioxx® reduced the risk of serious GI complications by ½ as compared to Naproxen, but failed to mention the dangerous adverse health effects.

131.   In February 2001, an FDA Advisory Panel recommended the FDA require the Vioxx® label carry a warning about the drug's cardiovascular risks.  The Advisory Panel relied on the results of the VIGOR study in coming to this recommendation.  In response, MERCK issued a press release stating, "In response to news and analyst reports of data the Company first released a year ago, Merck & Co., Inc., today reconfirmed the favorable cardiovascular safety profile of Vioxx®."

132.   On August 22, 2001 an article titled "Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors" was published in the Journal of the American Medical Association (JAMA) which suggested that the use of Cox-2 inhibitors might lead to increased cardiovascular events.  The study and accompanying article were conducted by Cleveland Clinic physicians Eric Topol and Steven Nessen.

133.   The day before the release of the JAMA article, a MERCK statement was reported in Bloomberg News noting that "we [MERCK] have additional data beyond what they [Drs. Topol and Nessen] cite, and the findings are very, very reassuring, Vioxx does not result in any increase in cardiovascular events compared to placebo."  On

August 23, 2001, the day after the JAMA article, MERCK stated in a press release that "the Company stands behind the overall and cardiovascular safety profile ... of Vioxx®."

134.    MERCK's fraudulent advertising and marketing campaign resulted in a sharp rebuke by the FDA in a September 17, 2001 "Warning Letter." The letter, from the Division of Drug Marketing, Advertising, and Communications (DDMAC) issued the following warning to MERCK; "You (MERCK) have engaged in a promotional campaign for Vioxx® that minimizes the potentially serious cardiovascular findings that were observed in the Vioxx® Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx®." The letter goes on to state:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx® were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (Naproxen).

135.    The FDA's eight page "Warning Letter" set forth in detail MERCK's misrepresentations and misconduct with regard to the marketing of Vioxx® stating:

> The promotional activities and materials described above minimize the potentially serious cardiovascular findings that were observed in the VIGOR study, minimize the Vioxx®/Coumadin drug interaction, omit crucial risk information associated with Vioxx® therapy, contain unsubstantiated comparative claims and promote unapproved uses. On December 16, 1999, we also objected to your dissemination of promotional materials for Vioxx® that misrepresented Vioxx®'s safety profile, contained unsubstantiated comparative claims, and lacked fair balance.
>
> Due to the seriousness of these violations, and the fact that your violative promotion of Vioxx® has continued despite our prior written notification regarding similar violations, we request that you provide a detailed response to the issues raised in this Warning Letter on or before October 1, 2001.
>
> This response should contain an action plan that includes a comprehensive plan to disseminate corrective messages about the issues discussed in this

letter to the audiences that received these misleading messages.   This
corrective action plan should also include:

1.  Immediately ceasing all violative promotional activities,
    and the dissemination of violative promotional materials
    for Vioxx®.

2.  Issuing a "Dear Healthcare provider" letter to correct false
    or misleading impressions and information.  This proposed
    letter should be submitted to us for review prior to its
    release.   After agreement is reached on the content and
    audience, the letter should be disseminated by direct mail to
    all healthcare providers who were, or may have been
    exposed to the violative promotion.

3.  A written statement of your intent to comply with "1" and
    "2" above.

136.   In 2002 and 2003, despite repeated requests from the American Heart
Association, the National Stroke Association and the Arthritis Foundation that it conduct
additional safety studies on Vioxx®, MERCK refused to conduct any such study and
continued to claim that Vioxx® was safe.

137.   An October 30, 2003, article in the <u>Wall Street Journal</u> reported that a
study presented at the annual meeting of the American College of Rheumatology
confirmed an increased risk of heart attacks in patients taking Vioxx®.   The study,
sponsored by MERCK, examined the medical records of 54,475 Medicare patients and
found that within the first 30 days of taking Vioxx® the risk of heart attack was increased
by 30% as compared to Celebrex.

138.   Also in 2003, Dr. Daniel Solomon and Dr. Jerry Avorn, a Divisional
Director at Brigham and Women's Hospital in Boston, reported in a MERCK financed
study based on a survey of patient records that Vioxx® use resulted in increased
cardiovascular risks, even at some moderate dosages.   MERCK disputed the findings of

the Avorn-Solomon study and removed the name of the MERCK epidemiologist who had contributed to it before the study was published in a medical journal.

