# EXHIBIT 83

897029v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT LOUISIANA

*U.S. DISTRICT COURT
EASTERN DISTRICT OF LA*
*2007 FEB -1 PM 12: 37*
*LORETTA G. WHYTE
CLERK*

MATTHEW DEVITO, MICHAEL ELLIS,
HARRIET GOFF, THOMAS HALL, JOE
LYONS, JR., BETTY JEAN PEPPER,
SHARI LABOSSIERE, EDWARD
JAVORSKI, PATRICIA WEITZEL,
GWENDOLYN HARWOOD, JAY
RAWLINS, TERESA SHAUT, SAUL
QUINT, JAMES BARRALL, MICHAEL
BURSICK, CAROL CIABATTONI,
MARGARET CLOUD, RODNEY
LEBLANC, THOMAS BRANCECUM,
BETTIE DRAPER, VICKIE SCHMITT,
MARY PRUITT, JAMES ARMOUR,
DOMINGA TORRES, JOAN JACKSON,
DOREA WILDER, JACQUELINE
BASSETT FOR DOROTHY VAN
WAGNER, FREDDIE DOBBS FOR
DECEDENT LAURA EDMONSON,
SYLVIA BUIE FOR DECEDENT
GEORGIA MANN, BARBARA TAYLOR
AS THE PERSONAL
REPRESENTATIVE OF THE ESTATE
OF IFFORD TAYLOR, VIVIAN SMITH
FOR DECEDENT BOB SMITH, LINDA
WREN AS THE ADMINISTRATOR FOR
THE ESTATE OF RUDOLPH HOWELL,
LARRY WILLIS ROGERS, AND
ALONSI DUSI FOR CATHERINE DUSI,
BELINDA DAVIS

Plaintiffs,

v.

MERCK & CO. INC.,

Defendant.

Cause No. **07 - 0562**

MDL No. 1657 **SECT. L MAG. 3**

**COMPLAINT**

33310.1

Fee 350.00
Process
X Dktd
CtRmDep
Doc. No

COME NOW Plaintiffs, and for their complaint against Merck & Co., Inc., allege as follows:

1.      This action is brought by plaintiffs, seeking damages for personal injuries and economic damages suffered as a result of a defective and dangerous pharmaceutical product, Vioxx, which was manufactured, marketed, distributed and/or sold by Merck & Co. Inc. This action seeks monetary damages for personal injuries.

2.      Matthew DeVito is a citizen of the state of Massachusetts. Because of his use of Vioxx, he suffered heart and cardiovascular injuries. Vioxx caused or was a contributing cause of his health problems.

3.      Michael Ellis is a citizen of the state of Washington. Because of his use of Vioxx, he suffered blood clots and related cardiovascular injuries. Vioxx caused or was a contributing cause of his health problems.

4.      Harriet Goff is a citizen of the state of Kansas. Because of her use of Vioxx, she suffered a pulmonary embolism and related cardiovascular injuries. Vioxx caused or was a contributing cause of her health problems.

5.      Thomas Hall is a citizen of the state of Connecticut. Because of his use of Vioxx, he suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of his health problems.

6.      Joe Lyons, Jr. is a citizen of the state of Wisconsin. Because of his use of Vioxx, he suffered heart and cardiovascular injuries. Vioxx caused or was a contributing cause of his health problems.

M0DA615498

7.     Betty Jean Pepper is a citizen of the state of Oklahoma. Because of her use of Vioxx, she suffered heart and cardiovascular injuries. Vioxx caused or was a contributing cause of her health problems.

8.     Shari Labossiere is a citizen of the state of Massachusetts. Because of her use of Vioxx, she suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of her health problems.

9.     Edward Javorski is a citizen of the state of Washington. Because of his use of Vioxx, he suffered blood clots and related cardiovascular injuries. Vioxx caused or was a contributing cause of his health problems.

10.    Patricia Weitzel is a citizen of the state of Idaho. Because of her use of Vioxx, she suffered heart and cardiovascular injuries. Vioxx caused or was a contributing cause of her health problems.

11.    Gwendolyn Harwood is a citizen of the state of Georgia. Because of her use of Vioxx, she suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of her health problems.

12.    Jay Rawlins is a citizen of the state of California. Because of his use of Vioxx, he suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of his health problems.

13.    Teresa Shaut is a citizen of the state of New York. Because of her use of Vioxx, she suffered blood clots and related injuries. Vioxx caused or was a contributing cause of her health problems.

M00A615499

14. Saul Quint is a citizen of the state of Massachusetts. Because of his use of Vioxx, he suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of his health problems.

15. James Barrall is a citizen of the state of Pennslyvania. Because of his use of Vioxx, he suffered a stroke and related injuries. Vioxx caused or was a contributing cause of his health problems.

