# EXHIBIT 48

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
ALEX CAIN and                              :
WILLIAM WATKINS,                           :
                                           :
                        Plaintiffs,        :
                                           :        CV-01-3441 (SJ) (RLM)
        - against -                        :
                                           :
MERCK & CO., INC., PHARMACIA CORP.,        :
PFIZER INC and G.D. SEARLE & CO.,          :
                                           :
                        Defendants.        :
------------------------------------------------X

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLAIM FOR INJUNCTIVE RELIEF

Steven M. Bierman
James D. Arden
SIDLEY AUSTIN BROWN & WOOD
875 Third Avenue
New York, New York 10022
(212) 906-2000

*Of Counsel:*

Sara J. Gourley
Richard F. O'Malley, Jr.
Susan A. Weber
Neil H. Wyland
SIDLEY AUSTIN BROWN & WOOD
Bank One Plaza
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Defendants Pharmacia Corp. and G.D. Searle & Co.*

David Klingsberg
Steven Glickstein
John J. P. Howley
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
(212) 836-8000

*Of Counsel:*

Ian S. Linker
Melissa C. Morrow

*Attorneys for Defendant Pfizer Inc.*

Norman C. Kleinberg
Theodore V. H. Mayer
Robb W. Patryk
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6861

*Attorneys for Defendant Merck & Co., Inc.*

Defendants Merck & Co., Inc., Pharmacia Corporation, Pfizer Inc. and G.D. Searle & Co. move this Court to dismiss plaintiffs' claim for mandatory injunctive relief because that claim is preempted by federal law and is subject to the primary jurisdiction of the Food and Drug Administration. *See* Fed. R. Civ. P. 12(b)(6).[1]

## SUMMARY OF ARGUMENT

This purported class action seeks to usurp the authority of the United States Food and Drug Administration ("FDA") over the labeling of two widely-prescribed arthritis medications, Vioxx® and Celebrex®. Plaintiffs claim that "certain research recently presented to the Food and Drug Administration" links these drugs with increased risk of heart disease. (Am. Compl. ¶ 2.) Although the FDA already is examining the research to determine whether any response is warranted, plaintiffs urge this Court to order changes in the labeling of these drugs and issue emergency notice of the research to patients.

Plaintiffs seek injunctive relief under *state* product liability law. By *federal* statute, however, Congress has entrusted the FDA with the responsibility for evaluating new medical and scientific research concerning the safety and efficacy of pharmaceutical products, 21 U.S.C. § 201 *et seq.*, and determining if and how such research should be communicated to the medical community and the general public. Congress also has entrusted the FDA with responsibility for drug labeling, which includes both written matter that accompanies medication and literature sent separately (including warning letters and announcements). *Kordel v. United States*, 335 U.S. 345, 347-49 (1948); *Bernhardt v. Pfizer Inc.*, 2000 WL 1738645 (S.D.N.Y. Nov. 22, 2000).

---

[1] This motion addresses only plaintiffs' request for mandatory injunctive relief. Plaintiffs also assert causes of action which seek relief by way of damages and medical monitoring.

As both the United States Supreme Court and the Second Circuit have recognized, Congress placed these matters in the hands of the FDA because only that Agency has the medical, scientific and public health expertise to evaluate the significance of research about a prescription drug. *Weinberger v. Bentex*, 412 U.S. 645, 654 (1973); *Henley v. FDA*, 77 F.3d 616, 621 (2d Cir. 1996). If plaintiffs were able to seek "emergency" relief with every new piece of clinical research, the judiciary would be transformed into a shadow FDA, and the coherent national drug labeling policy that Congress entrusted to the FDA would be in shambles. Two principles of federal law foreclose plaintiffs' injunction claim: preemption and primary jurisdiction.

I.      **Plaintiffs' Mandatory Injunction Claim Is Preempted by Federal Law.** Under the Supremacy Clause of the United States Constitution, any court order pursuant to state law which requires a change in the language of FDA-approved labeling, including an order to issue an "emergency" notice to patients, would be preempted because it conflicts with federal law in two ways.

*Impossible to Comply with Both State and Federal Law.* The Second Circuit has held that state law is preempted when it requires a manufacturer to label a regulated product differently from FDA requirements, since it is impossible for the manufacturer to obey both the state and federal law. *Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993 (2d Cir. 1985). Plaintiffs here seek, under the alleged authority of state law, to compel defendants to relabel their products in a manner that conflicts with FDA labeling requirements.

*Obstacle to Congressional Objectives.* A state law injunction also is preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Geier v. American Honda Motor Co.*, 529 U.S. 861, 873 (2000)

3

M002E17958

(internal quotation omitted). Congress has established an elaborate regulatory scheme for prescription drugs, under which the FDA utilizes its expertise in medicine, biochemistry, biostatistics, pharmacology and public health to balance "difficult (and often competing) objectives." *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341, 121 S. Ct. 1012 (2001). The FDA could not "achieve this somewhat delicate balance," *id.* at 1017, if the courts in all 50 states could change drug labeling without FDA approval.

II.    **Plaintiffs' Claim for Injunctive Relief Is Barred by the FDA's Primary Jurisdiction.** The doctrine of primary jurisdiction requires a court to dismiss or stay litigation that "involves technical and intricate questions of fact that Congress has assigned to a specific agency." *National Comm. Ass'n, Inc. v. American Tel. & Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995). The Supreme Court has determined that Congress granted "primary jurisdiction to the FDA, the agency it created," *Weinberger v. Westcott & Dunning, Inc.*, 412 U.S. 609, 627 (1973), and therefore, "questions within [its] peculiar expertise . . . are appropriately routed to the agency, while the Court stays its hand." *Weinberger v. Bentex Pharm., Inc.*, 412 U.S. 645, 654 (1973). Judge McKeona recently dismissed a plaintiff's claim for injunctive relief in a virtually identical action involving another prescription medication on the ground that "[t]he FDA, not this Court, has the relevant expertise" to determine whether a public notice was justified with respect to a prescription drug, and that bypassing the FDA created "the potential for inconsistent directions concerning a serious medical ailment and how it is best treated." *Bernhardt v. Pfizer Inc.*, 2000 WL 1738645, at **2-3.

M002E17959

## THE AMENDED COMPLAINT

This is a products liability action concerning two different drugs, Vioxx® and Celebrex®, used to treat arthritis.  Vioxx® is marketed by defendant Merck & Co.  (Am. Comp. ¶ 8.)  Celebrex® is marketed by Pharmacia, Searle and Pfizer.  (Am. Comp. ¶ 7.)

Plaintiffs Alex Cain and William Watkins allege that they were prescribed Vioxx® and Celebrex® for treatment of their osteoarthritis.  Plaintiffs assert that new clinical research purportedly shows that "patients who take Vioxx® suffer heart attacks, strokes and other cardiac illnesses and/or are significantly more likely to suffer heart attacks, strokes and other cardiac illness than patients who take alternative, less expensive medications to treat conditions like osteoarthritis."  (Am. Comp. ¶¶ 20-21.)  Plaintiffs allege, without further support, that the same is true of Celebrex®.  *Id.*

Plaintiffs purport to represent a nationwide class of "millions" of persons who have taken Vioxx® or Celebrex® for osteoarthritis.  (Am. Comp. ¶ 30.)  Their complaint alleges state law claims for strict products liability, negligence, and breach of express and implied warranties.  (Am. Comp. ¶¶ 37-67.)

As one of their remedies, plaintiffs ask the Court to issue a mandatory injunction requiring defendants to change the FDA-approved label accompanying Vioxx® and Celebrex® and to disseminate "emergency" notice directly to patients of the supposed risks of taking these drugs.  (Am. Comp. ¶¶ 2, 16, 17, 41, 46 and 65, 68(b)(3).)  Plaintiffs concede that the FDA is aware of the new research, and is considering whether any labeling change, including any warning, is appropriate.  (Am. Comp. ¶ 2.)

## FEDERAL STATUTORY AND REGULATORY FRAMEWORK

The Food, Drug & Cosmetics Act ("FDCA") charges the FDA with the duty to ensure that "drugs are safe and effective."  21 U.S.C. § 393(b)(1).  The Supreme Court and

M002E17960

Second Circuit have recognized that the FDA is the "expert agency" responsible for determining the safety and efficacy of pharmaceuticals. *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 627 (1973). *Accord Weinberger v. Bentex*, 412 U.S. 645, 654 (1973) (FDA has "particular expertise" in matters which "implicat[e] complex chemical and pharmacological considerations"); *Premo v. United States*, 629 F.2d 795, 803 (1980) ("FDA . . . possesses superior expertise, usually of a complex scientific nature"); *Henley v. Food & Drug Admin.*, 77 F.3d 616, 621 (2d Cir. 1996) ("FDA possesses the scientific know-how to . . . sif[t] through the scientific evidence").

### I.   *FDA Legislative Responsibility for Reviewing Research*

Congress enacted legislation that gave the FDA responsibility for "promptly and efficiently reviewing clinical research and taking appropriate action on the marketing of regulated products in a timely manner." 21 U.S.C. § 393(b)(1)-(2). To achieve this legislative goal, Congress authorized the FDA to consult with "experts in science, medicine and public health, and in cooperation with consumers, users, manufacturers, importers, packers, distributors, and retailers of regulated products." 21 U.S.C. § 393(b)(4).

The FDA's review of scientific and clinical research with respect to a new drug begins well before a new drug is approved to be marketed to the public. The FDA closely regulates the investigation process for new drugs and reviews the clinical research and reports at every step of the clinical investigation process. 21 U.S.C. § 355(I); 21 C.F.R. § 312.1 *et seq.*

Before a pharmaceutical company can market a new drug, it must submit to the FDA a "new drug application" ("NDA") that includes, *inter alia*: (1) nonclinical pharmacology and toxicology studies concerning the drug and its possible adverse side effects; (2) human pharmacokinetics and bioavailability studies concerning the drug; and (3) clinical studies

6

M002E17961

concerning the safety and effectiveness of the drug. 21 U.S.C. § 355(b); 21 C.F.R.

§§ 314.50(d)(2), (3) and (5). The FDA reviews this clinical and scientific research to determine

if the drug meets the statutory standards of safety and effectiveness. 21 U.S.C. §§ 355,

393(b)(1)(B); 21 C.F.R. § 314.105(c). In so doing, "the FDA is required to exercise its scientific

judgment to determine the kind and quality of data and information an applicant is required to

provide for a particular drug to meet the statutory standards." 21 C.F.R. § 314.105(c). The FDA

will approve a new drug only after it is satisfied that the clinical and other scientific research

provides sufficient evidence of a drug's safety and effectiveness. 21 U.S.C. §§ 355(b), (n); 21

C.F.R. §§ 314.105, 314.125 and 314.126. *See Food & Drug Admin. v. Brown & Williamson

Tobacco Corp.*, 529 U.S. 120, 140 (2000) ("Several provisions of the Act require the FDA to

determine that the *product itself* is safe as used by consumers. That is, the product's probable

therapeutic benefits outweigh its risk of harm.").

