## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  VIOXX | : | |
| | : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION L |
| | : | |
| This document relates to All Actions | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |
| | : | |

## PLAINTIFF'S STEERING COMMITTEE'S RESPONSE TO MERCK & CO., INC'S RESPONSE TO SPECIAL MASTER'S INITIAL RULINGS

The PSC hereby responds to Merck & Co., Inc.'s Response to the Initial Rulings of the Special Master Concerning Third-Party Documents.

### I.   ARGUMENT

In his Second Report and Recommendation, the Special Master rejected Merck's functional equivalent argument and determined that Merck waived its attorney-client privilege by voluntarily sharing privileged materials with third-party consultants.  The Special Master's Initial Ruling on Merck Third Party documents (the "Initial Rulings"), is imbued with this reasoning: "Assuming that any dissemination to the third party consultants did not destroy the confidentiality of the communications and the privileges premised on the existence of that confidentiality, Merck had not established either that distribution within each company was appropriate, or that there had been no inappropriate secondary distribution by employees of those companies." *See* October 9, 2007 Initial Rulings at 1.  Based upon the express reasoning of the Special Master, the PSC submits that the initial rulings should remain intact.

1

A. **The Affidavits Submitted by Merck and the Confidentiality Agreements in the Consulting Contracts Are Insufficient to <u>Establish that Privileged Materials Remained Confidential.</u>**

Merck's response to the Initial Rulings overlooks its burden of establishing that the third-party consultants properly received and maintained the confidentiality of the privileged materials identified on the DDB and Ogilvy privilege logs. That is, Merck must establish that each recipient of a privileged communication, whether at DDB or Ogilvy, was justified in receiving the communication. Merck must further establish that there were no improper secondary distributions of these privileged communications once in the possession of the third-party consultants.

Merck's overarching argument is that **confidentiality** provisions in the consulting contracts and the affidavits it submitted in support of its privilege claims are sufficient to establish that each individual recipient at the consulting firms was entitled to receive **privileged** communications. Merck further argues that the confidentiality agreements demonstrate that there were no improper secondary distributions of privileged materials once they were in the possession of the consultants.

The affidavits submitted by Merck do not support the application of the privilege since they fail to attest to how specific items on the privilege logs were guarded against improper secondary distribution, and fail to adequately address or justify the decision to include particular recipients on privileged communications. The confidentiality provisions in the consulting contracts are similarly flawed since they clearly are not intended to apply to attorney-client communications. Rather than guarding attorney-client communications, these confidentiality provisions are designed to guard "business information relating to trade secrets and problems with insider trading ...". *See* Initial Ruling at 2.

Merck cleaves to the notion that its consultants' policies to maintain client confidences somehow elevate each individual employee of DDB and Ogilvy into the position of being the client itself, and thus capable of participating in attorney-client communications. But Merck's argument has no bounds. It contends that by simply agreeing to maintain confidences, any of the consultants's employees should be entitled to receive privileged communications. This argument is not well founded. *See* Initial Ruling at 1 ("Merck ... [has] not established ... that distribution within each company was appropriate ...").

In light of the above deficiencies, the Special Master properly observed that Merck's affidavits and the confidentiality provisions in the consulting contracts fail to fill the evidentiary void for purposes of establishing that confidentiality of privileged materials was preserved.

### B.    <u>Merck's Specific Document Arguments are Flawed</u>

Without access to Merck's documents, the PSC can only offer these general observations about Merck's contentions of privilege regarding specific documents.

### 1.    <u>Ogilvy Documents</u>

In several of its challenges to the Ogilvy rulings, Merck completely ignores its obligation to establish that each recipient at Ogilvy was justified in receiving the privileged communication. For instance, Merck admittedly provided a copy of document OPR067844-54, an e-mail, with draft Q&A attachment, authored by Merck employee Christine Fanelle and addressed to Merck attorney Suzanne Gregory, to the entire Ogilvy Vioxx Account Team. *See* Merck's Response to Initial Ruling at 12. Even assuming Ogilvy is the functional equivalent of a Merck employee, which the PSC denies, Merck has not offered a satisfactory explanation as to why it was necessary to share this particular document with the entire Vioxx Account Team. The stated purpose for providing the

document to Ogilvy was because "Ogilvy was tasked with making any necessary changes to the draft questions, printing the documents, and bringing them to the ACR meetings for use by the Merck public relations team." *See* Merck's Response to Initial Rulings at 13.  Neither Merck, nor Ogilvy offers any reason why these seemingly simple tasks required the entire Vioxx team receive confidential communications.  Even if these tasks required a team effort, there is no apparent reason why it was necessary to share the privileged communications on anything other than a need-to-know basis with Ogilvy's team leader.[1]

Merck has also challenged the Special Master's rulings in instances where it appears the privilege would be inapplicable.  For instance, Merck's assertion of privilege as to document OPR043489-94, "4Q 1999 Science Opportunities for Vioxx", is difficult to defend since the underlying communication was neither authored by nor received by any Merck attorney.  The same is true with document OPR067836.  With regard to document OPR043489-94, it also appears to be of so old a vintage that it could not possibly have been prepared in anticipation of any litigation as Vioxx had only been on the market since May 20, 1999, and the document is dated September 7, 1999.

Merck also provides a vague description of document OPR043489-94 that makes it impossible for the PSC to evaluate whether legal advice, as opposed to unprotected business advice,

---

[1] Another example where a privileged document appears to have been too widely distributed within Ogilvy is document OPR067832, a memorandum from Merck employee Kyra Lindemann to Merck attorney Joanne Lahner, which purportedly requests legal review and advice.  Although this document is listed on the Merck's Ogilvy privilege log, Merck fails to identify any of the Ogilvy employees that were recipients of the document, which begs the question: how did the document end up in Ogilvy's possession?  Merck's failure to answer this question leaves open the possibility that the distribution was to Ogilvy's entire Vioxx team.  The same is true with documents OPR067836 and OPR67838-43, which similarly lack the identification of recipients at Ogilvy.

was included. *See* Merck's Response to Initial Rulings at 8 (Merck claims this document includes "confidential legal advice from Merck's attorneys ..."). This argument also applies to documents OPR067836, OPR067838-43 and OPR067835. For each of these documents Merck's explanations for the challenge are vague and fail to identify any applicable regulations and/or specific areas of inquiry or comment.

### 2.    DDB Documents

Merck again ignores the Special Master's concern that the distribution of privilege materials within DDB was too extensive. By way of example, Merck challenges the Special Master's determination as to document DDBP0011458-59, an e-mail from Peter Zenobi of DDB to Debra Black of Merck, which purportedly comments upon legal advice provided by Merck's in-house counsel. Merck glazes over the fact that this document was copied to five other employees of DDB. Even assuming the application of the functional equivalent doctrine to DDB, which the PSC denies, it is unclear whether distribution of this "privileged communication" to so many DDB employees was justified.

More importantly, the description provided makes the privilege suspect. No lawyers, as either authors or recipients of the e-mail, are involved in this particular communication. The document purports to provide a reaction to legal advice as opposed to revealing attorney-client communications and/or legal advice, and the description of the legal advice commented upon is ambiguous. Given these additional deficiencies, the Special Master properly rejected the assertion of the privilege.

## II.   CONCLUSION

For the reasons set forth above, each of Merck's challenges to the Initial Rulings should be rejected.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: October 26, 2007

By: /s/ Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana  70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA  71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL  32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC  20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX  77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA  70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

7

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 26th day of October, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH:    (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhkc.com