UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: | * | |
| ALL CASES | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * *

**MERCK'S MOTION AND INCORPORATED
MEMORANDUMFOR ENTRY OF PRETRIAL ORDER**

Defendant Merck & Co., Inc. ("Merck") respectfully moves the Court for entry of a pretrial order establishing a protocol for any claims filed in or transferred to this MDL proceeding after November 9, 2007 (the date of the next status conference in this proceeding) or whatever other reasonable date the Court determines.

**A.    Discovery Obligations**

As the Court is well aware, this MDL proceeding began nearly three years ago and includes thousands of Vioxx-related personal injury claims filed by plaintiffs from around the country.  Throughout the MDL proceedings, the Court has taken steps to foster fact-gathering activity in these cases, particularly by requiring plaintiffs to complete Plaintiff Profile Forms and provide medical record authorizations.  However, at this point in the litigation – as this MDL proceeding is moving toward its final phases – it is essential that the Court be even more pro-active in pressing for completion of case-specific discovery actions pending in the MDL and for readying all cases for trial in their respective districts of origin.  In order to do so, it is imperative that the Court establish strict procedures to weed unsustainable claims out of the MDL process.  It is thus appropriate to require any persons filing new claims at this late date to provide at the

outset of their actions more factual information in support of those claims than plaintiffs who filed earlier. Specifically, the Court should require late-filing plaintiffs to:

- Submit a Fed. R. Civ. P. 26(a)(2) report from a medical expert who attests that the individual suffered an injury and that Vioxx caused that injury;
- Submit complete pharmacy records for the period 1995-present;
- Submit Amended and Supplemental Plaintiff Profile Forms;
- Submit answers to supplemental interrogatories;
- Submit complete healthcare records for the period 1995-present;
- Submit affidavits that medical and pharmacy records are complete;
- Submit a death certificate and autopsy report (if available) if a death is claimed; and
- Notify all physicians, pharmacies, or medical facilities that may have relevant records regarding the individual's claim that such records must be preserved.

At this late stage in the litigation, it is essential that the Court begin narrowing the pending claims down to those actions that can legitimately proceed to trial. In short, it is time to separate the wheat from the chaff. However, it is impossible to perform such sorting based on the "bare-bones" allegations set forth in many of the complaints filed in the MDL proceeding. For example, in several recently filed complaints, plaintiffs fail to identify the date of the injury they allege (*see Banks et. al. v. Merck & Co., Inc*, cv07-382-PFM, Complaint ¶ 5 (attached as Ex. 1); *Barnes et. al. v. Merck & Co., Inc*, cv07-0201-GT, Complaint ¶ 5 (attached as Ex. 2)), or in some cases, the precise personal injury allegedly suffered. (*See Boyd et. al. v. Merck & Co., Inc*, cv07-164-A(I), Complaint ¶ 5 (alleging that plaintiffs suffered "heart attack and ***other heart related issues***") (emphasis added) (attached as Ex. 3).) Without some indication from these late-

filed MDL plaintiffs that their claims have at least an arguable basis in fact, and that plaintiffs can prove those facts by producing the discovery set forth above, there is simply no reason that their claims should be added to the already-substantial number of claims pending in this proceeding.  Allowing wholly unmeritorious claims to be injected into the MDL process at this late date will simply slow down the resolution of this proceeding and impede the Court from fulfilling its ultimate goal of remanding all Vioxx cases to their appropriate jurisdiction for trial. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 33-34 (1998) (noting that the role of the MDL court is to preside over "pretrial" matters and remand cases to the appropriate transferor court as soon as "pretrial proceedings have run their course").

The fact-gathering envisioned by this motion is wholly appropriate and certainly within this Court's basic case management authority.  As the Fifth Circuit noted in affirming dismissal of cases for failure to comply with similar requirements, such orders merely require the sharing of "information which plaintiffs should have obtained before filing their claims pursuant to Fed. R. Civ. P. 11(b)(3).  Each plaintiff should have had at least some information regarding the nature of his injuries . . . and the basis for believing that the named defendant [was] responsible for his injuries."  *Acuna v. Brown & Root,* 200 F.3d 335, 340 (5th Cir. 2000).

More recently, the federal judge overseeing the welding fume MDL proceeding entered a "Case Administration Order" requiring each plaintiff to submit a "Notice of Diagnosis" confirming that a qualified physician had diagnosed him with an injury attributable to exposure to welding fumes.  *See* Case Administration Order at 4-6, Mar. 31, 2006, *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-cv-17000 (N.D. Ohio) (attached as Ex. 4).  The Court instituted this requirement in order to "ensure that every plaintiff has a valid basis to assert a claim in this MDL." *Id.* at 5.  Other MDL courts have established similar requirements for case-specific

3

discovery to take place prior to cases being remanded for trial. *See, e.g.,* Pretrial Order No. 149, *In re Baycol Products Liability Litigation*, MDL No. 1431 (attached as Ex. 5) (requiring additional discovery including expert reports "[i]n order to promote the fair and efficient administration of this litigation, to comply with its continuing obligations as an MDL court, and to ensure that cases are trial-ready prior to remand").

