UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: | * | |
| ALL CASES | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

### MERCK & CO., INC.'S RESPONSE TO PROPOSED STROKE TRIAL PLAN

Defendant Merck & Co., Inc. ("Merck") respectfully urges the Court to consider alternatives to the proposed stroke trial plan discussed at the last status conference in this proceeding and to enter an order establishing a formal trial selection process for stroke cases in this litigation.

To date, there have been no trials of alleged stroke cases in this Court – all of the trials that have taken place thus far have involved alleged myocardial infarctions (heart attacks).  The Court recently announced its intent to schedule five trials of stroke cases in 2008, with plaintiffs selecting all of those cases.  Merck is unaware of any precedent for an MDL trial selection process in which one side chooses all of the cases for trial.  After all, if one side picks all of the cases that are to be tried, those cases will not be representative of the claimant pool.  The selections are likely to be outlier cases that the deciding side perceives to be its strongest claims.

There are two ways to avoid the concerns inherent in one side selecting all the trial cases.  First, the MANUAL FOR COMPLEX LITIGATION and other authorities suggest that the most appropriate way to select trial cases is to do so randomly.  Random selection is most likely to result in selection of representative cases as opposed to each party's favorite cases for trial.

897848v.1

Alternatively, a number of MDL courts have allowed parties to alternate choosing cases so that both sides have a role in trial selection. Either approach would be far more appropriate than allowing plaintiffs to select all five stroke trial candidates.

## ARGUMENT

Merck is not aware of any MDL court that has adopted a "plaintiffs choose all" approach to bellwether trials, and this Court should not do so here. After all, allowing plaintiffs to try what they perceive as their best stroke cases is directly contrary to the purpose of bellwether trials – *i.e.*, to "produce a sufficient number of ***representative*** verdicts" to "enable the parties and the Court to determine the nature and strength of the claims, whether they can fairly be developed and litigated on a group basis and what range of values the cases may have if resolution is attempted on a group basis." MANUAL FOR COMPLEX LITIGATION, 4TH § 22.315 (2004) (emphasis added).

While Merck would be amenable to a program in which the plaintiffs and defendants alternate trial selection picks, a growing number of courts and commentators have concluded that the fairest and most logical method of choosing representative cases for trial is random selection. *See, e.g., In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("A bellwether trial designed to achieve its value ascertainment function . . . has as a core element representativeness – that is, the sample must be a randomly selected one."); *In re Shell Oil Refinery*, 136 F.R.D. 588, 597 (E.D. La. 1991) (random selection "eliminates the bias that would occur if the list [of trial candidates] were composed by each party independently selecting a certain number of names").

The MANUAL FOR COMPLEX LITIGATION also endorses random selection as a means of identifying representative cases. According to the MANUAL:

2

> [i]f individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases. Some judges permit the plaintiffs and defendants to choose which cases to try initially, but this information may skew the information that is produced. **To obtain the most representative cases from the available pool, a judge should direct the parties to select test cases randomly** or limit the selection to cases that the parties agree are typical of the mix of cases.

MCL 4th § 22.315 (emphasis added).  *See also* James M. Wood, *The Judicial Coordination of Drug and Device Litigation: A Review and Critique*, 54 FOOD DRUG L.J. 325, 347 (1999) ("[f]or a bellwether case to be fair, the sample must be a randomly selected one of sufficient size so as to achieve statistical significance to the desired level of confidence in the result obtained").

Several large, recent multi-district proceedings have also embraced random selection methods.  For example:

- *In re Baycol Products Litigation*, MDL No. 1431 – The District of Minnesota's selection program included all cases filed in the District of Minnesota involving Minnesota residents "plus a minimum of 200 additional cases selected at random from all MDL filed cases." *See* Pretrial Order No. 89 (attached as Ex. 1).

- *In re Norplant Contraceptive Products Liability Litigation* – The court engaged in "random selection of the twenty-five bellwether plaintiffs." *See* 1996 WL 571536, at *1 (E.D. Tex. Aug 13, 1996).

- *In re Prempro Products Liability Litigation*, MDL No. 1507 – The court narrowed the pool of potential trial cases to plaintiffs meeting a certain set of criteria and "randomly dr[ew] from a hat (literally) fifteen cases." *See* Order re: Bellwether Trial Selection, June 20, 2005 (attached as Ex. 2).

As these courts have recognized, random selection eliminates gamesmanship and would provide the parties and the Court with a more accurate sense of the merit (if any) of the stroke

3

cases in the broader pool.

## CONCLUSION

For the foregoing reasons, Merck requests that the Court enter an order establishing that all future MDL trials – including cases alleging strokes – will be selected randomly or, at the very least, that the parties will alternate in selecting candidates for any MDL trials going forward.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

4

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Response to Stroke Plan has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 29th day of October, 2007.

    */s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

897848v.1