# EXHIBIT 33

897029v.1

982.1(1)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Alfred S. Wright                                          48893
1485 Park Avenue, Suite 200

San Jose                    CA   95126
TELEPHONE NO: 408-288-5861   FAX NO. *(Optional):* 275-8872
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Viet Tran

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North 1st Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose        CA   95113
BRANCH NAME:

PLAINTIFF: Viet Tran

DEFENDANT: Merck & Co., a corporation

[X] DOES 1 TO      10

COMPLAINT—Personal Injury, Property Damage, Wrongful Death
[ ] AMENDED *(Number):*
Type *(check all that apply):*
[ ] MOTOR VEHICLE     [X] OTHER *(specify):*
   [ ] Property Damage    [ ] Wrongful Death
   [X] Personal Injury    [ ] Other Damages *(specify):*

Jurisdiction *(check all that apply):*
[ ] ACTION IS A LIMITED CIVIL CASE
   Amount demanded  [ ] does not exceed $10,000
                    [ ] exceeds $10,000, but does not exceed $25,000
[✓] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint
   [ ] from limited to unlimited
   [ ] from unlimited to limited

FOR COURT USE ONLY

UCS

CK

FILED Santa Clara Co
10/04/06   1:02PM
Kiri Torre
Chief Executive Offic
By: cfujihara dtscler
R#200600098774
CK          $320.00
TL          $320.00
Case: 1-06-CV-072269

CASE NUMBER:

106CV072269

1. **Plaintiff** *(name or names):* Viet Tran

   alleges causes of action against **defendant** *(name or names):* Merck & Co.

2. This pleading, including attachments and exhibits, consists of the following number of pages:
3. Each plaintiff named above is a competent adult
   a. [ ] **except** plaintiff *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor  [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*
   b. [ ] **except** plaintiff *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor  [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*

   [ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Form Approved for Optional Use
Judicial Council of California
982.1(1) [Rev. January 1, 2006]

COMPLAINT—Personal Injury, Property
Damage, Wrongful Death

Page 1 of 3

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

CEB

M007C95698T

982.1(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Trah v. Merck | |

4. ☐ **Plaintiff** *(name):*

  is doing business under the fictitious name *(specify):*

  and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person
  a. ☒ **except** defendant *(name):* Merck & Co.
    (1) ☐ a business organization, form unknown
    (2) ☒ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  c. ☐ **except** defendant *(name):*
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  b. ☐ **except** defendant *(name):*
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  d. ☐ **except** defendant *(name):*
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
  a. ☒ Doe defendants *(specify Doe numbers):* _____1 to 5_____ were the agents or employees of other
    named defendants and acted within the scope of that agency or employment.
  b. ☒ Doe defendants *(specify Doe numbers):* _____6 to 10_____ are persons whose capacities are unknown to
    plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because
  a. ☐ at least one defendant now resides in its jurisdictional area.
  b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
  c. ☒ injury to person or damage to personal property occurred in its jurisdictional area.
  d. ☐ other *(specify):*

9. ☐ Plaintiff is required to comply with a claims statute, **and**
  a. ☐ has complied with applicable claims statutes, **or**
  b. ☐ is excused from complying because *(specify):*

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

☢CEB

M007C85688

982.1(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Tran v. Merck | |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
   a. ☐ Motor Vehicle
   b. ☒ General Negligence
   c. ☐ Intentional Tort
   d. ☒ Products Liability
   e. ☐ Premises Liability
   f. ☐ Other *(specify):*

11. Plaintiff has suffered
   a. ☒ wage loss
   b. ☐ loss of use of property
   c. ☒ hospital and medical expenses
   d. ☒ general damage
   e. ☐ property damage
   f. ☒ loss of earning capacity
   g. ☐ other damage *(specify):*

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☒ compensatory damages
      (2) ☐ punitive damages
      The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
      (1) ☒ according to proof
      (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*

Date: 10-3-2006

Alfred S.Wright
_____
(TYPE OR PRINT NAME)

▶ *Alfred S Wright* (signature)
_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

CEB

M007C95699

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Tran v. Merck | |

_____First_____      **CAUSE OF ACTION—General Negligence**     Page ____4____
(number)

ATTACHMENT TO [X] Complaint [ ] Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):* Viet Tran

    alleges that defendant *(name):* Merck & Co.

        [1] Does ____1____ to ____5____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant
negligently caused the damage to plaintiff
on *(date):* May,2003
at *(place):* San Jose,CA

*(description of reasons for liability):*
Defendant is the manufacturer of the drug Vioxx which was defective and
taken by plaintiff whose doctor prescribed it for pain.Plaintiff then
suffered heart problems caused by Vioxx.The plaintiff was not aware of
what caused the heart problem until November 2004.

Form Approved for Optional Use
Judicial Council of California
Effective January 1, 1982
Rule 982.1(3)

**CAUSE OF ACTION—General Negligence**

CEB

CCP 425.12

M007C95690

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Tran v. Merck | |

<u>    Second    </u>      **CAUSE OF ACTION—Products Liability**     Page ___5___
(number)

ATTACHMENT TO  [X] Complaint  [ ] Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

Plaintiff *(name)*: Viet Tran

Prod.L-1. On or about *(date):* July, 2003      plaintiff was injured by the following product:
     Vioxx

Prod.L-2.  Each of the defendants knew the product would be purchased and used without inspection for defects. The product was defective when it left the control of each defendant. The product at the time of injury was being
     [X] used in the manner intended by the defendants
     [X] used in a manner that was reasonably foreseeable by defendants as involving a substantial danger not readily apparent. Adequate warnings of the danger were not given.

Prod.L-3.  Plaintiff was a
     [X] purchaser of the product.              [X] user of the product.
     [ ] bystander to the use of the product.     [ ] other *(specify):*

**PLAINTIFF'S INJURY WAS THE LEGAL (PROXIMATE) RESULT OF THE FOLLOWING:**

Prod.L-4.  [X] **Count One—Strict liability** of the following defendants who
     a. [X] manufactured or assembled the product *(names):* Merck & Co.

             [X] Does ___1___ to ___5___
     b. [ ] designed and manufactured component parts supplied to the manufacturer *(names):*

             [ ] Does _____ to _____
     c. [ ] sold the product to the public *(names):*

             [ ] Does _____ to _____

Prod.L-5.  [X] **Count Two—Negligence** of the following defendants who owed a duty to plaintiff *(names):* Merck & Co.

