# EXHIBIT 37



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

OCT - 3 2006

MICHAEL N. MILBY, CLERK OF COURT

| | |
|---|---|
| DONALD R. PREUNINGER, | ) |
| FLORA N. PREUNINGER, | ) |
| | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| Vs. | ) CASE NO.: **06 -3090** |
| | ) |
| MERCK & CO., INC., | ) JURY TRIAL DEMANDED |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

### STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332, for diversity of citizenship and Plaintiffs each claim an amount in controversy exceeding $75,000.00.

### PARTIES

1. Plaintiff, Donald R. Preuninger, is over the age of 19 years, and is a resident citizen of Huffman, Harris County, Texas. Donald R. Preuninger suffered a heart attack on or about May 29, 2000, while using the prescription pain reliever, Vioxx®. As a result of the heart attack, Plaintiff then suffered a hemorrhagic stroke.

2. Plaintiff, Flora N. Preuninger, is over the age of 19 years, and is a resident citizen of Huffman, Harris County, Texas. Flora N. Preuninger is, and was at all times relevant hereto, the spouse of Donald R. Preuninger.

3. Defendant, Merck & Co., Inc., is a corporation of the state of New Jersey, with its principal place of business in New Jersey. At all relevant times herein, Merck was in the

Ch 88339

M00SE28920

business of promoting, manufacturing and distributing Rofecoxib, known more commonly as Vioxx®. Defendant does business in Texas and at all relevant times hereto, marketed, promoted, warranted and sold Vioxx® in Texas.

## FACTS

4.      This action arises from the use of Rofecoxib or Vioxx®, a medication for relief of pain from osteoarthritis, menstrual cramps, rheumatoid arthritis and acute severe pain.

5.      Defendant, Merck, obtained FDA approval on Vioxx® in approximately May of 1999 and began its distribution and sale throughout the United States in approximately May of 1999. Vioxx® is a brand name used by Merck to market and distribute Rofecoxib.

6.      Plaintiff, Donald R. Preuninger, was prescribed Vioxx® in or around 2000, for back pain. Plaintiff used the Vioxx® as recommended for back pain.

7.      On or about May 29, 2000, while using Vioxx®, Plaintiff, Donald R. Preuninger, suffered a heart attack, and as a result of the treatment for the heart attack, suffered a hemorrhagic stroke.

8.      Defendant Merck distributed and sold Vioxx® to patients needing pain relief. Vioxx® was approved for marketing based on information in the New Drug Application, which was on a fast-track, 6-month approval process to FDA.

9.      Despite knowledge in its clinical trials and post-marketing reports, studies and information relating to cardiovascular adverse health effects, Defendant promoted and marketed Vioxx® as safe and effective for patients like Plaintiffs.

10.     Defendant concealed the cardiovascular risks associated with Vioxx® because a successful launch of Vioxx® was viewed as critical for Merck, and safety concerns over hypertension, edema and/or cardiovascular events would have drastically impacted Merck's

2

M00GE28930

positioning in the market as compared to its competition drug, Celebrex placed into the market by Pharmacia and Pfizer, three months prior to the launch of Vioxx®.

11.     Merck chose to place these adverse health risks on its consumers despite its knowledge at product launch and in post-marketing data thereafter that use of Vioxx® carried significant risk factors. These adverse effects were realized in adverse event reports, in clinical trials conducted by Merck, and Merck studies which showed statistically significant increases in adverse cardiovascular events among Vioxx® users.

12.     In industry sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that Vioxx® use resulted in a statistically significant increase in hypertension and myocardial infarction. Merck did nothing to further accurately publish these studies, which were again reported and denied by Merck as to the hypertension problems in the official publication of the American Pharmaceutical Association.

13.     Merck continued to deny the ill health effects associated with Vioxx® while at the same time making a profit through its sales. Merck engaged in a massive advertising and sampling program and gained continued increases in market share, which enhanced Merck's financial stability to the detriment of its consumers. The resultant effect to Merck in concealing and failing to reveal and warn of the risks was a $2 billion profit in 2000 alone to Merck and an approximately 23 percent share of the market.

14.     The profits to Merck were realized as it continued to withhold relevant data from patients and the health care industry generally. For example, in November of 2000, Merck caused the publication of a study in the New England Journal of Medicine and knowingly downplayed and/or withheld from this publication the severity of cardiovascular risks associated

3

M00E28931

with Vioxx® consumption over Naproxen consumption.

15.     In approximately September of 2001 Merck received a Warning Letter from FDA stating that Merck's "promotional activities and materials…are false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations." The FDA stated that Merck's campaign minimized "potentially serious cardiovascular findings" from a Vioxx® study and misrepresented Vioxx's "safety profile." The FDA concluded that Merck's claim that "Vioxx has a 'favorable safety profile' is simply incomprehensible given the rate of myocardial infarction and serious cardiovascular events compared to naproxen."

16.     At all times relevant to this litigation, Merck had a very aggressive marketing program which involved financial incentives to sales teams, recruiting new sales representatives, and a massive advertising and sampling program.  As a result of such marketing, Vioxx® gained a significant market share that it would not have gained if Merck had not suppressed information about Vioxx® and/or made false representations of Vioxx's superiority and efficacy.

17.     If Defendant had not engaged in this conduct, patients and physicians would have switched from Vioxx® to safer products or refrained wholly from its use.

18.     From 1999 through September 30, 2004, Defendant engaged in a scheme of marketing, distributing and selling Vioxx® under the guise that it was safe and efficacious for patients.

19.     Plaintiffs allege that the marketing strategies, including the detail and sampling programs and direct-to-consumer advertising, of the Defendant targeted consumers to induce them to ask for and use Vioxx®.  At the time the Defendant distributed, manufactured and marketed Vioxx®, Defendant intended that Plaintiffs would rely on the marketing,

4

M00GE28932

advertisements and product information propounded by Defendant. Plaintiffs did not know, and could not have known, that Vioxx® was unsafe or that it had caused their injuries and damages, until September 30, 2004.

20.     On September 30, 2004, Merck voluntarily removed Vioxx® from all markets in the United States because of an increased risk of serious cardiovascular events in association with its use.

## COUNT ONE

### Strict Liability

21.     Plaintiffs adopt and incorporate by reference all the above allegations.

22.     At all times material hereto, the Defendant has engaged in the business of selling, distributing, manufacturing, marketing and promoting Vioxx®, which is unreasonably dangerous, and therefore defective. This product was defective because it was more dangerous than would be reasonably contemplated by the ordinary user.

23.     At all times material hereto, Vioxx® reached the Plaintiffs without substantial change in the condition in which it left the possession of the Defendant.

24.     Vioxx® medication was defective and unreasonably dangerous when it entered the stream of commerce and was received by Plaintiffs because:

a.      Vioxx® contained manufacturing defects in that it can cause strokes, heart attacks, cardiovascular events, and death, among other things.

b.      Vioxx® was not safe as designed, taking into account that the foreseeable risks involved in its use outweighed its utility and therapeutic benefits.

