UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
|     PAUL NOE and ARLENE NOE, Plaintiffs, | * | SECTION L |
| | * | |
|        versus | * | JUDGE ELDON E. FALLON |
| | * | |
|     MERCK & CO., INC., and WIGBERTO C. | * | MAGISTRATE JUDGE |
|       CAMAMOT, M.D., INC., Defendants, | * | KNOWLES |
| | * | |
|     Case No. 07-3311, | * | |
| | * | |
|         & | * | |
| | * | |
|     DONALD R. PREUNINGER and FLORA N. | * | |
|       PREUNINGER, Plaintiffs, | * | |
| | * | |
|        versus | * | |
| | * | |
|     MERCK & CO., INC., Defendant, | * | |
| | * | |
|     Case No. 06-10305, | * | |
| | * | |
|         & | * | |
| | * | |
|     VIET TRAN, Plaintiff, | * | |
| | * | |
|        versus | * | |
| | * | |
|     MERCK & CO., INC., Defendant, | * | |
| | * | |
|     Case No. 07-0368, | * | |
| | * | |
|         & | * | |
| | * | |
|     PAMELA TRIBBY et al., Plaintiffs, | * | |
| | * | |
|        versus | * | |
| | * | |
|     MERCK & CO., INC., Defendant, | * | |
| | * | |

Case No. 07-4118,                                    *
                                                     *
                    &                                *
                                                     *
DAVID WYSER, Plaintiff,                              *
                                                     *
    versus                                           *
                                                     *
MERCK & CO., INC., Defendant,                        *
                                                     *
Case No. 07-2695.                                    *
                                                     *
* * * * * * * * * * * * * * * * * * * * * * * * *    *
                                                     *
                                                     *
                                                     *
                                                     *
                                                     *
                                                     *
                                                     *
                                                     *
                                                     *
                                                     *


## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................................ 1

    A.    The Withdrawal Of Vioxx From The Market And The Ensuing Media Blitz ...................................................................................................................... 1

    B.    The Plaintiffs Addressed By This Motion ........................................................ 8

    C.    The *Cain* Class Action ...................................................................................... 9

STANDARD FOR SUMMARY JUDGMENT ................................................................. 10

ARGUMENT .................................................................................................................... 10

I.    THE CLAIMS OF CALIFORNIA PLAINTIFFS ROBELLO AND TRAN ARE TIME-BARRED .................................................................................................... 11

    A.    The California Plaintiffs' Claims Are Subject To Separate Choice-Of-Law Analyses ................................................................................................... 11

        1.    Louisiana Choice-Of-Law Rules Apply To Robello's Claims .............. 11

        2.    Under California Choice-Of-Law Principles, Tran's Claims Are Governed Exclusively By California Law ............................................. 13

    B.    Robello's Claims Are Time-Barred Under Louisiana Law ............................... 14

        1.    Based On Indisputable Facts, Robello's Claims Accrued In Louisiana No Later Than September 30, 2004 As A Matter Of Law ...... 15

        2.    Based On Indisputable Facts And Robello's Own Allegations, Merck's Alleged Fraudulent Concealment Could Only Toll The Limitations Period To September 30, 2004 – At The Latest ................. 15

        3.    Plaintiff's Claims Are Not Saved By *American Pipe* Tolling ................ 16

    C.    The Claims of Plaintiffs Robello and Tran Are Time-Barred Under California Law ................................................................................................... 19

        1.    Under California Law, The Discovery Rule Was Triggered – At The Latest – By The Media Coverage Following The Withdrawal Of Vioxx ............................................................................................... 20

        2.    Plaintiffs' Claims Are Not Saved By The Doctrine Of Fraudulent Concealment ......................................................................................... 22

        3.    Plaintiffs' Claims Are Not Saved By *American Pipe* Tolling ............... 23

        4.    Plaintiffs' Other Claims Must Also Be Dismissed ................................ 24

II.    INDIANA LAW BARS THE CLAIMS OF PLAINTIFF WYSER ............................. 26

    A.    Under Relevant Choice-Of-Law Rules, Plaintiff's Claims Are Governed By Indiana Limitations Law ................................................................................ 26

    B.    Indiana Limitations Rules Bar The Claims Of Plaintiff Wyser ......................... 27

# TABLE OF CONTENTS
(continued)

**Page**

1. Under Indiana Law, The Discovery Rule Was Triggered – At The Latest – By The Avalanche Of News Coverage Following The Withdrawal Of Vioxx ........................................................................ 27

2. Fraudulent Concealment Tolling Is Not Available To Plaintiff As A Matter Of Law ............................................................................ 29

3. Plaintiff's Claims Are Not Saved By *American Pipe* Tolling ................. 30

4. Plaintiff's Other Claims Are Similarly Barred ...................................... 32

III. TEXAS LAW BARS THE PREUNINGERS' CLAIMS .............................................. 33

    A. Under Relevant Choice-Of-Law Rules, Plaintiffs' Claims Are Governed By Texas Limitations Law ..................................................... 33

    B. Texas Limitations Rules Bar The Preuningers' Claims ............................ 33

        1. Under Texas Law, The Discovery Rule Was Triggered – At The Latest – By The Avalanche Of News Coverage Following The Withdrawal Of Vioxx ....................................................................... 34

        2. Fraudulent Concealment Tolling Is Not Available To Plaintiffs As A Matter Of Law .......................................................................... 36

        3. Plaintiffs' Claims Are Not Saved By *American Pipe* Tolling ................. 37

        4. Plaintiffs' Other Claims Are Also Barred Under Texas Law ................. 40

IV. WEST VIRGINIA LAW BARS THE NOES' CLAIMS .............................................. 41

    A. Under Applicable Choice-Of-Law Rules, West Virginia Law Applies .............. 41

    B. West Virginia Limitations Rules Bar Plaintiffs' Claims ..................................... 42

        1. Under West Virginia Law, The Discovery Rule Was Triggered – At The Latest – By The Avalanche Of News Coverage Following The Withdrawal Of Vioxx ....................................................................... 43

        2. Fraudulent Concealment Tolling Is Not Available To Plaintiffs As A Matter Of Law. .......................................................................... 44

        3. Plaintiffs' Claims Are Not Saved By *American Pipe* Tolling ................. 46

        4. Plaintiffs' Other Claims Are Similarly Barred Under West Virginia Law ............................................................................................... 47

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Harron,*
No. 97-2547, 1999 U.S. App. LEXIS 21937 (4th Cir. 1999) .................................. 42

*Allied Resin Corp. v. Waltz,*
574 N.E.2d 913 (Ind. 1991) ...................................................................... 28

*Am. Bank of Commerce v. Corondoni,*
169 Cal. App. 3d 368 (Cal. Ct. App. 1985) ........................................... 13

*American Pipe Construction Co. v. Utah,*
414 U.S. 538 (1974) ......................................................................16, 18, 39

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .............................................................................. 10

*Anderson v. Merck & Co., Inc.,*
MDL Case No. 05-2572 (2004) ............................................................ 16

*Armstrong v. Martin Marietta Corp.,*
138 F.3d 1374 (11th Cir. 1998) ............................................................ 17

*Arnold v. Dirrim,*
398 N.E.2d 426 (Ind. Ct. App. 1979) ............................................. 30, 31

*Ashland Chem. Co. v. Provence,*
129 Cal. App. 3d 790 (Cal. Ct. App. 1982) .................................... 13, 14

*Baker Hughes, Inc. v. Keco R & D, Inc.,*
12 S.W.3d 1 (Tex. 1999)......................................................................... 33

*Barnes v. A.H. Robins Co.,*
476 N.E.2d 84 (Ind. 1985) .................................................................... 27

*Bell v. Showa Denko K.K.,*
899 S.W.2d 749 (Tex. Ct. App. 1995)................................................... 37

*Bradford v. Vento,*
48 S.W.3d 749 (Tex. 2001).................................................................... 41

*Burnett v. N.Y. Cent. R. Co.,*
380 U.S. 424 (1965) ................................................................................ 1

*Cardoso v. Am. Med. Sys., Inc.,*
183 Cal. App. 3d 994 (Cal. Ct. App. 1986) .......................................... 25

*Carlin v. Superior Court,*
920 P.2d 1347 (1996) ............................................................................ 26

*Childs v. Haussecker,*
974 S.W.2d 31 (Tex. 1998)..................................................................... 34

# TABLE OF AUTHORITIES
(continued)

**Page**

*Clark v. Baxter Healthcare Corp.*,
   83 Cal. App. 4th 1048 (Cal. Ct. App. 2000) ................................................................. 25, 26

*Crofton v. Amoco Chem. Co.*,
   No. 14-98-01412-CV, 1999 Tex. App. LEXIS 9126
   (Tex. Ct. App. Dec. 9, 1999) .................................................................................34, 35, 36

*Crown, Cork & Seal Co. v. Parker*,
   462 U.S. 345 (1983) .................................................................................................... 16, 39

*Davis v. Geo S. Olive & Co.*,
   731 F. Supp. 1380 (S.D. Ind. 1990) ................................................................................. 32

*DeGussa Corp. v. Mullens*,
   744 N.E.2d 407 (Ind. 2001) .............................................................................................. 27

*Evans v. CanadianOxy Offshore Prod. Co.*,
   730 So. 2d 466 (La. App. 3d Cir. 1998) ........................................................................... 14

*Evenson v. Osmose Wood Preserving Co. of Am.*,
   899 F.2d 701 (7th Cir. 1990) ............................................................................................ 28

*Ferens v. John Deere Co.*,
   494 U.S. 516 (1990) .............................................................................................13, 26, 33

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ............................................................................................... 20, 21

*Gaither v. City Hosp.*,
   487 S.E.2d 901 (W. Va. 1997) ......................................................................................... 43

*Goodwin v. Bayer Corp.*,
   624 S.E.2d 562 (W. Va. 2005) .................................................................................... 43, 44

*Grant v. Austin Bridge Constr. Co.*,
   725 S.W.2d 366 (Tex. Ct. App. 1987) .............................................................................. 36

*Grisham v. Philip Morris U.S.A., Inc.*,
   151 P.3d 1151 (Cal 2007) ................................................................................................. 21

*Horn v. A.O. Smith Corp.*,
   50 F.3d 1365 (7th Cir. 1995) ............................................................................................ 29

*Horvath v. Davidson*,
   264 N.E.2d 328 (Ind. Ct. App. 1970) .............................................................................. 27

*Hues v. Warren Petroleum Co.*,
   814 S.W.2d 526 (Tex. Ct. App. 1991) ....................................................................34, 35, 36

*Hunter v. Am. Gen. Life & Accident Ins. Co.*,
   384 F. Supp. 2d 888 (D.S.C. 2005) .................................................................................. 39

# TABLE OF AUTHORITIES
(continued)

Page

*In re Baycol Prods. Litig.*,
  218 F.R.D. 197 (D. Minn. 2003) ................................................................... 17

*In re Ford Motor Co. Vehicle Paint Litigation*,
  MDL No. 1063, 1996 U.S. Dist. LEXIS 11063 (E.D. La. July 30, 1996) .............................. 23

*In re Norplant Contraceptive Products Liability Litig.*,
  173 F.R.D. 185 (E.D. Tex. 1997) .................................................................. 38

*In re Vioxx Prods. Liab. Litig.*,
  239 F.R.D. 450 (E.D. La. 2006) ................................................................... 24

*In re Vioxx Prods. Liab. Litig.*,
  478 F. Supp. 2d 897 (E.D. La. 2007) ........................................................ passim

*Ins. Co. of N. Am. v. Morris*,
  981 S.W.2d 667 (Tex. 1998) ...................................................................... 41

*Intevep, S.A. Research & Tech. Support Establishment v. Sena*,
  41 S.W.3d 391 (Tex. App. 2001) .................................................................. 33

*Johnson v. Railway Express Agency*,
  421 U.S. 454 (1975) .............................................................................. 38

*Jolly v. Eli Lilly & Co.*,
  751 P.2d 923 (Cal. 1988) ...................................................................... passim

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) .............................................................................. 11

*Lehman Bros. Holdings, Inc. v. Laureate Realty Servs.*,
  1:04-cv-1432-RLY-TAB, 2007 U.S. Dist. LEXIS 76940 (S.D. Ind. Sept. 28, 2007) ............. 27

*Ling v. Webb*,
  834 N.E.2d 1137 (Ind. Ct. App. 2005) ............................................................ 30

*Livingston v. K-Mart Corp.*,
  32 F. Supp. 2d 369 (S.D. W. Va. 1998) ........................................................... 45

*McCoy v. Miller*,
  578 S.E.2d 355 (W. Va. 2003) .................................................................... 43

*Miller v. A.H Robins Co., Inc.*,
  766 F.2d 1102 (7th Cir. 1985) ............................................................... 28, 30

*Miller v. Javitch, Block & Rathbone, LLP*,
  397 F. Supp. 2d 991, 1003 (N.D. Ind. 2005) ..................................................... 27

*Miller v. Monongalia County Bd. of Educ.*,
  556 S.E.2d 427 (W.Va. 2001) ..................................................................... 45

*Moreno's, Inc. v. Lake Charles Catholic High Sch., Inc.*,
  315 So. 2d 660 (La. 1975) ....................................................................... 14

# TABLE OF AUTHORITIES
(continued)

Page

*Murphy v. Campbell,*
  964 S.W.2d 265 (Tex. 1997) .......................................................................... 33

*Newby v. Enron Corp. (In re Enron Corp. Secs),*
  465 F. Supp. 2d 687 (S.D. Tex. 2006) ..................................................... 37, 38

*Norgart v. Upjohn Co.,*
  981 P.2d 79 (Cal. 1999) ................................................................................ 20

*Oldfield v. Merck & Co., Inc.,*
  No. ATL-L-2-07 (N.J. Super. Law Div. Oct. 15, 2007) ............................... 1

*Order of R.R. Telegraphers v. Ry. Express Agency, Inc.,*
  321 U.S. 342 (1944) ....................................................................................... 1

