UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION l (3) |
| | : | |
| THIS DOCUMENT RELATES TO | : | JUDGE FALLON |
| ALL CASES | : | MAG. JUDGE KNOWLES |

## THE PLAINTIFFS' STEERING COMMITTEE'S REPLY TO MERCK & CO., INC.'S RESPONSE TO PROPOSED STROKE TRIAL PLAN

**I.   INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC") hereby replies to Merck & Co., Inc.'s ("Merck") Response to Proposed Stroke Trial Plan. Merck objects to the Court's proposal to allow only the PSC to select individual plaintiffs for the stroke trials scheduled for 2008 on the grounds that it is unprecedented. Merck contends that either it be permitted an opportunity to propose its own choices of plaintiffs for test trials or that the selection be randomized, if the process is to go forward at all. Because this Court was charged to develop appropriate techniques for administering these coordinated cases within the MDL framework, there is nothing inherently incorrect in conducting trials involving plaintiff clients selected solely by the PSC.

In traditional binary litigation, no defendant has a choice of its opponent. The plaintiff in traditional binary litigation is self-selected. Such a plaintiff proceeds through discovery and trial without any ability of the Defendant to voice its preference to litigate against a different opponent. Since this Court's proposal mirrors traditional binary litigation, Merck should not be heard that this approach to litigation is either unfair or unprecedented.

To date, this Court has not certified any personal injury class action, nor has it proposed a "unitary trial" to develop common liability for all the stroke plaintiffs. As each case tried will result

only in a single, individual judgment, there is no constitutional due process harm attendant to this process that will befall Merck. Given the complicated causation issues posed by stroke victims, it well-behooves the Court and all the parties that appropriate test-cases be conducted. Since the plaintiffs bear the ultimate burden of proof, there is no justification for Merck to have any say as to which plaintiff should be permitted to participate in the proposed trials. Accordingly, the PSC submits that the Court's proposed trial plan should continue on its course.

## II. ARGUMENT

Merck argues that a "plaintiffs choose all approach" is not judicially sanctioned for purposes of bellwether trials. Merck's argument has no bearing on the stroke trial plan proposed by this Court given the individual nature of the proposed trials. Like the earlier MI trials, the stroke trials are merely intended to be "instructive," and not universally applicable to the other stroke plaintiffs. *See In Re: Vioxx Products Liability Litigation*, MDL No. 1657, Minute Entry at 3 (E.D. La. July 19, 2005).

To be a formal "bellwether" trial, *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997), finds that the selection of the plaintiff "sample must be randomly selected one of sufficient size so as to achieve statistical significance to the desired level of confidence in the result obtained." Notwithstanding this narrow definition, *Chevron* should not be understood to prohibit individual test trials. In that aggregated toxic tort case involving some 3000 personal injury and property damage plaintiffs, the trial plan provided for each side to select 15 plaintiffs "on the issue of the existence or nonexistence of liability on the part of Chevron for the pollutants that, allegedly, give rise to all of the plaintiffs' claims." *Id.* The defendant sought a writ of mandamus. Mandamus was granted on that part of the district court's decision to apply the jury's findings in some "unitary trial" fashion

to the remaining plaintiffs' claims. *Id.* at 1020. Such an "extrapolation" could not be accepted without some statistical assurances in the sample results. *Id.* Notably though, the Fifth Circuit denied issuing a writ as to the trial court's plaintiff selection process. It found no need to impinge upon the district court's discretionary decision as to how to proceed with plaintiff selection. *Id.* at 1018 ("Our review of a trial court's plan for proceeding in a complex case is a deferential one that recognizes the fact that the trial judge is in a much better position than an appellate court to formulate an appropriate methodology for a trial.").

This reasoning is dispositive of the matter now before the Court regarding the proposed stroke trial plan. In the past this Court endorsed a plan whereby plaintiffs and Merck selected certain MI plaintiffs for trial. Having witnessed the results of those cases, this Court is well informed as to how best to proceed with stroke test plaintiff selection. That no other court referenced by Merck has embarked on such a process is of no moment. Neither random selection nor mutual selection methods are demanded by any authority. Indeed, even the Manual for Complex Litigation recognizes that where the selections are "typical of the mix of cases," reliable information about verdicts should result. *See Manual for Complex Litigation* (4th ed.) §22.315 at 360 (2004).

Because it is the PSC that will be proposing the plaintiffs that proceed to trial, there is an increased likelihood of the test cases being typical of the mix of cases that would go to trial. If Merck selected only cases that could be determined by summary judgment, there is limited utility in such a process. Allowing plaintiffs to select the appropriate cases still permits both parties to determine whether the claims are meritorious and allows for an understanding of the potential ceiling by which claims can be valued. Such an approach to case selection is equally valid to those proposed by Merck.

3

III. **CONCLUSION**

For the reasons set forth above, the PSC respectfully submits that the proposed stroke trial plan for proceed as contemplated.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: November 5, 2007

By: /s/ Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana  70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
GOFORTH, LEWIS, SANFORD LLP
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
(713) 650-0022 (telephone)
(713) 650-1669 (telecopier)

5

| | |
|---|---|
| Drew Ranier, Esquire<br>RANIER, GAYLE & ELLIOT, L.L.C.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>(337)494-7171 (telephone)<br>(337) 494-7218 (telecopier) | Mark Robinson, Esquire<br>ROBINSON, CALCAGNIE & ROBINSON<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>(949) 720-1288 (telephone)<br>(949) 720-1292 (telecopier) |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 5th day of November, 2007.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA 70113
PH:   (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhkc.com