IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | MDL Docket No.: 1657 |
| | Section L |
| Vioxx Products Liability Litigation | Judge Fallon |
| | Magistrate Judge Knowles |

This document relates to:

*Donald Patterson v. Merck & Co., Inc.*
Case No.: 06-cv-08319-EEF-DEK

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Bonnie S. Patterson, individually, and as Personal Representative of the Estate of Donald Patterson, Matthew P. Patterson, individually, and James M. Patterson, individually ("Plaintiffs"), by and through the undersigned counsel, hereby state as their First Amended Complaint against Merck & Co., Inc. ("Merck") as follows:

**I.  PARTIES**

1.  At the time of his death, Donald Patterson ("Decedent") was individual citizen of the state of Colorado and resides in Jefferson County, Colorado.

2.  Bonnie S. Patterson is an individual citizen of the State of Colorado and resides in Jefferson County, Colorado.

3.  Matthew P. Patterson is an individual citizen of the State of Colorado and resides in Jefferson County, Colorado.

1

4. James M. Patterson is an individual citizen of the state of New York and resides in Bronx County, New York.

5. At all times relevant herein, Merck was a pharmaceutical company incorporated under the laws of New Jersey with its principal place of business at One Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey.

## II.  JURISDICTION AND VENUE

6. Plaintiffs hereby incorporate all previous allegations contained in this Amended Complaint as though fully set forth herein.

7. Plaintiffs claim damages in excess of $75,000 in this action, excluding costs and interest.

8. Jurisdiction and venue in this Court are proper pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1391(a).

## III.  GENERAL ALLEGATIONS

9. Plaintiffs hereby incorporate all previous allegations contained in this Amended Complaint as though fully set forth herein.

10. Bonnie S. Patterson was the Decedent's spouse at the time of his death.  They had been married approximately fourteen (14) years at the time of Decedent's death.

11. Matthew P. Patterson was the natural child on Decedent.

12. James M. Patterson was the natural child of Decedent.

13. Decedent first began taking Vioxx® in approximately September 2002 for pain pursuant to prescriptions written by and at the direction of his physician, and he continued taking

Vioxx® for approximately 22 months. Vioxx® is a prescription drug product manufactured and marketed by Merck.

14. In June of 2004, Decedent suffered a heart attack as a result of his ingestion of Vioxx® for approximately 22 months. Decedent underwent a quintuple by-pass as a result of his heart attack.

15. In July of 2004, Decedent suffered from pulmonary edema as a result of his ingestion of Vioxx® for approximately 22 months.

16. On July 31, 2007, at sometime between 1:00a.m. and 3:00a.m., Decedent died at home in his bed from acute heart failure. Mrs. Patterson was lying next to Mr. Patterson when he died but did not know the Decedent had died until the next morning when she woke up and she discovered he was dead.

17. Mrs. Patterson immediately dialed 911 and the Jefferson County Sheriff's Office, Jefferson County Coroner, Jefferson County Fire and Jefferson County Emergency Medical Services responded to the scene at their residence, 19463 W. 52nd Drive, Golden, CO 80403.

18. Decedent was pronounced dead on July 31, 2007 at 6:05 a.m.

## IV.  FIRST CLAIM FOR RELIEF
(First Claim for Relief – Wrongful Death under C.R.S. § 13-21-202)

19. Plaintiffs hereby incorporate all previous allegations contained in this Amended Complaint as though fully set forth herein.

20. Plaintiffs hereby seek to recover under C.R.S. §13-21-202 for the wrongful death of their husband and father, Donald Patterson.

21. Decedent's death resulted from a Merck's wrongful actions. As a direct and proximate result of Merck's wrongful actions as described herein, Decedent's estates is entitled to recover medical expenses, funeral expenses and loss of net accumulations.

22. As a direct and proximate result of Merck's wrongful actions as described herein, Plaintiffs have suffered economic and non-economic losses and injuries including medical and funeral expenses, mental anguish and grief, value of future loss of support and services from the date of death, with interest, as well as support and maintenance from their husband and father; and loss of companionship, society and comfort. These losses are permanent in nature and are a result of Merck's manufacturing and marketing of Vioxx®.

## V.  SECOND CLAIM FOR RELIEF
(Estate Claim for Economic Losses under C.R.S. § 13-20-101)

23. Plaintiffs hereby incorporate all previous allegations contained in this Amended Complaint as though fully set forth herein.

24. As a direct and proximate result of Merck's wrongful acts as described herein, the Estate of Donald Patterson incurred medical expenses, funeral expenses and loss of net accumulations to which are recoverable pursuant to C.R.S. §13-20-101.

## VI. THIRD CLAIM FOR RELIEF
(Strict Liability)

25. Plaintiffs hereby incorporate all previous allegations contained in this Amended Complaint as though fully set forth herein.

26. At all times material and relevant herein, Merck was the manufacturer and seller of Vioxx®. While it was on the market, Merck sold billions of dollars worth of Vioxx® throughout the United States.

27. At all times material and relevant herein, Merck was in the business of manufacturing, marketing and selling Vioxx® for use and consumption by the public.

28. Merck, in the manufacturing and marketing of Vioxx® to physicians who would prescribe it, and to the public who would consume it, misrepresented the material fact to prescribing physicians and the public that Vioxx® was a safe and effective prescription drug.

29. The drug Vioxx® was defective in that it caused serious complications including, but not necessarily limited to, heart attacks, arrhythmias and/or strokes in consumers who used it. The marketing information, which Merck published and caused to be distributed to prescribing physicians and the public, was inappropriate and inadequate in that it failed to disclose complications, which were known by Merck.

30. Physicians who were prescribing Vioxx® were not given full, complete and/or accurate information concerning the complications which patients who were using Vioxx® had experienced or were experiencing.

31. As a user of Vioxx®, Decedent and his prescribing physician reasonably relied on the representations made by Merck that Vioxx® was a safe and effective drug.

32. Merck's failure to give complete, appropriate and/or accurate information, warnings and/or directions regarding Vioxx® was the proximate cause of the Decedent's death, and the damages and losses experienced by Plaintiffs.

33. Decedent's death resulted from a Merck's wrongful actions. As a direct and proximate result of Merck's wrongful actions as described herein, Decedent's estates is entitled to recover medical expenses, funeral expenses and loss of net accumulations.

34. As a direct and proximate result of Merck's wrongful actions as described herein, Plaintiffs have suffered economic and non-economic losses and injuries including medical and funeral expenses, mental anguish and grief, value of future loss of support and services from the date of death, with interest, as well as support and maintenance from their husband and father; and loss of companionship, society and comfort.  These losses are permanent in nature and are a result of Merck's manufacturing and marketing of Vioxx®.

35. In learning of the severe complications associated with its use, and continuing to act in the wrongful manner as described herein, Merck acted with a wanton and reckless disregard of Decedent's and Plaintiffs' rights, safety and life.

## VII.  FOURTH CLAIM FOR RELIEF
(Negligence)

36. Plaintiffs hereby incorporate all previous allegations contained in this Amended Complaint as though fully set forth herein.

37. At all times material and relevant herein, Merck was the manufacturer and seller of Vioxx®.   While it was on the market, Merck sold billions of dollars worth of Vioxx® throughout the United States.

38. Merck had a duty to adequately warn physicians and potential Vioxx® users of the dangers and side effects associated with the use of Vioxx®.  Merck breached its duty to physicians, Decedent and Plaintiffs by failing to adequately warn of the known dangers and side effects associated with Vioxx®.

39. Long before Decedent's initial heart attack occurred, Merck was aware of the dangers and side effects associated with the use of Vioxx® and had a duty to disclose to Decedent and Decedent's physician the known risk of heart attacks, arrhythmias, strokes and/or other serious complications associated with the use of Vioxx®.

40. Had Decedent been adequately advised of the risks associated with the use of Vioxx®, he would not have taken Vioxx® and an alternative drug could have been prescribed to treat Decedent for his pain.

41. Merck was negligent by failing to exercise reasonable care to prevent Vioxx® from creating an unreasonable risk of harm to reasonably foreseeable users of Vioxx®, including Decedent.

42. Decedent's death resulted from a Merck's wrongful actions. As a direct and proximate result of Merck's wrongful actions as described herein, Decedent's estates is entitled to recover medical expenses, funeral expenses and loss of net accumulations.

43. As a direct and proximate result of Merck's wrongful actions as described herein, Plaintiffs have suffered economic and non-economic losses and injuries including medical and funeral expenses, mental anguish and grief, value of future loss of support and services from the date of death, with interest, as well as support and maintenance from their husband and father; and loss of companionship, society and comfort.  These losses are permanent in nature and are a result of Merck's manufacturing and marketing of Vioxx®.

44. In learning of the severe complications associated with its use, and continuing to act in the wrongful manner as described herein, Merck acted with a wanton and reckless disregard of Decedent's and Plaintiffs' rights, safety and life.

## VIII.  FIFTH CLAIM FOR RELIEF
(Colorado Consumer Protection Act)

45. Plaintiff hereby incorporates all previous allegations contained in this Amended Complaint as though fully set forth herein.

46. Merck's actions were in violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 et seq. (the "CCPA") in that Merck's actions constituted deceptive trade practices under C.R.S. § 6-1-105(1)(e), (g) & (u).

47. As particularly stated in the foregoing paragraphs, in the course of Merck's businesses, Merck represented to Decedent and Decedent's prescribing physician that Vioxx® was of a particular standard and quality.  Specifically, Merck represented to the Decedent and Decedent's prescribing physician that Vioxx® was a safe and effective prescription drug for the treatment of Plaintiff's pain.

48. As particularly stated in the foregoing paragraphs, by providing consumers with the aforementioned information and representations, Merck intended to induce consumers and their physicians into using Vioxx®, and intended that consumers and their physicians take such information and representations to mean Vioxx® was a safe and effective prescription drug.

49. As particularly stated in the foregoing paragraphs, Decedent and his prescribing physician relied on the aforementioned information and representations provided to them by Merck, and would not have used or prescribed Vioxx® had Decedent or his prescribing physician known that Vioxx® had known risks of heart attacks, arrhymithias, strokes or other serious complications.

50. As particularly stated in the foregoing paragraphs, Vioxx® was of another standard and quality than that which was represented by Merck in that it was in a defective and

unreasonably dangerous condition and not the safe and effective prescription drug as represented by Merck.

51. Merck knew or should have known that Vioxx® was of another standard and quality, and not the safe and effective prescription drug as represented by Merck.

52. Vioxx® was expected to and did reach the Decedent and his prescribing physician in substantially the same condition as when it left Merck's control, and at the time that Decedent ingested the prescription drug.

53. Merck's deceptive trade practices have significantly impacted the public, and/or could significantly impact the public in the future.

54. Decedent's death resulted from a Merck's wrongful actions. As a direct and proximate result of Merck's wrongful actions as described herein, Decedent's estates is entitled to recover medical expenses, funeral expenses and loss of net accumulations.

55. As a direct and proximate result of Merck's wrongful actions as described herein, Plaintiffs have suffered economic and non-economic losses and injuries including medical and funeral expenses, mental anguish and grief, value of future loss of support and services from the date of death, with interest, as well as support and maintenance from their husband and father; and loss of companionship, society and comfort.  These losses are permanent in nature and are a result of Merck's manufacturing and marketing of Vioxx®.

56. In learning of the severe complications associated with its use, and continuing to act in the wrongful manner as described herein, Merck acted with a wanton and reckless disregard of Decedent's and Plaintiffs' rights, safety and life.

## IX.  SIXTH CLAIM FOR RELIEF
(Fraudulent Misrepresentation)

57. Plaintiffs hereby incorporate all previous allegations contained in this Amended Complaint as though fully set forth herein.

58. By marketing and distributing Vioxx® as a safe and effective prescription drug, Merck made false representations of past and/or present facts.

59. The facts that Merck misrepresented were material.

60. Merck made the representation knowing it to be false.

61. Merck made the representation with the intent that Decedent and his prescribing physician would rely on its representations.

62. Decedent and his prescribing physician relied on Merck's representation;

63. Decedent and his prescribing physician's reliance was justified.

64. Decedent and his prescribing physician's reliance proximately caused Decedent's estate to incur medical and burial costs to which it is entitled to recover.

65. Decedent's death resulted from a Merck's wrongful actions. As a direct and proximate result of Merck's wrongful actions as described herein, Decedent's estates is entitled to recover medical expenses, funeral expenses and loss of net accumulations.

66. As a direct and proximate result of Merck's wrongful actions as described herein, Plaintiffs have suffered economic and non-economic losses and injuries including medical and funeral expenses, mental anguish and grief, value of future loss of support and services from the date of death, with interest, as well as support and maintenance from their husband and father; and loss of companionship, society and comfort.  These losses are permanent in nature and are a result of Merck's manufacturing and marketing of Vioxx®.

67. In learning of the severe complications associated with its use, and continuing to act in the wrongful manner as described herein, Merck acted with a wanton and reckless disregard of Decedent's and Plaintiffs' rights, safety and life.

## X.  SEVENTH CLAIM FOR RELIEF
(Fraudulent Concealment)

68. Plaintiffs hereby incorporate all previous allegations contained in this Amended Complaint as though fully set forth herein.

69. In marketing and distributing Vioxx® as a safe and effective prescription drug, Merck failed to disclose a past or present fact.

70. Merck had a duty to disclose to Decedent and Decedent's physician the known risk of heart attacks, arrhythmias, strokes and/or other serious complications associated with the use of Vioxx®.

71. The concealed facts that Vioxx® was not a safe and effective prescription drug and had known risks of heart attacks, arrhythmias, strokes and other serious complications associated with the use of Vioxx® were material.

72. Merck failed to disclose such material facts with the intent of creating a false impression in the mind of Decedent and Decedent's prescribing physician that Vioxx® was a safe and effective prescription drug.

73. Merck failed to disclose such material facts with the intent that Decedent and Decedent's prescribing physician would take a course of action they might not if they knew the actual facts.  In other words, Merck failed to disclose the known risks associated with the use of Vioxx® with the intent that Decedent and/or his prescribing physician would take/prescribe Vioxx instead of an alternative medicine.

11

74.     Decedent and/or his prescribing physician took/prescribed Vioxx® while relying on the assumption that the undisclosed facts did not exist or were different from what they actually were.

75.     Decedent and/or his prescribing physician's reliance was justified.

76.     Decedent's death resulted from a Merck's wrongful actions. As a direct and proximate result of Merck's wrongful actions as described herein, Decedent's estates is entitled to recover medical expenses, funeral expenses and loss of net accumulations.

77.     As a direct and proximate result of Merck's wrongful actions as described herein, Plaintiffs have suffered economic and non-economic losses and injuries including medical and funeral expenses, mental anguish and grief, value of future loss of support and services from the date of death, with interest, as well as support and maintenance from their husband and father; and loss of companionship, society and comfort.  These losses are permanent in nature and are a result of Merck's manufacturing and marketing of Vioxx®.

78.     In learning of the severe complications associated with its use, and continuing to act in the wrongful manner as described herein, Merck acted with a wanton and reckless disregard of Decedent's and Plaintiffs' rights, safety and life.

## XI.  PRAYER

WHEREFORE, Plaintiffs request judgment against Defendant on all claims for relief in the amount which will justly compensate Plaintiffs for: actual and consequential damages; mental and emotional distress; pre and post-judgment interest as allowed by law; attorneys fees; litigation costs, including expert fees; and for such other and further relief as the Court deems just.

PLAINTIFFS DEMANDS A JURY TRIAL IN THIS MATTER.

Respectfully submitted this 6th day of November 2007.

        *s/ Robert D. Erben*
        Robert D. Erben (Atty. Reg. #: 32636)
        MORIARTY LEYENDECKER ERBEN PC
        1123 Spruce Street, Suite 200
        Boulder, CO 80302
        (303) 495-2658 Tel
        (713) 528-1390 Fax
        *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

     I hereby certify on the 6th of November 2007 that a true and correct copy of the above and foregoing FIRST AMENDED COMPLAINT AND JURY DEMAND was filed wth the Court by CM/ECF and served by LexisNexis to the following named persons:

John N. Poulos, Esq.       *Out-of-State Attorney for Defendant*
Hughes Hubbard & Reed, LLP
101 Hudson Street, Suite 3601
Jersey City, NJ 07302-3910

Andrew H. Myers, Esq.      *Resident Attorney for Defendant*
Wheeler, Trigg, Kennedy LLP
1801 California Street, Suite 3600
Denver, CO 80202

Phillip A. Wittman, Esq.      *Defendant's Liason Counsel*
Stone Pigman Walther Wittman, LLC
546 Carondelet Street
New Orleans, LA 70130

Russ M. Herman, Esq.
Herman, Herman, Katz & Cotlar, LLP      *Plaintiff's Liason Counsel*
820 O'Keefe Avenue
New Orleans, LA 70113

            *s/ Christina J. Kim*
            Christina J. Kim, Paralegal
            MORIARTY LEYENDECKER ERBEN PC