## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re:  Vioxx                                    *
                                                 *
PRODUCTS LIABILITY LITIGATION                    *        MDL Docket NO. 1657
                                                 *
                                                 *        SECTION L
RAMON ALVARADO et al., Plaintiff                 *
                                                 *        JUDGE FALLON
vs.                                              *        MAG. JUDGE KNOWLES
                                                 *
MERCK & CO., INC., Defendant                     *
                                                 *
Case No. 06-7150                                 *
                                                 *
************************************

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO MERCK'S MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION

Plaintiff Milagros Medina-Alfador hereby responds to Merck's summary judgment motion

relating to the statute of limitations.  In its motion for summary judgment Merck makes a series of

erroneous assertions that misdirect this Court's analysis of the proper timing of this personal

injury claims. Upon inspection, Merck has not established that it is entitled to summary judgment

as plaintiff has timely asserted her claims for relief within the applicable limitations periods.

Plaintiff was injured by Vioxx. Her injuries occurred at various times before Vioxx was

withdrawn from the market, at a time that Merck was vigorously denying that Vioxx had any

association with cardiovascular injuries. When Merck could no longer maintain its charade after

the early results of the APPROVe study were disclosed, plaintiff filed her complaint within two

years of the time that Merck withdrew Vioxx from the market.  Merck contends that plaintiff's

case is time-barred.  Plaintiff demur for several reasons: 1) her claim is timely because she is

entitled to rely on Louisiana's prescription laws, which provide not only a liberal discovery rule, but also allow for tolling during the pendency of a class action under the *American Pipe* tolling doctrine;[1] 2) alternatively, under her home state's laws, her claim is not time-barred thanks again to the application of combinations of the discovery rule and/or class action tolling (with certain exceptions); and 3) not all plaintiff's claims are covered by 1 or 2-year statutes of limitations, e.g., plaintiff's fraud claims and warranty claims have longer statutes of limitations applicable to them, which claims  are not even addressed by Merck's motion and are patently timely.

Merck's principle argument to evade *American Pipe* tolling is that plaintiff is entitled to only "one bite" at the tolling apple. In other words, Merck contends that tolling may only follow from the first class action complaint and if the premier class action extinguishes a claim, then subsequent class actions can not be employed to toll a statute of limitations. Once establishing this rubric, Merck attempts to fit the instant plaintiff's claims into the *Cain* nationwide class action to extinguish any potential *American Pipe* tolling.[2]   However, it is immediately obvious that there is a lack of identity of claims between the *Cain* class action that sought only injunctive relief and the personal injury claims asserted by plaintiff in this case. A close inspection of the pleadings in *Cain* reveals that it was a purchaser's class that only requested injunctive relief and the recoupment of out of pocket expenses relating to purchases of both Vioxx and Celebrex. *Cain* was not a personal injury class action, as Merck contends. It is inapposite and affords no basis for

---

[1] The class action tolling doctrine, whereby the claims of absent class members are tolled for limitations purposes upon the filing of a class action complaint, was first announced by the Supreme Court in the seminal case of *American Pipe & Construction Co. y. Utah.* 414 U.S. 538 (1974).

[2] In making its various arguments about the relevance of the *Cain* litigation, Merck refers to the initial complaint that commenced the litigation, see Complaint in *Lertieri v. Merck & Co., Inc., Pharmacia Corp. and Pfizer Inc.,* CV 01-3441 (E.D.N.Y. May 23, 2001), which is exhibit 8 to Merck's Statement of Facts ("Merck's SOR"), and two amended complaints that were filed during the course of that litigation. *See* Amended Complaint in *Cain v. Merck & Co., Inc., Pharmacia Corp. and Pfizer Inc.,* CV 0 1-3441 (RD.N.Y. Aug. 1, 2001), exhibit 9 to Merck's SOF; Second Amended Complaint in *Cain v. Merck & Co,. Inc.,* CV 01-3441 (E.DN.Y. Sept. 18, 2002), exhibit 10 to Merck's SOF.

Merck's assertion that *Cain* not only triggered the statute of limitations, but also extinguished class tolling for every individual nationwide.

Merck also attempts to argue that in those jurisdictions that recognize the discovery rule that plaintiff should be charged with discovering her claims even prior to the time that Merck ostensibly learned for the first time that Vioxx posed a danger to patients, i.e., approximately coincident with the withdrawal of Vioxx from the market. Merck relies upon cases where the identity of the tortfeasor, the existence of negligence and the danger associated with the negligent act were clear that the negligent act gave rise to the liability. In such cases, extensive media coverage in a limited geographical area was deemed to put plaintiffs on notice of their claims. Such is not the case with Vioxx. Plaintiff suffered injuries years before Merck concedes the possibility that there was any evidence implicating Vioxx's role in causing injuries. Indeed, Merck took extensive actions designed to cloud the waters and cover up the role of Vioxx in causing such injuries. These actions by Merck began well before the withdrawal of Vioxx and continue to this very day, as Merck still denies that Vioxx caused plaintiff's injuries.

Under all these circumstances, there is simply no basis for determining, as a matter of fact and law, that plaintiff should be charged with discovering her claims prior to the withdrawal of Vioxx from the market or that her claims are untimely.

## II.   **LEGAL ARGUMENT**

### A.   **Under Louisiana's Choice of Laws Rules Plaintiff's Claims Are Timely**

"A federal court considering a diversity case that implicates choice of laws must determine which state's laws applies by following the choice of law rules of the forum state." *See Marchesani v. Pellerin-Milnor Corp.,* 269 F.3d 481, 485 (5th Cir. 2001). In its motion for summary judgment Merck recognizes that Louisiana's choice of law rules apply to the dispute

presently before this Court. *See* Merck Memo of Law at 6.[3] Assuming that Merck is correct that plaintiff's claims are time barred by her home state's laws, application of Louisiana's choice of law doctrine results in the application of Louisiana's prescription laws. And, under Louisiana's prescription laws, plaintiff's claims are timely.

A critical component of Louisiana's choice of law regime for purposes of Merck's motion for summary judgment is Article 3549 of the Louisiana Civil Code. Article 3549 allows for the application of Louisiana's statute of limitations even though the substantive law of another state would otherwise be applicable to a dispute. Article 3549 of the Louisiana Civil Code provides a vehicle for allowing the plaintiff's claims to go forward if they are timely under Louisiana law and Merck is correct that her claims are untimely at home. Article 3549 states in relevant part:

> B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and preemption law of this state applies, except as specified below:
>
> * * * * * * * * * *
>
> (2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.
>
> Notwithstanding the foregoing provisions, if the substantive law of another state would be applicable to the merits of an action brought in this state and the action is brought by or on behalf of any person who, at the time the cause of action arose, neither resided in nor was domiciled in this state, the action shall be barred if

---

[3] The application of Louisiana's choice of law rules is proper since the plaintiff filed her complaint directly in this Court. *See Alvarado* v. *Merck,* Case No. 06-7150 (E.D.La. September 29, 2006); *See Klaxon Co.* v. *Stentor Mfk. Co.,* 313 U.S. 487, 496 (1941)(forum court's choice of law rule applies); *Ferens* v. *John Deere Co.,* 494 U.S. 516, 524 (1990)(original forum court's choice of law doctrine applies for transferred cases).

> it is barred by a statute of limitation or repose or by a law of
> prescription or preemption of the other state, and that statute or law
> is, under the laws of the other state, deemed to be substantive,
> rather than procedural, or deemed to bar or extinguish the right
> that is sought to be enforced in the action and not merely the
> remedy.

La.Civ.Code.Ann.Art. 3549. 4

In its choice of law analysis, Merck relies upon Marchesani, supra, for the proposition that

plaintiff's home state's limitations period apply and that plaintiff is time-barred in her home court.

Marchesani, however, favors the plaintiff in terms of its construction of Article 3549. Merck

overlooks the fact that since *Marchesani* was decided, the Louisiana state legislature

revised the text of Article 3549 on June 29, 2005. New Article 3549 directs that

where the substantive laws of another state applies and the plaintiff's claims would be

---

[4] Although Merck may suggest otherwise, Article 3549 will only be applicable in this litigation for purposes of applying Louisiana's statute of limitations to save a plaintiff's claim where another state's substantive law applies and a plaintiff's claims would be time-barred under that law. Article 3549 will not be applicable in this litigation to preclude a plaintiff from bringing a claim where his or her claim would be timely under the law of the state whose substantive law applies but untimely under Louisiana law irrespective of language in subsection (B)(1) of Article 3549. *See* La.Civ.Code.Ann.Art. 3549 (B)(1)("If the action is barred under the law of this state, the action shall he dismissed unless it would not he barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice). Merck simply cannot meet its Article 3549 (B)(1) burden of establishing the absence of "compelling considerations of remedial justice" for purposes of applying the statutes of limitations of the state whose substantive law controls, *i.e.* where a plaintiffs claims would be timely under that law but untimely under Louisiana law. This is because the expectations of plaintiffs and the overwhelming number contacts with the state whose substantive law controls establishes the existence of compelling considerations of remedial justice.

In this binary litigation, the substantive law that will likely be applicable to a particular plaintiff's claims will be the law of his or her home state, which is the state where the injury occurred and where Vioxx was prescribed and ingested. In such cases, it would be inequitable to dismiss a complaint that would be timely under the law of the plaintiffs domicile, given the extent of contacts with that state and the plaintiffs expectations that the timeliness of his or her complaint will be governed by the law of her or his domicile. *See Cassano v. American Tobacco Company*, 961 F.Supp. 953, 957 (E.D.La. 1997)(Louisiana "[p]rescription statutes arc to be strictly construed against prescription and in favor of the obligation sought to be extinguished, so if there are two constructions of the statute, the one which favors maintaining the action should be adopted."), *citing Wimberly* v. *Gatch,* 635 So.2d 206 (La. 1994) and *Bustamento v. J.D. Tucker,* 607 So.2d 532 (La. 1992). Because Louisiana strictly construes statutes against prescription, Article 3549 should be construed in such a way that its application would permit a plaintiff to pursue claims that would be timely under the law of their home state, where that state provides the substantive law applicable to the claims, and where the vast majority of material occurrences transpired in that state.

time barred under the laws of that state, Louisiana courts are to apply Louisiana's prescription laws if the state whose substantive law applies deems its statute of limitations to be procedural. *See* La.Civ.Code.Ann,Art. 3549 (C). Here, the foreign jurisdiction comprising plaintiff's home state, Puerto Rico, find that its statute of limitation is procedural and not substantive. Assuming that Merck is correct that plaintiff's claims are time barred in her home jurisdiction, Article 3549 dictates that Louisiana's prescription statute of limitations apply to these claims.

In *Marchesani*, the Fifth Circuit determined that the substantive law of Tennessee controlled the liability aspect of the plaintiffs' claims, but nevertheless applied Louisiana law of prescription. *See Marchesani*, 269 F.3d at 491 ("In light of this clear directive, we have no choice but to follow it to the inexorable conclusion that Louisiana's law of prescription, under which the Marchesani's claims are not time-barred, controls this case."). The defendant in *Marchesani*, as in this case, failed to meet its burdens of establishing that maintenance of the action in Louisiana was not warranted by the policies of Louisiana and its relationship to the parties or the dispute, and that application of Louisiana law of prescription was not warranted by compelling considerations of remedial justice. *Id.* at 491 ("Milnor's reach, however, exceeds its grasp of article 3549's high standards for displacing Louisiana's law of prescription."). To meet these "high standards for displacing Louisiana's law to prescription" in such cases, a party must establish that policies underlying Louisiana prescription laws are not implicated, and that the policies of the other state are more seriously implicated. *Id.* Merck has failed to

address, much less, meet its burden that Louisiana law should not apply.[5]

Louisiana employs a short limitations period in personal injury actions of only one-year, but a liberal discovery rule in cases where an injury or its cause is unknown. *See* La. Civ. Code. Ann. Art. 3492 (one year limitations period in personal injury cases); *Reed* v. *St. Charles Gen. Hosp.,* 815 So. 2d 319, 322 (La. Ct. App. 4th Cir. 2002)(recognizing that accrual of cause of action is postponed while an injury or its cause is unknown). In this case, plaintiff was unaware of the association between her injuries and her use of Vioxx before Vioxx was withdrawn from the market due to Merck's efforts to conceal that association, and Merck has asserted it did not know of such an association until it determined that it should remove the drug from the market.[6] Merck's efforts to conceal

---

[5] Because Merck cannot meet this initial burden of establishing that the policies of Louisiana are not implicated, it is not necessary to evaluate whether the policies of the other states are more seriously implicated for purposes of Article 3549, even assuming that the substantive laws of these other states control and the plaintiffs claims would be time-barred under such law.

Suffice it to say; however, applying Louisiana law, under which plaintiff's claims are timely, will promote the interests of deterrence and compensation, by forcing a negligent party, Merck, to compensate victims of its negligence where that party has distributed a harmful product nationwide, including in Louisiana. There was no variation in the nature of the product that was distributed by Merck, meaning that Louisiana's interests in deterrence and compensation will be equally served by applying its statute of limitations to parties injured in other states that are litigating their claims here as it would if the plaintiffs were actually from Louisiana. Because Merck does business in Louisiana, distributed Vioxx in the state, and Louisiana residents suffered Vioxx related injuries, the interests in deterrence and compensation that underlie Louisiana's statute of limitations are implicated. In addition, the interest in predictability underlying Louisiana's statute of limitations will also be promoted by applying Louisiana's prescriptive law to a MDL proceeding being litigated in a Louisiana federal court. This is especially true since these MDL proceedings include a national class action complaint tiled by a Louisiana resident. *See* discussion of the national class action complaint filed in *Russell v. Merck ck- Co., Inc.,* Civ.No. 04-712 (M.D.La.), *infra*

[6] For purposes of applying Article 3549 to determine whether the policies of Louisiana warrant application of Louisiana's prescription law, the Louisiana legislature has instructed that such determinations ¯should be determined by the court by examining all the circumstances surrounding the particular case' and not merely by a mechanical tabulation of factors."' *See Marchesani,* 269 F.3d at 492, *quoting* La.Civ.Code.An.art. 3549, Revision Comment (i). Based upon the above discussion, sufficient grounds exist to warrant the application of Louisiana's prescription laws.

the association between Vioxx and cardiovascular injuries continued until well after the drug was removed from the market. Under Louisiana's liberal discovery rule it ordinarily becomes a question of **fact** for a jury, not a court on a motion for summary judgment, to decide whether or not plaintiff's claims were timely filed within a year of the discovery that the cause of their injury was due to Vioxx.[7] *See Harvey* v. *Amoco*

---

Because Merck had knowledge of the association between Vioxx and cardiovascular injuries well before it withdrew the drug from the market, *see* Plaintiffs' Counter-Statement of Fact at subsections A, B and C, Merck's denial of such association both before and after it withdrew the drug from the market was a continuing tort that tolled the limitations period beyond September 30, 2004. *See Runge Corporation v. Gatx Corporation,* 557 So.2d 1376, 1386 (La. 990)("So long as the defendant with a duty to disclose possesses knowledge and yet fails to act, the tort is a continuing one which renews itself from day to day. Prescription is such case will not begin to run until the time when plaintiff learns that he has been injured by the failure to disclose.").

Because Merck has asserted its naproxen theory and its 18-month defense both publically and in defense against Vioxx personal injury actions, *i.e. Barnett, Dedrick, Humeston,* Irvin, *Mason* and *Smith,* Merck should be judicially estopped from arguing that the cause of plaintiffs' injuries were discoverable before the withdrawal of Vioxx from the market. See *Insolia* v. *Phillip Morris Incorporated,* 216 F.3d 596, 598 (7th Cir. 2000)("For decades tobacco companies have assured the public that there is nothing to fear from cigarettes, yet they now slough off lawsuits like this one by professing that everybody knew all along that smoking was risky ... In taking this litigation stance, the cigarette makers either arc suffering from amnesia or arc acknowledging that their propaganda over the years has been ineffectual. Judicial estoppel, however, applies only to inconsistent position adopted in litigation ...."); *see also Whiteley* v. *Philip Morris Inc.,* 117 Cal.App.4th 635 (Cal.App.Dict. 2004)(finding tobacco manufacturers were estopped from arguing that plaintiffs claims were discoverable at earlier date since the manufacturers had denied the relationship between smoking and health risks for decades). Indeed, because information conclusively refuting the 18-month defense only recently came to light, *see* Plaintiffs' Counter-Statement of Fact at subsection C, Merck should be estopped from arguing that plaintiffs' claims were discoverable before May 30, 2006, the date that Merck publicly admitted its published APPROVe study was incorrect. *Id.*

[7] In arguing that the plaintiffs should have discovered that their injuries were attributable to Vioxx at an earlier date, Merck relies on *Touchet* v. *Baker Hughes Inc.,* 737 So.2d 821, 825 (La.App. 3'" Cir. 1999). In *Mitchel,* the court determined that plaintiffs who were exposed to a toxic spill were on notice of their injuries and the cause after stories regarding the spill had been reported on television and in the local newspaper. Although this litigation also involves exposure to a toxic substance, the similarities end there. In that toxic spill case, the negligence and the toxicity of the substance was obvious from the time of the spill. The identity of the tortfeasor was also obvious as well. Although this is not always the case in such litigation, such was the case in *Touchet.* Under those specific circumstances the plaintiffs who had been exposed to a toxic agent were charged with a duty to investigate upon learning that he or she had been or potentially had been exposed to such an agent. Even in cases like *Touchet,* it is unlikely that a court would charge a plaintiff with notice where the cause of their injury is not obviously linked to their ingestion of a prescription medicine.

*Production Company,* 696 So.2d 672, 679 (La.App. I<sup>st</sup> Cir. I 997)(affirming trial court and determining that jury instructions on *contra non valentem* doctrine were proper); *see also In re Med. Review* Panel of Howard, 573 So. 2d 472, 474 (La. 1991)(discovery rule will protect a plaintiff so long as his or her ignorance of an injury or its cause is "not willful, negligent or unreasonable.").

With the clamor that arose after Merck withdrew Vioxx from the market on September 30, 2004, Merck now contends that the 1-year prescription period ended no later than September 30, 2005. Because the plaintiff's complaint was filed after that date (on September 29, 2006), Merck contends that plaintiff's claim is time barred. That is not the case.

## 1.   Because Louisiana Follows *American Pipe* tolling Plaintiff's Claims are Timely under Louisiana Law

Plaintiff's claims are well within this 1-year period because the prescription period was suspended by the filing of a class action. Under the equitable tolling principles established in the

---

In contrast, the role of Vioxx in causing serious adverse cardiovascular events did not become well known until after the drug was withdrawn from the market. Merck's conduct and credibility are at issue since Merck claims it did not know of the association between Vioxx and cardiovascular injury until after the APPROVe study. *See* Counter-Statement of Fact at subsection C. Given that Merck denied that there was evidence of an association between Vioxx and cardiovascular injuries until after the APPROVe study, and that Merck manufactured the 18-month defense based on its review of that study, *Id.,* how can plaintiffs be charged with knowledge that Vioxx caused their injuries and/or that Merck breached a duty owed to plaintiffs when reliance on Merck's explanations of the APPROVe data, as well as the VIGOR data, was entirely reasonable?

Indeed, a series of Louisiana medical malpractice cases support the conclusion that a plaintiff cannot be charged with knowledge of a claim where the plaintiff reasonably relies upon explanations set forth by the defendant. *See Stevenson v Touro,* 640 So.2d 633, 634 (La.App. 4th Cir. 1994)("Mere apprehension that something is wrong will not begin prescription ... a plaintiff cannot be charged with knowledge of [the defendant's] negligence when she continues to believe the ... [defendant's] explanation   Even  if  a  ... victim is aware that an undesirable condition developed after medical treatment, prescription does not run as long as it is reasonable for the victim not to recognize that the condition is related to the alleged ... [negligent act]."); *In re Medical Review Panel of Howard,* 573 So.2d 472, 474 (La. 1991)(same); *Cordova v. flartlind Accident & Indemnity,* 387 So.2d 574, 577 (La. 1980)(same); *Baum* v. *Cato,* 599 So.2d 909, 9 11 (La.App. 4th Cir. 1992)(same); *Malbrough v. Hamsa,* 463 So.2d 639, 642-643 (La.App. 5th Cir, 1984)(same). These cases clearly establish that a plaintiff must have actual or constructive knowledge of the causal relationship between the tortious acts or omissions and the damages thus sustained. *See Cordova,* 387 So.2d at 577;

seminal case of *American Pipe* and its progeny, the filing of a class action tolls the running of the statute of limitations for all putative class members. The Supreme Court recognized the right of prospective class members to intervene if class certification is denied not withstanding that the applicable limitations periods may have run on her individual claims.

The policy driving the Supreme Court's opinion was its concern that the efficient administration of justice could be thwarted if the very purpose of the class action device was frustrated:

> The commencement of the action satisfied the purpose of the limitations provision as to all those who might subsequently participate in the suit as well as for the named Plaintiff. To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties....

*American Pipe*, 414 U.S. at 551. The *American Pipe* doctrine was later expanded by *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983), where the Supreme Court held that "[t]he filing of a class action tolls the statute of limitations 'as to all asserted members of class' ... not just as to intervenors," In extending this doctrine in *Crown, Cork*, the Supreme Court stated that:

> A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own limitations. The result would be a needless multiplicity of actions - - precisely the situation the Federal Rule of Civil Procedure 23 and the tolling rule of American Pipe were designed to avoid.

*Crown, Cork*, 462 U.S. at 350-5 1. Accordingly, the federal courts recognize that the statute of limitations must be tolled during the pendency of a class action until a definitive denial of class certification to reconcile the statute of limitations with the applicable rules and policies regarding class action proceedings.

---

*Griffin* v. *Kinherger*, 507 So.2d 821, 823-24 (La. 1987); *Chaney* v. *State, DHHR*, 432 So.2d 256, 259-260 (La.

Two of the first filed Vioxx class action complaints seeking national personal injury classes were filed in Russell v. Merck & Co., Inc., Civ. No. 04-712 (M.D.La.) and Williams v. Merck & Co. Inc., 04-CV-235 (E,D.Ky.). Ru*ssell* was filed on October 7, 2004 and *Williams* was filed on November 12, 2004. Assuming that Merck's announcement of the withdrawal of Vioxx from the market on September 30, 2004, triggered the running of plaintiff's prescription period, under the *American Pipe* tolling doctrine, the 1-year prescription period applicable to the plaintiff's would have counted down seven days under *Russell* and 43 days under *Williams* before being suspended. *See Taylor,* 579 So.2d at 446. The tolling effect of these class actions would have carried through until the definitive denial (which has yet to occur),[8] but for the fact that while the plaintiff's prescription period was being tolled she filed her individual complaint.

## 2.    The *Cain* Litigation is Irrelevant to this Court's Tolling Analysis

Although Merck acknowledges that Louisiana follows *American Pipe* and recognizes cross jurisdictional tolling, Merck attempts to evade these doctrines by employing an unrelated Vioxx class action to evaluate tolling, *i.e.* the *Cain* litigation. This argument lacks merit.

For *American Pipe* tolling to apply, there must be an identity of issues/claims between the purported class and the person claiming the benefits of tolling from the antecedent class proceeding. *See Crown, Cork & Seal Co.,* 462 U.S. at 355 (Powell, J.,

---

1983).

[8]   Presumably, class action tolling is still in effect for each individual state as this Court left open the potential for each jurisdiction to maintain a class action in its Order and Reasons of November 22, 2006. *See 1,; re Vioxx Products Liability Litigation,* MDL No. *1657,* Order and Reasons at 5 n. 5 (F..D. **La. Nov.** 22, 2006)(Order denying nation-wide class personal injury class action); *see also* Second Amended Master Class Action Complaint in *in re Vioxx Products Liability Litigation,* MDL No. *1657* (E.D.La. January 23, 2006)(wherein a class representative has been identified for the vast majority of states, effectively tolling the limitations periods for Plaintiff in [bose sIales): class action complaint filed in *Williams v. Merck & Co.. Inc.,* 04-CV-235 (LD.Ky)(wherein a class action has been filed in Kentucky, tolling the limitations period for Kentucky residents); class action complaint filed in *Turner* ij'. *Merck & Co, Inc.,* CV-2004-677 (Cir.CL, Houston County)(wherein a class action has been filed in Alabama, tolling the limitations period for Alabama residents), Exhibit "F" hereto.

concurring)("[W]hen a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that concern the same evidence, memories, and witnesses as the subject matter of the original class suit, so that the defendant will not be rejudiced.")(internal quotation marks and citation omitted).[9] Although *Cain* was a class action, the litigation did not involve a personal injury class. The plaintiffs in that case sought only equitable relief in the form of the establishment of a medical monitoring fund, out of pocket expenses, and other injunctive relief. *Id.* The initial complaint filed in the *Cain* litigation, *Lettieri* v. *Merck Se Co., Inc., Pharmacia Corp. and Pfizer Inc.,* CV 01-3441 (E.D.N.Y., filed May 29, 2001), was actually filed on behalf of a discreet class comprised of users of both Vioxx and Celebrex. *Lettieri* Complaint paragraph 1 and 19.[10] The Complaint in equity requested *inter alia* relief in the form of "emergency notice to all class members" and medical monitoring. See Lettieri Complaint at paragraphs 25 and 60, Exhibit 1 to Merck's Motion for Summary Judgment ("Merck's MSJ").

The initial Lettieri Complaint was later amended on August 1, 2001, to add new representative plaintiffs and amend the class definition to clarify the disjunction between Vioxx and Celebrex. See Amended Complaint in *Cain v. Merck & Co., Inc., Pharmacia Corp. and Pfizer Inc.,* CV 01-3441 (E.D.N.Y.), Exhibit 2 to Merck's MSJ. The Amended Complaint also sought the same equitable relief Id. at 116, 19. Although couched as a complaint in equity the

---

[9] *See generally Hromyak* v. *Tyco Intern. Ltd.,* 2006 WL 3498602, (Fla.App. 4 Dist, 2006)("We agree that the *American Pipe* holding requires that the claims in the later action be the same as those alleged in the earlier action. If the earlier federal class action involved different claims with different classes, plaintiff would not necessarily have been a member of the earlier class. If he was not a member of the class, he could derive no benefit from its pendency. On the other hand if he had been a member, his interests would have been asserted in that litigation.").

[10] Merck conveniently substitutes "and" with "or" to mask this distinction. *See* Merck Brf. at 3; *see* Plaintiffs' Response to Merck's SOF '119-12.

amended complaint added to its prayer for relief an incongruous request for recovery of damages for wrongful death. Id. at 1168.11

This obvious error was corrected when the second amended complaint was later filed on September 18, 2002, that withdrew the incorrect language. *See* Second Amended Complaint, at 192, Exhibit 3 to Merck's MSJ. Once again, the Second Amended Complaint sought primarily equitable relief. However, the Second Amended Complaint rectified the allegations of its predecessor by removing those assertions relating to damages for wrongful death. *See Cain* Second Amended Complaint paragraph 92. This clarification was expressly made: "Plaintiffs do not seek in this action damages rising from any physical injury caused by taking Vioxx or Celebrex." *Id.* These changes apparently were done with the court's permission and without any requirement to provide to notice absent class members of this alteration.[12] Despite the express disavowal of personal injury

---

[11] This aberrational language is not relied upon by Merck to assert that the *Cain* complaint sought damages for personal injury claims because it was obvious to Merck and that court that the langatige was derived by the *Cain* plaintiffs' awkward attempt to articulate an equitable theory for recoupment of procurement expenses. Specifically, the Amended Complaint states:

> That plaintiffs and other class members be awarded damages incidental to their procurement, taking and/or switching to Vioxx and Celebrex from alternative pain relievers, including but not limited to damages for wrongful death, chart attacks, strokes or any other cardiac illness they have already suffered as well as damages for the increased risk that they will suffer those illnesses in the future.

*Cain* Amended Complaint 1168(e).

[12] It is a fundamental concept in federal class action proceedings that the court overseeing the litigation has a fiduciary duty to absent class members. *See In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 225 (5th Cir. 198 ()(court overseeing class action proceeding acts as fiduciary to absent class members). Thus, implicit in the fact that the *Cain* court permitted the filing of the second amended complaint is that the court also determined that the filing of such complaint would not be prejudicial to absent class members. Otherwise, the court would have been required to order notice to persons like the instant plaintiffs who had personal injury claims. *See Diaz* v. *Trust Territory of Pacific Islands*, 876 F.2d 1401, 1409 (9th Cir. 989)(finding pre-certification notice to absent class members of dismissal of class action is required where absent class members would be prejudiced in the absence of such notice); *Caston* v. *Mr. .T's Apparel, Inc.,* 157 F.R.D. 31, 34 (S.D.Miss.1994)(notice to absent class members is required whenever plaintiff seeks voluntary dismissal of suit pursuant to settlement of their individual claims, even when dismissal is sought prior to

claims, Merck contends that *Cain* asserted such claims because the Amended Complaint advanced legal theories of failure to warn, strict liability and negligence. Merck overlooks that the mere assertion of legal theories is of no moment since legal damages were never requested for them. Merck's contention is not well founded. Further distancing *Cain* from these proceedings is the fact that no motion for class certification was ever sought in that case, nor ruled upon prior to the case being transferred to this MDL.[13] Accordingly, because *Cain* did not involve a personal injury class action, and because there was hardly anything remotely approaching a definitive denial of a personal injury class claim in that case, Merck's reference to *Cain* is immaterial for purposes of *American Pipe* tolling.

### 3. *American Pipe* Tolling is Available in Personal Injury Cases

In a further effort to deny the plaintiff's the benefit of the class action tolling doctrine, Merck challenges the wisdom of applying the Supreme Court's decision in *American Pipe* to a class action involving personal injuries. *See* Merck's Memo of Law at 14-15. It is Merck's contention that Louisiana would not recognize class action tolling in such cases. This

---

certification), following *Roper* v. *Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978); *Philadelphia Electric Company* v. *Anaconda American Brass Company*, 42 F.R.D. 324, 326 (E.D.Pa. 1967)(prior to entry of order regarding class certification, action must be assumed to be class action for purposes of class action rule requiring notice to all members of class of proposed dismissal or compromise).

[13] Merck's reliance upon *Hunter* v. *American General Life and Accident Insurance Company*, 384 F.Supp.2d 888 (D.S.C. 2005), for the proposition that a voluntary dismissal of a claim amounts to a denial of class certification is mistaken. Apart from the settlement context which generated its holding, the court in *Hunter* found that only a definitive denial of class certification operates to sever any tolling principles afforded by an antecedent class action. Indeed, the court found exceptions even to that rule in instances "where the later class action would not constitute relitigation of an earlier denial of class certification based on deficiencies in the class itself." *Id.* at 892, citing, *Yang* v. *Odom*, 392 F.2d 97 (3d Cir. 2004); *Catholic Social Services, Inc.* v. *Immigration and Naturalization Service*, 232 F.3d 1139 (9th Cir. 2002). *Hunter* merely determined "[w]hether a second class action should be allowed to rely on the *American Pipe* tolling rule when the earlier class definition was voluntarily abandoned in favor of a narrower definition in the context of settlement negotiations," by holding that settlement revisions of class definitions arc the equivalent of denials of class motions if a broader class had been requested. *Hunter*, 384 F.Supp.2d at 892. That fact scenario was not present in *Cain* and is not present in this litigation either.

argument, which is again repeated in Merck's discussion of Puerto Rico law, is unsupported by any controlling authority.

The premise for Merck's argument is that personal injury class actions are "uncertifiable." Merck provides no case that directly supports its position and instead offers off-point cases such as In re American Med. Svs. Inc, 75 F.3d 1069 (61' Cir. 1996)("personal injury class actions are usually not certifiable"). Merck's argument has not been universally adopted and is not the law in this circuit or elsewhere. See Mullen v. Treasure Chest Casino, 186 F.3d 620, 626 (5th Cir. 1 999)(affirming certification of personal injury class), cert. denied, 528 U.S. 1159 (2000). See also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1230 (9th Cir. I 996)(Ninth Circuit does not recognize an absolute bar to certification of a multistate plaintiff class action in medical products liability context).14 Since the premise for Merck's argument is faulty, there is no basis for its conclusion. Until American Pipe is reversed, it must be observed and respected.

Although there is scant authority addressing the applicability of *American Pipe* in personal injury cases, at least one federal court sitting in the Eastern District of Louisiana has determined that Louisiana would apply American Pipe in a personal injury case. *See In re Factor VIII or IX Concentrate Blood Products Litigation*, 2000 WL 282787 (E.D.La. 2000) (applying Louisiana state law and finding *American Pipe* doctrine applicable in a mass tort personal injury case). Since there is no law to the contrary m any of the other jurisdictions at issue, there is no basis for concluding that such jurisdictions would reject *American*

---

[14] Additionally, despite several opportunities to address this very issue, the Supreme Court has declined any invitation to deem all mass tort cases uncertifiable. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)(in finding the certification of a mandatory settlement class of personal injury claimants to be improper in a limited fund case, *i.e.* because there was no showing that the fund was actually limited, the Supreme Court expressed no opinion as to the propriety of certifying a class of personal injury claimants); *see also Amchein Products, Inc.* v. *Windsor*, 521 U.S. 591 (1997)(leaving open the prospect that certification of settlement-only class in a mass tort case would be proper if there were commonality

*Pipe* tolling in personal injury cases.

**B.    Plaintiff Timely Asserted Claims for Relief Under Puerto Rico Law**

Assuming that this Court finds that Louisiana law is not applicable to the plaintiff's claims, alternative arguments exist to support the timeliness of plaintiff's claims under her respective state's statutes of limitations.

**1.    Plaintiff's Claims are Timely Under Puerto Rico Law**

Puerto Rico generally applies a one-year statute of limitations in personal injury cases. *See* Article 1868(2) of the Puerto Rico Civil Code, 31 P.R. Laws Ann § 5298(2).   However, Puerto Rico follows the discovery rule. "A cause of action under article 1802 accrues -- and the prescriptive period set by article 1868(2) therefore begins to run -- when the injured party knew or should have known of the injury and of the likely identity of the tortfeasor." Tokyo Marine & Fire Ins. Co. v. Perez & Cia, de Puerto Rico, Inc., 142 F.3d 1, 3 (1st Cir. 1998)(citing Colon-Prieto v. Geigel, 115 D.P.R. 232, 243 (1984)). This Court must, therefore, examine when both of those elements were present in the instant case.

Notice of an injury occurs when there "exist some outward or physical signs through which the aggrieved party may become aware and realize that [s]he has suffered an injurious aftereffect." Kaiser v. Armstrong World Indus., Inc., 872 F.2d 512, 516 (1st Cir. 1989)(quoting Puerto Rico authorities). Plaintiff Medina-Alfador first began taking Vioxx in 2000.  While taking Vioxx plaintiff experienced strong pain and throbbing in her heart in 2001.  Therefore, it could be argued that plaintiff gained such notice of her injuries in 2001.

However, the mere fact that plaintiff Medina-Alfador was injured was "not necessarily sufficient for knowledge that a tortfeasor was involved as well." *Espada v. Lugo*, 312 F.3d 1, 3

---

of issues of fact and law and adequacy of class representation).

(1st Cir 2002). "Colon Prieto v. Geigel, ... 15 P.R. Offic. Trans. 313 (1984) teaches that not only must the aggrieved person know that [s]he has been injured; [s]he must know who is the author of the injury in order to address the action against him, so [s]he may know who to sue (15 Offic. Trans. at 330). And *Galarza v. Zagury*, 739 F.2d 20, 24 (1st Cir. 1984) has read Colon Prieto as making clear that knowledge of the author of the harm means more than an awareness of some ill effects resulting from an operation by a particular doctor." *Espada*, 312 F.3d, at 4 (internal quotation marks omitted).

It follows from the foregoing that "[i]f a plaintiff is not aware of some level of reasonable likelihood of legal liability on the part of the person or entity that caused the injury, the statute of limitation will be tolled." *Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 13-14 (1st Cir. 1997). "Puerto Rico decisions say that the knowledge required to start the statute running is knowledge not only of harm but also of 'the origin of the injury, which ... include knowledge of the wrong and a causal link between the wrong and some harm." *Villarini-Garcia v. Hosp. Del Maestro*, 8 F.3d 81, 84 (1st Cir. 1993).

It was only when plaintiff Medina-Alfador knew that her injuries may have been caused by her ingestion of Vioxx "that [s]he also had actual knowledge of the possibility that [Merck] w[ere] the author[s] of h[er] injury -- that is, enough to provide a causal nexus between [their] conduct and the injury." *Espada*, 312 F.3d, at 4. That actual knowledge came to plaintiff on or about August 2006. And such knowledge that Merck had increased the likelihood of plaintiff's injuries "meant that the injury could be considered a tort." Id. Plaintiff filed her complaint within two months of this actual knowledge on September 29, 2006.

The inquiry does not end here because the Puerto Rico Supreme Court decisions hold that "actual knowledge is not required where, by due diligence, such knowledge would likely have

been acquired." *Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 16 (1st Cir. 1997). Furthermore, there is an exception to the rule: "[i]f a plaintiff's suspicions that [s]he may have been the victim of a tort are assuaged by assurances made by the person who caused the injury, a plaintiff will not be held responsible for failing to pursue h[er] claim more aggressively." *Id.* (citing, *Colon Prieto*, 15 P.R. Offic. Trans., at 329-330). Here, Merck concealed the role that Vioxx had on plaintiff's injuries for many months.

Finally, this Court should bear in mind that in cases where a tort claim is filed beyond the one-year statutory term, "the question whether the plaintiff has exercised reasonable diligence is typically given to the jury, even where no raw facts are in dispute, because the issues of due diligence and adequate knowledge are still ones for the jury so long as the outcome is within the range where reasonable men and women can differ." *Espada*, 312 F.3d, at 4 (internal quotation marks omitted).

Plaintiff Medina-Alfador's remaining claims against Merck are also timely because they tolled by virtue of Merck's fraudulent concealment. Puerto Rico recognizes tolling of the statute of limitations where a defendant has fraudulently concealed a plaintiff's right to pursue a claim against the defendant.

Following the withdrawal of Vioxx from the market, Merck aggressively asserted that Vioxx was not associated with heart attack or stroke before 18 months of usage. Merck successfully sold this defense to the media, the scientific community and others. This defense was not seriously questioned until Merck released new data to the FDA, including an analysis from a 12-month extension of the APPROVe trial on May 11, 2006, and publicly admitted that the 2005 published APPROVe data was incorrect because it used an incorrect statistical method to arrive at the 18-month defense on May 30, 2006. While Merck may suggest that it did not intentionally

mislead the scientific community or the public, its credibility on this issue becomes a material question of fact that must be assessed by a jury. Additionally, in light of the above misinformation that conveyed to the public at the behest of Merck, Merck cannot establish that plaintiff's claims were discoverable before May 11, 2006. Plaintiff Medina-Alfador filed her complaint within five months of this date on September 29, 2006.

The federal doctrine of fraudulent concealment delays the commencement of a limitations period until plaintiff discovers the existence of his or her cause of action, provided certain conditions are met. *See Torres Ramirez*, 898 F.2d, at 229. "The defendant raising the limitations defense must have engaged in fraud or deliberate concealment of material facts relating to his wrongdoing and the plaintiff[s] must have failed to discover these facts within the normal limitations period despite [their] exercise of due diligence." *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99 (1st Cir. 1979). And, the "plaintiffs, actively misled by defendant, relied to their detriment." *Rivera-Gómez v. de Castro,* 843 F.2d 632 (1st Cir. 1988), opinion after remand, 900 F.2d 1, 3 (1st Cir. 1990). *See also Morris v. Government Dev. Bank*, 27 F.3d 746, 748-49.

Similarly, under Puerto Rican law, an action will not accrue where the defendant has willfully and wrongfully ("dolosamente") concealed facts essential to the action. P.R. Laws Ann. Tit. 31, §5298; *Benitez-Pons*, 136 F.3d, at 61; *Torres Ramirez*, 898 F.2d, at 229; *Rivera-Gomez v. de Castro*, 843 F.2d 631, 633 (1st Cir. 1988); *Ramirez Morales v. Rosa Viera*, 815 F.2d 2, 4 (1st Cir. 1987); *Rivera Encarnacion v. E.L.A.*, 113 P.R. Dec. 383, 386 (1962).

Plaintiff's remaining claims are also timely because since Puerto Rico follows the discovery rule, for the reasons discussed above, plaintiff's implied warranty claims are timely because plaintiff did not discovery the connection between her injuries and Vioxx until August 2006 and she filed her suit within tow months of this discovery on September 29, 2006.  In cases

involving the discovery rule, Puerto Rico case law clearly recognizes that the jury is to determine whether a plaintiff's claims are timely with respect to the applicable limitations period. *See Espada*, 312 F.3d, at 4. Accordingly, plaintiff's implied warranty claims are timely as they were filed within the statute of limitations of her discovering the cause of her injuries and/or the identity of Merck as the tortfeasor.

For the reasons set forth above, plaintiff Medina-Alfador has timely asserted her claims against Merck under Puerto Rico law.

## III.    CONCLUSION

For the reasons set forth above, Merck's motion for summary judgment should be denied.

Respectfully submitted,

Date: November 7, 2007

By: _____
Archie C. Lamb, Jr.
THE LAMB FIRM, LLC
2017 Second Avenue North, Suite 200 (35203)
P.O. Box 2088
Birmingham, Alabama 35201
Phone: (205) 324-4644
Fax: (205) 324-4649

Eric Quetsglas
QUETSGLAS LAW OFFICES
PO Box 16606
San Juan, Puerto Rico 00908
Phone: (787) 722-0635
Fax: (787) 722-3970

E. Kirk Wood
E. KIRK WOOD, P.C.
P.O. Box 382434
Birmingham, Alabama 35283

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all parties by electronically uploading the same to LexisNexis File and Serve, and that said original is being filed with the Clerk of the United States District Court for the Eastern District of Louisiana on this the 7th day of November, 2007.

By: _____
Archie C. Lamb, Jr.
THE LAMB FIRM, LLC