UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX | : |
| | : MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : |
| | : SECTION L |
| | : |
| This document relates to: | : JUDGE FALLON |
| | : MAG. JUDGE KNOWLES |
| PHILLIP DAWSON, Plaintiff | : |
| | : |
| v. | : |
| | : |
| MERCK & CO., INC., Defendant | : |
| | : |
| Case No. 07-1259, | : |
| | : |
| and | : |
| | : |
| TIMOTHY R. WATSON, Plaintiff, | : |
| | : |
| v. | : |
| | : |
| MERCK & CO., INC., Defendant | : |
| | : |
| Case No. 05-5545. | : |
| | : |

**PLAINTIFF TIMOTHY R. WATSON'S MEMORANDUM OF LAW IN OPPOSITION
TO MERCK'S RENEWED MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

In its "Renewed" Motion for Summary Judgment, Merck advances the same tired arguments it unsuccessfully levied in its Motion for Summary Judgment denied by the Court earlier this year. Merck's purported justification for filing the renewed motion is the development of "substantial additional information" not included in Merck's original motion. Specifically, Merck attempts to inundate the Court with media coverage of the Vioxx recall on September 30, 2004 in hopes of establishing the trigger date for the statute of limitations as a matter of law and destroying Watson's

discovery rule/tolling defense. It is significant that all of this "additional information" was available to Merck when it filed its original motion - Merck simply neglected to include it. But even more importantly, none of the additional information entitles Merck to summary disposition. As the Court correctly ruled in its Order denying Merck's original summary judgment motion, there is a fact issue as to whether Watson's claims are barred by limitations under Kentucky law. Accordingly, the Court should deny Merck's redundant, "renewed" motion and allow this important case to proceed to trial.

## II.  LEGAL ARGUMENT

### A. The PSC's Prior Summary Judgment Response Defeats Merck's Motion for Summary Judgment.

The Plaintiffs' Steering Committee filed a *Memorandum of Law in Opposition to Merck's Motion for Summary Judgment* on January 4, 2007. That pleading disposes of virtually every argument set forth in Merck's renewed motion. Thus, the document and its exhibits (docket entries 9548, 9548-1 through 9548-6) are incorporated by reference herein for all purposes.[1]

### B. Watson's Claims are Not Subject to Summary Judgment Under Kentucky Law.

Although Merck's renewed motion offers no valid basis for this Court to abandon its previous Order denying summary judgment, Watson takes this opportunity to provide the Court with an even more comprehensive analysis of applicable Kentucky law confirming that the limitations issue involves questions of fact for the jury. Watson also addresses Merck's hollow argument that his fraud and breach of warranty claims are barred as a matter of law.

#### 1. Merck has failed to conclusively prove that Watson's personal injury claims are barred by limitations.

---

[1] Due to the size of the PSC's opposition and its exhibits, the pleading is not physically attached to this opposition. However, the specific docket entry numbers are provided for the Court's convenience.

As this Court has previously noted, Kentucky's discovery rule provides that the "statute of limitations commences from the date the plaintiff knew or should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *See Perkins v. Ne. Log Homes*, 808 S.W.2d 809, 819 (Ky. 1991). The Court also has recognized that Kentucky's discovery rule tolls the statute of limitations when "there is fraudulent concealment or a misrepresentation by the defendant of his role in causing plaintiff's injuries." *McClain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. App. 1999). A multitude of Kentucky cases and respected legal sources confirm that these issues present questions of fact for the jury. *See Lipsteuer v. CSX Transp., Inc.*, 37 S.W.3d 732, 737 (Ky. 2000) (holding that the date the plaintiff "was put on notice about the cause of his injury" was a question of fact); *Lynn Mining Co. V. Kelly*, 394 S.W.2d 755, 759 (Ky. 1965) (recognizing that "[w]here, however, there is a factual issue upon which the application of the statute [of limitations] depends, it is proper to submit the question to the jury"); *Coate v. Montgomery County*, No. 99-6123, 2000 WL 1648131 at \*\*2, 4 (6th Cir. 2000) (pointing out that "[i]f the running of the statute requires adjudication of issues of fact, the [summary judgment] motion should be denied" and holding that "there is a genuine issue of material fact as to when [the plaintiff] became aware, or should have become aware of her injury"); *see also* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2734 at 407-08 ("if the running or tolling of the statute requires adjudication of issues of fact, the [summary judgment] motion should be denied").

Thus, in order to prevail on a summary judgment, Merck must <u>conclusively</u> prove (1) the date Watson discovered (or reasonably should have discovered) that Vioxx may have caused his injury, and (2) that Merck did not conceal or misrepresent any facts about its role in causing Watson's

injuries.[2]  It can do neither.  In fact, Merck's inability to prove the trigger date for the limitations issue is highlighted by its strategy of trying to convince the Court that media coverage alone of the Vioxx withdrawal in September 2004 started the 1-year clock.  Merck is blatantly admitting that it cannot prove the date Watson was put on notice of the requisite information.  Instead, it simply assumes he must have known based on media coverage.  However, Watson himself has stated that he did not know that Vioxx could have caused his injuries until well after the Vioxx recall, especially since he had used Vioxx for less than a year. *See* Exhibit A.  This makes perfect sense given Merck's representations that only long-term use could be potentially harmful, and its stubborn position that Vioxx did not cause any stroke or heart attack episodes.[3]

Merck attempts to counter the position of Watson, the PSC, and this Court's Docket Entry 10488 with the case of *Blanton v. Cooper Industries, Inc.*, 99 F.Supp.2d 797 (E.D. Ky. 2000), in which the court granted summary judgment on the defendant's limitations defense.  However, *Blanton* presents a completely different situation than the instant matter, and does not remotely justify summary disposition of Watson's claims.  In *Blanton*, the defendant developed the factual record to a far greater extent by deposing the plaintiffs and achieving an exact, undisputed determination of their knowledge level regarding the alleged cause of their injuries.  For instance, the defendant discovered that Ms. Blanton, one of the plaintiffs, was an educated woman who

---

[2] As the Court aptly noted in its prior Order denying Merck's original summary judgment motion, "the moving party bears the burden of demonstrating that there exists no genuine issue of material fact," and "the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor." *See* Docket Entry 10488, Order and Reasons (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2006 WL 3771011, at *2 (S.D.N.Y. Dec. 14, 2006)).

[3] The Court has already recognized Plaintiffs' allegations that "Merck continued to conceal the dangers of Vioxx after it was withdrawn from the market, and that pursuant to Kentucky's discovery rule, the limitations periods were not triggered until sometime after September 30, 2004." *See* Docket Entry 10488, Order and Reasons at p.18.

admitted to closely following the articles and literature surrounding the water contamination issue for more than 8 years prior to filing suit. *See Blanton*, 99 F.Supp. 2d at 800, 802-03.  Ms. Blanton not only conceded that she knew the alleged effects of the contamination, but had actually lost a husband to those alleged effects several years before filing suit. *See id*.  Mr. Farley, another plaintiff had several relatives that timely filed suits.  *See id*.  Moreover, he had a face-to-face visit with the organizer of a contamination watch group formed long before limitations expired, and even participated in a study commissioned by one of the first plaintiffs who filed suit as a result of the contamination. *See id*.  These sworn facts, combined with the local media coverage, which included more than 8 years of regular coverage and over 80 articles in the local paper (<u>and</u> which the plaintiff admitted to following), resulted in summary judgment.

In the present case, Merck has not developed any of the same type of undisputed facts underlying the *Blanton* opinion.  Merck has not established that Watson was exposed to years of media coverage concerning the Vioxx recall, followed such media coverage, or was apprised of the fact that Vioxx could have caused his injuries.[4]  Unlike *Blanton*, there is no evidence that Watson had relatives, friends, and neighbors who filed suits for the same injuries in a timely manner, nor is there any evidence that he participated in a plaintiff-commissioned study regarding the effects of Vioxx.  Merck has wholly failed to conduct any pointed and meaningful discovery on the limitations issue in Watson's case to nail down undisputed facts about his knowledge or exposure to relevant information.  In sum, the defendant in *Blanton* established undisputed facts demonstrating that the plaintiffs had sufficient knowledge to trigger limitations.  One of the many components of that knowledge was provided by news paper articles that the plaintiff admitted to reading.  Here, Merck

---

[4]It is undisputed in this case that only about a month passed between the Vioxx recall and the filing of Watson's suit.

relies <u>exclusively</u> on national media exposure, and has no evidence that any of it reached plaintiff. A juror in this trial could, without question, reasonably infer from the current record that Watson was not aware (and should not have been aware) that his injuries may have been caused by Vioxx until after November 15, 2004. *See* Exhibit A. Thus, Merck has unquestionably failed to establish its limitations defense as a matter of law.

Merck has also failed to conclusively disprove Watson's fraudulent concealment theory. Relying again on *Blanton*, Merck contends that there is no connection between its nefarious conduct and Watson's alleged delay in filing suit. But, as set forth in the cases cited above, that is a fact question for the jury unless there is undisputed evidence conclusively proving that Watson's purported delay in filing suit has nothing to do with Merck's alleged concealment. Merck has presented no evidence, much less undisputed evidence, that its concealment of the harmful effects of Vioxx (even for those who used it for less than a year) did not contribute to Watson's purported delay in filing suit. To the contrary, Watson clearly alleges in both his Complaint and his most recent affidavit that he would have filed suit much earlier had Merck not concealed the information proving that Vioxx might have caused his injuries. *See* Exhibit A; Plaintiff's First Amended Complaint, ¶64. The Court has already noted that the allegations of Merck's concealment of the dangers of Vioxx, even after the drug was pulled from the market, creates a fact issue as to when the clock started clicking on Watson's claims. *See* Docket Entry 10488 at p.18. Merck has presented no new evidence or arguments that justify deviation from the Court's prior ruling. In fact, Watson's new affidavit and amended Complaint bolster the propriety of the Court's prior ruling.

### 2. Watson's fraud and breach of warranty claims are not barred.

Merck next argues that Watson's fraud by omission claims are barred because there is no fiduciary duty between the parties, while his breach of warranty claims are barred because there is

no privity between Watson and Merck. Neither contention is tenable. Accordingly, the Court should deny Merck's renewed motion.

Merck's contention that Watson's fraud claims are barred because there is no fiduciary duty between the parties is, with all due respect, ridiculous and belied by the very cases Merck cites. In Kentucky, the elements of a claim of fraud by omission are (1) the defendant had a duty to disclose a fact, (2) the defendant failed to disclose the fact, (3) the defendant induced the plaintiff to act, and (4) the plaintiff suffered damages. *See Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. App. 2003) (citing *Smith v. General Motors Corp.*, 979 S.W.2d 127, 129 (Ky. App. 1998)). A duty to disclose arises not only when there is fiduciary duty, but also when there is a partial disclosure of facts necessitating full disclosure, and when the defendant has <u>superior knowledge</u>. *Smith*, 979 S.W.2d at 129.

In this case, as in *Smith*, there is no doubt (and at least a fact question) that Merck had superior knowledge about its complicated drug. Indeed, the entire import of Watson's complaint is that Merck knew what was going on, had the money and resources to conduct comprehensive studies, and failed to reveal the truth to the people taking the drug. It is beyond legitimate dispute that Merck had superior knowledge of the information regarding the safety of Vioxx, and failed to disclose it.

And when Merck did reluctantly begin to disclose it, failed to reveal the full truth; instead electing to reveal bits and pieces about the studies that had been conducted and safety of the drug. For this additional reason, Merck had a duty to disclose.

Finally, Watson's fraud claims are also based on affirmative misrepresentations. For instance, Watson alleges the following in his live complaint;

¶57 - Merck set in motion a public relations and advertising/marketing campaign

marketing Vioxx through press releases, print, and mass mail out advertisements and television advertising. Defendant's representations that Vioxx was a safe and effective drug were made so that Plaintiffs and the general consuming public would rely on said representations and seek prescriptions from treating physicians for its product. Plaintiff relied on these representations.

¶58 - Specifically, Defendant misrepresented....(b) there had been insufficient and/or company-spun stories regarding the safety and efficacy of Vioxx before and after its release into the market

¶7 - Merck.....for almost five (5) years insisted that the drug was safe despite strong evidence to the contrary.

¶11 - Merck....engaged in misleading promotions advertising the safety of Vioxx.

These affirmative misrepresentations leave no doubt that Watson is alleging fraud by affirmative misrepresentation, as well as fraud by omission. Under Kentucky law and the facts of this case, both causes of action are valid. Thus, Merck's summary judgment should be denied.[5]

### III. CONCLUSION

For the reasons set forth above, Merck's motion for summary judgment should be denied.

**Dated: 7 November 2007**

---

[5] Merck further asserts that Watson's breach of warranty claims are barred because there is no privity between Watson and Merck. Although the current law in Kentucky does require vertical privity in most warranty claims, Watson has found (Merck has cited) no case extending the vertical privity requirement to personal injury plaintiffs alleging claims based on a defective pharmaceutical drug. Thus, Watson submits that Kentucky law does not summarily bar Watson's claims, particularly in this type of instance where the company has such superior knowledge and its is a non-commercial setting.

Respectfully submitted,

**ARNOLD & ITKIN LLP**

By: /s/ *Kurt B. Arnold*
   Jason A. Itkin
   State Bar No. 24032461/ Federal ID: 33053
   Kurt B. Arnold
   State Bar No. 24036150/ Federal ID: 36185
   1401 McKinney Street, Suite 2550
   Houston, Texas  77010
   Telephone: (713) 222-3800
   Facsimile: (713) 222-3850

   **COUNSEL FOR PLAINTIFF, TIMOTHY WATSON**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 7th of November 2007.

/s/ *Kurt B Arnold*
Kurt B. Arnold
State Bar No. 24036150/ Federal ID: 36185
1401 McKinney Street, Suite 2550
Houston, Texas  77010
Telephone: (713) 222-3800
Facsimile: (713) 222-3850
karnold@arnolditkin.com