

16858321

Oct 29 2007
10:21PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX * | |
|     Products Liability Litigation * | |
| * | |
| This Document Relates to: * | MDL No. 1657 |
| * | |
| PAUL NOE and ARLENE NOE, Plaintiffs, * | SECTION L |
| * | |
|     versus * | JUDGE ELDON E. FALLON |
| * | |
| MERCK & CO., INC., and WIGBERTO C. * | MAGISTRATE JUDGE |
|     CAMAMOT, M.D., INC., Defendants, * | KNOWLES |
| * | |
| Case No. 07-3311, * | |
| * | |
| & * | |
| * | |
| DONALD R. PREUNINGER and FLORA N. * | |
|     PREUNINGER, Plaintiffs, * | |
| * | |
|     versus * | |
| * | |
| MERCK & CO., INC., Defendant, * | |
| * | |
| Case No. 06-10305, * | |
| * | |
| & * | |
| * | |
| VIET TRAN, Plaintiff, * | |
| * | |
|     versus * | |
| * | |
| MERCK & CO., INC., Defendant, * | |
| * | |
| Case No. 07-0368, * | |
| * | |
| & * | |
| * | |
| PAMELA TRIBBY et al., Plaintiffs, * | |
| * | |
|     versus * | |
| * | |
| MERCK & CO., INC., Defendant, * | |
| * | |

Exhibit E

Case No. 07-4118,                          *
                                           *
                    &                      *
                                           *
DAVID WYSER, Plaintiff,                    *
                                           *
      versus                               *
                                           *
MERCK & CO., INC., Defendant,              *
                                           *
Case No. 07-2695.                          *
                                           *
* * * * * * * * * * * * * * * * * * * * * * * * * * *
                                           *
                                           *
                                           *
                                           *
                                           *
                                           *
                                           *
                                           *
                                           *
                                           *

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Page

BACKGROUND..........................................................................................................1

    A.    The Withdrawal Of Vioxx From The Market And The Ensuing Media Blitz ........................................................................................................1

    B.    The Plaintiffs Addressed By This Motion ............................................8

    C.    The *Cain* Class Action....................................................................9

STANDARD FOR SUMMARY JUDGMENT ......................................................10

ARGUMENT ..........................................................................................................10

I.    THE CLAIMS OF CALIFORNIA PLAINTIFFS ROBELLO AND TRAN ARE TIME-BARRED ........................................................................11

    A.    The California Plaintiffs' Claims Are Subject To Separate Choice-Of-Law Analyses....................................................................11

        1.    Louisiana Choice-Of-Law Rules Apply To Robello's Claims ...............11

        2.    Under California Choice-Of-Law Principles, Tran's Claims Are Governed Exclusively By California Law ..............................................13

    B.    Robello's Claims Are Time-Barred Under Louisiana Law................................14

        1.    Based On Indisputable Facts, Robello's Claims Accrued In Louisiana No Later Than September 30, 2004 As A Matter Of Law......15

        2.    Based On Indisputable Facts And Robello's Own Allegations, Merck's Alleged Fraudulent Concealment Could Only Toll The Limitations Period To September 30, 2004 – At The Latest .................15

        3.    Plaintiff's Claims Are Not Saved By *American Pipe* Tolling.................16

    C.    The Claims of Plaintiffs Robello and Tran Are Time-Barred Under California Law .................................................................................19

        1.    Under California Law, The Discovery Rule Was Triggered – At The Latest – By The Media Coverage Following The Withdrawal Of Vioxx....................................................................................20

        2.    Plaintiffs' Claims Are Not Saved By The Doctrine Of Fraudulent Concealment.......................................................................22

        3.    Plaintiffs' Claims Are Not Saved By *American Pipe* Tolling.................23

        4.    Plaintiffs' Other Claims Must Also Be Dismissed ................................24

II.    INDIANA LAW BARS THE CLAIMS OF PLAINTIFF WYSER.............................26

    A.    Under Relevant Choice-Of-Law Rules, Plaintiff's Claims Are Governed By Indiana Limitations Law ..........................................................26

    B.    Indiana Limitations Rules Bar The Claims Of Plaintiff Wyser ..........................27

Exhibit E

**TABLE OF CONTENTS**
(continued)

Page

|  |  | 1. | Under Indiana Law, The Discovery Rule Was Triggered – At The Latest – By The Avalanche Of News Coverage Following The Withdrawal Of Vioxx .......... 27 |
|  |  | 2. | Fraudulent Concealment Tolling Is Not Available To Plaintiff As A Matter Of Law .......... 29 |
|  |  | 3. | Plaintiff's Claims Are Not Saved By *American Pipe* Tolling.......... 30 |
|  |  | 4. | Plaintiff's Other Claims Are Similarly Barred.......... 32 |
| III. |  | TEXAS LAW BARS THE PREUNINGERS' CLAIMS.......... 33 |
|  | A. | Under Relevant Choice-Of-Law Rules, Plaintiffs' Claims Are Governed By Texas Limitations Law.......... 33 |
|  | B. | Texas Limitations Rules Bar The Preuningers' Claims .......... 33 |
|  |  | 1. | Under Texas Law, The Discovery Rule Was Triggered – At The Latest – By The Avalanche Of News Coverage Following The Withdrawal Of Vioxx .......... 34 |
|  |  | 2. | Fraudulent Concealment Tolling Is Not Available To Plaintiffs As A Matter Of Law .......... 36 |
|  |  | 3. | Plaintiffs' Claims Are Not Saved By *American Pipe* Tolling.......... 37 |
|  |  | 4. | Plaintiffs' Other Claims Are Also Barred Under Texas Law .......... 40 |
| IV. |  | WEST VIRGINIA LAW BARS THE NOES' CLAIMS .......... 41 |
|  | A. | Under Applicable Choice-Of-Law Rules, West Virginia Law Applies.......... 41 |
|  | B. | West Virginia Limitations Rules Bar Plaintiffs' Claims .......... 42 |
|  |  | 1. | Under West Virginia Law, The Discovery Rule Was Triggered – At The Latest – By The Avalanche Of News Coverage Following The Withdrawal Of Vioxx.......... 43 |
|  |  | 2. | Fraudulent Concealment Tolling Is Not Available To Plaintiffs As A Matter Of Law. .......... 44 |
|  |  | 3. | Plaintiffs' Claims Are Not Saved By *American Pipe* Tolling.......... 46 |
|  |  | 4. | Plaintiffs' Other Claims Are Similarly Barred Under West Virginia Law .......... 47 |

Exhibit E

## TABLE OF AUTHORITIES

Page

**Cases**

*Adams v. Harron,*
No. 97-2547, 1999 U.S. App. LEXIS 21937 (4th Cir. 1999) .................................................. 42

*Allied Resin Corp. v. Waltz,*
574 N.E.2d 913 (Ind. 1991) ...................................................................................... 28

*Am. Bank of Commerce v. Corondoni,*
169 Cal. App. 3d 368 (Cal. Ct. App. 1985) ........................................................... 13

*American Pipe Construction Co. v. Utah,*
414 U.S. 538 (1974) ..................................................................................16, 18, 39

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..................................................................................... 10

*Anderson v. Merck & Co., Inc.,*
MDL Case No. 05-2572 (2004) ............................................................... 16

*Armstrong v. Martin Marietta Corp.,*
138 F.3d 1374 (11th Cir. 1998)............................................................. 17

*Arnold v. Dirrim,*
398 N.E.2d 426 (Ind. Ct. App. 1979) ........................................... 30, 31

*Ashland Chem. Co. v. Provence,*
129 Cal. App. 3d 790 (Cal. Ct. App. 1982) ................................... 13, 14

*Baker Hughes, Inc. v. Keco R & D, Inc.,*
12 S.W.3d 1 (Tex. 1999).................................................................. 33

*Barnes v. A.H. Robins Co.,*
476 N.E.2d 84 (Ind. 1985) .......................................................... 27

*Bell v. Showa Denko K.K.,*
899 S.W.2d 749 (Tex. Ct. App. 1995)........................................ 37

*Bradford v. Vento,*
48 S.W.3d 749 (Tex. 2001)............................................................ 41

*Burnett v. N.Y. Cent. R. Co.,*
380 U.S. 424 (1965) ....................................................................... 1

*Cardoso v. Am. Med. Sys., Inc.,*
183 Cal. App. 3d 994 (Cal. Ct. App. 1986) ......................... 25

*Carlin v. Superior Court,*
920 P.2d 1347 (1996) ................................................................ 26

*Childs v. Haussecker,*
974 S.W.2d 31 (Tex. 1998)................................................... 34

-iii-

TABLE OF AUTHORITIES
(continued)

Page

*Clark v. Baxter Healthcare Corp.*,
83 Cal. App. 4th 1048 (Cal. Ct. App. 2000) ................................................................... 25, 26

*Crofton v. Amoco Chem. Co.*,
No. 14-98-01412-CV, 1999 Tex. App. LEXIS 9126
(Tex. Ct. App. Dec. 9, 1999).........................................................................................34, 35, 36

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) ................................................................................................. 16, 39

*Davis v. Geo S. Olive & Co.*,
731 F. Supp. 1380 (S.D. Ind. 1990).......................................................................... 32

*DeGussa Corp. v. Mullens*,
744 N.E.2d 407 (Ind. 2001) ....................................................................................... 27

*Evans v. CanadianOxy Offshore Prod. Co.*,
730 So. 2d 466 (La. App. 3d Cir. 1998) .................................................................. 14

*Evenson v. Osmose Wood Preserving Co. of Am.*,
899 F.2d 701 (7th Cir. 1990)....................................................................................... 28

*Ferens v. John Deere Co.*,
494 U.S. 516 (1990) ....................................................................................13, 26, 33

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005)............................................................................................ 20, 21

*Gaither v. City Hosp.*,
487 S.E.2d 901 (W. Va. 1997)............................................................................... 43

*Goodwin v. Bayer Corp.*,
624 S.E.2d 562 (W. Va. 2005)............................................................................... 43, 44

*Grant v. Austin Bridge Constr. Co.*,
725 S.W.2d 366 (Tex. Ct. App. 1987)................................................................. 36

*Grisham v. Philip Morris U.S.A., Inc.*,
151 P.3d 1151 (Cal 2007) ....................................................................................... 21

*Horn v. A.O. Smith Corp.*,
50 F.3d 1365 (7th Cir. 1995)................................................................................. 29

*Horvath v. Davidson*,
264 N.E.2d 328 (Ind. Ct. App. 1970) .................................................................. 27

*Hues v. Warren Petroleum Co.*,
814 S.W.2d 526 (Tex. Ct. App. 1991).................................................................34, 35, 36

*Hunter v. Am. Gen. Life & Accident Ins. Co.*,
384 F. Supp. 2d 888 (D.S.C. 2005) .................................................................. 39

-iv-

Exhibit E

# TABLE OF AUTHORITIES
(continued)

Page

*In re Baycol Prods. Litig.*,
    218 F.R.D. 197 (D. Minn. 2003) ........................................................................................ 17

*In re Ford Motor Co. Vehicle Paint Litigation*,
    MDL No. 1063, 1996 U.S. Dist. LEXIS 11063 (E.D. La. July 30, 1996) .............................. 23

*In re Norplant Contraceptive Products Liability Litig.*,
    173 F.R.D. 185 (E.D. Tex. 1997) ....................................................................................... 38

*In re Vioxx Prods. Liab. Litig.*,
    239 F.R.D. 450 (E.D. La. 2006) ......................................................................................... 24

*In re Vioxx Prods. Liab. Litig.*,
    478 F. Supp. 2d 897 (E.D. La. 2007) ........................................................................... passim

*Ins. Co. of N. Am. v. Morris*,
    981 S.W.2d 667 (Tex. 1998) .............................................................................................. 41

*Intevep, S.A. Research & Tech. Support Establishment v. Sena*,
    41 S.W.3d 391 (Tex. App. 2001) ....................................................................................... 33

*Johnson v. Railway Express Agency*,
    421 U.S. 454 (1975) ......................................................................................................... 38

*Jolly v. Eli Lilly & Co.*,
    751 P.2d 923 (Cal. 1988) ........................................................................................... passim

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ......................................................................................................... 11

*Lehman Bros. Holdings, Inc. v. Laureate Realty Servs.*,
    1:04-cv-1432-RLY-TAB, 2007 U.S. Dist. LEXIS 76940 (S.D. Ind. Sept. 28, 2007) ............. 27

*Ling v. Webb*,
    834 N.E.2d 1137 (Ind. Ct. App. 2005) ............................................................................... 30

*Livingston v. K-Mart Corp.*,
    32 F. Supp. 2d 369 (S.D. W. Va. 1998) .............................................................................. 45

*McCoy v. Miller*,
    578 S.E.2d 355 (W. Va. 2003) ........................................................................................... 43

*Miller v. A.H Robins Co., Inc.*,
    766 F.2d 1102 (7th Cir. 1985) ...................................................................................... 28, 30

*Miller v. Javitch, Block & Rathbone, LLP*,
    397 F. Supp. 2d 991, 1003 (N.D. Ind. 2005) ...................................................................... 27

*Miller v. Monongalia County Bd. of Educ.*,
    556 S.E.2d 427 (W.Va. 2001) ............................................................................................ 45

*Moreno's, Inc. v. Lake Charles Catholic High Sch., Inc.*,
    315 So. 2d 660 (La. 1975) ................................................................................................. 14

-v-

Exhibit E

TABLE OF AUTHORITIES
(continued)

Page

*Murphy v. Campbell,*
    964 S.W.2d 265 (Tex. 1997) ............................................................................... 33

*Newby v. Enron Corp. (In re Enron Corp. Secs),*
    465 F. Supp. 2d 687 (S.D. Tex. 2006) ........................................................... 37, 38

*Norgart v. Upjohn Co.,*
    981 P.2d 79 (Cal. 1999) ...................................................................................... 20

*Oldfield v. Merck & Co., Inc.,*
    No. ATL-L-2-07 (N.J. Super. Law Div. Oct. 15, 2007) ........................................ 1

*Order of R.R. Telegraphers v. Ry. Express Agency, Inc.,*
    321 U.S. 342 (1944) .............................................................................................. 1

*Phillips Oil Co. v. OKC Corp.,*
    812 F.2d 265 (5th Cir. 1987) .............................................................................. 10

*Powell v. Merck & Co., Inc.,*
    No. 05-4882 ......................................................................................................... 38

*Prieto v. John Hancock Mutual Life Ins. Co.,*
    132 F. Supp. 2d 506 (N.D. Tex. 2001) ............................................................... 38

*Reich v. Purcell,*
    67 Cal. 2d 551 (Cal. 1967) ................................................................................. 13

*Richards v. Mileski,*
    62 F.2d 65 (D.C. Cir. 1981) ............................................................................... 45

*Richardson v. Bigelow Mgmt., Inc.,*
    2007 Tex. App. LEXIS 2942 (Tex. App. 2007) ................................................. 36

*Rivas v. Safety-Kleen Corporation,*
    98 Cal. App. 4th 218 (Cal. Ct. App. 2002) ........................................................ 25

*Rubino v. Utah Canning Co.,*
    266 P.2d 163 (Cal. Ct. App. 1954) ..................................................................... 25

*Safeway Stores, 710 S.W.2d at 547-48* ..................................................................... 40

*Sanchez v. South Hoover Hosp.,*
    553 P.2d 1129 (Cal. 1976) .................................................................................. 20

*Sheppard v. Capital One Bank,*
    No. 06-7535, 2007 U.S. Dist. LEXIS 70061, (C.D. Cal. July 11, 2007) ............ 39

*Shideler v. Dwyer,*
    417 N.E.2d 281 (Ind. 1981) ................................................................................ 32

*Snapp & Assocs. Ins. Servs. v. Robertson,*
    96 Cal. App. 4th 884 (Cal. Ct. App. 2002) ........................................................ 22

-vi-

## TABLE OF AUTHORITIES
### (continued)

Page

*Taylor v. Ford Motor Corp.*,
   408 S.E.2d 270 (W. Va. 1991) ......................................................................... 49, 50

*Trafalgar House Const., Inc. v. ZMM, Inc.*,
   567 S.E.2d 294 (W.Va. 2002) .............................................................................. 45

*Vaught v. Showa Denko K.K.*,
   107 F.3d 1137 (5th Cir. 1997) ............................................................................. 37

*Velsicol Chem. Corp. v. Winograd*,
   956 S.W.2d 529 (Tex. 1997) ................................................................................ 36

*Vest v. St. Albans Psychiatric Hospital, Inc.*,
   387 S.E.2d 282 (W. Va. 1989) ........................................................................ 41, 42

*W. Va. ex rel. Chemtall, Inc. v. Madden*,
   216 W. Va. 443 (W. Va. 2004 ............................................................................... 42

*Wagner & Brown, Ltd. v. Horwood*,
   58 S.W.3d 732 (Tex. 2001) .................................................................................. 34

*Weethee by Weethee v. Holzer Clinic*,
   490 S.E.2d 19 (W. Va. 1997) ............................................................................... 41

*Wehling v. Citizens Nat'l Bank*,
   586 N.E.2d 840 (Ind. 1992) ................................................................................. 28

*Whitehouse v. Quinn*,
   477 N.E.2d 270 (Ind. 1985) ................................................................................. 32

**Statutes**

Ind. Code § 34-11-5-1 ............................................................................................... 29

Ind. Code § 34-1-2-2 ................................................................................................. 27

La. Civ. Code Ann. art. 2315 .................................................................................... 14

La. Civ. Code Ann. art. 3492 .................................................................................... 14

La. Civ. Code Ann. art. 3549 .................................................................................... 12

La. Rev. Stat. Ann. § 51:1409 .................................................................................. 14

Tex. Bus. & Com. Code Ann. § 2.725 ....................................................................... 40

Tex. Civ. Prac. & Rem. Code § 16.003 ..................................................................... 33

W. Va. Code § 55-2-12 ......................................................................................... 42, 49

**Other Authorities**

Cal. Code Civ. Proc. § 335 ........................................................................................ 19

Fed. R. Civ. P. 56(c) .................................................................................................. 10

-vii-

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Despite an avalanche of national and local media coverage that put plaintiffs on notice of their claims against Merck – at the latest – on September 30, 2004, plaintiffs in these cases failed to sue Merck for their alleged Vioxx-related injuries until long after the applicable statutes of limitations ran on their claims.[1] Although plaintiffs will argue that their claims accrued at a later date, those arguments fail as a matter of law. Indeed, as Judge Higbee recently concluded, such arguments "are entirely unpersuasive," even on summary judgment. (Mem. at 5, *Oldfield v. Merck & Co., Inc.*, No. ATL-L-2-07 (N.J. Super. Law Div. Oct. 15, 2007) (attached as Ex. 1).)

Statutes of limitations serve important policy interests. As the Supreme Court has explained, "[s]uch statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. . . . [E]ven if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation.'" *Burnett v. N.Y. Cent. R. Co.*, 380 U.S. 424, 428 (1965) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944)). Enforcement of limitations periods serves institutional purposes as well. "[T]he courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights." *Id.* These interests will be frustrated if plaintiffs are permitted to proceed. Accordingly, the Court should grant this motion.

## BACKGROUND

### A.    The Withdrawal Of Vioxx From The Market And The Ensuing Media Blitz.

Merck's withdrawal of Vioxx triggered an explosion of nationwide media attention. *In the first month after the withdrawal of Vioxx, there were at least 1,648 articles or reports in*

---

[1]    The *Tribby* complaint brings claims on behalf of several plaintiffs. As described in Background § B, *infra*, this motion relates only to one plaintiff from that complaint, Susan Robello.

*media outlets around the country about the Vioxx controversy.*[2] As detailed in Merck's

Memorandum in Support of Motion for Summary Judgment on stale claims from Illinois,

Pennsylvania, and Puerto Rico, which is incorporated herein, national media coverage was

immediate and substantial. (*See* Mem. in Supp. of Mot. for Summ. J. at 1-8, Oct. 22, 2007, Dkt.

No. 12725, *In re Vioxx Prods. Liab. Litig.*, MDL 1657 ("First Two-Year SOL Brief").) No later

than the morning of September 30, 2004, all the major television news programs were reporting

on the Vioxx withdrawal, including the *Today Show, Good Morning America, CNN American*

*Morning*, and National Public Radio. (*Id.* at 3-5.) The next day, the networks all ran follow-up

stories about the withdrawal, while newspapers nationwide trumpeted the story on their front

pages. (*Id.* at 5-6.) Various media continued to cover the story in the following days, including

stories on the many lawyers "across the country . . . lining up litigation." (*Id.* at 7.) Cognizant

that this substantial media coverage had put all potential plaintiffs on notice of their claims

against Merck, plaintiffs' lawyers would later run advertisements stressing the importance of

filing Vioxx claims before the two-year anniversary of withdrawal. (*Id.* at 8.)

   Similar coverage played out in plaintiffs' home media markets as well.

### 1.   California

   The Vioxx controversy received substantial media attention throughout the state of

California, with the local major television network affiliates covering the withdrawal on the day

it was announced. (Summaries of local coverage provided by *Video Monitoring Services of*

*America* are attached collectively as Ex. 2.)

   The state's largest newspapers – including Mr. Tran's hometown San Jose *Mercury News*

– gave the withdrawal front-page treatment. *See* Barbara Felder Ostrov, *Company Pulls Arthritis*

---

[2]     This statistic is based on a search of U.S. news outlets on the Lexis/Nexis database for the period between
September 30, 2004 and October 30, 2004.

*Drug; Study Shows Heart-Attack Risk*, San Jose Mercury News, Oct. 1, 2004, at 1A (attached as Ex. 3) (noting that Merck pulled Vioxx from the market after "a new clinical study showed it nearly doubled the risk of heart attack and stroke in patients who took it long-term"). The Los Angeles *Times* covered the withdrawal on its front page on October 1, 2004. *See* Thomas H. Maugh II and Denise Gellene, *Arthritis Drug Vioxx Pulled, Risk of Heart Attacks Is Cited*, L.A. Times, Oct. 1, 2004, at A1 (attached as Ex. 4). The San Francisco *Chronicle*'s story noted that Merck had "abruptly ordered a worldwide recall of its premier arthritis drug Vioxx . . . after a company-run study confirmed that long-term use of the pills increased risk of heart attack and stroke." Sabin Russell, *Arthritis drug Vioxx yanked off market*, San Francisco Chronicle, Oct. 1, 2004, at A1 (attached as Ex. 5).

Many stories appearing in California press outlets – including the Los Angeles *Times*, the Contra Costa *Times*, and the San Jose *Mercury News* – noted the storm of lawsuits that followed withdrawal. For example, the Contra-Costa *Times* included a story in its October 29, 2004 edition noting that plaintiffs had filed "about 300 [Vioxx] suits since the company pulled the product off the shelves Sept. 30." Bruce Gerstman, *Brentwood Man Sues Vioxx Maker; He Says He's One of Thousands of Contra Costans Who've Suffered Complications From Using The Now-Discontinued Drug*, Contra Costa Times, Oct. 29, 2004, at A7 (attached as Ex. 6). Similarly, the San Jose *Mercury News* ran two stories in late 2004 noting the growing number of lawsuits against Merck in connection with Vioxx. *See Merck Stock Slumps on Report it Denied Vioxx Problems*, San Jose Mercury News, Nov. 2, 2004, at 3C (attached as Ex. 7) (noting that "[h]undreds of lawsuits have been filed against Merck over Vioxx"); Jeffrey Gold, *Merck Reduces Profit Forecast; Withdrawal of Vioxx to Hurt 2005 Earnings*, San Jose Mercury News, Dec. 9, 2004, at 3C (attached as Ex. 8) (noting that Merck faced "a deluge of lawsuits from

3

patients and shareholders" related to Vioxx).  And the Los Angeles *Times* also ran multiple

stories in late 2004 discussing the flood of Vioxx-related lawsuits against Merck.  *See* James

Flanigan, *Merck's Trouble with Vioxx May be Catching*, L.A. Times, Nov. 21, 2004, at C1

(attached as Ex. 9) (noting that "[a] mountain of litigation, potentially involving $4 billion to $18

billion in damages . . . is already in the works against Merck on the Vioxx matter"); *Merck CEO*

*May Testify in Vioxx Suits*, L.A. Times, Dec. 29, 2004, at C3 (attached as Ex. 10) (noting that

"Merck & Co.'s chairman and chief executive, Raymond V. Gilmartin, may testify by March in

some of the dozens of lawsuits filed in New Jersey over the pharmaceutical company's

withdrawal of its blockbuster arthritis drug Vioxx").

   In addition, many of the state's largest newspapers had been covering the emerging

Vioxx story since 2001.  For example, the Contra Costa *Times* ran two stories in early 2001

discussing the potential for increased risk of heart attacks and strokes with long-term Vioxx use.

*See* Thomas H. Maugh, *Arthritis Drugs May Raise Heart Attack Risk*, Contra Costa Times, Aug.

22, 2001, at A12 (attached as Ex. 11) (noting that Vioxx "may increase a patient's risk of heart

attack[] and stroke"); Melody Petersen, *Arthritis Drug Safety Questioned; Vioxx and Celebrex*

*May Increase the Risk of Cardiovascular Problems, Some Doctors Say*, Contra Costa Times,

May 26, 2001, at C13 (attached as Ex. 12) (noting that "a large study sponsored by Merck last

year showed that patients taking Vioxx had four times the risk of heart attacks of patients taking

another pain reliever").  In June, the San Diego *Union-Tribune* also reported on study results,

noting that "a company-sponsored study suggested that [Vioxx] might increase susceptibility to

heart attacks."  Jane Brody, *Concern Over Safety is Premature*, San Diego Union-Tribune, June

18, 2001, at E9 (attached as Ex. 13).  The *Union-Tribune* also ran another story in August,

reporting that Vioxx "has been linked by researchers to a small but troubling increase in the risk

of heart attacks and strokes." *Research links pair of arthritis drugs to heart attacks, strokes*, San Diego Union-Tribune, Aug. 22, 2001, at A-8 (attached as Ex. 14). Also on August 22, 2001, the San Jose *Mercury News* ran a similar story, noting that "[t]he popular and heavily-promoted new arthritis drugs Vioxx and Celebrex have been linked by researchers to a small but troubling increase in the risk of heart attacks and strokes." Lindsey Tanner, *Arthritis Drugs Causing Concern – Small Increase Seen in Heart Problems*, San Jose Mercury News, Aug. 22, 2001, at 11A (attached as Ex. 15). Finally, the Los Angeles *Times* ran a story on September 26, 2001, noting that Merck was ordered to cease promoting Vioxx until it sent a "Dear Doctor" letter to health care workers. The main issue identified in the article was "[w]hether Vioxx users faced an increased risk of heart attacks and strokes. A recent study comparing Vioxx with another painkiller, naproxen, suggested they do." *FDA Orders Merck to End Vioxx Promotions*, L.A. Times, Sept. 26, 2001, at Part 3, Pg. 2 (attached as Ex. 16).

### 2. **Indiana**

As in California, the press in plaintiff Wyser's home state of Indiana prominently covered the Vioxx withdrawal. For starters, many of the local major television network affiliates covered the withdrawal on the day it was announced. (Summaries of local coverage provided by *Video Monitoring Services of America* are attached collectively as Ex. 17.) And the largest newspaper in Indiana, the Indianapolis *Star* (published 20 miles from plaintiff Wyser's home town) noted the withdrawal the day after it occurred. *See* Jeff Swiatek, *Lilly had its own bad bout with an arthritis drug*, The Indianapolis Star, Oct. 1, 2004, at 1C (attached as Ex. 18).

### 3. **Texas**

The local media in plaintiff Preuninger's home state of Texas similarly provided extensive coverage of the Vioxx withdrawal and its aftermath, with many of the local major television network affiliates covering the withdrawal on the day it was announced. (Summaries

of local coverage provided by *Video Monitoring Services of America* are attached collectively as Ex. 19.)

The largest newspapers in Texas all reported immediately on the Vioxx withdrawal. The *Austin American Statesman*, *The Dallas Morning News*, the Houston *Chronicle*, the Fort Worth *Star-Telegram*, and the San Antonio *Express News* all carried articles about the Vioxx withdrawal on October 1, 2004. For example, the October 1, 2004 *American Statesman* carried an article noting that "[d]octors in Austin and across the country were deluged by calls Thursday from concerned patients after Merck & Co. pulled its popular pain relief drug Vioxx off the market because of new data showing a sharply increased risk of heart attacks and stroke from long-term use." *Vioxx users take note: Popular pain relief drug deemed unsafe*, The Austin American Statesman, Oct. 1, 2004, at A1 (attached as Ex. 20). Similarly, the October 1 issue of *The Dallas Morning News* included an article titled *Vioxx recall has millions wondering what to do*. The Dallas Morning News, Oct. 1, 2004, at A1 (attached as Ex. 21). The Houston *Chronicle* also covered the Vioxx withdrawal on October 1, the day after the drug was withdrawn. The *Chronicle*'s story was titled *Merck pulls Vioxx, noting health risks; Study shows pain medication could increase chances of strokes and heart attacks*. Houston Chronicle, Oct. 1, 2004, at A3 (attached as Ex. 22). The *Chronicle* also ran a story in its October 3 edition titled *Removal of Vioxx prompts questions about drug tests; Approval process has not found all potential problems*. Houston Chronicle, Oct. 3, 2004, at B4 (attached as Ex. 23). The October 3 article noted that "[t]he [APPROVe] study showed that the drug doubled the risk of heart attack and stroke. At the same time, ***it sounded an alarm for the millions of people who took Vioxx***." *Id.* (emphasis added).

At least some Texas media outlets also reported on the explosion of Vioxx-related

6

lawsuits following the withdrawal.  For example, the Austin *American Statesman*'s November 2, 2004 edition included a story noting that "[h]undreds of lawsuits have already been filed against Merck over Vioxx." *Report:  Merck knew of Vioxx problems; Stock drops nearly 10% amid claims that drug maker covered up risks*, The Austin American Statesman, Nov. 2, 2004, at C1 (attached as Ex. 24).

In addition to the post-withdrawal news regarding Vioxx and its risks, the Houston *Chronicle* and San Antonio *Express News* had both included stories on the potential risks of Vioxx as early as August 2001.  The August 22, 2001 edition of the *Chronicle* included a story titled *Drugs linked to risk of heart attack; Researchers urge study of 2 arthritis medicines*. Houston Chronicle, Aug. 22, 2001, at A15 (attached as Ex. 25).  The story noted that researchers had linked Vioxx to "a small but troubling increase in the risk of heart attacks and strokes." *Id.* And the August 22, 2001 issue of the San Antonio *Express News* carried an article titled *Study finds heart risk with arthritis drugs*.  Lindsey Tanner, San Antonio Express News, Aug. 22, 2001, at 5A (attached as Ex. 26).

        4.      **West Virginia**

As in all of the other states subject to this motion, the press in plaintiff Noe's home state of West Virginia prominently covered the Vioxx withdrawal and the resulting storm of lawsuits. On the day after the withdrawal, the largest newspaper in the state, the Charleston Gazette, carried a front-page wire story noting that Merck was "pulling its blockbuster Vioxx from the market after new data found the arthritis drug doubled the risk of heart attacks and strokes." Linda A. Johnson, *Merck recalls Vioxx Arthritis drug linked to strokes, heart attacks*, Charleston Gazette, Oct. 1, 2004, at 1A (attached as Ex. 27).  The Gazette also ran several stories during the remainder of 2004 discussing the large number of Vioxx-related lawsuits filed against Merck. *See Mother of Vioxx patient sues Merck, physician*, Charleston Gazette, Oct. 4, 2004, at P2C

(attached as Ex. 28) (describing a lawsuit filed in Missouri and noting that "similar lawsuits are

in the works around the country"); *Merck shares plunge after report says company knew of*

*Vioxx risks*, Charleston Gazette, Nov. 2, 2004, at P3D (attached as Ex. 29) (noting that analysts

may downgrade Merck's credit rating because of "the momentum in the Vioxx litigation");

Andrew Leckey, *Analysts cautious about Merck*, Charleston Gazette, Nov. 9, 2004, at P2D

(attached as Ex. 30) (noting that "[c]ountless lawsuits are being filed over whether Merck should

have acted sooner").

### B.   The Plaintiffs Addressed By This Motion.

This motion addresses the claims of five plaintiffs – two from California, and one each

from Indiana, Texas, and West Virginia.

#### 1.   California

According to their complaints and plaintiff profile forms, plaintiffs Robello and Tran

reside in California, were prescribed and took Vioxx in California, and allegedly suffered their

injuries there.  (*See* Tribby Compl. ¶ 12 (attached as Ex. 31); Robello Pl. Profile Form at 2, 3

(attached as Ex. 32); Tran Compl. at 4 (attached as Ex. 33); Tran Pl. Profile Form at 2, 3

(attached as Ex. 34).)  Plaintiff Susan Robello alleges that her husband, Lawrence Robello,

suffered a heart attack leading to his death on March 3, 2005.  (Robello Pl. Profile Form at 2.)

And plaintiff Viet Tran alleges that he suffered from a "heart condition" from 2002 to 2004

(Tran Pl. Profile Form at 2) or in May 2003 (Tran Compl. at 4).  Plaintiff Tran filed his

complaint in Santa Clara County, California on October 4, 2006.  Plaintiff Robello was part of

the *Pamela Tribby* complaint filed directly in this Court on August 15, 2007.

#### 2.   Indiana

According to his complaint and plaintiff profile form, plaintiff Wyser resides in Indiana,

was prescribed and took Vioxx in Indiana, and allegedly suffered his injury there.  (*See* Wyser

8

Compl. ¶ 1 (attached as Ex. 35); Wyser Pl. Profile Form at 2, 3 (attached as Ex. 36).)  Plaintiff

Wyser alleges that he suffered a heart attack on July 28, 2003.  (Wyser Pl. Profile Form at 2.)

Plaintiff Wyser filed his complaint in the United States District Court for the Southern District of

Indiana on March 16, 2007.

              3.     **Texas**

According to his complaint and plaintiff profile form, plaintiff Donald Preuninger resides

in Texas, was prescribed and took Vioxx in Texas, and allegedly suffered his injury there.  (*See*

Preuninger Compl. ¶ 1 (attached as Ex. 37); Preuninger Pl. Profile Form at 2, 3 (attached as Ex.

38).)  Plaintiff Preuninger alleges that he suffered a heart attack on May 29, 2000, which

allegedly resulted in a subsequent hemorrhagic stroke.  (Preuninger Pl. Profile Form at 2;

Preuninger Compl. ¶ 1.)  Plaintiff Preuninger filed his complaint in the United States District

Court for the Southern District of Texas on October 3, 2006.

              4.     **West Virginia**

According to his complaint and plaintiff profile form, plaintiff Paul Noe resides in West

Virginia, was prescribed and took Vioxx in West Virginia, and allegedly suffered his injury

there.  (*See* Noe Compl. ¶ 1 (attached as Ex. 39); Noe Pl. Profile Form at 2, 3 (attached as Ex.

40).)  Plaintiff Noe alleges that he suffered a heart attack on April 8, 2003.  (Noe Pl. Profile

Form at 2.)  Paul and Arlene Noe filed their complaint in the Circuit Court of Mingo County,

West Virginia on November 1, 2006.

    **C.**     **The *Cain* Class Action**

Merck described the *Cain* class action in detail in its recent motion for summary

judgment on stale claims in Illinois, Pennsylvania, and Puerto Rico.  (*See* First Two-Year SOL

Brief at 14-16.)  That discussion is incorporated herein.

One of the plaintiffs here – Preuninger – was a putative class member of the *Cain* class

action while its claims for damages were pending because he alleges injury dates prior to September 18, 2002. As explained in further detail below, Preuninger is barred from asserting *American Pipe* tolling because that doctrine does not permit tolling based on successive class actions. (*See* Section I.B.3, *infra*.) The remaining plaintiffs were not members of the putative *Cain* class.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . [Merck] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Because "only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment," questions that are "unnecessary" to the resolution of a particular case "will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

The Court should grant summary judgment on plaintiffs' claims because they are time-barred. There can be no material dispute that each plaintiff was on notice of his or her claim by September 30, 2004 at the latest, when the withdrawal of Vioxx from the market sparked a media frenzy, announcing the drug's alleged risks on the front pages of newspapers across the country. As a matter of law, such publicity is sufficient to trigger discovery and to start the limitations clock ticking. Thus, whether measured under their home-states' laws or under Louisiana law, plaintiffs' claims should have been filed no later than September 30, 2006, two years after withdrawal. Each case addressed by this motion was filed after that date and is therefore time-barred.

Plaintiffs will likely insist that their claims are saved by various tolling rules, specifically

10

the *American Pipe* and fraudulent concealment doctrines.  Not so.  *American Pipe* rules vary from state to state, but invariably they cannot save these plaintiffs' claims – because the state doctrine does not permit tolling for class actions pending elsewhere; because the state at issue does not recognize *American Pipe* at all; or because plaintiffs would need to "stack" or "piggyback" class actions.  And the fraudulent concealment doctrine, like ordinary discovery rules, ceases tolling claims when the media reports the facts necessary to make out a claim, as happened here.  Plaintiffs' tolling arguments thus fail, and the Court should grant Merck summary judgment.

I.   **THE CLAIMS OF CALIFORNIA PLAINTIFFS ROBELLO AND TRAN ARE TIME-BARRED.**

   A.   **The California Plaintiffs' Claims Are Subject To Separate Choice-Of-Law Analyses.**

      1.   **Louisiana Choice-of-Law Rules Apply To Robello's Claims.**

      Plaintiff Robello directly filed her case in this Court, pursuant to Pretrial Order No. 11.  As this Court has previously recognized, Louisiana choice-of-law rules govern such claims.  *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 904 (E.D. La. 2007).  That holding was consistent with the rule set forth in *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941), that a federal court sitting in diversity applies the choice-of-law rules of the state in which the court is situated.  This Court's holding was also the product of careful consideration of the potential for abuse – not realized here in light of how Louisiana's choice-of-law rules apply – in permitting plaintiffs to bypass unfavorable rules by filing directly in the MDL forum.  *In re Vioxx*, 478 F. Supp. 2d at 904.  No such potential for abuse arises here, and Louisiana choice-of-law rules therefore apply.

      Under Louisiana choice-of-law rules, the Court must consider both Louisiana limitations rules and the rules of each plaintiff's home state.  Because plaintiff Robello's claims are barred

11

both under Louisiana law and the law of her home state, the Court need not decide which of those laws to apply, however. Either way, the claims are time-barred, and summary judgment is therefore appropriate.

Louisiana's choice-of-law rule for selecting the applicable limitations period (or "prescription" period) in a particular case requires the Court to conduct two separate choice-of-law determinations: *first*, the Court must determine which state's substantive laws govern the proceeding, and *second*, based on that determination, it must decide the applicable limitations law. Regarding the first step, plaintiff Robello's substantive claims are governed by the laws of her home state, as this Court has consistently held. *In re Vioxx*, 478 F. Supp. 2d at 905-06. That preliminary inquiry is thus easily answered, and no extended discussion is required here.

Under the second step, in a case like this one, where "the substantive law of another state would be applicable to the merits of an action brought in this state," Louisiana prescription law applies except in two circumstances:

> (1) If the action would be barred under Louisiana prescription law but allowed under the other state's law, and "maintenance of the action in this state is warranted by compelling considerations of remedial justice," La. Civ. Code Ann. art. 3549(B)(1), the court will apply the limitations law of the state whose substantive law governs.

> (2) If the action would not be barred under Louisiana prescription law but would be barred under the law of the state whose substantive law governs, then the action is allowed to proceed unless allowing the case to continue "is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice." *Id.* art. 3549(B)(2).

As set forth below, the Court need not undertake this analysis because plaintiff Robello's claims would be barred both under her own state's laws (which will govern the substance of her claims) and under Louisiana law. Accordingly, regardless of which state's limitations law applies, her claims are time-barred and must be dismissed.

12

2.   **Under California Choice-Of-Law Principles, Tran's Claims Are Governed Exclusively By California Law.**

Unlike Robello, who filed her case directly in this Court, plaintiff Tran filed his action in California state court. Accordingly, this Court must apply California choice-of-law rules to plaintiff Tran's claims. *In re Vioxx*, 478 F. Supp. 2d at 903 (explaining that, for cases transferred to the MDL, "the MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules" (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990))).

California applies the "governmental interest" approach, in which the court "examine[s] the policies underlying competing laws of the involved states to determine which states are interested in having their laws applied to the issues in question." *Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 793-794 (Cal. Ct. App. 1982), citing *Reich v. Purcell*, 67 Cal. 2d 551 (Cal. 1967). A state will have an interest in having its law applied "if the policies underlying the law would be thereby advanced" and "[w]hen only one of two potentially concerned states has an interest in having its law applied, the conflict of laws is said to be 'false'" and "the court simply applies the law of the only interested state." *Id.* at 794.

That is precisely the case here. California courts have consistently deemed differences between its limitations laws and those of other states to be "false conflicts" and has applied its own law. *See, e.g., Ashland Chem. Co.*, 129 Cal. App. 3d at 794; *Am. Bank of Commerce v. Corondoni*, 169 Cal. App. 3d 368, 374 (Cal. Ct. App. 1985) (finding California statute of limitations applicable and noting that California's preference it to apply its own law).

For example, in *Ashland Chemical Co.*, the court considered whether Kentucky or California law should be applied to a guaranty contract. Applying the governmental interest test, the court found a "false conflict," stating:

13

Exhibit E

> Here California is the only interested state. Statutes of limitation
> are designed to protect the enacting state's residents and courts
> from the burdens associated with the prosecution of stale cases in
> which memories have faded and evidence has been lost. Here
> California courts and a California resident would be protected by
> applying California's statute of limitations because California is
> the forum and the defendant is a California resident. Applying
> California's statute of limitations would thus advance its
> underlying policy. In contrast, Kentucky has no interest in having
> its statute of limitations applied because here there are no
> Kentucky defendants and Kentucky is not the forum. This case . . .
> is the very paradigm of false conflict.

*Id.* at 794.

This case too presents an entirely false conflict. Louisiana has no interest in having its statute of limitations applied. There is no Louisiana party in the litigation, and for choice-of-law purposes, Louisiana is not the true forum. *See In re Vioxx*, 478 F. Supp. 2d at 903. Therefore, in light of California's clear choice-of-law analysis in statute of limitations cases, California statute of limitations law should govern plaintiff Tran's claim.

**B.    Robello's Claims Are Time-Barred Under Louisiana Law.**

Louisiana employs a one-year limitations period on personal injury claims.[3] La. Civ. Code Ann. art. 3492. Plaintiff Robello filed suit in 2007, but alleges injury before the withdrawal of Vioxx from the market in 2004. Her claims are thus stale unless saved by some other doctrine.

---

[3]    The same one-year period governs Robello's claims for wrongful death, which accrue on the date of death. La. Civ. Code Ann. art. 2315.2. The wrongful death period, like that applying to personal injury claims, is "prescriptive" rather than "peremptive" and thus susceptible to tolling by the discovery rule or by fraudulent concealment. *See Evans v. CanadianOxy Offshore Prod. Co.*, 730 So. 2d 466, 468-71 (La. App. 3d Cir. 1998) (wrongful death claims are susceptible to tolling by discovery rule or fraudulent concealment, while survival actions are "peremptive" and therefore only prone to tolling under fraudulent concealment). Thus, the analysis of the various tolling doctrines here applies in the same way to the personal injury and wrongful death claims.

Robello also brings claims under theories of fraud, misrepresentation, and breach of warranty. Louisiana's one-year limitations period would apply to these claims as well. Louisiana's Unfair Trade and Consumer Protection Law requires fraud claims to be brought within one year. La. Rev. Stat. Ann. § 51:1409(e). And redhibition claims – *i.e.*, warranty claims – must be brought within a year as well. *Moreno's, Inc. v. Lake Charles Catholic High Sch., Inc.*, 315 So. 2d 660, 663-64 (La. 1975).

14

1.    **Based On Indisputable Facts, Robello's Claims Accrued In Louisiana No Later Than September 30, 2004 As A Matter Of Law.**

As Merck explained in its motion for summary judgment on stale claims from Illinois, Pennsylvania, and Puerto Rico, a reasonable plaintiff would have been on notice of his or her claims under Louisiana law on September 30, 2004, the date that Merck announced the results of APPROVe and its decision to withdraw Vioxx from the market.  (*See* First Two-Year SOL Brief at 19-22.)  The withdrawal of Vioxx and the APPROVe results – suggesting a link between Vioxx and heart attacks – were widely covered both by print and broadcast media.  The story was carried in national newspapers and television broadcasts; it was carried in newspapers in plaintiffs' home states; and it was brought to the attention of hundreds of thousands of physicians and pharmacies nationwide.  Under these circumstances, reasonable plaintiffs could not have – and in fact did not – sleep on their claims.  That fact is evidenced by the thousands of plaintiffs who managed to file their lawsuits within six months of withdrawal.[4]  Thus, at the latest, Robello's claim was stale under Louisiana's applicable limitation doctrine on October 1, 2005.

2.    **Based On Indisputable Facts And Robello's Own Allegations, Merck's Alleged Fraudulent Concealment Could Only Toll The Limitations Period To September 30, 2004 – At The Latest.**

Plaintiff Robello – apparently cognizant that her complaint is untimely – asserts in her complaint that she is entitled to tolling on fraudulent concealment grounds.[5]  (Tribby Compl. ¶ 15.)  But as Merck explained in its recent motions, fraudulent concealment tolling arguments fail

---

[4]    In addition to the extensive media coverage, any plaintiffs taking Vioxx up until the date of withdrawal would have had the additional cue of being unable to obtain refills on their prescriptions.  At that point, plaintiffs would likely have been advised, consistent with the Dear Healthcare Professional letters sent to doctors and pharmacies, that the drug had been withdrawn due to concerns about cardiovascular risks.  Even if they were not so advised, the sudden unavailability of the drug would have prompted any reasonable person to follow up to find out why the drug was no longer available.

[5]    The *Tribby* complaint purports to advance a distinct "equitable estoppel" basis for tolling, but that is not elaborated in the complaint and apparently depends upon the same facts that support the fraudulent concealment allegation.  For purposes of this motion, they will be treated as the same argument.

Exhibit E

here for at least three reasons:  1) Robello has not pled fraud with particularity; 2) Robello only

pleads fraud up until September 30, 2004, the date of withdrawal, which would amount to no

tolling at all assuming an identical discovery date; and 3) media attention to the withdrawal of

Vioxx was so overwhelming as to expose the basis of plaintiff's claims to any reasonably

diligent person.  (*See* First Two-Year SOL Brief at 22-24.)

Like the plaintiffs addressed by Merck's First Two-Year SOL Brief, Robello's own

allegations estop any claim of concealment beyond the date of withdrawal.  (*See* Tribby Compl.

¶ 42 ("Merck continued to represent to consumers that Vioxx was safe, and that any

cardiovascular and/or cardiothrombotic side effects are not associated with the drug, ***until*** Merck

withdrew Vioxx from the market in September 2004") (emphasis added).)  Accordingly, as with

the discovery rule, plaintiff's claims of fraudulent concealment tolling fail in the face of the

overwhelming media coverage following withdrawal.[6]

### 3.   Plaintiff's Claims Are Not Saved By *American Pipe* Tolling.

While Robello may try to argue that her claims were tolled under *American Pipe*

principles, that argument fails because:  (1) *American Pipe* tolling is generally not available to

plaintiffs awaiting certification of personal injury class actions, because reliance on the

possibility of class treatment of such inherently individualized cases is objectively unreasonable;

and (2) tolling in cases like this would undermine the very purpose of *American Pipe* tolling.[7]

*First,* tolling is inappropriate for Vioxx cases altogether because mass-tort product

---

[6]      Furthermore, the sheer volume of lawsuits filed after withdrawal is a testament to the fact that any alleged fraudulent concealment was not so concealed as to escape the attention of plaintiffs' lawyers around the country. Indeed, Robello's lawyer had filed cases at far earlier dates in this litigation.  To cite just one example, attorney Lowe filed *Anderson v. Merck & Co., Inc.*, MDL Case No. 05-2572, on December 11, 2004 (attached as Ex. 41) (*Anderson* transferred to this Court on July 7, 2005 (attached as Ex. 42).)

[7]      Merck's First Two-Year SOL Brief, incorporated herein, addressed the origins of the doctrine developed in *American Pipe Construction Co. v. Utah*, 414 U.S. 538, 554 (1974) and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983) and its application by Louisiana courts.  (*See* First Two-Year SOL Brief at 24-38.)

Exhibit E

liability actions are inherently uncertifiable. Louisiana law bars reliance on pending classes

when such reliance is unreasonable. *Cf. Smith v. Cutter Biological*, 770 So. 2d 392, 409 (La. Ct.

App. 2000) (agreeing that "continued tolling of the statute of limitations after the district court

denies class certification is unnecessary to protect any ***reasonable*** . . . reliance by putative class

members on their former class representatives" (emphasis added) (quoting *Armstrong v. Martin

Marietta Corp.*, 138 F.3d 1374, 1382 (11th Cir. 1998))). *Smith* held in part that reliance on the

possibility that a district court would reverse its negative ruling on a certification question was

"ordinarily not reasonable" and thus that tolling was inappropriate. *Id.* Reliance on the hope that

a court would certify a statewide or nationwide class action for personal injury is similarly not

reasonable. As the *Baycol* court noted, "[N]o [federal] Court of Appeals decision has approved

class certification of an action involving prescription drugs." *In re Baycol Prods. Litig.*, 218

F.R.D. 197, 204 (D. Minn. 2003) (cholesterol drug). There is thus no reason to believe that

Louisiana courts would afford *American Pipe* tolling in Vioxx cases. Rather, Louisiana law

appears to track the careful reasoning exhibited in opinions like the *Jolly* case, which held that

reliance on the possibility of class certification is objectively and empirically unreasonable in

mass-tort personal injury cases. *See Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 937-38 (Cal. 1988).

    ***Second***, tolling is inappropriate here because it is inconsistent with the purposes of

*American Pipe*. (*See* First Two-Year SOL Brief at 32-34.) This is so because class actions

cannot put Merck on notice of unnamed plaintiffs' highly individualized claims. (First Two-

Year SOL Brief at 36-38.) As Merck noted in its opposition to class certification, these cases

involve widely varying facts with respect to usage, dose, content of warnings, medical history,

and a host of other factors unique to each plaintiff. Not surprisingly, each trial requires extensive

individualized discovery, involving "evidence, memories, and witnesses" that are unique to each

Exhibit E

case, including – by way of example – family members, treating physicians, and pharmacy records to which Merck cannot possibly have access without knowing the actual identity of the plaintiff.  And Merck could have no way of knowing the number of claims that would be encompassed by such an action, let alone the identities of the witnesses or their evidence.  The Vioxx suits are thus unlike the *American Pipe* case, in which the Court noted the "probability of common issues of law and fact," *id.* at 553, and in which there could be no doubt that individual claims "invariably will concern the same evidence, memories, and witnesses as the subject matter of the original class suit," *id.* at 562 (Blackmun, J., concurring).

In addition, extending the doctrine to mass-tort personal injury cases would encourage plaintiffs' lawyers to file class actions merely to achieve an illegitimate tolling benefit for unnamed members of the purported class (as happened in this case).  They are thus precisely the kinds of cases Justices Blackmun and Powell warned about in their concurring opinions in *American Pipe* and *Crown, Cork.*  As evidenced by the instant proceedings, tolling also serves no efficiency purpose – the solitary virtue of *American Pipe* tolling – because the vast majority of plaintiffs file their complaints notwithstanding the hypothetical availability of class-action tolling.  Indeed, *American Pipe* is all the more unnecessary in the instant litigation in light of the tolling agreement, which, at least for plaintiffs who have not slept on their claims, serves the purposes of *American Pipe* and would be redundant if *American Pipe* tolling actually applied in the mass-tort context.

*Finally*, class action tolling in the context of mass tort proceedings also leads to injustice.  If plaintiffs are allowed to slumber and not assert their claims while others have pursued their claims in mass litigation of this kind, the parties – plaintiffs and defendants alike – cannot get a grasp of the size or scope of the litigation until years after the deadlines contemplated by the

Exhibit E

applicable statutes of limitations.  Without a grasp on the size or scope of the litigation, the parties are shackled in searching for ways to resolve the litigation, leaving the claims of individual plaintiffs, some of whom may be ill or elderly, languishing until the doors are deemed closed.

In sum, *American Pipe* tolling is unavailable, and Robello was required to file her action – at the latest – by September 30, 2005.  Because she failed to do so, her claims are stale under Louisiana law.

### C.   The Claims Of Plaintiffs Robello And Tran Are Time-Barred Under California Law.

Plaintiff Robello's claims are also untimely under the law of the other potentially applicable state – California.  The same goes for plaintiff Tran, who filed in California and whose claims are governed (as discussed above) by California limitations law.

California requires plaintiffs to file their claims within two years of injury or discovering their claims.  Accordingly, plaintiffs had to file their claims no later than September 30, 2006, two years after the withdrawal of Vioxx from the market.  However, plaintiff Tran filed his complaint in Santa Clara County, California on October 4, 2006, and plaintiff Robello was part of the *Pamela Tribby* complaint filed directly in this Court on August 15, 2007.  Accordingly, their claims are stale.

### 1.   Under California Law, The Discovery Rule Was Triggered – At The Latest – By The Media Coverage Following The Withdrawal Of Vioxx.

California observes a two-year limitation period for personal injuries or wrongful death (*see* Tribby Compl. ¶¶ 47-75; Tran Compl. ¶¶ Prod L-4-L-5) in a product liability case.  Cal. Code Civ. Proc. § 335.1 ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another.").  Generally, in

19

California, the right to sue to recover damages for personal injuries arises -- and the statute of limitations begins to run – "when the cause of action is complete with all of its elements." *Norgart v. Upjohn Co.*, 981 P.2d 79, 83 (Cal. 1999).  Like the other jurisdictions subject to this motion, however, California has adopted a "discovery rule" that tolls the running of the statute of limitations "until the plaintiff discovers, or has reason to discover, the cause of action, until, that is, he at least suspects, or has reason to suspect, a factual basis for its elements." *Id.*

In applying the discovery rule, California courts have explained that the statute of limitations begins to run when the plaintiff "suspects, or ***should suspect***, that she has been wronged." *Jolly*, 751 P.2d at 930 (emphasis added).  Further, "plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through the investigation of sources open to her." *Id.* at 927; *see also Sanchez v. South Hoover Hosp.*, 553 P.2d 1129, 1135 (Cal. 1976) ("Possession of presumptive as well as actual knowledge will commence the running of the statute.").  "In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).

In light of this precedent, the California Supreme Court has recently held that "[i]n order to rely on the discovery rule for delayed accrual of a cause of action, [a] plaintiff whose complaint shows on its face that his claim would have been barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808.  In doing so, it clarified that such a test was consistent with the California's policy requiring diligent pursuit of claims:

20

> The Legislature, in codifying the discovery rule, has also required
> plaintiffs to pursue their claims diligently by making accrual of a
> cause of action contingent on when a party discovered *or should
> have discovered* that his or her injury had a wrongful cause . . .
> This policy of charging plaintiffs with presumptive knowledge of
> the wrongful cause of an injury is consistent with our general
> policy encouraging plaintiffs to pursue their claims diligently.

*Id.* Finally, and most relevant to the case at bar, the California Supreme Court has noted that

"[e]vidence that information of a particular hazard has received widespread publicity may under

some circumstances be a basis for granting summary judgment for defendants on statute of

limitations grounds and for defeating a plaintiff's delayed discovery claim." *Grisham v. Philip

Morris U.S.A., Inc.*, 151 P.3d 1151, 1158 (Cal 2007).

Summary judgment is appropriate here under these rules with respect to both plaintiff

Robello and plaintiff Tran. Mr. Robello died on March 8, 2003, but Ms. Robello did not file suit

until October 12, 2007. Similarly, Mr. Tran alleges injury in May 2003, but did not file suit until

October 4, 2006. Therefore, as required by *Fox*, plaintiffs must plead specific facts stating the

time and manner of discovery of their claims. Their complaints fail to do so, alleging no

applicable dates or manner of discovery.[8] As such, under California law, the Court need not

even engage in a discovery-rule analysis; plaintiffs' failure to plead delayed discovery bars them

from raising it.

In any event, as set forth above, national and California media coverage of the

withdrawal of Vioxx from the market was substantial, belying any claims that plaintiffs did not

discover their claims by September 30, 2004. (*See* Background § A, *supra*.) Furthermore, vast

numbers of plaintiffs in the instant litigation filed claims across the country shortly after the

withdrawal of Vioxx, triggering additional media coverage which itself should have put other

---

[8]     Tran alleges that he discovered his claim in November of 2004, but he gives no reason why. (Tran Compl.
at 4.)