UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | SECTION:    L |
| | : | |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| DAVID WYSER, Plaintiff, | : | |
| vs. | : | |
| MERCK & CO., INC., Defendant, | : | |
| Case No. 07-2695. | : | |

**PLAINTIFF'S RESPONSE TO MERCK & CO., INC.'S
STATEMENT OF MATERIAL FACTS, COUNTERSTATEMENT OF MATERIAL
FACTS AS TO WHICH THERE IS NO ISSUE TO BE TRIED, and
STATEMENT OF MATERIAL FACTS IN DISPUTE**

In Support of his response to Merck's Motion for Summary Judgment, and pursuant to Local Rule 56.1, Plaintiff David Wyser hereby responds in seriatim fashion to Defendant Merck's Statement of Facts as to Which There is no Genuine Issue to be Tried (hereafter "Merck SOF"):

## I.   PLAINTIFF DAVID WYSER'S RESPONSE TO MERCK'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

1.      On May 20, 1999, the FDA approved Vioxx as safe and effective for treatment of osteoarthritic pain, primary dysmenorrhea, and acute pain.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 1 filed by the Plaintiffs' Steering Committee on behalf of Plaintiffs Boyd Edmonds and Janet Edmonds, Donald Stinson, and Timothy R. Watson in a document titled

Plaintiffs' Response to Merck's Statement of Material Facts As to Which There is No Genuine Issue To Be Tried and Plaintiffs' Counter-Statement of Material Facts as to Which There is no Genuine Issue to Be Tried, ("Plaintiffs Response and Counter-Statement") which was filed with this court on January 4, 2007, Id # 13352130.

2.  After Vioxx was approved by the FDA, Merck continued to conduct clinical trials to assess the safety and efficacy of Vioxx for additional patient populations and other medical conditions.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 2 contained in Plaintiffs Response and Counter-Statement.

3.  In March 2000, Merck learned the preliminary results of the Vioxx GI Outcomes Research ("VIGOR") study, a double-blind, 8,000-patient trial designed to assess the relative incidence of gastrointestinal perforations, ulcers, and bleeds ("PUBs") in rheumatoid arthritis patients treated with Vioxx as compared to those treated with the drug naproxen

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 3 contained in Plaintiffs Response and Counter-Statement.

4.  The VIGOR data showed that patients taking Vioxx suffered fewer serious gastrointestinal PUBs than patients taking naproxen, and it also showed that the Vioxx group suffered a higher incidence of serious cardiovascular thrombotic events than did naproxen users. The difference was statistically significant.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs'

Response No. 4 contained in Plaintiffs Response and Counter-Statement.

     5.    In early 2001, the news media widely reported the VIGOR results, including a potential link to between Vioxx use and MI risks. … During the course of the next three years the news media repeatedly announced that the use of Vioxx might lead to increased cardiovascular risks.

     **RESPONSE:** It is admitted that some news sources carried stories containing information about possible links between Vioxx and increased MI risk, but because Merck has asserted its naproxen theory and its 18-month defense both publically and in defense against Vioxx personal injury actions, i.e. *Barnett, Dedrick, Hunieston, Irvin, Mason* and *Smith*, Merck should be judicially estopped from arguing that the cause of plaintiffs' injuries were discoverable before the withdrawal of Vioxx from the market. See *Insolia v. Phillip Morris Incorporated*, 216 F.3d 596, 598 (7th Cir. 2000)("For decades tobacco companies have assured the public that there is nothing to fear from cigarettes, yet they now slough off lawsuits like this one by professing that everybody knew all along that smoking was risky ... In taking this litigation stance, the cigarette makers either are suffering from amnesia or are acknowledging that their propaganda over the years has been ineffectual. Judicial estoppel, however, applies only to inconsistent position adopted in litigation ...."); see also *Whiteley v. Philip Morris Inc.*, 117 Cal.App.4th 635 (Cal.App. lst Dist. 2004)(finding tobacco manufacturers were estopped from arguing that plaintiffs claims were discoverable at earlier date since the manufacturers had denied the relationship between smoking and health risks for decades). Indeed, because information conclusively refuting the 18-month defense only recently came to light, Merck should be estopped from arguing that plaintiffs' claims were discoverable before May 30, 2006, the date

3

that Merck publicly admitted its published APPROVe study was incorrect.  Plaintiff also denies that this information was widely reported in the state of Indiana.

6. On April 11, 2002, the FDA approved a revised label for Vioxx. This revised label incorporated the VIGOR results, the results from additional placebo-controlled studies, as well as a new indication for rheumatoid arthritis.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 5 contained in Plaintiffs Response and Counter-Statement.

7. In approving the revised label, the FDA stated: "We have completed the review of these supplemental applications, as amended, and have concluded that adequate information has been presented to demonstrate that the drug products are safe and effective for use as recommended in the agreed upon enclosed labeling text."

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 6 contained in Plaintiffs Response and Counter-Statement.

8. The post-VIGOR label substantially revised the former label. In the Precautions section, it read as follows:

> Cardiovascular Effects
>
> The information below should be taken into consideration and caution should be exercised when VIOXX is used in patients with a medical history of ischemic heart disease.
>
> In VIGOR, a study of 8076 patients (mean age 58; VIOXX n=4047, naproxen n=4029) with a median duration of exposure of 9 months, the risk of developing a serious cardiovascular thrombotic event was significantly higher in patients treated with VIOXX 50 mg once daily

4

>(n=45) as compared to patients treated with naproxen 500 mg twice daily (n=19). In VIGOR, mortality due to cardiovascular thrombotic events (7 vs. 6, VIOXX vs naproxen, respectively) was similar between the treatment groups. (See CLINICAL STUDIES, Special Studies, VIGOR, Other Safely Findings: Cardiovascular Safely.) In a placebo-controlled database derived from 2 studies with a total of 2142 elderly patients (mean age 75; VIOXX n=1067, placebo n1075) with a median duration of exposure of approximately 14 months, the number of patients with serious cardiovascular thrombotic events was 21 vs 35 for patients treated with VIOXX 25 mg once daily versus placebo, respectively. In these same 2 placebo-controlled studies, mortality due to cardiovascular thrombotic events was 8 vs 3 for VIOXX versus placebo, respectively. The significance of the cardiovascular findings from these 3 studies (VIGOR and 2 placebo-controlled studies) is unknown. Prospective studies specifically designed to compare the incidence of serious CV events in patients taking VIOXX versus NSAID comparators or placebos have not been performed.
>
>Because of its lack of platelet effects, VIOXX is not a substitute for aspirin for cardiovascular prophylaxis. Therefore, in patients taking VIOXX, antiplatelet therapies should not be discontinued and should be considered in patients with an indication for cardiovascular prophylaxis. (See CLINICAL STUDIES, Special Studies, Platelets, PRECAUTIONS, Drug Interactions, Aspirin.) Prospective, long-term studies on concomitant administration of VIOXX and aspirin evaluating cardiovascular outcomes have not been conducted.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 7 contained in Plaintiffs Response and Counter-Statement.

9. After revising the Vioxx label as approved by the FDA, Merck publicized the content of the new label to the medical community and the news media.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 8 contained in Plaintiffs Response and Counter-Statement.

10. On May 29, 2001, Dominick Lettieri and Mary Lombardozzi filed a complaint in

the United States District Court for the Eastern District of New York seeking certification of a "nationwide class of persons who are taking ... Vioxx ... [or] Celebrex."

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 9 contained in Plaintiffs Response and Counter-Statement.

11. The Lettieri action sought relief under several theories, including for personal injury.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 10 contained in Plaintiffs Response and Counter-Statement.

12. On August 1, 2001, the Lettieri complaint was amended, substituting Alex Cain and William Watkins as new named plaintiffs and making other changes but retaining personal injury claims.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 11 contained in Plaintiffs Response and Counter-Statement.

13. On September 18, 2002, the Cain complaint was amended again, dropping personal injury claims, prior to any ruling on certification.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 12 contained in Plaintiffs Response and Counter-Statement.

14. On September 24, 2004, an external safety board monitoring the results of a separate long-term study-the APPROVe study-informed Merck that interim data from the study

showed an increased rate of cardiovascular events in the Vioxx arm compared to the placebo arm.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 13 contained in Plaintiffs Response and Counter-Statement.

15. On September 30, 2004, Merck withdrew Vioxx from the market.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 14 contained in Plaintiffs Response and Counter-Statement.

16. Merck publicly announced the results of the APPROVe study and the withdrawal of Vioxx from the market in a press release on September 30, 2004.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 15 contained in Plaintiffs Response and Counter-Statement.

17. National television news programs immediately reported the Vioxx withdrawal.

**RESPONSE:** Admitted in part; denied in part. It is admitted that Merck has attached copies of broadcasts reporting on the withdrawal of Vioxx from the market as exhibits 13-16 to its Statement of Undisputed Facts. It is denied that these broadcasts provided plaintiffs with notice of their right to pursue claims against Merck.

18. The networks continued their coverage in the evening.

**RESPONSE:** Admitted in part; denied in part. It is admitted that Merck has attached copies of broadcasts reporting on the withdrawal of Vioxx from the market as exhibits 18-21 to

its Statement of Undisputed Facts. It is denied that these broadcasts provided plaintiffs with notice of their right to pursue claims against Merck.

19. The results of the APPROVe study and Merck's decision to withdraw Vioxx from the market were reported in major newspapers the next day, including the USA Today, the Wall Street Journal, and the New York Times.

**RESPONSE:** Plaintiff Wyser hereby incorporates, as if fully set out herein, Plaintiffs' Response No. 16 contained in Plaintiffs Response and Counter-Statement.

20. Plaintiffs Robello and Tran reside in California, were prescribed and took Vioxx in California, and allegedly suffered their injuries there.

**RESPONSE:** Plaintiff Wyser is currently without information sufficient to admit or deny this allegation.

21. Plaintiff Wyser resides in Indiana, was prescribed and took Vioxx in Indiana, and allegedly suffered his injury there. Plaintiff Wyser alleges he suffered a heart attack there on July 28, 2003. Plaintiff Wyser filed his complaint in the United States District Court for the Southern District of Indiana on March 16, 2007.

**RESPONSE:** Admitted.

22. Plaintiff Donald Preuniger resides in Texas, was prescribed and took Vioxx in Texas, and allegedly suffered his injury there.

**RESPONSE:** Plaintiff Wyser is currently without information sufficient to admit or deny

this allegation.

23.     Plaintiff Paul Noe resides in West Virginia, was prescribed and took Vioxx in West Virginia, and allegedly suffered his injury there.

**RESPONSE:** Plaintiff Wyser is currently without information sufficient to admit or deny this allegation.

## II.     PLAINTIFFS' COUNTER-STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED.

1.     Plaintiff Wyser hereby incorporates, as if fully set out herein, Statements of Material Facts Nos. 1-24 contained in Plaintiffs Response and Counter-Statement.

2.     On October 12, 2004, the purported personal injury class action of *Van Jelgerhuis, et al. v*. Merck & Co., Inc., 1:04 cv-1651-RLY-WTL was filed in the United States District Court for the Southern District of Indiana.

3.     On March 1, 2005, the *Van Jelgerhuis* action was transferred to this MDL and assigned case number 05-0458.

## III.     PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN DISPUTE

1.     When, under Indiana law, Plaintiff Wyser knew or should have known his injury was caused by Vioxx.

2.     Whether Plaintiff Wyser's claims fall within the scope of the putative personal injury class action captioned *Van Jelgerhuis, et al. v. Merck & Co., Inc.*, 1:04 cv-1651-RLY-WTL so as to toll Plaintiff Wyser's cause of action.

9

Respectfully submitted,

**PRICE WAICUKAUSKI & RILEY, LLC**


By: s/ Christopher A. Moeller
Henry J. Price, Bar No. 8522-49
William N. Riley, Bar No. 14941-49
Jana K. Strain, Bar No. 20677-49
Jamie R. Kendall, Bar No. 25124-49A
Christopher A. Moeller, Bar No. 25710-49

The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN  46204
Telephone: (317) 633-8787
Fax: (317) 633-8797


**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing *Plaintiff's Response to Merck & Co., Inc.'s Statement of Material Facts, Counterstatement of Material Facts as to Which There is no Issue to be Tried, and Statement of Material Facts as to Which There is Dispute* has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 7th day of November, 2007.


s/ Christopher A. Moeller
Christopher A. Moeller

10