UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GWENDOLYN L. CARR | : | CIVIL ACTION |
| | : | |
| v. | : | NO. |
| | : | |
| MERCK & COMPANY, INC. | : | Jury Trial Demanded |

## CLASS ACTION COMPLAINT

### PARTIES

1.  Plaintiff is an adult individual and a citizen of the Commonwealth of Pennsylvania, who resides at 6400 Garman Street, Philadelphia, Pennsylvania 19142.

2.  Defendant, Merck & Company, Inc., is a corporation operating and existing under the laws of the State of New Jersey and having its principal place of business in the State of New Jersey. Merck is qualified to do business in Pennsylvania, having its registered agent at CT Systems, 1515 Market Street, Philadelphia, Pennsylvania 19102.

### JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial parts of the events giving rise to Plaintiff's claims occurred, in part, in the Eastern District of Pennsylvania.

## GENERAL ALLEGATIONS

5. This case involves Plaintiff's use of a drug called Vioxx (rofecoxib). Vioxx was designed, formulated, patented, marketed, sold, and ultimately distributed by the Defendant.

6. Plaintiff brings this action to seek certification of a Pennsylvania medical monitoring program on behalf of herself and the members of the class described hereafter.

7. Plaintiff and the class members seek recovery of the quantifiable costs of periodic future medical examinations necessary to detect the onset of physical harm.

8. Vioxx was designed to treat osteoarthritis, rheumatoid arthritis, acute pain, and migraines.

9. Osteoarthritis, or degenerative joint disease, is characterized by the breakdown of the joints cartilage (which cushions the ends of bones). Cartilage breakdown causes bones to rub against each other, leading to pain and loss of movement.

10. Rheumatoid arthritis is a chronic syndrome characterized by inflammation in the lining of the joints, causing pain, stiffness, warmth, redness and swelling, leading to loss of movement.

11. Vioxx is within a class of drugs called non-steroidal anti-inflammatory drugs ("NSAIDs"). Vioxx works by reducing substances that cause inflammation, pain and fever.

12. Prostaglandins are chemicals that promote inflammation and its symptoms (pain, fever, swelling and tenderness). Vioxx blocks the enzyme that makes prostaglandins, thereby reducing the amounts of prostaglandins and reducing inflammation and its symptoms.

13. The United States Food and Drug Administration ("FDA") first approved Vioxx in 1999 for the reduction of pain and inflammation caused by osteoarthritis, acute pain and menstrual pain. The FDA subsequently approved Vioxx to treat rheumatoid arthritis in adults and children.

14. In June 2000, Merck submitted a safety study to the FDA entitled "Vioxx Gastrointestinal Outcomes Research." The study found an increased risk of serious cardiovascular events, including heart attacks and strokes, in patients taking Vioxx.

15. In February, 2001, the FDA consulted its Arthritis Advisory Committee regarding the clinical interpretation of this new safety information.

16. In April, 2001, the FDA implemented Vioxx labeling changes which included information about the increase in risk of cardiovascular events, including heart attacks and stroke.

17. Other studies recently suggested that ingestion of Vioxx produces an increased risk of cardiovascular events, and the FDA has been reviewing these studies to determine if further labeling changes are needed.

18. Abruptly, on September 30, 2004, Merck voluntarily withdrew Vioxx from the market after the data safety monitoring board overseeing a long-term study of the drug recommended that the study be halted because Vioxx produced an increased risk of serious cardiac events, including heart attack and strokes. The risk was approximately twice that of individuals taking a placebo.

19. Annual sales of Vioxx, before September 30, 2004, totaled approximately $2.5 billion. It is estimated that tens of thousands of people have ingested and/or currently ingest Vioxx in the Commonwealth of Pennsylvania.

20. Plaintiff began taking Vioxx approximately four years ago for arthritis pursuant to a knee and hip replacement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

22. Plaintiff brings this action individually and as a class action pursuant to F.R.C.P. 23, on behalf of a medical monitoring class defined as follows:

   a. All persons in the Commonwealth of Pennsylvania who purchased and/or ingested Vioxx from its introduction in 1999 through the present.

   b. Excluded from the class definitions are any persons who have already settled or otherwise compromised their claims against the Defendant.

   c. Also excluded from the class definitions are officers and employees of Defendant.

23. Plaintiff is a member of the class she seeks to represent. Plaintiff's interests coincide with, and are not antagonistic to, those of the other class members. Plaintiff's claims are typical of the claims of the other class members, and Plaintiff will fairly and adequately represent and protect the interests of the class as a whole.

24. Questions of law and fact are common to all class members. More specifically, and without limitation, the following questions of law and fact are common to all class members:

   a. Whether Vioxx is a harmful substance;

b. Whether Plaintiff and the class members were exposed to greater than normal background levels of Vioxx as a result of Defendant's negligence;

c. Whether Plaintiff and the class members have a significantly increased risk of contracting a serious latent disease, including but not limited to heart attack, stroke, deep vein thrombosis and/or pulmonary embolism, as a proximate result of exposure to a hazardous substance;

d. Whether a monitoring procedure exists that makes early detection of the serious latent disease possible;

e. Whether the prescribed monitoring regime is different from that normally recommended in the absence of exposure;

f. Whether the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles;

g. Whether the Defendant was negligent;

h. Whether the Defendant was negligent *per se*;

i. Whether Defendant violated the express warranties associated with Vioxx.

25. Questions of law and fact common to all members of the class predominate over any questions affecting only individual members. The common issues are the most significant issues in the case, and can be resolved for all the members of the class in one action. Plaintiff's claims arise out of similar conduct by the Defendants, and the elements of Plaintiff's medical monitoring claim are common to each class member.

26. The Plaintiff class, which is believed to be in the tens of thousands, is so numerous as to make joinder impractical.

27. The representative Plaintiff will fairly and adequately assert and protect the interest of the class, in that:

   a. The representative Plaintiff has no conflicts of interest with absent class members in the maintenance of this action and pursues this action for the benefit of the Plaintiff class. Plaintiff has no present relationship with Defendants, in any official or unofficial capacity.

   b. The representative Plaintiff has adequate financial resources to conduct this litigation in a manner assuring that the interests of the Plaintiff class will not be harmed. Class counsel has agreed and has the ability to advance costs of this litigation.

   c. The representative Plaintiff has retained counsel who are experienced in class action litigation and who will adequately represent the interests of the class.

28. A class action will provide a fair and efficient method of adjudicating this controversy.

   a. Common questions of law and fact predominate over any question affecting only class members. The common issues are the most significant issues in the case, and can be resolved for all members of the class in one action.

   b. Neither the size of the class nor any other factor makes it likely that difficulties will be encountered in the management of this action as a class action.

29. The prosecution of separate actions by or against individual members of the class would create the risk of inconsistent and/or varying adjudications with respect to class members and could impair the ability for individual class members to protect their interests.

30. Defendant has refused to act on grounds applicable to the class as a whole, thereby making injunctive relief or declaratory relief appropriate.

31.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
## MISREPRESENTATION

32.  Plaintiff incorporates by reference the allegations of the preceding paragraphs.

33.  Defendant, directly or indirectly, made material misrepresentations, or failed to disclose material facts, to Plaintiff, the class members and their physicians regarding the safety and side effects of Vioxx. In particular, Defendant engaged in a promotional campaign for Vioxx that minimized the potentially serious cardiovascular findings that were observed in at least one clinical trial.

34.  Defendant, through its experience, was in a position of superiority over Plaintiff, the class members and their physicians with respect to knowledge of the safety and side effects of Vioxx.

35.  Defendant had a duty to disclose these facts to Plaintiff, the class members and their physicians, and failed to do so. As such, Defendant misrepresented facts known to it to be deceptive and/or failed to disclose their complete knowledge of the safety and side effects of Vioxx.

36.  The material misrepresentations and omissions were, or should have been, known by Defendant to be deceptive when made.

37.  Defendant intended, or could reasonably have foreseen or expected, that these material misrepresentations and omissions would influence Plaintiff, the class members and their physicians in their decision to consume Vioxx.

38. Plaintiff, the class members and their physicians relied to their detriment and injury upon the deceptive statements of fact made by Defendant.

WHEREFORE, Plaintiff respectfully requests this Court to grant the relief requested in Count V of this Complaint.

## COUNT II
## NEGLIGENCE

39. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

40. Defendant owed a duty to Plaintiff and the class members and their physicians to exercise the ordinary care and diligence exercised by a reasonable and prudent manufacturer under the same or similar circumstances.

41. Defendant owed a duty to Plaintiff and the class members and their physicians to provide adequate warnings of the safety and effectiveness of Vioxx.

42. Defendant owed a duty to Plaintiff and the class members and their physicians to ensure that Defendant's marketing and promotional efforts did not weaken or vitiate its safety and effectiveness warnings to Plaintiff, to the class members, and to their physicians.

43. Defendant owed a duty to Plaintiff and the class members and their physicians to restrict the use of Vioxx if Defendant was on notice that Vioxx was used indiscriminately or in any manner inconsistent with the appropriate safety and effectiveness warnings.

44. Defendant violated the duty owed to Plaintiff and the class members and their physicians, and was negligent in the following particulars:

   a. Failing to adequately test Vioxx to discover harmful side effects;

    b.    Failing to warn of the negative side effects Vioxx can have on patients; and

    c.    Engaging in a promotional campaign for Vioxx that minimized the potentially serious cardiovascular findings that were observed in at least one clinical trial.

    d.    Failing to take reasonable steps to restrict the use of Vioxx.

45.    As a direct and proximate result of Defendant=s conduct, Plaintiff and the class members have suffered actual damages.

WHEREFORE, Plaintiff respectfully requests this Court to grant the relief requested in Count V of this Complaint.

## COUNT III
## NEGLIGENCE PER SE

46.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

47.    Defendant's acts and omissions, as set forth above, violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301 et seq.

48.    As a direct and proximate result of Defendant's conduct, Plaintiff and the class members have suffered actual damages.

WHEREFORE, Plaintiff respectfully requests this Court to grant the relief requested in Count V of this Complaint.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

49.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

50. The drug Vioxx was a "good" under Article II of the Uniform Commercial Code, 13 Pa. C.S.A. §1101 et seq.

51. Plaintiff and the class members were "buyers" in that they contracted for and purchased goods manufactured by the Defendant.

52. Defendant was a "merchant" in that it dealt in goods of the kind purchased by Plaintiff and the class members.

53. Defendant was a "seller" in that it sold or contracted to sell goods.

54. Plaintiff and the class members received express warranties from Defendant, which Defendant made through the class members' doctors and through written materials included with the purchased Vioxx, that Vioxx was safe, effective, fit and proper for its intended use. These express warranties significantly exaggerated the safety and effectiveness of Vioxx.

55. The goods were not in their warranted condition.

56. Plaintiff and the class members are entitled to incidental and consequential damages, as appropriate, under Article II of the Uniform Commercial Code, 13 Pa. C.S.A. § 2719 (b).

WHEREFORE, Plaintiff respectfully requests this Court to grant the relief requested in Count V of this Complaint.

## COUNT V
### PRAYER FOR RELIEF

Plaintiff respectfully requests this Court to grant Plaintiff and the class members the following relief:

A.   Plaintiff and the class members seek recovery of all costs of periodic future medical examinations necessary to detect the onset of physical harm from ingestion of Vioxx.

B.   Plaintiff and the class members seek all counsel fees and costs associated with this litigation.

C.   Plaintiff and the class members seek all other and further relief that this Court deems appropriate.

Respectfully submitted:

ANDREW B. SACKS
JOHN K. WESTON
JULIE C. PARKER
Attorneys for Plaintiff
Sacks & Weston
510 Walnut Street, Suite 400
Philadelphia, Pennsylvania 19106
(215) 925-8200