UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX * | |
| Products Liability Litigation * | |
| * | |
| This Document Relates to: * | MDL No. 1657 |
| * | |
| RAMON ALVARADO et al., Plaintiffs, * | SECTION L |
| * | |
| Versus * | JUDGE ELDON E. FALLON |
| * | |
| MERCK & CO., INC., Defendant, * | MAGISTRATE JUDGE |
| * | KNOWLES |
| Case No. 06-7150, * | |
| * | |
| & * | |
| * | |
| PHILIP DAWSON, Plaintiff, * | |
| * | |
| versus * | |
| * | |
| MERCK & CO., INC., Defendant, * | |
| * | |
| Case No. 07-1259, * | |
| * | |
| & * | |
| * | |
| MATTHEW DEVITO et al., Plaintiffs, * | |
| * | |
| versus * | |
| * | |
| MERCK & CO., INC., Defendant, * | |
| * | |
| Case No. 07-0562, * | |
| * | |
| & * | |
| * | |
| DIANE DURBIN, Plaintiff, * | |
| * | |
| versus * | |
| * | |
| MERCK & CO., INC., Defendant, * | |
| * | |
| Case No. 06-11302, * | |
| * | |

899425v.1

|  |  |
|---|---|
| & | * |
|  | * |
| BARBARA MCKEAL, Plaintiff, | * |
|  | * |
| versus | * |
|  | * |
| MERCK & CO., INC., Defendant, | * |
|  | * |
| Case No. 07-0380, | * |
|  | * |
| & | * |
|  | * |
| RONALD PALES, Plaintiff, | * |
|  | * |
| versus | * |
|  | * |
| MERCK & CO., INC., Defendant, | * |
|  | * |
| Case No. 07-1389, | * |
|  | * |
| & | * |
|  | * |
| DONALD R. PREUNINGER and FLORA N. PREUNINGER, Plaintiffs, | * |
|  | * |
| versus | * |
|  | * |
| MERCK & CO., INC., Defendant, | * |
|  | * |
| Case No. 06-10305, | * |
|  | * |
| & | * |
|  | * |
| JACK RIDINGER, Plaintiff, | * |
|  | * |
| versus | * |
|  | * |
| MERCK & CO., INC., Defendant, | * |
|  | * |
| Case No. 07-0381, | * |
|  | * |
| & | * |
|  | * |
| VIET TRAN, Plaintiff, | * |
|  | * |
| versus | * |

899425v.1

| | |
|---|---|
| MERCK & CO., INC., Defendant, | * |
| Case No. 07-0368, | * |
| & | * |
| PAMELA TRIBBY et al., Plaintiffs, | * |
| versus | * |
| MERCK & CO., INC., Defendant, | * |
| Case No. 07-4118, | * |
| & | * |
| TIMOTHY R. WATSON, Plaintiff, | * |
| versus | * |
| MERCK & CO., INC., Defendant, | * |
| Case No. 05-5545, | * |
| & | * |
| DAVID WYSER, Plaintiff, | * |
| versus | * |
| MERCK & CO., INC., Defendant, | * |
| Case No. 07-2695. | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

### DEFENDANT MERCK & CO., INC.'S COMBINED REPLY MEMORANDUM IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Merck has moved for summary judgment on the claims of certain Vioxx plaintiffs from eight states across the country. As Merck explained in its motions, each of these plaintiffs' personal injury-based claims are barred under the statutes of limitations applicable to these

3

causes of action under their respective states' laws. In addition, these plaintiffs' "non-personal injury" claims are also barred for various other reasons. Plaintiffs from six states – Timothy Watson (KY); (2) James Barrall, Carol Ciabattoni, and Alonsi Dusi (PA); (3) Milagros Medina-Alfador (PR); (4) Ronald Pales (IL);[1] (5) Donald and Flora Preuninger (TX); and (6) David Wyser (IN) – have opposed Merck's motions to dismiss. However, not one of these plaintiffs is able to convincingly dispute that the limitations period applicable to his/her claims has expired. In light of the size, scope, and stage of this litigation, there is simply no reason to allow claims such as these, which simply cannot succeed as a matter of law, to continue to languish in the MDL proceeding. As a result, the Court should grant summary judgment as to each of these plaintiffs' claims.

## ARGUMENT

### I. PLAINTIFF WATSON'S ARGUMENTS THAT HIS CLAIMS ARE NOT BARRED UNDER KENTUCKY AND LOUISIANA LAW FAIL.

In his opposition to Merck's renewed motion for summary judgment, plaintiff Watson relies chiefly on the opposition he filed with respect to Merck's *initial* motion for summary judgment on his claims. Merck already responded to all of these arguments in its prior briefs and incorporates its responses herein. In addition, Merck's renewed motion for summary judgment asserts a number of arguments and sets forth additional undisputed facts that refute plaintiff's arguments.

While Watson also raises three new arguments in opposition to summary judgment, those arguments all fail.

---

[1] Merck initially moved with respect to four Illinois plaintiffs, but is withdrawing its motion without prejudice to renew with respect to plaintiffs Durbin, McKeal, and Ridinger.

*First,* Watson argues that summary judgment on discovery-rule and fraudulent-concealment tolling is unavailable because "Merck . . . cannot prove the date Watson was put on notice of the requisite information." (Watson Opp. at [4].) This argument misunderstands the nature of the discovery rule in both Kentucky and Louisiana. As Merck has consistently explained in its briefing, both states recognize that extensive media coverage can put plaintiffs on notice of their claims as a matter of law – *regardless whether they actually follow the news*. Watson cites no authority to the contrary, and his argument thus fails.

Watson also attempts to bolster his claim to lack of knowledge with an affidavit swearing that he did not discover the nature of his alleged injuries until "well after the recall of Vioxx." (Affidavit of Timothy Watson at ¶ 6.) However, this statement directly contradicts the affidavit that Mr. Watson provided in opposition to Merck's original motion for summary judgment on his claims. In his original affidavit, Mr. Watson testified that: "*[p]rior to the withdrawal of Vioxx* from the market on September 30, 2004, I had no knowledge that the drug was associated with causing cardiovascular injuries and/or that other plaintiffs had brought claims against Merck." (Aff. of Timothy Watson, Dec. 22, 2006 (attached to Merck's Mot. as Ex. 52) (emphasis added).)

Mr. Watson's late-in-the-day change of testimony cannot defeat summary judgment. As the Supreme Court has explained, courts have held with "virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). The Fifth Circuit has similarly held that "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Doe v. Dallas Indep. School Dist.*, 220 F.3d 380,

385 (5th Cir. 2000) (affirming grant of summary judgment and disregarding a contradictory post-deposition affidavit); *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc*., 922 F.2d 220, 225 (5th Cir. 1991) (affirming trial court holding that three contradictory affidavits filed by same party could not create genuine issue of fact); see also *Giles v. Univ. of Toledo*, 241 F.R.D. 466 (N.D. Ohio 2007) ("[w]hile a directly contradictory affidavit should be stricken, even an affidavit without a direct contradiction may be stricken if the Court determines that the affidavit constitutes an attempt to create a sham issue of material fact").  Because Mr. Watson's new affidavit contradicts his earlier statement, which was made **under oath**, it cannot create a triable issue of fact.

**Second,** Watson promotes an overly narrow reading of the *Blanton* case, arguing that the ruling in that case is limited to a situation where the plaintiff has read the articles at issue. (Watson Opp. at [4-5].)  But the rule of law in *Blanton* was not tied to what the plaintiffs knew; it was tied to what "they **should have known**." *Blanton v. Cooper Indus.*, 99 F. Supp. 2d 797, 802 (E.D. Ky. 2000).  And lest there be any doubt, subsequent cases from the Eastern District of Kentucky, relying *on Blanton*, have repeated this principle of law under numerous circumstances.  See *Adkins v. Duff*, 2004 U.S. Dist. LEXIS 26688, 17-18 (D. Ky. 2004) (finding that plaintiff failed to exercise reasonable diligence because of extensive media coverage of both withdrawal of diet drugs from the market and publicity of the Settlement Agreement); *Collett v. Freid*, 2004 U.S. Dist. LEXIS 19937, 14-17 (D. Ky. 2004) (relying on the extensive media coverage of the Diet Drugs and finding that, based on such coverage, "[a] person exercising reasonable diligence would have discovered her injuries and cause of action by, at least, early 2000"); see also *Meunier v. Wyeth (In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.)*, 352 F. Supp. 2d 533, 541 (D. Pa. 2004) ("A plaintiff in

6

Kentucky who fails to make any inquiry or take any action in the fact of extensive media coverage fails to exercise reasonable diligence as a matter of law.").

>   ***Third,*** Watson's argument that his fraud and warranty claims survive is wrong as well. Watson all but concedes the warranty issue, acknowledging that Kentucky still observes a privity requirement for warranty claims. Nonetheless, he invites the Court to revolutionize Kentucky law by inventing a prescription-drug exception to the privity requirement. (Watson Opp. at 8 n.5.) Watson cites no authority for his argument and forgets the Fifth Circuit's general policy against effecting a "substantive innovation" in state law in diversity cases. *Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. 1980) ("Whatever the merits or demerits of the proposed new rule, for us to adopt it for Texas would be presumptuous."). Because privity lives on in Kentucky, Watson's warranty claim fails.

>   Nor can plaintiff sustain his claim for fraud. In an effort to argue that he alleges more than omission, Watson cites four allegations from his complaint to the effect that Merck made representations that Vioxx was safe (Watson Opp. at 8-9), but these allegations simply restate what is fundamentally an alleged omission. What makes Vioxx not safe in plaintiff's view is its alleged risk to cause heart attacks, a risk that plaintiff alleges was not properly disclosed. (*See* Watson Compl. ¶ 5 ("This case involves Merck's failure to warn Plaintiff(s), their physicians and the FDA of potential serious cardiovascular side effects of Vioxx.").) Plaintiff does not seek recovery on the theory that Vioxx was generically not "safe"; rather, he seeks recovery on the theory that Vioxx caused his heart attack. He alleges only that Merck failed to warn of that particular risk – *i.e.*, an omission.

>   Watson can only recover for an omission, however, if he shows that Merck had a duty to disclose, and he has not established that. He argues that Merck had "superior knowledge"

7

(Watson Opp. at 7), but that bare allegation alone is not enough; by its very nature an intentional omission is only possible if one party knows something the other party does not.  Watson alternatively argues that Merck partially disclosed (Watson Opp. at 7), but he does not allege with particularity what the partial disclosure entailed.  Accordingly, he cannot establish that Merck had a duty to disclose, and his fraud claim fails as well.

## II.   PLAINTIFFS BARRALL, CIABATTONI, AND DUSI'S CLAIMS ARE BARRED UNDER PENNSYLVANIA LAW.

The Pennsylvania plaintiffs raise two arguments,[2] neither of which can survive summary judgment: (1) plaintiffs' warranty claims are timely because they were filed within four years of their alleged injuries; and (2) *American Pipe* tolling saves plaintiffs' negligence and wrongful death claims.

*First,* plaintiffs' warranty claims are stale.  As Merck argued in its opening brief, the relevant accrual date for warranty claims is the date of first tender – *i.e.*, the first purchase date of Vioxx – not the date of injury.  Plaintiffs cite no authority to the contrary, and this fact alone bars both Barrall's and Dusi's claims.[3]  As Merck further argued in its opening brief, none of these plaintiffs gave Merck notice of the alleged breach of warranty.  Such notice is a required element of all warranty claims.  Accordingly, plaintiffs' warranty claims would fail as a matter of law even if they are not time-barred.  Plaintiffs have not contended otherwise, and summary judgment is therefore appropriate.

---

[2]     Plaintiffs actually raise three arguments, but Merck does not take issue with the argument that Pennsylvania substantive law governs plaintiffs' claims. (*See* DeVito Opp. at 4-5.)  The choice-of-law question is which state's *limitations* law applies.  Plaintiffs acknowledge but do not address that issue, and Merck rests on its opening brief as to choice of law.

[3]     It likely also bars Ciabattoni's claims, but her fact sheet does not reveal the dates on which she used Vioxx. In the absence of an affidavit clarifying that Ciabattoni's warranty claims are timely, the Court should grant summary judgment to Merck.

8

*Second,* *American Pipe* tolling cannot save plaintiffs' negligence and wrongful death claims.  Merck acknowledged in its opening brief that Pennsylvania has recognized *American Pipe*, but this is all that plaintiffs argue.  They take no issue with Merck's argument that Pennsylvania courts would not apply *American Pipe* tolling in a case like this one because: (1) Pennsylvania has rejected cross-jurisdictional tolling, and no Vioxx personal injury class action is or ever has been pending in Pennsylvania state court; and (2) *American Pipe* tolling is inappropriate in cases like this one because such tolling undermines the purposes of both class actions and statutes of limitations.  Accordingly, plaintiffs neither dispute law nor fact as to tolling, and the Court should grant summary judgment to Merck.

### III. PLAINTIFF MEDINA-ALFADOR'S CLAIMS ARE BARRED UNDER LOUISIANA AND PUERTO RICO LAW.

Plaintiff Milagros Medina-Alfador's opposition addresses both Louisiana and Puerto Rico law because her claim was directly filed in this MDL proceeding.  Apart from her allegation that her claims did not accrue until she allegedly first had knowledge of a nexus between Vioxx and her alleged injuries in August 2006, her arguments recycle those advanced by Watson and are meritless for the same reasons.

*First,* Medina-Alfador argues that "actual knowledge came to plaintiff on or about August 2006."  However, this unsworn allegation, not included in her Complaint or an affidavit, is not enough to satisfy plaintiff's burden to prove that her claim is timely.  *See Jones v. State*, 891 So. 2d 698, 701 (La. App. 4th Cir. 2004) (dismissing case before trial because plaintiff failed to carry her burden to prove discovery rule should apply); *Quintana Lopez v. Liggett Group, Inc.*, 336 F. Supp. 2d 153, 156-57 (D.P.R. 2004) (same rule under Puerto Rico law).

*Second,* Medina-Alfador's argument that her claims survive under Louisiana law is meritless.  The Louisiana section of plaintiff's opposition is a nearly identical copy of the

9

Louisiana section of the brief filed by plaintiffs almost a year ago, in response to Merck's original motion to dismiss the *Watson* case on statute of limitation grounds. Thus, plaintiff's opposition does not address Merck's substantial elaboration of the extensive media coverage of the withdrawal of Vioxx in its most recent motions; nor does it address Merck's expanded analysis of the *American Pipe* tolling doctrine. Merck thus relies on the reply brief it filed in the *Watson* case, as well as its most recent motion for summary judgment on plaintiff Medina-Alfador's claims, which address the recycled arguments advanced by plaintiff here.

**Third,** plaintiff's assertion that her claims do not fail under Puerto Rico law is similarly unpersuasive. The Puerto Rico section of plaintiff's opposition does not raise any new arguments not already addressed in Merck's prior briefing on plaintiff's claims. Moreover, plaintiff fails to address many of the arguments set forth in Merck's latest motion.

For example, while plaintiff asserts that allegations of belated discovery and fraudulent concealment are typically addressed by the jury, she ignores entirely the cases cited in Merck's opening brief that expressly hold **as a matter of Puerto Rico law** that wide media coverage permits disposal of such claims on summary judgment. (*See* Merck's Mot. at 45 (citing, among others, *Quintana Lopez*, 336 F. Supp. 2d at 156-57 (granting motion to dismiss on statute-of-limitations grounds because it was "common knowledge that in the 1990s several states including Puerto Rico filed suit against the tobacco companies claiming that the manufacturing companies have conspired to mislead and deceive the public as to the addictive nature of and the health related risks associated with smoking" because these actions "were covered on the news periodically")).) In addition, plaintiff does not even attempt to dispute that *American Pipe* tolling does not apply to her claims. As a result, plaintiff fails to refute Merck's arguments that her claims fail under Puerto Rico law as well.

10

## IV.  PLAINTIFF PALES'S CLAIMS ARE BARRED UNDER ILLINOIS LAW.

In his opposition, plaintiff Pales claims that he filed suit more than two years after his allege stroke occurred, and that his stroke constitutes a "sudden traumatic injury," which renders him ineligible for the discovery rule under Illinois law.  (*See* Pales Mem. of Law at 4-5.)  Thus, Mr. Pales argues that his "statute of limitations ran" before he filed suit, "except," he asserts, "for the application of the fraudulent concealment rule," which saves his claim.  (*Id.* at 5.)[4]

But even if Pales's traumatic injury argument is right, his claim is still untimely.  In Illinois, "when the injury is caused by a sudden traumatic event . . . , the injured party is put on notice that the injury may have been wrongfully caused."  *Lowe v. Ford Motor Co.*, 730 N.E.2d 58, 61 (Ill. App. Ct. 2000).  As the *Lowe* court explained, where, as here, the plaintiff alleges a "sudden traumatic" injury, "the injured party becomes aware of his right to sue and the statute of limitations begins to run" at the time of the injury.  *Id.*; *accord Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 899 (Ill. 1995) (noting that Supreme Court of Illinois "has repeatedly held that where the plaintiff's injury is caused by a 'sudden traumatic event,' . . . the cause of action accrues, and the statute of limitation begins to run, on the date the injury occurs").  And because the sudden, traumatic injury puts the plaintiff on notice of his claim, such an injury prevents the plaintiff from relying on not only the discovery rule, **but also** the fraudulent concealment doctrine.  *See Lowe*, 730 N.E.2d at 61.

The plaintiff in *Lowe* alleged that his otherwise time-barred filing was timely because the defendant manufacturer "engaged in affirmative acts to fraudulently conceal the defects in the Bronco II automobile," which allegedly caused the accident that killed the plaintiffs' decedent.  *See id.* at 59.  The court rejected that contention, explaining that, "[i]n determining when a

---

[4]  Pales has disclaimed any reliance on class action tolling.  (*See* Pales Mem. of Law at 11-12.)

11

plaintiff should have reasonable discovered the possibility of wrongful causation of an injury, the courts [in Illinois] have distinguished between a sudden traumatic injury and an injury with an insidious onset." *Id.* at 60. And where the injury complained of is sudden and traumatic, the "traumatic event alone puts a person on notice of a reasonable possibility that his injury was wrongfully caused." The event that caused the *Lowe* plaintiffs' injury was sudden and traumatic, and the plaintiff was therefore ineligible for relief under the fraudulent concealment doctrine. *See id.* at 61.

So too here. If plaintiff Pales's stroke constitutes a "sudden traumatic injury" under Illinois law, he was put on notice of his claim when the stroke allegedly occurred (August 1, 2001). He thus had two years from that date to file suit. Because he failed to file suit for more than five years, his claim is now time-barred.[5]

### V.  THE PREUNINGERS' CLAIMS ARE BARRED UNDER TEXAS LAW.

In their opposition to Merck's motion for summary judgment, the Preuningers – for the first time – allege that Mr. Preuninger is "unable to handle his own affairs and has been and remains totally dependent upon his wife . . . for all decisions, activities of daily living, and daily care" and is thus of "unsound mind," tolling the applicable Texas statute of limitations. (Preuninger Resp. at 1-2.) However, plaintiffs offer no actual evidence or expert testimony supporting their newfound claim of incompetence.

While Texas does allow for tolling of the statute of limitations due to "unsound mind," defeating summary judgment is not as easy as merely raising the issue of mental incompetency.

---

[5] Pales's argument that the news media reports attached to Merck's motion constitute "hearsay" is specious because the news media reports are being offered to show that the plaintiff was on notice, not that their contents are true (in fact, Merck disputes the veracity of many of the assertions made in those reports).

(Preuninger Resp. at 3-4.)[6] Instead, as plaintiffs' own cases make clear, having an "unsound mind" for purposes of statute of limitations tolling is synonymous with being "insane" as a matter of law. *See, e.g., Hargraves v. Armco Foods, Inc.*, 894 S.W.2d 546 (Ct. App. Tex. 1995) (holding that under Texas law, "'persons of unsound mind' and 'insane persons are synonymous"). Accordingly, in order to prevail on an "unsound mind" tolling theory under Texas law, a plaintiff must produce either: "(1) specific evidence that would enable the court to find that he did not have the mental capacity to pursue the litigation or (2) a fact-based expert opinion to that effect." *Freeman v. American Motorists Insurance Company*, 53 S.W.3d 710 (Ct. App. Tex. 2001) (finding evidence insufficient where doctors' affidavits did not specifically opine that defendant lacked the mental capacity to pursue the litigation); *Grace v. Colorito*, 4 S.W.3d 765, 769 (Ct. App. Tex. 1999 ("[t]o prevent a summary judgment on an unsound-mind theory, the non-movant needs to produce *specific* evidence that would enable the court to conclude that she did not have the mental capacity to pursue litigation for a definite period of time, or produce a fact-based expert opinion to that effect").

For example, in *Grace*, the court affirmed summary judgment where the plaintiff claimed that the statute of limitations was tolled due to her "unsound mind." 4 S.W.3d at 769. The court based its decision on, *inter alia*, the fact that plaintiff "did not produce expert testimony to show that for several years prior to filing her claim, she lacked the mental capacity to bring her lawsuit" and that she "offers no testimony *except her own* to support the assertion." *Id.* Further, the court noted that "[e]xpert medical opinions given by a witness who is not shown to have the requisite expertise has no probative effect." *Id.* Finally, the court rejected plaintiff's contention that merely raising the issue of mental incompetency was sufficient to defeat summary judgment.

---

[6] Indeed, if this were the case, every plaintiff faced with a statute of limitations motion for summary judgment would simply submit a response stating he had an unsound mind.

13

According to the court, a claim of incompetency is persuasive only "when there are affidavits by medical experts showing that the plaintiff was mentally incompetent." *Id.* at 770.

Here, just as in *Grace*, plaintiffs cannot satisfy their burden of showing an unsound mind. While plaintiffs state that they have "presented substantial admissible evidence" (Preuninger Resp. at 6), just as in *Grace*, they have no testimony from any physician or expert that could support their claims that Mr. Preuninger is of an "unsound mind." Instead, plaintiffs have put forth only a self-interested affidavit from one of the plaintiffs themselves. Moreover, nowhere in the affidavit itself do plaintiffs even state that Mr. Preuninger was unable to file suit during the time since his heart attack, or address the question of why he is suddenly able to do so now. This, without more, is simply not sufficient to allege that Mr. Preuninger suffers from "unsound mind."[7]

Because plaintiffs have offered insufficient evidence under Texas law of Mr. Preuninger's "unsound mind," the statute of limitations should not be tolled, and their claims are time-barred.

## VI.    PLAINTIFF WYSER'S CLAIMS ARE BARRED UNDER INDIANA LAW.

In his opposition to Merck's motion for summary judgment, plaintiff Wyser alleges that his claims are valid under Indiana law because: (1) his fraud claims are governed by a six-year statute of limitations; and (2) his personal injury-based claims were tolled by the filing of a federal class action. Both arguments are incorrect.

---

[7]    Notably, plaintiffs cite no cases where a court denied a statute of limitations motion for summary judgment purely on the basis of a single affidavit from one of the parties. Rather, they ignore the Texas standard altogether and cite two criminal cases involving the insanity defense, *U.S. v. Alden*, 476 F.2d 378, 385 (7th Cir. 1973) and *U.S. v. Minor*, 459 F.2d 103, 106 (5th Cir. 1972, which are entirely irrelevant to the required evidence to show "unsound mind" for statute of limitations purposes in Texas. (*See* Preuninger Resp. at 6.)

***First***, plaintiff inaccurately alleges that his fraud claim is valid because it is governed by a six-year, rather than a two-year, statute of limitations. That is not the case. As Merck explained in its prior briefing, the Indiana Supreme Court has made clear that the statute of limitations applicable to a cause of action "is ascertained by identifying the nature or substance of the cause of action," not the way in which the plaintiff characterizes his/her claim. *Whitehouse v. Quinn*, 477 N.E.2d 270, 274 (Ind. 1985). In this case, plaintiff Wyser seeks personal injury damages as a result of Merck's alleged failure to inform him of the alleged risks of Vioxx. While plaintiff styles one of his claims as "fraud," that claim is based on the same general allegations that support his failure-to-warn claims. (*See* Merck's Mot. at 32 (noting that plaintiff's fraud claim is based on the allegations that "Merck violated the duties owed to Plaintiff by remaining silent or issuing misleading statements when they had a ***duty to warn***") (citing *Wyser* Compl. ¶ 56 (emphasis added)).) Moreover, plaintiff seeks personal injury damages for that claim. As a result, it is clear that the "nature or substance" of plaintiff's so-called "fraud" claim is really an additional cause of action for failure to warn and is therefore governed by the two-year statute of limitations applicable to personal injury claims.

In response to this argument, plaintiff incorrectly asserts that the "nature or substance" test for determining the applicable statute of limitations set forth in *Whitehouse* applies only in medical malpractice cases and is therefore inapplicable here. Plaintiff cites *Lawyer's Title Insurance Corp. v. Pokraka*, 595 N.E.2d 244, 246-46 (Ind. 1992) for the proposition that *Whitehouse* has been "specifically limited by the Indiana Supreme Court to legal malpractice actions." (Wyser Opp. at 4.) However, this is not the case. In *Pokraka*, plaintiff brought claims based in fraud and oral contract seeking economic damages incurred as a result of defendant's allegedly fraudulent mortgage scheme. Defendant sought dismissal, asserting that the claim was

15

barred under the two-year statute of limitations provided for claims for injury to personal property. The court rejected this argument, holding that the six-year statute of limitations for contract-based claims applied to the action. *Id*. According to the court, fraud and contract claims seeking economic damages could not always be presumed to be claims for injury to personal property for statute of limitations purposes because such a result "would be tantamount to judicially repealing these six-year statutes of limitations." *Id*. In this case, however, plaintiff does not simply seek economic damages based on contract principles. Instead, plaintiff's claims are based entirely on allegations of personal injury. Thus, there is no risk that applying the personal injury statute of limitations will usurp the statutorily imposed limitations period for fraud claims generally.

Plaintiff's reliance on *Schuman v. Kobets*, 716 N.E.2d 355, 356 (Ind. 1999) (Wyser Opp. at 4), is even less availing. There, the court held that the majority of plaintiff's claims for "personal injury due to a breach of oral contract" were governed by the two-year statute of limitations applicable to personal injury actions – not the six-year limitations period for contract claims. According to the court, this was because, the "applicable statute of limitations is ascertained by identifying the nature or substance of the cause of action" and [t]he thrust of [plaintiff's] claim is in tort" because "[s]he seeks recovery for a personal injury sustained as a result" of defendant's actions. *Id*. (citing *Whitehouse*, 477 N.E.2d 274). Thus, this case actually makes clear that the "nature of substance" test set forth in *Whitehouse* is not limited to medical malpractice actions.

In addition, while the court in *Schuman* determined, under the *Whitehouse* test, that a few of plaintiff's allegations "sound like a contract claim" and were therefore governed by the six-year limitation period for contract actions, these claims were distinct from plaintiff's personal

16

injury allegations. *Id*. For example, the court determined that plaintiff's warranty claim "stems from the oral month-to-month lease" between plaintiff and defendant. *Id*. According to the court, "[s]ince a lease is a contract, the essence of the landlord-tenant relationship is contractual in nature." *Id*. Thus, the statute of limitations for contract actions applied. The same cannot be said in this case. As explained in Merck's opening brief, all of plaintiff's claims here arise out of plaintiff's contention that he was personally injured as a result of Merck's alleged failure to warn about the risks of Vioxx. (*See* Merck's Mot. at 32.) Thus, these claims, no matter how they are styled, are governed by the two-year statute of limitations applicable to personal injury claims.

**Second**, plaintiff's argument that his personal injury claims were tolled by the class action complaint filed in *Ver Jelgerhuis, et al. v. Merck & Co., Inc.*, 1:04 cv-16151-RLY-WTL (S.D. Ind. Oct. 12, 2004) (Wyser Opp. at 1), is entirely without merit. As plaintiff himself acknowledges, the *Ver Jelgerhuis* class action was filed in ***federal*** court. Thus, as Merck explained at length in its opening brief, this action would only have tolled plaintiff Wyser's state-law claims if Indiana courts recognized accepted cross-jurisdictional tolling. (Merck's Mot. at 30-31.) As Merck set forth in its opening brief, they have not.

Notably, plaintiff does not argue – or cite even one Indiana case in support of the theory – that Indiana has ever accepted cross-jurisdictional tolling. Unless and until Indiana courts decide to adopt the doctrine for themselves, a federal court sitting in diversity should not press such a rule upon the state. *Wade v. Danek Med., Inc.*, 182 F.3d 281, 286 (4th Cir. 1999) (declining to adopt *American Pipe* tolling on behalf of Virginia for class actions filed out of state because Virginia had never expressly adopted *American Pipe* at all and because "of the general principle that, 'in trying to determine how the highest state court would interpret the law, we should not create or expand that State's public policy'" (quoting *Talkington v. Atria Reclamelucifers*

17

*Fabrieken BV*, 152 F.3d 254, 260 (4th Cir. 1998))). Because plaintiff is unable to dispute the fact that Indiana courts have not recognized cross-jurisdictional tolling, his claims were not tolled by the *Van Jelgerhuis* class action filed in federal court.

## CONCLUSION

For the foregoing reasons, plaintiffs' claims are stale, and the Court should grant summary judgment.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

John H. Beisner
Jessica Davidson Miller
Geoffrey M. Wyatt
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply Memorandum been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File

18

899425v.1

& Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 7th day of November, 2007.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel