UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: | * | |
| *Pales v. Merck & Co., Inc.* | * | |
| No. 07-1389 | * | MAGISTRATE KNOWLES |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iii-

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.     Because Mr. Pales' Stroke is a Sudden Traumatic Injury Under
             Illinois Law, the Discovery Rule Does Not Apply in his Case . . . . . . . . . . . . . . 4

      B.     The Discovery Rules Does Not Apply to Mr. Pales' Cause of
             Action Against Merck; therefore, the Fraudulent Concealment
             Tolling Statute is Available, and Mr. Pales Filed his Claim Well
             Before the Deadline Afforded by Merck's Fraudulent Concealment . . . . . . . . . 6

      C.     Ronald E. Pales Properly Pled with Particularity Merck's
             Fraudulent Concealment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      D.     Merck Has Not Moved that Mr. Pales Was Not Reasonably
             Diligent or Cannot Show that Merck Fraudulently Concealed His
             Cause of Action and, therefore, Dismissal of Plaintiff's Claims
             Would Be Without Proper Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      E.     Because Mr. Pales' Claims Were Timely Filed Under Illinois
             Law, He Is Not Relying on *American Pipe* Tolling his Cause of
             Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

**Cases**

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Berry v. Searle*, 309 N.E.2d 550 (Ill. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*Clay v. Brother Richard Kuhl*, 696 N.E.2d 1245 (Ill. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Golla v. General Motors*, 657 N.E.2d 894 (Ill. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*HS Resources, Inc. v. Wingate*, 327 F.3d 432 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*In re: Vioxx Product Liability Litigation*, 478 F.Supp. 897 (E.D. LA 2007) . . . . . . . . . . . . . . . . 4

*Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Peterson v. Instapak*, 1988 U.S. Dist. LEXIS 1046 (N.D. Il..1 1988) . . . . . . . . . . . . . . . . . . 2, 4-5

*Sille v. McCann*, 638 N.E.2d 676 (Ill. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Rules**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Other Authorities**

735 Ill. Comp. Stat 5/13-202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

735 Ill. Comp. Stat. 5/13-215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3-4, 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| This document relates to: | * | |
| *Pales v. Merck & Co., Inc.* | * | |
| No. 07-1389 | * | **MAGISTRATE KNOWLES** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ronald E. Pales makes and serves the following Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment as follows:

## SUMMARY OF ARGUMENT

While taking Vioxx®, Ronald E. Pales, an Illinois citizen, had a stroke on August 1, 2001. John Robert Knudsen had Mr. Pales' power of attorney. At the time of the stroke, and until after Vioxx® was withdrawn from the market, Mr. Pales and Mr. Knudsen had no knowledge that Vioxx® caused cardiovascular injuries and, therefore, could be a cause of Ronald E. Pales' stroke. *See* Affidavit of John Robert Knudsen, attached hereto as **Exhibit A** at ¶ 4. Mr. Knudsen

first learned that Vioxx® caused heart attacks and strokes through news coverage of Vioxx®'s withdrawal from the market. *Id.*

In Illinois, the discovery rule does not apply to cases involving "sudden traumatic events." *Berry v. Searle*, 309 N.E.2d 550 (Ill. 1974); *Golla v. General Motors*, 657 N.E.2d 894 (Ill. 1995); *Clay v. Brother Richard Kuhl*, 696 N.E.2d 1245 (Ill. App. 1998); *Peterson v. Instapak*, 1988 U.S. Dist. LEXIS 1046 (N.D. Ill. 1988); *Sille v. McCann*, 638 N.E.2d 676 (Ill. App. 1994). In a pharmaceutical case, the Illinois Supreme Court has previously held that a stroke is a sudden traumatic injury, and the statute of limitations begins to run at the time of the stroke. *Berry*, 309 N.E.2d at 556. Illinois does, however, toll and extend the statute of limitations when the defendant has fraudulently concealed the cause of action from the plaintiff. 735 Ill. Comp. Stat. 5/13-215 provides a five-year statute of limitation that begins to run only when the plaintiff discovers a cause of action that has been fraudulently concealed.

In this case, Plaintiff Ronald E. Pales suffered a sudden traumatic injury on August 1, 2001. Mr. Pales properly pled that his statute of limitations was tolled under Illinois law by the fraudulent concealment statute. And Mr. Pales timely filed his lawsuit well within five years of discovering that Vioxx® caused cardiovascular injuries, including strokes – a fact that Defendant Merck & Co., Inc. (hereinafter "Merck") had fraudulently concealed from prescribing physicians and the public.

Rather than focusing on the applicable legal standards under Illinois law, the fraudulent concealment tolling statute, Merck's motion for summary judgment relies on the purely legal argument that, as a matter of law, the discovery rule – a rule Illinois courts have repeatedly rejected in sudden-impact injury cases – to state that tolling based upon fraudulent concealment is unavailable

2

to Plaintiff.  Merck's Motion for Summary Judgment does not even purport to establish, as a matter

of law, that Merck did not fraudulently conceal the risks of strokes from Mr. Pales.  Therefore,

Plaintiff is not required to offer evidence of fraudulent concealment.  Because Merck has moved on

the wrong legal standard, this Court should deny Merck's motion as a matter of law.  In the

alternative, this Court should deny Merck's motion and allow a jury to determine whether Mr. Pales'

injury is a "sudden traumatic event" under Illinois law.

## STATEMENT OF FACTS

Plaintiff Ronald E. Pales was first prescribed Vioxx® in August of 1999.  **Exhibit A** at ¶ 3.

And he continued to take Vioxx® until September 24, 2004.  *Id.*  While taking Vioxx®, on

August 1, 2001, Mr. Pales had a stroke.  *Id.* at ¶ 4; *see also* Our Lady of the Resurrection Medical

Center discharge summary, dated August 5, 2001, attached hereto as **Exhibit B**.

John Robert Knudsen was given power of attorney for Mr. Pales before his ingestion of

Vioxx® and subsequent stroke.  **Exhibit A** at ¶ 2.  Mr. Knudsen and Mr. Pales first learned

that Vioxx® could be related to Mr. Pales' cardiovascular injury after Vioxx® was withdrawn

from the market.  *Id.* at ¶ 4.

Mr. Pales filed a lawsuit against Merck for his injuries related to Vioxx® on January 10,

2007.  In his Complaint, Plaintiff alleged that the statute of limitations was tolled from the time of

his stroke until he learned that Vioxx® was related to cardiovascular injuries, including stroke, in

the fall of 2004.  *See* Plaintiff's Original Petition, attached hereto as **Exhibit C** at ¶¶ 100-103;

*see also* **Exhibit A** at ¶ 4.  Plaintiff's Original Petition relies on 735 Ill. Comp. Stat. 5/13-215,

Illinois' fraudulent concealment statute, and alleges specific facts showing that Merck concealed the

3

possible link between Vioxx® and cardiovascular injuries from prescribing doctors and the public. **Exhibit C** at ¶¶ 26-53 and 67-75.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is only appropriate if there is no genuine issue of any material fact. Fed. R. Civ. P. 56(c). Even though limitations is typically a question of law, which may be resolved by summary judgment, "this is only true if there are not genuine issues of material fact in dispute." *In re: Vioxx Product Liability Litigation*, 478 F. Supp. 897, 902 (E.D. LA 2007). Moreover, Merck bears the burden of showing that no such dispute exists. *Id.* And, "[i]n determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor." *Id.*

**ARGUMENT**

In its Motion, Merck admits that Illinois limitations law governs Mr. Pales' action. *See* Merck's Memorandum of Support of Motion for Summary Judgment (hereinafter "Merck's Memo") at 54. Merck, however, applied the wrong rule of Illinois law to Mr. Pales' case. Because Merck based its Motion on an incorrect standard, its subsequent arguments and conclusions are faulty, Merck's Motion should be denied.

**A.    Because Mr. Pales' Stroke Is a Sudden Traumatic Injury Under Illinois Law, the Discovery Rules Does Not Apply to His Case.**

Although Illinois does have a discovery rule for personal injury cases, the Illinois courts have applied the statute of limitations differently in cases where the person's injuries result from a sudden traumatic event. *Peterson v. Instapak*, 1988 U.S.Dist. LEXIS 1046 at *3. The Illinois Supreme

4

Court has repeatedly found that the statute of limitations in a personal injury case involving a sudden traumatic event accrues at the time of the injury. *Id.* (citing *Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864 (1981)); *Berry*, 309 N.E.2d at 558.  The Illinois Supreme Court has also held that a stroke allegedly caused by a pharmaceutical is a sudden traumatic event under Illinois law, and therefore, the statute of limitations begins to run at the time of the stroke. *Berry*, 309 N.E.2d at 550.

In *Berry*, the plaintiff filed a products liability action against the manufacturer of birth control pills alleging that she had suffered a stroke as a result of the unreasonably dangerous drug.  The plaintiff filed her action more than two years after the stroke occurred.  Despite the plaintiff's arguments that her cause of action did not begin to accrue until she knew the birth control pills may have caused the stroke, the *Berry* court found that the cause of action accrued at the time of the injury. *Id.* at 559.

This case is strikingly similar to the *Berry* facts.  Like the *Berry* plaintiff, Mr. Pales suffered a stroke while taking a pharmaceutical drug.  Mr. Pales was taken to the hospital and diagnosed with a stroke on August 1, 2001. *See* **Exhibit B**.  Like the *Berry* plaintiff, Mr. Pales, and his attorney-in-fact Mr. Knudsen, knew that Mr. Pales was ill from a stroke but did not know that his stroke may have been caused by the drug he was taking until years later. *Id.*; *see also* **Exhibit A** at ¶ 4  Like the *Berry* plaintiff, Mr. Pales filed his cause of action against the drug manufacturer more than two years after his injury.  Therefore, under the *Berry* ruling, Mr. Pales' statute of limitations ran – except for application of the fraudulent concealment rule – before he ever learned that Vioxx® may have caused his injury.

5

**B.    The Discovery Rule Does Not Apply to Mr. Pales' Cause of Action Against Merck; Therefore, the Fraudulent Concealment Tolling Statute is Available, and Mr. Pales Filed His Claim Well Before the Deadline Afforded by Merck's Fraudulent Concealment.**

Merck concedes that Illinois allows "a five-year limitations period beginning when a person discovers that he or she has a cause of action if the defendant fraudulently concealed the cause of such action." Merck's Memo at 59 (citing 735 Ill. Comp. Stat. 5/13-215). In its Motion, Merck claims that, as a matter of law, fraudulent concealment tolling is unavailable here because, according to Merck's argument, when Mr. Pales discovered his cause of action, a reasonable time remained within the applicable statute of limitations for Mr. Pales to file his lawsuit. Merck's argument is dependant, however, on the application of the inapplicable discovery rule.

Merck alleges in its Motion that Mr. Pales was "on notice to investigate [his] claims when Vioxx® was withdrawn from the national market on September 30, 2004." Merck's Memo at 58. Merck then goes on to argue that Mr. Pales, because of the discovery rule, then had two full years after the withdrawal to file his claim. *Id.* While Plaintiff does not concede that the withdrawal date is the latest possible date for a reasonable plaintiff to be on notice that Vioxx® potentially caused a cardiovascular injury, Merck has confused the facts actually at issue in this case and is wrong on the law.

Because under Illinois law the discovery rule does not apply to Mr. Pales' injury – a sudden traumatic event, his claim accrued on August 1, 2001 when he was diagnosed with a stroke. As Merck correctly stated in its Motion, the Illinois statute of limitations for personal injury suits bars claims two years "after the cause of action accrued." Merck's Memo at 54 (citing 735 Ill. Comp.

6

Stat. 5/13-202). Therefore, without tolling, Mr Pales' statute of limitations would have run on August 2, 2003.

Because of Merck's fraudulent concealment of the link between cardiovascular events – including stroke – and Vioxx® use, Mr. Pales had no knowledge that Vioxx® may have caused his stroke until he and Mr. Knudsen heard media coverage of the withdrawal in the fall of 2004[1] – more than a year after Mr. Pales' statute of limitations had run on his claim against Merck. **Exhibit A** at ¶ 4. Therefore, Merck's purely legal argument that fraudulent tolling is unavailable to Mr. Pales because he still had time to file his suit when he discovered his potential claim is without merit. Mr. Pales did, however, have five years from the date he discovered his potential claim in the fall of 2004. Therefore, Mr. Pales' lawsuit, filed on January 10, 2007, was timely under Illinois law, and Merck's Motion should be denied.

**C.     Ronald E. Pales Properly Pled With Particularity Merck's Fraudulent Concealment.**

Merck's only other argument that the fraudulent concealment tolling is unavailable to Mr. Pales is that he has not pled fraudulent concealment with particularity. Merck's Memo at 61. Nonetheless, a review of Plaintiff's Original Petition shows otherwise. For example, Mr. Pales' complaint alleges the following facts related to Merck's fraudulent concealment of the cardiovascular risks of Vioxx:

---

[1]Merck does not argue that Plaintiff should have known about his potential claim against Merck before the withdrawal date. In fact, Merck argues that September 30, 2004 is the date Plaintiff should have reasonably been put on notice of his claim. Merck's Memo at 58.

Merck concealed a November 1996 memo from a top Merck official that stated, '[T]here is a substantial chance that significantly higher rates" of cardiovascular problems would result from Vioxx®.

Merck also concealed or ignored a February 1997 email from another Merck official that revealed, "[Y]ou get more thrombotic events' or blood clots unless the Vioxx®-receiving patient also took aspirin." *See* Plaintiff's Original Petition, attached hereto as **Exhibit C** at ¶¶ 22-23.

To remedy the problem arising from the likelihood of increased cardiovascular risk from Vioxx®, Merck's Vice President, Dr. Alise Reicin, proposed that people with cardiovascular problems should be kept out of the studies so that the cardiovascular effects would not be evident. Despite its internal knowledge and information regarding the cardiovascular risks, Merck continued to aggressively promote and market Vioxx® as safe and effective. *Id.* at ¶ 24.

In early 1999, Merck commenced a study to prove Vioxx®'s gastrointestinal safety benefits (the VIGOR study). In March 2000, the results revealed a significant increase in the number of blood-clot related problems among Vioxx® users. The heart attack rate in the Vioxx® group was five times greater than that of the group taking naproxen. *Id.* at ¶ 27. In a March 9, 2000 email, Merck's research chief, Dr. Edward Scolnick, confessed in an email that cardiovascular events are "clearly there" and called it a "shame" that it is mechanism (Vioxx®) based. *See* **Exhibit C** at ¶ 28. Despite the known risks, Dr. Scolnick assured Merck that Vioxx® would "do well" and maintained its position that naproxen had a cardioprotective effect, despite knowledge of the falsity of such claim. In a continuing effort to conceal the risks, in April 2000, Merck issued a press

8

release headlined, "Merck confirms favorable cardiovascular safety profile of Vioxx." *See* **Exhibit C** at ¶ 30.

Despite knowledge of the serious dangers associated with Vioxx® ingestion, Merck continued to deny the ill effects and engaged in an aggressive and expansive advertising and sampling program. *Id.* at ¶ 32. Merck's multi-million dollar advertising campaign created the image and impression that Vioxx® was safe for adults, had fewer side effects and adverse reactions than other pain relief medications and would not interfere with daily life, even though Merck knew those representations to be false. Merck's advertising, along with other promotional literature, audio conferences, professional meetings, and press releases deceived potential consumers (including Plaintiff) by relaying positive information and manipulating statistics and studies to suggest widespread acceptability and safety of the product. *Id.* at ¶ 33.

On August 29, 2001, the Journal of the American Medical Association published a study showing that Merck had concealed the risk of a thrombotic cardiovascular event or myocardial infarctions among Vioxx® users in Merck's trials. *See* Mukherjee, D., et al., Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors, JAMA. 286:8, 954-59, Aug. 22/29, 2001. On February 6, 2002, another study confirmed that Vioxx® use leads to "increased vascular thrombotic events." Bing, R. & Lomnicka, M., Why Do Cyclo-Oxygenase-2 Inhibitors Cause Cardiovascular Events?, JACC. 39:3, Feb. 6, 2002. The release of these studies was followed by a series of publications and peer-reviewed literature by Merck employees and consultants setting forth the blatantly-false theory that naproxen had anti-thrombotic effects. **Exhibit C** at ¶ 41.

9

In September 2001, Merck received a warning letter from the FDA stating that its promotional activities are "false, lacking in fair balance, or otherwise misleading." Merck's promotional campaign minimized potentially serious cardiovascular findings and "misrepresents the safety profile on Vioxx." With respect to Merck's May 22, 2001, press release, the FDA wrote that Merck's claim that "Vioxx has a 'favorable safety profile' is simply incomprehensible. *See* **Exhibit C** at ¶¶ 42-43.

On August 26, 2004, Merck attempted to minimize and downplay adverse findings and authorized a press release entitled, "Merck stands behind the efficacy and overall safety and cardiovascular safety of Vioxx." *See* **Exhibit C** at ¶ 51.

Moreover, Plaintiff specifically pled that because of Merck's fraudulent concealment he was unable to discover his right of action. *Id.* at ¶¶ 100-103 . And as stated in Mr. Knudsen's affidavit, Messrs. Pales and Knudsen did not discover that Mr. Pales's had a potential claim against Merck until after Vioxx® was withdrawn from the market. *See* **Exhibit A** at ¶ 4.

Moreover, even if Mr. Pales' pleading was in some manner deficient, which it is not, the proper remedy would be to allow him to re-plead – not dismissal.

**D.    Merck Has Not Moved that Mr. Pales Was Not Reasonably Diligent Or Cannot Show that Merck Fraudulently Concealed His Cause of Action, and Therefore, Dismissal of Plaintiff's Claims Would Be Without Proper Notice.**

The Fifth Circuit has previously held that Rule 56 requires ten days notice of a summary judgment hearing so the non-moving party, here Mr. Pales, has the opportunity "to place all the evidence supporting its position into the record so that a reviewing court can decide whether the non-movant has demonstrated the existence of a genuine dispute regarding a material fact."

10

*HS Resources, Inc. v. Wingate*, 327 F.3d 432 (5th Cir. 2003). Moreover, any "reasonable doubt" of whether Mr. Pales' received notice must be resolved in his favor. *Id.*

While claiming that Plaintiff should have known of his claim after Vioxx® was withdrawn from the market, Merck has not argued that Mr. Pales' should have known of his potential claim before September 30, 2004. Therefore, Plaintiff's reasonableness in discovering Vioxx®'s potential cause of his stroke at the time of the withdrawal is not at issue under Merck's Motion and should not be considered by this Court.

Moreover, Plaintiff believes there is overwhelming evidence supporting a claim of fraudulent concealment against Merck in his case.[2]    Nonetheless, that evidence is not at issue here because the Defendant has *not* claimed in its Motion that it has established, as a matter of law, that Merck did not fraudulently conceal Mr. Pales' claim for his Vioxx®-related injury.  Without proper notice of an additional motion by Merck, this Court cannot dismiss Mr. Pales' fraudulent concealment claim for lack of supporting evidence.

**E.    Because Mr. Pales' Claims Were Timely Filed Under Illinois Law, He Is Not Relying on *American Pipe* Tolling of His Cause of Action.**

Mr. Pales does not rely on *American Pipe & Constr. Co. v. Utah* to toll his statute of limitations.  414 U.S. 538 (1974).  Therefore, Merck's briefing on this issue is irrelevant to this case.  While Plaintiff does not concede that *American Pipe* is unavailable to toll Mr. Pales' statute

---

[2]Given the previous jury verdicts against Merck in Vioxx®-related cases and this Court's previous experience with the evidence of Merck's conduct, Plaintiffs believe this Court could even take judicial notice that there is more than a scintilla of evidence that Merck fraudulent concealed Vioxx®'s propensity to cause cardiovascular injuries. *See* Order Denying Defendant's Motion for New Trial, Judgment Notwithstanding the Verdict; Granting, in Part, Plaintiffs' Motion for Fees and Costs and Entering Judgment on the Verdict in*Cona v. Merck & Co., Inc.* (Superior Court of New Jersey, Docket No. ATL-L-3553-05MT), attached hereto as**Exhibit D**.

11

of limitation, his claims were timely brought under the appropriate Illinois law, and therefore, an examination of the application of *American Pipe* in this case is unnecessary.

## CONCLUSION

Merck's Motion applies the wrong rule of law to Mr. Pales' cause of action for sudden injury. Because his stroke was a sudden traumatic injury under Illinois law, the discovery rule does not toll his claim and the statute of limitation began to run at the time of his stroke. Therefore, Illinois' fraudulent concealment claim is available, and being properly pled, tolled Mr. Pales' cause of action until the fall of 2009. As such, Mr. Pales' complaint filed on January 10, 2007 was timely, and Merck's Motion for Summary Judgment should be denied.

Respectfully submitted,

/s/ Grant Kaiser
Grant Kaiser
Texas Bar No. 11078900
**The Kaiser Firm LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 223-0000; fax (713) 223-0440

Drew Ranier
Lousiana Bar No. 8320
**Ranier, Gayle & Elliott LLC**
1419 Ryan Street
Lake Charles, Louisiana 70601
(337) 494-7171; fax (337) 494-7218

Walter Umphrey
Texas Bar No. 20380000
**Provost Umphrey Law Firm LLP**
490 Park Street
Beaumont, Texas 77701
(409) 835-6000; fax (409) 838-8888

Mikal Watts
Texas Bar No. 20981820
**The Watts Law Firm LLP**
555 North Carancahua Street
Corpus Christi, Texas 78478
(361) 887-0500; fax (361) 887-0055

James L. "Larry" Wright
Texas Bar No. 22038500
**The Watts Law Firm LLP**
111 Congress Avenue, Suite 1010
Austin, Texas 78701
(512) 479-0500; fax (512) 473-0328

John T. Boundas
Texas Bar No. 00793367
**Williams Kherkher Hart Boundas LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-2200; fax (713) 643-6226

***Attorneys for Plaintiff Ronald E. Pales***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail, email and/or hand delivery and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 7th day of November, 2007.

/s/ Grant Kaiser
Grant Kaiser
**The Kaiser Firm LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-0000; fax (713) 230-0440
gkaiser@thekaiserfirm.com

cc:     by email only:

Robert Van Kirk             rvankirk@wc.com
**Williams & Connolly LLP**
725 Twelfth Street Northwest
Washington, D.C.  20005
(202) 434-5000; fax (202) 434-5029

Carrie A. Jablonski             carrie.jablonski@bartlit-beck.com
**Bartlit, Beck, Herman, Palenchar & Scott LLP**
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610
(312) 494-4400; fax (312) 494-4440