## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | **MDL NO. 1657** |
| **IN RE: VIOXX** | : |  |
| **PRODUCTS LIABILITY LITIGATION** | : | **SECTION:  L** |
|  | : |  |
|  | : | **JUDGE FALLON** |
|  | : |  |
|  | : | **MAG. JUDGE KNOWLES** |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO:**

> *DeVito, et al. v. Merck & Co., Inc.*, No. 07-562
>> (regarding only James Barrall, Carol Ciabattoni, and Alonzo Dusi)
>
> *Alvarado, et al. v. Merck & Co., Inc.*, No. 06-7150
>> (regarding only Milagros Medina-Alfanador)
>
> *Pales v. Merck & Co., Inc.*, No. 07-1389

## ORDER & REASONS

Before the Court is Merck & Co., Inc.'s second Motion for Summary Judgment (Rec.

Doc. 12725) on statutes of limitations grounds.  As it now stands, the instant motion addresses

the claims of three plaintiffs from Pennsylvania, one plaintiff from Puerto Rico, and one plaintiff

from Illinois, all of which are part of this MDL in the three above-captioned cases.[1]  On March

---

[1]  Merck's motion originally addressed the claims of three additional plaintiffs from Illinois in the following cases:  *Durbin v. Merck & Co., Inc.*, No. 06-11302; *McKeal v. Merck & Co., Inc.*, No. 07-380; and *Ridinger v. Merck & Co., Inc.*, No. 07-381.  However, the Court has been informed that Merck has withdrawn its motion with respect to these cases.  *See* Rec. Doc. 12922.  Accordingly, IT IS ORDERED that Merck's motion is DENIED AS MOOT IN PART with respect to these three plaintiffs.

22, 2007, the Court denied a similar motion involving three individual plaintiffs from Alabama, Tennessee, and Kentucky.  *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897 (E.D. La. 2007).  In that decision, the Court found that factual disputes precluded a summary determination of when the applicable statutes of limitations began to run, and therefore the Court did not reach the issue of whether the relevant limitations periods had been tolled, either by the pendency of class actions or otherwise.  *Id.* at 908-10.  At that time, the Court was concerned that eventually it could "conceivably be faced with the task of applying each state's statute[s] of limitations in this multidistrict litigation," *id.* at 902, a daunting task and one not to be undertaken until the litigation had matured.

This litigation has now matured to a point at which it is appropriate to consider these issues in greater detail.  It is now clear that the factual disputes identified by the plaintiffs regarding when they knew or could have been put on notice of potential claims against Merck are baseless disputes.  First, the highly publicized withdrawal of Vioxx from the market on September 30, 2004 and the immediate media blitz that followed linking Vioxx use to increased cardiovascular risks gave ample notice to potential claimants and triggered the applicable statutes of limitations in these cases.  Second, the plaintiffs' claims in the above-captioned cases, most of which were filed beyond the applicable limitations periods, are not saved by any state-

---

At the outset, it should also be noted that the Court initially allowed multiple unrelated claimants to join their claims together in the same complaint in this MDL for administrative purposes.  But on September 5, 2007, the Court issued Pretrial Order No. 26, which prohibits this practice moving forward in light of administrative difficulties that have surfaced and the potential for abuse it has created.  *See* Rec. Doc. 12181; *see also In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269 (D. Minn. July 5, 2002) (disapproving of the practice of "bundling" unrelated claimants in one complaint).  Thus, other than the specific individuals identified in the caption above, the remaining plaintiffs in the *Alvarado* and *DeVito* cases are not subject to Merck's instant motion.

law tolling doctrines. Thus, the bulk of these claims are time-barred. Accordingly, Merck's motion will now be GRANTED IN PART and DENIED IN PART such that the claims of the identified plaintiffs will be DISMISSED WITH PREJUDICE in their entirety, except for the Illinois plaintiff's common-law fraud claim, which appears to be timely on its face.

## I.    BACKGROUND

This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed, and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration ("FDA") approved Vioxx for sale in the United States.[2]

Vioxx was subjected to a number of studies and tests both before and after its initial approval. In March 2000, Merck received the preliminary results of the Vioxx GI Outcomes Research ("VIGOR") study. VIGOR was an 8,000-patient trial designed to assess the relative incidence of gastrointestinal perforations, ulcers, and bleeds ("PUBs") in rheumatoid arthritis patients treated with Vioxx as compared to those treated with the drug naproxen. While VIGOR demonstrated that patients taking Vioxx suffered fewer serious gastrointestinal PUBs than patients taking naproxen, it also showed that patients on Vioxx suffered a statistically significant increase of serious cardiovascular thrombotic events compared to patients taking naproxen.[3] In

---

[2] For a more detailed medical background, see *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 776, 778-79 (E.D. La. 2007) (denying Merck's motion for summary judgment on federal preemption grounds).

[3] The VIGOR data was published in the New England Journal of Medicine in 2000. *See* Claire Bombardier, et al., *Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis*, 343 New Eng. J. Med. 1520 (Nov. 23, 2000).

light of the new data obtained in the VIGOR study, Merck submitted a proposed label change for Vioxx to the FDA in June 2000.  The FDA eventually approved a revised Vioxx label on April 11, 2002.

Following the public release of the VIGOR data, the media began reporting as early as 2000 that the use of Vioxx might be linked to increased cardiovascular risks.[4]  Indeed, the first Vioxx-related class action was filed in 2001 shortly after the announcement of the VIGOR results.  *See Lettieri, et al. v. Merck & Co., Inc., et al.*, CV 01-3441 (E.D.N.Y. filed May 23, 2001).  Widespread press coverage continued following FDA approval of a revised Vioxx label in 2002.[5]

On September 23, 2004, an external safety board monitoring the results of a separate long-term study, known as APPROVe, informed Merck that the interim data from this study showed a significantly increased rate of cardiovascular events in the Vioxx arm as compared to the placebo arm of the study.  One week later, on September 30, 2004, Merck voluntarily withdrew Vioxx from the market.  In conjunction with the withdrawal, Merck's then-CEO Raymond Gilmartin issued a public letter to patients informing them of the risks exposed by the APPROVe study and one of Merck's Vice Presidents sent a similar letter to doctors and pharmacies nationwide.  *See* Def.'s Mot. for Summ. J. Ex. 11 & 12.

---

[4]  *See, e.g.*, Edward R. Silverman, *Merck Shares Fall on Vioxx Study, Painkiller Linked to Cardiovascular Problems*, Star-Ledger (Newark, N.J.), Apr. 29, 2000, at 17; Rita Rubin, *Vioxx Might Raise Heart Risk*, USA Today, Feb. 9, 2001, at 5B; Joe Graedon & Teresa Graedon, *Vioxx May Increase Risk of Stroke*, Star-Ledger (Newark, N.J.), Nov. 6, 2001, at 43.

[5]  *See, e.g.*, *Company News; Merck to Revise Label Information for Vioxx*, N.Y. Times, Apr. 12, 2002, at C2; Gardiner Harris, *Label Change for Merck's Vioxx Adds Ulcer Protection, Heart Risk*, Wall St. J., Apr. 12, 2002, at A17.

The withdrawal of Vioxx from the market was arguably the largest and most-publicized prescription drug withdrawal in this country's history.  It is estimated that 105 million prescriptions were written for Vioxx in the United States between May 20, 1999 and September 30, 2004.  Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States.  The announcement that this widely popular drug was being withdrawn from the market was met with an immediate avalanche of media coverage.  On the morning of September 30, 2004, the national television network morning shows reported extensively on the withdrawal of Vioxx, including NBC's *The Today Show*, ABC's *Good Morning America*, CBS's *Early Show*, and CNN's *American Morning*.  National coverage continued throughout the day with reports on National Public Radio and the networks' evening news broadcasts.  The next day, October 1, 2004, saw more television coverage of the withdrawal and an onslaught of front-page stories in newspapers across the country.[6]  This avalanche of media coverage penetrated into local markets as well, with local television stations and newspapers across the country running similar reports, including in Pennsylvania, Puerto Rico, and Illinois.[7]

---

[6]  *See, e.g.*, Thomas H. Maugh II & Denise Gellene, *Arthritis Drug Vioxx Pulled:  Risk of Heart Attacks is Cited*, L.A. Times, Oct. 1, 2004, at A1; Rita Rubin, *Merck Halts Vioxx Sales*, USA Today, Oct. 1, 2004, at A1; Gina Kolata, *A Widely Used Arthritis Drug is Withdrawn*, N.Y. Times, Oct. 1, 2004, at A1; Mark Kaufman, *Merck Withdraws Arthritis Medication – Vioxx Maker Cites Users' Health Risks*, Wash. Post, Oct. 1, 2004, at A01.

[7]  *See, e.g.*, Linda Lloyd, *Merck Pulls Vioxx*, Philadelphia Inquirer, Oct. 1, 2004, at Al; Cindy Stauffer, *Arthritis Drug Yanked; Doctors Urge Calm*, The Lancaster New Era, Oct. 1, 2004, at A1; Bruce Jaspen, *Merck Withdraws Arthritis Drug: Vioxx Increased Danger to Heart*, Chicago Tribune, Oct. 1, 2004; Edith Brady-Lunny, *Doctors Taking Calls on Vioxx*, The Pantagraph (Bloomington, IL), Oct. 1, 2004, at A1; Maria Vera, *Fabricante retira la popular 'Vioxx'*, El Vocero de Puerto Rico, Oct. 1, 2004.

## II.    PRESENT MOTION

On October 22, 2007, Merck filed the instant motion for summary judgment on statutes of limitations grounds in several individual cases.  A brief summary of the facts of each case that remains subject to the motion follows:

- **Pennsylvania:**  James Barrall, Carol Ciabattoni, and Alonzo Dusi reside in Pennsylvania.  James Barrall began using Vioxx in November 2002 and allegedly suffered a stroke in May 2003.  It is not clear from the record when Carol Ciabattoni began using Vioxx, but she allegedly suffered a heart attack in October 2003.  Alonzo Dusi alleges that his wife Catherine Dusi began using Vioxx in November 2002 and that she suffered a heart attack and died on February 7, 2003.  These three plaintiffs' claims were filed on February 1, 2007 in this Court as part of *DeVito, et al. v. Merck & Co., Inc.*, No. 07-562.

- **Puerto Rico:**  Milagros Medina-Alfanador resides in Puerto Rico and began using Vioxx in December 2000.  She allegedly experienced strong pain and throbbing in her heart in 2001.  Her claims were filed on October 2, 2006 in this Court as part of *Alvarado, et al. v. Merck & Co., Inc.*, No. 06-7150.

- **Illinois:**  Ronald Pales resides in Illinois.  He began using Vioxx in August 1999 and allegedly suffered an ischemic stroke on August 1, 2001.  His case was filed on January 10, 2007 in Illinois state court and was subsequently removed and transferred into this MDL and assigned the following case number in this District:

*Pales v. Merck & Co., Inc.*, No. 07-1389.[8]

Merck argues that the bulk of these plaintiffs' claims are time-barred pursuant to any conceivably applicable statutes of limitations and, therefore, that it is entitled to summary judgment. More specifically, Merck contends that at the very latest, the various limitations periods began to run on September 30, 2004 when Vioxx was withdrawn from the market, and that the plaintiffs are not entitled to any form of tolling beyond this date under the relevant state laws. Merck also argues that, although timely, the remainder of the plaintiffs' claims fail as a matter of law for various reasons.

Re-urging the arguments it made in opposition to Merck's first statutes of limitations motion, the Plaintiffs' Steering Committee argues that the plaintiffs' claims are timely based on a combination of the discovery rule and the fraudulent concealment doctrine (both of which may delay the running of limitations periods) and tolling of the applicable limitations periods under the doctrine announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). *See* Rec. Docs. 12846 & 9548. Additionally, the Court has also received timely case-specific oppositions from all five individual plaintiffs that remain subject to Merck's motion. *See* Rec. Docs. 12911, 12890, and 12938. The Court will address the plaintiffs' various case-specific arguments below during its discussions of the relevant state laws.

## III.    LAW & ANALYSIS

Summary judgment is appropriate if "there is no genuine issue as to any material fact and

---

[8] This summary of the usage and injury information for each of the plaintiffs is based on both allegations in their complaints and answers they provided on the Plaintiff Profile Form, as required by Pretrial Order No. 18C. The complaints and profile forms for these plaintiffs are attached to Merck's instant motion as exhibits 79, 80, 83, 84, 85, 86, 87, and 88.

. . . the defendant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). While "[t]he issue of whether a suit is time-barred is a question of law, which properly may be resolved at the summary judgment stage," this is only true "if there are no *genuine* issues of material fact in dispute." *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 835 (8th Cir. 2003) (emphasis added). "The moving party bears the burden of demonstrating that there exists no genuine issue of material fact." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 475 F. Supp. 2d 286, 291 (S.D.N.Y. 2006). "In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all *justifiable* inferences in that party's favor." *Id.* (emphasis added).

The United States Supreme Court has instructed that state statutes of limitations are "matters of local law properly to be respected by federal courts sitting" in diversity. *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945). Indeed, statutes of limitations "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944)).

The analytical framework for addressing the instant motion is essentially identical to that set forth in the Court's previous statutes of limitations decision in this MDL. *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 902 (E.D. La. 2007). As stated in that opinion, the Court must first determine which state's choice-of-law rules to apply in these cases. Then,

pursuant to those rules, it must choose the applicable statutes of limitations.[9]  Lastly, the Court must determine when each limitations period began to run and whether or not the applicable statutes of limitations have been tolled, either by the pendency of class actions or otherwise. Merck will be entitled to summary judgment only if the Court can determine that the applicable limitations periods expired prior to the filing of the plaintiffs' respective claims.

But the actual analysis is somewhat more complicated here because the instant motion involves both cases filed directly in this Court pursuant to Pretrial Order No. 11 (the Pennsylvania and Puerto Rico plaintiffs) and a case filed elsewhere and subsequently transferred

---

[9]  Choosing the applicable limitations periods involves two steps.  First, the Court must select which state's body of law is applicable in each case.  Then, the Court must select the appropriate limitations periods within that body of law for each of the plaintiff's claims.  In carrying out the later step, the Court is mindful that the states approach this issue in different ways:

> Most product liability suits are pleaded in more than one count.  Breach of warranty (implied, or express, or both), negligence, strict liability in tort, and perhaps fraud or deceit are possible bases for the suit. . . .  The elements of each cause of action are different, as are the seller's possible defenses, and there is no uniformity as to the length of the limitation periods that apply.  A negligence claim, for example, will be governed by the tort statute of limitations, or perhaps the personal-injury statute.  A cause of action in strict liability will also probably be controlled by the tort or personal-injury statute of limitations.  On the other hand, a claim for breach of warranty might be governed by the [Uniform Commercial Code's] statute of limitations, or by the personal-injury or tort statute, depending on whether personal injury or privity is alleged.  Fraud or deceit is usually controlled by a specific statute of limitations, but if personal injury is alleged, then the personal-injury statute might be used.

Chris Williams, *The Statute of Limitations, Prospective Warranties, and Problems of Interpretation in Article Two of the UCC*, 52 Geo. Wash. L. Rev. 67, 108 (1983) (footnotes omitted); *see also Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456, 459-60 & nn.5-9 (Tex. 1980) (addressing the various approaches taken with respect to breach of warranty claims in personal injury actions).

into this MDL pursuant to 28 U.S.C. § 1407 (the Illinois plaintiff).[10]  Accordingly, the Court will address each category of cases separately.  Prior to doing so, however, it is appropriate to say a few more words about class action tolling and the *American Pipe* doctrine.

### A.    *American Pipe* Tolling

The class action tolling doctrine announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and its non-applicability in cases founded upon diversity jurisdiction, was previously discussed in this Court's prior statutes of limitations decision.  *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 906-08 (E.D. La. 2007).  There, the Court recognized that *American Pipe* and its progeny do not apply by their own force in diversity cases.  Nevertheless, various states have adopted the rationale of *American Pipe* and allow limited tolling of their statutes of limitations in certain circumstances by virtue of the prior filing of a class action.

Merck attacks this concept by arguing that any rationale for tolling based on *American Pipe* should not be applied in this MDL "because it is unreasonable for plaintiffs to rely on the potential certification of a class of persons allegedly injured by a pharmaceutical drug, since such classes are rarely certified."  *Id.* at 907 n.3.  This may be true, but such a broad argument ignores the nuances and differences which exist among various state laws.  The better approach

---

[10]  Pretrial Order No. 11 allows plaintiffs who do not reside in this District to nevertheless file their claims directly into the MDL, thereby avoiding the expense and delay associated with filing in local federal courts around the country and waiting for the Panel to transfer these "tag-a-long" actions to this District.  However, Pretrial Order No. 11 is merely a procedural vehicle constructed to reduce costs and promote efficiency; it was not intended to alter the substantive legal landscape.  Moreover, Pretrial Order No. 11 provides that cases filed directly into the MDL will be transferred to courts of proper venue pursuant to 28 U.S.C. § 1404(a) upon the completion of all pretrial proceedings.  *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903-04 (E.D. La. 2007) (discussing the use of direct filing in this MDL).

is to consider class action tolling issues in the context of the law of the particular states at issue. In applying state-law tolling doctrines, however, the Court will not presumptuously affect a "substantive innovation" on behalf of the states by expanding upon their limited class action tolling holdings.  *See Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. 1980).  Indeed, the Court will be extra-cautious in this regard given the underlying principles of *American Pipe* and the Court's experience with tolling in this MDL.[11]  With this observation in mind, the Court will now turn to an analysis of the applicable state laws.

### B.     Pennsylvania & Puerto Rico Plaintiffs

The Pennsylvania and Puerto Rico plaintiffs identified in the instant motion filed their claims directly in this Court pursuant to Pretrial Order No. 11.  The Court previously discussed the use of direct filing in this MDL and has concluded that Louisiana's choice-of-law rules must be applied in such cases, unless, of course, the parties stipulate otherwise.  *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903-04 (E.D. La. 2007).  Louisiana's choice-of-law rules for selecting the applicable limitations period in a particular case are set forth in Article 3549 of the

---

[11]  In this MDL, the Court has sought to achieve the efficiencies celebrated by *American Pipe* through the use of "tolling agreements," whereby individual plaintiffs who allege cardiovascular injuries have been allowed to preserve their rights without filing suit, provided that they execute tolling agreements with Merck and submit certain information about their injuries and use of Vioxx. *See* Rec. Doc. 429.  This practice recognizes that *American Pipe*'s underlying concern for judicial economy is frustrated when individual plaintiffs file lawsuits despite the fact that they may be putative members of pending class actions.  Several courts have relied on this fact alone to find that plaintiffs who file individual suits forfeit any tolling benefits under *American Pipe*.  *See In re Hanford Nuclear Reservation Litig.*, 497 F.3d 1005, 1025-27 (9th Cir. 2007); *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 566-69 (6th Cir. 2005); *see also In re Enron Corp. Sec., Derivative, & "ERISA" Litig.*, 465 F. Supp. 2d 687, 715-16 (S.D. Tex. 2006) (collecting cases).  To date, approximately 14,000 individual plaintiffs have entered into tolling agreements with Merck in this MDL, thus preserving their claims without filing suit.

*Louisiana Civil Code*, which provides:

A.    When the substantive law of this state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies.

B.    When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified below:

(1)    If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.

(2)    If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.

C.    Notwithstanding the foregoing provisions, if the substantive law of another state would be applicable to the merits of an action brought in this state and the action is brought by or on behalf of any person who, at the time the cause of action arose, neither resided in nor was domiciled in this state, the action shall be barred if it is barred by a statute of limitation or repose or by a law of prescription or peremption of the other state, and that statute or law is, under the laws of the other state, deemed to be substantive, rather than procedural, or deemed to bar or extinguish the right that is sought to be enforced in the action and not merely the remedy.

La. Civ. Code Ann. art. 3549.

Because the Court has previously concluded on numerous occasions that the substantive law of the plaintiffs' home states will govern their respective claims against Merck, subsection (A) of Article 3549 is inapplicable.  *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 905-06 (E.D. La. 2007).  Although the substantive law of Pennsylvania and Puerto Rico will apply to the merits of the plaintiffs' claims, the Court is uniquely aware that Louisiana's

-12-

prescription law may nevertheless apply pursuant to subsection (B) of Article 3549, provided certain prerequisites are met.  *See Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 490-93 (5th Cir. 2001).  To apply subsection (B), however, the Court must first determine whether the plaintiffs' claims are barred under the laws of their home states.  Accordingly, the Court will examine the following details of Pennsylvania and Puerto Rico law:  the length of the limitations periods for each of the plaintiffs' claims; when the limitations periods began to run, giving effect to various versions of the discovery rule and fraudulent concealment doctrine; and whether any of the limitations periods were tolled, either by the pendency of class actions or otherwise.  This analysis reveals that the claims of the Pennsylvania and Puerto Rico plaintiffs are untimely, or otherwise meritless, under the laws of their home states.

### 1.     *Pennsylvania Law*

The three Pennsylvania plaintiffs filed their claims as part of the *DeVito* case on February 1, 2007.  Specifically, James Barrall, Carol Ciabattoni, and Alonzo Dusi each assert identical claims for strict products liability–defective design (Count I), strict products liability–failure to warn (Count II), negligent design (Count III), negligence–failure to warn (Count IV), negligent misrepresentation (Count V), fraudulent omission–concealment (Count VI), breach of implied warranty (Count VII), and breach of express warranty (Count VIII).  As noted above, Barrall and Ciabattoni assert personal injury claims, while Dusi asserts a wrongful death claim.

Pennsylvania observes a two-year limitations period for personal injury and wrongful death claims in products liability cases.  *See* 42 Pa. Cons. Stat. Ann. § 5524(2).  Generally, this statute of limitations begins to run "when the injury is inflicted."  *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005).  But in personal injury cases, Pennsylvania has adopted a discovery rule that

tolls the statute of limitations "until such time as the plaintiff discovers, or reasonably should have discovered" his or her injury.  *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983).  "The polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff."  *Ingenito v. AC & S, Inc.*, 633 A.2d 1172, 1175 (Pa. Super. Ct. 1993).  It should be noted that Pennsylvania's discovery rule does not apply in wrongful death cases; thus, the statute of limitations begins to run in such cases from the date of death.  *See Pastierik v. Duquesne Light Co.*, 526 A.2d 323 (Pa. 1987).  Lastly, the statute of limitations may also be tolled under Pennsylvania's fraudulent concealment doctrine when a defendant fraudulently conceals facts necessary for a plaintiff to make out a claim.  "[T]he standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, also should apply when tolling takes place under the doctrine of fraudulent concealment."  *Fine*, 870 A.2d at 861.

Applying these principles to the plaintiffs' strict liability and negligence claims in Counts I, II, III, and IV, and drawing all justifiable inferences in their favor, the Court finds that, at the very latest, Pennsylvania's two-year statute of limitations began to run on September 30, 2004. Both the national and local media coverage of the withdrawal of Vioxx from the market were sufficient to put the plaintiffs on notice of a potential link between their alleged injuries and the use of Vioxx.  *See, e.g., Martin v. Dalkon Shield Claimants Trust*, No. 93-2652, 1994 WL 649248, at *4 (E.D. Pa. Nov. 16, 1994) (noting that "published news accounts, articles in medical journals and reports by the [FDA]" contributed to the triggering of Pennsylvania's limitations period).  By waiting until February 1, 2007 to file suit, more than two years after the

withdrawal of Vioxx from the market, the plaintiffs cannot be said to have "pursued the cause of [their] injur[ies] with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Cochran v. GAF Corp.*, 666 A.2d 245, 250 (Pa. 1995) (internal quotation omitted). Accordingly, the plaintiffs' strict liability and negligence claims in Counts I, II, III, and IV are time-barred under Pennsylvania law.

The plaintiffs' misrepresentation and omission claims in Counts V and VI are also subject to Pennsylvania's two-year statute of limitations, *see* 42 Pa. Cons. Stat. Ann. § 5524(7), and are therefore time-barred for the reasons expressed above.

The plaintiffs' warranty claims in Counts VII and VIII are subject to a four-year statute of limitations under Pennsylvania law.  *See* 13 Pa. Cons. Stat. Ann. § 2725(a).  In their case-specific opposition, the plaintiffs argue that this limitations period began to run from the dates of their respective injuries.  However, Pennsylvania law provides otherwise:  "In the ordinary case, a breach of warranty action accrues on, and suit must be filed within four years of, the date the seller tenders delivery of the goods, even if the breach is not apparent until after delivery has been tendered." *Nationwide Ins. Co. v. Gen. Motors Corp.*, 625 A.2d 1172, 1174 (Pa. 1993). Because Barrall and Dusi initially purchased Vioxx in November 2002, their warranty claims became stale in November 2006, approximately three months before they filed suit. Accordingly, their warranty claims in Counts VII and VIII are time-barred under Pennsylvania law.  As noted above, it is not clear from the record when Ciabattoni initially purchased Vioxx, and thus the Court cannot determine whether her warranty claims are timely under Pennsylvania law.  This is of no moment, however, because the three Pennsylvania plaintiffs' warranty claims

fail for independent reasons.  First, "breach of implied warranty claims [against manufacturers of] prescription drugs are precluded under Pennsylvania law."  *Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 741, 752-53 (W.D. Pa. 2004); *see also Bearden v. Wyeth*, 482 F. Supp. 2d 614, 618 n.5 (E.D. Pa. 2006).  Second, the various representations allegedly relied upon by the plaintiffs have been found insufficient under Pennsylvania law to create express warranties in prescription drug cases.  *See, e.g., Sowers v. Johnson & Johnson Med., Inc.*, 867 F. Supp. 306, 313-14 (E.D. Pa. 1994); *Kenepp v. Am. Edwards Labs.*, 859 F. Supp. 809, 817-18 (E.D. Pa. 1994). Accordingly, for these additional reasons, all three plaintiffs' warranty claims in Counts VII and VIII fail under Pennsylvania law.

Lastly, the Court finds that the plaintiffs' claims are not saved by *American Pipe* tolling under Pennsylvania law.  Although Pennsylvania does recognize class action tolling, "the filing of a class action in another state does not toll the statute of limitations as to a subsequent action filed in Pennsylvania's state court system."  *Ravitch v. PriceWaterhouse*, 793 A.2d 939, 945 (Pa. Super. Ct. 2002), *appeal denied*, 818 A.2d 505 (Pa. 2003).  In their case-specific opposition, the plaintiffs argue that a Vioxx class action filed in Pennsylvania federal court operates to toll the statutes of limitations in their cases.  Absent clear guidance, however, the Court will not expand Pennsylvania's class action tolling doctrine.  *See, e.g., Wade v. Danek Med., Inc.*, 182 F.3d 281, 286-88 (4th Cir. 1999) ("[W]e reject appellants' argument that the Virginia Supreme Court would adopt a cross-jurisdictional equitable tolling rule.").  Because there have been no Vioxx personal injury class actions filed in the Pennsylvania state courts, the plaintiffs cannot rely on Pennsylvania's limited class action tolling doctrine.

### 2. *Puerto Rico Law*

The Puerto Rico plaintiff filed her claims as part of the *Alvarado* case on October 2, 2006.  Specifically, Milagros Medina-Alfanador asserts claims for strict products liability–defective design and failure to warn (Count I), negligence and/or wantonness (Count II), violations of the New Jersey Consumer Protection Act (Count III), breach of express warranty (Count IV), breach of implied warranty (Count V), fraudulent misrepresentation (Count VI), and fraudulent omission–suppression (Count VII).

"Ever since the days of the Spanish-American war it has been the law of Puerto Rico that the limitations period for tort actions, or obligations arising from fault or negligence, is the one year limitations period provided by Article 1868(2) of the Civil Code, P.R. Laws Ann. tit. 31, § 5298(2)."  *Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 42 (1st Cir. 1990) (internal quotation omitted).  Puerto Rico has adopted a discovery rule that tolls the statute of limitations until an injury and its cause are known.  But "[a]ctual knowledge is not necessary to activate the statute of limitations where, by due diligence, such knowledge would likely have been acquired." *Estate of Ayala v. Philip Morris, Inc.*, 263 F. Supp. 2d 311, 316 (D.P.R. 2003) (internal quotation omitted).  Pursuant to Puerto Rico's fraudulent concealment doctrine, "[a]n exception to this 'due diligence' standard applies when a plaintiff's suspicions are assuaged by the person who caused the injury."  *Id.* at 317.  But tolling under this concealment exception "may be halted by further information that renders plaintiff's reliance on those assurances no longer reasonable." *Id.* (quoting *Espada v. Lugo*, 312 F.3d 1, 4 (1st Cir. 2002)).

Applying these principles to the plaintiff's strict liability and negligence claims in Counts I and II, and drawing all justifiable inferences in her favor, the Court finds that, at the very latest,

Puerto Rico's one-year statute of limitations began to run on September 30, 2004.  Both the

national and local media coverage of the withdrawal of Vioxx from the market were sufficient to

put the plaintiff on notice of a potential link between her alleged injuries and the use of Vioxx.

*See, e.g., Quintana Lopez v. Liggett Group, Inc.*, 336 F. Supp. 2d 153, 158-59 (D.P.R. 2004)

(noting that periodic news coverage of tobacco litigation settlements contributed to the triggering

of Puerto Rico's limitations period).  By waiting until October 2, 2006 to file suit, more than two

years after the withdrawal of Vioxx from the market, the plaintiff cannot be said to have acted

diligently.  In her case-specific opposition, the plaintiff argues that she did not acquire actual

knowledge of the fact that Vioxx may have caused her injuries until August 2006, after certain

data regarding short-term Vioxx use was publicly released.  However, this argument was

recently rejected in the coordinated Vioxx proceedings in New Jersey state court:

> There was, from before the drug was taken off the market, a debate about long-term versus short-term use of the drug.  From before the withdrawal dates, plaintiffs argued that even short term use could cause heart attacks and even today Merck argues that short term use doesn't result in heart attacks, despite the various studies and publications that have been published in the medical journals over the last few years. . . .  It is clear from the overwhelming weight of authority that plaintiff's attempts to parse the claims against defendant into short-term user and long-term user discovery dates is not appropriate.  Plaintiff was aware of Vioxx as the potential cause of her heart attack following Vioxx's withdrawal from the market.

*Oldfield v. Merck & Co., Inc.*, No. ATL-L-2-07, slip op. at 4-5 (N.J. Sup. Ct. Oct. 15, 2007).

This Court agrees.  Indeed, "due diligence does not mean waiting for answers to fall from the

sky, but rather requires reasonable, active efforts to seek answers and clarify doubts."  *Estate of*

*Ayala*, 263 F. Supp. 2d at 317.  Accordingly, the plaintiff's strict liability and negligence claims

in Counts I and II are time-barred under Puerto Rico law.

The plaintiff's claim in Count III under the New Jersey Consumer Protection Act fails

because the Court has concluded on many occasions in this MDL that the claims of individual

plaintiffs will be governed by the substantive law of their home states.  Moreover, Puerto Rico

law does not provide for a private right of action for consumer fraud.  *See Simonet v. SmithKline*

*Beecham Corp.*, 506 F. Supp. 2d 77, 90-91 (D.P.R. 2007).

The plaintiff's warranty claims in Counts IV and V are subject to either six-month or

one-year statutes of limitations under Puerto Rico law, depending on how they are characterized.

*See Ramos Santiago v. Wellcraft Marine Corp.*, 93 F. Supp. 2d 112, 116 (D.P.R. 2000).  The

plaintiff's misrepresentation and omission claims in Counts VI and VII are subject to a one-year

statute of limitations under Puerto Rico law.  *See Ocaso, S.A., Compañia de Seguros Y*

*Reaseguros v. Puerto Rico Maritime Shipping Auth.*, 915 F. Supp. 1244, 1261-62 (D.P.R. 1996).

Therefore, the plaintiff's warranty, misrepresentation, and omission claims in Counts IV, V, VI,

and VII are also time-barred for the reasons expressed above.

Lastly, the Court finds that the plaintiff's claims are not saved by *American Pipe* tolling

under Puerto Rico law.  Although Puerto Rico does recognize class action tolling, *see Rivera*

*Castillo v. Municipio de San Juan*, 130 P.R. Dec. 683, 1992 WL 755604 (P.R. June 9, 1992),

Puerto Rico has not explicitly adopted cross-jurisdictional tolling.  Absent clear guidance, the

Court will not expand Puerto Rico's class action tolling doctrine.  *See, e.g., Wade v. Danek Med.,*

*Inc.*, 182 F.3d 281, 286-88 (4th Cir. 1999) ("[W]e reject appellants' argument that the Virginia

Supreme Court would adopt a cross-jurisdictional equitable tolling rule.").  Because there have

been no Vioxx class actions filed in the Puerto Rico courts, the plaintiff cannot rely on Puerto

Rico's limited class action tolling doctrine.

### 3.       *Application of Louisiana Civil Code Article 3549(B)*

In a previous discussion of Article 3549 in this MDL, the Court ruled out the possibility

that subsection (B) may save claims that are untimely under the law of the plaintiffs' home

states:

> Without discussing whether or not the plaintiffs' claims would be timely under
> Louisiana law, the Court finds that maintenance of these actions in this state "is not
> warranted by the policies of this state and its relationship to the parties or the dispute
> nor by any compelling considerations of remedial justice." As noted, the only reason
> these cases were filed in Louisiana is because this Court issued Pretrial Order No.
> 11 in an effort to streamline the MDL process. Accordingly, Louisiana's only
> interest in these cases arises from the fact that this MDL Court sits in Louisiana.
> Such a nominal interest, without more, cannot satisfy Article 3549(B)(2).

*In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 911 (E.D. La. 2007) (internal citation

omitted). Having found that the plaintiffs' claims in the instant cases are in fact time-barred

under Pennsylvania and Puerto Rico law, it is appropriate to flesh out the reasons why

Louisiana's law of prescription does not breathe new life into otherwise stale claims in this

MDL.[12]

Following the United States Court of Appeals for the Fifth Circuit's lead in *Marchesani*,

the Court looks to the Revision Comments accompanying Article 3549 to determine whether the

---

[12] At first glance, the plaintiffs' claims would appear to be untimely under Louisiana law as well, in light of Louisiana's one-year prescriptive periods for personal injury and wrongful death claims, *see* La. Civ. Code Ann. art. 3492, misrepresentation and omission claims, *see* La. Rev. Stat. Ann. § 51:1409(e), and warranty claims, *see* La. Civ. Code Ann art. 2534. And although Louisiana recognizes its own versions of the discovery rule and the fraudulent concealment doctrine, these concepts likely do not save the plaintiffs' claims for the reasons expressed above with respect to Pennsylvania and Puerto Rico law. However, the plaintiffs' claims may potentially be timely under Louisiana's expansive class action tolling doctrine. *See, e.g., Smith v. Cutter Biological*, 99-2068 (La. App. 4 Cir. 9/6/2000), 770 So. 2d 392, 408-10 (discussing Article 3462 of the *Louisiana Civil Code* and recognizing cross-jurisdictional class action tolling). Indeed, in her case-specific opposition, the Puerto Rico plaintiff argues that her claims should be allowed to proceed under Louisiana law.

"high standards for displacing Louisiana's law of prescription" have been satisfied for cases directly filed in this MDL pursuant to Pretrial Order No. 11. *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 491-93 (5th Cir. 2001). Revision Comment (g) provides the relevant analytical framework for this inquiry:

> [Article 3549(B)(2)] reaffirms the basic rule of the lex fori [law of the forum, here Louisiana] for actions that have been filed timely under Louisiana prescription or peremption law. Here the rationale for following that rule is that entertaining such actions promotes whatever substantive policies this state has in not providing for a shorter prescriptive period and preserves to the plaintiff the opportunity to fully pursue his judicial remedies as long as he does so within the time specified by the law of this state. These substantive and procedural policies underlying Louisiana prescription law are entitled to preference in a Louisiana court, unless it is amply demonstrated that neither set of policies is actually implicated in the particular case and that the opposing substantive policies of another state, that of the lex causae [law of the place of injury, here Pennsylvania and Puerto Rico], are implicated more intimately. Only then may Louisiana law be displaced.

La. Civ. Code Ann. art. 3549, Revision Comment (g).

First, the Court is convinced that it has been "amply demonstrated" that neither set of Louisiana's policies are actually implicated in cases directly filed in this MDL pursuant to Pretrial Order No. 11 and, therefore, that maintenance of such actions is not "warranted by the policies" of Louisiana. Revision Comment (i) explains that this evaluation should "be based on an examination of the relationship, if any, that this state has with the parties or their dispute." La. Civ. Code Ann. art. 3549, Revision Comment (i). As the Court previously noted, "Louisiana's only interest in these cases arises from the fact that this MDL Court sits in Louisiana." *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 911 (E.D. La. 2007). In fact, Louisiana's only interest is more tenuous than that because it is not the mere presence of an MDL in this District that has allowed foreign plaintiffs to file suit in this forum against a foreign defendant, but rather this Court's experimentation with direct filing. Under traditional MDL

practice, the majority of cases are filed in, or removed to, federal courts across the country and then transferred to the MDL court by the Judicial Panel on Multidistrict Litigation. *See* 28 U.S.C. § 1407(a). Pretrial Order No. 11 was crafted to eliminate part of the expense and delay associated with this aspect of traditional MDL practice, not to alter the substantive rights of foreign litigants. *See id.* ("Direct filing into the MDL avoids the expense and delay associated with plaintiffs filing in local federal courts around the country after the creation of an MDL and waiting for the Panel to transfer these "tag-a-long" actions to this district."). Thus, Louisiana's interest in "providing a longer prescriptive period" is in no way "adversely affected" by the dismissal of these particular actions as untimely under Pennsylvania and Puerto Rico law. *See* La. Civ. Code Ann. art. 3549, Revision Comment (i); *see also Rafferty v. Gov't Employees Ins. Co.*, 613 So. 2d 727, 729 (La. Ct. App. 1993) ("[Louisiana's] public policy regarding the appropriate prescriptive period . . . has no application to [an insurance] policy issued in California to a California resident.").

Second, the Court is also convinced that maintenance of these cases is not "warranted by any compelling considerations of remedial justice." Such considerations would include circumstances where an alternative forum is unavailable due to lack of jurisdiction over a defendant, or where an alternative forum would be extremely inconvenient for the parties. *See* La. Civ. Code Ann. art. 3549, Revision Comment (f). These considerations obviously are not implicated in cases filed directly in this Court by foreign litigants solely to streamline the MDL process. *Compare Rafferty*, 613 So. 2d at 729 ("Respondent had a year in which to bring an action which would have been timely under his contract and the law of the state where he was living, where the accident took place, and where all parties involved in the accident resided. No

injustice was done to him by the application of the one year prescriptive period."), *with Smith v. ODECO (UK), Inc.*, 615 So. 2d 407, 409-10 (La. Ct. App. 1993) (finding compelling considerations where the defendants' corporate offices were located in New Orleans and the alternative forum lacked jurisdiction over several of the defendants).  Indeed, Pretrial Order No. 11 expressly contemplates a transfer under 28 U.S.C. § 1404(a) upon the completion of all pretrial proceedings to courts of proper venue, that is, to the courts where these actions would have been brought in the first place absent this Court's experimentation with direct filing.  Thus, Louisiana's status as the "forum" state in these cases is somewhat fictional.  Additionally, the Revision Comments make clear that "under no circumstances" should the phrase "compelling considerations of remedial justice" be interpreted as "a command or even as a license for entertaining a particular action simply because it is barred in all or most other states."  La. Civ. Code Ann. art. 3549, Revision Comment (j).  Accordingly, the Court finds that no compelling considerations of remedial justice justify allowing the plaintiffs' stale claims to proceed under Louisiana's law of prescription.

### C.    Illinois Plaintiff

The Illinois plaintiff identified in the instant motion originally filed suit in Illinois state court on January 10, 2007, and his case was subsequently removed and transferred into this MDL pursuant to 28 U.S.C. § 1407.  Specifically, Ronald Pales asserts claims for negligence and gross negligence, negligence–sale of product, common law-fraud–failure to disclose, common-law strict liability, and breach of warranties (express and implied).

In these circumstances, the Court will apply Illinois' choice-of-law rules to select the applicable statutes of limitations.  *See Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990).

Illinois' choice-of-law rules dictate that Illinois' statutes of limitations apply in these cases.  *See Cox v. Kaufman*, 571 N.E.2d 1011, 1015 (Ill. App. Ct. 1991).  Accordingly, the Court will examine the following details of Illinois law:  the length of the limitations periods for each of the plaintiff's claims; when the limitations periods began to run, giving effect to Illinois' discovery rule and fraudulent concealment doctrine; and whether any of the limitations periods were tolled, either by the pendency of class actions or otherwise.  This analysis reveals that the bulk of the claims of the Illinois plaintiff are untimely under Illinois law.

Illinois employs a two-year statute of limitations for personal injury claims.  *See* 735 Ill. Comp. Stat. 5/13-202.  Under Illinois' discovery rule, the running of the limitations period commences when a plaintiff possesses "sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 980-81 (Ill. 1981).  Illinois' fraudulent concealment doctrine applies only to cases where "a party is unwittingly induced not to file his action until after expiration of the limitations period."  *Muskat v. Sternberg*, 570 N.E.2d 696, 701 (Ill. App. Ct. 1991).

Applying these principles to the plaintiff's strict liability and negligence claims, and drawing all justifiable inferences in his favor, the Court finds that, at the very latest, Illinois' two-year statute of limitations began to run on September 30, 2004.  Both the national and local media coverage of the withdrawal of Vioxx from the market were sufficient to put the plaintiff on notice of a potential link between his alleged injuries and the use of Vioxx.  *See, e.g., Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1116 (N.D. Ill. 1998) (noting that "extensive media coverage" of a waste contamination controversy contributed to the triggering of Illinois'

limitations period).  By waiting until January 10, 2007 to file suit, more than two years after the

withdrawal of Vioxx from the market, the plaintiff cannot be said to have acted diligently.

Indeed, in light of the media coverage in this case, the Court is led to the "inescapable

conclusion that a reasonable person in [the plaintiff's] situation should have known of their

claim."  *Id.* at 1117.

In his case-specific opposition, the plaintiff contends that Illinois' two-year statute of

limitations began to run from the date of his alleged injury and therefore expired in August 2003,

but that his claims are nevertheless timely under Illinois' five-year fraudulent concealment

statute, which, according to the plaintiff, began to run on September 30, 2004.  *See* 735 Ill.

Comp. Stat. 5/13-215.  Relying on *Berry v. G.D. Searle & Co.*, 309 N.E.2d 550 (Ill. 1974), the

plaintiff argues that his injury was a "sudden traumatic injury" and that Illinois' discovery rule

does not apply in his case.  However, as subsequent decisions from the Illinois courts recognize,

"the classification of an injury as traumatic or non-traumatic, alone, is of no significance."  *Clark

v. Galen Hosp. Illinois, Inc.*, 748 N.E.2d 1238, 1245 (Ill. App. Ct. 2001).  Rather, as noted

above, courts must inquire into when a plaintiff "discovers or should have discovered that he was

injured by the defendant's conduct."  *Kristina v. St. James Hosp.*, 380 N.E.2d 816, 818 (Ill. App.

Ct. 1978).  In this case, the Court finds that the plaintiff's alleged heart attack and subsequent

stroke, though tragic, are unfortunately not so "uncommon" nor "unusual" in this country for a

man of his age, and thus that it was initially reasonable for him to believe that his injuries

"resulted from natural causes."  *See Clark*, 748 N.E.2d at 1246.  The plaintiff appears to concede

as much in his case-specific opposition, where he notes that at the time of his injury he "had no

knowledge that Vioxx caused cardiovascular injuries and, therefore, could be a cause of [his]

stroke."  Accordingly, Illinois' two-year statute of limitations did not begin to run until September 30, 2004 (the date on which both (i) the plaintiff acquired sufficient information concerning Vioxx to determine whether actionable conduct was involved in his injury, and (ii) beyond which Merck cannot be said to have concealed his cause of action).  *See Muskat v. Sternberg*, 570 N.E.2d 696, 701 (Ill. App. Ct. 1991) ("If at the time plaintiff discovers the fraudulent concealment a reasonable time remains within the applicable statute of limitations, section [5/13-215] of the Limitations Act does not toll the running of the limitation period.").  Accordingly, the plaintiff's strict liability and negligence claims are time-barred under Illinois law.[13]

The plaintiff's warranty claims are subject to a four-year statute of limitations under Illinois law.  *See* 810 Ill. Comp. Stat. 5/2-725; *Berry v. G.D. Searle & Co.*, 309 N.E.2d 550, 552-54 (Ill. 1974).  This limitations period begins to run "when the breach occurs, [that is, when delivery is made,] regardless of the aggrieved party's lack of knowledge of the breach" *Id.*; *see also Hagen v. Richardson-Merrell, Inc.*, 697 F. Supp. 334, 341 (N.D. Ill. 1988).  Because the plaintiff began taking Vioxx in August 1999, his warranty claims became stale in August 2003, more than three years before he filed suit.  Accordingly, the plaintiff's warranty claims are time-barred under Illinois law.

The plaintiff's common-law fraud claim in subject to Illinois' catch-all five-year statute of limitations.  *See* 735 Ill. Comp. Stat. 5/13-205.  Assuming, as the Court has done above, that

---

[13]  The Court notes that if in fact the plaintiff's injury could be considered a "sudden traumatic injury" for purposes of the discovery rule, his claims would nevertheless be untimely because section 5/13-215 would not apply in such circumstances.  *See, e.g., Lowe v. Ford Motor Co.*, 730 N.E.2d 58, 61 (Ill. App. Ct. 2000).

this limitations period began to run on September 30, 2004 when Vioxx was withdrawn from the market, the plaintiff's common-law fraud claim appears to be timely.  Merck argues, however, that the plaintiff has failed to allege that Merck made any false statements of "material" fact, but rather that the company merely failed to disclose certain information.  Moreover, Merck argues that it did not have a duty to disclose the allegedly concealed facts to the plaintiff.  To prevail on his common-law fraud claim, the plaintiff must prove: "(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury."  *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992).  Because the plaintiff does in fact allege more than a mere omission on Merck's part, and based on the limited record presently before the Court, Merck's motion will be denied in part as it relates to the plaintiff's common-law fraud claim.[14]

Lastly, the Court finds that the plaintiff's claims are not saved by *American Pipe* tolling under Illinois law.  Although Illinois does recognize class action tolling, the Supreme Court of Illinois has explicitly rejected cross-jurisdictional tolling.  *See Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1103-05 (Ill. 1998).  Because there have been no Vioxx class actions filed in the Illinois state courts, the plaintiff cannot rely on Illinois' limited class action tolling doctrine.

_____

[14]  The Court does not, however, pass judgment on the *merits* of the plaintiff's common-law fraud claim.  Indeed, although this claim may be timely, it is likely to face future challenges in terms of an enhanced burden of proof on causation and recoverable damages.  Moreover, all such claims must also satisfy Rule 9(b)'s particularity pleading requirement.

## IV.      CONCLUSION

For the foregoing reasons, IT IS ORDERED that Merck's Motion for Summary

Judgment (Rec. Doc. 12725) is GRANTED IN PART and DENIED IN PART such that the

claims of the identified plaintiffs are hereby DISMISSED WITH PREJUDICE in their entirety,

except for the Illinois plaintiff's common-law fraud claim.


New Orleans, Louisiana, this 8th day of November, 2007.

_____
UNITED STATES DISTRICT JUDGE