UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 NOV -9 PM 1:06

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| In re: VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| THIS DOCUMENT RELATES TO ALL CASES | | |
| | * | MAG. JUDGE KNOWLES |

* * * * * * * * * * * * * * * * * * *

**PRETRIAL ORDER NO. 29**
**Rules and Procedures Relating to**
**All Cases Filed or Transferred On or After November 9, 2007**

This Order applies to all plaintiffs who file personal injury claims directly in, or whose

claims are transferred into, MDL Docket No. 1657 on or after November 9, 2007 ("Post 11.09

Plaintiffs"). Persons who represent themselves *pro se* in this proceeding shall comply fully with

all obligations required of counsel by this Order, unless otherwise stated.

I. **PRESERVATION NOTICE REQUIREMENT**

    A.     Prior to filing a claim, counsel – or if a plaintiff is proceeding *pro se*, the plaintiff
    – shall be responsible for ensuring that all records in the possession of the
    plaintiffs' pharmacies and healthcare providers as described in paragraph (B)
    below have been preserved, collected and reviewed. Within thirty (30) days of
    agreeing to accept a client for purposes of pursuing Vioxx litigation, counsel shall
    notify the individuals or entities listed below in Paragraph B, by registered mail,
    that they may have records relevant to the putative plaintiff's ("Plaintiff or
    Plaintiff's") claim in this MDL proceeding ("Claim") and that any records
    relating to the Plaintiff must be preserved pursuant to Pretrial Order No. 1 entered
    by this Court on February 17, 2005 (the "Notice"), pending collection by the
    Plaintiff. Plaintiffs proceeding *pro se* must notify the individuals or entities listed
    below in Paragraph 2 within thirty (30) days of filing an action.



- 1 -

B.   The following individuals or entities must be notified pursuant to Paragraph 1 above:

    1.   All Pharmacies that dispensed any medications to the Plaintiff for the period from January 1, 1995 to the present;

    2.   All Physicians, Medical Facilities, other Healthcare Providers and/or others persons ("other Providers") who Plaintiff claims provided any samples of Vioxx to the Plaintiff;

    3.   All Physicians, Medical Facilities and/or other Healthcare Providers who prescribed Vioxx for the Plaintiff;

    4.   All Physicians and/or other Healthcare Providers who treated Plaintiff for the period from January 1, 1995 to the present; and

    5.   If Plaintiff is seeking lost wages, all of his/her employers for the period from three years prior to the date for which he/she is seeking lost wages through the last day for which Plaintiff or Claimant is seeking lost wages.

C.   A copy of Pre Trial Order No. 1 (Paragraph 13 – Preservation of Evidence) shall be attached to the Notice and all copies of the Notice shall be preserved by Counsel for Plaintiff for so long as the claim remains pending in this Proceeding.

D.   Within ten (10) days of filing a claim, Plaintiff shall serve a statement listing the names and addresses of all individuals or entities to which Notices were sent, along with copies of the Notices and a signed certification that the Notices were sent as required by this Order.  Service shall be made in accordance with the service procedures of PTO No. 8 and paragraphs 5 through 7 of PTO 18C.

E.   Plaintiffs who fail to fully comply with the requirements of this Order shall be given notice by e-mail or fax from Defendants' Liaison Counsel or his designee and shall be provided thirty (30) additional days to cure such deficiency ("Cure Period").  No other extensions will be granted.  If Plaintiff fails to cure the deficiency within the Cure Period, Defendant's Liaison Counsel shall file a Motion to Show Cause why the claim should not be dismissed with prejudice. Plaintiff shall thereupon have thirty (30) days to respond to the Notice to Show Cause.  Any failure to respond to the Motion within the required period of time shall lead to the dismissal of the claim with prejudice, except for good cause shown.

F.   Plaintiff may not seek to introduce into evidence at trial any document or information asserting that Vioxx was dispensed by a pharmacy or that Vioxx was provided to the Plaintiff as a sample if a Notice were not sent to the Plaintiff's pharmacy, physician, other healthcare provider and/or Other Provider as required by this Order, except upon leave of court for good cause shown.  A Plaintiff who fails to comply with this Order may also be subject to other sanctions or orders.

## II.   DISCOVERY REQUIREMENTS

A.   Within forty-five (45) days of filing his or her claim in this MDL, or within forty-five (45) days of their case being transferred (measured from the date of filing with this Court of the Transfer Order issued by the Judicial Panel on Multidistrict Litigation) or removed (measured from the date of filing with this Court of the Notice of Removal) to this MDL, all Post 11.09 Plaintiffs who claim to have suffered an injury as a result of the use of Vioxx must produce the following information:

1.   All pharmacy records regarding the dispensing of drugs to the Plaintiff for the period from January 1, 1995 to the present, along with a signed certification from the respective pharmacy or pharmacies indicating that the production is complete.

2.   All medical records relating to the Plaintiff from all healthcare providers requested in the Amended and Supplemental Plaintiff Profile Form for the period from January 1, 1995 to the present, along with a signed certification from each Healthcare Provider who has records relating to the Plaintiff indicating that all records in the possession, custody or control of the Provider have been produced.

3.   If any death is claimed, a statement to that effect along with a copy of the death certificate and autopsy report, if one was performed.

4.   An Amended and Supplemental Plaintiff Profile Form (attached as Exhibit A), records requested therein, and executed Authorizations for Release of Records pursuant to PTO 18A, B or C, as applicable.  Service by Plaintiffs shall be made in accordance with the service procedures of PTO No. 8 and paragraphs 5 through 7 of PTO 18C.  Service by Claimants shall be made on Susan Giamportone at Womble Carlyle Sandrige & Rice, PLLC.

5.   Answers to the Interrogatories set our in Exhibit B.  Service by Plaintiffs shall be made in accordance with the service procedures of PTO No. 8 and paragraphs 5 through 7 of PTO 18C.  Service by Claimants shall be made on Susan Giamportone at Womble Carlyle Sandrige & Rice, PLLC.

6.   An affidavit signed by the Plaintiff (i) attesting that records have been collected from all pharmacies that dispensed drugs to, or for, the plaintiff; (ii) attesting that all medical records described in paragraph (2) above have been collected; (iii) attesting that all records collected pursuant to subparagraphs (1), (2) and (3) have been produced pursuant to the Order, along with an index or list identifying the source of the records; and (iv) citing the specific page of the medical records containing the diagnosis of the alleged injury.

7.   A Rule 26(a)(2) case-specific expert report from a medical expert attesting (i) that the Plaintiff suffered an injury and (ii) that Vioxx  caused the

injury. The case-specific expert report must include (i) an explanation of the bases of the attestation that Vioxx caused the plaintiff to suffer the injury; (ii) an identification of any other causes that were considered in formulating the opinion; (iii) a description of the specific injuries allegedly suffered; (iv) a description of the specific medical findings that support the diagnosis of those injuries; and (v) an identification of all documents relied on by the expert in forming his opinions.

B.    If any of the documents described in paragraphs A (1), (2) and (3) do not exist, the Plaintiff shall state that fact in his or her affidavit and the reason why they do not exist and provide a certified "No Records Statement" from the pharmacy or healthcare provider.

C.    Plaintiffs who fail to fully comply with the requirements of this Order shall be given notice by e-mail or fax from Defendants' Liaison Counsel or his designee and shall be provided thirty (30) additional days to cure such deficiency ("Cure Period"). No other extensions will be granted, except for good cause shown. If Plaintiff fails to cure the deficiency within the Cure Period, Defendant's Liaison Counsel shall file a Motion to Show Cause why the claim should not be dismissed with prejudice. Plaintiff shall thereupon have thirty (30) days to respond to the Notice to Show Cause. Any failure to respond to the Motion within the required period of time shall lead to the dismissal of the claim with prejudice.

D.    Nothing in this Order abrogates or replaces each Plaintiff's obligation to submit the Plaintiff Profile Form, authorizations, and other materials required under Pretrial Order 18C. The Plaintiff need not re-submit a Plaintiff Profile Form if one has already been submitted with respect to his or her claim.

## III.   ATTORNEYS' FEES FOR POST 11.09 PLAINTIFFS

This Court finds that:

A.    The Status of the Litigation:

1.    Prior to September 30, 2004, approximately 400 lawsuits had been filed against Merck & Co. by plaintiffs alleging various injuries from the use of Vioxx. In New Jersey, an Order had been entered on May 20, 2003 establishing a coordinated proceeding for Vioxx litigants and, on September 30, 2002, an Order was entered in California for the same purpose.

2.    On September 30, 2004, Merck withdrew Vioxx from the market. The withdrawal of Vioxx led to extensive publicity nationwide in newspapers and magazines, on television and radio, and across the Internet. While plaintiffs' counsel had extensively advertised seeking clients to pursue claims against Merck relating to the use of Vioxx before September 30, 2004, that advertising increased markedly throughout the country after the

withdrawal. Like the publicity relating to the withdrawal, the advertising apprised the public of possible claims they might have against Merck in connection with the use of Vioxx.

3. By December 31, 2004, three months after the withdrawal of Vioxx, approximately 923 lawsuits were on file, encompassing approximately 3291 plaintiffs.

4. On February 16, 2005, the Judicial Panel on Multi District Litigation ruled that cases alleging injury from the use of Vioxx pending in various federal courts across the country should be transferred to one district court for coordination. The Panel decided that the cases should be transferred to the Eastern District of Louisiana in New Orleans and appointed the undersigned to conduct the consolidated and coordinated proceedings.

5. By the first year anniversary of the withdrawal of Vioxx, more than 8,900 Vioxx lawsuits had been filed involving more than 18,500 plaintiffs. As of the date of this Order, there are more than 26,800 active Vioxx cases on file in various courts throughout the country, involving more than 47,500 plaintiffs and an additional 13,000 claims on tolling agreements for a total of more than 60,500 claimants. By any measure, the scale of this litigation is large.

6. Discovery in this litigation has also been extensive. More than 54 million pages of documents and a terabyte of data have been produced by Merck pursuant to various requests from plaintiffs' counsel along with another 86 million pages of data from Merck Profile Forms. More than 1,800 depositions have also been taken in the litigation and depositions have consumed more than 2,000 days and comprise more than 380,000 pages of testimony. Also, more than fifteen trials have been conducted, including six in this Proceeding;

B. Pharmaceutical Tort Litigation and Contingent Fees.

1. It is the practice in the United States for lawyers bringing claims on behalf of clients in personal injury actions to be compensated pursuant to contingent fee agreements. That is, the lawyer's fee is contingent on the lawyer's success in the recovery of compensation from another party for his client.

2. In large-scale pharmaceutical tort litigation, it is particularly commonplace for lawyers representing plaintiffs to be compensated through contingent fees.

3. Large-scale pharmaceutical tort litigation (which can be similar to traditional mass tort litigation in scale) can be, and usually is, extraordinarily expensive, particularly in the early stages. It is well understood that proving cases in mass tort litigation, at least at first, is

expensive. Experts of various kinds may be needed and discovery from the defendants may take a long time and much effort.

4. However, the cost and risk inherent in prosecuting the first series of claims in a large-scale pharmaceutical tort is not the same throughout the litigation.

5. Because of the extensive publicity and extensive advertising that followed the withdrawal of Vioxx, users of Vioxx (and their lawyers) have had ample notice of the possibility that they may have a claim against Merck in connection with their use of the drug. The uncertainty of the number of potential claims in a litigation of this magnitude makes the management of this proceeding exceedingly difficult both for the parties and the Court.

C. The Vioxx litigation is an extremely mature litigation. To date, MDL and state court lawyers have tried 17 cases and taken over 1,800 depositions; more than 50 million pages of documents have been produced, and an enormous volume of electronic data, and substantial Third Party discovery has occurred. Because of this extensive work done by the PSC and certain state court lawyers, the cost of litigating Vioxx claims has been substantially reduced.

D. Given the extensive amount of discovery and trial preparation that has been undertaken and already achieved – as well as the work on, and lessons learned from, bellwether trials conducted in this Court and others over the last several years – counsel filing new claims can reasonably expect to expend much less time and resources prosecuting those cases than counsel who have been involved in those proceedings from the beginning, and I encourage counsel to consider such disparity in negotiating attorneys' fees.

## IV. PENALTIES FOR FRAUD AND DECEPTION

Any Plaintiff (and his or her attorneys) who submits false or intentionally misleading information, or otherwise attempts to satisfy the documentation requirements of this Order through any form of deception, dishonesty or fraud shall be subject to appropriate sanctions (including monetary sanctions and costs) and dismissal with prejudice pursuant to Fed.

R. Civ. P. 37.  Post 11.09 Plaintiffs who fail to fully comply with the requirements of this Order

may be subject to sanctions and dismissal of their claims pursuant to Fed. R. Civ. P. 37.


New Orleans, Louisiana, this 7th day of November, 2007.

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE