UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 3:07-CV-00030-KKC

COMMONWEALTH OF KENTUCKY,
*Ex. Rel. Gregory D. Stumbo, Attorney General,*                                          PLAINTIFF,

v.                                        **OPINION AND ORDER**

MARATHON PETROLEUM COMPANY, LLC,
*et al.*,                                                                                                 DEFENDANTS.

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

This matter is before the Court on the Motion to Remand (Rec. No. 4) filed by the Plaintiff. For the following reasons, the Court will GRANT the motion.

### I.    FACTS.

On May 10, 2007, the Attorney General of Kentucky filed this action in Franklin Circuit Court as a relator on behalf of the Commonwealth of Kentucky against the Defendants Marathon Petroleum Company, LLC, Marathon Oil Corporation, and Speedway Superamerica, LLC (the "Defendants"). The Attorney General charges that the Defendants violated the Kentucky Consumer Protection Act ("KCPA"), KRS § 367.170, and the state's Anti-Price Gouging Act, KRS § 367.372, *et seq.*. Specifically, the Attorney General charges that the Defendants sold motor fuels during the period covered by the Kentucky Governor's Declaration of Emergency following Hurricane Katrina at prices that were grossly in excess of pre-emergency prices. (Rec. No. 1, Notice of Removal, State Court Complaint).

The Defendants removed the action to this court asserting that this court has jurisdiction pursuant to 28 U.S.C. § 1332 which grants federal district courts original jurisdiction over any action



in which the amount in controversy exceeds $75,000 and is between citizens of different states. In their Notice of Removal (Rec. No. 1), the Defendants assert that the Plaintiff Attorney General is a Kentucky citizen and that he filed the Complaint on behalf of Kentucky citizens who purchased motor fuels from the Defendants. There is no dispute that none of the Defendants are Kentucky citizens.

The Attorney General then filed a Motion to Remand (Rec. No. 4) the matter to Franklin Circuit Court.

## II. ANALYSIS.

### A. The Real Party in Interest.

In his Motion to Remand, the Attorney General argues that the Plaintiff in this action is actually the "Commonwealth of Kentucky." Citing *Hughes-Bechtol, Inc. v. West Virginia Bd. of Regents*, 737 F.2d 540 (6th Cir. 1984), the Attorney General correctly argues that neither a state nor its alter ego is a "citizen" for purposes of establishing diversity jurisdiction. "A state is not a citizen. And, under the Judiciary Acts of the United States, it is well settled that a suit between a State and a citizen or a corporation of another State is not between citizens of different States; and that the Circuit Court of the United States has no jurisdiction of it unless it arises under the Constitution, laws or treaties of the United States." *Id.* at 543 (citation omitted).

"When a state official is a party to a proceeding over which diversity jurisdiction is alleged, whether the respective state is itself the real party in interest is a question to be determined from the essential nature and effect of the proceeding." *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 250 (7th Cir.1981) (citation and quotations omitted).

The Defendants argue that the Attorney General is not actually bringing this action on behalf

2

of the Commonwealth of Kentucky but is instead bringing it on behalf of a discrete set of Kentucky citizens and that these citizens are the actual plaintiffs in this action. The Defendants argue that the court should consider the citizenship of these citizens in determining whether diversity jurisdiction exists. Citing *Connecticut v. Levi Strauss Co.*, 471 F.Supp. 363, 371 (D. Conn. 1979), the Defendants argue that where a claim is brought on behalf of private citizens, then the plaintiffs for purposes of diversity jurisdiction are the citizens of the state, not the state itself.

In *Levi Strauss*, the state of Connecticut brought an antitrust suit against Levi Strauss in state court. *Id.* at 365. The state brought the action pursuant to a statute granting the Attorney General the authority to enforce the state antitrust act and granting him the authority to bring a civil action as *parens patriae* of the state's residents. *Id.* at 366. Levi Strauss then removed the action to federal court, partly on the basis of federal diversity jurisdiction. The state argued that it was not a citizen and, thus, diversity jurisdiction did not exist. *Id.* at 365.

The district court determined that "[i]f Connecticut were suing as *Parens patriae* for the benefit of all of its citizens, its capacity would be essentially sovereign, and it would not be a citizen for diversity purposes." *Id.* at 370. However, where the state is suing on behalf of "particular citizens" and the defendant is diverse, then there is complete diversity for purposes of diversity jurisdiction. *Id.* at 371. The court concluded that, when the state "claims refunds to be distributed to identifiable purchasers, the citizen status of the purchasers rather than the sovereign status of their benefactor controls for diversity purposes." *Id.*

Likewise, in *State ex rel. Guste v. Fedders Corp.*, 524 F.Supp. 552 (D.C. La. 1981), the state attorney general sued on behalf of the state of Louisiana and the Assistant Secretary of the Department of Urban and Community Affairs, charging that the defendants had sold defective

3

appliances in violation of the state Consumer Protection Law. *Id.* at 554. The attorney general sought an injunction prohibiting the defendants from selling the defective appliances and requiring the defendants to do the following: refund the purchase price of the defective appliance to Louisiana purchasers; reimburse retailers and dealers; disclose to Louisiana purchasers the defects in the appliances and the slow warranty services; repair or replace any defective appliance belonging to a Louisiana consumer; reimburse any Louisiana purchaser the repair costs; and pay a sum to the State of Louisiana to be disbursed to Louisiana consumers damaged by the defendant's conduct. *Id.* at 554.

The court determined that the "action brought by the plaintiffs clearly does not benefit the state treasury. Instead, the action simply is an effort to make the consumers of Louisiana whole." *Id.* at 557. Thus, the Louisiana consumers were the real parties in interest. *Id.*

In contrast, in *Wisconsin v. Abbott Laboratories*, 341 F.Supp.2d 1057 (W.D. Wis. 2004), the State of Wisconsin, through its Attorney General, sued 20 pharmaceutical manufacturers alleging that the defendants inflated the average wholesale prices of their drugs in violation of various state laws. *Id.* at 1058-59. The state brought the action "on behalf of itself, its citizens, and Wisconsin organizations, who have paid inflated prices for defendant's prescription drugs." *Id.*

The defendants removed the action to federal court and the state moved to remand, arguing that the state of Wisconsin was the real party in interest and, thus, diversity jurisdiction did not exist. *Id.* at 1060. The defendants conceded that the state had an interest in the claims brought on behalf of the state but argued that the private parties were the real parties in interest with respect to the claims brought on their behalf. *Id.* at 1061. The state argued that it was the real party interest because it brought four of the five claims pursuant to its law enforcement authority and because a

4

state is not stripped of sovereignty merely because it acts on behalf of it citizens in addition to the state. *Id.* at 1061-62.

The court determined that, "viewing the complaint as a whole," the state had a "substantial stake" in the outcome of the case. The court noted that four of the five claims in the case were brought by the attorney general pursuant to specific statutory authority. *Id.* at 1063. The court further noted that, in addition to damages for the private parties who allegedly overpaid for the defendant's drugs, the state also sought injunctive relief on four of the five claims. "This type of prospective relief goes beyond addressing the claims of previously injured organizations or individuals. It is aimed at securing an honest marketplace, promoting proper business practices, protecting Wisconsin consumers and advancing plaintiff's interest in the economic well-being of its residents." *Id.* The court concluded that Wisconsin was the real party in interest and, thus, it did not have jurisdiction over the claim. *Id.*

Likewise, in *Moore ex. rel. State of Miss. v. Abbott Laboratories, Inc.*, 900 F.Supp. 26 (S.D. Miss. 1995), the state attorney general, acting on behalf of the state and as *parens patriae* on behalf of citizens injured by the defendants' act, sued certain pharmaceutical companies in state court for violations of the state anti-trust laws and the state Consumer Protection Act. *Id.* at 29. The state sought statutory penalties for the violations of the antitrust laws for injury to the state. *Id.* The state also sought damages pursuant to a state statute authorizing the attorney general to recover damages in his capacity as *parens patriae* for the Mississippi citizens damaged by the Defendant's conduct. *Id.*

The defendants removed the action to federal court, partly on diversity jurisdiction grounds, arguing that the state was not the real party in interest and that, instead, the real parties in interest

5

were the private individuals who purchased products from the defendants. *Id.* The court determined that the state was the real party in interest because the state antitrust statute gave the attorney general the authority to bring suit in the name of the state. *Id.* at 31.

Similarly, in *State of New York v. General Motors Corp.*, 547 F.Supp. 703 (S.D.N.Y. 1982), the state attorney general sued GM in state court on behalf of the state of New York alleging that GM had engaged in fraudulent business practices in connection with the sale of certain automobiles. *Id.* at 703-04. GM removed the action to federal court asserting diversity jurisdiction. GM argued that the state was a "nominal party" representing the interests of New York consumers allegedly defrauded by GM's actions. *Id.* at 704. The stated moved to remand.

The court noted that the state sought the following relief: redress for those who had already purchased the automobiles and an order requiring full disclosure by GM of the defects in all of its automobiles for prospective purchasers. *Id.* at 704-05. The court determined that, "[t]he purpose of seeking this wide-ranging relief is not merely to vindicate the interests of a few private parties," but to eliminate "fraudulent and deceptive business practices in the marketplace," enhancing the economic well-being of all New York consumers. *Id.* at 705. Because the state's goal of "securing an honest marketplace in which to transaction business" was a "quasi-sovereign interest," the court determined that the state was the real party in interest. *Id.* at 706.

In determining whether the state is the real party in interest where the state attorney general is the plaintiff, most courts follow this approach of looking at the complaint as a whole to determine whether the state is the primary beneficiary of the action. In *Hood ex. rel. Mississippi v. Microsoft Corp.* 428 F.Supp. 2d 537 (S.D.Miss. 2006), the court stated that, where the attorney general seeks relief for state and for private parties, courts should analyze real party in interest questions by

6

examining the State's interest in the lawsuit as a whole. *Id.* at 545-46. The court determined that, "viewing the complaint as a whole," the state was the real party in interest. *Id.* at 546. In reaching this determination, the court noted that the attorney general brought the claims pursuant to specific statutory authority and that he sought an injunction. *Id.* The court determined that injunctive relief was more relief than necessary to redress individual injuries and was instead aimed at "securing an honest marketplace, promoting proper business practices, protecting Mississippi consumers, and advancing Mississippi's interest in the economic well-being of its residents." *Id.* The court determined that "the fact that private parties may benefit monetarily from a favorable resolution of this case does not minimize nor negate plaintiff's substantial interest." *Id.* (citing *Alabama ex rel. Galanos v. Star Serv. & Petroleum Co.*, 616 F.Supp. 429, 431 (S.D.Ala.1985)("whether other parties will benefit from this action does not affect the State's valid interest in enforcing this statutory scheme"). *See also West Virginia ex re. McGraw v. Minnesota Mining and Manufacturing, Inc.*, 354 F.Supp. 2d 660, 665 (S.D.W.Va. 2005)(state is real party in interest where attorney general sought monies paid due to the defendants' bad acts and the moneys would go the state treasury).

In this action, the attorney general brings suit pursuant to his statutory authority under KRS § 367.190, KRS § 367.378, KRS § 367.990 and KRS §367.200.

KRS § 367.190 authorizes the Attorney General to bring an action "in the name of the Commonwealth" for an injunction to prohibit any act that violates the KCPA. KRS § 367.378 provides for civil penalties for violating the Anti-Price Gouging Act and provides that nothing in the act shall be construed to limit the powers of the Attorney General. KRS § 367.990 provides:

> (2)  In any action brought under KRS 367.190, if the court finds that a person is willfully using or has willfully used a method, act, or practice declared unlawful by KRS 367.170 [the KCPA], the Attorney General, upon petition to the court, may

7

>recover, *on behalf of the Commonwealth*, a civil penalty of not more than two thousand dollars ($2,000) per violation, or where the defendant's conduct is directed at a person aged sixty (60) or older, a civil penalty of not more than ten thousand dollars ($10,000) per violation, if the trier of fact determines that the defendant knew or should have known that the person aged sixty (60) or older is substantially more vulnerable than other members of the public.

KRS § 367.990(2)(emphasis added).

KRS § 367.200 provides that the court may make any order necessary to restore to any person moneys paid as a result of any act that violates the KCPA.

In the Complaint, the Attorney General seeks the following:

1) a declaration that the Defendants have violated the KCPA and the Anti-Price Gouging Act;

2) an injunction prohibiting the Defendants from violating the Anti-Price Gouging Act;

3) civil penalties against the Defendants; and

4) disgorgement and restitution of all amounts received by the Defendants in violation of the KCPA.

The declaration, injunction, and civil penalties will benefit all Kentucky consumers not just a particular set of consumers. The Attorney General brings this action pursuant to KRS § 367.190 and KRS § 367.990 which specifically authorize the Attorney General to bring actions "in the name of" or "on behalf of" the Commonwealth. While the Attorney General does also seek restitution on behalf of particular consumers, this is only one aspect of the wide-ranging relief sought, the substantial portion of which will benefit all Kentucky consumers. Viewing the complaint as a whole, the state is the real party in interest in this matter.

### B. The Unconstitutionality of the Anti-Price Gouging Act.

The Defendants argue that the Attorney General cannot be deemed to be acting on behalf of

8

the state in this action because he is seeking to enforce an unconstitutional statute. The Defendants contend that, because the Attorney General is acting unconstitutionally, the court should determine that he is not acting as a representative for the state and, thus, should consider the personal citizenship of the Attorney General in determining whether diversity jurisdiction exists.

The Defendants' argument appears to be supported by a 1921 case from the Sixth Circuit, *State of Ohio ex. rel. Seney v. Swift & Co.*, 270 F.141 (6th Cir. 1921). In *Seney*, the prosecuting attorney of an Ohio county filed suit in state court alleging that the defendants had violated state law which prohibited organizations from creating and carrying out restrictions in trade and commerce (the "State Anti-trust Law") and a state law prohibiting the sale of pork which had been housed in cold storage for more than six months (the "Cold Storage Act"). The defendants removed the action to federal court. *Id.* at 145. In their removal petition, the defendants argued that the state Anti-Trust and Cold Storage Acts violated the due process clause of the United States Constitution and that, due to their unconstitutionality, these laws could not authorize the county prosecutor to sue. *Id.* at 149.

In determining whether the state court action should be deemed an action by the state or by the county prosecutor individually, the court noted several peculiar facts of the case. First, the county attorney did not appear before the district court to contest that court's jurisdiction. The court specifically noted that, had the prosecuting attorney done so, then "this case would have a different aspect; but we must take the record as we find it." *Id.* at 146.

The court also noted that, in the state court complaint, the county prosecutor did not state what law gave him the authority to sue on behalf of the state. *Id.* at 147-48. Finally, the court noted that the ultimate issue of whether the constitutionality of the statutes should be decided by the state or federal court had been rendered essentially moot because the defendants had filed another lawsuit

9

in federal court to enjoin the prosecutor's actions alleging that the laws under which he was proceeding were unconstitutional and the district court's jurisdiction over that action was "unassailable." *Id.* at 149.

After making these observations, the court concluded that the defendants' "good faith assertion of the unconstitutionality of the state law gives jurisdiction to a federal court." *Id.* at 150. For this holding the court relied in part on *Ex Parte Young*, 209 U.S. 123 (1908). In *Young*, the Supreme Court held that the Eleventh Amendment does not bar a suit against a state officer who is acting unconstitutionally. "If the act which the state Attorney General seeks to enforce be a violation of the federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Id.* at 159-60. The Eleventh Amendment immunity does not then apply.

In *Seney*, the Sixth Circuit concluded that, "[t]he same rule must apply to a party plaintiff as to a party defendant, and when we find that because the constitutionality of the state law is at stake, the party is the individual, and not the state, this finding supports the conclusion of diverse citizenship equally well as it does the conclusion that the Eleventh Amendment does not protect." 290 F. at 151. In other words, where the removing defendants make a good faith assertion in their notice of removal that the state official plaintiff is acting unconstitutionally, the plaintiff is deemed to be acting individually, not on behalf of the state for purposes of diversity jurisdiction.

*Seney* has been widely criticized. In a 1963 case, the district court for the Eastern District of Michigan, held that *Seney* "must be limited to the precise facts and circumstances in that case." *Olsen v. Doerfler*, 225 F.Supp. 540, 543 (E.D. Mich. 1963). *Seney* has likewise been criticized in

10

courts in other circuits."The fiction created by *Ex parte Young* i.e., that a constitutional claim for prospective relief against a state official is not an action against the state for eleventh amendment purposes has never been applied by the Supreme Court or this Circuit to determine whether a state is a party to an action for purposes of diversity jurisdiction." *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 250-51 (7th Cir. 1981). "The proposition advanced by the *Seney* court has apparently been arguably embraced by but one reported decision, *Mouton v. Sinclair Oil & Gas Co.*, 410 F.2d 717 (5th Cir. 1969) . . . while it has been generally criticized." *Id.* at 251. *See also State Tax Comm'n v. Union Carbide Corp.*, 386 F.Supp. 250, 253 n. 7 (D. Idaho 1974)("this Court doubts that Congress intended that federal jurisdiction be asserted in such a 'left-handed' or 'back-door' fashion"); *State of Ala. ex rel. Galanos v. Star Service & Petroleum Co. Inc.*, 616 F.Supp. 429, 432 (S.D. Ala. 1985)("*Young* dealt with the Eleventh Amendment, an issue that is distinct from the real party in interest issue that is central to the diversity jurisdiction problem . . . *Seney* has been severely criticized by subsequent decisions.").

Even if *Seney* is still good law, this case is distinguishable. Unlike the county prosecutor in *Seney*, the Attorney General has appeared in this action and has contested this court's jurisdiction. Further, Kentucky statutes clearly authorize him to bring this action on behalf of the state.

In addition to finding diversity jurisdiction based on the county prosecutor's diverse citizenship from the defendants, the *Seney* court may also have found "the existence of a federal question through [the defendants'] claim of unconstitutionality" contained in their removal petition. *Seney*, 270 F. at 151. If so, this would be contrary to the well-established principle that federal jurisdiction cannot be founded on a defense that raises a federal question. "Under the 'well-pleaded complaint rule,' the presence of federal jurisdiction turns on whether a plaintiff's properly pleaded

11

complaint presents a federal question on its face." *Klepsky v. United Parcel Service, Inc.*, 489 F.3d 264, 269 (6th Cir. 2007)(quotations and citation omitted). "The possibility that federal law might be raised in defense is generally not enough to justify removal to federal court." *Id.* The exception to this rule for cases where federal law completely preempts state law on the relevant subject matter, does not apply here.

For all these reasons, this court does not have jurisdiction over this matter and the Court hereby ORDERS that the Motion to Remand is GRANTED. All pending motions are hereby denied as moot.

This the 3rd day of October, 2007.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge