UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| MATTHEW DEVITO et al., Plaintiffs, | * | SECTION L |
| | * | |
|    versus | * | JUDGE ELDON E. FALLON |
| | * | |
| MERCK & CO., INC., Defendant, | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| Case No. 07-0562, | * | |
| | * | |
|            & | * | |
| | * | |
| DONALD R. PREUNINGER and FLORA N. | * | |
|   PREUNINGER, Plaintiffs, | * | |
| | * | |
|    versus | * | |
| | * | |
| MERCK & CO., INC., Defendant, | * | |
| | * | |
| Case No. 06-10305 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT MERCK & CO., INC.'S COMBINED OPPOSITION
TO PLAINTIFFS' MOTIONS TO RECONSIDER AND TO SET ASIDE STAY**

903613v.1

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................2

I.  THE PENNSYLVANIA PLAINTIFFS' WARRANTY CLAIMS ARE
    BARRED. ................................................................................................................. 3

    A.  The Court Properly Determined That Plaintiffs' Warranty Claims Are
        Stale. ............................................................................................................ 3

        1.  Plaintiffs' New "Last Tender" Argument Is Wrong. ................................. 4
        2.  Plaintiffs' New Equitable Estoppel Argument Fails. ................................ 5

    B.  Plaintiffs' Claims Are Barred Even if Timely. ........................................... 8

        1.  Pennsylvania Bars Implied Warranty Claims in Prescription
            Drug Cases. ................................................................................................ 8
        2.  Plaintiffs Have Not Alleged Representations that Amount to
            "Express Warranties" in the Prescription Drug Context. ......................... 10

II. THE PREUNINGERS' MENTAL INCAPACITY ARGUMENT STILL
    FAILS. ................................................................................................................... 12

CONCLUSION .......................................................................................................................15

903613v.1

# TABLE OF AUTHORITIES

Page

**Cases**

*Albertson v. Wyeth Inc.*,
  63 Pa. D. & C.4th 514 (2003) .................................................................................................. 10

*Bearden v. Wyeth*,
  482 F. Supp. 2d 614 (E.D. Pa. 2006) ....................................................................................... 10

*Chris Falcone, Inc. v. Ins. Co. of the State*,
  907 A.2d 631 (Pa. Super. Ct. 2006) ........................................................................................... 6

*Colacicco v. Apotex, Inc.*,
  432 F. Supp. 2d 514 (E.D. Pa. 2006) ....................................................................................... 10

*Connaught Laboratories, Inc. v. Lewis*,
  557 A.2d 40 (Pa. Commw. Ct. 1989) ............................................................................. 5, 6, 7, 9

*Ford v. Elsbury*,
  32 F.3d 931 (5th Cir. 1994) ........................................................................................................ 2

*Freeman v. Am. Motorists Ins. Co.*,
  53 S.W.3d 710 (Tex. App. 2001) ............................................................................................. 13

*Garber v. Ansell/Perry*,
  63 Pa. D. & C.4th 426 (2003) ........................................................................................... 4, 5, 11

*Grace v. Colorito*,
  53 S.W.3d 710 (Tex. App. 2001) ............................................................................................. 14

*Goldman v. Hartford Life and Accident Ins. Co.*,
  No. Civ.A. 03-0759, 2006 WL 861016 (E.D. La. Mar. 30, 2006) ............................................. 3

*Karim v. Finch Shipping Co.*,
  111 F. Supp. 2d 783 (E.D. La. 2000) ......................................................................................... 4

*Kenepp v. American Edwards Laboratories*,
  859 F. Supp. 809 (E.D. Pa. 1994) ............................................................................................ 11

*Lavespere v. Niagra Mach. & Tool Works, Inc.*,
  910 F.2d 167 (5th Cir. 1990) ...................................................................................................... 2

*Liljeberg Enters. Int'l, LLC v. Vista Hosp. of Baton Rouge, Inc.*,
  No. Civ.A. 04-2780, 2004 WL 2725965 (E.D. La. Nov. 24, 2004) .......................................... 3

*Makripodis v. Merrell-Dow Pharmaceuticals*,
  523 A.2d 374 (Pa. 1987) ............................................................................................................ 9

*Motiva Enters. LLC v. Wegmann*,
  No. 00-3096, 2001 U.S. Dist. LEXIS 3049 (E.D. La. Mar. 12, 2001) ................................... 2, 3

*Nationwide Insurance Co. v. General Motors Corp.*,
  625 A.2d 1172 (Pa. 1993) .......................................................................................................... 7

*Parkinson v. Guidant Corp.*,
  315 F. Supp. 2d 741 (W.D. Pa. 2004) ........................................................................................ 9

## TABLE OF AUTHORITIES
(continued)

**Page**

*Rosci v. Acromed*,
  669 A.2d 959 (Pa. Super. Ct. 1995) ................................................................................ 10

*Snyder v. Penn Central Transportation Co.*,
  442 A.2d 300 (Pa. Super. Ct. 1982) .................................................................................. 8

*Sowers v. Johnson & Johnson Medical Inc.*,
  867 F. Supp. 306 (E.D. Pa. 1994) .................................................................................... 11

*Speicher v. Dalkon Shield Claimants Trust*,
  943 F. Supp. 554 (E.D. Pa. 1996) ................................................................................. 6, 7

*Yancy v. United Surgical Partners International*,
  170 S.W.3d 185 (Tex. App. 2005) ............................................................................ 12, 13

903613v.1

**DEFENDANT MERCK & CO., INC.'S COMBINED OPPOSITION
TO PLAINTIFFS' MOTIONS TO RECONSIDER AND TO SET ASIDE STAY**

Pennsylvania and Texas plaintiffs challenge this Court's recent rulings dismissing their suits in whole or in part on statute of limitations grounds.  (*See* Docs. 12945, 12950.)  Plaintiffs Barrall, Ciabattoni, and Dusi, whose claims were brought as part of the *DeVito* complaint, argue that this Court erroneously dismissed their warranty claims.  They seek reconsideration of this Court's order dismissing their cases in full.  The Preuningers argue that mental incapacity makes their claims timely.  They have moved the Court to set aside the stay put in effect by Pretrial Order 30, but also ultimately seek reconsideration.  The Court should deny these motions.

Reconsideration is not granted lightly in the Fifth Circuit.  The moving party must have a legitimate reason for seeking it, other than just wanting a second bite at the apple.  Here, plaintiffs have no such legitimate reason.  There has been no error of fact or law, no new evidence, and certainly no manifest injustice.  Plaintiffs merely want a second chance to argue that their claims are timely, something that they already had the opportunity to do in their original opposition to Merck's motion for summary judgment.  Their motions should be denied for the following reasons.

*First*, the Court properly determined that the Pennsylvania plaintiffs' warranty claims are stale.  The four-year statute of limitations begins to run on the first tender of Vioxx, rather than the last, as Merck argued and this Court agreed.  Plaintiffs were silent in their opposition and only now contend otherwise, but their own authority confirms this Court's holding.  Similarly, plaintiffs' newfound equitable estoppel argument cannot support reconsideration because it was waived and because they have not adequately alleged facts to support such a claim.  The Court also properly determined that, even if timely, plaintiffs' warranty claims fail on the merits.

903613v.1

Pennsylvania bars implied warranty claims in prescription drug cases, and plaintiffs have not alleged representations that amount to express warranties in the prescription drug context.

*Second,* the Court properly rejected the Preuningers' claim for tolling based on mental incapacity. The Preuningers cite a new case as a basis for lifting the stay and, ultimately, reconsideration, but that case merely noted in dicta the *possibility* that in some cases a layperson could give testimony on whether someone was of "unsound mind." The case did not itself involve testimony by a layperson; nor did it set forth standards to determine the circumstances under which such a person could provide competent testimony to support tolling for mental incapacity. Thus, it does not stand for the proposition that Mrs. Preuninger's self-serving affidavit can save the Preuningers' untimely claims. But even if it did, plaintiffs still cannot get around the fact that their lone affidavit does not present the required *specific* evidence for a finding of "unsound mind," such as why plaintiff was unable to file his claim or why he is suddenly able to do so now.

## ARGUMENT

"A court's reconsideration of a prior order is an *extraordinary remedy* which should be used only sparingly." *Motiva Enters. LLC v. Wegmann*, No. 00-3096, 2001 U.S. Dist. LEXIS 3049 (E.D. La. Mar. 12, 2001) (emphasis added). Since the Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration, such motions are treated as either a motion to alter or amend judgment under Rule 59(e) or a motion for relief from judgment or order under Rule 60(b). *See Ford v. Elsbury*, 32 F.3d 931, 937 (5th Cir. 1994); *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). Because, in this case, the plaintiffs' motions were filed within ten days after the Court's November 8, 2007 Order, Rule 59(e) governs the question of reconsideration. *See Lavespere*, 910 F.2d at 173.

Courts in the Eastern District of Louisiana hold "that a moving party must satisfy at least one of the following criteria to prevail on a Rule 59(e) motion: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; and (4) the motion is justified by an intervening change in controlling law." *Wegmann*, 2001 U.S. Dist. LEXIS 3049 at *4-5.[1]

Plaintiffs here do not satisfy this standard.

## I. THE PENNSYLVANIA PLAINTIFFS' WARRANTY CLAIMS ARE BARRED.

Plaintiffs Barrall, Ciabattoni, and Dusi seek reconsideration of this Court's dismissal of their warranty claims. Plaintiffs advance several arguments in support of reconsideration. ***First,*** they argue that their claims are timely because: (1) the proper accrual date is the date of *last* tender, rather than first; and (2) their claims are saved by tolling under the equitable estoppel doctrine. ***Second,*** they argue that they have alleged viable claims for breach of implied and express warranties.

### A. The Court Properly Determined That Plaintiffs' Warranty Claims Are Stale.

Plaintiffs argue, for the first time, that their warranty claims are timely because counting begins from the ***last*** tender of Vioxx, as opposed to the first, and because the equitable tolling doctrine in any event saves their claims. Plaintiffs do not specify the grounds for reconsideration, but they presumably believe that their "motion is necessary to correct a manifest error of fact or law." It is not, and the Court should deny the motion.

---

[1] Again, although as a formal matter the Preuningers seek to set aside a stay, they do so with a view to securing reconsideration of this Court's judgment. Accordingly, the same standard should guide this Court's analysis of both motions. In any event, were the Court inclined to construe the Preuningers' motion as one to set aside an interlocutory order (*i.e.*, the stay) rather than a judgment, essentially identical considerations guide the analysis. *See, e.g.*, *Goldman v. Hartford Life and Accident Ins. Co.*, No. Civ.A. 03-0759, 2006 WL 861016, at *1 (E.D. La. Mar. 30, 2006) (court "appl[ied] the standards governing Rule 59(e) motions to [plaintiff's] motion for reconsideration" of interlocutory order); *Liljeberg Enters. Int'l, LLC v. Vista Hosp. of Baton Rouge, Inc.*, No. Civ.A. 04-2780, 2004 WL 2725965, at *1 (E.D. La. Nov. 24, 2004) (stay is an interlocutory order).

3

As a preliminary matter, plaintiffs did not present these arguments in their opposition to Merck's motion for summary judgment, and the Court should not consider them now. "Rule 59 should not be used to relitigate old matters, raise new arguments, or submit evidence that could have been presented earlier in the proceedings." *Karim v. Finch Shipping Co.*, 111 F. Supp. 2d 783, 784 (E.D. La. 2000). Even if plaintiffs' arguments were not waived, however, they cannot sustain plaintiffs' motion for the following reasons.

        1.    **Plaintiffs' New "Last Tender" Argument Is Wrong.**

For the first time, plaintiffs argue that the four-year statute of limitation period on warranty claims re-accrues with each purchase, and that the limitation periods in these cases thus began with the last tender of Vioxx. (Pls.' Mem. in Supp. of Pls.' Mot. to Reconsider, Pursuant to Fed. R. Civ. P. 59(e), this Court's Order Granting Summ. Jgmt. for Pls.' Wty. Claims ("Pa. Pls.' Mem.") at 7-8.) Plaintiffs argue their claims are thus timely because the *DeVito* complaint was filed February 1, 2007 and each of the plaintiffs alleges a tender of Vioxx after February 1, 2003 – that is, less than four years prior to the filing of the *DeVito* complaint. Plaintiffs have the math right but the law wrong.

*First,* plaintiffs misinterpret *Garber v. Ansell/Perry*, 63 Pa. D. & C.4th 426 (2003), relied on by Merck in its motion. In *Garber*, the plaintiff brought a lawsuit against manufacturers of latex gloves after she allegedly developed a reaction to the gloves. She used the gloves between 1979 and 1997 and filed suit in 1999. Thus, under plaintiffs' theory here, the plaintiff in *Garber* should have had timely claims on any gloves purchased after 1995. That is what plaintiffs argue, seizing on the following line from *Garber*: "Since the delivery date of the gloves is controlling for warranty claims, any delivery of gloves prior to June 7, 1995, are subject to the four-year statute of limitations." *Id.* at 434. (Pa. Pls.' Mem. at 8.) But as the holding of the case makes clear, the court dismissed the plaintiff's warranty claims as to ***all*** deliveries: "the defendants'

4

motion for summary judgment with regard to the plaintiff's warranty claim is hereby granted as the claims were not filed within the prescribed four-year statute of limitations." *Id.* at 435. Accordingly, it is plain that the court counted from first, rather than last tender; otherwise total dismissal of the warranty claims could not be sustained on statute of limitations grounds.[2]

***Second,*** plaintiffs' other case, *Connaught Laboratories, Inc. v. Lewis*, 557 A.2d 40 (Pa. Commw. Ct. 1989), simply does not resolve the issue one way or the other. In that case, the plaintiff began to suffer seizures after a series of three vaccinations. His mother filed suit and alleged breach of warranty (among other claims). But the plaintiff's case was filed long after four years had lapsed from even the last of the three vaccinations, prompting the court to hold that the claim was stale because "the statute [of limitations] began to run on the breach-of-warranty claim, *at the latest*, when Dr. Edwards administered the third dose of vaccine to Michael on October 5, 1978." *Id.* at 44 (emphasis added). The court did not resolve the tender issue because it did not need to – under any plausible accrual date, the claims were untimely. It thus does not undermine the holding in *Garber* that the first tender date triggers the limitation period for warranty claims.

In sum, plaintiffs have failed to show "a manifest error of fact or law" in this Court's holding that a warranty claim accrues on the date of first tender, or any other basis on which to grant reconsideration. The motion should thus be denied on this ground.

2. **Plaintiffs' New Equitable Estoppel Argument Fails.**

Also for the first time, plaintiffs oppose summary judgment on equitable estoppel grounds. (Pa. Pls.' Mem. at 6-7.) This Court neither failed to address equitable estoppel nor committed an error of law in applying it; rather, plaintiffs failed to raise it. There is thus no basis

---

[2] *Garber* also supports the conclusion, discussed in Section I.B.2 below, that federally mandated warnings on boxes or in promotional materials cannot constitute express warranties under Pennsylvania law, and it dismissed the warranty claims on that alternative ground as well. 63 Pa. D. & C. 4th at 434.

5

for reconsideration. *See Chris Falcone, Inc. v. Ins. Co. of the State*, 907 A.2d 631, 638 (Pa. Super. Ct. 2006) ("Defenses to the statute of limitations, such as estoppel, agreement, agency, apparent authority, fraud, or concealment are waiveable defenses and must be raised in a reply to new matter asserting the statute of limitations as an affirmative defense.").

Even if plaintiffs could raise equitable estoppel now, their argument is unavailing. Plaintiffs concede, as they must, that the discovery rule does not apply to their warranty claims. (Pa. Pls.' Mem. at 6.) But the equitable estoppel doctrine is not available either.

In *Connaught* – the sole case relied upon by plaintiffs in support of their estoppel argument – the court rejected an equitable estoppel claim. The plaintiff argued that equitable estoppel saved a warranty claim because doctors had repeatedly told the plaintiff's mother that her son's seizures could not have been caused by the vaccinations they had administered. The court rejected the argument. "In our opinion," the court held, "the estoppel doctrine is relevant only in those cases in which the defendant's conduct causes the plaintiff to deviate from his inquiry." 557 A.2d at 43. Even allowing for the possibility that the defendants had tried to conceal information, the court held that equitable tolling was unavailable because the mother had received an information sheet detailing the possible side effects of DPT vaccinations.

The only case ever to cite *Connaught*'s suggestion that equitable estoppel is theoretically available in warranty cases also rejected the claim for estoppel. In *Speicher v. Dalkon Shield Claimants Trust*, 943 F. Supp. 554 (E.D. Pa. 1996), the Eastern District of Pennsylvania made clear that a plaintiff seeking equitable estoppel in a warranty case must do more than allege false or fraudulent statements by a defendant. Rather, he or she must show that the defendant made "an affirmative inducement to plaintiff to delay filing the cause of action." *Id.* at 558. Thus, the court declined to apply it, even though plaintiffs alleged that a manufacturer of intrauterine

6

devices had hidden "information from the public that would show that the Dalkon Shield IUD could cause infections" because such allegations, even if true, did not amount to such an affirmative inducement. *Id.* at 558. The same is true here – plaintiffs have attempted to allege fraud precisely along the lines identified in *Speicher*, *see, e.g.*, DeVito Compl. ¶¶ 52-53, 64-66 (Merck allegedly concealed information), but there is no allegation that Merck made any affirmative inducement aimed at delaying their efforts to file suit.

In any event, equitable estoppel should not be available to plaintiffs in warranty cases. The very nature of a warranty claim is that the statements comprising the warranty are false. Thus, embedded in every warranty claim is a claim that the defendant concealed or misrepresented some fact – the basis claimed for equitable estoppel by plaintiffs here. To hold that a breach of warranty tolls the limitation period until the plaintiff becomes aware of the breach would subvert the warranty accrual rule that the limitations period accrues upon delivery "even if the breach is not apparent until after delivery has been tendered." (*DeVito* Order, Doc. 12,945, at 15 (quoting *Nationwide Insurance Co. v. General Motors Corp.*, 625 A.2d 1172, 1174 (Pa. 1993)).) In light of this fact, it is unsurprising that few other Pennsylvania cases, if any, have ever entertained a claim for equitable estoppel or fraudulent concealment tolling in a warranty case.

Even if equitable estoppel were available, however, it would not save plaintiffs' claims. Unlike the discovery rule, equitable estoppel is not a tolling doctrine. Again according to plaintiffs' own case, "[t]he discovery rule effectively tolls the statute of limitations, but the estoppel doctrine precludes the defendant from raising the statute of limitations as a defense." *Connaught*, 557 A.2d at 43 n.2. That disability is removed once a plaintiff "learn[s] of the misstatements but nevertheless fail[s] to pursue his cause without a justifiable excuse." *Id.* at 43-

7

44 (citing *Snyder v. Penn Central Transportation Co.*, 442 A.2d 300 (Pa. Super. Ct. 1982)). As this Court has already held, these "plaintiffs cannot be said to have pursued the cause of [their] injur[ies] with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." (*DeVito* Order at 15.) Each plaintiff had knowledge of his or her claims no later than September 30, 2004. Each had enough time to file suit after that date but before four years had run from the first tender of Vioxx. They failed to do so, and the warranty claims are untimely even if equitable estoppel applies.

### B. Plaintiffs' Claims Are Barred Even If Timely.

Plaintiffs also attack this Court's alternative holding that, even if timely, plaintiffs' warranty claims fail on the merits. Again, plaintiffs fail to specify a ground for reconsideration, but presumably they believe that reconsideration "is necessary to correct a manifest error of fact or law." Plaintiffs' arguments again fall well short of this high standard.

#### 1. Pennsylvania Bars Implied Warranty Claims In Prescription Drug Cases.

This Court properly held that Pennsylvania bars implied warranty claims in prescription drug cases. Plaintiffs challenge this, relying again on *Connaught*, in which a Pennsylvania court entertained a warranty claim based on an argument that a DPT vaccine caused the plaintiff to have seizures. (Pa. Pls.' Mem. at 3-5.) Plaintiffs' argument has no merit.

*First,* plaintiffs' lone authority cannot resolve the issue because the *Connaught* court did not consider whether warranty claims can be raised in prescription drug cases. It is not even clear that the warranty claims in *Connaught* were *implied* warranty claims – the only sort this Court found to be barred in prescription drug cases – rather than *express* warranty claims, which are barred for other reasons detailed below. Indeed, in *Connaught*, the plaintiff's mother alleged

8

that she had read and received an information sheet detailing the possible side effects of the vaccine, suggesting an express warranty fact pattern.[3]  *See* 557 A.2d at 44.

*Second,* plaintiffs' efforts to distinguish the on-point cases relied on by this Court fail. This Court relied on *Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 741 (W.D. Pa. 2004) and *Makripodis v. Merrell-Dow Pharmaceuticals*, 523 A.2d 374 (Pa. 1987) (*DeVito* Order at 16). Plaintiffs would distinguish *Parkinson* on the basis that it involved medical devices rather than prescription drugs, and *Makripodis* on the basis that it applies to pharmacists and did not erect a "blanket prohibition of warranty law." (Pa. Pls.' Mem. at 3-5.)  These efforts to distinguish the cases fail.

*Parkinson* specifically noted that "Pennsylvania courts have held that the nature of prescription drugs precludes claims for breaches of implied warranty for similar reasons as *comment K to § 402A* precludes a finding that such drugs are 'unreasonably dangerous.'"  315 F. Supp. 2d at 752-753.  The fact that the case was a prescribed medical device case cannot obscure the underlying logic that justified its holding.  That logic applies directly here.  Indeed, the *Parkinson* court merely ***extended*** the Pennsylvania doctrine prohibiting implied warranty claims already in place for prescription drugs to the realm of prescribed medical devices.  *Id.* at 753.

*Makripodis* similarly announced as the basis for its holding that "the very nature of prescription drugs themselves precludes the imposition of a warranty of fitness for ordinary purposes, as each individual for whom they are prescribed is a unique organism who must be examined by a physician who is aware of the nature of the patient's condition as well as the medical history of the patient."  523 A.2d at 377.  In applying that principle, it reached the limited holding that a pharmacy only warrants the five items cited by plaintiffs.  (Pa Pls.' Mem.

---

[3]  The question whether plaintiffs' allegations actually made out a valid express warranty claim appears neither to have been raised nor reached in that case.

9

at 4.) But *Makripodis* – like *Parkinson* and **unlike** *Connaught* – actually addressed the issue whether implied warranties are available in prescription drug cases. Perhaps for this reason, *Makripodis* has been understood by other courts to bar implied warranty claims in prescription drug cases. *E.g.*, *Rosci v. Acromed*, 669 A.2d 959, 968-69 (Pa. Super. Ct. 1995); *Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514, 548-49 (E.D. Pa. 2006); *see also Albertson v. Wyeth Inc.*, 63 Pa. D. & C.4th 514, 536 n.6 (2003) (no implied warranty for prescription drugs). *Connaught*, however, has never been cited to support the contrary proposition.[4]

There is thus no reason to question this Court's sound reasoning that plaintiffs' implied warranty claims are barred as matter of Pennsylvania law, and the motion for reconsideration should be denied on this ground.

### 2. **Plaintiffs Have Not Alleged Representations That Amount To "Express Warranties" In The Prescription Drug Context.**

This Court also properly held that the facts alleged by plaintiffs do not amount to an allegation of an "express warranty" as a matter of Pennsylvania law. Plaintiffs dispute this by pointing to cases that do not involve prescription drugs. (Pa. Pls.' Mot. at 9-10.) Plaintiffs' cases thus cannot grapple with the holding of this case and of several other cases arising under Pennsylvania law – that any statement Merck is compelled to make as a matter of federal law cannot properly be considered a "basis of the bargain" or, by extension, an express warranty.

*First,* plaintiffs' own case supports this Court's holding. In *Garber* – upon which plaintiffs mistakenly rely in support of their last-tender argument – the court alternatively

---

[4]  Plaintiffs' attempt to discredit *Bearden v. Wyeth*, 482 F. Supp. 2d 614 (E.D. Pa. 2006) (DeVito Order at 16) is similarly unpersuasive. Lest there be any doubt, the *Bearden* court was construing **Pennsylvania** law when addressing the matter of implied warranties in prescription drug cases. The statement was made in the context of an extensive discussion of the differences in product liability laws, resulting in a finding of a true conflict between the laws of Arkansas and those of Pennsylvania. *Id.* at 618 n.5. Accordingly, the analysis (though short) is not *dicta*, as urged by plaintiffs (Pa. Pls.' Mem. at 5), but part of a conflicts analysis essential to the holding that Arkansas law governed the case.

10

dismissed the plaintiff's warranty claims on the grounds that "labels . . . controlled by federal law" are "not directed at consumers" and not aimed at "inducing purchases," and thus are "not a part of the 'basis of the bargain' between the defendants and potential buyers."  63 Pa. D. & C.4th at 434.  Here too, the Vioxx label was controlled by federal law and not directed at consumers, and therefore cannot be the basis of a claim for express warranty.

*Second,* plaintiffs' attempts to distinguish the authority relied upon by this Court fail.  Plaintiffs argue that *Sowers v. Johnson & Johnson Medical Inc.*, 867 F. Supp. 306 (E.D. Pa. 1994) and *Kenepp v. American Edwards Laboratories*, 859 F. Supp. 809 (E.D. Pa. 1994) do not govern their claims because the representations in those cases were not directed at consumers.  (Pa. Pls.' Mot. at 9-10.)  Because representations made by drug companies to consumers are strictly governed by federal regulations, however, the same reasoning in those cases applies here, and plaintiffs' efforts to distinguish the cases fail.

Indeed, plaintiffs' arguments are again thwarted by their own authority.  *Garber* agreed with the defendant in that case that "warranties are controlled by federal law and the labeling ***and promotional materials*** cannot serve as the basis for a breach of express warranty claim."  63 Pa. D. & C.4th at 434 (emphasis added).  Furthermore, *Garber* itself relied upon *Sowers*, which plaintiffs urge has no applicability here.  Plaintiffs would thus have this Court accept the parts of *Garber* they like but discard those they do not (including, as described above, the ultimate holding).

For its part, *Sowers* was not limited in the manner that plaintiffs' argument would suggest.  The plaintiffs there based their claims on "defendants' labels, material safety data sheets, and ***promotional materials***," but the court granted defendants' motion for summary judgment on these ostensible express warranty claims.  867 F. Supp. at 314 (emphasis added).

11

Here, as in *Sowers*, plaintiffs point to no statements – other than those in the package inserts and/or labels that cannot be the basis of an express warranty claim – that could be characterized as a "warranty" that Vioxx is safe and effective. Finally, all of the Vioxx direct-to-consumer advertisements and/or promotional materials could not be part of the "basis of the bargain," as plaintiffs claim, because consumers themselves could not choose to purchase Vioxx – they had to have a doctor make that decision for them.

For these reasons, this Court's holdings that plaintiffs' warranty claims were untimely and lack merit were sound and should not be reopened.

## II.     THE PREUNINGERS' MENTAL INCAPACITY ARGUMENT STILL FAILS.

The Preuningers' argument likewise fails. Plaintiffs argue that the Court should set aside the stay as to their case to permit them to file a motion to reconsider. (Pls.' Mot. to Set Aside Stay (PTO 30) ("Tex. Pls.' Mem.").) As set forth below, reconsideration is unwarranted in this case because plaintiffs have not satisfied any of the Fed. R. Civ. P. 59(e) criteria. There has been no change in controlling law, no new evidence discovered, and certainly no manifest injustice. Plaintiffs simply want the opportunity to include an additional case that they failed to present in their initial response. However, that case does not change the result here. Accordingly, lifting the stay would be an exercise in futility, and plaintiffs' motion should be denied.

*First*, as the sole basis of their motion, plaintiffs cite to *dicta* from a single case, *Yancy v. United Surgical Partners International.*, 170 S.W.3d 185, 192 (Tex. App. 2005), for the principle that "a lay witness with a factual basis for her opinion on mental capacity, is a competent witness" (Tex. Pls.' Mem. at 2-3).[5] This case simply does not save plaintiffs' claim.

---

[5]     As a preliminary matter, plaintiffs assert that the Court "refused to consider Mrs. Preuninger's Affidavit about her observations of her husband." (Tex. Pls.' Mot. at 3.) However, this assertion is wholly unsupported by the language of the Court's Order. To the contrary, the Order recited the Texas requirement of "specific evidence" *or* "fact-based expert opinion" to show unsound mind and found that plaintiffs failed to satisfy this burden.

12

As discussed in Merck's reply memorandum in support of summary judgment ("Reply"), in order to prevail on an unsound mind tolling theory under Texas law, a plaintiff must produce either "(1) *specific evidence* that would enable the court to find that he did not have the mental capacity to pursue the litigation or (2) a fact-based expert opinion to that effect." *Freeman v. Am. Motorists Ins. Co.*, 53 S.W.3d 710 (Tex. App. 2001) (emphasis added).

Here, as discussed in Merck's Reply, even if Mrs. Preuninger's affidavit is considered, plaintiffs have failed to produce the required "specific evidence" in this case. As the Court knows, plaintiffs have no fact-based expert opinion finding Mr. Preuninger of unsound mind. The only affidavit they do have – written by one of the plaintiffs – does not even state that Mr. Preuninger was unable to file suit during the time since his heart attack. And more importantly, the affidavit does not address what circumstances have changed to allow him only now to file suit. According to the affidavit, he continues to be disabled in the same way he has been since May 29, 2000. (Aff. of Flora Preuninger at 4.) Without more, the affidavit simply does not suffice to meet the rigorous "unsound mind" evidence requirement.

*Second*, the *Yancy* case in no way stands for the proposition that a layperson *plaintiff's* testimony is sufficient evidence to defeat summary judgment. While the court in *Yancy* declined to "foreclose the possibility" that "a nurse or even a layperson" *could* give competent summary judgment proof, 170 S.W.3d at 192, the situation where the only such layperson is also a *plaintiff* is substantially different for obvious reasons. The very viability of Mrs. Preuninger's own claim (as well as those of her husband) depends upon a theory of tolling that only her own statement supports. Even if the Court were prepared to accept the most plaintiff-friendly reading of *Yancy*, it should at least recognize the difference between a situation where a neutral

---

(*Preuninger* Order, Doc. 12,950, at 6, n.5.) Nowhere in the Order did the Court state that it did not consider Mrs. Preuninger's affidavit. If the Court did already consider the affidavit in arriving at its decision, plaintiffs have presented *no* relevant reason for reconsideration.

13

layperson, such as a nurse, reports on the behavior of a plaintiff and the situation presented here, where an ***interested party*** reports on such behavior.  Even the dicta of *Yancy* does not reach the latter case.  Merck knows of no case – and plaintiffs have cited none – where a Texas court has denied a statute of limitations summary judgment motion purely on the basis of a single affidavit of one of the parties.[6]

In sum, nothing about the circumstances of this case have changed.  Plaintiffs have still failed to provide sufficient evidence for a finding of unsound mind, whether or not Mrs. Preuninger's affidavit is considered.  Therefore, the Court should not set aside the stay to allow plaintiffs an opportunity for reconsideration.

---

[6]  As the Court knows, in *Grace v. Colorito*, 53 S.W.3d 710 (Tex. App. 2001) – a case where the plaintiff offered only her own testimony in support of her claim for unsound mind – the court found such testimony insufficient.

14

## CONCLUSION

For the foregoing reasons, plaintiffs' claims are stale, and the Court should deny plaintiffs' motions.

          Respectfully submitted,

          */s/ Dorothy H. Wimberly*
          Phillip A. Wittmann, 13625
          Dorothy H. Wimberly, 18509
          STONE PIGMAN WALTHER WITTMANN L.L.C.
          546 Carondelet Street
          New Orleans, LA 70130

          Defendants' Liaison Counsel

          And

          John H. Beisner
          Jessica Davidson Miller
          Geoffrey M. Wyatt
          O'MELVENY & MYERS LLP
          1625 Eye Street, NW
          Washington, DC 20006

          Douglas R. Marvin
          WILLIAMS & CONNOLLY LLP
          725 Twelfth St., N.W.
          Washington, DC 20005

          Attorneys for Merck & Co., Inc.

903613v.1

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing *Defendant Merck's Combined Opposition to Plaintiff's Motions to Reconsider and Set Aside Stay* has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 11th Day of December, 2007.

                 */s/ Dorothy H. Wimberly*
                 Dorothy H. Wimberly, 18509
                 STONE PIGMAN WALTHER
                 WITTMANN L.L.C.
                 546 Carondelet Street
                 New Orleans, Louisiana  70130
                 Phone:  504-581-3200
                 Fax:     504-581-3361
                 dwimberly@stonepigman.com

                 Defendants' Liaison Counsel