## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  VIOXX® | § | **MDL Docket No. 1657** |
| | § | |
| **PRODUCTS LIABILITY LITIGATION** | § | **SECTION L** |
| | § | |
| **This Document Relates To All Cases** | § | **JUDGE FALLON** |
| | § | |
| | § | **MAGISTRATE JUDGE KNOWLES** |

### MEMORANDUM IN SUPPORT OF CERTAIN PLAINTIFFS' AND THEIR COUNSELS' EMERGENCY MOTION FOR (1) CLARIFICATION AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND (2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

**MAY IT PLEASE THE COURT:**

Walter Umphrey, Provost Umphrey Law Firm, John Eddie Williams, Williams Kherkher Hart Boundas, LLP, Drew Ranier, Ranier, Gayle & Elliot LLP, Mikal Watts, Watts Law Firm LLP, Grant Kaiser, The Kaiser Firm, LLP, Richard Mithoff, Mithoff Law Firm, Kathy Snapka, Snapka, Turman & Waterhouse, LLP, Kenneth T. Fibich and Sara Fendia, Fibich, Hampton & Leebron, LLP, Tommy Jacks, Jacks Law Firm, Douglas Allison, Law Offices of Douglas Allison, Jack Modesett, Law Offices of Jack Modesett, David Matthews, Matthews & Associates, and their clients ("Movants") respectfully submit this Memorandum in Support of certain Plaintiffs' and their Counsels' Emergency Motion for (1) Clarification and/or Modification of Pretrial Order No. 31 (Registration of Claims) and (2) Declaratory Judgment that Certain Provisions of the Settlement Agreement are Unenforceable.

Movants file this motion on short notice because deadlines for complying with the terms of the Master Settlement Agreement (MSA) are fast approaching.  If the settlement is to take ef-

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 1 of 25

fect, tens of thousands of claimants or their lawyers must file registration affidavits by January 15, 2008, submit completed enrollment documents including signed releases by March 1, 2008, and submit claims packages with supporting medical records by July 1, 2008.  Movants' multiple conferences with counsel for Merck, Negotiating Plaintiffs' Counsel, and the MDL Plaintiffs' Executive Committee before filing this motion resulted in an agreement that the Registration Affidavit should be modified to delete the affirmations in question, but we were unable to reach agreement on all relief requested.  Efforts to resolve these matters by agreement will continue. Movants conferred privately with the NPC in Philadelphia at the VIOXX® Settlement Informational Meeting sponsored by the NPC on November 19, 2007, publicly with the NPC in Houston at the Informational Meeting on November 27, 2007, in several telephonic conferences and personal meetings in New Jersey with members of the NPC and counsel for Merck, and over the telephone with Defendant's Liaison Counsel and representatives of Plaintiffs' Executive Committee and Plaintiffs' Steering Committee.

Movants request the following specific relief:

1. A declaration that the Settlement Agreement empowers the Court to modify provisions that are prohibited or unenforceable because they conflict with state bar rules in Texas and other states.

2. A revision of PTO 31 excising the affirmation relating to settlement participation from the Registration Affidavit and agreement to all terms of the settlement;[1]

3. A declaration that § 1.2.8.1 is prohibited and unenforceable under the state bar rules of all states because it prevents lawyers from giving clients the benefit of their independent professional judgment and candid advice, as required by Rule 2.1 of the Model Rules of Professional Conduct.

---

[1]     Through our meet and confer sessions, we did reach agreement that the Registration Affidavit should be modified to delete the affirmations in question, but we were unable to reach total agreement on the relief requested.

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 2 of 25

4. A declaration that § 1.2.8.2 is prohibited and unenforceable under the state bar rules of all states because it impermissibly restricts the right to practice law, in violation of Rule 5.6 of the Model Rules of Professional Conduct.

5. To set a date certain by which final settlement payments shall be made and/or make other similar equitable provisions.

6. To declare that notwithstanding any provision of the Settlement Agreement purporting to require an assessment of "up to 8%," that *as to counsel* that entered contracts in compliance with PTO 19, those contracts shall be honored, binding, and controlling as to any assessment.

## I.     INTRODUCTION AND PROCEDURAL BACKGROUND

On November 9, 2007, Merck and Negotiating Plaintiffs' Counsel (NPC) announced in open court a Settlement Agreement that would create a program to resolve the vast majority of VIOXX® cases.  Later that day, the Court entered Pretrial Order No. 31 (Registration of Claims) (document 12965) adopting and implementing the Settlement Agreement.

## II.    THE SETTLEMENT AGREEMENT EMPOWERS THE COURT TO MODIFY PROVISIONS WHICH ARE "PROHIBITED OR UNENFORCEABLE"

Section 16.4.2 of the Settlement Agreement governs the treatment and effect of provisions which are "prohibited or unenforceable to any extent or in any particular context."  It states, *inter alia*, that the invalidity of any provision "shall not invalidate any other provision of this agreement."  It also states that "if the Chief Administrator … determines that any provision of this Agreement is prohibited or unenforceable to any extent or in any particular context but in some modified form would be enforceable, the Chief Administrator … shall have the power to, and shall, [] modify such provision for the purposes of such proceeding … to the minimum extent necessary so that such provision, as so modified, may then be enforced in such proceeding."

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 3 of 25

Finally, § 16.4.2 obligates Merck and the NPC to negotiate in good faith to resolve problems created by invalid provisions.

Normally, a court has no power to modify the terms of a settlement agreement. For example, in a class action, a court may only approve a settlement as written or reject it. *Evans v. Jeff D.*, 475 U.S. 717; 106 S. Ct. 1531; 89 L. Ed. 2d 747 (1986). This settlement is different. Merck and the NPC have authorized the Court to modify invalid provisions for the purpose of facilitating their enforcement, subject to the condition that the modification be minimal, an undefined term that appears to express the hope that any modification will be as fully in keeping with the spirit of the Settlement Agreement as possible.

## III.   THE AFFIRMATION REQUIREMENT IN EXHIBIT A TO PRETRIAL ORDER NO. 31 SHOULD BE STRICKEN BECAUSE IT EXCEEDS THE TERMS OF THE SETTLEMENT AGREEMENT

Pretrial Order No. 31 orders counsel of record in MDL 1657, *In re: VIOXX® Products Liability Litigation* (and all other counsel that have an "Interest" in the claims), to register all VIOXX® claims in which they have an interest by January 15, 2008. The order mandates that registration be in the form of a Registration Affidavit and its Exhibit 1, as set forth as Exhibit A to PTO 31.

PTO 31's mandated Registration Affidavit requires that counsel sign one – and only one – of the following statements:

1.   I, _____, on behalf of myself and all other counsel with an Interest in the cases listed in Exhibit 1, agree to the terms of the MSA and will recommend *all* Plaintiffs and/or Tolling claimants listed on Exhibit 1 should enroll in the Program.

OR

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 4 of 25

2.   I, _____, do not agree to the terms of the MSA and will not rec-
ommend that *any* of the Plaintiffs and/or Tolling claimants listed on Exhibit 1 en-
roll in the Program.

Registration Affidavit at 1 (italics added).

The requirement of signing one of these statements exceeds the terms of the Settlement

Agreement and directly contradicts it.  Section 1.1 of the Settlement Agreement states plainly

that "[the] registration requirement will apply regardless of … (ii) whether [] counsel intend[s] to

enroll any [Eligible] Claims in the Program."

The requirement of affirming a recommendation of 100% participation by Eligible

Claimants rests with Enrolling Counsel, not Registering Counsel, under § 1.2.8.1 of the Settle-

ment Agreement, which states: "By submitting an Enrollment Form, the Enrolling Counsel af-

firms that he has recommended …to 100% of the Eligible Claimants represented by such Enroll-

ing Counsel that such Eligible Claimants enroll in the Program."  It seems that the affidavit may

have been intended to appear in the Enrollment Form, not the Registration Affidavit.

There is no need for the affirmation, in any event.  The purpose of Registration is to en-

able the Court, Merck, and others to catalogue all claims.  The Registration Affidavit accom-

plishes this without the affirmation.

Finally, the affirmation requires conduct that, as a practical matter, is impossible.  Before

advising any client to participate in the Program, a lawyer must evaluate the client's options.

Some lawyers represent more than 1000 clients.  With the holiday season here, the difficulty of

evaluating so many clients' cases by January 15, 2008, the registration deadline, is patent. And in

any event, it may not be possible to choose between recommending the settlement to 100% of

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 5 of 25

clients or none of them.  The settlement may be in the best interest of some -- but not all -- of a lawyer's clients, and the affirmation should reflect that reality or be deleted entirely.

## IV.  THE AFFIRMATION REQUIREMENT OF THE SETTLEMENT AGREEMENT IS "PROHIBITED OR UNENFORCEABLE" IN ALL STATES BECAUSE IT PREVENTS ATTORNEYS FROM GIVING CLIENTS THEIR INDEPENDENT PROFESSIONAL ADVICE

By entering into the Settlement Agreement and submitting it to this Court, Merck extended a settlement offer to all Eligible Claimants.  In keeping with state bar rules in effect in all jurisdictions, counsel must communicate Merck's offer to their clients, explain its terms, and offer their candid advice.  Section 1.2.8.1 of the Settlement Agreement prevents lawyers from performing the last service.  It is therefore prohibited or unenforceable under the law of all 50 states.

To understand this, one must first see that § 1.2.2.1 requires Eligible Claimants to have Enrollment Forms submitted by their Counsel.  Section 1.2.4 then states that by submitting an Enrollment Form, a lawyer becomes Enrolling Counsel and agrees to be bound by all of the terms and conditions of the Settlement Agreement.  By enrolling a single client in the settlement, then, a lawyer incurs the obligations and responsibilities the Settlement Agreement contains.

Section 1.2.8.1 of the Settlement Agreement sets out one of these responsibilities.  It requires each Enrolling Counsel to advise 100% of the lawyer's eligible clients to participate in the Program and to affirm that the lawyer has done so in the Enrollment Form.  No states' law allows a lawyer to make a contractual commitment like this.  Rule 2.1 of the ABA Model Rules of Professional Responsibility, a version of which is in force in every jurisdiction, requires every lawyer to give every client the benefit of the lawyer's independent professional judgment and to render candid advice.  The *Restatement (Third) of the Law Governing Lawyers* also recognizes

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 6 of 25

this duty.  The essence of independent professional judgment is that each client must be counseled accordingly.  As the ABA comment to Rule 2.1 puts it: "A client is entitled to straightforward advice expressing the lawyer's honest assessment." ABA Annotated Model Rules of Professional Conduct, Rule 2.1, Comment [1] (Fifth Ed.).

In an important respect, the duty to exercise independent judgment is unique.  It cannot be waived or qualified.  It is unlike the duty to avoid interest conflicts, which clients can generally waive with disclosure and informed consent.  It goes without saying that a lawyer cannot waive this duty unilaterally either.

Section 1.2.8.1 of the Settlement Agreement appears to compromise the duty to exercise independent judgment by requiring a lawyer who would enroll even a single client in the Program to recommend participation to all clients.

First, by doing so, a lawyer may expose him- or herself to the possibility of a lawsuit by a client who, after settling, became disgruntled.  Under a developing body of law that allows mass tort clients to recover fees without proving harm in breach of fiduciary duty cases, all lawyers – not just Movants – who enroll clients in the Program could face threatened suits with significant liability risks.

Second, a lawyer who honestly believes today that the proposed settlement is good for a client must keep open the option of changing his or her mind in the future, when more information about the settlement or his client becomes available.  Section 1.2.8.1 would prevent a lawyer from revising his or her opinion of the settlement at the time the Registration Affidavit is due in light of new information learned thereafter.

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 7 of 25

Third, all states' bar rules prohibit lawyers from allowing third parties to guide their judg-ment.  See *Restatement (Third) of the Law Governing Lawyers* § 134, Comment *d* (2007) ("The principle that a lawyer must exercise independent professional judgment on behalf of the client [] is reflected in the requirement of the lawyer codes that no third person control or direct a law-yer's professional judgment on behalf of a client.").  Obviously, the Settlement Agreement, which allows Merck to dictate the advice a lawyer will offer, is improper in all states.

As explained in Part II, the Settlement Agreement empowers the Court to modify provi-sions that are prohibited or unenforceable.  Because § 1.2.8.1 is improper, the Court can correct the problems it creates by modifying it.  At the same time, the Court can also protect Merck's legitimate interest in knowing (1) how many Eligible Claimants are participating in the Program and (2) that plaintiffs' attorneys are not undermining the Program through unsavory practices. The Enrollment documents already accomplish (1) by requiring Enrolling Counsel to report the identities of any clients Enrolling Counsel knows or believes will not participate in the Program. The Court can accomplish (2) by replacing the existing language in § 1.2.8.1 with language re-quiring Enrolling Counsel to use his or her best efforts to ensure participation by all Eligible Claimants for whom, in counsel's opinion, the Program affords the best option.

Finally, the Court should insert a reference to Model Rule 2.1 in Section 1.2.8.2 of the Agreement.[2]  That section already references Model Rules 1.16 and 5.6; adding Rule 2.1 would reinforce that Enrolling Counsel is not abdicating responsibility to exercise independent profes-sional judgment on behalf of each of his clients.

---

[2]     Alternatively, the Court should expressly state that nothing in the Settlement Agreement negates a lawyer's duties to his clients under Rule 2.1.

V.   **THE WITHDRAWAL REQUIREMENT IN § 1.2.8.2 OF THE SETTLEMENT AGREEMENT IS PROHIBITED OR UNENFORCEABLE IN ALL STATES BECAUSE IT IMPOSES AN IMPERMISSIBLE RESTRICTION ON THE RIGHT TO PRACTICE LAW**

Model Rule 5.6 (Restrictions on Right to Practice) forbids a lawyer from "offering or making: … an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties."  Section 13(2) of the *Restatement (Third) of the Law Governing Lawyer*s states the prohibition even more plainly: "In settling a client claim, a lawyer may not offer or enter into an agreement that restricts the right of the lawyer to practice law, *including the right to represent or take particular action on behalf of other clients*."  Comment *b* adds that settlement agreements that violate § 13(2) "are void and unenforceable."

All states' bar rules contain this prohibition.  For example, Texas Disciplinary Rule 5.06(b) (Restrictions on Right to Practice) provides: "A lawyer shall not participate in offering or making ... an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a suit or controversy…."  The Official Comment to TDR 5.06 makes it clear that "Paragraph (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client."

Rule 1.16, cited in the agreement, prohibits the blanket withdrawals mandated in the agreement.  A client's informed and conscientious decision to reject the settlement is not among the justifications given in the rule for withdrawal.  In addition, the fundamental protection imposed by the rule is that the withdrawal "can be accomplished without material adverse effect on the interests of the client." Rule 1.16 (b) (1).  By prohibiting the client's chosen counsel from continuing representation and requiring said counsel to "cause" all Enrolling Counsel to do the same, it is difficult to imagine how Rule 1.16 can be observed.  In effect, every knowledgeable

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 9 of 25

and experienced lawyer would be prohibited from continuing the representation of any client who had good reason for rejecting the settlement.  Simply citing the rule cannot substitute for actual guidance on how this can be achieved ethically.

Advisory opinions issued by the ABA and state bar committees uniformly enforce this prohibition.  They also reject strategic attempts to circumvent it.  For example, ABA Formal Opinion 93-371 (attached as Exhibit 1) examined a restriction on the right of plaintiffs' counsel to represent present clients and future claimants against a defendant that would have been imposed as part of a global settlement of some of counsel's existing clients' claims.  It found that the proposed restriction could not be demanded or accepted without violating Model Rule 5.6(b).  Relying on TDR 5.06(b), Texas Professional Ethics Committee Opinion 505 (1994) (attached as Exhibit 2) prohibited a settlement agreement that would have barred plaintiffs' counsel from soliciting clients with claims against the defendant in the future.  The opinion also condemned a provision of the settlement that would have discouraged plaintiffs' counsel from referring clients or assisting other lawyers by sharing fees with them.  Such a prohibition is contained in § 1.2.8.2 of the Settlement Agreement.

Section 1.2.8.2 of the Settlement Agreement restricts the right to practice in ways that are plainly improper.  First, it requires Enrolling Counsel to withdraw from representing any client who fails to submit an Enrollment Form.  This contravenes the *Restatement (Third) of the Law Governing Lawyer*s, which prohibits a lawyer from "offer[ing] or enter[ing] into an agreement that restricts … [a lawyer's] right to represent or take particular action on behalf of other clients."  Second, § 1.2.8.2 also requires Enrolling Counsel to forego any fee interest in cases involving clients who decline to enroll in the Program.  This directly contravenes Texas Opinion

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 10 of 25

505.  Because all jurisdictions enforce the ban on practice restrictions zealously, Movants submit that all other jurisdictions would follow Texas on this point.

Finally, the last provision of § 1.2.8.2 appears to require Enrolling Counsel to interfere with contracts dissenting clients have with other attorneys.  It states that Enrolling Counsel must "forego any Interest in such Eligible Claimant…." and cause "each other counsel with an Interest …to do the same."  It would be hard to imagine a plainer example of interference with a contract.

Perhaps recognizing some of the difficulties § 1.2.8.2 creates, Merck and the NPC attempted to avoid any ethical impropriety by stating in § 1.2.8 that "nothing in this Agreement is intended to operate as a 'restriction' on the right of any Claimant's counsel to practice law within the meaning of the equivalent to Rule 5.6(b) of the ABA Model Rules of Professional Conduct in any jurisdictions in which Claimant's Counsel practices or whose rules may otherwise apply."  This precatory language is insufficient.  The parties' statement of intent does not change the fact: § 1.2.8.2 unlawfully restricts the right to practice in several respects if enforced as written, and the Court should issue a declaration to this effect.

The precatory language is helpful, however, as it states the intent of the parties.  The Settlement Agreement empowers the Court to modify an unenforceable provision in a manner that is consistent with the parties' intentions, as shown in Part II.  Because neither Merck nor the NPC intended to violate Model Rule 5.6, the Court can accommodate § 1.2.8.2 to the requirements of Rule 5.6 without doing violence to their aims.

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 11 of 25

## VI.   SECTION 1.2.9 OF THE SETTLEMENT AGREEMENT PERMITS A THIRD-PARTY TO INTERFERE IN THE LAWYER-CLIENT RELATIONSHIP, IN VIOLATION OF PREVAILING LAW

Section 1.2.9 of the Settlement Agreement allows Merck to have the Chief Administrator determine whether participating counsel has failed to withdraw from representing a non-enrolling client as required by the Settlement Agreement.  The Chief Administrator's decision is final, binding and non-appealable.

According to § 134 of the *Restatement (Third) of the Law Governing Lawyers*, this con-tractual mechanism is impermissible.  Section 134(2) states that a lawyer may allow "someone other than the client" to direct "a lawyer's professional conduct on behalf of a client" if, among other things, "the client consents" after receiving adequate disclosure.  To satisfy § 134, then, an Enrolling Counsel could agree to § 1.2.9 of the Settlement Agreement – but only with a *non-enrolling* client's consent.  Because there is no self-interested reason for a non-enrolling client to agree to this interference, a lawyer could not recommend this approach to a non-enrolling client. The Court should therefore declare § 1.2.9 of the Settlement Agreement prohibited and unen-forceable.

## VII.   SECTION 4.3 OF THE SETTLEMENT AGREEMENT FAILS TO IMPOSE FIRM DEADLINES BY WHICH CLAIMANTS WILL RECEIVE FINAL PAYMENTS

Clients are guaranteed to ask two questions: (1) How much will I receive under the pro-posed settlement? and (2) When will I receive it?  Unfortunately, Movants cannot answer either question in this case.  Although the Settlement Agreement is replete with fairly aggressive dead-lines by which claimants must submit required documents and information, there are no dead-lines for Merck to make final payment or for the Claims Administrator to process the claims at a

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 12 of 25

certain rate or by a date certain.  Movants submit that these omissions will likely result in serious delays in finally resolving all claims.

Tens of thousands of claimants are required to file registration affidavits by January 15, 2008, to submit complete enrollment documents including signed releases by March 1, 2008 (fewer than three months from today) and to submit claims packages with supporting medical records by July 1, 2008.  *See* Settlement Agreement §§ 1.1 - 1.3.[3]

In contrast, the only payment milestones contained in the Settlement Agreement are those that pertain to the "Interim Settlement Payments" -- payment to claimants on a rolling basis of 40% of their estimated final payment amount.  *See* Settlement Agreement Sections 4.1.1 and 4.1.2.  The interim payment deadlines are infirm and are subject to contingencies (primarily, the Claims Administrator's completion of certain reviews and estimates) and also potential delays even after the contingencies are fulfilled.

While Movants applaud the effort to make at least this interim payment, even these deadlines are uncertain.  For MI claims, the Interim Settlement Payment is to occur "promptly after *the later of*" (1) August 1, 2008 and (2) the date on which 2,500 qualifying claimants have been assessed "pre-special review points awards."  *See* Settlement Agreement Section 4.1.1.  Likewise, for IS claims, this payment occurs "promptly after the later of" (1) February 1, 2009 and (2) the date on which 2,500 qualifying claimants have been assessed "pre-special review points awards."  *See* Settlement Agreement Section 4.1.2.

---

[3]      The final deadline for submission of fully completed claims packages with all supporting records is November 30, 2008, with a potential extension to December 30, 2008, upon application to the Claims Administrator. *See* Settlement Agreement Section 1.5, Ex. 1.5.

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 13 of 25

Even more concerning is the fact that "Final Settlement Payment" is not scheduled under the Settlement Agreement until "[a]fter (and only after):" (1) *all* qualifying claimants have completed the claims valuation process and all points awards have become final, (2) *all* possible fixed payments and extraordinary injury payments have been determined *and* (3) *all* audits have been completed. *See* Settlement Agreement Sections 4.3.1 and 4.3.2. There are two major problems presented by this approach, and each presents the potential for significant delays in payment.

First, there are absolutely no deadlines by which (1) - (3) must occur and no requirement that the Claims Administrator complete its review according to any set timetable or by any date certain. This omission presents obvious issues both in projecting when claimants will be paid and in enforcing claimants' rights to payment in the event delays become unreasonable.

Second, requiring *all* claimants to wait for final payment until *all* of the above events take place injects a probability of extreme delay in the final payment process for the vast majority of claimants.[4] Hinging final payment on the completion of every single claim will result in delays in payment for a large group of otherwise completed claimants. The great majority of claimants with completed and reviewed claims will have final payment delayed extensively while the final review of a small number of problem claims drags on for many months or longer. *No one* gets anything more than the interim settlement payment until every award is final, all appeals have been exhausted, all extraordinary injury payments are finally determined and all audits are completed. This is simply unreasonable.

---

[4]     After initial payments of $750,000,000 into the settlement fund and posting letters of credit, Merck's funding obligations are capped at a maximum of $250,000,000 per month. *See* Settlement Agreement Sections 5.1.2, 5.1.3 and 5.1.7. This adds the potential for additional months of delay as well as a financial incentive for payment to occur later rather than sooner.

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 14 of 25

In the course of presenting the terms of the Settlement Agreement to counsel representing claimants, Negotiating Plaintiffs' Counsel have held informational meetings throughout the country.  Mr. Orran Brown, of Brown Greer PLC, the initial Claims Administrator (Settlement Agreement Section 6.1.2), was present at the settlement informational meeting in Houston.[5]  Mr. Brown was asked for his best estimate as to when claims could be expected to reach final payment.  On MI cases, his estimate was completion by December 2009.  On stroke cases, Mr. Brown was less certain but his estimate seemed to be February 2010 or later.  Of course, these were only estimates and there are no safeguards in the Settlement Agreement to require that even this "*final payment over a full two years from now*" be completed on time.

Several potential remedies would alleviate the shortcomings in the Settlement Agreement.  One clear and much needed fix is the establishment of claims processing requirements (such as a fixed number of claims per month) and firm deadlines for both the interim and final payments.

In addition, a second interim payment of 80-90% can be scheduled at a reasonable time -- such as six months -- after the first interim payment.  That way, claimants would be assured of receiving at least a majority of their funds by a date certain in the event that final payment is delayed.[6]

---

[5]	Movants have no objection to the appointment of Brown Greer and recognize that this firm enjoys a good reputation for its expertise in this area.  Nonetheless, the appointment of a competent Claims Administrator is no substitute for the complete lack of deadlines, claims processing requirements and other timing safeguards in the Settlement Agreement.  In addition, there should be a written agreement executed with Brown Greer at some point.  As requested below, Movants request the appointment of a committee to address and resolve these issues promptly and before any agreement with Brown Greer is signed.

[6]	Alternatively, a procedure can be instituted for holding back funds for non-completed claims and making final payment to the rest before every last claim is completed.  For example, once 95% of the claims are complete, these claims can be paid before resolution of the remaining 5% of problem claims.  This will require making esti-

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 15 of 25

Movants understand that completing this settlement process presents challenging logistical issues; however, without any deadlines or milestones and with final payment contingent on completion of every last claim, the potential for delay is obvious, significant and certain. Movants submit that this is a problem that can and should be fixed *before* claimants are required to enter this settlement process with no reasonable assurances of prompt payment.  Moreover, addressing this issue up front may prevent having to address it down the road once it is apparent that the lack of a framework has resulted in unreasonable delay.

In conclusion, there are a number of upcoming deadlines in the Settlement Agreement for tens of thousands of claimants to provide required documents and information or suffer severe consequences.  In contrast, there are no deadlines for these same claimants to receive their final payments.  Movants respectfully submit that this is a flaw in the Settlement Agreement that will result in significant delays in resolving these claims once and for all.

For the reasons stated above, Movants request that the Court appoint a small working committee of plaintiffs' and defense counsel to meet with the Claims Administrator on an expedited basis and return to this Court on or before December 30, 2007, with a proposal for addressing these issues -- a proposal that at a minimum contains reasonable and specific deadlines and claims processing requirements.

---

mates, and may also require a small additional final payment, but it is preferable to holding a large number of completed claims entirely hostage to a small group of problem claims.

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 16 of 25

## VIII.   SECTION 9.2 OF THE SETTLEMENT AGREEMENT PURPORTS TO NULLIFY PRETRIAL ORDER 19 AND THE CONTRACTS ENTERED PURSUANT TO IT

On June 29, 2005, the VIOXX® MDL PSC filed its "Petition for an Order Securing an Equitable Allocation of Counsel Fees and Costs for MDL Administration and Common Benefit Work."  The petition stated in part:

> The purpose of this motion is to seek an Order creating a "fund" consisting of the recoveries in the federal court cases and claim payments to plaintiffs in state courts that agree to coordination, from which the PSC and other attorneys performing 'common benefit work' for plaintiffs may obtain compensation for the benefits which they confer on plaintiffs.

(Motion at 6.)

The PSC requested that the court implement an assessment "effective immediately" that allowed counsel 90 days to choose to opt in for all of their clients (whether filed in federal or state court, subject to a tolling agreement, or unfiled, past, present or future).  (Motion at 14.) The PSC called this the "Full Participation Option" ("FPO").  The FPO would subject counsel's clients to an across-the-board assessment of all their cases but would be limited to a maximum of 2% for fees and 1% for costs of any recovery made. *Id*.

After the initial 90 day period, a more traditional assessment would be implemented, the "Traditional Assessment Option" ("TAO").  For the TAO, the fund created by the Court would sequester 6% of plaintiffs' recoveries in federal court and 4% of the plaintiffs' recoveries in cases pending in state courts which consent to coordination under such terms.

For counsel that did not choose the FPO or TAO, there was the "Limited Waiver Option" whereby all of counsel's federal cases would be assessed 6% with the agreement they would not

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 17 of 25

receive MDL work product unless promising not to use it in counsel's state cases.  (Motion at 15.)

The PSC "recognize[d] the need to have voluntary cooperation of counsel in connection with their state court cases."  (Petition at 14, n 6.)  The "plan of sequestering funds is designed to facilitate state and federal coordination."  (Petition at 15.)  For the PSC, it was "imperative that the court immediately enter the form of [the proposed] order."  "This will create an immediate incentive for counsel to participate in the MDL."  *Id.*

The PSC presented its petition for an assessment order to the Court on July 19, 2005. The PSC outlined the three options.  With respect to the Full Participation Option, it was stated, "[t]his option is designed to foster cooperation and coordination between the lawyers that are litigating cases in the MDL and federal courts and those that are in state court litigation."  (Status Conference Transcript, July 19, 2005, at 21.)  Further, it was stated that the proposal that the PSC submitted "is to show our commitment to the work product and to create a situation where there is not competition among the jurisdictions, but a spirit of cooperation."  (*Id*. at 23.)

This Court granted the petition and signed the requested form Pretrial Order No. 19 on August 4, 2005.  The form agreements, attached to PTO 19 as Exhibits A, B & C, were incorporated by reference and made a part of the order.  The original deadline to accept the full participation option agreements was November 2, 2005.  On November 2, 2005, the Plaintiffs' Steering Committee requested an extension of the deadline for counsel to submit a full participation option agreement to November 16, 2005.  That request was granted the same day.  Movants executed FPOs with the PSC.

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 18 of 25

On November 16, 2005, Motley Rice filed a Motion for Clarification of Pretrial Order No. 19 in which it sought clarification of the PSC work product definition.[7]  On January 27, 2006, the Plaintiffs' Steering Committee filed a response entitled Plaintiffs' Steering Committee's Response and Opposition to Motley Rice, LLP's Motion for Clarification of Pretrial Order No. 19.  The PSC's response argued that the assessment agreements and accompanying order "were chosen for their precision, clarity, and effect."  (Response at 1.)  The response reiterated that "PTO No. 19 provides a means to compensate and reimburse attorneys for services rendered and expenses incurred for MDL administration and common benefit."  The PSC also recognized its "fiduciary obligation" and that it had "been charged by this Court to create a work-product that they must make available to federal litigants."  (Response at 8, n 5.) This is consistent with this Court's order that the PSC has the responsibilities to "[n]egotiate and enter into stipulations with Defendants regarding this litigation," and "[e]xplore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation."  (Pretrial Order No. 6 at 3).

On November 9, 2007, at the regularly scheduled monthly status conference, counsel for Merck and the PSC announced a proposed settlement agreement "that will encompass the great majority of cases in this proceeding as well as in the New Jersey proceeding, the California proceeding, and the Texas proceeding."  (Monthly Status Conference Transcript, November 9, 2007, at 4.)

---

[7]     The Motion for Clarification of Pretrial Order No. 19 was denied as moot without prejudice on February 3, 2006.

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 19 of 25

Shortly following the status conference, the settlement documents were made available. Article 9 of the Settlement Agreement is entitled "Attorneys Fees" and § 9.2 is entitled "Common Benefit Fees and Reimbursement of Litigation Costs."   It states:

> 9.2.1.   To insure that NPC, PSC, PEC, PLC, and common benefit attorneys (hereinafter referred to as "common benefit attorneys") are fairly compensated but that their fees are in conformance with reasonable rates, an assessment of common benefit attorneys fees will be imposed at no more than 8% of the gross amount recovered for every client that registers under the terms of the Settlement Agreement.  Any sum paid as a common benefit fee shall be deducted from the total amount of counsel fees payable under individual plaintiffs' counsel's retainer agreement.  The maximum 8% attorneys' fee assessment shall supersede the assessment provided to MDL common benefit attorneys pursuant to Pretrial Order No. 19.

Section 9.2.4 provides that this Court will be asked to appoint a committee of eight plaintiffs' counsel to an "Allocation Committee," which "shall include all members of the NPC and two additional plaintiffs' attorneys to be responsible for recommending to the Honorable Eldon E. Fallon the allocation of awards of attorneys' fees from the settlement fee and cost account." Common benefit allocations are subject to the approval of this Court in consultation with Judge Chaney, Judge Higbee and Judge Wilson.  *Id.*

On November 20, 2007, this Court issued "Pre-Trial Order No. 32 (Appointment of Allocation Committee)" and noted that it had authority to appoint the Allocation Committee members because of the Settlement Agreement (Para. 9.2.4) and "pursuant to this transferee Court's inherent authority over this multidistrict litigation."  Order at 1.

Movants accepted the FPO in complete compliance with PTO 19.  The assessment agreements entered in accordance with, and made an enforceable part of, PTO 19 should be honored, binding and controlling with respect to any assessment on the cases of participating counsel.  Even more importantly, failure to enforce these agreements would create a terrible prece-

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 20 of 25

dent.  In any future mass or class action, the incentive would be not to enter agreements to cooperate and share common benefit work and fees because they are not going to be recognized anyway.  This would not be a desirable outcome.  Movants request that the Court recognize the original agreements entered into as a part of PTO 19; they were rationally conceived, carefully negotiated, and adopted as an enforceable order of this Court.

## **CONCLUSION**

For the reasons stated, Movants request that the Court clarify and/or modify PTO 31 and the Settlement Agreement and to find that certain provisions are prohibited and unenforceable.

Respectfully submitted,

John Eddie Williams
Texas Bar No. 21600300
Williams Kherkher Hart Boundas, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
713-230-2200 - Telephone
713-643-6226 - Facsimile

Drew Ranier
Louisiana Bar No. 8320
Texas Bar No. 16544500
Ranier, Gayle & Elliot, LLC
1419 Ryan Street
Lake Charles, Louisiana 70601
337-494-7171 - Telephone
337-494-7218 - Facsimile

Walter Umphrey
Texas Bar No. 20380000
Provost Umphrey Law Firm
490 Park
Beaumont, Texas 77701
(409) 838-8848 - Telephone
(409) 838-8888 - Facsimile

Mikal Watts
Texas Bar No. 20981820
The Watts Law Firm, LLP
300 Convent, Suite 100
San Antonio, Texas 78205
210-527-0500 - Telephone

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 21 of 25

David Matthews
Texas Bar No. 13206200
Matthews & Associates
2905 Sackett St.
Houston, TX 77098
713-222-8080 – Telephone
713-535-7184 – Facsimile

Kenneth T. Fibich
State Bar No. 06952600
Sara J. Fendia
State Bar No. 06898800
Fibich Hampton & Leebron, LLP
1401 McKinney, Suite 1800
Houston, Texas 77010
713-751-0025 - Telephone
713-751-0030 - Facsimile

Richard W. Mithoff, Jr.
Texas Bar No. 14228500
Mithoff Law Firm
3450 One Allen Center
Houston, TX 77002
713-654-1122 – Telephone
713-739-8085 - Facsimile

Tommy Jacks
Texas Bar No. 10452000
Jacks Law Firm
1205 Rio Grande Street
Austin, TX 78701
512-478-4422 – Telephone
512-478-5015 - Facsimile

Kathy Snapka
Texas Bar No.18781200
Snapka, Turman & Waterhouse, LLP
606 N. Carancahua, Suite 1511
Corpus Christi, TX 78476
361-888-7676 – Telephone
361-884-8545 - Facsimile

Douglas Allison
Texas Bar No. 01083500
Law Offices of Douglas Allison
500 N. Water St., Suite 1200
Corpus Christi, TX 78471
361-888-6002 – Telephone

Jack Modesett
Texas Bar No. 14244337
Law Offices of Jack Modesett
500 N. Water St., Suite 1200
Corpus Christi, TX 78471
361-887-6449 – Telephone
361-885-7983 - Facsimile

/s/_____
Grant Kaiser
Texas Bar #11078900
The Kaiser Firm, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
713-223-0000 - Telephone
713-223-0440 - Facsimile

## ATTORNEYS FOR PLAINTIFFS

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 22 of 25

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann and Russ Herman, by U. S. Mail and email or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on December 13, 2007.

Respectfully submitted,

/s/_____
Grant Kaiser
Texas Bar #11078900
The Kaiser Firm, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
713-223-0000
713-223-0440 (facsimile)

ATTORNEYS FOR PLAINTIFFS

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 23 of 25

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that the undersigned conferred with counsel for Merck and Plaintiffs' Liaison Counsel, Mr. Russ Herman, and other representatives regarding this motion.  While we did reach agreement that the Registration Affidavit should be modified to delete the affirmations in question, we were unable to reach total agreement on the relief requested.

Respectfully submitted,

/s/_____
Grant Kaiser
Texas Bar #11078900
The Kaiser Firm, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
713-223-0000
713-223-0440 (facsimile)

ATTORNEYS FOR PLAINTIFFS

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 24 of 25

LIST OF EXHIBITS

1. ABA Formal Opinion 93-371

2. Texas Professional Ethics Committee Opinion 505 (1994)

MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR (1) CLARIFICATION
AND/OR MODIFICATION OF PRETRIAL ORDER NO. 31 (REGISTRATION OF CLAIMS) AND
(2) DECLARATORY JUDGMENT THAT CERTAIN PROVISIONS OF
THE SETTLEMENT AGREEMENT ARE UNENFORCEABLE

Page 25 of 25