```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
 2

 3    ****************************************************************

 4
      IN RE:  VIOXX PRODUCTS
 5         LIABILITY LITIGATION
                                  MDL DOCKET NO. 1657
 6                                NEW ORLEANS, LOUISIANA
                                  WEDNESDAY, JUNE 28, 2006, 9:00 A.M.
 7

 8    ****************************************************************

 9
                        TRANSCRIPT OF PROCEEDINGS
10          HEARD BEFORE THE HONORABLE ELDON E. FALLON
                    UNITED STATES DISTRICT JUDGE
11

12
      APPEARANCES:
13

14    FOR THE PLAINTIFFS:
                                  BEASLEY ALLEN CROW METHVIN
15                                PORTIS & MILES
                                  BY:  ANDY D. BIRCHFELD, JR., ESQUIRE
16                                     P. LEIGH O'DELL, ESQUIRE
                                  234 COMMERCE STREET
17                                POST OFFICE BOX 4160
                                  MONTGOMERY, ALABAMA 36103
18

19                                ROBINSON CALCAGNIE & ROBINSON
                                  BY:  MARK P. ROBINSON, JR., ESQUIRE
20                                620 NEWPORT CENTER DRIVE, 7TH FLOOR
                                  NEWPORT BEACH CA  92660
21

22                                GAINSBURGH BENJAMIN DAVID MEUNIER AND
                                     WARSHAUER, LLC
23                                BY:  GERALD E. MEUNIER, ESQUIRE
                                  2800 ENERGY CENTRE
24                                1100 POYDRAS STREET, SUITE 2800
                                  NEW ORLEANS, LOUISIANA  70163-2800
25
```

```
1                             BAILEY BLIZZARD SALIM & FIBICH
                              BY:   EDWARD BLIZZARD, ESQUIRE
2                             440 LOUISIANA, SUITE 1900
                              HOUSTON TX  77002
3

4                             THE KAISER FIRM
                              BY:  D. GRANT KAISER, ESQUIRE
5                             8441 GULF FREEWAY, SUITE 600
                              HOUSTON TX 77017
6

7

8    FOR THE DEFENDANT:       STONE PIGMAN WALTHER WITTMANN
                              BY:  PHILLIP A. WITTMANN, ESQ.
9                             546 CARONDELET STREET
                              NEW ORLEANS, LA 70130-3588
10

11                            BARTLIT BECK HERMAN
                              PALENCHAR & SCOTT
12                            BY:  PHILIP S. BECK, ESQUIRE
                                   ANDREW GOLDMAN, ESQUIRE
13                            54 W. HUBBARD STREET, SUITE 300
                              CHICAGO, ILLINOIS 60601
14

15                            O'MELVENY & MYERS
                              BY:  JOHN BEISNER, ESQUIRE
16                            1625 EYE STREET
                              WASHINGTON DC  20006
17

18                            DECHERT, LLP
                              BY:  BENJAMIN R. BARNETT, ESQUIRE
19                            CIRA CENTRE, 2929 ARCH STREET
                              PHILADELPHIA PA  19104-2808
20

21

22   FOR THE LOUISIANA        DUGAN & BROWNE
     ATTORNEY GENERAL         BY:  JAMES R. DUGAN, ESQUIRE
23   AND BLUE CROSS OF        650 POYDRAS STREET, SUITE 2150
     LOUISIANA:               NEW ORLEANS LA  70130
24

25
```

```
 1   ALSO PRESENT:              DAWN BARRIOS, ESQUIRE
                                FRED S. LONGER, ESQUIRE
 2                              HAMILTON HILL, ESQUIRE
                                ADAM MORTARN, ESQUIRE
 3

 4                              REBECCA KING, ESQUIRE
                                HOLLY WHEELER, ESQUIRE
 5                              BRANDON STEFFEY, ESQUIRE

 6

 7

 8

 9   OFFICIAL COURT REPORTER:      CATHY PEPPER, CCR, RPR, CRR
                                   500 POYDRAS STREET, ROOM B406
10                                 NEW ORLEANS, LOUISIANA 70130
                                   (504) 589-7779
11

12

13   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.
14

15

16

17

18

19

20

21

22

23

24

25
```

1               **P-R-O-C-E-E-D-I-N-G-S**

2              (WEDNESDAY, JUNE 28, 2006)

3            M O R N I N G   S E S S I O N

4          THE DEPUTY:  Everyone rise.

5          THE COURT:  Be seated, please.  Good morning, ladies and

6    gentlemen.  Call the case, please.

7          THE DEPUTY CLERK:  MDL Number 1657, In re:  Vioxx.

8          THE COURT:  Counsel, make your appearance for the

9    record, please.

10          MR. ROBINSON:  Mark Robinson for the PSC.

11          MR. WITTMANN:  Phil Wittmann for Merck.

12          MR. BECK:  Phil Beck and Andy Goldman also for Merck,

13   Your Honor.

14          THE COURT:  We have a number of matters today, but I

15   understand that the motions that we have, we will take the Motion

16   to Compel and Stay of Roger Smith and the Motion to Open and

17   Close first.  So we're going to hear from the parties in that

18   regard.  Who is movant?

19          MR. KAISER:  I am, Your Honor.

20          THE COURT:  Why don't you give us your name for the

21   record.

22          MR. KAISER:  My name is Grant Kaiser.  I'm co-counsel

23   with Drew Ranier in the case, obviously one of the four cases set

24   for trial.

25          THE COURT:  I understand this is a Motion to Compel and

1  Stay.  The plaintiff wants all the call notes of Dr. Grefer,

2  Dr. Courtade, and also documents from Merck's regional and

3  district salesmen.

4       Merck takes the position that they have given all the

5  call notes that they have regarding Dr. Grefer and that with

6  regard to Dr. Courtade, Merck's position is that Courtade never

7  prescribed Vioxx; therefore, it's irrelevant.

8       And with regard to the documents, Merck takes the

9  position that they were never required to produce documents with

10 regard to a regional sales manager but that all they need to

11 produce is documents and notes from the sales representatives who

12 have specifically talked to the treating doctor.

13      Let me hear your response to this.

14      MR. KAISER:  Yes, Your Honor.  As soon as this case was

15 set for trial, we began trying to make sure we had all the facts,

16 database, and other data.  I'll just call it fax database and

17 other data for lack of other information.

18      I went through, I counted 35 letters and e-mails this

19 morning trying to get these depositions set and the data that we

20 need before we go take these men.

21      THE COURT:  With regard to Dr. Grefer, Merck's position

22 is that they've given you everything.

23      MR. KAISER:  Dr. Grefer's deposition is for Thursday.

24 They've taken the position they've given me everything.  They've

25 told me orally they've given me everything.  I've responded to

1  confirm that they have no data after 2002.  Dr. Grefer, we

2  believe, continued to prescribe Vioxx up until its withdrawal.

3  They refused to confirm that to me.

4         THE COURT:  Is that the case, that there is no data

5  after that also --

6         MR. WITTMANN:  Your Honor, we have no call notes after

7  2002, period.

8         THE COURT:  All right.  Let's go to Dr. Courtade then.

9  Their position with Dr. Courtade is that he didn't prescribe

10 Vioxx.  How is it relevant?

11        MR. WITTMANN:  Your Honor, if I may, Dr. Courtade's

12 deposition has been taken so it's moot.

13        MR. KAISER:  Can I speak to that, Your Honor?

14        THE COURT:  Sure.

15        MR. KAISER:  The data is obviously relevant because they

16 gave it to us one hour -- they FedEx'd it from somewhere to my

17 office in Houston.  We received it one hour before the Courtade

18 deposition was taking place in Kentucky, after me trying to get

19 it for 45, 60 days.

20        So obviously they figured it's relevant, and it's

21 obviously relevant to what any contacts Merck has had with any of

22 these physicians is my point.  And so, I think we ought to use

23 the fact that they produced it for the Courtade deposition to

24 extend, by logic, that they produced any data that they have on

25 relationships with my treating physicians or prescribing

1    physicians.

2         THE COURT:  I'm missing you there.  It's my fault, I'm

3    sure, but I dont understand that logic.  Where is it?  What are

4    you saying?

5         MR. KAISER:  The logic is --

6         THE COURT:  As I understand Courtade, just focus me on

7    Courtade, he didn't prescribe Vioxx.

8         MR. KAISER:  Correct.

9         THE COURT:  Now, what's the significance of getting any

10   documents, the call notes on Courtade if he didn't prescribe

11   Vioxx?  How is it relevant?

12        MR. KAISER:  It's relevant because it may lead to the

13   discovery of admissible evidence.  I think it's relevant for what

14   Merck is telling any doctor, not just prescribers.  And they did

15   have a relationship with this man.  We found out one hour before

16   the deposition, they paid him money on several occasions.  They

17   have -- he's not a thought leader, but he's some kind of

18   affiliate that they had.

19        I think it's only fair that before we begin a

20   deposition of our treating physicians, that we know what contacts

21   Merck has had with them, and obviously they agreed with us and

22   they finally gave it to us.

23        THE COURT:  What's the situation with Courtade?  His

24   deposition has been taken and you have received the notes.

25        MR. KAISER:  We received it one hour before.

```
 1              THE COURT:  So what do you want me to do with Courtade?
 2              MR. KAISER:  Nothing.  That's moot.
 3              THE COURT:  That's moot.
 4              MR. KAISER:  Yes, sir.  What we would like to do --
 5              THE COURT:  You want to tell me that.  I mean, the
 6    reason you're saying it is you want me to know it.
 7              MR. KAISER:  Yes.
 8              THE COURT:  I know it now.
 9         MR. KAISER:  And I want to use that as a stepping off
10    platform to require the Court to produce -- for Merck to produce
11    call notes on any other treating physicians that plaintiff has.
12    And we use Courtade as an example.  It's obviously relevant if
13    they can do it.  There is no reason not to do it.
14              THE COURT:  Let me hear from you.
15         MR. WITTMANN:  Good morning, Your Honor.  Phil Wittmann
16    for Merck.  Let me first address the fact that there was no
17    discovery request served on Merck, the doctors that counsel was
18    talking about.
19              This Motion to Compel came out of the blue two days
20    after they informally asked for certain documents and without
21    being told no, they filed this motion.
22              As we noted during counsel's argument, Dr. Courtade's
23    deposition was taken last week.  Any issues relating to him are
24    moot.
25              Merck did produce documents relating to Dr. Courtade,
```

1  even though we never received a discovery request from the

2  plaintiff to produce anything for Dr. Courtade.  We're not

3  required to produce documents of treaters, only prescribers.

4       And goodness knows, Your Honor, the trouble we had

5  getting all of the fax production, all the fax database

6  production.  We went through all kind of gyrations to make sure

7  that the plaintiffs got what we had in the way of call notes and

8  the fax database.  We've done that.

9       We've done all of that with respect to prescribing

10 physicians, and to come in now, asking Merck to make an

11 individualized search of sales managers, and regional managers,

12 going far beyond what we've agreed to do in the course of the

13 discovery in the case is just very, very burdensome and

14 oppressive, particularly on two days' notice, and we just can't

15 do it, Judge.

16      THE COURT:  Okay.  I understand the issues.  With regard

17 to the motions, I'll deny them with regard to Smith.  I don't

18 mean that to be relative to anything else in any other case.

19 I'll have to deal with that specifically, but with regard to

20 Smith, the Motion to Compel and Stay is denied.

21      Let me move to the next motion, the Motion to Open and

22 Close.  Merck has noticed the deposition of the plaintiffs'

23 prescribing doctors, and you tell me that it's Grefer and

24 Courtade; is that right?

25      MR. KAISER:  Yes.

 1          THE COURT:  Anybody else?

 2          MR. KAISER:  Yes.

 3          THE COURT:  And the issue is who goes first with the

 4   depositions.

 5          MR. KAISER:  Yes.

 6          THE COURT:  You're going to use those depositions at

 7   trial?

 8          MR. KAISER:  Absolutely.

 9          THE COURT:  What's the position of Merck on that?  I

10   don't understand it.  If he's going to use the depositions at

11   trial, it seems to me he ought to have the right to put them on

12   the way he wants to put them on.

13          MR. WITTMANN:  Your Honor, who goes first has nothing to

14   do with how to put on a trial.  They can put on their portion of

15   the deposition at trial, even if they go second.

16          Our point is that Merck noticed the deposition.  We

17   have the right to take the lead in questioning the physicians we

18   have noticed.  Moreover, since the plaintiffs' counsel have the

19   right to have ex parte contacts with the doctors before any

20   deposition is taken, and Merck is not permitted any contact with

21   respect to those doctors, Merck should at the very least have the

22   right to go first.  This is our only shot at discovery.

23          We have to notice these doctors' depositions.  We have

24   to get our discovery there.  The plaintiffs have already had an

25   opportunity to talk to the doctors completely about the case.  We

1   know in many instances that the plaintiffs' counsel have not just

2   talked about the plaintiff's condition, but they are providing

3   Merck documents to physicians.  They have, in effect, woodshedded

4   these doctors and talked to them about the theories of the case.

5       The plaintiff cites no authority for the proposition

6   that the party with the burden of proof has the right to open and

7   close the argument.  They cite no authority whatsoever to that

8   effect.

9       And this goes back, really, Your Honor, to over a year

10  ago when this issue first came up, when the Court first

11  considered the issue of ex parte contacts.  And we told the Court

12  about our concern that if it was a one-way street and the

13  plaintiffs had the exclusive right to contact doctors, that those

14  contacts would be used not just to learn about the plaintiff's

15  medical condition but to influence the doctor's testimony about

16  Merck's contact.

17      If the plaintiffs are going to have exclusive access to

18  the doctors, we submit their contact should be limited to

19  discussions about the plaintiff's medical condition and not about

20  Merck.

21      Secondly, if the plaintiffs do have the right to

22  contact the doctors about the medical condition, then Merck

23  should have the right to go first in the deposition.  As to this

24  case in particular, in the Smith case, we should go first because

25  we noticed the deposition first, and the accepted rule is the

1  first to notice is the first to examine.

2          Mr. Smith's counsel has already met with Dr. Grefer and

3  already knows what Dr. Grefer is likely to say.  It's Merck that

4  needs to take the deposition and learn what the doctor has to

5  say.

6          We cited the case of the *Smith v. Logansport County*

7  *School Board*, and that case stands for the proposition that the

8  party noticing the deposition will commence the interrogation

9  with direct examination, after which each other party may

10  cross-examine.  The plaintiffs have cited no authority to the

11  contrary, Your Honor.

12          THE COURT:  I got it.  I understand the issue.  Really,

13  we're trying to run two things at one time here.  We're talking

14  first about a discovery deposition, and then we're talking about

15  the trial deposition.

16          So the way that that has been done in the past is that

17  you, the defendant, take the discovery deposition.  You've

18  noticed it; you take it.  You go first; you, the plaintiff, go

19  second.  Then you, the plaintiff, take the trial deposition while

20  the doctor is there.  Start the trial deposition the way you want

21  to start it.  It's your trial deposition.  You ought to take it

22  the way that you want to take it.

23          It seems to me that the defendant wants a discovery

24  deposition first.  He noticed it.  I don't see any reason why he

25  shouldn't have a discovery deposition first and take the doctor

1    first.  If you, the plaintiff, want to take the doctor under

2    cross during the discovery deposition, you can do it or you can

3    not ask any questions on cross during the discovery deposition

4    and then start your deposition as a trial deposition.

5          MR. KAISER:  Yes, Your Honor.  I understand that.

6    That's not the procedure they proposed as a discovery deposition.

7    I understand the Court.

8          A couple of responses to what Mr. Wittmann said,

9    though.  We noticed it first.  Is this going to be a race to

10   notice?  I mean, if it is, that's a very unruly way to do this.

11         First of all, we tried to contact defense counsel to

12   try to schedule these depositions by agreement.  They violated

13   the Court's ruling to confer with us before scheduling the

14   depositions, and so they shouldn't be allowed to benefit from

15   violating the Court's order.

16         THE COURT:  I understand.  My ruling is going to be that

17   with regard to the discovery deposition that the defendants have

18   noticed, take your deposition.  You, defense counsel, go first in

19   the discovery deposition, and then you, plaintiffs' counsel, take

20   the deposition for trial purposes and you go first in that

21   deposition.

22         MR. KAISER:  Is that a standing ruling for all cases?

23         THE COURT:  From a discovery standpoint, if you want to

24   take one of their witnesses as a discovery deposition and you

25   notice it, they are not going to start your deposition.  It

1  doesn't make any sense to me.  If you're taking a discovery

2  deposition of a defense witness and you notice it, the defendant

3  ought not to be allowed to take their witness first when you've

4  noticed it.

5          MR. KAISER:  I'm only talking about the doctors that

6  treated my plaintiff.  I'm not talking about anybody else.

7          THE COURT:  But if they want to take a discovery

8  deposition of your doctor, how can you go first when they noticed

9  the discovery deposition of your doctor?

10          MR. KAISER:  Well, it was my understanding of the

11  Court's earlier ruling that a deposition could not be played in

12  any order that you wanted at trial.

13          THE COURT:  No, that's not what I'm saying.  He wants to

14  take a discovery deposition of your doctor.  Let him take the

15  discovery deposition of your doctor.

16          MR. KAISER:  Okay.

17          THE COURT:  Now, you then take the trial deposition of

18  your doctor.  You play the trial deposition of your doctor the

19  way that you want it played.

20          MR. KAISER:  And if they choose to cross in the trial

21  deposition, that's up to them.

22          THE COURT:  Sure.  When two deposition are taken at the

23  same time, or really roughly the same time, he takes it first for

24  discovery.  If you want to cross on discovery, that's fine.  Then

25  you take your deposition as a trial deposition.  That's the way I

1    see it working.

2              MR. KAISER:  I understand.

3              MR. WITTMANN:  Thank you, Judge.

4              MR. KAISER:  Thank you, Judge.

5              THE COURT:  And really, from the standpoint of I don't

6    care who notices it first.  If you notice a deposition first as a

7    trial deposition and he wants to take a deposition for discovery

8    of the same person before, that makes sense to me.  Vice versa,

9    it doesn't really matter.  But from the trial standpoint, it's

10   your trial deposition.  It's your witness.  You put them on the

11   way you want to put them on.

12             MR. KAISER:  So for the trial depositions, is it my

13   understanding that we can play the trial deposition -- let me

14   back up.  Is it the Court's ruling as I've been told that

15   depositions shall be played in the sequence generally that the

16   questions are answered -- asked and answered?

17             THE COURT:  Sure.  When you start a trial deposition and

18   you say "taking this deposition for trial," any objections should

19   be made now and are not reserved, and then ask the questions just

20   as if the person were in court.

21             MR. KAISER:  Very well.  Thank you, Judge.

22             THE COURT:  Thank you.

23             MR. WITTMANN:  Just so we're completely clear, we'll

24   have the right to cross-examine when he does our deposition?

25             THE COURT:  Sure.

1           We also have the Motion to Consolidate.  This is a

2   Motion to Consolidate.  The Attorney General and Blue Cross take

3   the position that there is a substantial overlap on the

4   information that Merck's representatives have discussed with

5   representatives of Blue Cross and the AG and that they feel that

6   these cases should be consolidated.  They take the position that

7   it conserves time and that it also conserves expense and that it

8   makes sense to consolidate them.

9           Merck takes the position that different representatives

10  talked to different people at different times.  And what they

11  said and how they said it and what they meant and how they meant

12  it is different in each case and that to put this before one jury

13  would be confusing.  The jury would have to be told:  Now, this

14  is what they told the Attorney General.  Now, this is what they

15  told the Blue Cross representatives, and the jury would have to

16  turn off and turn on the various things in order to decide the

17  issues, and they take the position it would be confusing.

18          I'll hear from you.

19          MR. DUGAN:  James Dugan on behalf of the Louisiana

20  Attorney General and Blue Cross of Louisiana.  Judge, you're

21  absolutely correct on the facts.  We filed this motion to

22  consolidate over seven months ago.  It's completely within your

23  discretion to consolidate the cases.

24          THE COURT:  Any discovery on these cases yet?  Do we

25  know who told what to whom?

1        MR. DUGAN:  Yes, there hasn't been formal discovery,

2  Your Honor, but this is a very simple case.  It's a prescription

3  reimbursement case.  If you remember the last time I was in front

4  of you, you had a potential issue with the medical reimbursement

5  of the medical costs.  We amended again to pare down the case.

6        In addition, the Texas Attorney General case is set in

7  state court in January.  There is a nationwide third party there,

8  Local 68 case going to trial in March in New Jersey, where

9  Local 68 is one class rep.  Discovery is ongoing in those cases.

10  I'm involved in both of those cases.  This is a very simple case.

11  I can't imagine there being more -- from the plaintiffs' side

12  more than five to ten depositions taken.  I'm already involved in

13  the discovery.

14        What I would suggest, Judge -- I'm the same lawyer on

15  both cases -- the consolidation makes sense.  These cases are

16  right here in front of Your Honor.  I would urge that the

17  consolidation be granted.

18        THE COURT:  Yes, I don't have any problem with the

19  theory.  It's just that the devil's in the detail sort of thing.

20  It makes sense to me to consolidate cases rather than not when

21  it's the same issues involved.

22        The difficulty that I'm having is, the defendant takes

23  the position that different people told different things to

24  different individuals and that it's hard to segregate.  And they

25  also take the position that there hadn't been enough discovery at

1    this point to decide who told what to whom and whether there are

2    common issues, and they've suggested that at best it may be

3    premature.  How do you deal with that issue?

4              MR. DUGAN:  Merck has a managed care marketing

5    department, and we know the sales reps that went to the

6    Louisiana -- to the Department of Health and Hospitals.  We know

7    those sales reps who went to Blue Cross of Louisiana.  So we'll

8    be able to take those depositions immediately.  We'll be able to

9    take the 30(b)(6) of the head of the marketing department.  The

10   defendants will able to take the 30(b)(6) of Blue Cross, which

11   one representative will be there.

12             THE COURT:  We don't have that at this point, though?

13             MR. DUGAN:  No, we don't, Your Honor.

14             THE COURT:  Let's do it this way:  It just makes sense

15   to me to consolidate the cases for discovery.  Let me look at it

16   from the discovery standpoint.  Clearly, I'm not going to make

17   the decision to consolidate them for trial, but it makes sense to

18   consolidate them for discovery.  So take the depositions with

19   that in mind, and then let's revisit it.

20             If there is some problem, some difficulty, both of you

21   will know it, hopefully, but I'm going a little blind at this

22   point.  You tell me what depositions you need.  He says what

23   depositions he needs.  He takes the position that they are going

24   to be different remarks.  You take the position they are going to

25   be the same remarks.  I don't have anything to look at other than

1    what you understand the depositions are likely to be and what he

2    understands the depositions are likely to be.

3              So it seems to me that the logical and proper way of

4    going about it is to take the depositions first.  Let's look at

5    them.  If they are able to be tried together, I will do that.  If

6    they can't be tried together, you'll know it.

7              I don't think we can try it to two juries, but that's a

8    possibility, to have one jury listen to some.  That's a problem,

9    but maybe we have to be creative.

10             MR. DUGAN:  Judge, also I took out my request for a

11   jury, so as far as my case is concerned, Your Honor would hear

12   the case.

13             THE COURT:  Let me look at the material then and see,

14   and if there is a way to consolidate it, I'll look at that.  If

15   there is not, you'll know it.

16             MR. DUGAN:  So we can take the discovery in the cases.

17   If Your Honor decides not to consolidate, I would move the Court

18   for a trial date in either one of the cases, preferably probably

19   the Louisiana Attorney General case.

20             THE COURT:  Okay.  Thank you very much.

21             MR. DUGAN:  Thank you, Judge.

22             THE COURT:  Any other motions that we have?

23             MR. ROBINSON:  Yes, Your Honor.  Mark Robinson for

24   plaintiff.  Can we discuss --

25             THE COURT:  Sure.

1          MR. ROBINSON:  Your Honor, I have an objection, I guess,

2     it would be to something that the defense wants to do today.

3     We've had a schedule where we actually give depo cuts to each

4     other and then we can give them to Your Honor and Your Honor

5     works on them, and then we have some of those that are before you

6     right now.  I think it was about ten of them.  Then there is

7     another group of depositions, including the two prescribers in

8     the case, Dr. Mercola (spelled phonetically) and Dr. McCaffrey

9     (spelled phonetically).

10          Yesterday, an e-mail was sent to me saying that

11     Mr. Beck wants to do a video play of Dr. Mercola and McCaffrey.

12     I mean, those motions weren't supposed to be teed up until

13     July 6th or 7th.  We haven't done an opposition to it.

14          THE COURT:  That's fine.  I'll give you an opportunity

15     to discuss it.  We'll move those another time.

16          MR. BECK:  Well, Your Honor, we're not asking for

17     rulings on deposition objections, but what we had understood the

18     Court wanted is if we had categories of objections that we felt

19     strongly about that we wanted to call Your Honor's attention to,

20     that we would have the opportunity to do that today.

21          And what we're doing is not asking for rulings on

22     objections but playing for the Court brief excerpts to illustrate

23     the kind of testimony that we're talking about so that the Court

24     can be alert to that when it does rule on objections.

25          THE COURT:  I don't have any problem doing it that way,

1   but I don't want him to be surprised by it, just like I don't

2   want you to be surprised by it.

3           If you-all take a look at it and come back another

4   time, I don't have any problem doing it, but he's telling me that

5   this is either the first he's heard about it or he hadn't had a

6   chance to consider it and hasn't had a chance to respond and he's

7   caught off guard.

8           MR. BECK:  Your Honor, we've served our objections to

9   the questions and the answers, and I understood that part of

10  today's agenda was if the parties had particular deposition

11  objections that they wanted to discuss, they could do so.  So

12  they are on notice of our objections on these witnesses.  We've

13  given them to them and to the Court.

14          And our point is -- and we know that the Court is

15  ruling on a rolling basis, and we wanted to able to discuss our

16  concerns in a focused way as to a couple categories of questions.

17  So there is no surprise about the objections that we're talking

18  about.

19          MR. ROBINSON:  Your Honor, this is really a blindside.

20  I came here ready to talk about the deposition cuts and things

21  that were before Your Honor where we have gone back and forth,

22  put the notes on the deposition.

23          MR. BECK:  We'll put it off until July 6th, You Honor,

24  if Your Honor will oblige us and not rule on any of the

25  objections as to these two witnesses.

1          THE COURT:  Sure.  Let's make sure I've got those

2     depositions and I'll put those aside and I'll wait.  And if we

3     can do it before July 6th, that's fine, too.  I don't have any

4     problem.

5          MR. BECK:  If we can find the time to come back before,

6     that's fine.

7          THE COURT:  But just make sure --

8          MR. GOLDMAN:  I just want to make clear, Judge, it's not

9     just two depositions.  There are about six depositions that we

10    wanted to talk about.

11         THE COURT:  Give me a list of six and I won't deal with

12    those until I hear from each side.

13         MR. BECK:  As long as we're talking about blindsiding, I

14    understand Mr. Robinson proposes to show you a clip where he

15    substitutes his calm, reasonable voice for that of Mr. Lanier in

16    the Anstice deposition.  I only saw 10 seconds of the clip, and I

17    don't want to do that today either, Your Honor.

18         THE COURT:  We'll do that another time, too.

19              Any other things that we have to talk about that

20    everybody is ready to talk about?

21         MR. ROBINSON:  Your Honor, I think we would like to

22    maybe just address a couple of the motions in limine.  Actually,

23    these are the ones -- several of them were ruled on in Irvin, but

24    we wanted to have the Court possibly reconsider.

25         THE COURT:  I have those.  I've looked at them again,

1   and I've ruled on them.  I really don't need any assistance on

2   them.  I do appreciate it.  I've reserved rulings or done some

3   changes that I have not done with --

4        MR. BIRCHFIELD:  Your Honor, can I raise one point?

5        THE COURT:  Sure.  I'll give these to both sides.  I

6   haven't ruled on the fifth motion of the defendants, Topol, and a

7   sixth motion, Graham, because I understand those would be

8   deferred.

9        MR. BECK:  Yes, Your Honor, that's correct.

10       THE COURT:  But I have ruled on 1, 2, 3, and 4.

11       MR. WITTMANN:  Your Honor, while you're on Graham, I

12   want to make sure that you had that hearing on Graham off of your

13   docket tomorrow.  It's not going to be heard tomorrow, the 6th of

14   July.

15       THE COURT:  How about Topol?  Are we doing Topol

16   tomorrow?

17       MR. GOLDMAN:  Your Honor, Judge, we're going to file a

18   reply brief in sort of support of our Motion in Limine on Topol

19   and Graham and hope to have those heard on July 6th as well.

20       THE COURT:  So we're not going to do Topol or Graham

21   tomorrow.

22       MR. BECK:  There is nothing tomorrow, as I understand.

23       THE COURT:  Nothing tomorrow.

24       MR. BIRCHFIELD:  Your Honor, in regards to the Motion in

25   Limine about the personal use of the Merck employees maybe you

1   can tell me how you ruled.  It may be a moot point.  It's Motion

2   in Limine Number 4.

3           MR. BECK:  No.

4           MR. BIRCHFIELD:  Seven.

5           MR. BECK:  It's six.  Actually, it's seven.

6           MR. BIRCHFIELD:  Seven, Your Honor.

7           THE COURT:  I got it.  Let me tell you how I ruled.

8   This is the issue:  Merck's employees or family members took

9   Vioxx.  The plaintiffs filed a motion for me to exclude any

10  evidence that Merck employees, former employees, or family

11  members have taken Vioxx.

12          I've reserved ruling on that.  This is my thinking:  To

13  some extent, it depends upon the context, but generally, it will

14  not be admissible since it's not relevant.  It depends upon the

15  dosages, as I see it.  It depends upon the time taken.  It

16  depends upon the age of the person taking it.  It depends upon

17  the prior condition of the party.  It depends on the risk factors

18  that that individual has, and as a result, it's problematic.  It

19  puts another trial at issue, and it has two or three things going

20  on at the same time.  I'm conscious of that.  But at the same

21  time, I can see where it, in a certain context, it may have some

22  relevance, so I'm not able to grant it at this point.

23          I've written this so that you folks can take a look at

24  it and understand where I'm coming from.

25          MR. BIRCHFIELD:  Your Honor, in regards to that issue,

1   as this issue evolved over the cases, initially you had granted

2   the Motion in Limine, and then it came in on a limited basis and

3   it got expanded.

4          In Irving II, you know, when Alise Reicin was on the

5   stand and you ruled that you were going to allow her to give that

6   testimony, you did agree that we were entitled to her medical

7   records.  And so we were produced those medical records overnight

8   for cross-examination the next morning.

9          The only thing that I would request here, with you

10  reserving ruling, Merck knows which witnesses they intend to call

11  as live witnesses and which ones they intend to elicit testimony.

12  Can we get those medical records now so that we would have

13  adequate time to prepare cross-examination?

14          THE COURT:  The problem before, and I think it's a

15  legitimate concern, the medical records, because of the dosage,

16  because of all of these other factors that I mentioned, they

17  become relevant, and the last time you had a couple of hours to

18  look at them.

19          MR. BECK:  And, Judge, and based on that, I mean, he's

20  seen those records.  Alise Reicin is not an issue.

21          MR. BIRCHFIELD:  It still is an issue because we did

22  have to destroy them after the trial.

23          MR. BECK:  We'll get you the same stuff we got you.  I

24  think the other person that came in via deposition was

25  Dr. Scolnick, another person whose credibility they attacked and

1  said that he wanted to kill people for profits.  He doesn't work
2  for us anymore, so we're not in a position to produce his.
3          THE COURT:  Sure.  I understand.
4          MR. BECK:  And I'm sorry, and Dr. Nies is another one
5  who -- did you guys play him last time?
6          MR. BIRCHFIELD:  No.
7          MR. BECK:  They designated Dr. Nies this time, and
8  again, he's a former employee, and so we can't very well go beat
9  him up to make him produce medical records.
10         THE COURT:  That means that they have a higher hurdle to
11 getting them.
12         MR. BIRCHFIELD:  Yes, Your Honor.  I understand it.
13 They have designated Alan Nies; they have designated his
14 deposition testimony, and that's fine.  We're talking about video
15 depositions, but we're talking about live witnesses, which would
16 include Alise Reicin and any others that they would propose to
17 call.
18         THE COURT:  If there is any witness that's going to be
19 called live that this is anticipated, the defendant should
20 produce to the plaintiffs two days before the testimony or
21 whatever.
22         MR. BECK:  And, Your Honor, last time we had a very
23 strict understanding that I would hope Your Honor would impose it
24 again, and that is that we give it to one lawyer who is going to
25 cross-examine Dr. Reicin, and that lawyer doesn't show it to

1   anybody else.  I don't want it shown to the plaintiff steering

2   committee and show up on the Internet.

3              THE COURT:  And also destroys it after.

4              MR. BECK:  Yes.

5              MR. BIRCHFIELD:  Your Honor, in that regard, we abided

6   by that the last time.  We destroyed the records.  We don't have

7   them.  But to limit that to one lawyer without the benefit of,

8   you know, an expert consultant is too restrictive.  We're talking

9   about Alise Reicin; she is a medical doctor.

10             THE COURT:  We're talking that, you know, you and your

11  staff or whatever is a different situation.  What I'm talking

12  about is this is a potential problem with privacy and various

13  other things, so I've got to be aware of that.  If it is

14  presented, let's take it a step at a time.  You get it and if

15  there is some reason that you needed to talk to somebody else,

16  I'll listen to you.  If it makes sense, I'll allow it.

17             MR. BIRCHFIELD:  Beyond my staff.

18             MR. BECK:  Your Honor, I don't know what he means by

19  staff, and they've got 20 firms listed as of counsel.  I don't

20  want all 20.  I don't want Mr. Longer to have it.

21             THE COURT:  That's a legitimate point.

22             MR. LONGER:  I might want to look at them.

23             MR. BECK:  Yes, I know he might want to look at them.  I

24  don't want him to look at them.

25             THE COURT:  That's a legitimate point.  Just take it one

1    step at a time.  The only attorney who gets it will be the

2    attorneys handling the case.  If it's another issue, I'll deal

3    with that issue when it comes up, but I don't want to just open

4    the door.

5         I've got to tell you both that that's going to be a

6    really unusual situation where somebody is able to say, I took it

7    or I didn't take it because it's so specific, so fact specific

8    that its relevance is problematic, and it's also not only a 403

9    but it's even a 401.  It's a relevant situation.

10        If it gets over the relevance, I really have to

11   scrutinize 403 because it's so specific that I have problems with

12   it, but I hate to make a blanket ruling yes or no on it because

13   there are so many facts that come into these cases that I'm going

14   to have to deal with.

15        MR. BIRCHFIELD:  Thank you, Your Honor.

16        THE COURT:  I'll give you a copy of this.  Bob, make a

17   copy of these.

18        Anything else that we need to do?

19        MR. ROBINSON:  I have one issue.  I don't expect the

20   Court to do anything today, but I think in one of the meetings we

21   had maybe last month, I brought up the issue of maybe the Court

22   considering not bifurcating not so much the punitive damage

23   amount but the underlying basis, conscious disregard for safety,

24   whatever it is for punitive damages, and letting us put on that

25   portion of the case not much different in the sense of exhibits

1   and depos, but the problem --

2        MR. BECK:  Your Honor, I'm going to object.  I don't

3   have any notice of this.  There is no motion.  It's not scheduled

4   for today.  Sandbagging.

5        THE COURT:  Look, folks, we've got to work a little

6   closer to each other.  You've got to be able to talk to each

7   other first and tell the other side that you're going to talk to

8   the Court so I don't have this problem.  I don't want to be in a

9   situation where attorneys for either side say this is the first

10  I'm hearing of it.  These are real professional folks, and that

11  ought not to be happening, so I appreciate you're talking.

12       MR. ROBINSON:  I will, and maybe we can bring it up on

13  the 6th.

14       THE COURT:  Thank you.  Anything else from anybody?

15       MR. BIRCHFIELD:  Your Honor, one other issue.  We're

16  preparing for trial and, you know, how we're going to put on our

17  case, and I need some guidance in regards to the documents and

18  the stipulations, you know, and we had a long hearing on this.  I

19  just need some direction.  The only way I know to do it is bring

20  it to the Court by way of an example.

21       We have our first witness on the stand, and I want to

22  use or Mark wants to use an exhibit, and we come before the Court

23  and we say, Your Honor, here is Exhibit -- and this is, let's

24  say, the May 1998 scientific board of advisors meeting minutes.

25  Here is document number 386, and Merck has stipulated that this

1   is authentic and a business record.  The Court has considered all

2   of the Merck's objections and deemed that this document is

3   admissible.

4           THE COURT:  Right.

5           MR. BIRCHFIELD:  At this time, we offer Plaintiff's

6   Exhibit 386, and I want to be able to use it for this witness.

7           THE COURT:  I admit it.

8           MR. BIRCHFIELD:  Thank you.

9           THE COURT:  The thing that I'm concerned about from both

10  of you-all, let's say I look at these thousand documents that

11  you've given to me and I say they are admissible.  That doesn't

12  mean that at either the beginning of the trial or at the end of

13  the trial there is a document dump, a thousand documents come in

14  because they are admissible.  Nobody talks about those documents.

15  The trial proceeds for two weeks, and the witnesses talk about

16  one document and not the other 999, and then all of a sudden

17  during closing argument, either side comes up and then puts on

18  the screen documents that the jury is seeing for the first time,

19  hearing about for the first time.  Nobody from the stand has said

20  anything about those documents, and a whole closing argument is

21  woven on the documents that the jury is seeing for the first

22  time.  That, to me, is not the way to go about it.  So I don't

23  allow that to happen.  But if a witness is presented a document

24  and he recognizes it, talks about it, I'm going to admit the

25  document.

 1          MR. BIRCHFIELD:  And, Your Honor, recognizing the
 2  document, I think that is the crux of the issue, and that's the
 3  issue that we're trying to resolve through the stipulation.
 4  Because, you know, if I have an expert or a medical doctor on the
 5  stand, and I show him the May '98 minutes, and Mr. Beck objects
 6  and says he didn't prepare those minutes and hadn't seen them
 7  before litigation, you've already ruled on the preadmissibility
 8  of the documents.

 9          THE COURT:  If I've ruled that it's admissible, you
10  simply show the witness.  For example, Mr. Witness, I show you
11  document such and such.  Do you recognize it?  "Yeah, I recognize
12  it."  It's "such and such."  Judge, this has been declared
13  admissible.  I'll admit it.

14          MR. BIRCHFIELD:  Thank you, Your Honor.

15          THE COURT:  So any document that has been deemed
16  admissible can be admitted into evidence very fast.  The
17  documents that I've held are not admissible, that's preserved for
18  the record.

19          MR. BIRCHFIELD:  Thank you, Your Honor.

20          THE COURT:  Anything else from anybody?  Andy?

21          MR. GOLDMAN:  Yes, Judge, two things.  One, I think I
22  heard you say that you ruled on our Motion in Limine Number 3 on
23  the Fries letter?

24          THE COURT:  Yes.  Three, I've granted that motion.
25  This, to me, is a four-page letter.  It's a bit rambling, to say

 1   the least.  It contains hearsay.  It contains hearsay within

 2   hearsay.  I really think it's a 403 and an 801 problem.  I

 3   exclude it.  I granted the motion.

 4            MR. GOLDMAN:  Judge, the only other thing I wanted to

 5   address today was I notified Mr. Robinson last night, as Bob had

 6   requested, of a few exhibits that we wanted to call to

 7   Your Honor's attention.

 8            THE COURT:  Yes, I looked at the exhibits today.  I got

 9   your memo last night and I looked at them.  I can't tell you one

10   way or the other because I don't have any context of it, so I

11   can't rule on those issues.

12            MR. ROBINSON:  If he gives me the list of exhibits,

13   Your Honor, I'll look at them, and we can address them on

14   July 6th.

15            MR. LONGER:  Your Honor, Fred Longer for the record.

16            THE COURT:  Sure.

17            MR. LONGER:  I haven't read Your Honor's order on that

18   Motion in Limine Number 3, but I would like to move for

19   reconsideration, if I may, at least as to one small aspect.

20            I understand what Your Honor says about there being

21   hearsay in the letter, and our position would be, and we

22   mentioned this in our supplemental opposition, that the point of

23   the letter that it's coming in for notice that Merck was put on

24   notice by Dr. Fries of the cardiovascular risks posed by Vioxx.

25            What Dr. Fries did was this investigation that included

1   conversations with other physicians that he felt and that
2   expressed to him that Merck was trying to intimidate them in some
3   fashion.  And I believe that that's where Merck is most concerned
4   that there is this hearsay issue.  And from my perspective, the
5   letter comes in on notice.

6          I can understand that there is this concern about
7   certain paragraphs of the letter that deal with hearsay, and our
8   position would be that if they are that concerned about it,
9   excise them, redact those paragraphs that contain the hearsay,
10  but the notice aspect of the letter is not hearsay.  And there is
11  a lot of firsthand knowledge that this gentleman is speaking to.

12         He was deposed just a week ago, and Merck has had ample
13  opportunity to cross-examine him, and I would respectfully
14  request that if there is going to be a ruling to preclude the
15  letter that it only be those portions of the letter that are
16  hearsay, not the whole letter.

17         THE COURT:  I don't know what the deposition is, and I
18  have to look at the deposition, but I've looked at the letter.
19  I've thought about that.  The letter is a very difficult letter.
20  I mean, I try to understand it, and I've got a little familiarity
21  with the case, but he's going in one direction, then he comes in
22  another direction and he says something else.  It's really a
23  thinking-out-loud matter.

24         He says that it has come to his attention.  I don't
25  know who brought it to his attention.  And he says somebody told

1    me they felt this way about it, and so I want to report that to

2    you.  And then he says I talked to so-and-so and so-and-so, and

3    so I gleaned from discussions with them their concern.

4          It's so much of hearsay within hearsay within hearsay.

5    I counted three instances where it's within hearsay within

6    hearsay.  So I get the gist of what you're saying.

7          MR. LONGER:  It reflects the doctor's state of mind that

8    he's aware of all of this going on around him.  He's actually

9    gone through this investigation, and in fact, he received a phone

10   call from Merck's vice-president to talk about this very concern

11   that his research assistant, Dr. Fries' research assistant was

12   engaged in some unbalanced discussion of Vioxx.  So there is a

13   lot of his personal knowledge involved.

14         And what he's expressing to Mr. Gilmartin is his state

15   of mind as to what Merck is doing.  But the most important aspect

16   of the letter, which is why it would be introduced, is not so

17   much what we're talking about here, but the fact that Dr. Fries

18   puts Merck on notice, you've got a problem with cardiovascular

19   risks on this drug and I want you to know it.

20         THE COURT:  Okay.  I appreciate it.  I understand your

21   objection.  I overrule the objection.  Anything else?

22              Thank you.  Court will stand in recess.

23         THE DEPUTY CLERK:  Everyone rise.

24                     (END OF COURT)

25                     *    *    *

REPORTER'S CERTIFICATE

I, Cathy Pepper, Certified Realtime Reporter, Registered Professional Reporter, Certified Court Reporter, Official Court Reporter, United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

 

 

 

_____

Cathy Pepper, CCR, RPR, CRR

Official Court Reporter

United States District Court