```
 1                    UNITED STATES DISTRICT COURT
 2                    EASTERN DISTRICT OF LOUISIANA
 3
 4
 5   IN RE:  VIOXX PRODUCTS        *   Docket MDL 1657-L
        LIABILITY LITIGATION       *
 6                                  *   July 13, 2006, 8:30 a.m.
                                    *
 7                                  *   New Orleans, Louisiana
     * * * * * * * * * * * * * * *
 8
 9
10                  STATUS CONFERENCE BEFORE THE
                     HONORABLE ELDON E. FALLON
11                  UNITED STATES DISTRICT JUDGE
12
     APPEARANCES:
13
14   For the Plaintiffs:          Herman, Herman, Katz & Cotlar
                                   BY:  RUSS M. HERMAN, ESQ.
15                                 820 O'Keefe Avenue
                                   New Orleans, Louisiana 70113
16
17                                 Seeger Weiss
                                   BY:  CHRISTOPHER A. SEEGER, ESQ.
18                                 One William Street
                                   New York, New York 10004
19
20   For the Defendant:            Stone Pigman Walther Wittmann
                                   BY:  DOROTHY H. WIMBERLY, ESQ.
21                                 546 Carondelet Street
                                   New Orleans, Louisiana 70130
22
23                                 Williams & Connolly
                                   BY:  DOUGLAS R. MARVIN, ESQ.
24                                 725 12th Street N.W.
                                   Washington, D.C 20005
25
```

```
 1  APPEARANCES (Continued):
 2
                                  O'Melveny & Myers
 3                                BY:  JOHN H. BEISNER, ESQ.
                                  1625 Eye Street N.W.
 4                                Washington, DC 20006
 5
     Also Participating:          Daniel E. Becnel Jr., Esq.
 6                                Genevieve Bernal, Esq.
                                  Aditi Anita Shahani, Esq.
 7                                Justin Witkin, Esq.
 8
     Official Court Reporter:     Toni Doyle Tusa, CCR, FCCR
 9                                500 Poydras Street, Room B-406
                                  New Orleans, Louisiana 70130
10                                (504) 589-7778
11
12
     Proceedings recorded by mechanical stenography, transcript
13   produced by computer.
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 2:05-md-01657-EEF-DEK   Document 13111   Filed 12/18/07   Page 2 of 20

## PROCEEDINGS

### (July 13, 2006)

**THE DEPUTY CLERK:** Everyone rise.

**THE COURT:** Be seated, please. Call the case.

**THE DEPUTY CLERK:** MDL 1657, In Re: Vioxx.

**THE COURT:** Counsel, make your appearances for the record, please.

**MR. MARVIN:** Douglas Marvin for Merck, Your Honor.

**MR. HERMAN:** May it please the Court. Good morning, Judge Fallon. Russ Herman for the PSC. I have a matter of personal privilege I would like to put on the record this morning. This is the last appearance with us of Bob Wynne, your law clerk in this case, who goes to the Fifth Circuit. He has been exceptional. He is courteous, available, bright. He has made the handling of this case, from a lawyering point of view, a lot easier on all of us.

I'm not surprised because I've been fortunate to practice in this courthouse and the prior courthouse for over 40 years now and had the pleasure of litigating with and against Michaelle Pitard Wynne. She became an excellent magistrate and served this Court. So it's true the apple doesn't fall far from the tree. On behalf of the PSC, Bob, we wish you well. We thank you very much for your service not just to Judge Fallon, but to this Court and the lawyers that practice before Judge Fallon. Thank you.

1           **THE COURT:**  Thank you very much.  Bob has been a
2  valuable part of our team.  I know he has done an excellent job
3  and I appreciate it.  I have told him so many times.  I know he
4  has a good future ahead of him.  Judge Wiener will profit from
5  his experience and his hard work across the way.  You have
6  exhausted another one of my law clerks.  You'll be meeting his
7  replacement, Jeremy, shortly.  He has big shoes to fill, but he
8  will do his best to do so.
9           I have had an opportunity to meet with counsel.
10  I understand I have a number of counsel on the phone.  We'll be
11  getting to an issue that some of them are interested in, namely
12  the foreign class action complaints on the *forum non conveniens*
13  matter.  We have some question that they want to raise with the
14  Court.  I'll give them an opportunity to speak on that issue.
15  The first matter is Lexis/Nexis File & Serve.  Anything on
16  that?
17           **MS. WIMBERLY:**  Yes, Your Honor.  Dorothy Wimberly on
18  behalf of the defense steering committee.  Before I get into
19  that, I would like to echo the thanks of the defense steering
20  committee.  You stole my line about Jeremy having big shoes to
21  fill.  We have always had just a wonderful response from Bob.
22           With respect to Lexis/Nexis, there is still that
23  lag time in getting cases on.  The Eastern District clerk's
24  office has done a magnificent job trying to follow up with the
25  transferor courts.  There are still approximately something

1  less than 200 cases out of the total that have not made their
2  way to Lexis/Nexis.
3              Just for the benefit of plaintiffs' counsel, one
4  of the biggest problems when I get a phone call or E-mail from
5  someone telling me their case is not on Lexis, sometimes they
6  are trying to search by plaintiff name.  The way Lexis sets the
7  cases up, if you are not the lead plaintiff in a
8  multi-plaintiff case, you may not be able to pull the case up
9  using the plaintiff name.  The easiest way to determine if your
10 case is on there is to type in the Eastern District of
11 Louisiana case number exactly.  That requires you typing in
12 "2:" and if it's a 2005 case you would type in "2:05CV" and
13 then your Eastern District case number.  That's the only way it
14 pulls up accurately every time.  I would encourage all
15 plaintiffs' counsel to do that before they notify us that it's
16 not on there because many, many times the case is on there.
17          **THE COURT:**  We may be able to put that on our web
18 site.  Maybe Lexis/Nexis can help us out, too.  Maybe they can
19 do some cross-referencing or do something so that if you put in
20 a name the number pops up.
21          **MS. WIMBERLY:**  Lenny and I will be happy to talk to
22 the Lexis representative about that.
23          **THE COURT:**  Let me know if the Court can be any help
24 in either facilitating a meeting or dealing with this issue.
25 State court trial settings.  I notice we do have a number of

1    trial settings in state court.
2             **MR. MARVIN:**  Good morning, Your Honor.  I would like
3    to just echo Russ' comments about Bob.  I'm just sorry I don't
4    have a Shakespeare quote that's fitting for the occasion.
5    There are two cases that are currently under way.  The <u>Doherty</u>
6    case is now in front of the jury in New Jersey.  The <u>Grossberg</u>
7    case is in California.  There are seven cases set between now
8    and the end of the year, two in Alabama and one each in
9    New Jersey, Mississippi, Texas, California, and Illinois.  The
10   dates are set out in the joint report and so I won't go through
11   each of those dates.
12            **THE COURT:**  I've been trying to touch base with the
13   state judges.  I send material to them, they send material to
14   me, so that we don't have to reinvent the wheel.  Some of it is
15   helpful for them, some is helpful for me, because we are
16   dealing with different laws and different procedures and
17   different forums.  You can't really cookie-cut it, so it's
18   helpful.  I am trying my best to coordinate with them.  They
19   have been very receptive, frankly, and I appreciate that.  In a
20   case like this, it really does take some coordination.  As I
21   told them, I will send them whatever I can.  If we need to
22   meet, I'll go meet with them at their place if it's more
23   convenient.  We'll do whatever we can to make it work.
24                 Selection of cases for early federal court
25   trial.  I've set a number of cases.  I just set one case at a

1  time.  For the present, we can do it this way, but in the
2  spring of next year I'll be meeting with counsel to see where
3  we are with the trials.  If we haven't learned anything from
4  the trials that we have had, then I'll try to pick up the pace
5  a little bit.  We'll do several cases at one time.  I think we
6  can probably handle that.  Anything on class actions?
7          **MR. HERMAN:**  May it please the Court.  I do have a
8  request from the PSC and the <u>Barnett</u> trial team.
9          **THE COURT:**  Let me mention the <u>Barnett</u> case.  I got a
10 call yesterday, I think, or the day before from the attorneys,
11 both plaintiff and defendant.  They told me that Mr. Barnett
12 had to be placed in the hospital.  He was in the intensive care
13 unit.  He had been operated on and a stent put into his
14 cardiovascular system.  I understand that he seems to be doing
15 okay.  I slid the trial back one week so that we can give him
16 enough time to recuperate and get ready to try the case.  I
17 think that will be okay.  They attorneys are going to be taking
18 some depositions of the treating physicians to see whether he
19 is able to try the case, what his condition is, or whether it
20 puts any new wrinkles on the matter that might be difficult for
21 us.
22          I'm a little concerned about the dates because
23 we have selected cases that are sequenced -- one picked by the
24 plaintiff, one picked by the defendant, and so forth -- and I'm
25 conscious of that.  If we do begin sliding them, the only way

1  it makes any sense for us to get some input from these cases --
2  and they were picked with that in mind -- is to slide the whole
3  group back, but that's going to take a lot of cooperation from
4  everybody.  Hopefully we won't need that, but just a heads up
5  on it.  I don't have a feel for it yet.  The case will not
6  start on July 24.  It will start on July 31.  So the deadlines
7  will be from the 31st as opposed to the 24th.  Class actions.
8         **MR. BEISNER:**  Your Honor, John Beisner for Merck.  I
9  don't believe there's anything new to report there, Your Honor.
10 We have the various motions pending, but no developments to
11 report there, Your Honor.
12        **THE COURT:**  Okay.  We have got to get to a point
13 where we are able to say what the total census of this whole
14 litigation is, both class as well as others.  There's a period
15 of time when the cases continue to be filed and trickle in, but
16 we have got to get to a point where we draw a line around it
17 and say, "This is the ball of wax we are dealing with," so I
18 get a better feel for that.  There's certain management tools
19 that are difficult to handle when I don't know who's coming in,
20 problems with discovery and problems with other things that
21 complicate matters.  So we have got to get to a point where we
22 can say, "Okay.  This is the scope of the litigation.  This is
23 it."  I don't exactly have any plan on how to do that, but I'm
24 going to be focused on that aspect of the case.
25        **MR. BEISNER:**  Your Honor, I was just going to suggest

1  that might be a good topic for discussion between the two sides
2  and perhaps a conference call with the Court at some point to
3  share our thinking on that.
4          **THE COURT:**  That's why I'm bringing it up.  I'm
5  really looking to you for some suggestions, both sides, so we
6  can deal with this, both class actions as well as all the
7  cases.  We just can't keep it open forever.  There's got to be
8  somewhere along the line that we know what we are dealing with.
9          **MR. BEISNER:**  We will endeavor to have a discussion.
10         **MR. LEVIN:**  I certainly will have a discussion.
11         **MR. SEEGER:**  Judge, just a brief report on the
12  Local 68 class action certified on a nationwide basis.  There's
13  a notice hearing going on actually today in New Jersey in front
14  of Judge Higbee to discuss the scope of notice.  Merck has
15  filed a petition seeking cert. from the Supreme Court of
16  New Jersey.  Plaintiffs have obviously opposed it.  I think we
17  are thinking of a time frame of -- our expectation is 30 to 60
18  days.  We'll report to the Court as we hear.
19         **THE COURT:**  Discovery directed to Merck is the next
20  item.  Anything on that?
21         **MR. MARVIN:**  No, there really isn't, Your Honor.  The
22  company is continuing to make productions of documents on a
23  rolling basis trying to accommodate the priorities that are set
24  for us by the PSC, so that's just continuing, Your Honor.
25         **THE COURT:**  We have the privilege log issue that's

1  still there.  In accordance with the Fifth Circuit's
2  suggestion/directive, I've met on the record with a
3  representative from Merck, an attorney who is in charge of the
4  discovery aspect of the case, and gotten some information from
5  him.  I meet in camera with him, but I have a court reporter
6  taking down all of the comments.  I have sealed the comments,
7  but I have that as part of the record.  I don't meet with him
8  without a court reporter.  Discovery directed to the FDA is the
9  next item.
10            **MR. MARVIN:**  Your Honor, I believe there's no change
11  there either.  There is a pending motion with respect to the
12  deposition of David Graham that we understand is under --
13            **THE COURT:**  I've reviewed most of Dr. Graham's
14  testimony.  I have a little bit more to go.  Discovery directed
15  to third parties is Item VII.
16            **MR. MARVIN:**  Yes.  Again, there's no change there.
17            **THE COURT:**  Deposition scheduling is another item.
18  Is there a problem with deposition scheduling?
19            **MR. HERMAN:**  Your Honor, a number of attorneys in
20  state cases who have not agreed to an assessment for costs are
21  cross-noticing depositions in MDL cases and are having the
22  benefit of our work product without a contribution.  We will be
23  submitting to Your Honor -- and to defense counsel before
24  Your Honor -- an amendment to the PTO regarding that issue.
25  Secondly, Your Honor, we have discussed with defense counsel a

1  PTO 9, Section 3, regarding the use of MDL depositions.  I
2  understand from Mr. Marvin that matter is being worked out.
3           **THE COURT:**  Okay.  Fine.  With regard to the cost
4  issue, it seems to me that an advantage of the MDL is the scope
5  of the litigation; that is to say, the Court has some broader
6  reach, so the discovery can be encouraged or directed or ruled
7  on more easily than it can be in the 50 states.  There is an
8  advantage to using that vehicle for the discovery of cases even
9  if they are to be tried in state court, but that's an expensive
10 vehicle.  A lot goes into it and a lot of effort is put forth
11 by the counsel in the MDL, so that has to be dealt with.
12 Hopefully it's a reasonable amount, but it does have to be
13 dealt with.  I think there's a big benefit to the states to
14 have access to this material.
15          With regard to coordinating the depositions, I
16 do think that, once they are taken, they ought to be able to be
17 used throughout the country.  That's the flip side of that
18 first issue.  If the states have only theoretical access to the
19 material, but they can't use it, then they have a right to say,
20 "Well, why should I pay for it" and also "Why should I
21 cooperate with the MDL," so this is a linchpin.  They have to
22 have access to it, but they also have to be comfortable with
23 the fact that they can use it in their cases.  That package is
24 a usable package, so I do ask the defendants to focus on that.
25          **MR. MARVIN:**  Andy Birchfield and I spoke about that

1   very issue this morning.  We knew it was on the agenda.  We
2   have identified the cases where it has become an issue and we
3   are confident we can work it out.
4          **THE COURT:**  Good.  I appreciate that.  Plaintiff
5   profile and Merck profile forms.  Anything about that?  This is
6   an essential tool for getting a feel for the case, so each side
7   has to be able to be comfortable with the material that they
8   are getting in those profile forms and each side has to
9   participate in it and do whatever they can to get those forms
10  timely.  From the plaintiffs' standpoint, they have to get the
11  forms because the defendant's forms don't come due until they
12  get plaintiffs' forms, so it really stops the litigation from
13  moving.  I think it's essential that we do that and spend some
14  time making sure that it's done so that we can get a handle on
15  this case and get a census of it.
16         **MR. HERMAN:**  Your Honor, there are productive ongoing
17  discussions about that issue between defense counsel and the
18  PSC.
19         **THE COURT:**  Okay.  Federal/state coordination.
20  Anything from the states that we need to talk about?
21         **MR. WITKIN:**  Good morning, Your Honor.  Justin Witkin
22  for the state liaison committee.  Dawn Barrios is out of town
23  today and she asked me to stand in for her this morning.
24  Nothing new.  We continue to do the monthly monitoring of the
25  remands, and I have for you the update with the disk.

1        **THE COURT:**  I appreciate your effort on that.  That's
2   helpful to me.  As I mentioned, I'm going to be devoting
3   considerable time on that when it is the appropriate time.
4        **MR. SEEGER:**  Your Honor, I don't know if you have met
5   Mr. Witkin in your Court.  He has been an integral part of the
6   state liaison committee.  He has done a lot of work and really
7   helped tremendously.
8        **THE COURT:**  I appreciate your work.  I really do
9   think it's important that we coordinate with the states.  I
10  think it makes it easier on the litigants.  It makes it easier
11  on the attorneys.  You're an important part of the process, and
12  I appreciate all the work you have done.
13       **MR. WITKIN:**  Thank you.
14       **THE COURT:**  Anything on pro se claimants?
15       **MR. HERMAN:**  No, Your Honor.
16       **THE COURT:**  Let's move, then, to the foreign class
17  action matter.  The conference operator, are you able to unmute
18  Ms. Bernal?  Let's check and see.  Let's go to generic trial
19  performance and Rule 702, motions in limine.  Anything on that?
20       **MR. HERMAN:**  Just two issues because many of these
21  issues have been raised in the context of the <u>Barnett</u> case.
22  Yesterday we received Merck's motion to quash the subpoenas to
23  the deposition of Mr. Anstice.  It was filed on behalf of
24  Mr. Anstice, who is an officer of Merck, and Merck itself.  We
25  have alerted the Court to that.  We would like an opportunity

1   Monday to have -- it was to appear at trial.  Thank you, Chris.
2   We would like the opportunity Monday to have someone from our
3   trial team and someone from their trial team call in at
4   whatever time is convenient for Your Honor to discuss it.
5           **THE COURT:**  Okay.  I'll schedule a meeting for Monday
6   and we'll talk about it a little more.
7           **MR. HERMAN:**  Secondly, Your Honor, the PSC, on behalf
8   of the trial team, has requested that the demonstratives that
9   are to be exchanged simultaneously by plaintiff and defense in
10  these set cases -- if it is convenient for Your Honor's
11  schedule, that the unresolved matters as to demonstratives to
12  be used during opening be brought to you that afternoon so they
13  can be considered closely by Your Honor in terms of the
14  submission.
15          **THE COURT:**  Let's get the plaintiff counsel and
16  defense counsel to give me a date on which they're comfortable
17  with meeting with me on that issue, and then I'll direct them
18  to get together on or before that date and to talk with me on
19  any issues that are outstanding in the afternoon of that date.
20  Let me hear from you by Monday and I'll set a date.  I can do
21  it on the phone or I can do it in person when I talk with them
22  a little bit more about that, too.
23          **MR. HERMAN:**  Thank you, Your Honor.  There's no issue
24  as to the next matter.  The PSC met last night.  We are
25  circulating a questionnaire as to stroke cases.  We hope to

1 advise defense counsel and Your Honor as to selection of future
2 cases, particularly stroke cases, by the next status
3 conference.
4      **THE COURT:**  I do notice that the parties have agreed
5 to delay discovery in those nontrial cases in the cases that
6 are being handled by counsel who have trials.  I appreciate the
7 parties' cooperation in that regard because I do want these
8 attorneys focused on trial, but we do have to get on with the
9 nontrial cases' discovery, so both of those things are
10 important.
11      I talked with you about the ECF and the
12 certificate of service for E-filing in chambers.  Anything that
13 we need for the record?
14      **MS. WIMBERLY:**  Yes, Your Honor.  As we indicated in a
15 prior report, the Court did enter an order on June 6 that sets
16 forth the specific instructions for doing E-filing in the Vioxx
17 MDL.  I would just simply like to encourage out-of-state
18 counsel to contact the clerk's office because you do not have
19 to have case-specific training here.  You simply have to be
20 trained on an ECF system in your home state.  If you contact
21 the clerk's office here, they will provide you with the
22 appropriate password and log-in information.  This will greatly
23 help the clerk's office in cutting down on the amount of manual
24 scanning and input they have to do.  We would simply like to
25 encourage all counsel to make contact with the clerk's office

1  and begin using the ECF filing system.
2          With respect to the certificate of service for
3  E-filing, since the last status conference the Court has
4  entered Pretrial Order 8B, which meshes the typical ECF
5  certificate of service with the certificate of service that had
6  previously been adopted for use in this Vioxx MDL, which
7  references service on the liaison counsel and using Lexis/Nexis
8  File & Serve.  The certificate of service that should be used
9  on all E-filings is contained in Pretrial Order 8B and is set
10 forth in the joint status report.  If you are not doing an
11 E-filing, you should continue to use the standard Lexis/Nexis
12 certificate of service that has been in place since the Court
13 entered, I believe, Pretrial Order 8 over a year ago.
14         **THE COURT:**  If anybody has any problems, please talk
15 to Gene Smith in the clerk's office.  He is able to assist you
16 and is very willing to do so.  Summary judgment.  I understand
17 there's been a motion filed on preemption.
18         **MR. HERMAN:**  A preemption motion filed on behalf of
19 Merck.  We will need additional time to respond.  The PSC met
20 last night.  We'll be meeting again today immediately following
21 this conference.  We know we are going to need additional time
22 to respond and then the defendants at that point, as is the
23 practice in these cases, will have time to file a surreply
24 brief.  We anticipate the matter would be set for hearing
25 sometime in October.

1    **THE COURT:**  Anything on that?
2    **MR. BEISNER:**  Your Honor, I just note we'll work with
3    the PSC to come up with a briefing schedule.
4    **THE COURT:**  That's what I need.  You all have to get
5    together, then give me some briefing schedule that you propose,
6    and I'll look it over.
7    **MR. HERMAN:**  Arnold Levin will handle that on behalf
8    of the PSC with Tom's office.
9    **THE COURT:**  Do you want to come forward?
10   **MS. SHAHANI:**  Anita Shahani for Alicia Gomez.
11   Kathy Snapka apologizes she wasn't able to be here today.  We
12   will be coordinating with the PSC and counsel for the <u>Arnold</u>
13   case on that response.
14   **THE COURT:**  Okay.  Tolling agreements.
15   **MR. HERMAN:**  The PSC and the defense counsel for
16   Merck will be discussing an issue relating to the definition of
17   "cardiovascular injury."  Other than that, we have nothing to
18   bring to the Court's attention.
19   **THE COURT:**  All right.  Back to our motion to
20   dismiss, do I have the people on the phone now?
21   **MS. BERNAL:**  Good morning, Judge Fallon.  This is
22   Genevieve Bernal with Kenneth B. Moll & Associates.
23   **THE COURT:**  There's a motion to dismiss the foreign
24   class action complaints, and you wish to have an opportunity to
25   file a surreply brief; is that what's before me at this point?

1       **MS. BERNAL:**  Yes, sir.

2       **MR. BEISNER:**  This is John Beisner, for the benefit of counsel on the phone.  Our concern here is merely one of timing.  We don't have an objection to filing the surreply.  The request is for an additional 60 days to do this.  We don't believe that a surreply is necessary.  If counsel want to do it, that's fine, but this motion has already been pending for five months.  Counsel have asked for another 60 days.  I suspect it will take another 30 days after to get that argued.

      This is a very critical issue in the case, as to whether foreign claimants will be permitted to have their claims heard here.  What I was going to suggest, Your Honor, is -- and, again, obviously that would all depend on the Court's schedule -- that we might set this for hearing in conjunction with the next status conference of the Court in August.  If counsel are able to file a surreply in the meantime, we have no objection to that.  Again, I don't want to impose on the Court's schedule, but that was just a suggestion I was going to make as a way to resolve this.

      **THE COURT:**  How are the plaintiffs on that?

      **MS. BERNAL:**  That's fine with us.

      **THE COURT:**  Is that pushing you too much?

      **MS. BERNAL:**  No.  That would work just fine.

      **THE COURT:**  Our next conference is set for Thursday, August 24, at 10:00 a.m.  I'll have the hearing on that date.

1  I'll give you an opportunity to file a brief.  Let's get it in
2  as quickly as you can so I'll have an opportunity to study it.
3           **MS. BERNAL:**  Thank you.
4           **THE COURT:**  Thank you very much.  Anything else from
5  anybody?
6           **MR. BECNEL:**  Judge, I know cross-pollination between
7  judges and lawyers is good.  In the welding rod litigation, we
8  have gotten a request from the court -- who is basically about
9  the same as you, with 4,000 or 5,000 cases before the MDL and
10 10,000 cases or so outside -- about common issues trials under
11 Rule 42.  The court has invited us in that litigation to submit
12 briefs and memoranda dealing with those issues.  Mr. Beisner is
13 on the other side.  We are both doing this at this time.
14 Mr. Drew Ranier just did a federal trial that lasted five weeks
15 or more.  I provided all of this to the PLC, at least as to my
16 cases in Louisiana, and I would encourage the Court to maybe
17 consider this.  I'll give Mr. Wynne a copy of the brief we have
18 filed, Mr. Beisner, and it's just an idea for how do you break
19 the logjam.  That's what that court is worried about.
20          **THE COURT:**  Okay.
21          **MR. BECNEL:**  She is in the same boat as you are, "How
22 am I going to break this logjam?"
23          **THE COURT:**  Okay.  I appreciate your comment and
24 suggestion.  Anything else from anybody?
25          **MR. HERMAN:**  Nothing from the PSC, Your Honor.

1   **THE COURT:** I'll see you all, then, on August 24.
2  Court will stand in recess.
3   **THE DEPUTY CLERK:** Everyone rise.
4  * * *

## CERTIFICATE

I, Toni Doyle Tusa, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

```
                                _____
                                Toni Doyle Tusa, CCR, FCRR
                                Official Court Reporter
```