2676

1                  UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE: VIOXX PRODUCTS          *   MDL DOCKET NO. 1657
    LIABILITY LITIGATION           *
6                                  *
                                   *
7   THIS DOCUMENT RELATES TO       *   AUGUST 17, 2006, 8:30 A.M.
                                   *
8                                  *
    GERALD BARNETT V. MERCK        *   CASE NO. 06-CV-485-L
9     & CO., INC.                  *
    * * * * * * * * * * * * * * * *

10

11                            VOLUME XIV
12                      JURY TRIAL BEFORE THE
                        HONORABLE ELDON E. FALLON
13                     UNITED STATES DISTRICT JUDGE

14
    APPEARANCES:
15

16  FOR THE PLAINTIFF:            ROBINSON, CALCAGNIE & ROBINSON
                                  BY:  MARK P. ROBINSON JR., ESQ.
17                                620 NEWPORT CENTER DRIVE
                                  NEWPORT BEACH, CALIFORNIA 92660
18

19  FOR THE PLAINTIFF:            BEASLEY ALLEN CROW METHVIN
                                    PORTIS & MILES
20                                BY:  ANDY D. BIRCHFELD JR., ESQ.
                                  234 COMMERCE STREET
21                                POST OFFICE BOX 4160
                                  MONTGOMERY, ALABAMA 36103
22

23  FOR THE DEFENDANT:            BARTLIT BECK HERMAN
                                    PALENCHAR & SCOTT
24                                BY:  PHILIP S. BECK, ESQ.
                                    ANDREW L. GOLDMAN, ESQ.
25                                54 W. HUBBARD STREET, SUITE 300
                                  CHICAGO, ILLINOIS 60601


                         DAILY COPY

1

2 OFFICIAL COURT REPORTERS: CATHY PEPPER, CCR, RPR, CRR
             TONI DOYLE TUSA, CCR, FCRR
3              500 POYDRAS STREET, ROOM HB-406
             NEW ORLEANS, LOUISIANA 70130
4              (504) 589-7778

5

6

7 PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
 PRODUCED BY COMPUTER.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DAILY COPY

1                          <u>I N D E X</u>

2                                                        <u>PAGE</u>

3
   JURY VERDICT 1                                        2679
4

5  JURY INSTRUCTIONS                                     2688

6
   CLOSING ARGUMENTS
7        MARK P. ROBINSON JR., ESQ.                      2692
         PHILIP S. BECK, ESQ.                            2696
8        MARK P. ROBINSON JR., ESQ.                      2704

9
   JURY VERDICT 2                                        2709
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                          DAILY COPY

1                        PROCEEDINGS

2                     (AUGUST 17, 2006)

3              (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE

4     TRANSCRIBED BY TONI DOYLE TUSA, CCR, FCRR, OFFICIAL COURT

5     REPORTER.)

6              THE DEPUTY CLERK:  EVERYONE RISE.

7              THE COURT:  BE SEATED, PLEASE.  GOOD MORNING.

8     GENTLEMEN OF THE JURY.  THE JURY HAS RETURNED TO THE COURTROOM.

9     THE LITIGANTS AND THE LAWYERS ARE PRESENT.  MEMBERS OF THE

10    JURY, HAVE YOU REACHED A VERDICT?

11             THE FOREPERSON:  WE HAVE, YOUR HONOR.

12             THE COURT:  WOULD YOU PLEASE GIVE THE VERDICT TO MY

13    COURTROOM DEPUTY.

14             THE FOREPERSON:  (COMPLIES)

15             THE COURT:  THE COURTROOM DEPUTY WILL PLEASE READ THE

16    VERDICT.

17             THE DEPUTY CLERK:  "UNITED STATES DISTRICT COURT,

18    EASTERN DISTRICT OF LOUISIANA, IN RE: VIOXX PRODUCTS LIABILITY

19    LITIGATION, MDL 1657, SECTION L.  THIS DOCUMENT RELATES TO

20    BARNETT VERSUS MERCK & CO., INC., 06-485.

21                   "JURY INTERROGATORIES:

22                   "(1)  DO YOU FIND THAT MERCK & CO., INC., FAILED

23    TO ADEQUATELY WARN GERALD BARNETT'S TREATING PHYSICIANS OF A

24    KNOWN OR REASONABLY SCIENTIFICALLY OR MEDICALLY KNOWABLE RISK

25    ASSOCIATED WITH VIOXX AND THAT SUCH FAILURE TO ADEQUATELY WARN

1   WAS A LEGAL CAUSE OF AN INJURY TO GERALD BARNETT?  NO.

2               "(2)  DO YOU FIND THAT MERCK & CO., INC., WAS

3   NEGLIGENT IN FAILING TO ADEQUATELY WARN GERALD BARNETT'S

4   TREATING PHYSICIANS OF A KNOWN OR REASONABLY SCIENTIFICALLY OR

5   MEDICALLY KNOWABLE RISK ASSOCIATED WITH VIOXX AND THAT SUCH

6   NEGLIGENCE WAS A LEGAL CAUSE OF AN INJURY TO GERALD BARNETT?

7   YES.

8               "(3)  DO YOU FIND THAT MERCK & CO., INC.,

9   KNOWINGLY MISREPRESENTED OR FAILED TO DISCLOSE A MATERIAL FACT

10  TO GERALD BARNETT'S TREATING PHYSICIANS IN A CIRCUMSTANCE WHERE

11  IT WAS REQUIRED TO DO SO, THAT GERALD BARNETT'S TREATING

12  PHYSICIANS WERE ENTITLED TO AND DID RELY ON THAT

13  MISREPRESENTATION OR NONDISCLOSURE, AND THAT THE

14  MISREPRESENTATION OR NONDISCLOSURE WAS A LEGAL CAUSE OF AN

15  INJURY TO GERALD BARNETT?  YES.

16              "(4)  DO YOU FIND THAT THERE WAS NEGLIGENCE ON

17  THE PART OF GERALD BARNETT THAT WAS A LEGAL CAUSE OF HIS

18  INJURY?  NO.

19              "(5)  DO YOU FIND THAT THERE WAS NEGLIGENCE ON

20  THE PART OF DR. MICHAEL MCCAFFREY THAT WAS A LEGAL CAUSE OF

21  GERALD BARNETT'S INJURY?  NO.

22              "(6)  DO YOU FIND THAT THERE WAS NEGLIGENCE ON

23  THE PART OF DR. MICHAEL MIKOLA THAT WAS A LEGAL CAUSE OF

24  GERALD BARNETT'S INJURY?  NO.

25              "(7)  DO YOU FIND THAT THERE WAS NEGLIGENCE ON

DAILY COPY

1  THE PART OF DR. MARK KARAVAN THAT WAS A LEGAL CAUSE OF

2  GERALD BARNETT'S INJURY?  NO.

3             "(9)  WHAT AMOUNT, IF ANY, DO YOU FIND WILL

4  FAIRLY ADEQUATELY COMPENSATE GERALD BARNETT FOR DAMAGES

5  SUFFERED DUE TO HIS USE OF VIOXX?  $50 MILLION.

6             "NEW ORLEANS, LOUISIANA, THIS 17th DAY OF

7  AUGUST, 2006.  REGINALD HARRIS, FOREPERSON."

8             GENTLEMEN OF JURY, IS THAT YOUR VERDICT?

9          **THE JURY:**  YES, IT IS.

10          **THE COURT:**  DOES ANYONE WISH THE JURY TO BE POLLED?

11          **MR. BECK:**  YES, YOUR HONOR.

12          (WHEREUPON, THE JURY WAS POLLED AND ALL ANSWERED IN

13  THE AFFIRMATIVE.)

14          **THE COURT:**  THE VERDICT WILL BE MADE A PART OF THE

15  RECORD.  I ASK AT THIS POINT THAT THE JURY RETURN TO THE JURY

16  ROOM.  I HAVE SOME PROCEDURAL MATTERS TO WORK ON AND I'LL BE

17  WITH YOU IN A MOMENT.  ALL RISE AS THE JURY LEAVES, PLEASE.

18          (WHEREUPON, THE JURY EXITED THE COURTROOM.)

19          **THE COURT:**  BE SEATED. LET ME SEE COUNSEL AT THE

20  BENCH.

21          (WHEREUPON, THERE WAS A CONFERENCE AT THE BENCH

22  OUTSIDE THE PRESENCE OF THE COURT REPORTER.)

23          **THE DEPUTY CLERK:**  MARSHAL, WOULD YOU BRING THE JURY

24  IN.

25          (WHEREUPON, THE JURY ENTERED THE COURTROOM.)

2682

1          **THE COURT:**  BE SEATED, PLEASE.  MEMBERS OF THE JURY,

2    I HAVE ONE THING TO DISCUSS WITH YOU.  THE CASE HAS BEEN

3    PRESENTED IN ITS ENTIRETY ON THE COMPENSATORY DAMAGES STAGE.

4    BECAUSE OF YOUR VERDICT, MEANING THAT YOU HAVE FOUND LIABILITY,

5    THERE IS A SECOND PHASE OF THE CASE AND THAT IS PUNITIVE

6    DAMAGES.  THE PUNITIVE DAMAGES IS DONE SIMPLY BY INTRODUCING

7    CERTAIN EVIDENCE AND THEN THE PARTIES PLAN TO ARGUE THE CASE,

8    ABOUT 15 MINUTES EACH, SO THAT PHASE OF THE CASE WILL BE

9    FOCUSED ON NOW.

10          WE ARE GOING TO TAKE A 15-MINUTE BREAK SO THAT

11    THE ATTORNEYS -- LET ME MAKE IT A HALF-AN-HOUR BREAK SO THAT

12    THE ATTORNEYS CAN MEET WITH ME AND GET THEIR ARGUMENTS IN

13    ORDER, AND THEN WE'LL COME BACK AND TALK WITH YOU.  WE SHOULD

14    HAVE THE CASE TO YOU IN ABOUT AN HOUR SO YOU CAN FOCUS ON THAT

15    ASPECT OF THE CASE.  ALL OF US APPRECIATE THE ATTENTION YOU

16    HAVE BEEN GIVING TO THE CASE.  WE ARE ALMOST THERE.  I

17    APPRECIATE YOUR FORBEARANCE.  ALL RISE FOR THE JURY.

18          (WHEREUPON, THE JURY EXITED THE COURTROOM.)

19          **THE DEPUTY CLERK:**  EVERYONE RISE.

20          **THE COURT:**  BE SEATED, PLEASE.  THE JURY IS OUT OF

21    THE ROOM.  I WILL HEAR ANY MOTIONS THAT NEED TO BE MADE, WITH

22    THE UNDERSTANDING THAT THE MOTIONS CAN BE SUPPLEMENTED MORE

23    THOROUGHLY WITH WRITTEN MATERIAL.

24          **MR. CURREY:**  THANK YOU, YOUR HONOR.  BRIAN CURREY FOR

25    MERCK.  YOUR HONOR, WE WOULD MOVE FOR JUDGMENT NOTWITHSTANDING

DAILY COPY

1   THE VERDICT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL ON THE
2   GROUNDS THAT THE VERDICT ON COUNT 1 AND COUNT 2 ARE
3   INCONSISTENT IN THAT A DEFENSE VERDICT ON STRICT LIABILITY
4   FAILURE TO WARN WOULD EXONERATE THE DEFENDANT ON FAILURE TO
5   WARN UNDER ANY THEORY, INCLUDING NEGLIGENCE; WHEREAS, THE
6   COUNT 2 VERDICT WAS FOR THE PLAINTIFF ON A NEGLIGENCE THEORY
7   AND FAILURE TO WARN.  MY UNDERSTANDING IS THAT YOUR HONOR HAS
8   AGREED THAT WE CAN SUPPLEMENT THIS FURTHER AT A LATER DATE.
9        **THE COURT:**  YES, I WILL ALLOW YOU TO SUPPLEMENT.  ONE
10  THING YOU CAN ADDRESS WHEN YOU SUPPLEMENT IT IS THAT I TOLD THE
11  JURY, BECAUSE IT'S CONSISTENT WITH THE LAW, THAT THERE ARE
12  THREE SEPARATE THEORIES THAT COULD HAVE BEEN TRIED TO THREE
13  DIFFERENT JURIES AND THAT EACH WERE SEPARATE, AND THE JURY HAD
14  TO FOCUS ON EACH ONE AND RETURN A VERDICT ON EACH ONE OF THEM
15  SEPARATELY.  I GAVE THEM THE JURY CHARGE AND ALSO GAVE THEM A
16  VERDICT FORM IN WHICH THEY WERE INSTRUCTED TO LOOK AT EACH ONE
17  SEPARATELY.  IN FACT, ONE OF THEM THEY HAD TO USE CLEAR AND
18  CONVINCING AS A STANDARD AS OPPOSED TO ANOTHER ONE, WHICH THEY
19  USED PREPONDERANCE AS THE STANDARD.  I WILL BE INTERESTED IN
20  YOUR WRITTEN MATERIAL ON THAT.
21            LET ME HEAR FROM THE PARTIES AS TO THE DOCUMENTS
22  THEY INTEND TO PRESENT.  WHAT I UNDERSTAND, SOME DOCUMENTS ARE
23  GOING TO BE PRESENTED, THEN WE ARE GOING TO HAVE ORAL
24  ARGUMENTS, EACH SIDE, 15 MINUTES.
25            **MR. ROBINSON:**  YOUR HONOR, I'M GOING TO SHOW MY

2684

1    SLIDES SO YOU KNOW WHAT I'M DOING.  SOME WE HAVE ALREADY PUT

2    IN.  THIS IS A NEW DOCUMENT, YOUR HONOR.  THIS IS CALLED

3    STAGE 0.  THAT'S WHERE THEY SAY THEY GET $611 MILLION -- IT

4    SAYS THE VALUE, BEING FIRST TO MARKET, IS $611 MILLION.  THAT'S

5    ONE THAT'S NOT IN EVIDENCE YET, BUT WE ARE OFFERING IT INTO THE

6    PUNITIVE PHASE.

7              **MR. CURREY:**  YOUR HONOR, DO YOU WANT TO HEAR

8    OBJECTIONS?

9              **THE COURT:**  THE OTHER TWO ARE IN EVIDENCE; IS THAT

10   WHAT YOU'RE TELLING ME?

11             **MR. ROBINSON:**  YES.

12             **THE COURT:**  WHAT ARE THEY?

13             **MR. ROBINSON:**  THE OTHER ONE IS 732, WHICH IS THIS

14   ONE -- P1.0009.  THAT'S IN EVIDENCE ALREADY.

15             **THE COURT:**  0009.

16             **MR. ROBINSON:**  1135 IS IN EVIDENCE, ALSO.

17             **THE COURT:**  I'M GOING TO GIVE THE INSTRUCTIONS TO THE

18   JURY FIRST SO THAT THEY UNDERSTAND SOME GROUND RULES.  ONE PART

19   OF THE INSTRUCTION IS, "IN DETERMINING THE AMOUNT OF PUNITIVE

20   DAMAGES, IF ANY, THAT IS NECESSARY FOR PUNISHMENT AND

21   DETERRENCE, YOU MAY CONSIDER ONLY THE DEFENDANT'S WRONGFUL

22   CONDUCT THAT OCCURRED WITHIN THE STATE OF SOUTH CAROLINA.  YOU

23   MAY NOT AWARD ANY PUNITIVE DAMAGES FOR THE PURPOSE OF PUNISHING

24   THE DEFENDANT RELATIVE TO THE SALE OF VIOXX IN OTHER STATES OR

25   FOR THE PURPOSE OF PUNISHING OR DETERRING THE DEFENDANT'S

DAILY COPY

1  CONDUCT OUTSIDE THE STATE OF SOUTH CAROLINA."  THAT IS THE

2  STATE OF THE LAW IN SOUTH CAROLINA, SO I WILL BE GIVING THAT

3  CHARGE, AS ALL OF YOU KNOW.

4          ALSO, IN THE JURY CHARGE THERE IS A PORTION OF

5  IT, "ANY PENALTY IMPOSED SHOULD TAKE INTO ACCOUNT THE

6  REPREHENSIBILITY OF THE CONDUCT, THE HARM CAUSED, THE

7  DEFENDANT'S AWARENESS OF THE CONDUCT'S WRONGFULNESS," AND SO

8  FORTH.  I FOCUS ON THE REPREHENSIBILITY OF THE CONDUCT.  THE

9  QUESTION IS WHETHER THESE DOCUMENTS GO TO REPREHENSIBILITY.

10 THEY MAY NOT HAVE ANY RELEVANCE OR ACTUALLY LIMITED

11 SIGNIFICANCE, IF ANY, ON THE DAMAGES IN SOUTH CAROLINA BECAUSE

12 THIS SEEMS TO ME TO BE NATIONAL AS OPPOSED TO LOCALLY, THE

13 STATE OF SOUTH CAROLINA, BUT I WILL HEAR FROM DEFENDANTS.

14         **MR. CURREY:**  THAT'S EXACTLY RIGHT, YOUR HONOR.

15 BRIAN CURREY FOR MERCK.  THE LAW IN THE STATE FARM CASE FROM

16 THE U.S. SUPREME COURT IS QUITE CLEAR ON THIS SUBJECT, AND

17 THESE DOCUMENTS ARE ALL INADMISSIBLE BECAUSE THEY ALL GO TO

18 NATIONWIDE REVENUE WITH RESPECT TO SALES OR PROJECTED SALES

19 OUTSIDE OF THE STATE OF CALIFORNIA (SIC).  THEY ARE

20 INADMISSIBLE FOR THAT PURPOSE.  I'M SORRY.  OUTSIDE THE STATE

21 OF SOUTH CAROLINA.  WHAT DID I SAY?

22         **THE COURT:**  CLOSE ENOUGH.

23         **MR. CURREY:**  IN ADDITION, YOUR HONOR, THEY'RE

24 IRRELEVANT BECAUSE THEY ARE TRYING TO INTRODUCE THEM -- OR

25 PREJUDICIAL BECAUSE THEY ARE TRYING TO INTRODUCE REVENUE DATA

1   WHEN THE ONLY RELEVANT FINANCIAL INFORMATION WOULD BE NET
2   WORTH.
3          **MR. BECK:**  MAY I SAY, ALSO, ON THE DOCUMENT THAT'S
4   NOT YET IN EVIDENCE, THE STAGE O DOCUMENT, THAT VERDICT HAS TO
5   DO WITH INADEQUATE WARNINGS.  IT DOES NOT HAVE TO DO AND THERE
6   WAS NOT A CLAIM THAT THE PRODUCT SHOULD NOT HAVE BEEN BROUGHT
7   TO THE MARKET.  THE CLAIM IS THAT, WHEN IT WAS BROUGHT TO THE
8   MARKET, THERE SHOULD HAVE BEEN DIFFERENT AND BETTER WARNINGS.
9   THE EVIDENCE THAT CAME FROM THEIR OWN WITNESS, DR. AVORN, IS
10  THAT IT WAS PROPER TO BRING THE PRODUCT TO THE MARKET.
11         SO TO PUT UP A DOCUMENT THAT SAYS THERE'S A
12  $600 MILLION ADVANTAGE IN BEING FIRST TO THE MARKET DOESN'T
13  HAVE ANYTHING TO DO WITH REPREHENSIBILITY OR THE FINANCIAL
14  ASPECT OF PUNITIVES, BECAUSE WE ARE NOT BEING CHARGED WITH
15  HAVING BROUGHT A DRUG TO THE MARKET THAT SHOULD NOT HAVE BEEN
16  ON THE MARKET.  SO IT'S IRRELEVANT FOR THAT REASON AND HIGHLY
17  PREJUDICIAL.
18         **THE COURT:**  LET ME HEAR FROM THE PLAINTIFF.
19         **MR. BIRCHFIELD:**  YOUR HONOR, ON STAGE O, WHAT WE SEE
20  IN THAT DOCUMENT IS THAT MERCK ENGAGED IN A HIGHLY AGGRESSIVE
21  CLINICAL DEVELOPMENT PROGRAM, AND THEY DO THAT BECAUSE THEY
22  KNEW THAT THEY NEEDED TO BEAT CELEBREX TO THE MARKET.  THE
23  DIFFERENCE BETWEEN BEING FIRST TO THE MARKET AND SECOND WAS
24  $611 MILLION.  SO WHAT WE HAVE AND WHAT THE EVIDENCE SHOWS IS
25  THAT THIS DOCUMENT WAS DEVELOPED IN 1996.  THEY ENGAGED IN A

```
 1   COMPRESSED AND ACCELERATED CLINICAL DEVELOPMENT PROGRAM.  THEY

 2   HAD EARLY WARNING SIGNS THAT CLINICAL STUDIES, PROTOCOL 023,

 3   RAISED CONCERNS ABOUT THE CV RISKS.  THEY DID NOT STOP AND DO

 4   THE CV OUTCOMES STUDY.  THEY DID NOT DO A STUDY WITH A CV

 5   ENDPOINT AS ITS PRIMARY ENDPOINT.  THIS DOCUMENT SHOWS WHY THEY

 6   DID NOT DO THAT, BECAUSE THEY NEEDED TO RUSH THAT DRUG TO THE

 7   MARKET.  SO IT GOES DIRECTLY TO THE FAILURE TO WARN CLAIM IN

 8   WHAT WAS KNOWN OR KNOWABLE.  IT SHOWS THAT THE CV RISK WAS

 9   KNOWABLE.  THEY CHOSE NOT TO DO THE STUDY BECAUSE THERE WAS

10   $611 MILLION ON THE LINE.

11             THE COURT:  OKAY.

12             MR. BIRCHFIELD:  YOUR HONOR, THERE IS ONE OTHER

13   THING.  WE WERE MISTAKEN.  EXHIBIT 0009 WAS DEEMED ADMISSIBLE

14   BY THE COURT PRETRIAL.  IT WOULD HAVE COME IN THROUGH THE

15   DEPOSITION OF MARTY CARROLL, BUT WE DID NOT PLAY THAT

16   DEPOSITION, SO IT IS NOT IN EVIDENCE CURRENTLY.  THAT DOCUMENT,

17   LIKEWISE, MERCK HAD STIPULATED IT IS AN AUTHENTIC MERCK

18   DOCUMENT.  THAT DOCUMENT SHOWS THAT MERCK HAD ANALYZED THE COST

19   OF BEING ABLE TO OR NOT ABLE TO DIFFUSE THE CV SAFETY ISSUE AND

20   IT WAS $437 MILLION.

21             THE COURT:  OKAY.  I UNDERSTAND THE ISSUES.

22             MR. BECK:  SAME OBJECTION.

23             THE COURT:  I'M GOING TO OVERRULE THE OBJECTION, BUT

24   THIS IS MY THINKING ON THAT ISSUE.  IN ORDER FOR THE JURY TO

25   FIND PUNITIVE DAMAGES IN THIS CASE, THEY MUST FIND SOME WANTON,
```

1   WILLFUL, RECKLESS DISREGARD FOR THE PLAINTIFF'S RIGHTS.  THEY

2   MUST ALSO TAKE INTO CONSIDERATION THE DEFENDANT'S AWARENESS OF

3   THE CONDUCT'S WRONGFULNESS, THE DURATION OF THE CONDUCT, AND

4   ANY CONCEALMENT.  I THINK THOSE DOCUMENTS GO TO THAT PART.

5   HOWEVER, WHEN YOU INTRODUCE THE DOCUMENTS IN FRONT OF THE JURY,

6   I'M GOING TO GIVE THEM A LIMITED INSTRUCTION ON THE USE OF

7   THOSE DOCUMENTS.  SO WE'LL DO IT THAT WAY.  LET'S BRING THE

8   JURY IN, PLEASE.

9            **THE DEPUTY CLERK:**  EVERYONE RISE.

10           (WHEREUPON, THE JURY ENTERED THE COURTROOM.)

11           **THE COURT:**  BE SEATED, PLEASE.  MEMBERS OF THE JURY,

12   LOGISTICS FIRST.  WITH REGARD TO THIS PHASE OF THE CASE, I'M

13   GOING TO TALK WITH YOU AND GIVE YOU THE LAW APPLICABLE TO THIS

14   CASE.  AS YOU KNOW FROM THE PAST, I'M GOING TO GIVE YOU A COPY

15   OF THIS DOCUMENT SO THAT YOU CAN TAKE IT AND STUDY IT, TO THE

16   EXTENT YOU NEED TO, BUT I'M GOING TO TALK WITH YOU ABOUT THE

17   LAW.  IT'S ONLY THREE PAGES, SO IT WILL TAKE ME FIVE OR TEN

18   MINUTES.

19           I HAVE ASKED THE PARTIES TO LIMIT THEIR REMARKS

20   TO 15 MINUTES EACH.  THE PLAINTIFF WILL TAKE 10 MINUTES FRONT

21   AND 5 MINUTES ON REBUTTAL, AND THE DEFENDANTS WILL HAVE 15

22   MINUTES.  THEY ARE NOT GOING TO CALL ANY WITNESSES.  THEY ARE

23   GOING TO INTRODUCE DOCUMENTS AND WILL CALL YOUR ATTENTION TO

24   THE DOCUMENTS.

25           MEMBERS OF THE JURY, THE PLAINTIFF IN THIS CASE

1   SEEKS PUNITIVE DAMAGES.  SINCE YOU HAVE FOUND MERCK LIABLE FOR

2   COMPENSATORY DAMAGES, YOU MUST NOW CONSIDER THE ISSUE OF

3   PUNITIVE DAMAGES.  PUNITIVE DAMAGES ARE IMPOSED TO FURTHER

4   SOCIETY'S INTEREST IN PUNISHING UNLAWFUL CONDUCT AND

5   DETERMINING ITS REPETITION BY OTHERS.  IN DECIDING WHETHER OR

6   NOT TO IMPOSE PUNITIVE DAMAGES AND IN DECIDING HOW MUCH TO

7   IMPOSE, YOU SHOULD CONSIDER THE ACTUAL OR POTENTIAL HARM OR

8   INJURY SUFFERED BY THE PLAINTIFF AND THE DEGREE OF

9   REPREHENSIBILITY OF MERCK'S MISCONDUCT.

10          THE MOST IMPORTANT CONSIDERATION IS THE DEGREE

11  OF REPREHENSIBILITY OF MERCK'S CONDUCT, WHICH YOU MAY DETERMINE

12  BY CONSIDERING WHETHER THE HARM CAUSED ANY PHYSICAL AS OPPOSED

13  TO ECONOMIC; WHETHER THE CONDUCT SHOWED INDIFFERENCE TO OR

14  RECKLESS DISREGARD OF THE HEALTH AND SAFETY OF OTHERS; WHETHER

15  THE CONDUCT INVOLVED REPEATED ACTIONS OR WAS AN ISOLATED

16  INCIDENT; AND WHETHER THE HARM WAS THE RESULT OF INTENTIONAL

17  MALICE, TRICKERY, OR DECEIT, OR WAS A MERE ACCIDENT.

18          NOT ALL OF THOSE FACTORS NEED BE PRESENT AND

19  THERE IS NO MATHEMATICAL FORMULA THAT MUST BE APPLIED.  YOU

20  SHOULD, HOWEVER, PRESUME THAT YOUR AWARD OF COMPENSATORY

21  DAMAGES MAKES THE PLAINTIFF WHOLE FOR THE INJURIES THEMSELVES.

22  YOU ARE TO IMPOSE PUNITIVE DAMAGES ONLY IF YOU DETERMINE THAT

23  MERCK'S CONDUCT, AFTER HAVING PAID COMPENSATORY DAMAGES, IS SO

24  REPREHENSIBLE THAT FURTHER PUNISHMENT OR DETERRENCE IS

25  WARRANTED.

1          IN THIS CASE, PUNITIVE DAMAGES ARE WARRANTED IF

2   YOU, THE JURY, FIND BY CLEAR AND CONVINCING EVIDENCE THAT

3   MERCK'S CONDUCT WAS WILLFUL, WANTON, OR IN RECKLESS DISREGARD

4   OF THE PLAINTIFF'S RIGHTS.  LET ME DEFINE THOSE TERMS FOR YOU.

5          THE WORDS "WILLFUL, WANTON, AND RECKLESS" ARE

6   SYNONYMOUS, MEANING THEY MEAN THE SAME.  THE TERMS ARE USED TO

7   DESCRIBE A CONSCIOUS FAILURE TO EXERCISE AND OBSERVE REASONABLE

8   OR DUE CARE.  THEY REPRESENT AN AWARENESS OF WRONGFUL CONDUCT

9   AND A CONTINUATION TO ACT REGARDLESS OF THE CONSEQUENCES.  THE

10  TEST FOR DETERMINING WHETHER CONDUCT IS WILLFUL, WANTON, OR

11  RECKLESS IS WHETHER IT HAS BEEN COMMITTED IN SUCH A MANNER AND

12  UNDER SOME CIRCUMSTANCE THAT A PERSON OF ORDINARY REASON OR

13  PRUDENCE WOULD HAVE BEEN CONSCIOUS OF IT AS AN INVASION OF THE

14  RIGHTS OF THE INJURED PARTY.

15          "CLEAR AND CONVINCING EVIDENCE" IS AN ELEVATED

16  STANDARD OF PROOF WHICH LIES BETWEEN THE LESSER STANDARD OF

17  PREPONDERANCE OF THE EVIDENCE AND THE HIGHER STANDARD OF BEYOND

18  A REASONABLE DOUBT, WHICH IS REQUIRED IN CRIMINAL CASES.  CLEAR

19  AND CONVINCING EVIDENCE IS THAT DEGREE OF PROOF WHICH WILL

20  PRODUCE IN YOUR MIND A FIRM BELIEF AS TO THE ALLEGATIONS SOUGHT

21  TO BE ESTABLISHED.  CLEAR AND CONVINCING EVIDENCE MEANS

22  EVIDENCE THAT IS PRECISE, EXPLICIT, LACKING IN CONFUSION, AND

23  OF SUCH WEIGHT THAT IT PRODUCES A FIRM BELIEF OR CONVICTION

24  WITHOUT HESITATION ABOUT THE MATTER AT ISSUE.

25          IN DETERMINING THE AMOUNT OF PUNITIVE DAMAGES,

1   IF ANY, TO BE ASSESSED AS PUNISHMENT AND AS A DETERRENT TO

2   OTHERS, YOU SHOULD CONSIDER THE FOLLOWING:

3                    (1)   ANY PENALTY EXPOSED SHOULD TAKE INTO

4   ACCOUNT THE REPREHENSIBILITY OF THE CONDUCT, THE HARM CAUSED,

5   THE DEFENDANT'S AWARENESS OF THE CONDUCT'S WRONGFULNESS, THE

6   DURATION OF THE CONDUCTION, AND ANY CONCEALMENT;

7                    (2)   ANY PENALTY IMPOSED SHOULD TAKE INTO

8   ACCOUNT AS A MITIGATING FACTOR ANY OTHER PENALTY THAT MAY HAVE

9   BEEN IMPOSED OR WHICH MAY BE IMPOSED FOR THE CONDUCT INVOLVED,

10  INCLUDING ANY CRIMINAL OR CIVIL PENALTY OR OTHER PUNITIVE

11  DAMAGE AWARD ARISING OUT OF THE SAME CONDUCT;

12                   (3)   THE AMOUNT OF ANY PENALTY MAY FOCUS ON

13  DEPRIVING THE DEFENDANT OF PROFITS DERIVED FROM THE IMPROPER

14  CONDUCT OR ON AWARDING THE COST TO THE PLAINTIFF OF PROSECUTING

15  THE CLAIM;

16                   (4)   ANY PENALTY MUST BE LIMITED TO PUNISHMENT

17  AND, THUS, MAY NOT AFFECT ECONOMIC BANKRUPTCY.  TO THIS EXTENT

18  AND TO THIS END, THE ABILITY OF THE DEFENDANT TO PAY ANY

19  PUNITIVE DAMAGE AWARD ENTERED INTO SHOULD BE CONSIDERED.

20                   NOW, IN DETERMINING THE AMOUNT OF PUNITIVE

21  DAMAGES, IF ANY, THAT IS NECESSARY FOR PUNISHMENT AND

22  DETERRENCE, YOU MAY CONSIDER ONLY THE DEFENDANT'S WRONGFUL

23  CONDUCT THAT OCCURRED WITHIN THE STATE OF SOUTH CAROLINA.  YOU

24  MAY NOT AWARD ANY PUNITIVE DAMAGES FOR THE PUNISHMENT OR

25  PURPOSE OF PUNISHING THE DEFENDANT RELATIVE TO THE SALE OF

1   VIOXX IN OTHER STATES OR FOR THE PURPOSE OF PUNISHING OR

2   DETERRING THE DEFENDANT'S CONDUCT OUTSIDE THE STATE OF THE

3   SOUTH CAROLINA.

4               THOSE ARE THE RULES, GENTLEMEN, THAT YOU MUST

5   APPLY IN THIS ASPECT OF THE CASE.  I WILL NOW CALL UPON THE

6   PLAINTIFF TO BEGIN THE SUMMATION.

7               **MR. ROBINSON:**  THANK YOU, YOUR HONOR.  THIS IS NOT A

8   CRIMINAL CASE, SO IN A CIVIL CASE YOU CAN JUST GIVE MONEY

9   DAMAGES.  SO WHAT HAPPENS IS WHEN A COMPANY -- YOU CAN'T PUT A

10  COMPANY IN JAIL, YOU CAN'T, EVEN FOR A WEEK.  YOU CAN'T DO

11  THAT.  SO THE WAY THE LAW WORKS IS THAT THE LAW ALLOWS PUNITIVE

12  DAMAGES OVER AND ABOVE COMPENSATORY DAMAGES.  THE BASIS FOR THE

13  PUNITIVE DAMAGES IS, AS THE JUDGE JUST TOLD YOU:

14              (1)  TO IMPOSE TO FURTHER SOCIETY'S INTEREST IN

15  PUNISHING UNLAWFUL CONDUCT.  IN OTHER WORDS, THIS IS FOCUSING

16  ON SOCIETY'S INTEREST AND NOT THE PLAINTIFF'S COMPENSATION.

17  THEY ARE TWO DIFFERENT THINGS.  SO IT'S SOCIETY'S INTEREST IN

18  PUNISHING THIS CONDUCT.

19              (2)  DETERRING REPETITION BY OTHERS, OTHER

20  COMPANIES, TO ACTUALLY DETER OTHER COMPANIES FROM DOING THE

21  SAME KIND OF THING.  THAT'S WHAT THIS IS ABOUT.  SO IF OTHER

22  COMPANIES HEAR ABOUT THE FACT THAT MERCK GOT PUNISHED, AT LEAST

23  IN A CIVIL SETTING, FOR PUNITIVE DAMAGES, THEN "WE BETTER NOT

24  DO THAT."  THAT'S WHAT PUNITIVE DAMAGES ARE ALL ABOUT.

25              WHEN YOU LOOK AT MERCK'S DOCUMENTS, THEY TELL

1    YOU A STORY.  IT'S STORY ABOUT MONEY.  YOU HEARD IN THIS TRIAL

2    WHY THEY RUSHED THIS DRUG TO MARKET, BUT YOU DIDN'T GET TO SEE

3    A DOCUMENT THAT IS RELEVANT.  DO YOU WANT TO GIVE THEM AN

4    INSTRUCTION ON THAT, YOUR HONOR?

5              **THE COURT:**  NO, GO AHEAD.

6              **MR. ROBINSON:**  OKAY.  I'M GOING TO SHOW A DOCUMENT TO

7    YOU THAT YOU DIDN'T SEE.  BASICALLY, THIS IS BEFORE THEY GOT

8    THE DRUG APPROVED.  THIS IS A DOCUMENT THAT SHOWS WHY THEY

9    RUSHED IT TO MARKET.

10             **THE COURT:**  GIVE ME A PARENTHESES HERE.  GENTLEMEN OF

11   THE JURY, YOU ARE GOING TO HEAR REFERENCE TO DOCUMENTS AND YOU

12   ARE GOING TO SEE THREE DOCUMENTS.  AS I MENTIONED AT THE END OF

13   MY INSTRUCTIONS, THE AMOUNT OF YOUR VERDICT MUST BE BASED ON

14   YOUR VIEW OF WHAT THE CONDUCT AND THE NATURE AND EXTENT OF THE

15   CONDUCT WAS IN SOUTH CAROLINA, BUT THESE DOCUMENTS MAY GO TO

16   THE WILLFUL, WANTON, RECKLESS DISREGARD, THEY MAY HAVE SOME

17   RELEVANCE ON THE DEFENDANT'S AWARENESS OF THE CONDUCT, AND THEY

18   MAY HAVE SOME RELEVANCE ON THE FOCUS OF DEPRIVING THE DEFENDANT

19   OF PROFITS RELATIVE TO THE IMPROPER CONDUCT.  BUT THAT ONLY HAS

20   TO DO WITH WHETHER OR NOT PUNITIVE DAMAGES ARE APPROPRIATE,

21   DEPENDING UPON HOW YOU FEEL ABOUT THESE DOCUMENTS OR WHAT IS

22   ARGUED ABOUT THE DOCUMENTS.  IT DOESN'T GO TO THE AMOUNT.  IT

23   ONLY GOES TO WHETHER OR NOT THE PUNITIVE DAMAGES ARE

24   APPROPRIATE IN THIS MATTER.  SO I'M LIMITING THOSE DOCUMENTS TO

25   ONLY THAT ASPECT OF THE CASE, NOT FOR THE ASPECT OF THE AMOUNT.

1          **MR. ROBINSON:**  SO THIS IS THEIR 2001 PROFIT PLAN FOR

2    VIOXX.  THIS IS WHAT WAS MOTIVATING THEM BACK IN '99 BEFORE

3    THEY EVEN GOT THEIR LABEL, WHY THEY RUSHED THIS THING TO

4    MARKET.  THIS TELLS YOU WHY.  "THE VALUE OF MK966 (VIOXX) BEING

5    FIRST TO MARKET VERSUS SECOND TO MARKET IS $611 MILLION."

6    THAT'S WHAT MERCK WAS ALL ABOUT IN THIS CASE.  IT WAS ALWAYS

7    MONEY.  FROM THE BEGINNING -- THIS IS BEFORE THE DRUG WENT ON

8    THE MARKET -- $611 MILLION.  THAT'S THEIR MOTIVATION.  THAT'S

9    WHY THEY DIDN'T DO THE TESTING.  ALL THOSE RED FLAGS THEY SAW

10   FROM '92 TO '96, THAT'S WHY THEY TOOK THE *MERCK MANUAL* LANGUAGE

11   OF THROMBOXANE OUT.  ALL THAT WAS BECAUSE THEY HAD TO BEAT

12   CELEBREX TO MARKET.  $611 MILLION MOTIVATION.  THAT'S NOT GOOD

13   THINKING FOR A COMPANY.  THAT'S WRONG.  THAT'S REPREHENSIBLE

14   CONDUCT.  THEY SHOULD HAVE BEEN DOING THIS BASED ON SCIENCE.

15          THE NEXT DOCUMENT.  NOW, THE DRUG IS ON THE

16   MARKET.  LOOK AT THAT.  THIS IS THEIR PROFIT ANALYSIS.  THEY

17   GO, "IF VIOXX IS UNABLE TO NEUTRALIZE THE SAFETY TOLERABILITY

18   ISSUES, THERE'S GOING TO BE A DROP IN REVENUES OF

19   $437 MILLION."  NOW, THIS IS WHEN IT'S ON THE MARKET.  THIS IS

20   WHAT THEY ARE THINKING ABOUT.  THAT'S WHY THEY HAD TO DIFFUSE

21   THE SAFETY RISK.  THAT'S WHY DR. REICIN GOT CREDIT FOR

22   DIFFUSING THE RISK RIGHT OUT OF THE BOX.  IT'S MONEY AGAIN.

23          THIRD DOCUMENT.  YOU SAW THIS DOCUMENT.  THIS IS

24   WHY THEY DIDN'T WARN.  $1 BILLION A YEAR.  THAT'S A YEAR.

25   $1 BILLION A YEAR.  THAT'S A DIFFERENCE IN THAT PRECAUTION

2695

1    WARNING THAT THEY DID VERSUS THE OTHER WARNING.  FRANKLY,

2    THAT'S WHAT WAS DRIVING THIS COMPANY.  THAT'S NOT RIGHT.

3    THAT'S REPREHENSIBLE CONDUCT.

4              SO WHAT DOES THAT MEAN?  YOUR PUNITIVE DAMAGES,

5    AS THE JUDGE JUST TOLD YOU, YOU ARE LIMITED IN TERMS OF THE

6    VALUE OF THE PUNITIVE DAMAGES.  EVEN THOUGH THEY ARE TALKING

7    ABOUT A BILLION DOLLARS A YEAR NATIONWIDE THAT THEY MAKE --

8    THOSE ARE REVENUES THEY GOT.  THOSE ARE REVENUES THEY

9    COLLECTED, THAT THEY GOT A YEAR.  THAT WAS THE DOCUMENT IN JULY

10   OF 2001.  SO THEY KEPT THAT ON THE MARKET FOR THREE MORE YEARS.

11   THAT'S LIKE $3 BILLION.  IF THEY HAD PROPERLY WARNED, THOSE ARE

12   REVENUES THEY WOULD HAVE LOST, BUT YOU ARE LIMITED TO DO IT IN

13   SOUTH CAROLINA, A SMALL STATE.

14             WHAT I'M ASKING YOU TO DO IS THIS.  I'M ASKING

15   YOU TO GIVE WHAT I THINK IS A PUNISHMENT, BUT BASED ON THE

16   FOCUS OF WHAT HAPPENED IN SOUTH CAROLINA, AND I'M ASKING YOU

17   FOR $25 MILLION.  WE ARE TALKING BILLIONS OF DOLLARS HERE IN

18   DIFFERENT REVENUE.

19             **MR. BECK:**  YOUR HONOR, I OBJECT.  THIS IS IMPROPER.

20   THIS IS WHAT YOU INSTRUCTED CANNOT NOT BE ARGUED.

21             **THE COURT:**  YOU JUST ASKED FOR $25 MILLION.  IS THAT

22   IT?

23             **MR. ROBINSON:**  I'M ASKING FOR $25 MILLION, AND I

24   THANK YOU FOR YOUR TIME.

25             **THE COURT:**  ARE YOU OFFERING THOSE?

DAILY COPY

1       MR. ROBINSON:  1.0009.

2       THE COURT:  THAT'S THE FIRST EXHIBIT.

3       MR. ROBINSON:  1.0732.

4       THE COURT:  THAT'S THE SECOND EXHIBIT.

5       MR. BIRCHFIELD:  1.1135.

6       THE COURT:  1.1135 IS THE THIRD EXHIBIT.  GIVE IT TO

7  US, THE THREE EXHIBITS, AND THAT WILL GO TO THE JURY.  I'LL

8  ADMIT THEM OVER THE OBJECTION OF COUNSEL.  LET ME HEAR FROM THE

9  DEFENDANT.

10      MR. BECK:  GOOD MORNING.  BEFORE WE KNEW WHAT YOUR

11  VERDICT WAS, I SHOOK HANDS WITH MR. BARNETT AND I WISHED HIM

12  THE BEST.  HE IS A GENTLEMAN AND HE RETURNED THE GOOD WISHES.

13  I TOLD YOU YESTERDAY THAT THE MEN AND WOMEN AT MERCK WERE

14  COMFORTABLE HAVING OUR CASE IN YOUR HANDS.  WE OBVIOUSLY HOPED

15  FOR A DIFFERENT RESULT, BUT YOU ARE IMPORTANT PARTS OF THE

16  JUDICIAL SYSTEM AND THE WAY THAT WE RESOLVE DISPUTES IN

17  AMERICA.  WE RESPECT YOUR VERDICT, AND WE WANT YOU TO KNOW

18  THAT.

19      MY GUESS IS THAT YOU HAVE ALREADY AWARDED

20  PUNITIVE DAMAGES AND THAT YOU DID NOT KNOW THAT THIS STAGE WAS

21  EVEN A POSSIBILITY.  I THINK YOU HAVE SENT YOUR MESSAGE LOUD

22  AND CLEAR.  PEOPLE CURRENTLY WHO RUN MERCK HAVE HEARD THAT

23  MESSAGE AND ARE REFLECTING ON IT AS WE SPEAK, AND THEY ARE

24  GOING TO BE REFLECTING ON IT QUITE A BIT IN THE FUTURE WHEN I

25  HAVE A CHANCE TO TALK WITH THEM, AS WELL.

1          $50 MILLION IS A GREAT DEAL OF MONEY, OF COURSE,

2     AND YOU KNOW THAT.  YOU AWARDED IT IN A CASE THAT INVOLVED WHAT

3     EVEN MR. ROBINSON SAID WAS A SMALL HEART ATTACK IN A CASE WHERE

4     WE ARE ALL HAPPY AND THANKFUL MR. BARNETT'S PROGNOSIS APPEARS

5     TO BE GOOD.  I BELIEVE IN MY HEART THAT YOU DETERMINED THAT

6     THAT AMOUNT WAS WHAT YOU NEEDED TO AWARD IN ORDER TO SEND A

7     MESSAGE THAT YOU WANTED TO SEND AND, AGAIN, I RESPECT YOU FOR

8     THAT.  THE MESSAGE HAS BEEN SENT AND RECEIVED.

9          THE INSTRUCTION FROM THE JUDGE THAT YOU HEARD

10    INCLUDED THE STATEMENT, "YOU ARE TO IMPOSE PUNITIVE DAMAGES

11    ONLY IF YOU DETERMINE THAT MERCK'S CONDUCT, AFTER HAVING PAID

12    COMPENSATORY DAMAGES, WAS SO REPREHENSIBLE THAT FURTHER

13    PUNISHMENT OR DETERRENCE IS WARRANTED."  SO I ASK YOU TO

14    CONSIDER WHETHER THE AWARD THAT YOU PROBABLY THOUGHT ABOUT AND

15    AGREED TO LAST NIGHT AND THEN DECIDED TO SLEEP ON IT -- AND

16    SOME OF YOU HAVE PROBABLY PRAYED OVER IT -- WHETHER YOU HAVE

17    ALREADY DONE THAT JOB.

18          IT FEELS FUNNY TO EVEN TALK ABOUT LEGAL

19    STANDARDS IN A SITUATION LIKE THIS, BUT THERE ARE DIFFERENT

20    LEGAL STANDARDS THAT YOU ARE NOW WORKING UNDER.  IT'S NOT

21    WHETHER WE FOLKS AT MERCK WERE NEGLIGENT AND DIDN'T MEET THE

22    STANDARD OF CARE THAT YOU HOPED A PHARMACEUTICAL COMPANY WILL.

23    INSTEAD, IT'S A MUCH HIGHER AND DIFFERENT STANDARD:  WILLFUL,

24    WANTON, RECKLESS BEHAVIOR.  THE BURDEN OF PROOF IS NOT A

25    PREPONDERANCE OF THE EVIDENCE.  IT'S NOT THE SCALES THAT

1    MR. ROBINSON SHOWED YOU YESTERDAY.  INSTEAD, IT'S CLEAR AND

2    CONVINCING EVIDENCE, WHICH IS A MUCH HIGHER STANDARD.

3              ALSO, THE FOCUS IS NARROWER.  WE ARE OPERATING

4    UNDER SOUTH CAROLINA LAW BECAUSE THAT'S WHERE MR. BARNETT IS

5    FROM, AND THE FOCUS IS VERY SPECIFIC AT THIS STAGE IN TERMS OF

6    CONDUCT THAT OCCURRED IN SOUTH CAROLINA AND IMPACT OF THAT IN

7    SOUTH CAROLINA.  OF COURSE, THAT'S WHAT YOU NEED TO BE GUIDED

8    BY.

9              WE BELIEVE THAT ANY AMOUNT BEYOND WHAT YOU

10   ALREADY HAVE AWARDED WOULD NOT BE APPROPRIATE.  IF WE MADE

11   MISTAKES -- AND YOU HAVE DETERMINED THAT WE DID.  YOU HAVE

12   ALREADY DELIVERED THAT MESSAGE LOUD AND CLEAR.  AS I SAID, THE

13   PEOPLE AT MERCK TAKE IT SERIOUSLY AND WILL TAKE IT SERIOUSLY.

14             I WOULD LIKE TO MENTION A FEW THINGS.  YOU HEARD

15   ABOUT MR. GILMARTIN.  HE IS NOT WITH OUR COMPANY ANYMORE.

16   ALSO, DR. SCOLNICK YOU KNOW IS NO LONGER WITH MERCK.  THOSE ARE

17   THE TWO SENIOR PEOPLE WHOSE JUDGMENT AND DECISIONS WERE

18   CRITICIZED BY THE PLAINTIFF.  THEY ARE NOT AT OUR COMPANY

19   ANYMORE, SO THEY WON'T BE MAKING ANY DECISIONS ABOUT LABELING

20   OR ANYTHING ELSE IN THE FUTURE.

21             THE DOCUMENTS THAT MR. ROBINSON SHOWED YOU AND I

22   GUESS WILL BE GOING BACK INTO THE JURY ROOM WITH YOU, ONE OF

23   THEM WAS ABOUT THE ECONOMIC VALUE OF BEING THE FIRST ONE TO THE

24   MARKET WITH THE MEDICINE.  I WOULD JUST ASK YOU TO REFLECT THAT

25   THERE'S NOTHING WRONG WITH WANTING TO BE THE FIRST ONE TO THE

2699

1  MARKET.  YOU WANT TO DO IT IN A SAFE WAY.  IF PART OF YOUR

2  VERDICT REFLECTED A JUDGMENT THAT WE DID NOT DO THAT, I THINK

3  THAT'S ALREADY BEEN TAKEN CARE OF.  THE IDEA THAT IT WAS WRONG

4  TO WANT TO BE FIRST IS, I THINK, A MISTAKE.

5              WHAT'S IMPORTANT IN THIS REGARD, ALSO, IS THAT

6  IN THIS CASE THEY DID NOT MAKE A CLAIM THAT SAID THAT WE SHOULD

7  NOT HAVE BROUGHT VIOXX TO THE MARKET.  IN FACT, THEIR WITNESSES

8  SAID IT WAS THE RIGHT THING TO DO TO BRING VIOXX TO THE MARKET.

9  EVEN AFTER WE TOOK VIOXX OFF THE MARKET VOLUNTARILY, THE

10 ADVISORY COMMITTEE TO THE FDA SAID THAT THE BENEFITS WOULD

11 OUTWEIGH THE RISKS.  SO THERE'S NOTHING WRONG WITH US WANTING

12 TO BRING THAT MEDICINE TO THE MARKET IN THE FIRST PLACE.  WE

13 RECOGNIZE THAT YOU HAVE DETERMINED THAT THE WARNINGS THAT

14 ACCOMPANIED THE MEDICINE WERE INSUFFICIENT, BUT THAT'S

15 DIFFERENT FROM SAYING THAT IT WAS A BAD THING TO WANT TO COME

16 TO THE MARKET AND BEAT THE COMPETITION.

17             YOU ALSO WERE SHOWN QUICKLY -- AND YOU'LL HAVE A

18 COUPLE OTHER DOCUMENTS.  ONE IS A PROFIT PLAN.  I THINK THE

19 JUDGE HAS TOLD YOU ALREADY THAT THERE'S BIG NUMBERS IN THERE,

20 BUT THEY'RE NOT THE NUMBERS THAT YOU'RE SUPPOSED TO BE

21 CONSIDERING IN PUNITIVE DAMAGES.  I KNOW YOU TAKE YOUR OATH

22 SERIOUSLY AND I ASK YOU TO LIVE UP TO THAT AND NOT SAY, "OKAY.

23 WELL, THE JUDGE TOLD US NOT TO LOOK AT THESE NUMBERS IN

24 DETERMINING AN AMOUNT OF PUNITIVE DAMAGES, BUT BOY THIS IS A

25 BIG NUMBER AND SO LET'S BASE IT ON THAT."  I'M COMFORTABLE THAT

1   YOU'RE NOT GOING TO DO THAT, BUT I WANTED TO CALL THAT TO YOUR

2   ATTENTION.

3              THE SAME THING WITH THE LONG-RANGE PLANNING

4   DOCUMENT AND THE GRAPH THAT WAS SHOWN ON THE SCREEN.  THE JUDGE

5   HAS EXPLAINED THAT THE DOLLAR AMOUNTS ARE NOT TO BE CONSIDERED

6   WHEN THINKING ABOUT AN AMOUNT OF PUNITIVE DAMAGES.  THIS

7   DOCUMENT WAS A FORECASTING DOCUMENT.  NO MATTER WHAT BUSINESS

8   YOU'RE IN, WHEN YOU'RE PLANNING, YOU WANT TO PROJECT WHAT YOUR

9   LIKELY SALES ARE GOING TO BE.  THIS DOCUMENT WAS FROM

10  JULY 2001.  THE FINANCIAL PLANNERS WERE TOLD WE MAY END UP WITH

11  ANY ONE OF THREE DIFFERENT KINDS OF LABELS, AND SO THEY HAVE TO

12  DO THEIR PLANNING AND SAY:  WHAT IS THE EFFECT?  WHAT CAN WE

13  EXPECT TO HAVE AS REVENUES SINCE WE ARE DOING OUR FINANCIAL

14  PLANNING UNDER THE THREE DIFFERENT SCENARIOS?

15             THE DOCUMENT ITSELF WAS DATED JULY 2001.  THIS

16  WAS AFTER WE HAD RECEIVED THE VIGOR RESULTS AND GIVEN THEM TO

17  THE FDA AND WE HAD ASKED FOR A QUICK LABEL CHANGE TO PUT THOSE

18  IN.  THE FDA SAID THEY WANTED TO CONVENE AN ADVISORY COMMITTEE

19  TO GO OVER THE LABELING ISSUES AND THEY DID THAT -- I DON'T

20  HAVE MY TIME LINE, BUT I GUESS IT WASN'T THAT PERSUASIVE, IN

21  ANY EVENT.  BUT THAT WAS, I THINK, APRIL OF 2001.  SO THE FDA

22  BROUGHT THE BEST SCIENTISTS FROM AROUND THE COUNTRY AND THEY

23  LOOKED AT THE VIGOR INFORMATION AND DECIDED THAT THE RIGHT WAY

24  TO DEAL WITH THAT ON THE LABEL WAS TO PUT THE CARDIOVASCULAR

25  INFORMATION IN AND THEN LEAVE IT UP TO THE DOCTORS TO DECIDE.

1    THAT'S WHAT WE TRIED TO DO AT THE TIME, AND WE ASKED FOR A

2    LABEL THAT REFLECTED THE APPROACH TAKEN BY THE ADVISORY

3    COMMITTEE.  THIS GRAPH WAS A GRAPH THAT SAID, IF THAT'S THE

4    APPROACH THAT'S TAKEN, THIS IS WHAT WE CAN EXPECT; IF A

5    DIFFERENT APPROACH IS TAKEN, WE CAN EXPECT SOMETHING ELSE.

6                 WE RECOGNIZE, THOUGH, THAT YOUR VERDICT REFLECTS

7    A JUDGMENT THAT YOU HAVE DETERMINED THAT ECONOMIC

8    CONSIDERATIONS CREPT IN WHERE THEY SHOULD NOT HAVE AND THAT THE

9    WARNINGS ISSUE WAS AFFECTED BY ECONOMIC CONSIDERATIONS AND NOT

10   SOLELY MEDICAL OR SCIENTIFIC CONSIDERATIONS.  AS I SAID, WE

11   RESPECT YOUR VERDICT AND YOUR JUDGMENT ON THAT MATTER.  I CAN

12   TELL YOU THAT PEOPLE AT MERCK RESPECT IT, UNDERSTAND IT, AND

13   LABELING DECISIONS WILL NOT BE INFLUENCED BY ECONOMIC

14   CONSIDERATIONS AT MERCK.

15                 I WOULD ASK YOU TO THINK ABOUT ONE OTHER THING

16   AND THAT IS HOW WE HANDLED OURSELVES WHEN THE APPROVE STUDY

17   CAME OUT.  I THINK THAT THE VERDICT REFLECTS YOUR JUDGMENT

18   ABOUT THE WARNINGS AND YOUR DECISION THAT WE FELL SHORT WHILE

19   OUR MEDICINE WAS ON THE MARKET.  I WOULD ASK, WHEN MR. ROBINSON

20   SAYS THAT IT'S A REPREHENSIBLE COMPANY, THAT YOU ALSO TAKE INTO

21   ACCOUNT WHAT WE DID WHEN WE GOT THE APPROVE RESULTS.  YOU'LL

22   REMEMBER THAT THIS WAS THE FIRST PLACEBO-CONTROLLED STUDY THAT

23   SHOWED AN INCREASED RISK OF VIOXX COMPARED TO A SUGAR PILL, AND

24   WE HAD OTHER STUDIES THAT CONFLICTED WITH THAT AND SHOWED THERE

25   WAS NOT AN INCREASED RISK.  WE GOT THESE RESULTS I THINK IT WAS

2702

1    SEPTEMBER 24, 2004, AND WE WENT TO OUR OUTSIDE SCIENTIFIC

2    ADVISORS AND ASKED THEM FOR THEIR RECOMMENDATION.  THEIR

3    RECOMMENDATION WAS TO KEEP THE MEDICINE ON THE MARKET, BUT TO

4    ADD THIS INFORMATION TO THE LABEL.  IF WE MADE MISTAKES -- AND

5    YOU HAVE DECIDED THAT WE DID -- LEADING UP TO THIS, WE DID THE

6    RIGHT THING THEN.

7               **THE DEPUTY CLERK:**  MR. BECK, EXCUSE ME.  FOUR

8    MINUTES.

9               **MR. BECK:**  THE COMPANY DID THE RIGHT THING THEN, AND

10   IF WE ARE LATE WE ARE SORRY, BUT I ASK YOU TO CONSIDER THAT, AS

11   WELL.  WE COULD HAVE GONE TO THE FDA AND SAID, "THIS IS THE

12   SORT OF BLACK-BOX WARNING WE WANT," AND WE WOULD BE SELLING THE

13   MEDICINE TODAY LIKE CELEBREX IS SELLING THEIR MEDICINE TODAY

14   WITH A BLACK-BOX WARNING AND THE OTHERS ARE.  WE DID NOT DO

15   THAT, AND THE REASON WE DIDN'T WAS NOT FINANCIAL.  THE REASON

16   THAT WE DIDN'T DO THAT WAS BECAUSE WE DID MAKE THE RIGHT CALL

17   ON SAFETY GROUNDS.  WE SAID, "OKAY.  THIS SHOWS AN INCREASED

18   RISK OR THE POSSIBILITY OF INCREASED RISK FROM THIS CLINICAL

19   TRIAL.  WE KNOW THERE ARE OTHER MEDICINES OUT THERE THAT DO THE

20   SAME THING.  WE DON'T KNOW YET WHETHER THEY HAVE THAT INCREASED

21   RISK OR NOT, SO WE ARE GOING TO TAKE OUR MEDICINE OFF THE

22   MARKET."  THAT, OF COURSE, COSTS ANYBODY A LOT OF MONEY, BUT IT

23   WAS THE RIGHT THING TO DO.  I THINK THAT OBVIOUSLY YOU DECIDED

24   THAT WE WERE TOO LATE TO DO THE RIGHT THING, BUT I HOPE YOU

25   WILL TAKE THAT INTO ACCOUNT.

1           SO $50 MILLION, AS I SAID, IT'S A LOT OF MONEY.

2   I BELIEVE IN MY HEART THAT YOU GENTLEMEN HAVE ALREADY AWARDED

3   AN AMOUNT INTENDED TO SEND A MESSAGE AND TO DETER AND TO

4   PUNISH.  I WOULD ALSO SAY THAT THE REQUEST FOR $25 MILLION

5   BEARS NO RELATIONSHIP AT ALL TO ANY EVIDENCE ABOUT ECONOMIC

6   IMPACT OR ANY OTHER KIND OF IMPACT IN SOUTH CAROLINA.  THE LAW

7   IS VERY SPECIFIC, AS THE JUDGE READ IT TO YOU, THAT PUNITIVE

8   DAMAGES ARE REALLY SUPPOSED TO BE FOCUSED ON THAT.  THE

9   PLAINTIFFS SIMPLY HAVE NOT PUT IN ANY EVIDENCE ABOUT

10  SOUTH CAROLINA.  JUST TO SAY IT'S A SMALL STATE AND THEN TO SAY

11  $25 MILLION IS NO CONNECTION.

12          I KNOW YOU TOOK THIS VERY SERIOUSLY, AND I'M

13  GOING TO ASK YOU TO REFLECT ON YOUR OATHS AND TO CONTINUE TO DO

14  YOUR DUTY BY FOLLOWING THE LAW.  THE LAW IS THAT YOU HAVE GOT

15  TO FOCUS ON WHETHER THERE'S EVIDENCE OF IMPACT AND CONDUCT IN

16  SOUTH CAROLINA, AND THERE IS NOT BECAUSE THAT WASN'T THE FOCUS

17  OF THE CASE, BUT THEY CHOSE NOT TO PUT IN EVIDENCE ON THAT.

18  GIVEN THAT, THERE'S NO BASIS TO MAKE ANY KIND OF AWARD OF

19  PUNITIVE DAMAGES, EVEN IF YOU WERE OTHERWISE INCLINED TO DO SO.

20  AS I SAID, THE BOTTOM LINE, I THINK EVERYBODY IN THE COURTROOM

21  AND EVERYBODY BACK IN NEW JERSEY AND PEOPLE AROUND THE COUNTRY

22  ALL WATCHING CNN OR MSNBC AND HEARING ABOUT YOUR VERDICT,

23  EVERYBODY HAS ALREADY GOTTEN THE MESSAGE.  WE CERTAINLY HAVE

24  AND, AS I SAID, WE TAKE IT TO HEART.  THANK YOU, GENTLEMEN.

25          **THE COURT:**  THANK YOU, COUNSEL.

1      **MR. ROBINSON:**  MR. BECK IS A GOOD LAWYER.  HE HAS

2  DONE A GOOD JOB IN THIS COURTROOM FOR HIS CLIENT.  HE HAS MADE

3  A VERY PASSIONED ARGUMENT.

4      **MR. BECK:**  I'M SORRY, I CAN'T HEAR.

5      **THE COURT:**  KEEP YOUR VOICE A LITTLE BIT UP.

6      **MR. ROBINSON:**  MR. BECK IS A GOOD LAWYER.  HE DID A

7  GOOD JOB FOR HIS CLIENT.  HE FOUGHT.  BUT YOU HEARD A DIFFERENT

8  MR. BECK IN THE TRIAL.  HE IS BEING CONTRITE.  BUT WHAT MARK

9  ROBINSON SAYS IT IS ALL ABOUT OR WHAT MR. BECK IS ALL ABOUT IS

10 NOT THE ISSUE HERE.  THE ISSUE IS PUNITIVE DAMAGES AND THE

11 MESSAGE THAT'S GOING TO GO OUT FROM THIS JURY AND YOU HAVE TO

12 GIVE -- IF YOU REALLY BELIEVE THERE'S DECEIT HERE WHICH YOU

13 FOUND BY CLEAR AND CONVINCING EVIDENCE, THE STANDARD HERE, THEN

14 YOU HAVE TO GIVE SOME AMOUNT OF PUNITIVE DAMAGES BECAUSE THE

15 MESSAGE HAS GOT TO GO OUT TO MERCK.

16      DR. REICIN JUST COMPLETED HER EIGHTH OR NINTH

17 TRIAL GOING AROUND DENYING THIS THING.  THEY ARE GOING TO

18 CONTINUE TO DENY IT.  ONE VERDICT, THEY ARE JUST GOING TO KNOCK

19 IT OVER.  "WELL, WE DIDN'T GET HIT FOR PUNITIVE DAMAGES, THAT'S

20 THAT, JUST COMPENSATORY DAMAGES."  SO YOU HAVE TO GIVE AN

21 AMOUNT FOR PUNITIVE DAMAGES.

22      **MR. BECK:**  YOUR HONOR, I OBJECT.  MAY WE APPROACH?

23      **MR. ROBINSON:**  WELL, YOUR HONOR, I'M IN THE MIDDLE OF

24 MY --

25      **MR. BECK:**  YOUR HONOR, I DON'T THINK IT'S PROPER.

1          **THE COURT:**  LET'S GO ON TO SOMETHING ELSE, COUNSEL.

2    MEMBERS OF THE JURY, THAT'S NOT THE POINT OF PUNITIVE DAMAGES.

3    THE POINT OF PUNITIVE DAMAGES IS WHAT I TOLD YOU THEY WERE.

4    LET'S MOVE ON, PLEASE.

5          **MR. ROBINSON:**  IN ANY EVENT, THE POINT OF PUNITIVE

6    DAMAGES IS TO DETER OTHERS, TO DETER MERCK FROM DOING THIS IN

7    THE FUTURE.  SO YOUR VERDICT, I SUBMIT, NEEDS TO HAVE SOME

8    MEASURE OF PUNITIVE DAMAGES.  THE FACT THAT THEY DID ALL THESE

9    THINGS THAT THEY DID FOR MONEY SHOWS YOU THEIR MENTALITY.

10   BASICALLY, THEY HAVE BEEN DEFENDING THESE CASES AND THEY ARE

11   GOING TO CONTINUE ON.  I THINK THERE'S GOT TO BE A MESSAGE TO

12   THEM.

13         **MR. BECK:**  YOUR HONOR, I OBJECT.

14         **THE COURT:**  LOOK, COUNSEL, IT HAS NOTHING TO DO WITH

15   DEFENDING CASES.  IT HAS TO DO WITH CONDUCT.  DISREGARD THAT,

16   MEMBERS OF THE JURY.

17         **MR. ROBINSON:**  CONDUCT HERE HAS TO BE REPREHENSIBLE.

18         **THE COURT:**  WE CAN'T HEAR YOU, COUNSEL.

19         **MR. ROBINSON:**  THE CONDUCT WAS REPREHENSIBLE.  I

20   SUBMIT IT WAS REPREHENSIBLE, SO I'M ASKING YOU TO GIVE SOME

21   AMOUNT OF PUNITIVE DAMAGES.  YOU DECIDE THAT AMOUNT.  THERE'S

22   $3 BILLION, A BILLION A YEAR IN SAVINGS ON THESE WARNING

23   LABELS.

24         **MR. BECK:**  YOUR HONOR, AGAIN, HE IS VIOLATING YOUR

25   ORDERS.

2706

1      **THE COURT:**  COUNSEL, YOU HAVE GOT ONE MORE MINUTE, SO
2  LET'S SUM UP, PLEASE.
3      **MR. ROBINSON:**  IN ANY EVENT, ON BEHALF OF
4  MR. BARNETT, I THANK YOU FOR YOUR TIME AND ATTENTION FOR THE
5  LAST TWO AND A HALF WEEKS.  WE BOTH APPRECIATE IT AND, WITH
6  MR. BIRCHFIELD, WE ALL APPRECIATE IT.  MR. BARNETT'S WIFE,
7  CORINNE, APPRECIATES YOUR ATTENTION.  THANK YOU.
8      **THE COURT:**  THANK YOU, COUNSEL.  MEMBERS OF THE JURY,
9  AGAIN, THE PURPOSE OF PUNITIVE DAMAGES IS TO FOCUS ON THE
10  CONDUCT OF THE DEFENDANT AT THE TIME OF THE INCIDENT AND, ALSO,
11  THE AMOUNT IS LIMITED TO THE CONDUCT IN SOUTH CAROLINA.  I'LL
12  GIVE YOU THESE CHARGES, WHICH YOU CAN TAKE A LOOK AT, AND ALSO
13  THE JURY INTERROGATORIES.  THE JURY INTERROGATORIES ARE SIMPLY
14  TWO:
15      "(1)  DO YOU FIND BY CLEAR AND CONVINCING
16  EVIDENCE THAT MERCK & CO., INC.'S CONDUCT WAS WILLFUL, WANTON,
17  OR IN RECKLESS DISREGARD OF PLAINTIFF'S RIGHTS?  YES/NO.
18      "(2)  WHAT AMOUNT, IF ANY, DO YOU FIND WILL
19  ADEQUATELY PUNISH MERCK & CO., INC., FOR ITS CONDUCT AND DETER
20  OTHERS FROM ENGAGING IN SIMILAR CONDUCT?"
21      THERE'S A LINE WITH A DOLLAR SIGN, TO THE EXTENT
22  YOU FIND THAT IT'S APPROPRIATE TO FILL IN, AND THEN A PLACE FOR
23  THE JURY FOREPERSON.  YOU NOW CAN TAKE THIS MATERIAL, THE THREE
24  DOCUMENTS WITH THE RESTRICTION PLACED ON THE DOCUMENTS,
25  TOGETHER WITH THE THREE-PAGE JURY CHARGE AND THE TWO-PAGE

1   INTERROGATORIES, TO THE JURY ROOM.  ALL RISE AS THE JURY

2   LEAVES, PLEASE.

3                (WHEREUPON, THE JURY EXITED THE COURTROOM.)

4                **THE COURT:**  BE SEATED, PLEASE.

5                **MR. BECK:**  YOUR HONOR, I WOULD LIKE TO MAKE A MOTION

6   AT THIS TIME.  YOUR HONOR, I MOVE FOR A JUDGMENT AS A MATTER OF

7   LAW OR, IN THE ALTERNATIVE, FOR A MISTRIAL ON THE PUNITIVES

8   ISSUES.  COUNSEL ENGAGED IN IMPROPER ARGUMENT BOTH BEFORE AND

9   AFTER BEING ADMONISHED BY THE COURT.  HE ASKED THEM TO AWARD

10  PUNITIVE DAMAGES BECAUSE MERCK WAS DEFENDING ITSELF IN OTHER

11  COURTROOMS AROUND THE COUNTRY AND THAT IS 100 PERCENT IMPROPER,

12  YOUR HONOR.  THEN, HE ALSO CLOSED BY REFERRING TO THE DOLLAR

13  AMOUNT OF SALES, WHICH YOUR HONOR SPECIFICALLY TOLD US IN

14  CHAMBERS AND IN OPEN COURT SHOULD NOT BE REFERRED TO AS A BASIS

15  FOR PUNITIVE DAMAGES.  SO I MOVE FOR JUDGMENT AS A MATTER OF

16  LAW IN OUR FAVOR ON THOSE GROUNDS, AS WELL AS THE GROUND THEY

17  DID NOT INTRODUCE ANY EVIDENCE ABOUT CONDUCT OR IMPACT IN

18  SOUTH CAROLINA THAT WOULD ALLOW THE JURY TO MAKE AN AWARD OF

19  ANY AMOUNT OF PUNITIVES.  THAT'S ONE OF THE GROUNDS ON THE JNOL

20  AS WELL AS THE IMPROPER ARGUMENT BY COUNSEL.

21                **MR. ROBINSON:**  YOUR HONOR, I THINK THAT WAS A VERY

22  PROPER ARGUMENT GIVEN HIS IMPROPER -- WHAT I SAID WAS IMPROPER?

23  WHAT HE SAID WAS IMPROPER.

24                **THE COURT:**  DO YOU WANT A MISTRIAL, TOO?

25                **MR. ROBINSON:**  NO, YOUR HONOR, I DON'T WANT A

2708

1    MISTRIAL, BUT WHAT HE DID IS THIS.  HE SAID, "WE GOT YOUR

2    MESSAGE."  SO MY RESPONSE IS, "YOU'VE BEEN DOING THIS ACROSS

3    THE COUNTRY."  DR. REICIN SAID SHE IS DEFENDING EIGHT TRIALS.

4    THAT'S ALL I DID WAS RESPOND TO WHAT HE DID.  IN TERMS OF THE

5    BILLION-DOLLAR DOCUMENT, I WAS TRYING TO BREAK DOWN THE

6    PERCENTAGE.  HE SAID THERE'S NO BASIS TO BREAK THAT DOWN IN

7    SOUTH CAROLINA, AND I WAS TRYING TO SHOW THEM WHAT A SMALL

8    PERCENTAGE $25 MILLION IS IN THAT AMOUNT.  SO THAT'S WHY I MADE

9    THAT ARGUMENT.

10           THE COURT:  ANYTHING FURTHER?  I'LL TAKE THAT UNDER

11   CONSIDERATION.  I WON'T RULE AT THIS TIME.  COURT WILL STAND IN

12   RECESS.  LET'S MAKE SURE WE HAVE YOUR TELEPHONE NUMBERS IN THE

13   EVENT WE GET A QUESTION.

14           THE DEPUTY CLERK:  EVERYONE RISE.

15           (WHEREUPON, THE COURT WAS IN RECESS AWAITING FURTHER

16   WORD FROM THE JURY.)

17           THE DEPUTY CLERK:  EVERYONE RISE.

18           THE COURT:  BE SEATED, PLEASE.  THE JURY HAS

19   RETURNED.  THE LITIGANTS AND THE LAWYERS ARE IN THE COURTROOM.

20   MEMBERS OF THE JURY, HAVE YOU REACHED A VERDICT?

21           THE FOREPERSON:  WE HAVE, YOUR HONOR.

22           THE COURT:  PLEASE GIVE THE VERDICT TO MY COURTROOM

23   DEPUTY.

24           THE FOREPERSON:  (COMPLIES)

25           THE COURT:  WOULD THE COURTROOM DEPUTY PLEASE READ

DAILY COPY

1   THE VERDICT.

2        **THE DEPUTY CLERK:**  "UNITED STATES DISTRICT COURT,

3   EASTERN, DISTRICT OF LOUISIANA, IN RE: VIOXX PRODUCTS LIABILITY

4   LITIGATION, MDL 1657, SECTION L.  THIS DOCUMENT RELATES TO

5   BARNETT VERSUS MERCK & CO., INC., 06-485.

6        "JURY INTERROGATORIES - PUNITIVE DAMAGES:

7        "(1)  DO YOU FIND BY CLEAR AND CONVINCING

8   EVIDENCE THAT MERCK & CO., INC.'S CONDUCT WAS WILLFUL, WANTON,

9   OR IN RECKLESS DISREGARD OF THE PLAINTIFF'S RIGHTS?  YES.

10        "(2)  WHAT AMOUNT, IF ANY, DO YOU FIND WILL

11   ADEQUATELY PUNISH MERCK & CO., INC., FOR ITS CONDUCT AND DETER

12   OTHERS FROM ENGAGING IN SIMILAR CONDUCT?  $1 MILLION.

13        "NEW ORLEANS, LOUISIANA, THIS 17th DAY OF

14   AUGUST, 2006.  REGINALD HARRIS, FOREPERSON."

15        GENTLEMEN OF THE JURY, IS THAT YOUR VERDICT?

16        **THE JURY:**  YES, IT IS.

17        **THE COURT:**  ANYONE WISH THE JURY TO BE POLLED?  THE

18   JURY IS NOW DISCHARGED WITH THE THANKS OF THE COURT.  ALL RISE

19   AS THE JURY LEAVES, PLEASE.

20        (WHEREUPON, THE JURY EXITED THE COURTROOM.)

21        **THE COURT:**  BE SEATED, PLEASE.  I'LL HAVE THE

22   JUDGMENT FILED IN THE RECORD AND GIVE THE PARTIES THE

23   APPROPRIATE TIME TO FILE WHATEVER MOTIONS THEY NEED TO FILE AND

24   SUPPLEMENT IT, IF YOU WISH, WITH ANY WRITTEN MATERIAL.  I,

25   AGAIN, THANK EACH SIDE FOR THEIR HARD WORK ON THIS MATTER.

1    EACH SIDE HAS DONE A YEOMAN JOB IN GIVING ME THE MATERIAL AND

2    EDUCATING ME ON THE LAW APPLICABLE, THE EVIDENCE, AND THE

3    FACTS.  COUNSEL HAS SHOWN A DEGREE OF PROFESSIONALISM THAT HAS

4    BEEN NECESSARY IN THESE MATTERS AND I APPRECIATE THEM.  THE

5    COURT WILL STAND IN RECESS.

6              **THE DEPUTY CLERK:**  EVERYONE RISE.

7              (WHEREUPON, THE COURT WAS IN RECESS.)

8                        *  *  *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DAILY COPY