UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| This Document Relates To All Cases | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE KNOWLES |

### AMENDED MOTION BY CERTAIN FLORIDA CLAIMANTS TO BE INCLUDED IN THE VIOXX MDL SETTLEMENT AGREEMENT

Come the undersigned and move the court as follows:

1. Movants are VIOXX claimants in the State of Florida who are ineligible to participate in the VIOXX MDL SETTLEMENT AGREEMENT (hereinafter SETTLEMENT AGREEMENT) as it is now constituted. The SETTLEMENT AGREEMENT defines "Eligible Claimant" as a person "who had a lawsuit pending ... or was ... a party to a Tolling Agreement with Merck ..." as of the Execution Date (November 9, 2007). Although movants had not filed lawsuits or entered Tolling Agreements with Merck by November 9, 2007 (Florida has a four year statute of limitations for tort claims), movants' claims were on file with the PLAINTIFFS' STEERING COMMITTEE (hereinafter PSC), and movants are otherwise eligible to participate in the SETTLEMENT AGREEMENT. For reasons stated hereinafter, this Court should exercise its inherent authority and the authority vested in the Court by the Parties to the SETTLEMENT AGREEMENT to modify the SETTLEMENT AGREEMENT so as to include movants in it.

2. In Pretrial Order 32, this Court recognizes its "inherent authority over this multi-district litigation". Further, the parties to the SETTLEMENT AGREEMENT have asked the Court to exercise this power where necessary. Section 16.4.2 of the SETTLEMENT AGREEMENT states that "if the Chief Administrator ... determines that

any provision of this Agreement is prohibited or unenforceable to any extent or in any particular context but in some modified form would be enforceable, the Chief Administrator ... shall have the power to and shall modify such provision for the purposes of such proceeding ..."

      3.  At the time the SETTLEMENT AGREEMENT was executed, movants had a special relationship with the PSC in an agreement authorized by Pretrial Order 19 entitled the FULL PARTICIPATION OPTION agreement (hereinafter FPO)(attached hereto as exhibit A and incorporated herein by this reference), the PSC agreed, in exchange for a percentage of movants' gross recoveries from MERCK, to represent movants by providing legal services in the VIOXX MDL litigation.  Movants' local counsel had provided the names and social security numbers of the movants to the PSC.  Movants had also informed the PSC that their claims had not been filed in state or federal court and also had not been tolled by an agreement with MERCK.  In the FPO agreement the PSC had agreed to establish an "amicable, working relationship [with movants' local counsel] ... for the mutual benefit of their clients".  (FPO preamble, paragraph 4) The PSC had also agreed to provide movants' local counsel with "[a]ppropriate participation and consultation in settlement negotiations." (FPO paragraph 8.b)  The PSC, in response to a motion to clarify Pretrial Order No. 19 has acknowledged that it had a "fiduciary obligation" to persons such as movants. (PSC response to Motion for Clarification of Pretrial Order No. 19, page 8, n5)

      4.  Unfortunately, despite the "fiduciary obligation" that the PSC had to movants, and despite the PSC's agreement to consult movants' local counsel about settlement negotiations, movants were kept completely in the dark about material elements of the settlement negotiations.  Specifically, the PSC concealed from movants that the SETTLEMENT AGREEMENT would contain a cut off date that would eliminate movants from the settlement.  Interestingly, the PSC places the responsibility for its failure to communicate with movants on this Court.  PSC representative, Russ Herman,

states in a letter to movants' attorneys, "The Negotiating Committee was under strict orders by Judge Eldon E. Fallon (USDC-EDLA) ... NOT to discuss settlement negotiations under any circumstances ..." (Letter from Russ Herman to William Ogle and Norman Wilner)(attached hereto as exhibit B and incorporated herein by this reference) Movants wonder whether the Court was made aware of the circumstances involved.

5. The PSC violated its "fiduciary obligation" to the movants in the following ways:

    A. Concealing material information from movants;

    B. Denying movants' local counsel participation in settlement negotiations;

    C. Failing to keep movants reasonably informed about the status of a matter critical to movants' claims;

    D. Failing to advise movants that its representation of other clients (those included in the SETTLEMENT AGREEMENT) was potentially adverse to the interests of movants;

    E. Entering into an aggregate settlement of multiple claims directly affecting movants' material interests without informing movants' or obtaining movants' consent.

6. Had the PSC consulted with movants local counsel about the settlement negotiations as it had agreed to do under the FPO agreement, movants would certainly have either filed their cases in court or have entered into a tolling agreement with MERCK before November 9, 2007. Doing so, movants would have been eligible to participate in the SETTLEMENT AGREEMENT.

7. As a result of the PSC's breach of its fiduciary obligation, movants have been denied access to the SETTLEMENT AGREEMENT.

8. Members of the PSC have traveled the country recently expressing to local counsel the many reasons why participation in the SETTLEMENT AGREEMENT is in

the best interests of all claimants.  Prominent among those reasons are: (1) The expected recoveries by individual claimants will be fair and reasonable; (2) Individual claimants who do not participate must expect to wait a very long time before their cases actually come to trial; (3) MERCK will not settle any case outside the SETTLEMENT AGREEMENT; (4) A VIOXX trial against MERCK will cost a million dollars;  (5) The history of VIOXX trials has not been especially favorable for the plaintiffs; and (6) the specter of FDA preemption hangs over this litigation.   Presumably, for these reasons, the members of the PSC have decided to enter into the SETTLEMENT AGREEMENT for their own clients.  For the same reasons movants want to be part of the SETTLEMENT AGREEMENT.

9. Movants suggest that the ends of justice require that Article 17 (Definitions) section 1.22.2 defining "Eligible Claimant" be modified to read:

"Eligible Claimant means a natural person or Legal Representative(s) thereof: (17.1.22.2) which natural person or Legal Representative(s)(i) as of the Execution Date had a lawsuit pending (in any court of the United States) against, or was (directly or through counsel) a party to a Tolling Agreement with, Merck, *or was on file (directly or through counsel) with the PLAINTIFFS' STEERING COMMITTEE of this court pursuant to Pretrial Order No. 19* with respect to an allegation described in Section 17.1.22.3  ..." (language to be added in italics)

10. The PSC has represented in its presentations to local counsel around the country, that the reason MERCK insisted on a November 9, 2007 cut off date was to prevent a rush to the courthouse resulting in the filing of an overwhelming number of additional lawsuits.  Adding the language that movants suggest would fully protect MERCK's interest in that regard.  Only those claims already on file as of the Execution Date would be included.

11. The PSC has suggested to movants that the PSC negotiated the SETTLEMENT AGREEMENT without considering movants' claims.  Thus, "[a]ny

wholesale inclusion of unfiled and untolled claims in the current settlement would potentially overly diminish the funds which were negotiated on the basis of the inventory analysis of filed and tolled claims." (Letter of Russ Herman to William Ogle and Norman Wilner). The PSC thus takes the position that it cannot add movants' claims to the settlement as that would dilute the recovery more than would be acceptable.

12. Section 16.4.2 of the SETTLEMENT AGREEMENT provides that if any provision or term of the SETTLEMENT AGREEMENT is found to be unenforceable, "the Parties shall negotiate in good faith to modify this Agreement ..." If the addition of movants to the SETTLEMENT AGREEMENT wound in fact overly dilute the recovery, then the Court should simply direct the Parties to the SETTLEMENT AGREEMENT back to good faith negotiations to resolve the problem.

WHEREFORE, movants respectfully ask this court to consider the special circumstances outlined above, enter an order clarifying or modifying Section 17.1.22.2 to add persons on file with the PSC as of the Execution Date to the SETTLEMENT AGREEMENT and/or order the Parties to the SETTLEMENT AGREEMENT to reconvene good faith negotiations to accomplish the above modification.

Dated this 30th day of January, 2008.

Respectfully submitted,

/s/*William H. Ogle*
William H. Ogle
Florida Bar No.: 367400
Mayfield & Ogle, P.A.
444 Seabreeze Blvd., St. 750
Daytona Beach, FL 32118
(386) 253-2500 Telephone
(386) 248-8578 Facsimile

/s/*Norwood S. Wilner*
Norwood S. "Woody" Wilner
Florida Bar No.: 222194
Stephanie J. Hartley
Florida Bar No.: 0997846
3127 Atlantic Blvd. St. 3
Jacksonville, FL 32207
(904) 446-9817 Telephone
(904) 446-9825 Facsimile

/s/*Richard D. Hailey*
Richard D. Hailey
Indiana Bar No.: 7375-49
3891 Eagle Creek Parkway, St. C
Indianapolis, IN 46254
(317) 299-0500 Telephone
(317) 299-0699 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsels, Phillip Wittmann and Russ Herman, by U.S. Mail and e-mail, and by e-mail upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 30th day of January, 2008.

/s/*William H. Ogle*
William H. Ogle
Florida Bar No.: 367400
Mayfield & Ogle, P.A.
444 Seabreeze Blvd., St. 750
Daytona Beach, FL 32118
(386) 253-2500 Telephone
(386) 248-8578 Facsimile