# EXHIBIT "11"



**HERMAN, HERMAN, KATZ & COTLAR**
L.L.P.
Attorneys at Law

820 O'Keefe Avenue, New Orleans, Louisiana 70113-1116
Telephone: (504) 581-4892   Facsimile: (504) 561-6024
http://www.hhkc.com

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Morton H. Katz*
Sidney A. Cotlar*
Steven J. Lane
Leonard A. Davis*
James C. Klick†

Stephen J. Herman
Brian D. Katz
Soren E. Gisleson

Joseph E. Cain
Jennifer J. Greene‡
John S. Creevy
Joseph A. Kott, M.D. J.D. (Of Counsel)

Offices in New Orleans and
Covington, Louisiana

\* A Professional Law Corporation
† Also Admitted in Texas
‡ Also Admitted in Arkansas

This Firm and Its Partners Are Also
Partners in Herman, Mathis, Casey,
Kitchens & Gerel, LLP

December 21, 2007

**VIA E-MAIL ONLY**

Christopher J. Valeriote, Esq.
christopher.valeriote@husch.com
Jeanine Bermel, Esq.
jeanine.bermel@husch.com
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105-3441

                    Re:   _In re: Vioxx Products Liability Litigation_
                          MDL 1657

Dear Chris and Jeanine:

        Following up on our telephone conversation yesterday, enclosed please find a Subpoena and Notice of FRE 30(B)(6) Corporate Deposition (Oral and Videotaped) of Express Scripts, Inc. For your convenience, I am also enclosing a copy of the Order issued by Judge Fallon lifting the stay as to Express Scripts, Inc.

        Confirming our telephone conversation, you, have agreed on behalf of ESI to accept service of the Subpoena and Notice. As we discussed, all rights are reserved with respect to the scope and breath of the discovery requests. We appreciate your courtesies. Further, as I indicated, we have unilaterally set the deposition date and as an accommodation to you have set the deposition at your office. If the date is inconvenient, please let us know and we will be willing to arrange a convenient date. Furthermore, I have informed you that the next status conference in the Vioxx matter is set on January 18, 2008 and I expect that Judge Fallon will want a status report at that time. We have asked the court reporter for the transcript from the last status conference wherein Judge Fallon specifically addressed the ESI issue and as soon as we receive it, we will forward it to you.

December 21, 2007
Page 2


      Best wishes to you and the rest of the folks for a Happy and Healthy Holiday Season.

Sincerely,

LEONARD A. DAVIS

LAD:lmf
Enclosures
cc:     Philip A. Wittmann, Esq.
       Douglas Marvin, Esq.
       Michael Weinkowitz, Esq.
       Fred Longer, Esq.
       Stephen J. Herman, Esq.
       Plaintiffs' Steering Committee
       Plaintiff's Negotiating Committee

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
|     PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION: L |
| | : | |
| THIS DOCUMENT RELATES TO ALL CASES | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

## NOTICE OF FRE 30(B)(6) CORPORATE DEPOSITION (ORAL AND VIDEOTAPED)

TO:    **Merck & Co, Inc.**
       **Through**
       **Phillip A. Wittmann, Esq.**
       **STONE, PIGMAN**
       **546 Carondelet Street**
       **New Orleans, Louisiana 70130-3588**
       **LIAISON COUNSEL FOR DEFENDANTS**

       **Express Scripts, Inc.**
       **One Express Way**
       **St. Louis, MO  63121**

PLEASE TAKE NOTICE that pursuant to Rule 26 and 30(b)(6) of the Federal Rules of Civil Procedure, plaintiffs, by and through their undersigned attorneys, the Plaintiffs Steering Committee in the MDL, will take the deposition of Express Scripts, Inc. ("ESI") on January 9, 2008 o'clock a.m. at the offices of 10:00 o'clock a.m. at Husch & Eppenberger, 190 Carondelet Plaza, Suite 600, St. Louis, MO  63105-3441or at another location mutually agreed upon by the parties.  Pursuant to Fed. R. Civ. P. 30(b)(6), ESI shall designate and produce a designated representative or representatives, as may be required, to testify on behalf of ES concerning the topics identified herein.

Statement of Deposition Procedures - The deposition shall be taken pursuant to Pre-Trial Order No. 9 (Deposition Guidelines) entered April 15, 2005. The terms of such order are incorporated into this Notice.

| | |
|---|---|
| Primary Examiner: | A member of the PSC or its designee |
| Videotaped Deposition: | Yes |
| Call-In Number: | 866-261-4013, Conf. Id. No. 2728103 |

The deposition will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is completed.

## I. INSTRUCTIONS AND DEFINITIONS

### DEFINITIONS

(a)     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(b)     "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

(c)     "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

(d)     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations and/or electronically stored information as that term is defined in the Federal Rules of Civil Procedure. "(The PSC requests the production of all

electronically stored information in its native format.  However, prior to the production of such electronically stored information the PSC would like the opportunity to meet and confer regarding any production format to address efficiency, timing, and economy of the production.").  A draft or non-identical copy is a separate document within the meaning of this term.

      (e)   "Electronic data" or "data" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  Electronic data includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment.  Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including,  EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term electronic data also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(f)    "Electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

(g)    "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(h)    "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(i)    "Including" or "includes" means including, without limitation.

(j)    "IP Address" means Internet Protocol Address.

(k)    "Person" means any natural person or any business, legal, or governmental entity or association.

(l)    "RAM" means Random Access Memory which is part of electronically stored information.

(m)    "You," or "your" means the party to whom this discovery request is directed to, as well as all other employees, representatives, independent contractors, consultants,

or agents, whether present or former, including attorneys and accountants of the party to whom this discovery request is directed.

The following rules of construction apply to all discovery requests:

(n)     The terms "all" and "each" shall be construed as all and each;

(o)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(p)     The use of the singular form of any word includes the plural and vice versa; and

(q)     Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

A confidentiality order has been entered by in this case by the Honorable Eldon Fallon, Judge of the United States District Court for the Eastern District of Louisiana in the matter of *In Re: Vioxx Product Liability Litigation*, MDL 1957 (E.D.La).  A copy of the confidentiality order is attached hereto

## II.  TOPICS OF EXAMINATION

1.     The nature, scope, existence, maintenance, storage, retrieval and/or use of prescription drug, retail pharmacy, mail order and/or other medical records or data in the possession of ESI which relates to individuals who were prescribed, dispensed or otherwise provided the drug Vioxx.

2.     The nature of, and bases for, any alleged cost, time, effort or other burden to ESI associated with the retrieval and production of prescription drug, retail pharmacy, mail

order and/or other medical records or data relating to individuals who were prescribed the drug Vioxx.

3.   The complete medical, pharmacy, prescription and mail order record history of individuals who were prescribed the drug Vioxx.

4.   Charges and costs associated with retrieving and producing medical and/or pharmacy records for individuals who (directly or through their employers, unions, health insurers, managed care companies, or other health plan sponsors) received services or products from you.

5.   Documents and data in your possession or control relating to the drug Vioxx and the dispensing of such drug.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:  (504) 561-6024

</div>

Richard J. Arsenault, Esq.
P.O.Box 1190
2220 Bonaventure Court
Alexandria, LA 71309-1190
PH: (318) 487-9874
FAX: (318) 561-2591

Andy D. Birchfield, Esq. (**Co-Lead Counsel**)
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
PH: (800) 898-2034
FAX: (334) 954-7555
Elizabeth Cabraser, Atty.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
PH: (415) 956-1000
FAX: (415-956-1008

Thomas Kline, Esq.
1525 Locust St.
19th Floor
Philadelphia, PA 19102
PH: (215) 772-1000
FAX: (215) 772-1371

Arnold Levin, Esq.
510 Walnut Street
Suite 500
Philadelphia, PA 19106-3875
PH: (215) 592-1500
FAX: (215) 592-4663

Shelly Sanford, Atty.
2200 Texaco Heritage Plaza
1111 Bagby
Houston, TX 77002
PH: (713) 650-0022
FAX: (713-650-1669

Gerald E. Meunier, Esq.
Energy Centre
1100 Poydras Street, Suite 2800
New Orleans, LA 70163-2800
PH: (504) 522-2304
FAX: (504) 528-9973

Troy Rafferty, Esq.
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
PH: (850) 435-7000
FAX: (850) 497-7059

Drew Ranier, Esq.
1419 Ryan Street
Lake Charles, LA 70601
PH: (337) 494-7171
FAX: (337) 494-7218

Mark Robinson, Esq.
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
PH: (949) 720-1288
FAX: (949) 720-1292

Christopher Seeger, Esq. (**Co-Lead Counsel**)
One William Street
New York, NY 10004
PH: (212) 584-0700
FAX: (212) 584-0799

Christopher Vincent Tisi, Esq.
2000 L Street, NW
Suite 400
Washington, DC 20036-4914
PH: (202) 783-6400
FAX: (307) 733-0028

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 21st day of December, 2007.

/s/ Leonard A. Davis
**Leonard A. Davis** (Bar No. 14190)
*Herman, Herman, Katz & Cotlar, L.L.P.*
820 O'Keefe Ave.
New Orleans, LA 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
ldavis@hhkc.com

AO88  (Rev. 12/06) Subpoena in a Civil Case

<div align="center">

**Issued by the**

# UNITED STATES DISTRICT COURT

</div>

| EASTERN | DISTRICT OF | MISSOURI |
| --- | --- | --- |

In re: Vioxx Products Liability Litigation

<div align="center">V.</div>

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  MDL 1657, EDLA

TO:   Express Scripts, Inc. (Custodian of Records)
c/o Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105-3441

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Husch & Eppenberger, LLC, 190 Carondelet Plaza, Suite 600, St. Louis, MO  63105-3441 | DATE AND TIME   1/9/2008 10:00 am |
| --- | --- |

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE   12/21/2007 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Leonard A. Davis, Esq., 820 O'Keefe Ave., New Orleans, LA  70113, PH:  (504) 581-4892

<div align="center">(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)</div>

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                        DATE                                    SIGNATURE OF SERVER

                                                               _____
                                                               ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | **MDL NO. 1657** |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | **SECTION I (3)** |
| | : | |
| THIS DOCUMENT RELATES TO | : | **JUDGE FALLON** |
| ALL CASES | : | **MAG. JUDGE KNOWLES** |

---

### O R D E R

Considering the Plaintiffs' Steering Committee's Emergency Motion to Lift Stay for Purposes of Conducting Discovery Regarding Certain Medical Records In the Possession of Express Scripts, Inc.;

IT IS ORDERED BY THE COURT that the stay in this matter is hereby lifted insofar as and only to the extent of the Plaintiffs' Steering Committee conducting discovery regarding obtaining certain medical records in the possession of Express Scripts, Inc.

New Orleans, Louisiana, this 19th day of _____December_____, 2007.

_____
Honorable Eldon E. Fallon
U.S. District Judge



**Husch &**
**Eppenberger, LLC**
*Attorneys and Counselors at Law*

314.480.1903 direct dial
jeanine.bermel@husch.com

190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105-3441
314.480.1500
Fax 314.480.1505
www.husch.com

January 14, 2008

**VIA ELECTRONIC AND**
**FIRST CLASS MAIL**

Michael M. Weinkowitz
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697

Re:     NJ VIOXX® Products Liability Litigation
        Superior Court of New Jersey, Atlantic County, Case No. 619

Mr. Weinkowitz:

        We are in receipt of the Subpoena Duces Tecum which you caused to be served upon Express Scripts, Inc. on January 7, 2008. As an initial matter, in our telephone conference of the same date, you advised me that you drafted the topics for the Rule 30(b)(6) Notice of Deposition of Express Scripts, Inc. in the VIOXX MDL (consolidated before Judge Fallon in Louisiana) to obtain prescription claims data and "medical records." You further advised that you are coordinating with Plaintiffs' counsel in the VIOXX MDL to obtain claims data relating to the list of claimants listed in Attachment A to your subpoena. To that end, we agreed that, pending an agreement with Plaintiffs' counsel in the MDL, there was no need for us to respond to your Subpoena Duces Tecum. Accordingly, we will not be filing a Motion for Protective order at this time, and will not respond to the Subpoena Duces Tecum on the stated return date of January 16, 2008.

        We are continuing to work with Mr. Davis and Mr. Steve Herman to reach an agreement with regard to the production of claims data in the VIOXX MDL. Hopefully, we will have a final agreement on this issue by the end of the week. In the interim, to preserve our objections to your Subpoena Duces Tecum, please note the following:

- The subpoena duces tecum fails to comport with the New Jersey Rules of Civil Procedure, 4:14(7)(c).

# Husch & Eppenberger, LLC

Michael M. Weinkowitz
January 14, 2008
Page 2

- The Subpoena seeks documents which are protected from disclosure under the Health Insurance Portability and Accountability Act of 1996, and other applicable state privacy laws.

- Plaintiff failed to tender any authorization from the claimants listed in Attachment A for the release of the sensitive and confidential information.

- Plaintiff failed to provide a Protective Order, the terms of which would protect the public disclosure of the sensitive and confidential information requested in Plaintiffs' Subpoena (if a protective order has been entered in the NJ VIOXX Products Liability Litigation that extends to personal health information produced by third parties, please forward a copy to my attention).

- Plaintiffs' Subpoena is over broad in that it fails to state the time frame for which Plaintiffs are requesting prescription/pharmacy records.

- Plaintiffs' Subpoena is over broad in that it fails to define the type of information requested.

- To the extent that Plaintiffs seek electronic information stored on any legacy system or on backup tapes, such information is not readily accessible.

- The request is over burdensome and onerous, especially in light of the fact that the requested data is available from sources equally or more convenient to the Plaintiffs.

- Plaintiffs provide a single name only by which to locate, identify and retrieve the requested information. To the extent that the information sought by Plaintiffs is stored by claims date, sponsor identifier, member identification number and/or name of the primary member, the information is not readily accessible. Even if stored by name, a search by the names listed in Plaintiffs Attachment A is likely to retrieve information for multiple individuals with the same or similar names (*i.e.,* Martin, McDonald, Moore, Morgan, Robertson, Schneider, Thompson,

# Husch & Eppenberger, LLC

Michael M. Weinkowitz
January 14, 2008
Page 3

Wilson).  Hence, without additional information such as member identification number, the information cannot be readily identified.

I expect to forward a letter to Len Davis and Steve Herman this week regarding our proposal for the production of claims data in the VIOXX MDL.  I understand that you will continue to communicate and coordinate with those attorneys in regards to the New Jersey VIOXX litigation.  In the interim, should you have any questions, please call me.

Sincerely

Jeanine R. Bermel

# LEVIN, FISHBEIN, SEDRAN & BERMAN

*Counsellors at Law and Proctors in Admiralty*

ARNOLD LEVIN
MICHAEL D. FISHBEIN
HOWARD J. SEDRAN
LAURENCE S. BERMAN
FRED S. LONGER *
DANIEL C. LEVIN
CHARLES E. SCHAFFER
AUSTIN B. COHEN
MICHAEL M. WEINKOWITZ *
CHARLES C. SWEEDLER *
MATTHEW C. GAUGHAN * †

* also admitted in New Jersey
† also admitted in New York

510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106-3697

TELEPHONE (215) 592-1500
FACSIMILE (215) 592-4663

January 15, 2008

*Via E-mail and First Class Mail*

Jeanine R. Bermel
HUSCH & EPPENBERGER, LLC
190 Carondelet Plaza
Suite 600
St. Louis, MO 63105

> Re:   *NJ Vioxx Prods. Liab. Litig.*
>        **Superior Court of NJ, Atlantic County, Case No. 619**

Dear Ms. Bermel:

This letter is in response to your letter of January 14, 2008 with regard to the *Subpoena Duces Tecum* served upon Express Scripts on January 7, 2008.

Set forth below is the Plaintiffs' response to each point made to preserve Express Scripts' meritless objections to the Plaintiffs' Subpoena. However, before I get to that, please be advised that you have once again incorrectly restated our conversation with regard to the New Jersey Subpoena. I did agree to wait until the Corporate Designee Deposition was scheduled before cross-noticing it in New Jersey. As I understand it, the deposition has been temporarily postponed. While I did agree to coordinate with Mr. Davis and Mr. Herman, and to be involved in the discussions which hopefully will lead to an agreement to produce the pharmacy records sought, I cannot agree to any proposal by Express Scripts until there is one on the table. I fully expect to be included in any discussions with regard to Express Scripts' proposal to produce pharmacy records.

Now turning to your bulleted points to preserve your client's objections to the Subpoena:

- The Subpoena does not fail to comport with the New Jersey Rules of Civil Procedure. Kindly provide detail as to exactly how it does not comply.

Page 2

- The majority, if not all, of the New Jersey Vioxx Plaintiffs on Attachment "A" to the Subpoena, have already paid Express Scripts a $50.00 fee, as well as provided the HIPPA-compliant Authorizations that Express Scripts required. I tried to explain to you the steps that Express Scripts required each Plaintiff to take on the road to the unsuccessful attempts at retrieving all of their pharmacy records, but you indicated that you had no knowledge of, nor were you concerned with, the individual steps were taken by each Plaintiff. What I was trying to communicate to you was that each Plaintiff has already provided your client with all of the documents, authorizations and releases that your client requires for records. The Plaintiffs have already paid your client a $50.00 fee for their pharmacy records; sometimes, receiving limited pharmacy records, sometimes not. Express Scripts then requests an additional $1,500.00 fee for providing the rest of the pharmacy records. Therefore, Express Scripts is already in possession of HIPPA-compliant Authorizations already as well as $50.00.

- *See* above.

- The Plaintiffs are seeking their own prescription/pharmacy records from Express Scripts. There is no need for them to provide a "Protective Order" for their own pharmacy records. This simply makes no sense. There is, however, a Protective Order in place in the New Jersey Litigation, although it has nothing to do with pharmacy records.

- Plaintiffs' Subpoena is not overly broad because it failed to state a time frame for which Plaintiffs are requesting their prescription /pharmacy records. Many of these Plaintiffs requested their pharmacy records years ago from Express Scripts, and paid the required $50.00 fee. There is a settlement protocol in place which requires that Plaintiffs' submit their pharmacy records as evidence that Vioxx was dispensed to them. We are willing to work with you on a reasonable time frame, but expect these records within the next two months.

- The Subpoena does not fail to define the type of information requested, and specifically states "any and all prescription/pharmacy records for plaintiffs listed on Attachment"A" annexed hereto. What could possibly be overly broad about Plaintiffs in the Vioxx Litigation asking for their pharmacy records?

- Clearly, the Plaintiffs' pharmacy records are not "readily accessible" to them, but are "readily accessible" to Express Scripts. The fact that the records are stored electronically, undermines any argument by Express Scripts that they are not "readily accessible." Computer systems in this day and age make storage and retrieval of records much easier. Furthermore, not "readily accessible" is not a proper objection to a New Jersey Subpoena.

Page 3

- The only source for the Plaintiffs to retrieve their pharmacy records is from their dispensing Pharmacy Benefit Manager ("PBM") like Express Scripts. The requested pharmacy records are not available from any other sources equally or more convenient to the Plaintiffs. What sources is Express Scripts referring to?

- Specifically identify the information you need to retrieve each Plaintiffs' pharmacy records. Plaintiffs find it hard to believe that if a social security number and a name is provided, that Express Scripts is unable to pull-up and produce a Plaintiff's pharmacy records. Indeed, in some instances, Express Scripts has produced pharmacy records, albeit incomplete records, having only been provided with the Plaintiff's name and social security number. This has suddenly changed?

I look forward to speaking with you, Mr. Davis and Mr. Herman and working towards an acceptable agreement so that Vioxx Plaintiffs are not deprived of their pharmacy records, and therefore, at risk for either not qualifying to participate in the Vioxx Settlement Program or suffering a reduced settlement value.

Very truly yours,

Michael M. Weinkowitz

MMW/ams
Enc.
cc:   Leonard Davis, Esquire *via E-mail*
      Steve Herman, Esquire *via E-mail*
      Jeff Grand, Esquire *via E-mail*

# Husch & Eppenberger, LLC

*Attorneys and Counselors at Law*

190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105-3441
314.480.1500
Fax 314.480.1505
www.husch.com

**Jeanine R. Bermel**
Direct Dial No.:  (314) 480-1903
Electronic Mail:   jeanine.bermel@husch.com

January 16, 2008

Leonard A. Davis, Esq.
Steve Herman, Esq.
Herman, Herman, Katz & Cotlar, L.L.P.
820 O'Keefe Avenue
New Orleans, LA 70113

Re:     In re VIOXX® Products Liability Litig., MDL No. 1657

Dear Messrs. Davis and Herman:

It is our understanding that the individual Plaintiffs in the above MDL and analogous state actions are seeking Pharmacy Benefit Manager prescription drug claims data ("PBM prescription drug claims data")[1] and "medical records" for submission and evaluation in order to participate in the settlement with Merck.  We are further advised that some of these Plaintiffs and/or their counsel have contacted Express Scripts, Inc. ("ESI") directly to request PBM prescription drug claims data.  Locating and retrieving this information for tens of thousands of individuals over the pertinent time frame (January 1, 1999 to December 31, 2004) would be, as you have acknowledged, a costly and time consuming task that could take months, assuming that the data is available and accessible.

To assist Plaintiffs in obtaining the requested PBM prescription drug claims data,[2] we understand that Plaintiffs' counsel moved the Court in the MDL to lift the stay on discovery and permit Plaintiffs to subpoena this information.  Judge Fallon granted Plaintiffs' motion to lift the stay, but only to take a Rule 30(b)(6) deposition of ESI to determine whether the requested data is accessible, how much it would cost to retrieve, and the estimated time frame for retrieval.

---

[1] The term "PBM prescription drug claims data," as used herein, is limited to the electronic data that is transmitted for electronic adjudication of a prescription drug claim.
[2] In our initial discussion, you indicated that for each electronic claim, Plaintiffs are requesting information from the following data fields:  claimant name, drug, dosage, date dispensed, physician or DEA number, if available.  As we discussed, the name of the physician or his/her DEA number may not have been captured, since VIOXX® is not a controlled narcotic.

# Husch & Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 16, 2008
Page 2

Rather than proceed with that deposition, you proposed, on behalf of the Plaintiffs' steering committee, to work with ESI to address the issue of production of the PBM prescription drug claims data. In that regard, we researched the extent to which that data is accessible. In a subsequent telephone conference on January 7, 2008, we discussed the following points.

**"Centralized Database"**

1.      I informed you in our conversation on January 7, 2008 that PBM prescription drug claims data is available through a "centralized database" that includes all claims adjudicated on the Anchor platform since January 1999.[3]

2.      In addition, the centralized database contains claims data that was migrated from other platforms (*i.e.*, data that originated on a legacy platform that was subsequently stored in the centralized database). Generally speaking, ESI migrated a limited range of historical PBM prescription drug claims data (*i.e.*, one to two years) for clients that were active at the time of the migration and that had not "re-implemented" (*i.e.*, clients that did not enter a new agreement with ESI prior to migration).

3.      ESI believes that, in total, the "centralized database" contains roughly 80-90% of the combined claims adjudicated by ESI and its legacy PBMs from January 1999 to December 31, 2004. Any claim that is not available in the centralized database would need to be located and retrieved from some other source, such as the legacy platform on which it was first adjudicated or from backup tapes, assuming that data is accessible.[4]

4.      In our conversations, you also stated that the only information available by which to query the requested PBM prescription drug claims data is the name of each individual Plaintiff, his/her respective social security number, gender, date of birth, and possibly a home address. In addition, of the approximately 100,000 individual Plaintiffs

---

[3] As you are aware, over the years ESI has acquired and/or merged with several PBMs, including ValueRx, Diversified Pharmacy Services ("DPS") and National Prescription Administrators ("NPA") (collectively referred to as "legacy PBMs"). Each PBM previously adjudicated claims on its respective proprietary electronic platform (referred to as a "legacy platform").. ESI currently adjudicates claims for its PBM clients on a platform known as "Anchor," which it acquired from DPS.

[4] We have not researched the anticipated cost and time for attempting to retrieve data from legacy platforms or back up tapes. Many problems could be encountered that would render the cost and time associated with retrieving that data prohibitive, including the format in which that data is stored, obsolete hardware, the lack of software licenses, unidentifiable or unreadable backup tapes, etc. Investigating the extent to which information stored on a legacy platform or backup tapes is accessible alone could take several months.

# Husch &
# Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 16, 2008
Page 3

in the MDL alone, you cannot confirm who received prescription drug claims benefits through ESI or one of its legacy PBMs in the 1999 to 2004 time frame. As I explained, the limited information available by which to locate and identify the requested PBM prescription drug claims data further reduces the accessibility of the data since there may be multiple members by the same name and social security numbers may not be available for all claims.[5] For example, a plan may have elected to use a member identification number other than social security number, or the social security number may not have been captured and retained with the PBM prescription drug claims data.

## Options for Production of Claims Data

5.    On January 7, 2008, I outlined three proposals for the production of PBM prescription drug claims data.[6] Each proposal assumes that:

    a.    Plaintiffs will seek and the Court will enter a "Qualified Protective Order" in accordance with the Health Insurance Portability and Accountability Act of 1996 that deems, among other things, that production of the PBM prescription drug claims data in accordance with the proposal is "necessary" to the litigation;

    b.    the PBM prescription drug claims data will be produced to a claims administrator under the terms of the Qualified Protective Order at Plaintiffs' expense;

    c.    the claims administrator shall execute a standard Business Associate Agreement;

    d.    Plaintiffs' counsel shall be responsible for obtaining and providing to ESI (with a copy to the claims administrator) a properly executed HIPAA

---

[5] The limited information available by which to query for PBM prescription drug claims data relating to Plaintiffs may be sufficient when searching for data relating to one or a few individuals. In that case, ESI may employ a manual process to determine if the PBM prescription drug claims data correlates to the requesting individual. Such a manual process would be extremely costly and time consuming in this case. Here, because you are requesting a search in mass, the limited information may be insufficient for an electronic search only.

[6] The claims data stored in the "centralized database," while suitable for Plaintiffs' purposes in the VIOXX® MDL as explained by Plaintiffs' counsel, may not be suitable for other purposes, such as an audit. Hence, the information contained herein regarding the availability or accessibility of this data is limited to the VIOXX® products liability litigation only, and does not apply to other litigation or circumstances.

# Husch & Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 16, 2008
Page 4

compliant authorization form from each Plaintiff for the release of PBM prescription drug claims data;

    e.    Given the time constraints and the limited information available by which to identify and locate the requested PBM prescription drug claims data, there is a risk that the information produced may include claims for persons who are not Plaintiffs in the pending VIOXX® cases. In that regard, Plaintiffs' counsel will agree to indemnify and hold ESI harmless from any claim, filed or unfiled, for any alleged or actual unauthorized release of information, whether brought pursuant to federal, state or some other law or regulation, including any claims for ESI's purported negligence;

    f.    Plaintiffs' counsel shall coordinate with counsel in the analogous VIOXX® products liability state actions to meet their needs for PBM prescription drug claims data;[7] and,

    g.    to the extent that any individual VIOXX® MDL Plaintiff wishes to pursue a request for PBM prescription drug claims data or other information outside of the proposal accepted by Plaintiffs' counsel, such individual Plaintiff shall be required, without objection, to provide any and all applicable member identification numbers, date of birth, name of sponsor and employer, the name of the PBM through which that Plaintiff received prescription drug benefits and the applicable time frame that the Plaintiff received such benefits. Such Plaintiff will pay a minimum fee of $1,500 to obtain this information. To the extent that the individual is requesting PBM prescription drug claims data from a legacy platform or backup tapes, ESI shall charge a fee of $150 per hour for labor including, but not limited to, efforts to investigate the availability and accessibility of the requested data, locate and retrieve any back up tapes, write or decipher code, map and format the data and perform a data analysis. In addition, such individual Plaintiff shall agree to cover any costs associated with the request, including, but not limited to, the cost of retrieving and restoring backup tapes and purchasing hardware and software, etc.

---

[7] I am informed by Michael Weinkowitz of Levin, Fishbein, Sedran and Berman that he is coordinating with Plaintiffs' counsel in the MDL to obtain claims data for Plaintiffs in the NJ VIOXX® Products Liability Litigation. In our discussion of January 7, 2008, you indicated a possibility that you also are in communications with Plaintiffs' counsel in other analogous litigation pending in at least eight other states, including New York and California, and that any agreement reached may be suitable in those cases.

Husch &
Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 16, 2008
Page 5

Subject to the foregoing conditions and limitations, we discussed each of the foregoing options.

**Option 1**

6.      ESI proposes to search and extract PBM prescription drug claims data for the applicable NDCs relating to VIOXX® that are stored in its "centralized database" and adjudicated between January 1, 1999 through December 31, 2004. For each such claim, ESI will produce and extract the following data fields to the extent that such data elements are available: name of the claimant, NDC for that claim, dosage, date dispensed, physician or DEA number.[8] Depending on the volume, the information can be produced on CDs or a portable hard drive (at plaintiffs' expense). The data would be produced in a comma delimited file format, or other mutually agreeable format and can further be produced in a database such as ASCII or Microsoft ACCESS.

7.      ESI estimates that it will take approximately 80 labor hours to extract and format the PBM prescription drug claims data requested as outlined in Option 1. ESI further estimates that the information could be made available to Plaintiffs within two to three weeks after commencing the process.

8.      ESI will not charge an hourly labor fee for Option 1, although Plaintiffs agree to pay any out-of-pocket expenses for CDs and portable hard drives for the delivery of the data.[9] ESI will advise Plaintiffs' counsel immediately if ESI encounters any unanticipated additional out-of-pocket expenses, and Plaintiffs' counsel agree to reimburse ESI for any and all such reasonable costs.

9.      The limitations of Option 1 are as follows:

a.      The PBM prescription drug claims data will be limited to VIOXX® claims that are retained on the "centralized database." The source of that claims

---

[8] ESI cannot guarantee that each element will be present for each claim. The data elements captured and retained have evolved over time within ESI and the elements may differ, especially among the data migrated from the legacy platforms. ESI cannot predict which, if any, elements will be impacted absent a detailed field-by-field analysis.
[9] ESI will incur costs in the production of PBM prescription drug claims data as outlined in Options 1 and 2. ESI agrees to waive those costs solely for the purpose of finding an expeditious and satisfactory resolution of this issue and contingent upon Plaintiffs' acceptance of either Option 1 or 2 as outlined herein.

# Husch & Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 16, 2008
Page 6

data, as well as the information that is not included in the centralized database, is outlined above.

b.     The PBM prescription drug claims data captured will only relate to VIOXX® claims; it will not contain claims data for prescription drugs other than VIOXX®.

c.     The PBM prescription drug claims data will not be culled to those Plaintiffs who are participating in the VIOXX® litigation. The claims administrator will have sole responsibility for culling through the PBM prescription drug claims data produced to ensure that only Plaintiffs' drug claim information is disclosed, and Plaintiffs' counsel shall indemnify ESI for any claim for any alleged or actual unauthorized disclosure.

## Option 2

10.     ESI can search and extract VIOXX® PBM prescription drug claims data stored in its "centralized database" that were adjudicated between January 1, 1999 through December 31, 2004. For each claim identified, ESI can utilize the name of the claimant, member identification numbers and date of birth to locate and retrieve subsequent PBM prescription drug claims data that is retained on the centralized database.

11.     ESI estimates that it would take approximately 250 labor hours to extract and format the PBM prescription drug claims data retrieved as outlined in Option 2. ESI estimates that the initial data may be produced within 4 weeks after commencing the process, with a full data set produced within 8 to 9 weeks.

12.     ESI will not charge an hourly labor fee for Option 2 (*see* footnote 9), although Plaintiffs agree to pay any out-of-pocket expenses for any CDs and portable hard drives for the delivery of the data. ESI will advise Plaintiffs' counsel immediately if it encounters any unanticipated additional out-of-pocket expenses, and Plaintiffs' counsel agrees to reimburse ESI for any such reasonable costs.

13.     As you noted in our discussion on January 7, 2008, Option 2 is the most cost and time efficient proposal for providing PBM prescription drug claims data within the time constraints of the MDL litigation, although it doesn't provide all information initially requested by Plaintiffs.

# Husch & Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 16, 2008
Page 7

14. The limitations of Option 2 are as follows:

a. The PBM prescription drug claims data will be limited to VIOXX® claims that are retained on the "centralized database." The source of that PBM prescription drug claims data, as well as the information that is not included in the centralized database, is discussed generally above.

b. Subsequent PBM prescription drug claims data will be captured for those claimants who had one or more VIOXX® claims contained on the centralized database, provided that the claimant's member identification number subsequently remained unchanged and the member continued to receive benefits through the same PBM.

c. ESI makes no representation regarding production of prior PBM prescription drug claims data (*i.e.*, claims prior to each VIOXX® claim for each corresponding claimant). To the extent that this prior PBM prescription drug claims data can be captured without interrupting or prolonging the estimated production schedule and increasing the cost, ESI will provide such prior claim history. If such production will prolong the estimated schedule outlined herein, ESI will provide an estimated time and cost to retrieve and produce this prior PBM prescription drug claims data.

d. The PBM prescription drug claims data produced will not be culled to identify Plaintiffs' claims. The claims administrator will have sole responsibility for culling through the PBM prescription drug claims data to ensure that only Plaintiffs' drug claim information is disclosed, and Plaintiffs' counsel shall indemnify ESI for any claim for any alleged or actual unauthorized disclosure.

## Option 3

15. The third option discussed is by far the most labor intensive, time consuming and costly. ESI would pull all VIOXX® PBM prescription drug claims data from its centralized database by NDC and subsequent claims history, as identified in Option 2. ESI would also build an eligibility database that includes information to identify the claims of the individual Plaintiffs. That eligibility database would include special logic to recognize variations in names (*i.e.*, Elizabeth, Betty, Beth, Liz, Liza, etc.).

# Husch &
## Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 16, 2008
Page 8

All claims captured would filter through that eligibility database, which would in turn score each claim with a confidence level (*i.e.*, 1 through 5) to indicate the statistical probability of a correlation between a particular claim and a Plaintiff based on the information provided.

16.     In addition to the 8 to 9 weeks estimated for Option 2, ESI estimates that it would take 2 to 3 months to build the eligibility database and to write the code. Another 2 to 3 months would be required to run the VIOXX® PBM prescription drug claims data through the eligibility database and to perform a quality control check. In total, production of PBM prescription drug claims data pursuant to this option could take more than six months. ESI estimates that it will take at least an additional 500 to 1,000 labor hours to complete the production as outlined in this option, and possibly more, at $150 per hour.

17.     In addition to those limitations identified in Options 1 and 2 (including ESI's request for indemnification as outlined in paragraph 5(e)), Option 3 carries no guarantee that it can identify with precision Plaintiffs' PBM prescription drug claims data based on the limited information available. At best, it can provide a confidence level based on whether several factors, such as name, social security number and birth date, correspond to the information provided by Plaintiffs' counsel.

**"Medical Records"**

18.     Your proposed Notice of Rule 30(b)(6) Deposition also references "medical records." In our discussions, you indicated that this term refers to documentation other than information relating to prescription drug claims. As I stated in our discussion on January 7, 2008, for the most part, physicians, their staff or pharmacists will correspond with ESI for the limited purpose of responding to a request to dispense a preferred drug in lieu of the prescribed drug or to obtain authorization for a claim pursuant to the criteria listed by the member's plan. In most instances, the communication may take place by phone or a single letter. In some situations, physicians or their staff may provide additional documentation. Whether and how that information is stored (hard copy or electronic files maintained by date, member name, employer, etc.) and its accessibility varies by PBM and the particular time period in question. In all instances, the communication should be available from the records of Plaintiffs' prescribing physician.

# Husch & Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 16, 2008
Page 9

We have in good faith attempted to address the needs of Plaintiffs in the VIOXX® products liability litigation, including the MDL, while balancing the pressures of other litigation and its ongoing business on ESI's resources.  We look forward to hearing from you whether one of the above proposals will meet the needs of Plaintiffs in the VIOXX® MDL and the analogous state cases.

Very truly yours,

Jeanine R. Bermel



**HERMAN, HERMAN, KATZ & COTLAR**
L.L.P.
Attorneys at Law

820 O'KEEFE AVENUE, NEW ORLEANS, LOUISIANA 70113-1116
TELEPHONE: (504) 581-4892   FACSIMILE: (504) 561-6024
HTTP://WWW.HHKC.COM

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Morton H. Katz*
Sidney A. Cotlar*
Steven J. Lane
Leonard A. Davis*
James C. Klick†

Stephen J. Herman
Brian D. Katz
Soren E. Gisleson

Joseph E. Cain
Jennifer J. Greene‡
John S. Creevy
Joseph A. Kott, M.D. J.D. (Of Counsel)

Offices in New Orleans and
Covington, Louisiana

* A Professional Law Corporation
† Also Admitted in Texas
‡ Also Admitted in Arkansas

This Firm and its Partners Are Also
Partners in Herman Gerel, LLP (formerly Herman,
Mathis, Casey, Kitchens & Gerel, LLP)

January 22, 2008

**VIA E-MAIL ONLY**

Christopher J. Valeriote, Esq.
chris.valeriote@husch.com
Jeanine Bermel, Esq.
jeanine.bermel@husch.com
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105-3441

Re:   *In re: Vioxx Products Liability Litigation*
MDL 1657

Dear Chris and Jeanine:

Thank you for your letter of January 16, 2008. We advised Judge Fallon that your letter had been received and was being reviewed and considered. We also discussed this with counsel for Merck.

While we appreciate ESI's willingness to assist plaintiffs in obtaining the ESI PBM prescription drug claims data, there are a few areas that need to be further discussed in order to better evaluate the proposals as set forth in your letter.

Please provide suggested language or an Order that would give ESI the authority to provide Vioxx prescription data for all individuals in their system, whether they are part of this litigation or not. We recognize that the data may ultimately be provided to a Special Master appointed by the Court or to the Claims Administrator and would like input from you regarding HIPAA issues that may need to be considered. If there are HIPAA concerns for individuals that are not involved in the litigation, then is it possible that ESI only provide records for Vioxx claimants? If so, it seems that this would tremendously reduce the amount of data that would be produced. Also, if claimants' counsel is able to provide their clients' member number, would this in any way assist to expedite and more efficiently produce data? We are not sure if every claimants' counsel is able to provide a member number, but it is possible that some may be able to do so.

January 22, 2008
Page 2

Based upon your representation that in the various options ESI will be able to produce approximately 80% of the Vioxx prescription records. We need to be sure that the other 20% whose records ESI do not find are not prejudiced in the event they continue to desire to seek pharmacy records. We recognize that there are multiple platforms that ESI has created as a result of the various mergers and acquisitions, but several claimants' counsel believe that ESI has a fiduciary duty to its customers and that individuals should be able to get records from ESI regarding prescriptions that they may have received. Your thoughts on this would be helpful.

Finally, in describing the data that is to be provided, ESI does not indicate that it will be providing the number of Vioxx pills dispensed. This data is essential and we need confirmation that it would be provided in any production.

At the status conference on January 18, 2008, Judge Fallon indicated that he wanted us to expedite this process. Enclosed is a copy of the transcript. Please note page 29. I think we really need to expedite this issue.

Your efforts are appreciated, and I look forward to hearing from you.

Sincerely,

LEONARD A. DAVIS

LAD:lmf
Enclosure
cc:     Philip A. Wittmann, Esq.
        Douglas Marvin, Esq.
        Michael Weinkowitz, Esq.
        Fred Longer, Esq.
        Stephen J. Herman, Esq.
        Leigh O'Dell, Esq.
        Brown Greer
        Plaintiffs' Steering Committee
        Plaintiff's Negotiating Committee


**Husch &**
**Eppenberger**, LLC
*Attorneys and Counselors at Law*

190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105-3441
314.480.1500
Fax 314.480.1505
www.husch.com

**Jeanine R. Bermel**
Direct Dial No.:   (314) 480-1903
Electronic Mail:   jeanine.bermel@husch.com

January 25, 2008

**VIA ELECTRONIC AND**
**FIRST CLASS MAIL**

Leonard A. Davis, Esq.
Steve Herman, Esq.
Herman, Herman, Katz & Cotlar, L.L.P.
820 O'Keefe Avenue
New Orleans, LA 70113

Re:   In re VIOXX® Products Liability Litig., MDL No. 1657

Dear Mr. Davis and Mr. Herman:

This responds to your letter of January 22, 2008 regarding Express Scripts, Inc.'s ("ESI") alternate proposals for the production of claims data in relation to the state and federal VIOXX® products liability litigation.

First, contrary to your assertion, ESI does not have a "fiduciary" duty to produce PBM claims data (as defined in the letter of January 16, 2008) to the VIOXX® claimants. Nor do we understand the basis of this assertion, particularly in light of your acknowledgement that many of the claimants have no idea whether or not their plans contracted for PBM services through ESI or one of its legacy PBMs. ESI, however, takes seriously its discovery obligations under Rule 45 of the Federal Rules of Civil Procedure and analogous state rules. Consistent with that obligation, ESI is attempting to work with Plaintiffs by proposing various options for extracting and producing PBM claims data. The obligation to produce additional "inaccessible" electronically stored information (*i.e.*, the 10 to 20% of PBM claims data that ESI estimates is not available through its centralized database) is subject to analysis using a host of factors, including but not limited to, the cost of retrieving that data versus its benefits, whether the data is available

# Husch & Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 25, 2008
Page 2

from alternative sources,[1] whether Plaintiffs are willing to bear the expense of producing that data, etc.

Further, as you acknowledged in our prior discussions, it is in Plaintiffs' and ESI's joint interest to coordinate this production rather than address it piecemeal through individual requests. To this end, you suggested that ESI consider whether any individual claimant who continues to seek PBM claims data in connection with VIOXX® litigation would be required to provide additional information and to pay the $1,500 fee or additional costs. Based on your suggestion, para. 5. g. of the January 16, 2008 proposes the following:

> [T]o the extent that any individual VIOXX® MDL Plaintiff wishes to pursue a request for PBM prescription drug claims data or other information outside of the proposal accepted by Plaintiffs' counsel, such individual Plaintiff shall be required, without objection, to provide any and all applicable member identification numbers, date of birth, name of sponsor and employer, the name of the PBM through which that Plaintiff received prescription drug benefits and the applicable time frame that the Plaintiff received such benefits. Such Plaintiff will pay a minimum fee of $1,500 to obtain this information. To the extent that the individual is requesting PBM prescription drug claims data from a legacy platform or backup tapes, ESI shall charge a fee of $150 per hour for labor including, but not limited to, efforts to investigate the availability and accessibility of the requested data, locate and retrieve any back up tapes, write or decipher code, map and format the data and perform a data analysis. In addition, such individual Plaintiff shall agree to cover any costs associated with the request, including, but not limited to, the cost of retrieving and restoring backup tapes and purchasing hardware and software, etc.

Based on our prior discussions, we believe this proposal is reasonable.

Further, as suggested in the letter of January 16, 2008, we believe that HIPAA permits the production of PHI pursuant to the terms of a "Qualified Protective Order"

---

[1] Information relating to claimants' prescription drug claims history should be available from the prescribing provider or from the claimants' plan.

Husch &
  Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 25, 2008
Page 3

only to the extent necessary for purposes of the litigation in which it is produced.  Please propose a sample order for our review at your earliest convenience.

Also, to the extent that we can agree on the scope and method of production, the PBM claims data produced will include the quantity of the prescription drug dispensed, including the day supply (*i.e.*, 30 days), and the metric quantity or total number of units dispensed (*i.e.*, 60 pills if ordered twice per day for 30 days).

In our prior telephone conversations, you and Mr. Herman stressed the need for expedited production of PBM claims data relating to VIOXX® claimants.  To achieve this goal, you repeatedly requested a proposal for the identification, extraction and production of *all* PBM VIOXX® claims data during the pertinent time frame (January 1, 1999 through December 31, 2004).  In response, I repeatedly emphasized that any such production is likely to include PBM claims data for individuals over and above the VIOXX® claimants.  In recognition of this concern, you suggested that Plaintiffs would agree to limit access to the data to the claims administrator, and would further bear the cost of having that claims administrator cull through the data to identify the pertinent claims.  You also suggested that Plaintiffs would seek the necessary Protective Order regarding any such production.

Interestingly, your letter of January 22, 2008 inquires about the time and cost for culling through the data prior to production, although you clearly indicated you wished to avoid this delay in our prior discussions.  Nonetheless, in response to your letter, we propose as follows:

**Option 4**

Option 4 assumes that Plaintiffs will produce the name of each VIOXX® claimant as it appears on his/her prescription drug benefit card as issued by ESI (or one of its legacy PBMs) or the claimant's sponsor or plan from the pertinent time frame (January 1, 1999 through December 31, 2004), the claimant's social security number, date of birth and gender.  The information shall be provided in a Microsoft ACCESS database in a format to be specified by ESI.

ESI proposes to extract PBM claims data for VIOXX® claims from its centralized database to locate matches based on each of the aforementioned factors.  For each claim

Husch &
Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 25, 2008
Page 4

that matches 100%, ESI will extract the member name, member identification number
and other necessary data fields to build a database. ESI will then write the code to join
that database to the centralized database to locate any and all PBM claims data relating to
the identified members (to the extent such data is available through the centralized
database, as outlined in the letter of January 16, 2008).

ESI estimates that the aforementioned proposal, in terms of complexity, cost and
time, lies somewhere between Options 2 and 3 as outlined in the letter of January 16. For
purposes of providing you an expedited response to your letter of January 22, 2008, ESI
roughly estimates that the time required to complete Option 4 is between 300 to 500 man
hours at $150 per hour and could take 3 to 4 months to produce the data, barring any
unforeseen circumstances.[2] ESI reserves the right to change this estimate as it explores
this option further.

The limitations of Option 4 are as follows:

1.     To the extent that the claimant's name as listed in the Microsoft ACCESS
database varies from the name recorded in ESI's centralized database, the PBM claims
data for that claimant will not be captured.

2.     As I explained in our prior conversations, plans or sponsors dictate at their
discretion the form and source of member identification numbers. Some elect to assign
unique identifiers. In the 1999 to 2004 time frame, some may have elected to use social
security numbers, although this practice declined during more recent years. Where a plan
or sponsor elected to use social security numbers, however, there may be variations that
pose additional obstacles for identifying PBM claims data for particular individuals. For
example, a plan or sponsor may have elected to use the social security number of the
primary member (i.e., an employee of a plan sponsor) to identify that member and each
of his/her beneficiaries. To the extent that any VIOXX® claimant was a beneficiary of
any such plan, PBM claims data for that beneficiary cannot be located by that
beneficiary's social security number. Moreover, to the extent that a plan or sponsor opted
to identify members by social security number, the plan or sponsor also may have elected
to use a unique prefix or other variation. In short, there is no guarantee that social
security numbers can be used to identify the PBM claims data of the VIOXX® claimants.

---

[2] ESI anticipates producing the PBM claims data on a rolling basis as it becomes available.

# Husch & Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 25, 2008
Page 5

3.    ESI proposes to start by pulling PBM claims data from its centralized database for VIOXX® "paid" claims.[3]  Hence, only the PBM claims data relating to claimants for which ESI or one of its legacy PBMs adjudicated a claim for VIOXX® will be captured,[4] to the extent that ESI identifies the PBM claims data for those claimants in its centralized database based on the information provided by Plaintiffs.  In short, if a claimant received VIOXX® through a competitor and not through ESI or one of its legacy PBMs, PBM claims data for that claimant will not be identified.

**Option 5**

In your letter of January 22, 2008, you also ask whether the process of extracting and producing PBM claims data might be expedited if Plaintiffs provide a member identification number as listed on the claimant's prescription drug benefit card(s), in addition to name, date of birth and gender.[5]  As we discussed, there is an obvious advantage in having this information available; ESI anticipates that searching by member identification number is more likely to yield a greater volume of PBM claims data relating to the claimants.  However, this option also requires ESI to run a "match" process, create a database and run a program to locate the pertinent PBM claims data in the centralized database.  Accordingly, the complexity, time and cost of Option 5 are roughly equal to that of Option 4.[6]  The advantage of Option 5 over and above all others, however, is that ESI is more likely to identify pertinent PBM claims data using the unique member identification number.

---

[3] "Paid" claims refers to claims that were not reversed or cancelled because of data entry errors or because the drug was not dispensed to the member (*i.e.*, the member failed to retrieve the drug from the pharmacy).
[4] Given the volume, it is not feasible to pull all PBM "paid" claims data from ESI's centralized database into ACCESS to compare or run against the information to be provided by Plaintiffs in ACCESS regarding each VIOXX® claimant.  Rather, in order to search its entire centralized database, ESI would need to build a table containing all information provided by Plaintiffs and write the code to join that table to the PBM claims data tables in its centralized database.  ESI has not attempted to estimate the time or cost for any such project, but believes it would exceed the time and cost estimate for any option posed thus far.
[5] It is possible that, during the 1999 to 2004 time period, a claimant's member identification number changed.  For example, the claimant might have changed plans or the plan changed PBMs.  Option 5 presumes that Plaintiffs will provide any and all pertinent member identifications numbers.
[6] Depending on the volume of matches, there may be a delay of a week or two to extract the data.

# Husch & Eppenberger, LLC

Leonard A. Davis, Esq.
Steve Herman, Esq.
January 25, 2008
Page 6


Once again, ESI is attempting to balance its ongoing business needs with the demands of litigation within the framework of its existing resources. We appreciate the desire for expedited discovery, but also wish to avoid the creation of any false expectations. To that end, we have attempted, in the little time provided, to anticipate the time, resources and costs that may be devoted to achieve each of the various options. As ESI continues to analyze these options, additional issues may be encountered that require adjustments to the initial estimates. We will apprise you of any such additional issues in due course. In the interim, we look forward to your response.

Very truly yours,

Jeanine R. Bermel

cc:     Michael Weinkowitz, Esq.



**HERMAN, HERMAN, KATZ & COTLAR**
L.L.P.
Attorneys at Law

820 O'Keefe Avenue, New Orleans, Louisiana 70113-1116
Telephone: (504) 581-4892    Facsimile: (504) 561-6024
HTTP://WWW.HHKC.COM

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Morton H. Katz*
Sidney A. Cotlar*
Steven J. Lane
Leonard A. Davis*
James C. Klick†

Stephen J. Herman
Brian D. Katz
Soren E. Gisleson

Joseph E. Cain
Jennifer J. Greene‡
John S. Creevy
Joseph A. Kott, M.D. J.D. (Of Counsel)

Offices in New Orleans and
Covington, Louisiana

\* A Professional Law Corporation
† Also Admitted in Texas
‡ Also Admitted in Arkansas

This Firm and its Partners Are Also
Partners in Herman Gerel, LLP (formerly Herman,
Mathis, Casey, Kitchens & Gerel, LLP)

January 29, 2008

**VIA E-MAIL ONLY**

Christopher J. Valeriote, Esq.
chris.valeriote@husch.com
Jeanine Bermel, Esq.
jeanine.bermel@husch.com
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105-3441

Re:    *In re: Vioxx Products Liability Litigation*
        MDL 1657

Dear Chris and Jeanine:

First let me express my condolences to you, Jeanine, on the death of your mother. My thoughts are with you and I know this is a very difficult time for you and your family.

With respect to today's telephone call between you, Mike Weinkowitz and myself, I want to be very clear and simple as to what will be needed in the MDL (as I explained, the MDL is also coordinated with the States of Texas, New Jersey and California in connection with the Master Settlement Agreement that encompasses all Vioxx claims pending in the United States).

Judge Fallon presides over the MDL and is working with the various State Court Judges to assure that the Settlement Program is implemented. In connection with the request made to ESI for Vioxx claimant prescription drug records, we need to be able to assure the Court and counsel that ESI will be providing:

1.    Pharmacy records (I believe you call this "PBM prescription drug claims data") so that a Vioxx claimant can submit the records into the Vioxx Settlement Program.

2.    Vioxx plaintiff's counsel will provide to ESI, on a rolling basis, certain information regarding each Vioxx claimant who seeks to obtain PBM prescription drug claims data from ESI. This information will include the claimant's full name, date of birth,

January 29, 2008
Page 2

address and ESI member identification number. Please let us know if you need the claimant's social security number.  Plaintiff's counsel will be encouraged to expedite the delivery of the information so as not to delay ESI's search and production of prescription drug records. Plaintiff's counsel is prepared to make an initial identification of information immediately. The initial identification includes approximately 200 Vioxx claimants and this primarily involves New Jersey claimants. The totality of MDL Vioxx claimants is not fully known, but we are aware already of approximately 100 Vioxx claimants whose requests will be made. We would hope to provide ESI with the identity of all claimants within thirty days.

3.  You advised us that in order for ESI to produce the PBM prescription drug claims data that will include a complete identification of all prescription drug claims data for a particular claimant, that it will take three to four months from the time ESI begins the process. We advised you that we need assurance that claims data from ESI will be produced prior to May 1, 2008. We do not object to a rolling production by ESI so long as there is a complete production by May 1, 2008.

4.  You advised that the cost to produce the prescription drug claims data is anticipated to be between $45,000 and $75,000, which is based upon ESI's conservative estimate of 300 to 500 hours at $150 per hour. We advised you that this amount is beyond the amount that plaintiff's counsel believes is reasonable based upon similar requests to other PBMs, the extent of data requested, our understanding of ESI's computer system, and the number of Vioxx claimants seeking information from ESI. You agreed to consult further with ESI to advise further if a reduction of the cost can be obtained.

Mike and I look forward to speaking with you Friday at 9:00 a.m. Central Time. I know that the various Judges are anxious to know that we have an understanding and that the requested information will be timely produced in an efficient basis. If the above is accurate and you can confirm the time frame and an acceptable cost of production, we will advise the Judges.

Sincerely,

LEONARD A. DAVIS

LAD:lmf
cc:  Philip A. Wittmann, Esq.
     Douglas Marvin, Esq.
     Michael Weinkowitz, Esq.
     Fred Longer, Esq.
     Stephen J. Herman, Esq.
     Leigh O'Dell, Esq.
     Brown Greer
     Plaintiffs' Steering Committee
     Plaintiff's Negotiating Committee

W:\25000-29999\27115\000\COR\LTR Valeriote and Bermel re ESI 2008-1-29.wpd



**HERMAN, HERMAN,
KATZ & COTLAR**
L.L.P.
Attorneys at Law

820 O'KEEFE AVENUE, NEW ORLEANS, LOUISIANA 70113-1116
TELEPHONE: (504) 581-4892   FACSIMILE: (504) 561-6024
HTTP://WWW.HHKC.COM

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Morton H. Katz*
Sidney A. Cotlar*
Steven J. Lane
Leonard A. Davis*
James C. Klick†

Stephen J. Herman
Brian D. Katz
Soren E. Gisleson

Joseph E. Cain
Jennifer J. Greene‡
John S. Creevy
Joseph A. Kott, M.D. J.D. (Of Counsel)

Offices in New Orleans and
Covington, Louisiana

* A Professional Law Corporation
† Also Admitted in Texas
‡ Also Admitted in Arkansas

This Firm and its Partners Are Also
Partners in Herman Gerel, LLP (formerly Herman,
Mathis, Casey, Kitchens & Gerel, LLP)

January 29, 2008

**VIA E-MAIL ONLY**

Christopher J. Valeriote, Esq.
chris.valeriote@husch.com
Jeanine Bermel, Esq.
jeanine.bermel@husch.com
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105-3441

Re:   _In re: Vioxx Products Liability Litigation_
MDL 1657

Dear Chris and Jeanine:

First let me express my condolences to you, Jeanine, on the death of your mother. My thoughts are with you and I know this is a very difficult time for you and your family.

With respect to today's telephone call between you, Mike Weinkowitz and myself, I want to be very clear and simple as to what will be needed in the MDL (as I explained, the MDL is also coordinated with the States of Texas, New Jersey and California in connection with the Master Settlement Agreement that encompasses all Vioxx claims pending in the United States).

Judge Fallon presides over the MDL and is working with the various State Court Judges to assure that the Settlement Program is implemented. In connection with the request made to ESI for Vioxx claimant prescription drug records, we need to be able to assure the Court and counsel that ESI will be providing:

1.   Pharmacy records (I believe you call this "PBM prescription drug claims data") so that a Vioxx claimant can submit the records into the Vioxx Settlement Program.

2.   Vioxx plaintiff's counsel will provide to ESI, on a rolling basis, certain information regarding each Vioxx claimant who seeks to obtain PBM prescription drug claims data from ESI. This information will include the claimant's full name, date of birth,

January 29, 2008
Page 2

address and ESI member identification number. Please let us know if you need the claimant's social security number. Plaintiff's counsel will be encouraged to expedite the delivery of the information so as not to delay ESI's search and production of prescription drug records. Plaintiff's counsel is prepared to make an initial identification of information immediately. The initial identification includes approximately 200 Vioxx claimants and this primarily involves New Jersey claimants. The totality of MDL Vioxx claimants is not fully known, but we are aware already of approximately 100 Vioxx claimants whose requests will be made. We would hope to provide ESI with the identity of all claimants within thirty days.

3.    You advised us that in order for ESI to produce the PBM prescription drug claims data that will include a complete identification of all prescription drug claims data for a particular claimant, that it will take three to four months from the time ESI begins the process. We advised you that we need assurance that claims data from ESI will be produced prior to May 1, 2008. We do not object to a rolling production by ESI so long as there is a complete production by May 1, 2008.

4.    You advised that the cost to produce the prescription drug claims data is anticipated to be between $45,000 and $75,000, which is based upon ESI's conservative estimate of 300 to 500 hours at $150 per hour. We advised you that this amount is beyond the amount that plaintiff's counsel believes is reasonable based upon similar requests to other PBMs, the extent of data requested, our understanding of ESI's computer system, and the number of Vioxx claimants seeking information from ESI. You agreed to consult further with ESI to advise further if a reduction of the cost can be obtained.

Mike and I look forward to speaking with you Friday at 9:00 a.m. Central Time. I know that the various Judges are anxious to know that we have an understanding and that the requested information will be timely produced in an efficient basis. If the above is accurate and you can confirm the time frame and an acceptable cost of production, we will advise the Judges.

Sincerely,

LEONARD A. DAVIS

LAD:lmf
cc:    Philip A. Wittmann, Esq.
       Douglas Marvin, Esq.
       Michael Weinkowitz, Esq.
       Fred Longer, Esq.
       Stephen J. Herman, Esq.
       Leigh O'Dell, Esq.
       Brown Greer
       Plaintiffs' Steering Committee
       Plaintiff's Negotiating Committee



Husch &
Eppenberger, LLC

*Attorneys and Counselors at Law*

190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105-3441
314.480.1500
Fax  314.480.1505
www.husch.com

**Jeanine R. Bermel**
Direct Dial No.:  (314) 480-1903
Electronic Mail:   jeanine.bermel@husch.com

January 31, 2008

**VIA ELECTRONIC AND
FIRST CLASS MAIL**

Leonard A. Davis, Esq.
Herman, Herman, Katz & Cotlar, L.L.P.
820 O'Keefe Avenue
New Orleans, LA 70113

   Re: In re VIOXX® Products Liability Litig., MDL No. 1657

Dear Mr. Davis:

   This is a follow up to our telephone conference of January 29, 2008 regarding the production of PBM claims data, as defined in my letter of January 16, 2008, relating to the claimants in the above MDL and the analogous state actions.  In that discussion, you proposed providing the names of the claimants, their ESI member identification number (as assigned by their respective plans, and as it appeared on their benefit cards), social security numbers, date of birth, gender and last known address on a rolling basis.  You asked Express Scripts to determine the amount of time and the anticipated cost for producing the PBM claims data for the claimants identified.  In particular, you asked whether the PBM claims data could be available by the beginning of May, 2008.

**ESTIMATE**

   In response, ESI has developed the following time and cost estimate.

**Design, Code and Test:**

20 hours - Design and create new member table to store Member ID's, names, DOB's, etc. as provided by Claimants;
120 hours - Design, code and test match process to convert member ID's provided to ESI Member Keys.
50 hours - Design, code and test new claim extract process to match member keys to EDW claims tables (years 2002 to 2004).

# Husch & Eppenberger, LLC

Leonard A. Davis, Esq.
January 31, 2008
Page 2

50 hours - Design, code and test new claim extract process to match member keys to ODS claims tables (years 1999 to 2001).

Subtotal = approx. 240 hours

**Execution, Review, Create Output Media:**

60 hours - load member file, run iteration # 1, high level review of output files, burn CD's or hard drive.
60 hours - load member file, run iteration # 2, high level review of output files, burn CD's or hard drive.
60 hours - load member file, run iteration # 3, high level review of output files, burn CD's or hard drive.

Subtotal = approx. 180 hours

**Grand Total = approx. 420 hours**

This estimate is based on the following:

1.      Plaintiffs will provide the first batch of names of the claimants, their member identification numbers as they appeared on their prescription drug benefit cards, date of birth and social security number (collectively referred to as "claimant information") in the attached member file layout format in a Microsoft ACCESS database on or before Wednesday, February 6, 2008.

2.      As we discussed previously, Plaintiffs will provide a copy of each claimant's executed authorization to release the PBM claims data when providing the claimant information.

3.      Plaintiffs will provide the member file on a rolling basis in three installments or "tiers" (with the first to be delivered on or before Wednesday February 6, 2008).  Note that we estimate approximately 60 hours over three business weeks to complete each rolling production, although this estimate could fluctuate depending on the amount of claimants in each "tier."

# Husch & Eppenberger, LLC

Leonard A. Davis, Esq.
January 31, 2008
Page 3

4.     ESI estimates that it will take approximately three business weeks upon completion of the initial design, code and test to run the match process and extract the data, depending on the volume.  Accordingly, the last date by which Plaintiffs may provide a member file on a rolling basis is April 1, 2008.  ESI makes no representations concerning the date on which PBM claims data will be produced for claimants whose information or authorizations are provided after April 1, 2008.

5.     The estimate does not include the cost of the medium used to deliver the data (*i.e.*, hard drives or CDs, depending on the volume of PBM claims data to be produced), which is an additional cost for which Plaintiffs will reimburse ESI.

6.     ESI will perform a high level review only of the PBM claims data prior to production. ESI will not attempt to resolve any "exceptions."  For example, ESI will not attempt to identify and correct any issues created by incorrect formatting in Plaintiffs' member files. Also, it is possible that unrelated plans may have elected to use the same member identification numbers.  In that instance, there is a remote possibility that searching by member identification number may yield PBM claims data for two different individuals with the same name (especially if a common name), the same gender and the same date of birth. ESI will not attempt to identify those situations. ESI will, however, extract and provide data fields to identify the member's address and plan or sponsor. Based on that information, Plaintiffs may confirm the PBM claims data for each claimant at issue.

7.     The PBM claims data will be limited to "paid claims" that are available through the centralized database.  The data fields for each claim will include the name of the member, social security number, member identification number, member key number, plan or sponsor identifier, date of birth, gender, address, NDC number for the dispensed prescription drug, quantity of the prescription drug dispensed (including the day supply and the metric quantity or total number of units dispensed), the name of the dispensing physician and the physician's DEA number. Note that the availability of data for each of these fields may vary depending on the platform on which the claim was originally adjudicated, and the time frame.  For example, social security numbers and physician identification information may not be available for each claim.

8.     The centralized database is comprised of tables containing data derived from various sources.  Some of the PBM claims data contained within these tables is

# Husch & Eppenberger, LLC

Leonard A. Davis, Esq.
January 31, 2008
Page 4

duplicated. A field will be identified that will allow Plaintiffs to match up any duplicate claims.

9.    Further, as suggested in the letter of January 16, 2008, we believe that HIPAA permits the production of PHI pursuant to the terms of a "Qualified Protective Order" only to the extent necessary for purposes of the litigation in which it is produced. Please propose a sample Protective Order for our review on or before Tuesday, February 5, 2008.

10.    Last, to the extent that member identification number is not available, ESI will also search by social security number. As indicated in the letters of January 16, 2008 and January 25, 2008, an electronic search of this nature on the basis of social security number is less likely to yield the requested information.

As indicated above, ESI estimates that it will take approximately 420 man hours at $150 per hour (totaling approximately $63,000) to complete the programming, run the match process, extract the data, perform a high level review and copy it to a deliverable medium, assuming that claimant information is delivered in three tiers. ESI believes this is a reasonable charge for a task of this magnitude. First, the estimate does not include the more than sixty hours invested thus far in examining the various options to meet Plaintiffs' needs, analyze the feasibility of Plaintiffs' suggestions, determine output fields, create a file layout and develop a data dictionary. Moreover, ESI does not believe that its PBM claims data qualifies as "medical records" or that ESI, as a PBM, is a "medical provider." Assuming any such definitions apply, which ESI disputes, state laws generally permit a provider to charge a reasonable amount for "medical records". If the estimate of $63,000.00 for labor is divided among the more than 100,000 claimants estimated by Steve Herman in our initial call, the cost of providing the data is less than 75¢ per claimant.

ESI is committed to producing the PBM claims data in both a time and cost efficient manner. If completed in less than 420 hours, of course, you will be charged only for the hours expended. Full disclosure requires, however, that we advise you that the process could take longer if ESI encounters any unforeseen circumstances, particularly since the PBM claims data is coming from an array of systems over a vast time period. ESI believes, however, that if Plaintiffs provide the member files containing the claimant information in the requested file layout on a rolling basis no later than April

# Husch &
# Eppenberger, LLC

Leonard A. Davis, Esq.
January 31, 2008
Page 5

1, ESI can produce the requested PBM claims data from its centralized database on or about the beginning of May, 2008.

Since we began this dialog immediately prior to the holiday season, ESI has communicated diligently and expeditiously in good faith to find a realistic solution that meets Plaintiffs' needs while balancing the pressures of ESI's ongoing business and other litigation within the framework of its existing resources. ESI has, for several weeks now, stood ready to begin the process of programming and extracting the PBM claims data upon reaching an agreement on the scope, method and cost. Once again, we hope that the proposal outlined herein meets your satisfaction so that ESI can commence the process of locating the requested PBM claims data immediately in order to meet the needs of the claimants and the various Courts to bring these matters to a conclusion.

Very truly yours,

Jeanine R. Bermel

Attachment

cc:   Michael Weinkowitz, Esq.

## Layout For Member File To Be Provided In Microsoft Access

| FIELD | FIELD NAME | TYPE | EXAMPLE |
|-------|------------|------|---------|
| 1 | ESI MEMBER ID | VARCHAR(20) | 012345678 |
| 2 | OTHER MEMBER ID | VARCHAR(18) | 458763982 |
| 3 | FIRST NAME | VARCHAR(25) | JOHN |
| 4 | MIDDLE INIT | CHAR(1) | I |
| 5 | LAST NAME | VARCHAR(25) | DOE |
| 6 | BIRTH DATE | DATE | 2007-07-01 |
| 7 | GENDER | CHAR(1) | M |

Field No. 2 "other member id" is the claimant's social security number