UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION l (3) |
| | : | |
| THIS DOCUMENT RELATES TO | : | JUDGE FALLON |
| ALL CASES | : | MAG. JUDGE KNOWLES |

**THE PLAINTIFFS' STEERING COMMITTEE'S
RESPONSE TO THE AMENDED MOTION OF
CERTAIN FLORIDA CLAIMANTS TO BE INCLUDED
IN THE VIOXX MDL SETTLEMENT AGREEMENT**

**I.    INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC") hereby responds to the Amended Motion of Certain Florida Claimants to be included in the Vioxx MDL Settlement Agreement (Doc. No. 13301). Only four out of the thirteen members of the PSC participated in the negotiations with Merck & Co., Inc. ("Merck") that led up to the Settlement Agreement now challenged by the Florida claimants. The Settlement Agreement, which was actually entered into between Merck and Negotiating Plaintiffs' Counsel ("NPC"),[1] reflects a private settlement agreement by Merck with particular Vioxx users defined within the Settlement Agreement as "eligible claimants." By their motion, movants seek to reform the Settlement Agreement to include any Vioxx claimant who was listed with the PSC on any agreement set forth in PTO No. 19. Such a reformation defies any reasonable interpretation of the Settlement Agreement and would be inappropriate.

As the Settlement Agreement is a private contract, Merck is and was justified to limit its offer specifically to those it intended as offerees. It would prove inimical to the Settlement

---

[1] The NPC was composed of the following counsel: Russ Herman, Andy Birchfield, Jr., Christopher Seeger, Arnold Levin, Edward Blizzard and Thomas Girardi. Neither Mr. Blizzard, nor Mr. Girardi are members of the PSC.

Agreement and unjustified if this Court were to interfere with the Settlement Agreement based solely upon the arguments presented by movants that they have been wrongly excluded by reason of their counsel identifying them on a Full Participation Option agreement of PTO No. 19.

Movants are not prejudiced in any way by the terms of the Settlement Agreement. As understood by their moving papers, movants are Vioxx users who neither filed lawsuits, class actions, nor obtained tolling agreements with Merck prior to November 9, 2007. As these are ineligible claimants, the Settlement Agreement has no binding effect upon them. They are not impaired, nor prohibited from prosecuting any claim(s) they may have through the channels provided to them by the judicial process. The Settlement Agreement does not consider them to be an eligible claimant that can participate in the Program. That, however, is not a legal prejudice engendered by either the NPC or PSC. Merck dictated as the offeror to limit any settlement contract to a restricted group of claimants who filed or tolled cases. Initially, Merck would only negotiate cases in which a myocardial infarct ("MI") was alleged to have been caused by Vioxx ingestion. After more than eight months of negotiation, the substantive talks were modified to also cover ischemic strokes ("IS") alleged to have been caused by Vioxx ingestion. Despite this expansion regarding IS claims, Merck never wavered from its insistence on the requirement that persons must have filed or tolled their claims.

The movants erroneously contend that the PSC improperly negotiated these terms of exclusion with Merck in secret. Further promoting this flawed premise, Movants contend that the PSC violated its "fiduciary obligation" to the movants by keeping them "in the dark" about the settlement negotiations, not allowing their counsel to participate in the settlement negotiations, and confecting a settlement that did not include them in it. As discussed in greater

detail below, the confidential negotiations of the NPC and Merck were mandated by the Courts. There is no merit to the Florida claimants' arguments and their motion to reform the Settlement Agreement should be denied.

## II.     FACTUAL BACKGROUND

The Judicial Panel on Multi-District Litigation issued its initial Transfer Order in this case on February 16, 2005.  *See In re Vioxx Products Liability Litigation*, 360 F.Supp.2d 1352 (J.P.M.L. 2005).  Once assigned to the litigation, this Court immediately engaged in the monumental efforts necessary to guide and administer this colossal case.  To assist the Court navigate the litigation, it appointed Liaison Counsel, the Plaintiff's Steering Committee and the Plaintiff's Executive Committee to perform all of the "necessary administrative or logistic functions of the PSC and carry out any other duty as the Court may order."  *In re Vioxx Products Liability Litigation*, MDL No. 1657, Pretrial Order No. 6 at 2 (E.D.La. April 8, 2005).  Among the several enumerated tasks assigned to the PSC was the obligation to "explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation." *Id*. at 3.

As the litigation matured, on December 7, 2006, this Court (along with Judges Higbee (New Jersey), Chaney (California) and Wilson (Texas)) initiated discussions directing the parties to engage in settlement discussions. *See In re Vioxx Products Liability Litigation*, Transcript of Proceedings at 5 (E.D.La. Nov. 9, 2008).  The Court appointed select counsel from the MDL, New Jersey, California and Texas to a Negotiating Plaintiffs' Committee and "charged [them] with the responsibility of negotiating in confidence, in secrecy, and in good faith. [Merck's counsel] had the same charge and responsibility." *Id*.  On November 9, 2007, after eleven

months of negotiating, the NPC and Merck reached an agreement by contract on a program which resolves a great majority of the cases in the various jurisdictions (MDL, California, New Jersey, Texas). The Settlement Agreement introduces a prototype for resolution of complex, personal injury mass tort claims – a private contract administered as a private contract. *Id*. at 13.

In that private contract, Merck identified certain categories of Vioxx claimants that would be eligible to participate in the settlement. Merck's definition of the term "eligible claimant" was expressed in the Settlement Agreement. *See* Settlement Agreement §17.1.22.2.[2]

It is this last provision with which the movants take exception. Movants argue that the PSC should have contemptuously violated this Court's order to maintain the confidentiality of the settlement negotiations to have provided them with a "heads up" tip to the proposed terms of the settlement. Movants claim that for the PSC not to engage in contempt was a breach of a fiduciary duty purportedly owed to them. As a matter of fact, however, the PSC, as such, was not even notified of the proposed settlement until 11:00 p.m. on November 8, 2007. Movants further argue that their counsel should have been allowed to directly participate in negotiations of the settlement with Merck. Finally, they contend that the definition of "eligible claimant"

---

[2]Section 17.1.22.2 states:

> "Eligible Claimant" means a natural person or the Legal Representative(s) thereof:
>
> which natural person or Legal Representative(s) (I) as of the Execution Date had a lawsuit pending (in any court in the United States) against, or was (directly or through counsel) a party to a Tolling Agreement with, Merck with respect to an allegation described in Section 17.1.22.3 or (ii) prior to the Execution Date was (directly or through counsel) a party to a Tolling agreement with Merck with respect to an allegation described in Section 17.1.22.3 which Tolling Agreement has been terminated by Merck[.]

should be broadened to include their claims even though their counsel made no effort to file a lawsuit or initiate a tolling agreement on their behalf in the time since they endorsed the Full Participation Option Agreement of Pretrial Order No. 19 in November 2005.

None of these arguments have merit.

### III. ARGUMENT

#### A. THE PSC DID NOT OWE A FIDUCIARY DUTY TO INCLUDE THE FLORIDA CLAIMANTS IN THE DEFINITION OF ELIGIBLE CLAIMANTS IN THE SETTLEMENT AGREEMENT

Pretrial Order No. 6 specified the duties of the PSC in MDL No. 1657. In terms of negotiating settlements, Pretrial Order No. 6 reveals a pragmatic understanding of settlement discussions. Obviously, in litigation of this magnitude, it is not always possible to include all participants in one particular settlement. PTO No. 6 therefore afforded the PSC wide latitude to negotiate "any claim or portion thereof". Pretrial Order No. 6 at 3.

The Florida claimants ignore this aspect of PTO No. 6 and insist that the PSC was obligated by a fiduciary duty to include them in any settlement negotiated under the auspices of this Court. This argument is flawed for at least two reasons: first, it ignores this Court's mandate to negotiate the settlement in secret, *In re Vioxx Products Liability Litigation*, Transcript of Proceedings at 5; and second, it overstates the fiduciary duty owed by the PSC to their claims. Further, the PSC did not negotiate the settlement.

Members of steering committees appointed by MDL courts owe a limited obligation to other litigants for whom they are not retained counsel. Under the terms of the *Manual for Complex Litigation* the role of lead counsel is demarcated as follows:

5

> Charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically, they act for the group – either personally or by coordinating the efforts of others – in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

*Manual for Complex Litigation* (Fourth) §10.221 (2004).

In the *Diet Drugs* litigation, class counsel and members of the PMC appointed by the MDL court were sued for legal malpractice by class members who claimed that their interests in developing discovery and claims for certain injuries were overlooked by the appointed counsel. Chief Judge Bartle rejected this claim, noting that the fiduciary duties owed by appointed counsel did not extend to the lengths articulated by the disgruntled plaintiffs. In particular, the court held:

> Class counsel, of course had a duty to act in the "best interests of the class considered as a unit." *See Thomas v. Albright*, 77 F.Supp.2d 114, 122 (D.D.C. 1999), *aff'd sub nom. Thomas v. Powell*, 247 F.3d 260 (D.C. Cir. 2001). However, neither Class Counsel nor the PMC owed plaintiffs any duty after they decided not to be part of the Settlement Agreement. At that point, Class Counsel and the PMC were no longer counsel for plaintiffs, since they had excluded themselves from the class. Instead, plaintiffs had their own privately retained attorney, Ronald R. Benjamin.[3]

*In re Diet Drugs Products Liability Litigation*, MDL No. 1203, Pretrial Order No. 5675 at 5 (E.D.Pa. Aug. 29, 2005)[Attached hereto as Exhibit "A"]. *See also Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir. 1999)(noting that ordinary conflict rules applicable to attorneys in

---

[3]The analogy is apt. By excluding themselves from the class settlement, Mr. Benjamin's clients were placed into a similar position as the present-day movants.

binary litigation "may be at odds with the policies" underlying multiple representation cases); *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3d Cir.1984) (Adams, J., concurring)(employing a balancing test to competing interests in class litigation).

In this case, no class is implicated. The Vioxx debacle is best characterized as a mass tort, MDL case. Accordingly, the duties and fidelities owed by the PSC to other litigants in this MDL, such as the Florida claimants, are even less demanding than those in *Diet Drugs*. *See generally In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1012 n. 8 (5th Cir. 1977)(noting heightened obligations of class counsel in contrast to relaxed burdens imposed upon steering committees appointed by MDL courts to manage the case). In the situation posed by the Florida claimants, "the plaintiffs ha[ve] their own privately retained attorney" to represent their interests. The Florida claimants' assertion that the PSC owed them a fiduciary duty to represent their particular interests when negotiating the definition of "eligible claimant" in the Settlement Agreement, as opposed to the whole group of plaintiffs in the MDL, is mistaken. Here, the members of the PSC that participated as NPC in the settlement negotiations with Merck did represent the group <u>as a whole</u> and in so doing obtained the best settlement possible from Merck while fulfilling their obligations to the MDL.

      **B.**     <u>**A PLAIN READING OF THE DEFINITION OF ELIGIBLE CLAIMANT EXCLUDES THE FLORIDA CLAIMANTS FROM THE SETTLEMENT**</u>

The Florida Claimants' contention that the Settlement Agreement should be construed or reformed to allow them to become "eligible claimants" is without merit.

The principles that govern the interpretation of a complex contract like the Settlement Agreement with Merck are akin to those applicable to a class action settlement agreement, which

interpretive rules are those that apply under the usual rules of contract law. *See Waters v. International Precious Metals Corp.*, 237 F.3d 1273, 1277 (11th Cir. 2001) ("The [class action settlement] Agreement is a contract, so our analysis is governed by principles of general contract law."); *Halderman v. Pennhurst State School and Hosp.*, 901 F.2d 311, 318 (3rd Cir.), *cert. denied*, 498 U.S. 850 (1990) (in resolving dispute over alleged breach of settlement agreement in class action, court treated settlement agreement as a contract); *In re Cendant Corp. PRIDES Litig.*, 233 F.3d 188, 193 (3rd Cir. 2000); *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (treating class action settlement as a contract whose "enforceability is governed by familiar principles of contract law").

Under the principles of contract law, a court arrives at the proper construction of an agreement by considering the language employed by the parties in light of the circumstances that existed at the time the agreement was reached. *See United States v. Winstar Corp.*, 518 U.S. 839, 863 (1996), *quoting* RESTATEMENT (SECOND) OF CONTRACTS, § 202(1) (1981) (in order to ascertain the intent of the parties, the language of their agreement should be "interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is [to be] given great weight."); *Williams v. Metzler*, 132 F.3d 937, 947 (3rd Cir. 1997) ("the court should consider the situation of the parties, the attendant circumstances and the ends they sought to achieve.") (citations omitted).

Here, the definition of "eligible claimant" is plain. The offer Merck extended only issued to persons who have tolling agreements or claims on file as of November 9, 2007. *See* Settlement Agreement §17.1.22.2. Confirming that the parties intended such a result was the announcement at the November 9, 2007 Status Conference to the same effect. *See In re Vioxx*

*Products Liability Litigation*, Transcript of Proceedings at 29 (E.D.La. Nov. 9, 2007)("[T]his contract only applies to filed and tolled cases. People that filed cases after today cannot take advantage of this."). Under these circumstances, where the intention of the parties is accurately expressed by the instrument, reformation of the contract is improper. *See In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 442 (5th Cir. 2002).[4] The relief requested by the movants is not available.

## IV.    CONCLUSION

The Florida Claimants' legal rights are not impaired by the Settlement Agreement. Although they are not entitled to participate in the Program, they have every right to pursue litigation that to this date they have refrained from pursuing or have their counsel attempt to negotiate a separate settlement on their behalf. The PSC stands ready to support the Florida claimants by making available to them its trial package and cooperation on an administrative

---

[4] In their Motion to Expedite Hearing, the Florida Claimants suggested that immediate resolution of the instant motion was required based upon yet another flawed interpretation of the Settlement Agreement to the effect that "by enrollment in the Settlement Agreement, claimants forego their right to seek punitive damages should their cases eventually proceed to trial." Motion to Expedite Hearing at 1, ¶2 (Doc.No. 13304, filed Jan. 31, 2008). Although that motion was already denied, prudence dictates that the movants' contention not go uncontested. It therefore bears mentioning that the contention of the movants is belied by the Settlement Agreement which limits the waiver of punitive damages to "Settlement Payments" made "pursuant to the Program." *See* Section 3.6 of the Settlement Agreement, which states: "By enrolling into the Program, each Program Claimant waives the right to receive any punitive damages pursuant to the Program and each Program Claimant understands and agrees that no Settlement Payment paid hereunder is, or shall be deemed to be, attributable to punitive damages." *See also* Section 17.1.82 , which defines Settlement Payments to be "any MI Settlement Payment or IS Settlement Payment." Thus, any claimant who enrolls, but exits the Program after providing a Future Evidence Stipulation (Section 2.7.3.1), proceeds to trial, and obtains a verdict in their favor, is not recovering a "Settlement Payment" pursuant to the Program and, therefore, *is* entitled to recover punitive damages from the jury. There is no merit to movants' argument on this score.

level.  It is simply wrong, however, to accuse the PSC of violating any fiduciary duty owed towards the claimants.  It is similarly wrong to suggest that the Settlement Agreement must be reformed to accommodate the Florida Claimants' erroneous understanding of the offer extended by Merck.

For all the reasons stated above, the motion of the Florida Claimants should be denied.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: February 14, 2008         By: /s/ Leonard A. Davis

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana  70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190

Alexandria, LA  71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL  32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008  (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400

Washington, DC  20036-4914
(202) 783-6400 (telephone)
(307) 733-0028  (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500 (telephone)
(215) 592-4663  (telecopier)

Shelly A. Sanford, Esquire
Sanford Stevenson Riff LLP
2016 Bissonnet Street
Houston, Texas 77005
(713) 240-2460 (telephone)
(713) 237-0278 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA  70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

W:\25000-29999\27115\000\PLD\PSC Response to Amended Motion of Certain Florida Claimants to be Included in the Vioxx MDL Settlement Agreement.wpd\rlv

11