

18654147

Feb 19 2008
1:05PM

UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

(23)

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL DOCKET NO. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| This Document Relates To All Cases | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE KNOWLES |

# REPLY BRIEF OF FLORIDA CLAIMANTS

## 1 INTRODUCTION

Approximately 230 Florida claimants, on whose claims the Florida 4-year statute has not run, who otherwise qualify under medical and exposure grounds, who had elected a Full Participation Agreement with the Plaintiffs' Steering Committee requiring good faith "appropriate participation and consultation" in settlements, and who were excluded from settlement qualification on the grounds that they had not sought tolling agreements (which were unnecessary to preserve their claims due to the Florida statute), seek a modification of the Settlement Agreement to potentially include their claims.

In opposition, PSC and Merck have submitted briefs. The PSC does not dispute that plaintiffs contracted for Full Participation, or that said agreement provided for "appropriate" consultation on settlement; rather, PSC and Merck argues the court is powerless to alter or amend the Agreement because the Settlement Agreement was "private," and the court cannot alter the material terms of a private agreement.

This argument is without merit because (1) the process that led to the present dispute was an unintended consequence of this Court's Order requiring secrecy in negotiations; (2) the agreement at the cornerstone of the dispute, the Full Participation Agreement, was countenanced and approved by the Court; (3) the Settlement is not a "private" settlement but involves Court approval and sanction; and (4) the modification proposed by the Florida claimants is completely

1

consistent with the manifest intent of the parties to the Settlement Agreement and will not materially alter it.

## 2 THE EXCLUSION OF THESE FLORIDA CLAIMS WAS AN UNINTENDED CONSEQUENCE OF THIS COURT'S ORDERS AND OTHER CIRCUMSTANCES, AND THE COURT HAS INHERENT AUTHORITY TO RECTIFY THE SITUATION

When parties act in good faith according to court orders, but those orders have unintended and unfair consequences, courts have authority to rectify the injustices flowing from the orders. Pretrial Order 19 at paragraph (2)(f)(1) defines several levels of participation by claimants. The most complete, binding, and expensive (to claimants, because of fees assessed) election is the Full Participation Agreement. The Full Participation Agreement when elected allows claimants to utilize the services of the PSC and provides an assessment of fees to the PSC for claimants opting for these services. This Court stated that claimants who so elected for Full Participation (including unfiled cases) would be treated as "part of the coordinated proceedings."

> The assessment shall apply to cases of Counsel with Vioxx cases now pending or later filed in, transferred to, or removed to, this court **as well as unfiled and tolled cases** and **treated part of the coordinated proceeding.**...including cases later remanded to a state court or any cases on tolling agreements, filed in any state court, **or clients whose cases are as yet unfiled.** [emphasis supplied]

The Florida claimants herein opted for the Full Participation Option. The document further defining that option, at Section 8, provided that the "Participating Attorneys shall have the following rights...b. **appropriate participation and consultation in settlement negotiations"**[1][2]

---

[1] A fair interpretation of the Full Participation Agreement, in the context of this MDL, was that it would be impractical for participating counsel to negotiate on their own, and that they would and could rely upon the PSC or a negotiating committee to fulfill this responsibility in good faith, and for the attorney fee assessment in the agreement.

[2] We wholeheartedly agree with the PSC that contracts should be interpreted "considering the language employed by the parties in light of the circumstances that existed at the time the agreement was reached." See PSC Brief at 8. The language of the agreement between the PSC and the claimants shows that the parties intended for the PSC to keep the claimants informed of the progress of settlement negotiations. The circumstances surrounding that agreement also indicate that the claimants expected to and would rely upon the PSC to protect their interests at the MDL level. The PSC does not deny that it violated its obligations under this agreement. It

2

Thus this Court approved a relationship that extended to unfiled cases known to the PSC (lists of all of the claimants were sent to the PSC) which on its face extended to those claims the benefits of being "treated part of the coordinated proceeding" and extended to participating attorneys, including the undersigned, the rights to "appropriate participation and consultation in settlement negotiations."

"Appropriate consultation" on negotiations does not of course mean that participating counsel would be present, or even aware of the negotiations. However, "appropriate" consultation would have included information that the unfiled cases whose statutes of limitations had not run, and who were otherwise fully qualified, would not be included (and in fact would be excluded wholesale and without further consideration) in settlement talks. Such consultation would have been particularly "appropriate" in states such as Florida whose four-year statute of limitations placed such claimants under no time-enforced obligations to toll their claims by agreement. In such states appropriate consultation would well include consultation that the contemplated settlement excluded entire classes of cases on a basis that was entirely subject to rectification (by filing) long before the effective date of the agreement. Participating attorneys could have proceeded as they wished at that time, no longer relying on the PSC.[3]

The PSC does not really dispute this but argues that it could not offer such appropriate consultation and participation because it was under this Court's "mandate to negotiate the agreement in secret." See Brief of PSC at 5. Although this "mandate" seems not to be in the public record (the citation in the PSC's brief is to proceedings on Nov. 9, 2008 [sic]), we accept it as represented, and find no fault with it. However, the language of the Full Participation

---

justifies its actions by stating that the NPC not the PSC actually negotiated the contract. See footnote 3 below for our response to that.

3  We do not need to distinguish between the PSC and a negotiating committee at this stage of the proceedings. This motion is not seeking relief against the PSC, but seeking a modification in the agreement. However, four out of the six members of the negotiating committee were on the PSC.  To argue that an attorney serving on both the PSC and the NPC does not know what he knows strains the imagination.

Agreement was at least in spirit, and probably in letter, in conflict with the mandate of secrecy. *If the PSC or negotiation committee was unable to offer "appropriate participation and consultation" to participating attorneys because they were under court direction to maintain secrecy, the PSC or negotiation committee should have informed participating counsel that, as to all or part of their cases, they were no longer able to offer appropriate participation or consultation.* Failing this, they could have notified the Court that there was at least a potential conflict between PTO 19 and the secrecy mandate, and ask for directions or partial relief from either order.

Thus, the present situation, wherein the claimants relied upon the Full Participation Agreement in good faith, and wherein the plaintiffs do not otherwise challenge the adequacy, terms, procedures, or effect of the settlement, is wholly or partially an unintended consequence of the Court's orders defining the Full Participation Agreement; *combined with* the Court's mandate of secrecy in negotiations (which severely limited what the PSC could reveal in negotiations). These combined with other factors, including the PSC's failure to bring this potential conflict before the court; the PSC's failure to inform participating counsel of their inability to further inform them of developments in negotiation that could severely prejudice claimants known to the PSC under the Full Participation Agreement; and the happenstance that Florida's statute of limitations did not require either filing or tolling at the time of the execution of the settlement agreement. *To the extent the Court's orders set in motion this series of consequences, the Court has inherent authority to rectify the unintended consequences of this sequence of events.*[4]

The PSC contends the settlement agreement was "private," but the Court's involvement in, and enforcement of the procedure, as well as the function of the PSC as an arm of the Court, seems to belie that. The District Court, specifically named in the agreement as the Court which retains jurisdiction of all disputes over the agreement (Section 8) and over attorneys' fees (Section

---

4  Section 16.4.2 of the Settlement Agreement, as well, acknowledges the Court's inherent authority to modify agreements of this type.

9). When a Court retains jurisdiction over an agreement, the Court thereby has the authority to modify the agreement and/or judgment if there is a dispute and failure to modify the agreement would result in unintended consequences. As such, the settlement agreement is not a private agreement but a settlement under which the Court retains authority. *Rowe v. Jones*, 483 F.3d 791 (11th Cir. 2007).

The Court's authority to oversee settlements is now new. As the Fourth Circuit Court of Appeals explained, in the context of discussing a mass tort settlement:

> The court's authority to supervise members of the bar, its inherent powers to regulate attorney-client relations and compliance with ethical standards by attorneys, the equitable powers of the court under 11 U.S.C. § 105(a), and the inherent equitable powers of the court, render the contingent fee contract of attorneys representing Dalkon Shield [claimants] subject to the supervision of this court to ensure that excessive or unreasonable fees are not charged or recovered by counsel." [*In re A.H. Robins Co., Inc.*, 86 F.3d 364, 370 (4th Cir. 1996), cert. denied, 519 U.S. 993, 136 L. Ed. 2d 377, 117 S. Ct. 483 (1996)]

In addition to supervising attorneys fees, Courts who participate in the settlement process in mass torts and class actions also have the power to allow for late claimants or to otherwise cure unintended consequences of Orders under their equitable powers.

In *In re Crazy Eddie Securities Litigation*, 906 F. Supp 840, 842 ( E.D.N.Y. 1995) the judgment of the District Court that refused to accept the late filings by appellant claimants under a class action was reversed. Until the settlement process was complete, the Court had the equitable power to accept late filings by claimants. "The determination of whether to allow the participation of late claimants in a class action settlement is essentially an equitable decision within the discretion of the court."

The distinction drawn between class actions and mass torts is without a difference. The Court in *In re Medtronic*, 434 F.Supp.2d 729, 730 (D. Minn. 2006), found the duty to the members of a mass tort and a class action to be the same. "A transferee judge in such a case bears a particularly heavy burden to protect the transferee plaintiffs".

> "These matters are before the Court as MDL transferee judge, for consolidated discovery and pre-trial purposes. It is not a class action. The Court considers any

possible distinction which might be drawn between the Court's duty to protect class action plaintiffs and those in this MDL case to be trivial. At, present, the Court is supervising the case-proceedings for more than 139 individual plaintiffs. Under these conditions, the Court finds its duties to protect the transferee plaintiffs to be fully co-extensive with those owed in a class action."

Query, would the PSC state that it could have negotiated a settlement that excluded all of the claims in Wisconsin, just because no member of the PSC was from Wisconsin, and because the negotiations were in secret and the result "private?" We think not, because the PSC owed a duty of good faith dealing to all claimants, and especially those with whom it had contracted to provide services including appropriate consulting in negotiation. Were the proposed settlement to attempt to exclude all Wisconsin residents for example, the PSC would under the Full Participation Agreement owe a duty to inform Wisconsin counsel (or if the Court mandated secrecy, to inform Wisconsin counsel the Full Participation Agreement could not be in force as to appropriate consultation in negotiation.[5] )

Finally, Regardless of its technical authority, the Court can recommend resolution of disputes that are closely linked to its supervisory authority.

## 3 THE PROPOSED MODIFICATION MEETS THE GOALS OF THE PARTIES AS EXPRESSED BY THEIR AGREEMENT

Merck had insisted that "a condition precedent to any global settlement of Vioxx claims was agreement and understanding as to a well defined universe of eligible claims." *Merck brief, page 5*. This was "for a very specific purpose - to prevent plaintiffs' counsel from filing volumes of post-settlement (and potentially meritless) claims merely to take advantage of the settlement itself". *Id*. We do not disagree with this laudable goal of preventing late "piling on" filings after the agreement was reached.

---

5  We do not contend the PSC owed a duty to inform counsel of the substance of negotiations, such as what diseases would be compensated or what the amount of compensation would be. Such issues would be, at least arguably, beyond those "appropriate" considering the circumstances. But when an entire class of claimant is being excluded, and the exclusion is preventable, and the exclusion does not depend on the merits of the case, notification of the intended exclusion would be "appropriate." Or at a minimum it would be "appropriate" to notify counsel that for reasons that could not be disclosed, further reliance on the Full Participation Agreement would not be possible or justified.

6

The disputed claims herein are neither "meritless" nor post-settlement. We do not challenge the medical or exposure criteria or the procedures to be employed. The disputed claims were known to the PSC, and were available to Merck, if the PSC had cared to mention them. If Merck had wanted to include them, it would have been easy to do. If Merck had wanted to exclude them on whatever basis, as long as counsel participating in the Full Participation Agreement were given a heads-up that large fractions of their participating claimants were being excluded, they could have acted accordingly. If the Court's mandate prevented that communication, then at least a communication to the effect that the Full Participation Agreement could not be further relied upon, or that it could not be relied upon for unfiled cases, would have prevented the misunderstanding.

*The critical point is that the Florida claimants' names and social security numbers were on file with the PSC, long before the settlement cut off date. Including them in the Settlement Agreement would not have resulted in "filing volumes of post-settlement claims."* Including the Florida claimants would also have been consistent with "a well defined universe of claims." Merck would have had no reason to have opposed the inclusion of the Florida claimants. It appears that the Florida claimants simply fell through the cracks or were forgotten. While perhaps understandable, this omission was at worst a violation of the PSC's obligations, and at best an accident and unintended consequence of this Court's orders and other events.

Because the PSC was an empowered arm of this court and because the PSC's obligations were approved by this court, the court has a legitimate interest in correcting the omission. As will be explained hereinafter, this omission can be easily corrected without material harm to either of the parties or fundamental change to the spirit or letter of the terms of the Settlement Agreement.

## 4 GRANTING THE MODIFICATION WILL NOT MATERIALLY ALTER THE TERMS OF THE SETTLEMENT AGREEMENT

Importantly, the Florida claimants *do not ask the court to alter the material terms of the Settlement Agreement.* As discussed above, Merck has clearly stated in its brief that its only

7

interest in limiting eligibility was to create a "well defined universe of eligible claims ... to prevent plaintiffs' counsel from filing volumes of post-settlement (and potentially meritless) claims merely to take advantage of the settlement itself." *Merck brief, page 5.*

Allowing claimants into the Settlement Agreement would not have caused a single additional filing of a post settlement claim. Claimants are already in the "well defined universe" because their claims were already on file with the PSC as of November 9, 2007. The practical reality is that there is no difference between a claim on file with the PSC and a tolled claim, as far as Merck's purpose in the Settlement Agreement is concerned. They had not been formally filed for the same reason that the thousands of tolled claims had not been filed. There was no reason to burden the court with claims that were not necessary to adjudicate at that moment. Nor was there reason to enter into a tolling agreement, as Florida citizens enjoyed a longer statute of limitations than those of some other states. There is simply no rational basis for discriminating between *unfiled, tolled* claims and the *unfiled, unexpired, known Florida claims* on file with the PSC. Both were well defined and identified by November 9, 2007. Nothing about including the Florida claimants will adversely effect Merck's interests in the negotiations.

Furthermore, the financial impact of 240 claims in a universe near 50,000 claims is not measurable. Although the number of qualifying claims in both sets will not be known until further work is done, 240/50,000 is .004, or 4 tenths of one percent. *Zients v. LaMorte*, 459 F.2d 628 (2nd Cir. 1972) ("All the equities are on the side of the [late] claimants, the fund has not been distributed and the administration of the fund would be insignificantly hampered by allowing these few late claims")

## 5 EXCLUSION PREJUDICES THE CLAIMANTS

Although the PSC claims there is no prejudice to claimants, the realities are different. There is no secret the parties desire the settlement to be effectuated. Consequently, the Court has understandably and correctly enacted a series of orders that increase the workload and the difficulty of making nonsettlement claims in these proceedings. For instance, according to PTO 29, all cases filed after 11/09/2007, must, within 45 days, serve all pharmacy records, all medical

records, a plaintiff profile form, authorizations and a case-specific expert report. Failure to meet these requirements will result in sanctions and dismissal with prejudice, according to the Order. In addition, PTO 29 implies that contingency fees normally negotiated between attorneys and their clients should be reduced due to the extensive work already conducted in the vioxx litigation.

In contrast the "eligible cases" which were filed prior to 11/09/2007 are subject to a stay of the proceedings, whereas those cases not filed prior to 11/09/2007 are not subject to the stay and shall proceed in the expedited and onerous fashion outlined in PTO 29.

The increased difficulties are attached to these Florida claimants, not because they have rejected the settlement's terms, conditions, values, procedures, or effects. On the contrary, they believe the settlement is just and proper, and are unfairly prejudiced by exclusion without warning, notice, or opportunity.

## 6 EXCLUSION WILL PREJUDICE THE PARTIES

Although Merck does not come out and say it, Merck is prejudiced by exclusion. If excluded, these Florida claims will form a block of claims that will in the future be remanded to the Middle District of Florida, Jacksonville Division (some to Orlando Division.) This block of claims will take judicial time and effort to resolve. Presumably the honorable judges of the Middle District of Florida will inquire about the possibility of settlement of these claims. At that time Merck cannot reply that these plaintiffs should be punished for rejecting the terms of a settlement offer that was acceptable to the majority of claimants across the country. On the contrary, Merck will be forced to admit that it created in part the necessity for dealing with a nontrivial block of cases in the Middle District of Florida, comprised of plaintiffs who met all the medical and exposure requirements, and who were perfectly happy to take the settlement offered everyone else, long before the Middle District committed such further time and effort.

What is the effect on the PSC? They are presumably still obligated to perform under the Full Participation Agreement (and eligible to receive fees as a result). Such performance will be more difficult outside of the well structured environment of this Court's MDL proceedings. The

9

only real harm to the PSC we can possibly discern, is their claim of "dilution," that is, that these 230-240 claims will dilute the recovery of other claims, presumably some of the PSC's own claims. As we said above, however, it is hard to argue that .004 or 4/10ths of a percent is much of a dilution, especially since no one knows how many qualifying claimants there will be at present. But more importantly, the PSC has equal responsibility to the disputed claims as it has to the others, so the dilution issue is immaterial.

## 7 CONCLUSION

In good faith the Florida claimants relied on the Full Participation Agreement. Had their statutes of limitation been near, they would file or toll. Absent that, they understandably felt the legal and good faith obligations of the PSC as an arm of the Court would not desert their interests without at least some type of notification. Without warning or opportunity to make other arrangements, their interests were deserted. Because the events that led up to this were partly the consequences of Court orders and mandates, the Court has inherent authority to corect the adverse consequences.

Merck wanted to include as many claims as it could while insisting on "a well defined universe". The NPC's intent was to obtain as large a settlement as possible for the claimants. However, the PSC was obligated to include, at minimum, all of those claimants with which it had court-sanctioned agreements. The PSC was constructively aware of the status of negotiations. It should have worked with the NPC (on which it held a majority of membership) to negotiate an inclusion of all claimants to which it was obligated. Failing to do so, the PSC violated the spirit and purpose of its court approved contract with the claimants. Correcting the oversight will not appreciably alter the terms of the Settlement Agreement because the purposes of both Merck and the PSC will not be thereby affected.

Dated this 19th day of February, 2008.

Respectfully submitted,

/s/*William H. Ogle*
William H. Ogle
Florida Bar No.: 367400
444 Seabreeze Blvd., Ste. 750
Daytona Beach, FL 32118
(386) 253-2500 Telephone
(386) 248-8578 Facsimile

/s/*Norwood S. Wilner*
Norwood S. "Woody" Wilner
Florida Bar No.: 222194
Stephanie J. Hartley
Florida Bar No.: 0997846
3127 Atlantic Blvd. St. 3
Jacksonville, FL 32207
(904) 446-9817 Telephone
(904) 446-9825 Facsimile

/s/*Richard D. Hailey*
Richard D. Hailey
Indiana Bar No.: 7375-49
3891 Eagle Creek Parkway, St. C
Indianapolis, IN 46254
(317) 299-0500 Telephone
(317) 299-0699 Facsimile

## 8 CERTIFICATE OF SERVICE

*I hereby certify* that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann and Russ Herman, by U.S. Mail and e-mail, and by e-mail upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 19th day of February, 2008.

/s/*William H. Ogle*
William H. Ogle
Florida Bar No.:  367400
Mayfield & Ogle, P.A.
444 Seabreeze Blvd., St. 750
Daytona Beach, FL 32118
(386) 253-2500 Telephone
(386) 248-8578 Facsimile