UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX PRODUCTS LIABILITY LITIGATION | : : : |
| _____ | : MDL 1657 |
| The Petition of Healthcare Recoveries, Inc., on Insurers for Pre-Action Deposition(s) Pursuant to Federal Rule of Civil Procedure 27(a) | : SECTION L : HONORABLE ELDON FALLON : MAGISTRATE KNOWLES |
| _____ | : |

**PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS THE
VERIFIED PETITION OF HEALTHCARE RECOVERIES, INC.**

**I.     INTRODUCTION**

The Plaintiff's Steering Committee ("PSC"), hereby moves pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6) to dismiss the Verified Petition of Healthcare Recoveries, Inc. ("HRI"). HRI's Petition anticipates litigation as to which no court would have competent jurisdiction to entertain. Moreover, HRI's Petition does not seek to perpetuate testimony, but seeks instead to take broad-ranging discovery of *every* Plaintiffs' counsel in this MDL. That is improper. For these and other reasons set forth below, HRI's Petition should be dismissed.

**II.    FACTUAL BACKGROUND**

The Judicial Panel on Multi-District Litigation issued its initial Transfer Order in this case on February 16, 2005. *See In re Vioxx Products Liability Litigation*, 360 F.Supp.2d 1352 (J.P.M.L. 2005). Thereafter, this Court embarked upon the many tasks necessary to guide and administer this colossal case.  To assist the Court navigate that pathway, it appointed Liaison Counsel, the Plaintiff's Steering Committee and the Plaintiff's Executive Committee to perform all of the "necessary administrative or logistic functions of the PSC and carry out any other duty as the Court

1

may order." *In re Vioxx Products Liability Litigation*, MDL No. 1657, Pretrial Order No. 6 at 2 (E.D.La. April 8, 2005). Amongst the several enumerated tasks assigned to the PSC was the obligation to "explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation." *Id.* at 3.

As the litigation matured, on December 7, 2006, this Court (along with Judges Higbee, Chaney and Wilson) initiated discussions intended to divert counsel's attention away from litigation by focusing them upon settlement efforts. *See In re Vioxx Products Liability Litigation*, Transcript of Proceedings at 5 (E.D.La. Nov. 9, 2008). The Court appointed select counsel from the MDL, New Jersey, California and Texas litigations who comprised the NPC and "charged [them] with the responsibility of negotiating in confidence, in secrecy, and in good faith. [Merck's counsel] had the same charge and responsibility." *Id.* Thanks to the Courts' efforts, on November 9, 2007, the NPC and Merck reached an agreement on a Program to encompass the great majority of the cases in the MDL and the other litigation judicial centers.

The Settlement Agreement contains a provision addressing statutory liens. *See* Settlement Agreement §12.1. Consistent with the Settlement Agreement, the Lien Resolution Administrator is responsible for establishing procedures and protocols to address the statutory liens asserted by Governmental Authority Third Party Providers/Payors. *Id.* Other liens, whether past, present or future, whether known or unknown or asserted or unasserted with respect to any Settlement Payment are the sole responsibility of the relevant Enrolled Program Claimant and their respective counsel.[1]

---

[1] In its Petition, HRI suggests that certain provisions in the Master Settlement Agreement create obligations on the part of enrolling claimants to Petitioner and its clients. *See* HRI Petition, at ¶¶22-26. To the contrary, the Settlement Program is a private agreement between eh claimant and Merck & Co., Inc. It does not confer any rights on the insurers, nor did it intend to
(continued...)

2

*Id.*, §12.1.3.

By February 29, 2008, a substantial numbers of registered Claimants enrolled to meet the settlement enrollment threshold of 85% participation. *See* Settlement Agreement §11.1. Subject to confirmation by Merck, the Program described by the Settlement Agreement is practically assured. Nevertheless, there still remains much to do before any Claimant will be compensated. Most Claimants still need to submit complete Claims Packages including PMEs to the Claims Administrator, a vital step in the process leading up to the calculation of their specific awards by the Claims Administrator. Scoring of claims leading to specific awards has not yet occurred and such awards are months away in the making. Consequently, no funds representing any award have been distributed by the Claims Administrator.

Notwithstanding that the threshold enrollment requirement was only recently obtained on February 29, 2008, ten days prior to that date, on February 19, 2008, Petitioners filed their verified Petition. Therein, HRI, on behalf of more than 80 public and private health insurers that it purports to represent,[2] stated that "time is of the essence" because petitioners fear that should any claimant

---

[1](...continued)
make insurers third-party beneficiaries of the settlement agreement.

[2]HRI vaguely asserts that it has been retained by "*most* of these health insurers to act on their behalf" with respect to the instant Petition. Petition at 1 n.1 (emphasis added). The PSC, upon information and belief, understands that HRI or its counsel and the numerous Health Insurers with whom HRI is purportedly coordinating, have conflicting representation. Such conflicts may not only disqualify HRI from engaging in the representation it has undertaken by way of the instant Petition, but place doubt upon HRI's standing to demand discovery. In essence, HRI is purporting to be acting as a class representative plaintiff and seeking to obtain class-wide discovery without first obtaining approval by the Court. Fed.R.Civ.P. 23(a)(4), however, demands that the proposed representative first establish its adequacy by disproving any potential conflicts. Also, Fed.R.Civ.P. 23(g) requires that the Court appoint class counsel at an early practicable time to ensure that due process considerations of adequate representation are
(continued...)

obtain funds from the settlement, the petitioners are at "risk of either waiving, or impairing their rights." *See* Petition ¶¶22-23. HRI therefore moved, pursuant to Fed.R.Civ.P. 27(a), "to obtain an order compelling all Plaintiffs' counsel in MDL 1657 and/or a corporate representative of Defendant Merck, Inc . . . to properly appear at deposition or answer written interrogatories," relating to the names, addresses, social security numbers, docket numbers of specific cases filed by Vioxx Plaintiffs and their insurers. *Id.*, ¶2. HRI contends that this information is vital to its ability to:

> properly and timely evaluate and prosecute actions in this Court and elsewhere to protect, perfect and vindicate their statutory, equitable, common law and/or contractual rights to be reimbursed for the enormous sums of money they expended in order to pay for the medical care which was required because of the injuries suffered by the individual Vioxx plaintiffs allegedly due to Merck's misconduct.

*Id.*, ¶ 6. Absent this information, HRI contends that it is unable to engage in such litigation. *Id.*

Because Rule 27 is not designed to permit Petitioners to engage in a fishing expedition of the breadth described in HRI's Petition; because the anticipated litigation described by HRI would be futile as no court would have competent jurisdiction to entertain such litigation; and because HRI failed to meet the requirements of Rule 27 by failing to identify any testimony or documents that would be lost absent its immediate perpetuation, the Petition should be dismissed.

### III.   ARGUMENT

#### A.   PETITIONERS HAVE FAILED TO MEET THE REQUIREMENTS OF RULE 27

Rule 27 is a highly restricted license to perpetuate testimony in limited circumstances. *See In Re: Skylight Shipping Corp.*, 1999 WL 1293472, *2 (E.D.La. 1999) (Fallon, J.). Specifically,

---

²(...continued)
fulfilled. HRI has not even attempted to meet these obligations.

Rule 27(a)(1) states:

> A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides. The petition must ask for an order authorizing the petitioner to depose the named persons in order to perpetuate their testimony. The petition must be titled in the petitioner's name and must show:
>
> **(A)** that the petitioner expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought;
>
> **(B)** the subject matter of the expected action and the petitioner's interest;
>
> **(C)** the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it;
>
> **(D)** the names or a description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known; and
>
> **(E)** the name, address, and expected substance of the testimony of each deponent.

Fed.R.Civ.P. 27(a)(1). Rule 27 "was intended to apply to situations in which testimony might be lost to a prospective litigant unless taken immediately, without having to wait for a lawsuit or other legal proceeding." *In Re: Hopson Marine Transportation, Inc.,* 168 F.R.D. 560, 564 (E.D.La. 1996). Determining whether evidence may be lost before litigation can or will occur is the focus of the trial court's examination of a Rule 27 Petition.

Several guiding principles inform the Court's examination of a Rule 27 Petition. First, "[t]he Rule 27(a) procedure is perpetuation of evidence, and the scope of Rule 27(a) proceedings is not as broad as the scope of discovery under Rule 26." *Skylight Shipping*, 1999 WL 1293472 at *2. As evident by the Rule itself, a party seeking to perpetuate evidence must establish that the evidence would "otherwise be lost before an action cognizable in a United States Court could be brought or caused to be brought". *Id.* Second, irrespective of the fact that Rule 27 Petitions are independent filings, free of jurisdictional constraints, discovery in the anticipation of litigation that will be futile

is prohibited. See *Dresser Industries, Inc. v. United States*, 596 F.2d 1231, 1238 (5th Cir. 1979);[3] *In the matter of Nabors Loffland Drilling, Co.*, 142 F.R.D. 295, 296 (W.D. La. 1992). In other words, if the anticipated litigation proves to be futile because such litigation is not "cognizable," any discovery requested by a Petition for such purposes will be prohibited. Third, "the District Court may deny the Petition if the Petition fails to show that the Petitioner expects to be a party to an action which he is unable to bring or cause to be brought and that without perpetuation of the testimony a failure or delay of justice will occur." *In Re: Yancey LLC*, 2000 WL 1515179, *1 (E.D. La. 2000)(Fallon, J.), *quoting, In re Eisenberg*, 654 F.2d 1107, 1111 (5th Cir. 1981).

Courts are especially leery of permitting Rule 27 Petitions that, on their face, are non-compliant with the Rule. Because the Rule is designed to perpetuate testimony, not to obtain discovery, abuses frequently happen. As a consequence, courts recognize that:

> to allow Rule 27 to be used for the purposes of discovery before an action is commenced to enable a person to fish for some ground for bringing suit would be "an abuse of the rule". *Wright, Miller & Marcus, Federal Practice and Procedure*, § 2071 at 651-652. Thus, Rule 27 does not allow for presuit discovery in order to determine compliance with Rule 11. *In Re: Petition of Ford*, 170 F.R.D. 504 (M.D. Ala. 1997). Simply stated, Rule 27 is not a vehicle for compliance with Rule 11.

*In Re: Landry-Bell*, 232 F.R.D. 266, 267 (W.D. La. 2005). The court in *Landry-Bell*, was explicit:

---

[3]In *Dresser Industries*, the Fifth Circuit determined that futility of future litigation due to a lack of jurisdiction was an appropriate reason for denying a Rule 27(a) petition, as follows:

> There need not be an independent basis of federal jurisdiction in a proceeding to perpetuate, but it must be shown that in the contemplated action, for which the testimony is being perpetuated, federal jurisdiction would exist and thus is a matter that may be cognizable in the federal courts. *Arizona v. California*, 292 U.S. 341, 347, 54 S.Ct. 735, 78 L.Ed. 1298 (1934).

"Rule 27 simply authorizes the *perpetuation* of evidence, not the discovery or uncovering of it." *Id.* (Emphasis in original).

In *Yancy LLC,* this Court ruled upon a Petition similar to the instant matter. In that case, Petitioner Yancy moved pursuant to Rule 27(a) to take the depositions in anticipation of securities fraud litigation of the principals of a company it had invested in and Yancy's stockbroker. Yancy sought to determine who the purchased the stock it had sold, the subsequent disposition of the stock and whether or not the party who purchased the stock possessed insider information. *Id.* at *1. Yancy, also sought to discover the names of each of the stockholders of the company whose stock it sold. Without hesitation, this Court rejected Yancy's request for discovery and dismissed the Petition. The Court ruled that, "Rule 27(a) was not designed as an aide to help counsel frame a complaint." *Id.* As discussed further below, this reasoning is dispositive with respect to the facts of the instant Petition.

1. **The Petition Should Be Dismissed As HRI Can Not Establish Cognizable Claims Under ERISA's Equitable Jurisdiction**

HRI has failed to meet its obligation to show that in the litigation it contemplates against the thousands of Vioxx Claimants that it suspects are beneficiaries of its clients, federal jurisdiction would exist and thus is a matter that may be cognizable in the federal courts. *See Dresser Industries,* 596 F.2d at 1238. HRI's proposed litigation implicates the enforcement provision of the Employee Retirement Income Security Act ("ERISA"), §502(a)(3), 29 U.S.C. §1132(a)(3), which only permits suits by plan fiduciaries seeking "appropriate equitable relief." As the Plans identified by HRI do not meet the requirements of §502(a)(3) and the gloss thereon, HRI is incapable of maintaining claims in equity to enforce them. Absent this prerequisite, HRI's Petition is deficient and subject to dismissal.

In 1974, Congress enacted ERISA. The statute comprehensively governs the entire field of welfare and pension plans. Over time, litigation has completed some of the contours left amongst the many interstices provided by the statute. Amongst the significant litigation pertinent to the subrogation matters brought to the fore by HRI's Petition is the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002).

In *Knudson*, the Supreme Court was required to resolve whether §502(a)(3) authorized the insurance company to enforce a reimbursement provision in an ERISA plan that reserved "a first lien upon any recovery, whether by settlement, judgment or otherwise," obtained from a third party. *Id.* at 207. The Knudsons had recovered money in settlement of a tort lawsuit. The bulk of the funds in the settlement were allocated either to a special needs trust or the Knudson's attorneys. Only $13,000 was allocated to Great-West, which sought to be reimbursed for over $400,000 in medical expenses covered pursuant to its insurance agreement. The Supreme Court recognized that "the term 'equitable relief' in §502(a)(3) must refer to those categories of relief that were *typically* available in equity." *Knudson,* 534 U.S. at 210, *quoting Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)(emphasis in original). It concluded that Great-West was seeking to impose personal liability upon the plaintiffs which was not typically available in equity. *Id.* at 221.

Underlying the Supreme Court's analysis was that the Knudsons did not hold their funds directly and that Great-West's claims had not identified a particular fund belonging to it. *Id.* at 214. The Court explained that "whether [restitution] is legal or equitable in a particular case (and hence whether it is authorized by §502(a)(3)) remains dependent on the nature of the relief sought." *Id.* at 215. The Supreme Court determined that the inability to trace particular funds to Great-West was sufficient to find that the insurer was not making a cognizable claim in equity.

Following *Knudson,* a similar claim challenging ERISA's "appropriate equitable relief" provision was presented to the Fifth Circuit in *Bombardier Aersospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough,* 354 F.3d 348 (5th Cir. 2003). Unlike Knudson, in *Bombardier*, the tort-injury plaintiff's lawyers placed their client's settlement funds in a trust account under the law firm's name. The Fifth Circuit found that

> because [the plan] seeks to recover specifically identifiable funds that are in the constructive possession and the legal control of the participant but belong in good conscience to the Plan, its actions for a constructive trust in no way seeks to impose personal liability on either defendant. Instead the Plan continues, it seeks relief that indeed is equitable in nature and thus authorized by §502(a)(3).

*Id.* at 355. The Fifth Circuit focused its analysis on whether the funds sought to be recovered are 1) specifically identifiable; 2) that belong in good conscience to the Plan; and 3) that are within the possession and control of the beneficiary. *Id.* at 356.

The reasoning of the Fifth Circuit was adhered to by the Seventh and Tenth Circuit Court of Appeals. *See Administrative Comm. of Wal-Mart Stores, Inc. v. Varco,* 338 F.3d 680 (7th Cir. 2003); *Administrative Comm. of Wal-Mart Assoc. Health & Welfare Plan v. Willard,* 393 F.3d 1119 (10th Cir. 2004). The Sixth and Ninth Circuit had reached opposite conclusions. *See Qualchoice, Inc. v. Rowland,* 367 F.3d 638 (6th Cir. 2004); *Westaff (USA) Inc. v. Arce,* 298 F.3d 1164 (9th Cir. 2002). When the split in the circuits grew upon a ruling by the Fourth Circuit, that case was granted certiorari review by the Supreme Court in *Sereboff v. Mid Atlantic Services, Inc.,* 547 U.S. 356, 126 S.Ct. 1869 (2006).

In that case, the Sereboffs had been involved in an automobile accident. Mid Atlantic administered the Sereboff's health care plan which had paid for their medical expenses. Mid Atlantic sued the Sereboffs for breach of contract after they failed to address its lien notice which

9

had detailed the medical expenses as they accrued and were paid by the plan. *Id.* at 1872-73.[4] The Supreme Court focused on the "Acts of Third Parties" provision of the Sereboffs' plan, which stated that the provision, "applies when [a beneficiary is] sick or injured as a result of the act or omission of another person or party," and requires a beneficiary who "receives benefits" under the plan for such injuries to "reimburse [Mid Atlantic]" for those benefits from "[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)." *Id.* at 1872.

The Supreme Court found that even though the lawsuit spoke in terms of breach of contract, "ERISA provides for equitable remedies *to enforce plan terms.*" *Id.* at 1874 (emphasis in original). Because the lawsuit "sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboff's general assets," the claim was recognized in equity. *Id.*

Under *Sereboff*'s reasoning, at a minimum, two conditions must be met by any Plan to state a claim for appropriate equitable relief. In any case, the specific Plan terms must be carefully scrutinized to insure that the terms specifically identify 1) a particular fund, distinct from the beneficiary's general assets; and 2) a particular share of that fund to which the insurer is entitled. *Id.* at 1875. *See also Popowski v. Parrott*, 461 F.3d 1367, 1373-74 & n. 6 (11th Cir. 2006) ("Accordingly, we conclude that, because the Mohawk plan fails to specify that recovery come from any identifiable fund or to limit that recovery to any portion thereof, it fails to meet the requirements outlined in *Sereboff* for the assertion of an equitable lien for the purposes of 29 U.S.C.

---

[4]It is generally the insurer's duty when seeking to be subrogated that it is able to articulate the amount it actually paid on behalf of any client for services related to his or her claim (*i.e.*, actual payments for services that were not subject to any rebate, bulk payment, or other reimbursement or discount scheme). *See generally Associated Hospital Service of Philadelphia v. Pustilnik*, 439 A.2d 1149 (Pa. 1981).

§1132(a)(3)."); *Fleetwood Enterprises, Inc. v. Taylor*, 2007 WL 2826180, *4 (W.D.Ky. 2007)("[T]he Fleetwood Plan specifies the fund - any recovery a covered Member recieves - out of which reimbursement is due to the plan. However, the Fleetwood Plan fails to specify the portion due the plan. As the Fleetwood Plan failed to identify the portion due the plan, the plan fails to meet the requirements for the assertion of an equitable lien."); *Curran v. Camden Nat'l Corp.*, 477 F.Supp.2d 247, 258 (D.Maine 2007)("Here, even though Plaintiffs seek to recover a particular sum of money-- $525,000, they seek the money from CNC's general, commingled assets, not from "particular funds or property in the defendant's possession." Consistent with *Sereboff*, it follows that the Plaintiffs are not asserting an equitable lien or claiming the equitable remedy of restitution.").

As evident by the submissions made by HRI, the Plans it presents do not assert equitable liens consistent with the requirements of §502(a)(3) and *Sereboff*. For example, Exhibit F to HRI's Petition contains the redacted plan of one of its purported clients. The "Subrogation and Reimbursement" provision states:

> The Plan will have the first priority right of reimbursement, regardless of whether or no (1) you or your Dependent have been fully compensated, or "made-whole" for his/her loss; (2) liability for payment is admitted by you or your Dependent or any other party; or (3) the recovery by you or your Dependent is itemized or called anything other than a recovery for medical expenses.

This provision fails both prongs of *Sereboff*. First, stating that the Plan "will have the first priority right of reimbursement" fails to identify any fund from which recovery will be sought, specific or otherwise. Second, also missing is any reference to the portion of any settlement which is due for benefits paid by that insurer. Lacking such specificity, there could be no equitable claim asserted under ERISA for such a deficient plan.

Under these circumstance, no court would have competent jurisdiction to render equitable

11

relief. That being the case, HRI's Petition fails to meet the requirement of Rule 27(a)(1)(A), as the anticipated claim would not be cognizable in a federal court.

### 2. The Petition Should Be Dismissed Since HRI Has Not Alleged That The Testimony It Seeks Will Be Lost Or Later Unavailable

The essence of Rule 27(a)(1)(C) is the perpetuation of testimony. Under the Rule HRI was obliged to state the "reasons for desiring to perpetuate it". Fed.R.Civ.P. 27(a)(1)(C). Rather than address those matters it desires to perpetuate, HRI proposed a "wish-list" of identifying data it seeks to discover. *See* Petition ¶2 (seeking depositions or interrogatories responsive to the following inquiries: 1) names of plaintiffs that took Vioxx; 2) addresses of these individuals; 3) their social security numbers (SSN); 4) docket numbers of their filed cases; and the identities of their health insurers). As if an alien concept, HRI completely ignores its obligation under Rule 27 to identify the danger it faces of losing the evidence it seeks if it is not immediately preserved. *See Skylight Shipping*, 1999 WL 1293472 at *3.

The only reference in the entire Petition that addresses HRI's immediate need for the identifying information is provided in Paragraph 6 thereof, which states:

> It shall be the purpose of the body of this Petition to demonstrate the urgent need of Petitioners to promptly obtain this testimony. <u>In absence of this Court ordering this deposition testimony, Petitioners are effectively unable to properly and timely evaluate and prosecute actions in this Court and elsewhere to protect, perfect and vindicate their statutory, equitable, common law and/or contractual rights</u> to be reimbursed for the enormous sums of money they expended in order to pay for the medical care which was required because of the injuries suffered by the individual Vioxx plaintiffs allegedly due to Merck's misconduct.

Petition ¶6 (emphasis added). This verified provision concedes that HRI wants the client identifying data solely to "properly and timely evaluate and prosecute actions." Evidence obtained to "help

counsel frame a complaint" is an improper basis for a Rule 27 Petition. *Yancey LLC,* 2000 WL 1515179 at 2. Significantly, nowhere in its Petition does HRI allege that the testimony it seeks is in danger of being lost. HRI's inability to articulate such a danger is fatal to its request. *Id.; Skylight Shipping,* 1999 WL 1293472 at *4 ("More significantly, the reasons asserted by Skylight for seeking to perpetuate the evidence are not sufficient. There has been no showing that any of the eleven proposed deponents will not be available to testify later or that their testimonial evidence will be lost . . . There is not showing that the individual deponents are seriously ill, unusually nomadic or about to leave the country permanently.").

In contrast to the void presented by HRI's Petition, the Court may take judicial notice that the names of the Plaintiffs of all of the cases on the MDL's docket are publicly available, archived and well preserved by the Clerk of the Court. HRI's unwillingness to cull the docket to identify its clients reflects Petitioner's indolence rather than any heightened need brought about by its inability to decipher these public records.

The only reason articulated by HRI for its immediate need for the sweeping testimony it seeks is that it will be unable to "evaluate and prosecute actions in this Court." That contention is deficient. HRI's Petition should therefore be dismissed.

### 3. HRI's Petition Should Be Dismissed for Failure to Conform with Rule 27(a)(1)(D)

Rule 27 (a)(1)(D) requires that the petitioner specifically identify the expected adverse parties by their names and addresses to insure that they are properly served with a copy of the petition and a notice of hearing. *See* Fed.R.Civ.P. 27 (a)(1)(D) & 27(a)(2). HRI identifies the expected adverse parties to be Merck, Plaintiffs or claimants who received health insurance benefits, and their counsel. Petition ¶4. HRI, however, only provides the address of Merck. Petition ¶2 n.2.

Since none of the Plaintiffs or their counsel have been properly identified or properly served, HRI's motion fails to conform to the mandate of the Rule.

These deficits are not mere technicalities. Rather, they constitute substantive deficiencies that require that the Petition be dismissed. *See In re Solorio,* 192 F.R.D. 709 (D. Utah)(notice is a "condition precedent" to discovery under Rule 27).

### B. HRI'S ATTEMPT TO OBTAIN MEDICAL INFORMATION REGARDING EVERY MDL PLAINTIFF VIOLATES THE SUBSTANTIVE DUE PROCESS PRIVACY RIGHTS OF THE PLAINTIFFS

Substantively, the Due Process clause of the United States Constitution "embodies a promise that a certain private sphere of individual liberty will be kept largely beyond the reach of the Government." *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 772 (1986). This constitutional right to privacy extends to "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 599 (1977); *Fudjo v. Coon,* 633 F.2d 1172, 1175 (5th Cir. 1981).

Medical information and records of a patient are clearly within this constitutionally-protected sphere. *Whalen,* 429 U.S. at 598; *Sherman v. United States,* 244 F. 3d 357, 365 (5th Cir. 2001) ("an individual's informational privacy interest in his or her SSN is substantial."); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3d Cir. 1980) ("although the full measure of the constitutional protection of the right to privacy has not yet been deliniated,...[t]here can be no question that an employee's medical records...are well within the ambit of materials entitled to privacy protection").

HRI has demanded that the Plaintiffs' Counsel or Merck disclose to it the names, Social Security Numbers and other personal identity information of all Plaintiffs who have filed claims in

the MDL. This disclosure, if permitted, would necessarily reveal sensitive, personal medical information that is subject to Constitutional protection.

The Settlement Agreement does not require that Program Claimants waive their presumptive expectation that this information will continue to receive protection against compelled disclosures. Indeed, the Settlement Agreement requires that the parties maintain the information as confidential and does not authorize its disclosure except in limited, unrelated circumstances. *See* Settlement Agreement § 15.1. Thus, the personal medical information (including their SSNs) of MDL plaintiffs requested by the HRI is within the realm of privacy protected by the Constitution and may not be disclosed to HRI unless there is a compelling interest in such disclosure. *See Sherman, supra. See also,* The Health Insurance Portability and Accountability Act (HIPAA), Pub.L. 104-91, 110 Stat. 1936 (Aug. 21, 1996) and 45 CFR §164.508.

While HRI or the other insurers might arguably have an interest in claims information relating to specific MDL Plaintiffs in order to support a potential claim for reimbursement of the cost of medical treatment where it has furnished such treatment to such specific individuals, it clearly has no such interest with respect to plaintiffs who did not receive such benefits. The Petition suggests that approximately (90%) percent of the MDL plaintiffs fall into this latter category. Petition ¶¶43 & n. 5. There is simply no need - let alone a "compelling" one - for HRI to invade the privacy interests of these individuals to obtain the information that it would like to obtain to protect its supposed claims as to the small minority of MDL Plaintiffs who may have received treatment by or through HRI's policies.

Accordingly, whether viewed as a matter of constitutional proscription or as a matter of Rule, HRI simply does not have a right to require that the Plaintiffs fork over a list of the persons who

have made claims here.

## IV.   CONCLUSION

For the reasons set forth above, HRI's Petition should be dismissed.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: March 10, 2008
By:   /s/ Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
  MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
Sanford Pinedo LLP
2016 Bissonnet Street
Houston, Texas 77005
(713) 524-6677 (telephone)
(713) 524-6611 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

17


## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 10th day of March, 2008.

                                            /s/ Leonard A. Davis
                                            Leonard A. Davis (Bar No. 14190)
                                            ***Herman, Herman, Katz & Cotlar, LLP***
                                            820 O'Keefe Ave.
                                            New Orleans, LA 70113
                                            PH:   (504) 581-4892
                                            FAX:  (504) 561-6024
                                            ldavis@hhkc.com