ATTORNEYS AT LAW
**JOHNSTON, HOEFER, HOLWADEL & ELDRIDGE**
601 POYDRAS STREET, SUITE 2490
NEW ORLEANS, LOUISIANA 70130
TELEPHONE (504) 561-7799
FACSIMILE (504) 525-1488

---

ADAMS, HOEFER, HOLWADEL & ELDRIDGE, LLC
ROBERT M. JOHNSTON, OF COUNSEL

March 19, 2008

NAME
ADDRESS
CITY, STATE ZIP

> Re:   *In re: Vioxx Products Liability Litigation*
> **MDL 1657**

Dear Vioxx *Pro Se Claimant*:

By Order dated February 12, 2008, I was appointed by the Federal MDL Court, as Curator, to provide assistance to *pro se* plaintiffs and *pro se* tolling claimants in connection with the Court's Pretrial Order requiring the registration of claims and with the Vioxx Resolution Program. *Pro se* plaintiffs/claimants are those claimants who are not now represented by an attorney. Before receiving this letter, you should have also received a letter dated December 12, 2007 from Herman, Herman, Katz & Cotlar, LLP, regarding the Vioxx Settlement Program. The terms of the settlement were set forth in that letter and as stated, Merck has agreed to pay one sum, $4.85 billion, which will be allocated among thousands of qualifying claims based upon an evaluation of each claimant's individual medical records. A description of the settlement program is enclosed.

### A.    Everyone Must Register His or Her Vioxx Claim

The federal judge in the Federal MDL litigation has entered an order providing that all persons who have filed claims based on alleged injuries from their Vioxx usage, or entered into a tolling agreement with Merck regarding such a claim, **must** now also register their claims with the Vioxx Claims Administrator. All claims must be registered regardless of whether that claim is eligible to participate in the Vioxx Settlement Program or whether an eligible individual plaintiff ultimately decides to participate in the Settlement Program. This registration is in the nature of a "census" of all Vioxx claims, regardless of their participation in the Settlement Program. If your claim was filed in a state court in New Jersey, Texas, or California, the judges overseeing those cases also entered the same order.


EXHIBIT
A

Page 2 of 3

According to our records, you are a *pro se* plaintiff or tolling claimant who has not registered your claim as required. The failure to submit the required registration papers violates a court order and may result in sanctions, including the dismissal of your claim entirely.

Therefore, to comply with the courts' orders you **must** sign and date the enclosed Registration Affidavit and return it to the Claims Administrator as soon as possible, and no later than March 31, 2008. You may submit the documents by either e-mail or postal mail. If you choose to send the documents by e-mail, please send the *Pro Se* Registration completely filled out and signed as an attachment to the Claims Administrator at claimsadmin@browngreer.com. Alternatively, you may submit the *Pro Se* Registration Affidavit by mail to:

> Claims Administrator
> BrownGreer PLC
> 115 S. 15th Street
> Suite 400
> Richmond, VA  23219-4209

*Enrolling* in the actual Vioxx Settlement Program is different than *registering* your Vioxx claim. ***While everyone is required to register their claims,*** actual *enrollment* in the settlement program is entirely voluntary and involves submitting documents and materials in addition to the registration papers. If you are eligible to participate in the Settlement Program, you may be eligible to receive an early interim settlement payment; however, to be eligible for an early Interim Payment, you must have registered and enrolled in the Settlement Program by no later than March 31, 2008. At this time, it appears that almost all of the claimants (more than 93%) eligible to participate in the Vioxx Settlement Program are electing to do so. If you have evidence of use of Vioxx and that you suffered a heart attack or stroke while you were using Vioxx or shortly thereafter as required by the terms of the Settlement Agreement, you will be entitled to receive some compensation for your injury. Once you have registered, you will be contacted separately by the Claims Administrator regarding the completion of additional enrollment papers.

## B.    What You Need To Do Now

You must sign and return the enclosed Registration Affidavit to the Claims Administrator at 115 S. 15th Street, Suite 400, Richmond, VA  23219-4209, Main Number: (804) 521-7200, email claimsadmin@browngreer.com, immediately. Your failure to take this required action violates a court order and may result in sanctions, including the dismissal of your claim. Also enclosed for your convenience is a checklist to assist you in completing the Registration Affidavit.

Page 3 of 3

     If you have questions regarding this letter or how to register and/or enroll in the Vioxx Settlement Program, you may contact me by email at cps@ahhelaw.com, or by calling 504-561-7799.

                    Very truly yours,

                    ROBERT M. JOHNSTON

RMJ
Enclosures

# REGISTRATION CHECKLIST: UNREPRESENTED CLAIMANT

**NOTICE:** The deadline for submitting a Registration Affidavit and claimants in a Claimant Spreadsheet to register for the Settlement Program passed on January 15, 2008, but you may still send in Registration Materials and should do so as soon as possible.

| | STEP | DONE? |
|---|---|---|
| 1. | **Obtain the Pro Se Registration Affidavit:** Download the Pro Se Registration Affidavit from www.browngreer.com/vioxxsettlement and save it on your computer. If you cannot download this form, email the Claims Administrator at claimsadmin@browngreer.com and request one to be emailed to you. If you do not have access to email, then call the Claims Administrator at (866) 866-1729 or write the Claims Administrator at P.O. Box 85031, Richmond, Virginia 23285-5031 and ask for the Pro Se Affidavit. | |
| 2. | **Complete the Pro Se Registration Affidavit:** You may print the Pro Se Registration Affidavit and type in the required information, type it on a hard copy you obtained from the Claims Administrator, or fill it out by hand if you print cleanly. Alternatively, if you downloaded this to your computer, it is a live, fillable Word document and you can type the required information into that document. Answer all the questions in the form. | |
| 3. | **Sign and Date the Pro Se Registration Affidavit:** Sign the Registration Affidavit in the space provided for your signature and fill in the date on which you signed. | |
| 4. | **No Filing With a Court.** You do not have to file your Registration Affidavit with any court. The courts in the Coordinated Proceedings have entered amended Orders removing any filing requirement. | |
| 5. | **If You Have Access to Email, Prepare an Email to Serve Your Pro Se Registration Affidavit:** Prepare an email, using as the subject line in your email "Registration Affidavit for [your name]" and attaching an Adobe pdf of your signed Pro Se Registration Affidavit. | |
| 6. | **If You Have Access to Email, Serve Your Pro Se Registration Affidavit No Later than January 15, 2008 (this deadline has now passed, but you may still send in Registration Materials and should do so as soon as possible):** Send the email you prepared in Step 5 to the Claims Administrator at claimsadmin@browngreer.com. You do not have to serve it on Merck or the PEC. The Claims Administrator will do that for you. | |
| 7. | **If You Do Not Have Access to Email, Mail Your Pro Se Registration Affidavit No Later than January 8, 2008 (this deadline has now passed, but you may still send in Registration Materials and should do so as soon as possible):** If you do not have a way to email your Pro Se Registration Affidavit as required in Step 6, then mail your Pro Se Registration Affidavit to:<br><br>Claims Administrator<br>P.O. Box 85031<br>Richmond, Virginia 23285-5031 | |

# DESCRIPTION OF SETTLEMENT AGREEMENT[1]

Merck & Co., Inc. ("Merck") has entered into a Settlement Agreement ("Agreement") with certain plaintiffs' counsel ("Negotiating Plaintiffs' Counsel") in order to establish a nationwide settlement program to resolve the claims of certain individuals who have suffered a heart attack, stroke, or sudden cardiac death resulting from their use of Vioxx (the "Vioxx Claimant(s)").

## Activation of the Settlement Program

In order for claims to be paid under the Settlement Program, counsel representing Vioxx Claimants must file with the relevant court no later than January 15, 2008, a Registration Affidavit for every Vioxx client they represent as primary counsel, regardless of whether the client suffered a heart attack, ischemic stroke, or sudden cardiac death, resulting from Vioxx. The Registration Affidavit will contain basic information about each client and the injury the client alleges.

After the Registration Affidavits have been submitted, the Claims Administrator will calculate the total number of Vioxx Claimants that are eligible to participate ("Eligible Claimants") in the Settlement Program. A Vioxx Claimant will be considered eligible to participate in the Settlement Program if:

- prior to November 9, 2007, the Claimant has filed a Vioxx lawsuit pending in any jurisdiction or a Vioxx claim that was tolled under the Tolling Agreement established by the MDL Court; and
- the Claimant alleged in his/her lawsuit or tolling paperwork that the Claimant (or the Deceased or minor for whom the Claimant is the Legal Representative) suffered a heart attack, ischemic stroke, or sudden cardiac death as a result of Vioxx ingestion.

In order for the Settlement Program to be activated and for Merck to be required to fund the settlement, at least 85% of all Eligible Claimants must agree to participate in the Settlement Program. All documents necessary for a Vioxx Claimant to participate in the Settlement Program must be submitted to the Claims Administrator by March 1, 2008. Sufficient numbers of Eligible Claimants from each of the following categories must agree to participate in the Settlement Program in order for the Program to be Activated:

- Vioxx Claimants registered as alleging a heart attack or myocardial infarction ("MI Eligible");
- Vioxx Claimants registered as alleging a stroke or other qualifying ischemic cerebrovascular event ("IS Eligible");
- Vioxx Claimants registered as alleging use of Vioxx for more than 12 months prior

---

[1]  This Description of Settlement Agreement is an overview and is meant as a summary to describe the Settlement Program only in a general way. For a complete description, it is necessary to refer to the specific terms of the settlement documents themselves.

1

to a qualifying heart attack ("MI") or qualifying stroke ("IS");
- Vioxx Claimants registered as alleging death as an injury.

## Eligible Claimants - Required Documents

The following documents (the "Claims Package") must be submitted to the Claims Administrator in order for an Eligible Claimant to participate in the Settlement Program:

- a Release and Dismissal Stipulation, signed by the Eligible Claimant (and, under some circumstances, by any other individual who may have an interest in the claim ("Derivative Claimant") must be submitted to the Claims Administrator by the Eligible Claimant's lawyer no later than February 29, 2008; and
- medical records documenting the injury ("Event Records"), including a death certificate and autopsy report (if performed) in death and/or sudden cardiac death cases, follow-up medical records, and records documenting Vioxx usage, (together, the "Claims Package") all must be submitted no later than July 1, 2008.

## Qualifying for Compensation in the Settlement Program

In order for an Eligible Claimant to qualify for compensation through the Settlement Program, the following threshold criteria must be met:

- medical records must confirm that the Eligible Claimant suffered a heart attack, ischemic stroke, or sudden cardiac death; and
- medical or pharmacy records must establish that the Eligible Claimant received at least 30 Vioxx pills within 60 days prior to the injury; and
- medical or pharmacy records must confirm that Vioxx was being used by the Eligible Claimant within 14 days of the Vioxx-related heart attack, ischemic stroke, or sudden cardiac death.

**Please note that there is no need for an Eligible Claimant to contact his/her attorneys regarding proof of medical condition or Vioxx use. An Eligible Claimant's Primary Counsel will contact the Eligible Claimant if further information is needed.**

A determination by the Claims Administrator that an Eligible Claimant does not qualify for payment through the Settlement Program will be reviewed by a Committee. The Claims Administrator shall give written notice of the Committee's decision to the relevant Eligible Claimant's Primary Counsel.

If the Eligible Claimant is determined not to qualify for payment under the terms of the Program, the Eligible Claimant may (a) return to the tort system and receive back the Release and Dismissal Stipulation, upon the submission of a Future Evidence Stipulation to the Claims Administrator; or (b) take no action for thirty (30) days, after which the Eligible Claimant's Vioxx case shall be dismissed; or (c) appeal the negative determination to the Special Master, who will

undertake a de novo review of the Eligible Claimant's complete Claims Package. If the Eligible Claimant appeals the negative determination to the Special Master and loses the appeal, the Eligible Claimant's case shall be dismissed and the Eligible Claimant shall have no further rights under the Settlement Program or in the tort system. If the Eligible Claimant wins his/her appeal to the Special Master, the relevant claim shall be submitted to the Program's valuation process.

If an Eligible Claimant is determined by the Claims Administrator, Committee, or Special Master to qualify for payment under the Settlement Program (the "Qualifying Claimant"), the value of the claim will then be assessed by the Claims Administrator using a grid point system. Claims shall be evaluated by the Claims Administrator in the order in which the Claims Administrator receives a complete Claims Package.

## Valuation Process for Qualifying Claims

A point system is being used in order to ensure that the valuation of claims is consistent across similarly situated Qualifying Claimants and reflects the likely relative value of each claim within the tort system. Once the total number of Qualifying Claimants is known, as well as all Qualifying Claimants' verified injury levels and risk factors, the Claims Administrator will be able to determine the precise dollar value of each valuation point. To determine the precise dollar value of each MI point, the Claims Administrator will divide the total number of points awarded to Qualifying Claimants who alleged a heart attack or sudden cardiac death into the total MI Aggregate Settlement Amount of approximately $4 billion. Similarly, the total number of points assigned to Qualifying Claimants who alleged an ischemic stroke or death from stroke will be divided into the total IS Aggregate Settlement Amount of approximately $850 million to determine the precise dollar value of each IS point.

Under the point system, the Claims Administrator will be individually evaluating the medical records in support of each Qualifying Claimant along several dimensions. The claim will first be assigned a base point total, which will reflect the Qualifying Claimant's injury type (i.e., MI or IS), level of injury within the injury type, age at the time of the MI or IS, and duration of Vioxx use. Claims involving longer Vioxx use, a younger Vioxx Claimant, and a more severe injury will be assigned more points than claims involving briefer Vioxx use, an older Vioxx Claimant, and a less severe injury.

Each Qualifying Claimant's base point total will then be adjusted by the Claims Administrator based on various standardized liability adjustments and risk factor adjustments. These adjustments reflect aspects of the Qualifying Claimant's Vioxx use and medical history that would be expected to affect the value of the Qualifying Claimant's claim within the tort system, and will be based upon a Qualifying Claimant's Event Records, follow-up records, and any Profile Form submitted to Merck or the Court.

The liability adjustments are:

•       consistency of the Qualifying Claimant's Vioxx usage in the twelve (12) months

3

preceding the Event; and

- whether the Qualifying Claimant's Vioxx use and the MI or IS occurred prior to March 9, 2000, between March 9, 2000 and April 11, 2002, or after the April 11, 2002 label change.

The <u>risk factor adjustments</u> are:

- smoking history
- high cholesterol
- hypertension
- diabetes
- obesity
- family history of heart attack or ischemic stroke or other ischemic event
- alcohol abuse
- heart attack or coronary artery bypass surgery (CABG) before starting Vioxx
- coronary artery disease (CAD) before starting Vioxx
- illicit drug use within 5 years of the event
- diagnosed vascular diseases before starting Vioxx
- stroke or TIA (transient ischemic attack) before starting Fioxx (IS cases only)
- carotid artery disease or carotid artery procedure before starting Vioxx (IS cases only)
- atrial fibrillation or heart failure before starting Vioxx (IS cases only)
- migraine headaches (IS cases only)
- use of hormone replacement therapy within 1 month of event if initiated within 1 year of event (IS cases only)
- vigorous exercise within two hours of event
- total joint arthroplasty or other major surgery within 5 days of event
- head trauma within 5 days of event (IS cases only)

The Claims Administrator shall notify each Qualifying Claimant of his/her total point award. A Qualifying Claimant may appeal that award to the Special Master, who shall undertake a de novo review of the claim; this means that the number of points accorded the claim by the Special Master may increase, decrease, or stay the same relative to the number of points originally awarded by the Claims Administrator. The decision of the Special Master shall be final, binding, and non-appealable.

Because, as explained above, each Qualifying Claimant's total number of points is ultimately subject to determination by the Claims Administrator upon a review of the Qualifying Claimant's medical and other records, and because the precise dollar value of each MI and IS point cannot be known with certainty until the total number of points of all Qualifying MI and IS Claims is known, the precise settlement value of a claim cannot be known at this time. In the meantime, however, a Vioxx Claimant may calculate the *approximate likely range* of values for his/her claim, assuming that the claim qualifies, by completing the questionnaire available on the internet at www.OfficialVioxxSettlement.com.   This website was set up by the Plaintiffs' Negotiating

Committee to assist in evaluating and understanding the Settlement Program. In addition, two examples of Claims Valuation calculations are attached to this "Description of Settlement Agreement."

## Total Value of Settlement and
## Number of Potentially Qualifying Claimants

The total gross payments to be made to Qualifying Claimants under the Agreement is $4.85 billion, with approximately $4 billion of that sum to be allocated among MI Qualifying Claimants and approximately $850 million of that sum to be allocated among IS Qualifying Claimants. At the present time, there are estimated to be approximately 29,000 potentially eligible Claimants nationwide alleging MI, and approximately 17,000 potentially eligible Claimants nationwide alleging IS.

In addition to the above funds, Merck shall deposit an initial $3 million into an Administrative Expense Fund to pay for the claims evaluation and other processes under the Settlement Agreement. In addition, the net investment earnings on the funds deposited by Merck into each of the MI and IS Settlement Funds shall be periodically transferred by the Escrow Agent to the Administrative Expense Fund.

## Payment of Qualifying Claims

Interim Settlement Payments

Qualifying Claimants who have submitted a properly and fully executed Release no later than February 29, 2008, and who are not eligible for a Fixed Payment (see below) shall be eligible for an Interim Payment. No Interim Payment to any Qualifying MI or IS Claimant shall be less than $5,000.00.

The amount of such Interim Payments for MI claims shall be determined by the Claims Administrator after approximately August 1, 2008. The Claims Administrator shall estimate the total number of points that will ultimately be awarded to all Qualifying MI Claimants, and the estimated value of each MI point. Interim payments in the amount of 40% of each Qualifying MI Claimant's gross estimated Final Settlement Payment shall be made on a rolling basis.

Similarly, the amount of such Interim Payments for Qualifying IS Claimants shall be determined by the Claims Administrator after approximately February 1, 2009. The Claims Administrator shall estimate the total number of points that will ultimately be awarded to all Qualifying IS Claimants, and the estimated value of each IS point. Interim payments in the amount of 40% of each Qualifying IS Claimant's gross estimated Final Settlement Payment shall be made on a rolling basis.

The per-point value of Interim Payments may change as more claims are processed and better

information is available regarding the likely ultimate value of each MI and IS point.

Fixed Payments

Qualifying Claimants who are notified by the Claims Administrator that their total MI or IS points are less than a specified amount shall have the option to receive a gross Fixed Payment of $5,000 instead of the (likely much smaller) award they would receive if all appropriate risk factor and liability adjustments were made to their base point total. Qualifying Claimants eligible for the Fixed Payment who do not choose to receive the Fixed Payment shall receive de novo review of their claim by the Special Master. The Special Master shall award 0 to 5 points to each such MI claim, and shall award 0 to 1 point for each such IS claim, and the determination of the Special Master shall be final and non-appealable.

Extraordinary Injury Payments

Qualifying Claimants who would like their claim to be considered as an Extraordinary Injury may apply through their Primary Counsel to receive an Extraordinary Injury Payment ("EI Payment"). Such Qualifying Claimant may be eligible for an EI Payment if: (a) the Qualifying Claimant is not eligible for a Fixed Payment; and (b) the Qualifying Claimant has specified, documented, economic damages of at least $250,000. Such damages include the Qualifying Claimant's past or future out-of-pocket medical expenses and the Qualifying Claimant's past lost wages to the extent that such expenses or lost wages are the result of the Qualifying Claimant's heart attack or stroke and have neither been reimbursed nor are eligible for reimbursement from any other source.

Each Qualifying Claimant who qualifies for, and timely applies for, an EI Payment shall receive such a payment in an amount to be based on criteria to be determined by the Claims Administrator, not to exceed $600,000 for economic damages. Any such EI Payment shall be in addition to the Qualifying Claimant's Final Payment (see below). EI Payments for all Qualifying MI Claimants shall not in the aggregate exceed $195 million; EI Payments for all Qualifying IS Claimants shall not in the aggregate exceed $105 million. All proposed EI Payments shall be reduced pro rata if necessary to meet these restrictions.

Final Payment

After, and only after, (i) all Qualifying Claimants have completed the claims valuation process and all points awards have become final; and (ii) all possible Fixed Payments and Extraordinary Injury Payments have been determined; and (iii) all audits have been completed, the Claims Administrator shall determine the MI and IS Point Values.

The total gross value of each Qualifying MI and IS Claimant's claim can then be determined by multiplying the Qualifying Claimant's total number of points by the MI or IS Point Value, as appropriate. The final gross payment to be made to each such Qualifying Claimant shall be the total value of the claim, minus any Interim Payment made to the Qualifying Claimant. In addition, the

Final Payment shall be made only when the Claimant and his/her Primary Counsel represent and warrant that any and all Vioxx-related Governmental Authority (e.g., Medicare and Medicaid) liens that exist on the Qualifying Claimant's settlement monies have been satisfied and discharged.

## Attorneys' Fees and Litigation Costs and Expenses

The attorney's fees to be paid by each settling Qualifying Claimant to his/her individual attorney(s) shall not exceed those set forth in the Qualifying Claimant's attorney-client contract. In order to compensate the "Common Benefit Attorneys" who developed the Vioxx litigation against Merck and ultimately negotiated the Settlement Program, an assessment of common benefit attorneys' fees will be imposed at no more than 8% of the gross amount recovered for every Qualifying Claimant who is registered under the terms of the Agreement. This attorneys' fees assessment shall not increase the total attorneys' fees payable by any Qualifying Claimant, but shall be deducted from the total amount of attorneys' fees payable by each Qualifying Claimant under his/her individual attorney-client contract.

The total expenses to be reimbursed by each settling Qualifying Claimant will include case-specific expenses and general expenses (consistent with the terms of the Qualifying Claimant's individual attorney-client contract), as well as common benefit expenses. Case-specific expenses are those that benefit a specific client (e.g., the costs of obtaining a particular client's medical or pharmacy records). General expenses are those that benefit a larger group of clients represented by the same attorney (e.g., the fees paid a medical expert), and are allocated equally or on a pro-rata basis (depending on the terms of the individual attorney-client contract) across the group of benefitted clients. Common benefit expenses are those incurred by the Common Benefit Attorneys in their work on behalf of Vioxx Claimants nationwide, and shall be as approved by the Claims Administrator.

## Irrevocability of the Submission of a Release

**Submission of a Release by an Eligible Claimant or the Eligible Claimant's Primary Counsel is irrevocable.** No Eligible Claimant may under any circumstances or for any reason request the return of his/her Release or Dismissal Stipulation, or otherwise unilaterally exit the Settlement Program, unless specifically provided for in the Settlement Program Agreement.

**By submitting the Release, the Eligible Claimant is agreeing to be bound by all terms and conditions of the Settlement Program, including agreeing to accept the final value accorded the Eligible Claimant's claim under the Program's claim valuation process, if the Eligible Claimant qualifies for compensation through the Settlement Program.**

## PRO SE REGISTRATION AFFIDAVIT

By completing and signing this Registration Affidavit, I certify pursuant to 28 U.S.C. § 1746 to all the information in this Affidavit. I make this certification pursuant to the November 9, 2007 Order regarding registration of plaintiffs.

### A. PLAINTIFF INFORMATION

| Name | Last | | First | Middle |
|---|---|---|---|---|

| Date of Birth | / / (Month/Day/Year) | Social Security Number | - - |
|---|---|---|---|

| Current Address | Street | | | |
|---|---|---|---|---|
| | City | State | Zip | Country |

| Telephone Number | Daytime | Evening | Email | |
|---|---|---|---|---|

### B. LAWSUIT INFORMATION

I represent myself in the following lawsuit:

| Case Caption | |
|---|---|
| Docket Number | | Date Filed | / / (Month/Day/Year) |

### C. INJURY INFORMATION

I claim that I sustained a personal injury as a result of taking Vioxx®. I have marked the category of my injury and specified the date and place of my injury below:

☐ Myocardial Infarction or Sudden Cardiac Death

☐ Ischemic Stroke (not a hemorrhagic stroke or a transient ischemic attack)

☐ All other Injuries

| Date of Specified Injury | / / (Month/Day/Year) | Place of Injury | |
|---|---|---|---|

### D. USE OF VIOXX®

I took Vioxx before my claimed injury. I have specifically checked the category below that corresponds to my duration of Vioxx® use.

Check One:

☐ Duration of use up until the specified injury of 12 months or less

☐ Duration of use up until the specified injury of more than 12 months

### E. SIGNATURE

I certify under penalty of perjury that the foregoing is true and correct.

| Date Signed | / / (Month/Day/Year) | _____ Pro Se Claimant |
|---|---|---|