ATTORNEYS AT LAW
## JOHNSTON, HOEFER, HOLWADEL & ELDRIDGE
601 POYDRAS STREET, SUITE 2490
NEW ORLEANS, LOUISIANA 70130
TELEPHONE (504) 561-7799
FACSIMILE (504) 525-1488

ADAMS, HOEFER, HOLWADEL & ELDRIDGE, LLC
ROBERT M. JOHNSTON, OF COUNSEL

March 19, 2008

NAME
ADDRESS
CITY, STATE ZIP

        Re:    *In re: Vioxx Products Liability Litigation*
                **MDL 1657**

Dear Vioxx Pro Se Registered in the Settlement Program:

    By Order dated February 12, 2008, I was appointed by the Federal MDL Court, as Curator, to provide assistance to *pro se* plaintiffs and *pro se* tolling claimants in connection with the Court's pretrial order requiring the registration of claims and with the Vioxx Settlement Program.

    The Claims Administrator has advised that you submitted a *Pro Se* Registration Affidavit. However, according to our records, as of this time you have not enrolled in the Vioxx Settlement Program. The purpose of this letter is to explain the Enrollment process so that you can comply with those procedures if you are eligible for the Program and wish to enroll. If you desire to participate in the Vioxx Settlement Program you can continue to represent yourself as a *pro se* litigant or claimant. Alternatively, you may retain an attorney to represent you.

    ***Note that in order to qualify for an early, Interim Payment of your settlement award if you wish to enroll, you must complete and return the enrollment materials to the Claims Administrator by March 31, 2008.***

    Before receiving this letter, you should have also received a letter dated December 12, 2007 from Herman, Herman, Katz & Cotlar, LLP, regarding the Vioxx Settlement Program. The Settlement Program was announced November 9, 2007 to resolve certain Vioxx-related claims involving plaintiffs who have suffered a heart attack (including sudden cardiac death) or ischemic stroke. As relayed to you in that letter, Merck has agreed to pay one sum, $4.85 billion, which will be allocated among thousands of qualifying claims based upon an evaluation of each claimant's individual medical records. Details regarding the Settlement Program, including eligibility requirements and the claims valuation process, are enclosed.

    Therefore, if you allege that you have a Vioxx claim because you suffered a heart attack or stroke (or are the personal representative of a Vioxx user who suffered a heart attack, stroke or



Page 2 of 2

sudden cardiac death), you should also evaluate whether you want to enroll to participate in the Vioxx Settlement Program. At this time, it appears that almost all of the claimants (more than 93%) eligible to participate in the Vioxx Settlement Program are electing to do so.

At this time, no one can tell you or any other Claimant what your precise settlement value will be under the Settlement Program, except to say that *if you have evidence of use of Vioxx and that you suffered a heart attack or stroke while you were using Vioxx or shortly thereafter as required by the terms of the Settlement Agreement, you will be entitled to receive some compensation for your injury.* If you are eligible to participate in the Settlement Program, you may also be eligible to receive an early interim settlement payment prior to completion of the entire valuation process, which could take more than one year. **However, to be eligible for such an Interim Payment, you must *enroll* in the Settlement Program by no later than March 31, 2008.** If you do enroll in the Program before March 31, 2008, submit your medical and other records promptly and the Claims Administrator determines that you are entitled to compensation, you would be eligible for an Interim Payment. Interim Payments may begin some time after August 1, 2008, for heart attack claimants. You may still enroll after March 31, 2008, but, under the current terms of the Agreement, you will not receive an Interim Payment if you enroll after that date. The final enrollment deadline is currently May 1, 2008.

*Enrolling* in the actual Vioxx Settlement Program is different than *registering* your Vioxx claim. While *everyone is required* to register their claims, actual *enrollment* in the settlement program is entirely voluntary and involves submitting documents and materials in addition to the registration papers. By now, you should have received enrollment forms from the Claims Administrator. If you have not, please contact the Claims Administrator at claimsadmin@browngreer.com or (866)-866-1729 to obtain a new enrollment package.

If you have questions regarding this letter or the Vioxx Settlement Program, you may contact me by email at cps@ahhelaw.com, or by calling 504-561-7799.

Very truly yours,

*ROBERT M. JOHNSTON*

RMJ
Enclosures

# ENROLLMENT INSTRUCTIONS FOR UNREPRESENTED CLAIMANTS

## A. GENERAL INSTRUCTIONS

| | |
|---|---|
| A.1. | **Documents Needed:** You must follow all the steps described in these Instructions to enroll in the Vioxx Settlement Program. These documents are needed to enroll in the Program:<br>(1) an Enrollment Form;<br>(2) a Release;<br>(3) a Medical Record Authorization Form;<br>(4) an Employment Records Authorization Form, if you are seeking lost wages; and<br>(5) a Stipulation of Dismissal, if you have a pending lawsuit.<br><br>The Claims Administrator sends these form documents to any unrepresented claimant who has submitted a Registration Affidavit for the Program. Note that making these Forms available to you does not in any manner imply that you are eligible for the Program or ultimately will receive benefits in the Program. The Settlement Agreement requires these executed Forms to begin the process. Eligibility will be determined at a later stage based upon the Claims Package submitted. If you do not have a document that you need, contact the Claims Administrator toll free at (866) 866-1729 and ask for the Claims Administrator's Pro Se Coordinator, Ms. Diann Bates, or send her an email at claimsadmin@browngreer.com. |
| A.2. | **Deadlines for Enrollment:** As specified in Section 1.2.2.2 of the Settlement Agreement (as amended by the Second Amendment), to be considered for an Interim Payment under Section 4.1 of the Settlement Agreement, Pro Se Claimants must submit a signed Enrollment Form and all other Enrollment Materials to the Claims Administrator on or before March 31, 2008. Pro Se Claimants may still Enroll in the Program after March 31, 2008, using the same methods described in these Instructions, but they will not be considered for any Interim Payment made by the Claims Administrator. |
| A.3. | **Pro Se Curator:** By an Order dated February 12, 2008, the federal Court supervising the Program appointed a Pro Se Curator to provide assistance to Pro Se Claimants in connection with the Vioxx Settlement Program. The Pro Se Curator is Robert M. Johnston. You may contact him at (504) 561-7799, or by email at rmj@ahhelaw.com. |

## B. SPECIFIC INSTRUCTIONS FOR THE ENROLLMENT FORM

| | STEP |
|---|---|
| B.1. | **General Instructions:** An Enrollment Form is required to Enroll. Complete each of the following steps to complete the Enrollment Form. |
| B.2. | **Obtain the Enrollment Form:** You should have received an Enrollment Form from the Claims Administrator. If you cannot find your Form, contact the Claims Administrator toll free at (866) 866-1729 and ask for the Claims Administrator's Pro Se Coordinator, Ms. Diann Bates, or send her an email at claimsadmin@browngreer.com. |
| B.3. | **Read Sections 1-3 of the Enrollment Form:** The Enrollment Form contains certain representations and acknowledgements. Read Sections 1-3 to understand what you are agreeing to by signing the Form. |
| B.4. | **Complete the Claimant Information and Date:** Insert the Claimant information requested in the boxes below the signature line on the Enrollment Form. Insert the date next to the signature line. |
| B.5. | **Sign the Enrollment Form:** After completing Section B.3, and confirming that the Claimant |

| | ENROLLMENT INSTRUCTIONS FOR UNREPRESENTED CLAIMANTS |
|---|---|
| | **A. GENERAL INSTRUCTIONS** |
| | information is correct, sign the Form. |
| B.6. | **Send the Original Enrollment Form to the Claims Administrator:** Send the original signed hard copy of the Enrollment Form to the Claims Administrator by US Mail or Overnight Delivery. |
| | **C. SPECIFIC INSTRUCTIONS FOR THE RELEASE OF ALL CLAIMS** |
| | **STEP** |
| C.1. | **General Instructions:** Every Claimant must submit a complete original signed Release as part of the Claimant's Enrollment Package, so include it along with your other Enrollment Materials and send them at the same time. |
| C.2. | **Use the Release Form Sent to You by the Claims Administrator:** The Claims Administrator prepared a Release for you and mailed it to you. If you cannot find it or did not receive it, contact the Claims Administrator toll free at (866) 866-1729 and ask for the Claims Administrator's Pro Se Coordinator, Ms. Diann Bates, or send her an email at claimsadmin@browngreer.com. |
| C.3. | **Review the Claimant Information on the Cover Page of the Release:** The Cover Page to the Release contains a section showing the name, address, and other information about the Claimant (the Vioxx user.) Review the information in this section. If any of it needs to be changed, you should cross through what needs correcting and write in on the Cover Page the necessary changes in black ink and as legibly as possible. |
| C.4. | **Derivative Claimants:** If there are Derivative Claimant(s) who are associated with your claim, any such Derivative Claimant must also sign the Release. A Derivative Claimant is someone who, because of their relation to you, could have a legally recognizable cause of action based on your use of Vioxx. Derivative Claimants include heirs, beneficiaries, a surviving spouse, surviving domestic partner and next of kin. We do not know if there are Derivative Claimants associated with your Claim.<br><br>If there is a Derivative Claimant, he/she must sign the Release, and you must do the following:<br><br>a) The cover page to the Release contains space to enter the information for one Derivative Claimant. Write in the name, address, Social Security Number of the Derivative Claimant and date the information. If there is more than one Derivative Claimant associated with your claim, photocopy the cover page as many times as you need to have a page for each Derivative Claimant, before you write on it. Fill in the space on each cover page with the Derivative Claimant information and attach any additional pages to the back of the Release.<br><br>b) The Release has a blank signature page for one Derivative Claimant. If there is more than one Derivative Claimant associated with your claim, before you write on it, photocopy the Derivative Claimant signature page as many times as you need to have a page for each Derivative Claimant. Each Derivative Claimant must sign a signature page. Attach any additional Derivative Claimant signature pages to the back of the Release. |
| C.5. | **Representative Claimants of Derivative Claimants:** If a Derivative Claimant is now deceased or is legally incompetent, a person acting as the authorized Representative Claimant must sign for that Derivative Claimant. Do not add that representative as a new Derivative Claimant on the Cover Page to the Release. Instead, just indicate in the Derivative Claimant's signature page who is signing for that deceased or incompetent Derivative Claimant and the capacity in which the person is acting. See Section |

| | ENROLLMENT INSTRUCTIONS FOR UNREPRESENTED CLAIMANTS |
|---|---|
| | A. GENERAL INSTRUCTIONS |
| | C.9 below for an explanation of how a Representative Claimant is to sign the Release. |
| C.6. | **Complete Attachment 1 if a Special State Claimant:** The Release that the Claims Administrator sent to you contains an Attachment 1. If you have a pending lawsuit and: (i) are living now; (ii) lived at the time of Primary Injury or Secondary Injury; and/or (iii) filed lawsuits: in Arizona, Kansas, Ohio, Oklahoma, or Texas ("Special State Claimants"), you are responsible for making sure that Attachment 1 of the Release includes any co-defendants named in the lawsuit. If the information on your Registration Affidavit placed you in Special State Claimant status, you must complete Attachment 1 by writing in or typing all co-defendants named in the lawsuit. If the co-defendant is a corporate entity, you must list it using the co-defendant's proper corporate name. If there were no co-defendants named in the lawsuit, write "None" on Attachment 1. |
| C.7. | **Obtain Notarized Claimant Signature(s):** The Release must be signed by the Claimant or the Representative for a deceased or legally incompetent Claimant, in the "Releasor" blank after the text of the Release. The Releasor's signature must be properly notarized in the space provided. When a Representative Claimant signs, he or she should sign where the signature of the Releasor is to be made, "[Claimant/name] by [name of representative who is signing], as [fill in executor, or representative, or other legal status of the representative].' If you need to make any changes to the signature portion to indicate that a Representative Claimant is signing instead of the Claimant named, write or type these changes on the signature page where the Releasor signs, such as "John Doe, by Jane Doe, as the Executor of the Will of John Doe." |
| C.8. | **Obtain Notarized Derivative Claimant Signature(s):** The Release the Claims Administrator prepared has signature pages for each Derivative Claimant you have identified. If you have not identified any Derivative Claimants, the Release we generated has a blank signature page for a Derivative Claimant. If you added more Derivative Claimants to a Release by writing them in by hand, then, before you write on it, photocopy the Derivative Claimant signature page as many times as you need to have a page for each Derivative Claimant to sign. Each Derivative Claimant must sign a signature page. The Derivative Claimant's signature must be properly notarized. If a Representative Claimant is signing for a deceased or incompetent Derivative Claimant, then have that person sign as "[Derivative Claimant Name] by [Representative Claimant name], acting as [Executor, etc.]." Attach any additional Derivative Claimant signature pages to the back of the Release. |

| ENROLLMENT INSTRUCTIONS FOR UNREPRESENTED CLAIMANTS ||
|---|---|
| A. GENERAL INSTRUCTIONS ||
| C.9. | **Complete the Representative Section Whenever Anyone Signs as a Representative Claimant:** If a Claimant or Derivative Claimant is deceased or legally incompetent, a person who has legal authority to act for the estate of the deceased person or for the incompetent person must sign the Release. The question of who can act as a Representative Claimant on behalf of the estate of a deceased person or for an incompetent person is a function of the law of the State that applies to that claim. First determine which State's law applies to the claim. Then determine what that law requires to empower a person to act as the legal representative of a deceased person. Many states require an order appointing an executor of the estate, or the issuance of letters testamentary, or an order appointing a person to act for a person who died intestate. You must secure and provide to the Claims Administrator copies of whatever is necessary under the applicable state law to authorize the person signing as representative to bind the entire estate and all beneficiaries of the estate or to bind a person who is legally incompetent. Because these rules vary from state to state, the Claims Administrator cannot provide you with the rules applicable in your state. If the Release is signed by a duly and lawfully appointed representative of the Vioxx User Claimant or of a Derivative Claimant, that representative must describe his or her relationship to the Claimant or Derivative Claimant and the authority upon which he or she is permitted to sign the Authorization on behalf of the Claimant or Derivative Claimant in the "Title" line of the signature section (*e.g.*, guardian, executor or administrator of the Estate, etc. If you added a Representative Claimant for a Claimant or a Derivative Claimant, then write in the Title legibly in black ink. |
| C.10. | **Attach Representative Documentation:** If the Release is signed by a duly and lawfully appointed representative of the Claimant or a Derivative Claimant, that representative must attach to the Release proper documentation (*e.g.*, power of attorney, letters of administration) authorizing him or her to act in this representative capacity. If you do not have these papers now, send in your Release while you are obtaining them. They must, however, be submitted as soon as you can obtain them and before the claim can receive a Notice of Points Award in the Program. |
| C.11. | **Specific Cautions for the Release:** Because the Release is so crucial to Enrollment, you must be very careful to complete it correctly. Follow these specific guidelines:<br>(a) Make sure you sign in the right place.<br>(b) Make sure all Derivative Claimants (or authorized Representatives of deceased or incapacitated Derivative Claimants) sign in the right place.<br>(c) The names in the signature must match the name of the Claimant (unless an authorized Representative of a deceased or legally incompetent Claimant signs for the Claimant) and the name of a Derivative Claimant.<br>(d) If the Claimant or Derivative Claimant is deceased or legally incompetent, an authorized Representative must sign for him or her. At the location for the Claimant or Derivative Claimant signature, note that the signature is "by [name of signer] as the [fill in the position of the signer, such as executor or legal guardian]." Be sure to follow Section C.9 above.<br>(e) Make sure the Notary fills out the correct notary space for each person signing the Release whose signature must be notarized and writes in the signer's name correctly, and that the Notary signs each place necessary.<br>(f) Make sure that the Notary's commission has not expired and that the Notary affixes a seal or stamp (except in a state where no seal is required by law, in which case write "No Seal required by the law of [name of State]" below the Notary's signature). |

| ENROLLMENT INSTRUCTIONS FOR UNREPRESENTED CLAIMANTS ||
|---|---|
| **A. GENERAL INSTRUCTIONS** ||
| | (g) Do not mark through, scratch out, add terms, or otherwise attempt to alter the terms of the Release. |
| | (h) Do not remove any pages from the Release. Make sure you return them all. |
| | (i) A lawyer may not sign for a Claimant or Derivative Claimant based only on a Power of Attorney. The Claimant (or authorized Representative of a deceased or incapacitated Claimant) and each Derivative Claimant must sign personally. |
| | (j) Make sure to date all signatures and all Notary signatures. |
| | (k) Make sure that the Notary date matches the date of signature by the person whose signature was notarized. |
| | (l) Do not send the Release by facsimile or electronic mail. It must be sent in original hard copy. |
| **D. SPECIFIC INSTRUCTIONS FOR THE AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS AND THE AUTHORIZATION FOR RELEASE OF EMPLOYMENT RECORDS** ||
| | STEP |
| D.1. | **General Instructions:** Every Claimant must submit a signed and complete Authorization for Release of Medical Records as part of the Claimant's Enrollment Package. The Employment Record Authorization Form is required as part of an Enrollment Package only if the Claimant is seeking Extraordinary Injury Payments under Section 4.2 of the Settlement Agreement. |
| D.2. | **Use the Authorization Form Sent to You by the Claims Administrator:** The Claims Administrator prepared an Authorization Form for you and mailed it to you. Each Form was pre-filled with information taken from what you previously provided to the Claims Administrator. Your Form contains a Bar Code unique to you. |
| D.3. | **Review the Claimant Information:** Review the top portion of the Authorization Form and confirm that the Patient/Employee Name, Date of Birth, and Social Security Number are complete and accurate. If it is not correct, you should cross through what needs changing and legibly write in the correct information. |
| D.4. | **Insert the Litigation Case No.:** Insert the Litigation Case No. in the space provided for this information in the top portion of the Authorization Form. If you (or an attorney that previously represented you) did not file a lawsuit or filed a lawsuit that has been dismissed of record before now, you do not need to fill in this part. |
| D.5. | **LEAVE BLANK the Records Provider Section:** Following the Claimant Information portion, there are two blank lines for "Records Provider(s.)" *Do not fill in these lines.* Leave them blank so they can be filled in later by the Receiving Parties or their representatives or designated agents with the names of the healthcare providers and/or employers obtained during the settlement process. |
| D.6. | **LEAVE BLANK the Date:** On the second page of the Authorization, there are blanks for the date. *Do not date the Authorization.* The Receiving Party or their representatives or designated agents will date the Authorization when it is sent to the providers of the records. |
| D.7. | **Sign the Authorization Form:** There is a signature blank next to the Date section on the second page of the Authorization Form. You or your respective, duly and lawfully appointed representative must sign the Authorization Form. |

| ENROLLMENT INSTRUCTIONS FOR UNREPRESENTED CLAIMANTS ||
|---|---|
| **A. GENERAL INSTRUCTIONS** ||
| D.8. | **Complete the Representative Section:** If the Authorization Form is signed by a duly and lawfully appointed representative of the Eligible Claimant, that representative must describe his or her relationship to the Eligible Claimant and the authority upon which he or she is permitted to sign the Authorization Form on behalf of the Eligible Claimant (*e.g.*, guardian, executor or administrator of the Estate of Eligible Claimant, etc.), in the section below the signature on the Authorization Form. See Section C.9 above, in the Release section, for more information on who serves as an authorized representative. A power of attorney alone is not enough to act in a representative capacity for a deceased Claimant. |
| D.9. | **Attach Representative Documentation:** If the Authorization Form is signed by a duly and lawfully appointed representative of the Eligible Claimant, that representative must attach to the Authorization Form proper documentation (e.g., power of attorney, letters of administration) authorizing him or her to act in this representative capacity. If you do not have these papers now, send in your Form while you are obtaining them. They must, however, be submitted to the Claims Administrator before the claim can receive a Notice of Points Award in the Program. |
| D.10. | **Send the Authorization Form to the Claims Administrator:** You may submit a signed Authorization Form in two ways:<br>(a) *Hard Copy Submission:* Include the original signed hard copy of the Authorization Form in your Enrollment Package and send the package to the Claims Administrator by US Mail or Overnight Delivery. This is the preferred method. If you send a hard copy, do not send a pdf.<br>(b) *Electronic Submission:* You may send the Claims Administrator an Adobe pdf image of the signed Authorization Form. To so do so, email it to claimsadmin@browngreer.com. Make a separate pdf for this document. Do not combine it with any other documents in the pdf. If you send it in pdf, do not also mail or deliver the hard copy. |
| **E. SPECIFIC INSTRUCTIONS FOR THE STIPULATION OF DISMISSAL** ||
| | **STEP** |
| E.1. | **General Instructions:** If you or an attorney who previously represented you filed a lawsuit, you need to prepare and send to the Claims Administrator a Stipulation of Dismissal for that suit. |
| E.2. | **Determine if You Have a Pending Lawsuit:** You need to determine whether you filed a lawsuit against Merck for any alleged injuries resulting from Vioxx use. If you hired an attorney who filed a lawsuit on your behalf but no longer represents you in that case, you still need to submit a Stipulation of Dismissal. |
| E.3. | **Obtain the Stipulation Form:** If you have a pending lawsuit, you need to tell the Claims Administrator so that the Claims Administrator's Pro Se Coordinator, Ms. Diann Bates, can mail you a Stipulation of Dismissal form. |
| E.4. | **Complete the Stipulation Form:** Fill in the blanks in the Stipulation of Dismissal with the information on your lawsuit. |

| | ENROLLMENT INSTRUCTIONS FOR UNREPRESENTED CLAIMANTS |
|---|---|
| | **A. GENERAL INSTRUCTIONS** |
| E.5. | **Do Not Materially Alter the Terms of the Stipulation:** Do not make changes to Stipulation text other than the text in brackets that you are instructed to change. Do not delete any words or sentences or otherwise attempt to change the Stipulation terms. For example, the case must be dismissed as to all defendants, so do not delete the language "all other named defendants." |
| E.6. | **Insert the Plaintiff's Name and Address:** Below the text on the left, there is a blank for the signature of Plaintiff's Name. Insert the name of the Plaintiff who will sign the Form. The Claimant would usually be the Plaintiff in the case. If you are unsure whether you are the Plaintiff in your pending lawsuit, contact the Pro Se Curator described in Section A.3 above. |
| E.7. | **LEAVE BLANK the Attorney for Merck Information:** Below the text on the right, there is a blank for the signature of Merck's Attorney. Leave this section on the Attorney for Merck blank and leave the place for the date under the Attorney for Merck line blank. |
| E.8. | **Sign and Date the Stipulation:** The Plaintiff should sign and date the Stipulation in the appropriate blanks at the bottom left of the Stipulation. You do not need to get any signature from any Merck counsel on the Stipulation. |
| E.9. | **Send the Stipulation to the Claims Administrator:** Include the original signed hard copy of the Stipulation of Dismissal in your Enrollment Package send the package to the Claims Administrator by US Mail or Overnight Delivery. You cannot submit these in pdf or by facsimile, for it has to be an original signature that could be filed in court if that time arrives. |
| | **F. ADDRESSES AND TIMELINESS OF SUBMISSIONS** |
| F.1. | **Sending Hard Copies to the Claims Administrator:** Send hard copies to the Claims Administrator by US Mail or Overnight Delivery as follows:<br><br>*Mailing Address:*         Claims Administrator<br>                          P.O. Box 85031<br>                          Richmond, Virginia 23285-5031<br><br>*Delivery Address*<br>*and Alternate Mailing Address:*   Claims Administrator<br>                          115 S. 15th Street, Suite 400<br>                          Richmond, Virginia 23219-4209 |
| F.2. | **Enrollment Deadlines:** As specified in Section 1.2.2.2 of the Settlement Agreement (as amended by the Second Amendment), to be considered for an Interim Payment under Section 4.1 of the Settlement Agreement, Pro Se Claimants must submit a signed Enrollment Form and all other Enrollment Materials to the Claims Administrator on or before March 31, 2008. Pro Se Claimants may still Enroll in the Program after March 31, 2008, using the same methods described in these Instructions, but they will not be considered for any Interim Payment made by the Claims Administrator. |

| ENROLLMENT INSTRUCTIONS FOR UNREPRESENTED CLAIMANTS ||
|---|---|
| A. GENERAL INSTRUCTIONS ||
| F.3 | **Timeliness of Submissions:** Section 16.2 of the Settlement Agreement prescribes how delivery is measured for purposes of complying with deadlines. For purposes of the March 31, 2008, deadline described above:<br>(a) Mailed documents must be postmarked on or before March 31, 2008.<br>(b) Documents delivered by overnight delivery must be placed in the hands of a carrier on or before March 31, 2008.<br>(c) Emailed documents must be sent on or before March 31, 2008, but only if the email is sent and is capable of being received by the Claims Administrator prior to midnight on March 31, 2008. Because of possible heavy email traffic, emails sent too close to midnight may not be received by the Claims Administrator until after midnight and will risk not meeting the deadline. |

## DESCRIPTION OF SETTLEMENT AGREEMENT[1]

Merck & Co., Inc. ("Merck") has entered into a Settlement Agreement ("Agreement") with certain plaintiffs' counsel ("Negotiating Plaintiffs' Counsel") in order to establish a nationwide settlement program to resolve the claims of certain individuals who have suffered a heart attack, stroke, or sudden cardiac death resulting from their use of Vioxx (the "Vioxx Claimant(s)").

### Activation of the Settlement Program

In order for claims to be paid under the Settlement Program, counsel representing Vioxx Claimants must file with the relevant court no later than January 15, 2008, a Registration Affidavit for every Vioxx client they represent as primary counsel, regardless of whether the client suffered a heart attack, ischemic stroke, or sudden cardiac death, resulting from Vioxx. The Registration Affidavit will contain basic information about each client and the injury the client alleges.

After the Registration Affidavits have been submitted, the Claims Administrator will calculate the total number of Vioxx Claimants that are eligible to participate ("Eligible Claimants") in the Settlement Program. A Vioxx Claimant will be considered eligible to participate in the Settlement Program if:

- prior to November 9, 2007, the Claimant has filed a Vioxx lawsuit pending in any jurisdiction or a Vioxx claim that was tolled under the Tolling Agreement established by the MDL Court; and
- the Claimant alleged in his/her lawsuit or tolling paperwork that the Claimant (or the Deceased or minor for whom the Claimant is the Legal Representative) suffered a heart attack, ischemic stroke, or sudden cardiac death as a result of Vioxx ingestion.

In order for the Settlement Program to be activated and for Merck to be required to fund the settlement, at least 85% of all Eligible Claimants must agree to participate in the Settlement Program. All documents necessary for a Vioxx Claimant to participate in the Settlement Program must be submitted to the Claims Administrator by March 1, 2008. Sufficient numbers of Eligible Claimants from each of the following categories must agree to participate in the Settlement Program in order for the Program to be Activated:

- Vioxx Claimants registered as alleging a heart attack or myocardial infarction ("MI Eligible");
- Vioxx Claimants registered as alleging a stroke or other qualifying ischemic cerebrovascular event ("IS Eligible");
- Vioxx Claimants registered as alleging use of Vioxx for more than 12 months prior

---

[1] This Description of Settlement Agreement is an overview and is meant as a summary to describe the Settlement Program only in a general way. For a complete description, it is necessary to refer to the specific terms of the settlement documents themselves.

1

to a qualifying heart attack ("MI") or qualifying stroke ("IS");
- Vioxx Claimants registered as alleging death as an injury.

### Eligible Claimants - Required Documents

The following documents (the "Claims Package") must be submitted to the Claims Administrator in order for an Eligible Claimant to participate in the Settlement Program:

- a Release and Dismissal Stipulation, signed by the Eligible Claimant (and, under some circumstances, by any other individual who may have an interest in the claim ("Derivative Claimant") must be submitted to the Claims Administrator by the Eligible Claimant's lawyer no later than February 29, 2008; and
- medical records documenting the injury ("Event Records"), including a death certificate and autopsy report (if performed) in death and/or sudden cardiac death cases, follow-up medical records, and records documenting Vioxx usage, (together, the "Claims Package") all must be submitted no later than July 1, 2008.

### Qualifying for Compensation in the Settlement Program

In order for an Eligible Claimant to qualify for compensation through the Settlement Program, the following threshold criteria must be met:

- medical records must confirm that the Eligible Claimant suffered a heart attack, ischemic stroke, or sudden cardiac death; and
- medical or pharmacy records must establish that the Eligible Claimant received at least 30 Vioxx pills within 60 days prior to the injury; and
- medical or pharmacy records must confirm that Vioxx was being used by the Eligible Claimant within 14 days of the Vioxx-related heart attack, ischemic stroke, or sudden cardiac death.

**Please note that there is no need for an Eligible Claimant to contact his/her attorneys regarding proof of medical condition or Vioxx use. An Eligible Claimant's Primary Counsel will contact the Eligible Claimant if further information is needed.**

A determination by the Claims Administrator that an Eligible Claimant does not qualify for payment through the Settlement Program will be reviewed by a Committee. The Claims Administrator shall give written notice of the Committee's decision to the relevant Eligible Claimant's Primary Counsel.

If the Eligible Claimant is determined not to qualify for payment under the terms of the Program, the Eligible Claimant may (a) return to the tort system and receive back the Release and Dismissal Stipulation, upon the submission of a Future Evidence Stipulation to the Claims Administrator; or (b) take no action for thirty (30) days, after which the Eligible Claimant's Vioxx case shall be dismissed; or (c) appeal the negative determination to the Special Master, who will

undertake a de novo review of the Eligible Claimant's complete Claims Package. If the Eligible Claimant appeals the negative determination to the Special Master and loses the appeal, the Eligible Claimant's case shall be dismissed and the Eligible Claimant shall have no further rights under the Settlement Program or in the tort system. If the Eligible Claimant wins his/her appeal to the Special Master, the relevant claim shall be submitted to the Program's valuation process.

If an Eligible Claimant is determined by the Claims Administrator, Committee, or Special Master to qualify for payment under the Settlement Program (the "Qualifying Claimant"), the value of the claim will then be assessed by the Claims Administrator using a grid point system. Claims shall be evaluated by the Claims Administrator in the order in which the Claims Administrator receives a complete Claims Package.

## Valuation Process for Qualifying Claims

A point system is being used in order to ensure that the valuation of claims is consistent across similarly situated Qualifying Claimants and reflects the likely relative value of each claim within the tort system. Once the total number of Qualifying Claimants is known, as well as all Qualifying Claimants' verified injury levels and risk factors, the Claims Administrator will be able to determine the precise dollar value of each valuation point. To determine the precise dollar value of each MI point, the Claims Administrator will divide the total number of points awarded to Qualifying Claimants who alleged a heart attack or sudden cardiac death into the total MI Aggregate Settlement Amount of approximately $4 billion. Similarly, the total number of points assigned to Qualifying Claimants who alleged an ischemic stroke or death from stroke will be divided into the total IS Aggregate Settlement Amount of approximately $850 million to determine the precise dollar value of each IS point.

Under the point system, the Claims Administrator will be individually evaluating the medical records in support of each Qualifying Claimant along several dimensions. The claim will first be assigned a base point total, which will reflect the Qualifying Claimant's injury type (i.e., MI or IS), level of injury within the injury type, age at the time of the MI or IS, and duration of Vioxx use. Claims involving longer Vioxx use, a younger Vioxx Claimant, and a more severe injury will be assigned more points than claims involving briefer Vioxx use, an older Vioxx Claimant, and a less severe injury.

Each Qualifying Claimant's base point total will then be adjusted by the Claims Administrator based on various standardized liability adjustments and risk factor adjustments. These adjustments reflect aspects of the Qualifying Claimant's Vioxx use and medical history that would be expected to affect the value of the Qualifying Claimant's claim within the tort system, and will be based upon a Qualifying Claimant's Event Records, follow-up records, and any Profile Form submitted to Merck or the Court.

The liability adjustments are:

- consistency of the Qualifying Claimant's Vioxx usage in the twelve (12) months

3

preceding the Event; and
- whether the Qualifying Claimant's Vioxx use and the MI or IS occurred prior to March 9, 2000, between March 9, 2000 and April 11, 2002, or after the April 11, 2002 label change.

The <u>risk factor adjustments</u> are:

- smoking history
- high cholesterol
- hypertension
- diabetes
- obesity
- family history of heart attack or ischemic stroke or other ischemic event
- alcohol abuse
- heart attack or coronary artery bypass surgery (CABG) before starting Vioxx
- coronary artery disease (CAD) before starting Vioxx
- illicit drug use within 5 years of the event
- diagnosed vascular diseases before starting Vioxx
- stroke or TIA (transient ischemic attack) before starting Fioxx (IS cases only)
- carotid artery disease or carotid artery procedure before starting Vioxx (IS cases only)
- atrial fibrillation or heart failure before starting Vioxx (IS cases only)
- migraine headaches (IS cases only)
- use of hormone replacement therapy within 1 month of event if initiated within 1 year of event (IS cases only)
- vigorous exercise within two hours of event
- total joint arthroplasty or other major surgery within 5 days of event
- head trauma within 5 days of event (IS cases only)

The Claims Administrator shall notify each Qualifying Claimant of his/her total point award. A Qualifying Claimant may appeal that award to the Special Master, who shall undertake a de novo review of the claim; this means that the number of points accorded the claim by the Special Master may increase, decrease, or stay the same relative to the number of points originally awarded by the Claims Administrator. The decision of the Special Master shall be final, binding, and non-appealable.

Because, as explained above, each Qualifying Claimant's total number of points is ultimately subject to determination by the Claims Administrator upon a review of the Qualifying Claimant's medical and other records, and because the precise dollar value of each MI and IS point cannot be known with certainty until the total number of points of all Qualifying MI and IS Claims is known, the precise settlement value of a claim cannot be known at this time. In the meantime, however, a Vioxx Claimant may calculate the *approximate likely range* of values for his/her claim, assuming that the claim qualifies, by completing the questionnaire available on the internet at www.OfficialVioxxSettlement.com. This website was set up by the Plaintiffs' Negotiating

4

Committee to assist in evaluating and understanding the Settlement Program. In addition, two examples of Claims Valuation calculations are attached to this "Description of Settlement Agreement."

## Total Value of Settlement and Number of Potentially Qualifying Claimants

The total gross payments to be made to Qualifying Claimants under the Agreement is $4.85 billion, with approximately $4 billion of that sum to be allocated among MI Qualifying Claimants and approximately $850 million of that sum to be allocated among IS Qualifying Claimants. At the present time, there are estimated to be approximately 29,000 potentially eligible Claimants nationwide alleging MI, and approximately 17,000 potentially eligible Claimants nationwide alleging IS.

In addition to the above funds, Merck shall deposit an initial $3 million into an Administrative Expense Fund to pay for the claims evaluation and other processes under the Settlement Agreement. In addition, the net investment earnings on the funds deposited by Merck into each of the MI and IS Settlement Funds shall be periodically transferred by the Escrow Agent to the Administrative Expense Fund.

## Payment of Qualifying Claims

Interim Settlement Payments

Qualifying Claimants who have submitted a properly and fully executed Release no later than February 29, 2008, and who are not eligible for a Fixed Payment (see below) shall be eligible for an Interim Payment. No Interim Payment to any Qualifying MI or IS Claimant shall be less than $5,000.00.

The amount of such Interim Payments for MI claims shall be determined by the Claims Administrator after approximately August 1, 2008. The Claims Administrator shall estimate the total number of points that will ultimately be awarded to all Qualifying MI Claimants, and the estimated value of each MI point. Interim payments in the amount of 40% of each Qualifying MI Claimant's gross estimated Final Settlement Payment shall be made on a rolling basis.

Similarly, the amount of such Interim Payments for Qualifying IS Claimants shall be determined by the Claims Administrator after approximately February 1, 2009. The Claims Administrator shall estimate the total number of points that will ultimately be awarded to all Qualifying IS Claimants, and the estimated value of each IS point. Interim payments in the amount of 40% of each Qualifying IS Claimant's gross estimated Final Settlement Payment shall be made on a rolling basis.

The per-point value of Interim Payments may change as more claims are processed and better

information is available regarding the likely ultimate value of each MI and IS point.

Fixed Payments

Qualifying Claimants who are notified by the Claims Administrator that their total MI or IS points are less than a specified amount shall have the option to receive a gross Fixed Payment of $5,000 instead of the (likely much smaller) award they would receive if all appropriate risk factor and liability adjustments were made to their base point total. Qualifying Claimants eligible for the Fixed Payment who do not choose to receive the Fixed Payment shall receive de novo review of their claim by the Special Master. The Special Master shall award 0 to 5 points to each such MI claim, and shall award 0 to 1 point for each such IS claim, and the determination of the Special Master shall be final and non-appealable.

Extraordinary Injury Payments

Qualifying Claimants who would like their claim to be considered as an Extraordinary Injury may apply through their Primary Counsel to receive an Extraordinary Injury Payment ("EI Payment"). Such Qualifying Claimant may be eligible for an EI Payment if: (a) the Qualifying Claimant is not eligible for a Fixed Payment; and (b) the Qualifying Claimant has specified, documented, economic damages of at least $250,000. Such damages include the Qualifying Claimant's past or future out-of-pocket medical expenses and the Qualifying Claimant's past lost wages to the extent that such expenses or lost wages are the result of the Qualifying Claimant's heart attack or stroke and have neither been reimbursed nor are eligible for reimbursement from any other source.

Each Qualifying Claimant who qualifies for, and timely applies for, an EI Payment shall receive such a payment in an amount to be based on criteria to be determined by the Claims Administrator, not to exceed $600,000 for economic damages. Any such EI Payment shall be in addition to the Qualifying Claimant's Final Payment (see below). EI Payments for all Qualifying MI Claimants shall not in the aggregate exceed $195 million; EI Payments for all Qualifying IS Claimants shall not in the aggregate exceed $105 million. All proposed EI Payments shall be reduced pro rata if necessary to meet these restrictions.

Final Payment

After, and only after, (i) all Qualifying Claimants have completed the claims valuation process and all points awards have become final; and (ii) all possible Fixed Payments and Extraordinary Injury Payments have been determined; and (iii) all audits have been completed, the Claims Administrator shall determine the MI and IS Point Values.

The total gross value of each Qualifying MI and IS Claimant's claim can then be determined by multiplying the Qualifying Claimant's total number of points by the MI or IS Point Value, as appropriate. The final gross payment to be made to each such Qualifying Claimant shall be the total value of the claim, minus any Interim Payment made to the Qualifying Claimant. In addition, the

6

Final Payment shall be made only when the Claimant and his/her Primary Counsel represent and warrant that any and all Vioxx-related Governmental Authority (e.g., Medicare and Medicaid) liens that exist on the Qualifying Claimant's settlement monies have been satisfied and discharged.

## Attorneys' Fees and Litigation Costs and Expenses

The attorney's fees to be paid by each settling Qualifying Claimant to his/her individual attorney(s) shall not exceed those set forth in the Qualifying Claimant's attorney-client contract. In order to compensate the "Common Benefit Attorneys" who developed the Vioxx litigation against Merck and ultimately negotiated the Settlement Program, an assessment of common benefit attorneys' fees will be imposed at no more than 8% of the gross amount recovered for every Qualifying Claimant who is registered under the terms of the Agreement. This attorneys' fees assessment shall not increase the total attorneys' fees payable by any Qualifying Claimant, but shall be deducted from the total amount of attorneys' fees payable by each Qualifying Claimant under his/her individual attorney-client contract.

The total expenses to be reimbursed by each settling Qualifying Claimant will include case-specific expenses and general expenses (consistent with the terms of the Qualifying Claimant's individual attorney-client contract), as well as common benefit expenses. Case-specific expenses are those that benefit a specific client (e.g., the costs of obtaining a particular client's medical or pharmacy records). General expenses are those that benefit a larger group of clients represented by the same attorney (e.g., the fees paid a medical expert), and are allocated equally or on a pro-rata basis (depending on the terms of the individual attorney-client contract) across the group of benefitted clients. Common benefit expenses are those incurred by the Common Benefit Attorneys in their work on behalf of Vioxx Claimants nationwide, and shall be as approved by the Claims Administrator.

## Irrevocability of the Submission of a Release

**Submission of a Release by an Eligible Claimant or the Eligible Claimant's Primary Counsel is irrevocable.** No Eligible Claimant may under any circumstances or for any reason request the return of his/her Release or Dismissal Stipulation, or otherwise unilaterally exit the Settlement Program, unless specifically provided for in the Settlement Program Agreement.

**By submitting the Release, the Eligible Claimant is agreeing to be bound by all terms and conditions of the Settlement Program, including agreeing to accept the final value accorded the Eligible Claimant's claim under the Program's claim valuation process, if the Eligible Claimant qualifies for compensation through the Settlement Program.**