IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE VIOXX PRODUCTS LIABILITY LITIGATION

          MDL No. 1657 (FALLON)
          CA 05-3820L

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF WEST VIRGINIA

WILLIAM DAVID LOUGH, Individually,
JOYCE MARIE SMITH, Individually, and
FLOYD D. CHAPLIN, Individually,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.                                      No. 05:05-CV-34 (STAMP)

MERCK & CO., INC., a foreign corporation;
RITE AID OF WEST VIRGINIA, INC.,
a West Virginia corporation; and
DISCOUNT EMPORIUM, INC., d/b/a
DRUG EMPORIUM, a West Virginia corporation,

        Defendants.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR HEARING
AND EXPEDITED RULING ON PLAINTIFFS' MOTION TO REMAND
ACTION TO STATE COURT DUE TO LACK OF SUBJECT-MATTER
JURISDICTION, OR ALTERNATIVELY, FOR SUGGESTION OF
REMAND TO TRANSFEROR COURT ON BASIS OF ACTION
<u>INVOLVING CLAIMS WHICH ARE UNIQUE OR UNCOMMON</u>

    Now come the plaintiffs, by counsel, and respectfully submit the following memorandum in support of plaintiff' motion requesting that Your Honorable Court set a hearing and/or expedite your ruling on plaintiffs' pending motion to remand this action to the Circuit Court of Marshall County, West Virginia, or, alternatively, requesting that Your Honorable Court make a

suggestion to the Panel that this action or certain of its claims be remanded to the transferor court.

Plaintiffs' motion to remand is based upon a lack of subject-matter jurisdiction inasmuch as plaintiffs' complaint asserts only state-law claims and complete diversity of citizenship does not exist.  Defendants neither have nor can meet their heavy burden of demonstrating that the non-diverse, pharmacy defendants have been fraudulently joined.

This action and plaintiffs' motion to remand have been pending for over three years and plaintiffs respectfully submit that motions to remand in removal actions which are based on a lack of subject-matter jurisdiction should be ruled upon with a minimum of delay.   Moreover, since the filing of plaintiffs' motion to remand, recent rulings by the West Virginia Supreme Court of Appeals reject certain defenses raised by defendants and further demonstrate that the pharmacy defendants have not been fraudulently joined.

Lastly, this action is also rather unique and its claims fairly uncommon to the other cases pending in this Court because it includes claims under the West Virginia Consumer Credit and Protection Act, W.Va.Code 46A-6-101, et seq., and claims against pharmacies based upon unique West Virginia statutory law, W.Va.Code §§ 30-5-12(a) & 30-5-18.

I. Statement of Case

This civil action was transferred to this Court, over plaintiffs' objections, by Order entered on August 11, 2005, by the Judicial Panel on Multidistrict

Litigation as a "tag-along action" pursuant to 28 U.S.C. § 1407.  By way of providing a brief procedural history of this case, on February 15, 2005, plaintiffs, who are three individual West Virginia citizens, filed their complaint on behalf of themselves and all other West Virginia citizens similarly situated in the Circuit Court of Marshall County, West Virginia.  The named defendants consist of Merck & Co., Inc. (hereinafter "Merck"), the manufacturer and promoter of the withdrawn drug Vioxx, along with Rite Aid of West Virginia, Inc. and Discount Emporium, Inc., two pharmacies which are West Virginia corporations (hereinafter "the pharmacy defendants") that promoted and sold the defective and deleterious drug to plaintiffs.

On March 22, 2005, Merck removed this case to the United States District Court for the Northern District of West Virginia, contending that the pharmacy defendants were fraudulently joined and that complete diversity of citizenship, therefore, existed in support of removal jurisdiction.[1]  On the same date as removal, Merck filed a motion to stay all proceedings in this action pending its transfer by the Judicial Panel on Multidistrict Litigation to this Court.  On April 6, 2005, plaintiffs filed a motion to remand and opposition to motion to stay, together with a memorandum of law in support thereof.  On May 2, 2005, Merck filed its response in opposition to the remand motion and its reply in support of

---

[1] The Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 9, 119 Stat. 14 (2005), does not govern this civil action inasmuch as it was filed before the Act's effective date of February 18, 2005.

3

the requested stay. Plaintiffs filed their reply in support of their motion to remand on May 5, 2005.

Pursuant to the notice and request of Merck, this civil action was included in Conditional Transfer Order No. 6 (CTO-6) to which plaintiffs filed a timely notice of opposition on May 3, 2005. On May 18, 2005, plaintiffs filed their motion to vacate Conditional Transfer Order No. 6 (CTO-6) to which Merck filed a response on June 6, 2005. On June 22, 2005, the Honorable Fredrick P. Stamp, Jr., United States District Judge for the Northern District of West Virginia entered a Memorandum Opinion and Order granting the motion to stay all proceedings pending transfer decision by the Judicial Panel on Multidistrict Litigation. As previously noted by Order entered on August 11, 2005, the Panel transferred this action as a "tag-along action" pursuant to 28 U.S.C. § 1407.

## II. Statement of Facts

Plaintiffs have asserted a number of claims arising out of injuries and damages they received as a result of ingesting Vioxx manufactured by Merck and sold to them by the pharmacy defendants. The common law and statutory claims set forth in this proposed class action include, but are not limited to, product liability, based upon theories of negligence, strict liability, failure to warn, and breach of warranties; intentional infliction of emotional distress; fraud; violation of the West Virginia Consumer Credit and Protection Act, W.Va.Code 46A-6-101, et seq.; and medical monitoring. Plaintiffs seek compensatory damages, equitable relief, and punitive damages.

The complaint alleges, in part, that Vioxx "contained toxins and when taken by human beings had a deleterious effect on the health of human beings, including damaging their heart, damaging their kidneys, causing stroke, and other related and unrelated damages, both temporary and permanent, and the drugs were unreasonably dangerous." Complaint at ¶ 10. Plaintiffs also allege that "[t]he Pharmacies negligently, carelessly, knowingly, wrongfully, recklessly and intentionally purchased, offered for sale, advertised, distributed and/or sold the drug to citizens of West Virginia, including plaintiffs and the class which plaintiffs seek to represent, and violated West Virginia Code, §30-5-18." Id. at ¶ 11. Plaintiffs further allege that "Defendant Pharmacies knew or should have known that Vioxx® was a dangerous drug and that they should warn their customers of the potential harmful effects thereof. . . . Defendant Pharmacies, knowing the harmful effects, failed and refused to provide warnings to your plaintiffs of the dangers to plaintiffs of ingesting the drug Vioxx®. Complaint at ¶¶ 25-26.

The plaintiffs were not warned of the hazards of Vioxx. Id. Indeed, even when Merck began to send incomplete warnings regarding the problems caused by Vioxx to the pharmacy defendants and others, neither those warnings nor the information contained therein were passed on to the plaintiffs. See Exhibit A to plaintiffs' motion to remand (affidavits of plaintiffs and attached prescribing information).

With respect to the marketing of Vioxx, Merck engaged in an

unprecedented campaign to induce the public to take Vioxx.  In 2001 alone, Merck spent $135 million to advertise arthritis drug Vioxx -- more than the $118 million Anheuser-Busch spent on Budweiser and nearly as much as the $155 million Coca-Cola spent on Coke Classic.  See Exhibit B to plaintiffs' motion to remand.  The massive promotion of Vioxx led to overuse of the drug:

> When first introduced in 1999, Vioxx was widely promoted as "super aspirin". However, the new study by Dr. G. Caleb Alexander of the University of Chicago found 70 percent of patients taking Cox-2 inhibitors like Vioxx were prescribed to patients at low risk of gastrointestinal bleeding and ulcers. These patients would have done just as well with traditional, less expensive and less dangerous drugs, like aspirin.
>
> Alexander indicated Merck's heavy marketing to doctors and the public led to the overuse of Vioxx.

See Exhibit C to plaintiffs' motion to remand.

In addition to the advertising, plaintiffs expect that the discovery will show that Merck purchased prescription data from the pharmacy defendants so that is could deploy its sales force to physicians whom it believed would be receptive targets for their promotional efforts.  See Exhibit D to plaintiffs' motion to remand.  The prescription data purchased from the pharmacies allowed Merck and the pharmacy defendants to increase to their Vioxx sales.  Id.  Furthermore, plaintiffs believe that discovery will show that one or both of the pharmacy defendants cooperated with Merck to do direct marketing to consumers to remind them to renew Merck prescriptions when they had not done so.

Plaintiffs have also alleged that "the defendants . . . set about to and did engage in unfair methods of competition and unfair or deceptive practices as set forth in West Virginia Code, § 46A-6-102(f) . . . . That the acts and conduct above violated West Virginia Code, Chapter 46A, Article 6, Section 101, et seq., in that defendant withheld information about the deleterious effects of the drug with the intent that plaintiffs and the class would purchase the drug when defendants knew if the truth were published or provided to plaintiffs that they would not purchase the drug . . . . [and]  [a]s a proximate result of the violation by defendants of the aforesaid statute your plaintiffs and the class suffered an ascertainable loss of money or property and plaintiffs are entitled to recover damages all as provided in West Virginia Code, § 46A-6-106." Complaint at ¶¶ 54-56.

### III. Discussion

While plaintiffs believe that the transferor court should have decided plaintiffs' motion to remand before granting any stay of proceedings, it is clear that in those cases in which stays are granted and transfer occurs the transferee court has both the power and duty to decide motions to remand to state court. In re Vioxx Products Liability Litigation, 360 F. Supp.2d 1352, 1354 (Jud.Pan.Mult.Lit. 2005) ("motions to remand . . . can be presented to and decided by the transferee judge"); In re Prudential Insurance Company of America Sales Practices Litigation, 170 F. Supp.2d 1346, 1347-48 (Jud.Pan.Mult.Lit. 2001) (same); In re Ivy, 901 F.2d 7, 9 (2d Cir. 1990) (same; also

holding that "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand"); In re Air Crash Disaster at Florida Everglades on December 29, 1972, 368 F. Supp. 812, 813 & n. 1 (Jud.Pan.Mult.Lit. 1973) (same). See also In re Plumbing Fixtures Litigation, 298 F. Supp. 484, 495-96 (Jud.Pan.Mult.Lit. 1968).

Additionally, apart from the jurisdictional issues, it is also clear that this Court upon close scrutiny of the issues and claims of a case has the power to remand a case or certain issues or claims of a case to the transferor court for resolution in advance of other actions pending before the transferee court. See In re Vioxx Products Liability Litigation, 360 F. Supp.2d at 1354; Rule 7.6 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 436-38 (Jud.Pan.Mult.Lit. 2001).

A.  This Court Must Determine Whether it Has Subject-Matter Jurisdiction Before it Can Address in Any Manner the Merits of Plaintiffs' Claims.

As previously noted, this action as well as plaintiffs' motion to remand has been pending for over three years. On November 9, 2007, this Court entered Pretrial Order No. 28 (Prima Facie Evidence of Usage, Injury and Causation) concerning, in part, requirements for expert opinions and reports and other documentary evidence which plaintiffs must satisfy in order to proceed or else face dismissal. Clearly, this Court must determine whether it has subject-matter jurisdiction before it can address in any manner the merits of plaintiffs' claims.

It has long been held by federal courts that "[w]ithout jurisdiction [a] court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex Parte McCardle, 7 Wall. 506, 74 U.S. 506, 514, 19 L.Ed. 264 (1868). Accord Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 93-102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (cautioning that a court may not resolve contested questions of law on the assumption that jurisdiction exists and reiterating that jurisdiction is the "first and fundamental question" that a court is "bound to ask and answer for itself."); Norwood v. Slammons, 788 F. Supp. 1020, 1023-24 (W.D.Ark. 1991) ("If a federal court were to devote its time and resources to a cause over which it lacked jurisdiction all actions taken by the court would be futile, void ab initio, and a complete nullity. Not only does this waste the resources of the federal judiciary, but also renders nugatory all efforts, time, and money expended by the litigants and their attorneys."); McWilliams v. Monarch Rubber Co., 70 F. Supp.2d 663, 665 n. 3 (S.D.W.Va. 1999) ("The Court's first duty is to resolve the motion to remand . . . . Application of the more restrictive Rule 12(b)(6) and Rule 56 standards urged by Defendant is more appropriately reserved for the state circuit court in the first instance."); Farkas v. Bridgestone/Firestone, Inc., 113 F. Supp.2d 1107, 1114-15 (W.D.Ky. 2000) (recognizing "the important principle that a court must have the power to decide an issue before passing judgement on the reasonableness of any particular solution. . . . As a court of limited jurisdiction,

this Court does not have the power to decide issues beyond the authority granted by Congress. However reasonable Firestone's suggestion, it does not confer on this Court jurisdiction that otherwise does not exist."); Stern v. Mutual Life Ins. Co. of New York, 968 F. Supp. 637, 639 (N.D.Ala. 1997) ("It is incumbent upon a court whose subject matter jurisdiction is questioned to make a determination as to whether it has, or does not have, jurisdiction over the action."); Collins v. Computertraining.com, Inc., 376 F. Supp.2d 599, 600-01 (E.D.Va. 2005) (court granting motion to remand and declining to address motion to compel arbitration and to stay proceedings pending arbitration and motion to dismiss; "Because the court finds the motion to remand to be dispositive, no other motions will be addressed in this Opinion and Remand Order."); Medical Society of State of New York v. Connecticut General Corp., 187 F. Supp.2d 89, 90 (S.D.N.Y. 2001) ("As a court of limited jurisdiction, this Court cannot proceed to the merits of a case unless it possesses the requisite subject matter jurisdiction. . . . It follows that when the question of subject matter jurisdiction is raised, this Court must normally resolve it as a preliminary matter before taking any other action in the case." (citing Steel Co., supra)); Meyers v. Bayer AG, 143 F. Supp.2d 1044, 1046-47 (E.D.Wis. 2001) ("What Steel Co. forbids is a court's assuming law-declaring power by deciding the merits of a case in the absence of verified subject matter jurisdiction."); Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 54 F. Supp.2d 1042, 1048 (D.Kan. 1999) ("For purposes of judicial economy, the jurisdictional issue should be resolved

immediately. If federal jurisdiction does not exist, the case can be remanded before federal resources are further expended. In the Court's view, judicial economy dictates a present ruling on the remand issue."). See also 28 U.S.C. § 1447(c) (a court is required to remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.").

B.  Defendants Have a Heavy Burden to Establish Fraudulent Joinder Under the Law of Both the Fifth Circuit and Fourth Circuit Courts of Appeal.

This Court has recently held:

> The removing defendant bears the burden of demonstrating that federal jurisdiction exists and that removal was proper. Jeringan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993). Typically, the removal statute is to be construed narrowly and in favor of remand to state court. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941). In order to demonstrate that resident defendants were improperly joined, the removing defendant must show that "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Gasch v. Hartford Accident & Ind. Co., [491 F.3d 278, 281 (5th Cir. 2007)]. . . . "Doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000). As a result, all disputed questions of fact and ambiguities of state law must be resolved in favor of the non-moving party. Gasch, [491 F.3d at 281-82}.

Commander v. Allstate Ins. Co., Civil Action No. 06-7189, 2008 WL 1766999, at * 1 (E.D.La. April 15, 2008) (Fallon, J.); Turner v. Murphy Oil USA, Inc., Civil Action No. 05-4206 (06-6343), 2008 WL 440300, at * 2 (E.D.La. Feb. 12, 2008) (Fallon, J.). See also Castoe v. State Farm Fire and Cas. Co., Civil Action No. 07-5573, 2007 WL 4291019, at * 2 (E.D.La. Dec. 4, 2007) (Lemelle, J.).

11

This approach is consistent with the standard followed in the Fourth Circuit Court of Appeals as discussed in plaintiffs' motion to remand and supporting memoranda. See Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir.1999); Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir.1993); Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir.1999); Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994); West Virginia ex rel. McGraw v. Minnesota Mining and Mfg. Co., 354 F.Supp.2d 660, 666 (S.D.W.Va. 2005).

C.   For Reasons Set Forth in Plaintiffs' Motion to Remand, Supporting Memorandum of Law, and Reply, Defendants Cannot Meet Their Heavy of Burden of Demonstrating Fraudulent Joiner; And Recent Decisions of the West Virginia Supreme Court of Appeals Further Support Plaintiffs' Position.

For reasons addressed in plaintiffs' motion to remand, supporting memorandum of law, and reply, defendants neither have nor can meet their heavy burden of demonstrating that the non-diverse, pharmacy defendants have been fraudulently joined. Moreover, since the filing of plaintiffs' motion to remand, recent rulings by the West Virginia Supreme Court of Appeals reject certain defenses raised by defendants and further demonstrate that the pharmacy defendants have not been fraudulently joined.

More specifically, in State ex rel. Johnson & Johnson Corp. v. Karl, 220 W.Va. 463, 647 S.E.2d 899 (2007), the Court held:

> Under West Virginia products liability law, manufacturers of prescription drugs are subject to the same duty to warn consumers about the risks of their products as other manufacturers. We decline to adopt the learned intermediary exception to this general rule.

Syl. Pt. 3, id. Accordingly, neither Merck, the manufacturer, nor the defendant pharmacies may rely upon the learned intermediary doctrine in order to transfer the duty to warn to prescribing physicians and away from themselves and/or to support a claim that the pharmacies have been fraudulently joined.

Additionally, in Phillips v. Larry's Drive-In Pharmacy, Inc., 220 W.Va. 484, 647 S.E.2d 920 (2007), the Court held that "[a] pharmacy is not a `health care provider' as defined by the Legislature in W.Va.Code, 55-7B-2(c) [1986]" of the West Virginia Medical Professional Liability Act ("MPLA"). Syl. Pt. 7, id. Therefore, neither Merck, the manufacturer, nor the defendant pharmacies may argue that the plaintiffs have not met the requirements of the MPLA in regard to their suit against the pharmacy defendants so as to contend that the pharmacies should be dismissed and/or to support a claim that the pharmacies have been fraudulently joined.

Accordingly, for all of the above reasons and those set forth in plaintiffs' motion to remand, supporting memorandum of law, and reply, it is clear that the pharmacy defendants have not been fraudulently joined, that this court lacks subject-matter jurisdiction, and that plaintiffs' motion to remand this action to state court must be granted.

D.  This Court Also Has the Power to Remand or Suggest Remand of this Action or Certain Claims or Issues of this Action to the Transferor Court for Resolution in Advance of other Actions Pending before this Court.

The Judicial Panel of Multidistrict Litigation has held:

> It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or actions can be remanded to their transferor districts for trial in advance of the other actions in the transferee district. . . . Should the transferee judge deem remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay.  See Rule 7.6, 199 F.R.D. at 436-38.  We are confident in the transferee judge's ability to streamline pretrial proceedings in these actions, while concomitantly directing the appropriate resolution of all claims.

In re Vioxx Products Liability Litigation, 360 F. Supp.2d at 1354.

As previously noted, to the best of plaintiffs' knowledge, this action is also rather unique and its claims fairly uncommon to the other cases pending in this Court because it includes claims under the West Virginia Consumer Credit and Protection Act ("CPA"), W.Va.Code 46A-6-101, et seq., and claims against pharmacies based upon unique West Virginia statutory law, W.Va.Code §§ 30-5-12(a) & 30-5-18.

The West Virginia Supreme Court of Appeals has acknowledged that plaintiffs may bring claims under the CPA against manufacturers, distributors and sellers of pharmaceutical drugs in class actions.  In re West Virginia Rezulin Litigation, 214 W.Va. 52, 585 S.E.2d 52, 74 (2003) (also noting that plaintiffs need not prove that they have been actually misled, i.e., reliance, as to any fraudulent conduct prohibited by § 46A-6-102(f)(13) of the West Virginia Consumer Credit and Protection Act).  Such claims pursuant to West Virginia's CPA do not appear to be within contemplation of the proposed national settlement of Vioxx cases pending before this Court.

Additionally, as discussed in plaintiffs' motion to remand, supporting memorandum of law, and reply, West Virginia common law and statutory law either expressly permits or does not preclude failure to warn claims being made against pharmacies.  W.Va.Code §§ 30-5-18 & 30-5-12(a); Walker v. Rite Aid of West Virginia, No. 2:02-1208, Slip Op. at pp. 15-16, 2003 WL 24215831, at ** 5-6 (S.D.W.Va. Oct. 14, 2003); Syl. Pt. 5, Peters v. Johnson, 41 S.E. 190 (W.Va. 1902). See also In re: Implants I, No. 93-C-9595, Slip Op. at p. 5 (W.Va.Cir.Ct. Kanawha Co. Dec. 6, 1994) (refusing to dismiss claim against hospital for supplying prescription medical device to be surgically implanted at hospital); Burch v. American Home Products, No. 97-C-204 (1-11), Slip. Op. at p. 6 (W.Va.Cir.Ct. Brooke Co. March 17, 1998) (refusing to dismiss product liability claims against physicians who directly dispensed prescription drugs in offices).[2]  To the best of plaintiffs' knowledge, such claims against pharmacies based upon unique West Virginia statutory law, W.Va.Code §§ 30-5-12(a) & 30-5-18, also does not appear to be common to other West Virginia cases or non-West Virginia cases which have been transferred to this Court and do not appear to be within contemplation of the proposed national settlement of Vioxx cases pending before this Court.

Accordingly, for all of the above reasons and as an alternative to granting plaintiffs' motion to remand to state court, plaintiffs respectfully request that

---

[2] Copies of the above slip opinions were attached to plaintiffs' motion to remand and supporting memorandum of law and plaintiffs' motion to vacate conditional transfer order (CTO-6) and supporting memorandum of law.

15

Your Honorable Court suggest to the Panel the remand to the transferor court of this action or such specific uncommon or unique claims (CPA claim and claims against pharmacy defendants) of this action for further resolution. See In re Vioxx Products Liability Litigation, 360 F. Supp.2d at 1354; Rule 7.6 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. at 436-38.

E.  This Court Would Also Benefit from Suggesting to the Panel that Cases Which Have Rather Unique or Fairly Uncommon Claims, Particularly those Which Also Have Jurisdictional Issues in Pending Motions to Remand to State Court, Be Remanded to the Transferor Courts for Resolution.

Plaintiffs respectfully submit that the limited or finite resources of this Court would also benefit from suggesting to the Panel that cases which have rather unique or fairly uncommon claims, particularly those which also have jurisdictional issues in pending motions to remand to state court, be remanded to the transferor courts for resolution.

More specifically, the Panel in In re Vioxx Products Liability Litigation, 360 F. Supp.2d at 1354, found that "[c]entralization under Section 1407 is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." (emphases added). As previously alluded, in that same decision the Panel also rejected the objection to transfer of plaintiffs in two cases which had pending motions to remand to state court. Id. The panel noted that such motions to remand could be decided by this Court following transfer. Id. ("We note that motions to remand in two actions, one action each in the District of Kansas and

16

the Eastern District of Missouri, as well as in any other MDL-1657 actions can be presented to and decided by the transferee judge.").

As a result of such holding of the Panel, the defendants in MDL-1657 have taken to removing large numbers of cases filed in various state courts regardless of whether subject-matter jurisdiction exists in federal court. Defendants then seek transfer and move to stay all proceedings pending such transfer, arguing that this Court can rule on any motions to remand following the transfer of such actions. The result has been a staggering number of remand motions which have not and as a practical matter cannot be heard by this Court on a reasonable basis and time frame due to its limited judicial resources.

The orders entered in various federal courts reflect the problem. For example, by November 4, 2005, Merck was arguing that there were "more than 125 [transferred Vioxx cases] with pending remand motions. North v. Merck & Co., Inc., 2005 WL 2921638, *2 (W.D.N.Y. 2005). By January of 2006, the number had almost doubled. Lame Bull v. Merck & Co., Inc., 2006 WL 194277, *2, n.1 (E.D.Cal. 2006) ("Defendant Merck asserts, and plaintiffs do not dispute, that the majority of courts have stayed approximately 200 Vioxx cases with pending remand motions."). By the end of 2006, the number had grown to over 375. Smith v. Merck & Co., Inc., 2006 WL 3842190, *1 (S.D.Ill. 2006) ("As Merck points out, over 2,700 VIOXX®-related cases have been stayed, including more than 375 cases in which plaintiffs sought remand.). State Liaison Counsel in MDL-1657 estimates that as of the year 2007 there were over 500 pending remand motions --

17

a number that is still growing -- and that only two of the over 500 remand motions have been considered and ruled upon.

From the reported cases resolving Merck's motions to stay, it appears that most of these removals and remands involve claims of the alleged fraudulent joinder of pharmacies, physicians, and/or drug company sales representatives. Each of these cases will involve the application of the laws of the particular states in which the cases arose.  Judicial economy and efficiency is not enhanced by requiring one federal judge, regardless of how intelligent and capable he or she may be, to learn the product liability, pharmaceutical, and medical malpractice laws of fifty different jurisdictions.

Plaintiffs respectfully submit that this Court can only reasonably be asked and expected to do so much by itself; yet there are over 500 cases with pending motions to remand which not only deserve to be timely heard but which must be heard before their merits can be addressed.  Plaintiffs submit that this Court's burden can begin to be eased if it suggests to the Panel that those cases with rather significant or fairly uncommon claims, particularly those with pending motions to remand to state court, be remanded to their transferor courts for resolution.

### IV. Conclusion

For all of the foregoing reasons, plaintiffs respectfully move Your Honorable Court to set a hearing and/or expedite your ruling on plaintiffs' pending motion to remand this action to the Circuit Court of Marshall County,

West Virginia, and, for reasons set forth therein, request that Your Honorable Court grant plaintiffs' motion to remand.  Alternatively, plaintiffs respectfully request that Your Honorable Court suggest to the Panel the remand to the transferor court of this action--or the uncommon or unique claims (CPA claim and claims against pharmacy defendants) of this action--for further resolution.  Lastly, plaintiffs further request any other relief deemed appropriate by the Court, including an award of reasonable costs and attorney fees.

        WILLIAM DAVID LOUGH, Individually,
        JOYCE MARIE SMITH, Individually, and
        FLOYD D. CHAPLIN, Individually
        on behalf of themselves and all others
        similarly situated,

        By Counsel


        <u>/s/ Marvin W. Masters</u>
        Marvin W. Masters
        West Virginia Bar No. 2359
        Richard A. Monahan
        West Virginia Bar No. 6489
        The Masters Law Firm LC
        181 Summers Street
        Charleston, West Virginia  25301
        (304) 342-3106

Carl N. Frankovitch
West Virginia Bar No. 4746
Mark A. Colantonio
West Virginia Bar No. 4238
Michael G. Simon
West Virginia Bar No. 5551
Frankovitch, Anetakis, Colantonio & Simon
337 Penco Road
Weirton, West Virginia  26062-3828
(304) 723-4400


Scott S. Segal
West Virginia Bar No. 4717
The Segal Law Firm
810 Kanawha Boulevard, East
Charleston, West Virginia 25301
(304) 344-9100


J.C. Powell
WV State Bar No. 2957
Anthony J. Majestro
WV State Bar No. 5165
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Post Office Box 3081
Charleston, West Virginia  25331
(304) 346-2889

F:\4\212\b002.doc