**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: | * | |
| ALL CASES | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * *

<u>MERCK'S SUPPLEMENTAL BRIEF IN OPPOSITION TO CERTAIN PLAINTIFFS'
AND THEIR COUNSEL'S EMERGENCY MOTION FOR MODIFICATION AND/OR
SUSPENSION OF PRETRIAL ORDER NO. 28 AND REQUEST FOR
EXPEDITED TELEPHONIC HEARING</u>

On April 25, 2008, the Court heard argument – via telephone conference – on certain

plaintiffs' motion to modify or suspend the requirements of PTO 28.  At that time, the Court

invited the parties to supplement their briefing on certain plaintiffs' motion.  Merck respectfully

submits this supplemental memorandum in further support of its opposition to that motion.

During the April 25, 2008 telephonic hearing, plaintiffs' counsel Ann Oldfather

principally argued that the requirements of PTO 28 should be modified or suspended as to two

categories of plaintiffs:  (1) those asserting myocardial infarction ("MI") or ischemic stroke

("IS") claims who did not participate in the Resolution Program; and (2) those asserting other

injuries, such as deep vein thrombosis ("DVT") or pulmonary embolism ("PE"), who were not

eligible for the Resolution Program.  These arguments ring hollow and should be rejected.

***First***, counsel Oldfather's argument that MI and IS plaintiffs cannot comply with PTO 28

until the PSC provides plaintiffs' counsel with trial packages disregards the seven-year history of

this litigation and the lessons of the 16 Vioxx trials that have already taken place.  ***Second***, with

respect to non-MI and non-stroke cases, counsel Oldfather cannot be heard to argue that

compliance with PTO 28 requirements for basic information about usage, injury, and causation is too onerous – such facts should have been collected and verified *before* these cases were filed. In addition, as with MI and stroke cases, the vast amount of discovery and trial work to date provides plaintiffs with ample data and information to comply with the basic requirements of PTO 28.

For all of these reasons, certain plaintiffs' motion to modify or suspend the requirements of PTO 28 should be denied.

I.   **THERE IS NO REASON TO MODIFY OR AMEND PTO 28 WITH REGARD TO MI OR STROKE CASES IN LIGHT OF THE ADVANCED NATURE OF THE VIOXX LITIGATION.**

Counsel Oldfather's argument that plaintiffs' counsel with MI or stroke claims not participating in the Resolution Program need a trial package to comply with the basic requirements of PTO 28 – after more than three years of Vioxx proceedings in the MDL – is wholly unpersuasive.

During the telephone conference on the motion to modify or suspend the requirements of PTO 28, Ms. Oldfather argued that it is the PSC's responsibility to develop generic causation evidence and that other plaintiffs' counsel do not have the data and other information needed to build a specific causation report, as required by PTO 28, because the MI and stroke trial packages have not been delivered in final form to plaintiffs' counsel.  (*See, e.g.*, Tr. 5:25-6:11, *In re Vioxx Prods. Liab. Litig.*, Apr. 25, 2008 ("Apr. 25 Tr.").)  Given that the Vioxx litigation is nearly seven years old, and the MDL is well over three years old, it is hard to take seriously the suggestion that trial packages are needed in order to prepare case-specific causation reports for MI and stroke cases.  To date, there have been 16 Vioxx cases tried to verdict in which more than a score of experts retained by plaintiffs have testified regarding causation.  The trial transcripts from those trials are (and have been) available to plaintiffs' counsel and presumably

2

plaintiffs' counsel have access to the expert reports that were served in those cases.  In any event,

there is no rule that a case must be trial-ready before a plaintiff is required to substantiate his or

her claims – the very purpose of a *Lone Pine* order like PTO 28 is to make sure plaintiffs' claims

have some foundation before the parties spend substantial time and money litigating them.  *See*

*Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) ("*Lone Pine* orders are designed

to handle the complex issues and potential burdens on defendants and the court in mass tort

litigation.").

       In short, counsel Oldfather's argument that a trial package is needed to provide a basis for

case-specific expert reports in MI and stroke cases asks the Court to ignore everything that has

occurred in this litigation and should be rejected.

**II.**      **THERE IS NO REASON TO MODIFY OR AMEND PTO 28 WITH REGARD TO DVT AND PE CASES.**

       With respect to DVT and PE cases, the Court should deny plaintiffs additional time to

comply with PTO 28 for two reasons:  (1) plaintiffs' counsel have an independent obligation to

verify the causal nexus for such cases ***before*** they are filed; and (2) plaintiffs have already

received a wealth of information about their claims through the MDL discovery process.

       ***First***, plaintiffs' counsel representing DVT/PE plaintiffs cannot shirk their responsibility

to independently verify a possible causative basis for DVT and PE claims by merely asserting

that it is the PSC's responsibility to "develop that generic causation proof."  (Apr. 25 Tr. 6:3.)

Counsel Oldfather argued during the telephone conference that she cannot comply with the

requirements of PTO 28 regarding DVT and PE claims because it is not possible to prepare an

expert report on these claims without knowing whether the PSC is preparing trial packages for

non-MI and non-stroke cases.  However, it is the responsibility of each individual lawyer to

determine whether there is a medical basis for a lawsuit – *i.e.*, that there is substantial scientific

927103v.1

evidence of a causal link between the drug and the alleged injury – ***before*** filing suit.

Remarkably, Ms. Oldfather's position appears to be that plaintiffs' counsel should be allowed to

file claims even though they have no medical basis for doing so – and then wait around for

someone else to develop a theory of causation while the case languishes in an MDL proceeding

for years.  The Court expressed this very concern during the telephone conference:

> THE COURT:  [Y]ou are just not focused on the fact that this is not a case that's
> just started.  As I have said a number of times, I have cases before me now that
> have been seven years in the process.  It's inconceivable to me that somebody
> would not have an expert that is able to at least give some report on a case that's
> in your office for seven years.
>
> MS. OLDFATHER:  Well, Judge, I can give a report.
>
> THE COURT:  Do you wait until –
>
> MS. OLDFATHER:  I can give a report that this person has been injured, but I
> can't give a report that it's been caused by Vioxx until I can hand-feed my experts
> the trial package.

(*Id.* 34:20-35:7.)

Counsel's admission that she cannot produce an expert to confirm her clients' alleged

injuries ***and*** state that the injuries are related to Vioxx is no reason to suspend or modify PTO 28.

On the contrary, it merely confirms that the winnowing order serves a legitimate purpose in this

instance.  Too often, mass tort proceedings are clogged with groundless cases filed by lawyers

who make no effort to determine their legitimacy.  At this stage, it is entirely proper to require

plaintiffs' counsel to identify the alleged basis for the allegations in the PE and DVT lawsuits, as

well as other cases that are outside the mainstream of this litigation.  Plaintiffs have filed many

such claims, including cases alleging heart "flutters," kidney stones, "nervous sleep,"

hypertension, gastrointestinal bleeding, shortness of breath, dizziness, headache, insomnia,

nausea, "nervous condition," enlarged heart, phlebitis, rash, viral meningitis, and acid

927103v.1

reflux.  Plaintiffs must provide a causal basis for these lawsuits, or the rules requiring a

legitimate basis for a claim before filing it would be meaningless.  *See Baker v. Chevron USA,*

*Inc.*, No. 1:05-CV-227, 2007 U.S. Dist. LEXIS 6601, at *2 (S.D. Ohio Jan. 30, 2007) ("The basic

purpose of a *Lone Pine* order is to identify and cull potentially meritless claims and streamline

litigation in complex cases involving numerous claimants, such as this one.").

Moreover, PTO 28 does not require plaintiffs to file a "final" expert report – or even a

report of any expert who will appear at trial.  Nor does PTO 28 require that all expert reports be

filed at the same time.  Rather, PTO 28 merely requires plaintiffs to identify an expert who will

confirm the plaintiff's injury and state that the injury is related to Vioxx.  As the Court noted

during the telephone conference on plaintiffs' motion, PTO 28 requires plaintiffs to set forth a

"prima facie" basis for their claims – "something that the plaintiff lawyer, when they sign up the

case in a situation like this, I would assume that someone is going to a doctor or being treated for

it or has some medical reason for coming in to talk to counsel or for contemplating filing a suit."

(Apr. 25 Tr. 23:7-11.)  Put another way:  plaintiffs' counsel presumably consulted with a medical

expert to determine whether there was a basis for PE/DVT claims before going to court and

filing scores of such claims.  Certain plaintiffs' inability to comply with PTO 28 – which merely

requires plaintiffs to provide, in the Court's words, a "ticket for admission on the bus" (*id.* 24:11)

– indicates that the basis for these suits has not been properly investigated, as required by Rule

11.

***Second***, Ms. Oldfather's argument that plaintiffs have not had the opportunity to conduct

discovery with respect to DVT and PE claims is a red herring.  Since Vioxx-related product

liability litigation commenced nearly seven years ago, Merck has produced ***millions*** of pages of

927103v.1

documents, including every clinical study conducted.[1]  As Merck stated in its opening brief, the Company did not segregate that material based on the injury asserted.  Thus, there is no treasure trove of DVT or PE causation documents that Merck is withholding from plaintiffs.  Indeed, the terms "deep vein thrombosis," "DVT," "pulmonary embolism," and "PE" appear, collectively, in over 175,000 documents *produced to plaintiffs in this MDL proceeding*.[2]  In short, after nearly seven years of litigation, millions of pages of document production, and 16 jury verdicts, plaintiffs cannot credibly argue that they need more discovery to state the causative basis for their claims.  As the Court pointed out during the telephone conference on plaintiffs' motion, given the advanced state of the Vioxx proceedings, "[i]t seems to me during that time somebody, either the plaintiff or plaintiff counsel, would get some basis for maintaining those cases."  (Apr. 25 Tr. 27:3-5.)

Moreover, as the Court and parties are aware, the PSC decides whether to prepare trial packages and, if so, on which types of claims those trial packages will focus.  Here, the PSC has apparently decided to prepare trial packages for MI and stroke cases.[3]  Beyond these injuries – which dominate the filings – there are an array of other injuries alleged, as noted above.  The fact that the PSC has not prepared trial packages for other claims does not entitle plaintiffs' counsel to continue asserting allegations for which they have essentially admitted they have no basis.

For this reason too, certain plaintiffs' motion should be denied.

---

[1]     Counsel Oldfather argues that her principal concern is for PE and DVT claims although other counsel may be concerned about other injury claims that they might have in their respective inventories.

[2]     Notably, the clinical study results show that – with respect to PE and DVT claims – more PEs occurred among the patients taking a placebo than among patients on Vioxx.  The same is true for DVT events.  The attached charts set forth these results.  (*See* Table 1 – Pulmonary Embolism in Various Vioxx Clinical Trials (attached as Ex. 1); Table 2 – Deep Venous Thrombosis (DVT) in Various Vioxx Clinical Trials (attached as Ex. 2).)

[3]     Merck understands that the PSC will be submitting a separate letter to Ms. Oldfather and the Court addressing this issue.

927103v.1

## CONCLUSION

For the foregoing reasons, the Court should deny certain plaintiffs' motion to modify or suspend the requirements of PTO 28.

Respectfully submitted,


*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130

Defendants' Liaison Counsel

And

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005

Attorneys for Merck & Co., Inc.

7

927103v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Supplemental Brief has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, on Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 19th day of May, 2008.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

927103v.1