UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX® | § | MDL Docket No. 1657 |
| | § | |
| PRODUCTS LIABILITY LITIGATION | § | SECTION L |
| | § | |
| This Document Relates to All Cases | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |

**CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28**

**MAY IT PLEASE THE COURT:**

Certain counsel for a group of Kentucky and Indiana cases moved the Court to modify or suspend Pretrial Order No. 28, specifically regarding Section II. A. 8., which requires case-specific expert reports from plaintiffs not participating in the Resolution Program. Pursuant to the Court's suggestion at the hearing on April 25, 2008, these plaintiffs respectfully submit this Supplemental Memorandum in support of their motion.

Counsel's basic concerns are two-fold. First, there has been an extreme disparity in treatment to those plaintiffs who did not allege a myocardial infarction, ischemic stroke, or a death (in PPF parlance, a "cardiovascular event") and those who did, and then a further disparity of treatment to those who did allege a "cardiovascular event" but who did not enroll in the Resolution Program ("RP"). These disparities of treatment directly impact the ability of these claimants to pursue potentially legitimate claims. Second, the timeline set out by PTO 28 is inherently biased toward forcing plaintiffs to drop even legitimate claims.

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 1 of 14

Additionally, with the filing today of the PSC's position, there is a third concern arising from the fact that the PSC has apparently decided to carve out of its responsibilities any that pertain to development of the non-cardiovascular event plaintiffs despite that it still speaks for these claimants and spoke for them when asking the Court to establish significant and unprecedented unilateral discovery obligations beyond those required of any other class of plaintiffs in this action.

Counsel firmly believes that this Court does not intend that PTO 28 be used by Merck as a case culling Order where even legitimate claims are prematurely foreclosed. That, however, is its effect.

## **SUMMARY OF POSITION**

No plaintiff who merely alleged a cardiovascular event was required to submit *any* Rule 26 Report except for those few cases set for trial by this Court, and then only when they were set for trial. Yet, Merck claims a need for a Report from everyone of those plaintiffs now, long before their cases are set for trial and before their counsel have been allowed to get anywhere near the level of Merck's playing field, just because they did not participate in the RP. This requirement does not apply to claimants who participate in the RP even though they don't meet any gates. This requirement does not apply to cases that participate in the RP even though there isn't really a cardiovascular event. The favoritism for RP participation and the punitive effects of non-participation are obvious. If Merck were moving the cases to trial that would be one thing, but it is not; it simply wants these cases dismissed within 30 days if the literal

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 2 of 14

requirements of PTO 28 are not met.  And all of this before the results of the PSC's substantial efforts are available for use by their counsel in the form of final Trial Packages.

Other plaintiffs who non-cardiovascular events from the predictable effects of the clotting action of Vioxx were initially (and understandably) placed on the back burner as the PSC and Merck developed the cardiovascular event cases.  However, counsel in those cases and those plaintiffs were never told until now that their cases were completely "taken off the table" as far as the PSC is concerned.  The non-cardiovascular claimants are no more inherently suspect than the cardiovascular cases, and if the Court's concern is that they are, there are more fundamentally fair ways to address that concern than to grant Merck's desire for too high a hurdle.

Merck's papers underplay the requirements it was allowed to place on plaintiffs by PTO 28.  That Order says what it says and Merck's attempt to soft pedal the "Discovery Requirements" (Merck's language in the tendered Order) begs the question as to why Merck needs to understate the obligation.  The Order says:

> 8. A Rule 26(a)(2) case specific expert report from a medical expert attesting (i) to a reasonable degree of medical probability that the Plaintiff or Claimant suffered an injury and (ii) that Vioxx caused the injury.  The case specific expert report must include (i) an explanation of the basis of the attestation that Vioxx caused the Plaintiff or Claimant to suffer the injury, (ii) an identification of any other causes that were considered in formulating the opinion, (iii) a description of the specific injuries allegedly suffered; (iv) a description of the specific medical findings that support the diagnosis of those injuries; and (v) and identification of all documents relied on by the expert in forming his opinions.

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 3 of 14

And the consequence of non-compliance is extreme:

> D. Plaintiffs or Claimants who fail to fully comply with the requirements of this Order shall be given notice by e-mail or fax from Defendants' Liaison Counsel or his designee and shall be provided thirty (30) additional days to cure such deficiency ("Cure Period"). No other extensions will be granted, except for good cause shown. If Plaintiff or Claimant fails to cure the deficiency within the Cure Period, Defendant's Liaison Counsel shall file a Motion to Show Cause why the claim should not be dismissed with prejudice or, if tolled, why the tolling for that Claimant should not be terminated. Plaintiff or Claimant shall thereupon have thirty (30) days to respond to the Notice to Show Cause. Any failure to respond to the Motion within the required period of time shall lead to the dismissal of the claim with prejudice or, if tolled, the termination of tolling for that claim.

PTO 28, II. A. 8. and II. D.

The Court entrusted the PSC with the obligation to develop this case for *all* plaintiffs. If the PSC is going to decide to carve out non-cardiovascular event plaintiffs, the Court should appoint a sub-committee that will develop those claims, and that subcommittee should be charged with negotiating the terms of reciprocal discovery with Merck. And any case specific trial deadlines in cardiovascular cases should not be punitive as a result of non-participation in the RP but rather should be structured with a fair timeline in conjunction with RP deadlines and Trial Package dissemination.

In accordance with notions of fundamental fairness and the *reciprocal* obligations of the parties under the Federal Rules of Civil Procedure, the Court should reconsider PTO 28 and its requirements to ensure that adversely affected plaintiffs have a fair opportunity to present and prove their cases, with pre-trial case management procedures no less favorable than accorded to the first wave of plaintiffs.

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 4 of 14

**Factual and Procedural Background**

The undersigned counsel represent some 200 plaintiffs in this litigation. Their cases were filed in Kentucky state courts in late 2005 and thereafter. Consequently, while Merck might have had seven years to prepare its defenses, these counsel have been in this litigation for substantially less than three years.

Before filing, counsel undertook an investigation of the merits of each claim, including discussions with consulting experts. The current issue before the Court is neither a Rule 11 proceeding nor a hearing on a claim for wrongful use of civil proceedings. Accordingly, the only legitimate issue should be appropriate and necessary case management of this litigation with a goal toward determining whether plaintiffs can prove their cases at trial after meeting all court ordered pretrial requirements.

After these counsel filed their cases, Merck immediately removed all of counsels' cases to federal court, and (except those few ordered remanded by the Eastern District of Kentucky) the cases were subsequently transferred to this MDL proceedings. Motions for remand had been filed before transfer in all cases with non-diverse defendants, but this Court has not addressed those motions.

This Court placed the responsibility for case development on the PSC and counsel were precluded from doing their own discovery. The PSC entered into fee agreements with counsel, based on their responsibilities established by this Court to develop these cases and to provide counsel with the benefit of those efforts.

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 5 of 14

Until the last two days, the PSC had not notified any counsel (to the undersigned's knowledge) that it would not be developing the case for those plaintiffs who did not suffer a Myocardial Infarction ("MI"), Ischemic Stroke ("IS") or Sudden Cardiac Death ("SCD"). These other non-cardiovascular cases include, but are not limited to, plaintiffs who suffered significant injury or death from Deep Vein Thrombosis ("DVT") or Pulmonary Embolism ("PE").

The PSC negotiated the content of a Plaintiff Profile Form ("PPF") with Merck, which would detail the specific facts regarding Vioxx usage and injury, and by which medical records were produced. The PPF requirements were initially for MI and IS plaintiffs and it was represented that requirements for other non-cardiovascular cases would be established later. None of the cardiovascular plaintiffs were required to prove that their Vioxx usage caused their complaints, and none were required to file a Rule 26 Report, even though, to counsel's knowledge, some of those complaints were of the same sort that Merck now disparages as ridiculous in its papers. Merck's Supplemental Brief at 4.

The PSC took on the task of building the case against Merck. The Court prohibited individual plaintiffs from pursuing discovery. The PSC has long promised a Trial Package, but it has not yet been delivered in final form to plaintiffs' counsel.

None of these cases have been set for trial. The default requirement under the Federal Rules of Civil Procedure is for Rule 26 (a)(2) Reports to be submitted 90 days before trial, and for defendants to face a reciprocal requirement.

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 6 of 14

This Court has a strong history of fair administration of MDLs. Indeed the Court said on April 25, 2008:

> I'm not interested in stopping anybody from coming to court; I just am interested in making sure that they have a right to come to court.

Transcript of Hearing, April 25, 2008, at 24.

These plaintiffs "right to come to court" is alleged in their Complaints, and there are other, more fair ways, to address the Court's legitimate case management concerns. *See* Argument II, *infra*.

Plaintiffs have relied on the MDL process, as conducted by the PSC, to produce work-product for the individual cases to move forward. It is fundamentally unfair for the PSC to decide, literally at that last minute, that it will not develop a certain group of cases while those cases are facing deadlines that the PSC agreed to, and particularly where that agreement was with no advance notice to plaintiffs' counsel.

On November 9, 2007, PTO 28 was presented to this Court as a *fait accompli. There was no prior notice of any kind that it would be tendered or that it was even being considered.* The Court was not told then that generic proof on those cases had not been sought by the PSC, nor was the Court told that, to the extent that such generic proof had been part of the reams of materials in the PSC's depository, that it would neither be analyzed nor discussed with the counsel representing those plaintiffs. Given the scope of the Master Settlement Agreement and the inter-related Orders required of this Court by the settling parties, it is likely that the Court did

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 7 of 14

not then appreciate how the timelines would play out.  Those timelines have had the following effect:

- Counsel had an extremely short time period to understand and analyze the Master Settlement Agreement.

- Counsel had to deal with the highly unusual requirement of 100% participation and the substituted 100% recommendation requirement.  This ultimately entailed a very close analysis of each case, and presentation of the same to the clients, in order to avoid the significant ethical issues caused by the RP structure.

- The initial deadline for every client to make their enrollment decision was February 29.  On the day before, this was extended to March 31.  Counsel have been working with clients literally up until the last minute to help them with this decision.

- When an eligible client elects not to enroll in the RP, counsel must weigh the decision to stay in the case and they have been required by Merck to agree that they will seek to withdraw but only if they can do so ethically.

- The final decision of whether a claimant will enroll might not have been made until March 31.

- When is the attorney supposed to know that he must start on the PTO 28 case specific Rule 26 Report?  Before the enrollment deadline?  Before he decides whether he chooses not to continue with the case and must therefore withdraw?  Before he puts the client on notice of intended withdrawal?  After?  With the PTO

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 8 of 14

> 28 Report initially due on May 1, how is a client to meet that date while/if their attorney is withdrawing?

- Merck pressured counsel to put every client into the RP who ever tangentially mentioned a cardiovascular event (and even some where no such mention could be found).

- Once a claimant is in the RP, *even if not actually a cardiovascular claimant*, Merck has the right to make the minimum $5,000 payment and the claim is terminated.

- Claimants in the RP, whether they ultimately get a payment or not, do not have to meet any Discovery Requirements under PTO 28.

While Merck has attempted to water-down the "Discovery Requirements", the language of PTO 28 speaks for itself – not to mention that its reliance on *Lone Pine*, which imposed substantial pre-discovery expert requirements on the plaintiffs, belies Merck's intent to make plaintiffs prove their cases without the Trial Package or any other discovery.  PTO 28 requires Federal Rule of Civil Procedure 26(a)(2) disclosures, not merely a "one-liner" regarding a nexus between injury and Vioxx.  If "one-liner" is all that Merck and the Court intended to require of plaintiffs, PTO 28 should say so.

## I.  A *LONE PINE* ORDER IS NEITHER NECESSARY NOR FAIR IN THIS CASE.

While *Lone Pine* supports the Court's use of a pre-trial, pre-discovery order in certain cases, the circumstances of this case – as well as others condemning the use of such one-sided orders – argue against it.  *Lone Pine* presented a unique case in which the Environmental

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 9 of 14

Protection Agency had already determined that the landfill at issue was harmless, a conclusion that directly contradicted the plaintiffs' complaint. *Lore v. Lone Pine Corp.*, No. L 33606-85, 1986 N.J. Super. LEXIS 1626, at *3 (N.J. Super. Law Div. November 18, 1986). In that situation, it might be considered reasonable to require the plaintiffs to put forth substantial evidence of injury and causation before moving forward.

Here, in sharp contrast, there is a substantial basis for moving forward pursuant to the natural order under the Federal Rules of Civil Procedure. Plaintiffs understand that case management is necessary, but the absence of any apparent basis for the liability portion of the claims in *Lone Pine* make that case truly unique. Many of the plaintiffs in this case affected by PTO 28 have already provided evidence of injury and Vioxx usage, and those that haven't should be ordered to do so. In cases such as this one, in which there is an apparent basis to the liability claim, the courts are less inclined to order unilateral discovery.

For example, in *Morgan v. Ford Motor Co.*, the court declined to issue a *Lone Pine* order primarily because of this distinction. *Morgan v. Ford Motor Co.*, No. 06-1080, 2007 U.S. Dist. LEXIS 36515 (U.S. District Court for the District of New Jersey, May 17, 2007). Citing the uniqueness of the *Lone Pine* case, *Morgan* held that *Lone Pine* orders are often not appropriate in complex cases, and most importantly, "[a]ny discovery must not be one-sided." *Id.* at *36, *citing Hines v. Consol. Rail Corp.*, 926 F.2d 262, 272 (3rd Cir. 1991) and *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 845-55 (3rd Cir. 1990). *Morgan* further held, "the parties must be given an opportunity to conduct discovery and contest the reasonableness of their adversary's experts," and that "[d]efendants are not entitled to file what amounts to a summary judgment motion

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 10 of 14

without first allowing the party opposing the motion to a chance to conduct discovery." *Id*. at 36-37, *citing Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 183 (3rd Cir. 1997) and *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3rd Cir. 1988).

Here, as in *Morgan*, there is a prima facie case to move forward without imposing the one-sided discovery that is arguable necessary in a case like *Lone Pine*, in which there does not appear to be any basis for moving forward. In other cases, the courts have harshly criticized the use of *Lone Pine* orders precisely for the reasons that it is unjust in this case, *i.e.* it amounts to a motion for summary judgment without any of the procedural safeguards found in the civil rules:

> The Lone Pine order has faced harsh criticism because it gives courts the means to ignore existing procedural rules and safeguards. When the Lone Pine order cuts off or severely limits the litigant's right to discovery, the order closely resembles summary judgment, albeit without the safeguards that the Civil Rules of Procedure supply. Furthermore, many Lone Pine orders are inconsistently applied, which further confuses their purpose. *Simeone v. Girard City Bd. of Educ.*, 872 N.E.2d 344, 350 (Ohio App. Dist. 11, 2007), *citing* Burnett, "Lone Pine Orders: A Wolf in Sheep's Clothing for Environmental and Toxic Tort Litigation," 14 Journal of Land Use & Environmental Law 53, 75 (1998).

In *Baker v. Chevron*, the court affirmed the magistrate's revision of a *Lone Pine* order requiring expert affidavits because it imposed too great a burden on plaintiffs. *Baker v. Chevron*, No. 1:05-CV-227, 2006 U.S. Dist. LEXIS 54545, at *9 (S.D. Ohio August 4, 2006). *See also, Simeone v. Girard City Bd. of Educ.*, 872 N.E.2d 344, 350 (Ohio App. Dist. 11, 2007). Indeed, *Lone Pine* itself recognized the Court's ability to revise and extend pretrial management orders to allow for fairness and judicial efficiency to both parties. *Lone Pine*, 1986 N.J. Super. LEXIS 1626 at *2-*6.

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 11 of 14

In sum, this case is remarkably different than *Lone Pine*, and thus the unilateral discovery requirements imposed there are not warranted here. The Court should revise them, or otherwise extend the deadlines to allow plaintiffs sufficient time to prepare following implementation of the RP and delivery of the Trial Packages, and the completion of work by a sub-committee willing to develop the non-cardiovascular claims.

## II.   THERE ARE OTHER, AND BETTER, WAYS TO ACCOMPLISH THE CASE MANAGEMENT THE COURT DESIRES

Merck cannot reasonably dispute that the Fed. R. Civ. P. 26(a)(2) disclosure requirements go far beyond the nexus letters it says it really wants here. PTO 28 was too heavy handed and must be retracted. The issue here presents the Court with the question of whether plaintiffs – without the benefit of any analysis and development by the PSC and while prohibited from conducting discovery themselves – should have to unilaterally submit substantial expert disclosures in order to move forward, failing which their claims will be dismissed without "good cause shown." Fundamental fairness and the rules of civil procedure, not to mention case law condemning the use of *Lone Pine* orders, support plaintiffs' request for relief in this instance.

If Merck wishes to challenge plaintiffs' good faith basis for filing their complaints, that issue can be addressed as well. But here, the reality is that PTO 28 imposes substantially greater requirements, essentially requiring plaintiffs to present their case in chief, without the benefit of any discovery. Most significantly, if that was not the intent of PTO 28 – despite its plain language – it must be revised.

As the Court said, the point is not to stop plaintiffs from coming to court but to make sure they have a right to be here. The treatment accorded other plaintiffs so far is the best standard of

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 12 of 14

how that right might be established. These non-cardiovascular claimants are not step-children, but people with significant and real injuries. The necessary case management orders should be designed in negotiation between Merck and a sub-committee specifically appointed to protect these claimants.

## III. PLAINTIFFS PROVIDED A LIST OF PROBLEMATIC CASES TO MERCK, WITH NO RESPONSE.

Immediately after the April 25 hearing, and pursuant to the Court's instructions, plaintiffs' counsel provided Merck a list of cases they believe are adversely affected by PTO 28's requirements. See Tab 1, attached. Merck has not responded.

### CONCLUSION

Cardiovascular plaintiffs should not be required to produce Rule 26 (a)(2) Reports until a reasonable period has passed after production of the complete Trial Package. The cardiovascular cases need no further case management. They need remand. Non-cardiovascular plaintiffs should not be required to produce Rule 26 (a)(2) Reports until a Trial Package has been developed on their claims. In the meantime, the Court should direct the parties to negotiate case management requirements for the non-cardiovascular cases that are not designed and weighted toward wholesale dismissal of legitimate cases.

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 13 of 14

Respectfully submitted,

/s/  Ann B. Oldfather
Ann B. Oldfather
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY  40208
502.637.7200
502.637.3999 (facsimile)
aoldfather@oldfather.com

| Gregory J. Bubalo | Tyler S. Thompson | Jeffrey K. Branstetter | Joseph H. Mattingly, III |
| D. Brian Rattliff | Liz Shepherd | Blanton & Branstetter | Mattingly, Nally-Martin |
| Bubalo, Hiestand & | Dolt, Thompson, Shepherd | 705 Meigs Avenue | & Fowler, PLLC |
| Rotman, PLC | & Kinney | Jeffersonville, IN  47130 | 104 West Main Street |
| 401 S. Fourth Street | 13800 Lake Point Circle | Jkblawyer@insightbb.com | P.O. Box 678 |
| Suite 800 | Louisville, KY  40223 | | Lebanon, KY  40033 |
| Louisville, KY  40202 | Tthompson@kytrial.com | | Jhmlaw@alltel.net |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsels, Phillip Wittmann and Russ Herman, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on May 20, 2008.

/s/  Ann B. Oldfather

CERTAIN PLAINTIFFS' AND THEIR COUNSELS' SUPPLEMENTAL
MEMORANDUM REGARDING THEIR EMERGENCY MOTION FOR
MODIFICATION AND/OR SUSPENSION OF PRETRIAL ORDER NO. 28

Page 14 of 14

**TAB 1**

# OLDFATHER LAW FIRM
## ATTORNEYS AT LAW
### 1330 SOUTH THIRD STREET
### LOUISVILLE, KENTUCKY 40208

ANN B. OLDFATHER[†]
aoldfather@oldfather.com

VICKI L. BUBA[*]
vbuba@oldfather.com

KIRSTEN R. DANIEL[*]
kdaniel@oldfather.com

BRANDON M. HOWELL
bhowell@oldfather.com

[*] Also admitted in Indiana
[†] Board Certified in Civil Trial Advocacy

TELEPHONE 502.637.7200
FAX 502.637.3999
www.oldfather.com

April 28, 2008

<u>*VIA E-MAIL AND U.S. MAIL*</u>
Mr. John H. Beisner
O'Melveny & Meyers LLP
1625 Eye Street
Washington, DC  20006

Mr. Douglas R. Marvin
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington, DC  20005

**RE:  *Vioxx Litigation:  Motion for Modification and/or Suspension of Pre-Trial Order No. 28***

Dear Counsel:

      This letter is in follow-up to our telephonic hearing on Friday, April 25, 2008. I am trying to find out how we obtain a transcript for the hearing, because I am not entirely certain as to my obligations, and if you are going to be obtaining one yourselves, I would be happy to split the cost so that I might receive a copy.

      As I understood Judge Fallon's ruling, our Motion for Modification and/or Suspension of Pre-Trial Order No. 28 was passed for further hearing on May 22, 2008 (I am uncertain as to the time), and in the meantime the due dates in PTO 28 are suspended. I think that I am supposed to identify for you our cases that would be affected by that suspension. Generically, those cases are of two sorts: The ones identified as "other" on our registration spreadsheets, and the MI/IS/SCD cases that have not been enrolled in the Resolution Program. The specific cases are listed on the attached Exhibit A. You will note that some of them are not in the MDL so they are not affected by PTO 28, but they are listed for completeness purposes.

John H. Beisner
Douglas R. Marvin
April 28, 2008
Page 2 of 2

    Please feel free to call if you have any questions.

                                     Sincerely,

                                     Ann B. Oldfather

ABO:mas

Enclosure

cc: Leonard A. Davis (w/encl.)
    Greg Bubalo (via e-mail only)
    Liz Shepherd (via e-mail only)
    Tyler Thompson (via e-mail only)

## Cases Not Enrolled in Resolution Program
## as of April 28, 2008

| Client Name | Status | Eligible to participate in RP? | Pending In: | Case Number |
|---|---|---|---|---|
| Allen, Richard | | No | MDL | 2:06cv1920 |
| Bland, Violet Marie (deceased) | | No | MDL | 2:06cv1926 |
| Butcher, Lawrence | Submitted motion to withdraw as counsel | No | MDL | 2:06cv1901 |
| Curl, William | | No | MDL | 2:05cv5295 |
| Daniels, Lucky | Enrollment in Progress | | | |
| Hall, Gary | Submitted motion to withdraw as counsel | Yes | State Court (KY) | |
| Leach, Fleam | Submitted motion to withdraw as counsel | Yes | MDL | 2:06cv1928 |
| Little, Hubert | | Yes | State Court (KY) | 05-CI-00182 |
| Moore, Nancy | Submitted motion to withdraw as counsel | Yes | State Court (NJ) | ATL-L-130-07-MT |
| Mullins, John | Submitted motion to withdraw as counsel | Yes | MDL | 2:06cv1903 |
| Nichols, Sarah G. (deceased) | | No | MDL | 2:06cv1951 |
| Norton, Sr., Robert (deceased) | | Yes | MDL | 2:07-cv-0896 |
| Overstreet, Rhoda | | No | MDL | 2:06cv2064 |
| Parido, Clarence | | Yes | State Court (KY) | 05-CI-4241 |
| Rakes, Delbert | | No | MDL | 2:06cv782 |
| Skillman, Joyce | Enrollment in Progress | | | |
| Southworth, Candra Ann | | No | State Court (KY) | 05-CI-00133 |
| Surrett, Vicki | Submitted motion to withdraw as counsel | No | State Court (NJ) | ATL-L-005712-06 |
| Swanagin, Patricia | | Yes | State Court (KY) | 05-CI-04240 |
| Taylor, Noah | | NO | State Court (KY) | 05-CI-4257 |
| Thomas, Harold | | No | MDL (Merck and Pfizer) | 2:06cv2069 |
| Ward, Carolyn | | No | MDL | 2:06cv779 |
| Yaggie, Lana | | Yes | MDL | 2:06cv751 |



**EXHIBIT 1**