UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to All Cases | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

CURATOR'S STATUS REPORT NO. 2

Curator, Robert M. Johnston, Esq., submits this Status Report No. 2, in accordance with the Court's Order, dated February 12, 2008.

**I.      MAILINGS TO *PRO SE* CLAIMANTS**

Since the filing of Curator's Status Report No.1, my office continues to receive numerous inquiries from *pro se* claimants. As instructed in the Court's Order appointing *Pro Se* Curator, we continue to assist the claimant in navigating the settlement program. Although these inquiries appeared to diminish in number after the May 1, 2008 was extended by agreement of the parties, the frequency of repeat inquiries, and complexity of inquiries has increased since the mailing of letters from defense counsel regarding the termination of tolling agreements, and letters from plaintiffs' consortium counsel terminating representation or withdrawing from suits filed. As set forth more fully in this report, we anticipate that the number of inquiries received by my office will remain

consistent or increase as the deadline for claims package submission approaches.

In addition to these inquiries, we have been contacted by potential claimants whose names do not appear in the spreadsheets received from Plaintiffs' Liaison Counsel ("PLC") and Defendants' Liaison Counsel ("DLC"), or the Claims Administrator, seeking information and documents needed to register and enroll in the settlement program. These appear to be individuals who were, at one time, represented by counsel who has since withdrawn or are in the process of withdrawing from the representation of the potential claimant, or who claim to have only recently learned of the existence of the settlement program. In response to these communications, we have directed the potential claimants to the Claims Administrator's website, and transmitted an additional sixty (60) mailings consisting of the registration affidavit, instructions, registration checklist, and summary of the settlement agreement. It should be noted, however, that it is unclear whether many of these potential claimants can meet the initial eligibility requirement for the settlement program; namely proof of either the filing of a lawsuit or qualifying claim, or inclusion in a tolling agreement before November 9, 2007. In accordance with the Court's order appointing *Pro Se* Curator, we advise these potential claimants that, as Curator, we cannot make any determinations regarding eligibility of any claim, inform all potential claimants of the eligibility requirements under the settlement agreement, and direct them to the instructions and summary explaining these requirements, as well as the pertinent deadlines for enrollment and completion of the claims package submission. As additional inquiries are received in the future, they will be processed accordingly.

In light of the July 1, 2008 deadline for claims package submissions, we have collaborated with the Claims Administrator regarding the preparation and mailing of instructions and claims forms tailored to the particular needs of *pro se* claimants, as well as the retrieval of documents on

file with the Litigation Medical Records Depository (LMRD). Specifically, we have reviewed and recommended modification of portions of the instructional cover letter and claims form to provide plain language explanations of certain medical or legal terms, references between the claims form and the instructional cover letter, and emphasis, through the use of italics, bold formatting, or increased font size, to critical portions of the instructional cover letter and claims form. Based upon our experience in communicating with *pro se* claimants, we anticipate these recommended modifications will alleviate unnecessary confusion and otherwise assist in the completion of the claims package submission by *pro se* claimants. We believe these modifications are required because the claims package submission documents currently available on the Claims Administrator's website are geared towards completion by counsel, not *pro se* claimants.

In order to facilitate these modifications, we have requested that the Claims Administrator obtain from defense counsel a full and complete list of potential *pro se* claimants who meet the initial eligibility requirement of having entered into a tolling agreement, filing suit or filing an eligible claim before November 9, 2007. Of these *pro se* claimants, we have requested that the Claims Administrator consult with the parties to determine which of these claimants have documents on file with the LMRD, so that those records can be forwarded to the *pro se* claimant, along with the *pro se* claims form and instructional cover letter. Once received, these claimants must then: provide the information requested in the claims form; attach any additional required medical, pharmacy, event, or other records; certify the completeness and accuracy of the claims submission; and submit the entire claims submission package to the Claims Administrator by the July 1, 2008 deadline. We defer to the Claims Administrator to further elaborate on the proposed path forward as to mailing of the instructional cover letter, claims form, and LMRD records (where applicable) to *pro se*

claimants meeting the aforementioned initial eligibility requirement.

## II. RETURNED AND UNDELIVERABLE MAIL

As discussed in Curator's Status Report No. 1, we continue to monitor returned and undeliverable mailings sent to both unregistered and registered potential *pro se* claimants. As of the date of this status report, an additional one-hundred twenty-three (123) mailings have been returned undeliverable, for a total of one-hundred eighty-four (184) returned mailings. In response to these additional returned mailings, we are continuing preparation of legal notices to be published in the local newspaper of the individual's last known city, region, or state (if known) for three consecutive days. For those individuals for which no address information is known, we are proceeding with the recommended course of action set forth in Report No.1–namely the publication of the three-day legal notice in the USA Today, Marketplace-Life Section, which is distributed nation-wide.

Similarly, we are continuing with forwarding those mailings which were returned because of a known, but expired request to forward mail. We continue to send these materials to the forwarding address for each individual, and if again returned undeliverable, a legal notice will be published in the local newspaper of the individual's last known address and forwarding address, for three consecutive days.

Since our last report, we have not received any additional mail returned with a notation that the addressee is deceased. With regard to the two (2) returned mailings described in our last report, we continue preparation of legal notices requesting information regarding the heirs or legal representatives of the deceased individuals, to be published in the local newspaper of the individual's last known address for three consecutive days.

**III.    LEGAL NOTICE PUBLICATIONS**

We have identified and made contact with a majority of the newspapers in which legal notices will be published. As the publications occur, we have requested, and are receiving affidavits of publication from the newspaper, both certifying the dates of publication, and providing a copy of the notice published. These affidavits are maintained in the *Pro Se* Curator's file and will be submitted to the Court upon completion of all legal notice publication as part of the Curator's Certification. Despite the fact that numerous legal notices have been published, as of the date of this report, we have not received any communications from persons with knowledge of the whereabouts of any potential claimant for whom we have incomplete, inaccurate, or non-existent contact information. Similarly, we have not received any communications from those potential claimants themselves. If any contact information is received as a result of the publication of these legal notices, we will advise the Court, the parties and the Claims Administrator accordingly.

**IV.    TOLLING AGREEMENT TERMINATION LETTERS**

In light of the continuation of legal notice publications, we were asked by Defense counsel to take possession of certified letters regarding termination of the tolling agreement, which were returned undeliverable to Williams & Connelly, and further requested to forward these letters when and if any new contact information is received for the addressees. As the majority of these undeliverable certified letters were directed to potential claimants for which legal notices are being, or have been published, we agreed that taking possession of the undeliverable certified letters and forwarding them, if new contact information is obtained, was appropriate and would prevent the needless duplication of efforts. We defer to defense counsel as to the letters which were not returned undeliverable, but upon information and belief, these letters were sent to all unrepresented claimants

5

who were included in the tolling agreement(s) previously executed by defense counsel.

As of the date of this report, approximately ninety (90) undeliverable certified letters have been provided to my firm from Williams & Connelly. Of these, all but twenty-nine (29), were addressed to claimants for whom we had previously undertaken the process of publishing legal notices. We are adding legal notices for the twenty-nine additional claimants, and will forward these letters if any new contact information is received. As stated above, we have not received any new contact information for any claimant, and therefore, have not forwarded any of the returned certified letters provided by defense counsel.

**V.  CURATOR'S COMMUNICATIONS**

My firm continues to receive numerous telephone calls, emails, facsimiles, and correspondence from potential claimants in the Settlement Program. These communications have been logged in an internal communications log, and are also being entered into the online communications log described in Report No.1. We anticipate that all communications to date will be uploaded to the online log, and available through the Claims Administrator's portal, within the next thirty (30) days. As stated in our previous report, ongoing communications will be entered into the online log on a rolling basis, as new communications occur. Upon information and belief, this information will be available and searchable to everyone possessing a valid login and password to the Claims Administrator's Vioxx Portal. We defer to the Claims Administrator as to the requirements to access this information, as well as maintenance of appropriate data back-up services.

With regard to written communications and documents forwarded by potential *pro se* claimants via U.S. Mail, facsimile, electronic mail, and private shipping companies (Federal Express, DHL, and UPS), we continue to forward all documents received by my office, on a rolling basis, to

the Claims Administrator, both via electronic mail as a PDF attachment, and via overnight delivery, in order to assist in compliance with the deadlines set forth in the Settlement Agreement, and extensions agreed to by the parties.

We have received calls from one (1) additional potential claimant who is Spanish-speaking, for a total of three (3) Spanish-speaking contacts. As previously reported, our firm employs a bilingual attorney, and thus, we continue to provide information and assistance to these potential claimants to allow them comply with the requirements of the Settlement Program, despite their inability to speak English. All other calls have been from English-speaking persons.

In addition to communications directly from claimants, we continue to receive communications from attorneys whose clients received mailings because they were included in the lists of potential *pro se* claimants provided to my office. We continue to log these communications, and no further contact will be made to represented claimants. Where the attorney requested information regarding registering clients in the Settlement Program, contact information, including web addresses, for both the Claims Administrator and PLC has been provided to same.

Lastly, we have recently received a significant number of inquiries from claimants who have received letters from their attorneys seeking to withdraw from representation. For those claimants whose suits are part of the MDL, we have been able to advise them of the status of any Motion to Withdraw which has been granted by the Court. There are, however, a significant number of Motions to Withdraw which have either been denied for failure to comply with Pretrial Order 36, or are being supplemented with the required certifications set forth in, and attached to, Pretrial Order 36. With regard to these potential claimants whose attorneys are undertaking to withdraw from the representation, but for whom an order granting the withdrawal has not yet been signed, or whose

7

claimant information on record with the Claims Administrator reflects that they are still represented by counsel, we respectfully request guidance from the court and the parties as to the appropriate course of action in light of the July 1, 2008 deadline for completion of the claims package submission. We recommend that these potential claimants be sent the *pro se* instructional cover letter and claims form being finalized by the Claims Administrator, so that they will be notified of the claims package submission requirements, and have an equitable opportunity to submit the required documents and claims package submission by the July 1, 2008 deadline.

It must be noted, however, that because of the legal delays required in Pretrial Order 36 before certain motions to withdraw can be granted, there may be a significant number of claimants who will have very little, if any, time to gather and submit the records and documents required to complete the claims file submission by the July 1, 2008 deadline. We have received well over 50 calls from claimants who have received certified letters from counsel seeking to terminate or withdraw from the representation. These callers have <u>all</u> stated that the letters they received referenced a failure to communicate or provide documentation necessary to support the eligibility of the claim, as the reason given for the termination of the representation and request to withdraw as counsel for the claimant. Based upon the requirements set forth in Pretrial Order 36, it appears that many Motions to Withdraw cannot be granted by the court until well after the July 1, 2008 deadline for claims package submissions. These claimants appear to be in a sort of legal purgatory, as they seemingly must be considered "represented by counsel" until an Order granting a Motion to Withdraw is signed by the Court; but who are, simultaneously, required to personally assure that their claims package submissions, and all required attachments and supporting documentation, are provided to the Claims Administrator prior to July 1, 2008, in order to comply with the terms of the

Settlement Agreement, as supplemented and amended. We have advised these callers to prepare themselves to complete the claims package submission and submit same to the Claims Administrator before the July 1, 2008 deadline, and continue to take note of these callers so that we can request that the Claims Administrator forward the *pro se* claims forms, if this recommended course of action is approved by the Court and the parties. We await further instruction regarding same.

**VI.     REFERRAL ATTORNEY LIST**

As part of the Court's February 12, 2008 Order, the Curator has the responsibility of advising "the *Pro Se* Claimants of the name and contact information for counsel handling Vioxx matters in the jurisdiction where the *Pro Se* Claimant resides." *See* Document No. 13365, Page 3. We have, since our last report, been provided with information from the PLC regarding attorneys handling Vioxx matters in various jurisdictions. After receipt, we have reorganized this information into a list, sorted by location, of attorneys handling Vioxx matters. We have, and will continue to, provide this information, as required by the Court's Order, to *Pro Se* Claimants requesting same.

[The remainder of this page is intentionally left blank.]

**VII.   PRESENTATION AT NEXT STATUS CONFERENCE**

Curator, through associate attorneys, will be available to discuss the above, as well as to address any questions, at the monthly status conference, currently scheduled for May 22, 2008. Additionally, we will be available for all future status conferences, as dates are selected by the Court.

Respectfully submitted,

**JOHNSTON, HOEFER, HOLWADEL & ELDRIDGE**

  /s/ Robert M. Johnston
**ROBERT M. JOHNSTON  (#7339)**
601 Poydras Street, Suite 2490
New Orleans, Louisiana 70130
Telephone: (504) 561-7799
Facsimile: (504) 587-3794
**rmj@ahhelaw.com**
*Pro Se* **Curator**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Curator's Status Report No. 2 has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 22nd day of May, 2008.

  /s/ Robert M. Johnston
**ROBERT M. JOHNSTON  (#7339)**