UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|   |   |   |
|---|---|---|
|  | : | MDL NO. 1657 |
| IN RE: VIOXX | : |  |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE KNOWLES |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : |  |

**THIS DOCUMENT RELATES TO ALL CASES**

## ORDER & REASONS

Before the Court are Certain Plaintiffs' Emergency Motion for Modification and/or Suspension of Pre-Trial Order No. 28 (Rec. Doc. 14157). For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

**I.   BACKGROUND**

On November 9, 2007, the parties announced the establishment of a Vioxx Resolution Program that encompasses all claims that allege a heart attack, sudden cardiac death, or stroke. Also on that date, the Court entered two pre-trial orders requiring Plaintiffs to provide certain information to Merck by certain deadlines. Pre-Trial Order No. 28 ("PTO 28") requires all plaintiffs and tolling agreement claimants with claims pending as of November 9, 2007, to produce specified information regarding their claims if they are not eligible for or have not

-1-

submitted their claims to the Vioxx Resolution Program.[1]  PTO 28 requires that plaintiffs and tolling agreement claimants provide a case specific expert report to Merck by certain dates based on the plaintiffs' last name.[2]  Cases where the Plaintiff's last name begins with A through L must submit this information by May 1, 2008, and those Plaintiffs whose last names begin with L through Z must submit this information by July 1, 2008.

Certain Plaintiffs have filed a motion to suspend or modify the requirements of Pre-Trial Order 28.  Plaintiffs argue that the requirement of PTO 28 to provide case specific expert reports is premature for those plaintiffs who allege injury related to thromboembolic disorders because the PSC has not yet developed general causation expert reports on this topic.  For those plaintiffs who have an otherwise eligible claim but who elect not to participate in the Vioxx Settlement Program, Plaintiffs argue that PTO 28 does not provide them sufficient time to develop their case and/or seek new counsel.  The Plaintiffs generally argue that PTO 28 is "unfair and unilaterally slanted in favor of Merck, both in general and specific application."

Merck opposes Plaintiffs' motion.  First, Merck argues that orders such as PTO 28 have been endorsed by the Fifth Circuit and are a useful tool in mass tort proceedings.  Merck states that PTO 28 is merely an "effort by the Court to manage an extremely large docket of complicated cases by requiring basic information about usage, injury, and causation."  Further, Merck argues that PTO 28 already contemplates extensions of time for "good cause" which will

---

[1] Pre-Trial Order 29 ("PTO 29"), by comparison, applies to all Plaintiffs who file personal injury claims directly in, or whose claims are transferred into, this MDL on or after November 9, 2007.

[2] PTO 29 does not set specific dates but rather establishes time lines for providing the required information based on the date on the filing of or transfer to the MDL of the Plaintiffs' claim.  A challenge to PTO 29 is not before the Court at this time.

not prejudice Plaintiffs who elect not to participate in the Settlement.

The Court held a telephone conference with Merck and Plaintiffs' counsel who filed the motion, and extended the deadline to file case specific expert reports until the next scheduled monthly status conference on May 22, 2008.  The Court also instructed the PSC to add this motion as an agenda item for the monthly status conference and directed the PSC to provide its position on this motion.  On May 22, 2008, the Court heard further argument on this matter.  Following the monthly status conference, the Court issued an Order declining to extend the deadline further for Plaintiffs whose last names begin with A through L, however, the Court did state that it would not consider any motions to dismiss claims for failure to comply with this requirement until after July 23, 2008.  The Court now takes the opportunity to reconsider the issue.

**II.     LAW & ANALYSIS**

The type of pre-trial order at issue is commonly known as a *Lone Pine* order.  This name comes from *Lore v. Lone Pine Corp.* in which the Superior Court of New Jersey approved of a pre-trial order requiring plaintiffs to provide some basic facts in the form of expert reports or run the risk of having their case dismissed.  *See* 1986 WL 637507, *1-*3 (N.J. Super. Nov. 18, 1986).  *Lone Pine* orders "are designed to handle the complex issues and potential burdens on defendants and courts in mass tort litigation." *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  "The basic purpose of a *Lone Pine* order is to identify and cull potentially merit less claims and streamline litigation in complex cases." *Baker v. Chevron USA, Inc.*, 2007 WL 315346, *1 (S.D. Ohio Jan. 30, 2007).  Since the New Jersey court's decision, *Lone Pine* orders have been routinely used by courts to manage mass tort cases. *See, e.g.*, *Acuna*, 200 F.3d at 340;

*Burns v. Universal Crop Protection Alliance*, 2007 WL 2811533 (E.D. Ark. Sep. 25, 2007); *Baker*, 2007 WL 314346; *In re Rezulin Products Liability Litigation*, 441 F. Supp. 2d 567, 570 (S.D.N.Y. 2006); *In re Silica Products Liability Litigation*, 398 F. Supp. 2d 563, 576 (S.D. Tex. 2005).[3]

The United States Court of Appeals for the Fifth Circuit has recognized the value of and approved the use of *Lone Pine* orders in mass tort litigation. In *Acuna v. Brown & Root, Inc.*, the Fifth Circuit held that the district court was within its discretion to issue a scheduling order that "essentially required that information that plaintiffs should have had before filing their claims pursuant to Fed. R. Civ. P. 11(b)(3)." *Acuna*, 200 F.3d at 340. *See also*, *Steering Comm. v. Exxon Mobile Corp.*, 461 F.3d 598, 604 (5th Cir. 2006).

In crafting a *Lone Pine* order, a court should strive to strike a balance between efficiency and equity. *Lone Pine* orders may not be appropriate in every case and, even when appropriate, they may not be suitable at every stage of the litigation. For example, in the present case, a *Lone Pine* order may not have been appropriate at an earlier stage before any discovery had taken place since little was known about the structure, nature and effect of Vioxx by anyone other than perhaps the manufacturer of the drug. But this case is no longer in its embryonic stage. It has existed in state courts for over seven years and in this Court for over three years, and much discovery has taken place. In this MDL, the Plaintiffs' Steering Committee ("PSC")

---

[3] For a further discussion of the role of *Lone Pine* orders, including the pros and cons of their use, *see* James P. Muehlberger & Boyd S. Hoekel, *An Overview of Lone Pine Orders In Toxic Tort Litigation*, 71 Def. Couns. J. 366 (2004); William A. Ruskin, *Prove It or Lose It: Defending Against Mass Tort Claims Using Lone Pine Orders*, 26 Am. J. Trial Advoc. 599 (2003); Scott A. Steiner, *The Case Management Order: Use and Efficacy in Complex Litigation and the Toxic Tort*, 6 Hastings W.-N.W. J. Envtl. L. & Pol. 71, 84-89 (1999).

has established and organized a document depository to house materials produced by Merck and has made those materials available to Plaintiffs' counsel in individual cases.  In total, Merck has produced over 22 million pages of documents.  Hundreds of depositions have taken place.  This Court has ruled on approximately one thousand pre-trial motions and has reviewed over 500,000 pages of documents claimed to be subject to attorney-client privilege.  Monthly status conferences, at which liaison counsel reported on all developments in the case, have been held in open court since the inception of this MDL.  Transcripts of these conferences along with all of the Court's pre-trial orders, opinions, forms and notices have been placed on a special website created for this litigation and are accessible by anyone throughout the country.  Six bellwether trials have been held in this MDL as well as fourteen other trials in various state courts throughout the country.  Although the bellwether trials in this Court involved only Myocardial Infarctions ("MI's"), the discovery undertaken by the PSC was not limited to that malady.  For nearly a decade, Plaintiffs' counsel throughout the country have been studying, exploring, and discovering all of the effects of Vioxx on the human body.  In this MDL, the PSC did not selectively discover only MI's or strokes, but rather they conducted general discovery on the effects Vioxx may or may not have on individuals.  All of this material is and has been available to counsel in the individual cases.

     The Court finds that at this advanced stage of the litigation, it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury, whether that injury be deep vein thrombosis, a heart attack, an ulcer or some other malady.  Surely if Plaintiffs' counsel believe that such claims have merit, they must have some basis for that belief; after all this time it is reasonable to require Plaintiffs to come forward

and show the basis for their beliefs and show some kind of basic evidence of specific causation.

In satisfying PTO 28, the Court is not requiring that Plaintiffs provide expert reports sufficient to survive a *Daubert* challenge or even provide an expert who will testify at trial. Rather, the Court is requiring Plaintiffs to make a minimal showing consistent with Rule 26 that there is some kind of scientific basis that Vioxx could cause the alleged injury. At this late stage, Plaintiffs must be able to provide something to the Defendant and to the Court to show that the Plaintiff suffered an injury and that Vioxx caused that injury.

Finally, *Lone Pine* orders often benefit the Plaintiffs as well as the Defendants. Based on the Court's experience in the six Vioxx trials, these cases are difficult and costly. It seems reasonable that, before both sides start incurring the costs involved with taking a Vioxx case to trial, the Plaintiffs show that there is a basis for the Plaintiffs' claims.

However, in order to ensure that all Plaintiffs have a fair opportunity to comply with this provision of PTO 28, the Court will extend the deadlines for providing case specific expert reports. As stated above, the initial deadline set by PTO 28 for claimants whose last names begin with A through L was May 1, 2008, and the Court after a telephone status conference extended the deadline to May 22, 2008 so that the PSC, the movant and Merck would have the opportunity to further argue the issue. Following the May 22nd monthly status conference, the Court issued an Order stating that it would not change the deadline. After balancing the equities, the Court finds that it would be unfair to force Plaintiffs to respond to a deadline that was not confirmed until that very day. Accordingly, the Court will extend the deadline to provide case specific expert reports for Plaintiffs whose last names begin with A through L until July 1, 2008, and the deadline to provide case specific expert reports for Plaintiffs whose last names

begin with M through Z is also extended to August 1, 2008.[4]

### III.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that Certain Plaintiffs' Emergency Motion for a General Modification and/or Suspension of Pre-Trial Order No. 28 (Rec. Doc. 14157) is hereby GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the status conference currently scheduled for June 18, 2008, is hereby CANCELLED.

New Orleans, Louisiana, this 30th day of May, 2008.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiffs' counsel are reminded that under the terms of PTO 28, the deadlines of PTO 28 may be extended for good cause shown. Counsel who believe that they will be unable to comply with these deadlines are encouraged to contact counsel for Merck to discuss the possibility of a consensual extension of the relevant deadline.