# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; Aetna, Inc.; Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company; HMO Partners, Inc. d/b/a Health Advantage; USAble Life; BCBSD, Inc. d/b/a Blue Cross Blue Shield of Delaware; Blue Cross & Blue Shield of Mississippi; Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Arizona, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; Blue Cross and Blue Shield of Vermont; Blue Cross Blue Shield Association; BlueCross and BlueShield of Florida, Inc.; BlueCross BlueShield of Tennessee; CareFirst, Inc.; Connecticut General Life Insurance Company; Government Employee's Health Association, Inc.; Great-West Life & Annuity Insurance Company; Group Health Incorporated; The Guardian Life Insurance Company of America; Harvard Pilgrim Health Care, Inc.; Hawaii Medical Service Association; Health Net, Inc.; Highmark, Inc.; Highmark West Virginia Inc. d/b/a Mountain State Blue Cross and Blue Shield; HIP Health Plan of New York; Humana, Inc.; Johns Hopkins Health Care LLC; KPS Health Plans; Medical Mutual of Ohio; Noridian Mutual Insurance Company; Premera Blue Cross; Priority Health; Regence BlueCross BlueShield of Oregon; Regence BlueCross BlueShield of Utah; Regence BlueShield of Idaho; Regence BlueShield; Asuris Northwest Health; Regence Life and Health Insurance Company; Trustmark Life Insurance Company and Trustmark Insurance Company; UnitedHealth Group Incorporated; Vista Healthplan, Inc.; Wellmark, Inc. d/b/a Wellmark Blue | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION<br><br>NO. 2:08-cv-1633<br><br>SECTION L   MAG. 3<br><br>In Relation to: Docket No. 1657<br><br>In Re: VIOXX<br><br>PRODUCTS LIABILITY LITIGATION<br><br>JUDGE FALLON<br><br>MAGISTRATE JUDGE KNOWLES |

**Cross and Blue Shield of Iowa; Wellmark** §
**of South Dakota, Inc. d/b/a Wellmark** §
**Blue Cross and Blue Shield of South** §
**Dakota; Wellmark Health Plan of Iowa,** §
**Inc.; and WellPoint, Inc.** §
§
§
§
**v.** §
§
**BrownGreer PLC; U.S. Bancorp, Inc.;** §
**and John Does** §
§
§

## FIRST AMENDED COMPLAINT

For their First Amended Complaint against Defendants, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs AvMed, Inc.; Aetna, Inc.; Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company; HMO Partners, Inc. d/b/a Health Advantage; USAble Life; BCBSD, Inc. d/b/a Blue Cross Blue Shield of Delaware; Blue Cross & Blue Shield of Mississippi; Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Arizona, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; Blue Cross and Blue Shield of Vermont; Blue Cross Blue Shield Association; BlueCross and BlueShield of Florida, Inc.; BlueCross BlueShield of Tennessee; CareFirst, Inc.; Connecticut General Life Insurance Company; Government Employee's Health Association, Inc.; Great-West Life & Annuity Insurance Company; Group Health Incorporated; The Guardian Life Insurance Company of America; Harvard Pilgrim Health Care, Inc.; Hawaii Medical Service Association; Health Net, Inc.; Highmark, Inc.; Highmark West Virginia Inc. d/b/a Mountain State Blue Cross and Blue Shield; HIP Health Plan of New York; Humana, Inc.;

2

Johns Hopkins Health Care LLC; KPS Health Plans; Medical Mutual of Ohio; Noridian Mutual Insurance Company; Premera Blue Cross; Priority Health; Regence BlueCross BlueShield of Oregon; Regence BlueCross BlueShield of Utah; Regence BlueShield of Idaho; Regence BlueShield; Asuris Northwest Health; Regence Life and Health Insurance Company; Trustmark Life Insurance Company and Trustmark Insurance Company; UnitedHealth Group Incorporated; Vista Healthplan, Inc.; Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa;Wellmark of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue Shield of South Dakota; Wellmark Health Plan of Iowa, Inc. and WellPoint, Inc. bring this action against the Settlement Fund (and those individuals who have direct or indirect control of the fund) into which certain identifiable settlement monies are to be paid by Merck & Co., Inc. ("Merck") to settle personal injury claims of persons covered by Plaintiffs' under contracts of insurance or personal injury claims of persons for whom Plaintiffs provided services under plans sponsored or administered by the Plaintiffs. Plaintiffs seek all available equitable relief as well as relief under § 502(a)(3) of ERISA, 29 U.S.C. § 1123(a)(3), entitling Plaintiffs to restitution to the extent of reimbursement of medical expenses they paid on behalf of settling plan members' medical treatment attributed to their use of Vioxx.

2.          The Plaintiffs in this case are non-governmental sponsors and administrators of ERISA health benefit plans ("Health Benefit Plans" or "HBPs"), as well as carriers that provide health insurance or administrative services for health plans that have provided medical benefits associated with their members' use of Vioxx, and which have equitable restitution rights to reimbursement for those benefits from identifiable settlement funds paid by third-party tortfeasors to settle claims asserted by such plan members. The Plaintiffs bring this Complaint on behalf of themselves, their subsidiaries and affiliates that are such sponsors, administrators or

carriers, and the self-funded health plans they administer and that have authorized them to pursue recoveries of plan-related losses.

3.     On November 9, 2007, Merck and a steering committee of personal injury lawyers reached a nationwide, global settlement with claimants asserting personal injury claims (the "Vioxx Claimants") associated with their use of Vioxx (the "Settlement Agreement"). Pursuant to the Settlement Agreement, Merck will provide $4.85 billion into a settlement trust fund (the "Settlement Fund") to resolve personal injury claims from qualifying Vioxx Claimants.

4.     The parties to the Settlement Agreement have established a system that renders it impossible for Plaintiffs to identify their members who are participating in the Agreement and to assert their reimbursement rights as to those members. Rather, the parties to the Settlement Agreement have attempted to craft the Agreement so as to promote the rapid and secret distribution of settlement monies to Agreement participants. Once said funds are distributed to individual claimants and co-mingled with their other assets, Plaintiffs' rights to those funds could evaporate.

## PARTIES

5.     Plaintiffs collectively provide health coverage to approximately 70% of all the individuals in the United States who have private health insurance.

6.     Plaintiff AvMed, Inc. is a not-for-profit corporation organized and existing under the laws of the State of Florida with its principal place of business in Gainesville, Florida.

7.     Plaintiff Aetna, Inc. is organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Hartford, Connecticut.

8.       Plaintiff Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company is organized and existing under the laws of the State of Arkansas with its principal place of business in Little Rock, Arkansas.

9.       Plaintiff HMO Partners, Inc. d/b/a Health Advantage is organized and existing under the laws of the State of Arkansas with its principal place of business in Little Rock, Arkansas. HMO Partners, Inc. d/b/a Health Advantage is an affiliate company of Arkansas Blue Cross and Blue Shield.

10.      Plaintiff USAble Life is organized and existing under the laws of the State of Arkansas with its principal place of business in Little Rock, Arkansas.

11.      Plaintiff BCBSD, Inc. d/b/a Blue Cross Blue Shield of Delaware is a not-for-profit corporation organized and existing under the laws of the State of Delaware with its principal place of business in Wilmington, Delaware.

12.      Plaintiff Blue Cross & Blue Shield of Mississippi is a mutual insurance company organized and existing under the laws of the State of Mississippi with its principal place of business in Flowood, Mississippi.

13.      Plaintiff Blue Cross & Blue Shield of Rhode Island is a nonprofit medical and hospital service corporation organized and existing under the laws of the State of Rhode Island with its principal place of business in Providence, Rhode Island.

14.      Plaintiff Blue Cross and Blue Shield of Arizona, Inc. is a not for profit corporation organized and existing under the laws of the State of Arizona with its principal place of business in Phoenix, Arizona.

5

15.      Plaintiff Blue Cross and Blue Shield of Kansas, Inc. is a mutual life insurance company organized and existing under the laws of the State of Kansas with its principal place of business in Topeka, Kansas.

16.      Plaintiff Blue Cross and Blue Shield of Massachusetts, Inc. is a not-for-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts.

17.      Plaintiff Blue Cross and Blue Shield of North Carolina is organized and existing under the laws of the State of North Carolina with its principal place of business in Durham, North Carolina.

18.      Plaintiff Blue Cross and Blue Shield of Vermont is organized and existing under the laws of the State of Vermont with its principal place of business in Berlin, Vermont.

19.      Plaintiff Blue Cross Blue Shield Association is organized and existing under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.

20.      Plaintiff BlueCross and BlueShield of Florida, Inc. is a nonprofit corporation organized and existing under the laws of the State of Florida with its principal place of business in Jacksonville, Florida.

21.      Plaintiff BlueCross BlueShield of Tennessee is a not-for-profit corporation organized and existing under the laws of the State of Tennessee with its principal place of business in Chattanooga, Tennessee.

22.      Plaintiff CareFirst, Inc. is organized and existing under the laws of the State of Maryland with its principal place of business in Owings Mills, Maryland.

23.      Plaintiff Connecticut General Life Insurance Company is organized and existing under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.

24.     Plaintiff Government Employee's Health Association, Inc. is organized and existing under the laws of the State of Missouri with its principal place of business in Lee's Summit, Missouri.

25.     Plaintiff Great-West Life & Annuity Insurance Company is organized and existing under the laws of the State of Colorado with its principal place of business in Greenwood Village, Colorado.

26.     Plaintiff Group Health Incorporated is a not-for-profit corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

27.     Plaintiff The Guardian Life Insurance Company of America is a mutual company organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

28.     Plaintiff Harvard Pilgrim Health Care, Inc. is a not-for-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Wellesley, Massachusetts.

29.     Plaintiff Hawaii Medical Service Association is a mutual benefit society organized and existing under the laws of the State of Hawaii with its principal place of business in Honolulu, Hawaii.

30.     Plaintiff Health Net, Inc. is organized and existing under the laws of the State of Delaware with its principal place of business in Woodland Hills, California.

31.     Plaintiff Highmark, Inc. is organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pittsburgh, Pennsylvania.

32.     Plaintiff Highmark West Virginia Inc. d/b/a Mountain State Blue Cross and Blue Shield is organized and existing under the laws of the State of West Virginia with its principal place of business in Parkersburg, West Virginia.

33.     Plaintiff HIP Health Plan of New York is a not-for-profit corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

34.     Plaintiff Humana, Inc. is organized and existing under the laws of the State of Delaware with its principal place of business in Louisville, Kentucky.

35.     Plaintiff Johns Hopkins Health Care LLC is organized and existing under the laws of the State of Maryland with its principal place of business in Glen Burnie, Maryland.

36.     Plaintiff KPS Health Plans is organized and existing under the laws of the State of Washington with its principal place of business in Bremerton, Washington.

37.     Plaintiff Medical Mutual of Ohio is organized and existing under the laws of the State of Ohio with its principal place of business in Cleveland, Ohio.

38.     Plaintiff Noridian Mutual Insurance Company is a not-for-profit corporation organized and existing under the laws of the State of North Dakota with its principal place of business in Fargo, North Dakota.

39.     Plaintiff Premera Blue Cross is a not-for-profit corporation organized and existing under the laws of the State of Washington with its principal place of business in Mountlake Terrace, Washington.

40.     Plaintiff Priority Health is a not-for-profit corporation organized and existing under the laws of the State of Michigan with its principal place of business in Grand Rapids, Michigan.

41.     Plaintiff Regence BlueCross BlueShield of Oregon is a non-profit health care services corporation organized and existing under the laws of the State of Oregon with its principal place of business in Portland, Oregon.

42.     Plaintiff Regence BlueCross BlueShield of Utah is a non-profit health care services corporation organized and existing under the laws of the State of Utah with its principal place of business in Cottonwood, Utah.

43.     Plaintiff Regence BlueShield of Idaho is a non-profit mutual insurance company organized and existing under the laws of the State of Idaho with its principal place of business in Boise, Idaho.

44.     Plaintiff Regence BlueShield is a non-profit health care services corporation organized and existing under the laws of the State of Washington with its principal place of business in Seattle, Washington.

45.     Plaintiff Asuris Northwest Health is a non-profit health care services corporation organized and existing under the laws of the State of Washington with its principal place of business in Seattle, Washington.

46.     Plaintiff Regence Life and Health Insurance Company is a non-profit life and health insurance company, incorporated and existing under the laws of the State of Oregon with its principal place of business in Portland, Oregon.  Regence Life and Health Insurance Company is a subsidiary jointly owned by Regence BlueCross BlueShield of Oregon, Regence BlueCross BlueShield of Utah, Regence BlueShield of Idaho, and Regence BlueShield.

47.     Plaintiff Trustmark Life Insurance Company and Trustmark Insurance Company is a mutual life insurance company organized and existing under the laws of the State of Illinois with its principal place of business in Lake Forest, Illinois.

48.      Plaintiff UnitedHealth Group Incorporated is organized and existing under the laws of the State of Minnesota with its principal place of business in Minnetonka, Minnesota.

49.      Plaintiff Vista Healthplan, Inc. is organized and existing under the laws of the State of Florida with its principal place of business in Sunrise, Florida.

50.      Plaintiff Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa is a mutual insurance company organized and existing under the laws of the State of Iowa with its principal place of business in Des Moines, Iowa.

51.      Plaintiff Wellmark of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue Shield of South Dakota is organized and existing under the laws of the State of South Dakota with its principal place of business in Sioux Falls, South Dakota.

52.      Plaintiff WellPoint, Inc. is organized and existing under the laws of the State of Indiana with its principal place of business in Indianapolis, Indiana.

53.      Plaintiff Wellmark Health Plan of Iowa, Inc. is organized and existing under the laws of the State of Iowa with its principal place of business in Des Moines, Iowa.

54.      Does 1, 2, 3, etc. are individuals or entities who are known to Defendants but not to Plaintiffs, who or which (a) will exercise control over the disposition of aforesaid Settlement Fund; (b) have received medical benefits from Plaintiffs' Health Benefit Plans, including ERISA plans, for medical treatment attributable to their use of Vioxx and who will claim money from the Funds; or (c) are agents or attorneys of individuals identified in subsection (b) herein.

55.      Upon information and belief, Defendant BrownGreer PLC is a Virginia professional legal corporation with a principal place of business located at 115 S. 15th Street, Suite 400, Richmond, Virginia.

56.     BrownGreer PLC has been appointed to serve as the Claims Administrator for the Vioxx Settlement Program.

57.     U.S. Bancorp is a Delaware corporation with a principal place of business located at 601 Second Avenue South, Minneapolis, Minnesota.

58.     Upon information and belief, U.S. Bancorp has been appointed to serve as Escrow Agent for the Settlement Agreement.

## JURISDICTION AND VENUE

59.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

60.     Pursuant to 29 U.S.C. § 1332(e)(2), venue is proper in this Court because this Court is overseeing the Multidistrict Vioxx proceedings and the Settlement Fund will be administered in this district.

## FACTUAL ALLEGATIONS

61.     Vioxx is an anti-inflammatory drug and pain reliever containing rofecoxib. It is a cox-2 specific inhibitor and is among the class of drugs known as NSAIDs.

62.     Merck obtained Food and Drug Administration (FDA) approval for Vioxx in or about May 1999, and began the distribution and sale of Vioxx throughout the United States immediately thereafter.

63.     On September 30, 2004, Merck pulled Vioxx from the market due to concerns that the drug increased the risk of heart attacks and strokes in users. By the time it was withdrawn from the market, more than 20 million people in the United States had taken Vioxx.

64.     As a result of the safety issues associated with Vioxx, tens of thousands of individuals filed personal injury claims in the United States against Merck.

65.     On November 9, 2007, Merck and a group of personal injury lawyers (referred to as the "Negotiating Plaintiffs' Counsel" or the "NPC") entered into the Settlement Agreement.

66.     Pursuant to the Settlement Agreement, Merck is to create a $4.85 billion Settlement Fund to resolve certain personal injury claims alleged to be associated with Vioxx.

67.     The Settlement Agreement provides that an Escrow Agent, pursuant to an Escrow Agreement, will oversee various Escrow Funds into which Merck will pay the $4.85 billion. The Agreement defines the Escrow Funds to include an Administrative Expenses Fund, an MI (Myocardial Infarction) Settlement Fund, and an IS (Ischemic Stroke) Settlement Fund. The Settlement Agreement defines "Escrow Agent" to mean U.S. Bancorp (or some other entity later appointed to so serve).

68.     The claims which are subject to the Settlement Agreement include a) claims asserted in lawsuits pending in various state and federal courts, and b) claims subject to a tolling agreement with Merck.   Individuals who own such claims are collectively referred to in the Settlement Agreement as "Eligible Claimants."

69.     Those "Eligible Claimants" who properly complete certain enrollment forms by March 1, 2008, become "Enrolled Program Claimants."

70.     Those Enrolled Program Claimants who then meet certain Eligibility Requirements will become "Qualifying Program Claimants" and will be entitled to varying levels of settlement payments from the Settlement Fund.

71.     The Settlement Agreement provides mechanisms to respect the reimbursement rights of governmental, but not private, providers of health benefits.  For example, pursuant to §12.1.1 of the Settlement Agreement, each Enrolled Program Claimant must identify to Merck and a settlement administrator all governmental third-party payors who are known to hold or assert a

statutory lien over any settlement payment to be made by the Settlement Fund. No such requirement exists with respect to non-governmental third-party payors' liens.

72.      Similarly, pursuant to §12.1.3 of the Settlement Agreement, Enrolled Program Claimants must establish for Merck and the Claims Administrator the satisfaction of all governmental third-party payor liens before said Claimants may receive any settlement payments from the Settlement Fund. No such requirement exists with respect to the satisfaction of non-governmental third-party payors' liens.

73.      Plaintiffs paid medical expenses incurred by Enrolled Program Claimants as a consequence of Vioxx-related medical conditions.   These benefits were provided to Enrolled Program Claimants under agreements and coverage documents that give Plaintiffs: (a) rights of reimbursement – which create a lien for restitution from any identifiable funds recovered by the Health Benefit Plan member from a tortfeasor to the extent of the Health Benefit Plan's Vioxx-related expenditures for healthcare benefits from the Enrolled Program Claimants; (b) rights to prompt notice from covered persons who initiate or settle claims against third party tortfeasors for medial treatment of Vioxx-related conditions paid for by said Health Benefit Plans; and (c) other similar rights that are necessary to protect Health Benefit Plans' ability to enforce their reimbursement rights.

74.      By way of example, Aetna USHealthcare is a health benefit plan that paid medical expenses incurred by Enrolled Program Claimants as a consequence of Vioxx-related Medical conditions.   Aetna USHealthcare provided said benefits to plan members in California from August 2003 until the present pursuant to coverage documents that provided:

> The Member specifically acknowledges the HMO's right of reimbursement. This right of reimbursement attaches, to the fullest extent permitted by law, when HMO has provided health care benefits for injuries or illness for a which a third party is or may be responsible and the Member and/or the Member's representative has recovered any

amounts from the third party or any part making payments on the third party's behalf. By using any benefit under this EOC, Member grants, to the extent permitted by law, an assignment of the proceeds of any settlement, judgment or other payment received by the Member to the extent of the value of all benefits provided by HMO.

75.    The list of individuals who are Eligible Claimants (and, relatedly, those who will be Qualifying Program Claimants) is not publicly available.  Thus, the identities of the Eligible Claimants are known to Merck and to the Defendants but are unknown to Plaintiffs.

76.    It is not possible through reasonable diligence for Plaintiffs to utilize publicly-available materials to identify the participants in the Vioxx Settlement Program.  First, there is no publicly-available listing of those claimants who entered into tolling agreements with Merck, but who otherwise did not initiate litigation.

77.    Second, although Plaintiffs' records may contain information identifying individuals who were prescribed Vioxx and who suffered from Vioxx-related medical conditions, it is not feasible to cross-reference those individuals with publicly-available information identifying plaintiffs in Vioxx lawsuits.  For example, a "John Smith" who files a Vioxx lawsuit could have a name that matches with any number of Vioxx-prescribed "John Smiths" in a health plan's records.  However, without a social security number, it is impossible for the health plan to know which of its plan members with the name "John Smith" – if any – is the same "John Smith" who filed the Vioxx lawsuit.

78.    Third, Plaintiffs' records in many instances do not provide sufficient information to identify Vioxx claimants.  For example, although a particular Plaintiff may have provided health care coverage to a "John Smith" suffering from a stroke, an entirely different plan may have provided the prescription drug benefits that covered "John Smith's" Vioxx usage.  Thus, the Plaintiff's records would not link the stroke to Vioxx use.

14

79.        It is for reasons like these that Plaintiffs' coverage documents frequently require plan
members to notify their health plans when they initiate or settle claims against third party
tortfeasors for medial treatment of conditions that have been covered by the health plans.  For
example, the Aetna USHealthcare plan documents referenced above require plan members and
their representatives to "[n]otify HMO promptly and in writing when notice is given to any third
party of the intention to investigate or pursue a claim to recover damages or obtain compensation
due to injuries or illness sustained by the Member than may be the legal responsibility of a third
party."

80.        On information and belief, Vioxx claimants have largely ignored these contractual
obligations.  Approximately 70% of all individuals in the United States have private health
insurance, and Plaintiffs collectively represent the plans that provided coverage to approximately
70% of those individuals who do.  Accordingly, based on the roughly 50,000 claimants who have
enrolled in the Vioxx Settlement Program, Plaintiffs should have received notice of litigation
and/or settlement from thousands of their members.  In truth, only a handful have done so.

81.        Plaintiffs have also attempted to obtain the names of Vioxx claimants from Merck
and from the PLC.  Both entities have rebuffed their requests.

82.        Unless judicial action is taken now to safeguard Plaintiffs' reimbursement rights,
Plaintiffs will be irreparably harmed.  Unless appropriate relief is granted, Vioxx Claimants will
receive settlement payments from the Settlement Fund, co-mingle those payments with other
monies, and will thereby dissipate any identifiable corpus of settlement funds.  Because
Plaintiffs' rights under their contracts of insurance and under ERISA attach only to an
identifiable corpus of funds, the effect of this would be to destroy Plaintiffs' reimbursement
rights.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF FOR EQUITABLE REMEDIES UNDER ERISA
## (CONSTRUCTIVE TRUST, DECLARATORY RELIEF,
## TEMPORARY RESTRAINING ORDER AND INJUNCTION)

83.     Plaintiffs seek equitable relief in the form of restitution of the amounts which they paid for medical treatments for Vioxx Claimants attributable to their use of Vioxx.   Plaintiffs also seek imposition of a constructive trust over a portion of the Settlement Fund in an amount necessary to fully reimburse Plaintiffs for such monies.  Further, Plaintiffs seek imposition of an equitable lien to enforce the reimbursement terms of ERISA plans for which they provide insurance or claims administration services.

84.     Plaintiffs further seek disclosure (subject to appropriate confidentiality strictures which respect applicable privacy interests) of the identities of the Vioxx Claimants, the identities of their Health Benefit Plans, and their claims attributable to their use of Vioxx.

85.     The Court should also issue a Temporary Restraining Order, without notice, enjoining the Defendants from distributing any monies from the Settlement Fund until such time as they have identified to Plaintiffs the identities of the Qualifying Program Claimants, the Plaintiffs have had an opportunity to assert their reimbursement rights with respect to those Claimants, and the Court has had an opportunity to determine the extent of Plaintiffs' reimbursement rights as they relate to the settlement funds.   A Temporary Restraining Order is required to prevent deterioration of Plaintiffs' interest in the settlement funds, until such time as a preliminary injunction hearing can be held, and a preliminary injunction can be issued.

86.     If the settlement funds are disbursed from the Settlement Fund to individual Vioxx Claimants, Plaintiffs may not have any adequate remedy at law.

16

87.     Because of their clear contractual rights to some of the Vioxx settlement funds, Plaintiffs are likely to succeed on the merits of its claim.

88.     A balancing of the equities favors the issuance of a Temporary Restraining Order and an injunction in favor of Plaintiffs.  The injunctive relief that Plaintiffs request would do no more than require all parties to temporarily suspend the distribution of the Vioxx settlement funds, until such time as the Court can make a final decision concerning Plaintiffs entitlement to the funds.

## SECOND CLAIM FOR RELIEF FOR DECLARATORY RELIEF

89.     Pursuant to 28 U.S.C. § 2201, et. seq., the Plaintiffs are entitled to declaratory relief concerning their rights and other legal relations regarding the monies to be put into the Settlement Fund.

90.     Plaintiffs have a right to declaratory relief declaring, among other things:

   a.     that Plaintiffs have contractual rights to reimbursement of any monies they paid or medical benefits that they otherwise furnished on behalf of any Qualifying Program Claimants;

   b.     that the Settlement Agreement provides no mechanisms to respect Plaintiffs' rights to reimbursement, and that the Settlement Agreement will affirmatively impair Plaintiffs' rights to reimbursement if settlement monies are distributed to individual Qualifying Program Claimants;

   c.     the extent of each of Plaintiffs' lien rights, if any, in the Vioxx settlement funds resulting from Plaintiffs' payment of past medical expenses or medical benefits otherwise provided by Plaintiffs;

d.      that Plaintiffs are entitled to disclosure of the names of each of the Qualifying Program Claimants; and

e.      that each of Plaintiffs is entitled to receive payment in satisfaction of their lien rights, if any, for medical expenses paid or medical benefits otherwise furnished to any Qualifying Program Claimants prior to any disbursement from any Vioxx settlement funds to any Qualifying Program Claimants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1.      An order imposing a constructive trust in favor of the Plaintiffs upon the Vioxx settlement funds;

2.      An order declaring that Plaintiffs are the rightful owners of the Vioxx settlement funds to the extent necessary to satisfy Plaintiffs' rights of reimbursement;

3.      A Temporary Restraining Order and preliminary injunction enjoining and directing the parties to refrain from distributing the Vioxx settlement funds to Qualifying Program Claimants until such time as those Claimants have been identified to Plaintiffs, Plaintiffs have had an opportunity to assert their reimbursement rights with respect to those Claimants, and the Court has had an opportunity to determine the extent of Plaintiffs' reimbursement rights as they relate to the settlement funds;

4.      An order enjoining Qualifying Program Claimants to execute any and all documents necessary to transfer the Vioxx settlement funds to Plaintiffs, to the extent of Plaintiffs' interest therein;

18

     5.     An order enjoining Defendants from transferring or disposing of the Vioxx settlement funds in any manner that would prejudice, frustrate or impair Plaintiffs' ability to recover those funds;

     6.     Declaratory relief in the manner set forth above; and

     7.     An order granting such other and further relief to which Plaintiffs are entitled under ERISA.


DATED this 18th day of April, 2008

                                 SUSMAN GODFREY L.L.P.

                                 /s/ Lexie G. White
                                 Lexie G. White
                                 Louisiana State Bar No. 29478
                                 Neal S. Manne
                                 Texas State Bar No. 12937980
                                 William Christopher Carmody
                                 Texas State Bar No. 03823650
                                 Joseph S. Grinstein
                                 Texas State Bar No. 24002188
                                 SUSMAN GODFREY L.L.P.
                                 1000 Louisiana Street, Suite 5100
                                 Houston, Texas 77002
                                 Telephone: (713) 651-9366
                                 Facsimile: (713) 654-6666

OF COUNSEL:

Richard W. Cohen
Peter D. St. Phillip, Jr.
Gerald Lawrence
LOWEY DANNENBERG COHEN & HART, P.C.
1 North Broadway, 5th Floor
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

Mark D. Fischer
Mark M. Sandmann
Jeffrey C. Swann

RAWLINGS & ASSOCIATES PLLC
1 Eden Parkway
LaGrange, KY 40031
Telephone: (502) 587-1279
Facsimile: (502) 584-8580

Attorneys for Plaintiffs

## CERTIFICATEOF SERVICE

I hereby certify that the above and foregoing Plaintiffs' First Amended Complaint has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 18th Day of April, 2008.

 /s/ Lexie G. White
Lexie G. White
Louisiana State Bar No. 29478
Attorney for Plaintiffs
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
lwhite@susmangodfrey.com