# APPENDIX A

# PART 2

# BLUE CROSS and BLUE SHIELD OF KANSAS, INC.

## GENERAL INFORMATION

A. **Company's Right to Determine if Services are Medically Necessary.** Benefits are available only for medically necessary services, admissions, and continued care. The Company has the right to require information to make this decision.

B. **Insured/Provider Relationship.** The choice of a provider is solely the Insured's. The use or non-use of an adjective such as Contracting or Non-Contracting in modifying any provider is not a statement as to the ability of the provider.

C. **The Company's Responsibility is Limited.** Institutional Provider services are subject to the rules and regulations of the provider. This includes rules about admissions, discharge, and availability of services. The Company does not guarantee that admission or that any specific type of room or kind of service will be available.

The Company is obligated to provide benefits for the services of Your Professional Provider only to the extent provided in this Contract. The Company does not guarantee the availability of a provider.

The Company will not be liable for any acts or wrongs of a provider of service. This includes negligence, misconduct, malpractice, refusal to give service, and breach of contract because of anything done or not done by a provider.

D. **Your Identification Card.** You must tell Your Institutional Provider or Professional Provider that You are eligible for Covered Services. When You receive services, show Your Identification Card at the provider's office. Show only the current card.

E. **Your Authorization.** By accepting coverage under this Contract, You permit the Company to request any information related to a claim for services that You received and authorize that any information may be given to the Company regarding medical services You have received. This applies to all types of claims, including claims related to Medicare.

If the Company asks for information and does not receive it, payment for covered services cannot be made. The claim will be processed for payment only when the requested information has been received and reviewed.

F. **Notice** of Claim: You are responsible for submitting written notice of claim within 20 days after a covered loss begins or as soon as reasonably possible. If your provider submits written notice on Your behalf within the time period specified above, such notice will satisfy the requirements of this provision. The notice can be given to Blue Cross and Blue Shield of Kansas at its home office, 1133 Topeka Boulevard, Topeka, Kansas. Notice should include Your name and Your identification number as stated on Your Identification Card.

G. **Claim Forms:** The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proof of loss. If such forms are not furnished within fifteen (15) days after the giving of such notice the claimant shall be deemed to have complied with the requirements of this Contract as to proof of loss upon submitting within the time fixed in the Contract for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

H. **Proofs of Loss:** Written proof of loss must be furnished to the Company at 1133 Topeka Boulevard, Topeka, Kansas, in case of claim for loss for which this Contract provides any periodic payment contingent upon continuing loss within ninety (90) days after the termination of the period for which the Company is liable and in case of claim for any other loss within ninety (90) days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

I. **Time of Payment of Claims:** Benefits payable under this Contract will be paid immediately upon receipt of proper written proof of loss.

J. **Payment of Claims.** For covered services received from the following providers:

1. **Contracting Provider of Blue Cross and Blue Shield of Kansas or another entity on behalf of Blue Cross and Blue Shield of Kansas:** Your benefits will be paid directly to the Contracting Provider.

2. **Contracting Provider of Blue Cross and Blue Shield of Kansas for limited services:**

   When You receive services for which the provider is contracting Your benefits will be paid directly to the Contracting Provider.

   When You receive services for which the provider is not contracting Your benefits will be paid directly to You. Such benefits are personal to You and cannot be assigned to any other person or entity.

3. **Non-Contracting Provider in the Company Service Area:** Your benefits will be paid directly to You. Such benefits are personal to You and cannot be assigned to any other person or entity.

4. **Covered Provider in a class of providers that are not offered Contracting Provider status:**

Your benefits will be paid directly to You, with such benefits being personal to You and not assignable to any other person or entity.

5. **Covered Provider Outside the Company Service Area:**

    a. Located in an area where the Company offers contracting provider status, directly or through arrangements with another entity, to the provider from whom service was received:

        (1) if the provider is a Contracting Provider, Your benefits will be paid to the provider.

        (2) if the provider is a Non-Contracting Provider, Your benefits will be paid directly to You, with such benefits being personal to You and not assignable to any other person or entity.

    b. Located in an area where the Company does not offer contracting provider status, either directly or through arrangements with another entity, to the provider from whom service was received:

        (1) In instances where the Insured receives service from a provider that is contracting with the Blue Cross and/or Blue Shield Company servicing the area in which the provider is located, payment will be made directly to the provider.

        (2) In instances where the Insured receives service from a provider that is not contracting with the Blue Cross and/or Blue Shield Company servicing the area in which the provider is located, Your benefits will be paid directly to You, with such benefits being personal to You and not assignable to any other person or entity.

6. Any benefits unpaid at Your death may be paid to Your estate.

    If benefits are payable to Your estate, the Company may pay up to $1,000 to anyone related to You by blood or marriage, whom the Company considers to be entitled to the benefits. The Company will be discharged to the extent of any such payment made in good faith.

**K.** **Physical Examination:** The Company, at its expense, has the right to have You examined as often as reasonably necessary while a claim is pending.

**L.** **Legal Actions:** No legal action may be brought to recover on this Contract within 60 days after written proof of loss has been given as required by this Contract. No such action may be brought after 5 years from the time written proof of loss is required to be given.

**M.** **Errors Related to Your Coverage.** If the Company's records of Your coverage are in error due to a Company error or delay, the record will be corrected after discovery of the error. If Your premiums are involved, the Company may need to make a backdated change in Your premiums. The Company will make whatever change is needed in Your coverage and/or premiums to assure that You have the coverage You are entitled to under this Contract.

The Company has the right to correct benefit payments which are made in error. Providers and/or You have the responsibility to return any overpayments to the Company. The Company has the responsibility to make additional payments if an underpayment is made.

**N.** **Statements Made by the Contract Holder or the Insured.** A copy of the application, if any, of the Contract Holder shall be attached to the Contract when issued. All statements made by the Contract Holder or by the Insured will be deemed representations and not warranties. No statement made by an Insured will be used in any contest unless a copy of the instrument containing the statement is or has been furnished to the Insured

Coverage for an Insured may be rescinded or terminated due to fraudulent material misstatements made in the application for it. Coverage may also be terminated without notice if the Insured or a covered dependent submits a claim which is found to have been fraudulent in any criminal or civil proceeding.

**O.** **Notice.**

    1. **From the Company to the Contract Holder.** A notice is sent to the Contract Holder by the Company and is considered "given" when mailed to the Contract Holder at the latest address appearing on the records of the Company.

    2. **From the Company to an Insured.** A notice sent to an Insured by the Company is considered "given" when mailed to the Insured at his address as it appears on the records of the Company.

    3. **From the Contract Holder or an Insured to the Company.** Notice to the Company is considered "given" when received by the Company at 1133 Topeka Boulevard, Topeka, Kansas. The Company will not be able to assist an Insured unless the notice includes the Insured's name and the identification number that is on the Identification Card.

**P.** **Changes In this Contract.** Benefits and premiums may be changed after approval by the Board of Directors of the Company and filing by the Kansas Insurance Commissioner.

No agent or representative of the Company other than its Board of Directors is authorized to change this Contract or waive any of its provisions.

**Q.** **Notification of Change.** The Contract Holder will be given notice of any approved benefit change by a new Group Contract, rider, amendment, or any other proper written means. If major changes to the Certificate issued thereunder are made, new Certificates or riders or amendments will also be issued.

**R.** **Acceptance of Change.** If payment is made to the Company after the date of any change to the Group Contract, it is agreed the change has been accepted.

**S.** **Information to be Provided by the Parties to this Contract.** Each month while this Contract is in force, the Contract Holder shall provide the Company such information as may be reasonably required to enroll Insureds, process terminations of individual coverage, and determine the premiums of this Contract.

The Company will provide the Contract Holder with information concerning enrollment of Insureds and other matters as may reasonably be required.

**T.** **Membership, Voting, Annual Meeting and Participation.** The policyholder (the person or entity to which the insurance contract has been issued) is a member of Blue Cross and Blue Shield of Kansas and is entitled to vote in person or by proxy at meetings of policyholders. The annual meeting of policyholders is held on the second Thursday in May of each year at 8:30 o' clock a.m. at the corporation' s principal place of business at 1133 Topeka Boulevard, Topeka, Kansas, or at such other place as the Chairman of the Board of Directors might designate in a notice of meeting given to policyholders. Printed notice in this shall be sufficient as to notification. If any dividends are distributed, the policyholder will share in them according to law and under conditions set by the Board of Directors.

**U.** The Contract Holder on behalf of itself and its participants hereby expressly acknowledges its understanding this Contract constitutes a contract solely between the Contract Holder and Blue Cross and Blue Shield of Kansas, which is an independent corporation operating under an agreement with the Blue Cross and Blue Shield Association, an association of independent Blue Cross and Blue Shield Plans, (the "Association") permitting Blue Cross and Blue Shield of Kansas to use the Blue Cross and/or Blue Shield Service Marks in the State of Kansas and that Blue Cross and Blue Shield of Kansas is not contracting as the agent of the Association. The Contract Holder on behalf of itself and its participants further acknowledges that it has not entered into this Contract based upon representations by any person other than Blue Cross and Blue Shield of Kansas and that no person, entity, or organization other than Blue Cross and Blue Shield of Kansas shall be held accountable or liable to the Contract Holder for any of Blue Cross and Blue Shield of Kansas' s obligations to the Contract Holder created under this Contract. This paragraph shall not create any additional obligations whatsoever on the part of Blue Cross and Blue Shield of Kansas other than those obligations created under other provisions of this agreement.

**V.** The Contract Holder agrees to be responsible for any access fees or amounts of discounts from provider charges retained by another Blue Cross and Blue Shield Company. These fees, if charged, are based on the discount the other Blue Cross and Blue Shield Company has obtained from its contracting providers. Access fees may only be charged if the other Blue Cross and Blue Shield Company' s agreement prohibits billing Insureds for amounts in excess of the negotiated fees. In addition to the access fee that may be charged by the other Blue Cross and Blue Shield Company, Blue Cross and Blue Shield of Kansas may charge the Contract Holder a fee of up to 10% of the discount obtained through use of the other Blue Cross and Blue Shield Company' s provider network. This administrative fee is designed to partially offset the costs charged to Blue Cross and Blue Shield of Kansas for administrative activities associated with making discounts available to the Contract Holder which arise out of other Blue Cross and Blue Shield Company' s provider arrangements. Both the access fee and the administrative fee will be applied to the Contract Holder' s claims expense. They will not be applied to the charge used for calculations of deductible and copayments owing by an Insured, however

**W.** **Claims Recoveries.**

There may be circumstances in which the Company recovers amounts paid as claims expense from the provider of service, from the Insured or from a third party. Such circumstances include rebates paid to the Company by pharmaceutical manufacturers based upon amounts of claims paid by the Company for certain specified pharmaceuticals, amounts recovered by the Company from health care providers or pharmaceutical manufactures through certain legal actions instituted by the Company relating to the claims expense of more than one Insured, recoveries by the Company of overpayments made to health care providers or to Insureds, and recoveries from other parties with whom the Company contracts or otherwise relies upon for payment or pricing of claims. The following rules govern the Company's actions with respect to such recoveries:

1.  In the event such recoveries relate to claims paid more than a year and 90 days before the recovery, no adjustment will be made to any Deductible or Coinsurance paid by an Insured and the Company shall be entitled to retain such recoveries for its own use. If the recovery relates to a claim paid within a year and 90 days and is not otherwise addressed herein, Deductibles and Coinsurances for an Insured will be adjusted if affected by the recovery.

2.  Such recoveries (except for recoveries made within a year and 90 days of the date of the error by the Company of overpayments to health care providers or to Insureds by the Company not involving assertion of a mass claim by the Company) will not be applied for the purpose of group rating or

divisible surplus calculation, if applicable, in any event. The cost actually paid by the Company to procure such recoveries will be treated as an administrative expense in considering group rating or divisible surplus, if applicable. The amounts of recovery available in any event to be applied to the group claims expense will be reduced by the cost to the Company to procure that recovery, including amounts paid in attorney fees, amounts paid to collection agencies or other entities, where such entities obtain recoveries on a contingency basis.

3. If such recovery amounts to less than $500 attributable in any Benefit Period (the period of time in which the Deductible or Coinsurance is calculated) for any Insured, no adjustments in Deductibles or Coinsurances will be made, and the Company shall be entitled to retain such recoveries for its own use.

4. In the event Blue Cross and Blue Shield of Kansas receives from pharmaceutical manufacturers rebates based upon amounts of claims paid by Blue Cross and Blue Shield of Kansas for certain specified pharmaceuticals, Blue Cross and Blue Shield of Kansas shall be entitled to retain such rebates for its own use, and no adjustments will be made to claims paid on behalf of the Contract Holder, to Deductibles, Coinsurances or Copayments/Copays paid by Insureds, or to other cost-sharing or claims amounts.

5. If an Insured is no longer covered by the Company at the time any such recovery is made, regardless of the amount or of the time of such recovery, the Company shall be entitled to retain such recovery for its own use.

6. If such recovery amounts cannot be attributed on an individual basis, because of having been paid as a lump sum settlement for less than the total amount of claims expense of the Company or otherwise, no adjustments will be made to any Deductible, Coinsurance or Copayment/Copay amounts paid by the Insured and the Company shall be entitled to retain such recovery for its own use.

7. The amount of any recoveries which are otherwise available for adjustments to Deductibles, Coinsurances or Copayments/Copays will be reduced by the cost to the Company to procure that recovery, including amounts paid in attorney fees, amounts paid to collection agencies or other entities obtaining recoveries on a contingency basis.

**X.** For additional information regarding the benefits covered hereunder or to obtain a copy of the list of Contracting Providers that when used will assure that you are receiving the highest possible level of benefits available under this Contract, call the customer service center phone number on your Identification Card. Information You request about benefits and lists of Contracting Providers will be furnished without charge

**Y.** **Certificate of Creditable Coverage.** You have the right to request and obtain a Certificate of Creditable Coverage from the Company while You are an Insured and up to 24 months following the date on which Your coverage cancelled.  To request a Certificate of Creditable Coverage contact the customer service center phone number on your Identification Card.

**Z.** **Contract Holder's Responsibilities Concerning Enrollment:**  It is the responsibility of the Contract Holder/employer group's Plan Administrator to submit to the Company for enrollment only those employees and dependents who meet the eligibility criteria of the Contract Holder and the Company, and to ensure and verify the continued eligibility status of covered employees and dependents. The Company has the right to recover from Insureds and/or providers any benefit payments paid on behalf of ineligible persons.

Form GI-704 1/08

## RIDER -- ADDITION OF SUBROGATION PROVISION

**PART 1.   GENERAL**

This is a Rider to Your Base Program.  It becomes effective on the date shown in the records of Blue Cross and Blue Shield of Kansas.  This Rider should be attached to Your Base Program.

The conditions described in Your Base Program also control this Rider except where this Rider specifically states there is a change.

**PART 2.   CHANGES BEING MADE BY THIS RIDER**

The following provision is added to the Base Program and applies to all parts of the program:

### SUBROGATION

1. All recoveries You obtain (whether by lawsuit, settlement or otherwise), regardless of how it is described or designated, and other than policies of health insurance issued in Your name, must be used to reimburse this Program in full for benefits paid by this Program.

2. The Program has the right to set-off future benefits due under the Program in order to obtain reimbursement for amounts You recover.

3. The Program's right of recovery under this provision attaches to the money You recover or that is paid in respect to Your legal claims, wherever or by whomever the money is paid or held.

4. You are required to notify this Program at the earliest opportunity and again at significant stages (for example, settlement, initiation of lawsuit, judgment, payment of judgment, etc.), of any settlement or litigation with any third-party.

5. You shall take such action, furnish such information and assistance, and execute such assignments and other instruments as the underwriter of this Program may require to facilitate enforcement of its rights hereunder; You shall take no action that prejudices the rights and interests of the underwriter of this Program in regard to this Subrogation provision.

Form APRI-388  3/02

## GENERAL INFORMATION

**A.**  **Subscriber/Provider Relationship**. The choice of a provider is solely the Subscriber's. The use or non-use of an adjective such as Contracting or Non-Contracting in modifying any provider is not a statement as to the ability of the provider.

**B.**  **Your Identification Card**. You must tell Your Institutional Provider or Professional Provider that You are eligible for Covered Services. When You receive services, show Your Identification Card at the provider's office. Show only the current card.

**C.**  **Your Authorization**. By accepting coverage under this Benefit Description, You permit the Plan to request any information related to a claim for services that You received and authorize that any information may be given to the Plan regarding medical services You have received. This applies to all types of claims, including claims related to Medicare.

If the Plan asks for information and does not receive it, payment for covered services cannot be made. The claim will be processed for payment only when the requested information has been received and reviewed.

**D.**  **Payment of Claims**.

    1.  For covered services received from the following providers other than Pharmacies:

        a.  **Contracting Provider of Blue Cross and Blue Shield of Kansas or another entity on behalf of Blue Cross and Blue Shield of Kansas:** Your benefits will be paid directly to the Contracting Provider.

        b.  **Contracting Provider of Blue Cross and Blue Shield of Kansas for limited services:**

            When You receive services for which the provider is contracting Your benefits will be paid directly to the Contracting Provider.

            When You receive services for which the provider is not contracting Your benefits will be paid directly to You. Such benefits are personal to You and cannot be assigned to any other person or entity.

        c.  **Non-Contracting Provider in the Kansas Plan Area:** Your benefits will be paid directly to You. Such benefits are personal to You and cannot be assigned to any other person or entity.

        d.  **Covered Provider in a class of providers that are not offered Contracting Provider status**:

            Your benefits will be paid to You unless submitted by the provider on Your behalf or assigned by You to the provider. To assign benefits, an assignment statement bearing the original signature of the Subscriber must be received with each claim submitted.

        e.  **Covered Provider Outside the Kansas Plan Area:**

            (1) Located in an area where the Blue Cross and Blue Shield of Kansas offers Contracting Provider status, directly or through arrangements with another entity, to the provider from whom service was received:

                (a) if the provider is a Contracting Provider, Your benefits will be paid to the provider.

                (b) if the provider is a Non-Contracting Provider, Your benefits will be paid directly to You, with such benefits being personal to You and not assignable to any other person or entity.

            (2) Located in an area where the Blue Cross and Blue Shield of Kansas does not offer Contracting Provider status, either directly or through arrangements with another entity, to the provider from whom service was received:

                (a) In instances where the Subscriber receives service from a provider that is contracting with the Blue Cross and/or Blue Shield Plan servicing the area in which the provider is located, payment will be made directly to the provider.

                (b) In instances where the Subscriber receives service from a provider that is not contracting with the Blue Cross and/or Blue Shield Plan servicing the area in which the provider is located, Your benefits will be paid to You unless submitted by the provider on Your behalf or assigned by You to the provider. To assign benefits, an assignment statement bearing the original signature of the Subscriber must be received with each claim submitted.

        f.  Any benefits unpaid at Your death may be paid to Your estate.

            If benefits are payable to Your estate, the Plan may pay up to $1,000 to anyone related to You by blood or marriage, whom the Plan considers to be entitled to the benefits. The Plan will be discharged to the extent of any such payment made in good faith.

    2.  For covered services received from Pharmacies:

        a.  Your benefits will be paid directly to You. Such benefits are personal to You and cannot be assigned to any other person or entity.

    b. Any benefits unpaid at Your death may be paid to Your estate.

       If benefits are payable to Your estate, the Plan may pay up to $1,000 to anyone related to You by blood or marriage, whom the Plan considers to be entitled to the benefits. The Plan will be discharged to the extent of any such payment made in good faith.

**D. Payment of Claims.**

1. **Contracting Provider of Blue Cross and Blue Shield of Kansas or another entity on behalf of Blue Cross and Blue Shield of Kansas:** Your benefits will be paid directly to the Contracting Provider.

2. **Contracting Provider of Blue Cross and Blue Shield of Kansas for limited services:**

   When You receive services for which the provider is contracting Your benefits will be paid directly to the Contracting Provider.

   When You receive services for which the provider is not contracting Your benefits will be paid directly to You. Such benefits are personal to You and cannot be assigned to any other person or entity.

3. **Non-Contracting Provider in the Kansas Plan Area:** Your benefits will be paid directly to You. Such benefits are personal to You and cannot be assigned to any other person or entity.

4. **Covered Provider in a class of providers that are not offered Contracting Provider status:**

   Your benefits will be paid to You unless submitted by the provider on Your behalf or assigned by You to the provider. To assign benefits, an assignment statement bearing the original signature of the Subscriber must be received with each claim submitted.

5. **Covered Provider Outside the Kansas Plan Area:**

       a. Located in an area where the Blue Cross and Blue Shield of Kansas offers Contracting Provider status, directly or through arrangements with another entity, to the provider from whom service was received:

          (1) if the provider is a Contracting Provider, Your benefits will be paid to the provider.

          (2) if the provider is a Non-Contracting Provider, Your benefits will be paid directly to You, with such benefits being personal to You and not assignable to any other person or entity.

       b. Located in an area where the Blue Cross and Blue Shield of Kansas does not offer Contracting Provider status, either directly or through arrangements with another entity, to the provider from whom service was received:

          (1) In instances where the Subscriber receives service from a provider that is contracting with the Blue Cross and/or Blue Shield Plan servicing the area in which the provider is located, payment will be made directly to the provider.

          (2) In instances where the Subscriber receives service from a provider that is not contracting with the Blue Cross and/or Blue Shield Plan servicing the area in which the provider is located, Your benefits will be paid to You unless submitted by the provider on Your behalf or assigned by You to the provider. To assign benefits, an assignment statement bearing the original signature of the Subscriber must be received with each claim submitted.

6. **Any benefits unpaid at Your death may be paid to Your estate.**

   If benefits are payable to Your estate, the Plan may pay up to $1,000 to anyone related to You by blood or marriage, whom the Plan considers to be entitled to the benefits. The Plan will be discharged to the extent of any such payment made in good faith.

**E. Statements Made by the Subscriber.** Coverage for a Subscriber may be rescinded or terminated due to fraudulent material misstatements made in the application for it. Coverage may also be terminated without notice if the Subscriber or a covered dependent submits a claim which is found to have been fraudulent in any criminal or civil proceeding.

**F. Claims Recoveries.**

There may be circumstances in which the Plan recovers amounts paid as claims expense from the provider of service, from the Subscriber or from a third party. Such circumstances include rebates paid to the Plan by pharmaceutical manufacturers based upon amounts of claims paid by the Plan for certain specified pharmaceuticals, amounts recovered by the Plan from health care providers or pharmaceutical manufactures through certain legal actions instituted by the Plan relating to the claims expense of more than one Subscriber, recoveries by the Plan of overpayments made to health care providers or to Subscribers, and recoveries from other parties with whom the Plan contracts or otherwise relies upon for payment or pricing of claims. The following rules govern the Plan's actions with respect to such recoveries:

1. In the event such recoveries relate to claims paid more than a year and 90 days before the recovery, no adjustment will be made to any Deductible or Coinsurance paid by a Subscriber and the underwriter of this

program (subject to the limitations otherwise set forth below) shall be entitled to retain such recoveries for its own use.  If the recovery relates to a claim paid within a year and 90 days and is not otherwise addressed herein, Deductibles and Coinsurances for a Subscriber will be adjusted if affected by the recovery.

2.  If such recovery amounts to less than $500 attributable in any Benefit Period (the period of time in which the Deductible or Coinsurance is calculated) for any Subscriber, no adjustments in Deductibles or Coinsurances will be made, and the underwriter of this program (subject to the limitations otherwise set forth herein) shall be entitled to retain such recoveries for its own use.

3.  If a Subscriber is no longer covered by this program at the time any such recovery is made, the underwriter of this program (subject to limitations otherwise set forth herein) shall be entitled to retain such recovery for its own use.

4.  In the event Blue Cross and Blue Shield of Kansas receives from pharmaceutical manufacturers rebates based upon amounts of claims paid by Blue Cross and Blue Shield of Kansas for certain specified pharmaceuticals, Blue Cross and Blue Shield of Kansas shall be entitled to retain such rebates for its own use, and no adjustments will be made to claims paid on behalf of the underwriter of this program, to Deductibles or to Coinsurances paid by Subscribers, or to other cost-sharing or claims amounts.

5.  If the underwriter of this program no longer contracts with Blue Cross and Blue Shield at the time the recovery occurs, recoveries otherwise owing to the underwriter of this program pursuant to these rules will be paid to the underwriter of this program if fewer than five years have elapsed from the date of such recovery. Nothing, however, obligates Blue Cross and Blue Shield of Kansas to continue to pursue subrogation or other recoveries after termination of the Agreement, and such active subrogation files as Blue Cross and Blue Shield of Kansas maintains shall be returned to the underwriter of this program upon such termination.

6.  Blue Cross and Blue Shield of Kansas has no obligation to pursue recovery from health care providers or manufacturers of health care products or services on behalf of the underwriter of this program for causes of action arising out of violations of antitrust law, fraud, claims relating to fraud (including claims under the Racketeering Influenced and Corrupt Organizations Act), and its administration of subrogation provisions (if any) under the underwriter of this program's benefit plan will be limited in such circumstances solely to cases in which Subscribers have individually initiated a claim or cause of action.  Notwithstanding the foregoing, if (a) Blue Cross and Blue Shield of Kansas asserts a claim or cause of action against a party (other than the underwriter of this program itself) arising out of antitrust violations or fraud by health care providers or manufacturers of health care products or services relating to claims paid by Blue Cross and Blue Shield of Kansas under insured contracts and (b) claims payment made by Blue Cross and Blue Shield of Kansas on behalf of the underwriter of this program and Subscribers would have been equally affected under the circumstances of such claim or cause of action, then the underwriter of this program assigns to Blue Cross and Blue Shield of Kansas its rights under such claim or cause of action.  If recoveries by Blue Cross and Blue Shield of Kansas in such a claim or cause of action are less than actual injury asserted by Blue Cross and Blue Shield of Kansas for itself and on behalf of the underwriter of this program and other similarly situated underwriters of programs, then Blue Cross and Blue Shield of Kansas shall pay to the underwriter of this program a prorated amount based upon claims costs under this program compared to claims costs of Blue Cross and Blue Shield of Kansas under its insured programs.  No adjustments of Deductibles or Coinsurances will be made for Subscribers in such circumstances.  This assignment of a cause of action shall survive termination of this program.

7.  The total amount of any recoveries which are available for adjustments to claims of or payments to the underwriter of this program or for adjustments to cost sharing of Subscribers of the program of the underwriter of this program in the form of Deductibles or Coinsurances will be reduced by the cost to Blue Cross and Blue Shield of Kansas to procure that recovery, including amounts paid in attorney fees, amounts paid to collection agencies or other entities obtaining recoveries on a contingency basis, and other costs.

**G.**  For additional information regarding the benefits covered hereunder or to obtain a copy of the list of Contracting Providers that when used will assure that you are receiving the highest possible level of benefits available under this Benefit Description, call the customer service center phone number on your Identification Card.  Information You request about benefits and lists of Contracting Providers will be furnished without charge.

**H.**  **Certificate of Creditable Coverage.**  You have the right to request and obtain a Certificate of Creditable Coverage from the Plan while You are a Subscriber and up to 24 months following the date on which Your coverage cancelled.  To request a Certificate of Creditable Coverage contact the customer service center phone number on your Identification Card.

**I.**  **Underwriter of the Program's Responsibilities Concerning Enrollment:**  It is the responsibility of the underwriter of this program/employer group's Plan Administrator to submit to the Plan for enrollment only those employees and dependents who meet the eligibility criteria of the underwriter of this program and the Plan, and to ensure and verify the continued eligibility status of covered employees and dependents.  The Plan has the right to recover from Subscribers and/or providers any benefit payments paid on behalf of ineligible persons.

# BLUE CROSS and BLUE SHIELD OF MASSACHUSETTS, INC.

# BLUE CROSS &BLUE SHIELD
# MASSACHUSETTS

# The *Plan's* Rights to Recover Benefit Payment

## Subrogation and Reimbursement of Benefit Payments

If you are injured by any act or omission of another person, the benefits under this HMO Blue *contract* will be subrogated. This means that the *Plan* may use your right to recover money from the person(s) who caused the injury or from any insurance company or other party. If you recover money, the *Plan* is entitled to recover up to the amount of the benefit payments that it has made. This is true no matter where or by whom the recovered money is held or how it is designated and even if you do not recover the total amount of your claim against the other person(s). This is also true if the payment you receive is described as payment for other than health care expenses. The amount you must reimburse the *Plan* will not be reduced by any attorney's fees or expenses you incur.

## Member Cooperation

You must give the *Plan* information and help. This means you must complete and sign all necessary documents to help the *Plan* get this money back. This also means that you must give the *Plan* timely notice of all significant steps during negotiation, litigation, or settlement with any third party (such as filing a claim or lawsuit, initiation of settlement discussions, agreement to a settlement in principle, etc.) and before settling any claim arising out of injuries you sustained by an act or omission of another person(s) for which the *Plan* paid benefits. You must not do anything that might limit the *Plan's* right to full reimbursement.

# BLUE CROSS and BLUE SHIELD OF NORTH CAROLINA

## ADDITIONAL TERMS OF YOUR COVERAGE *(cont.)*

on an amount other than the actual charges, including without limitation, an amount per confinement or episode of care, agreed upon schedule of fees, or other methodology as agreed upon by *BCBSNC* and the *provider*. Under certain circumstances, a contracting *provider* may receive payments from *BCBSNC* greater than the charges for services provided to an eligible *member*, or *BCBSNC* may pay less than charges for services, due to negotiated contracts. The *member* is not entitled to receive any portion of the payments made under the terms of contracts with *providers*. The *member's* liability when defined as a percent of charge shall be calculated based on the lesser of the *allowed amount* or the *provider's* actual charge for *covered services* provided to a *member*.

### Right Of Recovery Provision

Immediately upon paying or providing any benefit under the *Plan*, the *Plan* shall be subrogated to all rights of recovery a *member* has against any party potentially responsible for making any payment to a *member* due to a *member's* injuries, illness or condition, to the full extent of benefits provided or to be provided by the *Plan*.

In addition, if a *member* receives any payment from any potentially responsible party as a result of an injury, illness or condition, the *Plan* has the right to recover from, and be reimbursed by, the *member* for all amounts the *Plan* has paid and will pay as a result of that injury or illness, up to and including the full amount the *member* receives from all potentially responsible parties. The *member* agrees that if the *member* receives any payment from any potentially responsible party as a result of an injury or illness, the *member* will serve as a constructive trustee over the funds for the benefit of the *Plan*. Failure to hold such funds in trust will be deemed a breach of the *member's* fiduciary duty to the *Plan*.

Further, the *Plan* will automatically have a lien, to the extent of benefits advanced, upon any recovery whether by settlement, judgment or otherwise, that a *member* receives from any third party, any third party's insurer or any other source as a result of the *member's* injuries. The lien is in the amount of benefits paid by the *Plan* for the treatment of the illness, injury or condition for which another party is responsible.

As used throughout this provision, the term responsible party means any party possibly responsible for making any payment to a *member* due to a *member's* injuries or illness or any insurance coverage including, but not limited to, uninsured motorist coverage, underinsured motorist coverage, personal umbrella coverage, medical payments coverage, workers' compensation coverage, no-fault automobile insurance coverage, or any first party insurance coverage.

The lien can be filed with or enforced against any party who possesses funds or proceeds representing the amount of benefits paid by the *Plan* including, but not limited to, the *member*; the *member's* representative or agent; responsible party; responsible party's insurer, representative or agent; and/or any other source possessing funds representing the amount of benefits paid by the *Plan*.

The *member* acknowledges that the *Plan's* recovery rights are a first priority claim against all potentially responsible parties and are to be paid to the *Plan* before any other claim for the *member's* damages. The *Plan* shall be entitled to full reimbursement first from any potential responsible party payments, even if such payment to the *Plan* will result in a recovery to the *member* which is insufficient to make the *member* whole or to compensate the *member* in part or in whole for the damages sustained. It is further understood that the *Plan* will pay all fees associated with counsel it hires to represent its interests related to any recovery it may be entitled to, but it is agreed that the *Plan* is not required to participate in or pay court costs or attorney fees to any attorney hired by the *member*.

The terms of this entire right of recovery provision shall apply and the *Plan* is entitled to full recovery regardless of whether any liability for payment is admitted by any potentially responsible party and regardless of whether the settlement or judgment received by the *member* identifies the medical benefits the *Plan* provided. The *Plan* is entitled to recover from **any and all** settlements or judgments, even those designated as pain and suffering or non-economic damages only.

The *member* acknowledges that *BCBSNC* has been delegated authority by the *Plan Administrator* to assert and pursue the right of subrogation and/or reimbursement on behalf of the *Plan*. The *member* shall fully cooperate with *BCBSNC's* efforts to recover benefits paid by the *Plan*. It is the duty of the *member* to notify *BCBSNC* in writing of the *member's* intent to pursue a claim against any potentially responsible party, within 30 days of the date when any notice is given to any party, including an attorney, of the intention to pursue or investigate a claim to recover damages or obtain compensation due to injuries or illness sustained by the *member*. The *member* shall provide all information requested by *BCBSNC* or its representative including, but not limited to, completing and submitting any applications or other forms or statements as *BCBSNC* may reasonably request.

The *member* shall do nothing to prejudice the *Plan's* recovery rights as herein set forth. This includes, but is not limited to, refraining from entering into any settlement or recovery that attempts to reduce, waive, bar or exclude the full cost of all benefits provided by the *Plan*.

## ADDITIONAL TERMS OF YOUR COVERAGE *(cont.)*

In the event that any claim is made that any part of this right of recovery provision is ambiguous or questions arise concerning the meaning or intent of any of its terms, the *member* and the *Plan* agree that the *Plan Administrator* shall have the sole authority and discretion to resolve all disputes regarding the interpretation of this provision.

The *member* agrees that any legal action or proceeding with respect to this provision may be brought in any court of competent jurisdiction as *BCBSNC* may elect. Upon receiving benefits under the *Plan*, the *member* hereby submits to each such jurisdiction, waiving whatever rights may correspond to the *member* by reason of the *member's* present or future domicile.

### Notice Of Claim

The *Plan* will not be liable for payment of benefits unless proper notice is furnished to *BCBSNC* that *covered services* have been provided to a *member*. If the *member* files the claim, written notice must be given to *BCBSNC* within 18 months after the *member incurs* the *covered service*, except in the absence of legal capacity of the *member*. The notice must be on an approved claim form and include the data necessary for *BCBSNC* to determine benefits.

### Notice Of Benefit Determination

*BCBSNC* will provide an explanation of benefits determination to the *member* or the *member's* authorized representative within 30 days of receipt of a notice of claim if the *member* has financial liability on the claim other than a *copayment* (unless your *Plan* has chosen to provide an explanation of benefits for additional claims where the *member* does not have a financial liability other than a *copayment*). *BCBSNC* may take an extension of up to 15 additional days to complete the benefits determination if additional information is needed. If *BCBSNC* takes an extension, *BCBSNC* will notify the *member* or the *member's* authorized representative of the extension and of the information needed. You will then have 90 days to provide the requested information. As soon as *BCBSNC* receives the requested information, or at the end of the 90 days, whichever is earlier, *BCBSNC* will make a decision within 15 days.

### Limitation Of Actions

Since the *Plan* is subject to *ERISA*, you must only exhaust the first level *grievance* review process following the Notice of Claim requirement. Please see "What If You Disagree With A Decision?" for details regarding the *grievance* review process. No legal action may be taken later than three years from the date *covered services* are *incurred*. However, if you are authorized to pursue an action in federal court under *ERISA*, and you choose to pursue a second level *grievance* review, the three-year limitation is temporarily suspended until that review has been resolved.

### Coordination Of Benefits (Overlapping Coverage)

If a *member* is also enrolled in another group health plan, the *Plan* may coordinate benefits with the other plan. Coordination of benefits (COB) means that if a *member* is covered by more than one insurance plan, benefits under one plan are determined before the benefits are determined under the second plan. The plan that determines benefits first is called the primary plan. The other plan is called the secondary plan. Benefits paid by the secondary plan may be reduced to avoid paying benefits between the two plans that are greater than the cost of the health care service.

Most group health insurance plans include a coordination of benefits provision. The rules by which a plan is determined primary or secondary are listed below.

#### Order Of Benefits Determination

*Employee* or Spouse:
- The health benefit plan covering a person as an *employee* is primary
- The health benefit plan covering a person as a spouse is secondary.

*Dependent Children:*
- The health benefit plan that covers the child as a *dependent* of the parent whose birthday falls first during the year is primary
- The health benefit plan that covers the child as a *dependent* of the parent whose birthday falls later in the year is secondary
- If both parents have the same birthday, benefits under the plan that has covered the parent for a longer period of time shall be determined primary to the plan that has covered the other parent for a shorter period of time
- If the parents are divorced or separated, the following order of benefits determination is followed:
  - benefits under the health benefit plan that covers the child as a *dependent* of the parent with custody are determined primary to

41

## ADDITIONAL TERMS OF YOUR COVERAGE *(cont.)*

Should any state enact a law that mandates liability calculation methods that differ from the usual BlueCard Program method or requires a surcharge, your required payment for services in that state will be based upon the method required by that state's law.

### *Provider* Reimbursement Disclosure

*BCBSNC* has contracts with certain *providers* of health care services for the provision of, and payment for, health care services provided to all *members* entitled to health care benefits. *BCBSNC's* payment to *providers* may be based on an amount other than the actual charges, including without limitation, an amount per confinement or episode of care, agreed upon schedule of fees, or other methodology as agreed upon by *BCBSNC* and the *provider*. Under certain circumstances, a contracting *provider* may receive payments from *BCBSNC* greater than the charges for services provided to an eligible *member*, or *BCBSNC* may pay less than charges for services, due to negotiated contracts. The *member* is not entitled to receive any portion of the payments made under the terms of contracts with *providers*. The *member's* liability when defined as a percent of charge shall be calculated based on the lesser of the *allowed amount* or the *provider's* actual charge for *covered services* provided to a *member*.

### Right Of Recovery Provision

Immediately upon paying or providing any benefit under the *Plan*, the *Plan* shall be subrogated to all rights of recovery a *member* has against any party potentially responsible for making any payment to a *member* due to a *member's* injuries, illness or condition, to the full extent of benefits provided or to be provided by the *Plan*.

In addition, if a *member* receives any payment from any potentially responsible party as a result of an injury, illness or condition, the *Plan* has the right to recover from, and be reimbursed by, the *member* for all amounts the *Plan* has paid and will pay as a result of that injury or illness, up to and including the full amount the *member* receives from all potentially responsible parties. The *member* agrees that if the *member* receives any payment from any potentially responsible party as a result of an injury or illness, the *member* will serve as a constructive trustee over the funds for the benefit of the *Plan*. Failure to hold such funds in trust will be deemed a breach of the *member's* fiduciary duty to the *Plan*.

Further, the *Plan* will automatically have a lien, to the extent of benefits advanced, upon any recovery whether by settlement, judgment or otherwise, that a *member* receives from any third party, any third party's insurer or any other source as a result of the *member's* injuries. The lien is in the amount of benefits paid by the *Plan* for the treatment of the illness, injury or condition for which another party is responsible.

As used throughout this provision, the term responsible party means any party possibly responsible for making any payment to a *member* due to a *member's* injuries or illness or any insurance coverage including, but not limited to, uninsured motorist coverage, underinsured motorist coverage, personal umbrella coverage, medical payments coverage, workers' compensation coverage, no-fault automobile insurance coverage, or any first party insurance coverage.

The lien can be filed with or enforced against any party who possesses funds or proceeds representing the amount of benefits paid by the *Plan* including, but not limited to, the *member*; the *member's* representative or agent; responsible party; responsible party's insurer, representative or agent; and/or any other source possessing funds representing the amount of benefits paid by the *Plan*.

The *member* acknowledges that the *Plan's* recovery rights are a first priority claim against all potentially responsible parties and are to be paid to the *Plan* before any other claim for the *member's* damages. The *Plan* shall be entitled to full reimbursement first from any potential responsible party payments, even if such payment to the *Plan* will result in a recovery to the *member* which is insufficient to make the *member* whole or to compensate the *member* in part or in whole for the damages sustained. It is further understood that the *Plan* will pay all fees associated with counsel it hires to represent its interests related to any recovery it may be entitled to, but it is agreed that the *Plan* is not required to participate in or pay court costs or attorney fees to any attorney hired by the *member*.

The terms of this entire right of recovery provision shall apply and the *Plan* is entitled to full recovery regardless of whether any liability for payment is admitted by any potentially responsible party and regardless of whether the settlement or judgment received by the *member* identifies the medical benefits the *Plan* provided. The *Plan* is entitled to recover from **any and all** settlements or judgments, even those designated as pain and suffering or non-economic damages only.

The *member* acknowledges that *BCBSNC* has been delegated authority by the *Plan Administrator* to assert and pursue the right of subrogation and/or reimbursement on behalf of the *Plan*. The *member* shall fully cooperate with *BCBSNC's* efforts to recover benefits paid by the *Plan*. It is the duty of the *member* to notify *BCBSNC* in writing of the *member's* intent to pursue a claim against any potentially responsible party, within 30 days of the date when any notice is given to any party, including an attorney, of the intention to pursue or investigate a claim to recover

## ADDITIONAL TERMS OF YOUR COVERAGE *(cont.)*

damages or obtain compensation due to injuries or illness sustained by the *member*. The *member* shall provide all information requested by *BCBSNC* or its representative including, but not limited to, completing and submitting any applications or other forms or statements as *BCBSNC* may reasonably request.

The *member* shall do nothing to prejudice the *Plan's* recovery rights as herein set forth. This includes, but is not limited to, refraining from entering into any settlement or recovery that attempts to reduce, waive, bar or exclude the full cost of all benefits provided by the *Plan*.

In the event that any claim is made that any part of this right of recovery provision is ambiguous or questions arise concerning the meaning or intent of any of its terms, the *member* and the *Plan* agree that the *Plan Administrator* shall have the sole authority and discretion to resolve all disputes regarding the interpretation of this provision.

The *member* agrees that any legal action or proceeding with respect to this provision may be brought in any court of competent jurisdiction as *BCBSNC* may elect. Upon receiving benefits under the *Plan*, the *member* hereby submits to each such jurisdiction, waiving whatever rights may correspond to the *member* by reason of the *member's* present or future domicile.

### Notice Of Claim

The *Plan* will not be liable for payment of benefits unless proper notice is furnished to *BCBSNC* that *covered services* have been provided to a *member*. If the *member* files the claim, written notice must be given to *BCBSNC* within 18 months after the *member incurs* the *covered service*, except in the absence of legal capacity of the *member*. The notice must be on an approved claim form and include the data necessary for *BCBSNC* to determine benefits.

### Notice Of Benefit Determination

*BCBSNC* will provide an explanation of benefits determination to the *member* or the *member's* authorized representative within 30 days of receipt of a notice of claim if the *member* has financial liability on the claim other than a *copayment* (unless your *Plan* has chosen to provide an explanation of benefits for additional claims where the *member* does not have a financial liability other than a *copayment*). *BCBSNC* may take an extension of up to 15 additional days to complete the benefits determination if additional information is needed. If *BCBSNC* takes an extension, *BCBSNC* will notify the *member* or the *member's* authorized representative of the extension and of the information needed. You will then have 90 days to provide the requested information. As soon as *BCBSNC* receives the requested information, or at the end of the 90 days, whichever is earlier, *BCBSNC* will make a decision within 15 days.

### Limitation Of Actions

Since the *Plan* is subject to *ERISA*, you must only exhaust the first level *grievance* review process following the Notice of Claim requirement. Please see "What If You Disagree With A Decision?" for details regarding the *grievance* review process. No legal action may be taken later than three years from the date *covered services* are *incurred*. However, if you are authorized to pursue an action in federal court under *ERISA*, and you choose to pursue a second level *grievance* review, the three-year limitation is temporarily suspended until that review has been resolved.

### Coordination Of Benefits (Overlapping Coverage)

If a *member* is also enrolled in another group health plan, the *Plan* may coordinate benefits with the other plan. Coordination of benefits (COB) means that if a *member* is covered by more than one insurance plan, benefits under one plan are determined before the benefits are determined under the second plan. The plan that determines benefits first is called the primary plan. The other plan is called the secondary plan. Benefits paid by the secondary plan may be reduced to avoid paying benefits between the two plans that are greater than the cost of the health care service.

Most group health insurance plans include a coordination of benefits provision. The rules by which a plan is determined primary or secondary are listed below.

#### Order Of Benefits Determination

*Employee* or Spouse:
- The health benefit plan covering a person as an *employee* is primary
- The health benefit plan covering a person as a spouse is secondary.

*Dependent Children*:
- The health benefit plan that covers the child as a *dependent* of the parent whose birthday falls first during the year is primary
- The health benefit plan that covers the child as a *dependent* of the parent whose birthday falls later in the year is secondary

40

# BLUE CROSS BLUE SHIELD ASSOCIATION

# Blue Cross® and Blue Shield®
# Service Benefit Plan

http://www.fepblue.org



## 2008

A fee-for-service plan (standard and basic option)
with a preferred provider organization



For changes
in benefits
see page 9.

**Sponsored and administered by:** The Blue Cross and Blue Shield Association and participating Blue Cross and Blue Shield Plans

**Who may enroll in this Plan:** All Federal employees and annuitants who are eligible to enroll in the FEHB

Enrollment codes for this Plan:

    104 Standard Option - Self Only
    105 Standard Option - Self and Family
    111 Basic Option - Self Only
    112 Basic Option - Self and Family



**ACCREDITED
HEALTH WEB SITE**



**ACCREDITED
CASE MANAGEMENT**

This Plan has Health Web Site and Case Management
accreditation from URAC. See the 2008 FEHB Guide for
more information on accreditation.



Federal Employees
Health Benefits Program

Authorized for distribution by the:



**United States
Office of Personnel Management**

Center for
Retirement and Insurance Services
http://www.opm.gov/insure

RI 71-005

**When others are responsible for injuries**

If another person or entity, through an act or omission, causes you to suffer an injury or illness, and if we pay benefits for that injury or illness, you must agree to the provisions listed below. In addition, if you are injured and no other person or entity is responsible but you receive (or are entitled to) a recovery from another source, and if we provide benefits for that injury, you must agree to the following provisions:

- All recoveries you or your representatives obtain (whether by lawsuit, settlement, insurance or benefit program claims, or otherwise), no matter how described or designated, must be used to reimburse us in full for benefits we paid. Our share of any recovery extends only to the amount of benefits we have paid or will pay to you or your representatives. For purposes of this provision, "you" includes your covered dependents, and "your representatives" include, if applicable, your heirs, administrators, legal representatives, parents (if you are a minor), successors, or assignees. This is our right of recovery.
- We are entitled under our right of recovery to be reimbursed for our benefit payments even if you are not "made whole" for all of your damages in the recoveries that you receive. Our right of recovery is not subject to reduction for attorney's fees and costs under the "common fund" or any other doctrine.
- We will not reduce our share of any recovery unless, in the exercise of our discretion, we agree in writing to a reduction (1) because you do not receive the full amount of damages that you claimed or (2) because you had to pay attorneys' fees.
- You must cooperate in doing what is reasonably necessary to assist us with our right of recovery. You must not take any action that may prejudice our right of recovery.
- If you do not seek damages for your illness or injury, you must permit us to initiate recovery on your behalf (including the right to bring suit in your name). This is called subrogation.

If you do seek damages for your illness or injury, you must tell us promptly that you have made a claim against another party for a condition that we have paid or may pay benefits for, you must seek recovery of our benefit payments and liabilities, and you must tell us about any recoveries you obtain, whether in or out of court. We may seek a first priority lien on the proceeds of your claim in order to reimburse ourselves to the full amount of benefits we have paid or will pay.

We may request that you sign a reimbursement agreement and/or assign to us (1) your right to bring an action or (2) your right to the proceeds of a claim for your illness or injury. We may delay processing of your claims until you provide the signed reimbursement agreement and/or assignment, and we may enforce our right of recovery by offsetting future benefits.

*Note:* We will pay the costs of any covered services you receive that are in excess of any recoveries made.

Among the other situations covered by this provision, the circumstances in which we may subrogate or assert a right of recovery shall also include:

- When you are injured on premises owned by a third party; or
- When you are injured and benefits are available to you or your dependent, under any law or under any type of insurance, including, but not limited to:
  - No-fault insurance and other insurance that pays without regard to fault, including personal injury protection benefits, regardless of any election made by you to treat those benefits as secondary to this Plan
  - Uninsured and underinsured motorist coverage
  - Workers' Compensation benefits
  - Medical reimbursement coverage

Contact us if you need more information about subrogation.

**When you have Federal Employees Dental and Vision Insurance Plan (FEDVIP)**

Some FEHB plans already cover some dental and vision services. When you are covered by more than one dental/vision plan, coverage provided under your FEHB plan remains as your primary coverage. FEDVIP coverage pays secondary to that coverage. When you enroll in a dental and/or vision plan on BENEFEDS.com, you will be asked to provide information on your FEHB plan so that your plans can coordinate benefits. Providing your FEHB information may reduce your out-of-pocket cost.

# BLUECROSS and BLUESHIELD OF FLORIDA, INC.

# ADMINISTRATIVE SERVICES AGREEMENT

### between

# BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.

### and

This Administrative Services Agreement (hereinafter referred to as the "Agreement"), made this _____ day of _____, 200___, is by and between Blue Cross and Blue Shield of Florida, Inc., a Florida corporation having its principal place of business at 4800 Deerwood Campus Parkway, Jacksonville, Florida 32246 (hereinafter referred to as the "BCBSF") and _____ located at _____ _____ (hereinafter referred to as the "Employer").

WHEREAS, the Employer has established and currently sponsors a self-insured Employee Welfare Benefit Plan, to provide certain benefits (attached hereto as Exhibit "A" and hereinafter called the "Group Health Plan") for covered group members and their covered dependents; and

WHEREAS, except as otherwise specifically provided herein, the Employer is to retain all liabilities under its Group Health Plan, and BCBSF is to provide the agreed upon services to the Group Health Plan without assuming any such liability; and

WHEREAS, the Employer desires that, with respect to the Group Health Plan, BCBSF furnish certain claims processing and administrative services.

NOW, therefore, in consideration of the mutual promises contained herein, and other good and valuable consideration, the parties agree as follows:

## SECTION I

### TERM

1.1   Initial Term

The initial term of this Agreement shall be from _____(the effective date) and shall end on_____ (the termination date), unless the Agreement is terminated earlier in accordance with the provisions of this Agreement.

1

1.2  <u>Renewal Terms</u>

This Agreement will automatically renew each anniversary date for successive one year terms at the renewal rates then in effect, unless either party notifies the other party of its intent not to extend this Agreement at least 30 days prior to the applicable anniversary date.

## SECTION II

## <u>DUTIES AND RESPONSIBILITIES OF THE EMPLOYER</u>

2.1  <u>Final Authority</u>

The Employer retains all final authority and responsibility for the Group Health Plan including, but not limited to eligibility and enrollment for coverage under the Group Health Plan, the existence of coverage, the benefits structure of the Group Health Plan, claims payment decisions, cost containment program decisions, utilization benefits management, compliance with the requirements of COBRA (Consolidated Omnibus Budget Reconciliation Act of 1985, as amended), compliance with the requirements of ERISA (Employee Retirement Income Security Act of 1974, as amended), compliance with reporting and remitting abandoned property funds, and compliance with any other state and federal law or regulation applicable to the Employer, the Group Health Plan, or the administration of the Group Health Plan.

The Employer agrees to provide BCBSF with any information BCBSF reasonably requires in order to perform the administrative services set forth herein.

2.2  <u>Eligibility and Enrollment</u>

As of the first day of the term of this Agreement, the Employer will have delivered to BCBSF enrollment information regarding eligible and properly enrolled members, as determined by the Employer.  The Employer shall deliver to BCBSF all employee and dependent eligibility status changes on a monthly basis, or more frequently as mutually agreed by the parties.

The Employer shall be responsible for providing each covered employee with a copy of the plan document which shall include the Group Health Plan.

2.3   <u>Financial Obligations</u>

    A.   Claims Payment

        The Employer is financially responsible for the payment of all claims paid under the Group Health Plan.  Financial arrangements regarding the payment of such claims are set forth in Exhibit "B".

    B.   Administrative Fees

        The Employer agrees to promptly pay all administrative fees as set forth in Exhibit "B".  Administrative fees are not subject to change during the initial term of this Agreement, except as set forth below.  The administrative fees shall be payable to BCBSF within 10 days of written notification to the Employer of the amount owed.

    C.   Late Charges

        In the event the Employer fails to pay any amount owed in full by the due date, the Employer shall pay BCBSF, in addition to the amount due, a late charge as set forth in Exhibit "B".

    D.   Modifications

        BCBSF may modify the administrative fees contained in Exhibit "B" at any time on or after the first anniversary of this Agreement's effective date, upon giving forty-five (45) days prior written notice to the Employer.  Additionally, BCBSF, at any time, may modify the administrative fee, if the Employer substantially modifies the Group Health Plan or changes enrollment.

2.4   <u>Use of Names and Logos</u>

The Employer agrees to allow BCBSF to use the Employer's name and logo on I.D. cards and other forms necessary to effectuate this Agreement, and to promote the Employer's relationship with BCBSF to potential or existing providers.  BCBSF shall not use the Employer's name or logo for any other purpose without the prior written consent of the Employer.

The Employer agrees that the names, logos, symbols, trademarks, tradenames, and service marks of BCBSF, whether presently existing or hereafter established, are the sole property of BCBSF and BCBSF retains the right to the use and control thereof.  The Employer shall not use BCBSF's name, logos, symbols, trademarks or service marks in advertising or promotional materials or otherwise without the prior written consent of BCBSF and shall cease any such usage immediately upon written notice by BCBSF or upon termination of this Agreement, whichever is sooner.

3

SECTION III

DUTIES AND RESPONSIBILITIES OF BCBSF

3.1 Generally

It is understood and agreed that BCBSF is empowered and required to act with respect to the Group Health Plan only as expressly stated herein.

The Employer and BCBSF agree that BCBSF's role is to provide administrative claims payment services, that BCBSF does not assume any financial risk or obligation with respect to claims, that the services rendered by BCBSF under this Agreement shall not include the power to exercise control over the Group Health Plan's assets, if any, or discretionary authority over the Health Care Plan's operations, and that BCBSF will not for any purpose, under ERISA or otherwise, be deemed to be the "Plan Administrator" of the Group Health Plan or a "fiduciary" with respect to the Group Health Plan. BCBSF's services hereunder are intended to and shall consist only of ministerial functions. The Group Health Plan's "Administrator" for purposes of ERISA is the Employer.

3.2 Enrollment; Forms and I.D. Cards

BCBSF shall enroll those individuals who have completed an application and are identified by the Employer as eligible for benefits under the Group Health Plan on the effective date of this Agreement, and subsequently during the continuance of this Agreement. BCBSF shall be entitled to rely on the information furnished to it by the Employer, and the Employer shall hold BCBSF harmless for any inaccuracy or failure to provide such information in a timely manner.

BCBSF shall furnish to the Employer, for distribution to persons participating in the Group Health Plan, a supply of identification cards, benefit plan descriptions, forms to be used for submission of claims and enrollment, and any other forms necessary for the administration of the Group Health Plan, as determined by BCBSF.

3.3 Claims Processing

BCBSF shall provide claims processing services on behalf of the Employer for all properly submitted claims, in accordance with the benefits and procedures set forth in Exhibit "A", using funds solely supplied by the Employer, as set forth in Exhibit "B". BCBSF shall furnish each claimant with an explanation of each claim that is paid, rejected, suspended or denied.

For purposes of this Agreement, the term "claim(s)" shall be defined as the amount paid or payable by BCBSF to providers of services and/or covered group members under this Agreement and the Group Health Plan, and in conformity with any agreements BCBSF enters into with such providers of services, and includes capitation, physician incentives, pharmacy, physician, hospital and other fee-for-service claims expenditures.

3.4   Program Administration

BCBSF shall administer its established cost containment programs and utilization benefits management programs, as selected by the Employer and described in the Group Health Plan.

BCBSF shall make available its Preferred Provider Organization Program(s) to covered group members and their covered dependents, as set forth in the Group Health Plan.  Any agreements between providers of services and BCBSF are the sole property of BCBSF and BCBSF retains the right to the use and control thereof.

3.5   Inaccurate Payments

Whenever BCBSF becomes aware that the payment of a claim under the Group Health Plan to any person was, or may have been, made which was not in accordance with the terms of the Group Health Plan, whether or not such payment was BCBSF's fault, and whether or not such payment was more than or less than was appropriate under the terms of the Group Health Plan, BCBSF shall investigate such payment in accordance with its standard commercial insurance business practices and either 1) for a payment of $50.00 or more, make a diligent effort to recover any payment which was more than was appropriate under the Group Health Plan or 2) as the case may be, adjust any claim the payment of which was less than appropriate under the Group Health Plan. The Employer delegates to BCBSF the discretion and the authority to determine under what circumstances to compromise a claim or to settle for less than the full amount of the claim. In the event any part of an inaccurate payment is recovered, the Employer will receive a refund from BCBSF. Nothing herein shall require BCBSF to institute a legal action or suit to recover payments made by BCBSF.

Additionally, the Employer delegates to BCBSF the discretion and authority to pursue recoveries for claims paid as a result of fraud, abuse or other inappropriate action by a third party , including the right to opt-out or opt-in the Employer from any class action. These claims include, but are not limited to, all legal claims the Employer can assert whether based on common law or statute such as RICO, antitrust, deceptive trade practices, consumer fraud, insurance fraud, unjust enrichment, breach of fiduciary duty, breach of contract, breach of covenant of good faith and fair dealing, torts (including fraud, negligence, and product liability), breach of warranty, medical

5

monitoring, false claims and kickbacks. If BCBSF obtains a recovery from any of these efforts, BCBSF will reimburse the Employer's pro rata share of the recovery. This share is calculated from the Employer's claims history or covered members at the time of such recovery, less the Employer's pro rata share of costs, if any, fees paid to outside counsel and any other costs incurred in obtaining that recovery. BCBSF will not charge the Employer for any costs if BCBSF does not obtain a recovery that exceeds those costs.

3.6   Records and Reports

BCBSF agrees to establish, maintain and provide to the Employer, records and reports generated for the purposes of reporting claims experience and conducting audits of operations. BCBSF will provide claims information only accordance with Exhibit C (and Exhibit D, if applicable) to this Agreement. BCBSF will not provide any information with regard to provider pricing agreements or any other information which is of a confidential or proprietary nature, as determined by BCBSF.

3.7   Pharmacy Rebates

In certain circumstances, BCBSF and/or its pharmacy benefit manager ("PBM") negotiate(s) and receive(s) formulary rebates, volume discounts, and/or fees from certain drug manufacturers as a result of the inclusion of such manufacturer's branded products on BCBSF's formularies ("Rebates").

The PBM generally passes Rebates through to BCBSF, less a 12.5% fee as part of its compensation for its services.  At times, the PBM may pass through a guaranteed minimum amount per prescription that exceeds the Rebates otherwise payable to BCBSF.  In either situation, BCBSF passes through 100% of the amounts it receives to the Employer.

BCBSF may receive a portion of the Rebates on a prepaid, estimated basis, before any drug claims are filed and paid.  To the extent that BCBSF receives prepaid, estimated rebate amounts, BCBSF retains, as part of its compensation,  the interest earned on such amounts from the time it receives such prepayments until it forwards the Employer's Rebates.  This time period is generally nine to twelve months.  BCBSF expects to earn interest at the rate of 1.25% per annum.

BCBSF pays the Employer its Rebates or guaranteed minimum amount after BCBSF is able to determine the share attributable to the drug claims actually made by Employer's group members.  This typically occurs seven to nine months after the end of the calendar quarter in which the drugs were dispensed.

BCBSF will provide more specific information on the amounts retained by BCBSF or the PBM upon request by the Employer.

6

3.8   Claims Payments

The source or sources of payment under the Group Health Plan are to be only the assets of the Employer, and BCBSF will have no liability whatsoever for providing a source from which payments will be made under the Health Care Plan.

3.9   Providers Outside the State of Florida

A.   BlueCard

Administrator participates in a program called "BlueCard." Whenever member's access health care services outside the geographic area BCBSF serves, the claim for those services may be processed through BlueCard and presented to BCBSF for payment in conformity with network access rules of the BlueCard Policies then in effect ("Policies"). Under BlueCard, when members receive covered health care services within the geographic area served by an on-site Blue Cross and/or Blue Shield Licensee ("Host Blue"), BCBSF will remain responsible to Employer for fulfilling BCBSF contract obligations. However, the Host Blue will only be responsible, in accordance with applicable BlueCard Policies, if any, for providing such services as contracting with its participating providers and handling all interaction with its participating providers. The financial terms of BlueCard are described generally below.

B.   Liability Calculation Method Per Claim

The calculation of member liability on claims for covered health care services incurred outside the geographic area BCBSF serves and processed through BlueCard will be based on the lower of the provider's billed charges or the negotiated price BCBSF pays the Host Blue.

The calculation of Employer's liability on claims for covered health care services incurred outside the geographic area BCBSF serves and processed through BlueCard will be based on the negotiated price BCBSF pays the Host Blue.

The methods employed by a Host Blue to determine a negotiated price will vary among Host Blues based on the terms of each Host Blue's provider contracts. The negotiated price paid to a Host Blue by Administrator on a claim for health care services processed through BlueCard may represent:

(i)  the actual price paid on the claim by the Host Blue to the health care provider ("Actual Price"), or

7

(ii) an estimated price, determined by the Host Blue in accordance with BlueCard Policies, based on the Actual Price increased or reduced to reflect aggregate payments expected to result from settlements, withholds, any other contingent payment arrangements and non-claims transactions with all of the Host Blue's health care providers or one or more particular providers ("Estimated Price"), or

(iii) an average price, determined by the Host Blue in accordance with BlueCard Policies, based on a billed charges discount representing the Host Blue's average savings expected after settlements, withholds, any other contingent payment arrangements and non-claims transactions for all of its providers or for a specified group of providers ("Average Price"). An Average Price may result in greater variation to the member and the Employee from the Actual Price than would an Estimated Price.

Host Blues using either the Estimated Price or Average Price will, in accordance with BlueCard Policies, prospectively increase or reduce the Estimated Price or Average Price to correct for over - or underestimation of past prices. However, the amount paid by the member and the Employer is a final price and will not be affected by such prospective adjustment. In addition, the use of a liability calculation method of Estimated Price or Average Price may result in some portion of the amount paid by the Employer being held in a variance account by the Host Blue, pending settlement with its participating providers. Because all amounts paid are final, the fund held in a variance account, if any, do not belong to the Employer and are eventually exhausted by provider settlements and through prospective adjustment to the negotiated prices.

Statutes in a small number of states may require a Host Blue either (1) to use a basis for calculating the member's liability for covered health care services that does not reflect the entire savings realized, or expected to be realized, on a particular claim or (2) to add a surcharge. Should any state statutes mandate liability calculation methods that differ from the negotiated price methodology or require a surcharge, the Host Blue would then calculate member's liability and the Employer liability for any covered health care services consistent with the applicable state statute in effect at the time the member received those services.

C.    Return of Recoveries

Under BlueCard, recoveries from a Host Blue or from participating providers of a Host Blue can arise in several ways, including but not limited to anti-fraud and abuse audits, provider/hospital audits, credit balance audits, utilization review refunds, and unsolicited refunds. In some cases, the Host Blue will engage third parties to assist in discovery or collection of recovery amounts.

8

The fees of such a third party are netted against the recovery. Recovery amounts, net of fees, if any, will be applied in accordance with applicable BlueCard Policies, which generally require correction on a claim-by-claim or prospective basis.

Unless otherwise agreed to by the Host Blue, Home Licensees may request adjustments from the Host Blue for full provider refunds due to the retroactive cancellation of membership only for one year after the Inter-Licensee financial settlement process date of the original claim. However, recovery of claim payments associated with a retroactive cancellation may not be possible if the recovery conflicts with the Host Blue's state law, provider contracts or jeopardizes its relationship with its providers.

D.   BlueCard Fees and Compensation

Employer understands and agrees (1) to pay certain fees and compensation to BCBSF which BCBSF is obligated under BlueCard to pay to the Host Blue, to the Blue Cross Blue Shield Association, or to the BlueCard vendors, unless BCBSF's contract obligations to the Employer require those fees and compensation to be paid only by Administrator and (2) that fees and compensation under BlueCard may be revised from time to time without Employer's prior approval in accordance with the standard procedures for revising fees and compensation under BlueCard. Some of these fees and compensation are charged each time a claim is processed through BlueCard and include, but are not limited to, access fees, administrative expense allowance fees, Central Financial Agency Fees, and ITS Transaction Fees. Also, some of these claim-based fees, such as the access fee and the administrative expense allowance fee may be passed on to the Employer as an additional claim liability. Other fees include, but are not limited to, an 800 number fee and a fee for providing provider directories.

E.   Inconsistencies

To the extent of any inconsistency between the above provision titled "Providers Outside the State of Florida" and other terms or conditions of the Agreement, the above provision controls.

SECTION IV

TERMINATION

4.1  Administration After Termination

The Employer is solely liable and responsible for all claims incurred under the Group Health Plan by its covered group members and their dependents during the term of this Agreement, including those incurred claims which are

9

not presented to the Employer or BCBSF during the term of this Agreement. BCBSF will adjudicate all claims incurred during the term of this Agreement. For purposes of this Agreement, the date of an incurred claim is the date the particular service was rendered or the supply was furnished.  After the effective date of termination of this Agreement, the Employer will continue to provide BCBSF with funds to pay claims incurred prior to the termination date and will continue to pay the applicable administrative fees as set forth in Exhibit "B".

### 4.2   Unilateral Termination

The Employer or BCBSF may unilaterally terminate this Agreement upon 90 days prior written notice to the other after the initial term of this Agreement.

### 4.3   Termination On Anniversary Date

This Agreement shall automatically terminate as of the date of any anniversary of the effective date of this Agreement, if either the Employer or BCBSF has given at least 30 days prior written notice to the other of its intention not to renew this Agreement as of that anniversary date.

### 4.4   Termination Upon Default

Upon the occurrence of any of the following events, as determined by BCBSF, this Agreement will automatically terminate at the end of the 6th business day following the day upon which the Employer is notified of any of the events of default set forth hereunder, and then only in the event that the Employer has not cured the incident of default:

1.   The Employer's failure to provide adequate funds, as set in Exhibit "B", as necessary for the payment of claims pursuant to the Group Health Plan;

2.   The Employer's failure to pay any administrative fees or late penalty as set forth in Exhibit "B" of this Agreement;

3.   The Employer ceases to maintain a Group Health Plan;

4.   The Employer modifies the Group Health Plan without the prior written consent of BCBSF;

5.   At any time BCBSF has reasonable grounds for insecurity with respect to the Employer's financial ability to adequately fund the Group Health Plan, and the Employer has failed to immediately provide adequate assurances of financial soundness to BCBSF;

6.  At any time any judicial or regulatory body determines that this Agreement, or any provision of this Agreement, is invalid or illegal, or that this arrangement constitutes an insurance policy or program which is subject to state and/or federal insurance regulations and/or taxation;

7.  At any time the Employer otherwise materially breaches this Agreement.

### 4.5   Rights and Responsibilities Upon Termination

In the event of termination of this Agreement, the Employer will immediately notify each covered group member of the termination date.

Termination of this Agreement for any reason shall not affect the rights or obligations of either party which arise prior to the date of termination.

## SECTION V

## LEGAL ACTION; INDEMNIFICATION

### 5.1   Standard of Care

BCBSF and the Employer shall each use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims in the performance of its duties hereunder.

### 5.2   Liability; Indemnification

BCBSF shall not be liable to the Employer or any other person for any mistake of judgment or other action taken in good faith, or for any loss or damage occasioned thereby, unless the loss or damage is due to BCBSF's gross negligence, criminal conduct or fraudulent acts.

The Employer hereby agrees to indemnify and hold harmless BCBSF, its directors, officers, employees and agents against any and all actions, claims, lawsuits, settlements, judgments, costs, interest, penalties, expenses and taxes, including but not limited to, attorneys fees and courts costs, resulting from or arising directly or indirectly out of or in connection with any function of BCBSF under this Agreement, including the administration of any Cost Containment or Utilization Benefit Management Programs, or payments made pursuant to the direction of the Employer, or arising from any legal action or proceeding to recover benefits under this Agreement, in consequence of any acts or omissions occurring during the operation of this

11

Agreement alleged to be a breach of fiduciary duty under ERISA, or arising from any allegation of a breach of confidentiality arising out of a release of confidential information to the Group or a third party unless it is determined that the direct and sole cause of such liability was the result of gross negligence, criminal conduct or fraudulent acts on the part of BCBSF or any of its directors, officers, employees or agents.  Further, the Employer agrees to indemnify and hold harmless BCBSF for any taxes or assessments, including penalties and interest, or any other amounts legally levied based on the terms of this Agreement.  This provision applies to any amounts imposed, now or later, under the authority of any federal, state, or local taxing jurisdiction.  This provision will continue in effect after termination of this Agreement for any reason.

### 5.3   Legal Actions

In the event BCBSF is served with process in any lawsuit or is made a party to any arbitration proceeding or other legal action relating to any matter for which indemnification is required under the preceding paragraph, the Employer shall, upon written request by BCBSF, immediately furnish a defense to and indemnify and hold harmless BCBSF in any such lawsuit, proceeding or other action and shall use its best efforts to secure, by motion or otherwise, the dismissal of BCBSF from such lawsuit, proceeding or other action.  BCBSF will provide the Employer with available data and materials that are reasonably necessary for the preparation of the defense of such lawsuit, proceeding or other action.


## SECTION VI

## MISCELLANEOUS PROVISIONS

### 6.1   Amendment

Except as otherwise provided for herein, this Agreement may be modified, amended, renewed, or extended only upon mutual agreement, in writing, signed by the duly authorized representatives of the Employer and BCBSF.

### 6.2   Subsidiaries and Affiliates

Any of the functions to be performed by BCBSF under this Agreement may be performed by BCBSF or any of its subsidiaries, affiliates, or designees.

### 6.3   Governing Law

This Agreement is subject to and shall be governed by the laws of the State of Florida, except where those laws are preempted by the laws of the United States.

6.4   Venue

All actions or proceedings instituted by the Employer or BCBSF hereunder shall be brought in a court of competent jurisdiction in Duval County, Florida.

6.5   Waiver of Breach

Waiver of a breach of any provision of this Agreement shall not be deemed a waiver of any other breach of the same or a different provision.

6.6   Inconsistencies

If the provisions of this Agreement are in any way inconsistent with the provisions of the Group Health Plan, then the provisions of this Agreement shall prevail and the other provisions shall be deemed modified, but only to the extent necessary to implement the intent of the parties expressed herein.

6.7   Notices

Any notice required to be given pursuant to this Agreement shall be in writing, postage pre-paid, and shall be sent by certified or registered mail, return receipt requested, or by Federal Express or other overnight mail delivery for which evidence of delivery is obtained by the sender, to BCBSF or the Employer at the addresses indicated on the first page of this Agreement, or such other addresses that the parties may hereafter designate.  The notice shall be effective on the date the notice was posted.

6.8   Entire Agreement

This Agreement, including the attachments hereto, contains the entire agreement between BCBSF and the Employer with respect to the specific subject matter hereof.  Any prior agreements, promises, negotiations or representations, either verbal or written, relating to the subject matter of this Agreement and not expressly set forth in this Agreement are of no force and effect.

6.9   Severability

In the event any provision of this Agreement is deemed to be invalid or unenforceable, all other provisions shall remain in full force and effect.

6.10  Binding Effect of Agreement

The Agreement shall be binding upon and inure to the benefit of the parties, their agents, servants, employees, successors, and assigns unless otherwise set forth herein or agreed to by the parties.

### 6.11 Survival

The rights and obligations of the parties as set forth herein shall survive the termination of this Agreement to the extent necessary to effectuate the intent of the parties as expressed herein.

### 6.12 Independent Relationship

Notwithstanding any other provision of this Agreement, in the performance of the obligations of this Agreement, each party is at all times acting and performing as an independent contractor with respect to the other party.  It is further expressly agreed that no work, act, commission or omission of either party (or any of its agents or employees) pursuant to the terms and conditions of this Agreement, shall be construed to make or render such party (or any of its agents or employees) an agent, servant, representative, or employee of, or joint venture with, such other party.

### 6.13 Execution of Agreement

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and such counterparts shall constitute one and the same instrument.

IN WITNESS WHEREOF, on the date first written above, the parties have caused this Agreement to be executed by their duly authorized representatives.

BLUE CROSS AND BLUE SHIELD
   FLORIDA, INC.

_____     _____

_____     _____
Signature                                Signature

_____     _____
Name (Printed)                        Name (Printed)

_____     _____
Title                                      Title

_____     _____
Date                                      Date

# EXHIBIT "A"

**to the**
## ADMINISTRATIVE SERVICES AGREEMENT
**between**

## BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.

**and**

---

## GROUP HEALTH PLAN

The entire Group Health Plan is attached hereto and made a part of this Agreement.