# APPENDIX
# PART 1

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | CIVIL ACTION |
| | § | |
| v. | § | NO. 08-1633 |
| | § | |
| US Bancorp; BrownGreer, PLC; and John | § | SECTION L, MAG. 3 |
| Does | § | |
| | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |
| | § | |
| | § | In Relation to: MDL Docket No. 1657 |
| | § | |
| | § | In Re: VIOXX |
| | § | |
| | § | PRODUCTS LIABILITY LITIGATION |

## AFFIDAVIT OF TRUDY TAPPAN

Comes the affiant, Trudy Tappan, and under penalty of perjury do state the following:

1.     My name is Trudy Tappan, and I am Corporate Director of Risk Management at AvMed, Inc. and have personal knowledge of the events described herein.

2.     AvMed, Inc. is a health benefit plan which provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans.

3.     During the year 2007, AvMed, Inc. provided health benefits to approximately 213,251[1] plan members, who participate in approximately 1,464 plans.

4.     The vast majority of these plans are self-funded plans, and/or are governed by the Employee Retirement Security Act of 1974 (ERISA).

5.     Each of these 1,464 plans has their own set of plan documents.

---

[1] AIS's Directory of Health Plans: 2008

6.     Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that AvMed, Inc. employs relating to the plan's rights of subrogation and/or reimbursement.

7.     AvMed, Inc. in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.     Further the Affiant Sayeth Naught.

Dated. *June 17, 2008*

*Trudy Tappan*
Trudy Tappan
Corporate Director of Risk Management

# EXHIBIT A

# AvMED, INC.

Doc #1

> a) First, the plan covering the person as an employee, or as the employee's dependent.
>
> b)      Second, the coverage purchased under the plan covering the person as a former employee, or as the former employee's dependent provided according to the provisions of COBRA.

11.04   For the purpose of determining the applicability and implementing the terms of the Coordination of Benefits provision of this agreement, AvMed may, without the consent of or notice to any person, release to or obtain from any other insurance Company, organizations or person, any information, with respect to any Participant, which AvMed deems to be necessary for such purposes.

11.05   Whenever payments which should have been made under the Plan in accordance with this provision have been made under any other plans, the Plan shall have the right, exercisable alone and in its sole discretion, to pay over to any organizations making such other payments any amounts the Plan shall determine to be warranted in order to satisfy the intent of this provision, and amounts so paid shall be deemed to be Benefits paid under this Plan.

11.06   All treatments must be Medically Necessary and comply with all terms, conditions, Limitations, and Exclusions of this Plan even if the Plan is secondary to other coverage and the treatment is covered under the other coverage.

11.07   Persons Eligible for Medicare

> 11.07.01   Medicare shall be considered the secondary plan and this Plan shall be considered the primary plan with respect to the following covered persons entitled to Medicare:
>
> a)   For Medicare entitlement due to age, active employees and their spouses;
>
> b)   For Medicare entitlement due to disability, employees under this Plan due to current employment status and their covered Dependents;
>
> c)   For Medicare entitlement due to end-stage renal disease, all covered persons during the first 30 months of Medicare entitlement.
>
> 11.07.02   For all other covered persons entitled to Medicare, this Plan shall be secondary plan. When this Plan is secondary to Medicare, the amount payable under this Plan shall be reduced by the amount payable under Medicare, if any, regardless of whether the covered person has enrolled in Medicare.

## XII. SUBROGATION AND RIGHT OF RECOVERY

If The Plan provides health care benefits under this Contract to a Member for injuries or illness for which another party is or may be responsible, then The Plan retains the right to repayment of the full cost of all benefits provided by The Plan on behalf of the Member that are associated with the injury or illness for which another party is or may be responsible. The Plan's rights of recovery apply to any recoveries made by or on behalf of the Member from the following third-party sources, as allowed by law, including but not limited to: payments made by a third-party tortfeasor or any insurance company on behalf of the third-party tortfeasor; any payments or awards under an uninsured or underinsured motorist coverage policy; any worker's compensation or disability award or settlement; medical payments coverage under any automobile policy, premises or homeowners medical payments coverage or premises or homeowners

insurance coverage; any other payments from a source intended to compensate a Member for injuries resulting from an accident or alleged negligence. For purposes of this Contract, a tortfeasor is any party who has committed injury, or wrongful act done willingly, negligently or in circumstances involving strict liability, but not including breach of contract for which a civil suit can be brought.

Member specifically acknowledges The Plan's right of subrogation. When The Plan provides health care benefits for injuries or illnesses for which a third party is or may be responsible, The Plan shall be subrogated to the Member's rights of recovery against any party to the extent of the full cost of all benefits provided by The Plan, to the fullest extent permitted by law. The Plan may proceed against any party with or without the Member's consent.

Member also specifically acknowledges The Plan's right of reimbursement. This right of reimbursement attaches, to the fullest extent permitted by law, when The Plan has provided health care benefits for injuries or illness for which another party is or may be responsible and the Member and/or the Member's representative has recovered any amounts from the third party or any party making payments on the third party's behalf. By providing any benefit under this Contract, The Plan is granted an assignment of the proceeds of any settlement, judgment or other payment received by the Member to the extent of the full cost of all benefits provided by The Plan. The Plan's right of reimbursement is cumulative with and not exclusive of The Plan's subrogation right and The Plan may choose to exercise either or both rights of recovery.

Member and the Member's representatives further agree to:

a)    Notify The Plan promptly and in writing when notice is given to any third party of the intention to investigate or pursue a claim to recover damages or obtain compensation due to injuries or illness sustained by the Member that may be the legal responsibility of a third party; and

b)    Cooperate with The Plan and do whatever is necessary to secure The Plan's rights of subrogation and/or reimbursement under this Contract; and

c)    Give The Plan a first priority lien on any recovery, settlement or judgment or other source of compensation which may be had from a third party to the extent of the full cost of all benefits associated with injuries or illness provided by The Plan for which a third party is or may be responsible (regardless of whether specifically set forth in the recovery, settlement, judgment or compensation agreement); and

d)    Pay, as the first priority, from any recovery, settlement or judgment or other source of compensation, any and all amounts due The Plan as reimbursement for the full cost of all benefits associated with injuries or illness provided by The Plan for which a third party is or may be responsible (regardless of whether specifically set forth in the recovery, settlement, judgment, or compensation agreement), unless otherwise agreed to by The Plan in writing; and

e)    Do nothing to prejudice The Plan's rights as set forth above. This includes, but is not limited to, refraining from making any settlement or recovery, which specifically attempts to reduce or exclude the full cost of all benefits, provided by The Plan.

The Plan may recover the full cost of all benefits provided by The Plan under this Contract without regard to any claim of fault on the part of the Member, whether by comparative negligence or otherwise. No court costs or attorney fees may be deducted from The Plan's recovery without the prior express written consent of The Plan. In the event the Member or the Member's representative fails to cooperate with The Plan, the Member shall be responsible for all benefits paid by The Plan in addition to costs and attorney's fees incurred by The Plan in obtaining repayment.

# 2

a) For Medicare entitlement due to age, active employees and their spouses;
b) For Medicare entitlement due to disability, employees under this Plan due to current employment status and their family Participants;
c) For Medicare entitlement due to end-stage renal disease, all covered persons during the first 30 months of Medicare settlement.

12.07.02    For all other covered persons entitled to Medicare, this Plan shall be the secondary plan. When this Plan is secondary to Medicare, the amount payable under this Plan shall be reduced by the amount payable under Medicare, if any, regardless of whether the covered person has enrolled in Medicare.

## XIII. REIMBURSEMENT

In the event that the Plan provides medical benefits or payments to a Participant who suffers injury, disease, or illness by virtue of a negligent act or omission by a third party, the Plan is entitled to reimbursement from the Participant in accordance with 768.76 (4), *Florida Statutes*.

Participant may be asked to provide a written assignment to the Plan of Participant's rights to all Claims, demands, and rights to recovery that Participant may have against the third party. The Plan may take any action it deems necessary to protect its rights to recover the amount of any payments made by the Plan, including the right to bring suit in Participant's name. Participant shall execute and deliver any and all instruments and papers as may be required by the Plan and do whatever else is necessary to secure such recovery rights of the Plan.

Participant shall hold such proceeds in trust for the benefit of the Plan and pay them to the Plan upon demand if the proceeds have been paid directly to the Participant.

## XIV. DISCLAIMER OF LIABILITY

14.01   AvMed does not directly employ any practicing physicians nor any Hospital personnel or physicians. These health care providers are independent contractors and are not the agents or employees of AvMed or the Plan. AvMed shall be deemed not to be a health care provider with respect to any services performed or rendered by any such independent contractors. Participating Providers maintain the physician/patient relationship with Participants and are solely responsible for all Medical Services that Participating Providers render to Participants. Therefore, neither AvMed nor the Plan shall be liable for any negligent act or omission committed by any independent practicing physicians, nurses, or medical personnel, nor any Hospital or health care facility, its personnel, other health care professionals or any of their employees or agents who may, from time to time, provide Medical Services to a Participant of AvMed. Furthermore, AvMed nor the Plan shall be liable for any negligent act or omission of any of these independent health care professionals who treat Participants of the Plan.

14.02   Certain Participants may, for personal reasons, refuse to accept procedures or treatment recommended by Participating Physicians. Participating Physicians may regard such refusal to accept their recommendations as incompatible with the continuance of the physician/patient relationship and as obstructing the provision of proper medical care. If a Participant refuses to accept the medical treatment or procedure recommended by the Participating Physician and if, in the judgment of the Participating Physician, no professionally acceptable alternative exists or if

#3

information, with respect to any Participant, which AvMed deems to be necessary for such purposes.

11.05  Whenever payments which should have been made under the Plan in accordance with this provision have been made under any other plans, AvMed shall have the right, exercisable alone and in its sole discretion, to pay over to any organizations making such other payments any amounts AvMed shall determine to be warranted in order to satisfy the intent of this provision, and amounts so paid shall be deemed to be Benefits paid under this Plan.

11.06  All treatments must be Medically Necessary and comply with all terms, conditions, Limitations, and Exclusions of this Plan even if the Plan is secondary to other coverage and the treatment is covered under the other coverage.

11.07  Persons Eligible for Medicare

    11.07.01   Medicare shall be considered the secondary plan and this Plan shall be considered the primary plan with respect to the following covered persons entitled to Medicare:

        a)   For Medicare entitlement due to age, active Participants and their spouses;

        b)   For Medicare entitlement due to disability, Participants under this Plan due to current employment status and their family Participants;

        c)   For Medicare entitlement due to end-stage renal disease, all covered persons during the first 30 months of Medicare entitlement.

    11.07.02   For all other covered persons entitled to Medicare, this Plan shall be secondary plan. When this Plan is secondary to Medicare, the amount payable under this Plan shall be reduced by the amount payable under Medicare, if any, regardless of whether the covered person has enrolled in Medicare.

## XII.   REIMBURSEMENT

In the event that the Plan provides medical benefits or payments to a Participant who suffers injury, disease, or illness by virtue of a negligent act or omission by a third party, the Plan is entitled to reimbursement from the Participant.

Participant may be asked to provide a written assignment to the Plan of Participant's rights to all claims, demands, and rights to recovery that Participant may have against the third party. The Plan may take any action it deems necessary to protect its rights to recover the amount of any payments made by the Plan, including the right to bring suit in Participant's name. Participant shall execute and deliver any and all instruments and papers as may be required by the Plan and do whatever else is necessary to secure such recovery rights of the Plan.

Participant shall hold such proceeds in trust for the benefit of AvMed and pay them to AvMed upon demand if the proceeds have been paid directly to the Participant.

29

# AETNA, INC.

# Summary of Material Modifications – Changes Effective October 19, 2007

**This document restates an important provision that has always been in the Wawa medical plans provided through Aetna. It also contains important information about your rights under the plan and ERISA. Please read this notice and keep it with your Health and Welfare Benefits Handbook for future reference.**

This document should be used in conjunction with the 2005 Health and Welfare Benefits Handbook.

Please review this information carefully and contact Wawa's HR Service Center at 1-800-444-WAWA, option 2#, 6# if you have any questions.

**Addition of a Subrogation/Reimbursement Provision – All plans**

**SUBROGATION AND RIGHT OF RECOVERY PROVISION**

**Definitions**

As used throughout this provision, the term **Responsible Party** means any party actually, possibly, or potentially responsible for making any payment to a **Covered Person** due to a **Covered Person's** injury, illness or condition. The term **Responsible Party** includes the liability insurer of such party or any insurance coverage.

For purposes of this provision, the term **Insurance Coverage** refers to any coverage providing medical expense coverage or liability coverage including, but not limited to, uninsured motorist coverage, underinsured motorist coverage, personal umbrella coverage, medical payments coverage, workers compensation coverage, no-fault automobile insurance coverage or any first party insurance coverage.

For purposes of this provision, a **Covered Person** includes anyone on whose behalf the plan pays or provides any benefit including, but not limited to, the minor child or dependent of any plan member or person entitled to receive any benefits from the plan.

**Subrogation**

Immediately upon paying or providing any benefit under this plan, the plan shall be subrogated to (stand in the place of) all rights of recovery a **Covered Person** has against any **Responsible Party** with respect to any payment made by the **Responsible Party** to a **Covered Person** due to a **Covered Person's** injury, illness or condition to the full extent of benefits provided or to be provided by the plan.

**Reimbursement**

In addition, if a **Covered Person** receives any payment from any **Responsible Party** or **Insurance Coverage** as a result of an injury, illness or condition, the plan has the right to recover from, and be reimbursed by, the **Covered Person** for all amounts this plan has paid and will pay as a result of that injury, illness or condition, from such payment. up to and including the full amount the **Covered Person** receives from any **Responsible Party.**

**Constructive Trust**

By accepting benefits (whether the payment of such benefits is made to the **Covered Person** or made on behalf of the **Covered Person** to any provider) from the plan, the **Covered Person** agrees that if he/she receives any payment from any **Responsible Party** as a result of an injury, illness or condition, he/she will serve as a constructive trustee over the funds that constitute such payment. Failure to hold such funds in trust will be deemed a breach of the **Covered Person's** fiduciary duty to the plan.

**Lien Rights**

Further, the plan will automatically have a lien to the extent of benefits paid by the plan for the treatment of the illness, injury or condition for which **Responsible Party** is liable. The lien shall be imposed upon any recovery whether by settlement, judgment or otherwise, including from any **Insurance Coverage**, related to treatment for any illness, injury or condition for which the plan paid benefits. The lien may be enforced against any party who possesses funds or proceeds representing the amount of benefits paid by the plan including, but not limited to, the **Covered Person**; the **Covered Person's** representative or agent; **Responsible Party**; **Responsible Party's** insurer, representative or agent; and/or any other source possessing funds representing the amount of benefits paid by the plan.

### First-Priority Claim

By accepting benefits (whether the payment of such benefits is made to the Covered Person or made on behalf of the Covered Person to any provider) from the plan, the Covered Person acknowledges that this plan's recovery rights are a first priority claim against all Responsible Parties and are to be paid to the plan before any other claim for the Covered Person's damages. This plan shall be entitled to full reimbursement on a first-dollar basis from any Responsible Party's payments, even if such payment to the plan will result in a recovery to the Covered Person which is insufficient to make the Covered Person whole or to compensate the Covered Person in part or in whole for the damages sustained. The plan is not required to participate in or pay court costs or attorney fees to any attorney hired by the Covered Person to pursue the Covered Person's damage claim.

### Applicability to All Settlements and Judgments

The terms of this entire subrogation and right of recovery provision shall apply and the plan is entitled to full recovery regardless of whether any liability for payment is admitted by any Responsible Party and regardless of whether the settlement or judgment received by the Covered Person identifies the medical benefits the plan provided or purports to allocate any portion of such settlement or judgment to payment of expenses other than medical expenses. The plan is entitled to recover from *any and all* settlements or judgments, even those designated as pain and suffering, non-economic damages and/or general damages only.

### Cooperation

The Covered Person shall fully cooperate with the plan's efforts to recover its benefits paid. It is the duty of the Covered Person to notify the plan within 30 days of the date when any notice is given to any party, including an insurance company or attorney, of the Covered Person's intention to pursue or investigate a claim to recover damages or obtain compensation due to injury, illness or condition sustained by the Covered Person. The Covered Person and his/her agents shall provide all information requested by the plan, the Claims Administrator or its representative including, but not limited to, completing and submitting any applications or other forms or statements as the plan may reasonably request. Failure to provide this information may result in the termination of health benefits for the Covered Person or the institution of court proceedings against the Covered Person.

The Covered Person shall do nothing to prejudice the plan's subrogation or recovery interest or to prejudice the plan's ability to enforce the terms of this plan provision. This includes, but is not limited to, refraining from making any settlement or recovery that attempts to reduce or exclude the full cost of all benefits provided by the plan.

The Covered Person acknowledges that the plan has the right to conduct an investigation regarding the injury, illness or condition to identify any Responsible Party. The plan reserves the right to notify Responsible Party and his/her agents of its lien. Agents include, but are not limited to, insurance companies and attorneys.

### Interpretation

In the event that any claim is made that any part of this subrogation and right of recovery provision is ambiguous or questions arise concerning the meaning or intent of any of its terms, the Claims Administrator for the plan shall have the sole authority and discretion to resolve all disputes regarding the interpretation of this provision.

### Jurisdiction

By accepting benefits (whether the payment of such benefits is made to the Covered Person or made on behalf of the Covered Person to any provider) from the plan, the Covered Person agrees that any court proceeding with respect to this provision may be brought in any court of competent jurisdiction as the plan may elect. By accepting such benefits, the Covered Person hereby submits to each such jurisdiction, waiving whatever rights may correspond to him/her by reason of his/her present or future domicile.

## Additional Provisions

The following additional provisions apply to your coverage:

- You cannot receive multiple coverage under this Plan because you are connected with more than one Employer.
- In the event of a misstatement of any fact affecting your coverage under this Plan, the true facts will be used to determine the coverage in force.

This document describes the main features of this Plan. Additional provisions are described elsewhere in the Plan Document on file with your Employer. If you have any questions about the terms of this Plan or about the proper payment of benefits, you may obtain more information from your Employer.

Your Employer hopes to continue this Plan indefinitely but, as with all group plans, this Plan may be changed or discontinued as to all or any class of employees.

## Assignments

Coverage may be assigned only with the written consent of Aetna.

## Subrogation and Right of Recovery Provision

*Definitions*

As used throughout this provision, the term "Responsible Party" means any party actually, possibly, or potentially responsible for making any payment to a Covered Person due to a Covered Person's injury, illness, or condition. The term "Responsible Party" includes the liability insurer of such party or any insurance coverage.

For purposes of this provision, the term "Insurance Coverage" refers to any coverage providing medical expense coverage or liability coverage including, but not limited to, uninsured motorist coverage, underinsured motorist coverage, personal umbrella coverage, medical payments coverage, workers compensation coverage, no-fault automobile insurance coverage, or any first party insurance coverage.

For purposes of this provision, a "Covered Person" includes anyone on whose behalf the plan pays or provides any benefit including, but not limited to, the minor child or dependent of any plan member or person entitled to receive any benefits from the plan.

*Subrogation*

Immediately upon paying or providing any benefit under this plan, the plan shall be subrogated to (stand in the place of) all rights of recovery a Covered Person has against any Responsible Party with respect to any payment made by the Responsible Party to a Covered Person due to a Covered Person's injury, illness, or condition to the full extent of benefits provided or to be provided by the plan.

*Reimbursement*

In addition, if a Covered Person receives any payment from any Responsible Party or Insurance Coverage as a result of an injury, illness, or condition, the plan has the right to recover from, and be reimbursed by, the Covered Person for all amounts this plan has paid and will pay as a result of that injury, illness, or condition, up to and including the full amount the Covered Person receives from any Responsible Party.

*Constructive Trust*

By accepting benefits (whether the payment of such benefits is made to the Covered Person or made on behalf of the Covered Person to any provider) from the plan, the Covered Person agrees that if he or she receives any payment from any Responsible Party as a result of an injury, illness, or condition, he or she will serve as a constructive trustee over the funds that constitutes such payment. Failure to hold such funds in trust will be deemed a breach of the Covered Person's fiduciary duty to the plan.

*Lien Rights*

Further, the plan will automatically have a lien to the extent of benefits paid by the plan for the treatment of the illness, injury, or condition for which the Responsible Party is liable. The lien shall be imposed upon any recovery whether by settlement, judgment, or otherwise, including from any Insurance Coverage, related to treatment for any illness, injury, or condition for which the plan paid benefits. The lien may be enforced against any party who possesses funds or proceeds representing the amount of benefits paid by the plan including, but not limited to, the Covered Person, the Covered Person's representative or agent; Responsible Party; Responsible Party's insurer, representative, or agent; and/or any other source possessing funds representing the amount of benefits paid by the plan.

*First-Priority Claim*

By accepting benefits (whether the payment of such benefits is made to the Covered Person or made on behalf of the Covered Person to any provider) from the plan, the Covered Person acknowledges that this plan's recovery rights are a first priority claim against all Responsible Parties and are to be paid to the plan before any other claim for the Covered Person's damages. This plan shall be entitled to full reimbursement on a first-dollar basis from any Responsible Party's payments, even if such payment to the plan will result in a recovery to the Covered Person which is insufficient to make the Covered Person whole or to compensate the Covered Person in part or in whole for the damages sustained. The plan is not required to participate in or pay court costs or attorney fees to any attorney hired by the Covered Person to pursue the Covered Person's damage claim.

*Applicability to All Settlements and Judgments*

The terms of this entire subrogation and right of recovery provision shall apply and the plan is entitled to full recovery regardless of whether any liability for payment is admitted by any Responsible Party and regardless of whether the settlement or judgment received by the Covered Person identifies the medical benefits the plan provided or purports to allocate any portion of such settlement or judgment to payment of expenses other than medical expenses. The plan is entitled to recover from any and all settlements or judgments, even those designated as pain and suffering, non-economic damages, and/or general damages only.

*Cooperation*

The Covered Person shall fully cooperate with the plan's efforts to recover its benefits paid. It is the duty of the Covered Person to notify the plan within 30 days of the date when any notice is given to any party, including an insurance company or attorney, of the Covered Person's intention to pursue or investigate a claim to recover damages or obtain compensation due to injury, illness, or condition sustained by the Covered Person. The Covered Person and his or her agents shall provide all information requested by the plan, the Claims Administrator or its representative including, but not limited to, completing and submitting any applications or other forms or statements as the plan may reasonably request. Failure to provide this information may result in the termination of health benefits for the Covered Person or the institution of court proceedings against the Covered Person.

The Covered Person shall do nothing to prejudice the plan's subrogation or recovery interest or to prejudice the plan's ability to enforce the terms of this plan provision. This includes, but is not limited to, refraining from making any settlement or recovery that attempts to reduce or exclude the full cost of all benefits provided by the plan.

The Covered Person acknowledges that the plan has the right to conduct an investigation regarding the injury, illness, or condition to identify any Responsible Party. The plan reserves the right to notify responsible Party and his or her agents of its lien. Agents include, but are not limited to, insurance companies and attorneys.

*Interpretation*

In the event that any claim is made that any part of this subrogation and right of recovery provision is ambiguous or questions arise concerning the meaning or intent of any of its terms, the Claims Administrator for the plan shall have the sole authority and discretion to resolve all disputes regarding the interpretation of this provision.

*Jurisdiction*

By accepting benefits (whether the payment of such benefits is made to the Covered Person or made on behalf of the Covered Person to any provider) from the plan, the Covered Person agrees that any court proceeding with respect to this provision may be brought in any court of competent jurisdiction as the plan may elect. By accepting such benefits, the Covered Person hereby submits to each such jurisdiction, waiving whatever rights may correspond to him or her by reason of his or her present or future domicile.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | **CIVIL ACTION** |
| | § | |
| **v.** | § | **NO. 08-1633** |
| | § | |
| US Bancorp; BrownGreer, PLC; and John | § | **SECTION L, MAG. 3** |
| Does | § | |
| | § | **JUDGE FALLON** |
| | § | |
| | § | **MAGISTRATE JUDGE KNOWLES** |
| | § | |
| | § | **In Relation to:  MDL Docket No. 1657** |
| | § | |
| | § | **In Re:  VIOXX** |
| | § | |
| | § | **PRODUCTS LIABILITY LITIGATION** |

## AFFIDAVIT OF STEVEN A. SPAULDING

Comes the affiant, Steven A. Spaulding, and under penalty of perjury do state the following:

1.  My name is Steven A. Spaulding, and I am Vice President, Internal Operations at Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company ("ABCBS") and have personal knowledge of the events described herein.

2.  ABCBS provides insurance funding and/or administrative services to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans.

3.  During the year 2007, Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company provided health benefits to approximately 132,033 group plan members, who participate in approximately 3,474 plans.

4.  The vast majority of these plans are governed by the Employee Retirement Income Security Act of 1974 (ERISA).

5.    Each of these 3,474 plans has its own set of plan documents.

6.    Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that ABCBS employs relating to the plan's rights of subrogation and/or reimbursement.

7.    ABCBS, in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.    Further the Affiant Sayeth Naught.

Dated.   _Jun 17, 2008_

_____
STEVEN A. SPAULDING
VICE PRESIDENT, INTERNAL OPERATIONS

# EXHIBIT A

# ARKANSAS BLUE CROSS AND BLUE SHIELD

4. **Acts of Third Parties (Subrogation/Reimbursement).** If a Covered Person is injured by a third party, the Company is subrogated to all rights the Covered Person may have against any party liable for payment of medical treatment (including any and all insurance carriers) to the extent of payment for the services or benefits provided. The Covered Person must cooperate fully with the Company in its efforts to collect from the third party, and if the Covered Person fails to do so, the Company shall be entitled to withhold coverage of or offset future claim payments for benefits, services, payments or credits due under this Benefit Certificate. The Company may assert its subrogation rights independently of the Covered Person. In addition to the above-referenced subrogation rights, the Company also has reimbursement rights should the Covered Person, or the legal representative, estate or heirs of the Covered Person recover damages by settlement, verdict or otherwise, for an accident, injury or illness. If a recovery is made, the Covered Person shall promptly reimburse the Plan any monetary recovery made by the Covered Person and includes, but is not limited to, uninsured and underinsured motorist coverage, any no-fault insurance, medical payments coverage, direct recoveries from liable parties, or any other source.

5. **Covered Person's Cooperation.** Each Covered Person shall complete and submit to the Company such consents, releases, assignments and other documents as may be requested by the Company in order to obtain or assure reimbursement from other health benefit plan(s), from Medicare, from Workers' Compensation, or through subrogation. Any Covered Person who fails to so cooperate will be liable for and agrees to pay to the Company the amount of funds the Company had to expend as a result of such failure to cooperate.

6. **The Company's Right to Overpayments.** Whenever payments have been made by the Company in a total amount, at any time, in excess of 100% of the amount of payment necessary at that time to satisfy the intent of this Benefit Certificate, the Company shall have the right to recover such payment, to the extent of such excess, from among one or more of the following as the Company shall determine: any person or persons to, or for, or with respect to whom, such payments were made; any insurance Company or companies; or any other organization or organizations to which such payments were made.

EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | CIVIL ACTION |
| | § | |
| v. | § | NO. 08-1633 |
| | § | |
| US Bancorp; BrownGreer, PLC; and John Does | § | SECTION L, MAG. 3 |
| | § | |
| | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |
| | § | |
| | § | In Relation to:  MDL Docket No. 1657 |
| | § | |
| | § | In Re:  VIOXX |
| | § | |
| | § | PRODUCTS LIABILITY LITIGATION |

## AFFIDAVIT OF DAVID BRIDGES

Comes the affiant, David Bridges, and under penalty of perjury do state the following:

1.　My name is David Bridges, and I am President and CEO of HMO Partners, Inc. d/b/a Health Advantage ("HMOP") and have personal knowledge of the events described herein.

2.　HMOP provides funding and/or administrative services to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans.

3.　During the year 2007, HMOP provided health benefits to approximately 80,500 plan members, who participate in approximately 1230 group plans.

4.　The vast majority of these plans are governed by the Employee Retirement Income Security Act of 1974 (ERISA).

5.　Each of these 1230 plans has its own set of plan documents.

6.     Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that HMOP employs relating to the plan's rights of subrogation and/or reimbursement.

7.     HMOP, in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.     Further the Affiant Sayeth Naught.

Dated.     _____June 16, 2008_____

DAVID BRIDGES
PRESIDENT AND CEO

# EXHIBIT A

## Health Advantage

4.   **Acts of Third Parties (Subrogation/Reimbursement).** If a Member is injured by a third party, Health Advantage is subrogated to all rights the Member may have against any party liable for payment of medical treatment (including any and all insurance carriers) to the extent of payment for the services or benefits provided. The Member must cooperate fully with Health Advantage in its efforts to collect from the third party. See Subsection 5.3.5. Health Advantage may assert its subrogation rights independently of the Member. In addition to the above-referenced subrogation rights, Health Advantage also has reimbursement rights should the Member, or the legal representative, estate or heirs of the Member recover damages by settlement, verdict or otherwise, for an accident, injury or illness. If a recovery is made, the Member shall promptly reimburse the Plan any monetary recovery made by the Member and includes, but is not limited to, uninsured and underinsured motorist coverage, any no-fault insurance, medical payments coverage, direct recoveries from liable parties, or any other source.

EXHIBIT A

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | CIVIL ACTION |
| | § | |
| **v.** | § | NO. 08-1633 |
| | § | |
| US Bancorp; BrownGreer, PLC; and John | § | SECTION L, MAG. 3 |
| Does | § | |
| | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |
| | § | |
| | § | In Relation to:  MDL Docket No. 1657 |
| | § | |
| | § | In Re:  VIOXX |
| | § | |
| | § | PRODUCTS LIABILITY LITIGATION |

### AFFIDAVIT OF JASON MANN

Comes the affiant, Jason Mann, and under penalty of perjury do state the following:

1.    My name is Jason Mann and I am Chief Executive Officer at USAble Life and have personal knowledge of the events described herein.

2.    USAble Life provides insurance and/or administrative services to employer sponsored group plans, governmental sponsored group plans, and individuals.

3.    During the year 2007, USAble Life provided health benefits to approximately four thousand three hundred eighteen  plan members, who participate in approximately two hundred nine plans.

4.    The vast majority of these plans are governed by the Employee Retirement Income Security Act of 1974 (ERISA).

5.    Each of these two hundred nine plans has its own set of plan documents.

6.      Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language USAble Life employs relating to the plan's rights of subrogation and/or reimbursement.

7.      USAble Life, in its capacity as administrator for the plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.      Further the Affiant Sayeth Naught.

Dated.   6/17/08

JASON MANN
Chief Executive Officer

# EXHIBIT A

## USAble Life In AR

4. **Acts of Third Parties (Subrogation/Reimbursement).** If a Covered Person is injured by a third party, the Company is subrogated to all rights the Covered Person may have against any party liable for payment of medical treatment (including any and all insurance carriers) to the extent of payment for the services or benefits provided. The Covered Person must cooperate fully with the Company in its efforts to collect from the third party. See Subsection 5.3.5. The Company may assert its subrogation rights independently of the Covered Person. In addition to the above-referenced subrogation rights, the Company also has reimbursement rights should the Covered Person, or the legal representative, estate or heirs of the Covered Person recover damages by settlement, verdict or otherwise, for an accident, injury or illness. If a recovery is made, the Covered Person shall promptly reimburse the Plan any monetary recovery made by the Covered Person and includes, but is not limited to, uninsured and underinsured motorist coverage, any no-fault insurance, medical payments coverage, direct recoveries from liable parties, or any other source.

EXHIBIT A

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AvMed, Inc.; et al. | § CIVIL ACTION |
| | § |
| v. | § NO. 08-1633 |
| | § |
| US Bancorp; BrownGreer, PLC; and John Does | § SECTION L, MAG. 3 |
| | § |
| | § JUDGE FALLON |
| | § |
| | § MAGISTRATE JUDGE KNOWLES |
| | § |
| | § In Relation to: MDL Docket No. 1657 |
| | § |
| | § In Re: VIOXX |
| | § |
| | § PRODUCTS LIABILITY LITIGATION |

## AFFIDAVIT OF BLUE CROSS & BLUE SHIELD OF MISSISSIPPI

Comes the affiant, BLUE CROSS & BLUE SHIELD OF MISSISSIPPI and under penalty of perjury do state the following:

1.     My name is Nita Moore, and I am Legal Coordinator at Blue Cross & Blue Shield of Mississippi and have personal knowledge of the events described herein.

2.     Blue Cross & Blue Shield of Mississippi is a health benefit plan which provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans.

3.     During the year 2007, Blue Cross & Blue Shield of Mississippi provided health benefits to approximately 372,026[1] plan members, who participate in approximately 8610 plans.

4.     The vast majority of these plans are self-funded plans, and/or are governed by the Employee Retirement Security Act of 1974 (ERISA).

5.     Each of these 8610 plans have their own set of plan documents.

---

[1] AIS's Directory of Health Plans: 2008

6.     Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that Blue Cross & Blue Shield of Mississippi employs relating to the plan's rights of subrogation and/or reimbursement.

7.     Blue Cross & Blue Shield of Mississippi in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.     Further the Affiant Sayeth Naught.


Dated.   6-16-08


NITA MOORE
LEGAL COORDINATOR

# EXHIBIT A

# BLUE CROSS & BLUE SHIELD OF MISSISSIPPI

U.   Subrogation-Work Related

    1.   In order to provide Benefits and/or where Benefits have already been provided for Covered Services under the terms of the Benefit Plan for any injury, illness or condition for which a claim has been or will be pursued under any worker's compensation laws, which would otherwise be excluded under the Benefit Plan, an Accident Questionnaire must be completed and submitted by the Member or one authorized by law to act on the Member's behalf. Payments of any Benefits with notice to the worker's compensation carrier will allow Company to be subrogated to and succeed to the rights of the Member for recovery against the employer or carrier. Nothing contained in this Section will be deemed to change, modify or vary the terms of the Coordination of Benefits section of the Benefit Plan.

    2.   Pursuant to the above provision, the Member agrees to provide Company with prior notice of and opportunity to participate in any settlement of Member's claim and further agrees that, as a part of any worker's compensation settlement, Company will be reimbursed in accordance with applicable laws for Benefits paid under the Plan.

    3.   Member will take such action, furnish such information and assistance and execute such papers as Company may require to facilitate enforcement of its rights and will take no action prejudicing the rights and interest of Company under the Benefit Plan.

    4.   The Member must immediately notify the Company or any injury, illness or condition for which a claim has been or will be pursued under any applicable worker's compensation laws.

V.   Subrogation-Third Party

    1.   In order to provide Benefits and/or where Benefits have already been provided for Covered Services under the terms of the Benefit Plan for injuries growing out of any act or omission of another party for which a claim or recovery is or will be pursued, which would otherwise be excluded under the Benefit Plan, an Accident Questionnaire must be completed and submitted by the Member or one authorized by law to act on the Member's behalf within thirty (30) days of receipt of same.

    2.   Payments of any Benefits will allow Company to be subrogated to and succeed to the rights of the Member for recovery against any person, organization or carrier in accordance with applicable laws. In the event the Member is a minor, Chancery Court approval must be obtained prior to the payment of any Benefits.  Any subrogation claim shall be a first priority lien on the full or partial proceeds of any settlement, judgment or other payment recovered by or on behalf of the Member to the extent allowed by law. Also, to the extent permitted by law, this lien applies whether or not the covered person has been fully compensated for all of his or her losses.  To the extent allowed by law, Company's rights under this provision cannot be defeated by allocating the proceeds, in whole or in part, to non-medical damages. Nothing contained in this Section will be deemed to change, modify or vary the terms of the Coordination of Benefits section of this Plan.

3.    Pursuant to the above provision, the Member agrees to provide Company with prior notice of and opportunity to participate in any settlement of Member's claim and further agrees that, as a part of any settlement, Company will be reimbursed in accordance with applicable laws for Benefits paid under this Plan.

4.    Member will take such action, furnish such information and assistance and execute such papers as Company may require to facilitate enforcement of its rights and will take no action prejudicing the rights and interest of the Company under this Plan.

5.    The Member must immediately notify the Company of any claim or recovery which will be pursued as a result of an act or omission of another party.

6.    The right to recover by subrogation shall apply to settlements or recoveries of deceased persons, disabled Subscribers, minor dependents of a Subscriber, or disabled Eligible Dependents.

W.    Contractual Right To Reimbursement

1.    In order to provide Benefits and/or where Benefits have already been provided for Covered Services under the terms of the Benefit Plan for injuries growing out of any act or omission of another party for which a claim or recovery is or will be pursued, which would otherwise be excluded under the Benefit Plan, an Accident Questionnaire must be completed and submitted by the Member or one authorized by law to act on the Member's behalf within thirty (30) days of receipt of same.

2.    In the event a Member receives full or partial proceeds from any other source for Covered Services for an Illness or Injury, Company has a contractual right of reimbursement to the extent Benefits were paid under this Contract for the same Illness or Injury. To the extent permitted by law, this contractual right shall be a first priority lien on the full or partial proceeds of any settlement, judgment or other payment recovered by or on behalf of the Member. To the extent allowed by law, this lien applies whether or not the covered person has been fully compensated for all of his or her losses.

3.    Such proceeds may include any settlement; judgment; payments made under group auto insurance; individual or group no-fault auto insurance; another person's uninsured, underinsured or medical payment insurance; or proceeds otherwise paid by a third party.  This contractual right to reimbursement is in addition to, and separate from, the subrogation right. To the extent allowed by law, Company's rights shall not be defeated by allocating the proceeds in whole or in part, to non-medical damages.

4.    The right to recover by reimbursement shall apply to settlements or recoveries of deceased persons, disabled Subscribers, minor dependents of a Subscriber, or disabled Eligible Dependents. In the event the Member

is a minor, Chancery Court Approval must be attained prior to the payment of any benefits.

5.  The Member agrees to fully cooperate and assist in any way necessary to recover such payments, including but not limited to notifying Company of a claim or lawsuit filed on his or her behalf or on behalf of any Eligible Dependents for an Injury or Illness. The Member or an authorized representative shall contact Company prior to settling any claim or lawsuit to obtain an updated itemization of its subrogation claim or reimbursement amount due. To the extent allowed by law, upon receiving any proceeds subject to this Section, the Member or an authorized representative must hold in trust proceeds in an amount equal to Benefits paid by Company in connection with injuries growing out of any act or omission of another party until such time as the proceeds can be transferred to the Company. Such party holding the funds that rightfully belong to the Company shall not interrupt or prejudice the Company's recovery under this Section.