# APPENDIX
# PART 3

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | **CIVIL ACTION** |
| | § | |
| **v.** | § | **NO. 08-1633** |
| | § | |
| US Bancorp; BrownGreer, PLC; and John Does | § | **SECTION L, MAG. 3** |
| | § | |
| | § | **JUDGE FALLON** |
| | § | |
| | § | **MAGISTRATE JUDGE KNOWLES** |
| | § | |
| | § | **In Relation to: MDL Docket No. 1657** |
| | § | |
| | § | **In Re: VIOXX** |
| | § | |
| | § | **PRODUCTS LIABILITY LITIGATION** |

### AFFIDAVIT OF ELIZABETH J. GANT

Comes the affiant, Elizabeth J. Gant, and under penalty of perjury states the following:

1.     My name is Elizabeth J. Gant, and I am Associate Counsel at the Blue Cross Blue Shield Association (sometimes referred to herein as the "Association") and have personal knowledge of the events described herein.

2.     The Blue Cross Blue Shield Association is an association whose members are independent Blue Cross and Blue Shield Plans throughout the United States and certain U.S. territories. The Association contracts with the Office of Personnel Management under contract C.S. 1039 to provide medical and/or pharmacy benefits to federal employees under the Government-Wide Service Benefit Plan, which is administered by the member Blue Cross and Blue Shield Plans of the Association and independent pharmacy benefit managers with whom the Association contracts.

3.      During the year 2007, the Blue Cross Blue Shield Association, through its member Blue Cross and Blue Shield Plans, provided health benefits to approximately 4,322,176 plan members who participate in the Government-Wide Service Benefit Plan.

4.      The Government-Wide Service Benefit Plan is governed by the Federal Employees Health Benefits Act (5 U.S.C. Section 8901 et. seq.).

5.      The Government-Wide Service Benefit Plan has its own set of plan documents.

6.      I attach here as Exhibit A plan language from the 2008 Government-Wide Service Benefit Plan brochure that the Blue Cross Blue Shield Association employs relating to the plan's rights of subrogation and/or reimbursement.

7.      The Blue Cross Blue Shield Association in its capacity as administrator for the Government-Wide Service Benefit Plan referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.      Further the Affiant Sayeth Naught.

Dated   June 17 - 2008

Elizabeth J. Gant
Associate Counsel

# EXHIBIT A

# BLUE CROSS BLUE SHIELD ASSOCIATION

# Blue Cross® and Blue Shield®
# Service Benefit Plan

http://www.fepblue.org



## 2008

## A fee-for-service plan (standard and basic option) with a preferred provider organization



For changes in benefits see page 9.

**Sponsored and administered by:** The Blue Cross and Blue Shield Association and participating Blue Cross and Blue Shield Plans

**Who may enroll in this Plan:** All Federal employees and annuitants who are eligible to enroll in the FEHB

**Enrollment codes for this Plan:**

    104 Standard Option - Self Only
    105 Standard Option - Self and Family
    111 Basic Option - Self Only
    112 Basic Option - Self and Family



**ACCREDITED
HEALTH WEB SITE**



**ACCREDITED
CASE MANAGEMENT**

This Plan has Health Web Site and Case Management accreditation from URAC. See the 2008 FEHB Guide for more information on accreditation.



**FEHB**
Federal Employees
Health Benefits Program

Authorized for distribution by the:



**United States
Office of Personnel Management**

Center for
Retirement and Insurance Services
http://www.opm.gov/insure

RI 71-005

**When others are responsible for injuries**

If another person or entity, through an act or omission, causes you to suffer an injury or illness, and if we pay benefits for that injury or illness, you must agree to the provisions listed below. In addition, if you are injured and no other person or entity is responsible but you receive (or are entitled to) a recovery from another source, and if we provide benefits for that injury, you must agree to the following provisions:

- All recoveries you or your representatives obtain (whether by lawsuit, settlement, insurance or benefit program claims, or otherwise), no matter how described or designated, must be used to reimburse us in full for benefits we paid.  Our share of any recovery extends only to the amount of benefits we have paid or will pay to you or your representatives.  For purposes of this provision, "you" includes your covered dependents, and "your representatives" include, if applicable, your heirs, administrators, legal representatives, parents (if you are a minor), successors, or assignees.  This is our right of recovery.
- We are entitled under our right of recovery to be reimbursed for our benefit payments even if you are not "made whole" for all of your damages in the recoveries that you receive.  Our right of recovery is not subject to reduction for attorney's fees and costs under the "common fund" or any other doctrine.
- We will not reduce our share of any recovery unless, in the exercise of our discretion, we agree in writing to a reduction (1) because you do not receive the full amount of damages that you claimed or (2) because you had to pay attorneys' fees.
- You must cooperate in doing what is reasonably necessary to assist us with our right of recovery.  You must not take any action that may prejudice our right of recovery.
- If you do not seek damages for your illness or injury, you must permit us to initiate recovery on your behalf (including the right to bring suit in your name).  This is called subrogation.

If you do seek damages for your illness or injury, you must tell us promptly that you have made a claim against another party for a condition that we have paid or may pay benefits for, you must seek recovery of our benefit payments and liabilities, and you must tell us about any recoveries you obtain, whether in or out of court.  We may seek a first priority lien on the proceeds of your claim in order to reimburse ourselves to the full amount of benefits we have paid or will pay.

We may request that you sign a reimbursement agreement and/or assign to us (1) your right to bring an action or (2) your right to the proceeds of a claim for your illness or injury.  We may delay processing of your claims until you provide the signed reimbursement agreement and/or assignment, and we may enforce our right of recovery by offsetting future benefits.

*Note:* We will pay the costs of any covered services you receive that are in excess of any recoveries made.

Among the other situations covered by this provision, the circumstances in which we may subrogate or assert a right of recovery shall also include:

- When you are injured on premises owned by a third party; or
- When you are injured and benefits are available to you or your dependent, under any law or under any type of insurance, including, but not limited to:
  - No-fault insurance and other insurance that pays without regard to fault, including personal injury protection benefits, regardless of any election made by you to treat those benefits as secondary to this Plan
  - Uninsured and underinsured motorist coverage
  - Workers' Compensation benefits
  - Medical reimbursement coverage

Contact us if you need more information about subrogation.

**When you have Federal Employees Dental and Vision Insurance Plan (FEDVIP)**

Some FEHB plans already cover some dental and vision services.  When you are covered by more than one dental/vision plan, coverage provided under your FEHB plan remains as your primary coverage.  FEDVIP coverage pays secondary to that coverage.  When you enroll in a dental and/or vision plan on BENEFEDS.com, you will be asked to provide information on your FEHB plan so that your plans can coordinate benefits.  Providing your FEHB information may reduce your out-of-pocket cost.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AvMed, Inc.; et al. | § **CIVIL ACTION** |
| | § |
| **v.** | § **NO. 08-1633** |
| | § |
| US Bancorp; BrownGreer, PLC; and John Does | § **SECTION L, MAG. 3** |
| | § |
| | § **JUDGE FALLON** |
| | § |
| | § **MAGISTRATE JUDGE KNOWLES** |
| | § |
| | § **In Relation to: MDL Docket No. 1657** |
| | § |
| | § **In Re: VIOXX** |
| | § |
| | § **PRODUCTS LIABILITY LITIGATION** |

### AFFIDAVIT OF PAIGE THOMAS

Comes the affiant, Paige Thomas, and under penalty of perjury do state the following:

1.     My name is Paige Thomas, and I am a Dispute Resolution Coordinator at BlueCross BlueShield of Tennessee and have personal knowledge of the events described herein.

2.     BlueCross BlueShield of Tennessee is a health benefit plan which provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans.

3.     During the year 2007, BlueCross BlueShield of Tennessee provided health benefits to approximately 2,802,119[1] plan members, who participate in approximately 17,950 plans.

4.     The vast majority of these plans are self-funded plans, and/or are governed by the Employee Retirement Security Act of 1974 (ERISA).

5.     Each of these 17,950 plans have their own set of plan documents.

---

[1] AIS's Directory of Health Plans: 2008

6.    Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that BlueCross BlueShield of Tennessee employs relating to the plan's rights of subrogation and/or reimbursement.

7.    BlueCross BlueShield of Tennessee in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.    Further the Affiant Sayeth Naught.

Dated.  6/16/08

Paige Thomas
Dispute Resolution Coordinator

# EXHIBIT A

# BLUECROSS BLUESHIELD
# OF TENNESSEE

(subro language in fully insured Summary Plan Descriptions/EOC's)

## SUBROGATION AND RIGHT OF RECOVERY

The Group has agreed that the Plan shall be subrogated to and/or have the right to recover amounts paid to provide Covered Services to Group Members for illnesses or injuries caused by third parties, including the right to recover the reasonable value of services rendered by Network Providers.

The Plan shall have first lien against any payment, judgment or settlement of any kind that a Member receives from or on behalf of such third parties for medical expenses, for the costs of Covered Services and any costs of recovering such amounts from those third parties. The Plan may notify those parties of its lien without notice to or consent from those Members.

The Plan may enforce its rights of subrogation and recovery against, without limitation, any tort feasors, other responsible third parties or against available insurance coverages, including underinsured or uninsured motorist coverages. Such actions may be based in tort, contract or other cause of action to the fullest extent permitted by law.

The Group has agreed that Members shall be required to promptly notify the Plan if they are involved in an incident that gives rise to such rights for subrogation and recovery to enable the Plan to protect its rights under this section. Members are also required to cooperate with the Plan and to execute any documents that the Plan deems necessary to protect its rights under this section.

If a Member settles any claim or action against any third party, that Member shall be deemed to have been made whole by the settlement and the Plan shall be entitled to immediately collect the present value of its rights as the first priority claim from the settlement fund. Any such proceeds of settlement or judgment shall be held in trust by the Member for the benefit of the Plan. The Plan shall also be entitled to recover reasonable attorneys' fees incurred in collecting proceeds held by the Member in such circumstances.

**From the Self Funded Group Contract:**

Exhibit B

3.3     BCBST will collect the following recoveries, deduct its expenses and fees, and remit the net recovery to Employer:

a.     Subrogation expenses of twenty-five percent (25%) of amounts recovered pursuant to the terms of the Plan. Net recoveries (total recoveries less the amount retained by BCBST) shall be credited to Employer's claims invoice. BCBST will be responsible for any outside attorneys' fees incurred in enforcing the Plan's subrogation rights. Employer will be solely responsible for other expenses arising in connection with litigation to enforce its subrogation interest, including, but not limited to, court costs, discovery expenses and expert witness fees. BCBST will obtain Employer's approval before incurring any expert witness fees or expenses. Employer will advance said expenses if required in the preparation of its case(s) for trial.

Exhibit C

6.     Subrogation. BCBST shall enforce Employer's right to subrogation, as established in Exhibit A, the Summary Plan Description.

6.1     Once subrogation recoveries begin, BCBST will provide monthly reports to Employer upon request, detailing: (a) recoveries for the immediately past month; (b) year-to-date recoveries; (c) open cases as of the end of the immediately past month; and (d) cases closed with no recovery.

6.2     BCBST may use its reasonable judgment to determine when a subrogation claim should be compromised and settled for less than its full value.

**From the Summary Plan Description/Election Of Coverage:**

### SUBROGATION AND RIGHT OF REIMBURSEMENT

**A. Subrogation Rights**

The Plan assumes and is subrogated to Your legal rights to recover any payments the Plan makes for Covered Services, when Your illness or injury resulted from the action or fault of a third party. The Plan's subrogation rights include the right to recover the reasonable value of prepaid services rendered by Network Providers.

The Plan has the right to recover any and all amounts equal to the Plan's payments from:

- the insurance of the injured party;

- the person, company (or combination thereof) that caused the illness or injury, or their insurance company; or

- any other source, including uninsured motorist coverage, medical payment coverage, or similar medical reimbursement policies.

This right of recovery under this provision will apply whether recovery was obtained by suit, settlement, mediation, arbitration, or otherwise. The Plan's recovery will not be reduced by Your negligence, nor by attorney fees and costs You incur.

**B. Priority Right of Reimbursement**

Separate and apart from the Plan's right of subrogation, the Plan shall have first lien and right to reimbursement. This priority right of reimbursement supersedes Your right to be made whole from any recovery, whether full or partial. You agree to reimburse the Plan 100% first for any and all benefits provided through the Plan, and for any costs of recovering such amounts from those third parties from any and all amounts recovered through:

- Any settlement, mediation, arbitration, judgment, suit, or otherwise, or settlement from Your own insurance and/or from the third party (or their insurance);

- Any auto or recreational vehicle insurance coverage or benefits including, but not limited to, uninsured motorist coverage;

- Business and homeowner medical liability insurance coverage or payments.

The Plan may notify those parties of its lien and right to reimbursement without notice to or consent from those Members.

This priority right of reimbursement applies regardless of whether such payments are designated as payment for (but not limited to) pain and suffering, medical benefits, and/or other specified damages. It also applies regardless of whether the Member is a minor.

This priority right of reimbursement will not be reduced by attorney fees and costs You incur.

The Plan may enforce its rights of subrogation and recovery against, without limitation, any tortfeasors, other responsible third parties or against available insurance coverages, including underinsured or uninsured motorist coverages. Such actions may be based in tort, contract or other cause of action to the fullest extent permitted by law.

## Notice and Cooperation

Members are required to notify the administrator promptly if they are involved in an incident that gives rise to such subrogation rights and/or priority right of reimbursement, to enable the administrator to protect the Plan's rights under this section. Members are also required to cooperate with the administrator and to execute any documents that the administrator, acting on behalf of the Employer, deems necessary to protect the Plan's rights under this section.

The Member shall not do anything to hinder, delay, impede or jeopardize the Plan's subrogation rights and/or priority right of reimbursement. Failure to cooperate or to comply with this provision shall entitle the Plan to withhold any and all benefits due the Member under the Plan. This is in addition to any and all other rights that the Plan has pursuant to the provisions of the Plan's subrogation rights and/or priority right of reimbursement.

If the Plan has to file suit, or otherwise litigate to enforce its subrogation rights and/or priority right of reimbursement, You are responsible for paying any and all costs, including attorneys' fees, the Plan incurs in addition to the amounts recovered through the subrogation rights and/or priority right of reimbursement.

## Legal Action and Costs

If You settle any claim or action against any third party, You shall be deemed to have been made whole by the settlement and the Plan shall be entitled to collect the present value of its rights as the first priority claim from the settlement fund immediately. You shall hold any such proceeds of settlement or judgment in trust for the benefit of the Plan. The Plan shall also be entitled to recover reasonable attorneys' fees incurred in collecting proceeds held by You in such circumstances.

Additionally, the Plan has the right to sue on Your behalf, against any person or entity considered responsible for any condition resulting in medical expenses, to recover benefits paid or to be paid by the Plan.

## Settlement or Other Compromise

You must notify the administrator prior to settlement, resolution, court approval, or anything that may hinder, delay, impede or jeopardize the Plan's rights so that the Plan may be present and protect its subrogation rights and/or priority right of reimbursement.

The Plan's subrogation rights and priority right of reimbursement attach to any funds held, and do not create personal liability against You.

**The right of subrogation and the right of reimbursement are based on the Plan language in effect at the time of judgment, payment or settlement.**

The Plan, or its representative, may enforce the subrogation and priority right of reimbursement.



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | CIVIL ACTION |
| | § | |
| v. | § | NO. 08-1633 |
| | § | |
| US Bancorp; BrownGreer, PLC; and John Does | § | SECTION L, MAG. 3 |
| | § | |
| | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |
| | § | |
| | § | In Relation to:  MDL Docket No. 1657 |
| | § | |
| | § | In Re:  VIOXX |
| | § | |
| | § | PRODUCTS LIABILITY LITIGATION |

## AFFIDAVIT OF ANDREA B. CHERENZIA

Comes the affiant, Andrea B. Cherenzia, and under penalty of perjury do state the following:

1.      My name is Andrea B. Cherenzia, and I am Director, Special Investigations at CareFirst, Inc. and have personal knowledge of the events described herein.

2.      CareFirst, Inc. is a health benefit plan which provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans.

3.      During the year 2007, CareFirst, Inc. provided health benefits to approximately 1,064,067[1] plan members, who participate in approximately 42,500 plans.

4.      The vast majority of these plans are self-funded plans, and/or are governed by the Employee Retirement Security Act of 1974 (ERISA).

5.      Each of these 42,500 plans have their own set of plan documents.

---

[1] AIS's Directory of Health Plans: 2008

6.      Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that CareFirst, Inc. employs relating to the plan's rights of subrogation and/or reimbursement.

7.      CareFirst, Inc. in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.      Further the Affiant Sayeth Naught.

Dated. *June 17, 2008*

*Andrea B Cherenzia*
Andrea B. Cherenzia
Director, Special Investigations

# EXHIBIT A

# CAREFIRST, INC.

05/28/08 Sample subrogation language – Maryland Contracts

## FULLY INSURED ACCOUNT SUBRO LANGUAGE

**Subrogation**

Subrogation applies when a Member has an illness or injury for which a third party may be liable. Subrogation requires the Member in certain circumstances to turn over to CareFirst any rights the Member may have against a third party.

A.   The Member shall notify CareFirst as soon as reasonably possible and no later than the time the Member provides proof of a claim that a third party may be liable for the injuries or illnesses for which benefits are being paid.

B.   To the extent that benefits are paid under this Evidence of Coverage, CareFirst shall be subrogated and succeed to any right of recovery of the Member against any person or organization.

C.   The Member shall pay to CareFirst the amount recovered by suit, settlement, or otherwise from any third party or third party's insurer, or uninsured or underinsured motorist coverage, to the extent of the benefits paid under this Evidence of Coverage.

CFMI/COB; SUBRO (4/05)

## ASO ACCOUNT SUBRO LANGUAGE

**Subrogation**

Subrogation applies when a Member has an illness or injury for which a third party may be liable. Subrogation requires the Member in certain circumstances to turn over to CareFirst any rights the Member may have against a third party.

A.   The Member shall notify CareFirst as soon as reasonably possible and no later than the time the Member provides proof of a claim that a third party may be liable for the injuries or illnesses for which benefits are being paid.

B.   To the extent that benefits are paid under this Evidence of Coverage, CareFirst shall be subrogated and succeed to any right of recovery of the Member against any person or organization.

C.   The Member shall pay to CareFirst the amount recovered by suit, settlement, or otherwise from any third party or third party's insurer, or uninsured or underinsured motorist coverage, to the extent of the benefits paid under this Evidence of Coverage.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | CIVIL ACTION |
| | § | |
| v. | § | NO. 08-1633 |
| | § | |
| US Bancorp; BrownGreer, PLC; and John | § | SECTION L, MAG. 3 |
| Does | § | |
| | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |
| | § | |
| | § | In Relation to: MDL Docket No. 1657 |
| | § | |
| | § | In Re: VIOXX |
| | § | |
| | § | PRODUCTS LIABILITY LITIGATION |

## AFFIDAVIT OF LARRY MCENROE

Comes the affiant, Larry McEnroe, and under penalty of perjury do state the following:

1.     My name is Larry McEnroe, and I am Vice President and General Counsel at Government Employee's Health Association, Inc. and have personal knowledge of the events described herein.

2.     Government Employee's Health Association, Inc. ("GEHA") is a health benefit plan which provides medical and/or pharmacy benefits to members and dependents who are enrolled in GEHA health plans.

3.     During the year 2007, Government Employee's Health Association, Inc. provided health benefits to approximately 439,138 plan members, who participate in three plans.

4.     These plans are governed by the Federal Employees Health Benefit Program and insure certain members, annuitants, and their dependents, who join the plans.

5     Two of these three plans are combined into one plan document and the third plan has its own plan document.

6.    Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that Government Employee's Health Association, Inc. employs relating to the plan's rights of subrogation and/or reimbursement.

7.    Government Employee's Health Association, Inc. in its capacity as administrator for its plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.    Further the Affiant Sayeth Naught.

Dated. June 17, 2008

Larry McEnroe
Vice President and General Counsel

# EXHIBIT A

# GOVERNMENT EMPLOYEE'S
# HEALTH ASSOCIATION, INC.

05-28-08   02:50PM   FROM-                                           T-981   P.002   F-924

# Government Employees Health Association, Inc. Benefit Plan

http://www.geha.com



**2008**

---

**When others are responsible for injuries**

If GEHA pays benefits for an illness or injury for which you or your dependent are later compensated or reimbursed from another source, you must refund GEHA from any recovery you or your dependent obtain.   All GEHA benefit payments in these circumstances are conditional, and remain subject to our contractual benefit limitations, exclusions, and maximums.  By accepting these conditional benefits, you agree to the following:

- The covered person or his/her legal representative must contact GEHA's Subrogation Unit at (800) 821-4742, Ext. 5503 or 5735 as soon after the incident as possible and provide all requested information, including prompt disclosure of the terms of all settlements, judgments, or reimbursements.  The covered person must sign any releases GEHA requires to obtain information about his/her claim from other sources.

- Include all benefits paid by GEHA in any claim for compensation you or your dependent assert against any tortfeasor, insurer, or other party for the injury or illness, and assign all proceeds recovered from any party, including your own and/or other insurance, to GEHA for up to the amount of the benefits paid.

- When benefits are payable under the plan in relation to the illness or injury, GEHA may, at its option:

  Subrogate, that is, take over the covered person's right to receive payments from other parties.  The covered person or his/her legal representative will transfer to GEHA any

  rights he or she may have to take legal action arising from the illness or injury to recover any sums paid on behalf of the covered person; or

  Enforce its right to seek reimbursement, that is recover from the covered person, or his/her legal representative, any benefits paid from any payment the covered person is entitled to receive from other parties.

  You must cooperate in doing what is reasonably necessary to assist us, and you must not take any action that may prejudice our rights to recover reimbursement.

- Reimburse GEHA on a first priority basis, in full up to the amount of benefits paid, out of any settlements, judgments, and/or recoveries that you obtain from any source, no matter how characterized, i.e., as "pain and suffering."  GEHA enforces this right of reimbursement by asserting a lien against any and all recoveries received, including first party Medpay, Personal Injury Protection, No-Fault coverage, Third-Party, and Uninsured and Underinsured coverage. GEHA's lien consists of the total benefits paid to diagnose or treat the illness or injury.  GEHA's lien applies first, regardless of the "make whole" and "common fund" doctrines. No reduction of GEHA's lien can occur without our written consent, including reduction for attorney fees and costs.

- Sign a Reimbursement Agreement if asked by GEHA to do so. However, a Reimbursement Agreement is not necessary to enforce our lien.  We may delay processing of your claims until we receive a signed Reimbursement Agreement or Assignment of the proceeds of a claim.

GEHA's lien extends to all related expenses incurred prior to the settlement or judgment date, even if those expenses were not submitted to GEHA for payment at the time you reimbursed GEHA. The lien remains the member's obligation until it is satisfied in full. Failure to refund GEHA or cooperate with our reimbursement efforts may result in an overpayment that can be collected from you or any dependent.

## NITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | **CIVIL ACTION** |
| | § | |
| **v.** | § | **NO. 08-1633** |
| | § | |
| US Bancorp; BrownGreer, PLC; and John | § | **SECTION L, MAG. 3** |
| Does | § | |
| | § | **JUDGE FALLON** |
| | § | |
| | § | **MAGISTRATE JUDGE KNOWLES** |
| | § | |
| | § | **In Relation to: MDL Docket No. 1657** |
| | § | |
| | § | **In Re: VIOXX** |
| | § | |
| | § | **PRODUCTS LIABILITY LITIGATION** |

### AFFIDAVIT OF JOSE DIAZ

Comes the affiant, Jose Diaz, and under penalty of perjury do state the following:

1.     My name is Jose Diaz, and I am Vice President at Group Health Incorporated and have personal knowledge of the enrollment numbers described within.

2.     Group Health Incorporated is a health benefit plan which provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals.

3.     During the year 2007, Group Health Incorporated provided pharmacy health benefits to approximately 912,000 group plan members, who participate in approximately 16,500 group plans.

4.     Other than our City of New York and Federal Employee group plans, the rest of GHI's group plans (approximately 40%) are governed by the Employee Retirement Security Act of 1974 (ERISA).

5.     Each of these group plans have their own set of plan documents.

6.    Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that Group Health Incorporated employs relating to the plan's rights of subrogation and/or reimbursement.

7.    Group Health Incorporated in its capacity as administrator for its  insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.    Further the Affiant Sayeth Naught.

Dated.    __6/18/08__

Jose Diaz
Vice President

# EXHIBIT A

10. **Authorization for Medicare Carriers to Submit Medical Information to GHI for Payment of Supplemental and Complementary Benefits.** When you become covered, you authorize the parties listed below to provide medical information to GHI or its designee.

(a) Health Care Financing Administration.

(b) Medicare intermediaries.

(c) Medicare carriers.

(d) Providers.

GHI must receive this information in order to:

(a) Process claims; and

(b) Provide benefits.

These terms remain in effect until all claims incurred by you are processed.

11. **Subrogation and Reimbursement.** This paragraph applies when another party (including any insurance carrier) is, or is alleged to be, liable for your injury, illness or other condition and GHI has provided benefits in connection with that injury, sickness or condition. GHI is subrogated to all of your rights against any such party (including any insurance carrier) to the extent of the reasonable value of the benefits provided to you under this Policy. This means that GHI has the right independently of you, or as a plaintiff-intervenor in any action you may have commenced, to proceed against the party responsible for your injury, illness, or condition to recover the benefits that have been provided under the GHI Policy. You must cooperate with GHI in proceeding against the party responsible for your injury, illness or condition to recover the benefits GHI has provided. In addition, in GHI's sole discretion, if you (or your legal representative, estate or heirs) make recovery from any liable party (including any insurance carrier), you will promptly reimburse GHI for any benefits provided by GHI in connection with the injury, illness or condition from any settlement, verdict or insurance proceeds received to the extent that such settlement, verdict or other amounts received is specifically identified as being for medical expenses paid out.

11. **Non-Vesting.** Under no circumstances do you acquire a vested interest in continued receipt of a particular benefit or level of benefits. Benefits shall be determined according to the Group Contract terms in effect when an expense is incurred. Benefits may be amended at any time in accordance with applicable provisions of the Group Contract.

12. **Surcharges.** New York State imposes a surcharge on health care rendered by certain types of providers. This surcharge applies to payments made by GHI and to the out of pocket expenses that you are often responsible to pay. Out of pocket expenses include, but are not limited to cost sharing requirements under this Policy, such as deductibles, coinsurance and Co-pay Charges. GHI will pay the surcharges attributable to payments actually made by GHI. GHI will also pay the surcharges attributable to Co-pay Charges. However, you are responsible to pay the surcharge attributable to deductibles and coinsurance.



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | **CIVIL ACTION** |
| | § | |
| v. | § | **NO. 08-1633** |
| | § | |
| US Bancorp; BrownGreer, PLC; and John Does | § | **SECTION L, MAG. 3** |
| | § | |
| | § | **JUDGE FALLON** |
| | § | |
| | § | **MAGISTRATE JUDGE KNOWLES** |
| | § | |
| | § | **In Relation to: MDL Docket No. 1657** |
| | § | |
| | § | **In Re: VIOXX** |
| | § | |
| | § | **PRODUCTS LIABILITY LITIGATION** |

## AFFIDAVIT OF ROBERT EVRAETS

Comes the affiant, Robert Evraets, and under penalty of perjury do state the following:

1.    My name is Robert Evraets, and I am Manager of the Special Investigation Unit at The Guardian Life Insurance Company of America and have personal knowledge of the events described herein.

2.    The Guardian Life Insurance Company of America is a health benefit plan which provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans.

3.    During the year 2007, The Guardian Life Insurance Company of America provided health benefits to approximately 257,795[1] plan members, who participate in approximately 3799 plans.

4.    The vast majority of these plans are self-funded plans, and/or are governed by the Employee Retirement Security Act of 1974 (ERISA).

---

[1] AIS's Directory of Health Plans: 2008

5. Each of these 3799 plans have their own set of plan documents.

6. Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that The Guardian Life Insurance Company of America employs relating to the plan's rights of subrogation and/or reimbursement.

7. The Guardian Life Insurance Company of America in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8. Further the Affiant Sayeth Naught.

Dated. 6/13/2008

Robert Evraets
Manager of Special Investigation Unit

# EXHIBIT A

# THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA

This is a specimen copy of master group policy provisions which apply to this plan of insurance. The originals of these provisions are part of a master group policy delivered in the State of Rhode Island to the Citizens Savings Bank and Citizens Trust Company (Trustee) as Policyholder.

*All Options*

### ATTACHED TO AND MADE A PART OF GROUP INSURANCE POLICY NO. G-00723191-JC

issued by

**The Guardian** Life Insurance Company of America

(herein called the Insurance Company)

to

**Trustees of the General Services Industry Insurance Trust Fund**
**with respect to**
**MACHINE PHASE SYSTEMS LIMITED**

(herein called the Policyholder)

As of February 1, 2005, this plan is amended, as explained below, with respect to any of this plan's provisions.

As used in this rider:

"Covered Person" means an employee or dependent, including the legal representative of a minor or incompetent, insured by this plan.

"Reasonable pro-rata Expenses" are those costs, such as lawyers fees and court costs, incurred to effect a third party payment, expressed as a percentage of such payment.

"Third Party" means anyone other than The Guardian, the employer or the covered person.

We will not pay any benefits under this plan, to or on behalf of a covered person, who has received payment in whole or in part from a third party, or its insurer for past or future medical or dental charges or loss of earnings, resulting from the negligence, intentional act, or no-fault tort liability of a third party.

If a covered person makes a claim to us for medical, dental or loss of earnings benefits under this plan prior to receiving payment from a third party or its insurer, the covered person must agree, in writing, to repay us from any amount of money they receive from the third party, or its insurer.

The repayment will be equal to the amount of benefits paid by us. However, the covered person may deduct the reasonable pro-rata expenses, incurred in effecting the third party payment, from the repayment to us.

The repayment agreement will be binding upon the covered person whether: (a) the payment received from the third party, or its insurer, is the result of a legal judgement, an arbitration award, a compromise settlement, or any other arrangement; or (b) the third party, or its insurer, has admitted liability for the payment; or (c) the medical or dental charges or loss of earnings are itemized in the third party payment.

This is a specimen copy of master group policy provisions which apply to this plan of insurance. The originals of these provisions are part of a master group policy delivered in the State of Rhode Island to the Citizens Savings Bank and Citizens Trust Company (Trustee) as Policyholder.

***All Options***

### ATTACHED TO AND MADE A PART OF GROUP INSURANCE POLICY NO. G-00393228-L5

issued by

**The Guardian** Life Insurance Company of America

(herein called the Insurance Company)

to

**Trustees of the Texas Finance, Insurance and Real Estate Industry Insurance Trust Fund**
**with respect to**
**AMERICAN BANK OF TEXAS, N.A.**

(herein called the Policyholder)

As of April 1, 2004, this plan is amended, as explained below, with respect to any of this plan's provisions.

As used in this rider:

"Covered Person" means an employee or dependent, including the legal representative of a minor or incompetent, insured by this plan.

"Reasonable pro-rata Expenses" are those costs, such as lawyers fees and court costs, incurred to effect a third party payment, expressed as a percentage of such payment.

"Third Party" means anyone other than The Guardian, the employer or the covered person.

We will not pay any benefits under this plan, to or on behalf of a covered person, who has received payment in whole or in part from a third party, or its insurer for past or future medical or dental charges or loss of earnings, resulting from the negligence, intentional act, or no-fault tort liability of a third party.

If a covered person makes a claim to us for medical, dental or loss of earnings benefits under this plan prior to receiving payment from a third party or its insurer, the covered person must agree, in writing, to repay us from any amount of money they receive from the third party, or its insurer.

The repayment will be equal to the amount of benefits paid by us. However, the covered person may deduct the reasonable pro-rata expenses, incurred in effecting the third party payment, from the repayment to us.

The repayment agreement will be binding upon the covered person whether: (a) the payment received from the third party, or its insurer, is the result of a legal judgement, an arbitration award, a compromise settlement, or any other arrangement; or (b) the third party, or its insurer, has admitted liability for the payment; or (c) the medical or dental charges or loss of earnings are itemized in the third party payment.

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | **CIVIL ACTION** |
| | § | |
| **v.** | § | **NO. 08-1633** |
| | § | |
| US Bancorp; BrownGreer, PLC; and John | § | **SECTION L, MAG. 3** |
| Does | § | |
| | § | **JUDGE FALLON** |
| | § | |
| | § | **MAGISTRATE JUDGE KNOWLES** |
| | § | |
| | § | **In Relation to:  MDL Docket No. 1657** |
| | § | |
| | § | **In Re:  VIOXX** |
| | § | |
| | § | **PRODUCTS LIABILITY LITIGATION** |

### AFFIDAVIT OF NIEL MINKOFF, M.D.

Comes the affiant, Neil Minkoff, M.D., Network Medical Director for Harvard Pilgrim Health Care, Inc and under penalty of perjury do state the following:

1.     My name is Neil Minkoff and I am Network Director at Harvard Pilgrim Health Care, Inc and have personal knowledge of the events described herein.

2.     Harvard Pilgrim Health Care, Inc is a health benefit plan which provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans

3.     During the year 2007, Harvard Pilgrim Health Care, Inc provided health benefits to approximately 1,073,399[1] plan members, who participate in approximately 397 plans.

4.     The approximately half of these plans are self-funded plans, and/or are governed by the Employee Retirement Security Act of 1974 (ERISA).

5.     Each of these 397 plans have their own set of plan documents.

---

[1] AIS's Directory of Health Plans: 2008

6       Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that Harvard Pilgrim Health Care, Inc. employs relating to the plan's rights of subrogation and/or reimbursement.

7.      Harvard Pilgrim Health Care, Inc. in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.      Further the Affiant Sayeth Naught.

Dated.  June 18, 2008

Neil Minkoff, M D.
Network Medical Director
Harvard Pilgrim Health Care, Inc.

# EXHIBIT A



Harvard Pilgrim
Health Care

# Benefit Handbook

The Harvard Pilgrim HMO
Massachusetts

Effective Date: 3/1/07
Form No  MAHMO2001

cc 1512/hmo/ma  03/07

## H. WHEN YOU HAVE OTHER COVERAGE

This section explain how benefits under this *Benefit Handbook* will be coordinated with other insurance benefits available to pay for health services that a member has received. Benefits are coordinated among insurance carriers to prevent duplicate recovery for the same service. Nothing in this section should be interpreted to provide coverage for any service or supply that is not expressly covered under this Handbook or to increase the level of coverage provided.

## 1. BENEFITS IN THE EVENT OF OTHER INSURANCE

Benefits under this Handbook and *Schedule of Benefits* will be coordinated to the extent permitted by law with other plans covering health benefits, including: motor vehicle insurance, medical payment policies, home owners insurance, governmental benefits (including Medicare), and all Health Benefit Plans. The term "Health Benefit Plan" means all HMO and other prepaid health plans, Medical or Hospital Service Corporation plans, commercial health insurance and self-insured health plans. There is no coordination of benefits with Medicaid plans or with hospital indemnity benefits amounting to less than $100 per day.

Coordination of benefits will be based upon the Usual, Customary and Reasonable charge for any service that is covered at least in part by any of the plans involved. If benefits are provided in the form of services, or if a provider of services is paid under a capitation arrangement, the reasonable value of such services will be used as the basis for coordination. No duplication in coverage of services shall occur among plans.

When a Member is covered by two or more Health Benefit Plans, one plan will be "primary" and the other plan (or plans) will be "secondary." The benefits of the primary plan are determined before those of secondary plan(s) and without considering the benefits of secondary plan(s). The benefits of secondary plan(s) are determined after those of the primary plan and may be reduced because of the primary plan's benefits.

In the case of Health Benefit Plans that contain provisions for the coordination of benefits, the following rules shall decide which Health Benefit Plans are primary or secondary.

### a. Dependent/Non-Dependent

The benefits of the plan that covers the person as an employee, member or subscriber are determined before those of the plan that covers the person as a dependent

### b. A Dependent Child whose parents are not separated or divorced

The order of benefits is determined as follows:

1) The benefits of the plan of the parent whose birthday falls earlier in a year are determined before those of the plan of the parent whose birthday falls later in that year; but,

2) If both parents have the same birthday, the benefits of the plan that covered the parent longer are determined before those of the plan that covered the other parent for a shorter period of time;

3) However, if the other plan does not have the rule described in (1) above, but instead has a rule based upon the gender of the parent, and if, as a result, the plans do not agree on the order of benefits, the rule in this plan (the "birthday rule") will determine the order of benefits.

### c. Dependent Child/Separated or Divorced Parents

Unless a court order, of which HPHC has knowledge, specifies one of the parents as responsible for the health care benefits of the child, the order of benefits is determined as follows:

1) First the plan of the parent with custody of the child;

2) Then, the plan of the spouse of the parent with custody of the child; and

3) Finally, the plan of the parent not having custody of the child.

### d. Active/Inactive Employee

The benefits of the plan that covers the person as an active employee are determined before those of the plan that covers the person as a laid-off or retired employee

### e. Longer/Shorter Length of Coverage:

If none of the above rules determines the order of benefits, the benefits of the plan that covered the employee, Member or Subscriber longer are determined before those of the plan that covered that person for the shorter time.

If a Member is covered by a Health Benefit Plan that does not have provisions governing the coordination of benefits between plans, that plan will be the primary plan.

## 2. PROVIDER PAYMENT WHEN HPHC COVERAGE IS SECONDARY

When a Member's HPHC coverage is secondary to a Member's coverage under another Health Benefit Plan, HPHC may suspend payment to a provider of services until the provider has properly submitted a claim to the primary plan and the claim has been paid, in whole or in part, or denied by the primary plan. HPHC may recover any payments made for services in excess of HPHC's liability as the secondary plan, either before or after payment by the primary plan.

### 3. WORKER'S COMPENSATION/GOVERNMENT PROGRAMS

If HPHC has information indicating that services provided to a Member are covered under Worker's Compensation, employer's liability or other program of similar purpose, or by a federal, state or other government agency, HPHC may suspend payment for such services until a determination is made whether payment will be made by such program. If HPHC provides or pays for services for an illness or injury covered under Worker's Compensation, employer's liability or other program of similar purpose, or by a federal, state or other government agency, HPHC will be entitled to recovery of its expenses from the provider of services or the party or parties legally obligated to pay for such services

### 4. SUBROGATION

Subrogation is a means by which HPHC and other health plans recover expenses of services where a third party is legally responsible for a Member's injury or illness.

If another person or entity is, or may be, liable to pay for services related to a Member's illness or injury which have been paid for or provided by HPHC, HPHC will be subrogated and succeed to all rights of the Member to recover against such person or entity 100% of the value of the services paid for or provided by the Plan. HPHC will have the right to seek such recovery from, among others, the person or entity that caused the injury or illness, his/her liability carrier or the Member's own auto insurance carrier, in cases of uninsured or underinsured motorist coverage. HPHC will also be entitled to recover from a Member 100% of the value of services provided or paid for by HPHC when a Member has been, or could be, reimbursed for the cost of care by another party.

HPHC's right to recover 100% of the value of services paid for or provided by HPHC is not subject to reduction for a pro rata share of any attorney's fees incurred by the Member in seeking recovery from other persons or organizations. HPHC's right to 100% recovery shall apply even if a recovery the Member receives for the illness or injury is designated or described as being for injuries other than health care expenses. The subrogation and recovery provisions in this section apply whether or not the Member recovering money is a minor.

To enforce its subrogation rights under this Handbook, HPHC will have the right to take legal action, with or without the Member's consent, against any party to secure recovery of the value of services provided or paid for by HPHC for which such party is, or may be, liable

Nothing in this Handbook shall be construed to limit HPHC's right to utilize any remedy provided by law to enforce its rights to subrogation under this Handbook.

### 5. MEDICAL PAYMENT POLICIES

For Members who are entitled to benefits under the medical payment benefit of a motor vehicle, motorcycle, boat, homeowners, hotel, restaurant, or other insurance policy, such coverage shall become primary to the coverage under this *Benefit Handbook* for services rendered in connection with a covered loss under that policy. The benefits under this *Benefit Handbook* shall not duplicate any benefits to which the Member is entitled under any medical payment policy or benefit. All sums payable for services provided under this *Benefit Handbook* to Members that are covered under any medical payment policy or benefit are payable to HPHC.

### 6. MEMBER COOPERATION

The Member agrees to cooperate with HPHC in exercising its rights of subrogation and coordination of benefits under this Handbook and *Schedule of Benefits*. Such cooperation will include, but not be limited to, a) the provision of all information and documents requested by HPHC, b) the execution of any instruments deemed necessary by HPHC to protect its rights, c) the prompt assignment to HPHC of any monies received for services provided or paid for by HPHC, and d) the prompt notification to HPHC of any instances that may give rise to HPHC's rights. The Member further agrees to do nothing to prejudice or interfere with HPHC's rights to subrogation or coordination of benefits.

Failure of the Member to perform the obligations stated in this Subsection shall render the Member liable to HPHC for any expenses HPHC may incur, including reasonable attorneys fees, in enforcing its rights under this Handbook

### 7. HPHC'S RIGHTS

Nothing in this Handbook shall be construed to limit HPHC's right to utilize any remedy provided by law to enforce its rights to subrogation or coordination of benefits under this Plan.

### 8. MEMBERS ELIGIBLE FOR MEDICARE

For a Member who is eligible for Medicare by reason of End Stage Renal Disease, HPHC will be the primary payor for covered services during the "coordination period" specified by federal regulations at 42 CFR Section 411.62. Thereafter, Medicare will be the primary payor. When Medicare is primary (or would be primary if the Member were timely enrolled) HPHC will pay for services only to the extent payments would exceed what would be payable by

Medicare


Harvard Pilgrim
Health Care

# Benefit Handbook

The Harvard Pilgrim HMO
*For Self-Insured Members*
Massachusetts

This benefit plan is provided to you by your employer on a self-insured basis
Harvard Pilgrim Health Care has arranged for the availability of a network of
health care providers and will be performing various administration services,
including claims processing, on behalf of the Plan Sponsor  Although some
materials may reference you as a member of one of Harvard Pilgrim's
products, Harvard Pilgrim Health Care is not the issuer, insurer or provider of
your coverage

cc 1512/hmo/si/ma  04/07

## H. WHEN YOU HAVE OTHER COVERAGE

This section explains how benefits under this *Benefit Handbook* will be coordinated with other insurance benefits available to pay for health services that a Member has received. Benefits are coordinated among insurance carriers to prevent duplicate recovery for the same service. Nothing in this section should be interpreted to provide coverage for any service or supply that is not expressly covered under this Handbook.

### 1. BENEFITS IN THE EVENT OF OTHER INSURANCE

Benefits under this Handbook and the *Schedule of Benefits* will be coordinated to the extent permitted by law with other plans covering health benefits, including: motor vehicle insurance, medical payment policies, home owners insurance, governmental benefits (including Medicare), and all Health Benefit Plans. The term "Health Benefit Plan" means all HMO and other prepaid health plans, Medical or Hospital Service Corporation plans, commercial health insurance and self-insured health plans. There is no coordination of benefits with Medicaid plans or with hospital indemnity benefits amounting to less than $100 per day.

Coordination of benefits will be based upon the Usual, Customary and Reasonable Charges for any service that is covered at least in part by any of the plans involved. If benefits are provided in the form of services, or if a provider of services is paid under a capitation arrangement, the reasonable value of such services will be used as the basis for coordination. No duplication in coverage of services shall occur among plans.

When you are covered by two or more Health Benefit Plans, one plan will be "primary" and the other plan (or plans) will be "secondary." The benefits of the primary plan are determined before those of secondary plan(s) and without considering the benefits of secondary plan(s). The benefits of secondary plan(s) are determined after those of the primary plan and may be reduced because of the primary plan's benefits.

In the case of Health Benefit Plans that contain provisions for the coordination of benefits, the following rules shall decide which Health Benefit Plans are primary or secondary:

#### a. Dependent/Non-Dependent

The benefits of the plan that covers the patient as an employee, Member or Subscriber are determined before those of the plan that covers the person as a dependent.

#### b. A Dependent Child Whose Parents Are Not Separated or Divorced

The order of benefits is determined as follows:

1) The benefits of the plan of the parent whose birthday falls earlier in a year are determined before those of the plan of the parent whose birthday falls later in that year; but,

2) If both parents have the same birthday, the benefits of the plan that covered the parent longer are determined before those of the plan that covered the other parent for a shorter period of time;

3) However, if the other plan does not have the rule described in (1) above, but instead has a rule based upon the gender of the parent, and if, as a result, the plans do not agree on the order of benefits, the rule in this Plan (the "birthday rule") will determine the order of benefits.

#### c. Dependent Child/Separated or Divorced Parents

Unless a court order, of which the Plan has knowledge, specifies one of the parents as responsible for the health care benefits of the child, the order of benefits is determined as follows:

1) First the plan of the parent with custody of the child;

2) Then, the plan of the spouse of the parent with custody of the child;

3) Finally, the plan of the spouse of the non-custodial parent.

#### d. Active/Inactive Employee

The benefits of the plan that covers the person as an active employee are determined before those of the plan that covers the person as a laid-off or retired employee.

#### e. Longer/Shorter Length of Coverage

If none of the above rules determines the order of benefits, the benefits of the plan that covered the employee, Member or Subscriber longer are determined before those of the plan that covered that person for the shorter time.

If you are covered by a Health Benefit Plan that does not have provisions governing the coordination of benefits between plans, that plan will be the primary plan.

### 2. PROVIDER PAYMENT WHEN PLAN COVERAGE IS SECONDARY

When your Plan coverage is secondary to your coverage under another Health Benefit Plan, payment to a provider of services may be suspended until the provider

has properly submitted a claim to the primary plan and the claim has been paid, in whole or in part, or denied by the primary plan. The Plan may recover any payments made for services in excess of the Plan's liability as the secondary plan, either before or after payment by the primary plan.

### 3. WORKER'S COMPENSATION/GOVERNMENT PROGRAMS

If HPHC has information indicating that services provided to you are covered under Worker's Compensation, employer's liability or other program of similar purpose, or by a federal, state or other government agency, payment may be suspended for such services until a determination is made whether payment will be made by such program. If payment is made for services for an illness or injury covered under Worker's Compensation, employer's liability or other program of similar purpose, or by a federal, state or other government agency, the Plan will be entitled to recovery of its expenses from the provider of services or the party or parties legally obligated to pay for such services

### 4. SUBROGATION

Subrogation is a means by which health plans recover expenses of services where a third party is legally responsible for your injury or illness

If another person or entity is, or may be, liable to pay for services related to your illness or injury which have been paid for or provided by the Plan, the Plan will be subrogated and succeed to all rights of the Member to recover against such person or entity 100% of the value of the services paid for or provided by the Plan. The Plan will have the right to seek such recovery from, among others, the person or entity that caused the injury or illness, his/her liability carrier or your own auto insurance carrier, in cases of uninsured or underinsured motorist coverage. The Plan will also be entitled to recover from a Member 100% of the value of services provided or paid for by the Plan when you have been, or could be, reimbursed for the cost of care by another party

The Plan's right to recover 100% of the value of services paid for or provided by the Plan is not subject to reduction for a pro rata share of any attorney's fees incurred by the Member in seeking recovery from other persons or organizations. The Plan's right to 100% recovery shall apply even if a recovery the Member receives for the illness or injury is designated or described as being for injuries other than health care expenses. The subrogation and recovery provisions in this section apply whether or not the Member recovering money is a minor.

To enforce its subrogation rights under this Handbook, the Plan will have the right to take legal action, with or without your consent, against any party to secure recovery of the value of services provided or paid for by the Plan for which such party is, or may be, liable.

Nothing in this Handbook shall be construed to limit the Plan's right to utilize any remedy provided by law to enforce its rights to subrogation under this Handbook

### 5. MEDICAL PAYMENT POLICIES

If you are entitled to benefits under the medical payment benefit of a motor vehicle, motorcycle, boat, homeowners, hotel, restaurant, or other insurance policy, such coverage shall become primary to the coverage under this Handbook for services rendered in connection with a covered loss under that policy. The benefits under this Handbook shall not duplicate any benefits to which you are entitled under any medical payment policy or benefit. All sums payable for services provided under this Handbook to Members that are covered under any medical payment policy or benefit are payable to the Plan.

### 6. MEMBER COOPERATION

You agree to cooperate with the Plan in exercising its rights of subrogation and coordination of benefits under this Handbook and *Schedule of Benefits*. Such cooperation will include, but not be limited to, a) the provision of all information and documents requested by the Plan, b) the execution of any instruments deemed necessary by the Plan to protect its rights, c) the prompt assignment to the Plan of any monies received for services provided or paid for by the Plan, and d) the prompt notification to the Plan of any instances that may give rise to the Plan's rights. You further agree to do nothing to prejudice or interfere with the Plan's rights to subrogation or coordination of benefits.

If you fail to perform the obligations stated in this Subsection you shall be rendered liable to the Plan for any expenses the Plan may incur, including reasonable attorneys fees, in enforcing its rights under this Handbook

### 7. THE PLAN'S RIGHTS

Nothing in this Handbook shall be construed to limit the Plan's right to utilize any remedy provided by law to enforce its rights to subrogation or coordination of benefits under this Plan

### 8. MEMBERS ELIGIBLE FOR MEDICARE

When you receive Covered Benefits that are eligible for coverage by Medicare as the primary payer, the claim

must be submitted to Medicare before payment by HPHC. The Plan will be liable for any amount eligible for coverage that is not paid by Medicare. You shall take such action as is required to assure payment by Medicare.

If you are eligible for Medicare by reason of End Stage Renal Disease, the Plan will be the primary payor for Covered Benefits during the "coordination period" specified by federal regulations at 42 CFR Section 411 62. Thereafter, Medicare will be the primary payor. When Medicare is primary (or would be primary if you were timely enrolled) the Plan will pay for services only to the extent payments would exceed what would be payable by Medicare.

When the Plan provides benefits to a Member for which the Member is eligible under Medicare, the Plan shall be entitled to reimbursement from Medicare for such services. The Member shall take such action as is required to assure this reimbursement.