# APPENDIX
# PART 5

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | **CIVIL ACTION** |
| | § | |
| **v.** | § | **NO. 08-1633** |
| | § | |
| US Bancorp; BrownGreer, PLC; and John | § | **SECTION L, MAG. 3** |
| Does | § | |
| | § | **JUDGE FALLON** |
| | § | |
| | § | **MAGISTRATE JUDGE KNOWLES** |
| | § | |
| | § | **In Relation to: MDL Docket No. 1657** |
| | § | |
| | § | **In Re: VIOXX** |
| | § | |
| | § | **PRODUCTS LIABILITY LITIGATION** |

## AFFIDAVIT OF HIP HEALTH PLAN OF NEW YORK

Comes the affiant, NICHOLAS P. KAMBOLIS, and under penalty of perjury do state the following:

1.     My name is NICHOLAS P. KAMBOLIS, and I am Deputy General Counsel and Vice President of HIP Health Plan of New York and have personal knowledge of the events described herein.

2.     HIP Health Plan of New York is a health benefit plan which provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans.

3.     During the year 2007, HIP Health Plan of New York provided health benefits to approximately 1,301,916[1] plan members, who participate in approximately 12,582 plans.

4.     The vast majority of these plans are self-funded plans, and/or are governed by the Employee Retirement Security Act of 1974 (ERISA).

---

[1] AIS's Directory of Health Plans: 2008

5.      Each of these 12,582 plans have their own set of plan documents.

6.      Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that HIP Health Plan of New York employs relating to the plan's rights of subrogation and/or reimbursement.

7.      HIP Health Plan of New York in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.      Further the Affiant Sayeth Naught.

Dated. _June 17, 2008_

Nicholas P. Kambolis
Deputy General Counsel and Vice President

# EXHIBIT A

# HIP HEALTH PLAN
# OF NEW YORK

**Private Room Difference.** Regardless of whether This Plan is primary or secondary, This Plan will not pay or provide benefits for the difference between the cost of a private hospital room and the cost of a semi-private hospital room unless a private room is Medically Necessary and Appropriate for a benefit covered under this Group Certificate.

**Right to Receive and Release Necessary Information.** HIPIC has the right to release or to receive information that it needs to carry out the purposes of this Section. HIPIC does not need to inform the Member or to obtain anyone's consent to do this, except as may be required by under applicable state and/or federal laws. HIPIC will not be legally responsible to 'the Member or anyone else for releasing or obtaining this information. Members must furnish to HIPIC any information that HIPIC requests for carrying out the purpose of this Section. If such requested information is not provided, HIPIC reserves the right to deny payments for the services in question.

**Right to Recover Overpayments.** In some cases, HIPIC may have made payment or provided benefits even though the Member had coverage under another plan. Under these circumstances, the Member agrees to refund to HIPIC the amount by which HIPIC should have reduced the payment or benefit. HIPIC also has the right to recover any overpayments from the Other Plan or any Providers and the Member agrees to sign all documents necessary to help recover any overpayments.

**Subrogation and Right of Recovery.** In the event that a Member suffers an injury or illness for which another party may be responsible, such as someone injuring you in an accident, and HIP pays benefits as a result of that injury or illness, HIPIC will be subrogated and succeed to the right of recovery against the party responsible for the Member's illness or injury to the extent of the benefits HIPIC has paid. This means that HIPIC has the right independent of the Member to proceed against the party responsible for the Member's injury or illness to recover the benefits HIPIC has paid.

**Duty to Cooperate with Us - Possible Penalties for Failure to Cooperate.** Under certain circumstances, HIPIC is also entitled to be reimbursed for the benefits HIPIC has paid from a settlement or a judgment a Member receives from the party responsible for their illness or injury. This and other penalties which apply under certain circumstances are noted below. Those circumstances are.

1. The settlement or judgment a Member receives from the party responsible for their illness or injury specifically identifies or allocates monetary sums directly attributable to expenses for which HIPIC has paid benefits.

2. A Member fails to cooperate with HIPIC in proceeding against the party responsible for their illness or injury to recover the benefits HIPIC has paid. HIPIC will pay all expenses associated with a legal action instituted on HIPIC's initiative.

The penalty for failing to cooperate as indicated above is that a Member will be responsible to repay to HIPIC the cost of the benefits and services HIPIC has paid.

**Medicare Eligibility.** This Plan is not intended to duplicate any coverage for which Members are, or could be eligible for, such as Medicare. Members agree to complete and submit to HIPIC any documentation reasonably necessary for HIPIC to receive or assure reimbursement under Medicare.

**Right to Receive and Release Necessary Information.** HIPIC has the right to release or to receive information that it needs to carry out the purposes of this Section. HIPIC does not need to inform the Member or to obtain anyone's consent to do this, except as may be required by under applicable state and/or federal laws. HIPIC will not be legally responsible to the Member or anyone else for releasing or obtaining this information. Members must furnish to HIPIC any information that HIPIC requests for carrying out the purpose of this Section. If such requested information is not provided, HIPIC reserves the right to deny payments for the services in question.

**Right to Recover Overpayments.** In some cases, HIPIC may have made payment or provided benefits even though the Member had coverage under another plan. Under these circumstances, the Member agrees to refund to HIPIC the amount by which HIPIC should have reduced the payment or benefit. HIPIC also has the right to recover any overpayments from the Other Plan or any Providers and the Member agrees to sign all documents necessary to help recover any overpayments.

**Subrogation and Right of Recovery.** In the event that a Member suffers an injury or illness for which another party may be responsible, such as someone injuring you in an accident, and HIP pays benefits as a result of that injury or illness, HIPIC will be subrogated and succeed to the right of recovery against the party responsible for the Member's illness or injury to the extent of the benefits HIPIC has paid. This means that HIPIC has the right independent of the Member to proceed against the party responsible for the Member's injury or illness to recover the benefits HIPIC has paid.

**Duty to Cooperate with Us - Possible Penalties for Failure to Cooperate.** Under certain circumstances, HIPIC is also entitled to be reimbursed for the benefits HIPIC has paid from a settlement or a judgment a Member receives from the party responsible for their illness or injury. This and other penalties which apply under certain circumstances are noted below. Those circumstances are:

1. The settlement or judgment a Member receives from the party responsible for their illness or injury specifically identifies or allocates monetary sums directly attributable to expenses for which HIPIC has paid benefits; or,

2. A Member fails to cooperate with HIPIC in proceeding against the party responsible for their illness or injury to recover the benefits HIPIC has paid. HIPIC will pay all expenses associated with a legal action instituted on HIPIC's initiative.

The penalty for failing to cooperate as indicated above is that a Member will be responsible to repay to HIPIC the cost of the benefits and services HIPIC has paid.

**Medicare Eligibility.** This Plan is not intended to duplicate any coverage for which Members are, or could be eligible for, such as Medicare. Members agree to complete and submit to HIPIC any documentation reasonably necessary for HIPIC to receive or assure reimbursement under Medicare.

- If a Member's employer has 20 or more employees, any active employee or spouse of an employee who becomes or remains a member of the Group after becoming eligible for Medicare due to reaching the age sixty-five (65), will receive the benefits under this Group Policy as primary unless such Member elects Medicare as his or her primary coverage.



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | CIVIL ACTION |
| | § | |
| v. | § | NO.  08-1633 |
| | § | |
| US Bancorp;  BrownGreer, PLC; and John Does | § | SECTION L, MAG. 3 |
| | § | |
| | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |
| | § | |
| | § | In Relation to:  MDL Docket No. 1657 |
| | § | |
| | § | In Re:  VIOXX |
| | § | |
| | § | PRODUCTS LIABILITY LITIGATION |

## AFFIDAVIT OF D. GARY REED

Comes the affiant, D. Gary Reed, and under penalty of perjury do state the following:

1.      My name is D. Gary Reed and I am Senior Insurance Counsel at Humana Inc. and have personal knowledge of the events described herein.

2.      Humana Inc. (through its licensed subsidiaries, collectively, "Humana") provides medical and/or pharmacy benefits to employer- and union-sponsored group plans, governmental sponsored group plans and individuals, including fully-insured and self-funded plans.

3.      As of December 31, 2007, Humana provided health benefits to approximately 1,808,600[1] individuals in fully insured groups and individual health plans. Additionally, Humana administered health benefits for 1,643,000 individuals in self-funded ("ASO" or "administrative services only" plans), sponsored by approximately 362 employer and union customers.  Many of

---

[1] Humana Inc., SEC Form 10K, as of 12/31/2007

these customers had more than one health plan (e.g., one plan for hourly employees and another for salaried employees, or one plan for active employees and another for retirees). Mostof these 3,451,600 commercial members were in self-funded plans and/or insured plans governed by the Employee Retirement Security Act of 1974 ("ERISA").

4.    As of December 31, 2007, Humana provided health benefits to approximately 54,642 fully insured accounts. Additionally, Humana administered health benefits for approximately 912 accounts in self-funded ("ASO" or "administrative services only" plans), sponsored by approximately 362 employers and union customers.

5.    Each of these customers has its own set of plan documents. In fact, many customers have more than one health plan (e.g., one plan for hourly employees and another for salaried employees, or one plan for active employees and another for retirees). Indeed, some employers offer their plan participants a choice between insured and ASO plans. Thus, the number of accounts – and the number of plan documents -- is larger than the number of customers.

6.    Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that Humana. employs relating to the plan's rights of subrogation and/or reimbursement.

7.    Humana in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.    Further the Affiant Sayeth Naught.

Dated. _June 17, 2008_

_D Gary Reed_
D. Gary Reed
Senior Insurance Counsel
Humana Inc.


STATE OF KENTUCKY      )
                        ) SS
COUNTY OF JEFFERSON    )


Subscribed to and sworn to before me this ⎯ day of June, 2008.

My commission expires: _January 12, 2012_

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Notary Public

[SEAL]

Kara Burgin, Notary Public
State At Large
Kentucky
My Commission Expires January 12, 2012

# EXHIBIT A

# HUMANA, INC.

HCFPEC00

 **HUMANA.**

# CERTIFICATE OF COVERAGE

**GROUP PLAN NUMBER:** N1829          **PLAN:** 075     **OPTION:** 782

**GROUP PLAN SPONSOR:**

UNIVERSITY OF CINCINNATI

We, Humana Health Plan of Ohio, Inc., will provide the services described under the provisions of the Group Plan to you and your dependents, if any, on a direct-service basis. This means that we arrange or contract with physicians, hospitals, and other providers of medical care and employ administrative personnel to directly provide, organize, and arrange for such service.

The physicians, hospitals, and providers of medical care are not our agents or employees, nor are we their agents or employees.

For information on your coverage and how to obtain services, contact:

Humana Health Plan of Ohio, Inc.
655 Eden Park Dr.
Suite 100
Cincinnati, Ohio 45202
1-800-852-7731

### HUMANA HEALTH PLAN OF OHIO, INC.

President

**NOTICE: IF YOU OR YOUR FAMILY MEMBERS ARE COVERED BY MORE THAN ONE HEALTH CARE PLAN, YOU MAY NOT BE ABLE TO COLLECT BENEFITS FROM BOTH PLANS. EACH PLAN MAY REQUIRE YOU TO FOLLOW ITS RULES OR USE SPECIFIC DOCTORS AND HOSPITALS, AND IT MAY BE IMPOSSIBLE TO COMPLY WITH BOTH PLANS AT THE SAME TIME. READ ALL OF THE RULES VERY CAREFULLY, INCLUDING THE COORDINATION OF BENEFITS SECTION, AND COMPARE THEM WITH THE RULES OF ANY OTHER PLAN THAT COVERS YOU OR YOUR FAMILY.**

HP4-FP 05/01

H330BD00

## PROVISIONS FOR SUBROGATION AND RIGHT OF REIMBURSEMENT

### RIGHTS OF RECOVERY

Our intention is to preserve and assert our rights to recover for sums paid or benefits provided where circumstances warrant the assertion of our rights, to the fullest extent allowed by the applicable laws of the jurisdiction involved. Each provision below shall be considered severable, and if any provision is determined to be unenforceable or void, the remaining provisions shall remain unaffected.

### SUBROGATION

This provision applies when another party (person or organization) is, or may be, considered responsible for causing injury or for payment of benefits due to a member's injury or sickness for which benefits under the Group Plan have been provided or paid. To the extent of such benefits, we are subrogated to all rights and claims for recovery the member has against any party (including a health care carrier) responsible for the injury for payment to the member on accounts of the injury.

### RIGHT OF REIMBURSEMENT

If payment (by settlement, judgement or any other manner) is made by, or on behalf of, a responsible party to the member, expenses arising from the member's injury or sickness are not covered by us.

However, if we receive a claim for which benefits would be payable in the absence of a responsible party as described above, we will pay those benefits subject to the following conditions:

1. We will automatically have a lien to the extent of benefits advanced upon any recovery, by settlement, judgement or otherwise that you receive from the responsible party, or any person or organization making payment on behalf of the responsible party, including amount of benefits provided or paid by us for the treatment of the condition for which the third party is responsible.

2. You agree to notify us, in writing, within 60 days of your claim against the responsible party and to take such action, furnish such information, cooperate generally, and execute any documents as we may require to facilitate enforcement of our rights.

Exclusively at our option and choice, and without any waiver of any other rights of the Group Plan, in the event of prejudice, non-cooperation or breach of this Group Plan, we may withhold, deduct or retract payments to or on behalf of the member.

HP4-330  08/01

H331CA00

## PROVISIONS FOR SUBROGATION AND RIGHT OF REIMBURSEMENT (CONTINUED)

### DUPLICATION OF BENEFITS/OTHER INSURANCE

This provision is intended to prevent overpayment or duplication of benefits under this Group Plan when other health care coverage provides the same benefits. It applies when a person is covered by us and has, or is entitled to, benefits as a result of their injuries from any other coverage including, but not limited to, first party uninsured or underinsured motorist coverage, any no-fault insurance, medical payment coverage (auto, homeowners or otherwise), workers compensation settlement or awards, other group coverage (including student plans), direct recoveries from liable parties, premises medical pay or any other insurer providing coverage that would apply to pay your medical expenses, except other group health carriers in which case coverage will be determined under Coordination of Benefits.

Where there is such coverage, we will not duplicate other coverage available to the member and shall be considered secondary, except where specifically prohibited. Where double coverage exists, we shall have the right to be repaid from whomever has received the overpayment to the extent of the duplicate coverage.

This provision applies whether or not the member has made a claim under other applicable coverage. When applicable, the member is required to provide us with authorization to obtain information about the other coverage available, and to cooperate in the recovery of overpayments from the other coverage, including executing any assignment of rights necessary to obtain payment directly from the other coverage available.

### COOPERATION REQUIRED

The member shall cooperate by providing information and executing any documents to preserve our right and shall have the affirmative obligation of notifying us that claims are being made against responsible parties to recover for injuries for which we have paid. If the member enters into litigation or settlement negotiations regarding the obligations of the other party, the member must not prejudice, in any way, our rights to recover an amount equal to any benefits we have provided or paid for the injury or sickness. Failure of the member to provide us such notice or cooperation, or any action by the member resulting in prejudice to our rights will be a material breach of this Group Plan and will result in the member being personally responsible to make repayment. In such an event, we may deduct from any pending or subsequent claim made under the Group Plan any amounts the member owes us until such time as cooperation is provided and the prejudice ceases.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | **CIVIL ACTION** |
| | § | |
| **v.** | § | **NO. 08-1633** |
| | § | |
| US Bancorp; BrownGreer, PLC; and John | § | **SECTION L, MAG. 3** |
| Does | § | |
| | § | **JUDGE FALLON** |
| | § | |
| | § | **MAGISTRATE JUDGE KNOWLES** |
| | § | |
| | § | **In Relation to: MDL Docket No. 1657** |
| | § | |
| | § | **In Re: VIOXX** |
| | § | |
| | § | **PRODUCTS LIABILITY LITIGATION** |

## AFFIDAVIT OF Johns Hopkins Health Care

Comes the affiant, Johns Hopkins Health Care, and under penalty of perjury do state the following:

1.    My name is Stephen W. Lees, and I am Director of Operations at Johns Hopkins Health Care LLC and have personal knowledge of the events described herein.

2.    Johns Hopkins Health Care LLC is a health benefit plan which provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans.

3.    During the year 2007, Johns Hopkins Health Care LLC provided health benefits to approximately 186,000 plan members, who participate in approximately 9 plans.

4.    The vast majority of these plans are self-funded plans, and/or are governed by the Employee Retirement Security Act of 1974 (ERISA).

5.    Each of these 9 plans have their own set of plan documents.

6.     Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that Johns Hopkins Health Care LLC employs relating to the plan's rights of subrogation and/or reimbursement.

7.     Johns Hopkins Health Care LLC in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.     Further the Affiant Sayeth Naught.

Dated.   _June 13, 2008_

Stephen W. Lees
Director of Operations

# EXHIBIT A

# JOHNS HOPKINS
# HEALTH CARE LLC

# OTHER INFORMATION ABOUT YOUR EHP BENEFITS

The Coordination of Benefits rules usually do not apply in cases where parents are divorced or legally separated. The plan of the parent with a court order setting responsibility for health care expenses will usually be the only plan that covers a child. Coordination of Benefits rules only apply when a child is actually covered under the separate plans of both parents.

If you have enrolled your spouse/same-sex domestic partner in the Medical Plan and your spouse/same-sex domestic partner loses coverage under his or her other plan, the Medical Plan becomes primary for both of you and any covered dependent children.

Please note that the Medical Plan is the Secondary Plan to any other plan covering a qualified beneficiary who has elected COBRA.

The Medical Plan is the Primary Plan if you are covered under the Medical Plan as an active employee and you are also covered by Medicare. Similarly, the Medical Plan is the Primary Plan for your covered spouse if your spouse is covered by Medicare and if you are an active employee. The Medical Plan is Secondary to Medicare if your same-sex domestic partner is covered by Medicare.

If you have retiree coverage under the Medical Plan and are eligible for Medicare, then the Medical Plan is your Secondary Plan. Remember, if you are eligible for Medicare but do not enroll for Medicare, the Medical Plan will pay secondary benefits as though you had enrolled for Medicare.

When the Medical Plan is the Secondary Plan, it will deem the Primary Plan to have made all benefit payments that would have been made had you complied with all the rules of the Primary Plan. For example, if you fail to submit a claim on time to the Primary Plan or if you do not get the required pre-certification for treatment, the Medical Plan will make its Secondary Plan payment based on the payment the Primary Plan would have made if you submitted the claim on time or if you obtained the required pre-certification.

## When The Medical Plan May Recover Payment

### Reimbursement

The Medical Plan's reimbursement provisions apply when you or your dependents receive, or in the future may receive, any amounts by settlement, verdict or otherwise, including from an insurance carrier, for an injury, illness or other condition. We call these amounts a "Recovery". For purposes of these reimbursement rules and the subrogation rules below, your dependents include your same-sex domestic partner and his or her dependent children. If you or your dependents have received a Recovery, the Plan will subtract the amount of the Recovery from the benefits it would otherwise pay for treatment of the injury, illness or other condition. If there is a possible future Recovery, the Plan may delay paying benefits until the Recovery is received, and then subtract the amount of the Recovery.

43

# OTHER INFORMATION ABOUT YOUR EHP BENEFITS

If the Plan has already paid benefits to or on behalf of you or your dependents for treatment of an injury, illness or other condition, you or your dependents (or the legal representatives, estate or heirs of you or your dependents) must promptly reimburse the Plan from any Recovery received for the amount of benefits paid by the Plan. Reimbursement must be made regardless of whether you or your dependents are fully compensated ("made whole") by the Recovery.

In order to secure the Plan's reimbursement rights, by participating in the Plan you and your dependents, to the full extent of the Plan's claim for reimbursement, (1) grant the Plan a first priority lien against the proceeds of any Recovery received; (2) assign to the Plan any benefits you or your dependents may have under any insurance policy or other coverage and (3) agree to hold in trust for the Plan the proceeds of any Recovery received.

You and your dependents are obligated to cooperate with the Plan and its agents in order to protect the Plan's reimbursement rights. Cooperation means providing the Plan or its agents with any relevant information requested, signing and delivering any documents as the Plan or its agents reasonably request, obtaining the written consent of the Plan or its agents before releasing any party from liability, taking actions as the Plan or its agents reasonably request to assist the Plan in making a full recovery, and taking no action that may prejudice the Plan's rights.

The Plan is only responsible for those legal costs to which it agrees in writing, and will not otherwise bear the legal costs of you and your dependents. If you take any action to prevent the Plan from enforcing its reimbursement rights, you will also be liable to reimburse the Plan for any legal expenses that the Plan or its agents incur in enforcing the Plan's reimbursement rights.

## Subrogation

The Medical Plan's subrogation provisions apply when another party (including an insurance carrier) is or may be liable for your or your dependents' injury, illness or other condition, and the Medical Plan has already paid benefits for treatment of the injury, illness or other condition.

The Plan is subrogated to all of your and your dependents' rights against any party (including an insurance carrier) that is or may be liable for your and your dependents' injury, illness or other condition or for paying for treatment of the injury, illness or other condition. The Plan is subrogated to the extent of the amount of the benefits it pays to or on behalf of you or your dependents. The Plan may assert its subrogation right independently of you and your dependents.

You and your dependents are obligated to cooperate with the Plan and its agents in order to protect the Plan's subrogation rights. Cooperation means providing the Plan or its agents with any relevant information requested, signing and delivering any documents as the Plan or its agents reasonably request, obtaining the written consent of the Plan or its agents before releasing any party from liability, taking actions as the Plan or its agents reasonably request to assist the Plan in making a full recovery, and taking no action that may prejudice the Plan's rights.

44

# OTHER INFORMATION ABOUT YOUR EHP BENEFITS

If you or your dependents enter into litigation or settlement negotiations regarding the obligations of other parties, you and your dependents must not prejudice the Plan's subrogation rights in any way.

The Plan's legal costs in subrogation matters will be borne by the Plan. However, if you take any action to prevent the Plan from enforcing its subrogation rights, you will be liable to reimburse the Plan for any legal expenses that the Plan or its agents incur in enforcing the Plan's subrogation rights. You and your dependents' legal costs will be borne by you and your dependents.

## When Medical Coverage Ends

Your coverage under the Medical Plan will end on the earliest of the following dates:

- The end of the month in which you end your employment or are no longer an eligible employee because of a decrease in the number of hours worked;
- The date the Medical Plan is discontinued;
- The date when you report for active duty as a member of the armed forces of any country, unless you qualify to continue Medical Plan coverage under the Johns Hopkins University Military Leave Policy;
- The date on which you stop making the required contributions for coverage;

Coverage for a dependent will end on the earliest of the following dates:

- The date your coverage ends;
- The end of the month in which he/she no longer qualifies as an eligible dependent under the Plan as explained earlier in this SPD under **Who is Eligible**;
- The effective date of your election to drop dependent coverage;
- The date the Medical Plan is discontinued;
- The date on which you stop making contributions for your dependents; or
- The date on which your dependent enters military service.

For certain of the above events, you or your dependents may be able to continue coverage by self-payment under COBRA, as explained below. If you take an unpaid leave of absence from your employment (including a leave covered by the Family and Medical Leave Act (FMLA)), you must continue making your required contributions for Medical Plan coverage to remain in effect. If you do not make your required contributions, your Medical Plan coverage will end. If your leave is covered under FMLA, you may be allowed to resume coverage upon your return from leave.

## COBRA Continuation Coverage

45

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AvMed, Inc.; et al. | § CIVIL ACTION |
| | § |
| v. | § NO. 08-1633 |
| | § |
| US Bancorp; BrownGreer, PLC; and John Does | § SECTION L, MAG. 3 |
| | § |
| | § JUDGE FALLON |
| | § |
| | § MAGISTRATE JUDGE KNOWLES |
| | § |
| | § In Relation to:  MDL Docket No. 1657 |
| | § |
| | § In Re:  VIOXX |
| | § |
| | § PRODUCTS LIABILITY LITIGATION |

### AFFIDAVIT OF Cris Krisologo-Elliott

Comes the affiant, Cris Krisologo-Elliott, and under penalty of perjury do state the following:

1.     My name is Cris Krisologo-Elliott, and I am VP/Chief Marketing & Regulatory Officer at KPS Health Plans and have personal knowledge of the events described herein.

2.     KPS Health Plans is a health benefit plan which provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans.

3.     During the year 2007, KPS Health Plans provided health benefits to approximately 45,740[1] plan members, who participated in approximately 150 plans.

4.     These plans include small groups, large groups, and self-funded plans, many of which are governed by the Employee Retirement Security Act of 1974 (ERISA).

5.     Each of these approximately 150 plans has its own set of plan documents.

---

[1] AIS's Directory of Health Plans:  2008

6.     Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that KPS Health Plans employs relating to the plan's rights of subrogation and/or reimbursement.

7.     KPS Health Plans in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, exercises authority and control over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.     Further the Affiant Sayeth Naught.

Dated. _____6/16/08_____

_Cris Krisologo-Elliott_
Cris Krisologo-Elliott
VP/Chief Marketing & Regulatory Officer

# EXHIBIT A

# KPS HEALTH PLANS

## KPS's Right of Reimbursement and Subrogation

The benefits of this Plan will be available to you for injury or illness caused by another party, subject to the exclusions and limitations of this Plan. If KPS provides Plan benefits for the treatment of the injury or illness, KPS will be subrogated to any rights that you may have to recover compensation or damages related to the injury or illness. You and your representative(s) must cooperate fully with KPS in protecting, preserving, and recovering the amounts KPS has paid, or will pay, on your behalf under this Group Plan. If you obtain a settlement or award that includes the recovery of medical expenses paid by KPS as Plan benefits for your injury or illness, you agree to reimburse KPS for the full amount of benefits paid after you have been fully compensated for your loss, subject to the following additional agreements:

(a) You and/or your attorney or representative agree to provide KPS, in writing, the details of the injury or illness, the names and addresses of the party or parties believed to be responsible, and any insurer who may offer coverage, and any other information reasonably necessary to protect KPS's subrogation rights.

(b) You agree to inform the responsible third party(ies) and any insurer(s) and attorneys of the amount of the lien asserted by KPS for payments made on your behalf.

(c) You agree to submit the bills relating to your injuries or illness to any insurer who may offer coverage for them, including, but not limited to, medical payments coverage, personal injury protection (PIP), or other plans or contracts providing for a benefit or recovery.

(d) You agree to make a claim against, or otherwise pursue recovery from, all responsible parties and their insurers for all payments advanced to you or your medical care Providers by KPS, or to assign to KPS all of your rights to a recovery, authorize KPS to bring suit in your name, and to fully cooperate in the presentation of the claim(s).

(e) You agree to include in any claim or lawsuit on your behalf, against any other party or insurer, a claim for repayment of the Plan benefits paid, or to be paid, by KPS on your behalf.

(f) You agree to give KPS reasonable notice in advance of any settlement, mediation, arbitration, or trial relating to the injury or illness.

(g) You agree not to enter into any agreement with any responsible party(ies) or insurer(s), or do anything else that would in any way release KPS's lien or prejudice our subrogation or reimbursement rights, without first obtaining express prior written consent from KPS.

(h) You agree, if requested, to hold in trust and to execute a trust agreement in the full amount of the Plan benefits provided to you from any recovery until such time as a final determination or settlement has been reached regarding the amount that fully compensates you for your loss to protect the rights of KPS as described in this section.

When you have cooperated as set out above, and you are represented by an attorney, KPS agrees to reduce the amount of its subrogated interest in Plan benefits in consideration of your attorney's fees and costs, based on the services provided and recovery obtained. In no case will KPS pay a larger share of fees and costs, as a percentage of its recovery, than you pay as a percentage of your recovery.

### Collection and Reimbursement by Enrollee

If you obtain a settlement or award that includes payment for the medical expenses covered by KPS as Plan benefits, you agree to reimburse KPS for these benefits, unless the amount you recover fails to fully compensate you. KPS may recover its benefit payments from you only after you have been fully compensated. Whether or not you have been fully compensated will be determined objectively, based on the facts of your recovery.

### Underinsured or Uninsured Motorist Coverage

In addition to the agreements set out above, when you recover benefits under any automobile uninsured or underinsured motorist (UIM) coverage, KPS shall be entitled to reimbursement from your recovery for any amount that exceeds full compensation for your loss. By providing Plan benefits, KPS is not acting as a volunteer, and is not waiving any rights to reimbursement or subrogation. When you have cooperated as set out above, and you are represented by an attorney, KPS agrees to reduce the amount of its reimbursement or subrogation interest in consideration of your attorney's fees and costs, based on the services provided and recovery obtained. In no case will KPS pay a larger share of fees and costs, as a percentage of its recovery, than you pay as a percentage of your recovery.

### Cooperation

You and your representative(s) must deal in good faith with KPS and follow all of the conditions set forth in this section. In turn, KPS agrees to cooperate with you and your representative(s) in your effort to recover reimbursement and will advance payments on your behalf for injuries or medical conditions caused, or asserted by you to be caused, by any third party, subject to the limitations and exclusions of this Plan. Failure to cooperate may result in a delay or denial of otherwise eligible claims until the requested action or information is provided to KPS.

### Recovery of Claims Payments

#### Ineligible Persons

If KPS knowingly or unknowingly makes any payment on behalf of an individual who, for any reason, was not eligible to receive the services and benefits provided herein, KPS will be entitled to full reimbursement from such ineligible individual or from a Subscriber who applied for the ineligible benefits on behalf of such individual.

If KPS knowingly or unknowingly receives Premium payment on behalf of an individual who, for any reason, was not eligible to receive the services and benefits provided herein, KPS reserves the right to refund any Premium payment(s) in excess of claims paid for the time the individual was ineligible and shall have the right to recover the cost of any benefit furnished while such individual was improperly enrolled in this Group Plan.

NOTE: This section does not apply to services and benefits for which you or your Provider received prior authorization from KPS Health Plans.

#### Incorrect Claim Payment

KPS is entitled to full reimbursement from the payee for any incorrect claim payment. The term "incorrect claim payment" includes but is not limited to the following:

> ➤ Payment to the wrong Provider.
> ➤ Payment of an incorrect amount.
> ➤ Payment for a service that is not a Covered Benefit or Service.
> ➤ Duplicate payment for the same service.
> ➤ Payment on behalf of the wrong Enrollee.
> ➤ Incorrectly billed procedure or diagnosis.



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | CIVIL ACTION |
| | § | |
| v. | § | NO. 08-1633 |
| | § | |
| US Bancorp; BrownGreer, PLC; and John Does | § | SECTION L, MAG. 3 |
| | § | |
| | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |
| | § | |
| | § | In Relation to:  MDL Docket No. 1657 |
| | § | |
| | § | In Re:  VIOXX |
| | § | |
| | § | PRODUCTS LIABILITY LITIGATION |

## AFFIDAVIT OF BRIEN W. SHANAHAN

Comes the affiant, Brien W. Shanahan, and under penalty of perjury states the following:

1.     My name is Brien W. Shanahan, and I am Director of Legal Affairs at Medical Mutual of Ohio and the information in this affifavit is based on information known or available to Medical Mutual of Ohio ("Medical Mutual") and Medical Mutual Services, LLC ("MMS").

2.     Medical Mutual is a health insurance company that provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals on an insured basis.  MMS is a wholly-owned subsidiary of Medical Mutual that provides third party adminsitration services for medical and/or pharmacy benefits to self-funded employer sponsored group plans and governmental sponsored group plans.

3.     During the year 2007, Medical Mutual and MMS  administered health benefits for approximately 1.6 million members, who participate in approximately 31,000 group plans.

4.     The vast majority of these plans are governed by the Employee Retirement Income Security Act of 1974 (ERISA) and can be either fully insured or self funded.

5.     Each of these 31,000 group plans has its own set of plan documents.

6.     Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I have attached as Exhibit A a sample page from a MMS Health Care Certificate containing the Right of Subrogation and Reimbursement language MMS currently uses in situations where MMS is acting in an Administrative Services Only ("ASO") capacity for a self-funded plan; I have attached as Exhibit B a sample page from a Medical Mutual Health Care Certificate containing the Right of Subrogation and Reimbursement language Medical Mutual currently uses in situations where Medical Mutual is the insurer for a fully insured plan.  Certain self funded plans may have different subrogation provisions.

7.     Medical Mutual and MMS in their respective capacities as insurer or third party administrator for the self-funded and insured plans referenced herein, exercise authority and control over decisions regarding the recovery of plan assets in connection with plan payments for expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.     Further the Affiant Sayeth Naught.


Dated:  June 17, 2008

Brien W. Shanahan
Director of Legal Affiars
Medical Mutual of Ohio

# EXHIBIT A

## Right of Subrogation and Reimbursement

### Subrogation

The Plan reserves the right of subrogation. This means that, to the extent the Plan provides or pays benefits or expenses for Covered Services, the Plan assumes your legal rights to recover the value of those benefits or expenses from any person, entity, organization or insurer, including your own insurer and any under insured or uninsured coverage, that may be legally obligated to pay you for the value of those benefits or expenses. The amount of the Plan's subrogation rights shall equal the total amount paid by the Plan for the benefits or expenses for Covered Services. The Plan's right of subrogation shall have priority over yours or anyone else's rights until the Plan recovers the total amount the Plan paid for Covered Services. The Plan's right of subrogation for the total amount the Plan paid for Covered Services is absolute and applies whether or not you receive, or are entitled to receive, a full or partial recovery or whether or not you are "made whole" by reason of any recovery from any other person or entity. This provision is intended to and does reject and supersede the "make-whole" rule, which rule might otherwise require that you be "made whole" before the Plan may be entitled to assert its right of subrogation.

### Reimbursement

The Plan also reserves the right of reimbursement. This means that, to the extent the Plan provides or pays benefits or expenses for Covered Services, you must repay the Plan any amounts recovered by suit, claim, settlement or otherwise, from any third party or his insurer and any under insured or uninsured coverage, as well as from any other person, entity, organization or insurer, including your own insurer, from which you receive payments (even if such payments are not designated as payments of medical expenses). The amount of the Plan's reimbursement rights shall equal the total amount paid by the Plan for the benefits or expenses for Covered Services. The Plan's right of reimbursement shall have priority over yours or anyone else's rights until the Plan recovers the total amount the Plan paid for Covered Services. The Plan's right of reimbursement for the total amount the Plan paid for Covered Services is absolute and applies whether or not you receive, or are entitled to receive, a full or partial recovery or whether or not you are "made whole" by reason of any recovery from any other person or entity. This provision is intended to and does reject and supersede the "make whole" rule, which rule might otherwise require that you be "made whole" before the Plan may be entitled to assert its right of reimbursement.

### Your Duties

- You must provide the Plan or its designee any information requested by the Plan or its designee within five (5) days of the request.
- You must notify the Plan or its designee promptly of how, when and where an accident or incident resulting in personal injury to you occurred and all information regarding the parties involved.
- You must cooperate with the Plan or its designee in the investigation, settlement and protection of the Plan's rights.
- You must send the Plan or its designee copies of any police report, notices or other papers received in connection with the accident or incident resulting in personal injury to you.
- You must not settle or compromise any claims unless the Plan or its designee is notified in writing at least thirty (30) days before such settlement or compromise and the Plan or its designee agrees to it in writing.

### Discretionary Authority

%%Plan%% shall have discretionary authority to interpret and construct the terms and conditions of the Subrogation and Reimbursement provisions and make determination or construction which is not arbitrary and capricious. %%Plan%%'s determination will be final and conclusive.

Exhibit B (Fully-Insured)

**Subrogation**

%%Plan%% is subrogated to all your rights of recovery to the extent of the benefits it pays or provides for Covered Services for an illness or injury for which you may be entitled to recover payment from any other person. %%Plan%% is subrogated to any right you have to recover from the person who caused the illness or injury, that person's insurer or under any "Uninsured Motorist", "Underinsured Motorist", "Medical Payments", "No-Fault" or other similar coverage provisions. %%Plan%%'s right of subrogation applies with equal force to any and all state, federal or common law claims of survivors, wrongful death, consortium or other similar claims. However, %%Plan%%'s right of subrogation shall not exceed the amount of the benefits paid or to be paid in the future by %%Plan%%.

%%Plan%%'s subrogation right has first priority to any recovery and takes priority over the injured party, their attorney or any other person or entity with a claim, right or lien on the recovery. %%Plan%%'s subrogation right shall not be reduced for any attorney fees or costs incurred by you or any other party.

%%Plan%%'s right to subrogation will apply even if you have not been made whole, are not fully compensated or only partially recover for your loss.

**Reimbursement**

If you recover damages from any party or through any coverage named above, regardless of how you, your legal representative or any other party characterize the recovery, you must hold in trust for %%Plan%%, the whole proceeds of the recovery and must reimburse %%Plan%% to the extent of payments made within 14 days of its receipt. %%Plan%% has a constructive trust, equitable lien and other equitable rights on the entire fund of money recovered which can be asserted against any parties who may have possession of a portion or all of the fund.

%%Plan%%'s reimbursement right has first priority to any recovery and takes priority over the injured party, their attorney or any other person or entity with a claim, right or lien on the recovery. %%Plan%%'s reimbursement right shall not be reduced for any attorney fees or costs incurred by you or any other party. You will be responsible for payment of any expenses, including attorney fees and court costs, incurred by %%Plan%% to enforce its right of reimbursement.

Any other person or entity with a claim, right or lien on the recovery, %%Plan%%'s right to reimbursement will apply even if you have not been made whole, are not fully compensated or only partially recover for your loss.

**Your Duties**

You must provide %%Plan%% any information requested by %%Plan%% within five (5) days of the request.

You must notify %%Plan%% promptly of how, when and where an accident or incident resulting in personal injury to you occurred and all information regarding the parties involved.

You must cooperate with %%Plan%% in the investigation, settlement and protection of %%Plan%%'s rights.

You must send %%Plan%% copies of any police report, notices or other papers received in connection with the accident or incident resulting in personal injury to you.

You must not settle or compromise any claims unless %%Plan%% is notified, in writing, at least 30 days before such settlement or compromise and %%Plan%% agrees to it in writing.

**Discretionary Authority**

%%Plan%% shall have discretionary authority to interpret and construct the terms and conditions of the Subrogation and Reimbursement provisions and make determination or construction which is not arbitrary and capricious. %%Plan%%'s determination will be final and conclusive.

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | CIVIL ACTION |
| | § | |
| v. | § | NO. 08-1633 |
| | § | |
| US Bancorp; BrownGreer, PLC; and John Does | § | SECTION L, MAG. 3 |
| | § | |
| | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |
| | § | |
| | § | In Relation to:  MDL Docket No. 1657 |
| | § | |
| | § | In Re:  VIOXX |
| | § | |
| | § | PRODUCTS LIABILITY LITIGATION |

### AFFIDAVIT OF DANIEL E. SCHWANDT

Comes the affiant, Daniel E. Schwandt, and under penalty of perjury do state the following:

1.     My name is Daniel E. Schwandt, and I am Senior Vice President and General Counsel at Noridian Mutual Insurance Company and have personal knowledge of the events described herein.

2.     Noridian Mutual Insurance Company is a North Dakota non-profit mutual insurance company offering fully insured health plans, including medical and/or pharmacy benefits, to employer sponsored group plans, governmental sponsored group plans, individual plans, and offering claims administration services to self-funded health plans.

3.     During the year 2007, Noridian Mutual Insurance Company provided health benefits to approximately 439,908[1] plan members, who participate in approximately 5,358 plans.

---

[1] AIS's Directory of Health Plans:  2008

4.    The vast majority of these plans are self-funded plans and/or is governed by the Employee Retirement Security Act of 1974 (ERISA).

5.    Each of these 5,358 plans has its own set of plan documents.

6.    Because there are so many sets of plan documents, many of which are identical except for the name of the plan, attached hereto as Exhibit A is exemplar plan language used by Noridian Mutual Insurance Company and most of its self-funded groups relating to rights of subrogation and/or reimbursement.

7.    Noridian Mutual Insurance Company, in its capacity as administrator for its self-funded and insured plans referenced in Paragraph 3, has discretion over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members from Vioxx ingestion.

8.    Further the Affiant Sayeth Naught.

Dated.    6/17/08

Daniel E. Schwandt
Senior Vice President and General Counsel

# EXHIBIT A

# NORIDIAN MUTUAL INSURANCE COMPANY

7.4     **RIGHTS OF SUBROGATION, REIMBURSEMENT AND ASSIGNMENT**

If the Claims Administrator on behalf of the Group pays benefits for Covered Services to or for a Member for any injury or condition caused or contributed to by the act or omission of any third party, the Claims Administrator on behalf of the Group shall have certain rights of assignment, subrogation and/or reimbursement as set forth below. The Claims Administrator has full discretionary authority to determine whether to exercise any or all of said rights.

**A Member must notify the Claims Administrator of the circumstances of the injury or condition, cooperate with the Claims Administrator in doing whatever is necessary to enable the Claims Administrator to assert these rights, and do nothing to prejudice them. The rights stated herein apply automatically in any applicable situation. The Claims Administrator has no obligation to notify a Member of the Claims Administrator's intent to exercise one or more of these rights and the Claims Administrator's failure to provide such a notice shall not constitute a waiver of these rights.**

If a Member does not comply with these provisions or otherwise prejudices the rights of the Claims Administrator on behalf of the Group to assignment, subrogation or reimbursement, the Claims Administrator shall have full discretion to withhold payment of any future benefits to or for the Member and to off set the benefits already paid to or for the Member against the payment of any future benefits to or for the Member regardless of whether or not said future benefits are related to the injury or condition. The Claims Administrator shall have full discretion to interpret these provisions and to determine their application in each and every situation. Any decisions by the Claims Administrator regarding the application of the above provisions shall be final, conclusive and binding upon all parties.

A.   Right of Assignment and/or Subrogation: If a Member fails to bring a claim against a third party (including any person, firm or corporation which may be liable for or on behalf of the third party), the Claims Administrator on behalf of the Group has the right to bring said claim as the assignee and/or subrogee of the Member and to recover any benefits paid under this Benefit Plan.

B.   Right of Reimbursement: If a Member makes any recovery from a third party (including any person, firm or corporation which may be liable for or on behalf of the third party), whether by judgment, settlement or otherwise, the Member must notify the Claims Administrator of said recovery and must reimburse the Claims Administrator on behalf of the Group to the full extent of any benefits paid by the Claims Administrator, not to exceed the amount of the recovery. This right of reimbursement shall apply to any such recovery to the extent of any benefits paid under this Benefit Plan even if the Member has not received full compensation for the injury or condition. Any recovery the Member may obtain is conclusively presumed to be for the reimbursement of benefits paid by the Claims Administrator on behalf of the Group until the Claims Administrator has been fully reimbursed.

The Member agrees to not transfer any right to any recovery to a third party or otherwise attempt to avoid the rights of the Claims Administrator on behalf of the Group under this Benefit Plan. The Member agrees that any recovery shall be held in trust for the Claims Administrator on behalf of the Group until the Claims Administrator on behalf of the Group has been fully reimbursed and/or that the Claims Administrator on behalf of the Group shall have a lien on any recovery to the full extent of any benefits paid under this Benefit Plan. The Member agrees that to enforce its rights under this section, the Claims Administrator on behalf of the Group may pursue any and all remedies, legal or equitable, available under state or federal law, including subrogation, breach of contract, constructive trust, equitable lien, injunction, restitution and any other remedies.

7.4     **RIGHTS OF SUBROGATION, REIMBURSEMENT AND ASSIGNMENT**

If BCBSND pays benefits for Covered Services to or for a Member for any injury or condition caused or contributed to by the act or omission of any third party, BCBSND shall have certain rights of assignment, subrogation and/or reimbursement as set forth below. BCBSND has full discretionary authority to determine whether to exercise any or all of said rights.

**A Member must notify BCBSND of the circumstances of the injury or condition, cooperate with BCBSND in doing whatever is necessary to enable BCBSND to assert these rights, and do nothing to prejudice them. The rights stated herein apply automatically in any applicable situation. BCBSND has no obligation to notify a Member of BCBSND's intent to exercise one or more of these rights and BCBSND's failure to provide such a notice shall not constitute a waiver of these rights.**

If a Member does not comply with these provisions or otherwise prejudices the rights of BCBSND to assignment, subrogation or reimbursement, BCBSND shall have full discretion to withhold payment of any future benefits to or for the Member and to off set the benefits already paid to or for the Member against the payment of any future benefits to or for the Member regardless of whether or not said future benefits are related to the injury or condition.

A.   <u>Right of Assignment and/or Subrogation</u>: If a Member fails to bring a claim against a third party (including any person, firm or corporation which may be liable for or on behalf of the third party), BCBSND has the right to bring said claim as the assignee and/or subrogee of the Member and to recover any benefits paid under this Benefit Plan.

B.   <u>Right of Reimbursement</u>: If a Member makes any recovery from a third party (including any person, firm or corporation which may be liable for or on behalf of the third party), whether by judgment, settlement or otherwise, the Member must notify BCBSND of said recovery and must reimburse BCBSND to the full extent of any benefits paid by BCBSND, not to exceed the amount of the recovery. This right of reimbursement shall apply to any such recovery to the extent of any benefits paid under this Benefit Plan even if the Member has not received full compensation for the injury or condition. Any recovery the Member may obtain is conclusively presumed to be for the reimbursement of benefits paid by BCBSND until BCBSND has been fully reimbursed.

The Member agrees to not transfer any right to any recovery to a third party or otherwise attempt to avoid BCBSND's rights under this Benefit Plan. The Member agrees that any recovery shall be held in trust for BCBSND until BCBSND has been fully reimbursed and/or that BCBSND shall have a lien on any recovery to the full extent of any benefits paid under this Benefit Plan. The Member agrees that to enforce its rights under this section, BCBSND may pursue any and all remedies, legal or equitable, available under state or federal law, including subrogation, breach of contract, constructive trust, equitable lien, injunction, restitution and any other remedies.

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | CIVIL ACTION |
| | § | |
| v. | § | NO. 08-1633 |
| | § | |
| US Bancorp; BrownGreer, PLC; and John | § | SECTION L, MAG. 3 |
| Does | § | |
| | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |
| | § | |
| | § | In Relation to:  MDL Docket No. 1657 |
| | § | |
| | § | In Re:  VIOXX |
| | § | |
| | § | PRODUCTS LIABILITY LITIGATION |

### AFFIDAVIT OF FRANK SWART

Comes the affiant, Frank Swart, and under penalty of perjury states the following:

1.      My name is Frank Swart, and I am the Director of Financial Planning and Analysis at Premera Blue Cross and have personal knowledge of the events described herein.

2.      Premera Blue Cross is a health care services contractor which provides medical and/or pharmacy benefits to employer sponsored group plans, governmental sponsored group plans, and individuals, including fully self-funded plans.

3.      As of May 2008, Premera Blue Cross had 1,452,674 plan members.

4.      The majority of group plans are self-funded plans, and/or are governed by the Employee Retirement Income Security Act of 1974 (ERISA).

5.      Premera Blue Cross has approximately 24,700 group plans, which have their own set of plan documents.

6. Because there are so many sets of plan documents, many of which are identical except for the name of the plan, I attach here as Exhibit A exemplar plan language that Premera Blue Cross employs relating to the plan's rights of subrogation and/or reimbursement.

7. Premera Blue Cross in its capacity as administrator for self-funded and insured plans generally exercises certain authority and control pursuant to the terms of group contracts over decisions regarding the recovery of plan assets in connection with plan payments for medical expenses arising out of the alleged injuries to plan members.

8. Further the Affiant Sayeth Naught.

Dated. _6/18/08_

_____
Frank Swart
Director of Financial Planning and Analysis

# EXHIBIT A

# PREMERA BLUE CROSS

## WHAT'S NOT COVERED? (continued)

### Services And Supplies Furnished By Providers That Are Not Part Of Our Provider Network

Services and supplies furnished by providers that are not part of our provider network. However, this exclusion doesn't apply to certain covered services, supplies and providers (please see "Other Providers" under "How Does Selecting A Provider Affect My Benefits?") and "Benefit Level Exceptions For Non-Emergent Care."

### Sexual Dysfunction

Diagnosis and treatment of sexual dysfunctions, regardless of origin or cause; surgical, medical or psychological treatment of impotence or frigidity, including penile or other implants; and, any direct or indirect complications and aftereffects thereof.

### Skilled Nursing Facility Coverage Exceptions

- Custodial care
- Care that is primarily for senile deterioration, mental deficiency or retardation or the treatment of chemical dependency

### Transplant Coverage Exceptions

Organ, bone marrow and stem cell transplants, including any direct or indirect complications and after effects thereof, except as specifically stated

- Services or supplies that are payable by any government or charitable grant.  This includes services performed on potential or actual living donors and recipients, and on cadavers
- Donor costs for a solid organ transplant, or bone marrow or stem cell reinfusion not specified as covered
- Donor costs for which benefits are available under other group or individual coverage
- Non-human or mechanical organs, unless we determine they are not "experimental/investigational services" (please see the "Definitions" section in this booklet)

### Vision Exams

Routine vision exams to test visual acuity and/or to prescribe any type of vision hardware

### Vision Hardware

- Vision hardware (and their fittings) used to improve visual sharpness, including eyeglasses and contact lenses, including related supplies
- Non-prescription eyeglasses or contact lenses, or other special purpose vision aids (such as magnifying attachments), sunglasses or light-sensitive lenses, even if prescribed

### Vision Therapy

Vision therapy, eye exercise, or any sort of training to correct muscular imbalance of the eye (orthoptics), and pleoptics.  Also not covered are treatment or surgeries to improve the refractive character of the cornea, including the treatment of complications.

# WHAT IF I HAVE OTHER COVERAGE?

## COORDINATING BENEFITS WITH OTHER HEALTH CARE PLANS

You also may be covered under one or more other group or individual plans, such as one sponsored by your spouse's employer. Because all of the benefits of this plan are subject to coordination of benefits, this plan includes a "coordination of benefits" feature to handle such situations.  We'll coordinate the benefits of this plan with those of your other plans to make certain that, in each calendar year, the total payments from all medical plans are not more than the total allowable medical expenses."  In order to process your claim in these instances, Premera Blue Cross requires that you send us a copy of the EOB from your primary insurance carrier along with your claim.

### Definitions Applicable To Coordination Of Benefits

To understand coordination of benefits, it's important to know the meanings of the following terms:

- **Allowable Medical Expense** means the usual, customary and reasonable charge for any medically necessary health care service or supply provided by a licensed medical professional when the service or supply is covered at least in part under any of the medical plans involved.  When a plan provides benefits in the form of services or supplies rather than cash payments, the reasonable cash value of each service rendered or supply provided shall be considered an allowable expense.

- **Claim Determination Period** means a calendar year.

- **Medical Plan** means all of the following health care coverages, even if they do not have their own coordination provisions:

  - Group, individual or blanket disability insurance policies and health care service contractor and health maintenance organization group or individual agreements issued by insurers, health care service contractors, and health maintenance

organizations
- Labor-management trusteed plans, labor organization plans, employer organization plans or employee benefit organization plans
- Government programs that provide benefits for their own civilian employees or their dependents
- Group coverage required or provided by any law, including Medicare. This doesn't include workers' compensation
- Group student coverage that's sponsored by a school or other educational institution and includes medical benefits for illness or disease

Each contract or other arrangement for coverage described above is a separate plan.

**Effect On Benefits**

An important part of coordinating benefits is determining the order in which the plans provide benefits. One plan is responsible for providing benefits first. This is called the "primary" plan. The primary plan provides its full benefits as if there were no other plans involved. The other plans then become "secondary." This means they reduce their payment amounts so that the total benefits from all medical plans are not more than the allowable medical expenses. Coordination of benefits always considers amounts that **would** be payable under the other plan, whether or not a claim has actually been filed.

Here is the order in which the plans should provide benefits:

**First:** A plan that doesn't provide for coordination of benefits.

**Next:** A plan that covers you as other than a dependent.

**Next:** A plan that covers you as a dependent. For dependent children, the following rules apply:

When the Parents **Are not** Separated or Divorced: The plan of the parent whose birthday falls earlier in the year will be primary, if that's in accord with the coordination of benefits provisions of both plans. Otherwise, the rule set forth in the plan that doesn't have this provision shall determine the order of benefits.

When the Parents **Are** Separated or Divorced: If a court decree makes one parent responsible for paying the child's health care costs, that parent's plan will be primary. Otherwise, the plan of the parent with custody will be primary, followed by the plan of the spouse of the parent with custody,

followed by the plan of the parent who doesn't have custody.

If the rules above do not apply, the plan that has covered you for the longest time will be primary, except that benefits of a plan that covers you as a laid-off or retired employee, or as the dependent of such an employee, shall be determined after the benefits of any plan that covers you as other than a laid-off or retired employee, or as the dependent of such an employee. However, this applies only when other plans involved have this provision regarding laid-off or retired employees.

If none of the rules above determine the order of benefits, the plan that's covered the employee or subscriber for the longest time will be primary.

Any amount by which a secondary plan's benefits have been reduced in accord with this section shall be used by the secondary plan to pay your allowable medical expenses not otherwise paid, and such reduced amount shall be charged against the applicable plan's benefit limit. However, you must have incurred these expenses during the claim determination period. As each claim is submitted, the secondary plan determines its obligation to pay for allowable medical expenses based on all claims that were submitted up to that time during the claim determination period.

**Right Of Recovery/Facility Of Payment**

We have the right to recover any payments we make that are greater than those required by the coordination of benefits provisions from one or more of the following: the persons we paid or for whom we have paid, providers of service, insurance companies, service plans or other organizations. If a payment that should have been made under this plan was made by another plan, we also have the right to pay directly to another plan any amount that should have been paid by us. Our payment will be considered a benefit under this plan and will meet our obligations to the extent of that payment.

**Coordinating Benefits With Medicare**

If you're also covered under Medicare, federal law may require this plan to be primary over Medicare.

When this plan isn't primary, we'll coordinate benefits with Medicare.

**THIRD-PARTY LIABILITY (SUBROGATION)**

If we make claims payment on your behalf for injury or illness for which another party is liable, or for

### WHAT IF I HAVE OTHER COVERAGE? (continued)

which uninsured/underinsured motorist (UIM) or personal injury protection (PIP) insurance exists, we may be entitled to be repaid for those payments out of any recovery from that liable party.  The liable party is also known as the "third party" because it's a party other than you or us.  "Subrogation" means that we may collect directly from that third party to the extent we've paid on your behalf for illness or injury caused by the third party.  Because we've paid for your illness or injuries, we may be entitled to recover for those expenses.

To the fullest extent permitted by law, we're entitled to the proceeds of any settlement or judgment that results in a recovery from a third party, up to the amount of benefits paid by us for the condition.  In recovering benefits provided, we may at our election either hire our own attorney or be represented by your attorney.  If we choose to be represented by your attorney, we'll pay, on a contingent basis, a reasonable portion of the attorney fees which are necessary for asserting our right of recovery in the case.  This portion usually won't be more than 20% of the amount we seek to recover.  We won't pay for any legal costs incurred by you or on your behalf, and you won't be required to pay any portion of the costs incurred by us or on our behalf.

Before accepting any settlement on your claim against a third party, you must notify us in writing of any terms or conditions offered in a settlement, and you must notify the third party of our interest in the settlement established by this provision.  You also must cooperate with us in recovering amounts paid by us on your behalf.  If you retain an attorney or other agent to represent you in the matter, you must require your attorney or agent to reimburse us directly from the settlement or recovery.

To the maximum extent permitted by law, we're "subrogated" to your rights against any third party who is responsible for the condition, meaning that we have the right to sue any such third party in your name, and have a security interest in, and lien upon, any recovery to the extent of the amount of benefits paid by us and for our expenses in obtaining a recovery.  We also may assert our right to recover benefits directly from the third party.

### UNINSURED AND UNDERINSURED MOTORIST COVERAGE

We have the right to be reimbursed for benefits provided, but only to the extent that benefits are also paid for such services and supplies under the terms of a motor vehicle uninsured motorist and/or underinsured motorist (UIM) policy or similar type of insurance or contract.

The amount of reimbursement that we're entitled to receive under this provision is the amount in excess of the amount you receive from all insurance sources that fully compensate you for damages arising from the injury for which such benefits have been paid.

# WHO IS ELIGIBLE FOR COVERAGE?

This section of your booklet describes who is eligible for coverage.

### SUBSCRIBER ELIGIBILITY

You are eligible to be covered by this plan if you are an employee and on the payroll of Weyerhaeuser Company or a participating company as described below:

- A non-union hourly production employee employed on a full-time basis.
- A member of a union that has agreed to provide this plan under their labor contract and who meets the benefits eligibility requirements as defined by the labor contract.

Temporary employees are not eligible for coverage under the plan regardless of the number of hours worked.

### DEPENDENT ELIGIBILITY

As an employee enrolling in this plan, you may also provide coverage to certain dependents provided the rules described in the chart below are satisfied.