UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:   VIOXX PRODUCTS LIABILITY LITIGATION | : : : |
| _____ This document relates to: AvMed, Inc.; et al. v. U.S. Bancorp; BrownGreer, PLC; and John Does Case No. 08-1633 _____ | : : : : : : : : : : : : : : : : |

MDL 1657
SECTION L
HONORABLE ELDON FALLON
MAGISTRATE KNOWLES

**THE PLAINTIFF'S STEERING COMMITTEE'S AND
THE NEGOTIATING PLAINTIFF'S COUNSEL'S,
EACH  AS AMICUS CURIAE, MEMORANDUM OF LAW
IN OPPOSITION  TO THE MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.       INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC") and the Negotiating Plaintiffs' Counsel ("NPC") submit this memorandum of law as amicus curiae in the matter brought by AvMed, Inc., et al. ("AvMed") against U.S. Bancorp and BrownGreer, PLC and other non-specified John Doe defendants.  The PSC represents the common benefit interests of all of the underlying plaintiffs in MDL 1657 that are referred to by AvMed as "Vioxx Claimants."  The NPC was responsible for negotiating the Settlement Agreement with Merck & Co. Inc. that is the subject of AvMed's Complaint and motion for preliminary injunction.  Both the PSC and NPC have an interest in presenting an amicus position either directly or indirectly on behalf of the Vioxx Claimants, as their

1

clients or their actions are being challenged by AvMed. To the extent that any of the requested injunctive relief is afforded, such relief could negatively impact on the PSC, NPC and the Vioxx Claimants, which generates our standing to present this opposition.

Vioxx litigation has been ongoing for the better part of this decade. Even before the time this MDL was initiated, litigation by personal injury plaintiffs against Merck had been waged across the country. News coverage of Vioxx litigation was widespread and crescendoed with the November 9, 2007 announcement of the NPC's Settlement Agreement with Merck. AvMed and its constituents were never heard from and apparently inactive during all this time. Only months after the settlement was announced, on April 14, 2008, did AvMed initiate this action on behalf of itself and other purported non-governmental sponsors and administrators of ERISA Health Benefit Plans ("HBPs") as well as carriers of health insurance for fully insured health plans (collectively the "Plans"). Complaint ¶2. The instant defendants responded to that complaint by filing a motion to sever, which motion is still pending.[1] On June 9, 2008, AvMed filed a motion for temporary restraining order and preliminary injunction. This Court set an immediate hearing on the Temporary Restraining Order on June 11, 2008, at which time it denied AvMed's request for a TRO. By Minute Entry of the same date, the Court set a briefing schedule and hearing date on the outstanding motion for preliminary injunction. *In re Vioxx Products Liability Litigation (AvMed Inc., v. U.S. Bancorp Inc.)*, MDL No. 1657 (E.D.La. June 11, 2008). The Preliminary Injunction motion necessarily implicates the PSC and NPC as it challenges the provisions of the Settlement Agreement

---

[1] Defendants' Motion to Sever relates the infirmities presented by AvMed's Complaint that carry over into this motion for preliminary injunction. The Complaint improperly presents claims of multiple, "unrelated plaintiffs" in violation of PTO No. 26. The unrelated nature of the plaintiffs is reflected in the differences between the policies of each Plan, some of which AvMed concedes are not even covered by ERISA. *See* AvMed Brf. at 7.

and seeks to delay the distribution of funds from the Settlement Agreement so that AvMed can obtain the personal and confidential information of all the Vioxx claimants in the Settlement Agreement.

In its overbroad and draconian motion, AvMed requests (1) that the Court stay the distribution of all settlement funds intended for all Vioxx claimants without limitation to their status as insureds by any of AvMed's Plans; and (2) order the production of highly confidential information concerning each and every Vioxx personal injury claimant, trampling on their rights and privacy. AvMed requests that the distributions be stayed until the Plans have had the opportunity to review the confidential information concerning each and every claimant and to determine whether a reimbursement right even exists.[2] All this is requested even though AvMed concedes that approximately two-thirds of the Vioxx claimants are not within the purview of any of the Plans. *See* AvMed Brf. at 2. AvMed contends that such an order is necessary for the Plans to preserve their ability to assert equitable reimbursement claims against Vioxx claimants. AvMed is disingenuous and incorrect.

Production of highly confidential, personal information regarding each and every Vioxx

---

[2]Since the Settlement Agreement includes a detailed provision concerning statutory liens, *see* Settlement Agreement at §12.1, AvMed contends that the Court should confect for it a procedure similar to the treatment of statutory liens under the Settlement Agreement. The PSC and NPC disagree with AvMed's attempt to obtain judicial reformation of the private settlement agreement. This is especially objectionable since AvMed's proposal would shift costs properly borne by the Plans to the Claims Administrator. Nor is such a procedure appropriate since the Medicare Secondary Payor Act's statutory liens are not available to the Plans. Additionally, there is no predominating common contractual language used by the Plans, making uniform treatment of the Plans impossible. Finally, the NPC protected AvMed's rights in the Settlement Agreement. In fact, the Settlement Agreement appropriately maintains the responsibility for resolving the type of liens asserted by AvMed with the individual claimants and their attorneys. *Id.*, §12.1.3.

claimant that is participating in the settlement is not an appropriate method for the Plans to obtain discovery of the identity of claimants that may be subject to equitable lien reimbursement claims. Such relief eviscerates the privacy interest of the Vioxx claimants. This is especially so with regards to those Vioxx claimants that are not related to any of the Plans. Even as to those Vioxx Claimant that may be related to a Plan, AvMed still has the burden to show that its insured suffered a Vioxx-related injury that would justify an equitable restitution claim. Moreover, notwithstanding AvMed's arguments to the contrary, there are other obvious, less intrusive methods that can be used to uncover the identities of Vioxx claimants who may be subject to equitable reimbursement claims. These methods could be implemented in lieu of AvMed's overbroad proposal that the Court order the production of highly confidential information concerning each and every Vioxx personal injury claimant.

Finally, AvMed contends there will be minimal harm to Vioxx Claimants by virtue of the delay created by its proposed injunction. What chutzpah!³ Many Vioxx Claimants are already experiencing financial hardships and desperately require immediate access to their settlement proceeds to compensate them for injuries they suffered many years ago and allow them to make ends meet.

AvMed's fishing expedition must yield to the needs of the Vioxx Claimants. AvMed's bonafides are suspect. AvMed seeks to coerce a lump-sum settlement from the aggregate of individuals participating in the private settlement negotiated with Merck. Threatening to delay distributions that are contractually due to all of the Vioxx claimants (two-thirds of which it concedes

---

³Our vernacular Yiddish definition of chutzpah is a son who kills his parents and then pleads for mercy claiming that he is an orphan.

have no relationship to any of its Plans), AvMed proposes an *in terrorem* injunction to achieve its objective. Rather than have its lawyers labor properly to achieve its goals, AvMed proposes an easy way out and its contingent fee-motivated protocol reflects its abusive loafing. *Accord In re Vioxx Products Liability Litigation*, 2008 WL 1995098, *5 (E.D.La. May 6, 2008)("Perhaps HRI hopes that the threat of hav[ing] to provide this information will encourage the PSC and/or Merck to settle their alleged claims on some favorable [basis].")[hereinafter "HRI"]; *In re Vioxx Litigation, Case No. 619*, ATL-L-590-08, Transcript at 45 (N.J.Super. Atlantic Cty. March 14, 2008)(Higbee, J.)("[T]he Court does not provide you lists of people who've settled their cases so that insurance companies can go to them before they get their checks. That's not the way its done. And it's only because it's a pool of money that I think people, you know, vultures tend to circle around.").[4] AvMed and its constituents seek to avoid their contractual obligations by appropriately dealing with the individual issues presented by the Vioxx Settlement Agreement on a plan-by-plan, insurance policy by insurance policy and client-by-client basis, which justifies not only denying the instant motion but also exemplifies the need to grant defendants' motion to sever.

**II.   ARGUMENT**

    **A.   AVMED'S ATTEMPT TO OBTAIN MEDICAL INFORMATION REGARDING EVERY VIOXX CLAIMANT VIOLATES THE SUBSTANTIVE DUE PROCESS PRIVACY RIGHTS OF THE CLAIMANTS**

Substantively, the Due Process clause of the United States Constitution "embodies a promise that a certain private sphere of individual liberty will be kept largely beyond the reach of the Government." *Thornburgh v. American College of Obstetricians and Gynecologists*, 476 U.S. 747, 772 (1986). This constitutional right to privacy extends to "the individual interest in avoiding

---

[4] A copy of the complete transcript is attached hereto as Exhibit "A".

disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977); *Fudjo v. Coon,* 633 F.2d 1172, 1175 (5th Cir. 1981).

Medical information and records of a patient are clearly within this constitutionally-protected sphere. *Whalen*, 429 U.S. at 598; *Sherman v. United States*, 244 F. 3d 357, 365 (5th Cir. 2001) ("an individual's informational privacy interest in his or her SSN is substantial."); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("although the full measure of the constitutional protection of the right to privacy has not yet been delineated,...[t]here can be no question that an employee's medical records...are well within the ambit of materials entitled to privacy protection").

AvMed requests that the Court order the disclosure of the names, Social Security numbers and other personal identity information of all Vioxx Claimants. This disclosure, if permitted, would necessarily reveal sensitive, personal medical information that is subject to Constitutional protection.

The Settlement Agreement does not require that Vioxx Claimants waive their presumptive expectation that this information will continue to receive protection against compelled disclosures. Indeed, the Settlement Agreement requires that the parties maintain the information as confidential and does not authorize its disclosure except in limited, unrelated circumstances. *See* Settlement Agreement § 15.1. Thus, the personal medical information (including their SSNs) of Vioxx Claimants requested by AvMed is within the realm of privacy protected by the Constitution and may not be disclosed to AvMed unless there is a compelling interest in such disclosure. *See Sherman, supra*. *See also* The Health Insurance Portability and Accountability Act (HIPAA), Pub.L. 104-91, 110 Stat. 1936 (Aug. 21, 1996) and 45 CFR §164.508.

While certain Plans might arguably have an interest in claims information relating to specific

Vioxx claimants to support a potential claim for reimbursement of the cost of medical treatment where it has furnished such treatment to such specific individuals, AvMed clearly has no such interest with respect to claimants that did not receive such benefits or where Plans do not provide that right.  The motion for preliminary injunction suggests that a mere one-third of the Vioxx Settlement Claimants are insureds subject to such Plans.  *See* AvMed Brf. at 2.  There is simply no need - let alone a "compelling" one - for the Plans to invade the privacy interests of the majority of Vioxx Claimants to obtain the information AvMed would like to obtain to protect its supposed claims against the minority of Vioxx claimants that may have received treatment by or through the policies of the Plans.

AvMed's efforts to invade the privacy rights of all Vioxx Claimants should be rejected since, for the most part, the Plans can use publically available information to identify claimants that may be subject to equitable reimbursement claims.  *See* section (II)(B), *infra* (discussing alternatives to ordering the production of highly confidential information concerning each and every Vioxx Claimant).

Accordingly, whether viewed as a matter of constitutional proscription, statute or as a matter of contract, AvMed simply does not have a right to require that the instant defendants produce a list of the persons who have made claims in the settlement.

B. **AVMED IGNORES THE PROSPECT OF LESS INTRUSIVE METHODS FOR IDENTIFYING HEALTH CARE BENEFICIARIES THAT COULD BE SUBJECT TO EQUITABLE REIMBURSEMENT CLAIMS**

AvMed contends it has been unable to identify claimants that may be subject to equitable reimbursement claims. Even though it has purportedly cross-referenced the names of 22,685 claimants against internal healthcare records of benefit recipients, AvMed has failed to demonstrate that adequate measures were undertaken to identify individuals that may be subject to equitable reimbursement actions.

For instance, AvMed identifies four instances where the names of individual claimants listed on the MDL docket match the names of one or more healthcare recipient that may be subject to a lien claim. AvMed Brf. at 10. Despite identifying four instances where there are multiple healthcare claimants sharing the same name as Vioxx claimants, AvMed fails to indicate whether it has even attempted to notify counsel representing those few claimants that their recoveries may be subject to a lien. Rather than do the work necessary and required by AvMed to enforce its purported Plan provisions, AvMed seeks an order compelling the production of highly confidential information concerning each and every Vioxx claimant. Mere expediency and cost avoidance do not justify the overbroad invasion of privacy interests being sought by AvMed. *See HRI*, 2008 WL 1995098 at *6 ("Moreover, to place the burden and expense of producing this information on either the PSC or Merck rather than on HRI itself is improper and would be prejudicial.").

Indeed, rather than ordering the production of confidential information concerning Vioxx users, the Court could direct that only the Plans subject to reimbursement identify all Vioxx claimants that may be subject to a claim of equitable reimbursement and send the names to BrownGreer. BrownGreer, at plaintiffs' cost, could then identify for AvMed the attorneys of the

purported affected claimants. The instant plaintiffs could then draft correspondences to those attorneys notifying them of AvMed's potential claim against the affected Vioxx Claimant. In these correspondences, the Plans should be required to provide counsel with a list of all plan members (with social security numbers and other identifying information) who share the same name as the claimant, were prescribed Vioxx and appear to have suffered an injury that has been associated with Vioxx. If there is a match, counsel representing the Vioxx claimant will be obliged to work with the Plan(s) for purposes of resolving all lien claims. Obviously Vioxx related charges are readily apparent in the plaintiffs' records. This procedure will protect the rights of tens of thousands of claimants not subject to reimbursement.

To the extent there are claimants that cannot be identified in the above manner, the Plans have the further option of producing a database of all their plan participants and paying the Claims Administrator to cross reference this database against the Claims Administrators' database. If AvMed can later prove that each of its constituents plans indeed have enforceable plan provisions, the Claim Administrator could then provide information confirming the match. Such a production should be produced in a searchable format that includes social security numbers and other identifying information.

### C. WHEREAS AVMED WILL NOT BE HARMED SHOULD THE COURT DENY ITS STAY MOTION, CLAIMANTS WILL SUFFER IRREPARABLE INJURY IF THE MOTION IS GRANTED

AvMed's contention that it will be harmed in the absence of a stay is flawed for several reasons. First, no distributions are anticipated before August. This gives the Plans ample time to identify claimants that may be subject to equitable reimbursement claims by implementing one or more of the methods discussed in section (II)(B) above. Second, even if there are distributions,

some of the Plans are not governed by ERISA. *See* AvMed Brf. at 7. In those instances, the Plans can assert claims in the same manner as any other general lien creditor. Accordingly, AvMed's claim of irreparable injury has been greatly exaggerated.

Finally, of the Interim Settlement Payments contemplated to occur in August, only 40% of the estimated Final Settlement Payment will be distributed. *See* Settlement Agreement §4.1. The 60% hold-back should be more than sufficient to address any potential claims asserted by AvMed, thus refuting any irreparable harm argument made by AvMed.

In stark contrast, the PSC and NPC are aware that Vioxx Settlement Claimants will suffer irreparable injury should the Court grant the relief requested by AvMed. First, as noted above, claimants will find themselves subject to a major invasion of their privacy rights should the Court order the production of highly confidential personal information. Second, Vioxx claimants are experiencing financial hardships and will be severally prejudiced by any delay in their recovery of settlement proceeds. For instance, although AvMed cavalierly devotes just half a page to its discussion of the potential prejudice that claimants who are unaffiliated with any of the Plans will suffer should there recoveries be delayed by AvMed's efforts, AvMed Brf. at 19, such claimants could be irreparably injured if the Court grants this motion. Many of the claimants in this litigation suffered Vioxx injuries at or about the time Vioxx was launched in September 1999. These claimants include widows and widowers that have lost a primary income earner, as well as claimants that have suffered debilitating injuries that prevent them from working.

One example of a claimant in dire need of the Vioxx settlement proceeds to which he may be entitled is Jon Feezel. Mr. Feezel suffered a Vioxx induced heart attack on February 4, 2004, has been unable to return to work since suffering the heart attack, is currently receiving Social Security

10

Disability benefits, and has outstanding bills of $280,000.00. *See* Affidavit of Jon Feezel at ¶¶ 1 and 5, attached hereto as Exhibit "B". As a result of the various financial hardships he is currently experiencing, Mr. Feezel has attested that he has been forced to "accept some very high interest loans in order to keep my heat, electricity and telephone service." *Id*. at ¶ 5. Although none of the Plans would be in a position to assert an equitable lien action against Mr. Feezel since he "did not have insurance" at the time of his Vioxx induced heart attack, *Id*., Mr. Feezel will be prevented from receiving the relief he desperately requires should the Court grant AvMed's motion for a preliminary injunction.

Another example of a claimant that is in desperate need of the Vioxx settlement proceeds is Cheryl Pennington. Mrs. Pennington lost her husband, Dennis, to a Vioxx induced heart attack on March 25, 2002. *See* Affidavit of Cheryl Pennington at ¶¶ 1 and 2, attached hereto as Exhibit "C". Since losing the "sole supporter of the family", Mrs. Pennington has "struggled ... with the amount of money ... [she] receives on a monthly basis" while raising two minor children, John and Jesse, who suffer from serious medical conditions. *Id*. at ¶ 5. Again, although Mrs. Pennington is unaware "of the existence of any claims of any private insurers", *Id*. at ¶ 6, should the Court grant AvMed's motion, Mrs. Pennington and her family will continue to struggle financially.

One final example of a claimant that will be unduly prejudiced by the granting of AvMed's motion is James Clouse. Mr. Clouse suffered a Vioxx induced heart attack on or about April 23, 2004. *See* Affidavit of James Clouse at ¶¶ 1 and 2, attached hereto as Exhibit "D". Mr. Clouse has been unable to pay the significant medical bills he incurred as a result of his heart attack. *Id*. at ¶ 5. As a result of his inability to pay these medical bills, Mr. Clouse has attested that he lost his truck, lost his house and lost a home that he inherited from his parents. *Id*. Mr. Clouse is currently

on Social Security Disability, is living in subsidized housing and has "less than $200.00 in ... [his] checking account." *Id*. Although none of the Plans could possibly be in a position to assert an equitable lien action against Mr. Clouse since he "did not have insurance" at the time of his Vioxx induced heart attack, *Id.*, Mr. Clouse will be prevented from receiving the relief he desperately requires should the Court grant AvMed's motion for a preliminary injunction.

Claimants like Mr. Feezel, Mrs. Pennington and Mr. Clouse have and will continue to suffer financial hardships that may only be ameliorated upon receipt of the distributions they are entitled to under the Settlement Agreement. For claimants such as these who are unaffiliated with the Plans (approximately two-thirds of the Vioxx claimants according to AvMed), there is no justification for further delay while AvMed undertakes a fishing expedition.

### D. THE MAXIMUM BOND ASSESSABLE SHOULD BE IMPOSED

The above testimonials bear witness to the extreme hardships additional delays will impose upon Vioxx claimants. Even AvMed acknowledges that Vioxx claimants will be harmed by the issuance of a preliminary injunction. AvMed Brf. at 19.[5] Against these facts, AvMed contends that this Court should waive the mandate of Fed.R.Civ.P. 65(c), that conditions the issuance of a preliminary injunction upon the posting of a bond, on the grounds that the instant defendants will not be harmed. Such misdirection should be disregarded. It is well recognized that indispensable parties to a contract whose terms are subject to injunctive relief are to be considered parties for purposes of Rule 65. *See Dawavendewa v. Salt River Project Agricultural Power Dist.*, 276 F.3d 1150, 1155-56 (9th Cir. 2002); *B. Fernandez and Hnos, Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545

---

[5]AvMed claims that the uncontroverted harm that will befall Vioxx claims is outweighed by the speculative harm it envisions for itself. AvMed's argument lacks even facial credulity.

(1st Cir. 2006).  *See also Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371, 373-74 (1945)(Where government was the real party in interest, the government was an indispensable party for purposes of injunctive relief).  Vioxx Claimants are therefore indispensable parties to this proceeding.  Accordingly, an appropriate bond should be imposed in "an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined."  Fed.R.Civ.P. 65(c).

This Court has previously recognized how extraordinary the remedy of a preliminary injunction is.  *Citizens Savings Bank v. GLI Technical Services, Inc.*, 1996 WL 737008, *3 (E.D.La. Dec. 23, 1996)(Fallon, J.).  The granting of a preliminary injunction is not a ruling on the merits but only involves a finding of a likelihood of success on the merits.  *Id.*, *citing Black Fire Fighters Ass'n v. Dallas*, 905 F.2d 63, 65 (5th Cir. 1990).  In these circumstances, security is required to compensate the enjoined party for its damages in the event the movant fails to prevail on the merits.  *See Manpower Inc. v. Mason*, 405 F.Supp.2d 959, 976 (E.D.Wis. 2005).  "Because the damages caused by an erroneous preliminary injunction cannot exceed the amount of the bond posted as security, and because an error in setting the bond too high is not serious, district courts should err on the high side when setting bond."  *Id.*

To determine the high side of Vioxx claimants' damages requires little effort.  Indeed, the instant defendants have presented the Court with appropriate metrics by which the Court may calculate a proper bond.  Whether the Court imposes a bond set at the value of the Settlement distributions that will be delayed as a result of the injunction or the value of the money claimants will not receive as a result of delay, either approach is appropriate.  Amicus suggest that a large bond is necessary to protect all the Vioxx Claimants that would be subjected to the requested injunction.

## IV.     CONCLUSION

For the reasons set forth above and for the reasons provided by the instant Defendants, the Motion for preliminary injunction should be denied.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date:  June 20, 2008                                  By:     /s/Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana  70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA  71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL  32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008  (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC  20036-4914
(202) 783-6400 (telephone)
(307) 733-0028  (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Matthew C. Gaughan, Esquire **(on brief)**
LEVIN, FISHBONE, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500 (telephone)
(215) 592-4663  (telecopier)

Shelly A. Sanford, Esquire
Sanford Pinedo LLP
2016 Bissonnet Street
Houston, Texas 77005
(713) 524-6677 (telephone)
(713) 524-6611 (telecopier)

15

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA  70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

**OF COUNSEL**
**PLAINTIFFS' NEGOTIATING COUNSEL**

Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, L.L.P.
820 O'Keefe Avenue
New Orleans, Louisiana  70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

Arnold Levin, Esquire
Fred S. Longer, Esquire
Matthew C. Gaughan, Esquire
LEVIN, FISHBONE, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500 (telephone)
(215) 592-4663  (telecopier)

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)

Edward F. Blizzard. Esquire
BLIZZARD, MCCARTHY & NABERS, L.L.P.
Lyric Centre, 440 Louisiana, Suite 1710
Houston, TX  77002-1689
(713) 844-3750 (telephone)
&713) 844-3744 (telecopier)

Thomas V. Girardi, Esquire
GIRARDI & KEESE
1126 Wilshire Blvd.
Los Angeles, CA  90017
(213) 977-0211 (telephone)
(213) 481-1554 (telecopier)

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on **Lexie G. White**, counsel for AvMed, Inc., et al, via e-mail, Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 20th day of June, 2008.

    /s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:   (504) 561-6024
ldavis@hhkc.com