1      of lawyers tell me they represent exactly the same

2      clients.  I've said, "Do you have retainer agreements?"

3      I can't get a straight answer.

4              You know, there is another issue, and maybe I

5      should put this on the table because this has to get

6      resolved.  I mean I want, I want my clients to be

7      compensated.  I don't want this holding it up.  But Ms.

8      Paolicelli's firm represents about 90 plaintiffs in the

9      settlement.  Is that a conflict?  It seems to me a

10     direct money-in/money-out.  Are they going after — Do

11     you have, do they have 90 names they could start with

12     because they have their own clients?  I mean I wasn't

13     going to say, you know, what Your Honor said, but I

14     agree with it.  That's what this looks like.  It looks

15     like trying to create a fund so that somebody can get a

16     contingent fee on some recovery that may one day come

17     out of that fund.  Because this, their clients have not

18     been hurt.  They've got their insurance contract.  We

19     went to great lengths in the agreement to not touch

20     them or affect them.  And, yes, Merck is indemnified,

21     but if there's a claim against Merck for healthcare

22     provided to my client, I think they're entitled to the

23     indemnification.

24              MS. PAOLICELLI:  Your Honor, I've already

25     addressed that last point.  The settlement agreement is

1    constructed in a way that plainly affects the rights of

2    my clients.  It plainly affects the rights.

3            I want to say also, Your Honor, that we're

4    not going after a fund.  We want the individual names

5    so that we can pursue the individuals.  That's why we

6    want the social security numbers.

7            MR. SEEGER:  Well, then they haven't been —

8            MS. PAOLICELLI:  Now Your Honor asked me a

9    question, and I don't think that I answered is, which

10   is how does HRI normally get this information.  Well,

11   normally they get notified by the claimants who are in

12   a lawsuit that a lawsuit exists.  How do they get

13   notified?  Either because records are sought or because

14   the plaintiffs or their lawyers are following their

15   contractual agreement — and it's in all these contracts

16   — to notify their insurer.  You know, it was good

17   enough for them when they needed the money to have the

18   insurer —

19           THE COURT:  Well, they don't go notifying

20   Healthcare Recoveries, Inc.

21           MS. PAOLICELLI:  They're not — No, no, no.

22   Not —

23           THE COURT:  They have no agreement with

24   Healthcare Recoveries, Inc.  So your client is not who

25   they notify.

1      MS. PAOLICELLI:  Your Honor, my — the

2   petitioner here is Healthcare Recoveries, but they are

3   the agent for all of those insurers on the list.

4      THE COURT:  No.  I don't accept that.  I

5   don't accept the fact that you represent all these

6   insurance companies.

7      MS. PAOLICELLI:  Well, Your Honor, I —

8      THE COURT:  You've listed a whole list of

9   companies, and — Do you have retainer agreements with

10   these people?  Do you have contracts with these

11   companies?

12      MS. PAOLICELLI:  I have —

13      THE COURT:  You've listed hundreds.  Now

14   you're telling me you represent a few of them in your

15   third-party payer case.

16      MS. PAOLICELLI:  I — Your Honor, I have a

17   retainer agreement with HRI, and I have retainer

18   agreements with some of the entities —

19      THE COURT:  And HRI has absolutely no

20   contractual rights other than if, lest they are hired

21   or they are engaged with a contract for some specific

22   recovery through some insurance company.  You don't

23   represent the insurance companies.

24      MS. PAOLICELLI:  Your Honor, HRI is hired by

25   those companies and has been asked by those companies

1      to pursue this claim.  They are the agent for them.

2      That's what they do for them, and they do it — you

3      know, for some of these they do it for medical

4      malpractice cases and the other cases, as well a

5      pharmaceutical tort case like this.

6              THE COURT:  Oh, I don't have any question

7      that a health insurer, knowing that they have a claim,

8      may notify H&R (sic) that they want them to pursue

9      their claim.  But here it's backwards.  It's the

10     lawyers getting the information to give to Healthcare

11     Recoveries so that they can get to the insurance

12     companies to then pursue the claims, isn't it?  Isn't

13     that what this is?

14             MS. PAOLICELLI:  No, Your Honor.  If, if the

15     plaintiffs and their, their counsel had followed their

16     contractual obligation to notify —

17             THE COURT:  How do you know if they haven't?

18             MS. PAOLICELLI:  Let's say MVP —

19             THE COURT:  How do you know they have?

20             MS. PAOLICELLI:  Because the plans have it,

21     because I'm told by HRI and I saw some of them, and I

22     just know this from what I've seen.  The plans have

23     agree — have provisions in there that plaintiffs, if

24     they're given benefits, medical benefits that are later

25     the subject of a recovery from the real tort feasor the

1    insurance company has the —

2              THE COURT:  No question.

3              MS. PAOLICELLI:  — the right to be notified.

4              THE COURT:  And those insurance companies

5    will be notified by those people who have the right to

6    notify them and duty, or those insurance companies can

7    pursue those people; but the bottom line is this should

8    not be pooled together in — I just, I have — I think

9    that this is, and I've said it, the way your whole

10   statement is written here I don't, I don't — I'm

11   telling you right now I don't really think you're

12   representing, quote, the insurance companies.  You're

13   representing a group, and it appears to me that this,

14   that you're trying to get the information so that you

15   can create litigation and so that you can come into

16   this fund.

17             The bottom line is, first of all, the Court

18   doesn't control the settlement and the Court didn't

19   create the settlement.  Second, there's nothing,

20   there's no case that would ever require me to release

21   social security numbers of multiple people who may or

22   may — you may or may not have a claim against.  You

23   don't even know whether you have a claim against them.

24   And I'm going to send to you somebody's social security

25   number so you can decide whether a possible client of

1    yours or your client's client may have a claim against

2    them?  And if you don't then —

3              MS. PAOLICELLI:  Then, Your Honor, we would

4    give you information back.  We would destroy — we would

5    follow the —

6              THE COURT:  No.  That's not how lawsuits are

7    create — that's not how things are done.  If your

8    insurance companies, if you represent them, if XYZ

9    Insurance Company believes they have a claim against a

10   certain person, then they can file that suit.  They

11   have a right to do that, and that person has certain

12   obligations and the attorneys have certain obligations.

13   But there's no obligation in that contract for them to

14   notify — If you can show me a contract that says that

15   anybody who has this insurance has to notify Healthcare

16   Recoveries —

17             MS. PAOLICELLI:  Your Honor, they don't have

18   to notify —

19             THE COURT:  — any time they settle a case —

20   They don't.  They have to notify their own companies.

21             MS. PAOLICELLI:  They have to notify — and

22   then the insurance company will notify —

23             THE COURT:  Those people who have —

24             MS. PAOLICELLI:  The insurance company, Your

25   Honor — Maybe I'm not making this clear.  The insurance

1    company —

2              THE COURT:   I understand exactly what we're

3    doing.

4              MS. PAOLICELLI:   — has hired, has hired HRI

5    to do their subrogation work.   The insurance company,

6    when they receive notice from a plaintiff pursuant to

7    the obligation, sends it to HRI —

8              THE COURT:   No.   If you hire somebody to do

9    subrogation work you say, "I have this claim against X.

10   Would you please handle it for me?"   You're saying, "We

11   don't know who X is.   We don't know who X is.   We don't

12   even know who we have claims against, but we're going

13   to try to jump into this — because we heard a billion

14   dollars and we're going to try to jump in there and get

15   some of this money."   They're entitled, the insurance

16   companies are entitled to their money, but this isn't

17   the way they get it.   They get it by filing claims

18   against the people.   They get it by being notified by

19   people under their contracts.   The insurance companies

20   know how to, to handle these.   They've been doing, they

21   created these contracts.   The people, the individuals

22   didn't.   They created the contract.   They've got

23   safeguards in there where they're protected.   They have

24   ways of finding out about that.   It's not this way.

25   It's not coming into Court and saying — Why should it

1    just be the Vioxx people?  Why not file a — why haven't

2    you made this broader and asked that everybody who

3    settled a case in the last year, that the Court be

4    required to tell you that the case has been settled,

5    this is the name and address of the people and this is

6    their, this is their thing; and now we believe that

7    they've gotten money and, therefore, they're going to

8    get money, and then they get money and therefore you

9    have to — We have cases settled every day.  I don't sit

10   there and say to those people, you know, what they do

11   or don't do with their insurance company.  If the

12   matter is brought before me, if the insurance company

13   sues their insured, they're paid.  If I speak to a

14   client, when I represented clients, I explained to them

15   their obligations, and I made sure that the people were

16   paid that should be paid.  That was my obligation as a

17   lawyer.  And these people have that obligation as a

18   lawyer.  You're assuming they're not doing it or not

19   going to do it, and I'm telling you I am not going to

20   make that assumption.  I'm not going to make the

21   assumption —

22            MR. SEEGER:  Well, I can, I represent we are

23   doing it, Your Honor.  We are —

24            THE COURT:  I'm not going to make the

25   assumption that they're not doing what they're supposed

1   to be doing with their clients.

2         MS. PAOLICELLI:  Your Honor, normally,

3   because —

4         THE COURT:  But if you have somebody who has

5   a claim against someone, file suit.  But to come in and

6   say we need the names of everybody so we can decide

7   whether we have a claim, to me it is improper.  It

8   certainly doesn't fit under this rule.  It certainly is

9   not the purpose of the rule.  This is not a rule where

10   you're supposed to be — it's for preserving testimony,

11   preserving evidence, preserving documents.  It is not

12   for deciding who we may have a claim against.

13         To do a search, a fishing expedition, to see

14   who you might have a claim against, and particularly,

15   particularly when you're asking for information about a

16   large number of people, many of whom or maybe most of

17   whom you absolutely don't have a claim against, and you

18   have no right to know that XYZ — nobody has a right to

19   know that XYZ so and so has been enrolled in a

20   settlement or settled their case.  Why, why should you

21   or Healthcare Recoveries have that information?  Why

22   should these insurance companies — because I assume

23   Healthcare Recoveries, if they get this information, is

24   then going to give this information to all these

25   companies in order to determine — Now all these

1    companies know that this person had a claim.  We know

2    that everybody in the settlement either has to be

3    claiming they had a heart attack or a stroke.

4            I understand they could enter confidentiality

5    things, but the bottom line is you have no standing to

6    get what you want.  You have no right to get what you

7    want.  You have no law to support that you get what you

8    want.  And I personally find it, you know, to have no,

9    just to have no legal basis.

10           MS. PAOLICELLI:  Well, Your Honor, I just

11   want to — I probably —

12           THE COURT:  I made that clear before on the

13   record when you sent a letter to me asking for this

14   information.  You've sent lien letters to lawyers,

15   haven't you?

16           MS. PAOLICELLI:  That's the point, and nobody

17   responds.  Or Mr. Seeger responded and said, "Sorry.

18   I'm not giving you," —

19           THE COURT:  Then file suit against them.

20   File suit against them.

21           MS. PAOLICELLI:  Against Mr. Seeger?

22           THE COURT:  If you want to and you've got a

23   case against them —

24           MS. PAOLICELLI:  Well, if we have to, then

25   maybe we, maybe we —

1       THE COURT:  If you feel that you want a case

2    against him, go ahead.

3       MS. PAOLICELLI:  Your Honor —

4       THE COURT:  But you don't have anything you

5    can allege in a case against him because you don't know

6    that he hasn't done anything improper.  How would your

7    client even know whether he's, which of his clients

8    have notified their companies and which haven't?  You

9    have no idea what he has or hasn't done or what his

10   clients have or haven't done.

11      MS. PAOLICELLI:  I'm not trying to be

12   critical of Mr. Seeger about whatever he does with his

13   clients, but my clients in the normal course — This is

14   what insurers do, they send lien letters, and they

15   respond.  I have responded to the lien letters as a

16   plaintiffs' counsel.

17      MR. SEEGER:  Well, I think that's a little

18   bit of —

19      MS. PAOLICELLI:  But there's been no response

20   to —

21      MR. SEEGER:  No, that's not true, Your Honor.

22   I —

23      THE COURT:  First of all, there is no lien

24   letter from —

25      MR. SEEGER:  Exactly.

1      THE COURT:  — from the person who's — You

2  know, a lien letter is —

3      MR. SEEGER:  To the client.

4      THE COURT:  — "I am so and so.  You have

5  insurance policy X and, you know, we want our, we will

6  be reserving our rights."

7      MR. SEEGER:  By the way, we have about a

8  hundred —

9      THE COURT:  You have, you can get without

10  anything — It's all public record.  You can get the

11  name of every plaintiff and their address.  You can get

12  the name of every plaintiff and their address.  It's

13  all in the court records.  They're down — you know, if

14  you want to send somebody to physically look at them,

15  you could do that.  If you want to send somebody to

16  look at the dockets and buy it, because the Court will

17  sell you the electronic access for you to go to look at

18  complaints that have been filed.  You can, you can get

19  all that information.  It's public information.  Every

20  single person who files a claim, every single person

21  who says they had an injury and that they were treated,

22  you can get their name and their address and their

23  docket number.  It's public record.

24      MS. PAOLICELLI:  I'm not sure the addresses

25  are, Your Honor.

1      THE COURT:  What you want is social security

2    numbers, which you're not going to get unless they put

3    it in their complaint, which you're not entitled to

4    get; but if it's there you've got that, too.  Most of

5    them, I'm sure, didn't put that in.  If you have liens

6    against these people, then pursue them.  Send them lien

7    letters and file suit against them if they don't pay

8    you what they owe you.

9      MS. PAOLICELLI:  Your Honor, we would —

10      THE COURT:  And if you feel that an attorney

11    is attempting to defraud one of your clients on a mass

12    basis, file suit against the lawyer if that, if you

13    feel you have an obligation to do that.  I'm not going

14    to assume that the lawyers and the people aren't doing

15    what they want — what they're supposed to do, and I'm

16    certainly not going to assume — You know, I know that

17    the lawyers in the litigation in New Jersey — There are

18    no tolled cases in New Jersey, by the way.  There's

19    thousands of cases that were tolled.  There are

20    thousands of cases around the country that aren't even

21    part of this litigation.  I don't know if you've gotten

22    these lists from other courts or not.  I don't know if

23    you've been successful in federal court or anywhere

24    else.  Have you applied for the same thing from a

25    federal judge?

1          MS. PAOLICELLI:  We did, Your Honor.

2          THE COURT:  And what did he give you?

3     Nothing, right?

4          MS. PAOLICELLI:  Well, we — we haven't been

5     heard yet, Your Honor.

6          THE COURT:  Oh, okay.

7          MS. PAOLICELLI:  The 25th of March.

8          THE COURT:  Well, let me tell you, if he

9     gives you anything you can file a motion for

10    reconsideration, and I'll listen to his decision giving

11    it to you and I'll try to understand why he did that.

12         MS. PAOLICELLI:  Thank you for, for that,

13    Your Honor.

14         THE COURT:  Because I'm denying your

15    application.  But if I see that another judge has come

16    up with some reasoning that makes me re-think it, I'll

17    re-think it.  But I doubt you're going to, I don't see

18    how you can be successful anywhere with what you're

19    asking for.  It's not an appropriate request.  It's not

20    an appropriate request.  It's just wrong.

21         MS. PAOLICELLI:  Well, Your Honor, I thank

22    you for, for listening —

23         THE COURT:  And I don't really mean to — I'm

24    not — Well, I'm not going to say, I don't want to

25    insult — because there's part of it, I do find it

1    insulting if somebody says, "I represent all these,

2    some of these," — I mean the language is just, it cries

3    out for, "What?  What are you talking about?"  This

4    petition is submitted on behalf of over 80 public

5    insurers.  And then it sort of talks about you've been

6    retained by most of these insurers.  So you've

7    obviously listed some that haven't retained them.

8              MS. PAOLICELLI:  Your Honor, I'll tell you

9    again because it's nothing I'm hiding.  HRI is the

10   subrogation agent for a large number of those entities

11   on that list —

12             THE COURT:  That's fine.  And —

13             MS. PAOLICELLI:  — and I personally am

14   retained by other —

15             THE COURT:  And if HRI, if any of those —

16             MS. PAOLICELLI:  — number of entities.

17             THE COURT:  And if any of the insurance

18   companies have asked HRI to recover monies from any

19   individuals, they have the right to pursue that claim,

20   and they —

21             MS. PAOLICELLI:  Except they don't, the

22   ability to, to target who the plaintiff is, is — that's

23   the part that's being frustrated —

24             THE COURT:  And that's what you can't do.

25   This Court, it's not my job to — or the Court's job or

1    anyone's job to target people for you to sue because

2    these are people who are going to be receiving a

3    billion dollars and, divided up between them, and

4    they're a target.  People have contractual

5    relationships.  If they owe you something they have an

6    obligation, and I'm sure in their self — insurance

7    contracts they have ways of protecting themselves and

8    knowing.  The insurance companies, if anybody wants to

9    pursue a lien, and people have to notify them, they've

10   been notified by the lawyers that — You, you've sent

11   out liens.  I don't know on behalf of who.  You know,

12   it's just too easy to say, "I represent Healthcare

13   Recoveries, and they represent, they've sued on behalf

14   of hundreds of insurance companies, and now therefore I

15   represent those insurance companies, and I want the

16   name of anybody who might possibly be a potential

17   defendant in a case or a claim by them."  It's

18   ridiculous, I think.

19           MS. PAOLICELLI:  Your Honor, with all respect

20   I think my request —

21           THE COURT:  I think it has no merit and I'll

22   deny it.

23           MS. PAOLICELLI:  — is somewhat narrower than

24   you just characterized it.

25           THE COURT:  Everything that you want as far

1    as names and addresses and who filed cases you can get.

2    The names of which of the people have gone into the

3    settlement is not something I'm going to give you.  The

4    social security numbers is not something I'm going to

5    give you.  And —

6              MS. PAOLICELLI:  Your Honor, I understand

7    that the addresses aren't on many, if not most, of

8    those complaints.  I'll — you know, if I had the names

9    and addresses of the plaintiffs I would have something

10   more.  I don't know that that would really move the

11   ball very far, but it would move it farther than I have

12   it now.

13             MR. SEEGER:  Judge, I just have to point this

14   out.  I got to — I've just got to clean the record up

15   in case I do get sued on this.  On the web site of HRI

16   they boast that they can, right on their web site —

17   I'll produce it and send it to the Court — they say

18   that they can trace people by name alone.  That's on

19   their web site.  That's number one.

20             Number two, my office has received probably

21   north of a hundred letters already from Aetna, from

22   Guardian, from Equitable, from insurance companies

23   saying, "Our records indicate that your client was on

24   Vioxx.  We're aware of the settlement.  You're being

25   put on notice."  We are also going to reach out if we

1    see that there's private insurance companies, as we do

2    with any personal injury case.  This is no different

3    than any — just because we have, you know, a lot of

4    claims together.  Everybody that I know is doing

5    exactly that to protect their clients under their

6    contract.  I think it's, I just think the whole thing

7    is a farce.

8              THE COURT:  I'm sorry.  But this to me looks

9    like exactly what, what's been said.  It's H&R (sic) —

10   or H — this recovery company, once it has these names,

11   then contacting the insurance companies and saying, "We

12   can pursue these people for you."  Whereas these people

13   — if they have lawyers they know how to get them.

14   They've sent them to lawyers.  And either they're going

15   to respond or they're not going to respond, or the

16   insurance companies can take action against the

17   attorney or against the clients.  They know who their

18   subscribers are.  They know who they have contracts

19   with.  If they can match a name on their, their

20   subscriber list to a name that's been filed —

21             MS. PAOLICELLI:  Your Honor, I don't want the

22   record to stand —

23             THE COURT:  I'll tell you right now I don't,

24   I absolutely agree with you that insurance companies

25   have the right to be paid.  That I absolutely agree

1   with you.  And I absolutely believe that if there's a

2   proper lien it's got to be enforced, but the way to do

3   that is not to let you, on behalf of Healthcare

4   Recoveries, have personal information, have any

5   information about any of these people other than what

6   is public information, and public information is what's

7   in the court's files.  And you can have that.

8           MS. PAOLICELLI:  Your Honor, I just — I don't

9   want the, I don't want the record to stand that — I

10  want to correct something.

11          These companies hired HRI to do this.  It's

12  not HRI getting the names and then going, "Hey, by the

13  way, we can get you this."  That's not what this is.

14  These are the companies that have already asked HRI as

15  the agent, the one who does it for all of their injury

16  cases, to go and —

17          THE COURT:  And do what?

18          MS. PAOLICELLI:  — enforce, enforce their

19  equitable and reimbursement subrogation rights.  They

20  do it for all kinds of cases.  The companies went to

21  HRI and not the other way around.  This is not HRI

22  saying, "Oh, let's try to get this, and then we'll try

23  to sell it to these companies."  No.  That is not the

24  fact here.  In addition to which, the County of Erie,

25  the County of Chautauqua, and many other of the

1     entities on that, many locals' health and welfare

2     funds, 1199, those are direct clients of my firm's,

3     Excelis, Kaiser, direct clients of Crowell & Moring.

4     This is not, I just don't want Your Honor to think —

5                THE COURT:  And what have you done, what have

6     you done as a lawyer for the plaintiffs you represent?

7                MS. PAOLICELLI:  I have —

8                THE COURT:  What have you done for your

9     plaintiffs?

10               MS. PAOLICELLI:  For my plaintiffs, Your

11    Honor?  I filed the lien letters that I filed.  I filed

12    the follow-up lien letters.  I wrote the letters to the

13    Court.  I'm making this motion.

14               THE COURT:  No, no, no.  I'm talking about

15    your plaintiffs that —

16               MS. PAOLICELLI:  I filed complaints for them.

17               THE COURT:  — you represent in Vioxx.  Some

18    of them are in the settlement, right?

19               MS. PAOLICELLI:  The PI plaintiffs you're

20    talking about?

21               THE COURT:  Yes.

22               MS. PAOLICELLI:  I don't represent them

23    anymore.  We've referred those cases out.  We don't

24    have them anymore and, Your Honor, —

25               THE COURT:  When did this happen?

1          MS. PAOLICELLI:  Months ago.

2          THE COURT:  Months ago?

3          MS. PAOLICELLI:  Yes, Your Honor.  We are

4     not —

5          MR. SEEGER:  You're withdrawing from those

6     cases?  There's no substitution of counsel filed.

7     We've never seen a substitution or any additional

8     appearances.

9          THE COURT:  Right now you are of record

10    representing about 90 people in this litigation, aren't

11    you?

12         MS. PAOLICELLI:  I can tell you that my

13    partner, Moshe Maimon, was involved in those cases.

14    They are now being handled by the Lotts (phonetic) firm

15    and not by us.  And if it means anything, Your Honor,

16    because I have — I checked our files some time ago, and

17    as far as we can tell from the files that we have none

18    of the entities on that list were insurers for those

19    clients.

20         THE COURT:  Well, see, that just goes to

21    show.  You've got 90 people.  None of them —

22         MS. PAOLICELLI:  And I don't think it's 90,

23    Your Honor.  I think it's more like, you know, 45.

24         THE COURT:  Well, let's say you have 40

25    people, 20 people.  Not one of your clients is

 1    represented by any of these insureds.  So —

 2              MS. PAOLICELLI:  None of those 45 as far as I

 3    could tell, Your Honor.

 4              THE COURT:  And you still think that you

 5    would, as a lawyer, have no problem with me giving to

 6    some other company or some other entity your clients'

 7    names, addresses, social security number, and tell

 8    someone that they've enrolled in a settlement program

 9    where they've alleged they had a heart attack or stroke

10    and that they're going to be receiving monies?

11              MS. PAOLICELLI:  Your Honor, these

12    individuals weren't —

13              THE COURT:  You would have no problem on

14    behalf of your clients doing that?

15              MS. PAOLICELLI:  Your Honor, I'm not speaking

16    for those clients now.  They're not my clients now.

17              THE COURT:  Well, that's convenient.

18              MS. PAOLICELLI:  Your Honor, I —

19              THE COURT:  Sorry.  I have no time for this.

20    I think that this is wrong, and I don't think it's

21    based in the law, and I don't think it's proper.  First

22    of all, I just have questions about it altogether,

23    obviously.  Secondly, even if it were absolutely — it

24    was absolutely perfectly proper that you were

25    representing them and you were representing all those

1   insurance companies, and each of them had given you a

2   retainer agreement and hired you directly to pursue any

3   claims that they would, might have, it's still not

4   right.  It's still a fishing expedition.  It's still

5   not a proposition of this rule.  It's still not

6   something that this Court would ever, has ever in the

7   past or ever would just give out generally.  And,

8   again, I don't see how Vioxx is different than every

9   other case in this courthouse, or every other case in

10  the state.  Every judge is not, and the Court does not

11  provide you lists of people who've settled their cases

12  so that insurance companies can go to them before they

13  get their checks.  That's not the way it's done.  And

14  it's only because it's a pool of money that I think

15  people, you know, vultures tend to circle around.

16          I'm sorry.  I know I'm being offensive to

17  some degree, but I have — when I see a complaint that

18  says, you know, — I don't hide my feelings or my

19  opinions.  I say what I believe, and this is what I

20  think.  I think this is just wrong.  But separate and

21  apart from whether it's wrong, even if it's right it's

22  not, it's not — there's no legal basis for the relief

23  you requested.

24          COURT ATTENDANT:  All rise.

25          MS. PAOLICELLI:  Your Honor, thank you for

1    your time.

2           (Off the record)

3                    * * * * * * * * * *

4           I, Cheryl A. Bryson (CB Trialscript Service),

5    the assigned transcriber, do hereby certify the

6    foregoing transcript of proceedings digitally recorded

7    on March 14, 2008 at Time Index 1:28:33 to 2:17:45 is

8    prepared in full compliance with the current Transcript

9    Format for Judicial Proceedings and is a true and

10   accurate non-compressed transcript of the proceedings

11   as recorded.


_____          New Jersey AOC #202
Cheryl A. Bryson, C.E.T., AD/T
Agent For: CB Trialscript Service
1606 Adams Avenue
Linwood, NJ   08221                        March 18, 2008
Phone/Fax: 609-653-1971                    (Date)
Email: cbryson602@aol.com