UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|    Products Liability Litigation | * | MDL No. 1657 |
| | * | |
| This Document Relates to: | * | Case No. 08-1633 |
| | * | |
| AvMed, Inc.; Aetna, Inc.; Arkansas Blue | * | SECTION L |
|    Cross and Blue Shield, A Mutual Insurance | * | |
|    Company; HMO Partners, Inc. d/b/a Health | * | JUDGE ELDON E. FALLON |
|    Advantage; USAble Life; BCBSD, Inc. | * | |
|    d/b/a Blue Cross Blue Shield of Delaware; | * | MAGISTRATE JUDGE |
|    Blue Cross & Blue Shield of Mississippi; | * | KNOWLES |
|    Blue Cross & Blue Shield of Rhode Island; | * | |
|    Blue Cross and Blue Shield of Arizona, Inc.; | * | |
|    Blue Cross and Blue Shield of Kansas, Inc.; | * | |
|    Blue Cross and Blue Shield of | * | |
|    Massachusetts, Inc.; Blue Cross and Blue | * | |
|    Shield of North Carolina; Blue Cross and | * | |
|    Blue Shield of Vermont; Blue Cross Blue | * | |
|    Shield Association; BlueCross and | * | |
|    BlueShield of Florida, Inc.; BlueCross | * | |
|    BlueShield of Tennessee; CareFirst, Inc.; | * | |
|    Connecticut General Life Insurance | * | |
|    Company; Government Employee's Health | * | |
|    Association, Inc.; Great-West Life & | * | |
|    Annuity Insurance Company; Group Health | * | |
|    Incorporated; The Guardian Life Insurance | * | |
|    Company of America; Harvard Pilgrim | * | |
|    Health Care, Inc.; Hawaii Medical Service | * | |
|    Association; Health Net, Inc.; Highmark, | * | |
|    Inc.; Highmark West Virginia Inc. d/b/a | * | |
|    Mountain State Blue Cross and Blue Shield; | * | |
|    HIP Health Plan of New York; Humana, | * | |
|    Inc.; Johns Hopkins HealthCare LLC; KPS | * | |
|    Health Plans; Medical Mutual of Ohio; | * | |
|    Nordia Mutual Insurance Company; | * | |
|    Premera Blue Cross; Priority Health; | * | |
|    Regence BlueCross BlueShield of Oregon; | * | |
|    Regence BlueCross BlueShield of Utah; | * | |
|    Regence BlueShield of Idaho; Regence | * | |
|    BlueShield; Asuris Northwest Health; | * | |
|    Regence Life and Health Insurance | * | |
|    Company; Trustmark Life Insurance | * | |
|    Company and Trustmark Insurance | * | |

```
Company; UnitedHealth Group               *
Incorporated; Vista Healthplan, Inc.;     *
Wellmark, Inc. d/b/a Wellmark Blue Cross  *
and Blue Shield of Iowa; Wellmark of South*
Dakota, Inc. d/b/a Wellmark Blue Cross and*
Blue Shield of South Dakota; and Wellmark *
Health Plan of Iowa, Inc.,                *
                                          *
                        Plaintiffs,       *
                                          *
        v.                                *
                                          *
Brown Greer PLC; U.S. Bancorp, Inc.; and  *
   John Does,                             *
                                          *
                        Defendants.       *
                                          *
* * * * * * * * * * * * * * * * * * * * * *
```

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO SEVER

Plaintiffs' Opposition to defendants' motion to sever asks the Court to brush aside defendants' motion as serving but "one purpose: delay." (Pls.' Resp. to Defs.' Mot. to Sever ("Pls.' Resp.") at 3.) Of course, defendants have not created any delay in this case, and have filed all briefing to date in a timely manner.[1] Rather, plaintiffs' groundless delay argument is an attempt to camouflage the fundamental failings of their own complaint – *i.e.*, that their 47-plaintiff complaint is patently inappropriate for several reasons.

*First,* Pre-Trial Order 26 ("PTO 26") prohibits the joint filing. Plaintiffs belittle the "novel suggestion" that they are bound by this Court's pretrial orders (*id.*), and they dispute the Court's authority to limit their ability to sue jointly, describing PTO 26 as something "which, of

---

[1] Plaintiffs repeat their delay theme throughout their brief, even suggesting at one point that defendants filed a motion to sever "instead" of "fil[ing] a response to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction." (Pls.' Resp. at 5.) The suggestion is ridiculous. At the time defendants filed the motion to sever, no injunction motion had been filed. When plaintiffs filed their motion seeking a preliminary injunction two months after filing their complaint, defendants responded in accordance with the Court's schedule.

2

course, [the Court] may not do." (*Id.* at 17.) But there is no authority for this bold statement, and in any event, if plaintiffs wished relief from PTO 26, they should have moved for it.

***Second,*** plaintiffs' proposed joint action would violate Rule 20 of the Federal Rules of Civil Procedure. These 47 plaintiffs argue that they are entitled to sue jointly, insisting that joinder is generally favored and thus must be favored here as well. But plaintiffs' claims do not satisfy the joinder requirements of Rule 20 because the jointly asserted claims do not arise out of the same transaction or occurrence. Further, joinder is inappropriate because of the complexity of resolving all 47 plaintiffs' claims in a single proceeding.

For these reasons, the Court should grant defendants' motion to sever.

## ARGUMENT

### I.   PLAINTIFFS' JOINT SUIT VIOLATES PTO 26.

Plaintiffs' joint complaint is barred by PTO 26, which directs "that unrelated claimants shall . . . be required to file separate complaints." (PTO 26 at 1.) Plaintiffs urge that the Court lacks the authority to bar plaintiffs' joinder, that PTO 26 only governs personal injury claims, and that enforcing PTO 26 in this instance would undermine its intended purposes. Each of these arguments fails.

Plaintiffs' bald assertion that the Court exceeded its authority in adopting PTO 26 cannot be taken seriously. Courts are accorded substantial discretion to manage multidistrict proceedings. *See* Manual For Complex Litigation (Fourth) § 10.1 (2004) ("the court's express and inherent powers enable a judge to exercise extensive supervision and control of the litigation"). For that reason, many other courts have adopted orders like PTO 26. *See, e.g., In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prods. Liab. Litig.*,.MDL Docket No. 1203, 2004 WL 785069, at *1 (E.D. Pa. Mar. 24, 2004) ("To resolve misjoinder issues, and to facilitate the efficient administration of actions docketed in MDL No. 1203, all multi-plaintiff

3

actions shall be severed pursuant to Rule 21 of the Federal Rules of Civil Procedure . . . ."); *see also* Order at 1-2, *In re Welding Rod Prods. Liab. Litig.*, No. 1:03-CV-17000 (N.D. Ohio Nov. 20, 2003) (attached as Ex. 2 to Defs.' Mot. to Sever) ("A review of the lawsuits that were filed in other fora and then transferred to this Court reveals that, in many instances, a number of unrelated individuals were joined as parties-plaintiff, even though their joinder is not authorized by the Federal Rules of Civil Procedure. The Court finds that, in all such cases, the plaintiffs must be severed from one another, to comport with both the Federal Rules of Civil Procedure and the Local Rules of this Court."). Plaintiffs offer no authority holding that orders like PTO 26 are improper.

Plaintiffs' argument that PTO 26 is limited to individual, personal injury cases is no more persuasive. Plaintiffs argue that they are not "claimants" within the meaning of the Order because they are not "seeking to recover personal injury damages from Merck." (Pls.' Resp. at 18.) But the words "personal injury" do not appear in PTO 26, and the language of the Order does not otherwise suggest any such limitation. Rather, the Order is addressed to "claimants" who "join together and file their claims in a single complaint." (PTO 26 at 1.) Those claimants are "HEREBY ORDERED" that they "shall now be required to file separate complaints. (*Id.*) Plaintiffs did not abide by those instructions, and they thus violated PTO 26.

Finally, plaintiffs' argument that enforcing PTO 26 would undermine the purposes for which it was established simply repeats the groundless arguments (discussed below) that they advance in favor of proceeding jointly. But even if plaintiffs' arguments had some merit, the proper course would have been to move for leave to file a joint complaint notwithstanding PTO 26. Plaintiffs made no such motion, and any "delay" resulting from their failure to comply with PTO 26 is thus entirely of their own making.

4

## II.     JOINDER IS INAPPROPRIATE UNDER RULE 20.

Whatever the relevance of PTO 26, Rule 20 requires severance of the claims in plaintiffs' complaint. Under Rule 20, joinder is permissible only where the cases at issue: (1) arise out of the same transaction or occurrence; **and** (2) share a common factual or legal question. Fed. R. Civ. P. 20(a)(1). Even under the "liberal approach" plaintiffs believe courts take with respect to joinder (Pls.' Resp. at 6), the claims plaintiffs seek to join fail both prongs of this test.

### A.     Plaintiffs' Claims Do Not Arise Out of the Same Transaction or Occurrence.

Plaintiffs' bid for joinder first falters on the same-transaction-or-occurrence requirement. In a case that is entirely about the language of coverage documents, plaintiffs insist that the "fact that the physical coverage documents may memorialize Plaintiffs' rights with different language does nothing to alter the fact that" their claims arise out of the same transaction or occurrence.[2] (Pls.' Resp. at 13.) Plaintiffs miss the relevant issue. The "physical coverage documents" do not merely "memorialize" plaintiffs' rights. They define them.

As defendants explain in greater detail in their opposition to plaintiffs' motion for a preliminary injunction, the meaning of plan terms is *critical* to resolving plaintiffs' putative entitlement to relief. Two Supreme Court cases demonstrate the point vividly. The first is *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). There, the Supreme Court struck down a claim that an ERISA-governed plan was entitled to relief based upon a reimbursement plan that failed to specify a fund against which it was entitled to assert a lien. The conclusion was based upon the Court's prior construction of ERISA as affording only claims

---

[2] Plaintiffs attack a caricature of defendants' argument, repeatedly impugning the notion that "all events giving rise to a claim must be identical." (*See, e.g.*, *id.* at 14.) That is not defendants' argument. Plaintiffs pretend that one event gives rise to their claims – an aggregate settlement (which is actually numerous independent settlements administered through a single fund). But for joinder purposes, the real question as to each person who received money from the Vioxx Resolution Program is whether any of the 47 plaintiffs is entitled to any of the money received by that person. The resolution of that question will involve varying plan documents and distinct events and occurrences for each Program participant.

5

for relief of the sort that was "*typically* available in equity." *Id.* at 210 (emphasis in original). In order to support a claim for restitution at equity, the Court found, the plaintiff was required to identify a specific fund, rather than merely assert a right to recover against general assets based on the personal liability of another. *Id.* at 213-14. The second case was *Sereboff v. Mid Atlantic Servs., Inc.*, 547 U.S. 356 (2006), the case on which plaintiffs ground their claim for relief. *Sereboff* reached the opposite conclusion from *Great-West*, based in large part on the specification of an identifiable share of an identifiable fund in the plan language. *Id.* at 364-68.

The lesson of these cases is that plan language is dispositive, and by extension that **different language** from one plan to the next can mean **different outcomes** with respect to entitlement to relief. One illustrative case in point, decided after *Sereboff*, is *Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006). *Popowski* addressed two cases – *Popowski* and *BCBS v. Carillo*. In the first case, the court held that equitable relief was available; in the second case, it held that it was not. The divergent outcomes depended entirely on plan language. The plan in *Popowski* read in relevant part as follows:

> in any event, the Plan has a lien on any amount recovered by the Covered Person whether or not designated as payment for medical expenses. This lien shall remain in effect until the Plan is repaid in full.
>
> The Covered Person . . . must repay to the Plan the benefits paid on his or her behalf out of the recover made from the third party or insurer.

*Id.* at 1370.

The plan in *Carillo*, meanwhile, read in relevant part as follows:

> If, however, the Covered Person receives a settlement, judgment, or other payment relating to the accidental injury or illness from another person, firm, corporation, organization or business entity paid by, or on behalf of, the person or entity who allegedly caused the injury or illness, the Covered Person agrees to reimburse the

6

>> Plan in full, and in first priority, for any medical expenses paid by
>> the Plan relating to the injury or illness.

*Id.* at 1371.

The basis for the divergent outcomes hinged on the second plan's failure to do what the first plan plainly did – *i.e.*, identify a fund out of which reimbursement was to be paid: "any amount recovered." The second plan merely indicated that the Covered Person had an obligation to reimburse the Plan whenever there was a recovery. No fund was identified.

This case presents 47 plaintiffs asserting rights to recovery under no fewer than 68 plans. Plaintiffs' case thus presents no fewer than 68 transactions or occurrences, and in reality, it will present many more. Each putative right to recovery from each Vioxx settlement claimant against whom plaintiffs may ultimately proceed will be subject to resolution against the backdrop of facts specific to that plaintiff: the language of the relevant plan, the extent of benefits received from the plan, the existence of any other recovery (for example, Social Security payments) that might have already been paid against the plan's purported right to reimbursement, and the existence of any equitable defenses whose resolution will depend upon the plaintiff's particular circumstances (for example, the make-whole doctrine). In no way is this a single transaction or occurrence.

In arguing to the contrary, plaintiffs rely chiefly on two cases – *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferer, Poirot & Wansbrough*, 354 F.3d 348 (5th Cir. 2003), and *Great American Insurance Co. v. McElwee Brothers, Inc.*, No. 03-2793, 2004 WL 574749 (E.D. La. Mar. 19, 2004). Plaintiffs first argue that "one need look no further than the Fifth Circuit's *Bombardier* opinion for confirmation that Plaintiffs' claim involve [*sic*] a single transaction." (Pls.' Resp. at 12.) This assertion is inexplicable. *Bombardier* did not address joinder. As plaintiffs' quotations acknowledge, the case merely held that a constructive trust

existed over a settlement trust set up in favor of a single beneficiary. (*Id.*) One plaintiff sued two defendants – the plan beneficiary and his lawyers. The settlement trust was set up in favor of the beneficiary and was controlled by his lawyers. *Bombardier* thus offers no guidance for a case like this in which a large settlement fund is established to pay out separate settlements to thousands of claimants, against whom nearly fifty plaintiffs are asserting rights to recover pursuant to different plan language and to extents that will vary from one claimant to another.

*Great American* is also off the mark. In *Great American*, one plaintiff sued seven defendants. The defendants had entered into a joint venture to bid on and perform a construction project. (*See* Compl. ¶ 25, *Great Am. Ins. Co. v. McElwee Bros., Inc.*, No. 03-2793 (Oct. 6, 2003) (attached as Ex. 1).)³ The parties' rights were governed by two separate agreements. (*See id.* ¶¶ 1, 16-23.) But the contracts governed the same parties and related to the same construction project. (*See generally id.*) Plaintiff sued for declaratory relief relating to its rights under the agreements.

In the magistrate judge's opinion cited by plaintiffs, Great American sought to join an additional defendant – Melancon, the law firm representing the joint venture. 2004 WL 574749. It did so "because Melancon may assert an allegedly first-ranked attorney's lien against any recovery that Great American obtains." *Id.* at *2 (emphasis removed). That risk arose because the terms of Melancon's contingency contract with the joint venture purported "to include any recovery by Great American, even if Great American owns the claims and obtains any recovery from such claims." (Mem. in Supp. of Mot. for Leave to Join Add'l Party Under R. 19 of the Fed. R. of Civ. P. at 3, *Great Am. Ins. Co. v. McElwee Bros., Inc.*, No. 03-2793 (Dec. 5, 2003) (attached as Ex. 2).) Great American was concerned that, as a result of these terms, "Melancon

---

³ The *Great American* opinion cited by plaintiffs, written by a magistrate in the midst of the litigation of that case, did not set forth the facts. Thus, reference to other documents on the docket is required here.

8

is purportedly entitled to 50% of such recovery before Great American receives what it is owed" by the defendants "under prior obligations of the Joint Venture." (*Id.*)

These facts plainly find no analogue here. In *Great American*, the entire resolution of the case arose from the resolution of the various parties' obligations under two contracts relating to the same construction project. The resolution of one claim was interrelated with the others. Here, that is not the case. The resolution of one plaintiff's claims will not resolve the others, because their claims depend upon the meaning of the language of their own plans. Indeed, even the resolution of one plaintiff's claims against one Vioxx settlement claimant will not resolve that same plaintiff's claims against another claimant. The first claimant may have received benefits, potentially entitling the plaintiff to reimbursement, while a second claimant – though covered by the same plan – may not have. A third claimant may be entitled to assert an equitable defense not available to the first two. And so on. The existence of the settlement raises these issues but does not resolve them.

Plaintiffs' remaining authority, cited in footnotes, is similarly distinguishable. (*See* Pls.' Resp. at 15-16 nn.5-8.) Most prominently, these cases involve, at most, ten parties total. Plaintiffs here are 47 in number, and if they prevail on their request for injunctive relief, the many John Does they have provisionally named would become, by plaintiffs' own estimates, defendants numbering between 10,000 and 15,000. But even if they offer helpful basic principles, they are still not helpful to plaintiffs.

To take one example, *Mississippi Valley Structural Steel Co. v. Huberte, Hunt & Nichols, Inc.*, 295 F. Supp. 139 (S.D. Ill. 1969), which plaintiffs cite for the proposition that "multiple subcontractors" can sue a general contractor for breach of contract jointly "even where the subcontractor Plaintiffs were not parties to the same contract," in fact involved two

9

subcontractors who jointly sued a general contractor for its failure to perform under the terms of its contract with one of the subcontractors. *Id.* at 140. The general contractor had agreed to construct a building. It subcontracted the "fabrication and erection of the structural steel" to Mississippi Valley, which in turn subcontracted the same project under similar terms to Kenwood in an arrangement that was made known to the general contractor. Both plaintiffs "spent substantial sums in reliance upon" their contracts, which related to precisely the same object – the fabrication and erection of structural steel. The court found joinder appropriate because "there would appear to be no possible value to anyone in requiring a prior and separate suit by Kenwood against Mississippi Valley when the matter can be adjudicated all at once, and especially when Kenwood apparently does not consider that Mississippi Valley caused its alleged damage." *Id.* at 140-41. In other words, one party's breach directly and similarly affected two parties' rights. That case simply does not apply here, where different plaintiffs are each claiming that different defendants caused them harm under different contractual provisions.[4]

Plaintiffs' attempt to distinguish defendants' authority similarly fails. Plaintiffs argue that *Sucherman v. Metropolitan Property and Casualty Insurance Co.* is distinguishable because in that case, Hurricane Katrina was "the only predicate the cases shared" and "[n]ot one legal issue common to all of the plaintiffs existed," while in this case, "Plaintiffs' rights to

---

[4] Plaintiffs' remaining footnoted cases are similarly off point. *See Johnson v. Mansfield Hardwood Lumber Co.*, 143 F. Supp. 826, 838 (W.D. La. 1956) (eight stockholders could sue jointly on misrepresentation regarding payment of dividends because "they seek recovery from the same defendant, whose officers allegedly acted in the same manner as to all plaintiffs, at roughly the same time, and with substantially the same results"); *Hedberg v. State Farm Mut. Auto. Ins. Co.*, 350 F.2d 924, 931 (8th Cir. 1965) (joint suit by various State Farm entities against a single agent they had all employed for breach of non-competition provision in his employment contracts with them that "took the form of one collective instrument" permissible because "[a]ll four mutual insurance company plaintiffs possessed a common and joint interest in Hedberg's activities, in his performance or lack of performance under their contracts with him, in his loyalty or disloyalty to their group, and in his business contentment or dissatisfaction"); *Mich. Head Start Directors Ass'n v. Butz*, 397 F. Supp. 1124, 1131 (W.D. Mich. 1975) (class action).

10

reimbursement came into being when Defendants set up the identifiable fund required by *Sereboff* and *Bombardier*." (Pls.' Resp. at 14.)[5] But as explained above, the existence of a settlement – like the existence of a storm that damaged the disparate properties in *Sucherman* – only begins the relevant inquiry for plaintiffs. Indeed, for many plaintiffs it may not do even that, as they may not have the necessary language in their plans to entitle them to any reimbursement from their beneficiaries. That fact highlights that the existence of a settlement is not the same transaction or occurrence for each plaintiff. Just as in *Sucherman*, the settlement, like Katrina, raises only the possibility of relief. The entire case for reimbursement remains to be litigated after the triggering event. *Accord Campo v. State Farm Fire and Cas. Co.*, No. 06-2611, 2007 WL 2155792, at *3 (E.D. La. July 26, 2007) (Fallon, J.) (hurricane damage "can not serve as a common transaction or occurrence because Hurricane Katrina effected each property differently, each property was different with respect to its prior condition, and each property was covered by a separately negotiated insurance policy.").

For all these reasons, plaintiffs' claims do not arise out of the same transaction or occurrence.

### B. Plaintiffs' Claims Lack A Common Question of Law or Fact.

Plaintiffs' claims fail Rule 20's other requirement because they do not share common questions of fact or law. Plaintiffs argue that they seek the same facts because they all seek the same injunctive relief – "(1) the identities of participating claimants who will receive monies from the Settlement Fund, and (2) the amounts of money participating claimants will receive

---

[5] Plaintiffs actually describe this single fact as three separate things – first, the plaintiffs' rights to reimbursement due to the existence of the fund, as mentioned in the text, second, that "Plaintiffs' rights to relief came into being when the settling parties entered into an Agreement designed to distribute that fund in a manner that disregards the rights of all private, non-governmental health benefits providers," and third that "Plaintiffs' rights to declaratory and injunctive relief arise from the explicit terms of the Settlement Agreement." But all of these reasons simply restate the argument that same-transaction-or-occurrence requirement is satisfied by the existence of a settlement.

from the Settlement Fund." (Pls.' Resp. at 7.) They also claim to seek "precisely the same declaratory relief" – a declaration that the Settlement Agreement does not protect their purported rights to reimbursement, that they are entitled to know the identities of the settlement claimants, and that they are entitled to reimbursement. (Pls.' Resp. at 8.) Plaintiffs next urge that they share "the same legal question" – namely, whether the Supreme Court's decision in *Sereboff*" entitles them to relief. (*Id.*) And they claim a final common question – whether they are entitled to a temporary restraining order and preliminary injunction directing defendants not to disburse settlement funds.

These are not questions common to each plaintiff's claims. Nor are these ostensibly "common" questions as numerous as plaintiffs suggest. In reality, plaintiffs pose five questions they believe to be common: (1) the names of the settling claimants; (2) the amounts those claimants will receive in the settlement; (3) plaintiffs' entitlements to know those facts; (4) plaintiffs' entitlement to reimbursement; and (5) plaintiffs' entitlement to an injunction against the disbursement of funds. Plaintiffs are mistaken.

*The Vioxx Settlement Claimants' Names Are Not a Common Fact.* The names of the claimants are not a common fact because each plaintiff has a claim for relief – if any – only against its own beneficiaries. It has no interest in the release of the names of the other plaintiffs' beneficiaries; indeed, such release would almost certainly be barred by medical privacy laws. So while plaintiffs do seek information that is similar in character, each plaintiff is actually seeking different information. Thus, the names being sought do not constitute a common fact.

*The Amounts Claimants Will Receive in Settlement Are Not a Common Fact.* Similarly, the amounts that will be paid to each claimant do not comprise a common fact because each plaintiff seeks only that information with respect to its own beneficiaries. No plaintiff has

12

any cognizable interest in that information as it relates to other plaintiffs' beneficiaries. Thus plaintiffs again seek information that is similar in character but not the same information, and thus not a common fact.

*Plaintiffs' Purported Entitlements to the Release of Such Facts Are Not a Common Issue of Fact or Law.* Plaintiffs' entitlement to receive the above information – if it exists at all – will necessarily depend upon their right to reimbursement in the first place, which in turn will depend upon the text of their specific plans. Each plan is specific to the plaintiff that purports to administer it. As already described, each plan must separately be analyzed under the *Sereboff* line of cases. Any entitlement that a plaintiff may have to relief thus depends on factual and legal questions unique to it. The fact that plaintiffs assert relief under the same provision of ERISA does not alter this conclusion. *See Black v. UNUMProvident Corp.*, 245 F. Supp. 2d 194, 199-200 (D. Me. 2003) (Each plaintiff's entitlement to relief under section 502(a)(1)(B) "is a fact specific inquiry particular to each individual case" and thus the argument that joint claims under that provision is a common question "because there is a common request for relief" "is incorrect."). Put simply, "[c]ommon issues of law does not mean common issues of an area of the law." *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 398-99 (S.D. W. Va. 2004).

*Plaintiffs' Purported Entitlements to Reimbursement Are Not a Common Issue of Fact or Law.* For similar reasons, plaintiffs' claims to reimbursement are not common issues. Even if the legal issues are similar, they are not the same, because their resolution depends upon the application of the law to different plan texts. Furthermore, widely disparate facts will affect any right to reimbursement a plaintiff may have as against different claimants. As a factual matter, with respect to a particular plaintiff, the claimants will not have received the same level of benefits, they will not receive the same settlement amounts, and they may not even be covered

13

by the same plan.  As a legal matter, the same claimants may be entitled to raise different defenses and may have different rights under different plans.  Accordingly, any right to reimbursement will have to be resolved plaintiff-by-plaintiff – and even if any plaintiff gets the relief it seeks – ultimately claimant-by-claimant.

***Plaintiffs' Purported Entitlements to Injunction Against Disbursement of Funds Are Not a Common Issue of Fact or Law.***  Finally, plaintiffs' request for an injunction against disbursement of the settlement funds is not a common issue because even if some injunction were appropriate, not every plaintiff would necessarily be entitled to an injunction.  The Court could decide that differences in plan texts, for example, may qualify one plaintiff as likely to succeed on the merits while disqualifying another.  Thus, even if plaintiffs were to succeed on their novel theory that they can assert a joint lien against an aggregate settlement, the extent of the lien and the parties qualified to assert it will necessarily turn on plaintiff-specific facts.

Accordingly, plaintiffs have failed to identify a single common factual or legal issue that justifies their joint suit.

**C.     Severance Is Required Even if Rule 20 Is Satisfied.**

Finally, the law is clear that even if a plaintiff satisfies the two requirements of Rule 20, courts should sever joint claims that meet Rule 20's requirements when joint proceedings would be prejudicial.  *See* Fed. R. Civ. P. 20(b); 21.  Specifically, courts may consider whether "judicial economy would be promoted, whether prejudice would be averted by severance, and whether different witnesses and documentary proof are required for separate claims."  *Cresson v. State Farm Fire & Cas. Co.*, No. , 2007 WL 1191817, at *1 (E.D. La. Apr. 19, 2007).  "[I]f joinder would create considerable delay, prejudice or expense," severance is appropriate.  *Nat'l Union Fire Ins. Co. v. Continental Ill. Corp.*, 113 F.R.D. 527, 531 (N.D. Ill 1986).

As the U.S. District Court for the Northern District of Illinois observed in *National Union*, manageability concerns can escalate quickly as each party is added via joinder. In that case, several insurance companies had sued Continental Illinois Corporation ("CIC"), its subsidiary, and several other defendants "seeking to avoid liability under the directors' and officers' . . . policies plaintiffs had issued to CIC." *Id.* at 529. The court there considered a motion to join two parties as counterdefendants because they had issued excess directors' and officers' policies to CIC. It denied the motion even though Rule 20's requirements were satisfied: "These lawsuits are already complex and bid fair to become unmanageable. Addition of new litigants and new counsel tends to increase the difficulties geometrically rather than arithmetically." *Id.* at 531 (citation omitted).

This Court echoed these concerns in the context of a Hurricane Katrina insurance coverage case just last year. Accepting *arguendo* the plaintiffs' argument that joinder might improve judicial economy, the Court nonetheless severed the claims, explaining, "Any practical benefit accrued through the conservation of judicial resources will be outweighed by the burden imposed on [Defendant] in defending multiple claims, with different factual scenarios, in one trial." *Campo*, 2007 WL 2155792, at *3 (citation and internal quotation marks omitted) (alteration in original).

These admonitions resonate here. Plaintiffs are proposing a proceeding that would dwarf the joinders rejected as problematic in *National Union* and *Campo*. Those cases each would have involved fewer than ten parties had joinder been allowed. This case presently involves 49 named parties. It will explode into a case involving thousands of parties if plaintiffs receive the remedy they have requested. At a minimum, this Court would need to determine whether plaintiffs are entitled to relief under 68 separate plans. Under each qualifying plan, it would then

15

need to determine the amount of benefits paid out to each claimant covered by the plan; the amount, if any, that has been reimbursed already to the plan; and the amount due to the plaintiff, which will turn on the claimant's recovery from the settlement and, quite possibly, the application of equitable defenses such as the make-whole doctrine, which are necessarily fact-specific.  Very little efficiency (if any) would be gained in resolving these cases jointly.  Meanwhile, the case-management implications are overwhelming.

Accordingly, even if Rule 20's requirements are met (which they are not for the reasons previously described), this Court should exercise its discretion to sever the claims.

## CONCLUSION

For the foregoing reasons, the Court should sever plaintiffs' claims.

Respectfully submitted,

/s Monique M. Garsaud

JAMES B. IRWIN (Bar No. 7172), T.A.
MONIQUE M. GARSAUD (Bar No. 25393)
400 Poydras Street, Suite 2700
New Orleans, Louisiana  70130
Telephone:  (504) 310-2100
Facsimile:  (504) 310-2101
Email: jirwin@irwinllc.com
mgarsaud@irwinllc.com

*Attorneys for BROWNGREER, PLC and US Bank National Association*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Reply in Support of Plaintiff's Motion to Sever has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 24th day of June 2008.

                                                /s Monique M. Garsaud