# Exhibit 1




UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY | * | CIVIL ACTION NO. |
| VERSUS | * | SECTION NO. 03-2793 |
| MCELWEE BROTHERS, INC. & TRI-STATE DESIGN CONSTRUCTION CO., INC., | * | |
| MCELWEE BROTHERS, INC., MELVIN M.L. MCELWEE, SR., | * | MAG. SECT. K MAG. 2 |
| SYLVIA HURST, TRI-STATE DESIGN CONSTRUCTION CO., INC., RONALD U. DAVIS and BEVERLY DAVIS | * | |
| * * * * * * * | * | |

**REQUEST FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, SPECIFIC PERFORMANCE AND DECLARATORY JUDGMENT**

The complaint of Great American Insurance Company (hereinafter, "Great American") respectfully represents:

___ Fee 150.00
✓ Process
X Dktd
___ CtRmDep
___ Doc. No.

**NATURE OF ACTION**

1.

Great American seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 to resolve questions concerning (1) an agreement of indemnity executed on October 25, 1999, by McElwee Brothers, Inc. (hereinafter, "McElwee Brothers"), Melvin M. L. McElwee, Sr. (hereinafter, "Mr. McElwee"), Sylvia Hurst (hereinafter, "Ms. Hurst"), Tri-State Design Construction Co., Inc. (hereinafter, "Tri-State"), Ronald U. Davis (hereinafter, "Mr. Davis") and Beverly Davis (hereinafter, "Ms. Davis") in favor of Great American (hereinafter, "1999 GAI") and (2) a separate agreement of indemnity executed on July 25, 2002 by, among others, Tri-State, Mr. Davis and Mrs. Davis in favor of Great American (hereinafter, "2002 GAI"). The 1999 GAI and the 2002 GAI are sometimes referenced collectively hereinafter as "the GAI's.") Specifically, Great American seeks a declaration that the 1999 GAI and the 2002 GAI are valid and enforceable as to all provision of the agreements, such declaration to include, but be not limited to, a declaration that McElwee Brothers, individually and as joint venturer of McElwee Brothers Inc. & Tri-State Design Construction Co., Inc. (A Joint Venture) (hereinafter, "Joint Venture") Mr. McElwee, Ms. Hurst and Tri-State, individually and as joint venturer of the Joint Venture:

(A) must refrain from either directly or indirectly interfering with Great American's exercise of its rights under the 1999 GAI and the 2002 GAI, including, but not limited to, refraining from taking any action as to the Termination for Default (as defined hereinafter) and/or the Claims (as defined hereinafter);

(B) must indemnify, exonerate and keep Great American indemnified against all loss, cost, expenses and attorneys' fees, and all other liabilities arising out of the Great

American's execution of the Bonds (as defined hereinafter) to the United States of America, including requiring McElwee Brothers, Mr. McElwee, Ms. Hurst and Tri-State to provide to Great American sufficient collateral in support of the potential exposure and actual payments that Great American has made, and continues to make under the Bonds;

(C) must each specifically perform their obligations under the GAI's, including, but not limited to, producing all construction and financial (costs and expenditure) records, all correspondence and other all records including those necessary to allow Great American to arrange for the completion of the work on the SELA Dwyer Road Project (as defined hereinafter), to prepare for the appeal of the Termination for Default and to compile and submit Claims for equitable adjustment on the Project;

(D) have irrevocably nominated, constituted and appointed Great American as the attorney-in-fact for McElwee Brothers and the Indemnitors (as defined hereinafter) with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to Great American under the 1999 GAI and the 2002 GAI, and that Great American may, in the name McElwee Brothers and Indemnitors make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by Great American in order to give full effect not only to the intent and meaning of the assignments, but also to the full protection intended to be given to Great American under all provisions of the 1999 GAI and the 2002 GAI and that McElwee Brothers and the Indemnitors consented to ratify and confirm all acts and actions taken and done by the Great American as

such attorney-in-fact;

(E) are required to reimbursement Great American for amounts paid and to be paid to subcontractors and suppliers and to be subrogated to the subcontractors' and suppliers' rights against others as a result of the aforesaid payments;

(F) Great American be awarded a judgment against defendants, and each of them, for such sum as may be or hereafter be ascertained or required to indemnify the plaintiff, including for costs and disbursements and all reasonable attorneys' fees; and,

(G) must cooperate with Great American in pursuing the various claims in this matter.

**THE PARTIES**

2.

Plaintiff, Great American, is Ohio corporation with its principal place of business in Cincinnati, Ohio.

3.

Defendant, Joint Venture, is a joint venture with its principal place of business in Independence, Louisiana.

4.

Defendant, McElwee Brothers, is a Louisiana corporation with its principal place of business in Independence, Louisiana.

5.

Defendant, Mr. McElwee, is a natural person of the full age of majority who resides in Amite, Louisiana.

6.

Defendant, Ms. Hurst, is a natural person of the full age of majority who resides in Amite, Louisiana.

7.

Defendant, Tri-State, is a New Jersey corporation with its principal place of business in Pennsylvania.

**JURISDICTION AND VENUE**

8.

Jurisdiction of this Court is based upon 28 U.S.C. §1332 in that the claims are between residents of different states and the amount in controversy exceeds Seventy-Five Thousand and no/100 Dollars ($75,000.00).

9.

Venue is proper under the general federal venue statute, 28 U.S.C. §1391(a) in that a substantial part, if not all, of the acts giving rise to the claims herein occurred in Orleans and/or Tangipahoa Parishes, Louisiana.

**FACTS AND ALLEGATIONS**

10.

Great American is a surety company which issues payment and performance bonds and stands as surety for selected contractors.

11.

McElwee Brothers is a contractor in the business of performing construction work.

12.

Tri-State is a contractor in the business of performing construction work.

13.

On October 15, 1999, the United States Department of the Army, New Orleans District Corps of Engineers (hereinafter, the "Corps") issued Construction Solicitation and Specifications for a Southeast Louisiana Project, Dwyer Road Drainage Pumping Station Improvements Discharge Tubes and Canal, Solicitation No. DACW29-00-B-005 (hereinafter, "SELA Dwyer Road Project" or "Project"). The Project required the successful bidder to provide performance and payment bonds pursuant to 40 U.S.C. § 3131, *et seq.* (the Miller Act).

14.

McElwee Brothers sought to submit a bid for the work on the Project. However, McElwee Brothers lacked both the financial ability and the bonding capacity to do so. Thus, at some point in time, McElwee Brothers and Tri-State began talking about joining together to submit a bid for the work on the SELA Dwyer Road Project.

15.

In order to obtain the Project, McElwee Brothers and Tri-State requested that Great American issue the requisite bonds.

16.

As Great American was not willing to assume the sole risk that any failure for default by McElwee Brothers and/or Tri-State might result in a loss to Great American, it required both

companies, Mr. McElwee, Ms. Hurst, Mr. Davis and Mrs. Davis to enter into a general agreement

of indemnity.

17.

On October 25, 1999, McElwee Brothers, as Contractor, and Tri-State, Mr. McElwee, Ms. Hurst, Mr. Davis and Mrs. Davis, as Indemnitors (collectively herein, "Indemnitors"), entered into the 1999 GAI, which provided, in part, as follows:

> WHEREAS, the Contractor, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or as a co-adventurer with others, may desire, or be required to give or procure certain surety bonds . . . which are called Bonds . . . at the request of the Contractor and Indemnitors and upon the express understanding that this Agreement of Indemnity should be given, the Surety has executed or procured to be executed . . . said Bonds on behalf of the Contractors [sic]. . . .

The 1999 GAI is attached hereto as Exhibit "A" and incorporated herein by reference.

18.

As partial consideration for Great American to issue certain bonds on behalf of McElwee Brothers, McElwee Brothers and the Indemnitors agreed to exonerate, indemnify, and keep Great American indemnified from and against any and all liability for losses and/or expenses as follows:

> **INDEMNITY**
>
> SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment

> therefor. Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the surety [sic] the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

19.

Further, under the 1999 GAI, McElwee Brothers and Indemnitors agreed to and did assign, transfer and setover to Great American certain rights, interests, actions and claims upon the occurrence of certain events. McElwee Brothers and Indemnitors agreed that, upon the occurrence of certain events, the assignments would become effective retroactive to the date of the first bond issued by Great American. More specifically, concerning the assignments, the 1999 GAI executed by McElwee Brothers and Indemnitors provided:

**ASSIGNMENT**

> THIRD: The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and do hereby assign, transfer and set over to Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of Contractor to the Surety, whether heretofore or hereafter incurred, the assignment to become effective <u>retroactive to the date of the first Bond</u>, but only in the event of (1) any abandonment, forfeiture or breach or alleged breach of any contracts referred to in the Bonds or of any breach or alleged breach of any Bonds; or (2) of any breach or alleged breach of the provisions of any of the paragraphs of this Agreement; or (3) of a default or alleged default in discharging such other indebtedness or liabilities when due; or (4) of any assignment by the Contractor for the benefit of creditors, or of the appointment or of any application for the appointment of a receiver or

> trustee for Indemnitors whether insolvent or not; or (5) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) of the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisonment if Contractor be an individual: (a) All the rights of Contractor in, and growing in any manner out of the Bonds; (b) All the rights, title and interest of Contractor in and to all machinery, equipment, vehicles, plant, tools, and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (c) All the rights, title and interest of Contractor in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontractors; (d) All actions, causes of actions, claims and demands whatsoever which the Contractor may have or acquire against any subcontractors, laborers or materialmen or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialmen; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which Contractor has an interest.
>
> [Emphasis added.]

20.

At the very least, the parties to the 1999 GAI agreed that:

> **TRUST FUND**
>
> FOURTH: If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the

> prosecution of the provided in said contract or any authorized extension or modification thereof; and further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

21.

Under the 1999 GAI, McElwee and Indemnitors also recognized Great American's potential obligations and/or exposures under potential payment and performance bonds issued to McElwee Brothers and agreed that:

**TAKEOVER**

> SIXTH: In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, . . .or in the event of an assignment of creditors of the Contractor, . . .the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of the Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

* * *

**BOOKS AND RECORDS**

> NINTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm or corporation when requested by the Surety is hereby authorized to furnish to the Surety any information requested including, but not limited to, the status of the work under contracts being performed by Contractor, the condition of the performance of such contracts and payments of accounts.

22.

Also, the 1999 GAI specifically provides that:

**ATTORNEY IN FACT**

> EIGHTEENTH: The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Contractor and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Contractor and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

23.

On July 25, 2002, Tri-State, Mr. Davis and Mrs. Davis, among others, as Indemnitors (collectively herein, "Tri-State Indemnitors"), entered into the 2002 GAI. Although the provisions of the 1999 GAI are similar to the 2002 GAI, the language differs somewhat, in part, and provides:

> WHEREAS, the Undersigned, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or as a co-adventurer with others, may desire, or be required to give or procure certain surety bonds . . . which are called Bonds . . . at the

request of the Undersigned and upon the express understanding that this Agreement of Indemnity (hereinafter, "Agreement") should be given, the Surety has executed or procured to be executed . . . said Bonds on behalf of the Undersigned . . . .

* * *

**INDEMNITY/EXONERATION**

THIRD: The Undersigned jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of Bonds on behalf of any of the Undersigned, (2) By reason of the failure of the Undersigned to perform or comply with any of the covenants and conditions of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. The amount of such payment to the Surety by the Undersigned shall be determined by the Surety and the Surety's demand for payment hereunder may at the Surety's option be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Undersigned. The Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any liability, loss or expense for which the Undersigned would be obligated to indemnify the Surety under the terms of this Agreement. The Surety shall have no obligation to invest or to provide a return on the payment or any other collateral deposited with the Surety. The Undersigned shall be entitled to the refund of any unused portion of the payment upon termination of the liability of the Surety on all Bonds and the performance by the Undersigned of all obligations to the Surety under the terms of this Agreement. The Surety's demand shall be sufficient if sent by registered or certified mail, by facsimile transmission, or by personal service to the Undersigned at the addresses stated herein, or at the addresses of the Undersigned last known to the Surety, regardless of whether such demand is actually received. The Undersigned acknowledge that the failure of the Undersigned to deposit with the Surety, immediately upon demand,

the sum demanded by the Surety as payment shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Undersigned agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Undersigned under this Agreement including the obligation to pay to the Surety the sum demanded and hereby waive any claims or defenses to the contrary. In the event of any payment of any kind by the Surety, the Undersigned further agree that in any accounting between the Surety and Undersigned, the Surety shall be entitled to charge for any and all disbursements made by the Surety in good faith in and about the matters herein contemplated by this Agreement under the belief that Surety is or was liable for the sums and amounts so dispersed, or that it was necessary or expedient for the Surety to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers, invoices, and affidavit or other evidence of any such payments made by the Surety shall be *prima facie* evidence of the fact and amount of the Undersigned's liability to the Surety. Each of the Undersigned authorizes and empowers any attorney in any state of the United States, at the request of Surety, to waive the issuing and service of process and to appear for and confess judgment against any of the Undersigned and any sum or sums due under this Agreement, together with the costs of the suit, without stay of execution, waiving inquisition and condemnation of real estate; and to release all errors and waive all right of appeal and stay of execution on behalf of the Undersigned.

**ASSIGNMENT**

SECOND: The Undersigned hereby consenting, will assign, transfer and set over, and did assign, transfer and set over to Surety, as collateral, to secure the obligations in any and all of this Agreement and any other indebtedness and liabilities of Indemnitors to the Surety, whether heretofore or hereafter incurred, the assignment to become effective retroactive to the date of the first Bond, but only in the event of (1) any abandonment, forfeiture or breach or alleged breach of any contracts referred to in the Bonds or of any breach or alleged breach of any Bonds; or (2) of any breach or alleged breach of the provisions of any of the paragraphs of this Agreement; or (3) of a default or alleged default in discharging such other indebtedness or liabilities when due; or (4) of any assignment by the Undersigned for the benefit of creditors, or of the appointment or of any application for the appointment of a receiver or trustee for the Undersigned whether insolvent or not; or (5) of any proceeding which

deprives the Undersigned of the use of any of the machinery, equipment, plant, tools or material referred to in Section (b) of this paragraph; or (6) of the Undersigned's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisonment if the Undersigned be an individual: (a) All the rights of the Undersigned, in, and growing in any manner out of the Bonds or any contracts referred to in the Bonds; (b) All the rights, title and interest of the Undersigned in and to all machinery, equipment, vehicles, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may in process of construction, in storage elsewhere, or in transportation to any and all of said sites: (c) All the rights, title and interest of the Undersigned in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such contracts; (d) All actions, causes of actions, claims and/or the proceeds therefrom and any demands whatsoever which the Undersigned may have or acquire against any party, including but not limited to owners, obligees, subcontractors, laborers or materialmen, architects, engineers or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any party including, but not limited to, prime contractors, subcontractors, laborers, or materialmen; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Undersigned has an interest; (f) any and all accounts receivable, marketable securities, rents, proceeds of sale, instruments, chattel paper, letters of credit, documents of title, bills of lading, federal tax refunds, state and local tax refunds, and general intangibles; (g) any and all policies of insurance. The Undersigned agree that the Surety may add such schedules to this Agreement as it deems advisable, describing more specifically items of security covered by this Assignment. Notwithstanding the foregoing, Undersigned further agree to execute and deliver to the Surety, upon its request, such further or additional instruments as may be necessary or desirable in the Surety's sole and absolute discretion to permit or facilitate either the filing of this Agreement as a Financing Statement and/or Security Agreement, or the filing of separate Financing Statements and/or Security Agreements, based upon this Agreement, in such states, counties, and/or other places as the Surety may deem

necessary or advisable.

**TRUST FUNDS**

FOURTH: Undersigned covenant and agree that all funds received by them, or due or to become due under any contract covered by any Bond are trust funds whether in the possession of the Undersigned or another, for the benefit of all parties to whom the Undersigned incurs obligations in the performance of the contract covered by the Bond(s) and/or for the benefit of, payment to or reimbursement of the Surety for any liability, loss or expense the Surety may incur under the Bond(s) or in enforcing this Agreement. If the Surety discharges any such obligation, the Surety shall be entitled to assert the claims of any such party to the trust funds. The Undersigned shall, upon demand of the Surety and in implementation of the trust, open an account or separate accounts with a bank designated by Surety, which account(s) shall be designated as a trust account(s) for the deposit of such trust and the Undersigned shall deposit therein all monies received pursuant to said contract. Withdrawals from such account(s) shall be by check or other instrument signed by the Undersigned and countersigned by a representative by the Surety. Notwithstanding anything to the contrary herein above this dedication may be implemented in any other manner provided at law or in equity.

* * *

**TAKEOVER**

SIXTH: In the event of any breach, delay or default asserted by the obligee in connection with any Bond or any contract covered by the Bonds, or if the Undersigned has suspended or ceased work on any contract or contracts covered by any Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Undersigned's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Undersigned, or the appointment of a receiver or trustee for the Undersigned or the property of the Undersigned, or in the event of an assignment for the benefit of creditors of the Undersigned, or if any action is taken by or against the Undersigned under or by virtue of the National/Federal Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Undersigned under said Act, or if any action is taken by or against the Undersigned under the insolvency laws of any state, possession, or territory of the United States the Surety shall have the right, but not the obligation, as its

option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any Bonds, and at the expense of the Undersigned to complete or arrange for the completion of the same, and the Undersigned shall promptly upon demand pay to the Surety all losses, costs, and expenses so incurred.

* * *

**BOOKS AND RECORDS**

TENTH: At any time, and until such time as the liability of the Surety under any and all Bonds is terminated, the Surety shall have the right to examine and copy the books, records, and accounts of the Undersigned; and any bank depository, materialman, supply house, or other person, firm or corporation when requested by the Surety is hereby authorized and directed by the Undersigned to furnish the Surety with any information requested including, but not limited to, the status of the work under contracts being performed by the Undersigned, the condition of the performance of such contracts and payments of accounts.

* * *

**ATTORNEY IN FACT**

NINETEENTH: The Undersigned hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Undersigned, transferred and set over to the Surety in this Agreement, and in the name of the Undersigned to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Undersigned hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

The 2002 GAI is attached hereto as Exhibit "B" and incorporated herein by reference.

24.

On August 14, 2000, McElwee Brothers and Tri-State, as McElwee Brothers, Inc. & Tri-State Design Construction Co., Inc. (A Joint Venture) (earlier identified as "Joint Venture") entered into a Joint Venture Agreement to bid and, if successful, perform and complete the work on the SELA Dwyer Road Project (hereinafter, "JVA"). The JVA is attached hereto as Exhibit "C."

25.

The JVA required that McElwee Brothers and Tri-State execute all appropriate indemnity agreements required by the sureties upon any bond or bonds required to bid on the SELA Dwyer Road Project or required by the contract to perform the work on the Project.

26.

By letter dated March 29, 2001,the Corps notified Joint Venture that its bid for the SELA Dwyer Road Project was accepted and it was awarded the contract. On or about that same date, the Joint Venture entered into a contract with the Corps for construction of the SELA Dwyer Road Project (hereinafter, "SELA Dwyer Road Contract"). At that time, the contract amount was $5,501,188.10 and the required completion date of the contract was estimated at November 30, 2002.

27.

In reliance on the covenants and agreements of McElwee Brothers and the Indemnitors under the 1999 GAI, at the request of Mr. McElwee and Mr. Davis and pursuant to 40 U.S.C.A. 3131, *et seq.*, Great American issued payment and performance bonds No. 397 8851 dated March 30, 2001 for the SELA Dwyer Road Project on behalf of McElwee Brothers and Tri-State (hereinafter individually, "Performance Bond" and "Payment Bond," respectively and, collectively, "Bonds").

The Bonds incorporate the SELA Dwyer Road Contract by reference. A copy of the Bonds is attached hereto as Exhibit "D." and incorporated herein by reference.

28.

The Joint Venture began the work on the Project. Under the JVA, McElwee Brothers was the managing joint venturer responsible for the performance of the SELA Dwyer Road Project. See JVA, Exhibit "C" at paragraph 3.1.

29.

However, by Modification No. P00028 dated June 24, 2003, the Corps terminated for default the Joint Venture's right to proceed with any further work on the SELA Dwyer Road Project (hereinafter, "Termination for Default"). See letter dated June 24, 2003, attached hereto as Exhibit "E," and incorporated herein by reference. The Corps contracting officer's decision concerning the default termination was final on that date.

30.

By letter dated June 24, 2003 to the Corps, the Joint Venture provided notification to the Corps of work that the Joint Venture believed to be beyond the scope of the original contract. The letter attached a single page spreadsheet which listed seven "claims" for equitable adjustment totaling $3,230,189.00 and indicated that the SELA Dwyer Road Contract should be credited with 627 days toward the completion time (hereinafter, the "Claims"). This purported claim submission was not certified and the cover letter stated that detailed costs would be submitted upon completion of each item. However, the letter requested a decision of the Contracting Officer within 60 days. See letter dated June 24, 2003, attached hereto as Exhibit "F," and incorporated herein by reference.

31.

As of August 15, 2003, no further details or documents supporting the Claims or costs associated with the Claims had been submitted. See letter dated August 15, 2003 attached hereto as Exhibit "G," and incorporated herein by reference.

32.

By letter dated September 17, 2003, Mr. McElwee, purportedly as Managing Venturer, notified the Armed Services Board of Contract Appeals that "[w]e [purporting to represent the Joint Venture] are formally appealing the contracting officer's decision" under Modification Number P00028, the Termination for Default (hereinafter, "Notice of Appeal").

33.

Subsequent to the termination, the Corps called upon Great American to remedy the Joint Venture's default and to complete the SELA Dwyer Road Contract in accordance with the terms of the Performance Bond and the SELA Dwyer Road Contract terms.

34.

Great American has requested and received bids from qualified contractors to complete the work on the SELA Dwyer Road Project. Great American and the Corps have accepted a proposal from C. R. Pittman (hereinafter, "Pittman") to complete the work on the Project for $2,025,025.00. That contract price to complete the work on the Project is $718,714.16 more than the remaining contract balance available. Under the terms of the Bonds, Great American is required to pay that deficiency.

35.

To date, Great American, in accordance with its obligations under the Performance Bond and in its sole capacity as surety under the Performance Bonds, has negotiated with the Corps, and the Corps has executed, an agreement arranging for Pittman to complete the work on the SELA Dwyer Road Contract in accordance with Pittman's proposal and the SELA Dwyer Road Contract (that agreement is hereinafter referenced as "October Agreement").

36.

The 1999 GAI and the 2002 GAI are specifically referenced and incorporated in the October Agreement. Moreover, under the October Agreement, the Corps specifically agrees to and does recognize that both the 1999 GAI and the 2002 GAI assign all of the rights under the Bonds, thus under the SELA Dwyer Road Contract, to Great American. Considering the assignments to Great American, under the October Agreement, the Corps has waived the statutory prohibition against assignments as provided in the Assignment of Claims Act, 31 U.S.C. 3727 and the Assignment of Contracts Act, 41 U.S.C. 15, or any other provision of law or contract. Further, the Corps has agreed to recognize Great American as the "single point of contact" for and to assert any and all claims under the SELA Dwyer Road Contract, whether such claims arose before the execution of the October Agreement. Moreover, under the October Agreement, the Corps recognizes Great American's exclusive rights including, but not limited to, the right to assert all claims of equitable adjustment for any matters that arose under, concerning or in any way related to Joint Venture's work on the SELA Dwyer Road Project or to the SELA Dwyer Road Contract prior to the execution of the October Agreement. The Corp has agreed to all of the waivers noted in this paragraph.

37.

Great American has paid, and will continue to pay, money under its Performance Bond in order to provide for the maintenance and protection of the SELA Dwyer Road Project (hereinafter, "Interim Costs"). To date, Great American has made payments totaling $378,399.72 pursuant to its obligations under the Performance Bond.

38.

Great American has also paid and processed, and continues to pay and process, the claims of numerous subcontractors, suppliers and materialmen of Joint Venture under and pursuant to the terms of the Payment Bond. To date, these payments total $972,555.26 and Great American's aggregate payment bond claims are likely to exceed $1,300,000.00. These payments are in addition to the earlier referenced Performance Bond obligations for the completion of the work on the Project.

39.

By letter dated July 29, 2003, Great American demanded that McElwee Brothers and Indemnitors indemnify and exonerate Great American for its present and expected losses and expenses. Further, Great American demanded that McElwee Brothers and the Indemnitors each provide Great American with collateral security, as required in the 1999 GAI and the 2002 GAI, in the aggregate sum of $2,000,000.00. Tri-State, Mr. Davis and Mrs. Davis have complied with this demand to Great American's satisfaction. Neither McElwee Brothers, Mr. McElwee nor Ms. Hurst have replied or responded to the request.

**COUNT I**

**DECLARATION OF THE RIGHTS ASSIGNED TO GREAT AMERICAN UNDER THE 1999 GAI AND 2002 GAI**

40.

Great American repeats and realleges each and every allegation contained in paragraphs 1 through 39 as if fully set forth herein.

41.

The plain language of the 1999 GAI and the 2002 GAI, upon the alleged breach (in this instance, the Termination for Default) of the SELA Dwyer Road Contract, all rights under that contract were, by agreement in the 1999 GAI and the 2002 GAI, assigned, *in toto*, to Great American. The language of each GAI provides that the assignment would become effective retroactive to the date of the first Bond (which is March 30, 2001, prior to any work being performed on the Project). Such rights include the right to challenge the Termination for Default and the right to prepare and assert the Claims.

42.

Also under the plain language of the 1999 GAI and the 2002 GAI, upon the alleged breach (in this instance, the Termination for Default) of the SELA Dwyer Road Contract, all rights to any and all percentages retained and any and all sums that may be due or may become due on account of any and all contracts referred to in the Bonds (this includes, but is not limited to, the SELA Dwyer Road Contract) and all other contracts whether bonded or not were, by agreement in the 1999 GAI and the 2002 GAI, assigned, *in toto*, to Great American. The language of each GAI provides that the assignment would become effective retroactive to the date of the first Bond (which is March 30, 2001, prior to any work being performed on the Project). Such rights include

receiving any equitable adjustments associated with the Termination for Default and the right to prepare and assert the Claims.

43.

Subsequent to the Termination for Default, Tri-State, Mr. Davis and Mrs. Davis have recognized Great American's rights under the 1999 GAI and the 2002 GAI and have cooperated with Great American concerning the pursuit of its rights under the GAI's. However, the Joint Venture (primarily through the unilateral actions of Mr. McElwee and with the cooperation of Ms. Hurst) McElwee Brothers, Mr. McElwee and Ms. Hurst, have, each step of the way, interfered, directly or indirectly, with Great American's rights under the 1999 GAI and 2002 GAI. Such interference includes, but is not limited to:

a. The failure of McElwee Brothers, Mr. McElwee and Ms. Hurst to provide Great American with any collateral security as provided in the 1999 GAI;

b. The failure of McElwee Brothers, Mr. McElwee and Ms. Hurst to make any payment to Great American for its exposure under the Bonds and/or its present actual losses and expenses incurred to date.

c. Mr. McElwee's unilateral filing, purportedly on behalf of the Joint Venture, but on information and belief, without the requisite authority of the joint venturer, Tri-State, of the Notice of Appeal.

d. Mr. McElwee's representation to attorney William Melancon that the Joint Venture is entitled to assert the claims and, on information and belief, enter into, without the consent of Tri-State, a 50% contingency fee arrangement to hire Mr. Melancon to compile and assert against the Corps the claims assigned to Great American.

44.

An actual case or controversy exists between Great American and the Joint Venture, McElwee Brothers, Mr. McElwee and Ms. Hurst regarding the extent, validity and enforcement of the assignment provisions provided in the 1999 GAI concerning the right to challenge the Termination for Default and to assert the Claims and collect all sums or equitable adjustments that may be due or that may hereafter become due in accordance with and/or under the SELA Dwyer Road Contract.

45.

Pursuant to 28 U.S.C. § 2201, Great American is entitled to a declaration that the Great American has been assigned and has the exclusive right, but not the obligation, to assert or otherwise pursue all rights under the contracts growing in any manner out of the Bonds, including, but not limited to the SELA Dwyer Road Contract, and to collect any and all percentages retained or sums that may be due or that may hereafter become due on account of any and all contracts referred to in the Bonds -- including, but not limited to, the SELA Dwyer Road Contract -- and all other contracts, bonded or not, in which the Joint Venture, McElwee and/or Tri-State has an interest and that the Joint Venture, McElwee, Mr. McElwee, Ms. Hurst and Tri-State must refrain from either directly or indirectly interfering with Great American's exercise of its rights under the 1999 GAI and the 2002 GAI, including, but not limited to, refraining from taking any action as to the Termination for Default and/or the Claims except to assist Great American in pursuit of the Claims and the challenge to the Termination for Default.

**COUNT II**

**DECLARATION OF THE GREAT AMERICAN'S RIGHTS OF INDEMNITY UNDER THE 1999 GAI AND THE 2002 GAI**

46.

Great American repeats and realleges each and every allegation contained in paragraphs 1 through 45 as if fully set forth herein.

47.

Despite appropriate demand made by Great American, McElwee Brothers, Mr. McElwee and Ms. Hurst have failed to provide Great American with any collateral security as required by the 1999 GAI. Moreover, McElwee Brothers, Mr. McElwee and Ms. Hurst have failed and refused to make any payment to Great American for its exposure under the Bonds and/or its present actual losses and expenses associated with the Bonds that have been incurred to date.

48.

An actual case or controversy exists between Great American and the Joint Venture, McElwee Brothers, Mr. McElwee and Ms. Hurst regarding the extent to which the Joint Venture, McElwee Brothers, Mr. McElwee and Ms. Hurst are required to indemnify and hold harmless Great American for any and all claims, expenditures, and/or losses of whatsoever kind arising out of or related to the Bonds or the SELA Dwyer Road Contract.

49.

Pursuant to 28 U.S.C. § 2201, Great American is entitled to a declaration that the Joint Venture, McElwee Brothers, Mr. McElwee and Ms. Hurst are required to promptly and fully indemnify and hold Great American harmless and to provide Great American with payment and/or collateral security to secure Great American for any and all claims, expenditures, and/or losses of

whatsoever kind arising out of or related to the Bonds or the SELA Dwyer Road Contract.

**COUNT III**

**DECLARATION OF GREAT AMERICAN'S RIGHTS UNDER THE 1999 GAI AND THE 2002 GAI TO ARRANGE FOR THE COMPLETION OF THE PROJECT AND PURSUE OR SETTLE ALL CLAIMS UNDER THE CONTRACT**

50.

Great American repeats and realleges each and every allegation contained in paragraphs 1 through 49 as if fully set forth herein.

51.

Under the assignment provision of the GAI, Great American owns all rights to the contract subject to the Bonds and Great American wishes to exercise those rights, including the right to challenge the Termination for Default and to seek conversion of same to a termination for convenience and Great American's right to properly compose and support the Claims, submit the Claims to the Corps and receive whatever equitable adjustments are associated with the Claims. Great American admits that, after Great American has paid all obligations under the bonds and it has been fully reimbursed for all payments, attorneys' fees, costs and other expenses, if any funds remain, those funds should be distributed to McElwee Brothers and the Indemnitors, as their respective interests may appear, all in accordance with the GAI's.

52.

On information and belief, the Joint Venture, is continuing to take steps in contravention to the assignments in the 1999 GAI and the 2002 GAI. On information and belief, the Joint Venture, through the unilateral actions of Mr. McElwee and with the assistance of Ms. Hurst, is entering (or has entered) into a 50% contingency fee contract with an attorney to challenge the

Termination for Default and compile, submit and pursue the Claims which have been assigned to Great American. Such actions are unsupported by the assignments clearly provided in the 1999 GAI and the 2002 GAI and are in contravention thereof.

53

An actual case or controversy exists between Great American and the Joint Venture, McElwee Brothers, Mr. McElwee and Ms. Hurst regarding the extent to which Great American has the right and is authorized, at its option and in its sole discretion, with or without exercising any other right or option conferred upon it by law or in the terms of 1999 GAI or the 2002 GAI, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the McElwee Brothers and Indemnitors to complete or arrange for the completion of the same, and that McElwee Brothers and Indemnitors are required to promptly, upon demand, pay Great American all losses, and expenses so incurred.

54.

Pursuant to 28 U.S.C. § 2201, Great American is entitled to a declaration that Great American has the right and is authorized, at its option and in its sole discretion, with or without exercising any other right or option conferred upon it by law or in the terms of 1999 GAI or the 2002 GAI, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the McElwee Brothers and Indemnitors to complete or arrange for the completion of the same, and that McElwee Brothers and Indemnitors are required to promptly, upon demand, pay Great American all losses, and expenses so incurred.

55.

Nonetheless, McElwee Brothers and Indemnitors are obligated to assist Great American in

pursuing the various Claims and these individuals and entities are compelled to do so under the GAI's (not to mention to assist in their own best interest).

**COUNT IV**

**DECLARATION OF GREAT AMERICAN'S RIGHTS UNDER THE 1999 GAI AND THE 2002 GAI TO RECEIVE ALL PROJECT DOCUMENTS**

56.

Great American incorporates by reference all allegations contained in paragraphs 1 through 55.

57.

As McElwee Brothers was managing joint venturer responsible for the performance of the SELA Dwyer Road Project and was, on information and belief, in possession and control of the documentation for the Project, by letter dated July 3, 2003, Great American requested that the Joint Venture produce or prepare documents to assist in the investigation of the status of the work on the Project.

58.

By letter dated July 24, 2003 to counsel for the Joint Venture, counsel for Great American noted that Great American required the production of "all project books and records" to arrange for the continued performance of the construction process. On information and belief, those documents were maintained by McElwee Brothers, or McElwee.

59.

In response to this request, Tri-State provided its express authority and direction for Great American to have full and unfettered access to review and copy the records. McElwee Brothers

and/or McElwee, who maintained those files, initially set unreasonable terms and limited access to those files, thus, in essence refusing to produce the files.

60.

McElwee eventually agreed to make "the joint venture project records available" under certain conditions. On July 29, 2003, McElwee brought one file cabinet of project documents to IKON Office Solutions in New Orleans for copying. Great American was never allowed to make an investigation of the scope of other documents that McElwee might have in his possession.

61.

By letter dated August 12, 2003, counsel for the Joint Venture represented that "all of the project documents in the possession of Mr. McElwee were produced for copying at IKON on July 29, 2003, with the exception of the documents already copied and delivered to Joel Beach [Great American's representative] and the documents remaining on the job."

62.

On information and belief, these were not all of the documents in McElwee Brothers and/or McElwee's possession and McElwee Brothers and/or McElwee continues to produce those documents piecemeal.

63.

McElwee Brothers and/or McElwee has refused, contrary to the duties mandated in the GAI's and despite the continued assistance to Great American of Tri-State and the Davis Indemnitors, to produce all documents in its/his possession that Great American is entitled to receive under the GAI's and that are necessary for Great American to investigate, evaluate and arrange for the completion of the SELA Dwyer Road Project.

64.

An actual case or controversy exists between Great American and the Joint Venture, McElwee Brothers, Mr. McElwee and Ms. Hurst regarding the extent to which Great American is entitled to receive all project documents and/or other financial records of the Joint Venture, McElwee Brothers, Mr. McElwee and/or Ms. Hurst.

65.

Pursuant to 28 U.S.C. § 2201, Great American is entitled to a declaration that the 1999 GAI and the 2002 GAI require that the Joint Venture, McElwee Brothers, Mr. McElwee and Mrs. Hurst provide Great American with reasonable access to the books, records and accounts of McElwee Brothers and the Indemnitors and that any bank depository, materialman, supply house, or other person, firm or corporation when requested by Great American is hereby authorized to furnish to Great American any information requested including, but not limited to, the status of the work under contracts being performed under the SELA Dwyer Road Contract, the condition of the performance of such contract and payments of accounts project documents or other financial records or information and that McElwee Brothers and the Indemnitors be ordered to specifically perform with its obligation to provide Great American with all such documentation.

**COUNT V**

**DECLARATION THAT GREAT AMERICAN IS THE ATTORNEY-IN-FACT**
**AS PROVIDED IN THE 1999 GAI AND THE 2002 GAI**

66.

Great American incorporates by reference all allegations contained in paragraphs 1 through 65.

67.

An actual case or controversy exists between Great American and McElwee Brothers, Tri-State, Mr. McElwee and Ms. Hurst regarding the extent that Great American has been irrevocably nominated, constituted and appointed as the attorney-in-fact for McElwee Brothers and the Indemnitors with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to Great American under the 1999 GAI and the 2002 GAI, and that Great American may, in the name McElwee Brothers and Indemnitors make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by Great American in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be given to Great American under all provisions of the 1999 GAI and the 2002 GAI and that McElwee Brothers and the Indemnitors consented to ratify and confirm all acts and actions taken and done by the Great American as such attorney-in-fact.

68.

Pursuant to 28 U.S.C. § 2201, Great American is entitled to a declaration that Great American has been irrevocably nominated, constituted and appointed as the attorney-in-fact for McElwee Brothers and the Indemnitors with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to Great American under the 1999 GAI and the 2002 GAI, and that Great American may, in the name McElwee Brothers and Indemnitors make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by Great American in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be given to Great American under all provisions of the 1999 GAI and the 2002 GAI and that McElwee Brothers and the Indemnitors

consented to ratify and confirm all acts and actions taken and done by the Great American as such attorney-in-fact .

**COUNT VI**

**DECLARATION Of GREAT AMERICAN'S RIGHTS OF SUBROGATION**

69.

Great American incorporates by reference all allegations contained in paragraphs 1 through 68.

70.

Great American in its capacity as the issuer of the payment bond referred to above has paid the uncontested claims of subcontractors and suppliers in the excess of $840,000.00 to satisfy claims against the Joint Venture. Great American expects to pay additional claims to other subcontractors and suppliers. Such payments are expected to exceed $1,300,000.00.

71.

Pursuant to 28 U.S.C. § 2201, Great American is entitled to a declaration that Great American is entitled to reimbursement of amounts paid and to be paid to subcontractors and suppliers and to be subrogated to the subcontractors' and suppliers' rights against others as a result of the aforesaid payments.

**WHEREFORE**, plaintiff, Great American Insurance Company prays:

1. That this Court issue a judgment declaring that the 1999 GAI and the 2002 GAI are valid and enforceable as to all provision of the agreements, such declaration to include, but be not limited to, a declaration that McElwee Brothers, individually and as joint venturer of the Joint Venture, Mr. McElwee, Ms. Hurst and Tri-State, individually and as joint

venturer of the Joint Venture:

(A) must refrain from either directly or indirectly interfering with Great American's exercise of its rights under the 1999 GAI and the 2002 GAI, including, but not limited to, refraining from taking any action as to the Termination for Default and/or the Claims except to assist Great American in pursuit of those matters;

(B) must indemnify, exonerate and keep Great American indemnified against all loss, cost, expenses and attorneys' fees, and all other liabilities arising out of the Great American's execution of the Bonds to the United States of America, including requiring McElwee Brothers, Mr. McElwee, Ms. Hurst and Tri-State to provide to Great American sufficient collateral in support of the potential exposure and actual payments that Great American has made, and continues to make under the Bonds;

(C) must each specifically perform their obligations under the GAI, including, but not limited to, producing all construction and financial (costs and expenditure) records, all correspondence and other all records including those necessary to allow Great American to arrange for the completion of the work on the SELA Dwyer Road Project, to prepare for the appeal of the Termination for Default and to compile and submit Claims for equitable adjustment on the Project and to assist Great American in pursuit of the various claims;

(D) have irrevocably nominated, constituted and appointed Great American as the attorney-in-fact for McElwee Brothers and the Indemnitors with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to Great American under the 1999 GAI and the 2002 GAI, and that Great American

may, in the name McElwee Brothers and Indemnitors make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by Great American in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be given to Great American under all provisions of the 1999 GAI and the 2002 GAI and that McElwee Brothers and the Indemnitors consented to ratify and confirm all acts and actions taken and done by the Great American as such attorney-in-fact and to assist Great American in pursuit of the various claims;

(E) are required to reimburse Great American for all amounts paid and to be paid to subcontractors and suppliers and to be subrogated to the subcontractors' and suppliers' rights against others as a result of the aforesaid payments;

(F) Great American be awarded judgment against defendants, and each of them, for such sum as may be or hereafter be ascertained or required to indemnify the plaintiff, including for costs and disbursements and all reasonable attorneys' fees; and,

(G) must cooperate with Great American in pursuing the various claims in this matter.

2. A temporary restraining order issue, according to law, to defendants, McElwee Brothers, individually and as joint venturer of the Joint Venture, Mr. McElwee, Ms. Hurst and Tri-State, individually and as joint venturer of Joint Venture:

(A) requiring that each refrain from either directly or indirectly interfering with Great American's exercise of its rights under the 1999 GAI and the 2002 GAI, including, but not limited to, refraining from taking any action as to the Termination for

Default and/or the Claims except to assist Great American in pursuit of those matters;

(B) requiring that each indemnify, exonerate and keep Great American indemnified against all loss, cost, expenses and attorneys' fees, and all other liabilities arising out of the Great American's execution of the Bonds to the United States of America, including requiring McElwee Brothers, Mr. McElwee, Ms. Hurst and Tri-State to provide to Great American sufficient collateral in support of the potential exposure and actual payments that Great American has made, and continues to make under the Bonds;

(C) requiring that each specifically perform their obligations under the GAI, including, but not limited to, producing all construction and financial (costs and expenditure) records, all correspondence and other all records including those necessary to allow Great American to arrange for the completion of the work on the SELA Dwyer Road Project, to prepare for the appeal of the Termination for Default and to compile and submit Claims for equitable adjustment on the Project and to assist Great American in pursuit of the various claims;

(D) requiring that each refrain from either directly or indirectly interfering with the irrevocable nomination and appointment of Great American as the attorney-in-fact for McElwee Brothers and the Indemnitors with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to Great American under the 1999 GAI and the 2002 GAI, and that Great American may, in the name McElwee Brothers and Indemnitors make, execute, and deliver any and all

additional or other assignments, documents or papers deemed necessary and proper by Great American in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be given to Great American under all provisions of the 1999 GAI and the 2002 GAI and that McElwee Brothers and the Indemnitors consented to ratify and confirm all acts and actions taken and done by the Great American as such attorney-in-fact;

(E) requiring that each reimburse Great American for all amounts paid and to be paid to subcontractors and suppliers and to be subrogated to the subcontractors' and suppliers' rights against others as a result of the aforesaid payments;

(F) that the Court award Great American judgment against defendants, and each of them, for such sum as may be or hereafter be ascertained or required to indemnify the plaintiff, including for costs and disbursements and all reasonable attorneys' fees; and,

(G) requiring that each cooperate with Great American in pursuing the various claims in this matter.

3. A preliminary injunction issue, according to law, to defendants, McElwee Brothers, individually and as joint venturer of the Joint Venture, Mr. McElwee, Ms. Hurst and Tri-State, individually and as joint venturer of Joint Venture:

(A) requiring that each refrain from either directly or indirectly interfering with Great American's exercise of its rights under the 1999 GAI and the 2002 GAI, including, but not limited to, refraining from taking any action as to the Termination for Default and/or the Claims except to assist Great American in pursuit of those

matters;

(B) requiring that each indemnify, exonerate and keep Great American indemnified against all loss, cost, expenses and attorneys' fees, and all other liabilities arising out of the Great American's execution of the Bonds to the United States of America, including requiring McElwee Brothers, Mr. McElwee, Ms. Hurst and Tri-State to provide to Great American sufficient collateral in support of the potential exposure and actual payments that Great American has made, and continues to make under the Bonds;

(C) requiring that each specifically perform their obligations under the GAI, including, but not limited to, producing all construction and financial (costs and expenditure) records, all correspondence and other all records including those necessary to allow Great American to arrange for the completion of the work on the SELA Dwyer Road Project, to prepare for the appeal of the Termination for Default and to compile and submit Claims for equitable adjustment on the Project and to assist Great American in pursuit of the various claims;

(D) requiring that each refrain from either directly or indirectly interfering with the irrevocable nomination and appointment of Great American as the attorney-in-fact for McElwee Brothers and the Indemnitors with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to Great American under the 1999 GAI and the 2002 GAI, and that Great American may, in the name McElwee Brothers and Indemnitors make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper

by Great American in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be given to Great American under all provisions of the 1999 GAI and the 2002 GAI and that McElwee Brothers and the Indemnitors consented to ratify and confirm all acts and actions taken and done by the Great American as such attorney-in-fact;

(E) requiring that each reimburse Great American for all amounts paid and to be paid to subcontractors and suppliers and to be subrogated to the subcontractors' and suppliers' rights against others as a result of the aforesaid payments;

(F) that the Court award Great American judgment against defendants, and each of them, for such sum as may be or hereafter be ascertained or required to indemnify the plaintiff, including for costs and disbursements and all reasonable attorneys' fees; and,

(G) requiring that each cooperate with Great American in pursuing the various claims in this matter.

4. Thereafter, permanent mandatory or prohibitory injunctions issue in the form and substance of the preliminary injunction prayed for above, immediately and permanently requiring defendants, McElwee Brothers, individually and as joint venturer of the Joint Venture, Mr. McElwee, Ms. Hurst and Tri-State, individually and as joint venturer of Joint Venture to:

(A) refrain from either directly or indirectly interfering with Great American's exercise of its rights under the 1999 GAI and the 2002 GAI, including, but not limited to, refraining from taking any action as to the Termination for Default and/or the Claims except to assist Great American in pursuit of those matters;

(B) indemnify, exonerate and keep Great American indemnified against all loss, cost, expenses and attorneys' fees, and all other liabilities arising out of the Great American's execution of the Bonds to the United States of America, including requiring McElwee Brothers, Mr. McElwee, Ms. Hurst and Tri-State to provide to Great American sufficient collateral in support of the potential exposure and actual payments that Great American has made, and continues to make under the Bonds;

(C) each specifically perform their obligations under the GAI, including, but not limited to, producing all construction and financial (costs and expenditure) records, all correspondence and other all records including those necessary to allow Great American to arrange for the completion of the work on the SELA Dwyer Road Project, to prepare for the appeal of the Termination for Default and to compile and submit Claims for equitable adjustment on the Project and to assist Great American in pursuit of the various claims;

(D) refrain from either directly or indirectly interfering with the irrevocable nomination and appointment of Great American as the attorney-in-fact for McElwee Brothers and the Indemnitors with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to Great American under the 1999 GAI and the 2002 GAI, and that Great American may, in the name McElwee Brothers and Indemnitors make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by Great American in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be given to Great American under all provisions

of the 1999 GAI and the 2002 GAI and that McElwee Brothers and the Indemnitors consented to ratify and confirm all acts and actions taken and done by the Great American as such attorney-in-fact;

(E) reimburse Great American for all amounts paid and to be paid to subcontractors and suppliers and to be subrogated to the subcontractors' and suppliers' rights against others as a result of the aforesaid payments;

(F) that the Court award Great American judgment against defendants, and each of them, for such sum as may be or hereafter be ascertained or required to indemnify the plaintiff, including for costs and disbursements and all reasonable attorneys' fees; and,

(G) cooperate with Great American in pursuing the various claims in this matter.

5. An award to plaintiff for all costs of this action and the reasonable attorneys' fees incurred by the plaintiff necessary to prosecute this action to trial, at trial and on appeal;

6. Pre-judgment and post-judgment interest; and,

7. Further, plaintiff prays for all such other legal, equitable and general relief to which it may be entitled.

Respectfully submitted,

Lloyd N. Shields (La. Bar # 12022)
Daniel Lund, III (La. Bar # 19014)
Stuart G. Richeson (La. Bar # 23912)
Elizabeth L. Gordon (La. Bar # 21619)
Shields Mott Lund L.L.P.
650 Poydras Street, Suite 2400
New Orleans, Louisiana 70130
Telephone: (504) 581-4445
Telecopy: (504) 581-4440

Attorneys for
Great American Insurance Company

W:\Clients\33405-19\Pleadings\Complaint 10-6.wpd