UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | CIVIL ACTION |
| | § | |
| v. | § | NO. 08-1633 |
| | § | |
| US Bancorp; BrownGreer, PLC; and John Does | § | SECTION L, MAG. 3 |
| | § | |
| | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |
| | § | |
| | § | In Relation to: MDL Docket No. 1657 |
| | § | |
| | § | In Re: VIOXX |
| | § | |
| | § | PRODUCTS LIABILITY LITIGATION |

**PLAINTIFFS' AVMED, INC. ET AL. REPLY TO THE PLAINTIFF'S STEERING COMMITTEE'S AND THE NEGOTIATING PLAINTIFF'S COUNSEL'S AMICUS CURIAE OPPOSITION TO THE MOTION FOR TEMPORARY RESTRAINING <u>ORDER AND PRELIMINARY INJUNCTION</u>**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Continental Oil v. Frontier Refinery*, 338 F.2d 780 (10th Cir. 1964) .......................................... 6

*Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300 (5th Cir. 1978) ................. 6, 7

*Crowley v. Local No. 82, Furniture & Piano*, 679 F.2d 978 (1st Cir. 1982),
    *rev'd on other grounds*, 467 U.S. 526 (1984) .................................................................... 6

*Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126 (2d Cir. 1997) ........................................ 6

*Ferguson v. Tabah*, 288 F.2d 665 (2d Cir. 1961) .................................................................. 6

*International Controls v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) ............................................ 6

*Kaepa, Inc. v. Achilles, Corp.*, 76 F.3d 624 (5th Cir. 1996) .................................................. 6

*People ex rel. v. Van De Kamp v. Tahoe Regional Plan*, 766 F.2d 1319
    (9th Cir. 1985) .................................................................................................................. 6

*Urbain v. Knapp Brothers Manufacturing*, 217 F.2d 810 (6th Cir. 1954) ............................ 6

*Wayne Chemical v. Columbus Agency Serv. Corp.*, 567 F.2d 692 (7th Cir. 1977) .............. 6

## FEDERAL STATUTES

Fed. R. Civ. P. 65(c) ..................................................................................................... 5, 9, 10

*EOG Resources Inc. v. Beach*, 54 Fed. Appx. 592, 1 (5th Cir. 2002) .................................. 6

In January 2008, just two months after the Vioxx settlement was announced, the Plaintiff Health Plans contacted each member of the PSC and every personal injury lawyer whom they could identify as representing Vioxx claimants and asked those attorneys for their cooperation in resolving the Plaintiffs' reimbursement claims. None of these lawyers responded. Facing no other choice, the Plaintiffs filed this underlying lawsuit in April 2008, and in so doing pointed out that the PSC had ignored their concerns and had specifically crafted the Vioxx settlement to compromise their rights. Again, the PSC was silent in response.

Finally, however, the Plaintiffs' motion for preliminary injunctive relief got the attention of the PSC. And, in a tacit admission that the Plaintiffs' motion has merit, the PSC in its amicus brief proposes to the Plaintiffs concessions that the PSC has never before offered. Specifically, on pages 8 and 9 of its brief, the PSC suggests that, rather than having BrownGreer provide to the Plaintiffs the name and identifying information of every participant in the Vioxx settlement, the Plaintiffs might instead transmit to BrownGreer information relating to their plan members from which BrownGreer could then identify matches. As discussed below, <u>Plaintiffs accept, in principle, the PSC's proposal</u>. Indeed, had the PSC simply engaged with the Plaintiffs earlier, this motions practice might have been avoided.[1]

---

[1] The PSC asserts in its motion that the Plaintiffs somehow delayed in seeking relief relating to the Vioxx Settlement. *See* PSC Brf., at 2 ("News coverage of Vioxx litigation was widespread and cresendoed with the November 9, 2007 announcement of the NPC's Settlement Agreement with Merck. AvMEd and it constituents were never heard from and apparently inactive during this time. Only months after the settlement was announced, on April 14, 2008, did AvMed initiate this action . . . ."). But the PSC here ignores – now for the second time – the Plaintiffs' outreach to the PSC and every other Vioxx plaintiffs' lawyer in January 2008. *See* Fischer Affidavit. What's more, the PSC's delay argument directly contradicts the arguments it presented to this Court in March when opposing HRI's motion for Rule 27 discovery. Although it now contends that these Plaintiffs waited too long to assert their reimbursement rights, when it opposed the HRI motion it claimed that HRI was litigating too <u>early</u> because the Vioxx settlement fund had not yet been created. See 3/25/08 Hearing Tr., at 7-8 (Mr. Levin arguing) ("At some point in time, there's going to be funds that are created. They're going to be in certain repositories, but not what we have here now. There's not even a claim under ERISA here because nobody has control of those funds. The plaintiff doesn't have it. The plaintiff's attorney doesn't have it. Under all of the ERISA cases, there has to be a specific fund that's an equitable cause of action, and it just doesn't exist.").

1

Although the PSC's amicus brief thus contains a tacit admission that Plaintiffs' claims are meritorious, the PSC still hopes to use a bond to prevent Vioxx claimants from having to satisfy any private health care liens. So the PSC proposes that Plaintiffs only obtain their requested relief upon the posting of outrageously high bonds. But, as the Fifth Circuit has recognized, there is no basis for requiring a bond to secure the payment of monies that are already held in escrow. The only point of such a bond would be to deter the plaintiff from obtaining relief, not to protect any innocent parties. Considering the circumstances here, this Court should dispense with any bond requirement.

## I.     Plaintiffs Agree in Principle with the PSC Proposal

Before the Plaintiffs filed their motion for preliminary injunctive relief, neither the PSC nor BrownGreer had ever offered to cooperate with the Plaintiffs in resolving their reimbursement claims. As such, Plaintiffs had no choice but to move for a preliminary injunction and demand the most extreme form of relief – that BrownGreer be ordered to provide to Plaintiffs all the names and identifying information of the Vioxx claimants, so that the Plaintiffs themselves could match that information with their membership data.

The PSC responds to Plaintiffs' injunctive request by raising a host of (overblown) privacy and process concerns.[2] After doing so, however, the PSC then appears to suggest two options for a compromise. First, the PSC indicates that this Court could direct that the Plaintiffs send names of all of their potential Vioxx claimants to BrownGreer, who would then identify to the Plaintiffs the attorneys for the claimants in question, with whom Plaintiffs could then correspond to resolve their liens. *See* PSC Br., at 7-8. Alternatively, the PSC suggests that

---

[2] The Settlement Agreement, for example, itself provides for a broad number of circumstances in which claimant information may be released, including disclosure "to appropriate Persons to the extent necessary to process Program Claims or provide benefits under this Agreement" or "as may be required by law," Settlement Agreement, § 15.1, both of which easily apply under these circumstances.

2

Plaintiffs could provide data covering their membership to BrownGreer, who would then submit to Plaintiffs searchable information relating to matches with the Vioxx claimants. *Id.* at 8.

In light of the PSC's suggestions, Plaintiffs now propose a form of relief similar to the PSC's second option. The Plaintiffs would provide a narrower set of data to BrownGreer – namely, an identification of those plan members for whom Plaintiffs paid for a Vioxx prescription.[3] BrownGreer would then perform a match – the <u>reasonable</u> expense of which Plaintiffs would reimburse – to determine which settlement participants were members of the Plaintiffs' health plans. So as to allow the Plaintiffs time to document and assert their equitable liens, BrownGreer should then provide Plaintiffs 30 days notice before making a settlement distribution to any matched Vioxx claimant. During this period, Plaintiffs may assert liens which, if necessary, will be held back from distribution pending a determination of their validity in this Court.

The principal difference between the Plaintiffs' revised data proposal and the PSC's proposal is that the PSC would require that the Plaintiffs somehow prove, before receiving any information from BrownGreer, that "each of [their] constituent plans indeed have enforceable plan provisions." *Id.* at 9. Perhaps this is a caveat intended by the PSC to make its compromise a non-compromise, but this suggested process is infeasible. According to the affidavits filed last week, the Plaintiffs in this case collectively administer more than 1.1 million employer plans (covering far in excess of 100 million Americans). Each of those plans has its own set of documents, which, for the sake of argument, average 30 pages. Thus, to prove that "each of [their] constituent plans indeed have enforceable plan provisions," the Plaintiffs would have to

---

[3] As indicated in Plaintiffs' original motion, this narrower set of data would exclude certain potential reimbursement claims, as there are individuals who may have received Vioxx-related medical care, but not Vioxx prescription benefits, from the Plaintiffs. Nevertheless, so as to further forestall the PSC's arguments about delay, Plaintiffs propose as a compromise that BrownGreer process this much narrower data set.

3

besiege this Court with more than 30 million pages of plan documents (per plan year). And, of course, reviewing all of those tens of millions of pages of documents would be an enormous waste, considering that the estimated 15,000 settlement participants who are also the Plaintiffs' plan members would belong to only a relatively small subset of the Plaintiffs' 1.1 million plans.

The far more sensible and efficient process would be for BrownGreer to perform the data match and identify to the Plaintiffs the names/social security numbers of each plan member. Plaintiffs would then provide the supporting documentation for each member, including the appropriate plan language and medical data for that individual. That individual's lawyer would, of course, still have the opportunity to dispute either the Plan's right to reimbursement or the amount of the Plan's reimbursement claim.

Considering the compromise they have already proposed, the PSC can have no valid complaint to this suggested process. By submitting affidavits indicating that each Plaintiff has contractual reimbursement language with its plan members, the Plaintiffs have satisfied whatever showing they needed to make of a substantial <u>likelihood</u> of ultimate success on their individual reimbursement claims. And, to the (unlikely) extent that there is a deficiency in any particular Plaintiff's plan language, that deficiency is more appropriately litigated in the individualized context of a lien on a specific settlement participant. Moreover, this process raises none of the privacy concerns identified by the PSC. BrownGreer would only be identifying to the Plaintiffs the fact that one of the Plaintiffs' own members is a settlement participant. Other than the non-confidential (but otherwise non-ascertainable) fact of settlement participation, this would not entail providing to the Plaintiffs any information that they would not already possess.

**II.     Imposing a Bond Greater than the Potential Economic Losses Flowing from a Wrongful Injunction is an Abuse of Discretion.**

4

Federal Rule of Civil Procedure 65(c) does not provide district courts with unfettered discretion to impose security in any amount proposed. Rather, the rule and the growing body of case law interpreting it have uniformly required that a bond, if any, must be tied to the amount necessary "to pay the costs and damages sustained by any party found to have been wrongfully enjoined." FED. R. CIV. P. 65(c). Accordingly, the "maximum bond assessable" – which both Defendants and the PSC urge this Court to impose – is the amount of money that will be lost if an injunction turns out to have been wrongfully imposed.

In this case, neither Defendants nor the PSC have come forward with a shred of evidence suggesting that economic losses will ensue to <u>any</u> claimant to the Vioxx settlement, even in the unlikely event that enjoining distributions (1) becomes necessary at all, and (2) turns out to have been wrongful. As an initial matter, in light of the PSC's compromise and the proposal outlined above, the Plaintiffs could identify for BrownGreer the identities of their plan members <u>before</u> the initial distribution, thereby eliminating any realistic possibility that a temporary injunction would impact claimants who are not the Plaintiffs' plan members. But, even assuming for the sake of argument the unlikely doomsday scenario put forward by the PSC and Defendants – whereby distributions to all 50,000 Vioxx claimants are enjoined for "six months time" (*see* Defendants' Opp., at 31) – there is no authority for imposing a bond under Rule 65.

### A. Bonding Settlement Funds Held in Escrow is Contrary to Law

This point is dispositive: neither Defendants nor the PSC can demonstrate potential economic losses flowing to claimants whose distributions may (even theoretically) be temporarily enjoined pending resolution of the equitable liens at issue here. To the contrary, if funds are awarded to the Plaintiffs in this case, it will be because, and to the extent that, there has been a final resolution of Plaintiffs' reimbursement rights. In the interim, <u>any settlement</u>

5

proceeds whose distribution is enjoined can remain as they were: in the possession of Defendants, earning interest. The settlement proceeds are easily maintained by BrownGreer in an interest bearing escrow account like that established by the Master Settlement Agreement to maintain the PSC's "attorney's fees and common benefit" fees, allowing claimants to receive the proceeds, with interest, upon final distribution. (*See* MSA, § 9.2.3.)[4] Quite simply, this case presents nothing to bond against.

Under these circumstances, this Court does not write on a blank slate. Numerous district and appellate courts have wrestled with the proper amount of a bond where no specific economic losses could be shown. Almost without exception, courts have dispensed with security on these facts.[5] And the Fifth Circuit has gone one step further, explaining in *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302 (5th Cir. 1978), that a bond is particularly unnecessary where, as here, the funds in dispute are held in escrow pending a final determination on the merits of who should receive them. In *Corrigan* – where an injunction issued in the context of an interpleader action – the Fifth Circuit stated:

---

[4] The PSC cannot be heard to argue that the interest accruing on the funds while in US Bancorp's possession would somehow be inadequate. If so, then the PSC would not have properly discharged its duty in selecting US Bancorp as the settlement escrow agent.

[5] *See, e.g., Crowley v. Local No. 82, Furniture & Piano*, 679 F.2d 978 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984) (upholding denial of bond where defendants faced low burden from absence of security); *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) ("Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement 'where there has been no proof of likelihood of harm . . . .'"); *International Controls v. Vesco*, 490 F.2d 1334, 1356 (2d Cir.1974) (noting that "the district court may dispense with security where there has been no proof of likelihood of harm to the party enjoined") (citations omitted); *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974) (citing *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961) ("[T]he district court may dispense with security where there has been no proof of likelihood of harm to the party enjoined.")); *Urbain v. Knapp Brothers Mfg.*, 217 F.2d 810 (6th Cir. 1954) (no bond required where defendant would not appear to face material damage); *Wayne Chemical v. Columbus Agency Serv. Corp.*, 567 F.2d 692 (7th Cir. 1977) (no bond required from plaintiff); *People ex rel. v. Van De Kamp v. Tahoe Regional Plan*, 766 F.2d 1319 (9th Cir. 1985) (no bond required where plaintiff would be denied access to judicial review if court did not properly exercise its discretion to dispense with security requirement); *Continental Oil v. Frontier Refinery*, 338 F.2d 780 (10th Cir. 1964) (no bond required where likelihood of harm to defendant is absent); *see also EOG Resources Inc. v. Beach*, 54 Fed. Appx. 592, *1 (5th Cir. 2002) ("In this circuit, however, courts have the discretion to issue injunctions without security."); *Kaepa, Inc. v. Achilles, Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (affirming district court's decision to "elect to require no security at all").

6

> There was no reason for the trial court, in an interpleader action, to require additional security. The coffee [the item in dispute] was held in the court's registry. When it was sold, for what was then its fair market value, the entire purchase price was retained.

*Id.* at 302-03. This case is similar to an interpleader action, as the settlement proceeds in dispute are held in escrow, and the only question at issue is who should receive the portions attributable to medical expenses that Plaintiffs' paid on the settling claimants' behalf.

The Fifth Circuit clarified in *Corrigan* that the concept of imposing a bond under Rule 65 of the Federal Rules of Civil Procedure makes absolutely no sense in this context. The *Corrigan* court explained that, even assuming "the interpleader injunction is . . . subject to the requirements of Rule 65," that Rule appropriately allows district courts to "elect to require no security at all" – a result the Fifth Circuit found especially proper where the funds were maintained in registry, or (as here) in escrow. Indeed, this case presents even stronger facts for dispensing with security than the interpleader action in *Corrigan*. Whereas the coffee in *Corrigan* was presumably not earning interest while in the court's registry, here the Master Settlement Agreement already contemplates a process for maintaining certain proceeds in an <u>interest bearing</u> escrow account (§ 9.2.3), which process could be easily applied to enjoined distributions.

Accordingly, the Plaintiffs' request for injunctive relief creates no danger that Vioxx claimants will ultimately be denied settlement monies to which they are entitled (given that they are <u>not</u> entitled to monies covered by Plaintiffs' reimbursement rights), and any delay occasioned by Plaintiffs' motion can be accounted for by interest applied to the settlement funds. Thus, where as here there is nothing to bond against, Defendants and the PSC should not be allowed to misuse the bond as a procedural device for deterring Plaintiffs from pursuing reimbursement rights to which they are plainly entitled.

7

### B. Calculating a Bond at this Stage is Premature and thus Arbitrary

Even if this Court were to disregard this extensive body of case law to determine that a bond is proper prior to enjoining distributions, any ruling on the amount of a bond is grossly premature and – because it would be entered on an incomplete record – necessarily arbitrary. First, the need to halt any distributions is entirely speculative at this point. Plaintiffs have agreed in principle with the PSC's proposal for identifying claimants who may be subject to Plaintiffs' reimbursement rights. There can be little doubt that – with this Court's direction and all parties' prompt cooperation – this process can be completed prior to the initial distribution (an event that both Defendants and the PSC have repeatedly emphasized is still months away).[6] Indeed, all indications are that Plaintiffs' liens could be resolved entirely without a need to delay rightful distributions to any claimant.

But at a minimum the identification process outlined above will allow Plaintiffs, prior to the initial distribution, to outline for the Court the number of claimants for whom Plaintiffs did, in fact, pay medical expenses, thereby <u>dramatically</u> narrowing the scope of distributions requiring a temporary injunction. This Court should take up the bond issue on a full record – after it is apparent the extent of settlement distributions, if any, that may be subject to delay.

Because the identification process outlined above can in all likelihood be completed prior to the initial distribution, there is no realistic probability that the three non-covered individuals identified by the PSC as in dire circumstances awaiting their settlement check – or any other non-covered Vioxx claimants for that matter – will experience any delay whatsoever. As such, all of the arguments put forward by Defendants and the PSC concerning the need to protect non-covered Vioxx claimants with the "maximum bond assessable" are irrelevant, bearing no

---

[6] *See* Transcript of 6/11/2008 Telephone Conference, at 10:20-11:3, 13:4-10.

relationship whatsoever to the matter before this Court – namely, "the costs and damages sustained by any party found to have been wrongfully enjoined." FED. R. CIV. P. 65(c).

But to assume, at this stage, that distributions will be delayed, and to calculate the amount of a bond (as both the PSC and Defendants have suggested) by reference to the <u>50,000 total claimants to the Vioxx settlement</u> is plainly an abuse of discretion. It is premature and it improperly sweeps, within the realm of bondable costs, losses as to approximately 35,000 claimants who will in all probability never even experience a delay, much less a loss of funds by virtue of the relief sought here. (*See* Melnick Decl., at 4) Thus, at a minimum, this Court should decline to enter a bond until it is clear (1) whether any distributions will be enjoined, and (2) the number and amount of claimant distributions likely to be affected.

Nevertheless, and despite all of this, the PSC and Defendants in this action have jointly requested that this Court impose "the maximum bond assessable," which they posit is in excess of a virtually unprecedented $2.4 billion, or "a minimum" of approximately $85 million. (*See* PSC Opp., at 12-13, Defendants' Opp., at 28-31)  This outrageous amount is urged now ostensibly to protect against what Defendants suggest is a complete derailment of the August settlement distribution. But just two weeks ago, when the issue was Plaintiffs' Motion for Temporary Restraining Order, Defendants represented precisely <u>the opposite</u>:

> Mr. Irwin: [F]inally, Your Honor, we would point out that the first pilot distributions are not scheduled to take place until August, at the earliest, and probably later in the month in all likelihood. So Your Honor could take this up, let's say for example, in July at the July hearing where all parties would have an opportunity to provide input to Your Honor <u>and it would not interfere with the pilot distribution schedule that might occur otherwise in August or later in August</u>.

(Transcript of June 11, 2008 Telephone Conference, at 10:20-11:3.) This Court denied Plaintiffs' request for a TRO, citing the fact that ample time remained before distributions were

9

contemplated. (*Id.* at 17:19-22.) <u>The distribution date has not changed</u>. Defendants cannot be heard to oppose immediate relief on the grounds that it is premature, only to turn around and scream prejudice from delays they urged.

Moreover, the PSC conveniently ignores that – even assuming the unlikely possibility that the identification and matching process outlined above could take the full six months predicted by Defendants – absolutely <u>no</u> distributions would have been delayed had the PSC offered, in response to Plaintiffs' repeated demands dating back to January 2008, to engage in the identification process it offers now. In short, the PSC's concerns about delay ring quite hollow.

Defendants' purported justification for imposing "a minimum" $85 million bond is equally suspect: a need to preserve accrued interest. (Defendants' Opp., at 28.) Interest on delayed distributions is hardly a bondable cost, and can be preserved without complication in precisely the same manner it is preserved for the PSC's fees in the Master Settlement Agreement: in an interest bearing escrow account. (*See* MSA, § 9.2.3) In the unlikely event that distributions are delayed, claimants experiencing a delay would receive their distributions with interest, thereby eliminating the concern that Defendants suggest as a basis for calculating an $85 million "minimum" bond. (*See* Defendants Opp., at 31.)

In sum, this Court should follow precedent and dispense with security on the grounds that there has been no showing of economic loss to secure against. But in no event should this Court impose a bond at this stage, before the amount to be bonded can even remotely be ascertained.

And this Court should decline the invitation to impose a bond that bears no relationship to Rule 65(c) and serves no purpose other than to deter a party from pursuing its rights.

DATED this 25th day of June, 2008

SUSMAN GODFREY L.L.P.

/s/Lexie White
Lexie G. White
Louisiana State Bar No. 29478
Neal S. Manne
Texas State Bar No. 12937980
William Christopher Carmody
Texas State Bar No. 03823650
Joseph S. Grinstein
Texas State Bar No. 24002188
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

OF COUNSEL:

Richard W. Cohen
Peter D. St. Phillip, Jr.
Gerald Lawrence
LOWEY DANNENBERG COHEN & HART, P.C.
1 North Broadway, 5th Floor
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

Mark D. Fischer
Mark M. Sandmann
Jeffrey C. Swann
RAWLINGS & ASSOCIATES PLLC
1 Eden Parkway
LaGrange, KY 40031
Telephone: (502) 587-1279
Facsimile: (502) 584-8580

Attorneys for Plaintiffs

## **CERTIFICATION OF SERVICE**

I hereby certify that the above and foregoing REPLY TO THE PLAINTIFF'S STEERING COMMITTEE'S AND THE NEGOTIATING PLAINTIFF'S COUNSEL'S AMICUS CURIAE OPPOSITION TO THE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 25th day of June, 2008.

                                                               _/s/Lexie White_
                                                               Lexie G. White
                                                               Louisiana State Bar No. 29478
                                                               Attorney for Plaintiffs
                                                               SUSMAN GODFREY L.L.P.
                                                               1000 Louisiana Street, Suite 5100
                                                               Houston, Texas 77002
                                                               Telephone: (713) 651-9366
                                                               Facsimile: (713) 654-6666
                                                               lwhite@susmangodfrey.com