```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


IN RE:  VIOXX PRODUCTS          *    Docket MDL 1657-L
LIABILITY LITIGATION            *
                                *    June 11, 2008
THIS PERTAINS TO:  08-1633      *
                                *
AVMED, INC., ET AL.             *    2:00 p.m.
                                *
v.                              *
                                *
BROWNGREER PLC; U.S. BANCORP,   *
INC,; AND JOHN DOES             *
* * * * * * * * * * * * * * * * *


        MOTION HEARING FOR TRO AND PRELIMINARY INJUNCTION
              BEFORE THE HONORABLE ELDON E. FALLON
                   UNITED STATES DISTRICT JUDGE


APPEARANCES:


For AvMed, Inc.:              Susman Godfrey
                              BY:  JOSEPH S. GRINSTEIN, ESQ.
                              BY:  WILLIAM C. CARMODY, ESQ.
                              BY:  ALEXANDRA GISELLE WHITE, ESQ.
                              BY:  NEAL S. MANNE, ESQ.
                              1000 Louisiana Street
                              Suite 5100
                              Houston, Texas 77002


                              Lowey Dannenberg Cohen & Hart,
                                P.C.
                              BY:  GERALD LAWRENCE, ESQ.
                              One North Broadway
                              5th Floor
                              White Plains, New York  10601
```

```
 1   APPEARANCES:

 2
     For AvMed, Inc.:              Rawlings & Associates, PLLC
 3                                 BY:  MARK M. SANDMANN, ESQ.
                                   One Eden Parkway
 4                                 LaGrange, KY 40031

 5


 6
     For the Plaintiffs:           Herman, Herman, Katz & Cotlar
 7                                 BY:  LEONARD DAVIS, ESQ.
                                   820 O'Keefe Avenue
 8                                 New Orleans, Louisiana 70113

 9


10                                 Levin, Fishbein, Sedrad & Berman
                                   BY:  ARNOLD LEVIN, ESQ.
11                                 510 Walnut Street
                                   Suite 500
12                                 Philadelphia, Pennsylvania  19106

13

14   For BrownGreer and            Irwin Fritchie Urquhart
     US Bancorp, Inc.:               & Moore
15                                 BY:  JAMES B. IRWIN, ESQ.
                                   BY:  MONIQUE GARSAUD, ESQ.
16                                 400 Poydras Street, Suite 2700
                                   New Orleans, Louisiana 70130

17

18
                                   O'Melveny & Meyers, LLP
19                                 BY:  JOHN H. BEISNER, ESQ.
                                   1625 Eye Street
20                                 Washington, DC 20006

21

22                                 Williams & Connolly, LLP
                                   BY:  DOUGLAS R. MARVIN, ESQ.
23                                 725 Twelfth Street, NW
                                   Washington, DC 20005
24

25
```

1    APPEARANCES:

2
     Official Court Reporter:        Jodi Simcox, RMR, FCRR
3                                    500 Poydras Street
                                     Room B-406
4                                    New Orleans, Louisiana 70130
                                     (504) 589-7780
5

6

7    Proceedings recorded by mechanical stenography, transcript

8    produced by computer.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

(June 11, 2008)

THE COURT: Good afternoon. This is Judge Fallon. Who do I have?

MR. LEVIN: Good afternoon, Your Honor. Arnold Levin.

MR. DAVIS: Leonard Davis.

MR. IRWIN: Jim Irwin and Monique Garsaud.

MS. WHITE: Your Honor, this is Lexie White.

THE COURT: Okay.

MR. MANNE: Neal Manne.

MR. GRINSTEIN: Joe Grinstein.

THE COURT: Would you spell the last one for me?

MR. GRINSTEIN: Joe Grinstein, G-R-I-N-S-T-E-I-N.

THE COURT: Okay.

MR. CARMODY: Bill Carmody with Susman Godfrey is here, Your Honor.

MR. BEISNER: John Beisner, Your Honor.

MR. MARVIN: And Doug Marvin.

MR. LAWRENCE: Gerald Lawrence, Your Honor.

THE COURT: Wait, wait. Who's the last one?

MR. LAWRENCE: Gerald Lawrence, Your Honor, Lowey Dannenberg for the plaintiffs.

THE COURT: All right.

MR. SANDMANN: Mark Sandmann for the plaintiffs,

```
 1  Rawlings and Associates.
 2          THE COURT:  Anyone else?
 3          Okay.  I have before me a motion seeking a TRO
 4  and/or a preliminary injunction.
 5          The plaintiff's seek a TRO directing the
 6  disclosure of plaintiffs' plan members who are participating in
 7  the settlement in order to allow the plaintiffs a period of
 8  time in which to assert their equitable reimbursement rights as
 9  they feel they have a right for medical payments that they have
10  made to their plan members.
11          This whole matter grows out of the Vioxx
12  litigation.  The plaintiffs and Merck have entered into a
13  settlement program whereby the plaintiffs are to receive
14  certain monies provided they are successful in navigating
15  various gates.
16          The plaintiffs take the position that they have
17  advanced some medical care and/or advanced sums of money in
18  connection with either the purchase or use of Vioxx and that
19  they're entitled to recoup those funds.
20          The Court just received the motion.  Because
21  it's a TRO, I take the opportunity to address it immediately.
22  I'll hear from the parties at this time.  Let me hear from the
23  plaintiffs first.
24          MR. GRINSTEIN:  Your Honor, this is Joe Grinstein.
25  I'm with Susman Godfrey and I'm representing the plaintiffs in
```

1   this action.
2           Your Honor, the plaintiffs in this action
3   collectively represent approximately 70 percent of private
4   health care America.  In other words, 70 percent of all the
5   individuals in the United States who have private health
6   insurance are covered by the plans for plaintiffs in this
7   action.
8           We have been undertaking a process since shortly
9   after the settlement was announced to pursue our reimbursement
10  rights, and that process first took the form of contacting
11  counsel for the plaintiffs.  And by that I mean, we undertook a
12  process by which we tried to identify every lawyer who's
13  representing a Vioxx plaintiff across the country.
14          In addition, we also contacted the PSC and
15  Merck, putting them on notice of our equitable rights to
16  reimbursement and requesting that they cooperate with us in
17  pursuit of those rights, and those efforts did not produce any
18  results.
19          So in April of this year we filed this lawsuit
20  asserting our rights under ERISA and under various legal
21  provisions which permit us to pursue reimbursement of the
22  health care monies that we've advanced.
23          Since that time in the interim between April and
24  today, this Court issued its opinion in the HRI Rule 27
25  discovery context, which we considered and gathered the

1 evidence to respond to and put that together into the TRO
2 motion which we filed earlier this week.
3         The TRO motion, I think if you wanted to boil it
4 down, it essentially asks that we be treated in the same manner
5 that the government's being treated in this settlement.
6         The people who have put this settlement together
7 have recognized that the government has valid reimbursement
8 rights with respect to money that it advanced as regards to
9 Medicare and Medicaid, and that the participants in this
10 settlement have to come forward and identify themselves to the
11 government and honor the government's liens with respect to
12 expenditures which the government advanced for those people's
13 care.
14         But there isn't any similar sort of protection
15 that's being afforded to private health insurers, despite the
16 fact that the Supreme Court in *Sereboff* and the Fifth Circuit
17 in the *Bombardier* opinion have both confirmed private health
18 insurers' rights to the equitable reimbursement claims --
19 equitable trust is what the plaintiffs are requesting right
20 here.
21         So having been unable to work this out in the
22 process of contacting the parties before we filed suit, and now
23 having filed suit and requested a TRO, we're here asking for
24 some simple relief. That is we'd like an identification of the
25 names and social security numbers of the people who are

1  participating in the settlement of this case, which is relief,
2  I believe, to be provided to us probably in a day's worth of
3  time or less given how all this is computerized.
4         And then we'd like the opportunity to take that
5  data and have the chance to assert our reimbursement rights.
6  We have sued two named defendants in this case, BrownGreer and
7  U.S. Bancorp.  We're not obviously seeking any personal
8  liability against them.  We don't want BrownGreer to pay us any
9  money or anything like that.
10         But the case law recognizes that those two
11  entities, which are in control of the money and in control of
12  the settlement process, are proper respondents to our equitable
13  assertions here.
14         And then we've also sued the plaintiffs who --
15  and I mean the Vioxx plaintiffs -- who owe us reimbursement
16  claims.  We've sued them as John Does.  Because as we've
17  described in our TRO papers, it's not feasible for us, not
18  possible for us, with any degree of accuracy, to identify them
19  by name.  And that's the nature of relief we've sought.
20         We've set this motion for hearing on the 27th,
21  the date of the next status conference.  But, obviously, we're
22  at the Court's, and the other parties', pleasure as to when we
23  hear this motion.
24         **THE COURT:**  Well, I'm hearing it now from the
25  standpoint of the TRO.  Let me hear from the PSC at this point.

1  **MR. LEVIN:** Your Honor, it's Arnold Levin. The PSC
2  is not a party. They would be amicus to this, and perhaps we
3  should hear from Jim Irwin with regard to the two named
4  defendants.
5  **THE COURT:** All right.
6  **MR. IRWIN:** Your Honor, this is Jim Irwin. We would
7  think -- first of all, Your Honor, we would appreciate the
8  opportunity to address this. I understand Your Honor's
9  preference is to take it up today, and we will do so.
10          I will say simply from our perspective that we
11  had no advance notice of this. We just got this the day before
12  yesterday. It was a large filing. We have looked at it
13  carefully.
14          We would suggest, Your Honor, that the matter
15  that is on your docket now to be heard on June 27th, the motion
16  to sever, which will be briefed in due course. There's a
17  deadline for the plaintiffs to respond on June 18th. That the
18  severance issue, really, in many respects is a threshold to the
19  TRO before Your Honor today.
20          The severance issue not only addresses some of
21  the procedural concerns that we raised in that motion, but also
22  substantive concerns about the standing of these 100-odd
23  consolidated plaintiffs and whether or not they actually each
24  have the same kind of standing or any standing at all.
25          And I would point out, for example, on Page 2 of

1 their TRO memorandum, they say that many of these coverage
2 documents require plan members to provide notice and
3 cooperation to the plans. Well, that implies most directly
4 that many do not.
5     And that begs the question about standing and
6 our suggestion that the standing motion really is a threshold
7 to the TRO before Your Honor. So we would respectfully suggest
8 that that ought to be taken up first.
9     Next, with respect to the privacy issues, I
10 think that is something that the PSC would be very interested
11 and obliged to take up. I think that is their primary concern
12 here.
13     By all accounts, and without any controversy,
14 there are probably thousands and thousands of people here who
15 have no interest in this. Plan participants may have some
16 interest. I don't know. But there are lots of Vioxx claimants
17 who have no obligations to this plan and to these plaintiffs,
18 yet this TRO would most definitely impact them, and then not
19 even mentioning the privacy issues.
20     And then, finally, Your Honor, we would point
21 out that the first pilot distributions are not scheduled to
22 take place until August, at the earliest, and probably later in
23 the month in all likelihood.
24     So Your Honor could take this up, let's say for
25 example, in July at the July hearing where all parties would

1  have an opportunity to provide input to Your Honor and it would
2  not interfere with the pilot distribution schedule that might
3  occur otherwise in August or later in August.
4          On the merits, Judge, we would point out -- and
5  I do feel at a little bit of a disadvantage to address this on
6  the merits under the circumstances -- but we would point out
7  that the cases that have been cited by the plaintiff,
8  specifically the *Sereboff* case, the Supreme Court case, arise
9  out of circumstances where the plan specifically knew the
10 identity of the defendant, *Sereboff*s, and the issue was one of
11 whether or not the approach to the recovery was one of equity
12 or in law, and that's not really the issue here.
13         What we're really dealing with here is, in fact,
14 a discovery device.  It is a technique designed to discover
15 information -- private information about Vioxx claimants who
16 may or may not be covered by any of these various 100 plans.
17         So we would think from a very substantive
18 standpoint there's a huge difference between the cases that
19 they cite in support of their approach here and what is really
20 and truly taking place.
21         **THE COURT:**  Okay.
22         **MR. LEVIN:**  Your Honor, this is Levin.  May I speak
23 for the PSC and the NPC now?
24         **THE COURT:**  Yes.  Let me hear from you.
25         **MR. LEVIN:**  We have a fiduciary obligation to all of

the claimants before the MDL. The way this particular pleading is structured it is asking us -- or asking BrownGreer and the bank to disclose social security numbers, addresses, and confidential information about all of the claimants in this litigation.

It doesn't say what plan a particular plaintiff has. We don't know what plans are at issue. It doesn't state whether they're private plans or ERISA plans. We don't know the provisions of the ERISA or private plans.

What the plaintiffs in this litigation have indicated is they just want everything. That's an abuse towards the rights of the claimants in this litigation. It is completely different than the situation with regard to government liens.

We've all been dealing with that. For several years now, we know that pursuant to statute, the government has an entitlement to a lot that private companies do not have an entitlement to.

The PSC and the negotiating plaintiffs committee takes this very seriously, and that's why we will be amicus in these proceedings.

**THE COURT:** Okay. Anything from Merck?

**MR. BEISNER:** Your Honor, I think the only thing I would note is just to reinforce the point that Mr. Irwin made earlier, and that is that from the standpoint of the TRO,

1   nothing in the realm of what's alleged here as potentially
2   undermining the interests of the plaintiffs in this particular
3   case is going to occur immediately.
4              The distribution here is some distance down the
5   road.  So I do think there's an opportunity here for the Court
6   to hear this on full briefing from everyone without any risk to
7   anyone's interests and would, therefore, suggest that
8   Mr. Irwin's observation that the primary result here should be
9   the denial of the TRO, and moving ahead with the preparation of
10  full briefing on this is probably in everyone's best interest.
11             **THE COURT:**  Okay.  Any response from the plaintiffs
12  in the motion?
13             **MR. GRINSTEIN:**  Yes, Your Honor.  Again, Joe
14  Grinstein.  Let me just run down these points very quickly.
15             With respect to the severance issue, I'm not
16  quite sure how that's a threshold to this TRO.  Because if the
17  severance motion is granted, then this Court's just going to be
18  faced with 47 TROs, and I'm not quite sure how that really
19  improves judicial efficiency or judicial economy in any real
20  way.
21             We've put forward our allegations.  We've put
22  forward our evidence.  We've put forward our plan documents.  I
23  think we're at a stage right now where this is ripe for
24  determination; and severing this out into 47, 50, 100 different
25  pieces won't really accomplish anything other than making this

1  more difficult for the health plans, which I think is the real
2  goal of that motion.
3        With respect to privacy issues, first of all,
4  these people have all made litigation claims and have all
5  subjected themselves to the settlement. We're here just saying
6  that we want information with respect to our plan members.
7  We're willing to sign on to whatever confidentiality agreement,
8  whatever provisions are necessary, to guard the privacy of
9  those who are not our plan members, and we've said that in our
10 papers.
11       But that's sort of putting the cart before the
12 horse, to say, you know, we can't assert our rights with
13 respect to our plan members because there are people who are
14 not impacted by our relief who are present in this settlement.
15 There are ways to accomplish that and to guard against that
16 that will protect everyone's interest and yet allow us to
17 vindicate our rights.
18       As far as the timing of this, I've got a pretty
19 serious concern about the timing of this, and that's why we've
20 stated this as a TRO and as a motion for preliminary
21 injunction. And that is that I'm hearing the argument here
22 that things aren't going to start flowing until August so
23 there's no real need to worry right now. We can hold off on
24 this and have a leisurely briefing schedule for July and worry
25 about this later.

But when we get here in July, then we're going to hear the argument that, "Well, you know, we're on the cusp of distributions and if we grant the plaintiffs the relief that they're seeking right now, we're going to delay distributions to all sorts of people, and that delay is going to cause people damages. So the plaintiffs waited too long. They should have done this a lot earlier."

"So for that reason," you know, "let's rule one way or the other on the TRO, or impose one obligation or another on the plaintiffs in this motion because it's so late in the game." You know, we're trying to be cognizant of the fact that the Court wants to move this settlement along and that's why we filed when we filed and sought the relief that we've sought.

We're trying not to hold things up. We're trying to move things along as quickly as possible. And I just worry that if we derail things and put them on a slow roll, that what we're trying to avoid will, in fact, occur.

As far as the substance of this, I heard the argument that, you know, the *Sereboff* case is a completely different situation because there the plan knew the identity of the plan member. That's kind of the point behind this TRO. And the point behind our litigation is that this whole litigation has been structured -- this whole settlement has been structured to deny us that information to which we're

1  plainly entitled.
2              The individual plan members all have these
3  duties under their ERISA documents, and we've put those ERISA
4  documents before the Court, or at least the example of the plan
5  language for the Court to see.  And the fact that we've
6  contacted all the plaintiffs' lawyers and said, "Here are our
7  health care liens, work with us in attempting to work this
8  out," and they've all ignored those requests for information to
9  them, show the kind of catch 22 we're in right here.
10             Which is we have valid rights here and it's
11 statistically undeniable that there are thousands upon
12 thousands of people participating in the settlement -- and
13 we've put forth an expert report that's estimated at 15,000
14 people participating in this settlement -- who owe us money
15 under their ERISA documents and yet the argument is, "Well,
16 because we can't identify them by name that somehow or another
17 the Supreme Court's decisions or the Fifth Circuit's decisions
18 on the equitable reimbursement rights don't apply to us."
19             I would submit that the structure of this
20 settlement can't be structured in a way that denies us those
21 rights and then come in and say, "Well, we've structured it to
22 deny you those rights, so you can't have those rights."
23             So on that standing *Sereboff* type issue, I think
24 the Supreme Court and the Fifth Circuit's opinions are plainly
25 on point and give us the rights that we're asserting here.

1     THE COURT: As I see it, I have two motions before
2 me. Rule 65(a) talks about preliminary injunctions and 65(b),
3 of course, talks about temporary restraining orders. A
4 temporary restraining order is an extraordinary, drastic, and
5 serious remedy and not to be granted routinely, but only when
6 the movant, by a clear showing, carries the burden of
7 persuasion.
8     There are several criteria which must be met.
9 First, of course, the movant must show irreparable injury.
10 Second, the substantial likelihood of success on the merits.
11 Third, a favorable balance of hardships. Fourth, of course, no
12 adverse effect on the public interest.
13     The denial of a TRO is upheld where the movant
14 has failed sufficiently to establish any one of the four
15 criteria. I only look at the TRO at this point. TROs it seems
16 to me have to be dealt with as soon as the Court gets them,
17 otherwise there is no TRO. It's something else. So I deal
18 with that immediately.
19     I don't feel that any irreparable injury would
20 be caused if I failed to issue a TRO today because there is no
21 contemplation of distribution of funds, at least until August
22 or sometime later this summer. So I'm going to deny the TRO.
23     I will, however, set a hearing for the
24 preliminary injunction. Let me ask counsel, do you anticipate
25 any evidence, or do you feel that this matter can be presented

```
 1  on the briefs and any stipulations that might be necessary?
 2         MR. GRINSTEIN:  Well, Your Honor -- I'm sorry.  Your
 3  Honor, Joe Grinstein for the plaintiffs.  We've submitted
 4  affidavit and record evidence in support of our TRO.  If
 5  they're going to challenge it, which I assume that they might,
 6  then I think we might have an evidentiary hearing ahead of us.
 7         THE COURT:  Well, the reason I'm asking the question
 8  is because that depends on how much time I allot for it, so I
 9  need to have some feeling from that standpoint.  Do the
10  plaintiffs or the respondents to the TRO and preliminary
11  injunction have any feel or input that you can give me as to
12  evidence?
13         MR. IRWIN:  Judge, this is Jim Irwin.  We don't know
14  yet.  If Your Honor would please give us a couple of days to --
15         THE COURT:  All right.  Let me do this.  Let me set
16  the motion for the next session, which is June 27th.  But I'd
17  like to hear from the parties sometime next Thursday by
18  telephone at 2:00.  We'll place the call.
19              At that point I really need your input from the
20  standpoint of what we'll need time-wise and whether or not any
21  evidence is necessary, or whether you can enter any stipulation
22  or use affidavits so that I can set it accordingly.
23              But, for the record, I'll have the hearing at
24  2:00 on June 27th.  We have the severance motion.  Well, I'll
25  put it the 27th.  I may have to tweak the time.  It depends
```

1  upon how long we deal with it.  But that's just going to be
2  done in pencil now because I want to hear from you-all as to
3  your input as to whether or not we need an evidentiary hearing
4  or we can do it on the briefs.
5           So I'll call on Thursday, June 19th at 2:00.
6           **MR. GRINSTEIN:**  Thank you, Your Honor.
7           **MR. IRWIN:**  Thank you, Your Honor.
8           **MR. LEVIN:**  Thank you, Your Honor.
9           **MR. BEISNER:**  Thank you, Your Honor.
10          **THE COURT:**  At the hearing, we really ought to focus,
11 in addition to the things that I know you're interested in, on
12 the number of insurers involved; who represents those insurers;
13 whether or not there are copies available of all the plans;
14 who's going to pay the costs of obtaining the information; as
15 to how much it costs; whether or not any bond, and if so,
16 whether the bond should be for the amount of the settlement or
17 some portion of the settlement.
18          In addition to that, if there are any trials,
19 whether I should forward those or return those for hearing
20 before the transferee court as opposed to doing it by the MDL
21 court.  In addition, the other things that I know you-all have
22 covered, you might favor me with some view as to those areas.
23          Thank you very much.
24          **MR. IRWIN:**  Thank you, Your Honor.
25          **MR. GRINSTEIN:**  Thank you, Your Honor.

1  MR. DAVIS:  You'll circulate a call in number for
2  next Thursday?
3  THE COURT:  Yes, I will.  Okay?
4  MR. DAVIS:  Thank you, Your Honor.
5  MR. IRWIN:  Thank you, Your Honor.
6  (WHEREUPON, the Court was adjourned.)
7  *****
8  **CERTIFICATE**
9  I, Jodi Simcox, RMR, FCRR, Official Court Reporter
10 for the United States District Court, Eastern District of
11 Louisiana, do hereby certify that the foregoing is a true and
12 correct transcript, to the best of my ability and
13 understanding, from the record of the proceedings in the
14 above-entitled and numbered matter.
15
16
17                              S/ Jodi Simcox, RMR, FCRR
                                 Jodi Simcox, RMR, FCRR
18                               Official Court Reporter
19
20
21
22
23
24
25