# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AvMed, Inc.; et al. | § | CIVIL ACTION |
| | § | |
| v. | § | NO. 08-1633 |
| | § | |
| US Bancorp; BrownGreer, PLC; and John Does | § | SECTION L, MAG. 3 |
| | § | |
| | § | JUDGE FALLON |
| | § | |
| | § | MAGISTRATE JUDGE KNOWLES |
| | § | |
| | § | In Relation to: MDL Docket No. 1657 |
| | § | |
| | § | In Re: VIOXX |
| | § | |
| | § | PRODUCTS LIABILITY LITIGATION |

## REPLY TO DEFENDANTS IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Admin. Committee of the Wal-Mart Stores, Inc. v. Horton,*
    513 F.3d 1223 (11th Cir. 2008) .................................................................................2

*Admin. Committee of the Wal-Mart Stores, Inc. v. Shank,*
    500 F.3d 834 (8th Cir. 2007) ................................................................................2, 3

*Barnes v. Alexander,*
    232 U.S. 117 (1914).....................................................................................................3

*Bombardier Aerospace Employee Welfare Benefits Plan v. Ferer, Poirot &
    Wansbrough,*
    354 F.3d 348 (5th Cir. 2003) ....................................................................2, 3, 4, 5, 6

*Gilchrest v. Unum Life Ins. Co.,*
    255 Fed. Appx. 38, 45 (6th Cir. 2007).....................................................................3

*Great-West Life & Annuity Insurance Co. v. Knudson,*
    534 U.S. 204 (2002).............................................................................................7, 8, 9

*King v. Innovation Books,*
    976 F.2d 824 (2d Cir. 1992).......................................................................................8

*Mass. Mutual Life Insurance Co. v. Russell,*
    473 U.S. 134 (1985).....................................................................................................5

*Nechis v. Oxford Health Plans, Inc.,*
    42 F.3d 96 (2d Cir. 2005)...........................................................................................9

*Parks v. Dunlop,*
    517 F.2d 785 (5th Cir. 1975) .....................................................................................7

*Popowski v. Parrott,*
    461 F.3d 1367 (11th Cir. 2006) .................................................................................3

*Sereboff v. Mid Atlantic Medical Services,*
    547 U.S. 356 (2006)..........................................................................2, 3, 4, 5, 6, 8, 9

*Varity Corp. v. Howe,*
    516 U.S. 489 (1996)...................................................................................................10

## STATE CASES

*Eastom v. Redmond,*
  2006 WL. 2380782 (N.D. Ill. 2006) ............................................................................... 6

*Pell v. E.I. Dupont De Nemours & Co.,*
  2006 WL. 2864604 (D. Del. 2006) ............................................................................... 6

*Union Labor Life Insurance Co. v. Olsten Corp. Health and Welfare Benefit Plan,*
  2008 WL. 817112 (E.D.N.Y. 2008) ............................................................................. 6

*Vacca v. Trinitas Hospital,*
  2006 WL. 3314637 (E.D.N.Y. 2006) ........................................................................ 6, 8

## STATE STATUTES

Fla. Stat. 768.76(4) ............................................................................................................ 4, 5

Plaintiffs filed the instant motion for a preliminary injunction seeking modest relief: disclosure of claimant information that is unquestionably at Defendants' disposal and a fair opportunity for Plaintiffs' equitable reimbursement rights to be determined.[1] Defendants, try as they might, cannot change the fact that this measured relief clearly satisfies the four factors for a preliminary injunction:

- **Substantial Likelihood of Success on the Merits**: Plaintiffs have clear rights of reimbursement in their Plans, and, under the Supreme Court's ruling in *Sereboff* and the Fifth Circuit's decision in *Bombardier*, the unquestionable right to assert those rights against the Settlement Fund.

- **Irreparable Injury**: Plaintiffs will suffer irreparable injury without interim relief. Despite Plaintiffs' best efforts, it has proven virtually impossible to determine which of their insureds are claimants to the Fund, information at Defendants' fingertips. Without that information, Plaintiffs cannot exercise their reimbursement rights. And once distributions are made out of the Fund—as will happen in August—Plaintiffs will forever lose any chance to assert those rights. Dissipated among thousands of individuals, Plaintiffs will have no "identifiable fund" against which to assert an equitable lien, and relief under ERISA will be foreclosed.

- **Plaintiffs' Injury Outweighs the Injury to Defendants and Claimants**: Disclosure of claimant information will require minimal effort on Defendants' behalf, especially given Plaintiffs' willingness to work with the PSC to minimize privacy and logistical concerns. And little or no delay ought to be occasioned by Plaintiffs' requested injunction, with such delay (if any) being felt only by claimants who potentially have reimbursement obligations to Plaintiffs.

- **Public Interest**: The public interest is best served by granting the interim relief requested by Plaintiffs, who provide healthcare coverage to approximately 70% of all individuals in the United States who have private healthcare coverage. Absent relief, Plaintiffs will lose the right to recover the significant sums owed to them, hindering Plaintiffs' efforts to control costs in the private health care market. Allowing Vioxx claimants to avoid repaying insurers, and thereby shift the costs of their double-recoveries to other premium-paying insureds, will do great disservice to the public interest.

---

[1] As indicated in Plaintiffs' opposition to the PSC's *amicus* brief, however, Plaintiffs are willing to compromise in their request for data, such that no delay, especially for non-covered claimants, ought to be needed to permit Plaintiffs to enforce their rights.

1

## I. **Plaintiffs are Likely to Succeed on the Merits**

Plaintiffs' right to recovery is strong. In *Sereboff*, the Supreme Court made clear that an insurer's claims for reimbursement out of a third-party settlement qualifies as "appropriate equitable relief" under §502(a)(3)(B) of ERISA, and that to protect its rights, the insurer may seek an "equitable lien" on "identifiable" funds in the defendant's possession. *Sereboff v. Mid Atlantic Medical Servs.*, 547 U.S. 356, 362-69 (2006). Appellate courts before and after *Sereboff*, including the Fifth Circuit in *Bombardier* (which the *Sereboff* Court cited with approval), have uniformly held that the lien can be exercised on a fund held by a third party trustee, rather than the plan beneficiary herself. *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferer, Poirot & Wansbrough*, 354 F.3d 348, 358 (5th Cir. 2003); *Admin. Committee of the Wal-Mart Stores, Inc. v. Horton*, 513 F.3d 1223, 1229 (11th Cir. 2008); *Admin. Committee of the Wal-Mart Stores, Inc. v. Shank*, 500 F.3d 834, 836 (8th Cir. 2007). This is precisely the relief sought by Plaintiffs in this case, and it ends the discussion.

Despite this clear entitlement to relief, Defendants raise a series of meritless arguments as to why recovery is unwarranted. They first contend that Plaintiffs must, to obtain relief, submit each of their millions of plan documents, on the supposition that there must be material variations in each contract. Op. at 15-16.[2] Such waste of time and resources is, of course, unnecessary. Plaintiffs, as might be expected, use standard reimbursement language in their plan documents, and they have submitted evidence by affidavit that the 83 plan documents that have been proffered contain representative language. If relief is warranted on these agreements, and it is, Plaintiffs have at the very least a "substantial likelihood" of success.

---

[2] As reflected in the affidavits filed last week, Plaintiffs administer more than 1.1 million employer plans. Each of these plans has its own set of documents, which, on average, can run 30 pages or more. Thus, for each year in question, Plaintiffs' plan documents collectively consist of more than 30 million pages.

2

Defendants further argue that certain plans, while they might have reimbursement provisions, do not explicitly set out a right to recovery out of a "particular fund." See Op. at 16-18. This "gotcha" argument, however, does not withstand scrutiny. In *Sereboff*, the Court did observe that the plan at issue "identified a particular fund, distinct from [the defendant's] general assets," from which recovery would flow. 547 U.S. at 364. The Court did not, however, require that plans employ any "magic words" to indicate that recovery is linked to a particular fund.[3] Reimbursement provisions tied to a beneficiary's receipt of a third party payment <u>by their very nature</u> suffice, by authorizing recovery out of, and to the extent of, those amounts received by the beneficiary. Nothing in *Sereboff* suggests otherwise, and the Fifth Circuit in *Bombardier* required only a provision authorizing reimbursement. Indeed, the *Bombardier* court granted relief where the plan specified only "the right to recover or subrogate 100% of the Benefits paid . . . by the Plan for Covered Persons to the extent of . . . [a]ny judgment, settlement, or payment made or to be made, because of an accident." 354 F.3d at 350. *Accord Shank*, 500 F.3d at 838 (authorizing relief on same language); *Gilchrest v. Unum Life Ins. Co.*, 255 Fed. Appx. 38, 45 (6th Cir. 2007) (unpublished) (plan providing for recovery of "overpayments due to . . . receipt of deductible sources of income" passed muster).[4] *Bombardier*, cited with approval in *Sereboff*, is <u>binding on this Court</u>.

---

[3] In fact, in *Barnes v. Alexander*, 232 U.S. 117, 119 (1914), on which the *Sereboff* Court based its ruling, the contract at issue was unspecific, promising nothing more than "one-third of [a] contingent fee."

[4] The only case cited by Defendants in which a fund was held not identified is *Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006). The agreement in that case provided for recovery in "full," thus failing, in the court's view, to limit recovery to a specific portion of a particular fund. *Id.* at 1374. The court also characterized payment by a third party as functioning only as a "trigger" under the plan, for recovery from the defendant's general assets. *Id.* Finally, as opposed to this case, the funds in *Popowski* had already been commingled with the beneficiary's other assets. While the court held that would not have foreclosed relief if the Plan language sufficiently specified recovery from the third-party funds, here the Plaintiffs are proceeding directly against the proceeds owing to them, held in a segregated fund by Defendants. *Id.* at 1374 n.8. In short, *Popowski* presents a materially different situation than this case. In any event, *Bombardier*, not *Popowski*, is binding, and it is clear that Plaintiffs have strong footing under that ruling.

3

Even if *Bombardier* were not controlling, defendants discuss only 3 allegedly "deficient" reimbursement provisions in their brief, <u>out of a total 83 exemplars Plaintiffs submitted to the Court</u>. Op. at 16-18. Assuming these plan provisions were somehow deficient (and they aren't), Plaintiffs' likelihood of success as to the vast majority of affected claimants remains strong.[5] For the purposes of this motion, that is what matters.

Moreover, a fair reading of the "deficient" provisions reveals the error in Defendants' arguments. They first point to an AvMed agreement stating that "[i]n the event that the Plan provides medical benefits or payments to a Participant who suffers injury, disease, or illness by virtue of a negligent act or omission by a third party, the Plan is entitled to reimbursement from the Participant." Defendants argue this language fails to identify a particular fund. Under *Bombardier*, that is clearly not the case. But in any event, Defendants' selective quotation of plan language is deceiving. The provision at issue, reproduced at Exhibit A, expressly identifies the "particular fund" out of which recovery flows; it cites a Florida statute limiting an insurer's recovery to "the actual amount of collateral sources recovered by the claimant from a tortfeasor." Fla. Stat. 768.76(4). The provision also expressly creates a "first-priority lien" on amounts owing from third parties, and makes clear that the "[p]articipant shall hold [recovered] proceeds in trust for the benefit of the Plan and pay them to the Plan upon demand if the proceeds have been paid directly to the Participant," language plainly specifying the "particular fund" at issue.

Defendants also attack language in a Hawaii Medical Service Association agreement, because the benefits paid to the insured are described as an "interest-fee loan." Op. at 17-18. Of

---

[5] Indeed, as Defendants' own chart demonstrates, a substantial number of plan provisions proffered to the Court not only contain reimbursement or subrogation provisions authorizing relief under *Sereboff* and *Bombardier*, <u>but express provisions governing the plans' rights to liens or trusts over recovered sums</u>, going far beyond what the governing caselaw requires. Op., Exhibit 2. Given this fact, there is no doubt that relief is warranted as to the majority of covered claimants even under Defendants' view of the law. That being the case, the "substantial likelihood" threshold is plainly satisfied.

4

course, it does not matter how the benefits paid the claimant are characterized, and Defendants do not explain what relevance the difference in terminology might have. The only important thing is whether a right of reimbursement for the payments made is specified. On this score, Defendants ignore the comprehensive language of the provision establishing a right to recovery out of the specific amounts paid by third parties, and expressly establishing a lien on those amounts. *See* Exhibit A. Finally, defendants point to a plan for Blue Cross & Blue Shield of Massachusetts, also claiming it does not identify a particular fund. *Id.* That provision, however, is expressly labeled a "reimbursement provision," and it obviously ties and limits recovery to the pot of funds obtained by the insured—"the recovered money" or "payment [the beneficiary] receive[s]." There is little difference between this language and that in *Bombardier*.

Defendants' next complaint is that some of Plaintiffs' plans (Defendants identify two) "are simply outside of ERISA entirely." Op. at 17. The vast majority of plans at issue in this case are, however, unquestionably ERISA plans. And more importantly, as to any non-ERISA plans, Plaintiffs' entitlement to relief is actually greater. Defendants overlook the fact that the limited civil enforcement provisions of ERISA did not expand the remedies available to Plaintiffs seeking relief under health benefit plans, but rather constrained the common-law remedies that would otherwise be available under contract law. *See Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146-47 (1985) (noting that the civil enforcement provisions of §502(a) limit the remedies available for breach of plan terms). Plaintiffs' rights under non-ERISA contracts, therefore, are potentially stronger than their rights under the ERISA plans.[6]

---

[6] Defendants also argue in passing that variations in plan language can implicate affirmative defenses, which in turn can bear on the extent of a fiduciary's recovery even if the right to recovery is established. Defendants specifically reference the "make whole" doctrine. Op. at 14-15, 18. In *Sereboff*, however, Chief Justice Roberts addressed, and rejected, this very argument, noting that equitable defenses such as the "make whole doctrine" are "beside the point" in an action to enforce an equitable lien established by agreement. 547 U.S. at 368.

5

Defendants' final argument is that Plaintiffs have failed to "identify particular funds or particular shares of those funds" from which reimbursement should be drawn. Op. at 19-21. This argument is frivolous. Once Plaintiffs obtain the claimant information sought through this motion, Plaintiffs can then assert liens for specific shares, against the specific fund held in trust by Defendants, just as *Sereboff* and *Bombardier* require. Defendants also cite to several inapposite (and non-binding) district court cases, which they claim demonstrate that relief is unwarranted. In each of these cases, however, the courts concluded either that the plaintiffs did not seek funds that were clearly in the defendant's possession,[7] or that they did not proceed against a specific fund, but rather against the defendant's general assets[8]—tactics precluded under the caselaw. Here, on the other hand, the money owing to Plaintiffs is unquestionably in Defendants' possession, and without a doubt in a specific, identifiable fund, not commingled with the Defendants' general assets.

To the extent that Defendants argue that the number of claimants, or amount of money, sought by Plaintiffs, somehow defeats the right to relief, there is absolutely no support for such limitations in law, logic, or equity. Relief cannot possibly be foreclosed because Plaintiffs seek to recover tens of millions of dollars rightfully owed to them by many, as opposed to a few thousand dollars owed by one. Such an approach turns equity on its head.

---

[7] *Eastom v. Redmond*, 2006 WL 2380782, at *4 (N.D. Ill. 2006) (denying relief where plaintiff lacked knowledge of whether defendants had possession of funds); *Pell v. E.I. Dupont De Nemours & Co.*, 2006 WL 2864604, at *12-*13 (D. Del. 2006) (denying relief where plaintiff asserted amount of funds he was owed was in defendants' possession, but *particular money* he should have been paid could not be traced to fund or account or defendant).

[8] *Vacca v. Trinitas Hosp.*, 2006 WL 3314637, at *4 (E.D.N.Y. 2006) (denying relief where source and destination of checks at issue was known, but there was no indication those funds were retained separately from defendant's other funds, such that the "the gravamen of the this action remains a claim for money compensation"); *Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan*, 2008 WL 817112, at *2 (E.D.N.Y. 2008) (denying relief where plaintiff merely labeled the amount of funds in dispute, taken from defendants' assets, a "fund of money," a suit no different than a claim against a defendant's general assets).

6

## II.     Plaintiffs will Suffer Irreparable Harm

Plaintiffs will suffer clear and irreversible harm if the requested relief is denied. Once proceeds of the Settlement Fund are paid out to the Vioxx claimants, Plaintiffs' ability to recover these sums will, as a practical matter, <u>be foreclosed</u>. That is, once commingled with plan members' general funds, or paid out by those individuals to third parties, any ERISA claims would cease to be viable under the Supreme Court's binding caselaw. *See, e.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2002). To deny relief on Plaintiffs' motion, therefore, is to effectively dismiss Plaintiffs' claims on the merits. The need to prevent this irreparable injury, "the central purpose of a preliminary injunction," *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975), is stark.

Defendants' attempts to diminish the harm that Plaintiffs would suffer fall far short of the mark. For instance, Defendants argue that Plaintiffs' delay in filing the instant motion somehow belies the urgency of the requested relief. Op. at 25-26. As explained in depth in Plaintiffs' opening brief, however, Plaintiffs filed this action as a last resort after months of fruitless investigation and attempts at negotiation.[9] Motion at 8-11, 18, 21-22. This included hundreds of hours spent scouring publicly available docket sheets, contacting every publicly identifiable claimant's counsel, and seeking to negotiate, to no avail, with the PSC and Merck itself. Plaintiffs filed this action less than six months after the Vioxx settlement was announced publicly, and filed this Motion just days after further investigation (spurred on by this Court's ruling on the HRI matter) made clear their inability to obtain accurate identifying information for the settling claimants through other means. Defendants cite no authority for the proposition that a "delay" of this kind—borne both of a careful and conscientious effort to avoid the need for

---

[9] Plaintiffs respond further to this purported "delay" issue in their reply to the PSC's *amicus* opposition.

7

injunctive relief by a court, and of a failure by the PSC to respond to Plaintiffs' concerns—should be deemed unreasonable. *See, e.g., King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992) (eight month delay did not preclude injunctive relief where plaintiff had used that period to investigate defendant's acts and to inform defendant of his objections).

Defendants next find solace in the fact that half the Settlement Fund will remain after the initial disbursement of funds in August, and that these residual sums would be adequate to satisfy Plaintiffs' reimbursement rights. Yet Plaintiffs have never agreed nor suggested that their reimbursement claims can be satisfied simply out of the monies to be paid to individual claimants following the August distribution. More importantly, the caselaw makes clear that Plaintiffs' rights exist only as to the specific funds to be paid their insureds. *See, e.g., Knudson*, 534 U.S. at 214 (denying relief because "funds to which petitioners claim[ed] an entitlement" were not in the defendant's possession, but had been placed in a separate third-party trust; the relief sought by the plaintiff, therefore, was "not equitable—the imposition of a constructive trust or equitable lien on particular property"). For this reason, when funds are distributed to Plaintiffs' members in August, Plaintiffs <u>will lose any ability to recover those sums</u>.

Finally, Defendants assert that disbursement will not destroy Plaintiffs' reimbursement rights, grounding this assertion in *Sereboff* and two district court cases. Op. at 24-25. Defendants are flat wrong. Cases cited by defendants themselves make clear that claimants' commingling of settlement funds with other assets (*i.e.*, the deposit of settlement checks into their bank accounts) would foreclose relief. In *Vacca v. Trinitas Hospital*, the district court denied relief even where the plaintiffs could "identify the specific checks that were paid to defendants," as well as "the bank accounts into which the checks were deposited," citing Second Circuit precedent for the holding that "no claim in equity could be established where the

8

defendant was not required to segregate the monies upon which plaintiff sought to impose a trust," and relying on the lack of any "indication or argument that the alleged overpayment . . . was retained separately from defendant's other funds." 2006 WL 3314637, at *4 (E.D.N.Y. 2006) (citing *Nechis v. Oxford Health Plans, Inc.*, 42 F.3d 96, 103 (2d Cir. 2005)).[10]

### III. Plaintiffs' Injuries Outweigh Any Possible Harm to Defendants or Claimants

The balance of hardships clearly weighs in Plaintiffs' favor. Absent the relief requested, Plaintiffs' right to tens of millions of dollars in settlement proceeds <u>will forever be foreclosed</u>. What Plaintiffs request, on the other hand, is modest: Claimant information that is without question at Defendants' disposal, and an opportunity to assert their equitable rights to settlement proceeds. Defendants contend that the harm caused by the requested relief would be too great, citing privacy concerns and the harm to non-covered claimants in waiting a few additional months, at most, for the settlement check. Op. at 26-28. As demonstrated in the reply to the PSC brief, however, Plaintiffs are willing to work with the PSC and Defendants to minimize privacy and logistical concerns (to the extent there are any). Moreover, Plaintiffs' requested relief ought not to cause any delay in distribution, particularly for non-covered claimants. In the event that there is a delay for covered claimants, interest accruing on the fund would compensate them for whatever harm they would suffer from delay. Furthermore, the covered claimants certainly do not have clean hands—they owe, but have not provided, cooperation to their health plans, and any delay in the August distribution caused by resolving the health plans' liens would

---

[10] As for the potential that claimants will use the settlement proceeds promptly upon distribution, unquestionably what will happen, *Sereboff* makes clear that this would foreclose relief. The *Sereboff* Court expressly observed that in *Knudson*, which Defendants concede is good law, "equitable restitution was unavailable because the funds sought were not in [defendant] Knudson's possession." 547 U.S. at 365 (emphasis added); *see also id.* at 362 (observing that relief was unwarranted in Knudson because "'the funds to which petitioners claimed an entitlement' were not in Knudson's possession" (quoting *Knudson*, 534 U.S. at 213-14 (emphasis added))).

9

have been at least partially occasioned by their lawyers' (and the PSC's) ignoring Plaintiffs' reimbursement demands since January.

## IV. Granting the Preliminary Injunction Serves the Public Interest

The relief requested by the Plaintiffs will safeguard the rights of plans covering over 70% of private insurance claimants, while causing minimal disruption to Defendants' stewardship of the Settlement Fund or claimants' receipt of settlement proceeds. Plaintiffs' requested relief will thus further equity while promoting finality. The alternative is to permit claimants to avoid their obligations to insurers and enjoy a double recovery at the expense of general premium paying public.[11] The grant of an injunction will unquestionably further the public interest.

## V. Plaintiffs are Not Seeking "Ultimate" Relief

Finally, Defendants contend that the relief they seek is not "preliminary," to preserve the *status quo*, but rather "ultimate." Op. at 7-8. This is a non sequitur. At this juncture, Plaintiffs seek only identifying information and to prevent the dissipation of amounts owed to them before they can assert their equitable rights. The "ultimate" relief sought by Plaintiffs, on the other hand, is a final determination and liens on sums owing from the Fund on account of Plaintiffs' reimbursement rights. That is not what Plaintiffs seek here. While Plaintiffs have demonstrated their strong reimbursement rights, the sole interest here is to set up a mechanism to prove their claims as this litigation continues, while protecting their equitable rights in the interim. The relief requested is the only way to accomplish those twin objectives.

---

[11] ERISA plans are established for the benefit of all covered employees, and reimbursement, "crucial to the financial viability of self-funded ERISA plans," *Shank*, 500 F.3d at 838, supports a plan's primary function to "preserve assets to satisfy future, as well as present, claims [and] take impartial account of the interests of all beneficiaries." *Varity Corp. v. Howe,* 516 U.S. 489, 514 (1996). This is true for non-ERISA plans as well, such as those governed by FEHBA. Funds recovered by FEHBA plans, such as those administered by Plaintiffs Blue Cross Blue Shield Association and GEHA, are refunded to the Government for the purpose of paying future claims. Recognition of the recovery rights of these plans, therefore, furthers the provision of benefits to federal employees.

10

                    SUSMAN GODFREY L.L.P.

                    /s/Lexie White
                    Lexie G. White
                    Louisiana State Bar No. 29478
                    Neal S. Manne
                    Texas State Bar No. 12937980
                    William Christopher Carmody
                    Texas State Bar No. 03823650
                    Joseph S. Grinstein
                    Texas State Bar No. 24002188
                    SUSMAN GODFREY L.L.P.
                    1000 Louisiana Street, Suite 5100
                    Houston, Texas 77002
                    Telephone: (713) 651-9366
                    Facsimile: (713) 654-6666

OF COUNSEL:

Richard W. Cohen
Peter D. St. Phillip, Jr.
Gerald Lawrence
LOWEY DANNENBERG COHEN & HART, P.C.
1 North Broadway, 5th Floor
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

Mark D. Fischer
Mark M. Sandmann
Jeffrey C. Swann
RAWLINGS & ASSOCIATES PLLC
1 Eden Parkway
LaGrange, KY 40031
Telephone: (502) 587-1279
Facsimile: (502) 584-8580

Attorneys for Plaintiffs

## CERTIFICATION OF SERVICE

I hereby certify that the above and foregoing REPLY TO DEFENDANTS IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 25th Day of June, 2008.

                                              /s/Lexie White
                                              Lexie G. White
                                              Louisiana State Bar No. 29478
                                              Attorney for Plaintiffs
                                              SUSMAN GODFREY L.L.P.
                                              1000 Louisiana Street, Suite 5100
                                              Houston, Texas 77002
                                              Telephone: (713) 651-9366
                                              Facsimile: (713) 654-6666
                                              lwhite@susmangodfrey.com