**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  VIOXX PRODUCTS LIABILITY LITIGATION | : | |
| | : | |
| | : | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | : | **MDL 1657** |
| This Pleadings Relates to: | : | **SECTION L** |
| | : | **HONORABLE ELDON FALLON** |
| | : | **MAGISTRATE KNOWLES** |
| **1199SEIU GREATER NEW YORK BENEFIT FUND, et al. v. BROWNGREER, PLC, et al., Case No. 08-3627** | : | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | : | |

**THE NPC DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
AND TO STRIKE CLASS ALLEGATIONS**

## I.   INTRODUCTION

Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; Blizzard, McCarthy & Nabers, LLP; Girardi & Keese; Herman, Herman, Katz & Cotlar, LLP; and Levin, Fishbein, Sedran & Berman (the "NPC Defendants" or "NPC"),[1] hereby move to dismiss and to strike the class allegations of the class action complaint[2] (the "Class Action Complaint" or the "Complaint") filed by 1199SEIU Greater New York Benefit Fund and The New York State Teamsters Council Health and Hospital Fund (collectively "Greater New York" or the "Plaintiffs").

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

[1]All of the members of the Negotiating Plaintiffs Council with the exception of Seeger Wiess LLP were named as defendants.  Although inexplicably Seeger Weiss is not a defendant in this case, for convenience only, the defendant members of the Negotiating Plaintiffs' Counsel shall refer to themselves as the NPC Defendants.

[2] Plaintiffs' complaint seeks relief under the enforcement provision of the Employee Retirement Income Security Act ("ERISA"), §502(a)(3), 29 U.S.C. §1132(a)(3), which only permits suits by plan participants, beneficiaries or fiduciaries seeking "appropriate equitable relief."

## II.   **FACTUAL BACKGROUND**

Rofecoxib was sold by Merck & Co., Inc. under the tradename, Vioxx, from May 1999 until September 20, 2004, when the cardiovascular dangers posed by Vioxx required that it be withdrawn from marketing.   Complaint ¶29.   News coverage of Vioxx litigation was widespread and crescendoed with the November 9, 2007 announcement of the NPC's Settlement Agreement with Merck.   *Id.*, ¶30.   Greater New York was never heard from and apparently inactive during all this time.   Only <u>after</u> the settlement was announced, did the Named Plaintiffs make the feeble attempt to advise the defendants of their reimbursement and subrogation rights by drafting a so-called "Notice letter" to the NPC Defendants that did not identify any specific individual client of the NPC Defendants that was participating in the Vioxx Settlement.   Not surprisingly, since the NPC Defendants were not given proper notice of a specific claim against a specific client and/or provided with information identifying a specific fund that applies to a particular client, none of the NPC Defendants responded to that so-called Notice letter.   *Id.*, ¶52.

On February 20, 2008, counsel for Greater New York filed a Rule 27 Petition for Healthcare Recoveries, Inc. ("HRI"), seeking precisely the same relief as that sought in the instant Class Action Complaint.   In response, the Plaintiffs' Steering Committee (of which several of the instant NPC Defendant are members) filed a motion to dismiss.   On May 6, 2008, this Court dismissed the HRI Petition.   The Court held that "to place the burden and expense of producing this information on either the PSC or Merck rather than on HRI itself is improper and would be prejudicial."   *In re Vioxx Products Liability Litigation*, 2008 WL 1995098, *6 (E.D.La. May 6, 2008).

After belaboring their contingent fee strategy following the *HRI* decision for another month, these same counsel, now representing Greater New York, filed the instant Class Action Complaint

2

purporting to represent a class of ERISA-covered health benefit plans against the NPC Defendants and BrownGreer, PLC ("BrownGreer"), the Claims Administrator of the Vioxx Settlement Agreement.[3]  That Settlement Agreement was entered into on November 9, 2007, between the NPC and Merck & Co., Inc.  The Named Plaintiffs aver that it has no direct knowledge as to whether even one of its insureds is a Vioxx claimant participating in the Settlement Agreement.  Complaint ¶33. Implausibly claiming that it is not feasible to identify any of its insureds that are Vioxx Claimants from the docket of this Court or other public records, Complaint ¶48, Greater New York seeks declaratory and injunctive relief from BrownGreer and the NPC Defendants.  Plaintiffs' injunctive relief seeks discovery of private, highly confidential and personal information regarding each and every Vioxx claimant participating in the Settlement, regardless of whether the Vioxx Claimants are insureds of the plaintiffs or not.  Specifically, Greater New York seeks an injunction that would compel production to Greater New York of the names of each and every Settling Claimant, their social security number, their mailing addresses over the past 10 years, their employers that provided coverage for Vioxx-related medical expenses, the names of their health insurers, the names and addresses of their attorneys and their settlement enrollment forms containing confidential medical information.  Complaint ¶¶67, 77.

Greater New York acknowledges that, to date, the Claims Administrator has not yet made

_____

[3] Greater New York, through counsel, in its Complaint  purports to be the representative plaintiff of the inchoate class.  In recent motions practice before this Court, Greater New York purports to be acting in a representative capacity without first obtaining approval by the Court as required by Fed.R.Civ.P. 23(g).  Greater New York has the affirmative obligation to prove its adequacy and lack of conflicts under Rule 23(a)(4).  This it has not done, nor does it appear able to disprove representational conflicts with a competing litigation by numerous health plans that claim to represent 70% of all insureds in America.  These health plans have retained separate counsel, have filed their own individual lawsuit and have separately moved for injunctive relief.

3

any determination of allocations of the aggregate settlement funds to any individual Vioxx claimant. Complaint ¶55. Likewise, Plaintiffs concede that no distribution is even contemplated until August 1, 2008. *Id.* Yet, Plaintiffs assert that the ERISA rights of each member of the purported class will be irreparably harmed even though there is currently no identifiable fund by which the Plaintiffs would be entitled to assert an equitable claim of reimbursement.

As discussed below, Plaintiffs' Complaint should be dismissed as it fails to assert an actionable claim under ERISA. That is, Plaintiffs have no equitable reimbursement right that can be imposed without the presence of an identifiable fund in the possession or control of a plan beneficiary. It is also crystal clear that the class action allegations should be stricken as Plaintiff has failed to allege a certifiable class.

## III.   ARGUMENT

### A.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Pursuant to Fed.R.Civ.P. 12(b)(1), the allegations of the complaint fail to establish subject matter jurisdiction. It is settled law that "[t]he party claiming federal subject matter jurisdiction has the burden of proving it exists." *Peoples Nat. Bank v. Office of Comptroller of Currency*, 362 F.3d 333, 336 (5th Cir. 2004) (citing *Pettinelli v. Dnazig*, 664 F.2d 1160, 1162 (5th Cir. 1981)). Plaintiffs failure to point to an "identifiable fund" in the "possession or control" of a plan beneficiary demonstrates that there are no grounds for federal subject matter jurisdiction. Without any basis for federal subject matter jurisdiction, the Complaint must be dismissed in its entirety.

### 1.   There is no "Identifiable Fund" in the "Possession or Control" of Plan Beneficiaries for Purposes of an Equitable Reimbursement Action.

Absent a fund in the possession and control of a plan beneficiary, this entire action should be dismissed for lack of federal subject matter jurisdiction.  In *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348 (5th Cir. 2003), the Fifth Circuit recognized a three-pronged inquiry for purposes of determining whether funds are subject to an action for equitable restitution under § 502(a)(3).  This three-pronged inquiry asks whether the plan seeks to recover funds, (1) that are specifically identifiable, (2) that belong in good conscious to the Plan, and (3) that are within the possession and control of the defendant beneficiary. *Bombardier*, 354 F.3d at 356.  Plaintiffs have failed to establish any of these requirements.

Under ERISA, the text of a plan determines a fiduciary's entitlement to seek relief in the form of equitable restitution.  To demonstrate a right to equitable restitution, Plaintiffs must engage in a plan-by-plan analysis of the contractual language in effect at the time each plan beneficiary received compensation for the injuries for which Plaintiffs claim they are entitled to equitable restitution.  *See Franks v. Prudential Health Care Plan, Inc*., 164 F.Supp.2d 865, 879 (W.D.Tex. 2001) (the law of the Fifth Circuit indicates that "the extent to which [a beneficiary] has a reimbursement obligation under his ERISA plan . . . depends on what his ERISA plan said at the time he received treatment.").  The Court must analyze the contractual language of each plan at the time Plaintiffs compensated beneficiaries for Vioxx-induced injuries in order to determine whether a request for restitution is in the nature of equitable relief, recoverable under ERISA, or legal relief, which is not recoverable under ERISA.  *See Sereboff v. Mid Atlantic Services, Inc.*, 547 U.S. 356 (2006); *Great-West-Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 207-208 (2002) (plan administrator's suit for reimbursement, in accordance with plan provision, of benefits overpayments

that had resulted from beneficiaries' recoveries from third parties, was not equitable claim authorized under ERISA § 502(a)(3) because it sought "the imposition of personal liability . . . for a contractual obligation to pay money.").

The finding of whether or not a plan is seeking equitable relief, as opposed to legal relief, turns on whether the plan language attempts to create a right to be reimbursed against the general assets of the plan beneficiary, considered to be in the nature of legal relief, or whether the plan language attempts to create an equitable lien or constructive trust against the proceeds that a plan beneficiary receives as compensation for his or her injuries.  *See Sereboff*, 547 U.S. at 363 (explaining that the relief requested by Mid Atlantic was recoverable under ERISA since the language in Mid Atlantic's plan "sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboff's assets generally, as would be the case with a contract action at law.").

Even assuming Plaintiffs can demonstrate that the language in the operative plans would entitle them to assert an equitable lien or constructive trust under ERISA,[4] they are unable to point to and identifiable fund within the possession or control of any plan beneficiary that received benefits for Vioxx induced injuries.

---

[4] In this regard, it should be observed that the Complaint quotes language from the Named Plaintiffs' plans in an effort to establish that these plans create a right to equitable relief under ERISA.  Even assuming, however, that the quoted language establishes a right to equitable restitution under § 502(a)(3), Plaintiffs have failed to attach the plans or indicate the time-frame the quoted language was used in the plans.  This is not a sufficient showing, since the language of the plan at the time a plan beneficiary received treatment for his injury is what matters in this case.  Therefore, the Named Plaintiffs are not entitled to equitable restitution under ERISA.

a.    **Plaintiffs Cannot Establish the Existence of an Identifiable <u>Fund for Purposes of a Claim under § 502(a)(3).</u>**

Rather than identifying particular funds or particular shares of those funds, Plaintiffs seek a lien against the entire settlement.  No authority supports such a lien.  Plaintiffs right to equitable reimbursement does not lie against an aggregate settlement fund, which is not an "identifiable fund" within the meaning of those cases concerning a plan fiduciaries right to equitable restitution under § 502(a)(3).  Absent the existence of any identifiable fund, Plaintiffs have no authority for maintaining a claim for equitable restitution under ERISA.

The settlement fund is undistributed and unallocated.  *See* Complaint ¶55.  Consequently, Plaintiffs are unable to identify a particular share of any fund that they are entitled to as equitable restitution for moneys paid to a plan beneficiaries.  Indeed, Plaintiffs are unable to identify even one claimant who may be subject to a claim for equitable restitution under ERISA.  They thus cannot succeed on the merits because, under *Sereboff*, they cannot assert a lien unless they have identified a "particular share" of a fund that, in good conscience, belongs to them.  *See Eastom v. Redmond*, No. 1:03-CV-353-TS, 2006 WL 238078 (N.D. Ind. Aug. 14, 2006) (plaintiff failed to identify specific fund when he did not even know whether fund existed).  A closer analysis of *Knudson*, *Bombardier* and *Sereboff* makes it clear that such relief is unavailable from the aggregate settlement fund since it would not concern an "identifiable fund."

In *Knudson*, the Supreme Court was required to resolve whether §502(a)(3) authorized an insurance company to enforce a reimbursement provision in an ERISA plan that reserved "a first lien upon any recovery, whether by settlement, judgment or otherwise," obtained from a third party.  *See Knudson*, 534 U.S. at 207.  The Knudsons had recovered money in settlement of a tort lawsuit.  The

bulk of the funds in the settlement were allocated either to a special needs trust or to the Knudson's attorneys.  Only $13,000 was allocated to Great-West, which sought to be reimbursed for over $400,000 in medical expenses covered pursuant to its insurance agreement.  The Supreme Court recognized that "the term 'equitable relief' in §502(a)(3) must refer to those categories of relief that were *typically* available in equity."  *Knudson,* 534 U.S. at 210, *quoting Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (emphasis in original).  It concluded that Great-West was seeking to impose personal liability upon the plaintiffs which was not typically available in equity.  *Id.* at 221.

A critical aspect of the Supreme Court's holding in *Knudson* is that no relief is available under ERISA where the settlement proceeds against which the plaintiff is seeking to assert an equitable lien were not addressed to "particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 213.  Underlying the Supreme Court's analysis was that the Knudsons did not hold their funds directly and that Great-West's claims had not identified a particular fund belonging to it.  *Id.* at 214.  Thus, Great-West had failed to point to an "identifiable fund" for purposes of asserting its ERISA claim.

Following *Knudson,* a similar claim challenging ERISA's  "appropriate equitable relief" provision was presented to the Fifth Circuit in *Bombardier, supra*.  Unlike *Knudson*, in *Bombardier*, the tort-injury plaintiff's lawyers placed their client's settlement funds in a trust account under the law firm's name.  The Fifth Circuit found that:

> because [the plan] seeks to recover specifically identifiable funds that are in the constructive possession and the legal control of the participant but belong in good conscience to the Plan, its actions for a constructive trust in no way seeks to impose personal liability on either defendant.  Instead the Plan continues, it seeks relief that indeed is equitable in nature and thus authorized by §502(a)(3).

*Bombardier,* 354 F.3d at 355.  Thus, unlike *Knudson*, the plaintiff in *Bombardier* was able to point to a specifically identifiable fund for purposes of asserting an equitable lien claim.  Accordingly, the relief being sought was deemed equitable and, thus, the claim against that beneficiary and his lawyers was permissible under §502(a)(3).

In *Sereboff*, *supra*, the Sereboffs had been involved in an automobile accident and Mid Atlantic, the administrator of the Sereboff's health care plan which had paid for their medical expenses, was suing the Sereboffs for breach of contract after they failed to address its lien notice which had detailed the medical expenses as they accrued and were paid by the plan.  *See Sereboff*, 547 U.S. at 358-361.  The Supreme Court focused on the "Acts of Third Parties" provision of the Sereboffs' plan, which stated that the provision, "applies when [a beneficiary is] sick or injured as a result of the act or omission of another person or party," and requires a beneficiary who "receives benefits" under the plan for such injuries to "reimburse [Mid Atlantic]" for those benefits from "[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)."  *Id*. at 359.

The Supreme Court found that even though the lawsuit spoke in terms of breach of contract, "ERISA provides for equitable remedies *to enforce plan terms*."  *Id*. at 363 (emphasis original).  Because the lawsuit "sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboff's general assets," the claim was recognized in equity.  *Id*.  In reaching this result, the Supreme Court carefully distinguished *Knudson*.  The Supreme Court found the factual scenario in *Sereboff* distinguished since, "Mid Atlantic sought ***specifically identifiable funds*** that were within the possession and control of the Sereboffs - ***that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan*** . . .".  *Id*. at 362-63 (emphasis added) (internal quotations and citations omitted).

9

Thus, even if Plaintiffs could identify a beneficiary that is participating in the settlement and believe that they may be entitled to recover some share of the proceeds for that beneficiary, an equitable reimbursement action would fail because the forgoing authority makes clear that an aggregate settlement is not an identifiable fund under ERISA.  Under *Sereboff*, the "identifiable fund" was the particular fund established by the terms of the plan itself - *i.e.*, any recovery personal to the beneficiary.  Each such recovery is thus a separate fund.  Under the reasoning of *Sereboff*, it would not be enough to identify a general fund out of which recoveries might be paid; indeed, such a fund would be more akin to the general assets from which equitable relief could not be sought in *Great-West*.  Lacking an identifiable fund, there could be no equitable claim asserted under ERISA.  Under these circumstances, this Court lacks jurisdiction to render the equitable relief sought by Plaintiffs in their Complaint.

> **b.     There are no proceeds within the "possession or control" of plan beneficiaries to support subject matter jurisdiction under ERISA**

Pursuant to *Knudson* and the law of this Circuit as clarified in *Bombardier*, Plaintiffs cannot maintain an action for equitable restitution until an identifiable fund is within the "possession or control" of a plan beneficiary.  Since there is no identifiable fund within the possession or control of a plan beneficiary, equitable relief is not available under ERISA.

In *Bombardier*, the Fifth Circuit analyzed *Knudson* and *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439 (5th Cir. 2002), to determine the extent to which assets outside the direct control of a plan beneficiary may be subject to an equitable lien under ERISA.  In *Knudson*, the Supreme Court had determined that funds in a Special Needs Trust were not in the possession or control of the claimant for purposes of an equitable lien action under § 502(a)(3).  *Knudson*, 534 U.S. at 362.  Likewise, in

*Bauhaus*, the Fifth Circuit panel concluded that funds that had been placed in the registry of the Mississippi Chancery Court, pursuant to the terms of a personal injury settlement agreement, were just as much beyond the "possession and control" of the beneficiary as those funds in the Special Needs Trust in *Knudson*. *See Bauhaus*, 292 F.3d at 445.  In analyzing this authority in *Bombardier*, the Fifth Circuit observed:

> *It is, however, the third element of the inquiry-the defendant-beneficiary's "possession and control" over the disputed funds-that distinguishes Knudson and Bauhaus from the case before us today.*
>
> *In Kundson and Bauhaus, the beneficiary had neither actual nor constructive possession or control over the funds.  In Knudson, the funds had been placed in a Special Needs Trust*, as mandated by California law, to provide for the beneficiary's medical care, and ***the trustee was totally independent of the plan beneficiary.  Similarly, in Bauhaus, the funds had been deposited in the state court's registry*** in anticipation of an interpleader action to determine their ownership.  ***Obviously, that court was totally independent of the plan beneficiary.  Here, in stark contrast, the funds that the Plan is seeking to recover belong to the participant and are simply being held in a bank account in the name of the participant's attorneys, who are indisputably his agent.***  Unlike the beneficiaries in *Knudson* and *Bauhaus*, ***the Plan's participant, Mestemacher, has ultimate control over, and thus, constructive possession of, the disputed funds.***  The law firm and Mestemacher concede that the law firm is merely holding the funds in its trust account on Mestemacher's behalf-as *Mestemacher's agent*-and is legally obligated to disburse the funds to Mestemacher the moment he directs their release.  This crucial distinction is more than sufficient to warrant a finding that the Plan's action is indeed "equitable" in nature.

*Id*. at 356 (emphasis added).  For purposes of an equitable lien under § 502 (a)(3), *Bombardier* establishes that such actions are only proper once settlement funds are in the "possession or control" of a plan's beneficiary either directly or through the doctrine of constructive possession, *i.e.*, once the funds are in the hands of the party's agent/attorney for distribution to the plan beneficiary.

The Fifth Circuit's rationale in *Bombardier* demonstrates that the funds set aside in the

11

aggregate settlement fund are not subject to an equitable lien action.  Like *Knudson* and *Bauhaus*, the aggregate settlement is being held in trust by a party that is not an agent of any particular claimant, BrownGreer, and the funds are outside the possession or control of the claimants.  Simply stated, the funds are not in an "identifiable fund" that is in the "possession or control" of a plan beneficiary either directly or through an agent/attorney.  Once the funds are distributed to a claimant or their attorneys for purposes of being provided to a claimant, the Plaintiffs may pursue equitable lien actions under ERISA.  At that point, the funds will be both identifiable and in the possession/control of the plan beneficiary.  From a procedural standpoint, such actions will need to be asserted directly against plan beneficiaries or agents of the plan beneficiaries, such as an attorney, who is holding the settlement proceeds in trust for distribution to the plan beneficiary.

In short, what Plaintiffs are attempting to establish is a massive, single lien against unidentified shares of unidentified funds.  *Sereboff*, *Knudson*, and *Bombardier* do not sanction such claims.  Nor do any other cases analyzing § 502(a)(3).  Accordingly, the Court should reject Plaintiffs' effort to pursue equitable reimbursement actions where subject matter jurisdiction is absent.

## B. PLAINTIFFS' COMPLAINT FAILS TO STATE A CAUSE OF ACTION AGAINST THE NPC DEFENDANTS.

The NPC Defendants should be dismissed from this case, pursuant to Fed.R.Civ.P. 12(b)(6), as they are improperly named as defendants in the Complaint.  In *Bombardier,* the Fifth Circuit addressed when, if ever, an attorney for a plan beneficiary falls within the "universe of possible defendants" under §502(a)(3).  Only in limited circumstances, none of which are applicable here, did the Court of Appeals find that the plan beneficiary's lawyers could be subjected to an ERISA

claim.  In *Bombardier*, the Fifth Circuit held that, "[a]s liability under that provision [§502(a)(3)] does not depend on whether a substantive provision of ERISA imposes a duty on the particular defendant subject to suit, we hold that the law firm, as counsel for the plan participant and stake holder of specifically identifiable settlement funds in a trust account-on that beneficiary's behalf-fits comfortably within the "universe of possible defendants" subject to suit under that provision." *Id*. at 354.

The NPC Defendants are improperly named in the Complaint since neither they nor their clients have "possession or control" of a "specifically identifiable fund" on a beneficiary's behalf. Notwithstanding Plaintiffs complete failure to identify so much as one plan beneficiary that may be subject to an equitable reimbursement claim under ERISA, the aggregate settlement fund is not only unallocated and undistributed but it is also in the possession of a third-party trustee.  Nor are the NPC Defendants subject to any obligations to the Plaintiffs, contractual or otherwise, that would justify their inclusion as defendants in the Complaint.  Absent the assertion of these grounds for alleging ERISA claims against the NPC Defendants, the claims against these defendants must be dismissed.

As noted above, under § 502(a)(3) an ERISA plan has a right to bring an action for equitable restitution for the payment of expenses to a plan beneficiary once there is an "identifiable fund" from a third-party that is within the "possession or control" of the plan beneficiary that is designed to compensate the plan beneficiary for the same injuries previously compensated by the ERISA plan, *i.e.*, assuming the language of the applicable plan satisfies the requirements of ERISA for purposes of asserting an equitable lien.  *See Sereboff*, *supra*.  Because there are no "identifiable funds" within the "possession or control" of any Vioxx personal injury claimants, there are no viable claims for

equitable restitution against claimants.  Perhaps recognizing their inability to assert such claims against the Jane Doe Vioxx Claimants 1-1000, Plaintiffs have named the members of the NPC as defendants.  Plaintiffs, however, have no viable claims against the NPC Defendants.

As noted above, none of the NPC Defendants have received any distribution of funds from the Vioxx Settlement for clients that are known to be subject to an equitable lien under ERISA. Because ERISA equitable reimbursement claims cannot be asserted until the identifiable fund is in the possession or control of the plan beneficiary, *Bombardier* has not been met.  Stated differently, since the aggregate settlement funds are in a trust account outside the control of NPC Defendants, Complaint ¶4, the claims against the NPC are not actionable under *Bombardier*.[5]

In sum, Plaintiffs may not maintain an ERISA § 502(a)(3) action against the members of the NPC.  The claims against the NPC Defendants should be dismissed.

### C.     ERISA DOES NOT AFFORD PLAINTIFF THE RIGHT TO PRIVATE PERSONAL INFORMATION CONCERNING ALL VIOXX PERSONAL INJURY CLAIMANTS.

Plaintiffs are seeking relief that is unavailable under ERISA.  While ERISA authorizes certain equitable relief under §502(a)(3), no case law supports Plaintiffs request that Defendants

---

[5]Nor do the NPC defendants have any contractual obligation owed to the plaintiffs that could provide the basis for liability.  *See Hotel Employees and Restaurant Employees Int'l. Union Welfare Fund v. Gentner*, 50 F.3d 719, 722-23 (9th Cir. 1995) (ERISA beneficiary's attorney did not violate terms of plan when he failed to reimburse plan from settlement received from tort-feasor, since there was no professional or contractual relationship between plan and attorney, and attorney thus was not subject to suit on that basis; attorney was not signatory to beneficiary's subrogation agreement and thus was not bound by it, Congress did not intend to extend ERISA liability to parties with no professional or contractual relationship with a plan, and attorney and beneficiary were not alter egos).  Simply stated, since the members of the NPC do not have any contractual obligations to Plaintiffs, Plaintiffs cannot pursue claims against these defendants absent a factual predicate analogous to that in *Bombardier*.

14

produce confidential information concerning each and every Vioxx personal injury claimant. Plaintiffs request would undoubtedly violate the Constitutionally protected privacy interests of Vioxx personal injury claimants that have no relationship with the Plaintiffs.  Equitable relief available under ERISA clearly would not encompass the wholesale violation of the privacy rights of individuals that have no affiliation with Plaintiffs.  Nor do Plaintiffs bother to explain how the release of such information could be accomplished without running afoul of federal privacy laws, or with the terms of the Agreement itself, which expressly provides that such information "shall be kept confidential by the Parties . . . and shall not be disclosed except" in circumstances not present here.  *See* Settlement Agreement § 15.1.  Accordingly, since the relief requested by Plaintiffs is unavailable to them, the Complaint should be dismissed in its entirety.

In cases in which a fiduciary has reason to believe that a particular plan beneficiary has secretly secured a settlement from which the plan would be entitled to a recovery, the ordinary course is for the fiduciary to bring suit against that beneficiary and seek details of his recovery through ordinary discovery.  *See*, *e.g.*, *UnitedHealth Group, Inc. v. Dowdy*, No. 8:06-CV-2111, 2007 U.S. Dist. LEXIS 80090 (M.D. Fla. Oct. 29, 2007).  NPC Defendants know of no precedent for the relief that Plaintiffs seek here - essentially, a judicial conscription of Defendants to do Plaintiffs' legwork for them of identifying their plan beneficiaries who have not complied with the plans that Plaintiffs purport to be responsible for administering.  Nor do Plaintiffs attempt to cite to any authority supporting the availability of the unprecedented relief they are seeking.  To the contrary, Judge Higbee has rejected a similar effort in the Vioxx proceedings pending in New Jersey state court.  *See In re Vioxx Litigation, Case No. 619*, ATL-L-590-08, Transcript at 45 (N.J.Super. Atlantic Cty. March 14, 2008) (Higbee, J.) ("[T]he Court does not provide you lists of people who've settled their

cases so that insurance companies can go to them before they get their checks.  That's not the way

its done.  And it's only because it's a pool of money that I think people, you know, vultures tend to

circle around.").[6]

The relief requested by Plaintiffs is unavailable since it is precluded by Constitutional privacy

interests.  Substantively, the Due Process clause of the United States Constitution "embodies a

promise that a certain private sphere of individual liberty will be kept largely beyond the reach of

the Government."  *Thornburgh v. American College of Obstetricians and Gynecologists*, 476 U.S.

747, 772 (1986).  This constitutional right to privacy extends to "the individual interest in avoiding

disclosure of personal matters."  *Whalen v. Roe*, 429 U.S. 589, 599 (1977); *Fudjo v. Coon,* 633 F.2d

1172, 1175 (5th Cir. 1981).

Medical information and records of a patient are clearly within this constitutionally-protected

sphere.  *Whalen*, 429 U.S. at 598; *Sherman v. United States*, 244 F. 3d 357, 365 (5th Cir. 2001) ("an

individual's informational privacy interest in his or her SSN is substantial."); *United States v.*

*Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("although the full measure of the

constitutional protection of the right to privacy has not yet been delineated, . . . [t]here can be no

question that an employee's medical records . . . are well within the ambit of materials entitled to

privacy protection").

Plaintiffs request that the Court order the disclosure of the names, Social Security numbers

and other personal identity information of all Vioxx Claimants.  This disclosure, if permitted, would

necessarily reveal sensitive, personal medical information that is subject to Constitutional protection.

As noted above, the Settlement Agreement does not require that Vioxx Claimants waive their

---

[6]A copy of the complete transcript is attached hereto as Exhibit "A".

presumptive expectation that this information will continue to receive protection against compelled disclosures. Indeed, the Settlement Agreement requires that the parties maintain the information as confidential and does not authorize its disclosure except in limited, unrelated circumstances. *See* Settlement Agreement § 15.1.[7] Thus, the personal medical information (including their SSNs) of Vioxx Claimants requested by Plaintiffs is within the realm of privacy protected by the Constitution and may not be disclosed to Plaintiffs unless there is a compelling interest in such disclosure. *See Sherman, supra. See also* The Health Insurance Portability and Accountability Act (HIPAA), Pub.L. 104-91, 110 Stat. 1936 (Aug. 21, 1996) and 45 CFR §164.508.

While certain Plans might arguably have an interest in claims information for specifically identified plan beneficiaries that are subject to equitable restitution claims, Plaintiffs clearly have no such interest with respect to claimants that did not receive such benefits or where the language in the applicable plan fails to create a right to equitable restitution.[8] There is simply no need - let alone a "compelling" one - for the Plaintiffs to invade the privacy interests of each and every Vioxx personal injury claimant. Accordingly, the Constitutional privacy interests at stake clearly outweigh and preclude Plaintiffs' request for equitable relief under ERISA.

### D.   COUNTS II AND III FAIL TO STATE COGNIZABLE CAUSES OF ACTION.

In addition, Counts II and III of the complaint fail to state any legal theory supporting the

---

[7] Remarkably, Plaintiffs Complaint asserts that the privacy interests of Vioxx personal injury claimants have been waived by virtue of the fact that the information they are seeking was provided to Merck and BrownGreer. Complaint ¶60. This assertion in the Complaint overlooks the confidentiality provision in the Settlement Agreement.

[8] The right to such information would obviously need to be established on a case-by-case basis once there is a "identifiable fund" within the "possession or control" of a plan beneficiary.

requested relief.  Rather, these counts merely request relief (preliminary equitable relief and permanent equitable relief, respectively) without specifying the grounds for the relief being requested.  These counts should be dismissed under Rule 12(b)(6).  Alternatively, NPC requests that Plaintiffs be required to provide a more definite statement of these counts so that NPC may fully answer the complaint.

Counts II and III should be dismissed because they fail to specify any grounds for the legal relief being requested.  As the Fifth Circuit has explained, "[d]espite the liberality of modern rules of pleading, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. 1981), *cert. dismissed*, 462 U.S. 1125 (1983).  The requests for preliminary and permanent equitable relief do not contain any "direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some liable legal theory."  These counts merely request procedural relief and should be dismissed under Rule 12(b)(6).[9]

Should the Court disagree with NPC's contention that either or both of these counts should be dismissed, NPC respectfully requests that Plaintiffs be ordered to provide a more definite

---

[9] In regards to Count II, any request for preliminary injunctive relief should be rejected since Plaintiffs are actually requesting final judgement, *i.e.*, Plaintiffs are asking the Court for an order compelling the production of information in violation of the Constitutionally protected privacy rights of Vioxx personal injury claimants.  This request goes well beyond a mere request that the Court maintain the status quo.  *See Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 476 (5th Cir. 1985) (a preliminary injunction "should not grant relief properly awarded only in a final judgment, and it is an abuse of discretion for the district court to issue a preliminary injunction which permits one party to obtain an advantage by acting, while the hands of the adverse party are tied by the writ.") (citations and internal quotations marks omitted).

statement pursuant to Rule 12(e).

### E.     THE CLASS ACTION ALLEGATIONS SHOULD BE STRICKEN.

When it is readily apparent at the outset of a case that the class allegations are patently insufficient, they may be dismissed. *See General Telephone Co. v. Falcon*, 457 U.S. 147, 160 (1982)(it at times may be clear from the pleadings alone "whether the interests of the absent parties are fairly encompassed with the named plaintiff's claim"). This is such a case.

#### 1.     The Dismissal or Striking of Class Allegations Is Appropriate Under Rule 12(b)(6) or Rule 23(d)(1)(D) When the Complaint Fails to Plead an Ascertainable Class.

When considering a Rule 12(b)(6) motion, the Court should accept as true the well-pleaded factual allegations in a complaint. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The plaintiff must, however, plead a plausible basis for the relief sought. The Supreme Court's recent decision in *Bell Atlantic Corp v. Twombly* employed a plausibility standard for scrutinizing the sufficiency of pleadings challenged by a Rule 12(b)(6) motion. Post-*Twombly*, dismissal is appropriate when the plaintiff has not pled facts sufficient to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. ___, 127 S.Ct. 1955, 1974 (2007). While the complaint need not provide detailed allegations of every fact, the facts pled must show that the plaintiff's grounds for entitlement to relief are more than merely speculative. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). When the plaintiff's allegations do not state a claim that could plausibly entitle the plaintiff to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the Court." *Id.* (quoting *Twombly*, 127 S.Ct. at 1966); *Doe v. MySpace, Inc.,* ___ F.3d ___, 2008 WL 2068064, *3 (5th Cir. May 16, 2008) ("[A] plaintiff must plead enough facts to state a claim to relief that is plausible on its face.").

19

Applying *Twombly's* plausibility standard, discussed above, to the present motion to dismiss the class allegations, it must appear plausible from the allegations of the complaint that Greater New York will be able to prove facts sufficient to meet Rule 23's prerequisites for class certification.  If the complaint does not state facts sufficient to state a plausible class action, the class action allegations should be dismissed.  Alternatively, Rule 23(d)(1)(D) provides that insufficient class allegations may be eliminated.  *See* Fed.R.Civ.P. 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly").  It is well settled in the Fifth Circuit and the Eastern District of Louisiana that class action allegations may be stricken or dismissed at the pleading stage if the complaint does not allege an ascertainable class or state a claim that can meet Rule 23's requirements.  The Fifth Circuit recently announced this standard in *John v. Nat'l Sec.Fire & Cas. Co.*, 501 F.3d 443,445 (5th Cir. 2007).  The Fifth Circuit held: "Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."  Naturally, the district courts have followed this precedent.  *See Majoria v. United Parcel Service, Inc.*, 2008 WL 169776 (E.D.La. Jan. 17, 2008) (Engelhardt, J.); *Henry v. Allstate Ins. Co.*, 2007 WL 2287817 (E.D.La. Aug. 8, 2007) (Feldman, J.).

Applying this reasoning to the instant Complaint, the class that Greater New York seeks to represent is not certifiable because the claims asserted are inchoate, leaving the class unascertainable. *See* discussion above at 4 - 17.  Further the class is not certifiable because: 1) each plan is unique and the language of each plan must be individually considered to determine whether the plan complies with *Sereboff* or is not governed by ERISA; 2) each Plan has sufficient resources such that each could pursue its equitable reimbursement rights individually; and 3) the Class definition is not

sufficiently definite and requires an inquiry into the merits of each class member's claims to determine membership. Each of these grounds are further explicated below.

### a.     The Differences Between The Plans Shows a Lack of Predominant Common Questions.

It is beyond peradventure that each of the Plans that the representative Plaintiffs contend are class members are unique instruments.  Proof of the differences between class members' plans is self-evident by the Class Action Complaint, which purports to quote from the Notification and Reimbursement Provisions of Greater New York's plan and the New York State Teamster's plan; both plans use different language. *Compare* Complaint ¶ 42 *with* Complaint ¶ 43.  These differences are compounded by revisions to the myriad plans over time.  Because the language of each plan differs, each is subject to different meaning and different interpretation.  It is therefore implausible for the Plaintiffs to contend that the Notification and Reimbursement Provisions of every class member's Plan is or could meet the commonality requirement of Fed.R.Civ.P. 23(a)(2), much less the predominance standard of Rule 23(b)(3).  Where myriad differences exist between the plans of class members, there exists no predominating common issue of fact that permits a class to be certified. *See, e.g., Young v. Ray Brandt Dodge, Inc.*, 176 F.R.D. 230, 234 (E.D.La. 1997) (differences in insurance policies was a factor against finding predominating common facts which resulted in denial of class certification).

### b.     The Claims of Class Members Are So Large that Absent Class Members of the Purported Class Are Already Pursuing Their Claims Individually.

Where the class is comprised of large, commercial entities with sufficient incentives to pursue their claims individually, a class action is not the superior means of adjudicating the absent

class members' claims.  As the advisory committee's notes to Rule 23 indicate, "[t]he court is to consider the interests of the individual members of the class in controlling their own litigations and carrying them on as they see fit."  Fed.R.Civ.P. 23 Advisory Committee Notes, 1966 Amendment, 28 U.S.C.A. Rule 23, at 578.  In considering this interest, "the court should inform itself of any litigation actually pending by . . . the individuals," because the existence of pending actions may reveal that "[t]he interests of individuals in conducting separate lawsuits [are] so strong as to call for denial of a class action." *Id.; see also In re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 145, 165 (2d Cir.1987) ("All plaintiffs may not desire class certification . . . because those with strong cases may be better off going it alone.").

In the instant case, Greater New York is a New York-based employee welfare benefit plan. Complaint ¶1.  It seeks to represent a class of similarly situated ERISA-covered health benefit plans with damages in excess of $5 million, exclusive of interest and costs.  *Id.*, ¶14.

Greater New York and its proposed class members are well organized and financed institutional entities with considerable resources.   Thus, the absent class members of Greater New York's proposed class have claims that give them ample incentive to bring individual suits to vindicate their rights.  In fact, according to the allegations in Paragraph 5 of the Complaint of AvMed, Inc., in related litigation, the AvMed "plaintiffs collectively provide health coverage to approximately 70% of all the individuals in the United States who have private health insurance." *See AvMed, Inc., et al v. BrownGreer PLC, et al*, Civ.No. 08-1633, Complaint ¶5 (E.D.La. Apr. 14, 2008).  Therefore, absent class members of the putative class have already filed individual claims and this Court has already denied their motion for a temporary restraining order.  *In re Vioxx Products Liability Litigation (AvMed Inc., v. U.S. Bancorp Inc.)*, MDL No. 1657, Minute Entry (E.D.La. June 11, 2008)

22

(also setting hearing for preliminary injunction on June 27, 2008).   Where the class is already actively engaged in private litigation the superiority of the class devices is absent.

  **c.**  **The Class Is Not Identifiable Without Individual Analyses.**

  As a threshold matter, the membership of Plaintiff's purported class is not even ascertainable.[10]   Plaintiffs define the class as:

> All ERISA-covered health benefit plans that (a) have paid or agreed to pay Vioxx-related medical benefits on behalf of plan beneficiaries who have enrolled or will enroll in the Vioxx Settlement and (b) whose plan documents contain notification and/or reimbursement provisions regarding claims against and/or settlements with parties who cause injuries to plan beneficiaries.

Complaint ¶18.   *Sereboff, supra* and its progeny make clear that the determination of whether the subrogation provision of a Plan is covered by ERISA requires intensive legal scrutiny on a case-by-case, plan-by-plan, basis.   *See also Bombardier, supra.*   Where the class definition is not sufficiently definite to allow a court to determine if a class member meets the conditions of the class, the class may be disallowed.   *See, e.g., Gibbs Properties Corp. v. Cigna Corp.*, 196 F.R.D. 430, 442-43 (M.D.Fla. 2000) ("Consequently, the class must be clearly defined and must be ascertainable without prolonged and individualized analytical struggle").   Since the determination of whether a plan's subrogation provisions are governed by ERISA involves significant evaluation of both fact and law, the class definition is overbroad and improperly indefinite to the point that the class is not ascertainable.

  As the purported class is not ascertainable for all of the reasons set forth above, the class

---

[10]"The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." *John,* 501 F.3d at 445 & n.3.

allegations should be stricken.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, NPC Defendants motion to dismiss should be granted.

Alternatively, NPC Defendants request that the class allegations be stricken from the Complaint.

Respectfully submitted,

By:_____/s/ Leonard A. Davis_____
            **Russ M. Herman (Bar No. 6819)**
            Leonard A. Davis (Bar No. 14190)
            Stephen J. Herman (Bar No. 23129)
            ***Herman, Herman, Katz & Cotlar, L.L.P.***
            820 O'Keefe Avenue
            New Orleans, Louisiana  70113
            Telephone: (504) 581-4892
            Facsimile: (504) 561-6024

            **ATTORNEYS FOR THE NPC DEFENDANTS - BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.; BLIZZARD, MCCARTHY & NABERS, LLP; GIRARDI & KEESE; HERMAN, HERMAN, KATZ & COTLAR, LLP; and LEVIN, FISHBEIN, SEDRAN & BERMAN**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 26th day of June, 2008.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:   (504) 561-6024
ldavis@hhkc.com