**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **1199SEIU GREATER NEW YORK** | * | **CASE NO. 08-3627** |
| **BENEFIT FUND, by its Trustees,** *et al.,* | * | |
| on behalf of themselves and all others | * | **RELATED CASE:** |
| similarly situated, | * | **2:05-MD-1657** |
| | * | **VIOXX MDL LITIGATION** |
| **Plaintiffs,** | * | |
| | * | **SECTION L** |
| **v.** | * | |
| | * | **JUDGE ELDON E. FALLON** |
| **BROWNGREER, PLC,** *et. al.* | * | |
| | * | **MAGISTRATE JUDGE** |
| **Defendants.** | * | **KNOWLES** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**</u>

Plaintiffs 1199SEIU Greater New York Benefit Fund and The New York State Teamsters

Council Health and Hospital Fund ("Plaintiffs"), by and through their attorneys, King, Krebs &

Jurgens, P.L.L.C., Levy Phillips & Konigsberg, LLP, and Crowell & Moring LLP, hereby respectfully

submit this Memorandum in Support of Their Motion for Preliminary Injunction, pursuant to Fed.

R. Civ. P. 65, so that this Court may rule on Plaintiffs' request for preliminary injunctive relief prior

to August 1, 2008, the date when the distribution of funds from the Vioxx Settlement Fund to

qualifying claimants likely is to begin.

## PRELIMINARY STATEMENT

This case is about the ability of thousands of self-funded ERISA health care plans sponsored by employers and employee organizations across the nation to enforce their ERISA-protected right to obtain reimbursement for medical benefits they have paid on behalf of their plan participants and beneficiaries (collectively, "beneficiaries") where those beneficiaries are receiving separate compensation for their injuries as a result of a mass-tort settlement. Plaintiffs have crafted the relief they seek narrowly in order to minimize any possible infringement on the interests of other parties yet safeguard the plans' ERISA-protected reimbursement rights. Plaintiffs are entitled to this limited interim injunctive relief for the reasons set forth below.

Plaintiffs, and the Class of health plans they seek to represent, are self-funded ERISA health plans whose plan documents provide reimbursement rights, and which have paid, or have agreed to pay, medical benefits on behalf of plan beneficiaries who have enrolled or will enroll in the nationwide settlement of personal injury claims asserted against Merck for injuries associated with their use of Vioxx (the "Vioxx Settlement").[1] The settling beneficiaries are referred to herein as the "Vioxx Claimants." Plaintiffs seek, through this litigation, to enforce their ERISA-protected rights by requiring the law firms who represent the Vioxx Claimants (1) to provide Plaintiffs with limited, but necessary, information regarding those claimants, consistent with their express undertaking set forth in the Vioxx Settlement Agreement, and (2) to preserve the Vioxx Settlement funds received on behalf of Plaintiffs' beneficiaries in a manner that is consistent with counsel's ethical obligations

---

[1]     The putative class is limited to those self-funded ERISA health benefit plans whose terms and conditions obligate beneficiaries to reimburse the plans from settlement funds for medical benefits in the event of recovery from third parties. As explained more fully below, such terms and conditions are standard in the industry and can be expected to be found in the plan documents of virtually all self-funded ERISA plans. *See infra* at 11.

to safeguard funds to which the Plaintiffs assert a contractually-imposed and ERISA-protected lien right, and does not prejudice the plans' claims to those funds.

There can be no genuine dispute that Plaintiffs are entitled to the reimbursement and notification rights expressly set forth in their plan documents.  Likewise, there can be no serious argument that plan beneficiaries who have had their medical benefits paid by their ERISA self-funded health plans have a right to disregard their obligations to reimburse those plans from settlement funds they receive for the same injuries.  The only question is whether Plaintiffs are entitled to injunctive relief to ensure they are able to enforce their rights before the Vioxx Settlement funds are disbursed to the Vioxx Claimants and dissipated.

In the related *AvMed* case, Defendants have complained that similar injunctive relief sought by the health plans that are the plaintiffs in that action somehow would impair alleged privacy and settlement rights of those Vioxx Claimants who are not beneficiaries of those plans.  *See generally*, *Avmed v. BrownGreer*, No. 08-1633, 05-md-1657 (E.D.La.), Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, filed June 20, 2008 (Docket Entry 14865) ("*Avmed* Defendants' Opposition").  To that end, the Vioxx Claimants submitted an *amicus* brief proposing "less intrusive methods" to accomplish the result the plaintiffs in that action seek in a manner that they assert would "protect the rights of tens of thousands of claimants not subject to reimbursement."  *See id.*, The Plaintiff's Steering Committee's and the Negotiating Plaintiff's Counsel's, Each as *Amicus Curiae*, Memorandum of Law in Opposition to the Motion for Temporary Restraining Order and Preliminary Injunction, filed June 20, 2008, at 8-9 (Docket Entry 14849).

Plaintiffs are sensitive to Defendants' concerns.  Indeed, the carefully-tailored relief Plaintiffs seek here is designed specifically to protect against infringement of the rights of *any* of the Vioxx Claimants, especially those who are not beneficiaries of the Plaintiff plans and who did not receive

any medical benefits from Plaintiffs.  It also is wholly consistent with the objectives of the Vioxx

Claimants' proposal – including, *inter alia*, the screening out from any informational disclosure those

claimants who readily can be determined not to be beneficiaries of ERISA self-funded plans and the

inclusion of an accommodation for those claimants who may suffer a substantial hardship as a result

of even a short delay in their receipt of the Vioxx Settlement funds.  Thus, the injunctive relief

Plaintiffs seek merely would require the attorneys representing the Vioxx Claimants to (1) undertake

minimal due diligence to provide Plaintiffs with the limited information necessary to enable them to

enforce their ERISA-protected rights (while screening out those claimants who likely received no

medical benefits for which reimbursement would be appropriate), and (2) hold for a brief period, in

an interest-bearing escrow account, those Vioxx Settlement funds payable to claimants who

potentially are subject to an ERISA-protected reimbursement claim by a member of the Plaintiff

Class.

Under these circumstances, Defendants cannot reasonably claim any hardship or undue

burden in complying with the relief Plaintiffs propose herein.  The Settlement Agreement expressly

requires, *before any monies can be disbursed by the Settlement Administrator*, that each claimant and his/her

counsel provide to Merck a signed release affirming that they "**represent and warrant that any**

**and all Liens with respect to any and all Settlement Payments … have been satisfied and**

**discharged**."  *See* Settlement Agreement Exhibit 1.2.2.3 ("Release of All Claims"), Exh. 1 at 4

(emphasis added).  To the same effect, the Settlement Agreement release requires that each attorney

representing a Vioxx Claimant sign a "Certification of Counsel" representing that the attorney has

discussed all issues relating to the Settlement Agreement with the claimant, and agrees to comply

with his/her "**joint and several obligations to provide representations and warranties**

**regarding the satisfaction of, and indemnification with respect to, Liens,"** including, *inter alia*, liens by self-funded ERISA health benefit plans.  *See id.* at 11 (emphasis added).

Thus, the information Plaintiffs seek from the law firm defendants about the Vioxx Claimants they represent is information those firms *already* are obligated to collect pursuant to the express terms of the Settlement Agreement, and certifications (regarding the non-existence or satisfaction of equitable liens) those firms *already* are obligated to provide, *prior to any disbursement of the settlement funds*.  Moreover, with respect to Plaintiffs' request that the law firms hold temporarily the Vioxx Settlement funds designated for Plaintiffs' beneficiaries, the firms *already* are ethically obligated to safeguard those funds given their awareness of Plaintiffs' assertion of a contractual and ERISA-protected lien against those funds.[2]

Consistent with these express obligations, Plaintiffs seek entry of the attached Proposed Preliminary Injunction Order which establishes an expedited process designed to allow the Vioxx Settlement to proceed in a timely, efficient, and appropriate manner, while protecting the rights of *all* interested parties to this litigation.  This process provides for, *inter alia*:

- Notification by the Settlement Administrator to all parties in advance of any distribution of Vioxx Settlement funds;

- Certification by the law firms representing the Vioxx Claimants that a good-faith investigation has been conducted into the existence and amount of any potential lien on the Vioxx Settlement funds;

- Submission by the law firms either of a certification that no claimant received Vioxx-related benefits from a self-insured ERISA plan or a list of claimants (with limited identifying information) who may have received such benefits;

---

[2]    *See, e.g.*, Louisiana Rule of Professional Conduct 1.15(d) (discussing attorneys' obligation to maintain property "in which two or more persons claim interests … until the dispute is resolved"); Louisiana State Bar Association Public Opinion 05-RPCC-004 at 1 (Apr. 4, 2005), attached at Exh. 2 (discussing attorneys' obligation to safeguard funds on behalf of "third parties whom the lawyer knows to have certainly legally enforceable rights to the funds or property," including liens).

- Authorization for initial disbursement of Vioxx Settlement funds, consistent with the Settlement Agreement, to any Vioxx Claimant (a) not included on the list of claimants who may have received benefits from a self-insured ERISA plan; (b) who will suffer a substantial hardship unless he/she receives the funds immediately; or (c) whose Vioxx Settlement funds that will remain with the Settlement Administrator following the initial distribution are sufficient to satisfy any possible lien to which a member of the Plaintiff class may be entitled; and

- A limited period of time (45 days following the submission of the list of potential beneficiaries) during which any class member shall have the right to submit a demand for reimbursement or restitution related to the payment of Vioxx-related benefits, following which the law firm shall be authorized to disburse the Vioxx Settlement funds, consistent with the Settlement Agreement, to any claimant for whom no such demand has been made.

*See* Proposed Order.

Even without the narrow restrictions and express safeguards included in Plaintiffs' Proposed Order, federal courts routinely have enjoined the distribution of settlement proceeds pending the resolution of reimbursement claims similar to those raised by Plaintiffs in this case. *See, e.g., infra* at 12-13. Here, too, Plaintiffs readily meet the standards for a preliminary injunction for several reasons:

*First*, under the binding Supreme Court and Fifth Circuit precedent of *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356 (2006), and *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferer, Poirot & Wansbrough*, 354 F.3d 345 (5th Cir. 2003), Plaintiffs are likely to succeed on the merits of their reimbursement claims. These binding precedents leave no question that self-funded ERISA health plans, like Plaintiffs, are entitled to obtain reimbursement or restitution when beneficiaries receive settlement funds from third parties for the same injuries.

*Second*, Plaintiffs will be harmed irreparably if the requested relief is not granted. Without the basic claimant information that is in Defendants' exclusive possession and readily available to them, Plaintiffs have no effective means of enforcing their ERISA-protected rights to reimbursement for medical benefits they have provided. *See* Affidavit of Mark Johnson ("Johnson Aff."), Exh. 3 at

¶¶ 20-22; Affidavit of Richard Ives ("Ives Aff."), Exh. 4 at ¶¶ 10-14; Affidavit of Robert Adelman ("Adelman Aff."), Exh. 5 at ¶¶ 7-8, 10-11; Affidavit of Kenneth Stilwell ("Stilwell Aff."), Exh. 6 at ¶¶ 6, 9-13.[3]  Furthermore, once the proceeds of the Vioxx Settlement have been disbursed to the tens of thousands of individual Vioxx Claimants, it will become overwhelmingly difficult – if not impossible – for Plaintiffs to enforce their ERISA reimbursement rights at all.

Third, the balance of hardships overwhelmingly favors Plaintiffs in this case.  The injunctive relief Plaintiffs seek is carefully designed to limit disclosure to Plaintiffs of identifying information only for those claimants who are participants in their plans, and to limit any delay in disbursement to those funds most likely to be subject to an equitable reimbursement claim.  Indeed, pursuant to the process proposed by Plaintiffs, the majority of Vioxx Claimants likely will receive their Vioxx Settlement funds in full, and without any delay at all; the remainder – i.e., those claimants who may be obligated to reimburse Plaintiffs for the medical benefits they received – likely will incur no more than a brief delay in the distribution of some of their Vioxx Settlement funds.  Of course, to the extent these claimants in fact are required to reimburse their ERISA health plans, they will have lost nothing they were entitled to keep.  And to the extent these claimants are found not to be obligated to reimburse any, or all, of the Vioxx Settlement funds allocated to them, their rights, too, will have been protected by the fact that the "delayed" funds will be placed in an interest-bearing escrow account by their attorneys.[4]  In contrast, if this Court declines to grant the requested preliminary

---

[3]     The plaintiffs in the AvMed case similarly have provided to this court affidavit evidence supporting this notion.  Rather than repeat them here, Plaintiffs incorporate herein by reference the representations contained in those affidavits.  See Avmed, Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction, filed on June 9, 2008 (Docket Entry 14640).

[4]     Only those rare individuals who would suffer a particular hardship if their receipt of the Vioxx Settlement funds is delayed for a short while would have any basis for claiming that the process proposed by Plaintiffs would cause them any injury.  But Plaintiffs' proposal creates a means for such individuals to obtain

(continued…)

injunctive relief, Plaintiffs stand to lose any practical ability to enforce their ERISA-protected

reimbursement rights,[5] which will result in a loss to Plaintiffs of tens, if not hundreds, of millions of

dollars which rightfully belong to the plans.

Fourth, the public interest strongly favors the enforcement of the terms of ERISA plans

consistent with the specific enforcement remedies established by Congress in Section 502(a)(3) of

ERISA (codified as 29 U.S.C. § 1132(a)(3)).  The ERISA-protected rights Plaintiffs seek to enforce

through this litigation – and that Plaintiffs likely will lose unless this Court grants the requested

injunctive relief – are essential to preserve each plan's assets and its orderly administration for the

benefit and protection of *all* of its members; without these rights, the cost to plan sponsors and

beneficiaries would increase and/or benefits would have to be reduced.  *See* Johnson Aff. at ¶¶ 16-

17; *see also* Stilwell Aff. at ¶ 5.  The binding Supreme Court and Fifth Circuit precedent upholding

the rights of ERISA plans to enforce these equitable reimbursement rights further demonstrates that

the public interest favors the relief sought by Plaintiffs.  Moreover, by granting the requested relief,

this Court will enable all parties to this litigation, including the tens of thousands of individuals who

were injured in connection with their use of Vioxx, to achieve finality with respect to their claims in

a timely and appropriate manner.

## BACKGROUND

This case arises out of the nationwide settlement reached on or about November 9, 2007

---

(continued)

an immediate payment of the Vioxx Settlement funds allocated to them, so this is a non-issue.

[5]      Unless Defendants agree, or are required by this Court, to provide Plaintiffs with the limited, but necessary, information regarding the claimants participating in the Vioxx Settlement, Plaintiffs will be unable to determine which of their beneficiaries will be receiving settlement funds or the amount thereof. There is no publicly available data identifying these claimants – especially for the approximately 14,500 claimants who entered into private tolling agreements with Merck (and thus never filed suit).  *See infra* at 9, 18.

between Merck and a negotiating committee of plaintiffs' lawyers, with respect to the personal injury claims asserted by tens of thousands of individuals against Merck associated with their use of Vioxx. In settlement of these claims, Merck has agreed to pay $4.85 billion into a settlement trust fund to resolve all pending or tolled Vioxx personal injury claims involving heart attacks, ischemic strokes, and sudden cardiac death.

The facts leading up to the filing of these tens of thousands of lawsuits against Merck already are well known to this Court and are alleged in Plaintiffs' Complaint. Accordingly, Plaintiffs will not recite that history here. It is sufficient to note, as set forth in this Court's May 22, 2008 Order, that as of that date, 59,135 claimants had submitted registration forms of which 50,757 had submitted enrollment materials, 46,124 had submitted releases, and 44,451 had submitted complete enrollment packages. Order (May 22, 2008), Case No. 2:05-md-01657-EEF-DEK, Exh. 7 at 5-6. Of the total pool of Vioxx Claimants, an estimated 14,500 had asserted Vioxx personal injury claims but entered into tolling agreements with Merck in lieu of filing lawsuits. *See* Settlement Agreement Between Merck Co., Inc. and The Counsel Listed on the Signature Pages Hereto (Nov. 9, 2007), ("Settlement Agreement"), Exh. 8 at 1.

In accordance with the terms of the Settlement Agreement, each of these tens of thousands of individuals, and/or their personal representatives, were required to execute releases and other documents in furtherance of this settlement. *See* Release of All Claims at 4. In light of this large number of Vioxx Claimants, it is a virtual certainty that Plaintiffs have expended, and/or authorized the expenditure of, significant sums for Vioxx-related medical care for Vioxx Claimants.[6] The

---

[6]    Because of Plaintiffs' inability, at this time, to identify their plan beneficiaries who are participating in the Vioxx Settlement and who received benefits from Plaintiffs' health plans, these claimants currently are named in this litigation as "Jane Doe Vioxx Claimants."

Settlement Agreement expressly takes into account the lien interests of *governmental* payors of medical benefits (*e.g.,* Medicare and Medicaid) by affirmatively obligating Vioxx Claimants and their counsel to satisfy governmental liens and provide Merck with proof that such liens have been resolved. Pursuant to the Settlement Agreement, a Lien Resolution Administrator has been appointed to oversee governmental lien resolution, and no settlement monies will be disbursed without proof of satisfaction of these governmental liens.

In contrast, the Settlement Agreement fails to make any provision for resolving the comparable reimbursement, subrogation, and/or lien rights of ERISA health plans, including the Plaintiff self-funded ERISA plans. *See* Settlement Agreement, Art. 12.1 (Liens). Instead, the Settlement Agreement provides for the distribution of settlement monies to the Vioxx Claimants in strict confidence, and in a manner that renders it impossible for Plaintiffs to identify their beneficiaries who will be receiving Vioxx Settlement funds. *See* Settlement Agreement, Art. 15. The only accommodation the Settlement Agreement makes for ERISA plans is the requirement that each Vioxx Claimant and his/her attorneys certify that they have satisfied all liens that may exist against their respective Settlement payments. *See, e.g.*, *supra* at 4-5.

The law firm defendants now are – and were at the time the Settlement Agreement was being negotiated – aware that self-funded ERISA health plans, including the plans of which many of their clients are beneficiaries, typically provide for ERISA-protected reimbursement rights. In fact, the Plaintiffs' Steering Committee in the Vioxx Litigation circulated to Vioxx Claimants' counsel around the country a document called "Frequently Asked Questions: Healthcare Liens in the Vioxx Settlement." These "FAQs" specifically discuss the existence of healthcare liens of non-governmental payors, including ERISA plans, and state that it is the obligation of each Vioxx Claimant and his/her attorney to investigate the existence of any liens on the settlement funds, and

to certify that such liens shall be satisfied *before any funds are disbursed*:

> Prior to the disbursement of any Settlement benefits to your clients, and as a condition precedent to being entitled to receive their Settlement Payment, **you and your clients must certify that you have conducted a good faith investigation into the existence and amount of these other liens [including the liens held by self-funded ERISA Health Plans], and that any such liens will be satisfied from the respective clients' Settlement Payments**.[7]

*See* Frequently Asked Questions: Healthcare Liens in the Vioxx Settlement, Exh. 9 at 5 (emphasis added).

Plaintiffs' plan documents expressly obligate beneficiaries to notify the plans of their participation in the Vioxx Settlement and any anticipated recovery.  In addition, these documents expressly provide the plans the right to obtain reimbursement from those beneficiaries receiving Vioxx Settlement funds, and on whose behalf the plans have paid medical benefits.  These ERISA plan provisions – which are quoted in Plaintiffs' Complaint, at ¶¶ 42-43,  and also discussed in the attached Affidavit of Mark Johnson, an expert in employer-sponsored group life and health plans (*see generally* Johnson Aff. at ¶¶ 10-12) – are typical and can be expected to be found in nearly all self-funded ERISA plans.[8]  *See* Johnson Aff. at ¶¶ 9, 13.  The reimbursement rights set forth therein are of substantial importance to self-funded ERISA health plans because they protect the assets of the plans; moreover, without these rights, the cost of medical benefits to sponsors and beneficiaries alike would increase and/or benefits would be reduced.  Johnson Aff. at ¶¶ 16-17.

## ARGUMENT

Preliminary injunctive relief is necessary and appropriate to preserve Plaintiffs' ERISA-

---

[7]    This is consistent with the language in the Settlement Release and Certification of Counsel discussed, *supra* at 4-5, pursuant to which the Vioxx Claimants and their attorneys are obligated to certify, prior to receipt of any settlement funds, that all liens have been satisfied and discharged.

[8]    The plaintiffs' plan documents are also attached as exhibits to the Affidavits of Kenneth Stilwell and Robert Adelman.  Adelman Aff., Exhibit A at 33-34; Stilwell Aff., Exhibit A at 19-20.

protected rights to obtain reimbursement for the medical benefits paid to Vioxx Claimants who now

stand to recover for those same injuries as a result of the Vioxx Settlement.  Without Defendants'

voluntary or compelled assistance, there is no practical way for Plaintiffs to enforce their ERISA-

protected reimbursement rights.  Indeed, without the injunctive relief sought here, Plaintiffs'

ERISA-protected rights effectively will be lost.

The appropriateness of preliminary injunctive relief in the circumstances of this case is

confirmed by the substantial line of cases in which such relief has been granted to other ERISA

plans.  Since the Supreme Court issued its decision in *Sereboff* just two years ago, numerous federal

courts have enjoined the disbursement, dissipation, or other transfer of settlement proceeds pending

the adjudication of claims by ERISA health plans for reimbursement of paid medical benefits.  *See,*

*e.g.*, *Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366 (N.D. Ga. 2008) (enjoining ERISA

plan beneficiaries and their lawyers from disbursing disputed settlement funds pending resolution of

ERISA plan's claim to those funds); *Brown v. Assocs. Health and Welfare Plan*, No. 07-2006, 2007 WL

2350323, *1 n.2 (W.D. Ark. Aug. 16, 2007) (discussing court's finding in granting preliminary

injunction that plan would suffer irreparable harm if settlement funds were dissipated);[9] *Admin.*

*Comm. of Walmart Stores, Inc. v. Shank*, No. 1:05-CV-00129, 2006 WL 2546797 at *2 (E.D. Mo. Aug.

31, 2006) (discussing that court granted preliminary injunction enjoining defendants from dispersing

settlement proceeds held in trust); *Primax Recoveries, Inc. v. Gunter*, No. 3:02-0240, 2007 WL 865830,

*2 n.2 (M.D. Tenn. Mar. 16, 2007) (discussing that court granted temporary restraining order upon

filing by ERISA plan of complaint seeking reimbursement of medical benefits).[10]  Plaintiffs are here

---

[9]      An "Appendix of Unreported Decisions" is attached hereto at Exhibit 10.

[10]     Courts issued similar injunctions before *Sereboff* as well.  *See, e.g.*, *Mank v. Green*, 297 F. Supp. 2d 297,

(continued…)

likewise entitled to injunctive relief until such time as their claims may be resolved either by negotiation or adjudication.

For the reasons set forth herein, Plaintiffs satisfy all of the standards for the issuance of preliminary injunctive relief.  Accordingly, Plaintiffs respectfully request that this Court issue a Preliminary Injunction as set forth in the attached Proposed Order.

### A. The Plaintiffs Meet the Legal Standard for a Preliminary Injunction.

A party seeking a preliminary injunction must show that (1) there is a substantial likelihood it will succeed on the merits; (2) there is a substantial threat it will suffer irreparable injury if the district court does not grant the injunction; (3) the threatened injury to the plaintiff outweighs the threatened injury to the defendant; and (4) granting the injunction will not disserve the public interest.  *See Allied Mktg. Group, Inc. v. CDL Mktg.*, 878 F.2d 806, 809 (5th Cir. 1989).  The Fifth Circuit has held that none of these factors has a "fixed quantitative value," and that a "sliding scale is utilized, which takes into account the intensity of each in a given calculus."  *See State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975) (citation omitted).  Plaintiffs' request for a preliminary injunction manifestly satisfies each of these four factors.

#### 1. Plaintiffs are likely to succeed on the merits of their ERISA claims.

This Court has held, in the context of a request for a preliminary injunction, that a plaintiff "need not demonstrate an absolute certainty of success on the merits.  It is enough that the Plaintiff raises legal questions that are sufficiently serious and substantial that a more thorough investigation

---

(continued)

304 (D. Me. 2003) (enjoining plan beneficiaries from using settlement funds prior to adjudication of ERISA plan's claims for reimbursement); *Shaw Ind. v. Hyde*, No. 1:03-CV-409, 2003 WL 23413738 (E.D. Tenn. Dec. 12, 2003) (enjoining defendant from disbursing or using settlement proceeds until court could adjudicate ERISA plan's claim for equitable relief).

is appropriate." *Chambers v. Coventry Health Care of La.*, 318 F. Supp. 2d 382, 389 (E.D. La. 2004) (granting preliminary injunction in ERISA case). Plaintiffs readily meet this standard here.

Plaintiffs seek by this action to enforce two fundamental rights under their ERISA plans: (1) the right to receive notification of claims asserted and settlements received by their plan beneficiaries on whose behalf the plans have paid medical benefits; and (2) the right to be reimbursed by their plan beneficiaries from Vioxx Settlement funds received as compensation for those same injuries. The language of the relevant plan provisions is clear – each plan beneficiary who receives medical benefits is required to notify the plan when he/she brings claims and when they enter into settlements related to the benefits paid on his/her behalf; each beneficiary also is obligated to reimburse the plans from any settlement funds for the medical benefits the plans previously paid on his/her behalf. Adelman Aff. at ¶¶ 5, 9 and Exh. A at 33-34; Stilwell Aff. at ¶ 4 and Exhibit A at 19-20. Under the Supreme Court's ruling in *Sereboff*, and the Fifth Circuit's ruling in *Bombardier*, it is clear that Plaintiffs have the right under ERISA to enforce these plan provisions both against the Vioxx Claimants (as plan beneficiaries) *and* their counsel. Thus, Plaintiffs have a strong likelihood of succeeding on the merits of their ERISA enforcement claims.

In *Sereboff*, an ERISA health plan paid medical benefits to one of its beneficiaries to cover medical expenses resulting from an automobile accident. The injured beneficiary later filed a tort action seeking compensatory damages for injuries suffered in the same accident. The plan's fiduciary submitted a letter to the beneficiary's attorneys asserting a lien on the settlement proceeds to the extent of the medical benefits already paid. The beneficiary settled the case for an amount in excess of the plan's payments, but failed to provide any reimbursement to the plan. As a result, the plan filed suit against the beneficiary (seeking reimbursement for the benefits) pursuant to ERISA § 502(a)(3)(B), , as well as a temporary restraining order and preliminary injunction requiring the

beneficiary to retain and set aside an amount sufficient to cover the claim.  *See Sereboff*, 547 U.S. at 359-61.[11]  The district court found in favor of the plan and ordered the beneficiary to pay the entire amount of the benefits, plus interest.  On appeal, the Fourth Circuit affirmed, noting that the courts of appeals were divided on the question whether § 502(a)(3) authorizes recovery under these circumstances.  *Id.* at 360-61.

The Supreme Court granted certiorari to resolve the circuit split, and affirmed.  The Court unanimously held that an ERISA plan properly may seek "equitable relief" by enforcing plan provisions requiring reimbursement from settlement proceeds of benefits paid to plan beneficiaries. *Id.* at 368.  According to the Court, enforcement of such provisions constitutes an "equitable remedy" enforceable under ERISA § 502(a)(3) "because it is indistinguishable from an action to enforce an equitable lien established by agreement."  *Id.*[12]

*Sereboff* confirmed the Fifth Circuit's earlier opinion in *Bombardier*, where the court held that an ERISA plan properly may recover, pursuant to ERISA § 502(a)(3), "specifically identifiable funds that are in the constructive possession and the legal control of the participant but belong in good conscience to the Plan."  354 F.3d at 355.  In *Bombardier*, the plan brought suit seeking reimbursement against the beneficiary, the beneficiary's attorney, and the bank holding the funds in an account in the law firm's name.  The beneficiary sought, *inter alia*, the imposition of a constructive

---

[11]    The court did not need to resolve the motion for injunctive relief, because the beneficiary agreed to preserve the requested amount of the settlement funds in an investment account pending a ruling on the merits of the case and the exhaustion of any appeals.  *Id.* at 360.

[12]    Since *Sereboff*, appellate courts similarly have recognized the equitable reimbursement rights of plans under ERISA § 502(a)(3) for medical expenses paid on behalf of plan beneficiaries.  *See, e.g., Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Shank*, 500 F.3d 834, 838-39 (8th Cir. 2007) (enforcing plan's subrogation and reimbursement rights against amounts recovered by plan participant pursuant to judgment against third-party tortfeasor); *Popowski v. Parrott*, 461 F.3d 1367, 1373 (11th Cir. 2006) (holding that plan fiduciaries' reimbursement claim against plan beneficiary seeking to recover amounts previously paid by plan for medical expenses was proper under § 502(a)(3)(B)).

trust over the funds and a temporary restraining order and preliminary injunction prohibiting the law firm from disbursing that portion of the settlement funds claimed by the plan. *Id.* at 350.[13] The district court held that the plan was entitled to seek "equitable relief" for reimbursement pursuant to § 502(a)(3) and granted summary judgment in the plan's favor. *Id.* at 351.

The Fifth Circuit affirmed, holding that ERISA § 502(a)(3) authorizes an ERISA plan to seek a constructive trust over settlement funds held by a law firm on behalf of a plan beneficiary. Applying the three-part test set forth above – *i.e.*, whether the funds are (1) specifically identifiable, (2) belong in good conscience to the plan, and (3) are within the constructive possession and legal control of the beneficiary – the court held that an action to obtain settlement funds held on a beneficiary's behalf is an "equitable" claim subject to § 502(a)(3).

In each case, the Supreme Court and the Fifth Circuit emphasized that the plan's terms expressly authorized the plan to obtain reimbursement of the benefits paid from settlement funds received.[14] Those terms established, from the outset, both a "lien by agreement" sufficient to confer a right of action under ERISA, and "specifically identifiable" funds to which the Plan would become entitled, upon settlement, up to the amount of benefits paid. *See Sereboff*, 547 U.S. at 364-65. Thus, the mere description of a fund in the plan documents – *e.g.*, that portion of recoveries from a third

---

[13] In *Bombardier* as well, the court did not need to resolve the request for injunctive relief because the law firm agreed to preserve an amount in the trust account that was "more than sufficient to satisfy the Plan's reimbursement demand." *Id.* at 350. If the Defendants in this case were voluntarily to identify those claimants that received benefits from ERISA health plans, the parties easily could determine an amount sufficient to maintain in an escrow account pending the resolution of this litigation, thereby removing the need for injunctive relief at this time.

[14] This applies equally to the instant case as the putative class is limited to those plans with similar provisions in their plan documents. Of course, that is hardly a limiting factor as nearly all self-funded ERISA plans contain provisions of this sort. *See,* Johnson Affidavit at ¶¶ 9, 13; *supra* at 11.

party corresponding to the benefits paid – was sufficient to satisfy the "specifically identifiable" fund requirement for purposes of an ERISA claim.  *Id.* at 364.

The instant case is indistinguishable on the merits from *Sereboff* and *Bombardier*.  Applying the three-part test, Plaintiffs here seek a "specifically identifiable" fund; indeed, they seek the identical "fund" sought by the plaintiffs in *Sereboff* and *Bombardier* – *i.e.*, that portion of the settlement proceeds equivalent to the benefits the plan paid for each plan beneficiary.[15]  There also can be no question that, as in *Sereboff* as well as *Bombardier*, the funds Plaintiffs seek in this action "belong in good conscience" to the Plans – indeed, Defendants will not (and cannot) dispute that Plaintiffs paid these medical benefits and that the clear plan terms entitle them to reimbursement for those benefits.  Certainly, the plan beneficiaries who are receiving settlement funds from Merck are not entitled to retain the very funds over which Plaintiffs hold an equitable lien pursuant to the plan documents.  Finally, Defendants indisputably have "possession and control" of settlement funds held by attorneys on the Vioxx Claimants' behalf.  *See, e.g.*, *Bombardier*, 354 F.3d at 353.[16]

In accordance with *Sereboff* and *Bombardier*, Plaintiffs have a clear right under ERISA to enforce these plan provisions against their plan beneficiaries and their attorneys.  Given the plain language of the ERISA plans at issue in this case, Plaintiffs have demonstrated a strong likelihood of success on the merits of their claims to enforce these plan terms.  At the very least, Plaintiffs have

---

[15]    In the *AvMed* case, Defendants seek to avoid this result by arguing that there can be no "specifically identifiable" fund where Plaintiffs seek recovery against an aggregate settlement fund.  *See AvMed* Defendants' Opposition at 19-21.  That argument is a red herring.  Certainly, Plaintiffs here do not seek recovery against any aggregate fund.  To the contrary, Plaintiffs seek – and are entitled to seek – recovery against *each* plan beneficiary, and from each beneficiary's *independent* Vioxx Settlement proceeds, the *precise amount* of benefits paid by the Plan for medical expenses.  *See, e.g., Sereboff*, 547 U.S. at 364.  In any event, the Vioxx Claimants' attorneys certainly will not commingle their clients' funds into an aggregate pool but will maintain separate accounts corresponding to each claimant's individual recovery.

[16]    For this same reason, the attorneys named in Plaintiffs' Complaint all are proper parties to this action.

demonstrated the existence of "legal questions that are sufficiently serious and substantial that a more thorough investigation is appropriate." *Chambers*, 318 F. Supp. 2d at 389.

> **2.     Plaintiffs Will Suffer Irreparable Harm If The Requested Relief Is Not Granted.**

Plaintiffs will be harmed irreparably if this Court does not issue the requested injunctive relief.  First, unless this Court requires Defendants to provide the limited, but basic identifying information necessary to determine which of the settling Vioxx Claimants are participants in Plaintiffs' plans, Plaintiffs will be unable to assert or enforce their ERISA reimbursement rights at all.  Without this information – which may be as limited as the names, social security numbers, and employment information of the settling claimants, and which exclusively is in the hands of Defendants – there is no reasonable way for Plaintiffs to determine the identities of their beneficiaries whose reimbursement obligations have been triggered by the Vioxx Settlement.  *See* Johnson Aff. ¶¶ 20-22; Ives Aff. ¶¶ 10-14; Stilwell Aff. ¶ 12; Adelman Aff. ¶¶ 7-8.  Certainly, the loss of Plaintiffs' ability to enforce the equitable rights Congress expressly conferred upon them in ERISA § 502(a)(3) constitutes an irreparable injury sufficient to warrant injunctive relief.  *See, e.g.*, *Foltz*, 760 F.2d at 1308-09; *Mank*, 297 F. Supp. 2d at 304.

Second, Plaintiffs will be irreparably injured unless Defendants are enjoined from distributing the Vioxx Settlement funds before Plaintiffs' claims are resolved, either by negotiation or adjudication.  While purely economic damages generally are insufficient to establish an "irreparable" injury where a plaintiff otherwise can obtain compensation for its injuries at a later date, this Court has recognized that "extraordinary circumstances may give rise to the irreparable harm required for the issuance of a preliminary injunction when money damages are involved." *See, e.g.*, *Citizens Sav. Bank v. GLI Technical Servs., Inc.*, No. Civ. A. 96-2307, 1996 WL 737008, at *4 (E.D. La. Dec. 23, 1996).  This is particularly the case where injunctive relief is necessary "to protect

the plaintiff's damages remedy from depletion," or where the failure to preserve assets sufficient to satisfy the judgment "would make any damages remedy moot." *Id.*

As noted above, a number of federal courts just in the last two years since *Sereboff* was decided have issued injunctive relief to prevent plan beneficiaries from dissipating settlement proceeds before an ERISA plan had the opportunity to have its claim for reimbursement adjudicated. *See supra* at 12-13. For example, in *Diamond Crystal Brands*, the district court found that irreparable injury exists where an ERISA plan "may not be able to obtain relief under [ERISA § 502(a)(3)] because the funds at issue may no longer be traceable and under the control of [the Defendant]." 531 F. Supp. 2d at 1374-1375. Indeed, courts in this district and elsewhere often have found irreparable injury, even where exclusively monetary damages were at stake, where the plaintiffs were likely to experience difficulty obtaining relief absent a preliminary injunction. *See, e.g.*, *Rudney v. Int'l Offshore Servs.*, No. 07-3908, 2007 WL 2900230, at *5 (E.D. La. Oct. 1, 2007) (citing *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 560 (5th Cir. 1987)) ("proving that a claim for monetary damages would be difficult to collect, such as in the case of … potential distribution of assets, evinces circumstances that would support issuing an injunction); *see also Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986) ("[d]ifficulty in collecting a damage judgment may support a claim of irreparable injury") (citing cases); *Lynch Corp. v. Omaha Nat. Bank*, 666 F.2d 1208, 1211-12 (8th Cir. 1981) (plaintiff's injury was irreparable absent injunction because "a multiplicity of suits would be required to gain relief" if defendant – though solvent – were permitted to transfer funds to numerous recipients from escrow account) (citing *Mansfield Hardwood Lumber Co. v. Johnson*, 242 F.2d 45, 48 (5th Cir. 1957)); *Seide v. Crest Color, Inc.*, 835 F. Supp. 732, 735 (S.D.N.Y. 1993) ("preliminary injunctions are proper to prevent a defendant from making a judgment uncollectible") (quoting *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir.

19

1986), *cert. dismissed*, 480 U.S. 942 (1987), *and cert. denied*, 481 U.S. 1048 (1987)).

Injunctive relief – even to preserve a monetary damages remedy – is particularly appropriate where the court is asked simply to "exercise its equitable powers in ordering a preliminary injunction to secure an equitable remedy such as restitution." *Dixon*, 835 F.2d at 560. Stated otherwise, "[a]s the Supreme Court stated in [*DeBeers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212 (1945),] '[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.'" *Id.* (quoting *USACO Coal Co. v. Carbonmin Energy, Inc.*, 689 F.2d 94 (6th Cir. 1982). Thus, where the absence of an injunction may result in plaintiffs' inability to pursue a cause of action, *e.g.*, under ERISA, *see Foltz v. U.S. News & World Rep.*, 760 F. 2d 1300 (D.C. Cir. 1985), or where plaintiffs risk losing the opportunity to recover payments due to the dissipation of the assets by defendants, the mere characterization of relief as "monetary" is insufficient to overcome the irreparable injury prong of the preliminary injunction test. *Dixon*, 835 F.2d at 561. As the Fifth Circuit has held, "once a plaintiff establishes an equitable cause of action, the district court may use its full equitable powers to grant appropriate preliminary relief as well." *Id.* at 562.

In this case, Plaintiffs have established, beyond dispute, their right to equitable relief under ERISA to obtain reimbursement out of the proceeds of the Vioxx Settlement for medical benefits the plans paid to Vioxx Claimants. Moreover, there is a reasonable likelihood that, in many instances, once the settlement funds are disbursed to the individual claimants, Plaintiffs no longer will be able to obtain any relief under ERISA because, as in *Diamond Crystal Brands*, "the funds at issue may no longer be traceable and under the control of Defendants," or because the beneficiaries' assets otherwise will be depleted. For these reasons, Plaintiffs are likely to suffer irreparable harm unless this Court requires Defendants to provide the limited information necessary for Plaintiffs to exercise their equitable rights under ERISA, and unless this Court briefly enjoins the disbursement

of the settlement proceeds as to which Plaintiffs have a lien right and which Plaintiffs are entitled to recover.

> **3.     The "balance of harms" in the absence of an injunction overwhelming favors Plaintiffs.**

The "balance of harms" overwhelmingly favors Plaintiffs in this case.  Absent injunctive relief, Plaintiffs stand to lose not only their ability to pursue their equitable rights under ERISA that Congress determined should be available to all ERISA plans, but also tens and likely hundreds of millions of dollars in employee benefit plan funds to which the plans indisputably are entitled. Stated plainly, so long as Defendants persist in their refusal to disclose the claimant identifying information exclusively in their possession, Plaintiffs will suffer substantial harm.  That harm will increase further – perhaps permanently – if Defendants follow through on their plan to commence disbursement of the settlement funds on August 1, despite their awareness that numerous third parties have asserted claims against those funds.

In contrast, Defendants are unlikely to suffer any harm at all, and certainly no appreciable harm, as a result of the injunctive relief sought here.  The only possible harms Defendants have suggested in their papers in the *AvMed* case are (1) infringement of alleged privacy rights,[17] and (2) delayed access to the Vioxx Settlement funds.  *See AvMed* Defendants' Opposition at 26-27. However, Plaintiffs' proposed injunction accommodates each of these concerns by (a) screening out, to the greatest extent possible, those claimants who either did not participate in an ERISA health

---

[17]     There is no genuine claim that any "privacy rights" would be impacted by the mere disclosure, under appropriate protective order terms, to Plaintiffs of the names, social security numbers, and employer information of individuals who have elected to file litigation against Merck and thus expose themselves to discovery of such information and more.  Moreover, by agreeing to participate in the Plaintiffs' health plans, the Vioxx Claimants who are members of those plans already have agreed to provide their plans with the information Plaintiffs seek in this litigation.  In any event, Plaintiffs have carefully tailored the relief they seek herein to minimize any arguable infringement of any alleged "privacy" rights.

plan, or did not receive any benefits from such a plan, and (b) ensuring that *all* delayed Vioxx Settlement funds are placed in an interest-bearing escrow account.  Indeed, the injunction is designed to allow most Vioxx Claimants to receive their full settlement payments without any delay. Under these circumstances, "the hardship placed upon [Defendants] – being prevented from using money in which [Plaintiffs] have a perfected security interest in – does not outweigh the hardship upon the [Plaintiff.]"  *Citizens Sav. Bank*, 1996 WL 737008 at *4.

Plaintiffs have proposed one process designed to minimize – if not eliminate – the possibility that any Defendants would be "harmed" by interim injunctive relief, but there may well be other ways to accomplish this result.  Indeed, in their *amicus* brief to this Court in the *AvMed* case, the Vioxx Claimants endorse the idea of identifying "less intrusive methods" to enable Plaintiffs to enforce their rights.  *See supra* at 3.  Whichever process ultimately is implemented (either by negotiation or court order), any concerns regarding the improper disclosure of sensitive personal information, to the extent such concerns exist, readily can be eliminated.  Moreover, the parties quickly would be able to segregate those claimants who are entitled to receive their settlement proceeds in full, and to avoid any delay in the disbursement of Vioxx Settlement funds to those claimants.  Even with respect to those claimants who received medical benefits from Plaintiffs, their rights as well can be protected – assuming Defendants' cooperation (or a court order) – by ensuring that they receive that portion of their individual settlement allocations that exceeds the amount of medical benefits paid by the plans.

In short, unless this Court grants preliminary injunctive relief to enable Plaintiffs effectively to assert their ERISA-protected reimbursement rights in advance of any distribution of settlement funds to individual claimants (or Defendants consent voluntarily to such a process),  Plaintiffs will suffer irreparable harm.  Such interim relief, however, particularly  the tailored relief with the

safeguards proposed by Plaintiffs, would substantially mitigate – if not eliminate entirely – any possible harm to the Vioxx Claimants (or to any one else). Thus, the balance of harms demonstrably favors the entry of the requested preliminary injunctive relief.

> **4.    The preliminary injunction requested by Plaintiffs will not disserve the public interest.**

Finally, the issuance of an injunction in this case would have no "adverse effect on the public interest." To the contrary, there is a strong public interest in enabling ERISA fiduciaries to enforce the express terms of the self-funded ERISA plans they are administering. As this Court held in *Acme Refrigeration Supplies, Inc. v. Acme Refrigeration of Baton Rouge, Inc.*, 961 F. Supp. 936, 941 (E.D. La. 1996), "[a]ny time that a state or federal law is enforced, the public interest is served." *Id.* Thus, as the court held under similar circumstances in *Diamond Crystal*, "the public has an interest in insuring the integrity of ERISA plans such as the one involved in this dispute." 531 F. Supp. 2d at 1375. In short, the public interest manifestly would be served by enabling Plaintiffs to enforce the express equitable enforcement rights that Congress provided them in ERISA § 502(a)(3). *See* Johnson Aff. ¶ 17.

## II.    The Court Should Not Require Plaintiffs to Post a Bond

In the *AvMed* case, Defendants asked this Court to require those plaintiffs to post a $2 billion bond (or, in the alternative, an $85 million bond). *See AvMed* Defendants' Opposition at 3. Should Defendants make a comparable request here, this Court should reject it.

The decision whether, and in what amount, to require a plaintiff seeking injunctive relief to post a bond "is a matter within the discretion of the trial court." *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981). Indeed, the court "may elect to require no security at all." *Id.* (quoting *Corrigan Dispatch Co. v. Casaguzman, F.A.*, 569 F.2d 300, 303 (5th Cir. 1978)); *see also Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (refusing to require party

seeking injunction to post a bond); *Perrier Party Rentals v. Event Rental, LLC*, No. 07-3244, 2007 WL 2284579, *1 (E.D. La. Aug. 7, 2007) (same).

The Fifth Circuit and courts in this district have not required a bond in cases where the party opposing the injunction failed to establish proof that it was likely to be harmed by the requested relief[18] – *e.g.*, where the risk of harm is minimized by an injunction of "short duration" or the placement of disputed funds in an interest-bearing account – or where the requested security is so high that the party seeking the injunction would be financially unable post the bond. *See, e.g.*, *id.* (rejecting request that government and employee organization, among others, post security of $1.3 million per month); *Rudney*, 2007 WL 2900230 at *5 (rejecting bond request where funds plaintiffs sought to enjoin from distribution were placed in interest-bearing account pending resolution of the litigation).

The limited injunctive relief Plaintiffs seek here adequately protects Defendants from any possible harm that otherwise might be sufficient to warrant the posting of a bond. Plaintiffs seek an injunction of very limited duration, and which requires any withheld funds to be maintained in an interest-bearing escrow account. Under these circumstances, this Court should not require Plaintiffs to post a bond pending resolution of their equitable claims.

---

[18]     Courts in other circuits are in accord. *See, e.g. Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (district court had discretion to dispense entirely with a bond where there was no proof of likelihood of harm to the party opposing the injunction); *see also Int'l Controls Corp. v. Vesco*, 288 F.2d 665, 675 (2d Cir. 1961); *Cosgrove v. Board of Educ.*, 175 F. Supp. 2d 375 (N.D.N.Y. 2001); *City of Hartford v. Hills*, 408 F. Supp. 879 (D. Conn. 1975); *Brookins v. Bonnell*, 362 F. Supp. 379 (E.D. Pa. 1973).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully move this Court to grant their motion for a preliminary injunction ordering Defendants immediately to produce the claimant information Plaintiffs and other members of the Class require to enforce their ERISA reimbursement rights and, if necessary, to preventing the distribution of certain Vioxx Settlement funds for a limited period so that Plaintiffs can assert their ERISA rights pursuant to their plan documents.  For such relief to be effective, it will need to be ordered in advance of the apparent August 1 date for the distribution of funds from the Vioxx Settlement Fund.

New Orleans, Louisiana, this 26th day of June, 2008.

Respectfully Submitted,

s/ Rebecca H. Dietz
KING, KREBS & JURGENS, P.L.L.C
HENRY KING (#7393)
ERIC E. JARRELL (#16982) (T.A.)
REBECCA H. DIETZ (#28842)
201 St. Charles Ave., 45th Floor
New Orleans, LA  70170
Telephone: 504-582-3800
Facsimile:  504-582-1233

-and-

LEVY PHILLIPS & KONIGSBERG, LLP
Steven J. Phillips
Diane Paolicelli
800 Third Avenue
13th Floor
New York, NY 10022
Telephone: 212-605-6200
Facsimile:  212-605-6290

- and -

CROWELL & MORING LLP
Andrew H. Marks
Robert T. Rhoad
Aryeh S. Portnoy
Todd J. Cochran
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction and Proposed Order has been served on Liaison Counsel, Russ Herman and Phillip Wittman, either by U.S. Mail and e-mail, or hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8 (B), and that the foregoing was electronically filed with the Clerk of Court of the United State District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a Notice of Electronic Filing.

This 26th day of June, 2008,

/s/ Rebecca H. Dietz

27