UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **1199SEIU GREATER NEW YORK BENEFIT FUND**, by its Trustees, *et al.*, on behalf of themselves and all others similarly situated, | * * * * * | CASE NO. 08-3627<br><br>RELATED CASE:<br>2:05-MD-1657<br>VIOXX MDL LITIGATION |
| Plaintiffs, | * * | SECTION L |
| v. | * | |
| **BROWNGREER, PLC**, *et. al.*, | * * | JUDGE ELDON E. FALLON |
| Defendants. | * * | MAGISTRATE JUDGE KNOWLES |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AFFIDAVIT OF MARK JOHNSON, Ph.D., J.D.

Mark Johnson, Ph.D., J.D., being duly sworn, deposes and says as follows:

1. I am more than 21 years of age and fully competent to testify to the matters herein. My business address is Vineyard Center 1, 1450 Hughes Road, Suite 120, Grapevine, Texas 76051. The following statements are based upon my personal knowledge, my review of relevant records, and my experience and education.

2. As more fully set forth in my curriculum vitae (attached at Exhibit A), I have a Bachelors of Arts in History from the University of Massachusetts, a Masters in Mass Communication from the University of Massachusetts, a Ph.D. in Communications Studies with a minor in statistics from the University of Massachusetts, and a J.D. from the University of Houston. Presently, my title is President of ERISA Benefits Consulting, Inc., which I founded in 2001.

3. Prior to founding ERISA Benefits Consulting, I worked as a Director and Managing Director of Benefits Compliance and Pensions and Counsel for Benefits Compliance

at American Airlines form 1992 through 2001. While a Director and Managing Director, I was responsible for the company's ERISA plan documents and literally hundreds of other employee benefit communications, including the summary plan descriptions. I regularly participated in benchmarking with other large employers, attended benefits conferences and seminars, and consulted reference materials to assist me with this process. I continue to attend benefits conferences and participate in numerous continuing education programs regarding benefits.

4.  As Managing Director of Benefits Compliance and Pensions at American Airlines, I had design and operational responsibility for seven pension plans with over 100,000 participants and approximately $14 billion dollars in assets. I shared design and operational responsibility for numerous group life and health plans covering approximately 350,000 lives with an annual budget of approximately $450 million dollars and was continuously involved in the regular operation of the plans. The official governing body for all American Airlines benefit plans, the Pension Benefits Administration Committee, delegated to me the authority to render the final decision on all plan interpretation and operational decisions, including ERISA appeals, which totaled approximately 400 per year.

5.  Prior to holding the positions of Director and Managing Director of Benefits Compliance and Pensions and Counsel for Benefits Compliance at American Airlines, I was an attorney for American Airlines from 1987 to 1992 and an attorney for Southwestern Bell Corporation from 1983 to 1987. I have not practiced law since 1992.

6.  Because of my background as a fiduciary of a self-funded health plan and my experience in administering plan benefits and drafting plan language, I was asked to review the reimbursement, subrogation, and notification provisions of the health plans of the Named Plaintiffs in this class action and opine on the nature and purpose of these provisions for self-

2

funded ERISA health plans generally. I was also asked to review the Vioxx Settlement Agreement and give an opinion on the feasibility of self-funded health plans' ability to identify the settling Vioxx claimants who are also the participants and beneficiaries of the plans so that the plans could pursue their reimbursement and subrogation rights.

7. A self-funded ERISA health plan is a plan where the sponsor, either the employer or employee organization, pays the cost of covered claims as well the administrative expenses (typically to a third party administrator). This means the employer or employee organization bears the full cost of the plan. This cost may be partially offset by contributions, if any, from its employee participants or beneficiaries.

8. Based upon my review of publicly available sources, it appears there are in excess of 100,000 self-funded ERISA health plans in the United States of 100 participants or more. These plans cover approximately 50 million total participants.

9. Self-funded ERISA health plans almost universally include reimbursement and subrogation provisions in the plan documents. A reimbursement provision requires the participant or beneficiary to reimburse the plan for medical expenses paid on their behalf for injuries or illnesses caused by a third party to the extent that the participant or beneficiary obtains a recovery from a third party. A subrogation provision permits a plan to assume the place of a plan participant or beneficiary to recover expenses which it paid to the participant or beneficiary under the plan for which third parties are legally responsible to the participant or beneficiary.

10. I have reviewed the reimbursement and subrogation provisions, as well as the notification provisions, contained in the plan documents of the self-funded ERISA plans sponsored by Named Plaintiffs 1199SEIU Greater New York Benefit Fund and The New York State Teamsters Council Health and Hospital Fund.

11. The Notification and Reimbursement Provisions of the ERISA plan of the 1199SEIU Greater New York Benefit Fund states, in relevant part:

> When another party is responsible for an illness or injury, the Plan Administrator has rights to recover the full amount it has paid or will pay related to any claims which you may have against any person or entity. This means you are assigning your rights in any recovery to the Fund to the extent of the Fund's payments on your behalf. The Fund's right to recover the payments comes before you can recover. Therefore, the Fund has an independent right to bring an action in connection with such an injury or illness in your name and also has a right to intervene in any such action brought by you. It also means that the Fund has an equitable lien on the proceeds of any verdict or settlement reached in a lawsuit that you bring against someone for causing an illness or injury, when the Fund has paid for costs arising from that person's actions. The Fund has a right to be repaid from those proceeds. You must notify the Fund of any accident or injury for which someone else may be responsible. Further, the Fund must be notified of initiation of any lawsuit arising out of the accident or incident.
>
> You are required to provide the Fund with any and all information and to execute and deliver all necessary documents as the Plan Administrator may require to enforce the Fund's rights. Once the Fund learns that another party may be responsible, you must sign an agreement (or a "lien") affirming the Fund's rights with respect to benefit payments and claims. Benefit payments are not payable until this agreement is signed and received by the Fund.
>
> If you receive payments from or on behalf of the party responsible for an illness or injury, the Fund must be repaid from those payments. You must repay the Fund regardless of whether the total amount of the recovery is less than the actual loss and even if the party does no admit responsibility, itemize the payments or identify payments as medical expenses. You cannot reduce the amount of the Fund's payments to pay for attorneys' fees incurred to obtain payments from the responsible party. The Fund's rights provide the Fund with first priority to any and all recovery in connection with the injury or illness. The Fund has these rights without regard to whether you have been "made-whole."
>
> If you fail or refuse to sign a lien or to comply with these terms, the Plan Administrator may suspend your eligibility for benefits and/or recovery from providers' money paid to them, until the Fund is fully repaid. In addition, the Plan Administrator may bring a court action against you to enforce the terms of the Plan.
>
> By accepting the Fund's payments, you are consenting to a constructive trust being placed on the amount owed to the Fund out of any proceeds.

12. The Notification and Reimbursement Provisions of the ERISA plan of The New York State Teamsters Council Health and Hospital Fund states, in relevant part:

> If we pay any of your medical, dental, vision, or prescription drug expenses or Weekly Disability Benefits (DBL), then we are subrogated to your rights of recovery and have a lien on any and all amounts owed to you by, or from the third party. This means that we may recover the amount you are owed from the third party (or from you, if the third party pays you).
>
> You must sign an agreement to reimburse us in full from any recovery received by you from a third party, including any settlement for pain and suffering, whether by insurance claim, court judgment, settlement, or otherwise. The absence of a signed agreement, however, shall not diminish or waive in any way our right to recover from you or a third party, because our right arises when we pay expenses any/or Weekly Disability Benefits (DBL) for your benefit.
>
> You must pursue all reasonable claims against third parties if we have paid your medical expenses, including filing a lawsuit if necessary (unless you assign your claims to us) . . . .
>
> You must inform us of the filing of any claim or the commencement of any legal action against a third party, and provide any information requested by us and sign any documents that we request to assist in recovering from responsible third parties. We may also require your attorney to sign documents protecting our rights.
>
> You may not settle any claim or lawsuit without our written consent. You may not take any action that prejudices our rights and interests.
>
> The Fund is entitled to reimbursement at 100% of the benefits paid. Even though the payment you receive from the third party may be reduced by attorney's fees and expenses, the Fund has no obligation to share in a pro rata portion of those fees and expenses.
>
> If you receive payment for an injury or illness and fail to reimburse us for benefits that we have paid to you, or on your behalf, or if you otherwise fail to comply with the above obligations, we reserve the right not to pay your claim, or future claims, for benefits under the Plan, until the withheld payments equal what would have been recovered from the third party. Alternatively, we have the right to bring a legal action against you for reimbursement.

13. The above-quoted notification, reimbursement, and subrogation provisions contained in the 1199SEIU Greater New York Benefit Fund and The New York State Teamsters

Council Health and Hospital Fund plans are typical of the notification, reimbursement, and subrogation provisions commonly found in the plan documents of self-funded ERISA health plans between 1999 and the present.

14. For example, in my capacity as Managing Director of Benefits Compliance and Pensions at American Airlines, I drafted and administered the American Airlines self-funded ERISA health plan's notification, reimbursement, and subrogation provisions. The provisions of the 1999 plan state, in relevant part:

### REIMBURSEMENT

If you recover damages for an injury or illness (for example, if you receive a settlement from the person that caused the injury or illness or that person's insurance carrier), the plan has a right to be reimbursed for the amount of benefits it has paid on your behalf for treatment of the injury or illness.

As a condition for receiving benefits under this plan, you:

- Grant the plan a first lien against any settlement, verdict, or other amounts you receive

- Assign to the plan any medical benefits you are eligible to receive under an automobile policy or other coverage, up to the amount this plan has paid in benefits

- Agree to sign and deliver any documents necessary to help the plan protect its rights (Refusal to sign these documents does not diminish the plan's reimbursement rights.)

- Assist the plan by complying with any reasonable request to help the plan recover any benefits it has paid, without taking any action that may prejudice the plan's right to reimbursement.

### SUBROGATION

Subrogation is third party liability. It applies if the plan has paid any benefits for your injury or illness and someone else (including any insurance carrier) is, or may be, considered legally responsible.

If someone else caused your injury or illness, this plan has the right to collect payment from the third party (or their insurance carrier) for the medical treatment

of your injury or illness. The plan subrogates (substitutes) its own rights for your rights. This means the plan will be paid first from any settlement or judgment you receive. The plan may assert this right independently of you.

As a condition for receiving benefits under this plan, you agree to:

- Cooperate with the plan to protect the plan's subrogation rights

- Provide the plan with any relevant information it requests

- Obtain consent of the plan before releasing any party from liability for payment of medical expenses

- Sign and deliver documents regarding the plan's subrogation claim, if requested. (Refusal to sign these documents does not diminish the plan's subrogation rights.)

If you enter into litigation or settlement negotiations regarding the obligations of other parties, you must not directly or indirectly affect or influence the subrogation rights of the plan.

The plan will pay all legal costs of the plan regarding subrogation. You are responsible for paying your own legal costs.

15.   These provisions of the American Airlines self-funded health plan share the same significant features as the 1199SEIU Greater New York Benefit Fund and The New York State Teamsters Council Health and Hospital Fund plans.

16.   The purpose of these types of reimbursement and subrogation provisions is to protect the assets of the plans. These reimbursement provisions apply only where the participant or beneficiary has received a recovery from a third party.

17.   The enforcement of these types of provisions has the effect of preserving the plan assets and enhancing the ability of the sponsoring employer or employee organization to continue to offer the plan in the future for the benefit of all participants and beneficiaries. Without such reimbursement and subrogation rights, the cost to the plan sponsor and to its

participants and beneficiaries for health benefits would increase and/or benefits would be reduced.

18.     During my time as the Managing Director of Benefits Compliance and Pensions and Counsel for Benefits Compliance at American Airlines, it was important to me to enforce the reimbursement and subrogation provisions of the company's health plan because it was my fiduciary duty to operate the plan according to its terms for the purpose of providing benefits to the plan's participants and beneficiaries.

19.     It is my understanding that there are approximately 45,000 claimants who are participating in the Vioxx settlement and who have submitted their claims to the Claims Administrator.

20.     I have reviewed the eligibility requirements for determining whether an individual who claims to have been injured by ingesting Vioxx is entitled to receive a payment from the Vioxx Settlement Fund. There are multiple layers of criteria that each individual must satisfy in order to qualify for a recovery from the Vioxx Settlement Fund, including whether the individual fits into one of a number of definitions for a cardiac event or stroke compensable under the settlement and whether the individual's ingestion of Vioxx was in sufficient proximity to that cardiac event or stroke. Not all persons who ingested Vioxx and suffered a cardiac event or a stroke are entitled to compensation from the Settlement Fund.

21.     Based upon my experience in claims administration, including as the Director and Managing Director of Benefits Compliance and Pensions and Counsel for Benefits Compliance at American Airlines, it would be impossible for a plan fiduciary to determine whether or not one or more participants or beneficiaries of a particular plan is even eligible to recover from the Vioxx Settlement Fund without a painstaking examination of each participant or beneficiary's

medical and pharmaceutical records. In my experience, these are records that would ordinarily be maintained by the claims payor only for the relatively short period of time sufficient to enable them to pay the claim and deal with appeals. Accordingly, I do not believe that most plans have the medical and pharmaceutical records necessary to identify who among their participants and beneficiaries even potentially meet the claims criteria. Moreover, even such an identification would not identify particular participants or beneficiaries who actually will be receiving Vioxx settlement funds.

22. It has been suggested that the settling claimants who will be receiving Vioxx settlement funds can be identified merely by comparing lists of databases of individuals who ingested Vioxx with individuals who suffered heart attacks or strokes. It is my opinion that the complexity of the eligibility criteria established by the Settlement Agreement precludes this approach as a means of identifying who among the beneficiaries is even eligible to receive settlement funds and certainly would not identify who is actually receiving such funds. This is not a problem that can be solved by automation unless plaintiffs are provided with the claimants' social security numbers.

23. Based on my review of the Settlement Agreement, it is my understanding that all participating claimants have provided the Claims Administrator with their social security numbers in addition to the other information required by the Agreement. It is my understanding that the names and social security numbers of all settling claimants are maintained in a database by the Claims Administrator, and that this information therefore is readily accessible.

24. Similarly, if a list of names and social security numbers of claimants participating in the Vioxx settlement is provided to a plan's administrator, a plan could readily determine whether it has paid benefits for any claimants who will be receiving Vioxx settlement funds, as

well as the precise amount of the benefits paid. This process can be performed quickly by automated comparison of the social security numbers of the settling claimants with the plans' claims data.

25. Once a self-funded plan has identified one of more settling claimants for whom the plan paid Vioxx-related medical expenses, the plan can then evaluate whether it will pursue its reimbursement and/or subrogation claim. If a plan decides to pursue these claims, it can then take steps to notify the claimant and his or her lawyer, assert a lien interest, and negotiate or prosecute the claim.

26. In sum, the Class of self-funded health plans who paid for Vioxx-related medical expenses will be effectively deprived of their rights to pursue reimbursement and subrogation without the simple expedient of allowing them access to the settling claimants' social security numbers. The inevitable consequence of denying the Class these social security numbers will be the loss of substantial reimbursement and subrogation funds for plans that covered medical benefits for their participants and beneficiaries related to Vioxx-medical expenses as well as a waste of plan assets.

I hereby swear and affirm under penalty of perjury that the foregoing is true and correct.

_____
Mark Johnson, Ph.D., J.D.

STATE OF TEXAS )
)
COUNTY OF TARRANT )

Subscribed and sworn to (or affirmed) before me this 25 day of June, 2008, by Mark Johnson, Ph.D., J.D.

JILL DELGADO
Notary Public, State of Texas
My Comm. Expires April 17, 2012

_____
Notary Public

My Commission Expires:

4·17·12

11

PAGE 3/3 * RCVD AT 6/25/2008 6:45:24 PM [Eastern Daylight Time] * SVR:DCNTFAX01/0 * DNIS:6285116 * CSID:817 788 1399 * DURATION (mm-ss):01-44