UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| 1199SEIU GREATER NEW YORK BENEFIT FUND, by its Trustees<br>330 West 42nd Street - 31st Floor<br>New York, NY 10036 | * * * * * | CASE NO.: 08-3627<br><br>RELATED CASE:<br>2:05-MD-1657 |
| and | * * | |
| THE NEW YORK STATE TEAMSTERS COUNCIL HEALTH AND HOSPITAL FUND, by its Trustees,<br>151 Northern Concourse<br>Syracuse, NY 08648<br>on behalf of themselves and all others similarly situated, | * * * * * * * | SECTION L<br><br>JUDGE ELDON E. FALLON<br><br><br>MAGISTRATE JUDGE<br>KNOWLES |
| Plaintiffs,<br>- v - | * * * | |
| BROWNGREER, PLC;<br>BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.,;<br>BLIZZARD, McCARTHY & NABERS, LLP;<br>GIRARDI and KEESE;<br>HERMAN, HERMAN, KATZ & COTLAR, LLP<br>LEVIN, FISHBEIN, SEDRAN & BERMAN;<br>JOHN DOE LAW FIRMS 1-100, etc.;<br>and JANE DOE VIOXX CLAIMANTS 1-1000,etc.<br><br>Defendants. | * * * * * * * * * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### AFFIDAVIT OF RICHARD IVES

Richard Ives ("Affiant"), hereby states the following under penalty of perjury:

1.  I am the President of the International Subrogation Management [ISM], a Division of Northshore International Insurance Services, Inc., located at 750 Warrenville Road, Suite 308, Lisle, Illinois 60532. I have held this position for 17 years, and have been in the subrogation

00120874.WPD

business for 25 years.

2. ISM is in the business of providing subrogation and reimbursement services to health benefit plans and their excess carriers and reinsurers across the United States. Among ISM's clients are third party administrators of employer-sponsored self-funded plans, which many of whom are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Third party administrators are health insurance administrators that are engaged in the processing of eligibility verification, payments and other administrative activities for the appropriate management of health and medical benefits, for a variety of entities, including employer-sponsored self-funded health plans.

3. ISM is under contract to manage the subrogation/reimbursement activities of roughly several hundred ERISA governed health benefit plans, many of whom are putative Class Members in the captioned action. I am familiar with the ERISA protections afforded such Plans, and am likewise familiar with the manner in which potential subrogation and reimbursement claims of such Plans are identified and pursued.

4. I am also well familiar with the enormous difficulties posed by the Vioxx Personal Injury Settlement with respect to identifying settling claimants who are beneficiaries of ISM's Plan clients, and against whom claims for reimbursement should be asserted. Indeed, ISM retained the law firm of Levy Phillips & Konigsberg, LLP to assist in Vioxx subrogation efforts on behalf of ISM's clients, precisely because we concluded that ISM's usual procedures for pursuing reimbursement and subrogation claims would simply not work in the Vioxx context.

5. Generally speaking, ERISA governed health benefit plans ["ERISA Plans"or "Plans"] provide medical benefits to covered employees and their family members in accordance

with specific contractual provisions contained in the plan documents. ERISA Plans commonly contain contractual reimbursement/subrogation provisions that require the beneficiary to reimburse the Plan for medical benefits from the proceeds of any lawsuit against a third party responsible for the injury for which such medical benefits were paid.

6. ISM, and companies like ISM, undertake to enforce reimbursement rights of ERISA Plans by identifying potential third party claims and lawsuits brought by beneficiaries, and taking steps to evaluate, assert, negotiate and/or prosecute such rights.

7. Medical Plans commonly contain notification provisions which require the beneficiary of medical benefits to notify the Medical Plan when he or she is involved in an accident and/or expects to receive any first and/or third-party recovery for the injury for which the Plan provided and paid medical benefits. When a beneficiary voluntarily complies with such a notification provision, the identification of a potential source of recovery from another party may be simplified.

8. Likewise, where the Plan, or a third party administrator of a Plan, receives a request for health insurance records in connection with a claim and/or lawsuit brought by a beneficiary, identification of potential reimbursement/subrogation for paid medical benefits is not a problem.

9. Once a first and/or third party claim is identified as a potential source of a reimbursement/subrogation recovery, written and telephonic correspondence is initiated, either by the Plan or its third party administrator, or by subrogation companies like ISM, to assert reimbursement and subrogation rights, where appropriate, on behalf of that Plan. As the Plan Participant is known from the onset, communication for the purposes of vindicating

reimbursement rights is unobstructed.

10. In the absence of notification of a claim for first and/or third party benefits directly from the beneficiary, or in the context of a discovery request in that lawsuit, identification of potential sources of reimbursement/subrogation recoveries can be more difficult, and at times impossible. Typically, Plans or their administrators search electronic medical claims data for traumatic injury claims – likely potential sources of claims involving recoveries – by using diagnosis codes that indicate the nature of the injury. Once traumatic and/or accident related injury claims are identified, written and telephonic correspondence is undertaken and procedures followed, as outlined above, to evaluate, assert and where appropriate, prosecute reimbursement/subrogation claims.

11. The Vioxx litigation, however, poses serious difficulties for medical Plans who are desirous of pursuing their reimbursement and/or subrogation entitlements. Myocardial Infarction or Ischemic Stroke – the conditions for which payment might be made – are not traumatic or accidental injuries that are typically identified as injuries giving rise to tort recoveries for which the Plan may have a primary right of recovery based on Plan provisions. There is no efficient way to look at the diagnosis codes for these injuries and associate them with Vioxx use, let alone with a claimant who is participating in the Vioxx personal injury settlement. This is particularly true since many Plans use different providers for pharmaceutical benefits than for medical care benefits, and accordingly, multiple, unrelated databases are involved. There is often no means of effectively correlating a pharmaceutical benefits computer database with the database for heart attack and stroke healthcare claims. Then, too, many Plans change their providers of pharmaceutical and healthcare benefits from time to time, so that multiple databases would be

implicated in any correlation effort.

12. Even if such cross-matching of databases were possible, merely knowing the names of the plaintiffs as indicated on publically filed Complaints would not be of much assistance in identifying potential Vioxx reimbursement claims. At ISM, searches of computerized data require knowing the name of the employer or the employer-sponsored plan in order to achieve successful results. Other subrogation companies may conduct data base searches by utilizing social security numbers and other Plan Participant identification numbers. Specific identification by employer, plan, or social security number is necessary in part because many people share common names, or change their names, or remarry, or have different names than the personal representatives of their estates. Often a person may claim pharmacy benefits under his own name, but medical benefits under the name of a spouse, and spouses often have different names.

13. Of course, for the roughly 15,000 Vioxx claimants who never filed public complaints because of a tolling agreement with Merck, and whose names are simply unknown, there is just no way to undertake a search for potential reimbursement claims.

14. In short, I conclude that the ERISA health Plans for whom ISM is under contract to provide subrogation services stand to lose their rights to pursue subrogation and reimbursement, as set forth in their Plan documents, because of the peculiar and insurmountable difficulty in using traditional procedures for identifying Vioxx claimants who are beneficiaries of these Plans, as well as the failure of Plan Participants to comply with specific contractual Plan Provisions. These medical Plans' rights to subrogation/reimbursement cannot be effectively enforced unless further information is provided about the identities of persons receiving Vioxx settlements, and unless the opportunity is afforded the Plans to match these identities with their

00120874.WPD

beneficiaries, and assert reimbursement claims, where appropriate.

Further the Affiant sayeth naught.

Dated: June 25, 2008

*[signature]*
Richard Ives
President
International Subrogation Management

00120874.WPD