# FREQUENTLY ASKED QUESTIONS:
## HEALTHCARE LIENS IN THE VIOXX SETTLEMENT

**WHAT ABOUT HEALTHCARE LIENS?**

Article 12 of the Vioxx Master Settlement Agreement provides for the appointment of a Lien Resolution Administrator to address the governmental / statutory lien obligations arising under the settlement. The Lien Resolution Administrator (LRA) is tasked with affirmatively verifying which Participating Claimants are past or present Medicare and / or Medicaid beneficiaries and resolving all such Medicare and Medicaid interests. Additionally, the LRA will address all other governmental liens (such as VA, Tricare, etc.) upon notification by Participating Claimant, Participating Claimants' attorneys or by the respective agencies. The LRA is NOT appointed to handle other non-governmental healthcare liens, such as private insurance and coverage offered through employers (i.e. "ERISA"), but can provide some assistance to you, as outlined below. This FAQ is designed to answer the more common questions regarding this aspect of the Vioxx settlement. Further questions can be directed to the LRA, using the contact information at the end of the FAQ.

**Why do we need a Lien Resolution Administrator for Governmental Liens?**

Based upon initial sampling of a control group (of over 5,000 cases), approximately 70% of Participating Claimants are recipients of Medi<u>care</u> and up to a 25% are recipients of Medi<u>caid</u>. Many Participating Claimants receive <u>both</u>.

The interim payment to Participating Claimants is scheduled for August of 2008. Merck demanded, and the Master Settlement Agreement requires, a uniform approach to ensure that the interests of Medicare, Medicaid, and all other federal healthcare providers are protected prior to any disbursement to Participating Claimants. This means that a Participating Claimant's entitlement to governmental programs must be verified and all associated liens against the Settlement Payment must be resolved before the Claimant may receive any Settlement Proceeds.

**Who is the Lien Resolution Administrator?**

The Garretson Law Firm has been engaged as the LRA over the Vioxx Settlement. The Garretson Law Firm has served in similar capacities in many other mass tort settlements and provides the experience and "blue print" to resolve these liens as efficiently as possible (www.garretsonfirm.com).

**Under the settlement, what liens are being addressed globally by the Lien Resolution Administrator and what liens are my responsibility as counsel?**

The Master Settlement Agreement tasks the LRA with resolving all governmental liens arising out of the Vioxx Settlement. These are primarily Medicare and Medicaid liens, which the LRA will address and resolve automatically. Also included in the category of "governmental liens" are those asserted by the Department of Veterans Affairs (VA), Tricare and Champus, and Indian

1

Health Services, which the LRA also will address on a case-by-case basis upon notice provided by a Participating Claimant, his or her counsel, or the agencies.

The Master Settlement Agreement *does not* assign the LRA the task of addressing other healthcare liens, such as those arising under private insurance, ERISA and other employee health plans, or supplemental coverage (MediGap, Medicare HMO). However, the LRA will address these liens for those attorneys and clients who wish to retain its services separately. Otherwise, it is the responsibility of you and your clients to address all other liens and third-party claims.

MEDICARE AND MEDICAID LIENS

The LRA is tasked with addressing Medicare and Medicaid liens, and will do so automatically for all Claimants who register in the Settlement Program and who are recipients of Medicare and / or Medicaid benefits.

**Do I or my clients have to do anything on the Medicare or Medicaid liens?**

No. The LRA will identify, address, and resolve all Medicare and Medicaid liens in the entire Vioxx settlement. The LRA is equipped with information which allows it to identify all Participating Claimants who owe an obligation to either Medicare or Medicaid, and facilitate the best resolution to those obligations on a global scale. Unless the LRA contacts you regarding a specific client to seek additional information, neither you nor your clients need to do anything to address their Medicare or Medicaid liens.

**What about the statutory obligations to Medicare and Medicaid?**

The LRA will satisfy all statutory obligations with regard to Medicare and Medicaid. These include putting Medicare and Medicaid on notice of your clients' Settlement Payments and properly addressing and satisfying those agencies' respective interests.

**Should I contact Medicare or Medicaid if I think my client may have a lien, or for any other reason?**

*No*. Do not contact Medicare or Medicaid to address or inquire about any obligation your clients may have. If you contact Medicare or Medicaid to address a lien, this will result in duplicate files being created at the respective agency. This increases the level of confusion within the agency and could significantly delay resolution of the lien and disbursement of your client's funds.

**What if I have already contacted Medicare or Medicaid, or been contacted by them?**

For any isolated cases where you or your client has been notified by Medicare or Medicaid, identify the related files and send those to the LRA immediately. The LRA will identify those cases as pre-submitted and then proceed with resolution. The LRA will evaluate the respective agency's right of recovery and satisfy the obligation (if any).

2

**How will Medicare and Medicaid liens be addressed?**

With respect to Medicare, the LRA will: (i) *verify* the Participating Claimants in the Settlement Program who are (or have been) entitled to Medicare and who may have potential Medicare obligations related to Vioxx, and (ii) negotiate a "global" reimbursement to *resolve* Medicare's interest in the Settlement Payments of Medicare-entitled Participating Claimants. The global Medicare reimbursement amount would be based upon the LRA's determination of the likely course of treatment associated with each compensable injury category. The LRA will work with the Claims Administrator and Special Masters to determine the applicable reduction in allocation points for those Participating Claimants who are (or have been) entitled to Medicare in recognition of the global Medicare settlement. Regardless of the extent to which any Medicare-entitled Participating Claimant has relied on his/her Medicare coverage in the past, this formalized process ensures Medicare will continue to pay in the future for the medical care typically covered by Medicare for his/her Vioxx-related injuries.

With respect to Medicaid, the LRA will verify which Participating Claimants currently are or have been Medicaid beneficiaries in each state and territory between the dates of ingestion through the date of settlement. The LRA will then secure claims histories from the appropriate Medicaid agency and audit each claim to help ensure that only those medical expenses associated with Vioxx-related injuries are included in the final reimbursement or "lien" amount. The perfected lien will be deducted from the entitled plaintiff's award.

**When can I expect my clients' Medicare and Medicaid liens to be completed?**

Medicare's interest in the settlement at large will be globally satisfied by the LRA as a first step of the settlement process – a task which will be completed before the interim payment scheduled for August, 2008.

The majority of Medicaid liens will also be resolved before the August, 2008 payments. For any Medicaid liens not finalized by that time, the LRA will have "hold backs" in place to enable immediate partial payment to affected Participating Claimants.

**Who do I contact concerning the progress of my clients' Medicare or Medicaid liens?**

The LRA will keep you informed with regular progress reports. Should you need to contact the LRA, please use the information at the end of this FAQ.

<u>ADDITIONAL FEDERAL GOVERNMENTAL AUTHORITY LIENHOLDERS</u>

**What Other Governmental Authority Lienholders Exist Besides Medicare and Medicaid?**

In addition to Medicare and Medicaid, the LRA has been tasked with resolving the healthcare liens of other federal agencies. These include the VA, Tricare, and Champus for Participating Claimants who are either active or retired military, and Indian Health Services (IHS) for Native American Claimants. However, this does not include liens asserted by government employee

3

health plans, which must be addressed separately (please see section entitled "ERISA, Private Insurance, and Other Liens" below).

**Do I or my client need to do anything to deal with health care liens asserted by the VA, Champus, Tricare, or Indian Health Affairs?**

*Yes*.  The LRA will address and resolve these liens, but there is no way for the LRA to first verify whether such a lien exists without additional information from you or your client.  If one of these additional federal healthcare providers has provided any Vioxx-related care to one of your clients or made any inquiry regarding a client's Settlement Payment, notify the LRA immediately so that the lien can be addressed promptly.  (You also may notify the LRA of such obligations through the questionnaire that will be provided to you through the Claims Administrator).

Once you notify the LRA of a potential lien, it will proceed independently to address and resolve any interest that these agencies may have.  The LRA will contact you if additional cooperation or information is needed.

**How will these military and IHS liens be addressed?**

All military and IHS liens will be addressed by securing, auditing and perfecting actual injury-related expenditures for each Participating Claimant.  The proper agency will then be contacted, and appropriate reductions to the liens will be negotiated.  The LRA's established protocols for addressing these liens *en masse* will expedite this process while satisfying any statutory obligation owed by you or your clients.

**When can I expect my clients' military or IHS lien to be resolved?**

Military and IHS liens will require more individualized attention than those asserted by Medicare and Medicaid, making it difficult to predict when most or all of these liens will be resolved.  However, the speed with which these liens can be addressed depends heavily upon how quickly you provide the proper notice described above to the LRA, as early notice will allow the LRA to take advantage of these agencies' initial push to resolve their liens efficiently.  For any military or IHS liens not finalized by the interim payment in August, 2008, the LRA intends to have "hold backs" in place to enable immediate partial payment to affected Participating Claimants.

**Who do I contact concerning the progress of my clients' military and IHS liens?**

The LRA will keep you informed with regular progress reports.  Should you need to contact the LRA, please use the information at the end of this FAQ.

4

**ERISA, PRIVATE INSURANCE, AND OTHER HEALTHCARE LIENS**

The LRA has **NOT** been given the task of universally addressing healthcare liens other than those governmental obligations specifically outlined above. This leaves any other healthcare liens to be resolved by you and your clients, including those asserted under ERISA, FEHBA, or other employee health plans, private health insurance, private Medicare supplements (like MediGap Insurance, or Medicare HMO plans), and others. However, the LRA can address these liens on your behalf if you specifically engage the LRA to do so. Otherwise, these liens are your responsibility.

**Why aren't these liens being resolved globally?**

During settlement negotiations, Merck was most concerned about the resolution of "statutory" liens – those held by the government which can be fully enforced against a settling defendant if a plaintiff fails to satisfy them. Merck demanded that the Master Settlement Agreement contain provisions which required that these liens be addressed up front, before a Participating Claimant receives his or her Settlement Payment. The result was the appointment of The Garretson Law Firm as the LRA, due to that firm's previous efforts and experience in expeditiously resolving large numbers of governmental liens.

While these other types of liens may be associated with a Participating Claimant's Settlement Payment, they do not have specific statutory enforcement against a settling defendant. Merck therefore did not insist that those other liens be resolved in the same affirmative fashion as governmental statutory liens (although the Master Settlement Agreement does guarantee Merck indemnification from any other lien claim). Thus, the LRA was not appointed to resolve liens outside of the governmental interests discussed above – although you may retain the LRA to resolve these liens as well by separate engagement for one or more clients.

**What is my obligation with respect to these other liens?**

Unless you choose to retain the LRA to address these liens for your clients, the full resolution of these interests is your responsibility. It is up to you to determine how best to address and resolve these third-party (non-governmental) claims against your clients' Settlement Payments, and satisfy your obligations (if any) under the settlement, to the lienholders, and to your clients.

The Settlement: Prior to the disbursement of any Settlement benefits to your clients, and as a condition precedent to being entitled to receive their Settlement Payment, you and your clients must certify that you have conducted a good faith investigation into the existence and amount of these other liens, and that any such liens will be satisfied from the respective clients' Settlement Payments.

The Lienholders: Your obligations to any non-governmental lienholders will likely vary with each lien, depending upon the language found in the healthcare policy and the applicable laws. A policy may obligate you and your client to notify the lienholder in the event of a personal injury settlement and hold the Settlement Payment until the lien is resolved – obligations which may be echoed in your jurisdiction's Rules of Professional Conduct. As such, it is important to

examine each policy under which your clients received Vioxx-related care and determine your obligations, as well as the enforceability of any potential lien.

<u>Your Client</u>:  Many healthcare policies provide for termination of the client's coverage if a claimed lien is not resolved.  Proper resolution of these liens is critical.

**Where can I find more information about retaining the LRA to resolve these other liens (besides the "Governmental Authority Liens") on my behalf?**

Please see the document entitled "Private Lien Resolution" in this packet for more information regarding the private lien resolution services offered by The Garretson Law Firm, including pricing, scope of service, how to get started.  You may also contact the LRA using the contact information at the end of this FAQ.

<u>APPLICABILITY OF STATE LAW DEFENSES</u>

**Are the liens against my client subject to subrogation defenses arising under state laws?**

Some states have anti-subrogation laws or regulations, including the State of New Jersey where a large number of settling Vioxx claims were originally filed against Merck.  If one of your client's resident state has such a law, the question then arises whether that law bars enforcement of any lien against your clients' Settlement Payments.

The answer to this question depends largely on the type of lien being discussed.  Those liens which the LRA has been specifically tasked with addressing (Medicare, Medicaid, military, and IHS liens) are generally not subject to state anti-subrogation laws.[1]  This is because these liens arise under federal law, and therefore preempt the application of any state subrogation defense.  Moreover, these programs are not "insurers" collecting premiums to accept risk of loss, against which anti-subrogation laws are typically targeted.  Rather, these lienholders are governmental programs designed to provide healthcare to, rather than insure, qualified individuals.  Thus, traditional anti-subrogation insurance regulations do not apply.

The other types of liens (employee health plan, private insurance, Medicare HMO, etc.) may or may not be subject to state anti-subrogation laws.  Private health insurance liens are certainly subject to state anti-subrogation laws under the McCarran-Ferguson Act.  However, whether an ERISA or FEHBA lien is subject to state law depends upon whether the plan is insured by a health insurer or self-funded – a distinction which can be difficult to ascertain.  MediGap and Medicare HMO liens may be subject to a combination of state and federal law, since they are based in insurance but also have ties to Medicare.  This requires close inspection of both the particular policy and interpretations of the law in question where available.

---

[1] [1] Currently pending before the Federal District of New Jersey is a case seeking to apply New Jersey's anti-subrogation rule to Medicare reimbursement claims.  *Merrifield et al v. The United States*, 1:07-cv-00987-JBS-JS.  However, the present status of the law seems to indicate that the anti-subrogation rule does not currently apply to governmental secondary payers.  *Lusby v. Hitchner*, 642 A.2d 1055 (N.J.Super.A.D. 1994).

6

As such, do not assume that because a particular state has an anti-subrogation rule, that the lien obligations arising out of your clients' Settlement Payments do not need to be addressed.  As noted above, you and your clients must make a good faith effort to identify any third-party liens and properly address them to full resolution as a condition of receiving Settlement Payments.

### CONTACT INFORMATION

For further information, or for questions not addressed above, please contact:

>The Garretson Law Firm
>Vioxx Lien Resolution Administrator
>4425 Randolph Rd., Ste 450
>Charlotte, North Carolina 28211
>Phone: (704) 366-8996
>Fax: (704) 366-8994
>www.lienresolution.com