## Appendix of Unreported Decisions

| Tab | Case Information |
|-----|------------------|
| 1 | *Brown v. Assocs. Health and Welfare Plan*, No. 07-2006, 2007 WL 2350323 (W.D. Ark. Aug. 16, 2007) |
| 2 | *Admin. Comm. of Walmart Stores, Inc. v. Shank*, No. 1:05-CV-00129, 2006 WL 2546797 (E.D. Mo. Aug. 31, 2006) |
| 3 | *Primax Recoveries, Inc. v. Gunter*, No. 3:02-0240, 2007 WL 865830 (M.D. Tenn. Mar. 16, 2007) |
| 4 | *Shaw Ind. v. Hyde*, No. 1:03-CV-409, 2003 WL 23413738 (E.D. Tenn. Dec. 12, 2003) |
| 5 | *Citizens Sav. Bank v. GLI Technical Servs., Inc.*, No. Civ. A. 96-2307, 1996 WL 737008 (E.D. La. Dec. 23, 1996) |
| 6 | *Rudney v. Int'l Offshore Servs.*, No. 07-3908, 2007 WL 2900230 (E.D. La. Oct.1, 2007) |
| 7 | *Perrier Party Rentals v. Event Rental, LLC*, No. 07-3244, 2007 WL 2284579 (E.D. La. Aug. 7, 2007) |

# TAB 1



Slip Copy
Slip Copy, 2007 WL 2350323 (W.D.Ark.), 42 Employee Benefits Cas. 1123
**(Cite as: 2007 WL 2350323 (W.D.Ark.))**

Page 1

**H**Brown v. Associates Health and Welfare Plan
W.D.Ark.,2007.

United States District Court,W.D. Arkansas,Fort
Smith Division.
Zachery T. BROWN and Loretta Cole, Plaintiffs
v.
ASSOCIATES HEALTH AND WELFARE PLAN
and Wal-Mart Stores, Inc., Defendants.
**No. 07-2006.**

Aug. 16, 2007.

<u>Stephen M. Sharum</u>, Fort Smith, AR, for Plaintiffs.
<u>Edwin L. Rawson</u>, <u>Thomas H. Lawrence</u>, <u>Malcolm
Futhey, III</u>, Lawrence Russell LLP, Memphis, TN, for
Defendants.

**MEMORANDUM OPINION AND ORDER**

<u>ROBERT T. DAWSON</u>, United States District Judge.
**\*1** This matter is before the Court on Plaintiffs'
Complaint requesting the Court to find that Zachery
Brown was not made whole as a result of the
settlement of the personal injury claim. He contends
that because the Defendants's Plan does not
specifically reject the make whole doctrine <u>FN1</u>
Plaintiffs should be entitled to retain the full amount of
the settlement received. Plaintiffs request if the Court
concludes the Plan rejects the make whole doctrine,
the Court shall then determine that the subrogation
rights of the Plan do not extend to the Plaintiffs'
attorney's fees and costs. Further, Plaintiffs ask this
Court to find that Wal-Mart is not entitled to enforce a
wage deduction from Plaintiff's wages. Defendants
filed a counterclaim against Plaintiffs seeking
equitable relief pursuant to <u>20 U.S.C. § 1132(a)(3)</u>.
(Doc. 5).

> <u>FN1.</u> Under the make whole or made whole
> doctrine "an insured's right to be made whole
> takes precedence over an insurer's right to
> subrogation; the insured must be wholly
> compensated before an insurer's right to
> subrogation arises. Therefore, the insurer's
> right to subrogation arises only in situations
> where the recovery by the insured exceeds

his or her total amount of damages incurred;
equity requires that an insured be made
whole before the insurer's right to
subrogation arises."<u>Logan County v.
McDonald, 90 Ark.App. 409, 206 S.W.3d
258 (Ark.App.2005)</u>.

Currently pending before this Court are the
Defendants' Motion for Summary Judgment (Doc.
11-1) and supporting documents (Docs. 11-2, 12-1
and 39-1) and Plaintiffs' Response to Defendants'
Motion for Summary Judgment. Plaintiffs' Motion for
Summary Judgment (Doc. 16) and supporting
documents (Docs. 17-1 and 18) and Defendants'
Response to Plaintiffs' Motion for Summary Judgment
(Doc. 39-1). Also pending is Plaintiffs' Motion to
Dismiss Counter-Claim against Separate
Counter-Defendant Stephen Sharum (Doc. 31) and
supporting document (Doc. 32) and Defendants'
Response to Motion to Dismiss Counter-Claim (Doc.
40) and supporting document (Doc. 41).

For the reasons stated herein, the Plaintiffs' Motion for
Summary Judgment is DENIED and the Defendants'
Motion for Summary Judgment is GRANTED.
Plaintiffs' Motion to Dismiss Counter-Claim is
DENIED as it is moot.

**Background**

On July 18, 2006, Plaintiff Zachery Brown was
injured in an automobile accident. Due to the severity
of his injuries, Zachery was hospitalized in an
intensive care unit for eleven days and remained in the
hospital an additional three days. (Doc. 1-1).
Plaintiff's mother Loretta Cole is a participant in the
Associates's Health and Welfare Plan ("Plan") as an
employee of Wal-Mart Stores, Inc. At the time of the
accident, Zachery was covered as a beneficiary under
the plan as a dependent. (Doc. 1-1). BlueAdvantage,
the healthcare administrator for the group plan
provided through the Associates' Health and Welfare
Plan, paid $63,465.83 in medical expenses. (Docs.
17-1 and 39). The Plan, under which Plaintiffs
received medical benefits, is self-funded and governed
by the Employee Retirement Income Security Act
(ERISA) <u>29 U .S.C. § 1001 et seq.</u> (Doc. 1-1). The
Plan contains a "Reimbursement/Subrogation"

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 2
Slip Copy, 2007 WL 2350323 (W.D.Ark.), 42 Employee Benefits Cas. 1123
(Cite as: 2007 WL 2350323 (W.D.Ark.))

provision, which provides for first priority reimbursement from monies recovered on behalf of beneficiaries for whom the Plan pays benefits. (Doc. 1, Ex. A).

Plaintiffs hired attorney Stephen Sharum to represent them and recover from the parties who caused Zackery Brown's injuries. (Doc. 17). Pursuant to the Attorney-Client Agreement, Stephen Sharum was to receive thirty-four percent (34%) of all amounts recovered. (Doc. 21). Plaintiffs reached a settlement with Zachery's stepfather's insurance company Shelter Insurance Company for $25,000.00 on September 22, 2006 on the underinsured motorist coverage claim and settled with the liability insurer, State Farm Insurance Company, for $25,000.00 on October 4, 2006. On October 9, 2006, Plaintiff received a notice of subrogation claim from the health plan administrator. Plaintiff signed a release with the liability insurance carrier and the underinsured motorist carrier on October 12, 2006. Plaintiff's attorney, Steve Sharum, placed the proceeds of the two settlements, $50,000.00, in his IOLTA account on October 12, 2006.[FN2]

> FN2. On July 10, 2007, Plaintiffs' attorney Stephen Sharum notified Defendants he had removed $17,000.00 of the settlement proceeds from his IOLTA account and placed it in his operating account. Defendants' filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 25) asking that Plaintiffs and their attorney, Stephen Sharum, be enjoined from disposing of any of the $50,000.00 settlement funds. The Magistrate heard this matter on July 18, 2007 and recommended the motion be denied. This Court entered an Order (Doc. 45) on August 13, 2007 adopting the Magistrates Report and Recommendation but found Defendants would suffer irreparable harm if the funds were dissipated and granted the preliminary injunction as to the entire $50,000.00 with the $17,000.00 to be returned to the IOLTA account.

## Summary Judgment

*2 A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law,

according to Federal Rule of Civil Procedure 56(c). A fact is material only when its resolution affects the outcome of the case. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See *id. at 252*. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212 (8th Cir.1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.* 838 F.2d 268, 273 (8th Cir.1988). Once the movant has met this burden, the non-movant party may not rely on mere denials of bare allegations, but must point to specific facts that raise a triable issue. See *Anderson, 477 U.S. at 249*. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See *Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)*. The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.' " *Id. at 327* (quoting from Fed.R.Civ.P. 1).

## Analysis

In *Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 92002, 122 S.Ct. 708, 151 L.Ed.2d 635)*, the Supreme Court distinguished between "legal" and "equitable" relief. The Court stated, "a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id. at 213*. However, the Court reasoned, "if the property or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." *Id. at 213-14*. In such an instance, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 3
Slip Copy, 2007 WL 2350323 (W.D.Ark.), 42 Employee Benefits Cas. 1123
(Cite as: 2007 WL 2350323 (W.D.Ark.))

plaintiff is seeking a legal remedy, the imposition of personal liability on the defendant to pay a sum of money which the plaintiff is owed, so his claim falls outside § 502(a)(3)'s jurisdictional grant. *Id* at 210.

Relying on the discussion in *Great-West,* courts have developed a three part test for determining whether a plan administrator can maintain an action for "appropriate equitable relief" to enforce a reimbursement provision after a plan beneficiary has received compensation from a third party. "Does the Plan seek to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the plan, and (3) that are within the possession and control of the defendant beneficiary?" *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wainsbrough,* 354 F.3d 348, 356 (5th Cir.2003); *Admin. Comm. of Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Varco,* 338 F.3d 680, 687 (7th Cir.2003); *Calhoon v. Trans World Airlines, Inc.,* 400 F.3d 593, 598 (8th Cir.2005).

*3 In *Sereboff v. Mid Atlantic Medical Services, Inc.,* --- U.S. ----, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), an ERISA fiduciary brought suit against plan beneficiaries, seeking reimbursement under the plan's third-party reimbursement provision for amounts paid by the health insurance plan and subsequently recovered by the beneficiaries in their settlement with third-party tortfeasors. *Id.* at 1872-73.The beneficiaries argued that the fiduciary's claim for relief was not equitable and thus disallowed under ERISA. See *Id.* at 1873-77.The Supreme Court disagreed, holding that the fiduciary's action to enforce the third-party reimbursement provision "qualifie [d] as an equitable remedy because it [was] indistinguishable from an action to enforce an equitable lien established by agreement." *Id.* at 1877.Key to its holding was the Supreme Court's determination that the third-party reimbursement provision "specifically identified a particular fund, distinct from the [beneficiaries'] general assets-all recoveries from a third party ...-and a particular share of that fund to which [the fiduciary] was entitled-that portion of the total recovery which [was] due [the fiduciary] for benefits paid." *Id.* at 1875.

In determining whether Defendants are entitled to any of the settlement funds currently being held by Plaintiffs' attorney, the three part test set out above must be applied.

Defendants argue they are entitled to an equitable lien or constructive trust against the $50,000.00 currently being preserved in the Stephen M. Sharum IOLTA account. (Doc. 11-2). Defendants argue they are entitled to the equitable relief it seeks pursuant to *Sereboff v. Mid Atl. Med. Servs., Inc.,* ---U.S. ----, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006) as the funds it seeks are specifically identifiable and in the possession of the Plaintiffs. Plaintiffs argue the funds do not in good conscience belong to the Plan, as the attorney fee funds do not meet any part of the three part test and all funds were appropriated prior to Defendants' notice of claim of lien or subrogation.

A. *Specific Identifiability*

In this case, the funds are specifically identifiable. In *Varco, supra,* the court held that where a defendant established a bank account from the settlement proceeds in the amount of the medical bills, the funds had not been dissipated and were specifically identifiable. *Id* at 684.In *Bombardier, supra,* the Court found that the funds were specifically identifiable when the settlement proceeds were placed in a trust account by the beneficiary's law firm. *Bombardier* at 350.

In this case, the funds have been placed in the attorney's Trust Account pending the outcome of this action. These funds were obtained from Plaintiffs' settlement for injuries Zackery Brown sustained in the accident. Thus the proceeds of the settlement have not been dissipated and are specifically identifiable.

B. *The Plan's Rights to the Funds*

Defendants' claim to be entitled to the funds based upon the Plan's "Right to Reduction, Reimbursement and Subrogation" provision. This provision states, "[T]o the extent of any and all of the following payments: Any judgment, settlement, or payment made or to be made because of an accident or malpractice, including but not limited to other insurance ... The Plan requires you, your dependents, and your representative to cooperate in order to guarantee reimbursement to the Plan from third party benefits."Defendants contend this language entitles it to the funds being held in the account.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 4
Slip Copy, 2007 WL 2350323 (W.D.Ark.), 42 Employee Benefits Cas. 1123
(Cite as: 2007 WL 2350323 (W.D.Ark.))

*4 Plaintiffs argue the funds do not in "good conscience" belong to the Plan as Defendants are precluded from claiming a constructive trust or equitable lien since Plaintiffs settled the case before notice of a claim was asserted by Defendants. Furthermore, Plaintiffs argue Zachery was not made whole by the settlement of his claims and therefore, the funds do not in good conscience belong to the Plan.

However, the Supreme Court has stated, "a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets title to the thing."*Sereboff*, 126 S.Ct. At 1877 (quoting *Barnes v. Alexander, 232 U.S. 117, 121, 34 S.Ct. 276, 58 L.Ed. 530 (1914)*. Plaintiffs agreed to reimburse the Plan if it paid out funds to them and they were able to recover from a third party. Therefore, the actual settlement date is not relevant as Plaintiffs had prior notice they would be required to reimburse the Plan if they recovered funds from a third party as reimbursement for injuries for which the Plan paid out benefits. Further, the funds the Plan is seeking to recover belong to Plaintiffs and are being held in an account in the name of their attorney who is unquestionably their agent.

In support of their argument that the Plan does not reject the federal make whole doctrine, Plaintiffs cite the case of *Cagle v. Bruner, 112 F.3d 1510 (11th Cir.1997)* which found the make whole doctrine operates as a default rule. The Eleventh Circuit stated, "As a default rule, the make whole doctrine applies to limit a plan's subrogation rights where an insured has not received compensation for his total loss and the plan does not explicitly preclude operation of the doctrine."*Id at 1522.*Because the make whole doctrine is a default rule, the parties can contract out of the doctrine." *Id* citing *Barnes v. Independent Auto. Dealers Ass'n of Calif. Health & Welfare Benefit Plan, 64 F.3d 1389, 1395 (9th Cir.1995)*. The Eighth Circuit has held that "[a] subrogation provision affects the level of benefits conferred by the plan, and ERISA leaves that issue to the private parties creating the plan."*Waller v. Hormel Foods Corp., 120 F.3d 138, 140 (8th Cir.1997)*. The Court has also noted that the "Make-whole rule is a rule of interpretation that functions as a default rule to be applied only when the plan is ambiguous."*Id.* citing *Cagle v. Bruner, 112 F.3d 1510, 1521 (11th Cir.1997)*.

The Eighth Circuit has allowed ERISA plans to disclaim the make whole doctrine. "It is settled that ERISA plan participants have an obligation to reimburse the plan when a recovery is made from a third party responsible for the injuries and the plan terms require reimbursement. *Waller*, at 140.The Plan language states, "The Plan has a right to: Recover or subrogate 100% of benefits paid, or to be paid, by the Plan for covered persons, to the extent of any and all of the following payments: Any judgment, settlement, or payment made or to be made because of an accident or malpractice, including but not limited to other insurances. Any auto or recreational vehicle insurance coverage or benefits, including but not limited to uninsured/underinsured motorist coverage."Further, the Plan language states: "These rights apply regardless of whether such payments are designated as payment for, but not limited to: Pain and suffering, or medical benefits. This applies regardless of whether you or your dependents have been fully compensated for injuries."(Doc. 1, E.A).

*5 In *Waller*, the Eighth Circuit found that the plan language that provided the plan, "shall be subrogated to all rights of recovery which you or your dependent ... may have against any person or organization" was sufficient to preclude application of the make whole doctrine. *Id* at 140.The Court concluded that language implied the plan had a "first priority" claim as to any recovery. *Id.* The Court also recognized that ERISA plans differ greatly from general insurance company plans for which the made whole doctrine was created.*Id.*

In the current case, the Plan states, in the section entitled, "Information Regarding Rights of the Associates' Medical Plan and the Dental Plan,""The Plan has a right to ... [r]ecover or subrogate 100% of the benefits paid ... The Plan has first priority with respect to its right to reduction, reimbursement and subrogation. This applies regardless of whether you [the plan member] or your dependents have been fully compensated for injuries."The Plan language, like the language in *Waller*, entitles the Plan to first priority in recovery from a settlement. Further, the Plan expressly states its rights apply "regardless of whether you [the plan member] or your dependents have been fully compensated."The provision relied upon by Defendants unambiguously gives first priority to the Plan to reimbursement and subrogation from settlement proceeds and disclaims the made whole

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 5
Slip Copy, 2007 WL 2350323 (W.D.Ark.), 42 Employee Benefits Cas. 1123
(Cite as: 2007 WL 2350323 (W.D.Ark.))

doctrine.

*C. Possession and Control of the Funds*

Plaintiffs argue they have not had possession and control of the funds in question as the funds have been held in their attorney's trust account. They argue their attorney is not a party to this action and has not agreed to or been ordered by this Court to hold the funds in his account on behalf of the Defendants. Plaintiffs also argue Defendants are not entitled to the full $50,000.00 as $17,000.00 of it belongs to Plaintiffs' attorney as his fee from the settlement. In support of their argument, Plaintiffs cite *Administrative Committee of the Walmart Associates' Health & Welfare Plan v. Willard,* 393 F.3d 1119 (10th Cir.2004) and *Primax Recoveries, Inc. v. Sevilla,* 324 F.3d 544 (7th Cir.2003).

In *Primax,* the settlement check was made out to the plan member, the attorney and Primax, the plan member's insurer. Primax refused to sign the check because the attorney claimed he was entitled to fees. The Seventh Circuit found that because the Plan member never had the funds in question, the suit by the plan was for monetary damages and not equitable relief, therefore the plan was not entitled to the money. *Primax* at 547-48.

*Willard* presented a unique situation because the injured beneficiary, an employee of Wal-Mart, was injured when a pharmacist also employed by Wal-Mart erroneously filled a prescription. The beneficiary was covered under the Wal-Mart Associates Health and Welfare Plan. Mr. Willard argued the Plan language was ambiguous because the Plan allows recovery of "any judgment" while the "Cooperation Required" section only discusses recovery "from another party." *Id.* at 1125.The Court found that the reference under the "Cooperation Required" heading only described a participant's obligation to cooperate, it did not define the source of payments subject to reimbursement. *Id.* The reimbursement provision, as the one in the present matter, was very broad, allowing recovery from any and all judgments and settlements. The Tenth Circuit found Mr. Willard's argument to be without merit. *Id.*

*6 In this case, the funds the Plan is seeking to recover belong to the Plaintiffs and are being held in the Plaintiffs' attorney's account for the Plaintiffs. The

Plaintiffs have control over the funds and are thus, in constructive possession of the funds. Furthermore, as in *Bombardier,* the argument that Plaintiffs lack control over the $17,000.00 claimed by their attorney is unpersuasive. Plaintiffs had a pre-existing contractual obligation to the Plan to reimburse it for the full amount of any benefits paid on their behalf without a reduction for attorney's fees. That obligation precludes Plaintiffs from entering into an agreement with their lawyer to pay him from a fund they were not entitled to.

The Eighth Circuit addressed the issue of attorney's fees in *Waller, supra.*As in the current case, the Wallers entered into a fee arrangement with an attorney that entitled their attorney to one-third of any amount recovered. The district court concluded that under federal common law, the Plan should be assessed an attorney's fee for "creation of the settlement fund." *Id.* at 142.At issue on appeal was the amount the Plan was required to pay as an attorney's fee. In reaching their decision, the Eighth Circuit adopted the reasoning of the Third Circuit in *Ryan v. Federal Express Corp.,* 78 F.3d 123 (3rd Cir.1996). The plan in issue in that case required beneficiaries to reimburse "100% of the amount of covered benefits paid" and specifically addressed the question of attorney's fees incurred by a beneficiary in recovering from a third party. *Id.* The beneficiary argued the plan should pay a pro rata share of the attorney fees. The Third Circuit rejected the argument and enforced the plan stating, "it would be inequitable to permit the Ryans to partake of the benefits of the Plan and then.. invoke common law principles to establish a legal justification for their refusal to satisfy their end of the bargain."*Id.* at 142 citing *Ryan,* 78 F.3d at 127-28.

In *Waller,* the plan's subrogation clause contained no language regarding attorney's fees. The Eighth Circuit agreed with the district court and reduced the subrogation recovery by the amount of a reasonable attorney's fee. In the present matter, the Plan is not silent on the issue of attorney's fees. In the section titled "Information Regarding Rights of the Associates' Medical Plan and the Dental Plan" under the sub-heading "Right to Reduction, Reimbursement, and Subrogation" the Plan states, "the Plan is not responsible for the covered person's attorney fees, expenses or costs."(Doc. 1, Ex. A).

In *Wal-Mart Stores, Inc. Assocs.' Health & Welfare*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2350323 (W.D.Ark.), 42 Employee Benefits Cas. 1123
(Cite as: 2007 WL 2350323 (W.D.Ark.))

Page 6

*Plan v. Scott*, 27 F.Supp.2d 1166 (W.D.Ark.1980), this Court found, on language identical to the language in the Plan at issue, "the provision at issue gives the Plan the right of recovery to the 'extent of any and all' payments recovered from identified sources." It makes clear that the attempted designation of the payments for specified types of damages would not prevent the Plan's full recovery and specifies that the right exists regardless of whether or not the participant is made whole. A fair interpretation of this language would be that full reimbursement is required without reduction for attorney's fees or costs. There is nothing in the Plan that qualifies the right to reimbursement by the attorney's fees or costs, if any, expended or incurred, in obtaining recovery of amounts subject to that right ... [W]here a plan is clear and unambiguous we cannot apply a common law rule of interpretation. Rather the straightforward language of the plan should be given its natural meaning." *Id.* at 1175.

*7 This Court finds the Plan sufficiently disclaims the make whole doctrine and the common fund rule. Under the clear and unambiguous language of the Plan it is entitled to full reimbursement of the benefits it paid to Plaintiffs as a result of Zackery Brown's accident without any reduction for attorney's fees or costs. This Court further finds Defendants are not entitled to deduct any amounts from the wages or salary of Loretta Cole to reimburse the Plan for any unpaid benefits.

**Conclusion**

Defendants have demonstrated that no genuine issues of material facts exist and they are entitled to summary judgment. This Court finds that Defendants' request for a constructive trust is appropriate equitable relief. Thus a constructive trust is imposed upon the proceeds of the settlements received by the Plaintiffs from State Farm Insurance Company and Shelter Insurance Company in the amount of $50,000.00. This Court further denies Plaintiffs' request for attorney's fees and costs.

For the reasons reflected above, Plaintiffs' Motion for Summary Judgment (Doc. 16) is DENIED as to Plaintiffs' assertion that Zackery Brown is entitled to the $50,000.00 settlement of his personal injury claim or any reduction for attorney's fees or costs. Plaintiffs' Motion is granted as to the request that Defendant be barred from withholding any monies from Loretta

Cole's wages or salary. Plaintiffs' Motion to Dismiss Counter-Claim (Doc. 31) is also DENIED as it is a moot issue. Defendants' Motion for Summary Judgment (Doc. 11-1) is GRANTED. This Court finds Defendants are entitled to a declaratory judgment as to the full amount of the recovery in the amount of $50,000.00 with no reduction for attorney's fees and costs.

IT IS SO ORDERED.

W.D.Ark.,2007.
Brown v. Associates Health and Welfare Plan
Slip Copy, 2007 WL 2350323 (W.D.Ark.), 42 Employee Benefits Cas. 1123

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 2



Slip Copy
Slip Copy, 2006 WL 2546797 (E.D.Mo.), 39 Employee Benefits Cas. 2116
(Cite as: 2006 WL 2546797 (E.D.Mo.))

Page 1

▷Administrative Committee of Wal-Mart Stores, Inc.
v. Shank
E.D.Mo.,2006.

United States District Court,E.D.
Missouri,Southeastern Division.
ADMINISTRATIVE COMMITTEE OF the
WAL-MART STORES, INC. Associates' Health and
Welfare Plan, Plaintiff,
v.
James A. SHANK, as Trustee of the Deborah J. Shank
Irrevocable Trust, Deborah J. Shank and the Deborah J.
Shank Irrevocable Trust, Defendants.
No. 1:05 CV 00129 LMB.

Aug. 31, 2006.

Christopher R. Hedican, Baird and Holm, Omaha, NE,
Daniel M. O'Keefe, Bryan Cave LLP, St. Louis, MO,
for Plaintiff.
Erica L. Airsman, Maurice B. Graham, Gray and
Ritter, P.C., St. Louis, MO, for Defendants.

### MEMORANDUM AND ORDER

LEWIS M. BLANTON, Magistrate Judge.
*1 This matter is before the court on the Complaint of
Plaintiff Administrative Committee of The Wal-Mart
Stores, Inc. Associates' Health and Welfare Plan for
equitable relief and damages pursuant to the
Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3). This
case has been assigned to the undersigned United
States Magistrate Judge pursuant to the Civil Justice
Reform Act and is being heard by consent of the
parties. See 28 U.S.C. § 636(c).

Currently pending before the court is Plaintiff's
Motion for Summary Judgment (Document Number
10), along with a Statement of Uncontroverted
Material Facts (Doc. No. 10), Memorandum in
Support (Doc. No. 11), and Index of Evidence (Doc.
No. 12). Defendants have filed a Memorandum in
Opposition to Plaintiff's Motion for Summary
Judgment (Doc. No. 21), and plaintiff has filed a
Reply (Doc. No. 25).

### Background

On August 8, 2005, plaintiff filed its Complaint for
equitable relief and damages under ERISA and federal
common law for recovery of sums paid by the
Wal-Mart Stores, Inc. Associates Health and Welfare
Plan ("Plan") for medical services received by
Defendant Deborah J. Shank. (Doc. No. 1). Plaintiff,
the Administrative Committee of the Wal-Mart Stores,
Inc. Associates' Health and Welfare Plan
("Administrative Committee") is the "named
fiduciary" of the Plan, which is an employee welfare
benefit plan within the meaning of ERISA. Plaintiff is
pursuing this action on behalf of the Plan.

The facts in this matter are undisputed. Defendant
Deborah J. Shank incurred significant medical
expenses after sustaining injuries in an automobile
accident on May 12, 2000. Ms. Shank submitted a
claim to the Plan, which paid the medical bills in an
amount exceeding $469,216.00. Ms. Shank sued the
parties responsible for causing her injuries and settled
her claims for $700,000 on August 8, 2002. After
payment of attorney fees and costs, Ms. Shank
received $417,477.00, which was placed in a special
needs trust ("Trust") created for the benefit of Ms.
Shank, with Ms. Shank's husband, James A. Shank to
serve as Trustee.

Plaintiff alleges that, pursuant to the terms of the Plan,
the Plan has the right to be reimbursed from the
proceeds of any settlement Ms. Shank received for the
injuries she incurred and for which the Plan paid the
benefits. Plaintiff states that the Plan advised Ms.
Shank and her attorneys that they must inform the Plan
before she settled her suit, but Ms. Shank did not
notify the Plan of the settlement until after October 9,
2002, well after the settlement had been completed
and the proceeds had been placed in the Trust.
Plaintiff claims that defendants' failure to reimburse
the Plan the full amount of the settlement is a violation
of the terms of the Plan. Plaintiff requests that the
court grant a declaratory judgment in its favor,
injunctive relief, specific performance, impose a
constructive trust, and grant it restitution from and
against James A. Shank as Trustee and the Deborah J.
Shank Irrevocable Trust ordering James A. Shank as
Trustee to turn over to the Plan the settlement

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

proceeds in the amount of at least $469,216.00 for the medical bills paid on Ms. Shank's behalf. In addition, the plaintiff seeks attorney's fees, interest, and costs. Plaintiff also alleges that defendants breached their fiduciary duty to the Plan to use the assets only for the benefit of the Plan and its beneficiaries, and not for their own use. Plaintiff thus requests that the court award it damages for the amount of the medical bills paid on Ms. Shank's behalf and not reimbursed to the Plan, in addition to attorney fees, interest, and costs.

**\*2** Plaintiff filed a Motion for Preliminary Injunction, which the court granted on June 9, 2006. (Docs. No. 14, 29). The preliminary injunction enjoined defendants from dispersing the remaining settlement proceeds held in the Trust, except as specifically listed in the injunction.

*Discussion*

**A. *Summary Judgment Standard***

A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. at 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. *See Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212 (8th Cir.1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. *See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. *See Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510-2511. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. *See Celotex Corp. v. Citrate*, 477 U.S. 317, 324,

106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.' " *Id.* at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1).

**B. *Plaintiff's Motion For Summary Judgment***

Plaintiff argues that judgment should be entered in its favor because no genuine issue of material fact exists as to the Plan's right to reimbursement and subrogation. Specifically, plaintiff claims that the plain language of the Plan entitles it to first priority in Ms. Shank's settlement proceeds and defendants have failed to comply with the terms of the Plan document. Plaintiff contends that it is entitled to equitable relief, including a constructive trust, to enforce its reimbursement interest in the settlement proceeds. Plaintiff further argues that it is entitled to damages, in the amount of Ms. Shank's medical bills the Plan paid for injuries sustained in the accident, for defendants' breach of their fiduciary duties.

**\*3** In their Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, defendants first argue that this court lacks jurisdiction under ERISA. Defendants next claim that plaintiff has not produced sufficient evidence to establish as a matter of law that its claim for reimbursement is based upon a reasonable interpretation of the Plan's terms. Specifically, defendants contend that there is no evidence that the Summary Plan Description, upon which plaintiff relies in its claim for reimbursement, is a valid part of the Plan. Defendants argue that, even if there were sufficient evidence to establish that plaintiff's claim for reimbursement is in accordance with the Plan's terms, plaintiff's claim is not for "appropriate equitable relief," it is not "appropriate," and it does not serve public policy or the purpose of ERISA. Defendants further argue that they did not breach any fiduciary duty owed to plaintiff. Finally, defendants contend that equitable reimbursement should allow repayment of the Plan only after Ms. Shank has been made whole.

Plaintiff, in its Reply, responds to defendants' various arguments. Plaintiff contends that defendants have failed to establish the presence of a material issue of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fact. The undersigned agrees. For the reasons set forth below, plaintiff's Motion for Summary Judgment will be granted.

### 1. Subject Matter Jurisdiction

Defendants first argue that this court lacks subject matter jurisdiction over this suit because plaintiff is seeking monetary damages under a breach of contract theory, and not "appropriate equitable relief" under ERISA. § 502(a)(3), 29 U.S.C. § 1132(a)(3).

ERISA authorizes a civil action "by a ... fiduciary (A) to enjoin any act or practice which violates ... the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violation or (ii) to enforce any provisions of ... the terms of the plan." 29 U.S.C. § 1132(a)(3). The Eighth Circuit has held that a fiduciary's claim against a plan participant for specific performance of the plan's subrogation and reimbursement clause falls within the exclusive jurisdiction of ERISA. See Lyons v. Philip Morris, Inc., 225 F.3d 909, 913 (8th Cir.2000).

The United States Supreme Court distinguished between legal and equitable restitution in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). In Great-West, an ERISA plan brought an action for specific performance of a reimbursement provision and to compel a plan beneficiary who had recovered from a third party to make restitution to the plan for benefits that it had paid. The Supreme Court held that Section 502(a)(3) did not authorize the suit against the beneficiary for reimbursement where the settlement funds had already been distributed to a special needs trust for the beneficiary's care, to the beneficiary's attorney, and to various lien holders. Id. at 214, 122 S.Ct. 708. The Court found that the action could not be characterized as equitable relief because it sought to impose personal liability on the beneficiary for benefits it had conferred upon her, which was a legal remedy. Id. at 214, 122 S.Ct. 708. The Court, however, acknowledged that a plaintiff could seek restitution in equity, "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Id. at 213, 122 S.Ct. 714. In a recent case, Sereboff v. Mid Atlantic Medical Services, Inc., 126 S.Ct. 1869 (2006), the

Supreme Court, applying Great-West, held that an ERISA plan's action to recover amounts paid for medical expenses from a plan beneficiary was a proper action for equitable relief under ERISA where the plan sought recovery through a constructive trust on a specifically identifiable fund.

*4 Here, plaintiff claims that it is entitled to a portion of the settlement proceeds pursuant to the terms of the Plan. Unlike the plaintiff in Great-West, the Administrative Committee has sued the trustee of the special needs trust, the individual who has possession of the funds. In addition, plaintiff seeks equitable restitution, including the imposition of a constructive trust, to restore to plaintiff particular funds in the defendants' possession, rather than the imposition of personal liability upon the trustee of the special needs trust as was sought in Great-West. As such, this court has exclusive jurisdiction over plaintiff's action under ERISA.

Although in the present case the proceeds awarded as a result of the personal injury suit were placed in a special needs trust, this was done after the equitable lien of the Plan had been asserted and acknowledged. See Ex. 10, Letter of June 27, 2001 addressed to Gray, Ritter and Graham with the acknowledgment "The above is agreeable. Date 7-2-2001. Signed: Maurice B. Graham." That lien and plaintiff's right of equitable restitution should not be defeated by the defendant's placing the funds into a special needs trust. As the Supreme Court stated in Sereboff:

And as Barnes itself makes clear, other cases of this Court-not involving attorneys' contingency fees-apply the same "familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing."

126 S.Ct. at 1877 (quoting Barnes v. Alexander, 232 U.S. 117, 121, 34 S.Ct. 276, 278, 58 L.Ed. 530 (1914)).

### 2. Plaintiff's Right to Reimbursement and Subrogation

Plaintiff claims that the plain language of the Plan entitles it to first priority in Ms. Shank's settlement proceeds and defendants have failed to comply with the terms of the Plan. Defendants contend that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

inconsistencies exist between the Summary Plan Descriptions provided to Wal-Mart employees and the actual wording of the Plan.

It is settled that ERISA plan participants have an obligation to reimburse the plan when a recovery is made from a third party responsible for the injuries and the plan terms require reimbursement. *See Waller v. Hormel Foods Corp., 120 F.3d 138, 140 (8th Cir.1997).* A subrogation provision affects the level of benefits conferred by the plan, and ERISA leaves that issue to the private parties creating the plan. *Id.* As such, plaintiff's claim turns on the proper interpretation of the Plan.

Plaintiff relies on the "Right to Reduction, Reimbursement and Subrogation" provision contained in the January 2000 Summary Plan Description (SPD). This provision provides in relevant part as follows:

[t]he Plan has the right to 1) reduce or deny benefits otherwise payable by the Plan and 2) recover or subrogate 100 percent of the benefits paid or to be paid by the Plan on your behalf and or your dependents to the extent of any and all of the following payments: Any judgment, settlement or any payment made or to be made, relating to the accident, including but not limited to other insurance.

*\*5 SPD at 19. The SPD further states that "[t]he Plan has first priority with respect to its right to reduction, reimbursement and subrogation."Id. at 20.In addition, the SPD provides that "[a]ll attorney's fees and court costs are the responsibility of the participant, not the Plan."Id. at 19.

Defendants do not dispute that the plain language of the SPD provides for the right of reimbursement and subrogation. Rather, at issue is whether the SPD is properly part of the Plan so that its reimbursement provision is enforceable against defendants. Defendants argue that the Plan consists only of the 1997 Associates' Health and Welfare Plan Wrap Document ("Wrap document"), which contains no such reimbursement provision.

The Eighth Circuit has held that summary plan descriptions are considered part of ERISA plan documents. *See Barker v. Ceridian Corp., 122 F.3d 628, 633 (8th Cir.1997)* (citing *Jenson v. SIPCO, Inc., 38 F.3d 945, 949 (8th Cir.1994)*). Defendants rely on

two Arkansas district court cases, *Administrative Committee of Wal-Mart Stores Inc. Associates' Health & Welfare Plan v. Gamboa, 2006 WL 374764 (W.D.Ark. Feb. 7, 2006),* and *Cossey v. Associates' Health & Welfare Plan, 363 F.Supp.2d 1115 (E.D.Ark.2005),* which held that a similar reimbursement provision was not enforceable against participants because it appeared only in the SPD and was not part of the Plan.*Gamboa* and *Cossey,* however, can be distinguished from the instant case. In both of these cases, the Arkansas district courts interpreted the 2001 Wrap document. The courts determined that, under the language of the 2001 Wrap document, summary plan descriptions were not included in the definition of the Plan. *See Gamboa, 2006 WL 374764 at \*4;Cossey, 363 F.Supp.2d at 1131.* In the instant case, the 1997 Wrap document applies, because this is the document that was in effect at the time plaintiff was injured in 2000. Defendants do not dispute that the 1997 Wrap document applies in this case. Unlike the 2001 Wrap document interpreted in *Gamboa* and *Cossey,* the 1997 Wrap document defines the Plan to include summary plan descriptions.

The 1997 Wrap document defines "Plan" as follows: " 'Plan' means the Associates Health and Welfare Plan, which consists of this document and each Welfare Program incorporated hereunder by reference, as amended from time to time."Def's Ex. 5 at 2. "Welfare Program" is defined, in relevant part, as "a written arrangement, *including a summary plan description,* incorporated into this Plan that is offered by the Company which provides any employee benefit that would be treated as an 'employee welfare benefit plan' under Section 3(1) of ERISA if offered separately."*Id.* (emphasis added). The 1997 Wrap document further states that each Welfare Program is identified in Appendix A of the Wrap document. *See id.*Appendix A lists the "Wal-Mart Associates' Group Health Plan" as a Welfare Program "comprising the Plan." *Id.* at App. A. The 1997 Wrap document provides that "[n]otwithstanding the number and types of benefits incorporated hereunder, the Plan is, and shall be treated as, a single welfare benefit plan ..." Def's Ex. 5 at 1. The 2000 SPD, in turn, states that it is a Plan Summary for the Associates Health and Welfare Plan. *See* Def's Ex. 4 at S3. Plaintiff has also attached the Affidavit of Christy Herbaugh, Reimbursement Coordinator for the Plan, who states that the 2000 SPD is incorporated into the 1997 Wrap document. *See* Def's Ex. 3 at ¶ 5.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

\*6 The undersigned finds that the 2000 SPD, which contains the reimbursement provision, is part of the Plan and is thus enforceable against defendants. This provision unambiguously gives the Plan first priority with respect to its right to reimbursement and subrogation from the proceeds of a settlement received for injuries incurred for which the Plan paid benefits. The Plan also requires that the beneficiary pay attorney's fees and costs incurred in achieving the settlement. As such, defendants were required to reimburse the Plan in the amount of the proceeds in the trust remaining from the settlement not to exceed $469,216.00, the undisputed amount the Plan paid in Ms. Shank's medical bills that were incurred as a result of the accident.

Plaintiff has demonstrated that no genuine issues of material facts exist and plaintiff is entitled to judgment on the merits. The court finds that plaintiff's request for a constructive trust is appropriate equitable relief under the circumstances. Thus, the court will impose a constructive trust on the settlement proceeds currently held in the Deborah J. Shank Irrevocable Trust not to exceed $469,216.00. The court declines to award attorney's fees or interest to plaintiff. *See Givens v. Wal-Mart Stores, Inc. and Associates' Health and Welfare Plan,* 327 F.Supp.2d 1063, 1067 (D.Neb.2004).

In its Motion for Summary Judgment, besides seeking the imposition of a constructive trust and an order that James A. Shank as Trustee turn over the settlement proceeds in the trust, plaintiff asks for damages for the Shanks' breach of fiduciary duty. This relief is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Administrative Committee of The Wal-Mart Stores, Inc. Associates' Health and Welfare Plan's Motion for Summary Judgment (Doc. No. 10), be and it is **granted.**A separate order of Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that the court imposes a constructive trust on the settlement proceeds currently held in the Deborah J. Shank Irrevocable Trust not to exceed $469,216.00.

**IT IS FURTHER ORDERED** that James A. Shank, Trustee of the Deborah J. Shank Irrevocable Trust, is directed to deliver the settlement proceeds currently held in the Deborah J. Shank Irrevocable Trust not to exceed $469,216.00 to Baird Holm LLP on behalf of the Administrative Committee of the Wal-Mart Stores Inc.'s Associates' Health and Welfare Plan.

E.D.Mo.,2006.
Administrative Committee of Wal-Mart Stores, Inc. v. Shank
Slip Copy, 2006 WL 2546797 (E.D.Mo.), 39 Employee Benefits Cas. 2116

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 3



Slip Copy
Slip Copy, 2007 WL 865830 (M.D.Tenn.)
(Cite as: 2007 WL 865830 (M.D.Tenn.))

Page 1

**H**Primax Recoveries, Inc. v. Gunter
M.D.Tenn.,2007.
Only the Westlaw citation is currently available.
United States District Court,M.D.
Tennessee,Nashville Division.
PRIMAX RECOVERIES, INC.
v.
Joan GUNTER, et al.
No. 3:02-0240.

March 16, 2007.

Lance K. Oliver, Thomas H. Lawrence, III, Lawrence & Russell, LLP, Memphis, TN, for Primax Recoveries, Inc.
John M. Scannapieco, Boult, Cummings, Conners & Berry, Nashville, TN, for Joan Gunter and William Gunter.

ORDER

TODD J. CAMPBELL, United States District Judge.
*1 Pending before the Court are a Report and Recommendation of the Magistrate Judge (Docket No. 115) and Objections filed by the Plaintiff (Docket No. 116).

The Court has reviewed the Report and Recommendation, the Objections, and the file. Plaintiff argues that its Objections to the August 27, 2004 Report and Recommendation (Docket No. 105) were timely filed and should be considered at this time. The Court finds that, even if the Objections were timely filed, which they were not, its decision with regard to the original attorneys' fee issue is the same. In other words, even considering the Plaintiff's late-filed Objections, the Court finds that the Magistrate Judge's prior Report and Recommendation (Docket No. 80) is approved, and Defendants are awarded attorneys' fees and expenses in the amount of $62,255.46 for their original fee application.

With regard to Defendants' supplemental application for fees incurred during the appeal of the first attorneys' fee issue, the Court has considered the factors set forth in *Secretary of Dep't of Labor v. King,* 775 F.2d 666 (6th Cir.1985), and finds that the

Plaintiff's Objections are overruled and the Magistrate Judge's Report and Recommendation (Docket No. 115) is adopted and approved.

Accordingly, Defendants' Supplemental Application for Attorneys' Fees (Docket No. 99) is GRANTED in part and DENIED in part, and Defendants are awarded an additional $9,876.25 in fees.

IT IS SO ORDERED.

### *REPORT AND RECOMMENDATION*

JULIET GRIFFIN, United States Magistrate Judge.
TO: The Honorable Todd J. Campbell, Chief Judge

By order entered June 21, 2006 (Docket Entry No. 144), the defendants' supplemental application for attorneys fees (Docket Entry No. 99) was referred to the Magistrate Judge.

### *I. BACKGROUND*[FN1]

> FN1. The underlying facts set forth herein are generally those recounted in the memorandum entered April 1, 2003 (Docket Entry No. 49), and the Report and Recommendation entered August 27, 2004 (Docket Entry No. 80).

The plaintiff instituted this action under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001*et seq.* ("ERISA"), to recover payments for medical benefits paid on behalf of the defendants. The defendants are "covered persons" under the Northern Telecom, Inc. Health and Welfare Plan (the "Plan"), which is an ERISA covered, self-funded plan, underwritten through CIGNA Healthcare ("CIGNA"). The plaintiff, Primax Recoveries, Inc., was authorized by CIGNA to administer and prosecute all of CIGNA's rights and claims for subrogation under the Plan.

On October 24, 1999, the defendants, Joan and William Gunter, were involved in an automobile accident and sustained serious injuries when the car in which they were driving was struck by a car driven by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                         Page 2
Slip Copy, 2007 WL 865830 (M.D.Tenn.)
(Cite as: 2007 WL 865830 (M.D.Tenn.))

Keith Etter. In the car with the defendants were the defendants' friends, Martin and Virginia O'Haver. The accident was determined to be caused by the negligence of Mr. Etter when he failed to stop at a flashing red light.

The Plan eventually paid $75,477.68 in benefits on behalf of the defendants, specifically, $281.60 in medical expenses on behalf of Mr. Gunter and $75,196.08 in medical expenses on behalf of Mrs. Gunter. Mr. Gunter's primary insurance carrier, United Healthcare Insurance Company, also made payments on behalf of the defendants for health benefits.

**\*2** State Farm Mutual Automobile Insurance Company, Mr. Etter's insurance company, paid the defendants and the O'Havers $100,000.00, the coverage limits under Mr. Etter's policy. The defendants and the O'Havers agreed to divide this amount equally. In September of 2000, the defendants' underinsured/uninsured motorist carrier, Grange Mutual Casualty Company ("Grange"), paid the defendants and the O'Havers a total of $200,000.00, which was also divided equally between the defendants and the O'Havers. In January of 2001, Grange paid the defendants and the O'Havers an additional $100,000.00, the amount remaining under the policy limits. Again, the defendants and the O'Havers divided this amount equally, although the defendants incurred approximately $12,500.00 in attorney fees relating to their recovery of the $50,000.00 received from Grange.

The plaintiff filed this action on March 8, 2002, seeking recovery of the $75,477.68 paid on behalf of the defendants for medical benefits.[FN2]

> FN2. Simultaneously with the filing of the complaint, the plaintiff also filed a motion for a temporary restraining order ("TRO"), which was granted ex parte by order entered March 11, 2002 (Docket Entry No. 9), enjoining the defendants from dissipating the funds received from the plaintiff. By agreed order entered March 19, 2002 (Docket Entry No. 12), the TRO was dissolved and the defendants were ordered to preserve the funds in the amount of $35,070, that remained in their bank account.

The parties filed cross motions for summary judgment on January 24, 2003 (Docket Entry Nos. 28 and 31). The plaintiff argued that it was entitled to restitution, without regard to the make-whole rule, because the defendants voluntarily reached a settlement in which the plaintiff did not participate and the defendants failed to give the plaintiff an opportunity to reject any settlement offers.

By order and memorandum entered April 4, 2003 (Docket Entry Nos. 49-50), the Court found that the voluntary settlement of the defendants' claims did not bar the application of the make-whole rule. However, the Court found that the parties had not adequately briefed the issue of whether the defendants were made whole. The Court directed the parties to supplement their briefs in support of their respective motions with supporting facts on the issue of whether the defendants had been made whole.

In their supplemental briefs (Docket Entry Nos. 54 and 62), the defendants asserted that they received a total net payment of $156,500.00, from all insurance proceeds, not including unreimbursed medical expenses and out-of-pocket expenses. Docket Entry No. 54, at 11.[FN3] They also submitted affidavits, attesting that they sustained severe and permanent injuries as a result of the accident, and that they paid approximately $3,200.00 in out-of-pocket expenses. Docket Entry No. 64, at 2. In addition, the defendants asserted that, under Tennessee law and based on the affidavit of their former attorney, who represented them and the O'Havers in the settlement of their claims, they could have expected to receive damages in the range of $750,000.00 to $1,500,000.00 at trial. *See* Docket Entry No. 58.

> FN3. The defendants received total proceeds of $200,000.00, but the defendants reduced that amount by a $31,000.00 payment for a subrogation lien asserted by United Healthcare, and $12,500.00 in attorneys fees and expenses.

The plaintiff contended that the defendants had received a net amount of at least $385,000.00,[FN4] and that they had been made whole. *See* Docket Entry No. 59, at 2; Docket Entry No. 64, at 2. However, the Court found that the plaintiff did not submit any proof to substantiate that contention. Docket Entry No. 64, at 4. The Court further found that the plaintiff had

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 865830 (M.D.Tenn.)
(Cite as: 2007 WL 865830 (M.D.Tenn.))

Page 3

offered no proof to rebut the defendants' affidavits that the injuries they sustained in the accident resulted in permanent injuries and that they continue to endure pain and discomfort as a result. *Id.* at 4-5.

> FN4. This amount includes $243,420.00 in medical benefits paid on behalf of the defendants.

**\*3** Given the plaintiff's "failure to present any evidence to rebut the proof offered by Defendants that they have not been made whole," the Court found that the defendants were entitled to retain the preserved funds in dispute. Docket Entry No. 64, at 5. Accordingly, by order entered December 5, 2003 (Docket Entry No. 65), the Court denied the plaintiff's motion for summary judgment, and granted the defendants' cross motion for summary judgment.

Thereafter, the defendants filed a motion for attorneys fees (Docket Entry No. 66), seeking $72,519.46, in fees and expenses incurred in successfully defending this action. The defendants argued that they were entitled to recover attorneys fees and costs incurred in connection with the successful defense of the claims, pursuant to section 502(g) of ERISA, 19 U.S.C. § 1132(g), which provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."In accord with the Court's order entered March 23, 2004 (Docket Entry No. 76), defendants' counsel filed a more detailed version of their billing records.

By Report and Recommendation ("R & R") entered August 27, 2004 (Docket Entry No. 80), the Court applied the factors set forth in *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985), considered the plaintiff's specific objections to the fees sought, and recommended that the Court award the defendants $67,255.46 in fees and expenses.

Between the time the parties briefed the defendants' application for attorney fees and the time the R & R was entered, the Court of Appeals for the Sixth Circuit decided *QualChoice, Inc. v. Rowland*, 364 F.3d 638 (6th Cir.2004), in which the Court held that this Court lacked subject matter jurisdiction over a claim filed by the fiduciary and administrator of an ERISA plan to obtain reimbursement. Relying upon *QualChoice*, the plaintiff filed a motion for de novo review (Docket

Entry No. 81) of the R & R, contending that this Court did not have subject matter jurisdiction over the plaintiff's claim and thus also lacked jurisdiction to award attorneys fees.[FN5]

> FN5. The plaintiff did not raise the issue of lack of subject matter jurisdiction or bring the *QualChoice* decision of May 11, 2004, to the Court's attention until after the R & R was entered on August 27, 2004.

The Court agreed with the plaintiff, and, by order entered September 29, 2004 (Docket Entry No. 85), rejected the R & R and denied the defendants' application for attorneys fees. The Court noted, however, that, if the Court had subject matter jurisdiction, the Court would have adopted and approved the R & R and awarded defendants $67,255.46 in fees and expenses. Docket Entry No. 85, at 2, n. 2. By order entered October 15, 2004 (Docket Entry No. 88), the Court denied the defendants' motion (Docket Entry No. 86) to alter or amend the September 29, 2004, order, and the defendants appealed the September 29, 2004, and October 15, 2004, orders. *See* Docket Entry No. 89.

On January 12, 2006, the Court of Appeals for the Sixth Circuit reversed and remanded for further consideration of the defendants' request for attorney's fees and costs. *See Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515 (6th Cir.2006). The Court of Appeals reversed its prior ruling in *QualChoice* in light of the intervening United States Supreme Court cases of *Kontrick v. Ryan*, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004), and *Eberhart v. United States*, 546 U.S. 12, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam), and held that, although the plaintiff had failed to state a claim upon which relief could be granted, the Court, in fact, had subject matter jurisdiction over the plaintiff's claims and therefore had subject matter jurisdiction over the defendants' request for attorney's fees and costs. *See also Sereboff v. Mid-Atlantic Med. Servs., Inc.*, --- U.S. ----, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). In remanding this case, the Court of Appeals specifically held that "the District Court may exercise its discretion in granting the Gunters' application for attorney's fees and costs, *as the Court indicated it would have done with subject matter jurisdiction.*" (emphasis added). Thus it appears that the Court of Appeals fully expected that this Court would award fees to the defendants.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*4** The mandate of the Court of Appeals issued on April 20, 2006, and, by order entered April 24, 2006 (Docket Entry No. 95), the parties were directed to file any supplemental documents, if necessary, relating to the defendants' application for attorneys fees.

After a brief extension of time, *see* Docket Entry Nos. 96-97, the defendants filed a supplemental motion for attorney fees (Docket Entry No. 99), and accompanying memorandum and declaration (Docket Entry Nos. 100-101). After obtaining another extension of time, to which the defendants objected, *see* Docket Entry Nos. 98, 102 and 103, the plaintiff filed a response to the defendants' supplemental motion and objection to the August 27, 2004, R & R (Docket Entry No. 105), to which the defendants filed a reply and response, respectively (Docket Entry Nos. 109-110), along with another declaration of counsel (Docket Entry No. 111).

## II. OBJECTIONS TO THE REPORT AND RECOMMENDATION

The R & R was entered August 27, 2004 (Docket Entry No. 80). By its terms and pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the plaintiff had ten (10) days from service of the R & R to file objections to the R & R. In its motion and memorandum for de novo determination timely filed on September 13, 2004 (Docket Entry Nos. 81 and 82), the plaintiff addressed the Court's lack of subject matter jurisdiction in accord with *QualChoice,* but did not otherwise address the merits of the R & R.

By its order entered April 26, 2006 (Docket Entry No. 95), the Court permitted the parties to file "any *supplemental* documents, if necessary, in regard to [the defendants'] Application for Attorneys Fees ...." (emphasis added). In compliance with that order, the defendants filed their supplemental motion for attorneys fees, and the plaintiff filed an objection to the August 27, 2004, R & R and response to the defendants' supplemental motion (Docket Entry No. 105).

Thus, the defendant filed objections to the August 27, 2004, R & R almost two years after the R & R was entered. There is nothing in these objections that could not have been timely raised in objections filed within ten days of service of the R & R. It does not appear that the Court intended to permit the plaintiff to file untimely objections. In any event, by its referral order (Docket Entry No. 114), the Court only referred the defendants' supplemental application (Docket Entry No. 99) to the Magistrate Judge for a Report and Recommendation.

Therefore, it does not appear that the plaintiff's objections, incorporated into the same document as its response to the defendants' supplemental application, are before the Magistrate Judge for consideration.

## III. DEFENDANTS' SUPPLEMENTAL APPLICATION

By their supplemental application (Docket Entry No. 99), the defendants seek an award of $130,519.91, which includes $59,281.25 in attorneys fees and $2,277.95 in expenses for a total of $61,559.20, for the period August 1, 2003, through May 31, 2006. *See* Docket Entry No. 101, at 2, ¶¶ 4-5. In their reply and counsel's declaration (Docket Entry Nos. 110-111), the defendants seek an additional $6571.28 for fees and expenses incurred since the initial supplemental application was filed. Thus, the defendants no longer seek $130,519.91, but $137,091.19.

**\*5** The defendants initially sought $72,519.46 in fees, including $69,019.46 in fees and expenses through July 31, 2003, and an additional $3500.00 in fees and expenses incurred in connection with the preparation of the original application. *See* Docket Entry No. 77, at 2, ¶¶ 3-4. The $3500.00, which the defendants represented was incurred in the connection with the preparation of the original application for fees and expenses, was addressed by the Court in the August 27, 2004, R & R.[FN6] Therefore, the Court will reduce the $61,559.20 by $3500.00. In addition, by the August 27, 2004, R & R, the Court recommended that the defendants be awarded $67,255.46 of the $72,519.46 requested. Thus, the $137,091.19 should also be reduced by $72,519.46.

> FN6. In support of their original application, the defendants submitted billing records for the period of time ending July 31, 2003. Exhibit 1 to Docket Entry No. 77. In addition, the defendants sought $3,500.00 in attorneys fees and expenses "incurred in connection with the portion of [that] application...."

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 865830 (M.D.Tenn.)
(Cite as: 2007 WL 865830 (M.D.Tenn.))

Page 5

Docket Entry No. 77, at 2. In support of their supplemental application, the defendant submitted billing records for the period of time December 23, 2003, through May 26, 2006, Docket Entry No. 101-2, in addition to the $6571.28 requested for matters not yet billed as of the date of the supplemental application. *See* Docket Entry No. 111, at 2. The Court notes that the amounts reflected on the billing statement (Docket Entry No. 101-2) for the period of time from December 23, 2003, through April 8, 2004, the date the defendants filed their supplemental appendix seeking the additional $3500.00 (Docket Entry No. 77), exceed $3500.00.

Therefore, after the above deductions and the addition of the $6571.28, the amount at issue in attorneys fees and expenses, not already addressed in the August 27, 2004, R & R, is $61,071.73.

The plaintiff has not objected to defendants' counsel's hourly rates or to the amount of hours spent. Instead, the plaintiff contends that the defendants are not entitled to any attorneys' fees or costs related to the appeal, citing *Schwartz v. Gregori*, 160 F.3d 1116, 1120 (6th Cir.1998), in support of its position that the factors enunciated in *Secretary of Dep't of Labor v. King*, 775 F .2d 666 (6th Cir.1985), must be analyzed separately for the appeal.

The factors to consider in awarding attorney's fees are (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' position. *King*, 775 F.3d at 669. No single factor is determinative. *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936 (1996), *cert. denied*, 520 U.S. 1143, 117 S.Ct. 1312, 137 L.Ed.2d 475 (1997). In fact, the Court of Appeals has described the *King* factors as "typically not dispositive" and "considerations representing a flexible approach." *Moon v. UnumProvident Corp.*, 461 F.3d 639, 643 (6th Cir.2006); *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir.2005).

The defendants describe as "disingenuous" the plaintiff's argument that, in considering applications for attorneys fees related to an appeal, *Schwartz* used an analysis of the *King* factors related to the appeal rather than to the case before the District Court. Docket Entry No. 110, at 7. The Court agrees with the defendants that the Court of Appeals reviewed the denial of attorney's fees in *Schwartz* for abuse of discretion, and perhaps the suggestion that the Court of Appeals "conducted" a de novo King-factor analysis, *see* Docket Entry No. 105, at 13, was not artfully made. However, the clear import of the plaintiff's argument is that *Schwartz* mandated that the *King* factors must be applied to the *appeal* when the Court considers an application for fees on appeal. The Court agrees that *Schwartz* so requires.

*1. Bad Faith/Culpability*

*6 The plaintiff contends that there was no bad faith or culpability on the part of the plaintiff, who prevailed in this Court and who defended the appeal brought by the defendants. In addition, the plaintiff argues that the relative merits of the parties' positions weighs in favor of the plaintiff since the plaintiff's position on appeal was consistent with the holding in *QualChoice.* Therefore, it is the plaintiff's position that neither the factors of culpability/bad faith or deterrence weigh in favor of an award of fees. The Court previously found that the common benefit factor did not weigh in defendants' favor. *See* Docket Entry No. 80, at 11.

The landscape on appeal changed dramatically from that presented to this Court. The issue ultimately resolved was whether this Court had jurisdiction over the plaintiff's claim and over the defendants' request for attorney fees. Although the defendants had raised the jurisdictional issue, *see* Docket Entry Nos. 40 and 51, the thrust of the issue before this Court was whether the defendants had been made whole by the payment of the settlement proceeds. It is that issue that was pivotal to the Court's decision granting summary judgment for the defendants. *See* Docket Entry Nos. 64-65.

In the August 27, 2004, R & R, the Court applied the *King* analysis to this case as it existed after the entry of summary judgment for the defendants and relied in part on the Court's finding that the plaintiff presented no evidence to dispute any evidence of wrongdoing on

Slip Copy
Slip Copy, 2007 WL 865830 (M.D.Tenn.)
(Cite as: 2007 WL 865830 (M.D.Tenn.))

Page 6

the defendants' part, that the evidence indicated that the prejudice to the plaintiff resulted from the plaintiff's own failure to actively pursue the information the defendants provided, and that the plaintiff failed to present evidence to rebut the defendants' proof that they had not been made whole. Docket Entry No. 49, at 10-11. Coupled with the fact that the defendants had notified the plaintiff of case law that directly contradicted its position prior to the filing of the lawsuit, the Magistrate Judge found that, at a minimum, the plaintiff's actions constituted indifferent disregard of the defendants' interest. *See* Docket Entry No. 80, at 9.

The defendants now accuse the plaintiff of "flip flopping" on its position on whether this Court has jurisdiction over the claim in this action. *See* Docket Entry No. 110, at 3, 5. Having asserted that the Court had jurisdiction to pursue its claim against the defendants, once the plaintiff faced a recommendation that it pay defendants' attorneys fees, the plaintiff then took a reverse turn and asserted that the Court did not have jurisdiction over the original claim and thus had no jurisdiction over the defendants' request for attorneys fees. However, to hold plaintiff's counsel to a standard of divining that the Court of Appeals would hold that there was no subject matter jurisdiction is too high a standard. Once the Court of Appeals ruled in *QualChoice* that there was no subject matter jurisdiction, the plaintiff had every right to assert that there was no jurisdiction over both the plaintiff's claims and the defendants' request for attorney fees in this case. Therefore, it is not reasonable to expect the plaintiff to anticipate that the law would change as dramatically as it has and not reasonable to accuse the plaintiff of "flip flopping" when the plaintiff changed its position as a result of intervening case law. The Court cannot find that such a change in its position exemplifies culpability.[FN7]

> FN7. In fact, in analyzing the relative merits of the parties, the defendants concede that both parties had legal authority to support their positions on appeal. *See* Docket Entry No. 110, at 7.

*7 The defendants also accuse the plaintiff of "intentionally and unnecessarily" increasing the fees and costs incurred by the defendants on the appeal and post-appeal proceedings. Docket Entry No. 110, at 3-5. Specifically, the defendants refer to the plaintiff's

objection to the August 27, 2004, R & R, filed a year and a half after the objections were time barred, to which the defendants were forced to respond, the fact that the plaintiff sought a rehearing and rehearing en banc before the Sixth Circuit, despite clear precedent from the United States Supreme Court supporting the original panel's decision,[FN8] and the fact that the plaintiff sought an extension of time to make its supplemental filings under the guise that the plaintiff wanted more time to explore settlement, when no overture about settlement was ever made to the defendants. Docket Entry No. 110, at 3-4.

> FN8. It does not appear that the defendants incurred anything but minimal attorney's fees related to the petition for rehearing en banc. The defendants' billing statement reflects only a .40 hour review of the petition and no filings made by the defendants related to the petition. *See* Docket Entry No. 101-2, at 9. The docket sheet for the Court of Appeals confirms that the defendants made no filings related to the plaintiff's petition for en banc hearing.

Although the Court agrees with the defendants that the plaintiff's objections to the August 27, 2004, R & R were time-barred, the Court cannot find that seeking a rehearing or seeking an extension of time [FN9] is tantamount to bad faith or culpability.

> FN9. It may be that plaintiff's counsel wanted additional time to explore the possibility of settlement with the plaintiff and that such attempts by plaintiff's counsel were unsuccessful. The record is simply devoid of any explanation for plaintiff's basis for seeking an extension of time, but the Court is not willing to attach a mendacious motivation to plaintiff's counsel.

Thus, the Court cannot find that the plaintiff acted in bad faith, with culpability, or even with indifferent disregard in defending the appeal in this case.

### 2. Ability to Satisfy Award

As the Court found in the August 27, 2004, R & R, it is undisputed that the plaintiff is clearly more capable of satisfying an award of attorneys fees.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.