### 3. Deterrence

The defendants argue that an award of fees will serve as a deterrent to other ERISA plans or entities acting on their behalves against bringing meritless litigation, asserting jurisdiction and then "flip flopping" when it serves their interests, and from needlessly increasing litigation costs. The Court has already addressed the defendants' claims of "flip flopping" and "needlessly" increasing the costs of litigation. The deterrent effect of initially bringing this lawsuit was addressed in the original R & R and is not at issue in considering the appeal. In a broader sense, however, the plaintiff and all other ERISA health and welfare plans may be, in effect, deterred from bringing reimbursement actions against plan participants. However, that deterrence is largely as a result of the Sixth Circuit and United States Supreme Court decisions, in which the defendants had no role. The only possible deterrent effect that the defendants accomplished is that, if an ERISA health and welfare fund seeks reimbursement from a plan participant, attorneys fees could be imposed against the Plan for filing such an action that fails to state a claim. [FN10]

> FN10. However, in *Sereboff v. Mid-Atlantic Med. Servs., Inc.*, ---U.S. ----, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), the Supreme Court categorized as seeking equitable relief the ERISA fiduciary's claim for reimbursement of medical expenses when the plan beneficiaries had preserved specifically identifiable funds from the settlement in an investment account. Thus the ruling on appeal in this case may not preclude all future reimbursement claims by plan fiduciaries.

### 4. Common Benefit/Significant Legal Questions

The fourth *King* factor is whether the party requesting fees sought to confer a common benefit on all plan participants and beneficiaries *or* sought to resolve significant legal questions regarding ERISA. Although the defendants did not *seek* to confer a benefit on other plan participants or beneficiaries by prosecuting the appeal in this case, the effect of the appeal did accomplish that result. The end result of defendants' appeal was the resolution of a significant legal issue. The Court of Appeals decision in this case is significant in that it overruled its prior ruling in

*QualChoice,* in which the Court found that there was no subject matter jurisdiction over reimbursement claims. However, neither the lawsuit nor the appeal was instituted for the purpose of resolving any significant legal issue. On appeal, the ultimate relief the defendants sought was an award of attorney's fees. *See Moon v. Unum Provident,* 461 F.3d 639, 645 (6th Cir.2006).

### 5. Relative Merits

*8 Although the defendants argue that the relative merits of the parties' positions favors the defendants since they prevailed on appeal, the defendants concede that this factor is "probably less signficant" than the other *King* factors because both sides had legal authority to support their positions on appeal. Docket Entry No. 110, at 7. The plaintiff prevailed in this Court, the defendants appealed, the plaintiff defended the appeal, and the defendants ultimately prevailed on appeal. Under these circumstances, the Court cannot find that the factor of the relative merits of the appeal weighs in favor of the defendants.

### V. CONCLUSION

Having considered all of the *King* factors in regard to the appeal, the Court cannot find that, except for the plaintiff's clearly greater ability to satisfy the award, they weigh in favor of the defendants. The defendants argue that denial of their attorneys fees, including those fees associated with the appeal, would be "unjust and would ignore the remedial purpose of ERISA...." Docket Entry No. 100, at 5. The Court agrees with the defendants that the appeal was absolutely necessary to vindicate their rights. However, the Court of Appeals for the Sixth Circuit has clearly held that the section 502(g) of ERISA is not a fee-shifting or prevailing party rule, and should be applied after analysis of appropriate factors, whether or not the *King* factors are the exclusive considerations. Were the standard otherwise, the Court would hold otherwise. However, the Court is constrained by the clear rulings of this Circuit to find that the defendants are not entitled to an award of attorney's fees for the work performed on appeal. On the other hand, the Court finds that the defendants are entitled to an award of attorney's fees for the work incurred prior to the entry of the August 27, 2004, R & R, in preparing and supporting the first motion for attorney's fees and expenses that were not considered

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 865830 (M.D.Tenn.)
(Cite as: 2007 WL 865830 (M.D.Tenn.))

by the Court in the August 27, 2004, R & R.

Specifically, the defendants have listed $13,376.25, in attorneys' fees for the time period December 23, 2003, through April 8, 2004, related to their first application for attorneys fees and expenses.[FN11] Docket Entry No. 101-2, at 3-4. Deducting $3500.00 from that amount that was already considered in the August 27, 2004, R & R, the defendants incurred $9,876.25 that was not addressed in the previous R & R.

> FN11. The defendants do not specify when expenses were incurred so it is not possible to determine whether any of the listed expenses were incurred during the period of time from December 23, 2003, through April 8, 2004.

For the same reasons addressed in the August 27, 2004, R & R, the defendants should be awarded an additional $9876.25.

## VI. RECOMMENDATION

Based on the reasons provided above, the Court recommends that:

1. The Report and Recommendation entered August 27, 2004 (Docket Entry No. 80) be reconsidered in light of the remand by the Court of Appeals and adopted, and that the defendants be awarded $67,255.46 in fees and expenses as recommended in that Report and Recommendation;

2. The defendants' supplemental application for attorneys fees (Docket Entry No. 99) be GRANTED in part and DENIED in part; and

*9 3. The defendants be awarded an additional $9876.25 in fees against the plaintiff.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice, and must state with particularity the specific portions of this Report & Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's order. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).[FN12]

> FN12. Citing *Massey v. City of Ferndale,* 7 F.3d 506, 508 (6th Cir.1993), the plaintiff categorizes a motion for attorney fees and costs as a non-case dispositive matter. However, the page to which the plaintiff referred recites the opinion of the District Court, which the Court of Appeals rejected. In fact, in *Massey,* the Court of Appeals held that motions for sanctions, fees and costs are dispositive, rather than non-dispositive. In addition, the motion in the instant case, as in *Massey,* was a post-judgment matter, rather than a pretrial matter and thus the standard of review is not "clearly erroneous" as it would be for a pretrial matter pursuant to 28 U.S.C. § 636(b)(1)(A). Instead, the review by the District Judge of a Report and Recommendation is de novo pursuant to 28 U.S.C. § 636(b)(1)(B).

M.D.Tenn.,2007.
Primax Recoveries, Inc. v. Gunter
Slip Copy, 2007 WL 865830 (M.D.Tenn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 4



Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 23413738 (E.D.Tenn.), 32 Employee Benefits Cas. 1644
(Cite as: Not Reported in F.Supp.2d, 2003 WL 23413738 (E.D.Tenn.))

Shaw Industries, Inc. v. Hyde
E.D.Tenn.,2003.

United States District Court,E.D. Tennessee, Southern
Division.
SHAW INDUSTRIES, INC., Plaintiff,
v.
Robert T. HYDE; Morgan G. Adams; and Unknown
Bank ABC, Defendants.
No. 1:03-CV-409.

Filed Dec. 8, 2003.
Dec. 12, 2003.

Alisa W Ellenburg, Dennis, Corry, Porter & Smith,
LLP, Atlanta, GA, for Shaw Industries, Inc, plaintiff.
Morgan G Adams, Law Offices of Morgan G. Adams,
Chattanooga, TN, Eric L Buchanan, Eric Buchanan &
Associates, PLLC, Chattanooga, TN, for Robert T
Hyde, defendant.
Morgan G Adams, Law Offices of Morgan G. Adams,
Chattanooga, TN, Eric L Buchanan, (See above),
defendant, pro se.

*MEMORANDUM*

EDGAR, Chief J.
*1 This case came before the Court on December 12,
2003, for a hearing on the plaintiff's motion for
preliminary injunction under FED. R. CIV. P. 65.
After reviewing the record and hearing oral argument
from counsel, the Court concludes that the motion for
preliminary injunction [Court File No. 2] will be
GRANTED IN PART.

A preliminary injunction will enter enjoining
defendant Robert T. Hyde ("Hyde") from disbursing
or using that portion of the settlement proceeds
currently in Hyde's possession in his checking account
until the Court can finally adjudicate the plaintiff's
claim for equitable relief under the Employee
Retirement Income Security Act ("ERISA") and
federal common law. Hyde will be ordered to deposit
said funds into an interest-bearing, separate savings
account or money market account at a federally
insured bank or savings and loan institution of his
choice located in Hamilton County, Tennessee. Hyde

will further be required to keep, maintain, and
preserve said funds in the separate account subject to
the further orders of this Court.

I. Facts

On or about August 5, 2002, defendant Hyde was
involved in a motor vehicle accident and he suffered
injuries. Hyde filed a tort action in the Circuit Court
for Hamilton County, Tennessee, to recover monetary
damages styled *Robert T. Hyde v. Ricky V. Hardaway*,
Civil Action No. 03-C-0194. Hyde recently agreed to
settle the underlying tort case.

Hyde and his attorney, defendant Morgan G. Adams
("Adams"), received a settlement check in the amount
of $25,000. Adams has deducted his attorney's fees
and disbursed the remainder of the settlement
proceeds to Hyde. The precise amount of the
settlement proceeds received by Hyde has not been
revealed to the Court. Hyde has deposited his portion
of the settlement proceeds into a joint checking
account. Thus, the settlement proceeds flowing to
Hyde are clearly traceable to particular funds currently
in Hyde's possession in his checking account.

Plaintiff Shaw Industries, Inc. ("Shaw") maintains a
Welfare Benefit Plan for its employees pursuant to
ERISA. Pursuant to this ERISA Plan, Shaw has paid
$23,488.50 in medical benefits on behalf of Hyde for
the treatment of injuries arising out of the automobile
accident. Hyde is employed by Shaw. Under Shaw's
employee benefit plan, Shaw is entitled to be fully
reimbursed out of any settlement proceeds paid to
Hyde.

II. Standard of Review

In deciding the plaintiff's motion, the Court considers
four factors:

(1) whether the plaintiff has a strong likelihood of
success on the merits;

(2) whether the plaintiff will suffer irreparable injury
without the preliminary injunction;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(3) whether issuance of the preliminary injunction would cause substantial harm to other; and

(4) whether the public interest would be served by issuance of the preliminary injunction.

These are factors to be balanced, not prerequisites that must be met.*Jones v. City of Monroe, Michigan,* 341 F.3d 474, 476 (6th Cir.2003); *National Hockey League v. Plymouth Whalers Hockey,* 325 F.3d 712, 717 (6th Cir.2003); *In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985).

III. Analysis

**\*2** The Court concludes that all four of the factors weigh in favor of granting the plaintiff's motion for preliminary injunction. Plaintiff has met its burden of showing a strong likelihood of success on the merits. *Great-West Life & Annuity v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), does not preclude plaintiff Shaw from bringing this claim in equity to obtain the equitable remedy of restitution available under ERISA, 29 U.S.C. § 1132(a)(3). The settlement proceeds in question can be clearly traced to particular funds in Hyde's possession in his checking account. As the Supreme Court explains in *Great-West Life,* 534 U.S. at 213-14, a plaintiff may bring a claim in equity seeking restitution in the form of a constructive trust or equitable lien, where the money or property identified as belonging in good conscience to the plaintiff can be clearly traced to particular funds or property in the defendant's possession. For restitution to lie in equity, the action generally must seek to restore to the plaintiff particular funds or property in the defendant's possession.

Hyde argues that he must be allowed to keep the settlement proceeds and defeat plaintiff Shaw's right to restitution and subrogation on the theory that he has not been "made whole" by the settlement. This argument fails. The make-whole doctrine is an equitable insurance doctrine that establishes a ranking of priority between the ERISA Plan and beneficiary. Under this doctrine, the beneficiary keeps everything recoverable from third-parties until he is made whole. *Copeland Oaks v. Haupt,* 209 F.3d 811, 813 (6th Cir.2000); *Sealy, Inc. v. Nationwide Mut. Ins. Co.* 286 F.Supp.2d 625, 2003 WL 22328851, \*7 (M.D.N.C. Sept.29, 2003). The make-whole doctrine has been incorporated into federal common law.

The make-whole doctrine does not override the ERISA Plan in the instant case because the Plan's terms here are clear and unambiguous. *In re Paris v. Iron Workers Trust Fund,* 2000 WL 384036 (4th Cir. April 17, 2000); *Sealy,* 2003 WL 22328851, at \*7. According to plaintiff Shaw, the ERISA Plan applicable to this case provides that the right to reimbursement and subrogation exists "regardless whether the individual has been made whole."The Plan expressly provides that any recovery by Hyde "shall be applied first to reimburse the Plan; only when the Plan has been fully reimbursed shall the individual collect the portion of the recovery that exceeds the payments made or to be made by the Plan to the individual."In the face of this unambiguous language in the ERISA Plan, Hyde cannot utilize the make-whole doctrine to avoid making restitution to plaintiff Shaw.

The Court finds that the plaintiff will suffer irreparable injury without a preliminary injunction. Issuance of a preliminary injunction to maintain the status quo will not cause substantial harm to Hyde or others. The public interest will be served by the preliminary injunction because it will help to preserve and protect the rights of the ERISA Plan that provides benefits to numerous Shaw employees.

**\*3** Accordingly, the Court will issue a preliminary injunction.

*PRELIMINARY INJUNCTION*

In accordance with the accompanying memorandum opinion filed herewith, the plaintiff's motion for preliminary injunction [Court File No. 2] is GRANTED IN PART as follows.

Defendant Robert T. Hyde is hereby ENJOINED from disbursing, spending, using, and/or dissipating any of the settlement proceeds and monies currently in his possession in his checking account which are derived from the settlement in the suit styled *Robert T. Hyde v. Ricky V.. Hardaway,* Circuit Court of Hamilton County, Tennessee, Civil Action No. 03-C-1294, up to the maximum limit of $23,488.50. Robert T. Hyde SHALL IMMEDIATELY withdraw and remove said settlement proceeds from his joint checking account and deposit said funds into a new, separate interest-bearing savings account or money market

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2003 WL 23413738 (E.D.Tenn.), 32 Employee Benefits Cas. 1644
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 23413738 (E.D.Tenn.))**

account solely in his name at a federally insured bank of his choice located in Hamilton County, Tennessee. Furthermore, Robert T. Hyde SHALL KEEP, MAINTAIN, AND PRESERVE said settlement proceeds and funds in the separate bank account subject to the further orders of the Court. Robert T. Hyde SHALL NOT withdraw, transfer, or disburse said settlement proceeds and funds without the prior written permission of this Court. On or before December 19, 2003, Robert T. Hyde SHALL FILE with the Clerk of this Court his sworn affidavit showing that he has fully complied with this preliminary injunction and submit copies of the bank records demonstrating that he has opened the new, separate bank account and deposited said settlement proceeds and funds therein.

SO ORDERED.

E.D.Tenn.,2003.
Shaw Industries, Inc. v. Hyde
Not Reported in F.Supp.2d, 2003 WL 23413738 (E.D.Tenn.), 32 Employee Benefits Cas. 1644

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 5



Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 737008 (E.D.La.)
(Cite as: Not Reported in F.Supp., 1996 WL 737008 (E.D.La.))

Citizens Savings Bank v. GLI Technical Services, Inc.
E.D.La.,1996.
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.
CITIZENS SAVINGS BANK
v.
GLI TECHNICAL SERVICES, INC., et al
No. Civ.A. 96-2307.

Dec. 23, 1996.

*ORDER AND REASONS*

FALLON, District Judge.
*1 Before the Court is the defendants', GLI Technical Services, Inc. and Susan Gonzales, motion to vacate or dismiss the preliminary injunction issued July 18, 1996. For the following reasons, the defendants' motion to vacate or dismiss the preliminary injunction is denied.

*BACKGROUND*

The plaintiff in this action, Citizens Savings Bank, entered into a Commercial Revolving Loan Agreement on August 3, 1994 with the defendants, GLI and its officers, Susan Gonzales and Gary Ingraham. The agreement was essentially a revolving promissory note which allowed for money to be advanced to the defendants by the plaintiff secured by GLI's eligible accounts receivable as defined by the loan agreement. The loan agreement contained a clause for repayment wherein the amount outstanding on the loan would be directly tied to a certain percentage of the available accounts receivable.

Between May 7, 1996 and June 11, 1996, the balance on GLI's accounts receivable dropped from $1,304,196 to $438,903 without there being a corresponding decline in the amount owed to the plaintiff. The cause of this sudden diminishment in GLI's accounts receivable without payment is now the subject of this litigation. On July 10, 1996, after defendant GLI's bankruptcy action was dismissed, the plaintiff initiated this action in an attempt to recover what money they could on the loan agreement. On that

date, this Court issued a temporary restraining order to maintain the status quo as to those assets which remained in GLI's possession which the plaintiff held a perfected security interest, namely, GLI's accounts receivable.

On July 18, 1996, the plaintiff requested a preliminary injunction pending a trial of this matter so that the defendants would be restrained from taking any action which would further diminish any assets in which it maintains a valid and perfected security interest. At the preliminary injunction hearing, the Court heard evidence concerning the repeated attempts by the plaintiff to give the defendants notice of the July 18th hearing. *See* Plaintiff's Exhibit 2 (transcript of the preliminary injunction hearing). This evidence of notice was underscored by the fact that the parties to this matter had recently been involved in other legal proceedings prior to July 10, 1996: namely the GLI bankruptcy matter. *See* Plaintiff's Exhibit 3. The Court was satisfied that the notice requirements of Fed. R. Civ. P. 65(a) had been met and a hearing was held.

After reviewing the evidence, the record, and the applicable law, the Court found that the requirements for a preliminary injunction had been met and, thus, the Court granted the plaintiff's motion for a preliminary injunction. Subsequently, the plaintiff sought expedited discovery of this matter and a writ of sequestration. The writ of sequestration was denied, however, expedited discovery was allowed. Additionally, the defendants filed a motion to vacate the preliminary injunction which was also denied.

*2 In the instant motion, the defendants, GLI and Ms. Gonzales, seek to have the injunction vacated or otherwise dissolved. They assert that the notice requirements of Rule 65(a) and Rule 6(d) were not met in this case, therefore, the preliminary injunction infringes on their due process rights. Additionally, the defendants contend that Citizens, regardless of the notice problem, did not meet the four requirements for the issuance of a preliminary injunction. Finally, they argue that the injunction is preventing them from putting on an adequate defense in this matter which is a further violation of their due process rights while also creating a greater hardship on the defendants as opposed to the plaintiff. The plaintiff opposes the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 737008 (E.D.La.)
(Cite as: Not Reported in F.Supp., 1996 WL 737008 (E.D.La.))

Page 2

defendants' motion contending that the notice requirement of Rule 65(a) was met in this case and that the preliminary injunction was properly issued.

*ANALYSIS*

*1. The Notice Issue*

Initially, the defendants attack the preliminary injunction on the grounds that they did not receive adequate notice prior to the hearing held on July 18, 1996. Ms. Gonzales has indicated, via affidavit and oral testimony, that she first received notice of the July 18 hearing on the night of July 17 and, therefore, had less than 24 hours notice of the hearing. However, the Court heard evidence at the July 18 hearing that the plaintiff made numerous attempts at service beginning on July 11 and continuing to July 17, 1996. These attempts included service by mail, fax, and personal delivery.

Any due process and/or notice test must deal with the totality of the circumstances surrounding each incident. Therefore, the plaintiff's attempts at service must also be viewed in light of the prior dealings between the parties. On June 18, 1996, the defendants filed for bankruptcy in the Eastern District of Louisiana. Citizens, a creditor of GLI, became significantly involved in that litigation and moved to have the bankruptcy dismissed on July 10, 1996. The defendants were well aware of Citizens claims against them and the parties had numerous contacts prior to July 10, 1996. Moreover, the plaintiff made clear to the defendants its intention to proceed with legal action at the conclusion of the bankruptcy if a settlement was not reached between the parties. *See* Plaintiff's Exhibit 3. The legal steps taken by Citizens on July 10, 1996 and July 18, 1996 were foreseeable. The Court found it hard to believe that defendant Gonzales left her home and business from July 10 to 17 and had absolutely no contact with her business or otherwise ignored this serious legal situation.

The defendants rely on the requirements of Federal Rule 6(d) which requires five days notice before a hearing on a motion and which does apply to Rule 65(a)(1).*See Parker v. Ran*, 960 F.2d 543, 544 (5th Cir. 1992). Ms. Gonzales states that she received notice of the July 18 hearing less than one business day in advance and, thus argues that the preliminary injunction hearing was both procedurally and

constitutionally deficient.

*3 However, the five day notice requirement does not apply strictly to Rule 65(a)(1) in two important circumstances: 1) when no facts are in dispute and 2) when a party has actual notice. *Id. at 545.*In this instance, the Court heard evidence and found that the defendants had actual notice of this hearing within five days of the hearing or, in the alternative, actually avoided the receipt of any formal notice. In such a case, Rule 65(a)(1) simply requires sufficient notice to apprise the defendant of the hearing and provide them adequate time to prepare a defense. *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978); *People of State of Illinois v. Peters*, 871 F.2d 1336, 1340 (7th Cir. 1989). The sufficiency of notice is left to the discretion of the trial court. *Corrigan*, 569 F.2d at 302. Additionally, courts have found that one to three days notice of a preliminary injunction is adequate time to prepare a defense. *United States v. State of Alabama*, 791 F.2d 1450, 1458 (11 Cir.), *reh'g denied,*796 F.2d 1478 (11th Cir. 1986), *cert. denied,*479 U.S. 1085 (1987).

In this case the defendants, by their own admission, had notice of the hearing one day in advance. However, this Court heard and accepted evidence which showed repeated attempts to provide the defendants with notice up to seven days in advance. On July 18, 1996, the Court was convinced- in view of the totality of the facts including the prior dealings between the parties- that the defendants did have actual notice in sufficient time to prepare a defense but had simply refused to either accept notice or were attempting to avoid notice. Additionally, there were no genuine issues of material fact in dispute at the time of the hearing.[FN1]

> FN1. Counsel for the defendants admitted at the December 18, 1996 hearing on this motion that their defense to the preliminary injunction on that day would have been the same on July 18, 1996.

The Court finds that the notice requirements of Rule 65(a)(1) were met in this case and will not vacate the preliminary injunction. In addition, while not stated by the Court at the July 18, 1996 hearing, the Court intended to exercise its right to waive the five day requirement under Rule 6(d) in light of the exigent circumstances and the defendants apparent attempts to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                 Page 3
Not Reported in F.Supp., 1996 WL 737008 (E.D.La.)
(Cite as: Not Reported in F.Supp., 1996 WL 737008 (E.D.La.))

avoid service. *See Parker, 960 F.2d at 546.* Moreover, the Court believes the defendants argument that they did not receive proper notice of the July 18, 1996 hearing has been rendered moot by the hearing held on December 18, 1996 where the defendants attacked the merits of the preliminary injunction.

*2. The Injunction on the merits*

The defendants also attack the preliminary injunction on the merits arguing that the plaintiff has not met the four requirements for the granting of a *Fed. R. Civ. P. 65* preliminary injunction.

A preliminary injunction is an extraordinary remedy which is only issued when a party does not have an adequate remedy at law. A preliminary injunction may be issued by this Court under *Fed. R. Civ. P. 65,* if the plaintiff establishes four criteria:

1) irreparable injury

2) substantial likelihood of success on the merits

*4 3) a favorable balance of hardships (equity)

4) no adverse effect on the public interest

*see Black Fire Fighters Ass'n v. Dallas, 905 F.2d 63, 65 (5th Cir. 1990).* In the instant matter, the Court previously found on July 18, 1996 that the plaintiff had carried its burden as to all four factors. On December 18, 1996, a hearing was held where the Court again considered the merits of the preliminary injunction.

Normally, where a party may be compensated by money damages at judgment courts have not found irreparable harm. However, extraordinary circumstances may give rise to the irreparable harm required for the issuance of a preliminary injunction when money damages are involved. *Hughes Network Systems, Inc. v. Interdigital Com. Corp., 17 F.3d 691, 694 (4th Cir. 1994).* Such extraordinary circumstances exist where a corporation is insolvent and its fund in danger of depletion such that a failure to maintain the status quo would make any damages remedy moot. *Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 52-3 (1st Cir. 1986); See also United States, ex rel. Taxpayers Against Fraud v. Singer Co., 889 F.2d 1327 (4th Cir.*

1989).

The circumstances of this case do fit into the above exception to the money damages rule. The Court found on July 18- and that finding is still valid- that in order to protect the plaintiff's damages remedy from depletion it was necessary to issue the preliminary injunction. *See Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co., 621 F.2d 683, 686 (5th Cir. 1980).* Additionally, the Court does not believe that the remedies at law available to the plaintiffs are adequate to protect the damages remedy in this instance. The irreparable harm requirement is met in this case.

The balance of hardships presents a more difficult call for the Court. The defendants contend that the inability to use these funds has prevented them from putting on an adequate defense. To highlight this they point to the fraud allegations contained in the complaint which boarder on criminal charges. The plaintiff asserts that the defendants have clearly not been prevented from putting on a defense and that it appears they will already be unable to collect on the full amount of their loan.

The Court carefully considered this issue and finds that the hardship placed upon the defendants- being prevented from using money in which the plaintiff's have a perfected security interest in- does not outweigh the hardship upon the plaintiff. It already appears to the Court that the plaintiff will not collect all of the monies due it regardless of the preliminary injunction. Without the injunction, the money at issue will almost certainly be depleted further until the plaintiff's lawsuit is moot. On the other hand, the defendants in this case have put on a more than adequate defense and the Court finds that they have not suffered a hardship.

With regard to the remaining prongs, the Court finds that there is a substantial likelihood that the plaintiff will prevail on the merits and the issuance of this preliminary injunction is not adverse to the public interest.

*CONCLUSION*

*5 For the foregoing reasons, the defendants' motion to vacate or dismiss the preliminary injunction issued on July 18, 1996 is DENIED.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4
Not Reported in F.Supp., 1996 WL 737008 (E.D.La.)
**(Cite as: Not Reported in F.Supp., 1996 WL 737008 (E.D.La.))**


E.D.La.,1996.
Citizens Savings Bank v. GLI Technical Services, Inc.
Not Reported in F.Supp., 1996 WL 737008 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 6



Slip Copy
Slip Copy, 2007 WL 2900230 (E.D.La.)
(Cite as: 2007 WL 2900230 (E.D.La.))

Page 1

**C**Rudney v. International Offshore Services, L.L.C.
E.D.La.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. Louisiana.
Jonathan RUDNEY
v.
INTERNATIONAL OFFSHORE SERVICES, L.L.C.,
et al.
Civil Action No. 07-3908.

Oct. 1, 2007.

Donald Richard Abaunza, Joseph Charles Giglio, Jr., Kelly Titus Scalise, Renee Zeringue Berard, Liskow & Lewis, New Orleans, LA, for Jonathan Rudney.

### ORDER AND REASONS

LANCE M. AFRICK, United States District Judge.
*1 Before the Court is plaintiff's motion requesting that this Court issue a temporary restraining order ("TRO") or preliminary injunction restraining and enjoining defendants, International Offshore Services, L.L.C., ("IOS"), Stephen J. Williams ("Williams"), Kelly B. Steele, Sr., ("Steele"), WMW, L.L.C., ("WMW"), and Stephen M. Valdes ("Valdes"), from making any disproportionate distributions, taking out loans to fund disproportionate distributions, terminating plaintiff as a member of IOS, and valuing plaintiff's interest in IOS.[FN1]For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART.**

> FN1. R. Doc. No. 4, TRO Mot.; R. Doc. No. 24-3, Reply Mem. Supp. TRO Compl.

### BACKGROUND

IOS is a limited liability company ("LLC") formed pursuant to the laws of the State of Louisiana.[FN2]Defendant, Williams, is the majority member and sole manager of IOS, owning over fifty percent of the company.[FN3]Plaintiff holds a ten-percent interest in IOS.[FN4]

> FN2. R. Doc. No. 23-2, Defs.' Reply Mem. Opp. TRO Mot., Ex. A, Operating

Agreement of IOS, p. 1, pmbl.

> FN3. R. Doc. No. 1-2, Pl.'s Compl., Ex. 1B, Act of Capital Contribution, pp. 1, 37. Specifically, Williams has a 60.97% interest in IOS, WMW has a 20.01% interest, Valdes has a 4.5% interest, and Steele has a 4.52% interest. *Id.* at p. 3.

> FN4.*Id.*

The constituent members of IOS are governed by an operating agreement ("Agreement").[FN5] The Agreement provides that IOS may make appropriate distributions to each member in accordance with his percentage interest.[FN6] It also states that it is within the power and authority of the managers of IOS to incur indebtedness on behalf of the company if it is deemed necessary for the conduct of the company's activities.[FN7]If a member chooses to withdraw from IOS, the Agreement has a provision designed to compensate the withdrawing attorney, as well as procedures governing the same.[FN8] The Agreement may only be amended by the collective approval of members owning more than fifty percent of IOS.[FN9]

> FN5. R. Doc. No. 23-2, Defs.' Ex. A, Agreement, p. 1, pmbl.

> FN6.*Id.* at p. 13, art. VI(L). Specifically, the Agreement provides:

>> The Company may make distributions to the Members as the Company determines to be appropriate and in the best interest of the Company and the Members.... All distributions shall be made to each Member in accordance with his/her/its percentage interest in the Company.

>> *Id.*

> FN7.*Id.* at p. 14, art. V(A). Specifically, it states:

>> The following, without limitation, is included within the power and authority of

the Manager(s): ... To incur indebtedness on behalf of the Company and to commit the credit of the Company to any third party and to make expenditures and to incur such obligations deemed necessary for the conduct of the activities of the Company, including, without limitation, to borrow funds (on a recourse or nonrecourse basis) on behalf of the Company.

*Id.*

FN8.*Id.* at p. 23, art. VIII. In pertinent part, that article provides:

No member shall have the right to withdraw from IOS except as otherwise provided herein or except with the written consent of the other Members collectively owning more than fifty (50%) percent of the interest of Members not desiring to withdraw, which consent may be withheld without cause and for any reason deemed sufficient by them.

If any Member should properly withdraw from this Company, said Member shall be entitled ... to be paid in cash the fair market value of the Member's interest as of the date of Withdrawal.

*Id.*

FN9.*Id.* at p. 16, art. V(D).

On May 29, 2007, a Members Letter Agreement was signed by all IOS members except the plaintiff.[FN10] The letter's stated purpose was to acquire the consent of the members to obtain a loan in the amount of $50,000,000.00 and to fund "disproportionate distributions made payable to [Williams] in an amount up to the full value of the loan."[FN11]

FN10. R. Doc. No. 1-2, Pl.'s Compl., Ex. 2, Members Letter Agreement.

FN11.*Id.*

On June 20, 2007, the members of IOS held a meeting at which they voted to add additional language to the Agreement.[FN12] Such language addresses the issue of terminating a member's interest, with or without cause, and the valuation to be used in the event of such termination.[FN13] This amendment to the Agreement ("Amendment") was passed, with Williams, WMW, Steele, and Valdes all voting for it and plaintiff voting against it.[FN14]

FN12. R. Doc. No. 23-3, Defs.' Mem. Opp. TRO Mot., Ex. 3, Minutes of the June 20, 2007, Meeting.

FN13.*Id.;* R. Doc. No. 1-2, Pl.'s Ex. 3, Amendment to Operating Agreement. The Amendment to the Agreement ("Amendment") provides, in pertinent part:

A member may be terminated with or without cause, by a vote of the member(s) owning collectively more than seventy-five (75%) percent of the interest in the Company.... The valuation method used to determine the amount to be paid to a member that has been terminated shall be the terminated member's pro-rata share of the net book value of the company according to the figures reflected on the financial statement of IOS at the month's end that occurred immediately prior to the termination of a member.

R. Doc. No. 1-2, Pl.'s Ex. 3, Amendment.

FN14. R. Doc. No. 23-3, Defs.' Ex. 3, Minutes of the June 20, 2007, Meeting.

On July 19, 2007, a notice was sent to all IOS members concerning a special meeting to be held on August 3, 2007, called for the purpose of terminating plaintiff as a member of IOS and paying him book value for his interest.[FN15] Before the meeting could be held, on July 21, 2007, plaintiff filed a complaint in this Court, as well as a motion for a TRO and a preliminary injunction.[FN16] On August 3, 2007, all parties to this lawsuit entered into a consent order that provided that the parties would not terminate plaintiff within sixty days of that date.[FN17] It further provided that the parties would proceed to arbitration.[FN18]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN15. R. Doc. No. 1-2, Pl.'s Compl., Ex. 4, Notice of Special-Called Business Meeting of IOS.

FN16. R. Doc. No. 1, Pl.'s Compl.; Red. Doc. No. 4, Pl.'s TRO Mot.

FN17. R. Doc. No. 14, Consent Order.

FN18. *Id.*

*2 On September 17, 2007, plaintiff filed a motion to extend the provisions of the consent order pending the resolution of the arbitration.[FN19] Because the parties could not agree to extend the consent order, the motion was denied.[FN20] Plaintiff reinstates his request that this Court issue a TRO or preliminary injunction to maintain the status quo during the pendency of the arbitration proceedings.[FN21]

FN19. R. Doc. No. 19, Pl.'s Mot. Extension of Provisions of Consent Order.

FN20. R. Doc. No. 20.

FN21. R. Doc. Nos. 4, 23, 24-3.

### *LAW AND ANALYSIS*

### I. Standards of Law

#### *A. TRO and Preliminary Injunction Standard*

In a situation where notice and an opportunity to present evidence have occurred, a court follows the same procedure for a TRO as it would for a preliminary injunction. *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir.1976); *Kan. Hosp. Ass'n v. Whiteman*, 835 F.Supp. 1548, 1551 (D.Kan.1993) (citing 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (1973)). In order to obtain a preliminary injunction, the movant must show: (1) there is a substantial likelihood of success on the merits, (2) there is a substantial threat of irreparable injury, [FN22] (3) the threatened injury to the movant outweighs the injury to the nonmovant, and (4) that granting the injunction will not disserve the public interest. *PCI Transp., Inc. v. Fort Worth &*

*W. R.R.*, 418 F.3d 535, 545 (5th Cir.2005); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S., 423, 441, 94 S.Ct. 1113, 1125, 39 L.Ed.2d 435 (1974) ("[T]he party seeking the injunction ... bear[s] the burden of demonstrating the various factors justifying preliminary injunctive relief...").

FN22. Irreparable injury must be more than just substantial injury:

"The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) (quoting *Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C.Cir.1958)).

A "preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir.2003) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974)). Court's have wide discretion with respect to whether to grant preliminary injunctions. *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir.1987).

#### *B. Louisiana LLC Law*[FN23]

FN23. Louisiana has created several statutory sections directed toward LLCs, titled "Louisiana Limited Liability Company Law." *See* La.Rev.Stat. Ann. §§ 12:1301 to:1369 (1994 & Supp.1998).

The Agreement, upon which this lawsuit is based, is to be governed by and construed in accordance with Louisiana law.[FN24] Louisiana's LLC law "specifies that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 4
Slip Copy, 2007 WL 2900230 (E.D.La.)
(Cite as: 2007 WL 2900230 (E.D.La.))

the liability of members, managers, employees or agents of an LLC is determined solely and exclusively under the provisions of Louisiana LLC law."*In re Provenza,* 316 B.R. 225, 230 (Bankr.E.D.La.2003) (citing*La.Rev.Stat. Ann. § 12:1320(A) (1994 & Supp.1998)*). The members and managers owe fiduciary duties to the LLC and to the other members and managers.*La.Rev.Stat. Ann. § 12:1314(A)(1); Gill v. Gill,* 895 So.2d 807, 814 n. 3 (La.Ct.App.2005). In discharging these fiduciary duties, the member or manager "shall be fully protected in relying in good faith upon the records of the [LLC] and upon such information ... presented to the [LLC]" and shall not be liable "unless the member or manager acted in a grossly negligent manner."*La.Rev.Stat. Ann. § 12:1314(A)(2), (B); In re Provenza,* 316 B.R. at 230 ("In determining whether a member of a ... LLC has breached a fiduciary duty ..., the courts employ, at a minimum, a gross negligence standard and the business judgment rule."). Gross negligence is defined as "reckless disregard of or a carelessness amounting to indifference to the best interests of the [LLC] or the members thereof."*La.Rev.Stat. Ann. § 12:1314(C).*

> FN24. R. Doc. No. 23-2, Agreement, p. 32, art. XV(E).

*\*3* The Louisiana LLC law provides that distributions "shall be allocated among the members ... in the manner provided in a written operating agreement."*Id.* § 12:1324(A). Further, unless the operating agreement of a LLC provides differently, "[t]he incurrence of indebtedness by the [LLC] other than in the ordinary course of business" needs a vote of a majority of the LLC's members. *Id.* § 12:1318(B)(4). The provision for amending the operation agreement is the same. *Id.* § 12:1318(B)(6). Louisiana's LLC law does not specifically address terminations or expulsions of members. *See id.* §§ 1301-1369. *See also generally* Susan Kalinka, *Dissociation of a Member from a Louisiana Limited Liability Company: The Need for Reform,* 66 La. L.Rev. 365 (2006).

**II. Analysis**

*A. Substantial Likelihood of Success on the Merits*

*1. Loan to IOS*

The Agreement specifically provides that IOS management has the power to incur indebtedness on

behalf of the company. This provision of the Agreement is entirely consistent with Louisiana LLC law which allows an Agreement to define terms and procedures related to incurring debt. Plaintiff is not, therefore, likely to prevail with respect to his argument that IOS cannot take the desired loan.

The members of IOS are limited by an obligation to discharge fiduciary duties in good faith. Outside of alleging that the loan is taken for the purpose of giving Williams the ability to extract $50,000,000 from IOS, thereby depriving plaintiff of his interest, plaintiff has presented no evidence that taking the loan, itself, is a breach of such duty.[FN25]

> FN25. R. Doc. No. 24-3, Pl.'s Reply Mem. Supp. TRO Compl., p. 2. Even if this Court found that plaintiff would be substantially likely to prove a breach of fiduciary duty for taking the loan, there would be no irreparable harm, as this Court is enjoining defendants from making distributions, during the pendency of the arbitration, without placing ten percent of such distribution into an account. *See infra.*Therefore, plaintiff can collect postjudgment damages if he succeeds on the merits in arbitration.

*2. Disproportionate Distributions*[FN26]

> FN26. The Agreement does not define the term "distribution," nor does it indicate whether payments to capital accounts are distributions within the meaning of that term. R. Doc. No. 23-2, Defs.'s Reply Mem. Opp. TRO Mot., Ex. A, Agreement, p. 13, art. VI(L). With regard to capital accounts, the Agreement states that the "capital account of each Member shall be ... debited with the amount of all cash distributions made to such Member and the fair market value of property distributed to such Member."*Id.* at p. 4, art. VI(B). The capital account of each member consists of "the amount of cash such Member has contributed to the Company, plus ... the agreed fair market value of any property such Member has contributed to the Company."*Id.* Plaintiff's capital contribution, which was assigning and transferring an exclusivity agreement to IOS, was valued at a ten-percent membership interest. R. Doc. No.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1-2, Pl.'s Compl., Ex. 1B, Act of Capital Contribution. IOS must make distributions "to each Member in accordance with his/her/its percentage interest in the Company."*See id.* art. VI(L).

The Agreement does not provide for the disproportionate distribution of funds, but rather provides that funds shall be distributed proportionately among the members of IOS in accordance with his percentage interest. Louisiana LLC law provides that distributions shall be made in accordance with the Agreement. Accordingly, plaintiff does have a substantial likelihood of prevailing on the merits if IOS was to disproportionately distribute funds to a member in violation of the Agreement.

*3. Termination of Plaintiff*

Plaintiff argues that Louisiana's LLC law does not allow expulsions or terminations of members.[FN27]Although Louisiana LLC law does not dictate requirements for terminating a member, several operating agreements have been upheld by Louisiana courts despite having expulsion or termination clauses. *See, e.g., Mixon v. Iberia Surgical, L.L.C.,* 956 So.2d 76, 82 (La.Ct.App.2007); *Weinmann v. Duhon,* 818 So.2d 206 (La.Ct.App.2002). The Amendment to the Agreement was passed in accordance with the Agreement and Louisiana LLC law. There was previously no provision in the Agreement addressing termination or expulsion, and the Amendment filled the gap in the Agreement. As stated, IOS members are limited by their obligation to discharge their fiduciary duties in good faith. Plaintiff has not met his burden of demonstrating that he will be substantially likely to succeed on this breach claim.

> FN27. R. Doc. No. 4-2, Pl.'s Mem. Supp. TRO Compl., p. 5; R. Doc No. 24-3, Pl.'s Reply Mem. Supp. TRO Compl., pp. 5-7; *Id.*Ex. 1, Decl. Glen Morris. Although the declaration of Mr. Morris states that "the Louisiana LLC statute does not authorize the expulsion of a member from an LLC," the LLC statute is silent with respect to expelling a member. R. Doc. No. 24-3, Decl. Glen Morris; La.Rev.Stat. Ann. §§ 12:1301 to: 1369.

*4. Valuation of Plaintiff's Interest*

*4 The plaintiff has not satisfied his burden of demonstrating that IOS members breached their fiduciary duty to him by undervaluing his interest. Without a further showing by plaintiff, this Court is unable to conclude at this stage that plaintiff is substantially likely to prove that IOS members breached their duty.

*B. Irreparable Injury*

With respect to plaintiff's claim of disproportionate distributions, plaintiff can be compensated with damages if he is successful in the lawsuit. As a general rule, an injunction is not permissible to secure postjudgment legal relief in the form of damages. *Fed. Sav. & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 560 (5th Cir.1987); *see In re Amco Ins.,* 444 F.3d 690, 694 (5th Cir.2006) ("[A] preliminary injunction, issued prior to any judgment essentially to prevent fraudulent transfer of assets, was an improper use of equity powers."(*citing Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 332, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999))). However, proving that a claim for monetary damages would be difficult to collect, such as in the case of insolvency or potential distribution of assets, evinces circumstances that would support issuing an injunction. *See Fed. Sav. & Loan,* 835 F.2d at 560

The stated purpose of the $50,000,000 loan to IOS was for potential distribution, disproportionately, to Williams. If this loan and distribution were to occur, monetary damages could be difficult to collect from IOS, thereby leaving plaintiff unable to recover damages to which he may be entitled. Accordingly, in the event of a distribution, defendants must, pending the final decision in the arbitration, set aside ten percent of the distribution in an account to be agreed upon by the parties.

*C. Balancing Injury to the Parties*

The Agreement clearly provides that distributions will be made proportionately. If IOS intends to make such a proportionate distribution before the close of the pending arbitration, it is free to do so. This Court has not hampered the LLC's ability to carry on its normal business. It is not enjoined from taking out loans or otherwise managing its own affairs. This Court is

Slip Copy
Slip Copy, 2007 WL 2900230 (E.D.La.)
(Cite as: 2007 WL 2900230 (E.D.La.))

merely enjoining defendants from making a distribution its own Agreement prohibits. This Court does not find that distributing funds that would act as debits to capital accounts may not be deemed necessary pursuant to the good faith business judgment of IOS managers.

*D. Public Interest*

Defendants contend that ordering an injunction will change the management style of IOS, thereby harming the public interest.[FN28] Plaintiff argues that granting an injunction will preserve the status quo until arbitration has been finalized and that the public has an interest in the enforcement of contracts.[FN29] This Court agrees that a decision favoring pending arbitration and the ability of an aggrieved party to enforce a judgment is in the public interest. Only those IOS members receiving disproportionate distributions, not the public at large, are effected.

> FN28. R. Doc. No. 23, Defs.' Mem. Opp. TRO Mot., pp. 14-15.

> FN29. R. Doc. No. 24-3, Pl.'s Reply Mem. Supp. TRO Compl., p. 11; R. Doc. No. 4-2, Pl.'s Mem. Supp. Compl., p. 8.

*E. Posting of a Bond*

**\*5** Pursuant to Federal Rule of Civil Procedure 65(c), a court has the discretion to require a movant to post security for payment of damages to the enjoined party. *Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 628 (5th Cir.1996). The court "may elect to require no security at all."*Corrigan Dispatch Co. v. Casa Guzman, S.A.,* 569, F.2d 300, 302-03 (5th Cir.1978); *see Doctor's Assocs., Inc. v. Distajo,* 107 F.3d 126, 136 (2d Cir.1997) (holding that a bond was not required where there was no proof of likelihood of harm); *Coquina Oil Corp. v. Transwestern Pipeline Co .,* 825 F.2d 1461, 1462 (10th Cir.1987). In the event defendants prevail at arbitration, the distribution amount set aside in an interest-bearing account may be returned, without harm, to IOS. Therefore, no security is required to be posted.

Accordingly,

**IT IS ORDERED** that the motion is **GRANTED IN**

PART AND DENIED IN PART.It is **GRANTED** in that the defendants are **ENJOINED** from making any distribution unless ten percent of such distribution is placed into an account [FN30] during the pendency of the arbitration. In all other respects, the motion is **DENIED.**

> FN30. If the parties cannot agree on an account into which the percentage of a distribution shall be placed, either party may return to this Court for resolution.

E.D.La.,2007.
Rudney v. International Offshore Services, L.L.C.
Slip Copy, 2007 WL 2900230 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 7



Perrier Party Rentals, Inc. v. Event Rental, LLC
E.D.La.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. Louisiana.
PERRIER PARTY RENTALS, INC.
v.
EVENT RENTAL, LLC.
Civil Action No. 07-3244.

Aug. 7, 2007.

W. Christopher Beary, Aaron Z. Ahlquist, R. Ray
Orrill, Jr., Orrill, Cordell & Beary, LLC, New Orleans,
LA, for Perrier Party Rentals, Inc.
Philip Anthony Franco, Ashley E. Mule, Adams &
Reese, New Orleans, LA, Melissa S. Labauve, Adams
& Reese, Houston, TX, for Event Rental, LLC.

### ORDERS AND REASONS

G. THOMAS PORTEOUS, JR., United States District
Judge.
*1 Before the Court is a Motion for Preliminary
Injunction, filed pursuant to Rule 65 of the Federal
Rules of Civil Procedure and 15 U .S.C. § 1116 on
behalf of the Plaintiff, Perrier Party Rentals, Inc.
("Perrier"). This matter was submitted for the Court's
consideration without oral argument on August 1,
2007. The Court, having considered the arguments of
the parties, the Court record, the law and applicable
jurisprudence, is fully advised in the premises and
ready to rule.

### I. BACKGROUND

The parties to this action, Perrier and Event Rental,
LLC ("Event Rental") are two event and party rental
companies in the greater New Orleans area. Both
companies operate websites designed to provide
customers with information regarding the available
services and reservations. Beginning in July 2000,
Perrier registered and operated a website with the
domain name www.perrierpartyrentals.com, which is
registered through Network Solutions, LLC, and is
valid through 2010. The home website operated by
Event Rental has the domain name
www.neworleansevent.com. However, in August

2006, Event Rental also registered the domain name
www.perrierpartyrental.com, which is extremely
close to Perrier's protected name, only one letter
removed.

Perrier claims that as a result of Event Rental's
registration of the similar name, Perrier has lost, and
continues to lose, customers and business. As such,
they have filed this Motion for Injunctive Relief with
the Court. Perrier requests that this Court enjoin the
defendant from continuing to use the domain name
www.perrierpartyrental.com, or from taking any other
action which could infringe on the protected name and
rights of Perrier. Perrier also requests that this Court
award it attorneys fees for the successful enjoining of
Event Rental.

The defendant, without admitting liability, has agreed
to immediately discontinue and refrain from using the
domain name www.perrierpartyrental.com.
Consequently, the parties have agreed to the terms of
the Preliminary Injunction Order with respect to all
issues except for the amount of security.

### II. LAW AND ANALYSIS

FRCP 65(c) states, in pertinent part:

No restraining order or preliminary injunction shall
issue except upon the giving of security by the
applicant, in such sum as the court deems proper, **for
the payment of such costs and damages as may be
incurred or suffered by any party who is found to
have been wrongfully enjoined or
restrained.**(emphasis added.)

The Fifth Circuit addressed the issue of security in
*Kaepa, Inc. v. Achilles Corporation,* 76 F.3d 624 (5th
Cir.1996), where it stated:

In holding that the amount of security required
pursuant to Rule 65(c)'is a matter of discretion of the
trial court,' we have ruled that the court 'may elect to
require no security at all.'

*Kaepa, Inc.,* 76 F.3d at 628 (citing *Corrigan Dispatch
Company v. Casa Guzman,* 569 F.2d 300, 303 (5th

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2284579 (E.D.La.)
**(Cite as: 2007 WL 2284579 (E.D.La.))**

Page 2

<u>Cir.1978).</u>

The defendants ask the Court to set security in the amount of $3,000.00. The Court agrees with plaintiff's argument that the very nature of a consent preliminary injunction is that both parties have agreed to it and, therefore, it cannot be wrongfully entered into. As the amount of security to be posted, if any, is at the discretion of the Court, this Court finds that the plaintiff is not required to post security in any amount.[FN1]

> <u>FN1.</u> As this is a Motion for Preliminary Injunction, the Court will not address the arguments raised by the defendant regarding the merits of the case.

**\*2** Perrier's injunction also requests attorneys' fees and costs. After reviewing the arguments of the parties, the Court record, the law and applicable jurisprudence, this Court finds that Perrier is entitled to costs and the same are taxed against the defendant. Regarding Perrier's request for attorneys' fees, Perrier has not presented documentation to this Court relating to the amount of attorneys' fees incurred in bringing this matter before the Court. As such, the Court denies the request for attorneys' fees at this time.

Accordingly,

**IT IS ORDERED** that Perrier is not required to post security in any amount.

**IT IS FURTHER ORDERED** that Perrier's request for costs is **GRANTED.**

**IT IS FURTHER ORDERED** that Perrier's request for attorneys' fees is **DENIED.**

E.D.La.,2007.
Perrier Party Rentals, Inc. v. Event Rental, LLC
Slip Copy, 2007 WL 2284579 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.