hereunder, by electronic mail, as follows, or as otherwise instructed by a notice delivered to the other Party pursuant to this subsection:

16.1.1.1.   If to Merck:

Bruce N. Kuhlik
Senior Vice President and General Counsel
Merck & Co., Inc.
One Merck Drive
P.O. Box 100 (WS3A-15)
Whitehouse Station, NJ 08889-0100
Telecopier: (908) 735-1244
Email: Bruce_Kuhlik@Merck.com

16.1.1.2.   If to the NPC:

Andy D. Birchfield Jr.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
218 Commerce Street
Montgomery, AL 36104
Telecopier: (334) 954-7555
Email: andy.birchfield@beasleyallen.com

Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113-1116
Telecopier: (504) 561-6024
Email: rherman@hhkc.com

Christopher A. Seeger
Seeger Weiss LLP
One William Street
New York, NY 10004
Telecopier: (212) 584-0799
Email: cseeger@seegerweiss.com

16.1.2.   Merck may for all purposes of this Agreement treat the counsel specified in accordance with Section 17.1.16 as such Program Claimant's Counsel, unless and until otherwise advised by both such Program Claimant and such counsel.

16.1.3.   Any notice, request, instruction or other document to be given by any Party or any Administrator to any Program Claimant or his Counsel hereunder, shall be in writing and delivered by mail, by Federal Express, by facsimile transmission or by electronic mail, and such Party or Administrator may rely on the mailing, facsimile transmission and/or email addresses and/or numbers that were last provided by the

48

Program Claimant or his Counsel to the Claims Administrator, and shall have no obligation to (but in its sole and absolute discretion may) take other steps to locate Program Claimants or Counsel whose mail, facsimile transmission or electronic mail has been returned as undelivered or undeliverable. Each Program Claimant and (if applicable) his Counsel shall have the responsibility to keep the Claims Administrator informed of the correct mailing, facsimile transmission and email addresses and numbers for both such Program Claimant and such Counsel.

16.1.4.    Any such notice, request, instruction or other document shall be deemed to have been given as of the date so transmitted by facsimile or electronic mail, on the next Business Day when sent by Federal Express or five Business Days after the date so mailed, provided that if any such date on which any such notice or other communication shall be deemed to have been given is not a Business Day, then such notice or other communication shall be deemed to have been given as of the next following Business Day.

Section 16.2.   Receipt of Documentation

Any form or other documentation required to be served or submitted under this Agreement shall be deemed timely (i) if delivered by mail (and not required to be delivered in some other fashion), if postmarked (or, in the absence of a postmark or if such postmark is illegible, if received) on or before the date by which it is required to be submitted under this Agreement or (ii) if delivered (and expressly permitted or required to be delivered) by electronic mail, when it is capable of being accessed from such electronic mail address.

Section 16.3.   Governing Law.

This Agreement shall be governed by and construed in accordance with the law of New York without regard to any choice-of-law rules that would require the application of the law of another jurisdiction.

Section 16.4.   Waiver of Inconsistent Provisions of Law; Severability

16.4.1.    To the fullest extent permitted by applicable law, each Party, each Program Claimant and each Enrolled Program Claimant waives any provision of law (including the common law), which renders any provision of this Agreement invalid, illegal or unenforceable in any respect.

16.4.2.    Any provision of this Agreement which is prohibited or unenforceable to any extent or in any particular context shall be ineffective, but such ineffectiveness shall be limited as follows:  (i) if such provision is prohibited or unenforceable only in or as it relates to a particular jurisdiction, such provision shall be ineffective only in or as it relates to (as the case may be) such jurisdiction and only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability in or as it relates to (as the case may be) such jurisdiction shall not otherwise invalidate or render unenforceable such provision (in such or any other jurisdiction); (ii) if (without limitation of, and after giving effect to, clause (i)) such provision is prohibited or unenforceable only in a particular context (including only as to a particular Person or Persons or under any particular

49

circumstance or circumstances), such provision shall be ineffective, but only in such particular context; and (iii) without limitation of clauses (i) or (ii), such ineffectiveness shall not invalidate any other provision of this Agreement. Without limitation of the preceding sentence, it is further the desire, and intent and agreement, of the Parties that if the Chief Administrator (or, if applicable pursuant to Section 8.1.3 or Section 8.1.4, the Special Master or any court) determines that any provision of this Agreement is prohibited or unenforceable to any extent or in any particular context but in some modified form would be enforceable, the Chief Administrator (or, if applicable pursuant to Section 8.1.3 or Section 8.1.4, the Special Master or any court) shall have the power to, and shall, (x) modify such provision for purposes of such proceeding in accordance with clauses (i), (ii) and (iii) of the preceding sentence and otherwise to the minimum extent necessary so that such provision, as so modified, may then be enforced in such proceeding, and (y) enforce such provision, as so modified pursuant to clause (x), in such proceeding. In any event, upon any such determination that any term or other provision is invalid, illegal or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible to the fullest extent permitted by applicable law. Nothing in this Section 16.4.2 is intended to, or shall, limit (1) Section 16.4.1 or (2) the intended effect of Section 16.3.

Section 16.5.   Facsimile Signatures.

This Agreement and any amendments thereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF file format), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

Section 16.6.   Construction.

With regard to each and every term and condition of this Agreement, the parties thereto understand and agree that the same have or has been mutually negotiated, prepared and drafted, and if at any time the parties thereto desire or are required to interpret or construe any such term or condition or any agreement or instrument subject hereto, no consideration shall be given to the issue of which party thereto actually prepared, drafted or requested any term or condition of thereof.

Section 16.7.   Entire Agreement

This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes and cancels all previous agreements, negotiations, and commitments in writings between the Parties hereto with respect to the subject matter hereof.

Section 16.8.   Headings; References.

The headings of the Table of Contents, Articles and Sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement. Any reference to an Exhibit, Annex, or Schedule shall be deemed to refer to the applicable Exhibit, Annex, or Schedule attached hereto. The words

"include" and "including" and words of similar import when used in this Agreement or any Exhibit hereto are not limiting and shall be construed to be followed by the words "without limitation," whether or not they are in fact followed by such words. The definitions contained in this Agreement or any Exhibit hereto are applicable to the singular as well as the plural forms of such terms. Words of any gender (masculine, feminine, neuter) mean and include correlative words of the other genders. As used herein or in any Exhibit hereto, the term "dollars" and the symbol "$", shall mean United States dollars. References herein to instruments or documents being submitted "by" any Person include (whether or not so specified) submission of the same on behalf of such Person by his Counsel whether or not so specified, provided that if any particular instrument or document is required herein to be executed by a particular Person, it must (unless otherwise expressly specified herein) be so executed by such Person. References herein to any particular Section (such as, for example, Section 4.2) shall be deemed to refer to all sub-Sections of such Section (such, as for example, Section 4.2.1, 4.2.2, etc.), all sub-sub-Sections of such sub-Sections, and so on; the corresponding principle applies to all references herein to any particular sub-Section, sub-sub-Section and so on.

Section 16.9.  No Third Party Beneficiaries; Assignment

16.9.1.   No provision of this Agreement or any Exhibit thereto is intended to create any third-party beneficiary to this Agreement. For the avoidance of doubt, nothing in this Section 16.9 limits or modifies the third-party beneficiary provisions of any Enrollment Form, Release or Dismissal With Prejudice Stipulation. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns; provided, however, that neither this Agreement nor any of the rights, interests, or obligations hereunder may be assigned by the NPC without the prior written consent of Merck. No right to receive a Settlement Payment may be assigned by any Program Claimant and/or any Enrolling Counsel without the prior written consent of Merck. Any assignment in violation of this Section 16.9.1 shall be null and void ab initio.

16.9.2.   Without limitation of Section 16.9.1 but also without limitation of the NPC's right to enforce this Agreement, no Program Claimant (including any Enrolled Program Claimant or Qualifying Program Claimant) shall have any right to institute any proceeding, judicial or otherwise, against Merck, the NPC or any Administrator to enforce, or otherwise with respect to, this Agreement.

Section 16.10. Amendments; No Implied Waiver

This Agreement may be amended by (and only by) an instrument signed by Merck, on the one hand, and a majority in number of the NPC, on the other hand. Except where a specific period for action or inaction is provided herein, no failure on the part of a Party to exercise, and no delay on the part of either Party in exercising, any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any waiver on the part of either Party of any such right, power or privilege, or any single or partial exercise of any such right, power or privilege, preclude any other or further exercise thereof or the exercise of any other right, power or privilege; nor shall any waiver on the part of a Party, on any particular occasion or in any

60026907_47.DOC i

particular instance, of any particular right, power or privilege operate as a waiver of such right, power or privilege on any other occasion or in any other instance.

Section 16.11. <u>Counterparts</u>

This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument.  It shall not be necessary for any counterpart to bear the signature of all Parties hereto.

Section 16.12. <u>Tax Matters</u>

The Parties agree to characterize the Administration Expenses Fund, the IS Settlement Fund and the MI Settlement Fund for federal, state and local income tax purposes in such manner as is reasonably determined by Merck, including without limitation as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-1 or as a grantor trust pursuant to an election under Treasury Regulation Section 1.468B-1(k) or otherwise.  The Escrow Agent and Merck shall timely provide the other with such material and relevant information as and to the extent reasonably requested by the other party in connection with any tax filing or the payment of any taxes or any private letter ruling regarding the tax status of the Funds.

Section 16.13. <u>Further Assurances</u>

From time to time following the Execution Date, (i) each Party shall take such reasonable actions consistent with the terms of this Agreement as may reasonably be requested by the other Party, and otherwise reasonably cooperate with the other Party in a manner consistent with the terms of this Agreement as reasonably requested by such other Party, and (ii) each Program Claimant (and his related Executing Derivative Claimants) and their Counsel shall take such reasonable actions consistent with the terms of this Agreement as may reasonably be requested by Merck or the NPC, and otherwise reasonably cooperate with Merck and the NPC in a manner consistent with the terms of this Agreement as reasonably requested by Merck or the NPC, in the case of each of (i) and (ii) as may be reasonably necessary in order further to effectuate the intent and purposes of this Agreement and to carry out the terms hereof.

Article 17
Definitions

Section 17.1.  <u>Definitions</u>

For the purposes of this Agreement, the following terms (designated by initial capitalization throughout this Agreement) shall have the meanings set forth in this Section.

17.1.1.   "<u>Adjusted IS Settlement Amount</u>" means, at any date of computation, (i) the IS Aggregate Settlement Amount, minus (ii) the aggregate amount of all IS Settlement Payments (other than IS Interim Settlement Payments or IS Final Settlement Payments) paid or to be paid under this Agreement (for the avoidance of doubt,

52

disregarding for purposes of this clause (ii) the effects of Article 12), determined as of such date of computation.

17.1.2.    "<u>Adjusted MI Settlement Amount</u>" means, at any date of computation, (i) the MI Aggregate Settlement Amount, minus (ii) the aggregate amount of all MI Settlement Payments (other than MI Interim Settlement Payments or MI Final Settlement Payments) paid or to be paid under this Agreement (for the avoidance of doubt, disregarding for purposes of this clause (ii) the effects of Article 12), determined as of such date of computation.

17.1.3.    "<u>Administrative Agreement</u>" means any agreement among (i) an Administrator, (ii) Merck and (iii) a majority in number of the NPC, with respect to such Administrator's service in connection with the Program.

17.1.4.    "<u>Administrative Expenses</u>" means (i) any fees, expenses, indemnification payments or other like amounts payable from time to time to past or present Administrators pursuant to past or present Administrative Agreements, (ii) any amounts required to be expended to acquire and maintain insurance for the benefit of the past or present Administrators pursuant to the terms of any past or present Administrative Agreement and (iii) such other amounts as may be specified in any past or present Administrative Agreement to constitute "Administrative Expenses" for purposes of this Agreement.

17.1.5.    "<u>Administrative Expenses Fund</u>" means the escrow sub-account account of such name established under the Escrow Agreement.

17.1.6.    "<u>Administrators</u>" means the Persons from time to time serving as the Chief Administrator, the Claims Administrator, the Special Master, the Deputy Special Master and/or the Escrow Agent.

17.1.7.    "<u>Agreement</u>" means this Settlement Agreement, including the Exhibits and Schedules thereto, as the same may be amended or modified from time to time in accordance with the terms hereof.

17.1.8.    "<u>Business Day</u>" means any day that is not a Saturday, a Sunday or other day on which commercial banks in the City of New York, New York or the State of New Jersey are required or authorized by law to be closed.

17.1.9.    "<u>Chief Administrator</u>" means the Person from time to time appointed by mutual agreement of Merck, on the one hand, and a majority in number of the NPC, on the other hand, to fulfill the functions of the "Chief Administrator" under this Agreement (so long as such Person continues to serve in such capacity).

17.1.10.    "<u>Claims</u>" means any and all rights, remedies, actions, claims, demands, causes of action, suits at law or in equity, verdicts, suits of judgments, judgments and/or Liens (including any of the foregoing for wrongful death, personal injury and/or bodily injury, sickness, disease, emotional distress and/or injury, mental or physical pain and/or suffering, emotional and/or mental harm, fear of disease or injury,

53

loss of enjoyment of life, loss of society, loss of companionship, loss of income, loss of consortium, medical expenses, future cost of insured services, past cost of insured services or any other form of injury, and including any of the foregoing for direct damages, indirect damages, consequential damages, incidental damages, punitive damages or any other form of damages whatsoever), whether based upon contract, breach of contract, warranty or covenant, breach of warranty or covenant, tort, negligence, gross negligence, recklessness, joint and several liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect, failure to warn, fault, strict liability, misrepresentation, common law fraud, statutory consumer fraud, quantum meruit, breach of fiduciary duty, violation of statutes or administrative regulations and/or any other legal (including common law), statutory, equitable or other theory or right of action, whether presently known or unknown, developed or undeveloped, discovered or undiscovered, foreseen or unforeseen, matured or unmatured, accrued or not accrued, or now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner.

17.1.11.    "Claims Administrator" means the Person or Persons from time to time appointed by mutual agreement of Merck, on the one hand, and a majority in number of the NPC, on the other hand, to fulfill the functions of the "Claims Administrator" under this Agreement (so long as such Person or Persons continues to serve in such capacity).

17.1.12.    "Claims Form" means a claim form in the form of Exhibit 17.1.12.

17.1.13.    "Claims Package" means, with respect to any particular Enrolled Program Claimant, all of the following in relation to such Enrolled Program Claimant's Product User: the Claims Form, all Supplementary Claims Forms, all Required PME Records, all Additional Claims Information requested by the Claims Administrator, all Profile Forms and any such other PME Records as such Enrolled Program Claimant in its discretion may submit.

17.1.14.    "Connected With VIOXX" means to any extent, or in any way, arising out of, relating to, resulting from and/or connected with VIOXX (and/or VIOXX and any other drug or substance, regardless of when such other drug or substance is or was ingested or alleged to be ingested) and/or with any injury claimed to have been caused, in whole or in part, by VIOXX (and/or VIOXX and any other drug or substance, regardless of when such other drug or substance is or was ingested or alleged to be ingested).

17.1.15.    "Coordinated Proceedings Counsel" means any lawyer or law firm that had an action pending in any of the Coordinated Proceedings as of the Execution Date.

17.1.16.    "Counsel" means, with respect to any particular Person, a lawyer or law firm who represents such Person pursuant to a written agreement, provided that, for all purposes of this Agreement, the "Counsel" of any particular Enrolled Program Claimant shall be the lawyer or law firm named as such in such Enrolled Program Claimant's Enrollment Form.  However, if (i) two or more lawyers or law firms are

named as a particular Enrolled Program Claimant's counsel in two or more Enrollment Forms, then the Claims Administrator shall (at Merck's direction) suspend further consideration of such Enrolled Program Claimant's Program Claim until such time as such Enrolled Program Claimant, or all such lawyers or law firms, irrevocably designate, in a notice to the Claims Administrator, which single lawyer or law firm is such Enrolled Program Claimant's primary counsel (or until otherwise directed by Merck). Such designated primary counsel shall, for all purposes of this Agreement, be the sole "Counsel" of such Enrolled Program Claimant.

17.1.17.    "Deputy Special Master" means the Person or Persons from time to time appointed by a Special Master in accordance with the terms of the Special Master's Administrative Agreement or otherwise with the consent of Merck, on the one hand, and a majority in number of the NPC, on the other, to fulfill (either in the place of, or in addition to, the Special Master) the specific functions of the "Special Master" under this Agreement specified in such appointment (so long as such Person or Persons continues to serve in such capacity). A Deputy Special Master shall have the same rights, powers, duties, privileges and immunities of the Special Master, and a Deputy Special Master's determinations shall have the same status and effect as those of the Special Master, in relation to such specific functions.

17.1.18.    "Derivative Claimant" means, in relation to any particular Eligible Claimant or Program Claimant, any Person having or asserting the right, either statutory or under applicable common law (including the laws of descent and distribution) or otherwise, to sue Merck or any other Released Party, independently, derivatively or otherwise:

17.1.18.1.    by reason of their personal relationship with such Eligible Claimant or Program Claimant (or the Product User with respect to such Eligible Claimant or Program Claimant); and/or

17.1.18.2.    otherwise by, through or under, or otherwise in relation to, such Eligible Claimant or Program Claimant (or the Product User with respect to such Eligible Claimant or Program Claimant);

including the heirs, beneficiaries, surviving spouse (including a putative or common law spouse), surviving domestic partner and next of kin of such Eligible Claimant or Program Claimant (or the Product User with respect to such Eligible Claimant or Program Claimant).

17.1.19.    "Dismissal With Prejudice Stipulation" means a "Dismissal With Prejudice Stipulation" in the form thereof included in the form of Enrollment Form attached hereto or in such other form as is mandated by the Enrollment Form.

17.1.20.    "Dispensing Physician" means any physician who purchases prescription drugs for the purpose of dispensing them to patients or other individuals entitled to receive the prescription drug and who dispenses them accordingly.

17.1.21.   "EC Claim" means, in relation to any Eligible Claimant, such Eligible Claimant's claim as described in Section 17.1.22.3.

17.1.22.   "Eligible Claimant" means a natural person or the Legal Representative(s) thereof:

17.1.22.1.   which natural person was a United States citizen or a legal resident of the United States or was physically located in the United States, in each case when the alleged Eligible Event referred to in Section 17.1.22.3 is alleged to have occurred;

17.1.22.2.   which natural person or Legal Representative(s) (i) as of the Execution Date had a lawsuit pending (in any court in the United States) against, or was (directly or through counsel) a party to a Tolling Agreement with, Merck with respect to an allegation described in Section 17.1.22.3, or (ii) prior to the Execution Date was (directly or through counsel) a party to a Tolling Agreement with Merck with respect to an allegation described in Section 17.1.22.3 which Tolling Agreement has been terminated by Merck; and

17.1.22.3.   which natural person alleges, or is alleged, to have suffered losses or damages as a result of such natural person's own alleged Eligible Event alleged to have been caused (in whole or in part) by such natural person's alleged ingestion of VIOXX.

For the avoidance of doubt, it is understood and agreed that (i) subject to clause (ii), the Legal Representative (or, if more than one, the Legal Representatives collectively), of a particular natural person (including a deceased natural person), in such capacity, has the same status hereunder as such particular natural person, and (ii) a natural person (including a deceased natural person) and his or her Legal Representative(s) shall constitute a single Eligible Claimant.  Notwithstanding the foregoing provisions of this Section 17.1.22, (i) no Person who prior to the Execution Date had an action against Merck Connected With VIOXX dismissed with prejudice which dismissal is not as of the Execution Date under appeal (or their respective Legal Representatives) and (ii) none of the Persons set forth on Schedule 17.1.22 (nor their respective Legal Representatives), shall constitute "Eligible Claimants" (and accordingly none of such Persons (or their respective Legal Representatives) may participate in the Program).

17.1.23.   "Eligible Event" means an MI or IS.

17.1.24.   "Enrolled Program Claimant" means a Person who (as a purported "Eligible Claimant") has submitted an Enrollment Form (or on whose behalf an Enrollment Form has been submitted) to Merck on or prior to the Enrollment Deadline Date, which Enrollment Form has not been rejected by Merck pursuant to Section 1.2.

17.1.25.   "Enrolling Counsel" means any lawyer or law firm who files an Enrollment Form.

17.1.26.   "Enrollment Deadline Date" means the Walk Away Enrollment Deadline Date, provided that if (i) no Walk Away Right arises in relation to Section 11.1.1, 11.1.2, 11.1.3, 11.1.4 or 11.1.5 or (ii) a Walk Away Right does arise in relation to one or more of such Sections, but Merck in its sole and absolute discretion waives, and/or fails timely to exercise, its Walk Away Right with respect to all of the relevant Sections, the Enrollment Deadline Date automatically shall be extended (effective retroactively as of such former Enrollment Deadline Date) to October 30, 2008.

17.1.27.   "Enrollment Form" means a Program Participation Enrollment Form, Release and Dismissal With Prejudice Stipulation, including all attachments thereto, all in the form of Exhibit 17.1.27.

17.1.28.   "Escrow Agent" means U.S. Bancorp or such other Person or Persons from time to time appointed by the NPC, with the consent of Merck (not to unreasonably be withheld), to fulfill the functions of the "Escrow Agent" under the Escrow Agreement (so long as such Person or Persons continues to serve in such capacity).

17.1.29.   "Escrow Agreement" means an escrow agreement substantially in the form of Exhibit 17.1.29, with such changes from such form that may be requested by the proposed "Escrow Agent" thereunder, are agreed to by Merck and either (i) are not material or (ii) are consented to by a majority in number of the NPC (such consent not to be unreasonably withheld or delayed), as the same may be amended from time to time in accordance with the terms thereof.

17.1.30.   "Escrow Funds" means the Administrative Expenses Fund, the MI Settlement Fund and the IS Settlement Fund.

17.1.31.   "Event Records" means all records relating to the immediate medical care and treatment to address an Enrolled Program Claimant's Related Eligible Event. "Event Records" include Medical Records from the hospital, medical center, or healthcare facility that treated the Enrolled Program Claimant immediately following his Related Eligible Event (including any Medical Records from ambulance workers, paramedics, and emergency rooms whose Medical Records are included in such hospital's, medical center's, or healthcare facility's Medical Records), including all facilities to which the Enrolled Program Claimant was transferred for continued care and treatment of the alleged Related Eligible Event.  In the case of a fatal event, "Event Records" shall also include the death certificate and any autopsy report.

17.1.32.   "Excess Administrative Expenses Fund Amount" means, at any date of computation, the excess, if any, of (i) the balance of the Administrative Expenses Fund at such time over (ii) the sum of (x) the Remaining Administrative Expenses Estimate, plus (y) the aggregate amount of Administrative Expenses (if any) theretofore paid directly by Merck.

17.1.33.   "Executing Derivative Claimant" means, in relation to any particular Program Claimant, any Derivative Claimant in relation to such Program Claimant that has executed such Program Claimant's Release.

17.1.34.   "Governmental Authority" means any governmental authority, including (i) the United States or any other country, any state, province, territory or possession of the United States or any other country, and any local or other governmental body, or other political subdivision, in or of any of the foregoing, (ii) any multinational organization or body and (iii) any agency, board, bureau, court, commission, department, instrumentality or administration of any of the forgoing described in clauses (i) or (ii).

17.1.35.   A lawyer or law firm shall be deemed to have an "Interest" in a Person, or in a Claim of a Person, if the lawyer or law firm or any Person affiliated or related in any way to the lawyer or law firm:

> 17.1.35.1.   has an engagement or retainer agreement with such Person;

> 17.1.35.2.   is listed as the counsel of record for such Person in filed pleadings;

> 17.1.35.3.   has entered an appearance for such Person;

> 17.1.35.4.   would benefit directly or indirectly from any payment to settle any Claim of such Person Connected With VIOXX; or

> 17.1.35.5.   otherwise has any financial interest in any Claim of such Person Connected With VIOXX.

For the avoidance of doubt (and without limitation), an individual lawyer is deemed to have an "Interest" in a Person, or in a Claim of a Person, in which any law firm of or with which such individual lawyer is a partner, associate or otherwise affiliated has an Interest, and vice versa.

17.1.36.   "Interim Settlement Payment" means an MI Interim Settlement Payment or IS Interim Settlement Payment.

17.1.37.   "IS" means ischemic stroke or ischemic cerebrovascular event or accident (i.e., ischemic stroke, intracranial thrombosis, cerebral embolism, thrombotic stroke, embolic stroke, lacunar infarct, lacunar stroke, thrombotic occlusion, cerebrovascular event or accident that is not a primary hemorrhagic event, and cerebral infarction; or a hemorrhagic stroke that is secondary to the terms previously listed).

17.1.38.   "IS Aggregate Settlement Amount" means the sum of (i) $850,000,000, plus (ii) an amount equal to any amount transferred to the IS Settlement Fund pursuant to Section 5.4.1.

17.1.39.   "IS Eligible Claimant" means an Eligible Claimant whose alleged Related Eligible Event is an IS.

17.1.40.   "IS Point Value" means the quotient of (i) the Adjusted IS Settlement Amount divided by (ii) the aggregate number of Points awarded to all IS Qualifying

Program Claimants (other than those who elected to receive a Fixed Payment pursuant to Section 3.3). The IS Point Value shall be determined only at the time that Final Settlement Payments are to be made to IS Qualifying Program Claimants in accordance with Section 4.3.

17.1.41.   "IS Qualifying Program Claimant" means a Qualifying Program Claimant whose Related Eligible Event is an IS.

17.1.42.   "IS Settlement Fund" means the escrow sub-account of such name established under the Escrow Agreement.

17.1.43.   "IS Settlement Fund Top-Up Amount" means, at any date of computation, (i) the IS Aggregate Settlement Amount, minus (ii) the aggregate of all deposits theretofore made (by Merck or from the proceeds of any draw under any Letter of Credit) into the IS Settlement Fund, plus (iii) if applicable, the aggregate amount returned to Merck from the IS Settlement Fund pursuant to Section 5.3.6.

17.1.44.   "IS Settlement Payment" means any IS Interim Settlement Payment, IS EI Payment, IS Fixed Payment or IS Final Settlement Payment.

17.1.45.   "Legal Representative" means, as to any particular natural person (including a deceased natural person), the estate, executor, administrator, guardian, conservator or other legal representative thereof.

17.1.46.   "Letter of Credit" means a letter of credit substantially in the form of Exhibit 17.1.46, with such changes from such form that may be requested by the proposed "Issuing Bank" thereunder, are agreed to by Merck and either (i) are not material or (ii) are consented to by a majority in number of the NPC (such consent not to be unreasonably withheld or delayed).

17.1.47.   "Liabilities" means any and all debts, liabilities, covenants, promises, contracts, agreements and/or obligations of whatever kind, nature, description or basis, whether fixed, contingent or otherwise, whether presently known or unknown, developed or undeveloped, discovered or undiscovered, foreseen or unforeseen, matured or unmatured, or accrued or not accrued.

17.1.48.   "Lien" means any mortgage, lien, pledge, charge, security interest, encumbrance, assignment, subrogation right, third-party interest or adverse claim of any nature whatsoever, in each case whether statutory or otherwise, including any of the foregoing in relation to Medicare or Medicaid, any Third Party Provider/Payor or any lawyer or law firm.

17.1.49.   "Lien Resolution Administrator" means the Person or Persons from time to time appointed by the Chief Administrator based on a joint recommendation of Merck, on the one hand, and a majority in number of the NPC, on the other hand, to fulfill the functions of the "Lien Resolution Administrator" under this Agreement (so long as such Person or Persons continues to serve in such capacity). If, at any time, two

59

or more Persons constitute the "Lien Resolution Administrator", then any determination of the Lien Resolution Administrator shall be made by a majority of such Persons.

17.1.50. "Litigation Medical Records Depository" means the depository through which Merck delivers medical records it collects by way of authorization or subpoena to plaintiffs' counsel in the various Coordinated Proceedings and elsewhere.

17.1.51. "Medical Records" means the entire record maintained by an individual healthcare provider or facility relating to the medical history, care, diagnosis and treatment of an Enrolled Program Claimant including new patient intake forms completed by or on behalf of an Enrolled Program Claimant, doctor's notes, nurse's notes, physician's orders, consultation reports, laboratory test results, EEGs, EKGs, x-ray reports, CT scan reports, MRI scan reports, catheterization reports, angiogram reports, arteriogram reports, reports of any diagnostic procedures, tests or imaging studies, operative reports, history and physicals, pathology reports, admission summaries, discharge summaries, consent forms, prescription records, medication records, medical bills and invoices and all communications between a healthcare provider and an Enrolled Program Claimant or between two or more healthcare providers relating to an Enrolled Program Claimant, including telephone messages, correspondence and memoranda.

17.1.52. "Merck Released Party" has the meaning ascribed to such term in the form of Release included in the form of Enrollment Form attached hereto.

17.1.53. "MI" means (i) a myocardial infarction or heart attack or (ii) an *SCD*.

17.1.54. "MI Aggregate Settlement Amount" means the sum of (i) $4,000,000,000, plus (ii) an amount equal to any amount transferred to the MI Settlement Fund pursuant to Section 5.4.1.

17.1.55. "MI Eligible Claimant" means an Eligible Claimant whose alleged Related Eligible Event is an MI.

17.1.56. "MI Point Value" means the quotient of (i) the Adjusted MI Settlement Amount divided by (ii) the aggregate number of Points awarded to all MI Qualifying Program Claimants (other than those who elected to receive a Fixed Payment pursuant to Section 3.3). The MI Point Value shall be determined only at the time that Final Settlement Payments are to be made to MI Qualifying Program Claimants in accordance with Section 4.3.

17.1.57. "MI Qualifying Program Claimant" means a Qualifying Program Claimant whose alleged Related Eligible Event is an MI.

17.1.58. "MI Settlement Fund" means the escrow sub-account of such name established under the Escrow Agreement.

17.1.59. "MI Settlement Fund Top-Up Amount" means, at any date of computation, (i) the MI Aggregate Settlement Amount, minus (ii) the aggregate of all deposits theretofore made (by Merck or from the proceeds of any draw under any Letter

of Credit) into the MI Settlement Fund, plus (iii) if applicable, the aggregate amount returned to Merck from the MI Settlement Fund pursuant to Section 5.3.6.

17.1.60.    "MI Settlement Payment" means any MI Interim Settlement Payment, MI EI Payment, MI Fixed Payment or MI Final Settlement Payment.

17.1.61.    "Non-Merck Released Party" has the meaning ascribed to such term in the form of Release included in the form of Enrollment Form attached hereto.

17.1.62.    "Non-Appealable" means not subject to (i) any further right of appeal to any Administrator or otherwise within the Program or (ii) any right of appeal to the MDL Court, any other Coordinated Proceedings court or any other court.

17.1.63.    "Overall Settlement Amount" means the sum of the MI Aggregate Settlement Amount and the IS Aggregate Settlement Amount.

17.1.64.    "Person" means a natural person, partnership (whether general or limited), limited liability company, trust, estate, association (including any group, organization, co-tenancy, plan, board, council or committee), corporation, Governmental Authority, custodian, nominee or any other individual or entity (or series thereof) in its own or any representative capacity, in each case, whether domestic or foreign.

17.1.65.    "Pharmacy Records" means all documents that relate to the preparation, dispensing and provision of medicine, medical devices, or other treatment modalities by a pharmacy or Dispensing Physician.

17.1.66.    "Plaintiffs' Executive Committee" or "PEC" means the following persons who were appointed by the MDL Court:  Andy D. Birchfield, Jr., Russ M. Herman, and Chris A. Seeger.

17.1.67.    "Plaintiff's Liaison Counsel" or "PLC" means the liaison counsel appointed by the MDL Court:  Russ M. Herman.

17.1.68.    "PME Records" means Pharmacy Records, Medical Records and Event Records.

17.1.69.    "Points" has the meaning ascribed to such term in Exhibit 3.2.1.

17.1.70.    "Product User" means, in relation to any particular Eligible Claimant or Program Claimant, the natural person (including the deceased natural person) referred to in the definition of the term "Eligible Claimant" (as opposed to any Legal Representative in respect of such natural person).

17.1.71.    "Profile Form" means all of the following (to the extent the same exists in relation to any particular Person): (i) a written request for information that a plaintiff who has an active lawsuit in one of the Coordinated Proceedings must complete pursuant to one of the following sets of orders:  (1) Pretrial Orders 18, 18A, 18B, and 18C (dated August 4, 2005, August 16, 2005, September 14, 2005, and June 29, 2006,

respectively) in the Federal Multidistrict Litigation; (2) the October 22, 2003 and March 28, 2005 Orders governing fact sheets in the New Jersey Coordinated Proceeding; (3) Case Management Order No. 4 (dated June 12, 2003), Amended Case Management Order No. 4 (dated September 29, 2005), and Order re: June 28, 2007 Hearing (dated September 5, 2007) in the California Coordinated Proceeding; and (4) Case Management Order No. 2 (dated October 19, 2005) and Pre-Trial Order No. 3 (dated November 28, 2005) in the Texas Multidistrict Litigation, (ii) a written request for information that a Person who is a party to a Tolling Agreement must complete pursuant to the Federal Multidistrict Litigation Tolling Agreement dated June 1, 2005 and attached thereto as Exhibit A, (iii) bills of particulars, answers to interrogatories or plaintiff fact sheets and (iv) any amendments or supplements or responses to deficiency letters or notices with respect to the items specified in the foregoing clauses (i) through (iii).

17.1.72.   "Program Claim" means all materials submitted by or on behalf of a Person (and/or his counsel) to attempt to enroll in, or to receive payments under, the Program, including any Claims Package submitted by or on behalf of such Person.

17.1.73.   "Program Claimant" means a Person who (as a purported "Eligible Claimant") has submitted an Enrollment Form (or on whose behalf an Enrollment Form has been submitted) to the Claims Administrator on or prior to the Enrollment Deadline Date. For the avoidance of doubt, a Counsel to a Person is not (in such capacity) a "Program Claimant".

17.1.74.   "Registered Eligible Claimant" means an Eligible Claimant for whom data is provided in a properly completed, and submitted, Registration Affidavit.

17.1.75.   "Registration Affidavit" has the meaning ascribed to such term in the form of Registration Order attached hereto as Exhibit 1.1.

17.1.76.   "Related Eligible Event" means, in relation to any particular Program Claimant, the alleged Eligible Event referred to in Section 17.1.22.3, as specified in the Registration Affidavit submitted (or, if no such Registration Affidavit is submitted, in the Enrollment Form submitted) in relation to such Program Claimant (which specification shall be irrevocable for purposes of this Agreement). It is understood and agreed that, subject only to Section 3.5, if such Program Claimant's Product User alleges to have suffered both an MI and an IS, and/or multiple MIs and/or multiple ISs, such Program Claimant nonetheless will be required to specify (as set forth in the preceding sentence) a single MI or IS to be the exclusive basis of such Program Claimant's Program Claim.

17.1.77.   "Released Claims and Liabilities" has the meaning ascribed to such term in the Release.

17.1.78.   "Released Parties" has the meaning ascribed to such term in the Release.

17.1.79.   "Remaining Administrative Expenses Estimate" means, at any date of computation, the sum (without duplication) of (i) all Administrative Expenses anticipated to become payable at any time thereafter, (ii) a reasonable reserve to provide for

62

unanticipated and/or contingent Administrative Expenses and (iii) to the extent that Merck is required pursuant to any Administrative Agreement, or determines in its discretion, to purchase liability insurance covering any Administrator, the anticipated aggregate cost thereof, all as determined and/or estimated in good faith by Merck.

17.1.80.   "SCD" means an instantaneous or near-instantaneous unexplained death that occurs without warning or within one hour of non-diagnostic symptoms, or an unexpected sudden death in which criteria for a fatal coronary, cerebrovascular event or other cause or event are not met.

17.1.81.   "Settlement Funds" means the MI Settlement Fund and the IS Settlement Fund.

17.1.82.   "Settlement Payment" means any MI Settlement Payment or IS Settlement Payment.

17.1.83.   "Special Master" means the Person or Persons from time to time appointed by the Chief Administrator based on a joint recommendation of Merck, on the one hand, and a majority in number of the NPC, on the other hand, to fulfill the functions of the "Special Master" under this Agreement (so long as such Person or Persons continues to serve in such capacity). If, at any time, two or more Persons constitute the "Special Master", then any determination of the Special Master shall be made by a majority of such Persons.

17.1.84.   "Special Review Marker" means (i) in the case of an MI Qualifying Program Claimant, 10 Points, and (ii) in the case of an IS Qualifying Program Claimant, 2 Points.

17.1.85.   "Supplementary Claims Form" means a claim form in the form determined, in accordance with Section 6.2, by the Claims Administrator.

17.1.86.   "Third Party Provider/Payor" means any provider or payor (public or private) of (i) health, hospital, medical, physician, healthcare and/or pharmaceutical services, products or expenses and/or (ii) any other form of compensation, including federal and state Governmental Authorities (or other Persons) providing Medicare and/or Medicaid services or benefits.

17.1.87.   "Tolling Agreement" means the specific agreement referenced in the Notice of Filing of Tolling Agreement which was filed in the MDL Court on June 9, 2005 and amended pursuant to the Notice of Amendment to Tolling Agreement filed in the MDL Court on March 7, 2007.

17.1.88.   "Tolling Agreement Party" means a Person who (i) as of the Execution Date was (directly or through counsel) a party to a Tolling Agreement with Merck or (ii) prior to the Execution Date was (directly or through counsel) a party to a Tolling Agreement with Merck which Tolling Agreement was terminated by Merck, and (in each case and for the avoidance of doubt) is not a party to any lawsuit pending (in any court of the United States) against Merck Connected With VIOXX.

17.1.89.   "<u>VIOXX</u>" or "<u>Vioxx</u>" means VIOXX (sometimes referred to as "rofecoxib").

17.1.90.   "<u>Walk Away Enrollment Deadline Date</u>" means March 1, 2008, <u>provided</u> that Merck may, from time to time prior to, on, or after, the Walk Away Enrollment Deadline Date then in effect and in its sole and absolute discretion, extend the Walk Away Enrollment Deadline Date to a date not later than June 30, 2008.

Section 17.2.   <u>Cross-Reference of Other Definitions</u>.

Each capitalized term listed below is defined in the corresponding Section of this Agreement:

## <u>INDEX OF TERMS</u>

<u>Section</u>

Additional Claim Information.................................................................................. 1.4.1
Administrative Expenses Payables ........................................................................ 5.1.6.2
Award Information.................................................................................................. 15.1
Claims Valuation Process ...................................................................................... 3.1
Completed .............................................................................................................. 3.2.1.2
Coordinated Proceedings ....................................................................................... Recitals
Documented ........................................................................................................... 4.2.6.2
dollars .................................................................................................................... 16.8
Double QPC ........................................................................................................... 3.5.4
EI Payments ........................................................................................................... 4.2.1
Eligibility Requirements ....................................................................................... 2.2.1
Escrow Funds Report............................................................................................. 5.1.5
Estimated Aggregate IS Special Marker QPCs .................................................... 4.1.2
Estimated Aggregate MI Special Marker QPCs ................................................... 4.1.1
Estimated IS Non-Special Marker QPC Total Points ........................................... 4.1.2
Estimated MI Non-Special Marker QPC Total Points.......................................... 4.1.1
Execution Date....................................................................................................... Introduction
Final ....................................................................................................................... 3.3.5
Final Settlement Payments..................................................................................... 4.3.3
Fixed Payment ....................................................................................................... 3.3.2
Funding Amount .................................................................................................... 5.3.4
Funding Payments.................................................................................................. 5.1
Future Evidence Stipulation................................................................................... 2.7.3
Gate Committee ..................................................................................................... 2.4.1
IS EI Payments....................................................................................................... 4.2.1
IS EI Payments Cap Amount ................................................................................. 4.2.3
IS Final Settlement Payment.................................................................................. 4.3.2
IS Fixed Payment................................................................................................... 3.3.2
IS Initial Settlement Payments Commencement Date ........................................... 4.1.2
IS Interim Payments Cap. ...................................................................................... 4.1.2.2
IS Interim Settlement Payments............................................................................. 4.1.2.1

IS QPC Payables...................................................................................................... 5.1.6.4
IS Special Review QPC ................................................................................................ 3.4.1
MDL Court................................................................................................................. Preamble
Merck .....................................................................................................................Introduction
MI EI Payments ............................................................................................................ 4.2.1
MI EI Payments Cap Amount......................................................................................... 4.2.2
MI Final Settlement Payment ........................................................................................ 4.3.1
MI Fixed Payment.......................................................................................................... 3.3.2
MI Initial Settlement Payments Commencement Date.................................................... 4.1.1
MI Interim Payments Cap............................................................................................ 4.1.1.2
MI Interim Settlement Payments. ................................................................................ 4.1.1.1
MI QPC Payables......................................................................................................... 5.1.6.3
MI Special Review QPC ................................................................................................ 3.4.1
Multiple Draw Drawing ................................................................................................. 5.3.2
Non-Extension Drawing ................................................................................................ 5.3.2
Parties.....................................................................................................................Introduction
Party .......................................................................................................................Introduction
Payment Report.............................................................................................................. 5.1.5
Periodic Audit Start Date ............................................................................................. 10.2.1
Point Awards Criteria .................................................................................................... 3.2.1
Points Award Process ....................................................................................................... 3.1
Pre-Special Review ....................................................................................................... 3.3.1
Program....................................................................................................................... Recitals
PSC ........................................................................................................................... Preamble
Qualifying Program Claimant........................................................................................... 2.1
Registration Order............................................................................................................ 1.1
Release ....................................................................................................................... 1.2.2.3
Required PME Records.................................................................................................... 1.3.1
Second Eligible Event..................................................................................................... 3.5.1
Section 11.1.5 Counsel ................................................................................................. 11.1.5
Special Marker QPC ...................................................................................................... 3.3.2
Special Review QPC....................................................................................................... 3.4.1
Specified Documented Economic Damages .................................................................. 4.2.6.1
Threshold Exceeding Gate Push ................................................................................. 2.5.5.4.1
Walk Away Right ........................................................................................................... 11.1

[The remainder of this page is intentionally left blank.]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first set forth above.

MERCK & CO., INC.

By: _____
     Name:
     Title:

Address:

Telecopier:

**[Signature Pages for Settlement Agreement]**

NEGOTIATING PLAINTIFFS' COUNSEL

_____

Andy D. Birchfield Jr.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.

Address:  218 Commerce Street
          Montgomery, AL 36104

Telecopier:      (334) 954-7555

_____

Edward F. Blizzard
Blizzard, McCarthy & Nabers, LLP

Address:  Lyric Centre, 440 Louisiana, Suite 1710
          Houston, Texas 77002-1689

Telecopier:      (713) 844-3755

_____

Thomas V. Girardi
Girardi and Keese

Address:  1126 Wilshire Boulevard
          Los Angeles, California 90017-1904

Telecopier:      (213) 481-1554

_____

Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP

Address:  820 O'Keefe Avenue
          New Orleans, Louisiana 70113-1116

Telecopier:      (504) 561-6024

2

**[Signature Pages for Settlement Agreement]**

_____

Arnold Levin
Levin, Fishbein, Sedran & Berman

Address:  510 Walnut Street, Suite 500
              Philadelphia, Pennsylvania 19106-3697

Telecopier:       (215) 592-4663

_____

Christopher A. Seeger
Seeger Weiss LLP

Address:  One William Street
              New York, NY 10004

Telecopier:       (212) 584-0799

3

60026907_47.DOC i

**[Signature Pages for Settlement Agreement]**