UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| 1199 SEIU GREATER NEW YORK BENEFIT FUND, by its Trustees, *et al*, on behalf of themselves and all others similarly situated | * * * * | CASE NO:  08-3627 RELATED CASE: 2:05-MD-1657 |
| Plaintiffs, | * * | VIOXX MDL LITIGATION |
| v. | * * | SECTION L |
| BROWNGREER, PLC, *et al* | * * | JUDGE ELDON E. FALLON |
| Defendants. | * * | MAGISTRATE JUDGE KNOWLES |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS IN PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs' class action complaint seeks certification of a class of health benefit plans subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 *et seq.*  Plaintiffs assert an entitlement to classwide relief that includes the disclosure of the identities of all individuals participating in the Vioxx settlement program and an injunction against disbursement of funds from the Vioxx settlement.  The Court should strike the class allegations for the following reasons.

***First,*** the proposed class is not ascertainable.  Plaintiffs purport to sue on behalf of "[a]ll ERISA-covered health benefit plans . . . that (a) have paid or agreed to pay Vioxx-related medical benefits on behalf of plan beneficiaries who have enrolled or will enroll in the Vioxx

settlement and (b) whose plan documents contain notification and/or reimbursement provisions regarding claims against and/or settlements with parties who caused injuries to plan beneficiaries." (Class Action Compl. ("CAC") ¶ 18.)  In other words, the determination of class membership is impossible without individualized discovery from literally every Vioxx settlement claimant.  Such discovery is the only way to determine whether each claimant received benefits from an ERISA-covered health benefit plan and, if so, the identity of the plan – *i.e.*, the purported class member.  Putative classes – like this one – whose definition depends on such an individualized inquiry patently fail the ascertainability requirement of Fed. R. Civ. P. 23.

*Second,* plaintiffs allege that they are "trustees" of ERISA health benefit plans but seek to sue on behalf of ERISA benefit plans themselves.  This disconnect creates two related problems for plaintiffs' proposal:  (1) plaintiffs are not members of the class they seek to certify; and (2) the named plaintiffs are not "typical" of the class they seek to represent because ERISA allows the trustees to sue but the plans themselves do not have standing.

*Third,* plaintiffs' proposed class is not cohesive.  Even if plaintiffs could resolve the ascertainability and typicality problems that doom their class allegations, it is plain from the outset that they do not seek "appropriate" relief with respect to "the class as a whole" as required under Rule 23(b)(2) because the proposed class is not cohesive.  Plaintiffs' entitlement to relief, if any, will depend upon the language of the reimbursement provisions of the plans they purport to sponsor.  The same would be true as to each class member.  These plan provisions naturally vary from one plan to the next, and an individualized inquiry is necessary because Supreme Court precedent makes plain that a plan can only seek reimbursement if its language asserts an equitable entitlement to recover from a particular share of an identifiable fund.  If it is true, as plaintiffs allege, that the class "is composed of hundreds, and likely thousands, of ERISA Health

Plans" (CAC ¶ 20), then no resolution of plaintiffs' claims to relief on behalf of the class will be possible without the examination "of hundreds, and likely thousands" of different plans. And even that task would, at best, only resolve plaintiffs' first requested remedy – the disclosure of names. An additional claimant-by-claimant inquiry would be required to determine whether the claimant had received any benefits, whether the claimant had paid back any of those benefits, and whether the claimant is entitled to assert any fact-specific equitable defenses, such as the "make whole" doctrine. Such a highly individualized proceeding is anathema to class treatment.

For all of these reasons, there is no possibility that plaintiffs' proposal would survive full class-certification scrutiny, and plaintiffs' class claims therefore should be stricken.

## ARGUMENT

The Court should strike the class allegations because it is plain from the complaint that several prerequisites to a class action cannot be met in this case. Accordingly, it would be inefficient and wasteful to proceed with class-certification discovery and briefing.

In order to certify a federal class action, the named plaintiffs must satisfy the four prerequisites contained in Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

In addition, plaintiffs must satisfy the requirements of Rule 23(b)(1), (b)(2) or (b)(3). Plaintiffs here seek certification of a class under Rule 23(b)(2). They must therefore be able to establish that "[t]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The requirement that such relief be "appropriate respecting the class as a whole" has been understood to mean that the class must be "cohesive," an exacting requirement that functions like the predominance requirement of Rule 23(b)(3). *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 (3d Cir. 1998); *Allison v. Citgo Petrol. Corp.*, 151 F.3d 402, 413 (5th Cir. 1998) (noting that a 23(b)(2) class should be a "homogenous and cohesive group with few conflicting interests among its members").

Along with these written requirements, there are also "[t]wo other requirements that are not specifically listed in the rule, presumably because they are self-evident:" "that a definable class must exist and that the representatives must be members of the class." 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1759, at 117 (3d ed. 2005). These are referred to respectively as the ascertainability and membership requirements.

If a plaintiff fails to meet any one of the prerequisites, then the court must deny certification. *See Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).

A court need not await class discovery to shut down an obviously uncertifiable class action. Federal Rule of Civil Procedure 23(d)(4) authorizes a district court "to make appropriate orders . . . requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly." Because plaintiffs bear the burden of showing that each of Rule 23's requirements are met, *see Unger*, 401 F.3d at 320, a court "may strike class allegations under Rule 23(d)(4) where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate." *Henry v. Allstate Ins. Co.*, No. 07-1738, 2007 U.S. Dist. LEXIS 57822, at *6-7 (E.D. La. Aug. 8, 2007).[1] Where – as here – it is clear from the face of plaintiffs' complaint that their proposed

---

[1]      *See also, e.g., Barasich v. Shell Pipeline Co., LP*, No. 05-4180, 2008 U.S. Dist. LEXIS 47474, at *9 n.3 (E.D. La. June 19, 2008) (recognizing that courts often use "Rule 23(d)(4), which authorizes a district court 'to make

class is not certifiable, the better course is to forgo class certification discovery under Rule 23(d)(4) and simply strike the class action allegations. *See, e.g.*, *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of [Rule 23] are satisfied or that discovery is likely to produce substantiation of the class allegations.").

As set forth below, plaintiffs' claims are patently uncertifiable – and their class allegations should therefore be stricken – for multiple reasons. ***First***, certification is inappropriate because there is no way to ascertain the putative members of the proposed class without first giving plaintiffs the information that they ultimately seek as relief. ***Second,*** plaintiffs are neither members of the class they would represent nor typical of the putative class members because plaintiffs are trustees of ERISA health plans, while the putative class consists entirely of ERISA health plans, which have no standing to sue. And ***third***, plaintiffs cannot satisfy Rule 23(b)(2)'s cohesiveness requirement because each putative class member's ability to recover the proceeds of its insureds' settlement funds, if any, would vary based on the specific terms of each health benefit plan's contracts and on facts specific to each settlement claimant.

**I.   PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE MEMBERS OF THE PUTATIVE CLASS CANNOT BE EASILY ASCERTAINED.**

The class allegations should be stricken because plaintiffs' proposed class is not ascertainable without highly individualized factual development.

---

appropriate orders . . . requiring that the pleadings be amended to eliminate therefrom allegations as to the representation of absent persons, and that the action proceed accordingly,' to strike class allegations"); *Aguilar v. Allstate Fire & Cas. Ins. Co.*, No. 06-4660, 2007 U.S. Dist. LEXIS 16073, at *4-5 (E.D. La. Mar. 5, 2007) ("A court may strike class allegations under Rule 23(d)(4) where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate.").

"It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *De Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).  In other words, "the class must meet a minimum standard of definiteness which will allow the trial court to determine membership in the proposed class." *Earnest v. Gen. Motors Corp.*, 923 F. Supp. 1469, 1473 (N.D. Ala. 1996); *see also City of Fairview Heights v. Orbitz, Inc.*, No. 05-CV-840, 2008 WL 895650, at *2 (S.D. Ill. Mar. 31, 2008) ("It is absolutely necessary that for a class action to be certified . . . the class definition must be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member of the proposed class.").  Failure "to meet this minimum standard entitles a court to dismiss the class allegations and proceed with the action on an individual basis." *Id.*  Thus, where it would be impossible to identify class members without conducting an individualized factual inquiry into the specific circumstances of the proposed class members' cases, it is appropriate to strike the class altogether.  *See Barasich*, 2008 U.S. Dist. LEXIS 47474, at *13-14.

In *Barasich*, plaintiffs sought to certify a class of "[a]ll commercial fisherman whose oyster leases were contaminated by oil discharged during Hurricane Katrina due to the negligence" of defendant oil pipelines.  The district court struck plaintiffs' class claims because, *inter alia*, there was no simple way to identify who was and was not a member of the proposed class.  *Id.* at *13-14.  According to the court, "whether an individual is a member of the proposed class . . . cannot be determined without inquiring into the merits of each person's claim," rendering class certification inappropriate as a matter of law.  *Id.*

This case presents similar problems.  Plaintiffs' class would consist of "[a]ll ERISA-covered health benefit plans . . . that (a) have paid or agreed to pay Vioxx-related medical

benefits on behalf of plan beneficiaries who have enrolled or will enroll in the Vioxx settlement and (b) whose plan documents contain notification and/or reimbursement provisions regarding claims against and/or settlements with parties who caused injuries to plan beneficiaries."  (CAC ¶ 18.)

Substantial factual development would be required to determine who is included within the class definition, since plaintiffs admittedly do not know the identity of the "beneficiaries who have enrolled or will enroll in the Vioxx settlement."  Thus, in order to determine which ERISA-covered health benefit plans have paid Vioxx-related expenses, it will fall to the Court to conduct an investigation as to which insurance company (or companies), if any, every single Vioxx settlement claimant was covered by during the relevant period and then determine whether each claimant received benefits from such a plan (or plans) in connection with the injury they attribute to their use of Vioxx.  This kind of factual investigation into the merits of plaintiffs' claims is precisely the sort that *Barasich* held would preclude certification on ascertainability grounds.

Moreover, substantial legal analysis would also be required to determine which plans employed, during the relevant time period, "plan documents [that] contain notification and/or reimbursement provisions regarding claims against and/or settlements with parties who caused injuries to plan beneficiaries" within the meaning of part "(b)" of the class definition.  The legal analysis would be required because, as explained in further detail below, what qualifies as a "reimbursement provision" that could give rise to relief under ERISA is a fact-sensitive legal inquiry.  Again, when resolution of class membership itself depends upon resolution of the merits of the class members' claims, *Barasich* holds that the class definition fails on ascertainability grounds.

In sum, certification is improper in this case because it would be impossible to determine which health benefit plans have reimbursed Vioxx claimants, and whether their plan language provides them with a right to recovery, without delving into the merits of plaintiffs' claims against the proposed class. Accordingly, the proposed class, as defined by plaintiffs, is not ascertainable. As a result, plaintiffs' class claims should be stricken.

## II.     PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE PLAINTIFFS, WHO ARE TRUSTEES, SEEK TO REPRESENT A CLASS OF PLANS.

The class allegations should be stricken for a second, independent reason: Plaintiffs allege that they are ***trustees*** of ERISA health plans but purport to represent a class of ***plans*** (rather than their trustees).[2] As a result, they are not members of the class they would represent, nor are they typical of the absent class members.

### A.     Plaintiffs Are Not Members Of The Class They Seek To Represent.

It is a basic class-action requirement "that the representatives must be members of the class." 7A Wright, Miller & Kane § 1759, at 117; *accord Johnson v. Am. Credit Co. of Ga.*, 581 F.2d 526, 532 (5th Cir. 1978) ("A fundamental requirement is that the representative plaintiff must be a member of the class she wishes to represent."); *White v. Sullivan*, 474 F.2d 16, 17 (5th Cir. 1973) (holding that prisoner could not sue for damages or injunctive relief on behalf of "the class of twenty-six prisoners" of which he was not a member). Failure to meet this requirement dooms a class action.

In *White*, for example, an Alabama state prisoner brought a class action on behalf of prisoners in solitary confinement, charging violations of civil rights. He alleged that the

---

[2]     As noted previously, plaintiffs' class would consist of "[a]ll ERISA-covered health benefit ***plans*** . . . that (a) have paid or agreed to pay Vioxx-related medical benefits on behalf of plan beneficiaries who have enrolled or will enroll in the Vioxx settlement and (b) whose plan documents contain notification and/or reimbursement provisions regarding claims against and/or settlements with parties who caused injuries to plan beneficiaries." (CAC ¶ 18 (emphasis added).)

prisoners in confinement were denied "communicat[ion] with the courts and their attorneys." *Id.* at 17. But White himself "failed to allege that he was in solitary confinement and was then being denied access to the courts." *Id.* Accordingly, the court held, he was not a member of the class he sought to represent and "could not properly maintain" the action. *Id.*

The same is true here. Plaintiffs are not members of the class they would represent because they are not ERISA plans – they are trustees of such plans. For this reason, too, the Court should strike the class allegations.

### B.   Plaintiffs Are Not Typical Of The Putative Class Members.

Plaintiffs also fail the typicality requirement for class certification because although they have ERISA standing, insofar as they are plan trustees, their putative class members – the plans themselves – have no standing to sue.

Rule 23(a)'s "typicality" requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Swoope v. BellSouth Telecomms.*, No. 1:97ov181, 1998 U.S. Dist. LEXIS 11416, at *6 (N.D. Miss. June 23, 1998) (citing *Flanagan v. Ahearn (In re Asbestos Litig.)*, 90 F.3d 963, 976 (5th Cir. 1996)); *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 550 (5th Cir. 1988) (class representatives must possess the same interest and suffer the same injury as the class members). Where the absent class members' claims are subject to legal obstacles not applicable to the proposed representatives, the typicality requirement is not met. *Swoope*, 1998 U.S. Dist. LEXIS 11416, at *7.

In *Swoope*, for example, plaintiffs sought to certify a class of 428 former employees of defendant BellSouth Telecommunications alleging that the company violated ERISA provisions and state common law by terminating their employment. In that case, Bellsouth had fired the employees, offering each one a severance package in exchange for a release of all potential

claims against the Company.  The overwhelming majority of the terminated employees accepted the severance package and signed the release.  However, not one of the proposed class representatives in the action signed the release, rendering them atypical of the absent class members.  *Id*. at *7.  According to the court, "while most members of the class will probably have to litigate the validity of the releases [they signed], the named plaintiffs will not have to do so."  *Id*.  Thus, the court held that "claims or defenses of the named plaintiffs are not typical of the claims or defenses of the class."  *Id*.  As a result, the court granted BellSouth's motion to strike plaintiffs' class claims on grounds that the named plaintiffs "fail[ed] to satisfy the typicality prerequisite" under Rule 23(a).  *Id*.

Precisely the same disparate burdens would exist here, defeating typicality.  Plaintiffs allege that they are trustees, "administrators and fiduciaries" of ERISA health plans.  (CAC ¶¶ 2, 3.)  If plaintiffs were to prove that allegation, they would establish statutory standing to sue under section 502(a)(3) of ERISA, under which they assert entitlement to relief.  (CAC Prelim. Statement.)  But they purport to represent a class of "ERISA Health Plans" – not the fiduciaries of those plans.  (*Id.* ¶ 18.)  The distinction is critical for ERISA purposes – plans cannot sue.

Section 502(a)(3) of ERISA, under which plaintiffs assert their right to relief, states that an action may be brought "by a participant, beneficiary, or fiduciary."  The class members – "ERISA Health Plans" – are plainly not participants or beneficiaries in an ERISA plan.  Neither are they fiduciaries.  Under ERISA and as relevant here, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has discretionary authority or discretionary responsibility in the administration of such plan."  A plan is not a fiduciary; rather, plans have fiduciaries, who

are responsible for administering a plan, as plaintiffs allege they are here.  *See, e.g., Acosta v. Pac. Enters.*, 950 F.2d 611, 618 (9th Cir. 1991) ("A plan covered by ERISA cannot, as an entity, act as a fiduciary with respect to its own assets.").

A "plan" thus does not have standing to sue under section 502(a)(3).  In line with several other circuits that have squarely held that plans lack standing to sue, the Fifth Circuit has intimated it would do the same, explaining that, "[w]here Congress has defined the parties who may bring a civil action founded on ERISA, we are loathe [*sic*] to ignore the legislature's specificity.  Moreover, our previous decisions have hewed to a literal construction of § 1132(a)."  *Coleman v. Champion Int'l Corp./Champion Forest Prods.*, 992 F.2d 530, 534 (5th Cir. 1993) (holding that employer's claim ostensibly falling within ERISA's "zone of interests" did not create standing where employer was not himself a fiduciary).  Although it has never squarely decided the issue, the holding in *Coleman* strongly suggests that the Fifth Circuit would find that a plan lacks standing to sue under section 502(a)(3).  Indeed, the Fifth Circuit's holding in *Coleman* cited the very cases from other circuits that have agreed that plans lack standing to sue.  *See id.* at 534 n.9 (citing (among others) *Ne. Dep't Int'l Ladies Garment Workers Union Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 153-54 (3d Cir. 1985); *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 892 (2d Cir. 1983)).

The standing problem goes to typicality because whether a party has standing directly implicates its "legal and remedial theories."  *Swoope*, 1998 U.S. Dist. LEXIS 11416, at *6.  After all, this Court would lack the power to enter an injunction at all unless it has subject-matter jurisdiction over the case, which in turn depends upon a showing that plaintiffs have properly invoked ERISA both on their own behalf and on behalf of the class.  "As we stated long ago in

reviewing the injunctive power of the district court:  The question of jurisdiction is always vital.

A court must have jurisdiction as a prerequisite to the exercise of discretion.  The question

whether a court abused its discretion necessarily involves the question whether a court has any

discretion to abuse."  *Enter. Int'l, Inc. v. Corp. Estatal Petrolera Ecuatoriana*, 762 F.2d 464,

470-71 (5th Cir. 1985) (citation and quotation marks omitted).

   In sum, because plaintiffs are trustees of plans and thus do not have the same standing

problems that face the class of plans they would represent, they lack similarity in their "legal and

remedial theories," and are thus not typical of the class.

   For this additional reason, the class allegations should be stricken.

## III.   PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE THE PUTATIVE CLASS MEMBERS' CLAIMS ARE NOT COHESIVE.

   Plaintiffs' class allegations should also be stricken for yet another distinct reason:  Their

proposed class lacks the cohesiveness required in cases such as this one that seek certification

under Rule 23(b)(2).

   Although Rule 23(b)(2) "does not expressly contain a predominance and superiority

requirement as does Rule 23(b)(3), certification under Rule 23(b)(2) does not relieve a court of

its obligation to determine whether the existence of individual issues precludes certification."

*Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 495 (S.D. Ill. 1999).  To the contrary, most courts

have recognized that "[a] Rule 23(b)(2) class should actually have more cohesiveness than a

Rule 23(b)(3) class."  *Id.*  As the Fifth Circuit has explained, the "theory underlying . . . Rule

23(b)(2) actions is that there is purportedly a greater degree of  'cohesiveness or unity in the

class' than in 23(b)(3) actions, which minimizes the need for notice and a right to opt out of the

class."  *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993-994 (5th Cir. 1981) (citing Advisory

Committee Notes, 39 F.R.D. at 106); *Barnes*, 161 F.3d at 142-43 (A"(b)(2) class may require

12

more cohesiveness than a (b)(3) class. This is so because in a (b)(2) action, unnamed members are bound by the action without the opportunity to opt out.")

This Court has recognized that there are several "considerations [that] are helpful in determining whether [a] (b)(2) class is cohesive" enough to allow class certification including (1) "whether the plaintiff can establish entitlement to injunctive relief with respect to the class as a whole" so that a "single unitary trial . . . would be manageable at such a unitary trial;" and (2) "whether or not there are significant individual interests that could counsel against certification as a class action." *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 146 n.9 (E.D. La. 2002). Both considerations weigh heavily against certification.

## A.     The Proposed Class Is Not Cohesive Because Plaintiffs' Claims Turn On Highly Individualized Evidence.

A class trial would be unmanageable because each putative class member's right to relief turns on highly individualized evidence related to the specific language of the reimbursement provisions of its benefit plans.

In order to prove that each putative class member is entitled to equitable restitution, plaintiffs must make an affirmative showing that they are entitled to seek reimbursement via an equitable lien.[3]  Thus, plaintiffs must present evidence of the specific plan language used by each health benefit plan.  *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002);

---

[3]     Plaintiffs do not purport to seek the assertion of such a lien in this proceeding, but it is plain that one purpose of the proceeding is to identify Vioxx settlement claimants against whom such a lien could be asserted and to secure declaratory relief confirming as much.  (CAC ¶ 67(f) ("Named Plaintiffs, on behalf of themselves and the other similarly situated ERISA Health Plans comprising the Class, seek declaratory relief in the form of the following determination[]: that the Named Plaintiffs and other ERISA Health Plans comprising the Class are entitled under ERISA (i) to assert a lien against any Vioxx settlement funds received by or on behalf of the Jane Doe Defendants and (ii) be reimbursed by the Jane Doe Defendants from any Vioxx settlement funds that they receive or that are received by other [*sic*] on their behalf, up to the amount of Vioxx-related medical benefits the plans have paid or agreed to pay on behalf of these plan beneficiaries.").)  To grant such relief, the Court would need to perform much (if not all) of the legal analysis that would ultimately be required to approve the assertion of such a lien.

*Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006).[4]  In *Great-West*, the Supreme Court

explained that a fiduciary's right to recover under ERISA is limited.  Noting that ERISA

authorizes a fiduciary to file suit "to obtain other appropriate equitable relief," the Court

explained that "'equitable' relief must mean *something* less than *all* relief."  534 U.S. at 209

(citation and internal quotation marks omitted) (emphasis in original).  Specifically, "the term

'equitable relief' in § 502(a)(3) must refer to those categories of relief that were *typically*

available in equity."  *Id.* at 210 (citation and internal quotation marks omitted) (emphasis in

original).  According to the Court, restitution in *equity* – "ordinarily in the form of a constructive

trust or an equitable lien" – is available only "where money or property identified as belonging in

good conscience to the plaintiff could clearly be traced to particular funds or property in the

defendant's possession."  *Id.* at 213.  When "the property sought to be recovered or its proceeds

have been dissipated so that no product remains, the plaintiff's claim is only that of a general

creditor."  *Id.* at 214 (alterations, citation, and internal quotation marks omitted).  That kind of

claim would impose "a merely personal liability upon the defendant to pay a sum of money" –

*i.e.*, compensatory damages – and is thus a *legal* form of restitution, which is not allowed under

ERISA.  *Id.* at 213 (citation and internal quotation marks omitted).

As a result, a benefit plan's entitlement to relief under ERISA depends in large part on

the language of the plan's contract with its insureds.  *See Sereboff*, 547 U.S. 356.  *Sereboff*

involved a beneficiary who, along with her husband, settled a lawsuit against third parties who

had caused them to incur medical expenses, which had previously been paid for by a health

benefit plan.  Mid Atlantic brought suit, again seeking restitution, arguing that it could identify a

particular fund in the possession of the beneficiaries out of which it was entitled to recover

---

[4]      Plaintiffs themselves acknowledge that any right to relief they may have must be determined in light of
*Sereboff*.  (CAC Prelim. Statement (citing *Sereboff*).)

monies pursuant to a lien created in its favor under the terms of the plan.  The Supreme Court agreed that Mid Atlantic had an equitable basis for its claim based on the specific plan language at issue.  According to the court, "the 'Acts of Third Parties' provision in the Sereboffs' plan specifically identified a particular fund, distinct from the Sereboffs' general assets—'[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)'—and a particular share of that fund to which Mid Atlantic was entitled—'that portion of the total recovery which is due [Mid Atlantic] for benefits paid.'"  *Id.* at 364.  As a result, the court concluded that equitable relief was available.

These cases underscore the necessity of an affirmative showing by plaintiffs and the putative class members that they are indeed entitled by plan language to the relief they seek under the terms of the relevant plans.  One illustrative case in point, decided after *Sereboff*, is *Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006).  *Popowski* addressed two cases – *Popowski* and *BCBS v. Carillo*.  In the first case, the court held that equitable relief was available; in the second case, it held that it was not.  The divergent outcomes depended entirely on plan language. The plan in *Popowski* read in relevant part as follows:

> in any event, the Plan has a lien on any amount recovered by the Covered Person whether or not designated as payment for medical expenses.  This lien shall remain in effect until the Plan is repaid in full.
>
> The Covered Person . . . must repay to the Plan the benefits paid on his or her behalf out of the recovery made from the third party or insurer.

*Id.* at 1370.

The plan in *Carillo*, meanwhile, read in relevant part as follows:

> If, however, the Covered Person receives a settlement, judgment, or other payment relating to the accidental injury or illness from another person, firm, corporation, organization or business entity paid by, or on behalf of, the person or entity who allegedly caused

15

> the injury or illness, the Covered Person agrees to reimburse the
> Plan in full, and in first priority, for any medical expenses paid by
> the Plan relating to the injury or illness.

*Id.* at 1371.

The basis for the divergent outcomes hinged on the second plan's failure to do what the first plan plainly did – *i.e.*, identify a fund out of which reimbursement was to be paid: "any amount recovered." The second plan merely indicated that the Covered Person had an obligation to reimburse the Plan whenever there was a recovery. No fund was identified.

In addition, the specifics of plan language can affect more than a fiduciary's entitlement to relief. Plan language can also implicate affirmative defenses, which in turn can bear on the extent of a fiduciary's recovery even if the right to recovery is established. Some courts, for example, have observed that the "make whole" doctrine is available as an equitable defense if the relevant plan text does not specifically bar it. *See, e.g.*, *Cagle v. Bruner*, 112 F.3d 1510, 1521 (11th Cir. 1997) ("As a default rule, the make whole doctrine applies to limit a plan's subrogation rights where an insured has not received compensation for his total loss and the plan does not explicitly preclude operation of the doctrine.").

In sum, any class trial in this case would turn on highly individualized evidence and legal analysis of each class member's plan language. By plaintiffs' own estimation, the plans at issue here number in the "hundreds, and likely thousands." (CAC ¶ 20.) The factual and legal challenges presented by the class would therefore be highly unmanageable. As courts across the country have recognized, where as here, the proposed class's right to relief cannot be established absent individualized evidence, class certification under 23(b)(2) is inappropriate. *See Arch v. Am. Tobacco Co.*, 175 F.R.D. 469, 482 (E.D. Pa. 1997) ("Rule 23(b)(2) may not be invoked in a case requiring significant individual liability or defense issues which would require separate hearings for each class member in order to establish defendants' liability.")

**B.      The Proposed Class Is Not Cohesive Because The Putative Class Members Have Significant Individual Interests.**

Plaintiffs also fail Rule 23's cohesiveness requirement because the putative class members have "significant individual interests." *In re Propulsid*, 208 F.R.D. at 146 n.9.  In order to certify a Rule 23(b)(2) class, plaintiffs must demonstrate that the proposed class members constitute a "homogeneous and cohesive group" in that they are similarly situated and do not have opposing interests with regard to the litigation.  *Ford v. NYLCare Health Plans, Inc.*, 190 F.R.D. 422, 428 (S.D. Tex. 1999); *Riley v. Compucom Sys.*, No. 3:98-CV-1876, 2000 U.S. Dist. LEXIS 4096, at *12 (N.D. Tex. Mar. 31, 2000) (recognizing that "a (b)(2) class should be 'a homogeneous and cohesive group'").

For example, in *NYLCare Health Plans, Inc.*, the court refused to certify a Rule 23(b)(2) class of physicians seeking both injunctive relief and damages on the ground that the health maintenance organizations ("HMOs") with which they contracted engaged in misleading practices.  190 F.R.D. at 428.  According to the court, "[i]n order to satisfy the requirements of [Rule] 23(b)(2), the proposed class action must involve a group harm or a group remedy."  *Id.* at 428 (citing *Allison*, 151 F.3d at 413.  In that case, the proposed class comprised a group of physicians claiming that, as a result of the HMOs' deceptive practices toward consumers, they were "force[d] . . . into contracts [with HMOs] that reduce the fee for the medical services the [HMOs] authorize."  *Id.* at 424.  However, each of the putative class members had different patients who belonged to different HMOs and, indeed, often competed with one another for patients.  As a result, the court concluded that the named plaintiff "failed to establish that the members of the proposed class are 'homogeneous and cohesive group,' as contemplated by the Rule."  *Id.*

The putative class members here may well find themselves in competition with one another over the significance of various plan terms under *Sereboff*.  Because each plan naturally employs language that will not be identical to the words used in other plans, each plan will argue for an interpretation of *Sereboff* that is most favorable to its own reimbursement language.  In *Popowski*, for example, the administrator of the first plan, which qualified under *Sereboff* as seeking equitable relief, might have urged a more modest reading of *Sereboff* because that is all it needed in order to prevail.  The administrator of the second plan, meanwhile, would have needed to take a more aggressive position – perhaps arguing, for example, that *Sereboff* had simply overruled *Great-West* and cleared the way for all ERISA plans to seek reimbursement. Plainly, different texts would normally influence advocacy.  That fact cuts against cohesion in a class that could include "hundreds, and likely thousands" of members.  (CAC ¶ 20.)

Indeed, it is altogether likely that, as in *NYLCare*, the proposed class here would involve several plans that are either sponsored by businesses that are in competition with one another or insured by insurers that are in competition with one another.  Plaintiffs' proposed class is thus rife with the potential for infighting among companies who may see the litigation as a proxy through which to wage their own competitive battles.

For this further reason, the proposed class is not cohesive.

## **CONCLUSION**

For all the foregoing reasons, the Court should strike the class allegations.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

/s Monique M. Garsaud
JAMES B. IRWIN (Bar No. 7172), T.A.
MONIQUE M. GARSAUD (Bar No. 25393)
400 Poydras Street, Suite 2700
New Orleans, Louisiana  70130
Telephone:  (504) 310-2100
Facsimile:  (504) 310-2101
Email: jirwin@irwinllc.com
         mgarsaud@irwinllc.com

*Attorneys for BROWNGREER, PLC*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Motion to Strike Class Allegations in Plaintiffs' Class Action Complaint has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 1st day of July, 2008.

*/s Monique M. Garsaud*