# Appendix 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAYMOND HART<br>11913 Grason Lane<br>Bowie, MD 20715<br><br>and<br><br>FRANK ROBERTS<br>146 Riverwood Drive<br>Hertford, NC 27944<br><br>and<br><br>RICHARD L. PHILLIPS<br>1115 N. McLean Street<br>St. Lincoln, IL 62656<br><br>and<br><br>LORRAINE D. WILLIAMS<br>2 Cameron Grove Blvd.<br>Upper Marlboro, MD 20774<br><br>and<br><br>PETER JIMACK<br>6 Banavie Road<br>Glasgow, Scotland<br><br>and<br><br>MIRZA M. BAIG<br>Roggeveenstraat 131<br>Amsterdam, Netherlands 1013 PS<br><br>and<br><br>FOKKE FENNEMA<br>Diekeveenseweg 8<br>Westerbork, Netherlands 9431 PS<br><br>and | ]<br>]<br>]<br>]<br>]<br>]<br>]  Civil Action No.<br>]<br>]<br>]<br>]<br>]<br>]<br><br>CASE NUMBER   1:05CV01848<br><br>JUDGE: Reggie B. Walton<br><br>DECK TYPE: Personal Injury/Malpractice<br><br>DATE STAMP: 09/19/2005 |

MILDRED U. GEMERTS ]
Weth. E. Polakstraat 23 ]
Amsterdam, Netherlands 1107 CV ]
]
and ]
]
A.J.H.M. HENDRIKS-SAAT ]
Mr. Boutensstraat 3 ]
Ooij, Netherlands 6576 DG ]
]
and ]
]
IVO G. KNOTTERNUS ]
De Hegge 28 ]
Apeldoorn, Netherlands 7314 JT ]
]
and ]
]
AART KROONEMAN ]
Tulpstraat 4 ]
Oldebroek, Netherlands 8096 BT ]
and ]
]
HUGO PIETERSE ]
Kruisstraat 46 ]
Lage Zwaluwe, Netherlands 4926 AH ]
]
and ]
]
RENE WESSELS ]
Akkerwinde 37 ]
Opmeer, Netherlands 1716 CG ]
]
Plaintiffs, ]
]
v. ]
]
MERCK & CO. INC., ]
One Merck Drive ]
Whitehouse Station, NJ 08889 ]
   w/s/o CT CORPORATION ]
     1025 Vermont Avenue, N.W. ]
     Washington, DC 20005 ]
]
Defendant. ]
]

2

## COMPLAINT
### (Vioxx Litigation)

1. Jurisdiction is founded upon 28 U.S.C. §1332.

2. Plaintiffs are citizens and residents of states other than New Jersey.

3. Defendant Merck & Co. ("Merck"), and/or its wholly-owned subsidiaries, are engaged, or have been engaged, in the manufacturing, marketing, sale, promotion, and distribution of pharmaceuticals throughout the United States, the United Kingdom, the Netherlands and are doing business in the District of Columbia.

4. Defendant is the manufacturer of Vioxx ("VIOXX") who sold and promoted the drug to Plaintiffs, either directly, and/or through its wholly-owned subsidiaries, between May 1999, when VIOXX was approved by the FDA, and September 2004, when it was voluntarily withdrawn from the market

5. VIOXX is a non-steroidal anti-inflammatory medication known as Rofecoxib, which was manufactured, promoted, and distributed by Defendant Merck, and/or its wholly-owned subsidiaries, as a safe and harmless pain medication in the District of Columbia, across America, as well as world wide. Merck Sharpe & Dohme BV (The Netherlands) and Merck Sharpe & Dohme Limited (United Kingdom) are wholly-owned subsidiaries of Merck. At all times relevant hereto, all the marketing, distributing, labeling, and warnings for VIOXX were provided to these subsidiaries by their parent corporation Merck.

6. The amount in controversy exceeds $75,000 exclusive of interest and costs.

7. On or around April 2001 through July 2001, Plaintiff Raymond Hart made several purchases of VIOXX for prescribed treatment of lower back pain by his physician in the state of Maryland. He continued to take this pill for several months

3

until he suffered a heart attack in July 2001 as a proximate result of his ingestion of VIOXX.

8. On or around October 2002, Plaintiff Frank Roberts made several purchases of VIOXX for prescribed treatment of back pain by his physician in the state of North Carolina. He continued to take this pill for one year until he suffered a heart attack in October 2003 as a proximate result of his ingestion of VIOXX.

9. On or around September 1999, Plaintiff Lorraine Williams purchased and took VIOXX for prescribed treatment of arthritis pain by her physician in the state of Maryland. She continued to take this pill for eleven months and suffered a heart attack on May 28, 2000 as a proximate result of her ingestion of VIOXX. She stopped taking the pill in July 2000.

10. On June 18, 2001, Plaintiff Richard Phillips purchased and took VIOXX for prescribed treatment of pain by his physician in the state of Illinois. He continued to take this pill regularly for several years until August 23, 2004. He suffered from a heart attack on December 10, 2002 as a proximate result of his ingestion of VIOXX.

11. On September 18, 2002, Plaintiff Peter Jimack purchased and took VIOXX for prescribed treatment of pain from osteo-arthritis in Scotland and continued to take such pill regularly until September 23, 2003. He suffered from a heart attack on November 9, 2003 as a proximate result of his ingestion of VIOXX.

12. On February 7, 2003, Plaintiff Fokke Fennema purchased and took VIOXX for prescribed treatment of back pain by her physician in The Netherlands. He continued to take this pill regularly for one year until October 1, 2004. He suffered from a stroke on September 6, 2004 as a proximate result of his ingestion of VIOXX.

13. On October 9, 2002, Plaintiff Mirza M. Baig purchased and took VIOXX for prescribed treatment of rheumatic complaints by her physician in The Netherlands. She continued to take the pill for several years until November 5, 2004. She suffered from a heart attack on March 16, 2003 as a proximate result of her ingestion of VIOXX.

14. On July 5, 2000, purchased and took VIOXX for prescribed treatment of rheumatoid arthritis by his physician in The Netherlands. He continued to take the pill for several years until October 1, 2004. He suffered from a heart attack on June 3, 2003 as a proximate result of his ingestion of VIOXX.

15. On March 5, 2001, Plaintiff Ivo G. Knottnerus purchased and took VIOXX for prescribed treatment of arthritis by his physician in The Netherlands. He continued to take the pill for several years until September 25, 2003. He suffered from a stroke on October 14, 2001 as a proximate result of his ingestion of VIOXX.

16. On March 29, 2001, Plaintiff Hugo Pieterse purchased and took VIOXX for prescribed treatment of non-specific pain by his physician in The Netherlands. He continued to take the pill for several years until October 29, 2004. He suffered from a heart attack on October 28, 2002 as a proximate result of his ingestion of VIOXX.

17. On May 9, 2000, Plaintiff A.J.H.M. Hendriks-Saat purchased and took VIOXX for prescribed treatment of arthritis by his physician in The Netherlands. He continued to take the pill for several years until November 4, 2003. He suffered from a heart attack in January 2002 as a proximate result of his ingestion of VIOXX.

18. On April 2, 2004, Plaintiff Mildred Gemerts purchased and took VIOXX for prescribed treatment of arthritis in the neck region by her physician in The

Netherlands. She continued to take the pill for several years until she suffered from a heart attack on June 19, 2004 as a proximate result of her ingestion of VIOXX.

19. On February 26, 2001, Plaintiff Rene Wessels purchased and took VIOXX for prescribed treatment of rheumatic arthritis by her physician in The Netherlands. She continued to take the pill for several years until October 21, 2004. She suffered from a heart attack on March 30, 2003 as proximate result of her ingestion of VIOXX.

20. The Plaintiffs above were not in any manner informed or advised that VIOXX was an unreasonably dangerous drug, nor of the Defendant's, and/or its wholly-owned subsidiaries', wrongful conduct in promoting VIOXX prior to the year 2004.

## FACTS APPLICABLE TO ALL COUNTS

21. Plaintiffs suffered physical injuries, including but not limited to stroke, and heart attack, which have caused and will continue to cause Plaintiffs injury, surgery, pain, suffering, impairment of health and body efficiency, mental anguish, emotional distress, and loss of enjoyment of life.

22. The VIOXX purchased and consumed by Plaintiffs left the possession of the Defendant, and/or its wholly-owned subsidiaries, and entered the stream of commerce with a design defect that caused ischemic events, rendering the VIOXX unreasonably dangerous.

23. The Defendant, and/or its wholly-owned subsidiaries, learned of the risks associated with the use of VIOXX, yet continued to engage in aggressive marketing directly to consumers without providing proper warning about the risk of harm.

## COUNT I
### (Negligence)

24. Defendant, and/or its wholly-owned subsidiaries, had a duty to exercise reasonable care, including but not limited to the following:

   a. Design, manufacture, market and sale of safe drugs

   b. Not manufacture, market and sell unreasonably dangerous drugs.

   c. Properly test VIOXX for safety

   d. Warn of the dangerous properties of VIOXX Defendant, and/or its wholly-owned subsidiaries, knew, should have known, and/or had reason to know existed.

   e. Exercise the necessary degree of care expected and required of manufacturers and sellers of health care products.

25. Defendant, and/or its wholly-owned subsidiaries, were negligent, careless, reckless, willful, wanton, and grossly negligent, and deviated from their duty, including but not limited to the following particulars:

   a. Failure to design, manufacture, market and sell safe drugs.

   b. Manufacture, marketing and sale of unreasonably dangerous drugs.

   c. Failure to properly test VIOXX for safety.

   d. Failure to warn of the dangerous properties of VIOXX Defendant, and/or its wholly-owned subsidiaries, knew, should have known, and/or had reason to know existed.

   e. Failure to exercise the necessary degree of care expected and required of manufacturers and sellers of health care products.

7

26. As a direct and proximate result of Defendant's, and/or its wholly-owned subsidiaries', negligence and failure to warn, Plaintiffs have been injured as aforesaid.

27. Plaintiffs will also continue to suffer additional injuries due to past and future treatment and foreseeable complications, which are a direct and proximate result of Defendant's, and/or its wholly-owned subsidiaries', negligence.

### Count II
### (Breach of Implied Warranty)

28. All of the allegations contained in Count I are realleged and incorporated herein by reference.

29. At all times relevant to this action, Defendant, and/or its wholly-owned subsidiaries, impliedly warranted to the market that VIOXX was safe, effective, fit and proper for its intended use through statements made by Defendant, and/or its wholly-owned subsidiaries, and authorized agents and sales representatives, orally, in publications, package inserts and other written materials, to Plaintiffs, Plaintiffs' physicians and the health care community.

30. Defendant, and/or its wholly-owned subsidiaries knew, or should have known, that consumers, including Plaintiffs and their attending physicians, were relying on Defendant's, and/or its wholly-owned subsidiaries', skills and judgments, and the implied warranties and representations.

31. Defendant, and/or its wholly-owned subsidiaries, had a duty to comply with the warranties made concerning VIOXX. Plaintiffs bought and took VIOXX in reliance on Defendant's, and/or its wholly-owned subsidiaries', warranty.

32. Defendant, and/or its wholly-owned subsidiaries, breached this warranty as the product was found defective, ie., not reasonably fit for its intended purpose, nor

safe when taken in accordance with instructions. As a direct result of the breach of implied warranties, the Plaintiffs have been injured as aforesaid.

33. Defendant, and/or its wholly-owned subsidiaries, impliedly warranted that VIOXX was of good and merchantable quality, reasonably safe and fit for the ordinary purpose for which non-steroidal anti-inflammatory drugs are used.

34. As a direct and proximate result of Defendant's, and/or its wholly-owned subsidiaries', breach of warranties, Plaintiffs were injured and suffered damages as aforesaid.

## COUNT III
### (Strict Liability)

35. All of the allegations contained in Count II are realleged and incorporated herein by reference.

36. VIOXX is, and at all times relevant to this action was, an unreasonably dangerous and defective drug when used by patients for its advertised and intended purpose of the reduction of arthritic pain without the gastric side effects.

37. Defendant, and or its wholly-owned subsidiaries, are engaged or have been engaged in the business of producing VIOXX, and are, or have been, commercial manufacturers of said drug, which has caused harm.

38. Plaintiffs purchased and ingested VIOXX to alleviate pain they were experiencing, and received and ingested VIOXX in the same form and condition as when it left Defendant, and or its wholly-owned subsidiaries', possession.

39. Said product was sold in a defective and unreasonably dangerous condition when placed on the market by Defendant, and/or its wholly-owned subsidiaries.

9

40. VIOXX is a product, which Defendant, and/or its wholly-owned subsidiaries, expected to and did reach Plaintiff consumers or users without any substantial change from the condition in which it was sold. Defendant, and/or its wholly-owned subsidiaries, knew, or should have known, that consumers and their attending physicians could not realize and could not detect the dangerous nature of VIOXX. Sufficient warnings as to the substantial risks associated with VIOXX should have been provided to overcome Defendant's, and/or its wholly-owned subsidiaries', aggressive advertising techniques and campaigns promoting the safety and efficacy of VIOXX.

41. As a result of Defendant's, and/or its wholly-owned subsidiaries', marketing and promotion of said defective and unreasonably dangerous drug, Plaintiffs ingested VIOXX and have suffered injury, loss, and damages as aforesaid.

**WHEREFORE**, Plaintiffs, demands judgment against the Defendant, and/or its wholly-owned subsidiaries, for compensatory damages in the amount of $5,000,000.00 each, and punitive damages in the amount of $ 5,000,000.00 each, together with interest and costs.

Respectfully submitted,

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
1320 19th Street, N.W., Suite 500
Washington, DC 20036
(202) 833-8040

_____
Brandon J. Levine, #412130

_____
Renee L. Robinson-Meyer, #455375

_____
Steven J. Lewis, #472564

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues of material facts.

_____
Aaron M. Levine

11