## MI/SCD BASIS POINT GRID

| | <30 | 30-34 | 35-39 | 40-44 | 45-49 | 50-54 | 55-59 | 60-64 | 65-69 | 70-74 | 75-79 | >79 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Injury 1 & 2** | | | | | | | | | | | | |
| 0-2 months | 666.67 | 625.00 | 583.33 | 541.67 | 500.00 | 416.67 | 395.83 | 375.00 | 333.33 | 250.00 | 208.33 | 166.67 |
| 2-6 months | 750.00 | 703.13 | 656.25 | 609.38 | 562.50 | 468.75 | 445.31 | 421.88 | 375.00 | 281.25 | 234.38 | 187.50 |
| 6-18 months | 833.33 | 781.25 | 729.17 | 677.08 | 625.00 | 520.83 | 494.79 | 468.75 | 416.67 | 312.50 | 260.42 | 208.33 |
| 18-30 months | 916.67 | 859.38 | 802.08 | 744.79 | 687.50 | 572.92 | 544.27 | 515.63 | 458.33 | 343.75 | 286.46 | 229.17 |
| >30 months | 1000.00 | 937.50 | 875.00 | 812.50 | 750.00 | 625.00 | 593.75 | 562.50 | 500.00 | 375.00 | 312.50 | 250.00 |
| **Injury 3** | | | | | | | | | | | | |
| 0-2 months | 466.67 | 437.50 | 408.33 | 379.17 | 350.00 | 291.67 | 277.08 | 262.50 | 233.33 | 175.00 | 145.83 | 116.67 |
| 2-6 months | 525.00 | 492.19 | 459.38 | 426.56 | 393.75 | 328.13 | 311.72 | 295.31 | 262.50 | 196.88 | 164.06 | 131.25 |
| 6-18 months | 583.33 | 546.88 | 510.42 | 473.96 | 437.50 | 364.58 | 346.35 | 328.13 | 291.67 | 218.75 | 182.29 | 145.83 |
| 18-30 months | 641.67 | 601.56 | 561.46 | 521.35 | 481.25 | 401.04 | 380.99 | 360.94 | 320.83 | 240.63 | 200.52 | 160.42 |
| >30 months | 700.00 | 656.25 | 612.50 | 568.75 | 525.00 | 437.50 | 415.63 | 393.75 | 350.00 | 262.50 | 218.75 | 175.00 |
| **Injury 4** | | | | | | | | | | | | |
| 0-2 months | 326.67 | 306.25 | 285.83 | 265.42 | 245.00 | 204.17 | 193.96 | 183.75 | 163.33 | 122.50 | 102.08 | 81.67 |
| 2-6 months | 367.50 | 344.53 | 321.56 | 298.59 | 275.63 | 229.69 | 218.20 | 206.72 | 183.75 | 137.81 | 114.84 | 91.88 |
| 6-18 months | 408.33 | 382.81 | 357.29 | 331.77 | 306.25 | 255.21 | 242.45 | 229.69 | 204.17 | 153.13 | 127.60 | 102.08 |
| 18-30 months | 449.17 | 421.09 | 393.02 | 364.95 | 336.88 | 280.73 | 266.69 | 252.66 | 224.58 | 168.44 | 140.36 | 112.29 |
| >30 months | 490.00 | 459.38 | 428.75 | 398.13 | 367.50 | 306.25 | 290.94 | 275.63 | 245.00 | 183.75 | 153.13 | 122.50 |
| **Injury 5** | | | | | | | | | | | | |
| 0-2 months | 261.34 | 245.01 | 228.67 | 212.34 | 196.01 | 163.34 | 155.17 | 147.00 | 130.67 | 98.00 | 81.67 | 65.34 |
| 2-6 months | 294.01 | 275.63 | 257.26 | 238.88 | 220.51 | 183.75 | 174.57 | 165.38 | 147.00 | 110.25 | 91.88 | 73.50 |
| 6-18 months | 326.68 | 306.26 | 285.84 | 265.42 | 245.01 | 204.17 | 193.96 | 183.75 | 163.34 | 122.50 | 102.09 | 81.67 |
| 18-30 months | 359.34 | 336.88 | 314.42 | 291.97 | 269.51 | 224.59 | 213.36 | 202.13 | 179.67 | 134.75 | 112.29 | 89.84 |
| >30 months | 392.01 | 367.51 | 343.01 | 318.51 | 294.01 | 245.01 | 232.76 | 220.51 | 196.01 | 147.00 | 122.50 | 98.00 |
| **Injury 6** | | | | | | | | | | | | |
| 0-2 months | 156.80 | 147.00 | 137.20 | 127.40 | 117.60 | 98.00 | 93.10 | 88.20 | 78.40 | 58.80 | 49.00 | 39.20 |
| 2-6 months | 176.40 | 165.38 | 154.35 | 143.33 | 132.30 | 110.25 | 104.74 | 99.23 | 88.20 | 66.15 | 55.13 | 44.10 |
| 6-18 months | 196.00 | 183.75 | 171.50 | 159.25 | 147.00 | 122.50 | 116.38 | 110.25 | 98.00 | 73.50 | 61.25 | 49.00 |
| 18-30 months | 215.60 | 202.13 | 188.65 | 175.18 | 161.70 | 134.75 | 128.01 | 121.28 | 107.80 | 80.85 | 67.38 | 53.90 |
| >30 months | 235.20 | 220.50 | 205.80 | 191.10 | 176.40 | 147.00 | 139.65 | 132.30 | 117.60 | 88.20 | 73.50 | 58.80 |

4.  <u>Example</u>. A 50-year-old MI/SCD Qualifying Program Claimant, who sustained a Level 2 Injury and qualified for an Overall Duration of 18-30 months will be assigned 572.92 Basis Points.

B.  Label Adjustment and Consistency Adjustment:

1)  <u>Label Adjustment</u>. The Basis Points of a MI/SCD Qualifying Program Claimant will be adjusted (in accordance with Section 1C of this Exhibit 3.2.1) as follows:

a)  If the Eligible Event occurred on or prior to March 9, 2000, then a *downward* 20% adjustment.

b)  If the Eligible Event occurred after March 9, 2000, but prior to or on April 13, 2002, then an *upward* adjustment of 15%.

c)  If Vioxx use (determined in accordance with Exhibit 2.2.2 to the Agreement) commenced before April 13, 2002 and the Eligible Event occurred after April 12, 2002, then there is *no* adjustment.

d)  If Vioxx use (determined in accordance with Exhibit 2.2.2 to the Agreement) commenced after April 13, 2002 and the Eligible Event occurred after April 13, 2002, then a *downward* adjustment of 15%.

2)  <u>Consistency Adjustment</u>. A MI/SCD Qualifying Program Claimant's consistency of usage shall be determined by analyzing the frequency of use of Vioxx in the twelve (12) months preceding the Eligible Event (such 12-month period, the "Review Period") ("Consistency of Use").

The Consistency of Use will be calculated in accordance with the following:

(i)  If the MI/SCD Qualifying Program Claimant filled more than one prescription during the Review Period, then divide the total number of pills received under such filled prescriptions by the number of days between the date of the dispensing of the first such prescription in the Review Period and the Eligible Event.

(ii)  If the MI/SCD Qualifying Program Claimant filled only one prescription during the Review Period, divide the total number of pills received under such prescription by the number of days between the date such pills were received and the Eligible Event.

(iii)  If the MI/SCD Qualifying Program Claimant's last pre-Eligible Event prescription was dispensed close in time to the Eligible Event such that the number of pills received at that time exceeds the number of days remaining until the Eligible Event, the number of pills from that last filled prescription shall be prorated.

(b)    After the MI/SCD Qualifying Program Claimant's Consistency of Use has been determined, the Consistency Adjustment will be made (in accordance with Section 1C below) as follows:

    (i)    If the Consistency of Use is equal to or greater than 71%, then there will be a 20% *upward* adjustment, *but only if* the MI/SCD Qualifying Program Claimant's Overall Duration is greater than two (2) months. If the Overall Duration is 0 - 2 months, then there will be *no* adjustment.

    (ii)    If the Consistency of Use is between 57 - 70%, there will be a 10% *downward* adjustment, regardless of the Overall Duration.

    (iii)    If the Consistency of Use is between 50 - 56%, then the Consistency Adjustment will be a 20% *downward* adjustment, regardless of the Overall Duration.

    (iv)    If the Consistency of Use is less than 50%, then there is a 30% *downward* Consistency Adjustment, regardless of the Overall Duration.

C.    <u>Calculation of Label and Consistency Adjustments</u>. Once the Label Adjustment and Consistency Adjustment have been determined, those two adjustments shall be *added together*. Then, the MI/SCD Qualifying Program Claimant's Basis Points will be multiplied by the resulting aggregate percentage. The product of that equation is known as the "Subtotal Points" (i.e. Basis Points x [100% + (Label Adjustment Percentage plus Consistency Adjustment Percentage)] = Subtotal Points).

D.    <u>Example</u>. A MI/SCD Qualifying Program Claimant (50-year-old, with a Level 2 Injury, and 18-30 months of Overall Duration) has an Eligible Event on April 4, 2001. The Qualifying Program Claimant had been dispensed 214 pills between April 4, 2000 and April 4, 2001. This Qualifying Program Claimant's Label Adjustment is +15% (*see* 1B(1)(b)) and his Consistency Adjustment is -10% (58% -- 214 pills/366 days -- *see* 1B(2)(b)(ii)) for an aggregate Label Adjustment and Consistency Adjustment of +5% (15% - 10%). So, in this example, the Sub-Total Points would be 601.57 (572.92 Basis Pts x 5% -- aggregate Label and Consistency Adjustment; or 572.92 x 105%).

E.    <u>Risk Factor Adjustments</u>.

    1)    The definition of the relevant risk factors for purposes of evaluating the MI/SCD Qualifying Program Claimant's claim and the assigned percentage adjustment per risk factor are as follows:

# MI/SCD RISK FACTORS

| | Risk Factor | Definition | Reduction |
|---|---|---|---|
| | Regular Smoking | • Current tobacco product user. "Current User" is anyone who has used cigarettes or cigars within one (1) year of the Eligible Event. | • 30% |
| | Extreme Smoking | • Evidence of being a Current User within one (1) year of the Eligible Event and a pack history of 30 years or more. | • 50% |
| | Post-Eligible Event Smoking | • Any cigarette or cigar use that post-dates the Eligible Event. | • 20% |
| | Cholesterol | • *Controlled:* Any history of or diagnosis of hypercholesterolemia within 3 years prior to the Eligible Event, at the time of the Eligible Event or within 2 weeks after the Eligible Event; or presence of statin (or other cholesterol-lowering medication) in medical records or pharmacy records within 3 years prior to, at the time of (including if the medication is initiated as a treatment during or at discharge from the Eligible Event) or within two weeks after the Eligible Event. | • 20% |
| | | • *Uncontrolled:* Any history of or notation of a treating physician of non-compliance with cholesterol medication, uncontrolled cholesterol, poorly controlled cholesterol, cholesterol not medically controlled or similar reference within 3 years prior to the Eligible Event, at the time of the Eligible Event or within two weeks after the Eligible Event . | • 30% |

| | | | | |
|---|---|---|---|---|
| | Hypertension | • *Controlled:* Any history or diagnosis of hypertension in medical records within 3 years prior to the Eligible Event, at time of the Eligible Event, or within 2 weeks after the Eligible Event; or presence of hypertension medication in medical or pharmacy records at the time of (including if the medication is initiated as a treatment during or at discharge from the Eligible Event), within 3 years prior to, or within two weeks after the Eligible Event. | • 20% | |
| | | • *Uncontrolled:* Any history or notation of a treating physician of non-compliance with hypertension medication, uncontrolled hypertension, poorly controlled hypertension, hypertension not medically controlled or similar reference within 3 years prior to the Eligible Event, at the time of the Eligible Event or within two weeks after the Eligible Event . | • 30% | |
| | Diabetes | • *Controlled:* Any history of or diagnosis of diabetes within 3 years prior to the Eligible Event, at the time of the Eligible Event or within 2 weeks after the Eligible Event; or presence of diabetic medication in medical records or pharmacy records within 3 years prior to, at the time of (including if the medication is initiated as a treatment during or at discharge from the Eligible Event) or within two weeks after the Eligible Event. | • 20% | |
| | | • *Uncontrolled:* Any history of or notation of a treating physician of non-compliance with diabetic medication, | • 30% | |

- 8 -

| | | | | |
|---|---|---|---|---|
| | | uncontrolled diabetes, poorly controlled diabetes, diabetes not medically controlled or similar reference within 3 years prior to the Eligible Event, at the time of the Eligible Event or within two weeks after the Eligible Event. | | |
| | Obesity | • At the Eligible Event, BMI ≥ 30 kg/m | • 17.5% | |
| | | • At the Eligible Event, BMI ≥ 40 kg/m | • 40% | |
| | | • At the Eligible Event, BMI ≥ 50 kg/m | • 60% | |
| | Family History | | | |
| • Unambiguous | | • First degree relative (sibling or parent) with early-onset MI/SCD - male relative at 55 years of age or less and female at 65 years of age or less. | • 25% | |
| • Ambiguous | | • Family history noted as a cardiovascular risk factor , without specifying the age, gender or relationship of the family member(s) to the Eligible Claimant. | • 15% | |
| | Alcohol Abuse | • Notation of alcohol abuse within five years of the Eligible Event. | • 45% | |
| | Prior MI or Coronary Artery Bypass Graft ("CABG") | • Documented MI prior to initiation of Vioxx; or <br>• CABG prior to initiation of Vioxx. | • 55% | |
| | Pre-existing Coronary Artery Disease ("CAD") | • Any diagnosis of CAD or ischemic heart disease prior to initiation of Vioxx, other than a MI or CABG. | • 33% | |
| | Prior Diagnosed Vascular Disease | • A diagnosis of any of the following prior to the Eligible Event: Carotid Stenosis, Peripheral Vascular Disease, Cebrovascular Disease, or Renal Stenosis. | • 10% | |

| | | | |
|---|---|---|---|
| Illegal Drug Use | • Illicit drug use (including, but not limited to, cocaine, LSD, and heroin, but excluding marijuana) prior to the Eligible Event. | • 25% (*within 5 years*)<br>• 95% (*within 1 year*) | |
| Trigger | • <u>As referenced only in Event Records</u>, vigorous exercise within two hours of the onset of Eligible Event symptoms by those who do not routinely exercise (including, without limitation, climbing hills, skiing, surfing, distance biking, etc.); or total joint arthroplasty or other major surgery within 5 days of the Eligible Event; or gambling. | • 25%<br>• 50%, but only if surgery trigger | |
| Accelerators | • MI or CABG plus Smoking (Regular or Extreme) or BMI ≥ 40;<br><br>• BMI ≥ 50 plus Smoking (Regular or Extreme); or<br><br>• CAD plus Extreme Smoking | • 90% | |

2)   The Risk Factor Adjustments made to the *Subtotal Points* will be calculated in a sequential order as follows:

   (a)   Obesity

        i.   BMI at Eligible Event  30-39: - 17.5%
        ii.  BMI at Eligible Event  40-49: - 40%
        iii. BMI at Eligible Event  50 or greater: - 60%

   (b)   Cholesterol

        i.   Controlled: - 20%
        ii.  Uncontrolled: - 30%

   (c)   HTN

        i.   Controlled: - 20%
        ii.  Uncontrolled: - 30%

   (d)   Diabetes

        i.   Controlled: - 20%
        ii.  Uncontrolled: - 30%

- 10 -

(e)     Prior Diagnosed Vascular Disease (PVD): - 10%

(f)     Prior MI or CABG: - 55%

(g)     Extreme Smoking: - 50%

(h)     Regular Smoking: - 30%

(i)     Post-Eligible Event Smoking: - 20%

(j)     Family History:

      i.     Ambiguous: - 15%
      ii.    Unambiguous: - 25%

(k)     Coronary Artery Disease ("CAD"): - 33% (no deduction for this risk factor if the Qualifying Program Claimant has been assessed with the prior MI or CABG risk factor).

(l)     Illegal Drug Use:

      i.     Within 5 years of Eligible Event: - 25%
      ii.    Within 1 year of Eligible Event: - 95%

(m)     Alcohol Abuse: - 45%

(n)     Trigger: - 25%; or -50% for surgery trigger

(o)     Accelerators: - 90%

      i)     If the MI/SCD Qualifying Program Claimant is found to suffer from any of the following constellations of risk factors, then the Qualifying Program Claimant will be assessed a 90% deduction from the number of Points that exist after sequential deductions for all other risk factors have been taken from the MI/SCD Qualifying Program Claimant's Subtotal Points:

      •     Prior MI or CABG plus Smoking (Regular or Extreme) or BMI ≥ 40;
      •     BMI ≥ 50 plus Smoking (Regular or Extreme); or
      •     CAD plus Extreme Smoking.

3)     <u>Example</u>. A 50-year-old MI/SCD Qualifying Program Claimant who sustained a Level 2 Injury and utilized the PRODUCT for an Overall Duration of 18-30 months. The Claimant's Eligible Event occurred on April 4, 2001. In the 12 months prior to the Eligible Event, the MI/SCD Claimant was dispensed 214 pills. The MI/SCD Claimant suffered from the following factors: (1) Obesity (BMI of

- 11 -

33.4 at Eligible Event); (2) Controlled Cholesterol; (3) Controlled Hypertension; and (4) Ambiguous Family History of heart disease.

- Basis Points                                572.92
  -- Label Adjustment                         +15%
  -- Consistency Adjustment                   -10%
- Sub-Total Points                            601.57
  -- Obesity                                  -17.5%
                                              496.30
  -- Controlled Cholesterol                   -20%
                                              397.04
  -- Controlled HTN                           -20%
                                              317.63
  -- Ambiguous Family                         -15%
     History

          **TOTAL POINTS:**        **269.98**

2.    *IS QUALIFYING PROGRAM CLAIMANT*

A.    Basis Points: The Basis Points awarded to an IS Qualifying Program Claimant will depend upon: (1) the age of the Qualifying Program Claimant at the time of the Eligible Event; (2) the Qualifying Program Claimant's Overall Duration; and (3) the Qualifying Program Claimant's Injury Level.

   1)   Overall Duration. The IS Qualifying Program Claimant's Overall Duration of use of the PRODUCT shall be calculated in accordance with the following (and Exhibit 2.2.2 to the Agreement):

      a)   To establish placement in an Overall Duration category, the Qualifying Program Claimant must produce evidence of Vioxx prescriptions dispensed or samples dispensed in accordance with the following pill count definitions (and Exhibit 2.2.2 to the Agreement):

- 12 -

| Number of Pills Dispensed | Overall Duration Category |
|---|---|
| 42 pills or less | Less than 60 days |
| at least 43 pills but less than 128 pills | Over 2 months to 6 months |
| at least 128 pills but less than 389 pills | Over 6 months up to 18 months |
| at least 389 pills but less than 639 pills | Over 18 months up to 30 months |
| at least 639 pills | 30 months or more |

  b)   If the IS Qualifying Program Claimant is dispensed a number of pills at a time that exceeds the number of days remaining until the Eligible Event, the number of pills from that last filled prescription shall be prorated for the purposes of calculating Overall Duration at one pill per day.

 2)   Injury Level.  The injury level suffered by the IS Qualifying Program Claimant will be determined by the Claims Administrator utilizing the following criteria:

---

**IS INJURY LEVELS**

Level 1

- *Death*

Level 2

- *Disability such that IS Qualifying Program Claimant requires Full Time Care in either a nursing care facility or in-home nursing care (and did not need full-time care prior to the Eligible Event).  Full-Time Care means care that is administered by a nurse or independent caregiver (that is, other than a friend or family member) for 8 hours or more each day.*

Level 3

  *Disability such that the IS Qualifying Program Claimant requires some assistance to perform one or more BADLs (but does not require Full-Time Care), provided that the Qualifying Program Claimant did not need such assistance prior to the Eligible Event; or diagnosis at time of Eligible Event and continuing for at least one year thereafter of aphasia or hemianopsia.*

Level 4

- *Disability such that the IS Qualifying Program Claimant requires some assistance to perform one or more IADL's, provided that the Qualifying Program Claimant did not require such assistance prior to the Eligible Event.*

---

- 13 -

Level 5

• *Any injury not qualifying for Injury Levels 1, 2, 3 or 4.*

The Basic Activities of Daily Living ("BADLs") are:  Dressing, Eating, Ambulating, Toileting, and Hygiene.

The Instrumental Activities of Daily Living ("IADLs") are:  Ability to use the telephone, ability to prepare and serve meals, ability to do laundry, ability to manage day to day finances, ability to participate in housekeeping tasks, and ability to travel outside the home.

Whether the IS Qualifying Program Claimant is independent in any BADL or IADL shall be determined solely from Claimant's medical records dated within 6 months of the Eligible Event.

For an IS Qualifying Program Claimant to qualify as requiring assistance in the performance of a BADL or IADL, the Qualifying Program Claimant must require assistance for at least 6 months following the date of the Eligible Event.

       3)    <u>Basis Points Grid</u>.  Once the age, Overall Duration and Injury Level for the IS Qualifying Program Claimant have been determined, each Qualifying Program Claimant's Basis Points will be assigned utilizing the following grid:

## IS BASIS POINT GRID

| | <30 | 30-34 | 35-39 | 40-44 | 45-49 | 50-54 | 55-59 | 60-64 | 65-69 | 70-74 | 75-79 | >79 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Injury 1** | | | | | | | | | | | | |
| 0-2 months | 466.67 | 411.76 | 384.31 | 356.86 | 329.41 | 274.51 | 260.78 | 247.06 | 219.61 | 164.71 | 109.80 | 54.90 |
| 2-6 months | 525.00 | 463.24 | 432.35 | 401.47 | 370.59 | 308.82 | 293.38 | 277.94 | 247.06 | 185.29 | 123.53 | 61.76 |
| 6-18 months | 583.33 | 514.71 | 480.39 | 446.08 | 411.76 | 343.14 | 325.98 | 308.82 | 274.51 | 205.88 | 137.25 | 68.63 |
| 18-30 months | 641.67 | 566.18 | 528.43 | 490.69 | 452.94 | 377.45 | 358.58 | 339.71 | 301.96 | 226.47 | 150.98 | 75.49 |
| >30 months | 700.00 | 617.65 | 576.47 | 535.29 | 494.12 | 411.76 | 391.18 | 370.59 | 329.41 | 247.06 | 164.71 | 82.35 |
| **Injury 2** | | | | | | | | | | | | |
| 0-2 months | 666.67 | 588.24 | 549.02 | 509.80 | 470.59 | 392.16 | 372.55 | 352.94 | 313.73 | 235.29 | 156.86 | 78.43 |
| 2-6 months | 750.00 | 661.76 | 617.65 | 573.53 | 529.41 | 441.18 | 419.12 | 397.06 | 352.94 | 264.71 | 176.47 | 88.24 |
| 6-18 months | 833.33 | 735.29 | 686.27 | 637.25 | 588.24 | 490.20 | 465.69 | 441.18 | 392.16 | 294.12 | 196.08 | 98.04 |
| 18-30 months | 916.67 | 808.82 | 754.90 | 700.98 | 647.06 | 539.22 | 512.25 | 485.29 | 431.37 | 323.53 | 215.69 | 107.84 |
| >30 months | 1000.00 | 882.35 | 823.53 | 764.71 | 705.88 | 588.24 | 558.82 | 529.41 | 470.59 | 352.94 | 235.29 | 117.65 |
| **Injury 3** | | | | | | | | | | | | |
| 0-2 months | 333.33 | 294.12 | 274.51 | 254.90 | 235.29 | 196.08 | 186.27 | 176.47 | 156.86 | 117.65 | 78.43 | 39.22 |
| 2-6 months | 375.00 | 330.88 | 308.82 | 286.76 | 264.71 | 220.59 | 209.56 | 198.53 | 176.47 | 132.35 | 88.24 | 44.12 |
| 6-18 months | 416.67 | 367.65 | 343.14 | 318.63 | 294.12 | 245.10 | 232.84 | 220.59 | 196.08 | 147.06 | 98.04 | 49.02 |
| 18-30 months | 458.33 | 404.41 | 377.45 | 350.49 | 323.53 | 269.61 | 256.13 | 242.65 | 215.69 | 161.76 | 107.84 | 53.92 |
| >30 months | 500.00 | 441.18 | 411.76 | 382.35 | 352.94 | 294.12 | 279.41 | 264.71 | 235.29 | 176.47 | 117.65 | 58.82 |
| **Injury 4** | | | | | | | | | | | | |
| 0-2 months | 166.67 | 147.06 | 137.25 | 127.45 | 117.65 | 98.04 | 93.14 | 88.24 | 78.43 | 58.82 | 39.22 | 19.61 |
| 2-6 months | 187.50 | 165.44 | 154.41 | 143.38 | 132.35 | 110.29 | 104.78 | 99.26 | 88.24 | 66.18 | 44.12 | 22.06 |
| 6-18 months | 208.33 | 183.82 | 171.57 | 159.31 | 147.06 | 122.55 | 116.42 | 110.29 | 98.04 | 73.53 | 49.02 | 24.51 |
| 18-30 months | 229.17 | 202.21 | 188.73 | 175.25 | 161.76 | 134.80 | 128.06 | 121.32 | 107.84 | 80.88 | 53.92 | 26.96 |
| >30 months | 250.00 | 220.59 | 205.88 | 191.18 | 176.47 | 147.06 | 139.71 | 132.35 | 117.65 | 88.24 | 58.82 | 29.41 |
| **Injury 5** | | | | | | | | | | | | |
| 0-2 months | 116.67 | 109.38 | 102.08 | 94.79 | 87.50 | 72.92 | 69.27 | 65.63 | 58.33 | 43.75 | 29.17 | 14.58 |
| 2-6 months | 131.25 | 123.05 | 114.84 | 106.64 | 98.44 | 82.03 | 77.93 | 73.83 | 65.63 | 49.22 | 32.81 | 16.41 |
| 6-18 months | 145.83 | 136.72 | 127.60 | 118.49 | 109.38 | 91.15 | 86.59 | 82.03 | 72.92 | 54.69 | 36.46 | 18.23 |
| 18-30 months | 160.42 | 150.39 | 140.36 | 130.34 | 120.31 | 100.26 | 95.25 | 90.23 | 80.21 | 60.16 | 40.10 | 20.05 |
| >30 months | 175.00 | 164.06 | 153.13 | 142.19 | 131.25 | 109.38 | 103.91 | 98.44 | 87.50 | 65.63 | 43.75 | 21.88 |

- 15 -

4.     <u>Example</u>.  A 50-year-old IS Qualifying Program Claimant, who sustained a Level 3 Injury and qualified for an Overall Duration of 18-30 months will be assigned 269.61 Basis Points.

B.     Label Adjustment and Consistency Adjustment:

1)     <u>Label Adjustment</u>.  The Basis Points of an IS Qualifying Program Claimant will be adjusted (in accordance with Section 2C of this Exhibit 3.2.1) as follows:

a)     If the Eligible Event occurred on or prior to March 9, 2000, then a *downward* 20% adjustment.

b)     If the Eligible Event occurred after March 9 2000, but prior to or on April 13, 2002, then an *upward* adjustment of 15%.

c)     If the Vioxx use (determined in accordance with Exhibit 2.2.2. to the Agreement) occurred before April 13, 2002 and the Eligible Event occurred after April 12, 2002, then there is *no* adjustment.

d)     If the Vioxx use (determined in accordance with Exhibit 2.2.2. to the Agreement) commenced after April 13, 2002 and the Eligible Event occurred after April 13, 2002, then a *downward* adjustment of 15%.

2)     <u>Consistency Adjustment</u>.  An IS Qualifying Program Claimant's consistency of usage shall be determined by analyzing the Qualifying Program Claimant's frequency of use of the PRODUCT in the twelve (12) months preceding the Eligible Event (such 12-month period, the "Review Period") ("Consistency of Use").

(a)     The Consistency of Use will be calculated in accordance with the following:

(i)     If the IS Qualifying Program Claimant received more than one prescription during the Review Period, then divide the total number of pills received under such filled prescriptions by the number of days between the date of the dispensing of the first such prescription in the Review Period and the Eligible Event.

(ii)     If the IS Qualifying Program Claimant filled only one prescription during the Review Period, divide the total number of pills received under such filed prescriptions by the number of days between the date such pills were received and the Eligible Event.

(iii)     If the IS Qualifying Program Claimant's last pre-Eligible Event prescription was dispensed close in time to the Eligible Event such that the number of pills received at that time exceeds the number of days remaining until the Eligible Event, the number of pills from that last filled prescription shall be prorated.

       (b)      After the IS Qualifying Program Claimant's Consistency of Use has been determined, the Consistency Adjustment will be made (in accordance with Section 2C below) as follows:

            (i)      If the Consistency of Use is equal to or greater than 71%, then there will be a 20% *upward* adjustment, *but only if* the IS Qualifying Program Claimant's Overall Duration is greater than two (2) months. If the Overall Duration is 0 - 2 months, then there will be *no* adjustment.

            (ii)     If the Consistency of Use is between 57 - 70%, there will be a 10% *downward* adjustment, regardless of the Overall Duration.

            (iii)    If the Consistency of Use is between 50 - 56%, then the Consistency Adjustment will be a 20% *downward* adjustment, regardless of the Overall Duration.

            (iv)    If the Consistency of Use is less than 50% then there is a 30% *downward* Consistency Adjustment, regardless of the Overall Duration.

C.     <u>Calculation of Label and Consistency Adjustments</u>. Once the Label Adjustment and Consistency Adjustment have been determined, those two adjustments shall be *added together*. Then, the IS Qualifying Program Claimant's Basis Points will be multiplied by the resulting aggregate percentage. The product of that equation is known as the "Subtotal Points" (i.e. Basis Points x [100% +.(Label Adjustment percentage plus Consistency Adjustment percentage)] = Subtotal Points).

D.     <u>Example</u>. An IS Qualifying Program Claimant (50-year-old, with a Level 3 Injury, and 18-30 months of Overall Duration) has an Eligible Event on April 4, 2001. Prior to that time, the Qualifying Program Claimant had been dispensed 214 pills between April 4, 2000 and April 4, 2001. The Qualifying Program Claimant's Label Adjustment is +15% (*see* 2B(1)(b)) and his Consistency Adjustment is -10% (58% -- 214 pills/366 days -- *see* 2B(2)(b)(ii)) for an aggregate Label Adjustment and Consistency Adjustment of +5% (15% - 10%). So, in this example, the Sub-Total Points would be 283.10 (269.61 Basis Pts x 5% -- aggregate Label and Consistency Adjustment; or 269.61 x 105%).

E.     <u>Risk Factor Adjustments</u>.

     1)     The definition of the relevant risk factors for purposes of evaluating the IS Qualifying Program Claimant's claim and the assigned percentage adjustment per risk factor are as follows

## IS RISK FACTORS

| | Risk Factor | Definition | Reduction |
|---|---|---|---|
| | Regular Smoking | • Current tobacco product user. "Current User" is anyone who has used cigarettes or cigars within one (1) year of the Eligible Event. | • 30% |
| | Extreme Smoking | • Evidence of being a Current User within one (1) year of the Eligible Event and a pack history of 30 years or more. | • 50% |
| | Post-Eligible Event Smoking | • Any cigarette or cigar use that post-dates the Eligible Event. | • 20% |
| | Smoking Plus Birth Control Use within 1 Month of Eligible Event | • Regular or Extreme Smoking plus use of prescription birth control occurring within one month of the Eligible Event. | • 55% - with Regular Smoking; or • 70% - with Extreme Smoking |
| | Cholesterol | • *Controlled:* Any history of or diagnosis of hypercholesterolemia within 3 years prior to the Eligible Event, at the time of the Eligible Event or within 2 weeks after the Eligible Event; or presence of statin (or other cholesterol-lowering medication) in medical records or pharmacy records within 3 years prior to, at the time of (including if the medication is initiated as a treatment during or at discharge from the Eligible Event) or within two weeks after the Eligible Event. | • 10% |
| | | • *Uncontrolled:* Any history of or notation of a treating physician of non-compliance with cholesterol medication, uncontrolled cholesterol, poorly controlled cholesterol, cholesterol not medically controlled or similar reference within 3 | • 20% |

- 18 -

| | | years prior to the Eligible Event, at the time of the Eligible Event or within two weeks after the Eligible Event . | |
|---|---|---|---|
| | Hypertension | *Controlled:* Any history or diagnosis of hypertension in medical records within 3 years prior to the Eligible Event, at time of the Eligible Event, or within 2 weeks after the Eligible Event; or presence of hypertension medication in medical or pharmacy records at the time of (including if the medication is initiated as a treatment during or at discharge from the Eligible Event), within 3 years prior to, or within two weeks after the Eligible Event.<br><br>*Uncontrolled:* Any history or notation of a treating physician of non-compliance with hypertension medication, uncontrolled hypertension, poorly controlled hypertension, hypertension not medically controlled or similar reference within 3 years prior to the Eligible Event, at the time of the Eligible Event or within two weeks after the Eligible Event. | •    30%<br><br><br><br><br><br><br><br><br><br>•    40% |

| | | | | |
|---|---|---|---|---|
| | Diabetes | • | *Controlled:* Any history of or diagnosis of diabetes within 3 years prior to the Eligible Event, at the time of the Eligible Event or within 2 weeks after the Eligible Event; or presence of diabetic medication in medical records or pharmacy records within 3 years prior to, at the time of (including if the medication is initiated as a treatment during or at discharge from the Eligible Event) or within two weeks after the Eligible Event. | • 20% |
| | | • | *Uncontrolled:* Any history of or notation of a treating physician of non-compliance with diabetic medication, uncontrolled diabetes, poorly controlled diabetes, diabetes not medically controlled or similar reference within 3 years prior to the Eligible Event, at the time of the Eligible Event or within two weeks after the Eligible Event. | • 30% |
| | Obesity | • | At the Eligible Event, BMI ≥ 30 kg/m | • 17.5% |
| | | • | At the Eligible Event, BMI ≥ 40 kg/m | • 40% |
| | | • | At the Eligible Event, BMI ≥ 50 kg/m | • 60% |
| | Family History • Unambiguous • Ambiguous | • | First degree relative (sibling or parent) with early-onset stroke - male relative at 55 years of age or less and female at 65 years of age or less. | • 25% |
| | | • | Family history noted as a stroke risk factor, without specifying the age, gender or relationship of the family member(s) to the Eligible Claimant. | • 15% |
| | Alcohol Abuse | • | Notation of alcohol abuse within five years of the Eligible Event. | • 45% |
| | Prior MI or Coronary Artery Bypass Graft ("CABG") | • | Documented MI prior to initiation of Vioxx; | • 55% |
| | | • | CABG prior to initiation of Vioxx. | |
| | Prior Stroke or TIA | • | Documented stroke prior to initiating Vioxx; or | • 55% |
| | | • | Documented TIA prior to initiating Vioxx, other than MI or CABG. | |
| | Pre-existing Coronary | • | Any diagnosis of CAD or ischemic | • 33% |

| | | |
|---|---|---|
| Artery Disease ("CAD") | heart disease prior to initiation of Vioxx, other than a MI or CABG. | |
| Pre-Diagnosed Caratoid Artery Disease or Prior Caratoid Artery Procedure | • Documented carotid artery disease before initial use of Vioxx other than a stroke or a TIA; or<br>• Documented carotid artery procedure (e.g. stenting or endarterectomy) before initiation of Vioxx. | • 33% |
| Prior Diagnosed Vascular Disease | • A diagnosis of any of the following prior to the Eligible Event: Carotid Stenosis, Peripheral Vascular Disease , Cebrovascular Vascular Disease, or Renal Stenosis. | • 10% |
| Prior Artrial Fibrillation or Heart Failure | • Documented Artrial Fibrillation or Heart Failure/Congestive Heart Failure prior to the Eligible Event. | • 40% |
| Diagnosis of Migraine Headache | • Diagnosis of migraine headaches prior to Eligible Event; or presence of medication to treat or prevent migraine headaches in pharmacy records. | • 15% |
| Hormone Replacement Therapy | • Evidence of Qualifying Program Claimant's use of hormone replacement therapy within one (1) month of the Eligible Event and initiated within 1 year of the Eligible Event. | • 15% |
| Illegal Drug Use | • Illicit drug use (including, but not limited to, cocaine, LSD, and heroin, but excluding marijuana) prior to the Eligible Event. | • 25% (*within 5 years*)<br><br>• 95% (*within 1 year*) |
| Trigger | • <u>As referenced in Eligible Event Records,</u> vigorous exercise within two hours of the onset of Eligible Event symptoms by those who do not routinely exercise (including, without limitation, climbing hills, skiing, surfing, distance biking, etc.); a head trauma, or total joint arthroplasty or other major surgery within 5 days of the Eligible Event; or gambling. | • 25%; or<br><br>• 50%, but *only* if surgery or head trauma trigger |
| Accelerators | • Prior MI or CABG or Stroke or TIA plus Smoking (Regular or Extreme) or BMI ≥ 40;<br><br>○ BMI ≥ 50 plus Smoking (Regular or Extreme); or<br><br>• CAD or Carotid Artery Disease or Procedure plus Extreme Smoking. | • 90% |

2)      The Risk Factor Adjustments made to the *Subtotal Points* will be calculated in a sequential order as follows:

- 21 -

(a)   Obesity

    i.    BMI at Eligible Event  30-39: - 17.5%
    ii.   BMI at Eligible Event  40-49: - 40%
    iii.  BMI at Eligible Event  50 or greater: - 60%

(b)   Cholesterol

    i.    Controlled: - 10%
    ii.   Uncontrolled: - 20%

(c)    HTN

        i.      Controlled: - 30%
        ii.     Uncontrolled: - 40%

(d)    Diabetes

        i.      Controlled: - 20%
        ii.     Uncontrolled: - 30%

(e)    Prior MI or CABG: - 55%

(f)    Prior Stroke or TIA: -55%

(g)    Prior diagnosed Carotid Artery Disease or prior Carotid Artery Procedure: -33%

(h)    Coronary Artery Disease ("CAD"): - 33% (no deduction for this risk factor if the Qualifying Program Claimant has been assessed with the prior MI/CABG risk factor).

(i)    Prior Diagnosed Vascular Disease (PVD): - 10%

(j)    Extreme Smoking: - 50%

(k)    Regular Smoking: - 30%

(l)    Post-Eligible Event Smoking: - 20%

(m)    Smoking plus Birth Control (if this risk factor is assessed, then the Claimant shall not also be assessed for the Smoking-Regular or Extreme-risk factor):

        i.      Regular Smoking plus Birth Control: -55%
        ii.     Extreme Smoking plus Birth Control: -70%

(n)    Family History:

        i.      Ambiguous: - 15%
        ii.     Unambiguous: - 25%

(o)    Prior Atrial Fibrillation or Heart Failure: -40%

(p)    HRT: -15%

(q)    Migraine: -15%

(r)    Illegal Drug Use:

         i.      Within 5 years of Eligible Event: - 25%

         ii.     Within 1 year of Eligible Event: - 95%

(s)    Alcohol Abuse: - 45%

(t)    Trigger: - 25%; -50% for surgery or head trauma trigger

(u)    Accelerators - 90%

        i)     If the IS Qualifying Program Claimant is found to suffer from any of the following constellations of risk factors, then the Qualifying Program Claimant will be assessed an additional 90% deduction from the number of Points that exist after sequential deductions for the other risk factors have been taken from the IS Qualifying Program Claimant's Subtotal Points:

- Prior MI or CABG or Stroke or TIA plus Smoking (Regular or Extreme) or BMI ≥ 40;
- BMI ≥ 50 plus Smoking (Regular or Extreme); or
- CAD or Carotid Artery Disease or Procedure plus Extreme Smoking.

3)    <u>Example</u>. A 50-year-old IS Qualifying Program Claimant who sustained a Level 3 Injury and utilized the PRODUCT for an Overall Duration of 18-30 months. The Claimant's Eligible Event occurred on April 4, 2001. In the 12 months prior to the Eligible Event, the IS Claimant was dispensed 214 pills. The IS Claimant suffered from the following factors: (1) Obesity (BMI of 33.4 at Eligible Event); (2) Controlled Cholesterol; (3) Controlled Hypertension; and (4) Ambiguous Family History of stroke.

|  |  |  |
|---|---|---|
| • | Basis Points | 269.61 |
|  | -- Label Adjustment | +15% |
|  | -- Consistency Adjustment | -10% |
| • | Sub-Total Points | 283.09 |
|  | -- Obesity | -17.5% |
|  |  | 233.55 |
|  | -- Controlled Cholesterol | -10% |
|  |  | 210.20 |
|  | -- Controlled HTN | -30% |
|  |  | 147.14 |
|  | -- Ambiguous Family History | -15% |
|  | **TOTAL POINTS:** | 125.07 |

- 24 -

## Exhibit 17.1.13

IN RE:  VIOXX PRODUCTS
LIABILITY LITIGATION

Plaintiff or Claimant: _____
(name)

## CLAIMS FORM

        The Claims Package, including this Claims Form, must be submitted no later than July 1, 2008 on behalf of all Enrolled Program Claimants, including pro se Enrolled Program Claimants, in the Resolution Program outlined in the Settlement Agreement of November ____, 2007 (the "Agreement").

## INSTRUCTIONS

        1.    Counsel for Enrolled Program Claimants, and all *pro se* Enrolled Program Claimants, must complete Sections I, II, III, and IV of this Claims Form.

        2.    Attachment A to this Claims Form must be completed by the Enrolled Program Claimant only if an Enrolled Program Claimant has not completed and supplied a Plaintiff Profile Form or Plaintiff Fact Sheet as part of the litigation in the Coordinated Proceedings.  If an Enrolled Program Claimant has completed a Plaintiff Profile Form or Plaintiff Fact Sheet, those documents must be included in the Claims Package[1].

## I.    CASE INFORMATION

        A.    Information Regarding Plaintiff or Claimant:

_____
Name

_____
Address

_____
Telephone Number

• _____

[1] Any response to deficiency notices with respect to a Plaintiff Profile Form or Plaintiff Fact Sheet must also be included.

_____

Social Security Number

_____

Relationship to Product User (if other than Plaintiff/Claimant)

B.    Information Regarding Primary Attorney:

_____

Name of Attorney

_____

Firm Name

_____

City, State and Zip Code

_____

Telephone Number

_____

Telecopy Number

_____

E-mail Address

C.    Has a civil action been filed in court alleging injuries as a result of Product User's
use of Vioxx? ____Yes ____No

If "Yes," provide the following:

_____

Court/Jurisdiction

_____

Case Caption

_____

Case No.

D..      Did Plaintiff or Claimant seek tolling at any time under the Federal MDL Tolling Agreement for the Product User's injuries allegedly arising from use of Vioxx?

_____ Yes _____ No

If "Yes," provide the following:

_____
Date of First Submission under the Federal MDL Tolling Agreement

_____
Date Submitted Claimant Profile Form

## II.    PERSONAL INFORMATION OF THE PRODUCT USER IF OTHER THAN PLAINTIFF/CLAIMANT

A.      Last Name: _____

First Name: _____

Middle Name or Initial: _____

B.      Any other names used or by which the Product User has been known, including but not limited to maiden name: _____

_____

C.      Social Security Number: _____

D.      Date of Birth: _____

E.      Date of Death of Product User (if     Do you claim Product caused the death: applicable): _____ _____ Yes _____ No

F.      Sex: Male _____ Female _____

G.    Current Street Address:

_____

_____

| City | State | Zip Code |

Date Began Residing at Address: _____

## III.   GENERAL INFORMATION

A.    Claim Information

1.  Check the injury Plaintiff or Claimant is claiming from Product User's use of Vioxx and indicate the date(s) of occurrence:

| <u>Injury Type</u> | <u>Date(s)</u> |
|---|---|
| ___ Myocardial Infarction("MI") | _____ |
| ___ Myocardial Infarction, Fatal | _____ |
| ___ Sudden Cardiac Death ("SCD") | _____ |
| ___ Ischemic Stroke ("IS") | _____ |
| ___ Ischemic Stroke, Fatal | _____ |

3.  Is Plaintiff or Claimant applying to receive Extraordinary Injury Payments pursuant to Section 4.2 of the Agreement?

_____ Yes    _____ No

## IV.   CLAIMS PACKAGE MATERIALS

Attach all Claims Package materials as required by Section 1.3 of the Agreement.

4

Dated: _____

                                         _____

                                         [Plaintiffs'/Claimants' Attorney Name]
                                         [Law Firm Name]
                                         [Address]
                                         [City/Town, State, Zip Code]
                                         [Area Cod/Phone Number]
                                         [Area Code/Fax Number]
                                         [Email address]

# ATTACHMENT A TO CLAIMS FORM

# ATTENTION:  THIS ATTACHMENT MUST BE COMPLETED BY ENROLLED PROGRAM CLAIMANTS WHO HAVE NOT PREVIOUSLY COMPLETED AND SUBMITTED A PLAINTIFF PROFILE FORM OR PLAINTIFF FACT SHEET IN THE COORDINATED PROCEEDINGS.

### A. MEDICAL BACKGROUND OF PRODUCT USER

If at any time *prior* to the alleged injury, Product User underwent any of the following procedures, was diagnosed with any of the following conditions, or used any of the following substances, check all that apply and complete all additional information requested for each:

| | | | |
|---|---|---|---|
| ☐ | Heart Attack | ☐ | Diabetes |
| ☐ | Coronary Bypass Surgery | ☐ | Obesity |
| ☐ | Coronary Artery Disease | | Height at Time of Alleged Event: _____ |
| ☐ | Vascular Disease | | Weight at Time of Alleged Event: _____ |
| ☐ | Atrial Fibrillation | ☐ | Migraine Headaches |
| ☐ | Heart Failure | ☐ | Tobacco |
| ☐ | Stroke | | Type (e.g., cigarettes, cigars, pipe, chewing tobacco): _____ |
| ☐ | Transient Ischemic Attack | | Amount Smoked or Used Per Day (for cigarettes, packs/day; for cigars, cigars/day, etc.): _____ |
| ☐ | Carotid Artery Disease | | Number of Years Used: _____ |
| ☐ | Carotid Artery Procedure (e.g., Endarterectomy or Stenting) | | Date Quit (if applicable): _____ |
| ☐ | High Cholesterol | ☐ | Birth Control |
| ☐ | High Blood Pressure | | Dates of Use: _____ |
| ☐ | Alcohol Abuse | ☐ | Hormone Replacement Therapy |
| ☐ | Illegal Drugs | | Dates of Use: _____ |

6

## B. FAMILY HISTORY

At any time, have any of Product User's parents or siblings experienced either of the following:

| ☐     Heart Attack | | ☐     Stroke | |
|---|---|---|---|
| Relative(s) | Age(s) at Heart Attack | Relative(s) | Age(s) at Stroke |
| | | | |
| | | | |
| | | | |

## C.    PRODUCT USAGE

Identify the dates (month, day, and year) that you began to take and stopped taking Vioxx and, for each period, the dosage you took:

| Date Began | Date Stopped | Dosage |
|---|---|---|
| | | |
| | | |
| | | |

## CERTIFICATION AND AUTHORIZATION

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Claims Form is true and correct to the best of my knowledge, information and belief.

_____        _____        _____
Signature                              Print Name                         Date

7

## Exhibit 17.1.23
## List of Excluded Persons

1. <u>Thomas Cona v. Merck & Co.</u>, Inc., Docket No. A-000077-07 T1, Superior Court of New Jersey, Appellate Division (Original Docket No. ATL-L-3553-05-MT)

2. <u>Carol A. Ernst v. Merck & Co.</u>, Inc., Docket No. 14-06-00835-CV, State of Texas Court of Appeals for the Fourteenth Court of Appeals District (Original Docket No. 19961*BH02)

3. <u>Ruby Ledbetter v. Merck & Co.</u>, Inc., Docket No. 14-07-0551-CV, State of Texas Court of Appeals for the Fourteenth Court of Appeals District (Original Docket No. 2005-58543, Master Docket No. 2005-59499)

4. <u>John McDarby v. Merck & Co.</u>, Inc., Docket No. A-000076-07 T1, Superior Court of New Jersey, Appellate Division (Original Docket No. ATL-L-1296-05-MT)

5. <u>Frederick Humeston v. Merck & Co., Inc.</u>, Docket No. ATL-L-2272-03-MT, presently venued in the Superior Court of New Jersey, Law Division, Atlantic County

6. <u>Felicia Garza v. Merck & Co., Inc.</u>, No. 04-07-00234-CV, State of Texas Court of Appeals For the Fourth Court of Appeals District (Original Docket No. DC-03-84, 229th Judicial District of Starr County, Texas)

7. <u>Kathleen Hermans Messerschmidt v. Merck & Co., Inc.</u>, No. ATL-L-5520-05 MT, Superior Court of New Jersey, Law Division, Atlantic County

## Exhibit 17.1.28

## ENROLLMENT FORM

This Enrollment Form pertains to the Settlement Agreement ("the Agreement") dated November __, 2007, incorporated herein by reference, including but not limited to the program for resolution of claims relating to the use of Vioxx described therein (generally and collectively referred to herein as the "Resolution Program" or "the Program").

I, the undersigned, am submitting an updated version of the spreadsheet previously submitted by me initially for Registration of Claims pursuant to Section 1.1 of the Agreement, as may have been subsequently revised or updated in connection with the terms of the Agreement and the Registration Order ("Claimant Spreadsheet"). This updated Claimant Spreadsheet identifies, *inter alia*, (i) those claims for which I am the Primary Counsel; (ii) those Eligible Claimants for whom I hereby submit this Enrollment Form, as of the date indicated below; (iii) those claims listed in the Claimant Spreadsheet previously as Claims in which I have an Interest, but in which I or other affiliated counsel no longer have an Interest, including a certification whether any remuneration was received or promised in connection with disposition of any Interest in any such Claim; and (iv) claims not previously listed on my Claimant Spreadsheet in which I did not previously, but now do, have an Interest. I hereby certify that I have undertaken to verify the accuracy of the the information contained in the spreadsheet, and that it is true and correct to the best of my knowledge and information.

I hereby represent and certify that I, or another attorney in my office, have communicated with and explained the contents of the Agreement to the individuals on whose behalf I am submitting this Enrollment Form, and that I have full authority to submit this Enrollment Form on their behalf. I further represent that I have explained to those individuals that if their Enrollment Form is accepted under the terms of the Agreement: (1) participation in the Resolution Program subjects them to the authority of those persons specified in the Agreement, including, but not limited to, the Chief Administrator, the Special Master, and any Deputy Special Masters; (2) in connection with entry into the Program they are releasing their claims against the entities and individuals identified in the attached Release (Exhibit C), and that their Release may not be returned other than under the limited circumstances provided in Section 2.7 of the Agreement; (3) enrollment terminates any lawsuits which they have brought or could have been brought, other than as provided by Section 2.7, and no claim may be advanced other than as permitted under the Agreement; (4) the Resolution Program provides their sole and exclusive remedy for their claims, and that they will be bound by its results whatever they may be, other than as may be provided for under Section 2.7 of the Agreement; and (5) the potential benefits and risks to them if they enter the Resolution Program.

I hereby agree to the terms of the Settlement Agreement. In addition, in submitting this Enrollment Form for the persons so identified on the Claimant Spreadsheet attached hereto as Attachment A, I consent and agree on their behalf, and with their full authorization, to the terms of the Agreement. As required by the Agreement, I have executed individual Stipulations of Dismissal with Prejudice (Attachment B) for these Eligible Claimants, and I submit those stipulations with this Enrollment Form. I am also submitting the Release (Attachment C) and Medical Records Authorization Form (Attachment D), each signed by the Eligible Claimant (or

their respective, duly and lawfully appointed representative).  For any Eligible Claimant who is claiming past lost wages, pursuant to section 4.2 of the Agreement, I am also attaching a signed Employment Authorization Form (Attachment E) signed by that Eligible Claimant. With respect to the Medical Records Authorization and the Employment Records Authorization Form, I have advised the Eligible Claimant (or their respective, duly and lawfully appointed representative) that he or she may be asked to sign additional copies of these Authorizations or other authorizations that may be required by the Claims Administrator, Merck & Co., Inc. or providers of the records.  The Eligible Claimant and I agree to cooperate fully in promptly providing any additional authorizations upon request.  The Eligible Claimant and I agree to cooperate fully in promptly providing any such other form of Stipulation of Dismissal with Prejudice, if requested.

I further acknowledge that under the terms of the Agreement, no Eligible Claimant for whom I have submitted an Enrollment Form will be deemed to have been Enrolled until such time as the requirements of Section 1.2 of the Agreement  have been met with respect to all claims in which I have an Interest in that (i) I have submitted an Enrollment Form for all such Eligible Claimants; or (ii) Enrollment Forms have been submitted for such Eligible Claimants by another attorney where I am not the Primary Counsel, and (iii) I have completed and executed the Certification of Final Enrollment attached hereto as Exhibit F.

## ACCEPTED AND AGREED:

Dated: _____

                              _____
                              [Plaintiffs'/Claimants' Attorney Name]
                              [Law Firm Name]
                              [Address]
                              [City/Town, State, Zip Code]
                              [Area Cod/Phone Number]
                              [Area Code/Fax Number]
                              [Email address]

# ENROLLMENT FORM INSTRUCTIONS

These instructions pertain to the Enrollment Form referenced in the Settlement Agreement ("the Agreement") dated November __, 2007, pertaining to the program for resolution of claims relating to the use of Vioxx described therein (generally and collectively referred to herein as the "Resolution Program" or "the Program").

1.  In connection with this Enrollment Form, Primary Counsel, as defined by the Registration Order, shall be designated to complete the form on behalf of each Eligible Claimant unless the Eligible Claimant is *pro se*.

2.  To enroll in the Resolution Program, the following documents must be prepared, dated, signed and submitted to the Claims Administrator (collectively referred to herein as the "Enrollment Materials"). Execution copies of such documents shall be obtained from the Claims Administrator by such means as the Claims Administrator shall provide.

    a.  Completed Enrollment Form;

    b.  Claimant Spreadsheet (Attachment A).;

    c.  Stipulation of Dismissal with Prejudice (Attachment B to this Enrollment Form) for each case, properly captioned for filing with the Court where the matter is currently pending, signed by counsel for plaintiff(s) each Eligible Claimant  identified as enrolling on the Claimant Spreadsheet.; and

    d.  Release (Attachment C to this Enrollment Form) signed by each Eligible Claimant (or his/her respective, duly and lawfully appointed representative) identified as enrolling on the Claimant Spreadsheet.  If and if the Release is signed by a duly and lawfully appointed representative of an Eligible Claimant, said representative must indicate on each document his or her relationship to the Eligible Claimant and the authority upon which he or she is permitted to sign the document on their behalf (e.g., guardian, executor or administrator of the Estate of Eligible Claimant, etc.) and attach proper documentation (e.g., power of attorney, letters of administration) authorizing him or her to act in this representative capacity.

    e.  Medical Record Authorization Form (Attachment D to this Enrollment Form) signed by each Eligible Claimant (or his/her respective, duly and lawfully appointed representative) identified as enrolling on the Claimant Spreadsheet; and

    f.  Employment Record Authorization Form (Attachment E to this Enrollment Form) signed by each Eligible Claimant (or his/her respective, duly and lawfully appointed representative) identified as  enrolling on the Claimant Spreadsheet (Attachment A) *only if* seeking past lost wages under section 4.2 of the Agreement.

## ADDITIONAL INSTRUCTIONS FOR THE MEDICAL RECORDS AUTHORIZATION FORM AND EMPLOYMENT RECORD AUTHORIZATION FORM

g.  The Eligible Claimant (or their respective, duly and lawfully appointed representative) must complete the top portion of the Authorizations with the name, date of birth and social security number of the Eligible Claimant who used Vioxx and sign where indicated.

h.  The Eligible Claimant (or their respective, duly and lawfully appointed representative) shall **LEAVE BLANK** the name and address lines for the person or entity from whom records are sought. The Eligible Claimant (or their respective, duly and lawfully appointed representative) understands that these blank lines shall be filled in by the Receiving Parties or their representatives or designated agents with the names of the healthcare providers and employers (depending on the form) identified in the Claim Form.

i.  The Eligible Claimant (or their respective, duly and lawfully appointed representative) shall **NOT** date the Authorizations. The Eligible Claimant (or their respective, duly and lawfully appointed representative) understands that the Receiving Parties or their representatives or designated agents will date the Authorizations when the Authorizations are sent to the providers of the records.

j.  If the Authorization are signed by duly and lawfully appointed representatives of a Eligible Claimant, said representative must describe his or her relationship to the Eligible Claimant and the authority upon which he or she is permitted to sign the Authorization on behalf of the Eligible Claimant (e.g., guardian, executor or administrator of the Estate of Eligible Claimant, etc.), where indicated on the Authorization. Said representative must also attach to the Authorization proper documentation (e.g., power of attorney, letters of administration) authorizing him or her to act in this representative capacity.

3.  Submit a complete set of these Enrollment Materials to the Claims Administrator by such means as may be directed or permitted by the Claims Administrator.

4