# ATTACHMENT B TO ENROLLMENT FORM

## TO BE COMPLETED WITH THE APPROPRIATE CAPTION FOR THE COURT WHERE PLAINTIFF'S CLAIM IS PENDING

XXXXX,

                    Plaintiff(s),

v.

MERCK & CO., INC.,

                    Defendant(s).

[COURT]
[DIVISION OR VENUE]

DOCKET NO.  XXX

**STIPULATION OF DISMISSAL
WITH PREJUDICE
AS TO ALL DEFENDANTS**

Pursuant to [applicable Rule], the undersigned counsel hereby stipulate that all claims of plaintiffs, _____, individually and as representative of _____ , against defendant Merck & Co., Inc. and all other named defendants be dismissed in their entirety with prejudice, each party to bear its own costs.

_____
[Attorney for Plaintiff]
[Firm Name, Address and Telephone]

_____
[Attorney for Merck & Co., Inc]
[Firm Name, Address and Telephone]

Dated: _____

Dated: _____

5

## ATTACHMENT C TO ENROLLMENT FORM

# *See* **EXHIBIT 1.2.2.3**

# ATTACHMENT D TO ENROLLMENT FORM

## AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO
## 45 C.F.R. § 164.508 (HIPAA)

Patient Name:_____

Date of Birth:_____

Social Security Number:_____

Litigation Case No._____

    I hereby authorize

_____

_____

_____

_____

to release all existing medical records regarding the above-named person's medical care, treatment, physical condition, and/or medical expenses to the to _____ [Merck & Co.,Inc., the Claims Administrator, the Special Master (and any Deputy Special Master) for the Program, the Chief Administrator for the Program, members of the Gate Committee for the Program, all other persons provided for under the terms of the Agreement to consider claims], and their respective attorneys, agents, servants, employees and independent auditors, the medical or other documentation required for approval of an award under the Program. These records shall be used or disclosed solely in connection with the currently pending Vioxx litigation or claims Resolution Program under the Settlement Ageement dated November ____, 2007, involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's Vioxx litigation or claim concludes. The Receiving Parties shall return or destroy the protected health information (including all copies made) at the end of the above-named person's litigation or claim.

    I understand that the health information being used/disclosed may include information relating to the diagnosis and treatment of Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), sexually transmitted disease and drug and alcohol disorders.

    This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs, EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms, admission and discharge records, operation records, doctor and nurses notes (excluding psychotherapy notes maintained separately from the individual's medical record that document or

analyze the contents of conversation during a private counseling session or a group, joint, or family counseling session by referring to something other than medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills, invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing information.  It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, Forms, statements, eligibility material, claims or claim disputes, resolutions and payments, medical records provided as evidence of services provided, and any other documents or things pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.).  This listing is not meant to be exclusive.

This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above Receiving Parties until the conclusion of the litigation or claim.  I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage.  I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization.  I further understand that information disclosed pursuant to this authorization may be subject to re-disclosure by the recipient to its clients, agents, employees, consultants, experts, the court, Special Masters and others deemed necessary by the Receiving Parties to assist in this litigation or claim and may no longer be protected by HIPAA.  I further reserve the right to request the return or redaction of sensitive or embarrassing information, not germane to the litigation or claim that is disclosed to the Receiving Parties.

Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place.  Copies of these materials are to be provided at the expense of [Claims Administrator] or Merck & Co., Inc..

Dated this _____ day of _____, 200___

Signature:_____
                    *[PATIENT OR REPRESENTATIVE]*

Print Name:_____

**If you are signing this authorization as a representative on behalf of the patient identified at the top of this form, please describe your relationship to the patient and your authority to act on his/her behalf:**

**You must attach proper documentation (e.g., power of attorney, letters of administration) authorizing you to act in this representative capacity.**

8

## ATTACHMENT E TO ENROLLMENT FORM

## AUTHORIZATION FOR RELEASE OF EMPLOYMENT RECORDS
### (For claims of lost wages, earnings or earning capacity.)

Employee's Name: _____

Date of Birth: _____

Social Security Number: _____

Litigation Case No. _____

    I hereby authorize

_____

_____

_____

_____

_____

to release all existing records and information in its possession regarding the above-named person's employment, income and education to _____ [Merck & Co.,Inc., the Claims Administrator, the Special Master (and any Deputy Special Master) for the Program, the Chief Administrator for the Program, members of the Gate Committee for the Program, all other persons provided for under the terms of the Agreement to consider claims] ("Receiving Parties"). These records shall be used or disclosed solely in connection with the currently pending Vioxx litigation or claim involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's Vioxx litigation or claim concludes.

    I understand that this authorization includes the above-named person's complete employment personnel file (including attendance reports, performance reports, W-4 forms, W-2 forms, medical reports, workers' compensation claims), and also includes all other records relating to employment, past and present, all records related to claims for disability, and all educational records (including those relating to courses taken, degrees obtained, and attendance records). This listing is not meant to be exclusive.

    Any photostatic copy of this document shall have the same authority as the original, and may be substituted in its place. Copies of these materials are to be provided at the expense of [Claims Administrator] or Merck & Co., Inc..

Dated this _____ day of _____, 200____

Signature:_____
                    [*PATIENT OR REPRESENTATIVE*]

Print Name:_____

**If you are signing this authorization as a representative on behalf of the employee identified at the top of this form, please describe your relationship to the employee and your authority to act on his/her beh**

**You must attach proper documentation (e.g., power of attorney, letters of administration) authorizing you to act in this representative capacity.**

# ATTACHMENT F TO ENROLLMENT FORM

## CERTIFICATION OF FINAL ENROLLMENT

This Certification of Final Enrollment pertains to the Settlement Agreement ("the Agreement") dated November __, 2007, and Exhibit 17.1.29 to that Agreement, "Enrollment Form," incorporated herein by reference.

In accordance with and subject to Section 1.2 of the Agreement, this certifies that I, the undersigned, have, as of the date set forth below, complied with all of the requirements of the Enrollment Form as to each Eligible Claimant for whom I serve as Primary Counsel.

In accordance with and subject to Section 1.2 of the Agreement, I further certify that all Eligible Claimants in whose claims I have a financial interest have either (i) been enrolled in the Resolution Program as claims for which I am the Primary Attorney or (ii) been enrolled in the Resolution Program by each such Eligible Claimant's Primary Attorney for claims where I am not the Primary Attorney.

Dated: _____        _____

[Plaintiffs'/Claimants' Attorney Name]

[Law Firm Name]

[Address]

[City/Town, State, Zip Code]

[Area Cod/Phone Number]

[Area Code/Fax Number]

[Email address]

# ESCROW AGREEMENT

## Among

## Merck & Co., Inc.

## The Counsel Listed on the Signatures Pages Hereto,

## And

## [ ], as the Escrow Agent

Dated as of [        ], 2007

Table of Contents

Page

**Article I** Establishment of Escrow Fund ..................................................................................1

    1.1    Establishment of Escrow Fund; Sub-Funds ...............................................1

    1.2    Purposes of the Escrow Fund......................................................................2

    1.3    Agreement of the NPC ................................................................................2

**Article II** Escrow Agent...........................................................................................................2

    2.1    Qualification to Serve .................................................................................2

    2.2    Term of Service...........................................................................................2

    2.3    Appointment of Successor Escrow Agent. .................................................2

    2.4    Compensation and Expenses of Escrow Agent ..........................................3

    2.5    Merger, Conversion, Consolidation or Succession to Business of
            Escrow Agent...............................................................................................3

    2.6    Indemnification/Liability of Escrow Agent ...............................................3

    2.7    Reliance By Escrow Agent; Duties And Rights .........................................4

    2.8    Escrow Agent May Consult Advisors.........................................................5

**Article III** Funding of the Escrow Fund .................................................................................5

    3.1    Funding of the Escrow Fund.......................................................................5

**Article IV** Investments, Payments and Administration of the Escrow Fund ..................................5

    4.1    Investments and Distributions.....................................................................5

    4.2    Payments. ....................................................................................................6

    4.3    Accounting and Reporting. .........................................................................7

    4.4    Certain Letter of Credit Matters.................................................................8

    4.5    Termination of Escrow Provisions and Escrow Fund.................................8

**Article V** Tax Matters ..............................................................................................................8

i

Table of Contents
(continued)

Page

5.1     Characterization .................................................................8

5.2     Information ......................................................................8

**Article VI General Provisions**................................................................9

6.1     Notice by Parties ...............................................................9

6.2     Governing Law .................................................................10

6.3     Dispute Resolution..............................................................10

6.4     Waiver of Inconsistent Provisions of Law; Severability ...........................11

6.5     Facsimile Signatures ..........................................................11

6.6     Construction ...................................................................12

6.7     Entire Agreement ..............................................................12

6.8     Headings; References...........................................................12

6.9     No Third Party Beneficiaries; Assignment ....................................12

6.10    Amendments ...................................................................13

6.11    Counterparts ...................................................................13

6.12    Certain Payments ..............................................................13

6.13    Amendments to the Settlement Agreement; Claims Administrator ..........13

6.14    No Claims ......................................................................13

6.15    Customer Identification and TIN Certification.................................13

6.16    Further Assurances..............................................................14

**Article VII Definitions**..................................................................14

7.1     Definitions......................................................................14

7.2     Cross Reference of Other Definitions..........................................16

## ESCROW AGREEMENT

ESCROW AGREEMENT, dated as of [_____], 2007, among (i) Merck & Co., Inc., a New Jersey corporation (together with its successors and assigns, "Merck"), (ii) the counsel listed in the signature pages hereto under the heading "Negotiating Plaintiffs' Counsel" (collectively, the "NPC"), and (iii) the Escrow Agent named on the signature pages hereto (the "Escrow Agent"; Merck, the NPC and the Escrow Agent, each a "Party" and collectively the "Parties").

All capitalized terms used in this Agreement and not otherwise defined herein, including in Article VII, shall have the meanings assigned to them in the Settlement Agreement (as defined below).

### Recitals

A.    Merck and the NPC entered into that certain Settlement Agreement, dated as of November 8, 2007 (as the same may be amended or modified from time to time, the "Settlement Agreement").

B.    The Settlement Agreement provides, among other things, that Merck shall make certain payments into an escrow account established pursuant to this Agreement and maintained by the Escrow Agent and for the Escrow Agent to make certain payments out of such escrow account pursuant to the terms of the Settlement Agreement and this Agreement.

Merck, the NPC and the Escrow Agent hereby agree as follows:

### Article I
### Establishment of Escrow Fund

1.1    Establishment of Escrow Fund; Sub-Funds

1.1.1    The Escrow Agent hereby establishes a segregated escrow account in connection with this Agreement (the "Escrow Fund"). In no event shall any funds in the Escrow Fund be commingled with any other funds or monies held by the Escrow Agent or any of its affiliates. The Escrow Fund shall be maintained and administered by the Escrow Agent in accordance with this Agreement.

1.1.2    The Escrow Agent hereby establishes (i) the Administrative Expenses Fund, (ii) the MI Settlement Fund and (iii) the IS Settlement Fund. Any reference herein to the Escrow Fund shall include the Sub-Funds.

1.1.3    The Settlement Parties hereby appoint the Escrow Agent to act as escrow agent with respect to the Escrow Fund and the Escrow Agent hereby accepts such appointment and agrees to accept and hold in escrow all assets transferred to the Escrow Fund under this Agreement.

1.1.4   The Escrow Agent hereby accepts the payment, contribution, transfer and assignment of all assets, whether heretofore or hereafter received from Merck or the Claims Administrator, as assets of the Escrow Fund and agrees to receive, hold, settle, invest, liquidate and distribute such assets, in accordance with the provisions of this Agreement and the Settlement Agreement.

1.2     Purposes of the Escrow Fund

The sole purposes of the Escrow Fund are to:

1.2.1   receive, hold in escrow, safe-keep and invest amounts deposited under this Agreement; and

1.2.2   make payments, distributions and transfers among and from the Sub-Funds in accordance with this Agreement.

1.3     Agreement of the NPC

Any provision of this Agreement requiring the agreement, consent or notice of the NPC with respect to any matter shall be deemed satisfied if a majority in number of the NPC agree, consent or notify as to such matter.  Any such agreement, consent or notice shall include a certification by its NPC signatories that such NPC signatories constitute a majority in number of the NPC.

## Article II
## Escrow Agent

2.1     Qualification to Serve

There shall be one Escrow Agent maintaining the Escrow Fund.  The Escrow Agent shall be a major money center bank organized and doing business under the laws of the United States of America, any state thereof or the District of Columbia, authorized under such laws to maintain escrow accounts, having a combined capital and surplus of at least $500,000,000, and subject to supervision and examination by a federal or state authority.

2.2     Term of Service

The Escrow Agent shall serve until termination of this Agreement in accordance with Section 4.5, subject to its resignation or removal as set forth herein.  The Escrow Agent may (i) resign at any time on at least sixty (60) days' prior written notice of resignation to the Settlement Parties or (ii) be removed and replaced at any time on at least thirty (30) days' prior written notice to the Escrow Agent by Merck, provided, however, that, in each case, the resignation shall not become effective until a successor Escrow Agent has been appointed hereunder.

2.3     Appointment of Successor Escrow Agent.

2

2.3.1   In the event of a resignation or removal of the Escrow Agent, the NPC shall appoint a successor Escrow Agent with the consent of Merck (such consent not to be unreasonably withheld).  If, upon resignation of the Escrow Agent, a successor Escrow Agent has not been appointed within 60 days after written notice of the resignation of the Escrow Agent, the Escrow Agent may apply to any court of competent jurisdiction for appointment of a successor Escrow Agent.  A successor Escrow Agent must meet the qualifications set forth in Section 2.1.

2.3.2   Any successor Escrow Agent, whether appointed by a court or by the NPC, shall execute and deliver to the predecessor Escrow Agent an instrument accepting such appointment, and thereupon such successor Escrow Agent, without further act, shall become vested with all the estates, properties, rights, powers, duties and trusts of the predecessor Escrow Agent hereunder with like effect as if originally named as the "Escrow Agent" herein.  Notwithstanding the foregoing, upon the written request of the successor Escrow Agent, Merck or the NPC, the predecessor Escrow Agent shall execute and deliver an instrument transferring to such successor Escrow Agent, all the estates, properties, rights, powers and trusts of such predecessor Escrow Agent, and such predecessor Escrow Agent shall duly assign, transfer, deliver and pay over to such successor Escrow Agent any property or moneys then held by such predecessor Escrow Agent.

2.3.3   In the event any successor Escrow Agent is appointed hereunder, the fees theretofore paid to the predecessor Escrow Agent shall be prorated between the predecessor Escrow Agent and the successor Escrow Agent for any unexpired portion of the period to which such fees relate.

2.4      Compensation and Expenses of Escrow Agent

The Escrow Agent shall be compensated for performing its services under this Agreement in the manner and in the amount agreed between it and Merck from time to time. The Escrow Agent shall also be reimbursed as agreed between it and Merck from time to time for any reasonable and documented out-of-pocket expenses related to performing such services and for the reasonable costs of any agents or attorneys retained by the Escrow Agent in accordance with this Agreement.

2.5      Merger, Conversion, Consolidation or Succession to Business of Escrow Agent

Any corporation into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Escrow Agent shall be a party, or any corporation succeeding to the corporate escrow business of the Escrow Agent, shall be the successor of the Escrow Agent hereunder without the execution or filing of any paper or any further act on the part of any of the parties hereto, provided, however, that such corporation shall be eligible under the provisions of Section 2.1 hereof.  Such successor Escrow Agent shall be bound to the fees and expenses agreed between the Escrow Agent and Merck.

2.6      Indemnification/Liability of Escrow Agent

2.6.1   So long as the Escrow Agent acts in accordance with this Agreement, the Escrow Agent and its officers, directors, employees and agents (each an "Indemnified Party") shall be indemnified by Merck against any expenses, costs and fees (including reasonable attorneys' fees and expenses), judgments, awards, costs, amounts paid in settlement, and liabilities of all kinds (collectively, Losses" ) incurred by the Indemnified Party resulting from any threatened, pending, or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, brought by or against the Indemnified Party (i) with respect to the Escrow Agent, by reason of the Escrow Agent serving or having served as Escrow Agent, or (ii) with respect to any other Indemnified Party, by reason of such Indemnified Party serving or having served in any capacity at the request of and on behalf of the Escrow Agent in connection with this Agreement (a "Proceeding"), provided, in each case, that such Indemnified Party acted in good faith, without negligence or willful misconduct.

2.6.2   Any term of Section 2.6.1 to the contrary notwithstanding, Merck shall not have any liability or obligation to any particular Indemnified Party under Section 2.6.1 with respect to any Losses which may be imposed on or incurred by such Indemnified Party in connection with the settlement of any Proceeding entered into by such Indemnified Party, or as the result of such Indemnified Party ceasing to diligently defend against any Proceeding, in each case without the prior written consent of the Merck. Merck shall not unreasonably withhold or delay its consent to the settlement of any Proceeding.

2.7   Reliance By Escrow Agent; Duties And Rights

2.7.1   If at any time the Escrow Agent shall need clarification about an action to be taken or omitted in connection with a notice it receives hereunder, the Escrow Agent shall be entitled to request clarification from the Person(s) providing such notice and shall, as between itself and such Person, be entitled to rely on such clarification.

2.7.2   No provision of this Agreement shall be construed to relieve the Escrow Agent from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct except that:

2.7.2.1   neither the Escrow Agent nor any of its affiliates shall have authority or duty to manage or select the investment securities or other assets of the Escrow Fund;

2.7.2.2   neither the Escrow Agent nor any of its affiliates shall be required to diversify the assets of the Escrow Fund and shall not incur personal liability whatsoever, in tort, contract, or otherwise, due to any such lack of diversification of the assets of the Escrow Fund;

2.7.2.3   no successor Escrow Agent shall be in any way responsible for the acts or omissions of any predecessor Escrow Agent in office prior to the date on which such successor becomes the Escrow Agent; and

2.7.2.4      no Escrow Agent shall be liable except for the performance of such duties and obligations as are specifically set forth herein and such duties and obligations as are reasonably incidental thereto and no implied covenants or obligations shall be read into this Agreement against the Escrow Agent.

2.7.3   The Escrow Agent may conclusively rely, as to the truth of statements and correctness of the opinions or statements expressed therein, upon, and shall be protected in acting (in accordance with, and subject to, the terms hereof) upon, any certificate, notice or report furnished to the Escrow Agent hereunder and believed by it to be genuine and to have been signed or presented by the proper Person or Persons, but the Escrow Agent shall be under a duty to examine the same to determine whether, to the extent applicable, they conform to this Agreement.  Without limitation, the Escrow Agent may require Merck and NPC to provide to it from time to time such certifications of authorized signatories of Merck, the NPC and/or the Claims Administrator as the Escrow Agent reasonably may request.  For the avoidance of doubt, nothing in this Section qualifies Section 4.2.3.

2.8     Escrow Agent May Consult Advisors

The Escrow Agent may consult with and is entitled to retain its own counsel, professionals or other agents to advise it in connection with its duties hereunder.  The Escrow Agent shall be entitled to rely on the advice or opinion of such counsel, professionals and agents and such advice or opinion shall be complete protection in respect of any action taken or suffered by the Escrow Agent in good faith and in reliance on and in accordance with such advice or opinion.

## Article III
## Funding of the Escrow Fund

3.1     Funding of the Escrow Fund

Concurrently with the making of any transfer to the Escrow Agent pursuant to the Settlement Agreement, Merck or (in respect of any Letter of Credit) the Claims Administrator shall notify the Escrow Agent and the NPC of such transfer and such notice shall specify the Sub-Fund into which the Escrow Agent must deposit such transferred funds (or the allocation of such transferred funds among the Sub-Funds).

## Article IV
## Investments, Payments and Administration of the Escrow Fund

4.1     Investments and Distributions

4.1.1   The Escrow Agent shall invest any cash held in the Escrow Fund solely in Permitted Investments in accordance with a notice delivered, from time to time, by Merck to the Escrow Agent (an "Investment Direction").  Any Investment Direction shall constitute a standing instruction and shall remain in effect unless and until, and to the extent, it is revoked by Merck in a subsequent Investment Direction.  In the absence of any Investment Direction, the Escrow Agent shall invest any cash deposits it receives

5

hereunder in direct obligations of, or obligations fully guaranteed by, the United States of America or any agency thereof, with a maturity of not more than 30 days, until it receives a contrary Investment Direction.

4.1.2   The Escrow Agent shall be responsible for tracking any interest or other income earned on funds deposited into the Escrow Fund (the "Earnings"), for each Sub-Fund. The Escrow Agent shall not be responsible for any loss of principal or interest resulting from making or disposing of any investments made in accordance with an Investment Direction (the "Losses"), except any such investment where the Escrow Agent, in its individual capacity, is the obligor.

4.1.3   Any investment securities, in book-entry form, purchased by the Escrow Agent pursuant to this Agreement shall be delivered to the Escrow Agent's book-entry account at a Federal Reserve Bank or at a Depository Trust Company. In connection with each investment made by the Escrow Agent in book-entry securities, the Escrow Agent shall take such actions as are contemplated by Article 8 of the applicable state's Uniform Commercial Code, to maintain control over such investment securities sufficient to make the Escrow Agent's interest therein senior to any adverse claim, to the full extent such senior interest can be legally established and enforced pursuant to the said Article 8.

4.1.4   On the last Business Day of each calendar month, the Escrow Agent shall transfer (i) an amount equal to the Net Investment Earnings with respect to the MI Settlement Fund for such calendar month from such Sub-Fund to the Administrative Expenses Fund and (ii) an amount equal to the Net Investment Earnings with respect to the MI Settlement Fund for such calendar month from such Sub-Fund to the Administrative Expenses Fund.

4.1.5   The Escrow Agent will (i) transfer funds from the Administrative Expenses Fund to the MI Settlement Fund and/or the IS Settlement Fund and/or (ii) pay over to Merck funds contained in the Administrative Expenses Fund, in each case as may be directed in any joint direction of Merck and the NPC from time to time. After the receipt by the Escrow Agent of any such direction, the Escrow Agent will cease making the transfers set forth in Section 4.1.4.

4.1.6   The Escrow Agent will pay over funds from the MI Settlement Fund and/or the IS Settlement Fund in accordance with directions to such effect delivered to it from time to time by the Claims Administrator, which directions specify that they are being given pursuant to Section 5.3.6 of the Settlement Agreement.

4.2   Payments.

4.2.1   The Escrow Agent shall promptly (and in any event within one (1) Business Day following receipt) provide to Merck by electronic mail a pdf copy of any Payment Report that the Escrow Agent receives.

4.2.2   Subject to having sufficient funds on hand in the applicable Sub-Fund and subject to Section 4.2.3, on or promptly after the thirteenth (13th) Business Day following receipt by the Escrow Agent of any particular Payment Report, the Escrow

6

Agent shall pay (i) out of the Administrative Expenses Fund, the various specific payments specified in such Payment Report as "Administrative Expenses Payables", (ii) out of the MI Settlement Fund, the various specific payments specified in such Payment Report as "MI QPC Payables", and (iii) out of the IS Settlement Fund, the various specific payments specified in such Payment Report as "IS QPC Payables". If the Escrow Agent does not have sufficient funds on hand in any particular Sub-Fund to make all of the payments to be made out of such Sub-Fund pursuant to the preceding sentence, the Escrow Agent will (i) in the case of any such shortfall in the Administrative Expenses Fund, pay the Administrative Expenses Payables pro rata according to the respective amounts thereof to the extent of the funds available in the Administrative Expenses Fund, and (ii) in the case of any such shortfall in a Settlement Fund, make full payment of such MI QPC Payables or IS QPC Payables, as the case may be, selected by it in such manner as it deems equitable, as it has the funds in such Settlement Fund to pay (as opposed to making pro rata Settlement Payments). Payments pursuant to this Section 4.2.2 shall be made in such manner, and to such accounts and/or in such names, as shall be specified in the Payment Report.

4.2.3   In the event that Merck disputes any payment contemplated under any Payment Report (any such disputed payment, a "Disputed Payment"), Merck shall notify the Escrow Agent in writing of such dispute (such notice of dispute, an "Merck Dispute Notice"). The Escrow Agent promptly shall deliver to the NPC and the Claims Administrator a copy of any Merck Dispute Notice that the Escrow Agent receives. The provisions of Section 4.2.2 to the contrary notwithstanding, if the Escrow Agent receives an Merck Dispute Notice, the Escrow Agent shall not thereafter make the Disputed Payment specified therein out of the Escrow Fund pending further joint direction from Merck and the NPC or a relevant resolution of the dispute pursuant to Article 8 of the Settlement Agreement.

4.2.4   The Escrow Agent shall have the right to liquidate, at any time, any investment made pursuant to this Agreement in order to make required payments pursuant to this Agreement.

4.3   Accounting and Reporting.

4.3.1   Promptly after the end of each calendar month, the Escrow Agent shall submit to Merck, the NPC and the Claims Administrator a report, in such form and in such detail as Merck reasonably from time to time may specify (an "Escrow Funds Report"), itemizing and certifying, in such form and in such detail as Merck from time to time reasonably may specify, all payments or transfers out of the Escrow Fund during the preceding calendar month, the Net Investment Earnings transferred to the Administrative Expenses Fund during the preceding calendar month and the balance on hand in each Sub-Fund as of the end of such calendar month.

4.3.2   Without limitation of Section 4.3.1, promptly upon any request therefor from Merck, the Escrow Agent shall inform Merck of the balance on hand in each Sub-Fund as of the most recent practicable date.

7

4.4     Certain Letter of Credit Matters.

If Merck shall have notified the Escrow Agent that any Letter of Credit is outstanding pursuant to the Settlement Agreement, then thereafter the Escrow Agent promptly (but in any event within one (1) Business Day following receipt) notify the Claims Administrator by telephone and by electronic mail (according to contact information provided to the Escrow Agent by the Claims Administrator or Merck from time to time) of the Escrow Agent's receipt of any deposit of funds by Merck into MI Settlement Fund or the IS Settlement Fund, and of the amount thereof. The Escrow Agent will send a copy of any such electronic mail notification to Merck.

4.5     Termination of Escrow Provisions and Escrow Fund

4.5.1   This Agreement shall terminate:

4.5.1.1   upon disbursement of all the funds in the Escrow Fund at any time after receipt of a notice pursuant to Section 4.1.5;

4.5.1.2   by mutual consent of Merck and the NPC; or

4.5.1.3   upon payment of all funds in the Escrow Fund to a successor to the Escrow Agent in accordance with and subject to Section 2.3 (but in the case of this Section 4.5.1.3, such termination shall apply only to the Escrow Agent being replaced).

4.5.2   Within thirty (30) days after termination of this Agreement, the Escrow Agent shall render a final accounting of the assets received, paid by and held in the Escrow Fund and their disposition to each of Merck and the NPC.

## Article V
## Tax Matters

5.1     Characterization

Merck and the NPC agree to characterize the Escrow Fund for federal, state and local income tax purposes in such manner as is reasonably determined by Merck, including as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-1 or as a grantor trust pursuant to an election under Treasury Regulation Section 1.468B-1(k) or otherwise. Any Taxes payable by the Escrow Agent as a result of treatment of the Escrow Fund as a taxable entity under the qualified settlement fund rules or otherwise shall be treated as Administrative Expenses.

5.2     Information

The Escrow Agent and Merck shall timely provide the other with such material and relevant information as and to the extent reasonably requested by the other party in connection with any tax filing or the payment of any taxes or any private letter ruling regarding the tax status of the Escrow Fund.

8

## Article VI
## General Provisions

6.1   Notice by Parties

All notices or other communications required or permitted hereunder shall be given in writing and given (i) by certified or registered mail, return receipt requested, nationally recognized overnight delivery service, such as Federal Express, or facsimile (or like transmission) with confirmation of transmission by the transmitting equipment or personal delivery against receipt to the party to whom it is given, in each case, at such party's address or facsimile number set forth below or such other address or facsimile number as such party may hereafter specify by notice to the other parties hereto given in accordance herewith, or (ii) to the extent specified hereunder, by electronic mail to the electronic mail address specified below or such other electronic mail address as such party may hereafter specify by notice to the other parties hereto given in accordance herewith.  Any such notice or other communication shall be deemed to have been given as of the date so personally delivered or transmitted by facsimile or like transmission, on the next Business Day when sent by overnight delivery service, five (5) Business Days after the date so mailed if by certified or registered mail, or when capable of being accessed at the electronic mail address specified below when so delivered by electronic mail, provided that if any such date on which any such notice or other communication shall be deemed to have been given is not a Business Day, then such notice or other communication shall be deemed to have been given as of the next following Business Day:

6.1.1

If to Merck:

> Bruce N. Kuhlik
> Senior Vice President and General Counsel
> Merck & Co., Inc.
> One Merck Drive
> P.O. Box 100(WS3A-15)
> Whitehouse Station, NJ  08889-0100
> Telecopier: (908) 735-1244
> Email: Bruce_Kuhlik@Merck.

6.1.2

If to the NPC:

> Andy D. Birchfield Jr.
> Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
> 218 Commerce Street
> Montgomery, AL 36104
> Telecopier: (334) 954-7555

> Russ M. Herman
> Herman, Herman, Katz & Cotlar, LLP

EAST_60034196_10.DOC i

820 O'Keefe Avenue
New Orleans, Louisiana 70113-1116
Telecopier: (504) 561-6024

Christopher A. Seeger
Seeger Weiss LLP
One William Street
New York, NY 10004
Telecopier: (212) 584-0799

6.1.3

If to the Escrow Agent:

[        ]

6.2   Governing Law

This Agreement shall be governed by and construed in accordance with the law of New York without regard to any choice-of-law rules that would require the application of the law of another jurisdiction.

6.3   Dispute Resolution

6.3.1   Any dispute that arises under or otherwise in connection with this Agreement shall be submitted to the Chief Administrator. If any such dispute is brought to the Chief Administrator, each party hereto who has a stake shall have 15 days (or as the Chief Administrator shall otherwise order) to submit papers and supporting evidence and to be heard on oral argument if the Chief Administrator desires oral argument.

6.3.2   If the Chief Administrator concludes, for whatever reason, that he should not determine an issue arising under this Agreement or otherwise in connection with this Agreement, the Special Master shall sit as a binding arbitration panel to decide the issue.

6.3.2.1   In such instances, any party may serve a demand for arbitration on the Special Master and all parties who have a stake in the issue disputed. Service shall be effected by regular and certified mail. Service shall be complete upon mailing.

6.3.2.2   The parties who have a stake in the issue disputed and who participate in the arbitration shall agree upon appropriate rules to govern the arbitration. If the parties cannot agree on appropriate rules within ten (10) Business Days of the service of the notice of demand, the applicable rules shall be the American Arbitration Association's Commercial Arbitration Rules that are effective on the date of the notice of demand, exclusive of the requirement that the American Arbitration Association administer the arbitration.

10

6.3.2.3    In deciding the issue disputed, the Chief Administrator's prior decisions on analogous matters shall bind the Special Master. Where the Chief Administrator has not decided an analogous matter, the Special Master shall apply the substantive law specified in Section 6.2, without regard to that jurisdiction's choice-of-law rules.

6.4    Waiver of Inconsistent Provisions of Law; Severability

6.4.1    To the fullest extent permitted by applicable law, each Party waives any provision of law (including the common law), which renders any provision of this Agreement invalid, illegal or unenforceable in any respect.

6.4.2    Any provision of this Agreement which is prohibited or unenforceable to any extent or in any particular context shall be ineffective, but such ineffectiveness shall be limited as follows:  (i) if such provision is prohibited or unenforceable only in or as it relates to a particular jurisdiction, such provision shall be ineffective only in or as it relates to (as the case may be) such jurisdiction and only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability in or as it relates to (as the case may be) such jurisdiction shall not otherwise invalidate or render unenforceable such provision (in such or any other jurisdiction); (ii) if (without limitation of, and after giving effect to, clause (i)) such provision is prohibited or unenforceable only in a particular context (including only as to a particular Person or Persons or under any particular circumstance or circumstances), such provision shall be ineffective, but only in such particular context; and (iii) without limitation of clauses (i) or (ii), such ineffectiveness shall not invalidate any other provision of this Agreement.   Without limitation of the preceding sentence, it is further the desire, and intent and agreement, of the Parties that if the Chief Administrator (or, if applicable pursuant to Section 6.3.2, the Special Master) determines that any provision of this Agreement is prohibited or unenforceable to any extent or in any particular context but in some modified form would be enforceable, the Chief Administrator (or, if applicable pursuant to Section 6.3.2, the Special Master) shall have the power to, and shall, (x) modify such provision for purposes of such proceeding in accordance with clauses (i), (ii) and (iii) of the preceding sentence and otherwise to the minimum extent necessary so that such provision, as so modified, may then be enforced in such proceeding, and (y) enforce such provision, as so modified pursuant to clause (x), in such proceeding.  In any event, upon any such determination that any term or other provision is invalid, illegal or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible to the fullest extent permitted by applicable law.  Nothing in this Section 16.4.2 is intended to, or shall, limit (1) Section 6.4.1 or (2) the intended effect of Section 6.2.

6.5    Facsimile Signatures

This Agreement and any amendments thereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF file format), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

11

6.6    Construction

With regard to each and every term and condition of this Agreement, the Parties understand and agree that the same have or has been mutually negotiated, prepared and drafted, and if at any time the Parties desire or are required to interpret or construe any such term or condition or any agreement or instrument subject hereto, no consideration shall be given to the issue of which party thereto actually prepared, drafted or requested any term or condition of thereof.

6.7    Entire Agreement

This Agreement (together with the Settlement Agreement, with respect to Merck and the NPC) contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes and cancels all previous agreements, negotiations, and commitments in writings between the Parties hereto with respect to the subject matter hereof.

6.8    Headings; References

The headings of the Table of Contents, Articles and Sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement. Any reference to an Annex shall be deemed to refer to the applicable Annex attached hereto. The words "include" and "including" and words of similar import when used in this Agreement or any Annex hereto are not limiting and shall be construed to be followed by the words "without limitation," whether or not they are in fact followed by such words. The definitions contained in, or incorporated into, this Agreement are applicable to the singular as well as the plural forms of such terms. Words of any gender (masculine, feminine, neuter) mean and include correlative words of the other genders. As used herein or in any Annex hereto, the term "dollars" and the symbol "$", shall mean United States dollars.

6.9    No Third Party Beneficiaries; Assignment

6.9.1    Except with respect to any rights of any Indemnified Party pursuant to Section 2.6, no provision of this Agreement is intended to create any third-party beneficiary to this Agreement. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns; provided, however, that neither this Agreement nor any of the rights, interests, or obligations hereunder may be assigned by (i) the NPC without the prior written consent of Merck or (ii) the Escrow Agent without the prior written consent of Merck. Any assignment in violation of this Section 6.9.1 shall be null and void ab initio.

6.9.2    For the avoidance of doubt and without limitation of Section 6.9.1 but also without limitation of the NPC's right to enforce this Agreement, no Program Claimant (including any Enrolled Program Claimant or Qualifying Program Claimant) shall have any right to institute any proceeding, judicial or otherwise, against Merck or the Escrow Agent to enforce, or otherwise with respect to, this Agreement.

12

6.10    Amendments

This Agreement may be amended by an instrument signed by Merck, the NPC and the Escrow Agent.

6.11    Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument. It shall not be necessary for any counterpart to bear the signature of all Parties hereto.

6.12    Certain Payments

Any amount payable pursuant to Section 2.4 or Section 2.6 shall be deemed to constitute "Administrative Expenses" for purposes of the Settlement Agreement. Any amount payable pursuant to Section 2.4 or Section 2.6 shall be paid out of the Administrative Expenses Fund; provided that if the funds in the Administrative Expenses Fund are not sufficient to entirely pay any such amount within 60 days of it becoming due and payable then Merck shall directly pay such unpaid amount to the Escrow Agent.

6.13    Amendments to the Settlement Agreement; Claims Administrator

6.13.1 Merck and the NPC shall promptly notify the Escrow Agent of any amendment or modification to the Settlement Agreement and include in such notice a copy of any such amendment or modification.

6.13.2 Merck and the NPC shall promptly apprise the Escrow Agent of any change in the identity of the "Claims Administrator" under the Settlement Agreement.

6.14    No Claims

In furtherance and not in limitation of 6.9, no Program Claimant (or his counsel), or other third party, shall have (i) any right, title or interest in, or any right to execute upon, garnish or attach, the Escrow Fund or any funds therein in any manner or (ii) any right to compel payment from the Escrow Fund of any claim or other amount. For the avoidance of doubt, all issues relating to when Settlement Payments are required to be paid are governed solely by the Settlement Agreement.

6.15    Customer Identification and TIN Certification

6.15.1 To help the government fight the funding of terrorism and money laundering activities, Federal laws require all financial institutions to obtain, verify and record information that identifies each individual or entity that opens an account. Therefore, the Escrow Agent must obtain the name, address, taxpayer or other government identification number, and other information, such as date of birth for individuals, for each individual and business entity that is a party to this Agreement. For individuals signing this Agreement on their own behalf or on behalf of another, the Escrow Agent requires a copy of a driver's license, passport or other form of photo

13

identification. For business and other entities that are parties to this Agreement, the Escrow Agent will require such documents as it deems reasonably necessary to confirm the legal existence of the entity.

6.15.2  At the time of or prior to execution of this Agreement, Merck and the NPC (the "Escrow Parties") providing a tax identification number for tax reporting purposes shall provide to the Escrow Agent a completed IRS Form W-9, and every individual executing this Agreement on behalf of an Escrow Party shall provide to the Escrow Agent a copy of a driver's license, passport or other form of photo identification acceptable to the Escrow Agent. The Escrow Parties agree to provide to the Escrow Agent such organizational documents and documents establishing the authority of any individual acting in a representative capacity as the Escrow Agent may require in order to comply with its established practices, procedures and policies.

6.16    Further Assurances

The Escrow Parties shall execute and deliver any and all such agreements or other documents, and do all other things, reasonably necessary or appropriate to carry out fully the provisions of this Agreement and requested from time to time by the Escrow Agent.  Without limitation of the foregoing, the Escrow Agent may reasonably specify the form of any notice or direction that may be given to it under Article IV hereof.

**Article VII**
**Definitions**

7.1    Definitions.

For the purposes of this Agreement, the following terms (designated by initial capitalization throughout this Agreement) shall have the meanings set forth in this Section.

7.1.1  "Administrative Expenses Fund" means a segregated sub-account of the Escrow Fund for the purpose of separately holding and administering any amount transferred by Merck or (in respect of any Letter of Credit) the Claims Administrator pursuant to the Settlement Agreement and specified pursuant to Section 3.1 that it must be deposited into the Administrative Expenses Fund.

7.1.2  "IS Pro Rata Share" means the quotient of the IS Aggregate Settlement Amount divided by the Overall Aggregate Settlement Amount.

7.1.3  "MI Pro Rata Share" means the quotient of the MI Aggregate Settlement Amount divided by the Overall Aggregate Settlement Amount.

7.1.4  "MI Settlement Fund" means a segregated sub-account of the Escrow Fund for the purpose of separately holding and administering any amount transferred by Merck or (in respect of any Letter of Credit) the Claims Administrator pursuant to the Settlement Agreement and specified pursuant to Section 3.1 that it must be deposited into the MI Settlement Expenses Fund.

14

7.1.5   "Moody's" means Moody's Investors Service, Inc.

7.1.6   "Net Investment Earnings" means, with respect to any specified period, the Earnings minus the Losses, in each case for such period, provided that if, with respect to any specified period, such amount would (but for this proviso) be a negative number, "Net Investment Earnings" for such specified period shall be deemed to equal zero and such negative amount shall be carried over into the calculation of "Net Investment Earnings" with respect to the immediately following specified period.

7.1.7   "Payment Report" has the meaning ascribed to such term in the Settlement Agreement, provided that the form of Payment Report also must be in a form reasonably satisfactory to the Escrow Agent.

7.1.8   "IS Settlement Fund" means a segregated sub-account of the Escrow Fund for the purpose of separately holding and administering any amount transferred by Merck or (in respect of any Letter of Credit) the Claims Administrator pursuant to the Settlement Agreement and specified pursuant to Section 3.1 that it must be deposited into the IS Settlement Expenses Fund.

7.1.9   "Permitted Investments" means (i) direct obligations of the United States, or of any agency thereof, or obligations guaranteed as to principal and interest by the United States or any agency thereof, (ii) certificates of deposit or bankers' acceptances issued, or time deposits held, or investment contracts guaranteed, by any nationally-recognized securities dealer or any other commercial bank, trust company, savings and loan association or savings bank organized under the laws of the United States, or any State thereof, or of any other country which is a member of the OECD, or a political subdivision of any such country, and in each case having outstanding unsecured indebtedness that (on the date of acquisition thereof) is rated AA- or better by S&P or Aa3 or better by Moody's (or an equivalent rating by another nationally-recognized credit rating agency of similar standing if neither S&P nor Moody's is then in the business of rating unsecured bank indebtedness), (iii) obligations with any bank or trust company described in clause (ii), above, or any nationally-recognized securities dealer, in respect of the repurchase of obligations of the type described in clause (i), above, provided that such repurchase obligations shall be fully secured by obligations of the type described in said clause (i) and the possession of such obligations shall be transferred to, and segregated from other obligations owned by, such bank or trust company or such securities dealer, (iv) commercial paper rated (on the date of acquisition thereof) A-1 or P-1 or better by S&P or Moody's, respectively (or an equivalent rating by another nationally-recognized credit rating agency of similar standing if neither S&P nor Moody's is then in the business of rating commercial paper), (v) any eurodollar certificate of deposit issued by any commercial bank, trust company, savings and loan association or savings bank organized under the laws of the United States, or any State thereof, or of any country which is a member of the OECD, or a political subdivision of any such country, and in each case having outstanding unsecured indebtedness that (on the date of acquisition thereof) is rated AA- or better by S&P or Aa3 or better by Moody's (or an equivalent rating by another nationally-recognized credit rating agency of similar standing if neither S&P nor Moody's is then in the business of rating unsecured

15

bank indebtedness), (vi) money market or mutual funds registered under the Investment Company Act of 1940, as amended, (x) investing in any of the instruments described in the foregoing clauses (i) through (v) or (y) rated AAA by S&P or Aaa by Moody's, (vii) enhanced cash funds, (viii) any other investment vehicle agreed to, from time to time, by Merck and the NPC or (ix) any combination of the foregoing clauses (i) through (viii).

7.1.10 "S&P" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc.

7.1.11 "Settlement Parties" means Merck and the NPC.

7.1.12 "Settlement Funds" means the MI Settlement Fund and the IS Settlement Fund.

7.1.13 "Sub-Fund" means any of the Administrative Expenses Fund, the MI Settlement Fund and the IS Settlement Fund.

7.2   Cross Reference of Other Definitions.

Each capitalized term listed below is defined in the corresponding Section of this Agreement:

## INDEX OF TERMS

Disputed Payment ................................................................................. 4.2.3
Earnings ................................................................................................. 4.1
Escrow Agent ................................................................................ Preamble
Escrow Fund ...................................................................................... 1.1.1
Escrow Funds Report ............................................................................ 4.3
Escrow Parties ................................................................................. 6.15.1
Indemnified Party ............................................................................... 2.6.1
Investment Direction ............................................................................. 4.1
Losses ..................................................................................... 4.1. 2.6.1
Merck ............................................................................................ Preamble
Merck Dispute Notice ........................................................................ 4.2.3
NPC ................................................................................................ Preamble
Parties ............................................................................................. Preamble
Party ................................................................................................ Preamble
Proceeding ......................................................................................... 2.6.1
Settlement Agreement ......................................................................... Recitals

16

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

MERCK & CO., INC.

By: _____
    Name:
    Title:

### NEGOTIATING PLAINTIFFS' COUNSEL

_____
Andy D. Birchfield Jr.
Beasley, Allen, Crow, Methvin, Portis & Miles,
    P.C.

_____
Edward F. Blizzard
Blizzard, McCarthy & Nabers, LLP

_____
Thomas V. Girardi
Girardi and Keese

_____
Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP

_____
Arnold Levin
Levin, Fishbein, Sedran & Berman

**[Signature Pages for Escrow Agreement]**

EAST_60034196_10.DOC

_____

Christopher A. Seeger
Seeger Weiss LLP


**[ESCROW AGENT]**


By: _____
     Name:
     Title:


**[Signature Pages for Escrow Agreement]**

CAUTION: This timeline is meant to describe the below events only in a general way. Those seeking to rely on the specific terms of the settlement agreement or orders should refer to the documents themselves.

## Settlement Agreement
## Key Dates



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE KNOWLES |

**THIS DOCUMENT RELATES TO ALL CASES**

**PRETRIAL ORDER NO. 14**
**NOTICE TO COUNSEL IN ALL CASES**

**I.    APPLICABILITY OF ORDER**

This Order shall govern all cases (1) transferred to this Court by the Judicial Panel

on Multidistrict Litigation, pursuant to its Order of February 16, 2005; (2) any tag-along actions

subsequently transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to

Rule 7.4 of the Rules of Procedure of that Panel; and (3) all related cases originally filed in this

Court or transferred or removed to this Court.

**II.    FILING OF PRE-TRIAL ORDER NO. 14**

A copy of this Order shall be filed in each case transferred to this District and shall

apply to all such cases removed to, or transferred to, this Court and cases filed in this Court that are

within the subject matter of this MDL.  In cases subsequently filed, a copy will be provided by the

Clerk to each Plaintiff at the time of filing the complaint.  In cases subsequently removed or

transferred to this Court, a copy will be provided by the Clerk to each new party upon removal or

transfer.

EXHIBIT

B



## III.   **LEXIS NEXIS FILE & SERVE**

The Court has been informed that a number of counsel have not complied with the registration provisions of paragraph 2 of Pretrial Order No. 8, which was entered on April 8, 2005. Lexis Nexis File & Serve was activated and utilized for all service in this litigation on Wednesday, May 11, 2005 at 9:00 a.m. As of that date, all service is to be accomplished by uploading filings to File & Serve in accordance with Pretrial Order No.8.  Liaison Counsel has continued to serve documents on the non-registered attorneys on their respective service lists to accommodate late registrants. Effective June 1, 2005, PLC and DLC will discontinue such service and all service shall be by Lexis Nexis File & Serve.  Further the Court's Orders and Minute Entries shall be uploaded by DLC to File & Serve for access by all registered users.  It is the responsibility of all counsel to register with File & Serve in order to receive the Court's Orders and Minute Entries and service of pleadings in this case.  *See* PreTrial Order No. 8, which can be found on the Court's MDL 1657 website located at http://vioxx.laed.uscourts.gov . Accordingly,

IT IS ORDERED that effective June 1, 2005, all service shall be by Lexis Nexis File & Serve.  Attorneys who fail to register will no longer receive service of documents filed in the MDL.  PLC shall continue to serve any non-represented institutionalized plaintiffs.

IT IS FURTHER ORDERED that all counsel shall immediately update and notify PLC and DLC whenever the contact information required by PreTrial Order 5A changes.

## IV.   NOTICE TO ALL COUNSEL

Copies of all Pretrial Orders entered in this case, copies of some of the Court's Minute Entries and other important information, are or will be posted on the Court's MDL 1657 website located at http://vioxx.laed.uscourts.gov. It is the responsibility of all counsel to regularly check the website and to familiarize themselves and comply with all orders governing this case. These orders apply to all cases presently filed as well as all subsequently filed. Further,

IT IS ORDERED that Paragraph 10 of Pretrial Order No. 1 regarding DOCKETING is hereby AMENDED as follows:

DOCKETING -- When an action that properly belongs as part of In Re: VIOXX Products Liability Litigation is hereinafter filed in the Eastern District of Louisiana or transferred here from another court, the Clerk of this Court shall:

a.   Place a copy of this Order (Pretrial Order No. 14) in the separate file for such action;

b.   Make an appropriate entry on the master docket sheet;

c.   Mail or e-mail to all counsel in the newly filed or transferred case a copy of this Order (Pretrial Order No. 14).

NEW ORLEANS, this   26th   day of   May  , 2005.


ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

%JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

1199SEIU Greater New York Benefit Fund, by its Trustees; The New York State Teamsters Council Health and Hospital Fund, by its Trustees,

## DEFENDANTS

BrownGreer, PLC; Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; Blizzard, McCarthy & Nabers, LLP; Girardi and Keese;

(b)  County of Residence of First Listed Plaintiff   New York County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Richmond City, Virginia
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c)  Attorney's (Firm Name, Address, and Telephone Number)

King, Krebs & Jurgens, P.L.L.C., 201 St. Charles Avenue, Ste. 4500; New Orleans, Louisiana 70170; See Attachment

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                               and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☒ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

Appeal to District Judge from Magistrate Judgment

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Employee Retirement Income Security Act of 1974 (ERISA), 29 USC Sec. 1001, et seq.

Brief description of cause:
Class action on behalf of ERISA-covered health benefit plans to enforce notification and reimbursement rights

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE   Judge Eldon E. Fallon      DOCKET NUMBER 2:05-md-1657 Vioxx MDL

DATE

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## ATTACHMENT TO CIVIL COVER SHEET

### Additional Attorneys for Plaintiffs

LEVY PHILLIPS & KONIGSBERG, LLP
Steven J. Phillips
Diane Paolicelli
800 Third Avenue
13th Floor
New York, NY 10022
Telephone: 212-605-6200
Facsimile: 212-605-6290

- and -

CROWELL & MORING, LLP
Andrew H. Marks
Robert T. Rhoad
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116