## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX PRODUCTS LIABILITY LITIGATION | : | |
| | : | |
| | : | |
| _____ | : | MDL 1657 |
| This Pleadings Relates to: | : | SECTION L |
| | : | HONORABLE ELDON FALLON |
| | : | MAGISTRATE KNOWLES |
| 1199SEIU GREATER NEW YORK BENEFIT FUND, et al. v. BROWNGREER, PLC, et al., Case No. 08-3627 | : | |
| _____ | : | |

## THE NPC DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## I.      **INTRODUCTION**

1199SEIU Greater New York Benefit Fund and The New York State Teamsters Council Health and Hospital Fund (collectively "Greater New York" or the "Plaintiffs") initiated this action by filing a class action complaint[1] (the "Class Action Complaint" or the "Complaint") on or about June 8, 2008.  Currently pending before this Court is a Motion to Dismiss and to Strike the Class Action Allegations in the Complaint (the "Motion to Dismiss") that was filed by Defendants Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; Blizzard, McCarthy & Nabers, LLP; Girardi & Keese; Herman, Herman, Katz & Cotlar, LLP; and Levin, Fishbein, Sedran & Berman (the "NPC Defendants" or "NPC").  *See* document # 14875 on the MDL docket, incorporated herein by reference.

Plaintiffs like other purported ERISA insurers (*e.g.*, AvMed, Inc.) now move for a preliminary injunction.  For the reasons set forth in detail below, the NPC Defendants respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction.

## II.      **FACTUAL BACKGROUND**

Rofecoxib was sold by Merck & Co., Inc. under the tradename, Vioxx, from May 1999 until September 20, 2004, when the cardiovascular dangers posed by Vioxx required that it be withdrawn from marketing.  *See* Complaint ¶29.  News coverage of Vioxx litigation was widespread and crescendoed with the November 9, 2007 announcement of the NPC's Settlement Agreement with Merck.  *Id.*, ¶30.  Greater New York was never heard from and apparently inactive during all this

---

[1] Plaintiffs' complaint seeks relief under the enforcement provision of the Employee Retirement Income Security Act ("ERISA"), §502(a)(3), 29 U.S.C. §1132(a)(3), which only permits suits by plan participants, beneficiaries or fiduciaries seeking "appropriate equitable relief."

time.  Only <u>after</u> the settlement was announced, did the named Plaintiffs make the feeble attempt to advise the defendants of their reimbursement and subrogation rights by drafting a so-called "Notice letter" to the NPC Defendants that did not identify any specific claimants that were participating in the Vioxx Settlement.  Not surprisingly, since the NPC Defendants were not given proper notice of a specific claim against a specific claimant and/or provided with information identifying a specific fund that applies to a particular claimant, none of the NPC Defendants responded to that so-called Notice letter.  *Id*., ¶52.

On February 20, 2008, counsel for Greater New York filed a Rule 27 Petition for Healthcare Recoveries, Inc. ("HRI"), seeking precisely the same relief as that sought in the instant Class Action Complaint.  In response, the Plaintiffs' Steering Committee (of which several of the instant NPC Defendant are members) filed a motion to dismiss.  On May 6, 2008, this Court dismissed the HRI Petition.  The Court held that "to place the burden and expense of producing this information on either the PSC or Merck rather than on HRI itself is improper and would be prejudicial."  *In re Vioxx Products Liability Litigation*, 2008 WL 1995098, *6 (E.D.La. May 6, 2008).

After belaboring their contingent fee strategy following the *HRI* decision for another month, these same counsel, now representing Greater New York, filed the instant Class Action Complaint purporting to represent a class of ERISA-covered health benefit plans against the NPC Defendants and BrownGreer, the Claims Administrator of the Vioxx Settlement Agreement.  That Settlement Agreement was entered into on November 9, 2007, between the NPC and Merck & Co., Inc.  The named Plaintiffs aver that it has no direct knowledge as to whether even one of its insureds is a Vioxx claimant participating in the Settlement Agreement.  *See* Complaint ¶33.  Implausibly claiming that it is not feasible to identify any of its insureds that are Vioxx Claimants from the

3

docket of this Court or other public records, *Id*. at ¶48, Greater New York seeks declaratory and injunctive relief from BrownGreer and the NPC Defendants.

In furtherance of this request for affirmative injunctive relief, Plaintiffs filed their motion for preliminary injunction on or about June 26, 2008.  The relief Plaintiffs are seeking in their motion for a preliminary injunction is two-fold.  First, Plaintiffs ask that the Court to sanction the wholesale violation of the Constitutionally protected privacy interest of Vioxx personal injury claimants by ordering the disclosure of highly confidential information.  *See* Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction ("Plaintiffs' Memo") at 2.  Specifically, Greater New York seeks a mandatory injunction that would compel production to Plaintiffs of the names of each and every settling claimant, their social security number, their mailing addresses over the past 10 years, their employers that provided coverage for Vioxx-related medical expenses, the names of their health insurers, the names and addresses of their attorneys and their settlement enrollment forms containing confidential medical information.  *See* Complaint ¶¶67, 77.  Absent this disclosure, Plaintiffs contend they will "have no effective means of enforcing their ERISA-protected rights to reimbursement for medical benefits they provided . . . [to Vioxx claimants]."  *See* Plaintiffs' Memo at 6.  This mandatory, affirmative injunctive relief is being sought for the purpose of enforcing private contractual rights.

Second, Plaintiffs seek to have this Court delay the distribution of settlement funds to tens of thousands of Vioxx claimants while they investigate potential equitable reimbursement claims.  *See* Plaintiffs' Memo at 2.  Plaintiffs contend they will be irreparably harmed unless this relief is granted since "once the proceeds of the Vioxx Settlement have been distributed to the tens of thousands of individual Vioxx Claimants, it will become overwhelmingly difficult – if not

impossible – for Plaintiffs to enforce their ERISA reimbursement rights at all." *Id*. at 7.

## III.   ARGUMENT

### A.   PLAINTIFFS CANNOT MEET THE STANDARD FOR ISSUANCE OF A PRELIMINARY INJUNCTION.

"A preliminary injunction is an extraordinary and drastic remedy," and "it is never awarded as of right." *Munaf v. Geren*, Nos. 06-1666 & 07-394, --- S. Ct. ----, 2008 WL 2369260, at *11 (U.S. June 12, 2008).  Such relief "should only issue if the movant shows:  (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest." *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).  These requirements are conjunctive; injunctive relief "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (citation and internal quotation marks omitted).

Plaintiffs bear a "heavy burden of persuading the district court that all four elements are satisfied." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (citation and internal quotation marks omitted).  This already heavy burden is even more difficult to satisfy when, as here, plaintiffs seek mandatory injunctive relief.  "Mandatory preliminary relief, which goes well beyond simply maintaining the status quo *pendente lite*, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).

Plaintiffs' motion for preliminary injunction should be denied since Plaintiffs cannot establish any of the requisite elements for issuance of a preliminary injunction under Rule 65.  For

starters, Plaintiffs can show neither a substantial likelihood of success on the merits nor a plausible threat or irreparable harm. The issuance of an injunction will also cause harm to Vioxx personal injury claimants who will not only face a delay in the distribution of settlement proceeds but will also be exposed to intrusions on their Constitutionally protected privacy interests. In reality, Plaintiffs seek to delay the distribution of settlement proceeds while they undertake a fishing expedition and seek to extort a one-time settlement against the proceeds of the aggregate settlement. Plaintiffs should be denied the means to accomplish these improper objectives. Should the Court disagree and determine that a preliminary injunction is appropriate, NPC Defendants respectfully request that the Court impose the highest possible bond requirement.

### B.    <u>PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS.</u>

Although Plaintiffs contend they are likely to succeed on the merits in light of "binding Supreme Court and Fifth Circuit precedent," *see* Plaintiffs' Memo at 6, no case law supports the relief Plaintiffs are requesting in their motion for preliminary injunction. To the contrary, Plaintiffs are unlikely to succeed on the merits for at least two reasons.

First, Plaintiffs have failed to demonstrate the existence of an "identifiable fund" in the "possession or control" of a plan beneficiary. No claims under § 502(a)(3) may proceed until these conditions are met. Second, even assuming Plaintiffs may proceed with § 502(a)(3) claims at this stage, there is no authority that supports Plaintiffs' assertion that the "equitable relief" available under this section would encompass disregarding the privacy interests of claimants by ordering the production of confidential information to a class of ERISA plans.

### 1.    There is no "Identifiable Fund" in the "Possession or Control" of Plan Beneficiaries.

As noted in the NPC Defendants' pending Motion to Dismiss, absent a fund in the possession

and control of a plan beneficiary, this action should be dismissed for lack of federal subject matter jurisdiction.[2]  Since Plaintiffs are still unable to point to such a fund and/or any plan beneficiary that may have an interest in settlement proceeds that have been distributed to them, Plaintiffs cannot succeed on the merits of their underlying ERISA claims.

In *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348 (5th Cir. 2003), the Fifth Circuit recognized a three-pronged inquiry for purposes of determining whether funds are subject to an action for equitable restitution under § 502(a)(3).  This three-pronged inquiry asks whether the plan seeks to recover funds, (1) that are specifically identifiable, (2) that belong in good conscious to the Plan, and (3) that are within the possession and control of the defendant beneficiary. *Bombardier*, 354 F.3d at 356.  Plaintiffs cannot establish any of these three requirements.

Under ERISA, the text of a plan determines a fiduciary's entitlement to seek relief in the form of equitable restitution.  To demonstrate a right to equitable restitution, Plaintiffs must engage in a plan-by-plan analysis of the contractual language in effect at the time each plan beneficiary received compensation for the injuries for which Plaintiffs claim they are entitled to equitable restitution.[3]  The Court must analyze the applicable contractual language as to each claimant against

---

[2] Since there is no federal subject matter jurisdiction, Plaintiffs cannot succeed on the merits. *See Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282 (5th Cir. 1999) (reversing issuance of preliminary injunction where district court lacked subject matter jurisdiction); *Rice v. Johnson*, 35 Fed.Appx. 389, 389 (5th Cir. 2002) ("A preliminary injunction cannot survive the dismissal of a complaint.") (citations omitted).

[3] *See Franks v. Prudential Health Care Plan, Inc*., 164 F.Supp.2d 865, 879 (W.D.Tex. 2001) (the law of the Fifth Circuit indicates that "the extent to which [a beneficiary] has a reimbursement obligation under his ERISA plan . . . **depends on what his ERISA plan said at the time he received treatment.**") (emphasis added).

which Plaintiffs claim a right to equitable restitution to determine whether a request for restitution

is in the nature of equitable relief, recoverable under ERISA, or legal relief, which is not recoverable

under ERISA. *See Sereboff v. Mid Atlantic Services, Inc.*, 547 U.S. 356 (2006); *Great-West-Life &*

*Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 207-208 (2002) (plan administrator's suit for

reimbursement, in accordance with plan provision, of benefits overpayments that had resulted from

beneficiaries' recoveries from third parties, was not equitable claim authorized under ERISA §

502(a)(3) because it sought "the imposition of personal liability . . . for a contractual obligation to

pay money.").

The finding of whether or not a plan is seeking equitable relief, as opposed to legal relief,

turns on whether the plan language attempts to create a right to be reimbursed against the general

assets of the plan beneficiary, considered to be in the nature of legal relief, or whether the plan

language attempts to create an equitable lien or constructive trust against the proceeds that a plan

beneficiary receives as compensation for his or her injuries. *See Sereboff*, 547 U.S. at 363

(explaining that the relief requested by Mid Atlantic was recoverable under ERISA since the

language in Mid Atlantic's plan "sought its recovery through a constructive trust or equitable lien

on a specifically identified fund, not from the Sereboff's assets generally, as would be the case with

a contract action at law.").

Even assuming Plaintiffs can demonstrate that the language in the operative plans would

entitle them to assert an equitable reimbursement claim under ERISA,[4] they are unable to point to

---

[4] As noted in the NPC Defendants' Motion to Dismiss, the Complaint quotes language from the named Plaintiffs' plans in an effort to establish that these plans create a right to equitable relief under ERISA. *See In Re Sec. Litig. BMC Software, Inc.*, 183 F.Supp.2d 860, 882 (S.D.Tex. 2001) (the court may "consider documents integral to and explicitly relied on in the

(continued...)

an identifiable fund within the possession or control of any plan beneficiary that received benefits for Vioxx induced injuries.

> a.      **Plaintiffs Cannot Establish the Existence of an Identifiable <u>Fund for Purposes of Their Claims under § 502(a)(3).</u>**

While Plaintiffs presume the existence of an "identifiable fund" based on the fact that their plans purportedly create an interest in settlement funds distributed to plan beneficiaries, *see* Plaintiffs' Memo at 17, in reality Plaintiffs are seeking a lien against an undistributed and unallocated aggregate settlement fund.  No authority supports such a lien.  Plaintiffs right to equitable reimbursement does not lie against an aggregate settlement fund, which is not an "identifiable fund" within the meaning of those cases concerning a plan fiduciaries right to equitable restitution under § 502(a)(3).

Because Plaintiffs admit the aggregate settlement fund is undistributed and unallocated, *see* Complaint ¶55, they are unable to identify a particular share of any fund that they are entitled to as equitable restitution for moneys paid to a plan beneficiary.  Indeed, as noted above, Plaintiffs are unable to identify even one claimant who may be subject to a claim for equitable restitution under ERISA.  They thus cannot succeed on the merits because, under *Sereboff*, they cannot assert an equitable reimbursement claim unless they have identified a "particular share" of a fund that, in good

---

[4](...continued)
complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint.") (internal quotations omitted).  Even assuming, however, that the quoted language establishes a right to equitable restitution under § 502(a)(3), Plaintiffs fail to attach the plans or indicate the time-frame the quoted language was being used by either of the named Plaintiffs.  This is not a sufficient showing, since the right to assert an ERISA claim under § 502(a)(3) turns on the plan language at the time a plan beneficiary received treatment for his or her injury.  Therefore, named Plaintiffs cannot demonstrate that they are entitled to equitable restitution for purposes of their motion for preliminary injunction.

conscience, belongs to them.  *See Eastom v. Redmond*, No. 1:03-CV-353-TS, 2006 WL 238078 (N.D. Ind. Aug. 14, 2006) (plaintiff failed to identify specific fund when he did not even know whether fund existed).

In *Knudson*, the Supreme Court was required to resolve whether §502(a)(3) authorized an insurance company to enforce a reimbursement provision in an ERISA plan that reserved "a first lien upon any recovery, whether by settlement, judgment or otherwise," obtained from a third party.  *See Knudson*, 534 U.S. at 207.  The Knudsons had recovered money in settlement of a tort lawsuit.  The bulk of the funds in the settlement were allocated either to a special needs trust or to the Knudson's attorneys.  Only $13,000 was allocated to Great-West, which sought to be reimbursed for over $400,000 in medical expenses covered pursuant to its insurance agreement.  The Supreme Court concluded that Great-West could not assert a claim under §502(a)(3) since it was seeking to impose personal liability upon the plaintiffs which was not typically available in equity.  *Id.* at 221.  A critical aspect of the Supreme Court's holding in *Knudson* is that no relief is available under ERISA where the settlement proceeds against which the plaintiff is seeking to assert an equitable reimbursement were not addressed to "particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 213.  Underlying the Supreme Court's analysis was that the Knudsons did not hold their funds directly and that Great-West's claims had not identified a particular fund belonging to it.  *Id.* at 214.  Thus, Great-West had failed to point to an "identifiable fund" for purposes of asserting its ERISA claim.[5]

---

[5] Following *Knudson*, a similar claim challenging ERISA's "appropriate equitable relief" provision was presented to the Fifth Circuit in *Bombardier, supra*.  Unlike *Knudson*, in *Bombardier*, the tort-injury plaintiff's lawyers placed their client's settlement funds in a trust account under the law firm's name.  The Fifth Circuit found that:

(continued...)

In *Sereboff*, *supra*, the Sereboffs had been involved in an automobile accident and Mid Atlantic, the administrator of the Sereboff's health care plan which had paid for their medical expenses, was suing the Sereboffs for breach of contract after they failed to address its lien notice which had detailed the medical expenses as they accrued and were paid by the plan. *See Sereboff*, 547 U.S. at 358-361. The Supreme Court focused on the "Acts of Third Parties" provision of the Sereboffs' plan, which stated that the provision, "applies when [a beneficiary is] sick or injured as a result of the act or omission of another person or party," and requires a beneficiary who "receives benefits" under the plan for such injuries to "reimburse [Mid Atlantic]" for those benefits from "[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)." *Id*. at 359.

The Supreme Court found that even though the lawsuit spoke in terms of breach of contract, "ERISA provides for equitable remedies *to enforce plan terms*." *Id*. at 363 (emphasis original). Because the lawsuit "sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboff's general assets," the claim was recognized in equity. *Id*. In reaching this result, the Supreme Court carefully distinguished *Knudson*. The Supreme Court found the factual scenario in *Sereboff* distinguished since, "Mid Atlantic sought

---

[5](...continued)

> because [the plan] seeks to recover specifically identifiable funds that are in the constructive possession and the legal control of the participant but belong in good conscience to the Plan, its actions for a constructive trust in no way seeks to impose personal liability on either defendant. Instead the Plan continues, it seeks relief that indeed is equitable in nature and thus authorized by §502(a)(3).

*Bombardier,* 354 F.3d at 355. Thus, unlike *Knudson*, the plaintiff in *Bombardier* was able to point to a specifically identifiable fund for purposes of asserting an equitable reimbursement claim. Accordingly, the relief being sought was deemed equitable and, thus, the claim against that beneficiary and his lawyers was permissible under §502(a)(3).

**specifically identifiable funds** that were within the possession and control of the Sereboffs - **that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan** . . .". *Id*. at 362-63 (emphasis added) (internal quotations and citations omitted).

In their Memorandum, Plaintiffs boldly state that, "[a]pplying the three-part test, Plaintiffs here seek a "specifically identifiable" fund; indeed, they seek the identical "fund" sought by the plaintiffs in *Sereboff* and *Bombardier* – *i.e.*, that portion of the settlement proceeds equivalent to the benefits the plan paid for each plan beneficiary." *See* Plaintiffs' Memo at 17. Plaintiffs are mistaken. *Sereboff* and *Bombardier* are distinguishable since each of these cases involved a single ERISA plan seeking to enforce its right to equitable restitution against a specifically identified plan beneficiary. Additionally, in both cases their was also an identifiable fund (settlement proceeds being held in trust by the attorneys that represented the plan beneficiary in the underlying action) as opposed to an unallocated and undistributed aggregate settlement fund. While the quoted language from the named Plaintiffs' plans may attempt to mirror the plan language discussed in *Sereboff*, the language in an ERISA plan cannot, by itself, create an identifiable fund where Plaintiffs are only able to point to an aggregate settlement fund.

Furthermore, even if Plaintiffs could identify a beneficiary that is participating in the settlement and believe that they may be entitled to recover some share of the proceeds for that beneficiary, an equitable reimbursement action would fail because the forgoing authority makes clear that an aggregate settlement is not an identifiable fund under ERISA. Under *Sereboff*, the "identifiable fund" was the particular fund established by the terms of the plan itself - *i.e.*, any recovery personal to the beneficiary. Each such recovery is thus a separate fund. Under the reasoning of *Sereboff*, it would not be enough to identify a general fund out of which recoveries

12

might be paid.  In short, under *Sereboff, Knudson* and *Bombardier*, Plaintiffs cannot pursue an equitable reimbursement action until an identifiable fund is created.  This will not come about until funds have been distributed to Vioxx personal injury claimants and/or to their attorneys.

> **b.     There are no Proceeds within the "Possession or Control" of Plan Beneficiaries.**

Pursuant to *Knudson* and the law of this Circuit as clarified in *Bombardier*, as a prerequisite to asserting a claim for equitable restitution, there must be an identifiable fund within the "possession or control" of a plan beneficiary.  The aggregate settlement is presently outside the "possession or control" of plan beneficiaries since it is being held in trust by a third-party trustee.  Plaintiffs are thus unable to succeed on the merits of their ERISA claims.

The Fifth Circuit analyzed *Knudson* and *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439 (5th Cir. 2002), in *Bombardier* to determine the extent to which assets outside the direct control of a plan beneficiary may be subject to an equitable reimbursement under ERISA.  As was discussed in detail above, in *Knudson* the Supreme Court had determined that funds in a Special Needs Trust were not in the possession or control of the claimant for purposes of an equitable reimbursement action under § 502(a)(3).  *Knudson*, 534 U.S. at 362.  Likewise, in *Bauhaus*, the Fifth Circuit panel concluded that funds that had been placed in the registry of the Mississippi Chancery Court, pursuant to the terms of a personal injury settlement agreement, were just as much beyond the "possession and control" of the beneficiary as those funds in the Special Needs Trust in *Knudson.  See Bauhaus*, 292 F.3d at 445.  In analyzing this authority in *Bombardier*, the Fifth Circuit observed:

> **It is, however, the third element of the inquiry-the defendant-beneficiary's *"possession and control"* over the disputed funds-that distinguishes Knudson and Bauhaus from the case before us today.**

In Kundson and Bauhaus, the beneficiary had neither actual nor constructive possession or control over the funds. **In Knudson, the funds had been placed in a Special Needs Trust**, as mandated by California law, to provide for the beneficiary's medical care, ***and the trustee was totally independent of the plan beneficiary.* Similarly, in Bauhaus, the funds had been deposited in the state court's registry** in anticipation of an interpleader action to determine their ownership. **Obviously, *that court was totally independent of the plan beneficiary.* Here, in stark contrast, the funds that the Plan is seeking to recover belong to the participant and are simply being held in a bank account in the name of the participant's attorneys, who are indisputably his agent.** Unlike the beneficiaries in *Knudson* and *Bauhaus*, ***the Plan's participant*, Mestemacher, *has ultimate control over, and thus, constructive possession of, the disputed funds.*** The law firm and Mestemacher concede that the law firm is merely holding the funds in its trust account on Mestemacher's behalf-as *Mestemacher's agent*-and is legally obligated to disburse the funds to Mestemacher the moment he directs their release. This crucial distinction is more than sufficient to warrant a finding that the Plan's action is indeed "equitable" in nature.

*Id*. at 356 (emphasis added). For purposes of an equitable reimbursement under § 502 (a)(3), *Bombardier* establishes that such actions are only proper once settlement funds are in the "possession or control" of a plan's beneficiary either directly or through the doctrine of constructive possession, *i.e.*, once the funds are in the hands of the party's agent/attorney for distribution to the plan beneficiary.

The Fifth Circuit's rationale in *Bombardier* demonstrates that the funds set aside in the aggregate settlement fund are not subject to an equitable reimbursement action. Like *Knudson* and *Bauhaus*, the aggregate settlement is being held in trust by a party that is not an agent of any particular claimant, BrownGreer, and the funds are outside the possession or control of the claimants. Simply stated, the funds are not in the "possession or control" of a plan beneficiary either directly or through an agent/attorney since BrownGreer is "totally independent" of any plan

14

beneficiaries.  Since the settlement proceeds at issue are presently in the possession of a third-party claims administrator, Plaintiffs' assertion that "Defendants indisputably have "possession and control" of settlement funds held by attorneys on the Vioxx Claimants' behalf," *see* Plaintiffs' Memo at 17, is factually inaccurate and misrepresents a critical aspect of Plaintiffs' ERISA claims.[6] The settlement funds are clearly outside the control of plan beneficiaries for purposes or claims under § 502 (a)(3).  Therefore, Plaintiffs' contention that the "instant case is indistinguishable on the merits from *Sereboff* and *Bombardier* . . .", *see* Plaintiffs' Memo at 17, is incorrect.

Once funds are actually distributed to claimants or their attorneys, class members may pursue equitable reimbursement actions under ERISA.  At that point, the funds will be both identifiable and in the possession/control of plan beneficiaries, *i.e.*, the factual predicate justifying the decisions in *Sereboff* and *Bombardier*.  From a procedural standpoint, such actions will need to be asserted directly against plan beneficiaries or agents of the plan beneficiaries, such as an attorney, who is holding the settlement proceeds in trust for distribution to a specific plan beneficiary.

In any event, since Plaintiffs cannot demonstrate the existence of an "identifiable fund" in the "possession or control" of a plan beneficiary for purposes of pursuing an action under §502(a)(3), the Court lacks jurisdiction to render the equitable relief sought by Plaintiffs. Accordingly, Plaintiffs are unlikely to succeed on the merits of their claims.

### 2.  ERISA does not Afford Plaintiffs the right to Private Personal Information Concerning All Claimants.

Plaintiffs are also unlikely to succeed on the merits so far as they request that the Court compel the production of private personal information concerning Vioxx personal injury claimants.

---

[6] This assertion by Plaintiffs is also at odds with their acknowledgment in the Complaint that the settlement proceeds are being controlled by BrownGreer.  *See* Complaint at ¶ 4.

While ERISA does authorize certain prohibitory injunctive relief under §502(a)(3), it seems clear that the equitable relief available under ERISA would not encompass the wholesale violations of privacy rights sought by Plaintiffs.  At minimum, one would expect that the type of relief being requested by Plaintiffs would require that an ERISA plan come forward and demonstrate some association with a specifically identified claimant.  Plaintiffs make no effort to demonstrate such an association.  Nor do Plaintiffs explain how the release of such information could be accomplished without running afoul of federal privacy laws, or with the terms of the Settlement Agreement itself, which expressly provides that such information "shall be kept confidential by the Parties . . . and shall not be disclosed except" in circumstances not present here.  *See* Settlement Agreement § 15.1.

Where a fiduciary believes a particular plan beneficiary has secured a settlement from which the plan would be entitled to a recovery, the ordinary course is for the fiduciary to bring suit against that beneficiary and seek details of his recovery through ordinary discovery.  *See*, *e.g.*, *UnitedHealth Group, Inc. v. Dowdy*, No. 8:06-CV-2111, 2007 U.S. Dist. LEXIS 80090 (M.D. Fla. Oct. 29, 2007).  NPC Defendants know of no precedent for the relief that Plaintiffs seek here, *i.e.*, an affirmative injunction compelling that Defendants conduct and absorb the costs of a witch-hunt on Plaintiffs behalf.  Nor are Plaintiffs able to cite to any cases where a Court has sanctioned the type of privacy violations sought by Plaintiffs.  In fact, Judge Higbee rejected a similar effort in the Vioxx proceedings pending in New Jersey state court.  *See In re Vioxx Litigation, Case No. 619*, ATL-L-590-08, Transcript at 45 (N.J.Super. Atlantic Cty. March 14, 2008) (Higbee, J.) ("[T]he Court does not provide you lists of people who've settled their cases so that insurance companies can go to them before they get their checks.  That's not the way its done.  And it's only because it's a pool of money

that I think people, you know, vultures tend to circle around.").[7]

The absence of supporting authority is perhaps due to the fact that the relief requested by Plaintiffs is precluded by Constitutional privacy interests. Substantively, the Due Process clause of the United States Constitution "embodies a promise that a certain private sphere of individual liberty will be kept largely beyond the reach of the Government." *Thornburgh v. American College of Obstetricians and Gynecologists*, 476 U.S. 747, 772 (1986). This constitutional right to privacy extends to "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977); *Fudjo v. Coon,* 633 F.2d 1172, 1175 (5th Cir. 1981).

Medical information and records of a patient are clearly within this constitutionally-protected sphere. *Whalen*, 429 U.S. at 598; *Sherman v. United States*, 244 F. 3d 357, 365 (5th Cir. 2001) ("an individual's informational privacy interest in his or her SSN is substantial."); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("although the full measure of the constitutional protection of the right to privacy has not yet been delineated, . . . [t]here can be no question that an employee's medical records . . . are well within the ambit of materials entitled to privacy protection").

Plaintiffs request that the Court order the disclosure of the names, Social Security numbers and other personal identity information of all Vioxx Claimants. This disclosure, if permitted, would necessarily reveal sensitive, personal medical information that is subject to Constitutional protection.

As noted above, the Settlement Agreement does not require that Vioxx Claimants waive their presumptive expectation that this information will continue to receive protection against compelled disclosures. Indeed, the Settlement Agreement requires that the parties maintain the information as

---

[7]A copy of the complete transcript is attached hereto as Exhibit "A".

confidential and does not authorize its disclosure except in limited, unrelated circumstances.  *See*

Settlement Agreement § 15.1.[8]  Thus, the personal medical information (including their SSNs) of

Vioxx Claimants requested by Plaintiffs is within the realm of privacy protected by the Constitution

and may not be disclosed to Plaintiffs unless there is a compelling interest in such disclosure.  *See*

*Sherman, supra*.  *See also* The Health Insurance Portability and Accountability Act (HIPAA), Pub.L.

104-91, 110 Stat. 1936 (Aug. 21, 1996) and 45 CFR §164.508.

In their memorandum, Plaintiffs attempt to minimize the breadth of these privacy invasions

by stating that they would "limit disclosure to Plaintiffs of identifying information *only* for those

claimants who are participants in their plans."  *See* Plaintiffs' Memo at 7.[9]  Even if the requested

information could somehow be limited to only those claimants that are potentially subject to claims

for equitable restitution, Plaintiffs are essentially proposing the production of a list of claimants (that

includes highly confidential information) who are prospective targets of ERISA actions.  Each

ERISA Plan that is a member of the class would seemingly have access to this information for

purposes of conducting its own internal investigation.  While certain Plans might arguably have an

interest in claims information for specifically identified plan beneficiaries that are subject to

equitable restitution claims, Plaintiffs clearly have no such interest with respect to claimants that did

not receive such benefits or where the language in the applicable plan fails to create a right to

---

[8] As noted in the NPC Defendants' Motion to Dismiss, Plaintiffs' Complaint asserts that the privacy interests of Vioxx personal injury claimants have been waived by virtue of the fact that the information they are seeking was provided to Merck and BrownGreer.  Complaint ¶60. This assertion overlooks the confidentiality provision in the Settlement Agreement.

[9] Notwithstanding this assertion, Plaintiffs make it clear later on in their brief that they are requesting "the names, social security numbers, and employment information of [all] the settling claimants . . .".  *Id.* at 18.

equitable restitution.[10]  Even for those claimants that have a connection to one or more class members, there is no justification for sharing their personal information with each ERISA plan that is a member of the class.  For this reason alone, class members should be required to independently identify Vioxx claimants that may be subject to ERISA claim.  Once such claimants are identified, class members could initiate lawsuits and request the very information Plaintiffs are seeking in their motion for preliminary injunction.

Finally, although Plaintiffs purport to be requesting preliminary injunctive relief, their motion should clearly be denied in so far as Plaintiffs ask the Court to compel specific performance of private contractual agreements.  This aspect of their motion for preliminary injunction goes well beyond a mere request that the Court maintain the status quo and, thus, is not in the nature of preliminary relief.  *See Enterprise Int'l, Inc.*, 762 F.2d at 476 (a preliminary injunction "should not grant relief properly awarded only in a final judgment, and it is an abuse of discretion for the district court to issue a preliminary injunction which permits one party to obtain an advantage by acting, while the hands of the adverse party are tied by the writ.") (citations and internal quotation marks omitted).

For the forgoing reasons, Plaintiffs are unlikely to succeed on the merits of their ERISA claims.

## C.    PLAINTIFFS CANNOT ESTABLISH THAT THEY WILL SUFFER IRREPARABLE INJURY.

Plaintiffs cannot demonstrate that they will suffer irreparable injury in the absence of a stay

---

[10] The right to such information would obviously need to be established on a case-by-case basis once there is a "identifiable fund" within the "possession or control" of a plan beneficiary. As neither event has transpired, the relief sought is further attenuated.

19

for at least two reasons.[11]  First, although Plaintiffs contend they will be unable to enforce their ERISA rights once settlement funds have been distributed to claimants and commingled with other assets, language in *Sereboff* calls this assertion into question.  Indeed, *Sereboff* strongly suggests that equitable restitution claims may be available to class members even after settlement proceeds have been distributed to claimants and commingled with other assets.  Second, Plaintiffs' entire argument that plan beneficiaries are likely to disregard their reimbursement obligations is based on pure speculation and conjecture.  Even if claimants themselves are unaware of their reimbursement obligations, the requirements imposed by the Settlement Agreement as well as the various materials distributed or otherwise made available to claimants and their counsel make it likely that most, if not all, plan beneficiaries will satisfy ERISA claims.

The essence of Plaintiffs' irreparable injury argument is that they will lose their ability to assert ERISA claims against Vioxx personal injury claimants once settlement funds are distributed to those claimants and commingled with other assets.  That argument is questionable.

In *Sereboff* the defendants had attempted to defeat the ERISA claim for equitable restitution by arguing that ordinary equity principles precluded a constructive trust or equitable lien since defendants had commingled the funds at issue with other funds.  In rejecting this argument the Supreme Court recognized a distinction between an ordinary constructive trust or equitable lien and an equitable lien "by agreement."  *Sereboff*, 547 U.S. at 364-65.  The Supreme Court addressed any

---

[11] As a threshold matter, there is no immediate injury extant.  Distributions are not anticipated before August.  Of the Interim Settlement Payments contemplated to occur in August, only 40% of the estimated Final Settlement Payment will be distributed.  *See* Settlement Agreement §4.1.  The 60% balance owed should be more than sufficient to address any potential claims asserted by Plaintiffs, assuming that Plaintiffs could ever establish their right to such relief.

"tracing requirement" regarding "an equitable lien by agreement," as follows:

> ***Barnes* confirms that no tracing requirement of the sort asserted by the Sereboffs applies to equitable liens by agreement or assignment**: The plaintiffs in *Barnes* could not identify an asset they originally possessed, which was improperly acquired and converted into property the defendant held, yet that did not preclude them from securing an equitable lien. **To the extent Mid Atlantic's acquisition is proper under Barnes, therefore, its asserted inability to satisfy the "strict tracing rules" for "equitable restitution" is of no consequence.**

*Id*. at 365 (emphasis added).[12]

Based on this language from *Sereboff*, Plaintiffs will be hard-pressed to establish that they will lose their ability to pursue equitable restitution claims once settlement proceeds are distributed to Vioxx personal injury claimants. *Sereboff* can arguably be construed to eliminate a strict tracing requirement for purposes of an action under § 502(a)(3). Indeed, after Sereboff it is plausible that relief may well be available even when settlement moneys have been fully "dissipated" by the claimant because any legitimate "fund" would exist by agreement (*i.e.*, under the terms of the plan). For instance, in *Schultz v. Progressive Health, Life, & Benefits Plan*, 481 F. Supp. 2d 594, 595-96 (S.D. Miss. 2007), another district court in this Circuit determined that funds that had been spent were still subject to equitable restitution under ERISA.[13]

---

[12] *Barnes v. Alexander*, 232 U.S. 117 (1914) is an early case that recognized an equitable claim to a portion of a contingent fee that was promised by one attorney to another.

[13] In *Schultz*, Aetna sought to recover overpayments from a plan beneficiary who had received social security payments, which under the plan terms were supposed to offset any benefits paid by the plan. Schultz objected, arguing that she did "not have a specific identifiable asset which can be recovered by Aetna because she spent all of the overpaid funds, and therefore the funds . . . [were] no longer in her possession or control." The court rejected the argument. Citing *Sereboff*, the court explained that "strict tracing rules do not apply to cases of equitable restitution when an equitable lien is imposed by agreement," as it was under the terms of the plan

(continued...)

Thus, Plaintiffs are unable to establish that they will lose their ability to pursue ERISA claims once funds are distributed to Vioxx personal injury claimants and commingled with other funds. Accordingly, Plaintiffs' argument that they will be irreparably harmed by such a distribution is speculative and does not support the issuance of a preliminary injunction.

Additionally, as noted above, Plaintiffs' efforts to establish irreparable harm are misguided since there is no evidence demonstrating that Vioxx claimants are likely to evade their obligations to satisfy ERISA reimbursement claims. For instance, the Settlement Agreement expressly contemplated that "satisfaction and discharge of any and all Liens, whether past, present or future, whether known or unknown or asserted or unasserted, with respect to any Settlement Payment (and/or the right to receive any Settlement Payment) are the sole responsibility of the relevant Enrolled Program Claimant." *See* Settlement Agreement § 12.1.3.

As Plaintiffs themselves acknowledge, *see* Plaintiffs' Memo at 4, 10-11, the NPC, the PSC and Merck have taken painstaking measures to assure that both claimants and their attorneys are aware of their obligations to satisfy any and all reimbursement obligations against the settlement proceeds ultimately recovered by a particular claimant. In describing these various provisions, the Plaintiffs state as follows:

> The Settlement Agreement expressly requires, *before any monies can be disbursed by the Settlement Administrator*, that each claimant and his/her counsel provide to Merck a signed release affirming that they "represent and warrant that any and all Liens with respect to any and all Settlement Payments...have been satisfied and discharged." *See* Settlement Agreement Exhibit 1.2.2.3 ("Release of All Claims"), Exh. 1 at 4 (emphasis added). To the same effect, the Settlement

---

[13](...continued)
in that case. *Id.* at 595. At least one other court has reached the same conclusion since *Sereboff. See Fregeau v. Life Ins. Co. of N. Am.*, 490 F. Supp. 2d 928, 931-32 (N.D. Ill. 2007).

Agreement release requires that each attorney representing a Vioxx Claimant sign a "Certification of counsel" representing that the attorney has discussed all issues relating to the Settlement Agreement with the claimant, and agrees to comply with his/her "joint and several obligations to provide representations and warranties regarding the satisfaction of, and indemnification with respect to, Liens," including, *inter alia*, liens by self-funded ERISA health benefit plants. *See Id.* at 11 (emphasis added).

*See* Plaintiffs' Memo at 4.[14]

Thus, as Plaintiffs themselves acknowledge, the Settlement Agreement requires a certification by counsel and releases by claimants and their attorneys to assure that reimbursement claims are discharged. In light of these provisions in the Settlement Agreement and the materials distributed to claimants and their attorneys, it is likely that virtually all ERISA claims will be properly discharged.

Based on the foregoing, Plaintiffs cannot demonstrated that they will suffer irreparable harm

---

[14] The PSC also circulated to Vioxx Claimants' counsel around the country a document called "Frequently Asked Questions: Healthcare Liens in the Vioxx Settlement." These "FAQs" specifically discuss the existence of healthcare liens of non-governmental payors, including ERISA plans, and state that it is the obligation of each Vioxx Claimant and his/her attorney to investigate the existence of any liens on the settlement funds, and to certify that such liens shall be satisfied *before any funds are disbursed*:

Prior to the disbursement of any Settlement benefits to your clients, and as a condition precedent to being entitled to receive their Settlement Payment, **you and your clients must certify that you have conducted a good faith investigation into the existence and amount of these other liens [including the liens held by self-funded ERISA Health Plans], and that any such liens will be satisfied from the respective clients' Settlement Payments.**

*See* Frequently Asked Questions: Healthcare Liens in the Vioxx Settlement at 5 (emphasis added). A copy of this document is attached as Exhibit 9 to Plaintiffs' motion for preliminary injunction. *See also* Claimant Educational Materials on Government Medical Liens/Obligations at 2, attached hereto as Exhibit "B".

in the absence of a preliminary injunction.

**D.    THE THREATENED INJURY TO PLAINTIFFS DOES NOT OUTWEIGH HARMS THAT WILL RESULT TO NON-MOVANTS.**

For the reasons set forth above, Plaintiffs will not suffer harm in the absence of an injunction. In stark contrast, non-movants will suffer irreparable injury should a stay be issued for several reasons.

First, as noted above, Vioxx claimants will find themselves subject to a major invasion of their privacy rights should the Court order the production of highly confidential personal information.  Second, many Vioxx claimants are experiencing financial hardships and will be severely prejudiced by any delay in their recovery of settlement proceeds.  Many claimants in this litigation suffered Vioxx injuries at or about the time Vioxx was launched in September 1999. These claimants include widows and widowers that have lost a primary income earner, as well as claimants that have suffered debilitating injuries that prevent them from working.

While many of these claimants have no affiliation with the class, it is conceivable that Plaintiffs' efforts will cause a delay in their receipt of the settlement proceeds they desperately require.  *See* Affidavit of Jon Feezel (affiant with no affiliation with any class members who is experiencing financial hardship), attached hereto as Exhibit "C"; Affidavit of Cheryl Pennington (same), attached hereto as Exhibit "D"; Affidavit of James Clouse (same), attached hereto as Exhibit "E".

While Plaintiffs suggest the Court can develop a process that would assure that claimants such as Mr. Feezel, Mrs. Pennington and Mr. Clouse will receive prompt payment of settlement proceeds, there is no justification for delaying distributions to even those claimants that have an

24

affiliation with Plaintiffs.  For instance, for the reasons discussed in the preceding section, claimants and their attorneys are likely to satisfy all reimbursement obligations upon the receipt of settlement proceeds.

Based on the forgoing it is clear that threatened harm to Plaintiffs will not outweigh the harms that will be caused to non-movants.

### E.   ISSUANCE OF AN INJUNCTION WOULD DISSERVE THE PUBLIC INTEREST.

Plaintiffs contend "there is a strong public interest in enabling ERISA fiduciaries to enforce the express terms of the self-funded ERISA plans they are administering."  *See* Plaintiffs' Memo at 23.  There is an even stronger public interest in assuring that the approximately 50,000 Vioxx claimants receive prompt payment of their settlement proceeds.  These claimants have a contractual right to receive the settlement payment scheduled for August and many of these claimants are in dire need of these proceeds that are designed to compensate them for injuries that were suffered many years ago.

Indeed, while Plaintiffs contend that there is a strong public policy in assuring that self-funded ERISA plans are able to enforce equitable restitution rights, their inactivity and delay demonstrates that just the opposite is true in this case.  This is not a case where an ERISA plan has made its claims known at the beginning of a litigation or actively participated in a litigation.  To borrow from Judge Higbee, this is a case where the vultures are beginning to circle.

These Plaintiffs are looking to force a massive one-time settlement against an aggregate settlement fund.  No public policy interest is served by sanctioning such irresponsible conduct.

Accordingly, Plaintiffs have failed to show that their requested relief is in the public interest. For this reason too, their motion should be denied.

### F.   THE MAXIMUM BOND ASSESSABLE SHOULD BE IMPOSED.

Upon information and belief, courts in this district typically set a bond at 150% of any damages the non-moving party may suffer as a result of the injunction being requested. Such a bond would be approximately $6 billion dollars should Plaintiffs succeed in delaying the distribution of the settlement proceeds. Should the Court grant Plaintiffs' motion for a preliminary injunction, the NPC Defendants respectfully request that the Court impose a bond of this magnitude. Alternatively, the NPC Defendants request that the Court order Plaintiffs to post a bond in an amount approximately equal to the initial payout ($2,425,000,000.00), or the value of interest costs of $84,875,000.00, for the reasons set forth in BrownGreer's Opposition to AvMed's Motion for Preliminary injunction. *See* BrownGreer's Opp. to AvMed's Motion for Prelim. Injunc. at 28-31, incorporated herein by reference.

Simply stated, the damages that will be caused by the issuance of the injunction requested by Plaintiffs will cause substantial damages to non-movants. Vioxx claimants will suffer an invasion of their privacy interests and will be denied their right to an immediate disbursement of the settlement payments. Since these damages are not readily quantifiable and a bond requirement cannot be increased retroactively, *see Sprint Comms. Co. v. CAT Comms. Int'l, Inc.*, 335 F.3d 235, 239-40 (3rd Cir. 2003), NPC Defendants request that the Court impose the highest possible bond requirement.

IV.     **CONCLUSION**

For the reasons set forth above, the Motion for preliminary injunction should be denied.

Respectfully submitted,

Date:  July 10, 2008                    By:   /s/ Leonard A. Davis

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana  70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

**ATTORNEYS   FOR   THE   NPC
DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of July, 2008.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhkc.com

W:\25000-29999\27115\000\PLD\Declaratory Judgment (1199SEIU New York)\Motion for Preliminary Injunction\Opposition\The NPC Defendants Opposition to Motion for Preliminary Injunction 2008-7-9.wpd\rlv

27