UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ELIAHU TZFANYA,

               Plaintiff,

      - against -

PFIZER, INC.,
PHARMACIA CORPORATION, a
wholly-own subsidiary of PFIZER, INC., and
PHARMACIA & UPJOHN COMPANY, a wholly
owned subsidiary of PHARMACIA CORPORATION
and MERCK & CO., INC.,

               Defendants.

-----------------------------------------------------------X

**05 CV 8068**

Case #:
Dated Filed:

COMPLAINT

JUDGE KRAM



Plaintiff, by and through his attorneys, GODOSKY & GENTILE, P.C., alleges upon information and belief as follows:

## I.

## INTRODUCTION

1.    Plaintiff ELIAHU TZFANYA brings this action against the defendants PFIZER, INC., PHARMACIA CORPORATION, a wholly-own subsidiary of PFIZER, INC., and PHARMACIA & UPJOHN COMPANY, a wholly-owned subsidiary of PHARMACIA CORPORATION and MERCK & CO., INC seeking redress for injuries he suffered in the past and will continue to suffer, resulting from the defendants' negligence, gross negligence, strict liability, failure to warn and misrepresentation, breach of express and implied warranties and violation of New York Business Corporation Law § 349 from July 2002 until approximately February 2004.

1

2.     Plaintiff seeks to recover damages that exceed the jurisdictional limits of all lower

Courts, which would otherwise have jurisdiction exclusive of interest and costs to be

determined upon the trial of this action.

## II.

## JURISDICTION

3.     This action arises under Diversity 28 USC 1332, 1441.

## III.

## VENUE

4.     Venue is proper in this judicial district because plaintiff's causes of action and events

giving rise to plaintiff's claim transpired in this district. [28 USCA 1391(b)].

5.     Plaintiff at all times relevant herein is a citizen of the United States, residing in Israel,

Jerusalem.

6.     Upon information and belief, defendant PFIZER INC. is a Delaware corporation with

its principal place of business located at 235 East 42nd Street, New York, New York,

and authorized to do and doing business in the State of New York with the county of

its principal office registered as New York County.

7.     Upon information and belief, defendant PHARMACIA & UPJOHN COMPANY is a

wholly-owned subsidiary of Pharmacia Corporation, and at times relevant to this

complaint, each was a foreign corporation incorporated in the State of Delaware, and

authorized to do business in the State of New York, registered in or with its principal

office located in New York County.

8.     Upon information and belief, as the result of a corporate merger between Pfizer, Inc.,

and Pharmacia Corporation in or about April, 2004, Pharmacia Corporation which is

a wholly-owned subsidiary of Pfizer, Inc., and, as a result thereof, Pfizer, Inc., is legally responsible for all obligations, debts and liabilities of Pharmacia Corporation and Pharmacia & Upjohn Company, and is the successor in interest and real party to Pharmacia Corporation and Pharmacia & Upjohn Company (hereafter collectively referred to as Pfizer or Pfizer defendants).

10.     Upon information and belief, defendant MERCK & CO. INC. is a foreign corporation by virtue of being incorporated in New Jersey, and has its principal place of business at One Merck Drive, P.O. Box 100, WS3AB-05 Whitehouse Station, New Jersey 08889-0100, and is authorized to do business in the State of New York, registered in or with its principal office located in Onondaga County.

11.     At all times herein mentioned, defendant MERCK & CO. was engaged in the design, manufacture, production, testing, study, research, inspection, mixture, labeling, marketing, advertising, sales, promotion and/or distribution of pharmaceutical products, including the arthritis and acute pain medication VIOXX® for ultimate sale and/or use in the United States of America as well as in countries throughout the world.

12.     The defendants are liable for the acts and transactions complained of herein that occurred and injured plaintiff in and thus had consequences.

13.     That from approximately July 2002 until approximately February 2004, plaintiff was prescribed BEXTRA and VIOXX®.

14.     That from approximately July 2002 until approximately February 2004, plaintiff ingested BEXTRA and VIOXX® as prescribed.

15.    As a direct and proximate result of the conduct of the defendants, the plaintiff sustained severe and permanent injuries.

16.    By reason of the foregoing, the injured plaintiff has sustained severe and permanent injuries, pain and suffering, endured hospitalizations as well as anxiety and fear of additional adverse medical consequences, and will continue to so suffer in the future.

17.    By reason of plaintiff's injuries, plaintiff has incurred or may be obligated to pay monies for medical expenses.

18.    The injuries sustained by the plaintiff as aforesaid and the damages resulting therefrom were caused solely by the defendants' defective products without any fault on the part of the plaintiff contributing hereto.

19.    Upon information and belief, the defendants used a wide range of marketing methods to promote the aforesaid products including, but not limited to, sponsoring medical journals to promote the alleged benefits of its products, using sales representatives to call to on physicians throughout the country to encourage them to prescribe defendants' products, sponsoring continued medical education programs for the express purpose of promoting its products, hiring experts in the field to speak to physicians for purposes of promoting their product, by direct advertisements to consumers and end-users of their product, and by utilizing the media to promote the alleged benefits of their product.

20.    Upon information and belief, defendants engaged in advertising and promotional activity which indicated its drug was efficacious for treating and that it was safe to use, and published a description thereof in the Physician's Desk Reference for use by doctors in determining whether to prescribe said drug to patients, including plaintiff.

4

21.     Upon information and belief, based on defendants' promotional activity with respect to the aforesaid products, plaintiff was prescribed the drug based on the belief the same was safe to use and was unlikely to subject plaintiff to serious side effects as a result of use of the product.

22.     In reliance on the same, plaintiff ingested said drug and continued ingesting the drug for a period of time as instructed by the prescribing physician.

23.     At all times herein mentioned, the defendants knew their product did not have scientifically proven benefits and that the risks included cardiovascular events including, but not limited to, heart attack, stroke, as well as other illnesses.

24.     Upon information and belief, had the defendants carried out proper testing on their product, they would have realized that the risks of using their product included cardiovascular events including, but not limited to heart attacks, strokes, and that the risks far outweighed any alleged benefits from their product.

25.     Plaintiff alleges that the limitations on liability set forth in CPLR §1601 do not apply under the exemptions set forth in CPLR §§1602(5), 1602(7) and 1602(11).

## AS AND FOR A FIRST AND SEPARATE CAUSE OF ACTION
### (NEGLIGENCE AND GROSS NEGLIGENCE)

26.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "26" herein with the same force and effect as though fully set forth herein at length.

27.     At all times herein mentioned, defendant, itself or by use of others, did manufacture, create, design, test, label, package, distribute, supply, market, sell, advertise, and otherwise distribute in interstate commerce said products.

5

28.   The defendants knew or should have known with the exercise of reasonable care that the product is an unreasonably dangerous products and nevertheless manufactured and placed said products into the stream of commerce.

29.   Prior to the time the plaintiff ingested the aforementioned product, the defendants knew or should have known that a significant portion of the users of the product would be subject to a significant risk and increased risk of serious side effects, including cardiovascular disease and strokes.

30.   Upon information and belief, the defendants' manufacturers failed to carry out adequate investigation including, but not limited to, failing to adequately test the product.

31.   Defendant was further grossly negligent and evinced a reckless disregard for the safety of persons who would be using said products by downplaying, minimizing, and otherwise failing to warn the medical profession, the public in general and the plaintiff in particular about the serious and deadly side effects of its products, while at the same time promoting the drug on the basis of minor alleged benefits and unsubstantiated or false claims as to efficacy for pain management.

32.   As a direct and proximate result of the negligence of the defendants, plaintiff was harmed due to ingesting the product over a period of time.

33.   By reason of the foregoing, plaintiff sustained pain and suffering and continued to sustain suffer from anxiety and pain and suffering for a lengthy period of time and fear of additional adverse medical consequences and will continue to so suffer in the future.

6

34.    Upon information and belief, as a result of the conduct of the defendants, plaintiff sustained injuries as a result of complications and causes stemming from the ingestion of the aforesaid product.

35.    By reason of plaintiff's injuries, plaintiff has incurred or may be obligated to pay monies for medical expenses and hospitalizations.

36.    The injuries plaintiff sustained as aforesaid and the damage resulting therefrom were caused solely by the defendants' defective product without any fault on the part of plaintiff contributing thereto.

37.    As a result of the foregoing, plaintiff is entitled to damages in an amount that exceeds jurisdictional limits.

## AS AND FOR A SECOND AND SEPARATE CAUSE OF ACTION
## (STRICT LIABILITY)

38.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "38" herein with the same force and effect as though fully set forth herein at length.

39.    That at all times herein mentioned, the aforementioned product was dangerous and defective, in that any benefit from said product was outweighed by the serious and deadly side effects of said drug.

40.    The defendants placed said product into the stream of commerce with reckless disregard for the public safety in that adequate testing was not conducted, did not timely or adequately continue to test and monitor the safety of the drug, or take other reasonable steps to assure the product were efficacious for the purpose for which they were intended without subjecting the user to significant and harmful side effects as aforesaid.

7

41. The defendants are strictly liable for the injuries plaintiff sustained as a result of ingesting the product as aforesaid.

42. As a result of reckless disregard for the public welfare, plaintiff is entitled to damages from defendant and for damages sustained as a result of defendants' conduct in an amount that exceeds jurisdictional limits.

## AS AND FOR A THIRD AND SEPARATE CAUSE OF ACTION
## (MISREPRESENTATION AND FAILURE TO WARN)

43. Plaintiff repeat, reiterate and re-allege each and every allegation contained in paragraphs numbered "1" through "43" herein with the same force and effect as though fully set forth herein at length.

44. Prior to the time the plaintiff ingested the drug complained of, the defendants engaged in a strategy involving aggressively marketing and selling the aforesaid products by falsely misleading potential users as to the safety of the drugs and by failing to protect users from serious dangers which defendant knew or should have known to result from use of said product.

45. By use of affirmative misrepresentations and omissions, the defendants engaged in promotional or advertising programs that falsely and fraudulently sought to create the image and/or impression that the use of the aforesaid drug was safe or had minimal risks to the public and the plaintiff in particular.

46. Upon information and belief, defendants understated downplayed or withheld information concerning health hazards and risks associated with the drug, as well as the lack of adequate testing and monitoring for safety.

47. Defendants failed to provide adequate warnings and/or information concerning the harms or potential harms of and dangers of the use of said product to the public for

8

whom the drug were not expressly contraindicated, and diluted any warnings by representing that adverse events were not significant for persons likely to be the users of said drug.

48.   As a direct and proximate result of the aforesaid failure by the defendants to provide appropriate warnings and/or instructions, plaintiff sustained the harm complained of herein.

49.   Upon information and belief, at the times relevant to this complaint, defendants were in possession of information demonstrating serious side effects evidencing the increased risk the drug posed to patients, or clearly should have been in possession of such information yet continued to market the product by providing false and misleading information with regard to safety as aforesaid drug.

50.   That despite the same, and despite the fact that there was existing evidence said drug were in fact dangerous, the defendants downplayed the health hazards and risks associated with the products and, in fact, deceived the medical community and public at large including all potential users including the plaintiff of the products by promoting the same as safe effective.

51.   Upon information and belief, defendants placed profit concerns over and above the safety of the public and as a result of such reckless conduct, plaintiff is entitled to exemplary damages from the defendants in addition to compensatory damages sustained as result of each of the defendants' conduct.

52.   Plaintiff is entitled to exemplary damages from the defendants as the failure to warn was reckless and without regard to the public safety and welfare in that they misled

both the medical community and the public at large including the plaintiff herein by misleading them about the safety of the product.

53.　As a result of the reckless disregard for the public's welfare, in particular, of plaintiff's welfare, plaintiff is entitled to exemplary damages from the defendants in addition to compensatory damages sustained as a result of each of the defendants' conduct in an amount that exceeds jurisdictional limits.

## AS AND FOR A FOURTH AND SEPARATE CAUSE OF ACTION
### (BREACH OF EXPRESS AND IMPLIED WARRANTIES)

54.　Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "54" inclusive herein with the same force and effect as though fully set forth herein at length.

55.　That the manufacturing defendants expressly warranted that the product was safe when used by patients for whom they were not otherwise contraindicated.

56.　That the manufacturing defendants breached such warranty in that said drug was not safe for the purpose for which they were intended.

57.　As a direct and proximate result of the aforesaid breach, plaintiff sustained the injuries complained of herein and will continue to suffer harm in the future as set forth herein.

58.　That by reason of the foregoing, this plaintiff has been damaged in an amount which exceeds the monetary jurisdictional limits of any and all lower Courts to be determined upon the trial of this action.

## AS AND FOR A FIFTH AND SEPARATE CAUSE OF ACTION
### (VIOLATION OF NEW YORK BUSINESS CORPORATION LAW § 349)

10

59.   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "59" inclusive herein with the same force and effect as though fully set forth herein at length.

60.   Defendants' conduct, as set forth herein, was deceptive acts or practices and involved an extensive marketing scheme that had a broader impact on consumers at large. Defendants engaged in acts or practices that were deceptive or misleading in that the same were likely to mislead a reasonable consumer acting reasonably under the circumstances to ingest the products and be injured thereby.

61.   Defendants' acts and practices violated New York's Business Corporation Law § 349.

62.   Plaintiff was injured as a direct and proximate result of the deceptive and misleading acts and practices of the defendants and is entitled to compensatory and exemplary damages therefor.

   **WHEREFORE**, plaintiff demands judgment against the defendants in each and separate Causes of Action in amounts exceeding the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction and in amounts to be determined upon the trial of this action, together with the costs and disbursements of this action.

Dated: September 13, 2005

                                                    Yours, etc.,

                                             **GODOSKY & GENTILE, P.C.**
                                             Attorneys for Plaintiffs
                                             61 Broadway - 20th Floor
                                             New York, New York 10006
                                             (212) 742-9700
                                             File # V1103-03

                                             By:  _____
                                                    Robert E. Godosky

11