## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:
VIOXX PRODUCT LIABILITY LITIGATION ) MDL NO. 1657
)
) SECTION: L
)
) JUDGE FALLON
) MAG. JUDGE KNOWLES

*THIS DOCUMENT RELATES TO:*
06-2196: William Shaw Only
06-2195: Nick Ruzycki Only
06-2198: Judith Blazeiko Only
06-2199: Elaine Law Only
06-2201: Pamela Paulo Only
06-2203: Donald Farmer Only
06-2208: Adolfo Arguelles and Michael Mitchell Only
06-2216: Teresa Puglese Only
06-2211: Dragutin Pavlovic Only
06-2212: Matthew Smith Only
06-2213: Herbert Leizert Only
06-2214: Maria Nikolova Only
06-10625: Estate of John Hudson Only
07-3480: Estate of Concetta Perruzza Only

### PLAINTIFFS' RESPONSE TO THIS COURT'S ORDER TO SHOW CAUSE WHY THE FOREIGN INDIVIDUAL CASES SHOULD NOT BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS

### INTRODUCTION

On May 16, 2008, defendant Merck moved this Court for an order to show cause why foreign plaintiffs from "Albania, Canada, the Dominican Republic, France, Ireland, Israel, Kuwait, Mexico, the Netherlands, New Zealand, and the United Kingdom" should not face dismissal of their actions on *forum non conveniens* grounds. This Court entered such an order on June 30, 2008. Merck's motion referenced this Court's opinion in *In re Vioxx Prods. Litig.*, 448 F.Supp.2d 741 (E.D. La. 2006), which held that Merck itself must demonstrate its entitlement to a *forum non conveniens* dismissal *Id.* at 745. However, Merck has failed even to name the individual plaintiffs against whom its motion is targeted much less explain why it is entitled to relief against those plaintiffs. Because Merck failed to provide any support for its demand, and no evidence before this Court supports dismissal, plaintiffs respectfully request that the order to show cause be discharged.

## ARGUMENT

### CANADIAN PLAINTIFFS, SOME WITH DUAL U.S. AND CANADIAN RESIDENCES, LITIGATING IN BORDER STATES OFFER NO INCONVENIENT BURDEN TO DEFENDANT MERCK OR THE COURTS

Plaintiffs concur with defendants that this Court's analysis in *In re Vioxx Prods. Litig.*, 448 F.Supp.2d 741 (E.D. La. 2006) provides the starting point for resolving the *forum non conveniens* issue. As this Court stated, to secure a *forum* dismissal, "Merck must demonstrate (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favors dismissal." *Id.* at 745 (internal quotation marks and brackets omitted). Additionally, the motion is decided while deferring to the plaintiff's choice of forum and recognizing "[t]he fact that plaintiffs are foreign is not, in and of itself, sufficient to require dismissal under forum non conveniens." *In re Air Crash Disaster Near New Orleans, La. On July 9, 1982*, 821 F.2d 1147, 1164 n. 26 (5th Cir. 1987).

Plaintiffs do not contest -- despite Merck's failure to argue the point -- that Canada provides "an available and adequate alternative forum." However, Merck asserts no basis for *forum* dismissal aside from the plaintiffs' foreign status. Moreover, Merck balanced private and public interests exclusively by referencing this Court's prior opinion and listing multi-party case numbers without so much as identifying the individual plaintiffs to whom their motion is addressed. Counsel accordingly makes a good faith effort to identify the relevant plaintiffs. In the event that Merck identifies further plaintiffs, counsel respectfully requests the opportunity to respond once notice is given.

### A. Plaintiffs' Contacts with the United States

As best a search of counsel's database can determine, each of the plaintiffs that Merck is placing at issue are residents of the Province of Ontario. Some also maintain residence in the United States. Unlike clients in various European nations, these Canadian clients live across the river from counsel's Buffalo, New York office in the Fort Erie, Canada area or a short drive northward to Toronto. The Buffalo/Fort Erie region is an often unified entity, connected by the Peace Bridge, among four other bridge spans, across which trade routinely takes place at a rate of nearly three million vehicles per year.

2

*See, e.g.,* http://www.peacebridge.com/ (last visited Jul. 9, 2008.). Canadian consumers can walk across the bridge from Niagara Falls, Canada to Niagara Falls, New York and freely shop on both sides of the border. Each of these plaintiffs is closer to their counsel than plaintiff's counsel is to defense counsel Hughes Hubbard and Reed's New York based office. Commerce between these bordering neighbors is routine. Litigation also proceeds routinely in local courts, both state and federal, as disputes arise between these neighbors.

Plaintiffs filed their actions in two bordering states between the United States and Canada – New York and Minnesota -- where Canadian litigants are routinely heard. The undersigned brought these actions in state court where they were removed to the federal system. The first-filed actions were the subject of hotly contested motions for remand which the transferor court declined to decide. This Court, to date, has exercised its discretion not to establish a process for resolving renewed motions to remand in favor of setting uniform MDL litigation standards for all litigants and working toward global resolutions. Accordingly, these litigants who entered bordering states' judicial systems now find themselves far from home, complying with this Court's MDL orders, and wishing to return to their accepting state forums at the conclusion of the MDL.

These plaintiffs can be generally identified under three categories: (1) plaintiff estates for deceased Vioxx victims who have been granted permission by the State of Minnesota to litigate within the United States, (2) plaintiffs with substantial contacts to the United States and who are enrolled under the Settlement Agreement, (3) plaintiffs who lack substantial personal contacts with the United States but elected to sue United States entity Merck & Co., Inc. in its national home forum. Counsel briefly identifies the members of each by name and case number below.

The first group consists of the Estate of John Hudson (06-10625) and the Estate of Concetta Perruzza (07-3480). Both estates petitioned the State of Minnesota through its estate trustee petition process to access the state courts. Minnesota Statutes Annotated, Chapter 573. The State of Minnesota granted its permission whereupon these cases were filed in that State's courts, removed to federal court, and transferred to this MDL Court. Plaintiffs respectfully submit that public policy for accessing a forum

cannot be violated when the State affirmatively permitted the claim to proceed in its courts. Moreover, decedent John Hudson treated for his Vioxx injury at Davenport Heart of Florida Hospital and Orlando Hospital in Florida.

Plaintiffs in the second group possess significant United States contacts and are presently enrolled under the Settlement Agreement using their United States addresses. For example, plaintiff Teresa Puglese (06-2216) mothered a family that now finds two children living in New York and two in Canada. She spends substantial time and resides in both countries. William Shaw (06-2196), Elaine Law (06-2199), Adolfo Arguelles (06-2208) Michael Mitchell (06-2208) and Herbert Leizert (06-2213) similarly possess significant familial contacts of long duration between both nations. Each has suffered the effects of their Vioxx injuries in a manner impacting their relationship with both nations, each elected to proceed in the United States, and each is enrolled under the Settlement Agreement.

In contrast to the estates and plaintiffs noted above, the following plaintiffs are Canadian citizens who elected to bring their actions within bordering states of either Minnesota or New York in order to sue a corporation of the United States within this nation's court system. Upon information and belief, these individuals maintain regular contact and travel to United States. These plaintiffs are as follows: Nick Ruzycki (06-2195); Judith Blazeiko (06-2198); Pamela Paulo (06-2201); Donald Farmer (06-2203); Dragutin Pavlovic (06-2211); Matthew Smith (06-2212); Maria Nikolova (06-2214). Of these, plaintiffs Judith Blazeiko (06-2198), Pamela Paulo (06-2201), Donald Farmer (06-2203) and Dragutin Pavlovic (06-2211) are enrolled under the Settlement Agreement supervised by this Court. Counsel has recently moved this Court to withdraw from representation in the remaining plaintiffs' actions.

### B. Defendant Merck Fails to Identify Any Grounds for Barring Plaintiffs from the Courts of the United States

Defendant Merck's motion requested that this Court issue for an order to show cause against foreign plaintiffs in 43 identified case numbers. Merck further alleged 385 foreign plaintiff personal injury cases remained pending before this Court. However, Merck's reference to language in the Settlement Agreement is the sole substantive element in its motion that identifies which plaintiffs it believes are impermissibly "foreign."

Merck contends that settlement claimants must be a "natural person [who] was a United States citizen or a legal resident of the United States or [who] was physically located in the United States, in each case when the alleged Eligible Event referred to in Section 17.1.22.3 is alleged to have occurred." (Motion, p. 3 at n. 2. [brackets in original]). The settlement accordingly encompasses "foreign" plaintiffs whose injury occurred within the United States under Section 17.1.22.1. Merck fails to explain why foreign plaintiffs – such as the Estate of John Hudson identified *supra* -- can be entitled to a settlement process overseen by this Court yet must be barred from this Court while the process moves forward. *See* Settlement Agreement, Sec. 6.1.

Moreover, though referencing this Courts prior *forum* opinion, Merck fails to apply this Court's analysis to any individual plaintiff. The *In re Vioxx*. opinion made clear that Merck bore the burden of establishing its entitlement to dismissal. 448 F.Supp.2d at 745. To do so, Merck was required to establish that both public and private interest factors weigh in favor if dismissal. *Id.* at 746. The central focus of this inquiry is on "convenience," both in terms of accessing proof and the localized interests in resolving an action in the plaintiff's home forum rather than the defendant's. *Id.* at 746-748. Plaintiffs address each in turn.

This Court recognized the private interest factors to include:

> [T]he relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 747. As discussed above, the relevant data for each Canadian plaintiff is, at most, a short journey across the Peace Bridge. Some maintain dual residence in the United States and Canada. Just as plaintiffs could not seriously argue that Canada fails to provide an "available and adequate alternative forum" under the first prong of a *forum* inquiry, defendants cannot plausibly argue that Canadian sources will be unresponsive to their requests. The voluminous records ordered from Canadian sources in response to the PPF process illustrate this well. To date, counsel has never received notice from Merck that a Canadian source refused its requests, nor have any of counsel's requests been refused. The concern for inaccessible evidence, however daunting when dealing with foreign languages in European nations as

5

when this Court first addressed a *forum* argument, disappears when English-speaking Canadians engage in routine cross-border production.

With regard to the public interest factor, this Court expressed concerns with an American jury's ability to review foreign administrative action and the resulting labeling and marketing. *Id.* at 748. This Court expressed particularized concern "especially when the labeling and marketing was in a foreign language." *Id.* Plaintiffs respectfully respond that a jury can apply a court's instruction for deciphering administrative law regardless of the administrative agency from which it derived and, in the case of relevant Canadian marketing or labeling, read these English language documents as readily as their American equivalents. Canadian and bordering American courts routinely apply the relevant laws of their neighbor in all forms of litigation. Nothing differs in the Vioxx context.

Defendant Merck appreciates the interrelatedness of American and Canadian legal interests. On the Merck Frosst website, to which defendant Merck is the parent company, numerous press releases are posted to update visitors on Vioxx litigation in Alabama, Texas, and this Court. http://www.merckfrosst.ca/mfcl/en/corporate/index.html (Vioxx Information Center, last visited Jul. 9, 2008.) Merck further responds to the American periodical the New England Journal of Medicine article for cross-border readers. *Id.* Similarly, Merck posts Dr. Peter Kim's video message for Canadian and American audiences alike. Similarly, Merck's main website does not direct Canadian viewers to an alternative site for their own use or away from its Vioxx Information Center. http://www.merck.com/ (last visited Jul. 9, 2008.).

This Court further identified an understandable concern of any court, "namely the administrative difficulties that are created when litigation is piled up in congested centers rather than handled at its origin." *Id.* at 749 (internal quotation marks omitted). Plaintiffs recognize, as did this Court, that the MDL process necessarily entails a degree of congestion in the transferee court. However, this Court's prior order addressed "eleven lawsuits filed on behalf of purported classes of foreign citizens from England, Austria, Italy, France, South Africa, Canada, Germany, Israel, New Zealand, the Netherlands, and Poland" as well as "one filed on behalf of all citizens of Europe who used Vioxx, and the other on

6

behalf of a purported class of every Vioxx user in the world." *Id.* at 744. The administrative difficulties of inviting "every Vioxx user in the world" through the courthouse doors is simply inapposite to permitting a small number of individuals to continue the litigation they have prosecuted before this Court for the years since they first filed in their bordering states' courts.

Finally, plaintiffs note that the administrative burden ultimately need not be this Court's to bear. Courts of the State of New York and the State of Minnesota accepted each plaintiff's case. None were dismissed on *forum* grounds. Each were removed to the federal courts located in these states bordering Canada. None were dismissed on *forum non conveniens* grounds there either. Moreover, the State of Minnesota affirmatively granted foreign estates permission to bring claims on behalf of their Vioxx decedents within its courts. In the event that this Court declines the administrative burden, plaintiffs respectfully request that remand rather than the extreme measure of dismissal will resolve the issue and return these claims to courts in which they are routinely welcomed.

## CONCLUSION

Defendant Merck has presented this Court with no evidentiary basis for *forum* dismissal aside from the assertion that plaintiffs are "foreign." *In re Air Crash Disaster* teaches to the contrary. Plaintiffs' decision to sue in defendant Merck's national forum, a forum frequented by Canadian plaintiffs generally, presents no insurmountable burden whether through continued MDL litigation or through remand to the bordering state courts where their cases are routinely heard. Plaintiffs respectfully request that this Court discharge the order to show cause, reject defendant Merck's arguments, and either permit these plaintiffs to proceed through the Settlement Agreement, MDL litigation, or through remand as warranted in their individual cases.

DATED:      July 10, 2008

                                                Respectfully submitted,

                                                **CELLINO & BARNES, P.C.**

By:      _____
         Brian A. Goldstein
         17 Court Street, 7th Floor
         Buffalo, NY 14202-3290
         (716) 854-2020

Counsel wishes to express his appreciation to law clerk Kevin Skierczynski for applying his legal research and drafting skills to assist in the preparation of this opposition.

7

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing PLAINTIFFS' RESPONSE TO THIS COURT'S ORDER TO SHOW CASE WHY THE FOREIGN INDIVIDUAL CASES SHOULD NOT BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this __10th__ day of __July__ 2008.

By: _____
Brian A. Goldstein, Esq.
CELLINO & BARNES, P.C.
17 Court Street, 7th Floor
Buffalo, NY 14202-3290
(716) 854-2020
(716) 854-6291
brian.goldstein@cellinoandbarnes.com