IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| | JUDGE FALLON |
| THIS DOCUMENT RELATES TO | |
| MDL Nos. 05-0293, 05-2002, 05-4516, 05-5578, 05-6932, 06-0060, 06-1434, 06-2195, 06-2196, 06-2198, 06-2199, 06-2201, 06-2203, 06-2208, 06-2211, 06-2212, 06-2213, 06-2214, 06-2216, 06-3162, 06-3375, 06-3683, 06-4032, 06-4472, 06-5498, 05-5586, 06-5905, 06-6463, 06-6997, 06-6999, 06-7150, 06-10159, 06-10185, 06-10625, 06-10773, 06-11333, 07-0344, 07-0395, 07-1252, 07-3480, 08-0162, 08-0587 | MAG. JUDGE KNOWLES |

**DEFENDANT MERCK & CO., INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO THE COURT'S ORDER TO SHOW CAUSE WHY THE FOREIGN INDIVIDUAL CASES SHOULD NOT BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

The majority of the individual foreign plaintiffs in this proceeding did not file responses to this Court's order to show cause.  This Court should therefore enter an order dismissing those plaintiffs' cases under the doctrine of *forum non conveniens*.[1]

Those plaintiffs who did file responses to this Court's order fall into two categories: those who are U.S. citizens allegedly injured in the United States who were inadvertently included in Merck's Motion for an Order to Show Cause, *see* note 1 *supra* & note 2 *infra*, or who

---

[1]   A list of the foreign individual plaintiffs in the above-captioned cases, complete to the best of Merck's knowledge, is attached hereto as Exhibit 1.  Because some of the cases identified in the Court's Order to Show Cause involve multiple plaintiffs, and because some of those plaintiffs are U.S. residents or citizens, Merck respectfully requests that the Court enter its dismissal orders with respect to particular plaintiffs, rather than entire actions.

935967v.1

claim they are participating in the Settlement Program; and those who admit they are foreign, but nonetheless claim that their cases should not be dismissed. As to the first group, Merck agrees that they have shown sufficient cause to satisfy this Court's order, and that their claims should not be dismissed under the doctrine of *forum non conveniens* at this time.

As to the second group – the remaining foreign plaintiffs who responded to this Court's Order to Show Cause – this Court should dismiss these plaintiffs' claims under the doctrine of *forum non conveniens*. These claims are squarely controlled by the analysis in this Court's August 30, 2006 Order dismissing the Italian and French complaints (the "FNC Order"): because these plaintiffs are foreign citizens who were prescribed, ingested, and allegedly suffered injuries from Vioxx abroad, and because their lawsuits therefore implicate foreign regulatory judgments, foreign documents and witnesses, and foreign law, they present the same potential difficulties, and are subject to the same *forum non conveniens* analysis, as the French and Italian complaints.

Plaintiffs' arguments against this conclusion are without merit. Plaintiffs assert that their claims should not be dismissed because they filed individual rather than class actions; because they took Vioxx for a variety of different reasons and different periods of time; because they allegedly suffered a variety of different injuries; or because they are located in Canada rather than Italy or France. As explained below, however, these facts are largely irrelevant to a *forum non conveniens* analysis, and do not render this Court's FNC Order any less dispositive in their cases. Plaintiffs also assert that Merck's Motion for an Order to Show Cause was untimely. But there is no fixed time during which a defendant must bring a *forum non conveniens motion*; and in light of the complexity of this MDL proceeding and the ongoing settlement negotiations, Merck filed its motion within a plainly reasonable time. Plaintiffs make no sustainable claim of

prejudice; discovery and pre-trial proceedings in plaintiffs' cases are not substantially advanced; and dismissal will not result in wasted time or effort. This Court should therefore dismiss these plaintiffs' claims.

I.  **MERCK AGREES THAT CERTAIN PLAINITFFS HAVE SHOWN SUFFICIENT CAUSE TO SATISFY THE COURT'S ORDER**

Several plaintiffs have responded to this Court's Order to Show Cause by asserting that they are "citizens of the United States" whose "transactions regarding [Vioxx] were entirely within the borders of the United States." (Pls. in Case 05-5586's Resp. to the Court's Order to Show Cause at 1, *In re: Vioxx Prods. Liab. Litig.*, No. 05-5586.) These plaintiffs include Raymond Hart (No. 05-5586), Frank Roberts (No. 05-5586), Richard Phillips (No. 05-5586), and Lorraine Williams (No. 05-5586). Their complaint confirms that, while the other nine plaintiffs in their case are foreign residents who purchased Vioxx abroad after receiving prescriptions from foreign doctors, these four plaintiffs are residents of the United States who purchased Vioxx in the United States. (*See id.*, Appx. 1.) Merck agrees that these plaintiffs' claims would not be properly dismissed under the doctrine of *forum non conveniens* based on this Court's August 30, 2006 Order.[2]

In addition, several plaintiffs have asserted that they are eligible to participate in, and have enrolled in, the Vioxx Settlement Program. Specifically, plaintiffs James Pendergast (No. 06-4472), Teresa Puglese (06-2216), William Shaw (No. 06-2196), Elaine Law (06-2199), Adolfo Arguelles (No. 06-2208), Michael Mitchell (No. 06-2208), Herbert Leizert (No. 06-2213), Judith Blazeiko (No. 06-2198), Pamela Paulo (No. 06-2201), Donald Farmer (No. 06-2203), and Dragutin Pavlovic (No. 06-2211) all state that they are eligible for and have enrolled in the

---

[2]  As noted above, *see* note 1 *supra*, Merck has included in Exhibit 1 a list of all foreign plaintiffs identified by name, rather than simply case number, in order to avoid dismissing claims brought by U.S. plaintiffs who have filed complaints jointly with foreign plaintiffs.

Settlement Program. (*See* Pls.' Resp. to Motion to Dismiss at 1-4, *In re: Vioxx Prods. Liab. Litig.*, No. 06-4472; Pls.' Resp. to This Court's Order to Show Cause at 4, *In re: Vioxx Prods. Liab. Litig.*, Nos. 06-2196 *et al.*) Merck agrees that, pending a final conclusion by the Claims Administrator, these 11 plaintiffs have also shown sufficient cause to satisfy the Court's Order, and their claims should not be dismissed under the doctrine of *forum non conveniens* at this time.

## II. THE REMAINING FOREIGN PLAINTIFFS' CLAIMS SHOULD BE DISMISSED

The claims of the remaining foreign individual plaintiffs should be dismissed. This conclusion is most straightforward with respect to those foreign plaintiffs who have not responded to this Court's Order to Show Cause: these claims can simply be dismissed based on plaintiffs' failure to respond. *See, e.g.*, *Vinson v. Heckmann*, 940 F.2d 114, 116 (5th Cir. 1991) (affirming dismissal where district court ordered defendant to show cause and defendant "did not respond").

This Court should also dismiss the claims of those remaining foreign individual plaintiffs who **did** respond to this Court's Order to Show Cause. There are fourteen such plaintiffs, who are residents of Canada, Scotland, and the Netherlands.[3] These plaintiffs' claims are squarely governed by this Court's prior FNC Order dismissing the Italian and French complaints; and, contrary to the arguments set forth in the Scottish and Dutch plaintiffs' brief, Merck's Motion for an Order to Show Cause was not untimely.

### A. This Court's Previous *Forum Non Conveniens* Analysis Applies Fully to the Foreign Plaintiffs' Claims

The foreign plaintiffs' claims at issue here are subject to the same *forum non conveniens* analysis set forth in this Court's previous FNC Order. As Merck stated in its Motion for an

---

[3] Specifically, there are nine foreign plaintiffs in Case No. 05-5586, one from Scotland and eight from the Netherlands, and Canadian plaintiffs in Cases Nos. 06-10625, 07-3480, 06-2195, 06-2212, and 06-2214.

4

935967v.1

Order to Show Cause, the principal basis on which foreign plaintiffs might have distinguished their cases would have been to demonstrate that their home forums, in contrast to those in Italy and France, were inadequate. However, none of the plaintiffs makes this claim. The Canadian plaintiffs concede that Canada is an adequate alternative forum for litigation of their claims. (*See* Pls.' Resp. to This Court's Order to Show Cause at 2, *In re: Vioxx Prods. Liab. Litig.*, Nos. 06-2196 *et al.*) The Scottish and Dutch plaintiffs, for their part, fail to allege that their home forums are inadequate, and U.S. courts have repeatedly held that they are not. *See, e.g.*, Mem. of Decision on Mot., *In Re Vioxx Litig.*, No. 619 (N.J. Super. Ct. Law Div. Atlantic County, Oct. 5, 2006) (Higbee, J.) (finding the United Kingdom to be an adequate alternative forum for Vioxx claims), *aff'd In re Vioxx Litig.*, 928 A.2d 935 (N.J. App. Div. 2007); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 261 (U.S. 1981) (affirming *forum non conveniens* dismissal in favor of trial in Scotland); *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 616 (6th Cir. 1984) (same); *Windt v. Qwest Communications Int'l, Inc.*, 529 F.3d 183 (3d Cir. 2008) (affirming *forum non conveniens* dismissal in favor of trial in Netherlands); *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*, 955 F.2d 368, 375 (5th Cir. 1992) (same); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1250 (5th Cir. 1983) (same).

The remaining aspects of the *forum non conveniens* analysis in plaintiffs' cases – the balancing of private and public interest factors – is materially identical to the analysis this Court conducted with respect to the Italian and French complaints. Initially, because plaintiffs are foreign residents, their choice of forum is entitled to reduced deference, as was the Italian and French plaintiffs' choice of a U.S. forum for their claims. (*See* FNC Order at 8.) Further, like the Italian and French plaintiffs, the foreign plaintiffs here are foreign residents who were (or do not deny that they were) prescribed Vioxx abroad, purchased and ingested it abroad, suffered

their alleged injuries abroad, and were, with two partial exceptions, treated for those alleged injuries abroad.[4]  Accordingly, the Court's private interest analysis is fully applicable here: Because all (or most) of the relevant events in plaintiffs' cases took place abroad, the relevant "information relating to the Plaintiffs' individual medical histories" and the relevant information regarding "what the Plaintiffs and their doctors knew or should have known about Vioxx" is located abroad.  (FNC Order at 9.)  For the same reason, the "foreign documents and witnesses" relating to plaintiffs' experience with Vioxx are abroad, outside "the compulsory process of any American court."  *Id*.  Thus – just as in the case of the Italian and French complaints – "the American courts are likely to encounter many practical problems causing this litigation to be harder, slower, and more expensive than it would be in" plaintiffs' home countries.  *Id*.

This Court's FNC Order is equally applicable with respect to the public interest factors.  Like the plaintiffs in the Italian and French complaint, plaintiffs here are foreign citizens who

---

[4] Dutch plaintiff Fokke Fennema alleges that he "has undergone medical care in the United States for injuries caused by Vioxx."  (Pls. in Case 05-5586's Resp. to the Court's Order to Show Cause at 3, *In re: Vioxx Prods. Liab. Litig.*, No. 05-5586.)  However, Mr. Fennema does not state that he received all or most of his relevant medical care in the United States.  Indeed, the U.S. medical record he attaches to his brief, which is dated May 8, 2007, indicates that he had experienced his cerebrovascular events approximately three years earlier, in 2004, presumably in Holland.  (*See id*. at Appendix 2, at 3.)  His U.S. medical record appears to memorialize a rheumatology consultation in connection with his ongoing neurologic condition, not immediate treatment for his cerebrovascular events; and it expressly refers to his continuing medical treatment "as he returns to Holland."  (*Id*.)  That document thus provides no basis for concluding that his principal medical treatment was in the United States, and thus does not alter the balance of private interest factors – let alone the overall *forum non conveniens* analysis.

The Estate of John Hudson, a Canadian plaintiff, asserts that Mr. Hudson was "treated for his Vioxx injury" in Florida.  (*See* Pls.' Resp. to This Court's Order to Show Cause at 4, *In re: Vioxx Prods. Liab. Litig.*, Nos. 06-2196 *et al*.)  It is not clear from this assertion whether Mr. Hudson was treated exclusively, or simple partially, in the United States.  Mr. Hudson's estate further implies that it might have been eligible for the Settlement Program (*see* id. at 5), but does not expressly state that Mr. Hudson was injured in the United States.  This Court need not explore these details, however, because the Estate's brief does not argue that this Court's FNC Order is inapplicable because Mr. Hudson was injured or treated in the United States.  Rather, it argues that the Court's FNC Order is inapplicable because Canada, unlike Italy and France, is close to the United States.  (*See id*. at 5-7.)  As discussed below, this argument is without merit.

suffered their injuries abroad and were (for the most part) treated for their injuries abroad. Those facts alone give their home jurisdictions a strong interest in hearing their cases. (*See* FNC Order at 10.) Moreover, like "the governments of Italy and France," the governments of plaintiffs' home countries "approved and regulated the sale of Vioxx in those countries," giving those jurisdictions a "distinctive interest" in hearing plaintiffs' claims, and rendering trial in the United States inappropriate, because it would "risk[] disrupting the judgments of [foreign] regulatory bodies by imposing an American jury's view of the appropriate standards of safety and labeling on companies marketing and selling drugs" abroad. (FNC Order at 10-11.) In addition, as in the case of the Italian and French complaints, trying plaintiffs' claims here would impose heavy burdens on this court by requiring it to master and apply the foreign law and regulation that would govern plaintiffs' claims.[5] (*See* FNC Order at 12.) Accordingly, dismissal is appropriate for precisely the same reasons it was appropriate in the Italian and French cases.

Plaintiffs' arguments against this conclusion are without merit. The Scottish and Dutch plaintiffs allege that dismissal of their cases is inappropriate because, unlike the cases dismissed by this Court's FNC Order, their cases are not class actions, and there is no "commonality between their claims:" they were, they assert, prescribed Vioxx for different kinds of pain, took it for different periods of time, and suffered different kinds of alleged injury as a result. (Pls. in Case 05-5586's Resp. to the Court's Order to Show Cause at 2-3, *In re: Vioxx Prods. Liab. Litig.*, No. 05-5586.)

---

[5]  The Scottish and Dutch plaintiffs asserts that, because their Complaint was filed in the District of Columbia, the choice-of-law analysis in their case "cannot be assumed" to be the same as that in the French and Italian cases. Not so. As the very case these plaintiffs cite confirms, Washington D.C. applies a four-part "substantial interest" choice-of-law test – precisely the same test this Court applied in its FNC Order, and relied upon to conclude that foreign law would apply. *See Jaffee v. Pallotta Teamworks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004); (FNC Order at 12).

This argument fundamentally misconceives both the nature of a *forum non conveniens* analysis and the bases of this Court's FNC Order. Indeed, this Court has expressly stated that its prior *forum non conveniens* ruling was *not* limited to the class action context:

> I really dealt with this [*forum non conveniens* issue] in depth. I had the benefit of counsel from various countries, their input and defense counsel. I had a hearing on it. I understood the issue and crafted an opinion. I listened to any comments, but I've dealt with that issue, actually. It wasn't just in a class action format, it was Forum Non Conveniens.

(Monthly Status Conference Proceedings Tr. 46:12-17, May 22, 2008.) As discussed above, nothing in this Court's FNC Order turned on the fact that the plaintiffs there had filed putative class actions, or depended on alleged commonalities in the reasons for which plaintiffs took Vioxx, how long they took it, or the nature of their alleged injuries. Rather, the Court's analysis was based on the fact that the relevant events in plaintiffs' cases took place abroad, and the fact that the Vioxx they took was regulated by a foreign jurisdiction. Precisely the same things are true of plaintiffs' claims here. This Court's prior analysis is therefore directly applicable.[6]

The Canadian plaintiffs argue that their claims should not be dismissed because Canada is closer to the United States than Italy and France. They assert that as a result, their medical records are located nearby, are written in English, and to date have been produced promptly. (*See* Pls.' Resp. to This Court's Order to Show Cause at 5-6, *In re: Vioxx Prods. Liab. Litig.*, Nos. 06-2196 *et al.*) They also contend that an American jury can read Canadian marketing and labeling information, and "can apply a court's instruction for deciphering administrative law regardless of the administrative agency from which it is derived." (*Id.* at 6.) They further

---

[6] Moreover, as Merck noted in its Motion for an Order to Show Cause, Judge Higbee has dismissed claims brought by *individual* plaintiffs from the United Kingdom under the doctrine of *forum non conveniens*, and its decision was affirmed by the New Jersey Appellate Division. (*See* Merck Mot. at 2 n.1.) Those decisions confirm that the presence or absence of class allegations is, at least in this context, irrelevant to a *forum non convniens* analysis.

suggest that, because their cases represent only a few individual claims, hearing them here will not impose significant administrative burdens on this Court. (*Id*. at 6-7.)

None of these arguments alters the conclusion that the Canadian plaintiffs' claims are controlled by this Court's FNC Order. With respect to the private interest factors, while it is true that Canada is physically closer to the United States than Europe, it is nonetheless a different country. As a result – and critically – this Court lacks compulsory process over witnesses and documents in Canada. It therefore has no ability to compel production of documents or the testimony of witnesses located in Canada, and can thus expect that litigating Canadian claims here will generate "many practical problems" that would not arise if these claims were litigated in Canada. (FNC Order at 9.) With respect to the public interest factors, the Canadian plaintiffs' claims squarely implicate Canada's strong interest in deciding cases involving injuries to its residents within its borders, and its strong interest in deciding cases that challenge the soundness of its own regulatory judgments. (FNC Order at 10-11.) Even if (as plaintiffs suggest) an American jury could read a Canadian warning label, it would still impose an "American jury's view of the appropriate standards of safety and labeling" – a view potentially very different from the one prevalent in Canada. *Id*. And litigating plaintiffs' claims here would still impose heavy burdens on this Court, requiring it to master and apply foreign law and regulation. (FNC Order at 12.) Indeed, trying even a *single* foreign case in this jurisdiction would impose a heavy and wholly unnecessary burden on this Court by requiring it to learn an entirely distinct body of regulation and product liability law.[7]

---

[7] In addition, as Merck observed in its original motion to dismiss the foreign class actions, there are several Vioxx class actions pending in Canada. As a result, the doctrine of international comity provides an independent basis for dismissing the Canadian claims, for essentially the same reasons that informed this Court's *forum non conveniens* dismissal. International comity "denotes the deference that courts of the United States should give to the acts of foreign

### B.      Merck's Motion for an Order to Show Cause was Not Untimely

The Scottish and Dutch plaintiffs also contend that their claims should not be dismissed because Merck's motion was untimely. They note that the motion was filed 20 months after the New Jersey court's dismissal of the individual foreign plaintiffs' claims pending before it, and suggest that this should "weigh heavily against" dismissing plaintiffs' claims on the ground of *forum non conveniens*. (Pls. in Case 05-5586's Resp. to the Court's Order to Show Cause at 4, *In re: Vioxx Prods. Liab. Litig.*, No. 05-5586.)

Not so. As plaintiffs themselves concede (*see id*. at 5), there is no actual time limit on when a motion to dismiss for *forum non conveniens* must be made, *see* 14 D Wright, Miller, & Cooper, Federal Practice and Procedure § 3828 (3d ed. 2007), and "untimeliness will not effect a waiver," *In re Air Crash*, 821 F.2d 1147, 1165 (5th Cir. 1987). Rather, courts have simply stated that *forum non conveniens* motions should generally be filed within a "reasonable time" after the facts or circumstances that form the basis for the motion become known. *Id*. This guideline is intended to discourage defendants from behaving in a "dilator[y]" manner, and to prevent "the very incurrence of costs and inconvenience the doctrine [of *forum non conveniens*] is meant to relieve." *Id*.

---

governments and their courts." *Pan E. Exploration Co. v. Hufo Oils*, 798 F.2d 837, 839 (5th Cir. 1986). Dismissal in deference to an ongoing foreign proceeding is appropriate if "will best promote the mutual interests of the United States and the foreign sovereign." *Id*. In deciding whether to dismiss a case on this basis, courts consider "the similarity of the parties and issues involved, promotion of judicial efficiency, adequacy of relief available in the alternative forum, [and] considerations of fairness to all parties." *Caspian Invs., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991). Here, litigating these claims in Canada will best promote the mutual interests of the United States and Canada, leaving cases that implicate foreign regulatory judgments, foreign parties, and foreign injuries in their home jurisdictions, and reducing court congestion in the United States. (*Cf*. FNC Order at 9-12.) The parties and issues involved in the foreign class actions are similar, if not identical: Merck & Co., Inc., for example, is already a party in Canadian class actions. And plaintiffs have conceded that Canada is an adequate forum.

10

As a threshold matter, even if Merck's motion had been untimely, dismissal would still be warranted: untimeliness simply functions as a factor to be weighed against dismissal, and it may be outweighed if other *forum non conveniens* factors favor dismissal. In *Empresa Lineas Maritimas Argentinas, S.A. v. Stork-Werkspoor Diesel, B.V.*, No. 90-1294, 1991 U.S. Dist. LEXIS 1404 (E.D. La. Feb. 5, 1991), for example – a case the Scottish and Dutch plaintiffs themselves cite – the court dismissed a case under the doctrine of *forum non conveniens* despite the fact that it had been pending for at least two years. *See id*. at *14. The court acknowledged that "much work has been done on this case," including a substantial amount of discovery. *Id*; *see also id*. at *2. Nonetheless, the court concluded that "this one factor does not outweigh those factors which call for dismissal." *Id*. at *14. Here, as this Court concluded with respect to the Italian and French complaints, both the public and the private-interest factors relevant to a *forum non conveniens* analysis strongly favor dismissal. (*See* FNC Order 9-12.) As a result, even if Merck's motion had been untimely, dismissal would still be appropriate.

In any event, Merck's motion was not untimely. Given the complexity of this proceeding, which involves claims brought by *thousands* of plaintiffs and putative class members, Merck's motion was filed within a plainly reasonable time. As this Court is well aware, the parties in these proceedings have engaged in an extensive procedural coordination effort – including settlement negotiations – that has been carefully supervised by this Court. Immediately following the November 13, 2007 decision of the New Jersey Supreme Court not to review the New Jersey Appellate Division's affirmance of Judge Higbee's FNC dismissal orders, Merck began contacting counsel for foreign plaintiffs in the various Vioxx coordination proceedings to see if they would voluntarily dismiss their cases. Although many did, some did not. When it became clear that discussions would not resolve all of the disputes, Merck filed its request for an

Order to Show Cause.  Merck duly noted its filing of the request on the parties' joint report, and no plaintiff's counsel voiced any objection to the timeliness of Merck's action at the conference.

Moreover, throughout these coordinated proceedings, Merck has consistently maintained both that the United States is not an appropriate forum for foreign individual claims, and that this Court's FNC Order applied to foreign claimants outside Italy and France.  (*See, e.g.*, Monthly Status Conference Proceedings Tr. 15:5-7, March 1, 2007 ("it's Merck's position that the foreign cases should be tried in the foreign country where the plaintiff resides."); Status Conference Tr. 18:10-12, July 13, 2006 (the "critical issue" in Merck's class action *forum non conveniens* motion was whether foreign claimants would be permitted to have their claims heard in the United States).  Indeed, for this very reason, Merck generally refrained from producing Merck Profile Forms in foreign cases.  (*See* Monthly Status Conference Proceedings Tr. 15:8-9, March 1, 2007; Joint Report No. 22 of Pls.' and Defs.' Liaison Counsel Tr. 5, February 27, 2007 (quoting Merck's statement that "'[it] cannot expend resources at this time on such [foreign] cases as there is simply no legitimate basis to litigate those claims in the United States'").)

Merck has thus emphatically not been "dilatory" with respect to the foreign individual cases.  *In re Air Crash*, 821 F.2d at 1165.  Nor will dismissal result in undue "costs and inconvenience" to plaintiffs.  *Id*.  Plaintiffs assert that they have "expended time and effort in participating in discovery and good-faith settlement negotiations."  (Pls. in Case 05-5586's Resp. to the Court's Order to Show Cause at 5, *In re: Vioxx Prods. Liab. Litig.*, No. 05-5586.  But little discovery has been conducted in plaintiffs' cases, and those cases have not undergone significant individualized pre-trial proceedings.  They are certainly not on the eve of trial, and their cases have been subject to a stay since the November 9, 2007 settlement agreement.

Plaintiffs also cite two cases in which courts concluded that *forum non conveniens* motions were untimely due to delays of less than 20 months. (Pls. in Case 05-5586's Resp. to the Court's Order to Show Cause at 5, *In re: Vioxx Prods. Liab. Litig.*, No. 05-5586.) But both are inapposite. Neither involved the kind of complex MDL at issue here; and both cases had progressed through discovery and briefing of pre-trial motions. *Manheim Auto Fin. Servs. v. Okla. Auto Exch., LLC*, No. 06-2298, 2007 U.S. Dist. LEXIS 62447 at *3 (D. Kan. Aug. 23, 2007) (because "the parties have already conducted discovery, prepared a pretrial order and briefed dispositive motions," the "[p]laintiff would be prejudiced by transfer at this point in the proceedings"); *CNN L.P. v. CNNews.com*, 177 F. Supp. 2d 506, 515, 528 (E.D. Va. 2001) (defendant had filed unsuccessful motion to dismiss, parties had conducted discovery, and filed cross-motions for summary judgment).

### C. The Claims of Foreign Plaintiffs Who Filed Responses After This Court's Deadline Should Also Be Dismissed

On July 15, 2008 – the day this brief was filed, and five days after this Court's deadline for responses – Merck received two additional responses to this Court's Order to Show Cause. The claims of these foreign plaintiffs should also be dismissed. Plaintiff Martha Fernandez (No. 07-0344) filed her response on July 14, 2008. She does not explain why her response was filed four days late. In any event, her response expressly adopts the points and arguments set forth by the Scottish and Dutch plaintiffs in their response, offering no new arguments of her own. (*See* Pl. in Case 07-344's Resp. to the Court's Order to Show Cause at 2, *In re: Vioxx Prods. Liab. Litig.*, No. 07-0344 ("Plaintiff adopts and sets forth those points below as previously submitted to the Court by . . . counsel for Plaintiffs in . . . action 05-5586.").) Her claims should therefore be dismissed for the reasons set forth above. (*See* Sections II.A & B *supra*.)

13

A group of 15 Dominican plaintiffs also filed a response to this Court's Order to Show Cause. These plaintiffs assert that Merck consented to their filing their response on July 14, 2008, but they did not serve their response on Merck until noon of July 15, 2008. In any event, their claims too should be dismissed.[8] The bulk of the Dominican plaintiffs' brief simply re-hashes arguments about the public and private interest factors that this Court has already carefully considered and rejected in its FNC Order. As discussed above, there is no reason to revisit that analysis here.[9]

Plaintiffs also assert that the Dominican Republic does not provide an adequate alternative forum for litigation of their claims. (*See* Pls.' Mem. of Law in Opposition to Merck's Mot. to Dismiss at 7-9, *In re: Vioxx Prods. Liab. Litig.*, Nos. 06-6997 *et al.*) But plaintiffs offer ***no*** authority whatsoever to support this claim. Instead, they recite general standards applicable to an adequate forum analysis, and then state, without support, that they "lack . . . proper mechanisms" for litigating their claims in the Dominican Republic, and that the Dominican Republic "unfairly deprives the Plaintiffs of effective remedies." (*Id.* at 9.)

---

[8] Merck agrees that the claims of United States citizens suing alongside these Dominican plaintiffs should not be dismissed. (*See* Section I *supra*; Pls.' Mem. of Law in Opposition to Merck's Mot. to Dismiss at 4-5, *In re: Vioxx Prods. Liab. Litig.*, Nos. 06-6997 *et al.*)

[9] Plaintiffs also assert in conclusory fashion that "many" of the Dominican plaintiffs were prescribed Vioxx, filled their prescriptions, or were treated for their alleged injuries in the United States. (*See* Pls.' Mem. of Law in Opposition to Merck's Mot. to Dismiss at 13, *In re: Vioxx Prods. Liab. Litig.*, Nos. 06-6997 *et al.*) Plaintiffs fail to identify, however, which plaintiffs allegedly received prescriptions or treatment in the United States, or to specify the degree of treatment these plaintiffs allegedly received in the United States. Plaintiffs thus fail to show that these alleged facts materially alter the analysis of the private interest factors – let alone the overall balance of public and private interest factors described in this Court's FNC Order. Indeed, even if these new facts tipped the private interest factors in plaintiffs' favor, their cases would still be subject to dismissal based on the strength of the public interest factors alone. (*See* FNC Order at 10 (noting that the public interest factors are "perhaps more important in this case")); *cf. Dickson Marine v. Air Sea Broker*, 969 F. Supp. 389, 395 (E.D. La. 1997) (Fallon, J.) ("the weight of the private interest factors in favor of dismissal far outweighs the public interest factors supporting the plaintiff's interest in litigating in its home forum").)

These bald assertions are a patently insufficient basis on which to hold that the Dominican Republic is an inadequate forum. Initially, plaintiffs do not dispute that the Dominican Republic is an *available* alternative forum, and it plainly is, as Merck has agreed to submit to service of process and jurisdiction in the appropriate forum in each plaintiff's home country with respects to lawsuits relating to Vioxx. (*See* Merck Mot. for Order to Show Cause at 2 n. 2; FNC Order at 6 (finding Italy and France to be available alternative forums based on Merck's agreement to submit to jurisdiction).) Further, as numerous U.S. courts have found, the Dominican Republic is in fact a fully adequate forum for litigation of product liability and personal injury claims. In *Dominguez v. Pyrgia Shipping Corp.*, 1999 U.S. Dist. LEXIS 9799 (E.D. La. June 29, 1999), for example, a court in this jurisdiction dismissed a Dominican plaintiff's personal injury claims on the ground of *forum non conveniens* in favor of trial in the Dominican Republic. The court stated that it could "find no reason why the courts of the Dominican Republic . . . are not available to hear the wrongs alleged by plaintiff," and noted that the Dominican plaintiff had "cite[d] nothing that indicates that he will be treated unfairly or denied all remedies if require to bring his case in the courts of his own country." *Id.* at *8-9. *See also*, *e.g.*, *Corporacion Tim v. Schumacher*, 418 F. Supp. 2d 529, 533 (S.D.N.Y. 2006) (finding the Dominican Republic to be an adequate forum); *Banco Mercantil v. Hernandez Arencibia*, 927 F. Supp. 565, 567-68 (D. P.R. 1996) (same); *Bermudez & Co. v. Bermudez Int'l, et al.*, 2000 U.S. Dist. LEXIS 12354 at *23 (S.D.N.Y. Aug. 28, 2000) (noting that Dominican courts "abide by fundamental standards of procedural fairness"). Precisely the same analysis applies here: despite this Court's direction that plaintiffs show why their cases should not be dismissed in light of this Court's FNC Order, plaintiffs have offered *no* authority whatsoever to show that the

Dominican Republic is an inadequate forum, or that their claims are otherwise materially different from those at issue in the FNC Order. Their claims should therefore be dismissed.

## CONCLUSION

For the reasons stated above, Merck agrees that certain plaintiffs have shown sufficient cause to satisfy the Court's Order. But the rest of the foreign plaintiffs' claims – including claims filed by foreign plaintiffs who failed to respond to this Court's Order to Show Cause and the claims filed by the remaining foreign plaintiffs who did respond to this Court's Order – should be dismissed under the doctrine of *forum non conveniens*.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361
Defendants' Liaison Counsel

935967v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 15th day of July, 2008.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

935967v.1