

**Joseph R. Alexander, Jr., SBN 00995150**
**Richard Warren Mithoff, SBN 14228500**
**MITHOFF LAW FIRM**
Penthouse, One Allen Center
500 Dallas, Suite 3450
Houston, Texas 77002
(713) 654-1122; Fax (713) 739-8085
email: jalexander@mithofflaw.com; cliebergot@mithofflaw.com
**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COORDINATION PROCEEDING** | DOCKET NO. 05-4516 |
| SPECIAL TITLE [RULE 1550(b)] | MDL NO. 1657 |
| **IN RE VIOXX® CASES** | SECTION: L |
| | JUDGE FALLON |
| DINA REBECCA ROMANDIA | MAG. JUDGE KNOWLES |
| *Plaintiff,* | |
| VS. | |
| MERCK & CO., INC. | |
| *Defendant.* | |

**PLAINTIFF DINA REBECCA ROMANDIA AND SERGIO QUIÑONEZ'S OPPOSITION TO THE COURT'S ORDER TO SHOW CAUSE WHY THE FOREIGN INDIVIDUAL CASES SHOULD NOT BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

TO THE HONORABLE JUDGE FALLON:

PLAINTIFFS DINA REBECCA ROMANDIA and SERGIO QUIÑONEZ ("Plaintiffs") file their Opposition to the Court's Order to Show Cause Why the Foreign Individual Cases Should Not Be Dismissed under the Doctrine of *Forum Non Conveniens*.

## General Background Facts

Plaintiffs Dina Rebecca Romandia and Sergio Quiñonez are citizens of Mexico and reside in Guadalajara, Jalisco, Mexico. Ms. Romandia took Vioxx on a regular basis in Mexico pursuant to her physician's direction. The use of Vioxx in Mexico does not require a prescription. Ms. Romandia stopped taking Vioxx just prior to her trip to the United States.

In September and October 2002, Plaintiffs were visiting Northeastern United States. On October 2, 2002, while in Atlantic City, New Jersey, Ms. Romandia suffered an ischemic stroke. She was taken to Atlantic City Medical Center in Atlantic City, New Jersey and admitted to intensive care unit of the hospital through the emergency room after being diagnosed with an ischemic stroke resulting in left sided paralysis. In furtherance of treatment, she underwent physical therapy and rehabilitation until she was discharged on October 11, 2002. She subsequently returned to her home in Guadalajara, Jalisco, Mexico.

## Procedural Background Leading to This Point

On September 30, 2005, Plaintiffs filed their Complaint against Merck & Co., Inc. directly in this Court in light of the pending Multidistrict Litigation proceedings. *See* Pretrial Order 11. Plaintiffs complied with the pretrial deadlines for the completion and filing of Plaintiff Profile Forms. After repeated requests, however, Defendant Merck failed to timely provide a Merck Profile Form ("MPF"). Accordingly, Plaintiffs contacted Plaintiffs' Liaison Counsel who in turn set the issue before the Court at the Monthly Status Meeting on March 1, 2007.

At that hearing, Merck's position was that Merck would not provide an MPF and would be filing a motion to dismiss on *foreign non conveniens* grounds. *Ex. A*, Monthly Status Meeting Hr. Tr. 15:5-12 ( Mar. 1, 2007) (Mr. Wittman).

The Court requested that Merck file a motion and specifically framed the issue to be presented before the Court:

> THE COURT: You have to get that to me in terms of a motion. Let's contact or get with the Merck lawyer, get in touch with the plaintiff lawyer here, and if you intend to file a motion you have to file a motion, then I'll hear from the plaintiff and I'll deal with it. The issue before me is going to be forum non conveniens, the issue before me is going to be whether or not someone from Mexico who consumes Vioxx or purchases Vioxx in Mexico, comes to this country, probably consumes at least some Vioxx while they're in this country and has a heart attack while they're in this country, whether that distinguishes them from the foreign cases that I have been dealing with or have dealt with on class action focus. In those cases, Italian and French and English plaintiffs bought Vioxx in their respective countries, consumed them in their respective countries, sustained injuries in their respective countries and then filed suit in this country.
> 
> \* \* \*

> THE COURT: Okay. All right. Let's do this. I'd like to have it [the *forum non conveniens* issue], maybe not resolved, but at least filed or something dealt with by next meeting, so let's get with the plaintiff lawyer and get the necessary documents filed.
>
> MR. WITTMANN: I will do that, your Honor.
>
> MR. SOVANY: Thank you, your Honor.

*Ex. A*, Monthly Status Meeting Hr. Tr. at 15:13-16:3, 9-14.

To date, in the over 16 months since the referenced hearing raising this issue, no Merck lawyer has contacted Plaintiffs' counsel regarding this matter, and likewise, despite Court instruction to do so, has failed to file a motion addressing the issue of *forum non conveniens*.

On May 16, 2008, Merck, disregarding this Court's previous request and Defendant's representation of filing a motion to dismiss based on *forum non conveniens*, included Plaintiffs' case in their Motion and Incorporated Memorandum for an Order to Show Cause Why the Foreign Individual Cases Should Not Be Dismissed under the Doctrine of *Forum Non Conveniens*. [Doc. 14455]

On June 30, 2008, this Court issued an Order to Show Cause Why the Foreign Individual Cases Should Not Be Dismissed under the Doctrine of *Forum non Conveniens*. [Doc. 14914]

Plaintiffs' counsel has contacted Defense Liaison Counsel regarding this matter to address the issue and the difference in procedural posture than the class action cases or other cases filed in the Vioxx Multidistrict Litigation. Plaintiffs' counsel were told that an attorney

4

handling the *forum non conveniens* matter would contact them. To date, Plaintiffs have not received any phone call on the matter prior to the filing of this opposition.

Accordingly, for the reasons stated herein, Plaintiffs oppose to being included and/or dismissed based on Defendant's motion and the doctrine of *forum non conveniens*.

### Argument & Authorities

**I.   Merck Has Abandoned its Motion to Dismiss this Case Based on the Doctrine of *Forum Non Conveniens*.**

Merck has essentially abandoned its motion to dismiss this case based on the doctrine of *forum non conveniens*. Not only has Merck waited well over 2½ years to raise this issue, but has waited over 16 months since this Court instructed it to file a motion, based on Merck's representations, to be addressed before the Court in April of 2007. This time period is the equivalent to an abandonment of its motion. A defendant must move to dismiss for *forum non conveniens* within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known to the defendant. *See In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (mem.), *opinion reinstated on other grounds*, 883 F.2d 17 (5th Cir. 1989).

In *Air Crash Disaster Near New Orleans*, the Fifth Circuit issued the following rule regarding timeliness of *forum non conveniens* issues:

> [A] defendant must assert a motion to dismiss for forum non conveniens within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably

> knowable to the defendant.
>
> \*\*\*
>
> While untimeliness will not effect a waiver, it should weigh heavily against the granting of the motion because a defendant's dilatoriness promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve.

*Id.* at 1165.

Clearly soon after the filing of Plaintiffs' Complaint, Merck would have had the facts or circumstances which serve the basis for a motion developed and known to Merck. In fact, the basis has not changed—the fact that Plaintiffs are Mexican citizens is the only basis upon which Merck can rely. Nonetheless, by at least March 1, 2007, Merck had expressed its intention to this Court to move to dismiss on *forum non conveniens* grounds. The Court even indicated what particular issue it wanted briefed in such a motion, and asked that it be filed by the next monthly status conference (April 2007). Monthly Status Meeting Hr. Tr. 15:13-16:3, 9-14. Now Merck seeks to raise the issue indirectly via a show cause motion, more than over a year after the Court instructed Merck to brief the issue. Merck's dilatory tactics have allowed for the incurrence of costs and inconvenience that the *forum non conveniens* doctrine is meant to relieve. Merck should not be rewarded for ignoring the clear instructions of the Court, and for improperly attempting to shift the burden of persuasion on *forum non conveniens* to Plaintiffs.

## II.    Merck Has Not Met its Burden for Dismissal under the Doctrine of *Forum Non Conveniens*.

A defendant bears the burden of invoking the doctrine of *forum non conveniens* and moving to dismiss in favor of a foreign forum. *In re Air Crash Disaster Near New Orleans,*

821 F.2d at 1164. This burden of persuasion runs to all the elements of the *forum non conveniens* analysis. *Id*; *accord Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d. Cir. 1991).

Merck bears the burden of raising and proving a motion to dismiss based on *forum non conveniens*. Curiously, and contrary to firmly established law, Merck seeks to shift the burden of persuasion to Plaintiffs via its motion to show cause. Merck should not be allowed to shift the established burden of persuasion on this issue. Accordingly, Merck's dilatory tactics and improper attempt to shift the burden of persuasion should weigh heavily against dismissing Plaintiffs' case.

### III. Because Plaintiff Dina Rebecca Romandia Had Her Event in New Jersey, Where Merck Is Headquartered, Rather than in Mexico, Plaintiffs' Claims Defeat Dismissal under the Doctrine of *Foreign Non Conveniens*.

Regardless of Merck's handling of this matter, the facts and circumstances of this case defeat dismissal under the doctrine of *forum non conveniens*.

#### A. Standard of Review.

The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

**B.      Because Plaintiff Dina Rebecca Romandia's Event Occurred in New Jersey, the Alleged Grounds upon Which Merck Relies in Support of Dismissal under the Doctrine of *Forum Non Conveniences* Are Inapplicable.**

The grounds and previous motion dismissing foreign class actions do not apply to this case. This Court acknowledged such a distinction in requesting Merck to specifically show the Court why this case should be dismissed, especially since Plaintiff Romandia had her ischemic stroke in New Jersey, coincidentally the headquarters of Merck. *See Ex. A*, Monthly Status Meeting Hr. Tr. 15:13-16:3, 9-14. In the foreign class action cases, the Italian and French and English plaintiffs bought Vioxx in their respective countries, consumed them in their respective countries, *sustained injuries in their respective countries* and then filed suit in this country. *See Ex. A*, Monthly Status Meeting Hr. Tr. 15:13-16:3, 9-14. These issues in this case are very different.

**1.      The Supreme Court parameters and factors in a *forum non conveniens* analysis.**

The Supreme Court has set forth the parameters and factors a court must examine in its analysis under the doctrine of *forum non conveniens*:

> [A] plaintiff's choice of forum should rarely be disturbed. However, when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would "establish...oppressiveness and vexation to a defendant...out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of its sound discretion, dismiss the case.

*Piper Aircraft Co. v. Reyno*, 454 U.S. at 241.

Courts consider both public and private interests when determining whether to dismiss an action on *forum non conveniens* grounds. In 1947, the Supreme Court delineated a multi-factored test for determining whether dismissal for *forum non conveniens* is appropriate. *See generally, Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).

Private interests considered by courts in a *forum non conveniens* analysis include, *inter alia*:

> (1) relative ease of access to sources of proof;
>
> (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses;
>
> (3) whether a judgment, if obtained, will be enforceable;
>
> (4) whether a plaintiff's choice of forum is designed to vex, harass, or oppress a defendant by inflicting upon him expense or trouble not necessary to the plaintiff's own right to pursue his remedy; and
>
> (5) other practical problems making trial of a case easy, expeditious, and inexpensive.

*Id.* at 508. Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Id.*

Also, courts evaluate public interests when applying *forum non conveniens* doctrine, relating to the burdens placed upon the judicial system when litigation piles up in congested centers, rather than being handled at its origin. Primarily, courts have focused on the local interest in having localized controversies decided at home, as well as the interest in avoiding problems in conflict of laws. *See id.* at 508-9.

Drawing on these general principles, application of *forum non conveniens* doctrine is highly fact determinative. If an alternative forum exists, the balancing of plaintiff's and defendant's competing public and private interests will depend upon the unique circumstances of a particular case. *See* 14D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 3828.4. However, existing case law is at least illustrative of how courts have applied the *forum non conveniens* doctrine to similar circumstances.

      a.    *McLennan v. Am. Eurocopter Corp.*—denial of dismissal upheld where large number of witnesses and evidence was located in forum selected by plaintiff.

In 1995, a helicopter manufactured by American Eurocopter Corp. (AEC), and piloted by a Canadian citizen, crashed in Alberta, Canada. *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 408 (5th Cir. 2001). The Canadian pilot suffered serious injuries, and thereafter sued AEC in a Texas Federal District Court, alleging marketing defects by AEC. *Id.* AEC's predecessor in interest had assembled the helicopter in Texas. *Id.* at 414. AEC filed a motion to dismiss for *forum non conveniens*, which was denied by the District Court. *Id.* at 423. In dismissing the motion, the District Court held that AEC had not met its burden of persuading the court that private and public interest factors weighed in favor of dismissal, by failing to even raise any specific argument directed to the application of those factors. *Id.* at 425. Despite AEC's failure to properly address the issue, the District Court evaluated the *Gilbert* private and public interest factors, concluding:

10

> [T]he private interest factors did not weigh in favor of dismissal because a larger number of witnesses and a larger body of evidence was more easily accessible in Texas. The district court further concluded that the public interest factors did not weigh in favor of dismissal because Texas had a strong interest in enforcing its laws against and monitoring the activities of AEC, a Texas-based manufacturer.

*Id.* On appeal, the Fifth Circuit concluded that the District Court had properly exercised its discretion in refusing to dismiss the case for *forum non conveniens*.

      b.    *Lony v. E.I. Du Pont de Nemours & Co.*—dismissal was abuse of discretion where foreign plaintiff sued defendant in forum where corporation was headquartered.

Lony, a sole proprietor based in Germany, was engaged in purchasing cellophane from Du Pont. *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 606 (3d. Cir. 1991). Lony claimed that Du Pont had misrepresented its cellophane by asserting that it did not contain DEG, a toxic chemical. *Id.* After traces of DEG were found in the cellophane provided by Lony to his customers, at least one of Lony's major clients cancelled its contracts with Lony. *Id.* at 607. Thereafter, Lony sued Du Pont in the District of Delaware for, *inter alia*: tortious misrepresentation, fraud, and breach of warranty. *Id.* Du Pont then filed a motion to dismiss for *forum non conveniens*, which was granted by the District Court. *Id.* On appeal, the Third Circuit reversed and remanded, holding that the District Court had abused its discretion by failing to properly assess the *Gilbert* factors, and by failing to give adequate consideration to the amount of deference due Lony's choice of forum. *Id.* After remand, Du Pont again moved to dismiss on *forum non conveniens* grounds. *Id.* The District

Court again granted the motion contingent on certain conditions, namely: that Du Pont stipulate to certain facts, and that Du Pont would make available to Lony relevant witnesses and documents. *Id.* Lony again appealed, and the Third Circuit again reversed the District Court, holding it had abused its discretion in dismissing Lony's action. *Id.* at 617.

Initially, the Third Circuit noted that a foreign plaintiff's choice of forum may deserve less deference because it may be less reasonable to assume that a venue which is not the plaintiff's home forum is convenient. *Id.* at 609, (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). However, the Third Circuit noted that reduced deference was not an invitation to accord a foreign plaintiff's selection of an American forum no deference, since dismissal for *forum non conveniens* is the exception, rather than the rule. *Lony*, 935 F.2d at 609.

Continuing, the Third Circuit noted the absurdity of Du Pont's claims of inconvenience at being sued in the District of Delaware, where it was headquartered, stating:

> This case is puzzling in that frequently the *forum non conveniens* issue is raised by a defendant sued away from home who seeks to convince the court that the balance of relevant factors should be tipped against requiring it to defend in a forum far from its home jurisdiction. Here, in contrast, Du Pont, which is headquartered in Wilmington, Delaware, and is the largest employer in that state, seeks to move the action against it to a forum more than 3,000 miles away. It is, as Alice said, "curiouser and curiouser."

*Id.* at 608 (internal citations omitted).

Despite Du Pont's offer to stipulate to certain facts and make witnesses and documents available, the Third Circuit was "unpersuaded that...Du Pont's concession...

support the district court's conclusion that 'Du Pont has established...oppressiveness and vexation out of all proportion to Lony's convenience.'" *Id.* at 612. Further, the Third Circuit held that Du Pont had not met its heavy burden of establishing that public factors weighed in favor of dismissal, noting that there was no basis in the record for the District Court's conclusion that comparative court congestion weighed in favor of dismissal. *Id.* at 613.

      c.      *CSR, Ltd. v. Fed. Ins. Co.*—denial of dismissal upheld where plaintiff sued defendant in forum where most of the evidence was located and where the actual injury took place.

Thousands of claims were filed against CSR, arising from CSR's activities as an asbestos exporter. *CSR, Ltd. v. Fed. Ins. Co.*, 146 F. Supp. 2d 556, 558 (D.C.N.J. 2001). Some of those claims arose from asbestos contamination at a plant in New Jersey. *Id.* at 569. CSR's Australian and European based insurers (FIC) rejected CSR's coverage claims. *Id.* at 559. The insurance contracts at issue were formed in Australia. *Id.* Following denial of its claims, CSR filed suit against FIC in New Jersey District Court for, *inter alia*: breach of contract and bad faith denial of coverage. *Id.* at 559. FIC then filed a motion to dismiss for *forum non conveniens*, alleging that Australia provided an adequate alternative forum, and that the public and private *Gilbert* factors supported dismissal of CSR's claims. *Id.* at 566. The District Court denied FIC's motion to dismiss for *forum non conveniens*. *Id.* at 571.

In analyzing the *Gilbert* factors, the District Court concluded that New Jersey was the more convenient forum for several reasons, including: (1) millions of documents upon which plaintiff based its claims were located in New Jersey; (2) plaintiff required more documents

13

to prove its case than did defendants; (3) New Jersey had a substantial interest in the rapid resolution of the liability claims stemming from asbestos contamination at a New Jersey plant; and (4) New Jersey's interest in the prompt resolution of the liability claim was a significant counterweight to Australia's interest in enforcing contracts negotiated in Australia. *See id.* at 569-70; *see also* 4D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 3828.4.

> d. *Penge v. Hillenbrand Indus.*—denial of dismissal upheld where foreign plaintiff sued defendant in forum where defendant's principal place of business was located, even though many witnesses to plaintiff's damages were abroad since plaintiff, not defendant, would be the one inconvenienced since he had the burden of proof on damages.

Hillenbrand, a world-wide distributor of caskets, had its principal place of business in Indiana. *Penge v. Hillenbrand Indus.*, 228 F.Supp.2d 929, 931 (S.D. Ind. 2002). Mr. Penge, a citizen and resident of the United Kingdom, purchased a casket designed and manufactured by Hillenbrand after the death of his wife. *Id.* at 931-32. After discovering that the casket leaked, Mr. Penge sued Hillenbrand in the Southern District of Indiana for: negligence, negligent infliction of emotional distress, strict product liability, breach of warranty, breach of contract, fraud and misrepresentation, and intentional infliction of emotional distress. *Id.* at 932. Hillenbrand moved to dismiss on *forum non conveniens* grounds, alleging that England was an adequate alternative forum, and that the private and public *Gilbert* factors supported dismissal. *See id.* The District Court denied Hillenbrand's

motion. *Id.* at 938.

In *Penge,* many of the witnesses relating to Mr. Penge's emotional distress, breach of contract, breach of warranty, and fraud claims could be found in England, indicating that England would likely be a more convenient forum for those claims. *See id.* at 935. However, the District Court noted that Indiana would likely provide the most convenient forum for Penge's design and manufacturing defect claims. *Id.* Further, the District Court noted that with respect to the emotional distress, breach of contract, breach of warranty, and fraud claims that might be more conveniently pursued in England, Penge bore the ultimate burden of persuasion on those claims:

> [B]oth parties have avoided identifying "the entity" that sold Mr. Penge the casket. We surmise (without holding) from several suggestions in the pleadings and briefs that "the entity" is English and is not a named defendant in this case. If these conjectures prove true, then the *plaintiff* is more likely than Hillenbrand to find Indiana an inconvenient forum.... In order to survive summary judgment (and in order to prevail at trial) on those counts, it would seem incumbent on Mr. Penge to produce the pertinent documents – the contracts and warranties allegedly breached; whatever written materials may reveal the nature and scope of any alleged misrepresentations – and witnesses – the person(s) who allegedly misrepresented the virtues of the casket; and the person(s) who allegedly inflicted emotional distress...Hillenbrand has, by its answer and affirmative defenses, already laid the groundwork for pointing to the "empty chair" with respect to Mr. Penge's tort claims...It is unlikely to be inconvenienced by having to defend this action in this court against witnesses and exhibits that may be impossible for the plaintiff to produce.

*Penge,* 228 F. Supp. 2d at 935 (internal citation omitted).

2. **Because Ms. Romandia had her event in New Jersey, Merck is headquartered in New Jersey, and almost all of the evidence is located in New Jersey, the doctrine of** *forum non conveniens* **does not warrant dismissal.**

Here, Dina Romandia was actually in New Jersey when she suffered her ischemic stroke giving rise to her claims against Merck. The hospital that treated Ms. Romandia, as well as many of the doctors and medical staff that treated her, are located in New Jersey. Merck itself is headquartered in Whitehouse Station, New Jersey. The vast majority of witnesses and documents necessary to the pursuit of Ms. Romandia's claim against Merck are most easily accessible in New Jersey. Accordingly, it was only natural that Ms. Romandia should bring suit against Merck in the United States. But for the pending MDL and this Court's Pretrial Order 11, Plaintiffs would have filed this case in the United States District Court in New Jersey. Plaintiffs have not chosen to bring suit in this forum to vex, harass, or oppress Merck. It would strain credulity for Merck to claim that defending itself at the locus of its world headquarters would foment unnecessary costs and inconvenience. Indeed, aside from the presence of a couple of plaintiff's witnesses in Mexico, it would be difficult to imagine how Merck is inconvenienced by Plaintiffs' choice of forum. Plaintiffs bears the ultimate burden of persuasion regarding causation and damages. It would make little sense for Ms. Romandia to make witnesses residing in Mexico unavailable. Indeed, it is in her interest to ensure that those witnesses are available to support her claims.

Further, an application of *Gilbert* to the facts of this case leaves little doubt that both the private and public interest factors favor denial of any dismissal for *forum non conveniens*.

The vast majority of witnesses and documents supporting Plaintiffs' claims may be found in New Jersey, where Ms. Romandia had her event.

## Conclusion

Given Merck's dilatory tactics and improper attempts to shift the burden of persuasion while invoking *forum non conveniens*, and in consideration of the unique facts of this case, this Court should deny Merck's attempt to have this case dismissed on *forum non conveniens* grounds. Plaintiffs have chosen the most logical and appropriate forum for pursuit of their claims against Merck. The balance of *Gilbert* private and public interest factors do not heavily favor Merck. Indeed, application of the *Gilbert* balancing factors to the facts of this case indicate that Plaintiffs' choice of forum should not be disturbed. Accordingly, Plaintiffs respectfully request that the Court deny Merck's Motion to Show Cause, and not dismiss this case for *Forum Non Conveniens*.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court not dismiss this case under the doctrine of *forum non conveniens*, and pray for such other and further relief, both general and special, legal and equitable, to which they have shown or may show themselves justly entitled.

Respectfully submitted,

MITHOFF LAW FIRM

_____
RICHARD WARREN MITHOFF
State Bar No. 14228500
JOSEPH R. ALEXANDER, JR.
Attorney-In-Charge
State Bar No. 00995150
Penthouse, One Allen Center
500 Dallas, Suite 3450
Houston, Texas 77002
(713) 654-1122
(713) 739-8085 (Fax)

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Opposition to the Court's Order has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Service Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of July 2008.

JOSEPH R. ALEXANDER, JR.
Attorney-In-Charge
State Bar No. 00995150
S.D. Tex. Bar No. 1368
Mithoff Law Firm
Penthouse, One Allen Center
500 Dallas, Suite 3450
Houston, Texas 77002
(713) 654-1122
(713) 739-8085 (Fax)
cliebergot@mithofflaw.com