# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| 1199SEIU GREATER NEW YORK BENEFIT FUND, by its Trustees, *et al.,* on behalf of themselves and all others similarly situated, | * * * * | CASE NO. 08-3627 RELATED CASE: 2:05-MD-1657 VIOXX MDL LITIGATION |
| Plaintiffs, | * * | SECTION L |
| v. | * * | JUDGE ELDON E. FALLON |
| BROWNGREER, PLC, *et al.,* | * * | MAGISTRATE JUDGE |
| Defendants. | * | KNOWLES |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AS TO THE NPC DEFENDANTS

This Court should grant the narrow and carefully tailored preliminary injunctive relief

Plaintiffs seek because the self-funded ERISA Health Plans that comprise the Class in this case have

an express ERISA-enforceable right to reimbursement from their beneficiaries who will be receiving

Vioxx Settlement Funds, and because these Plans will be irreparably harmed unless the Court grants

the requested relief.  The requested relief is particularly appropriate because it will not cause harm to

any of the Vioxx Claimants and will not compel any ERISA Beneficiary to take any action at all.[1]  In

fact, the requested relief requires *only* that the Vioxx Claimants' attorneys either certify that their

---

[1]      For purposes of this Reply, the term "ERISA Beneficiaries" refers to the claimants described in Plaintiffs' Amended Complaint as "Jane Doe Vioxx Claimants" – *i.e.*, those Vioxx Claimants who "(a) have enrolled or will enroll in the Vioxx Settlement, (b) are beneficiaries of the ERISA Health Plans on whose behalf the plans have paid Vioxx-related medical benefits and who stand to receive Settlement Funds from the Vioxx Settlement Trust, and (c) are obligated pursuant to their respective plan documents to notify their ERISA Health Plan(s) of information related to their participation in the Vioxx Settlement and/or to reimburse their ERISA Health Plan(s) from their Settlement Funds for medical benefits they received in connection with their Vioxx-related injuries."  Amended Complaint ¶ 12.  Thus, by definition, Vioxx Claimants who received medical benefits from payors other than self-funded ERISA Health Plans would not be affected in any way by the relief sought herein.

clients received no benefits from a self-funded ERISA Health Plan or that the benefits they received were less than the amount of settlement proceeds that will remain to be distributed in the "second round" of distributions – in which case the attorneys freely can distribute to each Vioxx Claimant (including the ERISA Beneficiaries) the initial distribution of their Settlement Funds in accordance with the Settlement Agreement.  Only where an ERISA Beneficiary's attorney is unable to make one of these certifications would the attorney be required to disclose any information at all to the Plaintiffs – information that in any event would be limited in substance and be provided only to Plaintiffs' counsel for dissemination to the particular ERISA Health Plan that paid health benefits for that Beneficiary.  And even in those situations, there only would be a limited delay – no more than 45 days – of the initial distribution of Settlement Funds in order to afford the ERISA Health Plans a reasonable opportunity to assert their lien rights pursuant to the reimbursement provisions in their ERISA plan documents.

Remarkably, the NPC Defendants challenge a request for preliminary injunctive relief that Plaintiffs have not advanced.[2]  Rather than address the limited preliminary relief that Plaintiffs' Motion actually seeks, the NPC Defendants inexplicably assail the different relief prayed for in Plaintiffs' initial complaint.  But the request for relief set forth in that now superseded pleading is wholly irrelevant to the Motion currently before this Court.

As demonstrated herein, each of the objections asserted by the NPC Defendants with respect to Plaintiffs' initial complaint is fully addressed by the relief Plaintiffs seek in their Motion and Amended Complaint.  For example:

---

[2]      BrownGreer filed a separate Opposition to Plaintiffs' Motion for Preliminary Injunction.  Plaintiffs have filed a separate Reply in response to that Opposition.

- The NPC Defendants assert that Plaintiffs' requested relief will prevent "the approximately 50,000 Vioxx claimants" from receiving prompt payment of the settlement proceeds to which they are entitled.   NPC Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction ("NPC Opp.") at 25.[3]

  > *Plaintiffs' requested preliminary relief will have __no effect__ __whatsoever__ on the Vioxx Claimants who received no health benefits from self-funded ERISA Health Plans.  And it will enable even the ERISA Beneficiaries to receive prompt distributions of their Settlement Funds as long as their attorneys certify that the benefits they have received from their ERISA Health Plans are less than the amount of their settlement proceeds still pending distribution.*

- The NPC Defendants argue that Plaintiffs are seeking a lien against the "aggregate" Vioxx Settlement Trust rather than against specifically identifiable funds.  NPC Opp. at 6, 9-13.

  > *Plaintiffs' requested preliminary relief does __not__ seek to enforce any liens at all and the ultimate relief requested in the Amended Complaint involves only liens against individual ERISA Beneficiary's Settlement Funds, __not__ against the aggregate Settlement Trust.*

- The NPC Defendants complain that Plaintiffs are requesting "the production of private personal information concerning Vioxx personal injury claimants" without "demonstrat[ing] some association" with those claimants.  NPC Opp. at 15-19.

  > *Plaintiffs' requested relief does __not__ seek public disclosure of private information.  In fact, Plaintiffs' Proposed Order would limit the dissemination of any ERISA Beneficiary's information to counsel on an "attorney's eyes only" basis and to the ERISA Health Plan that paid health benefits to that Beneficiary.*

- The NPC Defendants contend that the relief sought by Plaintiffs will "severely prejudice" those Vioxx Claimants experiencing financial hardship.  NPC Opp. at 24-25.

  > *Plaintiffs' requested relief includes an __express__ __exception__ for hardship cases, including for ERISA Beneficiaries, which would be available based simply on a certification of the affected ERISA Beneficiary's counsel.*

---

[3]      The NPC Defendants also argue that Plaintiffs here are seeking "precisely the same relief" that was sought by Healthcare Recoveries, Inc. ("HRI") and rejected in a separate action.  NPC Opp. at 3.  The issue in that case was whether HRI could utilize Fed. R. Civ. P. 27 to obtain information *prior* to the filing of a lawsuit.  HRI also sought much broader categories of information than the very limited information Plaintiffs seek here.  *See In re Vioxx Products Liab. Litig.*, 2008 WL 1995098, *1 (E.D. La. May 6, 2008).  The decision regarding HRI was both procedurally and substantively different from the issues raised here, and it has no bearing on Plaintiffs' Motion.

Thus, the preliminary injunctive relief Plaintiffs *actually* seek is directed only to the Vioxx Claimants' attorneys, and requests only that the attorneys provide – prior to the disbursement of Settlement Funds that may be subject to Plaintiffs' ERISA lien rights (and that, therefore, in the words of *Bombardier*, "in good conscience" belong to Plaintiffs) – basic information the attorneys already are obligated to collect and disclose pursuant to the Settlement Agreement, and that their clients are required to disclose under the terms of their ERISA plans.  In fact, Plaintiffs do not ask the NPC Defendants (or the other firms representing ERISA Beneficiaries) to do *anything* they are not already required to do as a precondition to the disbursement of each ERISA Beneficiary's respective Settlement Funds.

As demonstrated both in Plaintiffs' moving papers and herein, in view of the narrow relief sought, Plaintiffs readily satisfy the requirements for a preliminary injunction in this case.  Moreover, as further demonstrated herein, the NPC Defendants' request for a multi-billion dollar bond is spurious and disregards the case law in this Circuit rejecting bond requests where the proposed injunction is of "short duration" and/or the disputed funds are to be placed in an interest-bearing account, as would be the case if the Court grants Plaintiffs the relief they seek.  Finally, for the reasons discussed below, the class-wide scope of relief that Plaintiffs seek is wholly appropriate in the circumstances of this case.  Accordingly, this Court should grant Plaintiffs' Motion for Preliminary Injunction and reject the NPC Defendants' baseless bond request.

I.     **Plaintiffs Readily Satisfy the Standard for a Preliminary Injunction in this Case.**

In view of the limited preliminary relief Plaintiffs *actually* seek, it is clear that Plaintiffs meet the standards for a preliminary injunction.  Plaintiffs have demonstrated a likelihood of success on the merits; that they will be harmed irreparably in the absence of injunctive relief; that such harm substantially outweighs any harm to the Vioxx Claimants (or their attorneys); and that the public interest strongly favors granting the requested relief.

As a threshold matter, Defendants contend that Plaintiffs are not entitled to an injunction because they seek "mandatory injunctive relief." NPC Opp. at 5. This argument can be disposed of easily. Defendants fail to articulate what "mandatory relief" Plaintiffs seek at all. Plaintiffs' Proposed Order does not compel the Vioxx Claimants or their attorneys to do anything; it only establishes a reasonable and non-burdensome precondition for the distribution of Settlement Funds that may be subject to Plaintiffs' ERISA-protected lien rights. Moreover, even if the requested relief somehow could be characterized as "mandatory" in nature, the law in this Circuit is clear, as the NPC Defendants acknowledge, NPC Opp. at 5, that even "mandatory" relief is appropriate where, as here, "the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).[4]

The NPC Defendants' related argument that Plaintiffs' motion should be denied because it "goes well beyond a mere request that the Court maintain the status quo" likewise fails. NPC Opp. at 19. Injunctive relief is *not* limited to maintaining the status quo, especially where the status quo threatens to cause a party irreparable injury. *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) (finding that there is no "particular magic in the phrase 'status quo'" for purposes of preliminary injunctive relief). As the Fifth Circuit has held, "[t]he purpose of a preliminary injunction is always to prevent irreparable injury," and where the status quo threatens

---

[4]      In *Martinez*, the Fifth Circuit found that mandatory preliminary relief was warranted even where the potential harm to the non-moving party was comparable to that faced by the plaintiffs. In this case, the relief sought by Plaintiffs will cause no harm at all to the Claimants (or their attorneys). That is because any ERISA Beneficiary's Settlement Funds not immediately distributed would be placed in an interest-bearing account for the limited time proposed for the assertion of reimbursement claims by Class members.

such injury, "[t]he focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo." *Id.* (citations omitted).[5]

In this case, the "status quo" will impair severely, if not eliminate entirely, Plaintiffs' ability to pursue their ERISA-protected reimbursement rights.  Indeed an injunction conditioning the disbursement of Settlement Funds on the disclosure of basic information regarding the ERISA Beneficiaries is the *only* way to ensure that self-funded ERISA Health Plans effectively will be able to enforce these rights.  Under such circumstances, an injunction requiring the limited informational disclosure Plaintiffs seek is demonstrably appropriate.  *See, e.g.*, *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F. Supp. 2d 317, 326 (D.R.I. 1999) ("it is entirely proper for a court of equity to award [even mandatory injunctive] relief when a party's interests can be protected in no other way"); *Moreno v. Casrik, Inc.*, No. C-05-1250, 2006 U.S. Dist. LEXIS 33346, *18 (N.D. Cal. May 25, 2006) (enjoining defendants in ERISA case to allow Plaintiffs to audit their financial records to determine amount of delinquent contributions to employee trust funds).

### A.    Plaintiffs Are Likely to Succeed on the Merits.

The NPC Defendants themselves concede that:

> Once funds are actually distributed to claimants or their attorneys, class members may pursue equitable reimbursement actions under ERISA.  At that point, the funds will be both identifiable and in the possession/control of plan beneficiaries, *i.e.*, the factual predicate justifying the decisions in *Sereboff* and *Bombardier*.[6]

---

[5]    The NPC Defendants' argument based on *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 (5th Cir. 1985), is also off the mark.  The NPC Defendants cite this case for the proposition that a preliminary injunction "should not grant relief properly awarded only in a final judgment," NPC Opp. at 19, but Plaintiffs' proposed injunction will not grant "final judgment."  It merely requires the NPC Defendants to provide the *information* Plaintiffs need – and to which they are entitled – to assert their ERISA-protected rights in their case on the merits.

[6]     *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006); *Bombardier Aerospace Employee Welfare Benefits Plan*, 354 F.3d 348 (5th Cir. 2003).

NPC Opp. at 15. Thus, it is not disputed that no later than the moment an ERISA Beneficiary's Settlement Fund reaches his/her attorney's account, Plaintiffs will be entitled to the relief they seek in their Complaint – *i.e.*, reimbursement from each Beneficiary's allocated Settlement Fund of the amounts his/her self-insured ERISA Health Plan paid for his/her Vioxx-related medical benefits. *See* NPC Opp. at 14 ("*Bombardier* establishes that [§ 502(a)(3)] actions are proper . . . once the funds are in the hands of the party's agent/attorney for distribution to the plan beneficiary"). These concessions by the NPC Defendants leave no doubt that Plaintiffs have established they are likely to succeed on the merits of their claim that the self-funded ERISA Health Plans comprising the Class defined in the Amended Complaint are entitled to enforce the express reimbursement rights set forth in their plan documents.[7]

It bears emphasis that the Class is expressly limited to self-funded plans, like Named Plaintiffs, whose plan documents contained, at the relevant time (*i.e.*, when the Class members paid or agreed to pay Vioxx-related benefits on behalf of ERISA Beneficiaries) express provisions requiring reimbursement from settlement proceeds. Thus, by definition, all Class members will have the same reimbursement rights that the NPC Defendants acknowledge have been expressly recognized and enforced by the Supreme Court and the Fifth Circuit, respectively, in *Sereboff* and *Bombardier*. Indeed, the undisputed evidence in the record before the Court – including the affidavit of Plaintiffs' ERISA expert Mark Johnson – confirms that such express reimbursement terms typically are found in the plan documents of self-funded ERISA Health Plans. *See* Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction (Pl. Memo.) at 11. Thus, Plaintiffs

---

[7]     It is manifest that Plaintiffs readily meet any standard of "likelihood of success on the merits." Certainly they meet the standard applicable in this Circuit – the demonstration of "legal questions that are sufficiently serious and substantial that a more thorough investigation is appropriate." *Chambers v. Coventry Health Care of La., Inc.*, 318 F. Supp. 2d 382, 389 (E.D. La. 2004).

have established that they are likely to prevail on the merits of their reimbursement claims on both an individual and class basis.[8]

The NPC Defendants are reduced to arguing that Plaintiffs "are unlikely to succeed" because the ERISA Beneficiaries' Settlement Funds *today* remain "undistributed and unallocated" and are being held by BrownGreer as Settlement Administrator.  In a similar vein, they contend that no "identifiable fund" will exist "until [it has] been *distributed* to Vioxx personal injury claimants and/or to their attorneys."  NPC Opp. at 13 (emphasis added).  These are arguments about "timing," *not* the "merits" of Plaintiffs' ultimate entitlement to the relief they seek.  The inquiry regarding "likelihood of success" for purposes of a request for preliminary injunctive relief is based on the likelihood of ultimate success "once the case proceeds to a full and complete trial."  *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir. 1979); *Texas First Nat'l Bank v. Wu*, 347 F. Supp. 2d 389, 398 (S.D. Tex. 2004) (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991)).  It does not turn on whether Defendants can engage in a legal game of "Gotcha!" by arguing that Plaintiffs are "too early" now but will be "too late" once the Settlement Funds have been distributed to the ERISA Beneficiaries.

The NPC Defendants' argument also ignores the clear language of *Sereboff* where the Supreme Court held that ERISA Health Plans like Plaintiffs are entitled to "follow [settlement funds] into the hands of [claimants or their agents]."  547 U.S. at 364.  This not only is the law, it makes complete sense.  Defendants correctly observe that the funds to which ERISA plans are

---

[8]     Defendants make the unfounded claim that "Plaintiffs must engage in a plan-by-plan analysis of the contractual language in effect at the time each plan beneficiary received compensation" for their Vioxx-related injuries.  NPC Opp. at 7.  This argument disregards the allegations of the Amended Complaint, which clarify that the Class is limited to those self-funded ERISA Health Plans whose terms, "at the time such benefits were paid or agreed to be paid," contained the type of language both the Supreme Court and the Fifth Circuit have held is sufficient to support an ERISA claim for equitable reimbursement.  Amended Complaint ¶ 18.

entitled "exist by agreement (*i.e.*, under the terms of the plans)." NPC Opp. at 21. Thus, the moment the Settlement Administrator allocates a portion of the Settlement Trust to an individual ERISA Beneficiary – even before such funds actually reach the Beneficiary's attorney – Plaintiffs' equitable liens attach automatically, by virtue of the terms of the ERISA plan documents, with no further action required.

Finally, the imminent allocation and distribution of the ERISA Beneficiaries' Settlement Funds itself plainly is sufficient to entitle Plaintiffs to relief: "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *American Civil Liberties Union Foundation of Louisiana v. Blanco*, 523 F. Supp. 2d 476, 485 (E.D. La. 2007) (quoting *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 581 (1985)).

Lacking any genuine grounds for challenging Plaintiffs' likelihood of success, the NPC Defendants argue in vain that Plaintiffs inappropriately are seeking to assert a lien against the entire "aggregate" Vioxx Settlement Fund. This argument is baseless. Both Plaintiffs' Amended Complaint and their Motion for Preliminary Injunction make clear that Plaintiffs seek to enforce *individual* liens against that portion of *each* ERISA Beneficiary's Settlement Fund that corresponds to the amount of Vioxx-related health benefits the Beneficiary received from a self-funded ERISA Health Plan. *See* Amended Complaint ¶¶ 72-75; Pl. Memo. at 3-6, 22-23; Proposed Order at ¶¶ 5, 8. The Supreme Court in *Sereboff* and the Fifth Circuit in *Bombardier* made clear that where an ERISA Health Plan's terms authorize recovery out of settlement proceeds – as do, by definition, the terms of each of the ERISA Health Plans comprising the Class – such recovery constitutes an "identifiable fund" subject to the plan's equitable lien rights. In Defendants' own words, "[e]ach such recovery is thus a separate fund." NPC Opp. at 6.

In short, Plaintiffs, and all self-funded ERISA Health Plans that comprise the Class, seek only to enforce their lien rights against specifically identifiable funds – *i.e.*, the portion of each

ERISA Beneficiary's individual Settlement Fund that corresponds to the amount of benefits Plaintiffs paid for that Beneficiary's Vioxx-related injuries.  Thus, Plaintiffs have demonstrated that they are likely to succeed at trial on the merits of their reimbursement claims against the ERISA Beneficiaries (and their counsel), who are, by definition, limited to those individuals who received Vioxx-related medical benefits from the plans that must be reimbursed, and who imminently will be receiving Vioxx Settlement Funds.  Accordingly, Plaintiffs have demonstrated they are likely to succeed in satisfying the three-part test for asserting a claim for reimbursement pursuant to ERISA § 502(a)(3).[9]

> **B.      Plaintiffs Will Be Irreparably Harmed Absent Injunctive Relief.**

Plaintiffs have demonstrated in their moving papers that they will be irreparably harmed absent the injunctive relief they now seek.  Pl. Memo. at 18-21.  Defendants' response is twofold: First, they argue that Plaintiffs will not suffer any "immediate" injury because enough funds will remain after the initial distribution to satisfy any equitable liens.  *See* NPC Opp. at 20 n.11.  Second, they argue that "it is likely that virtually all ERISA claims will be properly discharged" even without injunctive relief.  *See* NPC Opp. at 23.  Both of these arguments are without merit.

If, as Defendants now suggest, there will be sufficient undisbursed funds for all ERISA Beneficiaries in their individual Settlement Funds to satisfy any equitable lien the self-funded ERISA Health Plans may have, then the NPC Defendants should have no objection to the limited relief Plaintiffs seek.  That is because the relief Plaintiffs seek specifically contemplates the unfettered

---

[9]      The NPC Defendants rely on *Great-West-Life & Annuity, Inc. v. Knudson*, 534 U.S. 204 (2002) and *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439 (5th Cir. 2002), to support their argument that Plaintiffs are unlikely to succeed on the merits because the Settlement Funds are not in the ERISA Beneficiaries' "possession or control."  NPC Opp. at 13-15.  Because, absent injunctive relief, the Funds imminently will be in the hands of the ERISA Beneficiaries' counsel, these cases – involving a Special Needs Trust and a Court registry, entities the NPC Defendants concede are "totally independent" of the ERISA Beneficiaries – are inapposite here.  Rather, Plaintiffs' claims fit squarely within the Fifth Circuit's holding regarding the plan beneficiary's law firm in *Bombardier*.  *See* Pl. Memo. at 15-16.

initial distribution of each ERISA Beneficiary's Settlement Funds upon certification by the Beneficiaries' attorneys that "the Vioxx Settlement proceeds designated for [the Beneficiary] that shall remain with the Settlement Administrator following the initial distribution of Vioxx Settlement Funds is greater than the amount of any potential lien to which any self-funded ERISA plans may be entitled."  Proposed Order at ¶ 6.  Assuming the NPC Defendants can support their assertion that the "60% balance" of each ERISA Beneficiary's Settlement Fund will be "more than sufficient to address any potential claims asserted by Plaintiffs," NPC Opp. at 20 n.1, the order that Plaintiffs ask this Court to enter should satisfy all parties.  That Defendants so vigorously resist the requirement that such a certification precede the initial distribution of Settlement Funds suggests that the NPC Defendants do not believe their own argument.

The NPC Defendants' second argument – that the terms of the Settlement Agreement make it "likely" that "virtually" all ERISA claims will be satisfied – is hollow rhetoric.  The NPC Defendants refer to the provision in the Settlement Agreement that requires "*before any funds are disbursed*" that they and their clients certify that they have investigated the existence of any non-governmental liens on the Settlement Funds, "including the liens held by self-funded ERISA Health Plans, and that any such liens will be satisfied from the respective clients' Settlement Payments." NPC Opp. at 23 (emphasis in original).  Yet the NPC Defendants fail to make any showing that they have complied with this threshold investigation requirement of the Settlement Agreement.  Perhaps this should not be surprising, because if the NPC Defendants were to take the position that they have complied with their obligations under the Settlement Agreement and actually undertaken the investigation of third-party payor lien rights they have promised to perform, they could not make a straight-face argument that the limited informational relief Plaintiffs seek would impose any burden at all on them.  Be that as it may, the fact that the NPC Defendants fail to make any showing that they have complied with the investigation requirement of the Settlement Agreement wholly

discredits their unsupported assertion that their clients (or they themselves) will satisfy the liens of the Plaintiff Class members.

### C.     The "Balance of Harms" Overwhelmingly Supports the Issuance of the Requested Relief.

Absent injunctive relief, Plaintiffs are likely to suffer irreparable harm.  In contrast, the NPC Defendants have failed to demonstrate that they or their clients are likely to suffer any harm at all. Rather, the NPC Defendants simply repeat in their Opposition the same allegations of harm they have argued in response to the materially different request for relief sought by the *AvMed* plaintiffs, *i.e.*, (1) the alleged infringement of their clients' privacy rights, and (2) delayed access to Settlement Funds, especially for Vioxx Claimants suffering substantial financial hardship.  NPC Opp. at 21. Once again, Defendants ignore the substantial differences between the relief sought by the *AvMed* plaintiffs and Plaintiffs in this case.

First, the order that Plaintiffs ask this Court to enter *will not* infringe on any rights, privacy or otherwise, of Vioxx Claimants who did not receive health benefits from a self-funded ERISA Health Plan.  Under the order sought by Plaintiffs, upon certification from counsel that a Vioxx Claimant did not receive health benefits from such a plan, no disclosure of information concerning that Claimant would be required, and there would be no delay in the distribution of that Claimant's Settlement Funds.

As to the Vioxx Claimants whose counsel are unable to make this certification, the NPC Defendants' "privacy" argument is a red herring.  With respect to these Claimants – whose counsel believe may have received benefits from a self-funded ERISA Health Plan – the NPC Defendants argue that Plaintiffs improperly seek "sensitive, personal medical information that is subject to Constitutional protection," and that cannot be disclosed "without running afoul of federal privacy laws, or with the terms of the Settlement Agreement itself."  NPC Opp. at 16-17.  They also argue that the proposed injunction would have the effect of providing individual Class members

information regarding *all* Vioxx Claimants, including those that are not their beneficiaries.  NPC Opp. at 18-19.

The relief actually requested by Plaintiffs would have no such effect.  Specifically, the Proposed Order requires disclosure only of information regarding the ERISA Beneficiaries, and only very limited information that the ERISA Beneficiaries are obligated to disclose to their ERISA plans in the first place.  Proposed Order at ¶ 3 (requiring disclosure only of each ERISA Beneficiary's name, social security number, employer, and health benefit plan).[10]  Defendants also ignore that the Proposed Order is designed *specifically* to avoid disclosure to any ERISA Health Plan of information regarding Vioxx Claimants other than its own beneficiaries.  The Proposed Order would ensure this protection by limiting the disclosure of each ERISA Beneficiary's information to Class Counsel on an "attorneys' eyes only" basis so that the attorneys can limit its dissemination to the plans that actually paid that ERISA Beneficiary's health care costs.  *Id.* at ¶ 2.  In short, Plaintiffs carefully have tailored the Proposed Order to prevent *any* infringement of *any* privacy interests.  But if there were any genuine concerns that may still exist, the disclosure of the requested ERISA Beneficiary information adequately can be addressed by an appropriate protective order.  *See, e.g.,* Fed. R. Civ. P. 26(c); *Borninski v. Williamson*, No. 3:02-cv-1014, 2005 WL 1206872 (N.D. Tex. May 17, 2005) (protective order barred disclosure of plaintiff's personal information, such as social security number and medical and health history, to third parties).

The NPC Defendants also fail to explain *how* the limited disclosure Plaintiffs seek – only to each ERISA Beneficiary's respective plan and Class Counsel – of just enough information to identify the ERISA Beneficiaries who received benefits from their ERISA Health Plans, violates any "federal

---

[10]     Because Plaintiffs are *not* seeking the Vioxx Claimants' medical information and records, the cases cited by the NPC Defendants regarding privacy interests in medical records are irrelevant.  *See* NPC Opp. at 17.

privacy laws," much less the U.S. Constitution.[11]  Even if this information might, in other

circumstances, be subject to protection,[12] the ERISA Beneficiaries certainly have no reasonable

expectation of privacy in the limited identifying information they *voluntarily* turned over both to

Merck and to BrownGreer in order to participate in the Vioxx Settlement, and that they are *obligated*

to provide pursuant to the terms of their ERISA plans.

There also is no merit to the NPC Defendants' argument that the confidentiality provisions

of the Settlement Agreement themselves prevent this Court from requiring the disclosure of the

limited ERISA Beneficiary information sought by Plaintiffs.  This argument amounts to a claim that

the beneficiaries of an ERISA Health Plan can grant themselves a waiver of their notification

obligations by crafting a settlement agreement designed to keep this information away from their

ERISA plans.  The NPC Defendants offer no support for this illogical position.  Indeed, the Fifth

Circuit rejected an analogous argument in *Bombardier*, where the court held that a beneficiary could

---

[11]     The only "privacy law" the NPC Defendants mention – without any explanation – is the Health
Insurance Portability and Accountability Act (HIPAA).  *See* Opp. at 18.  However, the HIPAA Privacy Rule,
45 CFR Parts 160 and 164, regulates the use and disclosure only of protected health information by "covered
entities."  The NPC Defendants and other law firms representing the ERISA Beneficiaries are not "covered
entities" under HIPAA; thus, there is no HIPAA impediment to their disclosure of the limited identifying
information Plaintiffs seek.  Moreover, even if the HIPAA Privacy Rule somehow were applicable here,
Plaintiffs, who *are* "covered entities" under the Privacy Rule, are authorized to make use of protected health
information to pursue their ERISA-protected reimbursement rights.  *See* 45 CFR §§ 164.501, 164.506.

[12]     The NPC Defendants cite *Sherman v. United States Dept. Of Army*, 244 F.3d 357 (5th Cir. 2001), for the
uncontroversial proposition that individuals have a privacy interest in their social security numbers.  *See* NPC
Opp. at 17.  *Sherman*, however, was a Freedom of Information Act case, where a member of the public sought
U.S. Army records containing thousands of names and social security numbers.  The court's emphasis was
clearly on the dangers of "*public dissemination* of . . . SSNs," and the "heightened risk of identity fraud"
associated with it.  244 F.3d at 365 (emphasis added).  *Sherman* has no relevance to the instant case, where
there is no request for public dissemination of social security numbers and there is no risk of identity theft.
Indeed, outside of the identity theft concern, it is well established that "a SSN is not inherently sensitive or
intimate information . . . ." *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999).  Thus, courts explicitly have held
that that the disclosure of a social security number is *not* protected by a "constitutional right of privacy." *See*
*Cassano v. Carb*, 436 F.3d 74, 75 (2d Cir. 2006) (citing cases); *McElrath v. Califano*, 615 F.2d 434, 441 (7th Cir.
1980) ("contention that disclosure of one's social security account number violates the right to privacy has
been *consistently rejected* . . .") (emphasis added).

not "contract away" its pre-existing obligations to its ERISA plan.  354 F.3d at 357 (rejecting

argument that contractual contingent fee arrangement took precedence over ERISA plan's pre-

existing right to reimbursement).  Nor is it appropriate for the NPC Defendants to hide behind the

Settlement Agreement in order to shift the burden to Plaintiffs to "independently identify Vioxx

claimants that may be subject to ERISA claim[s]."  NPC Opp. at 19.  Defendants are well aware that

so long as they refuse to disclose this information, Plaintiffs will be unable to determine which of

their beneficiaries, in fact, are participating in the Vioxx Settlement.

Finally, there is likewise no merit to the NPC Defendants' argument that the Proposed

Order will "severely prejudice[ ]" the Vioxx Claimants by "delay[ing] their receipt of proceeds they

desperately require."  NPC Opp. at 24.  The Proposed Order expressly permits the immediate

distribution of Settlement Funds to Vioxx Claimants who are not ERISA Beneficiaries and further

allows the immediate distribution of Settlement Funds even to ERISA Beneficiaries where the

Beneficiary's attorney certifies that the Beneficiary will suffer a substantial hardship by a delay in the

initial distribution of settlement funds.  Proposed Order at ¶ 6.  All other ERISA Beneficiaries will

be protected by their attorneys' deposit of their undistributed Settlement Funds into an interest

bearing account for the short time (45 days maximum) allowed by the Proposed Order for the

assertion of lien claims by Class members.  Given that the NPC Defendants and the other law firms

representing the ERISA Beneficiaries already have obligated themselves to obtain the information

and provide the certifications Plaintiffs request *prior* to receiving *any* of the Settlement Funds, NPC

Opp. at 22-23, any significant "delay" in distribution would be attributable to the law firms' failure

to meet their pre-existing obligations.

In short, there is no basis for the contention that either the NPC Defendants or the Vioxx

Claimants they represent would suffer harm if this Court requires that they provide the same

certifications and disclosures they already are obligated to provide as a precondition to the

Claimants' receipt of Settlement Funds from the Vioxx Settlement Trust.  In contrast, should the NPC Defendants and the other law firms be allowed to proceed with the immediate and unrestricted distribution of Settlement Funds to ERISA Beneficiaries without affording Plaintiffs a reasonable opportunity to assert their ERISA-protected rights, Plaintiffs stand forever to lose any practical means of enforcing those rights.  Thus, the "balance of harms" in this case tips decisively in Plaintiffs' favor.

> **D.**     **The Public Interest Would Be Served by the Injunctive Relief Plaintiffs Seek.**

The NPC Defendants attempt to counter the manifest public interest in enabling ERISA Health Plans to enforce their equitable rights, and protecting their assets for the benefit of *all* plan beneficiaries, by suggesting that an "even stronger public interest" exists "in assuring that the approximately 50,000 Vioxx claimants receive prompt payment of their settlement proceeds."  NPC Opp. at 25.  It is sophistry to argue that the "public interest" is served by allowing the ERISA Beneficiaries to take advantage of the benefits provided by their ERISA Health Plans during their time of medical need only to ignore their express reimbursement obligations when they have received a settlement payment and released their claims against Merck for their medical costs.  Indeed, even as the NPC Defendants cast inappropriate aspersions on the ERISA plans and their counsel, NPC Opp. at 25, they nowhere dispute that the funds Plaintiffs seek, which are limited to the amounts of medical benefits paid to the ERISA Beneficiaries, *actually belong to Plaintiffs*.  Clearly, the public interest is best served by allowing those ERISA plans rightfully entitled to reimbursement of medical expenses paid on their beneficiaries' behalf to assert and enforce their ERISA-protected right to repayment from the Settlement Funds.

## II.     There is no Basis for the Imposition of a Bond in This Case.

The NPC Defendants' request for the imposition of a multi-billion dollar bond is a transparent tactic and nothing more.  They fail to articulate any rational basis for the requirement of any bond, much less a multi-billion dollar bond.  Accordingly, the court should reject their request.

As demonstrated above (and in Plaintiffs' opening brief), the limited relief Plaintiffs seek will cause no harm to the NPC Defendants or the Vioxx Claimants they represent.  Defendants do not even attempt to respond to, or distinguish, the case law in this Circuit that makes clear that a bond is unnecessary where any risk of harm is minimized by an injunction of "short duration" or the placement of disputed funds in an interest-bearing account.  *See* Pl. Memo. at 23-24.  Under the order proposed by Plaintiffs, it is likely that most Vioxx Claimants will receive their initial distribution of Vioxx settlement funds in its entirety.  The only portion that *may* be withheld is that portion of an ERISA Beneficiary's Settlement Fund that his/her own counsel believes may be subject to an ERISA Health Plan's lien rights.  Even that portion of an ERISA Beneficiary's Settlement Fund would be placed in an interest-bearing account for no more than 45 days, thus eliminating any possible "harm" justifying the imposition of a bond.  Accordingly, this is precisely the type of case where this Court should exercise its discretion to waive the requirement of a bond.

## III.    Plaintiffs' Class Allegations Are Well Pled.

Although the motions of the NPC Defendants (as well as BrownGreer) to strike the Class allegations in the initial complaint have been rendered moot by the Amended Complaint, Plaintiffs believe it may assist the Court, as it considers the request for class-wide preliminary injunctive relief, to see that the Class allegations now before it are well pled.[13]  For this reason, Plaintiffs briefly

---

[13]     While no motion to strike is now pending, it bears emphasis that motions to strike class allegations at the pleadings stage are appropriate only where a defendant can demonstrate from the face of a plaintiff's complaint that certification will be impossible regardless of the facts the plaintiff may be able to prove. See

(continued…)

address herein the various concerns raised by the Defendants with respect to the Class issues in this case.

###### A.    The Proposed Class is Ascertainable.

There is nothing obscure or subjective about the Class that Plaintiffs seek to represent.  The Class, as defined in the Amended Complaint, comprises self-funded ERISA health plans that have provided or agreed to provide Vioxx-related benefits to beneficiaries who have enrolled in the Vioxx Settlement, and whose applicable plan language at the time the benefits were provided entitles them to reimbursement from the Settlement Funds.  *See* Amended Complaint ¶ 18.  The universe of self-funded ERISA health plans is a matter of public record.  *See, e.g., Sunbeam-Oster Company, Inc. v. Whiteburst*, 102 F. 3d 1368, 1375 (5th Cir. 1996); 29 U.S.C. § 1021.  Once the NPC Defendants and the other law firms representing the ERISA Beneficiaries provide the information required by Plaintiffs' Proposed Order, it will be a relatively straightforward process to determine which ERISA Health Plans provided Vioxx-related benefits to ERISA Beneficiaries.  Likewise, ascertaining the pertinent ERISA plan language applicable to any beneficiary also is not difficult.  Each ERISA Health Plan, once it knows the identity of its beneficiaries who are Vioxx Claimants, easily will be able to identify and produce relevant plan documents.

Moreover, it is not necessary that every potential member of a class be so clearly identified that they can be ascertainable at the outset of an action.  *See Carpenter v. Davis,* 424 F. 2d 257, 260 (5th

---

(continued)

*e.g., Bryant v. Food Lion, Inc.,* 774 F. Supp. 1484, 1495 (D.S.C. 1991); *Romano v. Motorola, Inc.,* 2007 WL 4199781, *2-*3, slip op. (S.D. Fla. November 26, 2007) (defendants "have the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts plaintiffs may be able to prove").  In effect, a defendant's burden in this regard is the same as that familiarly encountered in Fed. R. Civ. P. 12(b)(6) motions, and well pled factual allegations must be taken as true and viewed in the light most favorable to the plaintiff.  *See, e.g., In re Katrina Canal Beaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007); *see also Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008).  Thus, Plaintiffs' Class allegations may not be stricken unless this Court determines, beyond doubt, that Plaintiffs cannot prove a plausible set of facts that would justify Class relief.

Cir. 1970), *Wagner v. Central Louisiana Elec. Co.,* 102 F.R.D. 196, 197 (E.D. La. 1984). Indeed, so long as there exist some objective criteria pursuant to which membership in the class can be determined at some point during the proceedings, the implied obligation of ascertainability is met. *See Dunnigan v. Metropolitan Life Ins. Co.,* 214 F.R.D. 125, 135 (S.D.N.Y. 2003). Nor is this a particularly stringent requirement, especially in the context of a Fed. R. Civ. P. 23(b)(2) class. *See Bynum v. District of Columbia*, 214 F.R.D. 27 (D.D.C. 2003).

In short, once the NPC Defendants provide the information Plaintiffs seek, the process of identifying the specific ERISA Health Plans that are members of the Class as defined in the Amended Complaint will be a straightforward, objective, and essentially ministerial exercise.

**B.      The Class Is Cohesive.**

Plaintiffs will seek certification under Fed. R. Civ. P. 23(b)(2), which governs prayers for injunctive and declaratory relief. Obviously, the prongs of Plaintiffs' preliminary injunction application which asked for notification and an opportunity to evaluate and pursue potential reimbursement claims are entirely cohesive, common to the entire Class, and injunctive in nature. Defendants do not argue otherwise.

At bottom, Defendants' attack on the Class defined in the *initial* Complaint for lack of cohesiveness or ascertainability rests entirely on their unsupported assertion that the plan language of each of the ERISA Health Plans comprising the Class are so divergent from one another that complex individualized evidence is required in order for the Court to render a declaratory ruling concerning the respective plans' entitlement to reimbursement. This contention is both legally and factually without merit, especially in the context of a Rule 23(b)(2) Class. *See e.g., Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1105 (5th Cir. 1993) ("the question of whether common issues 'predominate' over individual ones has no place in determining whether a class should be certified under 23(b)(2)"); *see also Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 414 (5th Cir. 1998).

As a factual matter, Plaintiffs have offered undisputed proof that the reimbursement language of most self-funded ERISA Health Plans is substantially identical. *See* Affidavit of Mark Johnson, attached as Exhibit 3 to Motion for Preliminary Injunction, at ¶¶ 9-13. This not only is plausible, but almost certain to be the case, since these provisions were all drafted by counsel looking at the same statute, interpreting the same case law, and motivated by a common desire to achieve the same goals, namely the preservation of plan assets for the benefit of all plan beneficiaries.

Moreover, Plaintiffs' Amended Complaint carefully defines the Class so as to eliminate any potential conflict among Class members or need for individual adjudication of plan reimbursement language. The proposed Class is defined to limit Class members to those self-insured ERISA health plans that, at the time benefits were paid or agreed to be paid, had plan documents containing "reimbursement provisions requiring beneficiaries to reimburse the plan, out of any recovery from any third party, for benefits relating" to injuries for which the plan has paid or agreed to pay benefits on the beneficiaries' behalf. Amended Complaint ¶ 18.

As pleaded, the entitlement of all Class members under ERISA and the governing case law will be essentially identical, since only self-insured ERISA health plans with such plan language are Class members. The Court need render only a single, group-wide decision concerning this entitlement to reimbursement, which will then be applicable to all members of the Class. As a practical matter, once the Court makes this judicial determination and announces a Class-wide remedy, Plaintiffs anticipate that any review of the individual wording or punctuation of a particular

ERISA plan document to determine if it qualifies for inclusion in the Class will be ministerial and easily accomplished.[14]

### C.   The Named Plaintiffs are Proper Class Representatives.

The proposed Class representatives are two ERISA Health Plans, acting through their trustees who expressly are authorized by statute to act on their behalf.  Defendants do not argue that there is anything about these ERISA plans or these trustees that distinguish them from other plans or other trustees within the defined Class.  The Amended Complaint makes it clear that the Named Plaintiffs, both of which are self-funded ERISA Health Plans with express reimbursement provisions in their plan documents, seek to represent a Class of other self-funded ERISA Health Plans with similar express reimbursement provisions in their plan documents.  There can be no question, therefore, that the Named Plaintiffs are appropriate representatives of the Class they seek to represent.[15]

---

[14]     It is well recognized that the mere fact that contractual language applicable to class members is not identical – or the need to conduct ministerial inquiries to determine individual members' qualification for class-wide relief – does not preclude class certification under Fed. R. Civ. P. 23(b)(2).  *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir. 1993) (Fed. R. Civ. P. 23(b)(2) certification proper in ERISA action even though the proposed class members were covered by four different pension plans with different plan language); *see also Groover v. Michelin North America, Inc.,* 187 F.R.D. 662, 666-68 (M.D. Ala. 1999) (commonality and predominance requirements for Fed. R. Civ. P. 23(b)(2) class are met in ERISA action for pension benefits alleging breach of multiple pension and insurance agreements with different, though substantively similar, language); *Bower v. Bunker Hill Co.,* 114 F.R.D. 587, 592-94 (E.D. Wash. 1986) (Fed. R. Civ. P. 23(b)(2) certification appropriate in ERISA class action for medical benefits despite the fact that class members' claims were based on different contracts and relief will vary among class members depending on their status.)

[15]     It is plainly appropriate that the Named Plaintiffs are acting through their trustees.  ERISA § 502(a)(3) expressly confers upon plan fiduciaries the authority to enforce plan rights, and the Supreme Court, the Fifth Circuit, and other courts  have recognized or taken for granted the ability of plan fiduciaries to act, or alternatively have permitted plans themselves to act as class representatives or litigants, notwithstanding the statutory language that requires plans to act through their fiduciaries.  Indeed, in *Bombardier* itself, the named plaintiff was the ERISA health benefit plan seeking reimbursement, from settlement proceeds, of medical benefits paid to a plan participant.  354 F.3d at 349; *see also Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co. Inc.,* 484 U.S. 539, 542 n.3 (1988) (noting that the named parties are plans rather than trustees, but nonetheless reaching the merits); *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport Inc.,* 472 U.S. 559 (1985) (allowing action brought by plans to compel audits of employer to proceed even though trustees were not named plaintiffs); *Louisiana Bricklayers and Trowel Trades Pension Fund and Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co.,*

(continued…)

**D.     Other Requirements of Fed. R. Civ. P. 23 Are Met.**

Defendants do not challenge numerosity, or the adequacy of proposed class counsel.[16]  Nor do they challenge seriously the light burden of commonality under Fed. R. Civ. P. 23(a)(2).  *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001); *see also Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999) (noting that the test for commonality is not "demanding").  It is clear that there exists in this case a common body of facts concerning the Vioxx Settlement, and a common body of federal law respecting the enforceability, under Section 502(a)(3) of ERISA, of the notification and reimbursement provisions contained in the Class members' plan documents.

The only argument otherwise advanced by Defendants respecting class certification is that the pendency of the *AvMed* litigation somehow is evidence that the ERISA Health Plans comprising the Class can or should proceed individually.  *See* NPC Defendants' Motion to Dismiss and Strike Class Allegations in the Complaint at 21-23.  In effect, this is a challenge to the superiority of class action treatment as a basis for litigating this case.  *See* Fed. R. Civ. P. 23(b)(3).  The superiority requirement of Rule 23(b)(3), however, does not apply to a Fed. R. Civ. P. 23(b)(2) class, such as the proposed Class here.  *See McManus v. Fleetwood Enters.*, 320 F.3d 545, 553 (5th Cir. 2003).

Simple arithmetic reveals the weakness of Defendants' position.  There are roughly 100,000 self-funded ERISA Health Plans.  *See* Johnson Affidavit, at ¶ 8.  Reports to the Court appear to indicate that there are approximately 50,000 Claimants, many of whom received their medical

---

(continued)

157 F.3d 404 (5th Cir. 1998) (allowing plans in their own name to maintain suit against employer for delinquent contributions).

[16]     While Plaintiffs do not believe that the formal appointment at this time of interim class counsel pursuant to Fed. R. Civ. P. 23(g)(3) is "necessary to protect the interests of class members," *see White v. TransUnion, LLC,* 239 F.R.D. 681 (C.D. Cal. 2006) (citing 2003 Advisory Committee Notes and Manual for Complex Litigation (Fourth) § 21.11), Plaintiffs' counsel are well qualified to serve in that role and are prepared to accept such an appointment if the Court believes such an approach is warranted.

benefits from public sources, from private insurance, or from health plans other than self-funded ERISA plans. While the self-funded ERISA plans that comprise the proposed Class themselves may be of varying size, given the overall number of Vioxx Claimants and the overall number of self-funded ERISA plans, it is a virtual certainty that there will be hundreds, and likely thousands, of ERISA Health Plans that provided Vioxx-related health benefits to only a single beneficiary or perhaps two. It is equally probable that few, if any, self-funded ERISA plans provided Vioxx-related health benefits to more than a handful of Claimants.

Although the actual amounts paid per heart attack or stroke to plan beneficiaries who are Vioxx Claimants cannot be determined until the ERISA Beneficiaries are identified, anecdotal data from a sample of 21 heart attack victims from one Class representative suggests an average payout in the range of $20,000. *See* Affidavit of Robert Adelman, attached as Exhibit 5 to Plaintiffs' Motion for Preliminary Injunction, at ¶ 6.

Thus, while a large private insurer, issuing millions of policies covering millions of lives may in the aggregate have a large potential reimbursement claim, this would not be true of the vast majority of self-funded ERISA Health Plans. Moreover, it also should be recalled here that these plans are not profit making entrepreneurial institutions, but rather exist solely for the purpose of providing health benefits for their beneficiaries. In this context, to argue that all of these ERISA entities should be required to mount expensive individualized federal litigation to enforce their express ERISA rights on an individual basis where the amount at issue may be less than $20,000, is unpersuasive. In fact, the reimbursement claims asserted in this case on behalf of the proposed Class present a classic "negative value" litigation that makes class treatment demonstrably appropriate.

**Conclusion**

For the foregoing reasons, as well as those set forth in Plaintiffs' Motion for Preliminary Injunction, Plaintiffs respectfully request that their Motion for Preliminary Injunction be granted.

New Orleans, Louisiana, this 18th day of July 2008.

Respectfully submitted,

s/ Rebecca H. Dietz
KING, KREBS & JURGENS, P.L.L.C
HENRY KING (#7393)
ERIC E. JARRELL (#16982) (T.A.)
REBECCA H. DIETZ (#28842)
201 St. Charles Ave., 45th Floor
New Orleans, LA  70170
Telephone:  504-582-3800
Facsimile:  504-582-1233

-and-

LEVY PHILLIPS & KONIGSBERG, LLP
Steven J. Phillips
Diane Paolicelli
800 Third Avenue
13th Floor
New York, NY 10022
Telephone:  212-605-6200
Facsimile:  212-605-6290

- and -

CROWELL & MORING, LLP
Andrew H. Marks
Robert T. Rhoad
Aryeh S. Portnoy
Todd J. Cochran
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that the above and foregoing Plaintiffs' Reply in Support of Motion for a Preliminary Injunction and Proposed Order has been served on Liaison Counsel, Russ Herman and Phillip Wittman, either by U.S. Mail and e-mail, or hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8 (B), and that the foregoing was electronically filed with the Clerk of Court of the United State District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a Notice of Electronic Filing.

      This 18th day of July, 2008,

                         /s/ Rebecca H. Dietz