UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | : : : |
| | : MDL 1657 |
| This document relates to: | : SECTION L |
| | : HONORABLE ELDON FALLON |
| | : MAGISTRATE KNOWLES |
| 1199SEIU GREATER NEW YORK BENEFIT FUND, et al. v. BROWNGREER, PLC, et al., Case No. 08-3627 | : : : : |

**THE NPC DEFENDANTS' SURREPLY IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**I.     INTRODUCTION**

The Negotiating Plaintiffs' Counsel ("NPC" or the "NPC Defendants") are compelled to submit this Surreply in opposition to the 1199SEIU Greater New York Benefit Fund's ("Greater New York" or the "Plaintiffs") Motion for Preliminary Injunction. In response to motions filed by both the NPC and the BrownGreer Defendants, Greater New York conceded that its initial complaint was deficient by filing an amended complaint (the "Amended Complaint") on July 9, 2008. Although briefing had already been undertaken by the NPC and BrownGreer Defendants on Greater New York's Motion for a Preliminary Injunction (which was not modified despite the Amended Complaint), the Plaintiffs now assert that the NPC Defendant's opposition to Plaintiff's motion "inexplicably assails different relief than that sought in the initial complaint." Greater New York's efforts attempts at misdirection are disingenuous and unavailing. Despite the amendments to its complaint, and their purported effects on the motion for preliminary injunction, the plaintiffs are still

1

unable to meet their burden under Fed.R.Civ.P. 65.

Greater New York's Motion for a Preliminary Injunction still fails for the reasons set forth in the NPC Defendant's Response in opposition to Plaintiffs' Motion for Preliminary Injunction. Greater New York's word-smithing efforts in the Amended Complaint are still insufficient. Plaintiffs are simply unable to assert a plausible class claim that falls within this Court's subject matter jurisdiction or presents an ascertainable class. Whereas plaintiffs' initial complaint sought to assert ERISA-plan inspired equitable reimbursement claims against the aggregate Vioxx Settlement Fund established by Merck & Co., Inc., the amended complaint attempts to identify a particularized fund in a plan beneficiary's possession to meet the requirements for subject matter jurisdiction imposed by *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006). Unfortunately for the plaintiffs, the alleged individual funds described in the Amended Complaint do not exist. They are inchoate, *in futuro* allocations not yet determined by the Claim's Administrator, BrownGreer. Thus, still unable to identify individual settlement amounts particularized for each plan, Greater New York's arguments remain unfounded.

Further compounding the deficiencies in Greater New York's motion is the Plaintiffs' inability to establish that the purported class shares any cohesive claim. While Greater New York alleges in its Amended Complaint that its plans were at all relevant times sufficient to meet the specificity requirements of *Sereboff* and *Bombardier Aerospace Employee Welfare Benefit Plan*, 354 F.3d 348 (5th Cir. 2003), the allegations of the Amended Complaint fail to support that assertion for all class members. Particularly, in ¶ 44 of the Amended Complaint, the plaintiffs failed to aver that class members' plans contained appropriate reimbursement and notification provisions at all relevant times. *Compare* Amended Complaint ¶¶ 42 and 43 *with* ¶44.

These deficiencies may not be overlooked on a Motion for Preliminary Injunction. Although Greater New York asserts that this Court should proceed with the Preliminary Injunction Motion, without subject matter jurisdiction over an ascertainable class, the matter should not go forward. Indeed, as described below, the plaintiffs cannot satisfy their burden of proving a likelihood of success on the merits, let alone any of the other factors that apply to their request for injunctive relief.[1]

## II.   ARGUMENT

### A.   Plaintiffs are Unlikely to Succeed on the Merits

Plaintiffs amended their complaint in an attempt to establish that the Court has federal subject matter jurisdiction. These efforts fail since the Plaintiffs cannot establish the existence of an "identifiable fund" in the "possession or control" of any plan beneficiary. *See Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006); *Great-West-Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002); *Bombardier Aerospace Employee Welfare Benefit Plan*, 354 F.3d 348 (5th Cir. 2003). Plaintiffs are also unlikely to succeed on the merits since nothing in ERISA entitles them to invade the privacy interests of Vioxx claimants as is requested in their Amended Complaint and/or Motion for Preliminary Injunction.

As noted above, in order to establish federal subject matter jurisdiction over their ERISA

---

[1] Perhaps realizing it is unable to carry its burden of proof, Greater New York repeatedly attempts to shift the burden to the NPC Defendants. *See* Preliminary Injunction Reply Brief at 11 ("Nor is it appropriate for the NPC Defendants to hide behind the Settlement Agreement in order to shift the burden to Plaintiffs to independently identify Vioxx claimants that may be subject to ERISA claim[s].") (citations and internal quotations omitted). Not only does this excerpt highlight Plaintiffs' efforts to shift the burden of proof, but it also highlights the flaw in Plaintiffs' entire action. Plaintiffs, not the NPC Defendants and/or BrownGreer, are responsible for identifying plan beneficiaries that may or may not be subject to ERISA actions.

claims, Plaintiffs must establish the existence of an identifiable fund in the possession or control of a plan beneficiary. Plaintiffs cannot make this showing.

Plaintiffs have failed to establish the existence of an "identifiable fund." Notwithstanding the repeated criticisms by BrownGreer and the NPC Defendants, Plaintiffs have failed to identify so much as one claimant that may be subject to an ERISA claim. Plaintiffs instead rest upon their bald assertions in their Amended Complaint that such claimants exist. Plaintiffs build upon this assumed fact by relying upon the further assertion in their Amended Complaint that each member of the class had in effect plan language that created a right to equitable restitution under *Sereboff* at the time such class members compensated plan beneficiaries for Vioxx induced injuries.[2] Even assuming both of these facts to be true, the settlement funds remain <u>unallocated</u> and <u>undistributed</u>. Therefore, Greater New York has, at most, succeeded in establishing that the class has a hypothetical future interest in the future recoveries of hypothetical plan beneficiaries. There can be no "identifiable fund" where the plan beneficiaries themselves do not have a vested interest in any share of the unallocated and undistributed aggregate settlement fund.

Additionally, since the aggregate settlement fund is presently in the possession of a claims administrator, BrownGreer, Plaintiffs have also failed to establish that there is an identifiable fund in the "possession or control" of a plan beneficiary. As noted in the NPC Defendants' opening brief, the Fifth Circuit analyzed the "possession or control" aspect of an equitable restitution claim in *Bombardier*. In doing so, the Fifth Circuit looked to the Supreme Court's opinion in *Knudson* as

---

[2] Indeed, as was pointed out by BrownGreer in its opposition to the Plaintiffs' Motion for Preliminary Injunction, the language in the plan for class representative Teamsters Fund does not even satisfy the requirements of *Sereboff* for purposes of asserting an equitable restitution claim under ERISA. *See* BrownGreer's Opp to Plaintiffs' Motion for Preliminary Injunction at 16.

well as its own opinion in *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439 (5th Cir. 2002). Pursuant to these cases, the Fifth Circuit observed that funds in a trust account and funds in a court registry are properly deemed to be outside the possession or control of a plan beneficiary for purposes of an equitable restitution claim. In contrast, the Fifth Circuit held that funds that are constructively in the "possession or control" of a plan beneficiary, *i.e.*, funds in the hands of a party's agent/attorney for distribution to the plan beneficiary, may be subject to an equitable restitution claim under ERISA. *See Bombardier*, 354 F.3d at 356. Based on this authority, the aggregate settlement fund is not in the "possession or control" of any plan beneficiary since it is in the possession of a third-party trusty. Accordingly, the Court lacks federal subject matter jurisdiction.

The Plaintiffs attempt to label the NPC Defendants' subject matter jurisdiction argument as a "Gotcha" argument where they are presently "too early" and will be "too late" as soon at the Settlement Funds are distributed to claimants. *See* Preliminary Injunction Reply Brief at 8. If a trap for the unweary, the holding in *Sereboff* controls. It is the law of the land and the Plaintiffs must conduct their business accordingly. Their failure to make any effort to identify their beneficiaries during the pendency of this widely publicized litigation was their choice. Simply because the NPC Defendants have negotiated a settlement fund does not alter the Plaintiffs' legal obligations. It is Plaintiffs' efforts to pursue their supposed equitable restitution claims too early and against the wrong defendants that is the true impediment to the relief they are requesting.

Finally, as observed in Plaintiffs' opening brief, ERISA does not afford Plaintiffs the type of relief they are requesting. Plaintiffs are unable to cite to any authority where a court has determined that ERISA justifies an order compelling the disclosure of highly confidential personal information without some minimal showing that the disclosure is justified. Rather than coming

5

forward with a list of claimants that may be subject to ERISA claims and requesting further information in those limited instances, Plaintiffs seek to shift the responsibility entirely onto the NPC Defendants by requesting that the Court delay any distributions until there are affirmative representations concerning the absence of viable ERISA claims.  *See* Preliminary Injunction Reply Brief at 12.  It is Plaintiffs obligation to make a showing that they are entitled to the information they are requesting on a case-by-case, policy-by-policy basis.  It is not defendants' obligation to disprove such an entitlement.  There is simply no authority supporting Plaintiffs' request that defendants must undertake an investigation on behalf of Plaintiffs or that defendants must make a wholesale disclosure of Constitutionally protected information.

### B. Plaintiffs Cannot Establish that they will Suffer Irreparable Injury

The essence of Plaintiffs' irreparable injury argument is that they will lose their ability to assert ERISA claims against Vioxx personal injury claimants once settlement funds are distributed to those claimants and commingled with other assets.  This argument is questionable.  Nor have Plaintiffs come forward with any concrete evidence establishing that their supposed equitable reimbursement rights will be disregarded in the absence of a preliminary injunction.

First, although Plaintiffs contend they will be unable to enforce their ERISA rights once settlement funds have been distributed to claimants and commingled with other assets, as noted in the NPC Defendants' opposition to the motion for preliminary injunction, *Sereboff* calls this entire assertion into question.  *See* NPC Defendants' Opposition at 20-22 (quoting portions of *Sereboff* that have been interpreted as eliminating a strict tracing requirement for purposes of equitable restitution claims under ERISA); *see also Schultz v. Progressive Health, Life, & Benefits Plan*, 481 F. Supp. 2d 594, 595-96 (S.D. Miss. 2007) (interpreting *Sereboff* as eliminating a strict tracing requirement

and determining that Progressive could pursue an equitable restitution claim against a plan beneficiary even after the funds at issue had been co-mingled with other assets and dissipated).

Plaintiffs avoid any discussion of whether *Sereboff* has eliminated a strict tracing requirement for purposes of an equitable restitution claim. Such avoidance does not inure to Greater New York's benefit. Since Plaintiffs carry the burden of proof, their failure to even address that they may be able to still recover even after BrownGreer makes its initial distribution demonstrates they cannot meet their burden of showing they will suffer irreparable injury.

Second, as was noted in the NPC Defendants' opening brief, *see* NPC's Opposition at 22-24, there are various provisions in the Settlement Agreement and elsewhere that remind claimants and their attorneys of their obligations to satisfy liens against their recoveries.[3] While Plaintiffs speculate that these provisions are likely to be disregarded, they have failed to come forward with any concrete evidence supporting these claims. In responding to the NPC Defendants' arguments regarding these same provisions in the Settlement Agreement, the Plaintiffs insist that, "the NPC Defendants fail to make any showing that they have complied with this threshold investigation

---

[3] It is noteworthy that Plaintiffs again seek to side-step their burden of proof on the issue of irreparable injury. In making its argument that it will suffer irreparable injury in the absence of a preliminary injunction, Greater New York questions whether, "NPC Defendants can support their assertion that the 60% balance of each ERISA Beneficiary's Settlement Fund will be more than sufficient to address any potential claims asserted by Plaintiffs . . .". *See* Preliminary Injunction Reply Brief at 11 (citations and internal quotations omitted). This bald attempt at burden shifting traces back to the fundamental flaws with Plaintiffs' action. Any difficulty the NPC Defendants will have in supporting their assertions regarding the sufficiency of the 60% balance being held in reserve is directly attributable to Greater New York's failure to identify so much as one claimant that may be subject to an ERISA claim. Had Greater New York or any members of the purported class undertaken their obligation to identify claimants that may be subject to ERISA claims, the NPC Defendants might have had an opportunity to establish whether the 60% balance is sufficient to satisfy any liens being asserted. Since Greater New York was never diligent in this regard, the fault falls upon its shoulders.

requirement in the Settlement Agreement." *See* Preliminary Injunction Reply Brief at 11. This response by Plaintiffs demonstrates the impropriety of their position. The NPC Defendants have no obligation to investigate each and every claimants' personal circumstances to determine whether or not their recoveries are subject to equitable restitution claims. The Settlement Agreement properly delegates such investigative responsibilities to the attorney representing his or her client. Plaintiffs' efforts to place the NPC in the position with regard to each and every claimant are clearly improper.

### C.     The Balance of Harms Weighs Against the Issuance of an Injunction

As noted above, Plaintiffs are unable to demonstrate that they will suffer irreparable harm in the absence of a preliminary injunction. In contrast, claimants will suffer harm should the Court delay the distribution of settlement proceeds while Plaintiffs attempt to catch-up for the many years they were inactive in this litigation. Additionally, the injunctive relief being requested by Plaintiffs will also result in the invasions of privacy interests.

While Plaintiffs dispute the existence of any privacy interests that will be invaded by the disclosures of confidential information they seek, they ignore that they are refusing to make any sort of individualized justification for the disclosures. Plaintiffs also ignore that the relief they are requesting is overbroad. That is, since Plaintiffs have refused to identify which entities are class members and the periods of time they maintained proper policies, an order compelling the production of confidential information will undoubtedly cause the disclosure of such information of non-class members. While a particular plan may currently implement plan language that satisfies *Sereboff*, the true inquiry looks to whether a particular plan used language that satisfied *Sereboff* <u>at the time</u> it compensated a specific beneficiary for his or her injuries attributable to Vioxx. Since Plaintiffs refuse to undertake any analysis of which entities qualify for the class and/or the time

8

periods they qualify, there is no assurance that there will be no improper sharing of confidential information with entities that do not fall within the class definition, *i.e.*, plans that used plan language that was insufficient under *Sereboff*. Under these circumstances, the potential harm against Vioxx claimants far exceeds Plaintiffs need for an injunction.

### D. The Issuance of an Injunction Will Disserve the Public Interest

Plaintiffs entire action represents an instance where they wish to do nothing and get paid for it. Instead of reviewing their own records to identify claimants that may be subject to ERISA equitable restitution actions, Plaintiffs appear at the eleventh hour and ask the Court to order that defendants do this work for them. In the process they propose halting one of the largest personal injury settlements in history and ask the Court to order the disclosure of Constitutionally protected information. After making these bold requests at the last possible moment, Plaintiffs insist that their equitable restitution rights outweigh the interests of claimants that suffered debilitating personal injuries or the loss of a loved one. Nothing could be further from the truth. The NPC Defendants have presented evidence that many claimants will suffer while their recoveries are further delayed. Plaintiffs, on the other hand, are unable to establish the existence of so much as one claimant against whom they may assert an equitable restitution claim. Under these circumstances, the public interest is clearly disserved by the issuance of a preliminary injunction.

### E. The NPC Defendants' Motion to Dismiss and To Strike Remains Pending Before the Court

Remarkably, Plaintiffs take the position that the NPC Defendants' motion to dismiss has been rendered moot by the filing of their Amended Complaint. This assertion is false. Although the NPC Defendants are unaware of any Fifth Circuit authority directly dealing with this issue, the preeminent authority on federal practice and procedure takes the position that the filing of an

amended pleadings does not moot a pre-existing pleading. As Wright, Miller, and Kane have noted:

> Defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. This effect of an amended pleading under Rule 15(a) becomes particularly important when the amendment purports to cure a defective earlier pleading. For example, plaintiff may file a new complaint that does not refer to or adopt any of the deficient allegations in the original pleading; if the first complaint is considered superseded by the amendment, the court is not required to dismiss the suit when a motion points up the weaknesses of the earlier pleading. On the other hand, defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (2d.ed. 2008).

Several federal courts in this Circuit have determined that the filing of an amended complaint does not moot a pre-existing motion to dismiss. *See Davis v. Kroger Co.*, 2008 WL 904722, *3 (N.D.Tex. 2008) (citing Wright & Miller and considering motion to dismiss in light of facts as alleged in an amended complaint that was filed while the motion to dismiss was pending); *People's Choice Home Loan, Inc. v. Mora*, 2007 WL 120006, *2 (N.D.Tex. 2007) ("a motion to dismiss, which attacks the original complaint for deficiencies that persist in the amended complaint, should not be denied as moot . . . [r]ather, the court should apply the motion to dismiss to the amended complaint.") (citations omitted); *see also Brown Shoe Co., Inc. v. Commercial Credit Counseling Services, Inc.*, 2008 WL 2148749, * 2 (S.D.Tex. 2008) (indicating that the Court had instructed the parties that a pending motion to dismiss would not be rendered moot upon the anticipated filing of

an amended complaint). In the analogous case of *Mora*, *supra*, the Court determined that pending motions to dismiss and to strike were not mooted by the filing of an amended complaint. Based on this authority, the NPC Defendants' Motion to Dismiss remains pending before the Court.

The cases cited by Plaintiffs in opposition to the NPC Defendants' Motion to Dismiss are distinguishable. For instance in *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299 (6th Cir. 2000), the Sixth Circuit observed that the filing of an amended complaint superceded the initial complaint for purposes of the plaintiff's attempt to revive an argument raised in his initial complaint. *Id.* at 306-07. This case does not address whether the filing of an amended complaint would moot a pending motion to dismiss. *See also Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (filing of amended complaint supercedes initial complaint for purposes of allowing a defendant to raise new and previously unmentioned affirmative defenses). Additionally, even in those cases cited by Plaintiffs where a court has held that a motion to dismiss is mooted by the filing of an amended complaint, in each case the defendant had filed a second motion to dismiss after the filing of the amended pleading. *See Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F.Supp.2d 853, 857 (E.D.Ky. 2005) (determining motion to dismiss initial complaint was moot where the defendant had separately moved to dismiss the amended complaint); *Pippett v. Waterford Dev., LLC*, 166 F.Supp.2d 233, 236 (E.D.Pa. 2001) (same); *Standard Cholorine of Delaware, Inc. v. Sinibaldi*, 821 F.Supp. 232, 239-40 (D.Del. 1992) (same). Thus, none of these cases support a *per se* rule that would require a defendant to file a supplemental motion to dismiss and/or a separate motion to dismiss where an amended complaint does nothing to alter the inquiry with regard to the motion to dismiss.[4]

---

[4] In *Pippett*, *supra*, and *Sinibaldi*, *supra*, the defendants merely filed supplemental pleadings expressly incorporating the earlier arguments from the motion to dismiss the initial complaints. *See Sinibaldi*, 821 F.Supp. at 240 ("Defendants then filed a motion to dismiss . . .

Plaintiffs' attack on the continuing validity of the NPC Defendants' Motion to Dismiss is intended to distract the Court from striking the class allegations. As was noted in the NPC Defendants' Motion to Dismiss, the variability in plan language amongst the class members disproves any possibility of cohesiveness. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, (5th Cir. 1998) (Rule 23 (b)(2) class lacks cohesiveness when individual fact issues predominate). Plaintiffs insist that they have eliminated this problem by refining the class definition to include only those plans with language that satisfied *Sereboff* at the time they compensated plan beneficiaries. As was noted above, however, the plan language used by class representative Teamsters Fund does not satisfy *Sereboff*.[5] Given the variance in plan language, commonality and typicality cannot be established. Under these circumstances, it is indisputable that class certification would be improper.

### III.   CONCLUSION

For the reasons set forth above, the NPC Defendants respectfully request that the Court deny

---

Standard's Amended Complaint. Although it appears from the record that Defendants did not submit any briefs in support of their motion to dismiss the Amended Complaint, Defendants have incorporated by reference their various briefs filed in connection with their initial motion to dismiss into their motion to dismiss Standard's amended pleading."). *See also Pippett*, 166 F.Supp.2d at 236 ("The supplemental motion states "[a]ll of Defendant Waterford's prior motions and arguments directed at Plaintiff's Complaint are hereby incorporated by reference and redirected at Plaintiffs' Amended Complaint."'). Although these protective measures were apparently undertaken in *Pippett* and *Sinibaldi*, requiring such a formalistic motion in this case would only accomplish a delay of the NPC Defendants' Motion to Dismiss until after the Motion for Preliminary Injunction has been decided, a decided irony given the fact that Plaintiffs themselves never filed an amended motion for preliminary injunction after they filed their Amended Complaint.

[5] The plan language used by many of the proposed class members will undoubtedly be outside of *Sereboff* since that case was decided <u>after</u> Vioxx was removed from the market. The proposed class clearly lacks cohesiveness since an ultimate resolution of Plaintiffs' action would entail an individualized examination of the plan language used by each and every class member. This becomes an impossible task when one considers that Plaintiffs themselves estimate that the proposed class exceeds 100,000 members. *See* Preliminary Injunction Reply Brief at 22.

Plaintiffs' Motion for Preliminary Injunction.

                                              Respectfully submitted,

                                              **PLAINTIFFS' STEERING COMMITTEE**

Date: July 23, 2008                        By:  /s/ Leonard A. Davis
                                                **Russ M. Herman (Bar No. 6819)**
                                                Leonard A. Davis (Bar No. 14190)
                                                Stephen J. Herman (Bar No. 23129)
                                                ***Herman, Herman, Katz & Cotlar, L.L.P.***
                                                820 O'Keefe Avenue
                                                New Orleans, Louisiana 70113
                                                Telephone: (504) 581-4892
                                                Facsimile: (504) 561-6024

                                              **ATTORNEYS FOR THE NPC DEFENDANTS**

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 23rd day of July, 2008.

                                              /s/ Leonard A. Davis
                                              Leonard A. Davis (Bar No. 14190)
                                              ***Herman, Herman, Katz & Cotlar, LLP***
                                              820 O'Keefe Avenue
                                              New Orleans, LA 70113
                                              PH:   (504) 581-4892
                                                FAX:  (504) 561-6024
                                                ldavis@hhkc.com