1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  VIOXX PRODUCTS        *    Docket MDL 1657-L
        LIABILITY LITIGATION       *
6                                  *    June 24, 2008
                                   *
7    * * * * * * * * * * * * * * * *    1:00 p.m.

8

9

10             TELEPHONIC STATUS CONFERENCE BEFORE
              THE HONORABLE ELDON E. FALLON
11             UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13

14   For the Plaintiffs:          Herman Herman Katz & Cotlar
                                   BY:  LEONARD DAVIS, ESQ.
                                   820 O'Keefe Avenue
15                                 New Orleans, Louisiana 70113

16

                                   Levin, Fishbein, Sedrad & Berman
17                                 BY:  ARNOLD LEVIN, ESQ.
                                   BY:  MICHAEL WEINKOWITZ, ESQ.
18                                 510 Walnut Street
                                   Suite 500
19                                 Philadelphia, Pennsylvania  19106

20

21   For the Defendant:           Williams & Connolly, LLP
                                   BY:  DOUGLAS R. MARVIN, ESQ.
22                                 725 Twelfth Street, NW
                                   Washington, DC 20005

23

24   Claims Administrator:        BrownGreen, PLC
                                   BY:  LYNN GREER, ESQ.
25                                 115 South 15th Street
                                   Suite 400
                                   Richmond, Virginia  23285

1    <u>APPEARANCES</u>:

2    For Express Scripts:          Husch Blackwell Sanders LLP
                                   BY: JEANINE BERMEL, ESQ.
3                                  190 Carondelet Plaza
                                   Suite 600
4                                  St. Louis, MO  63105

5
     Official Court Reporter:      Jodi Simcox, RMR, FCRR
6                                  500 Poydras Street
                                   Room B-406
7                                  New Orleans, Louisiana 70130
                                   (504) 589-7780
8

9

10   Proceedings recorded by mechanical stenography, transcript

11   produced by computer.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**TELEPHONIC STATUS CONFERENCE**</u>

**(June 24, 2008)**

**(WHEREUPON, the following proceedings were held in chambers.)**

   **THE COURT:**  Hello, good afternoon.  This is Judge Fallon.  Who do I have on the line?

   **MR. LEVIN:**  Arnold Levin, sir, and Mike Weinkowitz.

   **MR. DAVIS:**  Your Honor, this is Lenny Davis.

   **MS. BERNEL:**  Good afternoon, Your Honor.  This is Jeanine Bermel from Express Scripts.

   **THE COURT:**  Okay.

   **MR. MARVIN:**  Judge, this is Doug Marvin.

   **MS. GREER:**  Lynn Greer.

   **THE COURT:**  Anyone else?  Okay.  Folks, I have a court reporter so that we can at least express ourselves properly and know what we've said.  Let me hear from the parties.  What seems to be the problem?

   **MR. DAVIS:**  Your Honor, this is Leonard Davis for the plaintiffs steering committee.  On June the 5th, we wrote a letter to the Court, which I believe the Court has, regarding discussions that we had had with counsel for ESI, the prior date which was on June the 4th concerning the production of the ESI medical pharmacy records that Your Honor is completely familiar with, and I know everybody on this call is familiar with.

   The issue that is before the Court right now is

1   ESI takes the position that additional records do not need to
2   be produced over and above what was produced in the first wave.
3   The plaintiff's steering committee believes that it was always
4   contemplated, and as evidenced by the e-mails that are attached
5   to my letter, that there would be two waves of production, that
6   being two sets of production by ESI of these records.  The
7   first wave being from those in which we received responses from
8   various plaintiffs throughout the country.

9              And as a result of the delay, which Your Honor
10  is aware of as a result of the last conference, we didn't get
11  the second wave in until after the first issues were resolved.
12  When we sent the second wave in, ESI has said, "No, you don't
13  have a right to do that.  It was never contemplated."

14             We just don't think that that's ever what was
15  intended, Your Honor.  We believe that these claimants need to
16  get their records in order to get them into the settlement
17  program.

18             THE COURT:  All right.  Let me hear from ESI.

19             MS. BERMEL:  Your Honor, I didn't respond to
20  Mr. Davis' letter because I think the e-mails that he attached
21  as exhibits speak for themselves and clearly show that the
22  parties never contemplated that the plaintiffs steering
23  committee would be providing to us yet additional names over
24  and above the first 598 submitted as late as June 3rd.

25             The Court will note that there's one e-mail in

1    particular in March where I wrote to Mr. Davis and I said, "You

2    originally contemplated, what, 200, I think, claimants.  You're

3    now up to 598.  I assume there are no further names

4    forthcoming," and there was not a response.  Never a response

5    to that.

6                    And the Court will recall in our last status

7    conference on May 14th, I specifically said, "There needs to be

8    some type of closure to this.  We cannot continue with this on

9    an ongoing basis."  And I asked the Court to provide some

10   relief so that there was some end in sight, and the Court

11   provided a ten-day deadline to submit additional information.

12                   Now, if at that point the plaintiffs steering

13   committee contemplated having yet further names, and apparently

14   they did, they should have spoken up and we could have reached

15   perhaps some agreement at that point.

16                   But I think that the PSC acknowledges that they

17   never intended, and the parties never contemplated that they

18   would be providing additional names at this time.  Because if

19   they had, first of all, why wasn't this raised earlier?  And

20   second of all, why didn't they tender the fee that they agreed

21   to pay when they provided these additional names?

22                   Now, Your Honor, when Mr. Davis provided these

23   additional names, once again, he said, "Please, turn this

24   around in six weeks."  It's not possible at this point to

25   provide this information, to respond within the six weeks.  We

1   had always contemplated in our discussions that we would be
2   done and through at this point.
3                    The only reason why we're not finished with the
4   claimants at this time is because we still have authorization
5   issues.  We are still working with some of the attorneys who
6   are providing additional information about claimants previously
7   submitted to see if we can't find the claims for those
8   particular people given additional information.
9                    And because we have a new twist and turn, and
10  that is, although I originally told Mr. Davis this expressly on
11  a telephone call, that we have -- we have claims information
12  for people who received prescription drugs claims benefits
13  through the Department of Defense that is not within ESI's
14  centralized database.  That's a separate database that has much
15  security around it for obvious reasons.
16                   We did not intended to search that database.
17  But as long as we have sufficient information, it's our
18  understanding that the DOD is going to allow us to access that.
19  So at this point, this is the latest twist, Your Honor.  But
20  it's late news, but at least we're proceeding.
21                   At this point what we're trying to do is
22  identify based on what we have which of the claimants
23  participated in the DOD drug benefit program and we're trying
24  to locate their information.  Now, we know that for some
25  individuals, because when they were initially identified, they

1    were identified as retired military, or I think one

2    individual -- one individual was even identified as a Navy

3    Seal.  So we think we can get their data.  But, again, that's

4    just another twist.

5                    So Your Honor I rest on the documents submitted.

6    It was never contemplated we would be pulling information this

7    late.  If Mr. Davis, in fact, contemplated that, he should have

8    spoke up sooner.  And there was no reason -- even though we had

9    an issue relating to payment earlier, there was no reason why

10   they couldn't provide this information sooner.

11                   I seriously think that this is -- I'm sorry --

12   but procrastination on the part of some of the plaintiffs'

13   attorneys.  They were told by Mr. Davis and Mr. Weinkowitz at

14   the outset in the memo that was sent out by the PSC that they

15   were to provide the names and the information by February 22nd.

16   Now here we are four months later.

17                   This is, obviously, a case of people, perhaps,

18   missing deadlines, overlooking deadlines, getting information

19   late, but I don't believe ESI should be penalized for that.

20           THE COURT:  Okay.  Who wants to speak in response to

21   that?

22           MR. DAVIS:  Your Honor, this is Leonard Davis.  If I

23   can just respond very briefly.  With respect to the citations

24   here of what ESI produced, I didn't intend on raising that in

25   this call right now.  That's an issue.  We're still working

1    through their responses and the adequacy of their responses.

2    If those issues need to be addressed, we'll do that at another

3    time.

4            But I believe the Court's familiar with the

5    agreement.  The Court's seen the agreement.  I think the e-mail

6    is very clear that it contemplates two waves.  I know that in

7    the last discussion that we had with the Court, I even raised

8    the issue of the second wave, now we could go forward.

9            Other than that I have nothing else to say.

10           **THE COURT:**  Anybody else?

11           **MR. MARVIN:**  Your Honor, this is Doug Marvin.

12           **THE COURT:**  Yes.

13           **MR. MARVIN:**  In representing Merck, we have not

14   requested any records.  That is the responsibility of the

15   plaintiffs to collect the records and put them before the

16   claims administrator.  But having said that, we do have an

17   interest in seeing that every claimant has an opportunity to

18   put their best case to the claims administrator, and that

19   includes the usage of Vioxx.

20           To my knowledge, there are no problems with any

21   other company.  Every other company has been cooperating in

22   producing records.  There haven't been these kinds of

23   requirements and deadlines and terms and conditions.  In each

24   instance when a plaintiff has a request for records, they

25   submit it and other companies have been responsive in providing

1    them.

2                    So this just seems to me it's, quite frankly,

3    just sitting here on the sidelines, a torturous way to try to

4    get to the bottom of this to get the records produced.

5              **MS. BERMEL:**  Your Honor, if I may respond to that.  I

6    think Mr. Marvin is under a misconception.  No one is saying

7    that these claimants -- the new claimants cannot get their

8    claims information.

9                    But this was an extraordinary effort made by

10   Express Scripts to work with the plaintiffs steering committee,

11   and to see if -- when we were first approached by Mr. Davis, he

12   said he had 100,000 names, and had asked us if we could, based

13   on his experience in dealing with Express Scripts in obtaining

14   prescription drugs claim data from other litigation, if we

15   could access the PBM database to provide that information, and

16   to do that in mass.

17                   But nobody is saying that these individual

18   claimants can't go to Express Scripts.  As a matter of fact, I

19   have been referring those people directly to the person in

20   charge at Express Scripts, the same way that they would contact

21   Caremark or anyone else.

22                   So to Mr. Marvin's point, no one is being

23   precluded from getting their claims data.  It's just that I no

24   longer have authority as the attorney for Express Scripts to

25   work with the PSC on these issues; that they now need to go

 1   through regular channels within Express Scripts to get their

 2   data.

 3            **MR. WEINKOWITZ:**  Your Honor, I think it's important

 4   to understand where we started with all of this.  Where this

 5   all started was with Express Scripts charging individual

 6   plaintiffs $1,500 for pharmacy records.  That's where we

 7   started; and that's where the plaintiffs, who now have to

 8   contact Express Scripts again, end up.  I mean, this was an

 9   issue of overcharging.

10            We've got Caremark, Wal-Mart, at the most, 75

11   bucks for a set of pharmacy records.  There is no one that even

12   comes close to $1,500.  We're not talking hospital records an

13   inch thick.  We're talking through a couple pages of pharmacy

14   data.

15            **MS. BERMEL:**  Once again, Your Honor, if you go to

16   Wal-Mart and you ask for your Wal-Mart pharmacy records, you

17   obtain Wal-Mart pharmacy records.  It was never contemplated

18   when they first came to us that we would simply be confining

19   the data produced simply to prescription drug claims through

20   ESI mail pharmacy.

21            The request was always for PBM prescription

22   drugs claim data which was clearly intended to encompass the

23   retail claims, that is the retail claims from pharmacies across

24   the world so that -- or excuse me -- across the United States.

25            So if you talk about going to Wal-Mart for $75,

1    that's one pharmacy.

2              **MR. DAVIS:**  How about Caremark?

3              **MS. BERMEL:**  In this instance, there could be

4    multiple pharmacies for one individual, and certainly thousands

5    of pharmacies when you add up all of the pharmacies at issue

6    for all of these claimants.

7              **SPEAKERW:**  Mike Weinkowitz, again.  Express Scripts'

8    main competitor is Caremark.  We are not having the same

9    problem with Caremark.

10             **THE COURT:**  Okay.

11             **MS. BERMEL:**  Quite frankly, Your Honor, I haven't

12   seen -- there's been talk of Caremark data.  But as you recall,

13   Caremark acquired one particular retail pharmacy.  I don't know

14   if what they're providing is limited to that retail pharmacy.

15             But I can tell you, Your Honor, given this

16   process, the $1,500 is justified.  We have spent thousands more

17   than what the plaintiffs steering committee has paid us from

18   beginning to end on this process.

19             **THE COURT:**  All right.  I do have a feel for it.  Let

20   me think out loud with the parties.  It seems to me that, and

21   as we know, ESI is one of the largest pharmacy benefit managers

22   in the United States, and probably North America, serving,

23   according to their Web site, over 50 million people.

24             As part of the its service, ESI collects and

25   electronically stores pharmaceutical records.  In this

1   particular case, the individual plaintiffs indicate that they

2   have taken Vioxx; and as a result of taking Vioxx, they

3   sustained certain injuries.  They've made claims in various

4   courts in the country and, of course, they've been sent to this

5   Court in accordance with the MDL statute.  So I have those

6   claims before me.

7                After a number of years of preparation and

8   pretrial conferences and also a number of trials, the parties

9   were able to reach some settlement procedure by which they can

10  resolve these cases.  Part of the requirement was to produce

11  pharmaceutical records to indicate that they have taken the

12  drug, that pharmaceutical records have been kept and collected

13  by a number of institutions, a number of companies, one of

14  which is ESI.

15               The plaintiffs in this particular case claim

16  that they have a right to the records of ESI.  Of course,

17  Rule 34, of the Federal Rules of Civil Procedure provides that

18  in accordance with Rule 45, which is the rule dealing with

19  subpoenas, that:  A non-party may be compelled to produce

20  documents and tangible things or to permit the inspection.

21               With the production of documents, the party who

22  produces the documents must provide copies of those documents.

23  Specifically, with regards to electronically stored

24  information, the person responding need not produce the same

25  electronically stored information in more than one form, but

```
 1   they need to produce it in one form.
 2                   So in this particular matter, it seems to me
 3   that the litigants, either by way of 30(b)(6) or by subpoenaing
 4   a specific individual, have a right to get the information.
 5   They can do it either by a schedule listing 10,000 names, or
 6   5,000 names, or whatever it is and calling upon the individual
 7   from ESI to produce those records, and then the records would
 8   need to be copied to be produced at that time.
 9                   If there is a charge, then I'll determine how
10   much the individual who is incurring those expenses is entitled
11   to.  I was trying to get everybody together to do it in a way
12   that's most efficient and a way that is better for all of the
13   parties.  Apparently, it can't be done that way.
14                   So what needs to be done is that the plaintiffs
15   need to do a 30(b)(6) deposition with a subpoena duces tecum
16   and attach to that 30(b)(6) the names of the individuals whose
17   records they want produced.  Either 30(b)(6) to ESI or subpoena
18   a specific person.  ESI then will have to produce those
19   records.  Since it's a subpoena, I have some interest in
20   enforcing the subpoena.
21                   Of course, 45(e) states:  The issuing court may
22   hold in contempt a person, who having been served, fails
23   without adequate excuse to obey the subpoena.  A non-party's
24   failure to obey must be excused if the subpoena purports to
25   require the non-party to attend or produce at a place outside
```

 1    the limits.

 2                    Usually, the limits for this Court is the state

 3    of Louisiana since I sit in Louisiana.  However, I'm sitting as

 4    an MDL court, so my reach is throughout the United States.  So

 5    when I issue the subpoena, I will be issuing the subpoena

 6    pursuant to the state in which the party is to be subpoenaed.

 7                    It seems to me that there's got to be an easier

 8    way of doing it.  But if you folks can't arrive at an easier

 9    way of doing it, then issue a subpoena and I'll take it from

10    there.

11                    Of course, we'll give everybody an opportunity

12    to speak in any motion to quash; or when the records are

13    produced, to see how much the party's entitled to.  Whether

14    they're entitled to more than the copying costs, I will

15    probably take expert witnesses on that and call also other

16    individuals who have produced it to see how much they have

17    charged.

18                    That's the easiest way for me to do it.  I

19    suggest that you-all maybe try one more time.  But if not, then

20    I would instruct the plaintiffs to issue the subpoena and I'll

21    take it from there.

22                    Any further comment from anybody?  Thank you

23    very much, ladies and gentlemen.  I'll hear from you.

24              MS. BERMEL:  Thank you, Your Honor.

25              MR. DAVIS:  Thank you, Your Honor.

1      **MR. WEINKOWITZ:**  Thank you, Your Honor.

2      **MR. MARVIN:**  Thank you, Your Honor.

3      **MR. LEVIN:**  Thank you, Your Honor.

4          **(WHEREUPON, the Court was adjourned.)**

5                        *****

6                   <u>**CERTIFICATE**</u>

7          I, Jodi Simcox, RMR, FCRR, Official Court Reporter

8    for the United States District Court, Eastern District of

9    Louisiana, do hereby certify that the foregoing is a true and

10   correct transcript, to the best of my ability and

11   understanding, from the record of the proceedings in the

12   above-entitled and numbered matter.

13

14

15                         _S/ Jodi Simcox, RMR, FCRR_
                          Jodi Simcox, RMR, FCRR
16                        Official Court Reporter

17

18

19

20

21

22

23

24

25

JODI SIMCOX, RMR, FCRR – OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA