UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX : | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION : | |
| : | SECTION L |
| This document relates to ALL CASES : | JUDGE FALLON |
| : | MAG. JUDGE KNOWLES |

THE PLAINTIFFS' STEERING COMMITTEE'S
MEMORANDUM OF LAW IN SUPPORT OF
ITS SECOND MOTION TO COMPEL EXPRESS SCRIPTS TO COMPLY
WITH THE SUBPOENA REQUEST FOR PRESCRIPTION
DRUG DOCUMENTS OR DATA

I. **INTRODUCTION**

   A. **The Relief being Sought by the PSC**

This Honorable Court agreed, with the consent of the parties to the Master Settlement Agreement ("MSA"), to preside over the Vioxx Settlement Program. The parties, this Court and the various state courts have traveled a long road together and, with the considerable effort of the *Claims Administrator*, have arrived at a point where the Claimants are to begin receiving interim settlement payments in the near future. The Settlement Program has progressed efficiently and it would be unfortunate if it were frustrated and delayed by the failure of an obstinate third-party, like Express Scripts, Inc. ("ESI"), to produce complete and accurate prescription drug/pharmacy records or data (hereinafter referred to as "pharmacy records") in the possession, custody or control of ESI for all Claimants who were ESI customers. Unfortunately, such a delay requires the Plaintiffs' Steering Committee ("PSC") to file yet a second *Motion to Compel* for the production of subpoenaed

pharmacy data for the ESI customers that are participating in the Settlement Program. (Exhibit "A").[1]

This motion seeks to compel compliance by ESI with the *Subpoena* issued on June 30, 2008 (Exhibit "A(1)").

The PSC has spent a significant amount of time and effort dealing with ESI production issues, as has this Court and the *Claims Administrator*. As described in detail below, there are problems that require the Court's intervention. ESI has refused to fully comply with the June 30, 2008 *Subpoena* (Exhibit "A(1)") issued by the PSC (after being instructed to do so by the Court) seeking the production of all pharmacy data for all Claimants, notwithstanding the fact that ESI has already been paid $52,425.00 by the PSC. In this *Motion*, the PSC requests that the Court enforce the June 30, 2008 *Subpoena* properly served on ESI compelling ESI to produce *full and complete* pharmacy data for all Claimants on the addendum to the *Subpoena*.

## II.   BACKGROUND

The ESI saga began because ESI demanded an exorbitant fee of $1,500.00 per Claimant to produce what may be just a few pages of pharmacy records. (Exhibit "B").[2] ESI claims to be one of the largest Pharmacy Benefits Managers (PBM) in North America serving approximately 50 million people. (*See* ESI's website at http://www.express-scripts.com/). It boasts publically of its

---

[1] Initially, on June 25, 2008, the PSC served a *Subpoena* on ESI but ESI's counsel refused to waive service and accept it. (Exhibit "A"). Subsequently ESI's counsel indicated that he was authorized to accept service and the PSC sent counsel a second *Subpoena* dated June 30, 2008, withdrawing the June 25, 2008 *Subpoena* previously rejected by ESI's counsel. (Exhibit "A(1)" - The attachment to the *Subpoena* has been sent to ESI previously with data to assist ESI, but due to privacy issues, will not be filed into the public record).

[2] Attached as Exhibit "B" is the PSC's original *Motion to Compel* for ESI pharmacy records filed in February, 2008 (hereinafter referred to as the "PSC's February, 2008 Motion to Compel"). Reference herein to numbered Exhibits 1-11 are those attached to the PSC's *February, 2008 Motion to Compel* which is incorporated herein as if set forth in its entirety.

"Technical Superiority" while at the same time claiming that it has to charge Plaintiffs/Claimants exorbitant fees to retrieve their pharmacy records because of technical limitations, incompatibilities and difficulties with its various computer platforms. (Exhibit "B," n. 2; Exhibit "2").[3]

There are few instance where the PSC quotes Merck's counsel favorably in support of its position, but Mr. Marvin aptly described the problem before the Court, during a June 24, 2008 telephone status conference:

> In representing Merck, we have not requested any records. That is the responsibility of the plaintiffs to collect the records and put them before the claims administrator. But having said that, we do have an interest in seeing that every claimant has an opportunity to put their best case to the claims administrator, and that includes the usage of Vioxx. To my knowledge, there are no problems with any other company. Every other company has been cooperating in producing records. There haven't been these kinds of requirements and deadlines and terms and conditions. In each instance when a plaintiff has a request for records, they submit it and other companies have been responsive in providing them. So this just seems to me it's, quite frankly, But just sitting here on the sidelines, *a torturous way to try to get to the bottom of this to get the records produced*.

(Exhibit "C" at 8:12-9:4)(emphasis added)).[4]

Problems like this have not occurred with any other PBM or Pharmacy. Likewise, no other PBM or Pharmacy has charged such an exorbitant and unreasonable fees for copies of pharmacy records. For instance, CVS (before it merged with Caremark) charged $35.00 for complete pharmacy records with no date restriction and even after the two entities merged the fee only increased to $75.00. Walgreens charges $55.00 for complete pharmacy records with no date restrictions. (Exhibit "B," n. 2, Exhibit "2(a)-(c)"). ESI seeks to take advantage of and gouge Vioxx Claimants.

A. **The First PSC and NJ *Subpoenas***

---

[3] Any complaint by ESI's that the PSC's request is overly burdensome should be viewed in light of its technical superiority, and then readily rejected.

[4] The transcript from the June 24, 2008 telephone status conference is attached as Exhibit "C."

Approximately eight (8) months ago, upon request of the PSC, this Court lifted the temporary stay implemented following the announcement of the settlement on November 9, 2007, so that it could serve ESI with a *Notice of Deposition* and a *Subpoena* for documents and testimony. (Exhibit "9"). The PSC served its first *Subpoena* and the *Notice of Deposition* upon ESI on December 21, 2007. *Id.*[5] This request was made and acted upon based upon ESI's refusal to produce on a timely basis pharmacy records that may be needed for submission into the Settlement Program. (Exhibit "B").

**B.     The PSC's First *Motion to Compel***

In February, 2008, the PSC filed a *Motion to Compel* seeking an order compelling the production of pharmacy records from ESI based on the first PSC *Subpoena* served on ESI on December 21, 2007. (Exhibit "B"). The February 8, 2008, *Motion to Compel* was deferred after this Court encouraged the PSC and ESI to attempt to resolve the outstanding issues regarding the production of pharmacy data and payment of a reasonable fee. The efforts[6] that followed have been frustrated by ESI's refusal to fully cooperate and provide complete data or pharmacy records. Thus, Court intervention is once again necessary.

**C.     ESI's Failure to Produce Full, Complete and Accurate Pharmacy Data**

ESI has refused to produce *full and complete* pharmacy records for all Vioxx Claimants and the PSC has significant concerns about the completeness and accuracy of the pharmacy data that has been produced to date.

---

[5] A *Subpoena* was likewise served on ESI in the New Jersey Vioxx. (Exhibit "10").

[6] The considerable efforts include numerous multi-page single spaced letters from ESI's counsel in addition to extensive E-mails, multiple calls between counsel and with this Court and the efficient and skillful efforts of the *Claims Administrator*.

ESI has been paid $52,425.00 by the PSC. The PSC initially requested data for 599[7] Claimants (hereinafter "first- wave").[8] Data for an additional 276 Claimants has been requested but ESI has refused to produce any prescription data to the PSC (hereinafter referred to as the second-wave). Thus, the PSC has asked for data for 875 Claimants all of which are set forth on the addendum to the *Subpoena* served on ESI on June 30, 2008. (Exhibit "A(1)"). The *Claims Administrator* has provided ESI with medical authorizations for all of the Vioxx Claimants seeking pharmacy data.

The *Claims Administrator* reports that ESI has only provided a response (including either producing data or indicating that no data was located) for 396 Claimants. ESI produced data for 349 Claimants and was unable to locate data for 47 Claimants.[9] Thus, ESI has only responded to the PSC on only 45.25% of the requested Claimants. Further, the data received thus far on the 45.25% is not reliable.

As set forth in detail below, the pharmacy data produced by ESI so far is incomplete, unreliable and inaccurate. As a result some Claimants are at risk for being deemed ineligible to participate in the settlement program or if eligible will receive less points and thus a reduction in the

---

[7] It is anticipated that ESI will respond, in part, by stating that the PSC initially told ESI that data was needed on 100,000 Claimants. The PSC denies that this was ever said and it makes no sense since there are not even close to 100,000 Plaintiffs that filed suit or tolling agreements against Merck in this litigation and in the various state courts. The numbers of suits/plaintiffs/plaintiff groups has been repeatedly reported publically in the press, in Merck's Annual Reports and in Joint Reports to this Court.

[8] The PSC sent the prescription data upon receiving it from ESI to the *Claims Administrator* who distributed each Claimant's data though the secured Vioxx claims web-based portal. The *Claims Administrator* was likewise involved in providing ESI with each Claimant's medical authorization form.

[9] ESI has refused to search all databases, thus it may be in possession of prescription data for some, if not all of the 47 Claimants that it was unable to locate data for. ESI should be compelled to search all databases to ensure the accuracy of its production.

amount of compensation they will receive.

### D. ESI Has Failed to Produce Any Pharmacy Data for Certain Claimants

ESI has failed to produce a second wave of prescription data. The PSC wrote advising the Court of its refusal on June 5, 2008. (Exhibit "D"). The Court held a telephone status conference on June 24, 2008 and instructed the PSC to issue a *Subpoena*. (Exhibit "C," 14:18-21)(Exhibit "A"). The *Subpoena* was accepted by ESI's counsel on June 30, 2008. ESI responded on July 14, 2008, which led, in part, to the instant motion. (Exhibit "E" - attachment to this Exhibit filed in redacted version to protect privacy of individuals).

## III. LEGAL ARGUMENT

### A. This MDL Court's Broad Authority to Enforce the *Subpoena*

This court has the authority to enforce the *Subpoena* and to compel ESI to produce full and complete pharmacy data for each Claimant, and the PSC respectfully requests that it do so.

Fed.R.Civ.P. 34 (c) states that "[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Rule 34(b)(2)(iii) states that "[a] party need not produce the same electronically stored information in more than one form" but the party need produce electronic information in one form. Rule 34(A)(1)(a).

Fed.R.Civ.P. 45 states that:

> The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

This MDL Court in not limited to Louisiana, as it encompasses all states and juridisdictions.

Pursuant to 28 U.S.C.A. § 1407, a district court judge who has been assigned a consolidated case by the members of the judicial panel on multidistrict litigation, "... may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated pretrial proceedings." *See In re Automotive Refinishing Paint Antitrust Litigation*, 229 F.R.D. 482, 486 (E.D.Pa. 2005)("[t]he MDL statute thus authorizes a transferee court judge to sit as the court in " ' other districts to hear and decide motions to compel discovery from non-parties.' "), *quoting In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 596 (E.D.Pa. 1989); *In re Uranium Antitrust Litig.*, 503 F.Supp. 33, 35 (N.D.Ill. 1980)(same); *Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F.Supp.2d 270, 273 (D.D.C. 2002)(same); *see also In re Corrugated Container Antitrust Litigation*, 647 F.2d 460 (5th Cir. 1981)(judge in multi-district litigation can exercise powers of judge from another district, pursuant to 28 U.S.C.A. § 1407, and find witness in contempt for refusing to answer questions at deposition).

This power includes jurisdiction to issue orders related to subpoenas issued by another district court. *In re Neurontin Marketing, Sales Practices, and Products Liability Litigation*, 245 F.R.D. 55 (D.Mass.2007 ); *see In re San Juan Dupont Plaza Hotel Fire Litigation*, 117 F.R.D. 30, 32 (1987); *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F.Supp.2d 270 (D.D.C.2002)(Multidistrict litigation statute's grant of power to multidistrict litigation judge to act as judge of any district for pretrial depositions would include as an incident the power to enforce subpoenas duces tecum issued by court in which action originated, although subpoena was a documents-only subpoena not associated with a deposition; it would make no sense for the statute to confer authority to conduct depositions, but not the authority to require production of documents at deposition).

### B.  The Unreliability and Inaccuracies in the ESI Production To Date

The examples set forth below demonstrate significant problems with the pharmacy data ESI has produced. ESI has refused to search all of its relevant databases to ensure that it has produced all prescription data for the Vioxx Claimants.[10] The PSC respectfully requests that ESI be ordered to use its "Technical Superiority" to search all databases to ensure the accuracy and completeness of its production so that Claimants are not unfairly deemed ineligible and they receive the full compensation they are entitled for their injuries.

For each example below, ESI has been notified of the problems with its production, as have other Claimants. It has been provided with the *ESI Statements* or *ESI Prescription History* produced by the Claimants which show that ESI's production is incomplete. To date, in each case, ESI has failed to produce additional pharmacy data. As a result, each of the Claimants could be deemed ineligible to participate in the Vioxx Settlement Program and thus unfairly be denied compensation for their injuries because of ESI's obstinance.

#### a.  Claimant A[11]

Claimant A suffered a Heart Attack on June 27, 2003. According to an *ESI Prescription History*[12] produced by Claimant A (and provided to ESI), ESI filled prescriptions of Vioxx 25 mg on

---

[10] *See* Exhibit "E," p. 4 of ESI's Response to Plaintiffs' Third-Party Subpoena, no. 13 refusing to search computer systems no longer in use characterizing the data on these computer systems as "no longer readily accessible." To preserve confidentiality, social security numbers, dates of birth and other information have been redacted from the attachment to counsel's letter. The PSC will with the filing of the Motion provide an un-redacted copy of the Exhibit to ESI.

[11] To preserve confidentiality and avoid the need to file this Motion under seal, the identities of the Claimants have been redacted. The PSC will with the filing of this Motion provide an un-redacted copy of the Exhibits to ESI.

[12] Claimant A's *ESI Prescription History* was downloaded from the internet. (Exhibit "F"). The fact that ESI's production fails to capture this data is strong evidence of the unreliability of ESI's

the following dates: December 8, 2003; August 4, 2003; May 5, 2003; February 17, 2003; September 9, 2004; April 5, 2004; and February 23, 2004. (Exhibit "F," at 3-6). The pharmacy data produced to the PSC lists other medications for Claimant A **but not Vioxx.** (Exhibit "F," at 7-13).

### b. Claimant B

Claimant B suffered a heart attack on May 22, 2003. According to Claimant B's *ESI Statement*, ESI filled Vioxx prescriptions until as late as September 11, 2004. (Exhibit "G"). The *ESI Statement* provided to ESI, shows that a prescription for Vioxx (quantity unknown)[13] was filled by ESI for Claimant B on April 25, 2003. However, the pharmacy data produced to the PSC, reflects that ESI filled only two prescriptions of Vioxx 25 mg tablets on August 30, 2001 (180 tablets) and November 30, 2001 (180 tablets)(Exhibit "G" at pages 7-9).

### c. Claimant C

Claimant C suffered a Heart Attack on May 12, 2000. Vioxx use was noted in the *History and Physical* report of his hospital records. According to Claimant C's *ESI Statement*, provided to ESI, ESI filled a Vioxx prescription on July 6, 2003. (Exhibit "H"). However, the ESI production for Claimant C does not include the July 2003 prescription demonstrating that the ESI production

---

production to date.

[13] *The ESI Statements* do not provide the number of pills dispensed. The number of pills dispensed to a Claimant ("pill count") is essential for determining whether a Claimant is eligible to participate in the Settlement Program. The pill count is used to determine whether the Claimant passes two of the three eligibility "Gates" – Duration of Use and Proximity. Additionally, the pill count is used during the points review to determine the number of points awarded to a Claimant for consistency of use and duration of use. Thus, the pill count is used not only to determine eligibility or ineligibility but directly impacts the amount of settlement compensation a Claimant is entitled to receive.

was incomplete. *Id.*

####    d.    Claimant D

Claimant D suffered a Stroke on February 26, 2003. According to Claimant D's *ESI Statement*, provided to ESI), ESI filled multiple Vioxx prescriptions in 2002 and 2003. (Exhibit "I"). However, the ESI prescription data produced to the PSC failed to include any Vioxx prescriptions including those that were listed in the ESI billing records. *Id.* As a result of the incomplete pharmacy data produced by ESI, to date, Claimant D's claim may not qualify under the terms of the Vioxx Settlement Program due to a lack of proximity.

Each of the examples above calls into serious question the accuracy and completeness of ESI's production.

### IV.   CONCLUSION

For all of the foregoing reasons, the PSC respectfully requests that this Honorable Court grant its *Motion to Compel*, and issue an order compelling ESI to produce the requested information. Full and complete production of all pharmacy records in ESI's possession for all claimants identified in the subpoena must be promptly produced by ESI.

Respectfully submitted,

/s/ Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA 70113
PH:   (504) 581-4892
FAX: (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O.Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973 |
| Andy D. Birchfield, Esq. (**Co-Lead Counsel**)<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555 | Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059 |
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008 | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292 |
| Arnold Levin, Esq.<br>Michael M. Weinkowitz, Esq. (**on brief**)<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663 | Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799 |
| Shelly Sanford, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 7th day of August, 2008.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Ave.
New Orleans, LA 70113
PH:   (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhkc.com