
EXHIBIT "C"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX PRODUCTS LIABILITY LITIGATION * Docket MDL 1657-L

* June 24, 2008

* 1:00 p.m.

* * * * * * * * * * * * * * * *

TELEPHONIC STATUS CONFERENCE BEFORE
THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:

Herman Herman Katz & Cotlar
BY: LEONARD DAVIS, ESQ.
820 O'Keefe Avenue
New Orleans, Louisiana 70113

Levin, Fishbein, Sedrad & Berman
BY: ARNOLD LEVIN, ESQ.
BY: MICHAEL WEINKOWITZ, ESQ.
510 Walnut Street
Suite 500
Philadelphia, Pennsylvania 19106

For the Defendant:

Williams & Connolly, LLP
BY: DOUGLAS R. MARVIN, ESQ.
725 Twelfth Street, NW
Washington, DC 20005

Claims Administrator:

BrownGreen, PLC
BY: LYNN GREER, ESQ.
115 South 15th Street
Suite 400
Richmond, Virginia 23285

APPEARANCES:

For Express Scripts: Husch Blackwell Sanders LLP
BY: JEANINE BERMEL, ESQ.
190 Carondelet Plaza
Suite 600
St. Louis, MO 63105

Official Court Reporter: Jodi Simcox, RMR, FCRR
500 Poydras Street
Room B-406
New Orleans, Louisiana 70130
(504) 589-7780

Proceedings recorded by mechanical stenography, transcript produced by computer.

**TELEPHONIC STATUS CONFERENCE**

**(June 24, 2008)**

**(WHEREUPON, the following proceedings were held in chambers.)**

**THE COURT:** Hello, good afternoon. This is Judge Fallon. Who do I have on the line?

**MR. LEVIN:** Arnold Levin, sir, and Mike Weinkowitz.

**MR. DAVIS:** Your Honor, this is Lenny Davis.

**MS. BERNEL:** Good afternoon, Your Honor. This is Jeanine Bermel from Express Scripts.

**THE COURT:** Okay.

**MR. MARVIN:** Judge, this is Doug Marvin.

**MS. GREER:** Lynn Greer.

**THE COURT:** Anyone else? Okay. Folks, I have a court reporter so that we can at least express ourselves properly and know what we've said. Let me hear from the parties. What seems to be the problem?

**MR. DAVIS:** Your Honor, this is Leonard Davis for the plaintiffs steering committee. On June the 5th, we wrote a letter to the Court, which I believe the Court has, regarding discussions that we had had with counsel for ESI, the prior date which was on June the 4th concerning the production of the ESI medical pharmacy records that Your Honor is completely familiar with, and I know everybody on this call is familiar with.

The issue that is before the Court right now is

ESI takes the position that additional records do not need to be produced over and above what was produced in the first wave. The plaintiff's steering committee believes that it was always contemplated, and as evidenced by the e-mails that are attached to my letter, that there would be two waves of production, that being two sets of production by ESI of these records. The first wave being from those in which we received responses from various plaintiffs throughout the country.

And as a result of the delay, which Your Honor is aware of as a result of the last conference, we didn't get the second wave in until after the first issues were resolved. When we sent the second wave in, ESI has said, "No, you don't have a right to do that. It was never contemplated."

We just don't think that that's ever what was intended, Your Honor. We believe that these claimants need to get their records in order to get them into the settlement program.

**THE COURT:** All right. Let me hear from ESI.

**MS. BERMEL:** Your Honor, I didn't respond to Mr. Davis' letter because I think the e-mails that he attached as exhibits speak for themselves and clearly show that the parties never contemplated that the plaintiffs steering committee would be providing to us yet additional names over and above the first 598 submitted as late as June 3rd.

The Court will note that there's one e-mail in

particular in March where I wrote to Mr. Davis and I said, "You originally contemplated, what, 200, I think, claimants. You're now up to 598. I assume there are no further names forthcoming," and there was not a response. Never a response to that.

And the Court will recall in our last status conference on May 14th, I specifically said, "There needs to be some type of closure to this. We cannot continue with this on an ongoing basis." And I asked the Court to provide some relief so that there was some end in sight, and the Court provided a ten-day deadline to submit additional information.

Now, if at that point the plaintiffs steering committee contemplated having yet further names, and apparently they did, they should have spoken up and we could have reached perhaps some agreement at that point.

But I think that the PSC acknowledges that they never intended, and the parties never contemplated that they would be providing additional names at this time. Because if they had, first of all, why wasn't this raised earlier? And second of all, why didn't they tender the fee that they agreed to pay when they provided these additional names?

Now, Your Honor, when Mr. Davis provided these additional names, once again, he said, "Please, turn this around in six weeks." It's not possible at this point to provide this information, to respond within the six weeks. We

had always contemplated in our discussions that we would be done and through at this point.

The only reason why we're not finished with the claimants at this time is because we still have authorization issues. We are still working with some of the attorneys who are providing additional information about claimants previously submitted to see if we can't find the claims for those particular people given additional information.

And because we have a new twist and turn, and that is, although I originally told Mr. Davis this expressly on a telephone call, that we have -- we have claims information for people who received prescription drugs claims benefits through the Department of Defense that is not within ESI's centralized database. That's a separate database that has much security around it for obvious reasons.

We did not intended to search that database. But as long as we have sufficient information, it's our understanding that the DOD is going to allow us to access that. So at this point, this is the latest twist, Your Honor. But it's late news, but at least we're proceeding.

At this point what we're trying to do is identify based on what we have which of the claimants participated in the DOD drug benefit program and we're trying to locate their information. Now, we know that for some individuals, because when they were initially identified, they

were identified as retired military, or I think one individual -- one individual was even identified as a Navy Seal. So we think we can get their data. But, again, that's just another twist.

So Your Honor I rest on the documents submitted. It was never contemplated we would be pulling information this late. If Mr. Davis, in fact, contemplated that, he should have spoke up sooner. And there was no reason -- even though we had an issue relating to payment earlier, there was no reason why they couldn't provide this information sooner.

I seriously think that this is -- I'm sorry -- but procrastination on the part of some of the plaintiffs' attorneys. They were told by Mr. Davis and Mr. Weinkowitz at the outset in the memo that was sent out by the PSC that they were to provide the names and the information by February 22nd. Now here we are four months later.

This is, obviously, a case of people, perhaps, missing deadlines, overlooking deadlines, getting information late, but I don't believe ESI should be penalized for that.

**THE COURT:** Okay. Who wants to speak in response to that?

**MR. DAVIS:** Your Honor, this is Leonard Davis. If I can just respond very briefly. With respect to the citations here of what ESI produced, I didn't intend on raising that in this call right now. That's an issue. We're still working

through their responses and the adequacy of their responses. If those issues need to be addressed, we'll do that at another time.

But I believe the Court's familiar with the agreement. The Court's seen the agreement. I think the e-mail is very clear that it contemplates two waves. I know that in the last discussion that we had with the Court, I even raised the issue of the second wave, now we could go forward.

Other than that I have nothing else to say.

**THE COURT:** Anybody else?

**MR. MARVIN:** Your Honor, this is Doug Marvin.

**THE COURT:** Yes.

**MR. MARVIN:** In representing Merck, we have not requested any records. That is the responsibility of the plaintiffs to collect the records and put them before the claims administrator. But having said that, we do have an interest in seeing that every claimant has an opportunity to put their best case to the claims administrator, and that includes the usage of Vioxx.

To my knowledge, there are no problems with any other company. Every other company has been cooperating in producing records. There haven't been these kinds of requirements and deadlines and terms and conditions. In each instance when a plaintiff has a request for records, they submit it and other companies have been responsive in providing

them.

So this just seems to me it's, quite frankly, just sitting here on the sidelines, a torturous way to try to get to the bottom of this to get the records produced.

**MS. BERMEL:** Your Honor, if I may respond to that. I think Mr. Marvin is under a misconception. No one is saying that these claimants -- the new claimants cannot get their claims information.

But this was an extraordinary effort made by Express Scripts to work with the plaintiffs steering committee, and to see if -- when we were first approached by Mr. Davis, he said he had 100,000 names, and had asked us if we could, based on his experience in dealing with Express Scripts in obtaining prescription drugs claim data from other litigation, if we could access the PBM database to provide that information, and to do that in mass.

But nobody is saying that these individual claimants can't go to Express Scripts. As a matter of fact, I have been referring those people directly to the person in charge at Express Scripts, the same way that they would contact Caremark or anyone else.

So to Mr. Marvin's point, no one is being precluded from getting their claims data. It's just that I no longer have authority as the attorney for Express Scripts to work with the PSC on these issues; that they now need to go

through regular channels within Express Scripts to get their data.

**MR. WEINKOWITZ:** Your Honor, I think it's important to understand where we started with all of this. Where this all started was with Express Scripts charging individual plaintiffs $1,500 for pharmacy records. That's where we started; and that's where the plaintiffs, who now have to contact Express Scripts again, end up. I mean, this was an issue of overcharging.

We've got Caremark, Wal-Mart, at the most, 75 bucks for a set of pharmacy records. There is no one that even comes close to $1,500. We're not talking hospital records an inch thick. We're talking through a couple pages of pharmacy data.

**MS. BERMEL:** Once again, Your Honor, if you go to Wal-Mart and you ask for your Wal-Mart pharmacy records, you obtain Wal-Mart pharmacy records. It was never contemplated when they first came to us that we would simply be confining the data produced simply to prescription drug claims through ESI mail pharmacy.

The request was always for PBM prescription drugs claim data which was clearly intended to encompass the retail claims, that is the retail claims from pharmacies across the world so that -- or excuse me -- across the United States.

So if you talk about going to Wal-Mart for $75,

that's one pharmacy.

**MR. DAVIS:** How about Caremark?

**MS. BERMEL:** In this instance, there could be multiple pharmacies for one individual, and certainly thousands of pharmacies when you add up all of the pharmacies at issue for all of these claimants.

**SPEAKERW:** Mike Weinkowitz, again. Express Scripts' main competitor is Caremark. We are not having the same problem with Caremark.

**THE COURT:** Okay.

**MS. BERMEL:** Quite frankly, Your Honor, I haven't seen -- there's been talk of Caremark data. But as you recall, Caremark acquired one particular retail pharmacy. I don't know if what they're providing is limited to that retail pharmacy.

But I can tell you, Your Honor, given this process, the $1,500 is justified. We have spent thousands more than what the plaintiffs steering committee has paid us from beginning to end on this process.

**THE COURT:** All right. I do have a feel for it. Let me think out loud with the parties. It seems to me that, and as we know, ESI is one of the largest pharmacy benefit managers in the United States, and probably North America, serving, according to their Web site, over 50 million people.

As part of the its service, ESI collects and electronically stores pharmaceutical records. In this

particular case, the individual plaintiffs indicate that they have taken Vioxx; and as a result of taking Vioxx, they sustained certain injuries. They've made claims in various courts in the country and, of course, they've been sent to this Court in accordance with the MDL statute. So I have those claims before me.

After a number of years of preparation and pretrial conferences and also a number of trials, the parties were able to reach some settlement procedure by which they can resolve these cases. Part of the requirement was to produce pharmaceutical records to indicate that they have taken the drug, that pharmaceutical records have been kept and collected by a number of institutions, a number of companies, one of which is ESI.

The plaintiffs in this particular case claim that they have a right to the records of ESI. Of course, Rule 34, of the Federal Rules of Civil Procedure provides that in accordance with Rule 45, which is the rule dealing with subpoenas, that: A non-party may be compelled to produce documents and tangible things or to permit the inspection.

With the production of documents, the party who produces the documents must provide copies of those documents. Specifically, with regards to electronically stored information, the person responding need not produce the same electronically stored information in more than one form, but

they need to produce it in one form.

So in this particular matter, it seems to me that the litigants, either by way of 30(b)(6) or by subpoenaing a specific individual, have a right to get the information. They can do it either by a schedule listing 10,000 names, or 5,000 names, or whatever it is and calling upon the individual from ESI to produce those records, and then the records would need to be copied to be produced at that time.

If there is a charge, then I'll determine how much the individual who is incurring those expenses is entitled to. I was trying to get everybody together to do it in a way that's most efficient and a way that is better for all of the parties. Apparently, it can't be done that way.

So what needs to be done is that the plaintiffs need to do a 30(b)(6) deposition with a subpoena duces tecum and attach to that 30(b)(6) the names of the individuals whose records they want produced. Either 30(b)(6) to ESI or subpoena a specific person. ESI then will have to produce those records. Since it's a subpoena, I have some interest in enforcing the subpoena.

Of course, 45(e) states: The issuing court may hold in contempt a person, who having been served, fails without adequate excuse to obey the subpoena. A non-party's failure to obey must be excused if the subpoena purports to require the non-party to attend or produce at a place outside

the limits.

Usually, the limits for this Court is the state of Louisiana since I sit in Louisiana. However, I'm sitting as an MDL court, so my reach is throughout the United States. So when I issue the subpoena, I will be issuing the subpoena pursuant to the state in which the party is to be subpoenaed.

It seems to me that there's got to be an easier way of doing it. But if you folks can't arrive at an easier way of doing it, then issue a subpoena and I'll take it from there.

Of course, we'll give everybody an opportunity to speak in any motion to quash; or when the records are produced, to see how much the party's entitled to. Whether they're entitled to more than the copying costs, I will probably take expert witnesses on that and call also other individuals who have produced it to see how much they have charged.

That's the easiest way for me to do it. I suggest that you-all maybe try one more time. But if not, then I would instruct the plaintiffs to issue the subpoena and I'll take it from there.

Any further comment from anybody? Thank you very much, ladies and gentlemen. I'll hear from you.

**MS. BERMEL:** Thank you, Your Honor.

**MR. DAVIS:** Thank you, Your Honor.

**MR. WEINKOWITZ:** Thank you, Your Honor.

**MR. MARVIN:** Thank you, Your Honor.

**MR. LEVIN:** Thank you, Your Honor.

**(WHEREUPON, the Court was adjourned.)**

*****

**CERTIFICATE**

I, Jodi Simcox, RMR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

S/ Jodi Simcox, RMR, FCRR
Jodi Simcox, RMR, FCRR
Official Court Reporter