**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re:  VIOXX | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| | JUDGE FALLON |
| THIS DOCUMENT RELATES TO | |
| MDL Nos. 06-11333, 07-0395, 08-0162[1] | MAG. JUDGE KNOWLES |

## DEFENDANT MERCK & CO., INC.'S REPLY TO PLAINTIFFS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE WHY THE FOREIGN INDIVIDUAL CASES SHOULD NOT BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Plaintiffs in the above-captioned actions are all citizens and residents of the United Kingdom who allege that they were prescribed Vioxx in the U.K., ingested it in the U.K., suffered their alleged injuries there, and were treated for those injuries there by U.K. doctors. For the reasons set forth in its August 30, 2006 Order dismissing the Italian and French complaints (the "FNC Order"), the Court should dismiss these plaintiffs' claims under the doctrine of *forum non conveniens*.  Like the Italian and French claimants, plaintiffs are foreign citizens who were prescribed, ingested, and allegedly suffered injuries from Vioxx abroad.  And like the Italian and French complaints, plaintiffs' lawsuits implicate foreign regulatory judgments, involve foreign documents and witnesses, and require application of foreign law.  As the Court concluded in its FNC Order, these considerations render trial of plaintiffs' claims far more appropriate in their home forums.

---

[1]     Although both sides have referred in this motion to case 08-0162, the Court closed that case and ordered plaintiffs to re-file individually.  Plaintiffs did so under docket numbers 08-cv-01613, 08-cv-01614, 08-cv-01615, 08-cv-01616, 08-cv-01617, and 08-cv-01618.  Merck respectfully requests that, should the Court dismiss plaintiffs' claims, the Court include these individual docket numbers in its order.

That conclusion is particularly compelling in these cases because two courts have *already decided* that Vioxx claims filed by individual U.K. plaintiffs should be dismissed in favor of trial in the United Kingdom.  As Merck noted in its Motion for an Order to Show Cause, the New Jersey court overseeing the New Jersey Vioxx coordinated proceeding dismissed a set of claims brought by U.K. plaintiffs under the doctrine of *forum non conveniens*.  *See* Mem. of Decision on Mot. and Order, *In re Vioxx Litig.* (Super. Ct. Atlantic County, N.J. Oct. 5, 2006) (Higbee, J.) ("Mem. of Decision") (attached as Ex. 1).  The plaintiffs in that case appealed the dismissal to the New Jersey Appellate Division, which then affirmed the trial court's decision in unequivocal terms.  *See In re Vioxx Litig.*, 928 A.2d 935 (N.J. Super. Ct. App. Div. 2007).  There is thus no serious dispute that, like the U.K. claims at issue in New Jersey, plaintiffs' claims should be tried in the United Kingdom.

Nonetheless, plaintiffs have filed a Response to the Court's Order to Show Cause ("Pls.' Br.") asserting that their claims should not be dismissed.  They offer no valid grounds distinguishing their claims from the other foreign claims already dismissed in New Jersey and by this Court.  Instead, they simply seek to be treated differently from everyone else.  In particular, plaintiffs raise three arguments.  First, they claim – in the teeth of the New Jersey courts' contrary holdings – that the United Kingdom is an inadequate forum because it does not provide a cause of action for loss of consortium to the spouse of a surviving plaintiff.  Second, rehashing arguments the Court has already rejected, plaintiffs claim that *forum non conveniens* dismissal is inappropriate because the relevant sources of proof in their cases are in the United States. Finally, plaintiffs suggest that if the Court does dismiss their claims under the doctrine of *forum non conveniens*, it should impose conditions on the dismissal – such as requiring a U.K. court to

943202v.1

conduct a jury trial – that are different from, and go far beyond, those imposed in the other foreign cases dismissed in this proceeding and by Judge Higbee in New Jersey.

Plaintiffs' arguments are without merit.  First, as numerous courts have held, the lack of a derivative cause of action for loss of consortium does not render a forum inadequate for *forum non conveniens* purposes.  Second, contrary to plaintiffs' assertions, the most relevant sources of proof in this case are in fact located in the U.K., not the United States; and (in any event) this Court has already decided that the private interest factors relevant to a *forum non conveniens* dismissal favor trial abroad.  Finally, this Court and the New Jersey courts have already imposed identical appropriate conditions in dismissing foreign claims, and there is no basis whatsoever for imposing a different and more advantageous set of conditions in plaintiffs' cases, thereby treating them differently from other identically-situated plaintiffs.  Further, the conditions plaintiffs propose would violate international comity by purporting to instruct a U.K. court to conduct an American-style jury trial, governed by the U.S. federal rules of civil procedure, in the United Kingdom.

## I.     THE UNITED KINGDOM IS AN ADEQUATE ALTERNATIVE FORUM.

Plaintiffs first assert that the U.K. is an inadequate forum because "the spouses of the Plaintiffs who have been injured by Vioxx have no right to recover under U.K. law for loss o[f] consortium . . . unless and until their spouse has died."  (Pls.' Br. at 3-4.)  This argument has been repeatedly rejected by federal and state courts, and it is wholly without merit.  Initially, under *forum non conveniens* law, there is **no** requirement that the law of the alternative forum be as favorable to plaintiffs as their chosen forum.  Rather, "it is well established that the adequacy of an alternate forum does not hinge on the possibility that it would subject the plaintiffs to laws less favorable to them."  *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1124 (S.D.N.Y. 1992); *see also, e.g.*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55 (1981).  As the

Certification of Nicholas Underhill attached to plaintiffs' own brief attests, there are multiple causes of action available in the U.K. under which plaintiffs can seek relief for their alleged injuries.  (*See* Certification of Nicholas Underhill ("Underhill Cert.") (attached to Pls.' Br. as Ex. G).)  And numerous courts have held that the United Kingdom provides an adequate forum for litigation of pharmaceutical product liability claims – including claims related to alleged injuries suffered as a result of ingesting Vioxx.  *See In re Vioxx Litig.*, 928 A.2d at 938-944; *Piper Aircraft*, 454 U.S. at 254-55; *Kerr v. Inamed Corp.*, No. 01-16357, 2002 U.S. App. LEXIS 24224, at *5 (9th Cir. Nov. 6, 2002); *Van Der Velde v. Philip Morris, Inc.*, No. 02 Civ. 783 (BSJ), 2004 U.S. Dist. LEXIS 246, at *7-8 (S.D.N.Y. Jan. 9, 2004); *In re Richardson-Merrell, Inc.*, 545 F. Supp. 1130, 1136-37 (S.D. Ohio 1982); *McCracken v. Eli Lilly & Co.*, 494 N.E.2d 1289, 1290 (Ind. Ct. App. 1986).

The lack of a loss of consortium action for surviving spouses does not render a U.K. forum inadequate.  To the contrary, this precise argument was soundly rejected in the New Jersey coordinated Vioxx proceedings on virtually identical facts.  There, a group of U.K. plaintiffs alleged, as the plaintiffs do here, that the U.K. was an inadequate forum "because it does not allow for a lack of consortium cause of action."  Mem. of Decision at 4.  Citing *Piper Aircraft*, the New Jersey court noted that "the absence of a specific cause of action does not itself render a forum inadequate," and observed that "[w]hile the U.K. does not allow" a loss of consortium cause of action, "it does not preclude the plaintiffs from remedies."  *Id.* (citing *Piper Aircraft*, 454 U.S. at 255 n.22).  The court then noted that "wrongful death and survivor actions are recognized" in the United Kingdom.  *Id.*; (*See also* Underhill Cert. ¶ 45.)  As a result, "the spouse of a plaintiff who died will be permitted to retain an action in the U.K. courts," and "[t]he surviving plaintiffs in death actions can bring their own action for damages before the court."

4

Mem. of Decision at 4.  Because "[a] regular lack of consortium claim is not a separate cause of action, but only a derivative claim," the court concluded, its absence "doesn't substantially deprive a plaintiff of [a] remedy." *Id.*

On appeal, the New Jersey Appellate Division specifically affirmed the trial court's ruling on this issue.  "[W]e are aware of no precedent," it stated, "holding that jurisdiction must be maintained in an inconvenient forum simply because loss of consortium claims would not be recognized by the alternative court." *In re Vioxx*, 928 A.2d at 941.  "Rather," the court continued, "in such circumstances, dismissal has been found to be warranted.  We deem it unreasonable to accord dispositive weight in a *forum non conveniens* analysis to such a derivative cause of action, regardless of the loss of a damages remedy.  Such tail-wagging cannot overcome the well-established principle governing forum determination in this context." *Id.* (internal citation omitted).  Other courts have reached the same conclusion.  *See, e.g.*, *Massaquoi v. Virgin Atl. Airways*, 945 F. Supp. 58, 61 (S.D.N.Y. 1996) (concluding that England was an adequate alternative forum for a personal injury claim, despite the fact that the plaintiff's husband and co-plaintiff could not recover for loss of consortium); *Bell v. British Telecom*, No. 95 Civ. 1972, 1995 WL 476684, at *2 (S.D.N.Y. Aug. 9, 1995) (holding that Scotland was an adequate alternative forum even though "there is no analogue under Scottish law to loss of consortium").

Moreover, as the Underhill Certification demonstrates, U.K. law entitles a plaintiff to recover the "care expenses" of persons "looking after" an injured plaintiff.  (Underhill Cert. ¶ 44.)  These expenses "can include the notional reasonable cost of gratuitous care from relatives or others."  (*Id.*); *see also Massaquoi*, 945 F. Supp. at 61 (noting that English law permits a plaintiff to recover expenses for a care-giver).  Accordingly, the spouses of surviving plaintiffs

943202v.1

are not in fact left without a means of recovery, and the U.K. is plainly an adequate forum for litigation of plaintiffs' claims.

## II.   THE LOCATION OF SOURCES OF PROOF DOES NOT REQUIRE TRIAL IN THE UNITED STATES.

Plaintiffs next contend that their cases should not be dismissed because "liability witnesses and evidence are located in the U.S. . . . under the Defendants' control and are not subject to the mandate of U.K. courts." (Pls.' Br. at 5.)  This argument in effect asks the Court to revisit the analysis of private interest factors it already undertook in the FNC Order.  There is no basis whatsoever for doing so:  with respect to the location of potentially relevant evidence, plaintiffs' cases are materially identical to those dismissed in the FNC Order.

Specifically, as was true in the Italian and French cases, plaintiffs were prescribed Vioxx abroad, ingested it abroad, suffered their alleged injuries there, and were treated there by foreign doctors.  (*See* FNC Order, slip op. at 9.)  As in those cases, "information relating to the Plaintiffs' individual medical histories, which is highly relevant in determining whether or not Vioxx caused the Plaintiffs' alleged injuries, and information relating to what the Plaintiffs and their doctors knew or should have known about Vioxx, which is relevant in determining whether or not Merck failed to warn, is also located abroad." (*Id.*)  The French and Italian plaintiffs – like plaintiffs here – argued that the "central focus of this litigation is the development of Vioxx in the United States," and pointed to "documents and witnesses relating to these issues . . . located in the United States." (*Id.*)  However, "the plethora of localized individual issues in these . . . cases" led the Court to "conclude that litigation of the Plaintiffs' claims in [their home countries] would be much more convenient." (*Id.* at 9-10.)

Plaintiffs offer ***no*** reason whatsoever to revisit this correct conclusion, and numerous other courts have reached the same conclusion in analogous cases.  *See, e.g.*, *Van Der Velde*,

2004 U.S. Dist. LEXIS 246, at *12 ("[A]lthough the Decedent's relatives are willing to travel to

the United States to testify at trial, Plaintiff exercises no control over Decedent's health providers

or non-family members who may have knowledge of Decedent's smoking history.  Therefore,

the ease of access to evidence weighs in favor of conducting this litigation in England.") (citation

omitted); *Doe v. Hyland Therapeutics*, 807 F. Supp. at 1125 (U.S. forum not appropriate for Irish

plaintiffs' claims in part because "[a]ll the evidence relating to the patients' medical history and

treatment is located in Ireland," as well as prescribing, "treating[,] and consulting physicians,

medical personnel, other health care providers such as hospitals and clinics, and experts who can

testify as to local medical community practices").  Plaintiffs' claims should therefore be

dismissed under the doctrine of *forum non conveniens* for the reasons set forth in the Court's

FNC Order.

## III.   NO ADDITIONAL CONDITIONS SHOULD BE IMPOSED ON DISMISSAL OF PLAINTIFFS' CLAIMS.

Finally, plaintiffs suggest that if their claims are dismissed, the Court should impose

additional conditions on dismissal beyond those it imposed in its FNC Order.  Specifically,

plaintiffs ask the Court to require Merck to agree:  (1) that "[t]he parties have a trial by jury" in

the U.K. (and that Merck "join the [p]laintiffs in requesting a trial by jury"); (2) that "the parties

may obtain evidence pursuant to the Federal Rules of Civil Procedure and be allowed to present

testimony at trial" in the form of "oral[,] video, and written depositions (including depositions

taken in prior cases);" and (3) that Merck will "identify, produce and authenticate all documents"

it has "previously produced, authenticated, listed or offered as an exhibit in a Vioxx case or trial

in the U.S."  (Pls.' Br., Proposed Order at 2.)

There is no basis for imposing these additional conditions, and the Court should not do so.

Initially, imposing these conditions would create an unnecessary and unwarranted disparity

between plaintiffs in these cases and the other foreign plaintiffs whose claims have been dismissed here and in New Jersey – including the U.K. plaintiffs who brought suit in New Jersey. In dismissing foreign claims on the grounds of *forum non conveniens*, this Court and the New Jersey court were careful to impose identical conditions on dismissal, ensuring that all foreign plaintiffs were treated equally by the U.S. courts.  (*See* FNC Order at 13); *see also* Mem. of Decision.  Plaintiffs themselves concede that these conditions are the "typical[]" conditions imposed on a *forum non conveniens* dismissal.  (Pls.' Br. at 7.)  Even if imposing plaintiffs' proposed additional conditions were appropriate, doing so would destroy this careful parity, giving plaintiffs the benefit of atypical, advantageous conditions, such as guaranteed jury trials in the U.K. and the guaranteed right to present at trial videotaped and written depositions from prior Vioxx trials in the United States.  (*See* Pls.' Br. at 8-9; *cf. id.* at 10-11 (explaining that the U.K. restricts jury trials in civil cases and "may or may not" allow testimony from other cases).) Plaintiffs have identified no reason why they should receive this kind of preferential treatment.

In any event, plaintiffs' proposed additional conditions are manifestly inappropriate because they offend international comity, essentially seeking to force U.K. courts to adopt U.S.-style trial procedures that contravene existing U.K. law.  Plaintiffs candidly admit that they seek the additional conditions because the U.K. does not grant jury trial "by right in all civil cases," and because U.K. procedure "differs from that of the U.S.," by (for example) prohibiting discovery depositions, requiring leave of court for *de bene esse* depositions, leaving to a court's discretion whether to allow introduction of videotaped or written testimony or testimony from cases in other jurisdictions, and restricting document discovery to requests for specifically identified documents.  (*See id.* at 10-11.)

But as other federal courts have recognized, *forum non conveniens* conditions that seek to undermine the considered policies of foreign forums are inappropriate.  In *Gross v. British Broadcasting Corp.*, 386 F.3d 224 (2d. Cir. 2004), for example, the Second Circuit reviewed a *forum non conveniens* dismissal that required the defendant, among other things, to waive its right under British law to seek costs and attorneys' fees if it prevailed, and to agree not to interfere with the plaintiffs' attempts to obtain a British lawyer on a contingency-fee basis.  *Id*. at 229.  The court noted that some commonly-imposed conditions of dismissal – such as requiring a defendant to accept jurisdiction in a foreign forum or to waive statute of limitations defenses – are appropriate because they involve "***personal*** defense[s]" that are "waivable at [a defendant's] will."  *Id*. at 234.  The conditions imposed by the district court, in contrast, were "troublesome," because they were "primarily institutional rather than personal in nature."  *Id*.  Rules related to fee-shifting and contingent fees, the court observed, "reflect policy judgments about the goals of [the British] legal system, the incentives for and against litigation, and the availability of representation in various circumstances."  *Id*.  And "[t]here is a point at which conditions cease to be a limitation on the defendant and become instead an unwarranted intrusion on the transferee forum's policies governing its judicial system."  *Id*. at 235.  "Principles of comity," the Court continued, "demand that we respect those policies."  *Id*.  The Court therefore "urge[d] the district courts to be cognizant of the prudential choices made by foreign nations and not to impose conditions on parties that may be viewed as having the effect of undermining the considered policies of the transferee forum."  *Id*.

That is precisely what plaintiffs ask the Court to do here.  The features of the U.K. legal system that plaintiffs seek to avoid – requiring parties to convince the court that a case is appropriate for jury trial, requiring leave of court before permitting *de bene esse* depositions or

943202v.1

the introduction of testimony from cases in other jurisdictions, and limiting document production to requests that specifically name the documents sought – all reflect considered policy judgments embedded in the U.K. legal system about the appropriateness of jury trials in civil cases, the suitability of certain kinds of evidence at trial, and the desirable scope of civil discovery.  While the United States has made different policy choices – for example, granting a presumptive right to jury trial in civil cases and permitting discovery requests for classes of documents – it would be inappropriate for a United States court to attempt to foist these choices onto a U.K. forum. These aspects of the U.K. judicial system are "primarily institutional rather than personal in nature," and attempting to evade them would be an "unwarranted intrusion on the transferee forum's policies governing its judicial system."  *Gross*, 386 F.3d at 234-35.

Perhaps for this reason, plaintiffs fail to identify a ***single case*** in which a U.S. court purported to require a foreign forum to conduct a jury trial, purported to tell a foreign forum what kind of evidence could be introduced at its trials, or purported to require a defendant simply to hand over to the plaintiffs all documents previously produced in any related U.S. litigation for use in foreign trials.  (*See* Pls.' Br., Proposed Order at 2.)  *Cf. Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1352-53 (1st Cir. 1992) (rejecting proposed conditions designed to bring "Turkish procedure . . . more in line with the procedures utilized in American courts," and noting that "[t]he case law is clear than an alternative forum ordinarily is not considered 'inadequate' merely because its courts afford different or less generous discovery procedures than are available under American rules"); *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 659 (S.D. Tex. 2003) ("[n]either discovery limitations nor the lack of a jury trial in a foreign forum makes that forum inadequate"); *Adamowicz v. Barclays Private Equity France, S.A.S.*, No. 05 Civ. 0961, 2006 WL 728394, at *3 (S.D.N.Y. Mar. 22, 2006) ("[t]he differing practices and procedures of

943202v.1

the French courts," including lack of jury trial, "do not render those courts unsuitable to hear this case").[2]

The cases plaintiffs do cite, involving *forum non conveniens* dismissals granted subject to a variety of conditions, are inapposite in other respects as well, and some of them actually support Merck's position.  As plaintiffs concede, the conditions imposed on a *forum non conveniens* dismissal fall within the discretion of the trial court.  (*See* Pls.' Br. at 6.)  Plaintiffs' cases therefore do not suggest that this Court is somehow ***required*** to impose additional conditions on dismissal, or that dismissal under the current conditions is improper.  To the contrary:  plaintiffs themselves cite at least one case – *Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir. 1990) – in which a court of appeals affirmed a *forum non conveniens* dismissal in favor of the U.K. that involved ***less*** stringent conditions than the ones this Court imposed in its FNC Order.  (*See* Pls.' Br. at 7.)  Further, in the one case plaintiffs cite involving a follow-on *forum non conveniens* dismissal entered in an MDL-related case after an initial *forum non conveniens* dismissal had already been granted, the follow-on court was careful to adopt the "exact procedures" for dismissal adopted in the initial dismissal order.  *Watson v. Merrell Dow*, 769 F.2d 354, 356 (6th Cir. 1985).  That is precisely what the Court should do here.  Plaintiffs' proposed additional conditions are inequitable and inappropriate, and the Court should decline to impose them.

---

[2]     In *EFCO Corp. v. Aluma Systems USA, Inc.*, 268 F.3d 601 (8th Cir. 2001), which plaintiffs cite, the parties' voluntary agreement to use discovery in another proceeding was not a court-imposed condition of dismissal.  *See EFCO Corp. v. Aluma Systems USA, Inc.*, 145 F. Supp. 2d 1040, 1047 (S.D. Iowa 2000).

11

## CONCLUSION

For the reasons stated above, plaintiffs' claims should be dismissed under the doctrine of *forum non conveniens*, under the same conditions imposed in the Court's FNC Order.


Dated:  August 28, 2008                    Respectfully submitted,


                                           /s/ Dorothy H. Wimberly
                                           Phillip A. Wittmann, 13625
                                           Dorothy H. Wimberly, 18509
                                           STONE PIGMAN WALTHER
                                           WITTMANN L.L.C.
                                           546 Carondelet Street
                                           New Orleans, Louisiana  70130
                                           Phone:  504-581-3200
                                           Fax:      504-581-3361

                                           Defendants' Liaison Counsel

                                           And

                                           John H. Beisner
                                           Jessica D. Miller
                                           Karl R. Thompson
                                           O'MELVENY & MYERS LLP
                                           1625 Eye Street NW
                                           Washington, DC 20006
                                           Phone:  202-383-5300
                                           Fax:      202-383-5414

                                           Attorneys for Merck & Co., Inc.

943202v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Reply Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 28th day of August, 2008.

/s/ *Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

943202v.1