

**FILED**

OCT 05 2006

Oct 5 2006
1:52PM

**Carol E. Higbee, P.J.Cv.**



**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE COMMITTEE ON OPINIONS**

CAROL E. HIGBEE, J.S.C.

1201 Bacharach Boulevard
Atlantic City, NJ 08401-4527
(609) 343-2190

## MEMORANDUM OF DECISION ON MOTION
### Pursuant to Rule 1:6-2(f)

*CASE:*  In re: VIOXX® Litigation

*DOCKET #:*  Case No. 619

*DATE:*  October 2, 2006

*MOTION:*  Defendant's Motion to Dismiss Plaintiffs Residing Outside of the United States on *Forum non Conveniens* Grounds

*ATTORNEYS:*  Charles Cohen, Esq. – Defendant Merck
James J. Pettit, Esq. – Plaintiff

Having carefully reviewed the papers submitted and any response filed, I have ruled on the above Motion as follows:

Merck brings this motion to dismiss the claims of all plaintiffs who reside in the United Kingdom. These plaintiffs have sued Defendant and its U.K. subsidiary, Merck Sharp and Dohme Ltd. ("MSD") in this Court claiming injuries related to their consumption of VIOXX®. Defendant seeks to dismiss Plaintiffs claims on *forum non conveniens* grounds. Through its brief and supporting certifications, Defendant contends that the U.K., not New Jersey, is the appropriate forum for Plaintiffs.

New Jersey Courts are permitted to decline jurisdiction under the doctrine of *forum non conveniens* if the "ends of justice" indicate that the plaintiff's choice of forum is inappropriate. Mowrey v. Duriron Co., Inc., 260 N.J. Super. 402, 409 (App. Div. 1992). In determining

🌳 *"The Judiciary of New Jersey is an equal Opportunity/Affirmative Action Employer"* 🌳

whether a plaintiff's choice of forum should be rejected as part of the "ends of justice," a serious inconvenience for a defendant is not enough; a transfer must also "not result in any significant hardship to plaintiffs." Id. (quoting Wangler v. Harvey, 41 N.J. 277, 286 (1963)). If there is no alternate forum, then the convenience of the parties becomes irrelevant, and the litigation cannot be dismissed on grounds of *forum non conveniens*. Mandell v. Bell Atlantic Nynex Mobile, 315 N.J. Super. 273, 280 (Law Div. 1997). If the plaintiffs will not suffer any significant hardship, then the defendant must establish that the selected forum is "demonstrably inappropriate." Mowrey, supra 260 N.J. Super. at 409. In determining whether a forum is demonstrably inappropriate, a court must look to a variety of public and private interest factors. First English Funding v. Aetna Life Ins. Co., 347 N.J.Super. 443.

### Alternative Forums

Prior to dismissing a case on the grounds of forum non conveniens, a court must be satisfied that another forum is available where relief can be granted for the plaintiff's claims. *See* Mandell, 315 N.J. Super at 280. The court, however, need not find that the alternative forum has law more favorable, or even equally as favorable, to the plaintiff. D'Agostino v. Johnson & Johnson, Inc., 115 N.J. 491, 496 (N.J. 1989) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 247-251, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)). The court need only find that the forum is available and adequate in order to meet this requirement.

Defendant asserts the U.K. provides an alternative and adequate forum for plaintiffs to litigate a pharmaceutical products liability claim. The U.K. permits pharmaceutical products liability claims and MSD, the company that Defendant Merck alleges marketed and sold the Vioxx plaintiff ingested, is amenable to service of process in the United Kingdom. Further,

*"The Judiciary of New Jersey is an equal Opportunity/Affirmative Action Employer"*

Defendant submits that it will be amenable to service of process in the U.K. and that this is sufficient to render the foreign jurisdiction available for the Plaintiffs to file their action.

Plaintiffs assert in response that the U.K. courts are not available or adequate to remedy the injuries suffered. Plaintiffs first contend that the "loser pays" system in the United Kingdom prevents VIOXX® plaintiffs from entering the court. Also, Plaintiffs assert that the inability to obtain a contingent fee agreement with an attorney forces a person attempting to bring suit to pay hourly rates. Finally, Plaintiffs assert that if forced to proceed in the U.K., loss of consortium will be lost as a cause of action and punitive damages will not be available as part of the remedy.

Ordinarily, courts will find that amenability to service of process in the foreign jurisdiction is sufficient to satisfy the alternative forum requirement. Piper, supra, 454 U.S. at 255 n.22. However, if the remedy offered by the other court is "unsatisfactory," mere amenability to process will not be sufficient. Id. (listing failure of the alternative forum to permit litigation of the subject matter of the lawsuit as an example of an unsatisfactory remedy). In the present matter, along with being amenable to service, Merck has agreed to satisfy any final judgment rendered by the U.K. court, not raise the statute of limitation as a defense for any claims not barred by the statute of limitations and pending in the United States, and will not act to prevent Plaintiffs from returning to this Court if the U.K. court declines to accept jurisdiction. Therefore, since Merck has agreed to waive these jurisdiction issues, the alternative venues are available to plaintiff.

Further, plaintiffs do not allege that bringing suit in the United Kingdom is impossible. Rather, it is asserted that if the plaintiffs do not prevail, that the costs would be unsustainably high due to the "loser pays" fee shifting system. Even if, however, this assertion is true, it does not deprive the plaintiffs of a remedy. Each claimant will be put on equal footing as, by rule, all litigants in the United Kingdom are subject to the loser pays system and if victorious, the

3

plaintiff will be permitted to recover for injuries sustained. Also, the plaintiffs are treated the same with regard to the lack of a contingent fee agreement. Contingent fee agreements are barred for *all* litigants in the United Kingdom. Therefore, the existence of the "loser pays" system and the prohibition of contingent fee arrangements are not sufficient to make the United Kingdom an unavailable or inadequate forum.[1] See Van Der Velde v. Philip Morris, Inc., 2004 U.S. Dist. LEXIS 246, *7-*8 (D.N.Y. 2004) (stating that the "[p]laintiff's complaints regarding contingency fees and the requirement that a losing party pay her opponent's fees do not concern the adequacy of available remedies" and therefore it is "illogical to exclude" as an alternative forum.).

Also, the absence of a specific cause of action does not itself render a forum inadequate. See Piper, supra, 454 U.S. at 255. Specifically, Plaintiff alleges that the U.K. is inadequate because it does not allow for a lack of consortium cause of action. While the U.K. does not allow this type of action, it does not preclude the plaintiffs from remedies. Further, Plaintiff submitted to this Court through the Certification of Michael Gerald that wrongful death and survivor actions are recognized. Therefore, the spouse of a plaintiff who died will be permitted to retain an action in the U.K. courts. The surviving plaintiffs in death actions can bring their own action for damages before the court. A regular lack of consortium claim is not a separate cause of action, but only a derivative claim and doesn't substantially deprive a plaintiff of remedy.

---

[1] Plaintiff also raises as an issue in this matter the failure of England to provide public funding for plaintiffs' claims and an inability to receive insurance coverage regarding the potential loses from fee shifting. This argument, however, only applies in this matter because of "the requirement that an unsuccessful litigant pay her opponent's attorney's fees and costs and because contingency fee arrangements are unavailable." Van Der Velde, 2004 U.S. Dist LEXIS 246, at *6 n.2. The inability of plaintiff to receive alternative forms of funding or insurance does not change the fact that the U.K. forum can provide a proper remedy for each plaintiff's injury. Therefore, since the U.K. court can provide a proper remedy, the forum is adequate under the forum non conveniens framework.

4

Finally, the assertion that punitive damages are not available in the U.K. does not render the forum inadequate. Punitive damages are "aimed at deterrence and retribution." <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519, 155 L. Ed. 2d 585, 600 (U.S. 2003) (citing <u>Cooper Industries, Inc. v. Leatherman Tool Group, Inc.</u>, 532 U.S. 424, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001)). By contrast, compensatory damages are those "intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." <u>State Farm Mut. Auto. Ins. Co.</u>, <u>supra</u>, 538 U.S. at 416, 123 S. Ct. at 1519, 155 L. Ed. 2d at 600 (U.S. 2003) (citing Restatement (Second) of Torts § 903, pp. 453-454 (1979)). Compensatory damages are available to plaintiffs in the U.K. courts. These damages, independent of punitive damages, are sufficient to render the available damage remedies in the foreign court as adequate. *See generally* <u>Leon v. Millon Air, Inc.</u>, 251 F.3d 1305, 1310 (11th Cir. 2001) (stating that "[t]he fact that punitive damages would be unavailable in [the foreign nation] was of no moment because the 'potential for a smaller damage award is not a basis for the denial' of a forum non conveniens motion").

Further, courts in the United States have found the United Kingdom to be an adequate and alternative forum on a variety of issues. <u>Pollux Holding, Ltd. v. Chase Manhattan Bank</u>, 329 F.3d 64, 75 (2d Cir. 2003) (finding England to be an adequate forum because defendants were amenable to process and the English courts permitted litigation of the subject matter of the lawsuit), <u>Murray v. British Broadcasting Corp.</u>, 81 F.3d 287, 292-93 (2d Cir. 1996) (finding that England was an adequate and alternative forum despite the lack of a contingency fee system), <u>Robinson v. TCI/US West Communs.</u>, 117 F.3d 900, 908 (5th Cir. 1997) (holding England to be an available forum). This Court agrees and finds the United Kingdom to be an adequate and alternative forum in this matter.

<u>Public and Private Interest Factors</u>

5

After determining that an alternative forum exists, the Court must consider whether public and private factors weigh in favor of dismissal. In <u>First English Funding v. Aetna Life Ins. Co.</u>, 347 N.J. Super 443, the Appellate Division listed various factors to consider. The court there stated that:

> The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) the possibility of viewing the premises; and (5) and all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest from having localized controversies decided at home; (3) the interest of having a trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws or the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

<u>Ibid</u>. (quoting <u>Mandell v. Bell Atl. Nynex Mobile</u>, 315 N.J. Super 273 (Law Div. 1997).

Further, the New Jersey Supreme Court in <u>D'Agostino v. Johnson & Johnson, Inc.</u>, 115 N.J. 491 (1989), noted that:

> The focus of these public-interest factors is on the existence of a factual nexus between the issues in the litigation and the forum selected by the plaintiff. Ordinarily, the type of factual nexus that would induce a court to retain jurisdiction would be manifested by a significant relationship between the issues in the case and the jurisdiction whose court was designated as the place for trial.

<u>Id</u>. at 495. While the court recognizes that generally a plaintiff's choice of forum is entitled to great deference, "the presumption in favor of plaintiffs' choice [of forum] is only a strong one where plaintiff is a resident who has chosen his home forum.... [A] non-resident's choice of forum is entitled to substantially less deference." <u>Mandell</u>, 315 <u>N.J.Super.</u> at 281-82. The <u>Mandell</u> court further stated:

> The purpose of the public interest factors is to look beyond the interests of the specific parties to any dispute and to determine on a broader societal level whether the action should be maintained here. In this regard, it is simply not enough that the plaintiff chooses this forum, it is essential that, looking at the

6

public interest considerations, there be a connection with the forum, a reason why it should in fairness to the citizens of this state be permitted to remain here.

Id. at 447.

Defendant asserts that the private interest factors favor dismissal primarily because most of the documents and witnesses relevant to Plaintiffs' claims are located in the U.K. The plaintiff, his employer, his family and his prescribing and treating doctors will be in the U.K. Further, Defendant argues that the location of the allegedly critical trial witnesses places them outside of the reach of this Court's compulsory powers. It is alleged that obtaining the videotaped testimony of each witness would involve an extended process including an intervention by the U.K. courts.

Plaintiffs respond that each of the documents and witnesses sought by defendant will be made available. Plaintiffs assert that medical records for each individual plaintiff will be available and that the testimony of the "vast majority" of physicians has not been demonstrated to be necessary by Defendant. For those that are necessary, Plaintiffs assert that they will make reasonable efforts to have the treating physician consent to attendance at videotaped depositions and to respond to U.K. subpoenas. Plaintiff further asserts that if videotaped deposition testimony is not sufficient, video-conference testimony is available. If the particular witness is unwilling to agree, Plaintiffs assert that he or she can be compelled to provide the requested testimony.

On the other side, plaintiffs will have similar problems with getting witnesses from the U.S. to court in the U.K. and getting documents authenticated, etc. In all of the cases the key witnesses plaintiffs need to prove liability are in the U.S. Merck, in fact, designed, tested and manufactured VIOXX® in New Jersey and plaintiffs allege Merck directed the worldwide distribution and marketing of VIOXX®, although it most likely it was a combination of decisions made in the U.S. and in foreign countries that governed the sale and marketing of

VIOXX®. However, the defendant also agrees to cooperate in making witnesses available in the U.K. In fact, video-conferencing and video depositions can work both ways.

Overall, as to the issues in these cases involving witnesses and evidence being located in the U.K. and in the U.S. this court finds that the burden on each side is balanced and that it will require cooperation and concerted effort by the courts in either country. There will be large, but not insurmountable problems in either location.

Defendant also assert that the public interest factors support dismissal on *forum non conveniens* grounds. Defendant relies heavily on the general interest of international comity in supporting its motion to this Court. Defendant argues that if this Court does not dismiss the claims of the U.K. Plaintiffs, then any decision this court renders will disrupt foreign regulatory judgments. Every country has its own regulatory system for the selling and marketing of drugs.

Any decision made by a foreign country's regulatory body regarding VIOXX® involved weighing the risks and benefits of the drug and determining what warnings, if any, were adequate. What is considered adequate may vary based upon cultural differences, including different health care system standards. The standards used in different countries will vary from the ones used in the United States. In the matter before this court it would be very difficult for a New Jersey jury to make adequate determinations regarding the appropriateness of warnings and the appropriate level of risk because medical practices, custom, usage, and other factors will differ in a foreign country. While the jury could be instructed on the practice of regulating drugs in the U.K., an American jury would likely still have difficulty evaluating whether a warning was reasonable and adequate in another country. Not only the regulations regarding medicines, but also the nature of the relationship between patient and doctor and pharmacist are all dependent on community cultural differences.

Defendants further argue that the U.K. has a strong interest in protecting its citizens and seeing that they are compensated for their injuries. Plaintiffs' respond by asserting that while the U.K. might have an interest in protecting it citizens, that New Jersey has a stronger interest in preventing its companies from marketing defective products and that the punitive damage structure available in this Court is necessary to help prevent defendant from continuing with its allegedly fraudulent practices.

It is absolutely true that New Jersey has an interest in preventing its resident companies from marketing defective products, *see* Gantes, 145 N.J. 478, 489 (stating that "[t]his Court has recognized generally that a purpose of the tort laws is to encourage reasonable conduct, and, conversely, to discourage conduct that creates an unreasonable risk of injury to others"), in this case. As of the date of this order, however, over fifteen-thousand cases have been filed by VIOXX® plaintiffs in New Jersey. The vast majority are U.S. citizens. Whether the U.K. plaintiffs remain in this Court or not, the New Jersey court system will have plenty of opportunity to deter Defendant from future unsavory conduct if Defendant is found to be liable regarding the allegations against it. The number of foreign plaintiffs that would be dismissed will not affect this. The U.K. Court, on the other hand, has a significant interest in addressing the injuries of its citizens and adjudicating matters regarding products regulated and marketed within its borders. Allowing a New Jersey jury to determine the appropriateness of standards set forth by the U.K. regulatory body will only risk imposing an American view upon the judgment of a foreign country. All drugs in <u>all</u> states in the U.S. are governed by the same regulations promulgated by the FDA.

In fact, by its very nature, lawsuits like this that involve a mix of important witnesses from within and outside of the U.S. will be much more difficult to manage than an action involving two states in the United States.

Another public interest factor is the burden placed on the New Jersey court system. While handling an enormous volume of cases is difficult, it is manageable where all parties are residents of the same country. It is much less costly and much easier to handle the litigation where only different states are involved. In fact, there have been no substantial difficulties in the coordinated litigation in New Jersey up to now based on the fact plaintiffs are from different states. That would not be true if the New Jersey Court had to address issues raised because plaintiffs are from the U.K. and from numerous other foreign countries, each of which would present a substantial burden on the court and exacerbate the administrative process the court is already overseeing. This court notes the Federal Judge who is also overseeing litigation that originated in federal courts in many different states also found it would be too much of a burden to allow actions filed by French and Italian residents to proceed in the U.S. rather than their own country. The burden on the State of New Jersey Courts is an unnecessary one since a foreign country's courts can do a better job of interpreting their own laws and protecting their citizens.

For the reasons set forth above, this court finds that in the interest of justice, the actions filed by plaintiffs from the United Kingdom are dismiss based on *forum non conveniens* with the protections that have been agreed upon by defendants to ensure plaintiffs have an adequate forum.

CAROL E. HIGBEE, J.S.C.

__XXXX__  Order is attached.

**FILED**

OCT 05 2006

By the Court: Carol E. Higbee, P.J.Cv.

| | |
|---|---|
| IN RE: VIOXX® LITIGATION | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>ATLANTIC COUNTY<br><br>CASE NO. 619<br><br>Civil Action<br><br>**ORDER** |

THIS MATTER being brought before the court on defendant's motion to dismiss the actions of United Kingdom plaintiffs, and the plaintiffs having filed opposition, and the court having considered all papers filed and the oral arguments of the parties, and for good cause shown;

IT IS ON THIS 5th day of Oct, 2006, ORDERED the complaints of the United Kingdom plaintiffs are hereby dismissed provided that:

1. The defendant submit to service of process and jurisdiction in the appropriate United Kingdom forums with respect to lawsuits relating to VIOXX®;

2. The defendant shall agree to satisfy any final judgment rendered by an U.K. forum relating to such claims;

3. The defendant will not, in raising any statute of limitations or similar defense in such forums, include the period that a suit, not barred by a statute of limitations in this country, was pending against it in a court of the United States;

4. The defendant will not act to prevent the plaintiffs from returning to this court if United Kingdom forums decline to accept jurisdiction, provided that an action is filed in those forums within 120 days of the order of dismissal.

_____
CAROL E. HIGBEE, P.J.Cv.

M00B742744