**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re: VIOXX | : | |
| | : | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION L |
| | : | |
| | : | JUDGE ELDON E. FALLON |
| | : | MAG. JUDGE KNOWLES |

THIS DOCUMENT RELATES TO:

| | |
|---|---|
| David Agard, et al., v. Merck & Co. | Case No. 2:05-cv-01089 |
| Glenn L. Dier, et al. v. Merck & Co. | Case No. 2:05-cv-01088 |
| Adnan Aljibory, et al. v. Merck & Co. | Case No. 2:05-cv-01090 |
| Rosemary Holobosky, et al. v. Merck & Co. | Case No. 2:05-cv-01091 |
| Marjorie Connolly, et al. v. Merck & Co. | Case No. 2:06-cv-02708 |
| Marilyn F. Core, et al. v. Merck & Co. | Case No. 2:05-cv-02583 |
| Carlo Devincentiis, et al. v. Merck & Co. | Case No. 2:05-cv-02297 |
| Kathleen Hoffner, et al. v. Merck & Co. | Case No. 2:06-cv-02238 |
| Robert D. Gates, et al. v. Merck & Co. | Case No. 2:05-cv-06221 |

AND TO ALL CASES

**PLAINTIFFS STEERING COMMITTEE'S RESPONSE TO THE AGARD PLAINTIFFS' MOTION TO VACATE OR MODIFY THE MASTER SETTLEMENT AGREEMENT, ETC.**

## I. INTRODUCTION

The Agard Plaintiff's Motion to Vacate or Modify the Master Settlement Agreement is much like Abbott & Costello's *Who's on First* but without the humor. The arguments presented by the Agard Plaintiffs are ridiculous, based upon false premises and, ultimately, specious. The Agard Plaintiffs acknowledge that this Court denied class action status to Vioxx personal injury claimants

in its November 22, 2006 Order & Reasons.[1] Nevertheless, the Agard Plaintiffs seek to "change the players around" by employing Rule 23 jurisprudence to challenge the non-class, private, individual settlements obtained through the Master Settlement Agreement ("MSA") and challenge other matters.[2] The disconnect is patent. Yet, the arguments presented by the Agard Plaintiffs' omnibus motion are dependent upon acceptance of this and other manifest errors.

The Agard Plaintiffs' motion seeks several forms of varied and different relief. First, the Agard Plaintiffs move to have this MDL Court recuse itself from acting as the Chief Administrator of the Master Settlement Agreement based upon a non-conflict, *i.e.*, the Court's continuing jurisdiction over the unsettled claimants remaining on the MDL docket. Second, the Agard Plaintiffs ask this Court to determine their class objection to the MSA, even though it is not a class settlement. Third, the Agard Plaintiffs seek extensions of time to present PTO No. 28 expert reports, even though they concede having retained an expert for this purpose; or, alternatively, ask that PTO No. 28 be modified to permit them to avoid the expense of having their expert prepare a report and

---

[1]*See In re Vioxx Products Liability Litigation*, 239 F.R.D. 450 (E.D.La. 2006)[hereafter "November 22, 2006 Order"].

[2]Costello: All I'm trying to find out is what's the guy's name on first base?

Abbott: No. What is on second base.

Costello: I'm not asking you who's on second.

Abbott: Who's on first.

Costello: One base at a time!

Abbott: Well, don't change the players around.

Costello: I'm not changing nobody!

Excerpt from Abbott & Costello's *Who's On First* available at http://www.americanrhetoric.com/speeches/abbott&costellowhosonfirst.htm.

to restrict Merck's use of such report at trial if it is ever produced. Fourth, the Agard Plaintiffs seek to vacate the stay on discovery imposed by PTO No. 30. And finally, after praising the "herculean" efforts of the PSC, the Agard Plaintiffs seek to obtain the PSC's trial package from the PSC free of any assessment by requesting the modification of PTO No. 37 to avoid such an obligation.

The Plaintiffs' Steering Committee (PSC) submits this response in opposition to each of the Agard Plaintiffs' requests for relief. None of the plaintiffs' arguments have merit. As discussed at length below, the motion should be denied.

## II. BACKGROUND FACTS

On November 9, 2007, Merck and Negotiating Plaintiff's Counsel ("NPC"), at the regularly scheduled status conference announced the MSA. The MSA is a private settlement agreement that was intended to resolve the pending or tolled (and certain previously tolled) Vioxx claims against Merck involving heart attacks, ischemic strokes and sudden cardiac deaths of those plaintiffs who wished to participate in the settlement. Under the MSA, those claims found to be ineligible claims and those persons who chose not to participate in the settlement were not dismissed but were to remain on the Court's active docket. Recognizing this artifact of the settlement and adjunct to the MSA, this Court entered several case management orders to address vital docket administration concerns that were anticipated for those Vioxx plaintiffs, like the Agard plaintiffs, whose cases would not be resolved by the settlement but would remain on the Court's docket for disposition. *See e.g.* PTO No. 28.

PTO No. 28 meets the realities of managing complex litigation such as this case. Throughout the bellwether trial proceedings, thousands of cases remained dormant while the MDL court supervised global discovery and presided over the bellwether trials. While this procedure allowed

the MDL to mature, those cases that are ineligible for the settlement or will not be participating in the Resolution Program must now be prepared for remand and trial. This Court recently provided insight into the reasoning for the order:

> [T]hese cases have been going on seven years in the states; four years in the MDL. We've had discovery. Thousands of depositions have taken place. To ask a claimant to submit a report that says they have a condition, and the condition is caused by Vioxx -- I'm not asking for a Daubert report; I'm not asking for even a witness report; I'm not asking for someone to come forward and say, we're going to call this doctor as a witness. But, for a plaintiff lawyer to have a case for four years and not have any access to a report that says this claimant's injury results from the taking of Vioxx, after seven years if you don't have that in your file, it's a problem, I think.

*In re Vioxx Products Liability Litigation*, MDL No. 1657, May 22, 2008 Status Conference Transcript at 60 (E.D.La. May 22, 2008). *See also In re Vioxx Products Liability Litigation*, 557 F.Supp.2d 741, 744 (E.D.La. May 30, 2008)[hereafter "Oldfather"]. PTO No. 28 accomplishes this feat by requiring immediate measures to preserve evidence, determine which cases are valid and supported at some minimum threshold level by a competent expert and to begin the necessary process of initiating case-specific discovery. Given the timing and circumstances under which the *Oldfather* order was entered, these measures were appropriate for purposes of completing the charge of this MDL and, remanding cases back to the transferor jurisdictions for final disposition consistent with *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach et al.*, 523 U.S. 26 (1998).

The "Agard Plaintiffs" comprise the several clients of Attorney Ronald R. Benjamin ("Benjamin") that have elected not to participate in the MSA.[3] *See* Agard Brf. at 1. Mr. Agard is

---

[3]The PSC understands the Agard Plaintiffs to be: David Agard, Glenn L. Dier, Adnan Aljibory, Rosemary Holobosky, Marjorie Connolly, Marilyn F. Core, Carlo Devincentiis, Kathleen Hoffner, and Robert D. Gates.

already known to this Court as he and other Benjamin clients filed an appeal from PTO No. 28 addressing similar issues. That appeal was dismissed without an opinion by the Fifth Circuit Court of Appeals. *See In re Vioxx Products Liability Litigation,* Case No. 07-31164 (5th Cir. March 28, 2008)(per curiam). Mr. Agard has provided a sworn affidavit that confirms he "ha[s] an expert witness who holds the opinion that my injuries were closely related to by ingestion of Vioxx." Agard Affid. ¶17. Thus, actual compliance with PTO No. 28 does not appear to be impossible for Mr. Agard. *Id.*, ¶41 (acknowledging his expert is "ready, willing and able to provide opinions attesting to the causal relationship between ingestion and injury."). Instead, he makes the nonsensical assertion that sub-class counsel should have been appointed for "subclasses within the entire class of litigants" for plaintiffs like himself, despite acknowledging that "this court refused to certify a class." *Id.*, ¶¶11, 19. Obviously, if no class has been certified, there can be no subclass. Curiouser and curiouser, Mr. Agard concludes that the MSA should have been vacated because it "failed to adhere to the prerequisites of Fed.R.Civ.Pr. 23." *Id.*, ¶3.

The Agard Plaintiffs' arguments are presented by their counsel, Mr. Benjamin. Mr. Benjamin's nefarious litigation strategies are known to the PSC who have witnessed his conduct in other MDLs.[4] In the *Diet Drug* litigation, Mr. Benjamin exhibited a pattern of studied indifference

---

[4]Mr. Benjamin is an adjudicated felon, having been convicted of Grand Larceny for selling horses that did not exist. *See* Schmitt, R.B., *Legal Anomaly: Trial Lawyer's Tactics are Unusual, But Not More So Than His Past*, WALL STREET JOURNAL, Sept. 23, 1998. On April 14, 1987, Mr. Benjamin was suspended from the practice of law in New York for withdrawing from representation of a client in a pending matter without obtaining court or client permission, for representing one client in a lawsuit against another client, for making a punitive damage claim which was "grossly excessive and could only serve to harass and intimidate the defendants" and for attempting to brow-beat a contingent fee client into paying fees in a case where Mr. Benjamin attained no recovery. *See In the matter of Ronald R. Benjamin*, 514 N.Y.S. 2d 526, 527-28 (N.Y.A.D. 3rd Dep't), *appeal denied*, 512 N.E.2d 542 (N.Y. 1987). Mr. Benjamin was (continued...)

to court orders that ultimately led to the dismissal of his federal *Diet Drug* cases and puts him in the position he finds himself here. The Third Circuit Court of Appeals opinion affirming that dismissal order succinctly summarized Mr. Benjamin's litigation conduct:

> Suffice it to say, appellants have been the victim of some bad lawyering by their trial counsel, Ronald R. Benjamin. Indeed, Benjamin's discovery abuses can be summarized as a parade of obstinance that ultimately cost his clients their day in court. The origin of Benjamin's discovery mischief dates back to October 18, 1999, when case-specific expert designations were due. Benjamin failed to honor this deadline. Instead, he objected to the need for disclosure before the District Court ruled on a related Daubert motion, citing the cost of obtaining experts.
>
> It is not necessary to burden this Opinion with a recounting of each and every subsequent instance of Benjamin's obstinance. In short, counsel had numerous opportunities to comply with the District Court's longstanding discovery order, yet stubbornly clung to his argument that he should not have to designate experts. Neither multiple express rejections of this already-rejected argument, nor threats of dismissal, ameliorated counsel's defiance to the discovery schedule. Indeed, Benjamin did not relent even when the District Court precluded counsel from submitting case-specific expert reports as a sanction for similar discovery failures in response to a related motion to dismiss by another defendant. Moreover, the expert designations were still not forthcoming even after the District Court decided many of the Daubert issues on June 28, 2000.

---

[4](...continued)
disbarred by the Supreme Court of the United States in an Order dated January 9, 1989. *See In the matter of Disbarment of Ronald R. Benjamin*, 488 U.S. 1000 (1989). On June 24, 1994, Mr. Benjamin was subject to censure in the New York judicial system for professional misconduct including an "attempt[] to mislead a trial court by asserting a specious res judicata or collateral estoppel defense" and "by inaccurately asserting in a sworn affidavit that... the parties had agreed among themselves to continue discovery...." *See In the matter of Ronald R. Benjamin*, 613 N.Y.S. 2d 960, 961 (N.Y.A.D. 3rd Dep't), *appeal dism'd*, 642 N.E.2d 327 (N.Y. 1994), *cert. denied*, 514 U.S. 1110 (1995). This censure precipitated reciprocal disciplinary sanctions in the District of Columbia Court of Appeals and in the United States District Court for the Northern District of New York. *See In re Ronald R. Benjamin*, 698 A.2d 434 (D.C. Ct. App. 1997); *In the matter of Ronald R. Benjamin*, 870 F. Supp. 41 (N.D.N.Y. 1994).

> On August 24, 2000, more than ten months after designations were due, the Special Discovery Master gave Benjamin yet another chance to do what he had, over many months, been ordered to do. Benjamin failed to seize this opportunity and the Special Master recommended dismissal as a sanction. *** Based on the foregoing, the District Court opted for dismissal and memorialized this conclusion in an order dated May 4, 2001.

*In re Diet Drugs*, 30 Fed.Appx. 27, 2002 WL 272351 at *1 (3rd Cir. Feb. 26, 2002).

The same obstinate behavior that justified sanctions in the *Diet Drug* litigation is being repeated here. Baseless arguments are presented by the Agard plaintiffs that have no legitimacy whatsoever. Each argument of the Agard Plaintiffs must be rejected.

## III. ARGUMENT

### A. Disqualification by the Court is Not Justified

The Agard Plaintiffs demand your Honor's resignation as Chief Administrator of the Settlement purportedly because the Court "is duty bound to exclude from compensation under the MSA the same injuries that are being pursued by plaintiffs in MDL 1657, and will have to rule on the viability of those injuries in the tort system." Agard Mtn at 3. This non-conflict is not a valid basis for disqualification under 28 U.S.C. §455.[5]

To begin, there is no conflict within the construct presented by the plaintiffs. This Court's role in the settlement is confined to only a few matters, as this Court identified:

---

[5]The Agard Plaintiffs fail to specify the grounds for disqualification other than to suggest that this Court's impartiality may be questioned regardless of any actual bias. *In re Faulkner*, 856 F.3d 721 (5th Cir. 1988) is cited for this non-controversial proposition. *Faulkner* evaluated a motion to disqualify under 28 U.S.C. §455, which the PSC presumes is the only basis for plaintiffs' motion. Since the Agard Plaintiffs failed to provide an affidavit or certificate of good faith that complies with 28 U.S.C. §144, that statute is presumably not intended to apply here. Given the plaintiffs' failure to meet the statute's prerequisites, it is now unavailable to them. *See Parker v. Board of Supervisors*, 270 Fed.Appx. 314, 316 (5th Cir. 2008).

> The Settlement Agreement expressly contemplates that this Court shall oversee various aspects of the administration of settlement proceedings, including appointing a Fee Allocation Committee, allocating a percentage of the settlement proceeds to a Common Benefit Fund, and modifying any provisions of the Settlement Agreement that are otherwise unenforceable. Accordingly, this Court has consistently exercised its inherent authority over the MDL proceedings in coordination with its express authority under the terms of the Settlement Agreement to ensure that the settlement proceedings move forward in a uniform and efficient manner.

*In re Vioxx Products Liability Litigation*, 2008 WL 4091672, *2 (E.D.La. Aug. 27, 2008)[Hereafter "August 27 Order"]. None of the Court's limited administrative responsibilities pertain to factual determinations involving the validity of the Agard plaintiff's claims. Because the Agard Plaintiffs' argument is premised upon this non-fact, theirs is a false conflict. As a matter of fact, the Court was not involved in a fairness hearing because as a private settlement, such a proceeding is not appropriate.

Further, there is no legal support for the Agard Plaintiff's position. Under §455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *Id.* The Agard plaintiffs obliquely assert that any ruling by this Court upholding the MSA is a disqualifying prejudice against those plaintiffs remaining on the MDL docket. That type of argument was rejected in *Liteky v. United States*, 510 U.S. 540, 552 (1994), where the Supreme Court held: 1) "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" and 2) "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Since judicial rulings by this Court can not give rise to any reasonable question of impartiality, there is no justification for the plaintiffs' motion. Nor does the Court's

oversight of the Settlement blemish its impartiality with regard to its duties overseeing the claims of the remaining litigants. *See, e.g., Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437 (2d Cir. 2005)(Magistrate judge found qualified to rule on motion to enforce a settlement that the judge had facilitated); *Proffitt v. Cornuke*, 2006 WL 650688, *4 (D.Colo. March 13, 2006)(Magistrate judge's participation in settlement negotiations did not disqualify him to rule on subsequent evidentiary motion).

Moreover, this Court will not likely preside at trial over the remaining cases on the MDL docket. Under *Lexecon, supra*, and 29 U.S.C. §1407, cases not originating in this district must be transferred back to their original forum for trial. Thus, the purported conflict involving this court's determination of the viability of the Agard plaintiffs' claims will not occur. Given the absence of a conflict, no reasonable person could conclude that this Court is not impartial.

This Court should not disqualify itself from administering the MSA.

**B. Rule 23 Jurisprudence is Not Applicable to the MSA Because There Is No Class Action Presented by the MSA**

The Agard Plaintiffs' tribute to Gertrude Stein – a class is a class is a class – is irrelevant.[6] The settlement offered by Merck to certain Vioxx claimants through the MSA was a private settlement that parented individual contracts for each Vioxx Eligible Claimant that enrolled in the program. The Agard Plaintiffs erroneously assert that the MSA is a class action. Whereas there are certain parallels between aggregate litigation and class actions, there are real distinctions too. Only by disregarding the glaring differences and obstinately adhering to their false refrain are the Agard Plaintiffs capable of arguing that the MSA cannot withstand judicial scrutiny under Rule 23.

[6]More appropriate is the quote that we attribute to Ernest Hemingway, "A rose is rose is a cigar."

Because the MSA is private settlement, *August 27 Order*, 2008 WL 4091672, *2, Rule 23 jurisprudence is inapposite.

The initial recitals to the MSA state: "The NPC and Merck have agreed to establish a pre-funded, structured private settlement program . . ." MSA, Recitals (E)(emphasis added). Because of the inherent difficulties in obtaining certification of a personal injury class action as a result of *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) and its progeny,[7] Merck never intended for the structure of its resolution program to implicate a class. The resolution program was designed to address Vioxx claimants suffering from myocardial infarctions, ischemic strokes and sudden cardiac death only. It was designed to do this through private channels, without reference to or need of formal judicial approval as would be the case for a class action. The resolution program was a voluntary program that required Eligible Claimants to affirmatively choose to enroll into the program in order to participate. Over 50,000 eligible claimants (approximately 98.4% of the registered claimants) have since enrolled in the settlement program. As a consequence, none of the due process concerns of a representative action attend the MSA, particularly because there are no future Vioxx claimants and virtually every eligible claimant that wanted to participate expressed their endorsement of the program by enrolling. Apart from *pro se* claimants, each Eligible Claimant enrolled in the program with the advice of counsel and with full knowledge of the contractual rights afforded them under the MSA; there were no representational issues.

In its August 27, 2008 Order, this Court determined that it had authority to examine the contingent fee contracts in the context of the global settlement. The Court reasoned that its equitable powers, inherent supervisory authority and express authority under the MSA authorized it to address

---

[7] *See e.g.*, November 22, 2006 Order, *supra.*

the reasonableness of plaintiffs' counsel's contingent fee contracts. *See August 27, 2008 Order*, 2008 WL 4091672 at *3. When determining its equitable powers in this limited context, the Court found that the Vioxx global settlement could be analyzed "as occurring in a quasi-class action." *Id.* at *4 (emphasis added). The finding of a "quasi-class action" in no way supports the Agard Plaintiffs' argument that the MSA, as a whole, represents a class action. Rather, the Court was focused solely upon the perceived problem of unreasonable contingent fee contracts unduely diminishing recoveries of Vioxx claimants in the context of this mass tort litigation. Indeed, all of the authority referenced in the Court's discussion regarding its equitable authority to administer the global settlement pertained exclusively to its fiduciary duty to oversee attorneys fees. *Id., citing by analogy* Fed.R.Civ.P. 23 (g)(1)(C)(iii)[sic.] & 23(h) (Rule 23(g)(1)(D) provides authority to issue an appointing order addressing attorneys fees and nontaxable costs similar to 23(h)); Manual for Complex Litigation (Fourth) §22.927 (Fed. Judicial Center 2004) (addressing Awarding and Allocating Attorney Fees) and *In re Zyprexa Products Liability Litigation*, 424 F.Supp.2d 488, 491 (E.D.N.Y. 2006) (recognizing that the "instant action is in the nature of a private agreement" it had characteristics of a class action that enabled the court to address attorneys fees under its equitable authority in an MDL litigation); *In re Guidant Corp. Implantable Defribilators Products Liability Litigation*, 2008 WL 682174 (D. Minn. March 7, 2008) (addressing Attorney Fee provision of private settlement agreement in an MDL litigation).

Understood, in context, the Court's contingent fee contract analysis offers no support for the Agard Plaintiffs' assertion that the settlement program must be considered as a class action that was obliged to have been vetted through a fairness hearing. Such an interpretation would inhibit and overly constrict parties engaged in MDL litigation to resolve their disputes and is contrary to

established policy favoring private settlements. *See Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1164 (5th Cir.1985) ("[P]ublic policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation."). Indeed, the Algard plaintiffs' approach would effectively abrogate the ruling in *Amchem*.

Nor is their any support for the Agard Plaintiff's fictitious argument that "their claims were extinguished without benefit of an adversarial process." Agard Brf. at 7. This statement is again incorrect. Since the settlement program was entirely voluntary, those claimants that did not enroll have the uninhibited right to litigate their claims. The Agard Plaintiffs may proceed to trial of their cases provided they meet certain procedural requirements, and their attorney abides by the lesson learned in *Diet Drugs*.

Accordingly, there is no reason to disturb the MSA.

### C. PTO 28 Should Not Be Modified

PTO No. 28 imposes several preservation requirements and calls for very basic information concerning usage, injury and causation for all plaintiffs and claimants that are either ineligible to participate in the settlement or will voluntarily opt out of the settlement. Those Plaintiffs and claimants obligated to comply with the discovery requirements of PTO No. 28 must produce pharmacy records, medical records, supplemental profile forms, answers to interrogatories and a Rule 26(a)(2) case specific expert report. *See* PTO No. 28 at paragraph (II)(A)(1)-(8).

Provided the circumstances under which PTO No. 28 was entered, the discovery obligations imposed by PTO No. 28 make administrative sense and are within the framework of Lone Pine orders that have been endorsed by the Fifth Circuit Court of Appeals. *See Oldfather Order, supra. See also Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 338 (5th Cir. 2000) (approving Lone Pine

order that required general discovery as well as expert affidavits supporting individual claims); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006) (approving Lone Pine order).

Nor does PTO No. 28 establish inflexible deadlines or fail to account for the interests of those plaintiffs and claimants that may experience compliance difficulties. Rather, PTO No. 28 grants a considerable time period for compliance, includes a built in cure period and provides the Court with discretion to grant additional time extensions upon a showing of good cause. PTO No. 28 allotted plaintiffs and claimants whose last name begins with the letters A through L nearly seven months to meet the above discovery obligations, see PTO No. 28 at paragraph (II)(C)(1), while those plaintiffs and claimants whose last names begin with the letters M through Z were allotted nearly nine months. Id. at paragraph (II)(C)(2). PTO No. 28 also provides a thirty day cure period before Merck may move for the dismissal of a claim for noncompliance with the discovery obligations. *Id.* at paragraph (II)(D). Once Merck moves for dismissal, plaintiffs and claimants have an additional thirty days to respond to the motion to dismiss. *Id.* Finally, in conformance with due process and *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976), those plaintiffs who are unable to meet the deadlines of PTO No. 28 may seek further relief and time extensions where appropriate upon a showing of good cause. *Id.* Accordingly, PTO No. 28 is tailored to ensure that all plaintiffs and claimants will have sufficient time to meet the discovery requirements imposed by the Court. Indeed, this Court has already extended these deadlines.

In challenging PTO No. 28, the Agard Plaintiffs mistakenly state that persons without "Eligible Events" as defined by the MSA §17.1.23 (myocardial infarctions or ischemic strokes), have "had their claims extinguished by the MSA." Agard Brf. at 4. To the contrary, PTO No. 28 recognized that those plaintiffs without MSA-compensable claims that were not participating in the

settlement would remain on the Court's active docket. The Court's order was merely a case management device intended to identify those claims that may ultimately proceed to trial.

The Agard Plaintiffs' arguments favoring modification of PTO No. 28 are just not credible. If as they say they have an expert willing to opine in their favor, after four years of litigation where 5 bellwether trials have assisted in maturing the claims and most of the other claims have been resolved, the Agard Plaintiffs should be willing to provide that expert's report. Additionally, uniquely applicable to Mr. Benjamin's established record of misrepresentations to various tribunals, which do not recommend a glowing endorsement for accepting the Agard Plaintiffs' request for an Attorney affirmation. And there is scant reason, much less "good cause" supplied by the Agard Plaintiffs to provide them an additional extensions of time.[8]

Now that the Agard Plaintiffs have affirmately chosen not to participate in the settlement program, they should be obliged to prepare their case for trial. Since the mandate to this Court by the Judicial Panel on Multidistrict Litigation was to "employ any number of pretrial techniques--such as establishing separate discovery and/or motion tracks--to efficiently manage this litigation," *In re Vioxx Products Liability Litigation*, 360 F.Supp.2d 1352, 1354 (J.P.M.L. 2005), it ill-behooves the Agard Plaintiffs to contend that the current discovery obligations are unexpected or unfair.[9]

---

[8]The Agard Plaintiffs' contention that the PSC's trial package was not accessible to them is unavailing. The trial package had been available to the Agard Plaintiffs well before they even filed their motion. *See In re Vioxx Products Liability Litigation*, MDL No. 1657, PTO No. 37 (Terms of Access to the PSC Trial Package) (E.D.La. May 20, 2008).

[9]The Agard Plaintiffs' request to vacate the stay imposed by PTO No. 30 on the grounds that a long stay amounts to self-transfer is baseless. PTO No. 30 explains that the stay was entered to allow the parties and the Court "sufficient time to comprehend the Resolution

(continued...)

**D. PTO No. 37 Should Not Be Modified**

The Agard Plaintiffs recognize that the PSC has engaged in "herculean" efforts throughout the course of this litigation. They also acknowledge that the PSC is entitled to an award of 8% of any recovery in this litigation consistent with *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977). Yet, when this Court allowed an 8% assessment in PTO No. 37 for access to the PSC's trial package, they demur. Their argument is specious.

First, the Agard Plaintiffs lack standing to make this argument. They are not aggrieved by the order. To have standing to challenge a district court's ruling one must be an aggrieved party. *See Ward v. Santa Fe Independent School District*, 393 F.3d 599, 603 (5th Cir. 2004). By their own admission, the Agard Plaintiffs are not effected by the order. They state: "The issue of whether or not such contract can be required for the trial package prepared by the PSC is not before the Court since the trial package is not being sought." Agard Brf. at 13 n.4. Since they are not seeking the trial package, the Agard's motion is baseless.

Also, the PSC spent thousands of hours compiling the trial package. Their efforts are worthy of protection from incipient free-riders. An assessment along the lines of PTO No. 37 is entirely consistent with MDL practice. *See Florida Everglades, supra. See also In re Vioxx Products Liability Litigation*, MDL No. 1657, PTO No. 19 (E.D.La. Aug. 4, 2005).

---

[9](...continued)
Program". The PSC is certain that this Court will announce when it is an appropriate time to lift the stay. The PSC is also certain that the Agard Plaintiffs have not provided good cause, as required by PTO No. 30, to request a lifting of the stay. In particular, the Agard Plaintiffs unwillingness to comply with PTO No. 28 evidences an inability on their part to proceed to trial. Lifting the stay on discovery, prior to any good faith showing on the part of the Agard plaintiffs that they are ready to proceed, is fraught with peril.

Finally, the PSC offers this alternative to the Agard Plaintiffs. The PSC maintains a document depository on behalf of all MDL plaintiffs. Within the depository are all of the documents produced by Merck and other third parties, deposition transcripts, and more. The depository has been and remains available to MDL litigants such as the Agard Plaintiffs. Plaintiffs' Liaison confirmed this fact at the May 22, 2008 Status Conference:

> As the Court is well aware, there have been individuals that were pursuing other injury claims, and they have come to the Court over the course of these years that this MDL has been going on, and the PSC has made available to them the depository.
>
> ***
>
> So we have not -- the PSC did not ignore the other injury claims out there. We fought to protect those claims, but we did think that the lawyers -- we've made it very clear the claims that we felt obligate to pursue, and we've made that clear to the plaintiff's lawyers and provided them access and materials and discovery to pursue to the other claims if they saw fit.

May 22, 2008 Hearing Transcript at 67-68. The Agard Plaintiffs may inspect and photocopy at their expense any non-work product document available in the depository consistent with this Court's other pretrial orders but without the obligation imposed by PTO No. 37.

This proposal avoids any entanglement with PTO No. 37. The Agard plaintiffs' motion regarding PTO No. 37 may be denied as moot.

## IV. CONCLUSION

For all the reasons discussed above, the motion of the Agard Plaintiffs should be denied.

Respectfully submitted,

**PLAINTIFFS' STEERING COMMITTEE**

Date: September 15, 2008

By: /s/ Leonard A. Davis

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
**PLAINTIFFS' LIAISON COUNSEL**

Andy D. Birchfield, Jr., Esquire
Leigh O'Dell, Esquire
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
234 Commerce Street
Montgomery, AL 36103-4160
(800) 898-2034 (telephone)
(334) 954-7555 (telecopier)
**Co-Lead Counsel**

Christopher A. Seeger, Esquire
SEEGER WEISS
One William Street
New York, NY 10004
(212) 584-0700 (telephone)
(212) 584-0799 (telecopier)
**Co-Lead Counsel**

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court, P.O. Box 1190
Alexandria, LA 71301-1190
(318) 487-9874 (telephone)
(318) 561-2591 (telecopier)

Gerald E. Meunier, Esquire
GAINSBURGH, BENJAMIN, DAVID, MEUNIER & WARSHAUER, L.L.C.
Energy Centre
1100 Poydras Street, Ste. 2800
New Orleans, LA 70163
(504) 522-2304 (telephone)
(504) 528-9973 (fax)

Troy Rafferty, Esquire
LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, PA
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
(850) 435-7000 (telephone)
(850) 497-7059 (telecopier)

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (telecopier)

Thomas R. Kline, Esquire
Shanin Specter, Esquire
David J. Caputo, Esquire
Lisa S. Dagostino, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 (telephone)
(215) 772-1371 (telecopier)

Christopher V. Tisi, Esquire
ASHCRAFT & GEREL
2000 L Street, N.W., Suite 400
Washington, DC 20036-4914
(202) 783-6400 (telephone)
(307) 733-0028 (telecopier)

Arnold Levin, Esquire **(on brief)**
Fred S. Longer, Esquire **(on brief)**
Matthew C. Gaughan, Esquire
LEVIN, FISHBONE, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (telephone)
(215) 592-4663 (telecopier)

Shelly A. Sanford, Esquire
Sanford Pinedo LLP
2016 Bissonnet Street
Houston, Texas 77005
(713) 524-6677 (telephone)
(713) 524-6611 (telecopier)

Drew Ranier, Esquire
RANIER, GAYLE & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337)494-7171 (telephone)
(337) 494-7218 (telecopier)

Mark Robinson, Esquire
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive
7th Floor
Newport Beach, CA 92660
(949) 720-1288 (telephone)
(949) 720-1292 (telecopier)

**PLAINTIFFS' STEERING COMMITTEE**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 15th day of September, 2008.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
ldavis@hhkc.com