UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: VIOXX                                    *
    Products Liability Litigation          *
                                           *
This Document Relates to:                       *      MDL No. 1657
                                           *
    David Agard et al. v. Merck & Co., Inc., 2:05-  *  SECTION L
    CV-1089,                                *
                                           *      JUDGE ELDON E. FALLON
    Glenn L. Dier et al. v. Merck & Co., Inc.,  *
    2:05-CV-1088,                           *      MAGISTRATE JUDGE
                                           *      KNOWLES
    Adnan Aljibory et al. v. Merck & Co., Inc.,  *
    2:05-CV-1090,                           *
                                           *
    Rosemary Holobosky et al. v. Merck & Co.,  *
    Inc., 2:05-CV-1091,                     *
                                           *
    Marjorie Connolly et al. v. Merck & Co., Inc.,  *
    2:06-CV-2708,                           *
                                           *
    Richard Core v. Merck & Co., Inc., 2:05-CV-  *
    2583,                                   *
                                           *
    Carlo Devincentiis et al. v. Merck & Co., Inc.,  *
    2:05-CV-2297,                           *
                                           *
    Kathleen Hoffner et al. v. Merck & Co., Inc.,  *
    2:06-CV-2238,                           *
                                           *
        &   *
                                           *
    Robert D. Gates et al. v. Merck & Co., Inc.,  *
    2:05-CV-6221.                           *
                                           *

* * * * * * * * * * * * * * * * * * * * * * * * * * *

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................................... 1

ARGUMENT ...................................................................................................................... 6

I.      THE COURT SHOULD NOT RESIGN ITS ROLE IN IMPLEMENTING THE MASTER SETTLEMENT AGREEMENT ................................................................... 8

II.    THE SETTLEMENT IS NOT A DE FACTO CLASS SETTLEMENT AND PLAINTIFFS' ARGUMENTS FOR ITS VACATUR THUS FAIL.............................. 11

III.   THE COURT SHOULD NOT ALTER THE REQUIREMENTS OF PTO 28 .............. 14

      A.      Plaintiffs' Request To Satisfy PTO 28's Case-Specific Discovery Requirement By Alternative Means Is A Motion For Reconsideration That Should Be Denied ............................................................................................. 15

      B.      Plaintiffs' Alternative Request For An Extension Of Time Should Be Denied ................................................................................................................ 19

IV.    THE COURT SHOULD NOT LIFT THE STAY AT THIS TIME.............................. 21

CONCLUSION ................................................................................................................. 22

944958v.1

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acuna v. Brown & Root, Inc.*,
200 F.3d 335 (5th Cir. 2000) ......................................................................... 4, 18

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ....................................................................................... 12, 13

*Castano v. American Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ................................................................................. 12

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
762 F.2d 464 (5th Cir. 1985) ............................................................................... 15

*Evans v. Jeff D.*,
475 U.S. 717 (1986) ............................................................................................. 11

*Ford v. Elsbury*,
32 F.3d 931 (5th Cir. 1994) ................................................................................. 16

*Freeport-McMoran Sulphur L.L.C. v. Mike Mullen Energy Equip. Res., Inc.*,
No. 03-1496, 2004 U.S. Dist. LEXIS 12183 (E.D. La. June 30, 2004) ................ 16

*Georgine v. Amchem Prods., Inc.*,
83 F.3d 610 (3d Cir. 1996) .................................................................................. 12

*In re Air Crash Disaster at JFK Int'l Airport*,
687 F.2d 626 (2d Cir. 1982) ................................................................................ 11

*In re Asbestos Litig.*,
90 F.3d 963 (5th Cir. 1996) ............................................................................... 8, 9

*In re Faulkner*,
856 F.2d 716 (5th Cir. 1988) ............................................................................. 8, 9

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................... 11

*In re Vioxx Prods. Liab. Litig.*,
239 F.R.D. 450 (E.D. La. 2006) .......................................................................... 13

*In re Zyprexa Prods. Liab. Litig.*,
433 F. Supp. 2d 268 (E.D.N.Y. 2006) ................................................................. 12

944958v.1

### TABLE OF AUTHORITIES
(continued)

**Page**

*IQ Prods. Co. v. Pennzoil Prods. Co.*,
    305 F.3d 368 (5th Cir. 2002)............................................................................... 8

*Lavespere v. Niagara Mach. & Tool Works, Inc.*,
    910 F.2d 167 (5th Cir. 1990)............................................................................. 16

*Lore v. Lone Pine Corp.*,
    No. L-33606, 1986 WL 637507 (N.J. Super. Nov. 18, 1986) ............................. 4

*Motiva Enters. LLC v. Wegmann*,
    No. 00-3096, 2001 U.S. Dist. LEXIS 3049 (E.D. La. Mar. 12, 2001)................... 16

*Omega Eng'g, Inc. v. Omega, S.A.*,
    432 F.3d 437 (2d Cir. 2005)............................................................................ 8, 9

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ........................................................................................ 9

*Sierra Club, Lone Star Chapter v. FDIC*,
    992 F.2d 545 (5th Cir. 1993)........................................................................... 15

**Rules**

Fed. R. Civ. P. 6(b)(1)(A) ..................................................................................... 20

Fed. R. Civ. P. 11(b)(3) ........................................................................................ 17

Fed. R. Civ. P. 60(b) ............................................................................................ 17

Fed. R. Civ. P. 60(c)(1).......................................................................................... 18

Fed. R. Evid. 408 ................................................................................................. 10

**Statutes**

28 U.S.C. § 455(a)................................................................................................. 8

**Other**

1 Howard C. Joyce, *A Treatise on the Law Relating to Injunctions* (1909) ................................ 15

7A Charles Alan Wright et al., *Federal Practice and Procedure* (3d ed. 2005) ........................ 13

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page**

*Black's Law Dictionary* 800 (Bryan A. Garner ed., 8th ed. 2004)............................................. 15

Deborah R. Hensler, *Role of Multi-Districting in Mass Tort Litigation*, 31 Seton Hall L. Rev. 883 (2001)...................................................................................................................... 12

*Second (Propulsid) MDL Program Term Sheet*........................................................................ 12

**DEFENDANT MERCK & CO., INC.'S CORRECTED OPPOSITION
TO PLAINTIFFS' MOTION FOR THE COURT'S RESIGNATION AS CHIEF
ADMINISTRATOR OF THE MASTER SETTLEMENT AGREEMENT, ETC.**

Plaintiffs' motion recycles meritless arguments that have already failed both in this Court and before the Fifth Circuit. As set forth below, no further extensions or other relief from the requirements of Pretrial Order No. 28 are proper at this time. Nor would it be proper at this very late date to make any modification to the Master Settlement Agreement ("MSA"), a private settlement as to which none of the plaintiffs is even a party. Plaintiffs' transparent goal is to maintain the viability of their claims without doing any of the work that, absent these coordinated mass tort proceedings, they would have been required to do long ago. There is no basis in law or common sense to grant plaintiffs' request for relief, and their motion should thus be denied.

## BACKGROUND

Plaintiffs are clients of Ronald Benjamin, who represents these and one other client against Merck in cases presently pending in this Court. Plaintiffs' cases were each transferred for coordinated pretrial proceedings to this Court at various times in 2005 and 2006 from various federal district courts in the State of New York. Plaintiffs allege that they sustained injuries as a result of their use of Vioxx®, a nonsteroidal anti-inflammatory drug produced by Merck & Co., Inc. ("Merck") and available for sale from 1999 until its withdrawal in 2004. These cases are thus each part of the *In re Vioxx Products Liability Litigation* proceeding.

The instant motion focuses largely on the MSA, an accord reached between Merck and the Negotiating Plaintiffs' Committee in this multidistrict litigation on November 9, 2007. That agreement invited litigants who had sued Merck alleging that Vioxx had caused them certain types of injuries to settle their claims. Eligible claims, as defined in the agreement, included

myocardial infarctions, sudden cardiac death, and strokes.[1]  (*See* Settlement Agreement ¶ 17.1.22, Nov. 9, 2007.)

The same day, this Court issued Pretrial Order No. 28 ("PTO 28"), which required each litigant not participating in the settlement to submit relevant medical and pharmacy records, a plaintiff profile form, medical authorizations, answers to interrogatories, and a Rule 26(a)(2) case-specific expert report linking the plaintiff's alleged injuries to Vioxx.  (*See* PTO 28 at 3-4, Nov. 9, 2007.)  The order directed compliance by plaintiffs with last names starting with letters A through L by May 1, 2008, and by plaintiffs with last names starting with letters M through Z by July 1, 2008.  (*Id.* at 4.)

Plaintiffs' challenge to the MSA began in December of 2007.[2]  Less than a month after the settlement was announced and PTO 28 was entered, and without any objection first raised in this Court, plaintiffs filed a notice of appeal.  (Notice of Appeal at 1, Doc. 13,075, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Dec. 10, 2007).)  Because neither the settlement nor PTO 28 was a final judgment, and because no other basis for an appeal existed, Merck moved the Court of Appeals to dismiss the appeal.  (Mot. to Dismiss for Lack of Appellate Jurisdiction, *Agard v. Merck & Co., Inc.*, No. 07-31164 (5th Cir. Jan. 10, 2008) (attached as Ex. 1).)  Plaintiffs opposed the motion.  (Appellants' Opp. to Separate Mots. of Appellee Merck & Co., and Pls.' Steering Comm. Seeking to Dismiss the Instant Appeal of PTO 28 Entered in Aid

---

[1]   Mr. Agard alleges that he suffered from a transient ischemic attack, which is not eligible under the MSA, and a stroke, which may be.  (Aff. of Pl. in Supp. of His Mot. to Declare the Master Settlement Agreement Null, Void and Unenforceable or Modify the Same, to Vacate the Injury Definitions in PTO 28, and to Modify the Expert Opinion Proof Required ¶¶ 21, 30, 31, June 30, 2008.)  Plaintiffs' motion does not attach affidavits from the other plaintiffs; nor does the motion expressly set forth the injuries they allege.  The thrust of the motion suggests, however, that each plaintiff would allege an injury not covered by the MSA.

[2]   The plaintiffs who sought appeal in December 2007 did not include all of the plaintiffs who bring the instant motion.  Nonetheless, the appeal involved the same principal plaintiff, David Agard, and all of the appealing plaintiffs were represented by Ronald Benjamin, the same lawyer who represents the plaintiffs bringing the instant motion.

944958v.1

of a "Master Settlement Agreement" Between the Movants in the Multi-District Product Liability Litigation Below, *Agard v. Merck & Co., Inc.*, No. 07-31164 (5th Cir. Jan. 28, 2008) ("MTD Opp.") (attached as Ex. 2).)  In their opposition, plaintiffs argued, as they do here, that the MSA effectively "extinguishes valuable claims that would be cognizable under state tort law" and that the demands set forth in PTO 28 would "inevitably result in dismissal of thousands of claims pending in MDL 1657."  (*Id.* at 2, 3.)  On these grounds, they argued that the combined effect of the MSA and PTO 28 operated as a final judgment.  (*Id.* at 4.)  Alternatively, they invited the Court of Appeals to treat their appeal as a petition for mandamus on the grounds that, as they again argue here, the MSA is really a class settlement and should have been subject to the strictures of Rule 23.  (*Id.* at 14.)  The Fifth Circuit dismissed the appeal without an opinion. (Order at 2, *Agard v. Merck & Co., Inc.*, No. 07-31164 (5th Cir. Mar. 28, 2008) (per curiam) (attached as Ex. 3).)

Shortly thereafter, counsel for certain plaintiffs in Kentucky and Indiana filed a motion requesting modification or suspension of PTO 28.  (Certain Pls.' and Their Counsel's Emergency Mot. for Modification and/or Suspension of Pretrial Order No. 28 and Request for Expedited Telephonic Hearing, Doc. 14,157, *In re Vioxx Prods Liab. Litig.*, MDL No. 1657 (E.D. La. Apr. 17, 2008) ("Kentucky Mot.") (attached as Ex. 4).)  Like the Benjamin plaintiffs here, the Kentucky plaintiffs contended that PTO 28 was premature as to plaintiffs alleging injuries not covered by the MSA because "the [Plaintiffs' Steering Committee] has not conducted any discovery or recruited any general causation experts regarding" excluded injuries.  (*Id.* at 2.)[3] Also like plaintiffs here, the Kentucky plaintiffs argued that PTO 28 was entered with "no prior notice of any kind to" lawyers other than "those counsel involved for the Defendants and for the

---

[3]      The Kentucky plaintiffs also argued that claimants deciding not to participate in the MSA despite having alleged injuries covered by it should have more time than PTO 28 allowed.  (Kentucky Mot. at 2-3.)

-3-

Plaintiffs as part of the Negotiating Plaintiffs' Committee" and that the order was "unfair and unilaterally slanted in favor of Merck, both in general and in specific application." (*Id.* at 3.) They argued that PTO 28 required too much discovery in too short a time period, a task that was "impossible" and would "prevent any case ineligible for the Resolution Program from being prosecuted." (*Id.*) Accordingly, they requested indefinite suspension of PTO 28. (*Id.* at 4.)

This Court rejected that request. It began by explaining that PTO 28 is a "type of pre-trial order" that is "commonly known as a *Lone Pine* order." (Order & Reasons at 3, Doc. 14,567, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. May 30, 2008) ("May 30 Order") (citing *Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 WL 637507 (N.J. Super. Nov. 18, 1986)).) It noted that "*Lone Pine* orders have been routinely used by courts to manage mass tort cases" and serve "to identify and cull potentially meritless claims and streamline litigation." (*Id.* (citations and internal quotation marks omitted).) The Court further explained that *Lone Pine* orders are not particularly onerous, in light of the fact that they only require "'that information that plaintiffs should have had before filing their claims pursuant to Fed. R. Civ. P. 11(b)(3).'" (*Id.* at 4 (quoting *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000)).)

Turning to PTO 28, the Court rejected the Kentucky plaintiffs' arguments. It briefly summarized the massive amount of work accomplished to date in this MDL proceeding. It pointed to the document depository and Merck's production of 22 million pages of documents; to the hundreds of depositions and one thousand pretrial motion rulings; and to monthly status reports and six bellwether trials. (*Id.* at 5.) The Court further explained that the Plaintiffs' Steering Committee's discovery "was not limited" to myocardial infarctions; "rather they conducted general discovery on the effects Vioxx may or may not have on individuals." (*Id.*) In light of the extensive work already performed, the Court concluded that "it is not too much to ask

-4-

a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury," particularly since it was "not requiring that Plaintiffs provide expert reports sufficient to survive a *Daubert* challenge or even provide an expert who will testify at trial," but only the "minimal showing consistent with Rule 26 that there is some kind of scientific basis that Vioxx could cause the alleged injury." (*Id.* at 5-6.)

Notwithstanding its well reasoned conclusion, and in an effort "to ensure that all Plaintiffs will have a fair opportunity to comply with this provision of PTO 28," the Court nonetheless extended deadlines for case reports to July 1, 2008 for A-L plaintiffs and to August 1, 2008 for M-Z plaintiffs. (*Id.* at 6-7.)

One month later – and the day before each of the plaintiffs' PTO 28 filings were due under the extended deadline – the Benjamin plaintiffs filed the instant motion. The basic theme of plaintiffs' submission echoes the Kentucky plaintiffs' arguments: PTO 28's requirements are too burdensome, and the time allowed for their fulfillment too short. The Benjamin plaintiffs thus seek yet another extension, this time until September 30, 2008 for A-L plaintiffs and to October 31, 2008 for M-Z plaintiffs. (Pls.' Mot. to to [*sic*] Vacate or Modify the Master Settlement Agreement, and Pre-Trial Order No. 28, and to Extend Time to Submit Expert Certificate of Causation and/or to Preclude Merck from Using the Expert Certificate of Causation and From Using to Cross-Examine Experts at Trial at 2 ("Mot.").)

Plaintiffs' motion makes several arguments: *first,* that the Court has a conflict of interest and must resign from its role in implementing the settlement; *second,* that the MSA is void because it is a class settlement that fails the requirements of Rule 23; *third,* that plaintiffs should be permitted to proceed on the basis of attorney affidavits or general causation reports rather than the case-specific reports required by PTO 28; *fourth,* that the Court should vacate the stay and

permit plaintiffs' cases to proceed to trial; and *fifth,* that the Court should modify Pretrial Order 37 to permit plaintiffs' counsel access to the document depository.  (*See generally* Pls.' Mem. of Ps. & As. in Supp. of Their Mot. for the Court's Resignation as Chief Admin. of the Master Settlement Agreement, to Vacate the Master Settlement Agreement, to Modify and Grant an Extension of Time as to Pre-Trial Order Nos. 28 and to Vacate PTO 37, and Grant Other Relief Requested Therein ("Mem.").)

## ARGUMENT

Plaintiffs' motion is baseless and should be denied for multiple reasons.

*First,* the Court's resignation of its role in the settlement program is unwarranted.  Under basic conflict-of-interest principles, no basis for resignation exists here.  Courts have directly addressed arguments that a judge's involvement in approving a settlement should require his recusal in related cases and rejected them.  Here, the Court's role in the settlement involves performing – at the request of the parties – certain limited functions that are both appropriate and ancillary to its role in presiding over the MDL.  No conflict or appearance of impropriety is present under those circumstances.  Furthermore, plaintiffs cite no law or standard supporting or even contemplating a request that a federal judge resign as administrator of a private settlement, and defendants know of none.

*Second,* the settlement does not have to satisfy the requirements of Rule 23.  The settlement is not a class settlement.  The chief danger posed by a class settlement, and the reason Rule 23 must be applied to such settlements, is that a class settlement is binding on class members by default.  There is thus a real risk that many class members will have no real opportunity to opt out of a settlement that extinguishes their claims.  That risk simply is not presented by an opt-in settlement.  And plaintiffs lack standing to make the arguments they

-6-

944958v.1

attempt to raise to the contrary – that the settlement deprives litigants of lawyers and effectively extinguishes excluded claims – because these plaintiffs have a lawyer and their claims are not extinguished.

**Third,** the Court should not alter the requirements of PTO 28.  The Court has already rejected similar arguments advanced by the Kentucky plaintiffs.  Those plaintiffs argued, as plaintiffs do here, that PTO 28's discovery requirements are burdensome, one-sided, and on too short a deadline.  The Court rejected those arguments because "at this advanced stage of the litigation, it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury."  (May 30 Order at 5.)  At this still more advanced stage of the litigation, it is even less unreasonable to ask the same.  Plaintiffs' requests to submit something less than what PTO 28 requires, or in the alternative to again extend its deadlines, must therefore be rejected.

**Fourth,** the stay has served important purposes.  It has afforded the parties time to:  (1) consider enrollment in the Program; and (2) prepare the enrolled claims for review.  In addition, the stay has allowed time for compliance with the pretrial orders so that the parties and the Court can better assess the inventory of cases remaining after the settlement.  Both the settlement and the pretrial order protocols are working as intended and the parties should be in a position to report to the Court on the number of remaining cases and to offer their views on lifting the stay at the next status conference.  Once the purposes for which the stay was entered are achieved, Merck will be prepared to undertake case-specific discovery with respect to the remaining cases. In any event, plaintiffs are in no position to urge the litigation to proceed when they refuse to comply with the threshold requirements set forth in PTO 28.  Plaintiffs who cannot perform basic

discovery tasks should not be heard to argue that someone else is to blame for the failure of their case to proceed to trial.

**I.      THE COURT SHOULD NOT RESIGN ITS ROLE IN IMPLEMENTING THE MASTER SETTLEMENT AGREEMENT.**

Plaintiffs' request that the Court resign from its implementation role with respect to the settlement should be rejected.  Plaintiffs contend that the Court should resign its role because it is "duty-bound to exclude from compensation under the MSA the same injuries that are being pursued by plaintiffs in MDL 1657, and will have to rule on the viability of those injuries in the tort system."  (Mot. at 3.)  Even assuming it were proper to seek recusal of a judge from his role in a ***private*** settlement, nothing about the Court's limited role with respect to implementation of the MSA lends itself to any conflict or appearance of partiality.

***First***, while plaintiffs rely on cases interpreting 28 U.S.C. § 455, the federal statute governing judicial recusal (Mem. at 2-3 (citing *Flanagan v. O'Hearn, In re Asbestos Litig.*, 90 F.3d 963, 975 (5th Cir. 1996) and *In re Faulkner*, 856 F.2d 716, 721 (5th Cir. 1988), both of which consider the application of § 455)), the plain language of that statute shows why the relief sought here is inappropriate.  Section 455(a) asks whether a judge's "impartiality might be reasonably questioned."  28 U.S.C. § 455(a); *see* Mem. at 3 ("[I]t is clear impartiality may be questioned" here.).  When applying § 455, the Fifth Circuit employs an objective test, finding recusal warranted only "if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality."  *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 378 (5th Cir. 2002).  Plaintiffs here can point to no facts that would cause the Court's impartiality to be questioned.

It is well settled that a court's facilitation of settlement among parties appearing before it does not warrant recusal.  *See, e.g., Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 447-48 (2d

Cir. 2005); *In re Asbestos Litig.*, 90 F.3d at 989 (affirming denial of plaintiffs' motion for recusal where the judge in question "mediated the settlement and then conducted a fairness hearing on the same settlement"), *vacated on other grounds and remanded by* 117 S. Ct. 2503 (1997), *aff'd on remand*, 134 F.3d 668 (5th Cir. 1998), *cert. granted sub nom. Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).  For example, in *Omega Engineering*, the appellant challenged a magistrate's decision not to recuse himself where the magistrate had personal knowledge of the facts surrounding a settlement conference and then ruled on a motion to enforce the settlement agreement.  *Omega Eng'g*, 432 F.3d at 447.  The Second Circuit found recusal unwarranted due to the fact that the magistrate was not actually involved in the negotiations, but rather merely oversaw the settlement conference and "provided facilities to support the settlement."  *Id.* at 448.

In this case, as in *Omega Engineering*, the Court has served, and continues to serve, as a facilitator of the settlement between private parties.  The Court had no role in drafting the settlement and has certainly not taken a position as to what claims should or should not have been included in the settlement.  The Court's role, like that in *Omega*, is to facilitate and to enforce the MSA agreed to by the parties – nothing more.

Plaintiffs' own authority agrees.  In *In re Asbestos Litigation*, 90 F.3d 963 (cited by Mem. at 2), the Fifth Circuit affirmed the ***denial*** of plaintiffs' motion for recusal where the judge in question participated in mediating the settlement and subsequently conducted a fairness hearing on that same settlement.  Indeed, plaintiffs fail to cite a single case in which a judge's involvement in a settlement created any conflict that required either resignation from his role as settlement facilitator or his recusal from related judicial matters.[4]

---

[4]     Aside from *In re Asbestos*, plaintiffs cite only one other case, which did not involve a settlement at all. Rather, it was a criminal case in which the trial judge had to recuse himself because he knew a possible witness. (*See* Mem. at 3 (citing *In re Faulkner*, 856 F.2d at 721 (granting writ of mandamus and directing judge to recuse

Plaintiffs nonetheless argue that the exclusion of certain injuries from the settlement will either actually bias the Court against those excluded injuries in the judicial system or, at a minimum, create the appearance of such bias.  This argument is meritless.

The fact that plaintiffs' injuries were excluded from the settlement does not reflect on the merits of plaintiffs' cases.  The MSA was a private agreement between parties to settle a portion of the total claims pending against Merck.  The fact that a certain injury was or was not included in the MSA will have no bearing on plaintiffs' claims at trial – indeed, any such discussion would likely be prohibited by Federal Rule of Evidence 408.  *See* Fed. R. Evid. 408 (prohibiting use of evidence of settlement agreements or discussions to prove "liability for, invalidity of, or amount of a claim that was disputed as to validity").  Plaintiffs' suggestion that the Court would: (1) read a merits determination as to the plaintiffs' injuries into the MSA; and (2) subsequently apply such a determination against the plaintiffs is therefore entirely baseless.[5]  The Court's "dual roles" in this litigation are entirely separate and distinct:  for plaintiffs who agree and are eligible to settle their claims, the Court facilitates the settlement process, and for those plaintiffs not included in the settlement agreement, the Court facilitates preparation of the claims for trial on the merits.

*Second*, plaintiffs cite no authority supporting the kind of relief they seek.  They use the language of and rely on cases concerning recusal (*see* Mem. at 2-3), but those cases address federal standards governing recusal of judges from judicial proceedings, not their resignation from administrative roles in private settlements.  The cases neither state nor imply that a motion

---

himself in criminal trial because he was related to a possible witness)).)  It thus presents no helpful guidance for the claimed conflict here.

[5]        Under plaintiffs' reasoning, a court could never preside over multiple bellwether trials in an MDL proceeding without its impartiality coming into question.  For example, if a jury found insufficient evidence that Vioxx could cause heart attacks in one case, the Court could no longer be impartial as to ruling in other trials where heart attack was the injury.

for a judge to step down from his role in helping to implement a private settlement is even cognizable under federal law.  There is simply no basis in plaintiffs' cases – or in any cases found by Merck – for the kind of relief sought here.

In sum, plaintiffs' request that the Court "resign" from its role in facilitating the MSA has no basis in law or logic and should therefore be denied.

## II.   THE SETTLEMENT IS NOT A *DE FACTO* CLASS SETTLEMENT AND PLAINTIFFS' ARGUMENTS FOR ITS VACATUR THUS FAIL.

Plaintiffs' argument that the MSA violates due process and separation of powers because it does not meet the requirements of Rule 23 fails for the simple reason that the MSA is not – in form or substance – a class settlement.  A private, opt-in settlement that poses no risk of binding any person to its terms does not pose the dangers posed by class adjudication, and Rule 23's requirements need not be satisfied.

As an initial matter, it is clear that the Court cannot vacate a private settlement as to which a plaintiff is not a party.  Courts generally do not have the power to unilaterally modify the terms of private settlement agreements.  *See Evans v. Jeff D.*, 475 U.S. 717, 726 (1986) ("the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed"); *In re Air Crash Disaster at JFK Int'l Airport*, 687 F.2d 626, 629 (2d Cir. 1982) ("[i]t is beyond a district judge's discretion to alter the terms of or refuse to enforce a settlement agreement, absent special circumstances, such as a material breach of the agreement . . . or duress").  And plaintiffs, who have not enrolled to participate in the settlement, lack standing to challenge the agreement.  *See, e.g., In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 103 (S.D.N.Y. 1997) ("Generally, a non-settling defendant lacks standing to object to approval of a settlement because the non-settling defendant is not affected by that settlement.").

944958v.1

Plaintiffs argue otherwise, apparently contending that the MSA is a class settlement and that they are objecting class members.  Plaintiffs argue that every mass settlement is a class settlement, citing the Third Circuit's refrain that a class is a class is a class.  (Mot. at 3 (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 625 (3d Cir. 1996) (citation and internal quotation marks omitted)).)  But they advance no substantive basis for their assertion that the MSA is a "class" settlement within the meaning of Rule 23.  Instead, their arguments only address whether the MSA satisfies Rule 23's requirements, particularly the requirement of adequacy of representation.  (Mem. at 3-7.)

But there is no basis for treating the MSA like a class settlement.  The MSA was not secured through a settlement class vehicle, and there is no authority for the proposition that Rule 23 governs private settlements.  The apparent premise for plaintiffs' argument – that all mass settlements must be class settlements because a "class is a class is a class" – is definitively refuted by history.  *See* Deborah R. Hensler, *Role of Multi-Districting in Mass Tort Litigation*, 31 Seton Hall L. Rev. 883, 902 & tbl. 5 (2001) (half of collective settlements in mass torts in the 1990s took place "outside the class action framework"); *see also, e.g.*, *In re Zyprexa Prods. Liab. Litig.*, 433 F. Supp. 2d 268, 271 (E.D.N.Y. 2006); *Second (Propulsid) MDL Program Term Sheet* (attached as Ex. 5).  Indeed, in light of Supreme Court precedent, such private settlements outside the class model are the ***only*** means of settling product liability claims like those here on a mass scale.  *See, e.g.*, *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) (mass tort cases are "ordinarily not appropriate" for treatment under Rule 23, even as a settlement class); *see also Castano v. American Tobacco Co.*, 84 F.3d 734, 746 (5th Cir. 1996) ("historically, certification of mass tort litigation classes has been disfavored" because they cannot satisfy the predominance requirement).  Indeed, as plaintiffs themselves point out, this Court already (and properly) denied

-12-

class certification of personal injury Vioxx cases, finding that the "number, uniqueness, singularity, and complexity of the factual scenarios surrounding each case swamp any predominating issues." *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 462-63 (E.D. La. 2006).

Furthermore, any suggestion that the Court should impose an adequacy of representation requirement notwithstanding the inapplicability of Rule 23 should be rejected. To be sure, Rule 23's adequate representation component is rooted in due process considerations, but it is "[t]he ***binding effect*** of all class-action decrees [that] raises substantial due-process questions that are directly relevant to Rule 23(a)(4)." 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1765, at 317 (3d ed. 2005) (emphasis added). The Supreme Court recognized the due process principles enshrined in Rule 23 in *Amchem*, but the facts of that case demonstrate precisely why Rule 23 does not reach the settlement here. *Amchem* involved a court-certified class settlement that would have resolved asbestos claims. The district court had dispensed with some of the requirements of Rule 23 and was reversed by the Third Circuit. The Supreme Court affirmed, citing adequacy of representation concerns. In particular, the settlement terms were potentially unfair to future claimants who had been exposed to asbestos but had not yet manifested any related injury. Yearly opt-outs for those future claimants were capped; future settlement amounts did not account for inflation; and consortium claims were barred. *Amchem*, 521 U.S. at 627. The protections of Rule 23 were warranted because of the binding effect of the settlement on claimants and the fact that most of them were not before the Court and did not have counsel.

The plaintiffs here implicitly recognize that it is the binding effect of a class settlement that creates the concerns that Rule 23 was designed to address. They argue, for example, that plaintiffs' lead counsel should not be given "the ability to bind the litigants in an MDL to any

-13-

settlement" and that there "simply is no procedure besides Rule 23 to permit counsel to enter into binding settlement agreements with another party on behalf of the class as wide and sprawling as the one before this Court."  (Mem. at 6.)

But, as noted above, the settlement here poses no such risks precisely because it is not a class action; rather, it is a voluntary ***opt-in*** settlement.  No one is bound by its terms unless he or she actively chooses to be.  And each claimant has the right to advice from individual counsel before deciding whether to participate in the settlement.  Plaintiffs who do not wish to participate are free to continue pursuing their claims and, as part of doing so, they must now proceed with discovery under the terms of PTO 28.  The due process concerns that underlie Rule 23 and *Amchem* are thus inapplicable.

For all of these reasons, the Court should deny plaintiffs' request to vacate the MSA.

## III.    THE COURT SHOULD NOT ALTER THE REQUIREMENTS OF PTO 28.

Plaintiffs' eleventh-hour request to alter the requirements of PTO 28 should also be denied.  Plaintiffs propose three alternative forms of relief from the order's requirements.  First, they argue that an attorney affirmation that a plaintiff's injury is causally related to Vioxx should suffice.  Second, they argue that an affirmation attesting to a general causation theory for injury types not eligible under the MSA should suffice.  Third, they argue that time should be extended. These alternative forms of relief are advanced in order from plaintiffs' most preferred to least preferred remedies.  None is appropriate.  The first two alternatives comprise an unfounded request to reconsider the requirements of PTO 28, which should be denied; the third is a motion for extension of time with no good cause, which likewise should be denied.

A.   **Plaintiffs' Request To Satisfy PTO 28's Case-Specific Discovery Requirement By Alternative Means Is A Motion For Reconsideration That Should Be Denied.**

Plaintiffs contend that their first two forms of relief should be analyzed as requests for injunctive relief and subject to plaintiffs' ability to prove that: "(1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat of irreparable injury if the relief is not granted; (3) [the] threatened injury to the plaintiff outweighs the threatened injury to the defendant;" and "(4) granting relief will not [*sic*] serve the public interest." (Mem. at 9 (citing *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993)).)

That is not correct. A party does not seek "injunctive" relief when it does not seek either to require or restrain action of another party. Of course, "'[i]n a general sense, every order of a court which commands or forbids is an injunction; but in its accepted legal sense, an injunction is a judicial process or mandate operating *in personam* by which, upon certain established principles of equity, a party is required to do or refrain from doing a particular thing.'" *Black's Law Dictionary* 800 (Bryan A. Garner ed., 8th ed. 2004) (quoting 1 Howard C. Joyce, *A Treatise on the Law Relating to Injunctions* § 1, at 2-3 (1909)). Plaintiffs do not seek such relief here because they are not asking the Court to make Merck do or not do something; instead, they seek modification of a discovery order.[6]

---

[6]     Plaintiffs' invocation of the preliminary-injunction standard is also puzzling because a "preliminary injunction is an 'extraordinary and drastic remedy'" that "is never awarded as of right," *Munaf v. Geren*, 128 S. Ct. 2207, 2219 (U.S. 2008), and under the governing standard, plaintiffs would bear a "heavy burden of persuading the district court that all four elements are satisfied," *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). It may be that plaintiffs are attempting to set up jurisdiction for an appeal under 28 U.S.C. § 1292(a), which permits appeals of right from certain orders, including denials of injunctive relief. In light of that possibility, the Court should expressly hold that plaintiffs' requested relief is not injunctive in character in order to prevent another round of frivolous appellate litigation.

Even if the Court could treat plaintiffs' motion as one seeking injunctive relief, such relief would have to be denied without any further analysis, as plaintiffs offered absolutely no proof – or even an assertion – that any of the four conjunctive requirements for a preliminary injunction has been satisfied.

-15-

Plaintiffs' request for relief from PTO 28 is thus effectively a motion for reconsideration of the order, or, at best, a reconsideration of its May 30 Order regarding the Kentucky motion. "A court's reconsideration of a prior order is an ***extraordinary remedy*** which should be used only sparingly." *Motiva Enters. LLC v. Wegmann*, No. 00-3096, 2001 U.S. Dist. LEXIS 3049, at *4 (E.D. La. Mar. 12, 2001) (emphasis added). "It is settled . . . that a motion to reconsider is not to re-debate the merits of a particular motion. If a party is allowed to address a court's reasons as to why a motion was or was not granted, it would render the entire briefing process irrelevant and lead to endless motions to reconsider." *Freeport-McMoran Sulphur L.L.C. v. Mike Mullen Energy Equip. Res., Inc.*, No. 03-1496, 2004 U.S. Dist. LEXIS 12183, at *4 (E.D. La. June 30, 2004).

Since the Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration, such motions are treated as either a motion to alter or amend judgment under Rule 59(e) or a motion for relief from judgment or order under Rule 60(b). *See Ford v. Elsbury*, 32 F.3d 931, 937 (5th Cir. 1994); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). Because, in this case, the plaintiffs' motions were filed outside ten days of both PTO 28 and the May 30 Order, Rule 60(b) governs the question of reconsideration. *See Lavespere*, 910 F.2d at 173.

Rule 60(b) enumerates six grounds for reconsideration of a judgment or order, none of which is remotely satisfied here:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Plaintiffs do not allege that any of these grounds is satisfied.  They plainly do not allege any mistake, newly discovered evidence, or fraud.  They do not suggest that PTO 28 is "void," or that it has already been satisfied, or that something has changed since the time it was entered that makes it "no longer equitable."  At best, their argument could be construed as some "other reason that justifies relief."

    But the Court already rejected precisely that argument in its May 30 Order.  In that order, the Court gave the parties fair warning that the requirements of PTO 28 were real and that they were going to be enforced.  It considered and rejected the same arguments advanced by plaintiffs here that PTO 28 required too much, too fast.  Both of plaintiffs' proposed alternatives are foreclosed by the reasoning of the May 30 Order and thus plainly do not amount to some "other reason that justifies relief."

    Plaintiffs' most preferred form of relief – substitution of an attorney affidavit for a case-specific expert report on causation – is nothing short of a proposal to vacate the *Lone Pine* requirement.  Plaintiffs submit that "Rule 11 would provide an adequate remedy to the defendant for any costs incurred" should an affirmation prove baseless (Mem. at 8), but plaintiffs' attorneys are already subject to Rule 11 for baseless claims by virtue of their filing complaints in the first place.  *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief . . . the factual contentions have evidentiary support . . . .").  The Court explained in its May 30

-17-

Order that, at least by this stage of the litigation, Rule 11 requires more than an attorney's signature; rather, it requires that the actual evidence in support of the claims exists. (May 30 Order at 4 (citing *Acuna*, 200 F.3d at 340).) Plaintiffs' proposed substitution does not satisfy this requirement.

Plaintiffs' next preferred form of relief – substitution of general causation evidence for case-specific reports – similarly strips PTO 28 of any value. The purpose of PTO 28 is to "identify and cull potentially meritless claims" from the remaining pool of claims now that the period for opting in to the settlement is nearly complete. (May 30 Order at 3 (citation and internal quotation marks omitted).) No such identification or culling can occur based on the existence of an expert opinion that Vioxx can cause, for example, transient ischemic attacks. Rather, progress can only be made if plaintiffs like Mr. Agard are required to put forward evidence that Vioxx caused *their* transient ischemic attacks.

Accordingly, there is no basis under Rule 60(b) to grant plaintiffs' requested relief.

Even if there were any basis, plaintiffs' request should still be denied as untimely. A request under Rule 60(b) "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). It is plain beyond the need for any explanation or argument that plaintiffs' motion, filed *one day* before the *extended* deadline of July 1, 2008 – roughly *eight months* after PTO 28 was entered – fails this standard as well.

Plaintiffs suggest that it was only in "its May 30, 2008 Decision and Order" that "this Court made clear that it was requiring a showing of specific causation evidence that plaintiffs [*sic*] ingestion of Vioxx caused them personal injury." (Mem. at 7.)

That suggestion cannot be taken seriously. The Court entered PTO 28 on November 9, 2007, requiring that plaintiffs outside the settlement provide, *inter alia*, a:

-18-

> Rule 26(a)(2) case specific expert report from a medical
> expert attesting (i) to a reasonable degree of medical
> probability that the Plaintiff or Claimant suffered an injury
> and (ii) that Vioxx caused the injury.  The case specific
> expert report must include (i) an explanation of the basis of
> the attestation that Vioxx caused the Plaintiff or Claimant
> to suffer the injury, (ii) an identification of any other causes
> that were considered in formulating the opinion, (iii) a
> description of the specific injuries allegedly suffered; (iv) a
> description of the specific medical findings that support the
> diagnosis of those injuries; and (v) an identification of all
> documents relied on by the expert in forming his opinions.

(PTO 28 at 4.)  There is no ambiguity in this requirement.  Plaintiffs were well aware of it in

December 2007, when they filed their notice of appeal.  Indeed, in their opposition to Merck's

motion to dismiss the appeal, plaintiffs thought based on the very title of PTO 28 – "*Prima Facie*

*Evidence of Usage, Injury and Causation*" – that "one does not need a compass to see the

direction in which the order is heading."  (MTD Opp. at 5.)

Even if such plain language could somehow be made ambiguous, plaintiffs concede they

knew no later than May 30 that their case-specific expert reports were due by July 1.  Given that

they now claim another 90 days would be needed to assemble such proof (Mem. at 10), it should

have been plain on May 30 that the 32 days remaining until July 1 did not provide enough time,

and a motion to reconsider should have been filed immediately.

Thus, plaintiffs' motion to reconsider PTO 28 or the May 30 Order should be denied.

## B.    Plaintiffs' Alternative Request For An Extension Of Time Should Be Denied.

Plaintiffs alternatively request that PTO 28's deadlines again be extended, this time until

September 30, 2008 for A-L plaintiffs and until October 31, 2008 for M-Z plaintiffs.  This

request, too, should be denied.

Requests for an extension of time are generally governed by Rule 6, which provides that

"the court may, *for good cause*, extend the time" upon a motion filed before the expiration of an

-19-

existing deadline.  Fed. R. Civ. P. 6(b)(1)(A) (emphasis added).  Pretrial Order 28 itself incorporates the same standard, clearly stating that no extensions of the time for filing shall be granted "except for good cause shown."  (PTO 28 at 5.)

Plaintiffs do not even attempt to make out a case for "good cause," and their motion thus fails.  Instead, they repeatedly offer that an extension now "is not unreasonable."  (Mem. at 10 (extension "is not unreasonable" because discovery is only necessary if there is going to be a trial, and the only reason to proceed to trial is if no settlement can be had); *id.* at 10-11 (extension "is not unreasonable" because the Plaintiffs' Steering Committee purportedly did not do plaintiffs' work for them and plaintiffs need more time to do the work they should have been doing for the last four years); *id.* at 11 (extension "is not unreasonable" because reading 22 million documents "is a daunting task").)

No good cause exists.  As the Court explained in its May 30 Order, plaintiffs have had ample time to compile the evidence they need to satisfy the requirements of PTO 28.  By June 30, they had had not merely eight months, but nearly four years to compile the evidence they needed to satisfy the simple requirement of providing *prima facie* evidence of a valid claim.  In the Court's words, "at this advanced stage of the litigation, it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury." (May 30 Order at 5.)  Indeed, the Court's May 30 Order conclusively establishes that no good cause for an extension exists.  The Court roundly rejected the argument that any extension of PTO 28's deadlines was warranted.  The only reason it granted a limited extension was because of the timing of the hearing on the motion; the Court was concerned that "it would be unfair to force Plaintiffs to respond to a deadline that was not confirmed until" the Court ruled on the motion.  (*Id.* at 6.)  Granting another extension now would simply encourage plaintiffs to

-20-

continue to file these motions in the hopes of effectively stripping PTO 28 of any real deadline at all.  The Court should deny plaintiffs' request.

## IV.  THE COURT SHOULD NOT LIFT THE STAY AT THIS TIME.

Finally, plaintiffs argue that the stay should be lifted to "dispel any notions that failure to participate in the MSA will result in the cases being unduly prolonged [in] MDL 1657."  (Mem. at 12.)  They also suggest that failure to lift the stay now would somehow convert it into an "indefinite stay" that would amount "to self-transfer and would be barred by the Supreme Court's decision in *Lexecon*."  (*Id.*)

Pretrial Order No. 30 implemented the instant stay "in order to give each eligible plaintiff, with the advice of counsel, sufficient time to determine whether it is in his or her best interest to participate in the Resolution Program, and to give counsel sufficient time to comprehend the Resolution Program and advise their clients accordingly."  (PTO 30 at 1.)  The order expressly contemplates motions to lift the stay "with respect to specific activities in this litigation upon good cause shown."  (*Id.* at 2.)  The stay also exempts from its scope "certain discovery and other pretrial activities" required by PTO 28.  (*Id.* at 1-2.)

Plaintiffs' concerns about lifting the stay are unfounded.  The stay was put in place to serve important purposes and, now that those purposes are close to achievement, the stay can soon be lifted.  Merck, for its part, is ready to proceed with discovery in those cases that are not participating in the Program ***once it is clear which cases are not enrolling in the Program and which cases plaintiffs actually intend to pursue***.  The stay has afforded time for the answer to these two basic questions.

Plaintiffs' request to lift the stay is also disingenuous.  After arguing for several pages that they should not have to endure the burdens of discovery required by PTO 28, plaintiffs argue

as their main basis for lifting the stay that they should be permitted "to ready the cases for trial" and remand to their originating courts.  (Mem. at 12.)  Plaintiffs cannot seriously contend that they should be permitted to proceed to trial and at the same time refuse to provide basic expert reports under Rule 26(a)(2).

### CONCLUSION

For the foregoing reasons, plaintiffs' motion should be denied.

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

John H. Beisner
Jessica Davidson Miller
Geoffrey M. Wyatt
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.

944958v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Corrected Opposition has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 16th day of September, 2008.

<div style="margin-left:auto">

_/s/ Dorothy H. Wimberly_
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

</div>

-23-

944958v.1