IN THE CIRCUIT COURT OF THE
13TH JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA

CASE NO:

LOUISE M. GRIFFIN, individually and as
Personal Representative of the Estate of
RAYMOND N. GRIFFIN, JR., deceased,

06 07890

     Plaintiff,

vs.

**DIVISION E**

MERCK & CO., INC., RANDI J.
SUSLAVICH, GENA E. ORTEGA,
JENNIFER L. FAVATA, JESSE Z.
HOLLINGSWORTH, DEBORAH HUNT,
ANTON J. LAK, CHERI M. McLEOD,
AMY MOORE, RICARDO ORTEGA,
DOUGLAS S. PAUL, DANIEL RING,
TEQUILLA L. TAYLOR, and KELLY
TOULSON,

CLERK OF CIRCUIT COURT
HILLSBOROUGH CNTY, FL
CIRCUIT CIVIL
2005 SEP -5 PM 2:47
FILED CIRCUIT COURT

     Defendants.

_____/

## PLAINTIFF'S COMPLAINT

     Plaintiff, LOUISE M. GRIFFIN, as Personal Representative of the ESTATE OF

RAYMOND N. GRIFFIN, JR., sues Defendant, MERCK & CO., INC., (hereinafter

"MERCK"), RANDI J.  SUSLAVICH, GENA E. ORTEGA, JENNIFER L. FAVATA,

JESSE Z. HOLLINGSWORTH, DEBORAH HUNT, ANTON J. LAK, CHERI M. McLEOD,

AMY MOORE, RICARDO ORTEGA,  DOUGLAS S. PAUL, DANIEL RING, TEQUILLA

L.  TAYLOR,  and  KELLY  TOULSON,  (hereinafter  collectively  referred  to  as

"MARKETING DEFENDANTS"), and alleges as follows:

## GENERAL ALLEGATIONS

1.    This is an action for damages in excess of $15,000.00 exclusive of interest and

    costs and within the jurisdiction of this Court.



PLAINTIFF'S EXHIBIT
A

2.     Plaintiff, LOUISE M. GRIFFIN, is the widow of RAYMOND N. GRIFFIN, JR. and is Personal Representative of the ESTATE OF RAYMOND N. GRIFFIN, JR., (hereinafter "Plaintiff") and, at all times material hereto, was a resident of Polk County, Florida.  Plaintiff is authorized pursuant to Florida Statute, section 768.20 to bring this wrongful death action against the Defendants[1] on behalf of the Estate of RAYMOND N. GRIFFIN, JR. and on behalf of herself individually, as the surviving spouse of Decedent.

3.     On September 6, 2004 RAYMOND N. GRIFFIN, JR., (hereinafter "Decedent"), age 58, died as a result of his ingestion of the prescription drug Vioxx, which had been prescribed to him by his physicians in Hillsborough County, Florida, including but not limited to,  Roy Sanders, M.D.,  at the Florida Orthopedic Institute.

4.     This action arises out of the Defendants' manufacturing, selling, distributing, marketing and/or otherwise promoting Vioxx without proper warnings as to the dangers associated with its use, and said Defendants' fraud regarding the hazards of Vioxx.

5.     The pharmaceutical drug Vioxx, manufactured by MERCK and marketed by all of the MARKETING DEFENDANTS herein, is defective, dangerous to human health, and unfit and unsuitable to be marketed and sold in commerce.

6.     MERCK is a New Jersey Corporation with its principal place of business located in Whitehouse Station, New Jersey. At all times material hereto, MERCK was authorized to and did in fact conduct business within the State of Florida and

---

[1] MERCK and the MARKETING DEFENDANTS shall collectively be referred to as the "Defendants".

Hillsboro County.

7. At all times material, MERCK was in the business of developing, manufacturing, selling, distributing, labeling, marketing and/or promoting Vioxx for consumer use by prescription. Additionally, MERCK did develop, manufacture, design, package, market, sell and distribute Vioxx in the State of Florida at all times relevant to this action, but recalled Vioxx from the market on September 29, 2004.

8. Upon information and belief, and at all times relevant hereto, Defendants, RANDI J. SUSLAVICH, GENA E. ORTEGA, JENNIFER L. FAVATA, JESSE Z. HOLLINGSWORTH, DEBORAH HUNT, ANTON J. LAK, CHERI M. McLEOD, AMY MOORE, RICARDO ORTEGA, DOUGLAS S. PAUL, DANIEL RING, TEQUILLA L. TAYLOR, and KELLY TOULSON, are all residents of or worked within the confines of Hillsborough County, Florida. These MARKETING DEFENDANTS are currently, or were in the past, employed by MERCK as sales representatives, detail persons, or sales managers in the State of Florida to promote, market, sell, distribute and encourage physicians to prescribe Vioxx, and, in doing so, had an obligation to likewise warn prescribing physicians, including RAYMOND N. GRIFFIN, JR.'S prescribing physicians, of the known and reasonably discoverable risks associated with the product Vioxx.

9. Vioxx is a pain medication and a Cox-2 inhibitor, a drug that is designed to produce prostaglandins at inflammatory sites and to produce prostacyclin, a vasodilator and an inhibitor of platelet aggregation.

10. MERCK submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib (Vioxx) to the United States Food and Drug Administration ("FDA")

3

on November 23, 1998, for tablets at doses of 12.5mg and 25mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of dysmenorrhea. This application was denoted NDA 21-042 by the FDA.

11.   MERCK also submitted an NDA for rofecoxib to the FDA on November 23, 1998, for oral suspension at doses of 12.5 rng/mL and 25 mg/mL, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. This application was denoted as NDA 2 1-052 by the FDA.

12.   On or about May 20, 1999, the FDA approved NDA 21-042 and NDA 21-052 for rofecoxib, for the relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.

13.   At the time that Vioxx was approved by the FDA, the labeling for rofecoxib (in the section entitled "Special Studies - Upper Endoscopy in Patients with Osteoarthritis") stated "Treatment with VIOXX 25 mg daily or 50 mg daily was associated with a significantly lower percentage of patients with endoscopic gastroduodenal ulcers than treatment with ibuprofen 2400 mg daily. However, the studies cannot rule out at least some increase in the rate of endoscopic gastroduodenal ulcers when comparing VIOXX to placebo."

14.   The "Warnings" section of the labeling for rofecoxib at the time the drug was approved by the FDA contains a section, "Gastrointestinal (GI) effects—Risk of GI Ulceration, Bleeding and Perforation."

4

15.    MERCK submitted a Supplemental New Drug Application ("SNDA") with the goal
       of establishing a gastrointestinal safety claim for rofecoxib.  In conjunction with
       the SNDA, MERCK conducted a study known as the VIGOR (VIOXX GI
       Outcomes Research) Protocol, No. 08 8-04, entitled "A Double-Blind,
       Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUB'S
       During Chronic Treatment With IVJK-09 or Naproxen in Patients With
       Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was conducted from
       January 6, 1999 through March 17, 2000.

16.    The objectives of the VIGOR study were to "determine the relative risk of
       confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking Vioxx 50mg
       daily compared to patients in the group taking naproxen 1000 mg/day" and to
       "study the safety and tolerability" of Vioxx in patients with rheumatoid arthritis.

17.    The VIGOR study demonstrated that Vioxx is associated with a lower incidence
       of serious upper gastrointestinal adverse events of major bleeding, perforation,
       and obstruction compared to naproxen.

18.    However, the VIGOR study also showed a higher cumulative rate of serious
       cardiovascular thromboembolic adverse events (such as heart attacks, angina
       pectoris, and peripheral vascular events) in the Vioxx group compared to the
       naproxen group.

19.    An FDA report, written by Shari L. Targum, M.D., a Project Manager for the
       FDA'S Division of Anti-Inflammatory Drug Products, dated February 1, 2000,
       states: "By November 18, 1999, the Data and Safety Monitoring Board of the
       VIGOR study, a committee independent from MERCK, the sponsor, had become

5

concerned over the "excess deaths and cardiovascular events experienced in Group A [Vioxx] compared to Group B [naproxen]."

20.    In June of 2000, in connection with industry-sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which MERCK is a member and corporate sponsor, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and stroke. Not only did Defendants do nothing to accurately publish these studies, or warn consumers and prescribing doctors, MERCK and the other Defendants herein, also denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today *Spin War Aside, Lessons Emerge from COX-2 Trials,* in August of 2000.

21.    Defendants concealed the serious cardiovascular risks associated with Vioxx because a successful launch of Vioxx was viewed as critical for the success of MERCK. Safety concerns over hypertension, thrombosis, edema, and/or cardiovascular events would have drastically impacted MERCK'S positioning in the market as compared to its competitor drug, Celebrex (celecoxib), which had been placed into the market by Pharmacia and Pfizer three months prior to the launch of Vioxx.

22.    Defendants continued to deny the ill health effects associated with Vioxx while at the same time reaping benefits obtained through its non-disclosure and concealment. Defendants engaged in a massive physician and direct-to-consumer advertising and sampling program and gained continued increases in Vioxx's market share, which enhanced MERCK'S financial stability to the

6

detriment of its consumers. As a result of Defendants' scheme, MERCK reaped more than $2 billion in profit in the year 2000 alone, and garnered approximately a 23% percent share of the market.

23.    The FDA sent a letter to MERCK dated December 16, 1999, stating that certain Vioxx promotional pieces "are false and misleading because they contain representations of Vioxx's safety profile, unsubstantiated comparative claims, and are lacking in fair balance."

24.    On June 22, 1999, MERCK contracted with Peter Holt, M.D., to conduct Vioxx promotional audio conferences, using content provided by MERCK, which were to be presented to health care professionals as educational programs.

25.    Dr. Peter Holt conducted six Vioxx promotional audio conferences (one on June 8, 2000; one on June 13, 2000; one on June 16, 2000, and three on June 21, 2000), which were arranged by Defendants, presented on behalf of MERCK, and moderated by MERCK employees. Some of the content of these conferences was later found by the FDA to be "false or misleading in that they minimized the MI results of the VIGOR study, minimized the Vioxx/Coumadin drug interaction, omitted important risk information, made unsubstantiated superiority claims, and promoted Vioxx for unapproved uses and "an unapproved dosing regimen."

26.    In response to the growing public expressions of concern over the cardiovascular safety profile of Vioxx, MERCK issued a press release entitled "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx," dated May 22, 2001. This press release states that Vioxx has a "favorable cardiovascular safety profile." The FDA would later tell MERCK: "Your claim in the press release that Vioxx

7

has a 'favorable cardiovascular profile' is simply incomprehensible, given the rate of MI (myocardial infarction) and serious cardiovascular events compared to naproxen. The implication that Vioxx's cardiovascular profile is superior to other NSAIDs is misleading; in fact, serious cardiovascular events were twice as frequent in the Vioxx treatment group... as in the naproxen treatment group... in the VIGOR study."

27.     Despite admonishments from the FDA for its fraudulent marketing, Defendants continued to increase sales of Vioxx and profits by withholding information from RAYMOND N. GRIFFIN'S prescribing physicians, the consuming public, and the health care industry. For example, in November of 2000, MERCK orchestrated the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with ingestion of Vioxx versus naproxen.

28.     On or about August 29, 2001, the Journal of American Medical Association (JAMA) published a peer reviewed epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, showing that MERCK had concealed the risk of developing a "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") among Vioxx users in MERCK'S trials, including VIGOR. The study found a statistically increased risk (of the magnitude of four to five-fold) of developing serious cardiovascular events, including heart attacks, over placebo and naproxen.

8

29. In the JAMA study, the authors stated that "by decreasing PG12 production [Vioxx] may tip the natural balance between promrombotic thromboxane A2 and antithrombotic PG12, potentially leading to an increase in thrombotic cardiovascular events".

30. On September 17, 2001, Thomas W. Abrams, R. Ph., MBA, Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued a "Warning Letter" to Raymond V. Gilmartin, President and CEO of Defendant MERCK, relating to "promotional activities and materials for the marketing of Vioxx (refecoxib) tablets."

31. The Warning Letter, MERCK'S *third* such letter from the FDA concerning Vioxx, stated that Defendant MERCK had "engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx." The letter further states: "Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have a four to five fold increase in myocardial infarctions (Mi's) compared to patients on the Comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (naproxen)".

32. The eight-page Warning Letter outlines, in detail, the conduct of Defendants that supports the FDA'S issuance of the Warning Letter, and makes the following "Conclusions and Requested Actions":

    a.    "The promotional activities and materials described above minimize the potentially serious cardiovascular findings that were observed in the

9

VIGOR study, minimize the Vioxx/Coumadin drug interaction, omits crucial risk information associated with Vioxx therapy, contains unsubstantiated comparative claims, and promotes unapproved uses. On December 16, 1999, we also objected to your dissemination of promotional materials for Vioxx that misrepresented Vioxx's safety profile, contained unsubstantiated comparative claims, and lacked fair balance;

b.     "Due to the seriousness of these violations, and the fact that your violative promotion of Vioxx has continued despite our prior written notification regarding similar violations, we request that you provide a detailed response to the issues raised in this Warning Letter on or before October 1, 2001";

c.     "This response should contain an action plan that includes a comprehensive plan to disseminate corrective messages about the issues discussed in this letter to the audiences that received these misleading messages. This corrective action plan should also include:

- Immediately ceasing all violative promotional activities, and the dissemination of all violative promotional materials for Vioxx;

- Issuing a "Dear Healthcare Provider" letter to correct false or misleading impressions and information. The proposed letter should be submitted to us for review prior to its release. After agreement is reached on the content and audience, the letter should be disseminated by direct mail to all healthcare providers

10

who were, or may have been exposed to the violative promotion.

33.   Defendants knew the warnings contained in the label were ineffective and used its sales force and other marketing efforts to downplay (rather than inform about) the risks posed by Vioxx.

34.   In its 2001 annual report, MERCK states:

> "The Company also noted that a number of state and federal lawsuits, involving individual claims as well as purported class actions, have been filed against the Company with respect to Vioxx . . . these lawsuits include allegations regarding gastrointestinal bleeding and cardiovascular events. The Company believes that these lawsuits are without merit and will vigorously defend them."

35.   An article entitled "Why Do Cyclooxygenase-2 Inhibitors cause Cardiovascular Events?" authored by Dr. Bing, Dr. Lomnicka, and others at the Department of Experimental Cardiology at the Huntington Medical Research Institute was published in the journal *Pharmacology* on February 6, 2002. The authors explained that a selective Cox-2 inhibitor, such as Vioxx, can promote adverse cardiovascular events by tipping the balance of prostacyclin and thromboxane in favor of thromboxane. This imbalance promotes both platelet aggregation and vasoconstriction, which can lead to catastrophic cardiovascular events, including stroke, heart attack, and pulmonary embolism.

36.   In response to a growing body of evidence of Vioxx's safety problems, MERCK attempted to obfuscate this negative information by authoring and sponsoring

11

reviews that set forth the unsubstantiated claim that naproxen had a cardioprotective effect and therefore accounted for the cardiovascular risks noted in these negative studies among its Vioxx users. However, this theory was debunked in January of 2002, by a Vanderbilt University School of Medicine human epidemiologic peer-reviewed study published in *Lancet.* The *Lancet* article concluded that there is an absence of a protective effect of naproxen or other non-aspirin, non-steroidal anti-inflammatory drugs on the risk of coronary heart disease.

37.   In approximately April of 2002, MERCK was required to place cardiovascular warnings on its Vioxx labeling based on the results of the VIGOR study. In addition, MERCK was required to place new label warnings relaying that the 50 mg per day dose of Vioxx was not recommended for chronic use.

38.   An article by Dr. Solomon and others at Harvard Medical School, entitled "Relationship between Selective Cyclooxygenase-2 Inhibitors and Acute Myocardial Infarction in Older Adults", was published in the April of 2004 edition of the journal *Circulation*. The Harvard authors concluded the following from their study: "[Rofecoxib [Vioxx] use was associated with an elevated relative risk of AMI [acute myocardial infarction] compared with celecoxib [Celebrex] use and no NSATD use. Dosages of rofecoxib [greater than] 25 mg were associated with a higher risk than dosages [less than or equal to] 25 mg".

39.   An article by H.K. Choi in the May 2004 edition of the *American Journal of Medicine,* entitled "Effects of Rofecoxib and Naproxen on Life Expectancy Among Patients with Rheumatoid Arthritis: A Decision Analysis," concludes the

12

following: "Our analysis suggests a longer life expectancy with naproxen than rofecoxib [Vioxx] .... except those at low risk for myocardial infarction or at a high risk for gastrointestinal toxicity".

40. David Graham, M.D., an employee of the Food & Drug Administration, gave a poster presentation entitled "Risk of Acute Myocardial Infarction and Sudden Cardiac Death with Use of COX-2 Selective and Non-Selective NSAIDs" at the 20th International Conference on Pharmacoepidemiology and Therapeutic Risk Management, held from August 22-25, 2004, in Bordeaux, France. The data for the presentation was taken from a study done by Kaiser Permanente under a contract funded by the FDA, and concluded that Vioxx taken at more than 25 mg per day increased the risk of heart attack and sudden cardiac death by 300%.

41. On August 26, 2004, Peter Kim, President of Merck Research Laboratories, issued a press release stating the following:

> "Merck strongly disagrees with the conclusions of
> an observational analysis by Graham, et al.,
> presented at an international meeting this week..."
> "Merck stands behind the efficacy and safety,
> including cardiovascular safety of Vioxx".

42. On September 27, 2004, MERCK informed the FDA that the Data Safety Monitoring Board for an ongoing long-term study of Vioxx, known as THE APPROVE STUDY, had recommended that the study be stopped early for safety reasons.

43. THE APPROVE STUDY was not intended to be a cardiovascular risk

13

assessment study. It was commissioned by MERCK to look at the effect of Vioxx on people at risk for developing recurrent colon polyps.

44.     THE APPROVE STUDY demonstrated an increased risk of cardiovascular adverse events, including heart attacks and strokes, for the Vioxx population relative to the placebo population in the study, particularly for patients taking Vioxx for more than 18 months.

45.     MERCK representatives informed the FDA in a September 28, 2004, meeting that MERCK would recall Vioxx from the United States market.

46.     MERCK and the FDA each announced the recall of Vioxx from the United States market on September 30, 2004. MERCK also announced the worldwide recall on the same day.

47.     An FDA analysis, based on data from the Kaiser Pennanente study, projects that 27,785 heart attacks and sudden cardiac deaths "would have been avoided" had Celebrex, another Cox 2 inhibitor, been used instead of Vioxx.

48.     Approximately 20 million people in the United States took Vioxx between its introduction in 1999 and its withdrawal in 2004.

49.     From approximately 1999 through 2004, Defendants engaged in a common scheme of marketing, distributing and/or selling Vioxx under the guise that it was safe and efficacious for persons such as RAYMOND N. GRIFFIN, JR.

50.     At all times relevant to this litigation, MERCK enjoyed a significant market share based upon claims of Vioxx's efficacy, safety, and superiority as a result of the actions of Defendants, including a very aggressive marketing program that included financial incentives to sales teams, the hiring of approximately 700 new

14

sales representatives, and a massive direct-to-consumer advertising and physician sampling program. Defendants encouraged the prescription and use of Vioxx through aggressive marketing campaigns, including detailing of physicians by the SELLING DEFENDANTS and others as well as direct-to-consumer advertising. As such, Defendants had a duty not only to provide RAYMOND N. GRIFFIN, JR.'S prescribing physicians with adequate warnings, but also to provide RAYMOND N. GRIFFIN, JR. with adequate warnings regarding Vioxx and the safety risks associated with ingestion of the drug.

51. Defendants intentionally and knowingly misrepresented the safety and effectiveness of Vioxx to prescribing physicians, RAYMOND N. GRIFFIN, JR. and the consuming public, and concealed or understated the dangerous side effects associated with ingestion of Vioxx.

52. As a direct and proximate result of the said acts and/or omissions of the Defendants as aforesaid, RAYMOND N. GRIFFIN, JR. was prescribed and ingested Vioxx between (at least) November, 2002 and September 6, 2004.

53. On September 6, 2004, RAYMOND G. GRIFFIN, JR. suffered a massive myocardial infarction and died.

**COUNT ONE - STRICT LIABILITY (AGAINST MERCK)**

54. Plaintiff adopts by reference all of the General Allegations contained in Paragraphs 1 through 53 above, each inclusive, as though fully set forth herein, pursuant to Rule 1.130(b), Florida Rules of Civil Procedure.

55. The Vioxx ingested by Decedent was defective and unreasonably dangerous when it left the possession of MERCK in that:

15

a.  When placed in the stream of commerce, Vioxx contained unreasonably dangerous design defects and was not reasonably safe for its intended use, subjecting Decedent to risks which exceeded the benefits of the drug;

b.  When placed in the stream of commerce, Vioxx was defective in design and formulation, making use of the drug more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with Decedent's ailment;

c.  Vioxx contained insufficient warnings to alert RAYMOND N. GRIFFIN, JR. consumers, and prescribing physicians of severe and life threatening complications and side effects including, but not limited to arterial thrombus;

d.  There was misleading advertising and promotion concerning the benefits of using Vioxx;

e.  There were inadequate post-marketing warnings or instructions for Vioxx because, after Defendant knew or should have known of the significant risks associated with the use of Vioxx, Defendants failed to provide adequate warnings to RAYMOND N. GRIFFIN, JR., consumers, and prescribing physicians, and continued to aggressively promote and advertise directly to

16

consumers the sale and use of Vioxx;

56. The Vioxx ingested by RAYMOND N. GRIFFIN, JR. had not been materially altered or modified prior to its use.

57. RAYMOND N. GRIFFIN, JR. used the drug for its intended purpose.

58. MERCK, as a manufacturer of a prescription drug, is held to the level of knowledge of an expert in the field. Prescribing physicians and consumers did not have substantially the same knowledge as MERCK, or that which would have been gleaned from an adequate warning from the manufacturer and its sales force to prescribing physicians and/or consumers.

59. The warnings that were given by Defendants to RAYMOND N. GRIFFIN, JR. the consuming public, and prescribing physicians were not accurate, clear, and/or unambiguous but instead were misleading and untrue.

60. MERCK had a continuing duty to warn Decedent, prescribing physicians, other dispensing entities, and the consuming public of the dangerous risks and reactions associated with Vioxx.

61. RAYMOND N. GRIFFIN, JR. could not have discovered any defect in the product through the exercise of care.

62. On or about September 6, 2004, as a direct and proximate result of his ingestion of Vioxx, RAYMOND N. GRIFFIN, JR. suffered a severe myocardial infarction and died.

63. As a direct and proximate result of RAYMOND N. GRIFFIN, JR.'S wrongful death, Plaintiff has endured mental pain and suffering, which she will continue to endure for the rest of her life, and has suffered the loss of RAYMOND N.

17

GRIFFIN, JR.'S support and services. Plaintiff has also suffered the loss of RAYMOND N. GRIFFIN, JR.'S companionship, love and affection, which she will continue to suffer for the rest of her life.

64.     As a further direct and proximate result of RAYMOND N. GRIFFIN, JR.'S wrongful death, the Estate of RAYMOND N. GRIFFIN, JR., by and through its Personal Representative, Louise M. Griffin, has suffered the loss of net accumulations to the Estate that would have been left as part of the Estate if RAYMOND N. GRIFFIN, JR., had survived and lived to his normal life expectancy.

WHEREFORE, Plaintiff, LOUISE M. GRIFFIN, as Personal Representative of the Estate of RAYMOND N. GRIFFIN, JR., deceased, on behalf of the Estate of RAYMOND N. GRIFFIN, JR., and the lawful survivors of the Decedent to wit:  Louise M. Griffin, as surviving spouse, demands judgment for damages against MERCK for an amount in excess of Fifteen Thousand Dollars ($15,000.00), plus costs and interest and further demands trial by jury on all issues so triable.  Plaintiff hereby reserves the right to assert a claim for punitive damages upon a showing of the applicable pre-requisites.

## COUNT TWO - NEGLIGENCE (AGAINST ALL DEFENDANTS)

65.     Plaintiff adopts by reference all the General Allegations contained in Paragraphs 1 through 53 above, each inclusive, as though fully set forth, pursuant to Rule 1.130 (b), Florida Rules of Civil Procedure.

66.     At all times material hereto, Defendants had a duty to RAYMOND N. GRIFFIN, JR. to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, labeling, assembling, packaging, distribution, sale, and

18

warning in regard to Vioxx.

67.   Defendants were negligent in their actions, misrepresentations, and omissions toward RAYMOND N. GRIFFIN, JR. and his prescribing physicians in the following ways:

   a.   In failing to include adequate warnings with the drug that would have alerted consumers and physicians to the potential risks and serious side effects of Vioxx;

   b.   In failing to adequately and properly test Vioxx before placing the drug on the market;

   c.   In failing to provide adequate post-marketing warnings or instructions after the Defendants knew of the significant risks of personal injury and death as identified herein among other serious side effects from the use of Vioxx;

   d.   In failing to adequately warn RAYMOND N. GRIFFIN, JR. and his physicians that Vioxx should not be used in conjunction with any risk factors for these adverse effects;

   e.   In failing to adequately disclose and warn RAYMOND N. GRIFFIN, JR. that he undertook the risk of adverse events and death as described herein; and

   f.   In failing to adequately and timely inform the health care industry and the consuming public of the risks of serious personal injury and death from Vioxx ingestion as described herein.

68.   Defendants knew or should have known that Vioxx caused unreasonably

dangerous risks and serious side effects of which RAYMOND N. GRIFFIN, JR. and his prescribing physicians would be unaware. Defendants nevertheless aggressively advertised, marketed, sold and distributed Vioxx knowing that there were safer methods and products for treatment of pain due to inflammation.

69. As a direct and legal result of the negligence of the Defendants, RAYMOND N. GRIFFIN, JR. suffered a massive myocardial infarction and died due to his ingestion of Vioxx.

70. As a direct and proximate result of RAYMOND N. GRIFFIN, JR.'S wrongful death, Plaintiff has endured mental pain and suffering, which she will continue to endure for the rest of her life, and has suffered the loss of RAYMOND N. GRIFFIN, JR.'S support and services. Plaintiff has also suffered the loss of RAYMOND N. GRIFFIN, JR.'S companionship, love and affection, which she will continue to suffer for the rest of her life.

71. As a further direct and proximate result of RAYMOND N. GRIFFIN, JR.'S wrongful death, the Estate of RAYMOND N. GRIFFIN, JR., by and through its Personal Representative, Louise M. Griffin, has suffered the loss of net accumulations to the Estate that would have been left as part of the Estate if RAYMOND N. GRIFFIN, JR., had survived and lived to his normal life expectancy.

WHEREFORE, Plaintiff, Louise M. Griffin, as Personal Representative of the Estate of Raymond N. Griffin deceased, on behalf of the Estate of RAYMOND N. GRIFFIN, JR., and the lawful survivors of the Decedent to wit: Louise Griffin, as surviving spouse, demands judgment for damages against MERCK and the

MARKETING DEFENDANTS in excess of Fifteen Thousand Dollars ($15,000.00) plus costs and interest and further demands trial by jury on all issues so triable. Plaintiff hereby reserves the right to assert a claim for punitive damages upon a showing of the applicable pre-requisites.

## COUNT THREE- NEGLIGENT MISREPRESENTATION
## (AGAINST ALL DEFENDANTS)

72.   Plaintiff adopts by reference all of the General Allegations contained Paragraphs 1 through 53 above, each inclusive, as though fully set forth, pursuant to Rule 1.130 (b), Florida Rules of Civil Procedure.

73.   Defendants negligently misrepresented to RAYMOND N. GRIFFIN, JR. and his prescribing physician the safety and effectiveness of Vioxx and/or negligently misrepresented material information regarding Vioxx and/or negligently misrepresented adverse information regarding the safety and effectiveness of the drug Vioxx.

74.   Defendants' negligent misrepresentations were communicated to RAYMOND N. GRIFFIN, JR.'S prescribing physician with the intent that they reach RAYMOND N. GRIFFIN, JR. and that the effect of such representations would be that prescriptions would be written (and samples provided) for Vioxx to the consuming public, including RAYMOND N. GRIFFIN, JR.

75.   Defendants misrepresented safety information regarding Vioxx with the intention and specific desire that RAYMOND N. GRIFFIN, JR., his prescribing physician or other dispensing entities and the consuming public would rely on such information in selecting, requesting, and/or prescribing treatment.

21

76. Defendants misrepresented material, adverse information regarding the safety and effectiveness of Vioxx.

77. Defendants made these misrepresentations and actively concealed adverse information at a time when the Defendants knew, or should have known, that Vioxx had defects, dangers, and characteristics that were other than what the Defendants had represented to prescribing doctors or other dispensing entities, the FDA and the consuming public, including RAYMOND N. GRIFFIN, JR.

78. The misrepresentations of the Defendants were perpetuated directly and/or indirectly by the MARKETING DEFENDANTS, employees, agents and/or other detail persons.

79. The misrepresentations of the Defendants constitute a continuing tort.

80. Through the Vioxx product inserts, promotional materials, and aggressive marketing, Defendants continued to misrepresent the potential risks and benefits associated with Vioxx both before and after RAYMOND N. GRIFFIN, JR.'S ingestion of the drug.

81. Defendants had a post-sale duty to the consuming public and prescribing physicians to warn about the potential risks and complications associated with Vioxx in a timely manner.

82. Defendants misrepresented the safety and efficacy of the drug product in their labeling, advertising, product inserts, promotional materials, or other marketing efforts.

83. RAYMOND N. GRIFFIN, JR. his prescribing physician, and other dispensing entities justifiably relied on and/or were induced by the misrepresentations of

22

Defendants to the detriment of RAYMOND N. GRIFFIN, JR. and Plaintiff herein.

84.   On or about September 6, 2004, as a direct and proximate result of his ingestion of Vioxx, RAYMOND N. GRIFFIN, JR. suffered a severe myocardial infarction and died.

85.   As a direct and proximate result of RAYMOND N. GRIFFIN, JR.'S wrongful death, Plaintiff has endured mental pain and suffering, which she will continue to endure for the rest of her life, and has suffered the loss of RAYMOND N. GRIFFIN, JR.'S support and services. Plaintiff has also suffered the loss of RAYMOND N. GRIFFIN, JR.'S companionship, love and affection, which she will continue to suffer for the rest of her life.

86.   As a further direct and proximate result of RAYMOND N. GRIFFIN, JR.'S wrongful death, the Estate of RAYMOND N. GRIFFIN, JR., by and through its Personal Representative, Louise M. Griffin, has suffered the loss of net accumulations to the Estate that would have been left as part of the Estate if RAYMOND N. GRIFFIN, JR. had survived and lived to his normal life expectancy.

WHEREFORE, Plaintiff, Louise M. Griffin, as Personal Representative of the Estate of RAYMOND N. GRIFFIN, JR. deceased, on behalf of the Estate of RAYMOND N. GRIFFIN, JR., and the lawful survivors of the Decedent to wit:  Louise M. Griffin, as surviving spouse, demands judgment for damages against MERCK and the MARKETING DEFENDANTS in excess of Fifteen Thousand Dollars ($15,000.00), plus costs and interest and further demands trial by jury on all issues so triable. Plaintiff hereby reserves the right to assert a claim for punitive damages upon a showing of the

applicable pre-requisites.

### COUNT FOUR - FRAUD (AGAINST ALL DEFENDANTS)

87.     Plaintiff adopts by reference all of the General Allegations contained in Paragraphs 1 through 53 above, each inclusive, as though fully set forth, pursuant to Rule 1.130 (b), Florida Rules of Civil Procedure.

88.     Defendants fraudulently or intentionally misrepresented to RAYMOND N. GRIFFIN, JR. and/or his prescribing physician the safety and effectiveness of Vioxx and/or fraudulently or intentionally concealed material information regarding the drug and/or fraudulently or intentionally misrepresented adverse information regarding the safety and effectiveness of Vioxx.

89.     Defendants' fraudulent or intentional misrepresentations were communicated to RAYMOND N. GRIFFIN, JR.'S prescribing physicians with the intent that they reach RAYMOND N. GRIFFIN, JR..

90.     Defendants knew that their representations were false.

91.     Defendants made the fraudulent or intentional misrepresentations and/or actively concealed this information about the risks and efficacy of Vioxx with the intention and specific desire that RAYMOND N. GRIFFIN, JR., his prescribing physicians, dispensing entities, and the consuming public would rely on such false information in selecting treatment for pain and inflammation.

92.     Defendants intentionally concealed material, adverse information regarding the safety and effectiveness of Vioxx.

93.     Defendants made these fraudulent or intentional misrepresentations and actively concealed adverse information at a time when the Defendants knew that Vioxx

24

had defects, dangers, and characteristics that were other than what the Defendants had represented to the prescribing doctors or other dispensing entities, the FDA, and the consuming public (including RAYMOND N. GRIFFIN, JR.). Specifically, Defendants fraudulently or intentionally misrepresented to and/or actively concealed from RAYMOND N. GRIFFIN, JR., his prescribing physician or other dispensing entities, the FDA, and the consuming public the following adverse information regarding the Vioxx ingested by RAYMOND N. GRIFFIN, JR.:

    a.    Failed to advise RAYMOND N. GRIFFIN, JR., his prescribing physician, and others that Vioxx carried risks of serious adverse effects;

    b.    Failed to advise RAYMOND N. GRIFFIN, JR., his prescribing physician, and others that there were serious risks of thrombotic events associated with Vioxx, and, instead, Defendants aggressively marketed, promoted, advertised directly to consumers, and/or sold Vioxx as if there was no risk; and

    c.    Failed to advise RAYMOND N. GRIFFIN, JR., his prescribing physician, and others that prior studies, research, reports and/or testing had been conducted linking Vioxx to serious adverse actions.

94.    The fraudulent or intentional misrepresentations and/or active concealment by Defendants were perpetuated directly and/or indirectly by the Defendants, employees, agents and/or other detail persons. The fraudulent or intentional misrepresentations and/or concealment by The Defendants constitute a

25

continuing tort.

95.   Through the Defendants' product insert and aggressive marketing efforts, Defendants continued to fraudulently or intentionally misrepresent the potential risks associated with Vioxx.

96.   Defendants had a post-sale duty to warn the consuming public and RAYMOND N. GRIFFIN, JR. prescribing physician of the risks of Vioxx in their labeling, advertising, product inserts, promotional materials, direct-to-consumer advertising, and other marketing efforts.

97.   Defendants fraudulently or intentionally misrepresented the safety and efficacy of Vioxx in their labeling, advertising, product insert, promotional materials, direct-to-consumer advertising, or other marketing efforts.

98.   RAYMOND N. GRIFFIN, JR., his prescribing physician, and other dispensing entities justifiably relied on and/or were induced by the fraudulent or intentional misrepresentations and/or active concealment of Defendants to the detriment of RAYMOND N. GRIFFIN and Plaintiff.

99.   On or about September 6, 2004, as a direct and proximate result of his ingestion of Vioxx, RAYMOND N. GRIFFIN, JR. suffered a severe myocardial infarction and died.

100.   As a direct and proximate result of RAYMOND N. GRIFFIN, JR.'S wrongful death, Plaintiff has endured mental pain and suffering, which she will continue to endure for the rest of her life, and has suffered the loss of RAYMOND N. GRIFFIN, JR.'S support and services. Plaintiff has also suffered the loss of RAYMOND N. GRIFFIN, JR.'S companionship, love and affection, which she will

26

continue to suffer for the rest of her life.

101.  As a further direct and proximate result of RAYMOND N. GRIFFIN, JR.'S wrongful death, the Estate of RAYMOND N. GRIFFIN, JR., by and through its Personal Representative, Louise M. Griffin, has suffered the loss of net accumulations to the Estate that would have been left as part of the Estate if RAYMOND N. GRIFFIN, JR. had survived and lived to his normal life expectancy.

WHEREFORE, Plaintiff, Louise M. Griffin, as Personal Representative of the Estate of RAYMOND N. GRIFFIN, JR. deceased, on behalf of the Estate of RAYMOND N. GRIFFIN, JR., and the lawful survivors of the Decedent to wit: Louise M. Griffin, as surviving spouse, demands judgment for damages against MERCK and the MARKETING DEFENDANTS in excess of Fifteen Thousand Dollars ($15,000.00), plus costs and interest and further demands trial by jury on all issues so triable.  Plaintiff hereby reserves the right to assert a claim for punitive damages upon a showing of the applicable pre-requisites.

### COUNT FIVE - NEGLIGENCE PER SE PURSUANT TO FLA. STAT. §499.077 (AGAINST MERCK)

102.  Plaintiff adopts by reference all of the General Allegations contained Paragraphs 1 through 53 above, each inclusive, as though fully set forth, pursuant to Rule 1.130(b), Florida Rules of Civil Procedure.

103.  Defendant, MERCK, had an obligation not to violate the law in the manufacture, testing, processing, labeling, packaging, advertising, marketing, distribution and sale of Vioxx.

104.   Pursuant to Florida Statute §499.007, MERCK had a statutory duty to all consumers, including the Decedent, RAYMOND N. GRIFFIN, JR. to not misbrand Vioxx, to not label in a false and misleading manner, and to include within the label of Vioxx adequate warnings against use in those pathological conditions in which its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such a manner and form as are necessary for the protection of users, including the Decedent, RAYMOND N. GRIFFIN, JR.

105.   MERCK knew or should have known that Vioxx caused unreasonably dangerous risks and serious side effects, including but not limited to significantly increasing the risks of cardiovascular events.

106.   Despite its knowledge or what it should have known, MERCK, aggressively advertised, marketed, sold and distributed Vioxx, knowing that there were safer methods and products for use with pain and inflammation.

107.   MERCK violated and breached the statutory duties contained within Florida Statute §499.007, including but not limited to the following:

   a.   Manufactured, processed, labeled, packaged, advertised, marketed,  distributed and sold Vioxx with a false, misleading and misbranded label;

   b.   Failure to include adequate warnings with Vioxx that would alert consumers to the potential risk and serious side effects of Vioxx;

   c.   Failure to warn that use of Vioxx statistically significant increases cardiovascular events, myocardial infarctions and death;

d.     Failure to warn that the mechanism by which these thrombotic and cardiovascular events occurred was discovered and scientifically confirmed;

e.     Failure to provide adequate after-market warnings or instructions after MERCK knew or should have known of the significant risks associated with the use of Vioxx .

108.   The Decedent, RAYMOND N. GRIFFIN, JR. used Vioxx in a manner for which it was intended and/or in a reasonably foreseeable manner.

109.   The Decedent, RAYMOND N. GRIFFIN, JR. was not aware of, and reasonably could not have discovered, the dangerous and/or defective nature of Vioxx.

110.   As a direct and proximate result of MERCK'S misbranded, false, misleading label and violation of Florida Statute §499.007, on or about September 6, 2004, as a direct and proximate result of his ingestion of Vioxx, RAYMOND N. GRIFFIN, JR., suffered a severe myocardial infarction and died, and as a direct and proximate result of RAYMOND N. GRIFFIN, JR.'S wrongful death, Plaintiff has endured mental pain and suffering, which she will continue to endure for the rest of her life, and has suffered the loss of RAYMOND N. GRIFFIN, JR.'S support and services. Plaintiff has also suffered the loss of RAYMOND N. GRIFFIN, JR.'S companionship, love and affection, which she will continue to suffer for the rest of her life.

WHEREFORE, Plaintiff, Louise M. Griffin, as Personal Representative of the Estate of RAYMOND N. GRIFFIN, JR. deceased, on behalf of the Estate of RAYMOND N. GRIFFIN, JR., and the lawful survivors of the Decedent to wit: Louise M. Griffin, as

surviving spouse, demands judgment for damages against MERCK and the MARKETING DEFENDANTS in excess of Fifteen Thousand Dollars ($15,000.00) plus costs and interest and further demands trial by jury on all issues so triable. Plaintiff hereby reserves the right to assert a claim for punitive damages upon a showing of the applicable pre-requisites.

### COUNT SIX - VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (AGAINST MERCK)

111.  Plaintiff adopts by reference all of the General Allegations contained in Paragraphs 1 through 53 above, each inclusive, as though fully set forth, pursuant to Rule 1.130(b), Florida Rules of Civil Procedure

112.  This is an action brought pursuant to the Florida Deceptive and Unfair Trade Practices Act contained at Fla. Stat. §501.201 et seq.

113.  MERCK, had an obligation not to violate the law in the manufacturing, testing, processing, labeling, packaging, advertising, marketing, distribution and sale of Vioxx.

114.  As detailed more specifically in the "Warning Letter" attached as Exhibit "A", MERCK, engaged in marketing and promotional activities that were found to be "false, lacking in fair balance, or otherwise misleading" in violation of the Federal Food, Drug and Cosmetic Act and applicable regulations.

115.  Such "false, lacking in fair balance, or otherwise misleading" advertising and promotional activities violate the Florida Deceptive and Unfair Trade Practices Act which makes it unlawful to engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

conduct of any trade or commerce. Fla. Stat. §501.204.

116.   As a direct and proximate result of MERCK'S violations of the Florida Deceptive and Unfair Trade Practices Act, on or about September 6, 2004, as a direct and proximate result of his ingestion of Vioxx, RAYMOND N. GRIFFIN, JR. suffered a severe myocardial infarction and died, and as a direct and proximate result of RAYMOND N. GRIFFIN, JR.'S wrongful death, Plaintiff has endured mental pain and suffering, which she will continue to endure for the rest of her life, and has suffered the loss of RAYMOND N. GRIFFIN, JR.'S support and services. Plaintiff has also suffered the loss of RAYMOND N. GRIFFIN, JR.'S companionship, love and affection, which she will continue to suffer for the rest of her life.

117.   Further, Pursuant to Section 501.211(2), of the Florida Deceptive and Unfair Trade Practices Act, Plaintiff seeks actual damages plus attorney's fees and Court costs.

118.   The Plaintiff has retained the law firm of Searcy Denney Scarola Barnhart & Shipley, P.A., and has agreed to pay reasonable attorney's fees for such services.

WHEREFORE, Plaintiff, Louise M. Griffin, as Personal Representative of the Estate of RAYMOND N. GRIFFIN, JR. deceased, on behalf of the Estate of RAYMOND N. GRIFFIN, JR., and the lawful survivors of the Decedent to wit: Louise M. Griffin, as surviving spouse, demands judgment for damages against MERCK and the MARKETING DEFENDANTS in excess of Fifteen Thousand Dollars ($15,000.00) plus attorneys fees and costs, as well as interest, and further demands trial by jury on all

31

issues so triable.   Plaintiff hereby reserves the right to assert a claim for punitive damages upon a showing of the applicable pre-requisites.

**COUNT SEVEN - NEGLIGENCE PER SE. MISLEADING ADVERTISING**
**FLORIDA STATUTE §817.41**
**(AGAINST MERCK AND THE MARKETING DEFENDANTS)**

119.   Plaintiff adopts by reference all of the General Allegations contained in Paragraphs 1 through 53 above, each inclusive, as though fully set forth, pursuant to Rule 1.130(b), Florida Rules of Civil Procedure.

120.   MERCK, had an obligation not to violate the law in the manufacturing, testing, processing, labeling, packaging, advertising, marketing, Distribution and sale of Vioxx.

121.   Pursuant to Florida Statute §817.41, MERCK, had a statutory duty to all consumers, including the Decedent, RAYMOND N. GRIFFIN, JR. not to disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement.

122.   MERCK knew or should have known that Vioxx caused unreasonably dangerous risks and serious side effects, including but not limited to significantly increasing the risks of cardiovascular events, and should have including such risks in its advertisements.

123.   Despite its knowledge, MERCK aggressively advertised, marketed, sold and distributed Vioxx, knowing that there were safer methods and products for use with pain and inflammation.

124.   MERCK, violated and breached the statutory duties contained within Florida Statute §817.41, including but not limited to the following:

32

     a.      Manufactured, processed, labeled, packaged, advertised, marketed, distributed and sold Vioxx with a false and misleading advertisements;

     b.      Failure to include in such advertisements adequate warnings with Vioxx that would alert consumers to the potential risk and serious side effects of Vioxx;

     c.      Failure to warn that use of Vioxx statistically significant increases cardiovascular events, myocardial infarctions and death;

     d.      Failure to warn that the mechanism by which these thrombotic and cardiovascular events occurred was discovered and scientifically confirmed;

     e.      Failure to provide adequate after-market warnings or instructions after MERCK knew or should have known of the significant risks associated with the use of Vioxx.

125.    The MARKETING DEFENDANTS unlawfully and in violation of Florida Statute 817.41 disseminated MERCK'S misleading advertisements to the general public of this State, including but not limited to the Decedent, RAYMOND N. GRIFFIN, JR.

126.    The Decedent, RAYMOND N. GRIFFIN, JR. used Vioxx in a manner for which it was intended and/or in a reasonably foreseeable manner.

127.    The Decedent, RAYMOND N. GRIFFIN, JR. was not aware of, and reasonably could not have discovered, the dangerous and/or defective nature of Vioxx.

128.    As a direct and proximate result of MERCK'S misleading advertisements, and

the MARKETING DEFENDANTS' ddissemination of MERCK'S misleading advertisements, in violation of Florida Statute §817.41, on or about September 6, 2004,  and because of his ingestion of Vioxx, RAYMOND N. GRIFFIN, JR. suffered a severe myocardial infarction and died.

129.  As a direct and proximate result of  RAYMOND N. GRIFFIN, JR.'S  wrongful death, Plaintiff has endured mental pain and suffering, which she will continue to endure for the rest of her life, and has suffered the loss of RAYMOND N. GRIFFIN, JR.'S support and services. Plaintiff has also suffered the loss of RAYMOND N. GRIFFIN, JR.'S companionship, love and affection, which she will continue to suffer for the rest of her life.

130.  Further, pursuant to Florida Statute Sec. 817.41(6), Plaintiff seeks actual damages, plus attorney's fees and costs.

131.   The Plaintiff has retained the law firm of Searcy Denney Scarola Barnhart & Shipley, P.A. to represent her interests in this matter, and has agreed to pay reasonable attorney's fees for such services.

WHEREFORE, Plaintiff, Louise M. Griffin, as Personal Representative of the Estate of RAYMOND N. GRIFFIN, JR. deceased, on behalf of the Estate of RAYMOND N. GRIFFIN, JR., and the lawful survivors of the Decedent to wit: Louise M. Griffin, as surviving spouse, demands judgment for damages against the MARKETING DEFENDANTS in excess of Fifteen Thousand Dollars ($15,000.00), plus attorneys fees, costs and interest, and further demands trial by jury on all issues so triable. Plaintiff hereby reserves the right to assert a claim for punitive damages upon a showing of the

applicable pre-requisites.

## DEMANDS FOR JURY TRIAL

The Plaintiff herein requests a trial by jury of all issues so triable by right.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing has been delivered to a process server for service upon the Defendants herein this 5th day of September, 2006.

CHRISTIAN D. SEARCY
Florida Bar No.: 158298
TODD R. FALZONE
Florida Bar No.: 9750184
DARRYL L. LEWIS
Florida Bar No.  818021
Searcy Denney Scarola Barnhart &
Shipley, P.A.
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409
Telephone: (561) 686-6300
Facsimile:  (561) 478-0754
Attorneys for Plaintiff

JOHN H. SHANNON
Florida Bar No.: 194693
5300 South Florida Avenue
Suite E1
Lakeland, Florida 33813-2519
Telephone: (863) 619-7464
Facsimile:  (863) 619-8276
Co-Counsel for Plaintiff