UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-20042-CIV-GOLD/TURNOFF

FLAVIO MONTENEGRO,

    Plaintiff,

v.

MERCK & CO., INC., DAVID C.
SOSA, and ALEXANDER MURIAS,

    Defendants.

_____/

## FINAL ORDER OF REMAND; CLOSING CASE

THIS CAUSE comes before the Court on Plaintiff's Motion for Remand [DE 9] to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The parties have filed a Response and Reply, as well as affidavits in support of their arguments. Having reviewed the Motion and related pleadings, along with the case law and the pertinent portions of the record, I conclude that oral argument is unnecessary and remand this case back to state court.

### I. Factual Background

On September 18, 2007, Plaintiff Flavio Montenegro ("Plaintiff" or "Montenegro") filed this action against Merck & Co., Inc. ("Merck"), and Merck's Sales Representatives, David C. Sosa ("Sosa") and Alexander A. Murias ("Murias"), in state court. The action arises from the sale and marketing of the prescription drug Vioxx. According to Plaintiff, the drug was manufactured by Merck and marketed by Sosa and Murias. The Complaint contains counts for strict liability, negligence *per se* pursuant to Fla. Stat. § 499.077, and


PLAINTIFF'S EXHIBIT C

violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against Merck, and counts for negligence, negligent misrepresentation, fraud, and negligent *per se* pursuant to Fla. Stat. § 817.41 (Misleading Advertising) against Merck, Sosa, and Murias (collectively, "Defendants"). According to Plaintiff, Defendants negligently and fraudulently manufactured, sold, distributed, marketed and/or otherwise promoted Vioxx without proper warnings as to the dangers associated with its use. On October 24, 2002, Plaintiff suffered a stroke as a result of his ingestion of Vioxx, which had been prescribed to him, and also provided in the form of samples, by his physician, Robert A. Moya, M.D. ("Dr. Moya").

Merck is a New Jersey corporation with its principal place of business in New Jersey. Montenegro, Sosa and Murias are all Florida citizens. Merck removed the action to federal court pursuant to the district courts' diversity of jurisdiction based on the diversity of citizenship between Merck and Montenegro. According to Merck, the citizenship of Sosa and Murias shall be disregarded because these defendants were fraudulently joined. Subsequently, Plaintiff filed this Motion for Remand.

In the Motion for Remand, Plaintiff argues that this Court lacks subject matter jurisdiction because Merck has failed to meet its burden of establishing fraudulent joinder. According to Plaintiff, since the Complaint contains a reasonable basis for imposing liability on the individual non-diverse defendants under Florida law, Sosa and Murias have been properly joined and there is no diversity of jurisdiction over this case. Defendant Merck argues that the case has been properly removed because it has submitted undisputed affidavits demonstrating that Plaintiff cannot prevail on his claims against the non-diverse defendants.

2

## II. Standard of Review

When a district court has original jurisdiction over a civil action brought in state court, the parties may remove the suit to the federal district court of the district embracing the place where such action is pending. See 28 U.S.C. § 1441 (a); see also Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). On a motion for remand, the removing party bears the burden of showing the existence of federal jurisdiction. Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1373 (11th Cir. 1998). Courts construe removal jurisdiction narrowly and resolve any doubts regarding the existence of federal jurisdiction in favor of the non-removing party. Id.; see also Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996) ("The removal statute should be construed narrowly with doubt construed against removal."). When a federal district court lacks subject matter jurisdiction over a case removed from state court, remand is required. Land v. Cigna Healthcare of Fla., 381 F.3d 1274, 1276 (11th Cir. 2004).

Federal district courts have original and exclusive jurisdiction over any civil action where the amount-in-controversy exceeds $75,000, and there is complete diversity among the parties. See 28 U.S.C. § 1332; Florence v. Crescent Res., LLC, 484 F.3d 1293, 1297 (11th Cir. 2007) ("[F]ederal district court's diversity jurisdiction ... requires complete diversity of citizenship."). The courts have created the doctrine of fraudulent joinder as an exception to the requirement of complete diversity. Triggs v. John Crump Toyota Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). Under this doctrine, the citizenship of fraudulently joined defendants

3

is not be considered in deciding whether there is complete diversity among the parties.[1] See Kimmons v. IMC Fertilizer, Inc., 844 F. Supp. 738, 740 (M.D. Fla. 1994); Woods v. Firestone Tire & Rubber Co., 560 F. Supp. 588, 590 (S.D. Fla. 1983).

To establish fraudulent joinder, a party must show that either: (1) the plaintiff has no possibility of establishing any cause of action against the non-diverse defendants; (2) the plaintiff has fraudulently pled jurisdictional facts in order to bring the non-diverse defendant into state court; or, (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. Triggs, 154 F.3d at 1287; Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). The heavy burden of proving fraudulent joinder is on the removing defendant. See Crowe, 113 F.3d at 1538 ("The burden of the removing party is a heavy one.").

"The potential for legal liability must be reasonable, not merely theoretical." Legg v. Wyeth Pharm., Inc., 428 F.3d 1317, 1325, n. 5 (11th Cir. 2005) (internal quotations omitted). In considering whether a possible state law claim exists, "possible must mean more than such a possibility that a designated residence can be hit by a meteor tonight... [A]s in other instances, reason and common sense have some role." Id. (quoting Braden v. Wyeth, Case No. 04-235, 2005 U.S. Dist. LEXIS 25243 (N.D. Ala. June 30, 2005)). As long as one colorable claim against one non-diverse defendant has been stated, joinder is proper and

---

[1] Plaintiff in this case argues that Merck's removal notice is defective because neither Sosa nor Murias properly consented to the removal of this action. Whether the notice of removal is defective turns on whether the non-diverse defendants were in fact fraudulently joined. As courts in this circuit have explained, fraudulently joined defendants need not consent to removal. See, e.g., Kimmons, 844 F. Supp. at 740; Woods, 560 F. Supp. at 590.

the case must be remanded. *Irvin v. Merck & Co., Inc.*, Case No. 03-80514 (S.D. Fla. Oct. 19, 2003) (Hurley, J.).

The Eleventh Circuit has repeatedly held that "the determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg*, 428 F.3d at 1322 (quoting *Pacheco de Perez*, 139 F.3d at 1380). The appropriate proceeding for resolving allegations of fraudulent joinder have been compared to the standard used for ruling on a motion for summary judgment. *Id.* at 1322-23 (quoting *Crowe*, 113 F.3d at 1538). In the context of fraudulent joinder, however, all questions of fact must be resolved in favor of the plaintiff. *Id.* at 1323 (quoting *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)).

Where the defendant submits an affidavit and the plaintiff fails to dispute it, there is no question of fact for a court to resolve. *Id.* The court in *Legg* explained that an actual controversy exists only when both parties have submitted evidence of contradictory facts. *Id.* (quoting *Badon v. RHR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000)). The Court does not, "*in the absence of any proof ... assume that the nonmoving party could or would prove the necessary facts.*" *Id.* (emphasis in original). Finally, in making a fraudulent joinder inquiry, "the court is not to weight the merits of the plaintiff's claims beyond determining whether it is an arguable one under state law." *Tomlin v. Merck Co., Inc.*, Case No. 0414335 (S.D. Fla. Feb. 18, 2005) (Moore, J.) (quoting *Cabalceta*, 883 F.2d at 1561); *Pacheco*, 139 F.3d at 1380 ("The fact that the plaintiffs may not ultimately prevail against the individual [non-diverse] defendants ... does not mean that the plaintiffs have not stated

5

a cause of action for purposes of the fraudulent joiner analysis."). With these principles in mind, I will consider whether plaintiff has stated at least one colorable claim against Sosa or Murias.

### III. Analysis

#### A. Renewed Motion to Stay

Prior to the filing of this lawsuit, on February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order transferring 148 Vioxx products liability cases to the U.S. District Court for the Eastern District of Louisiana for coordinated pretrial proceedings under 28 U.S.C. § 1407. On January 10, 2008, Merck sought a stay of all proceedings in this case pending transfer of the action to that Multidistrict Litigation, *In re VIOXX Products Liability Litigation*, MDL No. 1657 (Fallon, J.). Following a telephonic status conference, I denied the Motion to Stay [DE 8]. On February 2, 2008, Merck filed a Conditional Transfer Order and Renewed Motion to Stay Proceedings Pending Transfer Decision by Judicial Panel [DE 11]. During a telephonic status conference on the Renewed Motion, I advised the parties of my intent to consider the Motion for Remand, and informed the parties that the previously scheduled hearing on the Motion to Remand would remain on the calendar.

Merck continues to argue that in light of the conditional transfer to the MDL, formal transfer is imminent, that the MDL can decide the remand motion, and that a stay is necessary to achieve judicial economies. Plaintiff points out that the conditional transfer has been stayed as a result of his opposition and his Motion to Vacate Conditional Transfer, filed February 22, 2008. In addition, Plaintiff points out that judicial economy will not be served since Judge Fallon decided, in 2005, that he will not consider any remand motions at this time. Specifically, during a hearing held on June 23, 2005, Judge Fallon stated:

6

> There are various issues of remand in various cases throughout the country. Again, a significant advantage of the MDL concept is some consistency. If different decisions are made by numerous judges, then you have no consistency and no predictability and no one knows exactly what to do or how to do it. It's easier if one court decides some of these matters than if 50 or 100 courts decide the matter.
>
> I'm conscious of dealing with the remand as quickly as possible, but I do want to get them all together, look at them, see if I can group them in some way, and then direct my attention on each particular group and deal with that issue in a consistent and fair fashion for that group. I will be dealing with them as quickly as I can, but also with an idea of having more consistency.

(June 23, 2005 Hearing, p. 21). While I agree with Judge Fallon that consistency is desirable, it has been nearly three years since the hearing and Judge Fallon has not had the opportunity to address the various motions for remand. It is unknown at this time how many more months, or years, it will take for Judge Fallon to get these motions "all together." As the Plaintiff noted during the prior telephonic status conferences, allowing this case to be transferred to the MDL where it will likely be tied up for months or years before the Motion for Remand is considered does not serve judicial economy, specially if, as here, remand is appropriate. Further, since a motion for remand challenging an allegation of fraudulent joinder must be analyzed in light of the state law claims, each motion will have to be individually addressed. For the reasons discussed during the telephonic status conferences and herein, Merck's Renewed Motion to Stay [DE 11] is denied.

B.  Fraudulent Joinder

In its Notice of Removal, Merck alleges that Plaintiff makes no specific factual allegations regarding any actual conduct of Sosa or Murias. Further, Merck argues that the negligent representation and fraud claims are deficient because Plaintiff has not specifically alleged that these Defendants made a misrepresentation to the Plaintiff or his

7

prescribing physician, and because Plaintiff has failed to plead the claims with particularity. As to the negligence *per se* claim pled against the sales representatives, Merck argues that Plaintiff has failed to allege the required knowledge by Defendants, and reliance by Dr. Moya.[2] To support its arguments, Merck submitted the affidavits of Sosa and Murias, in which they assert, among other things, that:

1. At not time did they ever provide Vioxx or information concerning Vioxx directly to Montenegro. (Murias Aff, ¶ 2; Sosa Aff., ¶ 2).

2. That the information used during the course of their employment was provided by Merck, including FDA-approved prescribing information. (Murias Aff, ¶ 3; Sosa Aff., ¶ 3).

3. They were not expected to conduct independent research regarding the drugs they detailed; nor were they expected to review independent scientific studies published in journals unless Merck supplied those to them. (Murias Aff, ¶ 3; Sosa Aff., ¶ 3).

4. The physicians they dealt with were in a better position than them to make determinations concerning prescribing Vioxx. (Murias Aff, ¶ 4; Sosa Aff., ¶ 4).

5. They made no knowing misrepresentations concerning the safety or efficacy of Vioxx; and they acted in good faith at all times in their dealings with physicians who may have prescribed Vioxx. (Murias Aff, ¶ 6; Sosa Aff., ¶ 6).

Contrary to Merck's argument that no allegations have been made regarding Sosa and Murias' personal involvement, and that the plaintiff has failed to allege that these defendants made a misrepresentation to Plaintiff's prescribing physician, the Complaint specifically alleges, among other things, that:

> Defendants intentionally and knowingly misrepresented the safety and effectiveness of Vioxx to Plaintiff's prescribing physician, Roberto A. Moya,

---

[2] Merck did not address the negligence claim in its Notice of Removal.

8

> M.D. prior to his prescribing same to MONTENEGRO, and concealed or understated the dangerous side effects associated with ingestion of Vioxx to Dr. Moya, to wit: SOSA and MURIAS explicitly dismissed the concerns voiced by Dr. Moya in regard to the safety of Vioxx, particularly in regard to the Vigor study; claimed that the Vigor study was "biased," that the numbers reported in the study in regard to the increased risk of heart attack and strokes were "wrong," and that the Vigor study was made up of "older people" who already had an increased risk of heart attach and stroke; claimed that the negative information in the medical community about Vioxx's safety was false and was being put forth by the "Celebrex" people; showed Dr. Moya bogus safety information in regard to Vioxx; called upon Dr. Moya in an aggressive manner in an effort to talk to him into using Vioxx on his patients, approaching him weekly, and taking Dr. Moya and his wife out for expensive dinners in chauffeured limousines. As a direct and proximate result of these acts and misrepresentations, Dr. Moya prescribed Vioxx to MONTENEGRO. But for the said acts and misrepresentations, Dr. Moya would not have prescribed said drug to MONTENEGRO.

(Compl., ¶ 52). Additionally, in conjunction with the Motion for Remand, Plaintiff submitted the affidavit of Dr. Moya detailing, among other things, the alleged personal involvement of Sosa and Murias as to the claims asserted against them. (See Moya Aff., ¶ 7). Plaintiff has also submitted a Memorandum, dated My 5, 2005, prepared by U.S. Rep. Henry A. Waxman to the Democratic Members of the Government Reform Committee concerning the marketing of Vioxx to physicians (the "Waxman Memo"). The report was created after analyzing over 20,000 of Merck documents, and following a hearing on the subject. The Report concluded that Merck used its sales representatives to improperly ameliorate safety concerns of prescribing physicians.[3]

---

[3]

Merck objects to the Waxman Memo on the basis that it is hearsay, and that none of the recognized exceptions to the Hearsay Rule apply. As discussed in greater detail below, I conclude that there is a colorable claim for negligence *per se* without the need to consider the Waxman Memo. Therefore, I need not resolve the issue of whether the Waxman Memo is hearsay in the first instance, or whether it can be admitted pursuant to the public records and reports exception under the Rule.

9

Here, Plaintiff has brought four claims against the non-diverse defendants, including a Negligence *Per Se* claim based on an alleged violation of Florida Statute § 817.41, which makes it unlawful to:

> make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.

Fla. Stat. § 817.41(1). Florida courts have held that "the adoption of section 817.41(1) requires one seeking to maintain a civil action for violation of the statute to prove each of the elements of common law fraud in the inducement." *Joseph v. Liberty Nat'l Bank*, 873 So. 2d 384, 388 (Fla. 5th DCA 2004). To state a cause of action for fraud in the inducement, the plaintiff must allege the following: "(a) the representor made a misrepresentation of a material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and, (d) the plaintiff suffered injury in justifiable reliance on the representation." *Id.* (citing *Samuels v. King Motor Co. of Ft. Lauderdale*, 782 So. 2d 489 (Fla. 4th DCA 2001)). The definition of misleading advertising provided in § 817.41(1) refines the element related to the representor's knowledge in as much as it "includes the requirement that the representor make or disseminate oral, written or printed statements which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading." *Id.* (internal quotations omitted); *see also* Fla. Stat. § 817.41(1). It has long been established in Florida that a drug manufacturer's detail man who makes misrepresentations to a prescribing physician may

10

be liable to the ingesting patient if the doctor relied on those misrepresentations. *See Albertson v. Richardson-Merrell, Inc.*, 441 So. 2d 1146, 1150 (Fla. 4th DCA 1983). In *Albertson*, the Court stated:

> It is eminently clear that [the drug manufacturer] and its detail man's purpose in allegedly misinforming physicians about the safety of taking Bendectin was not to persuade physicians (unless they had morning sickness) to buy and ingest that preparation. Obviously they not only expected but desired these physicians to prescribe the drug for their pregnant patients to ingest.

*Id.*

Merck argues that there is no possibility of prevailing against Sosa and Murias on this claim because Plaintiff cannot prove that these defendants made a "knowing" misrepresentation. In addition, Merck argues that the claim fails because the Complaint does not allege that Plaintiff relied on any of the alleged misrepresentations. I disagree. First, as already discussed, the Complaint contains allegations that Sosa and Murias misrepresented the safety and effectiveness of Vioxx to Plaintiff's prescribing physician; that they made the representations to induce Dr. Moya to prescribe Vioxx to Plaintiff; that Dr. Moya relied on those misrepresentations when he prescribed Vioxx to Plaintiff; and, that Plaintiff suffered an injury based on such reliance. (Compl., ¶¶ 52-54). Moreover, Dr. Moya has testified that he "expressly relied upon the information and representations made by Mr. Sosa and Mr. Murias and, as a result, decided to prescribe Vioxx to ... Montenegro." (Moya Aff., ¶ 8). In Florida, a plaintiff may assert a claim against a drug company's detail man that makes fraudulent or false statements to plaintiff's prescribing physician. *See Albertson*, 441 So. 2d at 1150 (holding that drug manufacturer, as well as the individual who promoted the drug to the medical profession, would be held liable for damages

11

resulting from patient's use of that drug).

As to the knowledge element, although Murias and Sosa have testified that they made no "knowing misrepresentation" and that they "acted in good faith", Fla. Stat. § 817.41(1) imposes liability if the person "should have known" of the falsity of the statement. Under Florida case law, the knowing element imputes to the representor knowledge that could have been acquired through the exercise of reasonable care or investigation. *See Joseph*, 873 So. 2d at 388. Therefore, Plaintiff's allegation regarding Sosa and Murias' knowledge, as defined in the statute, has not been refuted by the affidavits which only addressed actual knowledge of the non-diverse defendants. Further, while it might be true that Merck did not expect Sosa and Murias to conduct independent research regarding the drugs they detailed, the statute at issue seems to establish such a duty. *See Crowe*, 113 F.3d at 1538 (stating that in determining whether to remand a case, the court must resolve all questions about the substantive law in favor of the plaintiff). Therefore, Plaintiff's complaint and the affidavit of Dr. Moya, with all inference taken in Plaintiff's favor, has sufficiently shown that there is a reasonable possibility that Plaintiff may succeed in his claim for negligence *per se* against Sosa and Murias. *See Tomlin v. Merck Co., Inc.*, Case No. 0414335 (S.D. Fla. Feb. 18, 2005) (Moore, J.) ("[T]he court is not to weight the merits of the plaintiff's claims beyond determining whether it is arguable one under state law.") (quoting *Cabalceta*, 883 F.2d at 1561).

The affidavits of Sosa and Murias do not decisively establish that they could not have learned of the dangers of Vioxx through the exercise of reasonable care or

investigation.[4] In fact, the record evidence is silent as to whether Sosa and Murias should have known about the dangers, with or without a reasonable investigation. Because Merck has failed to meet the heavy burden of establishing fraudulent joinder, there is no complete diversity among the parties. Thus, having reviewed the Complaint, and having considered the affidavit testimony of Sosa, Murias, and Dr. Moya, as well as the applicable law, I conclude that Sosa and Murias have been properly joined and that I do not have subject matter jurisdiction over Plaintiff's Complaint.[5]

---

[4]

Merck relies on *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005), and *Clay v. Wyeth*, Case No. 04-192-10GRJ, 2004 U.S. Dist. LEXIS 28727 (M.D. Fla. Aug. 17, 2004) for its argument that because the sales representatives have testified that they "made no knowing misrepresentations concerning the safety or efficacy of Vioxx..." all the state law claims asserted against them fail as a matter of law. However, in *Legg*, the Eleventh Circuit was not reviewing the district court's decision to remand the case since the Court of Appeals lacks jurisdiction over a case that has been remanded back to state court. Instead, in *Legg*, the court reviewed the merits of the remand order only to consider whether the district court abused its discretion in awarding attorneys' fees and costs. Second, the *Legg* case was decided under Alabama law, which required the plaintiff to prove bad faith before liability could be imposed for fraud. The case has no application to Florida Statute § 817.41 or the other Florida claims alleged by Montenegro. Finally, the *Legg* decision was based partly on the sales representatives' testimony that they were not aware of the dangers associated with the drug. Sosa and Murias have not testify as to their knowledge of the drug's dangers – stating that they made no knowing misrepresentation does not mean that they were not aware of any of the safety concerns. Similarly, in the *Clay* case, the Middle District of Florida concluded that based on the sales representatives' undisputed testimony that they were not aware of any alleged association between the drug and valvular heart disease, there was no reasonable basis for predicting that Florida law may impose liability for any of the purported causes of actions (fraud, negligence, and negligent misrepresentations). Here, Sosa and Murias have not testified that they were unaware of the connection between Vioxx and heart disease. Additionally, the negligence *per se* claim in this case is colorable even if the sales representatives would have so testified.

[5]

Since the Complaint alleges a colorable claim for negligence *per se* against Sosa and Murias under Florida law, and noting that in so concluding I considered the affidavits of Sosa, Murias, and Dr. Moya, I need not review the negligence, negligent misrepresentation, or fraud claims asserted against the non-diverse defendants. *Cf. Tomlin v. Merck Co., Inc.*, Case No. 0414335, n. 2 (S.D. Fla. Feb. 18, 2005) (Moore, J.).

13

## IV. Conclusion

For the reasons discussed above, I conclude that Sosa and Murias were not fraudulently joined. Accordingly, it is hereby **ORDERED and ADJUDGED** that:

1. Merck's Renewed Motion to Stay **[DE 11]** is **DENIED**.

2. Plaintiff's Motion for Remand **[DE 9]** is **GRANTED**.

3. Oral argument on the Motion for Remand, previously scheduled for Friday, March 7, 2008 at 10:00 a.m., is **CANCELLED**.

4. The Clerk of the Court shall remand this case to the Clerk of the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.

5. All other pending motions are **DENIED AS MOOT** and all hearings are **CANCELLED**.

6. The Clerk of Court is instructed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in Miami, Florida this _6_ of March, 2008.

**THE HONORABLE ALAN S. GOLD**
**UNITED STATES DISTRICT JUDGE**

cc:
U.S. Magistrate Judge William C. Turnoff
All counsel of record

---

("[B]ecause the complaint contains sufficient allegations to support their negligence claim against [the non-diverse defendant], the Court need not address the sufficiency of the additional claims.").

14

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Steven M. Larimore
Court Administrator • Clerk of Court

301 North Miami Avenue
Miami, Florida 33128-7788
(305) 523-5100

March 7, 2008

ATTN: Civil Correspondence Clerk
Clerk of the Circuit and County Courts
138 Dade County Courthouse
73 West Flagler Street
Miami, FL 33130

RE: Flavio Montenegro vs. Merck & Co.
Our case No.: 08-20042-CV-Gold
Your case No.: 07-44868CA23

Dear Sirs:

Enclosed please find a certified copy of this Court's Order of Remand in the above referenced case.

Please acknowledge receipt of the above on the enclosed copy of this letter.

Steven M. Larimore
Court Administrator•Clerk of Court

by: _____
Deputy Clerk

Enclosures

CLERK'S ACKNOWLEDGMENT OF RECEIPT

of: Certified copy of order of remand

is hereby acknowledged. This case has been assigned our case number:

_____

by: _____, Deputy Clerk

on: _____

*"It is our honor and duty to provide the support necessary to enable the Court as an institution to fulfill its constitutional, statutory, and societal responsibilities for all who seek Justice."*