UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX® | ) | MDL Docket No. 1657 |
| | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION L |
| | ) | |
| | ) | Judge Eldon E. Fallon |
| | ) | Magistrate Judge Knowles |

| | |
|---|---|
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| Plaintiffs Represented by the Law | ) |
| Office of Ronald R. Benjamin Identified | ) |
| in October 8, 2008 Order Scheduling | ) |
| Conferences, Exhibit B, Nos. 9 - 39 | ) |

## RONALD R. BENJAMIN PLAINTIFFS' EXPEDITED MOTION AND INCORPORATED MEMORANDUM TO RECONSIDER AND VACATE IN PART THIS COURT'S OCTOBER 8, 2008 ORDER SCHEDULING CONFERENCES AND COMPELLING THEIR APPEARANCE IN PERSON OR BY TELEPHONE

On October 8, 2008, this Court filed its Order Scheduling Conferences compelling counsel and thirty-one (31) plaintiffs listed on Exhibit B thereto who are represented by the Law Office of Ronald R. Benjamin to appear personally before this Court for a Case Management Conference to be held at 10:00 a.m., on October 20, 2088, in Courtroom 6A at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York (hereafter "Order"). The aforesaid plaintiffs hereby file the instant expedited motion pursuant to Fed.R.Civ.P. 16 for this Court to reconsider and vacate so much of the Order as

compels their personal appearance or participation by telephone at the said Case Management Conference.

The motion opposes this Court's Order in part on the grounds that plaintiffs who for the most part are elderly and suffering from significant physical ailments, many of whom are living on fixed incomes are being required to travel hundreds of miles to appear at the United States District Courthouse in Manhattan so that the Court can "ensure that plaintiffs who are the eligible for the Vioxx settlement program but who have not enrolled in the program, ...have all necessary information available to them so they can make informed choices." Order, at p. 1, para. 1. It is not clear what, if any, basis the Court has for apparently concluding these plaintiffs' counsel has withheld information from his clients regarding the settlement. Nor is it clear why the information cannot be submitted to them in writing since the Court having determined to intrude upon the relationship between plaintiffs and their counsel as a practical matter should employ the least intrusive means available.

If, in fact, the intent of the Conference is to make an oral presentation it is difficult to interpret the same as anything other than advocacy for the settlement in an environment that is necessarily going to be viewed as coercive by the individual plaintiffs. In this case, not only have the plaintiffs previously advised, in writing, that they are not willing to accept the settlement, but counsel has reiterated their desire to reject the settlement. Since the Court's authority derives from Rule 16 of the Federal Rules of Civil Procedure, it is respectfully submitted this Court is without authority to compel the attendance of either counsel or the individual

plaintiffs because it is well settled that a court has no authority to coerce plaintiffs into settling their claims. *See* Dawson v. United States, 68 F 3rd 886, 897 (5th Cir. 1995); Goss Graphics Sys., Inc., v. Dev Industries, Inc., 267 F.3d 624, 627 (7th Cir. 2001); In Re Ashcroft, 888 F. 2d 546, 547 (8th Cir. 1989) ("The law does not countenance attempts by courts to coerce settlements.").

Since the conference is scheduled to be held in Manhattan, it is only necessary to note that the Second Circuit has made clear that, "Rule 16 of the Fed.R.Civ.P. was not designed as a means for clubbing the parties – or one of them – into an involuntary compromise." Kothe v. Smith, 771 F.2d 667, 669 (2d Cir. 1985). In Salahuddin v. Harris, 782 F.2d 1127, 1133 (2d Cir. 1986), the Second Circuit reiterated that "Rule 16(f) was not intended to stretch so far."

Thus, plaintiffs submit, however the Court characterizes the conference, it is *not* one in which the parties are being encouraged to enter into settlement discussions, but rather the plaintiffs are being hauled into court, with their counsel, to do what they have already done, namely to reject the settlement. They submit that however broad this Court's inherent authority may be, requiring plaintiffs and their counsel to incur significant time and expense that could otherwise be deployed in litigating the merits appears to be beyond the reach of the court's inherent powers.

Although the premise that federal courts lack the power to coerce settlement appears to be well settled, and the fact that the Court has labeled the conference as a Case Management Conference does not make it so, it nevertheless is unlikely at

this stage that plaintiffs would be entitled to a writ of mandamus. See In Re Ashcroft, 888 F. 2d 546 (8th Cir. 1989) (recognizing that while the law does not countenance attempts by courts to coerce settlement, mandamus and prohibition denied). It follows that the most practical avenue for plaintiffs is to register their opposition and appeal to the Court to reconsider and vacate its decision.

It is only necessary to begin by noting that if the instant conference is not an outright insult to individual counsel who have advised the clients about the pros and cons of the settlement, it certainly denigrates their role and necessarily places the Court in an adversarial posture that is going to leave the plaintiffs wondering whether or not they will be able to receive a fair opportunity to be heard or trial before the Court should they adhere to their decision to reject the settlement. After all, other than the raw judicial power that the Court carries with it in the courtroom, the opinions to be set forth regarding the pros and cons of the settlement are not going to be any different than those previously discussed among plaintiffs and their counsel.

In requiring personal appearance of the plaintiffs, it is obvious the Court anticipates some dialogue. Since the Court is fully aware the plaintiffs are not lawyers and may inadvertently make admissions Merck can use at trial, it is not clear what, if any, weight the Court attaches to counsel's judgment that clients should not be engaging in any dialogue outside of the what would traditionally take place in a deposition for which a client can be prepared in advance. If no dialogue is anticipated between plaintiffs and either the court or representatives from Brown, the plaintiffs' attendance becomes a pointless exercise.

In turning to the substance of any presentation, with all due deference to this Court's experience in Vioxx trials and litigation, it is unlikely that the Court will hold a symposium going into an explanation of each of the three gates that must be passed in order to be eligible for compensation, or detailing each of the requirements, e.g., explaining the science that governs the assignment of points for various risk factors for cardiovascular disease, or the legal nuances attached to clients executings binding release and waiving the legal claims that they are now entitled to bring, or any other number of issues that are embodied in the rather lengthy complicated settlement agreement. The reason it is unlikely such detail will be discussed is that there is nothing unique about this litigation or these plaintiffs that would permit an inference the only real question a client is interested in is how much am I going to get and when am I going to get it. Accordingly, it is likely the presentation will be from a broader perspective of providing the client with the risks and benefits of either accepting or rejecting the settlement.

What is not clear is the role the Court anticipates individual counsel is to play in the course of this dialogue. If the Court describes a number of victories Merck has achieved as an indication of the risk inherent in proceeding to trial, is individual counsel expected, or even going to be permitted, to set forth opinions regarding the fact that the bulk of the trial victories turned on the individual plaintiffs' inability to link their specific injuries with ingestion of Vioxx? This Court's views with regard to risks have already been set forth with the Court indicating it believes that they are "considerable" and have become "even more daunting in light of verdict returned by juries in this Court's bellwether trials– only

one of the six trials resulted in a verdict for the plaintiff." Memorandum Decision and Order of August 27, 2008, at p. 18.

The Court's views are shared by neither the plaintiffs who have rejected the settlement nor their counsel. It is hard to see how the conference would be much more than a debate about the merits of the settlement unless the Court contemplates the role of individual counsel to be one of silence. Any judicially imposed silence upon counsel would speak loudly to the coercive nature of the conference if only one side was permitted to address the merits of the settlement.

In the course of promoting the settlement to individually retained counsel after it was announced, one of the selling points mentioned by the Plaintiffs' Steering Committee (PSC), which traveled about the country, was that it would take a long time to receive a trial. Since this Court has characterized the litigation as "extremely mature," if the issue arises with regard to trials being years away, will a response be permitted suggesting that, if in fact jury trials are years away, it is only because the Court will not remand for trial the cases to the transferor courts from which they came?

This Court has observed there are a "host of complex legal issues unique to the instant litigation." *Id.* It is respectfully submitted that these are likely to be beyond the ken of a layperson. For example, the issue of preemption has been bandied about in the course up promoting the settlement. If the issue of preemption is raised as a risk factor, will the Court permit a response indicating that regardless of the Supreme Court's decision, it is unlikely to impact a pharmaceutical

manufacturer's post-FDA-approval activity?   It would be impossible to address each and every issue that could arise in the course of the conference, but it is manifestly clear that the Court's views are at odds with those individual plaintiffs who have refused to accept the settlement as well as their counsel.

It is equally clear that because of the sprawling nature of the settlement agreement it would be a "no-brainer" to come up with a point or an issue that individual plaintiffs and their counsel did not specifically discuss.  By the same token there is no basis to assume that each and every particular factor would tip the balance one way or the other.  Accordingly, any such discussion would serve no viable purpose other than interfering with the relationship between the individual plaintiffs and their counsel.

In conclusion, cloaking the conference with the purported need to provide plaintiffs with "necessary information" does not in any respect diminish the potentially coercive effect of juxtaposing the plaintiffs who have already notified the court, in writing, that they have rejected the settlement,  Judge Posner has characterized as a "litigant sitting at a command performance before a judge who injects himself into an adversarial  role for either of the parties' positions." G. Heileman Brewing Co.  Inc., v. Joseph Oat Corp., 871 F.2d 648, 662, dissent. op. (7th Cir. 1989) ( en banc).

WHEREFORE, plaintiffs respectfully urge this Court on an expedited basis to reconsider and vacate its order of October 8, 2008, and cancel the impending conference scheduled for October 20, and vacate the requirement that these plaintiff

must appear for a Case Management Conference. It is respectfully submitted that the expedited nature of this motion is necessitated by the fact that the conference is scheduled to occur on Monday, October 20, 2008. This motion is filed less than ten (10) days after the issuance of the Order.

Dated: October 16, 2008

                                            Respectfully submitted,

                                       _____
                                       Ronald R. Benjamin, Fed. No. 110131
                                       LAW OFFICE OF RONALD R. BENJAMIN
                                       126 Riverside Drive, P.O. Box 607
                                       Binghamton, NY 13902-0607
                                       607/772-1442

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2008, the above and foregoing Motion to Vacate Scheduling Order has been served on Liaison Counsel, Russ Herman, Esq., and Phillip Wittman, Esq., and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No.8B, and that the foregoing was electronically filed with the Clerk of the District Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send notification of such filing to the following:

1. Russ Herman, Esq.

2. Phillip Wittmann, Esq.

_____
Ronald R. Benjamin, Fed. No. 110131
LAW OFFICE OF RONALD R. BENJAMIN
126 Riverside Drive, P.O. Box 607
Binghamton, NY 13902-0607
607/772-1442