UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | : | MDL NO. 1657 |
| IN RE: VIOXX | : | |
| PRODUCTS LIABILITY LITIGATION | : | SECTION:  L |
| | : | |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : 

THIS DOCUMENT RELATES TO:

*AvMed, Inc., et al. v. BrownGreer, PLC, et al.*, No. 08-1633

*1199 SEIU Greater New York Benefit Fund, et al. v. BrownGreer, PLC, et al.*, No. 08-3627

## ORDER & REASONS

Before the Court are several motions arising out of two non-governmental, third-party payor/provider cases consolidated within the Vioxx Multidistrict Litigation.  These cases involve two separate groups of plaintiffs, both of whom sought to enjoin distribution of interim payments in the Vioxx Settlement Program pursuant to § 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. 1132 (a)(3) ("ERISA").  *See* Rec. Docs. 14640, 14877.  As the named defendant in both actions, BrownGreer, PLC, the Vioxx Claims Administrator, opposed the motions for an injunction.  In addition, BrownGreer sought to sever the AvMed Plaintiffs' claims and strike class allegations contained within the Greater New York

Plaintiffs' complaint.

The Court heard oral argument on the motions on July 24, 2008, and took them under submission so that the Court could adequately study the thousands of pages of written material and hundreds of sources cited by the parties.  On August 6, 2008, less than two weeks after the oral argument, the AvMed Plaintiffs filed a mandamus with the Fifth Circuit urging the Circuit to order this Court to deliver its opinion immediately.  On August 7, 2008, the Court issued an order denying the Plaintiffs' motions for a preliminary injunction, in which the Court indicated that it would address the Defendant's motions regarding severance and class action status in a separate order to follow soon thereafter.  *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2008 WL 3285912 (E.D. La. Aug. 7, 2008).  The Court has now had an opportunity to draft a considered response to the severance and class action motions.[1]

For the following reasons, in addition to those set forth during oral arguments, the Defendant's Motion to Sever (Rec. Doc. 14525) and Motion to Strike Class Allegations (Rec. Doc. 15008) ARE GRANTED.

## I.       BACKGROUND

To put this matter in perspective, a brief review of this litigation is appropriate.  This multidistrict products liability litigation involves the prescription drug Vioxx, known generically as Rofecoxib.  Merck, a New Jersey corporation, researched, designed, manufactured, marketed, and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches.  On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States.  Vioxx remained publicly available

until September 30, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarctions (heart attacks) and ischemic strokes. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims.  It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999 and September 30, 2004.  Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States.[2]

On February 16, 2005, the Judicial Panel on Multidistrict Litigation conferred multidistrict litigation status on Vioxx lawsuits filed in federal court and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407.  *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005).  One month later, on March 18, 2005, this Court held the first status conference in the Vioxx MDL to consider strategies for moving forward with the proceedings.  Shortly thereafter, the Court appointed committees of counsel to represent the parties and to meet with the Court once every month to review the status of the litigation.[3]

One of this Court's first priorities was to assist the parties in selecting and preparing certain test cases to proceed as bellwether trials.  In total, this Court conducted six Vioxx

---

[1] The Court will address the NPC's Motion to Dismiss separately.
[2] For a more detailed factual background describing the events that took place before the inception of this Multidistrict Litigation, see *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).
[3] The Court appointed twelve attorneys to serve on the Plaintiffs' Steering Committee ("PSC"), see Pretrial Order No. 6 (Apr. 8, 2005), and five attorneys to serve on the Defendant's

bellwether trials.[4]  The first of the bellwether trials took place in Houston, Texas, while this

Court was displaced following Hurricane Katrina.  The five subsequent bellwether trials took

place in New Orleans, Louisiana.  One of the trials resulted in a verdict for the plaintiff.  Of the

five remaining trials, one resulted in a hung jury and four resulted in verdicts for the defendant.

During the same period that this Court conducted its six bellwether trials, approximately thirteen

additional Vioxx-related cases were tried before juries in the state courts of Texas, New Jersey,

California, Alabama, Illinois, and Florida.  With the benefit of experience from these bellwether

trials, as well as the encouragement of the several coordinated courts, the parties soon began

settlement discussions in earnest.[5]

On November 9, 2007, Merck and the NPC formally announced that they had reached a

Settlement Agreement.  *See* Settlement Agreement, *In re Vioxx Prods. Liab. Litig.*, MDL 1657

(E.D. La. Nov. 9, 2007) ("Settlement Agreement"), *available at*

http://www.browngreer.com/vioxxsettlement.[6]  The private Settlement Agreement establishes a

---

Steering Committee, see Pretrial Order No. 7 (Apr. 8, 2005).

[4]*See Plunkett v. Merck & Co.*, No. 05-4046 (E.D. La. filed Aug. 23, 2005) (comprising both the first and second bellwether trials, as the first trial resulted in a hung jury); *Barnett v. Merck & Co.*, No. 06-485 (E.D. La. filed Jan. 31, 2006) (third bellwether trial); *Smith v. Merck & Co.*, No. 05-4379 (E.D. La. filed Sept. 29, 2005) (fourth bellwether trial); *Mason v. Merck & Co.*, No. 06-0810 (E.D. La. filed Feb. 16, 2006) (fifth bellwether trial); *Dedrick v. Merck & Co.*, No. 05-2524 (E.D. La. filed June 21, 2005) (sixth bellwether trial).  For a more detailed analysis of both the role of bellwether trials in MDLs generally as well as the specific role of bellwether trials in the Vioxx MDL, see Eldon E. Fallon, Jeremy T. Grabill & Robert Pitard Wynne, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323 (2008).

[5]In their efforts to develop a comprehensive, joint settlement agreement, counsel for Merck and the Negotiating Plaintiffs' Counsel ("NPC") met together more than fifty times and held several hundred telephone conferences.  Although the parties met and negotiated independently, they kept this Court–as well as the coordinate state courts of Texas, New Jersey, and California– informed of their progress in settlement discussions.

[6]When the parties formally announced the settlement agreement, Vioxx-related discovery

pre-funded program for resolving pending or tolled state and federal Vioxx claims against Merck as of the date of the settlement, involving claims of heart attack ("MI"), ischemic stroke ("IS"), and sudden cardiac death ("SCD"), for an overall amount of 4.85 billion dollars.  *Id.* § "Recitals".  Under the terms of the Settlement Agreement, Merck retains "walk away privileges" in the event that less than 85% of the total number of eligible claimants within each of several defined categories choose to enroll in the program.  *Id.* § 11.  In other words, if the requisite percentages of claimants did not elect to participate in the voluntary settlement program, Merck had the right to withdraw from the agreement and thereby terminate the program.[7]

On July 18, 2008, Merck formally announced that it was satisfied that the thresholds necessary to trigger funding of the Vioxx Settlement Program would be met.  *See* Rec. Doc. 15362, Minute Entry, July 17, 2008.  Merck further advised that it intended to waive its walk away privileges and would commence funding the Vioxx Settlement Program by depositing an initial sum of $500 million into the Program's account, clearing the way for distribution of interim payments to eligible claimants.  *Id.*  On September 23, 2008, BrownGreer announced that interim payments had begun in late August and would continue to be distributed to eligible claimants on a rolling basis.  *See* Rec. Doc. 16144, Minute Entry, September 23, 2008.

---

had been moving forward in the coordinate jurisdictions for more than six years.  Over 50 million pages of documents had been produced and reviewed, more than 2,000 depositions had been taken, and counsel for both sides had filed thousands of motions and consulted with hundreds of experts in the fields of cardiology, pharmacology, and neurology.

[7] For a more detailed examination of the terms of the Vioxx Master Settlement Agreement, see *In re Vioxx Products Liability Litigation*, MDL No. 1657, 2008 WL 3285912

## II.     PRESENT MOTIONS

### A.     Motion to Sever the AvMed Plaintiffs' Claims

On April 14, 2008, the AvMed Plaintiffs, a group of forty-eight non-governmental sponsors and administrators of ERISA health benefit plans, filed a complaint seeking equitable relief under §502(a)(3) of ERISA, naming BrownGreer, PLC, U.S. Bancorp, and certain John Does as Defendants.  Although the AvMed Plaintiffs claim to provide healthcare coverage to approximately 70% of the individuals in the United States who have private health insurance, they assert that "only a handful" of their beneficiaries have reported participation in the Vioxx Settlement Program.  The AvMed Plaintiffs claim that, without the assistance of the Defendants, they are unable to determine which of their beneficiaries are participating in the settlement.[8]

On June 9, 2008, the AvMed Plaintiffs filed a motion for a temporary restraining order and preliminary injunction to compel BrownGreer as Claims Administrator: (1) to disclose the identities of the Vioxx claimants participating in the settlement; and (2) to enjoin distribution of settlement funds until such time as the AvMed Plaintiffs are able to assert reimbursement rights against those claimants for whom they have paid medical expenses related to Vioxx.[9] BrownGreer opposed the Plaintiffs' motion and also filed a separate motion to sever the

---

(E.D. La. Aug. 7, 2008).

[8] It is noteworthy to observe that, although this litigation has been proceeding in this Court for over three years and in the state courts for at least five years, apparently none of the Plaintiffs has until recently made any attempt to determine the identities of their own beneficiaries for purposes of evaluating their potential liens.

[9] On June 11, 2008, the Court held a status conference to address the AvMed Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.  *See* Rec. Doc. 14652, Minute Entry, June 11, 2008. For reasons stated during the conference, the Court denied the Plaintiff's motion in part with respect to the request for a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b).  *See id.*

Plaintiffs' claims. BrownGreer argues that the AvMed Plaintiffs' claims are improperly joined because they involve different healthcare providers, different healthcare contracts, and different claimants. As a result, BrownGreer contends that the AvMed Plaintiffs' claims should be severed because they do not involve common questions of fact or law and do not arise from the same transaction or occurrence.

### B.   Motion to Strike Class Allegations in the Greater New York Plaintiffs' Complaint

On June 3, 2008, a second group of plaintiffs, the "Greater New York Plaintiffs," filed a class action complaint naming as Defendants BrownGreer, certain known and unknown law firms representing Vioxx claimants, and unknown Vioxx claimants who have or will have enrolled in the Vioxx Settlement, are beneficiaries of ERISA health plans, and are obligated pursuant to their plan documents to notify and/or reimburse their health plan for any Vioxx-related medical benefits they received. In response to initial objections to their class allegations, the Greater New York Plaintiffs later filed an amended class complaint on July 9, 2008, in which they purport to represent

> All self-funded ERISA-covered health benefit plans that (a) have paid or agreed to pay Vioxx-related medical benefits on behalf of plan beneficiaries who have enrolled or will enroll in the Vioxx settlement, and (b) whose plan documents contained at the time such benefits were paid or agreed to be paid, (1) notification provisions requiring beneficiaries to notify the plan of claims or settlements, and/or (2) reimbursement provisions requiring beneficiaries to reimburse the plan, out of recoveries from any third party, for benefits relating to such recovery which the plan has paid or agreed to pay on the beneficiaries behalf.

*See* Rec. Doc. 15210, Greater New York Pl.s' Am. Compl. ¶ 18. In their amended class complaint, the Greater New York Plaintiffs assert that there are "hundreds, and likely

thousands," of self-funded ERISA health benefit plans whose plan documents provide for reimbursement rights and who have paid medical benefits on behalf of plan beneficiaries enrolled in the Vioxx Settlement Program. *Id.* ¶ 20.  Similar to the AvMed Plaintiffs, though, the Greater New York Plaintiffs claim that, without the assistance of the named Defendants, they will be unable to identify claimants who received Vioxx-related health benefits from class members.

On June 26, 2008, the Greater New York Plaintiffs filed a motion for a preliminary injunction to delay disbursement of interim payments under the Vioxx Settlement Program and to compel production of the identities of plan beneficiaries who may have received health benefits from any health plan that falls within the proposed class definition.  *See* Rec. Doc. 14877, Greater New York Pl.'s Mot. Prelim. Inj. 2-3.  In response, the NPC and PSC filed a motion to dismiss the Greater New York Plaintiffs' complaint and strike class allegations contained within it.  Shortly thereafter, Defendant BrownGreer filed its own motion to strike class allegations in the Greater New York Plaintiffs' complaint.  Both parties argue that the purported class definition fails to satisfy the requirements set forth under Rule 23 of the Federal Rules of Civil Procedure.  In addition, BrownGreer contends that the proposed class lacks cohesiveness and is not ascertainable by objective criteria.  The Greater New York Plaintiffs responded by filing a single opposition to both motions to strike, arguing that the motions had become moot with the filing of the amended complaint.  In response, BrownGreer contends that the amendments to the class definition fail to remedy the dispositive shortcomings that were present in the initial class allegations.

**C.     The Court's August 7th Order**

On August 7, 2008, the Court issued an order denying both the AvMed Plaintiffs' and the Greater New York Plaintiffs' motions for preliminary injunctions.  *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2008 WL 3285912 (E.D. La. Aug. 7, 2008).  In denying the motions, the Court found that: 1) neither group of Plaintiffs could demonstrate a substantial likelihood of success on the merits; 2) neither group of Plaintiffs would suffer irreparable harm from disbursement of interim settlement payments; 3) the balance of harms counseled strongly against enjoining the proceedings; and 4) the public interest did not favor an injunction.  The Court will now address BrownGreer's Motion to Sever the AvMed Plaintiffs' Claims and Motion to Strike Class Allegations in the Greater New York Plaintiffs' Complaint.

**III.     LAW & ANALYSIS**

**A.     Motion to Sever AvMed Plaintiffs' Claims**

Federal Rule of Civil Procedure 20(a) establishes the requirements for the permissive joinder of parties: (1) whether the right to relief arises out of the same transaction, occurrence, or series of transaction or occurrences, and (2) whether there are questions of law or fact common to all of the plaintiffs that will arise in the action. Fed.R.Civ.P. 20(a).  Both requirements must be satisfied in order for the parties to be properly joined.  *Rohr v. Metro. Ins. & Cas. Co.*, Civ. A. No. 06-10511, 2007 WL 163037, *1 (E.D. La. Jan. 17, 2007).  "[T]he transaction and common question requirements prescribed by Rule 20(a) are not rigid tests … they are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy."  *Wade v. Minyard Food Stores*, Civ. A. No. 03-1403, 2003 WL 22718445, *1 (N.D. Tex. Nov. 17,2003) (internal

quotation marks omitted).  As instructed by the Supreme Court, district courts should take a

liberal approach to permissive joinder in the interest of judicial economy.  *United Mine Workers*

*v. Gibbs*, 383 U.S. 715, 724 (1966).

In addition to the requirements set forth in Rule 20, Rule 21 provides a district court with

"broad discretion" to sever improperly joined parties.  *Anderson v. Red River Waterway*

*Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000); *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500,

505 (5th Cir. 1994).  "Once a claim has been severed … it proceeds as a discrete unit with its

own final judgment, from which an appeal may be taken."  7 WRIGHT, MILLER & KANE,

FEDERAL PRACTICE & PROCEDURE § 1689 (3d ed. 2001).[10]  Because the Court finds that the

AvMed Plaintiffs' claims do not involve common questions of fact or law and do not arise from

the same transaction or occurrence, the Court holds that the claims are improperly joined and

should be severed.

The AvMed Plaintiffs argue that joinder is appropriate in this case for three reasons.

First, they contend that the joined claims present common questions of law because the Court

will have to conduct essentially the same legal analysis to resolve each claim.  Second, they

contend that the claims involve common questions of fact because the health plans are seeking

essentially the same information—the names of settling claimants and the amount of

---

[10] A district court may consider the following factors in order to determine whether
claims should be severed: (1) whether the claims arise out of the same transaction or occurrence;
(2) whether the claims present common questions of law or fact; (3) whether settlement or
judicial economy would be promoted; (4) whether prejudice would be averted by severance; and
(5) whether different witnesses and documentary proof are required for separate claims.  *See*
*McFarland v. State Farm Fire & Cas. Co.*, Civ. A. No. 06-466, 2006 WL 2577852, *1 (S.D.
Miss. Sept. 6, 2006) (citing *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580
(S.D.N.Y. 1999)).

reimbursement to which individual health plans might be entitled.  Finally, they contend that the claims all arise out of the same transaction—the Vioxx settlement fund.  In response, the Defendant counters that the claims do not involve common issues of law because several material differences between the health plans counsel in favor of severance.  The Defendant further asserts that the names of the settling claimants and the amount of individual claimants' settlement awards do not constitute common questions of fact.  Finally, the Defendant argues that the Vioxx settlement fund is not a transaction giving rise to the Plaintiffs' claims.  The Court will address each of the Plaintiffs' arguments in turn.

First, the AvMed Plaintiffs argue that the joined claims feature common issues of law. As a result of the joinder, the AvMed Plaintiffs seek to enforce as many as 1.1 million distinct health benefit contracts.  To demonstrate the type of plans they seek to enforce, the AvMed Plaintiffs have submitted eighty-three plan documents as representative samples. The AvMed Plaintiffs claim that, if they were required to produce all of their plans, which are often specifically tailored to each individual beneficiary and which often contain similar reimbursement provisions, the total documentation for even a single year alone would approach 30 million pages.  Despite differences between the plans, the AvMed Plaintiffs contend that joinder is appropriate because this Court will ultimately have to make a single determination as to whether the Supreme Court's decision in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 368-69 (2006) and the Fifth Circuit's decision in *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferer, Poirot & Wansbrough*, 354 F.3d 348, 358 (5th Cir. 2003), allow private health benefits providers to assert equitable claims against the Vioxx settlement fund to preserve their reimbursement rights.  Under close scrutiny, however, the Plaintiffs' argument

oversimplifies the issue.

In *Sereboff*, the Supreme Court held that a fiduciary of an ERISA health benefit plan could maintain an action under § 502(a)(3) of ERISA to assert an equitable lien against the proceeds of a beneficiary's settlement with a third party tortfeasor.  547 U.S. at 367-68. Although the Supreme Court did not base its holding on the particular language of the health plan's reimbursement provision, the Court took special care to demonstrate that the plan language complied with the equitable relief sought by the plaintiff.  *Id.* at 359.  For example, the Court noted that the Sereboffs' health plan "identified a particular fund, distinct from the Sereboffs' general assets—'[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise).'" *Id.* at 363.  Importantly, the Sereboffs' health plan also identified "a particular share of that fund to which Mid Atlantic was entitled—'that portion of the total recovery which is due [Mid Atlantic] for benefits paid.'" *Id.*  Clearly the jurisprudence emphasizes the significance of the plan's language.

A recent, post-*Sereboff* case from the Eleventh Circuit provides further guidance.  *See Popowski v. Parrot*, 461 F.3d 1367 (11th Cir. 2006).  In *Popowski*, the Eleventh Circuit dealt with two separate cases, both of which were brought by fiduciaries of employee health benefit plans seeking reimbursement for medical expenses paid on behalf of plan beneficiaries.  *Id.* at 1370.  One of the plans—the "United Distributors Plan"—contained a reimbursement provision granting the plan "a lien on any amount recovered by the Covered Person whether or not designated as payment for medical expenses." *Id.*  The other plan—the "Mohawk Plan"— contained a provision requiring that the insured "reimburse the plan in full, and in first priority, for any medical expenses paid by the Plan relating to the [beneficiary's] injury or illness." *Id.*

Considering the plans in light of *Sereboff*, the Eleventh Circuit held that, although the language in the United Distributors Plan satisfied the requirements for the assertion of an equitable lien, the language in the Mohawk Plan did not. *Id.* at 1373.  The court explained that the United Distributors Plan, in "language essentially identical to the Supreme Court's characterization of the plan language in *Sereboff*, specifies both the fund (recovery from the third party or insurer) out of which reimbursement is due to the plan and the portion due … (benefits paid by the plan on behalf of the defendant)." *Id.*  In contrast, the court found that the Mohawk Plan "fails to specify that recovery come from any identifiable fund or to limit that recovery to any portion thereof, [and] fails to meet the requirements outlined in *Sereboff* for the assertion of an equitable lien." *Id.* at 1374.  Indeed, the very structure of the *Popowski* opinion is itself instructive—in considering two distinct health plan contracts, the Eleventh Circuit conducted two distinct legal analyses.

In the instant case, there appear to be significant variations even between the several health plans submitted as representative samples. For example, the Hawaii Medical Service Association Plan describes the medical benefits it disburses as an "interest-free loan."  Some of the plans appear to contain reimbursement provisions that do not identify specific, identifiable funds from which the health plans may recover reimbursement.  Further still, some of the plans are not even governed by ERISA.  The Government Employee's Health Association, Inc., and the Blue Cross Blue Shield Association plans are governed by the Federal Employees Health Benefits Act.  The AvMed Plaintiffs counter that, because ERISA actually *limits* the ability of health plans to collect reimbursement from plan beneficiaries, these non-ERISA plans may be entitled to even greater reimbursement rights.  Despite the AvMed Plaintiffs' assurance that "the

vast majority of plans" are ERISA plans, however, the inclusion of these disparate plans prompts further concern as to what other plans might be included within the universe of plans the AvMed Plaintiffs seek to enforce.  The Court declines to accept the AvMed Plaintiffs' invitation to determine, in a single decision applicable to all of the joined claims, whether ERISA permits more than 1.1 million different health employer plans—some of which are not even governed by ERISA—to assert equitable liens against the settlement fund or the settlement awards of individual Vioxx claimants.

Second, the AvMed Plaintiffs argue that there are factual issues common to each of the joined claims.  In light of recent Supreme Court and Fifth Circuit precedent, however, it appears that this analysis will depend on individual facts and circumstances related to each health plan and its individual beneficiaries.  Individual claimants' names and their settlement awards are not common questions of fact.  The Court can find no authority—and the Plaintiffs have provided none—to support the contention that the Plaintiffs are entitled to information identifying their beneficiaries who are participating in the settlement.  Even if the Plaintiffs are entitled to such information as to their own insureds, however, they are not entitled to information identifying claimants for whom they have provided no medical benefits whatsoever.  Issues relating to the claimants' names and settlement awards are therefore unique to each plan and do not present common questions of fact.

Finally, the AvMed Plaintiffs assert that the joined claims all arise from a single transaction—the Vioxx settlement fund.  The AvMed Plaintiffs claim that both *Sereboff* and *Bombardier* require the Court to find that the Vioxx settlement fund is an "identifiable" fund against which the joined Plaintiffs may assert equitable liens under ERISA.  The Defendant

counters that the Plaintiffs' claims do not arise from the Vioxx settlement but instead arise from the individual reimbursement provisions that each health plan has negotiated with its respective beneficiaries.

In *Campo v. State Farm Fire & Casualty Co.*, the court held that multiple plaintiffs' claims against a single insurer were improperly joined when the plaintiffs sought to enforce separate insurances policies to recover damages caused by Hurricane Katrina.  Civ. A. No. 06-2611, 2007 WL 2155792, *1-2 (E.D. La. 2007).  Although the plaintiffs all asserted similar legal claims against a single defendant, the court explained that "[t]he only common elements between the plaintiffs' claims are that their claims arise from damages caused by Hurricane Katrina and that each plaintiff had a separate insurance policy with the defendant."  *Id.* at * 3.  The court noted that these limited factual and legal similarities "cannot serve as a common transaction or occurrence because Hurricane Katrina affected each property differently, each property was different with respect to its prior condition, and each property was covered by a separately negotiated insurance policy."  *Id.*  As a result, the court held that joinder was inappropriate because the cases did not present common questions of fact or law and did not arise out of the same transaction, occurrence, or series of transactions or occurrences.  *See id.*; *see also Sucherman v. Metro. Prop. & Cas. Ins. Co.*, Civ. A. Nos. 05-6456, 06-8765, 2007 WL 1484067, * 2 (E.D. La. May 21, 2007) ("[P]laintiffs cannot rely on the fact that one natural disaster, Hurricane Katrina, caused the damage to all of their properties as a basis for joining their claims against [the defendant]…. [A]side from Hurricane Katrina as the cause, the claims against [the defendant] do not arise out of the same transaction, occurrence, or series of transactions or occurrences.").

-15-

Similarly, the Vioxx settlement fund is not a transaction or occurrence giving rise to the AvMed Plaintiffs' claims. The Vioxx settlement is a private, contractual agreement that did not assign any rights to the AvMed Plaintiffs. The settlement itself did not give rise to the Plaintiffs' claims; rather, the claims arose out of reimbursement provisions in the health plans' contracts with an unknown number of unidentified claimants. Any equitable rights that the Plaintiffs have are attributable not to the settlement itself but to the individual determination that a particular beneficiary will receive a settlement award. Like the plaintiffs in *Campo*, who sought to enforce similar but distinct insurance policies against a single insurer, each of the AvMed Plaintiffs has entered into "a separately negotiated insurance policy" with each of its beneficiaries. *See Campo*, 2007 WL 2155792 at *1-2. Because the AvMed Plaintiffs' claims do not feature common questions of law or fact and do not arise out of the same transaction or occurrence, the Court finds that the claims are improperly joined.

As noted above, Rule 21 provides a district court with "broad discretion" to sever improperly joined parties. *Brunet*, 15 F.3d at 505. In this case, joinder does not serve the interests of judicial economy and instead threatens to prejudice the Defendant. Indeed, by the AvMed Plaintiffs' own estimation, the court-ordered production of claimants' identifying information—if appropriate—would instantly transform this litigation into an action against approximately 15,000 defendants, each of whom has entered into a separately negotiated health plan contract and each of whom has received medical benefits under highly individualized factual circumstances. Further, because of material differences in the health plans, "[a]ny practical benefit accrued through the conservation of judicial resources will be outweighed by the burden imposed on [the Defendant] in defending multiple claims, with different factual

scenarios, in one trial." *Rohr*, 2007 WL 163037 at *2.  Accordingly, the Court finds that the

AvMed Plaintiffs' claims are improperly joined and should be severed.

### B.   Motion to Strike Class Allegations in the Greater New York Plaintiffs' Complaint

BrownGreer argues that the Greater New York Plaintiffs' class allegations fail for several

reasons.  Specifically, BrownGreer contends that the proposed class: (1) is not ascertainable, (2)

is not cohesive, and (3) lacks typicality.  The Court will address each of the Defendant's

arguments in turn.

### 1.   The proposed class is not ascertainable

"It is elementary that in order to maintain a class action, the class sought to be

represented must be adequately defined and clearly ascertainable."  *De Bremaecker v. Short*, 433

F.2d 733, 734 (5th Cir. 1970).  "Although the text of Rule 23(a) is silent on the matter, a class

must not only exist, the class must be susceptible of precise definition.  There can be no class

action if the proposed class is 'amorphous' or 'imprecise.'"  5 JAMES W. MOORE, ET AL.,

MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (3d ed. 1997).  "The existence of an

ascertainable class of persons to be represented by the proposed class representative is an implied

prerequisite of Federal Rule of Civil Procedure 23."  *John v. Nat'l Sec. Fire & Cas. Co.*, 501

F.3d 443, 445 (5th Cir. 2007).  The Manual for Complex Litigation explains that

> [a]lthough the identity of individual class members need not be
> ascertained before class certification, the membership of the class must be
> ascertainable.…  An identifiable class exists if its members can be
> ascertained by reference to objective criteria.  The order defining the class
> should avoid … terms that depend on resolution of the merits (e.g.,
> persons who were discriminated against).

*See* MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.222 (2004).  "Where it is facially

apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John*, 501 F.3d at 445.

In *Forman v. Data Transfer, Inc.*, the court held that a purported class of "all residents and businesses who have received unsolicited facsimile advertisements" was not ascertainable because the court would have to consider the merits of each case before determining membership in the class. 164 F.R.D. 400, 403, (E.D. Pa. 1995). The court noted that it is a "basic tenet of class certification [that] a court may not inquire into the merits of the case at the class certification stage." *Id.* Because the class definition depended upon an initial finding that certain class members had received unsolicited facsimiles, the court explained that it would have to conduct a "mini-hearing on the merits of each case" in order to determine membership in the proposed class. *Id.* As a result, the court held that the class failed to meet the requirements of Rule 23 because it was not ascertainable without first addressing the merits of each individual claim. *Id.*

Similarly, the court in *Barasich v. Shell Pipeline Co.* held that a proposed class was not ascertainable when the class consisted of "all commercial oystermen whose oyster leases were contaminated by oil discharged during Hurricane Katrina due to the negligence of defendants." Civ. A. No. 05-4180, 2008 U.S. Dist. LEXIS 47474, *13-14 (E.D. La. June 19, 2008). The court in *Barasich* noted two fundamental problems with the proposed class definition: first, the plaintiffs had failed to limit membership in the class to any particular geographic area, requiring the court to engage in extensive individual factual development; and second, "the determination of whether an individual is a member of the proposed class … cannot be determined without inquiring into the merits of each person's claim." *Id.* Because the court would have had to

address individual issues of negligence and causation on the merits in order to determine

membership in the class, the court held that the proposed class was neither ascertainable nor

adequately defined.  *Id.*

> In the instant case, the Greater New York Plaintiffs purport to represent a class of

> [a]ll self-funded ERISA-covered health benefit plans that (a) have paid or
> agreed to pay Vioxx-related medical benefits on behalf of plan
> beneficiaries who have enrolled or will enroll in the Vioxx settlement, and
> (b) whose plan documents contained at the time such benefits were paid or
> agreed to be paid, (1) notification provisions requiring beneficiaries to
> notify the plan of claims or settlements, and/or (2) reimbursement
> provisions requiring beneficiaries to reimburse the plan, out of recoveries
> from any third party, for benefits relating to such recovery which the plan
> has paid or agreed to pay on the beneficiaries behalf.

Although the Plaintiffs allege that there are "hundreds, and likely thousands" of self-funded

ERISA health benefit plans that fit within the class definition, they cannot determine how many

plans—or even which plans—they might potentially represent because they do not know who is

participating in the settlement.[11]

> Because the Greater New York Plaintiffs' proposed class cannot be determined without

first inquiring into the substantive merits of each individual claim, the Court finds that the class

is not ascertainable.  In order to determine membership in the purported class, the Court would

---

[11]      As an initial matter, the Court notes that it does not have the benefit of a substantive
response to the Defendant's Motion to Strike Class Allegations.  The Greater New York
Plaintiffs chose not to respond to the substance of the motion, opting instead to argue that the
Defendant's motion fails as a matter of procedure because motion was rendered moot by the
amended class allegations. The Court is not persuaded.  The Defendant "should not be required
to file a new motion … simply because an amended pleading was introduced while their motion
was pending….  To hold otherwise would be to exalt form over substance."  6 WRIGHT, MILLER
& KANE, FEDERAL PRACTICE & PROCEDURE § 1476, at 558 (2d ed. 1990).  If the amended class
definition fails for the same reasons that the Defendant argues the initial class definition failed,
the Court will not require the Defendant to file an additional motion simply as a matter of

first have to determine whether, on the merits, the class is entitled to the very legal relief that it

ultimately seeks—specifically, the production of identifying information for claimants enrolled

in the Vioxx settlement program.  Indeed, the Plaintiffs essentially concede that, without this

information, the class membership cannot be determined.  Like the proposed class in *Barasich*,

which could not be ascertained without first addressing substantive issues of causation and

negligence, the Greater New York Plaintiffs' proposed class cannot be ascertained without first

deciding that each of the unknown Plaintiffs is entitled to information identifying claimants in

the settlement.  The Plaintiffs' circular logic—that they are entitled to substantive relief on

behalf of a class of unknown health plans so that they can identify the very plans for whom they

seek the relief—counsels strongly in favor of finding that the class is not ascertainable.[12]

Further, the issue of whether Plaintiffs are entitled to the production of claimants'

identifying information is merely the first of several substantive decisions necessary to ascertain

class membership.  For example, the Court would need to determine not only that the Plaintiffs

---

procedure.

[12] Although the Court generally does not consider the merits of the case in determining the validity of class allegations, the Court has had occasion to consider the Plaintiffs' request for claimants' personal information in the context of the Plaintiffs' motion to enjoin disbursement of interim settlement payments.  *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2008 WL 3289512, *14 (E.D. La. Aug. 7, 2008).  In denying the motion for a preliminary injunction, the Court stated that it

> questions the appropriateness of the Plaintiffs' request to compel
> identification of claimants who are participants in a private, contractual
> settlement like the one reached by the parties in the Vioxx cases.  The
> Court can find no authority—and the Plaintiffs have provided none—to
> support the contention that the Plaintiffs have a right to the claimants'
> identifying information, including their social security numbers, dates of
> birth, employers, etc.  The fact that the Plaintiffs have encountered
> substantial hardship in locating this information does not give rise to a
> legal right to compel its production here.

are entitled to the claimants' information, but also that each individual health benefit plan has an enforceable reimbursement provision against each claimant for whom it has provided benefits.[13] As noted above, recent Supreme Court and Fifth Circuit precedent suggest that the language of each individual health plan contract might affect a plan's reimbursement rights against a plan beneficiary. *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2008 WL 3285912, *12-13 (E.D. La. Aug. 7, 2008).  In light of the above precedent, any finding that a class member has an "enforceable" reimbursement provision appears to depend upon a resolution of the merits of each individual claim.  *See, e.g., Popowski*, 461 F.3d  at 1370 (analyzing two distinct health plan contracts separately in order to determine whether either of the contracts provided equitable reimbursement rights under ERISA).  Determining class membership would thus require an exhaustive series of substantive legal and factual determinations particular to the unique facts of each case.  Indeed, even a single claimant receiving Vioxx-related benefits from a single health insurance provider may have entered into several different health plan contracts over the period during which the claimant took Vioxx.  As a result, the Court finds that the proposed class is not ascertainable by objective criteria.  This finding alone is sufficient to warrant striking the Plaintiffs' class allegations on the pleadings.

### 2.     The proposed class is not cohesive

A class action may be appropriate under Rule 23(b)(2) when the opposing party "has

---

*Id.*

[13] For a more detailed explanation of issues related to enforceability of individual reimbursement provisions, see the Court's opinion denying the Plaintiffs' motion for a preliminary injunction.  *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2008 WL 3285912, *7-15 (E.D. La. Aug. 7, 2008) (summarizing precedential cases and applying them to the Plaintiffs' request to enjoin distribution of interim payments in the Vioxx settlement).

acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). "While 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998). The Fifth Circuit has explained that, "because of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998). "Although Rule 23(b)(2) does not expressly contain a predominance and superiority requirement … certification under Rule 23(b)(2) does not relieve a court of its obligation to determine whether the existence of individual issues precludes certification." *Clay v. Am. Tobacco Corp.*, 188 F.R.D. 483, 495 (S.D. Ill. 1999). In *In re Propulsid*, the court suggested three factors for use in determining whether a Rule 23(b)(2) class is cohesive: "[1] whether the plaintiff can establish entitlement to injunctive relief with respect to the class as a whole in a single unitary trial…. [2] whether the case would be manageable at such a unitary trial…. [3] whether or not there are significant individual interests that could counsel against certification as a class action." 208 F.R.D. 133, 146 n.9 (E.D. La. 2002).

Turning to the instant case, the Court finds that the proposed class is not cohesive because the putative class members might have significant individual interests that will undermine class treatment. For example, each of the purported class members will necessarily have to rely on highly individualized evidence in order to support its claims. Each health plan is different; each plan uses different policy language; there will be different issues of causation as

to each claimant; in many cases, Vioxx may not have been the exclusive cause or even the

primary cause of each claimant's medical expenses; the amounts expended per claimant will be

different; depending on the particular language of each plan, some expenses may be

reimbursable, while others may not; the extent of each plan's reimbursement rights might be

affected by whether the beneficiary took Vioxx pre- or post-label change.  Because of the highly

individual facts of each case and the importance of material differences in policy language, the

purported class members may be tempted to advance differing interpretations of *Sereboff* in

order to maximize their own potential reimbursement rights.  As a result, the Court finds that

even if the proposed class were ascertainable, the class would not be a "homogenous and

cohesive" group as contemplated by Rule 23(b)(2).

The Court further notes that, although the Greater New York Plaintiffs do not expressly

seek monetary reimbursement, the proposed class is in many ways comparable to a (b)(2) class

seeking both monetary relief and injunctive or declaratory relief.  There can be no dispute that

the ultimate relief the Plaintiffs seek is reimbursement for individual medical expenses.  As the

Defendant accurately points out, even though "Plaintiffs do not purport to seek the assertion of

such a lien in this proceeding, [it] is plain that one purpose of the proceeding is to identify Vioxx

settlement claimants against whom such a lien could be asserted and to secure declaratory relief

confirming as much…. To grant such relief, the Court would need to perform much (if not all) of

the legal analysis that would ultimately be required to approve the assertion of such a lien."  *See*

Defs.' Mot. to Strike 13 n.3.  Before granting the Plaintiffs the "limited" relief that they seek in

the context of this proceeding—indeed, before even determining which health plans are members

of the class in the first place—the Court would first have to determine that each of the individual

health plans is entitled to a particular amount of money from at least one of the settling Vioxx claimants.  Not only will these determinations be heavily dependent on individual factual considerations, but, as noted above, each of the determinations will also likely require a separate legal analysis on the merits.  Considering that the Greater New York Plaintiffs purport to represent a class of "hundreds, and likely thousands" of health benefit plans, it is clear to the Court that such individual determinations on a class-wide basis will irreparably damage the manageability of this litigation, rendering a single, unitary trial on the merits virtually impossible.  This finding further supports the Court's conclusion that the class is not cohesive and that it is therefore appropriate to strike the class allegations on the pleadings.

### 3.      The proposed class lacks typicality

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims of the class.  "Like commonality, the test for typicality is not demanding.  It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).  A typicality inquiry may be used to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law and fact are present."  7 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1764 (2008).

A proposed class may fail to establish typicality where significant factual differences may exist among the plaintiffs, because such differences may force the named representatives to make arguments at trial that will be adverse to other class members' claims.  *In re Paxil Litig.*, 212 F.R.D. 539, 549-50 (C.D. Cal. 2003).  For example, in *In re Paxil*, the court explained that, "in

the absence of a clearly defined class, the typicality requirement cannot be met.  Without knowing who is properly in the class, the number of people in the class, and the surrounding circumstances relating to each plaintiff's symptoms, there is no 'generic' plaintiff properly typified by the class representatives."  *Id.*  The court further explained that "the potential differences among the putative class members would force the class representatives to make difficult—and ultimately, legally impermissible—choices at trial."  *Id.*  In holding that the proposed class failed to satisfy the typicality requirement, the court in *In re Paxil* found that the plaintiffs had misconstrued the typicality requirement by focusing their "typicality argument almost exclusively on the fact that there is a single defendant, a single drug, and a single set of alleged misleading statements nationwide."  *Id.*  "While the *commonality* requirement might be satisfied by one unifying factual or legal question, the *typicality* requirement may not."  *Id.*

Turning to the instant case, the Court finds that the Plaintiffs cannot establish that the proposed class will satisfy the typicality requirement, despite the fact that the Plaintiffs' claims may all be governed by ERISA.  Like the proposed class in *In re Paxil*, the Greater New York Plaintiffs' proposed class is neither ascertainable nor clearly defined.  As a result, the Court cannot determine which plans are in the class, how many plans are in the class, or the circumstances surrounding each of those plans.  In addition, the significant individual factual and legal issues inherent in each purported class member's claims will undermine typicality in the class.  Depending on the language of each individual policy, class members may be tempted to advance legal theories that would maximize their own potential for reimbursement while sacrificing that of another class member.  The Court further notes that the representatives of the proposed class allege that they are trustees, administrators, and fiduciaries of ERISA health

-25-

plans, but they do not purport to represent a class fiduciaries, trustees, or administrators—rather, they purport to represent a class of ERISA health benefit plans.  Under ERISA, the health plans, unlike the plans' fiduciaries, may face significant legal challenges to establish standing.  Section 502(a)(3) of ERISA, under which the purported class seeks relief, states that an action may be brought "by a participant, beneficiary, or fiduciary" of an ERISA health benefit plan.  Although the ERISA health plans have fiduciaries, the plans themselves are not their own fiduciaries.  *See Acosta v. Pac. Enters.*, 950 F.2d 611, 618 (9th Cir. 1991) ("A plan covered by ERISA cannot, as an entity, act as a fiduciary with respect to its own assets.").   In light of the Fifth Circuit's admonition that, "[w]here Congress has defined the parties who may bring a civil action founded on ERISA, we are loath to ignore the legislature's specificity," the Court finds that the purported class members will advance materially different legal and remedial theories.  As a result of the significant factual and legal differences inherent in the Plaintiffs' claims, the purported class cannot satisfy the typicality requirement.  Again, this finding alone is sufficient to warrant striking the class allegations on the pleadings.

## IV.    CONCLUSION

For all of the reasons stated above, in addition to those set forth during oral arguments, the Defendant's Motion to Sever and Motion to Strike Class Allegations ARE GRANTED.

New Orleans, Louisiana, this 21st day of October, 2008.


_____
UNITED STATES DISTRICT JUDGE