UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: VIOXX PRODUCTS * MDL Docket No. 1657
LIABILITY LITIGATION *
* October 21, 2008, 10:00 a.m.
* * * * * * * * * * * * * * * *

VIDEO CONFERENCE
BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

Official Court Reporter: Toni Doyle Tusa, CCR, FCRR
500 Poydras Street, Room HB-406
New Orleans, Louisiana 70130
(504) 589-7778

Proceedings recorded by mechanical stenography, transcript produced by computer.

**PROCEEDINGS**

**(October 21, 2008)**

**THE DEPUTY CLERK:** Everyone rise.

**THE COURT:** Be seated, please.

Good morning, ladies and gentlemen. My name is Eldon Fallon and I am the federal judge who is assigned to this MDL case. I have requested that you be here today because of an impending deadline. You have alleged in your lawsuits a qualifying injury, so each of you are eligible to enroll in the settlement program. You need to know that the deadline for enrolling is October 30, 2008. This is part of the settlement agreement and that date cannot be extended.

Now, the purpose of my meeting here today is neither to encourage nor to discourage you in enrolling in the program. Whether or not you enroll in the program is your decision and I will, of course, respect that decision. Instead, the purpose of this meeting today is to give you information, as well as access to information, so that you can make an informed choice. As the judge overseeing this MDL, I feel duty bound to make every effort that I can to make sure that your choice is an informed choice.

Now, let me put this matter in perspective a bit by reviewing with you briefly the course of this litigation. I speak mainly to the litigants now because I know the lawyers are fully aware of this.

There is in this country an MDL panel of judges appointed by the Chief Justice of the United States. This MDL panel consists of seven judges appointed throughout the country. They sit as an MDL court and they look over the federal courts in this country. If there are cases in multidistricts in federal courts that have common issues of fact, that case is then declared a multidistrict case and is assigned to one judge in federal court, and all of the other judges are ordered to direct their cases to that judge.

On February 16, 2005, the MDL court declared the *Vioxx* litigation a multidistrict litigation case and assigned all of the cases to this Court as transferee court. We proceeded to handle the discovery aspect of the case. Much has happened since February 16, 2005. Millions of documents have been produced. Hundreds of depositions have taken place. I have tried in federal court six trials; five cases. I tried one twice because of a mistrial. At least ten cases were tried in state courts in other parts of the country. I have issued from the federal bench over a thousand opinions in this particular case.

I have had weekly meetings with the lawyers and monthly meetings in open court, noticed and attended by lawyers and litigants alike, throughout the course of this litigation. I have had transcripts made of those meetings. I have a Web site for this particular case and all of the transcripts are

posted on the Web site. All of my orders, all of the opinions, a calendar of events, and everything relating to the case are posted on this Web site.

If you have not tried your case or participated in discovery, you need to know that you have benefited from this discovery because in this type of case there are two main issues: One is general causation, and the other is special causation.

In order to prevail, the plaintiff must show that Vioxx was problematic; that Merck knew at some time that it was problematic and continued either manufacturing or selling the drug and not alerting doctors to this. That's general causation. If that is successfully proved by the plaintiff, then the plaintiff must prove special causation; namely, that they took Vioxx and received an injury as a result of Vioxx and didn't know of the risks while they were taking Vioxx. Much of the discovery that has taken place has focused on general causation, but general causation is a vital part of each case.

Now, after an appropriate period of time, several years of discovery, nearly 20 jury trials, state court and federal court combined, I met with my colleagues in state court. I've been very fortunate, as an MDL court, to work with outstanding state court judges: Judge Higbee from New Jersey, Judge Chaney from California, and Judge Wilson from Texas.

Those three state courts handled about 90 percent of the cases that were filed in the *Vioxx* litigation. Over the course of the period that I worked on the case, I consulted with these judges and we discussed each other's opinions and profited by their wisdom and work on the case.

In any event, after a period of time, I invited my colleagues to come to New Orleans. I ordered Merck to send a representative and Merck's attorneys to be there, and the PSC, the plaintiffs liaison committee, to attend. The judges met with these individuals and we recommended that they take the opportunity to consider a global resolution of this matter.

We felt that enough had taken place to allow the parties to realistically evaluate the course of this litigation. There were many trials from federal court. Although I tried only five cases, those cases were picked as being representative of the litigation as a whole. My state court colleagues tried cases. They, too, selected cases which they felt were representative. So while not a total predictability segment, it at least was an informed one. We felt that it was appropriate for the lawyers and the litigants in the case to at least explore whether a global resolution was appropriate. The parties met in good faith and negotiated for over a year until they were able to confect a program that they felt was appropriate as a global resolution in this case.

Now, I said at the outset whether or not you

enroll is, indeed, your decision, not mine. Whatever your decision is, I will respect it and act accordingly. If you do not enroll, I will endeavor to set your case for trial, hopefully in the immediate future, so that you can have a resolution by a jury of your peers.

My purpose today is to give you, as I said, some information, at least from my vantage point, so that your decision can be an informed one. In that regard, let me briefly say a word about the requirements of this program. To qualify for compensation under the program, you must pass through three gates:

The first gate: The medical records must confirm that the claimant suffered a heart attack, an ischemic stroke, or a sudden cardiac death.

The second gate: The medical pharmacy records or some records must confirm that the claimant received at least 30 pills within the last 60 days preceding the injury.

The third gate: There must be some documentation confirming that Vioxx was being used within 14 days or thereabouts from the heart attack, stroke, or sudden death.

Now, if you enroll, ladies and gentlemen, and do not pass through the gate, you can do one of the following:

First, you can return to the tort system without any prejudice. You can resume where you are now and proceed in

the tort system.

Second, you can appeal the negative determination to a special master. I have also had the good fortune of finding three special masters with exceptional ability and experience, Pat Juneau, Judge Corodemus, and Justice Trotter, all of whom have a great deal of experience and are highly competent and are able to be of assistance. The point is that these individuals are retained by the Court. They are associated with the Court and not with the parties. You will have an opportunity, therefore, to appeal the decision to one of these highly qualified individuals.

Third, you can do nothing for 30 days and have the case dismissed.

Now, to learn more about the program, to ask questions, to get information, to find out if you qualify how much you are likely to receive, I have asked the plan administrator to be there today so you can question him, a representative or special master, representatives from Merck, your own attorney, and representatives from the PSC.

Now, before you meet with them, let me make some general comments about what I have observed over the six trials that I have participated in and also over the several years that I have been working on this litigation. I have had six trials, as I mentioned, in the case. Five cases were tried. One case was won by the plaintiffs. Four were won by the

defendant. 20 percent of the cases were won by the plaintiffs in federal court. 80 percent of the cases were won by the defendant in federal court. In state court one-third of the cases were won by the plaintiffs and two-thirds of the cases were won by the defendant.

The cost of the trials in federal court: In each case the plaintiffs have spent between $1 million and $2 million to present their case. In each case the defendant has spent between $2 million and $3 million to present its case. That does not mean that future cases will be either more or less. They could be either more or less, but this is what has been spent on the cases that were tried in my court. This is not including attorneys fees. This is simply the costs. The reason for that is that this type of case, in order to present it appropriately to juries, it is an expert-driven case. Experts need to be retained, consulted, and presented to the court.

Another issue that I think at least you should be aware of and perhaps take into consideration is that the United States Supreme Court has before it and is expected to rule on in the next couple of months, certainly this term, a case that has similar issues in it that the *Vioxx* case has. This is the *Wyeth v. Levine* case. It's on the docket of the United States Supreme Court. It has been argued and briefed and the parties are awaiting an opinion from the Court.

The *Wyeth* case raises the issue as to if the FDA approves a drug, as they have done in *Vioxx*, whether that approval preempts all state law claims. I don't know which way they will go on that issue. No one knows at this point. That is an issue before the United States Supreme Court, and it may or may not affect the capacity to sue in cases such as *Vioxx*. It may have some effect on the present claims.

Also, as of today, between 98 and 99 percent of all of the eligible claimants have thus far enrolled into the program. I think that is something that needs to be known by you.

I suggest that at this point you take the opportunity to talk with the plan administrator, to talk with the special master, to talk to anyone that you feel you want to ask a question and pursue some information. As I say, ask them, if your claim is accepted, how much might you receive. It may not be able to be written in stone, as they say, or with certainty, but the plan administrator has evaluated a number of claims now and I think that his or her view of it could be of help to you. So I hope that you do take the opportunity to at least ask questions. Anything that's on your mind, you should pursue with the appropriate party.

So, on that note, I will leave you and wish each of you well. Thank you very much. Court will stand in recess.

**THE DEPUTY CLERK:** Everyone rise.

(WHEREUPON the Court was in recess.)

* * *

**CERTIFICATE**

I, Toni Doyle Tusa, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

s/ Toni Doyle Tusa
Toni Doyle Tusa, CCR, FCRR
Official Court Reporter