UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | | * |
| | * | JUDGE FALLON |
| This document relates to: | * | |
| | * | MAGISTRATE JUDGE |
| Oakley, James v. Merck & Co., Inc. | | KNOWLES |
| 2:05-cv-05912 | | |
| | * | |
| | * | |
| | * | |

*************************************************************************

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO COMPLY WITH PTO 28, TO DECLARE THE MASTER SETTLEMENT AGREEMENT NULL, VOID AND UNENFORCEABLE, TO VACATE PTO 28, OR AFFORD PLAINTIFF ADDITIONAL TIME TO COMPLY WITH THE SAME.**

## INTRODUCTION

The instant motion completes the cycle contemplated by the Master Settlement Agreement (MSA) engineered by Merck by quashing the claims of those plaintiffs who have elected to reject the settlement without reaching the merits of those claims. Mr. Oakley has been subject to the requirements of PTO 28, stripped of his own retained counsel by PTO 31 or its aftermath and left to fend for himself in litigation that is truly beyond the ken of a layperson, leaving Merck with a virtual guarantee of dismissal of a meritorious claim. Mr. Oakley's retention of new counsel coming virtually on the eve of his time to respond to the instant motion is more happenstance than anything else.

Plaintiff presently cannot determine the number of litigants subject to the instant or similar motions made, or to be made by Merck, who have lost their counsel and been unable to obtain new counsel. This would be a relevant factor in balancing the respective factors to be considered in addressing the constitutional claims raised should the Court have to reach the same. Plaintiff respectfully submits discovery should be afforded on this question should the Court need to reach the constitutional issue for reasons set forth in Argument II below.

Initially however plaintiff submits that while dismissal may be the result Merck bargained for when it paid over $4.85 billion to fulfill its part of the deal, it was a bargain made outside existing law and in contravention of both Rule 23 and the Constitution, and had existing law been adhered to Mr. Oakley and other plaintiffs in MDL 1657 would not have been abandoned

by the PSC.[1]

Plaintiff is aware the Court has enumerated the extent of the negotiations between Merck and the NPC including the Court's being apprised of the progress by the "parties", but nevertheless submits that the Court's sense of fairness of the settlement does not in any respect diminish the fact that on one side of the table there was a defendant with a deep pocket willing to agree to pay hundreds of millions of dollars in attorneys fees for an agreement, and attorneys who accepted the same as part of the bargain that culminated in the MSA.[2] Plaintiff submits that the issuance of PTOs 28 through 31 simultaneous to the announcement of the MSA was not mere coincidence and clearly contemplated by Merck as a part of the bargain made when it agreed to pay the 4.85 billion to resolve all claims such as the plaintiff's claim herein.

It is only obvious that this Court must exercise significant discretion in management of litigation this size including the issuance of sua sponte orders; however, there are boundaries to the Court's discretion.   PTO 28 exceeds those boundaries both procedurally and substantively. Plaintiff respectfully submits that while the only section of PTO 28 specifically before the Court at this time relates to the alleged failure to make case-specific expert disclosure, to place Merck's motion in proper perspective PTO 28 in its entirety must be considered.

The individual litigants in MDL 1657 were given no notice or opportunity to be heard

---

[1] In the previous challenge to PTO 28 by the Oldfather firm PTO 28 was characterized as "unfair and unilaterally slanted in favor of Merck" April 17, 2008 submission by Ann B Oldfather, p. 3. Any attorney adequately representing their clients would take a similar position with respect to PTO 28. Yet, the PSC not only failed to oppose issuance of the order but has taken the position it supports the same.

[2] Plaintiffs are also aware the attorney's fees are subject to judicial approval; however, that fact does not in any respect address the issue of what was exchanged for the pot of gold the Court will ultimately allocate among the various attorneys who share in the same.

prior to the issuance of PTO 28 despite the fact that it not only imposed onerous requirements on a select group of plaintiffs, i.e., those who refuse to participate in the settlement, but also substantively in that it quashes those claims not recognized by the MSA (Plaintiff submits there is no other reasonable interpretation of the language in the definitional section of PTO 28. Either the claims outside the definitions are quashed or the language is completely superfluous).

The unilateral issuance of a preservation requirement despite the fact that the same has already been accomplished by PTO 1 without any showing there has been a violation of PTO 1, and under circumstances where Merck and not the plaintiffs have engaged in conduct that might support the issuance of such an order, regardless of whether intended or not, the main purpose is to drive up the plaintiff's litigation costs and open them to motions such as the one presently before the Court. Ironically, the relief afforded to Merck by PTO 28 for failure to comply is even more severe than under circumstances where relevant materials are lost, in that the general remedy is preclusion not dismissal, at least in the absence of a finding of willfulness.

The required expert disclosure set forth in PTO 28 similarly subjects plaintiffs to substantial and unnecessary expense under circumstances where the Court has available less drastic means of determining the viability of claims presently pending before it. Moreover, it is near impossible for plaintiffs without counsel such as the instant plaintiff to have the wherewithal to comply with the order wholly aside from the economic costs, since a layperson is hardly going to be able to communicate with, let alone enlist an expert to meet the requirements of PTO 28. Accordingly, in addition to seeking that the Court hold the MSA null, void and unenforceable, and vacating PTO 28, plaintiff also submits that PTO 31 and its aftermath is implicated in the instant case.

Although Mr. Oakley has provided his former counsel with some 500 pages of medical records he has been at a complete loss as to how to comply with PTO 28 without counsel, a result that is inevitable not only to him but to any layperson in similar circumstances. It follows that there should be some opportunity for discovery in connection with the additional plaintiffs on the lists annexed to Merck's motion for purposes of demonstrating the extent to which meritorious claims are being extinguished for no reason other than the plaintiff's refusal to accept the settlement negotiated by the parties.[3]

Although PTO 31 may have been modified, and whether or not §1.2.8.1 of the Settlement Agreement remains in tact, plaintiff's loss of his former counsel is a reality. § 1.1.8.1 of the MSA contravenes the lawyers obligation to advise their clients with respect to the relative merits of the MSA, as well as compromising the attorney's duty to exercise independent judgment on behalf of the client, surrendering that responsibility to Merck. The instant circumstances adequately demonstrate that the end result is extinguishment of the claim since any plaintiff who is unable to retain counsel after losing their attorney because of the latter's desire to participate in the settlement with other clients will be unable to go forward pro se in this litigation.[4]

Plaintiff respectfully submits the extinguishment of meritorious claims should not be viewed as mere collateral damage that cannot be avoided in achieving a settlement in litigation this size. The damage to the judicial system is also reflected in the instant motion in that the Court is clearly functioning more in the nature of an administrator by dismissing hundreds if not

---

[3] The instant motion may not be the only motion presently pending, and it is highly likely that additional motions are in the works. Discovery should be permitted on the these motions as well for the same reason.

[4] Counsel is aware there has been an appointment of counsel to represent pro se litigants but it is not clear how litigants who lose their lawyers are to find this counsel, or whether that role extends to actively litigating cases as opposed to simply advising plaintiffs.

thousands of claims based on boilerplate pleadings that do no more than annex lists such as attached to the instant motion without sufficient consideration being given to the merits of the individual cases before the Court. Perhaps more importantly in cases such as Mr. Oakley's, the fact that without counsel, no matter how meritorious their claims, the plaintiffs will lack the expertise and skills necessary to properly oppose the motion. Accordingly, the number of plaintiffs who have lost their retained counsel could be a determinative factor as to whether or not plaintiff has been denied due process for the reasons set forth in Argument II below. Plaintiff submits that the Court need not reach this argument and should hold the MSA null, void and unenforceable, vacate PTO 28, or in the alternative afford plaintiff an opportunity to comply with the order prior to entering any dismissal based on alleged noncompliance.

## STATEMENT OF FACTS

Plaintiff as a litigant in MDL 1657, was abandoned by his attorney because he refused to accept the settlement offered by Merck. Plaintiff's October 23, 2008 Affidavit paras 18-21. He ingested Vioxx from 2001 continuously through 2004 . Id 8. On or about September 27, 2004 Mr. Oakley suffered a non-Q wave anterior myocardial infarction. See Complaint para 48. He was advised by his former counsel that under the terms of the MSA he would have "one of the more valuable claims under the settlement framework". Oakley aff. Para 13.

Plaintiff is not currently aware of what his former counsel submitted to Merck, or for that matter the precise circumstances under which plaintiff lost his retained counsel, and further, must accept at face value Merck's contention that the Rule 26 (a) (2) case specific expert report has not been submitted. Plaintiff's current counsel has only recently entered the case and does not yet have the medical records plaintiff gave his former counsel. Finally, Merck consented to

permit plaintiff until October 27, 2008 to submit opposition to the instant motion.

**ARGUMENT**
**I**

**THE COURT SHOULD CONSIDER FACTS AND CIRCUMSTANCES LEADING UP TO THE SETTLEMENT IN THE OPPOSITION TO THE MERCK MOTION SINCE PTO 28 WAS ISSUED SIMULTANEOUS TO ANNOUNCEMENT OF THE MSA AND APPEARS TO BE INEXTRICABLY LINKED TO THE SAME AS REFLECTED BY THE DEFINITIONAL SECTION IN PTO 28 AND SHOULD HOLD THE SETTLEMENT NULL, VOID AND UNENFORCEABLE AND VACATE PTO 28 FOR REASONS SET FORTH BELOW.**

Although Merck limits its motion to dismiss based on alleged failure to comply with the expert disclosure requirement of PTO 28 the order itself flows from the MSA and it is plaintiffs' contention he would not face dismissal at this time if he had been afforded the structural protections set forth in Rule 23. As a practical matter plaintiff was in the position of an absent class member at the time the MSA was entered into. PTO 28 was issued without notice or opportunity to be heard by any individual counsel. Since the very purpose of requiring adequacy of representation is to ensure absent class members do not become unfairly bound by federal court judgment. Grimes v. Vitalink Communications Corp. 17 F. 3rd 1553, 1558 (3rd Cir) cert. denied, 513 U.S. 986 (1994), an order that has the repercussions of PTO 28 would not have gone unchallenged had plaintiff received adequate representation by the PSC, the attorneys then responsible for representing the interest of all litigants in MDL 1657.

The fact that in litigation this size there will be inevitable conflicts among litigants, given their diversity and potentially conflicting positions, cannot account for PTO 28 going unopposed since it imposes unilateral, draconian requirements upon all litigants to which it applies, simultaneous to extinguishing claims not recognized by the MSA. It follows that potential or

actual conflicts among litigants cannot explain the PSC's failure to mount any opposition to the order and the same did not surface until opposition was made by individual counsel not responsible for generic issues to be adjudicated in MDL 1657. In short, this is not a case where a court reviewing counsel's representation may find the same is adequate despite the fact that some of the litigants were dissatisfied with the results of counsel's efforts.

The arguments with respect to Rule 23 as well as the opposition to PTO 28 are identical to those presently pending before the Court in the motion brought by Agard, et. al., v. Merck. In the interest of brevity plaintiff incorporates the same by reference. Plaintiff further submits that even under traditional contractual principles the MSA cannot stand. The traditional principles of good faith and fair dealing in contract law apply with equal force to class-action settlements. Jeff D. v. Andrus 899 F. 2d 753, 759 (9th Cir. 1990); Evans v. Williams 139 F. Supp 2d 79, 87, n. 1 (D. D. C. 2001).

It may well be that plaintiffs are wrong and that the MSA may survive scrutiny under traditional contractual principles; however, that scrutiny has yet to take place in an adversarial setting. Every agreement has trade-offs and perhaps the trade-offs that were made in achieving the MSA, e.g. getting the most seriously injured plaintiffs the most amount of money available as an overall end result, may carry the day. Then again they may not in that there is no question the instant plaintiff and many others with diverse injuries and a host of legal issues that will either weaken or strengthen their respective claims, are now in a position where they must overcome significant hurdles simply to reach the merits of the claims. This is a logical consequence of the procedural posture these plaintiffs have been placed in as a result of the PSC and there should be notice and opportunity to be heard with regard to whether the trade-offs that were made in this deal were acceptable, or whether Merck was able to get off cheap at the direct expense of

plaintiffs who otherwise would be in a position to receive compensation under the tort system in their respective states. On this point plaintiff concludes by observing the nature of the review should not be one akin to a Rule 23 (e) fair hearing but rather a review that also includes the structural protections afforded to class members under Rule 23.

## ARGUMENT
## II

### PLAINTIFF, WHO HAS LOST HIS RETAINED COUNSEL SHOULD BE AFFORDED A HEARING TO DETERMINE WHETHER OR NOT HE WAS DENIED DUE PROCESS IN CONNECTION THE LOSS OF FORMER COUNSEL PRIOR TO HAVING TO ADDRESS THE MERITS OF MERCK'S MOTION

In turning to the right to retained counsel, it does not appear there can be any dispute that PTO 31 was designed to divest plaintiffs who do not agree to the settlement, of their retained counsel. In light of the time constraints within which plaintiff must oppose the instant motion it is not clear at this juncture if Mr. Oakley's loss of former counsel is dejure or de facto, but it is nevertheless a reality. [5] The time-tested adage that "the man who represents himself has a fool for a lawyer" is merely shorthand for the premise that the quality of justice afforded to litigants is obviously impacted by the presence or absence of legal representation. One need only set forth the proposition that in litigation such as is presently before the Court, divesting a plaintiff of counsel as a practical matter divests him/her of the cause of action as well.

---

[5] In its memorandum in support of the instant motion Merck concedes that all plaintiffs who are the subject of the motion have alleged an eligible injury in the resolution program. P2.n1. Merck has further indicated that in response to the "initial wave of August deficiency letters" numerous plaintiffs "voluntarily dismissed their cases" id n.2. Plaintiff submits discovery should be afforded as to how many of those as well as other plaintiffs subject to PTO 28 who dismissed their cases did so after losing their retained counsel, in that this is relevant evidence to the facts employed in the due process analysis discussed below.

The fact that there is presently no right to counsel in civil proceedings, Lassiter v. Department of Social Services 452 U. S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981) does not mean there is no due process right, regardless of whether the same is characterized as the right to retain counsel or the plaintiff's individual property interest in a cause of action that is viable in the tort system. Plaintiff respectfully submits, however the right is characterized, where there is any governmental interference with the right, either by commission or omission, due process is implicated.

It is only necessary to begin by noting that property interests under the due process clause are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law, Bd. of Regents v. Roth 408 U. S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Merck cannot dispute the fact that plaintiff's cause of action is a valuable property protected by the due process clause. Fuentes v. Shevin 407 U. S. 67 (1972); Cleveland Bd. Of Educ. v. Loudermill 470 U. S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). As such, the due process analysis involves balancing following three factors:

> First, the private interests that will be affected by the official actions; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional substitute procedural safeguards and finally, the governmental interest including the function involved and the fiscal and administrative burdens that additional substitute procedural safeguards would entail, Matthews v. Eldridge 424 U. S. 319, 355, 96 S. Ct. 893 (1976).

Although the nature and circumstances of the instant case do not readily lend themselves to the Matthews analysis a due process violation may nevertheless be shown.

It is plaintiff's contention that PTO 31 was the impetus that resulted in his losing his former counsel, even though it contains no exact language requiring an attorney to withdraw.

Moreover it appears that § 1.2.8.1 remains in tact, and regardless of whether the loss is dejure or de facto his counsel withdrew as did other counsel in MDL 1657. The private interest is obviously plaintiff's interest in his cause of action which it is contended is significant. The risk of an erroneous deprivation is also significant in that without benefit of counsel there is a substantial risk of an erroneous deprivation of the plaintiff's property interest. In turning to the governmental interest at issue it is respectfully submitted there is none since it cannot be seriously argued there is a governmental interest in stripping plaintiffs of their counsel, which fact does not diminish the contention that it was indeed an official action that had the catalytic effect of counsel withdrawing from representing plaintiffs who did not agree to accept the settlement. Accordingly, the Court should either find the plaintiff was deprived of due process in connection with the withdrawal of former counsel, will permit discovery regarding the number of plaintiffs who made been deprived of their property interest because of the withdrawal of their counsel and that the same is relevant to the risk of erroneous deprivation.

## ARGUMENT
## III

**MERCK HAS FAILED TO DEMONSTRATE WILLFUL DELAY BY THE PLAINTIFF OR CONTUMACIOUS CONDUCT THAT WOULD WARRANT DISMISSAL AND TO THE EXTENT PLAINTIFF HAS FAILED TO COMPLY WITH PTO 28 THE COURT SHOULD AFFORD PLAINTIFF A REASONABLE OPPORTUNITY TO COMPLY BEFORE DISMISSING HIS CLAIM**

The Fifth Circuit recognizing that dismissal is a harsh sanction, and has indicated it would countenance the same only in instances where plaintiff engaged in a history of delay or other contumacious conduct and that lesser sanctions would not serve the interests of justice. See e.g., Price v. McGlathery 792 F. 2d 472, 474 (5th Cir. 1986). In this case plaintiff has engaged in

no delay or contumacious behavior, and to the contrary, had no lawyer until shortly before the response to Merck's motion was due, and thus the lacked the wherewithal to even respond to the instant motion. It is equally clear that in the context of an MDL the Court's task is to "figure out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality" In re: Phenylpropanolamine (PPA) Prod. Liab. Lit. 460 F. 3rd 1217, 1231 (9th Cir. 2006). Thus plaintiff recognizes the Court has broader concerns than his individual case but nevertheless submits that under these facts and circumstances dismissal is too extreme a sanction.

In the ordinary case, the remedy for late disclosure of an expert witness would be preclusion and the factors that would ordinarily be determinative are (1) explanation for the failure to identify the experts; (2) importance of the testimony; (3) potential prejudice in allowing the testimony; (4) the availability of a continuance to cure such prejudice. See Betzel v State Farm Lloyds 480 F. 704 (5th Cir. 2007). Although the rules may generally be the same in the context of the MDL setting, with the exception of the fact that the court necessarily must have broader discretion to manage the litigation; analysis along the lines of Betzel does not adequately address the issues before the Court.

Merck seeks dismissal not preclusion, and the order requiring case specific expert disclosure is not the traditional expert disclosure required by Rule 26. Plaintiff recognizes the Court cannot always provide detailed consideration of every individual case and must paint a broad brush, but it is equally clear that "due process and fundamental fairness may not be sacrificed to provide assembly-line justice. PPA at 1250. In light of the facts and circumstances underlying the instant motion, in the interest of brevity plaintiff will not reiterate the arguments

enumerated above and plaintiff respectfully submits that defendant's motion to dismiss should be denied in that there are alternative sanctions available to the Court should it find it necessary to invoke the same.

Respectfully submitted,

_/s/ Ronald R. Benjamin_
RONALD R. BENJAMIN Fed. No. 110131
LAW OFFICE OF RONALD R. BENJAMIN
126 Riverside Drive, P.O. Box 607
Binghamton, New York 13902-0607
607/772-1442

Attorneys for Individual Plaintiff
   in Above-Captioned Actions