UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Vioxx** | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY** | * | SECTION L |
| **LITIGATION** | * | |
| | * | JUDGE FALLON |
| This document relates to: | * | |
| | * | MAGISTRATE JUDGE |
| Oakley, James v. Merck & Co., Inc. | | KNOWLES |
| 2:05-cv-05912 | | |
| | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S AFFIDAVIT IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO COMPLY WITH PTO 28, AND IN SUPPORT OF THE CROSS-MOTION TO DECLARE NULL, VOID AND UNENFORCEABLE, THE SETTLEMENT AGREEMENT ENTERED INTO BETWEEN MERCK AND ATTORNEYS PURPORTEDLY REPRESENTING PLAINTIFFS**

1. I am the plaintiff and make this Affidavit in Opposition to Defendant's Motion to Dismiss for failing to comply with PTO 28, and in support of the cross-motion to declare null, void and unenforceable, the settlement agreement entered into between Merck and attorneys purportedly representing plaintiffs including myself in the course of the negotiations leading up to the agreement, to vacate PTO 28, to permit discovery with regard to the negotiations leading up to the settlement and the issuance of not only PTO 28, but also PPO's 29, 30 and 31; (1) I never consented to any attorney except the one I retained negotiating on my behalf, and never gave settlement authority even to my retained attorney, to resolve this matter for any particular amount or under any other terms, without my consent to the same; (2) that I am advised I am a member of a sub-class of plaintiffs in this litigation, whose interests were not adequately

1

protected by the attorneys negotiating on behalf of all plaintiffs in this litigation, and that I have reason to believe my particular claim as well as others were either traded off by these attorneys in return for attorneys fees to them, to be paid by Merck at some later time, or for receiving other concessions that did not benefit me in any respect; (3) that the parties who negotiated this agreement did not obtain class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure or prior to entering into any settlement; (4) that Merck exacted promises from the lawyers negotiating with the settlement to compel all attorneys representing plaintiffs, such as myself, to withdraw as attorney and refuse to continue prosecuting the claim, thereby interfering with my contractual relationship with my retained attorney; and depriving me of the due process of law guaranteed by the Fourteenth Amendment of the Constitution of the United States, as well as my right to trial by jury under the Seventh Amendment to the Constitution of the United States, since as a layperson, I am hardly able to fend for myself in litigation which I understand is complex and involves both scientific issues and legal questions that as a layperson is simply beyond my ability to respond to in the instant motion brought by Merck. The instant motion adequately reflects that fact, since without counsel, I would have no way to defend against it since I do not even understand what my legal obligations are with regard to PTO 28, e.g. my former attorneys have been given some 500 pages of medical records which, as a matter of common sense, I would have thought provided whatever information was necessary for Merck to move forward in the trial process; (5) and also on both due process and seventh amendment grounds, based on entering into the settlement agreement without adhering to Rule 23 as set forth above.

    2. I am also advised PTO 28 imposes requirements on plaintiffs such as myself, which

2

are well in excess of ordinary discovery requirements and clearly have the effect of needlessly driving up the expenses of litigating claims on the merits such as the preservation requirements, as well as the required expert disclosure linking the injury to ingestion of Vioxx, since the same will have to be repeated by the expert or some other expert later in the litigation, thereby needlessly subjecting me to an expense that serves no useful purpose except to make prosecution of the action more expensive, and this is especially true since no similar requirements are being imposed upon defendant, who has been allowed to sit back and make motions such as the instant one, which do not address the merits of my claim yet could result in dismissal simply because I refuse to participate in the settlement.

3. I now turn to facts to support the opposition to Merck's motion, as well as for the relief sought in the cross-motion.

4. I am a veteran of the Vietnam War, having served in the Army from 1967 to 1969.

5. I was in Vietnam from April of 1968 through March of 1969 serving in the combat infantry, and received several medals including the Bronze Star for valor.

6. Since my discharge from the service I have owned and operated a small custom picture framing company.

7. I have had lumbar disc surgery in 2000, and also have arthritis for which I was prescribed Vioxx.

8. I started taking Vioxx in April of 2001 and continued taking it right up to my bypass surgery in September of 2004.

9. I am advised by the physician who prescribed the medication that had he known about the side effects he would never have prescribed Vioxx for my ills.

3

10. I retained the firm of Lief, Cabraser, Heimannn and Bernstein to prosecute my action against Merck, and they commenced the action in the Western District of Tennessee on or about September 7, 2005, which has since been removed to this Court.

11. It is my understanding that this firm has a fine reputation for prosecuting claims involving defective pharmaceutical products and have been effective in securing damages for plaintiffs who have been injured as a result.

12. After the settlement entered into between certain attorneys and Merck, an attorney from the firm called me recommending that I accept the settlement, but advising me that I have the "absolute right" to reject the settlement if I feel the same is not adequate to compensate me for my injuries.

13. I was advised that my claim would be "one of the more valuable claims under the settlement framework," but was never given the precise amount that would allow me to make an intelligent decision as to just how much I would be receiving, but the implication was clear it would be a modest amount in light of my injuries.

14. I feel that the cardiovascular problems that I sustained as a result of ingesting Vioxx have basically ruined my life and that I have been steadily going downhill since 2004.

15. I consider myself relatively intelligent and informed, at least sufficiently so to recognize that by rejecting the settlement I face the same risks as other plaintiffs who have proceeded to trial and lost and, therefore, have received nothing.

16. Indeed, the Cabraser firm made this very clear, advising me among other things, that juries were tough on smokers, and that would be asserted by Merck as an alternative cause for my cardiovascular disease.

17. I, therefore, want to make clear that I believe I fully understand the risks that accompany proceeding to trial, as opposed to the bird in hand that the settlement represents, and I reject the same, because I believe it is inadequate to compensate me for my injuries.

18. If indeed I retain the right to make the decision as to whether or not to settle, then I do not understand why I should be penalized for deciding not to accept the settlement agreement by being stripped of my lawyer and left to fend for myself, in what I have been advised is complex litigation that a layperson could not reasonably be expected to undertake without benefit of counsel.

19. Although I have fully cooperated with my former attorneys in all respects, except following their advice to settle, they have withdrawn from representing me in this litigation and left me in the current position of having to search for a new attorney while this motion is pending.

20. In the motion to withdraw, they say nothing more than good cause for withdrawal exists as they and I have a fundamental disagreement regarding the course of future representation with respect to this action.

21. This is not true in that I have followed their advice and allowed them to prosecute this action and fully cooperated in connection with the same in all respects, other than not agreeing to settle my case for an amount I believe is inadequate.

22. Since this withdrawal, I have learned that Merck imposed a requirement as part of the settlement entered into with the attorneys who negotiated the settlement agreement, that any attorney who wanted to participate in the settlement agreement on behalf of other clients, must withdraw from representing anyone who rejected the settlement agreement.

23. I am advised that this is improper conduct by a defendant, and I respectfully submit that the same should never have been permitted by the Court, condoned by the Court, or ratified by the granting of the motion to withdraw, since I did nothing wrong and was left in a position where I have a claim that is viable in the Court system yet can be dismissed without regard to the merits of my claim, all because I refuse to settle for an amount I believe is inadequate.

24. I am also advised that the settlement should not have gone forward without adhering to the requirements of Rule 23 of the Federal Rules of Civil Procedure, which would have afforded plaintiffs such as myself protections we did not receive.

25. For these reasons and the reasons set forth by my current attorney in the Memorandum of Law submitted herewith, I respectfully submit that the motion by Merck be denied, and the relief sought in the cross-motion be granted.

_____
JAMES OAKLEY

SUBSCRIBED AND SWORN TO
before me this 23 day of October, 2008

_____
NOTARY PUBLIC

My commission exp Sept 15, 2011

[Notary seal: NORKA GUTIERREZ CARON, STATE OF TENNESSEE NOTARY PUBLIC, SHELBY COUNTY]

6