IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
November 17, 2008
Charles R. Fulbruge III
Clerk

No. 08-30802

AVMED INC; AETNA INC; ARKANSAS BLUE CROSS AND BLUE SHIELD, A Mutual Insurance Company; HMO PARTNERS INC doing business as, Health Advantage; USABLE LIFE; ET AL

Plaintiffs - Appellants

v.

BROWNGREER PLC; US BANCORP INC; UNIDENTIFIED PARTIES

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Before this court is an appeal of the district court's denial of two motions for preliminary injunctive relief arising out of the Vioxx Multidistrict Litigation. The plaintiff-appellants are a group of non-governmental, self-funded, ERISA health benefit providers. The appellants seek to enjoin distribution of interim payments from the settlement of the Vioxx Multidistrict Litigation until such

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

time as the appellants are able to assert equitable rights against any of their clients who are involved in the settlement negotiation process and for whom they have paid Vioxx-related medical expenses. The appellants requested preliminary injunctive relief pursuant to § 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. 1132(a)(3) ("ERISA"), (1) mandating the disclosures of the identities of the Vioxx claimants participating in the settlement; and (2) enjoining distribution of interim settlement funds until such time as the appellants are able to assert reimbursement rights against those claimants for whom they have paid medical expenses related to Vioxx.

To put this matter in perspective, a brief review of the undisputed facts pertaining to this litigation is appropriate. This multidistrict products liability litigation involves the prescription drug Vioxx. Merck, a New Jersey corporation, researched, designed, manufactured, marketed, and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration approved Vioxx for sale in the United States. On September 30, 2004, Merck withdrew Vioxx from the market after data from a clinical trial indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999 and September 30, 2004. It is also estimated that approximately 20 million patients have taken Vioxx in the United States.

On February 16, 2005, the Judicial Panel on Multidistrict Litigation conferred multi-district litigation status on Vioxx lawsuits filed in federal court and transferred all such cases to the United States District Court for the

Eastern District of Louisiana. On November 9, 2007, after extensive litigation, Merck formally announced that it had reached a Settlement Agreement with the plaintiffs representing the injured Vioxx patients. The private Settlement Agreement establishes a pre-funded program for resolving pending or tolled state and federal Vioxx claims against Merck as of the date of the settlement, involving claims of heart attack, ischemic stroke, and sudden cardiac death, for an overall amount of 4.85 billion dollars.

In order to determine eligibility and valuation of individual claims submitted for enrollment, the Settlement Agreement provides that an independent Claims Administrator will review claims and calculate the total number of points awarded to each claimant during the claims valuation process. An Escrow Agent will hold and disburse the funds as claims adjudication proceeds. Pursuant to the terms of the Settlement Agreement, BrownGreer, PLC, the named Defendant herein, was appointed as the Claims Administrator and US Bancorp, Inc., the other named Defendant herein, was appointed the Escrow Agent.

In reviewing whether a claim is eligible for enrollment in the Vioxx Settlement Program, the Claims Administrator must decide whether the claim satisfies certain criteria set forth by each of three "gates": (1) evidence of a qualifying injury, (2) duration of use, and (3) proximity of injury to usage. Each claimant is initially awarded a number of points based on such individual factors as: age, injury, duration of usage, consistency of use, the date of the relevant usage, whether the claimant used Vioxx pre-or post-label adjustment, and the claimant's general health and medical history. Factors in the claimant's medical history that might affect the points award include smoking, cholesterol levels, and whether the claimant or the claimant's family has a history of heart attacks or ischemic strokes.

The Settlement Agreement also provides for the disbursement of interim settlement payments to eligible claimants. In order to qualify for interim payments, claimants must fulfill certain registration and filing obligations according to the terms set forth in the Agreement. Pursuant to the terms of the Agreement, certain claimants who timely fulfill all of their filing obligations may qualify to receive interim settlement payments beginning on August, 1, 2008, or the date on which the Claims Administrator has determined pre-review points awards for a specific number of claimants, whichever is later, conditioned on Merck's waiver of its walk away privileges. On July 17, 2008, Merck began funding the Settlement Program with an initial deposit of $500 million for interim disbursements.

A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir.1985)). Thus, "the decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985). The burden of persuasion requires that the movant show the existence of four separate factors: (1) a substantial likelihood of success on the merits; (2) irreparable injury; (3) a favorable balance of hardships; and (4) no adverse effect on the public interest. *Black Fire Fighters Ass'n*, 905 F.2d at 65. If the movant fails to sufficiently establish any one of these four factors, the court should decline to issue the preliminary injunction. *See Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Excuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

Applying the foregoing principles, the district court concluded that the appellants had failed to carry their burden of persuasion as to any of the

requirements for a preliminary injunction. Accordingly, it denied the appellants' motions for preliminary injunctive relief. The appellants appealed.

We now review the district court's decision to deny preliminary injunctive relief under "an abuse of discretion" standard. *Black Fire Fighters Ass'n*, 905 F.2d at 65. "The court's determinations as to each of the four elements are mixed questions of fact and law reviewed according to the clearly erroneous standard." *Id.* After considering the parties' written and oral arguments, we agree with the district court's assigned reasons, and therefore conclude that the district court did not abuse its discretion. Accordingly, we affirm the district court's judgment.

In agreement with the district court's reasoning, we conclude that:

(A) The appellants failed to demonstrate, for purposes of asserting liens under ERISA, that an identifiable fund potentially susceptible to such liens are currently within the possession and legal control of the appellants' plan beneficiaries or their agents. *See Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356 (2006); *Great-Western Life & Accident Ins. Co. v. Knudson*, 534 U.S. 204 (2002); *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferer, Poirot & Wansbrough*, 354 F.3d 348 (5th Cir. 2003). Without a substantive right to enforce against the defendants, the appellants clearly are not entitled to any of the extraordinary equitable remedies they seek. The appellants therefore have no substantial likelihood of success on the merits nor will they suffer any irreparable harm if equitable relief is not granted.

(B) The appellants admit that they have no plan-beneficiary relationship with or potential claim against approximately 31,000 (two-thirds of the total) of the individual Vioxx claimants in this case. Allowing the appellants to delay the entire settlement and distribution process and thereby withhold long-awaited relief to innocent persons, who have no relationship with and owe no possible debt to the appellants, would constitute a serious miscarriage of justice. The

potential delay and the attendant costs to these innocent persons caused by the granting of any equitable relief at this stage outweigh any damage to the defendant if equitable relief is not granted. Likewise, the granting of equitable relief would disserve the public interest by stalling and disrupting the long-awaited resolution to this massive tort case and the disbursement of much-needed relief to these numerous innocent persons.

In particular, we are persuaded by the district court's reasons for concluding that the appellants had failed to demonstrate that there is a substantial likelihood of their success on the merits. After reviewing the principal Supreme Court and circuit court precedents, the district court stated:

> As an initial matter, the Court notes that the instant case differs in both kind and degree from the litigation at issue in the *Sereboff* and *Bombardier* line of cases. In *Sereboff*, for example, the Supreme Court dealt with a single plaintiff moving against a single defendant to enforce the terms of a single contract provision in order to recover a specified amount of money from a single, identifiable fund in the possession of the defendant. 547 U.S. at 359. In contrast, the [plaintiff-appellants] seek to enjoin distribution of an unallocated, multi-billion dollar settlement fund to enforce an unknown number of contract provisions against an unknown number of claimants to recover an unknown amount of money.
>
> The Plaintiffs seek to define the issue more narrowly. Extrapolating from the Supreme Court's holding in *Sereboff*, the Plaintiffs argue that each individual health plan in the instant action has a substantial likelihood of success against each individual claimant who has received Vioxx-related medical benefits from that plan. For several reasons, the Court declines to accept the Plaintiffs' characterization. First, there are wide discrepancies between the provisions in the health plans Plaintiffs seek to enforce. Second, Plaintiffs attempt to enjoin distribution of funds to claimants who have no relation to the Plaintiffs, and against whom the Plaintiffs have no claim whatsoever, let alone a substantial likelihood of success on the merits. Third, the Court finds that the injunction sought by the Plaintiffs does not constitute appropriate equitable

relief under the Sereb*off* and *Bombardier* line of cases.

* * *

With little precedent bearing directly on the uncertainties in the instant case, the Court turns to the fundamental, three-part analysis set forth in *Bombardier* to ground its inquiry. In *Bombardier*, the Fifth Circuit established three considerations for determining whether a plaintiff seeks appropriate equitable relief under § 502(a)(3) of ERISA: "Does the [plaintiff health plan] seek to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the [plaintiff], and (3) that are within the possession and control of the defendant beneficiary?" 354 F.3d at 373. Pursuant to this analysis, the Fifth Circuit held that the Bombardier health plan sought appropriate equitable relief under ERISA when it asserted an equitable lien against settlement funds held in a trust account by the beneficiary's attorney. *Id.*

Turning to the case at hand, the Court first looks to see whether the Plaintiffs are seeking to recover funds that are specifically "identfiable" within the contemplation of the *Sereboff* and *Bombardier* line of cases. In most of those cases, the specifically identifiable funds were already awarded to the beneficiary pursuant to a judicial award or extra-judicial settlement agreement. The Supreme Court noted in *Sereboff*, for example, that the fund at issue was the same fund that had been "identified" by the terms of the plan itself--the beneficiary's recovery from the third-party tortfeasor. 547 U.S. at 364. At this early stage of the Vioxx Settlement proceedings, however, the Claims Administrator has not finished determining which claimants are eligible for funds or allocating points to individual claimants so as to determine the amount of recovery pursuant to a formula for translating points to dollar amounts. As a result, the Court has no reliable means of determining which claimants will even receive funds, much less the amount of money that they will receive. Further, none of the exemplar health plans offered by the Plaintiffs designates an unallocated settlement fund like the one in the Vioxx Settlement as an "identifiable" fund from which the plan may collect, and this Court doubts very much whether such a provision would be enforceable. As a result, the Court finds that there is no "identifiable" fund against which the Plaintiffs may assert their

7

liens.

Proceeding to the second prong of the *Bombardier* analysis, this Court is unable to determine whether any portion of the funds at issue might belong in good conscience to the Plaintiff health plans. The Court's difficulties in this respect are attributable in large part to the uncertainties inherent in the Plaintiffs' request. As a threshold matter, the Court recognizes that it is possible, even likely, that a significant portion of the settlement funds do--or, perhaps more accurately, will at some point in the future--belong to some of the Plaintiff health plans. Whether those funds belong in good conscience to the Plaintiffs at this stage of the settlement proceedings, however, is doubtful. In addition, it is beyond dispute that the settlement funds of claimants who have not received benefits from the Plaintiffs do not--and will never--belong to the plans. Because the Plaintiffs are unable to tailor their proposed injunctions to apply to only those claimants for whom they have provided medical benefits, the Court finds that the Plaintiffs' proposed injunctions will delay disbursement of funds that do not in good conscience belong to them.

Finally, in response to the third question raised by *Bombardier*, the Court finds that the funds in the Vioxx Settlement Program are not currently within the possession or legal control of the plan beneficiaries against whom the Plaintiffs seek restitution. In *Knudson*, the Supreme Court found that the funds were not within the beneficiary's control when the funds had been placed in a special needs trust pursuant to California law. 534 U.S. at 215. Similarly, claimants in the Vioxx Settlement Program do not have possession over the lump, unallocated settlement fund currently held by BrownGreer. At this early stage of the proceedings, with no final determination regarding valuation of claims or even total points awarded, the Court harbors serious doubts as to whether any individual claimant even has a legal right to a portion of the fund. Even if the claimants do have such a right, however, the Plaintiffs would not be entitled to enjoin the funds of claimants who are not their beneficiaries. As a result, the Court finds that the Plaintiffs seek to enjoin funds that are not within the possession or legal control of their plan beneficiaries.

> For the reasons listed above, the Plaintiffs cannot demonstrate a substantial likelihood of success on the merits. First, the wide discrepancies between some of the plans, including the threshold determination of whether the plans are governed by ERISA at all, raise serious doubts as to the enforceability of all plans at issue for equitable relief. Second, the Plaintiffs' proposed injunction would delay distribution of interim payments to claimants against whom the Plaintiffs have no claim at all. Third, pursuant to the analysis set forth in *Bombardier*, there is no identifiable fund; the funds at this time do not belong in good conscience to the Plaintiffs; and individual claimants do not have possession or legal control over the lump, unallocated settlement fund. In consideration of all of these factors, the Court finds that the Plaintiffs in the instant action have failed to carry their burden of persuasion in showing a substantial likelihood of success on the merits

*In re Vioxx*, 2008 WL 3285912, at *11-12, *14-15 (E.D. La. August 7, 2008).

For all of the foregoing reasons, we conclude that the district court did not abuse its discretion in denying the appellants' motions for equitable relief. The district court's judgment is AFFIRMED.