UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | MDL NO. 1657 |
| IN RE: VIOXX | : |  |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE KNOWLES |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

THIS DOCUMENT RELATES TO:

| David Agard, et al. v. Merck & Co., | 05-1089 |
|---|---|
| Glenn Dier, et al. v. Merck & Co., | 05-1088 |
| Adnan Aljibory, et al. v. Merck & Co., | 05-1090 |
| Rosemary Holobosky, et al. v. Merck & Co., | 05-1091 |
| Marjorie Connolly, et al. v. Merck & Co., | 06-2708 |
| Marilyn Core, et al. v. Merck & Co., | 05-2583 |
| Carlo Devincentiis, et al., v. Merck & Co., | 05-2297 |
| Kathleen Hoffner, et al. v. Merck & Co., | 06-2238 |
| Robert D. Gates, et al. v. Merck & Co., | 05-6221 |

**ORDER & REASONS**

Before the Court are certain Plaintiffs' Motion for Miscellaneous Relief (Rec. Doc. 14938) and Motion for a Stay (Rec. Doc. 16803). For the following reasons, both motions are DENIED.

-1-

## I.     BACKGROUND

On November 9, 2007, the parties announced the establishment of a Vioxx Resolution Program that encompasses all claims that allege a heart attack, sudden cardiac death, or stroke.[1] Also on that date, the Court entered two pre-trial orders requiring Plaintiffs to provide certain information to Merck by certain deadlines.  Pre-Trial Order No. 28 ("PTO 28") requires all plaintiffs and tolling agreement claimants with claims pending as of November 9, 2007, to produce specified information regarding their claims if they are not eligible for or have not submitted their claims to the Vioxx Resolution Program.  Under PTO 28, plaintiffs and tolling agreement claimants must provide case-specific expert reports to Merck by certain dates based on the first letter of the plaintiff's last name.  Plaintiffs whose last names begin with the letters A through L were initially required to submit this information by May 1, 2008, and plaintiffs whose last names begin with the letters L through Z were initially required to submit this information by July 1, 2008.  Pre-Trial Order No. 29 imposes similar requirements on plaintiffs whose claims are filed or transferred to the MDL after November 9, 2007.

On December 10, 2007, certain plaintiffs (the "Benjamin Plaintiffs"), all of whom are represented by attorney Ronald Benjamin, appealed Pre-Trial Order No. 28 to the United States Court of Appeals for the Fifth Circuit.  The Benjamin Plaintiffs sought to have the Fifth Circuit

---

[1] For a more detailed factual background describing the events that took place before the inception of this Multidistrict Litigation, see *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).  For a more detailed factual background describing the terms of the Vioxx Master Settlement Agreement and the events that took place after the parties reached a settlement, see *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2008 WL 3285912 (E.D. La. Aug. 7, 2008) (denying third-party payors' motions to enjoin interim payments).

vacate the Court's requirement that plaintiffs' counsel produce case-specific expert reports.  On March 28, 2008, the Fifth Circuit dismissed the Benjamin Plaintiffs' appeal without an opinion. *See In re Vioxx Prods. Liab. Litig.*, Case No. 07-31164 (5th Cir. March 28, 2008) (per curiam).

On April 17, 2008, certain other plaintiffs (the "Oldfather Plaintiffs") filed a motion to suspend or modify the requirements of Pre-Trial Order No. 28.  The Oldfather Plaintiffs argued that PTO 28's requirements were premature as to those plaintiffs who alleged injuries for which the PSC had not yet developed general causation expert reports.  With respect to plaintiffs who were eligible for the Vioxx Settlement Program, the Oldfather Plaintiffs argued that PTO 28 did not provide sufficient time to develop expert reports or seek new counsel.  In essence, the Oldfather Plaintiffs contended that PTO 28 "is unfair and unilaterally slanted in favor of Merck, both in general and specific causation." *See In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008).

On May 30, 2008, the Court issued an Order & Reasons (the "May 30th Order") denying in part and granting in part the Oldfather Plaintiffs' motion to vacate PTO 28.  *Id.*  In the Court's May 30th Order, the Court explained that PTO 28 "is a type of pre-trial order commonly known as a *Lone Pine* order," and that "[t]he United States Court of Appeals for the Fifth Circuit has recognized the value of and approved the use of *Lone Pine* orders in mass tort litigation." *Id.* (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (holding that it is within a district court's discretion to issue a *Lone Pine* scheduling order that essentially requires the production of "information that plaintiffs should have had before filing their claims")).  In light of the advanced stage of the Vioxx litigation, the Court found that PTO 28 was appropriate and that, after nearly a decade of discovery, "it is not too much to ask a Plaintiff to provide some

kind of evidence to support their claim that Vioxx caused them personal injury, whether the injury be deep vein thrombosis, a heart attack, an ulcer, or some other malady." *Id.*[2] Accordingly, the Court denied the Oldfather Plaintiffs' request to vacate PTO 28. To ensure that all plaintiffs had a fair opportunity to comply with the requirements of PTO 28, however, the Court granted the Oldfather Plaintiffs' request to extend the deadlines for providing case-specific expert reports, allowing that claimants whose last names begin with the letters A though L should submit reports by July 1, 2008, whereas claimants whose last names begin with the letters M though Z should submit reports by August 1, 2008.

---

[2] The Court explained that a *Lone Pine* order was particularly appropriate given the advanced stage of the Vioxx litigation, both in the federal MDL and the state courts:

> [I]n the present case, a *Lone Pine* order may not have been appropriate at an earlier stage before any discovery had taken place since little was known about the structure, nature and effect of Vioxx by anyone other than perhaps the manufacturer of the drug. But this case is no longer in its embryonic stage. It has existed in state courts for over seven years and in this Court for over three years, and much discovery has taken place…. For nearly a decade, Plaintiffs' counsel throughout the country have been studying, exploring, and discovering all of the effects of Vioxx on the human body. In this MDL, the PSC did not selectively discovery only MI's or strokes, but rather they conducted general discovery on the effects Vioxx may or may not have on individuals. All of this material is and has been available to counsel in the individual cases.
> The Court finds that at this advanced stage of the litigation, it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury, whether that injury be deep vein thrombosis, a heart attack, an ulcer, or some other malady. Surely if Plaintiffs' counsel believe that such claims have merit, they must have some basis for that belief; after all this time it is reasonable to require Plaintiffs to come forward and show some kind of basic evidence of specific causation.

*In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d at 744.

## II.   PRESENT MOTIONS

On June 30, 2008, the Benjamin Plaintiffs filed a motion seeking miscellaneous relief, including, *inter alia*: (1) the Court's resignation as Chief Administrator of the Vioxx Master Settlement Agreement; (2) an order vacating the Vioxx Master Settlement Agreement because it is in fact a class settlement subject to the requirements of Rule 23; (3) an amendment to PTO 28 to allow for alternate forms of proof or to extend the deadlines for submission of expert reports; (4) an order lifting the stay of discovery imposed by PTO 28; and (5) an order vacating Pre-Trial Order No. 37, which sets forth the terms of access to the PSC trial package.  The Benjamin Plaintiffs have also filed a motion to stay any further orders of dismissal based on PTO 28 pending the Court's decision on their motion for miscellaneous relief.  Both the Plaintiffs' Steering Committee and Merck have filed responses in opposition to the Benjamin Plaintiffs' motion.  The Court will now address each of the Benjamin Plaintiffs' arguments in turn.

## III.   LAW & ANALYSIS

### A.   Motion for the Court's Resignation as Chief Administrator of the Vioxx Master Settlement Agreement

First, the Benjamin Plaintiffs seek the Court's resignation as Chief Administrator of the Vioxx Master Settlement Agreement.  According to the Benjamin Plaintiffs, the Court should resign its role as Chief Administrator of the Settlement in part because the Court "is duty bound to exclude from compensation under the MSA the same injuries that are being pursued by plaintiffs in MDL 1657, and will have to rule on the viability of those injuries in the tort system." The Benjamin Plaintiffs offer no meaningful legal basis for their request.  To the extent that the Benjamin Plaintiffs' motion might be interpreted as seeking judicial recusal pursuant to 28

U.S.C. § 455, however, the request is without merit.

Title 28, United States Code, Section 455 provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. The Fifth Circuit has explained that recusal under § 455 is warranted only in those cases in which a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 378 (5th Cir. 2002). The facts of the instant case do not warrant recusal. As Chief Administrator of the Vioxx Master Settlement Agreement, the Court serves in an administrative capacity that has no substantive effect on its management of the MDL proceedings. *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2008 WL 4091672, at *2 (E.D. La. Aug. 27, 2008) (explaining that the Court "has consistently exercised its inherent authority over the MDL proceedings in coordination with its express authority under the terms of the Settlement Agreement to ensure that the settlement proceedings move forward in a uniform and efficient manner"). The Court played no role in drafting the private settlement agreement reached by the parties; the Court has taken no position as to what types of claims should or should not have been included in the settlement; and, finally, the Court has consistently stated that it neither encourages nor discourages participation in the settlement. Accordingly, the motion for the Court's resignation is without merit.

### B. Motion to Vacate the Master Settlement Agreement Pursuant to Rule 23

Second, the Benjamin Plaintiffs argue that the Vioxx Master Settlement Agreement should be vacated because the private, contractual agreement is in fact a class settlement subject to the requirements set forth in Rule 23. The Plaintiffs argue, among other things, that they were not adequately represented in the settlement discussions and that the settlement does not protect

their individual interests.

The Benjamin Plaintiffs' reliance on Rule 23 is misplaced.  This Court has previously denied class certification of personal injury Vioxx cases.  *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 462-63 (E.D. La. 2006) (finding that the "number, uniqueness, singularity, and complexity of the factual scenarios surrounding each case swamp any predominating issues").  Unlike a class settlement, the MSA is a private, opt-in settlement that was not secured through a settlement class vehicle and therefore poses no risk of binding any unwilling plaintiff to its terms.  Despite the Benjamin Plaintiffs' rather unspectacular argument that plaintiffs' lead counsel may not bind the litigants in an MDL to a settlement agreement, the Benjamin Plaintiffs are unable to show how in fact they are "bound" by the terms of the private, opt-in settlement they seek to vacate.  Lacking any support for their argument in legal precedent, the Benjamin Plaintiffs appear to base their request more on their own individual desire to rewrite the terms of the settlement.  Accordingly, the motion to vacate is denied.

### C. Motion to Modify Pre-Trial Order No. 28 to Allow for Alternate Forms of Proof or to Extend the Deadlines for Submission of Expert Reports

Third, the Benjamin Plaintiffs seek an order amending Pre-Trial Order No. 28 to allow for alternate forms of proof or to extend the deadlines for submission of expert reports.  The Benjamin Plaintiffs propose two alternate forms of proof in lieu of case-specific expert reports: first, an attorney affirmation that the plaintiff has an expert who will opine that the plaintiff's injury was in fact causally related to Vioxx; or, second, a single affirmation opining a causal relationship between ingestion of Vioxx and the plaintiffs' non-eligible injuries.  Alternatively, the Benjamin Plaintiffs seek an extension of the deadlines for submission of case-specific expert

reports for injuries not covered by the MSA.  The Benjamin Plaintiffs allege that they were caught by surprise by PTO 28 because they were under the impression that it was the PSC's responsibility to pursue and prepare such information.[3]

For the reasons set forth in the Court's earlier opinion regarding PTO 28, the Plaintiffs' argument rings hollow.  *See In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d at 743.  As the Court explained, *Lone Pine* orders such as PTO 28 are intended "to handle the complex issues and potential burdens on defendants and courts in mass tort litigation."  *Acuna*, 200 F.3d at 340.  By requiring plaintiffs to produce *case-specific* expert reports, PTO 28 enables the Court "to identify and cull potentially meritless claims and streamline litigation" in this complex MDL.  *Baker v. Chevron USA, Inc.*, Civ. A. No. 05-227, 2007 WL 315346, at *1 (S.D. Ohio Jan. 30, 2007).  The Benjamin Plaintiffs' proposal to substitute alternate methods of proof would undermine the express purposes of the *Lone Pine* order.  Similarly, the Plaintiffs' argument that PTO 28

---

[3] Although the precise legal basis for the request is somewhat unclear, the Benjamin Plaintiffs do claim that their request is "injunctive, at least in part," and recite the four requirements for a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) threat of irreparable injury if the relief is not granted; (3) injury to the movant outweighs injury to the non-movant; and (4) granting relief will serve the public interest.  *See Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).  Nevertheless, it is clear that the Plaintiffs do not seek injunctive relief.  To the extent that the request might be interpreted as a motion for injunctive relief, however, the Court finds that the Plaintiffs have made no showing as to any of the four elements necessary to succeed on such a request.

The request is similarly without merit to the extent that it might be interpreted as a motion for reconsideration.  "A court's reconsideration of a prior order is an extraordinary remedy which should be used sparingly."  *Motiva Enters. LLC v. Wegman*, No. 00-3096, 2001 WL 246414, at *2 (E.D. La. Mar. 12, 2001).  Indeed, allowing the parties to seek reconsideration of the Court's orders simply because the parties might individually prefer a different result "would render the entire briefing process irrelevant and [would] lead to endless motions to reconsider."  *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res.*, No. 03-1496, 2004 WL 1488665, at *1 (E.D. La. June 30, 2004).  Accordingly, to the extent that the Benjamin

imposes unduly burdensome requirements is simply not credible. As the Court has previously explained, "after all this time it is reasonable to require Plaintiffs to come forward and show the basis for their beliefs and show some kind of basic evidence of specific causation." *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d at 744. Under scrutiny, the Benjamin Plaintiffs' motion for relief from PTO 28 amounts to little more than a thinly-veiled motion to vacate the order.[4] Accordingly, the motion is denied.[5]

---

Plaintiffs' request might be interpreted as a motion for reconsideration, it is denied.

[4] In connection with their request to amend the terms of PTO 28, the Benjamin Plaintiffs also seek an order lifting the stay imposed by PTO 28, as well as an order vacating PTO 37, which sets forth the terms for access to the PSC's trial package. As the PSC makes clear in its response brief, however, the Benjamin Plaintiffs are free to "inspect and photocopy at their expense any non-work product document available in the depository consistent with this Court's other pretrial orders but without the obligation imposed by PTO No. 37." Accordingly, the request to vacate PTO 37 is dismissed as moot. Similarly, with respect to the Benjamin Plaintiffs' request to lift the stay imposed by PTO 28, the Plaintiffs' request is denied. The Court imposed the stay of discovery for good reason and will lift the stay at an appropriate time.

[5] Both the Plaintiffs' Steering Committee and Merck contend that Mr. Benjamin is merely employing the same failed discovery tactics that resulted in dismissal of his clients' cases in the *In re Diet Drug* litigation. *See In re Dieg Drugs*, 30 Fed. Appx. 27, 2002 WL 272351 at *1 (3d Cir. Feb. 26, 2002). In that litigation, the Third Circuit affirmed the district court's dismissal of Mr. Benjamin's cases after he repeatedly refused to comply with the district court's requirement that plaintiffs produce case-specific expert reports. In affirming dismissal of the plaintiffs' cases, the Third Circuit explained that the dismissal was warranted given Mr. Benjamin's litany of discovery abuses:

> Suffice it to say, appellants have been the victim of some bad lawyering by their trial counsel, Ronald R. Benjamin. Indeed, Benjamin's discovery abuses can be summarized as a parade of obstinance that ultimately cost his clients their day in court. The origin of Benjamin's discovery mischief dates back to October 18, 1999, when case-specific expert designations were due. Benjamin failed to honor this deadline. Instead, he objected to the need for disclosure before the District Court ruled on a related *Daubert* motion, citing the cost of obtaining expert reports.
> It is not necessary to burden this Opinion with a recounting of each and every subsequent instance of Benjamin's obstinance. In short, counsel had numerous opportunities to comply with the District Court's longstanding

## IV. CONCLUSION

For the reasons stated above, the Benjamin Plaintiffs' Motion for Miscellaneous Relief (Rec. Doc. 14938) and Motion for a Stay (Rec. Doc. 16803) ARE DENIED.

New Orleans, Louisiana, this __10th__ day of December, 2008.

                                          *Eldon E. Fallon*
                                          UNITED STATES DISTRICT JUDGE

---

discovery order, yet stubbornly clung to his argument that he should not have to designate experts. Neither multiple express rejections of this already-rejected argument, nor threats of dismissal ameliorated counsel's defiance to the discovery schedule….
      On August 24, 2000, more than ten months after designations were due, the Special Discovery Master gave Benjamin yet another chance to do what he had, over many months, been ordered to do. Benjamin failed to seize this opportunity and the Special Master recommended dismissal as a sanction.

*In re Diet Drugs*, 30 Fed. Appx. 27, 2002 WL 272351 at *1 (3d Cir. Feb. 26, 2002).