UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX PRODUCTS<br>LIABILITY LITIGATION<br><br>**This document relates to All Cases** | CIVIL ACTION<br><br>NO. 2:05-MD-01657-EEF-DEK<br><br>SECTION L<br>JUDGE ELDON E. FALLON<br><br>DIVISION 3<br>MAGISTRATE DANIEL E. KNOWLES III |

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER
APPOINTING TULANE CIVIL LITIGATION CLINIC
AND FOR STAY PENDING BRIEFING; ALTERNATIVELY
FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B)**

Walter Umphrey,[1] John Eddie Williams, Jr.,[2] Drew Ranier,[3] Mikal Watts,[4] and Grant Kaiser[5] (the "VLC") filed a Motion for Reconsideration on December 10, 2008, asking this Court to reconsider its Order of August 27, 2008, capping contingent fees at 32% (the "Capping Order"). This group of attorneys represents approximately 2,000 plaintiffs in the Vioxx

---

[1] Provost Umphrey Law Firm, LLP.
[2] Williams Kherkher Hart Boundas, LLP.
[3] Ranier, Gayle & Elliot, LLC.
[4] The Watts Law Firm, LLP.
[5] The Kaiser Firm LLP.

{N1916528.7}                                1

Settlement. Their law firms invested millions of dollars and thousands of hours identifying meritorious cases, creating databases, developing the factual and medical basis for individual cases, developing expertise in the subject matter, helping and communicating with their clients, and actually bringing Vioxx cases to trial. At the status conference held on December 19, 2008, this Court stated its intention to appoint the Tulane Civil Litigation Clinic to represent the VLC's clients' interests on this sole issue due to what the Court perceived as a conflict of interest between the VLC and its clients. Later that afternoon, this Court entered a formal order (the "Appointment Order") reflecting its view that a potential conflict existed, appointing the Tulane Civil Litigation Clinic, and ordering the VLC to send a copy of the order to the VLC's clients by January 5, 2009.

   The VLC has no doubt – and has never doubted – that this Court has the best of intentions in pursuing this course. Nevertheless, the Appointment Order raises several fundamental problems similar to those the VLC raised in its motion relating to the Capping Order. As requested at the December status conference, the VLC should be afforded the opportunity to brief those issues *before* the Appointment Order takes effect so that they may voice their legal arguments and the Court may consider them now, rather than after the fact when the order has already been implemented and has results that the Court cannot undo.

   While the VLC has no objection to the Court's appointment of the Tulane Civil Litigation Clinic to provide independent objective briefing concerning the Capping Order, the VLC disagrees that there is a conflict of interest between the VLC and their clients or that Tulane may be appointed as an advocate. Absent any request by the VLC's clients, absent any conflict, absent any ethical violation on the part of the VLC, and absent any legal authority in statute or rule, this Court errs if it appoints the Tulane Civil Litigation Clinic to represent clients of the

VLC.  The appointment contravenes Louisiana Supreme Court Rule XX, which governs the operation of law clinics in Louisiana.  Most importantly, the appointment, and the Court's message to the VLC's clients to contact the Tulane Civil Litigation Clinic, impermissibly and erroneously interferes with the attorney-client relationship between the VLC and its clients.

These points are explained in summary in this memorandum.  Due to time constraints, all-encompassing briefing is not possible.  The VLC must present this matter to the Court quickly to allow this Court the opportunity for further reflection before the Appointment Order takes full effect and creates irreparable results.  The VLC requests that this Court set a briefing schedule so that the VLC may more completely brief the points raised here.  The VLC further asks that this Court withdraw, or in the alternative, stay the effect of the Appointment Order until the VLC may be heard on these issues and the Court may consider the VLC's arguments and authorities.  If the Court denies this relief, the VLC requests a stay of the order pending review by the Fifth Circuit Court of Appeals under 28 U.S.C. § 1292(b) or otherwise.

I.  The VLC's Motion for Reconsideration of the Capping Order Does Not Present A Conflict of Interest

In the Appointment Order, this Court *sua sponte* determined, without notice or an evidentiary record, that the VLC's motion for reconsideration of the Capping Order presented a potential conflict of interest, thereby ostensibly justifying appointment of independent counsel to represent the VLC's clients' interests.[6]  Respectfully, no potential conflict of interest exists.

Attorneys appearing before the United States District Court for the Eastern District of Louisiana must adhere to the Louisiana Rules of Professional Conduct.[7]  Any determination, therefore, that a potential conflict exists requires examination of these rules.  In the attached

---

[6] *See* Rec. Doc. No. 17517, pp. 1-2.
[7] *See* L.R. 83.2.4E ("This court hereby adopts the Rules of Professional Conduct of the Louisiana State Bar Association . . . .").

{N1916528.7}                                       3

affidavit of Professor Basile Uddo, a recognized expert on legal ethics, Professor Uddo shows that there is no potentially disqualifying conflict affecting the VLC's representation of their clients with respect to reconsideration of the Capping Order under either the ABA Model Rules or the Louisiana Rules of Professional Conflict.  Professor Uddo cites to Rule 1.5(c) concerning contingent fee contracts and Rule 1.7(a)(2) defining disqualifying conflicts.

A conflict of interest exists under Rule 1.7, if "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer."[8]  The Rules provide explicit exceptions to Rule 1.7's prohibition on a lawyer's personal interests.

Rule 1.5 makes clear that contingent fee contracts are ethically acceptable so long as they are reasonable.[9]  Indeed, Rule 1.8 excepts contingent fee agreements from the conflict of interest rules:

> (i) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
>
> . . . .
>
> 2. contract with a client for a reasonable contingent fee in a civil case.[10]

A potential conflict of interest, therefore, does not arise merely because a privately-negotiated contingent fee agreement exists between the attorney and client.  In *Caplan v. Braverman*, Judge Joyner of the Eastern District of Pennsylvania considered a defense motion for disqualification of the plaintiff's attorney's firm based, in part, on a claim of "material

---

[8] LA. RULES OF PROF'L CONDUCT R. 1.7(a)(1), (2) (2008).
[9] *Id.* at 1.5(a) (2008).
[10] *Id.* at 1.8(i)(2) (2008).

limitation" resulting from a contingent fee agreement between the plaintiff and her attorney.[11]  In confirming the permissibility of contingency fee contracts, Judge Joyner noted that "[d]efendants do not argue that the potential conflict arises from anything more than this fee arrangement."[12]  And, "[w]e do not find that this is so."[13]

If the existence of a contingent fee agreement created a conflict, the appointment of independent counsel would be required in every representation undertaken under the agreement. Such an inflexible rule would occasion far-reaching, unintended, and unreasonable results. Absent an evidence-based finding that there is a significant risk that the attorney's personal interest in the contingent fee will materially limit the representation, no conflict of interest – actual or potential – exists.[14]

There is no risk here, and certainly not a *significant* one, that the VLC's motion for reconsideration will materially limit the VLC's remaining representation of its clients.  This Court has already approved the Settlement Agreement; all that remains is for the VLC to ensure that its clients receive the funds to which they are entitled, a service that they will perform as zealously and diligently as they have in the representation of their clients so far.  The VLC's interests and those of its clients coincide in this remaining task.  It is in the interests of both to seek the maximum amount possible.  The VLC, in seeking reconsideration of the Capping Order, merely seeks to carry out terms of privately-negotiated contracts about which no client has complained, and, as such, the motion for reconsideration does not materially limit the VLC's remaining obligations to its clients.  The members of the VLC will, consistent with their

---

[11] *Caplan v. Braverman*, 876 F.Supp. 710, 712 (E.D. Pa. 1995).
[12] *Id.*
[13] *Id.*
[14] *Compare* LA. RULES OF PROF'L CONDUCT R. 1.7(a)(1), (2) *with* LA. RULES OF PROF'L CONDUCT R. 1.8(i)(2).  *See also* MODEL RULES OF PROF'L CONDUCT R. 1.8 cmt. [12] (2007).

professional obligations, continue to actively, vigorously, and zealously pursue their clients' interests.

But, even if a potential conflict does arise from a contingency fee contract, without more, these conflicts "have not been thought . . . so serious as to require prohibition or even closely regulating contingent-fee contracts."[15]  Judge Posner, writing for the panel of the Seventh Circuit, concluded that contingent fee agreements do not create a "serious conflict of interest."[16] In *Chesny*, the Court considered whether the existence of a contingent fee arrangement raised a conflict whenever the defendant made a settlement offer.  Concluding not, Judge Posner wrote, "the lawyer, in advising the client whether to accept it, has to indicate how much the client will net after the lawyer's fee is subtracted."[17]  If the plaintiff agrees, then the attorneys subtract the fee; if the "plaintiff thought the lawyers were taking too much, he could ask the court to arbitrate the dispute."[18]

Here, the VLC's clients are well aware of the terms of their contracts and the terms of the Settlement Agreement.  Although precise amounts have not been finalized for all clients, the vast majority, but not all, clients agreed in advance that they would pay an attorney's fee of 40 % for the VLC's services.[19]  The VLC's clients have not requested that anyone resolve the dispute; no complaint concerning the contingent fee contracts has been advanced at all.  If it can be said that *any* conflict exists, which the VLC denies, it has not been asserted and is not prohibited by the Rules of Professional Conduct.

---

[15] *Chesny v. Marek*, 720 F.2d 474, 477-78 (7th Cir. 1983), *rev'd in part on other grounds*, 473 U.S. 1 (1985).
[16] *Id.* at 478.
[17] *Id.*
[18] *Id.* (citing *Pradini v. Nat'l Tea Co.*, 557 F.2d 1015, 1020-21 (3d Cir. 1977)).
[19] The VLC's Contracts for Representation always stipulated a 40% fee; in some referred cases, however, the agreements of referring counsel did not always stipulate 40%.

As the court alluded to during the status conference, an attorney and his client may, as a result of a previously-negotiated fee contract, have competing economic interests with respect to a limited pool of funds created by a settlement. But, that is not the end of the analysis. The mere existence of a financial interest in the representation does not signal an impermissible conflict of interest.[20] Nor does a potential conflict of interest arise where this "imperfect alignment of interests"[21] is settled *ex ante* through permissible, written contingent fee contracts. As Judge Easterbook said in *Kirchoff v. Flynn*, privately-negotiated contingent fee contracts create an "imperfect alignment of interests" that is preferable to "a conflict of interests, which hourly fees may create."[22] And, where the attorney and client have ordered their interests at the outset of the litigation, a court on its own motion should not thrust the attorney and client into an unsolicited, *ex post facto* disagreement over that alignment.

The contingent fee agreements, and the VLC's attempt to enforce the terms of those agreements through reconsideration of the Capping Order, do not create a potential conflict of interest justifying the appointment of independent counsel.

II. Appointment of the Tulane Civil Litigation Clinic to Represent and Advocate for the VLC's Clients is Impermissible.

Louisiana Supreme Court Rule XX governs the operation of law school law clinics in all courts within the State of Louisiana. Section 4 of that rule provides:

> Standard for Determining Eligibility for Representation. Law school clinical program staff and student practitioners who appear in a representative capacity pursuant to this rule may represent any individual or family unit whose annual income does not exceed 200% of the federal poverty guidelines established by the Department of Health and Human Services. These guidelines need not be applied when the client is court-appointed or court-referred

---

[20] *Cf.* LA. RULES OF PROF'L CONDUCT R. 1.8(i)(2).
[21] *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986).
[22] *Id.*

> and the appointing or referring court has reviewed the economic condition of the client and has determined that the client is indigent.

This Court upheld the constitutionality of Rule XX, including its indigence requirement, in *Southern Christian Leadership Conference, Louisiana Chapter v. Supreme Court of State of Louisiana*.[23] In affirming, the Fifth Circuit stated: "Under rational basis review, the indigence requirements are valid. They are rationally related to one of the stated purposes of Rule XX: providing representation to those who cannot afford it for themselves.[24] Because the indigence requirements do not, on their face, implicate any speech interests, the district court was correct to dismiss this part of the Plaintiffs' challenge to Rule XX."[25]

There has been no determination by this Court that the VLC's clients are "indigent", nor could there have been, as there is no record on this subject. Without that evidence-based finding of fact, the Tulane Civil Litigation Clinic cannot legally serve "in a representative capacity" to the VLC's clients. Rule XX does not prevent the Court from appointing the Tulane Civil Litigation Clinic to give disinterested expert legal opinions on the issues raised by the Capping Order, and the VLC has no objection to that type of appointment. The Tulane Civil Litigation Clinic should not, however, be appointed as an advocate for any particular point of view.

This Court's past appointment of the Tulane Civil Litigation Clinic to represent an indigent seaman in *Karim v. Finch Shipping Co., Ltd.* is entirely distinguishable from the circumstances of this case.[26] There the Court utilized specific statutory authority, 28 U.S.C. §

---

[23] *S. Christian Leadership Conference, La. Chapter v. Supreme Court of State of Louisiana*, 61 F. Supp. 2d 499 (E.D. La. 1999) (Fallon, J.), *aff'd*, 252 F.3d 781 (5th Cir. 2001), *cert. denied*, 534 U.S. 995 (2001).

[24] *See* Louisiana Supreme Court Rule XX, section 1.

[25] *S. Christian Leadership Conference, La. Chapter v. Supreme Court of State of Louisiana*, 252 F.3d 781, 789 (5th Cir. 2001).

[26] *See Karim v. Finch Shipping Co., Ltd.*, 233 F. Supp. 2d 807 (E.D. La. 2002), *aff'd*, 374 F.3d 302 (5th Cir. 2004).

1915(e), to appoint the Tulane Civil Litigation Clinic to represent the interests of Mr. Karim, an indigent Bangladeshi seaman and a traditional ward of the court. Karim's chosen counsel, Mr. Paul Miniclier, sought by motion to withdraw the *entire* proceeds of the seaman's judgment in payment of Miniclier's fee and costs. Here, no similar legal authority to appoint the Clinic exists. The VLC's clients have not been found to be indigent nor legally incapacitated in any way and the VLC has never sought, and would never seek, the entire proceeds of any client's case.

Importantly, in *Karim*, Miniclier argued that there was no case or controversy for this Court to decide and therefore, this Court lacked jurisdiction. The Fifth Circuit's answer to this was essentially that this point was waived. The Fifth Circuit found that a case or controversy existed because Miniclier moved the Court to withdraw the funds from the registry of the Court and the law clinic, representing Karim's interests, contested Miniclier's motion. The Fifth Circuit stated:

> Miniclier waited until his reply brief to contend the clinic was improperly appointed under the *in forma pauperis* statute, 28 U.S.C. § 1915. He has waived the factual issue of whether the clinic represented Karim. And, in appointing the clinic, the district court relied in part on its inherent powers. Miniclier does not contend that those powers do not extend to that appointment.[27]

As this Court is probably aware, the VLC's first argument in its Motion to Reconsider the Capping Order (*see* Rec. Doc. Nos. 17327, 17330) is that this Court has no jurisdiction because there is no case or controversy. The VLC *does* contest the Court's authority to appoint the Tulane Civil Litigation Clinic to *represent* the VLC's clients in this matter, whether under Louisiana Supreme Court Rule XX or the concept of inherent authority. As set forth at length in its Memorandum in Support of their Motion to Reconsider (*see* Rec. Doc. No. 17330), the VLC

---

[27] *See Karim v. Finch Shipping Co., Ltd.*, 374 F.3d 302, 307 (5th Cir. 2004).

believes that the inherent authority of federal courts is limited to particular circumstances not present in this case.  The VLC submits that a case or controversy is one that is brought by clashing litigants who ask the court to resolve a real dispute between them.  A case or controversy, however, cannot be created by this Court's appointment of the Tulane Civil Litigation Clinic to advocate for the VLC's clients who have no dispute with the VLC and have not sought – or agreed to – the appointment of other counsel.  The VLC in no way waives its case or controversy point.

> III.    Appointment of the Tulane Civil Litigation Clinic to Represent the VLC's Clients Impermissibly Interferes With the VLC's Attorney-Client Relationships

In the attached affidavit, Professor Basile Uddo avers that "[a] client's choice of counsel should be inviolable except for extraordinary circumstances, which are not presented herein."[28] In *Hart v. Gaioni*, a panel of the Ninth Circuit Court of Appeals relying upon Supreme Court precedent confirmed Professor Uddo's opinion that the client's choice of counsel is sacrosanct in the eyes of the law:  "Civil litigants have a First Amendment right to be represented by counsel of choice free from unreasonable government interference with the attorney-client relationship."[29]  All courts, then, should be hesitant to interfere with the attorney-client relationship absent a request by the particular client.

In appointing the Tulane Civil Litigation Clinic without first receiving a complaint from any VLC client or a request for independent counsel by any VLC client, this Court, with all due respect, impairs the VLC's clients' otherwise inviolate choice of counsel.  The Appointment Order has the same effect as disqualifying the VLC from representing its clients concerning this

---

[28] Affidavit of Basile Uddo.  *See also In re Gopman*, 531 F.2d 262, 268 (5th Cir. 1976) (recognizing the client's right to obtain counsel of his choice, which is a right so important that it will "yield only to an overriding public interest").

[29] *See Hart v. Gaioni*, 261 Fed. Appx. 66, *1 (9th Cir. 2007) (not selected for publication) (citing *Bhd. of R.R. Trainmen v. Virginia*, 377 U.S. 1, 7-8 (1964)).

limited issue. But, as shown *supra*, there has been no demonstration that a conflict of interest exists that would render *de facto* disqualification appropriate. And, courts should be disinclined to "paternalistically [infringe] on a party's right to a lawyer of his choice absent compelling factors indicating that the attorney's loyalty to his client has been incontrovertibly compromised."[30]

This important preservation of the sanctity of the attorney-client relationship is precisely one reason why "motions to disqualify attorneys are generally disfavored."[31] Indeed, "since courts are reluctant to deprive clients of their choice of counsel, 'a high standard of proof is placed upon one who seeks to disqualify counsel.'"[32] But, the decision to appoint the Tulane Civil Litigation Clinic to represent the VLC's clients' interests concerning the Motion for Reconsideration of the Capping Order was not made after satisfaction of a "high standard of proof"; instead, this Court issued the Appointment Order without an evidentiary record for its determination.

In general, "courts do not disqualify an attorney on the grounds of conflict of interest unless a former or current client moves for disqualification."[33] Professor Uddo further opines in his affidavit that even if a conflict of interest arose out of the VLC's Motion to Reconsider the Capping Order, the VLC's clients should be given an opportunity to waive the conflict in favor

---

[30] *Vegetable Kingdom, Inc. v. Katzen*, 653 F.Supp. 917, 925 n.6 (N.D.N.Y. 1987).

[31] *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 3845228, *3 (E.D. La. Aug. 13, 2008) (quoting *Am. Mortgage Sec. Funding Corp. v. First La. Fed. Sav. Bank of Lafayette*, No. 87-5933, 1988 WL 92026, *2 (E.D. La. Aug. 26, 1988)).

[32] *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 3845228 at *3 (quoting *Fed. Deposit Ins. Corp. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1310 (5th Cir. 1995)). *See also Ritchie v. Gano*, No. 07-7269, 2008 WL 4178152, *2 (S.D.N.Y. Sept. 8, 2008).

[33] *Simonca v. Mukasey*, No. 08-1453, 2008 WL 5113757, *3 (E.D. Cal. Nov. 25, 2008). *Accord In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976) ("As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification."); *Clemens v. McNamee*, No. 08-00471, 2008 WL 1969315, *2 (S.D. Tex. May 6, 2008).

of their current choice of representation.[34]  Yet, the Court has appointed the Tulane Civil Litigation Clinic to represent the VLC's clients on this issue without the opportunity for those clients to consent to the Clinic's representation, to object to the Clinic's representation, or to waive any such conflict preferring instead to remain with their counsel of choice.

IV. The VLC and its Clients Have Agreed to Arbitrate in the Event of Any Dispute Over Fees.

The VLC denies that any dispute, case or controversy regarding fees exists.  However, should this or any other court ultimately hold that a dispute, case or controversy does exist, the VLC wishes to alert the Court that, as can be seen in the exemplar contract attached to Professor Uddo's affidavit, the parties to the fee contract have agreed to submit any such matters to binding arbitration.  The VLC does not waive its rights or the rights of its clients to arbitration.

V. Should This Court Decide Not to Withdraw the Appointment Order at This Time, But Agree to Reconsider the Appointment Order, a Stay is Necessary to Preserve the Status Quo Until Reconsideration Can Take Place.

Without a stay, the Appointment Order will have almost immediate effects.  The Tulane Civil Litigation Clinic will represent the interests of the VLC's clients on the issue of the Capping Order, the Order may artificially and impermissibly create the appearance of a case or controversy where none exists, the attorney-client relationship between the VLC's clients and the VLC will be impaired, and the VLC's clients will be sent an order that this Court may, upon reflection, withdraw or modify.  To prevent these irreparable effects, the VLC requests that this Court stay its order until such time as an evidentiary hearing and briefing can be accomplished.

---

[34] Affidavit of Basile Uddo.

VI. Alternatively, Should This Court Decline to Reconsider and Instead Maintain the Appointment Order in Its Current Form, the VLC Moves This Court to Stay the Appointment Order and Enter an Order Certifying the Appointment Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b).

28 U.S.C. § 1292(b) provides for an interlocutory appeal if the district judge finds and states that an order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. The VLC submits that, as demonstrated above, there are several significant controlling questions of law involved in the Appointment Order. There exists substantial ground for difference of opinion between the Court's current view as embodied in the Appointment Order and the view of the VLC as expressed in this memorandum. While the Vioxx Settlement is well under way, there remains this satellite issue regarding both the Capping Order and the Appointment Order to be concluded before the final resolution of this MDL. Accordingly, the VLC believes that the circumstances justify the entry of an appropriate certification order under 28 U.S.C. § 1292(b).

Additionally, should this Court decide to certify the Appointment Order for immediate appeal, the VLC also moves the Court to enter a stay. As set forth in 28 U.S.C. § 1292(b), an interlocutory appeal does not stay proceedings in the district court unless the Court so orders. For the same reasons stated in Section V of this Memorandum, the Court should stay the order pending interlocutory appeal or other review to prevent irreparable effects of the Appointment Order.

## CONCLUSION

For the reasons set forth above, the VLC moves this Court to a) withdraw the Appointment Order; or alternatively b) stay the Appointment Order while reconsidering the Appointment Order by conducting an evidentiary hearing and entertaining briefs; or in the

further alternative c) certify the Appointment Order for interlocutory appeal and stay the Appointment Order pending the outcome of that interlocutory appeal.  The VLC will submit proposed orders for each of these alternatives along with this motion.

          Respectfully submitted,

/s/ Harry S. Hardin III
HARRY S. HARDIN III (# 6540)
MADELEINE FISCHER (# 5575)
ERIC MICHAEL LIDDICK (# 31237)
JONES, WALKER, WAECHTER, POITEVENT,
CARRÈRE & DENÈGRE, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana  70170-5100
Telephone:     (504) 582-8208
Facsimile:      (504) 589-8208

*Attorneys for John Eddie Williams, Jr., Drew Ranier, Walter Umphrey, Mikal Watts, and Grant Kaiser (the "Vioxx Litigation Consortium")*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsels, Phillip Wittmann and Russ Herman, by U.S. Mail and e-mail, or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a Notice of Electronic Filing in accordance with the procedures established in MDL 1657 on December 24, 2008.

          Respectfully submitted,

/s/ Eric Michael Liddick
ERIC MICHAEL LIDDICK