# AFFIDAVIT

**STATE OF LOUISIANA**
**PARISH OF ORLEANS**

      **BEFORE ME**, the undersigned Notary, personally came and appeared:

### BASILE J. UDDO

who did depose and say:

1. I am an attorney admitted to practice in 1973. I received my B.B.A. from Loyola University (1970); my J.D. from Tulane (Order of the Coif, 1973) and my LL.M. from Harvard Law School (1974). I served on the full-time faculty at Loyola Law School from 1975-1997 where I obtained the level of tenured, full professor. During my tenure I regularly taught courses in legal ethics and professional responsibility. I have practiced extensively in the area of ethics and attorney discipline, including representing attorneys before hearing committees, disciplinary board panels and the Supreme Court. I have also advised attorneys on ethics matters in complex litigation and class action cases. I have also represented groups of attorneys to provide input into discipline rule changes, most recently regarding the proposed new advertising rules. I have been appointed on several occasions to serve as a special disciplinary counsel by the Louisiana Supreme Court to investigate and prosecute, if necessary, sensitive complaints where the Office of Disciplinary Counsel has a conflict. I recently served on the LSBA committee charged with developing a handbook for the new lawyer advertising rules adopted by the Louisiana Supreme Court.

2. I have been asked to provide my opinion with respect to an objection raised by a group of plaintiffs' attorneys (the "VLC") who represent several thousand claimants in the Vioxx Products Liability Litigation. Specifically, the VLC attorneys have asked Judge Fallon to hold a hearing and provide a briefing schedule in support of a reconsideration of his order capping all contingency fees in the Vioxx Litigation. The court's cap has the effect of reducing the contingency fees specified in individual contingency fee contracts between the VLC firms and their individual clients. The VLC attorneys aver that the reconsideration is necessary to provide the court an opportunity to consider the unique role that the VLC has played in this litigation, which distinguishes them from other, perhaps, less involved counsel. The VLC attorneys believe this additional information would justify exceptions to, or modifications of, the capping order. In response to the motion to

reconsider Judge Fallon has indicated that he believes that the VLC attorneys have an alleged conflict of interest in seeking the reconsideration, causing him to appoint independent counsel to represent the interests of the VLC clients on this singular issue.

3. The relevant facts as I understand them are: a) the Court's capping order was entered sua sponte and not pursuant to any request, motion or complaint by a VLC client; b) the affected clients each have entered into valid individual contingent fee contracts with the VLC firms; and c) no hearing has been held with respect to either the capping order or the alleged conflict. In connection herewith I have reviewed a form of the contingency fee contract executed between the VLC firms and their clients, which I attach as Exhibit "A". It is my understanding that this form represents the vast majority of the VLC contingency fee contracts. It is my opinion that this form complies with Louisiana Rules of Professional Conduct, Rule 1.5 (c).

4. It is also my opinion that there is no disqualifying conflict affecting the VLC's representation of their clients by seeking reconsideration of the capping order. Both the ABA Model Rules of Professional Conduct and the Louisiana Rules of Professional Conduct approve of contingency fee agreements. Specifically, Rule 1.5 (c) addresses in detail the parameters for entering into a contingency fee contract. Whatever potential for conflict exists in negotiating such a fee agreement is removed by the details of the rule, which address all of the key elements of a contingency fee agreement. Provided that the rule is followed, and the agreement complies with other applicable rules, the agreement governs the fee due for the representation.

5. Seeking reconsideration of the capping order, which did not emanate from any request, motion or complaint of any VLC client, does not implicate the conflict provisions of the Louisiana Rules of Professional Conduct. Rule 1.7 (a) (2) imposes specific prerequisites to finding a disqualifying conflict:

> ....A concurrent conflict of interest exists if: ....there is a **significant risk** that the representation of one or more clients will be **materially limited** ....by a personal interest of the lawyer.

Given that the VLC contingency fee agreements meet the standards of Rule 1.5 (c), and that the VLC attorneys are seeking recognition of the specified contractual fee, there is no limitation, much less a material limitation, of the clients' representation. The representation has been successfully concluded as to the substance of the litigation. The

2

"representation" now involves a fee amount previously agreed to by the clients and established in conformity with the protective provisions of Rule 1.5 (c). The only "personal interest" of the lawyers is having the court reconsider the capping order to consider more fully the agreement between the VLC firms and their clients and the unique contribution of the VLC firms. Nothing in Rule 1.7 would prohibit the VLC lawyers from making this argument to the court.[1]

6. Finally, even if the VLC's attempts to have the court recognize the contractual fee constituted a conflict of interest under Rule 1.7, which it does not, it would still be a conflict subject to waiver by the clients. Subsection (b) provides for the informed consent to most conflicts and certainly to this alleged conflict. Clearly, if the motion to reconsider did raise a conflict, the VLC clients should be given an opportunity to consent to the conflict and maintain the representation by their chosen counsel as provided for in Rule 1.7. A client's choice of counsel should be inviolable except for extraordinary circumstances, which are not presented herein.

_____
Basile J. Uddo

Sworn to and subscribed before me, notary, on this _24th_ day of December, 2008.

_____

ERIC MICHAEL LIDDICK
NOTARY PUBLIC
State of Louisiana
My Commission Is Issued For Life
Louisiana Notary ID No. 86455

_Eric Michael Liddick_
Printed Name

_31237 (Notary ID #86455)_
Bar Roll Number

---

[1] The result would be different, of course, if the VLC lawyers were seeking to **increase** the contractual fee amount.

3

# THE VIOXX® LITIGATION CONSORTIUM[1]

**PROVOST ★ UMPHREY
LAW FIRM L.L.P.**

**WATTS LAW FIRM L.L.P.**

**WILLIAMS ♣ BAILEY
LAW FIRM L.L.P.**

**RANIER, GAYLE & ELLIOT
L.L.C.**

**THE KAISER FIRM,
L.L.P.**

8441 Gulf Freeway, Ste. 600, Houston, Texas 77017-5051
Telephone: 1-800-706-8667  or  713-225-8667
Facsimile: 713-225-0515  Email: info@vioxxgroup.com
Attorneys may not be certified by the Texas Board of Legal Specialization

# CONTRACT OF REPRESENTATION

We employ and retain the law firms PROVOST ★ UMPHREY LAW FIRM, L.L.P., WILLIAMS ♣ BAILEY LAW FIRM, L.L.P., WATTS LAW FIRM, L.L.P., RANIER, GAYLE & ELLIOT, L.L.C., and THE KAISER FIRM, L.L.P., herein referred to as ("Attorneys") and designated co-counsel to represent us as set forth herein.

## 1. SCOPE OF REPRESENTATION

The Attorneys agree to investigate and evaluate our possible claim or claims, against any manufacturer, distributor, wholesaler or others who may be liable for personal injuries (if any) suffered by us as a result of exposure to VIOXX®. After investigation of our claim, the Attorneys shall have the right to withdraw and cancel this Contract if they are unable or unwilling to undertake the contemplated representation. Thereafter, if the Attorneys agree to pursue this claim after investigation and evaluation, we employ and retain the Attorneys to represent our interests in any and all actions, claims or trial proceedings related to the claim(s) referenced above.

If at any time during the course of investigating, preparing, handling or prosecuting this claim the Attorneys make a good faith determination that further action is untenable or a successful conclusion is not possible, then the Attorneys have the right to withdraw from the case by returning to the client's last know address, all file materials along with a letter of explanation for the withdrawal.

We understand and agree the scope of representation herein does not include the filing of any claim for workers' compensation coverage or other state or federal employee benefits.

If our claim will include an attempt to recover damages based on the death of an individual caused by exposure to a product, we acknowledge the Attorneys represent the estate of the deceased only for purposes of pursuing the survival claim. The Attorneys are not assuming any responsibility for advising us in our capacity as personal representative or fiduciary of the estate. We also understand the Attorneys may also file a wrongful death claim. We understand we are acting as representatives of all persons entitled to bring a wrongful death claim arising out of the injured party's death from an exposure related injury and even though settlement funds may be paid to us alone, we are accountable to all the wrongful death beneficiaries who have valid claims.

We understand the filing of litigation on our behalf may subject us to cross-claims, counter-claims or claims filed against us in another action. We understand this Contract of Representation does not cover the defense of any claims that may be asserted against us. We acknowledge if the amount of any settlement or verdict is reduced by a set off of claims made against us, the amount of this reduction will be treated as a cash settlement and subject to the contingent attorneys' fee as provided in this Contract of Representation.

We acknowledge we have retained the Attorneys for the sole purposes expressly stated in this agreement. We understand neither the Attorneys nor their employees, or other representatives make any representations of any kind to perform any legal service, or to provide any legal opinions on any matter not expressly stated in this contract.

---

[1] This is not a partnership or the attorneys specified above; it is a consortium of attorneys working together on the development of the Vioxx® claims.

Exhibit A

## 2. AUTHORITY OF THE ATTORNEYS

We empower the Attorneys to take all steps in this matter deemed by them to be advisable for the investigation and handling of our claim, including hiring investigators, expert witnesses and/or other attorneys (including attorneys/experts who assist with resolving any Medicare reimbursement claim) and filing any legal action necessary.

## 3. ATTORNEYS' FEES

It is understood and agreed we are employing the Attorneys as set forth herein, and if no recovery is made, we will not owe the Attorneys for any sums whatsoever as attorneys' fees.

In the absence of court order or administrative claim processing in which attorneys' fees are otherwise governed, we agree, in consideration of the services to be rendered to client by Attorneys, client does hereby assign, grant and convey to Attorneys an forty percent (40%) undivided interest in all of client's claims and causes of actions as a reasonable contingent fee for Attorneys' services, that is, an attorneys' fee of forty percent (40%) of any settlement, verdict or recovery obtained in the case for legal services performed in all pretrial and trial proceedings related to the claim(s) referenced above.

We understand some portions of our case may be handled through class actions, court-approved settlements, administrative claims processing, or as a result of bankruptcy proceedings, and the attorneys' fee to be paid to the Attorneys in those situations will be as determined or awarded by order of the court or under the provisions of the court-approved settlement or administrative process. The amount of attorneys' fees permitted under such group recovery varies in each instance, and the Attorneys agree to be bound by the amount of attorneys' fees awarded by the court or through the administrative claims procedure, but in no event shall attorneys' fees exceed the agreed upon forty percent (40%).

If the provisions of this agreement for payment of attorneys' fees are in conflict with any court order, settlement agreement, provision of law or code of professional responsibility which dictates the amount of attorneys' fees that may be recovered, such court order, settlement agreement, provision of law or code of professional responsibility shall govern the recovery of attorneys' fees under this contract, but in no event shall attorneys' fees exceed the agreed upon forty percent (40%).

We understand the attorneys' fees will be calculated based on the gross amount of settlement, verdict or recovery, and the expenses which have been advanced will be deducted from the net proceeds payable to the client after deduction of the attorneys' fees.

## 4. ASSOCIATE COUNSEL

We specifically authorize the Attorneys to associate co-counsel if the Attorneys believe it advisable or necessary for the proper handling of our claim, and expressly authorize the Attorneys to divide any attorneys' fees that may eventually be earned with co-counsel so associated for the handling of our claim. We understand the amount of attorneys' fees which we pay will not be increased by the work of co counsel associated to assist with the handling of our claim, and such associated co-counsel will be paid by the Attorneys out of the attorneys' fees we pay to the Attorneys.

We agree that any attorney in these law firms or any attorney associated by the Attorneys is authorized to work on and try our case.

## 5. EXPENSES OF LITIGATION

Except as provided herein, we understand during the term of representation, the Attorneys will advance all litigation expenses incurred on our behalf in this action including, but not limited to: filing fees, service or process fees, medical record fees, court reporter expenses, investigation expenses, photographs and photo-reproduction expenses, and reasonable travel expenses, but those expenses will be deducted from our net recovery of any settlement or recovered proceeds.

In the event no recovery is made, we understand we owe the Attorneys nothing and we have no obligation to reimburse the Attorneys for expenses incurred in the litigation of our case.

In the event a settlement is made for less than a full resolution of the claim, we understand some of our settlement proceeds may be used to finance the remainder of our case against other defendants which have additional potential liability. We agree up to one-third of our portion of any partial settlement proceeds may be withheld as an advance for expenses incurred for prosecution of our claim against the remaining defendants.

## 6. DISBURSEMENTS OF PROCEEDS TO CLIENT

At the time of disbursement of any proceeds recovered on our behalf under the terms of this contract, we will be provided with a detailed closing statement reflecting the method by which attorneys' fees have been calculated and the expenses of litigation which are due to the Attorneys from the verdict or settlement proceeds.

Under some circumstances health insurers, workers' compensation carriers, or others who have paid benefits or provided services on our behalf may claim a right to recover a portion of the proceeds of any action brought on our behalf, and may place the Attorneys on notice of their claim. Except as may be required by law, the Attorneys will not agree to protect any claim of a subrogation carrier or other creditor without our consent.

### 7.  SETTLEMENT DISCUSSIONS/GROUP SETTLEMENT

We will have authority to accept or reject any final settlement amount after receiving the advice of the Attorneys. We understand this suit may be handled as a part of a larger number of cases which may be aggregated for settlement and/or trial preparation. We authorize the Attorneys to enter into aggregate settlement negotiations, and to disclose the amount of our proposed settlement, the nature of our damages, and other factors relevant to evaluation of settlement values to other clients whose cases are included in the aggregate of cases. We also understand certain expenses will be incurred in a joint effort to handle all cases. We authorize the Attorneys to prorate expenses among all the cases in the settlement group.

While we have the authority to accept or reject any offers of settlement, we agree we will not make a settlement nor offer of settlement without the consent of the Attorneys. We acknowledge our obligation to weigh fully the opinions and recommendations of the Attorneys concerning settlement and we will not unreasonably withhold consent to a settlement proposal which in the judgment of the Attorneys is fair and reasonable. If, in the opinion of the Attorneys, we unreasonably withhold consent to a fair and reasonable settlement, the Attorneys shall have the right to terminate this agreement and so receive payment for all unreimbursed expenses advanced on our behalf and prorated attorneys' fees as provided for in this agreement.

### 8.  NO GUARANTEE OF RECOVERY

We understand that Attorneys have made no guarantee or assurances of any kind regarding the likelihood of success of our claim, Attorneys cannot and do not warrant or guarantee the outcome of the Claims, and Attorneys have not represented to Client that Client will recover any damages, compensation or other funds.

### 9.  TERMINATION OF REPRESENTATION

Should we elect to terminate the Attorneys' representation prior to the full conclusion of the Attorneys' services under this contract, we understand and agree the Attorneys have an attorneys' lien and claim for expenses of litigation and unpaid attorneys' fees which will become due upon receipt by us or by any successor attorney of any proceeds for any remaining portion of our personal injury claim.

### 10.  DISPOSITION OF FILE

The file and any materials compiled by the Attorneys during the course of our representation will remain the property of the Attorneys upon the conclusion of the representation. The Attorneys will cooperate fully in furnishing a copy of relevant materials from the file to any successor attorney we may retain. We understand after our case is concluded, the Attorneys will maintain its file on this matter for at least six (6) years, but after that time, the Attorneys may dispose of the file in accordance with their document retention policy. Should we wish to obtain any information or material from the Attorneys' file, including personal items furnished by us to the Attorneys to assist in the handling of our case (such as documents and family photographs), such information or material will be returned to us upon our request, if the request is made within two (2) years after the conclusion of the representation.

### 11.  CLIENT ACKNOWLEDGMENT

We acknowledge we have been encouraged by the Attorneys to consult other counsel concerning the negotiation of this fee agreement and we have made sufficient investigation to determine this agreement is fair and reasonable and the result of an arm's length negotiation with the Attorneys. We certify and represent to the Attorneys that they have revoked all prior agreements with other attorneys, if any, and that they have not assigned, sold or transferred any interest in the Claims except to the extent Claims are assigned to Attorneys in this Agreement.

We understand that any verdict or settlement might adversely affect some forms of public assistance that we may receive, such as SSI, Medicaid, food stamps, subsidized housing, etc.  We understand that we are obligated to keep the Attorneys informed of any applications we make for such government benefits and/or changes in our eligibility status. Additionally we understand that we are obligated to keep Attorneys informed of the nature and extent of all bills, liens and related correspondence from any health care provider.

We understand that the Attorneys do not represent us for purposes of applying for or obtaining such benefits; rather, we understand that the purpose of this section is to inform us of the potential impact that verdict or settlement may have on our eligibility for present or future government benefits. *We understand that we must explore our options to preserve those benefits <u>before</u> we receive a verdict or settlement or our options to do so might be compromised.*

We understand that current Medicare regulations may require the Attorneys to compromise, settle or execute a release of Medicare's reimbursement claim prior to distributing any verdict or settlement proceeds.  We further understand that the Attorneys may be required to take steps to determine if such reimbursement claims exist even if we have received no such notice from Medicare prior to any verdict or settlement.

## 12. DISPUTE RESOLUTION

All disputes, controversies, claims or demands arising out of or relating to the interpretation, enforcement or alleged breach of this agreement shall be submitted to binding arbitration in Houston, Texas, under the auspices of the Judicial Arbitration & Mediation Services, Inc., 1010 Lamar, Suite 1350, Houston, Texas. The arbitration award shall be final, binding, and non-appealable. Judgment on any arbitration award may be entered by any court of competent jurisdiction. This includes any derivative claims, inclusive of legal negligence, breach of fiduciary duty, fraud, duress, misappropriation of funds, or any other claims against PROVOST✷UMPHREY LAW FIRM, L.L.P., WILLIAMS♣BAILEY LAW FIRM, L.L.P., WATTS LAW FIRM, L.L.P., RANIER, GAYLE & ELLIOT, L.L.C, and/or THE KAISER FIRM, L.L.P., its partners, associates, or other representatives, arising out of this contract.

## 13. SEVERABILITY

If any part of this agreement shall for any reason be found unenforceable, we agree that all other portions shall nevertheless remain valid and enforceable.

## 14. INTEGRATION

We acknowledge we have retained the PROVOST✷UMPHREY LAW FIRM, L.L.P., WILLIAMS♣BAILEY LAW FIRM, L.L.P., WATTS LAW FIRM, L.L.P., RANIER, GAYLE & ELLIOT, L.L.C, and/or THE KAISER FIRM, L.L.P., for the sole purposes expressly stated in this contract. We understand PROVOST✷UMPHREY LAW FIRM, L.L.P., WILLIAMS♣BAILEY LAW FIRM, L.L.P., WATTS LAW FIRM, L.L.P., RANIER, GAYLE & ELLIOT, L.L.C, and/or THE KAISER FIRM, L.L.P., its partners, associates or other representatives make no representations, express or implied, to perform any legal services or provide any legal opinions, on any matter not expressly addressed in this contract.  We agree that this Contract constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings, written or oral agreements between the parties respecting the subject matter within.  Further, any modification of this agreement will be of no effect unless written and signed by Client and attorney.

WE HAVE READ AND UNDERSTAND THIS CONTRACT AND AGREE.

Date: _____, 20_____.

Notice to Clients: The State Bar of Texas investigates and prosecutes professional misconduct. The State Bar's Office of General Counsel will provide you with information about how to file a complaint. Please call 1-800-932-1900 toll-free for more information.

CLIENT SIGNATURES:

_____

_____

Printed Name:

_____

S.S.N.:

_____

Printed Name:

_____

S.S.N.:

_____

ATTORNEY SIGNATURE:

_____

PROVOST ✷ UMPHREY LAW FIRM, L.L.P.

WILLIAMS♣ BAILEY LAW FIRM, L.L.P.

WATTS LAW FIRM, L.L.P.

RANIER, GAYLE & ELLIOT, L.L.C., and

THE KAISER FIRM, L.L.P.

8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 225-8667
(713) 225-0515 Fax
E-mail: info@vioxxgroup.com
http://www.vioxxgroup.com