UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| Lillie Mae Berry, et al. v. | * | JUDGE FALLON |
| Merck & Co., Inc., | * | |
| Civ.Action No. 2:05-cv-4553 | * | MAG. JUDGE KNOWLES |

* * * * * * * * * * * * * * * * * * * * * * * *

**<u>Memo in Support of Motion for Extension of Time to Submit Final PME Records</u>**

**NOW INTO COURT** come Plaintiffs, Lillie Mae Berry, Emily Becnel, Dorothy Dandridge, and Ruby Veal, who hereby Move this Honorable Court to grant them an extension of time to submit the final PME records required under Exhibit 1.3.1 of the settlement agreement for the reasons more fully set forth below.

**I.**

Brady Berry, III (representative of Lillie Mae Berry), Emily Becnel, Dorothy Dandridge, and Ruby Veal lived in areas that were severely impacted by Hurricane Katrina.  Accordingly, they sustained damage and were forced to evacuate and relocate.  Additionally, our office sustained damage.

**II.**

We were able to compile the necessary information in order to register these clients by the registration deadline, were able to locate and obtain the documentation necessary to enroll them by October 30, 2008.  At that time, the discovery and claims materials were forwarded to their attention.

### III.

Plaintiffs were in the process of completing the required forms when, on November 21, 2008, Plaintiff's counsel received a notice of deficiency stating that all Claims and PME records were to be submitted by November 30, 2008.

### IV.

As Plaintiff's counsel had not yet received the responses from Plaintiffs on November 21, 2008, Plaintiff's Counsel requested a 60 day extension of time in order to obtain the required records and documentation.

### V.

Plaintiffs were granted a 30 day extension, until December 30, 2008.

### VI.

By November 24, 2008 Plaintiff's Counsel obtained the claims forms and profile forms from Plaintiffs and requested medical records from all medical providers identified, as required under Exhibit 1.3.1 to the settlement agreement.

### VII.

The claims forms and profile forms were uploaded to the claims administrator through the VIOXX portal prior to December 30, 2008.

### VIII.

Since November 24, 2008, Plaintiff's counsel has been diligently attempting to locate the records. Those that have been received as of December 30, 2008 have been uploaded to the claims administrator through the use of the VIOXX portal.

## IX.

Some medical records have not been obtained.  Specifically:

**(A)** **As to Lillie Mae Berry:**

**1)** Medical records were requested from **Super D Drugs.**  On December 9, 2008, it was confirmed that the request had been received and forwarded to corporate headquarters.  On December `17, 2008, Regina with corporate headquarters advised that they did not have any records on Ms. Berry.  However, the McComb Mississippi store was a franchise and they may have independent computer records.  Tim, the pharmacist at the McComb Mississippi store, confirmed that they kept an independent system however, once a person has not filled a prescription with them for over three years, the computer purges information as inactive.  When this happens the information is retained in the computer in a database by prescription number but it is then only retrievable by number and no longer by a person's name.  Because Ms. Berry died in 2001, the system would have purged her name in October 2004.  Ms. Berry's surviving children do not know the prescription numbers for the medication that she took during her life.  All prescriptions that Ms. Berry had filled through out her life were filled at the McComb, Mississippi Super D Drug Store.  An affidavit to this effect has been requested from the Pharmacist as well as from Corporate Headquarters.

**2)** Ms. Berry was treated by **Dr. Terry Westbrook.**  Dr. Westbrook passed away.  The clinic where he practiced has all of his records in storage however they are not computerized.  On November 24, 2008, the records were requested.  On December 5, 2008, Stacey advised that Ms. Berry was not in their computer system at all.  Any records would be in storage and would have to be manually located and retrieved.  She advised that there was one person who dealt with medical records requests and that person only worked on Mondays.  On December 15, 2008 at 11:00 a.m. Stacy took a message for medical records as the medical records person had already gone for the day.  On December 22, 2008, at 10:00 a.m. Stacey advised that the medical records person had already gone for the day.  On December 29, 2008, Marquita, the medical records person advised that she had the request however she had not received the medical chart from storage.  She explained that the files in storage are difficult to locate because all of the doctor's records for all of the doctors go to a single location.  Therefore it is difficult to find one person's records.  She suggested that the office manager might have more information regarding

pulling the file.  On December 29, 2008, Natalie Moore advised that the records would likely be pulled on Friday.

**(B)  As to Emily Becnel:**

**1)** Records from the **Medical Center of Louisiana at New Orleans, Charity Hospital**, were requested on November 24, 2008.  On December 5, 2008, Joseph stated that the request had not been received.  The request was immediately refaxed and receipt was confirmed.  On December 9, 2008, Joseph stated that the request was being processed.  Because Charity Hospital's medical requests have only one telephone line, on December 12, 16, 17 and 18, a total of 36 phone calls were made of which 22 were busy and 14 rang for lengthy periods with no one answering.  On December 21, 2008, Keishaine, who is the only person who fills attorney requests for medical records, advised that she had been on vacation and that is why Joseph had been the person we were speaking to.  She further advised that they were a Third Party medical records copy company (iod) and that the records, to the extent that they survived Katrina, had to be located by the facility, taken from storage by the facility and then delivered to her in order for them to be copied.  On December 22, 2008, December 23, 2008 Keishaine advised that she had not received the records.  On December 24, 25 and 26, 2008 iod was closed.  On December 29, 2008 Keishaine advised that there were several requests for charts (including ours) that the facility stated that they had not received the request to pull the medical charts.  Accordingly, iod sent an updated list of all of the charts that they were missing.  She hopes that she will receive those charts by Friday.

**2)** Ms. Becnel was treated by **Dr. Bryant George** for a back surgery and follow up.  The records related to her surgery are contained within the Methodist Hospital Records that have been uploaded.  Dr. George had an office in Slidell and in New Orleans East.  Both were closed after Hurricane Katrina.  On November 24, 2008 a request was sent to Dr. George's home address.  No response has been received and the telephone number is unlisted.

**3)** Medical Records were requested from **Winn-Dixie Pharmacy** on November 24, 2008 for the location in Avondale, Louisiana and for a location on **Bundy Road** that closed after Hurricane Katrina.  Winn-Dixie has responded with the records from the Avondale location and these records have been uploaded to the Claims Administrator via the VIOXX Portal.  On December 30, 2008, Winn-Dixie responded that the records of store number 1417, located on Bundy Road in New Orleans East were completely destroyed as a result of Hurricane Katrina.  This letter has been uploaded to the Claims Administrator via the VIOXX Portal and an affidavit has been requested.

**(C)    As to Dorothy Dandridge:**

**1)** Records from the **Medical Center of Louisiana at New Orleans, Charity Hospital,** were requested on November 24, 2008. On December 5, 2008, Joseph stated that the request had not been received. The request was immediately refaxed and receipt was confirmed. On December 9, 2008, Joseph stated that the request was being processed. Because Charity Hospital's medical requests have only one telephone line, on December 12, 16, 17 and 18, a total of 36 phone calls were made of which 22 were busy and 14 rang for lengthy periods with no one answering. On December 21, 2008, Keishaine, who is the only person who fills attorney requests for medical records, advised that she had been on vacation and that is why Joseph had been the person we were speaking to. She further advised that they were a Third Party medical records copy company (iod) and that the records, to the extent that they survived Katrina, had to be located by the facility, taken from storage by the facility and then delivered to her in order for them to be copied. On December 22, 2008, December 23, 2008 Keishaine advised that she had not received the records. On December 24, 25 and 26, 2008 iod was closed. On December 29, 2008 Keishaine advised that there were several requests for charts (including ours) that the facility stated that they had not received the request to pull the medical charts. Accordingly, iod sent an updated list of all of the charts that they were missing. She hopes that she will receive those charts by Friday.

**(D)    As to Ruby Veal:**

**1)** Records from the **Medical Center of Louisiana at New Orleans, Charity Hospital,** were requested on November 24, 2008. On December 5, 2008, Joseph stated that the request had not been received. The request was immediately refaced and receipt was confirmed. On December 9, 2008, Joseph stated that the request was being processed. Because Charity Hospital's medical requests have only one telephone line, on December 12, 16, 17 and 18, a total of 36 phone calls were made of which 22 were busy and 14 rang for lengthy periods with no one answering. On December 21, 2008, Keishaine, who is the only person who fills attorney requests for medical records, advised that she had been on vacation and that is why Joseph had been the person we were speaking to. She further advised that they were a Third Party medical records copy company (iod) and that the records, to the extent that they survived Katrina, had to be located by the facility, taken from storage by the facility and then delivered to her in order for them to be copied. On December 22, 2008, December 23, 2008 Keishaine

        advised that she had not received the records.  On December 24, 25 and 26, 2008 iod was closed.  On December 29, 2008 Keishaine advised that there were several requests for charts (including ours) that the facility stated that they had not received the request to pull the medical charts.  Accordingly, iod sent an updated list of all of the charts that they were missing.  She hopes that she will receive those charts by Friday.

**2)**      Ms. Veal also treated at the **St. Bernard Clinic** in Chalmette, Louisiana.  This clinic was completely destroyed as a result of Hurricane Katrina.  The building has been demolished.  Neither the Louisiana Department of Health and Hospitals, nor the Louisiana Board of Medical Examiners has any documentation regarding the possible location of any surviving medical records.  It is believed that these records have been completely destroyed.  Dr. Thaddeus Temple, the doctor who treated Ms. Veal at the clinic has been located.  However he was not allowed to take any records from the clinic.  Accordingly, he has no independent records and does not have any knowledge regarding where any surviving records might be located.  An affidavit to this effect has been requested from Dr. Temple.

This delay should not negatively impact Merck, the settlement program or other claimants.  Accordingly, Plaintiffs respectfully request that their claims not be dismissed and that they be given an additional thirty (30) days in order to obtain the records and/or affidavits from Super D Drugs, Medical Center of Louisiana at New Orleans, Charity Hospital, Dr. Bryant George, Winn Dixie Pharmacy, Bundy Road, and the St. Bernard Clinic in so that they may fully comply with the required PME documentation set forth in Exhibit 1.3.1 of the Settlement Agreement.

                                                  RESPECTFULLY SUBMITTED,

                                                  */s/ Ron A. Austin*                                 .
                                                  **RON A. AUSTIN (#23630)**
                                                  **AUSTIN & ASSOCIATES, L.L.C.**
                                                  400 Manhattan Boulevard
                                                  Harvey, LA 70058
                                                  Telephone: (504) 227-8100
                                                  Telecopier: (504) 227-8122

**CERTIFICATION OF SERVICE**

      I hereby certify that on the 30th day of December, 2008 a copy of the foregoing Opposition to Dismissal was filed electronically with the Clerk of Court using the CM/ECF system. Notice was sent of this filing will be sent to: Phillip Wittmann Stone Pigman Walther Wittmann, LLC 546 Carondelet St. New Orleans, LA 70130 by operation of the court's electronic filing system.

      I further certify that there are no non-CM/ECF participants.

                                                    */s/ Ron A. Austin*       .
                                                    **RON A. AUSTIN (#23630)**