UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX®

PRODUCTS LIABILITY LITIGATION

--------------------------------------------------------------

THIS DOCUMENT RELATES TO:

**PTO 28 PLAINTIFFS LISTED IN
EXHIBITS A & B TO MERCK
MOTION TO DISMISS.**

MDL Docket No.  1657

SECTION L

Judge Eldon E. Fallon
Magistrate Judge Knowles

--------------------------------------------------------------

## PLAINTIFFS' OPPOSITION TO *THIRD* MOTION AND RULE OF DEFENDANT MERCK & CO., INC., TO DISMISS THEIR ACTIONS WITH PREJUDICE FOR FAILURE TO PROVIDE CASE-SPECIFIC EXPERT REPORTS UNDER PTO 28, AND IN SUPPORT OF THEIR CROSS-MOTIONS FOR AN EXTENSION OF TIME TO CURE SUCH DEFICIENCY, IF APPLICABLE, AND FOR RECUSAL

### INTRODUCTION

Defendant Merck & Co., Inc. ("Merck"), moves to dismiss the cases of the above-captioned plaintiffs whose actions were pending in MDL 1657 on November 9, 2007. Therefore, their actions are governed by this Court's Pre-Trial Order ("PTO") No. 28 entered that date.  Merck moves for dismissal with prejudice on the basis that PTO No. 28's requirement that the plaintiff provide a case-specific expert report by certain deadlines set forth in this Court's May 30, 2008 Order ("May 30 Order").  Without any individualized showing, Merck goes for the jugular based on the expert report only, while contending that all of these plaintiffs have been in willful noncompliance with PTO 28 for over a year and implies their substantial disclosures in this litigation should be ignored and dismissal ordered based on "any" failure to comply with PTO 28 discovery requirements.

In any event, certain of the plaintiffs targeted by Merck's motion have submitted

case-specific expert reports at the time of this opposition, and this Court should not enter dismissal against them or plaintiffs for whom Suggestions of Death have been filed and/or there are proceedings pending in Surrogate Court. With respect to the remaining PTO 28 plaintiffs listed in Exhibits A and B, it is respectfully submitted they show good cause why their cases should not be dismissed.

First, certain of these plaintiffs oppose the motion on the ground that they seek to prove emotional injury and damages under New York state substantive law, which does not require case-specific expert testimony to make out a prima facie case where ingestion of the drug is shown. In light of the same, PTO 28's expert disclosure requirement is not applicable to those claims. Moreover, these plaintiffs have provided Merck with pharmacy records and authorizations, which, when read in conjunction with their verified Plaintiff Profile Forms (PPF) should be deemed as meeting the *Lone Pine* purposes of PTO 28, namely, to show some evidence of the claim they are making against Merck.

Second, dismissal is far too drastic a sanction in light of the substantial disclosures made by these plaintiffs prior to and since November 9, 2007, and in light of the subsequent proceedings herein. The sanction of dismissal is unwarranted, where alternatives are not taken into consideration, nor has there been any showing made by Merck that there is willful disregard in light of the efforts of plaintiffs' counsel to confer on and seek a reasonable stay of the expert requirement pending disposition of the Agard, et al. motion, which was subsequently denied in this Court's recent decision filed on December 11, 2008, two weeks after the instant motions to dismiss were filed.

The docket of these proceedings confirms PTO 28 was entered against non-settling plaintiffs with no motion or adversarial hearing, unlike the mass tort which was at a similar stage in litigation in In re: Rezulin Products Liab. Litig. (MDL No. 1348), 2005 WL 1105067, *1 (S.D.N.Y.) ("The lead defendants have moved for an order requiring plaintiffs to produce

case-specific expert reports.")   In contrast, here, the contemporaneous MSA, which would significantly reduce the Court's docket of cases, became the only discernible predicate for the *Lone Pine* PTOs 28 and 29.   It is inequitable in the first instance that the instant motion indicates plaintiffs now must fully comply or risk dismissal, apparently protected only by extensions of time for good cause shown.  Plaintiffs submit that, if PTO 28 is a *Lone Pine* order with respect to the provisions therein requiring only the non-settling plaintiffs to retain and pay the full freight for a retained case-specific expert report without ordering Merck to pay or contribute to the cost of the same, or provide contradictory expert reports under similar tight deadlines considering the volume of cases, there is good cause not dismiss these cases based on that order where, as here, Merck's counsel has subsequently indicated they are capable of evaluating these cases, and deem them eligible, in order to encourage them to enter the settlement which its gate criteria,  and have even suggested potential recovery of high values for undisclosed plaintiffs' claims, evincing they have "some kind of evidence" of the injuries and ingestion without a case-specific expert report required outside the usual discovery and summary judgment rules.

Certain of the remaining plaintiffs cross-move for an extension of time to provide a case-specific expert report within a reasonable period of time after this Court resolves the issues they raise in this opposition to Merck's motion to dismiss now that such reports have been provided for many of the other plaintiffs.   They submit there is good cause to believe they should be provided a reasonable opportunity by extended deadlines in PTO 28 based on their prior disclosures, and because this Court's disposition of the prior plaintiffs' motion to amend PTO 28 was only recently decided two weeks after Merck filed the motion to dismiss.

Plaintiffs also seek to preserve and not waive for appeal the arguments that the Master Settlement Agreement (MSA) should not have been consummated without adherence to Rule 23; that PTO 30 improperly prevents plaintiffs from propounding any discovery to

Merck or the negotiating committee with regard to the negotiations leading up to the MSA.
Finally, they cross-move for recusal in light of this Court's refusal to resign from its position
as Chief Administrator of the MSA on the ground recusal is warranted pursuant to 28 U.S.C.
§§455 and 144.

These plaintiffs now turn to their opposing statement of facts.

## STATEMENT OF FACTS

"On November 9, 2007, the parties announced the establishment of a Vioxx
Resolution Program that encompasses all claims that allege a heart attack, sudden cardic
death, or stroke." *In re Vioxx Prods. Liab. Litig.*, 557 F.Supp.2d 741,742 (E.D. La. 2008).
"Also on that date, the Court entered two pre-trial orders requiring Plaintiffs to provide
certain information to Merck by certain deadlines." *Id.*

That these orders apply only to nonsettling plaintiffs appears on the face of each.  By
its terms, PTO 28 applies "unless the claim is eligible for, and has been submitted to, the
Resolution Program." *Id.,* at p.1.  The MDL 1657 docket confirms that, prior to the entry of
PTOs 28 through 30, defendant Merck had not filed any Rule 37 motion to compel disclosure
or based on spoliation of evidence as to medical records.  However, PTO 28 imposes extensive
and costly preservation and discovery requirements on the non-settling plaintiffs only.  They
place no preservation or discovery requirements or costs on Merck, whom the same are
intended to benefit.  Nor do these orders recite any factual rationale for the requirements
that plaintiffs produce certifications from third parties not before the court and affidavits
from plaintiffs making assertions about third-party custodial records that are outside their
personal knowledge.  PTO 28 mandates that Merck "shall" provide a notice for any failure to
meet the stated deadlines, and "shall" file motion for an order to show cause why a plaintiff's
case should not be dismissed with prejudice for failure to "cure the deficiency" within the

stated deadlines.

PTO 28 clearly imposed new "discovery" requirements on plaintiffs.  It also imposed stringent "preservation" requirements that were not previously in place, and imposed registration deadlines on plaintiffs that were required in order to opt in/out of the MSA settlement program, which these plaintiffs complied with.  *See* excerpt of MSA registration requirements annexed hereto as **Exhibit A.**    This process required listing of all of counsel's Vioxx clients, whether in state or federal court and providing a myriad of information as to their claims and legal actions.

January 15, 2008, was the original opt in/out deadline, and after that date, the plaintiffs remaining on the docket in MDL 1657 are clearly non-settling plaintiffs only. However, the docket confirms orders have been issued that affect only the parties to the private agreement.  For example, on January 14, 2008, this Court entered an Order formally appointing a Special Master "pursuant to the terms of the Settlement Agreement, the inherent authority of the Court and any applicable Federal Rule of Civil Procedure."   1/14/08 Order (Document 13228), at p. 1.

On March 13, 2008, in compliance with the preservation requirements under PTO 28, plaintiffs' counsel submitted forty-five (45) Statements of Notices Sent to pharmacies and medical providers for the plaintiffs whose cases were pending in MDL 1657 at that time.  *See* Transcription Receipts annexed hereto as **Exhibit B**.

On May 22, 2008, after extending the deadline for producing case-specific expert reports, this Court heard arguments by the Oldfather firm on its  motion to vacate and modify PTO 28 with regard to the case-specific expert report requirement.  On May 30, 2008, this Court filed a decision denying the motion and setting new deadlines of July 1 and August 1, 2008.  *See* May 30 Order, reported at *In re Vioxx Prods. Liab. Litig., supra,* 557 F.Supp.2d 741 (E.D.La. 2008).

On June 30, 2008, prior to the above deadlines, plaintiffs' counsel filed a motion under the caption <u>Agard, et al.</u>, seeking, among other things, an order amending PTO 28 with respect to the requirement to file a case-specific expert report, and a stay.  *See* Docket, Documents 14938, 14938-2 and 16803.

On August 12, 2008, in a Transfer Order, the Judicial Panel on Multi-District Litigation denied  motions in eight (8) actions to remand to state court, ruling that: "Plaintiffs can present their motions for remand to state court to the transferee judge." *See* 8/12/08 Panel's Transfer Order, as stamped by the Clerk of the Eastern District of Louisiana on 8/21/08,  annexed hereto as **Exhibit C**, at p. 1.  On August 21, 2008, the Clerk of this Court, upon completed transfer to MDL 1657, docketed these actions and assigned docket numbers for this Court. *Id.*  Two other cases had been transferred to MDL 1657 in July 2008, while the aforesaid motion was pending.

On September 22, 2008, plaintiffs' counsel submitted a reply memorandum in the pending <u>Agard</u> motion proceedings that attached as exhibits two case specific expert reports for two Benjamin plaintiffs that were prepared by Steven A. Rich, M.D., in compliance with this requirement of PTO 28.  *See* reports annexed in **Exhibit D**./[*1] Annexed to each report is a statement for services that indicates this expert charged $1,500.00 and $1,000.00, respectively, and his rate is $500.00 per hour.  PTOs 28 and 28 clearly require the plaintiffs to retain an expert since they cite Fed.R.Civ.Pr. 26(a)(2), but do not require Merck to provide contradictory reports as required by that Ri;e 26(a)(2)(B).  Plaintiffs submit Merck cannot dispute that the aforesaid expert's hourly rate or time are the kind of expense each plaintiff must incur to comply with the *Lone Pine* order.

---

[1*]/The two plaintiffs, Agard and Bozich, are not named in the motion to dismiss. However, the cost of producing this "brief" expert report are mentioned as significant facts in support of plaintiffs' arguments that good cause is shown not to enter dismissals for failure to comply with the case-specific expert report requirement of PTOs 28 and 29.

On October 8, 2008, in an "Order Scheduling Conferences", filed under the MDL 1657 caption, this Court noted that the "final deadline to enroll in the Vioxx settlement program [to] October 30, 2008." 10/8/08 Order (Document 16419), at p.1 ("October 8 Order"). The Order states: "The Court will hold three Case Management Conferences to ensure that plaintiffs who are eligible for the Vioxx settlement program but who have not enrolled in the program, by, among other things, submitting a release to the Claims Administrator, have all necessary information available to them so that they can make an informed choice." *Id.* All of the plaintiffs represented by the Benjamin firm were directed to appear in Manhattan in person, along with their counsel, for "Conference B" "unless it would be a physical or economic hardship for that Plaintiff to attend the conference in person." *Id.,* and Exhibit B thereto.

On October 16, 2008, the Benjamin plaintiffs filed an expedited motion to reconsider and vacate the October 8 scheduling order compelling their appearance. (*See* Docket, Documents 16419 and 16459.) Thereafter, counsel notified the Court of the clients who could not attend due to financial hardship or disability. (*Id.,* Document 16458.)

On October 21, 2008, the mandated "Case Management Conference" occurred in Manhattan with the MSA Special Master Patrick Juneau present in person and this Court present by live video. Attendees were advised that the Special Master and settlement attorneys Brown Greer were present to sit down with individual counsel and plaintiffs to give them an idea of what they would get if they opted to enter the settlement program after this Court reiterated the statements in PTOs 28 and 29 to ensure the plaintiffs had that information before expiration of the extended October 30 opt-in date,.

On October 22, 2008, Merck's attorney Douglas R. Marvin of Williams & Connolly LLP, e-mailed a letter to plaintiffs' counsel which confirms the "Case Management Conference" had been convened so that this Court could "ensure that the parties understood

the settlement process," and advising, *inter alia,* that:

> [W]e have reviewed the records for some of your clients and have found that
> they would be eligible for payments in substantial amounts.  For example, in
> one instance, our records reflect that one client would be entitled to
> approximately 240 points or about $450,000, assuming documents are
> submitted to show use that is consistent with the statements made in the
> Plaintiff Profile Form.  Another would receive about $220,000.00, assuming
> the necessary documentation to meet the Gate Criteria.  Of course, these
> amounts would be available only if these clients were to enter the settlement
> program before the deadline.  There is no program of any kind for claims
> outside the program.

*See* **Exhibit E**, at pp. 1-2.

On the same day, October 22, 2008, Merck's attorney M. Elaine Horn sent two

deficiency notice letters to plaintiffs' counsel citing PTO 28¶II(D).  *See* Letters annexed in

**Exhibit F**.  One letter states: "This letter only addresses your missing expert report.  If we

determine that the other materials you have submitted are materially deficient and/or that

other required materials are missing, those deficiencies will be identified in a separate letter.

*See* Ex. F#1, at p. 2 n.1.  The letter acknowledges that "you have submitted some materials

relating to the discovery requirements of Section II of PTO 28...." *Id.,* at p. 2.

The other October 22 "separate" letter from attorney Horn contradicts the first letter

in that it states, "We have not received any materials from you relating to the discovery

requirements of Section II of PTO 28."  *See* Ex. F#2, at p. 1.  It goes on to state: "If *any*

failure to comply with PTO 28 is not cured, Merck will file a Motion . . . as specified in

Section II.D. of the Order." *Id.,* at pp. 1-2.

On or about October 24, 2008, Merck's counsel forwarded a set of settlement releases

and stipulations, as well as a list of the plaintiffs represented by the Benjamin firm setting

forth  "VCN" numbers next to their names and an "Eligibility Status" for each that states

"Merck Deems Eligible."  *See* **Exhibit G.**

On October 27, 2008, plaintiff's counsel faxed a letter to attorney Horn asking to

"meet and confer" on his request that Merck "agree to hold off making any motions until such time as there are rulings on both the Agard and Oakley motions, or at minimum, until the Agard motion is decided." *See* **Exhibit H.**  Horn responded that Merck would file motions after November 21, and plaintiff's counsel replied that he "must interpret the same as a refusal to provide an extension of time as requested..." and indicating he would seek a conference with this Court.  *See* October 28 and October 29 Letters, respectively,  annexed in **Exhibit I.**

On November 5, 2008, plaintiff's counsel submitted "a request for a pre-motion conference for the purpose of staying further motions by Merck for noncompliance with PTO 28...."  *See* **Exhibit J**, at p. 1.

On November 13, 2008, Merck's counsel responded to the request in a letter to this Court stating, *inter alia*, that, "Pending the Court's ruling on the *Agard* motion, compliance with PTO 28 should not be stayed."  *See* **Exhibit K**, at p. 2.  He states PTO 28 allows compliance with the order to be made even after the motion to dismiss is filed. *Id.*

On November 26, 2008, while plaintiffs' counsel's request for a pre-motion conference was pending before this Court,/[2] Merck filed the instant "*Third* Motion, Rule and Incorporated Memorandum to Show Cause" (hereafter "Merck Motion"),/[3] in which it seeks an order of this Court dismissing with prejudice the complaints of sixty-one  plaintiffs represented by undersigned counsel Ronald Benjamin ("Benjamin plaintiffs") for "failure to provide a case-specific expert report as required by Pre-Trial Order No. 28 ("PTO 28")." *Id.*, at p. 1.

---

[2]*/Plaintiff's counsel is not aware that the request for a pre-motion conference was ruled on, but believes the same should be considered on the issue of good cause.

[3]*/The record should be clear that, although this is labeled as Merkc's "third" motion, it is the <u>first</u> and only motion against the above-captioned plaintiffs.

On December 1, 2008, this Court issued the instant Order to Show Cause, and set December 31, 2008, for plaintiffs' opposition.  (Document 17108.)

On December 11, 2008, two weeks after the motion was filed, this Court's Decision dated December 10 was filed in <u>Agard, et al.</u>, and denied in its entirety their motion to amend  PTO 28 and for other relief.

Plaintiffs herein now turn to their arguments.

**ARGUMENT**

**I.**

**<u>DISMISSAL SHOULD NOT BE GRANTED AS TO<br>PLAINTIFFS WHO HAVE PROVIDED<br>CASE-SPECIFIC EXPERT REPORTS.</u>**

In light of this Court's December 10 Decision, case-specific expert reports have been provided to Merck in compliance with PTO 28 for the following Post-11-09 plaintiffs listed in Exhibit A:  (1) Scott Berthel, (2) Matthew Cavallo, (3) Richard F. Core, (4) Marjorie Curtis, (5) James Demoski, (6) Edward Henderson, (7) Kristina Hia, (8) Mary Kurtz, (9) Wilson Lord, (10) Ann M. Mannino, (11) Arthur Pratt, (12) Maurice Hoyt, and (13) Viola Santacrose.

The plaintiffs respectfully submit that the same provides good cause not to dismiss their cases.

**II.**

**<u>DISMISSAL SHOULD BE DENIED AS TO PLAINTIFFS<br>FOR WHOM SUGGESTIONS OF DEATH HAVE<br>BEEN FILED AND/OR THERE ARE ONGOING<br>PROCEEDINGS IN SURROGATE COURT</u>**

Four PTO 28 plaintiffs on Exhibits A and B -- Marjorie Connolly, Ronald O'Connor, Sheila Smith and William Patrick - - have died since they commenced the litigation and after their cases were transferred to MDL 1657.  Suggestions of Death have been filed with this

Court.   A motion to substitute the personal representative of Ms. Connolly's estate was filed July 30, 2008, (Document No. 15447), and remains pending before this Court. A Suggestion of Death was filed for Ms. Smith on May 1, 2008, and amended on December 30, 2008 (*see* Document 17568), and a petition has been filed in New York Surrogate Court for the issuance of limited letters to prosecute this action. A Suggestion of Death for Mr. Patrick, who died August 1, 2008, was filed in this Court on December 30 (Document 17569), and one was filed for Mr. O'Connor, who died July 2, 2008, was filed December 31 (Document 17571).

Moreover, our records confirm that, prior to their deaths,  PPFs and authorizations were executed by these plaintiffs personally and provided to Merck's counsel.  *See* 7/7/06 LexisNexis Transaction Receipts, annexed hereto as **Exhibit L.**   It is respectfully submitted dismissals should not be granted in these cases of deceased plaintiffs at this time, and instead should be held in abeyance or allowed extensions of time to comply after the prerequisites of estate proceedings and the grant of motions to substitute by this Court.

## III.

## DISMISSALS ARE NOT WARRANTED AS TO THE PTO 28 PLAINTIFFS BASED ON GOOD CAUSE SHOWN.

This Court has ruled that PTO 28 is designed to "strike a balance between efficiency and equity." *In re Vioxx Prods. Liab. Litig.*, 557 F.Supp.2d 741,743-44 (E.D. La. 2008). Plaintiffs' statement of fact and exhibits evince a number of grounds on which this Court should find they show good cause why their cases should not be dismissed for failure to provide case-specific expert reports under PTO 28, and extensions of time to comply are appropriate.

Plaintiffs discuss below the further matters and arguments they submit support finding good cause under the facts and circumstances applicable hereto.

**A.     The Toxicity of Vioxx Has Already Been Proven in This
Litigation and, Thus, Plaintiffs Complaining of Emotional
Distress Damages under New York State Substantive Law on
Tort Are Required to Show Ingestion, but Not to Make A
Further Showing by Retained Expert Testimony.**

This Court has already engaged in a choice of law analysis and concluded the

substantive law of each plaintiff's jurisdiction must be applied to his or her respective claims.

In re Vioxx Prods. Liab. Litig., 239 F.R.D. 450, 456 (E.D. La. 2006).  This Court has further

recognized that in some of the claims pending before it plaintiffs seek compensatory damages

for "emotional and other intangible injuries." Id., at 462.

New York is one of the jurisdictions which recognizes claims for the negligent

infliction of emotional distress even though no physical injury occurred.   Kennedy v.

McKesson Co., 58 NY 2d 500, 504, 462 NYS 2d 421, 448 NE 2d 1332.   Plaintiffs submit that

not requiring expert disclosure on emotional distress sustained by plaintiffs under the New

York law is mirrored by the federal rules to the extent that no written reports are required

for treating physicians to present opinions on causation.   Hamburger v. State Farm Mutual

Auto Ins. Co., 36 F.3dd 875, 882 (5th Cir. 2004).   Rule 26(a)(2)(B) relates to a retained or

employed experts, and places no corresponding duty on Merck despite the Court's rulings on

the maturity of this litigation and the obvious reduction of the cases to be managed.

In turning to the case specific expert disclosure portion of PTO 28, the Court

concluded in its December 10 Decision that the argument "under scrutiny... amounts to little

more than a thinly–veiled motion to vacate the order."   Id., at p. 9.  The Court, as well as

Merck, fail to set forth any reasonable explanation as to why, when information has been

provided as to both ingestion and nature of the injury as well as time of onset, anything

further is required outside the normal course of discovery and motions practice since the

Daubert hearings adequately demonstrated the cardiotoxicity of Vioxx.  Moreover, all of

these plaintiffs sustained the emotional distress of being exposed to a toxic substance, as confirmed by their verified PPFs and medical/pharmacy records,  and since existing state law does not require case specific expert disclosure to support these claims, the requirement in PTO 28 for case specific expert disclosure should not result in dismissal with prejudice under any circumstances.

**B.   Dismissal Is Not Warranted Inasmuch as Plaintiffs Are in Substantial Compliance With the Discovery Requirements of PTO 28, and Less-Than-Full Compliance As to the Expert Report in PTO 28 Is Not Willful and Does Not Meet the Standards for Dismissal with Prejudice.**

Merck divides the 61 plaintiffs targeted for dismissal into two groups. It alleges those on Exhibit A "have not provided *any* of the discovery materials required under PTO 28 including the case specific expert report." Merck's Motion, at p.2, n.3 [emphasis in original]. According to Merck, the Exhibit B plaintiffs "have provided at least one of the items set forth in the discovery requirements of PTO 28, but have not provided the required case specific expert report." *Id.*

It is respectfully submitted Merck's aforesaid allegations actually support the plaintiffs' opposition in that Merck suggests plaintiffs are all in complete or substantial default (an allegation which is patently untrue), in order to justify the imposition of the harshest sanction available, namely, not-on-the-merits dismissal with prejudice.  Merck is overstating its case by portraying the plaintiffs in Exhibits A and B as intentionally recalcitrant in providing the required discovery, and that their conduct somehow makes it impossible for Merck or the Court to proceed, when the evidence is to the contrary and was to the contrary on and since November 9, 2007.

Merck is fully aware that these plaintiffs were at various stages of providing disclosure to Merck, including the Plaintiff Profile Form ("PPF") and multiple authorizations

for the release of pharmacy and medical records, as well as copies of records and reproduction on CD disks. *See, e.g.,* Cover letters to Merck's counsel and LexisNexis Transaction Receipts regarding these materials and plaintiffs' answers to interrogatories, annexed in **Exhibit M**. These documents show that the plaintiffs provided substantial disclosures more than one year ago and since November 9th. In any event, plaintiffs submit this Court ruled out a construction of PTO 28 that would require them to provide duplicative or unnecessary disclosures of the same material previously and adequately provided to Merck's counsel. In that regard, it is only necessary to note that PTO 28 expressly provides:

> The Plaintiff need not re-submit a Plaintiff Profile Form if one has already been submitted with respect to his or her claim.

*Id.,* p. 4, Section II(D). Vioxx was pulled off the market on September 30, 2004, which strongly suggests no additional pharmacy records will be disclosed as to Merck's liability. Moreover, Merck has made no individualized showing of the need for supplemental or additional authorizations after of November 9, 2007. For example, the same are certainly not required for Sheila Smith who died in June 2007, Richard Core and Ronald O'Connor in July 2007, and Marjorie Connolly in September 2007, given their deaths occurred during the course of litigation and prior to the entry of PTO 28.

It is significant that Merck takes the broadbrush approach of asserting all plaintiffs have not fully complied with PTO 28 or provided required discovery materials without any individualized showing, and apparently suggest that dismissal is warranted for willful disregard in general or because they are represented by Benjamin. Plaintiffs submit that PTO 28 expressly conditions Merck's right to send the deficiency notice to "Plaintiffs who fail to fully comply with the requirements of this Order...." *Id.,* at Section II(D). However, PTO 28 clearly does not state that dismissal is automatic dismissal for any failure to comply, inasmuch as that fate is only expressly imposed for: "*Any failure to respond to the Motion*

within the required period of time shall lead to dismissal of the claim with prejudice. . . ." *Id.*
[emphasis added].   No similar automatic dismissal is provided in PTO 28's terms, and
should not be read into the order by implication.

Thus, PTO 28 adopts the federal rules and does not appear to allow a non-
individualized show cause motion by Merck or automatic dismissal for "any" failure, in that
the order indicates the motion must be against each plaintiff since it refers to, "If Plaintiff
fails to cure the deficiency".   *Id.*   Despite the fact that Merck concedes partially compliance
by all on Exhibit B (and should as to PTO 28 plaintiffs in Exhibit A), this Court should not
place an imprimatur on its contention that any "deficiency" results in a sudden-death
dismissal, and its attorneys can, before filing a motion, simply turn their backs on any
request of plaintiffs' counsel to meet and confer or narrow the contested discovery.

That an individualized notice and showing should be required is illustrated by
plaintiffs Marjorie Connolly and Sheila Smith, in reference to whom Merck was already
served with the Suggestion of Death well in advance of bringing on the motion.  Plaintiff
William Patrick died August 1, 2008, the date his case-specific expert disclosure would have
been due, so there was no real opportunity to cure the deficiency prior to obtaining letters of
administration, or to avoid a motion through meet-and-confer as Benjamin requested.

It is also respectfully submitted PTOs 28 and 29 do not take into consideration those
New York state law plaintiffs whose PPFs identify either bodily or no bodily injury which
only entitles them to prove emotional distress damages based on ingestion, or the fact that
no case-specific expert report is legally required to prove such intangible injuries, or that
the plaintiffs  provided pharmacy and medical records showing ingestion.  Indeed, Merck
reads PTO 28 in overbroad and inequitable terms that entitle it to dismissal where there is
either untimely or less-than-full compliance by serving a group deficiency letter and motion
with no individualized showing at all.  This approach should be flatly rejected.  Merck's

further attempt to back-door other alleged discovery deficiencies into the equation to bolster the likelihood of dismissal should likewise be rejected.

Here, Merck unabashedly seeks dismissal with prejudice by construing PTO 28 as authorizing a Rule 37 sanction or a Rule 41 involuntary dismissal for "any" untimely failure to fully comply with the discovery requirements. It does so despite having represented that there are Benjamin plaintiffs deemed conditionally eligible for a recovery in the settlement program. This is either a reckless representation, or Merck's counsel must have some basis for the October 21 conference. In light of these events, this Court should not adopt that kind of form-over-substance view of the consequences of "any" failure to "fully" comply with PTO 28. Indeed, the Fifth Circuit has made clear that:

> [A] dismissal with prejudice would only be affirmed upon a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, and (b) where lesser sanctions would not serve the best interests of justice. . . . We also noted the significance in our decisions of the presence of certain "aggravating factors", such as (1) the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, (2) the degree of actual prejudice to the defendant, and (3) whether the delay was the result of intentional conduct.

Morris v. Ocean Systems, Inc., 730 F.2d 248, 252 (5ᵗʰ Cir. 1984).

In the case at bar, among other things, plaintiffs' counsel sought a stay while the *Agard* motion was pending, the outcome of which might have led to revising the case-specific expert report requirement. A stay under those circumstances is clearly reasonable conduct. *See, e.g.,* Magistrate Judge Knowles' recent rulings in Dresser v. Meba Medical & Benefits Plan, 2008 WL 2705584, *2 (E.D.La.). Moreover, plaintiffs submit, *Lone Pine* orders are not written in stone, nor do they require a motion to vacate. *See, e.g.,* Baker v. Chevron USA, Inc.,, 2006 WL 2251821 (S.D. Ohio), in which the district court found the magistrate's decision to revise a *Lone Pine* order was reasonable and promoted efficiency in litigation. *Id.*, at *3. Nor, plaintiffs submit, should such orders function as a substitute for

summary judgment procedure that does not follow Rule 56(c) principles.  *See discussion in*

Simeone v. Girard City Bd of Educ., 171 Ohio App.3d 633, 644-45,  872 N.E.2d 344 (Ct.App.

11th Dist. Ohio 2007).   This is even more applicable here since, at the October 21 Case

Management Conference in Manhattan, Merck's counsel and the Special Master indicated

they were prepared to discuss each plaintiff's case and advise them about the potential

recovery under the settlement, and later advised plaintiffs' counsel in a letter that two of

his cases, pending confirming records, were worth $450,000 and $220,000, respectively, on

the settlement grid.   Clearly, then, Merck and its counsel already have the kind of evidence

they need, for at least most of these plaintiffs, that obviates the need for the case-specific

expert report envisioned by PTO 28.   This would also indicate that it would be just and

equitable revision of the *Lone Pine* provisions of PTOs 28 and 29 if some or all of the cost of

the expert reports were borne by Merck given its counsel's representations that all of these

plaintiffs are deemed eligible for the MSA resolution program based on documentary

evidence without the expert report.

       While this Court has explained the rationale for the case-specific expert reports, that

rationale does not support the discovery obligations set forth in PTOs 28 and 29 that are

clearly not limited to what the plaintiffs should have known before commencing litigation,

and require affidavits from the plaintiffs attesting to the completeness and production of

third-party records and custodians as to which the plaintiffs have no personal knowledge,

but may be held to perjury sanctions if the third-party has not provided complete records.

Moreover, Merck has already been provided with authorizations, yet the record before this

Court contains no assertion by Merck, under oath or otherwise, that the authorizations

plaintiffs have already provided have resulted in its inability to obtain "complete" records

from the third-party pharmacies, health care providers, insurers and others.

       Plaintiffs will not reiterate the arguments the Court has rejected as "hollow."

December 10 Decision, at p.8.  It is, however, necessary to contrast the instant case where

Merck has been provided chapter and verse on ingestion and nature of the injury as well as

the applicable scientific evidence as it relates to cardiovascular injuries with circumstances

such as existed in <u>Acuna v. Brown & Root, Inc.</u>,200 F.3d 335 (5th Cir. 2000).  In <u>Acuna</u> the

court was facing some 1,600 plaintiff suing more than 100 defendants for injuries that

spanned over 40 years.  If, indeed, the Court is *sua sponte* interested in  some kind of basic

evidence of specific causation (which plaintiff contends constitutes an abuse of discretion on

the facts and circumstances of cases before the court), requiring plaintiffs to provide more

becomes a substitute for summary judgment procedure under the rules.  No trial date has

been set for any of these plaintiffs, nor has this Court indicated remand to the transferor

court for trial is imminent, so it is unlikely that the extensions of time sought herein will

result in substantive or across-the-board delay.

The arguments with regard to the expert disclosure required by PTOs 28 and 29

have already been advanced so the contentions herein are limited to show that plaintiffs

have fully complied with the same or are in substantial compliance sufficient to show cause

to defeat Merck's motion on this ground.


C.   <u>**Plaintiffs Reiterate the Previous Objections to PTO 28 Through 31 to
Preserve the Same and Amplify Arguments Regarding the Inequity and
Impropriety of the Preservation Requirements in PTO 28 and That Their
Issuance Contravenes Existing Law and Constitutes an Abuse of Discretion
to the Extent Such Automated Be Unilaterally Imposed by the Court
Without Notice to the Parties**</u>

Plaintiffs reiterate their contention this is not a private agreement and that it should

have been subject to rule 23; and a hamstrung from seeking any proof such as propounding

discovery to Merck or the PSC with regard to conduct leading up to the MSA, as well as the

submission of any proposed orders which plaintiffs believe resulted in the issuance of PTO's

28 through 31.

In turning to the discussion regarding the preservation requirements imposed by the court is only necessary to begin by stating that the extensive notices required by the court, even though there was a previous preservation order in existence that no one complained of with regard to lack of compliance, coupled with requiring plaintiffs to submit affirmations has to completeness of third-party custodial records as to which they have not personal knowledge denies plaintiff to process of law, and constitutes an abuse of discretion to the extent the same exist to issue such an order in the first instance sua sponte. Moreover, the duty to preserve is a matter of substantive state law which at minimum, would have required a minimal showing to secure such an order in the first instance, and then a determination of who should bear the costs of any preservation.

At the outset, plaintiff submits that while the discussion below regarding state law demonstrates that the same result would adhere under federal law. The issuance of the preservation order is "by no means automatic, even in a complex case. Smith v. Boeing Co., 2005 US Dist. LEXIS 36,890 (D. Kan. 2005). In this case there has already been a preservation order issued and in place for almost 3 years with out either party claiming any violations. (See PTO 1). In Capricorn Power Co., v. Siemans Westinghouse Power Corp. 220 FRD 429 (W.D. Pa. 2004), the court set forth the following three-factor test to determine whether or not to issue a preservation order:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

Id., at 433-34 [footnote omitted].

Assuming the preservation order in PTO 28 was on notice to plaintiffs, Merck nevertheless fails to meet the first two prongs, because there already is a preservation order in place (PTO 1) and Merck has made no showing that should give the Court any concern with regard to maintenance of the integrity of the evidence which is the subject matter of PTO 28.  More importantly perhaps, not even a passing glance was given to the financial burdens imposed upon the plaintiffs by the preservation and case-specific expert report requirements of PTOs 28 and 29.

In Capricorn Power, the court suggested the cost of preserving documents might be shifted to the party seeking preservation.  In Treppel v. Biovail Corp., 233 FRD 363 373 (S.D. NY 2006), the court indicated that if the party demanding preservation seeks information that is only  marginal relevance but costly to retain, rather than denying a preservation order altogether, it may condition the same upon the requesting party assuming responsibility for part or all of the expense.  Here, Merck does not issue subpoenas and plaintiffs are required to send notices to third-party custodians of medical records regardless of relevance, again under pain of dismissal with prejudice.   Even if one could argue the reason Vioxx was ingested in the first place has some relevance rather than the ingestion itself, it would be deemed sufficiently tangential to warrant imposition of the cost of preservation to the party seeking the same, namely Merck. Plaintiff now turns to state law on this issue.

State Farm Casualty & Fire Ins.Co., v Frigidaire, 146 FRD 160 (N.D.Ill. 1992), the court held that pre-suit duty to preserve was substantive and that as such state law governs. The court's analysis would hold with equal force to the post-suit duty to retain medical records under New York law alone should alleviate any concerns with regard to the preservation of medical records since the intentional destruction of those records is a misdemeanor punishable by up to a year in jail. See, e.g.,  Sections 175.05 and 215.40 of the

NY Penal Law.

New York requires long-term retention of records by all physicians which requires them to maintain adult patient records for at least 10 years. New York Educ. Law Section 6530 (32).   The failure to maintain those records for each patient constitutes professional misconduct.   *See* 8 NYCRR 29.2 (a) (3). The same is true for hospital records (10 NYCRR 405.10) and for nursing homes (8 NYCRR 415.22.)

Finally, although this Court stated that it serves as Chief Administrator of the MSA "in an administrative capacity that has no substantive effect on its management of the MDL proceedings" (Decision, p. 6), plaintiffs respectfully submit that pursuant to ___ of the MSA this Court has ultimate authority for substantive decisions with regard to whether or not plaintiffs are eligible for compensation under the MSA.   Although the Court may be able to sort out the different standards to be applied to the identical language in the MSA and in the definitions portion of PTO 28 excluding virtually all cardiovascular injuries except heart attacks, sudden cardiac death, and strokes, a layperson is hardly able to grasp such subtle distinctions and would harbor doubts about the Court's impartiality in adjudicating these issues. (*See, e.g.*, Agard Affidavit, Document 14938-3, at paras. 57-58.)

It is worth reiterating the premise that the goal of multidistrict litigation is to "promote the just and efficient conduct" of civil actions (28 USC 1407(a)), or the public's overriding interest in securing "the just, speedy and inexpensive determination of every action" (Fed.R. Civ. P. 1). Yet, when facing an ends-justifies-the-means requirements on non-settling plaintiffs which is the guts of PTOs 28 and 29, plaintiffs submit, these basic principles governing litigation in the federal courts and  MDL proceedings must be asserted to preserve the rights embodied therein.   Once a decision is clothed in the greater good, whether characterized as simply making bad arguments for good causes, or, as here, taking action without limitation under existing rules, there are simply no limits to achieving the

"ends," which here appears to favor dismissal of the claims of non-settling plaintiffs that are viable under the applicable state tort law and already supported by substantial disclosures.

**D.   The Dismissal Motion by Merck Should Be Heard by Another Judge and This Court Should Recuse In Light of Its Role As Chief Administrator of the MSA Program.**

Plaintiffs respectfully submit that the Court's refusal to resign his position as Chief Administrator of the MSA while presiding over MDL 1657 and this motions practice requires recusal pursuant to 28 USC §455, because of the previous arguments that the Court would be making substantive decisions about identical issues regarding exclusion of injuries under the MSA which would also be presented to the Court in its judicial capacity, which, at this juncture appear to include eliminating the emotional damage claims available under state law, despite this Court's prior decision on the issue.

Plaintiffs further submit that the *sua sponte* issuance of the definitional sections set forth in PTOs 28 and 29 which mirror the exclusions in the MSA but are being vigorously contested by litigants in MDL 1657 requires recusal pursuant to Section 455 (a) in that by adopting the exclusions in the MSA a reasonable person may question the Court's impartiality in connection with the adjudication of whether or not "lesser" cardiovascular injuries not included in the definitional portion of PTO 28 may be proven by existing scientific evidence.

Plaintiffs respectfully submit that it is difficult to view the October 21 Case Management Conference followed the next day by the October 22 notice to Benjamin plaintiffs as isolated and unrelated events, given the timing and presence in court of the MSA Special Master and settlement attorneys.   Plaintiffs believe it is not a stretch to conclude a reasonable plaintiff and counsel would be induced to have precisely the type of

doubt about the Court's partiality that should result in recusal, if for no other reason than to avoid the appearance of impropriety.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully submit that this Court should DENY the Merck's motion to dismiss their cases with prejudice on the ground of failure to provide a case-specific expert report under PTO 28, and should grant plaintiffs' cross-motions for extensions of time and the Court's recusal.

Respectfully submitted,

RONALD R. BENJAMIN Fed. No. 110131
LAW OFFICE OF RONALD R. BENJAMIN
126 Riverside Drive, P O. Box 607
Binghamton, New York 13902-0607
607/772-1442

Attorneys for Individual Plaintiffs
in Above-Captioned Actions