UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX®

MDL Docket No.  1657

PRODUCTS LIABILITY LITIGATION

SECTION L

----------------------------------------------------

Judge Eldon E. Fallon
Magistrate Judge Knowles

----------------------------------------------------

THIS DOCUMENT RELATES TO:

**Post 11-09 Plaintiffs in Exhibit A to Merck's Third Motion and Rule:**

| | |
|---|---|
| Adelberg, Carol | 2:08-cv-04173-EEF-DEK |
| Amendoeira, Antonio | 2:08-cv-04173-EEF-DEK |
| Alapeck, Geraldine. | 2:08-cv-03321-EEF-DEK & 2:08-cv-04172-EEF-DEK |
| Bilik, Helen | 2:08-cv-04172-EEF-DEK |
| Boone, Elizabeth | 2:08-cv-04172-EEF-DEK |
| Croft, Caroline | 2:08-cv-04172-EEF-DEK & 2:08-cv-04171-EEF-DEK |
| Mary Mahar | 2:08-cv-04172-EEF-DEK & 2:08-cv-03222-EEF-DEK |
| Santacrose, Dean | 2:08-cv-04172-EEF-DEK & 2:08-cv-04168-EEF-DEK |
| Simmons, Stasia. | 2:08-cv-04172-EEF-DEK |
| Cadwell, Samuella . | 2:08-cv-04167-EEF-DEK |
| Cadwell, Albert | 2:08-cv-04167-EEF-DEK |
| Corprew, Wilbert | 2:08-cv-04167-EEF-DEK |
| Plocek, Elsa | 2:08-cv-04167-EEF-DEK |
| Schaffer, Ronald | 2:08-cv-04167-EEF-DEK |
| Dufresne, Lori | 2:08-cv-03220-EEF-DEK |
| Pitcher, Kevin | 2:08-cv-04170-EEF-DEK |
| Raftis, Marianne | 2:08-cv-04166-EEF-DEK |
| Steinhoff, Margaret | 2:08-cv-04169-EEF-DEK |

**Transferred After November 9, 2007**

## POST 11-09 PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-MOTIONS FOR EXTENSIONS OF TIME TO CURE CASE-SPECIFIC EXPERT REPORT DEFICIENCY AND TO SEEK REMANDS TO STATE  COURT, AND FOR THIS COURT'S RECUSAL

## INTRODUCTION

Defendant Merck & Co., Inc. ("Merck"), moves to dismiss the cases of the above-captioned plaintiffs whose actions were pending in New York state court on November 9,

2007, and were later removed to federal court and eventually transferred to MDL 1657 in 2008. Therefore, their actions are governed by this Court's Pre-Trial Order ("PTO") No. 29 entered the same date. Merck's motion should be denied, in the first instance, because it does not cite PTO No. 29, but instead merely relies on PTO No. 28 to seek dismissal on the ground they have not served case specific expert reports.  This is of particular concern to these Post-11-09 plaintiffs, inasmuch as Merck appears to suggest they have been in willful noncompliance for over a year and that their disclosures in state court should be ignored.

In any event, certain  of the above-captioned Post-11-09 plaintiffs in Merck's Exhibit A have submitted case-specific expert reports, and this Court should not enter dismissal of other plaintiffs for whom Suggestions of Death have been filed. With respect to the remaining Post-11-09 plaintiffs listed in Exhibit A, it is respectfully submitted they show good cause why their cases should not be dismissed.   First, certain of these plaintiffs oppose the motion on the ground that they seek to prove emotional injury and damages under New York state substantive law, which does not require case-specific expert testimony to make out a prima facie case where ingestion of the drug is shown.   These plaintiffs have provided Merck with pharmacy records and authorizations, which, when read in conjunction with their verified Plaintiff Profile Forms (PPF) should be deemed as meeting the underlying purpose of the expert report provisions of PTOs 28 and 29, namely, to show some evidence of the claim they are making against Merck.

Second, even assuming this Court allows Merck's motion to be construed as citing PTO 29 for these Post 11-09 plaintiffs, dismissal is far too drastic a sanction in light of the substantial disclosures made by these plaintiffs prior to being transferred to MDL 1657 and in light of the proceedings herein.  The sanction of dismissal is unwarranted, where alternatives are not taken into consideration, nor any showing made by Merck that there is willful disregard and in light of the efforts of plaintiff's counsel to seek a reasonable stay of

-2-

this discovery requirement pending the disposition of the Agard, et al. motion, which was denied in this Court's recent decision filed on December 11, 2008, two weeks after the instant motions to dismiss were filed.

Since PTOs 28 and 29 was entered against non-settling plaintiffs with no motion or adversarial hearing, it is inequitable that they must either comply by the deadlines or risk immediate dismissal. Plaintiffs submit that, if PTOs 28 and 29 are *Lone Pine* orders with respect to the provisions therein requiring non-settling plaintiffs to retain and pay for a case-specific expert report, an additional expense, they are inequitable without ordering Merck to pay or contribute to the cost of the same, especially since its Merck's counsel has subsequently indicated they apparently have already evaluated these cases and have even placed values on and deemed them eligible for the settlement program.

Certain of the remaining Post-11-09 plaintiffs cross-move for an extension of time to provide a case-specific expert report within a reasonable period of time after this Court resolves the issues they raise in this opposition to Merck's motion to dismiss now that such reports have been provided for many of the other Benjamin plaintiffs. They submit there is good cause to believe they should be provided a reasonable opportunity to oppose PTO 29, entered before they were before this Court, and extend the deadlines in PTO 29 based on their prior disclosures in state court, and because this Court's disposition of the prior plaintiffs' motion to amend PTO 28 has only recently been decided.

Certain of these plaintiffs seek an extension of time to move to remand their cases to New York state court because they were improperly removed. They also seek to preserve for appeal the arguments made by *Agard, et al.,* that the Master Settlement Agreement (MSA) should not have been consummated without adherence to Rule 23; that PTO 30 improperly prevents plaintiffs from propounding any discovery to Merck or the negotiating committee with regard to the negotiations leading up to the MSA. Finally,

they cross-move for recusal in light of this Court's refusal to resign from its position as Chief Administrator of the MSA, recusal is warranted pursuant to 28 U.S.C. 455.

These Post-11-09 plaintiffs now turn to the factual matters supporting their opposition to dismissal with prejudice and their cross-motions.

## STATEMENT OF FACTS

"On November 9, 2007, the parties announced the establishment of a Vioxx Resolution Program that encompasses all claims that allege a heart attack, sudden cardic death, or stroke." *In re Vioxx Prods. Liab. Litig.*, 557 F.Supp.2d 741,742 (E.D. La. 2008). "Also on that date, the Court entered two pre-trial orders requiring Plaintiffs to provide certain information to Merck by certain deadlines." *Id.*   In addition to Pre-trial Order ("PTO") 28, the Court was referring to PTO 29. *Id.*, at 742, n.1.

That these orders apply only to nonsettling plaintiffs appears on the face of each. By its terms, PTO 28 applies "unless the claim is eligible for, and has been submitted to, the Resolution Program." *Id.*, at p.1.   PTO 29 applies to later filed (new) or transferred cases, which would obviously not have submitted an eligible claim to the Resolution Program since they are continuing to litigate.

The MDL 1657 docket confirms that, prior to the entry of PTOs 28 through 30, defendant Merck had not filed any Rule 37 motion to compel or based on spoliation of evidence as to medical records.  However, PTOs 28 and 29 impose extensive and costly preservation and discovery requirements only if a plaintiff did not submit a claim under the MSA.  The order place no preservation or discovery requirements or costs on Merck. Nor do these orders recite any factual rationale for the requirements that plaintiffs produce certifications from third parties not before the court and affidavits from plaintiffs making assertions about third-party custodial records that are outside their personal

knowledge.   These orders direct that Merck "shall" serve a notice and seek an order to show cause why a plaintiff's case should not be dismissed with prejudice for failure to meet the requirements within the stated deadlines.

PTOs 28 and 29 clearly impose new "discovery" and "preservation" requirements that were not previously in place, and imposed registration deadlines on plaintiffs that were required in order to opt in/out of the MSA settlement program, which these plaintiffs complied with. *See* excerpt of MSA registration requirements annexed hereto as **Exhibit A.**   This process required listing of all of counsel's Vioxx clients, whether in state or federal court and providing a myriad of information as to their claims and legal actions.

January 15, 2008, was the original opt in/out deadline, and after that date, the plaintiffs remaining on the docket in MDL 1657 were limited to non-settling plaintiffs. However, the docket confirms orders have been issued that affect only the parties to the private agreement.  For example, on January 14, 2008, this Court entered an Order formally appointing a Special Master "pursuant to the terms of the Settlement Agreement, the inherent authority of the Court and any applicable Federal Rule of Civil Procedure." 1/14/08 Order (Document 13228), at p. 1.

On March 13, 2008, in compliance with the preservation requirements under PTO 28, plaintiffs' counsel submitted forty-five (45) Statements of Notices Sent to pharmacies and medical providers for the plaintiffs whose cases were pending in MDL 1657 at that time. *See* Transcription Receipts annexed hereto as **Exhibit B.**

On May 22, 2008, after extending the deadline for producing case-specific expert reports, this Court heard arguments by the Oldfather firm on its  motion to vacate and modify PTO 28 with regard to the case-specific expert report requirement.  On May 30, 2008, this Court filed a decision denying the motion and setting new aphabetically applicable deadlines of July 1 and August 1, 2008. *See* May 30 Order, reported at *In re*

*Vioxx Prods. Liab. Litig., supra*, 557 F.Supp.2d 741.

On June 30, 2008, prior to the above deadlines, plaintiffs' counsel filed motions under the caption <u>Agard, et al.</u>, seeking, among other things, an order amending PTO 28 with respect to the requirement to file a case-specific expert report and a stay.  *See* Docket, Documents 14938, 14938-2 and 16803.

On August 12, 2008, the Judicial Panel on Multi-District Litigation denied  motions in eight (8) actions to remand to state court, ruling that: "Plaintiffs can present their motions for remand to state court to the transferee judge." *See* 8/12/08 Panel's Transfer Order, as stamped by the Clerk of the Eastern District of Louisiana on 8/21/08,  annexed hereto as **Exhibit C**, at p. 1.  On August 21, 2008, the Clerk of this Court, upon completed transfer to MDL 1657, docketed these actions and assigned docket numbers for this Court. *Id.*  A handful of other cases had been transferred to MDL 1657 in July 2008, while the aforesaid motion was pending.

On September 22, 2008, plaintiffs' counsel submitted a reply memorandum in the pending <u>Agard</u> motion proceedings that attached as exhibits two case specific expert reports for two Benjamin plaintiffs that were prepared by Steven A. Rich, M.D., in compliance with this requirement of PTO 28.  *See* reports annexed in **Exhibit D**./*[1] Annexed to each report is a statement for services that indicates this expert charged $1,500.00 and $1,000.00, respectively, and his rate is $500.00 per hour.  PTOs 28 and 28 clearly require the plaintiffs to retain an expert since they cite Fed.R.Civ.Pr. 26(a)(2), but do not require Merck to provide contradictory reports according to deadlines required by that rule.  Plaintiffs submit Merck cannot dispute that the aforesaid expert's hourly rate or

---

[1]*/The two plaintiffs, Agard and Bozich, are not named in the motion to dismiss. However, the cost of producing this "brief" expert report are mentioned as significant facts in support of plaintiffs' arguments that good cause is shown not to enter dismissals for failure to comply with the case-specific expert report requirement of PTOs 28 and 29.

time are the kind of expense each plaintiff must incur to comply with the *Lone Pine* order.

On October 8, 2008, in an "Order Scheduling Conferences", filed under the MDL 1657 caption, this Court noted that the "final deadline to enroll in the Vioxx settlement program [to] October 30, 2008." 10/8/08 Order (Document 16419), at p.1 ("October 8 Order").   The Order states: "The Court will hold three Case Management Conferences to ensure that plaintiffs who are eligible for the Vioxx settlement program but who have not enrolled in the program, by, among other things, submitting a release to the Claims Administrator, have all necessary information available to them so that they can make an informed choice." *Id.*   All of the plaintiffs represented by the Benjamin firm were directed to appear in Manhattan in person, along with their counsel, for "Conference B" "unless it would be a physical or economic hardship for that Plaintiff to attend the conference in person." *Id.,* and Exhibit B thereto.

On October 16, 2008, the Benjamin plaintiffs filed an expedited motion to reconsider and vacate the October 8 scheduling order compelling their appearance. (*See* Docket, Documents 16419 and 16459.)   Thereafter, counsel notified the Court of the clients who could not attend due to financial hardship or disability.   (*Id.,* Document 16458.)

On October 21, 2008, the mandated  "Case Management Conference" occurred in Manhattan with the MSA Special Master Patrick Juneau present in person and this Court present by live video.   Attendees were advised that the Special Master and settlement attorneys Brown Greer were present to sit down with individual counsel and plaintiffs to give them an idea of what they would get if they opted to enter the settlement program after this Court reiterated the statements in PTOs 28 and 29 to ensure the plaintiffs had that information before expiration of the extended October 30 opt-in date,.

On October 22, 2008, Merck's attorney Douglas R. Marvin of Williams & Connolly LLP, e-mailed a letter to plaintiffs' counsel which confirms the "Case Management

Conference" had been convened so that this Court could "ensure that the parties understood the settlement process," and advising, *inter alia*, that:

> [W]e have reviewed the records for some of your clients and have found that they would be eligible for payments in substantial amounts.  For example, in one instance, our records reflect that one client would be entitled to approximately 240 points or about $450,000, assuming documents are submitted to show use that is consistent with the statements made in the Plaintiff Profile Form.  Another would receive about $220,000.00, assuming the necessary documentation to meet the Gate Criteria.  Of course, these amounts would be available only if these clients were to enter the settlement program before the deadline.  There is no program of any kind for claims outside the program.

*See* **Exhibit E**, at pp. 1-2.   This letter makes clear Merck was aware the only "program" they were seeking to opt into is trial.

On the same day, October 22, 2008, Merck's attorney M. Elaine Horn sent two deficiency notice letters to plaintiffs' counsel citing PTO 28¶II(D).  *See* Letters annexed in **Exhibit F**.  One letter states: "This letter only addresses your missing expert report.  If we determine that the other materials you have submitted are materially deficient and/or that other required materials are missing, those deficiencies will be identified in a separate letter.  *See* Ex. F#1, at p. 2 n.1.  The letter acknowledges that "you have submitted some materials relating to the discovery requirements of Section II of PTO 28...."  *Id.,* at p. 2.

The other October 22 "separate" letter from attorney Horn contradicts the first letter in that it states, "We have not received any materials from you relating to the discovery requirements of Section II of PTO 28."  *See* Ex. F#2, at p. 1.  It goes on to state: "If *any* failure to comply with PTO 28 is not cured, Merck will file a Motion . . . as specified in Section II.D. of the Order."  *Id.,* at pp. 1-2.

On or about October 24, 2008, Merck's counsel forwarded a set of settlement releases and stipulations, as well as a list of the plaintiffs represented by the Benjamin firm setting forth  "VCN" numbers next to their names and an "Eligibility Status" for each

that states "**Merck Deems Eligible.**"  *See* **Exhibit G.**

On October 27, 2008, plaintiff's counsel faxed a letter to attorney Horn asking to "meet and confer" on his request that Merck "agree to hold off making any motions until such time as there are rulings on both the Agard and Oakley motions, or at minimum, until the Agard motion is decided." *See* **Exhibit H.**  Horn responded that Merck would file motions after November 21, and plaintiff's counsel replied that he "must interpret the same as a refusal to provide an extension of time as requested..." and indicating he would seek a conference with this Court.  *See* October 28 and October 29 Letters, respectively, annexed in **Exhibit I.**

On November 5, 2008, plaintiff's counsel submitted "a request for a pre-motion conference for the purpose of staying further motions by Merck for noncompliance with PTO 28...."  *See* **Exhibit J**, at p. 1.

On November 13, 2008, Merck's counsel responded to the request in a letter stating, *inter alia*, that, "Pending the Court's ruling on the *Agard* motion, compliance with PTO 28 should not be stayed." *See* **Exhibit K**, at p. 2.  He notes that compliance with the order could be made even after the motion to dismiss is filed.

On November 26, 2008, while the request for a pre-motion conference was pending before this Court,/[*2] Merck filed the instant "*Third* Motion, Rule and Incorporated Memorandum to Show Cause" (hereafter "Merck Motion"),/[*3] in which it seeks an order dismissing with prejudice the complaints of sixty-one  plaintiffs represented by undersigned counsel for "failure to provide a case-specific expert report as required by Pre-

---

[2]*/Plaintiff's counsel is not aware that the request for a pre-motion conference was ruled on, but believes the same should be considered on the issue of good cause.

[3]*/The record should be clear that, although this is labeled as Merkc's "third" motion, it is the <u>first</u> and only motion against the above-captioned plaintiffs.

Trial Order No. 28 ("PTO 28")." *Id.*, at p. 1.

On December 1, 2008, this Court issued the instant Order to Show Cause, and set December 31, 2008, for plaintiffs' opposition. (Document 17108.)

On December 11, 2008, two weeks after the motion was filed, this Court's Decision dated December 10 was filed in <u>Agard, et al.</u>, and denied in its entirety their motion to amend  PTO 28 and for other relief.

Plaintiffs herein now turn to their arguments.

## ARGUMENT

### I.

### PTO 28 DOES NOT APPLY TO THE  POST-11-09 TRANSFER CASES AND MERCK'S MOTION SHOULD BE DENIED.

Merck moves for dismissal with prejudice on the ground of "failure to provide a case-specific expert report who have failed to comply with PTO 28." Merck Motion, at p. 1. Merck's motion should be denied because PTO 28, on its face, does not apply to these Post 11-09 plaintiffs./*[4]  Instead, their cases are governed by PTO 29, which is not cited in either Merck's moving papers or the prerequisite deficiency notices sent on October 22. Merck's motion should be denied for failure to cite PTO 29.

This is not a merely technical argument to these plaintiffs, because Merck's motion suggests that they have been in noncompliance with PTO 28 for more than a "full calendar

_____

[4]*/Similarly, it is respectfully submitted, the Preservation Notice provisions in Section (I)(A) of PTO 29, which is applicable to them, do not expressly to apply to these Post 11-09 transferred plaintiffs, inasmuch as it is expressly limited to the following situations:

> Prior to filing a claim....  Within thirty (30) days of agreeing to accept a client for purposes of pursuing Vioxx litigation....  Plaintiffs proceeding *pro se* must notify the individuals or entities listed below in Paragraph 2 within thirty (30) days of filing an action.

*Id.,* Section (I)(A).

year", and merely brushes aside the facts that they have only been in MDL 1657 since mid-to late-summer 2008 and have made substantial disclosures in the prior state court proceedings in the Supreme Court for the County of New York before being transferred to this Court. Indeed, they are being accused of not meeting "any" of the discovery requirements, which representation bolsters the notion that dismissal with prejudice is appropriate for flagrant failure to comply, when that is not the case in fact.

## II.

### DISMISSAL SHOULD NOT BE GRANTED AS TO POST-11-09 PLAINTIFFS WHO HAVE PROVIDED CASE-SPECIFIC EXPERT REPORTS.

In light of this Court's December 10 Decision, even though PTO 28 does not apply to them, case-specific expert reports are being or will be provided to Merck in compliance with PTO 29 for the following Post-11-09 plaintiffs listed in Exhibit A prior to hearing on the motion: Elizabeth Boone, Mary Mahar, Mary Raftis, Frank Spencer and Margaret Steinhoff.

The plaintiffs respectfully submit that the same provides good cause not to dismiss their cases.

## III.

### DISMISSAL SHOULD BE DENIED AS TO PLAINTIFFS FOR WHOM SUGGESTIONS OF DEATH HAVE BEEN FILED.

Three plaintiffs on Exhibit A, Marjorie Connolly, Sheila Smith and Ronald Schaffer have died since they commenced the litigation. Their cases were transferred to MDL 1657, and Suggestions of Death have been filed in this Court. A motion to substitute the personal representative of Ms. Connolly's estate was filed July 30, 2008 (Document No. 15447), and remains pending before this Court. A Suggestion of Death was filed for Ms.

Smith on May 1, 2008 (*see* Document 14279), and a petition has been filed for the issuance of limited letters to prosecute this action. Our records confirm that, prior to their deaths, PPFs and authorizations were executed by these two plaintiffs personally and provided to Merck's counsel. *See* 7/7/06 LexisNexis Transaction Receipt, annexed hereto as **Exhibit L.** A Suggestion of Death was filed for Mr. Schaffer on December 31. Moreover, a petition is pending before New York Surrogate's Court for Broome County seeking appointment of Ms. Smith's husband as personal representative.

It is respectfully submitted dismissals should not be granted in these cases at this time, and instead should be held in abeyance or granted extensions of time to comply.

## IV.

### THE REMAINING POST-11-09 PLAINTIFFS ON EXHIBIT A SHOULD  ALLOWED A REASONABLE OPPORTUNITY TO MAKE A SEPARATE MOTION FOR REMAND OF THEIR CASES TO STATE COURT  ON THE GROUND THIS COURT DID NOT AND DOES NOT HAVE  JURISDICTION DUE TO MERCK'S IMPROPER REMOVAL  OF THEIR CASES

The Judicial Panel on Multi-District Litigation's August 12 Transfer Order ruled that: "Plaintiffs can present their motions for remand to state court to the transferee judge." *See* Plaintiff's Exhibit C, at p. 1. It is respectfully submitted it is in the interests of judicial economy and equity to allow these plaintiffs reasonable time to present their motions to remand prior to consideration of Merck's motion to dismiss. In the alternative, they request that this Court consider the following arguments as showing good cause why their cases should not be dismissed at this time in light of the jurisdictional issues that were previously raised before the Panel (as well as the Southern District of New York in some cases), but have not yet been decided.

The cases of the plaintiffs listed in Schedule A to the Panel's Transfer Order, as well as plaintiffs Alapeck, Pitcher and DuFresne should be remanded to the New York State

Supreme Court on the ground Merck improperly removed their cases by frivolously alleging

fraudulent joinder and removing cases pending more than one year, or ones in which the

non-diverse defendant is still a defendant.   This Court may take judicial notice of the fact

that their cases were pending in the coordinated proceedings in the New York State

Supreme Court for a lengthy period of time when Merck removed their actions to federal

court on the ground that the co-defendant, Pfizer, Inc., a New York corporation, was

dismissed from some of their actions, thus destroying diversity, or had been fraudulently

joined.  In any event, it is well settled that:

> The burden of proof is on the . . .removing parties. ... In deciding whether a
> party was properly joined, the court must resolve all contested factual issues
> and ambiguities in state law in the non-removing party's favor. ... As "the
> effect of removal is to deprive the state court of an action properly before it,
> removal raises significant federalism concerns...." ...The removal statute is
> therefore to be strictly construed, and any doubt as to the propriety of
> removal should be resolved in favor of remand.

Ameen v. Merck & Co., Inc., 226 Fed.Appx. 363, 368 (5th Cir. 2007) [footnote citations

omitted].

Others of these Post-11-09 plaintiffs were caught up in a dragnet style removal

when other plaintiffs' in the multi-plaintiff suits pending in New York Supreme Court

before Judge Kornreich were dismissed.   Their cases against co-defendant Pfizer, Inc., the

manufacturer of the other cox-2 inhibitors, Bextra and Celebrex, were not dismissed in the

New York State Supreme Court proceedings at the time their cases were removed by

Merck.  Counsel is not aware of stipulations of discontinuance as to Pfizer in their cases

then or now.  Pfizer is named as a co-defendant, and, therefore, destroys diversity, and this

Court has no jurisdiction over their cases which are governed by 28 U.S.C. § 1332 diversity

jurisdiction as personal injury actions brought under state law.

It is respectfully submittedthese plaintiffs' cases should be severed and remanded to

New York State Supreme Court from which they were improperly removed by Merck, or, if

the deems appropriate, they should be granted time to bring motions to remand prior to consideration of the instant motion to dismiss..

V.

### DISMISSALS ARE NOT WARRANTED AS TO ANY OF THESE POST-11-09 PLAINTIFFS BASED ON GOOD CAUSE SHOWN.

This Court has ruled that PTOs 28 and 29 are *Lone Pine* orders, and, thus,  they must "strike a balance between efficiency and equity." *In re Vioxx Prods. Liab. Litig.*, 557 F.Supp.2d 741,743-44 (E.D. La. 2008).   Plaintiffs' statement of fact and exhibits evince a number of grounds on which this Court should find they show good cause why their cases should not be dismissed for failure to provide case-specific expert reports under PTOs 28 and 29, or extensions of time to comply are appropriate.

**A.** **The Toxicity of Vioxx Has Already Been Proven in This Litigation and, Thus,  Plaintiffs Complaining of Emotional Distress Damages under New York State Substantive Law on Tort Are Required to Show Ingestion, but Not to Make A Further Showing by Retained Expert Testimony.**

This Court has already engaged in a choice of law analysis and concluded that the substantive law of each plaintiff's jurisdiction must be applied to his or her respective claims.  In re Vioxx Prods. Liab. Litig., 239 F.R.D. 450, 456 (E.D. La. 2006).  This court has further recognized that in some of the claims pending before it plaintiffs seek compensatory damages for "emotional and other intangible injuries." *Id.,* at 462.

New York is one of the jurisdictions which recognizes claims for the negligent infliction of emotional distress even though no physical injury occurred.  Kennedy v. McKesson Co., 58 NY 2d 500, 504, 462 NYS 2d 421, 448 NE 2d 1332.  Plaintiffs submit that not requiring expert disclosure on emotional distress sustained by plaintiffs in the New York law is mirrored by the federal rules to the extent that no written reports are

required for treating physicians to present opinions on causation.   Hamburger v. State
Farm Mutual Auto Ins. Co., 36 F.3dd 875, 882 (5th Cir. 2004).

In turning to the case specific expert disclosure portion of PTOs 28 and 29, this
Court concluded that the argument "under scrutiny... amounts to little more than a
thinly–veiled motion to vacate the order."   Dec. 10 Decision, at p. 9.  The Court, as well as
Merck fail to set forth any reasonable explanation as to why, when information has been
provided as to both ingestion and nature of the injury as well as time of onset, anything
further is required outside the normal course of discovery since the Daubert hearings
adequately demonstrated the cardiotoxicity of Vioxx.  Moreover, all of these plaintiffs
sustained the emotional distress of being exposed to a toxic substance and since existing
state law does not require case specific expert disclosure to support these claims, the
requirement in PTO 28 for case specific expert disclosure is inapplicable.

B.     **Dismissal Is Not Warranted Inasmuch as Plaintiffs Are
        in Substantial Compliance With the Discovery Requirements
        of PTO 29, and Less-Than-Full  Compliance As to the Expert
        Report in PTOs 28 and 29 Is Not Willful and Does Not Meet
        the Standards for Dismissal with Prejudice.**

Merck divides the plaintiffs targeted for dismissal into two groups. It alleges those
on Exhibit A "have not provided *any* of the discovery materials required under PTO 28
including the case specific expert report." Merck's Motion, at p.2, n.3 [emphasis in
original].   According to Merck, the Exhibit B plaintiffs "have provided at least one of the
items set forth in the discovery requirements of PTO 28, but have not provided the
required case specific expert report." *Id.*

It is respectfully submitted that Merck's allegations support the plaintiffs'
opposition in that Merck obviously suggests these Post-11-09  plaintiffs are all in complete
default (an allegation which is patently untrue), in order to justify the imposition of the

harshest sanction available, namely, not-on-the-merits dismissal with prejudice.

Merck is overstating its case by suggesting plaintiffs have not provided "any" of the required discovery. Merck is fully aware that, during the pendency of the actions in New York state court, these plaintiffs were at various stages of providing disclosure to Merck, including the Plaintiff Profile Form and multiple authorizations for the release of pharmacy and medical records, as well as copies of records. *See, e.g.,* Cover letters to Merck's counsel and LexisNexis Transaction Receipts annexed in **Exhibit M**.

Plaintiffs submit this Court ruled out a construction of PTO 29 that would require them to provide duplicative or unnecessary disclosures of the same material previously provided to Merck's counsel. In that regard, it is only necessary to note that PTO 29 expressly provides:

> The Plaintiff need not re-submit a Plaintiff Profile Form if one has already been submitted with respect to his or her claim.

*Id.,* p. 4, Section II(D). Vioxx was pulled off the market on September 30, 2004, which strongly suggests no additional pharmacy records will be disclosed as to Merck's liability. Moreover, Merck has made no individualized showing of the need for supplemental or additional authorizations after November 9, 2007. For example, the same are certainly not required for Sheila Smith who died in June 2007, Marjorie Connolly in September 2007, and Richard Core in July 2007, who all died prior to the entry of PTOs 28 and 29.

It is significant that Merck takes the broadbrush approach of asserting plaintiffs have not provided "any" of the required discovery materials, apparently to suggest that dismissal is warranted for alleged willful disregard in general. Plaintiffs submit that PTO 29 expressly conditions Merck's right to send the deficiency notice to "Plaintiffs who fail to

fully comply with the requirements of this Order...." *Id.*, at Section II(C)./*[5]   However, both PTOs 28 and 28 clearly do not suggest automatic dismissal for any failure to comply, timely or otherwise, inasmuch as the same is only expressly ordered for: "***Any failure to respond to the Motion*** within the required period of time shall lead to dismissal of the claim with prejudice. . . ." *Id.* [emphasis added].   No similar default or automatic dismissal is provided in PTO 28 or 29, and these plaintiffs are responding to the motion.

Thus, PTO 29 does not appear to allow a non-individualized show cause motion by Merck or automatic dismissal for "any" failure, and the order indicates the motion must be against each plaintiff since it refers to, "If Plaintiff fails to cure the deficiency". *Id.* Not only did these plaintiffs partially comply, contradicting a failure to prosecute or willful failure, but Merck takes the view that any "deficiency" results in a sudden-death dismissal, and its attorneys can, before filing a motion, simply turn their backs on any request of plaintiffs' counsel to meet and confer.

Here, Merck seeks dismissal with prejudice, and construes PTO 28 as authorizing the same for "any" failure to comply and with no further showing required than untimeliness.   The Fifth Circuit has made clear that:

> [A] dismissal with prejudice would only be affirmed upon a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, and (b) where lesser sanctions would not serve the best interests of justice. . . .   We also noted the significance in our decisions of the presence of certain "aggravating factors", such as (1) the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, (2) the degree of actual prejudice to the defendant, and (3) whether the delay was the result of intentional conduct.

Morris v. Ocean Systems, Inc., 730 F.2d 248, 252 (5th Cir. 1984).   Here, among other things, plaintiffs' counsel sought a stay while the *Agard* motion was pending, the outcome of which

---

[5]*/Using identical language, PTO 28 similarly applies the procedure to "Plaintiffs or Claimants who fail to fully comply with the requirements of this Order...."   PTO 28, Section II(D).

might have led to revising the case-specific expert report requirement.   A stay under those circumstances is clearly reasonable conduct.  *See, e.g.,* Magistrate Judge Knowles' recent rulings in <u>Dresser v. Meba Medical & Benefits Plan</u> , 2008 WL 2705584, *2 (E.D.La.).

Moreover, plaintiffs submit, *Lone Pine* orders are not written in stone, nor do they require a motion to vacate.  *See* <u>Baker v. Chevron USA, Inc.,</u> 2006 WL 2251821 (S.D. Ohio), in which the district court found the magistrate's decision to revise a *Lone Pine* order was reasonable and promoted efficiency in litigation. *Id.,* at *3.  Nor should *Lone Pine* orders inappropriately function as a summary judgment procedure that does not follow Rule 56(c) principles.  *See* <u>Simeone v. Girard City Bd of Educ.,</u> 171 Ohio App.3d 633, 644-45, 872 N.E.2d 344 (Ct.App. 11th Dist. Ohio 2007).  Here, summary judgment would be fair, where, clearly, at the October 8 Case Management Conference in Manhattan, Merck's counsel and the Special Master indicated that they were prepared at that juncture to discuss each plaintiff's case, and later advised plaintiffs' counsel by letter that "we have reviewed the records for some of your clients and have found that they would be eligible for payments in substantial amounts," and cited two cases they estimated were worth  $450,000 and $220,000 on the settlement grid if they panned out.  Clearly, Merck and its attorneys concede they already have the kind of evidence they need, in at least some cases, that obviates the need for the case-specific expert report envisioned by PTOs 28 and 29.

Under the circumstances, these plaintiffs should not be put to the expense of retaining an expert before they are ready (well in advance of a trial which is not on the horizon) in order to exalt the form of PTO 29 over the substance of the operative facts, or the imbalance of  efficiency over equity.  The representations of Merck's counsel that all of these plaintiffs are deemed eligible for the MSA resolution program based on documentary evidence without an expert report. also indicate it would be just and equitable if this Court ordered some or all of the cost of the expert reports to be borne by Merck.

Moreover, that an individualized notice should be required is illustrated by plaintiffs Marjorie Connolly and Sheila Smith, in reference to whom Merck was already served with the Suggestion of Death well in advance of bringing on the motion. Plaintiff William Patrick died on the date his case-specific expert disclosure would have been due, so there was no real opportunity to cure the deficiency prior to obtaining letters of administration. With respect to New York law plaintiffs whose PPFs identify either bodily or no bodily injury, which entitles them to prove emotional distress damages based on ingestion, the fact that no case-specific expert report is legally required and the plaintiffs provide pharmacy and medical records showing ingestion, Merck's overbroad and inequitable reading of PTOs 28 and 29 to entitle it to dismissal where there is substantial, but less-than-full or timely compliance by serving a group deficiency letter and motion with no individualized showing at all should be rejected. Its attempt to back-door other alleged discovery defaults into court to bolster the likelihood of dismissal should be rejected if they are unwilling to set forth such an individualized showing.

The record of this case confirms that PTOs 28 and 29 were entered without notice or a motion made by Merck. While this Court has explained the rationale for the case-specific expert reports, that rationale does not support the discovery obligations set forth in PTOs 28 and 29 that are clearly not limited to what the plaintiffs should have known before commencing litigation, and require, among other things, affidavits from the plaintiffs attesting to the completeness and production of third-party records and custodians as to which the plaintiffs have no personal knowledge, but may be held to perjury sanctions if the third-party has not provided complete records. Moreover, Merck has already been provided with authorizations, yet the record before this Court contains no assertion by Merck, under oath or otherwise, that the authorizations plaintiffs have already provided have resulted in its inability to obtain "complete" records from the third-party pharmacies, health care

-19-

providers, insurers and others./*[6]

Plaintiffs will not reiterate the arguments the Court has rejected as "hollow."
December 10 Decision, at p.8.  It is, however, necessary to contrast the instant cases where
Merck has been provided chapter and verse on ingestion and nature of the injury, as well as
the applicable scientific evidence as it relates to cardiovascular injuries,  with circumstances
such as existed in Acuna v. Brown & Root, Inc.,200 F.3d 335 (5th Cir. 2000).  In Acuna the
court was facing some 1,600 plaintiff suing more than 100 defendants for injuries that
spanned over 40 years.  This Court's belief that alternative methods of proof would
undermine its order is difficult to comprehend given the representations of Merck's counsel.
If, indeed, the Court is interested in only some kind of basic evidence of specific causation
(which plaintiff contends constitutes an abuse of discretion on the facts and circumstances
of cases before the court), requiring plaintiffs to provide more becomes a substitute for and
supplants the rules on summary judgment motions practice.

This Court has indicated that PTOs 28 and 29 are "Lone Pine" orders which must
"strike a balance between efficiency and equity." In re Vioxx Prods. Liab. Litig., 557
F.Supp.2d 741,743-44 (E.D. La. 2008).   No trial date has been set for any of these plaintiffs,
nor has this Court indicated remand to the transferor court for trial is imminent, so the
extensions of time sought herein will not result in substantive delay and be unfair to Merck.

This Court has referred to the Master Settlement Agreement ("MSA") that was also
approved on November 9, 2007, as a "private agreement" and naming itself as the Chief
Administrator of the resolution program.   It is respectfully submitted that, because the

_____

[6]*/New York law requires all physicians to maintain adult patient records for at
least 10 years. New York Education Law Section 6530 (32).   The failure to maintain those
records for each patient constitutes professional misconduct.  See 8 NYC RR 29.2 (a) (3).
The same is true for hospital records, 8 NYC R.R. 405.10 and for nursing homes, 8 NYC
R.R. 415.22.

entry of PTOs 28 and 29 occurred without the due process protections that would have allowed the instant plaintiffs to raise these concerns before the orders were even entered, and in light of this Court's refusal to resign from its position as Chief Administrator of the MSA, plaintiffs submit recusal is warranted pursuant to 28 U.S.C. 455.   Although this Court stated that it serves as Chief Administrator of the MSA "in an administrative capacity that has no substantive effect on its management of the MDL proceedings" (Decision, p. 6), plaintiffs respectfully submit that pursuant to the MSA this Court has ultimate authority for substantive decisions with regard to whether or not plaintiffs are eligible for compensation under the MSA.   Although the Court may be able to sort out the different standards to be applied to the identical language in the MSA and in the definitions portion of PTO 28 excluding virtually all cardiovascular injuries except heart attacks, sudden cardiac death, and strokes, a layperson is hardly able to grasp such subtle distinctions and would harbor doubts about the Court's impartiality in adjudicating these issues. (*See, e.g.*, Agard Aff., Document 14938-3, paras. 57-58).

The arguments with regard to the expert disclosure required by PTOs 28 and 29 have already been advanced so the contentions herein are intended to show that plaintiffs have fully complied with the same or are in substantial compliance sufficient to defeat Merck's motion on the grounds of good cause shown.

## **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully submit that this Court should

DENY the Merck's motion to dismiss their cases with prejudice on the ground of failure to

provide a case-specific expert report under PTO 28, or PTO 29, and should grant plaintiffs'

cross-motions for time to comply, to seek remand to state court and for recusal.

Respectfully submitted,

RONALD R. BENJAMIN Fed. No. 110131
LAW OFFICE OF RONALD R. BENJAMIN
126 Riverside Drive, P O. Box 607
Binghamton, New York 13902-0607
607/772-1442

Attorneys for Individual Plaintiffs
in Above-Captioned Actions