UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL No. 1657 |
|     Products Liability Litigation | * | |
| | * | SECTION L |
| This Document Relates to: | * | |
| | * | JUDGE ELDON E. FALLON |
| *Certain Cases on attached Exhibits A & B* | * | |
| | * | MAGISTRATE JUDGE |
| | * | KNOWLES |

* * * * * * * * * * * * * * * * * * * * * * * * *

### DEFENDANT MERCK & CO., INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR FAILURE TO COMPLY WITH THE *LONE PINE* REQUIREMENTS OF PTO 29[1]

Defendant Merck & Co., Inc. ("Merck") respectfully submits this reply memorandum in support of its motion to dismiss plaintiffs' claims for failure to comply with the *Lone Pine* requirements of PTO 29.[2]

### BACKGROUND

Plaintiffs' combined opposition brief and cross motion represents the latest chapter in an ongoing attempt by the Law Office of Ronald R. Benjamin to avoid the requirements of discovery orders governing the claims of nonsettling Vioxx plaintiffs.

This story began in December 2007, less than a month after the settlement was announced and Pre-Trial Orders 28 and 29 ("PTO 28" and "PTO 29") were entered, when a group of plaintiffs represented by Mr. Benjamin ("the *Agard* plaintiffs") filed a notice of appeal. (*See* Notice of Appeal at 1, Doc. 13,075, *In re Vioxx Prods. Liab. Litig.*,

---

[1] On December 31, 2008, plaintiffs represented by Mr. Benjamin filed two separate opposition briefs in response to Merck's motion to dismiss. The first addressed the claims of plaintiffs whose cases were pending in the MDL on November 9, 2007, and who are subject to PTO 28. The second addressed plaintiffs who joined the MDL after that date, and are therefore subject to the substantively identical requirements of PTO 29. This reply addresses the second set of plaintiffs.

MDL No. 1657 (E.D. La. Dec. 10, 2007).) Because neither the settlement nor PTO 28 was a final judgment, and because no other basis for an appeal existed, Merck moved the Court of Appeals to dismiss the appeal. (*See* Mot. to Dismiss for Lack of Appellate Jurisdiction, *Agard v. Merck & Co., Inc.*, No. 07-31164 (5th Cir. Jan. 10, 2008).) The *Agard* plaintiffs opposed the motion, arguing, among other things, that the demands set forth in PTO 28 were unduly burdensome. (*See* Appellants' Opp'n to Separate Mots. of Appellee Merck & Co., and Pls.' Steering Comm. Seeking to Dismiss the Instant Appeal of PTO 28 Entered in Aid of a "Master Settlement Agreement" Between the Movants in the Multi-District Prod. Liab. Litig. Below at 3, *Agard v. Merck & Co., Inc.*, No. 07-31164 (5th Cir. Jan. 28, 2008).)[3]

Shortly thereafter, counsel for certain plaintiffs in Kentucky and Indiana ("the Oldfather plaintiffs") filed a motion requesting modification or suspension of PTO 28, complaining that its requirements were premature and unfairly burdensome. (*See* Certain Pls.' and Their Counsel's Emergency Mot. for Modification and/or Suspension of Pretrial Order No. 28 and Request for Expedited Telephonic Hr'g at 3, Doc. 14,157, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Apr. 17, 2008) (arguing that PTO 28 required too much discovery in too short a time period, a task that was "impossible" and would "prevent any case ineligible for the Resolution Program from being prosecuted").) This Court rejected the Oldfather plaintiffs' arguments, explaining that *Lone Pine* orders like PTO 28 are a recognized and appropriate means "to identify and cull potentially meritless claims and streamline litigation." *See In re Vioxx Prods. Liab. Litig.*, No. 2:05-

---

[2]   Merck withdraws it motion with regard to plaintiff Frank Spencer in light of the fact that a case-specific expert report was filed on his behalf concurrently with plaintiffs' opposition.

[3]   The Fifth Circuit dismissed the appeal without an opinion. (*See* Order at 2, *Agard v. Merck & Co., Inc.*, No. 07-31164 (5th Cir. Mar. 28, 2008) (per curiam).)

cv-1657, 2008 U.S. Dist. LEXIS 94092, at *5 (E.D. La. May 30, 2008) ("Oldfather Order") (citation and internal quotation marks omitted). In the Court's words: "it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury." *Id.* at *8. The Court nonetheless extended the deadlines for PTO 28 "to ensure that all Plaintiffs have a fair opportunity to comply with this provision of PTO 28." *Id.* at *9.

One month later – and the day before each of their PTO 28 filings were due under the extended deadline – the *Agard* plaintiffs[4] filed a motion making substantially the same arguments as the Oldfather plaintiffs in opposition to PTO 28. They sought yet another extension – until September 30, 2008 for plaintiffs with last names beginning with letters A through L, and until October 31, 2008 for plaintiffs with last names beginning with letters M through Z – as well as to eliminate the case-specific expert requirement of PTO 28. (*See* Pls.' Mot. to Vacate or Modify the Master Settlement Agreement, and Pre-Trial Order No. 28, and to Extend Time to Submit Expert Certificate of Causation and/or to Preclude Merck from Using the Expert Certificate of Causation and From Using to Cross-Examine Experts at Trial at 2, Doc. 14,938-2, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. June 30, 2008).) They also argued that Judge Fallon's roles as settlement administrator and as coordinating judge of the MDL proceeding created an incurable conflict of interest, requiring Judge Fallon to resign as settlement administrator. (*Id.* at 2-3.) Merck opposed, noting that the Court had rejected identical arguments raised by the Oldfather plaintiffs and that there was no other reason to extend the deadlines, to modify the other requirements of PTO 28, or for Judge Fallon

---

[4] This second *Agard* filing was brought on behalf of the original *Agard* plaintiffs and several others.

to resign as administrator of the settlement. (*See* Def. Merck & Co., Inc.'s Corrected Opp'n to Pls.' Mot. for the Court's Resignation as Chief Administrator of the Master Settlement Agreement, Etc. at 1, 17, Doc. 15,907, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Sept. 16, 2008).)

On November 5 – five days ***after*** the latest of the extended deadlines proposed in the motion by the *Agard* plaintiffs for compliance with PTO 28 – Mr. Benjamin submitted a request for a pre-motion conference "for the purpose of staying further motions by Merck for noncompliance with PTO 28," citing the pending *Agard* motion as grounds for the proposed stay. (*See* Ltr. from R. Benjamin to Hon. Eldon E. Fallon at 1, Nov. 5, 2008 (attached as Ex. J to Opp'n & Cross-Mot.).)

On December 10, the Court denied the *Agard* motion in its entirety, relying on its reasoning in the Oldfather Order that PTO 28 is a standard *Lone Pine* order designed to streamline mass litigation. (*See* Order & Reasons at 8-9, Doc. 17,394, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Dec. 10, 2008) ("December 10 Order").) The Court described the *Agard* plaintiffs' complaint regarding the ostensible burdensomeness of PTO 28 as "simply not credible." (*Id.* at 9.) The Court also ruled that Judge Fallon need not resign as administrator of the settlement because "[t]he facts of the instant case do not warrant recusal." (*Id.* at 6.)

The plaintiffs subject to the instant motion each joined the MDL after November 9, 2007. Thus, rather than being subject to PTO 28, they are subject to the substantively identical discovery requirements set forth in PTO 29. Like PTO 28, PTO 29 requires that each plaintiff pursuing a claim in the MDL after November 9, 2007 provide, among other things, pharmaceutical records, medical records, an Amended & Supplemental Plaintiff

4

Profile Form, responses to specified interrogatories, and a Rule 26(a)(2) case-specific expert report. (*See* PTO 29 at 1-4, Doc. 12,963, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Nov. 9, 2007).) One important distinction between PTO 28 and PTO 29 relates to deadlines. As modified by the Oldfather Order, PTO 28 sets specific deadlines for the filing of the required documents. (*See* PTO 28 at 4, Doc. 12,962, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Nov. 9, 2007).) PTO 29 also sets deadlines, but it does so by reference to the date a claim is filed in, or transferred to, the MDL, rather than to a specific calendar date. (*See* PTO 29 at 3 (requiring each plaintiff to comply with discovery requirements within 45 days of filing a claim in the MDL (or within 45 days of transfer to the MDL, if the claim was filed elsewhere)).)

## ARGUMENT

Plaintiffs argue that their failure to comply with PTO 29 should not result in dismissal of their claims for several reasons. Each is meritless.

*First,* plaintiffs argue that their claims should not be dismissed because they are governed by PTO 29 and Merck erroneously referred to PTO 28 in its motion. But this is a distinction without a difference. Both orders impose essentially the same obligations on plaintiffs – and plaintiffs here complied with neither. The fact that Merck's motion contained a typographical error is not a ground for plaintiffs to evade their discovery requirements. Because plaintiffs have not complied with PTO 29, their claims should be dismissed.

*Second,* plaintiffs argue that the Court should rule on hypothetical remand motions *they have not yet filed* prior to enforcing concrete discovery requirements that they were required to comply with months ago. This argument too lacks merit. Plaintiffs

5

have had ample time to file a procedurally proper remand motion and have failed to do so. Their sudden jurisdictional protests are simply one more delay tactic that should not be entertained by the Court.

***Third,*** plaintiffs argue that dismissal with prejudice is too great a sanction, citing a number of alternative grounds, including the existence of claims that do not require expert evidence, their supposed partial compliance with PTO 29, and the pending *Agard* ruling. None of these claims has any merit. By now it cannot be doubted that plaintiffs' counsel knows precisely what is required in terms of discovery under PTOs 28 and 29. None of the explanations offered by plaintiffs for failing to comply with these requirements warrants any lesser sanction than dismissal with prejudice.

***Fourth,*** plaintiffs essentially repeat the arguments of the *Agard* plaintiffs, moving the Court to stay enforcement of PTO 29 and to recuse itself from these proceedings. As already determined by the Court, these requests are baseless and should be denied.

I.  **THE SUBSTANTIVE REQUIREMENTS OF PTOS 28 AND 29 ARE IDENTICAL, AND PLAINTIFFS' DISTINCTION BETWEEN THE TWO CANNOT SUPPORT DENIAL OF THE MOTION.**

Plaintiffs' argument that the Court should not dismiss their cases because of Merck's "failure to cite PTO 29" (Pls.' Opp'n at 10) is nonsensical. While plaintiffs say this is "not a merely technical argument" (*id.*), it is precisely that – an attempt to excuse plaintiffs' failure to comply with their discovery obligations by reference to a typographical error in Merck's motion to dismiss. As noted above, the discovery obligations required of each non-settling plaintiff in this proceeding are virtually identical, whether his or her claims are governed by PTO 28 or PTO 29. Specifically, both PTO 28 and PTO 29 require each plaintiff to submit, among other things, pharmacy records, answers to specific interrogatories, and "[a] Rule 26(a)(2) case-specific expert report

6

from a medical expert attesting (i) that the Plaintiff suffered an injury and (ii) that Vioxx caused the injury." (*Compare* PTO 28 §§ II.A.1, II.A.5 and II.A.8 *with* PTO 29 §§ II.A.1, II.A.5 and II.A.7.)  Thus, whether plaintiffs' claims are governed by PTO 28 or PTO 29 is immaterial – the discovery obligations they failed to meet are substantively identical under the two orders.

In sum, the fact that Merck erroneously referenced the wrong PTO in its motion is obviously no ground for allowing plaintiffs to evade their discovery obligations. Accordingly, this argument should be rejected by the Court.

**II.     PLAINTIFFS' REQUEST FOR TIME TO FILE MOTIONS FOR REMAND SHOULD BE DENIED.**

Plaintiffs next argue that several of them should be afforded "reasonable time" to move for remand, relying on a J.P.M.L. order's suggestion that "[p]laintiffs can present their motions for remand to state court to the transferee judge." (*See* Pls.' Opp'n at 12; *id.* Ex. C at 1.)  This argument too is meritless.

***First and foremost, plaintiffs have never moved for remand.***  Plaintiffs cannot seriously contend that the Court should suspend discovery obligations based on jurisdictional motions that have never been filed.  In any event, the fact that plaintiffs have not moved to remand suggests that they themselves doubt the merits of such motions – particularly in light of the great lengths taken by their counsel in other respects to avoid the operation of PTOs 28 and 29.

***Second***, even if a motion for remand is ever actually filed, it would not suspend discovery rules.  In *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98 (5th Cir. 1990), for example, the Fifth Circuit affirmed summary judgment entered in favor of defendants. On appeal, the plaintiffs argued that summary judgment was improperly entered because

7

they had suspended their discovery efforts while a motion for remand was pending, despite the trial court's denial of a request for continuance. The Fifth Circuit affirmed, explaining that "the fact that a motion for remand was pending does not excuse failing to pursue discovery diligently." *Id.* at 102. Here, even assuming a remand motion is ever filed, plaintiffs' discovery obligations arose long before any jurisdictional challenges. Thus, plaintiffs would have no excuse for failing to comply with their discovery obligations in a timely manner.

### III. PLAINTIFFS DO NOT HAVE "GOOD CAUSE" FOR THEIR FAILURE TO COMPLY WITH PTO 29.

Plaintiffs also argue that Merck's motion to dismiss is inappropriate because there are a "number of grounds on which this Court should find" that they have "good cause" for not complying with PTO 29. (Pls.' Opp'n at 14.) Specifically, plaintiffs argue that: (1) a number of the plaintiffs at issue are not required to submit a case-specific expert report; (2) plaintiffs have provided some of the discovery required by PTO 29 in this and other courts and therefore it is irrelevant that they have not yet submitted case-specific expert reports; and (3) plaintiffs' delay in complying with the order is excused because they have been challenging the validity of the order. None of these arguments has merit.

Each of the plaintiffs at issue in Merck's motion to dismiss was required to comply with the terms of PTO 29 ***in full*** by the deadlines set in the Order. Because plaintiffs have admittedly failed to provide the most important piece of discovery required by the Order – case-specific expert reports substantiating their claims – their claims are subject to dismissal with prejudice.[5]

---

[5] Plaintiffs claim that five of the plaintiffs at issue in Merck's motion – Elizabeth Boone, Mary Mahar, Mary Raftis, Frank Spencer, and Margaret Steinhoff – "have provided case-specific expert reports." (Pls.' Opp'n at 11.) However, only plaintiff Spencer has actually submitted an expert report. As set forth

8

### A.     Plaintiffs' Suggestion That Certain Plaintiffs Are Not Required To Provide Case-Specific Expert Reports Is Baseless.

Plaintiffs' suggestion that certain plaintiffs should be excused from complying with PTO-29 because they are deceased or because they allege claims for emotional distress (*see* Pls.' Opp'n at 11-12, 14-15) has no basis.

*First*, the fact that one of the plaintiffs at issue in Merck's motion – Ronald Schaffer – is deceased does not affect plaintiffs' responsibility to file a case-specific expert report on his behalf.[6] PTO 29 applies equally to all Vioxx plaintiffs in the MDL who have not entered the Resolution Program – regardless of whether they are living or deceased. Section II.A of PTO 29 provides that all "Plaintiffs who claim to have suffered an injury as a result of the use of Vioxx must produce" several categories of information in order to proceed with their claims, including a "Rule 26(a)(2) case-specific expert report from a medical expert attesting (i) that the Plaintiff suffered an injury and (ii) that Vioxx caused the injury." (*See* PTO 29 ¶ II.A.7.) Thus, the simple fact that a "Suggestion of Death" has been filed for Mr. Schaffer does not satisfy all discovery obligations with regard to his case. In addition, counsel for Mr. Schaffer was required to fulfill all of the other discovery requirements set forth in PTO 29 – including the submission of a case-specific expert report. Because he failed to do so, Mr. Schaffer's claims are subject to dismissal.

---

above, Merck has withdrawn its motion with regard to Mr. Spencer. While plaintiffs claim that expert reports for the other four identified plaintiffs "are being or will be provided to Merck" at some point, Merck has not received any such reports. (*Id.*) Given plaintiffs' counsel's continued failure to provide required discovery responses in this litigation, there is no reason for Merck or the Court to believe that the referenced reports will actually be turned over any time soon.

[6]     Plaintiffs also refer to the deaths of plaintiffs Marjorie Connolly and Sheila Smith in their motion regarding plaintiffs subject to PTO 29. (*See* Pls.' Opp'n at 11-12.) However, those plaintiffs are properly subject to the requirements of PTO 28, and are addressed in Merck's separate response to plaintiffs' motion regarding individuals subject to PTO 28.

*Second*, plaintiffs argue that some of the plaintiffs at issue seek damages for emotional or other intangible injuries, which do not require a showing that the plaintiff was physically injured as a result of the defendant's conduct. (*See* Pls.' Opp'n at 14.) But this argument is disingenuous. Even if plaintiffs were correct that *emotional distress* claims never require expert evidence, it does not mean that plaintiffs are excused from identifying experts with regard to their other causes of action. Each of the plaintiffs at issue in Merck's motion to dismiss alleged some claim of personal injury as a result of taking Vioxx. The fact that some plaintiffs may also assert claims for emotional distress does not diminish their obligation under PTO 29 to provide expert evidence linking their alleged physical injuries to use of Vioxx.

### B. Plaintiffs' Supposed "Partial Compliance" With PTO 29 Does Not Make Dismissal Inappropriate.

Plaintiffs' "partial compliance" argument also fails. (*See id.* at 15.) Plaintiffs do not dispute that some of the plaintiffs at issue in Merck's motion have not provided any of the discovery required under PTO 29. However, plaintiffs claim that the fact that some other plaintiffs "have provided at least one of the items set forth in the discovery requirements" of PTO 29 makes it inappropriate for the Court to dismiss their claims outright. (*Id.*) According to plaintiffs, "PTO 29 does not appear to allow . . . automatic dismissal for 'any' failure" to comply with the Order. (*Id.* at 17.)[7] As a result, plaintiffs

---

[7] Plaintiffs also object to Merck's motion on grounds that PTO 29 does not "allow a non-individualized show cause motion by Merck" and that Merck was required to file separate "motion[s] against each plaintiff" so that they may cure any deficiency. (Pls.' Opp'n at 17.) As set forth in Merck's opening motion, Merck's counsel notified the counsel of record in each of the cases at issue that their clients' discovery responses were materially deficient in that they had not submitted case-specific expert reports and, in some cases, other required discovery. (Merck's Mot. at 2.) Plaintiffs' counsel failed to cure the deficiency in any of the cases. Moreover, Merck's motion to dismiss specifically identified each of the plaintiffs whose discovery responses are insufficient and identified what specific required information each plaintiff had not yet provided. (*See id.* Ex. A & B.) Thus, Merck has not – as plaintiffs suggest – filed a

10

suggest that their "substantial compliance" with the Order entitles them to yet another extension of the deadline to provide complete discovery responses. Not so.

As an initial matter, PTO 29 does, in fact, provide that dismissal is appropriate where a plaintiff has failed to provide ***all*** of the information required – even if some discovery has been produced. As set forth in Merck's opening motion, PTO 29 explicitly provides that "Plaintiffs who fail to ***fully comply*** with the requirements of" the Order shall be given notice of the deficiency and given 30 days to cure, and that "***no other extension will be granted***, except for good cause shown." (PTO 29 § II.C (emphases added).)[8] If the deficiency is not cured within 30 days, Merck is to file a motion to show cause why the claim should not be dismissed with prejudice; if plaintiffs do not respond to the motion with facts establishing good cause for the deficiency, dismissal with prejudice is warranted. (*Id.*) Nowhere in PTO 29 is it suggested that dismissal shall not be granted where plaintiffs have partially, or even substantially, complied with the Order's requirements. Nor would such a rule make sense. If the Court had intended that plaintiffs need only "substantially comply" with PTO 29's discovery requirements within the prescribed 45-day time period, it would not have expressly allowed for dismissal of claims of plaintiffs "who fail to fully comply" with those requirements. In addition, if plaintiffs are correct that dismissal is not appropriate where some – but not all – discovery has been produced, then plaintiffs could extend the discovery deadline

---

blanket objection to plaintiffs' discovery responses or robbed plaintiffs of the ability to defend their discovery responses.

[8]  Plaintiffs' cross-motion "for an extension of time to provide a case-specific report within a reasonable period of time after this Court resolves the issues they raise in this opposition" (Pls.' Opp'n at 3) does not provide good cause for their failure to comply with PTO 29. Plaintiffs should not be allowed to ignore this Court's Order outright (after it has already been deemed valid in response to challenges by other plaintiffs), wait for Merck to move to show cause, claim in their opposition that the Order is defective, and then argue that their failure to comply should be excused while the Court *once again* addresses the validity of the Order.

11

indefinitely by producing some small amount of information (like a Plaintiff Profile Form or "Suggestion of Death") within the allotted period but refusing to turn over discovery essential to identifying which claims lack any factual basis, such as medical records or expert reports. Such a result would be antithetical to the Court's stated purpose in adopting the PTO: "to identify and cull potentially meritless claims and streamline litigation." (*See* December 10 Order at 8.)

Moreover, even if plaintiffs were correct that "substantial compliance" with PTO 29 renders dismissal inappropriate – which they are not – plaintiffs here have not "substantially complied" with the Order because they have not produced the key element of PTO 29: case-specific expert reports.[9] As set forth above, the parties have spent substantial time and resources addressing the issue of whether case-specific expert reports are necessary and/or appropriate discovery in this litigation. And every time the Court has been faced with the question, it has made clear that such expert reports are essential to move the remaining Vioxx claims towards an efficient resolution. According to the Court, "at this advanced stage of the litigation, it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury, whether that injury be deep vein thrombosis, a heart attack, an ulcer or some other malady." Oldfather Order, 2008 U.S. Dist. LEXIS 94092, at *8. For this reason, the Court imposed the requirement in PTOs 28 and 29 that each plaintiff "make a minimal showing consistent with Rule 26 that there is some kind of scientific basis that Vioxx could cause the alleged injury" by producing an expert report. *Id.* at *9.

---

[9] Plaintiffs' argument that they should receive credit for their "substantial disclosures in the prior state court proceedings in the Supreme Court for the County of New York before being transferred to this Court" (Pls.' Opp'n at 10-11) fails for these very same reasons. Their state court disclosures did not include the core requirements of PTO 29.

12

It is well recognized that where – as here – plaintiffs refuse to comply with case management orders designed to test the merit of their allegations, dismissal with prejudice is appropriate. *See In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1235 (9th Cir. 2006). In *In re PPA*, the MDL court issued a case management order requiring plaintiffs to submit fact sheets laying out the factual basis for their claims and subsequently dismissed the claims of those plaintiffs who failed to produce the fact sheets. On appeal, the Ninth Circuit affirmed, rejecting plaintiffs' arguments that the discovery deadlines were unduly burdensome and that some plaintiffs had partially complied with the order. *Id*. at 1234. According to the court, "dismissal serves . . . the court's need to manage the docket when a plaintiff's noncompliance has caused the action to come to a halt, thereby allowing the plaintiff, rather than the court, to control the pace of the docket." *Id*. Moreover, the court recognized that while a motion to dismiss should typically be granted on the merits, plaintiffs' unwillingness to provide "information that only they possessed regarding the critical elements of their claims" made it "impossible to dispose of the case on the merits." *Id*. Specifically, the court noted that "in a proceeding such as this, where the plaintiffs themselves prevent their cases from moving forward" by failing to provide information regarding the factual basis for their claims, dismissal is the only real option. *Id*.

The same is true here. As this Court's prior rulings make clear, case-specific expert reports are essential to test the validity of plaintiffs' claims in this litigation. Accordingly, plaintiffs who have not provided this key information have not "substantially complied" with the Order. For this reason too, Merck's motion should be granted.

### C. Plaintiffs' Continued Challenges To PTO 29 Do Not Excuse Their Failure To Comply With The Order.

Plaintiffs also claim that their failure to produce case-specific reports should be excused because plaintiffs in the *Agard* case – who are represented by the same counsel as the plaintiffs at issue here – have been challenging the validity of PTOs 28 & 29 since July 2008. (Pls.' Opp'n at 18.) According to plaintiffs, the outcome of that action "might have led to revising the case-specific expert report requirement." (*Id.*) Plaintiffs have it precisely backwards. The fact that plaintiffs and their counsel continue to delay their compliance with PTOs 28 and 29 after launching numerous challenges to the PTOs and their provisions further supports dismissal of their claims.

Dismissal with prejudice is appropriate where there is a "clear record of delay or contumacious conduct" by plaintiff, and when "lesser sanctions would not serve the best interests of justice." *Callip v. Harris County Child Welfare Dep't*, 757 F.2d 1513, 1519 (5th Cir. 1985). Dismissal is especially warranted where, as here, plaintiffs have continuously refused to comply with a case management order and have previously been given – and missed – extensions on the deadline for compliance with that order. *See, e.g., Berry v. Warner*, No. 08-60153, 2008 U.S. App. LEXIS 18590, at *7 (5th Cir. Aug. 26, 2008) (upholding dismissal with prejudice where "the district court considered and in fact implemented less drastic alternative sanctions than dismissal when it afforded [plaintiffs] repeated opportunities to comply with its order, each time advising them of the consequence if they failed to meet the [] deadline"); *Bluitt v. Arco Chem. Co.*, 777 F.2d 188, 189 (5th Cir. 1985) (affirming lower court's finding that "a sanction less harsh than dismissal would be of no avail because previous orders had been disregarded"); *In re PPA*, 460 F.3d at 1234 (upholding dismissal of product liability claims for failure to

14

comply with discovery order where plaintiffs had been given several warnings that their discovery responses were deficient and the trial court had "provided second and third chances following procedural defaults" with no results).

For example, in *Berry*, the district court entered a case management order requiring plaintiffs – who alleged they were exposed to toxins from the defendant's chemical plant – to submit individual expert affidavits demonstrating that their injuries in fact resulted from exposure to those toxins. The court extended its deadline multiple times after plaintiffs complained that they could not comply with the court's original timeline. *See Berry*, 2008 U.S. App. LEXIS 18590, at *4-6. The Fifth Circuit affirmed the court's eventual dismissal with prejudice, stressing that "the district court considered and in fact implemented less drastic alternative sanctions than dismissal when it afforded [plaintiffs] repeated opportunities to comply with its order, each time advising them of the consequence if they failed to meet the respective deadline." *Id.* at *7-8. The court also emphasized that because plaintiffs failed to submit the required affidavits, they "had not produced any evidence of causation, an essential element of their claims." *Id.* at *9. As a result, the court determined that dismissal of the action was an appropriate sanction.

The same is true here. Plaintiffs have been repeatedly warned that they cannot proceed with their claims absent the production of case-specific expert reports. Both plaintiffs in the *Agard* action – who are represented by the same counsel as the plaintiffs in this case – and plaintiffs with different counsel have sought to modify PTOs 28 and 29 to exclude the expert report requirement. While the Court has repeatedly refused to do so, it has extended the deadlines for providing case-specific expert reports in certain cases "to ensure that all Plaintiffs have a fair opportunity to comply with this provision."

Oldfather Order, 2008 U.S. Dist. LEXIS 94092, at *9. Nonetheless, despite multiple orders by this Court explaining the importance of case-specific expert reports and allowing extensions of time to complete such discovery, plaintiffs still refuse to produce the requested information. For this reason too, dismissal is warranted.

### IV. PLAINTIFFS' CROSS-MOTIONS FOR RECUSAL AND STAY OF DISCOVERY REQUIREMENTS SHOULD BE DENIED.

Plaintiffs conclude their memorandum by incorporating the arguments of the *Agard* plaintiffs that this Court has already denied. Specifically, they argue that: (1) PTO 29 should be stayed or not enforced because Merck already has the information it needs to value plaintiffs' claims and because no trial date has been set; and (2) Judge Fallon should recuse himself. (*See* Pls.' Opp'n at 18-21.) Neither of these arguments has merit.

***First,*** plaintiffs contend that noncompliance should be excused because Merck does not need the discovery provided by PTO 29 and because no trial date has been set. This argument misses the point. Both PTOs 28 and 29 will serve to streamline the litigation by requiring litigants to demonstrate a good-faith basis for their claims against Merck. As the Court has already observed, "it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury." Oldfather Order, 2008 U.S. Dist. LEXIS 94092, at *8. While discovery is also important to provide the Court and Merck with notice of the proof supporting plaintiffs' claims and to set cases for trial, these are not the sole ends of PTOs 28 and 29. In any event, this argument simply rehashes the objections already made by attorney Benjamin on behalf of the *Agard* plaintiffs that the case-specific expert report requirement should not be enforced. It should thus be rejected.

***Second,*** plaintiffs move Judge Fallon to recuse himself.  It is unclear whether the motion is for him to step down from the MDL in its entirety, or only as to these plaintiffs.  Either way, the Court has already determined that there is no basis for recusal, and rightly so.  Plaintiffs assert that recusal is nonetheless warranted because the Court's impartiality will not be apparent to laypersons, who will not "be able to sort out the different standards to be applied to the identical language in the MSA and in the definitions portion of PTO 28."  (Pls.' Opp'n at 21.)  This argument is baseless.  What matters is whether laypersons would have any reason to believe that the Court could not conduct its business impartially in light of the alleged conflict, and plaintiffs have articulated no such reason.  As the Court has explained, there is no risk of that here because:

> [The] Court played no role in drafting the private settlement agreement reached by the parties; the Court has taken no position as to what types of claims should or should not have been included in the settlement; and, finally, the Court has consistently stated that it neither encourages nor discourages participation in the settlement.

(December 10 Order at 6.)  In other words, it has no stake in the outcome of ***any*** claims, whether in or out of the settlement.  The motion for recusal should thus be denied.

## CONCLUSION

The Benjamin firm has been aware of the discovery requirements set forth in PTOs 28 and 29 for more than a year.  Rather than complying with these requirements, the firm has persisted in opposing them, repeatedly presenting the same arguments to this Court.  The Court is witnessing the exact same pattern of behavior that the Benjamin firm has followed in other proceedings.  *See In re Diet Drugs Prods. Liab. Litig.*, 30 F. App'x 27, 28-29 (3d Cir. 2002) ("In short, counsel had numerous opportunities to comply with the District Court's long-standing discovery order, yet stubbornly clung to his argument

17

that he should not have to [do so].").  Enough is enough.  It is clear that attorney Benjamin has no plans to comply with this Court's *Lone Pine* orders until he is forced by some sanction to do so.  For the foregoing reasons, Merck's motion should be granted.

                Respectfully submitted,

                */s/ Dorothy H. Wimberly*
                Phillip A. Wittmann, 13625
                Dorothy H. Wimberly, 18509
                STONE PIGMAN WALTHER
                WITTMANN L.L.C.
                546 Carondelet Street
                New Orleans, LA 70130

                **DEFENDANT'S LIAISON COUNSEL**

                And

                Douglas R. Marvin
                WILLIAMS & CONNOLLY LLP
                725 Twelfth St., N.W.
                Washington, DC 20005

                John H. Beisner
                Jessica Davidson Miller
                O'MELVENY & MYERS LLP
                1625 Eye Street, NW
                Washington, DC 20006

                **Attorneys for Merck & Co., Inc.**

960581v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 7th day of January, 2009.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

960581v.1