UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX | *   MDL No. 1657 |
|     Products Liability Litigation | * |
| | *   SECTION L |
| This Document Relates to: | * |
| | *   JUDGE ELDON E. FALLON |
| *Certain Cases on attached Exhibits A & B* | * |
| | *   MAGISTRATE JUDGE |
| | *   KNOWLES |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT MERCK & CO., INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR FAILURE TO COMPLY WITH THE *LONE PINE* REQUIREMENTS OF PTO 28[1]

Defendant Merck & Co., Inc. ("Merck") respectfully submits this reply

memorandum in support of its motion to dismiss plaintiffs' claims for failure to comply

with the *Lone Pine* requirements set forth in PTO 28.[2]

### BACKGROUND

Plaintiffs' combined opposition brief and cross motion represents the latest

chapter in an ongoing attempt by the Law Office of Ronald R. Benjamin to avoid the

requirements of discovery orders governing the claims of nonsettling Vioxx plaintiffs.

This story began in December 2007, less than a month after the settlement was

announced and PTO 28 was entered, when a group of plaintiffs represented by Mr.

Benjamin ("the *Agard* plaintiffs") filed a notice of appeal.  (*See* Notice of Appeal at 1,

---

[1]     On December 31, 2008, plaintiffs filed two opposition briefs in response to Merck's motion to dismiss.  The first addressed the claims of plaintiffs whose cases were pending in the MDL on November 9, 2007, and who are subject to Pre-Trial Order 28 ("PTO 28").  The second addressed plaintiffs who joined the MDL after that date, and are subject to the substantively identical requirements of Pre-Trial Order 29. This reply addresses the first set of plaintiffs.

[2]     Merck's motion addressed 39 plaintiffs subject to PTO 28.  Plaintiffs have now submitted expert reports in 13 of those cases, and Merck therefore withdraws its motion as to those 13 plaintiffs:  Scott Berthel, Matthew Cavallo, Richard F. Core, Marjorie Curtis, James Demoski, Edward Henderson, Kristina Hia, Mary Kurtz, Wilson Lord, Ann M. Mannino, Arthur Pratt, Maurice Hoyt, and Viola Santacrose.

Doc. 13,075, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Dec. 10, 2007).)
Because neither the settlement nor PTO 28 was a final judgment, and because no other
basis for an appeal existed, Merck moved the Court of Appeals to dismiss the appeal.
(*See* Mot. to Dismiss for Lack of Appellate Jurisdiction, *Agard v. Merck & Co., Inc.*, No.
07-31164 (5th Cir. Jan. 10, 2008).)  The *Agard* plaintiffs opposed the motion, arguing,
among other things, that the demands set forth in PTO 28 were unduly burdensome.  (*See*
Appellants' Opp'n to Separate Mots. of Appellee Merck & Co., and Pls.' Steering
Comm. Seeking to Dismiss the Instant Appeal of PTO 28 Entered in Aid of a "Master
Settlement Agreement" Between the Movants in the Multi-District Prod. Liab. Litig.
Below at 3, *Agard v. Merck & Co., Inc.*, No. 07-31164 (5th Cir. Jan. 28, 2008).)[3]

Shortly thereafter, counsel for certain plaintiffs in Kentucky and Indiana ("the
Oldfather plaintiffs") filed a motion requesting modification or suspension of PTO 28,
complaining that its requirements were premature and unfairly burdensome.  (*See* Certain
Pls.' and Their Counsel's Emergency Mot. for Modification and/or Suspension of Pretrial
Order No. 28 and Request for Expedited Telephonic Hr'g at 3, Doc. 14,157, *In re Vioxx
Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Apr. 17, 2008) (arguing that PTO 28
required too much discovery in too short a time period, a task that was "impossible" and
would "prevent any case ineligible for the Resolution Program from being prosecuted").)
This Court rejected the Oldfather plaintiffs' arguments, explaining that *Lone Pine* orders
like PTO 28 are a recognized and appropriate means "to identify and cull potentially
meritless claims and streamline litigation."  *See In re Vioxx Prods. Liab. Litig.*, No. 2:05-
cv-1657, 2008 U.S. Dist. LEXIS 94092, at *5 (E.D. La. May 30, 2008) ("Oldfather

---

[3]      The Fifth Circuit dismissed the appeal without an opinion.  (*See* Order at 2, *Agard v. Merck & Co.,
Inc.*, No. 07-31164 (5th Cir. Mar. 28, 2008) (per curiam).)

960596v.1

Order") (citation and internal quotation marks omitted).  In the Court's words: "it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury." *Id.* at *8.  The Court nonetheless extended the deadlines for PTO 28 "to ensure that all Plaintiffs have a fair opportunity to comply with this provision of PTO 28." *Id.* at *9.

One month later – and the day before each of their PTO 28 filings was due under the extended deadline – the *Agard* plaintiffs[4] filed a motion making substantially the same arguments as the Oldfather plaintiffs in opposition to PTO 28.  They sought yet another extension – until September 30, 2008 for plaintiffs with last names beginning with letters A through L, and until October 31, 2008 for plaintiffs with last names beginning with letters M through Z – as well as to eliminate the case-specific expert requirement of PTO 28.  (*See* Pls.' Mot. to Vacate or Modify the Master Settlement Agreement, and Pre-Trial Order No. 28, and to Extend Time to Submit Expert Certificate of Causation and/or to Preclude Merck from Using the Expert Certificate of Causation and From Using to Cross-Examine Experts at Trial at 2, Doc. 14,938-2, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. June 30, 2008).)  They also argued that Judge Fallon's roles as settlement administrator and as coordinating judge of the MDL proceeding created an incurable conflict of interest, requiring Judge Fallon to resign as settlement administrator.  (*Id.* at 2-3.)  Merck opposed, noting that the Court had rejected identical arguments raised by the Oldfather plaintiffs and that there was no other reason to extend the deadlines, to modify the other requirements of PTO 28, or for Judge Fallon to resign as administrator of the settlement.  (*See* Def. Merck & Co., Inc.'s Corrected

---

[4]   This second *Agard* filing was brought on behalf of the original *Agard* plaintiffs and several others.

960596v.1

Opp'n to Pls.' Mot. for the Court's Resignation as Chief Administrator of the Master

Settlement Agreement, Etc. at 1, 17, Doc. 15,907, *In re Vioxx Prods. Liab. Litig.*, MDL

No. 1657 (E.D. La. Sept. 16, 2008).)

On November 5 – five days *after* the latest of the extended deadlines proposed in

the motion by the *Agard* plaintiffs for compliance with PTO 28 – Mr. Benjamin

submitted a request for a pre-motion conference "for the purpose of staying further

motions by Merck for noncompliance with PTO 28," citing the pending *Agard* motion as

grounds for the proposed stay.  (*See* Ltr. from R. Benjamin to Hon. Eldon E. Fallon at 1,

Nov. 5, 2008 (attached as Ex. J to Opp'n & Cross-Mot.).)

On December 10, the Court denied the *Agard* motion in its entirety, relying on its

reasoning in the Oldfather Order that PTO 28 is a standard *Lone Pine* order designed to

streamline mass litigation.  (*See* Order & Reasons at 8-9, Doc. 17,394, *In re Vioxx Prods.

Liab. Litig.*, MDL No. 1657 (E.D. La. Dec. 10, 2008) ("December 10 Order").)  The

Court described the *Agard* plaintiffs' complaint regarding the ostensible burdensomeness

of PTO 28 as "simply not credible."  (*Id.* at 9.)  The Court also ruled that Judge Fallon

need not resign as administrator of the settlement because "[t]he facts of the instant case

do not warrant recusal."  (*Id.* at 6.)

## ARGUMENT

Plaintiffs argue that their failure to comply with PTO 28 should not result in

dismissal of their claims for several reasons.  Each is meritless.

*First,* plaintiffs argue that dismissal with prejudice is too great a sanction, citing a

number of alternative grounds, including the existence of claims that do not require

expert evidence, their supposed partial compliance with PTO 28, and the formerly-

4

960596v.1

pending *Agard* ruling.  None of these claims has any merit.  By now it cannot be doubted that plaintiffs' counsel knows precisely what is required in terms of discovery under PTO 28.  None of the explanations offered by plaintiffs for failing to comply with these requirements warrants any lesser sanction than dismissal with prejudice.

*Second,* plaintiffs make a variety of substantive complaints about PTO 28, essentially repeating the arguments of the *Agard* plaintiffs, protesting the order's preservation requirements, and moving the Court to recuse itself from these proceedings.  These requests are baseless and must be denied.

I.     **PLAINTIFFS DO NOT HAVE "GOOD CAUSE" FOR THEIR FAILURE TO COMPLY WITH PTO 28.**

Plaintiffs contend that Merck's motion to dismiss is inappropriate because there are a "number of grounds on which this Court should find" that they have "good cause" for not complying with PTO 28.  (Pls.' Opp'n at 11.)  Specifically, plaintiffs argue that: (1) a number of the plaintiffs at issue are not required to submit a case-specific expert report; (2) plaintiffs have provided some of the discovery required by PTO 28 in this and other courts and therefore it is irrelevant that they have not yet submitted case-specific expert reports; and (3) plaintiffs' delay in complying with the order is excused because they have been challenging the validity of the order.  None of these arguments has merit.

Each of the plaintiffs at issue in Merck's motion to dismiss was required to comply with the terms of PTO 28 *in full* by prescribed deadlines that have already been extended once by this Court in response to challenges to the Order.  Because plaintiffs have admittedly failed to provide the most important piece of discovery required by the Order – *i.e.,* case-specific expert reports substantiating their claims – their claims are subject to dismissal with prejudice.

960596v.1

### A.    Plaintiffs' Suggestion That Certain Plaintiffs Are Not Required To Provide Case-Specific Expert Reports Is Baseless.

Plaintiffs' suggestion that certain plaintiffs should be excused from complying with PTO 28 because they are deceased or because they allege claims for emotional distress (*see* Pls.' Opp'n at 10-11, 12-13) has no basis.

*First*, the fact that four of the plaintiffs at issue in Merck's motion – Marjorie Connolly, Ronald O'Connor, Sheila Smith, and William Patrick – are deceased does not affect plaintiffs' responsibility to file case-specific expert reports on their behalf.  PTO 28 applies equally to all Vioxx plaintiffs in the MDL who have not entered the Resolution Program – regardless of whether they are living or deceased.  Section II.A of PTO 28 provides that all "Plaintiffs or Claimants who claim to have suffered an injury as a result of taking Vioxx must produce" several categories of information in order to proceed with their claims, including a "Rule 26(a)(2) case-specific from a medical expert attesting (i) to a reasonable degree of medical probability that the Plaintiff or Claimant suffered an injury and (ii) that Vioxx caused the injury." (*See* PTO 28 ¶ II.A.8.)  Thus, the simple fact that "Suggestions of Death" have been filed for four of the plaintiffs here does not satisfy all discovery obligations with regard to these plaintiffs.  Instead, in order to continue to pursue these claims, counsel for these plaintiffs were required to fulfill all of the other discovery requirements set forth in PTO 28 – including the submission of case-specific expert reports.  Plaintiffs do not dispute that they failed to do so.  Nor have they provided any rationale as to why it was impossible to identify case-specific experts for deceased plaintiffs.  As a result, these plaintiffs' claims are subject to dismissal.

*Second*, plaintiffs argue that some of the plaintiffs at issue seek damages for emotional or other intangible injuries, which do not require a showing that the plaintiff

6

960596v.1

was physically injured as a result of the defendant's conduct.  (*See* Pls.' Opp'n at 12.)
But this argument is disingenuous.  Even if plaintiffs were correct that ***emotional distress***
claims never require expert evidence, it does not mean that plaintiffs are excused from
identifying experts with regard to their other causes of action.  Each of the plaintiffs at
issue in Merck's motion to dismiss alleged some claim of personal injury as a result of
taking Vioxx.  The fact that some plaintiffs may also assert claims for emotional distress
does not diminish their obligation under PTO 28 to provide expert evidence linking their
alleged physical injuries to use of Vioxx.

### B.      Plaintiffs' Supposed "Substantial Compliance" With PTO 28 Does Not Make Dismissal Inappropriate.

Plaintiffs' "substantial compliance" argument also fails.  (*See id.* at 13.)  Plaintiffs
do not dispute that some of the plaintiffs at issue in Merck's motion have not provided
any of the discovery required under PTO 28.  However, plaintiffs claim that the fact that
some other plaintiffs "have provided at least one of the items set forth in the discovery
requirements" of PTO 28 makes it inappropriate for the Court to dismiss their claims
outright.  (*Id.*)  According to plaintiffs, PTO 28 "does not state that dismissal is
automatic" for failure to comply with the Order.  (*Id*. at 14.)[5]  As a result, plaintiffs
suggest that their "substantial compliance" with the Order entitles them to yet another
extension of the deadline to provide complete discovery responses.  Not so.

_____

[5]      Plaintiffs also object to Merck's motion on the ground that PTO 28 does not "allow a non-individualized show cause motion by Merck" and Merck was thus required to file separate "motion[s] against each plaintiff" so that they may cure any deficiency.  (Pls.' Opp'n at 15.)  As set forth in Merck's opening motion, Merck's counsel notified the counsel of record in each of the cases at issue that their clients' discovery responses were materially deficient in that they had not submitted case-specific expert reports and, in some cases, other required discovery.  (Merck's Mot. at 2.)  Plaintiffs' counsel failed to cure the deficiency in any of the cases.  Moreover, Merck's motion to dismiss specifically identified each of the plaintiffs whose discovery responses are insufficient and identified what specific required information each plaintiff had not yet provided.  (*See id*. Ex. A & B.)  Thus, Merck has not – as plaintiffs suggest – filed a

960596v.1

PTO 28 does, in fact, provide that dismissal is appropriate where a plaintiff has failed to provide *all* of the information required – even if some discovery has been produced. As set forth in Merck's opening motion, PTO 28 explicitly provides that "Plaintiffs or Claimants who fail to *fully comply* with the requirements of" the Order shall be given notice of the deficiency and given 30 days to cure, and that "*no other extensions will be granted*, except for good cause shown." (PTO 28 § II.D (emphases added).)[6] If the deficiency is not cured within 30 days, Merck is to file a motion to show cause why the claim should not be dismissed with prejudice; if plaintiffs do not respond to the motion with facts establishing good cause for the deficiency, dismissal with prejudice is warranted. (*Id.*) Nowhere in PTO 28 is it suggested that dismissal is inappropriate where plaintiffs have partially, or even substantially, complied with the Order's requirements. Nor would such a rule make sense. If the Court had intended that plaintiffs need only "substantially comply" with PTO 28's discovery requirements within the prescribed time period, it would not have expressly allowed for dismissal of claims of plaintiffs "who fail to fully comply" with those requirements. In addition, if plaintiffs are correct that dismissal is not appropriate where some – but not all – discovery has been produced, then plaintiffs could extend the discovery deadline indefinitely by producing some small amount of information (like a Plaintiff Profile Form or "Suggestion of Death") within the allotted period but refusing to turn over discovery essential to

---

blanket objection to plaintiffs' discovery responses or robbed plaintiffs of the ability to defend their discovery responses.

[6]    Plaintiffs' cross-motion "for an extension of time to provide a case-specific report within a reasonable period of time after this Court resolves the issues they raise in this opposition" (Pls.' Opp'n at 3) does not provide good cause for their failure to comply with PTO 28. Plaintiffs should not be allowed to ignore this Court's Order outright (after it has already been deemed valid in response to challenges by other plaintiffs), wait for Merck to move to show cause, claim in their opposition that the Order is defective, and then argue that their failure to comply should be excused while the Court *once again* addresses the validity of the Order.

960596v.1

identifying which claims lack any factual basis, such as medical records or expert reports. Such a result would be antithetical to the Court's stated purpose in adopting the PTO: "to identify and cull potentially meritless claims and streamline litigation." (*See* December 10 Order at 8.)

Moreover, even if plaintiffs were correct that "substantial compliance" with PTO 28 renders dismissal inappropriate – which they are not – plaintiffs here have not "substantially complied" with the Order because they have not produced the central element of PTO 28: case-specific expert reports. As set forth above, the parties have spent substantial time and resources addressing the issue of whether case-specific expert reports are necessary and/or appropriate discovery in this litigation. And every time the Court has been faced with the question, it has made clear that such expert reports are essential to move the remaining Vioxx claims towards an efficient resolution. According to the Court, "at this advanced stage of the litigation, it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury, whether that injury be deep vein thrombosis, a heart attack, an ulcer or some other malady." Oldfather Order, 2008 U.S. Dist. LEXIS 94092, at *8. For this reason, the Court imposed the requirement in PTO 28 that each plaintiff "make a minimal showing consistent with Rule 26 that there is some kind of scientific basis that Vioxx could cause the alleged injury" by producing an expert report. *Id.* at *9.

It is well recognized that where – as here – plaintiffs refuse to comply with case management orders designed to test the merit of their allegations, dismissal with prejudice is appropriate. *See In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1235 (9th Cir. 2006). In *In re PPA*, the MDL court issued a case management

960596v.1

order requiring plaintiffs to submit fact sheets laying out the factual basis for their claims and subsequently dismissed the claims of those plaintiffs who failed to produce the fact sheets.  On appeal, the Ninth Circuit affirmed, rejecting plaintiffs' arguments that the discovery deadlines were unduly burdensome and that some plaintiffs had partially complied with the order.  *Id*. at 1234.  According to the court, "dismissal serves . . . the court's need to manage the docket when a plaintiff's noncompliance has caused the action to come to a halt, thereby allowing the plaintiff, rather than the court, to control the pace of the docket."  *Id*.  Moreover, the court recognized that while a motion to dismiss should typically be granted on the merits, plaintiffs' unwillingness to provide "information that only they possessed regarding the critical elements of their claims" made it "impossible to dispose of the case on the merits."  *Id*.  Specifically, the court noted that "in a proceeding such as this, where the plaintiffs themselves prevent their cases from moving forward" by failing to provide information regarding the factual basis for their claims, dismissal is the only real option.  *Id*.

The same is true here.  As this Court's prior rulings make clear, case-specific expert reports are essential to test the validity of plaintiffs' claims in this litigation. Accordingly, plaintiffs who have not provided this key information have not "substantially complied" with the Order.  For this reason too, Merck's motion should be granted.

C.     **Plaintiffs' Continued Challenges To PTO 28 Do Not Excuse Their Failure To Comply With The Order.**

Plaintiffs also claim that their failure to produce case-specific reports should be excused because plaintiffs in the *Agard* case – who are represented by the same counsel as the plaintiffs at issue here – have been challenging the validity of PTO 28 since July

960596v.1

2008.  (Pls.' Opp'n at 16.)  According to plaintiffs, the outcome of that action "might have led to revising the case-specific expert report requirement." (*Id.*)  Plaintiffs have it precisely backwards.  The fact that plaintiffs and their counsel continue to delay their compliance with PTO 28 after launching numerous challenges to the order and its provisions further supports dismissal of their claims.

Dismissal with prejudice is appropriate where there is a "clear record of delay or contumacious conduct" by plaintiff, and when "lesser sanctions would not serve the best interests of justice." *Callip v. Harris County Child Welfare Dep't*, 757 F.2d 1513, 1519 (5th Cir. 1985).  Dismissal is especially warranted where, as here, plaintiffs have continuously refused to comply with a case management order and have previously been given – and missed – extensions on the deadline for compliance with that order. *See, e.g.*, *Berry v. Warner*, No. 08-60153, 2008 U.S. App. LEXIS 18590, at *7 (5th Cir. Aug. 26, 2008) (upholding dismissal with prejudice where "the district court considered and in fact implemented less drastic alternative sanctions than dismissal when it afforded [plaintiffs] repeated opportunities to comply with its order, each time advising them of the consequence if they failed to meet the [] deadline"); *Bluitt v. Arco Chem. Co.*, 777 F.2d 188, 189 (5th Cir. 1985) (affirming lower court's finding that "a sanction less harsh than dismissal would be of no avail because previous orders had been disregarded"); *In re PPA*, 460 F.3d at 1234 (upholding dismissal of product liability claims for failure to comply with discovery order where plaintiffs had been given several warnings that their discovery responses were deficient and the trial court had "provided second and third chances following procedural defaults" with no results).

11

960596v.1

For example, in *Berry*, the district court entered a case management order requiring plaintiffs – who alleged they were exposed to toxins from the defendant's chemical plant – to submit individual expert affidavits demonstrating that their injuries in fact resulted from exposure to those toxins. The court extended its deadline multiple times after plaintiffs complained that they could not comply with the court's original timeline. *See Berry*, 2008 U.S. App. LEXIS 18590, at \*4-6. The Fifth Circuit affirmed the court's eventual dismissal with prejudice, stressing that "the district court considered and in fact implemented less drastic alternative sanctions than dismissal when it afforded [plaintiffs] repeated opportunities to comply with its order, each time advising them of the consequence if they failed to meet the respective deadline." *Id.* at \*7-8. The court also emphasized that because plaintiffs failed to submit the required affidavits, they "had not produced any evidence of causation, an essential element of their claims." *Id.* at \*9. As a result, the court determined that dismissal of the action was an appropriate sanction.

The same is true here. Plaintiffs have been repeatedly warned that they cannot proceed with their claims absent the production of case-specific expert reports. Both plaintiffs in the *Agard* action – who are represented by the same counsel as the plaintiffs in this case – and plaintiffs with different counsel have sought to modify PTO 28 to exclude the expert report requirement. While the Court has repeatedly refused to do so, it has extended the deadlines for providing case-specific expert reports in certain cases "to ensure that all Plaintiffs have a fair opportunity to comply with this provision." Oldfather Order, 2008 U.S. Dist. LEXIS 94092, at \*9. Nonetheless, despite multiple orders by this Court explaining the importance of case-specific expert reports and allowing extensions

12

960596v.1

of time to complete such discovery, plaintiffs still refuse to produce the requested information.  For this reason too, dismissal is warranted.

## II.    PLAINTIFFS' RECUSAL REQUEST AND CONTINUED OBJECTIONS TO THE REQUIREMENTS OF PTO 28 ARE MERITLESS.

Plaintiffs conclude their memorandum with an assortment of complaints about PTO 28's requirements, including arguments that this Court has already denied in response to the *Agard* and Oldfather plaintiffs' motions.  Specifically, they argue that: (1) PTO 28 should be stayed because Merck already has the information it needs to value plaintiffs' claims; (2) the order's preservation requirements are objectionable; and (3) Judge Fallon should recuse himself.  None of these arguments has merit.

### A.    Plaintiffs' Noncompliance With PTO 28 Should Not Be Excused.

Plaintiffs contend that their noncompliance should be excused because Merck does not need the discovery provided by PTO 28.  (*See* Pls.' Opp'n at 17.)  This argument misses the point.  PTO 28 will streamline the litigation by requiring litigants to demonstrate a good-faith basis for their claims against Merck.  As the Court has already observed, "it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury."  Oldfather Order, 2008 U.S. Dist. LEXIS 94092, at *8.  While discovery is also important to provide the Court and Merck with notice of the proof supporting plaintiffs' claims and to set cases for trial, these are not the sole ends of PTO 28.  In any event, this argument simply rehashes the objections already made by attorney Benjamin on behalf of the *Agard* plaintiffs – and already rejected by this Court – that the case-specific expert report requirement should not be enforced.  It should thus be rejected.

13

**B.**     **Plaintiffs' Objections to PTO 28's Preservation Requirements Are Baseless.**

Plaintiffs appear to make two arguments in objection to PTO 28's preservation requirements:  (1) that a court can only issue a preservation order under certain circumstances not satisfied here; and (2) that state law governs any duty to preserve records.  (*See* Pls.' Opp'n at 20-22.)  Neither argument has merit.

*First*, plaintiffs argue that a preservation order can only be entered if a three-factor test is satisfied.  (Pls.' Opp'n at 19-20.)  There is no support for this contention.  It is firmly established that district courts possess significant discretion to manage discovery, which includes the authority to enter preservation orders.  *See* Fed. R. Civ. P. 26, Notes of Advisory Comm. on 2006 amends. (discussing issuance of orders to preserve evidence under Rule 26).  That discretion is substantially enhanced in the context of complex litigation.  *See, e.g.*, *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (court in mass tort case had discretion to manage "complex and potentially very burdensome discovery"); *Munoz v. Orr*, 200 F.3d 291, 305 (5th Cir. 2000) (district court's "broad discretion is particularly important in complex litigation").  This power extends to the entry of a preservation order, without input by the parties, if the trial court deems it necessary.  *See* MANUAL FOR COMPLEX LITIGATION (4th) § 40.25 (noting in a form interim preservation order that if "the court determines that . . . a conference is unnecessary or undesirable," it has the power to enter a "stand-alone preservation order"); *see also Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 136 (2004) ("Contrary to defendant's importunings, this court plainly has the authority to issue such orders.").

14

960596v.1

The cases upon which plaintiffs rely do not suggest otherwise.  Neither of plaintiffs' cases arose in the mass-tort context.  Indeed, in one of plaintiffs' cases, the court expressly distinguished the dispute at issue from complex litigation and acknowledged the distinct "need for preservation orders in complex litigation." *Capricorn Power Co. v. Siemans Westinghouse Power Corp.*, 220 F.R.D. 429, 434 n.2 (W.D. Pa. 2004) (cited by Pls.' Opp'n at 19).  Moreover, both *Capricorn Power* and plaintiffs' other purported authority, *Treppel v. Biovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006) (cited by Pls.' Opp'n at 20), involved orders governing the preservation of the parties' own documents, whereas PTO 28 addresses the preservation of documents by third parties who would otherwise be unaware that documents in their possession are essential to these proceedings.

In any event, the minor burden imposed by the preservation requirements of PTO 28 is amply justified in light of their purpose.  Plaintiffs are required to ensure the preservation of documents that are ***essential*** to proving that they used Vioxx.  Even participants in the settlement program have to prove their use through such documents in order to be eligible.  (*See* Master Settlement Agreement § 2.2.2 (explaining that "evidence of VIOXX usage shall be determined in accordance with the criteria set forth in Exhibit 2.2.2"); *id.* Ex. 2.2.2 (indicating that "evidence of such Vioxx usage must be established" through, among other things, pharmacy and medical records).)  And such evidence would plainly be indispensible at trial.  Thus, preserving this essential evidence benefits all parties, and outweighs the cost of doing so – *i.e.*, sending a single piece of registered mail.

960596v.1

***Second***, plaintiffs' argument that a duty to preserve is "substantive and that as such state law governs" (*see* Pls.' Opp'n at 20) misreads the law.  As set forth above, federal courts have the authority – and wide discretion – to apply federal rules of discovery, including issuing preservation orders.  There is simply no support for the notion that state law could trump federal discovery rules.  The single case plaintiffs cite is not to the contrary.  Indeed, plaintiffs themselves concede that *State Farm Casualty & Fire Insurance Co. v. Frigidaire*, 146 F.R.D. 160 (N.D. Ill. 1992) (cited by Pls.' Opp'n at 20), dealt with a state-law ***pre-suit*** duty to preserve evidence.  The court in that case ruled under the *Erie* doctrine that, in the absence of any federal rule on point, the state-law duty was "substantive" and therefore applied in federal court in a diversity case.  Plaintiffs argue that this reasoning should extend to "post-suit" preservation, and that New York law should thus govern preservation, but their own case disagrees.  *Id.* at 162 (stressing that the ruling turned on the fact that the federal rules of civil procedure do not govern pre-suit preservation duties).  Accordingly, plaintiffs' argument that state law must govern preservation obligations is wrong and should be rejected.

### C.      No Basis for Recusal Exists.

Finally, plaintiffs move Judge Fallon to recuse himself.  (*See* Pls.' Opp'n at 21-23.)  It is unclear whether the motion requests that Judge Fallon step down from the MDL in its entirety, or only as to these plaintiffs.  Either way, the Court has already determined that there is no basis for recusal, and rightly so.  Plaintiffs assert that recusal is nonetheless warranted because the Court's impartiality will not be apparent to laypersons, who will allegedly doubt whether the Court can fairly decide who is eligible for settlement and who is not.  (*See id.* at 21 (arguing that laypersons will not be "able to grasp" distinctions between the language of the Master Settlement Agreement and

16

definitions portion of PTO 28, and "would harbor doubts about the Court's impartiality" in deciding who is eligible for settlement and who must comply with the requirements of PTO 28).) This argument is baseless. What matters is whether laypersons would have any reason to believe that the Court could not conduct its business impartially in light of the alleged conflict, and plaintiffs have articulated no such reason. As the Court has explained, there is no risk of that here because:

> [The] Court played no role in drafting the private settlement agreement reached by the parties; the Court has taken no position as to what types of claims should or should not have been included in the settlement; and, finally, the Court has consistently stated that it neither encourages nor discourages participation in the settlement.

(December 10 Order at 6.) In other words, it has no stake in the outcome of *any* claims, whether in or out of the settlement. The motion for recusal should thus be denied.

## CONCLUSION

The Benjamin firm has been aware of the discovery requirements set forth in PTO 28 for more than a year. Rather than comply with these requirements, the firm has persisted in opposing them, repeatedly presenting the same arguments to this Court. The Court is witnessing the exact same pattern of behavior that the Benjamin firm has followed in other proceedings. *See In re Diet Drugs Prods. Liab. Litig.*, 30 F. App'x 27, 28-29 (3d Cir. 2002) ("In short, counsel had numerous opportunities to comply with the District Court's long-standing discovery order, yet stubbornly clung to his argument that he should not have to [do so]."). Enough is enough. It is clear that attorney Benjamin has no plans to comply with this Court's *Lone Pine* orders until he is forced by some sanction to do so. For the foregoing reasons, Merck's motion should be granted.

17

Respectfully submitted,


/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

**DEFENDANT'S LIAISON
COUNSEL**

And

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

**Attorneys for Merck & Co., Inc.**

18

960596v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 7th day of January, 2009.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

960596v.1