UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION : | |
| : | SECTION L |
| : | |
| This document relates to ALL ACTIONS : | JUDGE FALLON |
| : | MAG. JUDGE KNOWLES |
| : | |

### AFFIDAVIT OF PHILIP A. GARRETT, C.P.A.

STATE OF LOUISIANA         :
                                              :   SS
PARISH OF ORLEANS         :

Philip A. Garrett, being duly sworn according to law deposes and says:

1.  I am a certified public accountant. For over 35 years I have been associated with the public accounting firm of Wegman Dazet & Company (WDC). A copy of my curriculum vitae summarizing my training and experience in the field of public accounting is attached to this report and affidavit as Exhibit "1."

2.  Pretrial Order No. 6 required that members of the Plaintiffs' Steering Committee (PSC) in MDL 1657, and other attorneys working at their direction report their time and expenses on a monthly periodic basis in accordance with the requirements of that order.

3.  Pretrial Order No. 6 approved my retention and the retention of WDC to assist and provide accounting services to the Plaintiffs' Liaison Counsel, the PSC and the Court in MDL No. 1657, as follows:

> Plaintiff's Liaison Counsel has retained and the Court approves the retention of Philip Garrett, CPA, of the accounting firm of

Wegmann-Dazet to assist and provide accounting services to Plaintiffs' Liaison Counsel, the Plaintiff's Steering Committee, and the Court in the MDL 1657. Wegmann-Dazet will be assisting in compiling submissions and will provide reports to Plaintiff's Liaison Counsel who shall file them with the Court on a monthly basis. These reports will include both time and expenses and will summarize, with back-up detail, the submissions of all firms. Submission of time and expense records to Wegmann-Dazet and the Court shall be considered as if filed under seal.

4. In connection with this assignment WDC, under my supervision, reviewed the time and expense records of those counsel in MDL 1657 who submitted such records and who, I am advised, will petition the Court for an award of fees and costs for "common benefit" services in the Vioxx Litigation.

5. During the period from April 8, 2005 through today, my work as the Court-appointed "accountant" primarily involved a review of these time and expense reports to determine whether they complied with the dictates of PTO No. 6. Where it was determined that a submission of time and expense was not in compliance with PTO No. 6, or the procedures established by Plaintiffs' Liaison Counsel, the submitting law firm was advised of this determination and given an opportunity to correct it. I routinely kept the Court advised of my ongoing activities.

6. On April 10, 2008, the Court entered Pretrial Order No. 6C. This order was directed to the law firm members of the Negotiating Plaintiffs' Counsel (NPC) and common benefit counsel representing plaintiffs in state court Vioxx matters who contemplated seeking an award of counsel fees and reimbursement of litigation expenses from the proceeds of the Settlement Agreement with Merck & Co., Inc., other than those in MDL 1657 who were already subject to PTO No. 6. PTO No. 6C required that these additional persons report their time and

2

expenses to myself and to Plaintiffs' Liaison Counsel no later than May 30, 2008, in accordance with the procedures of PTO No. 6. This Order permitted common benefit counsel in state court Vioxx matters to submit reconstructed time records of their Vioxx-related common benefit work based upon good faith estimates of their services in an attempt to create contemporaneously kept time records for these counsel. The order also directed that I review those submissions in accordance with the requirements of PTO No. 6 and the procedures established by Plaintiffs' Liaison Counsel.

7. Collectively these orders established a procedure for reviewing all submissions of time and expense. As part of my duties to assist in compiling submissions and making reports, among other things, I disallowed from inclusion in these submissions the following items:

    a.    Any submission or report of professional time and expense in which the hours of service were not properly coded in accordance with Pretrial Order No. 6;

    b.    Any item of expense for which proper receipts or other proof of payment has not been submitted;

    c.    Any item of time or expense which was incurred in connection with the litigation of any individual case or group of individual cases involving a person or persons who used Vioxx, unless counsel was authorized by a member of the PSC or NPC to perform such work primarily for the common benefit of Vioxx litigants in MDL No. 1657 and the state litigation with which it is coordinated.

8. Any items of time and expense that were disallowed are reported to the Court in the regular monthly reports provided by WDC. Under PTO Nos. 6 & 6C, my determination as to whether to disallow any item of time and expense from inclusion in allowed time or expenses

3

was a matter of procedural convenience for the Court and not a determination on the merits. I made no subjective judgment regarding the value of any time allowed and attempted to judge solely upon objective criteria. Both orders made it clear that a disallowance by me was without prejudice to a determination by the Court of the merits of any submission at a time and manner determined by the Court.

9. Ultimately, I reviewed submissions of time and expense from 109 separate law firms who claimed to participate in common benefit time and costs.

10. The review process has been ongoing since May 2005 and required the expenditure of 6,880.7 hours of professional accounting time by myself and the members of my staff through December 31, 2008. Billings for this professional time are $716,025.41.

11. The protocol which I observed in reviewing the time and expense submissions of the common benefit counsel consisted of three segments.

    a. Initially, we reviewed each submission to determine if it complied with the form requirements of PTO No. 6. Among other things, this examination focused on whether the Fee Applicant reported time according to the guidelines of PTO No.6, whether appropriate time records were included with the submission, whether the position (e.g., partner, associate, paraprofessional or investigator) of each timekeeper was disclosed, whether the reported time was properly categorized in accordance with the requirements of PTO No. 6, and whether the Fee Applicant attached records documenting its claimed expenses. If we discovered deficiencies in compliance with the procedural requirements of PTO No. 6, they were brought to the attention of the common benefit counsel by means of a suitably completed form letter(s).

    b. Once we received a time or expense record that was in proper form, we examined the submission substantively to determine if there were circumstances present which would require us to disallow items of time and expense from inclusion under the terms of PTO No. 6. If we determined that there were such items, we transmitted a letter to the common benefit counsel conditionally disallowing the inclusion of that

4

        counsel's time and expenses. In the conditional disallowance letters, we clearly advised the applicant of each type of item contained in the submission which was subject to disallowance. Typically, we provided illustrations of each such item from the counsel's time and expense records. The letters provided a period of time for the counsel to correct the deficiencies in its submission insofar as it was able to truthfully do so. In most of these cases, we ultimately issued a letter approving the counsel's revised submission of time and expense. In some of these cases, however, we were required to disallow specific line items of time and/or expense and an appropriate letter issued.

    c.    After the above outlined process, we checked the arithmetic accuracy of the summaries of time and expense submitted by each counsel based on the underlying detail records that were supplied to us. This procedure was limited to items of time and expense.

12. As a consequence of this process of review, Fee Applicants voluntarily withdrew from inclusion in the collective lodestar analysis substantial submissions of hours of time having a significant lodestar value. This effort has proven itself to be beneficial as common benefit counsel have worked cooperatively, and sometimes eliminated entries that were not directly questioned by WDC. My analysis of the submissions and reporting of common benefit counsel's time and expenses is an ongoing process, however, judging by past experience, I anticipate that approximately 10% of the time submissions still under review will be disallowed and approximately 20% of cost submissions still under review will be disallowed. Such disallowances were incorporated into my calculations of time reported in this Report. A complete analysis will be filed with the Court at the conclusion of my assignment.

13. For purposes of this Report, I calculated a collective "Lodestar" value for common benefit counsel for their services as of January 14, 2009. A Lodestar value represents the number of hours of professional service performed by common benefit counsel multiplied by an appropriate hourly rate. For this Affidavit, counsels' hourly rates are reported using two

5

different standards: (1) the "<u>Actual hourly rate,</u>" which uses the current billing rates provided by counsel and (2) the "<u>Highest billing rate,</u>" which uses the highest billing rate for each position.[1]

---

[1] In those few instances where counsel failed to provide or lacked their current billing rates, those employees that did not provide positions or rates received the average rate for the population. Those that provided positions, but no rates received the average rate for that position.

14. For both standards, the total number of hours of professional time was reported as 503,185.00 (372,208.52–MDL and 130,976.43–state).[2]

15. Based upon the above methodologies, the total Lodestar value of the combined professional time of attorneys and para-professionals for both the MDL and state litigations was calculated as follows:

    Actual Rate    $217,128,800.40

    Highest Rate    $321,897,534.95

16. The total Lodestar value of the professional time of attorneys and para-professionals for the MDL was calculated as follows:

    Actual Rate    $158,194,630.34

    Highest Rate    $234,078,195.97

17. The total Lodestar value of the professional time of attorneys and para-professionals for the state common benefit counsel was calculated as follows:

    Actual Rate    $58,934,170.06

    Highest Rate    $87,819,338.98

18. The total amount of "held expenses" as defined by PTO No. 6, incurred by common benefit counsel which has been properly documented as eligible for reimbursement under the terms of the applicable pretrial orders is $30,508,021.87, as of January 14, 2009.

19. In addition to the reimbursable "held expenses" incurred by each common benefit counsel individually, certain reimbursable "shared expenses," as defined by PTO No. 6, were

---

[2] Of those counsel participating in both state and MDL litigations, all time reported was attributed to MDL time.   Total time is stated rounded up to the nearest whole number.

7

incurred by the PSC.

20. The PSC funded many of its common expenses in this litigation by periodically levying assessments on its members. As of January 14, 2009, PSC members each paid assessments the total of which assessments collected over the course of the litigation was $3,950,000.00. The "shared expenses" incurred for the administration of the MDL from the PSC's account paid from the assessments was then scrutinized. As of January 14, 2009, the PSC incurred $3,881,646.68 in properly documented shared expenses which expenses are properly subject to reimbursement.

21. In summary, as a result of the accounting conducted by me pursuant to the terms of the Court's pretrial orders, as of January 14, 2009, I have determined that a total of 503,184.95 hours of professional time, having a range of lodestar values from $217,128,800.40 to $321,897,534.95 is properly documented, and that $34,389,668.55 in out-of-pocket expenses have been properly documented, are eligible for reimbursement.[3]

---

[3] Additional materials are still being submitted to WDC by common benefit counsel. Once these materials are analyzed, my findings will become the subject of a final report.

22. Copies of all of the 109 law firm's submissions provided to WDC are attached hereto on DVD as Exhibit "2". It is my understanding from Liaison Counsel that this Exhibit will be filed under seal.

_____
PHILIP A. GARRETT, C.P.A.

Sworn & Subscribed
before me this 19th
day of January,
2009.

_____
NOTARY PUBLIC
Bar 14190

9