IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL 1657 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION "L" |
| | * | |
| | * | JUDGE FALLON |
| | * | MAG. JUDGE KNOWLES |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR PAYMENT OF CONSULTING FEES AND EXPENSES**

**MAY IT PLEASE THE COURT:**

This memorandum is submitted in support of the Motion for Payment of Consulting Fees and Expenses filed herein on behalf of DecisionQuest, Inc. ("DecisionQuest"). As fully set forth below, DecisionQuest has the right to be paid its professional consulting fees and expenses which it incurred on behalf of and for the benefit of the MDL Plaintiff's Steering Committee.

**Background Facts**

It was the understanding of DecisionQuest, that in March 2006, at its meeting in Philadelphia, PA, members of the Vioxx Litigation Plaintiffs' Steering Committee ("PSC") agreed to retain DecisionQuest, a jury/trial consulting firm. See Exhibit "A" (Correspondence dated May 30, 2008 from Grant Kaiser of The Kaiser Firm (hereafter "Kaiser") to Philip K. Anthony, CEO of DecisionQuest (hereafter "Anthony") confirming the earlier retention of DecisionQuest on or about March 20, 2006). Anthony understood that the attorneys who met in Philadelphia represented the group authorized to retain consultants, such as DecisionQuest, for the common

1

benefit of all plaintiffs in the Vioxx MDL. In subsequent correspondence, DecisionQuest used the terms "Vioxx Litigation Consortium" and "PSC" interchangeably.

On March 20, 2006, Kaiser signed the Authorization enlisting DecisionQuest to perform empirical studies of juror reactions to the Vioxx litigation, using the findings as a guide in identifying optimum trial strategies in accordance with the Proposal previously sent to members of the Vioxx MDL and PSC, including Mark P. Robinson, Jr., Andy D. Birchfield, Jr., Russ M. Herman, and others. See Exhibit "B" (Authorization and Proposal signed by Grant Kaiser dated March 20, 2006). In connection with the studies, a $200,000 advance was provided by the PSC. See Exhibit "C" (Copies of three drafts provided to DecisionQuest from the PSC).

Immediately after its retention in March 2006, DecisionQuest assigned over 25 professionals to the MDL project, later growing to 30 individuals, and worked diligently to complete its assignments and directives. DecisionQuest worked with a number of attorneys, most of whom were PSC members, in matters which included *Diaz*, *Barnett*, *Smith*, *Schwaller*, *Dedrick*, and *Berwick*. In all, DecisionQuest completed 21 specific research assignments, designed and produced over 3000 graphic images for use as demonstrative exhibits, and provided courtroom technology services at various bellwether trials, including the aforemtioned matters.

At the conclusion of the *Barnett* trial in August 2006, when DecisionQuest had not been paid for its services, members of the PSC with whom it had consulted (including the *Smith* trial in particular), indicated for the first time that there were not currently funds available to pay

DecisionQuest for its efforts, but that payment would be worked out to its satisfaction.[1] Specifically, DecisionQuest was told that it was imperative that it continue its efforts in preparation of the *Smith* case which was scheduled for trial.

Beginning in May 2006, invoices for DecisionQuest's services were sent monthly to Kaiser. On November 2, 2007, Anthony, on behalf of DecisionQuest, sent correspondence to Russ M. Herman (PSC Executive Committee/Allocation Committee), Leonard A. Davis and Drew Ranier (PSC member) with its itemized invoices requesting payment for the contracted services. See Exhibit "D" (Correspondence dated November 2, 2007 from DecisionQuest to various PSC members). Anthony's correspondence further confirmed the earlier discussion between the PSC and DecisionQuest concerning the value of the information in future Vioxx cases. On November 5, 2007, DecisionQuest received correspondence from Mr. Herman stating that, although DecisionQuest had not been retained by the PSC, its invoices would be presented for payment. See Exhibit "E" (Correspondence dated November 5, 2007 from Herman to DecisionQuest).

On May 30, 2008, Kaiser sent correspondence to DecisionQuest stating that the PSC will see that it is "paid from the Settlement Fee and Cost Account created by § 9.2.3 of the Settlement Agreement to pay common expenses and fees." See Exhibit "A."

On June 30, 2008, undersigned counsel wrote Your Honor, on behalf of DecisionQuest, reserving its rights under the Case Management Order, and giving notice to all parties. See Exhibit "F" (Correspondence dated June 30, 2008 from undersigned counsel to Judge Eldon E.

---

[1] During preparation for the *Smith* trial, DecisionQuest incurred over $669,965.80 in charges, including $135,118.30 in hard, out of pocket costs (hotel, airfare charges, etc.) on behalf of the MDL effort. To date, DecisionQuest has been paid a fraction of its totaled billed costs.

3

Fallon. The attachments to the June 30, 2008 correspondence have been omitted to avoid duplication and confusion).

To date, DecisionQuest has generated fees and incurred costs totaling $3,219,156.90 for its work in the Vioxx MDL. As it currently stands, DecisionQuest is owed $2,153,059.16, exclusive of any consideration of accrued interest since 2006 or attorneys fees. See Exhibit "G" (Summary of Charges Vioxx Litigation).

It is DecisionQuest's understanding that the accuracy of the bills is not now disputed, and that they have been received and reviewed by Mr. Phil Garrett of Wegmann Dazet. In meetings which DecisionQuest has had in recent months with Messrs. Herman, Davis and other PSC members, DecisionQuest has been praised for the quality of its work and informed that there is no dispute that the work was performed.

**Law and Argument**

DecisionQuest is owed the legal fees billed for its work and should be reimbursed the out-of-pocket costs it advanced. There is no dispute in this regard. The only issue is whether payment should be made as a common benefit expense from the Vioxx settlement, or by individual attorneys involved in specific cases. DecisionQuest simply wants to be paid.

The common benefit doctrine provides that when the "efforts of a litigant or attorney create, preserve, protect, increase, or discover a common fund, all who benefit from that fund must contribute proportionately to the costs of the litigation." *Turner v. Murphy Oil USA, Inc.*, 422 F.Supp.2d 676 (E.D. La. 2006), quoting *Boeing,* 444 U.S. at 479, 100 S.Ct. 745; *Pettus,* 113 U.S. at 123, 5 S.Ct. 387; *Greenough,* 105 U.S. at 532-33, 105 U.S. 527. "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Turner*, 422 F.Supp.2d at

4

680, quoting *Boeing,* 444 U.S. at 478, 100 S.Ct. 745.  *See also* Manual for Complex Litigation (Fourth) § 14.121 (2004) .

Here, the work performed by DecisionQuest on all Vioxx matters was a benefit to the Vioxx MDL PSC.  DecisionQuest performed numerous projects beneficial to the case as a whole, including but not limited to, assistance in the preparation of opening arguments in various cases, theme development, trial simulation, jury pool surveying, and focus groups in the *Barnett* and *Smith* matters, case strategy and post trial juror interviews in the *Schwaller* matter, and development of a case strategy, witness evaluation, and jury selection preparation and strategy in the *Berwick* matter.  These projects aided the PSC not only in the bellwether cases that went to trial, including *Barnett* and *Berwick,* PSC member Mark Robinson's cases, and *Dedrick,* PSC member Andy Birchfield's case, but future Vioxx trials, including all future opt out trials.  Moreover, DecisionQuest's projects aided the PSC in determining whether settlement of the MDL was appropriate, as opposed to proceeding to trial.  Accordingly, DecisionQuest suggests that it should be paid from the common benefit fund without further delay.  In any event, it should be *paid*.

**Conclusion**

DecisionQuest, Inc., prays that this Motion for Payment of Consulting Fees be granted as prayed, and DecisionQuest paid its full amount outstanding from the common benefit fund, and for all other relief to which DecisionQuest is entitled.

Respectfully submitted,

BY: /s/ Kyle A. Spaulding
Miles P. Clements (#4184)
Kyle A. Spaulding (#29000)
**FRILOT L.L.C.**
1100 Poydras Street Suite 3600
New Orleans, LA  70163
Telephone: (504)599-8000
Facsimile:  (504)599-8145
E-mail:  mclements@frilot.com

COUNSEL FOR DECISIONQUEST, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of filing to all counsel accepting electronic notice.

/s/ Kyle A. Spaulding