UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX PRODUCTS LIABILITY LITIGATION<br><br>*This document relates to ALL CASES* | MDL Docket NO. 1657<br><br>SECTION L<br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLE |

**THE PSC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ESTABLISH QUALIFIED SETTLEMENT FUNDS AND APPOINT FUND ADMINISTRATOR PURSUANT TO INTERNAL REVENUE CODE §468B AND TREASURY REGULATIONS §1.468B-1, et seq.**

## I.  INTRODUCTION

On November 9, 2007, Merck and the Negotiating Plaintiffs' Counsel (NPC) formally announced that they had reached a Settlement Agreement. *See* Master Settlement Agreement, *In re Vioxx Prods. Liab. Litig.*, MDL 1657 (E.D. La. Nov. 9, 2007)("Settlement Agreement"). The private Settlement Agreement establishes a pre-funded program for resolving pending or tolled state and federal Vioxx personal injury claims against Merck as of the date of the settlement, involving claims of heart attack ("MI"), ischemic stroke ("IS"), and sudden cardiac death ("SCD"), for an overall amount of $4.85 billion. The Settlement Agreement expressly contemplates that the Court shall oversee various aspects of the administration of settlement proceedings.

On July 17, 2008, Merck formally announced that it was satisfied that the thresholds necessary to trigger funding of the Vioxx Settlement Program would be met. Merck further advised that it intended to waive its walk away privileges and that it would commence funding the Vioxx Settlement Program by depositing an initial sum of $500 million into the Escrow Fund, clearing the way for distribution of interim payments to eligible Claimants. *Id.*

Page 1

On August 7, 2008, Merck deposited the initial sum of $500 million into an Escrow Fund at US Bancorp, as Escrow Agent, consistent with its obligations to do so pursuant to Section 5.1.2.1 of the Settlement Agreement.[1] The Escrow Fund has two sub-Funds, the "MI Fund" and the "IS Fund." As used herein, "Escrow Fund" refers to both sub-funds.

Pursuant to section 4.1.2 the Settlement Agreements, the amount of Interim Payments for Qualifying IS Claimants shall be determined by the Claims Administrator after approximately February 1, 2009. Section 5.1.2.2 states that "any cash deposited in Escrow Fund pursuant to Section 5.1.2.2 shall be divided 79.2863% to MI Settlement Fund and 20.731% to the "IS Settlement Fund."

In this *Motion*, the PSC respectfully requests that this Court enter an Order:

1) declaring that the Escrow Fund established at US Bancorp with a deposit of an initial payment of $500 million by Merck on August 7, 2008, is a Qualified Settlement Fund pursuant to Section 468B of the Internal Revenue Code of 1986, as amended and Treasury Regulations §1.468B-1, *et seq.* (to be known as the *Vioxx Escrow 468B Settlement Fund*);

2) establishing a sub-fund of *the Vioxx Escrow 468B Settlement Fund* pursuant to Section 468B of the Internal Revenue Code of 1986, as amended and Treasury Regulations §1.468B-1, *et seq.* (to be known as the *Vioxx 468B Holding Settlement Sub-Fund*); and,

3) appointing US Bancorp as Fund Administrator.

A proposed form of Order with the QSF attached is being submitted with this *Motion*.

---

[1] Additionally, on August 6, 2008, the Claims Administrator received an executed Letter of Credit from the Royal Bank of Scotland with a maximum draw amount of $4.1 billion, pursuant to Section 5.1.2.2 of the Settlement Agreement.

Page 2

## II. ARGUMENT

### A. THE MOTION FILED WITH THIS COURT COMPLIES WITH FEDERAL LAW PERMITTING THE CREATION OF QUALIFIED SETTLEMENT FUNDS

Qualified Settlement Funds grew out of Internal Revenue Code Section 468B which was passed by Congress in 1986 and created Designated Settlement Funds ("DSF"). 26 U.S.C. § 468B(b) (2008). The DSF was fairly limited in the way it could be utilized and in 1994 new regulations were implemented creating a new type of fund, a QSF. 26 C.F.R. § 1.468B-1(g)(1) (2008). A QSF is a special court ordered "safe harbor" for funds from one or more settling Defendants that allows the Defendant to take a complete tax deduction for the entire amount of the settlement monies prior to all of the claims for the monies being determined. The QSF then becomes a new tax-paying entity that enters into separate Settlement Agreements (including Structured Settlement Agreements) with those that have claims on the monies. 26 C.F.R. § 1.468B-2(a) (2008). QSFs, therefore, are both a useful settlement tool and asset providing unique tax benefits to Claimants and Merck alike.

#### 1) The Benefit of a QSF to the Parties

Using a 468B QSF, settlement proceeds can be placed into a QSF trust preserving a Claimant's right to structure a settlement. Additionally, if the settlement recipient is on public benefits the QSF avoids issues with constructive receipt of the settlement, which could trigger a loss of public benefits. While the funds are in the QSF, there is time to create a public benefit preservation trust for the settlement recipient. The structured settlement or other financial products can then be set up to work in concert with a special needs trust so that the injured victim does not lose their public benefits. 42 U.S.C. § 1396p(d)(4)(A) (2008); 42 U.S.C. § 1382b(e)(5) (2008); *see* John J. Campbell,

*The Use of Qualified Settlements Funds, Qualified Assignments and Special Needs Trusts in Physical Injury Settlements,* 4 NAELAJ 99 (2008).

### 2) <u>Establishing a QSF</u>

The Federal tax rules concerning QSFs are to be found in Internal Revenue Code § 468B and its accompanying regulations. The Treasury Department further defined these settlement funds by promulgating Treasury Regulations § 1.468B-1 et seq., which became effective on January 1, 1993. 26 C.F.R., §1.468B-1. Under these Regulations, there are three requirements for a settlement fund, account or trust to be treated as a QSF:

> A fund, account, or trust satisfies the requirements of this paragraph (c) if – (1) It is established pursuant to an order of, or be approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority; (2) It is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting liability – (I) Under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (hereinafter referred to as CERCLA), as amended, 42 U.S.C. 9601 et seq.; or (II) Arising out of a tort, breach of contract, or violation of law, or (III) Designated by the Commissioner in a revenue ruling or revenue procedure; and (3) The fund, account, or trust is a trust under applicable state law, or its assets are otherwise segregated from other assets of the transferor (and related parties).

26 C.F.R., § 1.468B-1(c).

### 3) <u>This Court Has Authority to Establish The QSFs.</u>

With respect to this Court's authority to sign an Order creating a QSF, Treas. Reg. §1.468B-1(c)(1) provides that a court of law has the authority to order the creation of a QSF. 26 C.F.R. §1.468B-1(c)(1). In *United States v. Brown*, the Tenth Circuit Court of Appeals stated that a "[Qualified Settlement] Fund satisfies subparagraph (1) of § 1.468B-1(c) if it is established

pursuant to an order of ... a court of law." *United States v. Brown,* 348 F.3d 1200 (10th Cir. 2003). Here, this Court has jurisdiction over the underlying litigation, so it has jurisdiction over the establishment of a QSF to resolve settlement matters relating to this litigation.

### B.   IT IS IN THE BEST INTEREST OF THE PARTIES TO ESTABLISH THE QSFs

It is in the best interests of the parties that the Escrow fund, established with the initial deposit of $500 million by Merck be declared a QSF and a sub-fund be established for holding purposes.[2] QSFs are useful tools to ensure proper client counseling can occur before, during and even after settlement. QSFs uniquely introduce a degree of breathing space after settlement because the funds to be temporarily parked in the QSF are not "constructively received" by any Claimant, as asset forth in Treasury Regulation § 1.451.2.5; *see also, United States v. Brown,* 348 F.3d 1200 (10th Cir. 2003).

The establishment of the QSF here will avoid any potential adverse tax consequences to the Claimants, on the one hand, and on the other, will provide a final and complete release and discharge to Merck with respect to the underlying tort liability as well as for the investment or administration of a Fund Administrator, the funds, with the appointment of US Bancorp, the Claims Administrator. Additionally, it will allow Merck to take a complete tax deduction for the entire amount of the settlement monies prior to all of the claims for the monies being determined. 26 C.F.R. § 1.461-6.

---

[2] The *Vioxx Holding 468B Settlement Sub- Fund* is a sub-account. In essence it falls under the umbrella of the *Vioxx Escrow 468B Settlement Fund.* Upon the request of Primary Counsel, a Claimants settlement payment can be "parked" in the *Vioxx Holding 468B Settlement Sub-Fund* until structured settlements are finalized or special needs trusts are established.

### C. THE ESTABLISHMENT OF THE QSFs WILL SATISFY THE REQUIREMENTS TREAS. REG. § 1.468B-1(C)

Additionally, the establishment the Fund with a Sub-fund will satisfy the requirements of Treas. Reg. § 1.468B-1(c) by (i) being established pursuant to a Court Order, (ii) resolving and satisfying one or more tort claims, and (iii) fully and completely releasing Merck from any and all liability with respect to the released claims in this litigation, all as required by those regulations.

The QSF meets Treas. Reg. § 1.468B-1(c)(2) because it is being established to resolve the claims that arose as a result of injuries resulting from the alleged ingestion of Vioxx. Hence, the settlement funds will be allocated for damages associated with the personal injuries suffered by the Claimants. In addition, it would comply with Treas. Reg. § 1.468B-1(c)(2) becauseit would be established to resolve multiple claims on behalf of multiple claimants resulting from alleged tortious conduct. Finally, the QSF will comply with Treas. Reg. § 1.468B-1(c)(3) because it will be established as an interest-bearing account, for which the settlement funds would be segregated from Merck's other assets and those of the Fund Administrator.

Upon a determination of an eligible Claimant's Interim, Fixed, Final or Extraordinary Injury settlement payment (collectively referred to as "Settlement Payments" or "Proceeds") under the terms of the Settlement Agreement, the proceeds will, upon the request of a Claimant's Primary Counsel either be paid to the Claimant's Primary Counsel or transferred from the *Vioxx 468B Escrow Settlement Fund* to the *Vioxx 468B Holding Settlement Sub-Fund* where the funds will be held in escrow for the Claimant. This will enable a Claimant and Primary Counsel to take their time, carefully considering the various financial decisions they must make and addressing public benefit

preservation issues. It is anticipated that the ultimate resolution will most likely include periodic payments for one or more of the Claimants in accordance with Sections 104(a)(2) and 130(c), IRC.

Finally, the Fund Administrator, US Bancorp is a reliable custodian and will deposit the Settlement Payments into the *Vioxx 468B Holding Settlement Fund*, a custodial trust account with US Bancorp, an FDIC-insured, interest bearing national bank and, as required by IRC §468B, is not a representative or agent of the settling defendant, Merck or its insurer, if any.

## III. CONCLUSION

For all of the foregoing reasons, the PSC respectfully moves this Court for an Order:

1) declaring that the Escrow Fund established at US Bancorp with a deposit of an initial payment of $500 million by Merck on August 7, 2008, is a Qualified Settlement Fund pursuant to Section 468B of the Internal Revenue Code of 1986, as amended and Treasury Regulations §1.468B-1, *et seq.* (to be known as the *Vioxx Escrow 468B Settlement Fund*);

2) establishing a sub-fund to *the Vioxx Escrow 468B Settlement Fund* pursuant to Section 468B of the Internal Revenue Code of 1986, as amended and Treasury Regulations §1.468B-1, *et seq.* (to be known as the *Vioxx 468B Holding Settlement Sub-Fund*); and,

3) appointing US Bancorp as Fund Administrator.

Respectfully submitted,

/s/ Leonard A. Davis
**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq.<br>P.O.Box 1190<br>2220 Bonaventure Court<br>Alexandria, LA 71309-1190<br>PH: (318) 487-9874<br>FAX: (318) 561-2591<br><br>Andy D. Birchfield, Esq. **(Co-Lead Counsel)**<br>P.O. Box 4160<br>234 Commerce Street<br>Montgomery, AL 36103-4160<br>PH: (800) 898-2034<br>FAX: (334) 954-7555<br><br>Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Franciso, CA 94111-3339<br>PH: (415) 956-1000<br>FAX: (415-956-1008<br><br>Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA 19102<br>PH: (215) 772-1000<br>FAX: (215) 772-1371<br><br>Arnold Levin, Esq. **(on brief)**<br>Michael Weinkowitz, Esq. **(on brief)**<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3875<br>PH: (215) 592-1500<br>FAX: (215) 592-4663<br><br>Shelly Sanford, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX 77002<br>PH: (713) 650-0022<br>FAX: (713-650-1669 | Gerald E. Meunier, Esq.<br>Energy Centre<br>1100 Poydras Street, Suite 2800<br>New Orleans, LA 70163-2800<br>PH: (504) 522-2304<br>FAX: (504) 528-9973<br><br>Troy Rafferty, Esq.<br>316 S. Baylen Street, Suite 400<br>Pensacola, FL 32502<br>PH: (850) 435-7000<br>FAX: (850) 497-7059<br><br>Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA 70601<br>PH: (337) 494-7171<br>FAX: (337) 494-7218<br><br>Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA 92660<br>PH: (949) 720-1288<br>FAX: (949) 720-1292<br><br>Christopher Seeger, Esq. **(Co-Lead Counsel)**<br>One William Street<br>New York, NY 10004<br>PH: (212) 584-0700<br>FAX: (212) 584-0799<br><br>Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC 20036-4914<br>PH: (202) 783-6400<br>FAX: (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of February, 2009.

/s/ Leonard A. Davis
Leonard A. Davis (Bar No. 14190)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Ave.
New Orleans, LA 70113
PH:   (504) 581-4892
FAX: (504) 561-6024
ldavis@hhkc.com