# EXHIBIT "A"

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX PRODUCTS LIABILITY LITIGATION<br><br>***This document relates to ALL CASES*** | MDL Docket NO. 1657<br><br>SECTION L<br><br>JUDGE FALLON<br>MAG. JUDGE KNOWLE |

### 468B QUALIFIED SETTLEMENT FUND
(Vioxx 468B Escrow Settlement Fund and
the Vioxx 468B Holding Settlement Sub-fund )

**1.      NAME AND PURPOSE OF THE FUND**

1.1     <u>Name</u>.  This Fund shall be known as the *Vioxx 468B Escrow Fund* (hereinafter referred to as the "*Vioxx Escrow QFS*" or "*The Escrow Fund*"). The *Escrow Fund* shall have a sub-fund called the *Vioxx 468B Holding Settlement Sub-fund* (hereinafter referred to as the *"Holding Sub-fund"*)(when used herein "*the Funds*" refers collectively to both the *Escrow Fund* and the *Holding Sub-fund*) .

1.2     <u>Purpose</u>.  The purpose of the *Escrow Fund* and the *Holding Sub-fund* is to create an entity to accept, hold and distribute settlement funds pursuant to the Master Settlement Agreement entered into on November 9, 2007, by and between Merck & Co., Inc. ("Merck") and the Negotiating Plaintiffs' Counsel (NPC) in the above-captioned case. *See* Master Settlement Agreement, November 9, 2007)("Settlement Agreement").  The private Settlement Agreement establishes a pre-funded program for resolving pending and tolled state and federal Vioxx personal injury claims against Merck as of the date of

the Settlement, involving claims of heart attacks ("MI"), ischemic strokes ("IS") and sudden cardiac death ("SCD"). A "Qualified Settlement Fund" ("QSF") is a fund that satisfies the requirements of Section 468B of the Internal Revenue Code of 1986 (Title 26, United States Code), as amended, and Treasury Regulations §§1.468B-1, *et seq*. This matter involves personal, physical injury claims arising out of a tort, or violation of law, as provided for in Treasury Regulations Section 1.468B-1.

2. **PAYMENTS TO THE FUND.**

2.1 <u>No Further Obligation for Payments.</u> On _____, 2009, the Honorable Eldon E. Fallon, United States District Court, Eastern District of Louisiana (MDL 1657) (hereinafter called "the Court"), entered an Order approving the establishment of *the Funds* pursuant to Section 468B of the Internal Revenue Code of 1986, as amended. Pursuant to the Order, the Funds are for the benefit of Claimants and Releasing Parties, and such other entity or entities to whom the Court directs that distributions be made. A copy of the Order is attached hereto as Exhibit "A" and is hereby incorporated and made part hereof by reference. Upon payment by Merck of the sum of $4.85 billion into the *Escrow Fund* pursuant to Merck's funding obligations set forth in Article 5 of the Settlement Agreement, as consideration for the settlement, Merck shall have no further obligation to the *Escrow Fund* or to the Claimants and Releasing Parties, in this matter, and all liability of Merck, if any shall be completely discharged and extinguished as required by Treasury Regulation 1.468B-1(c).

2.2   Nature of Payments. All payments to the *Escrow Fund* shall be made in immediately available funds. All such contributions, together with the earnings thereon, shall be held as a fund for satisfaction of claims, costs, and expenses to be incurred by the Fund Administrator, consistent with the terms of the Master Settlement Agreement as herein provided in the *Escrow Fund*. The Fund Administrator may at the direction of the Claims Administrator utilize the *Holding Sub-fund* for such purposes as resolving an individual claimant's post-settlement related issues that require special attention and prevent him or her from taking receipt, constructive or otherwise, of the settlement money at that time.

2.3   Fund Administrator. US Bancorp shall serve as the initial Fund Administrator to hold, administer, and distribute the settlement funds in the *Escrow Fund* and the *Holding Sub Fund*, pursuant to the terms of the Settlement Agreement.

3.   **DISPOSITIVE PROVISIONS.**

3.1   Payment of Income and Principal. During the term of Funds, the Fund Administrator shall pay or apply such part (or all) of the income and principal of the Funds in order to satisfy the claims of Claimants and Releasing Parties against Merck.

3.2   No Authority to Conduct Business. The purpose of the Funds is limited to the matters set forth in Section 3 hereof, and the Funds shall not be construed to confer upon the Fund Administrator any authority to carry on any business or activity for profit, or to act outside of the scope of the Settlement Agreement.

3.3     <u>Termination of the Fund</u>. The Funds shall terminate after all proceeds of the settlement have been fully distributed to the Claimants and Releasing Parties, as the case may be.

3.4     <u>Alterations, Amendments, and Revocation</u>. The Funds may be altered, amended, or revoked from time to time by an instrument in writing executed by the Fund Administrator and approved by Order of the Court.

3.5     <u>Distributions</u>. Pursuant to Court Order, the Fund Administrator shall distribute to Claimants and Releasing Parties the amounts due and owing to them from *the Funds* those funds available for distribution pursuant to the terms of the Settlement Agreement. No distributions from the Funds shall be made except upon direction from the Fund Administrator.

4. **FUND MANAGEMENT.**

4.1     <u>Investment and Reinvestment</u>. The Fund Administrator shall invest and reinvest the principal and income of the Funds and keep the Funds invested in Permitted Investments as defined in the Escrow Agreement dated as of November 20, 2007 among (i) Merck & Co., Inc. (ii) Russ M. Herman on behalf of the Negotiating Plaintiffs' Counsel and (iii) U.S. Bank national Association (the "Escrow Agreement") so long as such fund is available. In investing, reinvesting, exchanging, selling and managing the Funds, the Fund Administrator shall discharge its duties solely in the interest of the accomplishment of the purposes and objectives of the Funds.

5. **EXPRESS POWERS OF FUND ADMINISTRATOR.**

Without in any way limiting the power and discretion conferred upon the Fund Administrator by the other provisions of the Funds or by law or pursuant to the Settlement Agreement, the Fund Administrator is expressly authorized and empowered as hereinafter set forth.

5.1 Payment of Expenses of Administration. To incur any and all charges and expenses upon or in connection with the Fund in the discharge of its obligations under the Funds. All such payments shall be made using the assets of the Funds. Additionally, all taxes on the income of the Fund and expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, the expenses of tax attorneys and accountants necessary to operate and maintain the Fund) shall be paid out of the Fund, shall be considered to be a cost of administration of the settlement, and shall be timely paid by the Fund Administrator without prior Order of the Court.

5.2 Retention of Property. To hold and retain all or part of the Funds in the form in which the same may be at the time of the receipt by the Fund Administrator, as long as it shall deem advisable, notwithstanding that the same may not be authorized by the laws of any state or rules of any court for the investment of trust funds, and without any liability for any loss of principal or income by reason of such retention.

5.3 Preservation of Principal. Notwithstanding any other provision in the Funds, the Fund Administrator shall at all times hold, manage, invest and reinvest the assets of the Funds, in a manner designed to preserve the accrued income and principal of the Funds for the purposes set forth herein.

5.4   <u>Retention of Investment Advisor and Other Consultants</u>.  To engage the services of accountants, custodians, managers, attorneys, or other consultants or agents, reasonably necessary to assist with the management of investments and the administration of the Funds estate.

5.5   <u>Execution of Documents of Transfer</u>.  To make, execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

5.6   <u>Litigation</u>.  Upon obtaining the prior approval of the Court, to initiate or defend, at the expense of the Funds' estate, any litigation relating to or affecting the Funds, or the Fund Administrator's obligations under the Funds, and to initiate or defend any litigation relating to the Funds' estate or property, and to compromise, arbitrate, or otherwise adjust claims in favor of or against the Funds' estate.

5.7   <u>Execution of Contracts and Agreements</u>.  To make, execute, acknowledge and deliver any and all contracts or agreements on behalf of the Funds, including any release of any parties to claims or litigation from which this fund arose.  Such agreements may also include settlement agreements and qualified assignment agreements to effectuate settlements governed by sections 104(a)(2) and 130 of the Internal Revenue Code of 1986, as amended.

5.8   <u>Discretion in Exercise of Power</u>.  To do any other acts which it deems proper to effectuate the purpose hereof and to exercise the powers specifically

conferred upon it by the Funds.

6.     **ADVICE OF COUNSEL.**

The Fund Administrator may from time to time consult with counsel with respect to any question arising as to compliance with the terms of the Funds. The Fund Administrator shall be fully protected, to the extent permitted by law, in acting in reliance upon the advice of counsel.

7.     **SUCCESSOR FUND ADMINISTRATOR.**

7.1     <u>Vacancy Caused by Resignation or Removal</u>. The Fund Administrator may resign at any time pursuant to the terms of the Master Settlement Agreement. Such resignation shall become effective upon the written acceptance of the appointment of a successor Fund Administrator consistent with the terms of the Master Settlement Agreement. All of the Fund Administrator's fees and expenses (including reasonable attorneys' fees) attributable to the appointment of a successor Fund Administrator shall be paid by the Funds' estate. No bond or other security shall be required of the Fund Administrator named in the Funds.

7.2     <u>Acceptance of Appointment by Successor Fund Administrator</u>. Acceptance of appointment as a successor Fund Administrator shall be in writing and shall become effective upon receipt by the Court of notice of such acceptance. Upon the acceptance of appointment of any successor Fund Administrator, title to the Funds' estate shall thereupon be vested in said successor Fund Administrator, without the necessity of any conveyance or instrument. Each successor Fund Administrator shall have all the rights, powers, duties,

authority, and privileges as if initially named as a Fund Administrator hereunder.

7.3 <u>Preservation of Record of Changes to Fund Administrator</u>. A copy of each instrument of resignation, removal, appointment and acceptance of appointment shall be attached to an executed counterpart of the Funds maintained in the custody of the Court and NPC.

8. **INDEMNITY.**

Each Fund Administrator, whether initially named or appointed as a successor Fund Administrator, acts as a Fund Administrator only and not personally. With respect to any contract, obligation or liability made or incurred by the Fund Administrator in good faith, and so long as the Fund Administrator substantially and without negligence complies with the terms of the Funds, or any applicable Court Order, all persons shall look solely to the Funds and not to the Fund Administrator personally. The Fund Administrator initially named, or appointed as successor Fund Administrator, shall be indemnified and held harmless by the Funds, so long as the Fund Administrator complies substantially and without negligence with the terms of the Funds, or any applicable Court Order. This indemnification and hold harmless provision shall cover all expenses reasonably incurred by such Fund Administrator in defense of the aforementioned acts or omissions of the Fund Administrator. Except for the payment of all expenses reasonably incurred, this indemnification shall not apply to any liability arising from a criminal conviction where the Fund Administrator had reasonable cause to

believe that the conduct in question was unlawful, or where the Fund Administrator fails to substantially and without negligence comply with the terms of the Funds, or violates any valid Court Order.

9. **GOVERNING LAW.**

The Funds' estate has been created and accepted by the Fund Administrator in the State of New York and its validity, construction, and interpretation, and the rights created hereunder, shall be governed by the laws of the State of New York.

11. **INTERPRETATION.**

As used in the Funds, words in the singular include the plural and words in the plural include the singular and the masculine and neuter genders shall be deemed to include the masculine, feminine and neuter. The description heading for each section and subsection of these Funds shall not affect the interpretation of the legal efficacy of the Funds. It is agreed that no contribution to the Funds, nor any action taken under the Funds shall constitute a commitment or agreement, either express or implied, by Merck to undertake any further activities outside the scope of the Funds.

12. **SEVERABILITY OF PROVISIONS.**

Each provision of the Funds shall be valid and enforceable to the fullest extent permitted by law. If any provision of this agreement, or the application of such provision to persons or circumstances, other than to which it is held invalid or unenforceable, shall not be affected by such invalidity or unenforceability, unless such provision, or application of such provision is

essential to the Funds.

13. **TAX ISSUES.**

In accordance with Section 5.1 of the Escrow Agreement, dated as of November 1, 2007, Merck will reasonably determine the manner in which the Funds will be characterized for federal, state and local income tax purposes. Merck will advise the Fund Administrator of the tax treatment of the Funds and the Fund Administrator shall prepare and file (or cause to be prepared and filed) all income tax returns for the Funds in accordance with Treasury Regulations Section 1.468B-2 (k)(3) with respect to all taxable periods during which the Funds are treated as QSFs. The Fund Administrator shall take no actions that are inconsistent with the Funds' status as QSFs. The Fund Administrator and Merck shall jointly make a relation-back election in accordance with Treasury Regulation Section 1.468B-1(j)(2).

**ACCEPTANCE OF FUND**

As Fund Administrator named in the above Funds, the undersigned accepts this appointment and the assets transferred to the Funds' estate as provided in the Funds.

**WITNESS** the execution hereof of the Fund Administrator, on this _____ day of _____, 2009.

BY:_____
US Bancorp, *Fund Administrator*