**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| All Third-Party Payor | * | MAGISTRATE JUDGE KNOWLES |
| and Consumer Economic Loss Cases | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT MERCK & CO., INC.'S MOTION
FOR ADOPTION OF PRETRIAL ORDER GOVERNING CLASS CERTIFICATION
AND PRETRIAL DISCOVERY IN ECONOMIC LOSS CASES**</u>

TABLE OF CONTENTS

Page

BACKGROUND ........................................................................................................... 1

    A. TPP Cases ..................................................................................................... 2

    B. Consumer Class Actions ............................................................................... 4

    C. Merck's Proposed Schedule .......................................................................... 5

ARGUMENT ............................................................................................................... 7

I.     THE COURT SHOULD DECIDE THE ISSUE OF CLASS CERTIFICATION
     BEFORE TRYING TPP CASES .......................................................................... 8

II.    PLAINTIFFS SHOULD NOT BE ALLOWED TO UNILATERALLY CHOOSE
     "BELLWETHER" TRIALS ................................................................................ 15

III.   GENERAL DISCOVERY SHOULD PROCEED IN ALL PRIVATE TPP
     CASES SIMULTANEOUSLY ............................................................................. 17

CONCLUSION ........................................................................................................... 21

## TABLE OF AUTHORITIES

**Page**

### Cases

*Arreola v. Godinez,*
546 F.3d 788 (7th Cir. 2008) ............................................................................... 12

*Bieneman v. Chicago,*
838 F.2d 962 (7th Cir. 1988) ............................................................................... 12

*Cimino v. Raymark Indus.,*
151 F.3d 297 (5th Cir. 1998) ............................................................................... 16

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) .............................................................................................. 12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995) ................................................................................... 13

*In re Hydrogen Peroxide Antitrust Litig.,*
552 F.3d 305 (3d Cir. 2008) .................................................................................. 9

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.,*
929 A.2d 1076 (N.J. 2007) ............................................................................... 4, 11

*Jones v. Hartford Ins. Co. of the Midwest,*
243 F.R.D. 694 (N.D. Fla. 2006) ......................................................................... 14

*Kitts v. Citgo Petrol. Group,*
No. 2:07-cv-1151, 2008 WL 5480569 (W.D. La. Dec. 16, 2008) ......................... 13

*McCarthy v. Kleindienst,*
741 F.2d 1406 (D.C. Cir. 1984) ..................................................................... 13, 14

*Owens v. Hellmuth & Johnson, PLLC,*
550 F. Supp. 2d 1060 (D. Minn. 2008) ................................................................ 12

*Philip Morris Inc. v. National Asbestos Workers Medical Fund,*
214 F.3d 132 (2d Cir. 2000) .................................................................... 11, 12, 13

*Sevin v. Parish of Jefferson,*
No. 08-802, 2009 WL 68880 (E.D. La. Jan. 9, 2009) ........................................... 10

*Seyboth v. GMC,*
No. 8:07-cv-2292, 2008 WL 1994912 (M.D. Fla. May 8, 2008) ........................... 14

*Siskind v. Sperry Retirement Program, Unisys,*
47 F.3d 498 (2d Cir. 1995) ................................................................................... 13

*Sweat v. Batelle Mem'l Inst.,*
No. 2:07-cv-401, 2008 WL 4526021 (D. Utah Oct. 1, 2008) ................................ 14

*Timothy v. Aqua Finance, Inc.,*
No. 2:06-cv-921, 2007 WL 4299808 (D. Utah 2007) ............................................. 9

**TABLE OF AUTHORITIES** (continued)

**Page**

*Wiesmueller v. Kosobucki,*
   513 F.3d 784 (7th Cir. 2008) ................................................................................................ 13

**Other Authorities**

1 *McLaughlin on Class Actions:  Law & Practice*
   § 3:1 (5th ed. 2009).......................................................................................................... 9, 14

7AA Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure*
   § 1785.3 ............................................................................................................................... 9

Manual for Complex Litigation, 4th
   § 21.133 ............................................................................................................................ 8, 14

Manual for Complex Litigation, 4th
   § 22.315 .......................................................................................................................... 16, 18

**Rules**

E.D. La. R. 23.1B................................................................................................................... 9

Fed. R. Civ. P. 23 (2002) ................................................................................................... 9, 10

**MEMORANDUM IN SUPPORT OF DEFENDANT MERCK & CO., INC.'S MOTION FOR ADOPTION OF PRETRIAL ORDER GOVERNING CLASS CERTIFICATION AND PRETRIAL DISCOVERY IN ECONOMIC LOSS CASES**

Pursuant to the Court's order, Merck and plaintiffs have exchanged proposed scheduling orders regarding the pending economic loss cases and sought to iron out their differences over the last month.  Despite these good-faith efforts, the parties were unable to agree on several key issues.

In order to obtain the Court's guidance, the parties agreed to simultaneously submit separate proposed CMOs, along with briefing explaining their respective positions.  As set forth below, Merck believes that its proposal (attached as Ex. 1) will best advance the economic loss actions pending in this proceeding, by moving quickly toward bellwether trials in several selected TPP cases, while at the same time ensuring the resolution of important threshold motions.  Merck's proposal that the parties undertake discovery in all TPP cases will also help ensure that the outcome of any bellwether trials will have meaning for the other cases.

## BACKGROUND

The economic loss cases currently before the Court fall into three distinct categories:  (1) actions brought by state attorneys general and other public actors; (2) individual cases and proposed class actions brought by private third-party payors ("TPP cases"); and (3) proposed class actions brought by individual consumers who paid for Vioxx ("consumer class actions"). The proposed CMO addresses the second and third categories:  TPP cases and consumer class actions.  (Merck has already engaged in separate discussions with the plaintiffs in the state attorney general cases.  The parties have submitted confidentiality orders and orders granting

plaintiffs access to the PSC's document depository and will continue to negotiate appropriate discovery scheduling orders.)

### A.    TPP Cases

The third-party payor cases have been brought on behalf of insurance companies, unions, and other entities that paid for Vioxx prescriptions.  Most of these suits seek to recover for alleged economic losses – *i.e.*, they allege that Merck withheld information about the alleged risks of Vioxx and that they would not have approved payment for Vioxx prescriptions if Merck had revealed the alleged dangers of the drug.  (*See, e.g.*, Compl. ¶ 1, *HealthPlus of Louisiana, Inc. v. Merck & Co., Inc.* (attached as Ex. 2) (alleging that "Merck misrepresented the safety of Vioxx and negligently manufactured, marketed, advertised, promoted, and sold Vioxx"); *id.* ¶ 105 (alleging that TPPs, their members, and their members' physicians "relied on and were induced by Merck's misrepresentations, and/or active concealment in selecting Vioxx treatment for symptoms related to pain relief"); *id.* ¶ 113 (alleging that "but for the conduct of Merck, Members [of TPP's insurance plans] would not have been prescribed Vioxx and, instead, would have taken an over-the-counter drug"); Compl. ¶ 67, *Blue Cross of Ne. Penn. v. Merck & Co., Inc.*, No. 05-3115 (attached as Ex. 3) ("The payment [for Vioxx] . . . would not have been made . . . had the true facts regarding Vioxx been known").)  Approximately 45 TPPs currently have claims pending before the Court; 43 are named plaintiffs in purported class actions, and two have brought individual suits.

Many of the TPP cases are included in the Purchase Claims Master Class Action Complaint ("Purchaser Complaint"), which was filed on August 2, 2005, consistent with Pretrial Order No. 16 ("PTO 16").  The Purchaser Complaint was brought on behalf of "all Consumers

and Third Party Payors . . . who purchased or paid for the prescription drug Vioxx." (*See* Dkt. No. 790, Purchase Claims Master Class Action Compl. ¶ 1.)  Plaintiffs assert causes of action for alleged violation of the New Jersey Consumer Fraud Act (*id.* ¶¶ 199-209); "All State Consumer Fraud and Deceptive Sales Practices Acts" (*id.* ¶¶ 210-262); unjust enrichment (*id.* ¶¶ 263-267); and breach of warranty (*id.* ¶¶ 268-324).

Consistent with PTO 16, Merck moved to dismiss the Purchaser Complaint on November 7, 2005, arguing that the Court could not apply New Jersey law to plaintiffs outside New Jersey and that plaintiffs' claims fail under the applicable state laws.  The Court heard argument on February 2, 2006, but has not yet ruled on this motion.

Even though the Court has not yet ruled on threshold motions to dismiss – let alone considered class certification – plaintiffs' counsel have recently expressed interest in trying claims asserted by individual private TPPs (including some of the cases that were originally brought as class actions) prior to the Court's ruling on class issues.

In addition to the TPP claims pending in this MDL proceeding, nearly 100 individual TPP actions are pending in New Jersey state court.  Over the last few months, Judge Higbee has entered discovery orders governing all the TPP cases pending in that proceeding.  The New Jersey orders require all TPP plaintiffs to provide extensive discovery, but set a more expedited schedule for nine lead trial candidates.[1]  Specifically, the court required the lead trial plaintiffs to respond to comprehensive document requests from Merck on March 2, 2009, and has set a July

---

[1]      As discussed further below, the lead trial candidates were selected jointly through discussions among the court, plaintiffs' counsel, and Merck's counsel.

2, 2009 deadline for plaintiffs in the remaining cases to produce the same discovery to Merck. *See* Disc. Order Relating To Merck & Co., Inc.'s Requests For Production To Pls. In All Third-Party Payor Cases, Feb. 19, 2009 ("Feb. 19 Disc. Order") (attached as Ex. 4).

The New Jersey court has also set several other deadlines with respect to the lead trial cases. These include: June 1, 2009 for plaintiffs' expert reports, July 1, 2009 for Merck's expert reports, and August 1, 2009 for dispositive motions.

In 2005, Judge Higbee certified a nationwide class of TPPs in the *Engineers* case in New Jersey. The New Jersey Supreme Court ultimately reversed that certification order, holding that TPP cases cannot proceed as class actions. *See Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076 (N.J. 2007) ("*Engineers*"). As the *Engineers* court explained, "the record speaks loudly in its demonstration that each third-party payor, relying on PBMs and P&T Committees, made individualized decisions concerning the benefits that would be available to its members for whom Vioxx was prescribed." *Id.* The "evidence about separately created formularies, different types of tier systems, and individualized requirements for approval or reimbursement imposed on various plans' members and, to some extent, their prescribing physicians, are significant." *Id.* This mountain of individualized evidence relevant to the causation inquiry "convince[d] [the court] that the commonality of defendant's behavior is but a small piece of the required proofs" in a TPP trial, defeating the "predominance" requirement for class certification. *Id*.

**B.   <u>Consumer Class Actions</u>**

There are also approximately 50 consumer class actions in the MDL proceeding in which plaintiffs seek to represent former Vioxx users asserting various economic loss claims, generally

under consumer fraud and unjust enrichment theories.  (*See, e.g.*, Compl. ¶ 8, *Fontanilles v. Merck & Co., Inc.*, No. 05-447 (attached as Ex. 5) (plaintiff is bringing suit on behalf of "[a]ll individuals who were prescribed and purchased Vioxx for consumption and not resale in the State of Florida"); *id.* ¶ 19 (claiming that "Merck has never disclosed the inherent dangers of Vioxx"); *id.* ¶¶ 24-34 (asserting claims under Florida Deceptive And Unfair Trade Practices Act); *id.* ¶¶ 35-38 (asserting claims for unjust enrichment).)  As discussed above, many of the consumer class actions pending in the MDL have been subsumed into the Purchaser Complaint, which includes 14 "consumers" as named plaintiffs.  Thus, these claims too are subject to Merck's long-pending motion to dismiss and have not yet been the subject of class certification proceedings.

There are also consumer class actions pending in several state courts.  Most notably, the courts presiding over the New Jersey and California Vioxx coordinated proceedings recently heard oral argument on motions to certify proposed economic loss classes including allegations similar to those in the pending economic loss class action cases in this Court.  In December 2008, Judge Higbee conducted a hearing on plaintiffs' class certification motion in the *Martin* and *Kleinman* cases, which seek to certify a nationwide class of former Vioxx users alleging economic loss from purchase of the drug.  Judge Chaney heard oral argument last month on plaintiffs' motion to certify a class of all economic loss plaintiffs (both individual end-users and TPPs) in California.  Judge Chaney is expected to rule on the motion within 90 days.

### C.  <u>Merck's Proposed Schedule</u>

As noted above, pursuant to the Court's order, Merck and plaintiffs exchanged proposed scheduling orders regarding the pending economic loss cases last month.  Merck's proposed

order includes a schedule for moving forward in the remaining individual and TPP purchase actions.  Specifically, Merck's proposed order contemplates resolution of the long-pending motion to dismiss plaintiffs' Purchaser Complaint, while also allowing for simultaneous discovery in the pending individual TPP cases.

       1.     **Dispositive Motions**

Merck's proposed order contemplates a short window for the parties to submit any supplemental briefing regarding Merck's long-pending motion to dismiss the Purchaser Complaint.  (Merck's Proposed CMO § III.A.)  It also provides a short briefing schedule for motions to dismiss TPP cases that were not included in the Purchaser Complaint.  (*Id.*)  To the extent the Court denies any such motions, Merck's proposed order would require filing of a Master Answer to each portion of the Purchaser Complaint that was subject to such a motion within 30 days of the Court's ruling.  (*Id.* § III.B.)  Also to the extent that the Court denies any such motions, plaintiffs' motion for class certification, brief in support, and all expert affidavit(s) in support (if any) would be due 90 days after the Court's ruling on Merck's motion to dismiss.  (*Id.* § III.C.3.)  Merck's opposition to any motion for class certification and expert affidavit(s) (if any), would be due 90 days from the date of plaintiffs' motion for class certification.  (*Id.* § III.C.5.)  And plaintiffs' reply memorandum in support of class certification would be due within 60 days from the date of Merck's opposition to plaintiffs' motion for class certification.  (*Id.* § III.C.7.)  The Court would hold a hearing on the motion for class certification at a date to be determined.  (*Id.* § III.C.8.)

2.       **Bellwether Trial Selection and Discovery**

Merck's proposed order would require the parties to negotiate in an attempt to select representative candidates for a series of bellwether trials in this Court.  (*Id.* § IV.A.)  If the parties cannot agree on the trial candidate cases, the Court would choose the cases based on the parties' recommendations.  (*Id.*)

Under Merck's order, discovery in the TPP cases could commence right away.  With respect to the bellwether trial candidates, the parties would be required to serve master interrogatories and document requests within 75 days after the cases are selected.  (*Id.* § IV.B.2.) Fact depositions in the cases chosen for bellwether trials would be completed within 150 days of the date of selection of the TPP trial cases.  (*Id.* § IV.B.4.)   Thus, these cases would be readied for trial on a tight schedule.

A key difference from plaintiffs' proposed CMO is that written discovery would also proceed in the cases not selected for bellwether trials, albeit on a slower schedule.  For example, parties would have 60 days to respond to written discovery – rather than 30 days.  (*Id.* § IV.B.3, 5.)   The order provides that at a later juncture, oral discovery would commence as well.  (These discovery provisions track the approach adopted by Judge Higbee in the TPP cases pending in the New Jersey coordinated proceeding.)

## <u>ARGUMENT</u>

Merck and plaintiffs have been unable to agree on three key aspects of the economic loss CMO:  (1) whether the Court should decide class certification before holding bellwether trials of TPP cases; (2) how individual TPP cases should be selected for bellwether trials; and (3) the

pace and scope of discovery in TPP cases not selected for bellwether trials.  Below, Merck explains its positions with respect to each of these issues.

**I.      THE COURT SHOULD DECIDE THE ISSUE OF CLASS CERTIFICATION BEFORE TRYING TPP CASES.**

The first area of disagreement between the parties involves Merck's proposal that the Court rule on the pending motion to dismiss the Purchaser Complaint (and any other motions to dismiss filed pursuant to the CMO) and then rule on class certification to the extent the cases survive those motions.  Plaintiffs seek to put the cart before the horse by proceeding with bellwether trials before addressing these threshold issues – and particularly, the question whether TPP cases can be tried on a classwide basis.

Rule 23 instructs courts to address the viability of class treatment at an "early practicable time."  The Purchaser Complaint has already been pending for over three years.  It is now clearly a "practicable" time to address that complaint, and the Court should therefore do so in compliance with the express command of Rule 23.  Just as important, concerns of fairness and efficiency weigh heavily in favor of resolution of class issues first.  As a matter of fairness, Merck is entitled to know whether it is proceeding against individuals or a class.  As a matter of judicial efficiency, resolution of the pending motion to dismiss and of any motion for class certification will greatly assist the parties in resolving the merits of the underlying claims.  Proceeding to trial of individual bellwether TPP cases, in contrast, will do nothing to move the mass aspect of the litigation forward and will operate to Merck's great prejudice.

Rule 23(c)(1)(A) provides that at "an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action."  An "early practicable time" means that time by which "the court has sufficient

information to decide whether the action meets the certification criteria of Rules 23(a) and (b)." MANUAL FOR COMPLEX LITIGATION, 4TH § 21.133, at 252-53.  This language was adopted in 2003 to make clear that courts and parties should not proceed to certification prematurely;[2] certification should be delayed if necessary, for example, to allow for discovery or the development of a class trial plan, *see, e.g.*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318-20 (3d Cir. 2008).  At the same time, however, plaintiffs cannot simply "seek class certification at their own leisure and when it is most convenient for them, rather than in accordance with the requirements of" Rule 23.  *Timothy v. Aqua Finance, Inc.*, No. 2:06-cv-921, 2007 WL 4299808, at *5 (D. Utah 2007).  Instead, the "general notion is that, when feasible, the certification decision should be made promptly," 7AA Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1785.3; *see also* 1 *McLaughlin on Class Actions:  Law & Practice* § 3:1, at 287 (5th ed. 2009) ("the certification decision should not be postponed longer than is needed to develop an adequate record"), and the court is under an obligation to "ensure that the certification decision is not unjustifiably delayed."  Fed. R. Civ. P. 23 advisory committee notes on 2003 amendments.  Consistent with these goals, this Court's local rules enact a default time limit of 90 days for a party to bring a motion for certification after filing a class action.  *See* E.D. La. R. 23.1B ("Within 90 days after the filing of a complaint in a

---

[2]     Rule 23 had previously provided that certification decisions should be made "as soon as practicable."  Fed. R. Civ. P. 23(c)(1) (2002).  The language was amended to "early practicable time" because the prior language "neither reflects prevailing practice nor captures the many valid reasons that may justify deferring the initial certification decision."  Fed. R. Civ. P. 23 advisory committee notes on 2003 amendments.  As explained in the text, no valid reason for deferring ruling on certification exists here.

class action, unless this period is extended on motion for good cause appearing, the plaintiff shall move for a certification under FRCvP 23(c)(1), as to whether the case is to be maintained as a class action.").

Consistent with the clear directive of Rule 23, the Court should address the Purchaser Complaint now.  As already noted, the parties long ago briefed, and this Court heard argument on, the motion to dismiss the Purchaser Complaint.  The Court thus already has extensive familiarity with the matters raised by the complaint and the briefing on the motion to dismiss.  It should therefore resolve that motion and, if necessary, direct the parties to proceed directly to briefing the class certification issue.

None of the reasons that might justify deferred ruling on class issues could justify further delay here.  The advisory committee notes contemplate delay for some purposes – for example, for discovery, for development of a trial plan, for designation of counsel under Rule 23(g), or for resolution of dispositive motions.  Fed. R. Civ. P. 23 advisory committee notes on 2003 amendments.  None of these reasons – nor any other reason – justifies deferred resolution here.  The Court and the parties are familiar with the facts relevant to plaintiffs' economic loss claims.  Plaintiffs have had several years to consider and develop a trial plan.  And there is no dispute over designation of counsel.  The only possible basis for delay on class certification issues is the pendency of Merck's motion to dismiss – the resolution of which is the first item of business under Merck's proposed scheduling order.  *See, e.g.*, *Sevin v. Parish of Jefferson*, No. 08-802, 2009 WL 68880, at *1 (E.D. La. Jan. 9, 2009) (noting that resolution of a motion to dismiss can be important to resolution of commonality and typicality).  In short, the Court and the parties are

ready to proceed on class issues, as illustrated perhaps most clearly by the fact that the New

Jersey and California courts have already addressed economic-loss class actions.

It is clear that plaintiffs' desire to try bellwether TPP cases first is not a legitimate

justification for delayed resolution of class issues.  Resolution of a handful of TPP cases through

trials will do nothing to advance the individual consumer claims, which turn on entirely different

considerations.  Moreover, because each TPP's claims will, by their nature, be distinct from the

claims of other TPPs, it is not clear that resolution of one TPP trial will even advance the

resolution of other TPP cases.  *See Engineers*, 929 A.2d at 1087 ("[P]laintiff does not suggest

that each of these proposed class members, receiving the same information from defendant,

reacted in a uniform or even similar manner.  Rather, the record speaks loudly in its

demonstration that each third-party payor, relying on PBMs and P&T Committees, made

individualized decisions concerning the benefits that would be available to its members for

whom Vioxx was prescribed.").

Even if some marginal benefit could be gained by trying TPP cases now, other courts

have expressly rejected the idea that bellwether cases should be tried in advance of class

certification decisions.  In *Philip Morris Inc. v. National Asbestos Workers Medical Fund*, for

example, the trial court repeatedly declined to resolve class certification, preferring to resolve a

trial on the merits first.  214 F.3d 132, 134 (2d Cir. 2000) (per curiam).  The defendant sought

mandamus, arguing that Rule 23(c)(1) entitled it to a class certification ruling prior to a trial on

the merits.  *Id.*  The Second Circuit agreed.[3]  It explained that resolution of the merits prior to

class certification would undermine the very purpose of Rule 23 by effectively allowing one-way

intervention by class members.  *Id.* at 134-35 ("'[S]uch a procedure contravenes the Rule by

allowing a representative plaintiff to secure the benefits of a class action without first satisfying

the requirements for it.  He is thereby allowed to obtain a determination on the merits of the

claims advanced on behalf of the class without any assurance that a class action may be

maintained.'") (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)); *see also*

*Arreola v. Godinez*, 546 F.3d 788, 800 (7th Cir. 2008) (explaining that "early practicable time"

must mean sometime before the merits of any individual claim are decided because "Rule 23

does not create a form of one-way intervention under which class issues need not be reached

unless or until the plaintiff has won or almost won").  The Second Circuit further noted that

delayed resolution of class certification produces "an atmosphere of confusion" in the trial court

and makes "appellate review more difficult."  *Philip Morris*, 214 F.3d at 134.  In light of these

strong arguments against trying a case before resolving class certification, the court confessed

that "it is 'difficult to imagine cases in which it is appropriate to defer class certification until

after decision on the merits.'"  *Id.* at 135 (quoting *Bieneman v. Chicago*, 838 F.2d 962, 964 (7th

Cir. 1988)); *see also Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060, 1070 (D.

Minn. 2008) (quoting same passage from *Bieneman* in support of proposition that "it is rarely

appropriate for a district court to certify a class after a decision has been rendered on the merits"

---

[3]       The Second Circuit denied mandamus because it had not directly addressed the legal
question before and, having set forth its resolution of the issue, was "confident that the district
court will promptly discharge its obligation to decide the issue of class certification."  *Id.* at 135.

(internal quotation marks omitted)).  To the contrary, "Rule 23(c) imposes on the district court an immediate obligation to decide the issue of class certification and thereby to abate the multi-billion dollar specter of a risk-free intervention decision by thousands of putative plaintiffs." *Philip Morris*, 214 F.3d at 134.

Rule 23's requirement of prompt resolution serves at least two important policy interests, each clearly implicated here.  *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1411 (D.C. Cir. 1984).  The first policy is fairness.

> [D]efendants are entitled to ascertain at the earliest practicable moment whether they will be facing a limited number of known, identifiable plaintiffs or whether they will instead be facing a much larger mass of generally unknown plaintiffs.  Fundamental fairness, as well as the orderly administration of justice, requires that defendants haled into court not remain indefinitely uncertain as to the bedrock litigation fact of the number of individuals or parties to whom they may ultimately be held liable for money damages.

*Id.* at 1411-12; *accord Kitts v. Citgo Petrol. Group*, No. 2:07-cv-1151, 2008 WL 5480569, at *3 (W.D. La. Dec. 16, 2008) ("Fed. R. Civ. P. 23 imposes a duty to issue a certification order '[a]t an early practicable time after a person sues or is sued as a class representative.' . . . 'Class actions are expensive to defend,' . . . , and 'fundamental fairness requires that a defendant named in a suit be told promptly the number of parties to whom it may ultimately be liable for money damages.'") (quoting *Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) and *Siskind v. Sperry Retirement Program, Unisys*, 47 F.3d 498, 503 (2d Cir. 1995)).  These fairness considerations affect both defendants and absent class members alike.  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (noting that prompt resolution "reduce[s] even further the possibility that a party could use the ill-founded threat of a

class action to control negotiations or the possibility that absentees' interests could be unfairly bound."); *Seyboth v. GMC*, No. 8:07-cv-2292, 2008 WL 1994912, at *2 (M.D. Fla. May 8, 2008) ("As other courts have noted, '[a] timely motion for class certification is premised on sound practical considerations,' including preservation and protection of the putative class members' claims.") (quoting *Jones v. Hartford Ins. Co. of the Midwest*, 243 F.R.D. 694, 695 (N.D. Fla. 2006)).

The second policy is judicial efficiency; Rule 23 promotes efficiency "by encouraging courts to proceed to the merits of a controversy as soon as practicable.  That, at bottom, is a matter of simple justice."  *McCarthy*, 741 F.2d at 1412; *Sweat v. Batelle Mem'l Inst.*, No. 2:07-cv-401, 2008 WL 4526021, at *4 (D. Utah Oct. 1, 2008) ("It is in the interest of judicial economy that a class is required to be certified at an early practicable time.").  Relatedly, resolution of class issues saves the trial court and the parties from the possibility that "addressing the merits before certification is resolved may unnecessarily complicate the parties' strategic decisions."  1 *McLaughlin on Class Actions:  Law & Perspective* § 3:1, at 288 (5th ed. 2009). This same policy of judicial efficiency dictates that "courts should rule early on motions to dismiss, challenging whether the plaintiffs have stated a cause of action," prior to certification. MANUAL FOR COMPLEX LITIGATION, 4TH § 21.133, at 253.  Such early resolution "may avoid expense for the parties and burdens for the court" because they "frequently dispose of all or part of the litigation."  *Id.*

These policy considerations resonate loudly here.  The fairness concerns are substantial. Litigation over Vioxx has now spanned nearly a decade.  At this late date, Merck deserves to

know the shape and size of the individual economic-loss claims pool.  Only by addressing the class claims can the Court shed any light on this long-outstanding issue.

Efficiency concerns likewise should direct the attention of the Court and the parties to class issues now.  Resolution of the pending motion to dismiss will help the parties assess which of the economic loss claims (if any) is viable, with potentially enormous implications for the existing inventory of claims.  Resolution of class certification, if necessary, will impart further efficiency gains to the parties by deciding now whether the economic loss cases are amenable at any level to class resolution (which, as the New Jersey Supreme Court recognized, they are not).

For all of these reasons, the Court should adopt Merck's proposed scheduling order and direct its attention first to the pending Purchaser Complaint.

## II.   PLAINTIFFS SHOULD NOT BE ALLOWED TO UNILATERALLY CHOOSE "BELLWETHER" TRIALS.

The second area of disagreement involves the selection of bellwether trial cases.  The parties' proposed orders both contemplate selection of certain TPP cases for bellwether trials in this Court – but they disagree on how the cases would be chosen.  (*See* Merck's Proposed CMO § IV.A; Pls.' Proposed Pretrial Order § II.)

Plaintiffs' proposed order would have plaintiffs choose all of the "Exemplar" TPP cases for bellwether trials.[4]  These cases would be chosen without any input from Merck or the Court, and nothing in plaintiffs' proposed order indicates that any steps would be taken to ensure that

---

[4]     It is unclear whether plaintiffs use the word "exemplar" as a synonym for "bellwether trials," the term that has been consistently used throughout the Vioxx litigation, or whether they believe that the term "exemplar" has additional import.  For ease of understanding, Merck uses the more familiar term in this briefing.

these so-called "exemplar" cases would be representative in any way of the other TPP cases

pending in this proceeding.  Specifically, plaintiffs propose the following:

> Counsel for third party payors shall file and serve a "Notice of
> Exemplar TPPs," to identify no less than three, nor no more than
> six, private third party payors, including Louisiana Health Service
> Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana
> ("BCBSLA") which have authorized designated counsel to
> represent them on a non-class basis for expedited pretrial
> proceedings leading to an adjudication on the merits of their
> claims, and defenses thereto, before this MDL Court, sitting in the
> Eastern District of Louisiana.

(*See* Pls.' Proposed Pretrial Order § II.)

Merck respectfully submits that plaintiffs' proposed selection approach is fundamentally

flawed.  Although bellwether trials are not intended to have a binding effect on other cases, *see*

*Cimino v. Raymark Indus.*, 151 F.3d 297, 319-21 (5th Cir. 1998) (finding the use of binding

bellwether trials inconsistent with the Seventh Amendment right to jury), they should be

designed to give both sides a sense of how their cases will be adjudicated and to inform any

eventual settlement discussions.  Bellwether trials are extremely valuable if they allow courts and

parties to gain a better understanding of the litigation by trying representative cases.  But this can

only occur when a "representative . . . range of cases" is selected.  MANUAL FOR COMPLEX

LITIGATION, 4TH § 22.315.  Clearly, allowing plaintiffs to choose what they consider their "best

cases" would not result in a "representative" sampling.

Instead of plaintiffs' one-sided approach, Merck's proposed order contemplates a

negotiation process between the parties in an effort "to select cases that will produce trials that

will provide helpful information to the Court and the parties about the TPP claims."  (Merck's

Proposed CMO § IV.A.)  Merck's proposed order further suggests that if the parties cannot

agree, the Court will select the bellwether trial candidates from lists proposed by the parties. (*See id.*)[5]  This is what happened in New Jersey:  the parties exchanged proposed lists and then negotiated an agreed set of early trial candidates that was modified by the court during a telephonic hearing held January 15, 2009.

As in New Jersey, Merck would prefer that the parties consult with each other and with the Court about which cases will best serve to "provide helpful information" about the TPP claims.  However, Merck recognizes that the parties may not agree on which cases these are, and believes that bellwether trial candidates chosen by the Court are far more likely to be representative – and thus fulfill the primary role of bellwether trial cases – than cases chosen exclusively by plaintiffs.

III.    <u>**GENERAL DISCOVERY SHOULD PROCEED IN ALL PRIVATE TPP CASES SIMULTANEOUSLY.**</u>

The parties' proposals also differ with respect to discovery in two significant ways.  First, Merck believes that discovery should proceed in all cases, while plaintiffs propose that discovery proceed only in the bellwether cases.  Second, Merck believes that the parties should prepare detailed discovery requests as they would in any other case, while plaintiffs propose that discovery initially be limited to a standard set of core disclosures (that would provide only very basic information about the TPPs).

---

[5]    The Court has previously used a similar procedure in personal injury cases in this proceeding.  *See, e.g.*, Minute Entry, *In re Vioxx Prods. Liab. Litig.*, MDL 1657, E.D. La., Feb. 13, 2006 ("It is further ordered that the parties shall each submit to the Court their lists of five cases [for bellwether trials] and their list[s] of two strikes on February 24, 2006").)

Merck respectfully submits that its approach will better serve the main goal of this proceeding – preparing these cases for trial in an efficient, coordinated manner.

**First,** plaintiffs' proposal that discovery begin only in the plaintiff-chosen "Exemplar" cases (Pls.' Proposed Pretrial Order § V) would undermine efficient resolution of the TPP cases. For starters, conducting discovery in only a small subset of plaintiff-chosen cases will tell the Court and the parties nothing about the other TPP cases in the claims pool, thus diminishing the value of any "bellwether" trials.  As set forth in Section II above, the main purpose of bellwether trials is to "produce a sufficient number of representative verdicts" to "enable the parties and the Court to determine the nature and strength of the claims" at large.  MANUAL FOR COMPLEX LITIGATION, 4th § 22.315 (2004).  But if the parties do not conduct any discovery into the other TPP cases, they will have no way to assess the relevance of any bellwether trial outcomes to the remaining cases.

The parties' experiences in other litigation have shown that TPPs vary dramatically in how they conduct their businesses, including their approaches to the process for putting drugs on their formularies, the roles of P&T Committees in formulary decision-making, what scientific and economic information they consider when deciding to put drugs like Vioxx on their formularies, whether they recover costs through "pass-throughs," and how they currently treat other COX-2 drugs.  Thus, in order to assess the significance of any verdicts in the bellwether cases, the parties will need more complete information about the other pending cases.  In short, without initial general discovery into all the TPP cases, the Court will simply preside over a serious of individual trials that will provide no insight regarding any aspect of any other pending case.

18

**Second**, plaintiffs ask the court to limit initial discovery to certain core disclosures, including communications between Merck and each plaintiff and basic information about the number and cost of Vioxx prescriptions reimbursed.  (Pls.' Proposed Pretrial Order § V(a).) Instead of this overly narrow discovery, Merck has proposed that the parties serve interrogatories and document requests as they would in any other case proceeding toward trial.  (*See* Merck's Proposed CMO § IV.B.2.)

Plaintiffs' proposal is woefully inadequate.  The information plaintiffs propose to provide, while helpful, is only the tip of the iceberg as far as the necessary discovery to bring these cases to a trial-ready posture.  The payor plaintiffs allege that Merck's misrepresentations and omissions defrauded not just the plaintiffs, but various third-party pharmacy benefits managers, prescribing physicians, insureds and the FDA itself.  In addition, plaintiffs generally aver that but for alleged conduct by Merck, they would have reimbursed alternative medications to Vioxx at lower cost, putting the efficacy, safety, and cost of other drugs in Vioxx's therapeutic class directly at issue.  Merck should be permitted to serve discovery requests that address these issues.

Plaintiffs' narrow discovery proposal has already been tried (and has already failed) in the New Jersey coordinated proceeding.  Judge Higbee originally entered a discovery order for TPP cases that was very similar to the order plaintiffs seek here.  *See* Initial Core Disc. Order Relating To Third-Party Payor Cases, July 22, 2008 (attached as Ex. 6).  Plaintiffs were only required to designate and produce documents from custodians who interacted with Merck or held decision-making authority for prescription drug formularies, and to provide the total number and cost of Vioxx prescriptions reimbursed.  *See id.*  However, it soon became apparent to the parties

and the Court that the basic information plaintiffs provided under this order would not

adequately move the cases toward trial.  Plaintiffs produced few relevant documents, in part

because the scope of discovery sought by the order was too narrow and in part because the

majority of the plaintiffs contracted responsibility for pharmacy benefits management out to third

parties.[6]  The New Jersey court ultimately recognized that the core discovery order had not led to

the production of significant, relevant discovery from plaintiffs.  *See, e.g.*, Tr. 23:1-7, Jan. 28,

2009 (attached as Ex. 7) ("To have an early trial we have to move discovery quickly.  To move

discovery defense has indicated – [Merck's counsel] has indicated all along that [they] felt that

the plaintiffs were going to have to produce more than the defendants were going to have to

produce . . . because you already have so much discovery from them.").  Unfortunately, by the

time the Court and the parties realized that the original approach was not working, six months

had already passed.

 With the pace of discovery lagging, Merck then served comprehensive document requests

on the TPP plaintiffs in order to acquire the necessary information to move the cases toward trial.

The New Jersey court expeditiously ruled on plaintiffs' objections and ordered that all plaintiffs

respond to the comprehensive discovery.  *See* Feb. 19 Disc. Order.  Plaintiffs in the lead trial

pool were ordered to respond more quickly than the remaining plaintiffs, but, as noted above, all

plaintiffs are required to provide full responses to Merck on a set schedule.  Production of these

---

[6]     Most notably, the original order did not require production of documents related to:  other
drugs covered by the plaintiff TPPs, interactions with pharmacy benefits managers,
pharmacoeconomic analyses, rebates on Vioxx and other prescription drugs, utilization reviews
and therapeutic substitution studies, analysis of premiums, and numerous other issues directly
relevant to plaintiffs' claims.

documents will provide Merck with the necessary materials to depose the plaintiffs' key employees and will allow the parties to meet the demands placed on them by the court's discovery and pretrial schedule.  It will also help the parties better understand the full scope of the New Jersey litigation, rather than just the nine cases chosen as lead trial candidates.

In sum, plaintiffs propose that they be required to submit only to very narrow discovery requests, while a small number of cases proceed toward bellwether trials.  They make this proposal even as they continue to claim that they are entitled to substantial sums of money from Merck and even though a similar approach failed in New Jersey.  Insurance companies and other TPPs are sophisticated entities familiar with litigation.  Certainly, they understood that filing a lawsuit would entail discovery obligations.  There is no basis to allow these parties to proceed with such significant claims against Merck without requiring them to provide basic discovery about their cases.  This is particularly so when TPP plaintiffs in New Jersey *are* being required to respond to reasonable, relevant discovery about their claims.  If plaintiffs' approach is adopted, it would send TPPs fleeing to this Court to evade the basic discovery obligations imposed in the New Jersey proceeding.

For all of these reasons, Merck respectfully submits that this Court should learn from the parties' experiences in New Jersey and adopt a comprehensive discovery plan now, rather than the inadequate plan proposed by plaintiffs.

## **CONCLUSION**

For the foregoing reasons, the Court should adopt Merck's proposed Case Management Order governing the pending economic loss claims in this proceeding.

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Defendants' Liaison Counsel

And

John H. Beisner
Jessica Davidson Miller
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

Attorneys for Merck & Co., Inc.