

RECEIVED
U.S. DISTRICT COURT
EAST DISTRICT OF LA
2005 MAY -2  PM 4: 19
LORETTA G. WHYTE
CLERK

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HEALTH PLUS OF LOUISIANA, INC., a Louisiana corporation; | § § § | CIVIL ACTION NO. **05-1644** |
| Plaintiff, | § § | MAGISTRATE: |
| VS. | § § § § | JUDGE: **SECT. L MAG. 3** |
| MERCK & CO., INC., a New Jersey corporation; | § § § | |
| Defendant. | § | |

### ORIGINAL COMPLAINT

NOW COMES Health Plus of Louisiana, Inc., a Louisiana corporation ("Health Plus") and files this Original Complaint against Merck & Co., Inc., a New Jersey corporation ("Merck"), and alleges as follows:

### I.

### INTRODUCTION

1.    This case involves the prescription drug Vioxx® ("Vioxx"), which was researched, developed, manufactured, marketed, promoted, advertised and sold by Defendant Merck for relief of pain and inflammation (swelling and soreness) of osteoarthritis, rheumatoid arthritis, management of short-term pain, treatment of menstrual pain, and treatment of migraine headaches. At all times

M002D28849

relevant to this action, Merck misrepresented the safety of Vioxx and negligently manufactured, marketed, advertised, promoted and sold Vioxx as a safe prescription medication when, in fact, Merck knew, and had reason to know, that it was not safe for its intended purpose for patients for whom it was prescribed and to whom it was sold; and that Vioxx caused serious medical problems, and in certain patients, catastrophic injuries and deaths.

## II.

### PARTIES

2.     Health Plus is a Louisiana corporation with its principal place of business in Shreveport, Louisiana. Health Plus is an HMO and it has provided health care benefits to individuals who are members of Health Plus.

3.     Defendant Merck was and is a pharmaceutical company incorporated under and by virtue of the laws of the State of New Jersey.  Its headquarters is located at One Merck Drive, Whitehouse Station, New Jersey.

4.     Merck does business throughout the United States and worldwide selling its pharmaceutical products.

5.     At all times relevant, Merck developed, manufactured, promoted, advertised, distributed and sold Vioxx in interstate commerce and throughout the United States, including this jurisdiction.

M002D28850

6.     At all times relevant, Merck was engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling, promoting, advertising and marketing, either directly or indirectly through third parties or related entities.

### III.

#### JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred, in part, in the Eastern District of Louisiana and Merck "resides" in the Eastern District of Louisiana law defined by 28 U.S.C. § 1381 ©.

### IV.

#### RIGHTS ASSERTED BY HEALTH PLUS

9.     Health Plus is an HMO and, on behalf of its members, it has paid or will pay the following:

a.     the cost of the drug;

b.     any and all medical expenses fro Vioxx-related injuries to its insureds; and

c.     future medical expenses for Vioxx-related injuries to its insureds.[1]

---

[1]     Amounts claimed by Health Plus herein do not include the portion paid directly by the Insured, such as deductibles or co-payments.

M002D28851

As such, Health Plus is contractually, equitably, and lawfully allowed to pursue, both directly and by subrogation in this action, the amounts paid by Health Plus. Health Plus asserts all of these rights in this action.

## V.

### FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

10.     Vioxx is the brand name of Rofecoxib, a Cox-2 inhibitor. Cox-1 and Cox-2 inhibitors are members of a class of drugs known as nonsteroidal anti-inflammatory drugs ("NSAIDs") used for pain relief. Vioxx contains cyclooxygenase 2 ("Cox-2") inhibitory properties, which means that it inhibits an enzyme to control pain. Generally, NSAIDs prevent the formation of fatty acid cyclooxygenases, certain enzymes, of which there are two known types ("Cox-1" and "Cox-2").

11.     Vioxx, unlike other drugs in the class of NSAIDs, is generally different from the other NSAIDs because it is solely a Cox-2 inhibitor. As a Cox-2 inhibitor, it does not alter the Cox-1 enzymes, thereby theoretically decreasing the gastrointestinal complications commonly associated with NSAIDs. Further, the inhibition of Cox-2 enzymes is purported to decrease pain and inflammation.

12.     However, Vioxx, unlike the other members of the NSAIDs class, contributes to the aggregation of blood platelets, and thereby contributes to hypertension and clotting and can, in certain patients, cause catastrophic adverse side effects such as myocardial infarctions (heart attacks), which may be silent; ischemic strokes; and deep vein thrombosis.

M002D28852

13.     Merck knew, and had reason to know, of these serious adverse events occurring in patients who took Vioxx at a single dose of 25 mg or at a double dose of 50 mg each. Merck failed to advise the FDA, the medical community, and the patients about these dangerous side effects incident to Vioxx use.

14.     At all times relevant, Vioxx was promoted and advertised by Merck directly to consumers, including Plaintiff, and to medical care providers as a pain reliever, similar to Ibuprofen and Aleve, but without any of the known side effects. Ibuprofen, Naproxen, Celebrex, and the other nonsteroidal anti-inflammatory pain relievers can, in certain patients, cause damage to the mucus membrane of the gut with long term use. Merck advertised, marketed and promoted Vioxx as a safe alternative that would not have the same deleterious and painful impact on the gut but was just as effective for pain relief.

15.     Medical care providers and consumers relied on Merck's promise that Vioxx was a safe alternative, easy to use, and perfect for long term use. As a result, Merck sold millions of prescriptions of Vioxx worldwide and in the United States.

16.     In 1999, Merck launched its direct-to-consumer sales and marketing program. Sales of Vioxx soared to $2.5 billion in 2003 alone on the strength of the biggest direct-to-consumer marketing campaign ever used by a pharmaceutical company for a prescription medication.

17.     Merck spent an estimated $45 million in advertising Vioxx in 2004 alone.

18.     However, signs of Vioxx's risks of serious adverse events emerged soon after the FDA approved Vioxx for sale on May 20, 1999, but were ignored and downplayed by Merck.

M002D28853

19.     After Vioxx was approved and made available for sale in the United States and worldwide in 1999, Merck sponsored a clinical study known as the Vioxx Gastrointestinal Outcomes Research Study (the "VIGOR study") to obtain information regarding clinically meaningful gastrointestinal events and, purportedly, to develop a large controlled database for overcall safety assessment. At the conclusion of the VIGOR study, it was reported that serious cardiovascular events occurred in 101 patients who took Vioxx, as compared to 46 patients who took Naproxen, an over-the counter NSAID.[2]

20.     The result of the VIGOR study was made public. However, Merck deliberately obscured the statistical significance of the VIGOR study, stating that it was confirming "the favorable cardiovascular profile for Vioxx . . . in response to speculative news reports."

21.     When Merck's marketing strategy began in the 1990s, it began to aggressively market and sell its product by falsely misleading potential users about the products and by failing to protect the consumers from serious dangers which Merck knew, or should have known, would result from the use of Vioxx.

22.     Merck marketed Vioxx in the United States by undertaking an advertising campaign extolling the virtues of Vioxx in order to induce widespread use of Vioxx. This direct-to-consumer advertising campaign consisted of advertisements, promotional literature to be placed in the offices

---

[2]     The Vigor study independently confirmed a prior study known as Study "090", also indicating an increased risk in cardiovascular events.

M002D28854

of doctors and other health care providers, HMOs, and promotional materials provided directly to potential Vioxx users themselves.

23.    The advertising campaign as a whole sought to create the image, impression and belief that the use of Vioxx was safe for adults, had fewer side effects and adverse reactions than other pain relief medications and would not interfere with daily life, even though Merck knew that these representations were false. Furthermore, Merck had no reasonable grounds to believe that any of the representations were true.

24.    Merck purposefully misrepresented, understated and otherwise downplayed the serious health hazards and risks associated with long term Vioxx use – exactly that for which Vioxx was most often prescribed.

25.    Merck, through the Vioxx promotional literature, audio conferences, professional meetings, press releases, and advertisements, deceived potential consumers by relaying positive information, including testimonials from satisfied consumers, and manipulated the statistics to suggest widespread acceptability and safety of the product, which intentionally understating the known adverse and serious health risks associated with the use of Vioxx.

26.    Merck concealed materially relevant information from potential Vioxx consumers and healthcare providers and physicians, and minimized user and prescriber concerns regarding the safety of Vioxx, while knowing that this materially relevant information was critical to the care of the consumers and critical to the care provided by doctors and other health care providers for their patients.

M002D28855

27.     Merck falsely misrepresented the severity, frequency and nature of adverse health effects caused by Vioxx and falsely represented that adequate testing had been conducted concerning Vioxx.

28.     The FDA wrote a "Warning Letter" to Merck on September 17, 2001 (hereinafter, the "Warning Letter"), which demanded that Merck correct the false and misleading messages contained in the promotional campaign for Vioxx, press releases and oral representations made by Merck sales representatives to promote Vioxx.

29.     The FDA's Division of Drug Marketing, Advertising, and Communications ("DDMAC") reviewed the Vioxx promotional activities and materials and "concluded that they are false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations."

30.     Most, if not all, of the noted misrepresentations were made in reference to the VIGOR study conducted by Merck. According to DDMAC, Merck "engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcome Research (VIGOR) study, and thus, misrepresents the safety profile of Vioxx. Specifically, your promotional campaign discounts the fact that in the VIGOR study patients on Vioxx were observed to have a four to fivefold increase in myocardial infarctions (MIs) compared to patients on the comparator nonsteroidal anti-inflammatory drugs (NSAID), Naprosyn (naproxen)." The Warning Letter was released by the FDA on September 17, 2001, and posted by the FDA on September 21, 2001.

31.     The Warning Letter delineated the following misrepresentations made during six promotional audio conferences presented on behalf of Merck by Peter Hold, M.D., which were moderated by Merck employees, a press release, and oral representations made by Merck sales representatives to promote Vioxx.  According to the Warning Letter, Merck misrepresented that:

a.      The rate of myocardial infarction was minimized.  For example, in the June 21, 2000, audio conference, Merck began the discussion of the myocardial infarction rates observed in the VIGOR study by stating: "when you looked at the myocardial infarction global rate, the rate was different for the two groups.  The MI rate for Vioxx was 0.4% and if you looked at the Naproxen arm it was 0.1%, so there was a reduction in the MI's in the Naproxen group."  Merck then presented an explanation when in fact the situation was not at all that clear.  The DDMAC wrote that as Merck knew, "the reason for the difference between Vioxx and Naproxen has not been determined; it is also possible that Vioxx has pro-thrombotic properties."

b.      Merck knew that the promotional statement was false because the reason for the difference between the myocardial infarction outcomes for the Vioxx users versus the Naproxen users had not yet been determined.

c.      Merck carefully excluded from the promotional literature that Vioxx may have pro-thrombotic properties, therefore providing an explanation for the increase in adverse cardiac events.

M00D28857

d.      Further, DDMAC said that Merck had claimed that the myocardial infarction rate for

naproxen was 02% and for Vioxx it was 0.1%, which was completely inaccurate.

DDMAC wrote: "Contrary to [Merck's] claim that there was a higher rate of MIs in

the naproxen group compared to the Vioxx group, the MI rate for Vioxx in this

subpopulation was 12 MIs among 3877 patients (0.3%) as compared to 4 MIs among

3878 patients (0.1%) for naproxen." The Warning Letter, p. 4.

e.      Merck, its agents and/or its representatives falsely claimed that the myocardial

infarction rate associated with the use of Vioxx was 0.4% in the VIGOR study, which

Merck claimed was basically the same as or a little bit less than the crude myocardial

infarction rate of Celebrex in a study involving Celebrex.  DDMAC found these

Merck claims to be false and misleading.

f.      Merck and its agents and representatives misrepresented claims regarding the

efficacy of Vioxx as compared to its competitor, Pfizer's Celebrex.  When publicly

comparing the VIGOR study to a study done on Pfizer's Celebrex known as

"CLASS," Merck failed to inform consumers that the patient populations in the two

studies, the one performed on Pfizer's Celebrex versus the one performed on Merck's

Vioxx, were extremely different.  For instance, the VIGOR study excluded patients

who had angina or congestive heart failure with symptoms that occurred at rest or

with minimal activity as well as patients taking aspirin or other antiplatelet agents.

The Celebrex CLASS study did not exclude these patients, therefore making it more

M002D28858

likely that the CLASS trial included patients with a higher risk for myocardial infarction prior to their ingestion of Celebrex.  Nevertheless, Merck used the results from the comparison of the two studies VIGOR to CLASS to misrepresent that Vioxx was more effective, safer, and, therefore, a better drug than Celebrex, when indeed, Merck knew that this assertion was false.

g.      Merck and its agents and/or its representatives failed to point out that the more affordable alternative, Naproxen, had been statistically proven to produce half as many myocardial infarctions than Vioxx had.  These misrepresentations and omissions were made not only at the promotional audio conferences in June of 2000, but also at the annual meeting of the American Society of Health-Systems Pharmacists ("ASHP") in Los Angeles, California, on June 3 through 6, 2001.

32.      Merck and its agents and/or representatives made false statements about the risks of Vioxx therapy in patients who were taking warfarin.  For example, at an audio conference on June 16, 2000, Merck stated:  ". . . if you look at the thromboembolic agents, it is very clear that these selective COX-2 inhibitors (of which Vioxx is a member) have the benefit of not having platelet aggregation and bleeding time, and therefore, can be used safely in terms of post-op and with Coumadin." This statement is directly contradicted by the precaution in the package Insert, reprinted in the Physicians Desk Reference ("PDR"), and to be included with each prescription of Vioxx states: ". . . in post-marketing experience, bleeding events have been reported, predominantly in the

M002D28859

elderly, in association with increases with prothrombin time in patients receiving Vioxx concurrently with warfarin."

33.     Merck's promotional audio conferences failed to present serious and significant risks associated with Vioxx therapy.  Contrary to the Package Insert, Merck failed to state that Vioxx is contraindicated in patients who have experienced asthma, uticaria, or allergic type reactions after taking aspirin or other NSAIDs.

34.     Merck also omitted the gastrointestinal warning about the possibility of serious gastrointestinal toxicity such as bleeding, ulceration or perforation in patients taking Vioxx.

35.     As a result of Merck's advertising and marketing efforts and the misrepresentations concerning Vioxx, Vioxx continued to be pervasively prescribed throughout the United States until its withdrawal from the market on or about September 30, 2004.

36.     If Plaintiff and the Members had known the risks and dangers associated with Vioxx, they would never have paid for and/or taken Vioxx.  Consequently, the Members would never have been threatened by and subject to its catastrophic side effects and resulting damages.

## VI.

### TOLLING OF APPLICABLE STATUTES OF LIMITATION

37.     Any and all potentially applicable statutes of limitations have been tolled by Merck's affirmative and intentional acts of fraudulent conduct, concealment, and misrepresentation alleged above, which estop Merck from asserting statutes of limitation.  Such acts include, but are not

M00ZD28860

limited to, intentionally covering up and refusing to disclose the material risks associated with the use of Vioxx.

38.    Merck is estopped from relying on any statutes of limitation because of its fraudulent concealment and misrepresentation alleged above. Merck was under a duty to disclose the risks of cardiac and cerebrovascular events associated with the use of Vioxx because this is nonpublic information over which it had exclusive control, because Merck knew this information was not readily available to Plaintiff and the Members, and because this information was relevant to Plaintiff and the Members in deciding whether to use Vioxx.

39.    Until very recently, consumers had no knowledge that Merck was engaged in much of the wrongdoing alleged herein. Because of the fraudulent and active concealment of the wrongdoing by Merck, including, but not limited to, deliberate efforts – which continue to this day – to give Plaintiff, and presumably its Members, the materially false impression that Merck undertook all feasible safety precautions to reduce the risk of adverse cardiac events and cerebrovascular events, Plaintiff, and presumably its Members, could not reasonably have discovered the wrongdoing any time prior to this time, nor could Plaintiff, and presumably its Members, have, as a practical matter, taken legally effective action given the unavailability, until very recently, of internal memoranda and other documents (as generally described herein) as evidence in support of the claims herein.

M002D28861

## VII.

### CLAIMS FOR RELIEF

### COUNT ONE: NEGLIGENCE

40.     All previous paragraphs of this Complaint are incorporated by reference as if fully set forth herein and further allege as follows.

41.     At all relevant times, Merck had and continues to have a duty to exercise reasonable care to properly prepare, design, research, develop, manufacture, inspect, label, market, promote, advertise and sell Vioxx, which it introduced in the stream of commerce, including a duty to ensure that Vioxx did not cause users to suffer from unreasonable, dangerous or untoward adverse side effects.

42.     At all times relevant, Merck owed a duty to properly warn Plaintiff and Members of the risks, dangers and adverse side effects of Vioxx.

43.     Merck breached its duty by failing to exercise ordinary care in the preparation, design, research, development, manufacturing, inspection, labeling, marketing, promotion, advertising and selling of Vioxx, which it introduced into the stream of commerce, because Merck knew, or should have known, that Vioxx created the risk of unreasonable, dangerous or untoward adverse side effects.

44.     Merck knew, or in the exercise of reasonable care should have known, that Vioxx was of such a nature that, if not properly prepared, designed, researched, developed, manufactured,

inspected, labeled, marketed, promoted, advertised and sole, that Vioxx was likely to cause injury to those who took the drug.

45.   Merck was negligent in the preparation, design, research, development, manufacturing, inspection, labeling, marketing, advertising, promotion and selling of Vioxx in that it:

a.   failed to use due care in the preparation of Vioxx to prevent the aforementioned risks to individuals when the drug was ingested;

b.   failed to use due care in the design of Vioxx to prevent the aforementioned risks to individuals when the drug was ingested;

c.   failed to conduct adequate pre-clinical testing and research to determine the safety of Vioxx;

d.   failed to conduct adequate post-marketing surveillance to determine the safety of Vioxx;

e.   failed to accurately disclose the results of its post-marketing surveillance to advise Plaintiff, the Members, the consumers, and the medical community of the aforementioned risks to individuals when the drug was ingested;

f.   failed to accompany its products with proper warnings regarding all possible adverse side effects associated with the use of Vioxx;

g.   failed to use due care in the development of Vioxx to prevent the aforementioned risks to individuals when the drug was ingested;

M00ZD28863

h.      failed to use due care in the manufacture of Vioxx to prevent the aforementioned risks to individuals when the drug was ingested;

i.      failed to use due care in the inspection of Vioxx to prevent the aforementioned risks to individuals when the drug was ingested;

j.      failed to use due care in the labeling of Vioxx to prevent the aforementioned risks to individuals when the drug was ingested;

k.      failed to use due care in the marketing of Vioxx to prevent the aforementioned risks to individuals when the drug was ingested;

l.      failed to use due care in the promotion of Vioxx to prevent the aforementioned risks to individuals when the drug was ingested;

m.      failed to use due care in the advertisements in connection with the sale and marketing of Vioxx to prevent the aforementioned risks to individuals when the drug was ingested;

n.      failed to use due care in the selling of Vioxx to prevent the aforementioned risks to individuals when the drug was ingested;

o.      failed to provide adequate training and information to healthcare providers for the appropriate use of Vioxx;

p.      failed to warn Plaintiff, Members and healthcare providers, prior to actively encouraging and promoting and advertising the sale of Vioxx, either directly or indirectly, orally or in writing; and

q.      were otherwise careless and negligent.

46.     Despite the fact that Merck knew or should have known that Vioxx caused unreasonable and dangerous side effects which many users would be unable to remedy by any means, Merck continued to promote and market Vioxx to consumers, including Plaintiff and Members, when safer and more effective methods of pain relief were available.

47.      Merck knew, or should have known, that consumers such as Plaintiff and Members would foreseeably suffer injury as a result of Merck's failure to exercise ordinary care as described above.

48.     Merck was, or should have been, in possession of evidence demonstrating that Vioxx caused serious side effects.  Nevertheless, Merck continued to market Vioxx by providing false and misleading information with regard to the safety and efficacy of Vioxx.

49.     Merck's actions, as described above, were performed willfully, intentionally and with reckless disregard for the rights of Plaintiff and Members.

50.     As a result of Merck's conduct, Plaintiff and Members have suffered damages specified herein.

51.     Merck, as a New Jersey corporation, is also subject to its laws as well as other applicable laws.

52.     Products manufactured and/or supplied by Merck were defective in design or formulation in that, when they left the hands of the manufacturer and/or supplier, the foreseeable risks exceeded the benefits associated with the design or formulation of Vioxx.

M002D28865

53.    Vioxx was expected to and did reach Members without substantial change in condition.

54.    Alternatively, the Vioxx manufactured and/or supplied by Merck was defective in design or formulation because when the Vioxx left the hands of the manufacturer and/or supplier, it was unreasonably dangerous and more dangerous than an ordinary consumer would expect.

55.    The Vioxx product manufactured and supplied by Merck was defective due to inadequate warnings, inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the post-approval clinical trials, testing and study.

56.    The Vioxx product manufactured and supplied by Merck was defective due to inadequate post-marketing warnings or instructions because, after Merck knew or should have known of the risks of injury from Vioxx products, it failed to provide adequate warnings to the medical community and consumers, to whim it was directly marketing and advertising; and, further, it continued to promote Vioxx as safe and effective.

57.    The Vioxx products were manufactured, distributed, tested, sold, marketed, advertised, promoted and represented defectively by Merck, and as a direct and proximate cause of Merck's defective design of Vioxx products, Plaintiff purchased Vioxx, Members ingested Vioxx, and Members suffered and will continue to suffer personal injuries and/or deaths as a result.

58.    The Vioxx product manufactured and/or supplied by Merck was not accompanied by appropriate or proper warnings to physicians, the medical community and the consuming public and

M002D28866

patients for whom it was intended, regardless of all possible adverse side effects associated with the use of Vioxx and the severity and duration of such adverse effects.

59.    Information given to the medical community and to consumers, especially the information contained in the advertising and promotional materials, did not accurately reflect the symptoms, scope or severity of the potential side effects known with the use of Vioxx.

60.    Merck failed to perform adequate testing, which would have shown that Vioxx products had the potential to cause serious side effects with respect to which full and proper warnings, accurately and fully reflecting symptoms, scope and severity, should have been made. Merck failed to accurately report post-marketing clinical study reports and reports of adverse events associated with the use of Vioxx.

61.    Vioxx products manufactured and supplied by Merck were defective due to inadequate post-marketing warnings and instructions because, even after Merck knew, or should have known, of the risks of injury and death from Vioxx products, Merck failed to provide adequate warnings to physicians and to consumers.   Nevertheless, Merck continued to promote Vioxx aggressively.

62.    Had adequate warnings and instructions been provided, Plaintiff would never have purchased Vioxx, Members would never have taken Vioxx as they did, and Members would not have suffered the harmful side effects or death described herein.

M002D28867

63.     Merck was, or should have been, in possession of evidence demonstrating that Vioxx caused serious side effects. Nevertheless, Merck continued to market its products by providing false and misleading information with regard to the safety and efficacy of Vioxx.

64.     As a result of Merck's conduct, Plaintiff and Members have suffered damages as specified herein. Plaintiff is entitled to recover for these damages as set forth above.

### COUNT TWO: BREACH OF WARRANTIES (EXPRESS AND IMPLIED)

65.     All previous paragraphs of this Complaint are incorporated by reference as if fully set forth herein and further allege as follows.

66.     Merck, through descriptions, affirmations of fact, and promises relating to Vioxx to the FDA, prescribing physicians, and the general public, including Plaintiff and Members, expressly warranted that Vioxx was both safe and efficacious for its intended use. These warranties came in the form of:

a.      publicly made written and verbal assurances of the safety and efficacy of Vioxx;

b.      press releases, interviews and dissemination via the media of promotional information, the sole purpose of which was to create demand for Vioxx, which failed to warn of the risks inherent to the ingestion of Vioxx, especially to the long-term ingestion of Vioxx;

c.      verbal assurances made by Merck regarding Vioxx and the downplaying of any risk associated with the drug;

M00ZD28868

    d.      false and misleading information supplied by Merck and published in the PDR on an

annual basis, upon which physicians were forced to rely in prescribing Vioxx,

including, but not limited to, information relating the recommended duration of the

use of Vioxx;

    e.      promotional pamphlets and brochures published and distributed by Merck and

marketed directly to consumers, which contradicted the information that was set forth

in the package insert and PDR; and

    f.      advertisements.

67.      The documents referred to above were created by and at the direction of Merck.

68.      At the time of these express warranties, Merck had knowledge of the purpose for

which Vioxx was to be used and warranted it to be in all aspects safe, effective and proper for such

purpose, which indeed it was not.

69.      Merck knew and had reason to know that Vioxx did not conform to these express

representations in that Vioxx is neither safe nor as effective as represented, and that Vioxx produces

serious adverse side effects.

70.      As such, Merck's products were neither in conformity to the promises, descriptions

or affirmations of fact made about Vioxx nor adequately contained, packaged, labeled or fit for the

ordinary purpose for which these goods were sold and used.

71.      Merck breached these express warranties in violation of the applicable provisions of

the Uniform Commercial Code by:

M002D28869

a.   manufacturing, marketing, packaging, labeling and selling Vioxx in such a way that misstated the risks of injury, without warning or disclosure thereof by package or label of such risks to Plaintiff, Members, prescribing physicians or pharmacists, and without modifying or excluding such express warranties;

b.   manufacturing, marketing, packaging, labeling, advertising, and selling Vioxx, which failed to counteract the negative health effects and increased risks in a safe and permanent manner; and

c.   manufacturing, marketing, packaging, labeling, advertising, promoting and selling Vioxx, thereby causing increased risk of serious physical injury and harm, pain and suffering.

72.   Merck was, or should have been, in possession of evidence demonstrating that Vioxx caused serious side effects. Nevertheless, Merck continued to market Vioxx by providing false and misleading information without regard to the safety and efficacy of Vioxx.

73.   Merck's actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiff and Members.

74.   As a result of Merck's conduct, Plaintiff and Members have suffered damages specified herein. Plaintiff is entitled to recover for these damages as set forth above.

### COUNT THREE: STRICT PRODUCT LIABILITY – DESIGN DEFECT

75.   All previous paragraphs of this Complaint are incorporated by reference as if fully set forth herein and further allege as follows.

M002D28870

76.     Merck is the manufacturer and/or supplier of Vioxx and placed this drug into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of Vioxx.

77.     Vioxx was defective in design or formulation in that when Vioxx left the hands of the manufacturer and/or supplier, the foreseeable risks exceeded the benefits associated with the design or formulation.

78.     Vioxx was expected to and did reach the Members without substantial change in condition.  Alternatively, Vioxx, manufactured and/or supplied by Merck, was defective in design or formulation in that when Vioxx products left the hands of Merck, the Vioxx was unreasonably dangerous and more dangerous than an ordinary consumer would expect.

79.     Vioxx was defective due to inadequate warnings and/or inadequate clinical trials, testing and study; inadequate exposure of the real risks inherent with the drug as determined by clinical trials; and inadequate reporting of the results of the clinical trials and post-marketing clinical experiences with the drug.

80.     Vioxx was defective due to inadequate post-marketing warnings or instructions because after Merck knew or had reason to know of the risk of injury from Vioxx, it failed to provide adequate warnings to the medical community and the consuming public; and continued to promote and advertise Vioxx as safe and effective.

81.     Vioxx was manufactured, distributed, tested, sold, marketed, advertised and represented defectively by Merck.  And, as a direct and proximate cause of Merck's defective design

M002D28871

of Vioxx, Members ingested Vioxx and suffered, and will continue to suffer, increased risk of personal injuries, pain and suffering and/or deaths.

82.     Merck was, or should have been, in possession of evidence demonstrating that Vioxx caused serious side effects. Nevertheless, Merck continued to market its products by providing false and misleading information with regard to the safety and efficacy of Vioxx.

83.     Merck's actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiff and Members.

84.     As a result of Merck's conduct, Plaintiff and Members have suffered damages specified herein. Plaintiff is entitled to recover for these damages as set forth above.

## COUNT FOUR: STRICT PRODUCT LIABILITY – FAILURE TO WARN

85.     All previous paragraphs of this Complaint are incorporated by reference as if fully set forth herein and further allege as follows.

86.     Merck placed Vioxx into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of Vioxx.

87.     Vioxx was not accompanied by proper warnings to physicians, the medical community, Plaintiff, Members, and other consumers regarding possible adverse side effects associated with the use of Vioxx, especially associated with the use of Vioxx, and the comparative severity and ratio of such adverse effects.

M002D28872

88.   Vioxx was not accompanied by truthful and adequate warnings to physicians, the medical community and the consuming public regarding its contrasting adverse effect associated with Vioxx as compared with other NSAIDs drugs and the comparative safety and duration of such adverse side effects.

89.   The warnings and information given to the medical community, the public, Plaintiff, and Members did not accurately reflect the symptoms, scope of severity of the potentially catastrophic and fatal side effects inherent with the use of Vioxx.

90.   Merck failed to perform adequate testing which would have shown that Vioxx possessed serious potential side effects with respect to which full and proper warnings, accurately and fully reflecting symptoms, scope and severity, should have been made.

91.   Vioxx was defective due to inadequate post-marketing warnings or instructions because, even after Merck knew, or should have known, of the risks of injury and death from Vioxx, it failed to provide adequate warnings to physicians or consumers. And, despite its inadequate post-marketing warnings and instructions to physicians, the medical community, and consumers, Merck continued to promote Vioxx aggressively by blitz advertising and marketing Vioxx directly to the consumers.

92.   Had adequate warnings or instructions been provided, Plaintiff would not have purchase the drug, Members would not have taken the drug as they did, and Members would not have suffered the increased risk and harmful side effects or deaths which occurred in this case.

M002D28873

93.     Vioxx was manufactured distributed, tested, sold, marketed, advertised, promoted and represented defectively by Merck, and as a direct and proximate cause of Merck's failure to supply appropriate warnings for Vioxx, Members ingested Vioxx, and Members suffered and will continue to suffer personal injuries and/or deaths as a result.

94.     Merck was, or should have been, in possession of evidence demonstrating that Vioxx caused serious side effects.  Nevertheless, Merck continued to market its products by providing false and misleading information with regard to the safety and efficacy of Vioxx.

95.     Merck's actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiff and Members.

96.     As a result of Merck's conduct, Plaintiff and Members have suffered damages specified herein.  Plaintiff is entitled to recover for these damages as set forth above.

### COUNT FIVE: FRAUD AND MISREPRESENTATION

97.     All previous paragraphs of this Complaint are incorporated by reference as if fully set forth herein and further allege as follows.

98.     Merck fraudulently, intentionally, and/or negligently misrepresented the safety and effectiveness of Vioxx and fraudulently, intentionally and/or negligently concealed material adverse information regarding the safety and effectiveness of Vioxx.

99.     Merck made these misrepresentations and actively concealed adverse information at a time when Merck knew, or had reason to know, that Vioxx had defects and was unreasonably

M002D28874

dangerous and was not what Merck represented to the medical community, the FDA, and the consuming public, including Plaintiff and Members.

100.    Merck omitted, suppressed, and/or concealed material facts concerning the dangers and risks associated with the use of Vioxx including, but not limited to, the cardiovascular and cerebrovascular risks, the risks of myocardial infarction and other significant, serious health problems attributable to hypertension. Furthermore, Merck purposely ignored, downplayed, avoided and/or otherwise understated the serious nature of the risks associated with the use of Vioxx in order to increase the sales of Vioxx.

101.    Merck falsely and deceptively misrepresented or knowingly omitted, suppressed or concealed facts of such materiality regarding the safety and efficacy of Vioxx from physicians, the FDA, the consuming public, Plaintiff and Members.

102.    Merck engaged in calculated silence, and misrepresentations, despite their knowledge of the growing public acceptance of the misinformation and misrepresentations regarding both the safety and efficacy of the use of Vioxx, and did so because the prospect of huge future profits outweighed health and safety concerns; all to the significant detriment of the public, Plaintiff and Members.

103.    Merck purposefully downplayed the side effects and provided misinformation and misrepresentations about adverse reactions and potential harm from Vioxx, and succeeded in persuading large segments of the medical community, the FDA anc consumers, including Plaintiff and Members, despite both the lack of efficacy and the associated significant dangers of Vioxx.

104.    Merck misrepresented the safety of Vioxx in the labeling, advertising, promotion and marketing efforts in connection with the sale of Vioxx.

105.    Members' physicians, Plaintiff, and Members relied on and were induced by Merck's misrepresentations, omissions, and/or active concealment in selecting Vioxx treatment for symptoms related to pain relief.

106.    Merck's actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiff and Members.

107.    As a result of Merck's conduct, Plaintiff and Members have suffered damages specified herein.  Plaintiff is entitled to recover for these damages as set forth above.

### COUNT SIX: UNJUST ENRICHMENT

108.    All previous paragraphs of this Complaint are incorporated by reference as if fully set forth herein and further allege as follows.

109.    Merck is and at all times was the manufacturer, seller, and/or supplier of Vioxx.

110.    Plaintiff has paid for Vioxx on behalf of Members.

111.    Merck has accepted payment for the purchase of Vioxx.

112.    The Members have not received a safe and effective pain relief drug for which they paid.

113.    Additionally, but for the conduct of Merck, Members would not have been prescribed Vioxx and, instead, would have taken an over-the-counter drug with the same or better efficacy and safety.  Thus, Plaintiff would not have paid for Vioxx for Members.

M002D28876

114.    It would be inequitable for Merck to keep this money it received for Vioxx.

115.    Merck's actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiff.

116.    As a result of Merck's conduct, Plaintiff and Members have suffered damages specified herein.  Plaintiff is entitled to recover for these damages as set forth above.

## COUNT SEVEN: VIOLATION OF WARRANTY OF REDHIBITION

117.    All previous paragraphs of this Complaint are incorporated by reference as if fully set forth herein and further allege as follows.

118.    Merck was aware of the substantial risks from taking Vioxx but fail to disclose such to Plaintiff and Members.

119.    Also, because Defendant was the manufacturer of Vioxx, Defendant is deemed to be aware of Vioxx's redhibitory defects pursuant to LSA-C.C. Art. 2545.

120.    Had Plaintiff been aware of the defects contained in Vioxx, it would not have purchased this medication and would have instead opted for a less harmful alternative.  This characteristic rendered it unfit for its intended purposes.

121.    Merck is thus liable to Plaintiff under the theory of redhibition.

122.    Thus, Plaintiff is entitled to a return of any purchase price paid, interest on these amounts from the date of purchase, attorneys' fees and cost, non-pecuniary damages, as well as other legal or equitable relief to which Plaintiff may be entitled.

M002D28877

## COUNT EIGHT: PUNITIVE DAMAGES UNDER NEW JERSEY LAW

123.    All previous paragraphs of this Complaint are incorporated by reference as if fully set forth herein and further allege as follows.

124.    Plaintiff is entitled to punitive damages because Merck's failure to warn was reckless and without regard for the public safety and welfare. Merck misled both the medical community and the public at large, including Members and Plaintiff, by making false misrepresentations about the safety of Vioxx. Merck downplayed, understated and/or disregarded their knowledge of the serious and permanent side effects associated with the long-term use of Vioxx, despite available information demonstrating that Vioxx was likely to cause serious and even fatal side effects to users.

125.    Merck, its agents, representatives, and employees were or should have been in possession of evidence demonstrating that their products cause serious side effects. Nevertheless, Merck continued to aggressively market and advertise Vioxx by providing false and misleading information with regard to its safety and comparative efficacy.

126.    Merck failed to provide warnings that would have persuaded medical providers from prescribing Vioxx, and failed to provide adequate and accurate information in its advertising, promotions and marketing campaign, thus depriving medical providers and consumers from weighing the true risks against the benefit of prescribing and/or purchasing and consuming Vioxx.

127.    The acts and/or omissions of Merck, as set forth above, were also such knowing and willful failures to warn of adverse effects inherent in the use of its drug, that they constituted

M002D28878

malicious, willful, wanton and/or reckless conduct within the meaning of the New Jersey Punitive

Damages Act.  N.J.S.A. 2A:15-5.2 *et seq.*, and common law.

## VIII.

### PRAYER FOR RELIEF

Plaintiff  requests that this Court enter a judgment against Merck and in favor of Plaintiff

awarding the following relief:

a.      That the Court issue an Order for restitution of all purchase costs Plaintiff paid for

Vioxx, disgorgement of Merck's profits, and such other equitable relief as the Court deems just and

proper;

b.      General damages in the sum in excess of the jurisdictional minimum of this Court;

c.      Compensatory damages;

d.      Consequential damages;

e.      Disgorgement of profits;

f.      Punitive and exemplary damages;

g.      Pre-judgment and post-judgment interest as provided by law;

h.      That Plaintiff recover its costs, including, but not limited to, discretionary Court costs

of these causes and those costs available under the law, as well as expert fees and attorney's fees and

expenses, and costs of this action; and

I.      That Plaintiff recover such other and further relief as the Court deems just and proper.

M002D28879

Respectfully submitted,

**SHEILA M. BOSSIER, PLLC**

By: _____

Sheila M. Bossier (Louisiana Bar # 19491)
1520 N. State Street
Jackson, Mississippi 39202
(601) 352-5450
(601) 352-5452 (Fax)

**ATTORNEYS FOR PLAINTIFF**

M002D28880

**OF COUNSEL:**

**CAPSHAW GOSS BOWERS, LLP**
Tim K. Goss, Esq.
3031 Allen Street
Suite 200
Dallas, TX 75204
(214) 761-6610
(214) 761-6611 (Fax)

**SWEET & FREESE, PLLC**
Richard A. Freese, Esq.
Morgan Keegan Center
2900 Highway 280, Suite 240
Birmingham, AL 35223
(205) 871-4144
(205) 871-4104 (Fax)

**SCOTT YUNG, L.L.P.**
John Scott, Esq.
Andrew Yung, Esq.
The Awalt Building, Suite 200
208 N. Market Street
Dallas, TX 75202
(214) 220-9922
(214) 220-9932 (Fax)

**MURRY LAW FIRM**
Robert J. Diliberto
909 Poydras Street
Suite 2550
New Orleans, LA 70112
(504) 525-8100
(504) 584-5249 (Fax)

M002D28881

FROM: Parrish Ritchie (225)922-4490
Baton Rouge Fulfillment Team 1
8550 United Plaza Boulevard

Baton Rouge, LA 70809

TO: **Debra A Bollwage (908)423-1688**
**Merck & Co., Inc.**
**One Merck Drive**

**Whitehouse Station, NJ 08889**
Ref: SOP/--/610184428/Parrish Ritchie

 

FedEx Revenue Barcode

CAD#: 8279871
SHIP DATE: 04MAY05
WEIGHT: 1 LB

DELIVERY ADDRESS (FedEx-EDR)

TRK # 7905 0286 7418    FORM
0201

08889   -NJ-US

**PRIORITY OVERNIGHT**

EWR

**THU**
**A2**

Deliver by:
**05MAY05**



# XA JVIA



CLS122904

M002D28882

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

## EASTERN DISTRICT OF LOUISIANA

HEALTH PLUS OF LOUISIANA, INC.

**SUMMONS IN A CIVIL CASE**

**V.**

Case Number: 05-1644  "L"  3

MERCK & CO., INC.

TO: (Name and address of defendant)

Merck & Co., Inc.

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Sheila M. Bossier
1520 N. State Street
Jackson, MS  39202

an answer to the complaint which is herewith served upon you, within **20** days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**Loretta G. Whyte** _____    **May 3, 2005** _____
Clerk                                            Date

_____
(By) Deputy Clerk

M002D28883

AO 440 (Rev. 10/93) Summons in a Civil Action

# RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me [1] | |
| NAME OF SERVER (PRINT) | TITLE |

Check one box below to indicate appropriate method of service

☐ Served personally upon the defendant.  Place where served: _____
_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____
_____

☐ Returned unexecuted: _____
_____
_____
_____

☐ Other (specify): _____
_____
_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                        Date                                    Signature of Server

_____
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

M002D28884