UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX® | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION L |
| | Judge Eldon E. Fallon |
| | Magistrate Judge Knowles |

THIS DOCUMENT RELATES TO:

| | |
|---|---|
| Agard, et al., v. Merck & Co. [David Agard, James Demoski, and Edward Henderson] | Case No.: 2:05-cv-01089 |
| Aljibory, et al., v. Merck & Co. [Viola Santacrose] | Case No.: 2:05-cv-01090 |
| Cavallo, et al., v. Merck & Co. [Matthew Cavallo] | Case No.: 2:05-cv-01513 |
| Core, et al. v. Merck & Co. [Richard Core] | Case No.: 2:05-cv-02583 |
| Devincentiis, et al., v. Merck & Co. [Arthur Pratt] | Case No.: 2:05-cv-02297 |
| Gates, et al., v. Merck & Co. [Scott Berthel] | Case No.: 2:05-cv-06221 |
| Connolly, et al., v. Merck & Co. [Majorie Curtis, Kristine Hia, and Maurice Hoyt] | Case No.: 2:06-cv-02708 |
| Kurtz v. Merck & Co. [Mary Kurtz] | Case No.: 2:06-cv-05779 |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR ISSUANCE BY THIS COURT
OF A SUGGESTION OF REMAND

INTRODUCTION

Plaintiffs David Agard, James Demoski, Edward Henderson, Viola Santacrose, Matthew Cavallo, Marilyn Core [Richard Core], Arthur Pratt, Scott Berthel, Marjorie Curtis, Kristine Hia, Maurice Hoyt and Mary Kurtz move this Court for the issuance of a Suggestion of Remand of their claims to their respective transferor courts pursuant to 28 U.S.C. § 1407 and Multidistrict Litigation Rule 7.6(c)(ii) of the Rules of the Judicial Panel on Multidistrict Litigation, for the completion of case-specific pretrial discovery and trial, in light of the fact that the common issue discovery that

provides the statutory authorization for these proceedings has come to a conclusion, and all issues remaining are case-specific and best determined by the respective transferor courts.

## STATEMENT OF FACTS

The Judicial Panel on Multidistrict Litigation established the instant MDL No. 1657, and assigned the same to this Court "for coordinated or consolidated pretrial proceedings" based on finding "the actions in this litigation involve common questions of fact" which the Panel identified as follows:

> All actions focus on alleged increased health risks (including heart attack and/or stroke) when taking Vioxx, an anti-inflammatory drug, and whether Merck knew of these increased risks and failed to disclose them to the medical community and consumers.

In Re: Vioxx Products Liability Litigation, 360 F.Supp.2d 1352, 1353-54 (JPML 2005). The Panel went on to consider the concerns about individual questions of fact predominating over common questions and the ongoing discovery in transferor courts, but pointed out that the assigned "single judge ...can formulate a pretrial program that . . .allows discovery **with respect to any non-common issues to proceed concurrently with discovery on common issues.....**" Id., 360 F.Supp.2d at 1354 [emphasis added].

This Court's Pre-trial Order ("PTO") 28 and 29 were issued well over a year ago on November 9, 2007. In PTO 29 this Court specifically found that:

> 6.  Discovery in this litigation has also been extensive. More than 54 million pages of documents and a terabyte of data have been

> produced by Merck pursuant to various requests from plaintiffs' counsel along with another 86 million pages of data from Merck Profile Forms. More than 1,800 depositions have also been taken in the litigation and depositions have consumed more than 2,000 days and comprise more than 380,000 pages of testimony. Also, more than fifteen trials have been conducted, including six in this Proceeding....

PTO 28, at p. 5. The above findings were reiterated in this Court's decision of August 7, 2008, in the following rulings:

> When the parties formally announced the settlement agreement, Vioxx–related discovery had been moving forward in the coordinated jurisdictions for more than six years. Over 50 million pages of documents had been produced and reviewed, more than 2,000 depositions have been taken, and counsel for both sides have filed thousands of motions and consulted with hundreds of experts in the fields of cardiology, pharmacology and neurology.

In Re: Vioxx Prod. Liab. Lit., 2008 WL 3285912, *2 n.5 (E.D.La. August 7, 2008). This Court went on to observe that, "Tens of thousands of federal Vioxx plaintiffs have been waiting years for this disbursement" in connection with those plaintiffs who have agreed to the terms of the settlement entered into November 9, 2007. *Id.*, at *18.

Moreover, the Plaintiff's Steering Committee ("PSC") has made clear it is not engaging in any additional common discovery or other coordinated pretrial proceedings. *See* May 22, 2008 hearing transcript, at 67-68. At this stage of these proceedings the only PSC involvement appears to be limited to collateral matters ranging from third-party payer issues to attorneys fees.

The recent Joint Motion by the PSC and Merck, filed March 3, 2009, confirms that:

> More than 49,000 claimants have enrolled in the Program. Accordingly, the parties now have a clearer sense of which cases remain to be litigated in this Court.

*See* Record, Joint Motion, Document 17893, at p. 1, para. 2.

Indeed, the conclusion of the common discovery and other coordinated pretrial proceedings is best reflected by the fact that the PSC and Merck have jointly moved to lift PTO 30 discovery stay that was put in place after the settlement was announced. *Id.* It is respectfully submitted the joint motion evinces that the PSC and the defendant Merck are united in interest at this stage in the proceedings, which interests are antagonistic to those of the remaining individual plaintiffs since they are the only plaintiffs who have rejected the terms of the Master Settlement Agreement reached by Merck, the PSC, and certain other attorneys who together comprise the Plaintiffs' Negotiating Committee ("PNC").

It is also highly significant that this Court has correctly characterized many of the Vioxx plaintiffs as "elderly and in poor health." In Re: Vioxx Product Liab. Lit., 574 F.Supp.2d 606, 613 (E.D.La. 2008), citing In re Zyprexa, 424 F.Supp.2d 488, 491 (E.D.N.Y. 2006).

## ARGUMENT

The end of the common discovery and other coordinated pretrial proceedings is best reflected by the fact that the PSC and Merck have jointly move to lift PTO 30 discovery stay which has precluded all plaintiffs in this litigation from seeking any discovery or otherwise moving their individual cases toward trial. It is

respectfully submitted the PSC and the defendant Merck are united in interest at this stage in the proceedings, which interests are antagonistic to those of the remaining individual plaintiffs since they are the only plaintiffs who have rejected the terms of the Master Settlement Agreement reached by Merck, the PSC, and certain other attorneys who together comprise the Plaintiffs' Negotiating Committee.

If there are no common discovery or other coordinated pretrial proceedings remaining, and only case specific issues are outstanding, nothing remains to be litigated in this Court. It is not clear what role the PSC envisions for itself in litigating against the individual litigants remaining in this litigation; however, any role whatsoever is offensive to notions of fair play that characterize the adversarial system.

This Court recently observed that "tens of thousands of federal Vioxx plaintiffs have been waiting years for this disbursement" in connection with those plaintiffs who have agreed to the terms of the settlement entered into November 9, 2007. August 7, 2008 Order and Reasons, p 17. The instant plaintiffs have also waited those same years during which their ability to manage their own cases has been brought to an abrupt halt by PTO 30.

Since only case specific issues in fact remain, the transferor courts, which are familiar with their own practices and the law in their respective jurisdictions, are likely in a better position to determine case specific issues. Moreover, plaintiffs respectfully submit, there remains no legitimate justification to require

these plaintiffs to continue litigating far from their home courts and juries of peers. In his dissent that led to reversal of self-transfer practice in MDLs by the Supreme Court in <u>Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach.</u>, 523 U.S. 26 (1998), Judge Kozinski stated:

> Whatever the scope of the MDL court's power to issue dispositive pretrial orders, the *duration* of that power cannot extend beyond the time when "coordinated or consolidated pretrial proceedings" come to an end. At that point, there's no further justification for keeping the case in the MDL process and hence no authority for the MDL transferee court to enter further orders.

<u>In Re American Continental Corporation/Lincoln Savings & Loan Securities Litigation. Lexecon Inc.</u>, 102 F.3d at 1524, Dissent (Kozinski) at 1544 (9th Cir. 1996). Judge Kozinski goes on to point out the following legislative history:

> "Additionally, trial in the originating district is generally preferable from the standpoint of the parties and witnesses, and from the standpoint of the courts it may be impracticable to have all cases in mass litigation tried in one district. Additionally, the committee recognizes that in most cases there will be a need for local discovery proceedings to supplement coordinated discovery proceedings, and that consequently remand to the originating district for this purpose will be desirable."

*Id.,* quoting H.Rep. No. 1130, in 1968 U.S.C.C.A.N. at 1902.

Not only are the plaintiffs' cases deriving no further benefit from further coordinated proceedings as part of MDL 1657, but the continuation in the MDL divests plaintiffs' rights and continues delays that would not ensue in the transferor courts and deprivation of rights ranging from the ability to manage their own individual cases without interference from the PSC, being able to either individually negotiate settlement or have their cases tried by jury.

The motions plaintiffs face in the MDL put them in the paradoxical position of streamlining discovery to checking off boxes without regard to whether or not the defendant actually has sufficient information to defend itself while delaying plaintiffs on case specific issues that could be individually addressed by transferor courts in short order. As such, any delay favors Merck where many plaintiffs are elderly and infirm, since a defendant benefits from each death that ensues in the course of this litigation since the value is significantly depreciated by the inability of plaintiff to be present before a jury, particularly since many of these plaintiffs have more limited lifespans and as such lost wages do not represent a significant item of damages.

It is submitted the following recent observations by Judge William G. Young have relevance here:

> Some, believing that any settlement is preferable to any trial, may consider this a desirable outcome. In actuality, however, this marginalization of juror fact finding perversely and sharply skews the MDL bargaining process in favor of defendants. Consider: all litigants bargain in the shadow of trial. Those averse to the inevitable uncertainties of the direct democracy of the American jury will factor the risks of trial into their settlement postures. Failure to arrive at a mutually acceptable settlement should, and in most cases does, result in a trial. In MDL practice, however, it is solely the transferee judge who controls the risk of trial. The litigant who refuses to settle can never get back to his home court to go before a local jury unless the transferee judge agrees.

DeLaventura v. Columbia Acorn Trust, 417 F.Supp.2d 147, 152-55 (D.Mass. 2006).

Plaintiffs in the instant case are divested of all bargaining power that trial by jury carries with it while litigating against the defendant who has categorically

refused to engage in any discussions with plaintiffs who have refused to accept the terms of the Settlement Agreement entered into between defendant and certain attorneys November 9, 2007. It is equally clear that the same negotiations that ensue settlement also take place in connection with discovery matters in the normal course of litigation.

Plaintiffs do not in any respect diminish the importance of the Court's responsibilities in managing a mass tort; and at this stage of the litigation the defendant is not in a position to argue that the bulk, if not all information necessary to defend has been turned over to Merck. Moreover, any outstanding discovery issues that remain are unequivocally case specific so there is no reason the matter cannot be ably handled by the transferor court.

This Court has recently observed

> Public understanding of the fairness of the judicial process and handling mass torts- and particularly those involving pharmaceuticals with potential widespread health consequences - is a significant aspect of complex national litigations involving thousands of parties.
> The potential harm to the public's perception of the judicial process is especially acute in the instant case because of the large number of claimants participating in the settlement.

In Re: Vioxx Prod. Liab. Lit., 574 F.Supp.2d 606, 613 (E.D.La. 2008).

Although the global settlement achieved in this litigation has received substantial public attention, the same cannot be said for the treatment of the individual litigants pending in this MDL. The instant plaintiffs have accepted this wait as a consequence of being drawn into an MDL proceeding; however,

whatever benefits have been derived from the MDL have been exhausted leaving only detrimental features that perhaps are unavoidable at the outset of an MDL, but no longer justifiable absent some intervention from Congress that has not yet occurred.

The non-common case-specific discovery track in this proceeding is, in fact, no longer being conducted "concurrently" with common issue discovery, because, as this Court is aware, no further discovery on common issues is contemplated with which such non-common case-specific discovery could run concurrently in MDL No. 1657 consistent with the Panel's decision. Therefore, plaintiffs submit, this Court, in the proper exercise of its discretion, should issue a Suggestion of Remand now that allows plaintiffs to move for remand before the Panel under the MDL Rule 7.6(c).

## CONCLUSION

Plaintiffs respectfully submit that this Court should grant the plaintiffs' motion for and issue a Suggestion of Remand of their claims, along with such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

RONALD R. BENJAMIN Fed. No. 110131
LAW OFFICE OF RONALD R. BENJAMIN
126 Riverside Drive, P O. Box 607
Binghamton, New York 13902-0607
607/772-1442

Attorneys for Plaintiffs in Above-Captioned Actions