UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to All Cases | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

CURATOR'S STATUS REPORT NO. 11

Curator, Robert M. Johnston, Esq., submits this Status Report No. 10, in accordance with the Court's Order, dated February 12, 2008.

**I.      MAILINGS TO *PRO SE* CLAIMANTS**

Since appointment, the curator has undertaken several large mailings to potential *pro se* claimants or litigants, as well as providing individualized mailings upon request from claimants, potential claimants, *pro se* litigants, and other parties of interest under the agreement. In addition to these mailings to *pro ses* directly, the curator additionally provides the Claims Administrator, Lien Administrator, Court, PLC and DLC with documents received from claimants, via both electronic mail in Adobe PDF format, as well as via hard copy, on an ongoing basis. Below is a summary of mailings completed as of the date of this report:

In March 2008, the curator's office sent two mailings to claimants and litigants who were identified by the parties and the Claims Administrator as having not yet completed the requirements for claim package submission and/or enrollment. This mailing generated a large response and provided claimants and potential claimants with the information necessary to avail themselves of the settlement program, should they meet the program requirements.

Since this initial mailing, the curator's office has continued to provide registration and enrollment forms to any claimant, non-claimant, or litigant requesting same. Additionally, this initial mailing was forwarded to those persons for whom the original mailing was returned, if new address information became available. In total, approximately 1400 initial mailing packets were sent by the curator's office since March 2008.

As the deadlines for submission of necessary documents regarding registration, enrollment, and claim package documents neared, the curator's office completed additional mailings in order to inform claimants and potential claimants of the necessary action and documents required to move forward in the settlement program. For example, in October 2008, a mailing was generated and sent to approximately 130 unregistered-potential claimants identified as having either incomplete registration or enrollment materials, advising of the deadline to complete enrollment. Likewise, in November 2008, the curator forwarded another mailing to approximately 200 claimants identified as having potentially incomplete claim package submissions, in order to advise recipients of the deadline for completion of same.

Most recently in February 2009, the curator's office was asked and provided a mailing to approximately 700 claimants of the private lien resolution program, its requirements, deadline for participation, and forms required in order to participate in the program.

In addition to the above mentioned group mailings, the curator provides individual mailings as they are requested. For example, as information, documents, or questions arise, the curator's office assists callers with inquiries as to the requirements of the settlement program, lien resolution program, Extraordinary Injury program, and pending Motions before the court. In addition to providing these documents upon request, the curator's office processes calls and incoming documents as part of the process of confirming whether the *pro se* litigant desires to take part in the settlement program, continue with his/her pending suit, or wishes to dismiss any claim or suit.

As previously reported, these mailings are logged on the Curator's Secure Portal Online Communication Log and handled in the same manner as other inquiries received by the Curator's office.

The Curator's office has been advised that the secure portal will soon allow access to potential lien information applicable to pro se claimants. This information will benefit callers because it will allow the Curator to better assist any *pro se* caller with specific questions regarding the caller's specific situation, as it pertains to lien information known to the Lien Administrator and/or Claims Administrator. The Curator defers to the Lien Administrator and Claims Administrator as to the precise date upon which this access will be available, as well as the appropriate security and data management for this information.

II.     **RETURNED AND UNDELIVERABLE MAIL**

As discussed in prior reports, we continue to monitor returned and undeliverable or returned mailings. As of the date of this status report, no additional original Curator mailings have been returned undeliverable. Several Private Lien Resolution Program Packets have been returned as undeliverable or because of an expired or unavailable forwarding order. These returned mailings

are logged into the Curator's Communication log and maintained in the curator's file so that they can be forwarded if new address information is received. As stated in prior reports, we will continue to monitor any returned or undeliverable mail and will keep the parties, Court, Claims Administrator, and Lien Administrator apprised of any new information or documents received.

### III. LEGAL NOTICE PUBLICATIONS

All of the legal notices have been completely published and we have received affidavits of publication from all but one publisher of legal notices. These affidavits certify the dates of publication, and provide a certified copy of the notice actually published. These affidavits are maintained in the Curator's file and will be submitted to the Court as part of the Curator's Certification.

For claimants, or their heirs, for whom new contact information has been received as a result of the publication of these legal notices, we have forwarded that information to both the Claims Administrator and counsel for Merck, so that future communications can be sent directly. If new information is received in the future, we will continue to act accordingly. Similarly, we have received requests from counsel for Merck and withdrawing attorneys seeking information regarding claimants that they have been unable to reach. As these inquiries are received, we review our records and provide the requested information.

### IV. CURATOR'S COMMUNICATIONS

My firm continues to receive numerous telephone calls, emails, facsimiles, and correspondence from potential and current claimants in the Settlement Program, as well as pro se litigants, and represented claimants with pending Motions to Withdraw Counsel. Over the course of the past year, the type of call has changed from initial calls from claimants who had broad

questions about the settlement program and its requirements, to much more specific and extended communications regarding particular aspects of the claimant's suit or claim. As a result of this progression, the number of calls has reduced slightly since our last report, but the length and complexity of each call has continued to notably increase. Because of the number of questions from a given caller, as well as the various resources needed to provide the requested assistance, call time has raised to an average of 25 to 40 minutes per caller. Additionally, since many of the inquiries regard assistance with matters involving third-parties (former or current attorneys, health care providers, etc.) the caller's inquiries typically require a minimum of two additional calls in order to discovery the information requested by the initial caller. Because of this paradigm shift, it may take several days of follow up calls before the curator's office is able to provide the claimant with the information and assistance requested. We advice callers when it may take additional time to fully respond to their inquiries and provide follow-up deadlines for the caller, so that progress can be tracked. Also, when the caller is in need of assistance from another source, such as the Claims Administrator, Lien Administrator, or Counsel for Merck, we have been able to facilitate direct communication of the request to the outside source, e.g. through conference calling and electronic mail with both the claimant, the curator, and the third-party.

      Overall, these communications remain within the previously reported topics: notices of deficiencies in either enrollment or claim materials submitted; questions related to recent mailings about the Private Lien Resolution Program and Extraordinary Injury program; questions regarding the status of claim review; explanations of claimant options during and after receiving notices of deficiencies or notices of points awards; and inquiries as to how to respond to Motions to Dismiss filed on behalf of Merck. These communications continue to be logged in an internal

communications log, and are also being entered into the online communications log on a rolling basis. This online communications log is available through the Claims Administrator's portal, and reports are available by date, by caller, or by Curator taking the call. At the conclusion of this process, we will submit the entire communications log to the Court. At this point, all completed outgoing mailings and curator communications as of the date of this report have now been uploaded to the secure portal. Future mailings will be similarly logged, and incoming calls are immediately logged by the attorney receiving the call, such that the online log represents as complete and up to date listing, as possible, of ongoing curator communications.

We defer to the Claims Administrator as to the requirements to access this information, as well as maintenance of appropriate data back-up services.

With regard to written communications and documents forwarded by potential *pro se* claimants via U.S. Mail, facsimile, electronic mail, and private shipping companies (Federal Express, DHL, and UPS), as referenced in Section I, we continue to forward all documents pertaining to the settlement program, on a rolling basis, to the Claims Administrator, both via electronic mail as a PDF attachment, and via overnight delivery, in order to assist in compliance with the deadlines set forth in the Settlement Agreement, and extensions agreed to by the parties. A copy of these communications and documents is also maintained in the Curator's file. With regard to the Private Lien Resolution Program, any documents received are forwarded to the Lien Administrator, both via electronic mail as a PDF attachment, and via overnight delivery.

When requested, we have and will continue to assist in reestablishing communications between a claimant/litigant and his or her attorney of record, or attorney seeking to withdraw from representation. As these requests carry on, we will continue to provide this assistance.

Additionally, we have seen a continued increase in callers seeking a regular, or weekly "status check" of their claims. These callers' claimant information page, on the Curator's portal, generally shows that the claimant is enrolled and that no deficiency was found (NDF) after Merck's review of their documents. For those claimants whose information page indicated any deficiency, we provide the claimant with the deficiency description and advise how to remedy same. The Claims Administrator has been of great assistance in helping these claimants correct deficiencies by re-sending the required documents, or by verifying that the database reflects any corrective action taken. As these calls continue, we will assist and coordinate efforts with the Claims Administrator to assure *pro se* claimants have every opportunity to assure that their enrollment and claim package materials are as complete as possible.

The Curator's office has continued to receive inquiries from claimants and litigants having difficulties in obtaining medical records, or seeking relief from unreasonable costs of duplication of medical records, both needed to complete or supplement claims package submissions. As the court has provided assistance in the form of show cause orders and pretrial orders, we have been able to assist these callers in obtaining their requested records for a reasonable duplication fee. As these inquiries continue, we will provide such assistance so long as it is necessary.

As noted in prior reports, we continue to receive calls requesting assistance in obtaining records on deposit with the Litigation Records Repository or that remain in the possession of prior counsel for the claimant or litigant. As these requests are made, we provide assistance by contacting prior counsel and facilitating receipt of any records available for the claimant or litigant, or that exist on LMI, and providing an electronic and hard copy to the claimant/litigant, the claims administrator, and to counsel for Merck, as appropriate. We will continue to assist in this manner.

MERCK'S MOTIONS TO DISMISS

The curator's office has received a number of communications from *pro se* and represented litigants who are subject to a Motion to Dismiss filed, pending, or granted on behalf of Merck. We are working with counsel for Merck to assure that all communications and documents received by the curator's office are forwarded to counsel for Merck, as well as to the claims administrator. We would like to thank the Court's staff for assuring that the Curator has received copies of correspondence forwarded directly to the Court. Additionally, where a claimant or litigant expresses a desire not to proceed with their pending suit, we make note of that communication in order to pass along to the relevant parties involved. Despite the expiration of the deadline for the curator to receive this type of communications pertaining to Merck's Sixth Motion to Dismiss, our office continues to receive calls, even as of the date of this report, from litigants who do not wish their claims to be dismissed or who have expressed confusion regarding their status or whether they are currently represented. We will continue to assist these callers, as well as any litigant corresponding with the Curator, and will continue to advise that we cannot act as counsel of record for any litigant, but can be a resource for the litigant. We defer to Counsel for the parties as to the status of any remaining motions to dismiss.

**V.    REFERRAL ATTORNEY LIST**

As part of the Court's February 12, 2008 Order, the Curator has the responsibility of advising "the *Pro Se* Claimants of the name and contact information for counsel handling Vioxx matters in the jurisdiction where the *Pro Se* Claimant resides." *See* Document No. 13365, Page 3. As previously reported, we have been provided with information from the PLC regarding attorneys handling Vioxx matters in various jurisdictions, have reorganized this information into a list, sorted

by location, of attorneys handling Vioxx matters, and continue to provide this information, as required by the Court's Order, to *Pro Se* Claimants requesting same.

## VI. PRESENTATION AT NEXT STATUS CONFERENCE

The curator will be prepared to address the items in this report to the court, parties, and callers listening via telephone conference, as well as being available to address any questions, at the monthly status conference scheduled for March 27, 2009. Additionally, we will be available for all future status conferences, as dates are selected by the Court.

Respectfully submitted,

**JOHNSTON, HOEFER, HOLWADEL & ELDRIDGE**

  /s/ Robert M. Johnston
**ROBERT M. JOHNSTON  (#7339)**
400 Poydras Street, Suite 2450
New Orleans, Louisiana 70130
Telephone: (504) 561-7799
Facsimile: (504) 587-3794
rmj@ahhelaw.com
*Pro Se* **Curator**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Curator's Status Report No. 11 has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 26th day of March, 2009

  /s/ Robert M. Johnston
**ROBERT M. JOHNSTON  (#7339)**