## CONTRACT FOR LEGAL SERVICES: PHARMACEUTICAL

**READ CAREFULLY:** THIS IS YOUR CONTRACT. IT PROTECTS BOTH YOU AND YOUR ATTORNEYS AND WILL PREVENT MISUNDERSTANDING. IF YOU DO NOT UNDERSTAND IT, PLEASE CALL IT TO OUR ATTENTION.

I HEREBY EMPLOY THE LAW FIRM OF **GARY EUBANKS & ASSOCIATES** TO REPRESENT ME IN MY CLAIM FOR PERSONAL INJURY AGAINST THE MANUFACTURERS, DISTRIBUTORS, AND SUPPLIERS OF MEDICATIONS WHICH I HAVE TAKEN. I AGREE TO PAY MY ATTORNEYS, **GARY EUBANKS & ASSOCIATES**, A FEE AS FOLLOWS: IN THE EVENT OF SETTLEMENT, 33 1/3% OF ANY AND ALL SUMS RECOVERED IF THE CASE IS SETTLED PRIOR TO THE INSTITUTING OF SUIT; 45% OF ANY AND ALL SUMS RECOVERED IF SUIT IS INSTITUTED; **OR A FEE OF $ N/A    PER HOUR FOR LEGAL SERVICES RENDERED IN THIS MATTER WITH AN INITIAL RETAINER OF $ N/A____.** I HEREBY EMPOWER SAID ATTORNEYS TO FILE SUIT IN WHATEVER COURT THEY THINK NECESSARY. I UNDERSTAND THAT IT IS MY DECISION WHETHER TO SETTLE MY CASE. MY ATTORNEY WILL ADVISE ME, BUT THE RIGHT AND RESPONSIBILITY OF MAKING ANY FINAL DECISION WHETHER TO ACCEPT OR REJECT ANY SETTLEMENT OFFER IS MINE.

**EXPENSES IN PURSUING MY CLAIM:** I FURTHER AGREE THAT, IN ADDITION TO THE ABOVE ATTORNEY FEES, ALL COURT COSTS, SUBPOENA COSTS, PHOTOGRAPHS, MOVIES, VIDEO TAPES, PHOTO COPIES, POSTAGE, DEPOSITIONS, COURT REPORTER COSTS, REPORTS, WITNESS STATEMENTS, INVESTIGATION EXPENSES, NECESSARY TRAVEL EXPENSES, EXPERT AND LAY WITNESS EXPENSES AND ALL OTHER EXPENSES INCURRED IN INVESTIGATING AND/OR LITIGATING THIS CLAIM SHALL BE PAID OFF THE TOP FROM THE TOTAL RECOVERY AND THAT SAID EXPENSES, AND ATTORNEY FEES MAY BE DEDUCTED FROM THE PROCEEDS OF ANY RECOVERY. IN THE EVENT MY CASE BECOMES INVOLVED IN MULTI-DISTRICT LITIGATION, I UNDERSTAND THAT ANY CHARGES ASSESSED BY THE COURT SHALL BE CONSIDERED PART OF THE COSTS OF MY CASE.

**IF NO RECOVERY IS OBTAINED, NO FEE SHALL BE PAYABLE TO THE ATTORNEYS.** I UNDERSTAND THAT MY ATTORNEYS ARE TAKING THIS CASE FOR INVESTIGATION. ASSOCIATE COUNSEL MAY BE EMPLOYED AT THE DISCRETION AND EXPENSE OF THE ATTORNEYS. THE DECISION TO APPEAL TO THE SUPREME COURT OR THE COURT OF APPEALS SHALL BE MADE IN THE SOLE DISCRETION OF THE ATTORNEYS. ALL COSTS OF APPEAL, INCLUDING TRANSCRIPTS AND PRINTING COSTS, SHALL BE DEDUCTED FROM THE RECOVERY.

NO REPRESENTATION HAS BEEN MADE AS TO WHAT AMOUNT, IF ANY, I MAY BE ENTITLED TO RECOVER IN THIS CASE.

I AGREE TO KEEP THE LAW OFFICES OF **GARY EUBANKS & ASSOCIATES** ADVISED OF MY WHEREABOUTS AT ALL TIMES; TO COOPERATE IN THE PREPARATION AND TRIAL OF MY CASE. I UNDERSTAND THAT MY FAILURE TO COOPERATE COMPLETELY WITH MY ATTORNEYS WILL BE A GROUND FOR MY ATTORNEYS TO WITHDRAW FROM REPRESENTING ME. IN THE EVENT MY ATTORNEYS ARE ABLE TO MAKE A RECOVERY FOR ME ON MY CASE AND ARE UNABLE TO LOCATE ME AFTER MAKING ALL REASONABLE EFFORTS TO DO SO, I HEREBY AUTHORIZE THEM TO ENDORSE THE SETTLEMENT DRAFTS FOR ME AND ON MY BEHALF TO HOLD MY PORTION IN TRUST FOR ME UNTIL I CAN BE LOCATED. I FURTHER AGREE THAT IF THE LAW OFFICES OF **GARY EUBANKS & ASSOCIATES** IS UNABLE TO LOCATE ME WITHIN ONE (1) YEAR OF PLACING MY PORTION OF ANY SETTLEMENT IN TRUST, A **DORMANCY FEE** OF $100 PER MONTH WILL BE CHARGED AGAINST MY TRUST BALANCE SO LONG AS SUCH BALANCE IS GREATER THAN $0.

_Bobby_ _____ 8-4-05 _____  _____
CLIENT                  DATE              CLIENT                    DATE

_Admin of Estate of Johnnie Stephens_

THE ABOVE EMPLOYMENT IS HEREBY ACCEPTED ON THE TERMS STATED AND WE AGREE TO MAKE NO CHARGE FOR SERVICES UNLESS RECOVERY IS HAD IN THIS MATTER.

### GARY EUBANKS & ASSOCIATES

BY: _Robert L Rountree_ _____
ATTORNEY AT LAW

**EXHIBIT**

**A**

A CERTIFIED TRUE COPY

MAR 29 2006

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 30  PM 1:23

LORETTA G. WHYTE
CLERK

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 13 2006

FILED
CLERK'S OFFICE

**DOCKET NO. 1657**

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

*IN RE VIOXX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY*
*LITIGATION*

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

4:06 CV00259

APR 06 2006

JAMES W. McCORMACK, CLERK
By: _____ CLERK
DEP CLERK

### (SEE ATTACHED SCHEDULE)

## CONDITIONAL TRANSFER ORDER (CTO-45)

On February 16, 2005, the Panel transferred 138 civil actions to the United States District Court for the Eastern District of Louisiana for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, 3,256 additional actions have been transferred to the Eastern District of Louisiana. With the consent of that court, all such actions have been assigned to the Honorable Eldon E. Fallon.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Eastern District of Louisiana and assigned to Judge Fallon.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Louisiana for the reasons stated in the order of February 16, 2005, 360 F.Supp.2d 1352 (J.P.M.L. 2005), and, with the consent of that court, assigned to the Honorable Eldon E. Fallon.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Louisiana. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Michael J. Beck*
Michael J. Beck
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

MAR 29 2006

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

CLERK'S OFFICE
A TRUE COPY

APR 3 2006

Deputy Clerk, U.S. District Court
Eastern District of Louisiana
New Orleans, LA

Fee _____
Process _____
X Dktd. _____
✓ CtRmDep _____
__ Doc. No _____

EXHIBIT
B

## SCHEDULE CTO-45 - TAG-ALONG ACTIONS
## DOCKET NO. 1657
## IN RE VIOXX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY
### LITIGATION

| DIST. DIV. C.A. # | CASE CAPTION | EDLA SEC. L/3 |
|---|---|---|
| **ARKANSAS EASTERN** | | |
| ARE   4  06-259 | Bob Stephens, etc. v. Merck & Co., Inc. | 06-1678 |
| **CALIFORNIA NORTHERN** | | |
| CAN   3  06-1177 | Alberta Bruno, et al. v. Merck & Co., Inc., et al. | 06-1679 |
| **COLORADO** | | |
| CO   1  06-338 | Julia Bruce, M.D. v. Merck & Co., Inc | 06-1680 |
| **FLORIDA MIDDLE** | | |
| FLM   5  06-67 | Judith Miele v. Merck & Co., Inc. | 06-1681 |
| FLM   6  06-205 | David Boyd v. Merck & Co., Inc., et al. | 06-1682 |
| FLM   8  06-268 | John Midkiff v. Merck & Co., Inc., et al. | 06-1683 |
| FLM   8  06-269 | Todd Bray v. Merck & Co., Inc., et al. | 06-1684 |
| FLM   8  06-270 | William Watts v. Merck & Co., Inc., et al. | 06-1685 |
| FLM   8  06-271 | Kenneth Devol v. Merck & Co., Inc., et al. | 06-1686 |
| FLM   8  06-275 | Charles Gustafson v. Merck & Co., Inc., et al. | 06-1687 |
| FLM   8  06-276 | Elana Bozzi v. Merck & Co., Inc., et al. | 06-1688 |
| **FLORIDA NORTHERN** | | |
| FLN   1  06-29 | Wylie Tindale v. Merck & Co., Inc., et al. | 06-1689 |
| FLN   1  06-30 | Elizabeth Cannard v. Merck & Co., Inc., et al | 06-1690 |
| **FLORIDA SOUTHERN** | | |
| FLS   0  06-60172 | Shari Cayle v. Merck & Co., Inc. | 06-1691 |
| FLS   0  06-60173 | Sidney Backoff, etc. v. Merck & Co., Inc. | 06-1692 |
| FLS   0  06-60176 | Nancy Cassell v. Merck & Co., Inc. | 06-1693 |
| FLS   0  06-60179 | Martha Lyons, et al. v. Merck & Co., Inc. | 06-1694 |
| FLS   0  06-60180 | Darlene Rose, et al. v. Merck & Co., Inc. | 06-1695 |
| FLS   0  06-60222 | Janet Gilson v. Merck & Co., Inc. | 06-1696 |
| FLS   1  06-20364 | Maryse Guekjian v. Merck & Co., Inc. | 06-1697 |
| FLS   1  06-20365 | Eunice Nelson v. Merck & Co., Inc. | 06-1698 |
| FLS   2  06-14041 | Joan M. Petty v. Merck & Co. Inc. | 06-1699 |
| **ILLINOIS SOUTHERN** | | |
| ~~ILS   3  06-154~~ | ~~Maria Kopes, et al. v. Merck & Co., Inc., et al.~~ Opposed 3/28/06 | |
| ~~ILS   3  06-158~~ | ~~Kevin Keeney, et al. v. Merck & Co., Inc., et al.~~ Opposed 3/28/06 | |
| ~~ILS   3  06-159~~ | ~~Barbara Rutherford, et al. v. Merck & Co., Inc., et al.~~ Opposed 3/28/06 | |
| ~~ILS   3  06-162~~ | ~~Shirley Johnson, et al. v. Merck & Co., Inc., et al.~~ Opposed 3/28/06 | |
| ~~ILS   3  06-172~~ | ~~Kimberly Riddle, et al. v. Merck & Co., Inc., et al.~~ Opposed 3/28/06 | |
| **INDIANA SOUTHERN** | | |
| INS   1  06-229 | Richard J. Martin, et al. v. Merck & Co., Inc. | 06-1700 |
| INS   1  06-230 | John Doggett, et al. v. Merck & Co., Inc. | 06-1701 |
| INS   1  06-231 | Ilena Howell, et al. v. Merck & Co., Inc. | 06-1702 |
| INS   1  06-232 | Bronzie Isaacs, et al. v. Merck & Co., Inc. | 06-1703 |
| INS   1  06-255 | Lois Norquest v. Merck & Co., Inc. | 06-1704 |

SCHEDULE CTO-45 TAG-ALONG ACTIONS (MDL-1657)                          PAGE 2 of 2

| DIST. DIV. C.A. # | CASE CAPTION | EDLA SEC. L/3 |
|---|---|---|
| **MAINE** | | |
| ME   2  06-43 | Stanley Leiberman v. Merck & Co., Inc. | 06-1705 |
| **MINNESOTA** | | |
| MN   0  06-665 | Ely Omega v. Merck & Co., Inc. | 06-1706 |
| MN   0  06-667 | Harry Brooks v. Merck & Co., Inc. | 06-1707 |
| **MISSISSIPPI NORTHERN** | | |
| MSN  4  06-31 | Roderick Nettles, et al. v. Merck & Co., Inc. | 06-1708 |
| **MISSISSIPPI SOUTHERN** | | |
| MSS  4  06-18 | Austin Ezell Blackwell v. Merck & Co., Inc. | 06-1709 |
| **NEW YORK SOUTHERN** | | |
| NYS  1  06-1215 | Bina P. Motiani, etc. v. Merck & Co., Inc. | 06-1710 |
| **NEW YORK WESTERN** | | |
| NYW  6  06-6096 | Ronald Yates v. Merck & Co., Inc., et al. | 06-1711 |
| **OKLAHOMA EASTERN** | | |
| OKE  6  06-71 | William Moore, etc. v. Merck & Co., Inc. | 06-1712 |
| **OKLAHOMA WESTERN** | | |
| OKW  5  06-167 | Esther Chesser v. Merck & Co., Inc. | 06-1713 |
| OKW  5  06-168 | Annita C. Whetsell v. Merck & Co., Inc. | 06-1714 |
| OKW  5  06-173 | Linda Nix, etc. v. Merck & Co., Inc. | 06-1715 |
| **TEXAS EASTERN** | | |
| TXE  1  06-94 | Mary Nelson v. Merck & Co., Inc., et al. | 06-1716 |
| TXE  2  06-68 | Juanita Gibson v. Merck & Co., Inc. | 06-1717 |
| **TEXAS SOUTHERN** | | |
| TXS  4  06-592 | Robbie Gale Edwards, etc. v. Merck & Co., Inc. | 06-1718 |
| TXS  4  06-635 | Sharon McGrew v. Merck & Co., Inc. | 06-1719 |
| ~~TXS  5  06-35~~ | ~~H.G. Pool, et al. v. Merck & Co., Inc., et al.~~ Opposed 3/28/06 | |
| **TEXAS WESTERN** | | |
| TXW  1  06-121 | William M. Turner, et al. v. Merck & Co., Inc. | 06-1720 |
| TXW  1  06-122 | Joan Arnold Anderson v. Merck & Co., Inc. | 06-1721 |

March 18, 2009

Gary Eubanks & Associates
Attn: Gary Eubanks
P. O. Box 3887
Little Rock, Arkansas 72203

Re: Bob Stephens, individually and as Administrator for the Estate of Johnie
Stephens, Deceased v Merck & Co., Inc., a New Jersey Corporation;

Civil Action No. 4-06-CV-0259; In the United States District Court for the Eastern
District of Arkansas, Western Division 4

**VCN:1062642**

Dear Mr. Eubanks:

In response to your letter dated March 6, 2009, it appears that you have no intentions of
trying to obtain the hard copies of the written prescription records for my father that are filed
away in boxes at the Kroger Pharmacy 02500639 located at 2509 McCain Boulevard, North
Little Rock, Arkansas 72116.

As you know from our conversation on November 24, 2008, I (individually and in all
representative capacities) intend to sue you, your law firm, your former associates, Robert L.
Rountree, Jeff Weber and Ashley Ohide, Trial Assistant to former associate Robert L. Rountree
(collectively "you") for legal malpractice in connection with the handling of the above-
referenced case. The basis of the claim is that you allowed Kroger Pharmacy to destroy its
records of my father's Vioxx use without obtaining copies for use in the above-referenced case.
As you know, my father began taking Vioxx in November of 2000 and took it on a continuos
daily basis until his death on March 15, 2003. These records were available and would have
conclusively documented at least 24 months of use. Your failure to obtain these records and
present them to the Claims Administrator has resulted in the Overall Duration of Vioxx Use in
the **NOTICE OF POINTS AWARD** issued by the Claims Administrator on November 20,
2008, showing 6-18M. Had you obtained the records as I instructed and as you should have
done, the points award and the corresponding settlement amount would have been much larger.
Even after the appeal of the points award, which would not have been necessary had you
obtained the records the **POST-APPEAL NOTICE OF POINTS AWARD**, issued on February
13, 2009, did not change the overall duration Vioxx use from 6-18M.

Based on the above reasons, I am firing you and your firm as the attorney representing
me, individually and as Administrator for the Estate of Johnie Stephens, Deceased. I request that
you forward the case file to me at my home address and that you notify the **Claims
Administrator** that you are withdrawing as counsel of record in the **Vioxx Settlement Program**
by completing form **V2070**. I will forward a copy of this letter to the **Claims Administrator**
and then wait for the **Claims Administrator** to notify me that I will be listed as **Pro Se**
(Unrepresented) in the Vioxx Claims Database.

**EXHIBIT**

*C*

Respectfully,

*Bob Stephens*

Bob Stephens
4005 Royal Oak Drive
North Little Rock, Arkansas 72116
(501)771-2178
E-mail bobstephenss@gmail.com

c.c: Claims Administrator
    P. O. Box 85031
    Richmond, Virginia 23285-5031



Gary Eubanks

Attorneys at Law

February 24, 2009

Bob Stephens
4005 Royal Oak
North Little Rock, AR  72116

Re: Johnie Stephens' Vioxx case

Dear Bob:

As you might imagine, from time to time, I have clients who wish to get me to reduce my fee by threatening to sue me for some pretended malpractice.  It has been my practice over the years simply to ignore that and go on about my business knowing that I did not do anything wrong and that they are not going to get a lawyer who would file a frivolous action.

I now realize from our last meeting that you truly believe that you have a case against this firm.  The fact of the matter is, you do not.  I am going to try as best I can to share with you a basic time line and some facts about this situation.  The first contact with Kroger in an attempt to obtain the pharmacy records was on November 12, 2004.  If you will recall, you obtained this information from Woodrow Hill prior to employing us the next August.

At the time you went to Kroger in November of 2004 and requested copies of all of their prescriptions for Vioxx, you actually obtained all that were available at that time.  The expunging or purging of their records had already occurred back to July of 2002.  This is in keeping with our understanding of Kroger's policy of maintaining their records for two years.

You first employed us on August 29, 2005 and entered into a contract with the firm.  You brought to us the Kroger printout at that time.  On September 7, 2005, you completed the Plaintiff Profile Form.  As I'm sure you understand, being a lawyer, this is the document that we had to rely upon in order to obtain the information for you.  In response to the question regarding pharmacies, Kroger on McCain was the only pharmacy listed.

On October 3, 2005, Robert Rountree, the attorney handling the Vioxx files at the time, sent a preservation letter to the Kroger Division Office

Being a lawyer, I'm sure you understand that it would not have been legally possible for us to obtain anything until you were actually appointed as Administrator of Johnie Stephens' estate.  To have attempted to pass you off as the Administrator prior to your actually being admitted would have been tantamount to fraud.  Therefore, for all practical purposes, this firm was not in a position to obtain either medical or pharmacy records from anyone in regard to your dad until January 24, 2006

Pursuant to the authority given to us by you as Administrator of Johnie Stephens' estate, the full records from the Kroger Company from March 15, 1993 to March 17, 2003 were requested.  As you know, the document which we received back was simply a duplicate of what you had received, since in November of 2004 you had actually obtained all of the records that were available at that time.  After making the request for the records for March 15, 1993 to



EXHIBIT

D



Attorneys at Law

Stephens
2/24/2009
Page 2 of 2

March 17, 2003, Kroger insisted that an Order appointing you as Administrator be faxed to them prior to releasing the complete records to us. After faxing them a copy of the Court Order appointing you Administrator, we received the records from Kroger Pharmacy in response to our request for the complete history from 3/15/93 - 3/17/03. Kroger was still under the preservation request at the time these records were retrieved and sent.

On January 8, 2008, in response to a letter from me asking if there were any other existing pharmacy records, Kroger Division Office provided a time line of the preservation request. In that communication, Kroger advised that they even pulled their daily signature logs and found no records from 2000-2002. On January 21, 2008, for the first time, you informed us that Caremark was believed to carry the responsibility for the archived pharmacy records. We then requested records for 3/15/19-3/17/03 from Caremark. On April 18, 2008, we received an affidavit from Caremark advising that they had a record of an account for Johnie Stephens, but only maintained their records for 36 rolling months. This would mean that records prior to July of 2002 would have to have been requested before July of 2005. Since you did not employ us until August 29, 2005, nor did we have Letters of Administration until January of 2006, it would be impossible for us to have been responsible for the lack of records from Kroger Pharmacy or Caremark.

The archived records were obviously destroyed but, as you can see, the records from 2000 to mid-2002 were destroyed before our firm was ever involved. It was my sincere belief that your affidavit, along with the affidavit of Woodrow Hill, would be sufficient evidence to allow the Claims Administrator to modify their Points Award   This, however, did not happen. Let us hope that our appeal to the Special Master will be more fruitful.

I hope this has cleared up any misunderstandings, and I certainly don't want to have to file an abuse of process suit against you as a result of any unwarranted lawsuit against this firm. As you pointed out to me, any such action would certainly result in a tremendous amount of bad publicity and damage to our firm.

Please let me know if you have any questions.

Sincerely yours,

Gary L. Eubanks
Attorney at Law

GLE/af



Attorneys at Law

March 6, 2009

Mr. Bob Stephens
4005 Royal Oak
North Little Rock, AR  72116

Dear Bob,

To the best of my knowledge, this firm has exhausted all efforts to obtain additional VIOXX records from Kroger.  If you have any information to the contrary, please feel free to obtain it.

Sincerely yours,

Gary L. Eubanks

GLE:jd

708 West Second Street ◆ P.O. Box 3887 ◆ Little Rock, Arkansas 72203-3887
(501) 372-0266 ◆ (800) 522-5260 ◆ FAX (501) 688-7741 ◆ Web site· www.garyeubanks.com
622 Malvern Ave ◆ Hot Springs, Arkansas 71901 ◆ (501) 623-2234 • FAX (501) 623-4596

## Vioxx Settlement Program
## Election to Participate

I have read the information provided to me by my attorneys, Gary

Eubanks and Associates, regarding the Vioxx Settlement Program including the

letter announcing the Settlement Program, the Description of Settlement

Program, and the Claims Valuation Examples.

Having read the information provided to me, I accept the terms of the

Vioxx Settlement Program as set forth in the enclosed letter and Description of

Settlement Program and agree to participate in the Settlement Program.

_Bob Stephens_
Signature of Client (or Representative of Client)

_12-2-07_
Date

_Bob STEPHENS_
Name of Individual Signing Document (print)

_ADMINISTRATOR_
Capacity (if applicable)

_JOHNIE STEPHENS_
Name of Individual Injured by Vioxx
(if different than above)

**Please sign and return this Election to Participate form by facsimile to
(501)688-7738 or by using the enclosed Business Reply Envelope.**

**EXHIBIT**

tabbies

_E_

*Confidential Information*

| V2016 | CLAIMS ADMINISTRATOR NOTICE OF ELIGIBILTY<br>(Date of Notice: 11/18/08) |
|---|---|

### I. CLAIMANT INFORMATION

| Claimant Name | Stephens, Johnie | | VCN | 1062642 |
|---|---|---|---|---|
| Law Firm | Eubanks, Gary & Associates | | | |

| Primary Injury: | MI-Fatal | Date of Event: | 3/15/03 | Secondary Injury: | N/A | Date of Event: | N/A |
|---|---|---|---|---|---|---|---|

### II. CLAIMS ADMINISTRATOR DETERMINATION

This claim satisfies the Eligibility Requirements set forth in the Settlement Agreement because it passes the Injury, Duration, and Proximity Gates. When reviewing the claim for eligibility, the Claims Administrator did not review the Claims Package to determine whether it is complete under Section 1.3 of the Settlement Agreement, nor was any assessment made regarding an Injury Level under Exhibit 3.2.1. The Claims Administrator will now conduct this completeness review. If the Claims Package is deficient, you will receive a Deficiency Notice. If the Claims Package is complete, the Claims Administrator will then review the claim for Points Assessment and will issue you a Notice of Points Award. The Notice of Points Award may be subject to governmental lien obligations under Article 12 of the Settlement Agreement and/or an audit pursuant to Article 10 of the Settlement Agreement.

V2016v1                     Vioxx Claims Administrator



*Confidential Information*

| V2046 | **NOTICE OF POINTS AWARD** <br> **Date of Notice: 11/20/08** | | |
|---|---|---|---|
| **I. IDENTIFYING INFORMATION** | | | |
| **Claimant Name** | Stephens, Johnie | **Social Security Number** | 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 |
| **Law Firm** | Eubanks, Gary & Associates | | |
| **VCN Number** | 1062642 | **Enrollment Status** | IP Enrolled | **First Confirmed Vioxx Use** | 7/8/02 |

### II. TOTAL POINTS CALCULATION

#### A. BASIS POINTS

| | | | |
|---|---|---|---|
| 1. | Qualifying Event/Level | MI Injury Level : 1 | Date of Event:  3/15/03 |
| 2. | Age at Event | 80 years or older | |
| 3. | Overall Duration of Vioxx Use | 6-18M | |
| 4. | **Basis Points** | | **208.33** |

#### B. LABEL AND CONSISTENCY ADJUSTMENTS

| | | | |
|---|---|---|---|
| 5. | Label | | -15 % | |
| 6. | Consistency | | +20 % | |
| 7. | **Adjustment Total %** | | +5 % | |
| 8. | **Subtotal Points** | (Row 4 x Row 7) | | **218.75** |

#### C. RISK FACTOR ADJUSTMENTS

| | Risk Factors | Finding | Adjustment | Cumulative Points |
|---|---|---|---|---|
| 9. | Hypertension | Controlled | - 20 % | 175.00 |
| 10. | Prior Diagnosed Vascular Disease | Cerebovascular Disease | - 10 % | 157.50 |
| 11. | **TOTAL POINTS** | | | **157.50** |

### III. POINTS AWARD DETERMINATION

This Points Award determination is subject to (i) appeal as set forth in Section 3.2.4 of the Settlement Agreement; (ii) acceptance of a Fixed Payment if the total Points award is less than ten points for an MI-related injury; and (iii) audit pursuant to Article 10, but otherwise shall be non-Appealable, final, and binding on the claimant.

### IV. ACCEPTANCE OF POINTS AWARD

If you wish to accept this Points Award, select the button "Accept Points Award. Will Not Appeal." Acceptance of this Points Award will place this claim in line for payment (see Section VIII of this Notice), assuming that this claimant is IP Enrolled and that the claim is not selected for audit pursuant to Article 10. Check the claimant's Enrollment Status in Section I of this Notice to determine whether the claimant is IP Enrolled or Enrolled.

V2046v1                    **VIOXX CLAIMS ADMINISTRATOR**

**EXHIBIT**

*tabbies®*  G

*Confidential Information*

## V. APPEAL

Counsel who are appealing this Points Award on behalf of a claimant who has elected to Appeal must select the "Appeal" button. Selecting and submitting an appeal on the Claims Administrator's secure web-portal constitutes written notice of your appeal under section 3.2.4 of the Settlement Agreement. You must appeal within 15 days of the posting of this Notice, or the Points Award will be deemed accepted, final, and binding. If you appeal this Points Award, you must designate the issues you are appealing by selecting the specific factor(s). You must provide comments for each factor you select, stating specifically why you disagree with the Claims Administrator's findings and giving information about which medical record(s) support your position. The Claims Administrator will review your Appeal and will either issue a new Notice of Points Award if the amount of your Points changes, or provide an explanation if the Claims Administrator's original findings remain. When the Claims Administrator has reviewed your appeal and provided this explanation, you will have the opportunity either to withdraw your appeal or to submit your appeal directly to the Special Master. Upon receipt of an appeal, the Special Master will review the claim *de novo*. During either the Claims Administrator's or the Special Master's review during the appeal process, the number of points may decrease if additional factors are uncovered that lower the value of the claim. Any determination of the Special Master shall be final, binding and not subject to further appeal. The Special Master shall notify the Claims Administrator of its determination, and the Claims Administrator shall, promptly following receipt of such notice, notify Counsel, (or, the claimant directly if he/she is unrepresented), Merck and the NPC of the Special Master's determination.

## VI. FIXED PAYMENT

Pursuant to Section 3.3 of the Settlement Agreement, if the Total Points in this Notice are less than ten points, the Claimant may elect a Fixed Payment of $5,000 by selecting the "Accept $5,000 Fixed Payment" button on the secure web portal. If the Claimant fails to elect a Fixed Payment within 30 days, the claim shall be reviewed *de novo* by the Special Master, in accordance with Section 3.4 of the Settlement Agreement.

## VII. GOVERNMENTAL LIEN RESOLUTION

A previous communication entitled *Claimant Education Materials on Government Medical Liens/Obligations* explained that the Lien Resolution Administrator ("LRA") is responsible for establishing a formal process for satisfying and discharging any statutory obligations to Medicare, Medicaid and/or other specific government healthcare programs for Enrolling Claimants who have been or who currently are entitled to such state or federal benefits. **Under the terms of the Vioxx Settlement Program, any such Vioxx-related statutory obligations must be resolved in order for any settlement monies to be released.** However, the LRA has established procedures and protocols to allow disbursement of Interim Payments while the obligations (if any) described below are satisfied.

The LRA is resolving federal Medicare (Part A & B) and Medicaid's interest (if any) in the settlement awards of claimants determined to be entitled to federal Medicare and/or state Medicaid based upon the Social Security Numbers (SSNs) provided to the Claims Administrator. The LRA, Medicare and Medicaid assume no responsibility for the correctness of the SSNs provided to the Claims Administrator by claimants or their counsel. If the claimant's SSN in Section I of the Notice of Points Award is incorrect, the claimant or their counsel must contact the Claims Administrator immediately, as it could affect the correctness of the claimant's governmental lien obligations listed below. In addition to federal Medicare and state Medicaid, the LRA is resolving any reimbursement obligations associated with Other Government Programs, such as Veterans Affairs (VA), TRICARE, Department of Defense (DOD), or Indian Health Services (IHS) which were reported to the LRA by the claimant or claimant's counsel. The previous communication entitled *Claimant Education Materials on Government Medical Liens/Obligations* instructed claimants and claimants' counsel on how to report liens asserted by Other Government Programs.

*Confidential Information*

| A. OBLIGATIONS TO GOVERNMENT HEALTHCARE PROGRAMS | |
|---|---|
| **1.** State Medicaid Participant | **No** |
| **2.** Medicaid Holdback Percentage | **0%** |
| **3.** Federal Medicare Participant | **Yes** |
| **4.** Global Medicare Resolution Category and Amount | **Resolution Category 6** **$143.27** |
| **5.** Other Government Program Obligations | **No** |
| **6.** Resolution of Other Government Program Obligations (not to exceed the relevant Program's actual injury-related care expenditures on behalf of Claimant) | **0%** |

## B. GOVERNMENTAL LIEN/ CLAIM RESOLUTION PROCEDURES

**Identification of Participants in Government Healthcare Programs.**

If "No" is displayed in any of Rows 1, 3 or 5 of Section VII.A above, then you were determined by the LRA not to be a participant in that particular government program and you, therefore, do not have any liens to satisfy with respect to that healthcare program/agency. If "Yes" is displayed in any of Rows 1, 3 or 5 of Section VII.A above, the LRA determined that you are entitled to federal Medicare (Part A & B) and/or state Medicaid benefits and/or Other Government Programs (VA, TRICARE, DOD or IHS) and that you will have to satisfy reimbursement obligations or liens associated with injury-related care benefits that you received from those respective healthcare programs. Additional information about the procedures used by the LRA to identify and resolve these obligations are included within the separate, posted document titled *Information About Resolving Governmental Medical Liens for the Vioxx Settlement Program* **It is imperative that all claimants and counsel review the information above in Section VII. A to confirm that it is correct. Claimants and/or their counsel should contact the office of the Lien Resolution Administrator at (877)-774-1130 immediately if the information in Section VII.A** *Obligations to Government Healthcare Programs* **is thought to be inaccurate.**

All counsel should also download the document entitled *Information About Resolving Governmental Medical Liens for the Vioxx Settlement Program*, read it carefully, and provide it to their clients/claimants. This document is available on the "Lien" section of your secure web portal.

## VIII. PAYMENTS AND WITHOLDINGS

Claimants who are IP Enrolled and are not Special Marker QPC Claimants will receive a 40% Interim Payment after the Points Award is accepted or the appeal is resolved, and no deductions will be made from the Interim Payment. A Special Marker QPC who elects the $5,000 Fixed Payment will receive the entire amount in one payment, less any applicable governmental or private liens. The $5,000 Fixed Payment will not be subject to a Common Benefit Fee deduction. The LRA (explained in Section VII) is not responsible for resolving private liens, which remain the responsibility of the Claimant and Primary Counsel. On August 27, 2008, the United States District Court for the Eastern District of Louisiana, which supervises the implementation of the Settlement Program, entered in Order (Document # 15722) that limited the attorneys' fees payable out of payments in the Settlement Program, including any Interim Payments, to 32%.

*Confidential Information*

| V2046B | POST-APPEAL NOTICE OF POINTS AWARD<br>Date of Notice: 2/13/09 |
|---|---|

## I. IDENTIFYING INFORMATION

| Claimant Name | Stephens, Johnie | | Social Security Number | | 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 |
|---|---|---|---|---|---|
| Law Firm | Eubanks, Gary & Associates | | | | |
| VCN Number | 1062642 | Enrollment Status | IP Enrolled | First Confirmed Vioxx Use | 7/8/02 |

## II. TOTAL POINTS CALCULATION

### A. BASIS POINTS

| | | | | |
|---|---|---|---|---|
| 1. | Qualifying Event/Level | Injury Type :  MI | Injury Level :     1 | Date of Event:  3/15/03 |
| 2. | Age at Event | 80 years or older | | |
| 3. | Overall Duration of Vioxx Use | 6-18M | | |
| 4. | Basis Points | | | 208.33 |

### B. LABEL AND CONSISTENCY ADJUSTMENTS

| | | | |
|---|---|---|---|
| 5. | Label | -15 % | |
| 6. | Consistency | +20 % | |
| 7. | Adjustment Total % | +5 % | |
| 8. | Subtotal Points | (Row 4 x Row 7) | 218.75 |

### C. RISK FACTOR ADJUSTMENTS

| | Risk Factors | Finding | Adjustment | Cumulative Points |
|---|---|---|---|---|
| 9. | Hypertension | Controlled | - 20 % | 175.00 |
| 10. | Prior Diagnosed Vascular Disease | Cerebovascular Disease | - 10 % | 157.50 |
| 11. | TOTAL POINTS | | | 157.50 |

## III. POINTS AWARD DETERMINATION

This Post-Appeal Notice of Points Award is an official notification from BrownGreer PLC, the Vioxx Claims Administrator. The Claims Administrator has issued this Post-Appeal Notice of Points Award in response to your appeal under Section 3.2.4 of the Settlement Agreement. After receiving notice of your appeal, the Claims Administrator conducted a *de novo* review of your claim and assessed the Point value above. This determination supersedes that which you previously appealed.

## IV. ACCEPTANCE OF POINTS AWARD

If you wish to accept this Post-Appeal Notice of Points Award, select the "Accept Points Award" button. Acceptance of this determination will end your appeal and place this claim in line for payment (see Section VIII of this Notice), assuming that this claimant is IP Enrolled and that the claim is not selected for quality control or audit pursuant to Article 10 of the Settlement Aggrement. Check the claimant's Enrollment Status in Section I of this Notice to determine whether the claimant is IP Enrolled or Enrolled.

V2046Bv1

**VIOXX CLAIMS ADMINISTRATOR**
BROWNGREER ‖ PLC



EXHIBIT

H

*Confidential Information*

## V. APPEAL

This determination takes the place of the Points Award you previously appealed. If this determination provides all the relief requested in your appeal, your entire claim will be deemed accepted and placed in line for payment, subject to the provisions of Article 10. If it grants some but not all of the relief you requested, any issue on which there is agreement will be considered resolved and deemed accepted. For any issue on which there is disagreement you will receive an explanation of the Claims Administrator's decision which you can view on the secure web-portal.

After reviewing the Claims Administrator's explanation as to each issue you appealed, you may choose whether to appeal any or all issues directly to the Special Master or to withdraw any or all issues. If you withdraw all issues on appeal, your claim will be placed in line for payment, subject to the provisions of Article 10. If you choose to submit your appeal to the Special Master, you do not need to provide additional explanation for each issue you appealed. Your original comments on appeal and the Claims Administrator's explanation will be forwarded to the Special Master for consideration, along with your entire claims submission. **Any new materials not previously provided with the original appeal will not be considered by the Special Master.**

If this determination assesses for the first time a risk factor or applies an adjustment that is different from your original Points Award determination, you may appeal that aspect of this Post-Appeal Notice of Points Award. To appeal a new finding by the Claims Administrator, select the "Appeal" button and submit comments on the secure web-portal as you did when noting your original appeal. The process will then repeat itself as to the new issue. Any appeal to the Special Master on the original Notice of Points Award will be held until you decide whether to appeal the new issue to avoid piecemeal submissions to the Special Master.

Upon receipt of an appeal, the Special Master will conduct a *de novo* review of your claim, which may decrease its value if additional factors are uncovered. Any determination of the Special Master shall be final, binding and not subject to further appeal. The Special Master will notify the Claims Administrator of its determination, and the Claims Administrator will promptly following receipt of such notice notify counsel (or the claimant directly if he/she is unrepresented), Merck and the NPC of the Special Master's determination.

## VI. FIXED PAYMENT

Pursuant to Section 3.3 of the Settlement Agreement, if the Total Points in this Notice are less than ten points for a MI-related injury or less than two points for an IS-related injury, the claimant may elect a Fixed Payment of $5,000 by selecting the "Accept $5,000 Fixed Payment" button on the secure web portal. If the claimant has a dual injury claim, the aggregate Grand Points Total on Page 1 of this Notice must be less than the 10-point or the 2-point threshold for the Fixed Payment option. If the claimant alleged both an IS and a MI injury, the Primary Injury identified on Page 1 of this Notice governs whether the Fixed Payment threshold is less than ten points for MI Claims or less than two points for IS Claims. If the claimant qualifies for a Fixed Payment but fails to elect a Fixed Payment within 30 days of this Notice, the claim shall be reviewed *de novo* by the Special Master, in accordance with Section 3.4 of the Settlement Agreement.

## VII.  GOVERNMENTAL LIEN RESOLUTION

A previous communication entitled *Claimant Education Materials on Government Medical Liens/Obligations* explained that the Lien Resolution Administrator ("LRA") is responsible for establishing a formal process for satisfying and discharging any statutory obligations to Medicare, Medicaid and/or other specific government healthcare programs for Enrolling Claimants who have been or who currently are entitled to such state or federal benefits. **Under the terms of the Vioxx Settlement Program, any such Vioxx-related statutory obligations must be resolved in order for any final settlement monies to be released.** However, the LRA has established procedures and protocols to allow disbursement of Interim Payments while the obligations (if any) described below are satisfied.

The LRA is resolving federal Medicare (Part A & B) and Medicaid's interest (if any) in the settlement awards of claimants determined to be entitled to federal Medicare and/or state Medicaid based upon the Social Security Numbers (SSNs) provided to the Claims Administrator. The LRA, Medicare and Medicaid assume no responsibility for the correctness of the SSNs provided to the Claims Administrator by claimants or their counsel. If the claimant's SSN in Section I of the Notice of Points Award is incorrect, the claimant or their counsel must contact the Claims Administrator immediately, as it could affect the correctness of the claimant's governmental lien obligations listed below. In addition to federal Medicare and state Medicaid, the LRA is resolving any reimbursement obligations associated with Other Government Programs, such as Veterans Affairs (VA), TRICARE, Department of Defense (DOD), or Indian Health Services (IHS) which were reported to the LRA by the claimant or claimant's counsel. The previous communication entitled *Claimant Education Materials on Government Medical Liens/Obligations* instructed claimants and claimants' counsel on how to report liens asserted by Other Government Programs.

| | A.  OBLIGATIONS TO GOVERNMENT HEALTHCARE PROGRAMS | |
|---|---|---|
| 1. | State Medicaid Participant | No |
| 2. | Medicaid Holdback Percentage | 0% |
| 3. | Federal Medicare Participant | Yes |
| 4. | Global Medicare Resolution Category and Amount | **Resolution Category 6** **$143.27** |
| 5. | Other Government Program Obligations | No |
| 6. | Resolution of Other Government Program Obligations (not to exceed the relevant Program's actual injury-related care expenditures on behalf of Claimant) | 0% |

### B.  GOVERNMENTAL LIEN/ CLAIM RESOLUTION PROCEDURES

**Identification of Participants in Government Healthcare Programs.**

If "No" is displayed in any of Rows 1, 3 or 5 of Section VII.A above, then you were determined by the LRA not to be a participant in that particular government program and you, therefore, do not have any liens to satisfy with respect to that healthcare program/agency. If "Yes" is displayed in any of Rows 1, 3 or 5 of Section VII.A above, the LRA determined that you are entitled to federal Medicare (Part A & B) and/or state Medicaid benefits and/or Other Government Programs (VA, TRICARE, DOD or IHS) and that you will have to satisfy reimbursement obligations or liens associated with injury-related care benefits that you may have received from those respective healthcare programs. Additional information about the procedures used by the LRA to identify and resolve these obligations are included within the separate, posted document titled *Information About Resolving Governmental Medical Liens for the Vioxx Settlement Program.* **It is imperative that all claimants and counsel review the information above in Section VII. A to confirm that it is correct. Claimants and/or their counsel should contact the office of the Lien Resolution Administrator at (877)-774-1130 immediately if the information in Section VII.A *Obligations to Government Healthcare Programs* is thought to be inaccurate.**

All counsel should also download the document entitled *Information About Resolving Governmental Medical Liens for the Vioxx Settlement Program,* read it carefully, and provide it to their clients/claimants. This document is available on the "Lien" section of your secure web portal.

*Confidential Information*

### VIII. PAYMENTS AND WITHOLDINGS

Claimants who are IP Enrolled and are not Special Marker QPC Claimants will receive a 40% Interim Payment after the Points Award is accepted or the appeal is resolved, and no deductions will be made from the Interim Payment. A Special Marker QPC who elects the $5,000 Fixed Payment will receive the entire amount in one payment, less any applicable governmental or private liens. The $5,000 Fixed Payment will not be subject to a Common Benefit Fee deduction. The LRA (explained in Section VII) is not responsible for resolving private liens, which remain the responsibility of the Claimant and Primary Counsel. On August 27, 2008, the United States District Court for the Eastern District of Louisiana, which supervises the implementation of the Settlement Program, entered an Order (Document # 15722) that limited the attorneys' fees payable out of payments in the Settlement Program, including any Interim Payments, to 32%.



Official
# VIOXX SETTLEMENT
This website is sponsored by the Vioxx MDL Plaintiffs' Steering Committee

home   calculator   documents   disclaimer

# Vioxx Settlement Calculator

## Step 1: Determination of Basis Points

If you are a Qualifying Claimant as explained more fully in the Description of Settlement Agreement, the first step in the claim evaluation process will be for the Claims Administrator to determine the Qualifying Claimant's Basis Points. Basis Points are based upon: (1) the Qualifying Claimant's age at the time of his/her Vioxx-related injury; (2) the Qualifying Claimant's overall duration of Vioxx usage prior to his/her Vioxx-related injury; and (3) the Qualifying Claimant's injury level

To determine a Qualifying Claimant's Basis Points, please answer the following questions:

### Type of Injury

**What injury did the Qualifying Claimant suffer while taking Vioxx?**

Only one injury can be selected. *If the Qualifying Claimant suffered more than one injury, select the more serious injury while taking Vioxx*

◉  Heart Attack

◯  Ischemic Stroke

### Length of Use

**How long did the Qualifying Claimant take Vioxx?**

◯  Less than 60 days

◯  Over 2 months but less than 6 months

◯  Over 6 months but less than 18 months

◉  Over 18 months but less than 30 months

◯  30 months or more

### Seriousness of Injury — Heart Attack

**Select only one injury category that best reflects the Qualifying Claimant's injury.**

If more than one category applies, the most serious injury level controls.

◉  **Level 1**
  Death; or
  Unrescuscitated Sudden Cardiac Death

◯  **Level 2**
  Now suffers from a reduced ejection fraction of less than or equal to 20%; or
  Underwent Coronary Artery Bypass Surgery (CABG) plus complications resulting from that surgery within 6 months of your heart attack; or
  Hospitalized for 30 or more days at the time of your heart attack.

◯  **Level 3**
  Has a heart ejection fraction of 21-29%; or

EXHIBIT

I

tabbies

⌐ Hospitalization for 15-29 days at the time of your heart attack; or
⌐ Underwent Coronary Artery Bypass Surgery

○ **Level 4**
⌐ Now suffers from a reduced heart ejection fraction of 30-39%; or
⌐ Hospitalized at time of heart attack for 10-14 days; or
⌐ Received stent (PTCA) implant and suffered from restenosis of the stented blood vessel within 6 months of your heart attack; or
⌐ Defibrillator or pacemaker placement.

○ **Level 5**
⌐ Now suffers from a reduced heart ejection fraction of 40-49%; or
⌐ Hospitalized at time of heart attack for 4-9 days; or
⌐ Received stent (PTCA) to open clogged blood vessel; or
⌐ Underwent angioplasty procedure to open blood vessel.

◉ **Level 6**
⌐ Has a heart ejection fraction of 50% or greater; or
⌐ Hospitalized for 0-3 days at the time of your heart attack;
⌐ Underwent catheterization procedure.

## Seriousness of Injury — Ischemic Stroke

**Select only one injury category that best identifies your level of injury.**

Select only one injury category that best identifies your level of injury. If you meet the criteria for more than one injury category, then the most serious injury level controls:

○ **Level 1**
⌐ Death

○ **Level 2**
⌐ Disability such that you require full time care in either a nursing care facility or in a nursing home facility (and did not need this care prior to your stroke). Full-time care means care administered by nurse or independent caregiver (not a family member or friend) for 8 hours or more each day

○ **Level 3**
⌐ Disability such that you require some assistance to perform one or more basic activities of daily living (Dressing, Eating, Walking, Toileting, and Hygiene) (but do not require Full-time Care), provided that you did not need such assistance prior to your injury; or a diagnosis at the time of your injury and continuing for at least one year after your injury of aphasia (loss of ability to comprehend language) or hemianopsia (half vision).

○ **Level 4**
⌐ Disability such that you require some assistance to perform one or more instrumental activities of daily living (ability to use telephone, ability to prepare and serve meals, ability to do laundry, ability to manage day to day finances, ability to participate in housekeeping taks, and ability to travel outside the home) provided that you didn't need such assistance prior to the event.

○ **Level 5**
⌐ any injury not falling within levels 1 through 4

## Age

**Select the Qualifying Claimant's age group at the time of his/her heart attack or stroke :**

○ Less than 30 years old

○ 30-34 years old

○ 35-39 years old

○ 40-44 years old

○ 45-49 years old

Vioxx Calculator

- ○ 50-54 years old
- ○ 55-59 years old
- ○ 60-64 years old
- ○ 65-69 years old
- ○ 70-74 years old
- ○ 75-79 years old
- ◉ 80 or greater years old

**Basis Points**

Based upon the information you have entered, this claim would be assigned the following Basis Points in the Settlement Fund:

## 229    Basis Points

## Step 2: Adjustments

Depending upon the product label (Vioxx package insert) that was in use by Merck at the time of the Qualifying Claimant's Vioxx-related injury, and depending upon the number of days per week the Qualifying Claimant ingested Vioxx, the Basis Points may be increased or decreased.

**Frequency of Use**

In the 12 months leading up to the Qualifying Claimant's injury, identify the consistency of Vioxx use:

- ◉ Every day usage
- ○ Usage every 5 out of 7 days
- ○ Usage 4 out of 7 days
- ○ Usage 3.5 out of 7 days
- ○ Usage less than 3.5 out of 7 days

**Timeframe**

Select the timeframe of the Qualifying Claimant's injury and his/her Vioxx usage:

- ○ Eligible event occurred on or prior to March 9, 2000
- ○ Eligible event occurred after March 9, 2000, but prior to or on April 13, 2002
- ◉ Vioxx use occurred before April 13, 2002, and the eligible event occurred after April 12, 2002
- ○ Vioxx use commenced after April 13, 2002, and the eligible event occurred after April 13, 2002

**Subtotal Award Points**

Based upon the information you have entered, you would be assigned the following subtotal award points:

## 275    Subtotal Award Points

## Step 3: Risk Factor Reductions

The risk factors possessed by the Qualifying Claimant will be based upon the identification of risk factors from a Qualifying Claimant's Event Records by the Claims Administrator

Answer the following questions regarding the risk factors the Qualifying Claimant possessed at the time of his/her Vioxx-related injury

### Body Mass Index

**What was the Qualifying Claimant's estimated height at the time of his/her injury?**

| 5 | feet | 10 | inches |

**What was the Qualifying Claimant's estimated weight at the time of his/her injury?**

| 173 | lbs |

**24.820204081632653** BMI

### Medical Conditions

If you suffer from or have been told that you suffer from any of the following medical conditions, please check the box next to that condition

**Did the Qualifying Claimant suffer from hypertension?**
(heart attack or ischemic stroke)

◉ Controlled (heart attack)

○ Controlled (ischemic stroke)

◉ Uncontrolled (heart attack)

○ Uncontrolled (ischemic stroke)

◉ No

**Did the Qualifying Claimant suffer from high cholesterol?**
(heart attack or ischemic stroke)

○ Controlled (heart attack)

○ Controlled (ischemic stroke)

◉ Uncontrolled (heart attack)

○ Uncontrolled (ischemic stroke)

◉ No

**Did the Qualifying Claimant suffer from diabetes?**

○ Controlled

○ Uncontrolled

◉ No

Did the Qualifying Claimant suffer from Peripheral Vascular Disease (PVD)?

◉ Yes

○ No

Did the Qualifying Claimant suffer Coronary Artery Disease prior to starting Vioxx?

○ Yes

◉ No

Did the Qualifying Claimant experience a heart attack prior to starting Vioxx?

◉ Yes

◉ No

Did the Qualifying Claimant undergo a Coronary Artery Bypass Surgery (CABG) prior to starting Vioxx?-

○ Yes

◉ No

Did the Qualifying Claimant suffer a stroke or TIA prior to starting Vioxx?
(ischemic stroke)

○ Yes

○ No

Did the Qualifying Claimant suffer from Carotid Artery Disease or undergo a carotid artery procedure prior to the initiation of Vioxx?
(ischemic stroke)

○ Yes

○ No

Did the Qualifying Claimant suffer from atrial fibrillation or heart failure prior to starting Vioxx?
(ischemic stroke)

○ Yes

○ No

Did the Qualifying Claimant suffer from Migraine headaches?
(ischemic stroke)

○ Yes

○ No

Did the Qualifying Claimant abuse alcohol?

◉ Yes

Case 2:05-md-01657-EEF-DEK   Document 18105-1   Filed 03/27/09   Page 24 of 26

○ No

**Did the Qualifying Claimant smoke after the Vioxx-related injury?**

○ Yes

◉ No

**Did the Qualifying Claimant smoke in the year leading up to the Vioxx-related injury?**

○ Yes

◉ No

**If you answered yes to the prior question, prior to the Qualifying Claimant's Vioxx injury, did he/she smoke at least 1 pack per day for at least 30 years?**

○ Yes

◉ No

**Does the Qualifying Claimant have a family history of heart disease?**
(heart attack)

○ Yes

◉ No

**If you answered yes to the prior question, did the mother, father, sisters, or brothers of the Qualifying Claimant suffer from a heart attack prior to age 55 if male or prior to age 65 if female?**
(heart attack)

○ Yes

◉ No

**Do you have a family history of stroke?**
(ischemic stroke)

○ Yes

○ No

**If you answered yes to prior question, did your mother, father, sisters, or brothers suffer from a stroke prior to age 55 if male or prior to age 65 if female?**
(ischemic stroke)

○ Yes

○ No

**Did the Qualifying Claimant use any illegal substances in the year leading up to his/her injury?**

◉ Yes

◉ No

---

Did the Qualifying Claimant use any illegal substances in the 5 years leading up to his/her injury?

○ Yes

◉ No

---

At the time of the Qualifying Claimant's injury, was the Qualifying Claimant performing any strenuous activity including, but not limited to, strenuous exercise (when he/she doesn't routinely exercise), climbing hills, skiing, surfing, distance biking?

◉ Yes

◉ No

---

Within the 5 days leading up to the Qualifying Claimant's injury, had he/she undergone total joint athroplasty or other major surgery?

○ Yes

◉ No

---

If the Qualified Claimant is female, within the month leading up to the Qualified Claimant's stroke, did she smoke and use birth control pills?
(ischemic stroke)

○ Yes

○ No

---

If female, was the Qualified Claimaing taking hormone replacement therapy within the month prior to her stroke, and had the Qualified Claimant started that hormone replacement therapy within the year leading up to her stroke?
(ischemic stroke)

○ Yes

○ No

---

## Subtotal Award Points

Based upon the information you have entered, you would be assigned the following subtotal award points:

### 198     Subtotal Award Points

---

## Step 4: Additional Reductions

Due to the significant risk of heart attack that certain risk factor combinations pose, an additional 90% reduction will be taken if the Qualifying Claimant suffered from any of the following combinations:

**Heart Attack**

▪ Prior heart attack or Coronary Bypass Surgery (prior to Vioxx usage) + Smoking or a BMI of 40 or greater

▪ BMI of 50 or greater + Smoking

▪ Prior Coronary Artery Disease + Extreme Smoking (1 ppd x 30 years)]

**Ischemic Stroke**

■ Prior (before Vioxx) heart attack, stroke, coronary bypass surgery, TIA + smoking or a BMI of 40 or greater

■ BMI greater than 50 + previous smoker or extreme smoking (1 ppd for 30 years)

■ Prior (before Vioxx) coronary artery disease or carotid artery disease + extreme smoking (1 ppd for 30 years)

**Subtotal Award Points**

Based upon the information you have entered, you would be assigned the following subtotal award points:

### 198
#### Subtotal Award Points

## Step 5: Total Points

Based upon the information you have entered, the Qualifying Claimant's Total Award Point Estimate would be:

**Total Award Points**

Based upon the information you have entered, you would be assigned the following estimated total award points:

### 198
#### Total Award Point Estimate

Please understand that the Qualifying Claimant's Total Award Point Estimate is only an estimate. The Total Award Points the Qualifying Claimant may ultimately receive will be based solely upon a review of his/her medical records by the Claims Administrator. To the extent there are discrepancies between the information you have entered and the Qualifying Claimant's medical records, the Qualifying Claimant's medical records will control. Please contact your attorney to discuss further your eligibility to participate in the Settlement Program and the possible point award total for your claim.

Although the value of each Award Point cannot be known until all claims participating in the Settlement Program are evaluated, the following will provide you a range of potential settlement values for the Qualifying Claimant''s claim:

**If each point is valued at:**

$1,500, your estimated settlement amount:   $296,998.10

$1,750, your estimated settlement amount:   $346,497.78

$2,000, your estimated settlement amount:   $395,997.47

Calculate          Reset

Disclaimer   | Terms of Use   | Privacy Policy   | © 2007 Beasley Allen et al. All rights reserved.