1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5

6   IN RE:  VIOXX PRODUCTS        *          Docket MDL 1657-L
      LIABILITY LITIGATION        *
                                  *          March 5, 2009
7                                 *
                                  *          9:00 a.m.
8   * * * * * * * * * * * * * * * *

9

10

11                  MOTIONS HEARD BEFORE THE
                 HONORABLE ELDON E. FALLON
                UNITED STATES DISTRICT JUDGE

12

13
    APPEARANCES:
14

15  For the Plaintiffs:          Herman Herman Katz & Cotlar
                                 BY:  LEONARD A. DAVIS, ESQ.
16                               820 O'Keefe Avenue
                                 New Orleans, Louisiana 70113
17

18  For the Plaintiffs:          Lieff Cabraser Heimann & Bernstein
                                 BY:  ELIZABETH J. CABRASER, ESQ.
19                               275 Battery Street, Suite 3000
                                 San Francisco, California 94111
20

21  For the Defendants:          Stone Pigman Walther Wittmann
                                 BY:  DOROTHY H. WIMBERLY, ESQ.
22                               546 Carondelet Street
                                 New Orleans, Louisiana 70130
23

24

25

```
 1   For the Defendants:          O'Melveny & Myers
                                  BY:  JOHN H. BEISNER, ESQ.
 2                                1625 Eye Street N.W.
                                  Washington, D.C. 20006
 3

 4   For the Defendants:          The Dugan Law Firm
                                  BY:  JAMES R. DUGAN II, ESQ.
 5                                650 Poydras Street, Suite 2150
                                  New Orleans, Louisiana 70130
 6

 7
     Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
 8                                500 Poydras Street, Room B-406
                                  New Orleans, Louisiana 70130
 9                                (504) 589-7778

10

11

12
     Proceedings recorded by mechanical stenography, transcript
13   produced by computer.

14

15

16

17

18

19

20

21

22

23

24

25
```

1                             **PROCEEDINGS**

2                          **(March 5, 2009)**

3          **THE DEPUTY CLERK:**  Everyone rise.

4          **THE COURT:**  Be seated, please.

5                Good morning, ladies and gentlemen.  We are here

6     today for a number of motions first and then we also have some

7     other matters after this series of motions.  I will deal with

8     the *Lone Pine* first.

9          **MS. WIMBERLY:**  Yes, Your Honor.  Dorothy Wimberly

10    representing Merck.

11               Your Honor, we have four matters that were

12    deferred from prior hearings, and I would like to take those up

13    first.  The first is from the second *Lone Pine* motion, which

14    was record document 16033.  There were six plaintiffs

15    represented by the Douglas & London law firm who remain on that

16    motion.  At their request we had deferred their cases from the

17    December 19 hearing.

18               On February 12, pursuant to the Court's order

19    rescheduling this for March 5, we sent the signed order by

20    FedEx.  It was received by Douglas & London's office.  We have

21    a confirmation and receipt.  There's been no response to that,

22    and we would ask that the cases be dismissed with prejudice for

23    failure to comply with Pretrial Order 28.

24          **MR. DAVIS:**  Your Honor, on behalf of the PSC -- and

25    we are not speaking on behalf of the individual counsel -- the

1    PSC would oppose any dismissals.

2         **THE COURT:**  Okay.  I'll overrule the objection and

3    dismiss with prejudice 16033.

4         **MS. WIMBERLY:**  I will submit a judgment to Nathan

5    this afternoon.  Just for the record, those are the six

6    plaintiffs --

7         **THE COURT:**  Douglas & London plaintiffs on Exhibit 3.

8         **MS. WIMBERLY:**  -- on Exhibit 3 to the Court's order.

9         Next up is a matter remaining from the first

10   latecomers motion, record document 16944, relating to eight

11   plaintiffs appearing on Exhibit A to the Court's order.

12        Again, I sent by FedEx on February 12 a copy of

13   the Court's order to all counsel and a *pro se* plaintiff.  Since

14   that time all of those counsel have provided discovery

15   materials and are in the process of providing expert reports.

16   I have heard from all of them, and they have all committed that

17   they will have their reports by March 27 or, failing which,

18   they would obviously have no opposition to dismissal.  So we

19   would ask that the Court defer those eight plaintiffs until

20   March 27, immediately following the next monthly status

21   conference.

22        **THE COURT:**  Okay.  I'll defer the eight plaintiffs on

23   Exhibit A attached to the second latecomers motion, which is

24   17302.

25        **MS. WIMBERLY:**  Next, Your Honor, as a single

1    plaintiff remaining from the second latecomers motion, record

2    document 17302, this was plaintiff Emma Sadler, 08-3665.  The

3    Court may recall that her counsel, Dan Gruber, had requested

4    that the matter be deferred to enable him to withdraw.  That

5    has occurred.  We agreed to continue to March 5.

6    Notwithstanding Mr. Gruber's sending of the Court's order to

7    Ms. Sadler, there's been no response, and we would ask that the

8    case be dismissed with prejudice.

9            MR. DAVIS:  Again, Your Honor, the PSC would make the

10   same objection.

11           THE COURT:  I overrule the objection and dismiss with

12   prejudice.

13           MS. WIMBERLY:  Next, Your Honor, is a single

14   plaintiff remaining from the fourth *Lone Pine* motion, record

15   document 17303.  This is plaintiff Ramon Bonilla, 07-214.

16   Again, the Court may recall this is a case with an incompetent

17   fiduciary.  Although counsel has diligently been attempting to

18   substitute a competent fiduciary, she was unable to do so by

19   consent of the heirs and has had to invoke a contested

20   proceeding, which is taking additional time.  She has requested

21   an additional 60 days to complete that matter, which we have

22   agreed to.

23           THE COURT:  Okay.  I'll defer that for 60 days.  How

24   are we doing with that?  Is that creating a problem?  Are we

25   getting the right succession representatives appointed to

1  represent these people?

2  **MS. WIMBERLY:**  In this case there was a

3  representative, but that representative was incompetent, so

4  it's simply a matter of substituting.

5  **THE COURT:**  Let's keep an eye on that.  If it creates

6  a problem, we have to figure out another way of dealing with

7  it, and a 17(c) motion can deal with it.  I'm mainly interested

8  in at least putting the money in the registry of the Court, and

9  we can get that 17(c) person to sign the appropriate document

10  and work through the state.  That would allow the dismissal of

11  the case and the money to be placed in the registry of the

12  Court.

13  **MS. WIMBERLY:**  Next, Your Honor, is the third

14  latecomers motion, record document 17639.  That matter is set

15  today for the first time.  It involves plaintiffs on Exhibits A

16  and B.

17  As to the plaintiffs on Exhibit A, we have

18  agreed to an extension for 60 days for the Weitz & Luxenberg

19  five plaintiffs on Exhibit A.  As to plaintiff Angela Purcell,

20  represented by Bergman & Frockt, they have agreed to produce

21  their expert report and any remaining discovery by April 17.

22  As to that plaintiff, we would ask the Court to defer it to the

23  April status conference date, whatever that date may be.

24  That leaves two remaining plaintiffs, Clarence

25  Pitts and Juanita Fisher, who their counsel was served by FedEx

1   with an order setting the matter for hearing today, to which we

2   have received no response.  We would ask that the case be

3   dismissed with prejudice.  I note that Mr. Flynn is in the

4   courtroom and one of those plaintiffs belongs to him.  That's

5   Clarence Pitts.

6          **MR. FLYNN:**  Yes.  Could I get 30 more days to get an

7   expert report for Clarence Pitts?  This was kind of brought to

8   my attention late and that's one of the reasons why I was here.

9   If I could just get 30 more days because that is a pending case

10  and we do want to get an expert report on it.

11         **THE COURT:**  Okay.  Any objection to that?

12         **MS. WIMBERLY:**  No, Your Honor.

13         **THE COURT:**  I'll give you 30 more days.

14         **MR. FLYNN:**  Thank you, Judge.

15         **MS. WIMBERLY:**  Then, Your Honor, that would leave us

16  with one dismissal from Exhibit A and that is plaintiff Juanita

17  Fisher, 08-4561.

18             That brings us to the two plaintiffs on

19  Exhibit B.  One of those is a *pro se* plaintiff, Bobbie

20  Robinson, who has been in touch with, I believe, the Court, the

21  curator, and with our office and has affirmatively indicated

22  that they intend to proceed with their case.  Under the Court's

23  order, they did comply with the initial step in that they have

24  indicated that intent to proceed.  They now have certain

25  obligations, which have been explained to them by the curator's

1   office, to go ahead and produce and comply with Pretrial Order

2   29 by March 31.  So we would ask, Your Honor, to continue this

3   as to *pro se* plaintiff Bobbie Robinson until the April status

4   conference.

5          **THE COURT:**  I'll do that.  It will be continued until

6   that time.

7          **MS. WIMBERLY:**  That then leaves us with one plaintiff

8   on Exhibit B, Janet Lennon, 08-1417.  The Court's order setting

9   the matter for hearing today was delivered by FedEx to counsel,

10  and we have received no response.  We would ask that it be

11  dismissed with prejudice.

12         **MR. DAVIS:**  Again, Your Honor, the PSC would oppose

13  any dismissal.

14         **THE COURT:**  I will overrule the objection and dismiss

15  with prejudice.  Bobbie Robinson, is that it?

16         **MS. WIMBERLY:**  Yes.  Bobbie Robinson is deferred to

17  the April status conference.

18         **THE COURT:**  It is deferred and the other one, Janet

19  Lennon, that is dismissed.

20         **MS. WIMBERLY:**  That brings us to the final motion set

21  for today and, again, this is an initial setting for this

22  motion.  It is not a deferred matter.  That is Merck's fifth

23  *Lone Pine* motion, record document 17653.

24              Your Honor, essentially, this motion can be

25  broken down into three groups of plaintiffs.  The first is

1   approximately 350 plaintiffs represented by the Carey & Danis

2   law firm and Mr. Flynn, who is here in the courtroom.  I would

3   like to address those last.

4           **THE COURT:**  All right.

5           **MS. WIMBERLY:**  Next is all of the remaining

6   plaintiffs on Exhibits A-1 and A-2 represented by counsel,

7   excluding the Carey & Danis plaintiffs, and then the third are

8   the *pro se* plaintiffs on Exhibit B, and I would like to take

9   them up in that order.

10          **THE COURT:**  All right.

11          **MS. WIMBERLY:**  As to the plaintiffs on Exhibits A-1

12  and A-2, excluding the Carey & Danis plaintiffs, all of these

13  received by Federal Express copies of the Court's order setting

14  this matter for hearing today.  With the exception of the

15  following people whom we have heard from or who have stipulated

16  and dismissed their cases, we have received no response.

17          The Barrett Law Firm, representing John Ault,

18  07-4082, had contacted liaison counsel and the Court and

19  requested an additional 30 days in which to comply --

20          **THE COURT:**  Okay.

21          **MS. WIMBERLY:**  -- for that single plaintiff, and we

22  agreed to that extension.

23          **THE COURT:**  All right.  The Court will agree with

24  that and extend it.

25          **MS. WIMBERLY:**  Next, Your Honor, on Exhibit A-1 and

1   A-2 is Ms. Doris Maresico, represented by Cellino & Barnes,
2   06-2220.  Cellino & Barnes filed an opposition and a suggestion
3   of death.  Based upon the timing of the filing of that, we
4   would need to continue this matter for 60 days to comply with
5   the rules and enable them to substitute a proper party.  We ask
6   that the Court continue the matter as to Ms. Maresico for 60
7   days.
8           **THE COURT:**  Let that be done.  Where is that, A-2?
9           **MS. WIMBERLY:**  A-1, and it appears on page 23 of the
10  exhibit.
11          **THE COURT:**  Okay.
12          **MS. WIMBERLY:**  Next are two clients represented by
13  Frank D'Amico, Aaron Bowers and Aily Ledet, 05-4428.
14  Mr. D'Amico immediately contacted our office upon receipt of
15  the Court's order and motion.  He confirmed in writing that
16  they had been unable to locate these two plaintiffs.  He asked
17  that they be dismissed without prejudice rather than with
18  prejudice, and we would agree to that, Your Honor.
19          **THE COURT:**  Okay.  Let these two, then, be dismissed
20  without prejudice.  That's Bowers and Ledet.
21          **MS. WIMBERLY:**  Also on page 23, two plaintiffs
22  represented by the Gallagher Law Firm and one plaintiff
23  represented by Gancedo & Nieves.  That's Robert Garza, Willie
24  Williams, and Cathey Gardenhire.  As to those three plaintiffs,
25  they have filed stipulations of dismissal with prejudice, so

1    the motion is withdrawn as to them.

2                 Moving on to page 25 of Exhibit A-1, plaintiff

3    Ronald Higgins, represented by the Ramey & Hailey law firm,

4    05-6131.  Late yesterday we received by fax an opposition

5    indicating that counsel had moved their address and that they

6    had just received the FedEx, which was resent and went through

7    two address changes.  They have asked for an additional 30 days

8    and indicated they do intend to provide the requested

9    materials.

10                **THE COURT:**  Okay.  We'll give them 30 days more.

11                **MS. WIMBERLY:**  Also on page 25 there are two

12   plaintiffs who filed stipulations of dismissal and as to whom

13   we withdraw the motion, and that is Doyle Crabtree represented

14   by Schlichter, Bogard & Denton and Sharon Greco-Spangler

15   represented by the Whitehead Law Firm.  Continuing on to the

16   top of page 26, two additional plaintiffs represented by the

17   Whitehead Law Firm, Hattie Johnson and Dan Dorsey, who also

18   filed stipulations of dismissal with prejudice, again we would

19   withdraw the motion as to them.

20                 The final matter on A-1 is Karen Rivere,

21   represented by Woody Falgoust.  Their law firm called me on

22   Monday indicating the treating physician was a doctor who was

23   displaced by Katrina and they had just located him.  They have

24   committed that they will have the expert report by March 27 or

25   they would have no opposition to dismissal at that time.  So we

1   would ask to continue the motion as to Ms. Rivere to March 27.

2           **THE COURT:** Let that be done.

3           **MS. WIMBERLY:** Your Honor, with respect to all other

4   plaintiffs on Exhibit A-1 and all plaintiffs on Exhibit A-2,

5   with the exception of the Carey & Danis plaintiffs, they

6   received copies of the motion and the Court's order by

7   Federal Express. We have confirmations of delivery. They have

8   failed to file any opposition, so we would ask that the claims

9   against those plaintiffs be dismissed with prejudice.

10           **MR. DAVIS:** Again, Your Honor, the PSC would urge the

11   same objection.

12           **THE COURT:** I overrule the objection and dismiss them

13   with prejudice.

14           **MS. WIMBERLY:** Your Honor, next that brings us to the

15   plaintiffs on Exhibit B, who are *pro se* plaintiffs. We sent

16   these directly to them via FedEx. We have a number of them to

17   whom the addresses that were provided in the motions to

18   withdraw are no longer good and the items were returned by

19   FedEx. Rather than dismissing with prejudice, we would ask

20   that the Court dismiss them without prejudice. Those are

21   plaintiffs:

22           Josephine Baylon; Cynthia Coolie-Williams;

23   Maria Santiago, Francisco Silva; Douglas Butz; Dorothy Chapman;

24   Andrew Matthews; John McIntyre; Gary Horton; Judy Montiegel;

25   Jimmy Reid; Vinnie Smith; Ora Britton; Clemson Shelton.

1            As to those plaintiffs, we would ask that the

2   Court dismiss -- and I misspoke.  Not as to Ms. Dorothy

3   Chapman.  As to all but Ms. Chapman that I just mentioned, we

4   would ask that the Court dismiss those without prejudice at

5   this time.

6            **MR. DAVIS:**  Your Honor, same objection.

7            **THE COURT:**  I will dismiss them without prejudice.

8            **MR. WILLIAMS:**  Your Honor, as to Dorothy Chapman,

9   she's a different situation.  We had a good address.  Door tags

10  were left.  The Postal Service actually attempted to deliver to

11  her.  She refused to take the envelope.  So we would ask that

12  the Court dismiss her claim with prejudice.

13           **THE COURT:**  Okay.  She was able to do it.  She didn't

14  take it.  She didn't want it.  I will dismiss it with prejudice

15  over the objection of the PSC.

16           **MS. WIMBERLY:**  Your Honor, then we have a few

17  plaintiffs who complied with the order and contacted the

18  curator to advise either that they do not intend to continue

19  with their case and they have made that affirmative

20  representation or to advise that they do intend to continue.

21           The first is Michael McIntire, who complied with

22  the order, contacted the curator and advised that he does not

23  intend to continue the suit and would agree to it being

24  dismissed with prejudice, and we would ask that the Court do

25  so.

1      **THE COURT:**  Okay.  I will dismiss it with prejudice
2  at his request.
3      **MS. WIMBERLY:**  Then, Your Honor, plaintiff Joyce
4  Westmoreland, who did not contact the curator but instead
5  contacted a lawyer who handled other matters for her in
6  Mississippi --
7      **MR. DAVIS:**  Excuse me.  Could I ask counsel a
8  question?
9      **THE COURT:**  Yes.
10      (WHEREUPON there was a conference off the record
11  between counsel.)
12      **MS. WIMBERLY:**  Ms. Westmoreland contacted a lawyer in
13  Mississippi, who attempted to facilitate some interaction,
14  although she specifically did not want to enroll and become a
15  part of this, was simply trying to make certain records got
16  where they needed to be.  Ms. Westmoreland indicated she wanted
17  to enroll.  She sent some medical records.  However, those
18  records do not indicate an eligible injury.
19      Would ask that the Court defer
20  Ms. Westmoreland's until March 27.  We want to make certain
21  that she understands that she is not eligible for the
22  settlement and that, if she intends to pursue, she needs to
23  comply with the Court's order.
24      **THE COURT:**  I'll defer that.
25      **MS. WIMBERLY:**  Then we have a few plaintiffs who

1  affirmatively indicated that they do want to continue with

2  their suits; that is, Wanda Yearber, who made that

3  representation to the curator, and Shirley Hamilton, who

4  indicated that she wanted to enroll in the settlement.  She

5  appears to have an eligible injury, but obviously all the

6  deadlines have passed.  We have been attempting to confirm

7  whether or not she has attempted to enroll.  As to

8  Ms. Hamilton, we would like to defer until March 27 to make

9  certain that she understands that if she hasn't enrolled that

10  it will be dismissed; or, if she doesn't take some affirmative

11  steps and comply with the Pretrial Order 28, her case will be

12  dismissed.

13           **THE COURT:**  That's Shirley Hamilton?

14           **MS. WIMBERLY:**  Shirley Hamilton.  Then the final

15  plaintiff who indicated an intent to pursue his suit is Sergei

16  Chepilko.  He did not contact the curator but actually filed

17  with the Court an opposition.  It appears that Mr. Chepilko had

18  actually enrolled in the settlement in a timely fashion but

19  didn't seem to understand the reason that he needed to sign a

20  stipulation of dismissal so was kicked out.

21           We would ask that the Court defer as to

22  Mr. Chepilko until March 27.  We are going to ask the curator

23  to get in touch with him, explain to him the purpose of the

24  stipulation and that it will not be filed until he is paid and

25  he has accepted points and so on.  So we would like to defer

 1  until March 27 as to him.

 2          THE COURT:  Which one is that?

 3          MS. WIMBERLY:  Your Honor, he is on the second page

 4  of Exhibit B, Sergei Chepilko.

 5          THE COURT:  I have him.

 6          MS. WIMBERLY:  Your Honor, with respect to all of

 7  these *pro se* plaintiffs, I do want to put on the record the

 8  fact that we were in contact with the curator's office

 9  consistently throughout the pendency of this matter.  We

10  received updates from the curator's office when they received

11  notification from any *pro se* plaintiff and, again, on Tuesday

12  of this week, March 3, where they sent another e-mail attaching

13  the logs of all of their communications with any plaintiffs who

14  were subject to this motion.

15          THE COURT:  I think that procedure has worked well.

16  I'm satisfied with it and would recommend that to MDL judges.

17  I think it's a way of dealing with it.  It's very difficult on

18  a curator, but he has done a good job.

19          MR. DAVIS:  My concern and what I was expressing to

20  Ms. Wimberly was that the curator is not here today, I don't

21  believe, and I wanted to be sure because the plaintiffs'

22  liaison office has not been involved in that process.  I wanted

23  to be sure that, in fact, Ms. Wimberly had consulted with the

24  curator.  The representations, I've been assured, that have

25  been made to the Court are based upon those discussions.

1    **THE COURT:**  Okay.

2    **MS. WIMBERLY:**  Your Honor, that leaves us, then, with

3    the 350 plaintiffs represented by Carey & Danis, who appear on

4    Exhibit A-1.  Your Honor, the motion and order were served on

5    Carey & Danis by FedEx.  That prompted a response first by

6    e-mail from Mr. Flynn, who is here today, and in which first he

7    implicated that there was one plaintiff as to whom there had

8    been some sort of name mixup but who had actually enrolled.  We

9    investigated that and determined that that was, in fact, the

10   case.  We have agreed to withdraw the motion as to Eddie

11   Duncan.

12        **MR. FLYNN:**  Eddie Duncan.

13        **THE COURT:**  Let that be withdrawn.

14        **MS. WIMBERLY:**  So that leaves us with 349 remaining

15   plaintiffs.  Upon receipt of the motion and order, Mr. Flynn

16   e-mailed me asking that we agree to simply dismiss these

17   without prejudice and we declined to do so.  That prompted

18   Mr. Flynn's opposition and our reply.

19            As far as we are concerned, the order was

20   issued.  We have received no reports or anything to indicate

21   compliance or intent to comply or anything other than that they

22   just want them without prejudice.  Your Honor, we don't think

23   that's sufficient.  Some of these cases have been pending for

24   more than four years.  We would ask that the Court dismiss them

25   with prejudice for failure to comply with Pretrial Order 28.

 1          **THE COURT:**  Mr. Flynn, do you have any comments?

 2          **MR. FLYNN:**  Yes.  I'm probably doing a "me too," what

 3    the PSC normally does to object, but I would say -- and with

 4    all respect to the Court -- all these plaintiffs probably want

 5    to proceed with their case.  What we did is we looked at their

 6    injuries, we rejected their cases, and we told them to get

 7    another counsel.  We haven't heard back from them.  We kind of

 8    cut them loose, so we just thought it would be good to try to

 9    get a dismissal without prejudice because it wasn't any fault

10    of theirs.

11          I did a simple opposition, looked at Rule 41(b),

12    and interpreted Fifth Circuit law that says:  Well, what fault

13    is there of the plaintiff?  All these plaintiffs timely met

14    everything that they could meet.  We just looked at their file,

15    it's a lot of blood clot cases, and we just determined we

16    didn't want to proceed.  We rejected them and we asked them to

17    get their own counsel, so we kind of cut them free.  We thought

18    we would just come down here and try to get a dismissal without

19    prejudice.

20          **MS. WIMBERLY:**  Your Honor, my only comment to that

21    would be -- I'm not certain what "rejecting" a plaintiff is,

22    but Carey & Danis is counsel of record in all of these cases.

23    If they had moved to withdraw in these cases, it might be a

24    different matter.  I guess, from what Mr. Flynn is saying, that

25    they didn't notify these plaintiffs of the motion and order.

1        **MR. FLYNN:**  Well, yes, we did.  In our reject letter,

2   we told them they needed counsel and that they are going to

3   have to get an expert report to go forward.  The only reason I

4   didn't do a motion to withdraw is I noticed in the past you

5   weren't granting motions to withdraw.  So as I was trying to

6   figure out what is the best way -- and, again, the reason why

7   I'm here to object is it's 350 cases.  There's a lot of

8   reasons.

9              It's hard to generalize over 350 cases, but we

10  kept a group of cases that we wanted to get expert reports on.

11  These fell in a group that we didn't.  I didn't file a motion

12  to withdraw because you were not granting them, but we did tell

13  them in the letter that they do have to get counsel and that

14  they do have to proceed or -- I did indicate that they are on

15  their own and dire things could happen, but just for their

16  behalf -- what's the harm in trying?

17       **THE COURT:**  I understand.  My view of it is I have

18  given counsel and I have given the claimants every opportunity.

19  These things I take seriously.  The cases have been going on

20  four years now.  I have had multiple opportunities to call to

21  their attention, to encourage them, to then order them.

22  Notwithstanding all of that notification, nothing has been

23  forthcoming, and it's really time.  I understand and I overrule

24  your strenuous objection and dismiss the cases with prejudice.

25       **MS. WIMBERLY:**  Thank you, Your Honor.  I will submit

1    proposed judgments to Nathan with the attachments this

2    afternoon.

3              **MR. FLYNN:**  Thank you, Your Honor.

4              **THE COURT:**  Thank you.  Does that complete the

5    matters?

6              **MS. WIMBERLY:**  Yes, Your Honor.

7              **THE COURT:**  It's not really 9:30 yet, so I better

8    take a five-minute break and then we will come back and talk

9    about the third-party claims and the consumer class action.

10             My thinking about the consumer cases, I've

11   spoken to the state judges, and they're two matters that are

12   being considered by state judges.  One is in New Jersey,

13   Judge Higbee, who has had argument before her nationwide class

14   certification of the consumer cases.  Judge Victoria Chaney in

15   California did not have oral argument yet but is scheduled for

16   oral argument.  I have been trying to coordinate my proceedings

17   with them.  We have been trying not to get in each other's way.

18             My thinking on those cases is I'm not really

19   going to focus on the consumer cases until I give the state

20   courts an opportunity to express themselves.  That's one of the

21   reasons I haven't focused thus far on the third-party claims

22   because I had a nationwide class certification out of

23   New Jersey.  I didn't think it was a good practice in the whole

24   litigation for the state judge and the federal judge to get at

25   odds on nationwide class certification, so I didn't act on it

1   until that was resolved.  Now it's been resolved by the

2   Supreme Court of New Jersey, so that is going to be before me

3   now.

4             The consumer matters, I am inclined to take the

5   same approach.  Since motions are teed up before them, I want

6   to give them an opportunity, but I understand from them that a

7   ruling one way or the other is going to be forthcoming soon.

8   It's not a question of delaying unduly.  I've been sensitive to

9   the cooperation that I have received, and I think they have

10  been sensitive to the cooperation that they have received.  In

11  view of that, that's what my plan is.

12            I will talk with you-all about the third-party

13  payor claims.  I understand you-all have made some headway on

14  the attorney general claims.  We don't need to talk about that

15  at this point.

16            Also, I want to take the opportunity to express

17  my appreciation of counsel.  You have had a lot of issues that

18  you have been able to resolve in these cases and some you have

19  not, but the fact that you have not been able to resolve them

20  doesn't mean that you haven't tried hard and that you haven't

21  resolved a lot of issues.  I do appreciate you working.  You

22  need to know that.  I'll take a five-minute break while we get

23  everybody on the phone.

24            **THE DEPUTY CLERK:**  Everyone rise.

25            (WHEREUPON the Court took a brief recess.)

1          **THE DEPUTY CLERK:**  Everyone rise.

2          **THE COURT:**  Be seated, please.  Let's talk about the

3    third-party payor claims.  I have two issues before me.

4    There's a dismissal of class actions pending.  As I say, that's

5    been filed since 2005 or thereabouts.  It's been pending.  I

6    haven't moved on it, as I mentioned earlier, because New Jersey

7    had already declared a nationwide class action on it.  I didn't

8    want to get in the position of federal versus state, so I

9    deferred on that and worked on the other aspect of the case.

10   The New Jersey Supreme Court has now overruled the district

11   court and there is no nationwide class action in the

12   third-party payor cases.

13          There's motions before me to dismiss it.  I have

14   heard argument on it.  I don't see where I need any additional

15   material on it.  There was some question as to whether or not I

16   need any additional argument on it.  I have my notes.  I have

17   the transcript.  I have heard it.

18          The other issue is the trial of the cases.  I've

19   had the benefit of reading the briefs that both of you-all have

20   submitted, which I appreciate.  I don't see any reason why I

21   can't do both of them at the same time.  I ought to be able to

22   focus on the class action and also go with the bellwether

23   cases.

24          I'm going to need some guidance from you-all,

25   suggestions as to the length of time you think that these cases

 1   would take.  I don't know the nature and extent of the

 2   discovery on the cases, but one way of handling it

 3   expeditiously is to give each side an opportunity to pick your

 4   ten cases, then do some very quick, maybe two-month discovery

 5   on those ten cases to cull out five that you want to go with.

 6              Out of those five, I'll give each of you two

 7   strikes, two vetoes, so that we will come up with each having

 8   three.  We'll flip a coin and we'll try that one.  If the coin

 9   comes up for the plaintiff, we will try a plaintiff case and a

10   defendant case, a plaintiff case and a defendant case, a

11   plaintiff case and a defendant case until we try the six cases.

12   That's really a way of doing it, as I see it, in this type

13   case, but I'll hear from the parties.

14              How long do you think it will take?

15         MR. BEISNER:  I'll consult with my compatriot,

16   Mr. Brody, on this.

17         THE COURT:  The last time we took two weeks to try

18   the personal injury cases.  Elizabeth, how do you see it?

19         MS. CABRASER:  Three weeks, Your Honor.  That seems

20   to be the consensus on plaintiffs' side.

21         THE COURT:  That's a long time.

22         THE DEPUTY CLERK:  Please put your appearance on the

23   record.

24         MR. BEISNER:  I'm sorry.  John Beisner for Merck.

25         MS. CABRASER:  Elizabeth Cabraser for the PSC.

1        **MR. BEISNER:**  Your Honor, I think it may be possible

2   to compress those.  I didn't want to ask you, but I assume you

3   are talking about an individual trial?

4        **THE COURT:**  Right.

5        **MR. BEISNER:**  I think, if we are talking about that,

6   in the two-week time frame.  I think the parties will need to

7   discipline themselves.  I think we approached the individual

8   personal injury cases probably thinking a longer period, but

9   with Your Honor's help keeping things on track, we were able to

10  do it more efficiently.

11       **THE COURT:**  As you-all know, the only way they can be

12  tried in a shorter period of time is if we get all of the

13  time-consuming aspects out.  I look at the exhibits before.  I

14  give you rulings on the exhibits.  At least you know what's

15  admissible, what's not admissible.  I look at all the

16  depositions first and rule on the objections.

17              A lot of the time-consuming aspects of a trial

18  I've tried to eliminate for you, so that we start at 8:30, we

19  go until 5:30, we have an hour or so for lunch, and a couple of

20  breaks in the morning and afternoon.  It's really all trial

21  time.  We have worked on Saturdays, so we have been able to

22  work them out.

23              I'll block out a three-week period, at least for

24  the first ones, and then we'll see how that works.  I really

25  would like to try at least one a month when we get started.  I

1    was really looking at maybe July, August, September, October,
2    November, December if that's doable for you.  You know better
3    than I.
4              **MS. CABRASER:**  July of 2009, Your Honor?
5              **THE COURT:**  Yes.
6              **MR. HERMAN:**  Judge, this is Russ Herman.  I have a
7    question.
8              **THE COURT:**  Yes.
9              **MR. HERMAN:**  It's not clear to me.  All of these
10   cases, have the parties elected jury trials?
11             **THE COURT:**  Well, we are talking third-party payor
12   cases.  I assume they have.
13             **MR. BEISNER:**  Yes.
14             **THE COURT:**  Elizabeth.
15             **MS. CABRASER:**  They have, Your Honor.  It might be
16   that, under certain state's laws, there is not a jury trial
17   right on the state statute that these claims would be brought
18   under, but we are not at that point yet.
19             **THE COURT:**  Okay.
20             **MS. CABRASER:**  We are assuming jury trials.
21             **THE COURT:**  Okay.  Yes.
22             **MR. BEISNER:**  Your Honor, on the dates, if I can make
23   a suggestion on this.  I think that when we actually got our
24   papers out on the table on a lot of these issues, as sometimes
25   is the case, with the benefit of writing, we had more areas of

1    agreement than disagreement, which is helpful.  I think your
2    suggestion about the selection process is useful.
3              As Your Honor has seen in the New Jersey
4    Supreme Court decision, there are a lot of variations in these
5    cases, so I think the parties talking together and going
6    through this sort of process that you are talking about, of
7    figuring out which cases are in which category and trying to
8    reach some selection process to figure out which ones we try at
9    what time, would be useful.  I think Your Honor is right.  We
10   probably need to know a little bit more about these cases.
11             **THE COURT:**  That's the thing that I think we have
12   learned from the personal injury cases.  When you initially
13   pick them, you think you know them, but when you get closer
14   into them you say, "My God, I didn't know that," and so you
15   want to then pull them back.  That's why I say we go at ten and
16   then do some quick discovery.
17             I would like open exchange of materials, maybe a
18   quick deposition or so; not eliminating any future discovery on
19   those, but the focus is to knock out five of them so that you
20   come up with five that you can live with and then go with
21   those.
22             **MR. BEISNER:**  What I was going to suggest,
23   Your Honor, is armed with that suggestion it might be good to
24   send us off to map out something, maybe come back to you with
25   what we hope is a stipulated order in a week.

1          **THE COURT:**  That's fine.

2          **MR. BEISNER:**  I think that we will need to think

3     through trial dates on this.  I think the experience in

4     New Jersey that we have had on discovery, where we have focused

5     on trying to get certain cases ready for trial, suggests that

6     July may be a little optimistic, but let's talk about that.  I

7     think we hear the suggestion and I think that's a useful

8     icebreaker to get us on track.

9          **THE COURT:**  Elizabeth, are you okay with that?

10          **MS. CABRASER:**  Yes, Your Honor.  I think the sequence

11    of identification of the plaintiffs, focusing expedited

12    discovery on those plaintiffs, and then setting out a trial

13    calendar makes a lot of sense.  We are going to have to move

14    quickly.  I think we can do it.

15              Under the conditions that you describe in terms

16    of the actual conduct of trial, I think trials in the two-,

17    three-week range are certainly doable.  I would think that the

18    second, third, etc., trials will be even more streamlined.  We

19    do need to make sure the dates work for everyone so that we can

20    put our trial team in the field in the courtroom.

21          **MR. BEISNER:**  Your Honor may have had discussions

22    with Judge Higbee about this.  She's been working pretty

23    intensively on this.  I think -- Steve, correct me if I'm

24    wrong -- that she is targeting an initial trial early fall in

25    New Jersey.

1     **THE COURT:**  I want to work around that.  We have been
2  trying to work with the state courts and they have been working
3  with the federal courts, which I appreciate, so I don't want to
4  step on their dates.  I really would defer to their dates
5  because they focused on it before I focused on it.

6     I really would like you-all to recognize that in
7  this type of procedure with bellwethers, you can't get all the
8  same kind of cases because that's not going to help you.  Now,
9  you know and I know there's a taffy pull there and a tug of war
10  where you want to get your best cases and sometimes your best
11  cases are all one kind of case, but that's not going to help
12  you.  You are going to waste a lot of resources and not get any
13  bang for that buck.

14     So you are going to have to push yourself and
15  push your colleagues into getting some representative group of
16  cases, get the ten, get down to five, and then we'll have two
17  strikes.  We will end up with three each and then we'll go with
18  it.  That's the way I think it can be done.

19     **MR. BEISNER:**  We will work toward that.

20     **THE COURT:**  How long do you want to meet?  Elizabeth,
21  how long do you and John need to meet before you get back to
22  me?

23     **MS. CABRASER:**  We can do this expeditiously.  What I
24  would like to do is confer more with counsel who are familiar
25  with Judge Higbee's calendar in New Jersey because my

1  understanding was, while she has not yet set the trial date,

2  she was going to very shortly set trial dates in New Jersey.

3  We would want to make absolutely sure that there is good

4  coordination between the courts and the counsel.

5            **THE COURT:**  That's right.

6            **MS. CABRASER:**  It may take more than a week or so to

7  find that out.

8            **THE COURT:**  Can you do it in two weeks, both of you?

9            **MR. BEISNER:**  That would be fine.

10           **THE COURT:**  Get back to me in two weeks, then.  You

11  can either do it in person or on the phone.

12           **MR. BEISNER:**  We'll do that, Your Honor.

13                Lenny makes a good point.  We do have the full

14  court proceeding status conference March 27.

15           **THE COURT:**  That will be fine.  Anything else?

16                Jim, do you have any problems with your AG

17  cases?

18           **MR. DUGAN:**  No, Your Honor.

19           **THE COURT:**  Make your appearance, please.

20           **MR. DUGAN:**  Good morning, Your Honor.  James Dugan on

21  behalf of the Louisiana Attorney General and Blue Cross/Blue

22  Shield of Louisiana.  I would like to recognize Mr. Brian

23  McMinns (phonetic) and Mr. Chris Styronne (phonetic) with the

24  Louisiana Attorney General's Office.  They are here, obviously,

25  in support of the case.  The Attorney General has given his

 1   authority to proceed forward as a bellwether representative.

 2            As Your Honor was saying, just a couple

 3   comments.  I think there are three types of cases which have

 4   common issues.  You're going to have the private health

 5   insurer, which Blue Cross/Blue Shield of Louisiana is an

 6   example of that type.  You are going to have a smaller

 7   Taft-Hartley fund, which is a small health and welfare fund

 8   that may be self-funded.  For example, that would be the

 9   Sergeants Benevolent fund, whose fund takes care of the health

10   benefits for the retired sergeants in New York.  That's just an

11   example of that type.  Then the third type would be the state

12   attorneys general.  Those are the three types of cases.  If we

13   can get representatives of those three types of cases, I think

14   that will work things out.

15            Yes, the parties have been working very well

16   together, Your Honor.  I know Your Honor is probably tired of

17   seeing me up here.  We are ready, willing, and able and look

18   forward to trying cases in your court, Your Honor.

19            **THE COURT:**  Good.  Fine.  I appreciate all the work

20   you have done on this matter.

21            Dawn, do you have anything?

22            **MS. BARRIOS:**  No, Your Honor.  Thank you.

23            **MS. CABRASER:**  Your Honor, we have, indeed, been

24   working to merge or converge what had been somewhat separate

25   procedural discussions with respect to the private payors and

1   the governmental entity payers such that we think, as Mr. Dugan

2   suggested, that all varieties of third-party payors will be in

3   this bellwether queue in various slots.  We would anticipate at

4   this point that it would most likely be private payors up

5   first, just given the sequence of events, but I don't think

6   Your Honor needs to worry about two entirely separate

7   procedures going on.  We have been working toward putting those

8   together.

9           THE COURT:  Okay.

10          MR. BEISNER:  To be clear on that, Your Honor, I want

11  to make sure we have the right understanding on that.  I think,

12  when we have talked about the private third-party payor cases

13  and the ones we will be selecting the ten from, it is a mix, am

14  I not right, of the Taft-Hartley groups that you're talking

15  about --

16          MR. MARVIN:  Yes.

17          MR. BEISNER:  -- and the private insurance companies?

18  So those are together under that umbrella, and then we have the

19  governmental entities.  We are looking at everything that's

20  left there in those categories.

21          THE COURT:  Anything else that we need to deal with?

22  Anything from anybody?  Thank you very much.

23          THE DEPUTY CLERK:  Everyone rise.

24          (WHEREUPON the Court was in recess.)

25                          *  *  *

1                            **<u>CERTIFICATE</u>**

2              I, Toni Doyle Tusa, CCR, FCRR, Official Court

3    Reporter for the United States District Court, Eastern District

4    of Louisiana, do hereby certify that the foregoing is a true

5    and correct transcript, to the best of my ability and

6    understanding, from the record of the proceedings in the

7    above-entitled and numbered matter.

8

9

10                                    s/ Toni Doyle Tusa
                                    Toni Doyle Tusa, CCR, FCRR
11                                    Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25