1              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
2    *****************************************************************

3
     IN RE:  VIOXX PRODUCTS              MDL No. 1657
4    LIABILITY LITIGATION               Section: "L"
                                        New Orleans, Louisiana
5                                       Thursday, September 11, 2008

6
     *****************************************************************
7

8                 TRANSCRIPT OF MOTION PROCEEDINGS
           HEARD BEFORE THE HONORABLE ELDON E. FALLON
9                 UNITED STATES DISTRICT JUDGE

10

11   APPEARANCES:

12   FOR THE PLAINTIFFS
     LIAISON COMMITTEE:                 HERMAN, HERMAN, KATZ & COTLAR
13                                      BY:  LEONARD A. DAVIS, ESQ.
                                        820 O'Keefe Avenue
14                                      New Orleans, LA 70113

15

16
     FOR INDIVIDUAL PLAINTIFFS:         JOSEPH C. BLANKS, P.C.
17                                      BY:  JOSEPH C. BLANKS, ESQ.
                                        P. O. Box 999
18                                      Doucette, TX 75942-0999

19

20                                      WOOD LAW FIRM
                                        BY:  E. KIRK WOOD, ESQ.
21                                      2900 1st Avenue South, Suite A
                                        Birmingham, AL 35238-2434
22

23                                      AARON M. LEVINE, ESQ.
                                        Sunderland Place
24                                      1320 Nineteenth Street
                                        Washington, D.C. 20036
25                                          (BY TELEPHONE)

```
 1
     FOR THE DEFENDANTS
 2   LIAISON COMMITTEE:                STONE, PIGMAN, WALTHER, WITTMANN
                                       BY:  DOROTHY WIMBERLY, ESQ.
 3                                     546 Carondelet Street
                                       New Orleans, LA 70130
 4

 5                                     O'MELVENY & MYERS
                                       BY:  KARL THOMPSON, ESQ.
 6                                     1625 Eye Street, N.W.
                                       Washington, D.C. 20006
 7
                                       HUGHES HUBBARD & REED, LLP
 8                                     BY:  STEVEN S. DICESARE, ESQ.
                                            CHARLES COHEN, ESQ.
 9                                     One Battery Park Plaza
                                       New York, NY 10004-1482
10

11

12

13

14   Official Court Reporter:         Karen A. Ibos, CCR, RPR, CRR
                                       500 Poydras Street, Room HB-406
15                                     New Orleans, Louisiana 70130
                                       (504) 589-7776
16

17

18      Proceedings recorded by mechanical stenography, transcript
     produced by computer.
19

20

21

22

23

24

25
```

<u>P R O C E E D I N G S</u>

(THURSDAY, SEPTEMBER 11, 2008)

(MOTION PROCEEDINGS)


THE COURT:  Be seated, please.  Good morning, ladies and gentlemen.  I understand we have someone on the phone also. Counsel make their appearance -- let's call the case first.

MR. LEVINE:  This is Aaron Levine in Washington, counsel for Fennema.  Thank you, your Honor, for allowing me to appear this way.

THE COURT:  All right.

MS. WIMBERLY:  Good morning, your Honor.  Dorothy Wimberly representing Merck.  We're here this morning, your Honor, on two motions filed by Merck.  The first of which was Merck's motion for entry of an order to show cause why certain cases should not be dismissed under the doctrine of forum non conveniens.  That motion was filed in mid May and sought to dismiss the remaining cases filed by foreign plaintiffs who did not have sufficient ties to the United States such that they simply should not be permitted to proceed here.

We started out with a fairly large number of cases on that motion, and it was originally brought on for hearing on July 17th at the status conference.  At that time your Honor dismissed, following a brief argument, certain cases, and we had provided a chart of those cases to your clerk.  You also dismissed another

 1    case to which you indicated you wanted to write an opinion.  We

 2    agreed to dismiss by stipulation certain of Mr. Levine's cases, all

 3    but the one that he is on the phone about today.  And then there

 4    were a fairly large number of cases remaining that we agreed to

 5    defer to try to work out a number of them, which we've successfully

 6    done.

 7          We also have on the docket our rule to dismiss for failure

 8    to register.

 9          Unless your Honor prefers otherwise, we would like to go

10    ahead and take them in the order that I've just indicated, the

11    forum non conveniens first

12                THE COURT:  Right.  Mr. Levine is in the first motion?

13                MS. WIMBERLY:  That's correct.

14                THE COURT:  So let's take that one first and he is on the

15    phone.

16                MS. WIMBERLY:  Your Honor, Carl Thompson from O'Melveny &

17    Myers is going to be addressing the forum non conveniens issues.

18                THE COURT:  All right.  Mr. Levine, can you hear

19    everything?

20                MR. LEVINE:  Yes, sir.

21                THE COURT:  Okay.  All right.

22                MR. THOMPSON:  Good morning, your Honor, Carl Thompson.

23    As Ms. Wimberly said, there were a number of cases put over after

24    the last status conference, I think they fall into four groups:

25    There is a group of UK plaintiffs represented by the Blanks firm,

1    and Mr. Blanks, I believe, is here; the second group of plaintiffs

2    as to whom we are going to voluntarily withdraw the motion; the

3    third is a group of the Dominican plaintiffs represented by the

4    Lamb firm; and then the last is everyone else who is on the list.

5              THE COURT:  All right.

6              MR. THOMPSON:  I think that Mr. Blanks has a plane to

7    catch, so maybe if we do his first.

8              THE COURT:  Okay.

9              MR. THOMPSON:  As you know, the Blanks firm filed a

10   response to this court's show cause order and saying that the UK

11   plaintiffs' cases shouldn't be dismissed, or in the alternative

12   that they be dismissed with special conditions.  We think the

13   claims should be dismissed with the same conditions your Honor has

14   previously imposed on dismissal.  You have our papers, I'll just

15   briefly hit the arguments.

16        They have two arguments against dismissal:  The first is

17   that the UK is an adequate forum because it doesn't provide a cause

18   of action for loss of consortium for the spouse of a surviving

19   plaintiff.  Numerous courts have held that the UK is an adequate

20   forum, including Judge Higbee in the appellate division in New

21   Jersey in the Vioxx cases, and they specifically addressed this

22   loss of consortium argument and rejected it as a basis for finding

23   the UK inadequate.  So that argument we think is squarely

24   foreclosed by precedent.

25        Second, the plaintiffs claim that forum non conveniens

1    dismissal would be inappropriate because relevant sources of proof

2    are in the United States, but your Honor has essentially already

3    ruled on this claim, these plaintiffs are situated in exactly the

4    same position with respect to the location of documents as the

5    Italian and French plaintiffs as to whom your Honor previously

6    entered an order.

7         Then there's plaintiff's argument that their cases should be

8    dismissed with a new set of conditions, which go beyond those that

9    your Honor has imposed and include things like a jury trial in the

10   UK.

11        And as we explain in our brief, we think that imposing these

12   conditions would be inappropriate for two reasons:  First, as your

13   Honor knows, you've already entered an appropriate and completely

14   sufficient set of conditions.  Judge Higbee in dismissing the UK

15   plaintiffs in New Jersey was careful to impose exactly the same set

16   of conditions.  Every single subsequent dismissal of foreign

17   plaintiffs in this litigation and in New Jersey has been pursuant

18   to the same conditions, so at end of the line as ordered to impose

19   a new and highly favorable set of conditions on this particular

20   group of plaintiffs we submit would be unfair to the rest of the

21   people who have already been dismissed.

22        And then second, even if the court were writing on a clean

23   slate, this particular set of conditions, jury trial, particular

24   kinds of testimony available in the UK, particular kind of

25   discovery, we submit would violate international comity.  The UK's

1  restriction on jury trial on the kind of testimony that can be

2  introduced at trial and discovery reflect considered policy

3  decisions that the UK has made and U.S. courts should respect those

4  policy decisions.

5          THE COURT:  All right.  Thank you very much.  Let me hear

6  from counsel.

7          MR. BLANKS:  Good morning, your Honor, Joseph Blanks for a

8  group of plaintiffs from the UK.

9       Well, first, we certainly don't abandon our argument that

10  the spouses of living Vioxx users have no right of action in the

11  UK.  And under the authority that Nemariam case against the

12  Republic of Ethiopia, the lack of a remedy renders the foreign

13  forum inadequate.  And as to these --

14          THE COURT:  Is that really a lack of a remedy or just

15  different damage aspects to it?  I mean, I can understand if you

16  can't file a lawsuit because there's no opportunity or no forum of

17  something of that nature, but because a forum gives different or

18  recognizes different damage elements, is that a lack of a remedy as

19  you see it?

20          MR. BLANKS:  Well, it certainly is for these spouses.

21  There is no question that the user of the drug can file a personal

22  injury action but the spouse has no relief.

23          THE COURT:  Okay.

24          MR. BLANKS:  And where as she does certainly under any of

25  the relevant U.S. law.

1        THE COURT:  How do you deal with Judge Higbee's ruling?

2        MR. BLANKS:  I think the question with Judge Higbee how

3   did you deal with this just by calling it derivative.  I guess you

4   could say the same thing for wrongful death beneficiaries, they're

5   derivative.  And so what?  I mean, these people have no remedy in

6   the UK period.  Maybe the court might say, well, that's a decision

7   they made in the UK and so be it.  Shouldn't get to go shopping

8   over here and find a better deal.  But this is problem number one.

9   Of course it doesn't affect all of the cases, it just affects maybe

10  the majority of them.

11       The more troublesome problems, your Honor, the fact that

12  because this is not the typical forum non conveniens dismissal

13  situation of which I've been party to far too many over the last

14  20 years, usually in the maritime context, go off to Singapore or

15  Nigeria or wherever because that's where all of the witnesses are,

16  that's where everything happened, etc.  This is the reverse of

17  that.  We're leaving the jurisdiction or would be forced to leave

18  the jurisdiction where virtually all of the liability witnesses are

19  to be found and all of the liability documents are to be found, to

20  go back to a country where these things exist not.  I mean, clearly

21  there are witness in the UK that would be critical for a case where

22  we could be trying it here in your courtroom.  We would need to

23  bring forward our doctors and evidence of the prescriptions and

24  damage testimony and that's true and that would be our burden were

25  we here.

1          But when we get sent to the UK, we can't make Merck bring

2     its former employees, its annuitants, its consultants, any of the

3     people that have given testimony in the cases that have been tried,

4     many of whom would be critical to putting on our liability case.

5     And absent conditions of the sort that have been approved by other

6     federal courts, circuit courts affirm, to allow us a chance to do

7     that, then it's essentially a non-starter.

8          THE COURT:  But you have people in the UK who took the

9     drug in the UK, bought it from pharmacies in the UK, prescribed by

10    doctors in the UK.

11         MR. BLANKS:  Of course that's true, your Honor.

12         THE COURT:  Okay.

13         MR. BLANKS:  That's true.  But we have extremely limited

14    ability to compel testimony from here.

15         THE COURT:  Of course you know that there's extensive

16    testimony from the Plaintiffs Committee who have done yeomen work

17    on preparing a trial package that they have been giving to or

18    making available to individuals, even in this country who need to

19    try the case.

20         MR. BLANKS:  Yes, your Honor, I am mindful of that and was

21    looking forward to that, but our problem is that would be very

22    useful here, it's useful as a road map in the UK, but it's not

23    material that can be taken and admitted into court because for the

24    most part almost exclusively they require live testimony in the

25    courtroom.  To the extent we can go get testimony abroad under the

1    Haig Convention with the commission procedure, we have a

2    make-believe extension of the UK court into New Jersey, for

3    example, with the commissioner sitting there as though he were the

4    judge from Scotland and a team of solicitors and counselors and so

5    on to obtain testimony having to go through the hoops to compel

6    that.  But otherwise, the use of depositions is just simply not

7    recognized.

8         And that wheel, of course, has already been invented here

9    and it's extremely wasteful to reinvent it.  I think the court has

10   the authority legally to require Merck to agree to the use of all

11   of this prior discovery just as it has the authority to require

12   Merck to cooperate in producing its witnesses.  I think the court

13   has the authority to require Merck to agree to a jury trial in the

14   UK.

15        It's my belief that they've demanded jury trials in this

16   court.  They should be happy with a jury trial there as well as

17   here.  So far they've done very well with their jury trials with

18   their win ratio being superior to that of the plaintiffs, I

19   believe.

20        The other problem is obtaining documents that again exist

21   here in the U.S. and are not likely to be found in the UK.  And

22   those are conditions that would need to be added as well, your

23   Honor.

24        So I think because this is a reverse forum non conveniens

25   dismissal that moves the plaintiffs away from where the bulk of the

1    proof is that these additional conditions should be imposed.  And

2    the fact that others didn't request them earlier should not be a

3    handicap to my clients.  It may well be that the other claimants

4    that have been dismissed, both by Judge Higbee and this court,

5    never intended to refile in their foreign jurisdictions anyway.  So

6    far in the UK we've only been able to find two cases that have been

7    filed.  I am not saying there aren't more but that's all we have

8    been able to locate out of the hundreds that have been sent back.

9    And it's the practical reasons of the cost of obtaining proof and

10   presenting the evidence there that make that a problem.  It's not a

11   theoretical problem, it's a real problem, a practical problem.

12          So we would ask your Honor that the court not dismiss these

13   claimants' forum non conveniens, certainly that the court not

14   dismiss the claims where a spouse has a consortium claim; and that

15   if the court determines to be done with us, then to please impose

16   conditions as set forth in my papers that would give us a fair shot

17   at putting on our case in the UK.

18          THE COURT:  All right.  Thank you.  Talk to me about the

19   use of prior discovery and the documents that he wishes to have.

20          MR. THOMPSON:  Yes, your Honor.

21          THE COURT:  Why should he be preempted from using the

22   package of the plaintiffs?

23          MR. THOMPSON:  We think that that's an issue -- it's an

24   issue of foreign law for the foreign court to decide.  So there is

25   this package but the foreign court has its own reasons for

1    controlling what kinds of documents should either be made available

2    in discovery, certainly introduced at trial, and they have

3    considered policy decisions about concerns about the scope of civil

4    discovery, that kind of thing.  We have one system in the United

5    States that we're comfortable with and use, and other countries

6    have different systems.

7          So, as your Honor said, Merck is subject to the jurisdiction

8    of the UK courts, so whatever the UK court orders it to do, it will

9    be required to do because it's under that court's jurisdiction.

10          THE COURT:  All right.  Okay.  Anything from the PSC?

11          MR. DAVIS:  Your Honor, Leonard Davis representing the

12    PSC.  I've heard the comments of counsel and I just want to bring

13    to the court's attention, not to throw an issue involved, but if my

14    memory is correct and off the top of my head, I believe that the

15    existing orders of the court limit the use of the trial package to

16    certain claimants and there are also confidential orders that are

17    in place.  And I just raise that issue with respect to that trial

18    package.

19          The PSC has not fully evaluated all of these issues, quite

20    frankly, and we certainly can if the court wants us to do that.

21    But there are issues that are out there with respect to

22    confidentiality that we are very mindful of.

23          THE COURT:  All right.  Anything else?

24          MR. THOMPSON:  No, your Honor.

25          MR. BLANKS:  Your Honor, just quickly.  And I realize this

1   is probably ultimately a problem for Judge Higbee.  But in the one

2   case that we have currently in Edinburgh, the cooperation that

3   Merck has provided is again nonexistent because the terms of the

4   dismissal order are so limited and loose.  But, for example,

5   requests to agree to make witnesses available for precognitions and

6   to agree to the use of foreign documents have just been delayed and

7   postponed and said to be premature and so on in a case that's on

8   fairly fast track for trial.  So I am expecting that we will

9   continue to have difficulties absent more specific conditions that

10  will let us use proof.

11      I didn't want to represent to you, Judge, that documents

12  from here are totally not going to be admissible there.  If we have

13  the documents and can put them in front of the court and say this

14  is Merck's document or this is an FDA document, then probably those

15  would be admitted if they're relevant.

16      THE COURT:  How about the depositions, the trial package,

17  if you put that --

18      MR. BLANKS:  Judge, it is my belief and understanding

19  based on the affidavits of my solicitor and of Merck's esteemed

20  solicitor that they used in New Jersey to support their motions

21  that depositions from the trial package are not going to be

22  admissible absent some special agreement between the parties and

23  the approval of the court.  But I think it will still take the

24  approval of the court.

25      Depositions could be taken in England, for example, of a

1    dying man on court order as would be the case here.  That I think

2    would be admitted in court as testimony.  Deposition perhaps of a

3    seaman who is about to leave the jurisdiction on court order could

4    be obtained for use in a trial.

5          But the type of depositions that have been taken in this

6    case I think are not ordinarily going to be admissible at all

7    because they don't use them, it's a foreign process totally.  They

8    don't have anything that comes close to it really.

9          THE COURT:  Okay.  All right.  Let me look it over again.

10   And I've spoken pretty specifically on this in my other opinion and

11   I don't see dealing with it again from the standpoint of forum non

12   conveniens, but I do want to look at this issue of documents and

13   witnesses and prior discovery to see whether or not I have any

14   authority to do that.  I don't see that I have an authority to

15   mandate that a jury trial be held.  I think that's something that

16   the foreign country has a right to impose or not impose or allow or

17   not allow.  I don't think that affects a remedy.  But I do want to

18   look a little more closely at the question of discovery.

19         Let me hear the other --

20         THE DEPUTY CLERK:  Judge, are we going to hang up with

21   Mr. Levine?

22         THE COURT:  No, Mr. Levine, is on now.  Mr. Levine, your

23   motion is up next, sir.

24         MR. LEVINE:  Shall I speak to it, your Honor?

25         THE COURT:  Let Merck speak to it because it's their

```
 1    motion, but I am mentioning it so that you can be heads-up to their

 2    comments now are addressed to you.

 3                MR. THOMPSON:  May I address one thing that Mr. Blanks

 4    said about that just very quickly?

 5                THE COURT:  Okay.  Yes.

 6                MR. THOMPSON:  My understanding of the Scottish

 7    proceedings that it's in very early stages and there hasn't

 8    actually been anything ordered yet for production.

 9          And I would also with respect to the document condition, in

10    addition to the arguments we put forward in our papers.  The kind

11    of practical incentive it would create would be for all foreign

12    plaintiffs to file here just so they could get these dismissal

13    conditions that would then amplify the discovery in the foreign

14    forum.

15                THE COURT:  I see.

16                MR. THOMPSON:  So we said there was a second group of

17    additional plaintiffs as to whom we're withdrawing the motion

18    today.  Those are five different plaintiffs.  I guess we'll send a

19    list of them after the hearing as to whom we're dismissing.  I can

20    read the names.

21                THE COURT:  These are the ones that are not dismissed or

22    are?

23                MR. THOMPSON:  Pardon me.  We're withdrawing our motion as

24    to these five.

25                THE COURT:  Withdrawing your motion, okay.
```

```
 1          MR. THOMPSON:  Correct.  So that's Manuel Gutierrez;

 2   Mariluz Gutierrez, which is No. 66997; Margarita Camacho, No.

 3   66997; Francisco Infante Pena, which is 066999; Filomena

 4   Leguisamon, 066999; and Maria Pion Baez, which is 066999.

 5          THE COURT:  Give that to us so that we can make sure that

 6   the spelling is correct.

 7          MS. WIMBERLY:  Your Honor, my assistant is actually filing

 8   that, the ECF this morning, so it will be of record.

 9          THE COURT:  That's fine.  Okay.

10          MR. THOMPSON:  The third group is a group of Dominican

11   plaintiffs represented by the Lamb firm.  We've consulted with the

12   firm and I think that they will agree to dismiss all but two of

13   these plaintiffs pending your Honor's ruling on the adequacy of the

14   Dominican Republic as an alternate forum, that was an issue that's

15   addressed in the papers prior to the prior status conference.  We

16   believe the forum is adequate and you have our arguments.

17          So if your Honor agrees with us, they would agree to dismiss

18   all but two of those.

19          Their remaining two we believe should be dismissed.  We

20   think that there is no evidence in the record that shows sufficient

21   connections with the United States that would change the analysis

22   and your Honor's prior forum non conveniens order.

23          THE COURT:  And that's Mr. Levine's clients?

24          MR. THOMPSON:  This is still two of the Lamb firm's

25   clients.
```

1           THE COURT:  Okay.

2           MR. THOMPSON:  De La Rosa and Ramos Rodriguez.

3           THE COURT:  All right.

4           MR. THOMPSON:  The fourth group is the rest of the

5   plaintiffs, which would include Mr. Levine's claims.

6           THE COURT:  Okay.

7           MR. THOMPSON:  And, again, we've looked over the records

8   since the last hearing.  This is a small number of plaintiffs, and

9   consulted with the plaintiffs attorneys, and again we think that

10  there is nothing in the record at this point.  A couple of months

11  after the prior hearing and several years after the drug was

12  withdrawn, they don't have any material connection to the U.S. that

13  we think would change the analysis in your Honor's prior ruling.

14          THE COURT:  Where are they from?

15          MR. THOMPSON:  Most of them are from Canada, I believe,

16  your Honor, yes.  And there's one from the Netherlands, which I

17  think is Mr. Levine's client.

18          THE COURT:  I see.  All right.  Mr. Levine, you have a

19  claimant from the Netherlands?

20          MR. LEVINE:  Yes, sir.  We had six others and we

21  voluntarily dismissed them.  Mr. Fennema we believe is a unique,

22  one of a kind class by himself in that he is a citizen of the

23  world.  He lives on oil rigs.  As of the moment he is being plucked

24  off of one because of your climate down there.

25          THE COURT:  He is a man without a country.

1       MR. LEVINE:  He was examined by doctors in America, he

2   took the pill while he was in America, he works on oil rigs.  He is

3   a citizen without, in reality, a residence - although he is a Dutch

4   citizen.  And he bought the drug in Holland and the prescription

5   was made in Holland.

6       But I think or I would ask the court to consider the

7   uniqueness of this case.  This is a man working for Shell and the

8   other oil companies off Houston, California, and that's where he

9   suffered his paralysis and his memory problems, his imbalance and

10  the other struggles from the drug.  So I think his ties to America

11  are as substantial as most American claimants, so I ask the court

12  in this single case to have exception to the rules.  That's all I

13  have to say.

14      THE COURT:  Okay.  Any response?

15      MR. THOMPSON:  Just briefly, your Honor.  The plaintiff's

16  forms and the medical records support injury and residency in the

17  Netherlands in general, I mean legal residency, and as Mr. Levine

18  said, he was prescribed the drug there and there is no evidence of

19  substantial U.S. connection of the kind that would alter your

20  Honor's analysis.

21      THE COURT:  The problem with this type of case is that

22  you're dealing with a drug and dealing with a prescription drug,

23  and so it's where the person took it, where his residence is, where

24  the doctor is who prescribed it, what restrictions are imposed on

25  those prescribers that to me was a very significant part of the

```
 1   analysis, because in some places it's an intervening cause, in some
 2   places it's comparative negligence and various other legal regimes
 3   come into play.  And that was the reason that to me the Italian
 4   cases and the other cases that I dealt with seemed to be best
 5   handled in their forum as opposed to other forums.  But I have your
 6   documents and I'll look them over and make a decision on them.
 7        Okay.  Thank you, Mr. Levine, for participating.
 8        MR. LEVINE:  Thank you, sir.
 9        MR. THOMPSON:  Thank you, your Honor.
10        THE COURT:  All right.
11        MR. WOOD:  Your Honor, I am Kirk Wood for the Lamb firm on
12   behalf of various plaintiffs.
13        THE COURT:  The second and third group?
14        MR. WOOD:  Yes, sir.
15        THE COURT:  Okay.
16        MR. WOOD:  And we've reached agreement almost down the
17   road on everything.  We do have two that we do disagree on that
18   have relationships or contacts with United States relative to their
19   either medical care or their prescription, and there is an issue
20   that we couldn't come to terms on those.  My position was the gates
21   committee will probably sort that out as we work to get other
22   documents.  But those two still might.
23        THE COURT:  What do we do with those two, what's your
24   recommendation?
25        MR. WOOD:  I would like to see them stay in and go forward
```

```
 1    with the gates committee with us having the settlement time, the
 2    document time to get remaining documents that we hope to obtain.
 3              THE COURT:  How do you all see it?
 4              MR. THOMPSON:  With respect to the forum non conveniens
 5    analysis, we think neither of them has the kind of documents in the
 6    record now that would alter your Honor's analysis.
 7              And with respect to the gates commission, I don't think
 8    there is any reason to send them there just to have them come back
 9    here.  There's been a lot of time to produce documents to come
10    forward with records, I mean, that's a separate issue.  They
11    certainly satisfy their requirements for forum non conveniens
12    dismissal, and there would also be an incentive to just to file
13    with the commission to delay disposition of the cases.
14              THE COURT:  I don't want to just hold them in limbo
15    forever.  I don't have any problem holding them or not ruling on
16    them for a period of time, but I don't think it's fair to the
17    defendants just to hold them and not deal with them.
18              MR. WOOD:  I agree, your Honor.  And our position would be
19    if the documents we seek are not readily available within the next
20    short period of time, we would dismiss those two on our own
21    volition.
22              THE COURT:  I'll withhold ruling on it for 30 days, these
23    two, and then I'll deal with them, give them an opportunity to deal
24    with that.
25              MR. WOOD:  Thank you, your Honor.  And as to the others we
```

```
1    stand on our papers.

2              THE COURT:  Okay.  Fine.  You have the two that he is

3    concerned with?

4              MR. THOMPSON:  Yes.

5              MR. WOOD:  Yes.  Thank you, your Honor.

6              THE COURT:  All right.

7              MS. WIMBERLY:  And, your Honor, following the hearing we

8    will be happy to mail or e-mail to your clerk updated charts that

9    have all of the plaintiffs on the forum non conveniens rule divided

10   into these categories so that it will be easier.

11             THE COURT:  And isolate those two that we just talked

12   about.

13             MS. WIMBERLY:  Certainly, your Honor.  All right.  Your

14   Honor, that brings us to the next motion that was up for today, and

15   that was Merck's motion for entry of an order to show cause why

16   cases or certain plaintiffs claims should not be dismissed for

17   failure to comply with Pretrial Order #31.

18             THE COURT:  Anyone opposing that motion?

19             MR. DAVIS:  Your Honor, just so the record is clear, as

20   the PSC has done with all other motions to dismiss, the PSC opposes

21   any motions to dismiss and is here to protect and to assert

22   whatever rights it can on behalf of various claimants in the

23   litigation.

24             THE COURT:  Right.  Okay.  Thank you.

25             MS. WIMBERLY:  All right.  Your Honor, just a brief review
```

1    of the procedural background of this particular motion.  The

2    original motion was filed on May 30th of this year.  That motion

3    was served to the LexisNexis File & Serve in the main case so that

4    it went to all registered plaintiffs counsel in the Vioxx MDL.  It

5    was also served in the individual cases.  And at that time it

6    effected approximately or named approximately 600 plaintiffs.

7         On June 18th of this year Merck filed an amended and

8    superseding motion.  Again, that motion was filed in both the main

9    case and in each of the individual case numbers of the affected

10   plaintiffs.

11        Your Honor signed an order which was entered of record on

12   June 30th and uploaded by our office to LexisNexis File & Serve on

13   July 1st.  It was again uploaded in the main case so that every

14   single registered LexisNexis File & Serve user received it, and it

15   was also uploaded in each of the individual affected cases.

16        Additionally, our office sent by certified mail copies of

17   the order to show cause which set the original briefing deadlines

18   for plaintiffs, as well as an original hearing date of July 17th to

19   all plaintiffs counsel who were, who had plaintiffs involved in the

20   rule.

21        On July 17th, we agreed to defer that motion because of a

22   number of other matters and some concerns that were voiced by PLC

23   that wanted to make certain that the right counsel, in fact, got

24   the rule.  In the interim we had filed a withdrawal of the rule as

25   to approximately 60 plaintiffs who were mistakenly included, they

1    were pro se plaintiffs and this rule was not intended to effect in

2    any way any pro se plaintiffs at this time.  We wanted to strictly

3    deal with represented plaintiffs.

4          Since the filing of the amended and superseding rule and the

5    service of the original show cause order on July 1st, we have filed

6    five additional withdrawals.  The most recent of which, the fourth

7    withdrawal was filed yesterday and the fifth withdrawal is being

8    filed while we're here this morning.  We have narrowed down the

9    list of plaintiffs initially involved in this from approximately

10   600 to approximately 250.  We have worked diligently to try to

11   contact and make certain that all of these plaintiffs' counsel and

12   their clients have received due process and proper notice.

13         In addition to all of the methods of service that I

14   mentioned previously, the court should also know that during the

15   time period March to May of this year Hughes, Hubbard & Reed, one

16   of Merck's other counsel, sent individual letters to all of the

17   counsel saying we note that you have cases, you haven't registered

18   them.  Please be advised that if you don't register them, we're

19   going to move to dismiss for failure to comply.  I have with me

20   this morning, your Honor, and because it is massive, those records,

21   the copies of the notice letters and the confirmations of receipt

22   we've put on a disc, which I would like to submit in globo as an

23   exhibit.  As well as copies of all of the LexisNexis File & Serve

24   receipts showing service of the various motions and the orders and

25   the orders setting the hearing.

1        And, your Honor, I also neglected to mention that initially

2   the motion was continued to the August status conference.  We

3   agreed at that time to move it to a special hearing, and on August

4   the 22nd your Honor entered an order setting it for hearing on

5   September the 3rd.  That order was served in the same manner as

6   every other order on LexisNexis File & Serve, in the main case and

7   in the individual cases.  And then again, unfortunately with the

8   approach of Hurricane Gustov, it was continued to this date.  And

9   again that order of the court was served in the same manner.

10       So we believe that over the course of the last six months

11  reaching back to March that all of the plaintiffs' counsel and

12  plaintiffs have received more than adequate notice and that those

13  counsel who have not stepped forward simply have no interest in

14  doing so.  And while that may be the easiest way for them when they

15  have a plaintiff who doesn't want to move forward, it would have

16  been easier for us if they had said, look, my client doesn't want

17  to proceed with the case and we would have entered stipulations of

18  dismissal.

19       In addition to all of the proofs of service and the notice

20  letters which we will be submitting into the record, I feel like

21  the best way to handle this, your Honor, will be to go quickly over

22  the exhibits.  And it's probably going to be easier to tell you

23  what's left on Exhibit 2 and what's not left on Exhibit 1.

24       On Exhibit 2, those were the non-registrants who actually

25  responded in some fashion to this show cause order.  They either

1  filed an official response with the court, e-mailed me, called me.

2  We took any form of response and worked with them.

3      At this point in time we have reached agreement and have

4  withdrawn our rule as to all but a very few of the persons on

5  Exhibit 2.  And we will actually later today be filing yet a sixth

6  withdrawal of the rule.  We reached agreement this morning with

7  Mr. Wood on 16 of his remaining 18 and agreed to defer as to two.

8  So that will represent and take care of all of those plaintiffs on

9  Exhibit 2.

10      But to just go over these quickly.  On Exhibit 2 we have

11  reached an agreement to withdraw as to all but the following:

12  Irene Brusilovsky, who is a plaintiff in the Celia Bucio case,

13  07-374.  This was a case filed by the Ribbeck Law Chartered firm.

14  The contact that we had with this firm was a telephone call in

15  response to reaching out by our office after the last status

16  conference.  I received a call from John Vick with the firm, he

17  told me that they intended to register all of the plaintiffs.  And

18  they had a number of plaintiffs all in this same case.

19      Registration has not been forthcoming, we told them that was

20  fine as long as you did so prior to the hearing.  We hadn't

21  received anything.  Again yesterday, I tried to call them, I left a

22  message, we received nothing.

23      So we ask that the court dismiss all of the Ribbeck Law

24  Chartered plaintiffs, they are all in the Celia Bucio case.

25      In addition to Irene Brusilovsky, also a plaintiff in that

```
 1    case, is Celia Bucio, Armando Carrizal, Ana Costas, Yakob

 2    Farlandskiy, Hector Garcia, Maria Guiterrez, Silvestre Lagunas,

 3    Galo Maldonado, Javier Mendoza, Timoteo Perez, Moises Reyes, Maria

 4    Rico.  And that takes care of the Ribbeck Law Chartered cases.

 5         And again, your Honor, we'll provide the court with a chart

 6    isolating all of these names that we're requesting dismissal on.

 7         THE COURT:  And just for the record, I will dismiss those

 8    cases.  I find that enough due process has been given to these

 9    individuals, they've had an opportunity to be notified.  I posted

10    these orders on the web site, everyone is aware of them or should

11    be aware of them.

12         In a case of this sort, oftentimes people in the beginning

13    want to file their lawsuit and then later on they abandon their

14    lawsuit.  We have to have some method of dealing with those

15    individuals who wish to abandon their lawsuit and do so sub

16    silentio.  I can't just keep them on the record when they don't

17    respond.  We've given them several notices, they haven't responded.

18    I set this motion, they haven't appeared, haven't filed any

19    information, so I am going to dismiss them with prejudice.

20         Give me a form, a judgment recognizing that and I'll sign

21    it.

22         MS. WIMBERLY:  Yes, your Honor.  And that takes care of

23    all but one plaintiff that was on Exhibit 2, and that is Joyce

24    Taylor in Joyce Taylor v. Merck, 06-1550.  Matt Freeman and

25    Associates represents Ms. Taylor.  They called and said they wanted
```

```
 1   to dismiss, they never did send back the stipulation but they
 2   indicated that there was no claim and we would ask that that case
 3   be dismissed with prejudice as well.
 4           THE COURT:  I will dismiss that case with prejudice,
 5   06-1550.
 6           MS. WIMBERLY:  And, your Honor, we will provide that
 7   information as well.
 8           Finally, your Honor, there are three cases that we would ask
 9   be deferred to the next status conference.  Two of those are the
10   Lamb firm, Mr. Woods' cases that they're trying to pin down a
11   couple of final details on.  And those plaintiffs are Bethzaida
12   Figueroa in the Rosario case, 05-6234; and Jose Quintana Zayas,
13   again in the Rosario case, 05-6234.
14           And we have one final deferral.  I was provided information
15   at the last minute indicating that this person is derivative, we
16   need a chance to check that.  And that is Laurie Young in the
17   Lillie Mae Berry case, 05-4553.
18           So we're asking to defer ruling to the September status
19   conference on those, and I would anticipate that we will reach some
20   sort of agreement on those as well.
21           THE COURT:  I'll defer ruling on that, 05-6234 and
22   05-4553.
23           MS. WIMBERLY:  And, your Honor, just to make certain the
24   record is clear, all other plaintiffs who appeared on Exhibit 2 to
25   the August 22nd order setting what was remaining of the rule, Merck
```

```
 1   has withdrawn the rule as to those plaintiffs because they have

 2   either registered or have entered into stipulations of dismissal.

 3           THE COURT:  Okay.

 4           MS. WIMBERLY:  Your Honor, that brings us to Exhibit 1

 5   where no response or contact whatsoever had been received.  This

 6   one is easier to follow by simply telling you the 16 people that it

 7   no longer applies to.  Seven of those cases are cases represented

 8   by the Branch law firm.  We are in the process of filing agreed

 9   stipulations of dismissal with prejudice and are filing withdrawal

10   of the motion as to those seven clients of the Branch law firm, and

11   those are Joseph Apice in the Apice v. Merck case, 06-6439;

12   Elizabeth Blackwell in the Carmen Robles case, 06-6963; Clarence

13   Brace in the Thu Nguyen case, 07-4159; Eugene Davis in the Harrol

14   Davis case 06 -- I'm sorry, your Honor, I misspoke.  I read the

15   wrong name.

16           Edward Davis in the Gretchen Bartee case, 06-6446; James

17   Gibson in the Lonnie Allen case, 06-6633; Earl David Keaton in the

18   William Andrew case, 05-4676; and Johanne or Johanne Whatley in the

19   B.J. Baxter case, 06-6440.

20           And again, stipulations of dismissal with prejudice are

21   being filed in those seven cases, and we are withdrawing the rule

22   as it relates to those seven cases.

23           We also are withdrawing the rule as to three clients or

24   former clients of the O'Quinn law firm.  They are now pro se and

25   were mistakenly included on the rule.  Those include -- give me a
```

```
 1    minute, your Honor, there's a couple hundred names on here.

 2              MR. BLANKS:  Your Honor, may I be excused?

 3              THE COURT:  Yes, sure.  Thank you very much for coming.

 4       (WHEREUPON, MR. JOSEPH C. BLANKS LEFT THE COURTROOM.)

 5              MS. WIMBERLY:  The first of them is Janice Ferrell,

 6    05-5991.  We are withdrawing as to this now pro se -- let me just

 7    go through the others, your Honor, because there are others and as

 8    I come to them.

 9              THE COURT:  All right.

10              MS. WIMBERLY:  Your Honor, we also have withdrawn as to

11    Brian Boyd, plaintiff in the Patricia Allison case, 05-5822; this

12    is another instance where the plaintiff is now pro se.  We have

13    withdrawn as to Sonja Byrd, plaintiff in the Robert Ruzicka,

14    06-1971.  Again, this plaintiff is now pro se.  We have withdrawn

15    in, as to Floyd Chaplin, who is a plaintiff in the William Lough

16    case, 05-3820.  This is a class rep non-injury case and should not

17    have been included.

18         We have withdrawn as to Mary Coalson, plaintiff in the

19    Patricia Allison, 05-5822; another person who is now pro se.  We

20    have withdrawn as to Andrea Collier in the Shirley Adams case,

21    06-2101, again pro se.  We have withdrawn as to Margo Cushman,

22    another plaintiff in the Patricia Allison case, 05-5822, another

23    pro se plaintiff.  We have withdrawn as to Shawn Dotson, plaintiff

24    in the Robert Ruzicka, 06-1971, another pro se.

25         We've withdrawn as to Robin Dowell Druffel, plaintiff in the
```

1    James Coleman case, 06-1970, another pro se.  We've withdrawn as to

2    Mary Faber, another plaintiff in the Patricia Allison case,

3    05-5822, who is now pro se.  We have withdrawn as to Frances

4    Flourney, a plaintiff in the Eugene Perry case, 06-3140, who is now

5    pro se.  We have withdrawn as to Jubenal Gonzalez, a plaintiff in

6    the Patricia Allison case, 05-5822, who is now pro se.

7         We would like to defer as to Jacob Green, plaintiff in the

8    Jacob Green v. Merck case, 06-5503.  Plaintiff's counsel died and

9    there has been no substitution.

10        We are withdrawing as to Charles Hawkins, plaintiff in the

11   Opal Kaufman case, 05-5835, again another person who is now pro se.

12   We're withdrawing as to Armon High, plaintiff in the Robert Ruzicka

13   case, 06-1971, again now pro se.  We have also withdrawn as to

14   Milton Jackson, plaintiff in the Mitchell Jackson case, 06-9363.

15   He has now registered and that has been confirmed.

16        We have withdrawn in the Jane Leboeuf case, Jane Leboeuf,

17   05-6009.  This is another of the O'Quinn cases where counsel, the

18   plaintiff is now pro se.  We've withdrawn in the Michael Lenoir

19   case, as to Michael Lenoir who is a plaintiff in Shirley Adams,

20   06-2101, again now pro se.  We've withdrawn as to Richard Loehr,

21   plaintiff in the James Coleman case, 06-1970, he is now pro se.  We

22   have withdrawn as to Junior Ray Lowe, plaintiff in the Opal Kaufman

23   case, 05-5835, again now pro se.

24        We've withdrawn as to Herbert Mayers who is a plaintiff in

25   Patricia Allison, 05-5822, again he is now pro se.  We have also

```
 1   withdrawn as to Henry McGuire, plaintiff in the B.J. Baxter case,
 2   06-6440.  This was a case with a mistaken name and we've withdrawn
 3   and cleared that up.  We've withdrawn as to Latoya McQueen,
 4   plaintiff in the Robert Ruzicka case, 06-1971, again another person
 5   who is now pro se.  We've withdrawn as to Annie Mitchell, plaintiff
 6   in the Debbie Cavender case, 05-6533, again now pro se.
 7        We would like to defer as to Joyce Cooks Mitchell, plaintiff
 8   in the Clarence Abrams case, 05-5204.  Plaintiff's counsel has been
 9   running ads trying to locate her, and she asked that we defer for
10   30 days.
11        We've also withdrawn as to Carol Ann Mize, plaintiff in the
12   Robert Ruzicka case, 06-1971, who is now pro se.  We've withdrawn
13   as to Jacquelyn Nunley, plaintiff in the James Coleman case,
14   06-1970, who is now pro se.  We've withdrawn as to Karen Padova,
15   plaintiff in Karen Padova, 06-1509.  Ms. Padrova's claim has been
16   registered.  We've withdrawn as to Jerry Price, plaintiff in the
17   Debbie Cavender case, 05-6533, who is now pro se.  We've withdrawn
18   as to Billy Ralph, plaintiff in the James Coleman case, 06-1970,
19   who is now pro se.  We've withdrawn as to Joan Reinhardt, plaintiff
20   in the Joan Reinhardt case, 06-1510, Ms. Reinhardt has registered.
21        We've withdrawn as to Allen Reise, plaintiff in the Allan
22   Reise case, 06-8330, who has now registered.  We have withdrawn as
23   to David Sadler, plaintiff in the James Coleman case, 06-1970, who
24   is now pro se.  We have withdrawn, and I may have already indicated
25   this one but I think I missed it, as to Fred Sandoval, who is a
```

1    plaintiff in the Selma Saavedra case, 08-1033, who has now

2    registered.  And we have withdrawn as to Linda Schleicher,

3    plaintiff in the Linda Schleicher case, 05-6025, who is now pro se.

4    And that's the other O'Quinn client.  We've withdrawn as to Cindy

5    Shelton, plaintiff in the James Coleman case, 06-1970, also pro se.

6        We would like to defer as to Martha K. Smith who is a

7    plaintiff in the Donna Allen case, 05-4435.  This was the second of

8    the two where counsel was running an ad and she asked for it to be

9    deferred for 30 days.

10       We have withdrawn as to plaintiff Alice Snow, plaintiff in

11   the Bettye Magee case, 05-494, the case had been previously

12   dismissed.  We've withdrawn as to Laverne Sorenson, plaintiff in

13   the Patricia Allison case, 05-5822, she is now pro se.  We have

14   withdrawn in the Billy Stanaland case as to Billy Stanaland,

15   05-3398, he is now pro se.  We've withdrawn as to Gene Stein,

16   plaintiff in the Gene Stein case, 05-4623, who is now registered.

17       We have withdrawn as to Johnny Stewart, another plaintiff in

18   the Bettye Magee case, 05-494.  That is a case where it had been

19   previously dismissed from the -- the case had been remanded to

20   Mississippi state court prior to transfer.

21       We've withdrawn as to plaintiff Thomas Stone, plaintiff in

22   the Eugene Perry case, 06-3140, who is now pro se.  We have

23   withdrawn as to William Thomas, plaintiff in the Patricia Allison

24   case, 05-5822.  A motion to dismiss his case with prejudice was

25   filed by plaintiff's counsel and is pending.

1    We've withdrawn as plaintiff Jerry Thornhill, plaintiff in

2  the Shirley Adams case, 06-2101, who is now pro se.  We've

3  withdrawn as to Estella Torres, plaintiff in the Estella Torres

4  case, 05-5426, plaintiff is pro se.  We've withdrawn as to Freddie

5  Triplett, another plaintiff in the Bettye Magee case, 05-494.  The

6  case was remanded to Mississippi prior to official transfer to this

7  case court.  We've withdrawn as to Eone Virgil, plaintiff in the

8  Bettye Magee case, 05-494, for the same reason, it was remanded

9  prior to transfer.

10    We've withdrawn as to Darlene Wegert, plaintiff in the

11  Patricia Allison case, 05-5822, who is now pro se.  We are

12  withdrawing as to Patricia Weigel, plaintiff in the Patricia Weigel

13  case, 05-379, her counsel is deceased.  And I believe I previously

14  mentioned Ms. Wattley as to whom we've withdrawn because she filed

15  a stipulation of dismissal with prejudice.

16    And the last one, your Honor, is Ralph Wheat, plaintiff in

17  the Debbie Cavender case, 05-6533, who is now pro se.

18    And, your Honor, there are two other plaintiffs that I

19  received a request to defer on to the next status conference, and

20  we're trying to figure out a name discrepancy and see if it's a

21  duplicate, and those are Debra Lewis, plaintiff in the Jacob Lewis

22  case, 05-6621; and Hester Lewis, plaintiff in the James Kennedy

23  case, 05-6272.  And those are to be deferred to the September

24  status conference.

25    Your Honor, all other plaintiffs on Exhibit 1 have failed to

1    respond in any fashion whatsoever.

2          And I would also note for the record that, in addition to

3    the services that were previously made on the final services of

4    these revised exhibits, which were attached to the court's

5    August 22nd order, to make certain that counsel could easily

6    identify if any of their cases were at risk of dismissal, at the

7    request of the PLC we included the plaintiffs' counsel's names on

8    the exhibit so all they had to do was look quickly and see if they

9    had a case that was subject to dismissal.

10          And in the LexisNexis filing and notification I even said,

11   please note, if you are no longer counsel for any plaintiff

12   identified as being represented by your firm, please contact

13   Dorothy Wimberly, dwimberly@stonepigman.com immediately.  I heard

14   from five people.  So we have bent over backwards to give every bit

15   of process and notice to these people.

16          And as to the people who I have remained silent on that we

17   have not withdrawn as to or deferred as to, we would ask that the

18   court dismiss their cases with prejudice.

19          THE COURT:  I will dismiss those cases and direct you to

20   give me a judgment setting forth those cases.

21          MS. WIMBERLY:  And, your Honor, just to make certain the

22   record is clear, I would like to submit in globo, and I can do this

23   at a later submission if you would like, but I have all of the

24   letters and all of the LexisNexis file and services, as well as the

25   notice says that were sent.

1        THE COURT:  We will take those in globo attached to the

2   motion to dismiss.

3        MS. WIMBERLY:  And, your Honor, as I prepare these, I will

4   also send a copy to the PLC to see if they have any comment on the

5   format and we will get that to you today.

6        THE COURT:  Okay.  Anything further?  The court will stand

7   in recess.  Thank you very much.

8        THE DEPUTY CLERK:  Everyone rise.

9      (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

10

11

12                         *  *  *  *  *  *

13

14                      REPORTER'S CERTIFICATE

15

16   I, Karen A. Ibos, CCR, Official Court Reporter, United States

17   District Court, Eastern District of Louisiana, do hereby certify

18   that the foregoing is a true and correct transcript, to the best of

19   my ability and understanding, from the record of the proceedings in

20   the above-entitled and numbered matter.

21

22   _____

23          Karen A. Ibos, CCR, RPR, CRR

24          Official Court Reporter

25