## Collection of Johnie Stephens' Pharmacy Records - Time Line of Events

On September 7, 2005, Bob Stephens completed and signed a Plaintiff Profile Form in regard to his father, Johnie Stephens. In this document, he states that his father took Vioxx continuously from November of 2000 to his death in March of 2003 via prescriptions as opposed to samples. This document further set forth that the Kroger Pharmacy on McCain Blvd. in North Little Rock is the only pharmacy that his father filled any prescriptions at for the last 10 years.

On October 3, 2005, a Preservation of Evidence letter was sent to Susan Clayton at Kroger Division Office. This letter asked that no records for Mr. Stephens be destroyed, including documents, software, logs, email or other paper, digital or electronic records pertaining to the pharmaceutical records for the Johnie Stephens from 1999 to the present date. A copy of this letter was sent to Bob Stephens.

On January 24, 2006, probate was completed naming Bob Stephens the Administrator of Johnie Stephens' Estate. Letters of Administration dated January 24, 2006, were issued by Circuit Clerk Pat O'Brien, signed by Holly McElmurry, Deputy Clerk.

On March 28, 2006, Ashley Ohlde, the legal assistant to Mr. Robert Rountree, an attorney who worked on the case, requested a full copy of Johnie Stephens' Kroger Pharmacy records, because the records provided by Mr. Stephens at the time the case was signed up were spotty and we could not be assured that we had them all. She requested records from the Kroger Pharmacy from 3/15/1993 to 3/17/2003. This request was made while the preservation request was in effect with Kroger for this client.

On April 10, 2006, Susan Clayton with Kroger Division Office called Ashely Ohlde and advised that she needed a copy of the Order Appointing Administrator and Approving Contract before our records request could be fulfilled. Ms. Ohlde faxed this document to Ms. Clayton.

On April 21, 2006, we received in the mail the Kroger Pharmacy prescription records for Johnie Stephens, which had been requested for the period 3/15/1993 - 3/17/2003. There were no records provided by Kroger that had not already been provided by Bob Stephens. The preservation request was still in effect at this time.

On May 1, 2006, Susan Clayton called Ashley Ohlde inquiring as to whether they could reinstate their electronic purge process which they put on hold after receiving our Preservation of Evidence letter. After consulting with Mr. Rountree, Ms. Ohlde confirmed that we had received the records that we had requested from Kroger, and advised that the electronic purge could resume. As is evident by the printout he received, the Kroger electronic system did not contain anything in it prior to July 8, 2002 at the time that Bob Stephens acquired the November 2004 printout from Kroger Pharmacy on McCain Boulevard. Therefore, the agreement to allow the electronic purge to begin again did not affect any records that were not already gathered. If there were any records available prior to July 8, 2002, they would only have been available in paper form, which would not have been part of the electronic purge that Susan Clayton was inquiring about reinstating.

On December 14, 2007, after a discussion between Bob Stephens and Gary Eubanks in which Mr. Stephens expressed concern that all of his father's pharmacy records may not have been gathered. At that time, Mr. Eubanks sent another letter to Susan Clayton at the Kroger Division Office. Mr. Eubanks attached a copy of the firm's October 2005 Preservation of Evidence letter, and again requested that Kroger furnish any records they have prior to the first date on the printout, which was July 8, 2002.

On January 8, 2008, Susan Clayton called Gary Eubanks and Associates, P.A. and spoke to Angi Flournoy, a legal assistant at Gary Eubanks and Associates, P.A. She advised that she had received Mr. Eubanks' letter, but had no record of any prescription prior to what we had already obtained. She further advised that the only way to find a prescription in the paper file archives is if you have the exact Rx Number of that prescription, as they do not file it by customer name. Upon a request by Ms. Flournoy, Ms. Clayton sent a confirming email with more information about the records search. This email provides a breakdown of the events that transpired in regard to the Preservation request. According to Ms. Clayton, she received the Preservation letter in October of 2005. Within 3 weeks of receipt of the letter, all electronic purges were put on hold. On February 7, 2006, she contacted Mr. Rountree's office to request a status of when purges could again take place. She was told by Ashley Ohlde that by May 1, 2006 they should be able to begin the purge again. On May 1, 2006 she contacted Mr. Rountree's office again to confirm the ability to begin purging. She was told at that time that they could re-instate the purge process, and did so. Ms. Clayton also notes that after receiving Mr. Eubanks' letter of December 14, 2007, she had the pharmacy pull all of their daily signature logs from 2000 to 2002 to see if they could locate any prescriptions prior to what we had record of on the pharmacy log, <u>and they had no evidence of a prescription being filled at their pharmacy during that period</u>. Susan Clayton further advised that the only suggestion she could offer to possibly locate any older records was to obtain the records from Mr. Stephens' insurance company, as those would contain the information on what prescriptions had been filled, the prescription number, the quantity, etc.

On January 12, 2008, Gary Eubanks sent a letter to Bob Stephens enclosing a copy of Susan Clayton's email and advising that we are "out of luck" unless we can come up with something. Bob Stephens then did some research about his father's insurance, and learned that Caremark was the insurance carrier that should have the records. Once Mr. Stephens notified Gary Eubanks & Associates, P.A. of this information, a request was sent to Caremark on January 21, 2008 for all pharmacy records from 3/15/1993 - 3/17/2003.

After receiving on 2/25/2008 a letter from Caremark advising they needed more information, and their authorization signed, the Caremark authorization was executed by Bobby Stephens and re-faxed on February 27, 2008, with the January 21, 2008 request letter.

On April 18, 2008, a signed letter from Alex Hunter at Caremark was received. This letter advised that they were unable to retrieve any information. They were able to identify an account for Mr. Stephens, but they only maintain records for 36 rolling months, which would mean the request would have to have been made before July of 2005 in order to obtain any information prior to what was contained on the printouts we already had. As Bob Stephens did not hire Gary Eubanks & Associates, P.A. until August of 2005, at no time would Gary Eubanks & Associates. P.A. ever have been able to obtain this information for Mr. Stephens.