# EXHIBIT 3 (part 1)

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

**BOB STEPHENS, Individually, and as**
**Administrator of the Estate of Johnie Stephens,**
**Deceased**         2nd            **PLAINTIFFS**

**vs.**         **CV 2009- 2932**

FILED 04/23/09  09:45:14
Pat O'Brien Pulaski Circuit Clerk
CR10

**GARY EUBANKS, WILLIAM GARY HOLT, JEFFREY WEBER,**
**ROBERT L. ROUNTREE, ASHLEY OHLDE,**
**GARY EUBANKS & ASSOCIATES, P.A., and**
**John Doe 1, John Doe 2, John Doe 3,**
**John Doe 4 and John Doe 5.**         **DEFENDANTS**

### COMPLAINT

Comes now Bob Stephens, Individually, and as Administrator of the Estate of Johnie

Stephens, deceased, and for his Complaint with Jury Demand states:

### I. INTRODUCTION

1. This is legal malpractice action against the Defendants Gary L. Eubanks, William

Gary Holt, Jeffrey Weber, Robert L. Rountree, Ashley Ohlde, and Gary Eubanks & Associates, P.

A., for actions arising out of their representation of Bob Stephens , Individually, and as

Administrator of the Estate of Johnie Stephens, deceased, in their Vioxx case against Merck &

Co., Inc.

### II. PARTIES

2. Bob Stephens is a resident of North Little Rock, Pulaski County, Arkansas and was

appointed Administrator of the Estate of Johnie Stephens by virtue of an Order of the Probate

Court of Pulaski County, Arkansas, dated January 24, 2006. Decedent Johnie Stephens was a

1

resident of Pulaski County, Arkansas until his death on March 15, 2003.  Decedent was

prescribed, purchased and ingested the prescription drug Vioxx from November 2000, through

March 15, 2003, in Pulaski County, Arkansas.

     3.  Separate defendant Gary L. Eubanks is an attorney who on information and belief is a

current resident of Garland County, Arkansas.  At all times pertinent to this litigation he was the

owner of Gary Eubanks & Associates, P.A., a law firm located in Pulaski County, Arkansas.  On

information and belief he may be served with process at his principal place of business, Gary

Eubanks & Associates, P.A., 708 West 2nd Street, Little Rock, AR 72201.

     4.  Separate defendant William Gary Holt is an attorney who on information and belief is a

current resident of Pulaski County, Arkansas.  At all times pertinent to this litigation he was an

attorney employed by Gary Eubanks & Associates, P.A., a law firm located in Pulaski County,

Arkansas.  On information and belief he may be served with process at his principal place of

employment, Gary Eubanks & Associates, P.A., 708 West 2nd Street, Little Rock, AR 72201.

     5.  Separate defendant Jeffrey Weber is a former attorney with Gary Eubanks &

Associates, P.A., and on information and belief was a resident of Pulaski County, Arkansas at all

times relevant to this litigation.  On information and belief, he is currently a resident of Bryant,

Saline County, Arkansas and may be served with process at his home address, 3802 Hanover

Drive, Bryant, AR, 72022.

     6.  Separate defendant Robert L. Rountree is a former attorney with Gary Eubanks &

Associates, P.A., and a former resident of Pulaski County, Arkansas at all times relevant to this

litigation.  On information and belief, he is currently a resident of West Plains, Howell County,

MO., and may be served with process at his home address, 4083 County Rd #4220, West Plains, MO. 65775.

7.  On information and belief, separate defendant Ashley Ohlde was a Trial Assistant to attorney Robert L. Rountree with Gary Eubanks & Associates, P.A. at all times relevant hereto, and on information and belief was a resident of Pulaski County, Arkansas at all times relevant to this litigation.  On further information and belief she is believed to be currently a resident of Pulaski County, Arkansas and may be served with process in Pulaski County, Arkansas.

8.  Separate defendant Gary Eubanks & Associates, P.A. is a professional association with its principal place of business at 708 West 2nd Street, Little Rock, AR 72201.  It was authorized to do business in Arkansas, and was actually doing business in this State, at all times pertinent hereto.  Its registered agent is Gary L. Eubanks, and the association can be served with process by serving Gary L. Eubanks, or another officer of the association, at its principal place of business, 708 West 2nd Street, Little Rock, AR 72201.

9.  Defendants John Doe 1, John Doe 2, John Doe 3, John Doe 4, and John Doe 5 are persons of entities whose identities and whereabouts are unknown at the time of filing this Complaint.  The Complaint will be amended once these defendants have been identified.

### III. JURISDICTION AND VENUE

10.  This Court has jurisdiction over the subject matter of this lawsuit, a legal malpractice action, and jurisdiction over the parties in this lawsuit.  Venue is proper in Pulaski County, Arkansas as all actions relevant to this litigation occurred in this county.

### IV. STATEMENT OF FACTS

3

11.  Johnie Stephens, deceased, took the prescription drug Vioxx for 27 months, from on or about November 26, 2000, until the date of his death from an Acute Myocardial Infarction on March 15, 2003.

12.  Subsequently, Bob Stephens obtained Johnie Stephens' medical records from an Emergency Room visit to the Baptist Medical Center where Johnie Stephens was seen by Frank H. Ma, M. D. on November 26, 2000, and was given a prescription for 10 Vioxx, 50MG pills to be taken daily.  Bob Stephens also obtained a computer printout of prescriptions that had been filled by the Kroger Pharmacy 02500639 located at 2509 McCain Boulevard, North Little Rock, Arkansas 72116, showing that Vioxx had been filled for Johnie Stephens on the following dates: (1) 07/08/2002; (2) 08/10/2002; (3) 09/13/2002; (4) 10/14/2002; (5) 11/13/2002; (6) 12/12/2002; (7) 01/10/2003; (8) 02/08/2003 and (9) 03/12/2003.  The last prescription was filled just three days prior to Johnie Stephens' death.

13.  On August 29, 2005, Bob Stephens went to the office of Gary Eubanks & Associates, P.A. in Little Rock, Pulaski County, Arkansas and talked to Robert L. Rountree, an attorney at that law firm.  Robert L. Rountree, on behalf of himself and Gary Eubanks & Associates, P.A., entered into a **Contract for Legal Service: Pharmaceutical**, **(see Exhibit A, attached hereto)** wherein they agreed to represent Bob Stephens, Individually, and as Administrator of the Estate of Johnie Stephens, deceased, in a claim involving Johnie Stephens' use of the prescription drug Vioxx against Merck & Co., Inc., the pharmaceutical firm that made and marketed the drug.  On that date, Bob Stephens gave Robert L. Rountree copies of medical records that Bob Stephens had obtained on Johnie Stephens, along with the computer printout of prescription records for the dates of July 8, 2002 through March 12, 2003, that had been obtained from Kroger Pharmacy, and

stressed to Robert Rountree the urgent need for the law firm to obtain the missing prescription records between November 2000, and July 8, 2002.  Bob Stephens told Robert Rountree that the Kroger Pharmacy Manager, Jill Frazier, at the McCain Pharmacy, had told Bob Stephens that the written prescription records for Johnie Stephens, from before November 2000 through the date of March 12, 2003 shown on the computer printout, were available in boxes upstairs at the Pharmacy.

14.  On October 3, 2005, Mr. Rountree wrote a letter to Susan Clayton, Pharmacy HIPPA Privacy Coordinator and Special Projects Manager at the Kroger Division Office in Memphis, Tennessee, requesting the preservation of all Pharmaceutical Records for Johnie Stephens.  (**See Exhibit B, and Exhibit C attached hereto**).

15.  On January 24, 2006, Bob Stephens was appointed Administrator of the Estate of Johnie Stephens, deceased.

16.  On February 7, 2006, Susan Clayton, Kroger Division Office, contacted Mr. Rountree's office to obtain an estimated time as to when Kroger could restart their pharmacy records purge process.  Ashley Ohlde, Trial Assistant to Robert L. Rountree, and with Mr. Rountree's knowledge and approval, informed Susan Clayton that all motions regarding the Vioxx litigation would be filed by May 1, 2006, and that Kroger Pharmacy could restart their pharmacy records purge process after that date.  None of this information regarding destruction of Johnie Stephens's pharmacy records was relayed to Bob Stephens by anyone at the law firm.  Bob Stephens would  have never approved the destruction of these records if he had been notified of such authorization for destruction by Mr. Rountree, Gary Eubanks & Associates, P.A., or anyone else associated with the approval of destruction of these records.

5

17.  On February 23, 2006, Vioxx Case No. EDAR 4-06-CV-0259 WRW, Estate of Johnie Stephens, Deceased, et al v. Merck & Co., Inc was filed in the United States District Court for the Eastern District of Arkansas by William Gary Holt an attorney employed by Gary Eubanks & Associates, P.A. .  (**See Exhibit D attached hereto**).  As an attorney of record in the original filing of this Vioxx case, William Gary Holt had the same duty to obtain and preserve all the Johnie Stephens prescription records as all the other attorneys and employees of Gary Eubanks & Associates, P.A. who were associated with this case.

18.  On May 1, 2006, Susan Clayton, Kroger Division Office, contacted Ashley Ohlde in Robert Rountree's office to confirm that they could restart the pharmacy records purge process, and was told that all motions had been filed in the Vioxx litigation and that Kroger could reinstate the purge process.

19.  Sometime in 2006 or 2007, attorney Robert Rountree resigned from the Gary Eubanks & Associates, P.A. law firm, without having obtained all of Johnie Stephens' prescription records from the Kroger Pharmacy.  Attorney Jeffrey Weber with the Eubanks firm was thereafter assigned to the Johnie Stephens, deceased Vioxx case.  Jeffrey Weber then left his employment at the Eubanks firm, and like attorney Robert Rountree, Mr. Weber also failed to obtain all of Johnie Stephens' prescription records from the Kroger Pharmacy.

20.  Thereafter, Bob Stephens, Individually, and as Administrator of the Estate of Johnie Stephens, deceased, in consultation with the Eubanks firm, agreed to settle the Vioxx case with Merck & Co., Inc., Case No. EDAR 4-06-CV-0259 WRW.  At that time, although the Defendants knew that all of the Kroger Pharmacy prescription records for Johnie Stephens had not been obtained, they never informed Bob Stephens of this fact, which represented a fraudulent

concealment of relevant information from Bob Stephens.

21.  On December 14, 2007, Gary Eubanks wrote a letter to Susan Clayton at the Kroger Division Office, and enclosing a copy of the retention letter written by Robert Rountree on October 3, 2005, informing Ms. Clayton that he needed the pharmacy records for Johnie Stephens dating back to November 26, 2000, that it was very important, and that he would be willing to pay for any inconvenience.  (**See Exhibit E attached hereto**).

22.  It is obvious that at least as early as December 14, 2007, Gary Eubanks was personally involved in the Johnie Stephens Vioxx case, Case No. EDAR 4-06-CV-0259, therefore, Gary Eubanks would have known that Bob Stephens gave Robert L. Rountree copies of the computer printout showing prescription records, and that Jill Frazier at the McCain Kroger Pharmacy had told Bob Stephens that the written prescription records for Johnie Stephens from November 2000 through the current date of March 12, 2003 on the computer printout were available in boxes upstairs in the pharmacy.

23.  On January 10, 2008, Susan Clayton, Kroger Pharmacy, sent an E-mail to Angi (Flournoy), Legal Assistant to Gary Eubanks, that reviewed Susan Clayton's contact with the Eubanks office regarding the prescription records of Johnie Stephens, informing Angi that on May 1, 2006, she contacted Ashley with Robert Rountree's office and was told that Kroger could reinstate their pharmacy records purge process immediately.  Susan Clayton further informed Angi in that E-mail that until receiving the letter from Gary Eubanks dated December 14, 2007, she had not had any contact from Robert Rountree's office between the dates of May 1, 2006 and December 14, 2007, and that Kroger did not have any prescriptions prior to September 13, 2002. (**See Exhibit F, attached hereto**).  Again, this information was concealed from Bob Stephens by

7

Gary Eubanks and other employees at his office.

24.  Subsequently, Gary Eubanks submitted medical and pharmacy records to the Vioxx Claims Administrator as required in the settlement agreement so that a determination could be made as to how much the claim of Johnie Stephens was worth.  On November 20, 2008, the Notice of Points Award was issued by the Claims Administrator in the Vioxx Settlement Program which showed he had awarded 157.5 points at $1900.00 per point.  This was based on Johnie Stephens having consumed Vioxx from 6 to 18 months, (rather than the actual 27 months), and would mean the dollar amount of the settlement would be $299,250.00.  It was apparent that the Claims Administrator had used the computer printout of prescriptions that had been filled by the Kroger Pharmacy 02500639 located at 2509 McCain Boulevard, North Little Rock, Arkansas 72116 showing that Vioxx had been filled for Johnie Stephens on the following dates:  (1) 07/08/2002; (2) 08/10/2002; (3) 09/13/2002; (4) 10/14/2002; (5) 11/13/2002; (6) 12/12/2002; (7) 01/10/2003; (8) 02/08/2003 and (9) 03/12/2003, this being the computer printout that was given to attorney Robert Rountree by Bob Stephens on August 29, 2005.  Had the employees at the Eubanks firm obtained all of the prescription records going back to November 2000 showing actual evidence of Johnie Stephens having consumed Vioxx for 27 months and presented these records to the Claims Administrator in the Vioxx Settlement Program, he would have awarded 198 points at $1900.00 per point, and the amount of the award would have been $376,200.00, rather than $299,250.00, a difference of $76,950.00.

25.  Thereafter, Gary Eubanks obtained Affidavits from Bob Stephens and Woodrow Hill in his efforts to overcome the missing prescription evidence of Johnie Stephens having actually consumed Vioxx from November 2000 until March 2003, and on 11/20/2008 Eubanks lodged an

Appeal with the Claims Administrator concerning Notice of Points Award.

26.  On February 13, 2009, the Claims Administrator issued his Post-Appeal Notice of Points Award, and there was no change in the number of points awarded**.**

27.  At the request of Bob Stephens, Gary Eubanks appealed the Post-Appeal Notice of Points Award issued by the Claims Administrator to the Special Master, but Eubanks submitted no new evidence to try and overcome the missing evidence of Johnie Stephens having actually consumed Vioxx from November 2000 until March 2003.

28.  On March 3, 2009, Bob Stephens confirmed in a letter to Gary Eubanks that Jill Frazier was still the Manager of the Kroger Pharmacy 02500639 located at 2509 McCain Boulevard, North Little Rock, Arkansas 72116, and that she said their written prescription records are maintained for at least 7 years.

29.  On March 6, 2009, Gary Eubanks responded to Bob Stephens' letter of March 3, 2009, by stating that his firm had exhausted all efforts to obtain additional VIOXX records from Kroger and "if you have any information to the contrary, please feel free to obtain it", thereby refusing to search for more records.  **(See Exhibit G, attached hereto).**

30.  On March 25, 2009, Bob Stephens obtained a Subpoena from the Pulaski County , Arkansas Circuit Court Clerk which was served on Jill Frazier, the Pharmacy Manager at the Kroger Pharmacy located at 2509 McCain Blvd, North Little Rock, Arkansas, commanding the Pharmacy to produce written prescription records for Johnie Stephens from November 2000 through December 2002.  The following written copies of prescription records for Johnie Stephens were all that were still available in boxes at Kroger on April 3, 2009, and were provided to Bob Stephens:  (1) a copy of an actual written prescription for Vioxx signed by Michael

Church, M.D. dated July 8, 2002, and showing 1 refill and a  copy of a Kroger Pharmacy written

**PRESCRIPTION TAG** with a **RX# 6724826** with the date July 8 2002, which also bears the

name Jill Frazier as the Pharmacist and shows it was approved by M. Church, M.D.;  (2)  a copy

of a Kroger Pharmacy written prescription record for Johnie Stephens filled on September 13,

2002, # 6729594 by Jill Frazier showing it was approved by Greg Henson, M.D.;  (3) a copy of a

Fax from Kroger Pharmacy to Greg Henson, M.D. stating that Kroger needed a new prescription

for Johnie Stephens because the last prescription # 6729594 written on September 13, 2002, for 5

refills had run out.  Dr Henson approved the request and Pharmacist Woody Hill filled the

prescription #6743784 on March 12, 2003, 3 days prior to Johnie Stephens' death.  This is proof

that with the 7 year prescription retention policy at Kroger, had Defendants served a Subpoena on

Jill Frazier, the Pharmacy Manager at the Kroger Pharmacy located at 2509 McCain Blvd, North

Little Rock, Arkansas at any time prior November 2007,commanding the Pharmacy to produce all

written prescription records for Johnie Stephens from November 2000 through December 2002,

the Defendants could have obtained all the written prescription records that were available for

Johnie Stephens, deceased, at the Kroger Pharmacy.  **(See Exhibit H, attached hereto).**

## V. LEGAL MALPRACTICE

31.  Plaintiffs reallege and incorporate herein paragraphs 1-30 as though stated fully word-

for-word.

32.  In order to prove a drug-related products liability claim, it must be shown that the

person actually ingested the allegedly defective drug, and the duration of use is also critically

important in such a case. As a result, one of the first things anyone representing a plaintiff in a

drug-related product liability case must do is obtain and preserve all evidence pertaining to the

plaintiff's use of the allegedly defective drug.  Anyone representing a client in such a case owes the client a fiduciary duty to do so. Additionally, anyone representing such a client owes a fiduciary duty to carry out the client's instructions unless they are unreasonable or unethical.

33.  The Defendants, and each of them, in this case failed to obtain Kroger's Pharmacy records pertaining to Johnie Stephens as soon as possible after the Defendants were employed. Instead of obtaining the records as required by the standard of care and as instructed by Bob Stephens, the Defendants merely instructed Kroger Pharmacy to maintain its records for a period of time.  The Defendants never attempted to follow up and obtain the records.  Instead, before obtaining any records from Kroger, other than the one page printout that had already been provided by Stephens, the Defendants gave Kroger explicit permission to reinstate its purge process and thereby destroy the Vioxx prescription records pertaining to Johnie Stephens. Defendants gave Kroger permission to destroy the records, knowing that these records were necessary, and critical, for presentation to the Claims Administrator as proof of use of Vioxx by Johnie Stephens, and knowing that these records would be critical evidence to be used at trial should a trial become necessary.  By allowing Kroger to destroy these records, these Defendants, and each of them, breached the standard of care and breached their fiduciary duty to the Plaintiffs. Moreover, the Defendants fraudently concealed from Bob Stephens the fact that they had failed to properly obtain and preserve these records.  None of the Defendants ever tried to obtain the records voluntarily from Kroger, or through subpoena, although a request for a subpoena for the records could have been made to at least two courts in Arkansas, the Federal District Court where the Vioxx Complaint was filed, and the Pulaski County Probate Court where the Johnie Stephens estate was open.  Moreover, Arkansas attorneys do not need permission from the clerk or court to

11

issue a subpoena for records.  As officers of the court, pursuant to Rule 45 (b) of the Arkansas Rules of Civil Procedure, attorneys can issue their own subpoenas, therefore, these Defendants could have obtained the records through their own subpoena had Kroger refused to produce the records voluntarily.

34.  Separate Defendant Gary Eubanks had a duty to Plaintiffs to exercise reasonable diligence and skill on behalf of his client and to protect the Plaintiffs' legal interests with regard to their Complaint against Merck & Co., Inc. regarding the Vioxx claim for the Estate of Johnie Stephens.  This Defendant breached the duty to Plaintiffs by failing to obtain, and preserve, all the pharmacy records for Johnie Stephens, deceased, regarding his use of the prescription drug Vioxx from November 2000 until his death on March 15, 2003.  In particular, the failure to obtain and preserve these records, and especially the permission given by this Defendant to Kroger to destroy these records was not only negligent, the conduct went way beyond even gross negligence and constituted willful, wanton, and reckless conduct that showed a conscious indifference to the consequences.  This Defendants knew that the Vioxx Claims Administrator would base his opinion for damages on the records that showed the period of time of actual use of Vioxx by Johnie Stephens, and this Defendant further knew that an absence of any of these records would result in less money being awarded by the Claims Administrator, which is what happened in this case as a result of the conduct of the Defendants, and was the proximate cause, or one of the proximate causes, of the damages suffered by Bob Stephens, Individually, and as Administrator of the Estate of Johnie Stephens, deceased.

35.  Separate Defendant William Gary Holt filed the original Vioxx Complaint in federal court for the Estate of Johnie Stephens, deceased, and had a duty to Plaintiffs to exercise

12

reasonable diligence and skill on behalf of his client and to protect the Plaintiffs' legal interests with regard to the Complaint against Merck & Co., Inc. This Defendant breached the duty to Plaintiffs by failing to obtain, and preserve, all the pharmacy records for Johnie Stephens, deceased, regarding his use of the prescription drug Vioxx from November 2000 until his death on March 15, 2003.  In particular, the failure to obtain and preserve these records, and especially the permission given by this Defendant to Kroger to destroy these records was not only negligent, the conduct went way beyond even gross negligence and constituted willful, wanton, and reckless conduct that showed a conscious indifference to the consequences.  This Defendants knew that the Vioxx Claims Administrator would base his opinion for damages on the records that showed the period of time of actual use of Vioxx by Johnie Stephens, and this Defendant further knew that an absence of any of these records would result in less money being awarded by the Claims Administrator, which is what happened in this case as a result of the conduct of the Defendants, and was the proximate cause, or one of the proximate causes, of the damages suffered by Bob Stephens, Individually, and as Administrator of the Estate of Johnie Stephens, deceased.

36.  Separate Defendant Jeffrey Weber had a duty to Plaintiffs to exercise reasonable diligence and skill on behalf of his client and to protect the Plaintiffs' legal interests with regard to their Complaint against Merck & Co., Inc. regarding the Vioxx claim for the Estate of Johnie Stephens.  This Defendant breached his duty to Plaintiffs by failing to obtain, and preserve, all the pharmacy records for Johnie Stephens, deceased, regarding his use of the prescription drug Vioxx from November 2000 until his death on March 15, 2003.  In particular, the failure to obtain and preserve these records, and especially the permission given by this Defendant to Kroger to destroy these records was not only negligent, the conduct went way beyond even gross negligence and

constituted willful, wanton, and reckless conduct that showed a conscious indifference to the consequences.   This Defendant knew that the Vioxx Claims Administrator would base his opinion for damages on the records that showed the period of time of actual use of Vioxx by Johnie Stephens, and this Defendant further knew that an absence of any of these records would result in less money being awarded by the Claims Administrator, which is what happened in this case as a result of the conduct of this Defendant, and was the proximate cause, or one of the proximate causes, of the damages suffered by Bob Stephens, Individually, and as Administrator of the Estate of Johnie Stephens, deceased.

      37.   Separate Defendant Robert L. Rountree had a duty to Plaintiffs to exercise reasonable diligence and skill on behalf of his client and to protect the Plaintiffs' legal interests with regard to their Complaint against Merck & Co., Inc. regarding the Vioxx claim for the Estate of Johnie Stephens.  This Defendant breached the duty to Plaintiffs by failing to obtain, and preserve, all the pharmacy records for Johnie Stephens, deceased, regarding his use of the prescription drug Vioxx from November 2000 until his death on March 15, 2003.  In particular, the failure to obtain and preserve these records, and especially the permission given by this Defendant to Kroger to destroy these records was not only negligent, the conduct went way beyond even gross negligence and constituted willful, wanton, and reckless conduct that showed a conscious indifference to the consequences.   This Defendant knew that the Vioxx Claims Administrator would base his opinion for damages on the records that showed the period of time of actual use of Vioxx by Johnie Stephens, and this Defendant further knew that an absence of any of these records would result in less money being awarded by the Claims Administrator, which is what happened in this case as a result of the conduct of this Defendant, and was the proximate cause, or one of the

14

proximate causes, of the damages suffered by Bob Stephens, Individually, and as Administrator of the Estate of Johnie Stephens, deceased.

38.  Separate Defendant Ashley Ohlde had a duty to Plaintiffs to exercise reasonable diligence and skill on their behalf and to protect the Plaintiffs' legal interests with regard to their Complaint against Merck & Co., Inc. regarding the Vioxx claim for the Estate of Johnie Stephens. This Defendant breached the duty to Plaintiffs by failing to obtain, and preserve, all the pharmacy records for Johnie Stephens, deceased, regarding his use of the prescription drug Vioxx from November 2000 until his death on March 15, 2003.  In particular, the failure to obtain and preserve these records, and especially the permission given by this Defendant to Kroger to destroy these records was not only negligent, the conduct went way beyond even gross negligence and constituted willful, wanton, and reckless conduct that showed a conscious indifference to the consequences.   This Defendant knew that the Vioxx Claims Administrator would base his opinion for damages on the records that showed the period of time of actual use of Vioxx by Johnie Stephens, and this Defendant further knew that an absence of any of these records would result in less money being awarded by the Claims Administrator, which is what happened in this case as a result of the conduct of this Defendant, and was the proximate cause, or one of the proximate causes, of the damages suffered by Bob Stephens, Individually, and as Administrator of the Estate of Johnie Stephens, deceased.

39.  Separate Defendant Gary Eubanks & Associates, P.A. had a duty to Plaintiffs to exercise reasonable diligence and skill on behalf its clients and to protect the Plaintiffs' legal interests with regard to their Complaint against Merck & Co., Inc. regarding the Vioxx claim for the Estate of Johnie Stephens.  This Defendant, through its attorneys and employees named

15

herein, breached the duty to Plaintiffs by failing to obtain, and preserve, all the pharmacy records for Johnie Stephens, deceased, regarding his use of the prescription drug Vioxx from November 2000 until his death on March 15, 2003.  In particular, the failure to obtain and preserve these records, and especially the permission given by this Defendant, through its attorneys and employees named herein, to Kroger to destroy these records was not only negligent, the conduct went way beyond even gross negligence and constituted willful, wanton, and reckless conduct that showed a conscious indifference to the consequences.   This Defendant through its attorneys and employees named herein knew that the Vioxx Claims Administrator would base his opinion for damages on the records that showed the period of time of actual use of Vioxx by Johnie Stephens, and further knew that an absence of any of these records would result in less money being awarded by the Claims Administrator, which is what happened in this case as a result of this conduct, and was the proximate cause, or one of the proximate causes, of the damages suffered by Bob Stephens, Individually, and as Administrator of the Estate of Johnie Stephens, deceased.

40.  The Defendants, and each of them, concealed from Bob Stephens the fact that they had failed to obtain and preserve all of the prescription records for Vioxx for Johnie Stephens, deceased, and the Defendants knew that they were presenting less than all of the prescription records to the Vioxx Claims Administration, all the while knowing that all the records would be critical in the amount of damages awarded in the Johnie Stephens claim.

41.     As a result of the willful, wanton, reckless, and fraudulent conduct of the Defendants, and each of them, which showed a conscious indifference to the consequences as set out herein, punitive damages should be awarded against all Defendants, jointly and severally, to

16

punish these Defendants, and to deter similar conduct in others.

## VI. DEMAND FOR JURY TRIAL

42.  Plaintiffs demand trial by a twelve member jury.

**WHEREFORE**, Plaintiffs pray for judgment for compensatory damages against the

Defendants, jointly and severally, in an amount adequate to compensate Bob Stephens,

Individually, and as the Administrator of the Estate of Johnie Stephens for damages sustained,

and further pray for punitive damages against all Defendants, jointly and severally, and for all

other relief to which they may be entitled.

Respectfully submitted,

*Bob Stephens*

**Bob Stephens, Individually and as
Administrator of the Estate of Johnie
Stephens, Deceased
PRO SE
4005 Royal Oak Drive
North Little Rock, AR 72116**
(501) 771-2178

17

## CONTRACT FOR LEGAL SERVICES: PHARMACEUTICAL

**READ CAREFULLY:** THIS IS YOUR CONTRACT. IT PROTECTS BOTH YOU AND YOUR ATTORNEYS AND WILL PREVENT MISUNDERSTANDING. IF YOU DO NOT UNDERSTAND IT, PLEASE CALL IT TO OUR ATTENTION.

I HEREBY EMPLOY THE LAW FIRM OF **GARY EUBANKS & ASSOCIATES** TO REPRESENT ME IN MY CLAIM FOR PERSONAL INJURY AGAINST THE MANUFACTURERS, DISTRIBUTORS, AND SUPPLIERS OF MEDICATIONS WHICH I HAVE TAKEN. I AGREE TO PAY MY ATTORNEYS, **GARY EUBANKS & ASSOCIATES**, A FEE AS FOLLOWS: IN THE EVENT OF SETTLEMENT, 33 1/3% OF ANY AND ALL SUMS RECOVERED IF THE CASE IS SETTLED PRIOR TO THE INSTITUTING OF SUIT; 45% OF ANY AND ALL SUMS RECOVERED IF SUIT IS INSTITUTED; **OR** A FEE OF $ N/A PER HOUR FOR LEGAL SERVICES RENDERED IN THIS MATTER WITH AN INITIAL RETAINER OF $ N/A . I HEREBY EMPOWER SAID ATTORNEYS TO FILE SUIT IN WHATEVER COURT THEY THINK NECESSARY. I UNDERSTAND THAT IT IS MY DECISION WHETHER TO SETTLE MY CASE. MY ATTORNEY WILL ADVISE ME, BUT THE RIGHT AND RESPONSIBILITY OF MAKING ANY FINAL DECISION WHETHER TO ACCEPT OR REJECT ANY SETTLEMENT OFFER IS MINE.

**EXPENSES IN PURSUING MY CLAIM:** I FURTHER AGREE THAT, IN ADDITION TO THE ABOVE ATTORNEY FEES, ALL COURT COSTS, SUBPOENA COSTS, PHOTOGRAPHS, MOVIES, VIDEO TAPES, PHOTO COPIES, POSTAGE, DEPOSITIONS, COURT REPORTER COSTS, REPORTS, WITNESS STATEMENTS, INVESTIGATION EXPENSES, NECESSARY TRAVEL EXPENSES, EXPERT AND LAY WITNESS EXPENSES AND ALL OTHER EXPENSES INCURRED IN INVESTIGATING AND/OR LITIGATING THIS CLAIM SHALL BE PAID OFF THE TOP FROM THE TOTAL RECOVERY AND THAT SAID EXPENSES, AND ATTORNEY FEES MAY BE DEDUCTED FROM THE PROCEEDS OF ANY RECOVERY. IN THE EVENT MY CASE BECOMES INVOLVED IN MULTI-DISTRICT LITIGATION, I UNDERSTAND THAT ANY CHARGES ASSESSED BY THE COURT SHALL BE CONSIDERED PART OF THE COSTS OF MY CASE.

**IF NO RECOVERY IS OBTAINED, NO FEE SHALL BE PAYABLE TO THE ATTORNEYS.** I UNDERSTAND THAT MY ATTORNEYS ARE TAKING THIS CASE FOR INVESTIGATION. ASSOCIATE COUNSEL MAY BE EMPLOYED AT THE DISCRETION AND EXPENSE OF THE ATTORNEYS. THE DECISION TO APPEAL TO THE SUPREME COURT OR THE COURT OF APPEALS SHALL BE MADE IN THE SOLE DISCRETION OF THE ATTORNEYS. ALL COSTS OF APPEAL, INCLUDING TRANSCRIPTS AND PRINTING COSTS, SHALL BE DEDUCTED FROM THE RECOVERY.

NO REPRESENTATION HAS BEEN MADE AS TO WHAT AMOUNT, IF ANY, I MAY BE ENTITLED TO RECOVER IN THIS CASE.

I AGREE TO KEEP THE LAW OFFICES OF **GARY EUBANKS & ASSOCIATES** ADVISED OF MY WHEREABOUTS AT ALL TIMES; TO COOPERATE IN THE PREPARATION AND TRIAL OF MY CASE. I UNDERSTAND THAT MY FAILURE TO COOPERATE COMPLETELY WITH MY ATTORNEYS WILL BE A GROUND FOR MY ATTORNEYS TO WITHDRAW FROM REPRESENTING ME. IN THE EVENT MY ATTORNEYS ARE ABLE TO MAKE A RECOVERY FOR ME ON MY CASE AND ARE UNABLE TO LOCATE ME AFTER MAKING ALL REASONABLE EFFORTS TO DO SO, I HEREBY AUTHORIZE THEM TO ENDORSE THE SETTLEMENT DRAFTS FOR ME AND ON MY BEHALF TO HOLD MY PORTION IN TRUST FOR ME UNTIL I CAN BE LOCATED. I FURTHER AGREE THAT IF THE LAW OFFICES OF GARY EUBANKS & ASSOCIATES IS UNABLE TO LOCATE ME WITHIN ONE (1) YEAR OF PLACING MY PORTION OF ANY SETTLEMENT IN TRUST, A **DORMANCY FEE** OF $100 PER MONTH WILL BE CHARGED AGAINST MY TRUST BALANCE SO LONG AS SUCH BALANCE IS GREATER THAN $0.

_Bobby_ _____ _8/4/05_ .    _____    _____
CLIENT                          DATE              CLIENT              DATE

_Admin of Estate of Johnie Stephens_

THE ABOVE EMPLOYMENT IS HEREBY ACCEPTED ON THE TERMS STATED AND WE AGREE TO MAKE NO CHARGE FOR SERVICES UNLESS RECOVERY IS HAD IN THIS MATTER.

**GARY EUBANKS & ASSOCIATES**

BY: _Robert L Rountree_ _____
ATTORNEY AT LAW

# EXHIBIT "A"



Attorneys at Law

October 3, 2005

Bobby J. Stephens
4005 Royal Oak Drive
North Little Rock, AR 72116

     RE:    Preservation of Pharmaceutical Records for
             Johnie Stephens, SSN 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

Dear Mr. Stephens:

     Please find enclosed the letter which was sent to Kroger Pharmacy on behalf of
your father's estate.

     Should you have any questions, please feel free to contact us.

                      Sincerely yours,

                      Ashley Ohlde
                      Trial Assistant to
                      Robert L. Rountree, JD, DABT
                      Attorney at Law
                      Board-Certified Toxicologist

/ao

enclosure

**EXHIBIT "B"**

708 West Second Street ◆ P.O. Box 3887 ◆ Little Rock, Arkansas 72203-3887
(501) 372-0266 ◆ (800) 522-5260 ◆ FAX (501) 688-7741 ◆ Web site: www.garyeubanks.lawoffice.com
622 Malvern Ave. ◆ Hot Springs, Arkansas 71901 ◆ (501) 623-2234 ● FAX (501) 623-4596



Attorneys at Law

October 3, 2005

Susan Clayton
Kroger Division Office
Via Fax: (901)765-4213

        RE:    Preservation of Pharmaceutical Records for
               Johnie Stephens, SSN 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

Dear Ms. Clayton:

        Please consider this letter as a formal request that Kroger Pharmacy 02500639, located
at 2509 McCain Blvd., North Little Rock, AR 72116, and that Kroger's Legal Department, take
all necessary affirmative steps to preserve discoverable evidence. In this regard, it is requested
that Kroger Pharmacy immediately place its document retention policy on hold. It is further
requested that Kroger Pharmacy not destroy or modify any documents, software, logs, e-mail or
other paper, digital or electronic records pertaining to the Pharmaceutical records for the above
indicated individual, for the period of 1999 to present.

        In this regard it should be noted that a mere backup of computer hard drives is not
adequate for preservation. Hard drives must be imaged in bit stream copies whereby all areas
used and unused are copied. It is requested that all deleted files that are reasonably
recoverable be immediately un-deleted and preserved.

        The materials described in this letter are discoverable pursuant to the Rules of Civil
Procedure and it is the intention of Plaintiff's counsel to pursue such discovery.

                                Sincerely yours,

                                Robert L. Rountree

                                Robert L. Rountree, JD, DABT
                                Attorney at Law
                                Board-Certified Toxicologist

RLR/ao

cc:     Bobby J. Stephens
        4005 Royal Oak Drive              **EXHIBIT "C"**
        North Little Rock, AR 72116

708 West Second Street ◆ P.O. Box 3887 ◆ Little Rock, Arkansas 72203-3887
(501) 372-0266 ◆ (800) 522-5260 ◆ FAX (501) 688-7741 ◆ Web site: www.garyeubanks.lawoffice.com
622 Malvern Ave. ◆ Hot Springs, Arkansas 71901 ◆ (501) 623-2234 ◆ FAX (501) 623-4596

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION 4

BOB STEPHENS, INDIVIDUALLY and as ADMINISTRATOR
for the ESTATE of JOHNIE STEPHENS, Deceased

4 - 06 - C V - 0 259 WRW ... ▓                      PLAINTIFF

V.

This case assigned to District Judge _____
and to Magistrate Judge _____

MERCK & CO., INC., a New Jersey
Corporation                                         DEFENDANT

## COMPLAINT

Comes now the Plaintiff: Bob Stephens, Individually, and as the Administrator of the

Estate of Johnie Stephens, deceased,  by and through their attorneys, Gary Eubanks & Associates,

and for their Complaint against the Defendant, Merck & Co., Inc., (hereinafter "Merck") a New

Jersey corporation, allege and state:

### I. PARTIES

1. Decedent Johnie Stephens was a resident of Pulaski County, Arkansas, until his death

on or about March 2003. Decedent was prescribed, purchased and ingested Vioxx from on or

about November 2000, through on or about March 2003, in or around Pulaski County, Arkansas.

2. Defendant Merck is a foreign corporation, with its principal place of business in

Whitehouse Station, New Jersey, doing business in the State of Arkansas.

3. At all relevant times Merck itself, or by use of others, did research, develop,

manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell,

promote, advertise, warn and otherwise distribute Vioxx in interstate and international commerce

including the State of Arkansas.

## EXHIBIT "D"

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). There is complete diversity of citizenship between Plaintiff and Defendant.

5. The amount in controversy exceeds $75,000, exclusive of interest and costs, and attorney fees.

6. This is a claim by citizens of the State of Arkansas against a Defendant that is a foreign corporation that transacts business within the State of Arkansas.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III. FACTUAL BACKGROUND

8. Decedent Johnie Stephens ingested Vioxx from on or about November 2000, through on or about March 2003, and sustained a fatal heart attack on or about March 2003.

9. Vioxx (rofecoxib) is classified as a nonsteroidal anti-inflammatory drug (NSAID) with anti-inflammatory, analgesic and antipyretic properties. As such, it is indicated for pain, dysmenorrhea, osteoarthritis and rheumatoid arthritis. The earlier marketed NSAID products (i.e., ibuprofen, naproxen, etc.) are approved for similar indications.

10. Vioxx was approved by the U.S. Food and Drug Administration (hereinafter "FDA") in May 1999.

11. Vioxx is a cyclooxygenase-2 (COX-2) selective inhibitor and as such should have lower incidence of gastrointestinal upset and a lower ulcerogenic potential. However, inhibiting the COX-2 enzyme selectively causes an imbalance between prostacyclin (PGI) and thromboxane A-2 (TX A2). Because "TX A2 is a major compound in the clotting process, and is a potent platelet aggregator and vasoconstrictor," the resulting imbalance between PGI and TX

2

A-2 places patients at an increased risk of thromboembolic events, primarily heart attacks and strokes. *The Merck Manual (16ᵗʰ ed. 1992).*

12.   Merck, the maker of Vioxx, is also the publisher of *The Merck Manual* (16ᵗʰ ed. 1992), which includes the following definition: "Thromboxane A-2 is a major compound involved in the clotting process, and is a potent platelet aggregator and vasoconstrictor." This section of *The Merck Manual* was not included in the 17ᵗʰ edition, published 1999.

13.   Merck-employed physicians, as well as industry leaders supported by Merck, have published on the subject of COX-2 induced inhibition of prostaglandin synthesis and TX A-2, creating a pro-thrombotic state that places patients at an increased risk of heart attacks and strokes. See *Effects of Specific Inhibition of Cyclooxygenase-2 on Sodium Balance, Hemodynamics and Vasoactive Eiosanoids,* 289 (2) PHARMACOLOGY & EXPERIMENTAL THERAPEUTICS (May 1999).

14.   In June of 2000, Merck submitted to the FDA a safety study called VIGOR (Vioxx Gastrointestinal Outcomes Research) that found an increased risk of serious cardiovascular events, including heart attacks and strokes, in patients taking Vioxx compared to patients taking naproxen. In the VIGOR study, analysis of the cardiovascular data by the Safety Monitoring Board focused and commented on "the excess deaths and cardiovascular adverse experiences in the Vioxx group compared to the naproxen group."

15.   On September 17, 2001, the Division of Drug Marketing, Advertising, and Communication (DDMAC) issued the following warning letter to Merck: "*You (Merck) have engaged in a promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the VIGOR study, and thus misrepresents the*

3

*safety profile for Vioxx.*"

16. In 2000, Merck spent $130 million on direct to consumer advertising.

17. In 2001, Merck spent $166 million on direct to consumer advertising.

18. An estimated 24 million people worldwide, including 13 million Americans, have been prescribed Vioxx.

19. Shari L. Targum, M.D. of the FDA, Division of Cardio-Renal Drug Products, in the February 1, 2001, Review of Cardiovascular Safety Database states: In analyzing adverse events in VIGOR, "it can be seen that . . . there is an increased risk of MI and stroke in the Vioxx group compared with naproxen; in the MI group, the 95% confidence interval is significant." "This analysis could lead one to conclude that naproxen . . . would be the preferred drug."

20. D.M. Mukherjee et al. in February 2001, after analyzing the data from the VIGOR study declared "it is mandatory to conduct a trial specifically assessing cardiovascular risk and benefit of these agents." Mukherjee DM, Nissen SE, Topol EJ. *Risk of cardiovascular events associated with selective COX-2 inhibitors.* JAMA 2001; 286: 954-9. Neither Merck nor the FDA acted on this recommendation by studying further the cardiovascular effects of patients on Vioxx.

21. Annual Vioxx sales exceeded $2.5 billion in 2003.

22. On September 30, 2004, Merck officially announced a voluntary withdraw of Vioxx from all markets worldwide in light of unequivocal results from a clinical trial demonstrating that Vioxx doubles the risk of heart attack and stroke for those who take the product long term. The company's decision is based on three-year data from a prospective, randomized, placebo-controlled clinical trial, APPROVe (Adenomatous Polyp Prevention on VIOXX).

4

23.  Despite knowledge of both the general pharmacology related to Vioxx, and the specific cardiovascular risks demonstrated in the APPROVe and VIGOR studies, Merck has failed to initiate studies to investigate the cardiovascular risk associated with Vioxx.

## IV. TOLLING THE APPLICABLE STATUTES OF LIMITATIONS

24.  Any applicable statutes of limitations have been tolled by Defendant's affirmative and/or intentional acts of concealment, suppression and denial of the facts as alleged herein. Decedent was kept ignorant of vital information essential to the pursuit of these claims without any fault or lack of diligence on their part.  Decedent could not reasonably have discovered the defective and dangerous nature of Vioxx prior to the recall September 30, 2004.

25.  Defendant was, and is, under a continuing duty to disclose the true character, quality and nature of Vioxx to Decedent.  Defendant is estopped from relying on any statute of limitations defense because of its concealment of the true character, quality and nature of Vioxx. Defendant knew or should have known that this information was not available to the Plaintiffs but was crucial information needed to safeguard the health of those individuals who ingested Vioxx.

26.  As a result of this concealment Decedent was deprived of informed consent regarding their ingestion of a dangerous drug and were deprived of information necessary to make a risk benefit assessment.

## V. CLAIMS FOR RELIEF

### COUNT I. FRAUD AND DECEIT

27.  Plaintiff realleges, as if fully set forth herein. each and every allegation contained in the paragraphs above, and further allege:

5

28.  Defendant had available research and medical studies which clearly indicated that its product caused increased risk of heart attacks and stroke.  Defendant was under a duty to disclose this information to Decedent, and refused to do so.

29.  The misrepresentations and omissions were made deliberately, willfully, and maliciously to mislead Decedent into reliance and action thereon.

30.  Decedent had no opportunity to determine that Defendant's representations were false and misleading, and that the representations included material omissions.  Decedent reasonably relied thereon to his substantial detriment and injury.

31.  By reason of their reliance on Defendant's misrepresentation and omissions, Decedent was gravely harmed by Defendant's product.

32.  As a result of Decedent's ingestion of Vioxx, Decedent sustained a stroke or heart disease as more fully set out herein.  In addition, Plaintiff and Decedent suffered, injuries, including but not limited to, pain, physical limitations, visual problems, paresthesias, paralysis, mental anguish, and death.

33.  Defendant is liable for punitive damages for its reckless and wanton or willful disregard for the public's safety in their concealment and denial of adverse events related to its drug Vioxx, all done to maximize sales and profit at the expense of the public's health and safety.  Defendant knew or should have known, in light of the surrounding circumstances, that its conduct would naturally and probably result in damage and injury to the Decedent and others, yet they continued such conduct with malice or reckless disregard of the consequences from which malice may be inferred.  Defendant is therefore liable for punitive and exemplary damages as provided by Arkansas law.

6