## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | MAG. JUDGE KNOWLES |
| This document relates to ALL ACTIONS | * | |
| | * | |

### AFFIDAVIT

**STATE OF NEW JERSEY  :**

                          **SS**

**COUNTY OF BERGEN   :**


SCOTT LAVERY, being duly sworn according to law deposes and says:


1. I am employed by the law firm of Weiner Carroll & Strauss.


2. As part of my duties since mid-2006, I have been involved in the preparation, review, and submission of documents relating to Vioxx litigation undertaken by Weiner Carroll & Strauss on behalf of numerous clients.


3. With regard to the Plaintiff Liaison Committee, or Plaintiff Steering Committee, on numerous occasions I attempted to contact them for input, advice, clarification, etc.  Some attempted contacts were by phone, some by email, there was even a face-to-face encounter.  No help was ever provided; in fact, phone calls were not returned nor were emails answered.


4. Although phone logs do not exist, I recall attempting several calls to Russ Herman's office in early 2007 to ascertain status of the "MDL Package."  I never heard back from anyone.

5. I also recall attempting to contact Chris Seeger in early 2007 regarding status of the "MDL Package." I never received a response from anyone in his office.

6. I attach a copy of my notes from a Case Management Conference on June 28, 2007, in Atlantic City convened by Judge Higbee (Exhibit "A"). Page 5 summarizes a brief, curt meeting with Mr. Dave Buchanan (member of Seeger Weiss, part of the PSC) during which I inquired about help obtaining information or copies of discovery documents, depositions, etc. The only suggestion was that I come to Mr. Buchanan's office, and there I could work at a desk and review all the millions of pages they had compiled. That was the full extent of their "help."

7. I also attach a copy of an email sent to Mr. Russ Herman of the PLC on January 3, 2008, requesting clarification of Judge Fallon's PTO 28 and the need for a very large and potentially expensive mass mailing (Exhibit "B"). I never received the courtesy of a response.

I hereby certify that the above statements made by me are true. I am aware that if any of the above statements made by me are willfully false I am subject to punishment.

Sworn to and subscribed before me this

6th day of May 2009.

Scott Lavery

DATE: 5/6/09

Leslie L. Ziskis

LESLIE ZISKIS
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES DEC 17 2009

# EXHIBIT A

July 2, 2007

**TO:**   RJW
       RSC
       CA

**SUBJ:**  Notes from VIOXX Case Management Conference June 28, 2007

Meeting began about 10AM; Merck was represented by 7 attorneys, Plaintiffs had about 25 individuals present; Judge Carol Higbee presided over the meeting.

There were three agendas put forward—one by Merck, one by Plaintiffs' Counsel, and one from the Court—and they were discussed in that order.

**<u>Merck Agenda:</u>**

1. <u>Update on Discovery Process</u>
   190 of the initial 250 cases have had depositions of plaintiff and spouse completed;
   20 more cases have depositions scheduled;
   3 cases will require the Court's intervention

   Plaintiffs' Counsel raised the concern that Dechert was taking far too many depositions—as many as 6 or 7, including "golfing partners." They felt that "core fact discovery" has been stated by the Court as the primary short term goal. Merck replied that they were deposing those individuals that had "relevant knowledge" and that even a "golfing partner" might have relevant knowledge if the event occurred on the golf course.

   Judge Higbee ruled that Dechert should be concentrating on the plaintiff and spouse only at this point in time. An exception would be made for cases involving the plaintiff's death, in which case the Judge would allow depositions of other parties such as treators, prescribers, etc.

2. <u>Authorization Collection Issues</u>
   Merck expressed concern that a number of firms were taking 30 days or more to produce blank authorizations. They proposed that Merck be allowed to hold the authorizations rather than the plaintiff's attorney. It was noted that there is already a ruling in place requiring blank authorizations to be provided within 3 days.

   Judge Higbee ruled that Dechert should file a motion identifying those firms that are not providing authorizations in a timely manner.

3. <u>Fall Trial Cases</u>
   This item was deferred since it is also included in the Court's agenda.

1

4. Communications with Doctors
   Merck expressed concern with a letter sent by Susanne Scovern of Audet &
   Partners, LLP to Dr. Murray Sokoloff (copy attached). After much discussion,
   Judge Higbee agreed with Merck that the tone of the letter seemed to overstate the
   situation. She also mentioned that Dr. Sokoloff is probably a very special case
   because of his close relationship with Merck. Finally the Judge ruled that a
   second letter should be drafted by Ms. Scovern, clarifying the situation and using
   a "nicer tone." In addition, Merck's counsel should see the letter first and have a
   chance to comment if they feel it necessary.


**Plaintiffs' Agenda:**

1. October 2007 Trial Setting
   This item was deferred since it is also on the Court's agenda.

2. Motion to Dismiss Premised on *Forum Non Conveniens*
   Judge Higbee stated she was neutral on this issue and did not feel a deadline was
   necessary as proposed by Plaintiffs' Counsel.. Both sides agreed to set up a
   conference call to discuss further.

3. Outstanding Discovery Issues
   a. Discovery Requests related to Drs. Honig and Reicin
      Judge Higbee commented that she had reviewed the files and directed that
      a conference call be set up between the three parties (defendants,
      plaintiffs, the court) to discuss.

   b. VICTOR Productions
      Item deferred to the Court's agenda

   c. *Jennie Tena v. Merck & Co, Inc*
      The issue is that some 1099's from Dr. Sokoloff are missing. Merck
      claims to have attempted to recover them from their files but has been
      unsuccessful. Plaintiffs' Counsel requested that Merck provide a
      certification that they had in fact made a good faith attempt. Merck agreed
      to provide such a certification.

4. Defendant's Proposed *De Bene Esse* Depositions
   Plaintiff Counsel contends that such depositions will not be useful due to
   upcoming changes, especially with regard to the soon-to-be-released VICTOR
   data. Defense counsel advised the Judge that she had just received an email that
   Judge Fallon had just ruled that Merck can go forward with *De Bene Esse*
   depositions.

Judge Higbee attempted to reach Judge Fallon during the morning break but was unable to do so—therefore, she deferred any ruling on this issue until she can discuss with Judge Fallon.

## Court's Agenda:

1. Pro Hoc Admissions
   Judge Higbee presented two reports of Pro Hoc Admissions put together by the NJ Lawyers Protection Fund. Of 173 lawyers admitted Pro Hoc, only 135 are fully paid up. There appeared to be many discrepancies with the lists. Sol Weiss agreed to take the list and manage the process of getting them correct.

2. Prejudgment Interest Motions
   Judge Higbee indicated she would be ruling on this issue in the very near future.

3. VICTOR Data
   Judge Higbee reiterated her view that the data from this report is of importance to all parties.

   Plaintiffs' Counsel contends that Merck has not provided all the data from Oxford. This assertion is based on the opinion of their statistical expert that the data they have been given do not support the conclusions drawn in the study. Therefore, some of the data are missing.

   Merck contends that they have asked Oxford for all the data; Oxford has sent them everything; and they, in turn, have passed it on to Plaintiffs' Counsel. If Plaintiff's Counsel feels something is missing, then Plaintiffs' Counsel should identify in detail what is missing and Merck will contact Oxford and request it.

   Judge Higbee cut off the debate and made the following rulings:
         --Granted Plaintiffs' Counsel request to depose someone from Merck that has detailed information on the relationship between Merck and Oxford and can resolve all the issues and misunderstandings that currently exist. The deposition should take place in the next 2 – 3 weeks.
         --Ruled that Plaintiffs' Counsel should draft a letter to Merck requesting, in detail, what information they feel may be missing. This is to be done by Friday, July 6th. Once Merck has reviewed the letter, and the depositions referred to above are taken, then the letter will be finalized and given to Merck for response.

   Judge Higbee also ruled that the VICTOR article would be approved as evidence in the upcoming Fall trials, even though is may not yet be published. The New England Journal of Medicine has now apparently approved it for publication. Given that approval and positive peer approval, she will accept it as evidence.

3

4. <u>October Trials</u>
   a. <u>Relevant State Law</u>
      Consumer fraud issues will be governed by NJ State Law.
      Product liability issues will be governed by the local State Law.

   b. <u>Rutan Case</u>
      Will be taken off the agenda as one of the five cases. Plaintiff is now
      deceased and an administrator has yet to be appointed

   c. <u>Scheduling of Fall Trials</u>
      Trials will start immediately following Columbus Day (October 8th). Jury
      can report for selection on October 9th, and all pre-trial matters will be
      handled between then and October 12th. This will leave the weeks of
      October 15th, October 22nd, October 29th, November 5th, and November
      12th for the Trials. They must be completed by the week of Thanksgiving
      because of the Judicial recess.

      Judge Higbee mentioned that her goal was a 3 – 4 week trial.

   d. <u>Deadline for Expert Reports and Depositions</u>
      Judge Higbee directed both sides to discuss, work out appropriate dates,
      and get back to her with them.

   e. <u>Restrictions</u>
      To achieve her goal of a 3 – 4 week trial, Judge Higbee discussed the
      following restrictions:
         -<u>Time limits for witnesses:</u>  will most likely be 2 – 2 ½ hours of
      direct examination, and 2 – 2 ½ hours for cross examination. Perhaps
      each side will be allowed one exception. Judge Higbee requested both
      sides to provide feedback on this issue.
         -<u>Limits on the number of witnesses:</u> By August 1st, both sides
      should exchange witness lists; in general 8 – 15 witnesses each. Plaintiffs'
      Counsel and Merck to discuss and make recommendation to Judge
      Higbee. She also discussed allowing a larger list of witnesses (say 20) but
      each side would only be allowed to call a portion of the list (10, for
      example).
         -<u>Limits on exhibits:</u>  list up to 100 exhibits.
         -<u>Limits on number of learned treaties</u>: limited to 50
         -<u>Limits on number of amendments</u>: will allow a max of 3 – 5 new
      exhibits or learned treatises.

5. <u>Merck's Trial Team</u>
   Judge Higbee asked that Merck provide their trial teams assigned to each case (to
   be provided in August).

The meeting was adjourned about 3:30 PM.

Following the conference, I also spoke briefly with Mike Ferrarra, Dave Buchanan, and Sol Weiss. I was attempting to get help in obtaining access to discovery that had already gone on. I had been told that a database of documents existed. I inquired of Mr. Buchanan and received a very short reply. I could come to their offices and they would put me in a room with a computer and I could review the millions of pages of discovery in their database. Beyond that, there was no offer of help or even a suggestion that someone at the firm's office could work with me explaining how to access the various documents. We would have to go through them all just as they had.


Scott Lavery

# EXHIBIT B

| Subject | Vioxx Litigation |
|---|---|
| From | <rjwvioxxperson@optonline.net> |
| Date | Thursday, January 3, 2008 4:23 pm |
| To | rherman@hhkc.com , |

Dear Mr. Herman:

I hope you can help answer a question for us regarding Judge
Fallon's Pre-Trial Order #28...more specifically the notification to pharmacies, physicians, etc to preserve records
relevant to the plaintiff's claim.

Does this notification go out to all such third-parties...or only to those from whom we have not yet received
records?

Since the order directs that this notification be sent via registered mail, each piece is around $10.  Sending
registered mail to everyone (as opposed to only those that have not yet provided information) is an expensive
proposition.

In addition, I have been trying to access the
LMI repository to see if Merck has obtained any of those records we are missing.  So far I have sent an email and
left three phone messages...and have not heard a word from them (our claims spreadsheet has been submitted
to BrownGreer).

Any advice?  Obviously, since the notification is to go out by next week, a quick response would be appreciated.

Thanks for your help.


Scott Lavery
Vioxx Claims Administrator
Weiner Carroll & Strauss