UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAG. JUDGE KNOWLES |
| * * * * * * * * * * * * * * * * * | * | |

THIS DOCUMENT RELATES TO ALL CASES

### NOTICE OF OBJECTION TO PLC'S MOTION FOR AWARD OF COMMON BENEFIT COUNSEL FEES AND REIMBURSEMENT OF EXPENSES

Comes the Kentucky Vioxx Working Group ("KVWG"), an association of the law firms of Bubalo, Hiestand & Rotman, PLC, the Oldfather Law Firm, and Dolt, Thompson, Shepherd & Kinney, PSC, and in accordance with this Court's Order of April 16, 2009, hereby files this Notice of Objection to the PLC's Motion for Award of Common Benefit Fees and Reimbursement of Expenses.  As a discovery and briefing schedule have not been outlined by the Court as of this filing, a detailed memorandum in support of this Objection will be forthcoming.  Briefly, however, the KVWG states that:

1. The firms involved in the KVWG executed a Full Participation Agreement (attached hereto as Exhibit 1) on November 15, 2005, pursuant to PTO 19.

2. The MDL Full Participation Agreement called for an assessment of three percent (3%) of a claimant's gross recovery (2% fees and 1% costs) as full and final satisfaction of any obligation on the part of a claimant and the participating attorneys.  This agreement,

along with PTO 19, provides the only framework necessary for resolving the issue of common benefit fees.

3. Unlike the Traditional Assessment Option and Limited Waiver Option, as described and set out in PTO 19, the Full Participation Option ***does not allow*** for modification of the percentages, either by agreement or court order.  Despite this fact, the NPC (comprised mainly of counsel also involved in one of the other many MDL committees) unilaterally re-wrote the original deal when "negotiating" the settlement and awarded itself a significantly higher assessment, without the consultation and consent of participating attorneys, including the KVWG, and without prior court approval.  Further, while the agreement does allow for the future application of "class action fees", that is not what the PLC's motion is seeking and in fact, these two types of fees are fundamentally different and should not be treated as interchangeable by the Court.

4. Contrary to the PLC's assertion, the "parties" did not negotiate the common benefit fees provision of the Master Settlement Agreement ("MSA").  In fact, in Section 9.2.6 of the MSA, Merck affirmatively states that it "***takes no position*** regarding . . . the award of common benefit fees."  (Emphasis added.)

5. The unilateral decision to include a self-serving fee award by the insertion of Section 9.2.1 as part of the MSA, with its self-serving proclamation that it supersedes PTO 19, amounts to breach of the PSC's contract with the KVWG and all full participating attorneys, as well as a breach of the PSC's duties and obligations owed to participating attorneys.

6. Section 1.2.8 of the Master Settlement Agreement required Enrolling Counsel to recommend enrollment in the Resolution Program to 100% of eligible claimants, and to

withdraw from any case in which the claimant refuses to enroll. In evaluating whether clients should participate in the RP, attorneys *could not* consider Section 9.2 on an arms length basis because doing so would have placed them in an impermissible conflict of interest with their client. Specifically, it would be impossible under the terms of the agreement, which were not subject to review by individual counsel prior to the MSA being finalized, for an attorney to object to the 8% common benefit assessment while at the same time recommending enrollment to a client, as enrollment required that the clients and counsel sign off on a release indicating all terms were reasonable and agreeable. Moreover, the NPC, by inserting this clause, essentially attempted to force an implied consent to their increased fee upon attorneys throughout the country as those attorneys met their duty to their clients whose best interests were served by participation in the RP.

7. An 8% assessment (plus costs) is not warranted in this case. First, this assessment is not consistent with other pharmaceutical mass tort cases. Second, the sheer number of Vioxx claimants presumptively entitled to some compensation under the MSA (approximately 30,000 according to reports at the monthly MDL status conferences), warrants a lower assessment. Third, the NPC was negotiating for its own interests since each of its members had numerous cases that would benefit from any settlement. Fourth, the NPC negotiated for a fixed fund of $4.85 Billion, the sheer size of which militates against a common benefit assessment of 8% plus costs. Fifth, this common benefit assessment is Twenty Five Percent (25%) of the entire fee, a percentage more in keeping with an originating attorney's interest in the fee when that originating attorney has actually worked on or had responsibility for the file.

8. This Court has already significantly reduced the amount of attorney fees that individual attorneys may collect to a cap of 32% of the gross recovery. By granting the PLC's motion to award 8% of the gross recovery as common benefit compensation, which must be paid out of the individual attorney's fees, the individual attorney's fees are effectively reduced to 24% of the gross award. This is an unfair and unreasonable result for the individual attorneys who have invested considerable time and shouldered substantial costs in acquiring, screening, and preparing their clients' cases. The KVWG had approximately 23 cases pending in state courts that are not part of any consolidated action, and so the undersigned attorneys have undertaken countless hours of discovery and pretrial activities in these cases alone, not including time and efforts spent on the cases pending in one of the consolidated jurisdictions. Moreover, the staffing and overhead cost incurred for these cases was taken on by attorneys such as the KVWG, whether these cases were successful or not. And substantial expense has been required by the complex and heavily administrated RP. If the Court is going to reduce the participating attorneys' fees, it ought not allow this *increased* expense to those participating attorneys to affect a further reduction in *their* compensation from these case.

9. In setting the 2% + 1% assessment, the Full Participation Agreement specifically considered (1) the inclusion of attorneys not associated with the PSC who may nonetheless be entitled to compensation for common benefit work and (2) the potential for a global settlement. The PLC even acknowledges that one of the PSC's primary responsibilities as fixed by the Court was to effectuate settlement. As such, the PLC's argument that neither the participation of numerous common benefit fund applicants or

the responsibility for settlement was contemplated when the PSC agreed to the 2% + 1% assessment set out in the Full Participation Agreement and PTO 19 is meritless.

10. The PLC's request for a common benefit fee award of 8% of the gross settlement "fund" of $4.85 Billion is unfair and unprecedented. The request for a percentage of the total "fund" does not take into account portions of the overall fund that are required to be set aside for administrative expenses and will not be part of any claimants' gross recovery. For example, by seeking 8% of the total $4.85 Billion settlement "fund", the PLC backtracks on its prior commitment that any claimant receiving the $5,000 fixed payment under the MSA would not be subject to a Common Benefit Fee deduction.

For these reasons and others that may be submitted in accordance with a forthcoming discovery and briefing schedule, the KVWG hereby submits its Notice of Objection to the PLC's Motion for Award of Common Benefit Counsel Fees and Reimbursement of Expenses.

Respectfully submitted,

/s/ Gregory J.Bubalo
Gregory J. Bubalo
Leslie M. Cronen
BUBALO, HIESTAND & ROTMAN
9300 Shelbyville Road, Suite 215
Louisville, KY 40222
(502) 753-1600

Ann B. Oldfather
OLDFATHER LAW FIRM
1330 S. Third Street
Louisville, KY 40208

Tyler Thompson
Liz Shepherd
DOLT, THOMPSON, SHEPHERD & KINNEY
13800 Lake Point Circle
Louisville, KY 40223
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Notice of Objection has been served upon Liaison Counsel, Phillip Wittman and Russ Herman, by U.S. Mail, an upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 7th day of May, 2009.

        /s/ Gregory J.Bubalo
    **Gregory J. Bubalo**