UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| | \*    CIVIL ACTION  MDL-1657 |
| In re: VIOXX PRODUCTS | \* |
| LIABILITY LITIGATION | \*    NO. 2:05-CV-01657-EEF-DEK |
| | \*    JUDGE ELDON E. FALLON |
| | \* |
| | \*    DIVISION 3 |
| | \*    MAGISTRATE DANIEL E. KNOWLES III |
| This document relates to all cases | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## STRATTON FAXON'S NOTICE OF OBJECTION TO THE PSC FEE REQUEST

In accordance with this Court's order, undersigned files this notice of objection to the PSC fee request. In particular, as full participating counsel, it is requested that the fee contracts entered into between full participating counsel and the PSC be honored.

While this Court did not require briefing on the objection, a memorandum accompanies this objection in hopes that it will frame the debate and issues to be discussed at the status conference.

Dated:  May 5, 2009                 /s/ Michael A. Stratton
                                     Michael A. Stratton, 08166
                                     STRATTON FAXON
                                     59 Elm Street
                                     New Haven, CT 06510
                                     Phone: (2030 624-9500
                                     Fax: (203) 624-9100
                                     mstratton@strattonfaxon.com

                                     Plaintiff's Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Objection has been served on all counsel

by U.S. Mail and e-mail or by hand delivery and email and upon all parties by

electronically uploading the same to LexisNexis File & Serve Advanced in accordance

with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk

of Court of the United States District Court for the Eastern District of Lousiana by using

CM/ECF system which will send a Notice of Electronic Filing in accord with the

procedures established in MDL 1657, on this 5th day of May, 2009.

/s/ Michael A. Stratton

Michael A. Stratton, 08166
STRATTON FAXON
59 Elm Street
New Haven, CT 06510
Phone : ( 203) 624-9500
Fax:  (203) 624-9100
mstratton@strattonfaxon.com

Plaintiff's Counsel

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| | \* | CIVIL ACTION  MDL-1657 |
| In re: VIOXX PRODUCTS | \* | |
| LIABILITY LITIGATION | \* | NO. 2:05-CV-01657-EEF-DEK |
| | \* | JUDGE ELDON E. FALLON |
| | \* | |
| | \* | DIVISION 3 |
| | \* | MAGISTRATE DANIEL E. KNOWLES III |
| This document relates to all cases | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## STRATTON FAXON'S OBJECTION TO THE PSC FEE REQUEST

### A.    Summary of the Objection

In June 2005, the Plaintiff's Steering Committee (hereinafter the "PSC") claimed that it was "imperative" that they be allowed to contract with full participating counsel for a historically low non-traditional fixed fee.  The PSC insisted that the offering of such a non-traditional fee assessment in a time-limited manner would encourage immediate cooperation and trust.  The PSC drafted a contract called the Full Participation Option (hereinafter "FPO Contract") (Exhibit C). This contract made it clear, without exception, that assessments on any and all future recoveries made by counsel would be capped at 2% fees and 1% costs.

After argument in favor of allowing the PSC to enter into the FPO Contract, this Court approved the FPO Contract and two other options: the traditional assessment option and the limited waiver option.  See PTO #19.  This Court expressly ruled that it was reserving the power to amend, "for good cause shown", the fee assessments called for under the traditional assessment and limited waiver options.  No such judicial authority was reserved for the non-traditional FPO Contract.  The FPO Contract was

intended to engender trust.  As such, it was drafted and approved so that it would apply regardless of changed circumstances on all participating cases.

Within 18 months of PTO #19, secret negotiations commenced between appointees of the PSC, other common benefit attorneys, and Merck.  Prior to the announcement of a settlement, the plaintiff's representatives unilaterally inserted a clause into the agreement that purported to "supercede" PTO #19 and abrogate the FPO Contracts entered into by the PSC and participating counsel.  Upon information and belief, Merck did not negotiate this addition to the settlement agreement.  Moreover, neither this Court nor participating FPO Contract counsel were consulted.  It was inserted without negotiation to further the self interests of the plaintiff's representatives.

On January 20, 2009, the plaintiff's liaison counsel Russ Herman (hereinafter "PLC") moved this Court to award the common benefit attorneys 8% fees/2% costs. This request ignored the contractual rights of participating attorneys with FPO Contracts and asked for a 4 fold increase for fees and a 2 fold increase for costs.

In his petition (page 5) seeking an 8% assessment, Attorney Russ Herman, eloquently, as always, quotes Rabbi Hillel:

> If I am not for myself, who will be for me? But if I am only for myself, who am I? If not now, when?

We ask a different set of questions:

> If we cannot rely on a signed contract, what can we rely on?  If we cannot trust those appointed to be our fiduciaries, who can we trust?  If not now, when?

We ask very simply for the enforcement of a clear contract that was entered into by participating counsel in good faith with an expectation that it would be enforced.

2

**B**.     **Applicable Legal Standard**

Traditionally, the Court in a consolidated mass tort case is provided the discretion

to determine fees payable to common benefit attorneys. See, e.g., In Re: Propulsid

Litigation, MDL 1355. Oftentimes, at the end of a case, an MDL Court will, based on

changed circumstances, increase or decrease its initial assessment for common benefit

attorneys. See, e.g, In Re: San Juan Dupon Hotel Fire Litigation, MDL 721; In Re:

Celebrex-Bextra Litigation, MDL 1699.

The Vioxx case is distinct from any other mass tort MDL in that the PSC drafted

and signed FPO Contracts with certain attorneys.  No other reported mass tort case

involves the offering of actual contracts limiting the common benefit attorneys' fee.  This

Court in PTO #19 noted that this was a non-traditional contract based fee cap.

Moreover, this Court expressly reserved its right to modify the fee cap only for those

opting for a traditional assessment option.

With regard to the settlement agreement with Merck, this Court was given

"express authority to modify any provision of the Agreement… if the Court determines

that the provision is prohibited or unenforceable to any extent…"  In Re: Vioxx Litigation,

574 F.Supp.2d 606, 614 (E.D. La. 2008).

This Court noted that "settlement agreements such as the one currently before

the Court will become more common" and that because of the number of victims and

settlement size they tend to "capture the public's attention".  Id. at 613. Concern was

noted that "disproportionate results and inconsistent standards threaten to damage the

public's faith in the judicial resolution of mass tort litigation by creating the impression of

inherent unfairness."  Id.

3

This Court intervened to cap contingency fee contracts between participating lawyers and their clients. It was reasoned that while courts "should be reluctant to interfere into contractual relationships . . . special concerns about possible oppression and overreaching by an attorney require that [the Court examine the contingency fee contracts and impose caps]". Id. at 615.

## C.    The FPO Contract and its History

In June 2005, the PSC came to this Court and argued that "it is imperative that the Court immediately enter the form of order which we have proposed providing for an assessment of 3% (2% fees/1% costs) of the gross amount awarded to plaintiffs whose counsel accepts the Full Participation Option in the next 90 days. This will create an immediate incentive for counsel to participate in the MDL." PSC Petition at 15 (June 29, 2005) (Exhibit A).

At the July, 2005 status conference, the PSC reiterated the need for contracts to be entered into by it and counsel willing to cooperate with the PSC: "The proposal that we have filed with the Court includes three options. The first option we call the full participation option, and it calls for a two percent assessment for attorney's fees plus one percent for costs. This option is designed to foster cooperation and coordination between the lawyers that are litigating cases in the MDL in federal courts and those in state court litigation." Transcript of July 19, 2005 Status Conference, at 21 (Testimony of Andrew Birchfield on behalf of PSC) (Exhibit B).

Attached to the PSC petition were actual contracts drafted by the PSC. The FPO Contract contained the following clause: "It is the intention of the parties that such assessment shall be in full and final satisfaction of any present or future obligation on

4

the part of each Plaintiff and/or Participating Attorney to contribute to any fund for the payment or reimbursement of any legal fees, services or expenses incurred by, or due to, the MDL and /or any Common Benefit Attorneys." FPO Contract at 1 (Exhibit C).

When the PSC proposed the contracts, they were aware that the case would require great effort on behalf of common benefit counsel: "There is every reason to believe that this PSC and associated counsel will perform at least as much work as the PSC in Propulsid" PSC Petition at 13 (June 29, 2005) (Exhibit A).

The PSC was also aware that the fees proposed by their contract were lower than any other pharmaceutical litigation case: "*I'm not aware of any pharmaceutical MDLs with an assessment that low, but that's designed to foster cooperation.*" Transcript of July 19, 2005 Status Conference, at 21 (Testimony of Andrew Birchfield on behalf of PSC) (Exhibit B).

The full participation option was understood to be an unorthodox solution to a unique set of circumstances. "Unlike Propulsid and other similar cases, the Vioxx MDL presents itself to this Court with a unique history... To address this situation, the PSC proposes to create an MDL assessment fund that welcomes counsel who consent to fully participate in this litigation by providing them with a reduced assessment on all of their cases while allowing counsel who later choose to coordinate with the MDL what has become a traditional method of assessing claims." PSC Petition, at 13 (June 29, 2005) (Exhibit A).

The full participation option made it clear that the only exception to the 2%/1% cap was in the event of a class action settlement benefiting unrepresented claimants under Rule 23 of the Fed. R. Civ. P. See, e.g., In Re: PPA Litigation, MDL 1407. As

stated in the FPO Contract, "[i]t is understood and agreed that the PSC and common benefit attorneys may also apply for class action attorneys fees and reimbursement of costs...."   FPO Contract, ¶ 6 (Exhibit C).

The fund created by the FPO Contract was intended to be available to any common benefit attorney whether or not a member of the PSC including attorneys who performed common benefit work in the state court litigation.  See FPO Contract, ¶ 3 (Exhibit C).

The FPO Contract also anticipated that participating counsel would have the right to be involved in any settlement negotiations with Merck.  See  FPO Contract, ¶ 8a. The FPO Contract did not contain any exceptions to the fee cap in the event of a privately negotiated settlement with Merck.  See id.

This Court adopted the FPO contract and permitted the PSC to offer the FPO Contract to interested counsel.  See PTO #19.  Many counsel, including undersigned, agreed (on behalf of themselves, their referring lawyers and their clients) to the terms of the FPO Contract and entered into a contract with Merck for the reduced fee option.

Then, at a point more than 2 years later, the PSC inserted a provision into the private resolution agreement with Merck that attempted to nullify the FPO Contracts signed by it and the participating FPO Contract counsel. These terms were inserted without dialogue with the participating attorneys.  Further, these terms were unilaterally offered by the PSC and were not part of any negotiated settlement with Merck.

**D.    The Arguments Made By the PSC to Avoid The FPO Contract are Flawed and Unpersuasive**

Russ Herman, the PLC, in his 8% petition, makes several arguments in favor of ignoring the FPO Contracts. As set forth below, each of these arguments is fatally flawed:

### 1. The FPO Contract Contains No Exception For Global Settlements or Other Private Settlements - it was Intended to Apply to All Settlements Without Exception

The PLC posits that the FPO fee cap of 2% was not intended to apply to the type of settlement reached in this case. To support this position, the PLC relies *in toto* on a footnote in the original PSC fee petition. This footnote states:

> "It is not intended that the Court's order be applied to any global or class action settlement reached in the litigation. In the event there is a recovery in any action certified as a class action under Fed. R.Civ.P. 23 plaintiffs intend to apply for an award of attorney's fees and costs in accordance with governing law, which does not place a defined limit on the award of fees and costs...."

PSC Petition, at 6 n. 6 (Exhibit A).

Attorney Herman asserts that the insertion of this footnote in the Petition as a "perspicacious" reservation of the PSC's right to nullify the FPO contracts. He claims that this reservation was sensible because at the time this petition was filed the PSC anticipated 30,000 trials. This claim is made despite the fact that every mass tort case cited and relied on in his brief and the original June, 2005 PSC Petition ended in a complete and total mass settlement. See, e.g., In Re: Propulsid, MDL 1355; In Re: Rezulin, MDL 1348.

Most damaging to the PLC's argument that the PSC reserved its right to ask for more money if there was a mass settlement is the actual FPO Contract drafted and

signed by the PSC.  None of the cases cited by the PSC involve a case like Vioxx where an actual contract was voluntarily signed between the PSC and the participating lawyers.  And, while the petition may ambiguously refer to global settlements, the FPO Contracts drafted by the PSC and approved by this Court do not contain this language.

The FPO Contracts provide one and only one exception to the cap of 2%/1%. This exception is for class action settlements.  In the event of a class action settlement, the PSC may ask for fees in excess of the cap.  There is no provision for modification in the event of a mass private settlement.  In fact, the FPO Contract is clear that this was not be the case: "It is the intention of the parties that such assessment shall be in full and final satisfaction of any present or future obligation on the part of each Plaintiff and/or Participating Attorney to contribute to any fund for the payment or reimbursement of any legal fees, services or expenses incurred by, or due to, the MDL and /or any Common Benefit Attorneys." FPO Contract, at 1.

The term global appears nowhere in the contract, nor is it even defined in the petition.  It appears to be nothing more than an extraneous term used in the petition to clarify the exemption for class actions.  There is nothing perspicacious about it.

If the PSC intended to carve out mass settlements from the impact of the FPO Contract, they should have done so explicitly in the FPO Contract – which they did not. While we cannot guess exactly why such language was omitted, we certainly know that its inclusion would have defeated the main objective of the PSC in fostering cooperation, not competition.  Since virtually all mass torts end with some sort of mass settlement, a provision in the FPO that the cap would not apply to mass settlements would have created an uproar leading to a lack of participation.

8

Members of the PSC were chosen in this case because they were among the most experienced mass tort litigators in the country.  These attorneys should not be allowed to rely on a term in a footnote extrinsic to the contract, which term was specifically omitted from the contract, to advocate for the abrogation of that contract and a 400% increase in the amount of fees claimed.  Moreover, Fifth Circuit law is clear that where a contract is unambiguous and expressive of the intent of the parties, the agreement must be enforced as written.  See Tiger Ins. Co. v. Eagle, 294 Fed. Appx. 920 (5th Cir. 2008).  Finally, even if there were ambiguity (which there is not) any ambiguity under the doctrine of Contra Proferentem would be construed against the drafter and in favor of the non drafter – here the participating attorneys.  High v. E-Systems, 459 F.3d 573, 578-79 (5th Cir 2006).

### 2. Relying on this Court's Inherent Power to Modify Assessments is Improper in the Context of this Unique Case Where the PSC Offered and Signed FPO Contracts

The second argument made by the PLC is that abrogation of the FPO Contracts are justified by the way MDL courts traditionally handle assessments.  In support of this assertion, the Turner case as well as the Guidant and Celebrex/Bextra MDLs are cited as examples of where Courts revisited the initial fee assessment orders and increased them.

The difficulties with this argument are twofold.  First, none of the cases cited by the PLC involve a fee contract drafted by a PSC and executed by both the PSC and the participating attorneys.  The examples given were all cases where the Court – without any contract in place - initially set an assessment, then changed it as circumstances changed.  Here we have a binding contract that cannot be reformed or modified absent

some traditional defense to an illegally onerous contract such as undue influence, duress, fraud, impracticality, or impossibility. Moreover, this Court has already ruled that it should not interfere with contracts unless there is the possibility of oppression and overreaching.

Second, when the fee contract was proposed by the PSC, they recognized that much work remained to be done and that the fee assessment was non-traditional and much lower than other pharmaceutical mass torts: "*I'm not aware of any pharmaceutical MDLs with an assessment that low, but that's designed to foster cooperation.*" Transcript of July 19, 2005 Status Conference, at 21 (Testimony of Andrew Birchfield on behalf of PSC) (Exhibit B).

In other words, the PSC willingly capped their fees forever to gain the benefit of cooperation. This situation was not present in any other litigation or MDL noted by the movant. This was not a traditional assessment that flexibly moved with changing circumstances and work effort. It was unique and should be enforced as an arms length negotiation between the parties.

### 3. There is no "Quality Work" exception to the enforcement of the FPO Contract

The third argument made by the movant is that the results were so good and the participation so great that a greater fee is warranted. Undersigned has no quarrel with the work done by common benefit counsel. The work was good but there is no exception to enforcement of a contract for good work. We expect good work. The PSC was well aware when they advocated for the FPO Contracts that the fee was lower than the norm and that much work remained to be done: "There is every reason to believe

10

that this PSC and associated counsel will perform at least as much work as the PSC in Propulsid." PSC Petition, at 13 (June 29, 2005).

Even if it could be argued that the result was better than expected, this would not allow for modification of the contract. Contracts are entered into for this very reason: to avoid arguments when the outcome is better or worse than expected. Moreover, given that the common benefit attorneys are receiving a contingent 2%, their pay rises with the success of their efforts. As such, they are compensated for better results either in terms of speed, efficiency or amount.

### 4. There is no "Overwhelming Response" Exception to the Enforcement of the FPO Contract

The fourth argument made by the PLC is that the contracts did not anticipate so many common benefit attorneys and that now 8% is necessary to properly compensate all of these attorneys. PLC posits that when the FPO Contracts were entered by the PSC, it was anticipated that the assessment would go to pay only the PSC and those closely associated with them. Now, the PLC asserts the universe of common benefit attorneys has grown to include many state court attorneys and others. This change in circumstance requires, in the PLC's mind, an abrogation of the FPO Contract.

This is perhaps the most disingenuous argument made by the PLC since the main objective of the FPO Contracts was to include as many counsel as possible in a cooperative process. In fact, the FPO Contract states that FPO Contract counsel would have a right to do common benefit work and would be involved in all aspects of the case. Further, the fund created by the FPO Contract was intended to be available to any common benefit attorney whether or not a member of the PSC including attorneys who performed common benefit work in the state court litigation. See FPO Contract, ¶

3. How the PLC could now argue that this cooperation and common benefit work by state counsel was unanticipated is mind-boggling.

### 5. The Gratuitous inclusion of a fee enhancement in the settlement agreement does not override the FPO Contract

The final argument made by the PLC in support of ignoring the FPO Contracts is that the private settlement reached by Merck and agreed to by the plaintiffs included language abrogating the FPO fee contracts and PTO #28.  Admittedly, the settlement agreement does contain such language – however, the undersigned never endorsed this language nor did we agree to a novation of the FPO Contract.  The question, however, is not whether it was in the agreement but rather how such language made it into the agreement.

Certainly, Merck has no dog in this fight. They do not care how much money the common benefit attorneys receive or whether the FPO Contracts are enforced.  So, how then does a clause abrogating the PSC's contractual duties end up in such a contract?  The answer is unfortunately very disturbing: The negotiating team for the plaintiffs and their counsel inserted a self serving provision that benefited the common benefit attorneys to everyone else's disadvantage.  In other words, our fiduciaries used their power to insert a self-enriching provision into the agreement.

For the PSC to now claim that this self serving clause added without negotiation and in breach of their fiduciary duties empowers them to abrogate the FPO Contracts is pure chutzpah.  The very act of inserting this clause without dialogue or negotiation is an actionable attempted breach of contract by the PSC.  It is certainly not a basis for abrogating the FPO Contract.  It is exactly the type of overreaching and oppression this Court has refused to tolerate in capping the individual attorney's fees at 32%.

12

If there is any doubt that this term was added by the PSC without negotiation and in violation of their fiduciary duties, undersigned would ask for discovery from the negotiating team and Merck regarding this issue.

## E. **Summary and Conclusion**

The PSC and some participating counsel entered into FPO Contracts sanctioned by this Court for a 2% fee/1% cost assessment. The FPO Contract clearly specifies that the 2% fee/1% cost provision will dictate all future payouts on any case. These contracts were entered into during voluntary arms length negotiations and it was known that much work was left to be done; that the Vioxx case was unique; that the fees requested were historically low; and that this assessment would be available to all common benefit attorneys in state and federal court.

The integrity of contract in MDL litigation is at stake, as is the trust needed between a PSC and the non-PSC attorneys in an MDL. The future is certain to bring more mass torts. If participating counsel cannot rely on the enforcement of contracts, how will cooperation be achieved in those cases? Who in the future will trust a PSC to negotiate fairly and without self interest if the PSC in this case is permitted to do just that?

The PSC proposed the contracts; they drafted the contracts; they advocated for the contracts; they benefited from the contracts and now they should now be forced to live by the terms of the contracts they signed. This objection is not about PSC performance; it is about PSC credibility.

We ask this Court to enforce the FPO Contracts and allow a 2% fee/1% cost assessment to the common benefit attorneys in these FPO cases.

Dated:  May 5, 2009

*/s/ Michael A. Stratton*
Michael A. Stratton, 08166
STRATTON FAXON
59 Elm Street
New Haven, CT 06510
Phone:  (2030  624-9500
Fax:  (203) 624-9100
mstratton@strattonfaxon.com

Plaintiff's Counsel

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

*******************************************************************************

|  |  |  |
|---|---|---|
|  | * | CIVIL ACTION MDL - 1657 |
| In re: VIOXX PRODUCTS | * |  |
| LIABILITY LITIGATION | * | NO. 2:05-MD-01657-EEF-DEK |
|  | * | JUDGE ELDON E. FALLON |
|  | * |  |
|  | * | DIVISION 3 |
|  | * | MAGISTRATE DANIEL E. KNOWLES III |
| **This document relates to all cases** | * |  |

*******************************************************************************

## ORDER

The foregoing Objection to the PSC Fee Request, having been heard, it is

hereby Ordered:   SUSTAINED / OVERRULED

BY THE COURT,

_____

(JUDGE / CLERK)

15

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Objection has been served on all counsel

by U.S. Mail and e-mail or by hand delivery and email and upon all parties by

electronically uploading the same to LexisNexis File & Serve Advanced in accordance

with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk

of Court of the United States District Court for the Eastern District of Lousiana by using

CM/ECF system which will send a Notice of Electronic Filing in accord with the

procedures established in MDL 1657, on this 5th day of May, 2009.

                              /s/ Michael A. Stratton

                              Michael A. Stratton, 08166
                              STRATTON FAXON
                              59 Elm Street
                              New Haven, CT 06510
                              Phone : ( 203) 624-9500
                              Fax:  (203) 624-9100
                              mstratton@strattonfaxon.com

                              Plaintiff's Counsel

16