UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX<br>PRODUCTS LIABILITY<br>LITIGATION<br><br>THIS RELATES TO:<br>Bob Stephens,<br>Individually, and as the<br>Administrator for the Estate of<br>Johnie Stephens, deceased<br><br>v.<br><br>Merck & Co., Inc.<br><br>Civil Action No. E.D. La. 06-CV-1678<br>　　　　ARE 4-06-CV-0259 WRW | MDL NO. 1657<br><br>Section: L<br><br>Judge Fallon<br>Magistrate Judge Knowles |

## SUPPLEMENTAL DECLARATION OF BOB STEPHENS
## IN RESPONSE TO THE AFFIDAVIT OF GARY EUBANKS

My name is Bob Stephens. I am over eighteen (18) years of age and am fully competent to make this declaration. I have personal knowledge of the facts stated herein and they are all true and correct.

I have read the Reply to the Response to Motion to Enforce Attorney's Lien, the Memorandum in support thereof, the Affidavit of Gary Eubanks and "Collection of Johnie Stephens' Pharmacy Records – Time Line of Events" attached thereto. I disagree with several of the assertions made in these documents and specifically dispute certain facts as explained below.

Gary Eubanks characterizes the conduct of Gary Eubanks & Associates, P.A. ("Eubanks") as "permission for Kroger to reinstate their electronic purge process once the firm had been assured that all of the available electronic records for Johnie Stephens had already been

1

obtained." This statement is misleading at best. First, it falsely assumes that "the firm had been assured that all of the available electronic records for Johnie Stephens had already been obtained." Eubanks has given me what it has represented to be a complete copy of my file. There are no letters or emails from Kroger or notes of any telephone conferences with Kroger wherein Kroger assured or confirmed that all available electronic records for Johnie Stephens had already been obtained.

Next, Eubanks claims that its conduct "in no way affected the hard copy records." Again, this is a very misleading statement. While Eubanks' may not have commented on the paper records in its May 1, 2006 communication with Kroger, its lack of any action has had an effect on what paper records are available. Eubanks admits that it never requested paper records from Kroger and attempts to blame its failure on its lack of prescription numbers. With or without prescription numbers, Eubanks could have obtained the paper records pertaining to Johnie Stephens through the use of a subpoena. Eubanks did not do that, nor did it force Kroger to halt its document destruction procedures and now Kroger's paper records prior to May 2002 have been destroyed.

Eubanks states that my "time line fails to include that between the time that a Preservation of Evidence letter was sent and the time that the electronic purge process was reinstated, Gary Eubanks & Associates, P.A. requested and received from Kroger Pharmacy a complete copy of Johnie Stephens' pharmaceutical records covering the period of March 15, 1993 through March 17, 2003." The reason my time line fails to include any such events is that they did not occur. The only record Eubanks obtained from Kroger prior to, or after, May 1, 2006, the date on which it allowed Kroger to reinstate its purge process, was a faxed computer printout of prescriptions for Vioxx filled for Johnie Stephens by the Kroger Pharmacy,

2

02500639, located at 2509 McCain Boulevard, North Little Rock, Arkansas, on the following dates 09/13/2002; 10/14/2002; 11/13/2002; 12/12/2002; 01/10/2003; 02/08/2003 and 03/12/2003. This printout is not a "complete copy of Johnie Stephens' pharmaceutical records covering the period of March 15, 1993 through March 17, 2003." It shows fewer prescriptions than the printout I gave Mr. Rountree during my initial interview and, as was shown in my previous declaration, I have since obtained from Kroger records that Eubanks never obtained. Therefore, Eubanks' claim that it obtained a complete copy is blatantly false. Furthermore, had Eubanks actually obtained all of Johnie Stephens' records, there would have been no need for it to write its December 14, 2007 letter to Kroger. Additionally, had Eubanks already obtained all of the records, Kroger could have easily responded with "you already asked for this and we already gave you everything we have." Obviously, that is not what happened. Instead, Kroger sent Eubanks a log explaining that it reinstated its purge process pursuant to permission given by Eubanks' staff. Had Eubanks actually requested all records, including archived paper records, but only received a printout showing fewer prescriptions than the printout I had already given Mr. Rountree, it should have questioned Kroger and begun other efforts to obtain proof of the full extent of Johnie Stephens' Vioxx use, especially since I had told Mr. Rountree in August 2005 that my dad had taken Vioxx since November 2000 and that he needed to obtain additional records to prove it. Eubanks' failure to do anything, or even tell me what had happened, after this supposed exchange with Kroger, is proof that Eubanks committed malpractice, breached its fiduciary duty, and supplied good cause for termination. Since these events occurred in 2006, other means of proving the full duration of my father's Vioxx use would have been successful. At that time, Eubanks could have subpoenaed the paper records from Kroger before they were destroyed pursuant to Kroger's seven-year retention policy and could have deposed my mother,

3

who lived with my father and kept up with and dispensed his medications to him. She died on June 13, 2007.

In the last full paragraph on page 3 of the Affidavit of Gary Eubanks, Mr. Eubanks again misleads the court with his argument. My position is not inconsistent. In my affidavit to the Claims Administrator, I explained the efforts that were made to attempt to obtain records of my father's Vioxx use and that such efforts had thus far been unsuccessful. I did not state that Eubanks had done everything it should have and I certainly did not state that the things that were done were done in a timely manner. Indeed, had Eubanks done what it should have done when it should have done it, the Claims Administrator would have awarded a greater number of points.

On page 4 of his affidavit, Mr. Eubanks states that Kroger's records of Johnie Stephens' prescriptions are impossible to locate without the exact Rx number and that it would have been unreasonable to "somehow force[] Kroger to go manually through every box containing two years worth of prescriptions, searching for something that Kroger has indicated may not be there." Obviously, Mr. Eubanks is wrong about the impossibility of such a task and admits this by retreating to an argument that it would have been unreasonable to "somehow" force Kroger to go through every box. Clearly, the "somehow" could have been solved with a subpoena. While Kroger may have been entitled to reimbursement of its expense, expense was not an issue when this problem first came to the attention of Mr. Eubanks himself. See letter of December 14, 2007, attached as Exhibit 1-S to my previous declaration, wherein Mr. Eubanks offered to pay Kroger for any inconvenience. However, Eubanks did not use a subpoena and did not press the issue when Kroger resisted. Furthermore, the task would not have been as daunting as Mr. Eubanks implies. I obtained the records attached to my previous declaration as Exhibit N by supplying Kroger with approximate dates. I did not supply Kroger with the Rx numbers. As for the matter

4

of whether it would have been reasonable to force Kroger to search for the records after it supposedly indicated that the records may not be there, Mr. Eubanks fails to recognize several points. First, if Kroger ever made any such indication it wasn't until 2008, after the error was brought to the attention of Mr. Eubanks and he wrote his letter of December 14, 2007. Second, I know the records were there because I know that my father took Vioxx from November 2000 until his death and I know that Kroger was the only pharmacy he used. Third, I told Mr. Rountree that the records were there and that he needed to get them. Finally, as the Court is aware, it would have been just as easy for Eubanks to send Kroger a subpoena in 2006 as it was to send it a letter in December 2007. The obvious differences are the timing and legal effect. The letter was late and did not force Kroger to do anything. Had a subpoena been served prior to May 1, 2006, Kroger would have been forced to search the paper records and the archives of its computer system, even if such searching would have been difficult or time consuming. As it stands, Eubanks never subpoenaed anything from Kroger, never requested a search of Kroger's computer archives or backup tapes, authorized the destruction of computer archives and backup tapes, and failed to depose the person most knowledgeable about Johnie Stephens' use of Vioxx. In sum, when I hired Eubanks, there was evidence available to prove the full duration of my father's Vioxx use. The pharmacy had electronic and paper records. Also Rosie Stephens, my mother was alive and could testify. Despite my instructions to Mr. Rountree, over the course of the next three and one-half years, the only evidence Eubanks successfully preserved and obtained (other than the printout and medical records I personally supplied), was a computer printout faxed to it by Kroger showing fewer prescriptions than the printout I supplied, and the affidavits of myself and Woodrow Hill, which I suggested after learning that Eubanks had not obtained

anything other than the faxed printout showing fewer prescriptions than the printout I supplied during my initial interview in 2005.

Finally, Mr. Eubanks only attempt to contradict Mr. Dacus' testimony misses the point made by Mr. Dacus, which is that it was not in the best interest of Eubanks to attempt to obtain the records after the appellate record to the Claims Administrator and Special Master had closed. If Eubanks was successful in obtaining records at this late date, those records would serve two potential purposes—(1) to show beyond a doubt that they could have been obtained earlier had Eubanks made the effort, and (2) to supplement the record on appeal to the Special Master and thereby obtain a higher point's award. However, the second purpose could only be fulfilled if the appellate record were to be reopened, an unlikely event. If Eubanks could not get the appellate record reopened, the records would serve only the first purpose. As explained by Mr. Dacus, despite my obvious interest in obtaining the pharmacy records, Eubanks refused to make further efforts to obtain them. In doing so, it chose not to take the risk that I would use the records against it if the appellate record was not reopened.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated May 11, 2009

*Bob Stephens*
Bob Stephens