UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

*****************************************************************

| | | |
|---|---|---|
| In re: VIOXX PRODUCTS LIABILITY LITIGATION | * * * * * * * * | CIVIL ACTION MDL-1657<br>NO. 2:05-MD-01657-EEF-DEK<br>JUDGE ELDON E. FALLON<br>DIVISION 3<br>MAGISTRATE DANIEL E. KNOWLES III |
| This document relates to all cases | * | |

*****************************************************************

## TED B. LYON & ASSOCIATES' OBJECTION TO THE PSC FEE REQUEST

**A.   Summary of the Objection**

In June 2005, the Plaintiff's Steering Committee (hereinafter the "PSC") claimed that it was "imperative" that they be allowed to contract with full participating counsel for a historically low non-traditional fixed fee. The PSC insisted that the offering of such a non-traditional fee assessment in a time-limited manner would encourage immediate cooperation and trust. The PSC drafted a contract called the Full Participation Option (hereinafter "FPO Contract") (Exhibit C). This contract made it clear, without exception, that assessments on any and all future recoveries made by counsel would be capped at 2% fees and 1% costs.

After argument in favor of allowing the PSC to enter into the FPO Contract, this Court approved the FPO Contract and two other options: the traditional assessment option and the limited waiver option. See PTO #19. This Court expressly ruled that it was reserving the power to amend, "for good cause shown", the fee assessments called for under the traditional assessment and limited waiver options. No such judicial authority was reserved for the non-traditional FPO Contract. The FPO Contract was

V1013

___ Fee ___
___ Process ___
_X_ Dktd ___
___ CtRmDep ___
___ Doc. No. ___

intended to engender trust. As such, it was drafted and approved so that it would apply regardless of changed circumstances on all participating cases.

Within 18 months of PTO #19, secret negotiations commenced between appointees of the PSC, other common benefit attorneys, and Merck. Prior to the announcement of a settlement, the plaintiff's representatives unilaterally inserted a clause into the agreement that purported to "supercede" PTO #19 and abrogate the FPO Contracts entered into by the PSC and participating counsel. Upon information and belief, Merck did not negotiate this addition to the settlement agreement. Moreover, neither this Court nor participating FPO Contract counsel were consulted. It was inserted without negotiation to further the self interests of the plaintiff's representatives.

On January 20, 2009, the plaintiff's liaison counsel Russ Herman (hereinafter "PLC") moved this Court to award the common benefit attorneys 8% fees/2% costs. This request ignored the contractual rights of participating attorneys with FPO Contracts and asked for a 4 fold increase for fees and a 2 fold increase for costs.

In his petition (page 5) seeking an 8% assessment, Attorney Russ Herman, eloquently, as always, quotes Rabbi Hillel:

> If I am not for myself, who will be for me? But if I am only for myself, who am I? If not now, when?

We ask a different set of questions:

> If we cannot rely on a signed contract, what can we rely on? If we cannot trust those appointed to be our fiduciaries, who can we trust? If not now, when?

We ask very simply for the enforcement of a clear contract that was entered into by participating counsel in good faith with an expectation that it would be enforced.

V1013

B.   **Applicable Legal Standard**

Traditionally, the Court in a consolidated mass tort case is provided the discretion to determine fees payable to common benefit attorneys. See, e.g., In Re: Propulsid Litigation, MDL 1355. Oftentimes, at the end of a case, an MDL Court will, based on changed circumstances, increase or decrease its initial assessment for common benefit attorneys. See, e.g, In Re: San Juan Dupon Hotel Fire Litigation, MDL 721; In Re: Celebrex-Bextra Litigation, MDL 1699.

The Vioxx case is distinct from any other mass tort MDL in that the PSC drafted and signed FPO Contracts with certain attorneys. No other reported mass tort case involves the offering of actual contracts limiting the common benefit attorneys' fee. This Court in PTO #19 noted that this was a non-traditional contract based fee cap. Moreover, this Court expressly reserved its right to modify the fee cap only for those opting for a traditional assessment option.

With regard to the settlement agreement with Merck, this Court was given "express authority to modify any provision of the Agreement... if the Court determines that the provision is prohibited or unenforceable to any extent..." In Re: Vioxx Litigation, 574 F.Supp.2d 606, 614 (E.D. La. 2008).

This Court noted that "settlement agreements such as the one currently before the Court will become more common" and that because of the number of victims and settlement size they tend to "capture the public's attention". Id. at 613. Concern was noted that "disproportionate results and inconsistent standards threaten to damage the public's faith in the judicial resolution of mass tort litigation by creating the impression of inherent unfairness." Id.

V1013

This Court intervened to cap contingency fee contracts between participating lawyers and their clients. It was reasoned that while courts "should be reluctant to interfere into contractual relationships . . . special concerns about possible oppression and overreaching by an attorney require that [the Court examine the contingency fee contracts and impose caps]". Id. at 615.

C. **The FPO Contract and its History**

In June 2005, the PSC came to this Court and argued that "it is imperative that the Court immediately enter the form of order which we have proposed providing for an assessment of 3% (2% fees/1% costs) of the gross amount awarded to plaintiffs whose counsel accepts the Full Participation Option in the next 90 days. This will create an immediate incentive for counsel to participate in the MDL." PSC Petition at 15 (June 29, 2005) (Exhibit A).

At the July, 2005 status conference, the PSC reiterated the need for contracts to be entered into by it and counsel willing to cooperate with the PSC: "The proposal that we have filed with the Court includes three options. The first option we call the full participation option, and it calls for a two percent assessment for attorney's fees plus one percent for costs. This option is designed to foster cooperation and coordination between the lawyers that are litigating cases in the MDL in federal courts and those in state court litigation." Transcript of July 19, 2005 Status Conference, at 21 (Testimony of Andrew Birchfield on behalf of PSC) (Exhibit B).

Attached to the PSC petition were actual contracts drafted by the PSC. The FPO Contract contained the following clause: "It is the intention of the parties that such assessment shall be in full and final satisfaction of any present or future obligation on

V1013

the part of each Plaintiff and/or Participating Attorney to contribute to any fund for the payment or reimbursement of any legal fees, services or expenses incurred by, or due to, the MDL and /or any Common Benefit Attorneys." FPO Contract at 2 (Exhibit C).

When the PSC proposed the contracts, they were aware that the case would require great effort on behalf of common benefit counsel: "There is every reason to believe that this PSC and associated counsel will perform at least as much work as the PSC in Propulsid" PSC Petition at 13 (June 29, 2005) (Exhibit A).

The PSC was also aware that the fees proposed by their contract were lower than any other pharmaceutical litigation case: "*I'm not aware of any pharmaceutical MDLs with an assessment that low, but that's designed to foster cooperation.*" Transcript of July 19, 2005 Status Conference, at 21 (Testimony of Andrew Birchfield on behalf of PSC) (Exhibit B).

The full participation option was understood to be an unorthodox solution to a unique set of circumstances. "Unlike Propulsid and other similar cases, the Vioxx MDL presents itself to this Court with a unique history… To address this situation, the PSC proposes to create an MDL assessment fund that welcomes counsel who consent to fully participate in this litigation by providing them with a reduced assessment on all of their cases while allowing counsel who later choose to coordinate with the MDL what has become a traditional method of assessing claims." PSC Petition, at 13 (June 29, 2005) (Exhibit A).

The full participation option made it clear that the only exception to the 2%/1% cap was in the event of a class action settlement benefiting unrepresented claimants under Rule 23 of the Fed. R. Civ. P. See, e.g., In Re: PPA Litigation, MDL 1407. As

V1013

3. How the PLC could now argue that this cooperation and common benefit work by state counsel was unanticipated is mind-boggling.

### 5. The Gratuitous inclusion of a fee enhancement in the settlement agreement does not override the FPO Contract

The final argument made by the PLC in support of ignoring the FPO Contracts is that the private settlement reached by Merck and agreed to by the plaintiffs included language abrogating the FPO fee contracts and PTO #28. Admittedly, the settlement agreement does contain such language – however, the undersigned never endorsed this language nor did we agree to a novation of the FPO Contract. The question, however, is not whether it was in the agreement but rather how such language made it into the agreement.

Certainly, Merck has no dog in this fight. They do not care how much money the common benefit attorneys receive or whether the FPO Contracts are enforced. So, how then does a clause abrogating the PSC's contractual duties end up in such a contract? The answer is unfortunately very disturbing: The negotiating team for the plaintiffs and their counsel inserted a self serving provision that benefited the common benefit attorneys to everyone else's disadvantage. In other words, our fiduciaries used their power to insert a self-enriching provision into the agreement.

For the PSC to now claim that this self serving clause added without negotiation and in breach of their fiduciary duties empowers them to abrogate the FPO Contracts is pure chutzpah. The very act of inserting this clause without dialogue or negotiation is an actionable attempted breach of contract by the PSC. It is certainly not a basis for abrogating the FPO Contract. It is exactly the type of overreaching and oppression this Court has refused to tolerate in capping the individual attorney's fees at 32%.

V1013

If there is any doubt that this term was added by the PSC without negotiation and in violation of their fiduciary duties, undersigned would ask for discovery from the negotiating team and Merck regarding this issue.

### E. Summary and Conclusion

The PSC and some participating counsel entered into FPO Contracts sanctioned by this Court for a 2% fee/1% cost assessment. The FPO Contract clearly specifies that the 2% fee/1% cost provision will dictate all future payouts on any case. These contracts were entered into during voluntary arms length negotiations and it was known that much work was left to be done; that the Vioxx case was unique; that the fees requested were historically low; and that this assessment would be available to all common benefit attorneys in state and federal court.

The integrity of contract in MDL litigation is at stake, as is the trust needed between a PSC and the non-PSC attorneys in an MDL. The future is certain to bring more mass torts. If participating counsel cannot rely on the enforcement of contracts, how will cooperation be achieved in those cases? Who in the future will trust a PSC to negotiate fairly and without self interest if the PSC in this case is permitted to do just that?

The PSC proposed the contracts; they drafted the contracts; they advocated for the contracts; they benefited from the contracts and now they should now be forced to live by the terms of the contracts they signed. This objection is not about PSC performance; it is about PSC credibility.

We ask this Court to enforce the FPO Contracts and allow a 2% fee/1% cost assessment to the common benefit attorneys in these FPO cases.

V1013

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Objection has been served on the following counsel by certifed mail, return receipt requested and was filed by U.S. Mail on the Clerk of Court of the United States District Court for the Eastern District of Lousiana, 500 Poydras Street, New Orleans, LA 70130 on this 8th day of May, 2009.

Dated: May 8, 2009.

Bill Zook
State Bar No. 22285500
Law Offices of Ted B. Lyon & Associates, P.C.
Town East Tower, Suite 525
18601 LBJ Freeway
Mesquite, TX 75150
(972) 279-5471 – Office
(972) 279-3021 – Fax
bzook@tedlyon.com

Plaintiff's Counsel

V1013