

May 12, 2009


Eldon E. Fallon
United States District Judge
Eastern District of Louisiana
500 Poydras Street, Room C456
New Orleans, LA  70130


Re:  Vioxx Case Number BC 340272


Dear Judge Fallon:

I wrote to you originally on April 12, 2009 regarding the above case.

I have not heard from you since and all I have received from my Attorney Girardi & Keese is the letter which I am herewith enclosing.

I am also enclosing my response to them.

On December 14, 2007 I received a letter from Winer, McKenna accompanied by a copy of the entire "Settlement Agreement" between Merck and the Counsel.

At that time I read the entire Agreement very carefully and I am aware that in my father's case he met all 3 criteria to be eligible for a settlement.

As per Winer McKenna, Paragraph 4 of the "Injury Gate Criteria" is the most applicable to my father's case because the medical records were were silent as to whether or not there was a myocardial infarction.

My father's symptoms were all indicative of a heart attack:  As per his own handwritten notes (Page 000055 of the medical records) he had a headache with a feeling of having the back of the head and neck swollen, gastro intestinal upset, diarrhea, weakness, shortness of breath, etc.  (I am enclosing a copy of this page).

In addition medical tests showed arrhythmias, CKMB levels to be high, CPK levels to be high, yet his cholesterol and tryglicerides were within normal range.

At the same time, the Ejection fraction was 20%.

The BNP levels were extremely high and this usually indicates damage to the heart tissue.

During 2003 my father ingested Vioxx the entire year and coincidentally he was hospitalized three times that year. He went to the Hospital on an Emergency basis In June, July and December 2003 each time with the same symptoms and each time the Medical records showed abnormal findings which were indicative of heart attacks.

This all happened prior to the announcement that Vioxx caused heart problems.

I need to know if you want me to send you copies of the approximate 500 pages that pertain to medical, lab. Pharmacy, EKG, Arrhythmias records, etc that I have in my possession.

You can see by the letter that I received from Girardi Keese Attorneys that they are trying very hard to disqualify my father's case based on past medical history and age.

<u>This is illegal and fraudelent as past medical history only would reduce points allocated to the case, not disqualify it.</u>

Before we signed the Releases, we understood that my father met all the Criteria to be an eligible Claimant.

You can reach my by telephone at (310)804-3259 or you can write to me at my home address:  13900 Panay Way #SR302 in Marina del Rey, CA   90292.

I am truly confident that you will help us with this matter in an effort to serve Justice.

Sincerely,

Vivian Ross

# WINER, McKENNA & DAVIS, LLP

**www.wmdattorneys.com**

JOHN D. WINER
ALEXIS S. MCKENNA
EMILE A. DAVIS
JENNIFER S. PRISAK
KELLI D. BURRITT

OF COUNSEL
SHANNAN C DUGAN
JUDITH E. WOLFF

December 14, 2007

Vivian Ross
13900 Panay Way
Unit SR 302
Marina Del Ray, CA 90292

Re:   <u>Louis Ross vs. Merck Pharmaceuticals</u>

Dear Ms. Ross:

Pursuant to our conversation yesterday, enclosed please find a copy of the expanded definition of Myocardial Infarction for purposes of the VIOXX settlement.  Paragraph 4 is the most applicable to your father's situation.

As you and I have discussed, the criteria a Claimant must meet in order to be eligible for a settlement are as follows:

1.   The medical records must confirm that the claimant suffered either a heart attack (defined on the enclosed page), ischemic stroke, or sudden cardiac death;

2.   The medical or pharmacy records must establish that the claimant received at least 30 Vioxx pills within the 60 days prior to the injury; and

3.   The medical or pharmacy records must confirm that Vioxx was being used within 14 days of the Vioxx-related heart attack, ischemic stroke, or sudden cardiac death.

The monetary settlement value for your father's case will be established through a complex calculation of (1) key dates and the relationship to the medical event causing your father's injury; (2) type and pattern of his usage of the drug; (3) medical risk factors (including age) at the time the drug was being taken; and (4) permanent damage.  As we have discussed, what cannot be known at this time is the monetary value of your father's settlement.  That will be determined after March 8, 2008, when the actual number of qualified plaintiffs is established. There will then be division of the total gross settlement amount by the number of eligible claimants.  In any event there will be no payments made to any plaintiffs before August. 2008

21990 BURBANK BLVD., 3RD FL.
WOODLAND HILLS, CA 91367
TEL:   (818) 992-3151
FAX:   (818) 992-3153

LAKE MERRITT PLAZA
1999 HARRISON STREET, SUITE 600
OAKLAND, CA 94612
TEL:   (510) 433-1000
FAX:   (510) 433-1001
TOLL FREE: (800) 284-4529

580 CALIFORNIA ST., 16TH FL.
SAN FRANCISCO, CA 94104
TEL:   (415) 434-9300
FAX:   (415) 434-9311

Vivian Ross
Re: Louis Ross vs. Merck Pharmaceuticals
December 14, 2007
Page 2


In order for this settlement to proceed, there is a condition that 85% of all eligible claimants must accept this settlement offer.  In light of the discussions you and I have had recently our firm believes it is in your best interest to accept the settlement as it is described above.

I will write again soon with more details about the VIOXX settlement process.


Sincerely,

WINER, McKENNA & DAVIS, LLP

JENNIFER S. PRUSAK


JSP/em
Enclosure

## EXHIBIT 2.2.1.1

### INJURY GATE CRITERIA

**Definition of Myocardial Infarction.**

1.    A final or discharge diagnosis in contemporaneous medical records of a myocardial infarction or heart attack.

OR

2.    A diagnosis or affirmative finding in the contemporaneous medical records (e.g., a report of consultation) by a cardiologist of a myocardial infarction or heart attack; or, within 14 days of discharge from the hospitalization related to the Event, an independent diagnosis by a treating cardiologist that the Event was a myocardial infarction or heart attack; provided that, in either instance, the final or discharge diagnosis does not rule out a myocardial infarction.

OR

3.    If the medical records are silent as to whether or not there was a myocardial infarction, new pathological Q waves in two or more contiguous leads.

OR

4.    If the medical records are silent as to whether or not there was a myocardial infarction, (a) signs and symptoms described in medical records of a heart attack (including but not limited to chest pain, pressure, tightness or discomfort, pain or discomfort in the upper areas of the body including but not limited to one or both arms, the back, neck, jaw or stomach, or shoulders; shortness of breath, weakness, dizziness, cold sweat, or excessive sweating, nausea, weakness, fatigue, loss of consciousness or posture, lightheadedness, feeling of faintness, heart-burn or indigestion sensations, feelings of restlessness or anxiousness, a sense of impending doom, disorientation, lips, hands or feet turning slightly blue, abnormal heart rhythms (arrhythmias), or loss of consciousness, cardiac arrest, blood pressure fluctuations or drops requiring medical intervention) or new ischemic ST-T wave changes on an electrocardiogram in two or more contiguous leads; AND

(b) a rise and fall of cardiac enzymes that includes a rise in serum creatine kinase MB (CK-MB) to greater than two times the upper limit of normal (based on the individual's laboratory's normal range) or a rise in serum cardiac troponin greater than two times the upper limit of normal that a given laboratory considers diagnostic for infarctions.  (In the event that the laboratory records do not reflect the normal diagnostic range for troponin that is utilized by that specific laboratory, a rise in the troponin to greater than 1.5 ng/ml shall be deemed to indicate a myocardial infarction.)

5.    An event is **not** a myocardial infarction under definition Nos. 3 or 4 above, if myocardial infarction is ruled out as a diagnosis in the discharge summary or by an in-house cardiology consult at the time of the event, or the final diagnosis is angina or unstable angina.

Light headache with a feeling of
having the back of my head and nack swelled.
Swelled legs and feet - DIARRHEA
Gastro-Intestinal Upset - WEAKNESS
Bright red Tongue - Itching and RUNNING Nose
Difficulty Sleeping with the poor breath. -

↑

My Father's Handwriting
His Symptoms.

000055



May 5, 2009


Vivian Ross
13900 Panay Way, Apt. SR302
Marina Del Rey, CA 90292

**RE:   Ross vs. Merck**

Dear Ms. Ross:

I believe it is going to be very difficult for the Judge's to rule that Vioxx was the cause of your father's death.

My review of the record indicates that he was 89 and had significant medical issues including a 30 year history of hypertension, a 30 year history of high cholesterol, a previous cerebral accident and a history of congestive heart failure.  With these past medical conditions, I believe the panel will probably come to the conclusion that the Vioxx did not cause the death.


With kind regards,



THOMAS V. GIRARDI
TVG/kc




21239\Cor

May 7, 2009

Girardi Keese Lawyers
1126 Wilshire Boulevard
Los Angeles, CA 90017
Mr. Thomas Girardi

Re: Vioxx Case Number: BC 340272
    Ross v. Merck

Mr. Thomas Girardi:

I am in receipt of your letter dated May 5, 2009.

First of all the matter at hand does not only concern the death but also the heart attacks that were suffered by my father in 2003 while he ingested Vioxx during that entire year.

Secondly the high cholesterol and hypertension were controlled by medication and as a matter of fact when he was hospitalized three times in 2003 the blood tests indicated that cholesterol levels were normal and the blood pressure was not high by any means.

Thirdly the congestive heart failure began after he started taking Vioxx which he first took in 1999. Prior to this time, my father did not suffer from congestive heart failure as per the medical records that I have in my possession which date back to 1995 and 1996.

All of the medical issues such as high cholesterol and high blood pressure are factors which would reduce the points allocated to the case, <u>not disqualify the case, as per the Criteria that was set forth by Merck.</u>

The medical, Lab and EKG records that pertain to the three hospitalizations in 2003 are being examined by independent physicians to ascertain heart attacks.

Once I have those reports I would be happy to mail you copies.

If Brown & Greer, Merck and Plaintiff's Attorneys are working so hard to disqualify 95 per cent of the cases instead of justly settling and compensating all the poor victims, whose pockets is the 4.85 billion dollars going into? Did anyone get paid up front not to settle cases?

I believe that is where Judge Fallon would step in.

Sincerely,


Vivian Ross


Cc: Judge Eldon E. Fallon

Vi
13900 PANAY WAY #SK302
MARINA DEL REY, CA 90292

7006 3230 0002 0417 9787

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF LOUISIANA
500 POYDRAS STREET, ROOM C456
NEW ORLEANS, LA 70130