March 10, 2009

Hon. Eldon E. Fallon
United States District Court
Eastern District of Louisiana

Judge Fallon:

I am a claimant in the Vioxx Litigation. When the Settlement Program was announced in Nov., 2007, I was excited to finally be given an opportunity to receive compensation for a drug that has since been proven to be more poisonous than anyone could imagine. My attorney's description of the best opportunity for me to receive fair compensation for my Vioxx claim only heightened the prospect of participating in the settlement. Now, despite what you keep hearing from members of the PSC, in the opinion of many claimants, this will go down as a very badly negotiated settlement.

Everyone had to sign and return all papers by the end of February, 2008. In the meantime, I discovered the internet was a great avenue for obtaining additional information on the details of the settlement. I became associated with a group sharing information and educating other claimants. It is alarming to discover how few claimants know the details including the risk factors used to deduct points and the calculation of label and consistency adjustments.

MI claimants were especially delighted when we read that interim payments would begin in August, 2008. With the announcement of IS claimants receiving interim payments beginning in February, 2009, most MI claimants took that to mean MI interim payments would be finalized by February 2009. In November, 2008, I posted on our group site my assessment of the numbers we had obtained so far. It was my opinion that with what had been accomplished up to that date BrownGreer would be fortunate to finish interim payments by the end of 2009. Having taught mathematics for 38 years, it was quite obvious BrownGreer was in over their heads. However, a majority of this blame must fall on the shoulders of the Plaintiff Steering Committee. When they met with representatives from Merck in New Orleans to negotiate the final details of this settlement, it is very apparent they allowed Merck to dictate the terms. Not only are some of the risk factors and percentages agreed upon as criteria for point reductions absurd, but statisticians will point out that the reductions for cholesterol and hypertension do just the opposite of what they were intended to do. One attorney from one of firms represented on the PSC was quoted as saying that this issue was fought over in the settlement negotiations for a long time and the PSC allowed it because since, 'all claims are getting charged with it, it just raises the per point value'. You allow claimants with poor cholesterol levels and/or high blood pressure readings to increase their monetary value by using a distorted point value to increase their award.

Horror stories have developed from members of our group whose attorneys were negligent in their duties or simply did not read or understand the whole settlement in order to fill out all paperwork in a responsible manner. When you announced in August, 2008, that fees for plaintiff's lawyers were being capped at 32%, many members of the group felt this was a fair compromise since attorneys did not have to represent us at a trial. Now, a motion has been filed to reconsider the Court's order. I hope you are not swayed in their attempt to solicit additional monies from a settlement that attorneys will presently collect over $1.5 billion in legal fees. A more practical solution would be to cap contingency fees at 30% and appropriate 3% to the common benefit fund, thereby increasing the fees attorneys would receive by 3%. Since 3% of 4.85 billion dollars amounts to $145,500,000, this is by no means a paltry sum.

Many claimants will have their settlement reduced even more by the latest fiasco the PSC has negotiated---the Private Lien Resolution Program. As part of a group insurance plan in the past, I'm well aware that premiums are negotiated on a yearly basis to compensate for any claims filed the previous year. Each of the people in my group experienced double digit increases for premiums over multiple years. In other words, these same insurance companies have already profited by my tragedy.

In closing, I will quote two statement made by you in your order to cap attorney fees:
    (1) "the risk of excessive fees is a special concern here because of the mass nature of the case" and
    (2) "the Court must assess the reasonableness of the contingent fees in light of the fact that the economies of scale have led to a global settlement offering considerable benefit to the attorneys"

Respectfully yours,

*Robert Wozniak*
Robert Wozniak



Robert Wozniak
634 N Sharon Chapel Rd.
West Lafayette, IN 47906

7013 0470 0003

LAFAYETTE IN 479
01 APR 2009 PM 1 T

Hon Eldon E. Fallon
United States District Court
Eastern District of Louisiana
500 Poydras Street
Room C-456
New Orleans, LA 70130