UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
| Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF LOUISIANA, *ex rel.* JAMES D. | * | SECTION L |
| CALDWELL, JR., Attorney General, | * | |
| | * | JUDGE ELDON E. FALLON |
| Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
| versus | * | KNOWLES |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| Case No. 05-3700. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**PAGES**

BACKGROUND.................................................................................................. 2

ARGUMENT .................................................................................................... 3

I.   All Of Plaintiff's Medicaid Claims Fail Because They Are Based On A False Premise – That The State Could Choose What Drugs To Cover Under Its Medicaid Program.......................................................................................... 4

II.   Plaintiff's Claims Fail For Numerous Other Reasons As Well........................... 8

    A.   Plaintiff's Redhibition Claim Fails Because It Was Not A Buyer Of Vioxx And Has No Authority To Sue On Behalf Of Consumers..................................... 8

        1.   The State Was Not A "Buyer" Of Vioxx. .................................. 8

        2.   Plaintiff Cannot Recover On Behalf Of Consumers Under A Theory Of Redhibition Because It Lacks Statutory Authority To Sue......................................................................................... 10

    B.   Plaintiff's LUTPA Claim Fails For Multiple Reasons. ....................... 10

        1.   Plaintiff Cannot Recover For The State's Alleged Losses Under LUTPA Because The State Is Not A Consumer Of Vioxx Or A Business Competitor Of Merck. ........................................... 11

        2.   Plaintiff Cannot Recover Under LUTPA For Alleged Consumer Losses............................................................................ 12

        3.   The LPLA Precludes Plaintiff's LUTPA Claim. ....................... 14

        4.   Plaintiff Cannot Recover Civil Penalties Under LUTPA Because The Provisions Authorizing Them Are Not Retroactive. ........ 15

    C.   Plaintiff Cannot Proceed Under The New Jersey Consumer Fraud Act. ............ 17

        1.   Under Louisiana Choice-of-Law Rules, Louisiana Law, Not The NJCFA, Applies To Plaintiff's Claims. ................................. 17

            a.   Louisiana Law Applies Under Louisiana's Choice-Of-Law Rule For Product Liability Claims. .............................. 18

            b.   Louisiana Law Applies Under Louisiana's Choice-Of-Law Rule For Torts. ........................................................ 18

        2.   Even If New Jersey Law Applied, Plaintiff's NJCFA Claim Would Fail. ..................................................................... 22

i

## TABLE OF CONTENTS
### (Continued)

**PAGES**

    D.      Plaintiff's Unjust Enrichment Claim Fails............................................................ 23

CONCLUSION .................................................................................................................... 24

980479v.1

## <u>TABLE OF AUTHORITIES</u>

<u>PAGES</u>

### FEDERAL CASES

*In re Actimmune Marketing Litigation*, No. 08-2376, 2009 U.S. Dist. LEXIS 36133
(N.D. Cal. Apr. 28, 2009) ................................................................. 13

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .................................................. 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).................................... 3, 4

*Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759 (W.D. La. 2007) ................................... 15

*Central Healthcare Servs., Inc. v. Eterna Petersburg, Inc.*, No. Civ. A. 04-580, 2004 WL
1823036 (E.D. La. Aug. 16, 2004) ...................................................... 12

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 975 F.2d 1192 (5th Cir. 1992) ............................ 11

*Dorsey v. Northern Life Ins. Co.*, No. Civ. A. 04-0342, 2005 WL 20367382 (E.D. La.
Aug. 15, 2005) ......................................................................... 11

*Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Insurance Co.*, 376 F.3d
399 (5th Cir. 2004) .................................................................... 23

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ................................................. 21

*Edmonds v. Levine*, 417 F. Supp. 2d 1323 (S.D. Fla. 2006)...................................... 6

*Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d
1339 (M.D. Fla. 2008) ................................................................. 13

*In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007)................................. 3, 5

*LeBlanc v. Salem*, 196 F.3d 1 (1st Cir. 1999) .............................................. 3

*New Orleans Assets v. Woodward*, 278 F. Supp. 2d 776 (E.D. La. 2003) ................................ 18

*Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.*, 922 F.2d 220 (5th Cir.
1991) ................................................................................. 11

*In re Rezulin Products Liability Litigation*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ...........9, 11, 23

*In re Rezulin Products Liability Litigation*, 524 F. Supp. 2d 436 (S.D.N.Y. 2007) ..................... 6

980479v.1

**TABLE OF AUTHORITIES**
**(Continued)**

**PAGES**

*Skansi Marine, LLC v. Ameron International Corp.*, No. 03-2005, 2003 U.S. Dist. LEXIS 21586 (E.D. La. Dec. 1, 2003) .......................................................................... 17

*Stroderd v. Yamaha Motor Corp., U.S.A.*, No. 04-3040 Section "L"(4), 2005 U.S. Dist. LEXIS 17797 (E.D. La. Aug. 4, 2005) ............................................................... 15

*Surface Preparation & Coating Enterprises, Inc. v. Martin Marietta Manned Space System*, No. 91-4401, 1992 WL 193478 (E.D. La. July 31, 1992)........................................ 12

*In re Vioxx Products Liability Litigation*, 239 F.R.D. 450 (E.D. La. 2006).....................14, 19, 21

*In re Vioxx Products Liability Litigation*, 522 F. Supp. 2d 799 (E.D. La. 2007) ....................... 17

*Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990) ................................................... 5

**STATE CASES**

*Bamburg Steel Buildings, Inc. v. Lawrence General Corp.*, 817 So. 2d 427 (La. Ct. App. 2002) ........................................................................................................................ 23

*Boutte v. Fireman's Fund County Mutual Insurance Co.*, 930 So. 2d 305 (La. Ct. App. 2006) ........................................................................................................................ 21

*Edmonston v. A-Second Mortg. Co.*, 289 So. 2d 116 (La. 1974)................................................. 7

*Garber v. Badon & Ranier*, 981 So. 2d 92 (La. Ct. App. 2008)................................................. 24

*International Union of Operating Eng'rs v. Merck & Co., Inc.*, 929 A.2d 1076 (N.J. 2007) ........................................................................................................................ 20

*In re Lead Paint Litigation*, 924 A.2d 484 (N.J. 2007) ............................................................ 22

*McDarby v. Merck & Co., Inc.*, 401 N.J. Super. 10 (App. Div. 2008)....................................... 22

*McNeely v. Ford Motor Co.*, 763 So. 2d 659 (La. Ct. App. 1999) .............................................. 8

*Minyard v. Curtis Products, Inc.*, 205 So. 2d 422 (La. 1967) .................................................... 23

*Papergraphics International, Inc. v. Correa*, 910 A.2d 625 (N.J. Super. Ct. App. Div. 2006) ........................................................................................................................ 23

*Sanders v. Earnest Jr.*, 793 So. 2d 393 (La. Ct. App. 2001) ...................................................... 8

iv

## TABLE OF AUTHORITIES
### (Continued)

**PAGES**

*Sher v. Lafayette Insurance Co.*, 988 So. 2d 186  (La. 2008)...................................................... 16

*Sinclair v. Merck & Co., Inc.*, 195 N.J. 51 (2008) ...................................................................... 22

*State ex rel. Ieyoub v. Classic Soft Trim*, 663 So. 2d 835 (La. Ct. App. 1995) ........................... 10

*State v. Time, Inc.*, 249 So. 2d 328 (La. Ct. App. 1971)............................................................... 10

*State v. Twin Cities Mem'l Gardens, Inc.*, 997 So. 2d 16 (La. Ct. App. 2008) ........................... 10

## FEDERAL STATUTES

42 U.S.C. § 1396r-8(d)(1)............................................................................................................ 5, 6

42 U.S.C. § 1396r-8(k)(2)(A) ........................................................................................................ 5

Fed. R. Evid. 201.............................................................................................................................. 3

## STATE STATUTES

28 La. Reg. 979 ................................................................................................................................ 5

28 La. Reg. 1639 .............................................................................................................................. 5

2006 La. Acts 218 ........................................................................................................................... 16

La. Civ. Code art. 2298.................................................................................................................. 7, 23

La. Civ. Code art. 2520.................................................................................................................. 8, 9

La. Civ. Code art. 2545 ................................................................................................................... 8

La. Civ. Code art. 3515...................................................................................................................19, 21

La. Civ. Code art. 3542 ..................................................................................................................18, 19

La. Civ. Code art. 3545................................................................................................................... 18

La. Civ. Code Ann. Art. 6................................................................................................................ 16

La. Civ. Code. Ann. art. 2439 .......................................................................................................... 9

v

## TABLE OF AUTHORITIES
### (Continued)

**PAGES**

La. Civ. Code Ann. art. 2520 ................................................................................ 7

La. Rev. Stat. § 9:2800.52 ................................................................................ 14

La. Rev. Stat. § 51:128 ................................................................................ 10

La. Rev. Stat. § 51:138 ................................................................................ 10

La. Rev. Stat. § 51:1407 ................................................................................10, 16

La. Rev. Stat. Ann. § 1:2 ................................................................................ 16

La. Rev. Stat. Ann. § 51:1401 ................................................................................ 12

La. Rev. Stat. Ann. § 51:1402 ................................................................................ 12

La. Rev. Stat. Ann. § 51:1408 ................................................................................ 11

La. Rev. Stat. Ann. § 51:1409 ................................................................................ 7

N.J. Stat. Ann. § 56:8-1 ................................................................................ 24

N.J. Stat. Ann. § 56:8-19 ................................................................................ 7

## OTHER AUTHORITY

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 ............................ 5

980479v.1

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff, the Attorney General of Louisiana, alleges that Merck's conduct caused the State and its citizens to pay for Vioxx® they would not otherwise have purchased.  Plaintiff seeks to recover monies that the State expended through its Medicaid program as well as monies that Louisiana citizens expended on Vioxx directly.  Plaintiff asserts that it is entitled to such recovery under four causes of action:  redhibition; the Louisiana Unfair Trade Practices Act ("LUTPA"); the New Jersey Consumer Fraud Act ("NJCFA"); and unjust enrichment.

As set forth below, plaintiff's claims should be dismissed.  Most fundamentally, plaintiff's Medicaid-related claims fail because they are based on a false premise:  that the State would have denied payment for Vioxx prescriptions under Medicaid had it known about the drug's alleged risks.  In fact, the State lacked discretion under state and federal Medicaid law to deny payment for Vioxx.  Thus, Merck's conduct could not have caused the State's alleged loss.

In addition, each of plaintiff's claims fails for other reasons as well:

- Plaintiff's ***redhibition*** claim fails because the State does not have standing to bring such an action.  Specifically, the State is not a "buyer" of Vioxx as required under the statute, and plaintiff thus cannot allege a redhibition claim based on the State's payments for the drug.  Furthermore, the State lacks statutory authority to bring redhibition claims on behalf of Louisiana citizens based on their Vioxx purchases.

- Plaintiff's claim under the ***LUTPA*** fails for several reasons.  First, plaintiff is neither a "consumer" nor a "business competitor," as required under the statute, and thus cannot bring a LUTPA claim.  Second, plaintiff has not pled a viable theory of causation.  Third, Louisiana's Product Liability Act ("LPLA") precludes LUTPA claims based on a theory of product liability, like the one here.  And fourth, even if plaintiff's LUTPA claims were viable, it could not pursue statutory penalties because those penalties were added to the statute after Vioxx was withdrawn from the market and do not apply retroactively.

- Plaintiff's claim under the ***NJCFA*** fails because Louisiana law governs plaintiff's claims and the NJCFA thus does not apply.  Even if New Jersey law applied, plaintiff's claim would still fail because New Jersey law bars NJCFA claims premised upon an alleged failure to warn about the risks of a product.  In any event, plaintiff's

cause of action would still fail because the State is not a "consumer" and did not engage in a "consumer transaction" protected by the statute.

- And plaintiff's ***unjust enrichment*** claim fails because: (1) it is barred by the same LPLA exclusivity provision that bars plaintiff's LUTPA claim; (2) the Attorney General lacks capacity to exercise *parens patriae* authority on an unjust enrichment claim; and (3) unjust enrichment is, in any event, not available where, as here, the plaintiff alleges other causes of action under law.

For all of these reasons, the Court should dismiss plaintiff's claims in their entirety.

## BACKGROUND

Vioxx is a prescription nonsteroidal anti-inflammatory and pain-relief drug ("NSAID") manufactured by Merck for use in the treatment of osteoarthritis, rheumatoid arthritis, acute pain, primary dysmenorrhea, and migraine headaches. (*See* Second Amended Complaint ("SAC") ¶¶ 10-14.) The United States Food & Drug Administration ("FDA") approved Vioxx for use in the treatment of osteoarthritis on May 20, 1999. (*See id.* ¶ 60.) The FDA approved Vioxx for treatment of rheumatoid arthritis on April 11, 2002 (*see id.* ¶ 61) and for the treatment of juvenile rheumatoid arthritis on August 19, 2004 (*see id.* ¶ 62). Vioxx was available in the U.S. from May 1999 until it was voluntarily withdrawn from the market in September 2004. (*See id.* ¶ 1.)

As the Court knows, Merck and the Negotiating Plaintiffs' Counsel settled approximately 47,000 lawsuits brought by Vioxx users asserting personal injuries in November 2007. (*See id.* ¶ 176.) Governmental entities were not a party to the settlement; under the Master Settlement Agreement negotiated by the parties, "Enrolled Program Claimants and their respective counsel shall be solely responsible to negotiate the satisfaction and discharge of all" governmental liens, including liens under state Medicaid programs. (*See* Master Settlement Agreement § 12.1.1, attached as Ex. 1.)[1]

---

[1]     Although plaintiff's allegations do not refer to any specific provision of the settlement, Merck requests that the Court take judicial notice of it pursuant to Rule 201 of the Federal Rules of Evidence. The fact of the Vioxx settlement and the provisions of the Master Settlement Agreement cannot be subject to reasonable dispute; indeed,

2

Plaintiff, the Attorney General of Louisiana – suing on behalf of the State of Louisiana, its citizens, and the Louisiana Department of Health & Hospitals ("LDHH") – seeks to recover economic losses allegedly incurred by the State Medicaid program and by Louisiana citizens in paying for Vioxx.  (SAC ¶ 193.)  Plaintiff alleges that the State suffered losses because Vioxx was "much more expensive than other NSAIDs."  (*Id.* ¶ 170.)  Plaintiff also alleges that Louisiana citizens suffered economic losses by purchasing Vioxx rather than less expensive alternative medications.  (*Id.* ¶¶ 192; 183 ("[h]ad the citizens of Louisiana known of [the drug's] defects, they would not have purchased Vioxx, nor would Plaintiffs have approved and paid for such purchases").

Based on these allegations, plaintiff asserts claims for:  (1) redhibition; (2) violations of the LUTPA; (3) violations of the NJCFA; and (4) unjust enrichment.  (*See id.* ¶¶ 179-215.)  Plaintiff seeks multiple forms of relief on behalf of both the State and Louisiana citizens, including civil penalties (*id.* Prayer for Relief ¶¶ 4-5, 11); injunctive relief to prevent Merck from reintroducing Vioxx to the market in Louisiana and from engaging in deceptive and misleading marketing practices (*see id.* ¶¶ 7-9); restitution (*id.* ¶ 10); and "ancillary monetary damages," "actual damages," and "treble damages" (*see id.* ¶¶ 10, 12, 14).

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955,

---

Judge Fallon administers the Agreement, making it both "known within the territorial jurisdiction of the trial court" and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Furthermore, the Court may take judicial notice of its own docket, in which the existence and details of the Agreement are acknowledged in numerous filings.  *See, e.g., LeBlanc v. Salem*, 196 F.3d 1, 8 (1st Cir. 1999); *see also* D.15,482 , at 4-8, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Aug. 7, 2008) (describing Agreement, including provisions for resolution of governmental liens).

167 L. Ed. 2d 929 (2007)); *In re Katrina Canal Breaches*, 495 F.3d at 205.  The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (quotation marks, citations, and footnote omitted).

Here, plaintiff has failed to state a plausible claim against Merck with regard to any of its causes of action.  *First*, all of plaintiff's Medicaid claims fail because plaintiff has not alleged a viable theory of causation.  *Second*, plaintiff also failed to sufficiently plead the required elements of its redhibition, LUTPA, NJCFA and unjust enrichment claims.  For all of these reasons, Merck's motion to dismiss should be granted.

**I.      ALL OF PLAINTIFF'S MEDICAID CLAIMS FAIL BECAUSE THEY ARE BASED ON A FALSE PREMISE – THAT THE STATE COULD CHOOSE WHAT DRUGS TO COVER UNDER ITS MEDICAID PROGRAM.**

Plaintiff's claims on behalf of the State boil down to a simple theory of causation: Merck's conduct caused the State to incur losses because it would have refused to cover Vioxx under Medicaid if it had known the facts allegedly concealed by Merck.  That theory is repeated in support of each of the causes of action under which plaintiff seeks recovery for the State: redhibition, LUTPA, NJCFA, and unjust enrichment.  (*See, e.g.*, SAC ¶ 183 ("nor would Plaintiffs have approved and paid for such purchases"); *id.* ¶ 184 ("Had the Plaintiffs known of such redhibitory defects, Plaintiffs would not have paid for Vioxx use by Louisiana citizens"); *id.* ¶ 192 (plaintiff's losses include "paying for Vioxx that they would not have otherwise paid" for); *id.* ¶ 202 ("Plaintiff would not have paid for the drug at all"); *id.* ¶ 212 ("Plaintiffs have been [] impoverished by purchasing or paying for the defective product and/or paying an unjust premium price for the product as opposed to other viable, less expensive, pharmaceutical treatments.").)

980479v.1

But plaintiff's causation theory suffers a fatal flaw:  State and federal law required Louisiana to cover prescriptions for drugs like Vioxx, notwithstanding their purported risks, so long as they were FDA-approved.  Thus, even if Louisiana had wanted to deny reimbursement to Medicaid participants who took Vioxx, it lacked discretion to do so.  And because Louisiana had no authority to deny Medicaid reimbursement for Vioxx prescriptions, plaintiff cannot prove causation under any set of facts.

A state, like Louisiana, that elects to participate in Medicaid in order to receive federal funds must comply with certain federal rules.  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502 (1990).  One such rule is that a state generally may not refuse to pay for prescriptions of a "covered outpatient drug" that is subject to a rebate agreement between the Secretary and the manufacturer.  42 U.S.C. § 1396r-8(k)(2)(A)(i).  At all relevant times, Vioxx was a "covered outpatient drug" that was subject to a rebate agreement between the Secretary and Merck.  (*See* Rebate Agreement, attached as Ex. 2.)[2]  There are a number of exceptions to the general rule that a state must pay for covered outpatient drugs,[3] but none applies here, and plaintiff does not allege otherwise.  Accordingly, at all relevant times, the State was required by federal law to reimburse Medicaid participants who purchased Vioxx.

---

[2]    The Court may consider the fact that Merck has a rebate agreement with the secretary at this stage.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("because the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss"); 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2008) ("The court is not limited to the four corners of the complaint . . . [courts] have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record . . . these items may be considered by the district judge without converting the motion into one for summary judgment.").

[3]    *See* 42 U.S.C. § 1396r-8(d)(1)(B)(i), (k)(6) (off-label prescriptions may be denied if the prescribed use is not medically accepted as described in the FDA-approved label or in federally-sanctioned medical literature); *id.* § 1396r-8(d)(1)(B)(ii), (d)(2) (coverage may be denied if the drug belongs to a statutorily specified category (such as barbiturates) or is prescribed for a statutorily specified treatment (such as smoking cessation)); *id.* § 1396r-8(d)(1)(B)(iii) (if the secretary approves it, the state may execute a special rebate agreement with the manufacturer restricting coverage of the drug); *id.* § 1396r-8(d)(1)(B)(iv), (d)(4) (instead of an "open formulary" (under which the state must cover all FDA-approved drugs), a state may adopt an "exclusive formulary," which allows exclusion of particular uses of particular drugs under certain circumstances).

980479v.1

This requirement was effective even though the State required prior authorization before making payment for certain drugs, including Vioxx, beginning on June 10, 2002.  *See* 28 La. Reg. 979 (May 2002) (Emergency Rule); *see also* 28 La. Reg. 1639, 1640 (July 2002) (notice of intent to promulgate final rule).  While federal law allows a state to adopt a prior authorization program, *see* 42 U.S.C. § 1396r-8(d)(1)(A), it does not allow a state to use the prior authorization program to refuse payment for a covered drug subject to a rebate agreement.  *Edmonds v. Levine*, 417 F. Supp. 2d 1323, 1329 (S.D. Fla. 2006).

Another MDL court presiding over prescription drug litigation dismissed similar claims by the Louisiana AG for precisely this reason.  *See In re Rezulin Prods. Liab. Litig.*, 524 F. Supp. 2d 436 (S.D.N.Y. 2007) ("*Rezulin II*").  In *Rezulin II*, the Attorney General of Louisiana sued two pharmaceutical companies, alleging that they had misrepresented the safety and efficacy of the prescription drug Rezulin.  The district court entered summary judgment against the Attorney General on the ground that "the State of Louisiana was required by federal and Louisiana law to pay pharmacies for the cost of Rezulin prescriptions for Medicaid recipients."  *Id.* at 440. According to the court:

> Federal statutory provisions regulating Medicaid govern what can be included in or excluded from State Medicaid formularies.  They also mandate the medications for which Louisiana is required to pay and the exclusive circumstances under which it could refuse such payment.

*Id.* at 438.  Thus, the court concluded, the alleged injuries could not have resulted from the alleged deception.  *Id.* at 442.

The same is true here.  As in *Rezulin II*, plaintiff seeks to recover Medicaid expenditures based on alleged misstatements about Vioxx, a covered outpatient drug.  (*See, e.g.*, SAC ¶ 182 ("nor would Plaintiffs have approved and paid for such purchases").)  But Merck has a rebate

6

agreement with the Secretary, and Vioxx was approved by the FDA as safe and effective.  Thus, federal law obliged the State to cover all on-label prescriptions.

The absence of a causal link between Merck's alleged misrepresentations and plaintiff's alleged losses dooms every cause of action alleged in the Complaint for recovery of Medicaid dollars.  Plaintiff's redhibition claim must be dismissed because recovery under redhibition requires proof of causation.  *See* La. Civ. Code Ann. art. 2520 (plaintiff "***would not have bought*** the thing had he known of the defect") (emphasis added).  Plaintiff's LUTPA claim likewise fails because such claims also require proof of causation.  La. Rev. Stat. Ann. § 51:1409(A) (authorizing actions to recover losses incurred "***as a result of*** the use of . . . an unfair or deceptive method") (emphasis added).  So too with plaintiff's NJCFA claim (assuming New Jersey law even applied).  N.J. Stat. Ann. § 56:8-19 ("[a]ny person who suffers any ascertainable loss of moneys or property . . . ***as a result of*** the use . . . of any method, act, or practice declared unlawful" may file an action) (emphasis added).  Because the State was required to reimburse Vioxx prescriptions, Merck's alleged conduct could not have caused the State's alleged loss under any of these legal theories.

Finally, plaintiff's Medicaid-based unjust enrichment claim fails for a similar reason.  A claim for unjust enrichment will not lie where a party's enrichment resulted from application of valid law.  *Edmonston v. A-Second Mortg. Co.*, 289 So. 2d 116, 122 (La. 1974) ("only the unjust enrichment for which there is no justification in law or contract allows equity a role in the adjudication"); *see also* La. Civ. Code art. 2298 ("A person who has been enriched without cause at the expense of another person is bound to compensate that person.  The term 'without cause' is used in this context to exclude cases in which the enrichment results from a valid juridical act of the law.'").  Here, the State's alleged loss resulted from the application of Medicaid law – a valid

7

law – and there is thus no reason to allow "equity a role in the adjudication." Thus, plaintiff's unjust enrichment theory fails as well.

## II.   PLAINTIFF'S CLAIMS FAIL FOR NUMEROUS OTHER REASONS AS WELL.

### A.   Plaintiff's Redhibition Claim Fails Because It Was Not A Buyer Of Vioxx And Has No Authority To Sue On Behalf Of Consumers.

Plaintiff appears to base its redhibition claim on two different theories. First, plaintiff alleges that had the state known of Vioxx's alleged redhibitory defects, it "would not have paid for Vioxx use by Louisiana citizens." (SAC ¶ 184.) Second, plaintiff claims that had the "citizens of Louisiana" known of such redhibitory defects, they would not have purchased the drug at all. (*Id.* ¶ 183.) Both theories are fundamentally flawed. The State was not a "buyer" of Vioxx and therefore cannot allege a redhibition claim based on its payments for Vioxx, and the Attorney General lacks statutory authority to bring redhibition claims on behalf of members of the public based on their Vioxx purchases.

#### 1.   The State Was Not A "Buyer" Of Vioxx.

***First***, plaintiff cannot state a claim for redhibition because the State was not a buyer of Vioxx. Under the Louisiana Civil Code, "[t]he existence of [a redhibitory] defect gives a ***buyer*** the right to obtain rescission of the sale." La. Civ. Code art. 2520 (emphasis added); *see also id.* art. 2545 ("[a] seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid"). Based on this statutory language, Louisiana courts have recognized that a plaintiff asserting redhibition must allege that "the seller sold the thing to him." *See McNeely v. Ford Motor Co.*, 763 So. 2d 659, 669 (La. Ct. App. 1999); *see also Sanders v. Earnest Jr.*, 793 So. 2d 393, 408 (La. Ct. App. 2001) (citation

8

omitted) ("A redhibition action cannot be maintained absent [the] relationship [between buyer and seller.]").

Plaintiff cannot satisfy that fundamental requirement in this case.  Plaintiff alleges that: (1) Merck "sold" Vioxx to citizens of Louisiana; (2) those individuals "purchased" it; and (3) plaintiff "approved and paid for" those purchases.  (*See* SAC ¶¶ 182, 183.)  But nowhere does plaintiff allege that it was a "buyer."  Nor could it.  A "buyer" is a person to whom a "sale" is made.  La. Civ. Code art. 2520 ("buyer" may obtain rescission of the "sale").  A "sale" is, in turn, "a contract whereby a person transfers ownership of a thing to another for a price in money."  La. Civ. Code. Ann. art. 2439.  Thus, the "buyer" in the redhibition statute would be the person who purchased Vioxx – not the State.  As one court put it in analogous circumstances, "paying for an object is not the same thing as buying it."  *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 609 (S.D.N.Y. 2005) ("*Rezulin I*").

In *Rezulin I*, the federal court overseeing the MDL proceeding regarding the prescription drug Rezulin dismissed redhibition claims brought by private third-party payors, which, like the State here, alleged that they would not have paid for the drug had they known its alleged risks. *See generally id.*  In rejecting the plaintiffs' redhibition claims, the court noted that the "plain terms of the redhibition statute give the cause of action to a buyer," *id.* at 611, and that third-party payors are not "buyers" within the meaning of that statute, *id.*  The court reasoned that a "buyer" is a person who gains "ownership" of a good, and that the insurers, as third-party payors, "did not gain ownership of the drug within the meaning of the Louisiana Civil Code." *Id.*

The same is true here.  The State of Louisiana never gained ownership or possession of the Vioxx that it financed on behalf of Louisiana citizens.  Instead, the State simply paid a portion of the cost of the drug that was purchased by others.  As a result, the State never had

9

"direct, immediate, and exclusive authority over" Vioxx and does not qualify as a buyer under Louisiana law.  For this reason, the State cannot recover under a theory of redhibition for its Vioxx payments.

        2.      **Plaintiff Cannot Recover On Behalf Of Consumers Under A Theory Of Redhibition Because It Lacks Statutory Authority To Sue.**

*Second*, plaintiff also seeks to bring a *parens patriae* action on behalf of Louisiana citizens under the redhibition statute.  (SAC Preface; Prayer ¶ 15.)  But the Attorney General can only invoke *parens patriae* authority when a statute expressly authorizes such action.  *See State ex rel. Ieyoub v. Classic Soft Trim*, 663 So. 2d 835, 836 (La. Ct. App. 1995) (State had procedural capacity to bring *parens patriae* action for antitrust and unfair trade practice claims based on specific statutory authority in La. Rev. Stat. §§ 51:128, 138, 1407, and 1408).  If a statute does not include such express authorization, the Attorney General lacks procedural capacity to bring suit.  *See State v. Twin Cities Mem'l Gardens, Inc.*, 997 So. 2d 16, 22 (La. Ct. App. 2008) (State lacked *parens patriae* authority to bring receivership claim on behalf of shareholders and creditors); *State v. Time, Inc.*, 249 So. 2d 328, 333 (La. Ct. App. 1971) (State lacked *parens patriae* authority to bring defamation or libel claim on behalf of Louisiana's citizens), *writ denied* 252 So. 2d 456 (La. 1971).

No statute authorizes the Attorney General to bring redhibition claims as *parens patriae* on behalf of consumers here.  Rather, as discussed above, Louisiana's redhibition statute authorizes recovery only by a "buyer."  For this reason too, the redhibition claim should be dismissed.

        **B.**      **Plaintiff's LUTPA Claim Fails For Multiple Reasons.**

Plaintiff's LUTPA claim should be dismissed because:  (1) plaintiff is neither a "consumer" nor "business competitor," as required under the statute; (2) plaintiff has not pled a

viable theory of causation under LUTPA; and (3) the LPLA and redhibition provide the only remedies for allegedly defective products under Louisiana law.  Moreover, even if the claim itself were valid, the statutory penalties plaintiff seeks are only available for conduct that took place after June 2006.

> 1. **Plaintiff Cannot Recover For The State's Alleged Losses Under LUTPA Because The State Is Not A Consumer Of Vioxx Or A Business Competitor Of Merck.**

Plaintiff's LUTPA claim fails because plaintiff is neither a consumer of Vioxx nor a business competitor of Merck.  *See Rezulin I*, 392 F. Supp. 2d 597, 615-16 (insurer could not recover under LUTPA for alleged losses sustained in reimbursing Rezulin prescriptions because it was neither a consumer of the manufacturer's product nor a competitor for the manufacturer's business).

Louisiana law is clear that the recovery of "damages" under LUTPA is limited to:  (1) plaintiffs who engage in consumer transactions with a defendant; and (2) a defendant's business competitors.  *See Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 975 F.2d 1192, 1205 (5th Cir. 1992) (affirming summary dismissal of LUTPA claim because plaintiff did "not qualify as either a consumer or a business competitor"); s*ee also Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220 (5th Cir. 1991) (upholding summary judgment on LUTPA claims alleged by medical clinic because it was neither a "natural person" engaged in a "consumer transaction" nor a "business competitor" of the defendant); *Dorsey v. Northern Life Ins. Co.*, No. Civ. A. 04-0342, 2005 WL 2036738, at *12 (E.D. La. Aug. 15, 2005) (dismissing LUTPA claim under Federal Rule of Civil Procedure 12(b)(6) after concluding that plaintiff was neither a consumer nor a business competitor of defendant).  Similarly, the right to recover restitution is limited to "aggrieved persons," which likewise means consumers and business competitors.  La. Rev. Stat. Ann. § 51:1408.

Plaintiff is clearly not a business competitor of Merck's, but it is not a "consumer" either. Under LUTPA, a "consumer" is "any person who uses, purchases, or leases goods or services." *Id.* § 51:1402(1). Similarly, a "consumer transaction" is defined as "any transaction involving trade or commerce ***to a natural person***, the subject of which transaction is primarily intended for personal, family, or household use." *Id.* § 51:1401(3) (emphasis added). As set forth above, the State of Louisiana is not a natural person. Nor did the State engage in a transaction for its own personal use or consumption. In fact, the State never even had physical possession of the drug. As a result, the State is not a Vioxx consumer and did not engage in a consumer transaction with Merck capable of giving rise to a LUTPA claim. *See Surface Preparation & Coating Enters., Inc. v. Martin Marietta Manned Space Sys.*, No. 91-4401, 1992 WL 193478, at *1 (E.D. La. July 31, 1992) (granting summary judgment to defendant on LUTPA claim; "[b]ecause [plaintiff] is a corporation and not a natural person, no 'consumer transaction' was involved"), *aff'd*, 1 F.3d 1236 (5th Cir. 1993); *Central Healthcare Servs., Inc. v. Eterna Petersburg, Inc.*, No. Civ. A. 04-580, 2004 WL 1823036, at *2 (E.D. La. Aug. 16, 2004) (dismissing LUTPA claim on ground that plaintiff was a business entity and therefore not a "consumer" under the statute).

For this reason alone, the LUTPA claim should be dismissed.

2.    **Plaintiff Cannot Recover Under LUTPA For Alleged Consumer Losses.**

Just as plaintiff is barred from recovering its own alleged losses under LUTPA, it is also unable to recover for losses allegedly sustained by Louisiana citizens. This is so because the State has not alleged a cognizable theory of causation that links Merck's alleged misconduct and the Louisiana citizens' alleged losses.

Plaintiff alleges that Louisiana citizens sustained financial losses as a result of Merck's conduct because they paid "for Vioxx that they would not have otherwise paid" for and incurred

12

"economic losses . . .  by paying a premium price for Vioxx, as opposed to other, less expensive, pharmaceutical treatments."  (SAC ¶ 192.)  But courts across the country have recognized that such a theory of causation is unworkable and, for this reason, have rejected consumer fraud claims in almost identical circumstances.

For example, in *Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d 1339 (M.D. Fla. 2008), the U.S. District Court for the Middle District of Florida dismissed RICO and state consumer fraud claims alleged by third-party payors against the manufacturer of a prescription drug.  There, plaintiffs sought "redress for economic injuries they say they sustained as a result of a 'nationwide, uniform marketing campaign involving fraudulent misstatements and deceptive conduct in the promotion of Seroquel,' an atypical antipsychotic drug." *Id.* at 1341.  The plaintiffs alleged "they were duped into paying . . . for Seroquel . . .where less expensive, and equally safe and effective, alternative treatments existed." *Id.* at 1342.  The court dismissed the claims, finding that this theory of causation was too indirect to support plaintiffs' claims.  According to the court, "[t]he key independent factor in this case stems from the fact that consumers may only obtain Seroquel through a prescription from a physician," each of whom makes an independent medical judgment about whether to prescribe the drug. *Id.* at 1344.  Thus, "establishing that Plaintiffs' injuries were caused by Defendants' misconduct would require an inquiry into the specifics of each doctor-patient relationship implicated by the lawsuit." *Id.*  The court concluded that this type of "intricate, uncertain inquiry" would not be possible in reality and that plaintiffs' theory of causation was therefore unviable. *Id.* (quotation marks and alteration omitted); *see also id.* at 1345-46 (applying same reasoning to state-law claims); *accord In re Actimmune Mktg. Litig.*, No. 08-2376, 2009 U.S. Dist. LEXIS 36133, at *36-37 (N.D. Cal. Apr. 28, 2009) (dismissing TPP state-law consumer-

13

fraud claims; "the relationship between defendants' alleged misrepresentations and the purported loss suffered by the patients is so attenuated, at least on the facts alleged, that it would effectively be nonexistent").

The same is true here. In order to demonstrate a causal link between Merck's alleged conduct and each citizen's alleged loss, plaintiff would have to show how Merck's conduct affected each citizen – a very complex inquiry. Citizens likely received different representations from Merck; their doctors likely had different understandings about Vioxx; and their reasons for taking Vioxx likely differed. Only by addressing each of these questions on an individual basis could plaintiff prove that the citizens sustained a loss as a result of Merck's conduct. But such inquiries would effectively convert this case into the same kind of unwieldy class proceeding that this Court has already rejected in another context. *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 461 (E.D. La. 2006) (denying certification of personal injury claims in part because they "necessarily turn on numerous individualized issues' relating to each Vioxx purchaser's (and his or her physician's) knowledge regarding the risks of the drug and willingness to prescribe/use it despite its alleged risks"). For this reason too, plaintiff's LUTPA claim fails.

3.      **The LPLA Precludes Plaintiff's LUTPA Claim.**

Plaintiff's LUTPA claim must also be dismissed because the LPLA provides the exclusive remedy for claims against manufacturers based on alleged product risks, with the limited exception of claims for redhibition. *See* La. Rev. Stat. § 9:2800.52 ("This Chapter establishes the exclusive theories of liability *for manufacturers for damage caused by their products*. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter.") (emphasis added). As this Court has previously noted, "[t]he plain language and legislative history of the LPLA demonstrate the legislature's intent to make the Act and Louisiana redhibition law the sole

14

vehicles for a suit against a manufacturer for damages arising from a defective product."
*Stroderd v. Yamaha Motor Corp., U.S.A.*, No. 04-3040 Section "L"(4), 2005 U.S. Dist. LEXIS
17797, at *6-7 (E.D. La. Aug. 4, 2005) (Fallon, J.).  *See also Bladen v. C.B. Fleet Holding Co.*,
487 F. Supp. 2d 759, 767-72 (W.D. La. 2007) (dismissing LUTPA claims based on alleged
product defect because LPLA provides the "exclusive" remedy for product liability allegations).

Here, the gravamen of plaintiff's claims is that Merck misrepresented the risk of harm
posed by Vioxx, causing the State and citizens of Louisiana to suffer losses.  (*See* SAC ¶ 15
("Vioxx significantly increased the incidence of adverse cardiovascular and cerebrovascular
events, such as myocardial infarctions (heart attacks), ischemic strokes, hypertension, and deep
vein thrombosis"); *id.* ¶ 201 (Merck "omitted, suppressed, and/or concealed material facts
concerning the dangers and risks associated with the use of Vioxx"); *id.* ¶ 202 (Merck "falsely
and deceptively misrepresented . . . facts of such materiality regarding the safety and efficacy of
Vioxx that, but for such misrepresentations and omissions, Plaintiff would not have paid for the
drug at all, or would have paid for a substantially less expensive alternate medication").)
Accordingly, plaintiff's allegations fall squarely within the exclusive purview of the LPLA, and
its LUTPA claim must be dismissed for this reason as well.

> 4.    **Plaintiff Cannot Recover Civil Penalties Under LUTPA Because The
> Provisions Authorizing Them Are Not Retroactive.**

In addition to its request for damages and restitution, plaintiff also seeks civil penalties
under LUTPA on the grounds that Merck allegedly:  (1) committed intentionally fraudulent acts;
and (2) directed wrongful acts against elderly or disabled persons.  (*See id.* ¶¶ 189-90.)  But the
provisions authorizing those penalties did not exist at the time Vioxx was marketed, and those
later-added provisions are not retroactive.

15

The civil penalties plaintiff seeks were added to La. Rev. Stat. § 51:1407 in June 2006, *see* 2006 La. Acts 218, § 1 (adding subsections (B)-(E) to the statute) – over a year and a half *after* Merck withdrew Vioxx from the market and almost a year after plaintiff filed its initial complaint.  (*See* SAC ¶ 159 (alleging that Merck withdrew Vioxx on September 30, 2004).) Plaintiff is thus seeking to apply these civil penalty provisions retroactively.

Under Louisiana law, however, substantive changes in the law – including the addition of civil penalty provisions – do not apply retroactively unless the Legislature explicitly indicates such an intent.  *See* La. Civ. Code Ann. art. 6 ("In the absence of contrary legislative expression, substantive laws apply prospectively only."); La. Rev. Stat. Ann. § 1:2 ("No Section of the Revised Statutes is retroactive unless it is expressly so stated."); *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 201 (La. 2008) (where an "amendment changes a right to receive penalties" it is "unquestionably substantive, and as such cannot be applied retroactively" absent express direction from the legislature).  Here, plaintiff cannot show that the Legislature expressly stated that these penalties should be imposed retroactively.  The only relevant evidence suggests the opposite; the new penalty provisions contain a prospective effective date, which suggests that the Legislature intended those provisions to apply prospectively.  *See* 2006 La. Acts 218, §§ 1, 3 (amending § 51:1407 to add subsections (B)-(E) and noting that "[t]his Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana.  If vetoed by the governor and subsequently approved by the legislature, this Act shall become effective on the day following such approval."); *Sher*, 988 So. 2d at 200 ("inclusion of language in the enactment setting out a future

16

effective date" shows that the legislature intended only prospective effect).  The claims for statutory penalties should thus be dismissed.

### C.   Plaintiff Cannot Proceed Under The New Jersey Consumer Fraud Act.

Plaintiff's NJCFA claim fails first and foremost because under Louisiana choice-of-law rules, Louisiana's laws – not New Jersey's – govern plaintiff's claims.  But even if plaintiff could invoke the NJCFA, its claim would still fail because:  (1) New Jersey's Product Liability Act ("NJPLA") subsumes all claims based on the alleged risks of a product; and (2) the State is not a "consumer" and did not engage in a "consumer transaction" covered by the statute.

#### 1.   Under Louisiana Choice-of-Law Rules, Louisiana Law, Not The NJCFA, Applies To Plaintiff's Claims.

Plaintiff has asserted a claim under New Jersey law even though plaintiff brought this suit in a Louisiana court on behalf of the State of Louisiana and Louisiana citizens based on injuries that were allegedly incurred in Louisiana.  There is no basis for application of New Jersey law. This "Court has concluded on numerous occasions that the substantive law of the plaintiffs' home states will govern their respective claims against Merck." *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 807 (E.D. La. 2007).  It should do so again.  Under a straightforward choice-of-law analysis, Louisiana's law applies.

"Rather than allow the courts to fashion the conflicts of law rules as many other states have chosen to do, Louisiana has enacted clearly defined and statutorily prescribed conflicts of law principles." *Skansi Marine, LLC v. Ameron Int'l Corp.*, No. 03-2005, 2003 U.S. Dist. LEXIS 21586, at *8-9 (E.D. La. Dec. 1, 2003).  Two such rules potentially apply here; both require the application of Louisiana law.

17

a.      **Louisiana Law Applies Under Louisiana's Choice-Of-Law Rule For Product Liability Claims.**

Article 3545 governs allegations of "[d]elictual and quasi-delictual liability for injury caused by a product."  La. Civ. Code art. 3545; *see also New Orleans Assets v. Woodward*, 278 F. Supp. 2d 776, 780-81 (E.D. La. 2003) (applying article 3545 in a case alleging economic damage caused by a product).  Under the article, such claims "are governed by the law of" Louisiana under either of two scenarios:  "(1) when the injury was sustained in this state by a person domiciled or residing in this state; or (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state."  La. Civ. Code art. 3545.  The first scenario is satisfied here.  Plaintiff asserts losses on behalf of the Louisiana Department of Health & Hospitals and Louisiana citizens, who are domiciled in Louisiana.  It is clear that the State's alleged losses would have been sustained in Louisiana, where reimbursement for Medicaid participants would have occurred.  The vast majority of Louisiana citizens would likewise have sustained their alleged losses in Louisiana, where they purchased Vioxx.  Accordingly, Louisiana law applies.

b.      **Louisiana Law Applies Under Louisiana's Choice-Of-Law Rule For Torts.**

Louisiana law would also apply under Louisiana's choice-of-law rule governing tort claims more generally, article 3542.  That statute directs that "an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."  La. Civ. Code art. 3542.  "That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of" two considerations.  *Id.*

The court first considers "the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual

residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered." *Id.* "[T]he evaluation of factual contacts should be qualitative rather than quantitative," and a court should give greater weight to contacts that "are of the kind that bring into play policies of that state which 'would be most seriously impaired if its law were not applied to the particular issue.'" La. Civ. Code art. 3542 commentary (a).

The court next considers "the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state," as well as "the policies of deterring wrongful conduct and of repairing the consequences of injurious acts." La. Civ. Code art. 3515(2); *id.* art. 3542(2). Both considerations compel application of Louisiana law.

This Court has already held that the personal-injury claims of non-New Jersey residents are not governed by New Jersey law under a very similar set of considerations. *See In re Vioxx*, 239 F.R.D. at 456. It should likewise hold here that plaintiff's NJCFA claim must be dismissed because Louisiana's laws, not New Jersey's, govern plaintiff's claims.

***First*,** Louisiana has far greater qualitative contacts with this dispute than does New Jersey. Louisiana's Attorney General filed the suit, he did so in Louisiana, and he seeks to recover State funds and money spent by Louisiana citizens. Plaintiff is located in Louisiana, received Merck's alleged misrepresentations in Louisiana, paid for Vioxx in Louisiana, and suffered alleged injuries in Louisiana. The only relevance New Jersey has to this case is that Merck is headquartered there.

This Court recently approved the application of Louisiana law under similar facts. In *Truxillo v. Johnson & Johnson*, the plaintiff sued Johnson & Johnson after her doctor performed

19

surgery and the sutures failed, necessitating further medical work.  No. 07-2883, 2007 U.S. Dist. LEXIS 46636, at *1-2 (E.D. La. June 27, 2007).  The plaintiff contended that Johnson & Johnson misrepresented the safety profile of the sutures and sought relief under the NJCFA (among other causes of action).  As here, the only connection New Jersey had to the litigation was the domicile of Johnson & Johnson.  Otherwise, all contacts pointed to Louisiana:  the plaintiff resided there; the operation was performed there; and the sutures had been purchased there.  *Id.* at *8.  After analyzing the factors set forth in articles 3515, 3542, and 3545, the Court held that Louisiana law applied.  "While plaintiff may be correct that any alleged fraud or misrepresentation occurred in New Jersey (the principal place of business for Johnson & Johnson)," the Court noted, "that fact alone does not outweigh Louisiana's interest in this litigation."  *Id.* at *10.

The same is true here.  Plaintiff cannot invoke the NJCFA simply because Merck is domiciled in New Jersey.  Nearly every other fact relevant to this case arose in Louisiana. Failure to apply Louisiana law would thus substantially impair Louisiana's interests.  Applying Louisiana law, in contrast, would not impair New Jersey's interests at all.  Indeed, the New Jersey Supreme Court itself has suggested that it would not expect the NJCFA to apply to consumer-fraud-based claims based on sales of Vioxx in other states.  *See Int'l Union of Operating Eng'rs v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 & n.3 (N.J. 2007).  Thus, the first statutory consideration under article 3542 strongly favors application of Louisiana law.

***Second***, "the policies and needs of the interstate and international systems" strongly favor application of Louisiana law as well.  Under articles 3515 and 3542, the principal policy considerations are the expectations of the parties and the need for compensation and deterrence. Application of Louisiana law best advances both policies.

20

All parties would expect Louisiana law to apply.  Plaintiff's complaint makes this clear; although it pleads an NJCFA claim, the rest of the complaint focuses on Louisiana law.  For example, the plaintiff pleads redhibition and LUTPA claims, which are creatures of Louisiana law (*see* SAC ¶¶ 179-93); and it pleads timeliness of its filing relative to a one-year prescription period, the limitation period that applies to Louisiana claims (*id.* ¶ 8).  Likewise, the State and the citizens on whose behalf plaintiff filed suit could not reasonably have anticipated that New Jersey law would govern LDHH's decision to cover the cost of Vioxx prescriptions for Medicaid beneficiaries.  *See Boutte v. Fireman's Fund County Mut. Ins. Co.*, 930 So. 2d 305, 320 (La. Ct. App. 2006) (Louisiana resident injured while driving in Louisiana "clearly has expectations of protection from and by the laws of Louisiana").  And Merck itself assumed Louisiana law would apply to claims arising out of the sale of Merck products in Louisiana.  Applying Louisiana law would thus "uphold[] the justified expectations" of the parties.  *See* La. Civ. Code art. 3515.

The policies of compensation and deterrence would also be best served by application of Louisiana law.  Although it might be argued that New Jersey has an interest in deterring its citizens' allegedly unlawful conduct in other states, that interest pales in comparison to Louisiana's interest in deterring unlawful conduct in this State.  And New Jersey has no cognizable interest in compensating Louisiana citizens or the State of Louisiana.  *See Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982) ("While protecting local investors is plainly a legitimate state objective, the State has no legitimate interest in protecting nonresident shareholders.").  For these reasons, this Court has itself previously held under New Jersey choice-of-law rules that New Jersey law should not apply to non-New Jersey personal-injury plaintiffs.  *In re Vioxx*, 239 F.R.D. at 456.  Its reasoning there is just as apt here:  "[T]he Court finds that each plaintiff's home jurisdiction has a stronger interest in deterring foreign corporations from personally

21

injuring its citizens and ensuring that its citizens are compensated than New Jersey does in deterring its corporate citizens' wrongdoing." *Id.* at 456. For these reasons, the policies and needs of the interstate system greatly favor application of Louisiana law. And because all of the relevant considerations under article 3542 favor application of Louisiana law, plaintiff's attempt to invoke New Jersey law must fail.

### 2. Even If New Jersey Law Applied, Plaintiff's NJCFA Claim Would Fail.

Even if New Jersey law applied to plaintiff's claims – which it does not – the NJCFA claim would still fail for two reasons.[4]

*First*, the New Jersey Products Liability Act ("NJPLA") provides the exclusive avenue for pursuing claims based on allegations that a manufacturer failed to warn about a risk of harm posed by a product. *See In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007) (the NJPLA replaced all pre-existing product liability claims with "one unified statutorily defined theory of recovery for harm caused by a product"); *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51 (2008) (NJCFA claim barred where "[t]he heart of plaintiffs' case is the potential for harm caused by Merck's drug"); *McDarby v. Merck & Co., Inc.*, 401 N.J. Super. 10 (App. Div. 2008), *certification granted in part and cross-certification denied by* 196 N.J. 597 (2008) (reversing NJCFA verdicts because they were based on the underlying allegation that Merck failed to disclose a risk of physical harm posed by Vioxx and plaintiffs' claims were thus "encompassed within the definition of harm set forth in the PLA").

*Second*, plaintiff did not engage in a "consumer transaction" covered by the NJCFA because it did not purchase a product for its own "individual use." *See Papergraphics Int'l, Inc.*

---

[4]       It is not clear whether plaintiff asserts a right to recover losses allegedly sustained by the State, by Louisiana citizens, or by both. Whatever the intent, however, plaintiff cannot recover on behalf of either the State or Louisiana citizens, for the reasons explained in this section.

980479v.1

*v. Correa*, 910 A.2d 625, 628 (N.J. Super. Ct. App. Div. 2006) (company that purchased ink cartridges for resale could not sue under NJCFA; definition of "'consumer' . . . take[s] for granted that the plaintiff must be the one who in some sense benefits from the use of the good or service in question"); *Rezulin I*, 392 F. Supp. 2d at 617 (dismissing NJCFA claim brought by private insurer for alleged overpayment for prescription drug because the plaintiff in an NJCFA case "must be the one who in some sense benefits from the use of the good or service in question").[5]   Thus, plaintiff's NJCFA claim would fail even if New Jersey law applied.

###   D.   Plaintiff's Unjust Enrichment Claim Fails.

Plaintiff's final claim – for unjust enrichment – fails for many of the reasons explained above.  *First*, the LPLA's exclusivity provision bars all claims other than redhibition for damage caused by a product.  (*See supra* at 16-17.)  *Second*, plaintiff lacks authority to bring an unjust enrichment claim as *parens patriae*.  (*See supra* at 10.)

More fundamentally, however, plaintiff cannot state a claim for unjust enrichment because it asserts the existence of other remedies for the State's alleged losses.  Unjust enrichment is a subsidiary remedy that is unavailable if the law provides another remedy.  La. Civ. Code art. 2298.  *See also Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 407 (5th Cir. 2004) (citing *Minyard v. Curtis Prods., Inc.*, 205 So. 2d 422, 432 (La. 1967) (listing elements for claim for unjust enrichment in Louisiana, including, *inter alia,* no other remedy at law); *accord Bamburg Steel Bldgs., Inc. v. Lawrence Gen. Corp.*, 817 So. 2d 427, 438 (La. Ct. App. 2002).  As plaintiff admits (*see* SAC ¶ 214), the State has, in fact, sought relief through other legal remedies.  And the fact that plaintiff's other asserted claims are not actionable does not mean that it has stated a claim under a theory of unjust

---

[5]       Nor can plaintiff invoke the NJCFA's Attorney General provisions, which are limited to claims brought by the ***New Jersey*** Attorney General.  The NJCFA expressly provides that "'Attorney General' shall mean the Attorney

enrichment.  After all, "it is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied." *Garber v. Badon & Ranier*, 981 So. 2d 92, 100 (La. Ct. App. 2008) (emphasis added).  Indeed, "where there is a rule of law directed to the issue, an [unjust enrichment] action must ***not*** be allowed to defeat the purpose of said rule."  *Id.* (emphasis added).  For this reason too, plaintiff's unjust enrichment claim should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Merck respectfully requests that the Court dismiss plaintiff's claims in their entirety.

Respectfully Submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC  20005

Brian C. Anderson
Matthew M. Shors
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

**ATTORNEYS FOR MERCK & CO., INC.**

General of the State of New Jersey or any person acting on his behalf."  N.J. Stat. Ann. § 56:8-1(b).

980479v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint has been served on Liaison Counsel, Russ Herman, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 9th day of June, 2009.

*/s/ Dorothy H. Wimberly*

980479v.1