UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| GENE WEEKS, KRISTINE CRAMER, | * | SECTION L |
| NATHAN WILKINS, VIRGINIA PICKET, | * | |
| SUSAN SMITH, on behalf of themselves and | * | JUDGE ELDON E. FALLON |
| all other similarly situated, | * | |
| | * | MAGISTRATE JUDGE |
|                       Plaintiffs, | * | KNOWLES |
| versus | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
|                       Defendant. | * | |
| | * | |
| Civil Action No. 2:09-cv-03713 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS IN PLAINTIFFS' FIRST AMENDED COMPLAINT**

      Defendant Merck & Co., Inc. ("Merck") respectfully submits this Memorandum of Law in support of its motion to strike the class allegations in Plaintiffs' First Amended Complaint ("Compl.").

      Plaintiffs seek to represent a putative class of former litigants who alleged personal injuries as a result of taking Vioxx and now claim that they only agreed to the terms of the Master Settlement Agreement because they feared losing their retained counsel. Plaintiffs' class allegations are facially untenable because their class definition is based on subjective standards. As a result, merely deciding who is in the class and who is not would require the Court to engage in case-by-case mini-trials implicating the merits of plaintiffs' claims (and impinging on numerous, privileged attorney-client communications). This Court has previously recognized

981910v.1

that such a class definition is not ascertainable and should thus be stricken.  *See In re Vioxx Prod. Liab. Litig.*, No. MDL 1657, 2008 WL 4681368, at *9 (E.D. La. Oct. 21, 2008).  It should do so again here.

## BACKGROUND

A. **The Vioxx Settlement**

On November 9, 2007, after several years of litigation that included discovery of millions of documents, depositions of numerous company witnesses and experts, and several bellwether trials, Merck and the Negotiating Plaintiffs' Counsel announced a private agreement to settle many Vioxx personal injury cases pending in the multidistrict litigation ("MDL") proceeding that has been established in this Court and in other jurisdictions around the country.  The agreement established a fund of $4.85 billion from which claimants eligible to participate in the settlement would be compensated.  (*See* Settlement Agreement, *In re Vioxx Prods. Liab. Litig.*, MDL 1657 (E.D. La. Nov. 9, 2007) ("Agreement") (attached as Ex. 1).)  At the request of the parties, this Court agreed to preside over aspects of the settlement program.  (*Id.* § 6.1.1, as amended.)  Independent claims administrators have been processing and evaluating tens of thousands of claims for the past year.  To date, more than $978,000,000 has been paid to 11,543 heart attack claimants under the Resolution Program Fund, and more than $41,000,000 has been paid to 1,345 stroke claimants.  Payments for qualifying myocardial infarction claims are expected to be complete by the end of the third quarter of this year.  Under the terms of the agreement, the processing and payment of ischemic stroke claims began later than they did for myocardial infarction claims because plaintiffs' counsel needed more time to gather the necessary records.  However, payment of those claims has now begun as well.  It is expected that the full $4.85 billion will be distributed before the end of the first half of 2010.

2

981910v.1

B.     **Mr. Benjamin's Challenges To The Vioxx Settlement**

Mr. Benjamin, plaintiffs' counsel in this action, has made something of an enterprise out of post-settlement litigation in this Court. He decided not to participate in the settlement and has represented several plaintiffs before this Court and, briefly, before Judge Higbee in New Jersey Superior Court. In addition to the instant suit, he has presented at least four other settlement-related challenges in various courts:

- In December 2007, Mr. Benjamin appealed the settlement to the Fifth Circuit, arguing that it should have been subject to the requirements of Rule 23 and that it effectively terminated claims not covered by its terms. The appeal was dismissed for lack of appellate jurisdiction because the settlement was not a final judgment.

- In June 2008, Mr. Benjamin moved for a further extension of deadlines under Pretrial Order ("PTO") 28, arguing that its requirements were unfair, despite the fact that the deadlines had already been extended in a previous order, which expressly rejected the same fairness arguments and stated that there would be no further extensions. The motion was denied.

- In December 2008, Mr. Benjamin opposed the dismissal of claims of plaintiffs who had failed to comply with PTO 28 and related discovery requirements, again raising arguments that the settlement should have been subject to the requirements of Rule 23 and that PTO 28 was unfair. This Court denied the motion. (*See* Dkt. No. 18527, Apr. 28, 2009.) Mr. Benjamin is appealing the ruling. (*See* Notice of Appeal, *Agard v. Merck & Co., Inc.*, No. 2:05-cv-01089, Dkt. No. 7, May 19, 2009.)

- In March 2009, Mr. Benjamin sought to represent William Cook in connection with his Vioxx suit pending before Judge Higbee. Mr. Benjamin's formal involvement in the case ended when his *pro hac vice* motion was denied.[1]

---

[1]     In denying Mr. Benjamin's motion for admission *pro hac vice*, the court cited his extensive disciplinary record and previous suspension of his license to practice. (*See* Tr. 4:25-7:11, *Cook v. Merck & Co., Inc.*, No. ATL-L-16452 (Super. Ct. Law Div. Atlantic County, N.J. Feb. 25, 2009) (attached as Ex. 2).) Despite the order, Mr. Benjamin later moved to represent Virginia Pickett in her attempt to vacate her consent to the Settlement on the ground that she was coerced into settling by her lawyer. Judge Higbee has taken Mr. Benjamin's application for admission pro hac vice in that case under advisement following full briefing and argument.

### C.   The Instant Action

This proposed class action, originally filed before Judge Higbee, presents Mr. Benjamin's latest challenge to the Agreement. In their complaint, the four named plaintiffs allege that they were "browbeaten" into participating in the Vioxx settlement (Compl. ¶ 73), and that the settlement is "unconscionable and contrary to public policy" (*id.* ¶ 19).[2] Specifically, plaintiffs claim that "the Plaintiff Liaison Committee . . . combined with a few other private attorneys . . . entered into negotiations with defendant Merck for the purpose of resolving all personal-injury claims in the United States" (*id.* ¶ 14), that the parties entered into a settlement agreement on November 9, 2007 (*see id.* ¶ 15), that "the aforesaid agreement was negotiated with no formal judicial supervision or approval," and that no "court has reviewed the fairness of the settlement" (*id.* ¶ 16). Plaintiffs also claim that Section 1.2.8 of the Agreement, regarding certain undertakings by lawyers to recommend the settlement to their clients, "contravene[s] New Jersey's Code of Professional Responsibility." (*See id.* ¶ 18.) Based on these allegations, plaintiffs seek: (1) to certify a class of "all litigants who had personal-injury actions pending in any jurisdiction of the United States alleging damages as a result of ingestion of Vioxx, subject to the 'all in' provisions of the MSA [who] consented to . . . accept the terms of the MSA *for fear of losing their retained counsel*" (*id.* Relief Requested (emphasis added)); (2) a declaratory judgment that "the MSA [is] null, void, unenforceable and of no legal effect" (*id.*); (3) an order requiring Merck "to provide notice to each and every class member that they are not bound by the terms of the MSA" (*id.*); and (4) attorneys' fees (*id.*).

---

[2]   On January 21, 2009, Gene Weeks, Kristine Cramer, Nathan Wilkins, Virginia Pickett, and Susan Smith commenced this putative class action against Merck. Plaintiffs filed an amended complaint on February 13, 2009, dropping Ms. Smith as a proposed representative plaintiff.

4

981910v.1

## ARGUMENT

A court should strike class allegations when it is clear from the face of a complaint that a proposed class action cannot be certified. *See Nguyen v. St. Paul Travelers Ins. Co.*, No. 06-4130, 2008 U.S. Dist. LEXIS 87706, at *24 (E.D. La. Oct. 6, 2008) ("The Court has authority to strike class allegations on the face of the complaint 'where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate.'") (quoting *Aguilar v. Allstate Fire & Cas. Ins. Co.*, No. 06-4660, 2007 U.S. Dist. LEXIS 16073, at *2 (E.D. La. Mar. 6, 2007)). Motions to strike are particularly appropriate where a class definition is not ascertainable – *i.e.*, where class membership cannot be determined based on objective criteria – because it is clear in such a case that class certification will be denied. *See In re Vioxx*, 2008 WL 4681368, at *10 (lack of ascertainability "alone is sufficient to warrant striking the Plaintiffs' class allegations on the pleadings").[3] That is the case here. Plaintiffs' class definition can only be ascertained by resolving a subjective question concerning state of mind: whether each putative class member "accept[ed] the terms of the MSA *for fear of losing their retained counsel*." (Compl. Relief Requested (emphasis added).) Accordingly, determining class membership would require a tedious case-by-case analysis and would tread improperly on merits issues. For both of these reasons, the class allegations should be stricken.

*First,* plaintiffs' class definition is thoroughly subjective. *See* Manual for Complex Litigation (4th) § 21.222, at 270 (while "[a]n identifiable class exists if its members can be

---

[3]  Numerous other cases are in accord. *See, e.g.*, *John v. National Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings"); *Markey v. Louisiana Citizens Fair Plan*, No. 06-5473, 2008 U.S. Dist. LEXIS 106051, at *6 (E.D. La. Dec. 30, 2008) (granting defendant's motion to strike class allegations based on the pleadings); *In re Vioxx*, 2008 WL 4681368, at *9 (same); *Nguyen v. St. Paul Travelers Ins. Co.*, No. 06-4130, 2008 U.S. Dist. LEXIS 87706, at *24 (E.D. La. Oct. 6, 2008) (same); *Barasich v. Shell Pipeline Co.*, No. 05-4180, 2008 U.S. Dist. LEXIS 47474, at *8-9 (same); *Henry v. Allstate Ins. Co.*, No. 07-1738, 2007 U.S. Dist. LEXIS 57822, at *4-7 (E.D. La. Aug. 8, 2007) (same); *Aguilar v. Allstate Fire & Cas. Ins. Co.*, No. 06-4660, 2007 U.S. Dist. LEXIS 16073, at *4-7 (E.D. La. Mar. 6, 2007) (same); *Hedgepeth v. Blue Cross & Blue Shield of Miss.*, No. 1:05-cv142-D-A, 2006 U.S. Dist. LEXIS 3177, at *3-6 (N.D. Miss. Jan. 18, 2006) (same).

ascertained by reference to objective criteria," class definitions must "avoid subjective standards (*e.g.*, a plaintiff's state of mind) or terms that depend on resolution of the merits (*e.g.*, persons who were discriminated against)"); *see also Zapka v. Coca-Cola Co.*, No. 99-CV-8238, 2000 WL 1644539, at *3 (N.D. Ill. Oct. 27, 2000) ("[a]n identifiable class does not exist if membership in the class is contingent on the state of mind of the prospective members"). Thus, merely determining who is in the class would be a "Sisyphean task" that "would be a burden on the court and require a large expenditure of valuable court time." *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981). *See also Barasich*, 2008 U.S. Dist. LEXIS 47474, at *13-14 (a class is not ascertainable if its membership can only be determined by individualized mini-trials or requires resolution of a merits question).[4]

As other courts have recognized, a proposed class like plaintiffs' that defines its membership in terms of persons who "fear" a particular outcome improperly calls for a subjective inquiry. In *Rios v. Marshall*, for example, a class was proposed of, among others, "all U.S. migrant farmworkers who, from 1975 to 1979, . . . would have applied for employment . . . but who were discouraged from doing so by said defendants' unlawful acts." 100 F.R.D. 395, 402 (S.D.N.Y. 1983). The court struck this part of the class definition as unascertainable.

---

[4] The need for mini-trials has been cited by courts in a wide range of cases as grounds for holding that a class definition is not ascertainable. *See, e.g., In re Vioxx*, 2008 WL 4681368, at *10 (striking class allegations in part because "[d]etermining class membership would . . . require an exhaustive series of . . . factual determinations particular to the unique facts of each case"); *Cuming v. South Carolina Lottery Comm'n*, No. 3:05-CV-03608-MBS, 2008 WL 906705, at *1 (D.S.C. Mar. 31, 2008) ("Where the practical issue of identifying class members is overly problematic, the court should consider that the administrative burdens of certification may outweigh the efficiencies expected in a class action."); *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999) ("the class description must be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member of the proposed class"); *Henry*, 2007 U.S. Dist LEXIS 577822, at *12 n.6 (striking class allegations because "maintaining the instant suit as a class action would result in several thousand mini-trials on individual issues, rather than a single comprehensive resolution of issues relevant to the class as a whole") (citations and quotations omitted); *Indiana State Employees Ass'n, Inc. v. Indiana State Highway Comm'n*, 78 F.R.D. 724 (S.D. Ind. 1978) (class membership of "all past, present and future state patronage employees . . . who suffered harassment, coercion, threats of economic reprisal and job discrimination . . . due to their failure to regularly pay two percent (2%) of their net wages to the political party in control of the state department . . . ." unascertainable because "the Court would have to stage a 'mini-trial' for each member after determining the threshold issue of constitutionality of the challenged practice in favor of the plaintiffs").

981910v.1

"Identification of United States citizen farmworkers who were deterred by defendants' alleged discrimination from applying for jobs in the apple harvests at issue would prove an impossible task" because "the difference between those individuals and all other citizen migrant farmworkers turns on the state of mind of the putative class members." *Id.* at 403. The proposed definition would "require the court to make an unmanageable number of such determinations," and was thus unascertainable. *Id.*

Other courts have likewise rejected proposed class actions where the definition was based on the state of mind of the individual class members. In *Capaci v. Katz & Besthoff, Inc.*, 72 F.R.D. 71 (E.D. La. 1976), for example, the court refused to certify a subclass defined as "[a]ll females who would have applied for employment but have been 'chilled' from doing so by the known discriminatory practices of K&B," *id*. at 75, finding that such a subclass was "indefinable and unidentifiable," *id*. at 78. Similarly, in *Zapka*, the court noted that a proposed class of "all individuals who consumed diet Coke from the fountain, deceived by the marketing practices employed by Coca-Cola Company into believing that fountain diet Coke does not contain saccharin," 2000 WL 1644539, at *2, was "contingent on each class member's state of mind," *id*. at *3, and therefore not ascertainable.

Plaintiffs' proposed class here is plagued by the same problems. As noted above, plaintiffs' class would consist of "all litigants who had personal-injury actions pending in any jurisdiction of the United States alleging damages as a result of ingestion of Vioxx" and "consented to . . . accept the terms of the MSA ***for fear of losing their retained counsel***." (Compl. Relief Requested (emphasis added).) Deciding whether or not a particular member of the proposed class feared losing his or her retained counsel – and whether such fear caused that individual to participate in the settlement – would involve a subjective inquiry regarding each

plaintiff's state of mind. It would also likely require substantial inquiry into privileged attorney-client communications. These inquiries would have to be undertaken for each of the thousands of individual Vioxx users who agreed to be bound by the MSA – ***merely to determine class membership***. It is thus no exaggeration to say that simply identifying the putative class members would involve the Court in an administrative nightmare.

***Second,*** plaintiffs' proposed class definition would also require the Court to improperly tread on merits issues in order to decide class membership. *See In re Vioxx*, 2008 WL 4681368, at *9 (It is a "'basic tenet of class certification [that] a court may not inquire into the merits of the case at the class certification stage.'") (quoting *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995)); *see also* 2 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 6:14 (4th ed. 2002) ("[A] definition in terms of objective characteristics of class members avoids problems of circular definitions which depend on the outcome of the litigation on the merits before class members may be ascertained."); *Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007) (such classes are unfair because the result of resolution of membership question is that class members "win or are not in the class").[5]

This is so because the class definition requires resolution of a factual issue that would be in dispute as to each member of the proposed class and highly relevant to the merits: whether they were coerced into settling by the terms of the Agreement. If a class were certified and a

---

[5] Numerous courts have similarly denied certification or struck class allegations where plaintiffs proposed a "fail-safe" class definition that would require resolution of merits issues. *See, e.g.*, *Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (class of plaintiffs who purchased computers that "Dell falsely advertised" was unascertainable because "it would be necessary for the court to reach a legal determination that Dell had falsely advertised"); *Eversole v. EMC Mortgage Corp.*, No 05-124-KSF, 2007 U.S. Dist. LEXIS 38892, at *15 (E.D. Ky. May 29, 2007) (denying plaintiff's motion for class certification because "the class is defined in such a way that no person could be a plaintiff unless" the defendant was found liable); *Bostick v. St. Jude Med., Inc.*, No 03-2626, 2004 WL 3313614, at *15-16 (W.D. Tenn. Aug. 17, 2004) (proposed class of plaintiffs "who have sustained presently compensable physical injuries due to the aortic connector" was an impermissible fail-safe class definition); *Foreman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995) (rejecting class certification where the proposed class definition "requires addressing the central issue of liability to be decided in the case.").

981910v.1

trial held, and plaintiffs failed to prove that anyone was coerced into settling, the class itself – consisting only of persons who were coerced into settling – would cease to exist. The judgment would thus bind no one. Any person who enrolled in the settlement would then be free to relitigate the issue in an individual action, unfairly subjecting Merck to endless rounds of costly and time-consuming litigation. The Court should not allow the class device to be used in this fashion. *See Dafforn v. Rousseau Assocs., Inc.*, No. F 75-74, 1976 WL 1358, at *1 (N.D. Ind. July 27, 1976) ("Rule 23 was never meant to be an exception to the rules of res judicata or to provide a risk-free method of litigation. The class definition must be such that all . . . are as much bound by an adverse judgment as by a favorable one.").

In sum, plaintiffs' class definition turns on the subjective criterion of whether a putative class member feared losing his or her counsel. Accordingly, any attempt to determine the membership of plaintiffs' proposed class would require countless factual and nonbinding merits-based inquiries into the individual circumstances of potential class members. For this reason too, the class is not ascertainable and the class allegations should be stricken.

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that the Court strike the class allegations in plaintiffs' complaint.

Dated: June 22, 2009

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

        Douglas R. Marvin
        WILLIAMS & CONNOLLY LLP
        725 Twelfth St., N.W.
        Washington, DC 20005

        John H. Beisner
        Jessica Davidson Miller
        SKADDEN, ARPS, SLATE, MEAGHER &
        FLOM LLP
        1440 New York Avenue, N.W.
        Washington, DC 20005


        ATTORNEYS FOR MERCK & CO., INC.

981910v.1

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing supporting memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 22nd day of June, 2009.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel