1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4        *********************************
         IN RE:  VIOXX PRODUCTS          *      MDL No. 1657
5                                        *      SECTION "L"
                                         *
6        PRODUCTS LIABILITY              *
                                         *
7                                        *      NEW ORLEANS, LOUISIANA
                                         *      April 29, 2009
8        *********************************

9

                        TRANSCRIPT OF MOTION HEARING
10          HEARD BEFORE THE HONORABLE ELDON E. FALLON
                    UNITED STATES DISTRICT JUDGE

11

12       **APPEARANCES**:

13       FOR THE PLAINTIFFS'           Herman, Herman, Katz & Cotlar, LLP
         LIAISON COMMITTEE:            BY:  RUSS HERMAN, ESQ.
14                                          LEONARD A. DAVIS, ESQ.
                                       820 O'Keefe Avenue
15                                     New Orleans, Louisiana  70113
                                       (504) 581-4892
16
                                       Hagens Berman Sobol Shapiro LLP
17                                     BY:  THOMAS M. SOBOL
                                       One Main Street, 4th Street
18                                     Cambridge, Massachusetts
                                       (617) 482-3700
19
         PLAINTIFF'S STEERING          Lieff Cabraser, Heimann &
20       COMMITTEE:                    Bernstien, LLP
                                       BY:  Elizabeth J. Cabraser, ESQ.
21                                     275 Battery Street, 30th Floor
                                       San Francisco, CA  94111
22                                     (415) 956-1000

23       FOR THE DEFENDANT'S           Stone Pigman Walther
         STEERING COMMITTEE:           Witmann, L.L.C.
24                                     BY:  DOROTHY WIMBERLY, ESQ.
                                       546 Carondelet Street
25                                     New Orleans, Louisiana  70130
                                       (504) 581-3200

```
 1                              Williams & Connolly
                                BY:  EVA ESBER, ESQ.
 2                              725 Twelfth Street, NW
                                Washington, DC  20005
 3

 4      FOR THE LOUISIANA       The Dugan Law Firm
        ATTORNEY GENERAL        BY:  JAMES R. DUGAN, II, ESQ.
 5                              1181 W. Tunnel Boulevard
                                Suite A
 6                              Houma, Louisiana 70360
                                (985) 580-4573
 7

 8                              RANDY FOX, ESQ.
                                Special Assistant,
 9                              Office of the Attorney General,
                                New York
10                              The Capitol
                                Albany, New York 12224-0341
11
                                RICK MEADOW, ESQ.
12                              Lanier Law Firm
                                126 East 56th Street
13                              Sixth Floor
                                New York, New York 10022
14

15      Also Present:          James Young, ESQ.
                                Wincent McKnight, ESQ.
16                              Mark Scultz, ESQ.
                                Richard A. Freese, ESQ.
17                              Brad Cotlin, ESQ.
                                Will Riley, ESQ.
18                              Ann Oldfather, ESQ.
                                Clark Trout, ESQ.
19                              Roxanne DeFrancesco, ESQ.

20

21
        COURT REPORTER:        Pinkey Ferdinand,
22                              Official Court Reporter
                                500 Poydras Street, Room HB-406
23                              New Orleans, Louisiana  70130
                                (504) 589-7781
24

25      Proceedings recorded by mechanical stenography, transcript
        produced by computer.
```

**PROCEEDINGS**

(April 29, 2009, Motion Hearing)


THE DEPUTY CLERK:  Everyone rise.

THE COURT:  Okay.  Be seated, please.  Sorry I was late.  I had some meetings with counsel.

We're here today to talk about some motions that were filed.  I'll hear from the parties.

MS. WIMBERLY:  Yes, Your Honor, Dorothy Wimberly, representing Merck.  The first matters that I'd like to bring up are matters that were deferred from Merck's Lone Pine Latecomers, Noncompliance and Non-Registrants Motions that -- some of which actually date back all the way to December of last year.

The first matter is from Merck's First Latecomers Motion, Record Document 16944.  There were four cases remaining on this motion that originally was set for hearing in December, then again March 5th and March 27th.  All four of those plaintiffs were represented by Mr. Wayne Alford.

Since we were last in court on April 20th, pursuant to his commitment, Mr. Alford served his expert report for plaintiff, William Anton, so Merck hereby withdraws its motion as to Mr. Anton.  And that's Case Number 08-1016.

On the same date that he served Mr. Anton's report, Mr. Alford also advised that he is not going to continue pursuit

1    of the remaining three claims and, therefore, those should be

2    dismissed with prejudice.

3              THE COURT:  And that's Robert Haywood, Edward

4    Evans and Maryland Baldwin?

5              MS. WIMBERLY:  That's correct, Your Honor.

6              THE COURT:  All right.  The PSC objects.

7              MR. BIRCHFIELD:  Correct, Your Honor.

8              THE COURT:  I overrule the objection, and dismiss the

9    claims with prejudice.

10             MS. WIMBERLY:  Next, Your Honor, are two plaintiffs

11   who were holdovers and deferrals from the Third Latecomers

12   Motion, which is record document 17639.  The first of those is

13   Clarence Pitts, Number 08-4560, represented by Carey & Danis.

14   And Mr. Clement, I believe is still in the courtroom.

15             THE COURT:  Right.

16             MS. WIMBERLY:  He has represented that this is a case

17   that they will not be continuing.

18             THE COURT:  Okay.

19             MS. WIMBERLY:  And there is no objection to

20   dismissal.

21             THE COURT:  Okay.  I'll overruled the objection of the

22   PSC, and I'll dismiss it with prejudice.

23             MS. WIMBERLY:  And the final plaintiff on that motion

24   is a pro se plaintiff, Bobbie Robinson, case Number 08-1417.

25   Notwithstanding plaintiff, Robinson's contact with the curator

1     or our office to advise that they intended to pursue the claim.

2     Since this motion was filed earlier this year and since the

3     hearing on March of 5th, no report has been received and no

4     further contact.  And we would ask that the case be dismissed

5     with prejudice.

6          THE COURT:  And I'll dismiss it with prejudice

7     over the objection of counsel.

8          MS. WIMBERLY:  Next are several deferrals from

9     Merck's Fifth Lone Pine Motion, Record Document 17653.

10    This involves five plaintiffs:  John Ault, 07-4082,

11    represented by the Barrett Law Office of Pennsylvania;

12    Ronald Higgins, Number 05-6131, represented by Ramey &

13    Hailey; and three pro se plaintiffs, Sergei Chipilko,

14    08-959; Shirley Anne Hamilton, 07-883, and Joyce

15    Westmoreland, 06-10154.

16         None of these cases have submitted their expert

17    reports despite the deferred time, and we would ask that they be

18    dismissed with prejudice as well.

19         THE COURT:  Over the objection of the plaintiffs'

20    counsel, I'll dismiss it with prejudice.

21         MS. WIMBERLY:  Next is Merck's Sixth Lone Pine

22    Motion, the deferrals from that.  Deferrals fell into two

23    categories.  The first were 11 cases, appearing on Exhibit

24    "C" to the judgment entered by the Court deferring those

25    matters until today.  With one exception, and that being of

1    pro se plaintiff, Dennis Harrison, Case Number 07-905, none

2    of these plaintiffs submitted expert reports, and we would

3    ask -- and quite frankly, Your Honor, with respect to most

4    of them, it's -- their counsel have represented that they

5    cannot locate them despite heroic efforts.  And we would

6    ask that all of the cases on Exhibit "C," with the

7    exception of Mr. Harrison, be dismissed with prejudice.

8    And I'll read those into the record.

9            That would be Lawrence Lawson, plaintiff in Number

10   06-2210; Sarah Roberts, plaintiff in 05-3543; Joan Rhinehardt,

11   plaintiff in case number 06-1510; Anne Heintzelman, plaintiff in

12   Number 07-1058; Allen Hine, plaintiff in Number 07-1058; Jeffrey

13   McCarroll, plaintiff in number 07-1058; Ralph Rumbel, plaintiff

14   in Number 07-1058; Larry Stremba, plaintiff in number 07-1058;

15   John Yunevage, plaintiff in Number 07-1058; and pro se

16   plaintiff, Nathaniel Collins, plaintiff in Number 06-2195.

17           THE COURT:  Okay.  Over the objection of plaintiffs'

18   counsel, I'll dismiss those with prejudice.

19           MS. WIMBERLY:  The four remaining plaintiffs

20   appearing on, or deferred from the Sixth Lone Pine Motion

21   were represented by the Bubalo Law Firm.  We discussed --

22   this is the issue that we discussed in chambers with you

23   yesterday.  And, Your Honor, it was agreed that Ms.

24   Oldfather would provide notice to these four plaintiffs of

25   the motion, and that this -- the motion as to these four

1    matters is being deferred until May 21st.

2              THE COURT:  Okay.  Is that -- I'm sorry, who is

3    that?

4    (Untranscribable sounds/voices from court conferencing system.)

5              THE COURT:  Oh, okay.  All right.  Okay.

6    BrownGreer is on the phone, but that's for the next issue.

7              All right.  And with regard to Show Cause Contempt,

8    I'll rule that that's presently satisfied.

9              MS. WIMBERLY:  Next, is Merck's First Material

10   Noncompliance Rule, Record Document 17841.  All of the

11   plaintiffs on this rule are represented by Cellino &

12   Barnes.  We had deferred the matter until today.

13             Since that time Cellino & Barnes has made substantial

14   disclosures and productions, and we're still going through that.

15   And they're working on clearing this up, and we would ask that

16   the Court defer this entire matter again until May 21st.

17             THE COURT:  I'll defer that until May 21st.

18             MS. WIMBERLY:  And the last carry-over matter on

19   issues other than Enrollment was Merck's Non-Registrants

20   Motion, Record Document Number 17888.  There were two pro

21   se plaintiffs who contacted the curator and gave some

22   indication that they intended to pursue their case.  They

23   were required to timely give, by the end of March, notice

24   -- or actually comply with the registration requirements of

25   Pretrial Order 31.  Since that time nothing has occurred.

1    They have not registered and have made no effort to comply

2    with any other Pretrial Orders.  So we would ask that the

3    cases of Billy Stanaland, Case Number 05-3398, and Rodney

4    Stevenson, Case Number 05-3537, be dismissed with

5    prejudice.

6            THE COURT:  Okay.  Over the objection of counsel, I'll

7    dismiss it with prejudice.

8            MS. WIMBERLY:  Next, Your Honor, that brings us

9    to matters that was deferred from Merck's Sixth Enrollment

10   Show Cause Orders.  We have managed to whittle those down

11   substantially.  Counsel has been diligent in trying to

12   clear up those enrollment issues, and Eva Esber is going to

13   address each of those.

14           And, Your Honor, I have for you exhibits that you can

15   use to follow along as we go through what's happened.  But, the

16   exhibits have been updated, even this morning in court as we

17   received word of additional cures that had been received by

18   BrownGreer.  So there will be changes to these copies that you

19   receive.

20           THE COURT:  Okay.

21           MS. WIMBERLY:  And copies we sent with proposed

22   judgments will accurately reflect the status.

23           THE COURT:  Okay.

24           MS. ESBER:  Good morning, Your Honor.  Eva Esber of

25   Williams and Connolly for Merck.  Your Honor, what Ms. Wimberly

1    has just handed to you is a stack of proposed exhibits which go

2    along with six motions and Rule for Order to Show Cause as to

3    enrollment deficiencies.  These 29 pages, 19 different exhibits,

4    all deal with claimants who's enrollment deficiency issues were

5    deferred after the hearing that Your Honor held on April 15th.

6    Those referrals were reflected on the orders that Your Honor

7    signed on April 17th.  And so what we have done now, Your Honor,

8    is taken each of those exhibits from the April 17th order, and

9    we have broken them down into subset New Proposed Orders as to

10   where each of these claimants now stands.

11          Happily, within those 29 pages and 19 exhibits, there

12   are really only five proposed orders that should require some

13   discussion today where some remedy may be appropriate, and that

14   we request from Your Honor.  The rest of them, either the

15   motions now being withdrawn -- because the deficiency has been

16   corrected -- or the issue as to that deficiency has in some

17   other manner been mooted.  Perhaps the claim has been

18   voluntarily withdrawn or it's dismissed through some other

19   motion, et cetera.

20          Therefore, Your Honor, beginning with the first

21   motion, it was Exhibit 1.4 from the April 17th order as to

22   Motion Number 1 that contained the deferrals.  We now have

23   Proposed Exhibits 1.4-A, which reflects those being withdrawn,

24   and we have Proposed Exhibit 1.4 C showing those that would be

25   deferred.

1           Therefore, Your Honor, the group for discussion today

2     would be the Proposed Exhibit 1.4-B, listing a group for which

3     the requested relief would be that the claim of a filed lawsuit

4     be dismissed, or the claim of a Tolling Claimant be extinguished

5     and the Tolling Agreement be voided.

6           Motion 1, Your Honor, dealt with fundamental

7     deficiencies and the releases that were submitted.  These were

8     on the magnitude of, there was no signature whatsoever on the

9     release, or the language of the release had been altered, or

10    that release as returned was not completed.  It was missing

11    pages.

12          THE COURT:  This is the remaining group of 13, Your

13    Honor, on Proposed Exhibit 1.4 that is still outstanding.  And I

14    can read, Your Honor, the names of the counsel who represent

15    these plaintiffs in the event any of them are here and would

16    like to be heard.  They include -- this is the counsel only:

17    John Anderson, The Becnel Law Firm; Brederson Law Center; Freese

18    & Goss; Parks and Crump; Douglas Schmidt; Simon Passanante;

19    Stamps & Stamps.

20          THE COURT:  Okay.  Anyone here from those firms that

21    wish to speak or comment?  All right.  Hearing none, you move to

22    Dismiss --

23          MS. ESBER:  We move, Your Honor, with respect to those

24    on Exhibit 1.4 B for dismissal of the filed claims with

25    prejudice and for the Tolling Claimants, Extinguishment of the

1    Claim and a voiding of the Tolling Agreements, as was done in

2    the previous orders that were entered on April 17th.

3              THE COURT:  Over the objection the plaintiffs'

4    counsel, I'll dismiss them with prejudice.

5              MS. ESBER:  Thank you, Your Honor.  Proceeding along

6    with respect to the Second Motion, happily, we have no -- that

7    motion has been resolved.  We have only a proposed 2.2 Exhibit

8    A, 2.2-A, which I withdraw the motion as to those.  Likewise,

9    Your Honor, with respect to the Third Motion, there are no

10   claimants here for action with respect to dismissal or

11   extinguishment.  There is 3.2-A for withdrawal and a 3.2-C for

12   deferral.

13             The deferrals, Your Honor, are being requested until

14   the next time when Your Honor has a scheduled date for taking up

15   enrollment deficiencies, which is May 8th.

16             THE COURT:  Okay.

17             MS. ESBER:  And we hope that those will be resolved by

18   that time.

19             THE COURT:  Okay.

20             MS. ESBER:  That brings us, Your Honor, to the Fourth

21   Motion.  It is the -- we hand-numbered your pages to help you

22   get to the one at issue, which is the 12th page.

23             THE COURT:  Okay.

24             MS. ESBER:  Proposed Exhibit 4.4-B.  These are

25   enrollment issues that remain outstanding and not cured with

1       respect to representative capacity issues.  Again, Your Honor,

2       as Ms. Wimberly just mentioned, we've been continuing to see

3       activity on these, even since we put these exhibits together

4       yesterday.  And about half on this list have not fallen off, and

5       we will provide a new and updated exhibit.  But those that

6       remain outstanding as of our most current information, again,

7       I'll read the names of their counsel.

8                   THE COURT:  And give me the number.

9                   MS. ESBER:  Okay.  The first one, Your Honor, Andrews

10      & Thornton, remains outstanding.

11                  THE COURT:  Okay.

12                  MS. ESBER:  Then we move down to the 11th, Terence

13      Hawkins, Attorney at Law, as counsel; the 12th, Michael Hingle

14      and Associates; the 13th, Hossley Embry; and also the 14th,

15      Hossley Embry; the 15th, Jensen, Belew & Gonzalez; the 16th, The

16      Murphy Law Firm; the 17th, the Obioha Law Offices; the 18th,

17      Stamps & Stamps; the 19th, The Law Group Limited; and the 20th,

18      the Whitehead Law Firm.

19                  THE COURT:  Anyone wish to speak?  Hearing none,

20      the motion is dismissed with prejudice.

21                  MS. ESBER:  As to the filed lawsuits, Your Honor, and

22      as to the Tolling Claimants, Extinguishment of the Claim and

23      Voiding of the Tolling Agreement.

24                  THE COURT:  And that's in -- number one, the case is

25      Lillie Winfrey and Joseph Viswanathan; No. 11, and No. 12 is

1    Janet Vicknair; 13, Billy Helms; 14; Lisa Webb; 15, there is a

2    Tolling Agreement.  The claimant is Juan Mareno; 16th there is

3    also a Tolling Agreement, Robert Barnett; the 17th is another

4    Tolling Agreement, Ann Knapper; the 18th, is Eleanor Sims; the

5    19th is a Tolling Agreement for Dustan Lynch; and the 20th is a

6    Tolling Agreement for Earlma Lawson.

7             Does that comport with your records?

8             MS. ESBER:  Yes, it does, Your Honor.

9             THE COURT:  Over the objection of counsel, I'll grant

10   the Motion to Dismiss with prejudice.

11            MS. ESBER:  Thank you, Your Honor.  The next one where

12   there is relief request is with respect to the Fifth Motion.  It

13   is the 19th page among the proposed exhibits we have given you

14   as Proposed Exhibit 5.3-D.  The Fifth Motion, Your Honor, dealt

15   with deficiencies relating to notification issues.  This list

16   includes a list where there are notification deficiencies, but

17   the relief that's requested -- as was done on April 15th -- is

18   that the claimant be estopped from challenging the validity of

19   the release.  These are more minor notarization issues, Your

20   Honor.  And, therefore, estoppel is the relief we discussed last

21   time that we thought most appropriate to request.  They may

22   include such things such as a date for the expiration of the

23   notary being missing, et cetera.

24            I have the following firms, Your Honor, with claimants

25   on this list:  The Branch Law Firm; Carey and Danis; Cellino &

1    Barnes; Freese & Goss; and Matthews and Associates, for a total

2    of nine claimants.

3             THE COURT:  All right.  Anyone here from those

4    firms?  This does not dismiss the claims.  It simply says

5    that you can't make an argument on the deficiency that

6    exist.  As counsel said, some of the date of the notarial

7    expiration is not there.  There are some cases where the

8    stamp is either not legible or is not affixed to the

9    document.  It seems to me to dismiss those cases is not

10   fair, and also it's not fair just to ignore that

11   deficiency, so this is the appropriate way of doing it.

12   I'll grant the motion.

13             MS. ESBER:  Thank you, Your Honor.  The next exhibit,

14   Proposed Exhibit on which we're requesting relief is the 21st

15   page in that package.  It is Proposed Exhibit 5.5-B.  These are

16   claimants that have no notarization whatsoever of the primary

17   claimant's release.

18             You may recall, Your Honor, that there was a much

19   larger group than this with this issue that we deferred last

20   time.  Our hope was that if we reached out to their counsel we

21   might be able to receive some other explanation for why this

22   wasn't notarized and perhaps some other assurance that we, in

23   fact, received a release from the proper party and interest.  We

24   are left, Your Honor, with seven on this list where we were

25   unable to obtain that.  And, therefore, we are requesting

1    dismissal with prejudice of the claim, or to the extent as a

2    Tolling Claimant -- which most of these are -- extinguishment of

3    the Tolling Agreement and -- extinguishment of the claim and

4    voiding of the Tolling Agreement.

5         The first one, Your Honor, has been resolved.  That

6    comes off this list, so it's the next seven that remain.  The

7    counsel for these are Beasley Allen, Bonsignor and Brewer.  And

8    then the last five are Charles Johnson & Associates.

9         THE COURT:  Anybody here wish to speak on

10   those?  And they are the Tolling Agreement for Melanie

11   Patton, Bernard Eldridge, the Tolling Agreement for Daniel

12   Chapin; the Tolling Agreement for Constance English; the

13   Tolling Agreement for Joanna Spencer; the Tolling Agreement

14   for Bobby Turner, and the Tolling Agreement for Jamie

15   Vidas.

16        Again, it's not a hard situation.  It's just, they

17   need to be notarized.  And the reason for notarizing in this

18   situation is, we need to know -- in this situation you need to

19   know -- both sides need to know that that's the claimant.  And

20   so we've given them ample time.  I'll grant the motion.

21        MS. ESBER:  Thank you, Your Honor.  And then the last

22   Motion and Rule for Order to Show Cause was the Sixth Motion

23   which dealt with deficiencies in derivative releases.  And as to

24   these, Your Honor -- as you can see, the proposed exhibit 6.3-A,

25   which starts at page 23, happily runs through a great number of

1    pages.  Most of them have been resolved or mooted in some

2    manner.  And the very last page in the package is the only one

3    that remains, with 11 claimants where there is a deficiency,

4    material deficiency, with respect to the derivative claimants'

5    release.

6            The relief that was requested at our hearing on April

7    15th, with respect to those in this category, is a dismissal

8    with prejudice only with respect to the derivative claimant's

9    claim.  If the primary claimant has, you know, weathered this

10   storm and gotten everything in order, that will continue to

11   proceed, but the claim of the derivative claimant would be

12   dismissed with prejudice, or if a Tolling Agreement claimant,

13   the claim would be extinguished and the Tolling Agreement

14   voided.

15           So the 11 on this proposed Exhibit 6.3-B, Your Honor,

16   are represent by the following firms:  There are six of them

17   represented by the Branch Law Firm; three represented by

18   Matthews & Associates; one represented by Simon Passanante; and

19   the last represented by The Law Group Limited.

20           THE COURT:  Anyone in the courtroom wish to

21   discuss that?

22           They deal with a derivative claimant, Donald Griffin;

23   Alvin Hoofner; Thomas Hum; Donald Leist; Brigido Ortega; Polo

24   Soto; Darrell Allen; Ferrer Martinez -- Ilia Martinez Ferrer;

25   Shiely Rodriguez Perez; Parker DeAnthony, or DeAnthony Parker;

1    and Ruth Lynch.

2          I'll grant the motion over objection of counsel and

3    dismiss it with prejudice.

4          MS. ESBER:  Thank you, Your Honor.  Then in light of

5    that, what we will do is provide final copies of these exhibits.

6    They will also include the various other claimants that we

7    didn't discuss in court where the motion is being withdrawn or

8    where the motion is being deferred until May 8th.

9          THE COURT:  Okay.  Fine.  Thank you very much.  Any

10   other motions?  Any other motions on that?  Dismissals?

11         Okay.  All right.  Okay.  Now, I have some conferences

12   with the AGs, the Third Parties.

13         MR. HERMAN:  Ms. Cabraser is here --

14         THE COURT:  Okay.

15         MR. HERMAN:  -- to report to the Court on the Third

16   Party and the AG Scheduling Order, or CMO, is under

17   discussion.

18         THE COURT:  Okay.

19         MS. CABRASER:  Your Honor, Elizabeth Cabraser,

20   Chair of the PSC's Purchase Claims Committee.

21         The report, at least as far as the Private Third Party

22   Payors go, is a very brief one since Your Honor has entered the

23   Scheduling Order, PTO Number 38.

24         THE COURT:  Right.

25         MS. CABRASER:  The first deadline under that

1    order called this week calling for the filing of amended

2    complaints.  And as Your Honor knows, a number of amended

3    complaints were filed.

4              THE COURT:  Right.

5              MS. CABRASER:  And Bellwether pool candidates are in

6    compliance with that provision.  We're starting the discovery

7    phase.  We're starting to coordinate documents between the MDL

8    and New Jersey so that we don't have to reinvent the wheel with

9    respect to documents.

10             THE COURT:  Right.

11             MS. CABRASER:  And unless any of the specific Third

12   Party Payor counsel has an issue for the Court today, I think we

13   really have nothing further to report to the Court.  And I don't

14   think we have anything that's a matter of dispute or contest, at

15   least not yet with Merck.

16             THE COURT:  Okay.

17             MR. BEISNER:  John Beisner for Merck.  Your

18   Honor, I just wanted to confirm, I think that is the

19   situation.  There are just a couple of housekeeping notes I

20   wanted to offer for the record.

21             One of the Bellwether candidate cases that Merck

22   had selected has dismissed its claim after being selected,

23   and we would like to replace that selection with -- that's

24   I.B.E.W. Local 683 Fringe Benefit Fund -- and we'd like to

25   substitute therefore the Ohio state I.B.E.W. Health and

1    Welfare Fund for that one.

2            I also wanted to note, Your Honor, just so we don't

3    surprise you on scheduling down the road.

4            We had a little bit of slippage on the few issues

5    here.  One of the funds, the I.B.E.W. Local 129 Fringe Benefit

6    Fund, has not yet given us its PBM, TPA designation, in short,

7    what was the outside entity it was working with.

8            THE COURT:  Right.

9            MR. BEISNER:  And we can't give our initial

10   disclosures until we get that.  And some of the others were a

11   little bit late.  I don't mean to suggest we got any great

12   crisis, but just so we know we've got --

13           THE COURT:  Okay.

14           MR. BEISNER:  -- a little bit of slippage in the

15   schedule on that.  But I think -- I agree completely with

16   Elizabeth that we're off and running.

17           THE COURT:  Okay.

18           MR. BEISNER:  And I think proceeding on track.

19           THE COURT:  All right.  Looks like the other dates are

20   doable too, the way you see it, Elizabeth?

21           MS. CABRASER:  So far, Your Honor.

22           THE COURT:  Okay.

23           MS. CABRASER:  And if we see a problem arising --

24           THE COURT:  Yeah, get to me before it's a crisis.

25           MS. CABRASER:  -- with Merck's counsel we'll get to

1      you before it becomes a crisis stage.

2                    THE COURT:  Right.  Okay.

3                    MR. SOBOL:  Good morning, Your Honor, Tom Sobol.

4                    THE COURT:  Tom.

5                    MR. SOBOL:  Just by way of disclosure, to make sure

6      Mr. Beisner is correct, there has been a little bump in the road

7      or, you know, minor issues for this plan or that plan.  There

8      may also be other plans that might end up dismissing.  We'll

9      obviously may have to take that up with Mr. Beisner and with

10     counsel for Merck; make some adjustments accordingly.  By and

11     large, however, it is the case that the initial disclosure --

12     waive, if you will -- that's all due at the end of this month.

13     And there are some other minor discovery issues that are going

14     to go on, so.

15                    THE COURT:  Okay.  Good.  Thank you.  What's next?

16                    MR. HERMAN:  Yes, Your Honor.  Judge Fallon, I

17     want to thank, first of all, Ms. Barrios, who is your

18     appointed State Liaison Counsel who has worked with the

19     Attorneys General trying to get this issue resolved.  We

20     have an issue -- been attempting to get a Pretrial Order

21     with government actions now, on and off now for some eight

22     months.

23                    It appears that we have an order, except for one

24     paragraph.  Basically what that paragraph says is that.

25                    "Plaintiffs' counsel shall, to the fullest extent, use

1          the discovery previously taken, a document depository,

2          et cetera, including documents data bases,

3          depositions, responses to discovery, expert reports,

4          trial transcripts, et cetera."

5      And then at a later date Your Honor will consider a ruling,

6  if any, on assessment, which I understand would necessitate a

7  motion, a response to the motion, briefing, and as Your Honor

8  has directed, full hearings on whether any assessment or any

9  amount of an assessment would be due.

10         Recently I've had additional meetings and

11  correspondence.  Basically, the PSC, not just for itself, but

12  for the hundred firms plus that have claimed Common Benefit

13  hours, the entire unannotated data base and documents are in the

14  depository, and any governmental agency can make arrangements to

15  come in any time they want.  We have 20 computers available.  We

16  have someone to instruct them as to how they may access whatever

17  they want to access.  They can get their own copier if they

18  want, or we will copy it, whatever the minimum is.  And that --

19  in addition to that, we've taken the position that trial

20  transcripts are public records.  So there would be no assessment

21  for either using unannotated documents in the depository or full

22  access to trial transcripts.  And we get those copied.  They can

23  either designate their own copier or we would get them copied at

24  cost.

25         We do not have unanimity among the Attorneys General

1   as to this paragraph of future assessment.  I believe that Your

2   Honor called the meeting today.

3                THE COURT:  Right.

4                MR. HERMAN:  Because Your Honor requires a Case

5   Management schedule, and everything has been done except this

6   issue.  I also received a request to meet with some AG

7   representatives following this conference, which I plan to do.

8                THE COURT:  Well, let me say that whether or not that

9   paragraph is in the order, that's what I'm going to be doing.  I

10  mean, if anybody has a motion or anything, I will entertain the

11  motion.  I'll give a person a right to file a motion, and I'll

12  give the person the response and opportunity to object to it and

13  to give me their view.  I mean, I -- that paragraph, to me, is

14  part of the whole thing.  Whether it's in there or not, is going

15  to be -- that's what I'm going to be doing.  I mean, it seems to

16  me to be the fair thing, to hear from each side.

17                If somebody has a motion and they feel that it's

18  appropriate to file a motion, I'm not going to tell them,

19  don't file a motion because there is no provision in the

20  pretrial -- in the plan to commit you file a motion.  You

21  know, it's not fair to either side.

22                So, you know, both sides have to recognize that.

23  I'm not trying to put something in stone that precludes any

24  motions that either side or anyone would have to file that

25  comes up during the process.

1          So I don't see that as a real problem, frankly, in

2     that particular document, because it's inherent to me in the

3     document.

4          MR. HERMAN:  Your Honor, as a matter of

5     professional courtesy, Mr. Fox is here representing the

6     Attorney General of New York.

7          THE COURT:  Yeah.

8          MR. HERMAN:  And others who may be in agreement with

9     him certainly would like to address the Court.

10          THE COURT:  Sure.

11          MR. FOX:  Good morning, Your Honor.  I'm Randy

12     Fox, Special Assistant to the Attorney General from the

13     State of New York, Attorney General's Office.

14          I do want to just clarify a little bit.  I don't think

15     anybody is objecting to the paragraph as a whole.

16          THE COURT:  Uh-huh.

17          MR. FOX:  Or having parts of the paragraph in the

18     order.

19          THE COURT:  Yeah.

20          MR. FOX:  It's only two of the four sentences that are

21     causing --

22          THE COURT:  Okay.

23          MR. FOX:  The concerns here.  And the primary concern

24     is that the language could be read to presuppose that there will

25     be assessments for different categories of the materials that

1    are available out there.

2            THE COURT:  No, I'm not going to do that.  I'm

3    just not going to -- I'm not presupposing anything, really.

4    I think that, we get down the road a piece, they may not

5    even ask for anything.  If they do ask for something, I'm

6    going to listen to the other side.

7            MR. FOX:  And another part of the problem from

8    our prospective is -- at least within my office -- it's

9    very important to know ahead of time what it is we are

10   purchasing and what the prices will be.

11           THE COURT:  Sure.

12           MR. FOX:  And that's part of why we think very

13   differently about different parts of the materials out

14   there.  As I see it on one side, we have what I'll call the

15   "raw discovery materials," the documents, the depositions.

16   Trial transcript might not be discovery, but it's public

17   record.

18           THE COURT:  Sure.

19           MR. FOX:  On the other side we would have the Trial

20   Package, which is the core work product.  And as far as gaining

21   access to the raw discovery materials, we would certainly want

22   to know before we use that whether there is going to be a price

23   for that.  We don't think there should be more than the

24   reasonable price of reproduction being the price for those

25   materials, because if we don't get them from the PSC, I believe

1    we would have the right to just request them from Merck.   That

2    has been done in other context.   At least one AG has a state

3    court action pending, and that's how they got it.   They provided

4    a hard drive to Merck and Merck provided them on that hard drive

5    with all of the documents produced in the MDL, all of the

6    deposition transcripts and the exhibits to the depositions.

7           We're really seeking to have no less than that.   And

8    we certainly appreciate all the courtesies we've been shown by

9    Mr. Herman and the PSC.   The access to the documents is quite

10   helpful.   I would hope we can work on some arrangement where we

11   can get them without actually having to travel to New Orleans.

12   That certainly imposes a much higher cost on us to gain access

13   to those things.

14           THE COURT:   Right.   And electronically you may well be

15   able to do that.   I don't know the full extent of it, but if it

16   can be done, it can be done.   But, oftentimes in a case of this

17   sort, you don't know what you're going to need until you look at

18   it.   And also, oftentimes as the case proceeds, the stuff you

19   thought you needed or you might need, you don't need because

20   that's not an issue anymore.

21           And it's very hard for you at this time to attempt to

22   nail them down, and it's just as hard for them to be nailed

23   down.   A way of doing it is, that if you need it, need something

24   and you asked them to give it to you without charge, and you

25   feel that they ought to give it to you without charge and they

1    say no, the way to do it is just to ask me to convene a status

2    conference, and I'll convene a status conference.  And I'll hear

3    from you and I'll hear from them and I'll tell you, this is

4    going to be my ruling, or this is my ruling.  And then if you --

5    I mean, if my ruling is they have to give it to you, then that's

6    it.  If my ruling is, that they have to give it to you, but it's

7    fair to charge such and such, that's what the ruling is going to

8    be.  If you want to buy it, fine; if you don't, it's okay.

9         But on each those things, it seems to me that you may

10   have different reasons as you get closer into it.  But I'm not

11   going to -- either side -- I'm not going to say that they're

12   going to get money for everything, and I'm not going to be able

13   to tell you that you're going to get a free ride for everything.

14   I don't think that's fair to either side for me to make that

15   judgment.  But I can tell you this, that I certainly will listen

16   to each side, and I'll give you every opportunity to either

17   brief me, if that's what you need to do, or argue, if that's

18   what you need to do, and I'll make a decision.

19              MR. FOX:  Thank you.

20              THE COURT:  But I'm interested in the response from

21   the Committee, if you have any.

22              MR. FOX:  If I might just add --

23              THE COURT:  Yeah.

24              MR. FOX:  One more point here.

25              THE COURT:  Right.

1          MR. FOX:  As far as issues that are ripe for

2     discussing at this moment, I think primary among them is the

3     issue of access to depositions that have already been taken

4          THE COURT:  Uh-huh.

5          MR. FOX:  One possible reading of these couple of

6     sentences in the Scheduling Order might be that we would be

7     precluded from getting those things from anybody other than the

8     Plaintiffs' Steering Committee.  I don't think that's the

9     intent, but I'm concerned about a possible reading that way.

10         THE COURT:  Right.  Let me hear from you.

11         MR. HERMAN:  I appreciate again all of the

12    Attorneys General that have engaged in these discussions,

13    and I'll try to be brief.  And I'm going to state it as

14    succinctly and clearly as I can on the record, and I think

15    I've done it already.

16         You have a depository in New York so you don't have to

17    travel.  There is a depository in Alabama.  There is a

18    depository here.  All of the unannotated production is

19    available.  We've made that offer before; we continue to make

20    it.  If there is a cost in reproducing something or in getting

21    it electronically, you go out and bid it, and we'll facilitate

22    it.  But we're not going to produce it at our costs, but it's

23    open.

24         In terms of trial transcripts, those are public

25    records.  Same issue.  That would include any deposition that

1 was offered in evidence, read to a jury, and it would include

2 exhibits.  You can go out and bid whoever you wanted to get

3 copies of those.  You want us to do it, we'll do it.

4    In terms of other depositions, I think there is a

5 problem.  And the problem is, that lawyers claiming a Common

6 Benefit who don't have any Common Benefit fee at this point are

7 claiming that they did those, prepared for those depositions,

8 some of them lasting weeks.  They paid for the experts that

9 testified, and there is an issue there.  Our view is, we don't

10 want to fight about it.  We want to facilitate movement through

11 the court, which is why we specifically reserved contested

12 issues for the Court to decide based upon motions, briefing,

13 argument.  The Court issues its order as to whether there is

14 going to be an assessment or not.  And I think that's the fair

15 thing to do.

16    In terms of getting materials from other folks, if

17 somebody has got a Trial Package and they signed an agreement

18 with us, and somehow you accessed that Trial Package -- and I'm

19 certain we'll bring a motion -- if you want a view of the Trial

20 Package, we have made views of the Trial Package available to

21 numerous attorneys.  All that you have to do is to make

22 arrangements; come in.  We'll do it at your convenience, and we

23 will give you a view of the Trial Package.

24    In terms of depo cuts, they're in the transcript.  The

25 transcripts are made available.  You've got all that work effort

1       that was done, and the cost of it is the cost of reproduction.

2       Now I don't think how we can be any fairer than that.  I do know

3       this, that the PSC is responsible and the committees of court is

4       responsible; received 100 fee applications for Common Benefit

5       work; have each one of those firms submit affidavits, have

6       interviewed those folks on the record.  They would be plenty

7       upset for governmental entities just to walk in and use that

8       work product without at least the PSC bringing to the Court the

9       issue.

10              But you can get started today, tomorrow with trial

11      transcripts, with all the raw documents, et cetera.  That's

12      easy.  Just notify us and you have it.

13              THE COURT:  I really don't see the -- I don't see

14      an issue, but maybe I'm missing it.

15              MR. FOX:  Your Honor, I think where we might be

16      differing here is particularly about the depositions that

17      were not submitted in their entirety at Vioxx trials in the

18      past.  I understand Mr. Herman in saying there is no issue

19      about our gaining access to documents and perhaps even

20      opening the door to our providing him with hard drive so we

21      can get a full copy.  The same is true for depositions that

22      were actually submitted at trial in full.

23              There are other depositions which were submitted in

24      part at trial and were not used at trial, and may be important

25      to our case.  We can't know that until we actually see them.

1       And the question is, how can we gain access to those?

2               THE COURT:  But there is a special issue there,

3       and he brings the issue.  There is no question that you

4       should be able to gain access to them.  The issue is

5       whether or not that is work product and these individuals

6       ought to be reimbursed.  If the deposition hasn't been

7       admitted into evidence, and the person who took the

8       deposition paid the expert to give the deposition or to

9       take the time to give the deposition, and that deposition

10      has worked to the common benefit of everyone, but it has

11      not been introduced into evidence, he suggest that this may

12      be a difference and that a different rule ought to apply.

13              I don't know whether that's right or not, but I

14      certainly would be interested in what your view is with specific

15      to depositions and specific amounts, and things of that sort.

16              MR. FOX:  Well, my --

17              THE COURT:  I'm not able to make a category --

18      categorical answer because it's just -- it's too nuanced.

19              MR. FOX:  My first response, Your Honor, is that

20      we would like to be entitled to exactly what the State of

21      Texas got when it served request upon Merck.  It got copies

22      of those very transcripts.  I don't know the status of the

23      federal criminal investigation, but I would venture to

24      guess that they got copies of those as well.

25              At this point, those are witness statements, and we're

1    entitled to seek witness statements in discovery for the

2    reasonable cost of the reproduction.  The cost of doing that

3    work, I can't cite what that is, but I'm sure it's substantial,

4    but it's also being sought elsewhere.

5         So basically we're seeking exactly what we would have

6    if the case had never been removed.  We would be able to ask for

7    those things in discovery in our home courts.

8         THE COURT:  Okay.  Well, as I say, I'm not

9    going -- I'm going to give everybody an opportunity to look

10   at it and rule on it if you can give me some specific

11   depositions that you need, the names, the depositions, and

12   then I'll hear from the PSC as to what their position is.

13   And if they take a different position, I'd be interested in

14   knowing what the cost is and how much they're looking for,

15   or whatever it is.  And I'll give each side an opportunity

16   it review it, and I'll consider it, and then I'll have to

17   rule on it.

18        MR. FOX:  We have asked for a listing of those

19   depositions, Your Honor.  I haven't seen a response as of yet.

20        MR. HERMAN:  Come to the depository.  There is

21   one right near your office in New York.  They'll be

22   happy -- you send a paralegal.  They'll show you the

23   depositions.  You take down the date, the name, et cetera.

24   It's right there for you.

25        MR. FOX:  And if we -- it raises the question of, if

1    we don't get them through the PSC, what other opportunities do

2    we have to get them?  Can we seek them through discovery from

3    Merck?  Can we retake them?

4              THE COURT:  Yeah, well, you know --

5              MR. HERMAN:  I can't respond to that.

6              THE COURT:  I don't know whether Merck can respond to

7    that either.  You know, when you're talking about depositions,

8    you have to know that in this case there were several thousand

9    depositions taken.  Documents go into 10 million at this point.

10   For you to just say "depositions" and "documents," it's just --

11   I'm not able to focus on it in that fashion for you.  I just --

12   particularly not hearing from either side.  But the only thing I

13   can tell you -- and I tell the other side too -- is that, I'm

14   going to listen to each side and deal with it.  And then

15   whatever you do -- either appeal or mandamus me or do something

16   else, but I don't know any other organized way of doing it.

17             MR. HERMAN:  Your Honor, just -- counsel --

18   learnt counsel may not be -- may not understand that over a

19   million dollars was just paid to a Special Master in this

20   case just on the issue of privilege.  But I know that Mr.

21   Meadow would like to respond or the AGs and Mr. Dugan.

22             MR. MEADOW:  Good afternoon, Your Honor, Rick Meadow

23   from the Lanier Law Firm.  As you know, we tried three of the

24   cases.

25             THE COURT:  Right.

1          MR. MEADOW:  In the PI cases.

2          THE COURT:  Uh-huh.

3          MR.  MEADOW:  We represent, or were trial counsel to

4     Utah, Colorado and Alaska, in addition to Michigan, which was

5     remanded.  Being intimately familiar with what's in the Trial

6     Package and in the depositories and what raw -- considered "raw

7     documents" -- we're okay with the order going in as-is.

8          We're more than happy to let Your Honor decide at

9     a later date what the assessment is.  We just want to get

10    moving --

11         THE COURT:  Right.

12         MR. MEADOW:  -- with our cases, so we're in favor of

13    this order.  Now I don't want to hang Mr. Fox out, but I've

14    expressed it to him in public and in private that this is the

15    way we want to proceed.

16         THE COURT:  Okay.

17         MR. MEADOW:  So we think Mr. Herman's approach is the

18    right one at this time.

19         THE COURT:  All right.  Anybody else?  Jim, you

20    have something?

21         MR. DUGAN:  Good morning, Your Honor, James Dugan

22    on behalf of the Louisiana Attorney General.  And, yeah,

23    we're  absolutely not going to hang Mr. Fox out.  We've all

24    been working very well together, Your Honor.  And if you

25    remember, Your Honor, in July of last year you convened

1      the first status conference on behalf of the Louisiana

2      Attorney General.  And I just wanted to say that the

3      schedule was a lot of work with Merck, with the other AGs,

4      Ms. Barrios, and the PSC.  So built into this order, I just

5      wanted to let you know, Your Honor, the Louisiana AG has a

6      trial schedule built into this order, whereas the other

7      Attorney Generals are going to be seeking Motions to

8      Remand --

9                    THE COURT:  Right.

10                   MR. DUGAN:  -- at the end of the day.  I would hope

11     that after today's conference Mr. Fox has a comfort level that

12     Your Honor is very fair and will give everybody an opportunity

13     to be heard.  And we'll continue to work with Mr. Fox to make

14     sure that everything is -- and my intention today is to --

15     hopefully Mr. Fox will agree -- that the order that can be

16     signed -- because we had dates that are built into this, Your

17     Honor, that it's been about three weeks or so that it's starting

18     to get stale.

19                   THE COURT:  Right.

20                   MR. DUGAN:  I would ask Your Honor to take it

21     under consideration.

22                   THE COURT:  Sure.

23                   MR. DUGAN:  So does Your Honor actually have the

24     order that --

25                   THE COURT:  I don't have a copy of the order.

1          MR. HERMAN:  I have the order, and the language

2     Mr. Fox is concerned about is yellow-lined.

3          THE COURT:  Okay.  That's fine.

4          MR. HERMAN:  I have a clean copy also.

5          THE COURT:  Okay.  All right.  Good.  Okay.  All

6     right.  Do you have anything, Tom?

7          MR. SOBOL:  Yes, Your Honor.  Just going back to

8     the Third Party Payor --

9          THE COURT:  Yeah.

10          MR. SOBOL:  -- issue for a moment, I think it would be

11     remised.  You had issued an order on April 17th for trial

12     counsel for each one of the plaintiffs, 20 plaintiffs that have

13     been designated to appear here today.  I just wanted you to know

14     that all counsel, they're pretty much in the jury box with the

15     exception of Mr. Riley, who is hiding in the back for some

16     reason.

17          THE COURT:  Okay.  All right.  Mr. Riley.

18          MR. SOBOL:  Apparently, he might have been one of the

19     picks by Merck (laughter).

20          THE COURT:  Okay.

21          MR. SOBOL:  But actually it gave us the opportunity --

22     Mr. Dugan was kind enough to sponsor a meeting yesterday.  We're

23     in the process of organizing ourselves.  Obviously, we know you

24     can't have 20 separate cases preparing themselves.  It really is

25     a common effort to, and we're doing what we can to push that

1   forward.

2           THE COURT:  Okay.  Fine.  I appreciate you-all coming

3   and appreciate your input.  I'm trying to put some organization

4   into it so that everyone can benefit from the ones that are

5   going to trial so that you can take a look at it.  That's why

6   your input is available because I don't want to try a case if

7   it's the only case in the whole census that's like that.  Nobody

8   gets any benefit out of it.  So make sure that the cases that

9   are picked are representative type cases that you can learn

10  from.

11          MR. DAVIS:  Your Honor, Leonard Davis on behalf

12  of the Plaintiffs Liaison Counsel.  Mr. Sobol and some of

13  the other Third Party Payors have requested, prior to the

14  issuance of the order, that a Certification of Compliance

15  with that order had taken place.  That certification was

16  not filed with the Court because there wasn't an order at

17  that time.

18          THE COURT:  Right.

19          MR. DAVIS:  But, in fact, counsel did certify that

20  they had gone through and selected the various cases.

21          THE COURT:  Okay.  Great.  Okay.  That's fine.  All

22  right.  Anything else on this Proposed Order, Pretrial Order?

23          MR. FOX:  Your Honor, if I could add one more

24  thought.  I do hope that the Court doesn't take anything

25  I've said as suggesting that we are not very eager to get a

1    Scheduling Order in place.

2              THE COURT:  Right.

3              MR. FOX:  And our proposal takes out the, perhaps the

4    presaging of a cost for some of these things where we don't

5    think a cost is appropriate.

6              THE COURT:  Okay.

7              MR. FOX:  And that's why we took out those two

8    sentences.

9              THE COURT:  Okay.

10             MR. FOX:  And thought that would be an appropriate way

11   to proceed at this time.

12             THE COURT:  Sure.  Okay.  All right.  I understand the

13   issue, and it's all on the record.  As I mentioned to you with

14   cost, if there is any cost -- before any cost is assessed -- I

15   would give people an opportunity to consider it, to brief it, to

16   argue it to me.

17             If there is any evidence or anything that might

18   be of help to you in advancing your position, I want you to

19   feel comfortable to do it, and then I'll listen to it and

20   I'll make a decision.  I'm not going to grant cost or deny

21   cost in advance before I know what the specific facts of

22   the matter are, until I hear from the parties.  But, I

23   appreciate your observations, and I'm going to be executing

24   this order so that we can start the case.  But, thank you

25   for coming.

1          MR. FOX:  Thank you, Your Honor.

2          THE COURT:  Any other issues?  Anybody?  Anything

3    from anybody?  Okay.  Court stands in recess.  Thank you

4    very much.

5          MR. DUGAN:  Thank you, Your Honor.

6          MS. BARRIOS:  Whoever hasn't signed in, would you do

7    the sign-in sheet, please?

8

9               (At which time the proceedings were concluded for

10               the day.)

11

12

13

14                           **CERTIFICATE**

15          I, Pinkey Ferdinand, Official Court Reporter, United

16    States District Court, Eastern District of Louisiana, do hereby

17    certify that the foregoing is a true and correct transcript, to

18    the best of my ability and understanding, from the record of the

19    proceedings in the above-entitled and numbered matter.

20

21                         S: PINKEY FERDINAND
                         _____
22                            Pinkey Ferdinand,
                            Official Court Reporter
23

24

25