UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX                              :    MDL NO. 1657
    Products Liability Litigation     :
                                      :    SECTION: L
Gene Weeks,                               :
                                      :    Judge Fallon
Plaintiff,                                :
                                      :    Mag. Judge Knowles
v.                                        :
                                      :
Merck & Co., Inc.,                        :
                                      :
    Defendant.                        :
                                      :
.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. ........ ... :

## COMPLAINT

    COMES NOW the Plaintiffs, Gene Weeks, and sues Defendant, MERCK & CO., INC., (hereinafter "Merck") and allege:

    1.    This is an action for damages that exceeds Seventy-Five Thousand Dollars ($75,000.00).

    2.    Plaintiff, Gene Weeks at all times material to this action was a resident of Lake County, Florida.

    3.    Pursuant to this Court's Pre-Trial Order No. 11, Merck has agreed that this case may be filed directly with this Court for participation in MDL proceedings, pursuant to 28 U.S.C. § 1404 (a). Upon completion of these proceedings, venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391, as all facts/events material hereto occurred in Lake County, Florida.

    4.    Plaintiff, Gene Weeks began ingesting Vioxx® from September of 1999 for pain.

    5.    After taking Vioxx for a prolonged amount of time, Gene Weeks sustained a heart attack on March 8, 2004, which required emergency care and surgical intervention. As a result of taking Vioxx, Gene Weeks sustained significant and permanent heart damage.

PLAINTIFF'S EXHIBIT
1

6. The Plaintiff was not warned that Vioxx was dangerous to his health.

7. Defendant, MERCK & CO., INC., ("Merck") is a New Jersey corporation that maintains a principal place of business at One Merck Drive, Whitehouse State, New Jersey. At all times material, Merck was authorized to conduct business in Florida.

8. This action arises out of the Defendants' manufacturing, selling, distributing, marketing and/or otherwise promoting Vioxx® without notice to potential consumers of the potential dangers associated with ingestion of this drug.

9. At all times material hereto, Merck was in the business of developing, manufacturing, selling, distributing, labeling, marketing and/or promoting Vioxx® (Rofecoxib) for consumer use by prescription.

10. Vioxx® (Rofecoxib) is a prescription drug designed to treat pain through reduced inflammation. Vioxx® (Rofecoxib) is a Cox-2 selective non-steroidal anti-inflammatory agent (NSAID). Defendant, Merck did develop, manufacture, design, package, market, sell and distribute this drug in the State of Florida at all times relevant to this action.

11. Merck began the distribution and sale of Vioxx® in May 1999 throughout the United States, including Florida. At that time, Vioxx® was approved for the reduction of pain and inflammation caused by osteoarthritis, acute pain, and menstrual pain. It was subsequently approved to treat rheumatoid arthritis.

12. When Merck launched Vioxx®, it was in direct competition with the manufacturers of Celebrex® (celecoxib). Celebrex was approved for use in treating pain and inflammation associated with arthritis and was launched approximately three months before Vioxx®. As such, Celebrex®, had approximately a three (3) month head start on market share.

13. In order to corner the market on prescription non-steroidal, anti-inflammatory drugs, Merck began an aggressive marketing campaign including detailing through its sales representatives and direct to consumer advertising.

14. Merck spent approximately $100 million per year on its direct to consumer advertising. As part of its marketing campaign, Merck concealed the serious cardiovascular risks associated with Vioxx®. Merck concealed these risks because safety concerns regarding adverse cardiovascular events would have had serious negative consequences on Merck's market position.

15. Merck knew (or should have known) about the serious cardiovascular risks associated with the use of Vioxx® because those risks were evident during the Vioxx® Gastrointestinal Outcomes Research ("VIGOR") project sponsored by Merck. Merck initiated the VIGOR study because, in general, non-steroidal, anti-inflammatory medication have been linked with gastrointestinal problems. Merck would gain market share if Vioxx® uniquely caused fewer gastrointestinal problems.

16. Merck knew as early as 1997 that Vioxx® was associated with adverse cardiovascular risks. Merck official, Briggs Morrison, advised in a February 25, 1997 email that unless patients in a Vioxx® study group also received aspirin, "you will get more thrombotic events and kill the drug."

17. The VIGOR study results were released in March 2000. Merck discovered during the VIGOR study that patients taking Vioxx® had a statistically significant increase in adverse cardiovascular events. The heart attack rate for Vioxx® study patients was four to five times greater than those receiving naproxen. Merck submitted these findings to the FDA in early 2000.

18. On March 9, 2000, Merck's research chief, Edward Scolnick, sent an email to his colleagues advising that the adverse cardiovascular events associated with the use of Vioxx® "are clearly there."

19. Despite the findings, Merck continued to conceal or minimize the cardiovascular risks associated with Vioxx® use. On May 22, 2001, Merck issued a press release entitled "Merck Reconfirms Favorable Cardiovascular Safety of Vioxx."

20. The Food and Drug Administration (FDA) was so concerned by Merck's activities that on September 17, 2001, it issued a seven and a half (7-½) page warning-letter to Merck. The FDA summarized its concerns as follows:

> You have engaged in promotional campaign for Vioxx that minimizes the potentially serious cardiovascular findings that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx. Specifically, your promotional campaign discounts the fact that in the VIGOR study, patients on Vioxx were observed to have four to five fold increase in myocardial infarctions (MIS) compared to patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (naproxen)
>
> You have also engaged in promotional activities that minimize the Vioxx/Coumadin (warfarin) drug interaction, omit important risk information, make unsubstantiated superiority claims against other NSAIDS and promote Vioxx for unapproved uses and an unapproved dosing regiment. In addition, in misrepresenting the Vioxx/warfarin drug interaction you also misrepresent Vioxx' safety profile by minimizing the potentially serious risk of significant bleeding that can result from using Vioxx and warfarin concomitantly.
>
> Your minimizing these potential risks and misrepresenting the safety profile for Vioxx raise significant public health and safety concerns. Your misrepresentation of the safety profile for Vioxx is particularly troublesome because we have previously, in an untitled letter, objected to promotional materials for Vioxx that also misrepresented Vioxx's safety profile.

21. In its September, 2001 warning letter, the FDA noted that the promotional activities and material included promotional audio conferences given on behalf of Merck by Peter Holt, MD, a press release and oral representations made by Merck sales representatives to promote Vioxx®.

22. In addition to the promotional activities, Merck also attempted to suppress independent physicians and academics who were criticizing Vioxx® in 2000 and 2001.

23. Merck had control over the design, manufacturing, assembly, labeling, warning, packaging, marketing, advertising, promotion, direct-to consumer advertising, and/or sale of the drug Vioxx®.

24. At all times material, Merck actually knew of the defective nature of its product, Vioxx®, yet continued to design, manufacture, market, promote, distribute and sell its product so as to maximize company sales and profits at the expense of consumer safety and health and in conscious disregard of the foreseeable harm caused by Vioxx®.

25. Merck's conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, ill will, recklessness, gross negligence and/or willful and intentional disregard to the plaintiff's rights.

26. Although Merck knew or should have known that dangerous cardiovascular risks were associated with the use of Vioxx®, it continued on its aggressive marketing campaign and continued to manufacture, package, distribute, promote and sell Vioxx® without adequate warnings of the serious side effects and risks.

27. On September 30, 2004, Merck withdrew Vioxx® from the market, in part, based on data from a research trial (Approve) that was discontinued midway showing there was an increased risk of adverse cardiovascular events, such as heart attack and stroke for consumers taking Vioxx®.

28. Vioxx had sales of $2.5 billion in 2003.

## COUNT I
## STRICT LIABILITY AS TO MERCK & CO., INC.

Plaintiffs adopt by reference all of the General Allegations contained in paragraphs 1 through 28 above, each exclusive, as though fully set forth herein, and further alleges:

29. The drug product, Vioxx® was defective and unreasonably dangerous when it left the possession of the Defendant manufacturer, Merck in that:

   a. When placed in the stream of commerce, Vioxx® contained unreasonable dangers, designs, and defects, and was not reasonably safe as intended to be used, subjecting plaintiff to risks which exceeded the benefits of the drug;

b. When placed in the stream of commerce, Vioxx® was defective in design and formulation, making use of the drug more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with plaintiff's conditions;

c. Vioxx® contained insufficient warnings to alert consumers, the consumer's prescribing physicians and users of the severe, life threatening complications and side effects, including but not limited to adverse cardiovascular events.

d. There was misleading advertising and promotion concerning the benefits of using Vioxx® and;

e. There are inadequate post-marketing warnings or instructions, because Merck knew or should have known of the significant cardiovascular risks associated with the use of Vioxx®. Merck failed to provide adequate warnings to consumers and the consumer's prescribing physicians and continued to aggressively promote and advertise direct to consumers the sale and use of the drug.

30. Plaintiff, Gene Weeks used Vioxx® for its intended purpose.

31. The drug Vioxx® was not materially altered or modified prior to use by Plaintiff, Gene Weeks.

32. Prescribing physicians do not have substantially the same knowledge as manufacturers regarding prescription medication. Prescribing physicians rely on manufacturers to provide adequate and appropriate warning regarding their products.

33. Merck had a continuing duty to prove accurate and adequate warning to prescribing physicians of the dangers, risks and reactions associated with the use of Vioxx®.

34. The warning given by Merck to prescribing physicians regarding Vioxx® were deficient, inadequate, not accurate, unclear, misleading and/or ambiguous.

35. Plaintiff could not have discovered any defects in Vioxx® through the exercise of due care.

36. As a direct and legal result of the defective condition of the drug Vioxx®, plaintiff suffered resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future, medical and nursing expense, and loss of ability to earn money sustained in the past and any such loss in the future.

**WHEREFORE**, Plaintiff, Gene Weeks, demands judgment against Merck & Co., for all allowable damages. Plaintiff demands a trial by jury on this action.

## COUNT II
## NEGLIGENCE BY MERCK & CO., INC.,

Plaintiff adopts by reference all of the General Allegations contained in paragraphs 1 through 28 above, each inclusive, as though fully set forth herein, and further alleges:

37. At all times material hereto, Merck had a duty to exercise reasonable care in the design, manufacture, testing, processing, labeling, packaging, advertising, marketing, distribution and sale of its products.

38. Defendant, Merck, knew or should have known that its prescription medication Vioxx® caused unreasonably dangerous risks and serious side effects. Despite its knowledge, Merck, aggressively advertised, marketed, sold and distributed Vioxx®, knowing that there were safer methods and products for use with pain and inflammation.

39. Defendant was negligent and breached their duty in the following manner:

a. Merck failed to adequately and properly test its drug product, Vioxx® before placing Vioxx® on the market.

b. Merck failed to adequately, accurately and appropriately warn prescribing physicians of the significant risk of cardiovascular events associated with the use of Vioxx®.

c. Merck concealed the dangerous properties of Vioxx® in order to increase its market share.

40. As a direct and legal result of the foregoing, plaintiff suffered resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future, medical and nursing expense and loss of ability to earn money sustained in the past and any such loss in the future.

**WHEREFORE**, Plaintiff, Gene Weeks, demands judgment against Defendant, Merck & Co., for all allowable damages. Plaintiff demands a trial by jury on this action.

## COUNT III
## NEGLIGENT MISREPRESENTATION BY MERCK & CO., INC.,

Plaintiffs adopt by reference all of the General Allegations contained in paragraphs 1 through 28 above, each inclusive, as though fully set forth herein, and further alleges:

41. Merck knew or should have known that its prescription medication, Vioxx®, caused unreasonable dangers, risks and serious side effects.

42. Despite its knowledge, Merck aggressively advertised, marketed, sold and distributed Vioxx® knowing there were safer methods and products for use with pain and inflammation.

43. Defendants negligently misrepresented to the plaintiffs and plaintiff's prescribing physician the safety and effectiveness of the drug Vioxx®, and/or negligently misrepresented material information regarding the drug, and/or negligently misrepresented adverse information regarding the safety and effectiveness of the drug Vioxx®.

44. Merck's negligent misrepresentations were communicated to plaintiff's prescribing physician with the intent that they reach the plaintiff and that the effect of such representation would be that prescriptions would be written for the drug consuming public, including the plaintiff.

45. Merck misrepresented material and adverse information regarding the safety and effectiveness of its product, Vioxx®.

46. Merck made these representations and actively concealed adverse information at a time when the defendant knew, or should have known, that their drug product had defects, dangers, and characteristics that were other than what Merck and its representatives had represented to prescribing physicians or other dispensing entities, the FDA and the consuming public, including plaintiff.

47. The misrepresentations of Merck were perpetuated directly and/or indirectly by Merck and its employees, agents and/or other detail persons.

48. The misrepresentations by Merck constitute a continuing tort.

49. Through Merck's product inserts, Merck continued to misrepresent the potential risks and complications associated with the drug both before and after plaintiff, Gene Weeks ingestion of the drug.

50. Defendant, Merck, had a continuing duty to warn plaintiff and/or plaintiff's prescribing physicians in a timely manner about the potential risks and complications associated with Vioxx®.

51. Merck, misrepresented the safety and efficacy of Vioxx® in its labeling, advertising, product inserts, promotional materials and other marketing efforts.

52. As a direct and legal result of the negligent misrepresentation of Merck, plaintiff suffered resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future, medical and nursing expense and loss of ability to earn money sustained in the past and any such loss in the future.

**WHEREFORE**, Plaintiff, Gene Weeks, demands judgment against Merck & Co., for all allowable damages. Plaintiff demands a trial by jury on this action.

## COUNT IV
## FRAUD BY MERCK & CO., INC.

Plaintiffs adopt by reference all of the General Allegations contained in paragraphs 1 through 28 above, each inclusive, as though fully set forth herein, and further alleges:

53. Merck fraudulently or intentionally misrepresented to the plaintiff and/or plaintiff's prescribing physician the safety and effectiveness of Vioxx® and/or fraudulently or intentionally concealed material information regarding the drug and/or fraudulently or intentionally misrepresented adverse information regarding the safety and effectiveness of the drug. A summary of the statements and claims made by Merck and its representatives can be found in the September 17, 2001 Warning Letter sent by the FDA to Merck (attached as Exhibit "A")

54. Merck's fraudulent or intentional misrepresentations were communicated to plaintiff's prescribing physicians with the intent that they reach the plaintiff.

55. Merck knew that their representations were false.

56. Plaintiff's prescribing physician, and plaintiff relied on the representation of Merck, and its representatives, and approved the continuing use of Vioxx® by Gene Weeks from September 1999 to May 2001.

57. Merck made the fraudulent or intentional misrepresentation and/or actively concealed adverse information with the intent and specific desire that the plaintiff, the plaintiff's prescribing physicians, and/or dispensing entities and the consuming public would rely on such false information in selecting treatment for pain and inflammation.

58. Merck intentionally concealed material, adverse information regarding the safety and effectiveness of Vioxx®.

59. Merck made the fraudulent or intentional misrepresentations and actively concealed adverse information at a time when Merck knew that Vioxx® had defects, dangers, and characteristics that were other than what Merck had represented to the prescribing physician

or other dispensing entities, the FDA and the consuming public, including plaintiff Gene Weeks. Specifically, Merck fraudulently or intentionally misrepresented to and/or actively concealed from plaintiff, plaintiff's prescribing physicians, or other dispensing entities, the FDA, and the consuming public the following adverse information regarding the drug Vioxx® as ingested by plaintiff, Gene Weeks:

1. That Vioxx® carried risks of serious adverse effects;

2. Despite knowing that there were serious risks of adverse cardiovascular events, Merck aggressively marketed, promoted, advertised direct to the consumer, and/or sold the drug as if there was no risk;

3. Failed to advise plaintiff, plaintiff's prescribing physicians and others that prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious adverse cardiovascular actions.

60. The fraudulent or intentional misrepresentation and/or active concealment by Merck were perpetuated directly and/or indirectly by Merck, its employees, agents and/or other detail persons.

61. The fraudulent or intentional misrepresentation and/or concealment by Merck constitute a continuing tort.

62. Through Merck's product insert, Merck, continued to fraudulently or intentionally misrepresent the potential risks associated with Vioxx®.

63. Merck had a continuing duty to warn plaintiff and plaintiff's prescribing physicians of the drug product in their labeling, advertising, product, inserts, promotional material, direct to consumer advertising or other marketing efforts.

64. Merck fraudulently and intentionally misrepresented the safety and efficacy of Vioxx® in their labeling, advertising, product insert, promotional material, direct-consumer advertising, or other marking efforts.

65. Plaintiff and plaintiff's prescribing physicians and dispensing entities justifiably relied to their detriment on and/or were induced by the fraudulent or intentional misrepresentations and/or concealment by Merck, regarding the safety and effectiveness of Vioxx®.

66. As a direct and legal result of the fraudulent and intentional misrepresentation of and/or active concealment by Merck, Plaintiff, Gene Weeks, ingested Vioxx® and sustained resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future, medical and nursing expense and loss of ability to earn money sustained in the past and any such loss in the future.

**WHEREFORE**, Plaintiff, Gene Weeks, demands judgment against Merck & Co., for all allowable damages. Plaintiff demands a trial by jury on this action.

## COUNT V
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY MERCK & CO., INC.

Plaintiffs adopt by reference all of the General Allegations contained in paragraphs 1 through 28 above, each inclusive, as though fully set forth herein, and further alleges:

67. This is action brought pursuant to Florida Deceptive and Unfair Trade Practices Act, contained at Fla. Stat., Section 501.201 et seq.

68. As detailed more specifically in the "Warning Letter" attached as "Exhibit A", defendant, Merck engaged in marketing and promotional activities that were found to be "false, lacking in fair balance, or otherwise misleading" in violation of the Federal Food, Drug, and Cosmetic Act and applicable regulations.

69. Such "false, lacking in fair balance, or otherwise misleading" advertising and promotional activities violate the Florida Deceptive and Unfair Trade Practices Act, which makes it unlawful to engage in unfair methods of competition, unconscionable acts or practices

and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat., Section 501.204

70. Pursuant to Section 501.211(2) of the Florida Deceptive and Unfair Trade Practices Act, plaintiff seeks actual damages plus attorney's fees and court costs for Merck's conduct that resulted in the injury to Plaintiff, Gene Weeks.

71. As a direct and legal result of the foregoing, plaintiff suffered resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future, medical and nursing expense and loss of ability to earn money sustained in the past and any such loss in the future.

**WHEREFORE,** Plaintiff, Gene Weeks, demands judgment against Merck & Co., Inc., for damages, attorney's fees and court cost. Plaintiff demands a trial by jury on all issues to be tried.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Complaint has been served on Liaison Counsel, Russ Herman and Phillip Wittman by U.S. Mail and email, and upon all parties electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, on this _____ day of September, 2005.

MARIA D. TEJEDOR, ATTORNEY-AT-LAW
Martinez, Manglardi, Diez-Arguelles & Tejedor
Attorneys Trial Group
540 N. Semoran Blvd.
Orlando, FL 32807
(407)381-4123
FBN: 0095834