# EXHIBIT G



25516606
Jun 5 2009
11:49AM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| In re: VIOXX Products Liability Litigation | * | MDL No. 1657 |
|  | * |  |
| This Document Relates to: | * | SECTION L |
|  | * |  |
| All Government Actions | * | JUDGE ELDON E. FALLON |
|  | * |  |
|  | * | MAGISTRATE JUDGE |
|  | * | KNOWLES |
|  | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## GOVERNMENT ACTION PLAINTIFFS' FIRST SET OF MASTER DOCUMENT REQUESTS TO MERCK & CO, INC.

TO:   Merck and Company, and its attorneys:
      Phillip A. Wittmann, Esq.
      Stone, Pigman, Walther, Wittmann, L.L.C.
      546 Carondelet Street
      New Orleans, Louisiana 70130-3588
      Merck & Co, Liaison Counsel

PLEASE TAKE NOTICE THAT, Pursuant to Rule 34 of the Federal Rules of Civil Procedure and PTO 39, the Government Action Plaintiffs, through Plaintiffs' Liaison Counsel, propound the following Master Document Requests to Defendant Merck & Co., Inc to produce for inspection and copying the documents and materials described below in accordance with the Definitions and Instructions set forth below, and PTO 39.

1

## DEFINITIONS

1. "Address" means the telephone number, street number, street name, city, state, and zip code of the subject person or entity. For a natural person, please provide both the home and business address.

2. "Beneficiary" means any person who is entitled to or has received coverage under a Government Health Program.

3. "Communication" means, without limitation, any act, action, oral speech, written correspondence, contact, expression of words, thoughts, and/or ideas, or transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, telex, facsimile, and/or any other process, electronic or otherwise. Communications in writing shall include printed, typed, handwritten, electronic and other readable documents.

4. "Coverage" means any payment to or reimbursement of, or agreement or obligation to pay or reimburse, in whole or in part, the costs of medical treatment, including prescription drugs.

5. "Document" is used in its broadest sense, and means the original and any non-identical copy, regardless of origin or location. Typical categories of material included within the term "document" are: books, pamphlets, periodicals, memoranda (including those of telephone and in-person conversations), letters, reports, notes, telegraphs, statements, records, diaries, minutes, bulletins, circulars, brochures, studies, instructions, working papers,

charts, work assignments, drawings, prints, flow sheets, graphs, invention disclosures, photographs, photomicrographs, microfilm, medical and hospital records and reports, x-ray photographs, drafts, advertisements, catalogs, paper, indices, tapes, disc, data sheet or data processing material, or any handwritten, recorded, transcribed, punched, taped, filmed or graphic matter, however, produced or reproduced in Your possession, custody or control or to which You have had access. "Document" includes all electronic or optical media or other information storage means, including film, tapes, computer disks or cares, databases, or personal data assistant memory. When any Document contains any marking not appearing on the original or altered from the original, such item shall be considered to be separate original documents.

6.  "Drug Utilization Review Board" means the advisory board to the Government Health Program consisting of physicians and pharmacists, and any agent, representative, or present or former employee thereof or as defined by relevant statute.

7. "Eligible Recipient" is any individual who is entitled to or has received coverage under or whose prescriptions were paid for by, in whole or in part, public funding through a Government Health Program.

8. "FDA" is used to refer to The Food and Drug Administration and any department, agent, director, officer, representative, or present or former employee thereof.

9. "Government Entities" or "Government Entity" means, separately, those states, counties, cities, and political subdivisions that are Plaintiffs in the MDL

3

No. 1657 collectively referred to as the "Government Action" subgroup, which currently consists of the following: Alaska ; Chautauqua County, NY; Colorado; County of Santa Clara;  the District of Columbia; Erie County, NY; Florida; Louisiana; Mississippi; Montana; New York State; New York City, Orange County, NY;  Commonwealth of Pennsylvania; and Utah; and as described in PTO 38.

10. "Government Health Program" or "Government Program" means any of the government-sponsored or administered programs for which the Government Entities seek herein to recover damages of any kind, and includes, but is not limited to, the programs themselves (such as a State Medicaid program), and (a) all persons employed by the Government Entities sponsoring or administering such programs and (b) all persons contracted to or otherwise acting to effectuate the goals of such programs, including, but not limited to, any third party administrator, managed care organization, pharmacy benefit manager, wholesaler or administrator acting on behalf of such Government Entity or through whom such Government Entity acted with respect to the reimbursement for, or purchase of, pharmaceuticals, as well as any government sponsored employee health benefit plan.

11. "Health Care Provider" means any physician (including interns and residents), nurse, psychologist, psychiatrist, counselor, pharmacist, pharmacy, dispensary, hospital, clinic, or nursing home, or any other individual or entity who or which provides or assists in the provision of any medical, pharmaceutical or mental health treatment.

4

12. "Including" means "including but not limited to" and "including without limitation."

13. "Indirect Funding" means the funding of an activity or event useful to Defendant's pharmaceutical business, when such activity or event was not directly paid for by the Defendant, but was paid for by a person or vendor with whom the Defendant had contracted, and one of the expected services with the contracting party was the funding of such activities and events.

14. "Indirect Payments" means payments made to a third party by or through a person or vendor that has directly contracted with the Defendant where one of the expected services provided by the contracting party is the payment of third parties who are providing services useful to Defendant's pharmaceutical business.

15. "NSAIDs" means non-steroidal anti-inflammatory drugs.

16. "Merck Contract File" is defined as how Merck uses this term in its ordinary course of business, and shall include all Documents or other materials that Merck has in its possession that relate to any Government Entity.

17. "Payment" means a tender or payment of money or money's worth in goods or services, including but not limited to any form of remuneration, grant, honorarium, speaker fee, gift, grant, free travel or accommodation, compensation or other benefit, and includes Indirect Payments and Indirect Funding.

18. "Person" means any natural person or any entity, including any corporation, association, partnership, or other business or government enterprise.

19. "Relate to" or "Relating to" or "Concerning" means referring to, mentioning, reflecting, containing, pertaining to, evidencing, involving, describing, discussing, responding to, supporting, opposing, constituting or being a draft, copy or summary of, in whole or in part.

20. "Vendor" is a person or an entity which, in the ordinary course of its business, provides one or more of the following services to healthcare or pharmaceutical entities: (a) assistance in organizing, coordinating, planning or managing meetings or events; (b) assistance in writing, editing, placing, publishing or distributing medical articles or medical publications; or (c) assistance or consultation with marketing.

21. "VIOXX" is the drug rofecoxib, also known by the brand name VIOXX, and any predecessor or non-final derivation of the drug that later became VIOXX. Rofecoxib is used interchangeably with VIOXX or MK-0966 and includes Rofecoxib, VIOXX, MK-0966 or any other method of identifying the composition (or any portion thereof) of the drug that is now known as VIOXX.

22. "VIOXX Representatives" or "Professional Representatives" means persons employed or contracted, directly or indirectly, by Merck to promote VIOXX to Health Care Providers, including but not limited to professional representatives, field personnel, office based representatives, hospital representatives, A&A specialty representatives, A&A HSAs, CV specialty representatives, CV specialty HSAs, national account executives, customer services managers and customer managers.

6

23. "You," "Your," "Yours," or "MERCK" refers to Defendant MERCK & CO., INC., as well as all its partners, directors, officers, employees, servants, agents, attorneys, joint ventures, or other representatives, including all corporations and entities affiliated with MERCK & CO., INC. The terms "You" or "Your" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or other representatives. The terms "YOU" or "YOUR" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or other representatives.

## INSTRUCTIONS

A. Where a request refers to documents concerning a "Government Entity", "Government Program" or "Government Health Program," Merck is to produce responsive documents relating to each separate Plaintiff Government Entity as if it had received a separate identically worded request for each such Plaintiff.

B. In producing documents and other materials, Merck is requested to furnish all documents or things in its possession, custody or control, wherever they may be located, and including documents located in the United States and outside the United States.

C. If You assert that the burden or expense of responding to any request or part thereof would outweigh its likely benefit, describe in detail the steps that

7

would have to be taken to respond fully to the request and the costs associated with taking such steps.

D.  In the event that any Document called for by this Document Request is withheld in whole or in part on the basis of a claim of privilege, that Document or the withheld portion thereof is to be identified as follows: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, the present custodian, the nature of the privilege asserted, and a description of the withheld material in sufficient detail to justify application of the privileges claimed.  Such information is to be provided even if the withheld document has been described on a privilege log prepared in response to other requests in this MDL.

E.  In the event that any Document called for by this Document Request has been destroyed, discarded, otherwise disposed of, no longer exists, that Document is to be identified as completely as possible, including, without limitation, the following information:   author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, Person authorizing disposal, Person disposing of the document, and identity of the last known location, and reason it is no longer in existence.  Such information is to be provided even if the withheld document has been described in a log prepared in response to other requests.

8

F.  In the event any information is redacted from a Document produced pursuant to this Document Request, that information is to be identified and the basis for the redaction is to be fully stated.

G.  In construing this Document Request, the singular shall include the plural and the plural shall include the singular.

H.  These requests are continuing requests that require supplemental responses as provided in Rule 26(e) of the Federal Rules of Civil Procedure.

I.  Documents shall be produced as they are kept in the ordinary course of business or shall be organized and labeled to identify any file number, file name, or any other file identification system utilized by Merck, as well as the location and custodian of such records.  These requests shall be deemed to include a request by the Plaintiffs to physically inspect any file drawer, filing cabinet or other storage device where documents responsive to these requests are maintained at the time of the inspection of such documents.

J.  Documents attached to each other should not be separated.

K.  Unless otherwise stated, the time period for these Document Requests is from January 1, 1995 forward in time.  It is noted, however, that many specific requests that follow, by requesting Documents concerning activities surrounding VIOXX while it was on the market, necessarily call for the production of documents from a narrower time frame.

L.  When a Document Request calls for the production of an electronic database file or Data File, this file must be produced in a form compatible with Microsoft Access, DB2 or in any other format agreed to by the parties.

9

M. If a Document Request calls for the production of database records or database files that no longer exist in electronic form, all hard copies of the requested records and files, even if not entirely complete, are to be provided.

N. If any responses to these Document Requests reference any documents already produced in this MDL, identify those documents by their Bates ranges or other identifier allowing Plaintiffs to easily locate same.

O. To the extent practicable, responses and Documents to the requests shall be segregated by Government Entity and produced in separate groupings.

## MASTER REQUESTS

1. All transcripts and recordings of all depositions, including errata sheets, of all current and former Merck employees, agents, representatives and experts, and all non-party witnesses in any litigation concerning VIOXX.

2. All exhibits from the depositions of all current and former Merck employees, agents, representatives and experts, and all non-party witnesses in any litigation concerning VIOXX.

3. All transcripts and recordings of testimony given in any action or before any tribunal, agency, or governmental or regulatory body, whether in the United States or abroad, concerning the safety, efficacy, design, testing, marketing, or sale of VIOXX.

4. All exhibits admitted into evidence in open court in all trials and hearings in or before any tribunal, agency, or governmental or regulatory body, whether

in the United States or abroad, concerning the safety, efficacy, design, testing, marketing, or sale of VIOXX.

5.  All reports of any expert or fact witnesses submitted by Merck in connection with any litigation concerning VIOXX.

6.  All sworn or written statements or testimony concerning VIOXX, including but not limited to affidavits, certifications, declarations, and witness statements.

7.  All of Merck's discovery responses in any litigation concerning VIOXX, including responses to interrogatories, requests for admissions and requests for production of documents.

8.  All records (including transcripts, exhibits, and briefing) on appeal submitted in each of the appeals taken in any litigation concerning VIOXX.

9.  All documents, including databases, previously produced in this MDL and in the consolidated VIOXX proceedings in New Jersey, California and Texas, particularly the databases containing Call Notes related to or referencing VIOXX, including but not limited to the Field Activity Customer Tracking System database.

10. All documents, data and information produced by You, whether voluntarily or involuntarily, concerning any governmental investigation initiated by any governmental entity, including the United States Senate, the FDA, the United States Department of Justice, or any state Attorney General  that relate to the development, manufacture, testing, marketing, sales or distribution of VIOXX.

11. All documents concerning communications relating to VIOXX between Merck and officials, agents, employees and representatives of the Government Entity or agencies and any agents of such Government Entity (including outside vendors) responsible for administering Government Health Programs in and for the Government Entities, including, but not limited to, the contents of EDossier.

12. All documents concerning communications relating to VIOXX between Merck and officials, agents, employees and representatives of the Government Entity or agencies and any agents of such Government Entity other than the ones responsible for administering the Government Health Programs in and for the Government Entity, including, but not limited to, the contents of EDosssier.

13. All documents concerning communications relating to VIOXX between Merck and officials, agents, employees and representatives of the Centers for Medicare & Medicaid Services (CMS) (including under its previous name, the Health Care Financing Administration (HCFA)).

14. All "Key Territory Information" sheets or other documents describing each sales territory recognized and used by Merck in the promotion of VIOXX that encompasses any part of the political subdivisions and/or the Government Health Program of any Government Entity.

15. Complete data concerning each VIOXX Representative who worked within the political subdivisions of each Government Entity, including: (a) last name; (b) first name; (c) middle name; (d) maiden or other name; (e) last 4

digits of the Social Security number; (f) job title(s); (g) date of hire; (h) date of termination; (i) cluster; (j) territory; (k) supervisor(s); (l) last known address(es) and telephone number(s); and (m) current employment status with Merck (e.g., active or terminated).

16. Complete data concerning the Health Care Providers called upon by each VIOXX Representative who worked within the political subdivisions of each Government Entity, including (a) the names of such Health Care Providers, (b) the dates of each such call; (c) the written materials the VIOXX Representative showed to the Health Care Provider at each such call; (d) the written materials the VIOXX Representative gave to or left with the Health Care Provider at each such call; and (e) the samples and other materials and goods the VIOXX Representative provided to the Health Care Provider at each such call.

17. Complete data concerning the  Government Health Programs called upon by each VIOXX Representative who worked within the political subdivisions of each Government Entity, including (a) the names of such representative of the Government Health Program, (b) the dates of each such call; (c) the written materials the VIOXX Representative showed to the  Government Health Program at each such call; (d) the written materials the VIOXX Representative gave to or left with the  Government Health Program at each such call; and (e) the samples and other materials and goods the VIOXX Representative provided to the  Government Health Program at each such call.

18. All data maintained by Merck concerning contacts of VIOXX Representatives with any Health Care Provider working within the political subdivision of any Government Entity, including, but not limited to, data maintained on the Field Activity Customer Tracking System (FACTS) and the Insight system.

19. All data maintained by Merck concerning contacts of VIOXX Representatives with any Government Health Program working within the political subdivision of any Government Entity, including, but not limited to, data maintained on the Field Activity Customer Tracking System (FACTS) and the Insight system.

20. All data maintained by Merck concerning educational programs relating to VIOXX that were attended by any Health Care Provider working within the political subdivision of any Government Entity, including, but not limited to data maintained in or accessible using the iMed and MESA applications.

21. All data maintained by Merck concerning educational programs relating to VIOXX that were attended by  any  Government Health Program working within the political subdivision of any Government Entity, including, but not limited to data maintained in or accessible using the iMed and MESA applications.

22. All data maintained by Merck concerning VIOXX samples given by VIOXX Representatives to Health Care Providers working within the political subdivision in any Government Entity including, but not limited to, data maintained on the Sample Accountability Management (SAM) database.

14

23. All data maintained by Merck concerning VIOXX samples given by VIOXX Representatives to Government Health Program working within the political subdivision in any Government Entity including, but not limited to, data maintained on the Sample Accountability Management (SAM) database.

24. All data maintained by Merck concerning contacts relating to VIOXX that were made by or on behalf of Health Care Providers working within the political subdivision in any Government Entity to Merck's National Service Center and National Business Group, including, but not limited to, data maintained in the Cornerstone database.

25. All data maintained by Merck concerning contacts relating to VIOXX that were made by or on behalf of any Government Health Program working within the political subdivision in any Government Entity to Merck's National Service Center and National Business Group, including, but not limited to, data maintained in the Cornerstone database.

26. All documents concerning plans, including, but not limited to, business plans, promotional plans, strategic plans, tactical plans, and business updates, for the promotion of VIOXX within the political subdivisions of each Government Entity and, separately, to any Government Health Programs.

27. All documents concerning the activities of VIOXX Representatives to promote VIOXX within the political subdivisions of each Government Entity and, separately, to the Government Health Program.

15

28. All documents concerning the reach and frequency and effectiveness of efforts to promote VIOXX within the political subdivisions of each Government Entity and, separately, to any Government Health Program.

29. All documents concerning performance reviews of VIOXX Representatives relating to their work within the political subdivisions of each Government Entity and, separately, to the Government Health Programs including, but not limited to, field trip reports, sales performance reviews, personal performance grids, year end reviews, and year end employee input forms.

30. All documents concerning the compensation, in any form, of VIOXX Representatives who worked within the political subdivisions of each Government Entity or with any Government Health Program.

31. All training, motivational and promotional materials concerning VIOXX You provided to VIOXX Representatives who worked within the political subdivisions of each  Government Entity or who promoted VIOXX to any Government Health Program,  including, but not limited to, sales guides, scripts, sales instructions, broadcast voice-mails, sales aids, detail aids, visual aids, and information bulletins.

32. All documents concerning the dissemination, distribution and availability of the following items to VIOXX Representatives who worked within the political subdivisions of each Government Entity or who promoted VIOXX to any Government Health Program:  (a) obstacle responses concerning VIOXX, (b) materials concerning "Obstacle JeopardXX," (c) materials concerning

16

"Dodgeball: VIOXX," (d) materials concerning the "Cardiovascular Card" or "CV Card"; and (e) the "V-Squad/Be the Power" videos.

33. All documents concerning communications relating to VIOXX between Merck and Health Care Providers working within the political subdivisions of the Government Entities, including but not limited to "Dear Doctor" and/or "Dear Health Provider" letters, call notes, materials from educational meetings and seminars, and documents concerning Professional Information Requests.

34. All documents concerning communications relating to VIOXX between Merck and Government Health Programs working within the political subdivisions of the Government Entities, including but not limited to "Dear Doctor" and/or "Dear Health Provider" letters, call notes, materials from educational meetings and seminars, and documents concerning Professional Information Requests.

35. All documents concerning the targeting of Health Care Providers and/or Government Health Programs working within the political subdivision of the Government Entities for the promotion of VIOXX, including, but not limited to, documents concerning Top 50 A & A Target lists and Victory 50 Target lists.

36. All documents concerning the targeting of Government Health Programs working within the political subdivision of the Government Entities for the promotion of VIOXX.

37. All documents concerning the VIOXX, COX-2 and NSAID prescription-writing habits of Health Care Providers working within the political subdivision of the Government Entities that were shared with or made available to VIOXX Representatives, including, but not limited to, data concerning such Health Care Providers on the Insight system, flags, grades and category ratings applied to Health Care Providers Monthly Physician Change Reports, Cox II Tracker reports, VIOXX Cox2 Tracker reports, Cox2 Top 75 VIOXX Tracker reports, Weekly Top 75 Coxib Tracker reports, Top 50 VIOXX Coxib Tracker reports, Coxib Monitor reports, Customer Flag and Factoid Reports, and Medicaid Flag and Factoid Reports.

38. All documents concerning the VIOXX, COX-2 and NSAID prescription-writing habits of Government Health Programs working within the political subdivision of the Government Entities that were shared with or made available to VIOXX Representatives, including, but not limited to, data concerning such Health Care Providers on the Insight system, flags, grades and category ratings applied to Health Care Providers Monthly Physician Change Reports, Cox II Tracker reports, VIOXX Cox2 Tracker reports, Cox2 Top 75 VIOXX Tracker reports, Weekly Top 75 Coxib Tracker reports, Top 50 VIOXX Coxib Tracker reports, Coxib Monitor reports, Customer Flag and Factoid Reports, and Medicaid Flag and Factoid Reports.

39. All "Defendant Merck Case Profile Forms" prepared in connection with any litigation related to VIOXX concerning patients or Health Care Providers working in the political subdivision of each Government Entities.  (A sample

18

form        from        the        MDL        appears        at

http://vioxx.laed.uscourts.gov/Forms/Final%20Merck%20Profile%20Form.pd

f).

40. All documents concerning programs relating to VIOXX that were attended or

participated in by (a) Health Care Providers or Government Health Programs

working within the political subdivision of, or (b) Government Health

Program working with, each Government Entity, including, but not limited to,

Health Education Learning (HEL) programs, symposia, colloquia, forums,

tutorials, speeches, roundtables, outreach programs, exhibits, facilitated

programs, audio conferences, clinical discussion groups, lunch & learn

sessions, educational sessions, peer-to-peer speaker programs, and

preceptorships.

41. All documents concerning the communications made by Thought Leaders for

VIOXX with the Government Health Programs, any agent or representative of

a Government Entity, or with any Health Care Providers working within the

political subdivision of each Government Entity

42. All documents concerning any gifts and payments made directly or indirectly

by Merck to any Health Care Professional working within the political

subdivision of each Government Entity including, but not limited to,

honoraria, travel, meals, tickets to events, and any form of gift or

compensation.

43. All documents concerning Merck's budgets for promoting VIOXX in and

with the Government Entities or Government Health Programs.

19

44. All documents concerning grants made by Merck from funds budgeted to VIOXX to persons or entities located within the political subdivision of the Government Entities including, but not limited to, grants to medical schools.

45. All documents concerning market research related to VIOXX that was performed within the political subdivisions of the Government Entities or by or concerning persons, Health Care Providers, Government Health Programs or entities working or located within the political subdivision of the Government Entities.

46. All documents concerning direct-to-consumer advertising of VIOXX that was published aired or otherwise disseminated in the political subdivisions of the Government Entities or the Government Health Programs.

47. All documents concerning any groups or taskforces established at or by Merck with a purpose of analyzing products for or promoting products to Medicaid programs, including, but not limited to, all documents concerning the Regional Medicaid Sales Taskforces.

48. All documents concerning the promotion of VIOXX to or Government Health Programs.

49. All documents produced in any VIOXX proceeding.

50. All sales data for all VIOXX sales, including but not limited to all IMS reports or data.

51. The entire Merck Contract File for each Government Entity and Government Health Program.

52. All documents identified or described in the responses to the Government

Action Plaintiffs' First Set of Master Interrogatories.

Plaintiffs' Liaison Counsel files this as an accommodation and for the benefit of

Government Action Plaintiffs and pursuant to Pretrial Order No. 2.

Respectfully submitted,

/s/ Russ M. Herman

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:     (504) 581-4892
FAX:  (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| **Dawn Barrios**<br>BARRIOS, KINGSDORF & CASTIEX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, LA 70139-3650<br>Tel: (504) 524-3300<br>Fax: (504) 524-3313<br>dbarrios@bkc-law.com<br>**State Liaison Counsel**<br><br>**Sheila Bossier**<br>BOSSIER & ASSOCIATES, PLLC<br>1520 North State Street<br>Jackson, Mississippi 39202<br>Tel: (601) 352-5450<br>Fax: (601) 352-5452<br>sbossier@bossier-law.com<br><br>**Representing the State of Mississippi** | **H. Vincent McKnight**<br>ASHCRAFT & GEREL, LLP<br>2000 L Street, N.W., Suite 400<br>Washington, D.C.20036<br>Tel: (202) 783-6400<br>Fax: (202) 416-6392<br>vmcknight@ashcraftlaw.com<br>**Representing the District of Columbia in a**<br>**Taxpayer Representative Capacity**<br><br>**Diane Paolicelli**<br>LEVY PHILLIPS & KONINGSBERG, LLP<br>800 Third Ave. 13th Floor<br>New York, NY 10022<br>Tel: (212) 605-6250<br>Fax: (212) 605-6290<br>dpaolicelli@lpklaw.com<br>**Representing the New York Counties of**<br>**Chautauqua, Erie, and Orange** |

21

| | |
|---|---|
| **Elizabeth J. Cabraser**<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>Embarcadero Center West<br>275 Battery Street, Suite 3000<br>San Francisco, CA 94111-3339<br>Tel:  (415) 956-1000<br>Fax:  (415) 956-1008<br>ECABRASER@lchb.com<br>**Representing the Plaintiffs Steering Committee Purchase Claims Committee** | **Bill Rossbach**<br>ROSSBACH HART BECHTOLD, PC<br>401 North Washington Street<br>P.O. Box 8988<br>Missoula, Montana 59807<br>Tel: (406) 543-5156<br>Fax: (406) 728-887<br>bill@rossbachlaw.com<br>**Representing the State of Montana** |
| **James R. Dugan, II**<br>MURRAY LAW FIRM<br>650 Poydras Street, Suite 2150<br>New Orleans, LA 70130<br>Tel:(504) 648-0180<br>Fax:(504) 648-0181<br>jdugan@dugan-lawfirm.com<br>**Representing the State of Louisiana** | **Shelly Sanford**<br>SANFORD BARLOW, LLP<br>2016 Bissonnet Street<br>Houston, TX 77005<br>Tel: (713) 524-6677<br>ssanford@sanfordbarlow.com |
| **Randall M. Fox**<br>OFFICE OF ANDREW M. CUOMO, NEW YORK STATE ATTORNEY GENERAL<br>Office of the Attorney General, Medicaid Fraud Unit<br>120 Broadway – 13th Floor<br>New York, NY 10271<br>Tel: (212) 417-5390<br>Fax: (212) 417-5335<br>randall.fox@oag.state.ny.us<br>**Representing the State of New York** | **Mark C. Schultz**<br>COHEN, PLACITELLA & ROTH<br>2001 Market St., Suite 2900<br>Philadelphia, PA 19103<br>Tel: (215) 567-3500<br>mschultz@cprlaw.com<br>**Representing the Commonwealth of Pennsylvania**<br><br>**Pam Slate**<br>SLATE KENNEDY, LLC<br>One Commerce Street, Suite 850<br>Montgomery, Alabama 36104<br>Tel: (334) 262-3300<br>Fax: (334) 262-3301<br>pslate@slatekennedy.com |
| **Seth R. Lesser**<br>KLAFTER OLSEN & LESSER LLP<br>1250 Connecticut Ave., N.W., Suite 200<br>Washington, DC 20036<br>Tel: (202) 261-3553<br>Fax: (202) 261-3533<br>slesser@klafterolsen.com<br>**Representing the County of Santa Clara, California** | |

| | |
|---|---|
| **John Low-Beer**<br>NEW YORK CITY LAW DEPARTMENT<br>Affirmative Litigation Division<br>100 Church Street<br>New York, NY 10007<br>Tel: (212) 788-1007<br>JLowBeer@law.nyc.gov<br>**Representing the City of New York** | **James D. Young**<br>OFFICE OF THE ATTORNEY GENERAL,<br>STATE OF FLORIDA<br>Office of the Attorney General, Special Counsel<br>1300 Riverplace Blvd, Suite 405,<br>Jacksonville, Florida 32207<br>Tel: (904) 348-2720<br>Fax: (904) 858-6918<br>james.young@myfloridalegal.com<br>**Representing the State of Florida** |

### PROPOSED CO-CHAIRS AND COMMITTEE MEMBERS

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8 on this 5th day of June, 2009.

/s/ Russ M. Herman
**Russ M. Herman** (Bar No. 6819)
*Herman, Herman, Katz & Cotlar, L.L.P.*
820 O'Keefe Ave.
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
rherman@hhkc.com

23