UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
| Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF LOUISIANA, *ex rel.* JAMES D. | * | SECTION L |
| CALDWELL, JR., Attorney General, | * | |
| | * | JUDGE ELDON E. FALLON |
| Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
| versus | * | KNOWLES |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| Case No. 05-3700. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

**PAGES**

I.    PLAINTIFF CANNOT DISPUTE THAT ALL OF ITS MEDICAID-BASED
      CLAIMS ARE BARRED FOR LACK OF CAUSATION. ...............................................2

      A.    LDHH's Adoption Of A Prior Authorization Program Did Not Give It
            Discretion To Refuse To Cover Vioxx. ..................................................................2

      B.    Plaintiff's Other Arguments Are Similarly Unavailing. ........................................6

            1.    Plaintiff Cannot Prove The Requisite Causal Link Under LUTPA.. ..........7

            2.    Plaintiff Must Prove Causation To Recover For Redhibition....................9

            3.    Plaintiff Cannot Prove Unjust Enrichment With Respect To Its
                  Medicaid Payments. ..............................................................................11

II.   PLAINTIFF'S LUTPA CLAIM FAILS FOR OTHER REASONS AS WELL...............11

      A.    The Attorney General Cannot Sue For Medicaid Expenditures Under
            LUTPA Because The State Was Neither A Consumer Nor A Business
            Competitor...............................................................................................................12

      B.    The Attorney General Cannot Properly Assert LUTPA Claims On Behalf
            Of Vioxx Consumers...............................................................................................16

      C.    Plaintiff's LUTPA Claim Is Barred By The LPLA. ...........................................18

III.  PLAINTIFF'S REDHIBITION CLAIM FAILS........................................................20

      A.    The State Is Not A "Buyer" Capable Of Asserting A Redhibition Claim. ...........20

      B.    The State Does Not Have Authority To Assert Redhibition Claims On
            Behalf Of Louisiana Consumers...........................................................................22

IV.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS............................................23

i

## TABLE OF AUTHORITIES

**PAGES**

### FEDERAL CASES

*In re Actimmune Marketing Litigation*,
No. 08-2376, 2009 U.S. Dist. LEXIS 36133 (N.D. Cal. Apr. 28, 2009) ..............................16

*In re Air Bag Products Liability Litigation*,
7 F. Supp. 2d 792 (E.D. La. 1998) ....................................................................................20

*Buckman v. Plaintiffs' Legal Committee*,
531 U.S. 341 (2001) .............................................................................................................6

*Dale v. IDS Finance Services, Inc.*,
No. 91-289-A, 1991 U.S. Dist. LEXIS 20206 (M.D. La. Apr. 27, 1992) ..............................13

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*,
975 F.2d 1192 (5th Cir. 1992) ...........................................................................................14

*Desiano v. Warner-Lambert Co.*,
326 F.3d 339 (2d Cir. 2003) ...............................................................................................22

*Edmonds v. Levine*,
417 F. Supp. 2d 1323 (S.D. Fla. 2006) .............................................................................3, 4

*Hamilton v. Business Partners, Inc.*,
938 F. Supp. 370 (E.D. La. 1996) .....................................................................................13

*Ironworkers Local Union No. 68 v. AstraZeneca Pharms. LP*,
585 F. Supp. 2d 1339 (M.D. Fla. 2008) ......................................................................6, 8, 16

*Jefferson v. Lead Industries Association, Inc.*,
930 F. Supp. 241 (E.D. La. 1996) .....................................................................................19

*In re Lupron*,
295 F. Supp. 2d 148 (D. Mass. 2003) ...........................................................................16, 17

*Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.*,
922 F.2d 220 (5th Cir. 1991) .............................................................................................15

*Pharmaceutical Research & Manufacturers of America v. Meadows*,
304 F.3d 1197 (11th Cir. 2002)............................................................................................4

*In re Rezulin Products Liability Litigation*,
392 F. Supp. 2d 597 (S.D.N.Y. 2005)............................................................................15, 21

*Stroderd v. Yamaha Motor Corp., U.S.A.*,
No. 04-3040, 2005 U.S. Dist. LEXIS 17797 (E.D. La. Aug. 4, 2005)...................................19

*Vezina v. United States*,
No. 2:07 CV 0904, 2009 U.S. Dist. LEXIS 50167 (W.D. La. May 27, 2009)......................23

*In re Vioxx Products Liability Litigation*,
239 F.R.D. 450 (E.D. La. 2006)..........................................................................................17

## TABLE OF AUTHORITIES
### (Continued)

**PAGES**

*In re Zyprexa Products Liability Litigation*,
  493 F. Supp. 2d 571 (E.D.N.Y. 2007).................................................................................16

### STATE CASES

*Bamburg Steel Buildings, Inc. v. Lawrence General Corp.*,
  817 So. 2d 427, 438 (La. Ct. App. 2002) ...........................................................................11

*Bozeman v. State*,
  879 So. 2d 692 (La. 2004) ...................................................................................................23

*Duronio v. Merck & Co., Inc.*,
  No. 267003, 2006 Mich. App. LEXIS 1841 (Mich. App. June 13, 2006) ............................19

*Garber v. Badon & Ranier*,
  981 So. 2d 92 (La. Ct. App. 2008).......................................................................................24

*Giammanco v. Giammanco*,
  625 N.E.2d 990 (1993) ........................................................................................................18

*Kleinman v. Merck & Co., Inc.*,
  No. ATL-L-3954-04, 2009 WL 699939 (N.J. Super. Ct. Law Div. Mar. 17, 2009) .............17

*McNeely v. Ford Motor Co.*,
  763 So. 2d 659 (La. Ct. App. 1999) .....................................................................................21

*Sher v. Lafayette Insurance Co.*,
  988 So. 2d 186 (La. 2008) ...................................................................................................12

*State ex rel. Guste v. GMC*,
  370 So. 2d 477 (La. 1978) .....................................................................................................7

*State ex rel. Guste v. Orkin Exterminating Co.*,
  528 So. 2d 198 (La. App. 4 Cir. 1988)..................................................................................8

*State ex rel. Ieyoub v. Classic Soft Trim*,
  663 So. 2d 835 (La. Ct. App. 1995) ...............................................................................22, 23

### FEDERAL STATUTE

42 U.S.C. § 1396r-8 ..................................................................................................3, 4, 5, 10

**TABLE OF AUTHORITIES**
**(Continued)**

**PAGES**

### STATE STATUTES

La. Civ. Code art. 2298 ..................................................................................... 11, 24

La. Civ. Code art. 2520 ..................................................................................... 20, 21

28 La. Reg. 979 ........................................................................................................ 3

28 La. Reg. 1639 ...................................................................................................... 4

28 La. Reg. 1640 ...................................................................................................... 4

La. Rev. Stat. Ann. § 9:2800.52 ..................................................................... 18, 23

La. Rev. Stat. Ann. § 9:2800.53 ..................................................................... 19, 20

La. Rev. Stat. Ann. § 46:153.3 ............................................................................... 4

La. Rev. Stat. § 46:446 ......................................................................................... 23

La. Rev. Stat. § 51:1407 ....................................................................................... 12

La. Rev. Stat. § 51:1408 ....................................................................................... 14

### OTHER AUTHORITY

Zimmering, *Louisiana's Consumer Protection Law – Three Years of Operation,*
    50 Tul. L. Rev. 375, 386 ................................................................................... 7

iv

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's opposition to Merck's motion to dismiss essentially concedes that most of the State's claims fail as a matter of law.  Plaintiff does not even attempt to refute Merck's arguments that plaintiff cannot recover under the New Jersey Consumer Fraud Act or seek statutory penalties under the Louisiana Unfair Trade Practices Act ("LUTPA"), and it offers only half-hearted responses to Merck's arguments that plaintiff cannot state a claim for unjust enrichment or redhibition.

Instead, plaintiff focuses its efforts on salvaging its claims under LUTPA, arguing that it has only a "featherweight" burden of proof under that Act.  (Pl.'s Opp'n at 18.)  But even with respect to this cause of action, plaintiff's arguments fall flat for several reasons.  First, the State cannot show that Merck – rather than the Medicaid statutory regime – is the cause of any losses it allegedly sustained by covering Vioxx.  Second, the State lacks standing to sue under LUTPA because it is neither a "consumer" nor a "business competitor" within the meaning of the statute. And third, because the State alleges harm caused by a product, any LUTPA claim it might otherwise be able to assert would in any event be precluded by the Louisiana Products Liability Act ("LPLA").  Nor can plaintiff recover on behalf of Louisiana's citizens:  it has not stated a viable theory of causation because it would have to prove that Merck's conduct caused each and every citizen to sustain a loss on a case-by-case basis; and in any event, the citizens' claims, like the State's, would be foreclosed by the LPLA.  For these reasons, as set forth further below, the Court should dismiss all of plaintiff's claims.

<u>ARGUMENT</u>

I.     <u>PLAINTIFF CANNOT DISPUTE THAT ALL OF ITS MEDICAID-BASED CLAIMS ARE BARRED FOR LACK OF CAUSATION.</u>

As demonstrated in Merck's opening brief, plaintiff's Medicaid-related claims fail because they are based on a false premise – *i.e.*, that the State would not have paid for Vioxx had it known of the product's alleged risks.  (Def.'s Mem. at 4 (citing Second Am. Compl. ("SAC") ¶¶ 183, 184, 192, 202, 212).)  In fact, the State never had such a choice because it was required by federal Medicaid law to reimburse any drug covered by the Medicaid formulary.  As a result, federal law is the intervening cause of any loss the State allegedly sustained, and plaintiff cannot recover under any of its theories – redhibition, LUTPA, or unjust enrichment.[1]

Plaintiff argues in response that the Louisiana Department of Health & Hospitals ("LDHH") was authorized to refuse payment for Vioxx based on a finding that it did not offer therapeutic advantages over other drugs.  It also argues that, in any event, its burden on causation is "featherweight" and could be satisfied even without showing that LDHH would have refused to cover Vioxx.  As detailed below, these arguments are wrong, and plaintiff's Medicaid-related claims must therefore be dismissed.

A.     <u>LDHH's Adoption Of A Prior Authorization Program Did Not Give It Discretion To Refuse To Cover Vioxx.</u>

Plaintiff's first response to Merck's argument is that the State had authority to refuse to pay for Vioxx after June 13, 2001, when the Legislature amended the state Medicaid law to permit LDHH to employ a prior-authorization program for prescription drugs.  Plaintiff argues that this amendment empowered LDHH to deny coverage for drugs pursuant to 42 U.S.C. §

---

[1]     Plaintiff describes this insurmountable barrier to proving causation as Merck's "lynchpin" argument.  (*E.g.*, Pl.'s Opp'n at 10.)  While it is true that the argument is significant in that it forecloses recovery for Medicaid-based claims, it is obviously not Merck's only argument.  Plaintiff's Medicaid-related claims also fail for different reasons as articulated elsewhere in this reply and in Merck's opening memorandum, and plaintiff's claims on behalf of Louisiana's citizens fail for reasons unrelated to the Medicaid issue.

1396r-8(d)(4)(C), which allows states with exclusive formularies to deny coverage for drugs that do "not have a significant, clinically meaningful therapeutic advantage . . . over other drugs included in the [exclusive] formulary." Plaintiff's argument misunderstands the difference between an open formulary with a prior-authorization program (which Louisiana now has) and an exclusive formulary (which Louisiana never adopted).[2]

The federal Medicaid statute permits states to adopt two types of formularies – an open formulary and an exclusive formulary. A state – like Louisiana – that operates under an open formulary cannot refuse to pay for an on-label or medically accepted prescription of a covered outpatient drug, absent a Secretary-approved agreement with the manufacturer allowing it to do so, or unless the drug or use fits in one of the categories listed in section 1396r-8(d)(2). *See* 42 U.S.C. § 1396r-8(d)(1)(B)(ii). As one court put it:

> The statutory scheme is carefully constructed in such a way to precisely circumscribe the only methods by which a state may remove a Medicaid-eligible drug from coverage and prevent it from either arbitrarily removing a drug or adopting its own *ad hoc* procedure for removing a drug from coverage.

*Edmonds v. Levine*, 417 F. Supp. 2d 1323, 1330-31 (S.D. Fla. 2006).

By contrast, a state that adopts an exclusive formulary enjoys greater discretion in deciding whether to cover particular drugs. A state wishing to adopt an exclusive formulary must meet very specific requirements set forth in 42 U.S.C. § 1396r-8(d) pertaining to the establishment of a formulary committee and to the content of the formulary itself. Once it has

---

[2]       Even if plaintiff were correct that LDHH had discretion to exclude coverage for Vioxx after it adopted a prior authorization program, its argument concedes that LDHH lacked authority to deny coverage for Vioxx before the changes to the State's Medicaid program took effect. Moreover, while plaintiff pinpoints June 13, 2001 as the date on which that revision was made, the change did not go into effect until mid-2002. *See* 28 La. Reg. 979 (May 20, 2002) (noting establishment of a prior-authorization program with an effective date of June 10, 2002). The parties thus agree that plaintiff's claims for losses allegedly sustained through the Medicaid program must be dismissed for all prescriptions purchased before June 10, 2002.

3

done so, the state is given discretion to exclude drugs on the basis cited by plaintiff – that is, on the ground that they offer no therapeutic benefit under 42 U.S.C. § 1396r-8(d)(4)(C).

At all relevant times, Louisiana has had an open formulary – not an exclusive formulary. *See* La. Rev. Stat. Ann. § 46:153.3(B)(2) (1999) (mandating that LDHH "provide reimbursement for any drug prescribed by a physician that, in his professional judgment and within the lawful scope of his practice, he considers appropriate for the diagnosis and treatment of the patient"); *see also id.* § 46:153.3(B)(2)(a) (2002) (establishing prior-authorization program); 28 La. Reg. 1639, 1640 (July 2002) (explaining that even with prior-authorization program in effect, "[t]hose drug products subject to mandatory coverage as a result of a rebate agreement with the federal government will be covered").

Under an open formulary, a state may adopt a "prior authorization" program.[3] *See id.* at 1329.  A prior authorization program helps a state ensure that prescriptions meet federal eligibility requirements.  42 U.S.C. § 1396r-8(d)(1)(A) ("A State may subject to prior authorization any covered outpatient drug.").  But a prior authorization program does not give an open-formulary state authority to deny coverage outright for particular drugs (as plaintiff contends it would have done if Merck had made more or different disclosures about Vioxx).  The ultimate discretion in a prior authorization program instead remains with the prescribing physician:  "The Medicaid Act does not authorize a state [with an open formulary] to use . . . [a] prior authorization program to deny coverage for a covered drug; it can only condition reimbursement upon a prescribing doctor first calling a state pharmacist to obtain approval for the drug." *Edmonds*, 417 F. Supp. 2d at 1329; *see also Pharm. Research & Mfrs. of Am. v. Meadows*, 304 F.3d 1197, 1201-02, 1207-08 & n.9, 1210 (11th Cir. 2002)) (contrasting prior

authorization programs, which enable States to require, "as a *condition* of Medicaid coverage or payment, that it be contacted" before a covered outpatient drug is dispensed, with exclusive formularies, which have "the effect of *excluding* coverage of, or payment for, certain Medicaid-eligible drugs").

Plaintiff apparently believes that Louisiana adopted an exclusive formulary on June 13, 2001, when the Legislature amended La. Rev. Stat. § 46:153.3.  (*See* Pl.'s Opp'n at 13.)  But that is not what the Legislature did – rather, it simply authorized LDHH to adopt a *prior-authorization program for its open formulary*.  Louisiana's prior-authorization laws evince no intent to adopt an exclusive formulary.  Neither the statute nor the regulations refer in any way to an exclusive formulary program or authorize the State to refuse to pay for a drug subject to the rebate program.  Nor does plaintiff identify any such formulary in its opposition to Merck's motion to dismiss.  As a result, beginning on June 10, 2002, physicians would have been required to obtain advance authorization to prescribe drugs that were not on the State's preferred list.[4]  But the State did not have any authority to refuse to pay for a drug, like Vioxx, that was subject to a rebate agreement.[5]

---

[3]     A state employing an exclusive formulary must adopt a prior-authorization program in order to allow coverage of drugs excluded from the state formulary under appropriate circumstances.  *See* 42 U.S.C. § 1396r-8(d)(4)(D).

[4]     Plaintiff makes no allegation regarding what effect, if any, the establishment of a prior-authorization program for Vioxx would have had on prescribing decisions, and any attempt to prove such an allegation would in any event require a case-by-case analysis of every prescribing decision, precluding a showing of causation for the reasons explained more fully in Section I.B.1, *infra*.

[5]     In fact, even if Louisiana had established an exclusive formulary (and it did not), it would not have been permitted to refuse to pay for Vioxx.  Under the provision cited by plaintiff, a state may exclude a drug from coverage only "when based on the drug's labeling . . . the excluded drug does not have a significant, clinically meaningful therapeutic advantage . . . over other drugs included in the formulary."  42 U.S.C. § 1396r-8(d)(4)(C).  Plaintiff argues that "the Vioxx label showed no advantage in terms of safety or efficacy over other NSAIDs."  (*See* Pl.'s Opp'n at 12.)  But that assertion is demonstrably untrue, because in April 2002 – two months before Louisiana's prior authorization scheme was implemented – the FDA approved a label change for Vioxx that reported the favorable gastrointestinal safety of Vioxx compared with other drugs.  The SAC itself affirmatively alleges this fact.  (SAC ¶ 131 ("In April 2002, after fourteen months of negotiations with the FDA, the new Vioxx label, which went into effect in April 2002, listed the good news about fewer upset stomachs first.").)  To the extent plaintiff means to argue that the FDA would not have approved the label had Merck not allegedly withheld

Because Louisiana has at all times maintained an open formulary, LDHH has never had discretion to deny reimbursement for Vioxx.  Plaintiff's sole basis for claiming that LDHH had authority to deny coverage of Vioxx is therefore illusory, and its Medicaid-based claims must be dismissed.

### B.   Plaintiff's Other Arguments Are Similarly Unavailing.

Plaintiff also contends that, even if LDHH could not have refused to cover Vioxx, causation could still be established by virtue of the fact that Louisiana's citizens bought Vioxx they otherwise would not have purchased.  Plaintiff claims that it can recover on each of its alleged causes of action simply by showing that fewer Vioxx users would have used the drug if more information had been provided about its risks.  In addition, plaintiff suggests that because none of its causes of action requires a showing of "reliance," it need not prove that any consumer, or LDHH itself, relied on Merck's alleged misrepresentations.  (Pl.'s Opp'n at 15-16.)  But plaintiff's emphasis on "reliance" is a red herring.  As set forth below, each of plaintiff's claims requires a showing of causation capable of linking Merck's alleged misrepresentations to plaintiff's alleged loss.  And a theory of causation that hinges upon each Vioxx user's physician's decision to prescribe – or not to prescribe – the drug is simply too complex and attenuated to satisfy plaintiff's pleading requirements.  *See Ironworkers Local Union No. 68 v. AstraZeneca Pharms. LP*, 585 F. Supp. 2d 1339 (M.D. Fla. 2008).  Thus, to the extent plaintiff bases its claims on a theory that Merck's conduct affected prescribing decisions, those claims must fail.

---

information, it is making a fraud-on-the-FDA argument that is preempted.  *See Buckman v. Pls.' Legal Comm.*, 531 U.S. 341 (2001).  Thus, even if the State had adopted an exclusive formulary program, plaintiff could not state a viable claim that the State could have refused to pay for Vioxx.

1.      **Plaintiff Cannot Prove The Requisite Causal Link Under LUTPA.**

With respect to its LUTPA claim, plaintiff argues that pursuant to LSA-R.S. 51:1408, the Attorney General can recover restitution without proving but-for causation. Instead, plaintiff argues, the Attorney General need only allege that restitution would be "equitable" because Merck's alleged failure to disclose the risks of Vioxx caused the state to pay for more Vioxx prescriptions than it otherwise would have. Plaintiff is wrong that Attorney General actions seeking restitution do not require causation. But even under plaintiff's own theory, the State would still have to prove that some physicians would not have prescribed Vioxx if they had known more about its risks, the precise theory of causation rejected in *Ironworkers*.

***First,*** plaintiff's claim that the Attorney General has broad authority to seek restitution under LUTPA without establishing "reliance" or "show[ing] causation for any injury" is baseless. (Pl.'s Opp'n at 17.) According to plaintiff, because LUTPA provides that the Attorney General may seek restitution to compensate an aggrieved person for property that "may have been acquired by means of" a deceptive trade practice, LSA-R.S. 51:1408, the Attorney General may recover without having to show "that the deceptive trade practice was the actual cause of the loss." (Pl.'s Opp'n at 17.) But plaintiff's interpretation of the statutory language in section 1408 is illogical. Section 1408's provision that the Attorney General can recover restitution for property acquired "by means of" a deceptive practice is unmistakably a causation requirement. *See State ex rel. Guste v. GMC*, 370 So. 2d 477, 483 (La. 1978), *rev'd on reh'g on other grounds*, 370 So. 2d 477 (La. 1979 ) ("This section authorizes the court in the state's injunction suit to order restitution to any aggrieved person for any property acquired ***by means of*** an unfair trade practice.") (emphasis added); *see also* Zimmering, Louisiana's Consumer Protection Law – Three Years of Operation, 50 Tul. L. Rev. 375, 386 (1976) (noting restitution is only authorized in an Attorney General suit "[i]f, on the basis of affidavits and in-court testimony, the court is

satisfied (1) that the deceptive method, act, or practice *was the cause of the loss* and (2) that a loss has in fact occurred") (emphasis added).  And as explained above, plaintiff cannot show that the State's property was acquired "by means of" a deceptive practice because the State was required to pay for Vioxx prescriptions regardless of Merck' alleged misconduct.[6]

*Second*, even if plaintiff were correct that the "may have been acquired" language in section 1408 means that the Attorney General need only prove that restitution would be "equitable" given the circumstances (Pl.'s Opp'n at 18), plaintiff would not be able to make such a showing.  Under plaintiff's theory, restitution would be "equitable" – and therefore plaintiff would be entitled to restitution under LUTPA – if it can establish that Merck's alleged misstatements "caus[ed] the state to pay the unwarranted premium price for Vioxx prescriptions *that otherwise would never have been written*."  (*See id.* (emphasis added).)  Thus, by plaintiff's own admission, its LUTPA claim requires proof that Louisiana's Medicaid beneficiaries' physicians would have made different prescribing decisions if they had received more information about Vioxx's alleged risks.  But that showing would be hopelessly complex and attenuated.  *See Ironworkers*, 585 F. Supp. 2d at 1339.

---

[6]       Plaintiff cites *State ex rel. Guste v. Orkin Exterminating Co.*, 528 So. 2d 198, 204 (La. App. 4 Cir. 1988), for the supposed proposition that it need not show that it was actually affected by Merck's conduct in order to recover.  But that is not what *Orkin* says.  In that case, the Attorney General brought suit on behalf of customers of the pest control company Orkin who alleged that Orkin had unfairly terminated their service plans after they refused to pay a higher "renewal fee" on their accounts.  *Id.* at 200.  On appeal, the court held that it was proper for the trial judge to order Orkin to reinstate all customers' contracts if requested to do so, even though it was possible that some of those customers initially hired Orkin for reasons that had nothing to do with the amount of the renewal fee at issue.  According to the court, this was so because "only those [customers] to whom the fixed renewal fee is important are likely to request reinstatement" and agree to pay Orkin past-due renewal fees in the original amount agreed to in the contract.  *Id.* at 203-04.  Thus, in the end, Orkin would only be required to provide the injunctive relief ordered – contract reinstatement – with regard to those consumers who were affected by its alleged misstatements regarding the renewal fee.  Here, by contrast, the Attorney General seeks *monetary* restitution from Merck for all Vioxx prescriptions filled by Medicaid recipients, regardless of whether their decision to take the drug was actually affected by Merck's alleged misrepresentations.  If the State were allowed to proceed on this theory, Merck – unlike the defendant in *Orkin* – would almost certainly be required to refund the cost of a substantial number of Vioxx prescriptions that would have been written and filled regardless of whether more information had been disclosed about the drug's alleged risks.

In *Ironworkers,* for example, the court dismissed consumer fraud and other claims alleged by insurers based on the sale of the prescription drug Seroquel for this very reason. There, third-party payors alleged that "they were duped into paying" for a drug "where less expensive, and equally safe and effective, alternative treatments existed." *Id.* at 1342. In rejecting their claims, the court held that "consumers may only obtain Seroquel through a prescription from a physician," each of whom makes an independent medical judgment about whether to prescribe the drug. *Id.* at 1344. Thus, "establishing that Plaintiffs' injuries were caused by Defendants' misconduct would require an inquiry into the specifics of each doctor-patient relationship implicated by the lawsuit." *Id.* As a result, the court concluded that the consumers' alleged injuries were "too remote" from the defendant's conduct, making it impossible to establish proximate cause. *Id.*

The same is true here. In order to demonstrate any entitlement to compensation, the State would have to show whether and how each prescription and purchasing decision would have changed but for Merck's conduct – a showing that simply is not feasible as to the entire population of Medicaid beneficiaries. Accordingly, plaintiff's substitute causation theory is simply "too remote" to sustain, and its LUTPA claim on behalf of the State must be dismissed for this reason as well.

2.    <strong>Plaintiff Must Prove Causation To Recover For Redhibition.</strong>

Plaintiff's argument that it can assert a redhibition claim based on the theory that some Medicaid recipients would not have used Vioxx if they had received more risk information is also flawed. According to plaintiff, causation may be "presumed" in a redhibition case where "the defect was such that a reasonable buyer would not have bought the thing" or "would still have bought it but for a lesser price." (Pl.'s Opp'n at 19 (citation and quotation marks omitted).) Thus, plaintiff argues that it can prevail on its redhibition claim without any subjective proof as

9

to what Medicaid recipients would or would not have done if more information had been revealed, as long as it can show that a "reasonable buyer" would not have purchased Vioxx, or would have purchased it only at a lower price.  (*Id*.)

Applying such a presumption to the unique facts of this case would be illogical.  The relevant "buyer" here is LDHH[7] – and the question is therefore what a reasonable "person" in LDHH's shoes would have done had it "known of the defect."  As explained in Section I.A above, LDHH was required under federal law to reimburse for Vioxx prescriptions.  Under these circumstances, a "reasonable buyer" must necessarily be one who complies with state and federal law.  Because a "reasonable buyer" would have bought Vioxx – notwithstanding its alleged defects – pursuant to its obligations under law, any presumption of causation would necessarily be rebutted here by the dictates of state and federal law.

The same is true with regard to plaintiff's argument that causation must be presumed when the defect is such as to cause a reasonable buyer to purchase the product "for a lesser price."  (Pl.'s Opp'n at 19.)  Under federal law, the State was required to pay the rebate price for a drug such as Vioxx that was subject to a rebate agreement; it could not pay less.  42 U.S.C. § 1396r-8(b)(1)(A) (manufacturers provide a rebate to each State Medicaid plan "in an amount specified by subsection (c) for covered outpatient drugs"); *id.* § 1396r-8(c)(1)(A) (establishing formula for determining rebate amount).  In that context, there can be no presumption that a reasonable buyer would have bought the product "for a lesser price."  Once again, any such presumption is rebutted by the mandates of federal law.[8]  Accordingly, plaintiff's Medicaid-based redhibition claim must be dismissed.

---

[7]      Merck disagrees that LDHH is a "buyer" for purposes of redhibition, as explained below in Section II.B. For purposes of this causation argument, however, Merck assumes, *arguendo*, that LDHH is a buyer.

[8]      If plaintiff means to argue that the State's ***Medicaid beneficiaries*** would not have purchased Vioxx and that by extension, the State would not have paid for Vioxx, that causation theory fails under redhibition for the same

3.      **Plaintiff Cannot Prove Unjust Enrichment With Respect To Its Medicaid Payments.**

Finally, plaintiff's Medicaid-based unjust enrichment claim is barred because Merck's alleged enrichment occurred by operation of law – not as a result of an alleged misrepresentation. (*See* Def.'s Mem. at 7-8 (citing, *inter alia*, La. Civ. Code art. 2298 ("The term 'without cause' . . . exclude[s] cases in which the enrichment results from a valid juridical act of the law.").) Plaintiff does not deny the need for a causal link to prevail on its unjust enrichment claims.  *See Bamburg Steel Buildings, Inc. v. Lawrence General Corp.*, 817 So. 2d 427, 438 (La. Ct. App. 2002) (unjust enrichment requires, *inter alia*, a "connection" between the enrichment and the impoverishment).  Instead, plaintiff responds by stating that it has adequately alleged that Merck's marketing drove Vioxx sales, which in turn resulted in Medicaid claims.  (Pl.'s Opp'n at 30.)  But this argument again relies on the same faulty chain of causation that would require the Court to sort out what effect (if any) Merck's marketing had on each individual purchase of Vioxx in this State.  Because the immediate cause of LDHH's "decision" to pay for Vioxx was state and federal law – not Merck's conduct – this claim must fail as well.

II.      **PLAINTIFF'S LUTPA CLAIM FAILS FOR OTHER REASONS AS WELL.**

Plaintiff's responses to Merck's other arguments regarding the inadequacy of plaintiff's LUTPA claim also fail.  Plaintiff argues that its LUTPA claim is valid because:  (1) the Attorney General can sue on behalf of the State regardless of whether it was engaged in a "consumer transaction" and, in any event, the State's payments for Vioxx were consumer transactions; (2) the State can bring a claim on behalf of Louisiana consumers who used Vioxx despite the fact that there is no feasible way to connect Merck's alleged wrongdoing to each consumer's alleged

---

reasons it fails under LUTPA – it is far too attenuated and complex.  Moreover, as set forth below, Louisiana law does not authorize the Attorney General to bring redhibition claims as *parens patriae* on behalf of consumers.  *See* Section II.B.

11

loss; and (3) plaintiff's LUTPA claim seeks "restitution" as opposed to "damages" and therefore

is not precluded by the LPLA.  As set forth below, each of these arguments should be rejected.[9]

### A.   The Attorney General Cannot Sue For Medicaid Expenditures Under LUTPA Because The State Was Neither A Consumer Nor A Business Competitor.

Plaintiff offers two alternative responses to Merck's argument that the State cannot assert

a Medicaid-related LUTPA claim because LDHH is not a "consumer or business competitor," as

required under the statute.  First, plaintiff argues that LUTPA authorizes the Attorney General to

bring claims on behalf of the State based on any alleged unfair trade practices, regardless of

whether the state is a "consumer" engaged in a "consumer transaction."  Second, it argues that

the State's act of paying for Vioxx was a "consumer transaction" giving rise to a claim under the

statute.  Both arguments fail.

Plaintiff's first argument – that the state is somehow exempted from the consumer

requirement in LUTPA – is wrong.  Plaintiff argues that the powers granted to the Attorney

General under LSA-R.S. 51:1407 and 1408 are so broad as to not be "confined to 'consumer

transactions' or actions on behalf of 'consumers' as those terms are defined under LUTPA."

(Pl.'s Opp'n at 21.)  But this contention misreads the statute.

Private actions and Attorney General actions both arise, if at all, solely for conduct that

constitutes "any method, act, or practice declared by R.S. 51:1405 to be unlawful."  LSA-R.S.

51:1407; *see also id.* 51:1409 (cause of action arises out of conduct that constitutes a "method,

act, or practice declared unlawful by R.S. 51:1405").  Section 51:1405, in turn, provides that

---

[9]      Plaintiff does not dispute that the civil penalties authorized by La. Rev. Stat. § 51:1407(b) and (c) are unavailable because those provisions, which were adopted after Vioxx was withdrawn from the market, are not retroactive.  (*See* Def.'s Mem. at Section II.B.4.); *see also Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 201 (La. 2008) (where an "amendment changes a right to receive penalties," it is "unquestionably substantive, and as such cannot be applied retroactively" absent express direction from the legislature).  Thus, plaintiff has conceded that its claim for such civil penalties should be dismissed.

"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  It is this language of section 1405 from which the limitation of LUTPA standing to consumers and business competitors derives.  *See Dale v. IDS Fin. Servs., Inc.*, No. 91-289-A, 1991 U.S. Dist. LEXIS 20206, at *4 (M.D. La. Apr. 27, 1992) (explaining that, while section 1409 authorizes "any person" to sue in a private action, the "reference to 'competition' and to the phrase, 'in the conduct of any trade,'" in section 1405 demonstrates "the intent of the legislature was to create a vehicle for business competitors to seek recourse against their adversaries when they employ deceptive trade practices"); *see also Hamilton v. Business Partners, Inc.*, 938 F. Supp. 370, 374 n.11 (E.D. La. 1996) (analyzing precedent on the limitation of the LUTPA cause of action to consumers and business competitors and highlighting *Dale* as the one case providing the rationale).  Because both private plaintiff and Attorney General actions are permitted only in the presence of conduct condemned under section 51:1405, neither action may proceed unless it is brought by or on behalf of a consumer involved in a consumer transaction, or by a business competitor.

Plaintiff argues that the text of LSA-R.S. 51:1407 and 1408 "expressly empowers" the Attorney General to bring LUTPA claims for restitution on behalf of the State, even if it has not engaged in a consumer transaction with the defendant.  But that is false.  These provisions relate only to remedies – they do not expand the range of conduct against which the Attorney General may proceed.  And while the Attorney General enjoys greater freedom to bring an action to ***remedy*** conduct made illegal by section 51:1405 – he may bring an injunction before the conduct occurs, for example, for which he need not show actual damages – the predicate ***conduct*** against which he may proceed is the same.

The language of sections 51:1407 and 1408 proves this point.  Section 51:1407(a) provides for injunctive relief "in the name of the state" against a person who "is using, has used, or is about to use any method, act, or practice declared" unlawful under the act "in order to enjoin" such behavior.  It does not say or imply that the Attorney General can bring a LUTPA claim on behalf of the state in order to seek restitution for losses incurred by the state in cases in which it was not a consumer engaged in a consumer transaction.  And while section 51:1408 does provide for restitution in some cases, it explicitly provides that restitution is authorized only where "necessary to compensate any aggrieved person for any property . . . which may have been acquired from such person by means of any method, act, or practice declared unlawful" under the Act.  LSA-R.S. 51:1408.  The State of Louisiana is not a "person" for purposes of a LUTPA claim.  *See* LSA-R.S. 51:1402.  Thus, the Attorney General may not seek to recover the ***State's*** own losses – as opposed to losses incurred by aggrieved individual consumers – under this provision.  As a result, there is no basis for plaintiff's claim that the text of LUTPA provides the State with broad authority to recover restitution for its own alleged losses resulting from any allegedly deceptive practice.

Plaintiff's second argument – that the consumer requirement only means that the State must claim to have been harmed in connection with a "consumer transaction" – fares no better.  As set forth in Merck's opening brief, Louisiana courts (and courts interpreting Louisiana law) have repeatedly held that a plaintiff cannot state valid claims for damages under LUTPA unless the plaintiff itself is a "consumer or a business competitor" harmed by the defendant's alleged unfair practices.  *See Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 975 F.2d 1192, 1205 (5th Cir. 1992) (affirming summary dismissal of LUTPA claim because plaintiff did "not qualify as either a consumer or a business competitor"); *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*,

14

922 F.2d 220 (5th Cir. 1991) (upholding summary judgment on LUTPA claims alleged by medical clinic because it was neither a "natural person" engaged in a "consumer transaction" nor a "business competitor" of the defendant); *Dorsey v. Northern Life Ins. Co.*, No. Civ. A. 04-0342, 2005 WL 2036738, at *12 (E.D. La. Aug. 15, 2005) (dismissing LUTPA claim under Federal Rule of Civil Procedure 12(b)(6) after concluding that plaintiff was neither a consumer nor a business competitor of defendant); *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 615 (S.D.N.Y. 2005) (LUTPA "applies only to direct consumers or to business competitors").

Plaintiff seeks to distinguish these cases on the supposed ground that none rejected LUTPA claims by a nonconsumer that – like LDHH – was allegedly harmed as a result of the sale of consumer goods. (Pl.'s Opp'n at 24.) Not so. In *Rezulin*, for example, the court refused to allow LUTPA claims where plaintiffs' allegations were almost identical to those here. There, an insurer sought relief under LUTPA based on the allegation that it paid more to reimburse its plan members for the cost of Rezulin than it would have absent the defendant's alleged misrepresentations. 392 F. Supp. 2d at 611. In rejecting the plaintiff's claims, the court held that the plaintiff "certainly did not engage in any transaction intended for its own personal, family, or household use." *Id.* Nor did it "use, purchase, or lease Rezulin from [the defendant]." *Id.* Accordingly, the court held that the plaintiff "was not a 'consumer'" and, as a result, "could not recover under LUTPA," even though the purchases of Rezulin that it had covered were presumably consumer transactions. *Id.*

This case is no different. Plaintiff seeks to recover losses allegedly incurred by the State as a result of paying for Medicaid recipients' Vioxx prescriptions. At no point, however, did the State purchase and take possession of Vioxx from Merck. And the State certainly did not engage in a transaction for "its own personal, family, or household use." *Id.* at 616. Because the State

15

was not a consumer of Vioxx and did not engage in a consumer transaction, the Attorney

General's LUTPA claim on behalf of the State must fail.

> **B.**     **The Attorney General Cannot Properly Assert LUTPA Claims On Behalf Of Vioxx Consumers.**

Nor can plaintiff recover under LUTPA for the Vioxx purchases of Louisiana citizens

generally.  This is so because the State has not alleged a cognizable theory of causation that links

Merck's alleged misconduct and the alleged losses of every Louisiana Vioxx purchaser.  *See*

*Ironworkers*, 585 F. Supp. 2d 1339; *In re Actimmune Mktg. Litig.*, No. 08-2376, 2009 U.S. Dist.

LEXIS 36133, at *36-37 (N.D. Cal. Apr. 28, 2009).

Rather than respond to Merck's argument, plaintiff simply argues that it "should be

afforded the opportunity to develop a full factual record on this issue before [its] claims are

dismissed as being 'too indirect.'"  (Pl.'s Opp'n at 20.)  Plaintiff bases this argument on two

cases that it contends approved consumer fraud actions premised "on just this sort of pricing

claim" at the summary judgment stage:  *In re Zyprexa Prods. Liab Litig.*, 493 F. Supp. 2d 571

(E.D.N.Y. 2007) and *In re Lupron*, 295 F. Supp. 2d 148 (D. Mass. 2003).  But neither of these

cases involved the type of claim presented here – a de facto class action brought by a state on

behalf of consumers it alleges would not have paid for a drug had the manufacturer disclosed

additional information.

In *In re Zyprexa*, consumers and third-party payors brought claims against a drug

manufacturer, claiming that the manufacturer's false statements about Zyprexa inflated its price,

causing both consumers and their insurers to pay more for the drug than they otherwise would

have.  In denying defendant's motion for summary judgment, the court explicitly noted that the

third-party payors were alleging that they were directly injured because the defendant would

have charged less for Zyprexa if more information had been revealed.  493 F. Supp. 2d at 577.

As a result, the third-party payor claims were "not dependent on any physician's decision or injury suffered by those who ultimately ingested Zyprexa." *Id.* Here, by contrast, plaintiff alleges that consumers were harmed because they paid money "for Vioxx that they would not have otherwise" purchased and paid "a premium price for Vioxx, as opposed to other viable, less expensive pharmaceutical treatments." (*See* SAC ¶ 192.) This is a very different allegation from that in *Zyprexa* because it *does* require individualized inquiries into why physicians prescribed Vioxx and whether individual patients could in fact have taken a cheaper drug given their medical and pharmaceutical histories.

Plaintiff's reliance on *In re Lupron* is also misplaced. There, the court allowed insurers to pursue consumer fraud and other claims based on the allegation that drug companies charged doctors less than the list price for certain drugs, allowing *doctors* to reap a profit by obtaining more reimbursement from their insurers than they actually paid out of pocket for the drugs. 295 F. Supp. 2d at 160. That case did not involve allegations that a drug manufacturer's alleged misconduct caused individual consumers to buy a drug they otherwise would not have bought. Thus, it has no bearing on whether such allegations support the State's LUTPA claim here.

In sum, no amount of fact discovery would make it possible for plaintiff to prove that every Louisiana consumer lost money as a result of Merck's alleged misconduct. Inevitably, proof of loss would only be possible on an individualized basis, effectively converting this proceeding into the very kind of class action that this Court and others have already rejected. *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 461 (E.D. La. 2006); *see also Kleinman v. Merck & Co., Inc.*, No. ATL-L-3954-04, 2009 WL 699939, § II.i.a (N.J. Super. Ct. Law Div. Mar. 17, 2009) (denying certification of New Jersey Consumer Fraud Act ("NJCFA") claims by Vioxx users because "[t]he issue of causal nexus between the loss sustained by each member of the

17

class and the consumer fraud . . . creates an insurmountable barrier to a class action" in prescription drug cases).  For this reason as well, plaintiff's LUTPA claim should be dismissed.

## C.    <u>Plaintiff's LUTPA Claim Is Barred By The LPLA.</u>

Merck also argued in its opening brief that plaintiff's LUTPA claim fails because the LPLA provides the exclusive remedy for plaintiffs alleging product liability claims against product manufacturers.  (Def.'s Mem. at 14-15 (citing La. Rev. Stat. § 9:2800.52).)  In response, plaintiff makes two arguments:  (1) the LPLA only precludes product liability claims seeking actual damages, not restitution; and (2) the LPLA's "exclusivity" provision only applies to claims alleging physical damage caused by a product.  Neither argument is persuasive.

***First,*** plaintiff is wrong that the LPLA does not subsume product liability claims seeking restitution.  The LPLA explicitly states that it "establishes the ***exclusive*** theories of liability for manufacturers for ***damage*** caused by their products" and that a "claimant may not recover from a manufacturer for damage caused by a product on the basis of ***any theory of liability*** that is not set forth in this Chapter."  La. Rev. Stat. § 9:2800.52 (emphases added).  Plaintiff argues that an Attorney General action seeking only "restitution" under LSA-R.S. 51:1408 is not an action for "damage" caused by a product and therefore is not precluded by this language in the LPLA.  (Pl.'s Opp'n at 25.)  But this argument is based on the false assumption that the term "damage," as used in the text of the LPLA, means the same thing as the term "damages."  It does not.  The word "damage" refers to "the loss, hurt, or harm which results from the" invasion of a legal right, whereas "damages are the recompense or compensation awarded for the damage suffered." *Giammanco v. Giammanco*, 625 N.E.2d 990, 997 (1993).  Thus, by using the word "damage," the LPLA provides that it is the exclusive theory of liability for any ***harm*** caused by a manufacturer's product – not just the sole means of obtaining ***monetary damages*** as compensation for such harm.  This reading of the LPLA is consistent with the statute's own

18

definition of the term "damage," which includes "*all* damage caused by a product, including survival and wrongful death damages" as well as any "damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only."  La. R.S. 9:2800.53(5) (emphasis added); *see also Duronio v. Merck & Co., Inc.*, No. 267003, 2006 Mich. App. LEXIS 1841, at *12 (Mich. App. June 13, 2006) ("The word 'damage' is defined in *Random House Webster's College Dictionary* (1997) as 'injury or harm that reduces value, usefulness, etc.', while 'damages' refers to 'the estimated money equivalent for loss or injury sustained.'").

 The LPLA is explicit that there is only one type of product liability claim allowed outside the LPLA:  redhibition.  *See* La. Rev. Stat. Ann. § 9:2800.53(5); *see also Stroderd v. Yamaha Motor Corp., U.S.A.*, No. 04-3040, 2005 U.S. Dist. LEXIS 17797, at *6. (E.D. La. Aug. 4, 2005) (Fallon, J.) (explaining that the "sole exception to the exclusivity provisions under the LPLA is redhibition, which the Act expressly preserved").  If the legislature had intended to create a similar exception to the LPLA for restitution claims brought by the Attorney General under LUTPA, it would have done so explicitly.  Because it did not, "[t]he plain language and legislative history of the LPLA demonstrate the legislature's intent to make the Act and Louisiana redhibition law the sole vehicles for a suit against a manufacturer for damages arising from a defective product."  *Id.* at *6-7; *see also Jefferson v. Lead Indus. Ass'n, Inc*., 930 F. Supp. 241 (E.D. La. 1996) ("[a] plaintiff may not recover from a manufacturer for damage caused by a product *on the basis of any theory of liability* not set forth in the LPLA") (emphasis added).

 *Second*, plaintiff's assertion that the LPLA does not bar the State's claims because they are based on damage caused by a deceptive trade practice as opposed to "damage caused by a product" (Pl.'s Opp'n at 26) is also meritless.  Plaintiff appears to suggest that the LPLA only provides the exclusive theory on which a plaintiff can recover for physical or property damage

19

caused by a product malfunction.  (*Id*.)  But the text of the LPLA explicitly states that the statute also covers product liability claims based on "economic loss arising from a deficiency in or loss of use of the product only."  La. R.S. 9:2800.53(5).  Thus, courts have recognized that the LPLA precludes all claims based on the allegation that the manufacturer of a product failed to adequately disclose the risks of that product, even if the product never actually malfunctioned.  *See, e.g.*, *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 800 (E.D. La. 1998) (dismissing tort claims alleged by car purchasers and noting that aside from redhibition, the LPLA is the sole theory on which product liability plaintiffs can recover).  Accordingly, there is no basis for plaintiff's conclusion that the LPLA does not subsume its claims for alleged economic loss.

For this reason as well, plaintiff's LUTPA claim should be dismissed.

## III.   PLAINTIFF'S REDHIBITION CLAIM FAILS.

Plaintiff argues that the State of Louisiana has standing to bring a claim for redhibition against Merck because:  (1) the State's payments for Vioxx under Medicaid make it a "buyer" of the drug; and (2) LSA-R.S. 46:446 provides the State with statutory authority to bring redhibition claims against third parties on behalf of Medicaid beneficiaries.  Both arguments fail.

### A.    The State Is Not A "Buyer" Capable Of Asserting A Redhibition Claim.

Plaintiff argues that the State of Louisiana has standing to bring redhibition claims on its own behalf because it "paid the entire purchase price for Vioxx prescribed to Medicaid beneficiaries" and is therefore a "buyer" of the drug, as required to state a claim under Louisiana's redhibition statute.  (Pl.'s Opp'n at 27.)  But plaintiff's argument is contrary to statutory and judicial interpretations of the term "buyer."

While plaintiff claims that the Louisiana redhibition statute does not define the term "buyer" (Pl.'s Opp'n at 27), the statute is clear that a "buyer" is a person to whom a "sale" is made.  La. Civ. Code art. 2520 ("buyer" may obtain rescission of the "sale").  And as plaintiff

admits, the Louisiana Civil Code defines a "sale" as the transfer "of ***ownership*** of a thing to another for a price in money." (*See* Pl.'s Opp'n at 27 (quoting LSA-C.C. art. 2439) (emphasis added).) Here, plaintiff does not dispute that ownership of Vioxx was never transferred to the State of Louisiana. Moreover, the simple fact that the State gave financial assistance to consumers in buying Vioxx does not make the state a "buyer." As multiple courts have held in evaluating redhibition claims, the "buyer" is the person who took an ownership interest in the goods at issue – not the person who paid for them. *See Rezulin*, 392 F. Supp. 2d at 61 (granting summary judgment against private third-party payors who alleged a cause of action for redhibition because although the third-party payor paid for the drug, it "did not gain ownership of the drug within the meaning of Louisiana Civil Code"); *McNeely v. Ford Motor Co*., 763 So. 2d 659, 669-70 (La. Ct. App. 1999) (awarding damages pursuant to a redhibition claim to the plaintiff even though her brother and son purchased the car for her use).

Plaintiff claims that *Rezulin* is inapposite because it involved redhibition claims alleged by private third-party payors rather than a state Medicaid program. (Pl.'s Opp'n at 29.) But the redhibition statute does not suggest that the standard for asserting redhibition claims is different where such claims are brought on behalf of the government, as opposed to a private party. In either case, the plaintiff must still be a "buyer" to prevail on a theory of redhibition. *See* La. Civ. Code art. 2520. Nor is there any basis for plaintiff's suggestion that *Rezulin* is inapposite because it was decided at the summary judgment stage "on a fully developed record." (Pl.'s Opp'n at 29.) Plaintiff does not identify any additional discovery that could possibly prove that the State was the "buyer" of Vioxx. Certainly, additional discovery would not change the fact that the State never took an ownership interest in the Vioxx prescriptions at issue in this case. As a result, plaintiff's redhibition claim should be dismissed now.

Finally, plaintiff's suggestion that the holding in *Rezulin* is "questionable" because it conflicts with the Second Circuit's opinion in *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003) (*see* Pl.'s Opp'n at 29), is disingenuous.  Plaintiff implies that *Desiano* "overruled" *Rezulin* by holding that third-party payors are "buyers" for the purpose of bringing redhibition claims.  (Pl.'s Opp'n at 29.)  But that is patently false.  *Desiano*, which was decided before *Rezulin*, involved consumer fraud and other claims under New Jersey law.  *See* 326 F.3d at 345. At no point in the decision did the court mention, much less interpret, the requirements to bring a claim under Louisiana's redhibition statute or any other Louisiana law.  Thus, there is no reason for the Court to deviate from the ruling in *Rezulin*, which rejected redhibition claims that were virtually identical to those asserted here.

For this reason alone, plaintiff's redhibition claim should be dismissed.

## B.    The State Does Not Have Authority To Assert Redhibition Claims On Behalf Of Louisiana Consumers.

As set forth in Merck's opening brief, plaintiff's redhibition claim also fails because no statute authorizes the Attorney General to bring redhibition actions as *parens patriae* on behalf of consumers in the circumstances presented here.  (*See* Def.'s Mem. at 10 (citing, *inter alia*, *State ex rel. Ieyoub v. Classic Soft Trim*, 663 So. 2d 835, 836 (La. Ct. App. 1995) (State had procedural capacity to bring *parens patriae* action for antitrust and unfair trade practice claims based on specific statutory authority)).)

Plaintiff concedes this argument as to its claims on behalf of most Louisiana citizens, arguing only that an entirely different statute – LSA-R.S. 46:446 – gives LDHH the right to assert claims *on behalf of Medicaid beneficiaries* against third parties "liable to the person on whose behalf LDHH has paid benefits."  (Pl.'s Opp'n at 30.)  But LSA-R.S. 46:446 is inapplicable here because that statute only allows the State to assert claims against third parties

22

who are liable for causing personal injuries to Medicaid recipients for whom the State covered medical care. *See* La. Rev. Stat. § 46:446 (establishing a cause of action when "injury," "illness or death" has occurred); *see also Vezina v. United States*, No. 2:07 CV 0904, 2009 U.S. Dist. LEXIS 50167, at *2 (W.D. La. May 27, 2009) (medical malpractice suit alleging "lengthy hospitalizations, multiple surgeries, and extensive medical care" to Medicaid beneficiary); *Bozeman v. State*, 879 So. 2d 692 (La. 2004) (tort suit involving Medicaid beneficiary who suffered "brain damage, and numerous fractures, bruises, and abrasions" in an automobile accident). No court has ever held that the statute authorizes the State to bring ***redhibition*** claims on behalf of Medicaid beneficiaries based solely on economic damages allegedly suffered from the sale of an allegedly defective product.[10]   In any event, since Medicaid beneficiaries did not pay for Vioxx, they would have no claim for redhibition at all. Plaintiff's redhibition claim fails for these reasons as well.

## IV.   **PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS.**

Finally, plaintiff's opposition brief contains no response to any of Merck's arguments regarding the deficiencies in plaintiff's unjust enrichment allegations. Plaintiff does not directly dispute that its unjust enrichment claim fails because the LPLA provides the "exclusive" ground for recovery in a product liability action.[11]   *See* La. Rev. Stat. § 9:2800.52. Nor does plaintiff dispute that the Attorney General lacks explicit statutory authority to bring an unjust enrichment claim as *parens patriae*, as required under Louisiana law. *See Classic Soft Trim*, 663 So. 2d at 836. In addition, plaintiff fails to provide any response to Merck's argument that unjust enrichment is not available under Louisiana law where, as here, the plaintiff alleges that other

---

[10]       Plaintiff's argument that LSA-R.S. 46:446 allows LDHH to "stand[] in the shoes" of Medicaid beneficiaries and assert LUTPA claims on their behalf (Pl.'s Opp'n at 25) fails for the same reasons.

[11]       To the extent plaintiff intends to make the same LPLA arguments with respect to unjust enrichment that it makes with respect to its LUTPA claim, those arguments fail for the reasons set forth in Section II.C, *supra*.

causes of action exist.  *See* La. Civ. Code art. 2298; *Garber v. Badon & Ranier*, 981 So. 2d 92, 100 (La. Ct. App. 2008).  For all of these reasons, the unjust enrichment claim must be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in its opening brief, Merck respectfully requests that the Court dismiss plaintiff's claims in their entirety.

Respectfully Submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Brian C. Anderson
Matthew M. Shors
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Reply Memorandum has been served upon Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand and e-mail and upon all parties electronically by uploading same to Lexis Nexis File & Serve in accordance with Pre-Trial Order 8B, and that the foregoing was electronically filed with the Clerk of the United States District Court for the Eastern District of Louisiana by using the CMF/ECF system which will send a Notice of Electronic Filing in accordance with the procedures established in MDL 1657, this 20th day of July, 2009.


*/s/ Dorothy H. Wimberly*