UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX®

PRODUCTS LIABILITY LITIGATION

-------------------------------------------------------------

-------------------------------------------------------------

THIS DOCUMENT RELATES TO:

**Gene Weeks v. Merck & Co., Inc.,**

MDL Docket No.  1657

SECTION L

Judge Eldon E. Fallon
Magistrate Judge Knowles

**Case No. 2:05-cv-4578-EEF-DEK**

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
FORMER ATTORNEY TEJEDOR'S MOTION TO ENFORCE
THE SETTLEMENT AGAINST PLAINTIFF AND
COLLECT AND DISPERSE THE SETTLEMENT FUNDS**</u>

Comes now plaintiff Gene Weeks, by and through counsel, Ronald R.

Benjamin, and opposes the motion of Martinez, Manglardi, Diez-Arguelles & Tejedor

(hereafter referred to as "Tejedor"), seeking to enforce the Vioxx Settlement Program

award between plaintiff Weeks and defendant Merck & Co., for the purpose of

collecting attorney's fees and costs "associated with the settlement of this case."

*Tejedor Motion, at para. 12.*   This opposition also supports plaintiff's cross-motion

for recusal of the Honorable Eldon Fallon from hearing this motion.

The grounds for this opposition and cross-motion are set forth below, with

respect to which plaintiff turns first to his statement of facts.

## FACTS

1.   The Tejedor firm is not a party to the Master Settlement Agreement ("MSA"), as evinced by the relief it seeks, to wit, to "enforce the settlement between Merck and Gene Weeks", in conjunction with which, despite being discharged, the firm insists it continues to represent plaintiff Gene Weeks for the purpose of being allowed to "to disperse funds to Gene Weeks and collect fees and costs." *See title and introductory paragraph of Tejedor Motion.*

2.   Merck & Co., Inc. ("Merck"), the defendant and party to the MSA, has not moved in this Court to enforce the settlement against plaintiff Gene Weeks.

3.   Plaintiff incorporates herein by reference and reiterates the facts and matters set forth in his motion to rescind and vacate his consent to the Vioxx Settlement Program, and other relief, that is pending before this Court since on or about April 22, 2009, and respectfully submits that, to the extent the instant motion contains any facts that would be relevant to the issue of the enforceability of the Master Settlement Agreement ("MSA"), they are sharply disputed to the extent such facts are alleged to support a conclusion plaintiff Weeks knowingly and voluntarily entered into the agreement.

4.   Plaintiff also incorporates by reference and reiterates the facts and matters set forth in the opposition to Tejedor firm's pending Rule 11 motion for sanctions against his current counsel, Ronald Benjamin, which likewise raise sharp factual disputes on the merits of this motion to enforce the MSA against plaintiff.

5.   In moving to enforce the settlement against plaintiff, Tejedor fails to

mention or attach a letter dated January 16, 2009, that she wrote to plaintiff Gene

Weeks after meeting with him on January 7, 2009, in which she unequivocally stated:

> During our meeting, you confirmed and did not dispute the fact that you
> do not meet the proximity gate since it had been over two years since
> you had last ingested Vioxx prior to your heart attack.   **Therefore, you
> have elected to allow us to withdraw as your counsel and you
> have elected to seek alternative counsel to file your lawsuit. We
> will be filing a notice of withdrawl [sic] in the very near future
> and provide you with notice of the same.**

*See 1/16/09 Tejedor letter annexed hereto as **Exhibit A** [emphasis added].*   Clearly,

no later than January 7, by her own words Tejedor was on notice that Mr. Weeks

would be obtaining "alternative counsel."

     6.   The January 16 letter confirms the settlement program had already issued

him a "Notice of Ineligibility" on the grounds he did not meet the proximity gate.

According to Mr. Weeks, at the January 7 meeting, he was not aware the firm's

withdrawal was required by the Master Settlement Agreement ("MSA").   *See*

*Affidavit of Gene Weeks in support of his motion to rescind, at para. 30.*   It is also

significant that, after the meeting on January 7 at the Orange County Courthouse,

Ms. Tejedor turned over to Mr. Weeks the file on his case, because, she stated, her

firm was going to withdraw and plaintiff was to obtain other counsel.   *See Weeks*

*Reply Affidavit in support of his motion to rescind, at para. 4.*

     7.   Thereafter, on or about January 22, 2009, Tejedor or her firm called and

put the Claims Administrator on notice that Mr. Weeks intended to file a Future

Evidence Stipulation, which obviously signified that Tejedor and the Claims

Administrator knew plaintiff elected to exit the settlement and pursue his action in

court.   *See Tejedor Rule 11 motion, at p. 2.*

8.  Apparently, at that time, the Tejedor firm unilaterally retracted its

withdrawal when it also was advised by the Claims Administrator that the

stipulation was "premature" and Mr. Weeks' claim was not denied yet, after which

the "firm contacted Mr. Weeks and advised him of the same by telephone and letter."

*Tejedor Rule 11 motion, at p. 2.*   In the firm's letter dated January 22, 2009, it

advises his "claim still may make it through the gates committee," but again makes

crystal clear the firm would withdraw from representing Mr. Weeks if he did not

accept a settlement awarded by the program, in that attorney Tejedor's wrote:

> Please be advised that Martinez, Manglardi, Diez-Arguelles &
> Tejedor will continue to represent you **during this settlement process**
> **and up until the point in which you either receive an award**
> **from the Gates Committee or your future evidence stipulation is**
> **approved and accepted by Merck.**

*See 1/22/09 Tejedor letter annexed to Tejedor Motion as Exhibit 4. Id., [emphasis*

*added].*   Tejedor did not obtain Mr. Weeks' consent to her unilateral decision to

retract the firm's withdrawal as his counsel.

9.  Mr. Weeks immediately responded by forwarding an e-mail to Ms. Tejedor

that discharged her firm.  *See Exhibit C, Weeks Reply Aff., at para. 3.*

10.  Ms. Tejedor states, "I am not denying the email may have been sent."

*Tejedor Rule 11 Motion, at p. 3.*   Thus, Ms. Tejedor does not actually deny she

received plaintiff's January 23 e-mail, but claims ignorance of its contents because

she did not open and read it, apparently because she did not recognize his e-mail

address, which she calls"unusual."  *Id.*

11.   There is really no adequate excuse for why Ms. Tejedor did not open and read the e-mail discharging her.   Mr. Weeks emailed attorney Tejedor  several times at her personal email address [mmdamaria@aol.com].  *See Weeks e-mails annexed hereto as **Exhibit B**.*  It is clear she received e-mails he sent to her personal e-mail address, since she replied to his emails.  *See Tejedor responses annexed hereto as **Exhibit C**.*   Ms. Tejedor even wrote back to Mr. Weeks from her personal email address on at least one occasion.  *See **Exhibit D**.*   Moreover, it would be careless for her to stick to a "buddy" list, since the Florida Bar board certification website used by the public currently lists her personal e-mail address as the *only* email address to contact her.  *See Florida Bar website page for Tejedor annexed as **Exhibit E**.*

12.   In any event, Tejedor has no basis to deny that, after she informed Mr. Weeks on January 7th that the firm was abandoning his case, his response to being told the firm had unilaterally decided not to withdraw was to discharge the firm, and he did so on January 23, 2009, even if she failed to realize it.

13.   Moreover, the Tejedor firm acknowledges that Mr. Weeks filed his motion to rescind and vacate on April 22, 2009.  *Tejedor Motion, at p. 3*.  The motion was served on defendant Merck & Co., Inc., which, it is obvious, is a party to the MSA as well as the defendant in this Court, and is represented on the Gate Committee. *See MSA annexed in Exhibit B to Tejedor Motion, at Section 2.4.2.*  Thus, there can be no doubt that, by April 22nd, Merck was on notice that Ronald Benjamin was Mr. Weeks' new counsel, and that Mr. Weeks elected to exit the settlement program.   It is respectfully submitted that, in light of the same, it is irrelevant what Ms. Tejedor

knew about whether plaintiff obtained a new lawyer as she had directed in early January 2009.

14.   By the same token, it is relevant what Merck knew, and it appears clear Merck was well aware since at least April 22 of Mr. Weeks' motion regarding his intent to exit the settlement program, which was clearly an option in light of the ineligibility determination.  The plaintiff's motion was filed two weeks before his ineligibility was, for reasons unknown to plaintiff or the Tejedor firm, reversed by the Gate Committee in the May 4, 2009 "Notice of Eligibility", and before the May 8, 2009 "Notice of Points Award."   *See Tejedor Motion, para. 6.*

15.   The Tejedor motion claims that, "On May 04, 2009, the law firm successfully obtained a Notice of Eligibility from the Vioxx claims administrator(s)...." *Id.*  This alleged cause-and-effect is overstated, inasmuch as it appears clear that, other than calling and inquiring about submitting a Future Evidence Stipulation on behalf of plaintiff Weeks, the Tejedor firm fails to show it did anything in the interim between January 7th and May 4th that caused the reversal.

16.   In fact, the only intervening action taken was the filing of plaintiff's motion to rescind on April 22nd.  Therefore, the reversal from ineligible to eligible may have been the result of a Merck decision under Sections 2.5.5.3 and 2,5.5.4, that could have been made in light of the April 22nd motion in order to trump the Future Evidence Stipulation process provided under Section 2.7.3.  The likelihood of the same is increased by the fact that Merck has declined to oppose plaintiff's motion to rescind and vacate.

17.   In the moving papers, Ms. Tejedor's LR 7.1(a) Certificate of Compliance states, "Counsel hereby certifies that he [sic] conferred in good faith with the defendant regarding the issues and they have no objection to the motion."

## ARGUMENT

### I.

### The Motion by Discharged Counsel to Enforce the Settlement and to Be Allowed to Collect and Disperse Settlement Funds as "Plaintiff's Counsel" Exceeds Whatever Right the Firm Has Intervene to Assert an Attorney's Lien, and Should Be Denied In Light of Plaintiff's Pending Motion to Rescind and Vacate.

Despite the pendency of the plaintiff's motion to rescind and vacate his consent to enter the Vioxx settlement program, his former counsel is moving for directly contrary relief, to wit, to enforce that settlement against him while claiming it remains "plaintiff's counsel."  It is apparent the Tejedor firm is limited to a motion to intervene in order to protect an attorney's lien, if any, and cannot move to enforce the settlement as if the firm never withdrew nor was discharged.

Indeed, the current motion is a  a blatant attempt by discharged attorneys to claim they are entitled to continue to represent plaintiff and force him to accept an award in a settlement process he did not and does not want to participate in. Apparently, their refusal to be discharged is based on careless e-mail practices of Ms. Tejedor, that do not nullify the fact that plaintiff accepted their withdrawal on January 7 and discharged the firm on January 23 when they tried to retract their withdrawal.  Thus, it is clear from the outset that not only is Tejedor not a party to

the agreement, but it appears to have no standing to proceed by motion seeking enforcement of the agreement, whatever right the firm may have to intervene, because the firm cannot continue "representing" plaintiff..

Moreover, assuming, *arguendo*, the right to continue as counsel exists, Merck was fully aware of the plaintiff's motion no later than the April 22 filing, and Tejedor is fully aware that the April 22, 2009 motion is pending in connection with the same agreement as reflected in paragraph 9 of her motion.

In the instant motion, calling themselves "plaintiff's counsel"despite the fact that he discharged them in January 2009 - - after they advised him they were withdrawing from representing him because he wanted out of the Vioxx settlement process - - plaintiff's former counsel are obviously trying to force their continued representation of this client after abandoning his case and subsequently being discharged.

In the meeting and correspondence in early January 2009, the Tejedor firm did, in fact, withdraw and direct Mr. Weeks to obtain other counsel, and, in fact and effect, made clear its withdrawal was prompted by compliance with the MSA Sections 1.2.8, 1.2.8.1 and 1.2.8.2, that required it to withdraw from representing any Vioxx clients who did not participate in the settlement program, terms the firm voluntarily agreed to by enrollment of its clients into the program. *See MSA, annexed as Exhibit B toTejedor Motion, at pp. 5-6.*   Under Louisiana law, "In most circumstances, an attorney retained on a contingent basis who voluntarily withdraws will be held to have forfeited any right to compensation." Carbonic Consultants, Inc. v. Herzfeld &

Rubin, Inc., 699 So.2d 321, 323 (Fla.App.1997); *see also* Kyle v. Glickman, 2001 WL
35996143, *4 (E.D.La.)./*[1]  It is respectfully submitted the aforesaid terms of the
MSA did not provide cause or an ethical reason for the Tejedor firm to withdraw on
January 7 when Tejedor turned over the file to Mr. Weeks for the purpose of his
obtaining other counsel.

Not only did the firm abandon its representation of plaintiff in early January
2009 so that it was in compliance with the MSA requirements, its current motion
insists the firm is entitled to continue to represent plaintiff despite knowing that they
not only voluntarily withdrew as counsel in early January but, when they attempted
to retract the withdrawal, he discharged their services later that same month.
Further, the motion seeks to impose a lien against their former client by prosecuting
enforcement of a settlement that he has rejected.

Since plaintiff's motion to rescind and vacate is still pending before this Court,
and Merck has declined to file its own motion to enforce the settlement, there is, in
fact, no basis for Tejedor and her firm to seek enforcement of the settlement by
claiming they are representing Mr. Weeks and fully intend to violate his absolute
right **not** to accept a settlement of his action/claim.

Under the Louisiana Code of Professional Responsibility, Disciplinary Rule 2-

---

[1]* /The retainer between Weeks and Tejedor was signed in Florida.  The
Florida law on this issue is the same as the Louisiana law.  *See, e.g.,* Faro v.
Romani, 641 So.2d 69, 71 (Fla.1994) ("when an attorney withdraws from
representation upon his own volition, and the contingency has not occurred, the
attorney forfeits all rights to compensation..."). *See also,* Liberty Mut. Ins. Co., v.
Holbrook, 861 So.2d 1216, 1217 (Fla.App. 2 Dist.,2003).

110(B)(4) establishes the client's absolute right to discharge his attorney by mandating withdrawal.  Thus, it is interesting to note that Tejedor characterizes the withdrawal and discharge as plaintiff's "attempt to terminate our representation without due cause" despite the well-settled law that:

> [A] client has an absolute right to discharge his or her lawyer at any time. Saucier v. Hayes, 373 So.2d 102 (La.1978) (on rehearing).  Rule 1.16(a)(3) requires the lawyer to withdraw from further representation of the client upon being discharged. As we explained in Scott v. Kemper Insurance Co., 377 So. 2d 66, 70 (La .1979), an attorney may not "force his continued representation [on] a client who wishes to discharge him...." Respondent breached this fundamental tenet when he accepted State Farm's settlement offer on behalf of his client after he was discharged.

In Re Jones, 859 So.2d 666, 670 (Sup. Ct. La. 2003).  Tejedor is incorrect to assert that plaintiff had to have "due cause" to discharge the firm.

The efforts by the Tejedor firm subsequent to January 7 to retract its withdrawal was not consented to by Mr. Weeks who was already working with other counsel by January 22.   It is apparent the firm had a change of heart based on the telephone call to the Claims Administrator, but its January 22 letter again indicates the firm would only represent plaintiff if he continued in and accepted the settlement – in other words, the firm changed the terms and effect of the retainer as well as the client's right to control settlement.   The Tejedor firm's own written retainer agreement annexes a "Statement of Clients Rights," which states:

> 10.    You, the client, have the right to make the final decision regarding settlement of the case. . . . [Y]ou must make the final decision to accept or reject a settlement.

See Tejedor Exhibit A. As a result, Mr. Weeks then found it necessary to inform the firm in writing that it was discharged.

Moreover, the record reflects that in April he filed the motion to rescind and vacate in this Court, unequivocally evincing he did not want to remain in the settlement program for any reason, even after Tejedor informed him there was still hope for an award.   After the Tejedor firm informed him of the May 4 and May 8 determinations, plaintiff again wrote to the Tejedor firm on May 14 to indicate they were no longer his counsel.   Tejedor takes the untenable position that, because she didn't open and read his January 23 e-mail discharging the firm, Mr. Weeks could only *attempt* to terminate them on May 14.  Since it was her own fault she did not open the e-mail, her position is clearly wrong.

The Tejedor firm filed a "Response" to plaintiff's motion, but there has been no opposition filed by Merck.   Despite the lack of opposition by Merck, this Court had not granted the plaintiff's unopposed pending motion.   That motion was already pending when the ineligibility determination was reversed, and when the Tejedor firm filed the instant motion that, in fact and effect, undermines the plaintiff's pending motion in an apparent effort to brush aside its significance as having flatly notified *Merck* that plaintiff had been found ineligible and was intending to exit the program.

Not only has Merck failed to submit an opposition to plaintiff's motion to rescind and vacate, it has not filed a motion to enforce the settlement ; instead, only plaintiff's former attorneys filed a "Response" and are now pursuing the instant motion to enforce the settlement by taking the position they still represent plaintiff. It is respectfully submitted that, since the Tejedor firm is the movant here, there are no grounds to enforce the agreement or compel Mr. Weeks to accept the settlement.

*See, e.g.,* <u>Rhodes v. Nalencz</u>, 545 So.2d 638 (La.App. 5 Cir.,1989).

It is most telling that the Tejedor firm is complaining that it was not served with the motion or a substitution notice, while at the same time it withdrew from representing plaintiff, was later discharged, and yet filed a "Response" opposing plaintiff's motion to rescind and vacate any consent to the MSA program, even though defendant Merck had not opposed the motion. It is respectfully submitted that prosecuting the opposition to the plaintiff's motion cannot properly be assumed by or delegated to the Tejedor firm, which has no standing as a party to any settlement, is in conflict with their former client and improperly refuses to be discharged.

## II.

### <u>Further, in Light of the Inextricably Interwined Nature of the Motion and the MSA Program of Which the Court Is Chief Administrator, This Court Should Recuse As to This Matter.</u>

This Court should grant recusal and referral to a different judge to hear the instant Tejedor motion since it seeks to enforce the MSA based on an award made within the settlement process as to which the MSA specifically names The Honorable Eldon E. Fallon as its Chief Administrator. *See MSA, annexed as Exhibit B to Tejedor Motion, at Article 6, pp. 29-30.* It is respectfully submitted that Merck's obvious failure to oppose the plaintiff's motion to rescind and vacate pending before this Court since April 22, 2009, indicates Merck is relying on the settlement program to obviate the motion in its favor. Likewise, the Tejedor firm's instant motion insists, among other things, that "Mr. Weeks was represented by our law firm when

his settlement claim was approved.  Mr. Weeks then attempted to terminate our representation without due cause after this settlement was reached." *Tejedor Motion, para. 11.*  As a result, MSA Sections 1.2.8, 1.2.8.1 and 1.2.8.2 are clearly relevant to this motion and it appears this Court's role as Chief Administrator is implicated by the motion to enforce the settlement as a voluntary and knowing agreement, as well as the plaintiff's motion to rescind and vacate his consent to the settlement under the circumstances he sets forth therein.

## CONCLUSION

The motion of the Tejedor firm to enforce the settlement between Merck and Gene Weeks and allow the Tejedor firm to collect the settlement funds and disperse counsel fees and costs to itself should be DENIED with prejudice.

Respectfully submitted,

RONALD R. BENJAMIN Fed. No. 110131
LAW OFFICE OF RONALD R. BENJAMIN
126 Riverside Drive, P O. Box 607
Binghamton, New York 13902-0607
607/772-1442

Attorneys for Plaintiff

# EXHIBIT A

# TO

# PLAINTIFF'S OPPOSITION



**MARTINEZ MANGLARDI
DIEZ-ARGUELLES & TEJEDOR**

MARIA D. TEJEDOR
BOARD CERTIFIED CIVIL TRIAL LAWYER
540 N. SEMORAN BLVD., ORLANDO, FL 32807
(407) 381-4123 · MMDTLAW.COM

January 16, 2009

Mr. Gene Weeks
35241 CR 439
Eustis, FL  32736

Re:   *Vioxx MDL Settlement Claim*

Dear Mr. Weeks:

This is to confirm the meeting we had on January 7, 2009 at 2:00p.m. at the Orange County Courthouse.  At that time we discussed the fact that your case was not approved through the Vioxx MDL as a claim that qualified due to the fact that the records that we have show the last time you took Vioxx was in 2001 and that you did not meet the proximity gate as required by the Vioxx Settlement Requirements.  During our meeting, you confirmed and did not dispute the fact that you do not meet the proximity gate since it had been over two years since you had last ingested Vioxx prior to your heart attack. Therefore, you have elected to allow us to withdraw as your counsel and you have elected to seek alternative counsel to file your lawsuit. We will be filing a notice of withdrawl in the very near future and provide you with notice of the same. It has been my pleasure to have had the opportunity to work with you and we wish you the very best off luck in the future.

If you have any questions or concerns please feel free to contact my office.

Sincerely,

Maria D. Tejedor

MDT/m|v

# EXHIBIT B

# TO

# PLAINTIFF'S OPPOSITION

**From:** Gene Weeks <zippobuck@yahoo.com>
**To:** Maria Tejedor <mmdamaria@aol.com>
**Sent:** Wednesday, July 5, 2006 1:01:54 PM
**Subject:** Projected Litigation Duration

Dear, Maria after some basic cursory computer research, I have found that Merk intends to defend each case one at the time. There are more than 9500 cases against them. This would indicate to me a lifetime of litigation. Regards, Gene Weeks.

---

Do you Yahoo!?
Next-gen email? Have it all with the all-new Yahoo! Mail Beta.

6/9/2009

**From:** Gene Weeks <zippobuck@yahoo.com>
**To:** Maria Tejedor <mmdamaria@aol.com>
**Sent:** Thursday, July 27, 2006 10:35:03 AM
**Subject:** Vioxx Case

Hi Maria it has been six months since we talked about the case.I have been following the news and have seen some of the most recent awards.Could you possibly update me on what is current regarding my case?Kindest Regards,Gene.

---

Do you Yahoo!?
Get on board. You're invited to try the new Yahoo! Mail Beta.

6/9/2009

**From:** Gene Weeks <zippobuck@yahoo.com>
**To:** Maria Tejedor <mmdamaria@aol.com>
**Sent:** Thursday, May 10, 2007 9:22:29 AM
**Subject:** Telephone Confrance

Maria I went to see a doctor to try and relieve some of my symptoms.When he learned that I had pending litigation he refused to treat.He just shut down and refused to talk any further stating that the defense would be looking at his files eventually and would possibly shut down his practice.I was wanting chelation therapy.This doctor practices this and is close by.

I spoke with Dennis on this matter and he has scheduled a telephone conference with you and I on Monday at 4.00. I would also like an update on the case as it weighs of late,Gene.

Get your own web address.
Have a HUGE year through Yahoo! Small Business.

**From:** Gene Weeks (zippobuck@yahoo.com)
**To:** Maria Tejedor
**Date:** Friday, February 22, 2008 4:08:09 PM
**Subject:** My Case

Please advise me if possible by phone through your paralegal the current motions before the plaintiffs steering committee,as per our discussion last month,Gene.

Be a better friend, newshound, and know-it-all with Yahoo! Mobile. <u>Try it now.</u>

**From:** Gene Weeks <zippobuck@yahoo.com>
**To:** Maria Tejedor <mmdamaria@aol.com>
**Sent:** Friday, January 23, 2009 5:35:15 PM
**Subject:** Letter Dated January 22,09

Maria our meeting on the 7th of this month followed by your letter dated January 16th did not include any more work to be done by you.Now there is your letter of January 22,09 that basically states there is some unfinished business that may have been over looked.In any case my new council recommends that there will be no more actions from your firm on my behalf.If you have any questions regarding same please contact Mr. Ron Benjamin,ESQ.607-772-1442.I hope a resolution of this matter can be accomplished,Gene.

**From:** Gene Weeks <zippobuck@yahoo.com>
**To:** Maria Tejedor <mmdamaria@aol.com>
**Sent:** Friday, May 15, 2009 10:33:03 AM
**Subject:** Teramination of Representation for Cause

Ms. Tejedor I have fired you and articulated same by phone in January 09. Your handing over my case file to me with the statement we will withdraw, after the January meeting in the Orange County Courthouse was my indication by your firm that representaion had ceased. None the less I no longer recognize your statements to me and wish that all correspondence be sent to my new attorney Ron Benjamin, Regards Gene Weeks.

# EXHIBIT C

## TO

# PLAINTIFF'S OPPOSITION

**From:** Gene Weeks <zippobuck@yahoo.com>
**To:** Maria Tejedor <mmdamaria@aol.com>
**Sent:** Wednesday, October 18, 2006 10:42:35 AM
**Subject:** My Case

Maria does handing over my case to the M D L mean that you are not actively pursuing my case on my behalf?If so then we are just waiting to see what shakes out of those proceedings?If the Steering committee that oversees these cases that are apparently  doing the representing where is your firm in this process, other than the folks who filed this case, with the M D L?In my research an attorney in Texas(Lanier) has withdrawn his cases from this process stating that he was hired by his clients to represent them and has pursued his cases through state courts.Citing that he can push Merck to settle sooner this way.This also gives him leeway to pursue the Doctors and pharmacies, which in my case there are three and two pharmacies.I would like to know your strategy on my case and wonder why a firm in Texas would stray from the direction you have taken.  Gene

Do you Yahoo!?
Get on board. You're invited to try the new Yahoo! Mail.

6/9/2009



ATTORNEYS
TRIAL GROUP
*Martinez, Manglardi, Diez-Arguelles & Tejedor*

*Maria D. Tejedor*
*Board Certified Civil Trial Lawyer*

November 2, 2006

**VIA CERTIFIED MAIL**
**7005 1160 0000 6834 4926**
Gene Weeks
35241 C.R. 439
Eustis, FL 32736

### RE: *Gene Weeks vs. Merck & Co. Inc.*

Dear Mr. Weeks:

This letter is in response to the email you sent to me questions on why we have not filed claims in state court. Please be advised that our initial strategy was to file claims in state court directly against the pharmacies and doctors. However, all of these claims were removed to the Middle District of Louisiana. Initially, all the cases were removed from state court to the Federal Middle District and subsequently to the Middle District of Louisiana. Again, we tried the strategy of filing the claims in Florida state court but this did not work as the Middle District of Louisiana has taken the cases and has ruled that they will not remain in state court.

I have also discussed this with other lawyers handling these cases in Florida and to the best of my knowledge after the Middle District of Louisiana was created no one has been successful in keeping these cases at the state court level.

As it pertains to filing suit against the doctors, we have made a decision at this law firm not to sue the doctors individually. Therefore, we will not be suing any of the doctors on your behalf. If you believe the doctors were negligent and would like to pursue medical practice action against them I encourage you to have the case reviewed by another law firm as it pertains to claims of negligence against the doctors in your case. Please be advised that there are specific statutes of limitations as it pertains to the doctors and again I urge you to contact another law firm in order to protect those statutes of limitations. Again, we will not be suing any of the physicians or hospitals regarding your injuries sustained from ingesting Vioxx.

Lastly, regarding the pharmacy, case law in Florida does not make it favorable for us to bring a direct negligence claim against the pharmacies. The case law suggests that simply filling a prescription on behalf of a doctor is not negligence. It further states, a pharmacy does not have any type of duty owed to the customer as a result. Therefore, based on my research the case law in Florida is not favorable as it pertains to Vioxx and pharmacies. Therefore, we will not be suing any pharmacies on your behalf as a result of any injuries you sustained from ingesting Vioxx.

540 North Semoran Boulevard • Orlando, Florida 32807 • Telephone (407) 381-4123
www.attorneystrialgroup.com

**We will only be representing you in your claims against Merck.** Therefore, if you believe, or would like to pursue a case against the pharmacy or any doctor I suggest that you contact another lawyer and again keep in mind that statutes of limitations pertain and establish time limits on when you can bring an action against the physicians and/or pharmacies.

I advise you to please contact my assistant Dennis if you would like to further discuss this matter or to schedule an office conference to further discuss your questions or concerns.

Sincerely,

Maria D. Tejedor

MDT/ldm

# EXHIBIT D

# TO

# PLAINTIFF'S OPPOSITION

**From:** Gene Weeks <zippobuck@yahoo.com>
**To:** MMDAMARIA@aol.com
**Sent:** Saturday, July 29, 2006 6:55:06 PM
**Subject:** Re: Vioxx Case

Will do Maria have to be out of town for a wedding Friday the 28th. Will contact Dennis first thing Monday. Thanks, Gene.

*MMDAMARIA@aol.com* wrote:

> gene:
>
> Give Dennis a call tomorrow and ask him to set a Tele.  conf with you and I. I will fill you in.
>
> Best regards,
>
> Maria Tejedor
> Board Certified Civil Trial Lawyer
> Martinez, Manglardi, Diez-Arguelles and Tejedor
> 540 N. Semoran Blvd.
> Orlando, FL 32807
> 407-381-4123

---

Groups are talking. We´re listening. Check out the handy changes to Yahoo! Groups.

6/9/2009

# EXHIBIT E

## TO

## PLAINTIFF'S OPPOSITION

## Inside the Bar

### Find a Lawyer

# Maria Dolores Tejedor

**Member in Good Standing**

**Eligible to practice in Florida**

| | |
|---|---|
| ID Number: | - 95834 |
| Address: | Attorney Trial Group |
| | 540 N Semoran Blvd |
| | Orlando, Florida 328073326 |
| | United States |
| Phone: | 407.3814123 |
| Fax: | 407.8466066 |
| E-Mail: | mmdamaria@aol.com |
| County: | Orange |
| Circuit: | 9 |
| Admitted: | 09/30/1996 |
| Board Certification: | **Year**  **Area** |
| | 2004   Civil Trial |
| 10-Year Discipline History | **None** |

**The Find A Lawyer directory provides limited basic information about attorneys licensed to practice in Florida and is provided as a public service by The Florida Bar. The information contained herein is provided "as is" with no warranty of any kind, express or implied. The Florida Bar, its Board of Governors, employees, and agents thereof are not responsible for the accuracy of the data. Much of the information is provided by the attorney and it is the attorney's responsibility to review and update the information. Publication of attorneys' contact information within this listing should not be construed as their consent to receive unsolicited communications in any form. Certain unauthorized uses of this data may result in civil or criminal penalties. The Find A Lawyer directory is not a lawyer referral service.**
[Revised: 05-20-2009 ]

© 2005 The Florida Bar