July 14, 2009



Chief Judge Sarah Vance
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C255
New Orleans, LA  70130

Re: Vioxx Case Number BC 340272

To Chief Judge Sarah Vance:

I had written to Judge Eldon Fallon on April 27, 2009 and again on May 12, 2009 (letters herewith attached), asking for his help and intervention with the above case.

All I received was an Order that he entered on May 27, 2009 entering my correspondence into the record and forwarding copies to liaison counsel, counsel of record and the claims Administrator "to take whatever action they deem necessary".

This is far from the help I had expected since as I mentioned on my letters to Judge Fallon the original Attorney I retained transferred my case <u>without my signed authorization</u> to the Law office of Girardi & Keese who has not acted in the capacity of someone who is supposed to represent my mother and I.

The Attorney at Girardi & Keese (Mr. James O'Callahan) continues to withhold all pertinent information with regards to this case only claiming that our case is still being reviewed by the Claims Administrator.

I have been in contact with the United States Department of Justice Administrative Office for US Courts Department. They have advised me to contact you in a last attempt to look into this matter before they investigate the case.

My father who ingested Vioxx for a period of 25 months suffered heart attacks in 2003, was hospitalized on Emergency basis three times that year and eventually passed away in December 2005.

My mother and I were informed by the Law firm we retained (Winer, McKenna & Davis, LLP) that based on the medical and pharmacy records my father met the Injury Gate Criteria that was set forth on November 9, 2007 when the Settlement Agreement between Merck and the Counsel was reached.

The Settlement Agreement was reached in November 2007 and one month later our case was transferred <u>without our explicit consent or authorization to Girardi & Keese Law firm.</u>

Since December 2007, after being coerced into signing "Releases" we have heard absolutely nothing more than "The process of reviewing these cases has been a painfully slow one" from the Girardi & Keese attorney.

In the meantime I have been informed by other sources that almost all of the Heart attack cases have been resolved by now.

I have had to take the Medical records to a Cardiologist for an independent medical review and opinion based on the fact that I do not feel comfortable with the review process by the Claims Administrator.

My father started taking Vioxx in 1999 which is when most of his problems began. He had had high blood pressure and cholesterol bu these had been controlled by medication for years. Hospital records showed these levels to be within normal range each time he was hospitalized in 2003.

**All I am asking your Court to do is to oversee that the medical records are reviewed by an "Expert" Medical examiner in a fair, ethical manner and to ensure that this process is legally conducted in accordance with the terms that were set forth under the Settlement Agreement which was the basis for us signing the "Releases".**
**In addition, we need to receive the Eligibility and Points Award Notice after having waited 19 months since the Settlement Agreement was reached.**

I do await your response.

Sincerely,

*[signature]*
Vivian Ross

RECEIVED APR 30 2009

April 27, 2009

Judge Eldon E. Fallon
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C456
New Orleans, LA 70130

Re: Vioxx Case Number BC 340272

Your Honor:

I am appealing to you for intervention regarding the above case which was filed in Los Angeles Superior Court on September 22, 2005.

I had originally retained the Law firm of Winer, McKenna & Davis located at 1999 Harrison Street Suite 600 in Oakland, CA 94612 to file and represent my father Louis Ross who was a victim and who took Vioxx for a period of 25 months.

My father was hospitalized three times in 2003 with heart attacks which were evidenced by Lab test results and EKG's.

My father passed away in December 2005 due to a Myocardial infarction.

On February 15, 2008 Winer, McKenna & Davis sent me a letter advising me that they had transferred my case to Girardi & Keese Law firm in Los Angeles.

I found that very suspicious as I felt I should have been consulted prior to the transfer. They should have had my authorization but they simply took the liberty to do so and advised me only after the fact.

Since then I have been trying to establish a normal fiduciary relationship with the attorney at Girardi & Keese who is in charge of the Vioxx cases, Mr. James O'Callahan, to no avail.

Mr. O'Callahan does not seem to be familiar with any of the circumstances regarding my father's case. He did not even know all the dates that my father had taken Vioxx.

The several times I have called to speak to Mr. O'Callahan he has treated me very rudly. He has given me the impression he is working on behalf of Merck and not on our behalf.

He has only told me that the case was forwarded to Brown Greer and that the process of reviewing these cases has been a "painfully slow" process.

In February 2008 I signed the "Release" as instructed and only recently (February 2009) my mother was asked to sign another Release as the Surviving Spouse which was mailed back via Fedex on March 23, 2009 to Girardi & Keese Lawyers.

In the summer of 2008 I was assured that all medical records were being examined by Brown Greer and that partial payments would be going out in August 2008.

Although Brown Greer is supposed to be impartial it is my understanding they are trying to disqualify as many cases as possible or that in other words they are working on behalf of Merck.

I am enclosing a copy of a letter sent to me by Winer, McKenna Law firm and copy of the "Injury Gate Criteria". The attorney at Winer explained that Paragraph 4 of the Injury Gate Criteria is the most applicable to my father's situation because the medical records were silent about a myocardial infarction yet all the medical records which I have copies of (sent to me by Winer) indicate heart attacks (myocardial infarctions).

So far I had trusted and relied on the examination of all records by Brown Greer but given that much time has gone by and I have not heard anything from Girardi & Keese (Attorneys representing my mother and I), I most likely will have these medical records independently examined by outside Medical Doctors and Cardiologists who can ascertain that there were heart attacks suffered and provide me with written reports.

This process is something that Girardi & Keese should have taken the initiative to conduct if indeed they were representing us but so far they have not offered this to us.

I have in my possession copies (approximately 600 pages) of all Medical records and Pharmacy records, copy of Death Certificate, original Court filing, correspondence from both Law firms as well as all other documents that are relevant in this case.

On April 14, 2009 I submitted a packet containing copies of all the above to Girardi & Keese to the attention of Thomas Girardi as they have continued to give me the impression they were ignorant even of the dates that my father took Vioxx.

Your Honor, as you are the Judge presiding over the Vioxx Settlement Program, I plead that you would contact the parties involved in this matter so that my mother Rita Ross (the surviving spouse) and myself can be informed concerning the status of our claim.

Sincerely,

Vivian Ross



May 12, 2009



Eldon E. Fallon
United States District Judge
Eastern District of Louisiana
500 Poydras Street, Room C456
New Orleans, LA  70130

Re:  Vioxx Case Number BC 340272

Dear Judge Fallon:

I wrote to you originally on April 12, 2009 regarding the above case.

I have not heard from you since and all I have received from my Attorney Girardi & Keese is the letter which I am herewith enclosing.

I am also enclosing my response to them.

On December 14, 2007 I received a letter from Winer, McKenna accompanied by a copy of the entire "Settlement Agreement" between Merck and the Counsel.

At that time I read the entire Agreement very carefully and I am aware that in my father's case he met all 3 criteria to be eligible for a settlement.

As per Winer McKenna, Paragraph 4 of the "Injury Gate Criteria" is the most applicable to my father's case because the medical records were were silent as to whether or not there was a myocardial infarction.

My father's symptoms were all indicative of a heart attack: As per his own handwritten notes (Page 000055 of the medical records) he had a headache with a feeling of having the back of the head and neck swollen, gastro intestinal upset, diarrhea, weakness, shortness of breath, etc. (I am enclosing a copy of this page).

In addition medical tests showed arrhythmias, CKMB levels to be high, CPK levels to be high, yet his cholesterol and tryglicerides were within normal range.

At the same time, the Ejection fraction was 20%.

The BNP levels were extremely high and this usually indicates damage to the heart tissue.

During 2003 my father ingested Vioxx the entire year and coincidentally he was hospitalized three times that year. He went to the Hospital on an Emergency basis In June, July and December 2003 each time with the same symptoms and each time the Medical records showed abnormal findings which were indicative of heart attacks.

This all happened prior to the announcement that Vioxx caused heart problems.

I need to know if you want me to send you copies of the approximate 500 pages that pertain to medical, lab. Pharmacy, EKG, Arrhythmias records, etc that I have in my possession.

You can see by the letter that I received from Girardi Keese Attorneys that they are trying very hard to disqualify my father's case based on past medical history and age.

<u>This is illegal and fraudelent as past medical history only would reduce points allocated to the case, not disqualify it.</u>

Before we signed the Releases, we understood that my father met all the Criteria to be an eligible Claimant.

You can reach my by telephone at (310)804-3259 or you can write to me at my home address: 13900 Panay Way #SR302 in Marina del Rey, CA  90292.

I am truly confident that you will help us with this matter in an effort to serve Justice.

Sincerely,

*Vivian Ross*

Vivian Ross

# WINER, McKENNA & DAVIS, LLP

www.wmdattorneys.com

JOHN D. WINER
ALEXIS S. McKENNA
EMILY A. DAVIS
JENNIFER S. FRISAK
KELLI D. BURRITT

OF COUNSEL
SHANNAN C. DUGAN
JUDITH C. WOLFF

December 14, 2007

Vivian Ross
13900 Panay Way
Unit SR 302
Marina Del Ray, CA 90292

Re:   Louis Ross vs. Merck Pharmaceuticals

Dear Ms. Ross:

Pursuant to our conversation yesterday, enclosed please find a copy of the expanded definition of Myocardial Infarction for purposes of the VIOXX settlement. Paragraph 4 is the most applicable to your father's situation.

As you and I have discussed, the criteria a Claimant must meet in order to be eligible for a settlement are as follows:

1. The medical records must confirm that the claimant suffered either a heart attack (defined on the enclosed page), ischemic stroke, or sudden cardiac death;

2. The medical or pharmacy records must establish that the claimant received at least 30 Vioxx pills within the 60 days prior to the injury; and

3. The medical or pharmacy records must confirm that Vioxx was being used within 14 days of the Vioxx-related heart attack, ischemic stroke, or sudden cardiac death.

The monetary settlement value for your father's case will be established through a complex calculation of (1) key dates and the relationship to the medical event causing your father's injury; (2) type and pattern of his usage of the drug; (3) medical risk factors (including age) at the time the drug was being taken; and (4) permanent damage. As we have discussed, what cannot be known at this time is the monetary value of your father's settlement. That will be determined after March 8, 2008, when the actual number of qualified plaintiffs is established. There will then be division of the total gross settlement amount by the number of eligible claimants. In any event there will be no payments made to any plaintiffs before August 2008

21700 BURBANK BLVD., 3RD FL.
WOODLAND HILLS, CA 91367
TEL: (818) 992-3151
FAX: (818) 992-3153

LAKE MERRITT PLAZA
1999 HARRISON STREET, SUITE 600
OAKLAND, CA 94612
TEL: (510) 433-1000
FAX: (510) 433-1001
TOLL FREE: (800) 584-4529

580 CALIFORNIA ST., 16TH FL.
SAN FRANCISCO, CA 94104
TEL: (415) 434-9300
FAX: (415) 434-9311

Vivian Ross
Re: Louis Ross vs. Merck Pharmaceuticals
December 14, 2007
Page 2

      In order for this settlement to proceed, there is a condition that 85% of all eligible claimants must accept this settlement offer. In light of the discussions you and I have had recently our firm believes it is in your best interest to accept the settlement as it is described above.

      I will write again soon with more details about the VIOXX settlement process.

                        Sincerely,

                        WINER, McKENNA & DAVIS, LLP

                        JENNIFER S. PRUSAK

JSP/em
Enclosure

## EXHIBIT 2.2.1.1

### INJURY GATE CRITERIA

**Definition of Myocardial Infarction.**

1. A final or discharge diagnosis in contemporaneous medical records of a myocardial infarction or heart attack.

    OR

2. A diagnosis or affirmative finding in the contemporaneous medical records (e.g., a report of consultation) by a cardiologist of a myocardial infarction or heart attack; or, within 14 days of discharge from the hospitalization related to the Event, an independent diagnosis by a treating cardiologist that the Event was a myocardial infarction or heart attack; provided that, in either instance, the final or discharge diagnosis does not rule out a myocardial infarction.

    OR

3. If the medical records are silent as to whether or not there was a myocardial infarction, new pathological Q waves in two or more contiguous leads.

    OR

4. If the medical records are silent as to whether or not there was a myocardial infarction, (a) signs and symptoms described in medical records of a heart attack (including but not limited to chest pain, pressure, tightness or discomfort, pain or discomfort in the upper areas of the body including but not limited to one or both arms, the back, neck, jaw or stomach, or shoulders; shortness of breath, weakness, dizziness, cold sweat, or excessive sweating, nausea, weakness, fatigue, loss of consciousness or posture, lightheadedness, feeling of faintness, heart-burn or indigestion sensations, feelings of restlessness or anxiousness, a sense of impending doom, disorientation, lips, hands or feet turning slightly blue, abnormal heart rhythms (arrhythmias), or loss of consciousness, cardiac arrest, blood pressure fluctuations or drops requiring medical intervention) or new ischemic ST-T wave changes on an electrocardiogram in two or more contiguous leads; AND

    (b) a rise and fall of cardiac enzymes that includes a rise in serum creatine kinase MB (CK-MB) to greater than two times the upper limit of normal (based on the individual's laboratory's normal range) <u>or</u> a rise in serum cardiac troponin greater than two times the upper limit of normal that a given laboratory considers diagnostic for infarctions. (In the event that the laboratory records do not reflect the normal diagnostic range for troponin that is utilized by that specific laboratory, a rise in the troponin to greater than 1.5 ng/ml shall be deemed to indicate a myocardial infarction.)

5. An event is **not** a myocardial infarction under definition Nos. 3 or 4 above, if myocardial infarction is ruled out as a diagnosis in the discharge summary or by an in-house cardiology consult at the time of the event, or the final diagnosis is angina or unstable angina.

- 1 -

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments.



**U.S. MARSHALS**

**PRIORITY MAIL®**
UNITED STATES POSTAL SERVICE

Flat Rate Mailing Envelope

For Domestic and International Use

Visit us at usps.com

CERTIFIED MAIL™

7008 2810 0000 3778 0429

From/Expéditeur:

VIVIAN ROSS
13900 PANAY WAY #SR302
MARINA DEL REY, CA 90292

To/Destinataire:

CHIEF JUDGE SARAH VANCE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
500 POYDRAS ST. ROOM C255
NEW ORLEANS, LA 70130

Country of Destination/Pays de destination:





Recycled Paper

EP14F

Cradle to Cradle Certification℠ for their ecologically-intelligent design. For more information go to mbdc.com/usps
Cradle to Cradle Certified℠ is a certification mark of MBDC.

Please recycle.

An amount of mailable material may be enclosed, as long as the envelope is not modified, and the contents are fully confined within the envelope with the adhesive provided as the means of closure.

INTERNATIONAL RESTRICTIONS APPLY:

POUND WEIGHT LIMIT ON INTERNATIONAL APPLIES

Customs forms are required. Consult the International Mail Manual (IMM) at pe.usps.gov or ask a retail associate for details.