IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX<br>PRODUCTS LIABILITY LITIGATION<br><br>This document relates to All Private Third-Party Payor Cases | MDL Docket No. 1657<br><br>SECTION L<br><br>JUDGE FALLON<br><br>MAGISTRATE JUDGE KNOWLES |

## REPLY TO LETTER OF APRIL 27TH, 2009 TO JUDGE FALLON BY VIVIAN ROSS

The facts are these: This is a claim by Ms. Ross for the death of her father. He died after his 89th birthday. He had significant medical issues including a 30-year history of hypertension, a 30-year history of high cholesterol, a previous cerebral accident, and a history of congestive heart failure. The case was previously handled by the Winer law firm. From their review of the records, they did not feel that Lewis Ross would qualify. On February 13th, 2008, my partner, David Bigelow, met with Vivian Ross to see if there was some chance to help. The case had been sent to us approximately five weeks earlier. I'm enclosing a copy of the memo to file discussing Mrs. Ross' abusive attitude. We have had several conversations with Ms. Ross. We documented this on our April 9th letter, our April 10th letter, our April 17th letter, our April 21st letter, our April 27th letter, our May 5th letter and our June 5th letter. Copies of these letters are attached. I personally wrote to Ms. Ross on May 5, 2009.

In short, I do not believe that there's anything further any law firm could do for this person. We are hopeful the Court would file this Reply in the Court file.

Dated: June 23, 2009

Respectfully submitted,

_____
Thomas V. Girardi (CA State Bar No. 36603)
GIRARDI|KEESE
1126 Wilshire Boulevard
Los Angeles, CA   90017
Tel:  (213) 977-0211
Fax: (213) 481-1554

***Plaintiffs' Liaison Counsel***

# G | K

## MEMORANDUM

**TO:** File

**CC:**

**FROM:** DNB

**DATE:** February 13, 2008

**RE:** Vivian Ross – Vioxx Claimant

---

I met with Vivian Ross yesterday, 2/12/08 for an hour to discuss her wrongful death claim in the Vioxx matter. Ms. Ross was aggressive and abusive for much of the meeting, at turns irate then apparently calm, only to become agitated again when she was told information that did not fit with her preconceived notions of the value of her claim. Ms. Ross' father was the original claimant; he retained Winer, McKenna and Davis. The file was transferred to us, apparently on or before December, 2007. Ms. Ross is convinced Vioxx was responsible for her 89 year old father's death, despite significant medical conditions which must be considered major factors in his health, including a 30 year history of hypertension (documented) a 30 year history of high cholesterol (documented), a previous cerebral accident (documented) and a history of congestive heart failure (anecdotal, not yet confirmed).

Ms. Ross has not yet returned the Vioxx release but has indicated she will do so. However, given her abusive attitude, which was also her hallmark when dealing with the prior law firm, it is reasonable to expect Ms. Ross may have unrealistic expectations regarding her claim in the Vioxx settlement.

F:\Clients\21239\mem\00191981.DOC

G|K

GIRARDI | KEESE
LAWYERS

April 9, 2009

Vivian Ross
13900 Panay Way, Apt. SR302
Marina del Rey, CA 90292

    Re: **Ross v. Merck**

Dear Ms. Ross:

This is to memorialize that I asked you again to forward to our office the medical records which you believe are pertinent to your father's death.

You stated yet again that you would send the records to us. You have told us this in the past but we have yet to receive them. Again, time is of the essence.

We look forward to receiving the records so that we can submit them to Brown Greer, the independent administrator.

With kind regards,

*[signature]*

James G. O'Callahan

JGO:cat

G | K    GIRARDI | KEESE
         LAWYERS

April 10, 2009

Vivian Ross
13900 Panay Way, Apt. SR302
Marina Del Rey, CA 90292

Re: **Ross v. Merck**

Dear Ms. Ross:

You called today to point out that your late father suffered what you believe to have been a heart attack in the summer of 2003 and that his death did not occur until 2005.

You also told me that next week you would be sending selected medical records regarding the 2003 "heart attack."

I asked again that you send me all the records that you have so that we can be sure that all the relevant records have been received and submitted by our office.

In response, you indicated that you would be sending copies of records to Judge Fallon, Judge Chaney, Browne Greene and our office.

I look forward to receiving whatever you send, and I hope that it is everything.

With kind regards,

*[signature]*

JAMES G. O'CALLAHAN

JGO/hy

# G|K

# GIRARDI | KEESE
LAWYERS

April 17, 2009

Vivian Ross
13900 Panay Way, Apt. SR302
Marina Del Rey, CA 90292

Re: **Ross v. Merck**

Dear Ms. Ross:

This will confirm that, to the best of our knowledge, Brown Greer has been given all the materials, records and forms pertaining to you and your mother's case.

You also asked me to explain which judge is in charge of your case. Judges and lawyers use the word jurisdiction to describe where and how a case is controlled. If a judge doesn't have the ability to issue orders in a case it is because the judge lacks jurisdiction. For example, a State Court Judge cannot issue orders in a case that has been filed in Federal Court.

Ross v. Merck and Co. was filed in the Superior Court of the State of California. All the Vioxx cases in California were ordered into a Coordinated Proceeding by the Judicial Council of the State of California. All the Vioxx cases were then sent to Los Angeles and assigned to Judge Victoria G. Chaney. Judge Chaney will again have jurisdiction over the Ross v. Merck action if your case is not resolved in the Vioxx settlement program.

There are three steps that may occur in the Vioxx settlement program. The first step is evaluation of the case by employees of Brown Greer, the independent administrator of the Vioxx Settlement Program. Your case will be eligible for compensation if the medical records and pharmacy show that your father had a myocardial infarction while he was on Vioxx or shortly after he was on Vioxx. If the case is eligible, an award of a certain number of points will be given.

If a case is deemed not eligible, it is sent to the Gate Committee. The Gate Committee is comprised of lawyers for Merck and lawyers who represent plaintiffs in the Vioxx cases. Six lawyers – three from each side – review the records from the ineligible cases. It takes four (4) votes to change a case from "ineligible" to "eligible."

1126 WILSHIRE BOULEVARD • LOS ANGELES, CALIFORNIA • 90017-1904
TELEPHONE: 213-977-0211 • FACSIMILE: 213-481-1554

G | K

Vivian Ross
Re: **Ross v. Merck**
Page 2

If a case is still ineligible after the Gate Committee review, a notice is sent to the lawyer representing the plaintiff. Upon receipt of the notice, the lawyer can either appeal the case to a Special Master, put the case back into the court system that it came from, or do nothing and have the case end.

You told me that you plan to have two (2) cardiologists review your father's hospital and medical records to determine if your father suffered a myocardial infarction in 2003. You believe that your father may have suffered as many as three (3) MIs during 2003; this belief is based on your review of the records. You stated that you would send me copies of the written reports from the cardiologists after you receive them.

I believe that this provides the information that you were seeking and summarizes your plan to have the records reviewed. If you have any questions, please do not hesitate to contact me.

With kind regards,

*James G. O'Callahan*

James G. O'Callahan

JGO:cat

G|K                    GIRARDI | KEESE
                            LAWYERS

April 21, 2009

John Winer
Winer, McKenna & Davis
1999 Harrison Street, Suite 600
Oakland, CA 94612-3586

     Re: **Ross v. Merck**

Dear Mr. Winer:

We took over this case in December 2007.

We are very concerned that the Rosses don't grasp the difficulties that their case posed. Vivian Ross is utterly convinced that her father had a myocardial infarction in 2003 although the review of the records indicates otherwise.

Ms. Ross indicates that you told her that she and her mother would recover under the terms of the Vioxx Settlement Program. Is this what you told her, or has she misconstrued or misinterpreted some of your comments?

Please let me know what occurred so that I can respond to Ms. Ross appropriately.

With kind regards,

James G. O'Callahan

JGO:cat

# WINER, McKENNA & DAVIS, LLP

www.wmdattorneys.com

JOHN D. WINER
ALEXIS S. MCKENNA
EMILE A. DAVIS
KELLI D. BURRITT
ERIKA J SCOTT

OF COUNSEL
SHANNAH C. DUGAN
JUDITH C. WOLFF

RECEIVED
APR 3 0 2009
GIRARDI & KEESE

April 27, 2009

*Sent Via Facsimile and US Mail*

James G. O'Callahan, Esq.
Girardi & Keese
1126 Wilshire Blvd.
Los Angeles, CA 90017-1904

    Re:    **Ross v. Merck**

Dear Mr. O'Callahan:

    Please allow this to serve as a response to your letter of April 21, 2009, in the above referenced matter. Please be aware that at no time did we indicate that Ms. Ross would necessarily recover under the terms of the Vioxx Settlement Agreement. She was advised that if a thorough review of the records did indicate an MI as she believed, she may be entitled to recover under the agreement. However, she was also advised that we had not seen evidence of an MI at the time.

    Please feel free to contact me if you wish to discuss this matter further.

                      Very truly yours,

                      *Dictated But Not Read*
                      *In Order To Avoid Delay*

                      EMILE A. DAVIS

EAD/dbo

21900 BURBANK BLVD., 3RD FL.
WOODLAND HILLS, CA 91367
TEL: (818) 992-3151
FAX: (818) 992-3153

LAKE MERRITT PLAZA
1999 HARRISON STREET, SUITE 600
OAKLAND, CA 94612
TEL: (510) 433-1000
FAX: (510) 433-1001
TOLL FREE: (888) 884-4529
*reply to the Oakland office*

580 CALIFORNIA ST., 16TH FL.
SAN FRANCISCO, CA 94104
TEL: (415) 434-9300
FAX: (415) 434-9311




**GIRARDI | KEESE**
LAWYERS

May 5, 2009

Vivian Ross
13900 Panay Way, Apt. SR302
Marina Del Rey, CA 90292

**RE:   Ross vs. Merck**

Dear Ms. Ross:

I believe it is going to be very difficult for the Judge's to rule that Vioxx was the cause of your father's death.

My review of the record indicates that he was 89 and had significant medical issues including a 30 year history of hypertension, a 30 year history of high cholesterol, a previous cerebral accident and a history of congestive heart failure. With these past medical conditions, I believe the panel will probably come to the conclusion that the Vioxx did not cause the death.

With kind regards,

THOMAS V. GIRARDI
TVG/kc

21239\Cor
1126 WILSHIRE BOULEVARD • LOS ANGELES, CALIFORNIA • 90017-1904
TELEPHONE: 213-977-0211 • FACSIMILE: 213-481-1554
WWW.GIRARDIKEESE.COM

G|K  GIRARDI | KEESE
            LAWYERS

June 5, 2009

Vivian Ross
13900 Panay Way, Apt. SR302
Marina Del Rey, CA 90292

Re: **Ross v. Merck**

Dear Ms. Ross:

When you called on June 4, 2009 you asked me if I were aware of a condition called bundle branch block. (You also told me that you had a doctor review your father's medical records but you would not be sending me a copy of the report that had been done.)

The Vioxx settlement program will compensate those who suffered from myocardial infarction or ischemic strokes. The causes of bundle branch block are varied, and include hypertension, chronic lung disease, coronary artery disease, pulmonary embolis, cardiomyopathy and atrial and septal defects. It is worth noting that medical records indicate that your father was diagnosed with one or more of these conditions.

If you have a report from a medical reviewer which you believe would help your case, I would be happy to submit it. I cannot guarantee its acceptance or its impact, but I am willing to make the effort.

With kind regards,

*James G. O'Callahan*

James G. O'Callahan

JGO:cat



May 5, 2009

Vivian Ross
13900 Panay Way, Apt. SR302
Marina Del Rey, CA 90292

**RE:  Ross vs. Merck**

Dear Ms. Ross:

I believe it is going to be very difficult for the Judge's to rule that Vioxx was the cause of your father's death.

My review of the record indicates that he was 89 and had significant medical issues including a 30 year history of hypertension, a 30 year history of high cholesterol, a previous cerebral accident and a history of congestive heart failure. With these past medical conditions, I believe the panel will probably come to the conclusion that the Vioxx did not cause the death.

With kind regards,

THOMAS V. GIRARDI
TVG/kc

21239\Cor