UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION "L" |
| | * | |
| | * | JUDGE FALLON |
| This document relates to All Cases | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * *

## CURATOR'S STATUS REPORT NO. 14

Curator, Robert M. Johnston, submits this Status Report No. 14, in accordance with the Court's Order dated February 12, 2008.

### I.     MAILINGS TO PRO SE CLAIMANTS

Since appointment, the curator's office issued several large mailings to potential pro se claimants or litigants, and provided individualized mailings upon request to claimants, potential claimants, pro se litigants, and other parties of interest under the agreement.

In March 2008, the curator's office sent two mailings to claimants and litigants who were identified by the parties and the Claims Administrator as having not yet completed the requirements for claim package submission and/or enrollment. This mailing generated a large response and

provided claimants and potential claimants with the information necessary to avail themselves of the settlement program, should they meet the program requirements. Additionally, this initial mailing was forwarded to those persons for whom the original mailing was returned, if new address information became available. In total, approximately 1400 initial mailing packets have been sent by the curator's office since March 2008.

As the deadlines for submission of necessary documents regarding registration, enrollment, and claim package documents neared, the curator's office completed additional mailings to inform claimants and potential claimants of the necessary action and documents required to move forward in the settlement program. For example, in October 2008, a mailing was sent to approximately 130 unregistered potential claimants identified as having either incomplete registration or enrollment materials, advising them of the deadline to complete enrollment. Likewise, in November 2008, the curator forwarded another mailing to approximately 200 claimants identified as having potentially incomplete claim package submissions, in order to advise recipients of the deadline for completion of their submissions.

In February 2009, upon request, the curator's office mailed materials to approximately 700 claimants notifying them of the private lien resolution program, its requirements, the deadline for participation, and forms required in order to participate in the program. For those claimants who expressed a desire to take part in this program specifically, but who had not yet submitted the required form, the curator's office also advised them, on an individual basis, of the Lien Administrator's extension of time to apply for this program.

In addition to the above mentioned group mailings, the curator provides individual mailings as they are requested. For example, the curator's office has continued to provide registration and enrollment forms upon request to any claimant, non-claimant, or litigant requesting these forms.

Also, other information or documents have been sent at the request of callers with inquiries as to the requirements of the settlement program, lien resolution program, extraordinary injury program, and pending motions before the court.

As previously reported, these mailings are logged on the Curator's Secure Portal Online Communication Log and handled in the same manner as other inquiries received by the Curator's office.

## II. RETURNED AND UNDELIVERABLE MAIL

As discussed in prior reports, we continue to monitor returned and undeliverable or returned mailings and keep the parties, Court, Claims Administrator, and Lien Administrator apprised of any new information or documents received. Several Private Lien Resolution Program Packets were returned as undeliverable or because of an expired or unavailable forwarding order. These returned mailings are logged into the curator's communication log and maintained in the curator's file so that they can be forwarded if new address information is received.

## III. LEGAL NOTICE PUBLICATIONS

All the legal notices required to contact potential claimants were published and we have received affidavits of publication from all but one publisher of these legal notices. These affidavits certify the dates of publication, and provide a certified copy of the notice actually published. These affidavits are maintained by the curator and will be submitted to the Court as part of the curator's certification.

For claimants, or their heirs, for whom new contact information has been received as a result of the publication of these legal notices, we forwarded that information to both the Claims Administrator and counsel for Merck.

## IV.     CURATOR'S COMMUNICATIONS

The curator's office continues to receive numerous telephone calls, emails, facsimiles, and correspondence from potential and current claimants in the Settlement Program, pro se litigants, and represented claimants with pending Motions to Withdraw Counsel. As a result the progression of the Settlement Program, the nature of these communications has changed from initial calls from claimants or potential claimants who had broad questions about the Settlement Program and its requirements, to more specific communications regarding particular aspects of a claimant's claim or lawsuit. Over time, the number of communications has decreased, but the communications have become more involved. Now, these communications primarily involve questions concerning notices of ineligibility, but we continue to handle communications related to deficiencies in either enrollment or claim materials, questions regarding the status of claim review, explanations of claimant options during and after receiving notices of deficiencies/ineligibility or notices of points awards, and inquiries as to how to respond to Motions to Dismiss filed on behalf of Merck.

Regarding those claimants who receive notices of ineligibility, the curator's office assists them in understanding this determination, as well as their further options under the Settlement Program. As to the significant number of claimants who received notification of various deficiencies, we assisted them in understanding the deficiencies and approaches to cure those deficiencies. For those claimants who were not able to clear deficiencies because of the particular facts of their claims, we advised and answered questions regarding their other options and provided reference and referral assistance, as needed. Both the Claims Administrator and the DLC were of great assistance in helping these claimants correct deficiencies by re-sending the required documents, or by verifying that the database reflects any corrective action taken.

Also, when a caller is in need of assistance from another source, such as the Claims Administrator, Lien Administrator, or counsel for Merck, we have attempted to facilitate direct communication of the request to the outside source, e.g. through conference calling and electronic mail with both the claimant, the curator, and the third-party.

All communications continue to be recorded internally and are also being entered into the Claims Administrator's online communications log. This online communications log is available through the Claims Administrator's portal, and reports are available by date, by caller, or by individual taking the call. At the conclusion of this process, we will submit the entire communications log to the Court. At this point, all completed outgoing mailings and curator communications as of the date of this report have now been uploaded to the secure portal.

With regard to written communications and documents forwarded by pro se or potential pro se claimants via U.S. Mail, facsimile, electronic mail, and private courier companies, as referenced in Section I, we continue to forward all documents pertaining to the settlement program to the Claims Administrator, to assist in compliance with the deadlines set forth in the Settlement Agreement, and extensions agreed to by the parties. A copy of these communications and documents is also maintained in the curator's file. With regard to the Private Lien Resolution Program, any documents received were forwarded to the Lien Administrator, both by electronic mail and by overnight delivery. Additionally, where the pro se claimant is seeking to comply with a pending Motion to Dismiss, we also forward information and documents to the DLC.

We have received requests from counsel for Merck and withdrawing attorneys seeking information regarding claimants that they have been unable to contact. As these inquiries are received, we review our records and provide any available information.

The curator's office received many inquiries from claimants and litigants having difficulties in obtaining medical records, or seeking relief from unreasonable costs of duplication of medical records, both needed to complete or supplement claims package submissions. We have provided the claimants and litigants with copies of the Court's various orders regarding production of medical records and counseled them as to strategies for obtaining these records.

As noted in prior reports, the curator's office handled calls requesting assistance in obtaining records on deposit with the Litigation Records Repository or that remain in the possession of prior counsel for the claimant or litigant.

## V.    MERCK'S MOTIONS TO DISMISS

The curator's office received a number of communications from pro se and represented litigants who are or were subject to a Motion to Dismiss filed, pending, or granted on behalf of Merck. We worked with counsel for Merck to assure that all communications and documents received by the curator's office were forwarded to counsel for Merck, as well as to the Claims Administrator, to indicate whether a claimant desired to proceed with their claim. We will continue to provide this information if we are contacted following the filing of any additional motions.

## VI.    REFERRAL ATTORNEY LIST

As part of the Court's February 12, 2008 Order, the curator has the responsibility of advising "the *Pro Se* Claimants of the name and contact information for counsel handling Vioxx matters in the jurisdiction where the *Pro Se* Claimant resides." *See* Document No. 13365, Page 3. As previously reported, we were provided with information from the PLC regarding attorneys handling Vioxx matters in various jurisdictions and we continue to provide this information, as required by the Court's Order, to pro se claimants requesting same.

-7-

Additionally, since the appointment of Ann Oldfather as liaison counsel, we are advising of her appointment to the small group of pro ses that appear to have viable claims for which she is now assisting as liaison counsel.

**VII.   PRESENTATION AT NEXT STATUS CONFERENCE**

The curator will be prepared to address the items in this report to the Court, parties, and callers listening via telephone conference, as well as being available to address any questions, at the monthly status conference scheduled for July 31, 2009.  Additionally, we will be available for all future status conferences, as dates are selected by the Court.

Respectfully submitted,

JOHNSTON, HOEFER, HOLWADEL
  & ELDRIDGE


  *s/ Robert M. Johnston*
ROBERT M. JOHNSTON  (Bar No. 7339)
400 Poydras Street, Suite 2450
New Orleans, Louisiana 70130
Telephone: (504) 561-7799
Facsimile: (504) 587-3794
Email:  rmj@ahhelaw.com

Pro Se Curator

## Certificate of Service

I hereby certify that the above and foregoing Curator's Status Report No. 14 has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 29th day of July, 2009.

    *s/ Robert M. Johnston*
Robert M. Johnston  (Bar No. 7339)