UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | **MDL Docket No. 1657** |
| | * | |
| PRODUCTS LIABILITY | * | **SECTION L** |
| LITIGATION | * | |
| | * | **JUDGE FALLON** |
| This document relates to: | * | |
| | * | **MAGISTRATE JUDGE** |
| *Betty Pickett* | * | **KNOWLES** |
| *v.* | * | |
| *Merck & Co., Inc.* | * | |
| *Docket No. 2:06-cv-1115* | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**DEFENDANT MERCK & CO., INC.'S OPPOSITION TO
PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT**

Defendant Merck & Co., Inc. ("Merck"), through its undersigned counsel, opposes Plaintiff Betty Picket's Motion for Relief From Judgment, and in opposition to that motion states as follows:

1.  On November 9, 2007, the parties in this litigation announced the establishment of the Vioxx Resolution Program. The requirements of that Program are set out in the Master Settlement Agreement ("Agreement" or "MSA"). By submitting an Enrollment Form, claimants and their enrolling counsel agree to be bound by all of the terms and conditions of the Agreement. *See* MSA § 1.2.4.

2.  Submission of an Enrollment Form is irrevocable, and a claimant may not, other than as specifically provided for under the Agreement, withdraw an Enrollment Form, request the return of his Release or Stipulation for Dismissal With Prejudice or otherwise unilaterally exit the Program. *See* MSA § 1.2.3.

3. As part of the settlement process, claimants must submit to the Claims Administrator (BrownGreer) complete Claims Packages, including all of the required pharmacy, medical and event records, as well as properly and fully executed Releases and Medical and Employment Record Authorization Forms. *See* MSA §§ 1.3.1, 1.2.2.1. Additionally, claimants with lawsuits pending against Merck must provide properly and fully executed Stipulations for Dismissal With Prejudice. *See* MSA § 1.2.2.1.

4. Program claimants who failed to comply fully with the terms of the Agreement by November 30, 2008 ceased to have any further rights under the Program and became Non-Submitting Program Claimants ("NSPC"). At that point, the MSA directs the Claims Administer to deliver such Program claimants' Stipulations for Dismissal With Prejudice and Releases to Merck which Merck may file or cause to be filed in any relevant action or proceeding. *See* MSA § 1.2.2.4.

5. On August 29, 2008, the Claims Administrator issued to Ms. Pickett a First Notice of Claims Package Deficiency notifying counsel that no claims material had been submitted. On September 18, 2008, the Claims Administrator issued to Ms. Pickett a Second Notice of Claims Package Deficiency that again notified counsel that no claims material had been submitted. On November 6, 2008, the Claims Administrator issued to Ms. Picket a Final Notice of Claims Package Deficiency that notified counsel that a Claims Form, but none of the required medical records ("PME Records") had been submitted. On December 5, 2008, the Claims Administrator issued a Notice of Non-Submitting Program Claimant. (Copies of the foregoing notices are attached as Exhibit A.)

6. As this Court is aware, counsel have been repeatedly urged to regularly check their portals for important notices from the Claims Administrator. Furthermore, this Court itself

> *In addition, the Court has been notified that some counsel are under a mistaken belief that their clients are enrolled in the settlement when in fact the clients are not enrolled.* ***These counsel have not accessed the Claims Administrator's website to monitor the status of their clients' cases or in any way taken any action to verify that their clients are in fact enrolled in the settlement. The Court has repeatedly emphasized the importance of closely monitoring the Claims Administrator's website to pay close attention to the status of claimants whose claims have been submitted for enrollment in the settlement. With the deadline for enrollment now imminent, it is more important than ever that counsel closely monitor the status of their clients' cases as they proceed through the enrollment process.***

(emphasis added)

7.  Through its database, the Claims Administrator is able to monitor if and when counsel actually check their portal and whether they actually open the various notices that have been posted there.

8.  According to the records of the Claims Administrator, Ms. Pickett's counsel did not view the first two deficiency notices, issued August 29 and September 18, until October, and counsel never opened and viewed the third notice, issued November 6, at all.  Furthermore, counsel failed to open and view the final Notice of Non-Submitting Program Claimant, first posted December 5, 2008, until March 31, 2009.

9.  In addition to the notices and emails discussed above, the Claims Administrator took additional steps to make sure that counsel were aware of approaching critical deadlines. Specifically, on November 21, 2008, the Claims Administrator reviewed its database and identified all law firms who had not yet viewed any of their Final Notices of Claims Package Deficiency.  The Claims Administrator identified 124 such firms, including Ms. Pickett's counsel.

10. The Claims Administrator instructed its contact person for each identified firm to contact the firm and urge them once more to view the notices on their portal. The CA Contact for Ms. Pickett's counsel was Mr. Dennis Carter. On November 21, 2008, Mr. Carter sent Ms. Pickett's counsel an email informing him that the Claims Administrators' records "reflect that you have a deficiency notice related to the Claims Package deadline on your Vioxx web portal for at least one of your claimants that has not been viewed" and providing detailed instructions on how to view those notices. Ms. Pickett's counsel responded to that email. Although his reply email posed specific questions about enrollment deficiencies for other clients and not about claims package deficiencies, the fact that he replied demonstrates that he received Mr. Carter's original email. (A copy of this email exchange is attached as Exhibit B.) Notwithstanding this additional reminder, the Final Notice posted November 6, 2008 remained unopened. *See* ¶ 8, *supra.*

11. As clearly stated in the December 5, 2008 Notice of Non-Submitting Program Claimant, Ms. Pickett could appeal that determination to the Special Master. She had until December 29, 2008 to file an appeal. No appeal was filed. Indeed, the December 5, 2008 Notice was not even opened until March 31, 2009—*a full three months after the time to appeal had expired*. *See* ¶ 8, *supra.*

12. On March 31, 2009, Ms. Pickett's counsel contacted the Claims Administrator regarding the closure of Ms. Pickett's claim. He was informed of the reason for the closure, that the time to appeal had expired, and that Ms. Pickett's release and stipulation of dismissal had been transmitted to Merck. *See* Exhibit 9 to Plaintiff's Memorandum (email exchange between plaintiff's counsel and the Claims Administrators' office).

13.     On June 23, 2009, Merck filed the stipulation of dismissal for Ms. Pickett's case, and this Court entered the Order of Dismissal on June 25, 2009.

14.     In sum, Ms. Pickett, through her counsel, received numerous notifications that her claims package was fatally deficient, and she was given multiple opportunities to cure those deficiencies over a period of several months.  However, those deficiencies remained uncured.  (Indeed, plaintiff's motion papers note that key medical records are still missing; thus presumably, these deficiencies would still be uncured even if plaintiff were returned to the Resolution Program).  In accordance with the MSA, she was properly declared a Non-Submitting Program Claimant and her case dismissed.  None of the materials submitted in support of the motion warrant disturbing that dismissal.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion should be denied

Dated:  July 30, 2009

                Respectfully submitted,

                By:/s/ *Dorothy H. Wimberly*
                    Phillip A. Wittmann, 13625
                    Dorothy H. Wimberly, 18509
                    STONE PIGMAN WALTHER
                    WITTMANN L.L.C.
                    546 Carondelet Street
                    New Orleans, Louisiana 70130
                    Phone: 504-581-3200
                    Fax:    504-581-3361

                Defendants' Liaison Counsel

                —and—

- 6 -

        Douglas R. Marvin
        Eva Petko Esber
        M. Elaine Horn
        WILLIAMS & CONNOLLY LLP
        725 Twelfth Street, N.W.
        Washington, D.C. 20005
        Phone: 202-434-5000
        Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion and Rule to Show Cause has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 30th day of July, 2009.

> /s/ Dorothy H. Wimberly
> Dorothy H. Wimberly, 18509
> STONE PIGMAN WALTHER
> WITTMANN L.L.C.
> 546 Carondelet Street
> New Orleans, Louisiana  70130
> Phone:  504-581-3200
> Fax:     504-581-3361
> dwimberly@stonepigman.com
>
> Defendants' Liaison Counsel