UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX : | |
| : | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION : | |
| : | SECTION L |
| : | |
| This document relates to ALL ACTIONS : | JUDGE FALLON |
| : | MAG. JUDGE KNOWLES |
| : | |

**PLAINTIFFS' LIAISON COUNSEL'S SUPPLEMENTAL
MEMORANDUM IN SUPPORT OF
REIMBURSEMENT OF COMMON BENEFIT EXPENSES**

**I. INTRODUCTION**

On November 9, 2007, Merck & Co., Inc., entered into a Settlement Agreement with Negotiating Plaintiffs' Counsel. That landmark settlement provided $4.85 Billion to resolve the claims of litigants that suffered myocardial infarctions, ischemic strokes and sudden cardiac deaths. Now that the settlement has been implemented, to date approximately $1.3 Billion has been paid to approximately 17,000 claimants who have passed through the settlement process.[1] The process is ongoing.

On January 20, 2009, Plaintiffs' Liaison Counsel filed a Motion for Award of Plaintiffs' Common Benefit Counsel Fees and Reimbursement of Expenses. Since that motion was filed, substantial efforts have been undertaken by the Court-appointed Fee Allocation Committee (FAC) to review all time and expense submissions of counsel claiming reimbursement for costs and/or fees for services relating to common benefit. Under this Court's tutelage, the FAC has focused not only

---

[1] *See* Claims Administrator Court Report No. 19 (June 24, 2009) available at http://www.browngreer.com/vioxxsettlement/images/pdfs/mdlreport_062409.pdf.

on time submissions, but also on the costs and expenses submitted by counsel. The FAC established a sub–committee to further evaluate and address costs alone.[2] Over the past seven months the cost sub-committee has worked extensively with the Court-appointed accountant, Philip Garrett, who assisted in compiling the submissions and reviewed time and expense reports and backup materials to determine whether they were compiled within the dictates of PTO 6. This involved a "line-by-line" review of "non-standard", individualized bookkeeping submissions from each individual common benefit counsel that was claiming reimbursement. This process was time consuming, painstaking, tedious and laborious. Nevertheless, the result of the sub-cost committee's review has resulted in the elimination of some unwarranted common benefit costs that were sought. At this time, the amount sought from the Vioxx claimants to reimburse for common benefit costs are believed by the sub-cost committee to be proper common benefit costs that are consistent with this Court's directives and the relevant jurisprudence.

By Court Order, any interested person was invited to voice objections to the January 20, 2009 fee petition. None of the objections to date have raised or challenged any aspect of the request for reimbursement of common benefit costs. The absence of any objection stands as a testament to the lack of controversy of the appropriateness for counsel to be reimbursed their properly accounted common benefit costs. These are common benefit costs that have been subjected to scrutiny by the Court-appointed accountant, Philip Garrett, and further review by the FAC sub-cost committee through a transparent review process. Therefore, movant suggests that the reimbursement of common benefit costs should be promptly granted.

---

[2]The cost committee is comprised of Russ M. Herman, Arnold Levin, Andy Birchfield, Edward Blizzard and Christopher Seeger.

### III.  ARGUMENT

#### A.  The FAC Recommends That Costs Be Awarded Consistent with its Evaluation of Each Common Benefit Counsel's Cost Submissions

As described above, Philip Garret reviewed all of the cost submissions of all counsel seeking reimbursement of common benefit costs. This was done to verify conformance of each submission with Pretrial Order No. 6.[3]  The FAC sub-cost committee then reviewed Philip Garrett's reports to further evaluate each submission. Those costs that were questioned by the sub-cost committee were identified to the specific submitting counsel. In turn, these counsel either justified their expenses or voluntarily reduced or withdrew their submission, in appropriate circumstances. In those few cases where a dispute ensued, additional review was undertaken, further communications took place and if a resolution could not be reached the amounts remained as questioned costs as listed on Exhibit B. As a consequence of these collective efforts between Philip Garrett and the sub-cost committee, a presentation was made to the FAC as a whole. The total sum of the approved costs for reimbursement to various counsel amounts to $25,402,943.04, and is identified by Philip Garrett in his Supplemental Affidavit, as well as Exhibit A attached hereto. Exhibit A identifies the specific amount, including any common benefit assessments paid by a particular law firm which is to be reimbursed pursuant to this request. Philip Garrett also reviewed and reports the assessments paid by each common benefit counsel. The total amount of MDL assessments made by various law firms equals $4,640,000.00. *Id.* The combination of the approved costs and MDL assessments equals $30,042,943.04. *Id.*

Following both a review by Philip Garret and the sub-cost committee's review, Plaintiffs'

---

[3] In order to be eligible for reimbursement, expenses were required to be within the limitations set forth in PTO 6 (as amended) and documented as required by the Order(s).

Liaison counsel is confident that the approved expenses sought by this supplemental memorandum were all reasonably expended for purposes of the Vioxx litigation. Accordingly, reimbursement of costs in the amount of $30,042,943.04 should be separately recognized and provided for in any common benefit award by the Court.

In addition to these costs, the FAC recognizes that some firms disputed the review process of their costs submissions and other firms submissions remain under review. For these firms, Philip Garrett accounted for "costs under review or in dispute" separately. *See* Supplemental Affidavit of Philip Garrett, and Exhibit B. Exhibit B reflects the total common benefit costs sought to be reimbursed, which totals $41,954,153.14, including those amounts identified on Exhibit A, as well as each firm's common benefit costs that remain either under review or in dispute (if any).[4]

Combining all costs on Exhibit A and exhibit B, results in a sum that represents the total common benefit costs currently sought to be reimbursed and represents 1% percent of the gross amount of recoveries that are subject to a common benefit award. It is certainly a reasonable amount for reimbursement of common benefit costs.[5] Accordingly, reimbursement of common benefit costs in this amount should be also recognized and provided for in any common benefit award by

---

[4]Exhibit B also provides an anticipated reserve of $1.5 million for future continuing costs and a set-aside of $2 million for unaccounted for submissions for past months. Including these costs into the totals for all others, the total potential costs in this litigation equals $45,454,153.14, approximately 1% of the total Settlement Agreement with Merck & Co., Inc.

[5] For the original fee petition the court-appointed accountant reported as of January 14, 2009, common benefit counsel incurred $30,508,021.87 in properly documented "held expenses" and $3,881,646.38 in properly documented "shared expenses" for the common benefit of all Vioxx Claimants in MDL 1657. The sum of these expenses equals $34,389,668.25. *See* Garrett Affid., ¶¶18 - 21.

the Court.[6] In an abundance of caution, however, Liaison Counsel recommends an award of 1% of the settlement amount for costs, with the understanding that any excess would be returned to the Vioxx claimants.

### B. Common Benefit Counsel Should Be Entitled to Reimbursement of Expenses

The common fund doctrine authorizes reimbursement of the reasonable amounts paid out-of-pocket to achieve a common benefit recovery or to advance the common goals of plaintiffs' in MDL litigation. *See Sprague v. Ticonic*, 307 U.S. at 166-67 (recognizing a federal court's equity power to award costs from a common fund); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d at 771 ("In accordance with the well-established common fund exception to the American Rule,...class counsel...are entitled to an award of their...expenses out of the fund that has been created for the class by their efforts"; *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001); *Orthopedic Bone Screw*, 2001 WL 1622741 at *9-*10 (awarding 5% of the gross recovery for reimbursement of litigation expenses); PTO No. 19 (authorizing 3% "assessment" in MDL 1657 for fees and repayment of costs and expenses).

The Settlement Agreement also provides for reimbursement of common benefit expenses from the clients' share of their recovery, as follows:

> In addition to those amounts provided in Section 9.2 above, Common Benefit Attorneys shall also be entitled to reimbursement of their reasonable common benefit expenses. Reimbursement of these expenses shall be deducted from the clients' net recovery. The PLC

---

[6]Attached hereto under seal as Exhibit "C" is a CD containing all of the common benefit submissions made by all of the various law firms seeking reimbursement of common benefit costs. This CD contains the backup materials for all of the individual law firms identified on Exhibits A and B and supports their claim for reimbursement of common benefit costs. Should a request be made to review the backup data contained in Exhibit "C", please contact Plaintiffs' Liaison Counsel.

        shall submit to the Claims Administrator the audited common benefit expenses of Common Benefit Attorneys,' which sum will be deducted on an equal percentage basis from the MI Settlement Fund and IS Settlement Fund.

Settlement Agreement §9.2.2.  This provision was agreed to by all Vioxx claimants that registered and should be enforced by the Court in its administrative and oversight role over the Settlement program.  *See* Settlement Agreement §9.2.3.

### III.  CONCLUSION

For all the reasons set forth herein, Liaison Counsel respectfully submits on behalf of all Plaintiffs Common Benefit Counsel that this Supplemental Memorandum in Support of Motion for Reimbursement of Expenses should considered and an award of $45,454,153.14 for costs should be granted subject to being returned to Vioxx claimants upon completion of the cost review process.

                Respectfully submitted,

Date:   August 3, 2009                By:   /s/ Leonard A. Davis
                                                **Russ M. Herman (Bar No. 6819)**
                                                Leonard A. Davis (Bar No. 14190)
                                                Stephen J. Herman (Bar No. 23129)
                                                ***Herman, Herman, Katz & Cotlar, L.L.P.***
                                                820 O'Keefe Avenue
                                                New Orleans, Louisiana  70113
                                                Telephone: (504) 581-4892
                                                Facsimile: (504) 561-6024

                                                **PLAINTIFFS' LIAISON COUNSEL**

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 3rd day of August, 2009.

      /s/ Leonard A. Davis
      Leonard A. Davis (Bar No. 14190)
      ***Herman, Herman, Katz & Cotlar, LLP***
      820 O'Keefe Avenue
      New Orleans, LA  70113
      PH:   (504) 581-4892
      FAX:  (504) 561-6024
      ldavis@hhkc.com