# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: VIOXX<br>PRODUCTS LIABILITY<br>LITIGATION | * <br> * <br> * <br> * <br> * <br> * | MDL Docket No. 1657<br><br>Section L |
| THIS DOCUMENT RELATES TO<br>ALL CASES | * <br> * <br> * | Judge Fallon<br>Mag. Judge Knowles |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF STEERING COMMITTEE'S FIRST SET OF INTERROGATORIES TO DEFENDANT MERCK & CO. INC

TO:   Merck and Company, and its attorneys:

Phillip A. Wittmann, Esq.

Stone, Pigman, Walther, Wittmann, L.L.C.

546 Carondelet Street

New Orleans, Louisiana 70130-3588

Merck & Co, Liaison Counsel

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure, 33(a), the Plaintiffs' Steering Committee ("PSC") propounds the following First Set of Interrogatories to Defendant Merck.

Each interrogatory, as provided by law, shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for the objection shall be stated. The answers are to be signed by the person making them, and the objections signed by the

attorney making them. Answers to these interrogatories, or objections in lieu thereof, shall be served <u>within 30 days</u> from the service of this document.

Under the Federal Rules of Civil Procedure 26(e), these interrogatories are continuing in nature. Defendants, therefore, are required to supplement their responses as new or different information becomes known.

## DEFINITIONS

1.    "Defendant" is used to refer to defendant Merck and/or its predecessor(s).

2.    "YOU," "Your," "Yours," or "MERCK" refers to Defendant MERCK AND COMPANY, as well as all its partners, directors, officers, employees, servants, agents, attorneys, joint ventures, or other representatives, including all corporations and entities affiliated with MERCK AND COMPANY and any other named Defendants in this lawsuit. The terms "YOU" or "YOUR" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or other representatives. The terms "YOU" or "YOUR" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or other representatives.

3.    "VIOXX" is the drug rofecoxib, also known by the brand name Vioxx, and any predecessor or non-final derivation of the drug that later became Vioxx. Rofecoxib is used interchangeably with Vioxx or MK-0966 and includes Rofecoxib, Vioxx, MK-0966 or any other method of identifying the composition (or any portion thereof) of the drug that is now known as Vioxx.

4.    "NSAIDs" means non-steroidal anti-inflammatory drugs, including both selective and non-selective COX-2 inhibitors.

5.    "FDA" means the United States Department of Health & Human Services, United States Food & Drug Administration, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

6.    "PDR" is used to refer to the Physicians Desk Reference.

7.    "Document" is used in its broadest sense, and means the original and any non-identical copy, regardless of origin or location. Typical categories of material included within the term document are: books, pamphlets, periodicals, memoranda (including those of telephone and in-person conversations), letters, reports, notes, telegraphs, statements,

M001223119

records, diaries, minutes, bulletins, circulars, brochures, studies, instructions, working papers, charts, work assignments, drawings, prints, flow sheets, graphs, invention disclosures, photographs, photomicrographs, microfilm, medical and hospital records and reports, x-ray photographs, drafts, advertisements, catalogs, paper, indices, tapes, disc, data sheet or data processing material, or any handwritten, recorded, transcribed, punched, taped, filmed or graphic matter, however, produced or reproduced in Defendant's possession, custody or control or to which Defendants have had access.

8. Each demand hereinafter set forth not only calls for your knowledge, but also for all knowledge that is available to you by reasonable inquiry, including inquiry of your employees, representatives, agents, and attorneys.

9. If you cannot answer the following demands in full and complete detail after exercising due diligence to secure the information to do so, please so state and answer to the extent possible, specifying in each instance your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions, and to the best of your knowledge the names, addresses and telephone numbers of all persons and organizations where such information is, will be or is believed to be.

10. In answering these demands, you are requested to answer each demand and subdivision thereof fully, completely and separately. You are hereby notified that at least as to those demands that are unanswered or as to which you claim an inability to answer fully and completely for the reason that discovery is continuing, the undersigned will apply to the court for an order directing that these demands be deemed continuing; that upon acquiring any information response thereto after the service of answers hereto, you will be required to serve supplemental answers containing such later acquired information; and that you will be precluded at the trial of this action from introducing evidence relating to the subject matter of these demands which you have not disclosed by these answers or by supplemental answers thereto.

11. If any interrogatory is deemed to call for the production of privileged or otherwise protected information or materials, YOU must provide the following information in a written response, designating and identifying such information withheld from production on grounds of privilege:

   (a)   The reason for withholding the information

   (b)   A statement of the legal basis for the claim of privilege, work product or other ground for non-disclosure

   (c)   A brief description of the information, including:

      (i)   The date;

      (ii)   The number of pages, attachments, and appendices if a document;

      (iii)   The name(s) of the source(s) or preparer(s) of the information and identification by employment and title of each such person;

      (iv)   The name of each person who was involved with or has had access to or custody of the information, together with an identification of each

such person;

(v)    The present custodian(s); and

(vi)    The subject mater of the information, and in the case of any information relating or referring to a meeting or conversation, identification of such meeting or conversation, in sufficient detail to enable the Court to determine the propriety of any claim of privilege.

## INTERROGATORIES TO DEFENDANT MERCK & COMPANY - MASTER SET

## I.  BACKGROUND AND CORPORATE STRUCTURE

### INTERROGATORY NO. 1:

Please identify all persons who provided information responsive to these interrogatories indicating the person's name, address, relationship to the defendant and which interrogatory or interrogatories they provided answers to.

### INTERROGATORY NO. 2:

State the corporate name of defendant, any name under which the defendant does business and its principle place of business.

### INTERROGATORY NO. 3:

State the division, subsidiary, department or operating unit responsible for the following regarding Vioxx.

(a) Pre-clinical Trials (including in vitro and animal testing);

(b) Clinical Trials (Including all Phase I, II, III and IV clinical Trials);

(c) Regulatory Approval and Compliance;

(d) Manufacturing;

(e) Marketing;

(f) Labeling;

M00122312I

(g) Promotion;

(h) Distribution; and

(i) Advertising (Including direct to consumer advertising and advertising directed to healthcare providers).

## INTERROGATORY NO. 4:

Please identify the person(s) having primary responsibility for the following Vioxx related functions, indicating the job title, current corporate affiliation and dates that the person(s) were responsible for those functions.

(a) Preclinical testing, including in vitro studies and animal studies;

(b) Clinical Testing (Including Phase I, II, III and IV clinical Trials);

(c) Regulatory Approval or Compliance;

(d) FDA Liaison;

(e) Marketing;

(f) Labeling;

(g) Promotion;

(h) Sales;

(i) Advertising (Including Direct to Consumer Advertising);

(j) Legal Affairs; and

(k) Securing insurance or reinsurance for any liability related event.

## INTERROGATORY NO. 5:

Please state whether you have retained or contracted, informally or formally, any former employee of Merck for the purposes of providing testimony in litigation. If your answer is "yes," please state the name, last position held with Merck, date retained by Merck, the amount of compensation agreed to pay him/her and the amount of compensation actually paid to date.

M001223122

**INTERROGATORY NO. 6:**

Please state whether any of the following employee(s) and/or former employees had their compensation or bonus contingent on the approval, marketing or sales of Vioxx:

    A. Raymond Gilmartin;
    B. Edward Skolnick;
    C. David Anstice;
    D. Anice Reicin;
    E. Deborah Shapiro; and
    F. Alan Nies.

**INTERROGATORY NO. 7:**

For each person identified in Interrogatory No. 6, please state whether any incentive package was in writing.

**INTERROGATY NO. 8:**

For each of the people identified in interrogatory 6, please state whether they had Merck stock options and whether they exercised stock options within sixty (60) days of the following events:

    A. FDA approval of Vioxx;
    B. The first public announcement of the VIGOR results;
    C. The FDA Advisory Committee meeting of February 2001; and
    D. September 30, 2004, the date Vioxx was withdrawn.

**INTERROGATORY NO. 9:**

Please provide the following requested information concerning the following Vioxx

M001223123

related events:

(a)   The date that the Investigational New Drug Application (INDA) was filed with the FDA;

(b)   The date and all attendees at the "end of Phase II" meeting at the FDA;

(c)   The date the Vioxx New Drug Application (NDA) was filed with the FDA, stating the indication(s) for which the application was filed;

(d)   The date that the FDA approved the Vioxx NDA and the indication(s) for which Vioxx was approved;

(e)   The date that Vioxx was first made available for sale in the United States;

(f)   The date any Supplemental New Drug Application (SNDA) was filed, the indication(s) for which the application(s) was filed, the FDA's decision with respect to each SNDA and the date(s) of each FDA's decision;

(g)   The date of any label change of Vioxx stating the substance and purpose(s) of any labeling change;

(h)   The date of any "Dear Doctor Letter" or "Dear Healthcare Provider" letters indicating the substance and purpose of that letter; and

(i)   The date Vioxx was removed from the United States Market.


## INTERROGATORY NO. 10:

Please provide the following financial data available regarding Merck and Vioxx.

(a)   Merck's gross sales of all drugs for each year between 1999 and 2004;

(b)   Merck's gross sales of Vioxx for each year between 1999 and 2004;

(c)   Net income from all sources for each year between 1999 and 2004;

(d)   Net profits attributable to the sale of Vioxx for each year that Vioxx was on the Market;

(e)   Net profits attributable to the sale of Vioxx by State of sale (including the District of Columbia, Puerto Rico, and the Virgin Islands), for each year that Vioxx was on the market;

(f)   Total assets as of 2005 or the last year when such data is available;

(g)   Cash on hand as of 2005 or the last year when such data is available;

(h)   Current assets as of 2005 or the last year when such data is available;

(i)   Current liabilities as of 2005 or the last year when such data is available;

(j)   Equity as of 2005 or the last year when such data is available; and

(k)     Long term debt as of 2005 or the last year when such data is available (l) Short term debt as of 2005 or the last year when such data is available.

## INTERROGATORY NO. 11:

Please identify the person(s) most knowledgeable of the gross sales and net profits related to Vioxx during the years that Vioxx was on the market.

## INTERROGATORY NO. 12:

Between 1990 - 2005, did Merck belong to any pharmaceutical manufacturer's trade organization or association such as PHARMA?  If your answer is "yes," please identify each such organization or associations, giving its name, address and state the years you were a member.

## INTERROGATORY NO. 13:

What is the legal and financial relationship between Merck & Company and Merck-Frost?

## II. INSURANCE

## INTERROGATORY NO. 14:

State the total amount of insurance that you believe may be available to satisfy any claim that has been or will be made against you, your predecessors, successors, and assigns as a result of the use of VIOXX (Rofecoxib) or for its sale or distribution. This requires that you provide the following information:.

(a)     Identify each and every liability, comprehensive , general liability, advertising liability or product liability policy (and every other policy which may provide coverage to any claim for injury associated in this litigation) that you purchased or on which you are a named insured (including policies purchased or acquired by

M001223125

related corporate entities), including all excess layers and/or umbrella policies, stating the policy number, name and address of insurer who issued the insurance policy and indicate any self-insurer retention;

(b)     State the type of coverage provided by each identified policy (e.g., claims made, occurrence based, etc.);

(c)     State the limits of liability per claim and the aggregate for each such policy;

(d)     State the effective dates of each such policy;

(e)     State whether each such policy is consuming, e.g. whether payments of counsel fees and defense costs consume the available limits of liability;

(f)     State the amounts that have been paid under each such policy and the extent to which such payments have exhausted the aggregate limits of coverage provided by each such policy;

(g)     State the name or identity of your risk management or the person most knowledgeable about your insurance coverage for the years 1999 – 2004;

(h)     State the name, address and telephone number of your insurance broker(s) for the years 1999 - 2004 for the insurance identified in subpart (a) above;

(i)     State whether or not you have tendered any claims, provided notice to any insurer or insurance policy relating to a Vioxx related claim for damages or injury stating the name and address of the insurer and the identify of the policy; and

(j)     State whether any insurance carrier has notified you of any reservation of rights and, if so, identify all documents relating thereto.


**INTERROGATORY NO. 15:**

Identify and describe any and all indemnity agreements, agreements to assume liability, agreements to assume the defense or any other such agreement between you, your insurer and any other person regarding or pertaining to claims for injuries alleged as a result of ingestion of Vioxx (Rofecoxib). This includes, but is not limited to, agreements with prescribing healthcare providers.

**INTERROGATORY NO. 16;**

Please identify the Merck employee most knowledgeable about; (1) Merck's insurance coverage for Vioxx related claims; (2) indemnity agreements identified in your answer to

M00122312G

Interrogatory No. 15.

**INTERROGATORY NO. 17:**

Please state the number of Vioxx related claims for injuries you have settled and, for each

such claim, please provide the following information:

(a)     The place or jurisdiction of the case and, if filed, the complete caption; and

(b)     The name, firm name, address and telephone number of the lawyers who made
the claim.

**III.  FOREIGN REGULATORY ACTION AND SALES**

**INTERROGATORY NO. 18:**

Was Rofecoxib approved for Marketing in any country (or jurisdictional entity such as

the European Union) other than the United States?

**INTERROGATORY NO. 19:**

For each country that approved Rofecoxib for marketing, please state the following:

(a)     The Country and the Regulatory agency that approved Rofecoxib;

(b)     The Company or sponsor that sought regulatory approval for Rofecoxib;

(c)     The relationship between the Company that sought foreign regulatory approval
for Rofecoxib and Merck and Company;

(d)     The date(s) that Rofecoxib was approved;

(e)     The indications for which Rofecoxib was approved;

(f)      The date(s) that Rofecoxib was marketed;

(g)     The foreign trade name for Rofecoxib;

(h)     Any regulatory restrictions placed on the use of Rofecoxib by any foreign
regulatory authority; and

(i)     The reason(s) why Rofecoxib was removed from the market.

M001223127

**INTERROGATORY NO. 20:**

Did any non-U.S. regulatory agency decline to approve an application to market Rofecoxib for a particular indication or indications?

**INTERROGATORY NO. 21:**

For each country (or jurisdictional entity such as the European Union) whose regulatory agency declined to approve the marketing of Rofecoxib for a particular indication or indications as identified in your answer to Interrogatory No. 20, please state the following:

(a)     The regulatory agency which declined to approved the marketing of Rofecoxib;

(b)     The indication(s) for which approval was declined; and

(c)     The stated reasons why the foreign agency declined to approve Rofecoxib.

**INTERROGAOTRY NO. 22:**

For any country or jurisdictional entity which provided different warnings that were in effect in the United States, please state the country and how the warnings were different and identify (by bates number) all warnings, instructions and product labels that accompanied Rofecoxib in other countries.

**IV.  MARKETING AND LEGAL**

**INTERROGATORY NO. 23:**

Please identify all Regional Sales Divisions responsible for marketing Vioxx during the time it was on the market indicating:

(a)     The identity of each sales division;

(b)     The person(s) who headed each division, indicating the date(s) that such persons held that position; and

(c)     The current business relationship between Merck and any person identified.

**INTERROGATORY NO. 24:**

Please identify, by Region, all sales representatives or other employees who were responsible for detailing Vioxx. In your answer, identify:

(a)    Name (including maiden - married name);

(b)    Last known address;

(c)    Whether and when you requested the detailer or sales representatives to maintain or produce any "call notes" that reflect or relate to visits with physicians and health care providers;

(d)    Whether defendant received from the detailer or representative or has in its possession the detailer and sales representatives "call notes" that reflect or relate to visits with physicians and health care providers. (If these are in a database, please identify the database);

(e)    Whether defendant received from the detailer or representative or has in its possession Vioxx related "Weekly Sales Notes" between the detailer and sales representatives and their direct managers." (If these are in a database, please identify the database.);

(f)    Whether defendant received from the detailer or representative or has in its possession Vioxx related "Customer Notes" about Prescribing Health Care Providers they have detailed. (If these are in a database, please identify the database);

(g)    Whether defendant received from the detailer or representative or has in its possession Vioxx related "customer belief notes" about Prescribing Health Care Providers they have detailed. (If these are in a database, please identify the database); and

(h)    The current employment status of each such detailer or sales representative.

**INTERROGATORY NO. 25:**

Please identify all general and associate general counsel, including the dates that they held that position.

**INTERROGATORY NO. 26:**

Has Merck ever been reprimanded or given a warning by the FDA or any of its divisions

M001223129

(including DDMAC) regarding its marketing of the drug Vioxx? If so, please give all details including:

    (a)    The marketing activity that gave rise to the warning;

    (b)    The stated reasons why the FDA or one of its divisions gave the warning;

    (c)    The date(s) of each such warning;

    (d.)    What, if any, action you took as a result of the warning given; and

    (e)    If the warning or Merck's response thereto was in writing, please identify the warning and response by bates number.

## INTERROGATORY NO. 27:

Please identify all persons or entities responsible for developing Merck's direct to consumer advertising campaign for Vioxx indicating their address and current affiliation with defendant.

## INTERROGATORY NO. 28:

Please identify all Advertising Agencies or Marketing Agencies who conducted Marketing studies or surveys for Merck with respect to Vioxx. In your answer, please also identify the Merck employee(s) responsible for securing these firms and for negotiating their contractual arrangements.

## INTERROGATORY NO. 29:

Did you employ a Pubic Relations Firm or Public Relations Professional to assist with communicating the results of the Vioxx Gastrointestinal Outcomes Research Study (VIGOR), the APPROVe study or any other study or report that addressed any association between Vioxx and Cardiovascular or Cerebrovascular injury? If so, please state the name and address of the public relations firm(s) or public relations professional(s) and the specific assignments they were given.

M001223130

**INTERROGATORY NO. 30:**

Did you employ a Public Relations Firm or Public Relations Professional to assist with communicating the reasons for withdrawal of Vioxx in September 2004? If so, please state the name and address of the public relations firm(s) or public relations professional(s) and the specific assignments they were given.

**INTERROGATORY NO. 31:**

Please identify any and all databases that reflect the activities of Merck's sales force with respect to Vioxx indicating in your answers the purpose(s) and the general content of each such database.

**INTERROGATORY NO. 32:**

Please state Merck's television advertising budget for Vioxx for each year Vioxx was on the Market in the United States.

**INTERROGATORY NO. 33:**

Please state Merck's print media advertising budget for Vioxx for each year Vioxx was on the Market in the United States.

**INTERROGATORY NO. 34:**

Please state Merck's budget for radio, internet or billboard advertising for Vioxx for each year Vioxx was on the Market in the United States.

**INTERROGATORY NO. 35:**

Please identify all Databases in your possession that purport to track physicians prescribing practices for NSAIDs and COX-2 inhibitors including, but not limited to VIOXX.

## V. GOVERNMENTAL INVESTIGATIONS

**INTERROGATORYNO. 36:**

Are you aware of any governmental (including Congress) or regulatory investigation (including foreign investigations) into Merck's activities relating to Vioxx? If your answer is "yes", please provide the following information:

(a)     The Governmental agency which is or has conducted the investigation; and

(b)     The current status of the investigation.

**INTERROGATORY NO. 37:**

With respect to any governmental or regulatory investigation identified in Interrogatory 36, please state whether any Merck agent or employee gave a statement or testimony indicating the following:

(a)     The identity of the Merck agent or employee;

(b)     The date that the agent or employee gave a statement or testimony; was written or ora;

(c)     Whether the statement or testimony was recorded in any fashion; and

(d)     Whether you have a copy of any recorded statement or testimony.

**INTERROGATORY NO. 38:**

With respect to any governmental or regulatory investigation identified in Interrogatory 36, please state whether any Merck agent or employee provided a written response to questions, a statement and/or documents indicating:

(a)     The identity of the agency or body to whom information or documents were provided;

(b)     The identity and location of the communications between Merck and the investigating body; and

M001223132

(c)     The identity and location of all documents produced.

**INTERROGATORY NO. 39:**

Have any of your sales or marketing employees (including detail persons) been investigated or fined as a result of their activities detailing Vioxx? If so, please identify

(a)     The person(s) who were investigated;

(b)     The internal or external body doing the investigation;

(c)     The results of the investigation (including the amount of any fine); and

(d)     all documents referring or relating to each such investigation.

## VI.  CLINICAL TRIALS

**INTERROGATORY NO. 40:**

Please identify every clinical (Human) study initiated by Merck involving Vioxx. Include in your answer the following information:

(a)     Protocol Number and Study Name;

(b)     All Clinical investigators, including name, address and affiliated medical institution;

(c)     Whether the study was completed and, if not, why not;

(d)     The location (by bates number) of the final study report;

(e)     Whether the study was submitted for publication and, if so, whether it was accepted for publication;

(f)     All amendments to the study protocol and the reasons why the protocol was amended;

(g)     The location (by bates number) of all informed consent forms;

(h)     The citation to the study if it was published;

(i)     The date that the data from each study was "locked" and the date that the data was unblended;

(j)     The number or patient who enrolled in each study and the number of people who completed each study; and

(k)     Whether the study went into open-label extension.

M001223133

**INTERROGATORY NO. 41:**

For each clinical trial patient who sustained an investigator reported treatment emergent cardiovascular event which was evaluated to determine whether it should be adjudicated, please identify the patient by anonymous patient number and identify all records that refer and relate to that patient.

**INTERROGATORY NO. 42:**

For each clinical trial patient who sustained an investigator reported treatment emergent cerebrovascular event, please identify the patient by anonymous patient number and identify all records that refer and relate to that patient.

**INTERROGATORY NO. 43:**

For each patient identified in Interrogatory numbers 41 and 42, please state the identity of each Merck employee and consultant who reviewed and/or adjudicated the event for causation.

**INTERROGATORY NO. 44:**

Please identify all preapproval clinical trials that were included in the NDA submission and indicate the dates) that the all such data was "locked" and "unblinded."

**INTERROGATORY NO. 45:**

Identify any and all clinical trials that were unblinded prior to natural termination of the trial for either scientific or business reasons stating:

(a)     The identity of the study;

(b)     The date the data was unblended;

(c)     The reason(s) why the data was unblinded early; and

(d)     What Merck employees were privy to the unblinded data.

M001223134

**INTERROGATORY NO. 46:**

Please identify SAS data sets for each meta-analysis, combined analysis or pooled analysis conducted by Merck and published in the medical literature or submitted to the FDA concerning Vioxx and cardiovascular or cerebrovascular risk in the Vioxx clinical trials, including but not limited to:

   (a)   The Clinical trial re-analysis of the Vioxx Clinical Trial Data conducted in February 1998;

   (b)   The September 2000 pooled analysis of Merck's Vioxx Clinical Trial Data which was ultimately published in the article entitled Konstam, MA, *et al*, "Cardiovascular Thrombotic Events in Controlled, Clinical Trials of Rofecoxib." *Circulation* 2001 Nov., 104; 2280-88;

   (c)   The updated pooled Analysis conducted in June 2001;

   (d)   The updated Pooled analysis of the Merck's Vioxx Clinical Trial Data which was ultimately published in the article entitled Weir MR, *et al*, "Selective COX-2 Inhibition and Cardiovascular Effects: A Review of the Rofecoxib Development Program," *Am Heart J* 2003; 146:591-604. (e) The 2004 Pooled analysis; and

   (e)   Any other pooled analysis.


**INTERROGATORY NO. 47:**

For each pooled analysis of Vioxx clinical trial data identified in interrogatory Number 46, please state:

   (a)   The identity and address of all persons involved in the project; and

   (b)   The documents which reflect the pooled analysis (by bates number).


**INTERROGATORY NO. 48:**

Please identify every clinical (Human) study initiated by Merck involving ARCOXIA. Include in your answer:

(a)     Protocol Number and Study Name;

(b)     All Clinical investigators;

(c)     Whether the study was completed and, if not, why not;

(d)     The location (by bates number) of the final study report;

(e)     Whether the study was submitted for publication and, if so, whether it was accepted for publication;

(f)     All amendments to the study protocol and the reasons why the protocol was amended;

(g)     The location (by bates number) of all informed consent forms;

(h)     The citation to the study if it was published; and

(i)     The date that the data from each study was "locked" and the date that the data was unblinded.

**INTERROGATORY NO. 49:**

Did you ever provide financial or other assistance for the performance of any non-Merck study concerning the safety and/ or efficacy of Vioxx? If so, please identify each such study stating the name of the study, the author, the publication citation, the identity and location of the study report (if not published), the amount of money contributed by Merck to the Author, and the identity of the Merck employee(s) who had primary responsibility for contact with the author.

**INTERROGATORY NO. 50:**

Please identify each and every outside consultant that you employed with respect to the cardiovascular and cerebrovascular issues related to Vioxx giving their name, address and indicating the work you asked each consultant to do.

**VII. NON-HUMAN STUDIES**

**INTERROGATORY NO. 51:**

Please identify every animal study initiated by Merck concerning Vioxx. Include in your

answer:

(a)     Protocol Number and Study Name;

(b)     All scientists and researches involved in each study;

(c)     Whether the study was completed and, if not, why not;

(d)     The location (by bates number) of the final study report;

(e)     Whether the study was submitted for publication and, if so, whether it was accepted for publication; and

(f)     The citation to the study if it was published.


## VIII. "DEAR DOCTOR" OR "DEAR HEALTHCARE PROVIDER" LETTERS

### INTERROGATORY NO. 52:

For each "Dear Doctor" or "Dear Healthcare Provider" letter you sent concerning Vioxx, please state the persons or vendors responsible for mailing these letters and indicate whether you possess a documents or database indicating when such letters were actually sent.

### INTERROGATORY NO. 53:

Please identify by bates number all drafts or each "Dear Doctor" or "Dear Healthcare Provider" letter you sent concerning Vioxx.

### INTERROGATORY NO. 54:

Is Vioxx capable of causing a heart attack in humans?

### INTERROGATORY NO. 55:

Is Vioxx capable of causing a cerebrovascular accident in humans?

### INTERROGATORY NO. 56:

Please list all testimony provided by Merck employees concerning the safety and efficacy

M001223137

of Vioxx, giving the date of the testimony, the person giving testimony, the circumstances of testimony (deposition, trial, investigative hearings, etc ) and the persons in possession of the transcript of such testimony.

**INTERROGATORY NO. 57:**

Have you ever asked a Merck employee an outside consultant to review treatment emergent adverse events reported to Merck in its normal course of business? If your answer is "yes," please state the identity of the consultant who did so giving his or her name and address.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:    (504) 581-4892
FAX:  (504) 561-6024
**Plaintiffs' Liaison Counsel**

| | |
|---|---|
| Richard J. Arsenault, Esq. | Gerald E. Meunier, Esq. |
| P.O.Box 1190 | Energy Centre |
| 2220 Bonaventure Court | 1100 Poydras Street, Suite 2800 |
| Alexandria, LA  71309-1190 | New Orleans, LA  70163-2800 |
| PH:  (318) 487-9874 | PH:  (504) 522-2304 |
| FAX:  (318) 561-2591 | FAX:  (504) 528-9973 |
| | |
| Andy D. Birchfield, Esq. (**Co-Lead Counsel**) | Troy Rafferty, Esq. |
| P.O. Box 4160 | 316 S. Baylen Street, Suite 400 |
| 234 Commerce Street | Pensacola, FL  32502 |
| Montgomery, AL  36103-4160 | PH:  (850) 435-7000 |
| PH:  (800) 898-2034 | FAX:  (850) 497-7059 |
| FAX:  (334) 954-7555 | |

W:\25000-29999\27115\000\Discovery\PSC First Set of Interrogatories FINAL 2005-6-7.doc

M001223138

| | |
|---|---|
| Elizabeth Cabraser, Atty.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, CA  94111-3339<br>PH:  (415) 956-1000<br>FAX:  (415-956-1008) | Drew Ranier, Esq.<br>1419 Ryan Street<br>Lake Charles, LA  70601<br>PH:  (337) 494-7171<br>FAX:  (337) 494-7218 |
| Thomas Kline, Esq.<br>1525 Locust St.<br>19th Floor<br>Philadelphia, PA  19102<br>PH:  (215) 772-1000<br>FAX:  (215) 772-1371 | Mark Robinson, Esq.<br>620 Newport Center Drive<br>7th Floor<br>Newport Beach, CA  92660<br>PH:  (949) 720-1288<br>FAX:  (949) 720-1292 |
| Arnold Levin, Esq.<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA  19106-3875<br>PH:  (215) 592-1500<br>FAX:  (215) 592-4663 | Christopher Seeger, Esq. (**Co-Lead Counsel**)<br>One William Street<br>New York, NY  10004<br>PH:  (212) 584-0700<br>FAX:  (212) 584-0799 |
| Carlene Rhodes Lewis, Atty.<br>2200 Texaco Heritage Plaza<br>1111 Bagby<br>Houston, TX  77002<br>PH:  (713) 650-0022<br>FAX:  (713-650-1669) | Christopher Vincent Tisi, Esq.<br>2000 L Street, NW<br>Suite 400<br>Washington, DC  20036-4914<br>PH:  (202) 783-6400<br>FAX:  (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE


## CERTIFICATE OF SERVICE


I hereby certify that the above and foregoing Interrogatories has been served on Liaison Counsel Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this ____ day of _____, 2005.