## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ------------------------------------------------------------ | x | |
| | : | MDL NO. 1657 |
| | : | |
| IN RE: VIOXX | : | SECTION: L |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | JUDGE FALLON |
| | : | |
| | : | MAG. JUDGE KNOWLES |
| ------------------------------------------------------------ | x | |
| THIS DOCUMENT RELATES TO ALL CASES | : | |
| ------------------------------------------------------------ | x | |

## PLAINTIFF STEERING COMMITTEE'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT MERCK & CO., INC.

Plaintiffs serve these Requests for Production of Documents upon Defendant, Merck &Co., Inc., pursuant to Rule 34 of the Federal Rules of Civil Procedure. Defendant shall produce the following documents and tangible things within 30 days of service of these requests, or within a reasonable time thereafter, as agreed by the parties, or as otherwise ordered by the Court.

## DEFINITIONS & INSTRUCTIONS

1.     Whenever used in this Request, the following terms shall have the following meanings:

(a)     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(b)     "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal

M001223140

computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

(c)     "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

(d)     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.   A draft or non-identical copy is a separate document within the meaning of this term.

(e)     "Electronic data" or "data" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  Electronic data includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment.  Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche,

M001223141

punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term electronic data also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(f)     "Electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

(g)     "FDA" means the United States Department of Health & Human Services, United States Food & Drug Administration, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(h)     "Foreign Government Regulatory Authority" means any agency, committee, subcommittee or advisory committee of any government other than the United States of America, which bears responsibility or exercises authority over the manufacture, distribution, labeling, sale, and marketing of pharmaceutical products or human health in any jurisdiction, and any employee or agent acting as a representative thereof.

(i)     "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

M001223142

(j)     "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(k)     "Including" or "includes" means including, without limitation.

(l)     "Merck," "defendant," "you," or "your" means Merck & Co., Inc., and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including   attorneys and accountants.

(m)     "NSAIDs" means non-steroidal anti-inflammatory drugs, including both selective and non-selective COX-2 inhibitors.

(n)     "Person" means any natural person or any business, legal, or governmental entity or association.

(o)     "Relevant Product(s)" means any product containing rofecoxib in any form, dosage, or mode of administration, either alone or in combination with other chemicals and also includes the product sold under the brand name VIOXX, including any product against which the foregoing products were tested, compared, studied, analyzed, marketed, or sold.

2.     The following rules of construction apply to all discovery requests:

(p)     The terms "all" and "each" shall be construed as all and each;

(q)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

M001223143

(r)     The use of the singular form of any word includes the plural and vice versa; and

(s)     Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

3.     Unless otherwise specifically stated, this Request encompasses documents, which were created, received, or generated or otherwise entered into your possession, custody, or control between July 1, 1990 and the date of this Request (the "Relevant Period").

4.     Any document falling within the scope of this Request that is withheld on the basis of a claim of privilege, work product, or any other ground is to be identified in writing and must include a statement of the ground alleged for withholding such document, shall identify its date, the identity of its author and signatories, the type of document (*e.g.*, letter), a summary of its content, its present location and custodian, a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents (or any portions thereof), pursuant to FRCP 26(b)(5). Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph..

5.     Except as may otherwise be agreed or ordered by the Court, you shall produce all documents in compliance with the Pre-Trial Order being negotiated between the Plaintiff Steering Committee and defendant Merck & Co., Inc. relating to production of documents by Defendants.

M001223144

6.      If you are unable to comply fully with any of the specific requests, you shall comply to the extent possible and provide an explanation as to why full compliance is not possible.  In the event that any documents called for by this Request were formerly in your possession, custody or control, or have been lost or destroyed, those documents are to be identified in writing as follows:  persons who prepared or authorized the documents indicated or blind copies; dates of preparation or transmittal; subject matter; number of pages, attachments or appendices; all persons to whom distributed, shown or explained; date or dates of loss or destruction; and if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction and persons destroying the documents.

7.      This Request is directed to all documents within your possession, custody or control, or within the possession of any agent of Merck, or within the possession of any entity associated with Merck, or within the possession, custody, or control of such entity's directors, officers, agents, servants, employees, consultants, and professionals.

8.      Documents are to be produced in full and in their unexpurgated form.  Redacted documents shall not constitute compliance with this Request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

9.      This Request is intended to be consistent with FRCP 26(b).  This Request is a continuing one and requires further and supplemental production by you as and whenever you acquire or create additional responsive documents after the time of the initial production hereunder.

10.     All documents produced in response to this Request shall be organized and labeled either to correspond with the number of the specific request to which the documents are

responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.

## DOCUMENTS TO BE PRODUCED

1.      Defendant's articles of incorporation, charter, and by-laws, including any amendments thereto.

2.      All documents generated by, prepared for, reviewed by, received by, or concerning Merck's Board of Directors, or any committee thereof or authorized thereby, concerning any Relevant Products, including any presentation to the Board of Directors, any resolution, any minutes of meetings, and any notes or memoranda of any attendee or Board member.

3.      Documents sufficient to identify:

    (a)      All members of the Board of Directors from 1992 to present;

    (b)      All corporate officers from 1992 to present;

    (c)      All persons or entities that owned 5% or more of Defendant's common stock for the last ten years; and

    (d)      Annual organization charts for any entity that owned more than 5% of Defendant's common stock during the last ten years.

4.      As to any entity with which you are affiliated that is involved in the manufacture, testing, marketing, licensing, sale, or distribution of a Relevant Product, documents sufficient to describe the responsibilities that each such entity has in regard to any Relevant Product.

5.      For each year in which Defendant designed, tested, manufactured, sold, marketed, licensed, or distributed a Relevant Product, all documents concerning the departmental and

M001223146

corporate organizational charts for the individuals in those groups, departments, and teams with any responsibility or oversight of any aspect of the design, testing, manufacture, sale, marketing, licensing, distribution, safety surveillance, and regulatory aspects of any Relevant Product.

6.      All documents concerning any financial relationship and contract between Defendant and any physician, clinic, hospital, or other health care provider which is involved in the care or treatment of arthritis or health complications associated therewith and produce summaries of annual gross sales to any such customers.

7.      All documents reflecting your filings with the Securities and Exchange Commission ("SEC") from 1992-present, including SEC Forms 10-K, 10-Q, 8-K, and proxy statement (Schedule 14A), whether such filings are tentative, final, definitive, or supplemental.

8.      All documents reflecting any filing with the SEC from 1992-present made by or on behalf of any Merck officer, director, employee, or affiliate concerning ownership or transactions by such person or their affiliates in any Merck security, including SEC Forms 3, 4, and 5.

9.      All documents reflecting any filing with the New York Stock Exchange or any other self-regulatory entity overseeing securities transactions concerning Merck, its affiliates, or any Relevant Product for the years 1992-present.

10.      Merck's annual reports and other communications and correspondence directed to Merck shareholders for the years 1992-present.

11.      All documents concerning any report or analysis of Merck's financial condition or business prospects prepared by you or any third party, including any analysis prepared by financial or industry analysts, for the years 1995-present.

12.    All documents reflecting communications with financial analysts or investors concerning (i) Merck's financial or business prospects, or (ii) any Relevant Product, for the years 1995-present, including any tape or transcription of, presentation to, or document concerning any analyst conference, call, or business briefing

13.    For each year in which Defendant designed, tested, manufactured, sold, marketed, licensed or distributed a Relevant Product, all documents concerning the departmental and corporate standard operating procedures, processes, guidelines, and rules for the conduct of the individuals in those groups, departments, and teams with any responsibility or oversight of any aspect of the design, testing, manufacture, sale, marketing, licensing, distribution, safety surveillance, and regulatory aspects of any Relevant Product.

14.    All of Defendant's document retention or document destruction policies and memoranda in effect for the years 1992-present.

15.    Documents sufficient to identify the steps taken by or on behalf of you to preserve documents that are or may be potentially discoverable in this action.

16.    All documents concerning the destruction or potential destruction of any potentially discoverable documents, including documents responsive to Plaintiffs' First Request for Production of Documents Directed to Defendant.

17.    All documents concerning the transfer or sending, or potential transfer or sending, of any potentially discoverable documents, including documents responsive to Plaintiffs' First Request for Production of Documents Directed to Defendant, from Defendant to any third party for any purpose, including storage, warehousing, or destruction.

M00122314B

18.     All organizational charts, policies, procedures, handbooks, and manuals for the individuals or groups, departments, and teams with any responsibility or oversight of risk management.

19.     Each and every general liability, comprehensive general liability, advertising liability, errors and omissions, or product liability insurance policy (and any other insurance policy which you believe may provide primary, umbrella or excess coverage for any personal injury, economic loss, or medical monitoring claim asserted in these proceedings), as well all excess layers, that you purchased or on which you are a named insured (including policies purchased by related corporate entities), for the years 1992 through the present.

20.     Any charts or schedules of layers of insurance or self-insured retention for any of the respective years of coverage.

21.     All documents concerning communications with any entity identified in documents responsive to the foregoing request concerning any Relevant Product, including communications relating to underwriting analyses, coverage disputes, or reservations of rights as to coverage.

22.     All documents concerning any contracts or agreements with respect to any Relevant Product, including indemnity agreements, agreements to assume liability, agreements to assume the defense, and joint defense agreements made by Defendant, insurers for Defendant, or any other entities that may be financially affected by any of the claims asserted in this litigation.

23.     All documents concerning any patents and patent applications for any Relevant Product.

M001223149

24.     All documents concerning any patent or patent application for any product whose design is based, in whole or in part, on any Relevant Product, or seeks to improve the safety or efficacy of any Relevant Product or diminish or eliminate any side effects of any Relevant Product.

25.     All documents concerning all licensing agreements concerning any product or technology contained in said patents.

26.     All documents concerning all proposed or contemplated licensing agreements concerning any Relevant Product and all documents provided to proposed or contemplated licensees.

27.     Any documents related or referring to infringement or alleged infringement of said patents.

28.     All documents concerning the complete and current New Drug Application(s) ("NDA"), and amendments or supplements thereto, submitted by or on behalf of Defendant or its predecessor in interest concerning any Relevant Product.

29.     All documents concerning any Investigational New Drug Application(s) ("IND"), and amendments or supplements thereto, submitted by or on behalf of Defendant or its predecessor in interest concerning any Relevant Product.

30.     All documents concerning all Abbreviated New Drug Application(s) ("ANDA"), and amendments or supplements thereto, submitted by or on behalf of Defendant or its predecessor in interest concerning any Relevant Product.

31.     All documents concerning communications between Defendant or any agent or consultant of Defendant, and the FDA, regarding the safety, efficacy, testing in any pre-clinical

M001223150

or clinical test or trial, approval, withdrawal, marketing, or warnings regarding any Relevant Product.

32.   All documents concerning any FDA Advisory Panel meetings regarding any Relevant Product, including :

(a)   All documents concerning any communications between Defendant (or any agent or consultant of Defendant), and the FDA or any Advisory Panel Member;

(b)   All documents concerning any financial contributions or other items of value provided to Panel Members or their institutions/organizations; and

(c)   All documents concerning minutes of meetings, rehearsals, practices, agendas, dossiers, submissions, test summaries, internal memorandum regarding strategies and issues, Questions and Answers, scheduling, or any other documents concerning the Advisory Panel, submissions thereto, or the topic(s) discussed.

33.   All documents concerning all 483 inspection reports which pertain in any way to a Relevant Product.

34.   All documents concerning safety surveillance reports or analyses concerning any Relevant Product, including:

(a)   All domestic and international Adverse Reaction Reports, together with underlying medical records, concerning any Relevant Product;

(b)   All databases maintained by or on behalf of Merck concerning Adverse Reaction Reports concerning any Relevant Product;

(c)   All documents concerning any Adverse Reaction Report, or any summary, analysis, or interpretation thereof.

(d)     All documents concerning the submission of Adverse Reaction Reports to any government regulatory authority, whether FDA or foreign;

(e)     All documents concerning the failure to submit Adverse Reaction Reports to any government regulatory authority, whether FDA or foreign; and

(f)     All documents concerning any such incidents or reports.

35.     All documents concerning any communication with, or submissions to the FDA or any foreign government regulatory authorities regarding regulation, approval, safety or testing of any Relevant Product.

36.     All documents concerning any communication with or submissions to the FDA or any foreign government regulatory authority regarding the withdrawal of any Relevant Product.

37.     All documents concerning any communications between Defendant and any physician, pharmacist or other health care provider regarding any Relevant Product, including all documents, including drafts, of any Dear Doctor or Dear Pharmacist letters concerning any Relevant Product, as well as all documents concerning any communications with the FDA or any foreign government regulatory authority regarding the content or approval of such communications .

38.     All documents concerning any information received by Defendant from any physician in regard to a Relevant Product.

39.     All documents concerning any discussions, negotiations or contracts to engage any third party to represent Defendant's interests before the FDA or any foreign government regulatory authority, or any Committee or subcommittee thereof, in regard to any Relevant Product, including retainer agreements or consultant agreements.

40.    All documents concerning any discussion or submission between Defendant and any state government regulatory agency or any state medical society concerning any Relevant Product.

41.    All documents concerning any communications with the FDA or any foreign government regulatory authority regarding any discussion or suggestion that Defendant withdraw any Relevant Product from the market.

42.    All documents concerning any discussion, suggestion, or study of whether any Relevant Product should be withdrawn temporarily or permanently from the market, including internal memoranda, notes of conversations, communications with the FDA or any Foreign Government Regulatory Authority, and communications with other manufacturers, licensors, licensees, distributors, or marketers.

43.    All documents concerning any discussion, suggestion, or study of whether any current or pending, approved or unapproved NDA, sNDA, ANDA, or IND for any Relevant Product should be withdrawn or suspended temporarily or permanently due to safety concerns, including internal memoranda, notes of conversations, communications with the FDA or other Foreign Government Regulatory Authority, and communications with other manufacturers, licensors, licensees, distributors, or marketers.

44.    All documents concerning the retention of persons in any medical discipline to study, assess, or analyze the safety of any Relevant Product by or on behalf of Defendant, whether retained directly by Defendant or otherwise.

45.    All documents concerning any communication, report, or inquiry between Defendant and the FDA, Centers for Disease Control, National Institutes of Health, World Health Organization, or Drug Enforcement Agency (DEA) in regard to any Relevant Product.

M001223153

46.    All documents and related electronic database and program files concerning any pre-clinical studies or testing of any Relevant Product, including test protocols, data compilations, data analysis plans or protocols, laboratory notebooks, summaries of results, drafts of reports, final reports, published articles, financial remuneration, engagement of consultants/investigators, internal memoranda and submissions of data to the FDA or any Foreign Government Regulatory Authorities, including tests for the following:

      (a)    toxicity testing;

      (b)    pharmacology testing;

      (c)    drug metabolism testing;

      (d)    absorption studies;

      (e)    reproduction studies;

      (f)    teratogenicity studies;

      (g)    bioavailability studies; and

      (h)    all other animal and chemical studies.

47.    All documents and related electronic databases and program files concerning any clinical studies or testing regarding any Relevant Product, including test protocols, data compilations, data analysis plans or protocols, laboratory notebooks, summaries of results, drafts of reports, final reports, published articles, financial remuneration, engagement of investigators, internal memoranda and submissions of data to the FDA or any Foreign Government Regulatory Authorities.

48.    All documents and related electronic databases and program files concerning any epidemiological or observational study regarding any Relevant Product, including test protocols, data compilations, data analysis plans or protocols, summaries of results, drafts of reports, final

M001223154

reports, published articles, financial remuneration, engagement of investigators, internal memoranda and submissions of data to the FDA or any Foreign Government Regulatory Authorities.

49.    All documents and related electronic databases and program files concerning follow-up or long term study of participants in Phase IV, V, or other clinical studies regarding any Relevant Product, including safety and efficacy results obtained after approval of the NDA or ANDA, or after conclusion of the initial study period.

50.    All documents and related electronic databases and program files concerning any receipt, discussion, studies, analysis or review of clinical experience reports for any Relevant Product, including formally submitted adverse reaction reports, communications (whether written or oral) concerning case reports, published clinical experience reports, or any other such report made known to Merck concerning any experience with any Relevant Product.

51.    All documents concerning studies on the safety or efficacy of any Relevant Product designed, conducted, or overseen by any third parties, including those conducted by trade groups or associations, including:

      (a)    All documents concerning any communications between you and such third parties;

      (b)    All documents concerning the terms of compensation or consideration for such studies;

      (c)    All documents relating, referring to, or embodying Merck's review, analysis, investigation, or interpretation of said results, including all related electronic databases and program files; and

M001223155

(d)     All documents concerning any attempts by Defendant to submit said data to the FDA or any Foreign Government Regulatory Authority.

52.     All documents concerning adverse events experienced by subjects of all clinical trials of any Relevant Product, which occurred at any time after the subject had discontinued taking such Relevant Product or the comparator in such clinical trials.

53.     All documents concerning any testing of any Relevant Product that you did not complete, did not publish, or did not submit to the FDA or any Foreign Government Regulatory Authority.

54.     As to any clinical, animal, or other study currently sponsored by, financed by, undertaken by, or suggested by Defendant regarding any Relevant Product, all documents concerning said study, including engagement letters, contracts, protocols, data analysis plans, status reports, raw data, summary of findings, internal memorandum, drafts of reports, final reports, manuscripts, submissions to publishers, submissions to FDA or any Foreign Government Regulatory Authority, or discussions, communications or analysis of the current or final results.

55.     All documents concerning any published or unpublished article or report concerning any Relevant Product, including monographs, presentations, letters to the editor, abstracts, manuscript, editorial and peer-reviewer comments, and submission letters and responses thereto.

56.     All documents concerning any unpublished reports, speeches, data compilations, clinical observations or other communications concerning any Relevant Product.

57.     All documents concerning any laboratory testing and studies regarding the pharmacology, pharmaceutics and biochemical properties of any Relevant Product.

M001223156

58.     All documents concerning any communications by Defendant with any publisher, editor, author, reporter or employee of or for any lay, scientific, medical or news publication or any freelance writer concerning any Relevant Product.

59.     All documents concerning the Relevant Product relative to or in comparison with other NSAIDs or drugs with similar indications to any Relevant Product.

60.     All documents concerning the chemical or pharmacological properties, risks, adverse effects or side effects, clinical experience, pre-clinical testing and clinical testing of any NSAID or drugs with similar indications to any Relevant Product, including, :

(a)     any NSAID against which any Relevant Product competed;

(b)     any NSAID against which any Relevant Product competed in combination with any gastroprotective therapies;

(c)     the drug marketed and sold outside the United States under the brand name Arcoxia; and

(d)     any drug, compound or formulation to be used in combination with any Relevant Product.

61.     All documents concerning studies to examine the relationship between any Relevant Product and the risk of cardiovascular, cerebrovascular, renovascular, peripheral vascular, pulmonary, respiratory, hepatic, and gastrointestinal adverse events, such as myocardial infarction, stroke, pulmonary embolism, congestive heart failure, pneumonia, gastrointestinal perforations, ulcers, and bleeds, hypertension, edema, and liver function abnormalities.

62.     The custodial file of Richard Holmes, including documents concerning any Relevant Product, including statistical analyses of cardiovascular event incidence rates in

M001223157

December 1997 – January 1998, as described by Douglas Watson at his deposition on February 9, 2005, pages 127, *et seq.*.

63.     All documents concerning the use of placebo group subjects from FOSAMAX and PROSCAR trials for comparisons to adverse event rates in VIOXX phase IIb/III trials, including:  those relating to, collected, reviewed, analyzed, relied upon or generated pursuant to the "Plan to Evaluate the Incidence of Cardiovascular SAEs," set forth at pages MRK-ABS0037036-048; placebo group data from PROSCAR protocol nos. 008/508; 507; 024; 048; and FOSAMAX protocol nos. 026; 029; 035; 037; 038; 041; 054; 051; and 055.

64.     All documents concerning the decision by Merck to compare adverse event rates in VIOXX trials to those in FOSAMAX and PROSCAR trials.

65.     All documents concerning the assertion that the FOSAMAX placebo subjects' incidence of cardiovascular disease may be atypically low, as stated at MRK-ABP0002686, MRK-ABS0037013, MRK-NJ0220558, and MRK-ABT0014775.

66.     All documents concerning the calculations of rate ratios, confidence intervals, and any other statistical measures comparing adverse event rates between VIOXX trials and FOSAMAX and PROSCAR trials, as referenced at MRK-ABS0037044.

67.     All documents concerning the determination that 23/27 patients who suffered serious adverse events (SAEs) in the VIOXX OA trials as of December 1997 had predisposing CVD conditions and /or risk factors, as stated at page MRK-ABS0037013.

68.     All documents concerning Defendant's disclosure and non-disclosure to the FDA, of the results of any facts, data or documents regarding the analysis of CV SAEs in VIOXX Phase IIb/III trials as set forth in MRL Epidemiology Department Technical Report

M001223158

No. EP07006.005.98, authored by Douglas Watson and dated February 2, 1998 (MRK-ABT0014774-797).

69.     All documents concerning communications between or among Defendant's officers and employees between December 3, 1997 and February 10, 1998, regarding the results of the Analysis of Incidence of Cardiovascular SAEs in the Phase IIb/III VIOXX Osteoarthritis Clinical Trials, including documents to or from Harry Guess, Douglas Watson, Richard Holmes, Nancy Santanello, Eliav Barr, Brian Daniels, Alan Nies, Beth Seidenberg, B. Cook, C. Buganiesi, D. Erb, K. Giordano, and M. Jennelle, and including documents from their custodial files.

70.     All documents concerning the "specific rules which set numerical cut-offs for when the incidence of a CV condition is greater than that expected for the MK-0966 OA population," as stated at MRK-GUE0051409, including (a) documents setting forth the "specific rules" and "numerical cut-offs"; (b) documents concerning the decision to establish or not to establish such rules and cutoffs; and (c) documents concerning these subjects from the custodial files of Defendant's officers and employees referenced in the preceding Request.

71.     All documents concerning the review and report of cardiovascular event incidence rates conducted by Douglas Watson, as referenced in the report dated November 21, 1996 (MRK-ABS0210824-843).

72.     All documents concerning the meetings of Defendant's senior management to discuss VIGOR, described by Thomas Bold at pages 114-115 of his deposition of 6/25/04, including memoranda, emails, distribution lists, attendance lists, minutes, personal notes taken by persons who attended, and reports generated with respect to the meeting.

M001223159

73.     All documents concerning the relative dates of onset of thrombotic events, patient-years of exposure, and discontinuations for any and all reasons, in the VIOXX-exposed and placebo-exposed subjects of the APPROVe study, for the subgroups identified as having "symptomatic atherosclerotic cardiovascular disease" and "diabetes" (Relative Risk of 6.10), at page 1097 of the article, Bresalier, "Cardiovascular Events Associated with Rofecoxib in a Colorectal Adenoma Chemoprevention Trial," *New England Journal of Medicine* 2005; 352:1092-1102 (hereinafter, "Bresalier").

74.     All documents concerning the incidence curves for thrombotic events among the subjects referenced in the preceding Request for Production, including graphs of the Kaplan-Meier curves and documents relating thereto.

75.     All documents concerning data or Merck's analyses of data concerning "interactions between treatment group and subgroups," as described in Bresalier at page 1097, for the subgroups described as "history of hypertension, hypercholesterolemia, or ischemic heart disease; presence or absence of cigarette use; or presence or absence of a high cardiovascular risk," including the following data for each subgroup: the absolute numbers of "cardiac events," "cerebrovascular events," and "peripheral vascular events," as defined in Bresalier, Table 2; patient years of exposure; relative dates of onset; incidence rates; relative risks; statistical significance calculations and results thereof.

76.     All documents concerning the "symptomatic atherosclerotic cardiovascular disease" subgroup, as the term is used at Bresalier, page 1097, including identification of the diagnoses and diagnostic codes included within that subgroup; and the absolute numbers of each of the following events in each treatment group of this subgroup: myocardial infarction, fatal myocardial infarction, sudden death from cardiac causes, unstable angina pectoris, fatal ischemic

M001223160

stroke, ischemic stroke, transient ischemic attack, peripheral arterial thrombosis, peripheral venous thrombosis, and pulmonary embolism.

77. All documents concerning defendant's relationship with Bengt-Erik Wiholm between 1997 and the date when he was hired by Defendant, including:

(a) all documents concerning an article by Wiholm entitled "Identification of Sulfonamide-like Adverse Drug Reactions to Celecoxib in the World Health Organization Database," (Exhibit 6 to the deposition of Thomas Bold, March 11, 2005), including documents concerning funding requests and approvals, disbursements, drafts of the article, and Defendant's comments concerning such drafts; and

(b) all documents concerning any Relevant Product.

78. All documents concerning Defendant's relationship with Danny Schoors, including:

(a) all documents concerning a letter to the editor of *Clinical Therapeutics*, vol. 24, no. 3, 2002 (Exhibit 12 to the deposition of Thomas Bold, March 11, 2005), including all drafts of that letter, and all correspondence between Schoors and Andreas Moan and any other employee of Defendant regarding that letter;

(b) all documents concerning employment of Schoors by Merck Research Labarotories, Clinical Pharmacology Europe, Brussels, Belgium, and any other division, subsidiary, or entity affiliated with Defendant, from 1990 to the present;

(c) all documents concerning contractual retention of Schoors by Defendant and any entity affiliated with Defendant, from 1990 to the present; and

(d) all documents concerning any Relevant Product.

M001223161

79.     All documents concerning an article by Zhao, et al, *Clinical Therapeutics* vol. 23, no. 9 2001 (Exhibit 9 to the deposition of Thomas Bold, March 11, 2005), including the custodial files of Andreas Moan, Jeffrey Melin, Ken Truitt, Sandra Simpson, William Griffin, Tim Ruef, and Riad El-Dada regarding the Zhao article and Defendant's responses thereto.

80.     All documents concerning any Relevant Product from the custodial files of Defendant's employees referenced in the preceding Request.

81.     All documents concerning reporting rates of adverse events for any Relevant Product, including those described in Exhibit 18 to the deposition of Thomas Bold dated March 11, 2005.

82.     All documents concerning reporting rates of adverse events for any Relevant Product in comparison to any other NSAIDs, including those described in Exhibit 18 to the deposition of Thomas Bold dated March 11, 2005.

83.     All documents concerning analyses of proportional reporting rates ("PRR") of adverse events for any Relevant Product in comparison to other NSAIDs, including PRR analyses referenced in emails written by Leonard Oppenheimer and Peter Gruer, dated March 21, 2000 (MRK-ACV0002812); an email written by Peter Gruer dated March 20, 2000 (MRK-ABH0017495); and the analysis of events set forth in Exhibit 18 to the deposition of Thomas Bold dated March 11, 2005, pp. 209-217.

84.     All documents concerning data "extract[ed] for VIOXX and Celebrex" referenced in Peter Gruer's email at MRK-ACV0002812, including documents from the custodial files of any employee of Defendant who performed work on this assignment under the direction of and in coordination with Peter Gruer.

85.    All documents concerning estimates or calculations made by Merck or any of Merck's outside consultants, between January 1, 1999 and the present, with regard to:

      (a)    adverse event reporting rates for any Relevant Product;

      (b)    adverse event reporting rates for Celebrex;

      (c)    comparisons of adverse event reporting rates between any Relevant Product and Celebrex; and

      (d)    comparisons of adverse event reporting rates between any Relevant Product and other NSAIDs.

86.    All documents received by Merck through Freedom of Information Act requests as to adverse events reported in association with Celebrex or other NSAIDs, between 1997 and the present.

87.    All documents concerning Labeling Reports relating to any Relevant Product pursuant to Merck SOP 530, from 1999 to present.

88.    All documents concerning AERT meetings with regard to any Relevant Product, including memoranda, emails, distribution lists, attendance lists, minutes, or reports generated with respect to the meetings.

89.    All documents concerning labeling reviews relating to any Relevant Product pursuant to Merck SOP 530, from 1999 to present, including memoranda, emails, distribution lists, attendance lists, minutes, and reports generated with respect to the meetings.

90.    All documents concerning AEIM Memos within the meaning of the term as used by Dr. Bold at page 139 of his 6/25/04 deposition, relating to any Relevant Product, from 1999 to present.

M001223163

91.    All documents concerning meetings of the Worldwide Product Circular Review Committee ("WPCRC") regarding any Relevant Product, from 1999 to present, including memoranda, emails, distribution lists, attendance lists, minutes, and reports generated with respect to the meetings.

92.    All data concerning numbers of prescriptions of any Relevant Product and Celebrex sold for each month between January 1999 and September 30, 2004, including data stating prescriptions sold according to dosage, and data stated separately for United States and foreign sales.

93.    All documents concerning the assertion by Thomas Bold at his deposition on March 11, 2005, pp. 202-203, that there was a backlog with regard to the entry of adverse event data by the FDA with regard to Celebrex and any Relevant Productvio.

94.    All documents concerning any Relevant Product from the custodial files of Laura Vilardo and any other of Defendant's employees who were assigned to assist Thomas Bold in gathering and reviewing adverse event information.

95.    All documents concerning pharmacogenetics and pharmacogenomics and adverse events or efficacy of any Relevant Product, or gene mapping and its relation to responses or reactions of any Relevant Product.

96.    All documents concerning any labeling, instructions, package inserts, and informational brochures, including drafts, revisions, and communications thereto, ever generated for each Relevant Product.

97.    As to each change in any Relevant Product's labeling, all documents concerning the communications, analysis, and terms of said label change.

M001223164

98.     All documents concerning communications or other materials distributed, published, or otherwise disseminated by Defendant to physicians, pharmacists, the public, or consumers regarding any change in the labeling or recommendations for use of any Relevant Product, including Dear Doctor letters.

99.     All documents concerning any communications with the FDA or any Foreign Government Regulatory Authority regarding changes in the label or recommendations for use of any Relevant Product.

100.    All documents, including internal memoranda, minutes of meetings, and draft proposals, concerning any consideration, discussion, decision or attempt to revise any label or recommendations for use of any Relevant Product.

101.    All documents concerning information published in any Physicians Desk Reference concerning any Relevant Product, including all documents concerning drafts, revisions, alterations, or discussions of such information.

102.    All documents concerning materials provided to consumers upon purchase of any Relevant Product, such as package inserts, instructions, or warnings included within the packaging, including all documents concerning drafts, revisions, alterations, or discussions of such materials.

103.    All documents concerning any press release, public statement, standby statement, video news release, "b-roll," advertisement, promotional literature, marketing collateral, public relations or public affairs material for any Relevant Product, including any drafts, discussions, FDA approvals or revisions of said information.

104.    All documents and recordings reflecting statements made by you concerning any Relevant Product.

M001223165

105.   All documents concerning any FDA warnings or comments on any marketing, advertising, promotion, or detailing of any Relevant Product, including all documents concerning Defendant's responses thereto.

106.   All marketing, advertising, promotion, or detailing materials concerning any Relevant Product, whether utilized or otherwise, in any medium, including print, radio, internet, or television.

107.   All documents concerning contracts or agreements with third parties for the marketing, advertising, promotion, or detailing of any Relevant Product to any person, including physicians and consumers.

108.   All documents concerning the effectiveness of any marketing, advertising, promotion, or detailing of any Relevant Product to any person, including physicians and consumers.

109.   All documents concerning Defendant's expenditures, whether directly or through a third party, for any marketing, advertising, promotion, or detailing of any Relevant Product to any person, including physicians and consumers.

110.   All tangible things and documents concerning tangible things or other materials ever provided by Defendant to physicians, or pharmacies to promote use of a Relevant Product, including notepads, calendars, office supplies, meals, promotional materials, financial contributions, product descriptions, product literature, books regarding any Relevant Product, free samples, and other such promotional materials.

111.   All documents concerning interviews, contacts, detailing, training activities, educational activities, prescribing practices, promotional activities, communications, or other interactions about any Relevant Product, whether directly or though detailers, contractors, or

M001223166

HSAs, with any actual or potential thought leader, advocate, managed care entity, prescription benefit manager, academic institution, and prescribing physician, including all:

(a)     Sales call records and notes, including records from Insight and FACTS;

(b)     National Service Center ("NSC") records, including Cornerstone;

(c)     National Business Group ("NBG") records, including Cornerstone;

(d)     Interactive VIOXX Responses ("IVRs");

(e)     FSNet records;

(f)     Professional Information Requests ("PIRs");

(g)     Merck Medical Services records or communications; and

(h)     Medical education records, including records from iMed and MESA.

112.     All documents concerning training, instructions, memoranda, films, questions and answers, and other materials supplied to detail persons or other sales persons employed by Defendant to promote any Relevant Product.

113.     All documents concerning the VIOXX Segmentation Strategy.

114.     Ten exemplars of each product sample of any Relevant Product that was ever provided to any prescribing physician, in the form in which such Relevant Product was sampled, including all packaging, product literature, and blister-packs accompanying said sample.

115.     All videotapes, instruction manuals, or other visual aids concerning any Relevant Product, as well as any documents that discuss, refer, or relate thereto.

116.     All documents concerning sponsorship, financial support, contribution of product, consultation agreements, or other items of value provided to or for any person prescribing or studying the safety and efficacy of any Relevant Product.

117.    All documents concerning the promotion or use of any Relevant Product off label, contrary to prescribing guidelines, or for indications other than that which such Relevant Product was indicated, including any training for or analyses or studies of such use.

118.    All documents concerning analysis of market share, projection of future sales, marketing strategies, or promotional plans of any Relevant Product both in the United States and abroad.

119.    For each year that any Relevant Product was being developed, tested, or marketed by you, documents sufficient to identify the projected and actual amounts expended on each aspect of your design, development, testing, marketing, and promotional programs for each Relevant Product, including amounts expended for pre-clinical and clinical research, direct-to consumer advertising, physician promotion, medical education, and safety surveillance.

120.    All documents concerning revenue, sales, profits, pricing, and costs for any Relevant Product.

121.    All documents concerning any analysis of the market for any NSAID.

122.    All documents concerning Defendant's current or prospective financial condition or market performance, including revenue or earnings projections/results, product market analysis, new product development, and product sales for the period from January 1, 1992 to the present.

123.    All documents concerning the safety, risks, or dangers associated with any Relevant Product or NSAID.

124.    Documents sufficient to identify:

(a)    all persons and entities with whom Defendant has had any communication concerning, discussing, or relating to and Relevant Product or Defendant's current or prospective

M001223168

financial condition or market performance, including revenue or earnings projections/results, product market analysis, new product development, and product sales; and

(b)     all employees, officers, directors or agents of Defendant who were engaged in such communication.

125.   All documents concerning meetings, training and discussions with marketing personnel regarding any Relevant Product, including any documents regarding questions, comments and inquiries received by or requested from sales force personnel and training materials or handouts provided to any detailers or sales representatives.

126.   All documents concerning:

(a)     all medical seminars, conferences, focus groups, or lectures conducted, whether sponsored by you or otherwise, or in which Defendant or its agents participated, in which any Relevant Product was discussed;

(b)     the name, address, and specialty of every person in attendance, whether such person was affiliated with you or otherwise; and

(c)     any presentations made by or on behalf of Defendant and any materials displayed, relied upon or distributed by Defendant at said conference.

127.   All sales or promotional materials concerning any Relevant Product, including all prior versions and drafts (whether actually used or not) and all versions that are planned to or may be used in the future of all advertisements (including print, radio, television, and web-based ads), storyboards, marketing plans, mark-ups, sketches, packaging, product labeling, and point of sale literature.

M001223169

128.   All documents concerning marketing, advertising, and promotional research concerning any Relevant Product, including concept testing, focus groups, volume testing, copy testing, communication testing, persuasion testing, and market testing.

129.   All documents concerning the purchase, placement, or billing for any advertising or promotional materials concerning any Relevant Product in any market, including print, radio, internet, television, or billboard advertising.

130.   All documents concerning when and where print, radio, or television advertisements relating to any Relevant Product were or will be disseminated, including media plans.

131.   All documents concerning any decision to market or advertise any Relevant Product.

132.   All documents that constitute, evidence, embody, refer to, or discuss any focus group, consumer survey, study, report, poll, or any other marketing analysis conducted in connection with the promotion, advertising, packaging, labeling, distribution, or sale of any Relevant Product.

133.   All documents that were reviewed, considered, provided to third parties, or relied upon, in formulating a plan for the promotion, advertising, purchasing, labeling, distribution, or sale of any Relevant Product.

134.   All documents concerning any marketing analysis or surveys that compare on any basis any Relevant Product to any other prescription or over-the-counter pharmaceutical product.

135.   All documents sent to retailers or distributors concerning the promotion, advertising, or sale of any Relevant Product.

M001223170

136.    Documents sufficient to identify all agents, employees, or third parties whose responsibilities at any time concerned the marketing, detailing, or sale of any Relevant Product, including the name, last known address, last known telephone and fax numbers, social security number, role, title and responsibility within Merck, and dates of employment.

137.    All documents concerning any communication between you and a third party, including any marketing or advertising agency, which refers or relates to the promotion, marketing, advertisement, or sale of any Relevant Product, including correspondence, memoranda, studies, programs, e-mail, minutes or summaries of meetings or conversations, retainer agreements, and presentations made to or by Defendant.

138.    All documents concerning any investigation, testing, or research performed to determine the truthfulness and accuracy of any assertion or claim made in any advertisement about any Relevant Product, including the efficacy, safety, risks, or benefits of any Relevant Product.

139.    All documents concerning any complaints concerning any Relevant Product, including complaints concerning the efficacy, safety, risks, or benefits.

140.    All documents concerning communications by any physician, scientist, or medical or scientific expert retained by or paid by you, regarding the safety or efficacy of any Relevant Product, including reports prepared in legal proceedings, opinions expressed in depositions or trial, reports submitted to scientific journals, opinions expressed at medical conferences, and opinions provided as testimony, reports or statements to the FDA or any foreign government regulatory authority, or any advisory committee thereof.

141.    All documents concerning any financial payments, contributions or support provided by Defendant to any physician, scientist, medical or scientific expert which is the

M001223171

subject of the preceding request, or any institution, agency or entity with which said individual is affiliated.

142.    All documents concerning any attempt by Defendant to retain, engage, or otherwise provide financial support or item of value to any person engaged in scientific or medical study of any Relevant Product.

143.    All documents concerning any consulting agreement or understanding between Defendant and any physician for the study or tracking of patients prescribed any Relevant Product, including any financial consideration paid pursuant to said agreement.

144.    All documents concerning your communications or interactions with, or communications by any person listed below with you or any other person:

(a)    any member of a committee, sub-committee, data safety monitoring board, or external safety monitoring board concerning of any clinical trial for any Relevant Product;

(b)    any consultant or attendee at any meeting concerning any Relevant Product;

(c)    John Baron;

(d)    David Bjorkman;

(e)    Robert Califf;

(f)    Rory Collins;

(g)    Garrett Fitzgerald;

(h)    Marvin Konstam;

(i)    James Neaton;

(j)    John Oates;

(k)    Brian Strom;

M001223172

(l)     Eric Topol;

(m)    Michael Weinblatt; and

(n)    Myron Weisfeldt.

145.    All videotapes, audiotapes, CD-ROMs, or other electronic storage or presentation media for any promotion, advertisement or presentations made to a health-care provider, Third-Party Payor of prescription drug benefits ("TPP"), Health Maintenance Organization ("HMO"), a Primary Physician Organization ("PPO"), Prescription Benefit Manager ("PBM"), Managed Care Organization ("MCO"), or which was made available to consumers.

146.    All communications with, or documents provided to, any TPP, HMO, PPO, PBM, or MCO concerning any Relevant Product and its safety, efficacy, or cost, including any comparisons of the safety, efficacy, or cost of any Relevant Product relative to that of other NSAIDs.

147.    All documents concerning the sale, marketing, or promotion of any Relevant Product for placement on any prescription drug formulary, including:

(a)     all documents concerning any compensation paid, in the form of rebates or otherwise, to any TPP, HMO, PPO, PBM, or MCO for the purchase of any Relevant Product or placement of any Relevant Product on a prescription drug formulary or preference of any Relevant Product on such formulary over other NSAIDs, and

(b)     all documents concerning any discount offered to any TPP, HMO, PPO, PBM, or MCO for the purchase of any Relevant Product or placement of any Relevant Product on a prescription drug formulary or preference of any Relevant Product on such formulary over other NSAIDs.

148.    All documents concerning any internal, governmental, or industry standards, policies, procedures, regulations, protocols, or guidelines that in any way concern the marketing, advertising, or promotion of any Relevant Product, whether through radio, television, print media, or in person, with respect to any person, including any TPP, HMO, PPO, PBM, or MCO, actual or potential though leaders, advocates, hospitals, pharmacies, medical schools, or prescribing physicians.

149.    All documents concerning the VIOXX Prescription Refund Program.

150.    All documents concerning VIOXX relating to the following persons:

(a)    Any consumer who participated in the VIOXX Prescription Refund Program;

(b)    Kaiser Permanente Health Insurance Company;

(c)    Group Health;

(d)    Premera BlueCross of Washington;

(e)    The United States Veterans Administration;

(f)    Any state Medicare or Medicaid program; and

(g)    Any other Third Party Payor or Health Insurer.

151.    All indices, including computer print-outs, listing the name, case caption, attorney, and status of any lawsuit filed against Defendant regarding any Relevant Product, including cases which have been dismissed, settled, withdrawn or tried to verdict, including documents reflecting the plaintiff's attorney's address, fax, and telephone numbers.

152.    All transcripts and videotapes of depositions, including any errata sheets and all exhibits, of Defendant's employees, investigators, experts, or agents in any action concerning any Relevant Product.

M001223174

153. All transcripts and videotapes of testimony given in any action or before any tribunal, agency, or governmental of regulatory body, whether in the United States or abroad, concerning the safety, efficacy, design, testing, marketing, or sale of any Relevant Product.

154. All sworn or written statements or testimony concerning any Relevant Product, including any affidavits, certifications, declarations, or other witness statements, whether final or draft.

155. All of your discovery responses in litigation concerning any Relevant Product, including responses to interrogatories, requests for admissions, and requests for the production of documents.

156. All documents produced by you or any third party (other than a plaintiff) in any litigation concerning any Relevant Product.

157. All reports of any experts or fact witnesses submitted by you in connection with any litigation concerning any Relevant Product.

158. All documents concerning any investigation or inquiry conducted by or on behalf of any governmental, regulatory, self-regulatory, agency, industry or trade association, medical body or association, medical journal, institutional review board, or Board of Directors, including any internal committee thereof, concerning any Relevant Product.

159. Any documents concerning notice of claims, claims projections, loss estimates, or risk management related to the Relevant Products.

160. All documents concerning contracts or agreements with any physician, pharmacist, health care provider or institution, or pharmacy to indemnify or hold harmless such physician, pharmacist, health care provider or institution, or pharmacy concerning actions or conduct relating to any Relevant Product.

161.   All documents concerning the purchase, placement, or billing for any advertising or promotional materials concerning you or any Relevant Product subsequent to September 30, 2004, including print, radio, internet, television, or billboard advertising.

Respectfully submitted,

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*Herman, Herman, Katz & Cotlar, LLP*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:    (504) 581-4892
FAX:  (504) 561-6024
**Plaintiffs' Liaison Counsel**

<table>
<tr><td>

Richard J. Arsenault, Esq.
P.O.Box 1190
2220 Bonaventure Court
Alexandria, LA  71309-1190
PH:  (318) 487-9874
FAX:  (318) 561-2591

Andy D. Birchfield, Esq. **(Co-Lead Counsel)**
P.O. Box 4160
234 Commerce Street
Montgomery, AL  36103-4160
PH:  (800) 898-2034
FAX:  (334) 954-7555

Elizabeth Cabraser, Atty.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
PH:  (415) 956-1000
FAX:  (415-956-1008

Thomas Kline, Esq.
1525 Locust St.
19th Floor
Philadelphia, PA  19102
PH:  (215) 772-1000
FAX:  (215) 772-1371

Arnold Levin, Esq.
510 Walnut Street
Suite 500
Philadelphia, PA  19106-3875
PH:  (215) 592-1500
FAX:  (215) 592-4663

</td><td>

Gerald E. Meunier, Esq.
Energy Centre
1100 Poydras Street, Suite 2800
New Orleans, LA  70163-2800
PH:  (504) 522-2304
FAX:  (504) 528-9973

Troy Rafferty, Esq.
316 S. Baylen Street, Suite 400
Pensacola, FL  32502
PH:  (850) 435-7000
FAX:  (850) 497-7059

Drew Ranier, Esq.
1419 Ryan Street
Lake Charles, LA  70601
PH:  (337) 494-7171
FAX:  (337) 494-7218

Mark Robinson, Esq.
620 Newport Center Drive
7th Floor
Newport Beach, CA  92660
PH:  (949) 720-1288
FAX:  (949) 720-1292

Christopher Seeger, Esq. **(Co-Lead Counsel)**
One William Street
New York, NY  10004
PH:  (212) 584-0700
FAX:  (212) 584-0799

</td></tr>
</table>

M001223176

| Carlene Rhodes Lewis, Atty. | Christopher Vincent Tisi, Esq. |
|---|---|
| 2200 Texaco Heritage Plaza | 2000 L Street, NW |
| 1111 Bagby | Suite 400 |
| Houston, TX  77002 | Washington, DC  20036-4914 |
| PH:  (713) 650-0022 | PH:  (202) 783-6400 |
| FAX:  (713-650-1669 | FAX:  (307) 733-0028 |

## PLAINTIFFS' STEERING COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Request for Production of Documents has been served on Liaison Counsel Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced in accordance with Pre-Trial Order No. #8, on this 7th day of June, 2005.