UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
|     STATE OF LOUISIANA, ex rel JAMES D. | * | |
|     CALDWELL, JR. Attorney General, | * | SECTION L |
|                               Plaintiff, | * | |
| | * | JUDGE FALLON |
|          versus | * | |
| | * | MAG. JUDGE KNOWLES |
|     MERCK & CO., INC., | * | |
|                   Defendant | * | |
| | * | |
|     **CASE NO. 05-3700** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY TO NOTICE OF SUPPLEMENTAL AUTHORITY
ON BEHALF OF THE LOUISIANA ATTORNEY GENERAL**

**REPLY TO NOTICE OF SUPPLEMENTAL AUTHORITY**

The recent unreported New Jersey district court holding which Merck has cited in its Notice of Supplemental Authority has no bearing on the issues presented by Merck's Motion to Dismiss. *See In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,* No. 2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009) ("*Intron*"). The *Intron* decision is easily distinguished from the instant case on two critical grounds. First, the novel theory of liability per se for off-label promotion asserted in that case is dramatically different from the misrepresentation/non-disclosure claims asserted herein. Indeed, the New Jersey District Court went to great lengths to distinguish that unique claim from claims involving misrepresentations with respect to safety and efficacy. Second, and more importantly, the causation analysis in *Intron*, a suit brought by private third party payors under RICO and the private action provisions of the New Jersey Consumer Fraud Act ("NJCFA") has no bearing whatsoever on claims by the Louisiana Attorney General under a statute which expressly authorizes the AG to seek restitution of funds which "*may have been acquired by means of an unlawful trade practice.*" LSA-R.S. 51:1408 (emphasis added). Moreover, even if the *Intron* holding were even arguably applicable to the claims at issue here, this Court should not follow that unreported, extra-jurisdictional decision, as the analysis on which it turns is fatally flawed.

A. **The *Intron* holding has no bearing on the claims at issue in this case.**

The private third party payor plaintiffs in *Intron* were pursuing a novel theory of liability: that, in the absence of any demonstration that the drug was unsafe or inefficacious, the mere fact that the drug was promoted for off-label uses gives rise to a claim by third party payors. Noting facts which unequivocally distinguish the claims at issue in *Intron* from those at issue here, the *Intron*

court noted:

> 'the named consumer [P]laintiffs do not at all contest the safety or effectiveness of the particular drugs for which they paid, or even allege that they were prescribed drugs off-label[,]' and that 'the TPPs do not even identify any of their beneficiaries who took the Subject Drugs for any off-label use or allege the circumstances or results of such treatment...
>
> *Intron*, 2009 U.S. Dist. LEXIS 58900 at p. 11.

The *Intron* court noted that this unique theory was distinct from allegations of misrepresentations as to safety and efficacy such as are at issue in the instant case, and distinguished holdings dealing with such claims accordingly.  The *Intron* court explained:

> In the context of alleged fraudulent marketing of a pharmaceutical product, both Plaintiffs and Schering cite cases in which courts have held that injury is adequately pled only where a plaintiff alleges that a purchased drug was either unsafe, ineffective or somehow worth less than the price paid for the drug. The weight of authority in this area supports this theory of injury.... Plaintiffs' allegations of insufficient evidence and lack of FDA approval are not adequate to plead RICO injury because they fail to assert that the Subject Drugs were ineffective, unsafe, or somehow worth less than what Plaintiffs paid for the drugs.
>
> *Id.*, pp. 12-13.

Unlike the plaintiffs in *Intron*, plaintiffs here have alleged that Vioxx was less efficacious than represented, unsafe, and worth considerably less than the state of Louisiana and its consumers paid for the drug.  The *Intron* court's analysis of a claim in which the plaintiffs made no such assertions has no relevance to the claims asserted by the Louisiana Attorney General here.

Moreover, even if this analysis had some bearing on claims arising from Merck's representations as to safety and efficacy – a suggestion rejected by the *Intron* court itself – that holding has no relevance to claims by the Louisiana Attorney General under Louisiana's unique

restitution statute. See LSA-R.S. 51:1408. Section 1408 authorizes the Attorney General, and only the Attorney General, to seek restitution of property which may have been acquired means of an unfair trade practice. The Louisiana Legislature's purposeful selection of the phrase "may have been" sets the Attorney General restitution provision at issue in the instant case apart from RICO and NJCFA claims, neither of which provide for recovery when a defendant "may have" acquired funds through unlawful means. The requirements of actual causation under both RICO and NJCFA distinguish the *Intron* holding from the instant case.

> **B.   The Intron court's analysis is flawed.**

Even if the unreported New Jersey district court decision in *Intron* did have some bearing on the claims asserted herein – it does not – this Court should not consider that holding as it turns on a deeply flawed analysis. Two of the *Intron* court's conclusions, the out-of-hand rejection of the *In re Zyprexa* decision and the assertion that *Desiano* is no longer "good law" – both heralded by Merck – are based on faulty reasoning and entirely unsupported.

The *Intron* court rejected the holding in *In re Zyprexa,* 493 F.Supp. 2d 571 (E.D.N.Y. 2007) as relying on a "fraud on the market" theory not allowed outside of the securities context. However, the *Zyprexa* holding did not rely on any "fraud on the market" presumption, but rather held, upon consideration of a voluminous record, that plaintiffs had presented evidence upon which a trier of fact could conclude that the drug manufacturer fraudulently maintained demand for its drug at an inflated price through misrepresentations as to comparative safety and efficacy over its competitors. *Id.*, 493 F.Supp. at 578. In its subsequent class certification decision, the *Zyprexa* court elaborated on these findings, citing support for this conclusion both from Merck's own internal documents and the testimony of Merck's own pharmaco-economics experts. *In re Zyprexa, Products Liab. Litig.*,

253 F.R.D. 69, 190-191 (E.D.N.Y. 2008).[1]  Rather than confront this factual analysis, which would necessarily have precluded the *Intron* court from dismissing the case on a Rule 12 motion, the *Intron* court mis-characterized the claim as one relying upon a fraud-on-the-market presumption, thus allowing it to reject the holding without analysis.[2]

Equally flawed is the *Intron* court's suggestion that the Second Circuit's holding in *Desiano* is no longer good law.  The *Intron* court suggests that the rationale of *Desiano* was supplanted by the Second Circuit's holding in *McLaughlin, supra*.  Tellingly, the *McLaughlin* decision did not even mention the landmark *Desiano* decision, handed down just a couple of years earlier.  Had the Second Circuit wished to abrogate such an important recent decision, presumably it would have made *some* mention of it.  More significantly, the Second Circuit has cited *Desiano* on no less than five occasions since that decision was handed down, and not once suggested any question as to the validity of its holding.[3]  Moreover, multiple reported district court decisions within the Second

---

[1] The *Intron* decision criticized the *In re Zyprexa* holding for its reliance on the holding in *Schwab v. Philip Morris* USA, 449 F.Supp. 2d 992 (E.D.N.Y. 2006), which was reversed in part by the Second Circuit's holding in *McLaughlin v. American Tobacco, Inc.*, 522 F.3d 215 (2d Cir. 2008).  However, in its class certification ruling, which was handed down *after McLaughlin*, the *Zyprexa* court noted the distinction between the price injury showing in *Zyprexa* and that at issue in *McLaughlin*.  The *Intron* court did not even consider, much less address, this well-reasoned distinction.

[2] The *Intron* court is not alone in mis-characterizing the *Zyprexa* decision.  At oral argument, counsel for Merck argued that *Zyprexa* was not applicable because the *Zyprexa* plaintiffs claimed direct reliance on the drug manufacturers' misrepresentations.  Nothing could be further from the truth.  The *Zyprexa* court held that in the absence of direct reliance by the third party payors, third party payors suffered an economic injury because the drug manufacturer fraudulently maintained demand for its product over cheaper competitors through misrepresentations as to safety and efficacy to the medical community at large.

[3] *See e.g. Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 88 (2nd Cir., 2006); *Korsinsky v. U.S. E.P.A.*, 192 Fed.Appx. 42, 43 (2nd Cir. 2006); *Hollander v. Flash Dancers Topless Club*, 173 Fed.Appx. 15, 17 (2nd Cir. 2006); *Dotson v. Griesa*, 398 F.3d 156, 162 (2nd

Circuit have cited favorably to *Desiano* subsequent to the Second Circuit's *McLaughlin* decision[4]. There is simply no support whatsoever for the *Intron* court's suggestion that *Desiano* is no longer "good law."

The *Intron* court's rejection without analysis of the well-reasoned conclusions of the *In re Zyprexa* decision and its suggestion, utterly without support, that the U.S. Second Circuit's decision in *Desiano* is no longer good law, are demonstrative of the flawed analysis that pervades the *Intron* decision.

## CONCLUSION

The *Intron* court's flawed analysis has no bearing on the matters before this Court. This Court should follow the weight of authority that holds that such matters cannot be resolved as a matter of law and deny Merck's Motion to Dismiss.

---

Cir. 2005); *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.*, 344 F.3d 211,(2nd Cir.2003) .

[4]See, e.g., *Sergeants Benevolent Association Health and Welfare Fund, et al v. Sanofi-Aventis, U.S. LLP, et al*, USDC Eastern District of New York, No. 08-CV-179 (SLT), Minute Entry of 12/5/08.

BY:   MURRAY LAW FIRM

*s/ Stephen B. Murray, Jr.*
James R. Dugan, II  (24785)
Stephen B. Murray  (9858)
Stephen B. Murray, Jr. (23877)
Douglas R. Plymale (28409)
Justin Bloom
650 Poydras Street, Suite 1100
New Orleans, Louisiana 70130
T:    504.525.8100
F:    504.584.5249

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
1885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
T:    225.326.6020
F:    225.326.6096

Francisco H. Perez
Kim Sullivan
General Counsel
LOUISIANA DEPARTMENT OF HEALTH AND
HOSPITALS
P.O. Box 3836
Baton Rouge, Louisiana 70821
T:    225.342.1188
F:    225.342.2232

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply to Notice of Supplemental Authority filed on behalf of the Louisiana Attorney General has been served on Liaison Counsel, Phillip A. Wittman and Russ M. Herman, by U. S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance Pretrial Order No. 8B, on this the 12th  day of August, 2009.

 */s/ Stephen B. Murray, Jr.*
Stephen B. Murray, Jr.
MURRAY LAW FIRM
650 Poydras Street, Suite 1100
New Orleans, Louisiana 70130
T:    504.525.8100
F:    504.584.5249