UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX PRODUCTS<br>LIABILITY LITIGATION<br><br>**This document relates to All Cases** | CIVIL ACTION<br><br>NO. 2:05-MD-01657-EEF-DEK<br><br>SECTION L<br>JUDGE ELDON E. FALLON<br><br>DIVISION 3<br>MAGISTRATE DANIEL E. KNOWLES III |

**MEMORANDUM IN SUPPORT OF THE VIOXX LITIGATION CONSORTIUM'S
MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)
AND FOR ALTERNATIVE FINAL JUDGMENT UNDER RULE 54(b),
<u>AND FOR STAY PENDING APPEAL</u>**

INTRODUCTION

The Vioxx Litigation Consortium seeks an immediate appeal of this Court's Order and Reasons of August 3, 2009, in which the Court reaffirmed its earlier decision to reduce contingent fees in cases enrolled in the Vioxx Resolution Program to 32%. To decide this motion the Court must first consider the following key questions:

1)  Should the Court certify the Order and Reasons for interlocutory appeal under 28 U.S.C. § 1292(b)?

{N2024169.7}            1

    A)    This Court held that it had jurisdiction and authority *ex post* to invalidate private fee contracts and to reduce contingent fees to 32% in the context of multi-district litigation, regardless of the fact that the contracts were reasonable *ex ante*. No court of appeal has ruled on this question, and this Court is only the third district court to do so. Is this a controlling question of law, as to which there is substantial ground for difference of opinion?

    B)    The substantive product liability claims of the VLC's clients were resolved by their entry into the Vioxx Resolution Program. Distribution of proceeds subject to any liens and appropriate division of the proceeds between individual clients and the VLC is all that remains for the majority of the VLC's clients. An immediate appeal may eliminate or truncate proceedings before the district court to determine whether the VLC is entitled to a variance in each of its nearly 2000 clients' cases. Allowing an appeal now speeds final distribution of *complete* settlement funds in the VLC's cases, in contrast to the delay if the VLC's requested appeal must be postponed until all pending but unrelated issues in each client's case are determined. Will an appeal now materially advance the ultimate termination of the VLC's clients' cases?

2)    Should the Court also enter an alternative Rule 54(b) final judgment on the Order and Reasons?

    A)    The VLC entered into private fee contracts with each of its clients and then performed services for those clients. This Court held that the VLC had no right to recover its contingency fees under those contracts. Does the Court's ruling constitute a final disposition of the VLC's contractual rights?

    B)    An immediate appeal will reduce or eliminate additional proceedings before this Court as well as future appeals. It will also speed full, final and complete distribution of proceeds of cases that were resolved over a year ago to whichever party prevails on appeal. Is there any just reason to delay appeal?

Finally, if the Court grants an interlocutory appeal and/or enters a Rule 54(b) final judgment, then the Court must consider one more question:

3)    Should the Court stay the September 15 deadline for initiating challenges to its order reducing fees in individual cases?

    The VLC's appeal asserts a serious legal challenge to the Court's order limiting their fees, a major goal of which is to avoid the onerous process of applying for a variance in up to 2000 individual cases. This process forces the VLC attorneys to litigate fee disputes that do not exist. There is little or no chance that the VLC's appeal, even on an expedited basis, will be decided by the current September 15

deadline. Would failure to stay the September 15 deadline cause the VLC irreparable harm and disserve the public interest?

## THIS COURT SHOULD CERTIFY AN INTERLOCUTORY APPEAL

**The Order and Reasons involves a controlling question of law as to which there is substantial ground for difference of opinion.**

In its Order and Reasons this Court ruled that it had both jurisdiction and authority in the context of this MDL to reduce the contingency fee set in private fee contracts between the VLC and its clients. This Court itself recognized the significance of this issue and the absence of either appellate guidance or Congressional directive when it announced last December that it would reconsider its earlier opinion:

> I will be setting a status conference with the lawyers representing the attorneys who filed the motion and the clinic. I will set some briefing schedules and argument schedules and we will take it from there. This may well be an opportunity for a court, the Fifth Circuit or the Supreme Court, to weigh in on attorneys fees in MDL matters and class action matters.
>
> I know and you know that Congress is always interested in this with a 1407 provision. There's always some discussion as to whether or not there should be some caps in that particular statute and also whether or not there should be some caps in the new Class Action Fairness Act. There's been a lot of discussion on that. So everybody will be able to focus on this and weigh in on it and we'll see where we go.[1]

Although the MDL statute has been in force since 1968, until Judge Weinstein's 2006 decision in the *Zyprexa* MDL,[2] no court had changed percentages set in private contingency fee agreements in a non-class action MDL. Judge Frank followed Judge Weinstein and made a

---

[1] Transcript of Dec. 19, 2008 Status Conference, pp. 6-7.

[2] *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488 (E.D.N.Y. Mar. 28, 2006).

similar ruling in the *Guidant* MDL in 2008.[3] When this Court issued its original Order and Reasons on August 27, 2008,[4] it was only the third district court to rule on the issue.[5] No court of appeal has taken a position on the controlling question of law.[6] This judicially-created doctrine is in its nascent stage of development. As explained in the Order and Reasons, it relies for support on 1) analogy to class action procedure; 2) notions of inherent and equitable authority; and 3) wording in the MDL statute providing that the Judicial Panel on Multidistrict Litigation may transfer cases only when transfer will "promote the just and efficient conduct of such actions."[7] Accordingly, there is substantial room for good faith difference of opinion on the legality of this new doctrine.

The Court in its Order and Reasons decided a controlling question of law. Specifically, the Order and Reasons directly controls the allocation of a portion of each of the VLC's clients' awards in nearly 2000 individual cases. If certified and accepted by the Fifth Circuit, the Fifth Circuit's opinion may have precedential effect on this question for all other MDL cases pending in the Fifth Circuit.

The VLC asks that this Court certify the controlling question of law as follows:

---

[3] *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, 2008 WL 682174 (D. Minn. Mar. 7, 2008). Judge Frank later increased the amount of the cap in *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, 2008 WL 3896006 (D. Minn. Aug. 21, 2008).

[4] Rec. Doc. 15722.

[5] *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, MDL No. 926, 1994 WL 114580 (N.D. Ala. Apr. 1, 2004), cited by the Court in its Order and Reasons, was a class action.

[6] The ruling on *Zyprexa* has been appealed, briefed and orally argued. The Second Circuit, however, has not yet ruled, and if it did, its ruling would not obviate the need for a definitive decision on this issue from the Fifth Circuit.

[7] 28 U.S.C. § 1407(a).

> Does a district court have jurisdiction and authority, in non-class action multi-district litigation, to reduce contingent fees set in private fee contracts that were reasonable when the contracts were made, after the risks of the litigation have been reduced to certainty through settlement?

This issue encompasses all of the sub-issues decided by the Court in its Order and Reasons, including for example, jurisdiction, quasi-class action analogy, equitable authority, inherent authority, interpretation of the agreement that established the Vioxx Resolution Program, standards and methodology for determining reasonableness, and procedure for variance. Certification under 1292(b) would allow the Fifth Circuit to exercise jurisdiction over any question that is included within the Order and Reasons that contains the controlling question of law.[8]

**An interlocutory appeal now will materially advance the ultimate termination of the VLC's clients' cases.**

The VLC's clients' product liability claims against Merck were resolved when each agreed to enter into the Vioxx Resolution Program and accept the outcome of that process. Upon entry, each client signed a stipulation of dismissal that was delivered in trust to the Claims Administrator. Many of those individual stipulations have been released to Merck, filed, and this Court has ordered dismissal of those individuals' claims against Merck with prejudice. At this point, it is not anticipated that the Court will enter any Rule 58(a) separate document judgment in any of those cases, as the resolution process does not call for it. Nor does this Court's current Order and Reasons fall within the attorney's fees exception to Rule 58(a) – that exception refers only to a ruling on a motion for an award of attorney's fees, not a *sua sponte* decision by a Court to curtail a contingency fee in a private agreement. The unusual posture of this case together with the "quasi-class action" matrix the Court invoked blurs the typical routes to appeal mapped

---

[8] *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 204 (1996).

by the Federal Rules of Civil Procedure, the Federal Rules of Appellate Procedure, and the United States Code. Granting an interlocutory appeal would clarify the correct timing of appeal (a jurisdictional requirement[9]) and further the just and efficient resolution of this matter.

Without an interlocutory appeal and under the procedure set by the Court, attorneys must submit an objection in every case in which he or she deems a variance warranted under the standard to be set by the Court, perhaps thousands of cases. A special master must then consider evidence in each such case including that submitted by clients (if any) who wish to be heard. Following the special master's consideration, this Court will determine in each case "a reasonable fee based on the unique circumstances presented after deducting the cost associated with this process."[10] Because this MDL is not a monolith, but rather a large collection of individual cases, if an attorney disagrees with the Court's ruling as to any particular case, the attorney would then be required to file a separate appeal that would be at least in part unique to the circumstances of the case. While the VLC does not presume to predict what will happen at each stage, *i.e.*, how many cases will be objected to, what the special master will recommend, and what this Court will finally rule, it is obvious that this procedure could generate multiple appeals. Although the VLC has spoken only for itself in its motion for reconsideration and now in this motion seeking an immediate appeal, the Court's Order and Reasons applies to all cases in

---

[9] *See Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enter., Inc.*, 170 F.3d 536, 539 (5th Cir. 1999) ("Our court is one of limited jurisdiction. We have authority to hear appeals only from 'final decisions' under 28 U.S.C. § 1291, interlocutory decisions under 28 U.S.C. § 1292, nonfinal judgments certified as final under to Fed. R. Civ. P. 54(b), or some other nonfinal order or judgment to which an exception applies."). *See also Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988) ("The time of appealability, having jurisdictional consequences, should above all be clear.").

[10] Order and Reasons, p. 26.

the Vioxx Resolution Program.  In addition to the VLC, others may plan to file objections, engendering more hearings, decisions, and potential individual case appeals.

A single ruling from the Fifth Circuit now would resolve this important question of law and could obviate the need for any further proceedings on this issue.  In any event it would establish firm precedent in this circuit to guide counsel in their evaluation of whether to embark on the path of seeking a variance and whether to undertake representation of clients in future challenging cases against opponents with unlimited financial, public relations, and lobbying resources.  If an interlocutory appeal is granted, the VLC plans to request expedited consideration from the Fifth Circuit to minimize any further delay.

In support of its Order and Reasons, this Court cited "the efficiency that the MDL was designed to create."  Certification for interlocutory appeal under 28 U.S.C. § 1292(b) would likewise promote efficiency by allowing counsel to seek a single ruling that will apply to all cases in the Vioxx Resolution Program.

### THIS COURT SHOULD ALSO ENTER AN ALTERNATIVE FINAL JUDGMENT UNDER RULE 54(b)

Certification under § 1292(b) and entry of final judgment under Rule 54(b) are not mutually exclusive.  The Fifth Circuit stated in *DeMelo v. Woolsey Marine Industries, Inc.*[11] that, "[t]he matters to be found by the district court in a certification under section 1292(b) embrace the substance of all considerations favoring present appealability which are to be found in a Rule 54(b) certificate."[12]  The Fifth Circuit counseled that in close cases district courts should certify

---

[11] 677 F.2d 1030 (5th Cir. 1982).

[12] *Id.* at 1034.

{N2024169.7}                                     7

under one, and alternatively under the other.[13]  Therefore, in order to insure a prompt appeal, this Court should also enter judgment under Rule 54(b).

**Under the rationale of the Order and Reasons, the Court's ruling would be considered "final" within the meaning of Rule 54(b).**

Rule 54(b) provides a means for designating as final a judgment that would otherwise be nonfinal in a case involving multiple claims for relief or multiple parties.[14]  To be eligible for treatment under Rule 54(b), the Order and Reasons here must decide a cognizable claim for relief and must constitute the ultimate disposition of an individual claim entered in the course of a multiple claims action.[15]

While the VLC has consistently maintained that this Court does not have jurisdiction over its private fee contracts because there is no case or controversy, this Court has held that it has subject matter jurisdiction.[16]  If the Court is correct, then under that premise the VLC had a "claim," a "claim" that it was entitled to payment of its contracted-for contingency fees.  Furthermore, the Order and Reasons completely disposed of any "claim" because the Court held that any attorney who had a contingency fee contract for more than 32% could not collect under that contract.  Although the Court has created a framework for the VLC to make a *new* claim for the value of its work on behalf of each individual client, the outcome of that procedure is

---

[13] *Id.* at n.9.  In *DeMelo*, the district court certified an interlocutory appeal under section 1292(b).  Although the Fifth Circuit found that Rule 54(b) would have been a better fit, it allowed the appeal without sending the case back to the district court for entry of a Rule 54(b) judgment.  The court stated that it would not exalt form over substance to dismiss the appeal and noted that no good purpose would be served by sending the case back to the district court.  *Id.* at 1033 & 1034-35.  *Cf. Hahn v. City of Kenner*, No. 96-2425, 1998 WL 213221, *3 (E.D. La. Apr. 24, 1998) (Fallon, J.).

[14] *Sidag Aktiengesellschaft v. Smoked Foods Prods. Co.*, 813 F.2d 81, 84 (5th Cir. 1987).

[15] *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980).

[16] Order and Reasons, pp. 11-14.

completely independent of the VLC's fee agreements. Thus, the VLC's contract "claim" has been finally decided – it has been unequivocally denied.

In *Hahn v. City of Kenner*,[17] in the context of motions for attorney's fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1927, this Court held that *denial* of those motions as to certain defendants was sufficiently final to support entry of judgment under Rule 54(b). (The Court granted the motions of two defendants for fees, and as to those rulings, the Court certified the question for appeal under 28 U.S.C. § 1292(b).) For the same reasons, the Court should certify the question for appeal and enter a Rule 54(b) final judgment.[18]

Thus, the first requirement for a 54(b) judgment, finality as to one among multiple claims or parties, is established.

**There is no just reason to delay appeal of the Order and Reasons.**

The decision of whether there is no just reason to delay appeal depends upon an assessment of judicial administrative interests as well as the equities involved.[19]

Any policy considerations against piecemeal appeals are outweighed by an objective assessment of other judicial administrative interests. As discussed above,[20] failure to appeal the Order and Reasons now is likely to multiply rather than reduce the number of future appeals. An immediate appeal could also eliminate the prospect of many individual evidentiary proceedings before this Court, thus furthering the MDL statute's objective of fairness, consistency and

---

[17] *Hahn*, 1998 WL 213221 at *2.

[18] *See also Deus v. Allstate Ins. Co.*, 15 F.3d 506, 521-22 (5th Cir. 1994), *cert. denied*, 513 U.S. 1014 (1994).

[19] *Curtiss-Wright*, 446 U.S. at 8.

[20] In connection with whether a decision on the controlling question of law will advance the ultimate termination of the litigation under 28 U.S.C. § 1292(b).

efficiency. The issue embodied in the Order and Reasons is easily separable from other issues remaining before the Court. The question of law at issue in the Order and Reasons is poised for a single decision that will set precedent not only for this case but for all future MDLs in this Circuit and perhaps the nation.

Equity also favors immediate appeal. Complete distribution of the Vioxx Resolution Program proceeds cannot be accomplished until the Order and Reasons have been reviewed by the Fifth Circuit. The VLC intends to make all distributions it can pending review, but must hold aside in trust in each of its clients' cases the difference between its contracted-for fee and 32% until the issue is finally determined. Once determined with appellate finality, that amount will be distributed either to its clients or to their attorneys depending upon the outcome. The merits of the vast majority of these cases were resolved when clients entered the Vioxx Resolution Program over a year ago. Further delay in distribution of proceeds serves no good purpose.

Accordingly, the VLC asks that this Court find that there is no just reason for delay in entry of a final judgment on the Order and Reasons.

### THE COURT SHOULD STAY ITS PROCEDURE TO APPLY FOR A VARIANCE FROM THE FEE REDUCTION ORDER PENDING APPEAL

The VLC respectfully requests that the Court stay the September 15, 2009 deadline for filing objections to the Court's order reducing attorneys' fees. As explained above, the Court's reduction of the contracted fees raises serious legal questions. While the VLC intends to seek an expedited appeal, there is very little possibility the Fifth Circuit will answer these questions before September 15. Attorneys for plaintiffs should not be required to go through the variance procedure in potentially thousands of cases while the Fifth Circuit decides whether the Court had jurisdiction and authority to void the agreed percentage of fees. Proceeding in that manner would disserve the MDL's goals of fairness, uniformity and efficiency.

A stay of district court proceedings pending appeal requires four showings: 1) a likelihood of success on the merits; 2) irreparable injury if the stay is not granted; 3) that a stay would not substantially harm other parties; and 4) that a stay would serve the public interest.[21]

Likelihood of success on the merits does not require the movant to show that it will probably win on appeal. Instead, the movant must show that it has "a substantial case on the merits," that involves a "serious legal question," and "that the balance of the equities weighs heavily in favor of granting the stay."[22] Whether the *ex post* reduction of contingent fee contracts in MDL cases is 1) generally permissible, and 2) proper in this case, or 3) whether it is an unwarranted, extra-statutory interference with contract rights that may have harmful effects on future cases, are serious legal questions, as this Court has already acknowledged.[23]

The VLC will suffer substantial and irreparable harm if it is forced to proceed with the Court's September 15 variance procedure before the Fifth Circuit determines fundamental and threshold issues of jurisdiction and authority. There is virtually no possibility that the Fifth Circuit will render a decision on the legality of the Court's fee reduction order before September 15. The VLC's appeal is aimed at 1) having its legal arguments against the reduction heard, 2) without being placed in the unnecessary position of having to litigate against its clients for the preservation of its contracts. Forcing attorneys to comply with the September 15 deadline effectively moots a major goal of the appeal. This constitutes irreparable harm.[24]

---

[21] *In re First South Sav. Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987).

[22] *Id.* (quoting *Ruiz v. Estelle*, 650 F.2d 555, 556 (5th Cir. Unit A June 1981)).

[23] Transcript of Dec. 19, 2008 Status Conference, pp. 6-7.

[24] *See In re Voluntary Purchasing Groups, Inc.*, 196 F.3d 1258 (5th Cir. 1999) (not selected for publication) ("Without a stay, the confirmed plan may begin to be consummated, and the Railroads' appeal will become moot.").

Although the Court may believe that a conflict exists between the VLC and its clients over the Court's invalidation of its contingent fee contracts,[25] the VLC respectfully asserts that there was no conflict between it and its clients when the contracts were made or thereafter; and, if it prevails on the merits in the Fifth Circuit, there is no reason to believe a future conflict will arise. Forcing attorneys to apply for variances from the fee limit before resolution of the appeal irreparably harms the VLC because it virtually forces the creation of a case or controversy where there is none. It is precisely this conflict that a successful appeal will avoid.

Furthermore, it is a waste of resources – this Court's and attorneys' – to litigate whether a departure from the Court's Order and Reasons is warranted on a case-by-case basis in perhaps thousands of cases prior to the Fifth Circuit's determination of the legality of the fee reduction order.

Granting the stay will not harm other parties. The Defendant, Merck, has no interest in this issue, as the Court has recognized.[26] The VLC's clients will not be harmed because, as noted above, the VLC will continue to make all possible distributions to its clients – except for the difference between 32% and the agreed-upon fee, which will be held in trust pending final resolution.

Granting the stay would serve the public interest. As noted above, it is a far more efficient use of public resources for the Fifth Circuit to decide once whether the order reducing fees is legal, than it is for this Court to proceed with possibly thousands of individual hearings and subsequent appeals. Furthermore, the VLC's appeal raises questions that will affect the way future mass torts cases are prosecuted. Courts long ago determined that contingent fee contracts

---

[25] Order and Reasons, pp. 7 & 18.

[26] Order and Reasons, p. 7.

serve the public interest by providing plaintiffs without resources access to courts by enabling attorneys with resources to bear the risk of an uncertain outcome.[27] The Court's Order and Reasons and the VLC's appeal raises questions of significant public interest, not the least of which is whether limiting fees of counsel for plaintiffs while allowing an unlimited war chest for wrongdoers is fundamentally unjust. A stay of the Court's variance procedure will maintain the *status quo* until the Fifth Circuit determines whether the Court's reasons are sufficient justification for overriding the established public interest in providing counsel for the injured.

## CONCLUSION

The VLC asks that this Court consider this motion on an expedited basis and, after consideration enter an order:

1) Certifying under 28 U.S.C. § 1292(b) that its Order and Reasons involve a controlling question of law as to which there is substantial ground for difference of opinion. The controlling question is: "Does a district court have jurisdiction and authority in non-class action multi-district litigation to reduce contingent fees set in private fee contracts that were reasonable when the contracts were made, after the risks of the litigation have been reduced to certainty through settlement?"; and

2) Entering a final judgment on the Order and Reasons under Rule 54(b) on the ground that this is an action involving multiple claims and multiple parties, that the Court's Order and Reasons completely disposes of the VLC's contingency fee contracts, and that there is no just reason for delay; and

3) Staying implementation of the Court's variance procedure pending the outcome of this appeal.

---

[27] *See Cappel v. Adams*, 434 F.2d 1278, 1280 (5th Cir. 1970).

Respectfully submitted,

/s/ *Harry S. Hardin III*
HARRY S. HARDIN III (# 6540)
MADELEINE FISCHER (# 5575)
ERIC MICHAEL LIDDICK (# 31237)
Jones, Walker, Waechter, Poitevent,
 Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8208
Facsimile: (504) 589-8208

JOHN J. McKETTA, III (Texas Bar No. 13711500)
BOYCE C. CABANISS (Texas Bar No. 03579950)
MATTHEW B. BAUMGARTNER
 (Texas Bar No. 24062605)
Graves Dougherty Hearon & Moody,
 A Professional Corporation
401 Congress Avenue, Suite 2200
Austin, Texas 78701
Telephone: (512) 480-5600
Facsimile: (512) 480-5816

*Attorneys for Walter Umphrey, John Eddie Williams, Jr., Drew Ranier, Mikal Watts, and Grant Kaiser ("Vioxx Litigation Consortium")*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon Liaison Counsels, Phillip Wittmann and Russ Herman, by U.S. Mail and e-mail, or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a Notice of Electronic Filing in accordance with the procedures established in MDL 1657 on August 13, 2009.

/s/ *Eric Michael Liddick*
ERIC MICHAEL LIDDICK