# APPENDIX   A

| V2082 | CLAIMS ADMINISTRATOR NOTICE OF INELIGIBILTY |
|-------|---------------------------------------------|

**CLAIMS ADMINISTRATOR NOTICE OF INELIGIBILTY**
**FOR PRO SE CLAIMANTS**
Date of Notice: 5/20/09
Deadline to Respond: 6/10/09

## I. CLAIMANT INFORMATION

| Claimant Name | Bell #k-6861, Danny Louis | | VCN | 1058986 |
|---------------|---------------------------|--|-----|---------|
| Primary Injury: | MI | Date of Injury: 4/1/04 | Secondary Injury: N/A | Date of Injury: N/A |

## II. CLAIMS ADMINISTRATOR DETERMINATION

This Notice of Ineligibility is an official notification from BrownGreer PLC, the Vioxx Claims Administrator. The Claims Administrator has determined that the Primary and/or the Secondary Injury do not meet the Eligibility Requirements for the Program because one or both does not pass the following Gate(s):

| | Gate | Primary Injury | Secondary Injury |
|--|------|----------------|------------------|
| 1. | Injury | [X] | [N/A] |
| 2. | Duration | [ ] | [N/A] |
| 3. | Proximity | [ ] | [N/A] |

If you alleged both a Primary Injury and a Secondary Injury in the Claims Form, both Injuries must pass the Gates before the Claim can be processed for Points review. If you alleged both a Primary Injury and a Secondary Injury and both do not appear on this notice as failing one or more Gates, the one that does not have any X's has passed the Gates. We cannot move forward on the claim that passed the Gates unless the failed claim is found to be Eligible by the Claims Administrator, the Gate Committee or the Special Master, or unless you decide to abandon the failed injury claim to permit the processing of the Eligible Injury.

## III. STATUS OF REQUIRED PME RECORDS

Section 1.3.1 and, by reference, Exhibit 1.3.1 require Pharmacy, Medical, and Event records, which, for eligibility determinations include a completed Claim Form, Event Records and Proof of Vioxx use. If any of the boxes below is checked, it is because the Claims Administrator has determined that your Claims Package did not include those required records. Without a completed Claims Form and both Event Records and Proof of Use, a claim may not pass the Eligibility Requirements.

| 4. | No Event Records Submitted | [ ] | [ ] |
|--|----------------------------|-----|-----|
| 5. | No Proof of Use Submitted | [ ] | |
| 6. | No Asserted Injury Date on Claims Form | [ ] | [ ] |

## IV. RIGHT TO SUBMIT ADDITIONAL INFORMATION

You must choose one of the following options within 21 calendar days after the Date of the Notice:

[ ] 1) I have no additional information to provide to the Claims Administrator. Send this Claim to the Gate Committee. See Section V below for a description of the Gate Committee and what it does;

[X] 2) I am submitting the enclosed new records and information to the Claims Administrator for a Secondary Review. Do not send information you previously submitted. The Claims Administrator will review any newly submitted information to determine if it renders the claim eligible. If the claim is eligible, we will send you a *Claims Administrator Notice of Eligibility*. If the claim is still failing, we will issue a *Claims Administrator Notice of Inelgibility after Receipt of Additional Claims Materials*. We will send the claim and all the newly submitted information to the Gate Committee. Any new documents submitted after the expiration of the 21-day period will not be included in your Claims Package for consideration by the Claims Administrator, Gate Committee or the Special Master. Finally, we may discover during Secondary Review that a Gate we passed during our first review should be a failing Gate. If that occurs, we will issue a *Claims Administrator Notice of Ineligibility after Receipt of Additional Claims Material*;

| | CLAIMS ADMINISTRATOR NOTICE OF INELIGIBILTY |
|---|---|
| · V2082 | FOR PRO SE CLAIMANTS |
| | Date of Notice: 5/20/09 |
| | Deadline to Respond: 6/10/09 |

☐ 3) I want to abandon my Primary Injury that failed Gates. This will make my Secondary Injury the only Injury considered for Points Review. This option is only available if you have alleged two injuries and the Primary Injury is failing Gates; or

☐ 4) I want to abandon my Secondary Injury that failed Gates. This will make my Primary Injury the only Injury considered for Points Review. This option is only available if you have alleged two injuries and the Secondary Injury is failing Gates.

If 21 days pass from the date of this Notice and you have not selected an option, we will send the claim and all information you have submitted to the Gate Committee, pursuant to Section 2.5 of the Settlement Agreement.

## V. GATE COMMITTEE REVIEW

The Gate Committee is comprised of three representatives appointed by Merck and three representatives appointed by the Negotiating Plaintiffs' Counsel. If your claim goes to the Gate Committee, it will review your submitted Claims Package and determine if you should be deemed a Qualifying Program Claimant who is eligible to receive benefits in the Settlement Program. If a majority of the Gate Committee decides that your claim is eligible, the Claims Administrator will notify you of that result and will then review the claim for Points Assessment. If the Gate Committee decides that your claim is not eligible, the Claims Administrator will send you a *Gate Committee Notice of Ineligibility*, which will outline the options available to you under the Settlement Agreement.

## VI. REQUIRED ACTIONS

Return this signed Notice with your selection to the Claims Administrator at one of the following addresses:

*Delivery Address:*
Claims Administrator
115 S. 15th Street, Suite 400
Richmond, Virginia  23219-4209

*Mailing Address:*
Claims Administrator
P.O. Box 85031
Richmond, Virginia 23285-5031

*If you do not submit the required materials by June 10, 2009, your claim will automatically be sent to the Gate Committee.*

If you have any questions, contact the Claims Administrator's Pro Se Coordinator, Diann Bates, at the above mailing address, toll free at (866)866-1729, by direct dial at (804)521-7220, by email at dbates@browngreer.com or by facsimile at (804)521-7299. You may also contact the Pro Se Curator, Robert M. Johnston, at (504)561-7799 or by email at cps@ahhelaw.com. By Order dated February 12, 2008, the Court supervising the Vioxx Settlement Program appointed the Pro Se Curator to provide assistance to Pro Se Claimants in connection with the Settlement Program.

Claimant Signature: _Danny Bell_        Date: 6/1/2009

Danny Bell #K-68611
F.S.P.
P.O. Box 950
Folsom, CA 95763

Re: Vioxx Claim Number (VCN) 1058986
<u>Claims Administrator Notice of Ineligibility</u>

Vioxx Claims Administrator

On the date of May 27, 2009, I received per U.S. Mail a letter from your office dated May 20, 2009, Informing of the Claims Administrators Notice of Ineligibility Determination that my Primary Injury do not meet the Eligibility requirements for the Program, fails because the Primary Injury does not pass the: (1) Injury gate.

<u>ADDITIONAL INFORMATION</u>

In concerns of additional Information or the Information necessary to state a Claim, the Claims Administrator has "not" afforded Claimant Bell a copy of the Master Settlement Agreement that Claimant Bell may know, exactly what is required of the MSA to meet Eligibility for the Program. The Claims Administrator's Inquiry for documentation of Eligibility for the Program has exhibited various sections of the MSA; Yet the only Information made available to Claimant Bell is from a letter dated December 12, 2007 from the PLC. Enclosed was

Document entitled "DESCRIPTION OF SETTLEMENT AGREEMENT" (DSA).

The "DSA" held that, "to qualify for Compensation in the Settlement Program (page 2): •MEDICAL records must confirm that the Eligible Claimant suffered

a heart Attack, Ischemic stroke, or sudden cardiac death: ...

(2.)   Claimant Bell is an inmate in the California Department of

Corrections and Rehabilitation. As so, The United States District

Courts has held that the conditions underlying the health care in these

overcrowded prisons is UNCONSTITUTIONAL. There is uncontroverted evidence

that, because of overcrowding, there are not enough clinical or custodial

personnel to insure that inmates with MEDICAL or MENTAL health needs

are receiving Appropriate treatment, are taking the medications that they

need to take, are being escorted to their MEDICAL Appointments in A timely

Manner, and are having their MEDICAL information recorded and filed

properly. (see Exhibit -A-)

As so, the Court herein should be put to the question as to whether

the injury caused on the Early Morning hours of April 1, 2004, were caused

by Vioxx or the Unconstitutional Medical conditions of Cal. Dept. of Corr. + Rehab.

2

Claimant Bell has dilligently submitted the Medical file as stationed in Folsom Prison Medical Files.

It is the practice of medical staff of Folsom Prison to not file records of traumbotic/medical events but to supply the record with the treatment received after the event or to record the prescribed medication. (see Medical file, submitted with "Plaintiff Profile Form.") (also see EXHIBIT-A- "Three Judge Court" Tentative Ruling.)

In Bell's files the Medical Technicians and the Dr., only recorded in the Medical file that Bell received new prescriptions on certain dates and the dates of the prescription's discontinuance.

This process has been ruled by the "Three Judge Court" as unconstitutional.

In Bell's Complaint and Demand for trial, Bell litigated how the Doctor and the Medical Technicians, consistantly assured Bell that Vioxx were not the cause of Bell's High Blood Pressure, the shivering of Bell' heart, and Lack of Red blood cells. Bell's sure that Vioxx is and were the cause of the incapacitating pain Bell felt in his heart chest area that incapacitated Bell to the degree that Bell could not even scream, move or make known

through the "MAN DOWN!" process of Alerting staff that an inmate is suffering a traumbotic event. Many a times it takes hours before the staff respond to such calls. Also in the Early Morning hours, when such events are responded too, the inmate would have to report his event to the Dr. which is allowed only during release from the cell during Morning Chow. There and only then can you go to Early Morning Medical Line. (see Bell's Medical File, P.P.F.)

Though the medication Vioxx did remedy the pain of BELL's Ostheo Arthritis. Had Bell KNOWN that the medication warned of said side effects including death by heart attack. Bell would had pursued LESS INVISAGE treatment or Medichtion. When Bell discontinued taking Vioxx, the shivering in Bell's heart DECEASED, Bell's blood pressure/COUNT subsided.

That Lack of Knowledge did cause Bell to suffer the addition of a traumbotic event under the perilous Unconstitutional conditions that Already Existed "in CDCR.

(3.)  The "Discription Of Settlement" document Led Bell to believe the "Settlement Program" WERE designed to disburse the 4.85 billion

4

· Merck set as the Settlement Range to accomodate 47,000 Plaintiffs.

(4.) Bell concede the Fact finding function of the Settlement Program unfounded, in that Bell has not received a copy of the "MSA" that Bell could make a unified and informed decision to participate in the Program. Bell is still dilligently pursuing a copy thereof the "MSA."

(5.) Bell, further concede the Administrative process of the Program is not a settlement claim of 4.85 billion to accomomodate the settlement range to 47,000 plaintiffs, But is a disposative Adjudication ... equivalent to (1.) A Jury Finding that "No facts of injury are litigated in the records evidence. (2.) A Motion to judgment, litigated by defendant Without Affording Claimant Bell, opportunity to contess... (3.) A Court dissmissal ~~based on uncontroverted~~ Fact of failure to state a claim.

(6.) Bell further concede that a trial with uncontroverted evidence that, because of overcrowing, there are not enough clinical or custodial personnel in CDCR to ensure that inmates with medical or mental health needs are receiving appropriate treatment, are taking the medications needed, are escourted to medical appointments

5

in a timely manner, and are having their Medical Information recorded and filed properly... is the cause of Bell's event not being recorded.

Had Claimant Bell been allowed (in a trial) to present said evidence, the outcome as compared to the Administrative Adjudi-cation of facts by the Program, would probably produce a new result. (see "EXHIBIT-A- "Three Judge Court, Tentative Ruling, No. CIV-S-90-0520)

(7.) Further, Bell was not of information or knowledge that he could file both a primary and secondary injury claim, in that Bell were not afforded notice of or the text of the "MSA".

Liaison Counsel informed Bell that a compromise settlement had been reached between parties Liaison Counsel, that Merck offered 4.85 billion settlement range to accomodate 47,00 plaintiffs.

Bell's participation in the program were based on the Contract submitted in the "Discription Of Settlement Agreement" submitted to Bell by Liaison Counsel for Plaintiffs, who made the agreement. Failure to not keep with the "Discription Of Settlement Agreement" and failure to provide Bell with Notice and the text of the Master Settlment Agreement before reaching

dispositive fact finding by Administrator of Program that, NO injury did Exist. Bell argues that said process by the Administrator would be A Commercial frustration where events were NOT reasonably forseeable and controllable by all parties. (U.C.C. § 2-613.)

Without the "MSA", Bell could not know that he could collaterally claim A primary and secondary injury. Without the "MSA" Bell could not know if further information were needed to prove a claim. Without a copy of the text of the "MSA" Bell could not know of a dispositive Adjudication being Authorized or taken by the Claims Administrator that would allow supporting Evidence submission by Bell.

In reading the "DSA", Bell could only understand the inquiries made for Eligibility for the program were for Liability Adjustments for the period of Time of Vioxx use and the consistency of usage through A 12 month period. That the $4.85 billion submitted by Merck for settlement only required properly Adjusted settlement range disbursement to 47,000 class plaintiffs. The reasons under which the record of Bell's full traumbotic Cardial Event are not professionally displayed in record evidence

7

in support of Bell's claim of injury, the "Three Judge Court, Tentative Ruling in Case No. CIV. S-90-0520 LKK JFM P held Unconstitutional".

Bell is not an Attorney, nor does Bell has the means at his disposal to cure the unconstitutionally declared record filing procedures of "CDCR" (California Department of Corrections and Rehabilitation).

The records does display Bell's request for change off Vioxx Medication. That request were made immediately after suffering the Cardial Event and were reported to the Dr. and Medical Technicians. Before the cardial event, Bell made many inquiries as to whether the cause of Bell's infirmities could be attributed to Vioxx, of which-due to the warnings then made available at said times, the Doctor and MTA, rightly conceded no warnings available, attributable to Vioxx.

The Cardial event made me aware of the need to inquire of the drug's dangerousness.

The nonprofessional and unconstitutional process in which "CDCR" record medical information is further displayed in record recordings of a recent medical event of April 27, 2009. Bell complained of urinating pure Blood. The Dr. diagnosed that the mixture of medications that

had been prescribed to Bell were the cause of Bell urinating blood. Yet the event, nor the diagnosis were recorded into record. The Dr. alerted the pharmacy after the event and diagnosis, to place warning labels on the future medication Bell received.

That process has been held unconstitutional. The of "CDCR medical staff not recording medical events are the primary cause of the decision reached by the Claims Administrator herein. Which warrants sound judicial interpretation. Bell is not an attorney and request deference of the fact finding process wherein the record fails to evidence injury.

The evidence presented as a whole substantiate's a finding of injury or this cause should be put before the Court to a Constitutional legal fact finding process to determine exactly who should be held liable.

For the foregoing reasons Bell feels the claim of injury should be allowed eligibility and Bell should proceed in the estimate the claims value through the grid point system.

Date June 1, 2009

Cordially Submitted

Danny Bell

DANNY BELL (Pro Se)
CLAIMANT

9

VIOXX Claims Administrator

Toll-Free Telephone: (866) 866-1729
Facsimile: (804)521-7299
claimsadmin@browngreer.com

| Mailing Address: | Delivery Address: |
|---|---|
| P.O. Box 85031 | 115 South 15th Street, Suite 400 |
| Richmond, Virginia 23285-5031 | Richmond, Virginia 23219-4209 |

July 22, 2009

**_By U.S. Mail_**

Danny Louis Bell #K-6861
F.S.P., 5-AB2-40
PO Box 950
Folsom, CA 95763

**Re: Gate Committee Notice of Ineligibility**
**Vioxx Claim Number (VCN): 1058986**

Dear Claimant:

Enclosed you will find a Gate Committee Notice of Ineligibility, which informs you that the Gate Committee has determined that your Primary and/or Secondary Injury fails one or more of the Gates and does not meet the Eligibility Requirements for the Settlement Program. Although the Gate Committee has determined that your claim is not eligible, you can still Appeal your claim to the Special Master or file a Future Evidence Stipulation. This letter will explain these choices in detail. If you Appeal your claim to the Special Master, you will not be able to submit any records that you have not previously submitted to the Claims Administrator. The Special Master's decision will be binding, final and Non-Appealable. If you decide to submit a Future Evidence Stipulation and it is timely and complete, the Claims Administrator will return your Release of All Claims and Stipulation of Dismissal to Merck. You may also choose to do nothing, which will result in the closing of your claim and delivery of your Release of All Claims and Stipulation of Dismissal to Merck. The following paragraphs are provided to help guide you through the enclosed Notice.

1.      Section I of the Notice provides the Claimant Information, which includes the name and VCN for the Vioxx User and the type and date of the Primary and, if claimed, the Secondary Injury.

2.      Section II of the Notice provides the Gate Committee's findings regarding why your Primary and/or Secondary Injury failed Gates. To be Eligible, an Injury must pass all three Gates (Injury, Duration and Proximity). A "X" appearing in any box in this section (Line 1, 2 and/or 3) indicates that the Primary and/or Secondary Injury failed the specified Gate. If you claimed both a Primary and a Secondary Injury, you are receiving this notice because the Gate Committee has determined that neither the Primary nor the Secondary Injury meet the Eligibility Requirements for the Program because they do not pass the identified Gates.

3.      Section III refers to the Claimant's Response to the Notice. You have two affirmative choices for responding to this Notice. Your two affirmative choices for continuing your claim are to:

the Program, the Claims Administrator will review it for Points.  If the Special Master finds that your claim is ineligible, the Claims Administrator will close your claim and deliver your Release and Stipulation to Merck.

     5.    Section V refers to the Future Evidence Stipulation.  If you choose the option to submit a Future Evidence Stipulation, you must certify the Claims Package materials you submitted to the Claims Administrator and complete the attached Future Evidence Stipulation. You must sign the Future Evidence Stipulation, have it notarized, and mail it to the Claims Administrator on or before the Deadline to Submit FES date that appears on your Notice.  Upon proper completion and delivery of the Future Evidence Stipulation, your Stipulation of Dismissal with Prejudice and Release will, subject to Section 2.7.3.1 of the Settlement Agreement, be returned to you.

     Pursuant to Pretrial Order No. 43, plaintiffs with cases pending in the United States District Court for the Eastern District of Louisiana as of November 9, 2007, must also produce within 30 days of serving a Future Evidence Stipulation on the Claims Administrator: 1) an Amended and Supplemental Plaintiff Profile Form, records requested therein, and executed Authorization for Release of Records pursuant to Pretrial Order 18A, B or C, as applicable; and 2) a Rule 26(a)(2) case specific expert report from a medical expert.  Pretrial Order 43 states that failure to comply with the terms of the order will result in the claim being dismissed with prejudice, except for good cause shown.

     If you were the subject of a Tolling Agreement and you choose the Future Evidence Stipulation option, you must 1) within 30 days of serving the Future Evidence Stipulation, produce a case specific expert report from a medical expert, 2) within 60 days of acceptance of your completed FES form, file a law suit, and 3) within 75 days of acceptance of the completed FES form, submit a copy of such lawsuit filing to the Claims Administrator.

     **If you do nothing or fail to return the Response to Gate Committee Notice of Ineligibility by the deadlines stated in this letter and on the Notice, your claim will be closed, and the Claims Administrator will deliver your Release and Stipulation of Dismissal to Merck.**

     If you have any questions, you may contact the Claims Administrator's Pro Se Coordinator, Diann Bates, at the above mailing address, toll free at (866) 866-1729, by direct dial at (804) 521-7220, by email at dbates@browngreer.com, or by facsimile at (804)521-7299. You may also contact the Pro Se Curator, Robert M. Johnston, at (504) 561-7799 or by email at ijr@ahhelaw.com.  By Order dated February 12, 2008, the Court supervising the Vioxx Settlement Program appointed the Pro Se Curator to provide assistance to Pro Se Claimants in connection with the Settlement Program.

     Sincerely,

     *Diann W. Bates*

     Diann Bates
     Pro Se Coordinator

Enclosures

| V2065A | **PRO SE CLAIMANT RESPONSE TO**<br>**GATE COMMITTEE NOTICE OF INELIGIBILITY**<br>**(Single Injury)**<br>**Date of Notice: 07/22/09**<br>**Deadline to Appeal to Special Master: 08/06/09**<br>**Deadline to Submit FES: 08/21/09** |
|---|---|

### I. CLAIMANT INFORMATION

| Claimant Name | Bell #K-6861, Danny Louis | | VCN | 1058986 |
|---|---|---|---|---|
| Primary Injury: MI | | Date of Injury: | 4/1/04 | |

### II.    GATE COMMITTEE DETERMINATION

This is an official Notice from BrownGreer PLC, the Vioxx Claims Administrator. The Gate Committee has determined this claim does not meet the Eligibility Requirements for the Program because it does not pass the following Gate(s):

| | Gate | Primary Injury |
|---|---|---|
| 1. | **Injury** | ☒ |
| 2. | **Duration** | ☐ |
| 3. | **Proximity** | ☐ |

### III. CLAIMANT'S RESPONSE TO THE NOTICE

In response to this Notice you have two affirmative choices for continuing your claim:

☐ **Appeal to the Special Master.** You must select this option on or before the Deadline to Appeal to Special Master date shown above. The Special Master's decision will be final and binding and, if the Special Master finds the claim Ineligible, the Claims Administrator will close your claim and deliver the Dismissal With Prejudice Stipulation and Release to Merck. You will not be able to submit materials to the Special Master on appeal that you have not previously submitted to the Claims Administrator.

☒ **Submit a Future Evidence Stipulation.** You must submit the Future Evidence Stipulation on or before the Deadline to Submit FES date shown above. Upon proper completion and delivery of the Future Evidence Stipulation, your Dismissal with Prejudice Stipulation and Release shall, subject to Section 7.2.3.1, be returned to you.

In response to this Notice, if you do not wish to continue your claim by Appeal to the Special Master or by submission of a Future Evidence Stipulation, check the box below. This will end your claim and the Claims Administrator shall deliver your Dismissal With Prejudice Stipulation and Release to Merck (and, without limitation, Merck shall be free to file or cause to be filed such Dismissal with Prejudice Stipulation and/or Release in any relevant action or proceeding.):

☐ **Neither Appeal to the Special Master nor Submit a Future Evidence Stipulation.**

*Note: If you neither Appeal nor submit a Future Evidence Stipulation on or before the respective deadlines shown above, the Claims Administrator shall deliver your Dismissal With Prejudice Stipulation and Release to Merck (and, without limitation, Merck shall be free to file or cause to be filed such Dismissal With Prejudice Stipulation and/or Release in any relevant action or proceeding.)*

**NOTE: After you have chosen one of these options, you may not change your response.**

EXHIBIT   B

## HERMAN, HERMAN, KATZ & COTLAR
L.L.P.
Attorneys at Law

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Morton H. Katz*
Sidney A. Cotlar*
Steven J. Lane
Leonard A. Davis*
James C. Klick†

Stephen J. Herman
Brian D. Katz
Soren E. Gisleson

Joseph E. Cain
Jennifer J. Greene‡
John S. Creevy
Joseph A. Kott, M.D. J.D. (Of Counsel)

Offices in New Orleans and
Covington, Louisiana

820 O'Keefe Avenue, New Orleans, Louisiana 70113-1116
Telephone (504) 581-4892    Facsimile (504) 561-6024
Http://www.hhkc.com

\* A Professional Law Corporation
† Also Admitted in Texas
‡ Also Admitted in Arkansas

This Firm and its Partners Are Also
Partners in Herman, Mathis, Casey,
Kitchens & Gerel, LLP

December 12, 2007

Re:   _In re: Vioxx Products Liability Litigation_
      **MDL 1657**

Dear Vioxx _Pro Se_:

After more than three years of hard-fought and difficult litigation, Merck has agreed to a settlement program to resolve certain Vioxx-related claims involving plaintiffs who have suffered a heart attack (including sudden cardiac death) or ischemic stroke. Merck has agreed to pay one sum, $4.85 billion, which will be allocated among thousands of qualifying claims based upon an evaluation of each claimant's individual medical records by a Claims Administrator. Details regarding the Settlement Program, including eligibility requirements and the claims valuation process, are enclosed. Also, for information regarding MDL 1657, you can visit the Court's website at www.vioxx.laed.uscourts.gov.

## I.   PARTICIPATION

You may want to retain an attorney. Alternatively, you can continue to represent yourself as a _pro se_ litigant or claimant. Although we make no recommendation to you since you are not a client of our firm, you may desire to participate in the Program.

Please consider the following facts:

- Vioxx was withdrawn from the U.S. market on September 30, 2004. Currently, there are approximately 26,000 Vioxx injury lawsuits pending in the State and Federal Courts on behalf of approximately 47,000 claimants. To date, only 18 Vioxx cases have been tried, resulting in 15 verdicts. Of these verdicts, plaintiffs have won 5 cases and Merck has won ten (10). Three cases are awaiting a new trial. Merck has appealed or otherwise challenged each of the five cases in which the plaintiff was victorious, and all of those appeals are still pending. The estimated cost to the plaintiff to try any one of those cases can range from $400,000 to over one million dollars. Thus, any case that proceeds to trial is likely to be very expensive and will take far longer to resolve than a claim processed under the proposed settlement plan.

*Claims Administrator*
*11 S. S. 15ᵗʰ Street*
*Suite 400*
*Richmond, VA 23219-4209*

December 12, 2007
PAGE 2

- In each of the cases that have proceeded to trial, Merck has defended itself by claiming that the plaintiff had certain common "risk factors" for cardiovascular disease that caused the plaintiff's injuries, rather than their ingestion of Vioxx. These "risk factors" include but are not limited to: high blood pressure, high cholesterol, atherosclerosis (pre-existing undetected heart disease), smoking, diabetes, obesity, family history of heart attack or stroke, and age. The presence of any of these conditions has tended to either reduce or bar the plaintiffs from recovery in many of the cases that have gone to trial.

- To date, not even the five plaintiffs who prevailed in Court have received their awards. The first verdict in favor of a plaintiff was in August 2005, more than two years ago. Merck has not yet paid any of these verdicts and it has no legal obligation to do so unless and until all appeals are exhausted and the verdict in favor of the plaintiff is upheld. It can be expected that Merck will appeal any verdict against it in the future, making the time to payment of any judgment far longer than that proposed for the payment of claims under the settlement plan.

- If Merck insists on taking each individual case to trial, including your case, it could take decades to obtain verdicts in all the Vioxx-related cases currently pending against Merck, and additional years for Merck to exhaust its appeals in cases in which the plaintiff prevailed.

- At this time, the United States Supreme Court and other courts are considering cases that could result in changes in the law that would limit the ability of a plaintiff to recover against a drug company, when their drug was approved for marketing by the FDA. One United States Supreme Court case will be heard early in 2008. A negative result in that case or one or more of the other cases could extinguish your claim for damages but will not affect any award made under the settlement plan.

Participation in the Settlement Program provides an opportunity for you to receive fair compensation for your Vioxx claims in the foreseeable future.

II.    <u>**WHAT YOU NEED TO DO RIGHT NOW**</u>

If you choose to participate in this Settlement Program, you should <u>carefully review</u> all of the enclosed documents, and then sign and return the enclosed *Pro Se Registration*

December 12, 2007
PAGE 3

*Affidavit.*  You can complete the *Pro Se* Registration Affidavit either online by downloading a copy from the Claims Administrator's website located at  www.browngreer.com/vioxxsettlement or alternatively by requesting that one be e-mailed to you from the Claims Administration at 115 S. 15th Street, Suite 400, Richmond, VA 23219-4209, Main Number: (804) 521-7200 and e-mail claimsadmin@browngreer.com.

You must sign and date the Registration Affidavit and file it with the Claims Administrator timely.

If you have access to e-mail, you must serve the *Pro Se* Registration Affidavit no later than January 15, 2008 by sending an e-mail (with the     *Pro Se* Registration completely filled out and signed as an attachment) to the following:

    a.    Merck at registration@hugheshubbard.com
    b.    The PEC at vioxx@hhkc.com
    c.    The Claims Administrator at claimsadmin@browngreer.com

If you do not have e-mail and will be submitting the *Pro Se* Registration Affidavit by mail, it must be postmarked no later than January 8, 2008 and sent to Claims Administrator, 115 S. 15th Street, Suite 400, Richmond, VA 23219-4209.

A.  **What happens if Merck Opts Not to Fund the Settlement**?

Please note, however, that Merck has the option not to fund the Settlement Program and to terminate the Settlement Program if a minimum number of potentially eligible Claimants nationwide does not agree to participate.  In the event of such a termination by Merck, any Release you sign in the future would be void, your claim would return to the tort system, and you would be returned essentially to the same position you are in today.

B.  **How much is my Claim Worth?**

At this time no one can tell you or any other Claimant what your precise settlement value will be under the Settlement Program. This is because the settlement fund for Claimants alleging a heart attack/myocardial infarction ("MI") under the Settlement Program is limited to $4 billion, and the settlement fund for Claimants alleging a stroke is limited to $850 million, from which all potentially eligible, participating claimants must be paid.

December 12, 2007
PAGE 4

The *Claims Administrator* will not be able to determine the precise value of any claim until he knows: (a) how many of the potentially eligible Claimants nationwide will be participating in the Settlement Program; and (b) what each participating Claimant's medical records state regarding each Claimant's injury type, level of injury, duration of Vioxx use, and certain other aspects of the Claimant's Vioxx use and medical history that would be expected to affect the value of the Claimant's claim within the tort system.

Participating Claimants' precise settlement values will not be known until that process is complete. Although, an interactive website is available at www.OfficialVioxxSettlement.com for you to input basic information about your claim to determine an *estimate* of its settlement value based on the information you input, you must be aware that this is only a rough estimate. Only the Claims Administrator can accurately determine the amount of any settlement value and his determination will be based on the actual medical records submitted on your behalf. The information found in your medical, pharmacy and other records are what will govern the valuation process and what the Claims Administrator will use. For instance, a potential Claimant may believe that he or she never had high cholesterol and may answer the question about this risk factor "No" but if his/her records show high cholesterol – the records govern.

### C.  How long will this take?

Due to the volume of cases to be reviewed by the *Claims Administrator*, we anticipate that the claim review and valuation process will take at least two years.

### D.  Are there any benchmark for when payments will be made?

The Settlement Program provides that an initial payment of approximately forty percent (40%) of a qualifying Claimant's *estimated* final gross settlement value as determined by the Claims Administrator will be made to each participating Claimant whose properly executed Release and medical records are timely submitted to the Claims Administrator. The remainder of a Claimant's final gross settlement value will be paid when all qualifying, participating claims nationwide have been fully processed, which is currently expected to be in approximately one to two years.

### III.   FACTORS TO CONSIDER

**The decision whether to participate in the Settlement Program is yours to make.** If you agree to participate, please note that by doing so you are agreeing both to give up your right to a

December 12, 2007
PAGE 5

trial against Merck and to accept the settlement value that your claim will be accorded through the Settlement Program.

As you know, trial is risky because you could win or lose you case against Merck. If you go to trial, the jury could award you more, less, or no money from this Defendant. In addition, even if you are successful at trial, a Defendant always has the right to appeal your jury award. The appeal process may take several years to complete and will result in additional costs and expenses in your case. Any monies awarded by the jury cannot be paid to you until the appeal process is complete and a finding has been made in your favor. Further, an appeal could also result in a new trial being ordered and the entire litigation process would then start over again. Further, any award will be reduced by the cost/expenses incurred in handling your case and these could be substantial. Thus, provided you have a qualifying claim, there is little doubt that you will receive compensation for your claim more quickly under the Settlement Program than through the tort system.

The enclosed *Description of Settlement Program* explains the Program in more detail. Also enclosed is a checklist to assist you in registering your claim timely.

Please remember that you must keep the terms of this Settlement Program, including the estimated amount of your settlement, confidential.

IV.    **WHAT DO YOU NEED TO DO NOW?**

If you desire to participate in the Settlement Program, you need and return to the Claims Administrator the *Pro Se* Registration Affidavit and immediately send the original signed documents to the Claims Administrator at the address set forth in Section II above.

Very truly yours,

HERMAN, HERMAN, KATZ & COTLAR, LLP

HHKC/lmf
Enclosures

# DESCRIPTION OF SETTLEMENT AGREEMENT[1]

Merck & Co., Inc. ("Merck") has entered into a Settlement Agreement ("Agreement") with certain plaintiffs' counsel ("Negotiating Plaintiffs' Counsel") in order to establish a nationwide settlement program to resolve the claims of certain individuals who have suffered a heart attack, stroke, or sudden cardiac death resulting from their use of Vioxx (the "Vioxx Claimant(s)").

## Activation of the Settlement Program

In order for claims to be paid under the Settlement Program, counsel representing Vioxx Claimants must file with the relevant court no later than January 15, 2008, a Registration Affidavit for every Vioxx client they represent as primary counsel, regardless of whether the client suffered a heart attack, ischemic stroke, or sudden cardiac death, resulting from Vioxx. The Registration Affidavit will contain basic information about each client and the injury the client alleges.

After the Registration Affidavits have been submitted, the Claims Administrator will calculate the total number of Vioxx Claimants that are eligible to participate ("Eligible Claimants") in the Settlement Program. A Vioxx Claimant will be considered eligible to participate in the Settlement Program if:

- prior to November 9, 2007, the Claimant has filed a Vioxx lawsuit pending in any jurisdiction or a Vioxx claim that was tolled under the Tolling Agreement established by the MDL Court; and
- the Claimant alleged in his/her lawsuit or tolling paperwork that the Claimant (or the Deceased or minor for whom the Claimant is the Legal Representative) suffered a heart attack, ischemic stroke, or sudden cardiac death as a result of Vioxx ingestion.

In order for the Settlement Program to be activated and for Merck to be required to fund the settlement, at least 85% of all Eligible Claimants must agree to participate in the Settlement Program. All documents necessary for a Vioxx Claimant to participate in the Settlement Program must be submitted to the Claims Administrator by March 1, 2008. Sufficient numbers of Eligible Claimants from each of the following categories must agree to participate in the Settlement Program in order for the Program to be Activated:

- Vioxx Claimants registered as alleging a heart attack or myocardial infarction ("MI Eligible");
- Vioxx Claimants registered as alleging a stroke or other qualifying ischemic cerebrovascular event ("IS Eligible");
- Vioxx Claimants registered as alleging use of Vioxx for more than 12 months prior

---

[1] This Description of Settlement Agreement is an overview and is meant as a summary to describe the Settlement Program only in a general way. For a complete description, it is necessary to refer to the specific terms of the settlement documents themselves.

to a qualifying heart attack ("MI") or qualifying stroke ("IS");
- Vioxx Claimants registered as alleging death as an injury.

## Eligible Claimants - Required Documents

The following documents (the "Claims Package") must be submitted to the Claims Administrator in order for an Eligible Claimant to participate in the Settlement Program:

- a Release and Dismissal Stipulation, signed by the Eligible Claimant (and, under some circumstances, by any other individual who may have an interest in the claim ("Derivative Claimant") must be submitted to the Claims Administrator by the Eligible Claimant's lawyer no later than February 29, 2008; and
- medical records documenting the injury ("Event Records"), including a death certificate and autopsy report (if performed) in death and/or sudden cardiac death cases, follow-up medical records, and records documenting Vioxx usage, (together, the "Claims Package") all must be submitted no later than July 1, 2008.

## Qualifying for Compensation in the Settlement Program

In order for an Eligible Claimant to qualify for compensation through the Settlement Program, the following threshold criteria must be met:

- medical records must confirm that the Eligible Claimant suffered a heart attack, ischemic stroke, or sudden cardiac death; and
- medical or pharmacy records must establish that the Eligible Claimant received at least 30 Vioxx pills within 60 days prior to the injury; and
- medical or pharmacy records must confirm that Vioxx was being used by the Eligible Claimant within 14 days of the Vioxx-related heart attack, ischemic stroke, or sudden cardiac death.

**Please note that there is no need for an Eligible Claimant to contact his/her attorneys regarding proof of medical condition or Vioxx use. An Eligible Claimant's Primary Counsel will contact the Eligible Claimant if further information is needed.**

A determination by the Claims Administrator that an Eligible Claimant does not qualify for payment through the Settlement Program will be reviewed by a Committee. The Claims Administrator shall give written notice of the Committee's decision to the relevant Eligible Claimant's Primary Counsel.

If the Eligible Claimant is determined not to qualify for payment under the terms of the Program, the Eligible Claimant may (a) return to the tort system and receive back the Release and Dismissal Stipulation, upon the submission of a Future Evidence Stipulation to the Claims Administrator; or (b) take no action for thirty (30) days, after which the Eligible Claimant's Vioxx case shall be dismissed; or (c) appeal the negative determination to the Special Master, who will

undertake a de novo review of the Eligible Claimant's complete Claims Package. If the Eligible Claimant appeals the negative determination to the Special Master and loses the appeal, the Eligible Claimant's case shall be dismissed and the Eligible Claimant shall have no further rights under the Settlement Program or in the tort system. If the Eligible Claimant wins his/her appeal to the Special Master, the relevant claim shall be submitted to the Program's valuation process.

If an Eligible Claimant is determined by the Claims Administrator, Committee, or Special Master to qualify for payment under the Settlement Program (the "Qualifying Claimant"), the value of the claim will then be assessed by the Claims Administrator using a grid point system. Claims shall be evaluated by the Claims Administrator in the order in which the Claims Administrator receives a complete Claims Package.

## Valuation Process for Qualifying Claims

A point system is being used in order to ensure that the valuation of claims is consistent across similarly situated Qualifying Claimants and reflects the likely relative value of each claim within the tort system. Once the total number of Qualifying Claimants is known, as well as all Qualifying Claimants' verified injury levels and risk factors, the Claims Administrator will be able to determine the precise dollar value of each valuation point. To determine the precise dollar value of each MI point, the Claims Administrator will divide the total number of points awarded to Qualifying Claimants who alleged a heart attack or sudden cardiac death into the total MI Aggregate Settlement Amount of approximately $4 billion. Similarly, the total number of points assigned to Qualifying Claimants who alleged an ischemic stroke or death from stroke will be divided into the total IS Aggregate Settlement Amount of approximately $850 million to determine the precise dollar value of each IS point.

Under the point system, the Claims Administrator will be individually evaluating the medical records in support of each Qualifying Claimant along several dimensions. The claim will first be assigned a base point total, which will reflect the Qualifying Claimant's injury type (i.e., MI or IS), level of injury within the injury type, age at the time of the MI or IS, and duration of Vioxx use. Claims involving longer Vioxx use, a younger Vioxx Claimant, and a more severe injury will be assigned more points than claims involving briefer Vioxx use, an older Vioxx Claimant, and a less severe injury.

Each Qualifying Claimant's base point total will then be adjusted by the Claims Administrator based on various standardized liability adjustments and risk factor adjustments. These adjustments reflect aspects of the Qualifying Claimant's Vioxx use and medical history that would be expected to affect the value of the Qualifying Claimant's claim within the tort system, and will be based upon a Qualifying Claimant's Event Records, follow-up records, and any Profile Form submitted to Merck or the Court.

The liability adjustments are:

- consistency of the Qualifying Claimant's Vioxx usage in the twelve (12) months

preceding the Event; and

- whether the Qualifying Claimant's Vioxx use and the MI or IS occurred prior to March 9, 2000, between March 9, 2000 and April 11, 2002, or after the April 11, 2002 label change.

The <u>risk factor adjustments</u> are:

- smoking history
- high cholesterol
- hypertension
- diabetes
- obesity
- family history of heart attack or ischemic stroke or other ischemic event
- alcohol abuse
- heart attack or coronary artery bypass surgery (CABG) before starting Vioxx
- coronary artery disease (CAD) before starting Vioxx
- illicit drug use within 5 years of the event
- diagnosed vascular diseases before starting Vioxx
- stroke or TIA (transient ischemic attack) before starting Fioxx (IS cases only)
- carotid artery disease or carotid artery procedure before starting Vioxx (IS cases only)
- atrial fibrillation or heart failure before starting Vioxx (IS cases only)
- migraine headaches (IS cases only)
- use of hormone replacement therapy within 1 month of event if initiated within 1 year of event (IS cases only)
- vigorous exercise within two hours of event
- total joint arthroplasty or other major surgery within 5 days of event
- head trauma within 5 days of event (IS cases only)

The Claims Administrator shall notify each Qualifying Claimant of his/her total point award. A Qualifying Claimant may appeal that award to the Special Master, who shall undertake a de novo review of the claim; this means that the number of points accorded the claim by the Special Master may increase, decrease, or stay the same relative to the number of points originally awarded by the Claims Administrator. The decision of the Special Master shall be final, binding, and non-appealable.

Because, as explained above, each Qualifying Claimant's total number of points is ultimately subject to determination by the Claims Administrator upon a review of the Qualifying Claimant's medical and other records, and because the precise dollar value of each MI and IS point cannot be known with certainty until the total number of points of all Qualifying MI and IS Claims is known, the precise settlement value of a claim cannot be known at this time. In the meantime, however, a Vioxx Claimant may calculate the *approximate likely range* of values for his/her claim, assuming that the claim qualifies, by completing the <u>questionnaire</u> available on the internet at <u>www.OfficialVioxxSettlement.com</u>. This website was set up by the Plaintiffs' Negotiating

Committee to assist in evaluating and understanding the Settlement Program. In addition, two examples of Claims Valuation calculations are attached to this "Description of Settlement Agreement."

## Total Value of Settlement and
## Number of Potentially Qualifying Claimants

The total gross payments to be made to Qualifying Claimants under the Agreement is $4.85 billion, with approximately $4 billion of that sum to be allocated among MI Qualifying Claimants and approximately $850 million of that sum to be allocated among IS Qualifying Claimants. At the present time, there are estimated to be approximately 29,000 potentially eligible Claimants nationwide alleging MI, and approximately 17,000 potentially eligible Claimants nationwide alleging IS.

In addition to the above funds, Merck shall deposit an initial $3 million into an Administrative Expense Fund to pay for the claims evaluation and other processes under the Settlement Agreement. In addition, the net investment earnings on the funds deposited by Merck into each of the MI and IS Settlement Funds shall be periodically transferred by the Escrow Agent to the Administrative Expense Fund.

## Payment of Qualifying Claims

Interim Settlement Payments

Qualifying Claimants who have submitted a properly and fully executed Release no later than February 29, 2008, and who are not eligible for a Fixed Payment (see below) shall be eligible for an Interim Payment. No Interim Payment to any Qualifying MI or IS Claimant shall be less than $5,000.00.

The amount of such Interim Payments for MI claims shall be determined by the Claims Administrator after approximately August 1, 2008. The Claims Administrator shall estimate the total number of points that will ultimately be awarded to all Qualifying MI Claimants, and the estimated value of each MI point. Interim payments in the amount of 40% of each Qualifying MI Claimant's gross estimated Final Settlement Payment shall be made on a rolling basis.

Similarly, the amount of such Interim Payments for Qualifying IS Claimants shall be determined by the Claims Administrator after approximately February 1, 2009. The Claims Administrator shall estimate the total number of points that will ultimately be awarded to all Qualifying IS Claimants, and the estimated value of each IS point. Interim payments in the amount of 40% of each Qualifying IS Claimant's gross estimated Final Settlement Payment shall be made on a rolling basis.

The per-point value of Interim Payments may change as more claims are processed and better

information is available regarding the likely ultimate value of each MI and IS point.

Fixed Payments

Qualifying Claimants who are notified by the Claims Administrator that their total MI or IS points are less than a specified amount shall have the option to receive a gross Fixed Payment of $5,000 instead of the (likely much smaller) award they would receive if all appropriate risk factor and liability adjustments were made to their base point total. Qualifying Claimants eligible for the Fixed Payment who do not choose to receive the Fixed Payment shall receive de novo review of their claim by the Special Master. The Special Master shall award 0 to 5 points to each such MI claim, and shall award 0 to 1 point for each such IS claim, and the determination of the Special Master shall be final and non-appealable.

Extraordinary Injury Payments

Qualifying Claimants who would like their claim to be considered as an Extraordinary Injury may apply through their Primary Counsel to receive an Extraordinary Injury Payment ("EI Payment"). Such Qualifying Claimant may be eligible for an EI Payment if: (a) the Qualifying Claimant is not eligible for a Fixed Payment; and (b) the Qualifying Claimant has specified, documented, economic damages of at least $250,000. Such damages include the Qualifying Claimant's past or future out-of-pocket medical expenses and the Qualifying Claimant's past lost wages to the extent that such expenses or lost wages are the result of the Qualifying Claimant's heart attack or stroke and have neither been reimbursed nor are eligible for reimbursement from any other source.

Each Qualifying Claimant who qualifies for, and timely applies for, an EI Payment shall receive such a payment in an amount to be based on criteria to be determined by the Claims Administrator, not to exceed $600,000 for economic damages. Any such EI Payment shall be in addition to the Qualifying Claimant's Final Payment (see below). EI Payments for all Qualifying MI Claimants shall not in the aggregate exceed $195 million; EI Payments for all Qualifying IS Claimants shall not in the aggregate exceed $105 million. All proposed EI Payments shall be reduced pro rata if necessary to meet these restrictions.

Final Payment

After, and only after, (i) all Qualifying Claimants have completed the claims valuation process and all points awards have become final; and (ii) all possible Fixed Payments and Extraordinary Injury Payments have been determined; and (iii) all audits have been completed, the Claims Administrator shall determine the MI and IS Point Values.

The total gross value of each Qualifying MI and IS Claimant's claim can then be determined by multiplying the Qualifying Claimant's total number of points by the MI or IS Point Value, as appropriate. The final gross payment to be made to each such Qualifying Claimant shall be the total value of the claim, minus any Interim Payment made to the Qualifying Claimant. In addition, the

Final Payment shall be made only when the Claimant and his/her Primary Counsel represent and warrant that any and all Vioxx-related Governmental Authority (e.g., Medicare and Medicaid) liens that exist on the Qualifying Claimant's settlement monies have been satisfied and discharged.

## Attorneys' Fees and Litigation Costs and Expenses

The attorney's fees to be paid by each settling Qualifying Claimant to his/her individual attorney(s) shall not exceed those set forth in the Qualifying Claimant's attorney-client contract. In order to compensate the "Common Benefit Attorneys" who developed the Vioxx litigation against Merck and ultimately negotiated the Settlement Program, an assessment of common benefit attorneys' fees will be imposed at no more than 8% of the gross amount recovered for every Qualifying Claimant who is registered under the terms of the Agreement.  This attorneys' fees assessment shall not increase the total attorneys' fees payable by any Qualifying Claimant, but shall be deducted from the total amount of attorneys' fees payable by each Qualifying Claimant under his/her individual attorney-client contract.

The total expenses to be reimbursed by each settling Qualifying Claimant will include case-specific expenses and general expenses (consistent with the terms of the Qualifying Claimant's individual attorney-client contract), as well as common benefit expenses.  Case-specific expenses are those that benefit a specific client (e.g., the costs of obtaining a particular client's medical or pharmacy records).  General expenses are those that benefit a larger group of clients represented by the same attorney (e.g., the fees paid a medical expert), and are allocated equally or on a pro-rata basis (depending on the terms of the individual attorney-client contract) across the group of benefitted clients.  Common benefit expenses are those incurred by the Common Benefit Attorneys in their work on behalf of Vioxx Claimants nationwide, and shall be as approved by the Claims Administrator.

## Irrevocability of the Submission of a Release

**Submission of a Release by an Eligible Claimant or the Eligible Claimant's Primary Counsel is irrevocable.**  No Eligible Claimant may under any circumstances or for any reason request the return of his/her Release or Dismissal Stipulation, or otherwise unilaterally exit the Settlement Program, unless specifically provided for in the Settlement Program Agreement.

**By submitting the Release, the Eligible Claimant is agreeing to be bound by all terms and conditions of the Settlement Program, including agreeing to accept the final value accorded the Eligible Claimant's claim under the Program's claim valuation process, if the Eligible Claimant qualifies for compensation through the Settlement Program.**

# PROOF OF SERVICE BY MAIL

I, Danny Bell, AM A RESIDENT OF FOLSOM STATE PRISON IN THE COUNTY OF SACRAMENTO, STATE OF CALIFORNIA. I AM OVER THE AGE OF 18 YEARS, AND I AM /AM NOT A PARTY TO THIS ACTION.

MY PRISON NUMBER IS: K-68611

MY PRISON ADDRESS IS: **P.O. BOX 950, Folsom, Ca. 95763**

ON AUGUST 12, 2009, I SERVED A COPY OF THE FOLLOWING DOCUMENT:

"FUTURE EVIDENCE STIPULATION"

PLAINTIFF DANNY BELL, NOTICE AND MOTION FOR REQUEST FOR RELIEF FROM JUDGMENT (F.R.Civ.P §60(b)(2),(3), for REFORMATION/ REQUEST FOR TRIAL.

ON THE FOLLOWING PARTIES BY PLACING THE DOCUMENTS IN A SEALED ENVELOPE WITH POSTAGE FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO PROVIDED AT FOLSOM STATE PRISON (MAILBOX RULE), FOLSOM, CALIFORNIA, ADDRESSED AS FOLLOWS:

Clerk
U.S. District Ct
Eastern Dist. of Louisiana
500 Poydras St. Rm. C-151
New Orleans LA. 70130

Vioxx Claims Administrator
P.O. Box 85031
Richmond, Virginia 23285-5031

Stone Pigman Walter Wittman L.L.C
546, Carondelet St.
New Orleans, LA. 70130-3588

Herman Herman Katz & Cotlar
820 O'Keefe Ave
New Orleans, LA 70113-1116

THERE IS DELIVERY SERVICE BY THE UNITED STATES MAIL AT THE PLACE SO ADDRESSED, AND/OR THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO ADDRESSED.

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED AUGUST 12, 2009, AT FOLSOM, CALIFORNIA..



Daisy Bell + K-18841
Fol. P     5/02/08
P.O. Box 950
Folsom, CA 95763

— CONFIDENTIAL —
LEGAL MAIL

CLERK OF COURT
UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF LOUISIANA
500 Poydras St     Rm. C-151
New Orleans, La. 70130