```
 1                 UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF LOUISIANA

 3

 4

 5   IN RE:  VIOXX PRODUCTS        *        Docket MDL 1657-L
          LIABILITY LITIGATION       *
 6                                   *        August 21, 2009
                                     *
 7                                   *        9:00 a.m.
     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

 8

 9
                       MOTIONS BEFORE THE
10                 HONORABLE ELDON E. FALLON
                   UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13

14   For the Plaintiffs:        Herman Herman Katz & Cotlar
                                 BY:  RUSS M. HERMAN, ESQ.
15                                    LEONARD A. DAVIS, ESQ.
                                 820 O'Keefe Avenue
16                               New Orleans, Louisiana 70113

17   For the Plaintiffs:        Beasley Allen Crow Methvin
                                   Portis & Miles
18                               BY:  ANDY D. BIRCHFIELD JR., ESQ.
                                 234 Commerce Street
19                               Post Office Box 4160
                                 Montgomery, Alabama 36103
20

21   Official Court Reporter:   Toni Doyle Tusa, CCR, FCRR
                                 500 Poydras Street, Room B-406
22                               New Orleans, Louisiana 70130
                                 (504) 589-7778
23

24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer.
```

1          **PROCEEDINGS**

2          **(August 21, 2009)**

3          **THE DEPUTY CLERK:**  Everyone rise.

4          **THE COURT:**  Be seated, please.  Good morning, ladies

5    and gentlemen.

6               Call the case, please.

7          **THE DEPUTY CLERK:**  MDL 1657, *In Re: Vioxx*.

8          **THE COURT:**  Counsel make their appearance for the

9    record, please.

10         **MR. HERMAN:**  May it please the Court.  Russ Herman

11   for the PSC.

12         **THE COURT:**  I notice there are a number of other

13   attorneys in the audience and, also, I have a number of people

14   on the phone.  I have two motions before me today.  I'll take

15   them up one at a time.

16              The first motion is for an order setting a

17   procedure for attempted liens.  In a matter of this sort, where

18   we have so many claimants, it's not unusual that perhaps one or

19   more would choose to change lawyers in midstream.  In that type

20   situation, the first attorney might have incurred some costs

21   and also might have logged some time and participated in the

22   litigation during the time that he or she was handling the

23   case.  That attorney might feel that they are entitled to and

24   they may well be entitled to recover some attorneys fees and

25   reimbursement of costs.  Therefore, they might have filed a

1   lien for that amount or at least notified the claims

2   administrator.  The issue is how do we deal with that type

3   situation.

4           I've discussed the matter with counsel and also

5   with the lien administrator, and the lien administrator has

6   filed a motion suggesting a procedure.  The procedure,

7   basically, is to give everybody notice of the potential lien

8   and then to instruct the funds distributor to hold a certain

9   amount of money in escrow.  The amount of the fee would be

10  32 percent and costs that are claimed.  That would be held in

11  escrow.  The other amounts, which are the amounts due the

12  client, would be then sent to the attorney with instructions to

13  distribute that amount to the client.

14          The purpose, of course, is to get the funds to

15  the clients as quickly as possible and then later deal with any

16  liens or attorneys fees.  We don't want to hold up the whole

17  procedure pending resolution of these liens.  If the lien can

18  be resolved and the claims administrator advised of it, then he

19  will go ahead and release the rest of the funds.  If it cannot

20  be resolved, then it will be presented to the Court for

21  resolution.

22          I haven't determined yet, but depending upon the

23  number of liens that I have and scheduling, I will either do it

24  myself or I will appoint an individual to deal with the liens.

25  It can be done by either taking evidence in person or in

1  documentary form, and then the appointed person would give me a

2  report.  I would then publish the report to the appropriate

3  parties, hear any arguments or objections they have, and make

4  the resolution of it.  This motion deals with the first part of

5  it, that is to say, getting the money to the individual

6  claimants as quickly as possible and reserving those funds for

7  later distribution.

8           I put this out on the Web site.  We received

9  some suggestions; not objections but suggestions.  These were

10 forwarded to the claims administrator.  He then made the

11 appropriate changes to take into consideration the suggestions.

12 We posted the final version, and I noticed it for hearing

13 today.

14           Any objections from anyone, either in the

15 audience or otherwise?  Any person wish to comment?  Hearing

16 none, I will go ahead and execute the order.

17           The next item on the agenda is the motion to

18 award plaintiffs common benefit reimbursement costs.  I have

19 received and met several times with Mr. Phil Garrett, the

20 Court-appointed CPA, who has favored me with a number of drafts

21 of the costs.  It was a work in progress for some period of

22 time.

23           We have now reached the point where we can say

24 that there are certain costs that Mr. Garrett agrees satisfy

25 the requirements of the Court order dealing with costs.  The

1    plaintiffs committee agree that these are appropriate costs in

2    accordance with the Court order, and the individual or entity

3    who has the costs also agrees that these are the appropriate

4    costs.  In that situation I will issue an order that the costs

5    be paid.

6                    There are some, however, in the second category

7    that either the CPA or the plaintiffs committee or the

8    individual who expended the costs are still discussing the

9    matter, they have not reached resolution, or they have

10   disagreed.  With regard to those individuals, I'm going to hold

11   the total costs of those individuals.  To make it clear, if a

12   person says that they are owed $100,000 and $90,000 is agreed

13   to, $10,000 is not agreed to, I'm going to hold the whole

14   $100,000.  I'll get to that as quickly as I possibly can to

15   resolve it.

16                   With regard to those costs, I can do it either

17   one of two ways again.  If it's a smaller number, I can do it

18   myself shortly thereafter.  If there are a number of them, then

19   I'm going to have to appoint an individual to deal with it and

20   to give me a report and recommendations.  A special master

21   would be appointed by me.  The individual would also have the

22   authority to hire an attorney.  They would take evidence if

23   evidence needs to be taken and review documents if documents

24   need to be reviewed.  They would also have access to a CPA to

25   deal with that.  The cost of that will come out of the disputed

1   amounts.  They would make a recommendation to me.  Again, I
2   would publish the recommendation, invite any objection to the
3   recommendation, hear any argument on it, and make the
4   resolution.
5                I have a motion.  The plaintiffs committee have
6   taken another position.  They are taking the position the Court
7   ought to distribute all undisputed funds.  So with my example
8   of $100,000 owed and $90,000 agreed to, $10,000 not, the
9   plaintiffs committee would have the Court distribute the
10  $90,000 and hold the $10,000.  I understand their position.
11  They have fought hard on it.  I disagree with it, so I'm going
12  to hold the whole $100,000.
13               I'm going to direct counsel to give me lists of
14  those individuals who can be paid immediately, and I will go
15  ahead and issue the order as soon as I get the list.  I
16  published this, invited any objections to it, and we haven't
17  received any.  Has counsel received any objections?
18          MR. HERMAN:  No, Your Honor.  We had two requests to
19  look at the Web site, which has all costs submitted by everyone
20  to date.  We have had no objection.  I do want to advise the
21  Court with the two most substantial outstanding issues, the
22  Lanier firm and the Girardi firm, I hope to resolve those
23  within the next 30 days and report to Your Honor so that those
24  funds may be distributed to those firms.
25               If Your Honor would like me to comment on the

1    background, I will.  If Your Honor is satisfied on the

2    pleadings and affidavits --

3              **THE COURT:**  I have reviewed all the pleadings and all

4    the affidavits.  I might say with regard to the reports that I

5    received from the CPA, he had a lot of backup material to

6    support those reports.  I felt that individuals who were faced

7    with this motion ought to have access to that backup material.

8    A report is a report, but without backup material you may have

9    difficulty understanding the report or you may want to test the

10   report based on the backup material.

11             I instructed counsel to commit to a CD-ROM all

12   the backup material.  There are over a million pages, but

13   they're accessible and they're able to be searched.  We put

14   that on the web and restricted it to individuals who have an

15   interest in this particular case.  We provided a procedure

16   whereby they could contact liaison counsel, get the appropriate

17   password, and enter that realm of information.  I told

18   everybody they could do it.  We have had two requests, as

19   counsel mentions.  Those individuals had access to the entire

20   database and apparently looked over the entire database.  We

21   haven't received any objections, so I will go ahead and issue

22   an order to the effect I just mentioned.

23             **MR. HERMAN:**  Your Honor, as I understand it, the

24   order will include a one-percent holdback for costs to take

25   advantage of any unpaid, undistributed costs.

1    **THE COURT:**  Right.  Lenny, draft the order for me.
2  Give me a suggested order consistent with what I said today.
3    **MR. DAVIS:**  Yes, Your Honor.
4    **MR. HERMAN:**  Your Honor, I do want to on the record
5  recognize the costs subcommittee, who literally spent hundreds
6  and hundreds of hours on review.  Chris Seeger, Arnold Levin,
7  Ed Blizzard, Andy Birchfield, myself, and folks in our offices
8  reviewed every single application, notified every lawyer in
9  writing for additional backup, met face-to-face with the
10  lawyers about costs.  I would like Your Honor to know that the
11  committee worked very diligently to get where we are today.
12    **THE COURT:**  I do recognize the work and appreciate
13  it.  Also, Phil Garrett did a yeoman's work on this particular
14  matter.
15          I think it's worked.  I know that there are
16  issues that individuals are not satisfied with, and I
17  understand that.  We are dealing with a sizable amount of
18  money.  I tried at the outset -- and I think that that's really
19  helpful at the outset -- to provide certain guidelines.  I just
20  didn't willy-nilly pick those guidelines.  I took a lot of time
21  dealing with the guidelines and figuring out what was
22  appropriate and what was not appropriate.
23          Now, you always learn from it.  So the next MDL
24  I'm reviewing the guidelines again and maybe I'll have to tweak
25  them a bit, but at least going in everybody knew what the rules

1    were.  It's a little difficult in a case like this because we

2    had people who were also functioning in the state court,

3    outside of the MDL, and so they weren't aware of the rules or

4    didn't feel the rules were applicable to them.  I understand

5    that.  Hopefully, in the future we'll be able to get everybody

6    aboard as early as possible and have state courts adopt the

7    same rules so there will be no misunderstanding.

8              The difficulty in a case like this is that you

9    need to get some mechanism for reporting the material

10   reasonably contemporaneously.  It's very difficult in a case

11   like this to reconstruct costs at the end of three, four, five

12   years.  It's just very difficult, and that sometimes happens.

13             It's particularly difficult for plaintiff

14   lawyers.  I understand that.  Plaintiff lawyers are not good at

15   record keeping.  They don't keep time, by and large, and they

16   don't have the experience with keeping time or, for that

17   matter, the office structure and forms for keeping time that

18   their brothers and sisters in a defense firm have mastered to

19   the nth degree.  They are very good at keeping time, and

20   sometimes the time is quite substantial.  A lifetime.  They can

21   live two lifetimes.  In any event they are very good at it.

22   Plaintiff lawyers are not good at it.  So it's a difficult

23   situation, but you do the best you can with this.  I know that

24   everybody has done their best, and I appreciate it.

25             **MR. HERMAN:**  Your Honor, irrespective of the fact

1   that Mr. Clements did not let us examine his meter today, I do

2   want to thank Miles Clements of the bar.  He has been very

3   professional.  I know he is in court, and I want to thank him

4   for his cooperation.

5               I'll be back with a motion, Your Honor, on the

6   Lanier and Girardi issues sometime within the next 30 days.

7           THE COURT:  So it's clear, give me an order for the

8   distribution of the funds for those individuals or those

9   entities to which there's no objection, and I'll instruct the

10  administrator to immediately pay those funds.

11          MR. HERMAN:  Yes, Your Honor.

12          THE COURT:  Anything else?

13          MR. BIRCHFIELD:  When you say for immediate payment,

14  the way that I appreciate that, that payment will be made once

15  funds are available.  The funds would be withheld from the

16  final payment.  The MI final payment, we have set the target

17  date of September 30, and I think that we are on track for that

18  final payment.

19              There have been a number of requests here at the

20  end for extensions and all of that could factor in.  We hope

21  that everyone is on board.  We have given multiple extensions,

22  and I think that we are at a place where we have cut those off,

23  but those are things that could delay it.  As I appreciate it,

24  Judge, the funds for the one percent will come once that final

25  payment is made.

1          **THE COURT:**  Right.  Anything?  Okay, folks.  Thank

2    you very much.  I appreciate it.  Court will stand in recess.

3          **THE DEPUTY CLERK:**  Everyone rise.

4          (WHEREUPON the Court was in recess.)

5                               *  *  *

6                           <u>**CERTIFICATE**</u>

7          I, Toni Doyle Tusa, CCR, FCRR, Official Court

8    Reporter for the United States District Court, Eastern District

9    of Louisiana, do hereby certify that the foregoing is a true

10   and correct transcript, to the best of my ability and

11   understanding, from the record of the proceedings in the

12   above-entitled and numbered matter.

13

14

15                          <u>s/ Toni Doyle Tusa</u>
                             Toni Doyle Tusa, CCR, FCRR
16                           Official Court Reporter

17

18

19

20

21

22

23

24

25