UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF LOUISIANA, *ex rel.* JAMES D. | * | SECTION L |
|     CALDWELL, JR., Attorney General, | * | |
| | * | JUDGE ELDON E. FALLON |
|                 Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|   versus | * | KNOWLES |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
|                 Defendant. | * | |
| | * | |
| Case No. 05-3700. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>DEFENDANT'S MOTION TO COMPEL AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO COMPEL THE STATE OF LOUISIANA TO PROVIDE
INTERROGATORY RESPONSES AND DOCUMENT PRODUCTIONS</u>**

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, defendant Merck & Co., Inc. ("Merck") respectfully requests that the Court enter an Order compelling plaintiff State of Louisiana to respond to Interrogatory Nos. 10-12, 15, 20, 22-24, 26-28, and 37 from Merck's First Set of Interrogatories directed to the Government Action plaintiffs and produce documents responsive to Document Request Nos. 20-28, and 30 from Merck's First Request for Production of Documents directed to the Government Action plaintiffs. As set forth below, the information Merck seeks more than satisfies the liberal standard for discoverable material and cannot be withheld on the basis of plaintiff's objections.

989780v.1

**BACKGROUND**

Plaintiff – the Attorney General of Louisiana – initiated this action more than four years ago, on July 6, 2005. Plaintiff's current complaint alleges that Louisiana, its citizens, and the Louisiana Department of Health & Hospitals ("LDHH") suffered economic loss because Merck's alleged misrepresentations caused them to pay for VIOXX® they would not have otherwise purchased. (*See State of Louisiana ex rel. Caldwell v. Merck & Co., Inc.*, Second Supplemental and Amending Complaint for Injunctive Relief and Damages ¶¶ 183, 192.) Plaintiff asserts claims for redhibition, violation of the Louisiana Unfair Trade Practices Act, violation of the New Jersey Consumer Fraud Act, and unjust enrichment, and seeks both damages and injunctive relief.[1]

On June 5, 2009, Merck formally served its first set of master interrogatories and requests for production on each of the Government Action plaintiffs, including the State of Louisiana. As required by Pretrial Order No. 39, prior to serving formal discovery, the parties exchanged drafts of their respective proposed master discovery requests and met three times to discuss their objections, including those relating to the relevance and burden involved in responding to them. Merck's interrogatories at issue in this motion seek the following basic information:

- The identity of Merck employees who plaintiff alleges provided false or misleading information to the State of Louisiana or Louisiana citizens – or fraudulently concealed from the State or its citizens material information Merck had a duty to disclose – along with details about the contents of the information and how and when Merck provided (or failed to disclose) it. (*See* Defendant's First Set of Interrogatories to Plaintiffs ("Def.'s Interrogatories") Nos. 10-12 (attached hereto as Exhibit A).)

- The type and amount of any compensatory damages, punitive damages, statutory penalties, attorneys' fees and other relief plaintiff seeks, along with the factual basis for the amount and the legal basis under which plaintiff contends it is entitled to the relief. (*See* Def.'s Interrogatories Nos. 15, 20, 22-24, 26-27.)

---

[1] Merck's motion to dismiss all of plaintiff's claims has been briefed, argued, and is pending. At the hearing on Merck's motion, plaintiff's counsel stated that plaintiff would voluntarily dismiss its New Jersey Consumer Fraud Act Claims.

- The amount of money plaintiff spent on Vioxx that was reimbursed or otherwise paid for by private sector (*e.g.*, employee benefit plans) and other governmental entities (*e.g.*, the federal government). (*See* Def.'s Interrogatory No. 28.)

- The identity of fact witnesses that plaintiff intends to call at trial. (*See* Def.'s Interrogatory No. 37.)

Merck's document requests at issue in this motion seek the following information:

- Documents relating to plaintiff's allegations that Merck personnel misrepresented information to or withheld information from LDHH and Louisiana citizens which caused plaintiff to pay for Vioxx when it otherwise would not have done so. (*See* Defendant's First Set of Requests for Production of Documents to Plaintiffs ("Def.'s RFPs") Nos. 20-21) (attached hereto as Exhibit B).)

- Documents showing the factual basis upon which plaintiff calculates the damages it seeks. (*See* Def.'s RFPs Nos. 20-27, 30.)

- Documents relating to any reimbursements or cost offsets plaintiff received from private or other government entities when it paid for Vioxx. (*See* Def.'s RFP No. 28.)

Plaintiff submitted its objections and responses to Merck's discovery requests on July 6, 2009. In response to Interrogatory Nos. 10-12, 15, 20, 22-24, 26-27, and 37, plaintiff objected on the grounds that they were "premature contention interrogatories" whose production "could irreparably prejudice" the development of plaintiff's case, and that they invade the attorney-client privilege and work-product doctrine. (*See, e.g.,* Plaintiff Attorney General James D. Caldwell's Responses to Defendant's Second Set of Interrogatories) ("Pl.'s Interrogatory Responses") No. 10 (attached hereto as Exhibit C).)[2] In further response to Interrogatory No. 20, which seeks information about the amounts plaintiff seeks on behalf of private Louisiana citizens, plaintiff inexplicably stated that it will produce "claims data." (Pl.'s Interrogatory Response No. 20.) Plaintiff's response to Interrogatory No. 28 (which seeks the amount of money the State spent on Vioxx that was not reimbursed by other entities) is, again inexplicably,

---

[2] Plaintiff presumably refers to Merck's interrogatories served on June 5, 2009 as its "second" set because the case was subject to some discovery – including interrogatories – prior to the stay entered by the Court to facilitate implementation of the personal injury settlement agreement.

3

"No." (Pl.'s Interrogatory Response No. 28.)

In response to Merck's Document Request No. 20 (which seeks documents concerning the facts underlying the State's *parens patriae* claims on behalf of Louisiana Vioxx users), plaintiff objected on the grounds that producing the documents Merck seeks "could irreparably prejudice Plaintiff's further investigation, development and prosecution of this litigation," and would require plaintiff to disclose experts which is neither relevant nor required under the Federal Rules of Civil Procedure. (Plaintiff Attorney General James D. Caldwell's Responses to Defendant's Second Request for Production of Documents ("Pl.'s RFP Responses") No. 20 (attached hereto as Exhibit D).) After stating these objections, plaintiff responded simply that it "does not possess any responsive non-privileged documents." (*Id.*) Plaintiff cross-referenced its response to Document Request No. 20 to the remaining Merck document requests at issue in this motion.

Merck attempted to resolve plaintiff's objections to these discovery requests during meet-and-confer teleconferences held on July 13 and July 24, 2009 by explaining why it is necessary for plaintiff to provide clarification of and factual support for its allegations of misconduct and damage claims now – so that Merck can take discovery in response to such allegations and claims and otherwise prepare itself to defend against them through downstream pretrial motions or, if necessary, at trial. On July 13, 2009, plaintiff stated its intention to stand by its objections. (*See* Ltr. from B. Barnett to J. Dugan dated July 17, 2009 (attached hereto as Exhibit E).)

On July 21, 2009, plaintiff sent a letter identifying fourteen individuals in response to Interrogatory No. 37 (which sought identities of plaintiff's trial fact witnesses), but that list is nothing more than the names of fourteen present or former Merck employees who had been previously identified by Merck's counsel as individuals from whom custodial productions would

4

be made to plaintiff. (*See* Ltr. from D. Plymale to B. Barnett dated July 21, 2009 (attached hereto as Exhibit F); Ltr. from E. Flaster to D. Plymale dated July 27, 2009 (attached hereto as Exhibit G).) To date, plaintiff still has not stated whether or not plaintiff will call any other individuals – such as personnel from LDHH – as fact witnesses at trial.

**ARGUMENT**

The Federal Rules of Civil Procedure provide for "broad and liberal discovery," *Tango Transport, L.L.C. v. Transp. Int'l. Pool, Inc.*, No. 08-0559, 2009 WL 1458223, at *2 (W.D. La. July 31, 2009) (citations omitted), because "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1345 (5th Cir. 1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). The Federal Rules permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

Against this backdrop, and despite the fact that plaintiff commenced this action in 2005, plaintiff contends that Merck's interrogatories identified *supra* are "premature contention interrogatories" and that plaintiff need not respond or produce related documents because they seek privileged information. Plaintiff is wrong on both counts. Given the advanced stage of this case and the approaching trial, Merck is entitled to know the specifics of plaintiff's allegations of misconduct and damage claims so it can prepare appropriate responses to them. Further, the nature of the allegations upon which plaintiff intends to base its claims is public information that Merck has a due process right to know in advance of trial – not "privileged" information that may be kept secret. Because this information falls squarely within the liberal discovery permitted by the Federal Rules, plaintiff should be compelled to respond and produce documents.

I.  **PLAINTIFF SHOULD BE COMPELLED TO CLARIFY ITS ALLEGATIONS AND DAMAGE THEORIES BECAUSE THIS CASE IS RIPE FOR DISCOVERY AND PLAINTIFF'S AMENDED COMPLAINT IS VAGUE.**

The disputed discovery requests, *served nearly four years after plaintiff commenced this action*, can hardly be considered premature.  Before the stay was issued in 2007, Merck produced thousands of pages of case-specific documents responsive to plaintiff's discovery requests in this case, which were in addition to the tens of millions of pages of documents previously produced in these MDL proceedings concerning the design, production, study, sale and marketing of Vioxx.  Following the lifting of the stay earlier this year, Merck produced hundreds of thousands of pages of additional documents in response to plaintiff's discovery requests in this case.  Accordingly, plaintiff has had plenty of time to investigate the factual basis for the claims it initially asserted in July 2005.  Moreover, earlier this year, plaintiff sought an expedited pretrial process, culminating in a November trial setting, on the basis that it already had most of the discovery it needed from Merck and was fully prepared to try its case.  Having made that representation and request, plaintiff should now, only a few months before trial, be able to describe with the precision that will be required at trial what conduct by Merck it contends violated applicable law, identify who was injured as a result of that conduct and how, and specify the quantity and basis of the damages it seeks in this case.

Many of plaintiff's allegations of misconduct in the Complaint are vaguely phrased, requiring Merck to speculate what statements by Merck or its employees allegedly misled officials at LDHH and Louisiana consumers about the risks of Vioxx.  (*See, e.g.,* Compl. ¶ 38 ("Even without a label that allowed Merck to legitimately claim superior safety, Merck and its representatives and agents misrepresented the safety profile of Vioxx to consumers, the medical community, healthcare providers, and third party payors.").)  A generalized allegation that Merck and its unidentified "representatives and agents" made unspecified misrepresentations about "the

6

safety profile" of Vioxx to a diffuse population of "consumers, the medical community, healthcare providers, and third party payors" is not the kind of specific, fact-based allegation that Merck can test through the remainder of the discovery process, or respond to in concrete fashion through expert reports, dispositive motions, or trial testimony. Merck legitimately needs to know "the five Ws" bearing on these sweeping allegations in order to meaningfully respond to them.

Similarly, the complaint sweepingly accuses Merck of failing to disclose information about Vioxx's ostensible cardiovascular risks, but is non-specific about precisely what information concerning such risks Merck supposedly had in its possession at the time and wrongfully failed to disclose to the Louisiana Medicaid program or to Louisiana citizens who obtained Vioxx (or their doctors). (*See id.* at ¶ 65 ("Merck's promotional campaign falsely touted Vioxx's benefits while concealing its true health risks through false and misleading direct-to-consumer advertisements, sales promotions, press releases, and lectures at professional conferences.").) Merck cannot meaningfully respond to such vague references in expert reports, dispositive motions, or trial testimony. Instead, Merck is entitled to know *what* material fact(s) (as opposed to broad characterizations) bearing on Vioxx's alleged risks form the basis of plaintiff's fraudulent nondisclosure claim, *when* plaintiff contends Merck had knowledge of the fact(s), *which* of Merck's public statements about Vioxx plaintiff believes unlawfully failed to include reference to those fact(s), and *who* plaintiff believes acted differently in the absence of such fact(s) than he/she/it would have acted if such fact(s) were known.

The damages that plaintiff seeks for this alleged misconduct – both on its own behalf and on behalf of Louisiana citizens in a quasi-class action/*parens patriae* capacity – are described in equally ambiguous terms. (*See id.* at ¶ 192 ("As a direct and proximate result of the Defendant's wrongful conduct in violation of LUTPA, Plaintiffs and citizens of Louisiana have sustained

7

financial losses in amounts as will be established at the trial of this matter, including paying for Vioxx that they would not have otherwise paid and economic losses incurred by paying a premium price for Vioxx, as opposed to other viable, less expensive, pharmaceutical treatments."); *id.* Prayer for Relief ¶ 10 ("That, pursuant to LUTPA, the Defendant be found liable, in solido, to Plaintiffs for financial restitution and such other ancillary monetary damages sustained by Plaintiffs, all of which will be established at the trial of this matter.").)  Unless and until plaintiff identifies the *quantity* of damages sought on its own behalf and on behalf of each Louisiana citizen on whose behalf it sues, the *identity* of the citizens on whose behalf the State seeks damages, the *methodology* used to determine those damages, and the *evidence* supporting those damage allegations, Merck has no practical ability to examine plaintiff's damage claims, assess their legal and factual legitimacy, and respond appropriately to them during pretrial or trial proceedings.

      Courts in this District routinely order parties to respond to interrogatories precisely like the ones at issue here, recognizing that they are a valuable tool for clarifying and refining the precise allegations that will be made, and responded to, at trial.  *See*, *e.g.*, *Asset Funding Group, LLC v. Adams & Reese, LLP*, No. 07-02965, 2008 WL 927937, at *8 (E.D. La. Apr. 4, 2008) ("parties must provide opposing counsel with 'a computation of each category of damages claimed by the disclosing party,'" along with material on which the computation is based) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)); *Somerset Marine, Inc. v. Far-Eastern Shipping Co.*, No. 01-1843, 2002 WL 1216401, at *5 (E.D. La. June 4, 2002) (ordering production, over "premature contention interrogatory" objection, of facts in support of plaintiff's defenses and identity of witnesses who will testify in support of those facts); *Miller v. Narval Shipping Corp.*, No. 00-0804, 2000 U.S. Dist. LEXIS 14152, at *5-6, 11 (E.D. La. Sept. 19, 2000) (ordering

responses to interrogatories requesting a detailed statement explaining how the accident at issue occurred, and the identity of people with knowledge of it). As these courts have recognized, discovery aimed at clarifying and specifying the precise issues to be tried in a case is wholly appropriate and unobjectionable.

  This routine practice is even more appropriate given that this plaintiff has had years to consider how it will present its case, and has been consistently pushing for an early trial date. In fact, numerous courts have allowed discovery like that sought by Merck to proceed at *far earlier* stages of litigation. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 235 (E.D.N.Y. 2007) (ordering responses to contention interrogatories early in discovery; "[r]equiring plaintiffs in this case to answer . . . at this early stage in discovery would not be futile or burdensome because the interrogatories track the allegations in the complaint, upon which plaintiffs presumably have sufficient facts to plead"). Plaintiff cannot legitimately object to Merck's discovery requests on the ground that they include "contention interrogatories." Indeed, disclosure of the information Merck seeks is permitted by Rule 33, which allows parties to serve interrogatories asking for contentions that relate to facts or the application of law to facts. Fed. R. Civ. P. 33(a)(2). Such requests are also allowed by Rule 26(a), which requires the disclosure of information such as damages computations and the identity of witnesses with discoverable information. Fed. R. Civ. P. 26(a); *see also Asset Funding Group*, 2008 WL 927937 at *8-9 (ordering party to provide interrogatory response providing "a clear summary of its damages it claims").

  For these reasons, plaintiff's objections that the contested interrogatories and document requests are premature and impermissibly seek contentions are without merit. The Court should compel plaintiff to respond to Merck's interrogatories and produce the requested documents.

responses to interrogatories requesting a detailed statement explaining how the accident at issue occurred, and the identity of people with knowledge of it). As these courts have recognized, discovery aimed at clarifying and specifying the precise issues to be tried in a case is wholly appropriate and unobjectionable.

  This routine practice is even more appropriate given that this plaintiff has had years to consider how it will present its case, and has been consistently pushing for an early trial date. In fact, numerous courts have allowed discovery like that sought by Merck to proceed at *far earlier* stages of litigation. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 235 (E.D.N.Y. 2007) (ordering responses to contention interrogatories early in discovery; "[r]equiring plaintiffs in this case to answer . . . at this early stage in discovery would not be futile or burdensome because the interrogatories track the allegations in the complaint, upon which plaintiffs presumably have sufficient facts to plead"). Plaintiff cannot legitimately object to Merck's discovery requests on the ground that they include "contention interrogatories." Indeed, disclosure of the information Merck seeks is permitted by Rule 33, which allows parties to serve interrogatories asking for contentions that relate to facts or the application of law to facts. Fed. R. Civ. P. 33(a)(2). Such requests are also allowed by Rule 26(a), which requires the disclosure of information such as damages computations and the identity of witnesses with discoverable information. Fed. R. Civ. P. 26(a); *see also Asset Funding Group*, 2008 WL 927937 at *8-9 (ordering party to provide interrogatory response providing "a clear summary of its damages it claims").

  For these reasons, plaintiff's objections that the contested interrogatories and document requests are premature and impermissibly seek contentions are without merit. The Court should compel plaintiff to respond to Merck's interrogatories and produce the requested documents.

## II.     PLAINTIFF'S PRIVILEGE OBJECTION IS MERITLESS.

Nor do the contested interrogatories and document requests implicate the attorney-client privilege or the attorney work product doctrine. The precise allegations underlying claims and the purported factual basis of those claims are matters as to which plaintiff has the burden of persuasion – accordingly, they must be presented to the jury in order to survive a motion for directed verdict. As other courts have recognized, such allegations are not a secret, to be kept from the world (and the defendant) simply because they relate to how plaintiff's counsel intends to frame the plaintiff's case. *See, e.g.*, *United States v. Boyce*, 148 F. Supp. 2d 1069, 1086 (S.D. Cal. 2001) ("The Government's contention interrogatories are not directed to issues of 'pure law' that would infringe on the attorney-work product doctrine . . . . Rather, they seek the facts upon which the" defendants relied for a defense); *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 48 (N.D.N.Y. 1997) (ordering responses, over work product objection, to "entirely appropriate" interrogatories that "direct the plaintiffs to state the facts which support the[ir] contentions"). Indeed, if the logic underlying plaintiff's objections were valid, Merck would be excluded from the courtroom while plaintiff presented the jury with its case-in-chief on the ground that the presentation was created by attorneys.

The attorney-client privilege and attorney work-product doctrines are not a license to surprise the defendant at trial. At this juncture of the litigation – five years into the case and only several months before trial – Merck has a due process right to learn the precise nature of plaintiff's allegations, and the facts and documentary evidence upon which plaintiff bases those allegations. Accordingly, the Court should reject plaintiff's meritless privilege objection, and compel plaintiff to respond and produce the documentary evidence it intends to use against Merck at trial.

989780v.1

### III. CERTAIN INTERROGATORY RESPONSES REQUIRE FURTHER ELABORATION BY PLAINTIFF.

Interrogatory No. 20 asks whether plaintiff seeks to recover damages on behalf of citizens in Louisiana who are not Medicaid beneficiaries (and who therefore paid for their Vioxx prescriptions by other means) by virtue of the fact that it is suing *in parens patriae*, and if so, how it proposes to identify and calculate such damages. Plaintiff has responded by stating that it will produce Medicaid claims data. This answer, however, is a *non sequitur*. By definition, Medicaid claims data will not include information about non-Medicaid-covered Louisiana Vioxx users in whose name plaintiff seeks to recover damages. Plaintiff should be compelled to respond to this interrogatory by providing a specific explanation of how it intends to prove up damage claims on behalf of large numbers of Louisiana citizens whose identities are unknown and who are not before the Court. As set forth in Merck's motion to dismiss, Merck believes that it would be impossible for plaintiffs to prove which prescribing decisions in the State of Louisiana were influenced by Merck's alleged misconduct and what drug each patient would have taken instead – essential elements of a damages calculation. Thus, Merck believes it would be impossible to calculate "damages" in this action. Plaintiffs nevertheless have vigorously disagreed with that argument, and accordingly must be required to explain their theory and provide supporting evidence at this stage of the litigation so that Merck can respond to this aspect of the case.

Interrogatory No. 28 asks, in essence, whether part of the cost of Vioxx that plaintiff seeks to recover (either with respect to Medicaid patients or non-Medicaid patients) was paid for by entities other than the State of Louisiana. Plaintiff simply responds "No" – an answer that seems unlikely given the nature of the claims. (Pl.'s Interrogatory Response No. 28.) Nevertheless, in order to prepare its defense, Merck needs to know, for example, whether

plaintiff seeks to recover the federal share of plaintiff's Medicaid expenses and if so, the factual basis it has for calculating those damages. The federal government undeniably contributes a portion of the cost of prescription drugs for beneficiaries to Louisiana's Medicaid program. *See* Federal Financial Participation in State Assistance Expenditures, 67 Fed. Reg. 69,223, 69,224 (Nov. 15, 2002). And employee benefit plans presumably would pay for at least part of the cost of prescription drugs purchased by State employees. Accordingly, Merck asks the Court to require plaintiff to confirm that it does not seek to recover these other portions of the Vioxx payments at issue.

In sum, the Court should compel plaintiff's responses to Merck's Interrogatory Nos. 10-12, 15, 20, 22-24, 26-28, and 37, and also compel plaintiff to produce documents responsive to Merck's Document Request Nos. 20-28 and 30.

## CONCLUSION

For all of the foregoing reasons, Merck respectfully requests that the Court grant its motion to compel in its entirety.

Dated: August 26, 2009                                        Respectfully submitted,

/s/*Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN LLC
546 Carondelet Street
New Orleans, LA 70130
Phone: (504) 581-3200
Fax:    (504) 581-3361

989780v.1

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Motion and Incorporated Memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 26th day of August, 2009.

                      */s/ Dorothy H. Wimberly*
                      Dorothy H. Wimberly, 18509
                      STONE PIGMAN WALTHER
                      WITTMANN L.L.C.
                      546 Carondelet Street
                      New Orleans, Louisiana  70130
                      Phone:  504-581-3200
                      Fax:     504-581-3361
                      dwimberly@stonepigman.com

                      Defendants' Liaison Counsel

989780v.1