

Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000  Main
+1 215 994 2222  Fax
www.dechert.com

BENJAMIN R. BARNETT

ben.barnett@dechert.com
+1 (215) 994-2887  Direct
+1 (215) 655-2887  Fax

July 17, 2009

**VIA EMAIL & FIRST CLASS MAIL**

James R. Dugan, II, Esq.
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, LA  70130

Re:  *State of Louisiana,* ex rel. *James D. Caldwell, Attorney General v. Merck & Co., Inc.*;
<u>Meet-and-Confer Regarding Louisiana AG Master Discovery on July 13, 2009</u>

Dear Mr. Dugan:

The following seeks to memorialize some of the more salient points expressed by counsel during the July 13, 2009 meet-and-confer teleconference regarding Louisiana AG Master Discovery.

First, notwithstanding Plaintiff's general objections to the Master Discovery propounded by Merck & Co., Inc. ("Merck"), you confirmed that Plaintiff intends:  (1) to provide a privilege log for documents redacted or withheld based on a claim of privilege; (2) to produce responsive documents containing proprietary or confidential business information (pursuant to Pretrial Order Nos. 13-13C) with the notable exception of "rebate agreements" for non-Merck drugs for which Plaintiff maintains production is prohibited as a matter of law; and (3) to produce responsive documents and information pertaining to "relevant drugs" other than Vioxx as that term is defined in Merck's discovery requests.

Second, you confirmed during the July 13 meet-and-confer that Plaintiff intends to stand on its objections (i.e., referring Merck to the general language of its Amended Complaint and/or wholly refusing to respond substantively based on a claim of privilege) in response to Merck's discovery seeking information on the types of damages sought by Plaintiff and the factual/legal basis for each such claim of relief in this case (viz., Interrogatory Nos. 15-17, 22-24, 26-27).  You also confirmed during the meet-and-confer that Plaintiff will stand on its objections and refuse to answer Merck's discovery seeking:  (1) information regarding Plaintiff's factual basis for any alleged misrepresentation by Merck (viz., Interrogatory Nos. 10-12); (2) identification of fact witnesses and their likely testimony (viz., Interrogatory No. 37); and (3) documents showing individual Vioxx use, evidence intended to show that Merck's alleged misconduct caused the alleged damages, and documents regarding amount of those damages (viz., Request for Production Nos. 20-28, 30) on the grounds of privilege, prematurity of contention interrogatories, and/or general disruption of Plaintiff's ongoing investigation and prosecution of its case.  Merck's



James R. Dugan, II, Esq.
July 17, 2009
Page 2

position is that this particular discovery is appropriate, timely, and critical to the merits of this case. You did agree, however, to supplement Plaintiff's answer to Interrogatory No. 37 (fact witnesses) but did not provide a timeframe in which you would do so. We respectfully request that Plaintiff provide this supplemental information by Wednesday of next week, July 22, 2009. Moreover, we again ask that Plaintiff reconsider its position with respect to this particular discovery and provide us confirmation of your position in that regard by no later than July 22, 2009.

Third, we raised the concern that certain responses by Plaintiff left open the possibility of additional information that was not produced to Merck. For example, Plaintiff's response to Merck's request for "all communications" with healthcare providers was ostensibly limited to production only of an unidentified "March 2005 letter to providers" and "DUR annual reports" (viz., Request for Production No. 17). Accordingly, we requested that you supplement that response to clarify that Plaintiff has completely responded to the particular request.

Fourth, with regard to Plaintiff's production of claims data, we identified several areas where we believe Plaintiff needs to supplement its production. Most importantly, Plaintiff provided no documentation of what is contained in the data files. The .csv files that comprise the Unisys claims data contain no field names, and the file you referenced during the meet-and-confer session ("data fields claim type 12.pdf") is simply a listing of all claim data fields for pharmacy claim type 12 in the Unisys system. The referenced file provides no information about the fields of data that were actually pulled from the database and produced by Plaintiff, nor does it contain an explanation of the field names. Accordingly, we asked during the meet-and-confer session that Plaintiff provide: (1) a list of fields produced; and (2) a list of all fields that are available in the database. Once Merck receives the requested information, we will make an assessment of whether we believe that the claims data field produced by Plaintiff were sufficient to give Merck what it requested in discovery.

Further, we asked whether the Unisys claims data provides a means for Plaintiff to answer Merck's Interrogatory No. 30, which asks Plaintiff to identify the amount of money it spent annually treating gastrointestinal bleeds or perforated ulcers relating to beneficiaries who were prescribed non-Cox-2 NSAIDs from January 1, 1998 to the present. It is our understanding that a list of all such beneficiaries (by recipient ID number) can be generated through queries of the Unisys claims data. Subsequently, Plaintiff can query whether diagnosis codes for GI bleeds or perforated ulcers are associated with any claims for those beneficiaries (in essence, running a database query to match recipient ID numbers to diagnosis codes). The total expenditures associated with those claims will answer the question posed in Interrogatory No. 30. The parties agreed that counsel for Merck will generate a list of ICD-9 codes associated with GI bleeds and perforated ulcers, and Plaintiff will then explore whether its discovery responses can be supplemented to provide responsive information. Finally, with respect to claims data referenced



James R. Dugan, II, Esq.
July 17, 2009
Page 3

by Plaintiff in response to Interrogatory No. 34, we asked you to provide us with a list of the specific proton pump inhibitors ("PPIs") that Plaintiff searched for and produced in its production of claims data.

Fifth, regarding Merck's request for production of the custodial files of seven (7) key witnesses identified in email correspondence of June 18, 2009 (i.e., Mary Terrebonne, Vincent Culotta, Ben Bearden, Melwyn Wendt, David Hood, Gina Biglane, and Harvey Taylor), you indicated that Plaintiff did not make specific custodial file productions of those individuals. You did assure us, however, that Plaintiff conducted a reasonable search for responsive information that would include relevant documents in the possession of the above-referenced individuals and that those materials were contained in Plaintiff's production (though not separated by individual custodian). Further, to the extent the individuals are or were employed with the Louisiana Department of Health and Hospitals ("DHH"), you confirmed that Plaintiff specifically requested all responsive information from those individuals, which was then presumably produced to Merck. You further confirmed that this was not only Plaintiff's approach with respect to its most recent production but also Plaintiff's prior productions to Merck in this case. You also indicated that Plaintiff made an effort to collect all responsive documents from the University of Louisiana-Monroe ("ULM"), such that there is no need for Merck to subpoena documents from ULM pursuant to Rule 45. As a final matter, during the meet-and-confer, we again requested dates for the deposition of Ben Bearden, and we are awaiting a response from Plaintiff in that regard.

Sixth, with regard to Merck's request that Plaintiff confirm that a legal hold has been implemented to ensure the preservation of potentially relevant documents and information, Plaintiff stated that a legal hold was put in place in September 2006 but was otherwise "unsure of the specific date" (viz., Interrogatory No. 38). During the meet-and-confer, you further stated that Plaintiff changed email systems in October 2007, and it was currently unknown to you whether any email prior to that date was accessible for purposes of extraction and production in this case. Given the uncertainty of this response, Merck would request Plaintiff to conduct a reasonable investigation into any potential data loss (particularly with respect to the custodians previously identified by Merck) and confirm that its production is complete in that regard. We would further request that you report back to us on the status of your investigation by no later than Wednesday, July 29, 2009. In the interim, to the extent such investigation by Plaintiff reveals that potentially relevant documents and data (including email) that have not been produced to Merck are no longer accessible, we would ask that you bring that to our attention immediately.

Seventh, you again raised during the July 13 meet-and-confer Plaintiff's request for documents and information concerning ongoing governmental investigations as well as your intention to file a motion to compel such discovery. As reflected in subsequent email correspondence between the parties, Merck's position remains that Plaintiff has never: (1) articulated the basis for that



James R. Dugan, II, Esq.
July 17, 2009
Page 4

request beyond cursory allegations that the materials simply must be relevant; (2) articulated any connection between the discovery Plaintiff seeks to compel and the LA AG case; (3) demonstrated why Merck's voluminous productions to date are somehow insufficient to prosecute the LA AG action in the MDL; or (4) proposed any compromise position other than full production.

Finally, the parties first discussed Plaintiff's general request for data purchased by Merck from IMS Health, Inc. ("IMS") during the meet-and-confer in New York City on May 21, 2009, and we had a similar discussion regarding IMS data in general during our meet-and-confer on July 13, 2009. As we explained on both of those occasions, the requested IMS data (to the extent it was purchased by Merck in the ordinary course of business) remains proprietary to IMS, and Merck is prohibited from disclosing or producing such data under the terms of the licensing agreement without express authorization from IMS. Without conceding whether any of the requested IMS data is relevant to the Louisiana AG case, Merck is currently investigating whether it has purchased all of the specific IMS products that Plaintiff has now identified in email correspondence of July 15, 2009. Moreover, with regard to whether IMS would provide the required authorization for Merck to produce any relevant data in its possession, under the terms of its licensing agreement with IMS, we would refer you to Kristen Furtak in the Law Department at IMS Health, Inc., who is familiar with such requests from plaintiffs in prior Vioxx-related proceedings.

Please let us know promptly if you believe that any of the foregoing does not accurately reflect our discussion during the July 13, 2009 teleconference. In the meantime, we will continue to move forward on the discovery necessary to prepare this case for trial.

Very truly yours,

Benjamin R. Barnett

cc: Tarek Ismail, Esq. (via email: tismail@goldmanismail.com)
 Travis J. Sales, Esq. (via email: travis.sales@bakerbotts.com)
 Leonard A. Davis, Esq. (via email: ldavis@hhkc.com)
 Dawn Barrios, Esq. (via email: dbarrios@bkc-law.com)