UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS<br>        LIABILITY LITIGATION<br><br><br><br>**This document relates to all cases** | CIVIL ACTION<br>NO.  2:05-MD-01657-EEF-DEK<br><br>SECTION L<br>JUDGE ELDON E. FALLON<br><br>DIVISION 3<br>MAGISTRATE DANIEL E. KNOWLES III |

**MEMORANDUM IN OPPOSITION TO MOTION FOR CERTIFICATION**

The Tulane Law Clinic respectfully submits that the Vioxx Litigation Consortium ("VLC") has failed to make the requisite showing that the Court's August 3, 2009 Order and Reasons ("the Order") should be certified for interlocutory appeal or as a final appealable order. Further, even if the Court certifies its Order or issues a final judgment, the VLC has not demonstrated that a stay of proceedings is warranted.  As explained in detail below, the predicate factors for certification are absent and the balance of equities does not support a stay of the departure procedure set forth in the Order.

I.      **The Court Should Not Certify the VLC's Questions for Interlocutory Appeal Under 28 U.S.C. § 1292(b)**

Interlocutory appeals are reserved for exceptional cases where the district judge believes that a decision on appeal could settle a controlling question of law as to which there are substantial grounds for difference of opinion, and in so doing, materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  Such "piecemeal" appeals are generally disfavored by courts.  *See United States v. MacDonald*, 435 U.S. 850, 853 (1978); *Allen v. Okam Holdings, Inc.*, 116 F.3d 153, 154 (5th Cir. 1997).  Here, an interlocutory appeal is inappropriate because the VLC has been unable to establish the requisite "substantial doubt" with respect to the court's three independent bases for decision, including its inherent authority to review attorneys' fees.  Additionally, because the Fifth Circuit may affirm the August 13, 2009 Order and Reasons, the best way to advance the ultimate termination of the litigation is to deny the interlocutory appeal and continue with the departure proceedings initially requested by the VLC.

A.      **The Question of Law to Be Certified Does Not Pertain to an Issue as to Which There Is "Substantial Grounds For Difference of Opinion"**

In assessing a motion for interlocutory appeal, the judge should "analyze the strength of the arguments in opposition to the challenged ruling [to decide] whether the issue for appeal is truly one on which there is a *substantial* ground for dispute."  *See Flor v. Bot Financial Corp.* (*In re Flor*), 79 F.3d 281, 284 (2d Cir. 1996) (emphasis in original).  The legislative history of section 1292(b) indicates that to satisfy the substantial disagreement requirement, there must be "substantial doubt" that the district court's order was correct.  S. Rep. No. 2434, at 5257 (1958); *see* 28 U.S.C. § 1292(b) (2006).  Whether the question presented is one of first impression or one where a substantial weight of authority is against it does not, alone, establish "substantial grounds for a difference of opinion."  *See Flor*, 79 F.3d at 284.

2

In this case, the VLC fails to raise a substantial doubt as to the correctness of the Court's decision.  In its thorough and well-reasoned Order and Reasons this Court relied upon three *independent* sources to conclude that it had the authority to cap contingency fees in MDL cases. The first source, the Court's equitable authority, is supported the MDL statute.  *See* 28 U.S.C. § 1407(a).  The VLC argues that a transferee court's power to "promote the just and efficient conduct of such actions" should be confined to pretrial proceedings. *See id.*  However, the two courts that have decided the issue have found that section 1407 authorizes courts to cap contingent fees.  *See In re Guidant*, MDL No. 05-1708, 2008 WL 682174, at *17 (D. Minn. Mar. 7, 2008); *In re Zyprexa*, 424 F. Supp. 2d 488, 494 (E.D.N.Y. 2006).   The mere argument that section 1407 should not be interpreted in a certain way does not create "substantial grounds for difference of opinion."

Second, it is well-established that courts have the inherent right and responsibility to review contingency fee contracts for fairness.  *See, e.g.*, *Karim v. Finch Shipping Co. Ltd.*, 374 F.3d 302, 309 (5th Cir. 2004); *Rosquist v. The Soo Line R.R.*, 692 F.2d 1107, 1111 (7th Cir. 1982); *Int'l Travel Arrangers, Inc. v. W. Airlines, Inc.*, 623 F.2d 1255, 1277 (8th Cir. 1980).  The VLC cites dicta in *Rosquist v. The Soo Line R.R.*, 692 F.2d at 1111, for the proposition that a court should not *sua sponte* review an attorney's fee contract in every instance.  However, the VLC offered no law expressly contradicting the Court's authority to review fees in this context. Thus, the existing case law on the subject supports the finding that the Court has the inherent authority to review and cap attorney's fees in this case.

Finally, the Court's express authority under the Vioxx Settlement Agreement ("Settlement Agreement") is supported by numerous provisions contained therein.  The Court has carefully weighed the arguments for and against its interpretation of the Settlement

Agreement and has twice concluded that the agreement demonstrates the parties' desire to grant continuing authority to the Court. Because a mere difference of opinion does not create substantial disagreement, the Court's Order should not be certified for appeal.

      B.      **A Grant of Interlocutory Appeal Would Not "Materially Advance the Ultimate Termination of the Litigation"**

In the interest of time, the best way to advance the ultimate termination of the litigation is to continue with the departure proceedings. In just two weeks, the deadline to file an objection will lapse and hearings will begin soon thereafter. Whether these hearings take a few weeks or months, they will be necessary for the resolution of the case and the final distribution of settlement funds in the event that the Fifth Circuit affirms the District Court's ruling. Moreover, should an appeal take place, the results of the departure proceedings will provide a more complete context for review. Thus, it is more pragmatic for the Court to avoid delays in the future by continuing with the departure proceedings today.

**II.**      **The Court Should Not Certify its Order as a Final Judgment Under Rule 54(b)**

A court may direct entry of a final judgment under Federal Rule of Civil Procedure 54(b) only if (1) the order in question is a "final judgment"; and (2) there is no "just reason for delay". *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980). Neither of these conditions is presently satisfied. Thus, entry of a final judgment of Rule 54(b) on this issue is inappropriate at this time.

      A.      **Because the Court's ruling does not constitute a final disposition of the claims at issue, Rule 54(b) is currently inapplicable.**

An order constitutes a final judgment if it is the "ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* at 7. Here, however, no such disposition has occurred. Instead, the Court has simply rendered a tentative decision to cap all

4

attorneys' fees at 32%.  This pronouncement is still subject to the results of the departure process outlined in the Court's Order.  Order at 26.  This process has yet to be completed and the amount of fees collectible by attorneys seeking a departure remains undetermined.  Accordingly, the Court has made no ultimate disposition of individual claims as to these fees.

The VLC attempts to argue finality of judgment by characterizing the Court's Order as a final dispensation of the VLC's contract claim via wholesale denial of that claim.  VLC's Mem. in Supp. at 8-9.  The VLC goes on to characterize the departure process as one requiring the VLC to assert a new claim, separate from the contract claim allegedly denied by the Court.  *Id.* In actuality, however, the Court did not deny the VLC's contract claims.  Rather, the Court merely modified the contracts in question, provisionally limiting recovery under said claims to the 32% cap.  *See* Order at 8, 21.  This is demonstrated by both the language in the Court's Order, and the fact that the Order left all other contractual terms unaffected.  *See id.* at 21 ("[T]he Settlement Agreement . . . provides that this court has the express authority to *modify* any provision . . . .") (emphasis added).

Further, the Court has given the VLC the option to seek full recovery through the departure framework set forth in its Order.  This framework extends consideration of the fee collection amounts.  As a result, until the departure process concludes, none of the fee claims at issue have been finalized for the purposes of Rule 54(b).  The lone case discussed by the VLC in support of the finality of the Court's order, *Hahn v. City of Kenner*, is not on point.  *See* No. CIV. A. 96-2425, 1998 WL 213221, at *1, 2 (E.D. La. Apr. 24, 1998).  *Hahn* involved a court's total denial of motions for attorneys' fees.  *Id.* Here, the Court has capped attorneys' fees while creating a procedure through which a departure might be sought, and therefore it is not the case that there is "nothing else for the Court to resolve."  *Id.* at *2.

5

B.      **Just Cause Exists to Delay Entry of a Final Judgment**

The second requirement for entry of a final judgment under Rule 54(b), lack of just reason to delay, is also absent.  Whether just reasons to delay exist depends upon the consideration of judicial administrative interests and the equities concerned.  *Curtiss-Wright Corp.*, 446 U.S. at 8.  Here, both equity and judicial economy are best served by adherence to the process set forth by the Court for handling departure objections in individual cases.

In analyzing judicial administrative interests and equitable concerns, the Court is to consider several factors, including "[(1)] the possibility that the need for review might or might not be mooted by future developments in the district court; . . . [(2)] the possibility that the reviewing court might be obliged to consider the same issue a second time; . . .  [and (3)] miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like."  *Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742 at *1, 9 (S.D. Tex. Jan. 31, 2008); *see also Porter v. Milliken*, No. CIV.A. 99-0199, 2001 WL 775577 (E.D. La. July 9, 2001) (quoting *H & W Indus., Inc. v. Formosa Plastics Corp.,* 860 F.2d 172, 175 (5th Cir. 1988) ("A major factor the court should consider is whether the appellate court would have to decide the same issues more than once even if there were subsequent appeals.")).

As to the first factor, it is entirely possible that the need for review might be mooted by future developments in the District Court.  Specifically, by following the departure process set forth by the Court, the VLC may obtain the increase in fees it seeks for some of the claims at issue.  As for the next factor, certification to the Fifth Circuit now, when the claims have yet to be finally disposed of by the Court, may very well result in dismissal of the appeal or remand pending completion of the departure process.  At that point the VLC would still have to

participate in this process it now seeks to avoid, and the Fifth Circuit may well have to reconsider the issue at a later date.

Finally, concerning the last factor, the key issue here is unnecessary delay. The VLC asserts that final distribution of the funds can only be accomplished upon appellate review of its claims. VLC's Mem. in Supp. 10. However, the VLC ignores the possibility mentioned above, that acting within the departure framework created by the Court may yield the VLC some or many of the results they seek, thus obviating the need for further review. In addition, the VLC fails to consider the possibility that the Fifth Circuit will affirm the Court's actions or remand until a final judgment on the claims have been reached, therefore subjecting all Vioxx claimants to further delay while the departure process is executed. Consequently, the most efficient and equitable course of action available is to continue with the departure process as formulated. As a result, and for the reasons above, this Court should not enter a final judgment on the amount of attorney's fees.

## III.   The Court Should Not Stay the September 15, 2009 Deadline in the Event of an Appeal

In the event that this Court deems certification appropriate, the VLC's motion for stay pending appeal should be denied. This Court must evaluate a motion for stay pending appeal on a four-part test. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 438 (5th Cir. 2001); *Freret Marine Supply v. M/V Enchanted Capri*, No. Civ-A 00-3805, 2002 WL 31324042, at *4 (E.D. La. Oct. 16, 2002). To be successful, the movant must establish: a likelihood of success on the merits; irreparable injury if the stay is not granted; that a stay would not substantially harm other parties; and that a stay would serve the public interest. *Arnold*, 278 F.3d at 439-41. The VLC has not met its burden under this test.

A.      **The VLC Has Not Demonstrated a Likelihood of Success on the Merits**

First, the VLC has not demonstrated a likelihood of success on the merits.  Generally, a likelihood of success entails a showing that the appeal is more likely to succeed than not.  *See Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981).  In its Order, this Court affirmed its decision to cap attorney fees at 32%.  The Court based that decision on the well-settled inherent power to review fee agreements, the terms of the settlement agreement, as well as principles of equity and reasoned analogy to class action jurisprudence.  The VLC has consistently disagreed with that holding, but has not demonstrated that the Fifth Circuit is likely to rule differently.

The Fifth Circuit has held that when a case involves a serious legal question, a movant satisfies the "likelihood of success" requirement by presenting a substantial case on the merits and demonstrating that the balance of the equities weighs *heavily* in favor of granting the stay. *Id.* (emphasis added).  Assuming, *arguendo*, that this case involves a serious legal question, the VLC still has not met its burden.  As an initial matter, the VLC has not presented a substantial case on the merits for its appeal.  A movant for stay does not present a substantial case on the merits simply by restating previously dismissed arguments.  *See Frew v. Gilbert*, No. CIV.A 3:93CV65, 2000 WL 33795091, at *2 (E.D. Tex. Oct. 10, 2000).  The VLC has repeatedly pointed out the absence of controlling authority in this area and raised the possibility that the Fifth Circuit *might* rule differently on appeal.  However, the possibility of success on appeal does not establish the likelihood of such success or a substantial case on the merits.

B.      **The Balance of Equities Does Not Weigh Heavily in Favor of a Stay**

Second, the VLC has also not shown that the balance of equities weighs heavily in favor of a stay.  The VLC will not suffer irreparable harm if a stay is denied.  The VLC alleges that it will suffer irreparable harm if it is required to go through the departure procedure in each of its

cases.  However, the United States Supreme Court has held that merely incurring litigation

expenses does not constitute irreparable harm.  *See Renegotiation Bd. v. Bannercroft Clothing

Co*. 415 U.S. 1, 24 (1974).  Moreover, the Order does not obligate the VLC to file a single

objection.  The Order specifically contemplates "rare circumstances" which might "warrant a

departure from the universal fee cap".  Order at 26.  The VLC simply has not demonstrated how

it would suffer irreparable harm by voluntarily exercising rights under the very procedure it

requested.[1]

      The VLC also alleges irreparable harm because it will be forced to litigate against its own

clients unless the stay is granted.  In fact, adverse rulings routinely force attorneys to litigate

disputes against their wishes, and such rulings do not inflict irreparable harm.  *See, e.g., Chicago

Paper Handlers & Electrotypers' Local No. 2 v. Chicago Tribune Co.,* 779 F.2d 13, 15 (7th Cir.

1985).   The VLC's claim that no case or controversy exists between itself and its clients

regarding attorney's fees is simply false.  This court has already recognized that numerous

claimants have expressed dissatisfaction with a fee award above the 32% cap.  Order at 12.

      Second, unlike the VLC, the Vioxx claimants would likely suffer substantial harm if this

court grants the motion to stay.  At a minimum, these claimants have been waiting to receive

compensation for their injuries since the Merck settlement agreement was announced on

November 9, 2007.  These claimants are not yet fully compensated even though their claims

were effectively resolved upon "opting in" to the settlement fund.  As stated previously, the

departure procedure is designed for "rare circumstances" in which "special treatment might be

justified," Order at 26, and thus many attorneys may choose not to participate.  Thus, a stay of

the September 15 deadline followed by an affirmance by the Fifth Circuit would only postpone

---

[1] VLC requested the departure procedure in its Memorandum in Support of Motion for Reconsideration/Revision of Order Capping Contingent Fees and Alternatively for Entry of Judgment (Rec. Doc. 17395-2 at 23-24).

the departure procedure and force those injured claimants to wait longer for their full remedy.  In contrast, denying the motion to stay would force attorneys to bring meritorious objections immediately while permitting full payment of unchallenged claims.

Finally, the public interest is firmly aligned with the interests of the Vioxx claimants. Courts have recognized the public's interest in enforcing settlement agreements, *see Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988), and in the prompt resolution of disputes, *see United States v. Harrison*, No. H-05-3507, 2007 WL 1428635 at *3 (S.D. Tex. May 11, 2007). Maintaining the September 15 deadline will serve these policies by ensuring that the departure procedure begins immediately, while a stay would only delay this process further.

To summarize, VLC has not demonstrated that it will be irreparably harmed if the motion for stay is denied.  VLC has also not demonstrated a likelihood of success on the merits. Conversely, both the Vioxx claimants and the public interest will suffer if the motion to stay is granted.  The balance of the equities clearly favors denial of the motion to stay.

## CONCLUSION

For the reasons enumerated above, the Court's August 3, 2009 Order and Reasons should not be certified for interlocutory appeal or as a final order at this time.  Furthermore, the September 15 deadline for individual departure objections from the 32% fee cap should not be stayed.

Respectfully submitted,

TULANE LAW CLINIC
6329 Freret Street
New Orleans, La. 70118
(504) 865-5153
(504) 862-8753 (fax)


By:

**/s/ Stacy Seicshnaydre**_____
Stacy E. Seicshnaydre, Bar No. 22193
E-mail: sseicshn@tulane.edu
(504) 865-5158
Supervising Attorney


## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2009, the above and foregoing Memorandum in

Opposition to Motion for Certification has been served on Counsel for the VLC, Harry S. Hardin

III, by e-mail (hhardin@joneswalker.com), and upon Liaison Counsel, Phillip Wittmann and

Russ Herman by e-mail (rherman@hhkc.com, pwittmann@stonepigman.com), **and upon all**

**parties by electronically uploading the same to LexisNexis File & Serve Advanced in**

**accordance with Pretrial Order No. 8(B)**, and that the foregoing was electronically filed with

the Clerk of Court of the United States Court for the Eastern District of Louisiana by using the

CM/ECF system, which will send a notice of electronic filing in accordance with the procedures

established in MDL 1657.

Respectfully submitted,

By:

/s/ Stacy Seicshnaydre_____
STACY SEICSHNAYDRE, Bar No. 22193, T.A.

E-Mail: sseicshn@tulane.edu
TULANE LAW CLINIC
6329 Freret Street
New Orleans, La. 70118
(504) 865-5158
(504) 862-8753 (fax)