UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:   VIOXX PRODUCTS<br>            LIABILITY LITIGATION<br><br>**This document relates to All Cases** | CIVIL ACTION<br><br>NO. 2:05-MD-01657-EEF-DEK<br><br>SECTION L<br>JUDGE ELDON E. FALLON<br><br>DIVISION 3<br>MAGISTRATE DANIEL E. KNOWLES III |

**THE VIOXX LITIGATION CONSORTIUM'S REPLY TO
THE TULANE LAW CLINIC'S OPPOSITION TO MOTION FOR CERTIFICATION**

The Court's August 3, 2009 Order and Reasons (and the Order and Reasons of August 27, 2008 that it reconsidered) finally decides controlling questions of law over which there is substantial ground for difference of opinion. These legal issues are ripe for appeal and an immediate appeal is the most efficient way of advancing the ultimate termination of the settled cases. The Clinic's opposition does not alter these circumstances.

Not only should an immediate appeal of the Order and Reasons be certified under §1292(b) and/or a Rule 54(b) judgment entered, but the variance procedure devised by the Court should be stayed pending the outcome of the appeal to prevent the creation of artificial disputes

{N2034658.3}  1

between attorneys and their clients, to avoid substantial potentially wasted effort by all interested persons and this Court, and to minimize multiple individual appeals at the end of the variance procedure. When the Court's very jurisdiction and authority are at issue, it makes good sense to decide that issue first before embarking on procedures that the Court may have no jurisdiction and authority to order.

**I.      28 U.S.C. § 1292(b)**

The Clinic relies heavily on an assumed affirmance by the Fifth Circuit on appeal, an outcome that no one can reliably predict; yet on the other hand, the Clinic fails to consider the effect of a reversal on appeal. If a reversal renders the variance procedure moot, carrying out the variance procedure now would needlessly expend resources of all concerned.

Section 1292(b) is intended to avoid these situations. It does not require a mechanical application as suggested by the Clinic. Instead, 1292(b) grants a district court flexibility in applying 1292(b)'s policies of avoiding harm to litigants or wastes occasioned by unnecessary proceedings.[1] A flexible, yet practical approach recognizes occasions, such as here, where an order defies "precise delineation or description" and therefore, as a practical matter, frustrates orderly administration through "a waste of precious judicial time."[2] Immediate appeal of "some isolated identifiable point . . . of law" advances orderly administration and efficiency.[3]

The Order and Reasons determined legal issues of jurisdiction and authority, issues well-suited for interlocutory appeal. The Court's legal conclusions form the foundation upon which the variance procedure is based. The legal basis upon which this Court acted must be given

---

[1] *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir. 1974) (en banc), *cert. denied*, 419 U.S. 885 (1974).

[2] *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961).

[3] *Id.*

appellate review before any additional fact-based inquiry in variance proceedings occurs. Appellate court guidance on whether this Court had jurisdiction and authority to issue the Order materially advances the efficient termination of the litigation.

The Clinic's response attempts to persuade this Court of its "well-established" jurisdiction and authority to reduce contingency fees set by private fee contracts in MDLs. In doing so, the Clinic ignores the Court's own recognition of the significance of the issue and the absence of either appellate guidance or Congressional directive.

This Court has reinforced the significance of the issue and the need for meticulous consideration. While motions for reconsideration are often summarily denied by district courts, in this instance, this Court noted the importance of the issues raised,[4] appointed special counsel to oppose the VLC, set an extended briefing schedule, allowed for the submission of affidavits and evidence, and specially scheduled extended oral argument. Once the matter had been argued, this Court held the matter under submission for almost four months before issuing its opinion. Although the Court ultimately affirmed its earlier decision, the Court's opinion was 27 pages long – longer than the original opinion of August 27, 2008. This Court's actions denote significant legal issues that are not easily resolved.

Only two decisions have previously addressed the issues decided by the Court: *In re Guidant* and *In re Zyprexa*. This hardly constitutes "well-settled" law. *Guidant* and *Zyprexa* represent a newly-formed judicial doctrine now in its infancy, not a clear legal principle. These

---

[4] "There's some interest in attorneys fees, as you can well imagine, in cases of this sort. There's a lot of discussion in the country involving MDLs and attorneys fees in MDLs and class actions, so perhaps there will be some amicus briefing on each side of that issue…. This may well be an opportunity for a court, the Fifth Circuit or the Supreme Court, to weigh in on attorneys fees in MDL matters and class action matters." Transcript of Dec. 19, 2008 Status Conference, p. 6.

decisions are the exceptions rather than the rule in MDL history. No appellate court has yet addressed the issues presented here.

The decisions in *Karim*, *Rosquist*, and *International Travel Arrangers, Inc.* also fail to demonstrate certainty regarding this Court's jurisdiction and authority. None of these decisions establish this Court's jurisdiction or authority to reduce fees under the circumstances presented here. And certainly, no *controlling* case decides this issue. There is substantial room for good faith difference of opinion on the validity of this judicially-created doctrine.

**II.     Rule 54(b)**

The Order and Reasons should be considered "final" within the meaning of Rule 54(b). It constitutes far more than a "tentative decision".[5] This Court conclusively decided the legal questions of jurisdiction and authority. The Order and Reasons also finally denied the VLC's claims to full enforcement of the percentage in the fee contracts as written.

The variance procedure applies only to individualized circumstances and exists only because of the Court's final determination that it had jurisdiction and authority, *i.e.*, the procedure depends on the legal validity of the determinations made in the Order and Reasons. The VLC's previously-negotiated fee agreements are not at issue in this procedure. The fact that other provisions of the VLC fee agreements have not "yet" been addressed is beside the point – there is no provision of the VLC's fee agreements other than the fee percentage that has ever been questioned by the Court. Thus, no contract issues remain to be decided in the variance procedure.

The Clinic argues that even if the decision is essentially final, there is just reason for delay because the VLC may gain its full contractual fee through the variance procedure. Yet the

---

[5] *See* Tulane's Opposition, Rec. Doc. No. 23122 at p. 4 of 12.

{N2034658.3}                                4

Court has already stated that only in "rare" cases will a variance be granted – hardly cause for optimism that the VLC will prevail on its contractual rate in all of its nearly 2,000 individual cases. The VLC has already demonstrated through its briefing, its expert witness submissions and other evidence that it is entitled both legally and factually to its full contractual fee, except where limited by law of the applicable state. Clearly the Court has disagreed. Proceeding with multiple individual hearings, however, is an inefficiency that is anathema to the MDL model. Indeed, an MDL is a place for deciding broad pretrial questions that affect all cases equally – individual issues are normally reserved for trial by each transferee court. It is only because of the Court's position that it has jurisdiction and authority to reduce attorney's fees in an MDL (a predicate that will be at issue on appeal) that the variance procedure was created.

Continuing with the variance procedure now will, if anything, render the prospect of redundant review on appeal *more likely*. As attorneys object and as this Court issues decisions increasing or decreasing fees, attorneys or clients (if clients oppose) may seek to appeal not only the factual determinations made in the variance proceeding, but also the legal basis for the fee reduction which has now been finally decided by this Court. The Fifth Circuit could then face innumerable redundant challenges to the legal issues that are presently ripe for appeal. A single decision now on these legal issues would not be subject to review a *second* time in the event that (a) the Fifth Circuit affirms the Order and Reasons and (b) the variance procedure proceeds.

**III.    Stay of Variance Procedure Pending Appeal**

The VLC requests a stay of the Court's variance procedure because the procedure the Court has established creates the irreparable harm the VLC seeks to avoid in this appeal. In short, the Court's variance procedure would have the VLC attorneys argue against their own clients, with whom the VLC has what it maintains are valid contingency contracts, and with

whom the VLC has no dispute.  Forcing the VLC attorneys to participate in proceedings in which they are adversaries to their clients is an irreparable harm that cannot be undone.

### *Irreparable harm*

In response, the Clinic argues that "adverse rulings routinely force attorneys to litigate disputes against their wishes, and such rulings do not inflict irreparable harm."[6]  This argument does not respond to the VLC's point that the variance procedure forces the VLC attorneys into an intolerable conflict with their own clients.  The Clinic's statement is a truism that has no application to the situation here.  Of course attorneys can be ordered to proceed with preexisting litigation against an adversary.  But there is no precedent for forcing attorneys to litigate against their own clients over a contractually agreed fee.  The Clinic's citation of *Chicago Paper Handlers* illustrates only the former, irrelevant point.  In that case, the court rejected a request for stay of an arbitration of a dispute between the two willing adversaries in the proceeding.[7]  The VLC's dispute is with the Court's decision, not with their own clients.

The variance procedure may be entirely avoided if the Fifth Circuit answers the serious legal issue raised by the VLC, *i.e.* the validity of the VLC's contingency contracts, in the VLC's favor.  Fifth Circuit authority supports a stay for this very reason.[8]

### *Likelihood of success*

The VLC has met the "likelihood of success" standard, which requires a showing that the appeal presents a "serious legal question."[9]  The VLC's argument on appeal is that its contracts

---

[6] Tulane's Opposition, Rec. Doc. No. 23122 at p. 9 of 12 (citing *Chicago Paper Handlers & Electrotypers' Local No. 2 v. Chicago Tribune Co.*, 779 F.2d 13, 15 (7th Cir. 1985)).

[7] *Chicago Paper Handlers & Electrotypers' Local No. 2*, 779 F.2d at 15.

[8] *See In re Voluntary Purchasing Groups, Inc.*, 196 F.3d 1258 (5th Cir. 1999) (not selected for publication) ("Without a stay, the confirmed plan may begin to be consummated, and the Railroads' appeal will become moot.").

are valid, and that an MDL court lacks jurisdiction and authority to reduce lawful contingency fee agreements that are reasonable *ex ante*. This Court has acknowledged that these are serious legal questions that the Fifth Circuit may answer.[10] No appellate court has yet ruled on this question.

The VLC has adequately demonstrated the seriousness of its legal arguments in its earlier briefing to the Court. The Court lacks jurisdiction and authority and its reduction of the VLC's fees, based in part on an *ex post* analysis, was improper.[11] The VLC has no conflict with their clients because the analysis must be done from an *ex ante* perspective, not an *ex post* perspective after settlement. The Court's Order and Reasons undermine the very purpose of contingency fee contracts, which courts have long recognized because of their value *ex ante*: they allow plaintiffs access to the courts by placing tremendous risk on attorneys.[12] There is, therefore, ample authority supporting the VLC's argument.

### *Lack of harm*

Granting a stay of the variance procedure would harm no one. The Clinic argues that it would harm the VLC's clients who await distribution of their settlement proceeds.[13] This argument has it backwards; *not* allowing an appeal now potentially delays clients' recoveries. As the VLC pointed out in its motion for a stay, the VLC attorneys are distributing settlement

---

[9] *Ruiz v. Estelle*, 650 F.2d 555, 556 (5th Cir. Unit A June 1981).

[10] "This may well be an opportunity for a court, the Fifth Circuit or the Supreme Court, to weigh in on attorneys fees in MDL matters." Transcript of Dec. 19, 2008 Status Conference, pp. 6-7.

[11] *See* Order and Reasons of August 3, 2009 at p. 24.

[12] *See Cappel v. Adams*, 434 F.2d 1278, 1280 (5th Cir. 1970).

[13] Tulane's Opposition, Rec. Doc. No. 23122 at p. 9 of 12.

proceeds to their clients, and will continue to do so pending appeal. Any amounts affected by this Court's Order will be held in trust pending final appellate resolution of this issue. Allowing an immediate appeal will hasten that resolution – not delay it.

The Clinic's position, on the other hand, requires participation in numerous potentially unnecessary proceedings followed by numerous appellate reviews. Such delay can be avoided by immediate appeal of the determinations made in the Order and Reasons.

### *The public interest*

This Court has already recognized the public interest in the issue of attorneys' fees in MDL cases, noting that Congress, the Fifth Circuit and possibly the Supreme Court may be weighing in.[14] The VLC's motion for stay asks the Court simply to preserve the status quo while giving the Fifth Circuit the opportunity to rule on the legal questions – a ruling that may avoid the need for the variance procedure, and save all parties and the Court significant resources.

### CONCLUSION

The VLC respectfully requests that this Court grant this motion, certify its Order and Reasons for interlocutory appeal under § 1292(b) and/or Rule 54(b), and stay the variance procedure pending appeal.

Respectfully submitted,

/s/ *Harry S. Hardin III*
HARRY S. HARDIN III (# 6540)
MADELEINE FISCHER (# 5575)
ERIC MICHAEL LIDDICK (# 31237)
Jones, Walker, Waechter, Poitevent,
 Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8208
Facsimile: (504) 589-8208

---

[14] Transcript of Dec. 19, 2008 Status Conference, pp. 6-7.

JOHN J. McKETTA, III (Texas Bar No. 13711500)
BOYCE C. CABANISS (Texas Bar No. 03579950)
MATTHEW B. BAUMGARTNER
  (Texas Bar No. 24062605)
Graves Dougherty Hearon & Moody,
  A Professional Corporation
401 Congress Avenue, Suite 2200
Austin, Texas  78701
Telephone:     (512) 480-5600
Facsimile:      (512) 480-5816

*Attorneys for John Eddie Williams, Jr., Drew Ranier, Walter Umphrey, Mikal Watts, and Grant Kaiser (the "Vioxx Litigation Consortium")*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsels, Phillip Wittmann and Russ Herman, by U.S. Mail and e-mail, or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a Notice of Electronic Filing in accordance with the procedures established in MDL 1657 on September 4, 2009.

Respectfully submitted,

/s/ *Eric Michael Liddick*
ERIC MICHAEL LIDDICK