UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX PRODUCTS<br>LIABILITY LITIGATION<br><br>This document relates to All Cases | CIVIL ACTION<br><br>NO. 2:05-MD-01657-EEF-DEK<br><br>SECTION L<br>JUDGE ELDON E. FALLON<br><br>DIVISION 3<br>MAGISTRATE DANIEL E. KNOWLES III |

### THE VIOXX LITIGATION CONSORTIUM'S OBJECTION TO THE COURT'S FEE VARIANCE PROCEDURE

In this Court's Order and Reasons of August 3, 2009, the Court created a procedure for attorneys to request a departure from the Court's 32% "universal cap" in a particular case.[1] The Order requires attorneys who seek to enforce their fee agreement to file an "objection" by September 15, 2009. The Vioxx Litigation Consortium ("VLC") objects to the Court's procedure and declines to participate in it because participating in the procedure as designed by the Court would force the VLC to litigate against its own clients, with whom it has no dispute.

---

[1] "[T]here may be one or more cases in which special treatment might be justified." Order and Reasons at 26.

{N2037014.5}

As demonstrated during the hearing and briefing on this issue, the VLC has written fee agreements with each of its clients, many of which call for a fee of more than 32%. None of the VLC's clients have notified the VLC that they object to the fees set in these fee agreements.

When the Court entered its original order of August 27, 2008, reducing all contingency fees for anyone participating in the Vioxx Resolution Program, the VLC objected and moved for reconsideration on a variety of grounds. One of the primary grounds was that no case or controversy over its fee agreements existed.

In December of 2008, this Court appointed the Tulane Civil Litigation Law Clinic to represent the interests of any plaintiffs who wished to sign up with the Clinic for the limited purpose of opposing the VLC's motion for reconsideration. The VLC objected to this procedure and filed for a writ of mandamus from the Fifth Circuit. Although this writ was denied, the VLC still maintains that the appointment of the Clinic was legal error under these circumstances.

Further, as demonstrated by VLC Exhibit 12 entered into evidence at the hearing on the VLC's motion for reconsideration, despite the fact that the VLC notified over 2000 clients of the availability of representation by the Clinic as the Court ordered, only six of the VLC's clients agreed to allow the Clinic to represent them in connection with the motion to reconsider. When no case or controversy originally exists, a justiciable dispute cannot and should not be created by Court order directing clients that their fee agreements have been reduced and that representation will be provided for them free of charge to litigate the issue with their counsel.

When the VLC moved for reconsideration of the Court's original fee reduction order, it requested in the alternative that the Court should at minimum institute a procedure by which attorneys could apply for a variance from the fee reduction order. However, instead of allowing attorneys to contest with the Court the application of the fee reduction to their efforts on behalf

of all of their clients, the Court created a procedure that requires the VLC to in essence sue each of its clients to collect its agreed-upon fee. The Court's procedure would create adversarial relationships where there were none previously.

In addition, the Court's procedure establishes disincentives for attorneys to seek a variance including that 1) the attorney pays the cost of procedure regardless of success; and 2) the Court may reduce his fees *below* the already-reduced 32%.

In seeking a variance procedure as a final and last alternative, the VLC did not envision being forced to litigate against its clients, with whom it has written fee agreements that are not disputed by those clients. Rather, the VLC demonstrated to the Court that its members are not so-called "free-riders" who merely signed up clients and took advantage of the efforts of others. The VLC's dispute is not with its clients, for whom it has diligently worked and invested an extraordinary amount of time and capital, but rather with the Court's Order, which imposed the same limit upon all attorneys regardless of their efforts.

The procedure followed in the *Guidant*[2] case allowed for assessment of a variety of evidence including "work that [attorneys] had performed that benefited all of their clients – things such as monthly newsletters, websites, and the like." Further in *Guidant*, the Court considered not merely the benefits of an MDL, but also the associated costs and substantial time spent in complying with special court orders, filling out forms and processing claims, which would not be required in singular litigation in which the client and attorney are able to maintain a degree of desirable autonomy over their case. The court in *Guidant* recognized that:

> MDL attorneys do have a right to recover reasonable attorney fees, especially for actual work performed for Claimants, including, but not limited to, reviewing medical records and performing

---

[2] *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 2008 WL 3896006 (D.Minn. Aug. 21, 2008).

{N2037014.5}

>preliminary research; drafting and filing pleadings prior to cases joining the MDL; creating databases, newsletters, and websites to facilitate communication with clients; assisting with probate and bankruptcy proceedings; and using their best efforts to complete all of the necessary settlement-related paperwork.

Ultimately, the Court in *Guidant*, after considering 67 objections to an earlier fee reduction, raised the fee cap across the board to:

>[A] revised fees formula ("RFF") that results in Claimants paying no more on a percentage basis for attorney fees (contingency plus common benefit attorney fees) than: (1) the percentage contracted for in their contingency/retainer agreement; (2) 37.18%; or (3) the state-imposed limit, *whichever of these three is less*.

Because the variance procedure constructed by this Court creates litigation between the VLC and its clients when there is no dispute, and because the procedure does not permit the VLC to seek an across-the-board increase of the limit for its efforts benefiting all of its own clients and no others, the VLC objects to the variance procedure created by the Court and will not participate in the hearings envisioned by that procedure.

Respectfully submitted,

/s/ *Harry S. Hardin III*
HARRY S. HARDIN III (# 6540)
MADELEINE FISCHER (# 5575)
ERIC MICHAEL LIDDICK (# 31237)
Jones, Walker, Waechter, Poitevent,
 Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana  70170-5100
Telephone:    (504) 582-8208
Facsimile:    (504) 589-8208

JOHN J. McKETTA, III (Texas Bar No. 13711500)
BOYCE C. CABANISS (Texas Bar No. 03579950)
MATTHEW B. BAUMGARTNER
  (Texas Bar No. 24062605)
Graves Dougherty Hearon & Moody,
  A Professional Corporation
401 Congress Avenue, Suite 2200
Austin, Texas  78701

          Telephone: (512) 480-5600
          Facsimile: (512) 480-5816

*Attorneys for John Eddie Williams, Jr., Drew Ranier, Walter Umphrey, Mikal Watts, and Grant Kaiser (the "Vioxx Litigation Consortium")*

## CERTIFICATE OF SERVICE

 I hereby certify that the above and foregoing has been served on Liaison Counsels, Phillip Wittmann and Russ Herman, by U.S. Mail and e-mail, or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a Notice of Electronic Filing in accordance with the procedures established in MDL 1657 on September 15, 2009.

          Respectfully submitted,

          /s/ *Eric Michael Liddick*
          ERIC MICHAEL LIDDICK

{N2037014.5}