UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

**************************************
THIS DOCUMENT RELATES TO ALL CASES.

# Pretrial Order No. 49
ESTABLISHING ESCROW FUND FOR ATTORNEYS' FEES

The Court has before it the Motion for Award of Plaintiffs' Common Benefit Counsel Fees and Reimbursement of Expenses [Doc. 17642]. In the motion, Plaintiffs' Liaison Counsel requested on behalf of Common Benefit Counsel an assessment of 8% for common benefit attorneys' fees. Several objections have been filed opposing the award of 8% in attorneys' fees to common benefit counsel. The Court has held a Scheduling Conference and discussed the implementation of a structure for proceeding with a discovery and briefing schedule. Further action will be taken regarding the award of common benefit attorneys' fees when the Court feels that it is appropriate. Additionally, The Vioxx Settlement Program has progressed to the point that the final payments for all heart attack and sudden cardiac death claims are imminent. Therefore, it is necessary for the Court to determine what amount of attorneys' fees, if any, should be held in escrow for later distribution.

The Vioxx Settlement Agreement provides that the Court shall determine the appropriate percentage of funds to be assessed for common benefit fees, up to 8%. Given this provision of the Settlement Agreement, it would be appropriate to hold in escrow 8% of the gross fund until the sought after discovery is completed and the issue is submitted to the Court

and resolved. However, there is another issue that impacts the determination of the amount that should be held in escrow. That issue concerns appeals and objections to the Court's order imposing a 32% cap on contingency fees.

Prior to the filing of the Motion for Award of Plaintiffs' Common Benefit Counsel Fees on August 27, 2008, the Court issued an order capping contingency fees at a maximum of 32% of the amount recovered in all cases compensated through the Vioxx Resolution Program. Motions to reconsider the Court's Order capping contingency fees were filed. The Court appointed the Tulane Law Center to represent the claimants, set a briefing schedule, and heard oral argument. With this issue under advisement, the Court determined and advised the parties that the issue of the appropriateness of the 32% cap on contingency fees should be resolved prior to the Court addressing the Motion for Award of Plaintiffs' Common Benefit Counsel Fees since any common benefit fees would come out of the contingency fees.

On August 3, 2009, the Court denied the Motions to Reconsider the Order Capping Contingency Fees, but instituted a procedure whereby on or before September 15, 2009, counsel could object to the 32% cap in certain cases where he or she believes that a departure from the 32% cap would be appropriate. In addition, the Court indicated that it would hold hearings on objections and consider appointing a special master to take evidence and to make recommendations to the Court. Pursuant to the procedure set forth in the August 3, 2009 Order, the Court would then issue rulings on whether a departure from the 32% cap is warranted in a particular case, either upward or downward.

The Court's initial Order of August 27, 2008 capping contingency fees and its Order of August 3, 2009 denying in part the motion to reconsider have been appealed to the Circuit Court of Appeals for the Fifth Circuit. The issue on appeal is whether the Court has jurisdiction to determine the reasonableness of attorneys' fees in cases pending before the

Court. If the Circuit Court of Appeals finds that the Court does have the requisite authority and jurisdiction to determine the reasonableness of attorneys' fees, then the matter will return to this Court and the Court will be left with the task of conducting hearings in those cases, if any, in which plaintiff counsel seeks more than 32% in fees. In those cases, the Court will consider the evidence and determine the appropriate fee percentage whether that percentage is greater than 32% or less than 32%.

On the other hand, if the Circuit Court of Appeals finds that the Court lacks jurisdiction over the reasonableness of attorneys' fees, lawyers for claimants may take fees in the amount established by fee agreements with claimants.[1] Significant uncertainty remains therefore, as to what the final contingency fee percentage will be since certain firms have appealed this issue or seek more than 32% in fees.

The urgency of addressing the appropriateness of escrowing certain funds arises from the fact that the Vioxx Resolution Program has progressed to the point that the final payment is ready to be made for all qualifying heart attack and sudden cardiac death claims. All heart attack and sudden cardiac death claims have been reviewed for eligibility under the program, eligible claims have been evaluated to determine the appropriate points' awards, opportunities to appeal relevant issues have been afforded all claimants, and now, final preparations are being made to issue the final payment for heart attack and sudden cardiac death claims. The distribution of final payments will result in the disbursement of approximately $2.4 billion or the remainder of the $4 billion fund established by the Vioxx Master Settlement Agreement for compensation of claims involving heart attacks.

---

[1] The Vioxx Litigation Consortium has indicated in previous filings that many of its fee agreements with claimants provide for a fee percentage in the amount of 40%.

3

As stated above, it would be appropriate to escrow only 8% of the gross fund for common benefit fees, but for the appeals and objections to the Court's order capping contingency fees at 32%. However, because of the pendency of the appeals in this case and because the final contingency fee percentage is not yet determined, it is necessary for the Court to order that the portion of the final payment related to attorneys' fees be held in escrow by the Claims Administrator. For these reasons, IT IS HEREBY ORDERED that the Claims Administrator shall hold in escrow 32% of each claimant's final award from the heart attack fund pending further orders of this Court.

New Orleans, Louisiana, this the 23rd day of September, 2009.

_____
UNITED STATES DISTRICT JUDGE