UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  VIOXX® | ) | MDL Docket No. 1657 |
| | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | Section L |
| | ) | |
| This document relates to: | ) | JUDGE FALLON |
| | ) | |
| *Franklin v. Merck & Co., Inc.* | ) | MAG. JUDGE KNOWLES |
| (USDC, District of Colorado) | ) | |
| Case No. 06-CV-02164-WYD-BNB | ) | |
| | ) | |
| USDC, ED-LA Case No.:  07-2073 | ) | |

_____

**PLAINTIFF'S VERIFIED RESPONSE TO DEFENDANT'S MOTION FOR ORDER TO SHOW CAUSE WHY PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED**
_____

COMES NOW the Plaintiff above-named, by and through his counsel, the Law Offices of Stuart A. Kritzer, P.C. and Peter L. Kaufman, Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A., and by way of Verified Response to the Defendant's Motion for Order to Show Cause Why Plaintiff's Complaint should not be dismissed, states as follows:

**BACKGROUND**

At the instigation and by invitation of the Colorado Attorney General's office, on or about September 6, 2006, Plaintiff's counsel made a presentation regarding the issues raised herein and the statutory mandates for seeking recovery of Medicaid funds from Merck.  Shortly thereafter, counsel was advised the Attorney General would neither prosecute nor delegate prosecution of the within action. Plaintiff's written demand that it do so received no response.

On September 29, 2006, Plaintiff filed the within derivative action in his capacity as a taxpayer.  As stated in par. 4 of the Complaint:

> "Plaintiff is a citizen of the State of Colorado and pays taxes to the State of Colorado for among other things the funding of Medicaid.  Plaintiff brings this

action derivatively on behalf of the State of Colorado and the Department of Health Care Policy and Financing (hereinafter "State of Colorado"). Plaintiff seeks in this action reimbursement of the monies paid by the State of Colorado through its Medicaid program for the prescription drug Vioxx. The State of Colorado has a legal duty to recover Medicaid funds that were expended as a result of the wrongful acts of a third party, including fraud. Plaintiff, through counsel, has requested that the State of Colorado act to recover these funds and Colorado has failed to act in a timely manner."[1]

On October 27, 2006, Merck filed its "Notice of Filing of Notice of Removal". On October 31, 2006, Defendant filed its motion "…To Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation". On November 3, 2006, it filed an Answer and "Notice Regarding Pendency of Action Subject to Judicial Panel on Multidistrict Litigation." On November 22, 2006, Plaintiff filed his "Motion to Remand Pursuant to 28 U.S.C. §1447(c)". On January 24, 2007, Judge Wiley Y. Daniel of the United States District Court for the District of Colorado entered his Order granting Merck's Motion to Stay All Proceedings Pending Transfer Decision and denying Plaintiff's Motion to Remand and Motion for Expedited Consideration of Motion to Remand.

On June 5, 2009, Merck served Plaintiff and others similarly situated in MDL 1657 with its discovery requests. Prior and subsequent to serving those requests, Merck was informed that by virtue of Plaintiff having brought his claim in a derivative capacity on behalf of the taxpayers of the State of Colorado, his status was unique among the "government" actions in that he did not have the documents or the information sought by Merck and would need to conduct third party discovery to obtain it. In an effort to expedite and obtain responses to **Merck's** discovery, Plaintiff's counsel solicited the cooperation of Defendant's attorneys so its discovery could be jointly and collaboratively propounded and served upon the appropriate representatives of the

---

[1] The factual and legal bases of this action are set forth in detail in the Complaint, which is expressly incorporated by reference herein. Since Merck's Motion is limited to the issue of Plaintiff's standing, the Response will be similarly focused.

State of Colorado and its Department of Health Care Policy & Financing, the latter of which oversees and, at all times herein pertinent, oversaw Colorado's Medicaid program. Merck's response to Plaintiff's counsel's request was the filing of its Motion and Memorandum in Support of Motion for Order to Show Cause. Defendant's Motion is focused on what it contends is Plaintiff's lack of standing to maintain this action.[2]

## DISCUSSION

### In Circumstances Such As Those Found Herein, Colorado Case Law Has Long Recognized the Right Of Citizen-Taxpayers to Sue in Derivative Actions

The very cases cited by the Defendant in its Memorandum provide robust authority for the proposition that, under circumstances similar to those found herein, not only does Colorado authorize private plaintiffs to bring suit on behalf of the state, it embraces it.

> It is contended that the ballot title, submitted to the electors, did not contain a clear, concise statement, descriptive of the substance of the proposed amendment. It is contended also that plaintiff, as a taxpayer, did not have an interest sufficient to entitle him to bring this action.
>
> As to the latter contention, **we can conceive of no greater interest a taxpayer can have than his interest in the form of government under which he is required to live, or in any proposed change thereof. In the last analysis, this interest may well exceed any pecuniary interest he may have. The interest and concern of plaintiff as a taxpayer is not primarily confined to himself alone, but is of 'great public concern'; particularly so when it is apparent that the municipality and its officers have avoided doing anything that would raise the question of the validity of their acts under the charter amendment now under attack. If a taxpayer and citizen of the community be denied the right to bring such an action under the circumstances presented by this record, then wrong must go unchallenged, and the citizen and taxpayer reduced to mere spectator without redress. We can think of none who have a better right.**

---

[2] Merck's "Answer, Separate Defenses and Jury Demand", filed November 3, 2006, provides the following in a footnote on page 1: "Plaintiff lacks standing to assert claims on behalf of Colorado. Accordingly, Colorado is not a party to this action." Its "Second Defense" asserts: "Plaintiff's claims are barred because he lacks standing to assert them." Notwithstanding its having raised the issue at that time, Merck waited nearly three years before bringing the matter to this Court's attention.

*Howard v. City of Boulder*, 132 Colo. 401, 290 P.2d 237, 239 (Colo. 1955) (Emphasis supplied). As additional authority for the first sentence in the bold language noted above, Defendant cites *Colorado State Civil Service Employees Association, et al. v. John Love, as Governor of the State of Colorado, et al.*, 448 P.2d 624, 627 (Colo. 1968). That opinion goes on to state: "The rights involved extend beyond self-interest of individual litigants and are of 'great public concern.' A precept of constitutional law is that a self-executing constitutional provision ipso facto affords the means of protecting the right given **and of the duty imposed."** *Id.* (Emphasis supplied)

> "Colorado has a tradition of conferring standing to a wide class of plaintiffs. In addition to the traditional legal controversies, our trial courts frequently decide general complaints challenging the legality of government activities and other cases involving intangible harm. Moreover, we have long recognized that state officials can be sued in their official capacities to challenge the validity of constitutional provisions, statutes, and administrative policies…"

*Ainscough v. Bill Owens, Governor, State of Colorado, et al.*, 90 P.3d 851, 853 (Colo. 2004).

> "Deprivations of many legally created rights, although themselves intangible, are nevertheless injuries-in fact. **Colorado case law provides, for example, broad taxpayer standing in trial and appellate courts**… To conclude this description of Colorado's law of standing, a plaintiff has standing to sue if he or she has suffered an injury-in-fact to a legally protected interest. Although necessary, the test in Colorado has traditionally been relatively easy to satisfy. *Id* at 856 (Emphasis supplied)

Defendant cites *Gallagher v. Continental Insurance Company*, 502 F.2d 827, 832 (10th Cir. 1974) for the proposition that "'Colorado has no **constitutional or statutory** authorization for maintenance of derivative actions on behalf of the state' and that no case had established any such right." Memorandum, p. 3. The next sentence of *Gallagher* goes on to state: **"**It has been held that 'absent statutory authorization' citizens and taxpayers may not bring a derivative suit on behalf of the state. In Colorado, the right would have to be **implied**." *Id. Ainscough, supra,* makes it clear the Colorado Supreme Court has long recognized this implied right, without the necessity for express statutory or constitutional authority.

**Of the Two Tests for Standing Provided in *McCroskey v. Gustafson*, Defendant Applies the Wrong One and Overlooks the Correct One**

*McCroskey v. Gustafson, Quinn & Co., Inc., et al,* 638 P.2d 51 (Colo. 1981) is cited by Merck in a footnote on page 4 of its Memorandum for the singular, and factually irrelevant, proposition that taxpayer derivative suits may only be brought on behalf of the sovereign where it "has the **discretion** to bring the action but has refused to do so because of fraud, collusion, bad faith, or ultra vires acts by the corporation." *Id,* at 56. (Emphasis supplied). In *McCroskey,* taxpayers brought a suit, individually and on behalf of the other taxpayers and citizens of the City and County of Denver, Colorado, against Carl H. Gustafson, Quinn & Company, Inc. and the City and County of Denver arising out of their desire to have Denver sue defendants to recover what plaintiffs characterized as "windfall profits" on a bond transaction handled by Gustafson *et al* on behalf of the City and County of Denver. The issue in *McCroskey* was whether the plaintiffs had standing to do so under the circumstances therein present: Alleged abuse of discretion based upon fraud, collusion, bad faith or ultra vires acts. The Supreme Court concurred with the very important distinction recognized by the Court of Appeals in its opinion, "between citizen-taxpayer suits **against** a municipality and citizen-taxpayer suits brought **on behalf of** a municipality…" Emphasis supplied. The Court followed the same treatise authority relied upon by the Court of Appeals in addressing that issue when it opined:

> "The test put forth by *McQuillin* states that a taxpayer's right to bring an action on behalf of a municipality is subject to the following conditions: '(1) The municipality itself must have a clear right and power to sue; (2) a taxpayer cannot sue third persons on behalf of a municipality **unless the bringing of such action is a duty devolving upon the municipal authorities, as to which they have no discretion and which they have refused to perform**; (3) either a demand must have been made that suit be brought by the public officers of the municipality, or must be alleged and shown that such demand would be unavailing…" 18 E. McQuillen, The Law of Municipal Corporations, §52.17 (3d ed. 1977)." *Id* at 55. Emphasis supplied.

The Defendant relied on language from *McCroskey* which applied to the factual pattern of **that** case: "the municipality has the **discretion** to bring the action but has refused to do so because of fraud, collusion, bad faith, or ultra virus acts by the corporation." (*Memorandum*, page 4, footnote 2). Emphasis supplied. That scenario is factually inapposite from the case herein. Plaintiff's authority to sue is established in, and mandated by, federal statute: Colorado lacked discretion to not act here.

### Plaintiff's Power to Sue Merck Derivatively is Predicated Upon Federal Law Mandating Colorado Do So

Because Colorado not only had "a clear right and power to sue" Merck but, in fact, a duty to do so "as to which they have no discretion and which they have refused to perform", under the holding of *McCroskey,* Plaintiff has standing. It comes from the very statute cited by the Defendant in its "*Notice of Removal of Defendant Merck & Company, Inc*.", filed October 27, 2006 in United States District Court for the District of Colorado. One of the theories advanced by Merck to support removal was its assertion that multiple federal issues predominated:

> "12. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331, because Franklin's claims directly implicate two areas of federal law: The Federal Food, Drug & Cosmetic Act ('FDCA'), 21 U.S.C. §301, *et seq.*, which regulates prescription drug manufacturers' public and promotional statements about prescription drugs; and **federal Medicaid law,** which determines both the drugs the state must cover under its Medicaid program and the limited circumstances under which it can decline to pay for drugs. *See*, **42 U.S.C. §§1396**R-8(d)(1)(B),(d)(4). Thus, this action may be removed by this Court pursuant to 28 U.S.C. §1441." *Notice,* at page 4. (Emphasis supplied)

Federal Medicaid law provides the statutory basis by which Colorado was obligated to seek recovery for what it spent as a result Merck's alleged fraud. 42 U.S.C. §1396a(a)(25) provides, in pertinent part:

> "(A) That the **State** or local agency administering such plan **will take all reasonable measures to ascertain the legal liability of third parties**…legally responsible for payment of a claim for a healthcare item or service to pay for care and services available under the plan… and,
>
> (B) that in any case where such legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement a state can reasonably expect to recover exceeds the costs for such recovery, **the State** or local agency **will seek reimbursement for such assistance to the extent of such legal liability**…" (Emphasis supplied)

The United States Supreme Court has made it clear what is meant in Section (B) when it addressed the obligation of states to pursue third parties and to "take all reasonable measures to ascertain the legal liability of third parties…to pay for care and services available under the plan":

> "States are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care, FN4 and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program. See §1396a. FN4. The exact percentage of the federal contribution is calculated pursuant to a formula keyed to each State's per capita income. See 42 U.S.C. §1396d(b). One such requirement is that the state agency in charge of Medicaid (here, ADHS) "take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the plan." §1396a(a)(25)(A) (2000 ed.). FN5. The agency's obligation extends beyond mere identification, however; FN5. A "third party" is defined by regulation as "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan." 42 CFR §433.136(2005) 'in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the **State** or local agency **will seek reimbursement** for such assistance to the extent of such legal liability.' §1396a(a)(25)(B). To facilitate its reimbursement from liable third parties, **the State must**, 'to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, [have] in effect laws under which, **to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such**

7

**health care items or services.**' §1396a(a)(25)(H)".

*Arkansas Department of Health and Human Services, et al v. Ahlborn,* 547 U.S. 268, 275 – 276, 126 S.Ct. 1752, 1758 – 1759, 164 L.Ed2d 459 (2006) (Emphasis supplied).

In furtherance of this statutory mandate, Colorado enacted the "Colorado Medical Assistance Act". Within Part 3 (Recovery), C.R.S. §§25.5-4-301(5)(a) – (e) establish the right of the state department to a lien "against the amount of the judgment, award, or settlement in a suit or claim against such third party" who or which may be liable for the medical assistance "to or on behalf of a recipient pursuant to the provisions of this article…" Under (e): "**The state department's right to recover under this section is independent of the recipient's right**." Emphasis supplied. Notwithstanding the state's ability to file an independent suit or, as is more often the case, notify plaintiff's counsel of the state's lien and intention to collect out of any recovery against a tortfeasor, the state's **obligation** to recover from third parties is mandatory, irrespective of the methodology employed to do so.

Because the statutory language of the Medicare statute is unequivocal ("will take all reasonable measures" and "will seek reimbursement for such assistance to the extent of such legal liability"), the Attorney General was compelled to bring an action against Merck. He declined, although lacking discretion to do so[3], thereby empowering the Plaintiff, under the **applicable** *McCroskey* (McQuillen) test and other authorities cited herein, to bring this action in his derivative capacity on behalf of the taxpayers of the State of Colorado.

## CONCLUSION

Applying the *McCroskey/McQuillen* test: 1. Colorado had a clear right and power to sue but declined to do so; 2. under 42 U.S.C. §1396a(a)25(A) and (B), there was a "duty devolving upon (Colorado) as to which (it had) no discretion and which (it) refused to perform"; and,

---

[3] Arguably *ultra vires* conduct characterized by a refusal to act when legally obligated to do so. Thus, by even the *McCroskey/McQuillen* test cited by Merck, Plaintiff had a right to bring this action.

3. the Attorney General refused to bring an action against Merck despite being fully advised by Plaintiff's counsel of the legal bases and statutory mandates for doing so. Under the within circumstances, where Colorado was compelled by the Medicaid statute **and** the Colorado Medicaid Assistance Act to determine whether a third party might be liable for Medicaid costs and mandated to "seek reimbursement for such assistance to the extent of such legal liability", Plaintiff's standing and claim are both legally supportable and factually justifiable. **If Plaintiff's analysis were not correct, that federal law requires recoupment of funds from at-fault third parties, why would Merck have agreed under the Master Settlement Agreement to the appointment of The Garretson Firm as the Lien Administrator?** The Defendant's Motion should be denied.

## VERIFICATION

I, Stuart A. Kritzer, being of lawful age and first duly sworn, hereby verify in my capacity as counsel for the Plaintiff that the facts noted herein are, to the best of my knowledge, correct and accurate.

>               /s/ Stuart A. Kritzer
> Stuart A. Kritzer

| | |
|---|---|
| STATE OF COLORADO | ) |
|  | ) ss. |
| City and County of Denver | ) |

SUBSCRIBED AND SWORN to before me this 29th day of September, 2009, by Stuart A. Kritzer.

Witness my hand and official seal.

Melanie J. King, Notary Public, State of Colorado

>               /s/ Melanie J. King,
> Melanie J. King, Notary Public
> 140 East Nineteenth Avenue, Third Floor
> Denver, Colorado 80203
> (303) 393-1111
> My commission expires:  12/15/2009

Respectfully submitted this 29th day of September, 2009.

         LAW OFFICES OF STUART A. KRITZER, P.C.

         By: */s/Stuart A. Kritzer*
           Stuart A. Kritzer, Esquire
           140 East 19th Avenue, 3rd Floor
           Denver, CO  80203
           (303) 393-1111

         LEVIN, PAPANTINO, THOMAS, MITCHELL,
         ECHSNER & PROCTOR, PA
          Peter L. Kaufman, Esquire
          316 South Baylen Street, Suite 600
          Pensacola, FL  32502
          (850) 435-7000

         ATTORNEYS FOR PLAINTIFF JAMES FRANKLIN

## CERTIFICATE OF SERVICE

  I hereby certify that on the 29th day of September, 2009, I electronically filed the foregoing Plaintiff's Verified Response to Defendant's Motion for Order to Show Cause Why Plaintiff's Complaint Should Not Be Dismissed with the Clerk of the Court via the CM/ECF system which will send a Notice of Filing to all parties accepting electronic service.

           */s/Melanie J. King, Legal Assistant*
           Melanie J. King, Legal Assistant