UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
| | : | |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

**THIS DOCUMENT RELATES TO:**
  *Sue Archer, et al. v. Merck & Co., Inc., et al.*, **Case No. 06-767 (as to Harold Ousley Only)**

## ORDER & REASONS

Before the Court is Plaintiff Harold Ousley's Motion to Enforce Settlement (Rec. Doc. 22588). Merck opposed the motion. On September 17, 2009, the Court heard oral argument and took the matter under submission. For the following reasons, the Plaintiff's Motion to Enforce Settlement is DENIED.

**I.   BACKGROUND**

On January 5, 2009, Mr. Ousley received a notice of points award, which he accepted on January 12, 2009. At some point thereafter, Mr. Ousley's claim was subjected to a mandatory periodic audit pursuant to Section 10.2 of the Master Settlement Agreement ("MSA").[1] Based on this audit, Mr. Ousley's points award was reduced. Mr. Ousley chose not to pursue an appeal to the Special Master as provided for in the MSA. Instead, on August 14, 2009, Plaintiff filed

---

[1] The parties dispute when the audit actually took place.

1

the instant motion asserting that the audit of his claim was not conducted timely, that he had reasonably relied on the initial points award, and that the Court should enforce his initial points award.  Mr. Ousley did not contest the accuracy of the audit.

## II.     LAW & ANALYSIS

Article 10 of the MSA, entitled "Quality Control and Audit Procedures," vests the Claims Administrator with broad discretion to audit claims in an effort to ensure accuracy and to prevent fraud.  Section 10.2.1, entitled "Mandatory Periodic Audits," specifically provides:

> (i) after 2,500 Program Claims have been Completed ... on a quarterly basis the Claims Administrator shall audit between 2.0% and 5.0% (the precise percentage within such range to be reasonably determined by Merck and the NPC from time to time or, if they cannot agree, as determined by the Claims Administrator (within such range) in its discretion) of the total Program Claims Completed by Enrolled Program Claimants during the prior quarter (or, in the case of the first such audit, since the Execution Date) and (ii) the Claims Administrator otherwise may audit such other Program Claims as the Claims Administrator, in its discretion, shall determine is warranted.

Plaintiff asserts that, pursuant to this provision, the Claims Administrator is entitled to audit only between two and five percent of Program Claims Completed in the Prior Quarter, thereby reading a time limit into the audit right.  They further argue that because they were not notified of the audit until eight months after Completion of the claim, the audit was not timely.

In light of the intent of Section 10 as a whole, the Court finds that Plaintiff's interpretation of Section 10.2.1 is overly narrow.  Section 10 was included in the MSA as a quality control and fraud prevention device.  Thus, it is appropriate to construe the language contained in Section 10.2.1(i) as the minimum audit requirement imposed upon the Claims Administrator.  In addition to being required to audit at least "between 2.0% and 5.0%" of all claims from the prior quarter, the Claims Administrator also has broad discretion to audit additional claims pursuant to 10.2.1(ii).

Accordingly, whether Mr. Ousley's claim was audited in the quarter following Completion is not material. The Claims Administrator had discretion to audit the claim when they did, and their audit brought to light a previous mistake. That mistake was corrected and Mr. Ousley, pursuant to his amended notice of points, will receive the amount to which he is rightfully entitled, as will the other Vioxx claimants. Furthermore, it was not reasonable for Mr. Ousley to rely on his initial notice of points as Section IV of that document expressly stated that the claim was subject to a potential audit pursuant to Section 10 of the MSA.

### III.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Plaintiff's Motion to Enforce Settlement (Rec. Doc. 22588) is DENIED.

New Orleans, Louisiana, this 30th day of   September  , 2009.

_____
UNITED STATES DISTRICT JUDGE