UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX | : |
| | : MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : |
| | : SECTION L |
| | : |
| This document relates to ALL CASES | : JUDGE FALLON |
| | : MAG. JUDGE KNOWLES |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER REQUIRING PAYMENT OF COMMON BENEFIT FEES BY PLANS PARTICIPATING IN THE PRIVATE LIEN RESOLUTION PROGRAM**

Hagens Berman Sobol Shapiro LLP ("Hagens Berman") respectfully moves this Court to enter an order requiring certain Third Party Payor ("TPP") participants in the private lien resolution program to put 10% of their recovery towards the payment of common benefit fees to any counsel who provided substantial services toward the creation and implementation of the private lien resolution program ("LRP").

Over the course of the past year, several law firms, including Hagens Berman, acting as Negotiating Third Party Payor Counsel, dedicated long hours in pursuit of a creative solution to protecting the rights of third party payors while simultaneously encouraging the prompt distribution of settlement funds in MDL No. 1657: *In re. Vioxx Products Liability Litigation*. These labors resulted in the creation of a totally unique lien resolution process for private health plan claims. The private Lien Resolution Program (LRP) will resolve the private health plan liens of thousands of individuals participating in the Vioxx Settlement and benefitting hundreds of third party payors whose rights may not have otherwise been protected, in a swift and efficient manner.

1

As of the time of this writing, 477 health plans representing over 90% of the private TPPs in the country, have elected to participate in the LRP. In addition, 20,214 Eligible Claimants have elected to take advantage of the benefits of the program. The time, efforts, and advocacy undertaken by various firms in pursuit of this lien resolution program created tremendous value and common benefit for hundreds health benefit plans. In recognition of this fact, Hagens Berman respectfully moves this Court for entry of an Order requiring payment into a common benefit fund of 10% of the gross recovery by any plan participating in the Private Lien Resolution Program as specified and for the reasons outlined in below and in the accompanying Affidavit of Thomas M. Sobol and Affidavit of Joseph Grinstein.[1]

## I. BACKGROUND

Over a year ago, Negotiating Third Party Payor Counsel ("TPPC") began discussions with the Plaintiffs' Steering Committee concerning the implementation of a novel program that sought to resolve liens held by private third party payors ("TPPs") in a manner that benefitted both TPPs and eligible settling individual claimants. The TPPC represented certain TPPs (itemized on Attachment A to the Settlement Agreement) in negotiating with the PSC. These negotiations went on for over an year, and involved significant hours of work by multiple law firms.

On January 15, 2009, the TPPC and the PSC entered into a Settlement Agreement that established a Private Lien Resolution Program for Eligible Claimants. The Settlement Agreement provided that participating TPPs would drastically reduce the amount of liens for participating Eligible Claimants ("ECs") in exchange for minimizing their transaction costs in pursuing these liens individually after final settlement proceeds issued. The amount of lien was

---

[1] For reasons outlined below, counsel do not seek common benefit contributions from those plans itemized in Attachment A to the Private Lien Resolution Program Settlement Agreement.

2

capped at approximately 15% of an EC's total lien amount. The Agreement also provided an opportunity for other TPPs to participate in the program under the same terms and the TPPC worked diligently to facilitate participation by other TPPs. This work included, for example,

- informing and keeping this Court apprised of the program at monthly status conferences;
- working with the Garretson Firm to develop formal written notice that outlined the program and an accompanying enrollment form;
- issuing multiple notices to counsel for ECs;
- monitoring the process of enrolling ECs; and
- working with the parties to twice extend the initial participation deadline (from March 20, 2009 to September 15, 2009) and sending out additional notices.

Further, in May 2009, the TPPC moved this Court to approve a "matching process" in which a database of non-exclusively federally insured eligible claimants obtained by the Garretson Firm would be matched against the TPPC's list of known Vioxx users to determine the percentage of ECs enrolled in the program. Following approval of the process in Pretrial Order No. 40, The Garretson Firm and Rawlings & Associates undertook the matching protocol, yielding a list of approximately 6,700 eligible claimants who had private insurance obligations who had not yet joined the lien resolution program.

The TPPC and the PSC have continuously monitored the number of enrollees in the Private Lien Resolution Program – both ECs and TPPs – and the TPPC in particular has worked to ensure that ECs in particular are familiar with the program and understand the advantages to participating in the program, including moving this Court to require that formal written notice of the Private Lien Resolution Program be sent to all eligible claimants and that primary counsel for

3

all ECs (as defined in the Master Settlement Agreement) certify that such notice has been given in order to ensure that *all* ECs have had an opportunity to participate in the LRP. The Court entered such an order on September 15, 2009 (*see* Pretrial Order No. 48).

## II. ARGUMENT

Under authority granted by the Supreme Court's common benefit doctrine, courts may enter orders to provide for the fair and equitable sharing among plaintiffs of the costs of special services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in complex litigation. *See Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Trustees v. Greenough*, 105 U.S. 527 (1881). Courts have adopted and utilized this authority in the MDL context on multiple occasions. *See, e.g., In re. Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977); *In re. MGM Grand Hotel Fire Litigation*, 660 F. Supp. 522, 525-29 (D.Nev. 1987).

This Court, like the majority of MDL courts, has recognized the value of common benefit work. In Pretrial Order No. 6(D), this Court directed the Allocation Committee created by the Settlement Agreement entered into by Merck & Co. and Negotiating Plaintiffs' Counsel to be "governed and guided by this comprehensive statement of general principles" in reviewing submissions and making recommendations to the Court for the allocation of common benefit fees to counsel. Continuing, this Court noted

> The over-arching guidance that the Allocation Committee is to consider is the contributions of each common benefit attorney to the outcome of the litigation.
>
> ... Substantively, the committee should look to general fee jurisprudence to identify the factors that should be applied in making appropriate allocations. The *Johnson* factors are applicable to this litigation and should be considered in addition to other matters considered by the courts to evaluate fee allocations.

4

> *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)…

Pretrial Order No. 6(D), dated September 15, 2008, at p. 2.[2]

The TPPC and associated counsel undertook negotiations with the PSC for the benefit of a discrete group of health benefit plans. These plans, itemized on Attachment A to the Private Lien Resolution Program Settlement Agreement (the "Attachment A Plans"), have been actively involved in the litigation from the beginning and, with the TPPC, played a significant role in crafting the Private Lien Resolution Program, in which all of the Attachment A Plans are participating.[3]

Yet multiple other TPPs, without any labor of their own, have benefitted from the time, efforts, and advocacy engaged in by the TPPC and associated counsel. In the words of this Court, when the "contributions of [the TPPC] to the outcome of the litigation" are considered in this instance and the substantial monetary benefit to these additional plans made clear, justice requires that these additional plans not be allowed to act as free riders, reaping the benefits of the labor of others for nothing.

---

[2] *Johnson* delineates twelve factors to be taken into consideration when determining fee awards. These include: (1) time and labor required; (2) novelty and difficulty of questions presented; (3) skill requisite to properly perform the legal service; (4) preclusion of other employment due to time and effort spent on the case; (5) customary fees; (6) whether the fee is fixed or contingent; (7) time limitations, whether imposed by circumstances or the client; (8) results obtained; (9) experience, reputation, and expertise of the attorneys; (10) undesirability of the case; (11) nature and length of the relationship with the client; and (12) awards in similar cases. *See also In re. High Sulfur Gulf Content Gasoline Prods. Liab. Lit.*, 517 F.3d 220 (5th Cir. 2008); *In re. Diet Drugs Prods. Liab. Lit.*, 401 F.3d 143, 169 (3d Cir. 2005); *Strong v. Bell South Telecommunications, Inc.*, 137 F.3d 844, 850 (5th Cir. 1998); *In re. General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Lit.*, 55 F.3d 768, 821 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995); *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 165 (3d Cir. 1973); *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830 (E.D. La. 2007). The work undertaken by the TPPC and associated counsel satisfy the *Johnson* factors and the TPPC can provide greater briefing on this issue should the Court so require.

[3] The Attachment A Plans, represented by Rawlings & Associates PLLC and Lowey, Dannenberg, Cohen, & Hart, P.C., in recognition of the work undertaken on their behalf, have agreed to compensate the TPPC and associated counsel and therefore counsel does not believe they should be required to further contribute to the third party payor common benefit fund outlined herein.

5

Under normal circumstances, TPPs would pay approximately 20% in fees for recovery of this sort. Hagens Berman asks that half that amount – 10% – be contributed to common benefit work by participating TPPs, all of which received benefit and none of which incurred any work or expenses in connection with the Private Lien Resolution Program and the TPPC's common benefit work. This request befits the work undertaken, benefit provided, as well as the size of the corpus of recovery generated by the Private Lien Resolution Program.

### III. CONCLUSION

For the reasons articulated herein, Hagens Berman respectfully seeks an order requiring the contribution to a third party payor common benefit fund of 10% of gross proceeds gained by health benefit plans and third party payors participating in the Private Lien Resolution Program.

Dated: October 1, 2009

Respectfully submitted,

Thomas M. Sobol, Esq.
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
(617) 482-3700
tom@hbsslaw.com

*In his capacity as*
*Negotiating Third Party Payor Counsel*