UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION L |
| This document relates to ALL CASES | JUDGE FALLON |
| | MAG. JUDGE KNOWLES |

### AFFIDAVIT OF THOMAS M. SOBOL

I, Thomas M. Sobol, do hereby solemnly swear the foregoing is accurate:

1. I am a partner in the law firm of Hagens Berman Sobol Shapiro LLP and have acted as Negotiating Third Party Payor Counsel ("TPPC"), as defined in the Settlement Agreement that created the Private Lien Resolution Program (hereinafter referred to as the "Private Lien Resolution Program Settlement Agreement," attached as Exhibit A). I submit this affidavit in support of the Motion for Order Requiring Payment of Common Benefit Fees by Plans Participating in the Private Lien Resolution Program.

2. In mid-2008, I began negotiations with the Plaintiffs' Steering Committee concerning the implementation of a novel program that sought to resolve liens held by private third party payors ("TPPs") in a manner that benefitted both TPPs and Eligible Claimants ("ECs"). I represented certain TPPs (itemized on Attachment A to the Private Lien Resolution Program Settlement Agreement) in negotiating with the PSC. These negotiations went on for many months, and involved significant hours of work by my firm, as well as the law firms of Susman Godfrey LLP, Seeger Weiss LLP, Rawlings & Associates, PLLC and Lowey Dannenberg, Cohen & Hart, P.C.

1

3.  On January 15, 2009, the TPPC and the PSC entered into the Private Lien Resolution Program Settlement Agreement for Eligible Claimants. *See* Exhibit A. The Private Lien Resolution Program Settlement Agreement provided that participating TPPs would drastically reduce the amount of liens for participating ECs in exchange for minimizing their transaction costs in pursuing these liens individually after final settlement proceeds issued. The amount of lien was capped at the *lesser* of 50% of the amount of the lien or 15% of an ECs' Gross Settlement Amounts for amounts less than $100,000, 12.5% for Gross Settlement Amounts over $100,000 and up to $250,000; and 10% of your Gross Settlement Amount exceeding $250,000. The Private Lien Resolution Program Settlement Agreement also provided an opportunity for other TPPs to participate in the program under the same terms.

4.  Subsequent to the creation of the Private Lien Resolution Program, I traveled to New Orleans on numerous occasions and engaged in many phone calls to inform the Court about the program. I continue to update the Court on the status of this program at the monthly Vioxx MDL status conferences and provide updates the PSC on a regular basis.

5.  I have worked with The Garretson Firm to develop formal written notice that outlined the program and an accompanying enrollment form. Multiple notices were issued to counsel for ECs. The TPPC also worked to establish the timing and format of these notices and continuously monitored the process of enrolling ECs. The participating TPPs have twice agreed to extend the initial participation deadline (from March 20, 2009 to September 15, 2009), and additional notices have been necessary.

6.  The TPPC has also taken measures to encourage non-participating TPPs to participate in the LRP. To date, a significant number of additional private health plans have agreed to participate in the program for a total of 477 participating TPPs.

7. In May of 2009, the TPPC asked the Court to approve a "matching process" in which a database of non-exclusively federally insured eligible claimants obtained by the Garretson Firm would be matched against the TPPC's list of known Vioxx users to determine the percentage of eligible claimants enrolled in the program. Pretrial Order No. 40 approved this process, which involved The Garretson Firm and individuals from Rawlings and Associates. The matching process yielded a list of approximately 6,700 eligible claimants who were covered by the original participating TPPs and had private insurance obligations who had not yet joined the lien resolution program.

8. I have continuously monitored the number of enrollees in the Private Lien Resolution Program, both ECs and TPPs, and have taken several steps to ensure that ECs in particular are familiar with the program and understand the advantages to participating in the program. Recently, I asked the Court to require that formal written notice of the LRP be sent to all eligible claimants and that primary counsel for all ECs (as defined in the Master Settlement Agreement) certify that such notice has been given in order to ensure that *all* ECs have had an opportunity to participate in the LRP. The Court issued such an order on September 15, 2009 (*see* Pretrial Order No. 48).

Dated: October 5, 2009.

_____
THOMAS M. SOBOL