UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX | MDL Docket NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION L |
| This document relates to ALL CASES | JUDGE FALLON <br> MAG. JUDGE KNOWLES |

**AFFIDAVIT OF JOSEPH S. GRINSTEIN**

I, Joseph S. Grinstein, do hereby solemnly swear the foregoing is accurate:

1. I am a partner in the law firm of Susman Godfrey LLP and have acted as litigation counsel in this matter for certain private third party payors ("TPPs") (itemized on Attachment A to the Private Lien Resolution Program Settlement Agreement). I submit this affidavit in support of the Motion for Order Requiring Payment of Common Benefit Fees by Plans Participating in the Private Lien Resolution Program.

2. The TPPs whom I represented commenced efforts to enforce private reimbursement rights in January 2008, shortly after the global Vioxx settlement was announced. We sent a letter to the PSC and to all of the law firms we could identify as representing claimants in the Vioxx litigation. In that letter, we informed those lawyers of the existence of our clients' reimbursement rights and asked them to provide information necessary for our clients to assert their liens.

3. After the letter-writing campaign proved unsuccessful, my clients filed suit in this Court on April 14, 2008. *See AvMed, Inc. et al. v. BrownGreer PLC, et al.*, Civil Action No. 08-1633 (the "*AvMed* case"). The complaint in the *AvMed* case sought enforcement of my clients' reimbursement rights against a variety of defendants.

1

4. The filing of the *AvMed* complaint likewise did not generate any immediate, substantive dialogue between my clients and the PSC about the resolution of my clients' reimbursement rights. Accordingly, on June 10, 2008, my clients expanded their enforcement efforts by filing a motion for a temporary restraining order and temporary injunction, seeking to enjoin distributions to all Vioxx claimants until such time as their identities were revealed to my clients and my clients had an opportunity to assert reimbursement liens against them.

5. The filing of the temporary restraining order/temporary injunction papers initiated a period of intense litigation between my clients, on the one hand, and BrownGreer and the PSC, on the other. It also finally brought about substantive discussions between the parties about resolution of the lien issue. On June 23 and June 24, 2008, I met with attorneys from the PSC and reached a tentative agreement with them to take down the motions, in exchange for which the PSC would agree that my clients could perform a match between their membership records and BrownGreer's claims data for the purpose of identifying individuals against whom my clients could assert liens.

6. Unfortunately, the parties were unable to finalize the tentative agreement reached between them in June 2008. However, we continued thereafter to meet to attempt to reach resolution. For example, on Sunday, July 13, 2008, lawyers from Susman Godfrey, LLP; Rawlings & Associates; and Lowey Dannenberg Cohen & Hart, P.C., travelled to Philadelphia to meet in person with the PSC. At that meeting, I made a powerpoint presentation that proposed a framework for settling disputes between the TPPs and the PSC with respect to reimbursement claims.

7. Litigation to enforce those reimbursement rights continued on a parallel track. On July 25, 2008, I argued before this Court the TPPs' motion for a preliminary injunction. After

this Court denied that motion, the TPPs then appealed to the Fifth Circuit, where I argued on November 4, 2008. The Fifth Circuit affirmed this Court's denial of the TPPs' motion for a preliminary injunction on November 17, 2008.

8. Following the Fifth Circuit argument, Mr. Thomas Sobol led renewed discussions between our group of clients and the PSC. Those discussions, which eventually culminated in the successful creation of the Private Lien Resolution Program, are detailed in Mr. Sobol's separate affidavit.

9. Although my clients' pursuit of preliminary injunctive relief was unsuccessful before this Court, it cannot reasonably be disputed that our larger litigation efforts led to the eventual settlement of all TPP reimbursement claims negotiated by Mr. Sobol and the PSC. Those efforts demonstrated to all parties that private TPPs would aggressively pursue their reimbursement rights, and that those rights would ultimately be vindicated in some forum (albeit not in the context of preliminary injunctive relief). Indeed, our efforts elicited from this Court statements to the effect that "many of the [TPP plan] contracts, if not all of the contracts" provide TPPs with "a lien against the individuals under the terms of most of the policies that I have become familiar with, and they have a right to satisfy that lien." July 24, 2008 Tr., at 97.

10. The litigation work that our firm and its co-counsel has performed in this matter has been extensive. My firm's time records indicate that Susman Godfrey's attorneys and paralegals worked more than 2,000 hours and incurred approximately $300,000 in out-of-pocket expenses on this matter.[1] The lawyers at Rawlings & Associates and Lowey Dannenberg, along

---

[1] My firm is also involved in pursuing Vioxx claims in state court in New Jersey against Merck on behalf of TPPs. We have kept detailed time records of both our time and expenses in this Court and in New Jersey, and have attempted to separate the two matters. Nevertheless, in the interest of full disclosure, there is likely some time and expenses we have recorded on this matter that were actually incurred in connection with the New Jersey matter. I believe, however, that the vast majority of the 2,000 hours identified above were, in fact, worked in pursuit of this litigation.

with Mr. Sobol and his firm, incurred additional time and expense on top of that. Absent relief from this Court, therefore, the TPPs whom we do not represent, but who are participating in the Lien Resolution Program, will obtain the benefit of this time and expense without providing compensation for it.

Dated: October 5, 2009.

JOSEPH S. GRINSTEIN