## New York Miscellaneous Reports

IN THE MATTER OF GILLETTE, 195 Misc.2d 89 (2003)

756 N.Y.S.2d 835

IN THE MATTER OF THE SELF-PETITION OF RICHARD GILLETTE FOR AN

ORDER ESTABLISHING A SUPPLEMENTAL NEEDS FILE NO. 2003-052 TRUST

FOR THE BENEFIT OF THE PETITIONER, PURSUANT TO SECTION 7-1.12 OF

THE ESTATES, POWERS AND TRUSTS LAW.

23463.

Surrogate's Court, Broome County.

February 27, 2003.

Albert B. Kukol, Esq. Attorney for Petitioner, Levene, Gouldin & Thompson.

DECISION AND ORDER

EUGENE E. PECKHAM, S.

This is a petition by Richard Gillette, a disabled person, for the establishment of a Supplemental Needs Trust (SNT) for his benefit pursuant to EPTL § **7-1.12**. New York and Federal law both permit the establishment of:

> "A trust containing the assets of such a disabled individual which was established for the benefit of the disabled individual while such individual was under sixty-five years of age by a parent, grandparent, legal guardian, or court of competent jurisdiction, if upon the death of such individual the state will receive all amounts remaining in the trust up to the total value of all medical assistance paid on behalf of such individual;" Social Services Law § 36b(2)(b)(2)(iii) and **42 U.S.C. § 1396** p (d)(4)(A).

Mr. Gillette alleges in his petition that his parents and grandparents are deceased and that, despite his disability, he does not need a guardian. He also alleges that he receives Social Security Disability (SSD), Supplemental Security Income (SSI), and Medicaid payments. Thus he requests the court to establish the trust.

Originally a trust was created on November 26, 2002, by Kathryn Grant Madigan, Esq., acting pursuant to a power of

**Page 90**

attorney from Mr. Gillette. It is hornbook law that a power of attorney is an agent for the principal and thus the act of Ms. Madigan in creating the trust was really the act of Mr.

Case 3:05-md-01699-CRB   Document 2483-3   Filed 10/03/09   Page 2 of 51

Gillette as principal. The trustee was Albert B. Kukol, Esq. and the trust was funded with the proceeds of a retroactive award from the Social Security Administration. Under New York law a trust is created when four requirements have been met. The trust has a beneficiary, a trustee, a trust res and there has been delivery of the res. *Warren's Heaton on Surrogate Courts* § 46.01(a). The SNT for Mr. Gillette was established on or about November 26, 2002 when all of these required elements were completed.

When the Social Security Administration was advised of the trust, it advised by letter on December 19, 2002 that the trust was a "countable resource that disqualifies Richard Gillette for SSI" because the trust was not set up by a "parent, grandparent, legal guardian or court order."

In his petition, Mr. Gillette requested the court to establish the trust *nunc pro tunc*. Both the Broome County Department of Social Services and the Social Security Administration filed admissions of service in this proceeding and both failed to appear on the return day. Ordinarily, a court can enter an order *nunc pro tunc* when "no persons will be prejudiced thereby". *In re Willner's Estate*, **199 Misc.31** (Surr.Ct. Kings Co., 1950) appeal dismissed 1A.D.2d 838 (2d Dept. 1956); *In re Harris' Will*, **35 Misc.2d 443** (Surr.Ct., Fulton Co. 1962); *Siegel*, *New York Practice*, § 420, p. 684

In this case a *nunc pro tunc* order to November 26, 2002 would cause the Social Security Administration to be required to pay SSI retroactively despite its letter cutting off SSI on December 19, 2002. The time to request a hearing on the cut off of SSI expired after 60 days and thus the order became final on or about February 19, 2002. **20 C.F.R. § 404.933**. Clearly it would be prejudicial to Social Security to require it to pay SSI retroactively.

Furthermore, since the trust was really created by Mr. Gillette acting through his agent on November 26, 2002, the court cannot now establish the trust. It had already been established by Mr. Gillette when the trust was signed by him and the trustee and funded, thus completing the acts necessary to create a trust. The court cannot by an order *nunc pro tunc* correct an act done which was improper when done. *Mohrmann v Kob*, **291 N.Y. 181** (1943); *Matter of Carrick*, **103 Misc.2d 645** (Surr.Ct. Nassau Co. 1980). In *Mohrmann*, a divorce decree

Page 91

nunc pro tunc back to 1916 was sought in 1941 on the basis of a separation agreement entered into in 1916. The Court of Appeals said ". . . an order *nunc pro tunc* may not serve to record a fact, such as a divorce, as of a prior date when the fact did not exist." In the present case, an order cannot be entered *nunc pro tunc* that the Court established the Gillette SNT on November 26, 2002 when in fact the Court did not establish the trust on that date.

By letter dated February 24, 2003, counsel for Mr. Gillette has now submitted a new unsigned SNT together with a proposed "Order Establishing a Supplemental Needs Trust". The Court will treat this as an amendment to the Petition requesting the court to establish the new trust. The new trust recites that the grantor is Richard Gillette "pursuant to an order of the Surrogate's Court, County of Broome". This is the exact method recommended by Judge Kasoff's treatise for an individual who has no parent or grandparent and thus requires a court order to establish the trust. *Kasoff & Robert*, *Elder Law & Guardianship in New York*, § 8.90, p 8-47.

As set forth above, the law requires that an SNT for a disabled person under 65 be established by "a parent, grandparent, legal guardian or court." However, there is no logical reason that the disabled person cannot be the grantor and petition the court to establish the trust, as long as the trust has not been signed by the trustee and funded before submission to the court. If all the requirements to create a trust have not been completed, the trust is not established. Even though the grantor is the disabled person, the court can entertain the petition and establish the trust by court order, so long as the creation of the trust has not been completed before the petition is submitted to the court. In this way, the expense of a guardianship proceeding can be avoided for a person who is disabled, but not otherwise in need of a guardian.

The Court has reviewed the newly proposed Richard Gillette Supplemental Needs Trust Agreement submitted with counsel's letter of February 24, 2003. The Trust Agreement meets the requirements of EPTL § **7-1.12** and Social Services Law § **366**(2)(b)(2) and is therefore approved and established by the Court.

This Decision constitutes the order of the Court.
**Page 92**

Copyright © 2009 Loislaw.com, Inc. All Rights Reserved

## Loislaw Federal District Court Opinions

KING v. SAVATIEL (S.D.Miss. 8-8-2007)

WANDA KING, ON BEHALF OF HER MINOR AND AS NEXT FRIEND, IVERSON KING

Plaintiff v. DR. ANGELA SAVATIEL AND VICKSBURG HEALTHCARE, LLC d/b/a RIVER

REGION MEDICAL CENTER Defendants.

CIVIL ACTION NO. 5:05CV109 DCB-JCS.

United States District Court, S.D. Mississippi, Western Division.

August 8, 2007

### ORDER OF COURT ESTABLISHING THE IVERSON KING SPECIAL NEEDS TRUST

DAVID BRAMLETTE III, District Judge

On this day came on to be heard the Application to Establish the Iverson King Trust for the benefit of Iverson King, a minor, and an incapacitated person (the "Beneficiary"), pursuant to **42 United States Code Section 1396p** (d)(4)(A), as amended August 10, 1993, by the Revenue Reconciliation Act of 1993, Pub.L. 103-55, filed by Lucien C. Gwin, III, counsel for the Beneficiary (hereinafter referred to as "Applicant"), and the Court proceeded to review the application upon a finding that due and proper notice of the application and hearing on the application have been given to all interested persons, and that Applicant and all persons necessary for jurisdiction have appeared in person or by attorney.

The Court, having having reviewed the application and the other documents filed herein, finds that it has jurisdiction and venue over the persons and subject matter of this proceeding; that all proceedings have been lawful and proper; that the Beneficiary, a minor,
Page 2
is a disabled person as defined in the Social Security Act, Section 1614(a)(4e), **42 United States Code Section 1382C** (a)(3); that there is no court-appointed guardian for the estate of the Beneficiary, and there is no proceeding pending for the appointment of such guardian; and that it would be in the best interests of the Beneficiary for this Court to enter an order and decree establishing a "special needs" trust for the Beneficiary's benefit as specified in
**42 United States Code Section 1396p** (d)(4)(A), as amended August 10, 1993, by the Revenue Reconciliation Act of 1993, Pub.L. 103-55.

It is, therefore, ORDERED by the Court as follows:

1. That monies awarded to the Beneficiary in the above-entitled and numbered cause shall be held in trust for the benefit of Beneficiary pursuant 42 U.S.C. § 1396p (d)(4)(A), and pursuant to the terms of the trust agreement attached to this hereto as

Exhibit "A".

2. That THE CENTER FOR SPECIAL NEEDS TRUSTS ADMINISTRATION, INC., is hereby appointed as the Trustee of the Trust; upon the Trustee's acceptance of such Trust, said funds from the final judgment in this case including all interest earned presently, be ORDERED delivered to the Trustee for the benefit of the Beneficiary. The Trustee shall hold, invest, administer, and distribute the funds as a "special needs" trust having the terms and provisions set forth in the trust agreement establishing the Iverson King Special Needs Trust which is attached hereto, designated Exhibit "A," and incorporated by reference into this decree.

3. That any persons or entities, owing any monies (including any lump sums and/or structured annuity payments) to the Beneficiary shall deliver said funds as they

**Page 3**

become due and payable in conformance with the terms of the settlement to THE CENTER FOR SPECIAL NEEDS TRUSTS ADMINISTRATION, INC., in its capacity as the Trustee.

4. The Trustee has permission to charge a reasonable fee for its trust services, at the rates and in the manner provided in the Trust Agreement.

5. IT IS FURTHER ORDERED, that any assets from the settlement of the Beneficiary's personal injury claim, including cash payments as well as any future payment from any structure or annuity, that is purchased as part of the settlement of the claim shall and are hereby irrevocably assigned to Trustee of the trust including all future rights to receive any payment from an annuity or structure. At no time prior to the funding of the Trust are any of the funds from the settlement of this lawsuit available to the Beneficiary or anyone acting on his behalf.

6. That at no time are the funds to be delivered to the Trustee pursuant to this order accessible or in any way available to the Beneficiary or anyone acting on his behalf.

By this Order the Court hereby creates, establishes, and funds the Iverson King Special Needs Trust.

<u>THE IVERSON KING SPECIAL NEEDS TRUST</u>

EXHIBIT "A"

**Page 2**

### TABLE OF CONTENTS

ARTICLE I ................................................................. 4
    PURPOSE ............................................................. 4
ARTICLE II ................................................................ 5
    TRUST FUNDING ...................................................... 5
        2-1 <u>Initial Trust Funding</u> .................................. 5
        2-2 <u>Additions To Trust</u> .................................... 5
ARTICLE III ............................................................... 5
    REVOCATION .......................................................... 5
ARTICLE IV ................................................................ 5

DISPOSITION OF TRUST ESTATE .................................. 5
    4-1   Introduction ........................................ 5
    4-2   Special Non-Support Needs ........................... 6
    4-3   Trustee Guidelines ................................. 6
    4-4   Spendthrift ........................................ 7
    4-5   Public Benefits .................................... 7
    4-6   Supplemental ....................................... 7
    4-7   Trust Termination .................................. 8
    4-8   Termination Upon Death ............................. 8
    4-9   Expenses ........................................... 8
    4-10  Tax Provision ...................................... 9
    4-11  Separate Fund ...................................... 9
    4-12  No Perpetual Trusts ................................ 9
ARTICLE V ....................................................... 9
  TRUSTEE PROVISIONS ............................................ 9
    5-1   Trustee Compensation ............................... 9
    5-2   Trustee Liability .................................. 10
          A.  Liability For Predecessor Fiduciary ........ 10
          B.  Reimbursement .............................. 10
    5-3   Ancillary Trustee .................................. 10
    5-4   Reorganization Or Insolvency Of Corporate Trustee ....... 10
ARTICLE VI ...................................................... 11
  ADMINISTRATIVE PROVISIONS ..................................... 11
    6-1   Investment Authority ............................... 11
    6-2   Management Authority ............................... 11
    6-3   Records, Books Of Account, And Reports ............. 12
    6-4   Applicability Of Texas Trust Code .................. 12
    6-5   Additional Transfers Of Property ................... 12
    6-6   Majority Controls .................................. 12
Page 3
    6-7   Resignation ........................................ 12
    6-8   Removal of Trustee ................................. 12
    6-9   Appointment of Successors .......................... 13
ARTICLE VII ..................................................... 13
  GENERAL PROVISIONS ........................................... 13
    7-1   State; State Plan .................................. 13
    7-2   Execution .......................................... 13
    7-3   Pronouns, Singular and Plural ...................... 13
    7-4   Execution In Counterparts .......................... 13

Page 4

### EXHIBIT "A"

### THE IVERSON KING SPECIAL NEEDS TRUST

THIS TRUST AGREEMENT is made and entered into this _____ day of _____, 2007, by Order of the Honorable David Bramlett, Judge of the United States District Court for the Southern District of Mississippi, Western Division, (hereinafter referred to as Grantor) regarding IVERSON KING and THE CENTER FOR SPECIAL NEEDS TRUSTS ADMINISTRATION, INC. (hereinafter referred to as "Trustee"). The beneficiary is IVERSON KING, a disabled person, as defined in the Social Security Act, § 1614(a)(3), **42 U.S.C. § 1382c**(a)(3) (hereinafter referred to as Beneficiary). This Trust is created, established, and funded for the purpose of providing for the special and supplemental needs of IVERSON KING, the sole Beneficiary hereof. The Trust created, established, and funded hereunder shall be known as the IVERSON KING SPECIAL NEEDS TRUST. This Trust created, established, and funded herein by

Order of Judge David Bramlett of the United States District Court for the Southern District of Mississippi, Western Division, is a result of the following lawsuit: Wanda King, On Behalf Of Her Minor and As Next Friend, Iverson King vs. Dr. Angela Savatiel and Vicksburg Healthcare, LLC d/b/a River Region Medical Center. This trust is established under **42 United States Code Section 1396p**(d)(4)(A), as amended August 10, 1993, by the Revenue Reconciliation Act of 1993, Pub.L. 103-55.

## ARTICLE I PURPOSE

It is the principal purpose and the intent of the Grantor and parties herein to provide a system for fund handling, fiscal management, investment and disbursement, respite care, personal attendant services, advocacy, social development services, rehabilitation care management and moral guidance for IVERSON KING.

It is the secondary intention of the Grantor and parties hereto to provide for a continuing conservation and enhancement of the funds in this trust to supplement all other financial funds and service benefits to which IVERSON KING might be eligible as a result of his disability from any local, county, state or federal agency, or through any public or private profit or non-profit corporations or agencies. It is further the intention of the Grantor to create, establish, and fund a purely discretionary supplemental non-support care fund and not to displace financial assistance that may otherwise be available to him.

IVERSON KING was born on May 5, 2003. He currently needs and will continue to need in the future extensive medical, nursing, rehabilitation and hospital care. He is not currently the beneficiary of a trust or trusts. He is the plaintiff in a lawsuit as set forth above and he will receive funds as a result of the settlement of this lawsuit. These funds are directed to this trust by Order of Judge David Bramlett of the United States District Court for the Southern District of Mississippi, Western Division. In creating, establishing, and funding this Trust in addition to the aforementioned purposes it is also the Grantor's intention to create, establish, and fund a supplemental needs trust wherein all of IVERSON
**Page 5**
KING's funds can be administered in an efficient and coordinated fashion.

## ARTICLE II TRUST FUNDING

2-1 Initial Trust Funding. This Trust shall be initially funded with the assets described in Exhibit A-1 attached hereto. By execution of the order creating, establishing, and funding the trust, the Grantor hereby assigns, conveys, transfers and delivers the described assets to Trustee on even date herewith.

2-2 Additions To Trust. Other property, real or personal, may be transferred to Trustee by anyone with the consent of the Trustee. All property held by the Trustee may be referred to herein as the "Trust Estate."

These funds are directed to this Trust by specific order of the Court and at no time prior to the payment of these funds to the

Trustee are these sums to be considered the property of the Beneficiary.

## ARTICLE III REVOCATION

This Trust shall be irrevocable. The Beneficiary shall have no power or right, whether alone or in conjunction with others, in whatever capacity, to alter, amend, revoke, or terminate this Trust, or any of the terms of this trust agreement, in whole or in part, or to designate the persons who shall possess or enjoy the Trust estate, except as is set out in this instrument.

## ARTICLE IV DISPOSITION OF TRUST ESTATE

During the lifetime of IVERSON KING, the Trust estate shall be held, administered, and distributed as follows:

4-1 Introduction. IVERSON KING suffers from a disability which substantially impairs his ability to provide for his own care and custody and which constitutes a substantial handicap. IVERSON KING resides at home with his parents. He needs ongoing assistance in his activities of daily living. It is not expected that IVERSON KING will experience significant improvement in his impaired development in the future. As a result of his disability, he is not and will not be capable of managing the funds provided in the lawsuit referred to above. The severity of IVERSON KING's disability will cause him to require continuing support, assistance and supervision for the remainder of his life. The funds provided by this aforementioned judgment will be insufficient to provide for all such care and support. It is the intent of the parties hereto in creating, establishing, and funding this Trust that it continue in existence as a supplemental (and emergency) fund to public assistance for IVERSON KING throughout his life. Currently, there exists basic living needs such as dental care, companion care and special equipment which public benefit programs for the disabled do not provide. It is vitally important that IVERSON KING continue to have these programs in order to maintain a level of human dignity and humane
Page 6
care. If this Trust were to be invaded by creditors, subjected to any liens or encumbrances, or cause assistance benefits to be unavailable or terminated, it is likely that the Trust corpus would be depleted prior to IVERSON KING's death, especially since the cost of care for disabled persons (not including any emergency needs) is high. In this event, there would be no coverage for emergencies or supplementation for basic needs. The following trust provisions should be interpreted by the Trustee in light of these concerns and stated intent.

4-2 Special Non-Support Needs. The Trustee shall apply for the benefit of IVERSON KING, for his lifetime, such amounts from the principal or income, up to the whole thereof, as the Trustee in the Trustee's sole and absolute discretion may from time to time deem necessary or advisable for the satisfaction of the Beneficiary's supplemental non-support needs, if any. Any income not distributed shall be added annually to principal. Distributions shall be limited so that the Beneficiary is not disqualified from receiving public benefits to which he is otherwise entitled, and this trust shall be administered so as to

supplement not supplant such benefits. The Trustee may, however, make distributions that would reduce public benefits without terminating the Beneficiary's eligibility for such benefits. The Trustee may make a distribution that would be considered income to a Beneficiary eligible for benefits under the Supplemental Security Income program that would result in a reduction of benefits to the Beneficiary under the "Presumed Maximum Value Rule" or the" One-third Reduction Rule" so long as such distribution will not cause the Beneficiary to be disqualified from the program.

   4-3 <u>Trustee Guidelines</u>. It is the intention of the Grantor to create, establish, and fund a supplemental and emergency fund for the special non-support needs of the Beneficiary and not to displace assistance which may otherwise be available to Beneficiary. As used in this instrument, "special non-support needs" refers to the requisites for maintaining the Beneficiary's good health, safety and welfare when in the discretion of the Trustee such requisites are not being provided by any public agency, office or department of any city, county, or state government, or by the federal government or any other public or private agency or are not otherwise being provided by other sources of income available to him. The Beneficiary may have supplemental or special needs such as dental care, psychological support services, recreation and transportation, supplemental nursing care and similar care which other assistance programs may not otherwise provide. The Trustee is directed to consider these needs when making distributions. Illustrative of the kinds of supplemental, non-support disbursements that would be appropriate for the Trustee to make from this Trust for IVERSON KING include but are not limited to: sophisticated medical or dental or diagnostic work or treatment for which there are not funds otherwise available, including plastic surgery or other non-necessary medical procedures; private rehabilitative training; differentials in cost between housing and shelter for shared and private rooms in institutional settings; supplemental nursing care and similar care that assistance programs may not otherwise provide; telephone and television service, companion care, dental expenses, therapies or supplies to provide tactile stimulation, holistic, herbal or other alternative therapies or services, special equipment such as an electric wheelchair, programs of training, education and social, recreational and entertainment opportunities; advocacy, personal attendant care, legal services, companions for travel, reading, driving and cultural experiences; payments to bring his

**Page 7**

relatives and friends for visitation and to accompany him on periodic outings and vacations, and travel in the event that the Trustee deems such items appropriate and reasonable. The Trustee may purchase, hold, and maintain assets in the name of the Trust or in such other manner as the Trustee deems appropriate (such as business interest, residence, or automobile) that the Trustee deems in its sole discretion to be reasonably needed for the special needs of the Beneficiary, notwithstanding any restrictions under this agreement or under the law that might otherwise make these types of assets improper investments of the Trust estate. The Trustee may not make a distribution which discharges a legal or contractual obligation of the Trustee.

   4-4 <u>Spendthrift</u>. This is a Discretionary Non-Support

Spendthrift Trust. No interest in the principal or income of this
Trust shall be anticipated, assigned or encumbered, or shall be
subject to any creditor's claim or to legal process, prior to its
actual receipt by the Beneficiary. Furthermore, because this
Trust is to be conserved and maintained for the supplemental
non-support needs of the Beneficiary who may be medically
disabled or impaired throughout his lifetime, no part of the
Trust estate, neither principal nor undistributed income, shall
be construed as part of the Beneficiary's "estate" or be subject
to the claims of voluntary or involuntary creditors for the
provision of care and services, including residential care, by
any public entity, office, department or agency of any city,
county, or state government, or by the federal government or any
other public or private agency. Under no circumstances can the
Beneficiary compel a distribution.

4-5 Public Benefits. Because the Beneficiary is disabled and
unable to maintain and support herself independently, the Trustee
shall, in the exercise of the Trustee's best judgement and
fiduciary duty, seek support and maintenance for the Beneficiary
from all available public resources, including Supplemental
Security Income (SSI), Federal Social Security Disability
Insurance (SSDI), and any other appropriate state or local agency
serving the disabled. Further, the Trustee should cooperate with
the Beneficiary's guardian, or legal representative to seek
support and maintenance for the Beneficiary from all available
resources. In making distributions to the Beneficiary for her
special needs, as herein defined, the Trustee shall take into
consideration the applicable resource limitations of the public
assistance programs for which the Beneficiary is eligible.

It is recognized that the Trustee is not licensed nor skilled
in the field of social sciences. The Trustee may seek counsel and
assistance of any state and local agencies that are established
to assist the disabled. The Trustee should use any available
resources, including consultants, to assist in identifying
programs that may be of social, financial, developmental or other
assistance to the Beneficiary. Trustee shall not in any event,
however be liable to the Beneficiary or the remainder beneficiary
of this Trust or any other party for acts undertaken as Trustee
in good faith. The Trustee shall not be liable for failure to
identify all programs or resources that may be available to the
Beneficiary because of her disabilities.

4-6 Supplemental. No part of the corpus of the Trust created,
established, and funded herein shall be used to supplant or
replace public assistance benefits of any city, county, state,
federal or other governmental agency which has a legal
responsibility to serve persons with disabilities which are the
same or similar to the impairment(s) of the Beneficiary herein.
No part of the Trust shall be used to supplant or replace
benefits due from any insurance carrier under any insurance
policy covering the Beneficiary. For
Page 8
purposes of determining the Beneficiary's public assistance
eligibility, no part of the principal or undistributed income of
the Trust estate shall be considered available to said
Beneficiary. In the event the Trustee is requested to release
principal or income of the Trust to or on behalf of the
Beneficiary to pay for benefits, medication, or services which

such public assistance is otherwise authorized to provide (were it not for the existence of this Trust), or in the event the Trustee is requested to petition the Court or any other administrative agency for the release of Trust principal, interest or income for this purpose, the Trustee is authorized and directed to deny such request. The Trustee is authorized, in the Trustee's sole discretion, to take whatever administrative or judicial steps may be necessary to continue the public assistance program eligibility of the Beneficiary, including obtaining instructions from a court of competent jurisdiction ruling the Trust corpus is not available to the Beneficiary for such eligibility purposes. Any expenses of the Trustee in this regard, including reasonable attorney's fees, shall be a proper charge to the Trust estate. In carrying out the provisions of this Trust, the Trustee shall be mindful of the probable future needs of the Beneficiary but not of the Trust remainder beneficiaries.

4-7 <u>Trust Termination</u>. Unless earlier terminated under the provision of this instrument, this Trust shall cease upon the death of the Beneficiary. Any assets remaining in the Trust upon the death of the Beneficiary shall first be used to reimburse the "State" or an agency acting on its behalf, currently Texas Health and Human Services Commission, for medical assistance paid on behalf of the Beneficiary during the administration of this Trust to the extent required by applicable law. It is the intention of the Grantor to create a vested remainder in the "State." Assets remaining in the Trust after such reimbursement shall be distributed as set forth in Article IV Section 9 below.

4-8 <u>Termination Upon Death</u>. Upon the death of the Beneficiary, Trustee shall distribute the remaining Trust Estate to such persons, in such amounts, and upon such terms, trusts and conditions as the Beneficiary shall appoint under the terms of his last Will and Testament, making specific reference to this power. In the event that the Beneficiary has not validly exercised this power to appoint by Will, the remaining Trust Estate shall be distributed to those persons who would be the heirs of the Beneficiary had the Beneficiary died intestate. The distribution of Trust property, for purposes of this Section, shall be determined by the laws of descent and distribution for intestate estates by the State of Texas Probate Code in effect at the time of any distribution under this section.

4-9 <u>Expenses</u>. Upon the death of IVERSON KING, the Trustee may pay any death taxes that may by reason of said Beneficiary's death be due regarding assets passing in accordance with these Trust provisions or otherwise, and expenses related to administration and distribution of the Trust estate if, in the Trustee's discretion, other satisfactory provisions have not been made for the payment of such expenses. The Trustee shall make no payments for obligations incurred for said Beneficiary's health, support and maintenance if the Trustee shall determine in its discretion that payment therefore is the obligation of any city, county, state, federal or other governmental agency which has a legal responsibility to serve persons with disabilities which are the same or similar to the impairment(s) of the Beneficiary herein.

4-10 <u>Tax Provision</u>. The Trustee hereunder shall pay any income tax liability of the Beneficiary which results from income

received by the Trust properly reported on the income tax return
of the Beneficiary. The funds used to pay any such income tax
liability
**Page 9**
shall be paid directly to the appropriate tax authority and
shall not be available to the Beneficiary. The Beneficiary shall
not have any right to or interest in any such funds paid by the
Trustee. Any such funds are not a resource of the Beneficiary and
should not be treated as a distribution of income for purposes of
Medicaid qualification.

In the event of a tax refund any amount refunded shall be paid
directly to the Trustee to the extent such refund is attributable
to amounts previously paid by the Trustee. For purposes of
determining whether an amount is attributable to such prior
payments, any refund (including interest thereon) shall be
attributed to amounts previously paid by the Trustee to the
extent the Trustee made any tax payment for the relevant tax year
which has not been previously refunded. For purposes of
determining whether an amount previously paid has been previously
refunded, any interest included as part of a refund shall not be
used to offset a previous payment by the Trustee.

The Beneficiary or their guardian shall execute any letters,
powers of attorney or other documents required or requested by
the taxing authority in order to allow payment of any refund to
the Trustee.

4-11 <u>Separate Fund</u>. All public assistance benefits for the
Beneficiary of this Trust and all earnings of the Beneficiary of
this Trust shall not be commingled with other Trust assets but
shall be separately held by the Trustee. Nothing in this
provision shall be construed to require the addition to the Trust
Estate of either public assistance benefits or earnings received
by, or on behalf of, any beneficiary herein.

4-12 <u>No Perpetual Trusts</u>. Unless terminated at an earlier date
under the foregoing provisions, any trust created, established,
and funded under this agreement shall cease on the date which is
twenty-one (21) years after the decease of the last to survive of
the beneficiaries alive or in being at the time of the creation
of the Trust and thereupon the Trustee shall distribute and
deliver all of the balance of any share of the Trust estate or
any portion thereof then held for the benefit of a living
beneficiary of said Trust to such beneficiary or to their legal
representative.

<u>ARTICLE V TRUSTEE PROVISIONS</u>

The provisions of this Article govern the fiduciary
relationship of the Trustee. When used in this instrument, where
the context permits, the term Trustee means the trustee or
co-trustees from time to time serving and the "estate" of the
Trust means the particular trust estate being administered by the
Trustee.

5-1 <u>Trustee Compensation</u>. An individual or entity serving as
Trustee shall be reimbursed from the estate for the reasonable
costs and expenses incurred in connection with the administration
of the estate and the Trustee shall be entitled to receive fair

and reasonable compensation for services as Trustee to be paid from the Trust's income, corpus, or both on application to and approval of the Court; provided, however, that the Trustee's compensation shall not exceed the Trustee's regularly published fee schedule for such services. The Court hereby approves future Trustee's fees for so long as such fees do not exceed the Trustee's regularly published fee schedule attached as Exhibit A-2; provided that the Court may review any future Trustee's fees at any time and from time to time on the Court's own motion or upon the motion of the Trustee or any other party

**Page 10**

interested in the welfare of the Beneficiary, and upon a hearing of the matter, the Court shall take any action with respect to such fees as the Court may deem appropriate. The Trustee shall also be reimbursed for all reasonable expenses incurred in connection with the administration of the trust considering: (a) the duties, responsibilities, risks, and potential liabilities undertaken; (b) the nature of the estate; (c) the time and effort involved; and (d) the customary and prevailing charges for services of a similar character at the time and at the place such services are performed.

5-2 _Trustee Liability._

A. _Liability For Predecessor Fiduciary._ No Trustee shall have any duty: (a) to investigate the prior acts or failures to act of a Predecessor Fiduciary (including a predecessor Trustee under this instrument or a personal representative or trustee of any estate or trust from which distributions may be made to the Trustee); (b) to request a formal accounting by a Predecessor Fiduciary; or (c) to investigate any accountings provided by a Predecessor Fiduciary. No Trustee shall be personally liable for any act or failure to act of a Predecessor Fiduciary, or for the failure to contest any accounting provided by a Predecessor Fiduciary. However, the preceding shall not apply to any Trustee to the extent that the Trustee (a) has received a request from a beneficiary having a material interest in the trust estate to secure such an accounting or to conduct such an investigation, or (b) has actual knowledge of facts that would lead a reasonable person to believe that, as a consequence of any act or omission of a Predecessor Fiduciary, a material loss has occurred or will occur.

B. _Reimbursement._ An individual or entity serving as Trustee shall be entitled to reimbursement from the estate for any liability or expense, whether in contract, tort or otherwise, reasonably incurred by the Trustee in the administration of the estate.

5-3 _Ancillary Trustee._ The Trustee, to the extent permitted by applicable law, may appoint (and remove) any Qualified Corporation (meaning any corporation having trust powers that is qualified and willing to serve under this instrument and that has, as of the relevant time, either (a) a minimum capital and surplus of at least Five Million Dollars ($5,000,000 U.S.), or (b) at least Fifty Million Dollars ($50,000,000 U.S.) in trust assets under administration) to act as ancillary trustee on such

terms as the Trustee may deem appropriate.

  5-4 <u>Reorganization Or Insolvency Of Corporate Trustee</u>. If a
corporation nominated to serve or serving as the Trustee shall
ever change its name, or shall merge or consolidate with or into
any other bank or trust company, such corporation shall be deemed
to be a continuing entity and shall continue to be eligible for
appointment, or shall continue to act as the Trustee.

<u>ARTICLE VI ADMINISTRATIVE PROVISIONS</u>

  6-1 <u>Investment Authority</u>. The Trustee shall invest the assets
of the estate in proper and prudent investments with due regard
to reasonable diversification, considering
**Page 11**
the entire portfolio of its estate (and the entire portfolio of
any collective investment vehicle, as the case may be) rather
than on an individual asset basis. To the extent consistent with
the foregoing; (a) a corporate entity serving as Trustee may
deposit funds with itself and may place funds under its
administration in common trust funds; and (b) the Trustee may
acquire securities, real estate, life insurance, oil, gas and
other mineral interests, and other investments.

  6-2 <u>Management Authority</u>. The Trustee may exercise the
managerial powers of an individual with respect to matters
affecting the estate and the broadest managerial discretion that
is consistent with the reasonable and prudent management and
administration of the estate, including the following managerial
authorities: (a) the Trustee may manage, sell, lease (for any
term, even if beyond the anticipated term of the estate),
partition, improve, repair, insure, and otherwise deal with all
property of the estate; (b) the Trustee may form, reorganize or
dissolve corporations, give proxies to vote securities, enter
into voting trusts, and generally exercise all rights of a
stockholder; (c) the Trustee may take whatever action, if any,
the Trustee considers best to collect the proceeds of life
insurance policies and employee benefit plans as well as any
other property that may be tendered to the Trustee; (d) the
Trustee may pay all taxes and all reasonable expenses, including
reasonable compensation to the agents and counsel (including
investment counsel) of the Trustee; (e) the Trustee may employ
and compensate advisors and agents and delegate to an agent any
authorities (including discretionary authorities); (f) the
Trustee may institute and defend suits and release, compromise or
abandon claims; (g) the Trustee may hold title to any property in
the name of one or more nominees without disclosing the fiduciary
relationship; (h) the Trustee may lend money to any entity with
or without security, endorse, guarantee, provide security for, or
otherwise become obligated with respect to the debts of any
entity, provided that all such transactions (except those for the
benefit of any beneficiaries of the particular estate involved)
must be on commercially reasonable terms; (i) the Trustee may
assume, renew and extend any indebtedness previously created and
borrow for any purpose (including the payment of taxes or
expenses) from any source (including a Trustee individually) at
the then usual and customary rate of interest, and mortgage or
pledge any property of the estate to any such lender; (j) the
Trustee may make partial distributions to any beneficiary,
including any trust created by this instrument, whether or not

the administration of the estate is complete; (k) the Trustee may
retain, sell or distribute in kind any personal residence and any
furnishings of such residence; (I) the Trustee may store personal
effects given to a minor or other incapacitated beneficiary for
later distribution to such individual, or sell such property and
add the proceeds of sale to a trust of which individual is a
beneficiary; (m) the Trustee may divide, allocate or distribute
property of the estate in undivided interests, non pro rata, and
either wholly or partly in kind; (n) for administrative and
investment purposes only, the Trustee may hold separate estates
under this or any other instrument in one or more common accounts
in which such estates have undivided interests; (o) the Trustee
may allocate receipts and disbursements between principal and
income in a reasonable manner, and may establish a reasonable
reserve for depreciation or depletion and fund such reserve by
appropriate charges against income of the estate; and (p) the
Trustee may take all appropriate action to deal with any
environmental hazard and comply with any environmental law,
regulation or order, and may institute, contest or settle legal
**Page 12**
proceedings concerning environmental hazards.

  6-3 <u>Records, Books Of Account, And Reports</u>. The Trustee shall
maintain proper books of account which shall at all reasonable
times be open for inspection or audit by IVERSON KING,
beneficiary, or any court appointed guardian for the beneficiary,
or his care taker(s). The Trustee shall make a written financial
report, at least annually, to IVERSON KING, beneficiary, or any
court appointed guardian for the beneficiary, or his care
taker(s). The Trustee's usual computer statements shall suffice
for any accounting. The Trustee shall not be accountable to any
person interested in this trust for the manner in which, in good
faith, it carries out its discretion to supplement the needs of
the primary beneficiary (including any decision it may make not
to incur the expense of detailed analysis of alternative choices)
and, even though its decision in this regard may result in
decreased distributions to the contingent beneficiaries of this
trust, there shall in no event be any compensation readjustments
or reimbursements by the Trustee by reason of the manner in which
the Trustee thus carries out its discretion.

  6-4 <u>Applicability Of Texas Trust Code</u>. To the extent consistent
with the other provisions of this instrument, the Trustee shall
have the powers, duties, and liabilities of trustees set forth in
the Texas Trust Code, as amended and in effect from time to time.
However, any legislation enacted subsequent to the date of this
instrument which limits a Trustee's duties or liability to the
beneficiaries of the estate shall be inapplicable to every trust
created under this instrument, and the Trustee's acceptance of
office under this instrument shall constitute an irrevocable
agreement that no such subsequent legislation shall be
applicable.

  6-5 <u>Additional Transfers Of Property</u>. Any additional transfer
of property to this Trust shall be absolute; provided, however,
that the duties of the Trustee shall not be increased by virtue
of any such transfer without the consent of the Trustee.

  6-6 <u>Majority Controls</u>. All actions taken by Trustees hereunder
shall be taken only with the agreement of a majority of Trustees

which majority shall include the corporate Trustee if one is then
acting.

6-7 <u>Resignation</u>. Any trustee may resign by giving thirty (30)
days written notice to a beneficiary. If a beneficiary is legally
incapacitated, the notice shall be delivered to that
beneficiary's legal representative. The Trustee may not resign
without receiving prior authorization of the Court under whose
authority this Trust was created, established, and funded.

6-8 <u>Removal of Trustee</u>. Any interested person herein,
including, but not limited to the Beneficiary, the Beneficiary's
legal representative, the Beneficiary's parents or contingent
beneficiaries, may petition the Court under whose authority this
Trust was created, established, and funded or any court of
competent jurisdiction for removal of any Trustee, the decision
on whether to remove any Trustee shall be in the exclusive
discretion and control of the court.

6-9 <u>Appointment of Successors</u>. Any court of competent
jurisdiction shall have the power to fill any vacancy in the
Trusteeship resulting from the death, resignation, removal or
incapacity of the Trustee.
Page 13

## ARTICLE VII GENERAL PROVISIONS

7-1 <u>State; State Plan</u>. References to the "state" means the
state of Texas and all other states, if any, that may ever pay
medical assistance on IVERSON KING's behalf under a state plan at
a time when the existence of this Trust, were it not described in
**42 USCA § 1396p**(d)(4), would disqualify IVERSON KING for state
plan benefits. References to a "state plan" means any plan under
Title 42 of the United States Code Annotated ("The Public Health
and Welfare"), Chapter 7 ("Social Security"), Subchapter XIX
("Grants to States for Medical Assistance Programs") and any
other "plans" for purposes of **42 USCA § 1396p**(d)(4).

7-2 <u>Execution</u>. The Trustee hereby accepts the Trust herein
created, established, and funded and covenants and agrees to and
with the Grantor in consideration thereof that the Trustee will
execute the same as herein provided.

7-3 <u>Pronouns, Singular and Plural</u>. Unless the context requires
otherwise, words denoting the singular may be construed as
denoting the plural, and words of the plural may be construed as
denoting the singular, and words of one gender may be construed
as denoting such other gender as is appropriate.

7-4 <u>Execution In Counterparts</u>. This document may be executed in
any number of counterpart signature pages, all of which together
will constitute the entire, original document.

**TRUSTEE'S ACCEPTANCE:**

THE CENTER FOR SPECIAL NEEDS TRUSTS ADMINISTRATION, INC.
Page 14

Exhibit "A-1"

All proceeds set aside for the benefit of IVERSON KING, from
the following lawsuit: Wanda King, On Behalf Of Her Minor and As
Next Friend, Iverson King vs. Dr. Angela Savatiel and Vicksburg
Healthcare, LLC d/b/a River Region Medical Center.
Page 15

Exhibit "A-2"

**gif**

A not-for-profit corporation

ANNUAL TRUSTEE FEE SCHEDULE

| Type of Trust | Asset Base | Annual Trustee Fee |
|---|---|---|
| The Florida Pooled Trust (d)(4)(C) | Total Assets Held**[fn1]** In Beneficiary's Sub-Account | 1.5% |
| Special Needs Trusts (d)(4)(A) | ¹Total Assets Held In Beneficiary's Account | 1.5% |

[fn1] In circumstances where income is assigned to, and/or deposited in, the Benefic
annual projected income shall be included when valuing the sub-account/account, and
circumstances where periodic payments from a structured settlement are assigned to,
Beneficiary's sub-account/account, the present value of the underlying qualified fun
valuing the sub-account/account, and calculating the annual fee.


The Annual Trustee Fee covers basic fiduciary and
administrative services, custodial services, cash flow
management, and monitoring of public assistance benefits.

- *Administrative Fee.* A one-time administrative fee
of**[fn2]** $2,500.00, for setting up the Beneficiary's Trust
sub-account/account.

- *Additional Costs.* Additional costs will be charged as
additional services become necessary or advisable. Some
examples of additional costs include costs for asset
management fees; professional fees for attorneys,
guardians, and care managers; real estate management;
and supplementary administrative services.

- *Extraordinary Services.* The Trustee reserves the
right to charge for unusual or extraordinary services.
In the event any such charges are incurred, the Trustee
shall provide notice to the Beneficiary or the
Beneficiary's representative by means of an interim
Trust Accounting. In the event an annual Trust
Accounting is due within sixty days of the
extraordinary services being charged, notice of the
charges shall be provided by means of the annual Trust
Accounting.

[fn2] $1800.00 for cases under $20,000.00, with no management fee.

Page 1

Case 2:08-md-01657-EEF-DEK Document 24861-3 Filed 10/05/09 Page 19 of 51

Copyright © 2009 Loislaw.com, Inc. All Rights Reserved

**Chapter: 1600**　　　　　　**Assets**　　　　　**Program: MSSI, SFP**

   2.　it was established for the benefit of the individual by a parent, grandparent, legal guardian or a court (cannot be established by the disabled individual himself, must be by parent, grandparent, legal guardian or court order); and

   3.　the trust stipulates the state will receive the balance in the trust upon the death of the individual up to an amount equal to the total medical assistance paid on behalf of the individual.

**Pooled trusts for the disabled:**  A trust containing the assets of an individual who is disabled, if:

   1.　it was established on or after 10/01/93;

   2.　the trust is established and managed by a nonprofit association;

   3.　a separate account is maintained for the beneficiary of the trust but, for purposes of investment and management, the trust pools the accounts;

   4.　the trust is established solely for the disabled individual by a parent, grandparent, legal guardian, court or the individual himself; and

   5.　to the extent that amounts remaining in the trust upon the individual's death are not retained by the trust, the trust pays to the state an amount equal to the total amount of medical assistance paid on behalf of the individual.

Both of the above special trusts can only be set up to benefit individuals who meet SSI disability criteria.  Trusts for the disabled under 65 can be established only for individuals who are under 65.  Pooled trusts for the disabled can be established for individuals of any age.

Disability must be determined for both of the above special trusts via regular policy; that is, the person must receive Social Security disability or SSI benefits or the Department must make an independent determination to show that the individual meets the disability requirement.

**1640.0576.09   Treatment of Qualified Disabled Trusts  (MSSI, SFP)**

After the trust is approved by the District Legal Counsel as meeting the criteria of a qualified trust for the disabled under age 65 or a pooled trust, apply the following policies to determine the individual's eligibility for Medicaid benefits:

   1.　Do not consider the corpus of the exempt trust as an asset to the individual beginning with the month the assets are placed into an executed qualified disabled trust or pooled trust;

   2.　Do not consider the funding of a qualified disabled or pooled trust as a transfer of assets or income subject to imposition of a penalty period, provided the trust purchases items and services at fair market value for the sole benefit of the disabled individual (refer to 1640.0609.06);

   3.　Do not count any income deposited into the trust as income to the individual when determining the individual's eligibility;

   4.　Do not consider disbursements from the trust to third parties as income to the individual;

   5.　Do not consider any income earned by the trust which remains in the trust as income to the individual;

   6.　Count any payments made directly to the individual as income to the individual;

   7.　Count all income placed into the trust (along with countable income outside the trust) when computing patient responsibility.  Standard spousal impoverishment policies apply.

If income is deposited into the trust, the trustee must provide quarterly statements identifying the deposits (and disbursements) made to the trust for each month.

Any funds paid directly to the individual from the trust must be counted as income to the individual.  Disbursements not paid to the individual are not counted as income to the individual.

Fax or send a copy of the approved qualified disabled or pooled trust to:

**Chapter:  1600**                    **Assets**                    **Program:  MSSI, SFP**

ACS Recovery Services
Post Office Box 12188
Tallahassee, Florida 32317-2188
Fax:  (866) 443-5559

When you receive inquiries regarding the settlement of remaining funds in the trust after a recipient's death, tell them to make checks payable to Florida Medicaid and send to the above address.  Also advise them to clearly identify the individual by including a note with the individual's full name and social security number or Medicaid number.  If there are further questions, refer callers to ACS Recovery Services (866) 357-3268.

### 1640.0576.10   Undue Hardship/Trusts Set Up 10/1/93 or Later  (MSSI, SFP)
If undue hardship exists, only the amount of the trust that is actually made available as income or assets is counted.

Undue hardship exists when application of the trust provision would deprive an individual of food, clothing, shelter or medical care such that his life or health would be endangered.  All efforts to access the assets (including assets and income) must be exhausted before this exception applies.  All undue hardship decisions must be reviewed and approved by the eligibility specialist.

### 1640.0576.11   Verification of Trusts  (MSSI, SFP)
A copy of the trust document must be reviewed carefully to determine the trustee's ability to use the principal.  When appropriate, the eligibility specialist should request an official legal interpretation.

All OBRA '93 special trusts (trusts for disabled under 65, pooled trusts and income trusts) must be forwarded to your Region or Circuit Program Office who will refer it to your District Legal Counsel for review and approval.

### 1640.0577   Real Property  (MSSI, SFP)
Real property includes assets (in which an individual has ownership interest) that fall into the following categories:

1.  any real estate owned by the individual or couple, and
2.  income producing property.

### 1640.0578   Real Estate  (MSSI, SFP)
Real estate that is not a homestead and does not involve life estate is included as an asset.

Otherwise non-excluded real property that an individual or family is making a good faith effort to sell can be excluded.  Refer to passage 1640.0537 for good faith effort policies.

For, SSI-Related Medicaid, and State Funded Programs, real estate is not included as an asset if the property is producing income consistent with its fair market value (see passage 1640.0544).

Information containing the name of owner, legal description, amount of indebtedness and to whom owed, and the assessed value is required verification.  Sources of verification include deeds in possession of parent or relative, liens in personal possession, county property records, or contract with lien holder.

**LOUISIANA UNITED STATED DISTRICT COURT EASTERN DISTRICT**

**MDL-1657 Master Case**

**IN RE VIOXX PRODUCTS LIABILITY LITIGATION  JUDGE FALLON**

## ORDER GRANTING PETITION FOR ORDER AUTHORIZING CIRCUIT COURT TO ESTABLISH A QUALIFIED DISABILITY TRUST FOR CLARENCE T. HARVEY TO MAINTAIN PUBLIC ASSISTANCE ELIGIBILITY

**THIS CAUSE** came before the court on _____ at _____A.M/P.M.. upon the Petition of CLARENCE T. HARVEY for an order authorizing the Court to establish a Qualified Disability Trust to Maintain CLARENCE T. HARVEY's Public Assistance Eligibility. The following individuals were present: _____

_____. The court having reviewed the Petition, the Memorandum of Law, the Affidavit of Stephanie L. Schneider, Esquire and the file, having determined that notice of the hearing and the petition was provided to all interested persons , and being otherwise fully advised in the premises therein, makes the following findings of fact:

**FINDINGS OF FACT**:

A.       Based upon the federal law's restriction as to who can serve as a settlor of a qualified disability trust, CLARENCE T. HARVEY is unable to perform the acts for which court approval is being sought.

B.       CLARENCE T. HARVEY's disability is likely to be of sufficiently long-term duration.

C.       CLARENCE T. HARVEY has no dependents nor are there any other persons depending upon CLARENCE T. HARVEY for support. CLARENCE T. HARVEY's needs for support can be met from the Qualified Disability Trust assets. Upon funding the Qualified Disability Trust, Medicaid would continue to pay for the cost of his care and CLARENCE T. HARVEY will continue to receive public assistance in the form of Medicaid.

D.       The funds placed in the trust are not considered available resources of the disabled individual beginning with the month they are placed into the trust. Moreover, the law provides that the funding of the trust does not constitute a transfer of resources or income which would normally be subject to imposition of a penalty (a period of ineligibility for assistance). Disbursements made

In Re:   **VIOXX PRODUCTS LIABILITY LITIGATION**        **MDL-1657 Master Case**
Order Granting Petition for Order Authorizing Circuit Court To Establish A Qualified Disability
Trust

from the trust to third parties (i.e. vendor) is not counted as income or resources to the disabled
individual. HCFA Transmittal No. 64 dated November 1994, section 3259.7A, Economic Self
Sufficiency Program Policy Manual 1840.0109.04 , Section 1625.85.15.31 and 1625.85.15.31.05.

      E.     The proposed plan will maintain the petitioner's countable resources within the legal
mandated limitation of $2,000.00 and CLARENCE T. HARVEY will continue to be eligible for
Medicaid.

      F.     CLARENCE T. HARVEY is under the age of sixty-five.

      G.     CLARENCE T. HARVEY's attorney has filed an Affidavit attesting to her client's
competency.  It is reasonable for a competent individual to request that someone authorized under
federal law establish a Qualified Disability Trust and direct the deposit of his net proceeds of the
personal injury settlement to the trust.   It is in the best interest of CLARENCE T. HARVEY to
maintain public assistance eligibility and simultaneously protect the net proceeds of the settlement
which would be used to purchase services or products that would further enhance CLARENCE T.
HARVEY's quality of life and quality of care.

      Based upon the foregoing, it is

      **ORDERED and ADJUDGED**:

1.     The Petition for Order Authorizing The Court to Establish a Qualified Disability
Trust is granted.

2.     It is necessary for the Court to serve as Settlor of a qualified disability trust for
Clarence T. Harvey so that he may maintain his eligibility for Medicaid assistance.

3.     The Court is authorized to and will execute the Qualified Disability Trust as Settlor,
a true copy of which was attached to the Petition.

4.     All settlement proceeds  to which Clarence T. Harvey is entitled from the Vioxx
settlement shall be issued to RAYMOND HARVEY as Trustee of the CLARENCE
THOMAS HARVEY Qualified Disability Trust and delivered to the trustee.

2

In Re:   **VIOXX PRODUCTS LIABILITY LITIGATION**        **MDL-1657 Master Case**
Order Granting Petition for Order Authorizing Circuit Court To Establish A Qualified Disability
Trust

5.      The court retains jurisdiction over the subject matter of this cause, and to enter such other

and further orders and relief as may be just and appropriate.

**DONE and ORDERED** in Chambers this _____ day of   _____.


_____

Judge Fallon

Conformed copies to:
Stephanie L. Schneider, Esq.
Department of Children & Families
Sylvius von Saucken, Esq.

F:\CLIENTS\ClientFiles-2009\090011\OrderEstablishQDT

3

# CLARENCE THOMAS HARVEY
## Qualified Disability Trust
*Table Of Contents*

---

**ARTICLE I**            Trust Funding

1.01    Initial Trust Funding
1.02    Additions to Trust

**ARTICLE II**           Distribution of Income and Principal

2.01    Distributions During Life of Beneficiary
    2.01.01           Distribution Provisions
    2.01.02           Intent Regarding Distributions
    2.01.03           Public Assistance Programs
    2.01.04           Payment of In-Kind Support and Maintenance
    2.01.05           Annual Evaluation To Update Beneficiary's Needs and Assure Appropriate
                    Distributions
2.02    Distributions After Death of the Beneficiary or Cessation of Disability
    2.02.01           Permissible Payments
    2.02.02           Prohibited Expenses and Payments
    2.02.03           Reimbursement for Medical Assistance
    2.02.04           Distribution of Remaining Trust Estate
    2.02.05           Facility or Hold back of Payment
    2.02.06           Distribution and Reimbursement of Medical Assistance Upon  Beneficiary
                    No Longer Being Disabled

**ARTICLE III**          Powers of Trustee(s)

3.01    General Powers
    3.01.01           Non-Income Producing Investment
    3.01.02           Investment Authority
    3.01.03           Title to Property
    3.01.04           Distributions of Income and Principal
    3.01.05           Retention Of Under-Productive Property
    3.01.06           Borrow Money
    3.01.07           Compromise of Claims
    3.01.08           Execution of Documents
    3.01.09           Hiring of Professionals
    3.01.10           On-Going Professional Services
    3.01.11           Reacquisition of Trust Corpus
    3.01.12           Acquisition and Maintenance of Real Estate and Automobile
                3.01.12.01       Real Estate
                3.01.12.02       Automobile

**CLARENCE THOMAS HARVEY QUALIFIED DISABILITY TRUST**
*Table of Contents - Page 2*

|  |  |  |
|---|---|---|
| | 3.01.13 | Enforceability of Loans |
| | 3.01.14 | Acquisition and Maintenance of Insurance (Health & Life) |
| | 3.01.15 | Compensation for Services Provided by Family of the Beneficiary |
| 3.02 | Trustee(s)' Powers to Deal With Environment Hazards | |
| | 3.02.01 | General |
| | 3.02.02 | Right to Refuse Contributions |
| | 3.02.03 | Exoneration of Trustee(s) |

ARTICLE IV          Spendthrift Provisions

4.01    Inalienability

ARTICLE V          Provisions Concerning Trustee(s)

| 5.01 | Resignation | |
| 5.02 | Removal of Trustee(s) | |
| 5.03 | Death or Incapacity | |
| | 5.03.01 | Death or Incapacity |
| | 5.03.02 | "Incapacity" Defined |
| 5.04 | Successor Trustee(s) | |
| 5.05 | Accounting | |
| 5.06 | Limitations on Trustee(s) Powers | |
| 5.07 | Bond | |
| 5.08 | Additional Transfers of Property | |
| 5.09 | Compensation | |
| | 5.09.01 | Trustee Has Schedule of Compensation |
| | 5.09.02 | Trustee Has No Schedule of Compensation |
| | 5.09.03 | Per Court |
| 5.10 | Appointment of Special Trustee(s) | |
| 5.11 | Special Multiple Trustee Provisions | |
| | 5.11.01 | Delegation |
| | 5.11.02 | Establish Bank Accounts |
| | 5.11.03 | Establish Investment Accounts |
| | 5.11.04 | Approval Presumption |
| | 5.11.05 | Execution of Documents |
| | 5.11.06 | All Trustees Equal |
| 5.12 | Good Faith Actions Taken by Trustee(s) | |

ARTICLE VI          General Administrative Provisions

| 6.01 | Irrevocability | |
| | 6.01.01 | Limitations on Settlor's and Beneficiary's Powers |

**CLARENCE THOMAS HARVEY QUALIFIED DISABILITY TRUST**
*Table of Contents - Page 3*

|  |  |  |  |
|---|---|---|---|
|  | 6.01.02 | Limited Power of Trustee(s) to Amend | |
| 6.02 | Tax Provisions | | |
|  | 6.02.01 | Income Tax | |
|  | 6.02.02 | Estate Tax | |
|  | 6.02.03 | Tax Return Preparation | |
|  | 6.02.04 | Tax Refunds | |
|  |  | 6.02.04.01 | Signature Authority |
|  |  | 6.02.04.02 | Delivery to Trustee |
|  |  | 6.02.04.03 | Trustee's Obligation |
| 6.03 | Choice of Law | | |
| 6.04 | Definition of "Issue" | | |
| 6.05 | Protection Against Perpetuities Rule | | |
| 6.06 | Headings | | |
| 6.07 | Notice | | |
| 6.08 | Severability | | |
| 6.09 | Execution in Counterparts | | |

# CLARENCE THOMAS HARVEY
## Qualified Disability Trust

**THIS TRUST AGREEMENT** made and entered into this _____ day of _____, 20___, by and between **the HONORABLE JUDGE FALLON** hereinafter referred to as "Settlor", and **RAYMOND HARVEY**, as Trustee, hereinafter referred to as "Trustee".

The Trust established under this Agreement shall be known as the **CLARENCE THOMAS HARVEY** *QUALIFIED DISABILITY TRUST* and is written pursuant to 42 U.S.C. §1396p, as amended on August 10, 1993, by the Omnibus Budget Reconciliation Act of 1993, Pub.L.No. 103-66 for the benefit of **CLARENCE THOMAS HARVEY,** a disabled person as defined in §1614(a)(3) of the Social Security Act, hereinafter referred to as "Beneficiary".

It is intended that the Beneficiary continue to qualify for Medicaid and this Trust be an irrevocable trust pursuant to §SI 01 120.200.,D.2 of the Social Security Administration Program Operation Manual Section (POMS), Health Care Financing Administration Transmittal No. 64, November 1994, Section 3259.7; Economic Self-Sufficiency Public Assistance Manual Section 1640.0576.08 and 1640.0576.09. This Trust is intended to qualify as a 42 U.S.C. §1396p(d)(4)(A) Trust for the benefit of a person with disabilities under the age of sixty-five (65) years old. If the trust beneficiary regains the ability to be employed and no longer qualifies as "disabled", this trust shall continue.

## ARTICLE I
## TRUST FUNDING

1.01   <u>Initial Trust Funding</u>:  This Trust shall be funded with the assets described in "Schedule A" attached hereto and shall be held by the Trustee(s) according to the terms of this instrument for the benefit of the Beneficiary.

1.02   <u>Additions to Trust</u>:   Other property, real or personal, may be transferred to the Trustee(s) by anyone with the consent of the Trustee(s). All property held by the Trustee(s) shall constitute the "trust estate".

## ARTICLE II
## DISTRIBUTION OF INCOME AND PRINCIPAL

2.01   <u>Distributions During Life of Beneficiary</u>: During the lifetime of the beneficiary, the Trustee(s) may distribute for the benefit of the Beneficiary from the principal or income, or both, of this Trust, for the satisfaction of the Beneficiary's supplemental care, as the Trustee(s), in the Trustee(s)' sole and absolute discretion, may from time to time deem reasonable or advisable, subject to the strict limitations set out in this instrument. Any income of the Trust not so distributed shall be added annually to the principal.

2.01.01        <u>Distribution Provisions</u>: In making distributions from this Trust, the Trustee(s),is authorized to consider, in the Trustee(s)' sole and absolute discretion, the reasonableness or advisability of making distributions in satisfaction of the Beneficiary's supplemental care. As used in this instrument, "supplemental care" refers to the requisites for maintaining the Beneficiary's good health, safety and welfare when, in the discretion of the Trustee(s), such requisites are not being provided by any governmental agency, office or department, non-profit organization, or are not otherwise being provided for by any other public or private source. While the Trustee(s) is authorized to consider these other sources, the Trustee(s) may also, in the exercise of the Trustee(s) sole and absolute discretion, disregard these other sources when making distributions for the benefit of the Beneficiary. Distributions may be made from the trust estate without securing prior Court approval.

2.01.02        <u>Intent Regarding Distribution</u>: It is the intention of the Settlor to create a supplemental and/or emergency fund for the benefit of the Beneficiary and not to displace or supplant public assistance or other sources of support which may otherwise be available to the Beneficiary. The Beneficiary may have supplemental care requisites which other assistance programs may not otherwise provide such as:

     (a)        medical, psychological, dental, opthalmological, or auditory care;

     (b)        psychological or other support services;

     ©)        recreation (hobbies; sports; activities);

     (d)        education;

     (e)        transportation, wheelchairs or other mobility devices (whether electric or manual), lifts, specialized transportation or communication devices, handicapped equipped van;

     (f)        specialized adapted housing;

     (g)        supplemental nursing or physical, occupational, speech,  or other therapy, care, rehabilitation, personal and similar care;

     (h)        funeral and burial expenses;

     (I)        liability for taxes incurred by the trust;

     (j)        travel and vacations;

     (k)        participation in hobbies, sports or other activities;

     (l)        items beyond necessary clothing, such as a coat which is "extra" but which is desirable because it is newer, more stylish, warmer, etc.

     (m)        cosmetic, extraordinary, experimental or elective medical or dental care, if not available through other third party sources ;

     (n)        visiting friends, companionship;

     (o)        exercise equipment or special medical equipment, if not available through other third party sources;

     (p)        equipment such as telephones, cable television, televisions, radios and other sound equipment, and cameras for private use by the individual;

     (q)        membership in clubs such as book clubs, health clubs, record clubs, video clubs;

(®)      subscriptions to magazines and newspapers;

(s)      advocacy, including personal care consultant; services of a representative payee or conservator, if not available through other third party sources;

(t)      intervention or respite when the beneficiary is in crisis, if not available through other third party sources;

(u)      vocational rehabilitation or habilitation, if not available through other third party sources;

(v)      expend trust funds in connection with initiating or maintaining a guardianship of the person or property of **CLARENCE THOMAS HARVEY** including guardian fees, attorney fees, court costs and other expenses approved by the court.

The Trustee may also consider treatment that is considered experimental (i.e. hyperbaric chamber treatments) if after research and investigation the Trustee determines that the treatment may provide some benefit to the Beneficiary. The Trustee(s) is authorized to consider these and any other requisites of the Beneficiary when making distributions.

It is important to the Settlor that the Beneficiary maintain a level of human dignity and humane care. The Trustee(s) should bear this in mind when making distributions from the Trust while simultaneously considering that the Trust is not to be invaded by creditors, subjected to any liens or encumbrances, or administered in such a way as to cause public benefits not to be initiated or be terminated.

To the extent reasonable or advisable, the Trustee(s) may deplete the Trust corpus prior to the Beneficiary's death thereby giving preference to the interests of the Beneficiary while simultaneously considering the interests of the remainder beneficiary or beneficiaries. In considering the interests of the Beneficiary, the Trustee(s) is admonished to refrain from distributing cash directly to the Beneficiary, or property of the Trust to or on behalf of the Beneficiary which will then be retitled in the name of the Beneficiary. The Trustee(s) may hold title to all property comprising the Trust even when that property is distributed to the Beneficiary for the Beneficiary's use. The Trustee(s) may liquidate property of the Trust at anytime and such property need not be held in the name of the Beneficiary.

No part of the Trust shall be used to supplant or replace benefits due from any insurance carrier under any insurance policy covering the Beneficiary, or benefits from any governmental agency, office or department, non-profit organization, or any other public or private source.

Prior to the death of the Beneficiary, the Trustee(s) shall give special consideration to paying any outstanding expenses of administration related to the Trust, including reasonable attorneys' fees, and should further consider purchasing a reasonable burial plan to pay expenses relating to the funeral of the Beneficiary.

2.01.03          Public Assistance Programs: The Trustee(s) may, in the exercise of the Trustee(s)' best judgment and fiduciary duty, seek support and maintenance for the Beneficiary from all available public resources. The Trustee(s) shall take into consideration the applicable resource and income limitations of any public assistance program for which the Beneficiary is eligible. The Trustee(s) is hereby granted full and complete discretion to initiate rendering the Beneficiary eligible for any such program of public benefit and is hereby granted full and complete discretion to initiate either administrative or judicial proceedings, or both, whether original or appealing adverse decisions, for the purpose of determining eligibility. All costs relating thereto, including reasonable attorneys' fees, shall be a proper charge to the Trust. It is the intention of the Settlor that no part of the corpus of the Trust created herein shall be used to supplant or replace public assistance benefits of any county, state, the United States or any governmental agency which has a legal responsibility to persons with disabilities which are the same or similar to those which qualify the Beneficiary for public assistance eligibility; no part of the principal or undistributed income of the Trust shall be considered available to the Beneficiary.

          In the event the Trustee(s) is required to release principal or income of the Trust to or on behalf of the Beneficiary to pay for the benefits or services which such public assistance is otherwise authorized to provide, were it not for the existence of this Trust, or in the event the Trustee(s) is requested to petition the court or any other administrative agency for the release of Trust principal or income for this purpose, the Trustee(s) is authorized to deny such request and is authorized in the Trustee(s)' discretion to take whatever administrative or judicial steps may be necessary to continue the public assistance program eligibility of the Beneficiary, including obtaining instructions from a court of competent jurisdiction ruling that the Trust corpus is not available for the Beneficiary for such eligibility purposes. Any expenses of the Trustee(s) in this regard, including reasonable attorneys' fees, shall be a proper charge to the Trust. No Trustee(s) shall be liable for any loss of Trust assets, except for any loss caused by the Trustee(s) bad faith, wanton conduct or negligence.

2.01.04          Payment of In-Kind Support and Maintenance:   Notwithstanding the foregoing provisions, if the Trustee, in the Trustee's sole and absolute discretion, determines that it is in the best interest of **CLARENCE THOMAS HARVEY** to provide in-kind support and maintenance (food and/or shelter) to **CLARENCE THOMAS HARVEY** from time to time,  then the Trustee may do so as long as **CLARENCE THOMAS HARVEY**'s continued right to receive SSI, or Medicaid, as the case may be, is not jeopardized and **CLARENCE THOMAS HARVEY** continues to receive all benefits to which he is entitled, or the trustee determines that the benefit to **CLARENCE THOMAS HARVEY** from being temporarily disqualified for public assistance outweigh the benefits provided by public assistance.

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 5

2.01.05          <u>Annual Evaluation to Update Beneficiary's Needs and Assure Appropriate</u> <u>Distributions:</u> The Trustee(s) or its agent(s) shall arrange for an annual evaluation of **CLARENCE THOMAS HARVEY** addressed to the following topics:

   (a)      Physical and medical conditions;
   (b)      Personal care;
   ©)       Rehabilitation, education and training programs;
   (d)      Work opportunities and day programs
   (e)      Recreational leisure time and social needs;
   (f)      Appropriateness of existing program services;
   (g)      Laws and administrative practices relating to various governmental benefit programs, and private financial assistance available, since or unless **CLARENCE THOMAS HARVEY**, has a reasonable chance of earning sufficient income to be self supporting, it is essential that these benefits be secured;
   (h)      Legal rights, treatment in accordance with **CLARENCE THOMAS HARVEY**'s needs, payment of a fair wage for work performed, the right to vote and to marry.

   The annual evaluation should be based on individual contacts with **CLARENCE THOMAS HARVEY**, the social worker (if any), the family and other individuals who are in regular contact with **CLARENCE THOMAS HARVEY**, including service providers. Information in the evaluation may be shared with any Guardian or designated health care surrogate who is or may be appointed for **CLARENCE THOMAS HARVEY**.

   Regardless of whether the Trustee is qualified to render advice about the appropriateness of expenditures made to **CLARENCE THOMAS HARVEY** such that those expenditures do not disqualify **CLARENCE THOMAS HARVEY** for any government benefits which **CLARENCE THOMAS HARVEY** may otherwise be entitled, the Trustee may, if it so chooses, hire at the trust's expense a consultant who specializes in special needs trust administration and public benefit eligibility, and may rely without liability upon the recommendation of said consultant and be indemnified in connection with any decisions made on the basis of the recommendation.

2.02     <u>Distributions After Death of the Beneficiary:</u>

2.02.01     <u>Permissible Payments:</u> Pursuant to Social Security Administration Emergency Memorandum 02085, if the beneficiary is an SSI recipient, payment of permissible administrative expenses prior to the reimbursement to the state for Medicaid expenses paid during the beneficiary's life, shall include, but not be limited to, a) taxes due from the trust to the State or Federal governments because of the death of the beneficiary; (b) reasonable fees for administration of the trust estate such as an accounting of the trust to a court, completion and filing of documents, or other required actions associated with termination and wrapping up of the trust.

2.02.02    <u>Prohibited Expenses and Payments:</u> The following expenses and payments are examples of some of the types not permitted after the death of the beneficiary, who is an SSI recipient, prior to reimbursement of the State for medical assistance: a) taxes due from the estate of the beneficiary other than those arising from inclusion of the trust in the estate; b) inheritance taxes due for residual beneficiaries; c) payments of debts owed to third parties; d) funeral expenses; and e) payments to residual beneficiaries.

2.02.03    <u>Reimbursements for Medical Assistance:</u> Unless sooner terminated by exhaustion of corpus, any assets remaining in the Trust upon the death of the Beneficiary shall, after the payment of all reasonable fees (including attorney's fees and the Trustee(s)' fees) and expenses, first be used to reimburse the State of Florida for medical assistance paid on behalf of the Beneficiary under the Florida plan authorized by Title XIX of the Social Security Act, 42 U.S.C. §1396, et seq. ("Medicaid"). If the Beneficiary has resided in and received such medical assistance from more than one state, then each such state agency shall be entitled to reimbursement from the Trust. If the remainder of the Trust is not sufficient to completely reimburse all such states, then the states shall be reimbursed an amount of the remainder of the trust equal to their proportionate share of the total amount of all such benefits paid by all of such states on the Beneficiary's behalf. Assets remaining in the Trust after such reimbursement shall be distributed as set forth in Section 2.02.04 below. The Trustee(s) may conclusively rely upon the written statement of the state agency administering the Medicaid program as to the amount of medical assistance that has been paid on behalf of the Beneficiary. The Trustee(s), in its discretion, may challenge and require verified proof of any such amount of medical assistance the Beneficiary has already received.

2.02.04    <u>Distribution of Remaining Trust Estate:</u> At the death of the Beneficiary, after payment under Section 2.02.01 and 2.02.03 (repayment to State of Florida), the Trustee(s) shall terminate this Trust and distribute the remaining trust estate (including any accumulated income that is specifically referred to), as follows:

> (1)    the sum of $100.00 to Clarence Thomas Harvey's brother **RAYMOND HARVEY**;

> (2)    the balance to **RAYMOND HARVEY**. In the event **RAYMOND HARVEY** predeceased Clarence Thomas Harvey or, fails to survive him by thirty (30) days the residue shall be distributed to Clarence Thomas Harvey's son **STEVEN SNEED**. In the event **STEVEN SNEED** predeceases Clarence Thomas Harvey or, fails to survive him by thirty (30) days the residue shall be distributed to Clarence Thomas Harvey's brother **VINCENT HARVEY**.

2.02.05    <u>Facility or Hold back of Payment:</u> With regard to those beneficiaries specified in Section 2.02.02, above, if any one of these beneficiaries is under legal disability, or is, in the opinion of the Trustee(s), incapable of properly managing his or her financial affairs, or

is unable to administer distributions properly when distribution is to be made, then the Trustee(s) may, in the Trustee(s)' sole discretion:

> 1)      Make those distributions directly to the beneficiary, to a lawful guardian of the beneficiary, or to a custodian selected by the Trustee(s) for the beneficiary under a Uniform Transfers to Minors Act or similar applicable law, or

> 2)      May otherwise expend the amounts to be distributed for the benefit of the beneficiary in such manner as the Trustee(s) considers advisable, or

> 3)      May continue to hold the amount to be distributed in trust for the benefit of such beneficiary and pay or apply for the benefit of such beneficiary so much of the net income and principal of the trust as the Trustee(s), in the Trustee(s), sole discretion, deems proper and in the beneficiary's best interest after taking into consideration other sources of income and resources available to such beneficiary and known to the Trustee(s).

The Trustee(s) shall be fully protected by the receipt of such beneficiary, or person or entity whom any such distributions were made, for any and all such distributions made. Upon the death of such beneficiary before complete distribution of such beneficiary's share, the Trustee(s) shall distribute the remainder of such beneficiary's share, including any accrued and undistributed income, to the estate of such beneficiary.

As used in the Section, the term "lawful guardian" shall mean successively, in the order named, (I) the court appointed guardian or conservator of the estate of the beneficiary, (II) a person appointed as the beneficiary's attorney-in-fact under a duly executed and valid Durable Power of Attorney, (III) the spouse of the beneficiary, (IV) either parent of the beneficiary, or (V) the individual having personal custody of the beneficiary or conservator of the beneficiary's estate has been appointed.

2.02.06      Distribution and Reimbursement of Medical Assistance Upon Beneficiary No Longer Being Disabled:  In the event that **CLARENCE THOMAS HARVEY** should no longer be determined "disabled" (as defined by the SSI program in §1614(a)(3) of the Social Security Act), the Trustee(s) shall have the discretion, after consulting with professional advisors familiar with public assistance eligibility and the beneficiary's medical/psychological condition, to maintain or terminate the trust.  It is recommended that the trust continue.  If the trust is terminated, the Trustee(s) shall follow the procedure set forth in Paragraphs 2.02.01 and 2.02.03 above for reimbursement for medical assistance before payment of administrative expenses and final distribution of the remaining trust principal and income to **CLARENCE THOMAS HARVEY**.

## ARTICLE III
## POWER OF TRUSTEE(S)

3.01   <u>General Powers</u>: The trustee(s) shall have all powers, authorities, and discretion (other than any that conflict with the purpose of this Trust) granted by common law, statute and under any rule of court. In addition, the Trustee(s) is expressly authorized and empowered in the Trustee(s)' sole and absolute discretion to exercise the powers set forth below.

      3.01.01   <u>Non-Income Producing Investment.</u> The Trustee(s) may invest in non-income producing assets and may invest in housing owned jointly or solely by the Trust.

      3.01.02   <u>Investment Authority.</u> The Trustee(s) may invest and reinvest in such stocks, bonds, or other property, real or personal, tangible or intangible, including the purchase or sale of commercial or private annuities, life estates, and remainder interests, mutual funds (including, but not limited to, those with respect to which the Trustee(s) may serve as an investment advisor, custodian, or in some other capacity and receive a fee for such service), government obligation, units or interests in any common fund operated by an Trustee(s) solely for the investment of funds in its care as a fiduciary, options on securities, uninsured money market funds, and cash items in all available forms of deposit, including but not limited to, bank demand deposits, time deposits and savings deposits., including all such forms of deposit at any bank operated by any Trustee(s), all as the Trustee(s) may consider advisable or proper, without being restricted as to the character of any investment of Trust funds.

      3.01.03   <u>Title to Property.</u> The Trustee(s) may take and hold title to any property, real or personal, and cause the same to be registered in its name as Trustee(s) hereunder, in its individual name or in the name of a nominee without disclosing the trust, or in the case of securities to keep them unregistered so they will pass by delivery, and in addition, the Trustee(s) shall not disclose the name, address or share position of the beneficial owners of registered securities held by the Trustee(s) or its nominees to issuing corporations that request the information; and to either amortize premiums or accumulate discounts, or not, on any securities, whether original or otherwise.

      3.01.04   <u>Distributions of Income and Principal.</u>   The Trustee(s) may make distributions, divisions and allocations of either principal or income, or both, or an undivided interest therein, either in kind or in money or part in each, and the judgment and any determination of the Trustee(s) in connection therewith, including value assigned to various assets and decisions to make non-pro rata distributions in kind, shall be binding and conclusive on all persons interested therein. The Trustee(s) shall have sole discretion to accumulate the net income or, to pay it as the Trustee(s) deem(s) appropriate.

      3.01.05   <u>Retention Of Under-Productive Property.</u> The Trustee(s) may retain any property (whether or not income producing) that may be transferred to the Trust until such

times as the Trustee(s) may deem it desirable to dispose of it. However, the Trustee(s) may not distribute income producing property to the Beneficiary.

3.01.06    Borrow Money.  The Trustee(s) may borrow money, with the payment of no interest or such interest as is deemed appropriate by the Trustee(s), for any purpose connected with the protection, preservation, or improvement of the Trust, or the enhancement of the benefits to the beneficiaries hereof, and may create one or more mortgages on, or pledges of, any party of all of the property held by the Trustee(s), whenever the Trustee(s) shall deem the same advisable.

3.01.07    Compromise of Claims.  The Trustee(s) may pay, compromise, or adjust any claims of the Trust against others or of others against the Trust as the Trustee(s) shall deem advisable.

3.01.08    Execution of Documents.  The Trustee(s) may excuse, acknowledge, and deliver any and all instruments in writing that the Trustee(s) may deem advisable to carry out any of the foregoing powers. No party to any such instrument in writing signed by the Trustee(s) shall be bound to see the application by the Trustee(s) of any property paid or delivered pursuant to the terms of such instrument.

3.01.09    Hiring of Professionals.   The Trustee(s) may engage the services of accountants, attorneys or other advisors deemed necessary by the Trustee(s), and pay their reasonable fees and expenses from the trust estate.

3.01.10    On-Going Professional Services.  The Trustee(s) may, in its sole and absolute discretion, from time to time spend income and/or principal of this Trust to retain or contract for the services of other persons or organizations that the Trustee(s) deems advisable to protect the integrity of this Trust or provide assistance by acting as an advocate for the Beneficiary throughout the Beneficiary's life. In addition, the Trustee(s) is authorized to retain attorneys, accountants or others to assist with the Beneficiary's and the Trust's financial and legal matters. It is the desire of the Settlor that there be a friend, advocate and protector of the social and legal rights of the Beneficiary. The reasonable cost of such consultations shall be paid by the Trustee(s) from the trust estate.

3.01.11    Reacquisition Of Trust Corpus.  The Trustee(s) shall, at the direction of the Grantor, permit the Grantor to reacquire the Trust corpus by substituting other property of equal value.

3.01.12    Acquisition and Maintenance of Real Estate and Automobile.

3.01.12.01    Real Estate:  The Trustee is authorized to pay out the income or principal of this trust and any taxes, insurance, and maintenance expenses as necessary to keep residential or replacement property in suitable repair, and to collect

rent from other occupants of the property, as the Trustee deems proper. These powers may be exercised for the benefit of the beneficiary, even if **CLARENCE THOMAS HARVEY** is residing with a family member who may also be serving as a co-trustee.

If any residential real property is allocated to the trust for **CLARENCE THOMAS HARVEY**, I intend that **CLARENCE THOMAS HARVEY** be able to live in the residential real property allocated to **CLARENCE THOMAS HARVEY's** trust without a loss of **CLARENCE THOMAS HARVEY's** public assistance benefits. Accordingly, the Trustee shall manage the trust for **CLARENCE THOMAS HARVEY** in a manner that will allow **CLARENCE THOMAS HARVEY** to reside in this residential property without causing a loss of **CLARENCE THOMAS HARVEY's** public assistance benefits of any city, county, state, federal or other governmental agency which has a legal responsibility to serve persons with disabilities which are the same or similar to **CLARENCE THOMAS HARVEY's** impairments, but I recognize that the decisions made by the Trustees may cause a reduction in the level of such benefits.

The Trustee may also expend such amounts as the Trustee deems necessary for **CLARENCE THOMAS HARVEY's** housing or residential accommodations, but only such amounts as may be supplementary of **CLARENCE THOMAS HARVEY's** benefits under SSI or other government programs. Because of **CLARENCE THOMAS HARVEY's** special needs, the Trustee, in the Trustee's discretion, may arrange for **CLARENCE THOMAS HARVEY** to live in a residential facility where board and care are provided to the residents, or, if the Trustee deems it appropriate, the Trustee may arrange for **CLARENCE THOMAS HARVEY** to reside in a house or apartment (for example, by purchasing a condominium using the funds of **CLARENCE THOMAS HARVEY's** Trust) and also provide for full-time or part-time supervisory personnel and other care providers to assist **CLARENCE THOMAS HARVEY** with **CLARENCE THOMAS HARVEY's** daily living needs to the extent **that CLARENCE THOMAS HARVEY's** services are not funded by public benefit programs.

The Trustee shall have authority to own up to a fifty-percent (50%) share in a residential real property, with the Beneficiary to own the balance of the interest in said property if the Trustee, in its sole discretion determines that such an arrangement is in the best interest of **CLARENCE THOMAS HARVEY**. The Trustee may determine that it is in **CLARENCE THOMAS HARVEY's** best interests to use trust assets to pay for the full value of residential real estate even if the Beneficiary's spouse will be a joint owner. The Trustee shall pay the same percentage share of property taxes, insurance, and expenses of repair and maintenance as the Trust's percentage of shared ownership of said property. The Trustee may, after consulting

with the beneficiary or his legal guardian or representative as well as legal counsel, determine that it is in the beneficiary's best interests for title to residential real property to be in the name of the beneficiary's guardianship. In the event that title to residential real estate is in the name of the beneficiary or, in the name of the beneficiary's guardianship the Trustee has authority to pay the property taxes, insurance and expenses of repair and maintenance of that property.

3.01.12.02     <u>Automobile:</u>  If an automobile is allocated to this Trust pursuant to Paragraph 2.01.02 of ARTICLE II, then that automobile should be made available to the person or persons hired to assist **CLARENCE THOMAS HARVEY**, to be used for  **CLARENCE THOMAS HARVEY**'s transportation; but if no such automobile is allocated to this trust, the Trustee is specifically empowered to purchase an automobile (which should be for example the same caliber as a Ford Explorer ) for that purpose and the Trustee shall purchase insurance (property, liability, umbrella) and pay for taxes, title, maintenance with respect to the automobile.  Title to the automobile does not necessarily have to be in the trust, and the Trustee has discretion whether to record a lien on the automobile. Any such automobile may be sold from time to time, and another automobile may, at the Trustee's discretion, be purchased for those purposes.  I specifically give the Trustee all necessary powers to make whatever arrangements the Trustee deems suitable for **CLARENCE THOMAS HARVEY**'s residence, care and supervision, and to pay for all such needs from income or principal of **CLARENCE THOMAS HARVEY**'s Trust, subject to the Special Needs provisions of this Trust.

3.01.13      <u>Enforceability of Loans.</u> The Trustee is authorized to make loans enforceable under state law to or for the beneficiary's benefit.

3.01.14      <u>Acquisition and Maintenance of Insurance (Health & Life).</u>  The Trustee is authorized to pay premiums to provide health insurance for the primary beneficiary; to pay premiums on life insurance policies that may be owned or acquired by the trust.  If the Trustee is also the insured of any life insurance policy owned by the trust, then the Trustee may exercise all rights and had incidents of ownership with respect to such policy only in a fiduciary capacity, including the power to change the beneficiary, to surrender cancel the policy, to assign the policy, to revoke any assignment to pledge a policy for a loan, or to obtain a loan against the surrender value policy from the insurer.

3.01.15      <u>Compensation For Services Provided by Family of the Beneficiary</u>  In the event a member of **CLARENCE THOMAS HARVEY**'s family or household shall provide services to **CLARENCE THOMAS HARVEY** (i.e. custodial, attendant care, caretaker), they shall not be entitled to reasonable compensation.

3.02   Trustee(s) Powers to Deal With Environmental Hazards:

    3.02.01      General: When dealing with any real property held by this Trust, the Trustee(s) shall have the power to use and expend the trust income and principal to (I) conduct environment assessments, audits and site monitoring to determine compliance with any environment law or regulation thereunder; (II) take all appropriate remedial action to contain, clean up or remove any environmental hazard including a spill, release, discharge or contamination, either on its own accord or in response to an actual or threatened violation of any environmental law or regulation thereunder;(III) institute legal proceedings by a local, state or United States agency concerned with environmental compliance, or by a private litigant; (IV) comply with any local, state or United States agency order or court order directing an assessment, abatement or cleanup of any environmental hazards; and (V) employ agents, consultants and legal counsel to assist to perform the above undertakings or actions. Any expenses incurred by the Trustee(s) under the Section may be charged against income or principal as the Trustee(s) shall determine. Any such expenditures may only be made for real property that is being held by the Trustee(s) according to the terms of this Trust. The Trustee(s) shall give the beneficiary (including the Beneficiary) reasonable notice of any purported claims made as a result of environmental pollution.

    3.02.02      Right to Refuse Contributions: The Trustee(s) shall have the power to receive any property, real or personal, to be added to the Trust from any person by lifetime or testamentary transfer or otherwise; provided, however, that the Trustee(s), in its sole discretion, may refuse to accept any such property or may require, as a prerequisite to accepting property, that the donating party provide evidence satisfactory to the Trustee(s) that the property (I) is not being used and (II) has never been used for any activities directly or indirectly involving the generation, use, treatment, storage, disposal, release or discharge of any hazardous toxic materials or substances.

    3.02.03      Exoneration of Trustee(s): No Trustee(s) shall be liable for any loss or depreciation in value sustained by the Trust as a result of the Trustee(s) retaining any property upon which there is later discovered to be hazardous materials or substances requiring remedial action pursuant to any United States, state or local environmental law, unless the Trustee(s) contributed to the loss of depreciation in value through willful default, willful misconduct or gross negligence.

ARTICLE IV
SPENDTHRIFT PROVISIONS

4.01   Inalienability: This is a purely discretionary, non-support, spendthrift trust. No beneficiary (including the Beneficiary), nor any creditor of any beneficiary, shall have any right to anticipate, sell assign, mortgage, pledge or otherwise dispose of or encumber all or any part of the trust estate, whether principal or income. This trust and its corpus are to be used only for supplemental care of the beneficiary during the Beneficiary's lifetime. No part of the trust estate, including income, shall

be liable for the debts or obligations of the Beneficiary or any other beneficiary, even if such debts are a result of providing necessities, food clothing, shelter, support or maintenance to the Beneficiary or any beneficiary, nor shall any part of the trust estate, whether principal or income, be subject to attachment, garnishment, execution, creditor's bill or other legal or equitable process, whether during the Beneficiary's lifetime or after the Beneficiary's death.

### ARTICLE V
### PROVISION CONCERNING TRUSTEE(S)

5.01    Resignation:  Any Trustee(s) may resign by giving thirty (30) days written notice to any other Trustee then serving and a current beneficiary. If a beneficiary (including the beneficiary) is legally incapacitated, the notice shall be delivered to that beneficiary's legal representative, if any, otherwise to such beneficiary's natural guardian, otherwise to the beneficiary's lawful guardian, as defined above; provided, however, that if no other Trustee(s) shall then be serving, such resignation shall not be effective until one is appointed.

5.02    Removal of Trustee(s):  The Beneficiary may for cause remove the Trustee from serving for cause by giving at lease thirty (30) days advance written notice to the Trustee and obtaining written acceptance by the Successor Trustee.  Examples of  grounds for removal for cause may include: failure to comply with the Prudent Investor Rule, improper investments, conflict of interest, lack of rapport with the beneficiary.  No corporate Trustee shall be removed until and unless there is a Successor corporate Co-Trustee who has accepted the office in writing and then administering trust assets with a combined capital and surplus in excess of twenty-five million dollars ($25,000,000.00) according to its last published statement and having assets under trust administration of at least one hundred million dollars ($100,000,000.00). If **CLARENCE THOMAS HARVEY** is incapacitated or otherwise not able or willing to take such action, the Beneficiary's attorney-in-fact appointed by the Beneficiary's valid Durable Power of Attorney, or the Beneficiary's legal representative, or court appointed guardian, may petition any court of competent jurisdiction for removal of any Trustee(s) but in such case the decision on whether to remove and the power to remove any Trustee(s) shall be in the exclusive discretion and control of the court. No contingent beneficiary, or any government or private agency, may petition the court for the removal of any Trustee(s) while the named beneficiary of the Trust is still living. After the death of the guardian of any such beneficiary who is then a minor or legally incapacitated, or the death of the attorney-in-fact of any such beneficiary appointed by a valid Durable Power of Attorney, the Beneficiary's legal representative or court appointed guardian may for good cause remove any Trustee(s) without liability to any present or future beneficiary hereunder, by delivering written notice to the then current Trustee(s) not less than thirty (30) days prior to the effective date of such removal. A Successor Trustee(s) shall be appointed according to the terms of Section 5.04, below.

5.03    Death or Incapacity:

5.03.01        Upon the death or incapacity of a Trustee, such Trustee shall automatically and immediately cease to serve as a Trustee.

5.03.02        "Incapacity" as used herein shall mean when a person's ability to receive and evaluate information effectively or to communicate decisions, or both, is impaired to an extent that the person cannot exercise a reasonable level of care with regard to the duties of Trustee. The certification of such by the person's regularly attending physician, if any, otherwise by any licensed physician, shall be binding regarding the Trustee's incapacity for the purposes of this instrument. In addition, a person shall be deemed to be incapacitated if the person has disappeared or cannot freely communicate for a period of ninety (90) days.

5.04   Successor Trustee(s):  If the original Trustee is unable to serve, the First Successor Trustee shall be **STEVEN SNEED**.  The Second Successor Trustee shall be **VINCENT HARVEY**.  Any Trustee(s) shall have the power to appoint as Successor Trustee(s) any adult person (over age 30) or any financial institution having trust powers and having total equity capital of not less than Ten Million Dollars ($10,000,000.00), successively, or as Co-Trustee(s).   If the original Trustee is removed for cause, a court of competent jurisdiction (including the Court that has jurisdiction over the guardianship proceeding for the Beneficiary) shall have the power to appoint a Successor Trustee.

Under no circumstances shall **CLARENCE THOMAS HARVEY** serve as Trustee.  If the last remaining Trustee of this Trust is not living, is incapacitated, or is otherwise unable or unwilling to so appoint a successor Trustee(s), then the Beneficiary, if living, or a majority in interest of the beneficiaries to whom income may then be paid hereunder (or the attorney-in-fact under a duly executed and valid Durable Power of Attorney, or the court appointed conservator or guardian, if any, for the Beneficiary or any other income beneficiary) shall have such power to appoint any financial institution meeting the above criteria as Successor Trustee(s). In the event of the failure, refusal or inability to appoint a Successor Trustee(s) according to the foregoing provisions within thirty (30) days following the resignation or other failure of a Trustee(s) to so serve, any beneficiary of the Trust, or any other interested person, may at the expense of the trust, secure the appointment of a Successor Trustee(s) by petition to a court of competent jurisdiction.  The court shall consider any recommendations as to qualified candidates made by the prior or acting  Trustee(s) and shall appoint a Trustee that it determines will be in the best interests of **CLARENCE THOMAS HARVEY**.

If any Corporate Trustee(s) so appointed shall during its term as Trustee(s) transfer its trust business to any other corporation or national banking association authorized to do trust business, whether such transfer shall arise through merger, consolidation, transfer of assets, conversions or otherwise, such transferee corporation of association and its successors shall ipso facto and without further transfer, substitution, act or deed on the part of any of the parties hereto, become subrogated and succeed as Trustee(s) hereunder, vested with all the trust estate, rights, obligations, power discretion, immunities, privileges and compensations herein conferred upon the original Trustee(s).

Successor Trustee(s) hereunder shall have all of the rights, powers, discretions, duties, responsibilities, and limitations granted to or imposed upon the original Trustee(s). No fiduciary

need examine the accounts, records, and acts of any previous fiduciary or any allocation of the trust estate nor be responsible for any act or omission to act on the part of any previous fiduciary.

5.05    Accounting: The Trustee(s) shall be excused from filing any inventory or account with any court, and all statutory requirements concerning such are hereby waived. However, the Trustee(s) shall keep accurate books of account of all transactions pertaining to the trust estate, showing all disbursement, charges for the Trustee(s)' services, receipts of principal and income, and all investments and changes of investments. The Trustee(s) shall render an account at least annually, and shall at the time of death, resignation, or removal of any Trustee(s), and at the time of the beneficiary's death or cessation of disability, or at any other time the Trustee chooses, render an intermediate or final account to those persons then having a right (whether discretionary or absolute) to the distribution of income or principal who are then of sound mind and over the age of eighteen (18) years. The Trustee(s) shall provide the beneficiary's lawful guardian (as defined in Section 2.02.04, above), with an annual or intermediate account if the beneficiary is incapacitated. The failure to object in writing within 90 days of receipt of such account shall constitute a binding and conclusive acceptance of such account by and on behalf of all persons then having any interest in this Trust (now or in the future), and shall be a complete discharge to the Trustee(s) and all successor Trustee(s) with respect to all matters contained in the account to the same extent as though the account had been judicially settled and allowed by decree or judgment of a court of competent jurisdiction in an action or proceeding in which all persons ever having, acquired, or claiming any interest were duly made parties and were duly represented. Despite the above provisions, any such discharge shall not release the Trustee(s) from liability for breach of fiduciary duty, misrepresentation or fraud.

5.06    Limitations on Trustee(s) Powers: No power enumerated in this instrument shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of the principal or income of this trust for less than adequate and full consideration in money or monies worth. In addition, and not withstanding any of the powers conferred upon the Trustee(s), no individual acting as Trustee(s) hereunder shall exercise or join in the exercise of discretionary powers over the investment or distribution of income or principal, or the termination of any trust, that may in anyway (I) benefit such individual, or (ii) discharge such individual's legal obligation to support any beneficiary, including the Beneficiary.

5.07    Bond: Any Trustee(s) shall at all times serve as such without bond, unless otherwise ordered by a court of competent jurisdiction.

5.08    Additional Transfers of Property: Any additional transfer of property to this Trust shall be absolute; provided, however, that the duties of the Trustee(s) shall not be increased by virtue of any such transfer without the consent of the Trustee(s).

5.09    Compensation: The Trustee(s) shall be entitled to reimbursement of all reasonable expenses incurred by the Trustee(s) on behalf of the Trust. In addition, the Trustee(s) shall be paid compensation of $10.00 per hour for trustee services. The Trustee is required to maintain a detailed

time log of services rendered and shall provide that log to the beneficiary each month and obtain the beneficiary's consent to payment before payment is issued.

5.10   Appointment of Special Trustee(s):   The Trustee(s) shall have the authority to appoint a person or qualified corporation at any time to act a Special Trustee(s) for the administration or distribution of the trust estate with respect to which the Trustee(s) (herein "primary Trustee (s)') shall make the determination, in its discretion, that it is not eligible to act or cannot administer in a practicable manner. The primary Trustee(s) may at any time revoke such appointment. So long as any such appointment is in effect, any power or authority hereunder that would be exercisable by the primary Trustee(s) with respect to the assets to be administered or the distributions to be made by the special Trustee(s), if the primary Trustee(s) was subject to no restriction or limitation with respect to the administration of such items, may be exercised by the Special Trustee(s) with the same force and effect as if the primary Trustee(s) had itself taken such action in the absence of any such restriction or limitation. Unless required by the primary Trustee(s), the Special Trustee(s) shall act without bond or security and shall not account to any court. The Special Trustee(s) may receive and retain customary and reasonable compensation for services in such capacity in addition to the compensation to which the primary Trustee(s) is entitled under the Agreement.

5.11   Special Multiple Trustee Provisions:   While more than one (1) Trustee is acting, the following provisions shall apply where the context allows:

5.11.01      With respect to any matter as to which the Trustee(s) have joint powers, a Trustee from time to time may delegate any or all of that Trustee's rights, powers, duties and discretion as Trustee to the other Trustee(s) with the consent of the latter;

5.11.02      The Trustee(s) may establish bank accounts and may authorize that checks or drafts may be drawn on, or withdrawal made from, any such accounts on the individual signature of any Trustee;

5.11.03      The Trustee(s) may establish securities accounts of other investments accounts and may authorized that checks or drafts may be drawn on, withdrawal made from, or other transactions may be conducted (including, but not limited to, buying, selling or otherwise trading in securities) on any such account on the individual signature of any Trustee;

5.11.04      A Trustee shall be presumed to have approved a proposed act or decision to refrain from acting if that Trustee fails to indicate approval or disapproval thereof within fifteen (15) days after a written request to do so, and a Trustee shall not be required to continue to make a proposal that has been disapproved on at least two occasions if that Trustee has informed the disapproving Trustee(s) that continued disapproval will be assumed until notice to the contrary has been received;

5.11.05      The Trustee(s) may execute documents by jointly signing one document or separately signing concurrent counterpart documents; and

5.11.06      Each Trustee of the trust shall have an equal say in all matters pertaining to the trust estate, and decisions of the majority shall control; provided, however, that any Trustee, including any corporate Trustee, may limit its liability for any majority decision it disagrees with by serving a written statement on the other Trustee(s) stating the reasons it disagrees with the decision of the majority and that such disagreeing Trustee shall not be liable or otherwise responsible for the effects of the decision of the majority that it so disagrees with.

5.12    Good Faith Actions Taken by Trustee:  The Trustee shall be held harmless from any liability, so long as its actions were taken after appropriate due diligence in obtaining necessary facts and information prior to making such decision; and further, that the information given to the Trustee, upon which decisions are made and actions taken, are from sources that could be relied upon in the normal course of business.  It is intended that the Trustee act freely under any and all powers and authority granted in the trust agreement as to all matters concerning the trust estate, after forming a reasonable judgement based upon all of the circumstances of any particular situation as to the wisest and best course of action to pursue in the interest of the Trust and the beneficiaries.

## ARTICLE VI
## GENERAL ADMINISTRATIVE PROVISIONS

6.01    Irrevocability:

6.01.01      Limitations on Settlor's and Beneficiary's Powers:  Neither the Settlor nor the Beneficiary shall have any right or power, whether alone or in conjunction with others, in whatever capacity (I) to alter, amend, revoke, or terminate this Trust or any of the terms of this Agreement, in whole or in part; (ii) to designate the persons who shall posses or enjoy the Trust property, and the income therefrom; or (iii) to exercise any of the incidents of ownership in any property transferred to the Trust. Despite the above, however, the Beneficiary shall have the power to reacquire trust corpus by substituting other property or equal value.

6.01.02      Limited Power of Trustee(s) to Amend:  Notwithstanding the provisions of Section 6.01.01, above, the Trustee(s) shall have the power, by an instrument in writing filed with the Trust records, to alter or amend any provision of this Trust (I) to facilitate the administration of this Trust; and (ii) to accommodate changes in tax or any other laws relating to or affecting this Trust; and (iii) to make changes that are recommended, or required, to allow the Beneficiary to qualify, or continue to qualify, for public benefits and services of any kind in any jurisdiction, including but not limited to benefits under the Medical Assistance Program, 42 U.S.C. §1396 and its successors. During the year prior to the Beneficiary's sixty-fifth (65th) birthday, the Trustee(s) shall determine whether it would

be appropriate to amend this Trust according to 42 U.S.C. §1396p(c)(2)(B)(iv) and, if so, to make appropriate amendments.

The decision to amend this Trust or not shall be made by the Trustee(s) in its sole and absolute discretion, either on its own motion or on the motion of any beneficiary (or such beneficiary's legal representative), including the Beneficiary, who is then presently eligible to receive distribution for the trust; provided, however, that no contingent beneficiary not presently vested in the trust estate, nor any government or private agency, shall have standing to petition the Trustee(s) to alter or amend this Trust. To the extent possible, amendments should conform with the purposes of this Trust and with any regulations that are approved by any governing body or agency relating to 42 U.S.C. §1396p, or related statutes, including state statutes that are consistent with the provisions and purposes of the Omnibus Budget Reconciliation Act of 1993 and amendments to such Act. The Trustee(s) shall give notice of any proposed action to alter or amend this Trust to the State of Florida Department of Children and Families, the Agency for Health Care Administration, and the Social Security Administration.

6.02    Tax Provisions:

6.02.01    Income Tax: Upon the receipt of a tax return prepared as described in Section 6.02.03, below, the Trustee(s) shall pay any income tax liability of the Beneficiary which results from income received by the Trustee(s) but properly reported on the income tax return of the Beneficiary. The funds used to pay any such income tax liability shall be paid directly to the appropriate tax authority and shall not be available to the Beneficiary. The Beneficiary shall not have any right to or interest in any such fund paid by the Trustee(s). Any such funds are not a resource of the Beneficiary and should not be treated as a distribution of income for purposes of qualification for any state or United States benefit program.

6.02.02    Estate Tax: The Trustee(s) shall pay any United States or state estate or inheritance tax liability which results form the trust estate being included in the taxable estate of the Beneficiary. The funds used to pay any such tax liability shall be paid directly to the appropriate tax authority.

6.02.03    Tax Return Preparation: In determining the amount the Trustee(s) shall pay towards such taxes, the Trustee(s) may rely upon any United States, state or local tax return prepared on behalf of the Beneficiary by a professional tax return preparer. In addition, the Trustee(s) is authorized, in its sole discretion, to retain and/or compensate any tax professional retained by or on behalf of the Beneficiary to prepare the trust tax returns, Beneficiary's personal tax returns or the Beneficiary's estate tax returns.

6.02.04    Tax Refunds: In the event of a tax refund, any amount refunded shall be paid directly to the Trustee(s) to the extent such refund is attributable to amounts previously paid by the Trustee(s). For purposes of determining whether an amount is attributable to such

prior payments, any refund (including interest thereon) shall be attributed to amounts previously paid by the Trustee(s) to the extent the Trustee(s) made any tax payment for the relevant tax year which has not been previously refunded. For purposes of determining whether an amount previously paid had been previously refunded, any interest included as part of a refund shall not be used to offset a previous payment by the Trustee(s).

> 6.02.04.01     The Beneficiary or the Beneficiary's legal representative (including an attorney-in-fact appointed by a valid Durable Power of Attorney), if any, otherwise the Beneficiary's natural guardian, otherwise the Beneficiary's lawful guardian, as defined above, shall execute any letters, powers or attorney or other documents required or requested by the taxing authority in order to allow payment of any refund to the Trustee(s).

> 6.02.04.02     In the event that any tax refund which is attributable in whole or part to a prior payment by the Trustee(s) is paid directly to the Beneficiary or anyone else on the Beneficiary's behalf, the recipient of such refund or part thereof shall have no interest in or right to such refund or part thereof and shall hold the amount which is attributable to a prior payment by the Trustee(s) as an agent of and for the Trustee(s) and shall immediately turn over such amount to the Trustee(s).

> 6.02.04.03     Notwithstanding the foregoing provisions of this Section 6.02.04, the Trustee(s) shall have no obligation to take any action with respect to any tax refund on behalf of the Beneficiary, and the Trustee(s) shall not be liable or accountable to the Beneficiary or the Beneficiary's representative, or any other beneficiary, for any action or inaction concerning any such tax refund. In addition, the Trustee(s) may require reimbursement from the trust estate for all expenses, as well as a special fee for extraordinary services, or, if the trust estate is inadequate, indemnification to the Trustee(s)' satisfaction from the Beneficiary or the Beneficiary's representative, or any other beneficiary, for any action taken, or as a result of any inaction, concerning any such tax refund.

6.03    Choice of Law: This Trust is to be governed, construed, and administered according to the laws of the State of Florida.

6.04    Definition of "Issue": The "issue" of a person means all his or her lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definition of parent and child according to the applicable law of the State of Florida at any relevant time.

6.05    Protection Against Perpetuities Rule: Any trust created hereunder shall in any event terminate no later than twenty one (21) years after the death of the last survivor of the group composed of the Beneficiary's parents and grandparents, the issue of the Beneficiary's parents and grandparents, and the Beneficiary's heirs at law who are living on the date of the execution of this

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 20

Trust. Upon such termination, the property held in trust shall be discharged of any trust, and shall immediately vest in and be distributed to the persons then entitled to the income in the proportion in which they are beneficiaries of the income, and for this purpose only it shall be presumed that any person then entitled to receive any discretionary payments from the income or principal of the Trust is entitled to receive the full income, and that any class of persons so entitled is entitled to receive all such property, to be divided among them, on a per stirpes basis.

6.06    Headings: Headings of articles and sections are inserted for convenience and reference only and they do not constitute a part of this instrument.

6.07    Notice: Any notice required to be given by the terms of this instrument shall be in writing, designating the proper party at his or her last known address, and mailed United States Mail, postage prepaid, return receipt requested.

6.08    Severability: Should any provision of this instrument be judicially declared invalid, unenforceable or void, such decision shall not have the effect of invalidating or voiding the remainder of this instrument, but such provision shall be deemed to have been stricken from this instrument, and the remainder shall have the same force and effect as if such part or parts had never been included herein. Should any provision of this trust disqualify **CLARENCE THOMAS HARVEY** for government assistance, that provision may be voided to avoid such disqualification.

6.09    Execution in Counterparts: This document may be executed in any number of counterpart signature pages, all of which together will constitute the entire, original document.

            IN WITNESS WHEREOF, I have set my hand and affixed my seal to this Qualified Disability Trust, at _____ County, Florida this _____ day of _____, 20__.


                                    _____
                                    Judge Fallon, Settlor


            The foregoing agreement, consisting of _____ typewritten pages, including schedule "A", was signed and declared by the Court, to be created as the CLARENCE THOMAS HARVEY Qualified Disability Trust Agreement in our presence, and we, at the request of the Court, and in their presence, and in the presence of each other, have hereunto subscribed our names as witnesses, this _____ day of _____, 20____ in _____ County, Louisiana.


                                    _____
                                    Witness


                                    _____
                                    Witness

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 21

STATE OF LOUISIANA        )
                          )     ss.:
COUNTY OF _____    )

     I **Judge Fallon** , declare to the officer taking my acknowledgment of this instrument, and to the subscribing witnesses, that I signed this instrument as the ***CLARENCE THOMAS HARVEY Qualified Disability Trust***.

 

_____

Judge Fallon, Settlor

 

     We, _____ and _____the witnesses, respectively, whose names are signed to the attached of foregoing instrument, having been sworn, declared to the undersigned officer that the Settlor in the presence of witnesses, signed this trust agreement and that they signed, and that each of the witnesses, in the presence of the Settlor and in the presence of each other, signed the trust as a witness.

 

_____

Witness

_____

Witness

 

     Acknowledged and subscribed before me by the Grantor(s), **Judge Fallon**, _____ who is personally known to me or ___ who has produced _____ as identification;

and sworn to and subscribed before me by the witnesses, _____ who is personally known to me or ___ who has produced_____ as identification;

and _____ who is personally known to me or ____ who has produced ____ _____ as identification, and subscribed by me in the presence of the Grantor(s) and the subscribing witnesses, all on the _____ day of _____, 20___.

 

_____

Notary Public, State of _____

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 22

---

### <u>ACCEPTANCE BY TRUSTEE</u>

    The undersigned hereby accepts the trust imposed by the foregoing trust agreement and agrees to serve as Trustee upon the terms and conditions therein set forth.

Date _____          _____

                                        **RAYMOND HARVEY**, Trustee

# Qualified Disability Trust
## Schedule A

This schedule is attached to and incorporated in the ***CLARENCE THOMAS HARVEY QUALIFIED DISABILITY TRUST*** agreement dated _____ day of _____, 20___, by and between **Judge Fallon** , as Settlor,  and **RAYMOND HARVEY, as Trustee.** The following property was delivered to the Trustee by **CLARENCE THOMAS HARVEY**:

<u>**DATE OF DELIVERY**</u>          <u>**PROPERTY DELIVERED TO TRUSTEE**</u>

F:\CLIENTS\ClientFiles-2009\090011\QDT