Exhibit "A"



Exhibit "B"

STATE OF FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES

RETURN ADDRESS
   CHILDREN & FAMILIES--ADULT
   1400 W. COMMERCIAL BL.S160
   FORT LAUDERDALE FL 33309

NOTICE OF CASE ACT



MAY 12 09
1:26P

WORKER
VERMA       JORDAN

PHONE: (866) 762-2237
MAILING DATE 09/23/2008

MAILING ADDRESS

   CLARENCE HARVEY
   REGENTS PARK OF SUNRISE
   9711 W OAKLAND PARK BLVD
   SUNRISE FL 33351

PAYEE-NAME: CLARENCE HARVEY
CASE: 1071083597

Dear CLARENCE HARVEY:

---

1071083597 MI I 01
We have reviewed your eligibility and have determined that your
INSTITUTIONAL CARE PROGRAM AND MEDICAID benefits
will stay the same.

The following individuals are members of this assistance group:

  CLARE H (ELIGIBLE)

Reason: ALL ELIGIBILITY REQUIREMENTS HAVE BEEN MET

---

1071083597 QMB   01
We have reviewed your eligibility and have determined that your
QUALIFIED MEDICARE BENEFICIARY benefits
will stay the same.

The following individuals are members of this assistance group:

  CLARE H (ELIGIBLE)

Reason: ALL ELIGIBILITY REQUIREMENTS HAVE BEEN MET

---

For TDD or TTY services, please call 1-800-955-8771.

NOTE: IMPORTANT INFORMATION: Please visit our website at
www.myflorida.com/accessflorida. You can use the website to apply for
benefits, report changes, check the status of your case, or complete a
recertification or review.

If you think that this action is incorrect, your worker or your worker's
supervisor will be glad to discuss it with you.  You also have the right
to ask for a hearing before a state hearings officer.  If you want a
hearing, you must ask for the hearing within 90 days from the mailing
date at the top of this notice.  You can bring with you or be represented
at the hearing by anyone you choose, such as a lawyer, relative or friend.
You can ask for a hearing by writing, calling or coming into the office.
If you need information about how to get free legal advice contact your
worker.  If you receive food stamp benefits you can also call toll free
1-866-762-2237 for a listing of free legal organizations in your area.

In accordance with Federal law and our policy, the Department of
Children and Families is prohibited from discriminating on the basis

Continued on page 02

AE01     FORM : CF-ES 103 12 2003                   0033417

OVERLAY SCN03X - .11/02

** TOTAL PAGE.02 **

STATE OF FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES

**RETURN ADDRESS**
CHILDREN & FAMILIES--ADULT
1400 W. COMMERCIAL BL.S160
FORT LAUDERDALE FL 33309

**NOTICE OF CASE ACTION**

**WORKER**
COMMUNITY MED     PROCESSING UNIT

**PHONE:** (866) 762-2257
**MAILING DATE** 12/03/2008

**MAILING ADDRESS**

SOCIAL SERVICES

9711 W OAKLAND PARK BLVD
SUNRISE FL 33351

**PAYEE-NAME:** CLARENCE HARVEY
**CASE:** 1071083597

Dear CLARENCE HARVEY:

```
-R3-
1071083597 MI I 01
We have reviewed your eligibility and have determined that your
INSTITUTIONAL CARE PROGRAM AND MEDICAID patient
responsibility is now $712.00 because of a change in your income from
$706.00 to$747.00 as of 01/01/2009.  The amount of the new patient
responsibility is the amount you are expected to pay
REGENTS PARK OF SUNRISE each month.

The following individuals are members of this assistance group:

  CLARE H (ELIGIBLE)

Reason: DUE TO A CHANGE IN SOCIAL SECURITY BENEFIT

The law supporting this action is contained in the
(FL Admin. Code = R)(FL Statute = S),         65A-1
```

Are you paying private health insurance premiums (other than Medicare) or
paying out-of-pocket for medical expenses that are not covered by a third
party or Medicaid?  If your answer to this question is 'yes', we may be
able to include a deduction for these expenses in your budget and reduce
the amount you pay the nursing home (or Hospice provider, if applicable)
for your care each month, enabling you to keep more of your income to pay
those bills.

To receive the deduction, you must let your local DCF eligibility office
know about your health insurance premiums and out-of-pocket medical
expenses.  You may be asked to provide proof of your expenses.

If you would like more information about the uncovered medical expense
deduction and how it works, call your local DCF office.  Printed material
about the uncovered medical expense deduction is also available at your
local DCF office.

**For TDD or TTY services, please call 1-800-955-8771.**

**NOTE: IMPORTANT INFORMATION: Please visit our website at
www.myflorida.com/accessflorida. You can use the website to apply for
benefits, report changes, check the status of your case, or complete a
recertification or review.**

If you think that this action is incorrect, your worker or your worker's
supervisor will be glad to discuss it with you.  You also have the right
to ask for a hearing before a state hearings officer.  If you ask for a

Continued on page 02

AE01      FORM : CF-ES 103 12 2003                                    0134177

STATE OF FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES

| AE01 PG 2 | | |
|---|---|---|
| CLARENCE | HARVEY | 12/03/2008 |
| | | 1071083597 |

hearing within 10 days of the mailing date of this notice, you may
continue to receive benefits at the prior level. If the decision of the
hearings officer is not in your favor, you shall be required to repay the
continued benefits for which you were not eligible. If you want a
hearing, you must ask for the hearing within 90 days from the mailing
date at the top of this notice. You can bring with you or be represented
at the hearing by anyone you choose, such as a lawyer, relative or friend.
You can ask for a hearing by writing, calling or coming into the office.
If you need information about how to get free legal advice, contact your
worker. If you receive food stamp benefits you can also call toll free
1-866-762-2237 for a listing of free legal organizations in your area.

If you are currently employed and are being terminated from TCA (temporary
cash assistance), you may be eligible for transitional child care assistance for
up to 24 months if your earnings cause you to be ineligible for TCA (temporary
cash assistance) and certain other conditions are met. To determine whether
you are eligible for this assistance, you must verify the amount of your
earnings. If you are interested in receiving transitional child care
assistance, contact your worker immediately.

In accordance with Federal law and our policy, the Department of
Children and Families is prohibited from discriminating on the basis
of race, color, national origin, sex, age, disability, religion,
political belief, or marital status.

Food stamp households with benefit periods of six months are only required
to report a change when the household's monthly gross income exceeds the
food stamp gross income limit for the household size.

Households receiving Medicaid or Temporary Cash Assistance and food stamp
households comprised of elderly or disabled members without earned income
must continue to report all changes in the household circumstances within
10 days.

'Earn less than $37,783 in 2007? You might be eligible for an Earned
Income Tax Credit of as much as $4,716. For more information on where
to find free tax assistance in your area call the IRS at 1-800-829-1040.'

# STATE OF FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES

| AE01 PG 2 | | 09/23/2008 |
|-----------|--------------|-------------|
| CLARENCE | HARVEY | 1071083597 |

of race, color, national origin, sex, age, disability, religion, political belief, or marital status.

Food stamp households with benefit periods of six months are only required to report a change when the household's monthly gross income exceeds the food stamp gross income limit for the household size.

Households receiving Medicaid or Temporary Cash Assistance and food stamp households comprised of elderly or disabled members without earned income must continue to report all changes in the household circumstances within 10 days.

'Earn less than $37,783 in 2007? You might be eligible for an Earned Income Tax Credit of as much as $4,716. For more information on where to find free tax assistance in your area call the IRS at 1-800-829-1040.'

RECEIVED    FEB 09 09
             10 37A

# Social Security Administration

Date:  **January 27, 2009**
Claim Number:   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A
                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DI

1BEV010003359  0.345  MB  0.369     T00000015

CLARENCE HARVEY
9711 W OAKLAND PARK
BOULEVARD
SUNRISE FL 33351-7013

You asked us for information from your record.  The information that you
requested is shown below.  If you want anyone else to have this information,
you may send them this letter.

## Information About Current Social Security Benefits

Beginning December 2008, the full monthly Social Security benefit before any
deductions is $ 747.70.

We deduct $0.00 for medical insurance premiums each month.

The regular monthly Social Security payment is $ 747.00.
(We must round down to the whole dollar.)

Social Security benefits for a given month are paid the following month.  (For
example, Social Security benefits for March are paid in April.)

Your Social Security benefits are paid on or about the third of each month.

## Other Important Information

YOUR DATE OF DISABILITY ELIGIBILITY WAS 11/1974.

## If You Have Any Questions

If you have any questions, you may call us at 1-800-772-1213, or call your local
Social Security office at 954-748-3967.  We can answer most questions over the
phone.  You can also write or visit any Social Security office.  The office that
serves your area is located at:

SOCIAL SECURITY
3511 N PINE ISLAND RD
SUNRISE, FL 33351

**See Next Page**

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A
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DI

If you do call or visit an office, please have this letter with you.  It will help us answer your questions.

Linda S. McMahon
Deputy Commissioner
  for Operations

Exhibit "C"

| Chapter: 1600 | Assets | Program: MSSI, SFP |
|---|---|---|

# 1640.0000 SSI-Related Medicaid, State Funded Programs

This chapter presents requirements for determining eligibility based on assets. The chapter discusses policy for the following topics:

1. Asset Definition,
2. Asset Limits,
3. Asset Ownership and Availability,
4. General Determination of Asset Value,
5. Types of Assets:  Definitions and Value Determinations, and
6. Transfer of Assets.

## 1640.0100      ASSET DEFINITION  (MSSI, SFP)

Assets, liquid or non-liquid, are assets or items of value that are owned (single or jointly) by an individual who has access to the cash value upon disposition.

Liquid assets are cash assets or assets that are payable in cash on demand.  Nonliquid assets are assets that cannot be readily converted to cash.

Assets of each member of the SFU must be determined.  A determination of whether each asset should be included or excluded must be made.

## 1640.0200      ASSET LIMITS  (MSSI, SFP)

The asset limit is the maximum amount of liquid and/or non-liquid assets that an assistance group can retain and remain eligible for public assistance.

### 1640.0204      Asset Limits Medically Needy  (MSSI)

For Medically Needy, assets must be equal to or below program limits.  SFU sizes and the corresponding Medically Needy asset limits are presented in Appendix A-7.

### 1640.0205      Asset Limits  (MSSI, SFP)

Total countable assets for an individual or a couple must not exceed the following limits:

1. For MEDS-AD, QMB, SLMB, QI1, Medically Needy and Working Disabled, the asset limit is $5,000 for an individual and $6,000 for a couple.

2. For ICP, PACE, all HCBS Waivers and Hospice, the asset limit is $2000 for an individual ($3,000 for eligible couple) or $5,000 if the individual's income is within the MEDS-AD limit ($6,000 for eligible couple).

Community spouse resource allowance policy applies to ICP, institutional Hospice, Cystic Fibrosis Waiver, Assisted Living Waiver, Long Term Care Diversion Waiver and PACE. Applicants who have spouses residing in the community or spouses who are not enrolled in HCBS, have a Community Spouse Resource Allowance (CSRA) subtracted from the couple's total countable assets before comparing the institutionalized spouse's countable assets to the $2000 or $5000 asset limit.  The CSRA is an established amount that increases annually.

Exhibit "D"

3257.      TRANSFERS OF ASSETS AND TREATMENT OF TRUSTS

A.    General.--Section 13611 of the Omnibus Budget Reconciliation Act of 1993 (OBRA 1993) amended §1917 of the Act by incorporating in §§1917(c) and (d) new requirements for treatment of transfers of assets for less than fair market value and for treatment of trusts. The following instructions apply only to transfers made and trusts established after the effective date explained in §3258.2. For transfers made and trusts established before that effective date, the old policies regarding treatment of trusts and transfers apply. See §§3215 and 3250 for instructions on the treatment of trusts established and transfers made before August 11, 1993.

B.    Definitions.--The following definitions apply, as appropriate, to both transfers of assets and trusts:

1.    Individual.--As used in this instruction, the term "individual" includes the individual himself or herself, as well as:

o      The individual's spouse, where the spouse is acting in the place of or on behalf of the individual;

o      A person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or the individual's spouse; and

o      Any person, including a court or administrative body, acting at the direction or upon the request of the individual or the individual's spouse.

2.    Spouse.--This is a person who is considered legally married to an individual under the laws of the State in which the individual is applying for or receiving Medicaid.

3.    Assets.--For purposes of this section, assets include all income and resources of the individual and of the individual§s spouse. This includes income or resources which the individual or the individual§s spouse is entitled to but does not receive because of any action by:

o      The individual or the individual's spouse;

o      A person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or the individual's spouse; or

o      Any person, including a court or administrative body, acting at the direction or upon the request of the individual or the individual's spouse.

For purposes of this section, the term "assets an individual or spouse is entitled to" includes assets to which the individual is entitled or would be entitled if action had not been taken to avoid receiving the assets.

The following are examples of actions which would cause income or resources not to be received:

o      Irrevocably waiving pension income;

    o    Waiving the right to receive an inheritance;

    o    Not accepting or accessing injury settlements;

    o    Tort settlements which are diverted by the defendant into a trust or similar device to be held for the benefit of an individual who is a plaintiff; and

    o    Refusal to take legal action to obtain a court ordered payment that is not being paid, such as child support or alimony.

However, failure to cause assets to be received does not entail a transfer of assets for less than fair market value in all instances. For example, the individual may not be able to afford to take the necessary action to obtain the assets. Or, the cost of obtaining the assets may be greater than the assets are worth, thus effectively rendering the assets worthless to the individual. Examine the specific circumstances of each case before making a decision whether an uncompensated asset transfer occurred.

    4.    Resources.--For purposes of this section, the definition of resources is the same definition used by the Supplemental Security Income (SSI) program, except that the home is not excluded for institutionalized individuals. In determining whether a transfer of assets or a trust involves an SSI-countable resource, use those resource exclusions and disregards used by the SSI program, except for the exclusion of the home for institutionalized individuals.

In determining whether resources have been transferred for less than fair market value, you may not apply more liberal definitions of resources which you may be using under §1902(r)(2) of the Act. For transfer of assets purposes, if you are a 209(b) State, you cannot use more restrictive definitions of resources that you may have in your State plan.

However, in determining whether and how a trust is counted in determining eligibility, you may apply more liberal methodologies for resources which you may be using under §1902(r)(2) of the Act. For trust purposes, if you are a 209(b) State, you may use more restrictive definitions of resources that you may have in your State plan.

For noninstitutionalized individuals, the home remains an exempt resource.

    5.    Income.--For purposes of this section, the definition of income is the same definition used by the SSI program. In determining whether a transfer of assets involves SSI-countable income, take into account those income exclusions and disregards used by the SSI program.

You may not, for transfer of assets purposes, apply more liberal definitions of income that you may be using under §1902(r)(2) of the Act. If you are a 209(b) State, you cannot use more restrictive definitions of income that you may have in your State plan.

However, in determining whether and how a trust is counted in determining eligibility, you may apply more liberal methodologies for income which you may be using under §1902(r)(2) of the Act. Also, for trust purposes, if you are a 209(b) State, you may use more restrictive definitions of income that you may have in your State plan.

Exhibit "E"

To avoid such a double penalty, application of one provision must take precedence over application of the other provision.  Because the trust provisions are more specific and detailed in their requirements for dealing with funds placed in a trust, the trust provisions are given precedence in dealing with assets placed in trusts.  Deal with assets placed in trusts exclusively under the trust provisions (which, in some instances, require that trust assets be treated as a transfer of assets for less than fair market value).

3259.7 Exceptions to Treatment of Trusts Under Trust Provisions.--The rules concerning treatment of trusts set forth in §3259.6 do not apply to any of the following trusts, i.e., the trusts discussed below are treated differently in determining eligibility for Medicaid.  Funds entering and leaving these trusts are generally treated according to the rules of the cash assistance programs, the State's more restrictive rules under §1902(f) of the Act, or more liberal rules under §1902(r)(2) of the Act, as appropriate.

As is noted in each exception below, one common feature of all of the excepted trusts is a requirement that the trust provide that upon the death of the individual, any funds remaining in the trust go to the State agency, up to the amount paid in Medicaid benefits on the individual's behalf.  When an individual has resided in more than one State, the trust must provide that the funds remaining in the trust are distributed to each State in which the individual received Medicaid, based on the State's proportionate share of the total amount of Medicaid benefits paid by all of the States on the individual's behalf.  For example, if an individual received $20,000 in Medicaid benefits in one State and $10,000 in benefits in another State, the first State receives two-thirds of the amount remaining in the trust, and the second State receives one-third, up to the amount each State actually paid in Medicaid benefits.

    A.    Special Needs Trusts.--A trust containing the assets of an individual under age 65 who is disabled (as defined by the SSI program in §1614(a)(3) of the Act) and which is established for the sole benefit of the individual by a parent, grandparent, legal guardian of the individual, or a court is often referred to as a special needs trust.  To qualify for an exception to the rules in this section, the trust must contain a provision stating that, upon the death of the individual, the State receives all amounts remaining in the trust, up to an amount equal to the total amount of medical assistance paid on behalf of the individual under your State Medicaid plan.  In addition to the assets of the individual, the trust may also contain the assets of individuals other than the disabled individual.

When a trust is established for a disabled individual under age 65, the exception for the trust discussed above continues even after the individual becomes age 65.  However, such a trust cannot be added to or otherwise augmented after the individual reaches age 65.  Any such addition or augmentation after age 65 involves assets that were not the assets of an individual under age 65.  Thus, those assets are not be subject to the exemption discussed in this section.

To qualify for this exception, the trust must be established for a disabled individual, as defined in §1614(a)(3) of the Act.  When the individual in question is receiving either title II or SSI benefits as a disabled individual, accept the disability determination made for those programs.  If the individual is not receiving those benefits, you must make a determination concerning the individual's disability.  In making this determination, follow the normal

procedures used in your State to make disability determinations for Medicaid purposes. If you are a 209(b) State, you must use the disability criteria of the SSI program, rather than any more restrictive criteria you may use under your State plan. The only exception to this requirement is if you had a more restrictive trust policy in general in 1972 than the policy described in §§3259ff. If so, you may use any more restrictive definition of disability which applied to that 1972 policy. If not, you must use the disability criteria of the SSI program.

NOTE:   Establishment of a trust as described above does not constitute a transfer of assets for less than fair market value if the transfer is made into a trust established solely for the benefit of a disabled individual under age 65. However, if the trust is not solely for the benefit of the disabled person or if the disabled person is over age 65 transfer penalties may apply. (See §3258.10 for the exceptions to imposing penalties for certain transfers of assets.)

        B.   Pooled Trusts.--A pooled trust is a trust containing the assets of a disabled individual as defined by the SSI program in §1614(a)(3) of the Act, that meets the following conditions:

            o    The trust is established and managed by a non-profit association;

            o    A separate account is maintained for each beneficiary of the trust but for purposes of investment and management of funds the trust pools the funds in these accounts;

            o    Accounts in the trust are established solely for the benefit of disabled individuals by the individual, by the parent, grandparent, legal guardian of the individual, or by a court (see §3257 for a definition of the term "solely for the benefit of"); and

            o    To the extent that any amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State the amount remaining in the account up to an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under your State Medicaid plan. To meet this requirement, the trust must include a provision specifically providing for such payment.

To qualify as an excepted trust, the trust account must be established for a disabled individual, as defined in §1614(a)(3) of the Act. When the individual in question is receiving either title II or SSI benefits as a disabled individual, accept the disability determination made for those programs. If the individual is not receiving those benefits, you must make a determination concerning the individual's disability. In making this determination, follow the normal procedures used in your State to make disability determinations for Medicaid purposes. If you are a 209(b) State, you must use the disability criteria of the SSI program. The only exception to this requirement is if you had a more restrictive trust policy in general in 1972 than the policy described in this instruction. If so, you may use any more restrictive definition of disability which applied to that 1972 policy. If not, you must use the disability criteria of the SSI program.

**Chapter:  1800**                    **Income**                    **Program:  MSSI, SFP**

**1840.0108.03   Joint Bank Accounts  (MSSI, SFP)**

When an eligible individual is a joint account holder, a deposit to the account specifically designated for any other account holder is not income to the individual.

Interest payments to the account are divided equally among the account holders.  For example, if there are two owners, 50 percent of the interest paid is owned by the individual.  Interest earned on bank accounts is excluded as unearned income in eligibility determination.  Interest is counted as unearned income when calculating patient responsibility.

**1840.0109.01   Availability of Income for Institutional Care  (MSSI)**

The following policy applies to ICP, MEDS-ICP, and Institutionalized Hospice.

The income owned solely by the community spouse is not considered when determining if the institutionalized individual's income is within program standards.  Once eligibility has been determined, the community spouse's income is considered based on the following policy.

Income derived from jointly owned assets is considered available to whom it is paid unless the trust or non-trust instrument indicates otherwise.  If the payment is made:

1.  solely to the community spouse, the income is available only to the community spouse;
2.  to both spouses, half of the income is considered available to each spouse; or
3.  to the institutional spouse, the community spouse, and to others, income is considered available in proportion to each spouse's interest in the asset.

The institutionalized spouse may rebut the presumed ownership interest of non-trust assets. Trust assets are considered available according to the terms of the trust.

Income from assets included in the community spouse's asset allocation are considered available according to whom the income is paid until the asset is legally transferred to the community spouse.  Once the asset is transferred to the community spouse, the income is not counted toward the institutional spouse.

**1840.0109.02   Determining Ownership of Income  (MSSI, SFP)**

The individual who has title to the proceeds of a payment or property is the individual who "owns" the income.

If the income is received by an individual's legal representative or guardian, the individual still owns the income.

When a legal representative receives the income, the eligibility specialist may verify ownership through the following documents the designation on the payment, check, award letter, or other document or the title to the property.

**1840.0109.04   Availability of an Inheritance  (MSSI, SFP)**

"Inheritance" is any person's rights to, or possession of, cash or property that are left to the individual at the person's death.  An individual's inheritance becomes unearned income when it actually becomes available to the individual, but in no case later than when the estate is closed.

Usually the court issues an order specifying the distribution of an inheritance when closing out the estate.  The individual's portion can be established by the court order.

If an inheritance is included as an asset as a result of deeming, and the individual later inherits the asset, the income from the inheritance is excluded at that time.

Exhibit "E"

# CLARENCE THOMAS HARVEY
## Qualified Disability Trust
*Table Of Contents*

---

ARTICLE I             Trust Funding

1.01   Initial Trust Funding
1.02   Additions to Trust

ARTICLE II            Distribution of Income and Principal

2.01   Distributions During Life of Beneficiary
  2.01.01   Distribution Provisions
  2.01.02   Intent Regarding Distributions
  2.01.03   Public Assistance Programs
  2.01.04   Payment of In-Kind Support and Maintenance
  2.01.05   Annual Evaluation To Update Beneficiary's Needs and Assure Appropriate Distributions
2.02   Distributions After Death of the Beneficiary or Cessation of Disability
  2.02.01   Permissible Payments
  2.02.02   Prohibited Expenses and Payments
  2.02.03   Reimbursement for Medical Assistance
  2.02.04   Distribution of Remaining Trust Estate
  2.02.05   Facility or Hold back of Payment
  2.02.06   Distribution and Reimbursement of Medical Assistance Upon  Beneficiary No Longer Being Disabled

ARTICLE III           Powers of Trustee(s)

3.01   General Powers
  3.01.01   Non-Income Producing Investment
  3.01.02   Investment Authority
  3.01.03   Title to Property
  3.01.04   Distributions of Income and Principal
  3.01.05   Retention Of Under-Productive Property
  3.01.06   Borrow Money
  3.01.07   Compromise of Claims
  3.01.08   Execution of Documents
  3.01.09   Hiring of Professionals
  3.01.10   On-Going Professional Services
  3.01.11   Reacquisition of Trust Corpus
  3.01.12   Acquisition and Maintenance of Real Estate and Automobile
    3.01.12.01   Real Estate
    3.01.12.02   Automobile

**CLARENCE THOMAS HARVEY QUALIFIED DISABILITY TRUST**
*Table of Contents - Page 2*

|  |  |  |
|---|---|---|
| | 3.01.13 | Enforceability of Loans |
| | 3.01.14 | Acquisition and Maintenance of Insurance (Health & Life) |
| | 3.01.15 | Compensation for Services Provided by Family of the Beneficiary |
| 3.02 | Trustee(s)' Powers to Deal With Environment Hazards | |
| | 3.02.01 | General |
| | 3.02.02 | Right to Refuse Contributions |
| | 3.02.03 | Exoneration of Trustee(s) |

ARTICLE IV       Spendthrift Provisions

4.01   Inalienability

ARTICLE V       Provisions Concerning Trustee(s)

| | | |
|---|---|---|
| 5.01 | Resignation | |
| 5.02 | Removal of Trustee(s) | |
| 5.03 | Death or Incapacity | |
| | 5.03.01 | Death or Incapacity |
| | 5.03.02 | "Incapacity" Defined |
| 5.04 | Successor Trustee(s) | |
| 5.05 | Accounting | |
| 5.06 | Limitations on Trustee(s) Powers | |
| 5.07 | Bond | |
| 5.08 | Additional Transfers of Property | |
| 5.09 | Compensation | |
| | 5.09.01 | Trustee Has Schedule of Compensation |
| | 5.09.02 | Trustee Has No Schedule of Compensation |
| | 5.09.03 | Per Court |
| 5.10 | Appointment of Special Trustee(s) | |
| 5.11 | Special Multiple Trustee Provisions | |
| | 5.11.01 | Delegation |
| | 5.11.02 | Establish Bank Accounts |
| | 5.11.03 | Establish Investment Accounts |
| | 5.11.04 | Approval Presumption |
| | 5.11.05 | Execution of Documents |
| | 5.11.06 | All Trustees Equal |
| 5.12 | Good Faith Actions Taken by Trustee(s) | |

ARTICLE VI       General Administrative Provisions

| | | |
|---|---|---|
| 6.01 | Irrevocability | |
| | 6.01.01 | Limitations on Settlor's and Beneficiary's Powers |

**CLARENCE THOMAS HARVEY QUALIFIED DISABILITY TRUST**

*Table of Contents - Page 3*

|   |   |   |   |
|---|---|---|---|
|   | 6.01.02 | Limited Power of Trustee(s) to Amend |   |
| 6.02 | Tax Provisions |   |   |
|   | 6.02.01 | Income Tax |   |
|   | 6.02.02 | Estate Tax |   |
|   | 6.02.03 | Tax Return Preparation |   |
|   | 6.02.04 | Tax Refunds |   |
|   |   | 6.02.04.01 | Signature Authority |
|   |   | 6.02.04.02 | Delivery to Trustee |
|   |   | 6.02.04.03 | Trustee's Obligation |
| 6.03 | Choice of Law |   |   |
| 6.04 | Definition of "Issue" |   |   |
| 6.05 | Protection Against Perpetuities Rule |   |   |
| 6.06 | Headings |   |   |
| 6.07 | Notice |   |   |
| 6.08 | Severability |   |   |
| 6.09 | Execution in Counterparts |   |   |

# CLARENCE THOMAS HARVEY
## Qualified Disability Trust

**THIS TRUST AGREEMENT** made and entered into this \_\_\_\_\_ day of _____, 20\_\_\_, by and between **the HONORABLE JUDGE FALLON** hereinafter referred to as "Settlor", and **RAYMOND HARVEY**, as Trustee, hereinafter referred to as "Trustee".

The Trust established under this Agreement shall be known as the **CLARENCE THOMAS HARVEY *QUALIFIED DISABILITY TRUST*** and is written pursuant to 42 U.S.C. §1396p, as amended on August 10, 1993, by the Omnibus Budget Reconciliation Act of 1993, Pub.L.No. 103-66 for the benefit of **CLARENCE THOMAS HARVEY,** a disabled person as defined in §1614(a)(3) of the Social Security Act, hereinafter referred to as "Beneficiary".

It is intended that the Beneficiary continue to qualify for Medicaid and this Trust be an irrevocable trust pursuant to §SI 01 120.200.,D.2 of the Social Security Administration Program Operation Manual Section (POMS), Health Care Financing Administration Transmittal No. 64, November 1994, Section 3259.7; Economic Self-Sufficiency Public Assistance Manual Section 1640.0576.08 and 1640.0576.09. This Trust is intended to qualify as a 42 U.S.C. §1396p(d)(4)(A) Trust for the benefit of a person with disabilities under the age of sixty-five (65) years old. If the trust beneficiary regains the ability to be employed and no longer qualifies as "disabled", this trust shall continue.

## ARTICLE I
## TRUST FUNDING

1.01    <u>Initial Trust Funding</u>: This Trust shall be funded with the assets described in "Schedule A" attached hereto and shall be held by the Trustee(s) according to the terms of this instrument for the benefit of the Beneficiary.

1.02    <u>Additions to Trust</u>:    Other property, real or personal, may be transferred to the Trustee(s) by anyone with the consent of the Trustee(s). All property held by the Trustee(s) shall constitute the "trust estate".

## ARTICLE II
## DISTRIBUTION OF INCOME AND PRINCIPAL

2.01    <u>Distributions During Life of Beneficiary</u>: During the lifetime of the beneficiary, the Trustee(s) may distribute for the benefit of the Beneficiary from the principal or income, or both, of this Trust, for the satisfaction of the Beneficiary's supplemental care, as the Trustee(s), in the Trustee(s)' sole and absolute discretion, may from time to time deem reasonable or advisable, subject to the strict limitations set out in this instrument. Any income of the Trust not so distributed shall be added annually to the principal.

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**                    Page 2

2.01.01        <u>Distribution Provisions</u>: In making distributions from this Trust, the Trustee(s),is authorized to consider, in the Trustee(s)' sole and absolute discretion, the reasonableness or advisability of making distributions in satisfaction of the Beneficiary's supplemental care. As used in this instrument, "supplemental care" refers to the requisites for maintaining the Beneficiary's good health, safety and welfare when, in the discretion of the Trustee(s), such requisites are not being provided by any governmental agency, office or department, non-profit organization, or are not otherwise being provided for by any other public or private source. While the Trustee(s) is authorized to consider these other sources, the Trustee(s) may also, in the exercise of the Trustee(s) sole and absolute discretion, disregard these other sources when making distributions for the benefit of the Beneficiary. Distributions may be made from the trust estate without securing prior Court approval.

2.01.02        <u>Intent Regarding Distribution</u>: It is the intention of the Settlor to create a supplemental and/or emergency fund for the benefit of the Beneficiary and not to displace or supplant public assistance or other sources of support which may otherwise be available to the Beneficiary. The Beneficiary may have supplemental care requisites which other assistance programs may not otherwise provide such as:
        (a)      medical, psychological, dental, opthalmological, or auditory care;
        (b)      psychological or other support services;
        ©)      recreation (hobbies; sports; activities);
        (d)      education;
        (e)      transportation, wheelchairs or other mobility devices (whether electric or manual), lifts, specialized transportation or communication devices, handicapped equipped van;
        (f)      specialized adapted housing;
        (g)      supplemental nursing or physical, occupational, speech,  or other therapy, care, rehabilitation, personal and similar care;
        (h)      funeral and burial expenses;
        (I)      liability for taxes incurred by the trust;
        (j)      travel and vacations;
        (k)      participation in hobbies, sports or other activities;
        (l)      items beyond necessary clothing, such as a coat which is "extra" but which is desirable because it is newer, more stylish, warmer, etc.
        (m)      cosmetic, extraordinary, experimental or elective medical or dental care, if not available through other third party sources ;
        (n)      visiting friends, companionship;
        (o)      exercise equipment or special medical equipment, if not available through other third party sources;
        (p)      equipment such as telephones, cable television, televisions, radios and other sound equipment, and cameras for private use by the individual;
        (q)      membership in clubs such as book clubs, health clubs, record clubs, video clubs;

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**        Page 3

®)      subscriptions to magazines and newspapers;

(s)      advocacy, including personal care consultant; services of a representative payee or conservator, if not available through other third party sources;

(t)      intervention or respite when the beneficiary is in crisis, if not available through other third party sources;

(u)      vocational rehabilitation or habilitation, if not available through other third party sources;

(v)      expend trust funds in connection with initiating or maintaining a guardianship of the person or property of **CLARENCE THOMAS HARVEY** including guardian fees, attorney fees, court costs and other expenses approved by the court.

The Trustee may also consider treatment that is considered experimental (i.e. hyperbaric chamber treatments) if after research and investigation the Trustee determines that the treatment may provide some benefit to the Beneficiary. The Trustee(s) is authorized to consider these and any other requisites of the Beneficiary when making distributions.

It is important to the Settlor that the Beneficiary maintain a level of human dignity and humane care. The Trustee(s) should bear this in mind when making distributions from the Trust while simultaneously considering that the Trust is not to be invaded by creditors, subjected to any liens or encumbrances, or administered in such a way as to cause public benefits not to be initiated or be terminated.

To the extent reasonable or advisable, the Trustee(s) may deplete the Trust corpus prior to the Beneficiary's death thereby giving preference to the interests of the Beneficiary while simultaneously considering the interests of the remainder beneficiary or beneficiaries. In considering the interests of the Beneficiary, the Trustee(s) is admonished to refrain from distributing cash directly to the Beneficiary, or property of the Trust to or on behalf of the Beneficiary which will then be retitled in the name of the Beneficiary. The Trustee(s) may hold title to all property comprising the Trust even when that property is distributed to the Beneficiary for the Beneficiary's use. The Trustee(s) may liquidate property of the Trust at anytime and such property need not be held in the name of the Beneficiary.

No part of the Trust shall be used to supplant or replace benefits due from any insurance carrier under any insurance policy covering the Beneficiary, or benefits from any governmental agency, office or department, non-profit organization, or any other public or private source.

Prior to the death of the Beneficiary, the Trustee(s) shall give special consideration to paying any outstanding expenses of administration related to the Trust, including reasonable attorneys' fees, and should further consider purchasing a reasonable burial plan to pay expenses relating to the funeral of the Beneficiary.

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**        Page 4

2.01.03      <u>Public Assistance Programs</u>: The Trustee(s) may, in the exercise of the Trustee(s)' best judgment and fiduciary duty, seek support and maintenance for the Beneficiary from all available public resources. The Trustee(s) shall take into consideration the applicable resource and income limitations of any public assistance program for which the Beneficiary is eligible. The Trustee(s) is hereby granted full and complete discretion to initiate rendering the Beneficiary eligible for any such program of public benefit and is hereby granted full and complete discretion to initiate either administrative or judicial proceedings, or both, whether original or appealing adverse decisions, for the purpose of determining eligibility. All costs relating thereto, including reasonable attorneys' fees, shall be a proper charge to the Trust. It is the intention of the Settlor that no part of the corpus of the Trust created herein shall be used to supplant or replace public assistance benefits of any county, state, the United States or any governmental agency which has a legal responsibility to persons with disabilities which are the same or similar to those which qualify the Beneficiary for public assistance eligibility; no part of the principal or undistributed income of the Trust shall be considered available to the Beneficiary.

In the event the Trustee(s) is required to release principal or income of the Trust to or on behalf of the Beneficiary to pay for the benefits or services which such public assistance is otherwise authorized to provide, were it not for the existence of this Trust, or in the event the Trustee(s) is requested to petition the court or any other administrative agency for the release of Trust principal or income for this purpose, the Trustee(s) is authorized to deny such request and is authorized in the Trustee(s)' discretion to take whatever administrative or judicial steps may be necessary to continue the public assistance program eligibility of the Beneficiary, including obtaining instructions from a court of competent jurisdiction ruling that the Trust corpus is not available for the Beneficiary for such eligibility purposes. Any expenses of the Trustee(s) in this regard, including reasonable attorneys' fees, shall be a proper charge to the Trust. No Trustee(s) shall be liable for any loss of Trust assets, except for any loss caused by the Trustee(s) bad faith, wanton conduct or negligence.

2.01.04      <u>Payment of In-Kind Support and Maintenance:</u>   Notwithstanding the foregoing provisions, if the Trustee, in the Trustee's sole and absolute discretion, determines that it is in the best interest of **CLARENCE THOMAS HARVEY** to provide in-kind support and maintenance (food and/or shelter) to **CLARENCE THOMAS HARVEY** from time to time, then the Trustee may do so as long as **CLARENCE THOMAS HARVEY**'s continued right to receive SSI, or Medicaid, as the case may be, is not jeopardized and **CLARENCE THOMAS HARVEY** continues to receive all benefits to which he is entitled, or the trustee determines that the benefit to **CLARENCE THOMAS HARVEY** from being temporarily disqualified for public assistance outweigh the benefits provided by public assistance.

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 5

2.01.05     <u>Annual Evaluation to Update Beneficiary's Needs and Assure Appropriate</u> <u>Distributions:</u> The Trustee(s) or its agent(s) shall arrange for an annual evaluation of **CLARENCE THOMAS HARVEY** addressed to the following topics:

    (a)     Physical and medical conditions;
    (b)     Personal care;
    ©)      Rehabilitation, education and training programs;
    (d)     Work opportunities and day programs
    (e)     Recreational leisure time and social needs;
    (f)     Appropriateness of existing program services;
    (g)     Laws and administrative practices relating to various governmental benefit programs, and private financial assistance available, since or unless **CLARENCE THOMAS HARVEY**, has a reasonable chance of earning sufficient income to be self supporting, it is essential that these benefits be secured;
    (h)     Legal rights, treatment in accordance with **CLARENCE THOMAS HARVEY**'s needs, payment of a fair wage for work performed, the right to vote and to marry.

The annual evaluation should be based on individual contacts with **CLARENCE THOMAS HARVEY**, the social worker (if any), the family and other individuals who are in regular contact with **CLARENCE THOMAS HARVEY**, including service providers. Information in the evaluation may be shared with any Guardian or designated health care surrogate who is or may be appointed for **CLARENCE THOMAS HARVEY**.

Regardless of whether the Trustee is qualified to render advice about the appropriateness of expenditures made to **CLARENCE THOMAS HARVEY** such that those expenditures do not disqualify **CLARENCE THOMAS HARVEY** for any government benefits which **CLARENCE THOMAS HARVEY** may otherwise be entitled, the Trustee may, if it so chooses, hire at the trust's expense a consultant who specializes in special needs trust administration and public benefit eligibility, and may rely without liability upon the recommendation of said consultant and be indemnified in connection with any decisions made on the basis of the recommendation.

2.02     <u>Distributions After Death of the Beneficiary:</u>

2.02.01     <u>Permissible Payments:</u> Pursuant to Social Security Administration Emergency Memorandum 02085, if the beneficiary is an SSI recipient, payment of permissible administrative expenses prior to the reimbursement to the state for Medicaid expenses paid during the beneficiary's life, shall include, but not be limited to, a) taxes due from the trust to the State or Federal governments because of the death of the beneficiary; (b) reasonable fees for administration of the trust estate such as an accounting of the trust to a court, completion and filing of documents, or other required actions associated with termination and wrapping up of the trust.

2.02.02    Prohibited Expenses and Payments:  The following expenses and payments are examples of some of the types not permitted after the death of the beneficiary, who is an SSI recipient, prior to reimbursement of the State for medical assistance:  a) taxes due from the estate of the beneficiary other than those arising from inclusion of the trust in the estate; b) inheritance taxes due for residual beneficiaries; c) payments of debts owed to third parties; d) funeral expenses; and e) payments to residual beneficiaries.

2.02.03    Reimbursements for Medical Assistance: Unless sooner terminated by exhaustion of corpus, any assets remaining in the Trust upon the death of the Beneficiary shall, after the payment of all reasonable fees (including attorney's fees and the Trustee(s)' fees) and expenses, first be used to reimburse the State of Florida for medical assistance paid on behalf of the Beneficiary under the Florida plan authorized by Title XIX of the Social Security Act, 42 U.S.C. §1396, et seq. ("Medicaid"). If the Beneficiary has resided in and received such medical assistance from more than one state, then each such state agency shall be entitled to reimbursement from the Trust. If the remainder of the Trust is not sufficient to completely reimburse all such states, then the states shall be reimbursed an amount of the remainder of the trust equal to their proportionate share of the total amount of all such benefits paid by all of such states on the Beneficiary's behalf. Assets remaining in the Trust after such reimbursement shall be distributed as set forth in Section 2.02.04 below. The Trustee(s) may conclusively rely upon the written statement of the state agency administering the Medicaid program as to the amount of medical assistance that has been paid on behalf of the Beneficiary. The Trustee(s), in its discretion, may challenge and require verified proof of any such amount of medical assistance the Beneficiary has already received.

2.02.04        Distribution of Remaining Trust Estate: At the death of the Beneficiary, after payment under Section 2.02.01 and 2.02.03 (repayment to State of Florida), the Trustee(s) shall terminate this Trust and distribute the remaining trust estate (including any accumulated income that is specifically referred to), as follows:

> (1)    the sum of $100.00 to Clarence Thomas Harvey's brother **RAYMOND HARVEY**;

> (2)    the balance to **RAYMOND HARVEY**. In the event **RAYMOND HARVEY** predeceased Clarence Thomas Harvey or, fails to survive him by thirty (30) days the residue shall be distributed to Clarence Thomas Harvey's son **STEVEN SNEED**. In the event **STEVEN SNEED** predeceases Clarence Thomas Harvey or, fails to survive him by thirty (30) days the residue shall be distributed to Clarence Thomas Harvey's brother **VINCENT HARVEY**.

2.02.05        Facility or Hold back of Payment: With regard to those beneficiaries specified in Section 2.02.02, above, if any one of these beneficiaries is under legal disability, or is, in the opinion of the Trustee(s), incapable of properly managing his or her financial affairs, or

is unable to administer distributions properly when distribution is to be made, then the Trustee(s) may, in the Trustee(s)' sole discretion:

1)      Make those distributions directly to the beneficiary, to a lawful guardian of the beneficiary, or to a custodian selected by the Trustee(s) for the beneficiary under a Uniform Transfers to Minors Act or similar applicable law, or

2)      May otherwise expend the amounts to be distributed for the benefit of the beneficiary in such manner as the Trustee(s) considers advisable, or

3)      May continue to hold the amount to be distributed in trust for the benefit of such beneficiary and pay or apply for the benefit of such beneficiary so much of the net income and principal of the trust as the Trustee(s), in the Trustee(s), sole discretion, deems proper and in the beneficiary's best interest after taking into consideration other sources of income and resources available to such beneficiary and known to the Trustee(s).

The Trustee(s) shall be fully protected by the receipt of such beneficiary, or person or entity whom any such distributions were made, for any and all such distributions made. Upon the death of such beneficiary before complete distribution of such beneficiary's share, the Trustee(s) shall distribute the remainder of such beneficiary's share, including any accrued and undistributed income, to the estate of such beneficiary.

As used in the Section, the term "lawful guardian" shall mean successively, in the order named, (I) the court appointed guardian or conservator of the estate of the beneficiary, (II) a person appointed as the beneficiary's attorney-in-fact under a duly executed and valid Durable Power of Attorney, (III) the spouse of the beneficiary, (IV) either parent of the beneficiary, or (V) the individual having personal custody of the beneficiary or conservator of the beneficiary's estate has been appointed.

2.02.06      Distribution and Reimbursement of Medical Assistance Upon Beneficiary No Longer Being Disabled: In the event that **CLARENCE THOMAS HARVEY** should no longer be determined "disabled" (as defined by the SSI program in §1614(a)(3) of the Social Security Act), the Trustee(s) shall have the discretion, after consulting with professional advisors familiar with public assistance eligibility and the beneficiary's medical/psychological condition, to maintain or terminate the trust. It is recommended that the trust continue. If the trust is terminated, the Trustee(s) shall follow the procedure set forth in Paragraphs 2.02.01 and 2.02.03 above for reimbursement for medical assistance before payment of administrative expenses and final distribution of the remaining trust principal and income to **CLARENCE THOMAS HARVEY**.

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**                Page 8

---

ARTICLE III
POWER OF TRUSTEE(S)

3.01    General Powers: The trustee(s) shall have all powers, authorities, and discretion (other than any that conflict with the purpose of this Trust) granted by common law, statute and under any rule of court. In addition, the Trustee(s) is expressly authorized and empowered in the Trustee(s)' sole and absolute discretion to exercise the powers set forth below.

> 3.01.01        Non-Income Producing Investment.  The Trustee(s) may invest in non-income producing assets and may invest in housing owned jointly or solely by the Trust.

> 3.01.02        Investment Authority.  The Trustee(s) may invest and reinvest in such stocks, bonds, or other property, real or personal, tangible or intangible, including the purchase or sale of commercial or private annuities, life estates, and remainder interests, mutual funds (including, but not limited to, those with respect to which the Trustee(s) may serve as an investment advisor, custodian, or in some other capacity and receive a fee for such service), government obligation, units or interests in any common fund operated by an Trustee(s) solely for the investment of funds in its care as a fiduciary, options on securities, uninsured money market funds, and cash items in all available forms of deposit, including but not limited to, bank demand deposits, time deposits and savings deposits., including all such forms of deposit at any bank operated by any Trustee(s), all as the Trustee(s) may consider advisable or proper, without being restricted as to the character of any investment of Trust funds.

> 3.01.03        Title to Property.  The Trustee(s) may take and hold title to any property, real or personal, and cause the same to be registered in its name as Trustee(s) hereunder, in its individual name or  in the name of a nominee without disclosing the trust, or in the case of securities to keep them unregistered so they will pass by delivery, and in addition, the Trustee(s) shall not disclose the name, address or share position of the beneficial owners of registered securities held by the Trustee(s) or its nominees to issuing corporations that request the information; and to either amortize premiums or accumulate discounts, or not, on any securities, whether original or otherwise.

> 3.01.04        Distributions of Income and Principal.   The Trustee(s) may make distributions, divisions and allocations of either principal or income, or both, or an undivided interest therein, either in kind or in money or part in each, and the judgment and any determination of the Trustee(s) in connection therewith, including value assigned to various assets and decisions to make non-pro rata distributions in kind, shall be binding and conclusive on all persons interested therein. The Trustee(s) shall have sole discretion to accumulate the net income or, to pay it as the Trustee(s) deem(s) appropriate.

> 3.01.05        Retention Of Under-Productive Property.  The Trustee(s) may retain any property (whether or not income producing) that  may be transferred to the Trust until such

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 9

times as the Trustee(s) may deem it desirable to dispose of it. However, the Trustee(s) may not distribute income producing property to the Beneficiary.

3.01.06      Borrow Money.  The Trustee(s) may borrow money, with the payment of no interest or such interest as is deemed appropriate by the Trustee(s), for any purpose connected with the protection, preservation, or improvement of the Trust, or the enhancement of the benefits to the beneficiaries hereof, and may create one or more mortgages on, or pledges of, any party of all of the property held by the Trustee(s), whenever the Trustee(s) shall deem the same advisable.

3.01.07      Compromise of Claims.  The Trustee(s) may pay, compromise, or adjust any claims of the Trust against others or of others against the Trust as the Trustee(s) shall deem advisable.

3.01.08      Execution of Documents.  The Trustee(s) may excuse, acknowledge, and deliver any and all instruments in writing that the Trustee(s) may deem advisable to carry out any of the foregoing powers. No party to any such instrument in writing signed by the Trustee(s) shall be bound to see the application by the Trustee(s) of any property paid or delivered pursuant to the terms of such instrument.

3.01.09      Hiring of Professionals.   The Trustee(s) may engage the services of accountants, attorneys or other advisors deemed necessary by the Trustee(s), and pay their reasonable fees and expenses from the trust estate.

3.01.10      On-Going Professional Services.  The Trustee(s) may, in its sole and absolute discretion, from time to time spend income and/or principal of this Trust to retain or contract for the services of other persons or organizations that the Trustee(s) deems advisable to protect the integrity of this Trust or provide assistance by acting as an advocate for the Beneficiary throughout the Beneficiary's life. In addition, the Trustee(s) is authorized to retain attorneys, accountants or others to assist with the Beneficiary's and the Trust's financial and legal matters. It is the desire of the Settlor that there be a friend, advocate and protector of the social and legal rights of the Beneficiary. The reasonable cost of such consultations shall be paid by the Trustee(s) from the trust estate.

3.01.11      Reacquisition Of Trust Corpus.  The Trustee(s) shall, at the direction of the Grantor, permit the Grantor to reacquire the Trust corpus by substituting other property of equal value.

3.01.12      Acquisition and Maintenance of Real Estate and Automobile.

3.01.12.01      Real Estate:  The Trustee is authorized to pay out the income or principal of this trust and any taxes, insurance, and maintenance expenses as necessary to keep residential or replacement property in suitable repair, and to collect

rent from other occupants of the property, as the Trustee deems proper. These powers may be exercised for the benefit of the beneficiary, even if **CLARENCE THOMAS HARVEY** is residing with a family member who may also be serving as a co-trustee.

If any residential real property is allocated to the trust for **CLARENCE THOMAS HARVEY**, I intend that **CLARENCE THOMAS HARVEY** be able to live in the residential real property allocated to **CLARENCE THOMAS HARVEY's** trust without a loss of **CLARENCE THOMAS HARVEY's** public assistance benefits.   Accordingly, the Trustee shall manage the trust for **CLARENCE THOMAS HARVEY** in a manner that will allow **CLARENCE THOMAS HARVEY** to reside in this residential property without causing a loss of **CLARENCE THOMAS HARVEY's** public assistance benefits of any city, county, state, federal or other governmental agency which has a legal responsibility to serve persons with disabilities which are the same or similar to **CLARENCE THOMAS HARVEY's** impairments, but I recognize that the decisions made by the Trustees may cause a reduction in  the level of such benefits.

The Trustee may also expend such amounts as the Trustee deems necessary for **CLARENCE THOMAS HARVEY's** housing or residential accommodations, but only such amounts as may be supplementary of **CLARENCE THOMAS HARVEY's** benefits under SSI or other government programs.   Because of **CLARENCE THOMAS HARVEY's** special needs, the Trustee, in the Trustee's discretion, may arrange for **CLARENCE THOMAS HARVEY** to live in a residential facility where board and care are provided to the residents, or, if the Trustee deems it appropriate, the Trustee may arrange for **CLARENCE THOMAS HARVEY** to reside in a house or apartment (for example, by purchasing a condominium using the funds of **CLARENCE THOMAS HARVEY's** Trust) and also provide for full-time or part-time supervisory personnel and other care providers to assist **CLARENCE THOMAS HARVEY** with **CLARENCE THOMAS HARVEY's**  daily living needs to the extent **that CLARENCE THOMAS HARVEY**'s services are not funded by public benefit programs.

The Trustee shall have authority to own up to a fifty-percent (50%) share in a residential real property, with the Beneficiary to own the balance of the interest in said property if the Trustee, in its sole discretion determines that such an arrangement is in the best interest of **CLARENCE THOMAS HARVEY**.   The Trustee may determine that it is in **CLARENCE THOMAS HARVEY's** best interests to use trust assets to pay for the full value of residential real estate even if the Beneficiary's spouse will be a joint owner.   The Trustee shall pay the same percentage share of property taxes, insurance, and expenses of repair and maintenance as the Trust's percentage of shared ownership of said property.   The Trustee may, after consulting

with the beneficiary or his legal guardian or representative as well as legal counsel, determine that it is in the beneficiary's best interests for title to residential real property to be in the name of the beneficiary's guardianship. In the event that title to residential real estate is in the name of the beneficiary or, in the name of the beneficiary's guardianship the Trustee has authority to pay the property taxes, insurance and expenses of repair and maintenance of that property.

3.01.12.02      Automobile:  If an automobile is allocated to this Trust pursuant to Paragraph 2.01.02 of ARTICLE II, then that automobile should be made available to the person or persons hired to assist **CLARENCE THOMAS HARVEY**, to be used for **CLARENCE THOMAS HARVEY**'s transportation; but if no such automobile is allocated to this trust, the Trustee is specifically empowered to purchase an automobile (which should be for example the same caliber as a Ford Explorer ) for that purpose and the Trustee shall purchase insurance (property, liability, umbrella) and pay for taxes, title, maintenance with respect to the automobile.  Title to the automobile does not necessarily have to be in the trust, and the Trustee has discretion whether to record a lien on the automobile. Any such automobile may be sold from time to time, and another automobile may, at the Trustee's discretion, be purchased for those purposes.  I specifically give the Trustee all necessary powers to make whatever arrangements the Trustee deems suitable for **CLARENCE THOMAS HARVEY**'s residence, care and supervision, and to pay for all such needs from income or principal of **CLARENCE THOMAS HARVEY**'s Trust, subject to the Special Needs provisions of this Trust.

3.01.13      Enforceability of Loans.  The Trustee is authorized to make loans enforceable under state law to or for the beneficiary's benefit.

3.01.14      Acquisition and Maintenance of Insurance (Health & Life).  The Trustee is authorized to pay premiums to provide health insurance for the primary beneficiary; to pay premiums on life insurance policies that may be owned or acquired by the trust.  If the Trustee is also the insured of any life insurance policy owned by the trust, then the Trustee may exercise all rights and had incidents of ownership with respect to such policy only in a fiduciary capacity, including the power to change the beneficiary, to surrender cancel the policy, to assign the policy, to revoke any assignment to pledge a policy for a loan, or to obtain a loan against the surrender value policy from the insurer.

3.01.15      Compensation For Services Provided by Family of the Beneficiary  In the event a member of **CLARENCE THOMAS HARVEY**'s family or household shall provide services to **CLARENCE THOMAS HARVEY** (i.e. custodial, attendant care, caretaker), they shall not be entitled to reasonable compensation.

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 12

3.02     <u>Trustee(s) Powers to Deal With Environmental Hazards</u>:

    3.02.01        <u>General</u>: When dealing with any real property held by this Trust, the Trustee(s) shall have the power to use and expend the trust income and principal to (I) conduct environment assessments, audits and site monitoring to determine compliance with any environment law or regulation thereunder; (II) take all appropriate remedial action to contain, clean up or remove any environmental hazard including a spill, release, discharge or contamination, either on its own accord or in response to an actual or threatened violation of any environmental law or regulation thereunder;(III) institute legal proceedings by a local, state or United States agency concerned with environmental compliance, or by a private litigant; (IV) comply with any local, state or United States agency order or court order directing an assessment, abatement or cleanup of any environmental hazards; and (V) employ agents, consultants and legal counsel to assist to perform the above undertakings or actions. Any expenses incurred by the Trustee(s) under the Section may be charged against income or principal as the Trustee(s) shall determine. Any such expenditures may only be made for real property that is being held by the Trustee(s) according to the terms of this Trust. The Trustee(s) shall give the beneficiary (including the Beneficiary) reasonable notice of any purported claims made as a result of environmental pollution.

    3.02.02        <u>Right to Refuse Contributions</u>: The Trustee(s) shall have the power to receive any property, real or personal, to be added to the Trust from any person by lifetime or testamentary transfer or otherwise; provided, however, that the Trustee(s), in its sole discretion, may refuse to accept any such property or may require, as a prerequisite to accepting property, that the donating party provide evidence satisfactory to the Trustee(s) that the property (I) is not being used and (II) has never been used for any activities directly or indirectly involving the generation, use, treatment, storage, disposal, release or discharge of any hazardous toxic materials or substances.

    3.02.03        <u>Exoneration of Trustee(s)</u>:  No Trustee(s) shall be liable for any loss or depreciation in value sustained by the Trust as a result of the Trustee(s) retaining any property upon which there is later discovered to be hazardous materials or substances requiring remedial action pursuant to any United States, state or local environmental law, unless the Trustee(s) contributed to the loss of depreciation in value through willful default, willful misconduct or gross negligence.

ARTICLE IV
<u>SPENDTHRIFT PROVISIONS</u>

4.01     <u>Inalienability</u>:  This is a purely discretionary, non-support, spendthrift trust. No beneficiary (including the Beneficiary), nor any creditor of any beneficiary, shall have any right to anticipate, sell assign, mortgage, pledge or otherwise dispose of or encumber all or any part of the trust estate, whether principal or income. This trust and its corpus are to be used only for supplemental care of the beneficiary during the Beneficiary's lifetime. No part of the trust estate, including income, shall

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 13

be liable for the debts or obligations of the Beneficiary or any other beneficiary, even if such debts are a result of providing necessities, food clothing, shelter, support or maintenance to the Beneficiary or any beneficiary, nor shall any part of the trust estate, whether principal or income, be subject to attachment, garnishment, execution, creditor's bill or other legal or equitable process, whether during the Beneficiary's lifetime or after the Beneficiary's death.

ARTICLE V
PROVISION CONCERNING TRUSTEE(S)

5.01    Resignation:  Any Trustee(s) may resign by giving thirty (30) days written notice to any other Trustee then serving and a current beneficiary. If a beneficiary (including the beneficiary) is legally incapacitated, the notice shall be delivered to that beneficiary's legal representative, if any, otherwise to such beneficiary's natural guardian, otherwise to the beneficiary's lawful guardian, as defined above; provided, however, that if no other Trustee(s) shall then be serving, such resignation shall not be effective until one is appointed.

5.02    Removal of Trustee(s):  The Beneficiary may for cause remove the Trustee from serving for cause by giving at lease thirty (30) days advance written notice to the Trustee and obtaining written acceptance by the Successor Trustee.  Examples of grounds for removal for cause may include: failure to comply with the Prudent Investor Rule, improper investments, conflict of interest, lack of rapport with the beneficiary.  No corporate Trustee shall be removed until and unless there is a Successor corporate Co-Trustee who has accepted the office in writing and then administering trust assets with a combined capital and surplus in excess of twenty-five million dollars ($25,000,000.00) according to its last published statement and having assets under trust administration of at least one hundred million dollars ($100,000,000.00). If **CLARENCE THOMAS HARVEY** is incapacitated or otherwise not able or willing to take such action, the Beneficiary's attorney-in-fact appointed by the Beneficiary's valid Durable Power of Attorney, or the Beneficiary's legal representative, or court appointed guardian, may petition any court of competent jurisdiction for removal of any Trustee(s) but in such case the decision on whether to remove and the power to remove any Trustee(s) shall be in the exclusive discretion and control of the court. No contingent beneficiary, or any government or private agency, may petition the court for the removal of any Trustee(s) while the named beneficiary of the Trust is still living. After the death of the guardian of any such beneficiary who is then a minor or legally incapacitated, or the death of the attorney-in-fact of any such beneficiary appointed by a valid Durable Power of Attorney, the Beneficiary's legal representative or court appointed guardian may for good cause remove any Trustee(s) without liability to any present or future beneficiary hereunder, by delivering written notice to the then current Trustee(s) not less than thirty (30) days prior to the effective date of such removal. A Successor Trustee(s) shall be appointed according to the terms of Section 5.04, below.

5.03    Death or Incapacity:

      5.03.01        Upon the death or incapacity of a Trustee, such Trustee shall automatically and immediately cease to serve as a Trustee.

5.03.02        "Incapacity" as used herein shall mean when a person's ability to receive and evaluate information effectively or to communicate decisions, or both, is impaired to an extent that the person cannot exercise a reasonable level of care with regard to the duties of Trustee. The certification of such by the person's regularly attending physician, if any, otherwise by any licensed physician, shall be binding regarding the Trustee's incapacity for the purposes of this instrument. In addition, a person shall be deemed to be incapacitated if the person has disappeared or cannot freely communicate for a period of ninety (90) days.

5.04    Successor Trustee(s):  If the original Trustee is unable to serve, the First Successor Trustee shall be **STEVEN SNEED**.  The Second Successor Trustee shall be **VINCENT HARVEY**. Any Trustee(s) shall have the power to appoint as Successor Trustee(s) any adult person (over age 30) or any financial institution having trust powers and having total equity capital of not less than Ten Million Dollars ($10,000,000.00), successively, or as Co-Trustee(s).   If the original Trustee is removed for cause, a court of competent jurisdiction (including the Court that has jurisdiction over the guardianship proceeding for the Beneficiary) shall have the power to appoint a Successor Trustee.

        Under no circumstances shall **CLARENCE THOMAS HARVEY** serve as Trustee.  If the last remaining Trustee of this Trust is not living, is incapacitated, or is otherwise unable or unwilling to so appoint a successor Trustee(s), then the Beneficiary, if living, or a majority in interest of the beneficiaries to whom income may then be paid hereunder (or the attorney-in-fact under a duly executed and valid Durable Power of Attorney, or the court appointed conservator or guardian, if any, for the Beneficiary or any other income beneficiary) shall have such power to appoint any financial institution meeting the above criteria as Successor Trustee(s). In the event of the failure, refusal or inability to appoint a Successor Trustee(s) according to the foregoing provisions within thirty (30) days following the resignation or other failure of a Trustee(s) to so serve, any beneficiary of the Trust, or any other interested person, may at the expense of the trust, secure the appointment of a Successor Trustee(s) by petition to a court of competent jurisdiction.  The court shall consider any recommendations as to qualified candidates made by the prior or acting  Trustee(s) and shall appoint a Trustee that it determines will be in the best interests of **CLARENCE THOMAS HARVEY**.

        If any Corporate Trustee(s) so appointed shall during its term as Trustee(s) transfer its trust business to any other corporation or national banking association authorized to do trust business, whether such transfer shall arise through merger, consolidation, transfer of assets, conversions or otherwise, such transferee corporation of association and its successors shall ipso facto and without further transfer, substitution, act or deed on the part of any of the parties hereto, become subrogated and succeed as Trustee(s) hereunder, vested with all the trust estate, rights, obligations, power discretion, immunities, privileges and compensations herein conferred upon the original Trustee(s).

        Successor Trustee(s) hereunder shall have all of the rights, powers, discretions, duties, responsibilities, and limitations granted to or imposed upon the original Trustee(s). No fiduciary

need examine the accounts, records, and acts of any previous fiduciary or any allocation of the trust estate nor be responsible for any act or omission to act on the part of any previous fiduciary.

5.05    Accounting:  The Trustee(s) shall be excused from filing any inventory or account with any court, and all statutory requirements concerning such are hereby waived. However, the Trustee(s) shall keep accurate books of account of all transactions pertaining to the trust estate, showing all disbursement, charges for the Trustee(s)' services, receipts of principal and income, and all investments and changes of investments. The Trustee(s) shall render an account  at least annually, and shall at the time of death, resignation, or removal of any Trustee(s), and at the time of the beneficiary's death or cessation of disability, or at any other time the Trustee chooses, render an intermediate or final account to those persons then having a right (whether discretionary or absolute) to the distribution of income or principal who are then of sound mind and over the age of eighteen (18) years. The Trustee(s) shall provide the beneficiary's lawful guardian (as defined in Section 2.02.04, above), with an annual or intermediate account if the beneficiary is incapacitated. The failure to object in writing within 90 days of receipt of such account shall constitute a binding and conclusive acceptance of such account by and on behalf of all persons then having any interest in this Trust (now or in the future), and shall be a complete discharge to the Trustee(s) and all successor Trustee(s) with respect to all matters contained in the account to the same extent as though the account had been judicially settled and allowed by decree or judgment of a court of competent jurisdiction in an action or proceeding in which all persons ever having, acquired, or claiming any interest were duly made parties and were duly represented. Despite the above provisions, any such discharge shall not release the Trustee(s) from liability for breach of fiduciary duty, misrepresentation or fraud.

5.06    Limitations on Trustee(s) Powers: No power enumerated in this instrument shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of the principal or income of this trust for less than adequate and full consideration in money or monies worth. In addition, and not withstanding any of the powers conferred upon the Trustee(s), no individual acting as Trustee(s) hereunder shall exercise or join in the exercise of discretionary powers over the investment or distribution of income or principal, or the termination of any trust, that may in anyway (I) benefit such individual, or (ii) discharge such individual's legal obligation to support any beneficiary, including the Beneficiary.

5.07    Bond: Any Trustee(s) shall at all times serve as such without bond, unless otherwise ordered by a court of competent jurisdiction.

5.08    Additional Transfers of Property: Any additional transfer of property to this Trust shall be absolute; provided, however, that the duties of the Trustee(s) shall not be increased by virtue of any such transfer without the consent of the Trustee(s).

5.09    Compensation: The Trustee(s) shall be entitled to reimbursement of all reasonable expenses incurred by the Trustee(s) on behalf of the Trust. In addition, the Trustee(s) shall be paid compensation of $10.00 per hour for trustee services.  The Trustee is required to maintain a detailed

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 16

---

time log of services rendered and shall provide that log to the beneficiary each month and obtain the beneficiary's consent to payment before payment is issued.

5.10     Appointment of Special Trustee(s) :   The Trustee(s) shall have the authority to appoint a person or qualified corporation at any time to act a Special Trustee(s) for the administration or distribution of the trust estate with respect to which the Trustee(s) (herein "primary Trustee (s)') shall make the determination, in its discretion, that it is not eligible to act or cannot administer in a practicable manner. The primary Trustee(s) may at any time revoke such appointment. So long as any such appointment is in effect, any power or authority hereunder that would be exercisable by the primary Trustee(s) with respect to the assets to be administered or the distributions to be made by the special Trustee(s), if the primary Trustee(s) was subject to no restriction or limitation with respect to the administration of such items, may be exercised by the Special Trustee(s) with the same force and effect as if the primary Trustee(s) had itself taken such action in the absence of any such restriction or limitation. Unless required by the primary Trustee(s), the Special Trustee(s) shall act without bond or security and shall not account to any court. The Special Trustee(s) may receive and retain customary and reasonable compensation for services in such capacity in addition to the compensation to which the primary Trustee(s) is entitled under the Agreement.

5.11     Special Multiple Trustee Provisions:   While more than one (1) Trustee is acting, the following provisions shall apply where the context allows:

  5.11.01      With respect to any matter as to which the Trustee(s) have joint powers, a Trustee from time to time may delegate any or all of that Trustee's rights, powers, duties and discretion as Trustee to the other Trustee(s) with the consent of the latter;

  5.11.02      The Trustee(s) may establish bank accounts and may authorize that checks or drafts may be drawn on, or withdrawal made from, any such accounts on the individual signature of any Trustee;

  5.11.03      The Trustee(s) may establish securities accounts of other investments accounts and may authorized that checks or drafts may be drawn on, withdrawal made from, or other transactions may be conducted (including, but not limited to, buying, selling or otherwise trading in securities) on any such account on the individual signature of any Trustee;

  5.11.04      A Trustee shall be presumed to have approved a proposed act or decision to refrain from acting if that Trustee fails to indicate approval or disapproval thereof within fifteen (15) days after a written request to do so, and a Trustee shall not be required to continue to make a proposal that has been disapproved on at least two occasions if that Trustee has informed the disapproving Trustee(s) that continued disapproval will be assumed until notice to the contrary has been received;

5.11.05     The Trustee(s) may execute documents by jointly signing one document or separately signing concurrent counterpart documents; and

5.11.06     Each Trustee of the trust shall have an equal say in all matters pertaining to the trust estate, and decisions of the majority shall control; provided, however, that any Trustee, including any corporate Trustee, may limit its liability for any majority decision it disagrees with by serving a written statement on the other Trustee(s) stating the reasons it disagrees with the decision of the majority and that such disagreeing Trustee shall not be liable or otherwise responsible for the effects of the decision of the majority that it so disagrees with.

5.12   Good Faith Actions Taken by Trustee: The Trustee shall be held harmless from any liability, so long as its actions were taken after appropriate due diligence in obtaining necessary facts and information prior to making such decision; and further, that the information given to the Trustee, upon which decisions are made and actions taken, are from sources that could be relied upon in the normal course of business. It is intended that the Trustee act freely under any and all powers and authority granted in the trust agreement as to all matters concerning the trust estate, after forming a reasonable judgement based upon all of the circumstances of any particular situation as to the wisest and best course of action to pursue in the interest of the Trust and the beneficiaries.

ARTICLE VI
GENERAL ADMINISTRATIVE PROVISIONS

6.01   Irrevocability:

6.01.01     Limitations on Settlor's and Beneficiary's Powers Neither the Settlor nor the Beneficiary shall have any right or power, whether alone or in conjunction with others, in whatever capacity (I) to alter, amend, revoke, or terminate this Trust or any of the terms of this Agreement, in whole or in part; (ii) to designate the persons who shall posses or enjoy the Trust property, and the income therefrom; or (iii) to exercise any of the incidents of ownership in any property transferred to the Trust. Despite the above, however, the Beneficiary shall have the power to reacquire trust corpus by substituting other property or equal value.

6.01.02     Limited Power of Trustee(s) to Amend: Notwithstanding the provisions of Section 6.01.01, above, the Trustee(s) shall have the power, by an instrument in writing filed with the Trust records, to alter or amend any provision of this Trust (I) to facilitate the administration of this Trust; and (ii) to accommodate changes in tax or any other laws relating to or affecting this Trust; and (iii) to make changes that are recommended, or required, to allow the Beneficiary to qualify, or continue to qualify, for public benefits and services of any kind in any jurisdiction, including but not limited to benefits under the Medical Assistance Program, 42 U.S.C. §1396 and its successors. During the year prior to the Beneficiary's sixty-fifth (65th) birthday, the Trustee(s) shall determine whether it would

be appropriate to amend this Trust according to 42 U.S.C. §1396p(c)(2)(B)(iv) and, if so, to make appropriate amendments.

The decision to amend this Trust or not shall be made by the Trustee(s) in its sole and absolute discretion, either on its own motion or on the motion of any beneficiary (or such beneficiary's legal representative), including the Beneficiary, who is then presently eligible to receive distribution for the trust; provided, however, that no contingent beneficiary not presently vested in the trust estate, nor any government or private agency, shall have standing to petition the Trustee(s) to alter or amend this Trust. To the extent possible, amendments should conform with the purposes of this Trust and with any regulations that are approved by any governing body or agency relating to 42 U.S.C. §1396p, or related statutes, including state statutes that are consistent with the provisions and purposes of the Omnibus Budget Reconciliation Act of 1993 and amendments to such Act. The Trustee(s) shall give notice of any proposed action to alter or amend this Trust to the State of Florida Department of Children and Families, the Agency for Health Care Administration, and the Social Security Administration.

6.02    Tax Provisions:

6.02.01          Income Tax: Upon the receipt of a tax return prepared as described in Section 6.02.03, below, the Trustee(s) shall pay any income tax liability of the Beneficiary which results from income received by the Trustee(s) but properly reported on the income tax return of the Beneficiary. The funds used to pay any such income tax liability shall be paid directly to the appropriate tax authority and shall not be available to the Beneficiary. The Beneficiary shall not have any right to or interest in any such fund paid by the Trustee(s). Any such funds are not a resource of the Beneficiary and should not be treated as a distribution of income for purposes of qualification for any state or United States benefit program.

6.02.02          Estate Tax: The Trustee(s) shall pay any United States or state estate or inheritance tax liability which results form the trust estate being included in the taxable estate of the Beneficiary. The funds used to pay any such tax liability shall be paid directly to the appropriate tax authority.

6.02.03          Tax Return Preparation: In determining the amount the Trustee(s) shall pay towards such taxes, the Trustee(s) may rely upon any United States, state or local tax return prepared on behalf of the Beneficiary by a professional tax return preparer. In addition, the Trustee(s) is authorized, in its sole discretion, to retain and/or compensate any tax professional retained by or on behalf of the Beneficiary to prepare the trust tax returns, Beneficiary's personal tax returns or the Beneficiary's estate tax returns.

6.02.04          Tax Refunds: In the event of a tax refund, any amount refunded shall be paid directly to the Trustee(s) to the extent such refund is attributable to amounts previously paid by the Trustee(s). For purposes of determining whether an amount is attributable to such

prior payments, any refund (including interest thereon) shall be attributed to amounts previously paid by the Trustee(s) to the extent the Trustee(s) made any tax payment for the relevant tax year which has not been previously refunded. For purposes of determining whether an amount previously paid had been previously refunded, any interest included as part of a refund shall not be used to offset a previous payment by the Trustee(s).

> 6.02.04.01     The Beneficiary or the Beneficiary's legal representative (including an attorney-in-fact appointed by a valid Durable Power of Attorney), if any, otherwise the Beneficiary's natural guardian, otherwise the Beneficiary's lawful guardian, as defined above, shall execute any letters, powers or attorney or other documents required or requested by the taxing authority in order to allow payment of any refund to the Trustee(s).

> 6.02.04.02     In the event that any tax refund which is attributable in whole or part to a prior payment by the Trustee(s) is paid directly to the Beneficiary or anyone else on the Beneficiary's behalf, the recipient of such refund or part thereof shall have no interest in or right to such refund or part thereof and shall hold the amount which is attributable to a prior payment by the Trustee(s) as an agent of and for the Trustee(s) and shall immediately turn over such amount to the Trustee(s).

> 6.02.04.03     Notwithstanding the foregoing provisions of this Section 6.02.04, the Trustee(s) shall have no obligation to take any action with respect to any tax refund on behalf of the Beneficiary, and the Trustee(s) shall not be liable or accountable to the Beneficiary or the Beneficiary's representative, or any other beneficiary, for any action or inaction concerning any such tax refund. In addition, the Trustee(s) may require reimbursement from the trust estate for all expenses, as well as a special fee for extraordinary services, or, if the trust estate is inadequate, indemnification to the Trustee(s)' satisfaction from the Beneficiary or the Beneficiary's representative, or any other beneficiary, for any action taken, or as a result of any inaction, concerning any such tax refund.

6.03     Choice of Law: This Trust is to be governed, construed, and administered according to the laws of the State of Florida.

6.04     Definition of "Issue": The "issue" of a person means all his or her lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definition of parent and child according to the applicable law of the State of Florida at any relevant time.

6.05     Protection Against Perpetuities Rule: Any trust created hereunder shall in any event terminate no later than twenty one (21) years after the death of the last survivor of the group composed of the Beneficiary's parents and grandparents, the issue of the Beneficiary's parents and grandparents, and the Beneficiary's heirs at law who are living on the date of the execution of this

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**        Page 20

Trust. Upon such termination, the property held in trust shall be discharged of any trust, and shall immediately vest in and be distributed to the persons then entitled to the income in the proportion in which they are beneficiaries of the income, and for this purpose only it shall be presumed that any person then entitled to receive any discretionary payments from the income or principal of the Trust is entitled to receive the full income, and that any class of persons so entitled is entitled to receive all such property, to be divided among them, on a per stirpes basis.

6.06    Headings: Headings of articles and sections are inserted for convenience and reference only and they do not constitute a part of this instrument.

6.07    Notice:  Any notice required to be given by the terms of this instrument shall be in writing, designating the proper party at his or her last known address, and mailed United States Mail, postage prepaid, return receipt requested.

6.08    Severability:  Should any provision of this instrument be judicially declared invalid, unenforceable or void, such decision shall not have the effect of invalidating or voiding the remainder of this instrument, but such provision shall be deemed to have been stricken from this instrument, and the remainder shall have the same force and effect as if such part or parts had never been included herein.  Should any provision of this trust disqualify    **CLARENCE THOMAS HARVEY** for government assistance, that provision may be voided to avoid such disqualification.

6.09    Execution in Counterparts:  This document may be executed in any number of counterpart signature pages, all of which together will constitute the entire, original document.

        IN WITNESS WHEREOF, I have set my hand and affixed my seal to this Qualified Disability Trust, at _____ County, Florida this _____ day of_____, 20__.


                                    _____
                                    Judge Fallon, Settlor

        The foregoing agreement, consisting of _____ typewritten pages, including schedule "A", was signed and declared by the Court, to be created as the CLARENCE THOMAS HARVEY Qualified Disability Trust Agreement in our presence, and we, at the request of the Court, and in their presence, and in the presence of each other, have hereunto subscribed our names as witnesses, this _____ day of _____, 20____ in _____ County, Louisiana.


                                    _____
                                    Witness


                                    _____
                                    Witness

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 21

STATE OF LOUISIANA          )
                            )     ss.:
COUNTY OF _____    )

I **Judge Fallon** , declare to the officer taking my acknowledgment of this instrument, and to the subscribing witnesses, that I signed this instrument as the ***CLARENCE THOMAS HARVEY Qualified Disability Trust***.

_____
Judge Fallon, Settlor

We, _____ and _____the witnesses, respectively, whose names are signed to the attached of foregoing instrument, having been sworn, declared to the undersigned officer that the Settlor in the presence of witnesses, signed this trust agreement and that they signed, and that each of the witnesses, in the presence of the Settlor and in the presence of each other, signed the trust as a witness.

_____
Witness

_____
Witness

Acknowledged and subscribed before me by the Grantor(s),   **Judge Fallon**, _____ who is personally known to me or ___ who has produced _____ as identification;

and sworn to and subscribed before me by the witnesses, _____ who is personally known to me or ___ who has produced_____ as identification;

and _____ who is personally known to me or ___ who has produced ____ _____ as identification, and subscribed by me in the presence of the Grantor(s) and the subscribing witnesses, all on the _____ day of _____, 20___.

_____
Notary Public, State of _____

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 22

---

## ACCEPTANCE BY TRUSTEE

The undersigned hereby accepts the trust imposed by the foregoing trust agreement and agrees to serve as Trustee upon the terms and conditions therein set forth.

Date _____          _____
                                      **RAYMOND HARVEY**, Trustee

Qualified Disability Trust for the Benefit of **CLARENCE THOMAS HARVEY**          Page 23

---

# Qualified Disability Trust
## Schedule A

      This schedule is attached to and incorporated in the   ***CLARENCE THOMAS HARVEY QUALIFIED DISABILITY TRUST*** agreement dated _____ day of _____, 20___, by and between **Judge Fallon** , as Settlor,  and **RAYMOND HARVEY, as Trustee.** The following property was delivered to the Trustee by **CLARENCE THOMAS HARVEY**:

      **<u>DATE OF DELIVERY</u>**          **<u>PROPERTY DELIVERED TO TRUSTEE</u>**

F:\CLIENTS\ClientFiles-2009\090011\QDT