UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX®                                   MDL Docket No. 1657

PRODUCTS LIABILITY LITIGATION          SECTION L

-----------------------------------------------------------------

Judge Eldon E. Fallon
Magistrate Judge Knowles

-----------------------------------------------------------------

THIS DOCUMENT RELATES TO:

**PLAINTIFFS LISTED IN EXHIBIT A TO**
**MERCK "THIRD" MOTION TO DISMISS:**

| | |
|---|---|
| David Agard | 2:05-cv-01089-EEF-DEK |
| Scott Berthel | 2:05-cv-06221-EEF-DEK |
| Richard Core | 2:05-cv-02583-EEF-DEK |
| Marjorie Curtis | 2:06-cv-02708-EEF-DEK |
| James Demoski | 2:05-cv-01089-EEF-DEK |
| Kristine Hia | 2:06-cv-02708-EEF-DEK |
| Maurice Hoyt | 2:06-cv-02708-EEF-DEK |
| Mary Kurtz | 2:06-cv-05779-EEF-DEK |
| Timothy Mack | 2:05-cv-01088-EEF-DEK |
| Ann Mannino | 2:05-cv-01091-EEF-DEK |
| Viola Santacrose | 2:05-cv-01090-EEF-DEK |
| Frank Spencer | 2:08-cv-03220-EEF-DEK |

--------------------------------------------------------------------------------

**PLAINTIFFS' OPPOSITION TO ORDER TO SHOW CAUSE**
**WHY THEIR CASES SHOULD NOT BE DISMISSED WITH**
**PREJUDICE PURSUANT TO FED.R.CIV.PR. 41(b)**

**INTRODUCTION**

Defendant Merck & Co., Inc. ("Merck"), moves by Order to Show Cause for involuntary dismissal with prejudice of the cases of the above-captioned plaintiffs under Federal Rule of Civil Procedure Rule 41(b) for alleged failure to meet discovery requirements set forth in certain pre-trial orders of this Court.   The apparent grounds for such motion are stated in brief entries in columns on Exhibit A attached to the Order to Show Cause.

As plaintiffs will show, there has been no failure to prosecute the instant actions, and

Merck's reading of PTO 18C is not accurate or renders the same an unclear order, while the alleged discovery deficiencies relied upon by Merck flatly evince that PTO 28's discovery requirements are unclear.   Moreover, plaintiffs submit they had met their disclosure requirements prior to entry of PTO 28, and, therefore, on the face of PTO 28, they had limited obligations with regard to further disclosure.

Plaintiffs also submit evidence of their substantial compliance with PTOs 28 and 18C with respect to submitting to Merck's counsel the Plaintiff Profile Forms, signed authorizations for release of all of their medical, employment and other records as required, providing medical records in their possession, custody and control; responding to alleged deficiencies in their disclosures; submitted verified answers to interrogatories; submitting written reports of a medical expert attesting to the meritorious nature of their cases; and serving preservation notices upon all health care providers.

Given the disclosure that is already provided either before or in conjunction with this opposition, plaintiffs submit that Merck has not and cannot show any prejudice or other facts that would warrant involuntary dismissal with prejudice as to any of these plaintiffs.   None of these cases are scheduled for trial, and this Court has a motion for remand that appears to be pending that would, in fact, enhance the prosecution of these cases, not impede it.

The sanction of dismissal is unwarranted, where alternatives are not taken into consideration, nor has there been any showing made by Merck that there is willful disregard in light of the efforts of plaintiff's' counsel to provide ample discovery and comply with the applicable provisions of PTO 28, as well as seek to meet and confer on discovery matters on the individual cases.   These plaintiffs now turn to their opposing  statement of facts.

## STATEMENT OF FACTS

On June 29, 2006, this Court issued Pre-trial Order ("PTO") 18C governing "Plaintiff

Profile Form, Authorizations, and Merck Profile Form").  Under the section entitled <u>Plaintiff</u>

<u>Profile Forms</u>, paragraph 1 expressly states:

> 1.  Plaintiffs in all cardiovascular event cases shall each complete and
> serve upon Merck a PPF and Authorizations for Release of Records of all
> healthcare providers and other sources of information and records (*e.g.*,
> pharmacies, employers, etc.) in the form set forth in Attachment A. *Those
> plaintiffs shall also produce with their PPF all documents responsive to the
> document requests contained therein.*

[Emphasis added.]   The PPF forms attached as exhibits to PTO 18C and PTO 28 both contain

the same language with regard to responsive document production, as follows:

### VI. DOCUMENTS

Please indicate if any of the following documents and things are currently in
your possession, custody, or control, or in the possession, custody, or control of
your lawyers by checking "**yes**" or "**no**". Where you indicated "**yes**," please
attach the documents and things to your responses to this profile form.
A.    Records of physicians, hospitals, pharmacies, and other healthcare providers
       identified in response to this profile form.  Yes____    No____
B.    Decedent's death certificate (if applicable).  Yes____    No____
C.    Report of autopsy of decedent (if applicable).  Yes____    No____

Thus, on the face of the PPF it is clear the only "document requests therein" were for records the

plaintiffs "currently" had.   With respect to subparagraph (II)(A)(6) of PTO 28, it only requires

medical records to be produced as to "*all healthcare providers requested in the Amended and

Supplemental Plaintiff Profile Form....*"   Because plaintiffs in the MDL at the time clearly

submitted PPFs prior to that date, they are expressly excluded from filing an amended and

supplemental PPF under the language in PTO 28 (II)(A)(3) stating "*unless Plaintiff or Claimant

has of the date of this Order submitted a Plaintiff Profile Form or Claimant Profile Form.*"

It is respectfully submitted the limited scope of the PPF documents request is consistent with the further provisions of PTO 18C that required:

> 10.   Authorizations shall be dated and signed "in blank" (*i.e.*, without setting forth the identity of the custodian of the records or provider of care).  Merck may use the authorizations for all healthcare providers and other sources of information and records (e.g., pharmacies, employers, etc.) identified in the PPF, without further notice to plaintiff's counsel.  The Defendants Steering Committee ("DSC") shall post the records received pursuant to the authorizations on a secure website maintained by the DSC's vendor and notify claimant's attorney and Plaintiffs' Liaison Counsel by e-mail of the posting.  Plaintiff's counsel in a particular case and Plaintiffs' Liaison Counsel may access the website to obtain copies of their clients' medical records at their cost.

*See* para. 10 of PTO 18C./*[1]  Each of the instant plaintiff's submits in opposition documentation and other proof of their efforts to comply with discovery, including a case-specific expert report, answers to interrogatories, and/or  other requirements in their individual cases, which are attached as the following exhibits:

(1)     Documentation and correspondence re: David Agard are in **Exhibit 3.**/*[2]
(2)     Documentation and correspondence re: Scott Berthel are in **Exhibit 4.**
(1)     Documentation and correspondence re: Richard Core are in **Exhibit 5.**
(1)     Documentation and correspondence re: Marjorie Curtis are in **Exhibit 6.**
(1)     Documentation and correspondence re: James Demoski are in **Exhibit 7.**
(1)     Documentation and correspondence re: Kristine Hia are in **Exhibit 8.**
(1)     Documentation and correspondence re: Maurice Hoyt are in **Exhibit 9.**
(1)     Documentation and correspondence re: Mary Kurtz are in **Exhibit 10.**
(1)     Documentation and correspondence re: Timothy Mack are in **Exhibit 11.**

---

[1]* According to the DSC website, the plaintiff must pay $25.00 per provider to view the records. *See* **Exhibit 1**, at p. 2.  On June 2, 2008, plaintiffs' counsel's office obtained a statement of the "Record Status" which indicated, with the exception of Richard Core, James Demoski and Timothy Mack, apparently Merck had not collected records regarding the instant plaintiffs using the authorizations provided up to that time.  *See* **Exhibit 2**.

[2]*/On June 30, 2008, prior to the above deadlines, plaintiffs' counsel filed a motion under the caption <u>Agard, et al.</u>, seeking, among other things, an order amending PTO 28 with respect to the requirement to file a case-specific expert report, and a stay.  *See* Docket, Documents 14938, 14938-2 and 16803.  On September 22, 2008, plaintiffs' reply memorandum attached as an exhibit a case-specific expert report for David Agard that was prepared by Steven A. Rich, M.D., in compliance with this requirement of PTO 28.

(1)     Documentation and correspondence re: AnnMarie Mannino are in **Exhibit 12.**
(1)     Documentation and correspondence re: Viola Santacrose are in **Exhibit 13.**
(1)     Documentation and correspondence re: Frank Spencer are in **Exhibit 14.**

As this Court is aware, "[o]n November 9, 2007, the parties announced the establishment of a Vioxx Resolution Program that encompasses all claims that allege a heart attack, sudden cardic death, or stroke." *In re Vioxx Prods. Liab. Litig.*, 557 F.Supp.2d 741,742 (E.D. La. 2008). "Also on that date, the Court entered two pre-trial orders requiring Plaintiffs to provide certain information to Merck by certain deadlines." *Id.*   Among other things, PTO 28 imposes extensive new "Preservation Notice Requirements" on the nonsettling plaintiffs.

As to discovery requirements on cases that had already been pending in MDL 1657, it appears clear this Court ruled out a construction of PTO 28 that would require them to provide duplicative or unnecessary disclosures of the same material previously and adequately provided to Merck's counsel.   In that regard, it is only necessary to note that PTO 28 expressly provides:

> The Plaintiff need not re-submit a Plaintiff Profile Form if one has already been
> submitted with respect to his or her claim.

*Id.*, p. 4, Section II(D).

PTO 28 also imposed registration deadlines on plaintiffs that were required in order to opt in/out of the MSA settlement program, which these plaintiffs complied with.  On March 13, 2008, in compliance with the preservation requirements under PTO 28, plaintiffs' counsel submitted forty-five (45) Statements of Notices Sent to pharmacies and medical providers for the plaintiffs whose cases were pending in MDL 1657 at that time. *See* Transcription Receipts annexed hereto as **Exhibit 15**.

On October 22, 2008, Merck's attorney Douglas R. Marvin of Williams & Connolly LLP, e-mailed a letter to plaintiffs' counsel which confirms the "Case Management Conference" had

been convened so that this Court could "ensure that the parties understood the settlement

process," and advising, *inter alia*, that:

> [W]e have reviewed the records for some of your clients and have found that they
> would be eligible for payments in substantial amounts. For example, in one
> instance, our records reflect that one client would be entitled to approximately 240
> points or about $450,000, assuming documents are submitted to show use that is
> consistent with the statements made in the Plaintiff Profile Form.  Another would
> receive about $220,000.00, assuming the necessary documentation to meet the
> Gate Criteria.  Of course, these amounts would be available only if these clients
> were to enter the settlement program before the deadline.  There is no program of
> any kind for claims outside the program.

*See* **Exhibit 16**, at pp. 1-2.  Merck has not divulged the identities of the "clients" it was referring

to, but the same indicates Merck is not prejudiced by a lack of discovery.  Merck's counsel, on

October 24, 2008, forwarded a list including all of the instant plaintiffs represented by the

Benjamin firm that sets forth  "VCN" numbers next to their names and an "Eligibility Status" for

each that states "Merck Deems Eligible.  *See* **Exhibit 17.**  On October 27, 2008, plaintiff's

counsel faxed a letter to attorney Horn asking to "meet and confer" on his request that Merck

"agree to hold off making any motions until such time as there are rulings on both the Agard and

Oakley motions, or at minimum, until the Agard motion is decided."  *See* **Exhibit 18.**

On November 5, 2008, plaintiff's counsel submitted "a request for a pre-motion

conference for the purpose of staying further motions by Merck for noncompliance with PTO

28...."  *See* **Exhibit 19**, at p. 1.   On November 26, 2008, Merck filed the instant "*Third* Motion,

Rule and Incorporated Memorandum to Show Cause" in which it seeks an order of this Court

dismissing with prejudice the complaints of sixty-one  plaintiffs represented by undersigned

counsel Ronald Benjamin for failure to provide a case-specific expert report, as to which, on

December 1, 2008, this Court issued an Order to Show Cause.  (Document 17108.)

The Benjamin plaintiffs opposed the motion, and, as to the instant plaintiffs, defendant

Merck withdrew its original "Third" motion to dismiss because expert reports were submitted by all of them.

Contrary to any notion that these plaintiffs have abandoned prosecution of their cases, by motion dated March 12, 2009, instant plaintiffs David Agard, James Demoski, Viola Santacrose, Marilyn [Richard] Core, Scott Berthel, Marjorie Curtis, Kristine Hia, Maurice Hoyt and Mary Kurtz, among others, sought a Suggestion of Remand of their actions to their respective transferor courts pursuant to 28 U.S.C. 1407 and and Multidistrict Litigation Rule 7.6(c)(ii) of the Rules of the Judicial Panel on Multidistrict Litigation, for the completion of case-specific pretrial discovery and trial. It appears this Court has not issued an order granting or denying the motion, and that it was still pending a ruling at the time Merck brought on the instant motion to dismiss.

Also on May 12, 2009, Merck's counsel wrote a letter to plaintiff's counsel listing what it believed to be matters which indicated the plaintiffs before this Court were not in compliance with PTO 28. *See* May 12, 2009 letter from Ana C. Reyes to Ronald R. Benjamin, annexed hereto as **Exhibit 20**. It is clear from this letter that Merck interprets PTO 28 to mean that these plaintiffs are required to produce certified copies of complete records from all healthcare providers from the period January 1, 1995 to the present, and to otherwise meet requirements of PTO 28 that do not apply to them.

In correspondence over the past two years, plaintiff's counsel has sought to resolve discovery issues with Merck's counsel. *See* copies of letters annexed hereto as **Exhibit 21.** Most recently, in mid-September 2009, plaintiffs' undersigned counsel telephoned Douglas Marvin about moving forward on each of the remaining cases and indicating that, since the discovery stay had been lifted by this Court, Merck should provide case-specific expert

disclosure to address the issues plaintiff's expert attested to, and advising that any further

discovery Merck wanted should include scheduling by agreement or scheduling order the

depositions of the plaintiffs' treating physicians or any other witnesses.   Plaintiffs' counsel also

indicated to Mr. Marvin that in light of the fact that Merck had counsel all around the country, a

Merck point person should be identified to address the cases or, if more than one was necessary,

to discuss outstanding discovery issues to move forward.   In the call, Mr. Marvin advised he

would have somebody get back to undersigned counsel by the end of the following week;

however, by the end of the following week, the instant Order to Show Cause was served.

     Plaintiffs herein now turn to their arguments.

## ARGUMENT

### MERCK'S MOTION FOR INVOLUNTARY DISMISSALS WITH PREJUDICE PURSUANT TO RULE 41(b) SHOULD BE DENIED SINCE MERCK HAS FAILED TO MAKE A SHOWING WARRANTING SUCH A HARSH SANCTION AGAINST THESE PLAINTIFFS, HAS ITSELF BEEN THE SOURCE OF DILATORY TACTICS, AND RELIES ON AN INTERPRETATION OF  PTO 28 CONTRARY TO ITS TERMS.

     Merck's motion to dismiss relies on a reading of PTO 28 that plaintiffs submit is in error,

and, if not in error, renders PTO 28 unclear.   The plaintiffs' opposition and cross-motion herein

do not seek to vacate PTO 28; rather, they submit, the Discovery Requirements as to certified

medical records do not apply to them, and it is unclear they are required to submit affidavits of

completeness without cooperation of Merck.   They also submit they have complied either

substantially or fully with the requirements that PTO 28 does impose on them, and that a proper

reading of PTO 28 indicates clearly that the majority of the "Discovery Requirements" in PTO 28

on which Merck appears to base the instant motion to dismiss, are not applicable to the instant

plaintiffs' cases that were pending in MDL 1657 on November 9, 2007, with respect to

producing copies of all healthcare providers with certifications by those healthcare providers that the records are complete, because they were excluded within the terms of PTO 28.   To the extent the Court deems PTO 28 to include them, they submit PTO 28 is unclear and dismissal with prejudice should not be based on an unclear order.

In any event, it appears clear that Merck must concede the instant plaintiffs have complied with PTO 28 in substantial part in that they met the applicable "Preservation Notice Requirements" and served expert reports.   However, Merck seeks to enforce the "Discovery Requirements" of PTO 28 on these plaintiffs that PTO 28 does not clearly impose.

Here, the PPF on its face requested plaintiffs to produce only those records they or their attorney had "currently" collected, and to provide Merck with blank and undated authorizations from plaintiffs that allowed Merck free reign to obtain complete copies of all of the records of the instant plaintiffs' healthcare providers, including medical, pharmacy, employer, etc., records, that it deemed necessary for its defense.   Yet, since Merck contends it has "None" or "Partial" pharmacy or medical records for these plaintiffs, it is actually conceding that it simply sat back and failed to utilize the authorizations to  collect the documents it claims it needs for its defense, even before any depositions go forward.   Merck now interprets PTO 28 to apply to shift the burden to the plaintiffs to not only collect all healthcare provider and other records, but to obtain certifications of completeness.

This Court has ruled that PTO 28 is designed to "strike a balance between efficiency and equity." *In re Vioxx Prods. Liab. Litig.*, 557 F.Supp.2d 741,743-44 (E.D. La. 2008).   Plaintiffs' statement of fact and exhibits evince a number of grounds on which this Court should find they show good cause why their cases should not be involuntarily dismissed under Rule 41(b).   It is clear that Merck's interpretation of the applicable PTOs merely increases the costs for the

plaintiffs on the document production requirements, and avoids Merck's having to litigate by scheduling depositions in the individual cases.  This is clearly delay that is not attributable to the plaintiffs, but, rather, is a litigation strategy on Merck's part in that it had not scheduled any case-specific depositions in any of these plaintiffs' cases before or since November 9, 2007.

The Fifth Circuit "review[s] an involuntary dismissal pursuant to Rule 41( b) under the abuse of discretion standard." Thanksgiving Tower Partners v. Anros Thanksgiving Partners, 985 F.2d 557, 1993 WL 35716, *4  (C.A.5 1993) citing Rogers v. Kroger Co., 669 F.2d 317, 320 (5th Cir.1982).  Indeed:

> Rule 41( b) provides for involuntary dismissal of a claim when a party violates a court order. Nevertheless, dismissal with prejudice is a harsh sanction that is reserved for egregious cases. Under *Rogers v. Kroger Co., 669 F.2d 317, 320 (5th Cir.1982)*, involuntary dismissal with prejudice (or dismissal without prejudice of a claim that is time-barred) is appropriate only when there is also (1) a clear record of delay or contumacious conduct, and (2) a determination that lesser sanctions would not serve the best interests of justice.

*Id.*  In that case, the Fifth Circuit ruled that, "[i]In determining whether a party's behavior constitutes the requisite pattern of clear delay or contumacious conduct, we have held that dismissal is proper only when the party's noncompliance is due to intentional misconduct. *McGowan v. Faulkner Concrete Pipe Co.,* 659 F.2d 554, 557 (5th Cir.1981). Although Anros's and Gaw's behavior contributed to delay in the suit, their defaults do not suggest the intentional misconduct required to sustain the involuntary dismissal with prejudice."  *Id., at *6.*  It further ruled that:

> In addition to finding a pattern of delay or contumacious conduct, the district court must find that lesser sanctions were or would be ineffective. . . .  Moreover, the court must make these findings on the record.

*Id., at *8 [citations omitted].*    It is submitted dismissal is unwarranted where no trial date has been set and even improper when the party is  prosecuting their claims with diligence. *Id.*

Dismissals with prejudice are in general reserved for "egregious and sometimes outrageous delays." Rogers v. Kroger Co., 669 F.2d 317, 321 (5th Cir.1982). "In short, these are cases where the plaintiff's conduct has threatened the integrity of the judicial process, often to the prejudice of the defense, leaving the court no choice but to deny that plaintiff its benefits." *Id.* The Fifth Circuit has also made clear that:

> [A] dismissal with prejudice would only be affirmed upon a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, and (b) where lesser sanctions would not serve the best interests of justice. . . . We also noted the significance in our decisions of the presence of certain "aggravating factors", such as (1) the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, (2) the degree of actual prejudice to the defendant, and (3) whether the delay was the result of intentional conduct.

Morris v. Ocean Systems, Inc., 730 F.2d 248, 252 (5th Cir. 1984). It is also clear that:

> The first criterion, clear delay or contumacious conduct, requires a finding of either "significant periods of total inactivity by [the] plaintiff" . . . , or "stubborn and deliberate attempts to impede the prosecution" of the case." Attorney negligence, indiscretion, or ineptitude are insufficient grounds to warrant dismissal.

Stelly v. Galley Supply, Inc., 1994 WL 34050, at *1 (E.D.La.) (J. Sear). In the cases at bar, plaintiffs' counsel attempts to meet and confer with Merck's counsel about discovery and moving the cases forward, have been to no avail, and motions practice has been pursued, including the motion to remand. There simply have not been any significant periods of total inactivity by the plaintiffs or attempts to impede prosecution, and plaintiffs have made an effort to address discovery obligations and deficiencies that apply to their individual cases throughout these coordinated proceedings.

There is no clear record of any delay or contumacious conduct by plaintiffs or their counsel. Berry v. Cigna/RSA-Signa, 975 F.2d 1188, 1191-92 (5th Cir. 1992). There is, instead, a clear record of Merck's failure to obtain the records it deemed necessary for its defense with the

authorizations plaintiffs provided long before the instant motion, or, in the alternative, no showing by Merck that any documents have been lost or that depositions of the individual plaintiffs and doctors could not be undertaken, particularly once the written case-specific expert reports were served on Merck by each of the instant plaintiffs.

The Fifth Circuit has "recognized certain 'mitigating' factors that strongly militate against such the harsh penalty of dismissal. In particular, dismissal should ordinarily be eschewed when the delay is not directly attributable to the plaintiff (as opposed to his attorney), when there is no actual prejudice caused to the defendant, and when the plaintiff's dilatory conduct has not been deliberate."   Cavitt v. Whitmire, 993 F.2d 1543, 1993 WL 185717, *3 (5th Cir. 1993). Merck does not bother to show any prejudice, let alone actual prejudice, in any of the individual plaintiff's cases, nor does PTO 28 provide a basis for finding Merck is automatically prejudiced by any alleged deficiencies in a plaintiff's compliance. Here, plaintiffs' reasonable interpretation of PTO 28 is that the majority of its requirements do not apply to them with respect to production of certified medical and pharmacy records on which the motion to dismiss is based. The plaintiffs have clearly provided the PPFs, signed authorizations and copies of records in their possession, and have served preservation notices to all healthcare providers as required./*[3]   The motion is based on documentary evidence which Merck has not even bothered to show was lost after November 9, 2007.

---

[3]*/The preservation "notice" requirements of PTO 28 applied only to plaintiffs who were already in MDL 1657 on November 9, 2007. While PTO 29 applies to cases transferred to MDL 1657 after November 9, 2007, the preservation notice requirement in PTO 29 states it only applies to newly filed actions, inasmuch as it required counsel or pro se plaintiff to send notices "Prior to filing a claim" and "Within thirty (30) days of agreeing to accept a client" and "Within 10 days of filing a claim." Plaintiff Spencer's case had been filed in 2006 in state court, and was not transferred to MDL 1657 until August 2008, so it appears clear that neither PTO 28 nor PTO 29 applied to him as to the preservation notice requirements.

The limited scope of the production required in the above provision in the PPF is entirely consistent with the fact that plaintiff was also required to, and did, provide signed authorizations for release of medical and other records to Merck's counsel along with the PPF. Merck's conduct of not using the signed authorizations should not be rewarded. Moreover, this Court should not place an imprimatur on Merck's contention that any "deficiency" results in the harsh sanction of dismissal with prejudice. Here, Merck unabashedly seeks dismissal with prejudice by construing PTO 28 as authorizing a Rule 41 involuntary dismissal for "any" untimely failure to fully comply with the discovery requirements, without any showing of prejudice or intentional conduct. This is tantamount to punishing these plaintiffs for not entering the settlement, particularly since the settlement leaves only a few hundred cases before this Court, and no trial dates have been or can be set for any of these plaintiffs at any time soon, nor has this Court indicated remand to the transferor court for trial is imminent, so it is unlikely that there is any actual prejudice or delay. Indeed, the record before this Court contains no assertion by Merck, under oath or otherwise, that the authorizations plaintiffs have already provided have resulted in its inability to obtain or subpoena records for trial./* [4]

---

[4]*/As to the instant plaintiffs, it is significant that New York requires long-term retention of records by all physicians which requires them to maintain adult patient records for at least 10 years. New York Educ. Law Section 6530 (32). The failure to maintain those records for each patient constitutes professional misconduct. *See* 8 NYCRR 29.2 (a) (3). The same is true for hospital records (10 NYCRR 405.10) and for nursing homes (8 NYCRR 415.22.)

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully submit that this Court should DENY the Merck's motion to dismiss their cases with prejudice on the ground of failure to prosecute.

Respectfully submitted,

RONALD R. BENJAMIN Fed. No. 110131
LAW OFFICE OF RONALD R. BENJAMIN
126 Riverside Drive, P O. Box 607
Binghamton, New York 13902-0607
607/772-1442

Attorneys for Individual Plaintiffs
in Above-Captioned Actions