UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: | * | |
| ALL CASES | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

**DEFENDANT MERCK & CO., INC.'S OPPOSITION TO MOTION FOR A DISCOVERY/BRIEFING SCHEDULE RELATING TO THE COMMON BENEFIT FEE APPLICATION OBJECTIONS AND CROSS-MOTION FOR PROTECTIVE ORDER**

Defendant Merck & Co., Inc. ("Merck") respectfully submits this opposition to the Motion For A Discovery/Briefing Schedule Relating To The Common Benefit Fee Application Objections ("Mot.") filed by the liaison counsel for attorneys with objections to the common benefit fee application ("Objectors"). Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Merck also respectfully cross-moves the Court for issuance of a protective order to prevent the proposed discovery from going forward.

As set forth below, Objectors have been tasked by the Court with the job of acting as liaison counsel on behalf of attorneys who object to the Plaintiff Steering Committee's ("PSC's") common benefit fee application. Ostensibly with that purpose in mind, Objectors have filed a motion seeking a discovery and briefing schedule. Their proposed lines of inquiry for this discovery, however, are utterly inappropriate. Objectors seek discovery related to Merck's "understanding" of the Negotiating Plaintiffs' Counsel's ("NPC's") authority, Merck's

997385v.1

"understanding of the purpose and effect" of the Court's orders related to common benefit fees, and Merck's experience in other MDLs. None of this discovery could possibly have any bearing on the Court's decision regarding the common benefit fee application. For these reasons, as explained further below, Objectors' motion should be denied and a protective order should issue.

## BACKGROUND

On November 9, 2007, after several years of litigation that included discovery of millions of documents, depositions of numerous company witnesses and experts, and several trials, counsel for Merck and the NPC announced a private agreement to settle many Vioxx personal injury cases pending in the MDL and other jurisdictions around the country. (*See* Master Settlement Agreement, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Nov. 9, 2007) ("MSA"), *available at* http://www.browngreer.com/vioxxsettlement.) The MSA established a $4.85 billion fund to resolve cases pending on November 9, 2007 claiming that Vioxx caused a heart attack, ischemic stroke, or sudden cardiac death. (MSA, Recitals.) Notably, in contrast to a class settlement, the MSA purported to bind only those claimants who affirmatively consented to its terms and opted into the resolution program it created.

The MSA also provided for an assessment of common benefit fees to compensate the common benefit attorneys in the Vioxx MDL. (*Id.* § 9.2.) According to the MSA, "an assessment of common benefit attorneys' fees will be imposed at no more than 8% of the gross amount recovered for every client that registers under the terms of the Settlement Agreement." (*Id.* § 9.2.1.) The assessment for common benefit fees would supersede the assessment provided to MDL common benefit attorneys pursuant to Pretrial Order No. 19 ("PTO 19"). (*Id.*) Notably, the MSA explicitly states that "**Merck takes no position regarding, and has no responsibility or Liability for, the award of common benefit attorneys' fees and the reimbursement of costs**

***under this Section, or the allocation of the same, and waives the right to contest these matters***." (*Id.* § 9.2.6 (emphasis added).)

On January 20, 2009, Plaintiffs' Liaison Counsel ("PLC") filed a Motion For Award Of Plaintiffs' Common Benefit Counsel Fees And Reimbursement Of Expenses. (*See* Dkt. 17642.) In that motion, "the affiliated Common Benefit Counsel request[ed] an award of 8% of the $4.85 billion fund or $388 million for attorneys fees." (*Id.* at 3-4 (footnote omitted).) Thereafter, on April 16, 2009, the Court issued an Order directing any party who objected to that motion to file a Notice of Objection and serve it on the PLC on or before May 8, 2009. Numerous objections were filed. On May 5, 2009, counsel Michael Stratton filed his objection to that motion. (*See* Stratton Faxon's Notice Of Objection To The PSC Fee Request, Dkt. 18649.) On September 15, 2009, the Court held a status conference to discuss the PSC's motion. (*See* Sept. 15, 2009 Minute Entry, Dkt. 23893.) At that conference, the "parties indicated that they will meet and confer to discuss their proposals regarding a discovery schedule for the issue, as well as the scope of discovery and any other relevant issues." (*Id.*) The Court advised that if "the parties are unable to resolve these issues on their own, they are directed to submit their competing proposals to the Court, who will settle any existing disputes." (*Id.*) The Court appointed Mr. Stratton as Liaison Counsel for Common Benefit Fee Application Objectors on September 30, 2009. (*See* Pretrial Order No. 52, Dkt. 24522.)

On October 15, 2009, Mr. Stratton filed a Motion For A Discovery/Briefing Schedule Relating To The Common Benefit Fee Application Objections. In that motion, Stratton, purportedly on behalf of Objectors, seeks permission to depose a corporate representative from Merck regarding, among other things:

- "Any and all representations made by the NPC, or any member thereof, and/or the PSC, or any member thereof, regarding the scope of authority that the NPC and/or PSC

3

purports, or purported, to have had, alone, or in conjunction with Merck, to supersede Pretrial Order No. 19 and/or the Full Participation Agreement." (*See* The Vioxx Litigation Consortium's (Draft) Notice of Rule 30(b)(6) Deposition of Merck & Co., Inc. And Subpoena Duces Tecum, Schedule A ("Dep. Notice") (attached as Ex. 1).)

- "Merck's understanding of the scope of authority that the NPC and/or PSC had to negotiate the Master Settlement Agreement." (*Id.*)

- "Merck's understanding of the purpose and effect of Pretrial Order 19, issued by Judge Fallon in this proceeding." (*Id.*)

- "Merck's understanding of the purpose and effect of the various agreements designed for execution by the PSC and participating attorneys that were included in PTO 19." (*Id.*)

- "Merck's position on the propriety of superseding PTO 19 by way of Section 9.2.1 of the Master Settlement Agreement." (*Id.*)

- "Merck's experience in other multi-district litigation and whether any pre-trial orders were superseded by agreement in those proceedings." (*Id.*)

Merck now files this opposition to Objectors' motion and seeks a protective order that the discovery sought not be had.

## **ARGUMENT**

Federal Rule of Civil Procedure 26 permits discovery of unprivileged information "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The purpose of this rule, as amended in 2000, is to "'focus [discovery] on the actual claims and defenses involved in the action.'" *See Collens v. City of New York*, 222 F.R.D. 249, 252 (S.D.N.Y. 2004) (citing Fed. R. Civ. P. 26, Advisory Committee Notes, 2000 Amendments). Accordingly, "courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition'" regarding matters "not related to the alleged claims or defenses." *Id.*; *see also Diaz-Padilla v. Bristol Myers Squibb Holding Ltd. Liab. Co.*, No. 04-1003, 2005 U.S. Dist. LEXIS 5879, at *4-5 (D.P.R. Apr. 4, 2005) (denying motion to compel information about all other

997385v.1

employees in employment discrimination case; the 2000 amendments to Rule 26 were intended to "confine discovery to the claims and defenses asserted in the pleadings").

As set forth below, the Court should deny Objectors' motion and prevent the requested discovery from going forward for two reasons: (1) the proposed lines of inquiry will not lead to the discovery of information germane to the PSC's common benefit fee application; and (2) discovery related to settlement negotiations is inappropriate absent a compelling rationale such as evidence of collusion.

*First*, the proposed requests will not lead to the discovery of information germane to the Objectors' purported concerns about the common benefit fee application. The Objectors' challenge to the 8% fee application is legal in nature; they do not believe the MSA terms should be permitted to supersede the full participation option contracts set forth in PTO 19. But that is a straight question of legal interpretation – no discovery could possibly be relevant to the Court's legal analysis.

Moreover, even if it were possible that some discovery would shed light on any issue related to the PSC's fee application or § 9.2 of the MSA, it is virtually impossible that Merck would possess relevant information or documents. After all, the dispute here concerns the fees to be awarded to attorneys whose work was dedicated to the common benefit of Vioxx *plaintiffs*. That is a matter between plaintiffs' counsel and the Court. As noted above, the MSA explicitly states that "Merck takes no position regarding, and has no responsibility or Liability for, the award of common benefit attorneys' fees and the reimbursement of costs under this Section, or the allocation of the same, and waives the right to contest these matters." (MSA § 9.2.6.)

In any event, the challenge is spurious. As the Court is aware, the MSA established a settlement program that permitted plaintiffs to "opt in" if they so chose. And by enrolling in the

program, a given plaintiff and his counsel agreed to abide by the terms of the MSA. Section 1.2.4 provides that, "[b]y submitting an Enrollment Form, the *Enrolling Counsel*, and all Program Claimants covered by such Enrollment Form . . . shall be deemed to have agreed to be bound by all of the terms and conditions of this Agreement." One of the terms that participating plaintiffs were required to accept establishes a Common Benefit Fund that supersedes the PTO 19 assessment. Participating plaintiffs and their counsel were free to enroll in the MSA and thereby agree to its terms – or not. But having enrolled, a plaintiff or his counsel cannot agree to abide by those terms he likes and disregard those he does not. In short, the MSA constituted an offer, the Objectors accepted that offer by enrolling in the MSA, and they are now bound by all of its terms – including the establishment of a Common Benefit Fund, which superseded the PTO 19 assessment.

Ultimately, of course, that is an analysis for the Court to undertake. But the Court will not be aided by discovery from Merck. How could "Merck's understanding of the purpose and effect of Pretrial Order 19" possibly provide information regarding the propriety of that provision – which presents a legal issue only? To the contrary, the "purpose and effect" of PTO 19 can be discerned by simply reading the language of that Order; no discovery from Merck could possibly shed further light on its significance. Similarly, Objectors' effort to question Merck regarding its "position" on the propriety of superseding PTO 19 with certain provisions of the MSA is a matter that has no bearing on whether or not the provision is appropriate. In sum, Objectors' proposed discovery does nothing more than seek Merck's views about a provision in the MSA – hardly an appropriate topic for discovery. No matter how Objectors attempt to characterize these requests, they cannot avoid the ultimate conclusion that Merck's views on

legal issues and interpretations of the Court's orders are simply irrelevant to the validity of their objections, which is the only issue on which they could even arguably be entitled to discovery.[1]

***Second***, Objectors' request should also be rejected because they have shown no evidence of impropriety or collusion.  As numerous courts have recognized, settlement negotiations are not a proper subject of discovery absent such evidence.  *E.g.*, *In re Lupron(R) Mktg. & Sales Practices Litig.*, MDL No. 1430, No. 01-10861-RGS, 2005 U.S. Dist. LEXIS 4039, at *7 (D. Mass. Mar. 16, 2005) (denying motion to compel discovery related to settlement negotiations in MDL proceeding); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987) ("[d]iscovery of settlement negotiations in ongoing litigation is unusual because it would give a party information about an opponent's strategy"); *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 222 (N.D. Ill. 2001) ("Further, the Court agrees with the authorities that generally find it unwise to allow one party to obtain discovery about the private settlement positions of opposing parties in ongoing litigation.").

In *Lupron*, for example, plaintiffs in a state court action that ran parallel to a federal MDL action asserted that "the parties to the MDL settlement . . . refused to comply with their requests for discovery concerning the MDL settlement negotiations, thereby hindering their ability to formulate a fully developed objection to the settlement."  2005 U.S. Dist. LEXIS 4039, at *3. The plaintiffs argued "that they need[ed] information about the settlement negotiations" to discover "(1) the extent of the discovery undertaken in the MDL case and the MDL plaintiffs' counsels' evaluation of the likelihood of success; (2) plaintiffs' demands in the settlement

---

[1] In addition, given the lack of any conceivable relevance or legitimate purpose for the proposed discovery, Objectors' request should be denied as unduly burdensome and expensive.  *See* Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."); *see also Degen v. United States*, 517 U.S. 820, 826, 116 S. Ct. 1777 (1996) (the court has the authority "to manage discovery in a civil suit, including the power to enter protective orders limiting discovery as the interests of justice require").

negotiations; and (3) whether defendants, faced with Intervenors' parallel litigation, conducted a 'reverse auction' with the collusion of plaintiffs' counsel." *Id.* at *6. The court disagreed and denied the motion. The court began by observing that "[c]lass members who object to a class action settlement do not have an absolute right to discovery; the Court may, in its discretion, limit the discovery or presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement." *Id.* (citation omitted). However, the "burden is higher when a party seeks discovery of settlement negotiations." *Id.* at *7. While the court noted that, in "exceptional cases, circumstantial evidence may demonstrate collusion between class counsel and defendants to a degree sufficient to warrant discovery into settlement negotiations[,]" *Lupron* was not such a case. *Id.* at *8. On the contrary, the court noted that the "MDL action has been litigated in this court since 2001, and has been the subject of dozens of heated motions and oral arguments" and "based on a thorough review of the settlement, the court has preliminarily found that the settlement is fair." *Id.* at *9-10. *See also Mars Steel*, 834 F.2d at 680 ("[d]iscovery of settlement negotiations in ongoing litigation . . . would give a party information about an opponent's strategy" and is thus permitted only where the party seeking it lays an evidentiary foundation "that the settlement may be collusive" or other, similar "hanky-panky").

The same is true here. The Court should not permit Objectors to take discovery regarding the highly sensitive communications and negotiations that ultimately led to the formation and consummation of the MSA. Objectors have made no showing whatsoever that the settlement itself is collusive or the result of any "hanky-panky." Nor could they. As the Court is well aware, the NPC and Merck worked tirelessly to craft terms acceptable to both sides, and each

and every provision is the result of months of arm's-length negotiation.[2] For this reason as well, Objectors' request should be denied.

## CONCLUSION

For all of the foregoing reasons, Merck respectfully requests that the Court deny Objectors' motion and issue a protective order preventing the proposed discovery from going forward.

Dated:  November 3, 2009

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK & CO., INC.

---

[2] Merck also notes that the Court should deny Objectors' request because the discovery they seek – even assuming it existed – would impinge on privileged attorney-client communications.  For example, Objectors are seeking information regarding "[a]ll negotiations or discussions between Merck and the Negotiating Plaintiffs' Counsel . . . involving or pertaining to Article 9 of the Settlement Agreement entered into between Merck and the NPC on November 9, 2007."  (Dep. Notice.)  As the Court knows, Merck's counsel played a substantial role in the development of the settlement program.  Requiring the Company to reveal the substance of the discussions involved in creating those provisions – as well as communications by Merck representatives that mention them – would inevitably call for the disclosure of countless attorney-client communications and attorney work product materials.

9

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Opposition has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 3rd day of November, 2009.

                      */s/ Dorothy H. Wimberly*
                      Dorothy H. Wimberly, 18509
                      STONE PIGMAN WALTHER WITTMANN L.L.C.
                      546 Carondelet Street
                      New Orleans, Louisiana  70130
                      Phone:  504-581-3200
                      Fax:     504-581-3361
                      dwimberly@stonepigman.com

                      Defendants' Liaison Counsel

997385v.1