UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL DOCKET No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L – DIVISION 3 |
| | * | |
| This document relates to the following | * | JUDGE FALLON |
| cases: | * | |
| | * | |
| KURELIC, NOLA W. (05-02101) | * | |
| KJONAAS, JOAN OBO | * | MAG. JUDGE KNOWLES |
| LONNIE LEE KJONAAS (06-05654) | * | |
| CENTRELLA, KATHRYN OBO | * | |
| JOSEPH CENTRELLA (05-03164) | * | |
| HEAVNER, BARBARA (tolled) | * | |
| HUNT, ROBERT (06-01505) | * | |
| ROGERS, HOWARD (tolled) | * | |
| | * | |
| Individuals, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |

## CERTAIN THIRD PARTY PAYERS' RESPONSE TO MOTION FOR RELIEF FROM THE PRIVATE LIEN RESOLUTION AGREEMENT

Certain Third Party Payors, Noridian, Avmed, United, and Anthem ("TPPs" or

"Responding TPPs"), hereby respond to the Motion for Relief from the Private Lien Resolution

Program as follows:

Eligible Claimants Nola W. Kurelic, Joan Kjonaas OBO Lonnie Kjonaas, Kathryn

Centrella OBO Joseph Centrella, Howard Rogers, Barbara Heavner and Robert Hunt ("Movants"

1

and/or "ECs")[1] have moved for an order discharging them from their obligations under the

Private Lien Resolution Program ("PLRP").  In support of their motion, Movants make the

unfounded argument that the responding TPPs are in breach of the Settlement Agreement

("Agreement") which established the Private Lien Resolution Program ("PLRP").  Movants

allege that the TPPs (1) failed to exercise due diligence in providing "lien data" to the Garretson

Firm ("Garretson"), the Lien Resolution Administrator, (2) seek reimbursement for claims

unrelated to the compensable injuries suffered by the Eligible Claimants enrolled in the PLRP,

and (3) insist on auditing all final liens prior to the release of any settlement funds that have been

escrowed.  As discussed below, the entire motion reflects Movants' failure to make proper

inquiries into the veracity of their assertions.   Had the Movants met and conferred with TPP

counsel prior to filing their motion, they would have realized its utter lack of merit and not

burdened this Court with an unnecessary motion.   Because Movants based their claims for relief

on unfounded allegations and inaccurate information, this Court should deny their motion.

## INTRODUCTION

On January 15th, 2009, the TPPC and the PSC entered into the Settlement Agreement

("Agreement') that established the Private Lien Resolution Program.  Under the terms of the

Agreement, the parties agreed to work together in order to establish a mutually acceptable "set of

---

[1] The response is limited to Movants Kjonaas, Kurelic, Rogers, and Centrella who were respectively insured by Noridian, AvMed, United and Anthem, all of which are Third Party Payors ("TPPs") collectively represented by Rawlings & Associates PLLC, Susman & Godfrey LLP, and Lowey Dannenberg, Cohen & Hart PC are to be considered the responding TPPs.  The TPPs for Heavner and Hunt are not represented by responding TPPs.  The response should be read to apply to Heavner and Hunt to the extent that it may address aspects of the motion as it relates to their claims.

automated diagnosis and procedure codes with which to establish lien amounts for each EC."

*See,* Agreement, Part A.5.  In March, 2009, after several discussions and comparisons of

potentially applicable diagnostic and procedure code sets, Garretson and counsel for the

responding TPPs agreed on a set of procedures and codes that would be used to identify relevant

paid claims.  *See* Declaration of Mark D. Fischer ("Fischer Decl."), attached as Exhibit A, at ¶ 5.

These agreements as to time restrictions and procedure codes ensured that TPPs only asserted

medical liens for Vioxx-related expenses.  *See* Fischer Decl. at ¶ 7.

It is important to understand that the agreed upon data transfer procedures, as set forth in

the Agreement and refined by subsequent agreements, only required the TPPs to provide

Garretson with paid claims data that corresponded to particular procedure codes that occurred

after the adverse event.  Despite this, Garretson requested that TPPs produce additional claims

information.  Specifically, Garretson requested that TPPs provide full medical claims histories on

each enrolled EC from one-year prior to the onset of the claimed adverse event through

November 9th, 2007. *See* Fischer Decl. at ¶ 6.  The TPPs agreed to accommodate Garretson's

request and provided the requested claims data to Garretson, to the extent the TPPs had data for

the entire period.  *See* Fischer Decl. at ¶ 6.

To make sure that there was no confusion as to which medical costs TPPs claimed as part

of their lien amount, and to facilitate the auditing process, the TPPs highlighted each claim paid

under one of the agreed upon diagnostic codes that occurred after the EC's adverse event.

Claims that occurred on the same day as a claim with an agreed upon procedure code were

highlighted in a different color.  *See* Fischer Decl. at ¶ 7.  In this way, anyone viewing an EC's

medical history could see the EC's entire treatment timeline with relevant treatments and dates

highlighted according to the color code making it easy to spot trends in the EC medical histories. *See* Fischer Decl. at ¶ 8.

After the TPPs provided the requested claims data, Garretson was to audit all initial lien amounts and escrow amounts according to its obligations in administering the PLRP.  *See* Fischer Decl. at ¶ 9.  The claims data initially provided by the TPPs was, therefore, merely the first step in an agreed upon process to evaluate the medial claims histories of each EC and, ultimately, arrive at a final lien amount.

Upon the receipt of the medical claims histories, Garretson processed the medical histories and determined initial lien amounts for each EC.  Once the initial lien amount was determined, and per the terms of the PRLP, Garretson properly informed Brown Greer to escrow 15% the funds available to the EC until such a time it could be determined that that the asserted lien amounts did not exceed 15% of the EC's gross recovery.  *See* Fischer Decl. at ¶ 10.

In the case of each EC, including the Movants, the process set forth above was followed.

I.      **Liens and escrow amounts for three of the Movants were adjusted a week before the present motion was filed thus rendering these issues moot**

Movants complain in their October 26th, 2009 motion that the amounts escrowed by Garretson are far in excess of the liens that have been finalized.  Br.[2] at pp. 4-5.  However, had counsel for the Movants simply checked the accuracy of this allegation before filing their motion,  Counsel would have discovered that Garretson had revised escrow amounts for Movants Rogers, Centrella, and Kjonaas nearly a week before the filing.

---

[2] Citations to "Br." refer to Movants' Motion for Relief from Private Lien Resolution Agreement, October 26, 2009, Docket No. 25895.

Garreston received the medical claims history for Lonnie Lee Kjonaas on July 29th, 2009.  On September 29th, 2009, Garretson escrowed $80, 469.45 in order to satisfy its obligations under the PLRP.  On October 20, 2009, Garretson reduced the escrowed amount to $978.82 and has calculated an audited lien amount of $1,657.64.  *See* Fischer Decl. at ¶ 12.

On September 1st, 2009, Garretson received the medical claims history for Howard Rogers.  On September 29th, 2009, Garretson escrowed $93,184.16 in order to satisfy its obligations under the PLRP.    On October 20, 2009, Garretson reduced the escrowed amount to $2,385.09 and has calculated an audited lien amount of $2,434.45. *Id.  See* Fischer Decl. at ¶ 13.

On September 1st, 2009, Garretson received the medical claims history for Joseph Centrella.  On September 29th, 2009, Garretson escrowed $76,690.01 in order to satisfy its obligations under the PLRP.  On October 20, 2009, LRA reduced the escrowed amount to $424.73 and has calculated and audited lien amount of $549.46. *See* Fischer Decl. at ¶ 14.

Therefore, the finalized lien and escrow amounts were completed on October 20th for each of these three Movants, nearly a week prior to the Movants filing their motion.  The request for relief on basis that escrowed amounts far exceed lien amounts is moot with respect to these Movants and, in fact, was moot before the motion was even filed.

With respect to Movant Kurelic, Garretson received the medical claims history for Nola W. Kurelic on September 18th, 2009 which demonstrated a paid claims history of $2,961,519.06. On September 18th, 2009, Garretson escrowed $60,204.26 in order to satisfy its obligations under the PLRP. On October, 30th, Garretson reduced the escrowed amount to $26,993.21.  *See* Fischer Decl. at ¶ 15.   The amount of the initial paid claims triggered an investigation by both Garretson and Rawlings which necessitated a re-run of the data. *See* Fischer Decl. at ¶ 15.  On November

5

4th, Rawlings re-submitted a paid claims history for Movant Kurelic in the amount $30,484.65 to

Garretson.  Rawlings is working with Garretson to finalize the audit in order to ensure the

integrity of the process.  *See* Fischer Decl. at ¶ 15.

II.      **TPPs did not request an audit of any of the Movants amounts, nor have they
         requested an audit of any other lien amount**

Movants inexplicably claim that the TPPs have requested audits of all liens.  Br. at p. 6.

This is simply not true.  The TPPs have not requested a single audit.  *See* Fischer Decl. at ¶ 16.

Even though the Agreement gives TPPs the right to request such audits as TPPs deem

appropriate, TPPs have not exercised this right.  Once again, the only explanation for the

Movants assertion is their failure to confer with TPP Counsel prior to filing their motion.

**CONCLUSION**

The Court should deny the Motion for Relief from the Private Lien Resolution

Agreement.  It is abundantly clear from the Movants' papers that they made no effort whatsoever

to inquire about or understand the PLRP process or the obligations of the parties involved in the

Program.  Had they done so, they would have realized that the amounts escrowed were correctly

adjusted nearly a week before they filed this present motion and that Garretson and the TPPs are

working together to resolve any and all outstanding issues in a manner consistent with the intent

of the Agreement.

Nervertheless, in the event that this Court decides to relieve the Movants of their

obligations under the PLRP, the TPPs request that the Court continue to enforce their escrows for

a period of seven days.  During that time, the TPPs will initiate litigation against each of the

Movants for the full, undiscounted amount of the TPPs' liens and will seek such further

temporary injunctive relief as is appropriate.

<div style="margin-left: 40%">

Respectfully submitted,

</div>

Dated: <u>September 22, 2009</u>                    By: <u>/s/ Mark D. Fischer</u>

<div style="margin-left: 40%">

Mark D. Fischer
Mark M. Sandmann
RAWLINGS & ASSOCIATES, PLLC
325 West Main Street
Suite 1700
Louisville, KY  40202
Telephone: (502) 814-2139

<u>/s/ Richard Cohen</u>
Richard W. Cohen
Peter St. Phillip
LOWEY DANNENBERG COHEN & HART, P.C.
White Plains Plaza - 5th Floor
One North Broadway
White Plains, NY  10601
Telephone: (914) 997-0500

<u>/s/ Joseph S. Grinstein</u>
Joseph S. Grinstein
SUSMAN GODFREY LLP
Suite 5100
1000 Louisiana
Houston, TX 77002-5096
(713) 651-9366

*Counsel for Health Plans Listed on "Exhibit A"*

<u>/s/ Thomas M. Sobol</u>
Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
(617) 482-3700

*Of Counsel*

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Response, along with the accompanying Declaration and Exhibit, have been served upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 6th day of November, 2009.

 /s/ Thomas M. Sobol

Thomas M. Sobol