UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX PRODUCTS<br>LIABILITY LITIGATION<br><br><br>**This document relates to All Cases** | CIVIL ACTION<br><br>NO. 2:05-MD-01657-EEF-DEK<br><br>SECTION L<br>JUDGE ELDON E. FALLON<br><br>DIVISION 3<br>MAGISTRATE DANIEL E. KNOWLES III |

**RESPONSE TO DEFENDANT MERCK & CO., INC.'S OPPOSITION TO MOTION
FOR A DISCOVERY/BRIEFING SCHEDULE RELATING TO THE COMMON
BENEFIT FEE APPLICATION OBJECTIONS AND CROSS-MOTION FOR
PROTECTIVE ORDER**

Michael Stratton, Liaison Counsel for Objectors, respectfully submits, on behalf of all Objectors, this Response to Defendant Merck & Co., Inc.'s Opposition to Motion for a Discovery/Briefing Schedule Relating to the Common Benefit Fee Application Objections and Cross-Motion for Protective Order, and in support thereof would show the following:

**I.      Objectors Seek Discovery of Merck Only as to the 8% Common Benefit Fee Issue.**

Merck asserts that (1) *any discovery* on the issue of common benefit attorneys' fees is inappropriate and should be denied,[1] and (2) even if this Court finds that "some discovery" is appropriate, Merck asserts that none of it is appropriately directed to it.[2]  Merck is wrong about both assertions.

First, at the September 15, 2009 status conference, this Court has already addressed that Objectors should be permitted to take discovery, and subsequently appointed the undersigned as

---

[1] *See* Merck's Motion at p. 5 ("no discovery could possibly be relevant to the Court's legal analysis").

[2] *Id.*

Objectors' Liaison Counsel to confer with Mr. Herman regarding the scope and scheduling of discovery.

Second, for the reasons described below, Objectors are entitled to some focused discovery of Merck, such as that proposed by the Motion for a Discovery/Briefing Schedule Relating to the Common Benefit Fee Application Objections.[3] Discovery of Merck is essential for both the Court and Objectors to understand how and why a court-approved, contractually agreed-upon 2% assessment for Common Benefit Attorneys' Fees, quadrupled to 8% during settlement negotiations to which Merck was a party but Objectors were not.

    **A.**    ***The MSA – Negotiated By Merck and the NPC Without Objectors' Presence – Purports to Quadruple Objectors' Common Benefit Fee Liability.***

At the outset of the settlement negotiations, Objectors executed Full Participation Options ("FPO"), proposed by this Court in Pretrial Order 19.  Those agreements provided that participating plaintiffs' counsel would pay common benefit counsel a fee amounting to 2% of the settlement agreement. Acting under those agreements, NPC attorneys commenced settlement discussions with Merck's counsel.  Objectors were excluded from those discussions and have no knowledge of them.  NPC and Merck emerged from the secret settlement discussions with an "agreement" that purported to authorize plaintiffs' counsel to obtain a common benefit fee of 8% -- quadruple the amount Objectors thought they would be paying if the settlement were successful.  Having had their liability for common benefit fees purportedly quadrupled without being consulted, or even informed that any common benefit fee discussions were taking place between NPC and Merck, Objectors understandably seek to find out from the two parties that *were* involved how and why Objectors' liability went from 2% to 8%.  Discovery allows attention to what justification, if any, existed for NPC obtaining dramatically increased benefits

---

[3] *See* Dckt. # 25255 (Status Report and Motion for a Discovery/Briefing Schedule Relating to the Common Benefit Fee Application Objections) at pp. 2 – 3.

for themselves and others at Objectors' expense. Objectors are clearly entitled to know these facts before the hearing on Mr. Herman's motion for approval of an 8% fee.

### B.     Discovery of Merck Will Be Focused Only on the Common Benefit Fee Provision.

The Undersigned's Motion for a Discovery/Briefing Schedule made clear that "the only factual question[] that require[s] discovery" of Merck is: "how did the settlement agreement with Merck come to contain a violation of [the FPO] contracts and was there any bargaining or consideration for the insertion of this clause?"[4]  Merck now states that "the NPC and Merck worked tirelessly to craft terms acceptable to both sides, *and each and every provision is the result of months of arm's-length negotiations*."[5]  Objectors seek only to discover what negotiations led to the provision that purports to quadruple their common benefit fee liability.

Merck's objection to the nature of the "proposed lines of inquiry for this discovery" reflects miscommunication.[6]  Merck has not been served with any discovery. Undersigned counsel never sent either the 30(b)(6) deposition notice or the *duces tecum* attached to Merck's Motion and to which Merck now objects. The undersigned sent a draft notice to Russ Herman as part of the discussions regarding the scope of discovery that the Court asked counsel to engage in.  Mr. Herman evidently shared that draft with attorneys for Merck. (Objectors have no complaint about that sharing.)  Merck therefore objects to discovery that has not been propounded. Merck's objection is instead designed to stave off all legitimate discovery.

---

[4] *See* Dckt # 25255 (Motion for a Discovery/Briefing Schedule) at p. 2.

[5] Defendant Merck & Co., Inc.'s Opposition to Motion for a Discovery/Briefing Schedule Relating to the Common Benefit Fee Application Objections and Cross-Motion for Protective Order ("Merck's Motion") at pp. 8 – 9.

[6] *See id.* at p. 1.

3

Despite what Merck would have the Court believe, Objectors do not intend to delve into every aspect of the settlement negotiations between Merck and the NPC.

Merck's attempt to avoid all discovery also highlights the MSA provision that Merck "takes no position regarding, and has no responsibility or liability for, the award of common benefit attorneys' fees and the reimbursement of costs under this Section, or the allocation of the same, and waives the right to contest these matters."[7] By emphasizing this provision, Merck presumably wants the Court to believe it has no information regarding the 8% common benefit fee. But Merck stops short of saying that. In fact, as noted, Merck states that it "worked tirelessly to craft terms acceptable to both sides, *and each and every provision is the result of months of arm's-length negotiations.*"[8] Objectors seek from Merck only one corporate representative deposition (with a *duces tecum*) to discover how the 8% provision was negotiated between the NPC and Merck.

## II.     Objectors Have a Right to Discovery Focused on the Common Benefit Fee.

Objectors have the right to discover how the NPC's negotiations with Merck resulted in a settlement provision that purports to abrogate (i) a prior order of the Court, and (ii) Objectors' contracts entered into pursuant to that order. The Court does not know how this provision came about, and Objectors do not know how this provision came about. Only Merck and the NPC know how this provision came about. Both the Court and Objectors are entitled to a factual inquiry into the circumstances leading to this MSA provision.

The Seventh Circuit in *In re General Motors Corp. Engine Interchange Litig.* held that because the settlement violated the district court's pretrial order regarding settlement discussions, and other class counsel were not informed or consulted about the settlement discussions,

---

[7] *See* Merck's Motion, pp. 2 – 3, citing § 9.2.6 of the Master Settlement Agreement ("MSA").

[8] *Id.* at pp. 8 – 9.

4

discovery into the settlement was necessary.   594 F.2d 1106, 1126 (7th Cir. 1979) ("If the negotiations did proceed in violation of the trial court's pretrial order, we think that the plaintiff-objectors are entitled to discovery to determine whether the negotiations may have prejudiced the interests of the class.").[9]  Here, Article 9 of the MSA on its face purports to abrogate Pretrial Order No. 19, and was negotiated without notice to or consultation of Objectors, despite the fact that Objectors were the ones being subjected to greater liability.   These circumstances entitle Objectors to discovery from each of the two parties to the settlement negotiations.

Merck's cases precluding discovery of class action settlement negotiations have no application here.  First, unlike the case Merck mainly discusses, neither Objectors nor the Court have seen a single document or communication explaining how the common benefit fee went from 2% to 8% in the NPC-Merck negotiations.  *Cf., In re Lupron Mktg. and Sales Prac. Litig.*, M.D.L. No. 1430, 2005 U.S. Dist. LEXIS 4039 *8 (March 16, 2005) (holding that because objecting class members had all relevant documents and the court had sufficient facts before it to approve the settlement provisions, no discovery was warranted).  Neither Objectors nor the Court yet have sufficient facts to understand why, if at all, any justification exists for NPC's obtaining benefits for themselves and others, at the expense of Objectors and in contradiction of Pretrial Order 19.

Further, Merck relies on cases precluding discovery by objecting class members.  Those cases are inapposite here, where the dispute does not threaten the broader settlement of claims. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987) ("The temptation to convert a settlement hearing into a full trial on the merits must be resisted.").

---

[9]  *In re General Motors Corp.* involved a class action settlement rather than a master settlement agreement as here.

Here, the dispute is between competing classes of plaintiffs' attorneys, and whatever the outcome, will not threaten any other provision of the MSA. [10]

Courts acknowledge the perverse incentives created "[w]hen competition among different sets of plaintiffs' counsel exists." *See Prezant v. Angelis*, 636 A.2d 915, 922 (De. 1994) (citing *Mars Steel Corp.*, 834 F.2d at 681). In such cases, "there is the ever present danger that unscrupulous counsel may 'sell out' the class in order to receive a fee." *Id*. Here, examining only the participation agreement and the MSA raises the issue of whether the NPC sold out Objectors to receive a higher fee. *Prezant* held that, despite the incentive for selling out, "Rule 23(e)'s requirement that court approval be obtained before any settlement is consummated" served as adequate protection. Here, the NPC and Merck appear to have completely disregarded the Court's Pretrial Order 19, thus providing a compelling need for discovery of their settlement discussions on common benefit fee issues. *See In re General Motors Corp.*, 594 F.2d at 1126.

## CONCLUSION

For the reasons stated above, Objectors respectfully disagree with Merck's objections to their Motion for a Discovery/Briefing Schedule Relating to the Common Benefit Fee Application Objections, urge that they be overruled, and reassert their motion for a discovery and briefing schedule on the common benefit fee application objections.

---

[10] Both *Mars Steel*, and *In re Lupron* – cases relied on by Merck -- acknowledge that when an aspect of the settlement was "in violation of the district court's order," discovery is warranted. *Mars Steel Corp.*, 834 F.2d at 684; *In re Lupron*, 2005 U.S. Dist. LEXIS at *8.

Respectfully submitted,

Objectors' Liaison Counsel

By_____
        MICHAEL A. STRATTON
        CT 08166
        STRATTON FAXON
        59 ELM STREET
        NEW HAVEN, CT 06510
        TEL:   203-624-9500
        FAX:   203-624-9100
        mstratton@strattonfaxon.com

7

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon Liaison Counsels,

Phillip Wittmann and Russ Herman, by U.S. Mail and e-mail, or by hand delivery and e-mail,

and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced

in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with

the Clerk of Court of the United States District Court for the Eastern District of Louisiana by

using the CM/ECF system, which will send a Notice of Electronic Filing in accordance with the

procedures established in MDL 1657 on ___Nov. 6___, 2009.

MICHAEL A. STRATTON

8