UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL DOCKET No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | SECTION L – DIVISION 3 |
| | * | |
| This document relates to the following | * | JUDGE FALLON |
| cases: | * | |
| | * | |
| KURELIC, NOLA W. (Case No. 05-02101) | * | |
| KJONAAS, JOAN OBO | * | MAG. JUDGE KNOWLES |
| LONNIE LEE KJONAAS (Case No. 06-05654) | * | |
| CENTRELLA, KATHRYN OBO | * | |
| JOSEPH CENTRELLA (Case No. 05-03164) | * | |
| HEAVNER, BARBARA (tolled) | * | |
| HUNT, ROBERT (Case No. 06-01505) | * | |
| ROGERS, HOWARD (tolled) | * | |
| | * | |
| Individuals, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |

## REPLY IN SUPPORT OF MOTION FOR RELIEF FROM
## PRIVATE LIEN RESOLUTION AGREEMENT

Movants, Nola Kurelic, Joan Kjonaas on behalf of Lonnie Lee Kjonaas, Kathryn

Centrella on behalf of Joseph Centrella, Barbara Heavner, Robert Hunt, and Howard

Rogers, urge the Court to grant their Motion for Relief from the Private Lien Resolution

Agreement and order that the liens asserted against them be waived.

The Movants were sent the official claimant education materials notifying them of the existence of the Private Lien Resolution (PLR) Program and educating them on the details of how potential liens could be resolved at substantial discounts. Although formal liens had not been asserted against any of the six Movants, the Movants voluntarily agreed to participate in the PLR Program based upon the representations that the PLR Program would be fair and efficient. Now, nearly nine months after the Movants agreed to participate in the PLR Program, liens have not been finalized, and the Movants' settlement proceeds continue to be withheld because lien amounts have yet to be finalized.

On November 6, 2009, the TPPs filed a response but failed to address numerous, specific issues which were the subject of the Motion. Rather than addressing the issues directly, the TPPs' papers are filled with generalities and baseless characterizations. *See* TPP's Resp. 2 (the Movants' Motion was filled "unfounded allegations and inaccurate information"). The TPPs Response is vague and unhelpful as the Court addresses the issues presented by the Motion.

## I.   The PLR Program Was Created to Resolve Potential Liens for Vioxx Injury-Related Claims Only

The Movants voluntarily agreed to participate in the PLR Program based upon representations that potential liens would be resolved efficiently and in a manner which would afford them discounted final lien amounts. *See* Vioxx Private Lien Resolution Program Claimant Information (Ex. A). The Vioxx PLRP Claimant Information was the client education material prepared by the Lien Resolution Administrator and approved by counsel for both the TPPs and the PSC. The PLRP Claimant Information notified the

Movants of the existence of the PLR Program, educated the Movants on the details of

how potential liens could be resolved at substantial discounts, and specifically provided

that ONLY Vioxx-related claims would be reimbursable through the PLR Program:

> **Audit** – If you are eligible to participate, the Lien Resolution Administrator will
> obtain from your healthcare plan(s) documentation regarding the Vioxx-related
> expenditures your healthcare provider(s) claims it has made on your behalf
> ("claimed expenditures").  Sometimes claimed expenditures might accidentally
> include claims for charges which are not related to the injury for which a person
> receives a settlement.  These are known as "unrelated charges."

> **By performing an audit of all claimed expenditures, the program helps ensure
> that all unrelated charges will be identified and removed from the lien . . . This
> ensures that the lien made against your Settlement Payment has not been
> inflated by claimed expenditures unrelated to Vioxx.**

*Id.* at 2-3 (emphasis added).  Based upon these representations, the Movants, none of

whom had formal liens asserted against their settlement payments, voluntarily agreed

to enroll.  Each of the Movants enrolled in the PLR Program during March 2009.

Despite the representation that unrelated charges would not be reimbursed

through the Program, the TPPs seek reimbursement for claims involving treatment for

conditions that are unrelated to Vioxx.  The TPPs have made claims for reimbursement

for medical expenses that were related to conditions and injuries that existed prior to

the Vioxx-related injury.  In addition, TPPs have also sought reimbursement for charges

that occurred after the Vioxx-related injury but are not related.

The TPPs fail to specifically address this issue in their Response.  In fact, the TPPs

fail to acknowledge the issue as highlighted by Movants – that the TPPs are seeking

reimbursement for claims not contemplated by the PLR Agreement.  The TPPs in their

Response state that they provided the LRA claims data for the year leading up to the

3

Vioxx-related injury.  *See* TPP's Resp. 3.  The TPPs suggest that the submission of this additional claims data was not originally contemplated by the parties. *Id.*  The omissions in the TPPs response are revealing.

First, the TPPs fail to mention why the additional claims data was requested — to enable the LRA to audit out claims for the reimbursement of medical costs associated with preexisting and unrelated medical conditions.  Second, the TPPs fail to mention that the TPPs are refusing to allow liens to be finalized due to their disagreement over the LRA auditing out claims for preexisting and unrelated medical conditions.  Third, the TPPs fail to mention that they are seeking reimbursement for claims unrelated to the Vioxx injury.  This Court noted during the last status conference on October 23, 2009, that the Program was never intended to reimburse TPPs for expensed unrelated to the Vioxx injury.  *See* Status Conf. Transcript 31-32 (October 23, 2009).

Claims for reimbursement of unrelated medical expenses should not be allowed under the PLR Program, yet the TPPs efforts to obtain such payments has delayed and continues to delay the PLR Program.  The Program as presented to all Vioxx claimants clearly represented that unrelated expenses would not be reimbursed.  Vioxx claimants have no duty to reimburse unrelated charges.  Therefore, Movants urge the Court to grant their Motion for Relief, to find that only Vioxx-related expenses are reimbursable under the PLR Program, and to order that the liens asserted against Movants' claims be deemed waived.

II.     **The TPPs Failed to Exercise Reasonable Diligence to Ensure Liens Were Finalized before the Heart Attack Final Payment**

In return for their voluntary participation, the Movants expected any potential liens to be resolved fairly and efficiently.  The PLR Agreement required the TPPs to exercise "reasonable diligence" so that liens could be finalized.  As of November 10, 2009, nearly nine months after these Movants agreed to participate in the PLR Program, potential liens have yet to be finalized.

In their motion, the Movants highlight for the Court numerous instances of how the TPPs failed to exercise reasonable diligence to ensure the efficient resolution of liens, as required by the PLR Agreement.  The TPPs failed to provide final lien data to the LRA in a timely fashion.  The TPPs submitted claims data on a rolling basis.  In other words, though some claims data may have been submitted for a claim in July, the claims data was not final and often was supplemented, changed, or withdrawn in total.  This process was ongoing on September 30th and continued into October.  This lack of final data prevented the LRA from auditing inbound lien data.  The LRA, therefore, was forced to hold in escrow 15% of the Movants' gross settlements at the time of the heart attack final payment on September 30th.  As the Movants outlined in their initial motion, this resulted in large sums being withheld from the Movants despite the fact the very small lien amounts had actually been asserted at the time of the final payment.  *See* Motion for Relief from PLRP at 4-5.

The TPPs contend that because the escrow amounts for each of the Movants has been reduced since the time of the final payment, that the Movants' motion is moot

and due to be denied.  The TPPs' response misses the point.  The escrowed amounts relating to private liens may have been reduced but the liens to this day have not been finalized.  This is inexcusable considering the amount of time available to the TPPs to submit the data to the LRA.  The only explanation is that the TPPs failed to exercise due diligence to resolve the liens of claimants who entered into the PLR Program.  During the months between the creation of the Program and the heart attack final payment, the TPPs failed to focus their efforts on fulfilling their obligations to claimants who had actually enrolled by compiling and timely submitting appropriate claims data.

According to the TPPs, claims data for Movant Kjonaas was submitted to the LRA on July 29, 2009.  Mr. Kjonaas enrolled in the PLR Program in March 2009.  By that time, Mr. Kjonaas had been issued a Claims Administrator Notice of Eligibility (10/29/08), received a Claims Administrator Notice of Points Award (1/6/09), and received an interim payment (1/30/09).  At the point of the interim payment, Mr. Kjonaas' claim had been fully evaluated and the date of the compensable injury and final risk factors were finalized.  All of the pertinent information regarding the claim itself was known before Mr. Kjonaas enrolled in the PLR Program (in fact before the Program was created).  With all of these factors in place, the lien should have been finalized long before the heart attack final payment in September 2009,[1] except that the TPPs failed to fulfill their obligations under the Program.

---

[1]  The deadline of Summer 2009 for the heart attack final payments was announced by Lynn Greer of BrownGreer during the November 2008 status conference.  *See* Status Conf. Transcript 23 (November 21, 2008).  During the March 2009 status conference, Ms. Greer reiterated that heart attack final payments were scheduled to take place during September 2009.  *See* Status Conf. Transcript 17 (March 27, 2009).  During each status conference thereafter, representatives of BrownGreer and the parties repeatedly

According to the TPPs, claims data was submitted for Movant Centrella on September 1, 2009.  Mr. Centrella enrolled in the PLR Program in March 2009.  Mr. Centrella received a Claims Administrator Notice of Eligibility (9/22/08), received a Claims Administrator Notice of Points Award (10/9/08), and received an interim payment (11/25/08).  At the point of the interim payment, Mr. Centrella's claim had been fully evaluated and the date of the compensable injury and final risk factors were finalized.  Mr. Centrella's health insurance provider, United Healthcare Services, Inc., was included in the list of insurance companies in the PLR Program Client Education materials, having agreed to participate in the Program from the outset.  The TPPs offer no explanation as to why the liens associated with Mr. Centrella's claim were not finalized despite the fact that the necessary elements to finalize any liens were in place for six months prior to the heart attack final payment.  The TPPs failed to fulfill their obligations under the Program by not finalizing the liens associated with Mr. Centrella's Vioxx-related injury.

Movant Heavner enrolled in the PLR Program in March 2009.  Ms. Heavner received a Claims Administrator Notice of Eligibility (9/22/08) and received a Claims Administrator Notice of Points Award (12/1/08).  At the time the Notice of Points was issued, Ms. Heavner's claim had been fully evaluated and the date of the compensable injury and final risk factors were finalized.  Ms. Heavner's health insurance provider, Blue Cross Blue Shield of North Carolina, was included in the list of insurance companies

---

stated that September 30, 2009 was the target date for making heart attack final payments.  Counsel for the TPPs were well aware of this deadline.

in the PLR Program Client Education materials, having agreed to participate in the Program from the outset. The TPPs offer no explanation as to why the liens associated with Ms. Heavner's claim were not finalized despite the fact that the necessary elements to finalize any liens were in place for six months prior to the heart attack final payment. The TPPs failed to fulfill their obligations under the Program by not finalizing the liens associated with Ms. Heavner's Vioxx-related injury.

Movant Hunt enrolled in the PLR Program in March 2009. Mr. Hunt received a Claims Administrator Notice of Eligibility (11/20/08), received a Claims Administrator Notice of Points Award (11/24/08), and received an interim payment (12/23/08). At the point of the interim payment, Mr. Hunt's claim had been fully evaluated and the date of the compensable injury and final risk factors were finalized. Mr. Hunt's health insurance provider, CIGNA Healthcare, Inc., was included in the list of insurance companies in the PLR Program Client Education materials, having agreed to participate in the Program from the outset. The TPPs offer no explanation as to why the liens associated with Mr. Hunt's claim were not finalized despite the fact that the necessary elements to finalize any liens were in place for six months prior to the heart attack final payment. The TPPs failed to fulfill their obligations under the Program by not finalizing the liens associated with Mr. Hunt's Vioxx-related injury.

It is clear that the TPPs failed to fulfill their obligations under the PLR Program. Even now, liens for the Movants have still not been finalized. Therefore, Movants urge the Court to grant their motion and deem any liens asserted under the PLR Program waived.

III.    **The TPPs Have No Right of Approval According to the Private Lien Resolution Agreement**

According to the terms of the Private Lien Resolution Agreement, LRA-finalized liens are not subject to the approval of the TPPs.  The PLR Agreement gives the LRA the authority to gather claims data, audit it for Vioxx-related claims, and to calculate final, adjusted, and capped lien amounts.  However, the TPPs have asserted, ultra vires, a right to approve all audited liens.  *See* Fischer Declaration.  The TPPs ignore this issue entirely in their response.  Instead, the TPPs assert that they have "not requested a single audit," clearly referencing the audit and appeal provisions of Part B.1. of the PLR Agreement.  Their response is misleading.

The TPPs have asserted to the LRA that they have a right to "approve" all final lien amounts.  This right is not contemplated under the Agreement.  Rather, the LRA is given the authority to issue final, adjusted, and capped lien amounts.  The LRA should not be delayed in fulfilling its role under the Program.  The LRA should post the final, adjusted, and capped lien amounts immediately, after properly removing all non-Vioxx injury related charges.

## Conclusion

The TPPs assert liens for charges unrelated to the Movants' Vioxx injury-related claims.  The TPPS failed to exercise reasonable diligence to ensure that liens were finalized efficiently.  Furthermore, TPPs are delaying the entire process by asserting a right to "approve" all final liens.  In so doing, TPPs have breached the PLR Agreement.  Therefore, Movants urge the Court to grant their Motion for Relief from the Private Lien

Resolution Program and deem the liens asserted against them under the PLR Program waived.

Dated:  November 13, 2009.

Respectfully submitted,

ANDY D. BIRCHFIELD, JR.
W. ROGER SMITH, III
P. LEIGH O'DELL
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36104
Telephone (334) 269-2343
Facsimile (334) 954-7555

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs' Motion for Relief from Private Lien Resolution Agreement has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by e-mail, on Merck's Counsel, Douglas R. Marvin, by e-mail, on Counsel for Third Party Payor Counsel, Thomas M. Sobol, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance with Pretrial Order No. 8A, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this the 13th day of November, 2006.

_____

P. Leigh O'Dell
Attorney for Plaintiffs
Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.

11