UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX® | * MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * SECTION L |
| This Documents Relates to: | |
| STATE OF LOUISIANA, ex rel. JAMES D. CALDWELL, ATTORNEY GENERAL, *Plaintiff*, | * JUDGE FALLON |
| | * MAG. JUDGE KNOWLES |
| v. | |
| MERCK SHARPE & DOHME CORP., *Defendant*. | |
| Case No. 05-3700 | |

## ORDER CONCERNING USE OF CERTAIN THIRD PARTY INFORMATION

IT IS HEREBY STIPULATED AND AGREED, AND FOR GOOD CAUSE SHOWN, ORDERED THAT:

1. This Order shall apply only in the action entitled State of Louisiana, ex rel. James D. Caldwell, Attorney General v. Merck Sharpe & Dohme Corp. (Case No. 05-3700) (the "Louisiana Action").

2. This Order shall govern the treatment of certain third party information. "IMS Information" shall mean any data, information, software or documentation related thereto purchased from or licensed by IMS Health Incorporated ("IMS Health") or any of its affiliated companies, which is produced, used or distributed in the Louisiana Action, whether or not exchanged between the parties thereto. "IMS Information" includes but is not limited to data

from any of the following information services: Xponent® suite of services ("Xponent"), National Prescription Audit™ ("NPA"), National Disease and Therapeutic Index™ ("NDTI"), and Integrated Promotional Services™ ("IPS"). "IMS Information" shall also include any data derived in whole or in part from any of the IMS Information, as well as any and all copies, compilations, notes, abstracts, summaries and derivative works of or created from any of the IMS Information.

      3.    All terms and definitions of Pretrial Order No. 13C (the "Supplemental Protective Order"), entered by the Court on May 19, 2009, are incorporated into this Order, except as specified herein.

      4.    IMS Health is hereby ordered to provide its consent to the release of certain IMS Information as hereinafter identified and subject to the terms of this Order. Such consent does not transfer any right, title, license, or other interest in any IMS Information. Further, such consent does not extend to the copying or transfer of any IMS Information except as expressly provided herein. The terms of any license agreements between IMS Health and any of the parties shall remain in effect.

      5.    The consent by IMS Health for the Louisiana Action extends to the following:

        (a)    NPA and IPS data from January 1999 to December 2007, relating to Vioxx and its therapeutic class;

        (b)    Subject to the limitations in paragraph 9, Xponent data from January 1999 to December 2007, relating to Vioxx and its therapeutic class (the "Xponent Data Records"); and

        (c)    NDTI data from 1999-2004 and 2002-2007.

      6.    All IMS Information is hereby designated as HIGHLY CONFIDENTIAL INFORMATION furnished pursuant to the terms of the Supplemental Protective Order. No further designation is necessary, and no party shall object to the propriety of this designation.

Notwithstanding the foregoing, the Supplying and Receiving Parties shall mark any IMS Information, using the methods in paragraphs 7 and 8 of the Supplemental Protective Order.

7. Any party receiving IMS Information shall treat it as proprietary information and shall not use or disclose the information except for the purposes set forth in the Supplemental Protective Order.

8. To the extent that any IMS Information contains personally identifiable information subject to various privacy laws, including but not limited to state data breach laws, the Receiving Party shall comply with all such relevant laws. In the event of any loss of IMS Information it shall be the obligation of the Receiving Party to comply with notice and other requirements of any applicable privacy or data breach laws.

9. With regard to Xponent Data Records, all such Xponent Data Records shall be provided on a de-identified basis, except for Xponent Data Records for the State of Louisiana ("Louisiana Xponent Data"). Specifically, Defendant shall not produce information identifying prescriber name, street address, city, zip code or prescriber specialty.

10. Consistent with the provisions in ¶ 1, IMS Information shall be used only in the Louisiana Action and shall not be placed in any information repository accessible to any person or entity not directly involved in the Louisiana Action.

11. To the extent that any party or counsel for any party transmits, creates, develops or otherwise establishes on any digital or analog machine-readable device, recording media, computers, discs, networks or tapes any information, files, databases or programs that contain IMS Information, that party and/or its counsel must take all necessary steps to insure that access to that transmission, electronic or magnetic media is properly restricted to those persons who, by the terms of this Order, may have access to IMS Information. Electronic transmission of IMS Information shall occur only through secured electronic communication channels. The

Receiving Party of any IMS Information must ensure that any downloading to desktop platforms will be made only to password-protected desktops or laptops. Users will be advised that they are prohibited from downloading IMS Information to any removable storage device. If any IMS Information is downloaded to a laptop, the laptop will be configured to restrict access in the event the laptop is lost or stolen. Users will destroy IMS Information downloaded to their desktops or laptops upon completion of the work or services they are to perform. If IMS Information is made available or contained in hard copy or printed format, then the Receiving Party and/or an Approved User shall ensure the secure management, protection and disposal of IMS Information. The Receiving Party must ensure that anyone who receives IMS Information is adequately trained on the restrictions described in this Order.

12. Any IMS Information received by a party shall be used by that party solely for the purpose of conducting this litigation and shall in no event be used for any business, competitive, personal, private, public or other purpose, except as required by law.

13. The parties acknowledge that IMS Information, although appropriate for its intended purpose of supporting business and marketing analyses in industries such as the pharmaceutical industry, contains data that is susceptible to error or variance, as set forth in the documentation accompanying the IMS Information, and is not intended to be used to establish any fact. Accordingly, while prescriber-level data across a group of prescribers is accurate and reliable, the data with respect to any particular prescriber may not be accurate as to that particular prescriber. For the foregoing reasons, IMS Health shall not be called by any party to provide testimony to substantiate IMS Information.

14. Access to IMS Information shall be limited in accordance with the terms of Paragraph 11 of the Supplemental Protective Order, except that Louisiana Xponent Data shall be subject to the following additional restrictions:

4

  (a) Louisiana Xponent Data shall be provided only to those Technical Analysts or Statistical Analysts who require access to the detailed Louisiana Xponent Data ("Approved Users"). Any Party receiving Louisiana Xponent Data pursuant to this Order (the "Recipient") shall maintain a list of Approved Users and shall identify a single point of contact responsible for maintaining access controls over Louisiana Xponent Data;

  (b) reports, deliverables, and analyses produced by using Louisiana Xponent Data which are discoverable and may be used at deposition, trial, or hearing shall always be presented on an anonymous basis to ensure the privacy of any individual prescriber. In particular, names of prescribers shall be redacted or referred to on a de-identified basis and shall not be combined with other demographic fields of data, including but not limited to zip code or specialty, in order to avoid the risk of re-identification; however, preparation and use of non-discoverable reports, deliverables and analyses which contain prescriber identifiable Louisiana Xponent Data is limited to Approved Users and is subject to the security, document management and other obligations contained in this Protective Order. Notwithstanding the foregoing, if the parties determine that there is an unavoidable litigation need to use the Louisiana Xponent Data supporting any such reports, deliverables and analyses (the "Reliance Materials") on an identifiable basis for cross examination of Approved Users who relied on Reliance Materials, then the parties will, as soon as practicable, provide notice to IMS Health or its counsel, and in good faith, meet and confer with IMS Health or its counsel to determine the limitations, if any, on the use of such Reliance Materials. In that instance, the parties agree to negotiate, in good faith, reasonable limitations which will ensure the confidentiality of the data and the privacy of individual prescribers.

  (c) at no time will the number of Approved Users exceed five people for any Recipient;

  (d) the Recipient may maintain no more than a single copy of the Louisiana Xponent Data for each Approved User; and

  (e) prior to electronic or other transmission of Louisiana Xponent Data, it shall be saved in an encrypted format, with the encryption credentials (e.g., log-in and password) transmitted separately.

15. Paragraphs 14 and 15 of the Supplemental Protective Order shall not apply, as there shall be no further disclosure of IMS Information.

16. The provisions in paragraphs 9, 11 and 12 of the Supplemental Protective Order shall apply to the use of any IMS Information at depositions, except that the transcript of any

5

deposition at which IMS Information is used shall be treated as Highly Confidential Information without need for further designation. The party who noticed the deposition shall be responsible for ensuring that the transcript is appropriately marked.

17. At least 30 days prior to the use of any IMS Information for any purpose at the trial of the Louisiana Action, the parties shall meet and confer with IMS Health or its counsel to determine the limitations, if any, on such use. With respect to any other hearing before a judicial officer in the Louisiana Action, the parties shall use their best efforts to meet and confer with IMS Health or its counsel at least 30 days prior to such hearing, but in no event less than 15 days prior to such hearing, to determine the limitations, if any, on use of IMS Information at such hearing.

18. In no event shall any IMS Information containing prescriber-identifiable information be used in a form which could reveal the identity of any particular prescriber at any deposition, discovery response, trial or hearing. However, IMS Information can be used in the form set forth in 14(b) above.

19. In no event shall any disclosure of IMS Information be made to any competitor of IMS Health, or to any person who, upon reasonable and good faith inquiry, could be determined to be an employee of any competitor of IMS Health, irrespective of whether that person is retained as an expert in this action. For purposes of this paragraph, the following entities shall be deemed competitors of IMS Health: (a) Dendrite International, Inc., (b) Verispan, LLC and Surveillance Data Inc., (c) Source Healthcare Analytics, Inc., (d) Health Products Research, Inc., (e) Health Market Sciences, Inc., (f) Cegedim, S.A., (g) Taylor Nelson Sofres plc, (h) NFO WorldGroup, Inc., and (i) Gfk NOP Inc., (j) Wolters Kluwer, (k) MarketRx, Inc./Cognizant, (l) ImpactRx, (m) WebMD Health Corporation, (n) MedPro, (o) SK&A Healthcare Information Solutions, and each of their respective employees, affiliates, subsidiaries, successors and assigns.

20. No person or entity that obtains access to any IMS Information shall in any manner whatsoever attempt to reverse engineer or disassemble such information or attempt to ascertain the methodologies by which such information was obtained, sorted, projected or manipulated. No person or entity that obtains access to IMS Information shall attempt to identify any person or entity (including any patient, consumer, outlet, supplier, plan, pharmacy or prescriber) that is not readily identifiable in the IMS Information.

21. No person or entity that obtains access to any IMS Information shall attempt to contact, for the purpose of obtaining testimony or otherwise, any person or entity (including any patient, consumer, outlet, supplier, plan, pharmacy or prescriber) identified in or identifiable from the IMS Information. Notwithstanding the foregoing, if any of the aforementioned have been or can be independently derived from other sources, including but not limited to Medicaid claims files, without reference to IMS Information, then the foregoing limitations shall not apply to such independently derived information.

22. Notwithstanding anything to the contrary in paragraph 22 of the Supplemental Protective Order, this shall serve as written notice pursuant to paragraph 22 of the Supplemental Protective Order that within thirty (30) days after the final resolution of the Louisiana Action, all IMS Information, including all copies, abstracts and/or summaries, that is not retained as privileged communications, work product or court-filed documents, shall be destroyed. The parties shall certify such destruction and send such certifications to IMS Health or its counsel. If the parties hereto receive notice from the Court that the IMS Information filed with the Court will or may be released and/or destroyed, the parties will immediately notify IMS Health or its counsel.

23. Upon the final resolution of the Louisiana Action, the provisions of this Order shall continue to be binding. This Court expressly retains jurisdiction over the Louisiana Action

for the purpose of enforcing the provisions of this Order following the final resolution of that Action.

24.  IMS Health shall be notified if the terms of the Supplemental Protective Order are amended or modified.

SO ORDERED:

Dated:  November 30, 2009

JUDGE ELDON E. FALLON