UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
-----------------------------------------------------------------
IN RE: VIOXX®                                MDL Docket No. 1657

PRODUCTS LIABILITY LITIGATION                SECTION L
-----------------------------------------------------------------
                                             Judge Eldon E. Fallon
                                             Magistrate Judge Knowles

THIS DOCUMENT RELATES TO
PLAINTIFFS LISTED IN EXHIBIT A TO
MERCK "THIRD" MOTION TO DISMISS:

| Case | Case No. |
|---|---|
| Agard, et al., v. Merck & Co. [David Agard, James Demoski] | 2:05-cv-01089 |
| Aljibory, et al., v. Merck & Co. [Viola Santacrose] | 2:05-cv-01090 |
| Cavallo, et al., v. Merck & Co. [Matthew Cavallo] | 2:05-cv-01513 |
| Core, et al. v. Merck & Co. [Richard Core] | 2:05-cv-02583 |
| Gates, et al., v. Merck & Co. [Scott Berthel] | 2:05-cv-06221 |
| Connolly, et al., v. Merck & Co. [Majorie Curtis, Kristine Hia, and Maurice Hoyt] | 2:06-cv-02708 |
| Kurtz v. Merck & Co. [Mary Kurtz] | 2:06-cv-05779 |
| Dier, et al., v. Merck & Co. [Timothy Mack] | 2:05-cv-01088 |
| Holobosky, et al., v. Merck & Co. [Ann Mannino] | 2:05-cv-01091 |
| DuFresne v. Merck & Co., [Frank Spencer] | 2:08-cv-03220 |

-----------------------------------------------------------------

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECUSAL OF THIS COURT

### INTRODUCTION

Plaintiffs David Agard, James Demoski, Viola Santacrose, Marilyn Core [Richard Core], Scott Berthel, Marjorie Curtis, Kristine Hia, Maurice Hoyt, Mary Kurtz, Timothy Mack, Ann Marie Mannino, and Lori DuFresne [Frank Spencer], by and through their counsel, Ronald R. Benjamin, move this Honorable Court for an order granting its recusal pursuant to 28 U.S.C. § 455 (a) or (b)(1), and such other and further relief as is just and proper, on the 1grounds that the Court appears to

have engaged in *ex parte* communications with counsel for defendant Merck & Co., Inc. ("Merck"), at a time when plaintiffs' counsel was not present, and relied on other extrajudicial sources to develop derogatory information regarding plaintiffs' counsel that is being used to dismiss the plaintiffs' cases.

## STATEMENT OF FACTS

On October 29, 2009, counsel for the parties appeared before the Court for oral argument on Merck's motion to dismiss the cases of the twelve (12) plaintiffs noted in the caption whose cases are pending before the Court which share the common feature of being represented by Ronald R. Benjamin. A copy of the transcript of the hearing is annexed to the motion as Plaintiffs' Exhibit A.

At the opening of the hearing, this Court referred not only to a brief history of the Vioxx litigation and PTO 28, but then, in reviewing Merck's allegations concerning the status of compliance with discovery requirements of PTO No. 28, this Court stated:

> Further, Merck argues that this noncompliance is consistent with the general pattern of defiance and disregard for this Court's orders; and, actually, other court orders also since other courts in New Jersey and elsewhere also required that this material be submitted, or materials similar to this, and Mr. Benjamin failed to follow those orders.
> In fact, in New Jersey, the court asked him to leave the court, or certainly not sit with the other attorneys, since he was not only not in compliance with following court orders, but he was not in compliance with even making his appropriate appearance before that particular court.

Pl. Ex. A, Transcript, at p. 6.

Although Merck did make broad, sweeping and self-serving accusations

against plaintiffs' attorney in this litigation, Merck's opening and reply memoranda did not mention New Jersey, nor did Merck submit any such information into the record that was before this Court, nor has there been any reported decision, nor any normal periodical or publication available on what transpired in New Jersey.

It would appear that the New Jersey court information was derived in the course of *ex parte* communication with defense counsel for Merck or other extrajudicial source, since the proceedings referred to occurred before the judge presiding over the New Jersey Vioxx cases, namely, the Honorable Carol Higbee, who had denied counsel's motion to appear *pro hac vice* for plaintiffs unrelated to the actions of the twelve plaintiffs before this Court.

It is further submitted that, if this Court in fact engaged in such conduct, it would provide a basis for inquiry into the question of whether or not PTO 28 was written by Merck's counsel, rather than this Court, particularly since it was issued by this Court November 9, 2007, and is the basis for Merck seeking dismissal on the motion presently before the Court under Rule 41 for failure to prosecute.

It cannot be disputed that the definitions sections in PTO 28 are identical to the exclusion of the injuries set forth in the Master Settlement Agreement (MSA) also announced on November 9, 2007. Yet, this Court has noted that the negotiations leading up to the MSA were held with great secrecy, and further stated that it "played no role in drafting the private settlement agreement." December 10, 2008 Order and Reasons at page 6. Moreover, in its recent brief in the Fifth Circuit, Merck has asserted that PTO 28 was "carefully calibrated" (*see excerpt of Merck brief*

*annexed to motion as Plaintiffs' Exhibit B, at p. 39),* indicating Merck has direct knowledge or participation in how PTO 28 was written.

According to Merck, PTO 28 gives Merck an indisputable enforcement mechanism of dismissal of individual plaintiff cases for failure to make any disclosures required, a clear litigation advantage to Merck against non-settling plaintiffs, even those who had previously provided blank authorizations to Merck to obtain their pharmacy and medical records well in advance of November 9, 2007. At the same time, it is clear motions and decisions made subsequent to Merck's payment of $4.85 billion are distinctly different from the motion practice that took place prior to that date.

After November 9, 2007, the Court appeared to accept the contentions of defendant Merck observing, "both the Plaintiffs Steering Committee and Merck contend that Mr. Benjamin is merely employing the same failed discovery tactics that resulted in dismissal of his clients cases in the In re: Diet Drug Litigation.") December 10, 2008 Order and Reasons, p 9. n5. Neither Merck nor the Court actually set forth facts to support that premise.

The fact that Benjamin has argued since November 9, 2007, and in fact remains firmly convinced that the Plaintiffs' Steering Committee was bought off by Merck for an agreement to not oppose payment of $480 million in attorneys fees from the $4.85 billion is not sanctionable conduct, whether characterized as discovery abuse or any other impropriety that would warrant either sanction or admonition. 2Although there is no conduct on Benjamin's part that is either sanctionable or

outside the ambit within which all counsel in our adversarial system must operate, Merck has no qualms now once again castigating Benjamin and on the instant motion asserts there is a " failure to comply with the terms of PTO 28 as to the specific plaintiffs is consistent with the general pattern of defiance and disregard for this Court's orders and authority that has been exhibited on behalf of Mr. Benjamin's clients in this MDL litigation". *Merck Reply Memorandum, p. 2.*

Although it should be no surprise Merck will use whatever means available to strip plaintiffs of their retained counsel, for this Court to issue its October 30, 2009 order directing Mr. Benjamin to meet and confer with counsel for Merck "in order to determine how his submissions have failed to comply with the requirements of PTO 28 and to identify what must be produced to achieve compliance" and then to produce those materials no later than December 13, 2009 or have the cases "dismissed with prejudice" would appear to be clear and convincing evidence of bias in that the Court pronounces judgment without a passing glance at the evidence or whether dismissal is appropriate.

Although the Court has held no evidentiary hearing, plaintiffs have contended they "met their disclosure requirements prior to the entry of PTO 28", which would end the matter with regard to the discovery which is the subject matter of Merck's motion. This Court not only pronounces judgment without affording plaintiffs, let alone Mr. Benjamin notice and opportunity to be heard on the issues raised by Merck which range from alleged lack of compliance with PTO 28 as to individual plaintiffs and so-called general defiance of this Court's orders and authority by Benjamin.

In response to the Court's opening statements at the October 29 argument date, plaintiffs' counsel informed this Court that:

> I think I'd like to begin with the fact that it is virtually impossible to respond to broad conclusory allegations, such as Your Honor referred to, with regard to pattern of defiance or disregard, particularly in connection with referring to the New Jersey courts, where I have not yet even been admitted.
> I do not know what information Merck provided Your Honor in connection with what transpired in New Jersey, but there was a motion for me to be admitted pro hac vice, and that is the only issue. As of today, I have not been admitted.

*Id.*, Transcript, p. 9. Merck's motive in castigating Mr. Benjamin is obvious. However, that this Court gives voice to *ex parte* or extrajudicial sources regarding the New Jersey court proceedings, in which none of these plaintiffs is involved and which has nothing to do with their cases, evinces a bias against them and partiality for Merck. Indeed, in framing the October 30, 2009 order in terms of compliance by Mr. Benjamin rather than that of the plaintiffs, the Court appears to squarely place the same in issue but does not appear to contemplate any evidentiary hearing with regard to the same based on a bias against plaintiffs represented by Mr. Benjamin that subjects them to dismissal of their cases due to broad, generalized statements of alleged patterns.

At a hearing, plaintiffs would be able to test ludicrous statements made by Merck such as, "from November 9, 2007 until August 21, 2009, only plaintiffs had the ability to go out and collect the pharmacy and medical records. And PTO 28 imposed upon plaintiffs the obligation to go out and do precisely that." *Merck reply memorandum dated October 27, 2009, at p. 3, para. 8.* Indeed, these arguments were

made for the first time in reply to plaintiff's opposition.

Plaintiffs can present proof that, in most of these cases prior to November 9, 2007, Merck not only obtained authorizations to secure pharmacy and medical records, but that the same were sufficient to meet the plaintiffs' discovery obligations, that Merck in fact utilized the authorizations provided by plaintiffs to obtain records, most importantly, that any alleged deficiencies in information available to Merck stemmed from its own willful or negligent refusal to secure the same.

Plaintiffs now turn to their argument in support of recusal.

## ARGUMENT

Under 28 U.S.C. §455(a), "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Under 28 U.S.C. §455(b)(1), a judge "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

The Fifth Circuit has stated the rules generally applicable to motions for recusal that are pertinent to the instant cases as follows:

> A showing of potential bias by a judge against a party's attorney does not generally suffice to require a judge to disqualify himself or herself under § 455(a). Rather, the general rule, adopted in this and several other circuits, is that "an appellate court, in passing on questions of disqualification[,] ... should determine the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party rather than counsel." _Davis v. Board of Sch. Comm'rs_, 517 F.2d 1044, 1052 (5th Cir.1975); see _FTC v. Amy Travel Serv., Inc._, 875 F.2d 564, 576 n. 13 (7th Cir.1989) ("Friction between court and counsel does not constitute bias."); _In re Cooper_, 821 F.2d 833,

> 838 (1st Cir.1987); *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1399 (8th Cir.1983); *United States v. Sibla*, 624 F.2d 864, 869 (9th Cir.1980).

Trevino v. Johnson, 168 F.3d 173, 179 (5th Cir. 1999). However, the Fifth Circuit went on to rule:

> Bias against a party's attorney does not require disqualification unless "it can also be shown that such a controversy would demonstrate a bias for or against the party itself." *Henderson v. Department of Pub. Safety & Corrections*, 901 F.2d 1288, 1296 (5th Cir.1990) (citing *Davis*); see also *In re Cooper*, 821 F.2d at 839 ("It is true that occasionally exceptional circumstances do arise where a judge's attitude toward a particular attorney is so hostile that the judge's impartiality toward the client may reasonably be questioned."); *In re Beard*, 811 F.2d 818, 830 (4th Cir.1987) ("Bias against an attorney is not enough to require disqualification under § 455 unless petitioners can show that such a controversy would demonstrate a bias against the party itself.").

*Id., at 179-80.* In Liteky v. United States, 510 U.S. 540, 555 (1994), the Supreme Court ruled that:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings ... do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

In the instant case, *ex parte* communications or extrajudicial sources of information about plaintiffs' counsel have been used, and continue to be used, to support outright dismissal of the cases of non-settling plaintiffs he represents in this Vioxx litigation, even when these plaintiffs had nothing to do with the Diet Drug Litigation or with the New Jersey cases in which Mr. Benjamin was not admitted *pro hac vice*.

It is respectfully submitted that only this Court and Merck know their roles in crafting what Merck has referred to as the carefully calibrated PTO 28, particularly with respect to the discovery requirements and the dismissal enforcement

mechanism. However, these twelve plaintiffs clearly allege circumstances suggesting that a reasonable person would harbor doubts about this Court's impartiality toward them, since it is clear that their cases are being dismissed based on Merck's sweeping generalizations about "patterns" that are not based on any examination of the facts, namely, that these twelve plaintiffs have provided profile forms and blank authorizations and expert reports, while Merck appears confident it has no burden to explain why it made no effort to utilize the same prior to November 9, 2007, as was contemplated by this Court's prior orders such as PTO 18. Instead, this Court apparently agrees with Merck that it is entitled to a free pass because of PTO 30's *post hoc* stay on discovery, even though Merck could have continued to use the authorizations without running afoul of PTO 30.

Plaintiffs submit that the bias against them as non-settling litigants raised here "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case". United States v. Clark, 605 F.2d 939, 942 (5th Cir. 1979) (per curiam). The circumstances discussed above make even clearer the litigation advantages provided to Merck under PTO 28 which appears to have been calibrated in conjunction with the extrajudicial "secret" negotiations surrounding the MSA. No reasonable person could ignore the coincidences of November 9, 2007, or the fact that PTO 28 is entirely partial to Merck, or the fact that these non-settling plaintiffs' attorney is being labeled defiant and noncompliant to bolster Merck's claimed right to dismissal under PTO 28's draconian enforcement mechanism regardless of the applicable facts and

<u>Joint Legis. Comm. on Perf. & Expenditure Rev. of the State of Miss.</u>, 637 F.2d 1014, 1021 (5th Cir. 1981)), of which they are members, namely, non-settling plaintiffs who want to go to trial rather than settle.

With all due deference, this Court's October 30 order and comments about plaintiffs' attorney in matters outside this proceeding show partiality towards Merck and deep-seated bias and antagonism towards the non-settling plaintiffs, and would cause a reasonable person to question this Court's impartiality, particularly with respect to PTO 28, thus requiring recusal.

## CONCLUSION

Plaintiffs respectfully submit that this Court should enter an order recusing or disqualifying itself in their cases, along with such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

*[signature]*

RONALD R. BENJAMIN Fed/ No. 110131
LAW OFFICE OF RONALD R. BENJAMIN
126 Riverside Drive, P O. Box 607
Binghamton, New York 13902-0607
607/772-1442

Attorneys for Plaintiffs in Above-Captioned Actions