UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
---------------------------------------------------------------
IN RE: VIOXX®                                            MDL Docket No. 1657

PRODUCTS LIABILITY LITIGATION                            SECTION L
---------------------------------------------------------------
                                              Judge Eldon E. Fallon
                                              Magistrate Judge Knowles

**THIS DOCUMENT RELATES TO
PLAINTIFFS LISTED IN EXHIBIT A TO
MERCK "THIRD" MOTION TO DISMISS:**

| | |
|---|---|
| Agard, et al., v. Merck & Co. [David Agard, James Demoski] | Case No.: 2:05-cv-01089 |
| Aljibory, et al., v. Merck & Co. [Viola Santacrose] | Case No.: 2:05-cv-01090 |
| Cavallo, et al., v. Merck & Co. [Matthew Cavallo] | Case No.: 2:05-cv-01513 |
| Core, et al. v. Merck & Co. [Richard Core] | Case No.: 2:05-cv-02583 |
| Gates, et al., v. Merck & Co. [Scott Berthel] | Case No.: 2:05-cv-06221 |
| Connolly, et al., v. Merck & Co. [Majorie Curtis, Kristine Hia, and Maurice Hoyt] | Case No.: 2:06-cv-02708 |
| Kurtz v. Merck & Co. [Mary Kurtz] | Case No.: 2:06-cv-05779 |
| Dier, et al., v. Merck & Co. [Timothy Mack] | Case No.: 2:05-cv-01088 |
| Holobosky, et al., v. Merck & Co. [Ann Mannino] | Case No.: 2:05-cv-01091 |
| DuFresne v. Merck & Co., [Frank Spencer] | Case No.: 2:08-cv-03220 |

---

## PLAINTIFFS' MOTION FOR RECUSAL OF THIS COURT

Plaintiffs David Agard, James Demoski, Viola Santacrose, Marilyn Core [Richard Core], Scott Berthel, Marjorie Curtis, Kristine Hia, Maurice Hoyt, Mary Kurtz, Timothy Mack, Ann Marie Mannino, and Lori DuFresne [Frank Spencer], by and through their counsel, Ronald R. Benjamin, hereby move this Honorable Court for an order granting its recusal pursuant to 28 U.S.C. § 455 (a) or (b)(1), and such other and further relief as is just and proper. In support of this motion, plaintiffs state the following matters:

    1. The instant motion seeks to have the Court recuse itself on the grounds

that the Court appears to have engaged in *ex parte* communications with counsel for defendant Merck & Co., Inc. ("Merck"), at a time when plaintiffs' counsel was not present, during which derogatory information regarding plaintiffs' counsel was communicated to the Court.

2. On October 29, 2009, counsel for the parties appeared before the Court for oral argument on Merck's motion to dismiss the cases of the twelve (12) plaintiffs noted in the caption whose cases are pending before the Court and share the common feature of being represented by Ronald R. Benjamin. A copy of the transcript of the hearing is annexed hereto as **Plaintiffs' Exhibit A**.

3. At the opening of the hearing, this Court referred not only to a brief history of the Vioxx litigation and PTO 28, but then, in reviewing Merck's allegations concerning the status of compliance with discovery requirements of PTO No. 28, this Court stated:

> Further, Merck argues that this noncompliance is consistent with the general pattern of defiance and disregard for this Court's orders; and, actually, other court orders also since other courts in New Jersey and elsewhere also required that this material be submitted, or materials similar to this, and Mr. Benjamin failed to follow those orders.
> In fact, in New Jersey, the court asked him to leave the court, or certainly not sit with the other attorneys, since he was not only not in compliance with following court orders, but he was not in compliance with even making his appropriate appearance before that particular court.

Pl. Ex. A, Transcript, at p. 6.

4. Although Merck did make broad, sweeping and self-serving accusations against plaintiffs' attorney in this litigation, Merck's opening and reply memoranda did not mention New Jersey, nor did Merck submit any such information into the

record that was before this Court, nor has there been any reported decision, nor any journal, periodical or publication available on what transpired in New Jersey. Consequently, it would appear this Court received the information in the course of *ex parte* communication with defense counsel for Merck or from other extrajudicial sources.

5. It is respectfully submitted that, other than Merck's counsel present in the New Jersey court, the only other source of information available on the aforesaid factual matters stated by this Court would have been the judge presiding over the New Jersey state Vioxx litigation, namely, the Honorable Carol Higbee, who would not have misrepresented what transpired, leaving Merck's counsel as the only other source of information available to the Court.

6. In that regard, plaintiffs' counsel informed this Court at the October 29th hearing that:

> I think I'd like to begin with the fact that it is virtually impossible to respond to broad conclusory allegations, such as Your Honor referred to, with regard to pattern of defiance or disregard, particularly in connection with referring to the New Jersey courts, where I have not yet even been admitted.
> I do not know what information Merck provided Your Honor in connection with what transpired in New Jersey, but there was a motion for me to be admitted pro hac vice, and that is the only issue. As of today, I have not been admitted.

*Id.*, Transcript, p. 9.

7. It is further submitted that if this Court in fact engaged in such conduct, it would provide a basis for inquiry into the question of whether or not PTO 28 was written by Merck's counsel, rather than this Court, particularly since it was issued by

this Court on November 9, 2007, and is now the basis for Merck seeking dismissal on the motion presently before the Court.

8. An inference that Merck, not the Court, is responsible for PTO 28 is permitted without need to discuss the preservation and discovery requirements set forth in PTO 28, based on the definitions sections since the latter are identical to the definitions and exclusion of injuries set forth in the Master Settlement Agreement (MSA), also announced on November 9, 2007.

9. This Court has noted that the negotiations leading up to the MSA were held with great secrecy, and further stated that it "played no role in drafting the private settlement agreement." December 10, 2008 Order and Reasons at page 6.

10. It is therefore submitted a plausible explanation for what are, at minimum, distinct similarities which, however characterized, must be conceded, as must the fact that PTO 28 affords Merck significant advantages in this litigation. Indeed, this Court acknowledged that Merck is now claiming the stay in PTO 30 somehow absolves Merck of its failure to pursue discovery in prior years, stating:

> Merck also points out that after receiving medical releases from the listed plaintiffs, the discovery was stayed and that they [Merck] were, therefore, unable to seek the required medical records. Only plaintiffs could have sought these records. And, accordingly, according to Merck, the pretrial order required them [plaintiffs] to do so.

*Ex. A., Transcript, p. 7.*

11. In response, plaintiffs' counsel pointed out that PTO 30 did not issue until November 2007, and authorizations had been provided to Merck going back to 2005 in most cases. *Id., p. 11.*

12. In any event, there is an appearance that this Court has adopted Merck's interpretation of PTO 28, and that any motion by Merck to dismiss the cases of plaintiffs represented by Benjamin will be granted without regard to the merits of the individual cases based on *ex parte* communications and other extrajudicial sources that brand any motion or opposition that these non-settling plaintiffs make as being part of a pattern of defiance and noncompliance, while leaving Merck free to make broad sweeping assertions that have little to do with reality or its own conduct in failing to pursue medical records prior to November 9, 2007.

13. Even with the similarities between the MSA in the definitional section set forth in PTO 28, it is respectfully submitted that, prior to October 29, 2009, there was an insufficient basis to inquire as to the authorship of PTO 28, except to argue that no plaintiff's attorney in any adversarial proceeding would ever have consented to its issuance without opposition since it unilaterally affords tremendous advantages to defendant Merck, not only with regard to discovery but with regard to imposing financial obligations upon the plaintiffs not contemplated by the Federal Rules of Civil Procedure, that have no ostensible purpose except to drive up plaintiffs' litigation costs. However, in its recent brief in the Fifth Circuit, Merck has asserted that PTO 28 was "carefully calibrated to the present phase of the Vioxx litigation" (*see excerpt of Merck brief annexed hereto as **Plaintiffs' Exhibit B**, at p. 39*), indicating Merck has direct knowledge of and participated in how PTO 28 was written, since this was a statement made without attribution. Indeed, this increases the likelihood that Merck did not strain itself in getting medical records because of

the secret MSA negotiations that it knew would result in PTO 28 thrusting that burden back on non-settling plaintiffs who wanted to continue to litigate.

14. Indeed, PTO 28 was issued without motions practice, and the only "phase" it coincided with in November 2007 was the announcement of the theretofore secret MSA.

15. Although in these twelve cases Merck sought dismissal pursuant to Rule 41, its counsel repudiated the same on October 29, stating, "we are actually bringing this motion under PTO 28, and there are enforcement mechanisms that are written into the order itself, and that's the basis of the motion." *Pl. Ex. A, Transcript, p. 14.* Thus, although the authorship of PTO 28 may have additional repercussions outside the instant motion, the relevance here pertains to demonstrating prejudice from the *ex parte* communication with defense counsel which is the subject of the instant motion for recusal and the use of the same to support dismissal of these plaintiffs' cases.

16. In point of fact, Merck is recycling its unsubstantiated arguments of a "pattern of defiance" on Benjamin's part that only cropped up *after* the MSA and PTO 28 came into existence on November 7, 2007, to seek dismissal of the cases of these twelve non-settling plaintiffs, most of which have been pending in MDL 1657 since 2005, as evinced by their case numbers in the caption. At the October 29 hearing, Benjamin argued:

> [I]n this litigation, [we] have made every effort to comply with every order that this Court has issued in connection with everything from discovery to appearing when ordered to appear.
> So that, in connection with my own conduct, to the extent anybody is

> alleging that I have willfully done anything wrong, all I have tried to do here is to assure my clients get their day in court.
>
> I have recommended against settlement. I continued to believe that clients can do better. And while I understand that the Court has a general duty that goes outside and beyond individual cases, it's still the law that if a plaintiff wants to proceed, they can.
>
> Now, on the particular motion before the Court, I think Merck is attempting to turn everything upside down by suggesting and bringing a motion under Rule 41, failure to prosecute, when as of March of this year, we have before the Court remand motions which advises Merck in no uncertain terms that from the plaintiff's perspective, all generic issues are complete and that the Court has discretion to remand the actions and let any additional individual issues be addressed in the courts in New York.

*Pl. Ex. A, Transcript, p. 10.* The remand motions are clearly appropriate advocacy, but no order has issued on the same, and instead these plaintiffs are facing dismissal of their individual cases based on generalized attacks on their counsel being communicated *ex parte* and based on extrajudicial sources.

17. If the Court, because of the noblest of motives, nevertheless divested itself of the impartiality necessary to afford each party the due process of law which is embodied in our system of justice, it is certainly relevant to the instant motion.

18. The decisions made subsequent to Merck's payment of $4.85 billion are distinctly different from the motion practice that took place prior to that date, and it is respectfully submitted there was an alignment of the parties which deprived the Court of the adversarial presentations so necessary to ferret out the truth and give the impartial consideration and determinations based on merit which are the cornerstone of our system of justice.

19. That there is a continuing and personal post-MSA bias and lack of impartiality adversely impacting the non-settling plaintiffs represented by Benjamin

is evinced by the fact that, with respect to the prior dismissal of other plaintiffs' cases represented by attorney Benjamin, this Court appeared to accept the contentions of defendant Merck observing, "both the Plaintiffs Steering Committee and Merck contend that Mr. Benjamin is merely employing the same failed discovery tactics that resulted in dismissal of his clients cases in the In re: Diet Drug Litigation." *See December 10, 2008 Order and Reasons, p 9. n5.* While the Court and Merck pointed to the Third Circuit opinion, neither Merck nor the Court actually set forth facts to support the generalized premise that plaintiffs represented by Benjamin should have their cases dismissed based on matters that have occurred in other litigation not before this Court.

20. Although Benjamin can fully justify his strategy in the Diet Drug Litigation as well as point to inaccuracies in the Third Circuit opinion from a factual and legal standpoint, the more important point here is that, even assuming some historical "bad lawyering" on Benjamin's part in that litigation, it would be immaterial to the instant cases absent some basis to infer that Benjamin's advocacy on behalf of his clients is not appropriate and he has somehow engaged in conduct in litigating these twelve cases that constituted either discovery abuse or some other improper behavior, when there is none.

21. Indeed, Merck's counsel, Charles Cohen, who was in court on the day Benjamin was asked to leave the counsel table in the New Jersey proceeding after Judge Higbee denied him *pro hac vice* status, is well aware of Mr. Benjamin's litigation record, including the fact that he obtained the highest single jury verdict on

behalf of a DES plaintiffs in US history, making Merck's motive in castigating Mr. Benjamin in the context of failure-to-prosecute dismissal motions only obvious.

22. The fact that Benjamin has argued since November 9, 2007, and in fact remains firmly convinced the Plaintiffs' Steering Committee was bought off by Merck for an agreement to not oppose payment of $480 million in attorneys fees from the $4.85 billion, does not involve or rise to the level of sanctionable conduct, whether characterized as discovery abuse or any other impropriety.

23. After the October 29 hearing, this Court directed that Benjamin and Merck's counsel meet and confer "in order to determine how his submissions have failed to comply with the requirements of PTO 28 and to identify what must be produced to achieve compliance" and then to produce those materials no later than December 13, 2009 or have the cases "dismissed with prejudice." *See copy of Order dated October 30, 2009, annexed hereto as **Plaintiffs' Exhibit C**.*

24. Plaintiffs have contended in their reply memorandum that they met their disclosure requirements prior to the entry of PTO 28, and have provided individual expert reports, which would end the matter with regard to the discovery which is the subject matter of Merck's motion. This Court has pronounced judgment without affording these twelve plaintiffs, let alone Mr. Benjamin, notice and opportunity to be heard on the issues raised by Merck, which range from alleged applicability of and lack of compliance with PTO 28 as to individual plaintiffs and the alleged general defiance of this Court's orders and authority by Benjamin.

25. This Court has framed its October 30, 2009 order in terms of compliance

by Benjamin rather than that of the plaintiffs, and has squarely placed the same in issue but does not appear to contemplate any hearing with regard to the same.

26. Indeed, at any hearing plaintiffs would be able to present evidence to put ludicrous statements made by Merck, such as, "from November 9, 2007 until August 21, 2009, only plaintiffs had the ability to go out and collect the pharmacy and medical records. And, PTO 28 imposed upon plaintiffs the obligation to go out and do precisely that." *Merck reply memorandum dated October 27, 2009, at p. 3, para. 8.*

27. Plaintiffs can present proof that for lengthy periods of time, in most cases more than one to two years prior to November 9, 2007, Merck not only obtained authorizations to secure pharmacy and medical records, but the same were sufficient to meet the plaintiffs' discovery obligations; that Merck in fact utilized some of the authorizations provided by plaintiffs to obtain records without incident; and, most importantly, that any alleged deficiencies in information available to Merck stemmed from its own willful or negligent refusal to secure the same, showing its own pattern of inaction, delay and noncompliance that this Court has not examined.

28. It is respectfully submitted that the Court's impartiality can be questioned in this case unless Merck – not plaintiffs – is put to the burden of demonstrating why Merck should have special exemption from the general use-it-or-lose-it operation of the adversarial system applicable to these matters.

29. In any event, even if Benjamin is wrong about this Court setting the stage for dismissal based on his conduct by personalizing the order of October 30, 2009, and giving credence to the baseless accusations made by Merck's counsel, the Court

should recuse or disqualify itself for engaging in the *ex parte* communication with defense counsel and relying on extrajudicial sources as set forth herein.

WHEREFORE, plaintiffs respectfully submit that this Court should enter an order recusing or disqualifying itself in these cases, along with such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

_____
RONALD R. BENJAMIN Fed. No. 110131
LAW OFFICE OF RONALD R. BENJAMIN
126 Riverside Drive, P O. Box 607
Binghamton, New York 13902-0607
607/772-1442

Attorneys for Plaintiffs in Above-Captioned Actions