# PLAINTIFFS' EXHIBIT A

# TO

# MOTION FOR RECUSAL

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS, LOUISIANA


IN RE:  VIOXX PRODUCTS          *   Docket MDL 1657-L
Liability Litigation           *
                               *   October 29, 2009
                               *
                               *   9:00 a.m.
* * * * * * * * * * * * * * * *


TELEPHONIC MOTION HEARING HELD BEFORE
THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

APPEARANCES:


For the Plaintiffs:          Law Office of Ronald R. Benjamin
(Via telephone)              BY:  RONALD R. BENJAMIN, ESQ.
                             126 Riverside Drive
                             P.O. Box 607
                             Binghamton, New York 13902-0607

For the Defendants:          Williams & Connolly, LLP
                             BY:  M. ELAINE HORN, ESQ.
                             725 Twelfth Street, NW
                             Washington, D.C. 20005


Official Court Reporter:     Jodi Simcox, RMR, FCRR
                             500 Poydras Street
                             Room HB-406
                             New Orleans, Louisiana 70130
                             (504) 589-7780


Proceedings recorded by mechanical stenography, transcript

produced by computer.

1  **PROCEEDINGS**

2  **(October 29, 2009)**

3      (WHEREUPON, the following proceedings were held via

4  telephone in chambers.)

5      **THE COURT:** Hello, this is Judge Fallon. Who do I

6  have on the line?

7      **MR. BENJAMIN:** This is Ronald Benjamin, Your Honor.

8      **THE COURT:** Okay. Mr. Benjamin, I have everybody

9  else in the court. I have before me a motion. Actually, it's

10 what, the third motion to dismiss? Is that --

11     **MS. HORN:** That's the title of it, Your Honor, yes.

12     **THE COURT:** This case has a long history. On

13 February 16th, 2005, the multi-district litigation panel

14 created the multi-district litigation case known as *In re:*

15 *Vioxx Products Liability* case, bearing the number 1657.

16 Shortly thereafter, thousands of cases were filed and it

17 appeared that between 50,000 and 100,000 cases would make up

18 the litigation.

19      The Court appointed various committees. The

20 committees began discovering the case. They discovered over

21 9 million documents. They took nearly a thousand depositions.

22 This Court had six trials. The state courts had another 10 or

23 12 trials. After these trials and the discovery, the Court

24 entertained 1,000 motions of discovery. The cases went into

25 settlement-discussion mode and a settlement was reached

1   approximately two years and five, six months thereafter.

2           The case is now being resolved.  Most of the

3   50,000 claimants have been paid.  The money has been disbursed.

4   Several cases have not participated in the settlement.  In

5   2007 -- in November of 2007, this Court entered Pretrial Order

6   No. 28 requiring the outstanding cases, the cases that had not

7   settled, to proceed toward trial; and in that direction, it was

8   necessary that certain documents be produced by the parties.

9           The Court felt that it was not unreasonable,

10  since it had been over two years since the case was filed, to

11  have the cases that were going to be tried to produce certain

12  information.  The information that was requested was various

13  medical records, various pharmacy records, and also a

14  preliminary report from a doctor saying that there was a causal

15  relationship between the consumption of Vioxx and the claimed

16  injuries.

17          Most of the individuals produced that type of

18  information, or withdrew their claim, or the Court dismissed

19  their claim.  When the documents were not produced, the Court

20  entertained motions to request the production.  Motions

21  originally were filed, but then they were reset/refiled,

22  because it was the intent of the Court to give the individuals

23  an opportunity.

24          This is the third motion that the Court has

25  received on this matter.  On September 29th, 2009, Merck filed

1   it's third motion and incorporated memorandum to show cause why
2   cases should not be dismissed with prejudice for failure to
3   comply with the requirements of Pretrial Order No. 28.  All of
4   the plaintiffs listed on this particular motion are represented
5   by the law offices of Ronald Benjamin.
6              In their motion Merck asserts that these
7   plaintiffs have failed to comply with discovery requirements of
8   PTO No. 28, which requires, as I mentioned, all plaintiffs who
9   choose not to enroll in the settlement program to submit
10  certain prima facie evidence of usage, injury, and causation.
11             Specifically, the plaintiffs in these particular
12  cases were required to submit a plaintiff profile form --
13  sometimes we call it a plaintiff fact sheet -- and a
14  case-specific expert report.  This report wasn't intended to
15  comply or satisfy the *Daubert* rule, but simply to give a prima
16  facie comment.  This would be something that an attorney would
17  be expected to have when he took the case, or shortly
18  thereafter, to make sure that the case had merit so he could
19  comply with Rule 11 of the Federal Rules.
20             Pharmacy records were also required;
21  interrogatory responses; outstanding interrogatory responses,
22  if there be any; all of the medical records; and an affidavit
23  from the plaintiff.  According to Merck, the parties listed in
24  Pretrial Order No. 3 were notified of this, that their
25  submissions were either deficient or nonexistent and

1   non-received and they were granted a 30-day period to cure.

2   These 30 days have long passed.  Merck now asked that the

3   claims be dismissed.

4               On October the 16th, 2009, Mr. Benjamin filed a

5   response to the order to show cause.  The Court has received

6   the response and studied it; and in his response Mr. Benjamin

7   asserts that PTO 28 only required him to submit those materials

8   in his possession at the time that he filled out the plaintiff

9   profile form, which he did prior to the existence of Pretrial

10  Order No. 28 in, he says, most cases.

11              Therefore, he claims that the Pretrial Order

12  No. 28 did not require him to make any additional submissions.

13  If Pretrial Order No. 28 did require him to supplement his

14  previous responses, he asserts that Pretrial Order No. 28 is

15  vague and ambiguous and should, therefore, not be enforced.

16              Additionally, Mr. Benjamin takes the position

17  that he provided ample information to Merck upon which they

18  could build a defense, knew what they were going to do, and

19  that he never ceased to prosecute his claims.  They knew where

20  he was.  They knew he was still active.  And he was pursuing

21  his claims with vigor, he says.

22              Further, he points out that he had previously

23  provided Merck with releases enabling them to obtain medical

24  records of his clients.

25              And, finally, Mr. Benjamin takes the position

1    that Merck has offered no evidence that they have been

2    prejudiced in any way by his noncompliance, especially in light

3    of the fact that these cases are not even scheduled for trial.

4    In fact, it's not certain whether they're going to be tried in

5    New Orleans before this judge or in New York before the same

6    judge.  Accordingly, Mr. Benjamin asserts that the dismissal is

7    overly harsh and these sanctions are too strict for the action,

8    or inaction, that he's assumed.

9            On October 27th, 2009, Merck filed a response to

10   Mr. Benjamin's opposition.  Merck points out that Pretrial

11   Order No. 28 was issued almost two full years ago.  In fact,

12   just a couple of days short of two years.  At that time

13   Mr. Benjamin was ordered to respond no later than August the

14   1st of 2008, more than one year ago.

15           Further, Merck argues that this noncompliance is

16   consistent with the general pattern of defiance and disregard

17   for this Court's orders; and, actually, other court orders also

18   since other courts in New Jersey and elsewhere also required

19   that this material be submitted, or materials similar to this,

20   and Mr. Benjamin failed to follow those orders.

21           In fact, in New Jersey, the court asked him to

22   leave the court, or certainly not sit with the other attorneys,

23   since he was not only not in compliance with following court

24   orders, but he was not in compliance with even making his

25   appropriate appearance before that particular court.

1    Merck also points out that despite ongoing

2  communication with Mr. Benjamin, he now argues for the first

3  time that the pretrial order does not apply to his clients; or,

4  alternatively, that the pretrial order is, indeed, vague.

5    Additionally, and finally, Merck argues that

6  while Pretrial Order 28 did not require the plaintiffs who had

7  already submitted a plaintiff profile form to submit another

8  form, it was unambiguous in its requirement regarding

9  production of records and other documents.

10    Merck also points out that after receiving

11  medical releases from the listed plaintiffs, the discovery was

12  stayed and that they were, therefore, unable to seek the

13  required medical records.  Only plaintiffs could have sought

14  these records.  And, accordingly, according to Merck, the

15  pretrial order required them to do so.

16    And, finally, Merck points out that even if the

17  Court adopts Mr. Benjamin's reading of Pretrial Order 28, the

18  claims of James Demoski, Timothy Mack and Ann Mannino should

19  still be dismissed for complete noncompliance.

20    I'll hear from the parties, from the movant

21  first.

22    **MS. HORN:**  Good morning, Your Honor.  This is Elaine

23  Horn here on behalf of Merck, and you have thoroughly

24  summarized the background that brings us here today.

25    And just to hit the high points:  On this

1   particular motion, these are all -- the 12 plaintiffs who are

2   the subject of this motion, they all did submit PTO 28 expert

3   reports, but they are deficient, and materially deficient, in

4   some of the other categories of documents that are required to

5   be produced under PTO 28.

6           Specifically, at the time that we filed the

7   motion, we are missing large categories of documents which were

8   attached to Exhibit A and which were further defined in certain

9   correspondences that we attached as exhibits.

10          In response to our motion, we did receive some

11  additional materials from Mr. Benjamin's office.  Specifically,

12  we received some pharmacy records, I believe for everyone.  But

13  we did not receive any additional medical records other than

14  medical records that had already been in existence.

15          And so -- and as to the people who were required

16  to submit the amended and supplemental profile forms, we did

17  not get the new profile form either.  So as to the 12

18  plaintiffs, they are still not in material compliance with

19  PTO 28.  And, as you summarized, the reasons we set forth in

20  our reply -- I won't reiterate them -- but Mr. Benjamin's

21  interpretation of PTO 28 is not consistent with a fair reading

22  of the order.

23          And all people who were subject to PTO 28 were

24  required to provide all the items in Section II.  The one

25  exception was that if somebody had already submitted a profile

1  form under PTO 18, there was no need to resubmit a new one.

2  But other than that, all the documents were required to be

3  produced; they were not; and at this point in time, a dismissal

4  is warranted.

5  **THE COURT:** All right. Mr. Benjamin, do you have any

6  response?

7  **MR. BENJAMIN:** Yes, Your Honor.

8  I think I'd like to begin with the fact that it

9  is virtually impossible to respond to broad conclusory

10  allegations, such as Your Honor referred to, with regard to

11  pattern of defiance or disregard, particularly in connection

12  with referring to the New Jersey courts, where I have not yet

13  even been admitted.

14  I do not know what information Merck provided

15  Your Honor in connection with what transpired in New Jersey,

16  but there was a motion for me to be admitted pro hac vice, and

17  that is the only issue. As of today, I have not been admitted.

18  Your Honor has made reference to the Third

19  Circuit's decision, which I was not part of, in connection with

20  the appeal. I would like the Court to be aware of the fact

21  that I had what I believe remained a legitimate disagreement

22  with the court on issues that were pending in Fen Phen. Every

23  one of the clients I represented did quite well at the end of

24  the day.

25  I did not willfully disregard or disobey

1    anything other than an ongoing disagreement with respect to

2    expert disclosure; and in this litigation, have made every

3    effort to comply with every order that this Court has issued in

4    connection with everything from discovery to appearing when

5    ordered to appear.

6              So that, in connection with my own conduct, to

7    the extent anybody is alleging that I have willfully done

8    anything wrong, all I have tried to do here is to assure my

9    clients get their day in court.

10             I have recommended against the settlement.  I

11   continued to believe that clients can do better.  And while I

12   understand that the Court has a general duty that goes outside

13   and beyond individual cases, it's still the law that if a

14   plaintiff wants to proceed, they can.

15             Now, on the particular motion before the Court,

16   I think Merck is attempting to turn everything upside down by

17   suggesting and bringing a motion under Rule 41, failure to

18   prosecute, when as of March of this year, we have before the

19   Court remand motions which advises Merck in no uncertain terms

20   that from the plaintiff's perspective, all generic issues are

21   complete and that the Court has discretion to remand the

22   actions and let any additional individual issues be addressed

23   in the courts in New York.

24             Now, the last three cases the Court mentioned,

25   Mack, Mannino and Demoski, expert disclosure has been provided

11

1    for all three of those cases; expert opinions on causation have

2    been provided.  Merck has more than enough information to

3    defend those cases, and to defend itself, and to make any

4    motions that address the merits of those three, and the other

5    nine that are before the Court.

6                 To the extent that there are disagreements,

7    Merck asserts in the reply memorandum just received that

8    somehow PTO 30 stopped them from moving forward on getting

9    discovery.  That is simply not the case.  First of all, because

10   PTO 30 didn't issue until November 9th of 2007.  We provided

11   Merck with authorizations going back to 2005.

12                 So that what Merck is doing right now is trying

13   to check off boxes, ignoring letters I have written to them

14   trying to say, let's sit down and tell us what do you need on

15   the merits that you do not have to properly defend so this case

16   can either be put in a position where you can make a motion for

17   summary judgment on the merits if you think you're entitled to

18   that, or proceed to trial.

19                 As we sit here today, Your Honor, they have all

20   of the factual information necessary to defend and they are

21   trying to take a distorted version of PTO 28.  Under Merck's

22   version, the fact sheets that we filled out in state court that

23   provided virtually identical information somehow are irrelevant

24   and that we have to then go do everything all over again, I do

25   not think that is the intent of PTO 28.

1        And I would ask, Your Honor, regardless -- what

2  the motion before the Court is whether or not we somehow failed

3  to prosecute.  We have been doing everything we can.  Merck's

4  counsel simply ignores any calls I make, any letters that I

5  write, trying to get to the merits, asking them, what exactly

6  do you need, we are willing to give you whatever information

7  you want.

8        But when you turn around and take -- when Merck

9  turns around and takes the position, you have to give us every

10  piece of information about every health care provider the

11  plaintiff has ever seen since 1995, Merck may be entitled to

12  pursue a leave-no-rock-unturned strategy, but it would have to

13  do that at its own expense.

14        The relevant medical information that exists and

15  has to do with this case pertains to the cardiovascular

16  consequences that the plaintiff sustained.  To ask for every

17  single health care provider is something that is unreasonable

18  and done for the sole purpose of driving up litigation costs.

19        So I would ask, Your Honor, in view of the

20  drastic remedy that they're seeking here, namely dismissal, to

21  ask Merck to get to the merits, acknowledge they have more than

22  enough information from every plaintiff in this -- that's part

23  of this motion to defend itself, and to actually make a motion

24  on the merits.

25        If there is specific information that they feel

1   we did not provide and that's a legitimate position, I will

2   provide it.  But I think they have what they need, or we

3   certainly should be given an opportunity to supplement that.

4   But right now they won't even talk to us.  Merck's counsel will

5   have no discussion on the merits.  When I try to find out, what

6   exactly do you need to prosecute or defend or to bring on a

7   motion for summary judgment, I don't get anything.  I get

8   something back that checks off boxes.

9            THE COURT:  Okay.  Let me hear --

10           MR. BENJAMIN:  What I would urge the Court, try to

11  get to the merits, let us provide what they substantively need,

12  and let us move to a trial.

13           THE COURT:  All right.  Let me hear a response.

14           MS. HORN:  In terms of informing Mr. Benjamin as to

15  what exactly that we need, on May 12th we sent a very detailed

16  letter setting out exactly what we were missing and what we did

17  need.

18               To the extent that we're talking about material

19  deficiencies, we do have an exhibit, it was attached to our

20  original motion, and just to highlight, for some of these

21  people, we received no records.  No medical records at all,

22  or -- and at the time we filed the motion, no pharmacy records.

23  But that has -- we have received some pharmacy records.

24               But, for instance, for Mr. Scott Berthel, we

25  received medical records for one provider.  For Marjorie

1  Curtis, we received four pages of medical records.  For James

2  Demoski, we received records from two providers.  For Maurice

3  Hoyt, we received one page of record.  For Mary Kurtz, we

4  received no records.  For Ann Mannino, we received no records.

5  For Viola Santacrose, we received some bills, but no records.

6  And for Frank Spencer, we received no records.

7            Clearly, we cannot prosecute cases on the basis

8  of no medical records whatsoever.

9            And as to the issue of PTO -- I'm sorry Rule 41,

10  I'm not quite certain how we got to that particular point, but

11  we are actually bringing this motion under PTO 28, and there

12  are enforcement mechanisms that are written into the order

13  itself, and that's the basis of the motion.

14            THE COURT:  Mr. Benjamin, this is not the first

15  motion that we've had in this case regarding your situation.

16  I've instructed you on several occasions to file material in

17  response to the motion and you haven't done so.

18            MR. BENJAMIN:  That is not correct, Your Honor.

19            THE COURT:  Well, okay.

20            MR. BENJAMIN:  This is the first motion.

21            THE COURT:  Well, this is the third motion that --

22            MR. BENJAMIN:  It's their third motion because they

23  keep withdrawing.  This is the first time I have been before

24  Your Honor on a motion with regard to discovery brought by

25  Merck.

1      THE COURT:  All right.  This is what I'm going to do,

2   Mr. Benjamin:  I'm going to give you three weeks to comply with

3   it; if you don't comply with it, then you need to know that I'm

4   going to dismiss the cases.  So three weeks from today, comply

5   with it.

6      MR. BENJAMIN:  Your Honor, could I be heard for a

7   moment?

8      THE COURT:  Yes.  All right.

9      MR. BENJAMIN:  In order for me to comply, I need to

10  know what is not being complied with.  I have complied.  They

11  have authorizations for every plaintiff.  They've had those

12  authorizations for years.

13      If Your Honor is asking me to provide them with

14  medical records for every health care provider from 1995 until

15  today, and absent providing and complying with that, then the

16  actions are to be dismissed, I respectfully submit that that is

17  such a broad request, it is an abuse of discretion to even

18  suggest any plaintiff has to comply with that.

19      So I'm willing to provide on the merits whatever

20  relevant information is provided.  I would ask Your Honor to

21  require both sides to meet and provide the Court with a written

22  statement of what is or is not being provided, rather than have

23  me guess.

24      Because if I've already given them an expert

25  disclosure in which my expert has opined the particular

1   condition for which we are suing, then it seems to me they have
2   everything they need.
3              Secondly, I would ask Your Honor, because I do
4   want to make a good faith effort to fully comply, to give us 60
5   days.  If I'm out of compliance on certain things they really
6   need, I want to get them.  I want to make sure that Merck has
7   everything they're entitled to.  I do not want to be out of
8   compliance with any order issued by the Court.
9              **THE COURT:**  Yes, I got it.  Yes, I got it,
10  Mr. Benjamin.  I think you're right about the meet and confer.
11  I'm going to give you-all a week, and instruct Merck to meet
12  with Mr. Benjamin within a week; and then give me an affidavit
13  from each side as to what you complied with; what you haven't
14  complied; if you haven't complied, why; and then I'll rule on
15  whatever the motion is.
16             I'll give you both 30 days to do that.  Instead
17  of three weeks, I'll make it 30 days.
18             **MR. BENJAMIN:**  That would work for us, Your Honor.  I
19  appreciate that.
20             **THE COURT:**  All right.  Thank you, Mr. Benjamin.
21             Good-bye.
22             **MR. BENJAMIN:**  Bye-bye.
23             (WHEREUPON, the proceedings were concluded.)
24
25

1                              \*\*\*\*\*

2                          <u>**CERTIFICATE**</u>

3          I, Jodi Simcox, RMR, FCRR, Official Court Reporter

4    for the United States District Court, Eastern District of

5    Louisiana, do hereby certify that the foregoing is a true and

6    correct transcript, to the best of my ability and

7    understanding, from the record of the proceedings in the

8    above-entitled and numbered matter.

9

10

11                              S/ Jodi Simcox, RMR, FCRR
                                Jodi Simcox, RMR, FCRR
12                              Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

# PLAINTIFFS' EXHIBIT B

# TO

# MOTION FOR RECUSAL

No. 09-30446

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

| | | |
|---|---|---|
| In re:  VIOXX PRODUCTS LIABILITY LITIGATION | ) ) ) | In the Court Below: United States District Court for the Eastern District Of Louisiana |
| This document relates to: | ) ) | |
| Glenn L. Dier et al., | ) ) | MDL NO. 1657 |
| *Appellants,* | ) ) | HON. ELDON E. FALLON |
| v. | ) ) | |
| Merck & Co., Inc., | ) ) | |
| *Appellee.* | ) ) | |

---

## BRIEF OF APPELLEE

---

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone:  (504) 581-3200
Fax:  (504) 581-3361
E-mail:  pwittmann@stonepigman.com

Douglas Marvin
WILLIAMS & CONNOLLY LLP
Washington, D.C.  20005
Telephone:  (202) 434-5000
Fax:  (202) 434-5029
E-mail:  dmarvin@wc.com

John H. Beisner
Jessica D. Miller
Geoffrey M. Wyatt
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue N.W.
Washington, D.C.  20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760
E-mail:  john.beisner@skadden.com

*Attorneys for Merck & Co., Inc.*

earlier stage before any discovery had taken place since little was known about the structure, nature and effect of Vioxx by anyone other than perhaps the manufacturer of the drug." *In re Vioxx*, 557 F. Supp. 2d at 744. But after more than three years of litigation, "it is reasonable to require Plaintiffs to come forward and show the basis for their beliefs and show some kind of basic evidence of specific causation." *Id.* Appellants' own authority agrees with this view, arguing that the principal defect of *Lone Pine* orders is that they are too often used at a preliminary stage of the litigation. *See Simeone v. Girard City Bd. of Educ.*, 872 N.E.2d 344, 351 (Ohio Ct. App. 2007) (holding that "issuance of the 'Lone Pine' order at the stage in the proceedings where there had yet to be any meaningful discovery, followed by the dismissal of the case with prejudice for failure to comply with the order, was an abuse of discretion in this case").[8]

The discovery requirements set forth in PTOs 28 and 29 were carefully calibrated to the present phase of the Vioxx litigation. The litigation is no longer in its "embryonic" stage, 557 F. Supp. 2d at 744, and appellants are thus correct that Merck and the district court are generally aware of the injuries claimed and conduct alleged. But PTOs 28 and 29 do not require disclosure of general or preliminary theories of causation. Rather, the PTOs require all plaintiffs to

---

[8]     Appellants block-quote *Simeone* on page 39 of their brief, though they accidentally attribute the quotation to a student note in the *Journal of Land-Use & Environmental Law.*

produce what experience has shown to be indispensable to trial – expert evidence

that Vioxx actually caused the plaintiff's injury.  Specific causation evidence is

highly fact-bound, and neither Merck nor the court would have any way of

knowing the details of a particular plaintiff's case without the opportunity to

review such evidence.  Given the indispensability of specific causation evidence to

a viable claim, the relative burden placed on plaintiffs by PTOs 28 and 29 is

negligible.[9]

In comparison to this modest discovery burden, Merck has shouldered

substantial discovery obligations throughout the litigation.  As the district court

observed, "Merck has produced over 22 million pages of documents," and "[f]or

nearly a decade, Plaintiffs' counsel throughout the country have been studying,

exploring, and discovering all of the effects of Vioxx on the human body …. All of

this material is and has been available to counsel in the individual cases."  Thus,

while appellants complain that the temporary stay effected by PTO 30 has left

them "frozen in their tracks" (Appellants' Br. 26), their contention that discovery

obligations have been one-sided in favor of Merck cannot be taken seriously.

---

[9]     In light of the fact that appellants would inevitably have needed to produce
such expert reports if they really wanted to proceed to trial, their complaint that
PTOs 28 and 29 "unnecessarily drive up the litigation costs of non-settling
plaintiffs" is not compelling.  (Appellants' Br. 22-23.)

996048v.1

# PLAINTIFFS' EXHIBIT C

# TO

# MOTION FOR RECUSAL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | : | MDL NO. 1657 |
| IN RE: VIOXX | : | |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
| | : | |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : | | |

**THIS DOCUMENT RELATES TO:**      **Cases listed on Exhibit A**

## ORDER

On October 29, 2009, Defendant Merck & Co., Inc.'s Third Motion, Rule and Incorporated Memorandum to Show Cause Why Cases Should Not Be Dismissed With Prejudice For Failure to Comply With Requirements of PTO 28 (Rec. Doc. 24338) came on for hearing with oral argument. For the reasons orally assigned, that motion is DENIED.

As discussed at oral argument, IT IS ORDERED that, on or before November 6, 2009, Mr. Benjamin shall meet and confer with counsel for Merck in order to determine how his submissions have failed to comply with the requirements of PTO 28 and to identify what must be produced to achieve compliance. This meet and confer may be conducted by telephone if the parties can agree that a telephone conference is appropriate.

IT IS FURTHER ORDERED that Mr. Benjamin shall produce the materials identified at this meet and confer to Merck on or before December 7, 2009. Thereafter, the parties shall submit affidavits attesting to Mr. Benjamin's compliance no later than December 13, 2009. If the Court finds that Mr. Benjamin has still failed to comply at that time, than the cases listed on

1

Exhibit A shall be dismissed with prejudice.

New Orleans, Louisiana, this 30th day of October, 2009.

UNITED STATES DISTRICT JUDGE

## Exhibit A
### Third Motion

|    | Plaintiff | Short Caption | Docket Number | Pharm. Records | Medical Records | Affidavit of Completeness | Other Deficiency |
|----|-----------|---------------|---------------|----------------|-----------------|---------------------------|------------------|
| 1. | David Agard | Agard, David v. Merck & Co., Inc. | 2:05-cv-01089-EEF-DEK | None | Partial | None | |
| 2. | Scott Berthel | Gates, Robert D. v. Merck | 2:05-cv-06221-EEF-DEK | None | One provider | None | |
| 3. | Richard Core | Core, Richard F. v. Merck & Co., Inc. | 2:05-02583-EEF-DEK | None | Partial | None | |
| 4. | Marjorie Curtis | Connolly, Marjorie v. Merck & Co., Inc. | 2:06-cv-02708-EEF-DEK | None | 4 pages | None | |
| 5. | James Demoski | Agard, David v. Merck & Co., Inc. | 2:05-cv-01089-EEF-DEK | None | Two providers | None | Amended & Supplemental PPF |
| 6. | Kristine Hia | Connolly, Marjorie v. Merck & Co., Inc. | 2:06-cv-02708-EEF-DEK | None | Partial | None | |
| 7. | Maurice Hoyt | Connolly, Marjorie v. Merck & Co., Inc. | 2:06-cv-2708 | None | 1 page | None | |
| 8. | Mary Kurtz | Mary Kurtz v. Merck & Co., Inc. | 2:06-cv-05779-EEF-DEK | None | None | None | |
| 9. | Timothy Mack | Dier, Glenn L. v. Merck & Co., Inc. | 2:05-cv-01088-EEF-DEK | None | Partial | None | Amended & Supplemental PPF |

| 10. | Ann Mannino | Holobosky, Rosemary v. Merck & Co., Inc. | 2:05-cv-01091-EEF-DEK | None | None | None | Amended & Supplemental PPF |
| 11. | Viola Santacrose | Aljibory Adnan v. Merck & Co. Inc. | 2:05-cv-01090-EEF-DEK | None | Partial (all bills, no medical records) | None | |
| 12. | Frank Spencer | Dufresne, Lori v. Merck & Co., Inc. | 2:08-cv-3220-EEF-DEK | None | None | None | PPF or Amended & Supplemental PPF; Statement of Allegation regarding death |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX®                              MDL Docket No.  1657

PRODUCTS LIABILITY LITIGATION             SECTION L

                                          Judge Eldon E. Fallon
                                          Magistrate Judge Knowles

THIS DOCUMENT RELATES TO
PLAINTIFFS LISTED IN EXHIBIT A TO
MERCK "THIRD" MOTION TO DISMISS:

| | |
|---|---|
| Agard, et al.,  v. Merck & Co. [David Agard, James Demoski] | Case No.:  2:05-cv-01089 |
| Aljibory, et al., v. Merck & Co. [Viola Santacrose] | Case No.:  2:05-cv-01090 |
| Cavallo, et al., v. Merck & Co. [Matthew Cavallo] | Case No.:  2:05-cv-01513 |
| Core, et al. v.  Merck & Co. [Richard Core] | Case No.:  2:05-cv-02583 |
| Gates, et al., v. Merck & Co. [Scott Berthel] | Case No.:  2:05-cv-06221 |
| Connolly, et al., v. Merck & Co. [Majorie Curtis, Kristine Hia, and Maurice Hoyt] | Case No.:  2:06-cv-02708 |
| Kurtz v. Merck & Co. [Mary Kurtz] | Case No.:  2:06-cv-05779 |
| Dier, et al., v. Merck & Co.  [Timothy Mack] | Case No.:  2:05-cv-01088 |
| Holobosky, et al., v. Merck & Co. [Ann Mannino] | Case No.:  2:05-cv-01091 |
| DuFresne v. Merck & Co., [Frank Spencer] | Case No.:  2:08-cv-03220 |

---

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2009, the above and foregoing Notice of Hearing,

Plaintiff's Motion for Recusal of This Court, Plaintiff's Memorandum of Law in Support of

Their Motion for Recusal of this Court and Proposed Order, has been served on Liaison Counsel,

Phillip Wittmann and Russ Herman, by U.S. Mail and email and upon all parties by

electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order

No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United

States District Court for the Eastern District of Louisiana by using the CM/ECF system which

will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657.


Dated: December 3, 2009
        Binghamton, New York

                                    /s/ Ronald R. Benjamin
                                   Ronald R. Benjamin, Fed Bar Roll No.: 101131
                                   Law Office of Ronald R. Benjamin
                                   126 Riverside Drive, PO Box 607
                                   Binghamton, New York 13902-0607
                                   Phone: (607) 772-1442
                                   Facsimile: (607) 772-1678
                                   ronbenjaminlaw@stny.rr.com
                                   Attorney for Plaintiffs