# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | : | MDL Docket No. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | SECTION L |
| | : | |
| | : | JUDGE FALLON |
| | : | |
| | : | MAGISTRATE JUDGE |
| | : | KNOWLES |

............................................................:

**This document relates to:**   *Martha Alvarado, et al. v. Merck & Co. Inc.,* **Case No. 06-5980 (as to Larry Long only)**

## REPORT OF THE CLAIMS ADMINISTRATOR ON CLAIMS BY OASIS LEGAL FINANCE LLC IN THE VIOXX RESOLUTION PROGRAM

BrownGreer PLC, the Claims Administrator for the Vioxx Resolution Program, files this Report to provide information that may be helpful to the Court at the hearing set for December 21, 2009, at 9:00 am in this matter, pursuant to the Court's Order of December 11, 2009 (Document No. 29597).

## I.        INTRODUCTION

BrownGreer is the Claims Administrator for the Vioxx Resolution Program.  In that capacity, BrownGreer determines the eligibility of claimants for benefits under the criteria established by the Vioxx Settlement Agreement and directs the Escrow Agent to issue payments to qualifying claimants.  BrownGreer often receives notices or demands from law firms, health insurers, healthcare providers, vendors, and other third parties attempting to assert claims or liens against Vioxx benefit payments as a result of services performed by such parties to Vioxx claimants or their counsel.

These third-party claims add to the administrative cost of a settlement program and threaten to delay payments to qualifying claimants.  In the Vioxx Program, as it does for all claims facilities, BrownGreer adopted a procedure for the receipt and disposition of these third-party claims.  Under that procedure, for all Vioxx claimants and all types of third-party claims not being handled by the Lien Resolution Administrator, BrownGreer follows these steps:

(1)     If the third-party demand is asserted against the claim of a person who is not a participant in the Program or will not qualify for any benefits, BrownGreer notifies the third-party that the claimant will not receive payments in the Program and that BrownGreer will take no further action relating to the attempted lien.

(2)     If the attempted lien is asserted against a claimant or group of claimants participating in the Program, BrownGreer sends to the third-party claimant and to Primary Counsel for the Vioxx claimant (or to a *pro se* claimant directly) a form V2038 Notice of Attempted Lien, a copy of which is attached to this Report as Exhibit 1.  That Notice requires the third-party to respond within 30 days to identify the specific claimant as to whom the lien is asserted, quantify the amount sought on the lien, and state the basis of the lien.  The Notice also warns the third-party that if no response is timely made or an incomplete response is made within the 30 days, BrownGreer will disallow the attempted lien and will not take any further action relating to it.

(3)     The Notice of Attempted Lien also directs the Primary Counsel or *pro se* claimant to respond within 30 days to indicate whether the claimant objects or agrees to the lien asserted by the third-party.  The Notice also warns that if no timely objection is received, BrownGreer will assume that the Primary Counsel or *pro se* claimant agrees to the validity of the third-party claim.

(4)     If the third-party claimant responds with information to support the lien within 30 days from the Notice and if the Primary Counsel or *pro se* claimant does not object to the lien, BrownGreer will withhold from the claimant's Vioxx payment the amount due as established by the third-party and send those funds to the third-party at the time the Vioxx payment becomes payable to the claimant.  The balance is sent to the Primary Counsel or *pro se* claimant directly, less any other withholdings required by the Court's Orders or the Vioxx Settlement Agreement.

(5)     If the third-party responds within 30 days to substantiate the lien and the Primary Counsel or *pro se* claimant timely objects to the lien, the Claims Administrator withholds the amount established by the third-party and pays the balance of the Vioxx benefit to the claimant through the normal payment process, subject to any withholdings required by the Court's Orders or the Settlement Agreement.  If at the time the claimant is receiving a 40% interim payment, rather than a final full

payment, BrownGreer withholds 40% of the amount established by the third-party claimant.

(6)     Any amounts withheld by BrownGreer for disputed third-party claims will remain in escrow until BrownGreer receives notice that the third-party claimant and the claimant have resolved their lien by agreement or Court Oder.

BrownGreer has followed this procedure for all third-party claims received in the Vioxx Program.

## II.  CLAIMS BY OASIS LEGAL FINANCE LLC

BrownGreer has received a total of 38 attempted claims from Oasis relating to Vioxx Qualifying Program Claimants.  These attempted claims are inventoried on the list attached to this Report as Exhibit 2.  That list also explains what BrownGreer has done with the Oasis claims under its third-party claim procedure.

BrownGreer normally does not have the responsibility or the opportunity to adjudicate the underlying validity of a claim asserted by a third-party against a Vioxx claimant.  An administrator generally should not spend the time and resources attempting to assess the merits of each third party demand.  That is a matter between the claimant (and his or her own counsel) and the third party.  BrownGreer thus relies upon the claimant's Primary Counsel or the claimant to address with the third-party any issues relating to disputed claims and to notify BrownGreer if any amounts are in dispute and when they are resolved.  If BrownGreer is not alerted that the third-party claim is disputed, BrownGreer will pay the third-party the amounts it has established as a claim.

On 12 of the claims on which BrownGreer had received an attempted claim from Oasis (claimants 13 through 24 in Exhibit 2), BrownGreer took no action on the Oasis issue and instead received notice from Primary Counsel that Primary Counsel had resolved the Oasis claim.  On 13 of the Oasis claims (claimants 25 through 38 in Exhibit 2),  BrownGreer received no objection or response of any kind from the claimant's Primary Counsel and as a result issued to Oasis 40% of

the amount claimed by Oasis, representing a portion of the claimant's 40% interim payment in the Vioxx Program. These actions occurred in the normal course under the procedure in the Vioxx Program for the disposition of third-party claims.

The claimant subject to the Court's December 11, 2009 Order, Mr. Larry Long, had been granted Hardship status under the Vioxx Program because of dire financial circumstances facing Mr. Long and his family. The parties to the Vioxx Settlement Agreement agreed to treat Mr. Long's IS claim as a Hardship claim on September 28, 2009, which permitted it to be advanced in the review queue. That also enabled BrownGreer to issue an Interim Payment on the claim to Mr. Long's Primary Counsel, The Miller Firm, on October 1, 2009. After Mr. Long's spouse, Ms. Deborah Long, notified BrownGreer that she had received very little of that Interim Payment because of amounts distributed to Oasis and amounts withheld by her Primary Counsel firm as fees, BrownGreer investigated the matter further. Mr. Long's Hardship status made this further analysis necessary.

In that investigation, BrownGreer determined that the Oasis claim was based upon an attempted assignment of Mr. Long's potential Vioxx payment to Oasis. The documents received by BrownGreer from Oasis relating to its claim against Mr. Long are attached as Exhibit 3 to this Report. Those documents show these transactions between Oasis and Larry Long:

(1)     Purchase Agreement for $3,000 dated 2/25/08;

(2)     Purchase Agreement for $3,000 dated 3/18/08; and

(3)     Purchase Agreement for $3,150 dated 7/18/08.

The Oasis contracts refer to these funds that Oasis advanced to Mr. Long as Oasis' "Ownership Amounts." In the documents, Oasis purported to purchase Mr. Long's Vioxx claim on three different occasions. The Agreements set a payoff schedule that increases the amount due from Mr. Long to Oasis by 50% every six months, or 100% a year, before Mr. Long could receive

any amount of his Vioxx benefit.  The documents state that if Mr. Long receives no Vioxx payment, Oasis would receive no payment.  Section 5.1 of the form Agreement requires Mr. Long to "treat and report the sale and purchase . . . as a sale transaction and not as a loan for all purposes."  Section 5.10 states that Mr. Long "waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to [Oasis]."  Under Section 7.2, if Mr. Long were to avoid or attempt to avoid repayment to Oasis, that he would "immediately pay to [Oasis] liquidated damages in the amount of two times . . . the highest Oasis Ownership Amounts regardless of the outcome of the legal claim or the amount of the proceeds," as well as "all collection costs, including attorneys fees and expenses."  By October 24, 2009, the Oasis claim had risen from the $9,150 principal advanced to Mr. Long to a demand of $24,375, an increase of over 266% from the original loans in February, March and July 2008.

The Court need not decide whether these Purchase Agreements are contracts of adhesion, unconscionable, usurious, actually loans and not purchases, or are otherwise unenforceable under applicable state law.[1]  The Vioxx Settlement Agreement is controlling for this Program.  Whether loans or purchases, the "Purchase Agreements" purport to effect an assignment of Mr. Long's Vioxx Claim and thus violate Section 16.9.1 of the Vioxx Settlement Agreement, which provides:

> 16.9.1  No provision of this Agreement or any Exhibit thereto is intended to create any third-party beneficiary to this Agreement.  For the avoidance of doubt, nothing in this Section 16.9 limits or modifies the third-party beneficiary provisions of any Enrollment Form, Release or Dismissal With Prejudice Stipulation.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns; provided, however, that neither this Agreement nor any of the rights, interests, or obligations hereunder may be assigned by the NPC without the prior written consent of Merck.  No right to receive a Settlement Payment may be assigned by any Program Claimant and/or any Enrolling

---

[1] Section 8.11 of the Agreement calls for Georgia law to govern, but also chooses the Circuit Court of Cook County, Illinois, as the sole forum for proceedings relating to the Agreement.

Counsel without the prior written consent of Merck.  Any assignment in
violation of this Section 16.9.1 shall be null and void <u>ab initio</u>.

Because the Oasis claims are based upon a contract that would require a Vioxx claimant to
assign a right to receive a Vioxx Settlement payment, they are subject to Section 16.9.1.  Oasis did
not obtain Merck's consent to the Long assignment or to any of the purported assignments
reflected in Exhibit 2.  As a result, such assignments are null and are void *ab initio*.

After making that determination, BrownGreer notified Oasis by emailed letter that its
contracts relating to Mr. Long's Vioxx claim were null and void *ab initio* under Section 16.9.1 of
the Vioxx Settlement Agreement and that BrownGreer would not recognize them.  A copy of that
letter is attached to this Report as Exhibit 4.  Exhibit 2 to this Report shows the dates on which
BrownGreer issued similar letters to Oasis on each of the Vioxx claimants on which an Oasis
claim remains outstanding.  Oasis has not responded to those notices.

### III.  <u>CONCLUSION</u>

The purported contracts on which Oasis basis its claims are null and void under
Section 16.9.1 of the Vioxx Settlement Agreement.  As a result, BrownGreer submits that it would
be appropriate for this Court to enter an Order determining that the contracts to violate this

provision of the Settlement Agreement, that BrownGreer is not bound by the Oasis demands, and

directing that Oasis has no valid third-party lien against BrownGreer, Merck, the NPC, or the Lien

Resolution Administrator.

              Respectfully submitted,

              BROWNGREER PLC

By:        **/s/ Orran L. Brown**
              Orran L. Brown
              Virginia State Bar No. 25832
              BrownGreer PLC
              115 South 15th Street, Suite 400
              Richmond, Virginia  23219
              Telephone:  (804) 521-7201
              Facsimile:  (804) 521-7299
              Email:  obrown@browngreer.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the above Report by the Claims Administrator On Claims by Oasis

Legal Finance LLC has been served by electronic mail or by first-class mail, postage prepaid,

upon the following on this 17th day of December, 2009:

Russ Herman. Esquire
Plaintiff's Liaison Counsel
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113
rherman@hhkc.com

Lisa Foreman, Esquire
Oasis Legal Finance LLC
40 N. Skokie Boulevard, 5th Floor
Northbrook, IL  60062
Lforeman@oasislegal.com

Phillip Wittmann, Esquire
Stone, Pigman, Walter, Wittmann, LLC
546 Carondelet Street
New Orleans, LA 70130
pwittmann@stonepigman.com

Douglas Marvin, Esquire
Williams & Connolly, LLP
725 Twelfth Street, N.W
Washington, D.C. 20005
dmarvin@wc.com

Michael J. Miller, Esquire
The Miller Law Firm, LLC
The Sherman Building
108 Railroad Avenue
Orange, VA 22960
miller809@aol.com

Mr. Larry Long
3147 Brighton Pass
Conyers, GA  30094
(U.S. Mail, postage prepaid)

**/s/ Orran L. Brown**
Orran L. Brown
Virginia State Bar No. 25832
BrownGreer PLC
115 South 15th Street, Suite 400
Richmond, Virginia  23219
Telephone:  (804) 521-7201
Facsimile:  (804) 521-7299
Email:  obrown@browngreer.com