UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX<br>PRODUCTS LIABILITY LITIGATION | MDL NO. 1657<br>SECTION: L<br>JUDGE: FALLON<br>MAGISTRATE JUDGE: KNOWLES |
| THIS DOCUMENT RELATES TO:     all Cases | |

### OASIS LEGAL FINANCE LLC'S RESPONSE TO
### NOVEMBER 29, 2009 CORRESPONDENCE

**MAY IT PLEASE THE COURT:**

Oasis Legal Finance LLC ("Oasis") respectfully submits the instant memorandum in response to Vioxx Plaintiff Larry Long's ("Mr. Long") November 29, 2009 Correspondence and Rec. Doc. # 29212.

### LEGAL ANALYSIS

Oasis is a limited liability company established under the laws of Delaware, and having its principal place of business in Northbrook, Cook County, Illinois. Oasis is in the business of providing funds on a non-recourse basis to parties engaged in litigation, which allows these parties financial security during the pendancy of their claims.[1]

---

[1] The Purchase Agreements entered into by the consumers and Oasis are a sale and assignment, not a loan. By entering into the Purchase Agreement, the plaintiffs (also referred to as "sellers") sell and assign to Oasis their right to receive a portion of the proceeds of their legal claim, thus transferring the risk of loss to Oasis. *See In the Matter of Carson*, 2005 Bnkr. LEXIS 2673 (N.D. Ga. 2005) (holding that because the debtor did not assign her right of action, but an interest in the proceeds of that action which was permissible and valid, the transaction was

A.     THE LONGS' FIRST ATTEMPT TO OBTAIN FUNDING

Mr. Long and Debra Long (collectively, "the Longs") contacted Oasis in July 2007 requesting non-recourse pre-litigation funding.  Oasis initially denied the Longs funding.  However, in February 2008, the Longs again contacted Oasis by and through Gopal Sharma ("Sharma") requesting $10,000.00 in pre-litigation funds.  The Longs represented to Oasis and Sharma that they had the right and authority to enter into a Purchase Agreement with Oasis.  On February 27, 2008, Oasis and Mr. Long entered into a Purchase Agreement in which Oasis purchased a portion of Mr. Long's potential settlement proceeds from Mr. Long's Vioxx claim against Merck (the "Legal Claim").  Oasis paid the purchase price of $3,000.00 to Mr. Long in accordance with the Purchase Agreement.  *See* attached Exhibit "A" (the February 27, 2008 Purchase Agreement).  Contemporaneous with the execution of the Purchase Agreement, Mr. Long executed an Irrevocable Letter of Direction to his attorney, Chris Gomez of The Miller Firm ("The Miller Firm").  *See* attached Exhibit "B" (the Irrevocable Letter of Direction).  Through the Irrevocable Letter of Direction, Mr. Long instructed The Miller Firm to honor the sale and assignment of a portion of the proceeds to Oasis and to disburse the proceeds when received in accordance with the terms of the Purchase Agreement.  The Miller Firm executed an acknowledgment of Mr. Long's letter of direction.  *See* attached Exhibit "C."  Additionally, on

---

permissible); *In re Sims*, 259 Ga. App. 786 (2003) (holding that the limited assignment of proceeds to secure the repayment of a promissory note was permissible); and *Santiago v. Klosik*, 199 Ga. App. 276 (1991) (reasoning that because the assignment at issue was only for an interest in the proceeds of a personal injury action, and not the actual right of action, the assignment was valid).  Courts around the country have recognized the fundamental distinction between <u>absolute</u> repayment obligations, which typically characterize loans, verse <u>contingent</u> repayment obligations, contemplated by purchases agreements such as these.  Oasis refers the Court to Georgia case law in this case because Mr. Long's Purchase Agreements are governed by Georgia law.  However, *see also*, *Anglo-Dutch*, 193 S.W. 3d 87 (Tex.App-Houston (1st Dist.) 2006), which discusses these types of contingency arrangements in detail.

the first page of the Purchase Agreement, the Longs acknowledged that Oasis had helped them greatly by funding the $3,000.00.

### B.   THE LONGS' SECOND PURCHASE AGREEMENT

Thereafter, in March 2008, the Longs again contacted Oasis for additional funding by and through Sharma. In response to this request, Oasis contacted The Miller Firm for additional information regarding Mr. Long's Legal Claim. At no time did The Miller Firm instruct Oasis that Mr. Long did not have authority to enter into the Purchase Agreement with Oasis.[2] On March 20, 2008, Oasis and Mr. Long executed a second Purchase Agreement, wherein Mr. Long received an additional $3,000.00 as the purchase price of an additional portion of the proceeds of Mr. Long's Legal Claim. *See* attached Exhibit "D." Mr. Long again executed a Letter of Direction to The Miller Firm, which The Miller Firm acknowledged. *See* attached Exhibits "E" and "F," respectively.

### C.   THE LONGS' FINAL REQUEST

The Longs made additional requests to Oasis for pre-litigation funding in April, July, August, September 2008 and August 2009. However, Oasis only funded Mr. Long in response to his July 2008 request. On July 21, 2008, Oasis and Mr. Long entered into a third Purchase Agreement, wherein Mr. Long received an additional $3,150.00 as the purchase price for an additional portion of the proceeds of Mr. Long's Legal Claim. *See* attached Exhibit "G." Mr.

---

[2] Oasis respectfully submits that Section 16.9 of the Vioxx Settlement is inapplicable to the Oasis Purchase Agreements. However, because the parties have resolved their dispute, Oasis does not address this issue and the matter is moot.

Long executed a third Letter of Direction to The Miller Firm, which The Miller Firm acknowledged.  *See* Exhibits "H" and "I," respectively.

Section 2.1 of the Purchase Agreement (which Mr. Long executed with consent and advice from The Miller Firm) provides that Mr. Long had the full right, title and interest in, to, and under the Legal Claim and the Proceeds. Oasis relied upon Mr. Long and The Miller Firm's representations in funding Mr. Long on three (3) separate occasions.  The Purchase Agreements Mr. Long executed were for the Longs' benefit, and Mr. Long received $9,150 throughout 2008, more than a year prior to Mr. Long's interim payment from the Vioxx settlement.  Mr. Long documented his appreciation of Oasis and the funding provided on each Purchase Agreement, thanking Oasis in each instance.

### D.    OASIS' ATTEMPTS TO ACCOMMODATE THE LONGS

On October 6, 2009, The Miller Firm contacted Oasis to notify Oasis (pursuant to the terms of the Irrevocable Letter of Direction Mr. Long directed to The Miller Firm) that Mr. Long would receive an interim settlement payment of $27,331.00, and eventually a final settlement payment of $40,996.50.  Mr. Long's total settlement amount pursuant to the Vioxx Settlement Agreement equals $68,327.50.  The Miller Firm informed Oasis that the Longs were requesting a reduction of the Oasis Ownership Amount.  In light of the Longs' stated hardship, Oasis agreed to accept $12,000.00 from the interim settlement payment and $10,375.00 from the final settlement payment provided Oasis received the final payment on or before January 20, 2010. This agreement reflected a $1,212.50 reduction of Oasis' Ownership Amount.  Moreover, Oasis compromised its repayment terms, specifically section 6.1 which provides that Mr. Long "shall

4

not be entitled to receive any Proceeds until [Oasis] has received the Oasis Ownership Amount" The Miller Firm confirmed these terms with the Longs, and Oasis additionally spoke with Debra Long on October 8, 2009, wherein Deborah Long thanked Oasis for its concession. Further, Mr. Long immediately executed the release Oasis provided and returned the executed release to Oasis on October 9, 2009. *See* attached Exhibit "J."

The Miller Firm contacted Oasis in the afternoon of October 9, 2009 to notify Oasis that it would be unable to remit the second payment to Oasis by January 20, 2010. Oasis agreed to modify its earlier agreement to the following: payment to Oasis of $12,000 from Mr. Long's interim settlement payment and to hold off on future negotiations regarding the final payment due to Oasis until The Miller Firm had Mr. Long's final Vioxx settlement payment in its possession.

Notwithstanding, on or about December 15, 2009, Oasis became aware of the Longs' November 29, 2009 correspondence to the Court, as well as the Longs' additional requests that Oasis further reduce the Oasis Ownership Amount. Oasis contacted the Longs and the parties have reached a resolution. As a result, each party requests that mutual and full releases be entered into the record of the Court.

## **CONCLUSION**

Oasis and Mr. Long have resolved all disputed issues. Thus, Oasis requests that the resolution be entered into the record and each party awarded full and mutual releases.

5

PD.3897798.1

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   /s/ Allen C. Miller
      Allen C. Miller, (Bar #26423)
      Canal Place
      365 Canal Street • Suite 2000
      New Orleans, Louisiana 70130-6534
      Telephone: (504) 566-1311
      Telecopier: (504) 568-9130
      Email: millera@phelps.com

## CERTIFICATE OF SERVICE

I do hereby certify that on this 17th day of December, 2009, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

        /s/ Allen C. Miller