UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
|   AGARD v. MERCK & CO., INC., 2:05-cv-1089, | * | SECTION L |
|     [David Agard, James Demoski] | * | |
|   ALJIBORY v. MERCK & CO., INC., 2:05-cv-1090, | * | JUDGE ELDON E. FALLON |
|     [Viola Santacrose] | * | |
|   CAVALLO v. MERCK & CO., INC., 2:05-cv-1513, | * | MAGISTRATE JUDGE |
|     [Matthew Cavallo] | * | KNOWLES |
|   CONNOLLY v. MERCK & CO., INC., 2:06-cv-2708, | * | |
|     [Marjorie Curtis, Kristine Hia, Maurice Hoyt] | * | |
|   CORE v. MERCK & CO., INC., 2:05-cv-2583, | * | |
|     [Richard Core] | * | |
|   DIER v. MERCK & CO., INC., 2:05-cv-1088, | * | |
|     [Timothy Mack] | * | |
|   DUFRESNE v. MERCK & CO., INC., 2:08-cv-3220, | * | |
|     [Frank Spencer] | * | |
|   GATES v. MERCK & CO., INC., 2:05-cv-6221, | * | |
|     [Scott Berthel] | * | |
|   HOLOBOSKY v. MERCK & CO., INC., 2:05-cv-1091, | * | |
|     [Ann Mannino] | * | |
|   KURTZ v. MERCK & CO., INC., 2:06-cv-5779, | * | |
|     [Mary Kurtz] | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECUSAL OF THIS COURT

Defendant Merck Sharpe & Dohme Corp. ("Merck") respectfully submits this opposition to plaintiffs' motion for recusal.

As set forth below, plaintiffs' motion should be denied because it is frivolous. *First,* the entire motion is based on a false premise. Plaintiffs claim that Judge Fallon could not have discovered the status of the *pro hac vice* application of their counsel, Ronald Benjamin, absent *ex parte* communications or extrajudicial information. But Merck cited this very fact – and

1

attached the transcript from the proceeding in which Mr. Benjamin's application was denied – in its motion to strike the class allegations in the *Weeks* case.  That motion was filed months before Judge Fallon made his statements on October 29, 2009.

      **Second,** even if plaintiffs' wild speculation that the Court had learned of Mr. Benjamin's *pro hac vice* application from Merck or Judge Higbee had any factual basis, recusal would still not be warranted.  A judge is not subject to recusal merely because he learns of information from extrajudicial sources.  It is only when such knowledge affects the judge's views of the merits that recusal is required.  Nothing of the sort has happened here.  Indeed, despite the Court's knowledge of Mr. Benjamin's status in Judge Higbee's court, it ruled favorably for plaintiffs at the October 29 hearing by ***again*** extending the time period for their compliance with PTO 28, rather than dismissing their cases.

## BACKGROUND

      The Court has previously addressed the many objections leveled at the management of this litigation by the moving plaintiffs' counsel since November 9, 2007, when Merck and the Negotiating Plaintiffs' Counsel announced their intent to settle a large number of Vioxx personal-injury cases.  (*See, e.g.*, Order & Reasons, D.17,394 ("12/10/2008 Order"); Order & Reasons, D.18,527 ("4/28/2009 Order").)  In the main, Mr. Benjamin has sought to have:  (1) the Vioxx settlement set aside; (2) the requirements of PTOs 28, 29, and 30 suspended, at least as to his clients; and (3) Judge Fallon recuse himself from the Vioxx proceedings or resign from his administrative role with respect to the settlement.  The Court's December 10, 2008 and April 28, 2009 Orders detailed many of these objections and the Court's resolution of them.  (*See* 12/10/2008 Order; 4/28/2009 Order.)  The April 28, 2009 Order dismissed with prejudice the

1003253v.1

cases of a number of Mr. Benjamin's clients for failure to comply with PTOs 28 and 29.[1]  (*See id.*)

Mr. Benjamin attempted to bring similar challenges before Judge Higbee in New Jersey. Earlier this year, Mr. Benjamin attempted to represent Virginia Pickett in Judge Higbee's court in a challenge to her agreement to enter the Resolution Program.  (*See* Mot. To Vacate The Consent To The Master Settlement Agreement (attached as Ex. 1).)  But Mr. Benjamin had not been admitted to practice in New Jersey at the time he attempted to appear on behalf of Ms. Pickett.  He subsequently moved for admission *pro hac vice*, and the court denied that motion. (*See* Ex. 2, Aff. In Supp. Of Mot. For Admission *Pro Hac Vice*.)

Around the same time, Mr. Benjamin filed a putative class action in Judge Higbee's court, challenging the Vioxx settlement on behalf of Gene Weeks and others, including Ms. Pickett. (*See generally* D.1, *Weeks v. Merck & Co., Inc.*, No. 2:09-cv-3713.)  The *Weeks* case was removed to federal court in New Jersey and subsequently transferred by the Judicial Panel on Multidistrict Litigation to this Court.[2]  (*See id.*)  On June 22, 2009, Merck moved to strike the class allegations in *Weeks*.  (D.19,681.)  The motion expressly addressed Mr. Benjamin's prior conduct in connection with the Vioxx litigation in this Court and before Judge Higbee, including the following:

> In March 2009, Mr. Benjamin sought to represent William Cook in connection with his Vioxx suit pending before Judge

---

[1]     Merck notes that Mr. Benjamin has recycled some of his previous arguments against PTO 28 in the instant motion.  These issues have been resolved by the Court adversely to his position several times.  To the extent that a response is required, Merck relies on the Court's well-reasoned opinions and incorporates them by reference.  (*See, e.g.*, 12/10/2008 Order; 4/28/2009 Order.)

[2]     Gary P. Levin is listed as the lead attorney on this Court's docket, but it is clear that Mr. Benjamin has been and continues to be counsel for the *Weeks* plaintiffs, as reflected by his signature on a number of the documents filed in connection with that case.  (*E.g.*, D.1, *Weeks v. Merck & Co., Inc.*, No. 2:09-cv-3713; D.18,338; D.21,307; D.21,310; D.26,882.)

1003253v.1

Higbee. Mr. Benjamin's formal involvement in the case ended when his pro hac vice motion was denied.[1]

> [1]   In denying Mr. Benjamin's motion for admission pro hac vice, the court cited his extensive disciplinary record and previous suspension of his license to practice. . . .   Despite the order, Mr. Benjamin later moved to represent Virginia Pickett in her attempt to vacate her consent to the Settlement on the ground that she was coerced into settling by her lawyer.  Judge Higbee has taken Mr. Benjamin's application for admission pro hac vice in that case under advisement following full briefing and argument.

(D.19,681-2, at 3 (citation omitted).)  (That motion and its attachment – the transcript from the hearing at which Mr. Benjamin's *pro hac vice* application was denied – are attached to this opposition as Exhibit 3.)

The instant cases have been languishing in this Court for more than a year – and numerous extended deadlines for compliance with PTO 28 have come and gone.  Accordingly, Merck requested – and the Court granted – orders to show cause why the cases should not be dismissed.  (*See, e.g.*, D.24,338; D.24,671.)  The Court's orders and the parties' related briefing culminated in a hearing on the question of dismissal in October.  The Court began the hearing with a summary of the Vioxx litigation and Mr. Benjamin's involvement in post-settlement proceedings, including reference to his denied *pro hac vice* application.  (Pls.' Mot. at 2; Pls.' Mot. Ex. A, at 2-7.)  Rather than dismissing the cases, the Court offered to accommodate Mr. Benjamin's clients with three weeks to comply with PTO 28.  (Pls.' Mot. Ex. A, at 15:1-5.)  Mr. Benjamin asked for more time and to confer with Merck regarding the materials required to bring his clients' cases into compliance with PTO 28.  (*Id.* 15:9-23.)  The Court granted Mr. Benjamin's wishes, with the exception that it allowed thirty days for compliance rather than the sixty he had requested.  (*Id.* 16:9-17.)  In response to this ruling, Mr. Benjamin responded, "That would work for us, Your Honor.  I appreciate that."  (*Id.* 16:16-17.)  Those thirty days have since passed, and instead of compliance, Mr. Benjamin now offers a recusal motion.

4

This is familiar territory.  The instant motion marks the fifth time Mr. Benjamin has sought the recusal or resignation of Judge Fallon.  (*See* D.14,938; D.15,574; D.15,575;[3] D.18,338; D.21,310.)  The general thrust of each motion has been that there is an appearance of impropriety arising from Judge Fallon's purported involvement in the Vioxx settlement.  The instant motion repeats the same theme but grounds the basis for recusal in the Court's reference to the undisputed and indisputable fact that Mr. Benjamin's *pro hac vice* application was denied by Judge Higbee.

## ARGUMENT

The Court's reference to Mr. Benjamin's *pro hac vice* motion does not provide any evidence that the Court relied on extrajudicial sources.  Rather, Merck supplied this information to the Court in a public filing in a case in which Mr. Benjamin himself is counsel.  Moreover, even if Merck had never made such a filing, Judge Fallon would not be subject to recusal simply because he referenced Mr. Benjamin's *pro hac vice* motion – even if he learned of it from an extrajudicial source.  Such knowledge is only a basis for recusal if it colors a judge's view of the merits.  Here, the only ruling made in connection with the Court's comment is one altogether *favorable* to Mr. Benjamin's clients, and it cannot possibly serve as a basis for recusal.

## I.   PLAINTIFFS FACE A STEEP BURDEN IN SEEKING RECUSAL.

Recusal is governed by 28 U.S.C. § 455.  Plaintiffs invoke two provisions of § 455. Plaintiffs first invoke 28 U.S.C. § 455(a), which asks whether a judge's "impartiality might be reasonably questioned."  They also rely on 28 U.S.C. § 455(b)(1), which provides for recusal of a judge when "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  "These provisions afford separate,

---

[3]     Document 15,575 was filed at the same time as 15,574 and is substantively similar.  Thus, for purposes of counting Mr. Benjamin's recusal efforts, Merck treats Documents 15,574 and 15,575 as a single request.

1003253v.1

though overlapping, grounds for recusal." *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003).  Under either provision, "the standard for bias is not 'subjective,' as it once was, but, rather, 'objective.'"  *Id.*  In other words, recusal is only warranted "if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality."  *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 378 (5th Cir. 2002) (citation and internal quotation marks omitted).

"[T]he origin of a judge's alleged bias is of critical importance."  *Andrade*, 338 F.3d at 455.  Supreme Court doctrine "more or less divides events occurring or opinions expressed in the course of judicial proceedings from those that take place outside of the litigation context" – i.e., opinions based on *intrajudicial* sources from those based on *extrajudicial* sources – "and holds that the former rarely require recusal."  *Id.* (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  Thus, "'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'"  *Id.* (quoting *Liteky*, 510 U.S. at 555).  And "'opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'"  *Id.* (quoting *Liteky*, 510 U.S. at 555).  Indeed, even judicial remarks that "'are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'"  *Id.* (quoting *Liteky*, 510 U.S. at 555).

This strong presumption against recusal applies with special force in the MDL setting. Other courts have noted that "disqualification is not favored where," as in an MDL proceeding, "a single judge has acquired by experience familiarity with a protracted, involved case which could not easily be passed on to a second judge."  *In re A.H. Robins Co.*, 602 F. Supp. 243, 245

(D. Kan. 1985) (citation and internal quotation marks omitted) (rejecting recusal motion in which court had "presided over the instant multidistrict litigation ('MDL') proceedings, covering over a thousand federal cases and initially several hundred tagalong state cases involving products liability issues concerning the Dalkon Shield" for ten years); *accord In re Allied-Signal, Inc.*, 891 F.2d 967, 971 (1st Cir. 1989) (MDL litigation presents "a case where the need for judicial management by the district court counsels caution prior to intervention by an appellate court").

Even as to opinions formed by a judge based on extrajudicial sources, the opinions "must result in an opinion on the ***merits***," not some other issue, such as a lawyer's conduct. *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987) (emphasis added). Thus, even when *ex parte* communications reveal "[b]ias against an attorney," that "is not enough to require disqualification under § 455 unless petitioners can show that such a controversy would demonstrate a bias against the party itself." *Id.* at 830.

Finally, whatever its purported basis, a motion for recusal must be supported by concrete evidence. "An unsubstantiated suggestion of personal bias or prejudice is insufficient to mandate recusal under section 455(a)." *Willner v. Univ. of Kansas*, 848 F.2d 1023, 1027 (10th Cir. 1988). This includes any suggestion based on "'[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters.'" *Clemens v. United States Dist. Court*, 428 F.3d 1175, 1178 (9th Cir. 2005) (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)). A judge "should not recuse himself on [an] unsupported, irrational, or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges." *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981). Moreover, capitulation to unjustified requests for recusal would foment "abuse of § 455(a) by litigants who anticipate an unfavorable result."

7

*Jackson v. Ft. Stanton Hosp. & Training Sch.*, 757 F. Supp. 1231, 1240 (D.N.M. 1990) (citing

H.R. Rep. No. 93-1453, House Judiciary Comm., 93d Cong., 2d Sess., 1974 U.S.C.C.A.N. 6351,

6355).  Thus, "a judge ha[s] a duty **not** to recuse himself on unsupported speculation."  *Willner*,

848 F.2d at 1027.

## II.     PLAINTIFFS CANNOT SATISFY THEIR STEEP BURDEN OF DEMONSTRATING THAT RECUSAL IS PROPER.

Plaintiffs' motion falls far short of this high standard for multiple reasons.

### A.     <u>Plaintiffs' Motion Is Based On A False Premise.</u>

First, the entire premise of plaintiffs' motion is false.  Plaintiffs speculate that the only

way the Court could have learned that Mr. Benjamin's *pro hac vice* application was denied in

New Jersey was by *ex parte* communications or other extrajudicial sources.  (Pls.' Mot. at 3.)

But, as noted above, Merck expressly mentioned the *pro hac vice* issue in its motion to strike in

the *Weeks* case – i.e., "prior proceedings."  *See Andrade*, 338 F.3d at 455 (noting that "prior

proceedings" are intrajudicial under Supreme Court precedent); *see also, e.g.*, *Bisaccia v. United

States*, No. 97 CV 6683, 97 CV 3659, 2000 U.S. Dist. LEXIS 7231, at *15 (E.D.N.Y. Apr. 12,

2000) ("Petitioners also claim that my familiarity with other cases related to theirs in which

Gravano also testified or cooperated somehow constitutes knowledge from an 'extrajudicial

source,' implicating § 455.  But the cases have declined so narrowly to circumscribe the concept

of an 'extrajudicial source,' for the perfectly sensible reason that, under such a concept, a judge

would have to recuse himself from any case 'related' to one he had presided over before.").  It is

difficult to understand how plaintiffs could have overlooked this source of the Court's

information given that Mr. Benjamin himself is counsel in the *Weeks* case.  Whatever the

explanation, plaintiffs' unfounded accusation of reliance on extrajudicial sources does not seem

to have been "formed after an inquiry reasonable under the circumstances" as required by Rule 11.  *See* Fed. R. Civ. P. 11(b)(3).

>  **B.**     **Even If Plaintiffs' Factual Premise Were Right, Their Legal Argument Fails.**

Even if there were any substance to plaintiffs' factual contentions, the motion would still be meritless.  As set forth above, knowledge from extrajudicial sources only merits recusal when such knowledge makes it impossible for a judge to render a fair decision on the merits.  No such showing has been made here – indeed, with the exception of their request for sixty days to comply with PTO 28, plaintiffs received everything they asked for at the October hearing, and Mr. Benjamin even expressed his satisfaction with the Court's resolution.

The U.S. Court of Appeals for the Third Circuit affirmed denial of a recusal motion in very similar circumstances in *Krell v. Prudential Insurance Co.*, 148 F.3d 283 (3d Cir. 1998), which similarly arose in the course of an MDL proceeding.  There, one of the lawyers involved in the proceedings, James Malakoff, had brought two related class actions in state court.  *See In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, 179 (3d Cir. 2002).  His cases were removed to federal court and then transferred for coordinated treatment in the MDL. *Id.*  The MDL court appointed another firm as national counsel for a consolidated class action, from which Malakoff excluded his clients.  *Id.*  The consolidated action settled, and shortly after, Malakoff "filed an 'emergency' motion to recuse" the MDL judge.  *Id.*

In his motion, Malakoff cited *ex parte* communications, "improper, non-judicial" meetings between the judge and certain parties in connection with proposed settlements, and improper communication between the MDL judge and a judge in a related state-court proceeding, as grounds for recusal.  *Krell*, 148 F.3d at 343-45.  In affirming denial of the motion, the Third Circuit rejected each of these arguments.

Malakoff's accusation of *ex parte* communications was based on a comment by the judge at a hearing regarding the statements of other lawyers in the litigation denying involvement in document destruction, which Malakoff claimed "was an acknowledgment that the court 'had obtained off-the-record factual information concerning a material and disputed evidentiary matter (document destruction) then before it.'" *Id.* at 343.  The Third Circuit rejected this argument, noting that the denials of document destruction were made in an earlier court filing in a separate proceeding.  "Consequently, [the attorney's] denial was already a matter of public record," and Malakoff "offered no other evidence to support his contention that the district judge had an improper, *ex parte* meeting." *Id.* at 343-44.

Malakoff next claimed that the judge had improperly participated in a meeting concerning settlement.  *Id.* at 344.  This argument, too, was rejected.  "The district judge addressed [Malakoff's client's] concerns about the content of the October 16 meeting during the recusal hearing, noting that 'the Court did not request the meeting, nor did it set the agenda.'" *Id.*

Malakoff last claimed that the judge had improperly attempted to influence a related state-court proceeding.  *Id.* at 345.  The Third Circuit again disagreed, noting the lack of any proof to support this allegations.  *Id.*  The court then went on to note:  "we see nothing wrong with members of the federal and state judiciary trying to coordinate where their cases overlap.  Coordination among judges can only foster the just and efficient resolution of cases." *Id.*[4]

The allegations here – even if supported by fact – are similar to those rejected in *Krell*.  At best, plaintiffs have alleged that the Court obtained information about Mr. Benjamin's *pro*

---

[4]      Ultimately, the Third Circuit found the recusal motion so unfounded that it affirmed an award of monetary sanctions that was premised, in part, on the time spent by Prudential in opposing the motion.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 63 F. Supp. 2d 516, 521 (D.N.J. 1999) (The court "rejects Mr. Malakoff's contention that the motion to recuse was objectively reasonable and filed in good faith."), *aff'd in relevant part*, 278 F.3d 175, 190-91 (3d Cir. 2002) (upholding monetary sanctions but vacating and remanding limitations on practice of law).

*hac vice* application from either Merck or Judge Higbee.  These allegations do not supply a basis

for recusal.  As in *Krell*, the fact at issue here was a "matter of public record" because it was set

forth in a filing on this Court's docket at the time the October hearing was held.  Moreover,

nothing would prevent this Court from communicating with Judge Higbee's court – as it

presumably has on many previous occasions – regarding developments in the Vioxx litigation.

Indeed, as *Krell* held, such coordination "can only foster the just and efficient resolution of

cases."  *Id.*[5]

In short, this motion – the fifth such motion Mr. Benjamin has filed – is frivolous.  Its

supposed factual basis is contradicted by the record in one of Mr. Benjamin's own cases, and

even if plaintiffs had the facts right, no showing of partiality has been made.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion for recusal.

Dated: December 30, 2009                                              Respectfully submitted,

                                                                     /s/*Dorothy H. Wimberly*
                                                                     Phillip A. Wittmann, 13625
                                                                     Dorothy H. Wimberly, 18509
                                                                     STONE PIGMAN WALTHER
                                                                     WITTMANN LLC
                                                                     546 Carondelet Street
                                                                     New Orleans, LA 70130
                                                                     Phone: (504) 581-3200
                                                                     Fax:    (504) 581-3361

---

[5]         Indeed, such coordination would have been particularly appropriate here in light of Mr. Benjamin's failure to advise Judge Higbee of his numerous prior disciplinary problems.  (*See* Ex. 2 to Ex. 3, Mot. To Strike, 5:15-17 ("Those things were not revealed in his papers when he certified and requested.  That in and of itself is an ethical violation.").)

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Defendant's Opposition has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 30th day of December, 2009.


_/s/ Dorothy H. Wimberly_____

12