UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: VIOXX® | ) | MDL Docket No. 1657 |
| | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | Section L |
| | ) | |
| This document relates to: | ) | JUDGE FALLON |
| | ) | |
| *Franklin v. Merck & Co., Inc.* | ) | MAG. JUDGE KNOWLES |
| (USDC, District of Colorado) | ) | |
| Case No. 06-CV-02164-WYD-BNB | ) | |
| | ) | |
| USDC, ED-LA Case No.: 07-2073 | ) | |

## PLAINTIFF'S THIRD NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF HIS VERIFIED RESPONSE TO DEFENDANT'S MOTION FOR ORDER TO SHOW CAUSE WHY PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED

COMES NOW the Plaintiff above-named, by and through his counsel, the Law Offices

of Stuart A. Kritzer, P.C. and Peter L. Kaufman, Levin, Papantonio, Thomas, Mitchell, Echsner

& Proctor, P.A., and gives notice of the following supplemental authority in support of his

Verified Response to Defendant's Motion for Order to Show Cause Why Plaintiff's Complaint

Should Not be Dismissed. The attached decision was published December 31, 2009.

> *Commonwealth of Massachusetts v. Kathleen Sebelius, in her official capacity as Secretary of Health and Human Services, et al.*, 2009 WL 5173783 (D. Mass) (December 31, 2009). "The Medicaid statute and regulations require state Medicaid agencies to seek reimbursement whenever they pay for services covered by any liable third party." *See*, 42 U.S.C. §1396a (a)(25)(B); 42 C.F.R. §433.139(e)(2). *1.

Respectfully submitted this 7th day of January, 2010.

LAW OFFICES OF STUART A. KRITZER, P.C.

By: /s/Stuart A. Kritzer
      Stuart A. Kritzer, Esquire
      140 East 19th Avenue, 3rd Floor
      Denver, CO  80203
      (303) 393-1111

LEVIN, PAPANTINO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
      Peter L. Kaufman, Esquire
      316 South Baylen Street, Suite 600
      Pensacola, FL  32502
      (850) 435-7000

ATTORNEYS FOR PLAINTIFF JAMES FRANKLIN

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiff's  Third Notice of Supplemental Authority in Support of his

Verified Response to Defendant's Motion for Order to Show Cause Why Plaintiff's Complaint

Should Not be Dismissed has been served on Liaison Counsel, Russ Herman and Phillip

Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by

electronically uploading the same to LexisNexis File & Serve Advanced in accordance with

PreTrial Order No. 8B, on this 7th day of January, 2010.

LAW OFFICES OF STUART A. KRITZER, P.C.

By: /s/Melanie J. King, Legal Assistant
      140 East 19th Avenue, 3rd Floor
      Denver, CO  80203
      (303) 393-1111

ATTORNEYS FOR PLAINTIFF JAMES FRANKLIN

Westlaw.

2009 WL 5173783                                                           Page 1
--- F.Supp.2d ----, 2009 WL 5173783 (D.Mass.)
**(Cite as: 2009 WL 5173783 (D.Mass.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
D. Massachusetts.
Commonwealth of MASSACHUSETTS
v.
Kathleen SEBELIUS in her official capacity as Sec-
retary of Health and Human
Services, et al., Defendants.
**C.A. No. 07-11930-MLW.**

Dec. 31, 2009.

Kenneth W. Salinger, Attorney General's Office Ad-
ministrative Law Division, Boston, MA, for Plaintiff.

Christopher R. Hall, U.S. Department of Justice,
Washington, DC, Sonya A. Rao, United States Attor-
ney's Office, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

WOLF, District Judge.

**\*1** This memorandum is based upon the transcript of
the decision rendered orally on September 21, 2009,
in which the court allowed defendants' Motion to
Dismiss. This memorandum adds citations, deletes
some colloquy, and clarifies some language.

\* \* \*

I. INTRODUCTION

This case arises out of the Commonwealth of Massa-
chusetts' attempts to obtain reimbursement from
Medicare for coverage originally provided by the
Massachusetts Medicaid program. The plaintiffs are
the Commonwealth of Massachusetts and the Massa-
chusetts Executive Office of Health and Human Ser-
vices, ("EOHHS"), the state agency responsible for
administering the Massachusetts Medicaid program
known as MassHealth. The defendants are Kathleen
Sebelius in her official capacity as Secretary of
Health and Human Services for the United States (the
"Secretary"), Charlene Frizzera, in her official capac-
ity as Acting Administrator of the Centers for Medi-
care and Medicaid Services ("CMS"), National Gov-
ernment Services, Inc. ("NGS"), the fiscal intermedi-

ary hired by CMS to process Medicare Part A reim-
bursement claims in Massachusetts, and MAXIMUS
Federal Services, Inc. ("MFS"), a qualified independ-
ent contractor hired by CMS to conduct second-level
appeals of Medicare Part A reimbursement claims in
Massachusetts. In general, I may refer to the plain-
tiffs as "Massachusetts" and the defendants as "The
United States," or the plaintiffs as "Medicaid" and the
defendants as "Medicare."

II. FACTS AND PROCEDURAL BACKGROUND

This case is essentially about how Medicare is to pay
for medical services under certain circumstances. For
various reasons, some individuals receive medical
treatment paid for by Medicaid, but are later retroac-
tively determined to be eligible for Medicare. Such
cases are known as matters of "retroactive dual eligi-
bility." Medicaid is supposed to be a payor of last
resort. *See Arkansas Dept. of Health and Human Ser-
vices v. Ahlborn,* 547 U.S. 268, 291 (2006) (constru-
ing 42 U.S.C. § 1396a(a)(25)). The Medicaid statute
and regulations require state Medicaid agencies to
seek reimbursement whenever they pay for services
covered by any liable third party. *See*42 U.S.C. §
1396a (a)(25)(B); 42 C.F.R. § 433.139(e)(2). The
issue here is whether Medicare is a "liable third
party" under the circumstances presented by this
case.

As I will explain, Medicare is barred by its own stat-
utes and regulations, with some exceptions not rele-
vant here, from paying anyone other than a provider
of medical services. *See*42 U.S.C. § 1395f(a); 42
C.F.R. § 424.33. Medicaid is not a provider of medi-
cal services. *See*42 U.S.C. § 1395x(u), (defining
"provider of services"). Therefore, when Massachu-
setts Medicaid attempted to collect reimbursement
from Medicare for retroactive dual eligibles, Medi-
care refused to pay. This was not a particular problem
before 2003. Before 2003, Massachusetts Medicaid
was able to seek reimbursement from providers
themselves and the providers had standing to seek
reimbursement from Medicare. However, in 2003,
the Supreme Judicial Court of the Commonwealth of
Massachusetts held in *Atlanticare Medical Center v.
Commissioner of the Division of Medical Assistance,*
439 Mass. 1 (2003), that in cases of retroactive dual

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2009 WL 5173783
--- F.Supp.2d ----, 2009 WL 5173783 (D.Mass.)
(Cite as: 2009 WL 5173783 (D.Mass.))

Page 2

eligibility, Medicaid may not sue medical providers directly, but must instead sue the third-party payor. In reaching this conclusion, the Supreme Judicial Court wrote that, despite the parties' agreement that Medicaid could not recover payments made from Medicare, it was not "persuaded that it is impossible" for Medicaid to do so. *Id.* Medicare was not a party, and did not otherwise participate, in *Atlanticare.*

**\*2** In this case, Massachusetts is suing for declaratory and injunctive relief to require Medicare to pay Massachusetts Medicaid directly and for Medicare to process four test claims for reimbursement filed by Massachusetts Medicaid. The United States has moved to dismiss on the basis that the complaint fails to state a claim on which relief may be granted. The plaintiffs filed a cross-motion for summary judgment. As indicated earlier, the motion to dismiss is being allowed pursuant to Federal Rule of Civil Procedure 12(b)(6). Therefore, plaintiff's request for summary judgment is moot.

## III. STANDARD OF REVIEW

With regard to the motion to dismiss under Rule 12(b)(6), the court must "take all factual allegations as true and [ ] draw all reasonable inferences in favor of the plaintiff." *Rodriguez-Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92,96 (1st Cir .2007). The court must "neither weigh[ ] the evidence nor rule [ ] on the merits." *Day v. Fallon Cmty. Health Plan, Inc.,* 917 F.Supp. 72, 75 (D.Mass.1996). A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559 (2007); *see also Rodriguez-Ortiz v. Margo Caribe, Inc.,* 490 F.3d at 95-96 (1st Cir.2007) (applying the *Bell Atl.* standard to a claim under the Private Securities Litigation Reform Act); *Morales-Tanon v. Puerto Rico Elec. Power Authority,* 524 F.3d 15, 18 (1st Cir.2008) (applying the *Bell Atl.* standard to a claim under 42 U.S.C. § 1983).

## IV. DISCUSSION

The material facts or allegations are not in dispute. Medicare provides Federal health insurance for elderly and certain disabled individuals. Medicare is overseen by the Center for Medicare and Medicaid Services, a division of the Department of Health and Human Services. CMS pays Medicare claims through fiscal intermediaries, usually insurance companies, to

whom CMS contracts claims processing.

Medicaid is funded by both the Federal and state governments. It is administered by the states and provides health insurance for America's poor. The Massachusetts Medicaid program is administered at the state level by EOHHS. The Massachusetts Medicaid program is, as explained earlier, known as Mass-Health. Some individuals known as "dual eligibles" are covered by both Medicare and Medicaid. In the case of dual eligibles, Federal law generally requires that Medicare bear the cost of medical services because Medicaid is the payor of last resort. *See Arkansas Dept. of Health and Human Services,* 547 U.S. at 291.

However, Medicare and Medicaid eligibility determinations may occur at different times. Relevant to this case are instances in which Medicaid pays for medical services for an individual, but a later determination establishes the individual to be retroactively eligible for Medicare coverage for the services for which Medicaid has already paid. Ordinarily, when Medicaid pays a claim and later learns that a third party is liable for payment, Medicaid must seek reimbursement for the claim to the extent of such legal liability, so long as seeking recovery is cost effective. *See*42 U.S.C. § 1396a(a)(25)(B); 42 C.F.R. § 433.139(e)(2). However, when the third party is Medicare, the situation is complicated by Medicare provisions requiring that payment for services furnished an individual be made only to providers of services. *See*42 U.S.C. § 1395f (a); 42 C.F.R. § 424.33. Medicaid is not a provider of services under the Medicare statute, which states that, "[t]he term 'provider of services' means a hospital, critical access hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program, or, for purposes of section 1395f(g) and section 1395n(e) of this title, a fund." 42 U .S.C. § 1395x(u).

**\*3** Further complicating matters is the Supreme Judicial Court's ruling in *Atlanticare,* which, as explained earlier, held that in cases of retroactive dual eligibility, Massachusetts Medicaid may not sue medical providers directly, but must instead sue the third-party payor even if that third-party payor is Medicare. 439 Mass. at 11. No longer able to obtain payment from providers, Massachusetts initiated a series of communications with Medicare in an attempt to ob-

2009 WL 5173783
--- F.Supp.2d ----, 2009 WL 5173783 (D.Mass.)
(Cite as: 2009 WL 5173783 (D.Mass.))

tain reimbursement in a manner consistent with the ruling in *Atlanticare.* Medicare has repeatedly informed Massachusetts Medicaid that it will not reimburse Medicaid for the dual eligibles because Medicaid is not a provider of medical services. This case was filed as a result of that impasse.

The plaintiff's allegations fail to state a claim upon which relief can be granted because the most relevant statute and implementing regulations require that Medicare make payments for services to providers only, and Medicaid is not a provider. More specifically, 42 U.S.C. § 1395f (a) states in pertinent part that "[p]ayment for services furnished an individual may be made only to providers of services." Various statutory provisions, including 42 U.S.C. § 1395hh, expressly provide for the issuance of any necessary regulations. 42 U.S.C. § 1302(a) provides the same. Section 1395f(a)(1) is more specific with regard to this case. It states that the Secretary of Health and Human Services may by regulation prescribe which persons can submit claims for payment for services. [FN1] The regulation implementing Section1395f(a)(1) is 42 C.F.R. § 424.33, which states: "All claims for services of providers and all claims by suppliers and nonparticipating hospitals must be-- (a) Filed by the provider, supplier or hospital; and (b) Signed by the provider, supplier or hospital unless CMS instructions waive this requirement."

> FN1.Section 1395f(a) provides:
> Except as provided in subsections (d) and (g) of this section and in section 1395mm of this title, payment for services furnished an individual may be made only to providers of services which are eligible therefor under section 1395cc of this title and only if--(1) written request, signed by such individual, except in cases in which the Secretary finds it impracticable for the individual to do so, is filed for such payment in such form, in such manner, and by such person or persons as the Secretary may by regulation prescribe....

The Secretary interprets the statute and regulations as prohibiting payments from Medicare to Medicaid in the circumstances of this case because Medicaid is not a provider of the services at issue. This interpretation of the statute appears to be correct and, in any event, is entitled to deference by the court pursuant to

*Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel,* 467 U.S. 837 (1984), and its progeny.

I will describe my understanding of *Chevron* and its progeny in some detail because I think the answer to the issue at the heart of this case is influenced by the nature of the questions that the court must properly decide. *Chevron* instructs that when a court reviews an agency's construction of a statute it administers, the court is confronted with two questions:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court [may] not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.

*4*Chevron,* 467 U.S. at 842-43. More recently the Supreme Court has stated that:

> [T]he legal question before us is whether the Agency's interpretation of the statute is lawful. This Court has previously said that, if the statute speaks clearly "to the precise question at issue," we "must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S., at 842-843, 104 S.Ct. 2778. If, however, the statute "is silent or ambiguous with respect to the specific issue," we must sustain the Agency's interpretation if it is "based on a permissible construction" of the Act. *Id.,* at 843, 104 S.Ct.2778. Hence we must decide (1) whether the statute unambiguously forbids the Agency's interpretation, and, if not, (2) whether the interpretation, for other reasons, exceeds the bounds of the permissible. *Ibid.; see also United States v. Mead Corp.,* 533 U.S. 218, 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).

*Barnhart v. Walton,* 535 U.S. 212, 217-18 (2002) (citing *Chevron,* 467 U.S. at 842-843 and *United States v. Mead Corp.,* 533 U.S. 218, 227 (2001)).

*Chevron* deference is appropriate only when (1) Congress expressly left an issue open for the agency to decide (explicit authority) or (2) when it is apparent from "the agency's generally conferred authority and other statutory circumstances that Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the stat-

ute or fills a space in the enacted law, even one about which Congress did not actually have an intent as to a particular result" (implicit authority). *Mead,* 533 U.S. at 229 (citation and internal quotation marks omitted). Implicit authority is often, but not always, indicated by "express Congressional authorization to engage in a process of rule making or adjudication that produces regulations or rules for which deference is claimed." *Id.*

Where an agency regulates pursuant to explicit authority, "the agency regulations are given controlling weight unless they are arbitrary, capricious or manifestly contrary to the statute." *Chevron,* 567 U.S. at 444 (footnote omitted). Where an agency regulates pursuant to implicit authority, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* (footnote omitted).

Thus, *Mead* holds that formal agency interpretation generally is entitled to *Chevron* deference. However, as the First Circuit has noted, "the level of deference owing to informal agency interpretations is freighted with uncertainty." *Doe v. Leavitt,* 522 F.3d 75, 79 (1st Cir.2009) (citing Lisa Schultz Bressman, How Mead Has Muddled Judicial Review of Agency Action, 58 VAND. L.REV. 1443, 1457-69 (2005)). In particular, *Mead* "does not clarify the circumstances in which Congress should be deemed to have intended an informal agency interpretation to carry the force of law and, thus, attract *Chevron* deference." *Doe,* 522 F.3d at 79 (citing *Mead,* 533 U.S. at 231).

*5 Where an agency interprets its own regulations, its interpretation is controlling "unless 'plainly erroneous or inconsistent with the regulation.' " *Auer v. Robbins,* 519 U.S. 452, 460 (1997) (quoting *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 359 (1989)). The court's task:

is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. In other words [the court] must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulations's promulgation.

*Thomas Jefferson University v. Shalala,* 512 U.S.

504, 512 (1994) (citations and internal quotation marks omitted). However, deference is not accorded "to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice," because "[t]he deliberateness of such positions, if not indeed their authoritativeness, is suspect." *Smiley v. Citibank (South Dakota), N.A.,* 517 U.S. 735, 741 (1996) (citations and internal quotation marks omitted).

In this case, the statute seems to be clear and to support Medicare's position. Massachusetts Medicaid is seeking a payment from Medicare. A payment is being sought because of services that were provided to a Medicaid recipient later found eligible for Medicare. The statute, § 1395f(a), states that payments must be made to the provider. It is undisputed that Medicaid is not a provider of services as defined in § 1395x(u).

However, Massachusetts Medicaid asserts that the statute should be regarded as ambiguous in part because Medicaid is intended to be the payor of last resort. *See Ahlborn,* 547 U.S. at 291. In addition, Medicaid argues that it is seeking a "reimbursement" rather than a payment. Therefore, it contends that the statutory provision on which Medicare relies does not cover the situation presented in the instant case. More specifically, Medicaid contends that the statute does not require that it be a provider of services to be reimbursed for payments it made to dual eligibles.

Assuming, without finding, that these arguments create or describe an ambiguity, the court in this case must defer to the Secretary's interpretation of the statute and related regulation. The statute provides for the issuance of regulations. *See* 42 U.S.C. §§ 1302(a), 1395f(a)(1), 1395hh. Section 1395f(a)(1) explicitly delegates to the Secretary the authority to, by regulation, prescribe which persons can submit claims for payment for services. Thus, the Secretary is generally authorized to interpret the statute, as necessary, in regulations and specifically authorized to decide to whom Medicare may make payments. *See Mead,* 533 U.S. at 229. The Secretary has addressed the relevant question formally in 42 C.F.R. § 424.33, which states that "[a]ll claims for services by a provider must be filed by the provider." The statute does not forbid this interpretation of § 1395f (a). Rather, the regulation and the Secretary's interpretation of it are consistent with the language of § 1395f(a), which

2009 WL 5173783
--- F.Supp.2d ----, 2009 WL 5173783 (D.Mass.)
(Cite as: 2009 WL 5173783 (D.Mass.))

Page 5

states that payment "may be made only to providers of services." The Secretary has previously taken a position compatible with its position in this case. *See* Letter from Norma E. Burke, Associate Regional Administrator, Department of Health and Human Services to Ruth A. Bourquin, Assistant Attorney General for the Commonwealth of Massachusetts (March 1, 1991) (attached as Exhibit A to the Complaint). From at least 1991, *see id.,* until the *Atlanti-care* case was decided by the Supreme Judicial Court in 2003, it seems to have been accepted in Massachusetts, as well as in the rest of the states, [FN2] that Medicaid programs were not entitled to direct reimbursement by Medicare for payments made to dual eligibles by Medicaid. The Secretary's interpretation of the relevant regulation is neither plainly erroneous nor inconsistent with the regulation. Therefore, I give her interpretation of the regulation controlling weight. *See Thomas Jefferson Univ.,* 512 U .S. at 512.

> FN2. New Hampshire is a possible exception. *See Petition of Maxi Drug,* 154 N.H. 651, 657-62 (2006)

\*6 Here, Congress explicitly authorized the Secretary to decide who may file a request for Medicare payments. See 42 U.S.C. § 1395f(a)(1). The Secretary exercised this authority in promulgating 42 C.F.R. § 424.33, which states that "[a]ll claims for services of providers and all claims by suppliers and nonparticipating hospitals must be--(a) Filed by the provider, supplier or hospital; and (b) Signed by the provider, supplier or hospital unless CMS instructions waive this requirement." Because this regulation interpreting the statute was promulgated pursuant to an express delegation of authority, I must give it "controlling weight" unless it is "arbitrary, capricious or manifestly contrary to the statute." *Chevron,* 567 U.S. at 444 (footnote omitted). I find that § 424.33 is not arbitrary or capricious. Rather, § 424.33 is consistent with the statutory command of 42 U.S.C. § 1395f(a)(1) that Medicare payments be made only to providers. Thus, 42 C.F.R. § 424.33, which requires that requests for Medicare payments be made by providers, controls this case. [FN3]

> FN3. Even if Congress did not expressly delegate to the Secretary the authority to decide whether Medicaid would be entitled to obtain reimbursement from Medicare for

payments to dual eligibles, Congress implicitly granted the Secretary such authority by delegating to her the general rule-making authority. *See Mead,* 533 U.S. at 229 ("We have recognized a very good indicator of delegation meriting *Chevron* treatment in express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed.") (citation omitted). The regulation, § 424.33, is not an unreasonable interpretation of the statute. Therefore, the court may not substitute an alternative construction of the statute. *Chevron,* 462 U.S. at 844.

In reaching this conclusion, I recognize that 42 U.S.C. § 1396a (a)(25)(A) requires that Medicaid ascertain the liability of third parties. Section 1396a(a)(25)(B) requires that Medicaid, in any case where such liability is found, seek reimbursement from them. However, Section 1396a (a)(25)(B), I find, does not create any third-party liability. Rather, it only addresses what Medicaid must do if such liability is determined to exist based on other sources.

There are no other cases directly on the point. However, there are analogous cases whose reasoning is consistent with the conclusion that I have reached. Such cases include two decided after *Atlanticare. See Connecticut Department of Social Services v. Leavitt,* 428 F.3d 138, 146-47 (2d Cir.2005); *New York v. Sebelius,* 2009 WL 1834599 (N.D.N.Y. June 22, 2009). In *Connecticut Department of Social Services,* the Second Circuit, in a different factual context, found that several clear statements in the Medicare code and regulations require that requests for payments be made only by providers. *See* 428 F.3d at 145. Medicaid, having made payments that should have been paid by Medicare, sought to file Medicare claims on behalf of Medicare beneficiaries. *Id.* at 144. The court deferred to Medicare's interpretation of its own regulations, as well as statutory authority, and held that neither the Medicare beneficiaries nor Connecticut acting on their behalf could file claims directly with Medicare's financial intermediaries. *See id.* at 145-46.

Similarly, in *New York v. Sebelius,* the Social Security Administration made errors that prevented certain individuals from becoming eligible for Medicare.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2009 WL 5173783
--- F.Supp.2d ----, 2009 WL 5173783 (D.Mass.)
(Cite as: 2009 WL 5173783 (D.Mass.))

2009 WL 1834599, at *3. Some of these individuals obtained Medicaid coverage at an alleged cost to New York of almost $2,000,000,000. *Id.* at *4. New York attempted to recover this sum directly from Medicare. *Id.* at *8. The court, construing *Connecticut Department of Social Services* and also *New York State Dept. of Social Services v. Bowen*, 846 F .2d 129 (2d Cir.1988), held that although 42 U.S.C. § 1396a(a)(25)(B) clearly imposes a duty on the state to seek Medicaid reimbursement, it does not entitle the state to wholesale reimbursement from Medicare. 2009 WL 1834599, at *8.

*7 Massachusetts Medicaid relies on 42 U.S.C. § 1395f(d)(2) to argue that there is a distinction, recognized in the statute, between a "payment" and a "reimbursement." 42 U.S.C. § 1395f(d)(2) allows individuals to file for benefits for emergency services received from a hospital that does not participate in the Medicare program. It makes an express exception to the general rule that only a provider may request and receive any payment. There is, however, no comparable statutory exception that covers Medicaid in the circumstances of this case.

Similarly, 1 find that *New York State Department of Social Services, supra,* is materially different from this case. In that case, direct payments from Medicare to Medicaid were not involved. Rather, New York Medicaid had attempted to request a Medicare hearing on behalf of individuals who had been denied coverage for skilled nursing care. *See New York State Dept. of Social Services*, 846 F.2d at 132. Medicare denied the request on the ground that New York Medicaid was neither a party nor a representative of a party. *Id.* The court held that the United States was suffering from "tunnel vision" in viewing the Medicare statute in isolation from the Medicaid statute. *Id.* at 133. Even though the Medicare statute pertaining to administrative appeals did not explicitly allow Medicaid to appeal on behalf of individuals, the court held that the principle that Medicaid is the payor of last resort should control. *See id.* However, as *New York v. Sebelius* points out, *New York State Department of Social Services* did not require that the court "scrap the administrative and statutory framework for reimbursement and permit a free-floating right to aggregate compensation from Medicare." 2009 WL 1834599, at *8.

The Supreme Judicial Court's decision in *Atlanticare*

does not qualify the conclusion I have reached. As indicated earlier, the United States was not a party to *Atlanticare* and did not otherwise participate in the case. The Supreme Judicial Court found that Medicaid could not sue providers for reimbursement for payments made to dual eligibles. *Atlanticare,* 439 Mass. at14-15. The Supreme Judicial Court wrote that it was not persuaded that it would be impossible for Medicaid to obtain reimbursement from Medicare. *Id.* at 11. However, having the benefit of briefing of this issue by the parties, particularly the United States, I am persuaded that Medicaid is not entitled to sue Medicare for reimbursement. *See Connecticut Department of Social Services*, 428 F.3d at 145-46;*New York v. Sebelius,* 2009 WL 1834599, at *8. Therefore, the defendants' motion to dismiss is being allowed.

As an alternative to its request that it prevail on its claim that it is entitled to recover from Medicare, Massachusetts Medicaid asks that I issue a declaratory judgment finding that, in the circumstances of this case, providers have a duty to seek payment from Medicare and then reimburse Medicaid. I find that it is not necessary or appropriate to issue such a declaration. The providers, who evidently cared deeply enough to have brought the *Atlanticare* case, were not sued by Massachusetts Medicaid or otherwise made parties to this case. It was not asserted that they were indispensable parties to it. They did not seek to intervene. I have not heard from them. It is not necessary for me to decide the issue of whether Medicaid can recover from providers payments made to dual eligibles which was addressed in *Atlanticare*. In the present posture of this case, it is not appropriate for me to decide it.

*8 I understand that this matter has serious consequences for the parties and that the Commonwealth of Massachusetts has a dilemma. It may be that there should be amendments to the relevant statutes. Alternatively, as the United States and the Commonwealth of Massachusetts agree that Massachusetts Medicaid cannot recover from Medicare payments it has made to retroactive dual eligibles, perhaps the parties could jointly bring a case which would provide the Supreme Judicial Court an opportunity to reconsider its assumption in *Atlanticare* that Massachusetts Medicare has an alternative to recovering from providers. However, my responsibility is to decide the case and controversy before me and 1 have done that.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2009 WL 5173783
--- F.Supp.2d ----, 2009 WL 5173783 (D.Mass.)
**(Cite as: 2009 WL 5173783 (D.Mass.))**

V. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Defendants' Motion to Dismiss (Docket No. 10) is ALLOWED.

2. Plaintiff's Cross-Motion for Summary Judgment (Docket No. 12) is MOOT.

--- F.Supp.2d ----, 2009 WL 5173783 (D.Mass.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.