UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF LOUISIANA, *ex rel.* JAMES D. | * | SECTION L |
|     CALDWELL, JR., Attorney General, | * | |
| | * | JUDGE ELDON E. FALLON |
|     Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
| versus | * | KNOWLES |
| | * | |
| MERCK SHARP & DOHME CORP., | * | |
| | * | |
|     Defendant. | * | |
| | * | |
| Case No. 05-3700. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MOTION AND INCORPORATED MEMORANDUM OF LAW BY DEFENDANT AND NON-PARTY DR. DAVID R. SILVERS TO QUASH THE SUBPOENA *DUCES TECUM* SERVED ON DRUG RESEARCH SERVICES, INC.**

Pursuant to Federal Rule of Civil Procedure 45, Defendant Merck Sharp & Dohme Corp. ("Merck") and non-party Dr. David R. Silvers respectfully submit this motion to quash the subpoena served on non-party Drug Research Services, Inc. ("DRS"). As set forth below, the subpoena served by the State of Louisiana, *ex rel.* James D. Caldwell, Jr. ("Plaintiff") on DRS is improper and must be quashed because it creates an undue burden on DRS and it subverts the limits of the discovery process set by this Court. Merck and Dr. Silvers timely file this motion to preserve their right to object, and also note that counsel for Merck first informed Plaintiff on February 3 of objections to the subpoena in an attempt to resolve the dispute over it without involvement from the Court.

1008108v.1

## BACKGROUND

On February 1, 2010—only eight days before the cut-off of fact discovery in this case—Plaintiff served a subpoena *duces tecum* (the "subpoena") on non-party DRS.  DRS is a corporation that was engaged in clinical research trials and is entirely owned by Dr. Silvers, who has been designated as a testifying expert witness by Merck.  (Deposition of David R. Silvers ("Silvers Dep.") 60:7-15 (attached hereto as Exhibit A).)  Dr. Silvers effectively "shut down" DRS in 2007 but maintains DRS's corporate status to avoid the burden associated with destroying the medical records associated with the trials.  (*Id.* at 256:1-257:20.)

During Dr. Silvers' deposition, counsel for Plaintiff questioned him regarding his curriculum vitae, attached as Exhibit 6 to his expert report that was produced to Plaintiff on December 7, 2009.  (Silvers Dep. 52:16-22; Exhibit 6 to Expert Report of David R. Silvers, Dec. 3, 2009 ("Silvers CV") (Ex. B).)  Specifically, Plaintiff's counsel asked Dr. Silvers about his work through DRS regarding three clinical studies sponsored by Merck.  (Silvers Dep. 125:1-136:17.)  Two of the studies, referred to as "029-00" and "041-00," concerned a compound called "MK-0663," also known as "Arcoxia®."  (Silvers CV 39-40.)  The third study, referred to as "136-00," concerned a different compound called "MK-0966," one of the designations for Vioxx®.  (*Id.* at 41.)  Despite being aware of Dr. Silvers' association with these studies at least since early December 2009, Plaintiff did not attempt to pursue discovery regarding them until it served the DRS subpoena on February 1, 2010.

## ARGUMENT

Federal Rule of Civil Procedure 45 provides that "a court shall quash . . . a subpoena if it 'subjects a person to undue burden.'"  *Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 377 (5th Cir. 2004) (quoting Fed. R. Civ. P. 45(c)(3)(A)).  "Whether a subpoena subjects a witness to undue burden generally raises a question of the subpoena's reasonableness,

which 'requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" *Id.* (quoting 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2463 (2d ed. 1995)); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("Whether a burdensome subpoena is reasonable must be determined according to the facts of the case . . . ." (internal quotations omitted)). The Fifth Circuit has identified several factors that should be considered when determining whether a subpoena presents an undue burden, including:

> (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party. A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad.

*Wiwa*, 392 F.3d at 818 (internal citations omitted). The burden of proof is on the moving party "to demonstrate that compliance with the subpoena would be unreasonable and oppressive." *Id.* (internal quotations omitted).

Plaintiff's subpoena on DRS should be quashed for two reasons. First, Plaintiff's request places an undue burden on DRS. The documents Plaintiff requests are irrelevant, duplicative, available from a party to the litigation, and overbroad. Producing them would cause unnecessary expense and inconvenience to DRS and Dr. Silvers. Second, Plaintiff inappropriately attempts to use its subpoena power to circumvent the limits on discovery that this Court has imposed.

I.  **MERCK HAS STANDING TO CHALLENGE THE SUBPOENA**

As a preliminary matter, Merck has standing to challenge this subpoena as a party affected by a non-party subpoena. This Court may, on motion, quash or modify a subpoena "[t]o protect a person subject to *or affected by* a subpoena." Fed. R. Civ. P. 45(c)(3) (emphasis

added). In general, a party has standing to object to a subpoena served on a third-party where the party has a "claim of privilege, proprietary interest, or personal interest in the subpoenaed matter." *See Hoover v. Fla. Hydro, Inc.*, No. 07-1100, 2008 WL 4467661, at *3 (E.D. La. Oct. 1, 2008). Here, Plaintiff requests not only documents "related to Vioxx/rofecoxib" (as well as another drug) but also communications with Merck regarding studies that were sponsored by Merck. Because these materials directly implicate Merck's proprietary and personal interests, it is proper for Merck to file this motion. *See id.* In addition, the motion is proper because it is also brought on behalf of Dr. Silvers, whose company is the target of the subpoena.

## II.     THE SUBPOENA PLACES AN UNDUE BURDEN ON NON-PARTY DRS

Plaintiff's subpoena must be quashed because it places an undue burden on DRS by requesting documents that are irrelevant, duplicative, available from an actual party to the litigation, overbroad, and expensive and inconvenient to produce. First, the documents requested in the subpoena simply are not relevant to the issues in this case. Plaintiff's requests for documents related to Study 029-00 and Study 041-00 are irrelevant because those two studies related to clinical trials for the drug Arcoxia—not Vioxx. (*See, e.g.*, MRK-APT0049486 to -602) (identifying compound MK-0663 as etoricoxib); *see also* Subpoena at 5-6.) But more generally for all three studies, including Vioxx Study 136-00,[1] the subpoenaed materials are the medical and study records of individual patients who participated in these clinical trials at only one of multiple trial sites. (*See* Subpoena at 6.) Plaintiff cannot show that this individualized and partial information is at all relevant to Plaintiff's claims against Merck, which is sufficient justification for quashing the subpoena. *See Kiger v. Plaisance Dragline*, No. 04-3153, 2006 WL 3228289, at *2 (E.D. La. Nov. 2, 2006) (quashing in part a subpoena issued by defendant to

---

[1]     Plaintiff's experts, in fact, use the data in Vioxx Study 136-00 affirmatively; thus Plaintiff's subpoena is not aimed at questioning the integrity of the data. Moreover, none of Plaintiff's experts have stated that they need to review the underlying and individualized records to Vioxx Study 136-00 for their opinions.

4

third-party banks in part because information about all loans taken out by plaintiff was unduly broad and irrelevant to the underlying personal injury action); *Al Copeland Enters., Inc. v. C.T.V. Sys., Inc.*, No. 92-2264, 1993 WL 191152, at *3 (E.D. La. May 21, 1993) (quashing a subpoena issued by defendant because price lists for recipe ingredients and documents regarding advertising expenditures were irrelevant to the underlying breach of contract claim).

Despite their irrelevance, Merck has already produced the full clinical study reports from all three studies to the Plaintiffs' Steering Committee in this MDL proceeding. (*See* Pre-Trial Order No. 22, at 3 (ordering production of Arcoxia clinical study reports); MRK-AAD0263821 to -931 (Vioxx Study 136-00 report).) These study reports are comprehensive reviews of the clinical trials and present all relevant data—as opposed to the partial individualized patient medical histories sought here. Plaintiff has had access to the materials for months. Therefore, it would impose an undue (and unnecessary) burden on DRS to produce materials that are summarized in relevant part in the study reports. Individualized patient medical records from a single trial site are neither relevant nor useful. Further, Plaintiff violates the intent of Pre-Trial Order 39 by demanding such duplicative discovery. (*See* Pre-Trial Order 39 § III.C ("Plaintiffs counsel shall utilize to the fullest extent practicable discovery previously taken in this MDL proceeding.").)

Moreover, given that this information, to the extent not already produced, could have been obtained from Merck itself through a timely discovery request, Plaintiff's attempt to obtain it from a non-party subpoena is improper. *See Positive Black Talk*, 394 F.3d at 377 (affirming the quashing of a subpoena of an expert witness in part because his potential testimony was "available from other sources"); *see also Williams v. City of Dallas*, 178 F.R.D. 103, 111 (N.D. Tex. 1998) (agreeing that an overbroad subpoena may be quashed because other sources are

available and less burdensome).

The subpoena as written also is overbroad and should therefore be quashed. *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (affirming the district court's quashing of a subpoena for being overbroad); *Cont'l Res., Inc. v. PXP Gulf Coast, Inc.*, No. 06-0200, 2006 WL 980747, at *2-3 (E.D. La. Apr. 11, 2006). A subpoena is facially overbroad when it is "limited neither by reasonable restrictions on time nor by particular documentary descriptions." *See Williams*, 178 F.R.D. at 110. In the subpoena here, the Plaintiff requests "***[a]ny and all documents or other materials*** related to Vioxx/rofecoxib" and "***[a]ny and all agreements and invoices or other arrangements*** between [DRS] and Merck for payment or other financial compensation for work related to Vioxx/rofecoxib" for a period of ***over ten years*** from January 1, 1998 through the present. (Subpoena at 5-6 (emphases added).) At this very late stage of discovery—and with the trial date looming—it is unreasonable for Plaintiff to cast such a large net for documents that, as already noted, Plaintiff knew existed and that have been accessible to it for months. Indeed, it is telling that in this particular fishing expedition, two of the studies identified by Plaintiff for which it seeks materials are wholly unrelated to Vioxx. (*See, e.g.*, MRK-APT0049486 to -602.)

Lastly, the expense and inconvenience DRS and Dr. Silvers would face in complying with the subpoena would be significant. DRS and Dr. Silvers would first have to locate the requested documents, which are currently held in an offsite storage facility away from Dr. Silvers' office. (Silvers Dep. 133:5-134:11.) Moreover, they would have to redact all of the HIPAA[2] information contained in those documents. Indeed, the subpoena itself recognizes that information will likely have to be redacted. (*See* Subpoena at 6 ("Informed consent forms can be redacted to black out the subjects' names. Please include all Institutional Review Board

---

[2] Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936.

documents related to the above studies as well as redacted documents showing subjects' arthritis ARA classification.").) After several years of litigation and plenty of opportunities to seek these documents from Merck, Plaintiff simply has no demonstrated need for these materials that warrants the unduly burdensome compliance with the subpoena.

### III. THE SUBPOENA SHOULD BE QUASHED AS AN IMPROPER ATTEMPT TO CIRCUMVENT THE DISCOVERY DEADLINE

By serving this subpoena on DRS mere days before the discovery cut-off to obtain documents that easily could have been sought earlier, Plaintiff impermissibly attempts to use its subpoena power to subvert the pre-trial schedule set by this Court. Rule 45 subpoenas may not be used to circumvent discovery deadlines. *Wantanabe Realty Corp. v. City of New York*, 159 Fed. App'x 235, 240 n.2 (2d Cir. 2005). As another district court in the Fifth Circuit recently explained:

> Subpoenas issued for discovery purposes . . . are subject to the discovery limitations outlined in Fed. R. Civ. P. 26(b). Indeed, there is no practical reason to apply a different rule simply because [the proponent] choose[s] to obtain information from [the opposing party's] experts via subpoenas rather than by document requests.

*Butcher v. Allstate Ins. Co.*, No. 1:06cv423-KS-MTP, 2008 WL 4965288, at *2 (S.D. Miss. Nov. 18, 2008) (internal citations omitted). In fact, district courts all over the country have treated subpoenas that seek documents under Rule 45 as "a discovery device subject to the same deadlines as other forms of discovery set forth in the court's scheduling order." *McGuire v. Warner*, No. 05-40185, 2009 U.S. Dist. LEXIS 66614, at *3 (E.D. Mich. July 29, 2009) (collecting cases).[3] This Court has itself agreed that this sort of untimely service of a subpoena weighs in favor of quashing it. *See Tucker v. Tangipahoa Parish Sch. Bd.*, No. 06-3818, 2007

---

[3] Rule 34 generally governs the production of documents during discovery, and it sets a default time of thirty days for a party to respond to such a discovery request. Fed. R. Civ. P. 34(b)(2). A Rule 45 subpoena *duces tecum* is specifically contemplated as falling within this paradigm. *See* Fed. R. Civ. P. 34(c). Thus, Plaintiff's subpoena is patently at odds with the time for responding set forth in the federal rules.

WL 1989913, at *2 (E.D. La. July 3, 2007) (holding that a subpoena issued before the discovery deadline for a deposition after the deadline, where the parties did not agree to extending the deadline, is untimely).

Here, Plaintiff has already deposed Dr. Silvers and has questioned him regarding his work through DRS.  The instant subpoena is nothing more than a request for documents that easily could have been served earlier in the discovery process, and Plaintiff has failed to establish good cause to enforce its untimely subpoena.  *See Butcher*, 2008 WL 4965288, at *2-3 (granting a motion to quash three subpoenas *duces tecum* because the party failed to show good cause why the court should enforce the subpoenas, which were served "just days" before the discovery deadline); *see also* Fed. R. Civ. P. 45(c)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").  Indeed, Plaintiff has failed to provide a single reason why it waited until only eight days before the discovery deadline to issue this subpoena to Merck's expert or why it otherwise failed to conduct written discovery to Merck's expert during the discovery period.  *See Butcher*, 2008 WL 4965288, at *2.  Therefore, this Court should quash Plaintiff's subpoena.

## IV.     CONCLUSION

For the foregoing reasons, Merck respectfully requests that this Court quash Plaintiff's February 1, 2010 subpoena *duces tecum* that was served on DRS.

Dated: February 17, 2010

Respectfully submitted,

/s/*Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN LLC
546 Carondelet Street
New Orleans, LA 70130
Phone: (504) 581-3200
Fax:    (504) 581-3361

1008108v.1

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 17th day of February, 2010.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1008108v.1