UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>　　　Products Liability Litigation | |
| This Document Relates to: | MDL No. 1657 |
| 　　　STATE OF LOUISIANA, *ex rel.* JAMES D.<br>　　　CALDWELL, JR., Attorney General, | SECTION L |
| 　　　　　　　　　Plaintiff, | JUDGE ELDON E. FALLON |
| 　　versus | MAGISTRATE JUDGE<br>KNOWLES |
| 　　MERCK SHARP & DOHME CORP., | |
| 　　　　　　　　　Defendant. | |
| 　　Case No. 05-3700. | |

## DEFENDANT'S SUPPLEMENTAL OPPOSITION
## TO PLAINTIFF'S MOTION TO REMAND

After previously insisting that it was prepared to try this case in federal court, Plaintiff

has changed course and now seeks expedited consideration of its Motion to Remand.  (*Compare*

Apr. 29, 2009 Status Conference Tr. 34:4-8 (R. Doc. 20194) (counsel for Plaintiff:  "So built into

this order, I just wanted to let you know, Your Honor, the Louisiana AG has a trial schedule built

into this order, whereas the other Attorney Generals are going to be seeking Motions to Remand.

. . ."), *with* Pl.'s Mem. In Supp. of Mot. for Expedited Consideration of Mot. to Remand (R. Doc.

33175-2) at 8 (asserting that "there is nothing left to be accomplished in this forum").)

Defendant Merck Sharp & Dohme Corp. ("Merck") submits this supplemental opposition to

Plaintiff's Motion to Remand.

Although Plaintiff devotes the bulk of its most recent filing to rehashing its previous

arguments in favor of remand, Plaintiff entirely fails to address (and has never addressed) whether the Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. 1332(d), which Merck asserted as an independent basis for federal jurisdiction in a supplemental submission made on June 11, 2009, shortly after Plaintiff filed its Second Amended Complaint on May 12, 2009.  (*See* R. Doc. 19450 (Merck's Supplemental Statement of Jurisdiction).)  As Merck explained in that submission, CAFA jurisdiction exists under the Second Amended Complaint because:

- Plaintiff seeks to recover on behalf of Louisiana citizens who purchased Vioxx® under a rule of judicial procedure – the *parens patriae* rule – that Plaintiff alleges authorizes an action to be brought by 1 or more representative persons as a class action;

- Plaintiff seeks to assert the representative claims of more than one hundred Louisiana citizens;

- At least one of the Louisiana citizens Plaintiff seeks to assert claims on behalf of is diverse from Merck (a New Jersey corporation with its principal place of business in New Jersey); and

- The aggregate amount in controversy Plaintiff seeks to recover on behalf of the unnamed citizens exceeds $5,000,000, exclusive of costs and interest.

Indeed, in these circumstances, binding Fifth Circuit precedent compels the conclusion that federal jurisdiction exists under CAFA here.  Plaintiff has offered no response.

Even on the issues Plaintiff **does** address in its recent filing, Plaintiff is mistaken, and this Court has both federal question jurisdiction and traditional diversity jurisdiction.  The substantial federal question doctrine confers jurisdiction on the Court because:

- Plaintiff's affirmative case for relief necessarily turns on questions under federal Medicaid law and the Food, Drug, and Cosmetic Act (the "FDCA");

- Plaintiff's Medicaid-related claims raise substantial and disputed questions regarding a state Medicaid agency's ability to exclude an FDA-approved prescription drug from coverage, questions to which Congress has given substantial attention and which should be decided uniformly in federal court; and

1008282v.1

- Deciding those questions in a federal forum will not disturb the balance of judicial authority between federal and state courts, because the Medicaid claims asserted here are unusual claims of recent vintage, and the jurisdictional issues before the Court do not implicate either traditional Medicaid fraud claims or traditional state-law tort claims.

The Court also has diversity jurisdiction because the Louisiana Department of Health and Hospitals ("LDHH"), on whose behalf Plaintiff sues to recover Medicaid expenditures for Vioxx, is the real party-in-interest as to those claims, and it is an independent state agency whose citizenship is diverse from Merck's.

For these reasons, Plaintiff's remand motion should be denied, and this case should proceed on schedule to trial in this Court.

## <u>ARGUMENT</u>

## I.     **THIS COURT HAS JURISDICTION UNDER CAFA.**

Plaintiff's remand motion should be denied, first, because this Court has jurisdiction under CAFA.  *See* 28 U.S.C. § 1332(d).  (*See also* Supplemental Statement of Jurisdiction.)  In filing its Second Amended Complaint on May 12, 2009, Plaintiff added new claims seeking to recover for the first time money spent on Vioxx by Louisiana citizens who did ***not*** receive Medicaid benefits.  (*See, e.g.,* 2d Supplemental and Amending Complaint ("2d Amend. Compl.") ¶ 185 ("the Defendant is liable to Plaintiffs for a return of the purchase price of Vioxx paid for by . . . the citizens of Louisiana").)[1]  As Merck explained in greater detail in its Supplemental

---

[1]     Neither Plaintiff's initial Petition (filed July 6, 2005 – after CAFA's enactment) nor its First Amended Complaint sought to assert individual monetary claims on behalf of unnamed Louisiana citizens.  Rather, those allegations were added in the Second Amended Complaint. (*Compare* Petition (R. Doc. 1-2) (No. 2:05-cv-03700-EEF-DEK) ¶¶ 32 ("Had the Petitioners known of such redhibitory defects, Petitioners would not have paid for Vioxx use by Louisiana citizens."), 33 ("Defendant is liable to Petitioners for a return of the purchase price [of Vioxx], including  interest, all expenses occasioned by the sale, all damages sustained by Petitioners, as well as costs, penalties and reasonable attorneys fees."  ), 53 ("As a direct and proximate result of the Defendant's wrongful conduct . . . , Petitioners have sustained financial losses . . . . Furthermore, Petitioners, the State of Louisiana, and/or DHH, which . . . spent millions of dollars

-3-

Statement of Jurisdiction, the Second Amended Complaint conferred federal jurisdiction upon this Court under CAFA.  (*See* Merck's Supplemental Statement of Jurisdiction ¶¶ 7-14.)

In particular, Plaintiff's Second Amended Complaint is a representative action asserting individual monetary claims on behalf of a group of unnamed putative parties, and is therefore subject to CAFA.  *See* 28 U.S.C. § 1332(d)(1)(B) ("the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action").  (*See also* Supplemental Statement of Jurisdiction ¶ 5.)  Plaintiff asserts individual monetary claims under a state procedural rule (the *parens patriae* doctrine) that purportedly permits Plaintiff to present the claims of an unnamed group of private parties.  (*See* 2d Amend. Compl. (R. Doc. 18754) at 1, ¶¶ 184-85, 192-93.)  CAFA's remaining requirements are also plainly met:  (1) Plaintiff is asserting claims on behalf of more than one hundred "particular private parties," *see* § 1332(d)(5)(B); (*see also* Supp. Statement of Jurisdiction ¶ 6); (2) the

---

to purchase Vioxx for persons covered under the Louisiana Medicaid program and to pay for medical services for such persons injured by Vioxx, are entitled to . . . actual damages."), *and* 1st Supplemental and Amend. Compl. (R. Doc. 4582-1) ¶¶ 32 ("Had the Petitioners known of such redhibitory defects, Petitioners would not have paid for Vioxx use by Louisiana citizens."), 33 ("Defendant is liable to Petitioners for a return of the purchase price [of Vioxx], including interest, all expenses occasioned by the sale, all damages sustained by Petitioners, as well as costs, penalties and reasonable attorneys fees."  ), 53 ("As a direct and proximate result of the Defendant's wrongful conduct . . . , Petitioners have sustained financial losses . . . .  Furthermore, Petitioners, the State of Louisiana, and/or DHH, which . . . spent millions of dollars to purchase Vioxx for persons covered under the Louisiana Medicaid program . . . are entitled to . . . actual damages . . . ."), *with* 2d Amend. Compl. ¶¶ 184 ("Had the Plaintiffs known of such redhibitory defects, Plaintiffs would not have paid for Vioxx use by Louisiana citizens, and the citizens of Louisiana would not have purchased Vioxx."), 185 ("Defendant is liable to Plaintiffs for a return of the purchase price [of Vioxx], including interest, all expenses occasioned by the sale, all damages sustained by Plaintiffs as well as costs, penalties and reasonable attorneys fees."), 192 ("As a direct and proximate result of the Defendant's wrongful conduct . . . , Plaintiffs and citizens of Louisiana have sustained financial losses . . . ."), 193 ("Furthermore, Plaintiffs, citizens of Louisiana, the State of Louisiana, and/or DHH, which . . . spent millions of dollars to purchase Vioxx for persons covered under the Louisiana Medicaid program  are entitled to . . . actual damages . . . .").

1008282v.1

aggregate amount in controversy sought on behalf of the class exceeds $5,000,000, exclusive of costs and interest, § 1332(d)(2) & (5); (*see also* Supp. Statement of Jurisdiction ¶ 12); and (3) at least one member of the putative class (which consists of "citizens of Louisiana") is diverse from the defendant (a New Jersey corporation with its principal place of business in Whitehouse Station, New Jersey), *see* § 1332(d)(2)(A); (*see also* Supp. Statement of Jurisdiction ¶ 9).

Indeed, the Fifth Circuit has squarely held that a *parens patriae* action brought by the Louisiana Attorney General is removable under CAFA if it asserts (as the Second Amended Complaint does here) individual claims for monetary relief on behalf of unnamed Louisiana residents.  *See Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008).  In *Allstate*, the Louisiana Attorney General sued several defendants in state court, alleging that they had engaged in a price-fixing scheme that violated the Louisiana Monopolies Act.  *Id.* at 422. Among other relief, the Attorney General sought treble damages, under its *parens patriae* authority, on behalf of individual Louisiana policyholders.  *See id.* at 423.  The defendants removed the case under CAFA, arguing that the Attorney General's attempt to assert claims on behalf of unnamed Louisiana consumers rendered the complaint subject to federal jurisdiction under CAFA.  *See id.*  The Fifth Circuit agreed, explaining that it was irrelevant under CAFA whether the Attorney General had labeled the case a putative "class action," because CAFA's jurisdictional provisions are controlled by the substance of the allegations set forth in the complaint.  *See id.* at 427-28.  The Fifth Circuit held that, because the Attorney General there sought to pursue individual monetary claims for Louisiana consumers, the case "easily" qualified at least as a "mass action" under CAFA, and was therefore removable.  *Id.* at 430 ("Having determined that the policyholders are real parties in interest, we agree that this action was properly removed pursuant to CAFA because the requirements of a 'mass action' are easily met

given the factual circumstances of this case.").[2]

This case is "easily" removable under CAFA for the same reasons.  Not only does Plaintiff seek to recover funds it spent on Medicaid beneficiaries' Vioxx prescriptions, but Plaintiff also seeks to use the *parens patriae* doctrine to assert individual monetary claims on behalf of **non**-Medicaid-eligible Louisiana consumers who purchased Vioxx.  (*See* 2d Amend. Compl. ¶¶ 184-85, 192-193.)  As Plaintiffs have explained, the Second Amended Complaint asserts "an action for . . . restitution of monies paid for Vioxx" brought "on behalf of Louisiana citizens in a *parens patriae* capacity."  (*See* Pl.'s Opp'n to Mot. to Dismiss (R. Doc. 20660) at 8.)[3]  Irrespective of whether Plaintiff may, as a matter of law, properly assert those claims, Plaintiff has **sought** to do so, and the allegations made in the operative Complaint are controlling

---

[2]     Having concluded that the case was removable as a "mass action" under CAFA, the Fifth Circuit in *Allstate* declined to determine whether it was also removable as a "class action."  *See* 536 F.3d at 430 ("Since we have concluded that this case was properly removed under CAFA's 'mass action' provision, we need not address whether this lawsuit could, following further proceedings on remand, properly proceed as a class action under CAFA.").  *See also* § 1332(d)(11)(A) (permitting removal of "a mass action").  Similarly, this Court need not decide whether this action is more properly considered a "mass action" or a "class action" under CAFA. That difference between a "class action" and a "mass action" under CAFA would only be relevant if there was a request to transfer this case to a different district in order for it to be joined with a multidistrict litigation proceeding.  *See* § 1332(d)(11)(C)(i).  Since this case (which was filed in the Civil District Court for the Parish of Orleans) is directly removable to this Court, where the *In re Vioxx Products Liability Litigation* proceeding (MDL No. 1657) is also pending, there is no need for such a transfer.  Any potential distinction between a "class action" and a "mass action" is therefore immaterial.

[3]     Plaintiff's Opposition to Merck's Motion to Dismiss confirmed beyond doubt that Plaintiff is seeking to exercise *parens patriae* authority to recover on behalf of non-Medicaid residents.  (*See also* Pl.'s Opp'n to Mot. to Dismiss at 6 ("The Attorney General seeks to vindicate the rights of . . . Louisiana consumers . . . ."); *id.* ("The Attorney General has alleged that . . . Louisiana consumers . . . suffered economic injury as a result of Merck's unfair and deceptive trade practices in the marketing of Vioxx."); *id.* at 7 (asserting that "[a]s a result of this fraudulent marketing, Louisiana consumers . . . suffered considerable economic injury . . . ."); *id* at 8 ("[T]he Louisiana Attorney General, . . . on behalf of Louisiana citizens in a *parens patriae* capacity . . . , brought an action for injunctive relief and restitution of monies paid for Vioxx . . . ."); *id.* at 9 ("[T]he Louisiana Attorney General has brought this action . . . on behalf of Louisiana citizens who purchased and consumed Vioxx . . . .").)

1008282v.1

for purposes of determining the existence of federal jurisdiction under CAFA.  *See Allstate*, 536 F.3d at 429 (noting that Attorney General's ability to recover monetary relief for individual citizens under state law was irrelevant to CAFA analysis, as his attempt to do so brought case within CAFA).  *See also In re: Katrina Canal Litig. Breaches*, 524 F.3d 700, 706 (5th Cir. 2008) (rejecting the argument that the presence of the State as a real party-in-interest defeated CAFA jurisdiction where the State sought to represent class of citizens whose presence would create minimal diversity).  This Court therefore has federal jurisdiction under CAFA, and should deny Plaintiff's Motion to Remand for that reason alone.[4]

## II.    THIS CASE IS SUBJECT TO FEDERAL JURISDICTION UNDER THE SUBSTANTIAL FEDERAL QUESTION DOCTRINE.

This case is also subject to federal jurisdiction for the independent reason that substantial federal question jurisdiction exists under 28 U.S.C. § 1331.  Although Plaintiff has not pled a federal cause of action, Plaintiff's claims will require the resolution of substantial and disputed questions of federal law, thereby conferring jurisdiction upon this Court.  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 315 (2005); *Smith v. Kansas City Title & Ins. Co.*, 255 U.S. 180, 199 (1921) ("The general rule is that where it appears from the [complaint] that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction . . . .").  (*See also* Notice of Removal ¶¶ 8-17 (R. Doc. 1-1) (No. 2:05-cv-03700-EEF-DEK); Merck's Opp'n to Mot. to

---

[4]    Because this Court has federal jurisdiction under CAFA, it may also exercise supplemental jurisdiction over Plaintiff's remaining claims.  *See* 28 U.S.C. § 1367(a).  *See also Gene & Gene LLC v. Biopay, Inc.*, 541 U.S. 318, 324 n.6 (5th Cir. 2008) (declining to consider whether district court possessed federal jurisdiction under the substantial federal question doctrine because "subject matter jurisdiction, in any event, is proper under provisions of CAFA").  Indeed, with a long-since scheduled trial date approaching fast, Plaintiff can offer no persuasive grounds for refusing to exercise supplemental jurisdiction here.

Remand (R. Doc. 1209) at 2-13.)  The reason why is that Plaintiff cannot prove an essential

element of its Medicaid-related damages claims (causation) without confronting substantial and

disputed federal questions regarding the limits federal law imposes on a state Medicaid agency's

ability to exclude specific drugs from its Medicaid program, thereby creating substantial federal

jurisdiction.

> **A.**      **This Court Has Substantial Federal Question Jurisdiction Because Plaintiff's Medicaid-Related Claims Necessarily Raise Substantial and Disputed Questions of Federal Medicaid Law.**

Plaintiff's Medicaid-related claims necessarily depend upon the allegation that, if LDHH

had known the alleged "truth" about Vioxx, then it would not have spent any money on Vioxx,

but would have instead refused to cover any Vioxx prescriptions.  (*See, e.g.*, 2d Amend. Compl.

¶¶ 183-84, 192, 208.)  But that core allegation presupposes that LDHH had the ***authority*** to

refuse to cover Vioxx prescriptions as a matter of law.  And, as more fully set forth in Merck's

forthcoming summary judgment briefing, federal Medicaid law generally forbids a participating

State's Medicaid agency to refuse to cover on-label prescriptions of an FDA-approved drug that

is subject to a rebate agreement between the manufacturer and the Secretary of the United States

Department of Health and Human Services ("HHS"), with certain narrow exceptions that Merck

contends do not apply here.  *See* 42 U.S.C. § 1396r-8(d).  Accordingly, in order for Plaintiff to

prove the essential element of causation, Plaintiff must first establish that some exception to the

general federal rule requiring coverage applies.  Plaintiff therefore must confront substantial and

disputed federal questions in order to prove its Medicaid-related claims, and those questions give

rise to substantial federal question jurisdiction.

In *Grable*, the Supreme Court unanimously reiterated its "longstanding" recognition that

federal question jurisdiction is not limited to federal questions that arise on the face of a

complaint, but also extends to "state-law claims that implicate significant federal issues."  *See*

-8-

545 U.S. at 312.  As the Court explained, federal question jurisdiction exists if a state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* at 315.  Under *Grable*, substantial federal question jurisdiction exists over a state-law claim if (1) that claim "necessarily" raises a federal issue, (2) the federal issue is actually disputed, (3) the federal issue is "substantial," and (4) the exercise of federal jurisdiction over that issue will not unsettle the federal-state balance of judicial power that Congress has sought to create.  *See id.*  As explained below, each of these four requirements is plainly satisfied here.

> **1.    Plaintiff Cannot Prove the Essential Element of Causation In Pursuing Its Medicaid-Related Claims Without Addressing Questions of Federal Law.**

The first *Grable* requirement is satisfied here because Plaintiff's case-in-chief "necessarily" raises a federal issue.  In particular, Plaintiff cannot establish the essential element of causation on its Medicaid-related claims without confronting federal law.  As Plaintiff concedes, this is not a traditional Medicaid fraud claim.  Plaintiff does not allege that Merck (1) caused LDHH to pay for prescriptions that were never filled, (2) encouraged non-Medicaid-eligible patients to falsify their income in order to obtain Medicaid coverage, or (3) encouraged physicians to miscode off-label prescriptions so that they would be covered as if they were on-label.  Indeed, Plaintiff's suit effectively concedes that every Medicaid prescription at issue here was an on-label prescription prescribed to a Medicaid-eligible patient and actually filled and ingested by that patient.  Nonetheless, Plaintiff asserts that ***every*** Vioxx prescription LDHH covered was fraudulent because Merck deceived LDHH into including Vioxx in its Medicaid formulary.

That novel application of state law necessarily raises federal questions because federal

1008282v.1

law generally prohibits States participating in Medicaid's prescription drug program (such as Louisiana) from declining to cover on-label prescriptions of FDA-approved drugs that are subject to rebate agreements with the Secretary of HHS.  *See* 42 U.S.C. § 1396r-8(d).  (*See also* Merck Mem. In Supp. of Mot. to Dismiss (R. Doc. 19361-2 ) at 4-8.)  In order for Plaintiff to establish that LDHH would have excluded on-label Vioxx prescriptions from Medicaid coverage had it known the alleged "truth," Plaintiff must first establish that LDHH had discretion under some provision of federal law to exclude Vioxx from its reimbursement scheme.  In order to make that showing, Plaintiff must necessarily confront questions of federal Medicaid law.

This is no longer a debatable proposition.  In Plaintiff's Opposition to Merck's Motion to Dismiss, Plaintiff already argued in considerable detail that federal law would have permitted LDHH to exclude on-label Vioxx prescriptions from Medicaid coverage.  (*See* Pl.'s Opp'n to Mot. to Dismiss at 11-15.)  Although Merck disagrees with Plaintiff's reading of federal law and believes that this case should be disposed of on summary judgment, the Court need not resolve the parties' disagreement over federal Medicaid law in order to decide whether it has jurisdiction in the first instance.  For jurisdictional purposes, it is enough that Plaintiff will necessarily have to ***confront*** federal questions in order to establish the essential element of causation in pursuing its Medicaid-related claims.[5]

Moreover, because the federal issues that will necessarily arise in the course of resolving Plaintiff's Medicaid-related claims bear on the issue of causation (rather than some affirmative

---

[5]     Plaintiff's alternative theory (that some Medicaid prescribers would not have prescribed Vioxx had they known the alleged "truth") cannot establish that *every* Vioxx prescription LDHH covered through Medicaid was infected by the alleged fraud, because some Medicaid prescribers would have undoubtedly prescribed Vioxx anyway.  That alternative theory is thus insufficient to obtain the relief Plaintiff seeks.  The only way for Plaintiff to recover for every Vioxx prescription LDHH covered is for Plaintiff to show that LDHH would have excluded Vioxx from Medicaid coverage if it had known the alleged "truth" – a showing that Plaintiff cannot make without first confronting federal Medicaid law.

-10-

defense asserted by Merck), this lawsuit plainly satisfies the first element of the *Grable* test.  In *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227 (10th Cir. 2006), for example, the Tenth Circuit Court of Appeals held that a complaint consisting of only state-law claims was nevertheless subject to substantial federal question jurisdiction because resolving those claims required determining the scope of a federal grant.  In so doing, the court rejected the plaintiffs' argument that the federal issue invoked by the defendants arose only as a defense.  *See id.* at 1234-35.  As the court explained, "[t]o prove that Union Pacific acted unlawfully, Plaintiffs must establish that the [federally granted] right-of-way prohibited the use to which it was put.  The federal issue, therefore, arises in Plaintiffs' case-in-chief, not by way of defense."  *Id.* at 1235.[6]

The same is true here.  In order to show that every Vioxx prescription LDHH covered was "fraudulent," Plaintiff will have to show that LDHH would have refused to cover any Vioxx prescriptions if LDHH had not been allegedly misled by Merck, which in turn will oblige Plaintiff to establish as part of its affirmative case that LDHH had the discretion to exclude Vioxx as a matter of federal law.  As in *Nicodemus*, then, "[t]he federal issue . . . arises in [Plaintiff's] case-in-chief," and it is therefore sufficiently imbedded in Plaintiff's Medicaid-related claims to confer substantial federal question jurisdiction upon this Court.

**2.     The Federal Medicaid Questions Presented by Plaintiff's Medicaid-Related Claims Are Actually Disputed.**

The second *Grable* requirement is also satisfied here because, as already noted, the federal questions raised here are actually "disputed."  In order to prove that LDHH would have excluded Vioxx from Medicaid coverage, Plaintiff must first show that LDHH had the authority

---

[6]     *Cf. Avila-Gonzalez v. Barajas*, No. 2:04CV567-FTM-33DNF, 2006 WL643297, at *1 (M.D. Fla. Mar. 2, 2006) ("While ordinarily contract claims are adjudicated in the state courts, absent the existence of an express federal cause of action, the Court may exercise jurisdiction over H-2A workers' claims because they turn on interpretation of terms dictated by federal statutes and regulations.").

1008282v.1

to do so under federal law.  As Merck will show in its forthcoming summary judgment briefing, Plaintiff cannot make that showing.  As just explained, Plaintiff has already indicated that it disputes Merck's interpretation of federal law.  (*See* Pl.'s Opp'n to Mot. to Dismiss at 11-15.) That is unsurprising.  Short of conceding that its Medicaid-related claims fail as a matter of law, Plaintiff **must** dispute Merck's interpretation of federal Medicaid law.  The resolution of that disputed issue is ripe for review, thereby satisfying the second element of the *Grable* test.

### 3.    The Federal Medicaid Questions Presented by Plaintiff's Claims Are Substantial.

*Grable*'s third requirement is met here because the federal questions raised here are not only disputed but "substantial," both in terms of the importance of the federal issues involved and in terms of the centrality of those issues in resolving the case.  Indeed, the federal questions that are at the core of this lawsuit directly affect the scheme Congress enacted in an effort to ensure that Medicaid-eligible patients have access to beneficial medicines while keeping the costs of that access under control.  As the Supreme Court explained in *Grable*, substantial federal question jurisdiction embodies

> the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

545 U.S. at 312.  Questions concerning the ability of a Medicaid participating State to exclude FDA-approved drugs from its formulary are precisely the kinds of questions that merit the "experience, solicitude, and hope of uniformity" offered in federal court.

As Merck's summary judgment briefing will explain in greater detail, federal Medicaid law greatly restricts a participating State's ability to exclude an FDA-approved drug that is subject to an agreement with HHS from Medicaid coverage.  The restrictions imposed by federal law clearly reflect "substantial" federal questions, and the resolution of those questions,

-12-

therefore, implicate important federal interests.  The federal statutory scheme at issue in this case

has received considerable attention from Congress as part of a federal effort to improve the care

of Medicaid patients while controlling the costs of that care.  In 1990, Congress overhauled the

Medicaid prescription drug program in an attempt to strike the right balance between those

potentially competing goals, adopting two key features of the federal Medicaid statute that are

relevant here.  On the one hand, Congress required that States participating in the Medicaid

prescription drug program generally cover all on-label prescriptions for drugs subject to a rebate

agreement with the Secretary of HHS.  *See* Omnibus Budget Reconciliation Act of 1990, Pub. L.

No. 101-508, § 4401(a), 104 Stat. 1388 (1990).  But, on the other hand, Congress mandated that

federal Medicaid funds would generally be unavailable to help cover drugs that were not subject

to a rebate agreement.  *See id.*  As the House Committee Report makes clear, these features were

intended to work in tandem to achieve the Congress's twin aims.  The requirement that

participating States cover on-label prescriptions was enacted out of a "concern[] that Medicaid

beneficiaries have access to the same range of drugs that the private patients of their physicians

enjoy."  *See* H.R. Rep. No. 101-881, at 96 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2107, 2108-

09.  But the cost of that access was kept in check by the rebate requirement, which ensured that

Medicaid would have "the benefit of the best price for which a manufacturer sells a prescription

drug."  *See id.* at 96, 1990 U.S.C.C.A.N. at 2108.

The Medicaid prescription drug regime also reflects other complex practical and policy

issues of federal law.  For instance, when Congress limited the ability of participating States to

deny prescription drug claims, it granted them "the option of imposing prior authorization

requirements with respect to covered prescription drugs," so long as States did not use prior

authorization as a back-door means of "preventing competent physicians from prescribing in

accordance with their medical judgment."  H.R. Rep. No. 101-881, at 98, 1990 U.S.C.C.A.N. at 2110.[7]  According to the House Committee Report, the prior authorization regime gave States a role in the prescribing process, but denied them the power to "exclude[] coverage of prescription drugs of manufacturers with agreements," as exclusion would undermine the goal of "assuring access."  *Id.*  And just three years after adopting that regime, Congress amended the statute, providing States some authority to exclude specific prescription drugs from Medicaid coverage, but placing tight restrictions on that authority.  *See* Omnibus Budget Reconciliation Act of 1993 (OBRA 1993), Pub. L. No. 103-66, § 13602(d), 107 Stat. 615 (1993).   As the House Committee Report explains, "[t]he purpose of this provision [was] to permit the States to reduce Medicaid spending on prescription drugs while not diminishing the medical care of Medicaid patients." *See also* H.R. Rep. No. 103-111, at 205 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 532.  As this history shows, Congress has seen fit to legislate with precision in this area in order to balance the competing objectives of the federal Medicaid scheme, rendering the federal interests in this case "substantial" under *Grable*.

Moreover, the federal questions raised here also potentially threaten the objectives Congress sought to achieve in creating and refining the federal Medicaid regime.  Plaintiff's attempt to establish that LDHH could have excluded Vioxx from Medicaid coverage if it had been aware of the information Merck allegedly withheld about the drug is not only misguided (as Merck will show in its summary judgment papers), it is also a direct assault on a key component of the scheme Congress enacted.  On these facts, there can be no serious question that the federal interests directly implicated by this lawsuit satisfy *Grable*'s third requirement that the federal

---

[7]     *See also Edmonds v. Levine*, 417 F. Supp. 2d 1323, 1330 (S.D. Fla. 2006) (noting that, under prior authorization regime, "the state may try to persuade a doctor to use an alternative drug, but ultimately the doctor retains the final word on use of the drug").

issue be "substantial." *See, e.g., Rose v. SLM Fin. Corp.*, No. 3:05CV445, 2007 WL 674319, at *4 (W.D.N.C., Feb. 27, 2007) ("Where a federal regulatory scheme requires private parties to undertake certain actions in order to comply with the law, the federal courts necessarily have a serious interest in examining the scope of liability that might arise as a result."); *Mitchell v. Osceola Farms Co.*, 408 F. Supp. 2d 1275, 1279 (S.D. Fla. 2005) (federal jurisdiction present over state-law contractual claim because "the crux of Plaintiffs' claim concerns the parties' intent with respect to the federally dictated terms," because dispute "depend[ed] on the underlying federal purpose in setting these terms," and federal issue presented was therefore substantial).[8]

> ### 4. Exercising Jurisdiction Here Will Not Disturb the Balance of Power Between the Federal and State Judiciaries.

Finally, the fourth requirement of *Grable* is satisfied here because exercising jurisdiction will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *See Grable*, 545 U.S. at 315. As already explained, the category of state-law claims that raise the federal questions at issue here is narrow. It does not include traditional Medicaid fraud claims, such as those alleging that a provider submitted claims for procedures that were never performed, or that a patient lied in order to obtain Medicaid coverage. Nor does it capture traditional product liability claims premised on a manufacturer's alleged failure to warn of a known or knowable risk. Rather, a rule recognizing the existence of substantial federal

---

[8]     This case is thus readily distinguishable from *Singh v. Duane Morris LLP*, 538 F.3d 334 (5th Cir. 2008). In *Singh*, the Fifth Circuit held that a legal malpractice claim under state law did not give rise to federal question jurisdiction simply because the underlying suit in which the malpractice allegedly occurred was under federal trademark law. As the court explained, the principal dispute in the malpractice claim concerned whether the plaintiff, in fact, had additional evidence that could have been presented in the trademark case, which his attorney negligently failed to present, and trademark law merely provided some context for assessing whether that evidence would have been relevant or material. *See* 538 F.3d at 339. Here, Plaintiff's affirmative case rests on disputed and substantial questions of federal law.

-15-

jurisdiction in this case would capture only those claims premised on the notion that a state Medicaid agency would have excluded a specific prescription drug absent the manufacturer's alleged misconduct.  Given the substantial and disputed questions of federal law noted above, there is a strong federal interest in achieving a uniform federal resolution of precisely those kinds of claims.

Indeed, Plaintiff's own arguments illustrate that this is not the sort of lawsuit that has traditionally been handled by state courts for purposes of applying the fourth *Grable* element. (*See* Mem. In Supp. of Mot. to Remand at 8.)  Rather, it is a lawsuit of recent vintage.  Without any tradition for this kind of lawsuit to proceed in state court, there is no basis for concluding that exercising federal question jurisdiction over this sort of case would "disturb[] any congressionally approved balance of federal and state judicial responsibilities."  Accordingly, the final requirement of *Grable* is met here.

**5.    Other Courts Have Exercised Substantial Federal Question Jurisdiction in Similar Circumstances.**

Although Plaintiff suggests in its most recent filing that Merck's *Grable* argument has been almost uniformly rejected in recent years, that is incorrect.  On the contrary, applying the four *Grable* requirements, federal courts across the country have held that this kind of dispute about federal Medicaid law gives rise to substantial federal question jurisdiction.  *See New Mexico v. Eli Lilly & Co.*, 04-MD-1596, 07-CV-01749 (JBW/RLM), 2009 U.S. Dist. LEXIS 20768, at *67-68 (E.D.N.Y. Mar. 11, 2009); *Montana ex rel. McGrath v. Eli Lilly & Co.*, Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 U.S. Dist. LEXIS 10355, at *8-10 (E.D.N.Y. Feb. 12, 2008); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007); *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022 (N.D. Cal. 2005).  In several of these cases, as here, governmental entities sought to recover Medicaid funds spent on

-16-

a drug on the theory that the defendant's alleged misrepresentations about the drug's side effects caused the state to cover the drug in its Medicaid program.  *See McGraw*, 476 F. Supp. 2d. at 231, 233-34; *McGrath*, 2008 U.S. Dist. LEXIS 10355, at *5-6; *New Mexico*, 2009 U.S. Dist. LEXIS 20768, at *64-65; *In re Zyprexa*, 375 F. Supp. 2d 170, 172-73 (2005) (retaining federal jurisdiction in case involving allegations that prescription drug manufacturer improperly marketed drug causing state Medicaid program to expend funds because of the "substantial federal funding provisions involved" and because the plaintiff's FDA-related allegations rendered the case "federally oriented").

For example, in *McGraw*, a State brought Medicaid-related claims against a prescription drug manufacturer, alleging that the manufacturer had fraudulently promoted its drug, causing damages to the State's Medicaid program.  *See* 476 F. Supp. 2d. at 233.  As the court explained, federal Medicaid law "mandated" that the State cover the defendant's drug through its Medicaid program, and resolving whether the State was obliged to cover that drug "using funds largely provided by the federal government" was thus "essential" to the plaintiff's theory of recovery. *See id.*  The court further explained that the plaintiff's attempt to undo a key aspect of the federal Medicaid regime through litigation raised substantial federal issues warranting the exercise of federal jurisdiction, particularly because permitting such a claim to proceed in state court could threaten to destabilize federal Medicaid law:

> At issue here is not simply a federal drug standard, but the factor of an intricate federal regulatory medicine scheme.  It includes detailed federal funding provisions, requiring some degree of national uniformity in interpretation. . . .  It is difficult to accept the proposition that the federal judicial system cannot provide a single integrated practice in these cases by the Attorneys General.  Potentially fifty states and the Commonwealth of Puerto Rico can independently sue in their respective jurisdictions; local courts can potentially deliver at least fifty-one different results.

*McGrath*, 2008 U.S. Dist. LEXIS 10355, at * 16-18 (internal citations omitted).

-17-

Similarly, in a case involving Medicaid drug pricing, the court in *County of Santa Clara* held that federal jurisdiction existed under *Grable* because the plaintiff's state-law claims against pharmaceutical manufacturers involving alleged overcharges for Medicaid drugs presented substantial questions of federal law.  The court observed that one measure of evaluating substantiality is "the importance of the federal issue."  401 F. Supp. 2d at 1027.  The court noted that, "[u]nder this approach, the following issues have been found to be substantial:  those that directly affect the functioning of the federal government, those in an area reserved for exclusive federal jurisdiction, and those that impact a complex federal regulatory scheme."  *Id*.  Applying that standard, the court found the *Grable* factors satisfied.  *Id.*; *see also Municipality of San Juan v. Corporación para el Fomento Económico de la Ciudad Capital*, 415 F.3d 145, 148 n.6 (1st Cir. 2005) (noting agreement with a magistrate judge's finding of substantial federal question jurisdiction where "the propriety of [the defendant's] conduct turns entirely on its adherence to the intricate and detailed set of federal regulatory requirements, and the funds at issue are federal grant monies").

As these cases further illustrate, the *Grable* test is met here, and this Court has substantial federal question jurisdiction.

> **6.     Plaintiff's Attempts to Defeat Substantial Federal Question Jurisdiction Fail.**

Plaintiff's contentions that substantial federal question jurisdiction does not exist here fail.  To begin with, Plaintiff devotes substantial space in its brief in support of its Motion to Remand to arguing that federal courts are courts of limited jurisdiction, and that the category of cases covered by substantial federal question jurisdiction is narrow, but gives comparatively little attention to the issue raised here:  whether ***this case*** is within the narrow category of removable cases.  (*See* Mem. In Supp. of Mot. to Remand at 5-7.)  Similarly, although Plaintiff's initial

-18-

remand briefing admits that "the court that ultimately hears the case may have to consider the federal Medicaid statutes to a certain degree," Plaintiff fails to explain why it nonetheless contends that there is no federal question jurisdiction, beyond simply noting its disagreement with Merck's position on "just how much the Medicaid statutes will come into play." (*Id.* at 8.)

To date, Plaintiff has never addressed Merck's principal point: that Plaintiff cannot establish the essential element of causation with respect to its Medicaid-related claims without confronting the federal limitations on LDHH's ability to deny coverage for on-label Vioxx prescriptions. Thus, although Plaintiff is correct that the Supreme Court has stated that substantial federal question jurisdiction covers a "special and small category" of cases, *see Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), Plaintiff has failed to answer Merck's arguments that this case fits within that category. (*See also* Mem. In Supp. of Mot. for Expedited Consideration of Mot. to Remand at 6.)

Indeed, in its most recent jurisdictional filing, Plaintiff admits that the district courts that have addressed the existence of substantial federal question jurisdiction in a case such as this are split. (*See id.* at 6-7 (noting that *In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), supports Merck's position).) Accordingly, at most, Plaintiff has identified judicial disagreement over the issues before the Court. But as set forth above, an element-by-element analysis under *Grable* reveals that substantial federal question jurisdiction exists here.

Moreover, a review of the decisions Plaintiff cites reveals them to be distinguishable or unpersuasive. Several of those decisions simply assert that the *Grable* test is not met, that jurisdiction is lacking, or have obvious faults in their analysis.[9] Other decisions Plaintiff relies

---

[9]     *See Cox ex rel. Michigan v. Merck & Co., Inc.*, 1:08-CV-918 (W.D. Mich., Jan. 16, 2009) (Ex. 2 to Pl.'s Mot. for Expedited Consideration of Mot. to Remand) (two-page, unreported order granting motion for remand "for the reasons stated in detail in the hearing"); *Alaska v. Eli Lilly &*

-19-

on did not even involve the federal questions raised here.  For example, some of the decisions concerned only allegations of off-label promotion, which do not raise the same disputed federal questions as this case because federal law generally permits state Medicaid agencies to deny coverage for off-label prescriptions.[10]  *See* § 1396r-8(d)(1)(B)(i) & (k)(6).  In another instance, Plaintiff relies on a decision involving a private tort claim, which did not raise *any* issues of Medicaid reimbursement, federal or state.[11]

In fact, only one of the decisions Plaintiff cites addresses the issues Merck has raised here in any meaningful way.  *See Utah v. Eli Lilly & Co.* ("*Utah v. Eli Lilly*"), 509 F. Supp. 2d 1016 (D. Utah 2007).[12]  But the *Utah v. Eli Lilly* court relied on the incorrect premise that substantial

---

*Co.*, No. 3:06-CV-88 TMB, 2006 WL 2168831, at *3 (D. Alaska, July 28, 2006) (stating without any analysis that "[t]he Court finds no substantial federal question in this matter at this time"); *Foti v. Janssen Pharmaceutica*, No. 04-2575/2576 (W.D. La. June 20, 2005) (Ex. 1 to Pl.'s Mot. for Expedited Consideration of Mot. to Remand) (unreported, one paragraph order granting motion to remand).  In *Texas v. Merck & Co., Inc.*, 385 F. Supp. 2d 604 (W.D. Tex. 2005), the court simply asserted that substantial federal question jurisdiction was lacking because the Medicaid program was a state program, thus failing completely to appreciate the extent to which federal law constrains the discretion of a state Medicaid agency.  *See* 385 F. Supp. 2d at 608 ("[T]he 'Medicaid program' referred to in these provisions [of Texas law] is Texas's Medicaid program, not the federal [M]edicaid program.").

[10]      *See Hood ex rel. Mississippi v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, Civil Action No. 1:08CV166-SA-JAD, 2009 WL 561575, at *1 (N.D. Miss. Mar. 4, 2009) (noting that only question of Medicaid law raised by suit was "the meaning and application of the federal term 'medically necessary '"); *South Carolina ex rel. McMaster v. Eli Lilly & Co.*, C.A. No. 7:07-1875-HMH, 2007 WL 2261693, at *1 (D.S.C., Aug. 3, 2007) (same); *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 581-82 (E.D. Pa. 2007) (explaining that defendants' substantial federal question argument focused on claim alleging that defendants promoted drugs for "non-medically accepted indications or non-medically necessary uses" which all parties agreed federal law did not require state Medicaid program to cover).

[11]      *See Allen v. GlaxoSmithKline, PLC*, Civil Action No. 07-5045, 2008 WL 2247067, at *1 (E.D. Pa., May 30, 2008) ("Plaintiff asserts that GSK's pharmaceutical products caused him to suffer a severe life-threatening asthma exacerbation.").  *See also id.* at *9 (distinguishing *Zyprexa* as case involving "Medicaid fraud claims, not a products liability action").

[12]      Notably, *Utah v. Eli Lilly* appears to have been an off-label promotion case, which would distinguish it from this lawsuit.  *See* 509 F. Supp. 2d at 1018 ("Plaintiff specifically alleges that it has paid for inappropriate, unnecessary, and unauthorized off-label prescriptions for Zyprexa.").

-20-

federal question jurisdiction is limited to circumstances in which the **only** questions raised are federal. *See id.* at 1022 (concluding that federal question was not actually presented because Plaintiff had raised "multiple bases" for recovery). Thus, the court concluded that substantial federal question jurisdiction was lacking because the plaintiff could receive some of the requested relief without resort to federal law. *See id.* But substantial federal question jurisdiction does not require that every claim for relief turn exclusively on federal law. Indeed, Congress has expressly provided for supplemental federal jurisdiction over state-law claims, so the notion that every claim in a suit must give rise to § 1331 jurisdiction is incorrect. *See* 28 U.S.C. § 1367(a). Likewise, as the Tenth Circuit explained in *Nicodemus*, "[i]f **any one claim** within [the] complaint supports federal question jurisdiction, a federal court may assert jurisdiction over all the claims, including any alleged state-law claims, arising from the same core of operative facts." 440 F.3d 1235 n.8 (collecting authorities) (emphasis added). So long as the plaintiff will have to confront a federal issue in order to obtain **some** of the requested relief, the federal issue is necessarily presented, and the inquiry turns on whether it disputed and substantial and whether the exercise of jurisdiction will upset the federal-state balance of judicial power. The *Utah v. Eli Lilly* court simply erred in concluding otherwise.

Nor, as the *Utah v. Eli Lilly* court appeared to hold, is there any requirement that a given claim raise **only** federal questions. *See* 509 F. Supp. 2d at 1022 (rejecting federal question jurisdiction because "resolution of this claim does not hinge **solely** on a federal question" (emphasis added)). So long as the plaintiff is pressing a theory of recovery that will, if the plaintiff succeeds, require the court to address a federal issue, such a federal issue is necessarily presented by the plaintiff's claim. To be sure, a court considering the substantiality of a federal question may also consider how central the federal questions raised are to the dispute before it.

-21-

*See Empire HealthChoice*, 547 U.S. at 700-01 (contrasting *Grable*, which "presented a nearly pure issue of law," with case before it, which involved claim that was "fact bound and situation-specific").  But the *per se* rule the *Utah v. Eli Lilly* court applied has no basis in law or reason. *See* Jennifer E. Fairbairn, *Keeping* Grable *Jurisdiction Slim:  Federal Question Jurisdiction and the Centrality Test*, 58 EMORY L.J.  977, 1006-08 (2009) (criticizing *Utah v. Eli Lilly* court's conclusion that "the federal issue must always be the only disputed issue" as "problematic" and unjustified by either *Grable* or *Empire HealthChoice*).[13]

Finally, the court in *Utah v. Eli Lilly* placed undue emphasis on in the absence of a federal cause of action for Medicaid fraud.  According to that court, the lack of a federal cause of action was "especially important" because "Congress has specifically required states to seek reimbursement from legally liable third parties, but has provided no federal cause of action to do so."  *See* 509 F. Supp. 2d at 1023.  Thus, the court reasoned, Congress must have contemplated that Medicaid fraud claims could proceed in state court.  *See id.*  But it does not follow that no Medicaid fraud claims are removable under § 1331.  For example, Congress clearly did not intend to create general federal jurisdiction over quiet title actions, yet the Supreme Court unanimously held that the quiet title action in *Grable* was removable because the plaintiff's theory of relief necessarily raised disputed and substantial issues of federal law.  *See* 545 U.S. at 319 ("Although Congress also indicated ambivalence in this case by providing no private right of action to Grable, it is the rare state quiet title action that involves contested issues of federal law." (citation omitted)).  As explained above, it is a rare Medicaid fraud claim that will raise the

---

[13]     In this respect, the disputed federal questions at issue here concerning LDHH's ability to exclude Vioxx from its Medicaid program, as a matter of federal law, are pure questions of law (that is, the Court can address them without resolving any disputed issue of fact) that are central to Plaintiff's Medicaid-related claims (which proceed on the assumption that LDHH had the authority to exclude Vioxx).

1008282v.1

substantial federal questions raised here.  But this is such a case.  Plaintiff cannot recover for every Vioxx prescription LDHH covered through Medicaid without establishing that federal Medicaid law would have permitted LDHH to deny every on-label Vioxx claim it received.  That showing requires the Court to grapple with substantial federal questions that have received considerable Congressional attention, and which ought to be litigated in a federal forum.  *See Grable*, 545 U.S. at 312.  The Medicaid-related questions necessarily presented give rise to federal question jurisdiction.

> **B.    This Case Also Raises Substantial Questions Under the FDCA.**

In addition, substantial federal question jurisdiction exists because Plaintiff's claims raise substantial issues under the FDCA.  On this point, Merck generally rests on its prior briefing. (*See* Merck Opp'n to Mot. to Remand at 14-16.)  Merck notes here simply that Plaintiff's insistence that its suit does not raise substantial questions under the FDCA is belied by Plaintiff's decision to designate a former FDA Administrator to offer expert opinions regarding Merck's compliance with the FDCA and FDA regulations promulgated under the FDCA.  (*See generally* Report of David A. Kessler, M.D. (attached hereto as Exhibit A).)  Regardless of whether or to what extent Dr. Kessler is permitted to testify at trial, the fact that Plaintiff felt compelled to offer his testimony simply confirms that this suit contains imbedded federal questions under the FDCA.

For these reasons, this Court has substantial federal question jurisdiction.

## III.    THIS COURT HAS DIVERSITY JURISDICTION.

This Court also has diversity jurisdiction here, for the reasons Merck has previously set forth.  (*See* Mem. in Opp'n to Mot. to Remand at 14-20.)  *See also* 28 U.S.C. § 1332(a).  In fact, despite Plaintiff's suggestion in its most recent filing that the Fifth Circuit has held that LDHH is an arm of the State, and not a citizen of Louisiana, for purposes of § 1332(a), Plaintiff is

1008282v.1

ultimately forced to concede that the decisions it relies on address Eleventh Amendment immunity, not diversity jurisdiction. (*Compare* Mem. In Supp. of Mot. for Expedited Consideration of Mot. to Remand at 4-5, *with id.* at 5 n.1.) At the time this case was removed, the only real parties in interest were LDHH, a citizen of Louisiana, and Merck, a New Jersey corporation with its principal place of business in Whitehouse Station, New Jersey. So there was complete diversity of citizenship at the time Merck removed the case to federal court. The amount in controversy has plainly exceeded $75,000, exclusive of interest and costs, since this suit was filed, and this Court therefore has jurisdiction over this action under § 1332(a).

## CONCLUSION

For all of the foregoing reasons, this Court possesses jurisdiction, and should therefore deny Plaintiff's Motion to Remand.

Dated: February 18, 2010

Respectfully submitted,

*/s/Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, LA  70130
Phone:  504-581-3200
Fax:  504-581-3361

*Counsel for Merck Sharp & Dohme Corp.*

-24-

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Defendant's Supplemental Opposition to Plaintiff's Motion to Remand* has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 18th day of February, 2010.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

-25-