UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 |
| This Document Relates To: | SECTION L |
| STATE OF LOUISIANA, *ex rel.*, JAMES D. CALDWELL, JR., Attorney General,<br><br>Plaintiffs,<br><br>v.<br><br>MERCK SHARP & DOHME CORP.,<br><br>Defendants. | JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE KNOWLES<br><br>Case No. 05-3700 |

**PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT THAT THE 2002 VIOXX LABEL WAS FALSE AND MISLEADING AS TO PURPORTED GI BENEFITS TO NON-STEROID USERS IN THE VIGOR STUDY**

I.  **INTRODUCTION**

Plaintiff Louisiana Attorney General hereby brings this Motion for Summary Judgment that the 2002 Vioxx label was false and misleading as to claims of gastrointestinal (GI) risk reduction for patients who were not users of steroids based on the VIGOR study, which were contradicted by the actual data from that study. For the reasons set forth in this memorandum, the relevant facts are undisputed, and there are no material issues that would preclude the Court from entering judgment as a matter of law.

II. **APPLICABLE STANDARD OF LAW**

Federal Rules of Civil Procedure 56(c) provides that a motion for summary judgment should be granted if the pleadings, discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Under Rule 56(d), (1) "[i]f summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue," and (2) an "interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages."

The purpose of the summary judgment procedure is to promote the expeditious disposition of cases. Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE (1998), § 2712, p. 200. Even where the parties vigorously dispute the legal conclusions to be drawn from the facts, summary judgment is properly granted where the facts in the record are not in dispute. *Sagers v. Yellow Freight Sys., Inc.* (5th Cir. 1976) 529 F.2d 721, 728 n.13 (summary judgment granted as to liability).

In this case, plaintiff moves for summary judgment on the issue of liability, based upon the undisputed factual evidence that the 2002 Vioxx label misrepresented clinical trial results regarding the gastrointestinal (GI) safety of the drug. In particular, the label stated that a risk reduction of approximately 50% was maintained for complicated "Perforations, Ulcerations and Bleeds"("PUBs") among Vioxx users compared to those on naproxen, with or without concomitant steroid use, when in fact there was no significant risk reduction for complicated PUBs among non-steroid users.[1] The undisputed facts are detailed below.

---

[1] Alternatively, the Court should exercise its authority under Rule 56(c)(1) to determine that the material facts concerning the misrepresentation in the label are "not genuinely at issue."

859070.2

### III. THE VIOXX LABEL MATERIALLY MISREPRESENTED THE PURPORTED RISK REDUCTION OF SERIOUS GI EVENTS WITH USE OF VIOXX FOR NON-STEROID USERS, FROM APRIL 2002 UNTIL PRODUCT WITHDRAWAL ON SEPTEMBER 30, 2004

The VIGOR clinical trial has been the focus of much attention in the Vioxx litigation, primarily concerning interpretation of the higher incidence of thrombotic events including heart attacks among patients taking Vioxx compared to naproxen. The present motion does not address cardiovascular risk, but instead concerns a misrepresentation of GI safety in the Vioxx 2002 label that has not been raised in previous trials or motions. As detailed below, the undisputed material facts show that the 2002 Vioxx label claimed a risk reduction of approximately 50% for serious ("Complicated") GI events among patients in the VIGOR study regardless of whether they were steroid users, when in fact the VIGOR data show a non-statistically significant Relative Risk of 1.12 among non-steroid users, compared to a statistically significant RR of 3.85 among steroid users. Thus, the label misrepresents that non-steroid users had a similar benefit to steroid users, contrary to the facts. Because steroid users constitute a small minority of patients for whom NSAID pain relievers are prescribed, the true VIGOR data would have shown lack of benefit to the large majority, for the most serious type of GI events.

### A. The VIGOR Clinical Trial Involved Rheumatoid Arthritis Subjects Who Commonly Used Corticosteroids, a Known Risk Factor for NSAID-Related GI Adverse Events

The VIGOR clinical trial was published in November 2000, and certain results of the trial were added to the Vioxx label in April 2002. The trial involved a population of rheumatoid arthritis (RA) patients treated with 50 mg Vioxx daily compared to naproxen 1000 mg daily. (Bombardier article; Declaration of Donald C. Arbitblit, hereinafter "DCA Decl.," Exhibit 1; Vioxx 2002 Label, DCA Decl. Exhibit 2).

The VIGOR trial was designed to determine whether 50 mg Vioxx would be associated

859070.2

with a lower incidence of GI adverse events than 1000 mg naproxen daily. The study design identified both a "primary endpoint" and a number of "secondary endpoints" which were the basis for statistical analyses and testing of hypotheses. The primary endpoint was denominated as "Confirmed Perforations, Ulcers and Bleeds," or "PUBs." A secondary endpoint consisted of "Confirmed, Complicated PUBs," and the complicated PUBs were a subset of the overall "PUB" endpoint. "Complicated" PUBs were defined to include only the most serious of the PUB events, including perforations of the GI wall, obstruction of the GI tract, and significant hemorrhages (bleeds). (Bombardier, DCA Decl. Exhibit 1.) Because of their greater severity and risk of "major morbidity or even mortality," the complicated PUBs constitute the "most clinically significant endpoint." (Julie Report at 4; DCA Decl., Exhibit 5.)

OA patients outnumber RA patients by about 20 to 1; there are approximately 1.3 million RA patients in the United States, and about 27 million with osteoarthritis (OA). (Julie Report at 16; DCA Decl., Exhibit 5.) RA patients, but not OA patients, commonly use corticosteroids as an integral part of their therapeutic regimen, and approximately 56% of the patients in the VIGOR study used steroids such as prednisone for treatment of RA. (Bombardier; Julie Report at 10, 11, 16; DCA Decl. Exhibits 1, 5). It is undisputed that steroid use is a risk factor for serious adverse GI events associated with the use of nonsteroidal anti-inflammatory drugs (NSAIDs), and the peer-reviewed literature demonstrates a four-fold increase in the rate of such events among NSAID users on steroids compared with NSAID users who do not use steroids. (*Id.*)

> **B.     The 2002 Label Misrepresented the VIGOR Data to the LDHH with Regard to Purported Risk Reduction for Complicated PUBs among Non-Steroid Users**

For the purpose of this motion, the relevant portion of the 2002 Vioxx label is the paragraph pertaining to the VIGOR study which reads as follows:

- 4 -

859070.2

> "The risk reduction for PUBs and complicated PUBs for VIOXX compared to naproxen (approximately 50%) was maintained in patients with or without the following risk factors for developing a PUB (Kaplan-Meier cumulative rate of PUBs at approximately 10 1/2 months, VIOXX versus naproxen, respectively): with a prior PUB (5.12, 11.47); without a prior PUB (1.54, 3.27); age 65 or older (2.83, 6.49); or younger than 65 years of age (1.48, 3.01). A <u>similar risk reduction for</u> PUBs and <u>complicated PUBs (approximately 50%) was also maintained in patients with or without *Helicobacter pylori* or concomitant corticosteroid use.</u>"

( DCA Decl., Exhibit 2, previously marked as Taylor Exhibit 13; emphasis added).

The actual data for complicated PUBs in the VIGOR study show that there was not a 50% risk reduction for complicated PUBs in either non-steroid or steroid users. Instead, among the non-steroid users there were 10 complicated events in the naproxen group compared to 9 among those on Vioxx, yielding a non-significant RR of 1.12 (i.e., a 12% difference). In contrast, among steroid users in the VIGOR trial, there were 27 complicated PUBs in the naproxen group compared to 7 in the Vioxx group, yielding a statistically significant RR of 3.85 (i.e., a 285% difference). (Julie Report at 11; DCA Decl., Exhibit 5).[2]

At his deposition on January 26, 2010, defense expert David Sales, M.D., admitted that he did not dispute the accuracy of the data described above for the complicated PUBs among steroid users versus non-steroid users in the VIGOR trial, nor did Dr. Sales dispute the accuracy of the statistical analyses of RR based on those data. Indeed, Dr. Sales testified that when he first saw the data in the November 2009 report of plaintiff's expert, Dr. Julie, he checked the accuracy by performing his own calculations of comparative incidence rates. Dr. Sales repeated that calculation during the deposition, and his calculations were marked as deposition exhibit 10 (DCA Decl., Exhibit 7) (Sales Tr., 31:2-10; 41:3-46:7; DCA Decl., Exhibit 6). Of further note,

---

[2] The difference between the relative risks for the two subgroups was statistically significant ($p = 0.047$), showing that the result was not likely due to chance. (DCA Decl., Exhibit 5; Julie Report at 11).

- 5 -

859070.2

Dr. Sales testified that he asked defense counsel for documents relevant to the data and calculations in the report of plaintiff's expert; that he was told the same numbers as those set forth in plaintiff's expert report; and that he was not provided with any documents that contradicted their accuracy. (Sales Tr. at 35:4-38:20; 41:3-18; DCA Decl., Exhibit 6). In short, the undisputed facts show that the 2002 label claimed that a complicated PUBs risk reduction of approximately 50% was maintained in patients with or without corticosteroid use, when in fact there was no significant difference in complicated PUBs among the non-steroid users on Vioxx and those on naproxen.

### C. Communications to LDHH Perpetuated the Misrepresentation

Fran Kaiser, M.D., the Merck Regional Medical Director (RMD) responsible for the South Central region that included Louisiana, testified that she met with Dr. Culotta, the head of the Pharmaceuticals and Therapeutics ("P&T") Committee for the Louisiana Department of Health and Hospitals ("LDHH"), on August 8, 2002, to review "changes in the label," which included the GI outcomes of the VIGOR study, and to discuss Dr. Culotta's willingness "to entertain consideration" of Vioxx for the PDL. (Kaiser Tr. 101:11-104:15; 213:22-215:12; DCA Decl., Exhibit 8, previously marked as Kaiser Dep. Ex. 16). Dr. Kaiser testified that it was important to provide "fair and balanced information to customers or physicians like Dr. Culotta" because "[i]t helps them ascertain both risks and benefits and also be provided with what's an— an update to information that was deemed important enough to add to the label." (Kaiser Tr., 213:22-215:1). "If it wasn't in the label, it wasn't discussed." (*Id.*, at 131:13-19; emphasis added).

As noted above, the data showing lack of risk reduction for serious, complicated GI adverse events among non-steroid users were not only omitted from the 2002 label, but were affirmatively misrepresented. Thus, Dr. Kaiser's "label update" to Dr. Culotta, in August 2002,

859070.2

was fundamentally flawed and falsely presented the data concerning GI safety among non-steroid users in the VIGOR study.

Provider Synergies, L.L.C., the company that supplied information to the LDHH to guide its decisions on whether to add Vioxx to the preferred drug list (PDL), included a summary of the VIGOR trial in a monograph dated April 2003 (DCA Decl., Exhibit 4; previously marked as Taylor deposition Exhibit 15). That monograph summary described the VIGOR results for complicated PUBs as follows: "Rates of serious GI events, including perforation, obstruction, and severe upper GI bleeding, were 0.6 and 1.4 events per 100 patient years in the rofecoxib and naproxen groups, respectively (p=0.005)." (*Id.*, at LaAG-VIOXX-003343-44). Since the lack of a significant difference in serious GI event rates for non-steroid users had not been disclosed in the VIGOR article nor in the 2002 label, Provider Synergies, the company responsible for informing LDHH of relevant information regarding medication risks and benefits, could not have known nor conveyed this data to LDHH.

Valerie Taylor was the pharmacist at Provider Synergies, L.L.C., who was directly responsible for communicating information and recommendations about Vioxx to LDHH, both in the monographs and in oral presentations to the P & T Committee. Dr. Taylor testified that the 2002 label for Vioxx, including the paragraph quoted above regarding claims of risk reduction for complicated PUBs, was information she had and considered in making such presentations and recommendations. (Taylor Tr. at 60:15-19). At her deposition, Dr. Taylor reviewed the 2002 label provision quoted above (pp. 4-5), and she then testified as follows:

> "Q. Would you interpret that to mean that the approximate 50 percent reduction in PUBs and complicated PUBs was true for patients with or without concomitant steroid use?
>
> "A. That's what's stated in there, yes."

(113:2-8; DCA Decl., Exhibit 4). Dr. Taylor further testified that she relied on the 2002 label,

- 7 -

859070.2

with the above-quoted paragraph included, in developing the monograph and making her ultimate recommendation to the P&T Committee. (*Id.* at 1113: 16-20).

Thus, the person with primary responsibility to inform LDHH of the risks and benefits of potential PDL drugs interpreted the 2002 Vioxx label to affirm a 50% risk reduction in complicated PUBs regardless of steroid use, when the undisputed but previously undisclosed data belie that conclusion.

### D. LDHH Likely Would Not Have Approved Vioxx for the PDL if the True Data Had Been Disclosed

If Merck had disclosed the true complicated PUB data from the VIGOR study, the primary reason advanced for its use would have been nullified. Chronic steroid users are a subset of RA patients who constitute a small minority of the population for whom Vioxx was intended, and the most clinically relevant safety outcomes were the complicated (serious) perforations, obstructions, and severe upper GI bleeds. Thus, the true data from the VIGOR study would have shown the lack of significant difference in serious GI events for non-steroid users in the VIGOR trial, thereby negating the principal basis upon which Vioxx was marketed and approved for the PDL in Louisiana.

### IV. CONCLUSION

For the reasons set forth above, it is undisputed that the 2002 Vioxx label affirmatively misrepresented that there was a 50% risk reduction for serious GI events among Vioxx users compared to naproxen users in the VIGOR trial, regardless of steroid use, when in fact there was no significant benefit for the non-steroid users. Had the truth been disclosed, the LDHH likely would not have approved Vioxx for the PDL. Plaintiff respectfully submits that

the Court should enter judgment as a matter of law that defendant misrepresented the benefits of Vioxx and is liable for damages arising from that misrepresentation.

Respectfully submitted, this 19th day of February, 2010.

/s/ James R. Dugan
James R. Dugan, II (La. Bar No. 24785)
Douglas R. Plymale. (La. Bar No. 28409)
Stephen B. Murray, Jr. (La. Bar No. 23877)
Stephen B. Murray, Sr. (La. Bar No. 9858)
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
Kim Sullivan
General Counsel
Louisiana Department of Health and Hospitals
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

Counsel for Plaintiff

859070.2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Plaintiff's Memorandum In Support of Motion For Summary Judgment That The 2002 Vioxx Label Was False and Misleading As To Purported GI Benefits To Non-Steroid Users In The Vigor Study has this day been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced, in accordance to pretrial order No. 8B, on this the 19th day of February, 2010.

/s/ James R. Dugan

859070.2