## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 |
| This Document Relates To: | SECTION L |
| STATE OF LOUISIANA, *ex rel.*, JAMES D. CALDWELL, JR., Attorney General, | JUDGE ELDON E. FALLON |
| Plaintiffs, | MAGISTRATE JUDGE KNOWLES |
| v. | |
| MERCK SHARP & DOHME CORP., | Case No. 05-3700 |
| Defendants. | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE EXPERT REPORT OR IN THE ALTERNATIVE TO EXCLUDE EXPERT TESTIMONY

Merck proffers the expert opinion of cardiologist Dr. Clement Eiswirth, but failed to timely disclose the data and information that Dr. Eiswirth considered in forming that opinion. Dr. Eiswirth's testimony also fails to meet the *Daubert* test for reliability and relevance of expert testimony. For these reasons, detailed below, Dr. Eiswirth's testimony should be struck for failure to comply with Federal Rule of Civil Procedure 26. In the alternative, his testimony should be excluded pursuant to Federal Rule of Evidence 702, for failure to satisfy the standard for admissible expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993).

I.   **THE COURT SHOULD STRIKE DR. EISWIRTH'S REPORT FOR FAILURE TO COMPLY WITH RULE 26**

A.   **Legal Standard**

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, an expert report "must contain a complete statement of all opinions the witness will express and the basis and reasons for them," including "the data or other information considered by the witness in forming" his opinions. Fed. R. Civ. P. 26(a)(2)(B).   Rule 26(a) clearly requires a complete and detailed report. *Brumley v. Pfizer, Inc.* 200 F.R.D. 596, 603 (S.D. Tex. 2001), *Sierra Club v. Cedar Point Oil Co.,* 73 F.3d 546, 569, 571 (5th Cir.), *cert. denied,* 519 U.S. 811, 117 S.Ct. 57 (1996); *see also* Advisory Committee Note to Rule 26(a) (report must be "detailed and complete").   A detailed and complete expert report must include "how and why the expert reached a particular result, not merely the expert's conclusory opinions.  *Reed v. Binder,* 165 F.R.D. 424, 429 (D.N.J.1996)." *Denley v. Hartford Ins. Co. of Midwest*, 2008 WL 2951926, 4 (E.D. La. 2008).

The "detailed and complete" requirement is necessary to "avoid the disclosure of sketchy and vague expert information.'" *Sierra Club,* 73 F.3d at 571; *Brumley v. Pfizer, Inc.,* 200 F.R.D. at 603.   A detailed and complete also report is also required so "that opposing counsel is not forced to depose an expert in order to avoid ambush at trial" and "to shorten or decrease the need for expert depositions and thus to conserve resources. *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.,* 516 U.S. 822 (1995)." *Denleyt*, 2008 WL 2951926, 4.

Pursuant to Rule 37(c), a party that fails to comply with Rule 26(a) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1), *Barrett v. Atlantic Richfield Co.,* 95 F.3d 375, 380 (5th Cir. 1996) (finding that district court acted within discretion to strike expert witnesses under Rule 37); *U.S. ex rel. Barron v. Deloitte & Touche,* 2008 WL

- 2 -

7136868, 5 (W.D. Tex. 2008); *see also E.E.O.C. v. Mazzanti*, 2009 WL 927426, 5 (N.D. Miss. 2009) ("if there are portions of [the expert's] deposition that specifically relate to medical records not named in her report, those portions should be stricken and prohibited from introduction into evidence at trial").

### B.    Merck's Failure to Disclose the Data and Information Dr. Eiswirth Considered in Forming Opinions

Contrary to the requirements of Rule 26, Merck failed to disclose the data and information Dr. Eiswirth considered in forming his opinions.

Dr. Eiswirth's expert report was served on Plaintiff on December 7, 2009.  Attached to the report was a list titled "Materials Reviewed." (Gross Decl., Ex. 1, hereinafter "Original List.")  The Original List has 169 entries.  On January 21, 2010, the day before Dr. Eiswirth's scheduled deposition, Merck served a new list of Dr. Eiswirth's "Materials Reviewed." (Gross Decl., Ex. 2, hereinafter "Revised List.")  The Revised List has 225 entries.  During deposition, Dr. Eiswirth stated that he had reviewed almost all of the fifty-six documents added to the Revised List before completing his expert report, but that the Original List was drafted by Merck counsel without his input, and that he did not see the Original List before it was served on Plaintiff.  (Gross Decl., Ex. 3, Deposition of Clement Eiswirth 38-51, hereinafter "Dep.".)  Dr. Eiswirth further stated he had not kept a running list of materials and that it was not his practice to cite to authority using footnotes.  (Dep. 47-48.)

Of the fifty-six documents added to the Revised List, forty-three are published articles in medical journals.   In deposition, Dr. Eiswirth confirmed that he had reviewed 32 of the 43 articles excluded from the Original List before he completed his report, and that he relied on 28 of those 32 articles in forming his opinion.   (Dep. 42-51.)

Aside from the medical articles, the amended list included technical quantitative analyses

that were not on the initial list, including the report written by FDA analyst Shari L. Targum, "Review of Cardiovascular Safety Database" ("the Targum Report") and the clinical study reports Merck submitted to the FDA for Protocols 78, 91, 126, and the VIGOR study.  (*See* Gross Decl. Ex. 1 and Ex. 2.)

**C.**    **The Failure To Disclose The Data And Information Considered By Dr. Eiswirth Is Not Harmless And Is Not Substantially Justified.**

Although "[t]he burden of showing that the violation was harmless is on the potentially sanctioned party," (*U.S. ex rel. Barron v. Deloitte & Touche*,  2008 WL 7136868 at 5), Plaintiffs believe Merck cannot do so.  Merck did not merely update Dr. Eiswirth's list of Material Reviewed.  The Original List is a wholly unreliable record of "the data or other information considered by the witness," because it did not incorporate any contribution of the expert himself.

Dr. Eiswirth's opinions are based solely on his review of the medical literature.  The volume of techinical material revealed less than twenty-four hours before his deposition rendered Plaintiff unable to effectively question Dr. Eiswirth about the reliability of his methods – the "how and why" underlying his opinions.

Neither Merck nor Dr. Eiswirth has offered any justification for failing to promptly provide the Plaintiff with the data and information considered by Dr. Eiswirth.

**II.    DR. EISWIRTH'S OPINIONS SHOULD BE EXCLUDED FOR FAILURE TO SATISFY THE DAUBERT CRITERIA**

Dr. Eiswirth offers opinions based on epidemiology, biostatistics, and toxicology that he is not qualified to offer, and he fails to show that these opinions are based on reliable scientific evidence and that they will assist the trier of fact.

**A.    Legal Standard**

The Federal Rules of Evidence govern the admissibility of expert testimony.  *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).  Pursuant to Federal Rule of Evidence 702, a party

- 4 -

seeking to introduce expert testimony must show: (1) the expert is qualified through knowledge, skill, experience, training, or education; (2) the testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case.

The trial court acts as a "gatekeeper" and should exclude expert testimony unless it is both "reliable" and "relevant." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). The focus is on the expert's qualifications and methodology, rather than results or conclusions. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998); *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565, 574 (E.D. La. 2005).

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known. *Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court set forth the following non-exclusive list of factors to consider in determining the scientific reliability of expert testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. The "reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 352 (5th Cir. 2007).

Scientific testimony is relevant only if the expert's "reasoning or methodology can be properly applied to the facts in issue," meaning that there is an appropriate fit between the

scientific testimony and the specific facts of the case. *Daubert*, 509 U.S. at 593. Scientific evidence is irrelevant when "there is too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 US. 136, 146 (1997).

To satisfy its gatekeeping responsibility, the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology can be properly applied to the facts in issue." *Huss*, 571 F.3d at 452, *quoting Daubert*, 509 U.S. at 592-93). Instead, when expert testimony is demonstrated to be speculative or lacking in scientific validity, trial courts should exclude it. *Moore*, 151 F.3d at 279.

## B.   Dr. Eiswirth Is Not Qualified To Opine On General Causation

Although Dr. Eiswirth offers opinions on the validity and significance of Merck's clinical studies, these opinions are not based on expert knowledge and fail to satisfy the Daubert standard.

Dr. Eiswirth is a cardiologist in private practice, not a researcher. He is not involved academic medicine. (Dep. 12:13-15.) He has not published an article since 1994. (Dep. 22:6-8.) He has never been involved in the design of a clinical trial. (Dep. 21:12-14.) His previous expert testimony is limited to specific causation. (Dep. 27:24-28.) He has not conducted any independent investigation of Vioxx. Prior to the present case, his involvement in the massive, complex Vioxx litigation was limited to his role in a small number of personal injury cases where he prepared to opine on specific causation. (Dep. 28-29.)

More than wo years after his involvement as a potential expert on specific causation had ceased, he agreed to serve as an expert on general causation in the present case, although he had never opined on general causation in *any* litigation and had never conducted independent research on Vioxx or the the cardiotoxitiy of any drug. He did not brush up on the literature or

- 6 -

859070.2

new developments in the science before he agreed to serve as an expert witness in this case. (Dep. 134-36.) He told defense counsel when first contacted that he "felt comfortable that there would not be an issue that I could not help the defense on because I don't believe that Vioxx has ever caused somebody to have a heart attack." (Dep. 30:14-16.)  The opinions he offers today are no less conclusory.

      **1.**      **<u>Dr. Eiswirth's preparation to testify to specific causation in a personal injury Vioxx case does not qualify him to testify as an expert on general causation.</u>**

An expert opinion on the potential of a drug to cause injury must be based on reliable and relevant data and methods in epidemiology and toxicology – wholly different disciplines than the medical testimony offered in support of specific causation.  Dr. Eiswirth's previous expert work in personal injury cases does not qualify him to offer an expert opinion on general causation.

General causation and specific causation are distinctly different inquiries that play distinctly different roles in proving injury from a toxic exposure. "'General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury.' *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).  General causation is generally shown by expert testimony on biostatistics, epidemiology, and toxicology.  *See* "Reference Guide on Epidemiology," *The Reference Manual on Scientific Evidence 2d*, 336 ("Epidemiology focuses on the question of general causation (i.e., is the agent capable of causing disease?) rather than that of specific causation (i.e., did it cause disease in a particular individual?)").

Dr. Eiswirth simply does not have that expertise.  He has no training in biostatistics and no training in epidemiology.  (Dep. 31:3-16.)  His preparation to testify to specific causation in Vioxx personal injury cases in no way prepares qualifies him to offer an expert opinion on the

complex issues involving to biostatistics, epidemiology and toxicology that are central to the question of general causation. Specific causation is generally shown by expert medical testimony of physicians, and in no way qualifies the physician to testify to general causation in the next round. *See* "Reference Guide on Medical Testimony," *The Reference Manual on Scientific Evidence 2d*, 444-45.

## 2. Dr. Eiswirth's Opinions Do Not Incorporate Basic Epidemiology.

Dr. Eiswirth's opinions are based on a summary of Merck's clinical trials, as published in medical journal articles that are generally less than ten pages. His report includes no discussion of epidemiology. At his deposition, he was unfamiliar with basic epidemilogy concepts, *i.e.*, he he did not know what an "observational study" is. (Dep. 89:9.)

His report does not acknowledge any of the epidemilogy studies that have been published in leading journals since Vioxx was taken off the market, *e.g.*, Solomon, *et al.*, "Relationship Between Selective Cyclooxygenase-2 Inhibitors and Acute Myocardial Infarction in Older Adults," *Circulation* 109:2068-2073, 2004; Velentgas, *et al.*, "Cardiovascular Risk of Selective Cyclooxygenase-2 Inhibitors and Other Non-Aspirin Non-Steroidal Anti-Inflammatory Medications," *Pharmacoepidemiol Drug Safety* 15(9):641, 2006 Sep.; Hippisley-Cox & Coupland, "Risk of Myocardial Infarction in Patients Taking Cyclo-oxygenase-2 Inhibitors or Conventional Non Steroidal Anti Inflammatory Drugs: Population Based Nested Case-Control Analysis," *British Medical Journal* 330(7504):1366, 2005 Jan 11, *inter alia*. Observational studies are critical to the question of general causation in this case, because there can be no more clinical trials of Vioxx – any study involving injestion of the drug would be unethical, due to the safety issues (*See* "Reference Guide on Epidemiology" at 339) – and the only clinical trials conducted were sponsored and conducted by Merck employees or consultants.

Dr. Eiswirth also misstated the conclusions of recent meta-analyses. In his report, Dr.

- 8 -

Eiswirth stated:

> Several publications in recent years have investigated the potential
> cardovascular rsiks with the use of NSAIDs.  Uniformly, the
> various investigators have concluded that the randomized trials to
> date do not suggest any difference in cardiovascular thrombotic
> events between the various coxibs, or between coxibs and non-
> selective NSAIDs.  The one exception, not surprisingly, is that
> naproxen when dosed at 500 mg twice daily appears to have a
> different risk profile than other NSAIDs.  *See, e.g., Kearney* 2006,
> *Chen* 2006, *Chen* 2007.

Report at 18.  Dr. Eiswirth does not read the literature correctly – there is no such uniform

conclusion.  Indeed, *Chen* 2007 states, "the pooled [odds ratio] for any coxib compared against

other NSAIDs was 1.45 (95% CI: 1.09, 1.93)."

## C.   Dr. Eiswirth's Testimony Regarding Vioxx Clinical Trials Should Be Excluded Because It Will Not Assist The Trier of Fact.

In *Daubert,* the Supreme Court created a two-prong test for the admissibility of expert

testimony:  the trial court must determine "whether the expert is proposing to testify to: (1)

scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in

issue." *Daubert*, 509 U.S. at 592.  With respect to the second prong – relevance – the *Denley*

court held:

> [E]xpert testimony is not relevant, and thus inadmissible, if it is not
> helpful. 'Whether the situation is a proper one for the use of expert
> testimony is to be determined on the basis of assisting the trier.'
> *Peters v. Five Star Marine,* 898 F.2d 448, 450 (5th Cir.1990).  The
> Court in *Peters* ruled that it is within the discretion of the trial
> judge to decide 'that the [fact-finder] could adeptly assess the
> situation using only their common experience and knowledge,' and
> thus exclude expert testimony on that basis.

*Denley v. Hartford Ins. Co. of Midwest*, 2008 WL 2951926, 3.  "'Under Rule 702, an expert must

"bring to the jury more than the lawyers can offer in argument.' *Eymard v. Pan American World

Airways,* 795 F.2d 1230, 1233 (5th Cir.1986)." *In re Vioxx Products Liability Litigation,* 414

F.Supp.2d 574, 580 (E.D. La. 2006); *Denley* at 3.

Dr. Eiswirth's opinions on the Vioxx clinical trials are nothing more than a reiteration of the conclusions in Merck's published articles.  Dr. Eiswirth did not apply scientific method or reasoning to his summaries, as his deposition testimony shows:

- Although his report claimed to report on the totality of clinical data, he did not verify that the articles Merck published all the clinical data (Dep. 131-32)
- He did not look beyond the published articles by reviewing the study protocols (Dep. 59-60)
- He did not look beyond the methods stated in the journal articles or question them (Dep. 271)
- He that did not read the published articles with a critical eye (Dep. 272)
- He was not aware of a published correction of the VIGOR article, which he relies heavily on (Dep. 260-64).

Mere summaries of published studies "will not assist the jury to understand the evidence or to determine a fact in issue." *In re Vioxx*, 414 F. Supp. 2d at 581 (excluding expert testimony that "reiterates . . . the exact message of the New England Journal of Medicine's Expression of Concern").  As this Court held in *In re Vioxx*:

> Dr. Fletcher's testimony reiterates the deposition testimony of Dr. Curfman and the exact message of the New England Journal of Medicine's "Expression of Concern."  In addition to not assisting the trier of fact, Dr. Fletcher is merely validating Dr. Curfman's testimony and the "Expression of Concern."  Validating or adding credibility to another witness' testimony is not the proper realm for an expert.  Cheerleading the testimony of another editor or a medical publication does not constitute expert testimony.  The Plaintiff's attorneys can argue for Dr. Curfman and the New England Journal of Medicine just as well as Dr. Fletcher.

*Id.*

859070.2

**D.**   **Testimony That The Results Of APPROVE Are A Result Of An Anomaly In The Placebo Arm Of The Study Should Be Excluded Because It Is Not Based On Reliable Scientific Evidence.**

Dr. Eiswirth opines that the statistically significant difference in cardiovascular events in the APPROVe study is due to "a marked but unexplained drop in the cardiovascular events in the placebo group," and concludes that APPROVe does not establish an increased risk of events in patients taking Vioxx.  Report at 16.  In deposition, Dr. Eiswirth further elaborated that APPROVe does not show an increase in risk of Vioxx *even after 18 months*, and that the statistically significant result is merely an artifact of an unexplained but unreliable drop in the rate of events in the placebo group.  Dr. Eiswirth testified that he believed the rate of events in the Vioxx group was equal to the rate he would expect to see if there was no increase in cardiovascular events on Vioxx. (Dep. 180-85.)  This *ipse dixit* statement should be excluded – not only because it is not grounded in reliable scientific method, but because it is contrary to generally accepted  principles.  When expert testimony is demonstrated to be speculative or lacking in scientific validity, trial courts should exclude it.  *Moore*, 151 F.3d at 279.

Furthermore, Dr. Eiswirth has not conducted a complete review of all relevant materials before drawing his conclusion from the initial APPROVe article – including the published *Correction* to the article.  At deposition, Dr. Eiswirth testified that he did not recall if he had seen the *Correction* before:  "I don't believe I've seen this, but I don't know."  (Dep. 260.)  Subsequent to reading the *Correction*, Dr. Eiswirth testified that he did not know what "proportional hazard"– the subject of the correction – refers to.  Proportional hazard is the principle of biostatistics that addresses exactly what Dr. Eiswirth believes explains the APPROVe result – a change in the difference between rates over time.  (Dep. 263-64.)

**III.**   **Conclusion**

For all of the reasons detailed above, Dr. Eiswirth's testimony fails to satisfy the *Daubert*

standard.  Furthermore, the testimony should be struck pursuant to Rule 37, for failure to comply

with the disclosure requirements of Rule 26.

Respectfully submitted, this 19th day of February, 2010.

/s/ James R. Dugan
James R. Dugan, II (La. Bar No. 24785)
Douglas R. Plymale. (La. Bar No. 28409)
Stephen B. Murray, Jr. (La. Bar No. 23877)
Stephen B. Murray, Sr. (La. Bar No. 9858)
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
Kim Sullivan
General Counsel
Louisiana Department of Health and  Hospitals
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

Counsel for Plaintiff

859070.2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum In Support of Plaintiff's Motion To Strike Expert Report Or In The Alternative To Exclude Testimony has this day been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced, in accordance to pretrial order No. 8B, on this the 19th day of February, 2010.

/s/ James R. Dugan

859070.2