UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX<br>    Products Liability Litigation<br><br>This Document Relates to:<br><br>    STATE OF LOUISIANA, ex rel.<br>    JAMES D. CALDWELL,<br>    ATTORNEY GENERAL<br>                Plaintiff<br><br>    versus<br><br>    MERCK SHARP & DOHME CORP.<br><br>    Case No. 05-3700 | MDL NO. 1657<br><br>SECTION: L<br><br>HON. ELDON E. FALLON<br><br>MAG. JUDGE KNOWLES |

## PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF MERCK'S EXPERT JERRY WELLS

NOW COMES PLAINTIFF, JAMES D. CALDWELL, by and through his undersigned counsel, hereby files this Memorandum in Support of Motion to Exclude Certain Opinion Testimony of Merck's Expert Jerry Wells. As set forth below, the testimony of Jerry Wells should be excluded under the Federal Rule of Evidence 702 and 403 because his testimony has a clear potential for prejudice that substantially outweighs it's probative value. In the alternative Mr. Wells' testimony should also be excluded under the Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993).

## STATEMENT OF FACTS

I.  **Relevant Background**

In 1999, the FDA approved the sale and distribution of Vioxx, the brand name for rofecoxib, for the treatment of arthritis, acute pain, and primary dysmenorrhea. (Abramson Rep. at 7 [Declaration of Sarah R. London in Support of Plaintiff's Motion to Exclude Certain Opinion Testimony of Merck's Experts Concerning the Relative Safety of Vioxx Compared to Other Medications, hereinafter "SRL Decl." Ex. 1].) Vioxx is a member of a class of pain relievers called non-steroidal anti-inflammatory drugs ("NSAIDs"). (Vioxx Label, 2002, marked as Curtis Ex. 32 [SRL Decl. Ex. 2]). Other pain relievers in this class of drugs include, among others, aspirin, naproxen (such as ALEVE®), ibuprofen (such as ADVIL® and MOTRIN®), diclofenac (such as VOLTAREN®), and nabumetone (such as Relafen®).

NSAIDs act to relieve pain and inflammation by inhibiting production of an enzyme called prostaglandin G/H synthase. (Silvers Rep. at 2-3 [SRL Decl. Ex. 3]). This enzyme consists of two similar forms, cyclooxygenase-1 ("COX-1") and cyclooxygenase-2 ("COX-2"). *Id.* In the medical and pharmacological literature, COX-2 is generally associated with effects on pain and inflammation; and COX-1 is associated with, among other things, platelet aggregation and the integrity of the gastrointestinal tract. *Id.*

Traditional NSAIDs have been associated with negative gastrointestinal ("GI") side effects including perforations, ulcers, and bleeds ("PUBs"). (Sales Rep. at 2 [SRL Decl. Ex. 4].) There was great hope that highly selective COX-2 inhibitors, such as Vioxx, would provide for relief of pain and inflammation without the negative gastrointestinal effects of traditional NSAIDs (hereinafter, "tNSAIDS"). (Graham Rep. at 5 [SRL Decl. Ex. 5]; Silvers Rep. at 3.) However, that hope was not realized as to Vioxx, which is itself gastrotoxic and has a GI safety

profile that is indistinguishable from tNSAIDS (Graham Rep. at 5; Julie Rep. at 4-9 [SRL Decl. Ex. 6].)

## II. LAW AND ARGUMENT

A.   Mr. Wells testimony should be excluded under the Federal Rules of Evidence 702 and 403.

The Federal Rules of Evidence govern the admissibility of expert testimony. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Under Federal Rule of Evidence 702, a party seeking to introduce expert testimony must show: (1) the expert is qualified through knowledge, skill, experience, training, or education; (2) the testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case. Consequently, based on this deposition testimony in this case Mr. Wells' testimony has a "potential for prejudice" substantially outweighs its probative value and should be excluded.

Here the testimony of Jerry Wells is clearly biased (See attached Exhibit A). First, based on this deposition testimony Mr. Wells stated that:

> Q.   Are you aware that the State of Florida has also filed a lawsuit in the Vioxx litigation?
>
> A.   I am.
>
> Q.   Are you intending on testifying against the State of Florida in that case?
>
> A.   If asked to do so.
>
> Q.   So you don't think there's a conflict of interests in testifying against your former employer?
>
> A.   Absolutely not. I advised them not to file that suit when I was employed there under a previous administration.

> Q.      Okay. And who did you -- who did you tell that to?
>
> A.      I don't recall the gentleman's name. But I was in my office, and someone actually came to the office and met with me to ask me what I thought about that.
>
> Q.      And what was your response?
>
> A.      I told them that I thought that that didn't have any merit, that we ought not to do that.
>
> Q.      And why would you say that?
>
> A.      Because I didn't think the State of Florida was damaged.
>
> Q.      And obviously, they didn't follow your recommendation?
>
> A.      Well, they did until after I left. There were differences of opinion.
>
> Q.      I understand.

**B.     Mr. Wells' testimony should be excluded under Daubert.**

The trial court acts as a "gatekeeper" and should exclude expert testimony unless it is both "reliable" and "relevant." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). The focus is on the experts' qualifications and methodology, rather than results or conclusions. *Plunkett v. Merck & Co. (In re Vioxx Prods. Liab. Litig.)*, 401 F. Supp. 2d 565, 574 (E.D. La. 2005) (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998)). The purpose of the court's gate keeping role is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). In other words, there cannot be a double standard between courtroom science and real-world science, and a litigation expert

cannot employ a research methodology that would not be followed by real-world scientists in the same field. *Id.*

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known. *Daubert*, at 592-93. In *Daubert*, the Supreme Court set forth the following non-exclusive list of factors to consider in determining the scientific reliability of expert testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. The "reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 352 (5th Cir. 2007).

Scientific testimony is relevant only if the expert's "reasoning or methodology can be properly applied to the facts in issue," meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case. *Daubert*, 509 U.S. at 593. Scientific evidence is irrelevant when "there is too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co v. Joiner*, 522 US. 136, 146 (1997).

To satisfy its gatekeeping responsibility, the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology can be properly applied to the facts in issue." *Huss*, 571 F.3d at 452 (5th Cir. 2009) (quoting *Daubert*, 509 U.S. at 592-93). In making this

assessment, the trial court need not take the expert's word for it. *Joiner*, 522 U.S. at 147. Instead, when expert testimony is demonstrated to be speculative and lacking in scientific validity, trial courts should exclude it. *Moore*, 151 F.3d at 279.

Here, Mr. Wells' testimony should be excluded because it does not meet the standards in Daubert. First, in Mr. Wells' deposition testimony he holds himself out as an expert in the structure and administration of a State Medicaid Program.

> Q.   What are you holding yourself out as an expert in this case, an expert in what?
>
> MR. SALES:  Objection; asked and answered.
>
> A.   In the structure and administration and operations of a State Medicaid program.
>
> Q.  (BY MR. DUGAN) Okay. So structure -- what else?
> However, he has never been qualified as an expert by any court in any case and has only been hired as an expert two other cases. The state of Texas and the state of Louisiana cases.

However, he has never been qualified as an expert in any court is any case and has only been hired as an expert in two cases. The State of Texas and The State of Louisiana.

> Q.   I'm just talking about now in your private consulting practice. How many times have you been hired to give expert testimony?
>
> A.   If you count Texas and Louisiana separately, that would be two.

Mr. Wells did not even know why Vioxx was taken off the market.

> Q.   Mr. Wells, why was Vioxx taken off the market?
>
> A.   It was voluntarily removed by the manufacturer.
>
> Q.   Why?

> A.   I was not privy to all of their internal discussions, so I don't know the full reasons. I know that there was a press release related to the reporting of cardiovascular events, but I'm not sure that I know their internal reasoning for doing that.
>
> Q.   Okay. So your testimony is that you're not sure why it was taken off the market?
> MR. SALES: Objection; misstates the prior testimony.
>
> A.   I know that it was taken off the market voluntarily by Merck. It was withdrawn.
> Q.   (BY MR. DUGAN) But you're not sure exactly why?
>
> A.   I'm not -- they don't have to state the reason that they did that, and I'm not sure that it was ever stated. It may have been.

Consequently, Mr. Wells' testimony cannot meet the Daubert standard if he can't even tell why Vioxx was taken off the market.

## III.   CONCLUSION

For the reasons stated herein, these opinions do not meet the standards for expert testimony. Plaintiff respectfully requests that the Court issue an order precluding testimony from Merck's expert Jerry Wells on the matters set forth above.

Respectfully submitted, this 19th day of February, 2010.

/s/ James R. Dugan
James R. Dugan, II (La. Bar No. 24785)
Douglas R. Plymale. (La. Bar No. 28409)
Stephen B. Murray, Jr. (La. Bar No. 23877)
Stephen B. Murray, Sr. (La. Bar No. 9858)
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
Kim Sullivan
General Counsel
Louisiana Department of Health and Hospitals
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

Counsel for Plaintiff

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Plaintiff's Motion And Incorporated Memorandum In Support Of Motion To Exclude Certain testimony Of Merck's Expert Jerry Wells has this day been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced, in accordance to pretrial order No. 8B, on this the 19th day of February, 2010.

/s/ James R. Dugan