UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX® PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) | MDL NO. 1657 |
| | | Section: L |
| THIS RELATES TO: | ) ) | Judge Fallon |
| Bob Stephens, Individually, and as the Administrator for the Estate of Johnie Stephens, deceased, *Plaintiff* v. Merck & Co., Inc. *Defendant* Civil Action No: E.D. La. 06-CV-1678 E.D. Ark. 4-06-CV-0259 WRW | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Knowles |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR RESOLUTION OF FEE LIEN**

Gary Holt & Associates, P.A. f/k/a Gary Eubanks & Associates, P.A. (hereinafter "the Firm") respectfully requests that the Court resolve the issue of its asserted attorney's fee lien and find that the Firm is entitle to enforcement of the full amount of its asserted fee lien.

1

## I. PROCEDURAL HISTORY

The Firm was fired by Plaintiff, Bob Stephens, Individually, and as the Administrator of the Estate of Johnie Stephens, deceased, on March 18, 2009. On March 26, 2009, in accordance with Ark. Code Ann. § 16-22-304, the Firm filed notice of its intent to assert an attorney's lien of thirty-two (32) percent on any amounts due Stephens as a result of his case against Defendant Merck & Co., Inc. (Doc. 18082). The following day, the Firm filed a motion for attorney fees and requested that the Court enforce its lien in accordance with the Arkansas Attorney's Lien Law. (Doc. 18105, inclusive). Stephens filed a memorandum in opposition to the Firm's lien on April 15, 2009, which incorporated the declarations of Stephens and Deron Dacus, Esq. (Doc. 18249, inclusive). Stephens' opposition was based upon his assertion that the Firm had been terminated for cause because it had breached its fiduciary duty. *See id.*

The Firm replied to Stephens' memorandum in opposition and the attached declarations on April 22, 2009. (Doc. 18336, inclusive). Stephens filed a second memorandum the following day, which incorporated three exhibits in support of his opposition to the Firm's lien. (Doc. 18348, inclusive). This filing was served on the Firm via email, at which time Stephens notified the Firm that "the previous version of this same document" had been rejected by the Clerk. (Exhibit 6). However, Stephens' April 23 filing was not the "same document" as previously filed because it incorporated a third exhibit containing a copy of the legal malpractice lawsuit Stephens had filed in state court against the Firm earlier that morning. *Compare* Doc. 18249, inclusive *with* Doc. 18348, inclusive. On May 18, 2009, Stephens filed a Notice of Filing Supplemental Declaration of

Bob Stephens in Response to the Affidavit of Gary Eubanks.[1] (Doc. 18761, inclusive). Subsequent to these filings, the Court entered Pretrial Order No. 47, which set the procedure for handling "any attempted lien or other claim against or relating to any fees or expenses of counsel to any claimant in the Vioxx Resolution Program ("Fee Liens")."  (Doc. 22971).

On September 28, 2009, Stephens received a Notice of Special Master Points Determination. (Exhibit 1).  The Firm also received notification of the Special Master's decision and, in accordance with PTO 47, the Vioxx® Claims Administrator withheld thirty-two (32) percent of the points award disbursed to Stephens. (Exhibit 2).  After receiving this notification, the Firm contacted Stephens' counsel in an attempt to resolve the fee lien issue without further involvement from the Court.  Both the Firm and Stephens candidly admitted that their respective positions had not changed.  It, therefore, became clear that the issue could not be resolved without court intervention.

Shortly thereafter, a motion was filed asking the Court to amend PTO 47.  On December 17, 2009, the Court entered Pretrial Order No. 47A, which modified the procedure for attempted liens for attorneys' fees and expenses. (Doc. 30190).  PTO 47A ordered the Claims Administrator to perform an assessment of the procedural sufficiency of all asserted fee liens. *Id.* The Firm received a Notice of Assessment of Procedural Sufficiency of Third Party Claim Against Attorneys' Fees from the Vioxx® Claims Administrator on January 6, 2010. (Exhibit 3).  In light of this notification and pursuant to PTO 47A, the Firm now moves this Court for resolution and enforcement of its fee lien.[2]

---

[1] Upon review of the docket, it appears to the undersigned counsel that this filing was deemed deficient by the Clerk.

[2] PTO 47A allows a lien claimant to "submit to this Court for resolution under Section 8.1.2 and Section 8.1.3 of the Settlement Agreement any Fee Lien not resolved by agreement among the

3

## II. ARGUMENT

In Arkansas, attorneys have the right to rely on their contract with a client and are entitled to obtain a lien for their services based upon that contract. *See* Ark. Code Ann. § 16-22-301. Thus, "[w]hile a client may dispose of his cause of action as he sees fit, if there are any proceeds from the litigation derived by settlement or final judgment the attorney has a lien thereon under the statute of which he cannot be deprived of by the parties." *Camp v. Park*, 226 Ark. 1026, 1029, 295 S.W.2d 613, 615 (1956). In other words, "a plaintiff should not be allowed to appropriate the whole of a judgment in his favor without paying for the services of his attorney who assisted in obtaining such judgment." *Froelich v. Graham*, 349 Ark. 692, 697, 80 S.W.3d 360, 363 (2002).

The only exception to an attorney's entitlement to his fee is if he was terminated for cause. *See Williams v. Ashley*, 319 Ark. 197, 890 S.W.2d 260 (1995). Arkansas courts do not apply a brightline rule when determining whether an attorney was fired for cause, but rather look at the facts of each case. *See Mobley Law Firm v. Lisle Law Firm*, 353 Ark. 828, 120 S.W.3d 537 (2003). Nevertheless, even when an attorney is fired for cause, he is entitled to the reasonable value of his services up to the date of discharge. *Crockett & Brown, P.A. v. Courson*, 312 Ark. 363, 849 S.W.2d 938 (1993). The reasonable value of an attorney's services is measured by an attorney's skill and experience, relationship between the parties, the difficulty of the services, the extent of the litigation, and the time and labor devoted to the cause and the results obtained. *Robinson v. Champion,* 251 Ark. 817, 475 S.W.2d 677 (1972).

---

parties." *Id.* The Firm recognizes that these sections of the Settlement Agreement provides the fee lien dispute is to be submitted to either the Chief Administrator or the Special Master for resolution. However, the Firm believes that the Court is the proper entity to determine whether the Firm attorney's lien is enforceable under Arkansas law. *See Monsanto Chemical Co. v. Grandbush*, 162 F.Supp. 797 (W.D. Ark. 1958).

The issue for the Court to resolve is whether, under Arkansas law, the Firm is entitled to its fee lien on Stephens' settlement award. It is.

The Firm notes that its motion has been before the Court for about one year. It further recognizes that both parties have thoroughly briefed the applicable law and related to this issue.[3] Although these pleadings provide the Court with much of the information necessary for resolution, two significant events have occurred since those pleadings were filed that are pertinent to the issue. Interestingly, these events both occurred on September 28, 2009.

The first major development was the release of the Notice of Special Master Points Determination. (Exhibit 1). In this Notice, the Special Master awarded 173.25 points based upon the finding that the decedent had used Vioxx® for the period eighteen (18) to thirty (30) months. *Id.* Because the Special Master performed a *de novo* review of Stephens' claim, the award was based upon information submitted by the Firm on Stephens' behalf prior to his decision to terminate the attorney-client relationship.

The second development occurred when was Stephens voluntarily dismissed his legal malpractice suit against the Firm. (Exhibits 4 and 5). As the Court is well aware, Stephens filed a legal malpractice against the Firm on April 23, 2009. (Docs. 18348-34 and 18348-35). This lawsuit was based primarily upon Stephens' allegations that the Firm breached its fiduciary duty in failing to obtain pharmacy records to show that the decedent used Vioxx® for a period of twenty-seven (27) months. *See id.* Additionally, Stephens claimed that the amount of damages sustained was the

---

[3]Pursuant to Fed. R. Civ. P. 10(c), the Firm adopts by reference the facts, arguments, and supporting documents contained in its Motion to Enforce Attorney's Lien and Reply to Response to Motion to Enforce Attorney's Lien. (Docs. 18105, 18105-2, 18105-3, 18336, 18336-2, 18336-3, and 18336-4).

difference between a points award based upon six (6) to eighteen (18) months of usage and a points award based upon the decedent's actual twenty-seven (27) months of usage. *See id.* Tellingly, the suit was dismissed when Stephens received notification that the Special Master had issued its points award based upon the longer usage period.

Obviously, Stephens' decision to fire the Firm and to file a legal malpractice lawsuit against it were intrinsically intertwined. Stephens' terminated that attorney-client relationship based upon the possibility that Stephens would not receive the points award he wanted. Since that time, he has attempted to appropriate the whole of any settlement award he obtained by opposing the Firm's assertion of a fee lien and by filing suit against the Firm for damages amounting to the difference between what he wanted and what had already been determined. All of these actions were taken *despite the fact* that the Firm had appealed the points award to the Special Master and that the appeal had yet to be determined. Once the Special Master released his points award determination and found that the decedent had, in fact, used Vioxx® for the "longer" period of time, Stephens had received the result he wanted. He then dismissed his lawsuit against the Firm, but he has not changed his position on the Firm's fee. Accordingly, he is still attempting to appropriate the entirety of the points award that the Firm assisted in obtaining. This cannot be allowed, and under Arkansas law, the Firm is entitled to enforcement of the full amount of its fee lien.

### III. CONCLUSION

The issue of the Firm's fee lien is ripe for decision. The disputed fee lien is currently being held in escrow by the Vioxx® Claims Administrator. There is no doubt that the issue will not be resolved without court intervention.

The Firm has a valid and enforcement attorney's lien on the proceeds of this case. It was *not*

fired for good cause.  Frankly, the Firm was fired so that Stephens could pursue a legal malpractice lawsuit against it based upon the possibility that the Special Master did not conclude that the decedent used Vioxx® for a period of eighteen (18) to thirty (30) months.  Even if the Firm had been fired for cause, *which it was not*, the Firm is still entitled to the full amount of its fee lien because the proceeds of the settlement award received by Stephens were a direct result of work performed by the Firm prior to the date it was fired.

Accordingly, the Firm respectfully requests that the Court grant its Motion for Resolution of Fee Lien and enter an order directing the Vioxx® Claims Administrator to distribute the full amount of the lien funds currently being held in escrow to the Firm.