139.    In May 2004, the results of a Canadian study published in "The Lancet" found that elderly patients taking Vioxx® had an 80% increase in hospital admissions for congestive heart failure within one year of taking Vioxx® when compared to persons taking other NSAIDS. The study reviewed data from 1.3 million elderly patients taking Vioxx®, Celebrex, NSAIDs, or no medication.

140.    On August 25, 2004, Dr. David Graham, Associate Director for Science in the FDA's Office of Drug Safety, revealed that a database analysis of 1.4 million patients showed Vioxx® users were more likely to suffer a heart attack or sudden cardiac death than those taking Celebrex or an older NSAID.

141.    Despite the voluminous evidence pointing to the cardiovascular dangers of Vioxx®, on August 26, 2004, MERCK continued to state that Vioxx® was safe and that any cardiovascular or cardiothrombotic side effects were not related to Vioxx® use. In a press release MERCK stated that it "stands behind the efficacy, overall safety and cardiovascular safety of Vioxx®."

142.    On September 30, 2004, MERCK withdrew Vioxx® from all markets after its own internal study revealed Vioxx® almost tripled the risk of heart attack and stroke for those who take the product long term (more than 18 months). The company's decision was based on three-year data from a prospective, randomized, placebo-controlled clinical trial, the APPROVe (Adenomatous Polyp Prevention on Vioxx®) trial.

143.    On April 7, 2005, the U.S. Food and Drug Administration (FDA) stated that MERCK, which withdrew Vioxx® from the market last September, had not

presented sufficient evidence to lift the moratorium. The FDA commissioner affirmed that the risks of Vioxx® outweighed the benefits, overruling the earlier recommendation of an advisory panel that believed the painkillers could be safely marketed.

144.    The FDA decision to continue the moratorium was based upon the substantial scientific evidence that Vioxx® and other Cox-2 inhibitors increase the risk of cardiovascular (CV) events such as heart attacks and strokes, gastrointestinal (GI) bleeding and ulcers, as well as adverse skin reactions such as Stevens-Johnson Syndrome, in which the patient suffers blisters and burn-like sensations. These were recognized as class-wide risks associated with the entire family of NSAID's even over-the-counter medications like Advil, Aleve, and Motrin. The FDA recommended that those NSAIDs which remain on the market should carry "black-box" labels, the strictest type of warning, in order to ensure that physicians and consumers are aware of the risks.

## IV.    GENERAL ALLEGATIONS

145.    MERCK's strategy was to aggressively market Vioxx® by falsely misleading potential users about the products and by failing to protect users from serious dangers that MERCK knew, or should have known would result from the use of Vioxx®.

146.    MERCK engaged in an advertising blitz to market Vioxx® in order to induce widespread use of Vioxx®.   This marketing campaign consisted of advertisements, promotional literature to be placed in the offices of doctors and other health care providers, and other promotional materials provided to potential Vioxx® users.

147.    This advertising program sought to create the image to consumers and physicians that the use of Vioxx® was safe for human use, had fewer side effects and

38

adverse reactions than other pain relief medications despite the fact that MERCK knew these to be untrue and false, and there were no reasonable grounds to believe them to be true.

148.    MERCK's campaign to minimize, understate and/or hide the health hazards or risks associated with Vioxx® were carried out through the use of promotional materials, audio conferences, professional meetings, and press releases which deceived potential users of Vioxx® by relaying positive information such as testimonials, and manipulation of statistics, while downplaying the known adverse health effects.    The materials presented by MERCK to physicians and users misrepresented the severity, frequency and nature of the adverse health effects caused by Vioxx® and falsely represented that adequate testing had been conducted concerning Vioxx®.

149.    Despite overwhelming evidence to the contrary, up to September 30, 2004 MERCK continued to represent to consumers that Vioxx® was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with Vioxx®. As a proximate result of MERCK's deceptive and fraudulent marketing efforts, which either omitted or misrepresented the serious health risks of Vioxx®, the Plaintiffs regularly purchased and ingested Vioxx® for various periods of time.    All of the injuries alleged by Plaintiffs herein were the proximate result of their use of Vioxx®.

150.    In addition to the link to cardiovascular events, Vioxx® has been linked to several severe and life threatening medical disorders including, but not limited to, edema, changes in blood pressure, seizures, kidney and liver damage, and pregnancy complications.

151.   MERCK's tortuous conduct took place entirely at its headquarters and research laboratories in New Jersey.  MERCK obtained the results of its tests at its laboratories and decided to continue to commercialize Vioxx® after it knew from the resulting cardiovascular risks from its headquarters in New Jersey.  It was MERCK's headquarters in New Jersey where the ultimate decisions on research protocols and on interpretation and dissemination of the results of its internal studies were made.

## V.   CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY PURSUANT TO
### §402A OF THE RESTATEMENT (SECOND) OF TORTS
### (DEFECTIVE DESIGN AND FAILURE TO WARN)

152.   Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

153.   Defendant MERCK, from its headquarters in New Jersey, made every and all decisions regarding the manufacturing, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing Vioxx® in the United States (including Puerto Rico) and the Dominican Republic, which it sold and distributed throughout the U.S. and Dominican Republic to the Plaintiffs herein.

154.   The Plaintiffs were using Vioxx® in a manner for which it was intended or in a reasonably foreseeable manner.

155.   Vioxx® was expected to and did reach the Plaintiffs without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, warned, and otherwise distributed.

40

156.    The Plaintiffs were not aware of, and reasonably could not have discovered, the dangerous nature of Vioxx®.

157.    At the time Vioxx® was manufactured and sold to Plaintiffs by MERCK, it was in a defective condition and unreasonably dangerous when put to its foreseeable use, and subjected its users to increased risks of heart attacks, strokes, and other illnesses which exceeded its benefits, and for which other safer products were available.

158.    Alternatively, when Vioxx® was manufactured and sold to Plaintiffs by MERCK, it was defective in design and formulation, making it more dangerous than other drugs for pain relief.  Despite its knowledge of the defective and dangerous nature of Vioxx®, MERCK failed to warn Plaintiffs and other users of the various adverse health effects of Vioxx®.

159.    The Vioxx® sold to Plaintiffs reached Plaintiffs without substantial change.  Plaintiffs were unaware of the dangerousness of the product, and ingested Vioxx® without making any changes or alterations and used it in a manner foreseeable and reasonably anticipated by MERCK.

160.    As a direct and proximate result of the defective and unreasonably dangerous design, and failure of MERCK to warn of these dangers, Plaintiffs suffered the injuries alleged hereinabove and other actual damages to be proven at trial and/or are threatened with irreparable harm by undue risk of physical injuries or death.

161.    MERCK, therefore, is strictly liable to the Plaintiffs.  MERCK knew of the defective and/or dangerous condition of Vioxx®, yet continued to manufacture, distribute, advertise, market and sell Vioxx® to Plaintiffs and the general public in

conscious disregard for their safety. The Plaintiffs, therefore, are entitled to punitive damages.

## COUNT II
## NEGLIGENCE AND/OR WANTONNESS

162.   Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

163.   Defendant MERCK designed, produced, manufactured and placed Vioxx into the stream of commerce in the regular course of its business, knowing it would be used by consumers such as the Plaintiffs.

164.   At all times herein, MERCK had a duty to properly manufacture, design, test, research, distribute, label and adequately warn of the risks and dangers of Vioxx®.

165.   Contrary to its duty, MERCK was guilty of one or more of the following negligent and/or wanton acts and/or omissions:

  (A).   Failed to adequately and properly test and inspect Vioxx® so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

  (B).   Failed to utilize and/or implement a reasonably safe design in the manufacture of Vioxx®;

  (C).   Failed to manufacture Vioxx® in a reasonably safe condition for which it was intended;

  (D).   Failed to adequately and properly warn Plaintiffs purchasing Vioxx® of the risks of complications when used in a manner for which it was intended;

42

(E).   Failed to adequately and properly warn Plaintiffs purchasing Vioxx® of the risks of diseases when used in a manner for which it was intended.

(F.)   Failed to adequately and properly label Vioxx® so as to warn the Plaintiffs of the risks of complications;

(G).   Failed to adequately and properly label Vioxx® so as to warn the Plaintiffs of the risks of retinal artery conclusion;

(H).   Manufactured Vioxx® which constituted a hazard to health;

(I).   Manufactured Vioxx® which caused adverse side effects;

(J)   Suppressed information about the dangers of Vioxx®;

(K)   Misrepresented information about the safety of Vioxx®; and

(J).   Was otherwise negligent and wanton.

166.   As a direct and proximate result of MERCK's negligent and/or wanton manufacture, design, test, research, distribute, label and/or failure to adequately warn of the risks and dangers of Vioxx®, Plaintiffs suffered the injuries alleged hereinabove and other actual damages to be proven at trial and/or are threatened with irreparable harm by undue risk of physical injuries or death.

167.   MERCK knew of the defective and/or dangerous condition of Vioxx®, yet ignored such warnings and continued to manufacture, distribute, advertise, market and sell Vioxx® to Plaintiffs and the general public in conscious disregard for their safety.

## COUNT III
## VIOLATIONS OF THE NEW JERSEY CONSUMER PROTECTION ACT

168.   Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

43

169.    MERCK engaged in unfair competition and/or unfair or deceptive acts and practices in violation of the New Jersey consumer protection statute when it represented, through advertising, warranties, and toher express representations that Vioxx® had benefits or characteristics that it did not actually possess.  MERCK further violated the consumer protection statutes when it falsely represented that Vioxx® was of a particular standard or quality when it was not.  Lastly, MERCK violated the consumer protection statutes when it advertised Vioxx® with the intent not to sell it as advertised, and in so doing, concealed and suppressed facts material to the true characteristics, standards and quality of Vioxx®.

170.    MERCK's deceptive practices were specifically designed to induce, and indeed did induce, Plaintiffs to buy Vioxx®.

171.    As a direct and proximate result of MERCK's unfair methods of competition and unfair or deceptive acts and practices, Plaintiffs suffered the injuries alleged hereinabove and other actual damages to be proven at trial and/or are threatened with irreparable harm by undue risk of physical injury.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**

172.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

173.    Defendant MERCK expressly warranted to Plaintiff, by and through statements made by MERCK or its authorized agents or sales representative, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Vioxx® was safe, effective, fit and proper for its intended use.

44

174.   In using Vioxx®, Plaintiff relied on the skill, judgment, representations and foregoing express warranties of the MERCK. Said warranties and representations were false in that the aforementioned product was not safe and was unfit for the uses for which it was intended.

175.   As a direct and proximate result of MERCK's breach of warranty, Plaintiffs suffered the injuries alleged hereinabove and other actual damages to be proven at trial and/or are threatened with irreparable harm by undue risk of physical injuries or death.

**COUNT V**
**BREACH OF IMPIED WARRANTY**

176.   Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

177.   Prior to the time that Vioxx® was used by Plaintiffs, Defendant MERCK impliedly warranted to Plaintiffs that Vioxx® was of merchantable quality and safe and fit for the use for which it was intended.

178.   Plaintiffs were and are unskilled in the research, design and manufacture of Vioxx® and reasonably relied entirely on the skill, judgment and implied warranty of the Defendant MERCK in using Vioxx®.

179.   Vioxx® was neither safe for its intended use nor of merchantable quality, as warranted by MERCK, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

180.   As a direct and proximate result of MERCK's breaches of warranty, Plaintiffs suffered the injuries alleged hereinabove and other actual damages to be proven

at trial and/or are threatened with irreparable harm by undue risk of physical injuries or death.

### COUNT VI
### FRAUDULENT MISREPRESENTATION

181.   Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

182.   Defendant MERCK misrepresented a number of material facts to the general public, including Plaintiffs and/or their treating physicians, regarding: the potential serious cardiovascular side effects of Vioxx use observed in the VIGOR study; the Vioxx®/Coumadin interaction; crucial risk information associated with Vioxx®; and the safety of Vioxx®, including the representation that any cardiovascular or cardiothrombotic side effects were not associated with the drug.

183.   These representations were false and made by MERCK with knowledge of their falsity, or with ignorance of their truth or falsity.

184.   These representations were material to Plaintiffs and/or their treating physicians' decision to prescribe Vioxx® to them.   MERCK intended for Plaintiffs and/or their treating physicians to rely upon these material misrepresentations in order to induce Plaintiffs to seek Vioxx® and/or for Plaintiffs' treating physicians to prescribe Vioxx®.

185.   Plaintiffs' treating physicians and other health care providers were unaware of the falsity of MERCK's representations as described above.   Plaintiffs' treating physicians and other health care providers were reasonable in, and relied on the truthfulness of MERCK's representations regarding Vioxx®.

46

186.   As a direct and proximate result of MERCK's fraudulent misrepresentations, Plaintiffs suffered the injuries alleged hereinabove and other actual damages to be proven at trial and/or are threatened with irreparable harm by undue risk of physical injuries or death.

## COUNT VII
## FRAUDLENT OMISSION/SUPPRESSION

187.   Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

188.   Defendant MERCK had superior knowledge of the risks and dangers of Vioxx®, as described herein.   Such knowledge was not reasonably discoverable by Plaintiffs, Plaintiffs' treating physicians, other healthcare providers, or the general public.

189.   MERCK had actual knowledge of the cardiovascular and cardiothrombotic effects of Vioxx®, yet failed to disclose this information to Plaintiffs, Plaintiffs' treating physicians, other healthcare providers, or the general public.   MERCK also engaged in a pattern of actively suppressing and concealing this information when marketing and promoting Vioxx® to Plaintiffs, Plaintiffs' treating physicians, other healthcare providers, and the general public in direct to consumer advertisements.   Specifically, MERCK:

a.   Downplayed the results of various studies, including their own, showing the cardiovascular and cardiothrombotic effects of Vioxx®;

b.   Withheld adverse reports or gave incorrect information about the reports they received regarding the side effects of Vioxx®, such as heart attacks and strokes; and

47

c.      Instructed their sales force to dodge and mislead doctors when asked about the cardiovascular and cardiothrombotic effects of Vioxx®;

190.    MERCK's failure to disclose these material facts constitute fraudulent suppression/concealment.

191.    MERCK knew the suppressed/concealed facts were unavailable to Plaintiffs, Plaintiffs' treating physicians, other healthcare providers, or the general public, yet MERCK instructed its agents, servants and employees to not disclose this material information in order to promote the sale of Vioxx®.

192.    The suppressed/concealed material facts described above were material, and MERCK was aware, or should have been aware, that it was suppressing/concealing material facts. MERCK suppressed/concealed these material facts with the intent that Plaintiffs and/or their treating physicians rely on said omissions.

193.    Plaintiffs and their treating physicians were unaware of the suppressed/concealed material facts and were reasonable in relying on said omissions.

194.    If Plaintiffs and/or their treating physicians had known of the suppressed/concealed material facts Plaintiffs would not have taken Vioxx®.

195.    As a direct and proximate result of MERCK's fraudulent suppressions/concealment of material facts, Plaintiffs suffered the injuries alleged hereinabove and other actual damages to be proven at trial and/or are threatened with irreparable harm by undue risk of physical injuries or death.

## COUNT VII
## LOSS OF CONSORTIUM

196.    Plaintiffs' ANIBAL MUNOZ, JOSE ACEVEDO, JOAQUIN RIVERA, ANDRES SOTO-BURGOS, LUZ PEREZ-CABAN, MARIA RUIZ, GLORIA

HERNANDEZ, ANTONIO BERRIOS, and JOSE CONTRO-ORTIZ repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

197. Plaintiffs ANIBAL MUNOZ, JOSE ACEVEDO, JOAQUIN RIVERA, ANDRES SOTO-BURGOS, LUZ PEREZ-CABAN, MARIA RUIZ, GLORIA HERNANDEZ, ANTONIO BERRIOS, and JOSE CONTRO-ORTIZ have been and are the lawfully wedded spouses of Plaintiffs VICTOR MOLINA-FIGEUROA, SHEILA SALDANA-RODRIGUEZ, RAMONA MEDINA-SABATER, LUZ MILLAN-GUTIERREZ, and LUZ LIBRADA-SANCHEZ.

198. Prior to the occurrence complained herein, Plaintiffs VICTOR MOLINA-FIGEUROA, SHEILA SALDANA-RODRIGUEZ, RAMONA MEDINA-SABATER, LUZ MILLAN-GUTIERREZ, and LUZ LIBRADA-SANCHEZ were in good health and served as the companion of their spouses.

199. As the direct and proximate result of the aforementioned, Plaintiffs VICTOR MOLINA-FIGEUROA, SHEILA SALDANA-RODRIGUEZ, RAMONA MEDINA-SABATER, LUZ MILLAN-GUTIERREZ, and LUZ LIBRADA-SANCHEZ, sustained severe and permanent injuries and illnesses, both externally and internally, and was and will be hindered and prevented from attending to his usual duties, obligations, and employment, has lost and will in the future lose the value of that time, has suffered great pain and anguish, both in mind and body, and will in the future continue to suffer, and incur expenses for medical care and services in endeavoring to become healed and cured of his injuries.

200.    Since the time of the occurrences complained of herein, and as a direct and proximate result of the injuries sustained by Plaintiffs VICTOR MOLINA-FIGUEROA, SHEILA SALDANA-RODRIGUEZ, RAMONA MEDINA-SABATER, LUZ MILLAN-GUTIERREZ, and LUZ LIBRADA-SANCHEZ, Plaintiffs ANIBAL MUNOZ, JOSE ACEVEDO, JOAQUIN RIVERA, ANDRES SOTO-BURGOS, LUZ PEREZ-CABAN, MARIA RUIZ, GLORIA HERNANDEZ, ANTONIO BERRIOS, and JOSE CONTRO-ORTIZ, have been deprived of the love, companionship, affection, society, sexual consortium, comfort and physical support which they previously received from their spouses and will continue in the future to be deprived of said love, companionship, affection, society, sexual consortium, comfort and physical support of domestic affairs.

WHEREFORE, Plaintiffs, JOSE ACEVEDO; JOSE ADAMS-ALONSO; CARMEN ALMARANTE; ANTONIO BERRIOS; LEONOR CADELARIO-MALDANADO; IVANSKA CAPO-SILEN; FELIX CASIANO-MERCADO; MARGARITA CASTRO-JIMENEZ; LUIS CASTRO-RAMIREZ; JULIA CASTRO-ROBLEDO; ELISA CHAPARRO-CHAPARRO; JOSE CINTRO-ORTIZ; JUAN CLABAGUERA-SAVINON; MIRIAN CORCHADO-RIOS; MYRNA COSME-FERRER; ANGEL COSME-RUIZ; GLADYS CRESPO-GONZALEZ; JOSE CRUZ-JUARBE; CARMEN CRUZ-ORTIZ; MIGUEL CRUZ-VELAZQUEZ; CARMEN DALMAU-CASTRO; SONIA DAVILA-CABRERA; NATIVIDAD DE JESUS-DE JESUS; CARMEN DE JESUS-ROSARIO; VALINA DE LA CRUZ-MENDES; JESUS DE LA ROSA-GRULLON; MARILYN DIAZ-CABAN; ANGELICA DIAZ-IRIZARRY; MYRTA ECHAVARRY-COIRA; GLORIA FERNANDEZ; MARILUZ GUTIERREZ; FERNANDO LOPEZ-DIRUBE; CAMELIA LOVELACE; FRANCISCO

MARTINEZ; JOSEPHAT MONTANEZ-CAMACHO; LIZETTE MORALES-APONTE; ELUID MORALES-CARRASQUILLO; CARMEN MOREIRA-FRAGOSO; ANIBAL MUNOZ; ORLANDO NIEVES-QUILES; SERRANDO OJEDA; EDGARDO ORTIZ-AYALA; SONIA OTERO-AGOSTO; MARGARITA OTERO-CAMACHO;   ANA PAGAN-DEJESUS; CARMEN PAGAN-SANMIGUEL; LUISA PARRILLA-TORRES; MIGUEL PEREIRA-CRUZ; SATURNINO PEREZ-ABUA; ORLANDO PEREZ-ALVAREZ; LUZ PEREZ-CABAN; GILBERTO PEREZ-VALENTIN; JESUS PUENTES-CASTRO; REINA QUINONES-MEDINA; MIGUEL RAMAS-ROMAN; HECTOR RAMIREZ-GOMEZ; JOSE RAMOS-ACEVEDO; YOLANDA RAMOS-DIAZ; MELQUIADES REYES-COLON; LUZ REYES-NEGRON; EDGAR-REYES-PEREZ; DOMINGO RIBOT-SANCHEZ; CARMEN RIOLLANO-MARRERO; NICOLAS RIVAS-SANTIAGO; JOAQUIN RIVERA; IRENE RIVERA-CASTRO; MILAGROS RIVERA-CRUZ; YOLANDA RIVERA-DIAZ; NIXSA RIVERA-RODRIGUEZ; MARIA RIVERA-TORRES; OTILIA RIVERA-VILLANUEVA; JOAQUIN RODRIGUEZ-MORALES; EMILIA RODRIGUEZ-PEREZ; FELIX RODRIGUEZ-RIVERA; JUAN RODRIGUEZ-RIVERA; JOVINO RODRIGUEZ-SEPULVEDA; VIRGINIA ROLDAN-GONZALEZ; MILDRED ROLDAN-RAMIREZ; GLADYS ROSA-VALLE; KAREN ROSA-VILLEGAS; MARIA RUIZ; JOSEFA RUIZ-ALVAREZ; EUSEBIA RUIZ-LEON; SHEILA SALDANA; RAFAELA SALGADO-OTERO; JUSTINIANO SANCHEZ-MARTINEZ; ALEXANDER SANTIAGO-RODRIGUEZ; HECTOR SANTIAGO-VALENTIN; MARIA SANTOS-CALIZ; LESVIA SANTO-VEGA; MARIA SEPULVEDA-TORRES; SERRANO-OJEDA; DALIA SERRANO-VELEZ; HECTOR SORIA-MELENDEZ; ANDRES

51

SOTO-BURGOS; JEANNETTE SOTO-SANTIAGO; LUZ SOTO-SEGARRA; ELISA SOTO-VALLE; LAURA SUAREZ-COMA; FELIX TAPIA-VELAZQUEZ; JOSE TORRES-LOPEZ; ARACELIS TORRES-RODRIGUEZ; LUCILA TOSADO-CABAN; JOSE TRINIDAD-QUILES; DAVID VALENTIN-MILLAN; DAVID VALENTIN-MILLAN; RAUL VALLE-MENDEZ; GERMAN VARGAS-CUEBAS; VICTOR VARGAS-ORTEGA; LUZ VAZQUEZ-PEREZ; JOSE VAZQUEZ-VAZQUEZ; and ISABEL VELEZ-IGLESIAS pray that the Court enter judgment against Defendant, MERCK CO., INC., and in favor of the Plaintiffs, for:

a.   A fair and just amount of actual damages sufficient to adequately and completely compensate Plaintiffs for the nature, extent and duration of the injuries and damages inflicted and the costs of this action;

b.   Costs of suit;

c.   Attorneys' fees;

d.   Pre-judgment and post-judgment interest;

e.   Punitive damages in a fair and reasonable amount sufficient to punish MERCK and deter others from engaging in similar conduct; and

f.   For such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon Liason Counsel, Russ Herman and Phillip Wittman by U.S. Mail and upon all parties by electronically uploading the same to LexisNexis File and Serve, and that said original is being filed with the Clerk of the United States District Court for the Eastern District of Louisiana on this the 28th day of September, 2006.


Chris W. Cantrell
Alabama State Bar # ASB-1500-R80C
**THE LAMB FIRM, LLC**
2017 Second Avenue North, Suite 200
(35203)
P.O. Box 2088
Birmingham, Alabama 35201
Phone: (205) 324-4644
Fax: (205) 324-4649

Respectfully submitted,

Chris W. Cantrell
Attorney for Plaintiff

**OF COUNSEL**:
Archie C. Lamb, Jr.
Dana Dachelet
***THE LAMB FIRM, LLC***
2017 Second Avenue North, Suite 200 (35203)
P.O. Box 2088
Birmingham, Alabama 35201
Phone: (205) 324-4644
Fax: (205) 324-4649

Eric Quetsglas
QUETSGLAS LAW OFFICES
PO Box 16606
San Juan, Puerto Rico 00908
Phone: (787) 722-0635
Fax: (787) 722-3970

E. Kirk Wood
E. KIRK WOOD, P.C.
P.O. Box 382434
Birmingham, Alabama 35283