16. Michael Bursick is a citizen of the state of Michigan. Because of his use of Vioxx, he suffered heart and cardiovascular injuries. Vioxx caused or was a contributing cause of his health problems.

17. Carol Ciabattoni is a citizen of the state of Pennsylvania. Because of her use of Vioxx, she suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of her health problems.

18. Margaret Cloud is a citizen of the state of Michigan. Because of her use of Vioxx, she suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of her health problems.

19. Rodney LeBlanc is a citizen of the state of New Hampshire. Because of his use of Vioxx, he suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of his health problems.

20. Thomas Brancecum is a citizen of the state of Kentucky. Because of his use of Vioxx, he suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of his health problems.

M00A615500

21.     Bettie Draper is a citizen of the state of California. Because of her use of Vioxx, she suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of her health problems.

22.     Vickie Schmitts is a citizen of the state of South Carolina. Because of her use of Vioxx, she suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of her health problems.

23.     Mary Pruitt is a citizen of the state of California. Because of her use of Vioxx, she suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of her health problems.

24.     James Armour is a citizen of the state of Michigan. Because of his use of Vioxx, he suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of his health problems.

25.     Dominga Torres is a citizen of the state of Maryland. Because of her use of Vioxx, she suffered congestive heart failure and related injuries. Vioxx caused or was a contributing cause of her health problems.

26.     Joan Jackson is a citizen of the state of South Carolina. Because of her use of Vioxx, she suffered blood clots and related injuries. Vioxx caused or was a contributing cause of her health problems.

27.     Dorea Wilder is a citizen of the state of Florida. Because of her use of Vioxx, she suffered a stroke and related injuries. Vioxx caused or was a contributing cause of her health problems.

28.     Plaintiff Jacqueline Bassett is a surviving daughter of Dorothy Van Wagner and has standing to prosecute this wrongful death action pursuant to Michigan law. Plaintiff

33310.1

Jacqueline Bassett is a citizen of the State of Michigan. Decedent Dorothy Van Wagner was a citizen of the State of Michigan. Because of her use of Vioxx, she suffered a heart attack which led to her wrongful death. Vioxx caused or contributed to cause her wrongful death.

29.     Freddie Dobbs is a citizen of the State of Mississippi. Decedent Laura Edmonson was a citizen of the State of Mississippi. Because of her use of Vioxx, she suffered a heart attack which led to her wrongful death. Vioxx caused or contributed to cause her wrongful death.

30.     Sylvia Buie is the survivor of Georgia Mann and brings this action on his behalf. Sylvia Buie is a citizen of the State of Florida. Decedent Georgia Mann was a citizen of the State of Florida. Because of her use of Vioxx, she suffered a heart attack, which caused her wrongful death. Vioxx caused or was a contributing cause to her wrongful death.

31.     Barbara Taylor is the personal representative of the estate of Ifford Taylor and brings this action on his behalf. Barbara Taylor is a citizen of the State of South Carolina. Decedent Ifford Taylor was a citizen of the State of Florida. Because of his use of Vioxx, he suffered a heart attack, which caused his wrongful death. Vioxx caused or was a contributing cause to his wrongful death.

32.     Vivian Smith is the surviving spouse of Bob Smith and brings this action on his behalf. Vivian Smith is a citizen of the state of Oregon. Decedent Bob Smith is a citizen of the State of Oregon. Because of his use of Vioxx, he suffered a heart attack, which caused his wrongful death. Vioxx caused or was a contributing cause of his wrongful death.

33.     Linda Wren is the administrator for the Estate of Rudolph Howell ("decedent") and has standing to bring this action pursuant to the provisions of N.C. Gen. Stat. § 28A-18-2 (2005). Rudolph Howell  was a citizen of the State of Illinois. Because of his use of Vioxx, he

M00A615S02

suffered a heart attack and stroke, which led to his wrongful death. Vioxx caused or was a significantly contributing cause of his wrongful death.

34.     Larry Willis Rogers is a citizen of the State of New Mexico. Because of his use of Vioxx, he suffered a heart attack and related injuries. Vioxx caused or contributed to cause his wrongful death.

35.     Alonsi Dusi is a citizen of the state of Pennsylvania. He is the surviving spouse of Catherine Dusi. Alonsi Dusi has standing to bring this action pursuant to the provisions of 42 Pa.C.S. § 8301 (2005). Catherine Dusi was a citizen of the state of Pennsylvania.   Because of her use of Vioxx, she suffered a heart attack, which led to her wrongful death. Vioxx caused or was a contributing cause of her wrongful death.

36.     Belinda Davis is a citizen of the state of Florida. Because of her use of Vioxx, she suffered a heart attack and related injuries. Vioxx caused or was a contributing cause of her health problems.

### JURISDICTION AND VENUE

37.     There is federal subject matter jurisdiction based on diversity of citizenship because plaintiffs and defendant are citizens of different states and the amount-in-controversy requirement exceeds $75,000 for each plaintiffs' claim.

38.     Venue is proper in this District Court based on Pretrial Order No. 11 in re Vioxx Product Liability Litigation No. 1657.

39.     The applicable statute of limitations is tolled based on defendants' fraudulent concealment of the dangers and adverse side effects of Vioxx, respectively, from plaintiffs as... more fully stated herein. Additionally, for the reasons stated herein, defendant Merck is equitably estopped from raising the statute of limitations defense.

33310.1

M00A615503

## PARTIES-VIOXX

40.     The Defendant, Merck & Co., Inc. (hereinafter "Merck" or "defendant Merck," is

a corporation organized and existing under the laws of the State of New Jersey, with its principal

place of business at One Merck Drive, White House Station, New Jersey 08889.

41.     At all times relevant hereto, Defendant Merck was engaged in the business of

testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directly

or indirectly through third parties or related entities, the pharmaceutical drug, Vioxx throughout

the United States.

42.     As more particularly pleaded below, plaintiffs maintain that Vioxx is defectively

designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the

dangers associated with its use.

## FACTUAL BACKGROUND-VIOXX

43.     Vioxx is the brand name of rofecoxib, one of a class of drugs called

"prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-

inflammatory benefits to persons with, among other conditions, arthritis and muscle pain.

Prostaglandins are COX (cyclooxygenase) inhibitors; COX enzymes metabolize arachidonic acid

to produce prostaglandins.

44.     Vioxx is a COX-2 inhibitor, which is designed to produce prostaglandins at

inflammatory sites, and to produce prostacyclin, a vasodilator and an inhibitor of platelet

aggregation.

45.     Defendant Merck submitted an Application to Market a New Drug for Human

Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on

November 23, 1998, for tablets, at doses of 12.5 mg and 25 mg, for relief of the signs and

33310.1

symptoms of osteoarthritis, the management of acute pain, and the treatment of primary
dysmenorrhea. This application was denoted NDA 21-042 by the FDA.Defendant Merck also
submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the
United States Food and Drug Administration ("FDA") on November 23, 1998, for oral
suspension, at doses of 12.5 mg/mL and 25 mg/mL, for relief of the signs and symptoms of
osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This
application was denoted NDA 21-052 by the FDA.

46.     On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052
(hereinafter the "NDA") for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the
management of acute pain, and the treatment of primary dysmenorrhea.

47.     At the time the drug was approved by the FDA the labeling for rofecoxib stated,
in the section entitled "Special Studies -- Upper Endoscopy in Patients with Osteoarthritis,"
"Treatment with VIOXX 25 mg daily or 50 mg daily was associated with a significantly lower
percentage of patients with endoscopic gastroduodenal ulcers than treatment with ibuprofen 2400
mg daily. However, the studies cannot rule out at least some increase in the rate of endoscopic
gastroduodenal ulcers when comparing VIOXX to placebo."

48.     The "Warnings" section of the labeling for rofecoxib, at the time the drug was
approved by the FDA, contains a section, "Gastrointestinal (GI) Effects -- Risk of GI Ulceration,
Bleeding, and Perforation."

49.     Defendant Merck submitted NDA-007 with the goal of establishing a
gastrointestinal ("GI") safety claim for rofecoxib. In conjunction with the NDA, Defendant
Merck performed the Vioxx GI Outcomes Research (VIGOR) Protocol, No. 088-04, entitled "A
Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs

33310.1

M0DA615505

During Chronic Treatment With MK-0966 or Naproxen in Patients With Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was performed from January 6, 1999 through March 17, 2000.

50.    The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MK-0966 50 mg daily compared to patients in the group taking naproxen 1000 mg/day," and (2) "study the safety and tolerability of MK-0966 in patients with rheumatoid arthritis."

51.    In industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and stroke. Not only did Merck do nothing to further accurately publish these studies, or warn consumers, but it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today, Spin War Aside, Lessons Emerge From COX-2 Trials, in August 2000, page 3.

52.    Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping profits obtained through its non-disclosure and concealment. Merck engaged in a massive advertising and sampling program and gained continued increases in the market share, which enhanced Merck's financial stability to the detriment of its consumers. As a result of Merck's scheme, it reaped more than $2 billion in profit in the year 2000 alone, and appropriated approximately 23 percent share of the market.

53.    Merck continued to profit from its scheme by withholding information from Plaintiffs, the consuming public, and the health care industry. For example, in November of 2000, Merck caused the publication of a study in the New England Journal of Medicine in which

M0DA615506

it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption.

54.     On or about August 29, 2001, the Journal of the American Medical Association (JAMA) published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukhisjee, et al., showing what had been concealed by Merck. The study revealed that the relative risk of developing a confirmed adjudicated thrombotic cardiovascular event (defined in the article as myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks) among Vioxx users in Merck's trials, including VIGOR, at a 95% confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients. See Mukhisjee, D., et al., Risk of Cardiovascular Events Associated With Selective Cox-2 Inhibitors, J.A.M.A. 286:8, 954-959, Aug. 22/29, 2001. In addition, the annualized myocardial infarction rates for Vioxx users compared to placebo revealed a statistically significant increase among Vioxx users.

55.     In the JAMA study, the authors stated that by decreasing PGI2 production [Vioxx] may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PGI2, potentially leading to an increase in thrombotic cardiovascular events. In a follow-up peer-reviewed study reported in the Journal of the American College of Cardiology on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the Cox-2 inhibitor tips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased vascular and thrombotic events." Bing, R., & Lomnicka, M., Why Do Cyclo-Oxygenase-2 Inhibitors Cause Cardiovascular Events?, J.A.C.C., 39:3, Feb. 6, 2002. This is

M00A615507

further supported by studies completed at the University of Pennsylvania. Cheng, Y., et al., Role

of Prostacyclin in the Cardiovascular Response to Thromboxane A2, Journal of Science, V.

296:539-541, Apr. 19, 2002.

56.    On September 17, 2001, Thomas W. Abrams, R.Ph., MBA, Director of the FDA

Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to

Raymond V. Gilmartin, President and CEO of Defendant Merck, relating to "promotional

activities and materials for the marketing of Vioxx (rofecoxib) tablets."

57.    The Warning Letter stated that Defendant Merck had "engaged in a promotional

campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were

observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus,

misrepresents the safety profile for Vioxx." The letter further states:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study,
> patients on Vioxx were observed to have a four to five fold increase in myocardial
> infarctions (MIs) compared to patients on the comparator non-steroidal anti-inflammatory
> drug (NSAID), Naprosyn (naproxen).

58.    The eight (8) page Warning Letter outlines, in detail, the conduct of Defendant

Merck that supports the FDA's issuance of the Warning Letter, and makes the following

**"Conclusions and Requested Actions:"**

> The promotional activities and materials described above minimize the potentially serious
> Cardiovascular findings that were observed in the VIGOR study, minimize the Vioxx /
> Coumadin drug interaction, omit crucial risk information associated with Vioxx therapy,
> contain unsubstantiated comparative claims, and promote unapproved uses. On
> December 16, 1999, we also objected to your dissemination of promotional materials for
> Vioxx that misrepresented Vioxx's safety profile, contained unsubstantiated comparative
> claims, and lacked fair balance.
>
> Due to the seriousness of these violations, and the fact that your violative promotion of
> Vioxx has continued despite our prior written notification regarding similar violations,
> we request that you provide a detailed response to the issues raised in this Warning Letter
> on or before October 1, 2001.

This response should contain an action plan that includes a comprehensive plan to disseminate corrective messages about the issues discussed in this letter to the audiences that received these misleading messages. This corrective action plan should also include:

1.    Immediately ceasing all violative promotional activities, and the dissemination of violative promotional materials for Vioxx.

2.    Issuing a "Dear Healthcare provider" letter to correct false or misleading impressions and information. This proposed letter should be submitted to us for review prior to its release. After agreement is reached on the content and audience, the letter should be disseminated by direct mail to all healthcare providers who were, or may have been exposed to the violative promotion

3.    A written statement of your intent to comply with "1" and "2" above.

59.    On April 11, 2002, the FDA approved a supplemental application for the use of Vioxx (rofecoxib) for rheumatoid arthritis, adding this indication to the previously approved indications for osteoarthritis and pain. The FDA also approved new labeling, a "Dear Doctor" letter, and a new patient package insert. The labeling and the "Dear Doctor" letter contained information concerning the results of the VIGOR study.

60.    Further, the "Dear Doctor" letter, approved in conjunction with the revisions to the Vioxx labeling, outlines the changes to the Vioxx labeling.

61.    The revised "Patient Information" sheet does not add any information about the results of the VIGOR study."

62.    The "Patient Information" sheet is the only written document that is provided to a patient for whom Vioxx is prescribed.

63.    Both the initial labeling and the revised labeling are ineffective because they do not properly advise physicians and patients of the potential cardiovascular and/or cardiothrombotic side effects of Vioxx.

33310.1

M00A615509

64.     Despite knowledge of the ineffectiveness of the warnings, and despite knowledge

that Vioxx may cause serious cardiovascular and/or cardiothrombotic side effects, defendant

Merck has concealed and/or downplayed the dangers associated with Vioxx, and continued to

market the drug in the United States and abroad.  In its 2001 Annual Report, for example,

Defendant Merck states:

> The Company also noted that a number of federal and state lawsuits, involving individual
> claims as well as purported class actions, have been filed against the Company with
> respect to Vioxx. . . . The lawsuits include allegations regarding gastrointestinal bleeding
> and cardiovascular events. The Company believes that these lawsuits are completely
> without merit and will vigorously defend them.

65.     Further, in its January 23, 2001 8-K filing with the Securities and Exchange

Commission, Defendant fails to mention the cardiac and cardiothrombotic findings of the

VIGOR study:

> "Our results reflect the strength of our growth strategy," Mr. Gilmartin said. "Our
> five key products, VIOXX, ZOCOR, COZAAR/HYZAAR*, FOSAMAX and
> SINGULAIR, drove Merck's performance for the year and created a powerful
> platform for growth." These products accounted for 57% of Merck's worldwide
> human health sales for 2000 and 61% for the fourth quarter.
>
> "Each of the five medicines offers unique competitive advantages," Mr. Gilmartin
> said. VIOXX, a once-a-day medicine, is the only COX-2 indicated in the United
> States both for osteoarthritis and acute pain. Since its extraordinarily successful
> 1999 launch, VIOXX has become the world's fastest growing branded
> prescription arthritis medicine, and it is already Merck's second largest-selling
> medicine. In the United States, VIOXX now accounts for approximately 50
> percent of new prescriptions in the COX-2 class, despite being second to market
> in this class in the United States. VIOXX achieved $2.2 billion in sales for the full
> year 2000, with $700 million in the fourth quarter.
>
> A Food and Drug Administration (FDA) Advisory Committee meeting is
> scheduled for Feb. 8 to review labeling changes Merck has requested based on the
> strong results of the VIGOR Study. This 8,000-patient gastrointestinal outcomes
> research study, in which VIOXX reduced the risk of serious gastrointestinal
> complications by half compared to the NSAID naproxen, was published in
> November in THE NEW ENGLAND JOURNAL OF MEDICINE. Another study,
> presented in November, showed that VIOXX significantly reduced moderate-to-

M0DA615510

> severe acute pain after dental surgery to a greater degree compared to codeine combined with acetaminophen.

66. Despite the foregoing, Defendant Merck continued to represent to consumers that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects are not associated with the drug, until Merck withdrew Vioxx from the market in September 2004. Merck also downplayed any potential cardiovascular and/or cardiothrombotic side effects of the drug, promoting it as safer and more efficacious than other medications approved for treatment of similar conditions.

67. Defendant Merck knew of the cardiothrombotic effects and increased risk of cardiovascular events caused by Vioxx use, yet failed to warn of these dangers to plaintiffs, its customers, healthcare providers or the public.

68. Pursuant to prescriptions received from their treating physician, plaintiffs regularly purchased and ingested Vioxx for various periods of time. Plaintiffs now suffer from heart attacks, strokes, transient ischemic attacks ("TIAs"), coronary artery disease, althersclerosis, blood clots, and other diseases caused by the use of Vioxx.

69. Vioxx is primarily prescribed to reduce pain from inflammation. However, the defendants failed to conduct sufficient research in manufacturing and marketing Vioxx to determine the severity of the drugs' potential side effects. Defendants also withheld adverse reports or gave incorrect information about such reports that they had received about side effects such as heart attacks and strokes. As a result of defendants' failure and the undisclosed defects of Vioxx, plaintiffs have sustained heart attacks, strokes, TIAs, and other ill-effects.

70. Defendant Merck & Company, Inc. is a New Jersey corporation with its principal place of business located in New Jersey. Merck is engaged in the business of producing, marketing and distributing pharmaceutical products for sale to the general public and is the

33310.1

M00A615511

manufacturer of Rofecoxib, distributed under the brand-name Vioxx. Merck conducts business, and at all times relevant hereto, it developed, manufactured and sold the pharmaceutical drug Vioxx.

## COUNT I

### Strict Products Liability/Defective Design --

### Against Merck

Come now plaintiffs and for Count I of their complaint against defendant Merck allege:

71.    Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

72.    Defendant Merck designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Vioxx which it knew would be used by plaintiffs and others.

73.    At the time Vioxx was manufactured and sold to plaintiffs by Merck, it was defective in design and unreasonably dangerous, subjecting users to risks of heart attacks, strokes, and other illnesses which exceeded the benefits of the products, and for which other safer products were available.

74.    Alternatively, when the Vioxx products were manufactured and sold to plaintiffs by defendant Merck, the products were defective in design and formulation, making use of the products more dangerous than other drugs for pain relief.

75.    The Vioxx sold to plaintiffs reached plaintiffs without substantial change. Plaintiffs were unaware of the dangerousness of the products until after their use and the development of heart attack, strokes, transient ischemic accidents, blood clots, and other related illnesses. Plaintiffs ingested the Vioxx without making any changes or alterations.

33310.1

M0DA615512

76.     As a direct and proximate result of the defective and dangerous design of Vioxx, plaintiffs have been damaged.

77.     Defendant Merck's conduct was done with conscious disregard for the safety of users of Vioxx, including plaintiffs, justifying an award of punitive damages.

### COUNT II

### Strict Products Liability/Failure to Warn -- Against Merck

Come now plaintiffs and for Count II of their complaint against defendant Merck allege:

78.     Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

79.     The Vioxx manufactured and supplied by Merck was unaccompanied by proper and adequate warnings regarding all adverse side effects associated with the use of Vioxx, and the comparative severity and duration of the adverse effects. The warnings given by Merck did not accurately reflect the symptoms, type, scope or severity of the side effects.

80.     Merck failed to perform adequate testing and study of Vioxx prior to marketing it or properly analyze and warn based on its VIGOR study. Such adequate testing, study or analysis of the VIGOR study would have shown that Vioxx possessed serious life threatening side effects, with respect to which full and proper warnings accurately and fully reflecting symptoms, type of illness, scope and severity should have been given with respect to the use of Vioxx.

81.     Merck also failed to act properly on adverse reports it received about Vioxx, and failed to properly study Vioxx pre-market as well as post market and analyze and follow up on its VIGOR study as well as other studies.

33310.1

M0DA615513

82.     Merck also failed to effectively warn users and physicians that numerous other methods of pain relievers, including Ibuprofen, Naproxen, and/or aspirin were safer.

83.     Merck failed to give adequate post-marketing warnings or instructions for the use of Vioxx because after Merck knew or should have known of the risk of injury from Vioxx use, Merck failed to provide adequate warnings to users or consumers and continued to aggressively promote the product to doctors, hospitals, and directly to consumers.

84.     As a direct and proximate result of defendant Merck's failure to warn of the potentially severe side effects of the Vioxx products, as well as the other conduct mentioned in this Count, plaintiffs have been damaged.

85.     Merck's conduct was done with conscious disregard for the safety of the users of Vioxx, justifying an award of punitive damages.

**COUNT III**

**Negligent Design--Against Merck**

Come now plaintiffs and for Count III of their complaint against defendant Merck allege:

86.     Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

87.     Defendant Merck designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Vioxx which it knew would be used by plaintiffs and others.

88.     At the time Vioxx was manufactured and sold to plaintiffs by Merck, it was defective in design and unreasonably dangerous, subjecting users to risks of heart attacks, strokes, blood clots, and other illnesses which exceeded the benefits of the products, and for which other safer products were available.

33310.1

MODA615514

89.    Alternatively, when the Vioxx products were manufactured and sold to plaintiffs by defendant Merck, the products were defective in design and formulation, making use of the products more dangerous than other drugs for pain relief.

90.    The Vioxx sold to plaintiffs reached plaintiffs without substantial change. Plaintiffs were unaware of the dangerousness of the products until after their use and the development of heart attacks, strokes, and other related illnesses.  Plaintiffs ingested the Vioxx without making any changes or alterations.

91.    In designing and testing Vioxx, Merck failed to exercise the ordinary care that a careful and prudent drug manufacturer would exercise in the same or similar circumstances.

92.    As a direct and proximate result of the negligent design of Vioxx, plaintiffs have been damaged.

93.    Defendant Merck's conduct was done with conscious disregard for the safety of users of Vioxx, including plaintiffs, justifying an award of punitive damages.

## COUNT IV

### (Negligence, Failure to Warn—Against Defendant Merck)

Come now plaintiffs and for Count IV of their complaint against defendant Merck, allege:

94.    Plaintiffs incorporate all allegations in the preceding paragraphs as if fully set forth in this Count.

95.    Defendant Merck owed a duty to warn of any dangerous defects or side effects; a duty to assure their products did not cause users unreasonable and dangerous risks, reactions, and side effects; and a duty to provide adequate post market surveillance and warnings as it learned of Vioxx's substantial dangers.

33310.1

M00A615515

96. Defendant Merck breached its duty of reasonable care to plaintiffs in that defendant Merck failed to:

a. Conduct sufficient testing which, if properly performed, would have shown that Vioxx had serious side effects, including heart attacks, strokes, hypertension, althersclorosis, blood clots, and other serious side effects, and warn users of those risks; and/or

b. Include adequate warnings with the Vioxx products that would alert users to the potential risks and serious side effects of the drugs; and/or

c. Warn plaintiffs that use of Vioxx carried a risk of death or permanent disability from heart attack, strokes, blood clots, other cardiovascular disorders and other serious side effects; and/or

d. Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Vioxx; and/or

e. Other appropriate warnings.

97. Defendant Merck knew or should have known that Vioxx caused unreasonably dangerous risks and serious side effects of which the general public would not be aware. Defendant Merck nevertheless advertised, marketed and promoted their products knowing there were safer methods and products for pain control.

98. As a direct and proximate result of defendant Merck's negligence and breaches of their duty of reasonable care, plaintiffs have been damaged.

99. Defendant Merck's conduct was done with conscious disregard for the safety of users of Vioxx, including plaintiffs, justifying an award of punitive damages.

### COUNT V

### Negligent Misrepresentation–against defendant Merck

33310.1

M00A615516

Come now plaintiffs and for Count V of their complaint against defendant Merck, allege:

100.    Plaintiffs reallege the allegations in the preceding paragraphs as if fully set out herein.

101.    Defendant Merck misrepresented to plaintiffs and/or their treating physicians the potential serious cardiovascular findings that were observed in the VIGOR study, minimized the Vioxx/Coumadin drug interaction, omitted crucial risk information associated with Vioxx, misrepresented Vioxx safety profile and represented that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects were not associated with the drug.

102.    These representations were made with the actual knowledge of Merck.

103.    The representations set forth supra were material to plaintiffs and/or their treating physicians to prescribe and maintain plaintiffs' prescription of Vioxx.

104.    The representations were made either without knowing of the truth or falsity of the representations or defendant Merck knew or should have known that the representations being made were false and, therefore, defendant Merck failed to exercise reasonable care in making the representations in the scope and course of their employment in marketing Vioxx to individual consumers, plaintiffs' treating physicians, hospitals, and other health care providers.

105.    The defendant Merck intended for plaintiffs and/or their treating physicians to rely upon the material misrepresentations to induce them to initially prescribe Vioxx and continue plaintiffs on Vioxx.

106.    Plaintiffs justifiably relied on the representations which were made directly to them or made to their treating physicians, with defendant Merck knowing that plaintiffs were in a limited group who defendant Merck knew would rely upon the information.

M00A615517

107.   As a direct result of defendant Merck's negligent misrepresentation, plaintiffs were injured.  The negligent misrepresentations caused or contributed to cause plaintiffs' damages.

108.   Defendant Merck's conduct was done with conscious disregard for the safety of users of Vioxx, including plaintiffs, justifying an award of punitive damages.

## COUNT VI

### Fraudulent Omission/Concealment–against defendant Merck

Come now plaintiffs and for Count VI of their complaint against defendant Merck allege:

109.   Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

110.   Defendant Merck had actual knowledge of the cardiothrombotic effects of Vioxx. Despite having knowledge of the cardiothrombotic effects of Vioxx, Defendant Merck engaged in a pattern and conduct of actively concealing and omitting to disclose those effects when marketing Vioxx to doctors, health care providers, and to the general public for direct advertisements.

111.   At the time these omissions were made, defendant Merck had knowledge of the substantial and significant cardiothrombotic effects of Vioxx.

112.   Defendant Merck omitted to inform plaintiffs of the true cardiothrombotic and other adverse health effects of Vioxx.  They further downplayed the results of various studies showing the cardiothrombotic effects and explaining the cardiothrombotic effects of Vioxx as set forth in the VIGOR study;  they withheld adverse reports or gave incorrect information about the reports they received about the side effects of Vioxx such as heart attacks and strokes.  They

M00A615518

further instructed and had a training manual for their sales force to dodge and mislead doctors when they asked questions about the cardiothrombotic effects of Vioxx.

113.    Defendant Merck failure to disclose material facts constituted fraudulent concealment.

114.    Defendant Merck, itself and by and through its agents, had a duty to speak because they had superior knowledge regarding the adverse health effects of Vioxx as set forth herein.

115.    The information not disclosed by defendant Merck was unavailable to plaintiffs and/or their treating health care professionals.  Defendant Merck knew the information was unavailable yet approved and participated in instructing their agents, servants and employees not to disclose this information in order to promote the sales of Vioxx over other Cox 2 inhibitors as well as any non-steroidal anti-inflammatory such as Ibuprofen, Naproxin, and/or aspirin.

116.    Plaintiffs were diligent in attempting to seek the information by consulting with their physicians.

117.    The information not disclosed by defendant Merck was not within the reasonable reach of plaintiffs and/or their treating physicians and was not discoverable by plaintiffs and/or their treating physicians in the exercise of reasonable care.

118.    The non-disclosed information was material, defendant Merck knew they were not disclosing complete information and intended that plaintiffs and/or their treating physicians act upon the non-disclosed information in the manner reasonably contemplated.

119.    Plaintiffs and/or their treating physicians were ignorant as to the undisclosed information and had a right to rely on full disclosure.

M00A615519

120.   If plaintiffs and/or their treating physicians had known the complete information, they would not have prescribed and/or plaintiffs would not have taken Vioxx as evidenced by Merck withdrawing it from the market in September 2004.

121.   Defendant Merck's conduct was done with conscious disregard for the safety of users of Vioxx, including plaintiffs, justifying an award of punitive damages.

## COUNT VII

## BREACH OF IMPLIED WARRANTY-VIOXX

Come now plaintiffs and for Count VII of their complaint against defendant Merck allege:

122.   Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

123.   Plaintiffs relied upon Merck and its judgment when they purchased and utilized Vioxx.

124.   Vioxx was not of merchantable quality and was not safe or fit for its intended use because it was unreasonably dangerous as more fully set forth herein and incapable of satisfying the ordinary purpose for which it was intended, and because it caused serious injury to Plaintiffs.

125.   As a direct and proximate result of the dangerous and defective condition of Vioxx, plaintiffs were injured, including incurring economic damage in the form of medical expenses.

126.   Plaintiffs are entitled to recover from Merck for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, loss of the capacity to enjoy life, lost past and future income and incurred expense.

33310.1

MDDA615520

## COUNT VIII

### BREACH OF EXPRESS WARRANTY-VIOXX

Come now plaintiffs and for Count VIII of their complaint against defendant Merck allege:

127.   Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

128.   At all relevant times, Merck expressly warranted to Plaintiffs by statements made by Merck or its authorized agents, orally or in written publications, package labels, and/or inserts, that the Vioxx was safe, effective, fit, and proper for its intended use. The express warranties include, but were not limited to:

Vioxx is used in adults for:

a. relief of the pain and inflammation (swelling and soreness) of

osteoarthritis (arthritis from wear and tear on your bones and your

joints);

b. relief of the pain and inflammation of rheumatoid arthritis in adults

(arthritis caused by a condition where your immune system attacks

your joints);

c. management of short-term pain;

d. treatment of menstrual pain (pain during women's monthly periods);

e. treatment of migraine headache attacks with or without aura

129.   In utilizing Vioxx, Plaintiffs relied upon the skill, judgment, representations, and express warranties of Merck.

130.   The express warranties and representations made by Merck were false in

M00A61SS21

that Vioxx was not safe and was not fit for the use for which it was intended.

131.    As a direct and proximate result of the dangerous and defective condition of Vioxx, plaintiffs were damaged, including incurring economic damages in the form of medical expenses.

132.    Plaintiffs are entitled to recover from Merck for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, loss of the capacity to enjoy life, lost past and future income and incurred expense.

WHEREFORE, each plaintiff demands judgments in their favor against defendant Merck for:

A.  A fair and just amount of actual damages in an amount to be proved at trial that exceeds the jurisdictional amount of this Court;

B.  Costs of suit;

C.  Pre-judgment and post-judgment interest;

D.  Punitive damages in a fair and reasonable amount to punish and deter defendants and others from engaging in the wrongful conduct; and

E.  Such other and further relief as the Court deems just and proper under the circumstances.

JEFFREY J. LOWE, PC

By: _____

Jeffrey J. Lowe
Francis J. "Casey" Flynn
Attorney for Plaintiff

33310.1

8235 Forsyth, Suite 1100
St. Louis, Missouri 63105
(314) 678-3400
Fax: (314) 678-3401

John Carey
Joseph P. Danis
David Bauman
Sarah Hale
CAREY & DANIS, LLC
8235 Forsyth Boulevard, Suite 1100
St. Louis MO 63105
Telephone: 314-725-7700
Facsimile: 314-721-0905

Charles Lampin
Kell Lampin LLC
4700 Mexican Rd.
St. Peters, Missouri 63376
636-498-4000

T. Evan Schaeffer
Andrea B. Lamere
SCHAEFFER & LAMERE, P.C.
5512 Godfrey Road
Highway 67, Suite B
Godfrey, IL 62035
618-467-8200

Evan Buxner
Walther Glenn Law Offices
10 S. Brentwood Blvd., Suite 102
St. Louis, MO 63105
314-725-9595
Fax: 314-725-9597

33310.1

M0DA615523