The FDA exercises continuing oversight of research concerning drugs already

approved for sale. Drug manufacturers must provide to the FDA (a) contemporaneous reporting

of serious and unexpected adverse drug experiences and (b) periodic reporting of subsequent

published and unpublished clinical research concerning the new drug. 21 C.F.R. §§ 314.80,

314.81. The FDA reviews this new information on an ongoing basis to determine if the new data

calls into question the safety or effectiveness of the new drug and what response, if any, is

warranted. 21 C.F.R. §§ 200.5, 214.150.

### 2. *FDA Legislative Responsibility for Labeling and Public Notice*

Congress specifically provided that the FDA is responsible for the regulation and

approval of prescription drug labeling. Labeling includes not only "all labels and other written,

printed, or graphic matter (1) upon any article or any of its containers or wrappers, or

M002E17962

(2) accompanying such article," 21 U.S.C. § 321(m), but also literature sent separately by the drug manufacturers that supplements and explains the materials physically accompanying the drug. *Kordel v. United States*, 335 U.S. 345, 347-49 (1948).

As an integral part of the NDA process, the FDA evaluates and approves the exact language that will appear on the labeling of a drug. 21 U.S.C. § 355(b)(1)(F) (requiring "specimens of the labeling proposed as part of the NDA"); 21 C.F.R. § 314.50 (detailing the contents of the NDA); 21 C.F.R. § 201 (detailing the information required in drug labeling). If a drug manufacturer seeks to change a drug's labeling to add or strengthen any warning, precaution or adverse reaction, the manufacturer must submit a supplemental application to the FDA for approval. 21 C.F.R. § 314.70(c)(2).

When any new information about a drug is revealed through the mandatory reporting process or otherwise, the FDA has the responsibility under laws enacted by Congress to decide whether to require the drug manufacturer to revise its labeling and/or mail warnings or other important new information directly to physicians and other care providers. 21 C.F.R. § 200.5. The FDA may itself send warning letters to physicians or otherwise disseminate information regarding a drug that it determines creates an "imminent danger to health or gross deception of the consumer." 21 U.S.C. § 375(b). In this regard, the FDA determines both the substance and method of delivering information to physicians and/or patients to ensure that information is received and fully understood. *See* 21 C.F.R. §§ 7.50, 810.18.

If the FDA determines that a drug manufacturer's labeling is "false or misleading in any particular" — including any failure to reveal material facts — that drug is deemed "misbranded." 21 U.S.C. § 352(a). The FDCA prohibits the manufacture and distribution of misbranded drugs, 21 U.S.C. § 331(a)-(c), (k), and specifically provides that the United States

M002E17963

may bring an enforcement action seeking injunctive relief or seizure of the misbranded drugs. 21 U.S.C. §§ 331, 332 and 334.

### 3. FDA Authority to Provide the Requested Relief

Federal law provides an administrative remedy to individuals who seek to compel a change in a drug's label or the issuance of a public notice. In particular, the FDA's regulations permit any person to submit a "citizen petition" requesting that the Agency take a particular action with respect to a drug. 21 C.F.R. § 10.30.

The FDA's decision to grant or deny the relief requested in a citizen's petition is subject to judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701-706. See 21 C.F.R. § 10.45(d). Because of the FDA's specialized expertise, judicial review is limited to whether the FDA's decision is "arbitrary and capricious." 5 U.S.C. § 706.

## ARGUMENT

## I.   PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF ARE PREEMPTED.

"[A] fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citations omitted); U.S. Const. Art. VI, cl. 2. State law is preempted when, *inter alia*, it conflicts with federal law. Such a conflict may arise when "[c]ompliance with both federal and state law is impossible" or when "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698-99 (1984) (internal quotation marks omitted); *accord Crosby*, 530 U.S. at 372-373; *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 873 (2000) ("conflict" is broadly defined to encompass any "repugnance; difference; irreconcilability; inconsistency; violation; curtailment; interference, or the like"). Federal statutes, regulations, and agency actions have preemptive effect. *See City of New York v. FCC*, 486 U.S. 57, 64 (1988).

9

M002E17964

Here, the FDCA and its implementing regulations preempt plaintiffs' claims for mandatory injunctive relief.[2] "Because the FDA's mission to protect the public health rests on its ability to maintain exclusive control over approved prescription drug labeling, the injunctive relief sought by plaintiffs — both modifications to approved product labeling and the issuance of labeling in the form of warning letters — intrudes upon the FDA's role and is preempted." *See Statement of Interest of the United States, Bernhardt v. Pfizer,* No. 00 Civ. 4043 (LMM) (S.D. N.Y.) (filed Nov. 13, 2000) (hereafter "FDA Statement").[3]

A.    **Plaintiff's State Law Injunctive Claim Is Preempted Because It Would Be Impossible For Defendants To Comply With Both The State Injunction And Their Federal Obligations.**

The Supremacy Clause prohibits states from imposing obligations which make compliance with federal obligations impossible. *American Tel. & Tel. Co. v. Central Office Tel., Inc.,* 524 U.S. 214, 228 (1998). A state law injunction that required a pharmaceutical manufacturer to change the FDA-approved labeling would create just such a conflict. In a case directly on point, the Second Circuit held that a state may not require regulated food product labeling to be different from what the FDA requires. *Grocery Mfrs. of Am., Inc. v. Gerace,* 755

---

[2] Plaintiffs may cite various lower court decisions that conclude that certain state-law claims for *damages* are not preempted by the FDCA and related FDA regulations. *See, e.g., Graham v. Wyeth Labs.,* 666 F. Supp. 1483, 1491-92 (D. Kan. 1987); *In re Tetracycline Cases,* 747 F. Supp. 543, 546-49 (W.D. Mo. 1989). Although the continuing validity of that line of cases is questionable after the recent landmark Supreme Court decisions in *Geier v. American Honda Motor Co.,* 529 U.S. 861 (2000) and *Buckman v. Plaintiffs' Legal Committee,* 531 U.S. 341, 121 S. Ct. 1012 (2001), this court need not reach the question of the preemption of claims for damages. This motion is directed solely at plaintiffs' claims for mandatory injunctive relief in the form of altered prescription drug labels and direct patient notices. The issuance of injunctive relief under state law would directly interfere with the FDA's obligation under federal law to determine whether such relief was or was not in the public interest. Cases addressing the preemption of claims for *damages* provide no authority on the question of the preemption of plaintiffs' *injunctive* claims.

[3] In *Bernhardt v. Pfizer,* 2000 WL 1738645 (S.D. N.Y. 2000), plaintiffs unsuccessfully sought issuance of an emergency notice under state law with respect to the drug Cardura. *See infra,* at 17-18.

M002E17965

F.2d 993 (2d Cir. 1985). The state law requirement was preempted because the manufacturer could not comply with both the state and FDA mandated labels. *Id.*

The same principle applies to the drug labeling changes sought by plaintiffs. Plaintiffs seek an injunction requiring defendants to alter the labeling with respect to Vioxx® and Celebrex® to warn that patients taking these drugs have an increased risk of certain cardiovascular events "as compared with their taking alternative, less expensive, more traditional pain relief medications for the same and/or similar medical conditions." (Complaint ¶ 38; *see also id.* ¶¶ 45, 50(b), 69(b)(1), 2, 15-17). However, defendants cannot as a matter of federal law make such an assertion in their product labeling. The FDA must approve all changes to the previously approved labeling for a prescription drug. 21 U.S.C. §§ 331-34; 21 C.F.R. § 314.70(c). *See also* FDA Statement at 11 (under federal law, "changes to labels . . . must be specifically approved by the FDA"). And FDA regulations expressly state that information comparing the safety and effectiveness of drugs *cannot* be included in labeling unless such comparisons are "supported by adequate and well-controlled studies as defined in § 314.126(b)" of 21 C.F.R. or unless that requirement is expressly waived by the FDA. 21 C.F.R. §§ 201.57(c)(3)(v), 201.57(g)(3). Plaintiffs have not alleged, nor can they allege, that the FDA has made a determination that the "research" upon which plaintiffs base their claims meets the FDA's requirements for making product comparisons in a drug label. Accordingly, a court order requiring, under state law, a change in labeling to include the product comparisons sought in the Amended Complaint would conflict directly with federal law.

An order granting plaintiffs' requested injunction would make it impossible for defendants to comply with federal law and regulations at the same time they are complying with an inconsistent court order issued under state common law. *See* FDA Statement at 11 ("were [a]

11

M002E17966

Court to grant the plaintiff's request that changes be made to [a drug's] label, this would create a direct conflict with the specific product labeling approved by the FDA"). Granting plaintiffs' requested injunction relief would subject defendants to (a) contempt if they ignored the Court and followed the FDA's direction or (b) criminal civil sanctions (including seizure or yet another injunction) if they obeyed the Court and labeled drugs in a manner not allowed by the FDA. The doctrine of preemption prohibits such conflicts. *Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993 (2d Cir. 1985).

**B.      Plaintiffs' State Law Injunctive Claim Is Preempted Because a Court Ordered Injunction Under State Law Would Interfere With The FDA's Ability To Determine Whether And When Warnings Are Appropriate, And What They Should Say.**

Even where it might be possible to comply with both state and federal law, state law is preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of congress." *Geier v. American Honda Motor Co.* 529 U.S. 861, 873 (2000) (internal quotation omitted). Two recent Supreme Court decisions have applied conflict preemption to bar state law claims like this one.

In *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000), plaintiff alleged that her car was designed negligently because it did not have airbags. The United States Department of Transportation ("DOT") had adopted a standard that required manufacturers to install airbags in some – but not all – cars for the year in question. The Supreme Court held that the DOT decision not to require airbags in all cars reflected a federal policy determination that balanced safety, consumer preference and expense. Even though it was possible for defendant to comply with both state and federal law, plaintiff's state law product liability claims – which sought a judgment that defendant was negligent not to have airbags in all cars – were held to be

M002E17967

preempted because they stood as "an 'obstacle' to the accomplishment" of the agency's efforts to balance their desired objectives. *Id.* at 886.

In *Buckman Co. v. Plaintiffs' Legal Committee*, 121 S. Ct. 1012 (2001), plaintiffs alleged a common law products liability claim based on fraud on the FDA by manufacturers of a surgical device, the pedicle bone screw, who allegedly failed to disclose information relating to "off label use." *Id.* at 1015. The Court held that if plaintiffs could assert a claim under state law to have disclosures "judged insufficient" even though "deemed appropriate by the Agency," the FDA would be "deluge[d] with information [it] neither wants or needs," frustrating the FDA's ability to protect the public. The Court held that plaintiffs' state law fraud claim was preempted because a judgment on that claim would:

- frustrate the flexibility that "is a critical component of the statutory and regulatory framework under which the FDA pursues difficult (and often competing) objectives;"

- "inevitably conflict with the FDA's responsibility to police fraud consistently with the Agency's judgment and objectives;" and

- "dramatically increase the burdens facing potential applicants" for FDA approval in a manner "not contemplated by Congress" by requiring those applicants to comply "with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes . . . ."

*Buckman*, 121 S. Ct. at 1018.[4]

Here, as in *Geier* and *Buckman*, plaintiffs are trying to interject state common law in a way that would impede the FDA's ability to achieve a "delicate balance of statutory objectives." *Buckman*, 121 S. Ct. at 1017; *Geier*, 529 U.S. at 907. *See also* FDA Statement at 8-

---

[4] The Supreme Court rejected plaintiffs' argument that courts must apply a "presumption against preemption" because the claim lay outside "a field which the States have traditionally occupied." *See id.* at 1017. The same is true here: states have not traditionally had responsibility for mandating the language of drug labels, which has been the exclusive province of the FDA.

M002E17968

10 & n.2. That "delicate balance" of "often competing [] objectives" requires the FDA to assure not only that potential risks of a drug are disclosed, but also that they are not overstated. Permitting state law to compel a change in labeling, either on the product or by way of emergency notice, would frustrate the FDA's ability to determine that a notice could harm, rather than protect the public health. False or unnecessary warnings could unwisely deter physicians from prescribing, and patients from taking FDA-approved medications prescribed by their physicians for serious illnesses. As one former FDA General Counsel has cautioned, false warnings "impede rational prescribing." R.M. Cooper, *Drug Labeling and Products Liability: The Role of the Food and Drug Administration*, 41 FOOD, DRUG COSM. L.J. 233, 238 (1986).

Moreover, federal preemption prevents states from obstructing a federal policy against information overload. Thus, in *Fisher v. Ford Motor Co.*, 224 F.3d 570, 574 (6th Cir. 2000), the Court of Appeals held that a state law purporting to impose "additional" warnings was preempted because the federal agency "feared 'information overload,' *i.e.*, that additional warnings would distract from the warnings it had determined were critical, leading consumers not to focus on the latter." Similarly, the FDA has "an interest in preventing information overload" which may "lead physicians to ignore inserts or to read but not fully attend to them." *See* Cooper, *supra*, 41 FOOD, DRUG COSM. L.J. at 238. *Accord* T. Scarlett, *The Relationship Among Drug Reaction Reporting, Drug Labeling, Product Liability, and Federal Preemption*, 46 FOOD, DRUG COSM. L.J. 31, 40 (1991) (FDA "is conscious of information overload.").

Permitting courts under state common law to mandate labeling changes by way of "emergency" notices would also upset the delicate balance that must be achieved in the timing and manner of communicating risks. Determining whether and when new research is sufficiently compelling to require a labeling change, including on the package or by means of emergency

14

M00ZE17969

notice, requires expertise in medicine, biochemistry, biostatistics, pharmacology and public health. As the D.C. Circuit has stated, the question of whether a drug "is sufficiently dangerous to require a warning label is a factual question demanding the medical expertise that FDA possesses and [courts] lack." *Public Citizen Health Research Group v. Commission, Food & Drug Admin.*, 740 F.2d 21, 29 (D.C. Cir. 1984). *Accord* Cooper, *supra*, 41 FOOD, DRUG COSM. L.J. at 238 ("The courts . . . lack the expertise and the data to consider what the consequences would be for health care generally if all inserts contained all information . . . [the] FDA is in the best position to make that kind of judgment."). Moreover, the FDA must assure that "emergency" notices are reserved for genuine public health emergencies. If the FDA "cried wolf" and ordered an "emergency" notice every time new research disclosed a theoretical (but unproven) risk, physicians would start ignoring such notices.

Plaintiffs' requested relief would also interfere with FDA regulation of information provided directly to patients. The FDA regulations expressly provide that even when the FDA has determined that a warning to physicians is required, the FDA "will intentionally delay public notification . . . where the agency determines that public notification may cause unnecessary and harmful anxiety in patients and that initial consultation between patients and their physicians is essential." 21 C.F.R. § 7.50. A court order under state law compelling direct notification to patients would interfere with the FDA's expert judgment as to whether this would do more harm than good.

If the "shadow of 50 states' tort regimes," *Buckman*, 121 S. Ct. at 1018, could be invoked to establish varying criteria for the review of clinical research and the imposition of labeling requirements, the coherent national drug policy established by Congress would evaporate. Each state could compel the issuance of its own labels and notices — conflicting not

15

me

only with the FDA's labels, but with each other. The result would be mass public confusion and imposition of a burden on pharmaceutical companies that Congress did not intend. *See id.* at 1017-18.

Moreover, new and conflicting studies could emerge in another six months, or a year from now. *See, e.g., American Home Prods. Corp. v. Johnson & Johnson,* 672 F. Supp. 135 (S.D.N.Y. 1987) (discussing the evolving and conflicting evidence over time concerning the use of aspirin and the development of Reye's syndrome). Are the courts to displace the FDA and continually evaluate possible changes to drug labeling proposed by lay lawyers and plaintiffs based on their analysis of each clinical study as it is completed? Imagine, also, courts across the nation attempting to perform the same task for every pharmaceutical product in the United States. The result would be chaos due to conflicts between the FDA and the courts, and among the courts of different states. Congress' carefully crafted scheme of uniform national drug regulation and labeling would quickly devolve into a morass that would hinder, rather than protect, the public health.

Because plaintiffs' requested state-law remedy would invariably frustrate the FDA's Congressionally-mandated mission, it is preempted. *See* FDA Statement at 6 ("[C]laims for injunctive relief seeking labeling changes in the form of warnings are preempted by implication because such relief would frustrate the FDA's ability to effectively regulate prescription drugs by having the Court substitute its judgment for the FDA's scientific expertise").

## II. PLAINTIFFS' INJUNCTION CLAIM SHOULD BE DISMISSED PURSUANT TO THE PRIMARY JURISDICTION OF THE FDA.

Primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Nader v.*

M002E17971

*Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1976). When "claims properly cognizable in court . . . contain some issue within the special competence of an administrative agency," primary jurisdiction *"requires the court to enable 'referral' to the agency"* of the issue, by dismissing or staying the action. *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993) (emphasis added).[5]  Applying this doctrine to the FDCA, the Supreme Court [has] held that "[t]he heart of the new procedures designed by Congress is the grant of *primary jurisdiction* to the FDA, the expert agency it created." *Westcott & Dunning, Inc.*, 412 U.S. 609, 627 (1973) (emphasis added).  In particular, the Supreme Court has held that:

> The determination whether a drug is generally recognized as safe and effective . . . necessarily implicates complex chemical and pharmacological considerations. *Threshold questions within the peculiar expertise of an administrative agency are appropriately routed to the agency, while the Court stays its hand.*

*Weinberger v. Bentex Pharm., Inc.*, 412 U.S. 645, 654 (1973) (emphasis added).

In a case directly on point, Judge McKenna recently dismissed a claim for injunctive relief identical to plaintiffs' claim here.  In *Bernhardt v. Pfizer Inc*, 2000 WL 1738645 (S.D.N.Y. Nov. 22, 2000), plaintiffs sought a labeling change by way of emergency notice to a putative nationwide class based on a study that purportedly showed that users of an FDA-approved prescription drug had a greater chance of suffering from "certain serious cardiac events" than persons who took an alternative drug.  The court held that plaintiffs' injunction claim was barred by the doctrine of primary jurisdiction.

*Bernhardt* applied a four-part test used by the Second Circuit in determining whether an administrative agency has primary jurisdiction:

---

[5]  "Referral" generally requires no action by the court other than to dismiss or stay the action so that any interested party may seek redress from the administrative agency to resolve the issue. *Reiter*, 507 U.S. at 268 n.3.

MC02E17972

(1) whether the question at issue involves technical or policy considerations within the agency's field of expertise;

(2) whether the question at issue is particularly within the agency's discretion;

(3) whether there is risk of inconsistent rulings; and

(4) whether a prior application to the agency has been made.

*National Comm. Ass'n, Inc. v. American Tel. & Tel. Co.*, 46 F.3d 220, 222 (2d Cir. 1995).

Applying the same four-part test here, plaintiffs' claim for injunctive relief must be dismissed:

*1. Plaintiffs' Claims Require Resolution of Technical and Policy Issues Within the FDA's Field of Expertise.* Application of the doctrine of primary jurisdiction is particularly appropriate if the issues in a case fall "'within the realm of administrative discretion' [of] an administrative agency with more specialized knowledge, experience, expertise, and insight" than the court, or if the case "involves technical and intricate questions of fact and policy that Congress has assigned to a specific agency." *National Comm. Ass'n*, 46 F.3d at 223. In *Bernhardt, supra* at **2-3, Judge McKenna found that "the FDA, not this Court, has the relevant expertise."

The FDA is the "expert agency" created by Congress to determine safety and effectiveness of drugs. *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 627 (1973). Consequently, as the Supreme Court has held, a court should "stay its hand" while "questions within peculiar expertise" of FDA are resolved by the agency. *Weinberger v. Bentex Pharm., Inc.*, 412 U.S 645, 654 (1973), *accord Premo Pharm. Labs., Inc. v. United States*, 629 F.2d 795, 803 (2d Cir. 1980) ("the FDA . . ., as distinguished from a court, possesses superior expertise, usually of a complex scientific nature").

This is particularly true with respect to the analysis of and weight given to medical studies concerning prescription drug safety, because the "FDA possesses the requisite

M02E17973

know-how to conduct such analyses, by sifting through scientific evidence to determine the most accurate and up-to-date information regarding a particular drug." *Henely v. Food & Drug Admin.*, 77 F.3d 616, 621 (2d Cir. 1996). As the D.C. Circuit held, in refusing to permit plaintiffs "to bypass the administrative process" by asking a court to determine whether warnings should be placed on aspirin: "[w]hether aspirin is sufficiently dangerous to require a warning label is a factual question demanding the expertise that the FDA possesses and we lack." *Public Citizen Research Group v. Commissioner*, 740 F.2d 21, 29 (D.C. Cir. 1984).

Plaintiffs' allegations regarding supposed risks associated with Vioxx® and Celebrex® involve the highly technical evaluation of recent clinical research. The doctrine of primary jurisdiction requires this Court to let the experts at FDA address these issues in the first instance.

2. *The Issues Raised by Plaintiffs' Claims Fall Squarely Within the FDA's Administrative Discretion.* In finding primary jurisdiction the Court in *Bernhardt* considered "whether the notice requested by plaintiffs is warranted is a decision that has been squarely placed within the FDA's informed expert discretion." 2000 WL 1738645, at *3. Congress delegated to the FDA the duty to ensure that "drugs are safe and effective" and to "promote public health by promptly and efficiently *reviewing clinical research and taking appropriate action on the marketing of regulated products in a timely manner.*" 21 U.S.C. § 393(b)(1)-(2) (mission statement of the FDA) (emphasis added). To that end, the FDA approves the labeling of a drug as part of the new drug approval process. *See* 21 U.S.C. § 355(b); 21 C.F.R. § 201.100(c)-(d). Moreover, Congress has given the FDA statutory authority to make decisions with regard to reports to the public on results of any investigation, notice to consumers and doctors of any "imminent danger to health or gross deception of the consumer," and requiring

19

manufacturers to revise the labeling of a drug.  21 U.S.C. §§ 375(b), 393.  Accordingly, the
injunctive relief sought by the plaintiffs here is at the heart of the administrative discretion
Congress has granted to the FDA.

   **3.  *Plaintiffs' Lawsuit Creates A Substantial Danger of Inconsistent Rulings.***
Where, as here, plaintiffs seek to have a court require labeling changes for a drug, there exists a
substantial danger of inconsistent directions being imposed upon the drug manufacturer by the
courts on the one hand, and the FDA on the other.  As Judge McKenna explained:

> An order by this Court directing Pfizer to issue the notices would
> not preclude the FDA from either issuing a second notice or
> requiring Pfizer to do so, thus creating the potential for
> inconsistent directions concerning a serious medical ailment and
> how it is best treated.

*Bernhardt*, 2000 WL 1738645, at *3.

   **4.  *The FDA Already Is Considering the Very Issues Raised by Plaintiffs.*  The**
final factor is whether an application has been made to the agency to obtain the requested relief.
*National Comm. Ass'n*, 46 F.3d at 222.  In this case, plaintiffs concede that the studies at issue
are currently before the FDA.  (Am. Comp. ¶ 2.)  Plaintiffs will suffer no prejudice if their claim
for mandatory injunctive relief is dismissed.  Because the matter already is being considered by
the FDA, there is no substantial risk of undue delay.  Moreover, the FDA's action may moot or
change the relief requested in the complaint, thus requiring plaintiffs to replead their action.  It is
therefore appropriate to dismiss the Complaint.  *See Johnson v. Nyack Hosp.*, 964 F.2d 116, 122,
124 (2d Cir. 1992) (affirming dismissal of complaint on basis of primary jurisdiction).

M02E17975

## CONCLUSION

Plaintiffs' state law claims for mandatory injunctive relief should be dismissed.

Dated:   September 21, 2001


By: *James D. Arden*

Steven M. Bierman
James D. Arden  *(JA 8779)*
SIDLEY AUSTIN BROWN & WOOD
875 Third Avenue
New York, New York 10022
(212) 906-2000

*Of Counsel:*

Sara J. Gourley
Richard F. O'Malley, Jr.
Susan A. Weber
Neil H. Wyland
SIDLEY AUSTIN BROWN & WOOD
Bank One Plaza
Chicago, Illinois 60603
(312) 853-7000


*Attorneys for Defendants Pharmacia Corp.
and G.D. Searle & Co.*

David Klingsberg
Steven Glickstein
John J. P. Howley
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
(212) 836-8000

*Of Counsel:*

Ian S. Linker
Melissa C. Morrow


*Attorneys for Defendant Pfizer Inc.*

Norman C. Kleinberg
Theodore V. H. Mayer
Robb W. Patryk
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6861

*Attorneys for Defendant Merck & Co., Inc.*

21

M002E17976

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALEX CAIN and                                    :
WILLIAM WATKINS,                                 :
                                                 :
                        Plaintiffs,              :
                                                 :        CV-01-3441 (SJ) (RLM)
        - against -                              :
                                                 :
MERCK & CO., INC., PHARMACIA CORP.,              :    **AFFIDAVIT OF JOHN J.P. HOWLEY**
PFIZER INC and G.D. SEARLE & CO.,                :
                                                 :
                        Defendants.              :
------------------------------------------------------------X

John J.P. Howley, being duly sworn, deposes and says:

      1.     I am an attorney admitted to practice in the State of New York and a member of the law firm of Kaye Scholer LLP, counsel for defendant Pfizer Inc in this action.  I submit this affidavit to provide the court with copies of an unpublished decision and brief cited in the Memorandum in Support of Defendants' Motion to Dismiss Claim for Injunctive Relief.

      2.     Annexed as Exhibit A is a copy of the decision in *Bernhardt v. Pfizer Inc*, 2000 WL 1738645 (S.D.N.Y. Nov. 22, 2000).

      3.     Annexed as Exhibit B is a copy of the *Statement of Interest of the United States* filed on November 13, 2000 in *Bernhardt v. Pfizer Inc*, No. 00 Civ. 4043 (LMM) (S.D.N.Y.).

John J.P. Howley

Sworn to before me this 21st
day of September, 2001

NOTARY PUBLIC
TODD A. PORTER
Notary Public, State of New York
No. 01-PO6061241
Qualified in Queens County
Commission Expires July 16, 2003

2000 WL 1738645                                                           Page 1
(Cite as: 2000 WL 1738645 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Lawrence D. BERNHARDT, Plaintiff,
v.
PFIZER, INC., Defendant.
Arnold LIEBMAN, Plaintiff,
v.
PFIZER, INC., Defendant.

Nos. 00 Civ. 4042 LMM, 00 Civ. 4379 LMM.

Nov. 22, 2000.

*MEMORANDUM AND ORDER*

MCKENNA, J.

*1 Lawrence D. Bernhardt and Arnold Liebman
("plaintiffs") have filed product liability actions
[FN1] against Pfizer, Inc. ("defendant") for claims
arising out of their use of Cardura, a prescription
drug manufactured by defendant. Presently before
this Court is defendant's motion for judgment on the
pleadings pursuant to Fed.R.Civ.P. 12(c) with
respect to plaintiffs' claim for mandatory injunctive
relief in the form of an emergency notice sent to
Cardura users and their physicians. For the reasons
set forth below, the Court finds that the Food and
Drug Administration ("FDA") has primary
jurisdiction and stays the present motion until the
FDA decides the plaintiffs' request for a notice.

        FN1. The Court consolidated these actions by
        Order dated June 21, 2000.

Background

Pfizer manufactures and markets the
antihypertensive drug doxazosin under the brand
name "Cardura" for the treatment of hypertension.
(Pls.Compl.¶ 1.) [FN2] In 1994, the National
Heart, Lung and Blood Institute ("NHLBI"), a
division of the National Institute of Health ("NIH"),
began an eight-year study called Antihypertensive
and Lipid Lowering Treatment to Prevent Heart
Attack Trial ("ALLHAT") which included in its
scope the comparison of doxazosin to chlorthalidone
in the treatment of hypertension. (*Id.* ¶ 23.) On
March 8, 2000 the NHLBI issued a press release
announcing that it was discontinuing this part of the

ALLHAT study because doxazosin "was found less
effective than [chlorthalidone] in reducing some
forms of cardiovascular disease." (NIH News
Release dated Mar. 8, 2000, Leskin Aff. Ex. B.)
Plaintiffs claim that the ALLHAT findings
demonstrate that "Cardura users are twice as likely
to be hospitalized for congestive heart failure and
have a significantly higher chance of suffering from
certain serious cardiac events, including strokes, as
compared with patients" who took chlorthalidone to
treat hypertension. (Pls. Mem. Opp'n at 1.)
Plaintiffs seek an order requiring Pfizer to send a
notice to Cardura users and their physicians
regarding the ALLHAT findings with respect to
Cardura. The proposes notice to physicians would
state, among other things, that a study by NHLBI
"has demonstrated that Cardura (doxazosin) is less
effective in preventing heart failure compared to a
widely used diuretic drug, chlorthalidone." (Pl.Ex.
1), and the proposed notice to patients, among other
things, the same. (Pl.Ex. 2.)

        FN2. Citations herein to "Pls. Compl." are to the
        complaint filed in *Bernhardt v. Pfizer,* 00 Civ.
        4042.

Discussion

Defendant and the United States [FN3] between
them argue that plaintiffs' request for injunctive
relief should be denied because plaintiffs lack
standing to seek such relief (defendant), the FDA
has primary jurisdiction to determine whether the
ALLHAT findings warrant the issuance of notices to
Cardura users and their physicians (defendant and
the United States) and the relief plaintiffs seek is
preempted by the Food, Drug and Cosmetics Act
("FDCA"), 21 U.S.C. § 301 et seq. (United States.)
Because the Court finds that the FDA has primary
jurisdiction, it is unnecessary to discuss defendant's
other arguments.

        FN3. At the Court's request, the United States has
        submitted a Statement of Interest which is limited
        to plaintiffs' request that the Court order defendant
        to notify Cardura users and physicians of the
        ALLHAT study findings.

*2 Under the doctrine of primary jurisdiction, a
district court may refer a matter within its original
jurisdiction to the appropriate administrative agency
if doing so will "promot[e] proper relationships
between the courts and administrative agencies

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

2000 WL 1738645                                                                              Page 2
(Cite as: 2000 WL 1738645, *2 (S.D.N.Y.))

charged with particular regulatory duties." *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 303 (1976). As the Second Circuit has explained,

[t]he doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight. Specifically, courts apply primary jurisdiction to cases involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency.

*National Communications Assoc. v. American Telephone & Telegraph Co.,* 46 F.3d 220, 222-23 (2d Cir.1995) (citations omitted). Although no "fixed formula" governs the application of the doctrine, *United States v. Western Pacific R.R., Co.,* 352 U.S. 59, 64 (1956), the Second Circuit has identified four factors to consider:

(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

(2) whether the question at issue is particularly within the agency's discretion;

(3) whether there exists a substantial danger of inconsistent rulings; and

(4) whether a prior application to the agency has been made.

*National Communication Ass'n.,* 46 F.3d at 222. The Court also must balance the advantages of applying the doctrine against any potential costs and delays resulting from the referral of the matter to the agency. *See id.* If a court finds that an administrative agency has primary jurisdiction over the claim, the court stays the matter and directs plaintiff to file a complaint with the agency. *See Reiter v. Cooper,* 507 U.S. 258, 268-69 (1993).

Referral of an issue to an agency on the grounds of primary jurisdiction is inappropriate when the issue in question is a purely legal one, *see Board of Educ. v. Harris,* 622 F.2d 599, 607 (2d Cir.1979), or turns on a factual matter requiring no technical or policy expertise. *See National Communication Ass'n.,* 46 F .3d at 223. Here, whether the ALLHAT findings constitute sufficient grounds to justify plaintiffs' request for a notice is neither a purely legal question nor a question that can be decided without specialized knowledge and expertise. Plaintiffs are not arguing that the ALLHAT findings trigger a statutory or regulatory

notification requirement or that Pfizer's inaction violates the FDCA. [FN4] Rather, plaintiffs ask this Court to determine, on the basis of presumably scientific and medical principles to be developed at an adversary preliminary injunction hearing, that the ALLHAT findings warrant a notice to all Cardura users and their physicians. The FDA, not this Court, has the relevant expertise. *See Henley v. Food and Drug Admin.,* 77 F.3d 616, 621 (2d Cir.1996) ("[T]he average consumer cannot be expected to analyze and weigh each conflicting study.... The FDA possesses the requisite know-how to conduct such analyses, by sifting through the scientific evidence to determine the most accurate and up-to-date information regarding a particular drug."); *Premo Pharm. Labs., Inc. v. United States,* 629 F.2d 795, 803 (2d Cir.1980) ("[T]he FDA ..., as distinguished from a court, possesses superior expertise, usually of a complex scientific nature.").

FN4.  Indeed, plaintiffs cannot make those arguments because there is no private right of action to enforce the provisions of the FDCA. *See PKD Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1113 (2d Cir.1997) (citing 21 U.S.C. § 337(a)).

*3 Congress has granted the FDA the authority to ensure that drugs are safe and effective. *See Premo Pharm. Lab.,* 629 F.2d at 804. The FDA approves the labeling of a drug as part of the new drug approval process. *See* 21 U.S.C. § 355(b); 21 C.F.R. § 201.100(c)(2). Such labeling is "broadly defined" and has been found to include the "Dear Doctor" and "Dear Patient" notices requested by plaintiffs. *See Walls v. Armour Pharm. Co.,* 832 F.Supp. 1467, 1482-83 (M.D.Fla.1993); *see also Kordel v. United States,* 335 U.S. 345, 349-50 (1948) (holding that literature sent separately by drug manufacturer supplementing or explaining materials accompanying the drug, constitutes "labeling" under FDCA). The FDA also has the authority to either alert Cardura users and their physicians if it determines that Cardura creates "an imminent danger to health or gross deception of the consumer," § 375(b), or to request Pfizer to revise the labeling for Cardura. *See* § 393. Finally, plaintiffs have the ability to request the FDA to take either action pursuant to a "citizen petition" provision. 21 C.F.R. § 10.30. The above review of the relevant regulatory scheme convinces this Court that whether the notice requested by plaintiffs is warranted is a decision that has been squarely placed

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

2000 WL 1738645                                                    **Page 3**
**(Cite as: 2000 WL 1738645, \*3 (S.D.N.Y.))**

within the FDA's informed expert discretion.

Because there is no law for the Court to apply, there is no opportunity for inconsistent interpretations of law. There is, however, a substantial danger of a much more serious inconsistency. An order by this Court directing Pfizer to issue the notices would not preclude the FDA from either issuing a second notice or requiring Pfizer to do so, thus creating the potential for inconsistent directions concerning a serious medical ailment and how it is best treated.

Finally, the Court finds that plaintiffs' failure to make a prior application to the FDA for the issuance of the notices is not dispositive and that no substantial delay will result from the application of the primary jurisdiction doctrine in this case. Plaintiffs' claims for product liability are not

dependent on whether the notices are issued by this Court and the remainder, and indeed, the substance, of plaintiffs' lawsuit may continue in this Court.

### Conclusion

The Court grants defendant's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) as to plaintiffs' claim for injunctive relief in the form of notice and plaintiffs shall direct that request for injunctive relief to the FDA for review. The Court hereby stays such part of plaintiffs' case until a determination is made by the FDA. [FN5]

FN5. The preliminary injunction hearing scheduled for November 20, 2000 is canceled as moot.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

M002E17980

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LAWRENCE D. BERNHARDT,                    :

        Plaintiff,                    :

      - v. -                    :         00 Civ. 4042 (LMM)

PFIZER, INC.,                    :

        Defendant.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ARNOLD LIEBMAN,                    :

                      :

        Plaintiff,                    :
      - v. -                    :         00 Civ. 4379 (LMM)

PFIZER, INC.,                    :

        Defendant.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### STATEMENT OF INTEREST OF THE UNITED STATES

MARY JO WHITE
United States Attorney for the
Southern District of New York,
Attorney for United States of America

NEIL S. BINDER (NB-0959)
Assistant United States Attorney
100 Church Street, 19th Floor
New York, New York  10007
Telephone:  (212) 637-2675

       -- Of Counsel --

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    Regulatory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.    Plaintiffs' Claim For Injunctive Relief Is Preempted Because
            It Would Interfere With The FDA's Ability To Regulate
            Prescription Drug Labeling Effectively . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    II.    Should The Court Determine That Plaintiffs State A Claim
            For Injunctive Relief, The Court Should Recognize The FDA's Primary
            Jurisdiction With Respect To The Labeling Changes Requested
            In This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    III.    Plaintiffs May Not Assume For Themselves The FDA's
            Role With Respect To The  Enforcement Of The FDCA . . . . . . . . . . . . . . . . . 17

    IV.    Having Never Petitioned The Agency To Act, Plaintiffs
            Have Failed To Exhaust Their Administrative Remedies  . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

M002E17982

## TABLE OF AUTHORITIES

<u>Cases</u>:                                                          <u>Page</u>

<u>American Home Products Corp. v. Johnson & Johnson</u>,
    672 F.Supp. 135 (S.D.N.Y. 1987)................................................8, 9, 16, 18

<u>Association of International Automobile Manufacturers, Inc. v. Abrams</u>,
    84 F.3d 602 (2d Cir. 1996)..............................................................7

<u>CIBA v. Weinberger</u>, 412 U.S. 640 (1973) .............................................16, 17

<u>Capital Cities Cable, Inc. v. Crisp</u>, 467 U.S. 691 (1984) ...............................7

<u>Cottrell. Ltd. v. Biotrol International, Inc.</u>, 191 F.3d 1248 (10th Cir. 1999)................8, 18

<u>English v. General Electric Co.</u>, 496 U.S. 72 (1990)..................................7

<u>Far East Conference v. United States</u>, 342 U.S. 570 (1952).............................13

<u>Freightliner Corp. v Myrick</u>, 514 U.S. 280 (1995)....................................7

<u>Fulton Cogeneration Associates v. Niagara Mohawk Power Corp.</u>,
    84 F.3d 91 (2d Cir.1996)..............................................................15

<u>Great White Fleet, Ltd. v. Fed. Container Line, Inc.</u>, No. 92 Civ. 1255 (LMM),
    1992 WL 367110 (S.D.N.Y. Nov. 23, 1992) ............................................13

<u>Grocery Manufacturers of America, Inc. v. Gerace</u>, 755 F.2d 993 (2d Cir.),
    <u>aff'd</u> 478 U.S. 801 (1985)............................................................12

<u>Grundberg v. UpJohn Co.</u>, 140 F.R.D. 459 (D. Utah 1991)................................9

<u>Heller v. Coca-Cola Co.</u>, 230 A.D.2d 768, 646 N.Y.S.2d 524 (2d Dep't 1996)..............13

<u>Henley v. Food and Drug Admin.</u>, 77 F.3d 616 (2d Cir. 1996).......................9, 13

<u>Kordel v. United States</u>, 335 U.S. 345 (1948)........................................5

<u>McCarthy v. Madigan</u>, 503 U.S. 140 (1992)...........................................19

<u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470 (1996).......................................11

ii

M002E17983

National Communications Association, Inc. v. A.T. & T,
    46 F.3d 220 (2d Cir. 1995)...... ............................................................13, 14

National Women's Health Network, Inc. v. A.H. Robins Co., 545 F.Supp. 1177
    (D. Ma. 1982) ................................................................................................11

PDK Labs, Inc. v. Friedlander, 103 F.3d 1105 (2d Cir. 1997).........................................17

Premo Pharm. Lab., Inc. v. United States, 629 F.2d 795 (1980).........................8, 9, 10, 13

Public Citizen Health Research Group v. Commissioner, Food & Drug Admin.,
    740 F.3d 21 (D.C. Cir. 1984)....................................................9, 13, 18, 19

Ryan v. Chemlawn Corp., 935 F.2d 129 (7th Cir. 1991)....................................14

Sandoz Pharm. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222 (3rd Cir. 1990)...............18

United States v. Western Pacific R.R. Co., 352 U.S. 59 (1956)........................................13

Walls v. Armour Pharm. Co., 832 F. Supp. 1467 (M.D. Fla. 1993)...................................6

Weinberger v. Bentex Pharm., Inc., 412 U.S. 645 (1973)....................................10, 16, 17

Weinberger v. Hynson, Westcott & Dunning, Inc., 412 U.S. 609 (1973)...............5, 15, 16

**Statutes:**

5 U.S.C. § 701- 706.........................................................................................6

21 U.S.C. § 301.................................................................................................2

21 U.S.C. § 321(k)............................................................................................5

21 U.S.C. § 321(m)...........................................................................................5

21 U.S.C. § 321(p)(1)........................................................................................16

21 U.S.C. § 331.............................................................................................5, 6

21 U.S.C. § 332.................................................................................................6

21 U.S.C. § 334.................................................................................................6

iii

M002E17984

21 U.S.C. § 352(a)..................................................................................................6

21 U.S.C. § 355.................................................................................................... 5

21 U.S.C. § 356a ................................................................................................12

21 U.S.C. § 375(b)...............................................................................................6

21 U.S.C. § 393....................................................................................................5

21 U.S.C. §393 (b)(2)(B)....................................................................................8

21 U.S.C. § 393(b)(4)....................................................................................6, 10

28 U.S.C. § 517....................................................................................................1

Regulations:

21 C.F.R. § 10.30.........................................................................................6, 19

21 C.F.R. § 10.45(d).............................................................................................6

21 C.F.R. § 201.100(c)(2)....................................................................................5

21 C.F.R. § 314.50...............................................................................................5

21 C.F.R. § 314.70.............................................................................................12

M002E17985

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - x
LAWRENCE D. BERNHARDT,                    :

        Plaintiff,          :

      - v. -                      :          00 Civ. 4042 (LMM)

PFIZER, INC.,                             :

        Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - x
ARNOLD LIEBMAN,                           :

                :

        Plaintiff,          :
      - v. -                      :          00 Civ. 4379 (LMM)

PFIZER, INC.,                             :

        Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - x

## STATEMENT OF INTEREST OF THE UNITED STATES

### PRELIMINARY STATEMENT

      The United States of America (the "United States") respectfully submits this

Statement of Interest pursuant to 28 U.S.C. § 517, and pursuant to the Court's request by letter

dated September 21, 2000, to express its views with respect to plaintiffs' request that this Court

require modifications to the approved Cardura labeling in the form of revised labels and

warnings.

      Congress has assigned to the Food and Drug Administration (the "FDA" or

"Agency") the exclusive responsibility to regulate and enforce the laws with respect to

prescription drugs sold in the United States.  Because the FDA's mission to protect the public

health rests on its ability to maintain exclusive control over approved prescription drug labeling, the injunctive relief sought by plaintiffs -- both modifications to approved product labeling and the issuance of labeling in the form of warning letters – intrudes upon the FDA's role and is preempted. In other words, to ensure that the public receives uniform, consistent information with respect to prescription drugs, and that this information is based on highly developed expertise, any request to order changes related to the approved drug labeling must be addressed directly and exclusively to the FDA; accordingly, plaintiffs fail to state a claim for injunctive relief with respect to modification to Cardura's labeling and those claims should be dismissed.

Moreover, even if plaintiffs state a claim with respect to injunctive relief, that request should be denied because the FDA has primary jurisdiction. Finally, because plaintiffs' claims for injunctive relief are actually veiled attempts to assert, on behalf of the FDA, that defendant violated the Federal Food Drug and Cosmetic Act, 21 U.S.C. 301 et seq., ("FDCA" or "the Act"), these claims are not permitted because the FDCA does not permit a private right of action; correspondingly, to the extent that plaintiffs are challenging the fact that the FDA has brought no enforcement action, this claim is barred because plaintiffs have not exhausted their administrative remedies.

<u>BACKGROUND</u>

I.    <u>This Action</u>

The United States, taking no position on the merits of this action, understands the factual allegations, as set out in plaintiffs' complaints, as follows. Pfizer manufactures and markets the prescription drug doxazosin mesylate under the brand name Cardura. (Bernhardt Complaint at ¶ 13; Liebman Complaint at ¶¶ 6, 7). Cardura, which is prescribed to treat both

M002E17987

benign prostatic hyperplasia and hypertension, has been approved for sale by the FDA. (Bernhardt Complaint at ¶ 18; Liebman Complaint at ¶ 8).

In 1994, the National Heart, Lung and Blood Institute ("NHLBI"), a division of the National Institute of Health ("NIH"), began an eight-year study called the Antihypertensive and Lipid Lowering Treatment to Prevent Heart Attack Trial ("ALLHAT"). (Bernhardt Complaint at ¶ 23; Liebman Complaint at ¶ 11). On March 8, 2000, the NHLBI announced that it had discontinued the portion of the ALLHAT study that compared Cardura with chlorthalidone, a prescription drug used to treat hypertension. (Bernhardt Complaint at ¶ 24; Liebman Complaint at ¶ 12). The NHLBI announced that it had discontinued the portion of the study comparing Cardura to chlorthalidone because of its finding that Cardura users were twice as likely to be hospitalized for congestive heart failure and had a higher chance of suffering from certain other serious cardiac events than the users of chlorthalidone. (Bernhardt Complaint at ¶¶ 4, 24; Liebman Complaint at ¶ 12).

Plaintiffs, on behalf of themselves and prospective class members, seek equitable, injunctive, declaratory and monetary relief. (Bernhardt Complaint at ¶¶ 72, 74; Liebman Complaint at ¶ 17). Among other injunctive relief, plaintiffs ask this Court to provide "emergency notice and revised drug warnings" to Cardura users (Bernhardt Complaint at ¶ 41; Liebman Complaint at ¶ 50) and to "provid[e] Class members with revised warnings on Cardura labels and packaging." (Bernhardt Complaint, Prayer for Relief at (b)(3); Liebman Complaint, Prayer for Relief at ¶ 2).

Further, plaintiffs have moved by order to show cause to have this Court order defendant to provide the following notices to patients and doctors:

3

M002E17988

<u>Notice to Patients</u>

Dear (patient name):

You have been prescribed Cardura (doxazosin) for the treatment of hypertension. A recent study by the National Heart, Lung and Blood Institute (the "NHLBI") has demonstrated that Cardura is less effective in preventing heart failure compared to a widely used diuretic drug known as chlorthalidone. As a result, you are requested to consult with your doctor regarding your use of Cardura to treat hypertension and other possible treatment options.

DO NOT STOP TAKING YOUR CARDURA MEDICATION UNTIL YOU CONSULT WITH YOUR DOCTOR, BECAUSE THE MEDICATION MAY HELP TO KEEP YOUR BLOOD PRESSURE CONTROLLED DURING THAT TIME AND THERE MAY BE OTHER REASONS WHY YOUR DOCTOR CHOSE THIS DRUG FOR YOUR TREATMENT. After reviewing your individual circumstances, your doctor may or may not recommend that another treatment will be of more benefit to you.

(Exhibit A to Order to Show Cause dated September 8, 2000).

<u>Notice to Physicians</u>

Dear (physician name):

A recent study by the National Heart, Lung and Blood Institute (the "NHLBI") has demonstrated that Cardura (doxazosin) is less effective in preventing heart failure compared to a widely used diuretic drug chlorthalidone. This information is being provided to you as you may have prescribed Cardura for the treatment of hypertension to your patients.

The results of the study known as the Antihypertensive and Lipid Lowering Treatment to Prevent Heart Attack Trial ("ALLHAT") have been published in Volume 283, Number 15 of JAMA, on April 19, 2000. You are requested to familiarize yourself and your staff with these results, as Cardura patients are being simultaneously notified of the ALLHAT findings and instructed to contact their physicians regarding the effect of the ALLHAT study on their hypertension treatment options based on their individual circumstances.

(Exhibit B to Order to Show Cause dated September 8, 2000).

Plaintiffs do not claim to have petitioned the FDA to require modifications to Cardura's labeling.

4

M002E17989

II.    Regulatory Background

As set forth in the FDCA, the Federal Government, through the FDA, is responsible for regulating prescription drugs.  21 U.S.C. § 393.  The FDCA's scheme of prescription drug regulation is designed to ensure that drugs on the market are safe and effective for conditions of their use.  21 U.S.C. §§ 355, 393(b).  Thus, the FDCA prohibits the sale of any new drug unless it has first been approved by the FDA, 21 U.S.C. § 355(a), and attaches criminal sanctions to persons who distribute unapproved drugs.  21 U.S.C. § 331(d).  A new drug normally obtains FDA approval by virtue of a "new drug application" ("NDA"), which must demonstrate that the drug is safe and effective for its intended uses.  21 U.S.C. § 355(b).  An NDA must include, among other things, samples of the drug and "a specimen of the labeling proposed to be used," as well as extensive studies, including both laboratory and clinical investigations, to show that the drug is safe and effective for its intended uses.  Id.; see also 21 C.F.R. § 314.50 (detailing contents of NDA).  The approval process of an NDA includes an evaluation of the drug's labeling.  21 U.S.C. § 355(b).  Indeed, prescription drug labeling is the labeling authorized in the approved NDA.  21 C.F.R. § 201.100(c)(2).

"Labeling" is defined to include "all labels[1] and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m).  "Accompanying such article" is interpreted to include materials that explain the uses of a drug, including warnings.  Kordel v. United States, 335 U.S. 345, 347-49 (1948) (holding that literature sent by the manufacturer of a drug was "labeling" under the

---

[1]    The statute defines "label" to "mean [a] a display of written, printed, or graphic matter upon the immediate container of any article."  21 U.S.C. § 321(k).

5

M002E17990

FDCA when it supplemented or explained materials sent with the drug); <u>Walls v. Armour Pharm.</u>
<u>Co.</u>, 832 F. Supp. 1467, 1482-83 (M.D. Fla. 1993) ("Dear Doctor" letter a form of labeling),
<u>aff'd</u>, 53 F.3d 1184 (11th Cir. 1995).

    If a drug manufacturer disseminates labeling that the FDA determines to be "false
or misleading in any particular," that drug is deemed "misbranded." 21 U.S.C. § 352(a). The
FDCA prohibits the manufacture and distribution of misbranded drugs. 21 U.S.C. § 331(a)-(c),
(k). If the FDA determines that a drug's labeling is misbranded, the United States may bring an
enforcement action against the drug's manufacturer. 21 U.S.C. §§ 331, 332, & 334.

    Notwithstanding the ability of the United States to bring an enforcement action,
when the FDA determines that warnings are inadequate or improper, the FDA may request that
the drug manufacturer revise its labeling. 21 U.S.C. § 393(b)(4). Further, the FDA has the
authority to send "Dear Doctor" letters or otherwise disseminate information regarding a drug
that it determines creates an "imminent danger to health or gross deception of the consumer." 21
U.S.C § 375(b).

    Finally, the FDA's regulations provide for any person to submit a "citizen
petition" requesting that the Agency take a particular action. 21 C.F.R. § 10.30. Review of a
final administrative action with respect to a citizen petition may be had pursuant to the
Administrative Procedure Act, 5 U.S.C. §§ 701- 706. <u>See</u> 21 C.F.R. § 10.45(d).

M002E17991

ARGUMENT

I.     Plaintiffs' Claim For Injunctive Relief Is Preempted Because It Would Interfere
       With The FDA's Ability To Regulate Prescription Drug Labeling Effectively

Plaintiffs' request that this Court both require changes to Cardura's labels and

packaging and order Pfizer to send warning letters to doctors and patients advising them of the

NHLBI announcement is preempted.

The Supreme Court has decided that

> [u]nder the Supremacy Clause, U.S. Const., Art. VI, cl.2., the
> enforcement of a state regulation may be pre-empted by federal law
> in several circumstances: first, when Congress, in enacting a
> federal statute, has expressed a clear intent to pre-empt state law;
> second, when it is clear, despite the absence of explicit preemptive
> language, that Congress has intended, by legislating
> comprehensively, to occupy an entire field of regulation and has
> thereby left no room for the States to supplement federal law; and,
> finally, when compliance with both state and federal law is
> impossible, or when state law stands as an obstacle to the
> accomplishment and execution of the full purposes and objectives
> of Congress.

Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 698-99 (1984) (internal quotation marks and

citations omitted); see also English v. General Electric Co., 496 U.S. 72, 78-79 (1990);

Association of Int'l Auto Mfrs., Inc. v. Abrams, 84 F.3d 602, 607 (2d Cir. 1996).  Although the

portions of the FDCA regulating prescription drugs do not contain an express preemption clause,

the Government believes that plaintiffs' claims for injunctive relief seeking labeling changes in

the form of warnings are preempted by implication because such relief would frustrate the FDA's

ability effectively to regulate prescription drugs by having the Court substitute its judgment for

the FDA's scientific expertise  See Ass'n of Int'l Auto Mfrs., Inc., 84 F.3d at 607 (quoting

Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995)).

M002E17992

As determined by Congress, the FDA's mission with respect to drugs is to protect the public health by ensuring that "drugs are safe and effective." 21 U.S.C. § 393(b)(2)(B). Accordingly, as the Second Circuit has explained, "[t]he entire statutory scheme envisages that the FDA will perform the difficult task of investigation and scientific evaluation usually required to determine whether a drug product is safe and effective." Premo Pharm. Lab., Inc. v. United States, 629 F.2d 795, 803 (1980). Were courts to order injunctive relief that would require changes to approved product labeling or that would modify the terms of that labeling in the form of the warning letters proposed by plaintiffs, such judicial action would interfere with the FDA's role as the governmental body responsible for protecting the public interest with respect to prescription drugs. See American Home Products Corp. v. Johnson & Johnson, 672 F. Supp. 135, 146 (S.D.N.Y. 1987) (noting that the FDA must consider not only possible hazards to public health, but also the interest of the public in freedom from groundless alarm).

Should the FDA determine that new warnings are appropriate with respect to Cardura, there exists the very real possibility that such warnings would differ from those requested by plaintiffs. Competing warnings from the FDA and a federal district court about prescription drugs would create unacceptable confusion among users of the drug and in the medical community as a whole.

Further, to ensure that physicians and patients receive correct, consistent, and clear information with respect to the safety and efficacy of prescription drugs, the regulatory scheme established by Congress contemplates that the complex scientific and public health issues involved in drug labeling will be resolved by the agency created for that purpose. See Cottrell, Ltd. v. Biotrol Int'l, Inc., 191 F.3d 1248 , 1255 (10th Cir. 1999) ("claims that require direct

M002E17993

interpretation and application of the FDCA are not properly recognized because such matters are more appropriately addressed by the FDA, especially in light of Congress's intention to repose in that body the task of enforcing the FDCA") (quoting Braintree Labs., Inc. v. Nephro-Tech, Inc., No. 96-2459-JWL, 1997 WL 94237, at *6 (D. Kan. Feb. 26, 1997)); American Home Products Corp. 672 F. Supp. at 145 ("[T]he public interest is presumed to be adequately represented by the FDA, whose control over [] drug labeling is . . . 'pervasive and complete.'"). Rather than rely on the FDA to undertake a review of the research that plaintiffs claim calls into question the safety and efficacy of Cardura, and thus justifies labeling changes in the form of warnings, plaintiffs would have this Court simply order the warnings that they deem appropriate. See Grundberg v. UpJohn Co., 140 F.R.D. 459, 469 (D. Utah 1991) (denying non-parties request for confidential documents produced in context of private lawsuit involving Halcion and noting that "[t]he FDA, and not any proposed intervenor, has the responsibility to put into place regulations and to take action to assure public health and safety" with respect to drugs). Were courts to order prescription drug labeling changes and warning letters such as those at issue here, the public would receive information that lacked the benefit of the FDA's scientific expertise and consideration of the relevant policy issues. See Henley v. Food and Drug Admin., 77 F.3d 616, 621 (2d Cir. 1996) ("The FDA possesses the requisite know-how to conduct [an analysis of conflicting studies] by sifting through the scientific evidence to determine the most accurate and up-to-date information regarding a particular drug"); Public Citizen Health Research Group v. Commissioner, Food & Drug Admin., 740 F. 3d 21, 29 (D.C. Cir. 1984) (whether a drug "is sufficiently dangerous to require a warning label is a factual question demanding the medical expertise that FDA possesses and [courts] lack" ); Premo Pharm. Lab., Inc., 629 F.2d at 803

M002E17994

(whether a drug is safe and effective "is to be determined by the FDA which, as distinguished from a court, possesses superior expertise, usually of a complex scientific nature, for resolving the issue"). Further, the information disseminated to the public would not have the benefit of the wide range of opinions – opinions that can be rendered outside the constraints of the adversary process and the Federal Rules of Evidence – that the FDA considers in reaching a conclusion on whether warnings should be issued with respect to a particular drug. See Weinberger v. Bentex Pharm., Inc., 412 U.S. 645, 654 (1973) (noting that agency expertise is superior to courts' by virtue of their "specialization, insight gained through experience, and by more flexible procedures"). Consultation with a full range of experts, as well as cooperation with all those affected, is what the FDA does and is precisely what Congress desired. See 21 U.S.C. § 393(b)(4) (where determined appropriate by the Secretary, the Agency should attempt to carry out its mission in "consultation with experts in science, medicine, and public health, and in cooperation with consumers, users, manufacturers, importers, packers, distributors, and retailers of regulated products.").[2]

---

[2]     There is also a concern that when private plaintiffs seek to effect labeling changes without going through the administrative process, the interests of those plaintiffs will not take sufficient account of other drug users who are not similarly situated. To take one example, plaintiffs' claims are based on a recent study that they allege establishes that Cardura is less effective in preventing congestive heart failure than another available anti-hypertensive drug. Assuming arguendo that this is true, the complaint makes no claims with respect to the effectiveness of Cardura with respect to its other approved use, namely, treatment of benign prostatic hyperplasia. It cannot be expected that those individuals suffering from hyperplasia will have their interests fully considered in this litigation; nor can the Court be expected to evaluate the effect of the proposed warnings in terms of its likely effect on all Cardura users. See Premo Pharm. Lab., Inc., 629 F.2d at 803 ("The rule that the FDA rather than the courts must first determine the safety and effectiveness of a drug is but an extension of the general principle that the agency is usually better equipped by reasons of its expertise to make the determination than the court."). In fact, although plaintiffs seek to have their proposed labeling changes sent only to Cardura users taking the drug for hypertension, it is unclear how either party will be able to

10

Plaintiffs seek to avoid the FDA's exclusive role with respect to prescription drug labeling by drawing the Court's attention to cases permitting plaintiffs to bring state common law damages actions based on allegations of inadequate warnings. Although in certain circumstances a common law tort action may be brought alleging that a drug had insufficient warnings,[3] any request for injunctive relief in the form of changes to approved prescription drug labeling or labeling changes in the form of the warnings requested here is preempted. See National Women's Health Network. Inc. v. A.H. Robins Co., 545 F. Supp. 1177, 1181 (D. Ma. 1982) (FDCA preempted claim for injunctive relief seeking notification and warning campaign regarding the dangers of the intrauterine device known as the Dalkon Shield); see also Medtronic, Inc. v. Lohr, 518 U.S. 470, 491, 501 (1996) (plurality opinion) (observing that were a court hearing a common law cause of action to issue a decree establishing a substantive requirement on manufacturers of medical devices that conflicted with those required by the FDCA, the court-imposed requirement would be subject to conflict pre-emption analysis).

In addition, were the Court to grant plaintiffs' request that changes be made to Cardura's label and packaging, this would create a direct conflict by requiring a labeling change at odds with the specific product labeling that was approved by the FDA, even though changes to labels and packaging must be specifically approved by the FDA. See Guidance for Industry: Changes to an Approved NDA or ANDA at 2-3, 24-5, http://www.fda.gov/cder/guidance/index.html (setting out requirements for changes to product

_____

identify this sub-class of all Cardura users.

[3] The United States takes no position with respect to plaintiffs' claims seeking monetary relief.

11

labeling).[4] Thus, plaintiffs' request that the Cardura package be modified is also preempted.  See Grocery Mfrs. of Am., Inc. v. Gerace, 755 F. 2d 993 (2d Cir.) (state law labeling requirement for artificial cheese preempted because it conflicted with FDA labeling requirement), aff'd, 478 U.S. 801 (1985).

The FDA's ability to regulate prescription drug labeling effectively is best served by ensuring that decisions with respect to the dissemination of warnings such as those at issue before this Court are made by the agency equipped to evaluate the studies on which such warnings would be based.  Accordingly, plaintiffs' claims for injunctive relief ordering a change in Cardura's approved product labeling and seeking the dissemination of warning letters are preempted and should be dismissed.

II.   Should The Court Determine That Plaintiffs State A Claim For Injunctive Relief, The Court Should Recognize The FDA's Primary Jurisdiction With Respect To The Labeling Changes Requested In This Action

Were the Court to determine that plaintiffs state a claim with respect to injunctive relief in the form of labeling changes, the Court should nevertheless exercise its discretion and allow the FDA to determine what revised labeling, if any, should be required.

As the Second Circuit has explained,

[t]he doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight.  Specifically, courts apply primary jurisdiction to cases involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency.

---

[4]   The FDA published the Guidance for Industry after the regulation governing changes to an NDA or ANDA, 21 C.F.R. § 314.70, expired pursuant to the Food and Drug Administration Modernization Act of 1997, codified at 21 U.S.C. § 356a.

12

M00ZE17997

National Communications Ass'n., Inc. v. A.T. & T, 46 F.3d 220, 222-23 (2d Cir. 1995) (internal

quotation marks and citations omitted); see United States v. Western Pacific R.R. Co., 352 U.S.

59, 63-4 (1956) (holding that primary jurisdiction applies where "enforcement of the claim

requires the resolution of issues which, under a regulatory scheme, have been placed within the

special competence of an administrative body").  As discussed above, the decision whether (and

in what form) to modify labeling with respect to warnings calls on the precise "technical and

intricate questions of fact and policy" for which the FDA was established.  See supra at 8-10;

Henley, 77 F.3d at 621;  Public Citizen Health Research Group, 740 F.2d at 29; Premo Pharm.

Lab., Inc., 629 F.2d at 803; Great White Fleet, Ltd. v. Fed. Container Line, Inc., No. 92 Civ.

1255 (LMM), 1992 WL 367110, at *2-3 (S.D.N.Y. Nov. 23, 1992) (granting motion to stay

action and referring certain issues to agency because "agencies created by Congress for regulating

the subject matter should not be passed over") (quoting Far East Conference v. United States,

342 U.S. 570, 574 (1952)); Heller v. Coca-Cola Co., 230 A.D.2d 768, 770, 646 N.Y.S.2d 524,

526 (2d Dep't 1996) (staying class action that sought, inter alia, to require labeling change to diet

soda and referring decision to FDA on the ground that the Agency has  primary jurisdiction with

respect to issues of labeling).

        In "determining whether an agency has primary jurisdiction, four factors . . . have

generally been the focus of the analysis":

> (1) whether the question at issue is within the conventional
> experience of judges or whether it involves technical or policy
> considerations within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agency's
> discretion;
> (3) whether there exists a substantial danger of inconsistent rulings;
> and

M002E17998

(4) whether a prior application to the agency has been made.

National Communications Ass'n., 46 F.3d at 222-23.  In addition to these factors, "[t]he court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings."  Id. at 223.

As applied to this case, these factors weigh heavily in support of referring to the FDA the issue of whether or not the labeling changes sought by plaintiffs should be required. First, any decision with respect to plaintiffs' proposed warnings involves complex scientific analysis with respect to the ALLHAT study as well as policy considerations pertaining to whether, to what extent, and in what form, warnings should be issued.[5]  Second, the issue of what is acceptable labeling with respect to the safety and efficacy of a drug is not only particularly within the agency's discretion, it is an issue that Congress has vested entirely with the FDA.  See supra at 8-10.  Third, should the Court grant the relief requested by plaintiffs and the Agency determine that any of the statements were not supported by the evidence, and thus misleading, Cardura would be deemed misbranded.  Alternatively, were the FDA to determine that a warning was required, but were to issue such warning in a form different than that requested by plaintiffs, not only would Cardura be misbranded, but the public would be receiving competing warnings

---

[5]    In arguing that the FDA's expertise is not required in this case, plaintiffs place considerable emphasis on the Seventh Circuit's decision in Ryan v. Chemlawn Corp., 935 F.2d 129 (7th Cir. 1991), in which plaintiff filed a tort action for injuries allegedly caused by exposure to defendant's pesticide product.  Id. at 130.  In holding that there was no primary jurisdiction with the EPA, the court relied on the following facts: (1) "plaintiff ha[d] dropped her claim for injunctive relief," id. at 131; (2) "no regulation or registration provision of the EPA [was] involved," id. at 132; and (3) "issues raised in the complaint did not implicate any EPA action," id. at 132.  In contrast, plaintiffs here seek injunctive relief, regulations of the FDA are involved, and the issues raised in the complaint implicate FDA action with respect to prescription drug labeling.  In other words, for each reason that the EPA lacked primary jurisdiction in Ryan, the FDA has primary jurisdiction here.

14

M002E17999

from different branches of government.  The doctrine of resting primary jurisdiction with the

governmental agency created to address a specific issue is designed to prevent just this type of

problem.  See Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp., 84 F.3d 91, 97 (2d

Cir. 1996) ("The aim of the [primary jurisdiction] doctrine . . . is to ensure that courts and

agencies with concurrent jurisdiction over a matter do not work at cross-purposes.").  Only the

fourth factor – whether a  prior application has been made – adds nothing to the balance of

whether primary jurisdiction should rest with the FDA.  However, the fact that no application

was filed does not weigh in favor of denying the FDA primary jurisdiction; were it otherwise, it

would only encourage bypassing the administrative process established to hear petitions with

respect to drug labeling.

The considerations that must be balanced against these four factors – potential

costs resulting from complications and delay in the administrative proceedings – do not weigh

against referring the issue of labeling to the FDA.  Although plaintiffs argue that delay is a

"critical concern" because "users of Cardura are being exposed to serious risk of heart disease

and stroke as long as they remain uninformed," Plaintiffs Memorandum of Law at 18-9, this

allegation only begs the question at the heart of this case, namely, "Does the current scientific

evidence warrant labeling changes in the form of warnings with respect to Cardura?"  This

question is not answered by the rhetoric of the pleadings and briefs; rather it can be decided only

with appropriate scientific analysis and consideration of issues of public policy; this is the job of

the FDA.[6]  Absent careful review of all relevant data, there is considerable risk that statements

---

[6]     Indeed, all cases involving the safety and efficacy of drugs that are being used by
(or withheld from) the public raise serious issues of risk to the health of individuals. The very
purpose of the FDA is to assess these risks and act accordingly.  See Weinberger v. Hynson,

M002E18000

with respect to the efficacy of any drug will be incorrect and, correspondingly, there exists a risk of groundless alarm. <u>American Home Products Corp.</u>, 672 F. Supp. at 146 (noting that FDA must consider not only possible hazards to public health, but also the interest of the public in freedom from groundless alarm). Not only does unwarranted alarm create its own risks in any one case, but it has the potential to undermine the authority of the government with respect to drug warnings. To ensure that warnings are required only when appropriate and that when issued they are in an accurate form, it is imperative that such decisions be made by the governmental body best equipped to decide such issues.

That primary jurisdiction rests with the FDA with respect to whether a drug should be designated safe or effective was made clear by the Supreme Court nearly thirty years ago. <u>See</u> <u>Weinberger v. Hynson, Westcott & Dunning, Inc.</u>, 412 U.S. 609 (1973); <u>Weinberger v. Bentex Pharm., Inc.</u>, 412 U.S. 645 (1973); and <u>CIBA v. Weinberger</u>, 412 U.S. 640 (1973). In these cases, the Court addressed whether the district court or the FDA was the appropriate body to determine whether a particular drug was properly defined as a "new drug" under 21 U.S.C. § 321(p)(1). <u>Hynson, Westcott & Dunning, Inc.</u>, 412 U.S. at 613. Section 321(p)(1) defined a new drug as "a drug not generally recognized among experts as effective as well as safe for its intended use." <u>Id.</u> The Court held that the district court should "stay its hand" with respect to questions "within the peculiar expertise of the [FDA]." <u>Bentex Pharm., Inc.</u>, 412 U.S. at 654; <u>see</u> <u>CIBA</u>, 412 U.S. at 644 ("the district court might well stay its hand, awaiting an appropriate administrative determination of the threshold question" with respect to the safety and efficacy of

_____

<u>Westcott & Dunning, Inc.</u>, 412 U.S. 609, 624 (1973) ("FDA is indeed the administrative agency selected by Congress to administer the Act.").

a drug).  Such a result was the appropriate course in light of the fact that whether a drug is

generally recognized as safe and effective within the meaning of [the FDCA] necessarily

implicates complex chemical and pharmacological considerations.[7]  Bentex Pharm., Inc, 412 U.S

at 654.

In light of the complex task of reviewing studies designed to determine the safety

and efficacy of drugs, and of determining whether warnings are appropriate, and, if so, what form

those warnings should take, the Government respectfully submits that this Court should

recognize the FDA's primary jurisdiction to determine whether the labeling changes sought by

plaintiffs should be made and deny plaintiffs' request for injunctive relief.  Further, should

plaintiffs choose to continue their effort to require labeling changes and warnings with respect to

Cardura, they should be required to follow the proper administrative procedures.

III.    Plaintiffs May Not Assume For Themselves The FDA's Role With Respect To The
        Enforcement Of The FDCA

Plaintiffs' efforts to have this Court require modifications to labeling and to order

Pfizer to issue warnings is nothing more than an attempt to bring an enforcement action for

alleged misbranding.  Such an action, were it to exist here, may be maintained only by the FDA;

in other words, there is no private right of action to enforce the provisions of the FDCA.  See

PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113 (2d Cir. 1997) (rejecting plaintiff's attempt

---

[7]      Plaintiffs describe these cases as "easily distinguishable as they concerned
attempts to challenge the FDA's action in separate court actions."  Plaintiff's Memorandum of
Law at 19.  The Supreme Court, however, did not see this distinction as relevant: "Cases may
arise where there has been no formal administrative determination of the 'new drug' issue, it
being first tendered to a district court.  Even then, however, the district court might well stay its
hand, awaiting an appropriate administrative determination of the threshold question."  CIBA
Corp., 412 U.S. at 644.

M00ZE18002

to "privately enforce alleged violations of the FDCA" on the ground that the FDCA does not

provide a private right of action); <u>Cottrell, Ltd v. Biotrol Int'l, Inc.</u>, 191 F.3d at 1255 (holding

that claims requiring interpretation and application of FDCA must be addressed to FDA, the

agency Congress vested with enforcement power); <u>Sandoz Pharm. Corp. v. Richardson-Vicks,</u>

<u>Inc.</u>, 902 F. 2d 222, 230 (3rd Cir. 1990) (rejecting Lanham Act claim accusing drug manufacturer

of misleading drug labeling on ground that such "claim is no more than an allegation of a

misbranding violation under the FD&C Act, and that, although [plaintiff's] allegation may create

a cause of action for the FDA, [it] does not give rise to a cause of action for a private plaintiff

under the Lanham Act"). As Judge Connor explained, "the public interest is presumed to be

adequately represented by the FDA, whose control over [] drug labeling is . . . 'pervasive and

complete.' If the intercession of a private attorney general is needed to press the FDA to perform

that duty with respect to a particular product label, the quickest and most effective relief could be

obtained through a direct petition to the agency . . . ." <u>American Home Products Corp.</u> 672 F.

Supp. at 145 (citation omitted).

IV.   Having Never Petitioned The Agency To Act, Plaintiffs Have Failed To Exhaust Their
      Administrative Remedies

         Because plaintiffs do not have a private right of action that permits them to

enforce the FDCA, their claim for injunctive relief is properly understood as an effort to obtain

judicial review of the fact that the FDA has taken no enforcement action with respect to the

alleged misbranding of Cardura. However, "[g]iven the allocation of responsibility in the

statutory scheme, [plaintiffs'] request for initial judicial ruling on the misbranding issue amounts

to an attempt to bypass the administrative process." <u>Public Citizen Health Research Group</u>, 740

18

F.2d at 29.

> The Supreme Court has explained that administrative
>
> [e]xhaustion is required because it serves the twin purposes of
> protecting administrative agency authority and promoting judicial
> efficiency.  As to the first of these purposes, the exhaustion
> doctrine recognizes the notion, grounded in deference to Congress'
> delegation of authority to coordinate branches of Government, that
> agencies, not the courts, ought to have primary responsibility for
> the programs that Congress has charged them to administer.
> Exhaustion concerns apply with particular force when the action
> under review involves exercise of the agency's discretionary power
> or when the agency proceedings in question allow the agency to
> apply its special expertise.

McCarthy v. Madigan, 503 U.S. 140, 145 (1992)

Plaintiffs attempt to flout the administrative regime established by Congress by bringing to this Court what is properly a citizen petition addressed to the FDA.  See 21 C.F.R. § 10.30.  The Supreme Court has cautioned that "exhaustion principles apply with special force when `frequent and deliberate flouting of administrative processes' could weaken an agency's effectiveness by encouraging disregard of its procedures."  Id. (citations omitted).  Furthermore, it serves Congress's purpose and promotes judicial economy to provide the FDA an opportunity to develop a factual record, apply its expertise, and exercise its discretion.  See Public Citizen Health Research Group, 740 F.2d at 29.

Plaintiffs should not be permitted to undermine Congress's goal of placing with the FDA responsibility for regulating drug labeling.  Accordingly, plaintiffs' claim for injunctive relief should be dismissed.

M002E18004

CONCLUSION

For the foregoing reasons, the United States respectfully submits that this Court

should dismiss plaintiffs' claim to the extent it seeks modifications to the approved Cardura

labeling in the form of revised labels and warnings

Dated:        New York, New York
              November 13, 2000

                         MARY JO WHITE
                         United States Attorney for the
                         Southern District of New York
                         Attorney for the United States of America

                    By:

                         NEIL S. BINDER (NB-0959)
                         Assistant United States Attorney
                         100 Church Street, 19th Floor
                         New York, New York 10007
                         Tel. no. (212) 637-2675

M002E18005