Here too, the assembly of the information contemplated by this motion is critical to the resolution of any claims alleging injury attributable to Vioxx:

- Obtaining a full set of pharmacy records is critical to evaluating the extent (if any) to which the claimant used the product.

- Securing the information sought by the Plaintiffs' Profile Form and the interrogatories is critical to revealing the basic facts about the claim being asserted.

- This Court has previously determined that for each claimant, all health records from 1995 to present should be made available to Merck, and because experience in this litigation indicates that those records often provide early insights about the viability of a claim, the claimant should be obliged to gather and make available those records at the outset. Further, it is appropriate that the claimant provide affidavits attesting to the completeness of the records provided.

- Since Vioxx was withdrawn from the market more than three years ago, the medical and other record relating to the claims are becoming more and more dated. Accordingly, and because all of these health records are so important, it is reasonable to require a plaintiff immediately upon filing a claim to notify all physicians, pharmacies, or medical facilities that may have relevant records regarding the individual's claim that such records must be preserved.

- Where death is alleged, it is certainly reasonable to expect the claimants to provide a death certificate and an autopsy report, both of which are likely to contain information critical to assessing causation issues.

The claims of any late-filing plaintiff who is unable to gather and provide the information outlined above should be dismissed. In addition, any plaintiff or attorney who submits false or misleading information in an attempt to satisfy these discovery requirements should be subject to sanctions and dismissal of his or her case with prejudice.

**B.      Attorneys' Fees**

It is also important that the Court review the attorneys' fees that may be received by plaintiffs' counsel who are adding claims to this litigation at this late date, given that they can reasonably expect to expend only nominal time and resources prosecuting those new cases. In the nearly three years of this proceeding, courts around the country have staged 15 trials, with six of those trials taking place before this Court. Plaintiffs' counsel who have been party to this litigation since the inception of the MDL proceeding have expended a substantial amount of time and energy prosecuting those cases. In addition, the lawyers who have been involved with this proceeding since its early stages have taken hundreds of depositions and processed millions of pages of discovery relating to MDL plaintiffs.

By contrast, other counsel who are just now developing and filing claims are in a very different posture. They come to this case at a time when most of the heavy lifting has been completed. Indeed, the MDL PSC reportedly has completed work on a "trial package" that will allow counsel to take their clients' claims before a jury with relatively little effort. These attorneys should not be allowed to free-ride on the extensive and diligent efforts of other attorneys who have been involved with this litigation from the beginning. As a general matter, from a client perspective, it would be unconscionable for attorneys who are asserting claims at

this late date in this litigation to charge their traditional 33% - 40% fees for providing only minimal legal services.  *See In re Zyprexa Prods. Liab. Litig.,* 233 F.R.D. 122 (E.D.N.Y. 2006) (in mass tort settlement, court ordered modification of contractual contingency fee arrangements based on the court's fiduciary role and "general equitable power"); *see also In re Copley Pharmaceutical, Inc.*, MDL No. 1013, 1 F. Supp.2d 1402, 1417 (D. Wyo. 1998) (ordering a larger portion of attorneys' fees provided in mass tort settlement to go to class counsel, as opposed to individual attorneys, because "class counsel shouldered the vast majority of the burden in this case during discovery, at trial, and in the settlement negotiations and administration").

    For these reasons, the Court should give notice that it intends to inquire about and review the percentage of attorneys' fees that are retained by counsel from any recoveries secured as to claims filed in this proceeding going forward.

**CONCLUSION**

For the foregoing reasons, the Court should order expanded fact discovery in all cases filed in or transferred to the MDL after November 9, 2007 or whatever other reasonable date that the Court wishes to establish.  Furthermore, the Court should give notice of its intention to review and potentially limit contingency-fee recoveries by plaintiffs' attorneys filing cases after that date.  Defendant is preparing a proposed order setting forth such requirements.

                                                                   Respectfully submitted,

                                            */s/ Dorothy H. Wimberly*
                                            Phillip A. Wittmann, 13625
                                            Dorothy H. Wimberly, 18509
                                            STONE PIGMAN WALTHER
                                            WITTMANN L.L.C.
                                            546 Carondelet Street
                                            New Orleans, LA 70130

                                            Defendants' Liaison Counsel

                                            And

                                            John H. Beisner
                                            Jessica Davidson Miller
                                            O'MELVENY & MYERS LLP
                                            1625 Eye Street, NW
                                            Washington, DC 20006

                                            Douglas R. Marvin
                                            WILLIAMS & CONNOLLY LLP
                                            725 Twelfth St., N.W.
                                            Washington, DC 20005

                                            Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion and Incorporated Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 29th day of October, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:    504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

897849v.1