             [X] Does ___3___ to ___4___

Prod.L-6.  [X] **Count Three—Breach of warranty** by the following defendants *(names):* Merck & Co.

             [X] Does ___5___ to ___6___
     a. [X] who breached an implied warranty
     b. [ ] who breached an express warranty which was
         [ ] written  [ ] oral

Prod.L-7.  [ ] The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are
     [ ] listed in Attachment—Prod.L-7  [ ] as follows:

Form Approved for Optional Use
Judicial Council of California
Effective January 1, 1982
Rule 982.1(6)

**CAUSE OF ACTION—Products Liability**

©EB

CCP 425.12

M007C95691

# EXHIBIT  34

| | |
|---|---|
| IN RE: VIOXX® PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1657 |
| THIS RELATES TO: | Plaintiff: __Viet Tran__ |
| Civil Action No: _C06 7040 JW_ | (name) |

## PLAINTIFF PROFILE FORM

Other than in Sections I, those questions using the term "You" should refer to the person who used VIOXX®. Please attach as many sheets of paper as necessary to fully answer these questions.

### I.CASE INFORMATION

A.  Name of person completing this form:  __AS Wright_____

B.  If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

1.  Social Security Number:_____

2.  Maiden Or Other Names Used or By Which You Have Been Known:_____

3.  Address:_____

4.  State which individual or estate you are representing, and in what capacity you are representing the individual or estate? _____

5.  If you were appointed as a representative by a court, state the:

   Court: _____   Date of Appointment: _____

6.  What is your relationship to deceased or represented person or person claimed to be injured?_____

7.  If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died: _____

M0DD389699

C.  Claim Information

    1.  Are you claiming that you have or may develop bodily injury as a result of taking VIOXX®? Yes__X__  No_____    *If "yes,"*

        a.  What is your understanding of the bodily injury you claim resulted from your use of VIOXX®?   Heart condition

        b.  When do you claim this injury occurred?   2002-2004

        c.  Who diagnosed the condition?   Ngai Nguyen

        d.  Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes _____  No _____    *If "yes,"* when and who diagnosed the condition at that time? _____

        e.  Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _____  No _____    *If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX®; and the date of recovery, if any. _____

D.  Are you claiming mental and/or emotional damages as a consequence of VIOXX®? Yes _____  No __X__

*If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:

        a.  Name and address of each person who treated you: _____

        b.  To your understanding, condition for which treated: _____

        c.  When treated: _____

        d.  Medications prescribed or recommended by provider: _____

## II. PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX®

A.  Name:   Viet Tran

B.  Maiden or other names used or by which you have been known: _____

C.  Social Security Number:   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

D.  Address:   1254 Summer Blossom Court, San Jose CA  95122

M00D388700

E.  Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one:

| Address | Dates of Residence | |
|---|---|---|
| 1621 Whitton Court  San Jose | 7-03 | 7-06 |
| 1254 Summer Blossom Court  San Jose | 7-01 | 7-06 |
| 2721 Whiting Hill  San Jose | 1999 | 2001 |

F.  Driver's License Number and State Issuing License: __A 9182525__

G.  Date of Place and Birth: __Saigon, Vietnam    5-12-1968__

H.  Sex: Male _X_   Female ____

I.  Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:

| Institution | Dates Attended | Course of Study | Diplomas or Degrees |
|---|---|---|---|
| San Jose City | 1992-1995 | Machine Tech | AA |

J.  Employment Information.

1.  Current employer (if not currently employed, last employer):

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| R Vision | 2365A Paragon  San Jose | 2006-2007 | Machinist |

2.  List the following for each employer you have had in the last ten (10) years:

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| KNW Precision | Milpitas, CA | 2003-2006 | Machinist |
| ADEM | Santa Clara | 2001-2003 | Machinist |

3.  Are you making a wage loss claim for either your present or previous employment? Yes ____ No _X_

  *If "yes,"* state your annual income at the time of the injury alleged in Section I(C):_____

K.  Military Service Information:  Have you ever served in the military, including the military reserve or national guard? Yes ____ No _X_

  *If "yes,"* were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition? Yes ____ No ____

L. Insurance / Claim Information:

   1. Have you ever filed a worker's compensation and/or social security disability (SSI or SSD) claim?   Yes __X__   No ____   *If "yes,"* to the best of your knowledge please state:

      a. Year claim was filed: __2001_____

      b. Nature of disability: __Right Knee_____

      c. Approximate period of disability: __Over 2 years_____

   2. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)?   Yes ____   No _X_   *If "yes,"* set forth when and the reason. _____
      _____
      _____

   3. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury?   Yes ____   No _X_   *If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted._____
      _____
      _____

M. As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty?   Yes ____   No _X_   *If "yes,"* set forth where, when and the felony and/or crime. _____

## III. FAMILY INFORMATION

A. List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death): _____

B. Has your spouse filed a loss of consortium claim in this action?   Yes ____   No _X_

C.  To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke? Yes _____ No _X_ Don't Know _____ *If "yes,"* identify each such person below and provide the information requested.

> Name: _____
>
> Current Age (or Age at Death): _____
>
> Type of Problem: _____
>
> If Applicable, Cause of Death: _____

D.  If applicable, for each of your children, list his/her name, age and address: _Andreas age  2_

E.  If you are claiming the wrongful death of a family member, list any and all heirs of the decedent. _____

## IV. VIOXX® PRESCRIPTION INFORMATION

A.  Who prescribed VIOXX® for you? __Parvez Fatteh__

B.  On which dates did you begin to take, and stop taking, VIOXX®? _2001-2004_

C.  Did you take VIOXX® continuously during that period? Yes _X_ No _____ Don't Recall _____

D.  To your understanding, for what condition were you prescribed VIOXX®? _Knee Pain_

E.  Did you renew your prescription for VIOXX®? Yes _X_ No _____ Don't Recall _____

F.  If you received any samples of VIOXX®, state who provided them, what dosage, how much and when they were provided: _____

G.  Which form of VIOXX® did you take (check all that apply)?
> _____ 12.5 mg Tablet (round, cream, MRK 74)
> _____ 12.5 mg Oral Suspension
> _X_ 25 mg Tablet (round, yellow, MRK 110)
> _____ 25 mg Oral Suspension
> _____ 50 mg Tablet (round, orange, MRK 114)

M00D388703

H.  How many times per day did you take VIOXX®?
_____Twice_____

I.  Did you request that any doctor or clinic provide you with VIOXX® or a prescription for VIOXX®?  Yes _____  No _____  Don't Recall __X__

J.  Instructions or Warnings:

1.  Did you receive any written or oral information about VIOXX® before you took it?  Yes __  No __X__  Don't Recall _____

2.  Did you receive any written or oral information about VIOXX® while you took it?  Yes ____  No _____  Don't Recall __X__

3.  *If "yes,"*

a.  When did you receive that information?_____

b.  From whom did you receive it?_____

c.  What information did you receive? ____
   _____

K.  What over-the-counter pain relief medications, if any, were you taking at the same time you were taking VIOXX®?  _None_____
_____

## V. <u>MEDICAL BACKGROUND</u>

A.  Height:  __5'7"__

B.  Current Weight: _135__
Weight at the time of the injury, illness, or disability described in Section I(C): __130__

C.  Smoking/Tobacco Use History: *Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.*
   ____  Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
   _X_  Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
      a.  Date on which smoking/tobacco use ceased:  _2003_____
      b.  Amount smoked or used: on average _10____ per day for _11__ years.
   ____  Current smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff.
      a.  Amount smoked or used: on average _____ per day for _____ years.
   ____  Smoked different amounts at different times.

M00D388704

D.  Drinking History.  Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)?  Yes  X  No _____   *If "yes," fill in the appropriate blank* with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXX® up to the time that you sustained the injuries alleged in the complaint:

_____ drinks per week,

___1___ drinks per month,

_____ drinks per year, *or*

Other (describe): _____

E.  Illicit Drugs.  Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX®-related injury?"  Yes _____  No  X   Don't Recall _____

*If "yes"*, identify each substance and state when you first and last used it. _____
_____

F.  Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1.  Cardiovascular surgeries, including, but not limited to, the following, and specify for what condition the surgery was performed:  open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:

| Surgery | Condition | When | Treating Physician | Hospital |
|---------|-----------|------|--------------------|----------|
|         |           |      |                    |          |
|         |           |      |                    |          |

2.  Treatments/interventions for heart attack, angina (chest pain), or lung ailments:

| Treatment/Intervention | When | Treating Physician | Hospital |
|------------------------|------|--------------------|----------|
|                        |      |                    |          |

3.  To your knowledge, have you had any of the following tests performed:  chest X-ray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
    Yes _____  No _____  Don't Recall  X   *If "yes,"* answer the following:

M00D388705

| Diagnostic Test | When | Treating Physician | Hospital | Reason |
|---|---|---|---|---|
|  |  |  |  |  |

## VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.  Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form.  Yes _____  No _X_

B.  Decedent's death certificate (if applicable).  Yes _____  No _____

C.  Report of autopsy of decedent (if applicable).  Yes _____  No _____

## VII.  LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A.      Your current family and/or primary care physician:

| Name | Address |
|---|---|
| Ngai Nguyen |  |

B.  To the best of your ability, identify each of your primary care physicians for the last ten (10) years.

| Name | Address | Approximate Dates |
|---|---|---|
| Ngai Nguyen |  | Feb 2004 - Present |
| Thang Nguyen | Aborn Rd. San Jose | 2003 |
|  |  |  |
|  |  |  |

C.  Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.

M00D388706

| Name | Address | Admission Dates | Reason for Admission |
|---|---|---|---|
| Valley Med. Alexian | Bascom San Jose | 2003 | Left Arm Weakness |
|  |  | 2001 | Knee |
|  | Fremont | 2002 | Knee |

D. Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.

| Name | Address | Admission Dates | Reason for Admission |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

E. Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

| Name | Address | Dates of Treatment |
|---|---|---|
| Parvez Fatteh |  | 2002-2004 |
| Ngai Nguyen | 696 E. Santa Clara, SJ | 2004-2007 |
| Thang Nguyen | San Jose, CA | 2003 |

F. Each pharmacy that has dispensed medication to you in the last ten (10) years.

| Name | Address |
|---|---|
| Longs Drugs | 1685 Tully Road, San Jose |
|  |  |

G. If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.

| Name | Address |
|---|---|
|  |  |
|  |  |
|  |  |

H. If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim.

| Name | Address |
|---|---|
| Regional Medical |  |
|  |  |

**CERTIFICATION**

    I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.

| | | |
|---|---|---|
| _Viet Tran_ | _VIET TRAN_ | _8-4-07_ |
| Signature | Print Name | Date |

MOOD388708

# EXHIBIT 35

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVID WYSER, | ) | |
| | ) | |
| Plaintiff, | ) | **1: 07-cv- 0359 -SEB -IMS** |
| | ) | |
| vs. | ) | CAUSE NO.: |
| | ) | |
| MERCK & CO., INC., | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES

Plaintiff, David Wyser, by counsel, brings this action against the Defendant, Merck & Co., Inc. ("Merck").

## PARTIES AND JURISDICTION

1.      Plaintiff, David Wyser,  is a citizen of the State of Indiana and a resident of Hamilton County.

2.      Defendant, Merck, is incorporated under the laws of the State of New Jersey and maintains its principal place of business at One Merck Drive, Whitehouse Station, New Jersey.

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the Plaintiff and Merck and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

M00B9I9287

4.      Venue is properly laid because Plaintiff is a resident of the Southern District of Indiana and Merck does business in that district.

## I.       **GENERAL FACTS COMMON TO ALL CAUSES OF ACTION**

5.      This action seeks damages on behalf of the Plaintiff for his personal injuries that were caused by the ingestion of Vioxx.

## II.      **FACTS COMMON TO ALL CAUSES OF ACTION**

6.      At all times relevant, Merck itself or through the use of agents, researched, developed, manufactured, designed, tested, distributed, marketed, promoted, advertised and otherwise sold the pharmaceutical product, Vioxx.

7.      Vioxx is a brand name used by Merck to market and distribute rofecoxib.  Merck began its distribution and sale of Vioxx in or about May of 1999 throughout the United States, including the state of Indiana.  In order too obtain FDA approval and  insure successfully launching this product in competition with Celebrex (celecoxib), which was introduced to the market by Merck competitors Pharmacia and Pfizer, approximately three (3) months prior to the introduction of Vioxx, Merck failed to disclose the serious cardiovascular risks associated with Vioxx.

8.      Plaintiff took 25 mg per day of Vioxx before having a heart attack on July 28, 2003.

9.      The ingestion of Vioxx by the Plaintiff caused his injuries.

10.     Until Merck withdrew Vioxx from the market on or about September 30, 2004, the Plaintiff was not aware of the connection between Vioxx and the substantially increased likelihood of suffering a cardiovascular or cerebrovascular incident as a result of ingesting

2

M00B919288

Vioxx.  At no time did Plaintiff receive adequate warning that ingesting Vioxx could increase his chances of suffering cardiovascular incidents or cerebral events, such as a stroke.  Merck continued to market Vioxx from 1999 through September 2004 via numerous television and print advertisements directed to the potential patient population and consuming public, as well as to the prescribing physicians, with no adequate warnings that Vioxx carried with it the cardiovascular risks which have now been disclosed.

11.    Merck knew or should have known of this increased risk as a result of prior studies of the performance of the drug as early as the year 2000, shortly after introduction of Vioxx to the market.

12.    In March 2000, Merck released the results of the Vioxx Gastrointestinal Outcomes Research Study (the "VIGOR Study"), which had begun in approximately January 1999.  The VIGOR Study revealed, among other things, "significantly fewer heart attacks were observed in patients ingesting naproxen (0.1%) compared to the group ingesting Vioxx 50mg. (0.5%)."

13.    The VIGOR Study did not demonstrate an improved safety profile for Vioxx.  The VIGOR Study data revealed that:

a.    Patients on Vioxx were five times more likely to suffer a heart attack as compared to patients on naproxen;

b.    Patients on Vioxx were 2.3 times more likely to suffer serious cardiovascular disease (including heart attacks, ischemic stroke, unstable angina, and sudden unexplained death) as compared to patients on naproxen; and

c.    Patients on Vioxx actually suffered *more* cases of serious disease (either gastrointestinal or cardiovascular) than did naproxen users (61 and 57 cases respectively).

3

M00B9I62B9

14.     In June 2000, in an effort to obtain approval for new gastrointestinal safety claims for Vioxx, Merck submitted to the FDA the VIGOR Study that disclosed a substantial increased risk of serious cardiovascular events, including heart attacks and strokes in patients ingesting Vioxx, compared to patients ingesting naproxen. According to the FDA, "[e]valuation of safety by routine parameters showed no advantage of [Vioxx] rofecoxib over naproxen."

15.     Ignoring the evidence of a causal relationship between Vioxx and this significantly increased rate of cardiovascular events, Merck claimed that naproxen had "cardio-protective effects" thus resulting in the lower incidents of heart attacks in the group ingesting naproxen.

16.     After the VIGOR Study, evidence of the increased danger of cardiovascular problems continued to mount. Industry sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, showed that Vioxx use resulted in a statistically significant increase in hypertension and myocardial infarction. Merck denied the results of these studies as to the hypertension problems in the official publication of the American Pharmaceutical Association, *Pharmacy Today*.

17.     Merck continued to deny the ill health effects associated with Vioxx, while at the same time, reaping the profits obtained through its false and misleading advertising to the patient public, including the Plaintiff, and to the physicians treating those individuals. Merck engaged in a massive advertising and sampling program and gained continued increases in market share and sales, resulting in billions of dollars in sales for Merck in 2000 and thereafter, and in Merck obtaining a significant market share.

18.     In November 2000, Merck caused the publication of a study in the NEW ENGLAND JOURNAL OF MEDICINE, knowingly downplaying and/or withholding from publication the severity of

4

M060B8109260

cardiovascular risks associated with Vioxx consumption as compared to naproxen consumption found in the VIGOR Study.

19.    Merck denied reports concerning the increased risk of cardiovascular problems as inaccurate and inconclusive.  For example, on May 22, 2001, Merck issued a press release through the *PR Newswire* that stated, among other things: "In response to news and analyst reports of data the Company first released a year ago, Merck & Co., Inc. today reconfirmed the favorable cardiovascular safety profile of Vioxx."

20.    On August 22, 2001, the *Journal of the American Medical Association* ("JAMA") published an article authored by cardiologists Eric J. Topol, M.D., Debarata Mukherjee, M.D., and Steven E. Nessen, M.D., of the Cleveland Clinic Foundation entitled "Risk of Cardiovascular Events Associated With Selective Cox-2 Inhibitors," which reported the results of a study of Vioxx and its competitor Celebrex.  The JAMA article reported the Cleveland Clinic's evaluation of two randomized trials of over 15,000 patients:  "the annualized myocardial infarction rates for COX-2 inhibitors in both VIGOR and CLASS were significantly higher than that in the placebo group . . ."

21.    The day before the JAMA article was published, *Bloomberg News* reported that Merck attempted to discredit the article and further deceive the public and prescribing physicians by claiming: "We have additional data beyond what they cite, and the findings are very, very reassuring.  Vioxx does not result in any increase in cardiovascular events compared to placebo."  Further, on August 23, 2001, the day after the article was published, Merck stated in a press release, "the Company stands behind the overall and cardiovascular safety profile...of Vioxx."

22.    In July 2001, an article in Web MD quoted an FDA Study: "the study found that Vioxx cut the occurrence of ulcers and other gastrointestinal problems by half compared with the

5

M008929M00I

over-the-counter NSAID Aleve.  But the study also showed that people ingesting Vioxx had four times the risk of a heart attack." Merck's spokeswoman, Christine Fanelle, contended the "risk was negligible" and that "it appeared to increase the risk of a heart attack because Aleve, like aspirin, actually reduces heart attack risks."

23.     In September 2001, the FDA sent Merck a warning letter which warned Merck that its marketing of Vioxx was "false, lacking in fair balance, or otherwise misleading...." The warning letter went on to advise Merck that its marketing "minimize[s] the Vioxx/Coumadin drug interaction, omit[s] crucial risk information associated with Vioxx therapy, contain[s] unsubstantiated comparative claims, and promote[s] unapproved uses."

24.     The Warning Letter also reprimanded Merck for:

> assert[ing] that Vioxx does not increase the risk of [heart attacks] and that the VIGOR  finding is consistent with naproxen's ability to block platelet aggregation like aspirin.  That is a possible explanation, but you fail to disclose that your explanation is hypothetical, has not been demonstrated by substantial evidence, and that there is another reasonable explanation, that Vioxx may have pro-thrombotic properties.

25.     The theory asserted by Merck to explain the results of the Vigor Study,  that naproxen had cardioprotective effect and therefore accounted for the higher cardiovascular risks among Vioxx users was refuted in approximately January 2002 by a Vanderbilt University School of Medicine human epidemiologic peer-reviewed study.  The study was published in *The Lancet*, and concluded that there is an absence of a protective effect of naproxen or other non-aspirin non-steroidal anti-inflammatory drugs on risk of coronary heart disease.  Ray, W., et al., "Non-Steroidal Anti-Inflammatory Drugs and Risk of Serious Coronary Heart Disease: an Observational Cohort Study," *The Lancet*, 359: 118-123, Jan. 12, 2002.

Z6Z6L68009W

26.     In a follow-up study reported in the *Journal of the American College of Cardiology* on or about February 6, 2002, Dr. Richard J. Bing reported on having conducted scientific testing and confirmed that the Cox-2 inhibitor tips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased vascular and thrombotic events.

27.     During the time the results of these studies were being published, consumers and healthcare professionals were complaining about Vioxx to the FDA.  The FDA's Adverse Events Reporting System ("AERS") database is a computerized system for collecting and maintaining information about adverse events reported by drug manufacturers, health professionals, and others. The system contains adverse events detected and reported after marketing of the drug.

28.     According to AERS, through October 2003, almost 2,000 adverse cardiovascular events were experienced by individuals ingesting Vioxx, including myocardial infarctions, cardiac arrests, and cardiac failures.  These cardiac events reported to the FDA, resulted in such outcomes as hospitalization, life threatening conditions, and even death.  Moreover, this system under-reported the actual frequency of such events in the Vioxx-ingesting population.

29.     On October 30, 2003, in an article entitled "Vioxx Study Sees Heart-Attack Risk," *The Wall Street Journal* reported that another study, sponsored by Merck, presented at the annual meeting of the American College of Rheumatology, confirmed an increased "risk of heart attacks in patients ingesting the pill [Vioxx]."  According to *The Wall Street Journal* article, within the first thirty days of ingesting Vioxx, the risk of a heart attack was increased 39% as compared to Vioxx's competitor, Celebrex.  However, Merck continued to insist that it stood behind the overall and cardiovascular safety profile of Vioxx.

7

M00B9769263

30.     In August 2004, *Health Day News* quoted the FDA as finding "this and other studies cast serious doubt on the safety" of Vioxx and that Celebrex "may be safer." Again, even at this late date, Merck sprang to the defense of Vioxx. Peter S. Kim, President of Merck Research Laboratories, was quoted as saying Merck "strongly disagrees" with the findings of this new study. On August 26, 2004, The Street.com commented "Merck Thursday released a detailed critique questioning the studies significance."

31.     Belatedly, on September 30, 2004, Merck finally revealed that this double blind FDA sponsored study had shown that Vioxx doubled the risk of heart attack and stroke for consumers who had taken the drug for a period of time in excess of 18 months, as compared to subjects ingesting a placebo for the same period of time. Because of the results of this study, Merck was finally forced to withdraw Vioxx from the market worldwide.

32.     However, the withdrawal from the market came after the Plaintiff ingested the drug without adequate notice of the inherent risks to his health. As a result, Plaintiff suffered heart attacks, strokes and other cardiovascular events, including death.

33.     If Merck had not engaged in this misleading conduct, consumers, including Plaintiff and his treating physicians, would have known the true risks of ingesting Vioxx and could have switched from Vioxx to safer products or refrained wholly from its use.

34.     The marketing strategies of Merck through massive advertising in the consumer media targeted individuals to induce them to purchase Vioxx and to physicians to encourage them to prescribe Vioxx. At the time Merck distributed, manufactured and marketed Vioxx, Merck intended that individuals would rely on the advertisements which misleadingly omitted or minimized references to the cardiovascular risks known to Merck.

M008096294

35.     Thus, despite knowledge from its clinical trials, post-marketing reports, studies and information relating to cardiovascular-related adverse health effects, Merck promoted and marketed Vioxx as safe and effective for persons such as Plaintiff.

## COUNT I
## Negligent Design, Failure to Reasonably Test and Failure to Warn

36.     Plaintiff realleges each and every allegation of paragraphs 1 through 35 of this Complaint, as if set forth fully herein.

37.     At least after the VIGOR Study in March 2000, Merck knew or in the exercise of reasonable care should have known that evidence existed associating Vioxx with a substantial increased risk of causing cardiovascular events dangerous to the health of those consumers ingesting Vioxx.  This knowledge of Merck increased with each study between March 2000 and September 30, 2004.

38.     Despite what Merck knew, should have known or was reckless in not knowing, as described herein, Merck negligently and in violation of 21 CFR § 201.57(e) failed to issue timely or adequate warnings of the danger of increased cardiovascular problems to the physicians prescribing or supplying Vioxx for use by Plaintiff herein.

39.     Despite Merck's knowledge described herein, Merck negligently failed to advise Plaintiff, and the medical community of these dangers which would have alerted them to available safer treatments for arthritis and the other conditions for which the patients were ingesting Vioxx.

40.     As a proximate result of Merck's active concealment of the cardiovascular risks of Vioxx and its failure to issue timely or adequate warnings as alleged above, Plaintiff was damaged as previously alleged above.

9

M00B919255

WHEREFORE, Plaintiff demands judgment against Merck for medical costs, pain and suffering, emotional distress, lost wages, and all other available damages sufficient to fully and fairly compensate Plaintiff for the injuries which he suffered, taxable costs, and for all other proper relief.

## COUNT II
## Strict Liability

41.     Plaintiff realleges each and every allegation of paragraphs 1 through 40 of this Complaint, as if set forth fully herein.

42.     Merck was in the business of designing, manufacturing, supplying, marketing, selling and distributing Vioxx.

43.     Vioxx was sold by Merck in a defective condition, unreasonably dangerous to potential users thereof.

44.     Vioxx was expected to and did reach Plaintiff without substantial change in the condition in which it was sold.

45.     Merck failed to adequately warn Plaintiff of the dangers and adverse health risks associated with the use of Vioxx.

46.     Vioxx was acquired by the Plaintiff, and it was used by him for the purpose intended, and it caused them physical harm, in the form of blood clots, heart attacks, other cardiovascular events, and death.

47.     Merck is strictly liable to the Plaintiff for the harm, damages, injuries and death complained of herein.

48.     As a proximate result of Merck's actions as alleged above, the Plaintiff has been damaged thereby as previously alleged above.

10

WHEREFORE, Plaintiff demands judgment against Merck for medical costs, pain and suffering, emotional distress, lost wages, and all other available damages sufficient to fully and fairly compensate Plaintiff for the injuries which he suffered, taxable costs, and for all other proper relief.

## COUNT III
## Fraud

49.     Plaintiff realleges each and every allegation of paragraphs 1 through 48 of this Complaint, as if set forth fully herein.

50.     Merck misrepresented to the treating physicians, the population of Vioxx consumers, and to the public at large, and thus to Plaintiff's doctors, and Plaintiff, that Vioxx was safe to prescribe and ingest by falsely minimizing the cardiovascular risks associated with Vioxx, which risks were known or should have been known to Merck.

51.     At the time Merck made these misrepresentations, Merck knew or should have known that these statements were false.

52.     These statements were made with the intent that those to whom they were directed would rely on them to their detriment; and Plaintiff and his physicians did so.

53.     As a result of Merck's misrepresentations as above alleged, Plaintiff suffered the damages alleged above.

WHEREFORE, Plaintiff demands judgment against Merck for medical costs, pain and suffering, emotional distress, lost wages, and all other available damages sufficient to fully and fairly compensate Plaintiff for the injuries which he has suffered, taxable costs, and for all other proper relief.

11

M00B9192297

## COUNT IV
## <u>Constructive Fraud</u>

54.     Plaintiff realleges each and every allegation of paragraphs 1 through 53 of this Complaint, as if set forth fully herein.

55.     Merck was in a position of superior knowledge as to the information alleged above when compared with Plaintiff.  Merck knew that Plaintiff and other members of the consuming public who were suffering from arthritis or other pain causing conditions, did not possess the knowledge and information necessary to enable them to appreciate the risks and dangers to which they were subjecting themselves by ingesting Vioxx to relieve the symptoms of these conditions rather than ingesting other available effective products.  As a result of the relationship between Merck and the Plaintiff, and his treating physician, and Merck's position of superior knowledge, Merck had a duty to inform them of these risks and dangers.

56.     Merck violated the duties owed to Plaintiff by remaining silent or issuing misleading statements when they had a duty to warn.

57.     Plaintiff reasonably relied upon Merck's failure to warn and misleading statements as indicating that Vioxx continued to be safe to use.  Merck thereby obtained an advantage at the expense of Plaintiff as they continued to sell Vioxx as a safe product when it in fact was not.

58.     Merck's failure to advise Plaintiff as well as Merck's misrepresentations herein alleged constituted constructive fraud.

59.     As a proximate result of the actions and omissions of Merck, the Plaintiff has been damaged thereby as alleged above.

M00B9I9Z98

WHEREFORE, Plaintiff demands judgment against Merck for medical costs, pain and suffering, emotional distress, lost wages, and all other available damages sufficient to fully and fairly compensate Plaintiff for the injuries which they have suffered, taxable costs, and for all other proper relief.

## COUNT V
## Punitive Damages

60.     Plaintiff realleges each and every allegation of paragraphs 1 through 59 of this Complaint, as if set forth fully herein.

61.     Merck's actions were malicious, wanton, willful, grossly negligent, oppressive or in reckless disregard of the rights of the Plaintiff.

62.     An award of punitive damages against Merck is necessary and appropriate to deter Merck and others similarly situated from engaging in similar conduct in the future.

WHEREFORE, in addition to the compensatory damages prayed for in Counts I through V above, Plaintiff prays that judgment be entered for punitive damages in an amount deemed by the jury to be sufficient to punish Merck for its conduct as alleged herein and to deter similar conduct in the future.

13

## DEMAND FOR JURY TRIAL

Come now the Plaintiff, by counsel, Price Waicukauski & Riley, LLC, and demands that this Court schedule this matter for trial by jury.

PRICE WAICUKAUSKI & RILEY, LLC

Henry J. Price, Bar No. 8522-49
William N. Riley, Bar No. 14941-49
Jamie R. Kendall, Bar No. 25124-49
Christopher A. Moeller, Bar No. 25710-49

The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN  46204
Telephone: (317) 633-8787
FAX: (317) 633-8797

**COUNSEL FOR PLAINTIFFS**

14

M00B919300

# EXHIBIT 36



15351713

Jun 25 2007
4:01PM

| | |
|---|---|
| IN RE: VIOXX® PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1657 |

**THIS RELATES TO: EDLA 07-2695**
**MDL 07-359**

Plaintiff: David Wyser

**Civil Action No: 1:07-cv-0359-SEB-JMS**

David Wyser

   vs.

MERCK & CO., INC.

## PLAINTIFF PROFILE FORM OF DAVID WYSER

     Other than in Sections I, those questions using the term "You" should refer to the person who used VIOXX®. Please attach as many sheets of paper as necessary to fully answer these questions.

### I.   CASE INFORMATION

A. Name of person completing this form: _____David Wyser_____

B. If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

   1. Social Security Number:_____

   2. Maiden Or Other Names Used or By Which You Have Been Known:_____

   3. Address:_____

   4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate? _____

   5. If you were appointed as a representative by a court, state the:

     Court: _____ Date of Appointment: _____

   6. What is your relationship to deceased or represented person or person claimed to be injured?_____

   7. If you represent a decedent's estate, state the date of death of the decedent and the

M00BB74745

address of the place where the decedent died: _____

C.  Claim Information

    1.  Are you claiming that you have or may develop bodily injury as a result of taking VIOXX®? Yes _X_ No_____ *If "yes,"*

        a.  What is your understanding of the bodily injury you claim resulted from your use of VIOXX®? <u>heart attack</u>

        b.  When do you claim this injury occurred? <u>7/28/03</u>

        c.  Who diagnosed the condition? <u>Dr. Kenneth Stanley - Indiana Heart Hospital</u>

        d.  Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes _____ No _X_ *If "yes,"* when and who diagnosed the condition at that time? _____
        _____

        e.  Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _____ No _X_ *If "yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX®; and the date of recovery, if any. _____
        _____

D.  Are you claiming mental and/or emotional damages as a consequence of VIOXX®? Yes _X_ No ____

    *If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:

        a.  Name and address of each person who treated you: <u>None</u>

        b.  To your understanding, condition for which treated: <u>anxiety and depression</u>

        c.  When treated: <u>N/A</u>

        d.  Medications prescribed or recommended by provider: <u>N/A</u>

## II.   PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX®

A.  Name: <u>David Wyser</u>

B.  Maiden or other names used or by which you have been known: <u>none</u>

C.  Social Security Number: <u>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</u>

D.  Address: <u>10088 Springstone Road, McCordsville, IN  46055</u>

74182v.1

M00BB74746

E.  Identify each address at which you have resided during the last ten (10) years, and list
when you started and stopped living at each one:

| Address | Dates of Residence |
|---|---|
| 10088 Springstone Rd., McCordsville, IN 46055 | 8/98 to present |
| 8939 Tito Ct., Fishers, IN  46038 | 3/97 to 8/98 |
| 30845 Oakrim Dr., Westlake Village, CA 91362 | 6/92 to 3/97 |

F.  Driver's License Number and State Issuing License: IN 1050-27-8374

G.  Date of Place and Birth: 5/10/1960; Hollywood, CA

H.  Sex: Male X  Female ____

I.  Identify the highest level of education (high school, college, university or other
educational institution) you have attended (even if not completed), the dates of
attendance, courses of study pursued, and diplomas or degrees awarded:

| Institution | Dates Attended | Course of Study | Diplomas or Degrees |
|---|---|---|---|
| University of LaVerne | '88 to '91 | Law | J.D. |

J.  Employment Information.

1.  Current employer (if not currently employed, last employer):

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| Marion Co. Prosecutor's Office | 251 E. Ohio, #160 Indianapolis, IN 46204 | 2/01 to present | Chief Deputy Prosecutor |

2.  List the following for each employer you have had in the last ten (10) years:

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| IN State Attorney General's Office | Indianapolis, IN | '99 to 12/00 | Supervisor, Tort Litigation Division |
| Marion Co. Public Defender's Agency | 200 E. Washington Indianapolis, IN 46204 | 7/97 to '99 | Public Defender, Criminal Defense Trial Work |
| Law Offices of David Wyser | 15760 Ventura Blvd. Encino, CA | 6/94 to 3/97 | Lawyer - Litigation |

3.  Are you making a wage loss claim for either your present or previous
employment? Yes ____ No X

If "yes," state your annual income at the time of the injury alleged in
Section I(C): _____

K.  Military Service Information:  Have you ever served in the military, including the

74182v.1

military reserve or national guard? Yes __X__ No ____

*If "yes,"* were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition? Yes __X - unknown seizure__ No ____

L. Insurance / Claim Information:

1. Have you ever filed a worker's compensation and/or social security disability (SSI or SSD) claim? Yes ____ No __X__ *If "yes,"* to the best of your knowledge please state:

   a. Year claim was filed: _____

   b. Nature of disability: _____

   c. Approximate period of disability: _____

2. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)? Yes __X__ No ____ *If "yes,"* set forth when and the reason. __12/99 - struck by automobile: left tibia plateau fracture__ _____

3. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury? Yes __X__ No ____ *If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted. _____ __Indiana Insurance claim for leg injury from above. No lawsuit was filed.__ _____

M. As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes ____ No __X__ *If "yes,"* set forth where, when and the felony and/or crime. _____

## III.   FAMILY INFORMATION

A. List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of marriage; date the marriage ended, if applicable; and how the marriage ended (e.g., divorce, annulment, death): _____ __Edith Wyser; 5/14/61, business analysis trainer, DOM 11/15/86__ _____

B. Has your spouse filed a loss of consortium claim in this action? Yes ____ No __X__

74182v.1

M00EB747 48

C. To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke? Yes __X__ No _____ Don't Know _____ *If "yes,"* identify each such person below and provide the information requested.

Name: Grandfather; Harry Schwartz

Current Age (or Age at Death): 73 or so

Type of Problem: Heart Attack

If Applicable, Cause of Death: same

D. If applicable, for each of your children, list his/her name, age and address: Jennifer Wyser, age 16, 10088 Springstone Road, McCordsville, IN 46055; Stephanie Wyser, age 13; 10088 Springstone Road, McCordsville, IN 46055

E. If you are claiming the wrongful death of a family member, list any and all heirs of the decedent. N/A

## IV.   VIOXX® PRESCRIPTION INFORMATION

A. Who prescribed VIOXX® for you? Dr. Michael Kaveney, 755 Carmel Dr., #150, Carmel, IN 46032

B. On which dates did you begin to take, and stop taking, VIOXX®? June or July 2003 to July 28, 2003

C. Did you take VIOXX® continuously during that period?
Yes __X__ No _____ Don't Recall _____

D. To your understanding, for what condition were you prescribed VIOXX®? leg swelling

E. Did you renew your prescription for VIOXX®? Yes _____ No __X__ Don't Recall _____

F. If you received any samples of VIOXX®, state who provided them, what dosage, how much and when they were provided: Dr. Michael Kaveney, 25 mg, 1 month supply given in June or July 2003. Lot N7850.  A copy of the box is attached.

G. Which form of VIOXX® did you take (check all that apply)?
_____ 12.5 mg Tablet (round, cream, MRK 74)
_____ 12.5 mg Oral Suspension
__X__ 25 mg Tablet (round, yellow, MRK 110)
_____ 25 mg Oral Suspension
_____ 50 mg Tablet (round, orange, MRK 114)

74182v.1

M00EB74749

H. How many times per day did you take VIOXX®?
    _____once_____

I. Did you request that any doctor or clinic provide you with VIOXX® or a prescription for VIOXX®? Yes _____ No __X__ Don't Recall _

J. Instructions or Warnings:

   1. Did you receive any written or oral information about VIOXX® before you took it? Yes _ No _X_ Don't Recall _____

   2. Did you receive any written or oral information about VIOXX® while you took it? Yes _____ No _X_ Don't Recall _____

   3. *If "yes,"*
      a. When did you receive that information?_____
      b. From whom did you receive it?_____
      c. What information did you receive? _____
         _____

K. What over-the-counter pain relief medications, if any, were you taking at the same time you were taking VIOXX®? __None_____
   _____

## V. **MEDICAL BACKGROUND**

A. Height: _____5'5"___

B. Current Weight: __163 lbs.__
   Weight at the time of the injury, illness, or disability described in Section I(C):
   __163 lbs.__

C. Smoking/Tobacco Use History: ***Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.***
   _____ Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
   __X__ Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
      a. Date on which smoking/tobacco use ceased: _July 2003_____
      b. Amount smoked or used: on average _2-3 cigars_ per month for _8-10_ years.
   _____ Current smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff.
      a. Amount smoked or used: on average _____ per day for _____ years.
   _____ Smoked different amounts at different times.

M00BB74750

D. Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes __X__ No ____ *If "yes," fill in the appropriate blank* with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXX® up to the time that you sustained the injuries alleged in the complaint:

____1-5____ drinks per week,

_____ drinks per month,

_____ drinks per year, *or*

Other (describe): _____

E. Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX®-related injury?" Yes ____ No __X__ Don't Recall _____

*If "yes"*, identify each substance and state when you first and last used it. _____
_____

F. Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1. Cardiovascular surgeries, including, but not limited to, the following, and specify for what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:

| Surgery | Condition | When | Treating Physician | Hospital |
|---------|-----------|------|--------------------|----------|
| Vascular (stent) | Heart Attack | 7/28/03 | Dr. Kenneth Stanley | Indiana Heart Hospital |
|  |  |  |  |  |

2. Treatments/interventions for heart attack, angina (chest pain), or lung ailments:

| Treatment/Intervention | When | Treating Physician | Hospital |
|------------------------|------|--------------------|----------|
| Stent | 7/28/03 | Dr. Kenneth Stanley | Indiana Heart Hospital |
|  |  |  |  |

3. To your knowledge, have you had any of the following tests performed: chest X-ray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor?
Yes __X__ No _____ Don't Recall _____ *If "yes,"* answer the following:

| Diagnostic Test | When | Treating Physician | Hospital | Reason |
|-----------------|------|--------------------|----------|--------|

| | | | | |
|---|---|---|---|---|
| Cardiac Cath | 7/28/03 | Dr. Kenneth Stanley | Community Hospital | Angina/MI |
| Chest X-ray | 7/28/03 | Dr. Kenneth Stanley | Community Hospital | Chest pain |
| Transthoracic Echocardiographic Study | 7/29/03 | Dr. Kenneth Stanley | Community Hospital | Acute MI |
| Treadmill | 3/28/07 | Dr. Joe Noble | The Care Group | Chest pain |
| Gamma Scan | 03/07 | Dr. Joe Noble | St. Vincent Hospital | Follow-up/ Check-up |

## VI.  DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A. Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form. Yes __X__ No ____

B. Decedent's death certificate (if applicable). Yes ____ No _X_

C. Report of autopsy of decedent (if applicable). Yes ____ No _X_

## VII.  LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A. Your current family and/or primary care physician:

| Name | Address |
|---|---|
| Dr. Sameer Gupta | 116th Street, Fishers, IN  46038 |

B. To the best of your ability, identify each of your primary care physicians for the last ten (10) years.

| Name | Address | Approximate Dates |
|---|---|---|
| Dr. Sameer Gupta | 116th Street, Fishers, IN 46038 | 2003 to present |
| Dr. Jessica Saberman | 11530 Allisonville Rd., #150 Fishers, IN 46038 | 2000 - 2005 |

M00BB74752

| Dr. Diane Sommers | 14828 Greyhound Ct. #130 Carmel, IN 46032 | 1997 - 2000 |

C. Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.

| Name | Address | Admission Dates | Reason for Admission |
|------|---------|-----------------|----------------------|
| Indiana Heart Hospital | 1500 N. Ritter Ave. Indianapolis, IN 46219 | 7/28/03 to 7/30/03 | Heart Attack |
| Methodist Hospital | 1701 N. Senate Blvd. Indianapolis, IN 46206 | 12/15/99 to 12/18/99 | Broken Leg |
| St. Francis Hospital | 8011 S. Emerson Indianapolis, IN 46237 | 5/1/98 | Broken Ankle |

D. Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.

| Name | Address | Admission Dates | Reason for Admission |
|------|---------|-----------------|----------------------|
| St. Vincent Hospital | 2001 W. 86th St. Indianapolis, IN 46260 | Summer 2006 | Cut finger tip |
| St. Vincent Hospital | 2001 W. 86th St. Indianapolis, IN 46260 | 10/28/05 to 11/11/05 | Out patient physical therapy for shoulder |
| St. Vincent Hospital | 2001 W. 86th St. Indianapolis, IN 46260 | 10/26/05 | Right shoulder arthroscopy |
| St. Vincent Hospital | 2001 W. 86th St. Indianapolis, IN 46260 | 1/6/00 to 2/18/00 | Out patient physical therapy for left knee |
| St. Vincent Hospital | 2001 W. 86th St. Indianapolis, IN 46260 | 10/27/98 to 11/20/98 | Out patient physical therapy for right ankle |
| St. Vincent Hospital | 2001 W. 86th St. Indianapolis, IN 46260 | 6/23/98 to 7/20/98 | Outpatient physical therapy for right ankle |

E. Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

| Name | Address | Dates of Treatment |
|------|---------|--------------------|
| Dr. Sameer Gupta | 116th Street, Fishers, IN 46038 | 2003 to present |

74182v.1

M00B74753

| Dr. Jessica Saberman | 11530 Allisonville Rd., #150, Fishers, IN 46038 | 2000 - 2005 |
| Dr. Diane Sommers | 14828 Greyhound Ct. #130, Carmel, IN 46032 | 1997 - 2000 |
| Dr. Michael Kaveney | 755 Carmel Dr., #150 Carmel, IN 46032 | 2000-2004 |

F.  Each pharmacy that has dispensed medication to you in the last ten (10) years.

| Name | Address |
|---|---|
| CVS | 8295 E. 116th Street, Fishers, IN 46038 |
| CVS | 10580 E. 96th Street, Fishers, IN  46038 |
| CVS | 11591 Olio Road, Fishers, IN 46038 |
| Prescription Solutions | P.O. Box 6037, Cypress, CA  90630 |

G.  If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.

| Name | Address |
|---|---|
| None |  |
|  |  |

H.  If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim.

| Name | Address |
|---|---|
| None |  |
|  |  |

M00BB74754

## CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.

| _____ | _DAVID WYSER_ | _4-14-07_ |
|---|---|---|
| Signature | Print Name | Date |

M00BB74755