5

M00GE28933

c.      Vioxx® was marketed and promoted for use as a prescription pain medication, when it carried an unreasonable and unnecessary risk of serious injury and death. The risk of harm far outweighed the benefit of use.

d.      Vioxx® was insufficiently and inadequately tested, yet Defendant promoted it as being pharmaceutically tested and safe for use.

e.      Vioxx® was not safe due to inadequate and defective instructions and warnings at the time it left the possession of the Defendant.  The warnings were inadequate to fully apprise the user and health care providers of the full nature and extent of the risks and dangerous side effects associated with the use;

f.      Vioxx® was marketed and promoted for use as safe for treatment of acute and chronic pain on an outpatient basis, when it was not.

25.     As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below. The Plaintiffs' damages were not caused by an inherent characteristic of the product that cannot be eliminated, but instead were caused by the product being dangerously defective as outlined above.

26.     Defendant's actions and inactions as set forth above, were intentional and deliberate, and Plaintiffs are also entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Merck & Co., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

M00E28934

## COUNT TWO

### Failure to Warn

27.     Plaintiffs adopt and incorporate by reference all the above allegations.

28.     Vioxx® can be unreasonably dangerous, even when used for its intended purpose.

29.     Defendant, as a manufacturer of pharmaceutical drugs, is held to the level of knowledge of an expert in the field, and further, Defendant had knowledge of the dangerous risks and side effects of Vioxx®.

30.     Plaintiffs did not have the same knowledge as Defendant and no adequate warning was communicated to Plaintiffs.

31.     Defendant had a continuing duty to warn consumers, including Plaintiffs, of its product, and the risks and dangers associated with it, and negligently and/or wantonly breached its duty as follows:

    a.     Failed to include adequate warnings with the medications that would alert consumers and physicians to the dangerous risks and serious side effects of Vioxx®.

    b.     Failed to provide adequate post-marketing warnings and instructions after the Defendant knew or should have known of the significant risks of heart attack, stroke, blood clots and injury from the use of Vioxx®.

    c.     Failed to adequately warn Plaintiffs and physicians that Vioxx® should not be used by patients with already compromised cardiovascular conditions.

    d.     Failed to inform Plaintiffs and physicians that Vioxx® had not been adequately and thoroughly tested for safety as a pain reliever.

32.     As a direct and proximate result of the actions and inactions of the Defendant as

7

M00SE28935

set forth above, Plaintiffs have sustained injuries and damages as listed below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Merck & Co., Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT THREE

### Breach of Warranty of Merchantability

33.     Plaintiffs adopt and incorporate by reference all the above allegations.

34.     When Defendant placed Vioxx® into the stream of commerce, it knew that it would be used as a pain medication, and expressly and impliedly warranted to Plaintiffs that use of Vioxx® was a safe and acceptable means of relieving pain and discomfort.

35.     Plaintiffs reasonably relied upon the expertise, skill, judgment and knowledge of the Defendant and upon the express and/or implied warranty that Vioxx® was of merchantable quality and fit for use to relieve pain symptoms.

36.     In fact, Vioxx® was not of merchantable quality and was not safe or fit for its intended use because it was unreasonably dangerous and unfit for the ordinary purposes for which it is used, in that Vioxx® caused serious injuries and damages.  The medication breached the warranties because it was unduly dangerous in expected use and did cause undue injuries to the Plaintiffs.

37.     As a direct and proximate result of the breach of warranties by the Defendant Plaintiffs have sustained injuries and damages as set forth below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Merck & Co., Inc., for compensatory damages in an amount determined by the jury to be necessary and just.

M00GE28936

## COUNT FOUR

### Negligence

38.     Plaintiffs adopt and incorporate by reference all the allegations above.

39.     Defendant negligently manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold Vioxx®, in the state of Texas.

40.     At all times material hereto, Defendant had a duty to exercise reasonable care in the design, manufacture, research and development, testing, processing, advertising, marketing, labeling, packaging, distribution, promotion and sale of its medications.

41.     Defendant breached its duty and was negligent in its actions, misrepresentations, and omissions toward Plaintiffs in the following ways:

   a.     Failed to use reasonable care to test Vioxx® which, if properly performed, would have shown that Vioxx® had serious side effects, including, but not limited to, risk of stroke, heart attack, blood clots and death;

   b.     Failed to use reasonable care to give warnings and instructions with Vioxx®.

   c.     Failed to use reasonable care to design and manufacture a pain reliever safe for its intended use.

   d.     Failed to use reasonable care in the marketing and promotion of Vioxx®.

42.     Defendant knew or should have known that Vioxx® had unreasonably dangerous risks and caused serious side effects of which Plaintiffs and physicians would not be aware. Defendant nevertheless advertised, marketed, sold and distributed the medicine knowing that there were safer methods and products for pain relief.

43.     As a direct and proximate result of the negligent actions and inactions of the

9

M00GE28937

Defendant as set forth above, Plaintiffs have sustained injuries and damages as set forth below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Merck & Co., Inc., for compensatory damages in an amount determined by the jury to be necessary and just.

## COUNT FIVE

### Wantonness

44.     Plaintiffs adopt and incorporate by reference all the allegations above.

45.     Defendant wantonly and recklessly manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold Vioxx®, in the state of Texas.

46.     At all times material hereto, Defendant had a duty to exercise reasonable care in the design, manufacture, testing, research and development, processing, advertising, marketing, labeling, packaging, distribution, promotion and sale of Vioxx®.

47.     Defendant breached its duty and was wanton and reckless in its actions, misrepresentations, and omissions toward Plaintiffs in the following ways:

a.      Failed to test Vioxx® which, if properly performed, would have shown that Vioxx® had serious side effects, including, but not limited to, risk of stroke, heart attack, blood clots and death;

b.      Failed to give full and adequate warnings and instructions with Vioxx®.

c.      Failed to design and manufacture a pain medication safe for its intended use.

d.      Failed to truthfully market and promote Vioxx®.

48.     Defendant knew that Vioxx® had unreasonably dangerous risks and caused serious side effects of which Plaintiffs and physicians would not be aware.   Defendant

10

M00GE28938

nevertheless advertised, marketed, sold and distributed the medicine knowing that there were safer methods and products for pain relief.

49.     As a direct and proximate result of the wanton and reckless actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and damages as set forth below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Merck & Co., Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT SIX

### Fraud, Misrepresentation and Suppression

50.     Plaintiff adopts and incorporates by reference all the allegations above.

51.     Defendant fraudulently, intentionally and/or negligently misrepresented to Plaintiffs, the FDA, and general public, the safety of Vioxx® and/or fraudulently, intentionally and/or negligently concealed material including adverse information regarding the safety of Vioxx®.

52.     Defendant made misrepresentations and actively concealed adverse information at a time when the Defendant knew, or should have known, that Vioxx® had defects, dangers, and characteristics that were other than what the Defendant had represented to the FDA, and the consuming public, including the Plaintiffs, and physicians.    Specifically, the Defendant misrepresented to Plaintiffs, the FDA, the consuming public, and physicians that:

a.     Vioxx®, when used as recommended, was safe for relief of pain symptoms.

b.     Vioxx® had been pharmaceutically tested and was safe for use as a pain reliever, even in persons with cardiovascular conditions.

11

M00E28939

    c.        Vioxx® was fully and adequately tested.

    d.        Vioxx® had no serious adverse cardiovascular effects.

    e.        Vioxx® was safe and effective.

53.      Defendant knew or should have known that these representations were false and that Plaintiffs would rely on them, leading to the use of Vioxx®.  Defendant knew that physicians had been told the same false and fraudulent information about Vioxx®, and that Plaintiffs and the prescribing physicians would be relying on information, advertisements and statements made by Defendant about the use, safety and efficacy of Vioxx®.

54.      At the time of Defendant's fraudulent misrepresentations and active concealment, Plaintiffs were unaware of the falsity of the statements being made and believed them to be true.

55.      Plaintiffs and physicians justifiably relied on and/or were induced by the misrepresentations made by Defendant of the safety and use of Vioxx®, and in fact, used Vioxx® as recommended.

56.      Defendant concealed the truth from Plaintiffs, the consuming public and physicians, about the real safety and risks of Vioxx®.

57.      Defendant had a post-sale duty to warn Plaintiffs and the public about the potential risks and complications associated with Vioxx® in a timely manner.  Much of the true information about Vioxx® has only become known since its withdrawal on September 30, 2004.

58.      The misrepresentations and active concealment by the Defendant constitutes a continuing tort against Plaintiffs.

59.      As a direct and proximate result of the misrepresentations and concealment of the Defendant as set forth above, Plaintiffs have sustained injuries and damages set forth below.

M00EE28940

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of Defendant, Merck & Co., Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

### CLAIM FOR DAMAGES

Plaintiff, Donald R. Preuninger, has sustained injuries and damages, and does make claim for these:

    a.     Reasonable and necessary health care expenses incurred in the past;

    b.     Reasonable and necessary health care expenses which will be incurred in the future;

    c.     Physical pain and suffering in the past;

    d.     Physical pain and suffering which will be endured in the future;

    e.     Mental anguish suffered in the past;

    f.     Mental anguish which will be endured in the future;

    g.     Physical disability and impairment, past and future;

    h.     All other incidental and consequential damages, fees and expenses.

Plaintiff, Flora N. Preuninger has sustained the loss of companionship, services and intimacy of her spouse as a direct and proximate result of the physical and mental injuries suffered by Donald R. Preuninger.

PLAINTIFFS DEMAND A TRIAL OF ALL ISSUES BY STRUCK JURY.

13

M00E28941

TERRY BRYANT
State Bar No.: 03274300
Attorney for Plaintiffs
Terry Bryant LLP
8584 Katy Freeway, Suite 100
Houston, Texas  77024
713-973-8888
713-973-1188 (fax)


OF COUNSEL:
LEILA H. WATSON   (ASB-3023-S74L)
ELIZABETH A. ELLIS  (ASB-3521-A63E)
Attorney For Plaintiffs
CORY, WATSON, CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue
Birmingham, Alabama  35205
205-328-2200
205-324-7896 (fax)


**SERVICE HAS BEEN WAIVED BY MERCK & CO., INC.**

**PURSUANT TO CMO 15, ENTERED IN MDL 1657 IN RE: VIOXX PRODUCT LIABILITY LITIGATION, EASTERN DISTRICT OF LOUISIANA, MERCK & CO., INC. AGREES THAT SERVICE CAN BE ACCOMPLISHED IF PLAINTIFF EMAILS THE FILED COMPLAINT AND THE RULE 4(d) NOTICE TO MDL@wcsr.com. PLAINTIFF WILL ACT PURSUANT TO CMO 15.**

M00GE28942

# EXHIBIT  38

IN RE: VIOXX® PRODUCTS        MDL Docket No. 1657
LIABILITY LITIGATION

**THIS RELATES TO:**    Plaintiff:     _Donald R. Preuninger & Flora N. Preuninger
                                             **(Name)**

  Civil Action No: 2:06-cv-10305

**FIRST AMENDED**
**PLAINTIFF PROFILE FORM**

       Other than in Sections I, those questions using the term "You" should refer to the person who used VIOXX®. Please attach as many sheets of paper as necessary to filly answer these questions.

I.     **CASE INFORMATION**

A. Name of person completing this form: _Flora N. Preuninger_____

B. If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:
1. Social Security Number: _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_____

2. Maiden Or Other Names Used or By Which You Have Been Known: _Ritchie_____

3. Address: _419 Brookwater Dr., Huffman, TX 77336_____

4. State which individual or estate you are representing, and in what capacity you are representing the individual or estate? _Spouse of Donald R. Preuninger_____

5. If you were appointed as a representative by a court, state the:
Court: _N/A_____ Date of Appointment: _N/A_____

6. What is your relationship to deceased or represented person or person claimed to be injured?
_Spouse of Donald R. Preuninger_____

7. If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died: _N/A_____

C. Claim Information

1. Are you claiming that you have or may develop bodily injury as a result of taking VIOXX®?
Yes__X__ No_____ **_If "yes,"_**

     a. What is your understanding of the bodily injury you claim resulted from your use of VIOXX®? _Heart attack and intracranial hemorrhage_____

1

MODE036207

b. When do you claim this injury occurred?  On or about 5/29/00 _____

c. Who diagnosed the condition?  Dr. Vasistha Patel _____

d. Did you ever suffer this type of injury prior to the date set forth in answer to the prior question? Yes_____ No _X__ *If "Yes,"* when and who diagnosed the condition at that time?
_____

e. Do you claim that that your use of VIOXX® worsened a condition that you already had or had in the past? Yes _____ No_X__ *If "Yes,"* set forth the injury or condition; whether or not you had already recovered from that injury or condition before you took VIOXX®; and the date of recovery, if any. _____ _____

D. Are you claiming mental and/or emotional damages as a consequence of VIOXX®?
Yes_X_____ No_____

*If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, and counselor) from whom have sought treatment for psychological, psychiatric or emotional problems during the last ten (10) years, state:

a. Name and address of each person who treated you. 1. Dr. Avner Griver, 19002_____ McKay Dr., Humble, TX 77338. 2. Dr. Chewen Yan, 2002 Holcombe Blvd., Houston,_ TX 77030_____

b. To your understanding, condition for which treated: 1. Speech 2. Depression _____
_____

c. When treated: 1. 6/00-7/13/02, 2. 2005-present _____

d. Medications prescribed or recommended by provider: 1. None, 2. Citalopram _____
_____

## II.   PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX®

A.  Name:  Donald R. Preuninger _____

B.  Maiden or other names used or by which you have been known:  N/A _____

C.  Social Security Number:  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 _____

D.  Address:  419 Brookwater Dr., Huffman, TX 77336 _____

E.  Identify each address at which you have resided during the last ten (10) years, and list when you started and stopped living at each one:

MODED36208

| Address | Dates of Residence |
|---|---|
| 419 Brookwater Dr.<br>Huffman, TX 77336 | 8/98-Present |
| 6022 E. Houston Rd.<br>Houston, TX 77028 | 5/73-8/98 |

F.   Driver's License Number and State Issuing License:  _Previously had 03620139, TX driver's license. No longer drives and now has Texas ID 20394707_                        _

G.   Date and Place of Birth:  _10/30/36, Waco, TX _____

H.   Sex: Male__X___ Female_____

I.   Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:

| Institution | Dates Attended | Course of Study | Diplomas or Degrees |
|---|---|---|---|
| Received GED | 5/94 | General | GED |

J.   Employment Information:
   1. Current employer (if not currently employed, last employer):

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| Carruth Doggett, Inc | 9535 Griggs Rd.<br>Houston, TX 77023 | 1996-1997 | Sales |

   2.   List the following for each employer you have had in the last ten (10) years:

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| Carruth Doggett, Inc | 9535 Griggs Rd.<br>Houston, TX 77023 | 1996-1997 | Sales |
| Stewart & Stevenson | 8777 E. Freeway<br>Houston, TX 77029 | 1992-1996 | Sales |

   3.   Are you making a wage loss claim for either your present or previous employment?
        Yes_____ No __X___
        *If* **"yes,"** state your annual income at the time of the injury alleged in Section 1(C):
   _____   _____   _____

K.   Military Service Information: Have you ever served in the military, including the military reserve or national guard? Yes__X___No _____

   *If 'yes,"* were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition? Yes __X___ No ____

L.   Insurance / Claim Information:

   1.  Have you ever filed a worker's compensation and/or social security disability (SSI or SSD)

3

MODE03620P

claim? Yes__X___ No_____ *If 'yes,"* *to* the best of your knowledge please state:

a. Year claim was filed:_1997_____

b. Nature of disability:_Back injury requiring surgery_____

c. Approximate period of disability: _1997-present_____

2. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)? Yes__X___ No _____ *If 'yes,"* set forth when and the reason. Back surgery in 1997 and 2000 due to on the job injury. Was not able to return to work after the back surgery in 1997._____

3. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury? Yes _____ No __X___ *If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted. _____

M. As an adult, have you been convicted of; or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes_____ No __X__ *If "yes,"* set forth where, when and the felony and/or crime.
_____
_____

## III.  **FAMILY INFORMATION**

A. List for each marriage the name of your spouse; spouse's date of birth (for your current spouse only); spouse's occupation; date of, marriage; date the marriage ended, if applicable; and how the marriage ended (e.g. divorce, annulment, death):1. Lorelei Jean Preuninger, Married 1955-1956, Divorce. 2. Shirley Jean Preuninger, Married 1956-1957, Divorce. 3. Jo Ann Preuninger, Married 1961-1965. 4. Ruth Ann, Married 1966-1970. 5. Flora N. Preuninger, DOB 3/16/43, Retired, Married 3/27/1970-Present_____

B. Has your spouse filed a loss of consortium claim in this action? Yes__X___ No_____

C. To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, Scarlet Fever, Rheumatic Fever, atrial fibrillation, stroke? Yes __X__ No ____ Don't Know ___ *If "yes,"* identify each such person below and provide the information requested.

Name: _Ruby Terry, mother_____

Current Age (or Age at Death): _89_____

4

Type of Problem:  _Hardening of the arteries_____

If Applicable, Cause of Death:  _Breast Cancer_____

D.  If applicable, for each of your children, list his/her name, age and address:
    _None_____   _____

E.  If you are claiming the wrongful death of a family member, list any and all heirs of the decedent.
    _N/A_____


## IV.    VIOXX® PRESCRIPTION INFORMATION

A.  Who prescribed VIOXX® for you?  _Dr. Howard Cotler_____   ___

B.  On which dates did you begin to take, and stop taking, VIOXX®?  _4/25/00-12/14/02____   _____

C.  Did you take VIOXX® continuously during that period?
    Yes____  No_____  Don't Recall__X___
    **OBJECTION: As stated above, Plaintiff does not recall if he took Vioxx continuously every day during the period stated above.**

D.  To your understanding, for what condition 'were you prescribed VIOXX®?  _Back Pain_____

E.  Did you renew your prescription for VIOXX®? Yes___X___ No_____ Don't Recall_____

F.  If you received any samples of VIOXX®, state who provided them, what dosage, how much and when they were provided:  _None_____

G.  Which form of VIOXX® did you take (check all that apply)?
    _____12.5 mg Tablet (round, cream, MRK 74)
    _____12.5 mg Oral Suspension
    __X___25 mg Tablet (round, yellow, MIRK 110)
    _____25 mg Oral Suspension
    _____50 mg Tablet (round, orange, MRK 114)

H.  How many times per day did you take VIOXX®?  _Once per day_____

I.  Did you request that any doctor or clinic provide you with VIOXX® or a prescription for VIOXX®? Yes _____No__ ___ Don't Recall__X___

J.  Instructions or Warnings:

    1.  Did you receive any written or oral information about VIOXX® before you took it? Yes_____ No ___X__ Don't Recall_____

MODE036211

2. Did you receive any written or oral information about VIOXX® while you took it?
   Yes __X__  No_____  Don't Recall_____

3. *If "yes,"*

    a.  When did you receive that information? _At prescription pick-up_____ __

    b.  From whom did you receive it? _Pharmacy _____

    c.  What information did you receive? _Prescription information sheet_____ ___

K. What over-the-counter pain relief medications, if any, were you taking at the same time you were taking VIOXX®? _None that I recall _____

## V.  **MEDICAL BACKGROUND**

A. Height: _5'7"_____

B. Current Weight: _210_____

   Weight at the time of the injury, illness, or disability described in Section 1(C):_175-180_____

C. Smoking/Tobacco Use History: ***Check the answer and fill in the blanks applicable to your history of smoking and/or tobacco use.***

    ____Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
    _X_Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
       a.  Date on which smoking/tobacco use ceased: _1991_____
       b.  Amount smoked or used: on average_1 pack__ per day for_40__ years.
    ____Current smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff.
       a.  Amount smoked or used: on average__ per day for___ years.
    _____Smoked different amounts at different times.

D. Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes_____ No__X__ ***"If yes," "fill in the appropriate blank*** with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXX® up to the time that you sustained the injuries alleged in the complaint:
    _____drinks per week,
    _____drinks per month,
    _____drinks per year, ***or***
   Other (describe):_____

E. Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX® related injury?"

MODE03621

Yes_____ No__X___ Don't Recall_____

*If "yes",* identify each substance and state when you first and last used it. _____

F.  Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1.  Cardiovascular surgeries, including, but not limited to, the following, and specify for what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:

| Surgery | Condition | When | Treating Physician | Hospital |
|---------|-----------|------|--------------------|----------|
| None | | | | |

2.  Treatment/Interventions for heart attack, angina (chest pain), or lung ailments.

| Treatment/Intervention | When | Treating Physician | Hospital |
|------------------------|------|--------------------|----------|
| Cath/Stents x 2 | 3/16/06 | Dr. Biswajit Kar | VA Medical Center |

3.  To your knowledge, have you had any of the following tests performed: chest X-ray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, bubble/microbubble study, or Holter monitor? Yes__X___ No_____ Don't Recall_____ *If "yes,"* answer the following:

| Diagnostic Test | When | Treating Physician | Hospital | Reason |
|-----------------|------|--------------------|----------|--------|
| EKG x 5 | 5/29/00 | Dr. Madaiah Revana | Northeast Medical Center | Chest pain |
| Head CT | 5/30/00 | Dr. Madaiah Revana | Northeast Medical Center | Chest pain, SOB |
| CXR | 5/30/00 | Dr. Madaiah Revana | Northeast Medical Center | Chest pain |
| EKG | 5/30/00 | Dr. Madaiah Revana | Northeast Medical Center | Chest pain |
| CXR | 6/1/00 | Dr. Vashista Patel | The Methodist Hospital | Heart attack |
| Brain CT | 6/2/00 | Dr. Vashista Patel | The Methodist Hospital | Stroke |
| CXR | 6/3/00 | Dr. Vashista Patel | The Methodist Hospital | Heart attack |
| Brain CT | 6/5/00 | Dr. Vashista Patel | The Methodist Hospital | Stroke |
| CXR | 6/6/00 | Dr. Vashista Patel | The Methodist Hospital | Heart attack |
| Head CT | 4/7/04 | Dr. Pavan Pinnamaneni | Ben Taub General Hospital | Car accident |
| CXR | 4/12/04 | Dr. Jaime Roman-Pavajeau | Ben Taub General Hospital | Car accident |

7

MODE036213

## VI.  **DOCUMENTS**

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking **"yes"** or **"no."** Where you have indicated **"yes,"** please attach the documents and things to your responses to this profile form.

A. Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form. Yes __X__ No_____
**OBJECTION:  All records were produced on or about March 9, 2007 by CD, and June 14, 2007 by uploading to Lexis File and Serve.  Additional records will be supplemented as they are received.**

B. Decedent's death certificate (if applicable). Yes_____ No_____N/A

C. Report of autopsy of decedent (if applicable). Yes_____ No_____ N/A

## VII  **LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION**

*List the name and address of each of the following:*

A. Your current family and/or primary care physician:

| Name | Address |
|------|---------|
| Dr. Raye Hurwitz | 2002 Holcombe Blvd. Houston, TX 77030 |

B. To the best of your ability, identify each of your primary care physicians for the last ten **(10)** years.

| Name | Address | Approximate Dates |
|------|---------|-------------------|
| Dr. Raye Hurwitz | 2002 Holcombe Blvd. Houston, TX 77030 | 2001-present |
| Dr. David Carpenter | 18842 Memorial S, Ste 206 Humble, TX 77338 | 1997-2000 |

C. Each hospital, clinic, or healthcare facility where you have received inpatient treatment (including treatment in an emergency room) during the last ten **(10)** years.

| Name | Address | Admission Dates | Reason for Admission |
|------|---------|-----------------|----------------------|
| St. Lukes Hospital | 6720 Berther Ave. Houston, TX | 2/23/98-2/27/98 | Back Surgery |
| Northeast Medical | 18951 N. Memorial Drive Humble, TX  77338 | 5/29/00-5/30/00 | Chest pain |

8

MODE036214

| Center | | | |
|---|---|---|---|
| Memorial Hermann Hospital | 6411 Fannin Street Houston, TX  77030 | 1/24/00-1/28/00 | Back surgery |
| Ben Taub General Hospital | 1504 Taub Loop Houston, TX 77030 | 4/7/04-4/26/04 | Car accident |
| The Methodist Hospital | 6565 Fannin St. Houston, TX 77030 | 4/26/04-5/21/04 5/30/00-6/14/00 | Car accident Heart attack & Stroke |
| Healthsouth Rehabilitation Hospital | 19002 McKay Dr. Humble, TX 77338 | 6/14/00-7/13/00 | Rehab |
| VA Medical Center | 2002 Holcombe Blvd. Houston, TX 77030 | 6/03 (Don't have exact dates at this time).  3/16/06-3/19/06 | Internal cyst near kidney  Stents |
| Jacinto City Healthcare Center | 1405 Holland Ave. Houston, TX 77029 | 5/26/04-3/05 | Rehab |

D.  Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten **(10)** years.

| Name | Address | Admission Dates | Reason for Admission |
|---|---|---|---|
| Aquatic Care Programs, Inc. | 1910 First St. Humble, TX 77338 | 1998 1999 | Physical therapy |
| Healthsouth Rehabilitation Hospital | 19002 McKay Dr. Humble, TX 77338 | 7/15/00-11/7/00 | Rehab |
| River Oaks Imaging & Diagnostic | 2900 Richmond Ave. Houston, TX 77098 | 7/13/98 11/1/99 | Spine XR Spine XR |
| Columbia Kingwood Medical Center | 22999 Hwy 59 N Kingwood, TX 77339 | 11/22/00 1/29/02 | Colonoscopy Shoulder pain |

E.  Each physician or healthcare provider from whom you have received treatment in the last ten **(10)** years.

| Name | Address | Dates of Treatment |
|---|---|---|
| Dr. Howard B. Cotler | 1200 Binz St. Ste 670 Houston, TX 77004 | 1998-Present |
| Dr. David Carpenter | 18842 Memorial S, Ste 206 Humble, TX 77338 | 1997-2000 |

MODE036215

| | | |
|---|---|---|
| Dr. Daniel Fletcher | 6720 Berther Ave.<br>Houston, TX | 2/98 |
| Dr. Christy Chai | 1504 Taub Loop<br>Houston, TX 77030 | 4/04 |
| Dr. Howard Hood | 22999 Hwy 59 N<br>Kingwood, TX 77339 | 1/02 |
| Dr. Jaime Roman-Pavajeau | 1504 Taub Loop<br>Houston, TX 77030 | 4/04 |
| Dr. Kimberly Takahashi | 1504 Taub Loop<br>Houston, TX 77030 | 4/04 |
| Dr. Madaiah Revana | Humble Cardiology Associates<br>9550 Memorial Blvd.<br>Humble, TX 77338 | 5/00 |
| Dr. Marie Shaw | 18951 N. Memorial Drive<br>Humble, TX  77338 | 5/00 |
| Dr. Meena Shatby | 1504 Taub Loop<br>Houston, TX 77030 | 4/04 |
| Dr. Pavan Pinnamaneni | 1504 Taub Loop<br>Houston, TX 77030 | 4/04 |
| Dr. Ronald Lindsey | 6565 Fannin St.<br>Houston, TX 77030 | 4/04-9/06 |
| Dr. Ragna Nathan | Digestive Disease Consultants<br>9816 Memorial Blvd, Ste 206<br>Humble, TX 77338 | 11/00 |
| Dr. Stephen Fletcher | 6140 Fannin Ste 1400<br>Houston, TX 77030 | 1/00 |
| Dr. Sonya Sloan | 1504 Taub Loop<br>Houston, TX 77030 | 4/04 |
| Dr. Stuart Solomon | 6565 Fannin St.<br>Houston, TX 77030 | 5/00 |
| Dr. Victor Fainstein | Infectious Disease Associates<br>6560 Fannin St, Ste 1540<br>Houston, TX 77030 | 6/00 |
| Dr. Vashista Patel | 18955 Memorial Blvd., Ste 230<br>Humble, TX 77338 | 5/00-6/00 |
| Dr. Avner Griver | 19002 McKay Dr.<br>Humble, TX 77338 | 6/00-7/00 |
| Dr. Edie Shulman | UTX General Internal Medicine<br>6410 Fannin St, Ste 600<br>UT Health Professional Bldg<br>Houston, TX 77030 | 4/01 |
| Dr. Raye Hurwitz | 2002 Holcombe Blvd.<br>Houston, TX 77030 | 2001-present |
| Dr. Biswajit Kar | Delgado Cardiovascular Associates<br>6624 Fannin St, Ste 2180<br>Houston, TX 77030 | 2006-present |

M0DE036216

F.  Each pharmacy that has dispensed medication to you in the last ten **(10)** years.

| Name | Address |
|------|---------|
| VA Pharmacy | 2002 Holcombe Blvd. Houston, TX 77030 |
| Wal-Mart | 23561 Hwy 59 Porter, TX 77365 |
| Walgreen's | 7440 FM 1960 E. Humble, TX 77346 |

G.  If you have submitted a claim for social security disability benefits in the last ten **(10)** years, state the name and address of the office that is most likely to have records concerning your claim.

| Name | Address |
|------|---------|
| None | |

H.  If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim.

| Name | Address |
|------|---------|
| CIVA Insurance | 6565 West Loop South Bellaire, TX 77401 |

M0DE036217



15581386

Jul 16 2007
10:56AM

## CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in the Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.

_Flora Preuninger_    _FLORA PREUNINGER_    _7-11-07_
Signature                Print Name           Date

# EXHIBIT  39

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

PAUL and ARLENE NOE,

        Plaintiffs,

v.

MERCK & CO., INC., a foreign
Corporation, WIGBERTO C.
CAMOMOT, M.D., a West Virginia
Defendant, and WIGBERTO C.
CAMOMOT, M.D., INC., a West
Virginia Corporation,

        Defendants.

Civil Action No. 06-C-391
Honorable Michael Thornsbury

WCS&R

NOV 0 2 2006

RECEIVED

## AMENDED COMPLAINT

Plaintiffs, for their Amended Complaint, say as follows:

1.      Paul Noe is a resident of Mingo County, West Virginia, who purchased and ingested Vioxx®, which was conceived, designed, developed, formulated, manufactured, packaged, labeled, marketed, advertised, sold and placed in the stream of commerce to persons, firms and corporations for resale to plaintiff and for direct sale to plaintiff as hereinafter alleged.

2.      That at all times relevant hereto, Plaintiff, Arlene Noe has been legally married to and is the wife of Paul Noe.

3.      Defendant, Merck & Co., Inc. (hereinafter referred to as "Merck," whether acting by and through its agents, servants, employees, co-conspirators, joint venturers

and/or subsidiaries), is a foreign corporation with its principal place of business in Whitehouse Station, New Jersey. At all relevant times herein, Merck was and is in the business of developing, designing, conceiving, formulating, manufacturing, packaging, labeling, marketing, advertising, distributing and selling drugs, including, but not limited to, Vioxx® in the United States, including the State of West Virginia, for consumption and ingestion by citizens and residents of this state, including Mingo County, West Virginia.

4.     At all times complained of herein, defendant Merck was, by and through its agents, servants and employees, a joint venturer, including the other named defendants.

5.     At all times complained of herein, defendant physician, Wigberto C. Camomot, M.D. (hereinafter referred to as "physician"), prescribed the drug Vioxx to Paul Noe, and for the acts complained of herein was acting as agent and servant for the Merck Defendant or as a joint venturer with Merck.

6.     The defendant, Wigberto C. Camomot, M.D., Inc. (hereinafter referred to as "physician defendant"), was at the time of the grievances herein a West Virginia corporation with its principal place of business in Red Jacket, West Virginia, engaged in the business of providing health care services to the public, including Paul Noe, in and around Mingo County, West Virginia.

7.     At all times complained of herein, defendant Wigberto C. Camomot, M.D. was acting as agent, servant and employee of defendant, Wigberto C. Camomot, M.D., Inc.

M005A33672

8.     That at all times relevant hereto, the plaintiff, Paul Noe, was a paying patient of the physician and physician defendants.

9.     That the physician and physician defendants, by undertaking to provide medical care and treatment to Plaintiff Paul Noe, owed him a duty to provide such care and treatment within the appropriate standard of care.

10.     The drug Vioxx contained toxins and when taken by human beings had a deleterious effect on the health of human beings, including damaging their heart, and other related and unrelated damages, both temporary and permanent and the drugs were unreasonably dangerous.

11.     The defendants knew or should have known that the drug was dangerous and defective and that their acts and/or omissions would cause injury and damage to persons who ingested them, including Paul Noe.

12.     Defendant Merck negligently, carelessly, knowingly, recklessly, wrongfully and intentionally designed, formulated, tested, manufactured, labeled, distributed, advertised, marketed, prescribed and placed the drug in the stream of commerce for sale in the United States, including Mingo County, West Virginia, and sold the drug to Mingo County, West Virginia residents, including Paul Noe.

13.     Defendant Merck set about to and did advertise, market and directly and indirectly caused to be ingested by Paul Noe, plaintiff, the drug which said use was dangerous, untested and unapproved.

14.     Defendant Merck knew or should have known of the dangers of the drug and owed a duty to provide information to the public, physicians, clinics, pharmacies

3

M005A33673

and others of the dangers of the product and the proper and appropriate warnings which would clearly advise physicians, clinics and the public of the dangers of the use of said drug and the effectiveness of said drug.

15.    Defendant Merck intentionally, knowingly, recklessly and negligently failed and refused to advise clinics, physicians, the public and others of the aforesaid dangers of the product and the effectiveness of said drug.

16.    Defendant Merck set about to and did encourage and enlist physicians and others to advertise, market, promote, prescribe and sell the drug to individuals and to mislead individuals to purchase and ingest the drug and, in so doing, said physicians and clinics were acting as the drug manufacturer's agents, ostensible agents, servants, employees, conspirators and/or joint venturers.

17.    Defendant Merck negligently, knowingly, recklessly and intentionally failed and refused to use due care in conceiving, designing, researching, testing, formulating, packaging, advertising, marketing, selling, prescribing and placing the drug in the stream of commerce.

18.    Defendant Merck negligently, knowingly, recklessly and intentionally failed and refused to properly supervise, instruct and inform by warnings, instructions, training and publication the dangers associated with the use of the drug and of the short term and the long term periodic diagnostic medical examinations reasonably necessary for persons who had ingested the drug.

19.    Defendant Merck negligently, knowingly, recklessly and intentionally withheld information from the public, physicians, pharmacies, clinics, the medical

M005A33674

community, and others who had a right to know, of information which would have prevented the plaintiff from being exposed to said drug.

20.     Defendant Merck negligently, knowingly, recklessly and intentionally encouraged the widespread use of the drug which defendant knew or should have known would reasonably harm the plaintiff.

21.     Defendant Merck set about intentionally and knowingly, by acts and omissions, in the manner aforesaid to withhold information from the public, physicians and others who had a right to know, including Paul Noe, information which described the true dangers associated with the use of the drug for the sole and exclusive reason that defendant wished to make a profit from the distribution and sale of said drug.

22.     Plaintiff did not have sufficient information to determine the safety of the drug and, therefore, relied upon the superior knowledge of defendant in deciding to purchase the drug, and, as a result of the reliance on defendant's false and misleading affirmative misrepresentations and intentional omissions and hiding of relevant, significant and material facts and information, plaintiff was misled into believing the drug was safe and effective for use in the manner prescribed and/or taken.

23.     Defendant Merck withheld information which it had in its possession concerning research, testing, lack of research and testing, studies of humans who had taken the drug and who had been given the drug, which demonstrated that the drug causes damage to human's, heart and kidneys, as well as other information which medically, legally, scientifically and ethically plaintiff had a right to know before ingesting and which defendant had a duty under the law of West Virginia to disclose.

M005A33675

24.     Defendant Merck provided false and misleading information concerning its product in that it provided only partial information concerning ill effects of the drug when it knew or should have known and had a duty to know and inform of other dangers associated with the use of the drug.

25.     The defendant's failure to inform plaintiff of all of said information misled plaintiff into believing it was safe and effective to ingest the drug.

26.     As a proximate result of the aforesaid acts and conduct by defendant, acting for and on its own behalf and as agents, ostensible agents, employees, conspirators and joint venturers of others, the drug was placed into the stream of commerce, distributed and sold and ingested by the plaintiff, and plaintiff was damaged as hereinafter alleged.

## COUNT I

Plaintiff incorporates all allegations above the same as if fully restated and re-alleged and plaintiff further complains and says as follows:

27.     The defendant Merck is a manufacturer and/or supplier and/or distributor of Vioxx®.

28.     The aforesaid acts and conduct of defendant in the manner as alleged above were negligent and as a proximate result Paul Noe incurred the following damages:

a.     Medical and hospital bills for treatment of injuries;

b.     Physical injury,

c.     Severe and significant emotional distress, and mental pain and

M005A33676

suffering;

d.   Humiliation, embarrassment and fear;

e.   Loss of enjoyment of life;

f.   Loss of income, past and present;

g.   Disability;

h.   Disfigurement;

i.   Annoyance and inconvenience; and/or

j.   Other damages, which, under the law and circumstances, plaintiff is entitled to, including attorney fees and costs associated with prosecution of this case.

29.   In addition to the damages above, plaintiff's spouse, Arlene Noe, as a proximate result of plaintiff's ingestion of the drug has incurred the following damages:

a.   Severe and great sorrow, mental anguish and solace, society, companionship, comfort, guidance, kindly offices and advice of the plaintiff;

b.   Loss of income of the plaintiff, services, protection, care and assistance provided by the plaintiff;

c.   Expenses for the care, treatment and hospitalization of the plaintiff incident to this injury;

d.   The damages suffered by the plaintiff; and

e.   Emotional distress and loss of consortium and society.

M005A33677

30.    In addition, the acts and conduct of defendant as alleged above entitles plaintiff to punitive damages.

WHEREFORE, your plaintiff demands judgment against defendants and each of them for compensatory damages; punitive damages; the costs and disbursements of this action; a trial by jury; and for such other, further and general relief as the Court deems just and proper.

## COUNT II

For plaintiff's second Count, plaintiff realleges each allegation of Count I, the same as if fully stated herein, and further complains and says:

31.    The defendant at the time of the sale of said product, impliedly warranted to potential and actual users and purchasers thereof, including the plaintiff, that the product was reasonably fit and safe for the use for which it was intended, including and during the time Mr. Noe was using it as alleged herein.

32.    Mr. Noe relied upon the superior skill and knowledge of the defendant in designing and testing and manufacturing the product which could be used safely and upon the implied warranty that it was so designed, tested and manufactured and that he would be provided appropriate warnings and instructions.

33.    The product was not suitable and safe for the use for which it was intended but was, on the contrary, dangerous to be used in the manner used by Mr. Noe, of which fact defendant failed to make plaintiff aware, and the defendant thereby breached the said warranty, which breach proximately caused the injury of plaintiff as aforesaid.

M005A33678

34.     The defendant knew or should have known of the dangerous nature of the product and made no attempt to warn plaintiff as to the danger inherent in its use or to recall and/or correct the defect.

35.     As a proximate result of the defendant's breach of warranty and failure to warn, your plaintiff suffered a heart attack on April 8, 2003 and plaintiff was damaged as aforesaid.

36.     The acts and conduct of defendant were reckless, wrongful and willful as aforesaid.

WHEREFORE, your plaintiff demands judgment against defendants and each of them for compensatory damages; punitive damages; the costs and disbursements of this action; a trial by jury; and for such other, further and general relief as the Court deems just and proper.

## COUNT III

Plaintiff realleges each allegation of Counts I and II, the same as if herein restated, and further complains and says as follows:

37.     Defendant is engaged in the business of designing, manufacturing and selling pharmaceutical products; the defendant sold the aforesaid product.

38.     The aforesaid product was defectively tested, designed and manufactured by defendant and the said defective condition caused by the defective manufacture and design rendered the product unreasonably and inherently dangerous.

M00SA33679

39.     Defendant failed to warn plaintiff, Mr. Noe, of the danger foreseeable by defendant and/or failed to recall and correct the defect when the product was used as aforesaid, and thereby the said product was unreasonably and inherently dangerous.

40.     At the time your plaintiff was injured, he was using the product in a manner that was reasonably foreseeable by defendant.

41.     That the acts and conduct of the defendant, as aforesaid, including failure to recall the product and warn plaintiff were the proximate cause of plaintiff's injury and the defendant are strictly liable in tort to the plaintiff.

42.     That prior to plaintiff's injury, the defendant knew or should have known of the dangerous nature of the product and made no attempt to warn any of the users of the product as to the danger inherent in its use.

43.     That as a proximate result of the acts and conduct of defendant, your plaintiff was injured and plaintiff was damaged as aforesaid.

44.     The acts and conduct of defendant were reckless, wrongful and willful as aforesaid.

WHEREFORE, your plaintiff demands judgment against defendants and each of them for compensatory damages; punitive damages; the costs and disbursements of this action; a trial by jury; and for such other, further and general relief as the Court deems just and proper.

## COUNT IV

Plaintiff realleges each allegation of Counts I, II and III, the same as if herein restated, and further complains and says as follows:

10

M005A33680

45.     That the physician and physician defendants, by undertaking to provide medical care and treatment to Plaintiff Paul Noe, owed him a duty to provide such care and treatment within the appropriate standard of care.

46.     That through, on or about September 30, 2004, Defendants, acting individually and by and through its agents, servants, ostensible agents and/or employees acting within the scope of their employment, agency or ostensible agency, deviated from the applicable standard of care and were negligent in regard to their care and treatment of Plaintiff, Paul Noe, , in the following ways, among others:

a.     Failing to provide and document adequate, proper and safe medical care, advice, monitoring, and treatment to the said Paul Noe during the course of examinations and treatment of him.

b.     Prescribing unsafe dosages of Vioxx® to the said Paul Noe during the course of treatment of him through, on, or about, September 30, 2004.

c.     Failing to advise and document risks and benefits during the course and treatment of the said Paul Noe regarding both temporary and permanent deleterious effects of excessive and chronic ingestion of the drug Rofecoxib (also distributed in West Virginia under the brand name Vioxx®) on the health of said Paul Noe to include, but not limited to, a heart attack.

d.     Failing to obtain and document adequate informed consent during the course and treatment of the said Paul Noe regarding both temporary and permanent deleterious effects of the chronic and excessive ingestion of the drug Rofecoxib (also distributed in West Virginia under the brand name Vioxx®) on the health of said Paul Noe to include, but not limited to, a heart attack.

47.     That defendants and each of them, acting negligently as aforesaid, jointly proximately caused damages to plaintiff in that plaintiff suffered a heart attack on April 8, 2003, and plaintiff was damaged as aforesaid.

M005A33681

WHEREFORE, your plaintiff demands judgment against defendants and each of them for compensatory damages; punitive damages; the costs and disbursements of this action; a trial by jury; and for such other, further and general relief as the Court deems just and proper.

PAUL and ARLENE NOE

By Counsel

Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia  25301
(304) 342-3106
*Counsel for Plaintiffs*

and

Thomas W. Pettit
West Virginia State Bar No. 2886
Thomas W. Pettit, L.C.
945 Main Street
Post Office Box 189
Barboursville, West Virginia 25504
(304) 736-8700
*Counsel for Plaintiffs*

F:\4\212\Client Contacts\Noe, Paul\p001.doc

M005A33682

# AMENDED SUMMONS

## IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

PAUL and ARLENE NOE,

             Plaintiffs,

Civil Action No. 06-C-391

v.

MERCK & CO., INC., a foreign
Corporation, WIGBERTO C.
CAMOMOT, M.D., a West Virginia
Defendant, and WIGBERTO C.
CAMOMOT, M.D., INC., a West
Virginia Corporation,

. . . . . . . . **Merck & Co., Inc.**
**Corporate Headquarters**
**One Merck Drive**
**Post Office Box 100**
**Whitehouse Station, NJ 08889-0100**

       Defendants.

To the above-named Defendant: **MERCK & CO., INC.:**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby Summoned and required to serve upon, Marvin W. Masters, plaintiff's attorney, whose address is 181 Summers Street, Charleston, West Virginia, 25301 an answer including any related counterclaim you may have to the Amended Complaint filed against you in the above styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer to the Amended Complaint within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above styled civil action.

Dated: 10·17·06

_____
                 Clerk of Court

**OFFICE OF THE SECRETARY OF STATE**
**STATE OF WEST VIRGINIA**



**Betty Ireland**
**Secretary of State**

Building 1, Suite 157-K
1900 Kanawha Blvd., East
Charleston, West Virginia 25305
Telephone: 304-558-6000
Toll Free: 866-SOS-VOTE
www.wvsos.com

# LEGAL NOTICE

Merck & Co., Inc.
C. T. Corporation System
P.O. Box 951
Charleston, WV  25323

October 30, 2006

Civil Action: 06-C-391

I am enclosing:

——— summons
——— notice
——— order
——— petition
——— motion
——— interrogatories
——— suggestions
——— subpoena duces tecum
——— summons and complaint
——— 3rd party summons and complaint
——— summons returned from post office
——— certified return receipt

——— original
——— affidavit
——— answer
——— cross-claim
——— counterclaim
——— request
——— demand
——— default judgement
——— complaint
——— notice of mechanic's lien
——— suggestee execution
___1___ summons and amended complaint

which was served on the Secretary at the State Capitol in her capacity as your statutory attorney-in-fact.  According to law, I have accepted service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact.  Please address any questions about these documents directly to the court or to the plantiff's attorney, shown in the enclosed paper.  Please do not call the Secretary of State's office.*

Sincerely,

*Vicki Haught*

Vicki Haught
Manager

M00SA33684

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
11/01/2006
Log Number 511611775

**TO:** Ellen Gregg
Womble Carlyle Sandridge & Rice, PLLC
301 North Main Street, Suite 300
Winston-Salem, NC, 27101

**RE:** **Process Served in West Virginia**

**FOR:** Merck & Co., Inc. (Domestic State: NJ)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Paul and Arlene Noe, Pltfs. vs. Merck & co., Inc., Dft., Wigberto C. Camomot, MD and Wigberto C. Camomot, M.D., Inc. |
| **DOCUMENT(S) SERVED:** | Amended Summons and Amended Complaint |
| **COURT/AGENCY:** | Mingo County Circuit Court, WV
Case # 06-C-391 |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - Personal Injury/Vioxx |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Charleston, WV |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 11/01/2006 postmarked on 10/31/2006 |
| **APPEARANCE OR ANSWER DUE:** | 30 days from the date served on West Virginia Secretary of State, which was October 30, 2006. |
| **ATTORNEY(S) / SENDER(S):** | Marvin W. Masters
The Masters Law Firm LC
181 Summers St.
Charleston, WV, 25301
304-342-3106 |
| **REMARKS:** | Service of Process made on West Virginia Secretary of State and forwarded to C T Corporation System, the designated agent. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Priority Overnight, 798533599297
Email Notification, Debra A Bollwage DEBRA_BOLLWAGE@MERCK.COM
Email Notification, Kristin L. Sunderman kristin_sunderman@merck.com |
| **SIGNED:**
**ADDRESS:** | C T Corporation System
707 Virginia Street, East
Charleston, WV, 25301 |
| **TELEPHONE:** | 304-345-8900 |



Page 1 of  1 / SB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of the package only, not of its contents.

M005A33685