*Phillips Oil Co. v. OKC Corp.,*
  812 F.2d 265 (5th Cir. 1987) ........................................................................ 10

*Powell v. Merck & Co., Inc.,*
  No. 05-4882 ................................................................................................... 38

*Prieto v. John Hancock Mutual Life Ins. Co.,*
  132 F. Supp. 2d 506 (N.D. Tex. 2001) ......................................................... 38

*Reich v. Purcell,*
  67 Cal. 2d 551 (Cal. 1967) ........................................................................... 13

*Richards v. Mileski,*
  62 F.2d 65 (D.C. Cir. 1981) .......................................................................... 45

*Richardson v. Bigelow Mgmt., Inc.,*
  2007 Tex. App. LEXIS 2942 (Tex. App. 2007) ............................................ 36

*Rivas v. Safety-Kleen Corporation,*
  98 Cal. App. 4th 218 (Cal. Ct. App. 2002) .................................................. 25

*Rubino v. Utah Canning Co.,*
  266 P.2d 163 (Cal. Ct. App. 1954) ............................................................... 25

*Safeway Stores,* 710 S.W.2d at 547-48 ............................................................. 40

*Sanchez v. South Hoover Hosp.,*
  553 P.2d 1129 (Cal. 1976) ............................................................................ 20

*Sheppard v. Capital One Bank,*
  No. 06-7535, 2007 U.S. Dist. LEXIS 70061, (C.D. Cal. July 11, 2007) ....... 39

*Shideler v. Dwyer,*
  417 N.E.2d 281 (Ind. 1981) .......................................................................... 32

*Snapp & Assocs. Ins. Servs. v. Robertson,*
  96 Cal. App. 4th 884 (Cal. Ct. App. 2002) .................................................. 22

# TABLE OF AUTHORITIES
(continued)

Page

*Taylor v. Ford Motor Corp.*,
  408 S.E.2d 270 (W. Va. 1991) ................................................................ 49, 50

*Trafalgar House Const., Inc. v. ZMM, Inc.*,
  567 S.E.2d 294 (W.Va. 2002) ................................................................ 45

*Vaught v. Showa Denko K.K.*,
  107 F.3d 1137 (5th Cir. 1997) ................................................................ 37

*Velsicol Chem. Corp. v. Winograd*,
  956 S.W.2d 529 (Tex. 1997) ................................................................ 36

*Vest v. St. Albans Psychiatric Hospital, Inc.*,
  387 S.E.2d 282 (W. Va. 1989) ................................................................ 41, 42

*W. Va. ex rel. Chemtall, Inc. v. Madden*,
  216 W. Va. 443 (W. Va. 2004) ................................................................ 42

*Wagner & Brown, Ltd. v. Horwood*,
  58 S.W.3d 732 (Tex. 2001) ................................................................ 34

*Weethee by Weethee v. Holzer Clinic*,
  490 S.E.2d 19 (W. Va. 1997) ................................................................ 41

*Wehling v. Citizens Nat'l Bank*,
  586 N.E.2d 840 (Ind. 1992) ................................................................ 28

*Whitehouse v. Quinn*,
  477 N.E.2d 270 (Ind. 1985) ................................................................ 32

**Statutes**

Ind. Code § 34-11-5-1 ................................................................ 29

Ind. Code § 34-1-2-2 ................................................................ 27

La. Civ. Code Ann. art. 2315 ................................................................ 14

La. Civ. Code Ann. art. 3492 ................................................................ 14

La. Civ. Code Ann. art. 3549 ................................................................ 12

La. Rev. Stat. Ann. § 51:1409 ................................................................ 14

Tex. Bus. & Com. Code Ann. § 2.725 ................................................................ 40

Tex. Civ. Prac. & Rem. Code § 16.003 ................................................................ 33

W. Va. Code § 55-2-12 ................................................................ 42, 49

**Other Authorities**

Cal. Code Civ. Proc. § 335 ................................................................ 19

Fed. R. Civ. P. 56(c) ................................................................ 10

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

Despite an avalanche of national and local media coverage that put plaintiffs on notice of their claims against Merck – at the latest – on September 30, 2004, plaintiffs in these cases failed to sue Merck for their alleged Vioxx-related injuries until long after the applicable statutes of limitations ran on their claims.[1]   Although plaintiffs will argue that their claims accrued at a later date, those arguments fail as a matter of law.  Indeed, as Judge Higbee recently concluded, such arguments "are entirely unpersuasive," even on summary judgment.  (Mem. at 5, *Oldfield v. Merck & Co., Inc.*, No. ATL-L-2-07 (N.J. Super. Law Div. Oct. 15, 2007) (attached as Ex. 1).)

Statutes of limitations serve important policy interests.  As the Supreme Court has explained, "[s]uch statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. . . . [E]ven if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation.'"  *Burnett v. N.Y. Cent. R. Co.*, 380 U.S. 424, 428 (1965) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944)).  Enforcement of limitations periods serves institutional purposes as well.  "[T]he courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights."  *Id.*  These interests will be frustrated if plaintiffs are permitted to proceed.  Accordingly, the Court should grant this motion.

## <u>BACKGROUND</u>

### A.    <u>The Withdrawal Of Vioxx From The Market And The Ensuing Media Blitz.</u>

Merck's withdrawal of Vioxx triggered an explosion of nationwide media attention.  ***In the first month after the withdrawal of Vioxx, there were at least 1,648 articles or reports in***

---

[1]        The *Tribby* complaint brings claims on behalf of several plaintiffs.  As described in Background § B, *infra*, this motion relates only to one plaintiff from that complaint, Susan Robello.

*media outlets around the country about the Vioxx controversy*.[2]  As detailed in Merck's

Memorandum in Support of Motion for Summary Judgment on stale claims from Illinois,

Pennsylvania, and Puerto Rico, which is incorporated herein, national media coverage was

immediate and substantial.  (*See* Mem. in Supp. of Mot. for Summ. J. at 1-8, Oct. 22, 2007, Dkt.

No. 12725, *In re Vioxx Prods. Liab. Litig.*, MDL 1657 ("First Two-Year SOL Brief").)  No later

than the morning of September 30, 2004, all the major television news programs were reporting

on the Vioxx withdrawal, including the *Today Show*, *Good Morning America*, *CNN American

Morning*, and National Public Radio.  (*Id.* at 3-5.)  The next day, the networks all ran follow-up

stories about the withdrawal, while newspapers nationwide trumpeted the story on their front

pages.  (*Id.* at 5-6.)  Various media continued to cover the story in the following days, including

stories on the many lawyers "across the country . . . lining up litigation." (*Id.* at 7.)  Cognizant

that this substantial media coverage had put all potential plaintiffs on notice of their claims

against Merck, plaintiffs' lawyers would later run advertisements stressing the importance of

filing Vioxx claims before the two-year anniversary of withdrawal.  (*Id.* at 8.)

Similar coverage played out in plaintiffs' home media markets as well.

### 1.   **California**

The Vioxx controversy received substantial media attention throughout the state of

California, with the local major television network affiliates covering the withdrawal on the day

it was announced.  (Summaries of local coverage provided by *Video Monitoring Services of

America* are attached collectively as Ex. 2.)

The state's largest newspapers – including Mr. Tran's hometown San Jose *Mercury News*

– gave the withdrawal front-page treatment.  *See* Barbara Felder Ostrov, *Company Pulls Arthritis*

---

[2]   This statistic is based on a search of U.S. news outlets on the Lexis/Nexis database for the period between
September 30, 2004 and October 30, 2004.

*Drug; Study Shows Heart-Attack Risk*, San Jose Mercury News, Oct. 1, 2004, at 1A (attached as Ex. 3) (noting that Merck pulled Vioxx from the market after "a new clinical study showed it nearly doubled the risk of heart attack and stroke in patients who took it long-term").  The Los Angeles *Times* covered the withdrawal on its front page on October 1, 2004.  *See* Thomas H. Maugh II and Denise Gellene, *Arthritis Drug Vioxx Pulled, Risk of Heart Attacks Is Cited*, L.A. Times, Oct. 1, 2004, at A1 (attached as Ex. 4).  The San Francisco *Chronicle*'s story noted that Merck had "abruptly ordered a worldwide recall of its premier arthritis drug Vioxx . . . after a company-run study confirmed that long-term use of the pills increased risk of heart attack and stroke."  Sabin Russell, *Arthritis drug Vioxx yanked off market*, San Francisco Chronicle, Oct. 1, 2004, at A1 (attached as Ex. 5).

Many stories appearing in California press outlets – including the Los Angeles *Times*, the Contra Costa *Times*, and the San Jose *Mercury News* – noted the storm of lawsuits that followed withdrawal.  For example, the Contra-Costa *Times* included a story in its October 29, 2004 edition noting that plaintiffs had filed "about 300 [Vioxx] suits since the company pulled the product off the shelves Sept. 30."  Bruce Gerstman, *Brentwood Man Sues Vioxx Maker; He Says He's One of Thousands of Contra Costans Who've Suffered Complications From Using The Now-Discontinued Drug*, Contra Costa Times, Oct. 29, 2004, at A7 (attached as Ex. 6). Similarly, the San Jose *Mercury News* ran two stories in late 2004 noting the growing number of lawsuits against Merck in connection with Vioxx.  *See Merck Stock Slumps on Report it Denied Vioxx Problems*, San Jose Mercury News, Nov. 2, 2004, at 3C (attached as Ex. 7) (noting that "[h]undreds of lawsuits have been filed against Merck over Vioxx"); Jeffrey Gold, *Merck Reduces Profit Forecast; Withdrawal of Vioxx to Hurt 2005 Earnings*, San Jose Mercury News, Dec. 9, 2004, at 3C (attached as Ex. 8) (noting that Merck faced "a deluge of lawsuits from

patients and shareholders" related to Vioxx).  And the Los Angeles *Times* also ran multiple stories in late 2004 discussing the flood of Vioxx-related lawsuits against Merck.  *See* James Flanigan, *Merck's Trouble with Vioxx May be Catching*, L.A. Times, Nov. 21, 2004, at C1 (attached as Ex. 9) (noting that "[a] mountain of litigation, potentially involving $4 billion to $18 billion in damages . . . is already in the works against Merck on the Vioxx matter"); *Merck CEO May Testify in Vioxx Suits*, L.A. Times, Dec. 29, 2004, at C3 (attached as Ex. 10) (noting that "Merck & Co.'s chairman and chief executive, Raymond V. Gilmartin, may testify by March in some of the dozens of lawsuits filed in New Jersey over the pharmaceutical company's withdrawal of its blockbuster arthritis drug Vioxx").

In addition, many of the state's largest newspapers had been covering the emerging Vioxx story since 2001.  For example, the Contra Costa *Times* ran two stories in early 2001 discussing the potential for increased risk of heart attacks and strokes with long-term Vioxx use. *See* Thomas H. Maugh, *Arthritis Drugs May Raise Heart Attack Risk*, Contra Costa Times, Aug. 22, 2001, at A12 (attached as Ex. 11) (noting that Vioxx "may increase a patient's risk of heart attack[] and stroke"); Melody Petersen, *Arthritis Drug Safety Questioned; Vioxx and Celebrex May Increase the Risk of Cardiovascular Problems, Some Doctors Say*, Contra Costa Times, May 26, 2001, at C13 (attached as Ex. 12) (noting that "a large study sponsored by Merck last year showed that patients taking Vioxx had four times the risk of heart attacks of patients taking another pain reliever").  In June, the San Diego *Union-Tribune* also reported on study results, noting that "a company-sponsored study suggested that [Vioxx] might increase susceptibility to heart attacks."  Jane Brody, *Concern Over Safety is Premature*, San Diego Union-Tribune, June 18, 2001, at E9 (attached as Ex. 13).  The *Union-Tribune* also ran another story in August, reporting that Vioxx "has been linked by researchers to a small but troubling increase in the risk

of heart attacks and strokes." *Research links pair of arthritis drugs to heart attacks, strokes*, San Diego Union-Tribune, Aug. 22, 2001, at A-8 (attached as Ex. 14).  Also on August 22, 2001, the San Jose *Mercury News* ran a similar story, noting that "[t]he popular and heavily-promoted new arthritis drugs Vioxx and Celebrex have been linked by researchers to a small but troubling increase in the risk of heart attacks and strokes."  Lindsey Tanner, *Arthritis Drugs Causing Concern – Small Increase Seen in Heart Problems*, San Jose Mercury News, Aug. 22, 2001, at 11A (attached as Ex. 15).  Finally, the Los Angeles *Times* ran a story on September 26, 2001, noting that Merck was ordered to cease promoting Vioxx until it sent a "Dear Doctor" letter to health care workers.  The main issue identified in the article was "[w]hether Vioxx users faced an increased risk of heart attacks and strokes.  A recent study comparing Vioxx with another painkiller, naproxen, suggested they do." *FDA Orders Merck to End Vioxx Promotions*, L.A. Times, Sept. 26, 2001, at Part 3, Pg. 2 (attached as Ex. 16).

### 2.   **Indiana**

As in California, the press in plaintiff Wyser's home state of Indiana prominently covered the Vioxx withdrawal.  For starters, many of the local major television network affiliates covered the withdrawal on the day it was announced.  (Summaries of local coverage provided by *Video Monitoring Services of America* are attached collectively as Ex. 17.)  And the largest newspaper in Indiana, the Indianapolis *Star* (published 20 miles from plaintiff Wyser's home town) noted the withdrawal the day after it occurred.  *See* Jeff Swiatek, *Lilly had its own bad bout with an arthritis drug*, The Indianapolis Star, Oct. 1, 2004, at 1C (attached as Ex. 18).

### 3.   **Texas**

The local media in plaintiff Preuninger's home state of Texas similarly provided extensive coverage of the Vioxx withdrawal and its aftermath, with many of the local major television network affiliates covering the withdrawal on the day it was announced.  (Summaries

of local coverage provided by *Video Monitoring Services of America* are attached collectively as Ex. 19.)

The largest newspapers in Texas all reported immediately on the Vioxx withdrawal.  The *Austin American Statesman*, *The Dallas Morning News*, the Houston *Chronicle*, the Fort Worth *Star-Telegram*, and the San Antonio *Express News* all carried articles about the Vioxx withdrawal on October 1, 2004.  For example, the October 1, 2004 *American Statesman* carried an article noting that "[d]octors in Austin and across the country were deluged by calls Thursday from concerned patients after Merck & Co. pulled its popular pain relief drug Vioxx off the market because of new data showing a sharply increased risk of heart attacks and stroke from long-term use." *Vioxx users take note: Popular pain relief drug deemed unsafe*, The Austin American Statesman, Oct. 1, 2004, at A1 (attached as Ex. 20).  Similarly, the October 1 issue of *The Dallas Morning News* included an article titled *Vioxx recall has millions wondering what to do*.  The Dallas Morning News, Oct. 1, 2004, at A1 (attached as Ex. 21).  The Houston *Chronicle* also covered the Vioxx withdrawal on October 1, the day after the drug was withdrawn.  The *Chronicle*'s story was titled *Merck pulls Vioxx, noting health risks; Study shows pain medication could increase chances of strokes and heart attacks*.  Houston Chronicle, Oct. 1, 2004, at A3 (attached as Ex. 22).  The *Chronicle* also ran a story in its October 3 edition titled *Removal of Vioxx prompts questions about drug tests; Approval process has not found all potential problems*.  Houston Chronicle, Oct. 3, 2004, at B4 (attached as Ex. 23).  The October 3 article noted that "[t]he [APPROVe] study showed that the drug doubled the risk of heart attack and stroke.  At the same time, ***it sounded an alarm for the millions of people who took Vioxx***." *Id.* (emphasis added).

At least some Texas media outlets also reported on the explosion of Vioxx-related

lawsuits following the withdrawal.  For example, the Austin *American Statesman*'s November 2, 2004 edition included a story noting that "[h]undreds of lawsuits have already been filed against Merck over Vioxx."  *Report:  Merck knew of Vioxx problems; Stock drops nearly 10% amid claims that drug maker covered up risks*, The Austin American Statesman, Nov. 2, 2004, at C1 (attached as Ex. 24).

        In addition to the post-withdrawal news regarding Vioxx and its risks, the Houston *Chronicle* and San Antonio *Express News* had both included stories on the potential risks of Vioxx as early as August 2001.  The August 22, 2001 edition of the *Chronicle* included a story titled *Drugs linked to risk of heart attack; Researchers urge study of 2 arthritis medicines*.  Houston Chronicle, Aug. 22, 2001, at A15 (attached as Ex. 25).  The story noted that researchers had linked Vioxx to "a small but troubling increase in the risk of heart attacks and strokes."  *Id.* And the August 22, 2001 issue of the San Antonio *Express News* carried an article titled *Study finds heart risk with arthritis drugs*.  Lindsey Tanner, San Antonio Express News, Aug. 22, 2001, at 5A (attached as Ex. 26).

        4.    **West Virginia**

        As in all of the other states subject to this motion, the press in plaintiff Noe's home state of West Virginia prominently covered the Vioxx withdrawal and the resulting storm of lawsuits.  On the day after the withdrawal, the largest newspaper in the state, the Charleston Gazette, carried a front-page wire story noting that Merck was "pulling its blockbuster Vioxx from the market after new data found the arthritis drug doubled the risk of heart attacks and strokes."  Linda A. Johnson, *Merck recalls Vioxx Arthritis drug linked to strokes, heart attacks*, Charleston Gazette, Oct. 1, 2004, at 1A (attached as Ex. 27).  The Gazette also ran several stories during the remainder of 2004 discussing the large number of Vioxx-related lawsuits filed against Merck.  *See Mother of Vioxx patient sues Merck, physician*, Charleston Gazette, Oct. 4, 2004, at P2C

(attached as Ex. 28) (describing a lawsuit filed in Missouri and noting that "similar lawsuits are in the works around the country"); *Merck shares plunge after report says company knew of Vioxx risks*, Charleston Gazette, Nov. 2, 2004, at P3D (attached as Ex. 29) (noting that analysts may downgrade Merck's credit rating because of "the momentum in the Vioxx litigation"); Andrew Leckey, *Analysts cautious about Merck*, Charleston Gazette, Nov. 9, 2004, at P2D (attached as Ex. 30) (noting that "[c]ountless lawsuits are being filed over whether Merck should have acted sooner").

**B.**    **The Plaintiffs Addressed By This Motion.**

This motion addresses the claims of five plaintiffs – two from California, and one each from Indiana, Texas, and West Virginia.

**1.**    **California**

According to their complaints and plaintiff profile forms, plaintiffs Robello and Tran reside in California, were prescribed and took Vioxx in California, and allegedly suffered their injuries there.  (*See* Tribby Compl. ¶ 12 (attached as Ex. 31); Robello Pl. Profile Form at 2, 3 (attached as Ex. 32); Tran Compl. at 4 (attached as Ex. 33); Tran Pl. Profile Form at 2, 3 (attached as Ex. 34).)  Plaintiff Susan Robello alleges that her husband, Lawrence Robello, suffered a heart attack leading to his death on March 3, 2005.  (Robello Pl. Profile Form at 2.) And plaintiff Viet Tran alleges that he suffered from a "heart condition" from 2002 to 2004 (Tran Pl. Profile Form at 2) or in May 2003 (Tran Compl. at 4).  Plaintiff Tran filed his complaint in Santa Clara County, California on October 4, 2006.  Plaintiff Robello was part of the *Pamela Tribby* complaint filed directly in this Court on August 15, 2007.

**2.**    **Indiana**

According to his complaint and plaintiff profile form, plaintiff Wyser resides in Indiana, was prescribed and took Vioxx in Indiana, and allegedly suffered his injury there.  (*See* Wyser

8

Compl. ¶ 1 (attached as Ex. 35); Wyser Pl. Profile Form at 2, 3 (attached as Ex. 36).)  Plaintiff

Wyser alleges that he suffered a heart attack on July 28, 2003.  (Wyser Pl. Profile Form at 2.)

Plaintiff Wyser filed his complaint in the United States District Court for the Southern District of

Indiana on March 16, 2007.

### 3. **Texas**

According to his complaint and plaintiff profile form, plaintiff Donald Preuninger resides

in Texas, was prescribed and took Vioxx in Texas, and allegedly suffered his injury there.  (*See*

Preuninger Compl. ¶ 1 (attached as Ex. 37); Preuninger Pl. Profile Form at 2, 3 (attached as Ex.

38).)  Plaintiff Preuninger alleges that he suffered a heart attack on May 29, 2000, which

allegedly resulted in a subsequent hemorrhagic stroke.  (Preuninger Pl. Profile Form at 2;

Preuninger Compl. ¶ 1.)  Plaintiff Preuninger filed his complaint in the United States District

Court for the Southern District of Texas on October 3, 2006.

### 4. **West Virginia**

According to his complaint and plaintiff profile form, plaintiff Paul Noe resides in West

Virginia, was prescribed and took Vioxx in West Virginia, and allegedly suffered his injury

there.  (*See* Noe Compl. ¶ 1 (attached as Ex. 39); Noe Pl. Profile Form at 2, 3 (attached as Ex.

40).)  Plaintiff Noe alleges that he suffered a heart attack on April 8, 2003.  (Noe Pl. Profile

Form at 2.)  Paul and Arlene Noe filed their complaint in the Circuit Court of Mingo County,

West Virginia on November 1, 2006.

### C. The *Cain* Class Action

Merck described the *Cain* class action in detail in its recent motion for summary

judgment on stale claims in Illinois, Pennsylvania, and Puerto Rico.  (*See* First Two-Year SOL

Brief at 14-16.)  That discussion is incorporated herein.

One of the plaintiffs here – Preuninger – was a putative class member of the *Cain* class

action while its claims for damages were pending because he alleges injury dates prior to

September 18, 2002.  As explained in further detail below, Preuninger is barred from asserting

*American Pipe* tolling because that doctrine does not permit tolling based on successive class

actions.  (*See* Section I.B.3, *infra*.)  The remaining plaintiffs were not members of the putative

*Cain* class.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine issue as to any material fact and

. . . [Merck] is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Because "only

those disputes over facts that might affect the outcome of the lawsuit under the governing

substantive law will preclude summary judgment," questions that are "unnecessary" to the

resolution of a particular case "will not be counted."  *Phillips Oil Co. v. OKC Corp.*, 812 F.2d

265, 272 (5th Cir. 1987); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

The Court should grant summary judgment on plaintiffs' claims because they are time-

barred.  There can be no material dispute that each plaintiff was on notice of his or her claim by

September 30, 2004 at the latest, when the withdrawal of Vioxx from the market sparked a media

frenzy, announcing the drug's alleged risks on the front pages of newspapers across the country.

As a matter of law, such publicity is sufficient to trigger discovery and to start the limitations

clock ticking.  Thus, whether measured under their home-states' laws or under Louisiana law,

plaintiffs' claims should have been filed no later than September 30, 2006, two years after

withdrawal.  Each case addressed by this motion was filed after that date and is therefore time-

barred.

Plaintiffs will likely insist that their claims are saved by various tolling rules, specifically

the *American Pipe* and fraudulent concealment doctrines.  Not so.  *American Pipe* rules vary from state to state, but invariably they cannot save these plaintiffs' claims – because the state doctrine does not permit tolling for class actions pending elsewhere; because the state at issue does not recognize *American Pipe* at all; or because plaintiffs would need to "stack" or "piggyback" class actions.  And the fraudulent concealment doctrine, like ordinary discovery rules, ceases tolling claims when the media reports the facts necessary to make out a claim, as happened here.  Plaintiffs' tolling arguments thus fail, and the Court should grant Merck summary judgment.

## I. THE CLAIMS OF CALIFORNIA PLAINTIFFS ROBELLO AND TRAN ARE TIME-BARRED.

### A. The California Plaintiffs' Claims Are Subject To Separate Choice-Of-Law Analyses.

#### 1. Louisiana Choice-of-Law Rules Apply To Robello's Claims.

Plaintiff Robello directly filed her case in this Court, pursuant to Pretrial Order No. 11.
As this Court has previously recognized, Louisiana choice-of-law rules govern such claims.  *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 904 (E.D. La. 2007).  That holding was consistent with the rule set forth in *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941), that a federal court sitting in diversity applies the choice-of-law rules of the state in which the court is situated.  This Court's holding was also the product of careful consideration of the potential for abuse – not realized here in light of how Louisiana's choice-of-law rules apply – in permitting plaintiffs to bypass unfavorable rules by filing directly in the MDL forum.  *In re Vioxx*, 478 F. Supp. 2d at 904.  No such potential for abuse arises here, and Louisiana choice-of-law rules therefore apply.

Under Louisiana choice-of-law rules, the Court must consider both Louisiana limitations rules and the rules of each plaintiff's home state.  Because plaintiff Robello's claims are barred

both under Louisiana law and the law of her home state, the Court need not decide which of those laws to apply, however.  Either way, the claims are time-barred, and summary judgment is therefore appropriate.

Louisiana's choice-of-law rule for selecting the applicable limitations period (or "prescription" period) in a particular case requires the Court to conduct two separate choice-of-law determinations:  *first*, the Court must determine which state's substantive laws govern the proceeding, and *second*, based on that determination, it must decide the applicable limitations law.  Regarding the first step, plaintiff Robello's substantive claims are governed by the laws of her home state, as this Court has consistently held.  *In re Vioxx*, 478 F. Supp. 2d at 905-06.  That preliminary inquiry is thus easily answered, and no extended discussion is required here.

Under the second step, in a case like this one, where "the substantive law of another state would be applicable to the merits of an action brought in this state," Louisiana prescription law applies except in two circumstances:

> (1) If the action would be barred under Louisiana prescription law but allowed under the other state's law, and "maintenance of the action in this state is warranted by compelling considerations of remedial justice," La. Civ. Code Ann. art. 3549(B)(1), the court will apply the limitations law of the state whose substantive law governs.

> (2) If the action would not be barred under Louisiana prescription law but would be barred under the law of the state whose substantive law governs, then the action is allowed to proceed unless allowing the case to continue "is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice." *Id.* art. 3549(B)(2).

As set forth below, the Court need not undertake this analysis because plaintiff Robello's claims would be barred both under her own state's laws (which will govern the substance of her claims) and under Louisiana law.  Accordingly, regardless of which state's limitations law applies, her claims are time-barred and must be dismissed.

2.     **Under California Choice-Of-Law Principles, Tran's Claims Are Governed Exclusively By California Law.**

Unlike Robello, who filed her case directly in this Court, plaintiff Tran filed his action in California state court.  Accordingly, this Court must apply California choice-of-law rules to plaintiff Tran's claims.  *In re Vioxx*, 478 F. Supp. 2d at 903 (explaining that, for cases transferred to the MDL, "the MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules" (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990))).

California applies the "governmental interest" approach, in which the court "examine[s] the policies underlying competing laws of the involved states to determine which states are interested in having their laws applied to the issues in question."  *Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 793-794 (Cal. Ct. App. 1982), citing *Reich v. Purcell*, 67 Cal. 2d 551 (Cal. 1967).  A state will have an interest in having its law applied "if the policies underlying the law would be thereby advanced" and "[w]hen only one of two potentially concerned states has an interest in having its law applied, the conflict of laws is said to be 'false'" and "the court simply applies the law of the only interested state."  *Id.* at 794.

That is precisely the case here.  California courts have consistently deemed differences between its limitations laws and those of other states to be "false conflicts" and has applied its own law.  *See, e.g.*, *Ashland Chem. Co.*, 129 Cal. App. 3d at 794; *Am. Bank of Commerce v. Corondoni*, 169 Cal. App. 3d 368, 374 (Cal. Ct. App. 1985) (finding California statute of limitations applicable and noting that California's preference it to apply its own law).

For example, in *Ashland Chemical Co.*, the court considered whether Kentucky or California law should be applied to a guaranty contract.  Applying the governmental interest test, the court found a "false conflict," stating:

13

> Here California is the only interested state.  Statutes of limitation are designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases in which memories have faded and evidence has been lost.  Here California courts and a California resident would be protected by applying California's statute of limitations because California is the forum and the defendant is a California resident.  Applying California's statute of limitations would thus advance its underlying policy.  In contrast, Kentucky has no interest in having its statute of limitations applied because here there are no Kentucky defendants and Kentucky is not the forum.  This case . . . is the very paradigm of false conflict.

*Id.* at 794.

This case too presents an entirely false conflict.  Louisiana has no interest in having its statute of limitations applied.  There is no Louisiana party in the litigation, and for choice-of-law purposes, Louisiana is not the true forum.  *See In re Vioxx*, 478 F. Supp. 2d at 903.  Therefore, in light of California's clear choice-of-law analysis in statute of limitations cases, California statute of limitations law should govern plaintiff Tran's claim.

### B.   Robello's Claims Are Time-Barred Under Louisiana Law.

Louisiana employs a one-year limitations period on personal injury claims.[3]  La. Civ. Code Ann. art. 3492.  Plaintiff Robello filed suit in 2007, but alleges injury before the withdrawal of Vioxx from the market in 2004.  Her claims are thus stale unless saved by some other doctrine.

---

[3]   The same one-year period governs Robello's claims for wrongful death, which accrue on the date of death. La. Civ. Code Ann. art. 2315.2.  The wrongful death period, like that applying to personal injury claims, is "prescriptive" rather than "peremptive" and thus susceptible to tolling by the discovery rule or by fraudulent concealment.  *See Evans v. CanadianOxy Offshore Prod. Co.*, 730 So. 2d 466, 468-71 (La. App. 3d Cir. 1998) (wrongful death claims are susceptible to tolling by discovery rule or fraudulent concealment, while survival actions are "peremptive" and therefore only prone to tolling under fraudulent concealment).  Thus, the analysis of the various tolling doctrines here applies in the same way to the personal injury and wrongful death claims.

Robello also brings claims under theories of fraud, misrepresentation, and breach of warranty.  Louisiana's one-year limitations period would apply to these claims as well.  Louisiana's Unfair Trade and Consumer Protection Law requires fraud claims to be brought within one year.  La. Rev. Stat. Ann. § 51:1409(e).  And redhibition claims – *i.e.*, warranty claims – must be brought within a year as well.  *Moreno's, Inc. v. Lake Charles Catholic High Sch., Inc.*, 315 So. 2d 660, 663-64 (La. 1975).

1.      **Based On Indisputable Facts, Robello's Claims Accrued In Louisiana No Later Than September 30, 2004 As A Matter Of Law.**

As Merck explained in its motion for summary judgment on stale claims from Illinois, Pennsylvania, and Puerto Rico, a reasonable plaintiff would have been on notice of his or her claims under Louisiana law on September 30, 2004, the date that Merck announced the results of APPROVe and its decision to withdraw Vioxx from the market.  (*See* First Two-Year SOL Brief at 19-22.)  The withdrawal of Vioxx and the APPROVe results – suggesting a link between Vioxx and heart attacks – were widely covered both by print and broadcast media.  The story was carried in national newspapers and television broadcasts; it was carried in newspapers in plaintiffs' home states; and it was brought to the attention of hundreds of thousands of physicians and pharmacies nationwide.  Under these circumstances, reasonable plaintiffs could not have – and in fact did not – sleep on their claims.  That fact is evidenced by the thousands of plaintiffs who managed to file their lawsuits within six months of withdrawal.[4]  Thus, at the latest, Robello's claim was stale under Louisiana's applicable limitation doctrine on October 1, 2005.

2.      **Based On Indisputable Facts And Robello's Own Allegations, Merck's Alleged Fraudulent Concealment Could Only Toll The Limitations Period To September 30, 2004 – At The Latest.**

Plaintiff Robello – apparently cognizant that her complaint is untimely – asserts in her complaint that she is entitled to tolling on fraudulent concealment grounds.[5]  (Tribby Compl. ¶ 15.)  But as Merck explained in its recent motions, fraudulent concealment tolling arguments fail

---

[4]      In addition to the extensive media coverage, any plaintiffs taking Vioxx up until the date of withdrawal would have had the additional cue of being unable to obtain refills on their prescriptions.  At that point, plaintiffs would likely have been advised, consistent with the Dear Healthcare Professional letters sent to doctors and pharmacies, that the drug had been withdrawn due to concerns about cardiovascular risks.  Even if they were not so advised, the sudden unavailability of the drug would have prompted any reasonable person to follow up to find out why the drug was no longer available.

[5]      The *Tribby* complaint purports to advance a distinct "equitable estoppel" basis for tolling, but that is not elaborated in the complaint and apparently depends upon the same facts that support the fraudulent concealment allegation.  For purposes of this motion, they will be treated as the same argument.

here for at least three reasons:  1) Robello has not pled fraud with particularity; 2) Robello only pleads fraud up until September 30, 2004, the date of withdrawal, which would amount to no tolling at all assuming an identical discovery date; and 3) media attention to the withdrawal of Vioxx was so overwhelming as to expose the basis of plaintiff's claims to any reasonably diligent person.  (*See* First Two-Year SOL Brief at 22-24.)

Like the plaintiffs addressed by Merck's First Two-Year SOL Brief, Robello's own allegations estop any claim of concealment beyond the date of withdrawal.  (*See* Tribby Compl. ¶ 42 ("Merck continued to represent to consumers that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects are not associated with the drug, ***until*** Merck withdrew Vioxx from the market in September 2004") (emphasis added).)  Accordingly, as with the discovery rule, plaintiff's claims of fraudulent concealment tolling fail in the face of the overwhelming media coverage following withdrawal.[6]

### 3.   **Plaintiff's Claims Are Not Saved By *American Pipe* Tolling.**

While Robello may try to argue that her claims were tolled under *American Pipe* principles, that argument fails because:  (1) *American Pipe* tolling is generally not available to plaintiffs awaiting certification of personal injury class actions, because reliance on the possibility of class treatment of such inherently individualized cases is objectively unreasonable; and (2) tolling in cases like this would undermine the very purpose of *American Pipe* tolling.[7]

***First,*** tolling is inappropriate for Vioxx cases altogether because mass-tort product

---

[6]     Furthermore, the sheer volume of lawsuits filed after withdrawal is a testament to the fact that any alleged fraudulent concealment was not so concealed as to escape the attention of plaintiffs' lawyers around the country. Indeed, Robello's lawyer had filed cases at far earlier dates in this litigation.  To cite just one example, attorney Lowe filed *Anderson v. Merck & Co., Inc.*, MDL Case No. 05-2572, on December 11, 2004 (attached as Ex. 41) (*Anderson* transferred to this Court on July 7, 2005 (attached as Ex. 42).)

[7]     Merck's First Two-Year SOL Brief, incorporated herein, addressed the origins of the doctrine developed in *American Pipe Construction Co. v. Utah*, 414 U.S. 538, 554 (1974) and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983) and its application by Louisiana courts.  (*See* First Two-Year SOL Brief at 24-38.)

liability actions are inherently uncertifiable.  Louisiana law bars reliance on pending classes when such reliance is unreasonable.  *Cf. Smith v. Cutter Biological*, 770 So. 2d 392, 409 (La. Ct. App. 2000) (agreeing that "continued tolling of the statute of limitations after the district court denies class certification is unnecessary to protect any **reasonable** . . . reliance by putative class members on their former class representatives" (emphasis added) (quoting *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1382 (11th Cir. 1998))).  *Smith* held in part that reliance on the possibility that a district court would reverse its negative ruling on a certification question was "ordinarily not reasonable" and thus that tolling was inappropriate.  *Id.*  Reliance on the hope that a court would certify a statewide or nationwide class action for personal injury is similarly not reasonable.  As the *Baycol* court noted, "[N]o [federal] Court of Appeals decision has approved class certification of an action involving prescription drugs."  *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 204 (D. Minn. 2003) (cholesterol drug).  There is thus no reason to believe that Louisiana courts would afford *American Pipe* tolling in Vioxx cases.  Rather, Louisiana law appears to track the careful reasoning exhibited in opinions like the *Jolly* case, which held that reliance on the possibility of class certification is objectively and empirically unreasonable in mass-tort personal injury cases.  *See Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 937-38 (Cal. 1988).

**Second**, tolling is inappropriate here because it is inconsistent with the purposes of *American Pipe*.  (*See* First Two-Year SOL Brief at 32-34.)  This is so because class actions cannot put Merck on notice of unnamed plaintiffs' highly individualized claims.  (First Two-Year SOL Brief at 36-38.)  As Merck noted in its opposition to class certification, these cases involve widely varying facts with respect to usage, dose, content of warnings, medical history, and a host of other factors unique to each plaintiff.  Not surprisingly, each trial requires extensive individualized discovery, involving "evidence, memories, and witnesses" that are unique to each

17

case, including – by way of example – family members, treating physicians, and pharmacy records to which Merck cannot possibly have access without knowing the actual identity of the plaintiff.  And Merck could have no way of knowing the number of claims that would be encompassed by such an action, let alone the identities of the witnesses or their evidence.  The Vioxx suits are thus unlike the *American Pipe* case, in which the Court noted the "probability of common issues of law and fact," *id.* at 553, and in which there could be no doubt that individual claims "invariably will concern the same evidence, memories, and witnesses as the subject matter of the original class suit," *id.* at 562 (Blackmun, J., concurring).

In addition, extending the doctrine to mass-tort personal injury cases would encourage plaintiffs' lawyers to file class actions merely to achieve an illegitimate tolling benefit for unnamed members of the purported class (as happened in this case).  They are thus precisely the kinds of cases Justices Blackmun and Powell warned about in their concurring opinions in *American Pipe* and *Crown, Cork*.  As evidenced by the instant proceedings, tolling also serves no efficiency purpose – the solitary virtue of *American Pipe* tolling – because the vast majority of plaintiffs file their complaints notwithstanding the hypothetical availability of class-action tolling.  Indeed, *American Pipe* is all the more unnecessary in the instant litigation in light of the tolling agreement, which, at least for plaintiffs who have not slept on their claims, serves the purposes of *American Pipe* and would be redundant if *American Pipe* tolling actually applied in the mass-tort context.

***Finally***, class action tolling in the context of mass tort proceedings also leads to injustice.  If plaintiffs are allowed to slumber and not assert their claims while others have pursued their claims in mass litigation of this kind, the parties – plaintiffs and defendants alike – cannot get a grasp of the size or scope of the litigation until years after the deadlines contemplated by the

applicable statutes of limitations.  Without a grasp on the size or scope of the litigation, the parties are shackled in searching for ways to resolve the litigation, leaving the claims of individual plaintiffs, some of whom may be ill or elderly, languishing until the doors are deemed closed.

In sum, *American Pipe* tolling is unavailable, and Robello was required to file her action – at the latest – by September 30, 2005.  Because she failed to do so, her claims are stale under Louisiana law.

### C.    The Claims Of Plaintiffs Robello And Tran Are Time-Barred Under California Law.

Plaintiff Robello's claims are also untimely under the law of the other potentially applicable state – California.  The same goes for plaintiff Tran, who filed in California and whose claims are governed (as discussed above) by California limitations law.

California requires plaintiffs to file their claims within two years of injury or discovering their claims.  Accordingly, plaintiffs had to file their claims no later than September 30, 2006, two years after the withdrawal of Vioxx from the market.  However, plaintiff Tran filed his complaint in Santa Clara County, California on October 4, 2006, and plaintiff Robello was part of the *Pamela Tribby* complaint filed directly in this Court on August 15, 2007.  Accordingly, their claims are stale.

### 1.    Under California Law, The Discovery Rule Was Triggered – At The Latest – By The Media Coverage Following The Withdrawal Of Vioxx.

California observes a two-year limitation period for personal injuries or wrongful death (*see* Tribby Compl. ¶¶ 47-75; Tran Compl. ¶¶ Prod L-4-L-5) in a product liability case.  Cal. Code Civ. Proc. § 335.1 ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another.").  Generally, in

California, the right to sue to recover damages for personal injuries arises – and the statute of limitations begins to run – "when the cause of action is complete with all of its elements." *Norgart v. Upjohn Co.*, 981 P.2d 79, 83 (Cal. 1999). Like the other jurisdictions subject to this motion, however, California has adopted a "discovery rule" that tolls the running of the statute of limitations "until the plaintiff discovers, or has reason to discover, the cause of action, until, that is, he at least suspects, or has reason to suspect, a factual basis for its elements." *Id.*

In applying the discovery rule, California courts have explained that the statute of limitations begins to run when the plaintiff "suspects, or ***should suspect***, that she has been wronged." *Jolly*, 751 P.2d at 930 (emphasis added). Further, "plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through the investigation of sources open to her." *Id.* at 927; *see also Sanchez v. South Hoover Hosp.*, 553 P.2d 1129, 1135 (Cal. 1976) ("Possession of presumptive as well as actual knowledge will commence the running of the statute."). "In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).

In light of this precedent, the California Supreme Court has recently held that "[i]n order to rely on the discovery rule for delayed accrual of a cause of action, [a] plaintiff whose complaint shows on its face that his claim would have been barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808. In doing so, it clarified that such a test was consistent with the California's policy requiring diligent pursuit of claims:

> The Legislature, in codifying the discovery rule, has also required plaintiffs to pursue their claims diligently by making accrual of a cause of action contingent on when a party discovered *or should have discovered* that his or her injury had a wrongful cause . . . This policy of charging plaintiffs with presumptive knowledge of the wrongful cause of an injury is consistent with our general policy encouraging plaintiffs to pursue their claims diligently.

*Id.* Finally, and most relevant to the case at bar, the California Supreme Court has noted that "[e]vidence that information of a particular hazard has received widespread publicity may under some circumstances be a basis for granting summary judgment for defendants on statute of limitations grounds and for defeating a plaintiff's delayed discovery claim." *Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1158 (Cal 2007).

Summary judgment is appropriate here under these rules with respect to both plaintiff Robello and plaintiff Tran. Mr. Robello died on March 8, 2003, but Ms. Robello did not file suit until October 12, 2007. Similarly, Mr. Tran alleges injury in May 2003, but did not file suit until October 4, 2006. Therefore, as required by *Fox*, plaintiffs must plead specific facts stating the time and manner of discovery of their claims. Their complaints fail to do so, alleging no applicable dates or manner of discovery.[8] As such, under California law, the Court need not even engage in a discovery-rule analysis; plaintiffs' failure to plead delayed discovery bars them from raising it.

In any event, as set forth above, national and California media coverage of the withdrawal of Vioxx from the market was substantial, belying any claims that plaintiffs did not discover their claims by September 30, 2004. (*See* Background § A, *supra*.) Furthermore, vast numbers of plaintiffs in the instant litigation filed claims across the country shortly after the withdrawal of Vioxx, triggering additional media coverage which itself should have put other

---

[8]     Tran alleges that he discovered his claim in November of 2004, but he gives no reason why. (Tran Compl. at 4.)

users of Vioxx on notice of their potential claims.  In addition, plaintiffs offer no explanation in their complaints for their lack of knowledge of their claims prior to the time they filed.  Though plaintiff Robello asserts in her complaint that the "applicable statute of limitations is tolled based on defendants' fraudulent concealment of the dangers and adverse side effects of Vioxx, respectively" and that "Merck is equitably estopped from raising the statute of limitations defense" (Tribby Compl. ¶ 15), and plaintiff Tran asserts that he did not discover his claim until November of 2004 (Tran Compl. at 4), there is no allegation in either complaint regarding Merck's conduct that post-dates the withdrawal of Vioxx.  Rather, Robello avers that "[d]espite the foregoing, Defendant Merck continued to represent to consumers that Vioxx was safe, and that any cardiovascular and/or cardiothrombotic side effects are not associated with the drug, *until Merck withdrew Vioxx from the market in September 2004*."  (Tribby Compl. ¶ 42 (emphasis added); *see also id.* ¶ 96.)  Accordingly, even if the Court accepts these allegations as an assertion of discovery-rule tolling, plaintiffs offer no allegation that can delay accrual of their claims beyond September 30, 2004, the date of withdrawal.  Their claims are thus barred.

### 2. Plaintiffs' Claims Are Not Saved By The Doctrine Of Fraudulent Concealment.

While plaintiffs may seek to argue that Merck fraudulently concealed the facts necessary to make out their claims, such an argument cannot survive summary judgment.  In California, the doctrine of fraudulent concealment operates in much the same way as the discovery rule, *i.e.*, alleged concealment "does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *Snapp & Assocs. Ins. Servs. v. Robertson*, 96 Cal. App. 4th 884, 890-891 (Cal. Ct. App. 2002), citing *Jolly*, 751 P.2d at 928 (plaintiff is under a duty to reasonably investigate).  Thus, for the very same reason that discovery was triggered no later than September 30, 2004, no concealment, even if proven, could

22

toll the limitations period beyond that date.  Accordingly, plaintiffs' claims are not saved by

fraudulent tolling here.  Just as reasonable diligence should have triggered discovery by

September 30, 2004, so too would plaintiff's reliance on any alleged fraudulent concealment

have become unreasonable by that date.

In addition, because fraud is the basis of estoppel by fraudulent concealment, "the same

pleading and proof is required in the fraud cases, *i.e.*, the plaintiff must show (a) the substantive

elements of fraud, and (b) and excuse of late discovery of the facts."  *Id.* at 891.  Furthermore, as

Merck has previously argued, plaintiffs must plead fraud with particularity, which in this Court

means they must plead precisely which facts prevented them from discovering their claims, and

precisely how they ultimately did discover their claims.  (First Two-Year SOL Brief at 22 (citing

*In re Ford Motor Co. Vehicle Paint Litigation*, MDL No. 1063, 1996 U.S. Dist. LEXIS 11063, at

*23 (E.D. La. July 30, 1996)).)  Here plaintiffs have not alleged any factual basis for their late

discovery of the facts of their cases in light of the extensive media coverage and onslaught of

lawsuits filed in California and throughout the nation in 2004.  Thus, tolling for fraudulent

concealment is unavailable as a matter of law.

### 3.   Plaintiffs' Claims Are Not Saved By *American Pipe* Tolling.

In addition, plaintiffs' claims are not saved by *American Pipe* tolling because the

California Supreme Court has rejected the application of *American Pipe* in the context of

personal injury mass torts and would do so again here.  *See Jolly*, 751 P.2d at 937-938.  In *Jolly*,

the plaintiff brought an untimely personal injury suit based on an allegedly defective drug taken

by the plaintiff's mother while plaintiff was in utero.  *Id.* at 925.  Plaintiff argued that the filing

of a class action tolled her claims until the class was denied certification.  The court found

*American Pipe* did not apply to toll plaintiff's claims, and held that "because personal-injury

mass-tort class-action claims can rarely meet the community of interest requirement in that each

member's right to recover depends on facts peculiar to each particular case, such claims may be

presumptively incapable of apprising defendants of the substantive claims being brought against

them, a prerequisite, in our view, to the application of *American Pipe*." *Id.* at 937. As such, the

court admonished that personal injury plaintiffs "would be ill advised to rely on the mere filing

of a class action complaint to toll their individual statute of limitations" and that "[t]he

presumption, rather, should be to the contrary." *Id.* 937-938.

In light of the *Jolly* decision, *American Pipe* will not operate to toll plaintiffs' claims. All

of the concerns raised by the court in *Jolly*, such as the fact that mass-tort personal injury cases

are widely recognized as uncertifiable and the varying nature of personal injury claims are

equally applicable to the case at bar. Indeed, the Court has already found that the factual

variations among Vioxx personal injury plaintiffs make class certification inappropriate (*In re

Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006)), further indicating that reliance on

pending class actions to toll personal injury claims would have been wholly unreasonable. In

sum, plaintiffs' claims are not saved by *American Pipe*, and they are untimely under California

law. Accordingly, the Court should grant summary judgment.

4.    **Plaintiffs' Other Claims Must Also Be Dismissed.**

Summary judgment should also be granted as to plaintiff Robello's claims under theories

of negligent misrepresentation, fraudulent omission/concealment, and breach of express and

implied warranty (*see* Tribby Compl. ¶¶ 76-108), and to Tran's claims under warranty (Tran

Compl. ¶ Prod L-6). Under California law, it does not matter whether plaintiffs' personal injury

or wrongful death claims are brought under the guise of other causes of action – the two-year

personal injury limitations period still governs. As one California appellate court explained:

> for statute of limitations purposes, the court looks to the nature of
> the rights sued upon rather than to the form of action or to the
> relief demanded. Neither the caption, form, nor prayer of the

> complaint will conclusively determine the nature of the liability
> from which the cause of action flows.  Instead, the true nature of
> the action will be ascertained from the basic facts.

*Rivas v. Safety-Kleen Corporation*, 98 Cal. App. 4th 218, 229 (Cal. Ct. App. 2002).  In *Rivas*, the

court considered the applicable statute of limitations for plaintiff's product liability claims and

claim of fraudulent concealment.  *Id.* at 229.  Plaintiff argued that the three-year statute of

limitations for fraud claims governed the fraudulent concealment action, but the court disagreed,

finding the two-year personal injury statute applicable.  *Id.* at 231.  The court reasoned:

> The essence of appellants' claims is that they were injured by a
> defective product.  Product liability may arise from a
> manufacturing defect, a defective design, or failure to warn . . .
> Although appellants' complaints purport to assert separate and
> distinct causes of action for 'failure to warn' and 'fraudulent
> concealment,' the essence of both claims is that respondents'
> products were defective because they lacked warnings adequate to
> inform [appellants] of their toxic hazards and serious effects upon
> the human body, and because they lacked instructions for handling
> and use adequate to prevent exposures to [appellants] causing
> serious injury.

*Id.* at 229.  The court also noted that the personal injury statute has been applied to actions for

breach of contract and breach of warranty "where the alleged breach led to personal injury."  *Id.*

(citing *Rubino v. Utah Canning Co.*, 266 P.2d 163, 165-66 (Cal. Ct. App. 1954) (holding that

action against distributor of canned food for breach of implied warranty of fitness was subject to

the one-year limitation governing personal injury claims); *Cardoso v. Am. Med. Sys., Inc.*, 183

Cal. App. 3d 994 (Cal. Ct. App. 1986) (where appellants' action was for personal injury caused

by a malfunctioning medical implant, one-year statute of limitations applied to their cause of

action for breach of warranty)).

Similarly, in *Clark v. Baxter Healthcare Corp.*, 83 Cal. App. 4th 1048 (Cal. Ct. App.

2000), the plaintiff, a nurse who suffered a severe reaction to allegedly defective latex gloves,

pled a cause of action for fraudulent concealment.  The court noted that "[a]lthough [the

plaintiff] argued at the summary judgment hearing at the trial court that a separate limitations period should apply to that claim (3 years, § 388), she has abandoned any such argument on appeal . . . [t]hat is appropriate since this is a personal injury suit to which the one-year statute clearly applies."  *Id.* at 1054 n.2.

The holdings of these cases plainly apply to Tran's claims, which sound in personal injury.  They also apply to plaintiff Robello, whose complaint makes it clear that she is bringing suit based on the wrongful death of her husband from his ingestion of Vioxx.  Accordingly, plaintiffs' other claims, while titled as different causes of action, also fail under the two-year personal injury/wrongful death limitations period.[9]

## II.   INDIANA LAW BARS THE CLAIMS OF PLAINTIFF WYSER.

### A.   Under Relevant Choice-Of-Law Rules, Plaintiff's Claims Are Governed By Indiana Limitations Law.

Plaintiff Wyser, the Indiana plaintiff subject to this motion, filed his action in the United States District Court for the Southern District of Indiana on March 16, 2007.  This Court must therefore apply Indiana choice-of-law rules to the his claims.  *In re Vioxx*, 478 F. Supp. 2d at 903 (explaining that, for cases transferred to this MDL proceeding, "the MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules" (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990))).

"[U]nder Indiana law, statutes of limitation are procedural, rather than substantive, and

---

[9]      Plaintiff Robello's express warranty claims are not actionable in any event.  The Supreme Court of California has explicitly held that it is a doctor's reliance on express warranties – rather than a patient's – that is essential to making out an express warranty claim against the manufacturer of a prescription drug.  *Carlin v. Superior Court*, 920 P.2d 1347, 1355 (1996) ("We emphasize . . . that the 'consumer expectation' aspect of a breach of warranty action is subject, in the prescription drug context, to the general rule, discussed above, that warnings concerning the drug's properties are properly directed to the physician rather than the patient.").  Robello does not allege that her spouse's physician relied upon Merck's alleged express warranties; she alleges only that she did.  (Tribby Compl. ¶¶ 103-08.)  Therefore, Robello's express warranty allegations fail to state a claim as a matter of law and should be dismissed for this reason as well.

are not subject to parties' choice of law disputes." *Miller v. Javitch, Block & Rathbone, LLP*, 397 F. Supp. 2d 991, 1003 (N.D. Ind. 2005). *See Lehman Bros. Holdings, Inc. v. Laureate Realty Servs.*, 1:04-cv-1432-RLY-TAB, 2007 U.S. Dist. LEXIS 76940, at *26 (S.D. Ind. Sept. 28, 2007) ("federal courts sitting in diversity in Indiana routinely apply Indiana's statute of limitations"); *see also Horvath v. Davidson*, 264 N.E.2d 328, 332 (Ind. Ct. App. 1970) ("Without exception the statute of limitations has been considered procedural in Indiana."). Accordingly, Indiana limitations law determines whether Wyser's claims were timely filed. As explained below, they were not.

### B.   Indiana Limitations Rules Bar The Claims Of Plaintiff Wyser.

Indiana employs a two-year statute of limitations period for personal injury claims (Wyser Compl. ¶¶ 36-48) in a product liability case. Ind. Code § 34-1-2-2. Plaintiff Wyser claims an injury date of July 28, 2003, but he did not file until March 16, 2007. Wyser's claims are stale because no combination of tolling doctrines can make his late filing date timely.

> 1.   **Under Indiana Law, The Discovery Rule Was Triggered – At The Latest – By The Avalanche Of News Coverage Following The Withdrawal Of Vioxx.**

Like other jurisdictions, Indiana has adopted a discovery rule to toll the statute of limitations until the date the plaintiff knew or should have discovered: (1) that he suffered an injury; and (2) that the injury was caused by the product or act of another. *DeGussa Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001) (quoting *Barnes v. A.H. Robins Co.*, 476 N.E.2d 84, 87-88 (Ind. 1985)).

Under the discovery rule, the statute of limitations begins to run once a plaintiff knows that there is a "reasonable possibility, if not a probability," that an injury was caused by an act or product. *DeGussa*, 744 N.E.2d at 411. A plaintiff is required to have only knowledge of a "potential rather than an actual link" between the injury and the act or product. *Evenson v.*

*Osmose Wood Preserving Co. of Am.*, 899 F.2d 701, 703 (7th Cir. 1990) (applying Indiana law).

The statute of limitations can begin to run even without actual knowledge.  A plaintiff is **deemed** to have such knowledge when the plaintiff **should have** discovered the potential causal link.  *Allied Resin Corp. v. Waltz*, 574 N.E.2d 913, 915 (Ind. 1991).  Under Indiana law, if a plaintiff could have discovered "in the exercise of ordinary diligence" the reasonable possibility that an act or product caused his injury, the discovery rule will not toll the statute of limitations. *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992).  A plaintiff who hears of a possible causal connection between an act or product and a certain type of injury but fails to inquire further has not exercised ordinary diligence.  *Miller v. A.H Robins Co., Inc.*, 766 F.2d 1102, 1106 (7th Cir. 1985) (applying Indiana law).

In *Miller*, the Seventh Circuit refused to apply the Indiana discovery rule after determining that Ms. Miller had failed to exercise ordinary diligence in discovering her claim. *Id*. at 1106.  Miller developed pelvic inflammatory disease in 1974, two years after insertion of a Dalkon Shield intrauterine device.  *Id.* at 1103.  She filed a lawsuit seeking damages under negligence, strict liability, warranty, and fraud theories, but not until 1981.  *Id.*  Miller was found to have not exercised ordinary diligence, and her claim was barred.  The court noted that reasonable diligence would have uncovered, among other things, the fact that "a number of other women were suing the A. H. Robins Company alleging that a Dalkon Shield had caused them to suffer pelvic inflammatory disease."  *Id.* at 1106.  Because Miller neither pled nor proved diligence, her claim was barred.  *Id*. at 1105-1106.

Like Ms. Miller, Wyser should have been on notice of a possible causal connection between Vioxx and his alleged injury by September 30, 2004.  The withdrawal of Vioxx from the market on that date resulted in extensive media coverage of the alleged connection between

28

Vioxx and heart attacks. (*See* Background § A, *supra*.) That unprecedented media coverage included substantial coverage of the great number of lawsuits being filed in the few days following withdrawal. The widespread distribution of articles and television broadcasts put Wyser on notice of a possible connection between Vioxx and heart attacks, triggering a duty to conduct further inquiry. Thus, Wyser had to file his claim – at the latest – by September 30, 2006, which he failed to do.

2.        **Fraudulent Concealment Tolling Is Not Available To Plaintiff As A Matter Of Law.**

While plaintiff Wyser may seek to argue that Merck fraudulently concealed the facts necessary to make out his claims against Merck, such an argument cannot survive summary judgment. Under Indiana law, a statute of limitations can be tolled if the defendant fraudulently conceals the plaintiff's cause of action. Ind. Code § 34-11-5-1. The purpose of the fraudulent concealment doctrine is to prevent a defendant from asserting the statute of limitations when he has through deception or a violation of a duty prevented the plaintiff from discovering a potential cause of action. *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1372 (7th Cir. 1995) (applying Indiana law). However, a plaintiff must show that the defendant affirmatively acted to conceal the cause of action. *Id.* Silence on the part of the defendant is not enough to meet the standard. *Id.*

Any fraudulent concealment argument by Wyser would fail as a matter of law. Not only does Wyser fail to plead fraudulent concealment in his complaint – let alone plead it with the requisite particularity – but even if Wyser's complaint could be construed to raise such a claim, there is no allegation of any concealment beyond the date of withdrawal. Indeed, Wyser's complaint alleges that all was revealed upon withdrawal: "on September 30, 2004, Merck finally revealed that [APPROVe] had shown that Vioxx doubled the risk of heart attack and stroke," causing Merck "to withdraw Vioxx from the market worldwide," but only "after Plaintiff

29

ingested the drug without adequate notice." (Wyser Compl. ¶¶ 31-32.) Thus, even if Wyser had properly pled fraudulent concealment, he could only obtain tolling, at the latest, until September 30, 2004.

In addition, Wyser has not established that he exercised reasonable care and due diligence to discover the fraud. Given the public announcement of the withdrawal of Merck from the market and the subsequent media coverage, Wyser cannot demonstrate that Merck affirmatively tried to conceal the possible link between Vioxx and heart attacks past September 30, 2004. Indeed, in *Miller*, the same court that affirmed summary judgment for the defendant where the plaintiff failed to inquire into the nature of her injury rejected fraudulent concealment tolling on similar grounds. Relying on its reasoning for rejecting plaintiff's discovery-rule argument, the court concluded, "as we suggested above, in this particular case a diligent search should have uncovered" the cause of the plaintiff's injury. *Miller*, 766 F.2d at 1107. The same is true here – plaintiff offers no reason that the withdrawal itself or the media coverage that followed would not have exposed any alleged fraud and started the limitations clock ticking. Accordingly, his claim is stale.

3. **Plaintiff's Claims Are Not Saved By *American Pipe* Tolling.**

Nor can plaintiff Wyser's claims be saved by *American Pipe* tolling. While Indiana has recognized that *American Pipe* may operate to toll state law claims where a state law class action is pending, *see Arnold v. Dirrim*, 398 N.E.2d 426, 440 (Ind. Ct. App. 1979); *Ling v. Webb*, 834 N.E.2d 1137, 1142 (Ind. Ct. App. 2005), it has never recognized cross-jurisdictional tolling, and there is no reason to believe that it would. As a result, plaintiff cannot benefit from *American Pipe* tolling unless there has been a personal injury class action against a given defendant filed ***in Indiana's court system.*** Here, no Vioxx personal injury class action has ever been pending in Indiana state courts. Thus, plaintiff Wyser cannot rely on any past or pending Vioxx class

actions for *American Pipe* tolling.

Moreover, even if Indiana were to accept cross-jurisdictional tolling – which it has not – there is no reason to assume that tolling would apply in personal injury actions such as this one. As discussed in Section I.B.3 *supra*, courts across the country have recognized that reliance on the possible certification of a personal injury class action is objectively unreasonable.  *See, e.g.*, *Jolly*, 751 P.2d at 937-38 (admonishing that personal injury plaintiffs "would be ill advised to rely on the mere filing of a class action complaint to toll their individual statute of limitations. *The presumption, rather, should be to the contrary* . . . ." (emphasis added)).  Like other states, Indiana courts have made clear that the important policy goals that animate the *American Pipe* doctrine must be satisfied before the doctrine is appropriately applied.  In *Arnold*, for example, the defendant argued that tolling should only commence from the date on which a class is certified, rather than when the class complaint is filed.  The Indiana appellate court rejected the argument, but it applied *American Pipe* tolling from the date of the complaint only after satisfying itself that the purpose of the class action device would be frustrated in the absence of such tolling.  *See Arnold*, 398 N.E.2d at 440.  Thus, before applying *American Pipe* tolling blindly to plaintiff Wyser's claims, Indiana courts would examine whether doing so would be consistent with the purposes of the class action device and with statutes of limitations.  As Merck has previously explained, such tolling is unwarranted.  For this additional reason, plaintiff Wyser's claims are not saved by *American Pipe* tolling.

### 4. Plaintiff's Other Claims Are Similarly Barred.

Plaintiff Wyser's claims for fraud and constructive fraud  (Wyser Compl. ¶¶ 49-59) should be dismissed as well, as they are similarly time-barred.  While Indiana normally applies a six-year statute of limitations for fraud claims, the Supreme Court of Indiana has held that "for [statute of] limitations purposes, the substance of a cause of action is ascertained by an inquiry

into the nature of the alleged harm and not [by] reference to theories of recovery advanced in the complaint." *Whitehouse v. Quinn*, 477 N.E.2d 270, 274 (Ind. 1985), citing *Shideler v. Dwyer*, 417 N.E.2d 281, 286 (Ind. 1981) ("[w]ith respect to the Complaint herein, the number and variety of Plaintiff's . . . theories of recovery cannot disguise the obvious fact – apparent even to a layman – that this is a malpractice case, and hence is governed by the statute of limitations applicable to such actions"). *See also Davis v. Geo S. Olive & Co.*, 731 F. Supp. 1380, 1384 (S.D. Ind. 1990) (noting that statute of limitations should be ascertained by reference to the ***harm*** alleged, and finding that two year statute for malpractice controlled).

Here, plaintiff Wyser's fraud claims are simply product liability personal injury claims pled as a different cause of action. Both of the fraud claims are explicitly based on Merck's alleged failure to warn of the dangers of Vioxx and allege the same damages for personal injury as do plaintiff's product liability claims of negligent failure to warn and strict liability. For example, in his claim for constructive fraud, plaintiff specifically alleges that "Merck violated the duties owed to Plaintiff by remaining silent or issuing misleading statements ***when they had a duty to warn***." (Wyser Compl. ¶ 56 (emphasis added).) Similarly, in plaintiff's fraud claim, he alleges that "Merck misrepresented to the treating physicians, the population of Vioxx consumers, and the public at large, and thus to Plaintiff's doctors, and Plaintiff, that Vioxx was safe to prescribe and ingest by falsely minimizing the cardiovascular risks associated with Vioxx, which risks were known or should have been known to Merck." (Wyser Compl. ¶ 50.) Because these fraud claims are simply additional personal injury claims cloaked under a different heading, they too are barred by Indiana's two-year limitations period.

III.   **TEXAS LAW BARS THE PREUNINGERS' CLAIMS.**

    A.   **Under Relevant Choice-Of-Law Rules, Plaintiffs' Claims Are Governed By Texas Limitations Law.**

The Preuningers filed their action in the United States District Court for the Southern District of Texas on October 3, 2006 (*see* Preuninger Compl.), and it is therefore subject to Texas choice-of-law rules.  *In re Vioxx*, 478 F. Supp. 2d at 903 (explaining that, for cases transferred to the MDL, "the MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules" (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990)).

Under Texas law, the statute of limitations is a procedural issue and matters of procedure are governed by the laws of the state where the action is filed.  *E.g. Intevep, S.A. Research & Tech. Support Establishment v. Sena*, 41 S.W.3d 391, 394 (Tex. App. 2001) (citing to *Baker Hughes, Inc. v. Keco R & D, Inc.*, 12 S.W.3d 1, 4 (Tex. 1999).  Therefore, because the Preuningers filed in Texas court, their claims are governed by Texas's statute of limitations.

    B.   **Texas Limitations Rules Bar The Preuningers' Claims.**

Texas observes a two-year limitation period for personal injury claims.  Tex. Civ. Prac. & Rem. Code § 16.003(a).  (*See* Preuninger Compl. ¶¶ 21-32; 38-49.)  Generally, a cause of action accrues for statute of limitations purposes when a wrongful act causes some legal injury to the plaintiff, even if the fact of the injury is not discovered until later, and even if all resulting damages have not yet occurred.  *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997).  In this case, calculating the limitation period from the date of plaintiff's injury, the two-year limitation ran prior to plaintiffs' filing their complaint unless some tolling doctrine saves the claim.  None does.

1.      **Under Texas Law, The Discovery Rule Was Triggered – At The Latest – By The Avalanche Of News Coverage Following The Withdrawal Of Vioxx.**

Texas recognizes a limited discovery rule that defers the accrual of a cause of action until the plaintiff knows, or in the exercise of reasonable diligence, should have known of the wrongfully caused injury. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 735 (Tex. 2001). This discovery rule has been described by the Supreme Court of Texas as "a very limited exception to statutes of limitations" (*id* at 734) and only defers accrual of a cause of action until the plaintiff discovered, or should have discovered through reasonable diligence, the injury and that it was likely caused by the wrongful acts of another. *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998).

Texas courts have refused to apply the discovery rule where, as here, there has been extensive media coverage sufficient to put plaintiffs on notice of a claim. *See Hues v. Warren Petroleum Co.*, 814 S.W.2d 526 (Tex. Ct. App. 1991) (affirming trial court's determination that the discovery rule was not applicable because the plaintiffs' claims were not inherently undiscoverable because of widespread publicity); *Crofton v. Amoco Chem. Co.*, No. 14-98-01412-CV, 1999 Tex. App. LEXIS 9126 (Tex. Ct. App. Dec. 9, 1999). For example, in *Hues*, plaintiffs sued in 1985 for claims of negligence, nuisance, and trespass based on gas leaks that occurred in 1980 and the disposal of a hazardous substance which began in 1956. 814 S.W.2d at 528. Defendant moved for summary judgment based on the contention that plaintiffs' suit was untimely and, in doing so, attached to its motion numerous newspaper articles relating to the 1980 gas leaks. *Id.* at 529. Based upon these articles, the court affirmed the district court's grant of summary judgment, explaining that "[t]he news media gave the leaks a great deal of coverage and there were so many stories in the newspapers that appellants were clearly put on notice of the date the gas leaks occurred." *Id.* Therefore, the court found, appellant's causes of action

accrued on the date the alleged torts were completed.  *Id.*

Similarly, in *Crofton*, plaintiff residents of subdivisions in the vicinity of a waste disposal site brought personal injury and property damages claims in 1995 based upon disposal activity that had begun as early as 1950.  1999 Tex. App. LEXIS 9126 at *4.  Amoco moved for summary judgment based upon the running of the statute of limitations, asserting that plaintiffs had constructive notice because of the widespread publicity surrounding the site.  *Id*. at *9.  In support of its contention, Amoco attached several articles from area newspapers regarding the site, dated as early as January 5, 1980, from newspapers such as the Houston Chronicle, the Houston Post, the Daily Sun, the League City News, the Dickenson News, and the Texas City Sun.  *Id.* at *10.  Despite several plaintiffs' contentions that they did not read any newspapers and were not aware of media coverage regarding the cleanup on the site, the court found that "[u]nder *Hues*, appellants were on notice of the possible contamination of their property from the Site by the early 1980's, *regardless of whether they had actually seen such stories in the media*."  *Id.* at *12 (emphasis added).  Further, the court stated that "appellants' claims were not inherently undiscoverable due to the attention the Site received by media."  *Id.* at *14.

The same principles apply here.  The withdrawal of Vioxx enjoyed substantial media coverage nationwide, including reports in some of the same papers relied upon in the *Hues* case.  Under Texas law, as elsewhere, a plaintiff cannot claim reasonable diligence by refusing to keep abreast of current events.  Thus, plaintiffs had to file their complaint – *at the latest* – by September 30, 2006, two years after Merck announced its withdrawal of Vioxx.  They did not do so, and their claims are therefore stale.

2.     **Fraudulent Concealment Tolling Is Not Available To Plaintiffs As A Matter Of Law.**

The Preuningers may claim that the statute of limitations was tolled in their case under

the doctrine of fraudulent concealment.  However, such a claim fails for the same reasons as does the discovery rule – plaintiffs should have discovered their claim ***at the latest*** by September 30, 2004.  Under Texas law, fraudulent concealment is "an equitable defense that estops the concealer from relying on the statute of limitations."  *Richardson v. Bigelow Mgmt., Inc.*, 2007 Tex. App. LEXIS 2942 (Tex. App. 2007).  However, "[a]s with the discovery rule, this doctrine tolls the statute until the fraud is discovered or ***could have been discovered*** with reasonable diligence."  *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex. 1997) (emphasis added).  Therefore, the same standard is applied for the doctrine of fraudulent concealment as the discovery rule – plaintiffs cannot simply turn a blind eye to potential claims, but must use reasonable diligence to discover their claims.

As discussed above, plaintiffs should have discovered their claim under Texas law – at the latest – by September 30, 2004.  Indeed, in the "fraud" section of their complaint, plaintiffs specifically allege that "[m]uch of the true information about Vioxx has only become known since its withdrawal on September 30, 2004."  (Preuninger Compl. ¶ 57.)  This statement all but admits that plaintiffs had reason to know of their claim by the date of the withdrawal of Vioxx, and they have alleged no facts to the contrary.  This, coupled with the fact that Texas courts have specifically found that media coverage can be sufficient to put plaintiffs on notice of a potential claim (*Hues*, 814 S.W.2d at 526; *Crofton*, 1999 Tex. App. LEXIS 9126), defeats any allegation that plaintiffs' claims were tolled beyond September 30, 2004 under the doctrine of fraudulent concealment.

       3.    **Plaintiffs' Claims Are Not Saved By *American Pipe* Tolling.**

The Preuningers' claims cannot be saved by *American Pipe* tolling either.  While Texas has recognized that *American Pipe* can operate to toll state law claims where a state law class action is pending, *see Grant v. Austin Bridge Constr. Co.*, 725 S.W.2d 366 (Tex. Ct. App. 1987),

36

it is highly unlikely that the state would recognize cross-jurisdictional tolling in a personal injury case. Because no personal injury class action has ever been pending in Texas, plaintiffs cannot claim *American Pipe* tolling.

While the Texas Supreme Court has not explicitly rejected cross-jurisdictional tolling, Texas courts of appeals, federal district courts, and the Fifth Circuit have all found it inapplicable in Texas. *See Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 757-58 (Tex. Ct. App. 1995) (declining to apply *American Pipe* tolling in the context of a mass personal injury suit filed in federal court in another state); *Vaught v. Showa Denko K.K.*, 107 F.3d 1137 (5th Cir. 1997), *cert. denied*, 522 U.S. 817 (1997) (the fact that the plaintiff was potentially a member of putative classes in two, nationwide, federal, mass tort personal injury class actions did not toll the operation of the Texas two-year statute of limitations); *Newby v. Enron Corp. (In re Enron Corp. Secs)*, 465 F. Supp. 2d 687 (S.D. Tex. 2006) (finding federal class action did not toll Texas state-law claims).

For example, in *Vaught*, the Fifth Circuit considered the question of cross-jurisdictional tolling in the context of a pharmaceutical personal injury suit. 107 F.3d at 1137. Plaintiff argued that a federal class action filed in New Mexico tolled her limitations period in a Texas state-law product liability action. The court, relying on *Bell*, found that the fact that plaintiff was potentially a member of two federal court putative nationwide classes did not toll the operation of the Texas two-year statute of limitations. *Id.* Similarly, in *Newby*, the court walked through the history of Texas's application of *American Pipe* and cross-jurisdictional tolling at the state, federal district, and appellate court levels, and concluded that cross-jurisdictional tolling would not be recognized. *Newby*, 465 F. Supp. 2d at 719-722.[10]

---

[10]   While two Texas federal district court cases have found cross-jurisdictional tolling applicable in Texas, these cases are not persuasive.   First, in *Prieto v. John Hancock Mutual Life Ins. Co.*, 132 F. Supp. 2d 506, 518-19

Because Texas courts (and the Fifth Circuit) have rejected cross-jurisdictional tolling, *American Pipe* should not be applied to toll the Preuningers' claims.  Only one Vioxx class action has been filed in Texas, and it involves claims for medical monitoring – not personal injury.[11]  As the Supreme Court has held, the filing of a putative class action complaint tolls the period of limitations only for claims that are ***identical*** to the claims asserted in the class action complaint.  *Johnson v. Railway Express Agency*, 421 U.S. 454, 467 n.14 (1975).  Medical monitoring claims are certainly not identical to – and are in fact fundamentally different from – personal injury claims, as they involve the hypothetical possibility of future injury rather than present personal injury.  As such, the putative class members and elements of proof are entirely different and would not give Merck notice as to the potential personal injury claims by others in the state.  Because no personal injury class actions have been filed in Texas, *American Pipe* does not operate to toll plaintiffs' claims.

Even if Texas recognized cross-jurisdictional tolling, plaintiffs could not rely on any currently pending class actions because Mr. Preuninger was a member of the *Cain* putative personal injury class action and can only avail himself of tolling from one class action.

Plaintiff Preuninger alleges that he suffered a heart attack on May 29, 2000.  Accordingly, he was a member of the putative personal injury class in *Cain*.  Although Texas has not addressed the issue, it would almost certainly follow courts around the country that have

---

(N.D. Tex. 2001), the district court read the decision in *Bell* as stating that *American Pipe* held that a statute of limitations may be tolled while class allegations are pending if the defendant has notice of the type and potential number of claimants against it (even if it is a federal case), but not if the federal class action was a mass personal injury suit.  Since the cases here involve personal injury suits, *Prieto* is inapplicable to the present case.  Second, in *In re Norplant Contraceptive Products Liability Litig.*, 173 F.R.D. 185, 189-90 (E.D. Tex. 1997), the court concluded that a federal class action did toll state-law limitations because all plaintiffs' claims shared two elements and because the potential claimants "are readily quantifiable through Defendants' own sales data."  However, this case is expressly contrary to the Fifth Circuit's ruling in *Vaught* and should be afforded little precedential value.  As the district court in *Newby* recently stated in distinguishing *Norplant* and *Prieto*, "[t]his Court is aware that a couple of federal district courts in Texas have modified the Fifth Circuit's interpretation of it, but this Court is not persuaded that the Fifth Circuit would agree with these decisions."  *Newby*, 465 F. Supp. 2d at 721.

[11]     *See Powell v. Merck & Co., Inc.*, No. 05-4882.

prohibited plaintiffs from stacking one class action on top of another to continue tolling claims indefinitely.  Accordingly, even if Texas had adopted cross-jurisdictional tolling – and it has not – tolling would still be unavailable under *American Pipe*.

As discussed in Merck's prior briefing, the fact that the *Cain* plaintiffs voluntarily dismissed their personal injury claims prior to a certification ruling does not change this result. As other courts have recognized, the test cannot be how the class action ends; otherwise, plaintiffs could file an unending series of class actions that they voluntarily dismiss in each case prior to certification, thereby short-circuiting the stacking rule.  *See Hunter v. Am. Gen. Life & Accident Ins. Co.*, 384 F. Supp. 2d 888, 893 (D.S.C. 2005) (holding that stacking prohibition applies to voluntarily dismissed claims because allowing tolling would encourage "spin-off litigation" in which "counsel could initially pursue a broad definition in one jurisdiction, voluntarily narrow it for settlement purposes, dismiss any remaining claims, and then revive the dismissed claims in multiple suits in other jurisdictions while gaining the benefit of tolling from the earlier litigation"); *Sheppard v. Capital One Bank*, No. 06-7535, 2007 U.S. Dist. LEXIS 70061, at *10-14 (C.D. Cal. July 11, 2007) (agreeing with *Hunter* that narrowing a class, whether voluntarily or involuntarily, implicates the stacking rule as to the severed claims); *see also Am. Pipe*, 414 U.S. at 561 (Blackmun, J., concurring) (urging that *American Pipe*'s rule "must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights"); *Crown, Cork*, 462 U.S. at 354 (Powell, J., concurring) (warning that the "tolling rule of *American Pipe* is a generous one, inviting abuse").  For this reason too, the Preuningers' claims are time-barred.

### 4.    **Plaintiffs' Other Claims Are Also Barred Under Texas Law.**

In addition to their personal injury-based causes of action, plaintiffs also assert claims for

breach of the implied warranty of merchantability (Preuninger Compl. ¶¶ 33-37), and fraud, misrepresentation and suppression (*id*. ¶¶ 50-59).  These additional claims fail as well.

*First*, Texas courts do not recognize the "discovery rule" for a breach of implied warranty claim.  Under Texas law, a claim for breach of warranty "must be commenced within four years after the cause of action has accrued."  Tex. Bus. & Com. Code Ann. § 2.725.  A "cause of action accrues . . . regardless of the aggrieved party's lack of knowledge of the breach . . . when tender of delivery is made."  *Id*.  While Texas's statute of limitations rule does provide that "where a warranty *explicitly* extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered," *id*. (emphasis added), the Texas Supreme Court has held that the discovery rule set forth in Tex. Bus. & Com. Code Ann. § 2.725 applies only in cases "where a warranty explicitly extends to future performance of the goods" and not to implied warranty cases.  *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 547-48 (Tex. 1986).  Thus, "the statute of limitations on implied warranties runs from the date of sale."  *Id*. at 547.

In this case, Mr. Preuninger suffered a heart attack on May 29, 2000.  (Preuninger Compl. ¶ 7.)  Because the last date on which Mr. Preuninger could have purchased Vioxx prior to that injury was on the date of that injury, plaintiffs would have had to file their implied warranty claims no more than four years after the date of his heart attack, *i.e.*, by May 29, 2004.  However, plaintiffs failed to bring their claims against Merck until October 3, 2006, more than six years after their claims accrued.  Thus, their warranty claim is stale.

*Second*, the Preuningers' claims for fraud, misrepresentation, and suppression should also be dismissed.  Although plaintiffs allege that Merck made misrepresentations that Vioxx was safe and effective and actively concealed adverse information (Preuninger Compl. ¶ 52), it is

clear that the fraud allegations are based on an alleged failure to disclose the risks of Vioxx.  Yet, under Texas law, nondisclosure fraud is only actionable if there is a duty to disclose.  *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).  Moreover, such a duty of disclosure arises only when there is a confidential or fiduciary relationship.  *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).  As such, the Supreme Court of Texas has consistently held that in an ordinary buy-sell transaction conducted at arms-length**,** there is no affirmative duty of disclosure. *Bradford*, 48 S.W.3d at 755*.*  The buy-sell transactions into which plaintiff entered were plainly arm's-length dealings.  No confidential or fiduciary relationship existed.  Therefore, plaintiffs cannot allege that Merck was under a duty to disclose any supposed adverse information.  For that reason alone, the Court should dismiss the Preuningers' fraud claim.

## IV.   WEST VIRGINIA LAW BARS THE NOES' CLAIMS.

### A.   Under Applicable Choice-Of-Law Rules, West Virginia Law Applies.

The Noes filed their complaint in the Circuit Court of Mingo County, West Virginia on November 1, 2006.  This Court must therefore apply West Virginia choice-of-law rules to the Noes' claims.  *In re Vioxx*, 478 F. Supp. 2d at 903 (explaining that, for cases transferred to the MDL, "the MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules" (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990))).

Under West Virginia choice-of-law rules, "West Virginia procedure applies to all cases before West Virginia courts."  *Weethee by Weethee v. Holzer Clinic*, 490 S.E.2d 19, 23 (W. Va. 1997) (citing *Vest v. St. Albans Psychiatric Hospital, Inc.*, 387 S.E.2d 282, 283-84  (W. Va. 1989).  According to West Virginia courts, statutes of limitations "are traditionally considered to be procedural," *id.*, and therefore are subject to West Virginia law.  Moreover, West Virginia follows the *lex loci delicti* choice-of-law rule which provides that the "***substantive*** rights

between the parties are determined by the law of the place of injury." *Adams v. Harron*, No. 97-2547, 1999 U.S. App. LEXIS 21937, at *4-5 (4th Cir. 1999) (emphasis added) (citing *Vest*, 182 W. Va. at 387). In this case, plaintiffs allege that Mr. Noe was prescribed Vioxx by a West Virginia physician (Noe Compl. ¶ 5-6), and lived in West Virginia during the entire period he took Vioxx, including the time of his alleged injury. (*See* Noe PPF at 3.) Thus, regardless of whether statutes of limitations are considered to be "procedural" or "substantive," West Virginia law controls.

### B. West Virginia Limitations Rules Bar Plaintiffs' Claims.

Plaintiffs' personal injury-based claims – negligence (Noe Compl. ¶ 27-30) and design/manufacturing defect (*id.* ¶¶ 37-44) – are untimely under West Virginia law.[12] In West Virginia, "every personal action for which no limitation is otherwise prescribed shall be brought . . . within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries." *W. Va. ex rel. Chemtall, Inc. v. Madden*, 216 W. Va. 443, 455 (W. Va. 2004) (citing W. Va. Code § 55-2-12). Plaintiff Noe alleges he suffered a heart attack on April 8, 2003, and therefore, absent any tolling doctrine, the statute of limitations ran on April 8, 2005. Even if tolling were applicable, plaintiffs should have filed their claims by September 30, 2006 at the latest. Nevertheless, plaintiffs filed their claims on November 2, 2006. Because no tolling principles apply to save their claims, Merck is entitled to summary judgment.

---

[12] Plaintiffs bring suit both against Merck and against "physician defendants" Wigberto C. Camomot and Wigberto C. Camamot, M.D., Inc. (*See* Noe Compl. ¶¶ 5-9; 45-47.) Plaintiffs' claims against the physician defendants are time-barred under West Virginia's two-year statute of limitations governing medical malpractice claims. W. Va. Code § 55-7B-4.

1.   **Under West Virginia Law, The Discovery Rule Was Triggered – At The Latest – By The Avalanche Of News Coverage Following The Withdrawal Of Vioxx.**

In West Virginia, the statute of limitations can be tolled by the "discovery rule" until such time as a claimant "knows or by reasonable diligence should know of his claim." *McCoy v. Miller*, 578 S.E.2d 355, 358 (W. Va. 2003); *see also id.* at 359 (the "crux of the 'discovery rule' has always been to benefit those individuals who were either unaware of their injuries or prevented from discovering them").

In applying the discovery rule, West Virginia courts have explained that this "[does] not eliminate the affirmative duty the law imposes on a plaintiff to discover or make inquiry to discern additional facts about his injury when placed on notice of the possibility of wrongdoing." *Id.* at 359.  Once "armed with information" suggesting possible wrongdoing, the limitations period begins, and claimants are required to make "reasonable and diligent inquiry into all relevant issues." *Id.* at 360.  A court may thus properly determine that a claim is time-barred on summary judgment "when the relevant facts are undisputed and only one conclusion can be drawn from those facts." *Id.* at 361.  Further, there are cases where "an injury or wrong occurs of such a character that a plaintiff cannot reasonably claim ignorance of the existence of a cause of action," and in such cases "the burden shifts to the plaintiff to prove entitlement to the benefit of the discovery rule." *Id.* at 360 (citing *Gaither v. City Hosp.*, 487 S.E.2d 901, 907 (W. Va. 1997)).

Events giving rise to extensive media coverage clearly trigger discovery as a matter of law. *See Goodwin v. Bayer Corp.*, 624 S.E.2d 562 (W. Va. 2005).  In *Goodwin*, the plaintiff brought a product liability lawsuit over injuries attributable to exposure to paint.  *Id.* at 565.  The court affirmed a summary judgment determination that the statute of limitations had run, and that the limitations period had started prior to the plaintiff's actual diagnosis of occupational asthma.

43

*Id.* at 568. Specifically, the court pointed out that the plaintiff need not be certain as to causality for the limitations period to start. *Id.* Rather, it was enough for the plaintiff to be armed with sufficient facts to suspect the connection, triggering his "affirmative duty to further and fully investigate" and ending the tolling of the statute of limitations. *Id.* (noting the "example of an exposure associated with symptoms" when plaintiff watched his son-in-law paint a bus and experienced breathing problems).

Summary judgment is appropriate here for the same reason. Media coverage of Merck's voluntary withdrawal of Vioxx in September 2004 was substantial both nationwide and in West Virginia, arming plaintiff Noe with more than sufficient facts to pursue his claim. *See* Background § A. In addition, the vast numbers of lawsuits filed by other plaintiffs in the wake of the withdrawal generated their own surge of press, which itself should have been sufficient to put anyone exercising reasonable diligence on notice of possible claims. Furthermore, plaintiff Noe, after taking Vioxx for more than three years, stopped taking this medication in September 2004, precisely coinciding with Merck's withdrawal. (Noe Pl. Profile Form at 6.) Whether spurred by an inability to continue to acquire Vioxx, or the dramatic and continuing media attention, any plaintiff making a "reasonable and diligent inquiry" would have been placed on notice of a possible suit by that time. The limitations period therefore began, at the latest, in September 2004, and ended in September 2006, barring the Noes' claims.

2.    **Fraudulent Concealment Tolling Is Not Available To Plaintiffs As A Matter Of Law.**

The Noes may argue that Merck fraudulently concealed the facts necessary for them to make their claim, but that argument cannot survive summary judgment. Like the discovery rule, fraudulent concealment tolls the limitations period. However, this tolling continues only so long as a plaintiff cannot, through the exercise of due diligence, discover the facts necessary to make

44

out a claim.  Thus, for the same reason that the discovery rule could not toll the statute of limitations beyond September 30, 2004, the doctrine of fraudulent concealment could not have tolled plaintiffs' limitation period beyond that date.

As explained by the Supreme Court of Appeals of West Virginia, "fraudulent concealment requires that the defendant commit some positive act tending to conceal the cause of action from the plaintiff." *Miller v. Monongalia County Bd. of Educ.*, 556 S.E.2d 427, 431 (W.Va. 2001) (quoting *Richards v. Mileski*, 662 F.2d 65, 70 (D.C. Cir. 1981)).  The fraudulent concealment doctrine therefore "involves the concealment of facts by one with knowledge or the means of knowledge." *Trafalgar House Const., Inc. v. ZMM, Inc.*, 567 S.E.2d 294, 300 (W.Va. 2002).  In addition it requires a duty to disclose, coupled with an intention to mislead or defraud." *Id.*  When fraudulent concealment is found, however, this does not extend a plaintiff's window to file a claim indefinitely.  The limitations period begins when a claimant through "the exercise of reasonable diligence should know, of the nature of the injury," as is the case with the discovery rule.  *Livingston v. K-Mart Corp.*, 32 F. Supp. 2d 369, 371 (S.D. W. Va. 1998).

For these reasons, as a matter of law, no tolling based on fraudulent concealment could have occurred after Merck's voluntary withdrawal of Vioxx on September 30, 2004.  Even if it were possible to demonstrate fraudulent concealment up to this point, as of that date, Merck could not have been more public in its disclosure of no longer recommending the utilization of Vioxx.  The fact of withdrawal dictates there could be no intention to mislead after September 30, 2004.  Similarly, any claimant exercising "reasonable diligence" would have become aware that Merck no longer recommended the use of, or even offered for sale, the drug Vioxx.  Therefore, fraudulent concealment is not possibly available to the Noes to extend the statute of limitations beyond September 30, 2006.

3.    **Plaintiffs' Claims Are Not Saved By *American Pipe* Tolling.**

Nor are the Noes' claims saved by *American Pipe* tolling.  At best, the Supreme Court of

Appeals of West Virginia has intimated that it might adopt some version of the *American Pipe*

doctrine when it pointed out that "[c]ourts usually hold that the timely commencement of a class

action suspends the applicable statute of limitations as to all asserted members of the class who

would have been parties had the suit been permitted to continue as a class action."  *In re W. Va.*

*Rezulin Litig. v. Hutchison*, 585 S.E.2d 52, 66 (W. Va. 2003) (citing *American Pipe*, 414 U.S. at

554) (reversing trial court's denial of class certification in fraud and medical monitoring case).

But even if West Virginia adopted any version of that tolling  doctrine, it still would not apply

here.

**First,** West Virginia has never suggested that it would adopt cross-jurisdictional tolling.

As Merck has previously argued, this Court should not decide to adopt such a doctrine on a

state's behalf while sitting in diversity.  As a result, the limitation period applicable to plaintiffs'

claims could not have been tolled unless plaintiffs were putative members of a class action

***pending in West Virginia courts***.

While there have been two putative Vioxx personal injury class actions filed in West

Virginia state courts – *Lough v. Merck & Co., Inc.* and *McCracken v. Merck & Co., Inc.* –

plaintiffs cannot rely on these class actions to toll their claims.  The named plaintiffs in the two

cases, while purporting to bring class claims sounding in personal injury (among other things),

do not in fact allege that they suffered personal injuries.  *See* Compl. ¶ 32, *Lough  v. Merck &*

*Co., Inc*., MDL Case No. 05-3820 (attached as Ex. 43 ); Comp. ¶ 5, *McCracken v. Merck & Co.,*

*Inc*., MDL Case No. 05-5190 (attached as Ex. 44).  Rather, the plaintiffs – who are represented

by the same lawyer – allege only that "plaintiffs and the class have suffered and in the future will

suffer ***some or all of the following damages***." *Lough* Compl. ¶ 32 (emphasis added);

*McCracken* Compl. ¶ 28 (emphasis added).  The complaints then list several alternative injuries: costs associated with preventative treatment; physical injury; emotional distress; humiliation; and others.  *Id.*

The faces of the complaints thus fail to establish that any of the plaintiffs actually has standing to bring a claim for personal injury.  Of course, "[i]t is axiomatic that an uninjured plaintiff cannot bring suit on behalf of an injured class."  *Milonas v. Williams*, 691 F.2d 931, 937 (10th Cir. 1982).  And as numerous courts have held in applying *American Pipe*, tolling is not available for class actions where it is clear from the face of the complaint that the plaintiff lacks standing to represent the class.  *See, e.g.*, *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 629 N.E.2d 520, 534 (Ill. Ct. App. 1993) ("we hold that the American Pipe class tolling rule does not apply where the representative lacks standing"); *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 378 (D. Mass. 1987) (concluding that "it would be improper to allow the filing of a class action by nominal plaintiffs who are wholly inadequate to represent the asserted class to have the effect of tolling limitation" because such a practice "may condone or encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule"); *Cunningham v. Ins. Co. of N. Am.*, 530 A.2d 407, 409-10 (Pa. 1987) (rejecting application of *American Pipe* tolling because the class representative's lack of standing was apparent on the face of the complaint); *see also In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994) ("[I]f the original plaintiffs lack standing to bring their claims in the first place, the filing of a class action complaint does not toll the statute of limitations for other members of the purported class.").  For these reasons, the *Lough* and *McCracken* class actions cannot save the Noes' claims.

***Second,*** even if West Virginia were to accept cross-jurisdictional tolling – which it has

not – there is no reason to assume that tolling would apply in personal injury actions such as this one.  The Supreme Court of Appeals has long warned that "'[e]xceptions in statutes of limitation are strictly construed and the enumeration by the Legislature of specific exceptions by implication excludes all others.'  By strictly applying statutes of limitations, we are better able to ensure that causes of action are promptly and timely filed."  *Perdue v. Hess*, 484 S.E.2d 182, 186 (W. Va. 1997) (quoting *Hoge v. Blair*, 141 S.E. 444, 445 (W. Va. 1928)).  Although the Supreme Court of Appeals has hinted that it would adopt some kind of *American Pipe* doctrine by noting that "[c]ourts ***usually***" toll limitations periods pending certification rulings in class actions, 585 S.E.2d at 66 (emphasis added), there is no reason to believe it would adopt such a broad version of the doctrine as to cover this case.  An *American Pipe* doctrine that applied to a case in which none of the policy purposes that justify the doctrine are served would not be a tolling doctrine that is "strictly construed."

As Merck has previously argued, *American Pipe*'s policy goals would be frustrated by its application to this case.  Class actions are almost always uncertifiable in the mass tort personal injury context.  Knowing this, virtually all potential plaintiffs file their claims individually, without awaiting a decision on certification, thus eliminating any supposed efficiency benefit from tolling.  And plaintiffs' lawyers file such actions (as the *Lough* and *McCracken* complaints demonstrate) solely in the hopes of a tolling benefit, directly implicating the abuses warned about by the concurring justices in *American Pipe* and *Crown, Cork*.

For these reasons, plaintiffs here cannot seek tolling based on the existence of a Vioxx personal injury class action.

### 4.    Plaintiffs' Other Claims Are Similarly Barred Under West Virginia Law.

In addition to their personal injury-based causes of action, plaintiffs assert a claim for

breach of implied warranty.  (Noe Compl. ¶¶ 31-36.)  However, plaintiffs' warranty claim is also barred under the applicable statute of limitations.

The Supreme Court of Appeals of West Virginia has held that where product liability plaintiffs assert warranty claims based on an alleged personal injury, a two-year statute of limitations applies.  *Taylor v. Ford Motor Corp.*, 408 S.E.2d 270, 274 (W. Va. 1991).  In *Taylor*, plaintiffs filed a product liability action against an automobile seller and manufacturer alleging breach of implied warranty claims to recover for personal injuries sustained in a rollover accident.  *Id.* at 270-71.  The trial court dismissed the action as barred by the two-year tort limitations period for personal injury actions set forth in W. Va. Code § 55-2-12.  *Id.*  On appeal, the Supreme Court of Appeals upheld dismissal, noting that "where a person suffers personal injuries as a result of a defective product and seeks to recover damages for these personal injuries based on a breach of express or implied warranties, the applicable statute of limitations is the two-year provision contained in W. Va. Code, 55-2-12, rather than the four-year provision" that governs contract actions.  *Id.* at 274.  According to the court, "where the damages sought" in a warranty action "are traditionally associated with a tort injury, we conclude that it is more reasonable and realistic to place warranty theories under the two-year tort personal injury statute of limitations."  *Id.*

The same is true in this case.  Plaintiffs' claims here, like the claims at issue in *Taylor*, are based on the allegation that Merck's alleged breach of warranty proximately caused Mr. Noe to suffer personal injury.  (Noe Compl. ¶35 ("As a proximate result of the defendant's breach of warranty . . . plaintiff suffered a heart attack on April 8, 2003 and plaintiffs was damaged").)  Moreover, in connection with their breach of warranty claims, plaintiffs in this case seek compensatory and punitive damages arising from Mr. Noe's alleged personal injury.  (*Id.* ¶ 36.)

49

Thus, under the Supreme Court of Appeals' ruling in *Taylor*, plaintiffs' warranty claims here are based in personal injury and are therefore governed by a two-year statute of limitations. 408 S.E.2d at 274. Because plaintiffs failed to file their claims until more that two years after the withdrawal of Vioxx – which, as explained above, is the ***last possible date*** on which plaintiffs' claims could have accrued – their claims are time-barred.

## CONCLUSION

The claims of plaintiff Robello, who filed directly in this Court, are time-barred regardless of whether the Court applies Louisiana limitations law or the law of her home state of California. The claims of the remaining plaintiffs, whose cases were transferred from their home forums, are barred under their home states' laws. For the foregoing reasons, Merck's motion for summary judgment should be granted.

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

John H. Beisner
Jessica Davidson Miller
Geoffrey M. Wyatt
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Memorandum in Support of Motion for Summary Judgment* has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 29h day of October, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel