MAY 7 2009

FILED
LOS ANGELES SUPERIOR COURT
APR 30 2009
JOHN A. CLARKE, CLERK
BY ELMER SABALBURO, DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE VIOXX CONSOLIDATED CLASS ACTION | CASE NO. JCCP 4247<br><br>RULING ON MOTION FOR CLASS CERTIFICATION |

Hearing date:  2/19/09
Ruling date:   4/30/09

After considering the moving, opposition and reply papers and the arguments of counsel at the hearing, the court now rules as follows:

**Plaintiffs' motion for certification is DENIED.**

**FACTUAL BACKGROUND**

Merck & Co., Inc. (Merck) marketed and sold the prescription drug Vioxx from June 1, 1999 to October 1, 2004. Vioxx is a non-steroidal anti-inflammatory drug (NSAID) used to treat chronic pain. Many NSAIDs cause serious side effects. Vioxx was developed to avoid certain side effects by selectively inhibiting a form of the enzyme cyclooxygenase, COX-2. Vioxx was the second COX-2 inhibitor to be released on the market, after Celebrex, a drug manufactured by a competitor. Other NSAIDs that are not

-1-

COX-2 inhibitors have always been available to treat chronic pain, as have many analgesics.

Plaintiffs allege that during development and testing of Vioxx, Merck learned the drug posed significant cardiovascular risks and was no more effective at relieving pain than aspirin. They allege Merck concealed its safety concerns from the Food and Drug Administration (FDA) to push Vioxx through the FDA approval process. They allege that after Vioxx was approved, Merck made affirmative misrepresentations regarding the drug's cardiac safety profile directly to consumers and physicians and uniformly failed to disclose the cardiac risks. One clinical study, plaintiffs allege, called the VIGOR study, alerted Merck as early as 2000 to the cardiovascular risks posed by Vioxx. Merck withdrew Vioxx from the market in 2004.

**PROCEDURAL BACKGROUND**

Plaintiffs allege Merck's deceptive marketing practices violate the unfair competition law (Bus. & Prof. Code, § 17200 et seq.; UCL) and false advertising law (Bus. & Prof. Code, § 17500 et seq.; FAL), constitute deceptive trade practices under the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA), and resulted in unjust enrichment.

Plaintiffs do not allege Vioxx itself harmed anyone or was ineffective, only that consumers lost money by purchasing it because it was more expensive than, but no better than less expensive NSAIDs.

Plaintiffs seek to certify a class comprising "All individuals or entities in California who, from June 1, 1999 to October 1, 2004, inclusive, paid some or all of the purchase price for" Vioxx. They also seek certification of a subclass of senior citizens. The main class includes third party payors (TPPs), i.e., entities that purchased Vioxx for the end consumers.

# CONTENTIONS

Plaintiffs contend a class should be certified because Merck's widespread campaign of misrepresentations and nondisclosures, and class members' entitlement to restitution and damages, can be proven on common evidence.

Defendant contends individual issues of causation and reliance predominate over any common issues because Merck knew different things about Vioxx at different times and class members, physicians and TPPs were exposed to different representations at different times and were influenced by the representations to varying extents. Defendant also contends individual issues predominate as to whether and how much anyone suffered economic injury. Defendants argue plaintiffs are not typical of and cannot adequately represent TPPs and that class adjudication is not superior to other procedures.

# DISCUSSION

Plaintiffs' UCL and FAL claims may be certified under Code of Civil Procedure section 382 (hereafter "section 382"). A CLRA claim must be certified, if at all, pursuant to the terms of Civil Code section 1781 (hereafter "section 1781"). (*Hogya v. Superior Court* (1977) 75 Cal.App.3d 122.)

Section 382 permits certification "when the question is of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." A plaintiff bears the burden of demonstrating that class certification under section 382 is proper. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 460; *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 654 (*Caro*).) To do so, the plaintiff must "establish the existence of both an ascertainable class and a well-defined community of interest among the class members." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 (*Linder*).) The community of interest requirement has three essential elements: "(1) predominant questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can

M01360639

adequately represent the class." (*Ibid.*) A plaintiff must also demonstrate that the class procedure is superior to other forms of adjudication. (*Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1234.)

Section 1781 mandates certification where: "(1) It is impracticable to bring all members of the class before the court"; "(2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members"; "(3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class"; and "(4) The representative plaintiffs will fairly and adequately protect the interests of the class."

Though sections 382 and 1781 are substantially similar, there are important differences. To certify a class under section 382 the court must consider whether certification will bring substantial benefit to the litigants and the court. (*Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 385.) Section 1781 requires no such inquiry, and the court has no discretion to deny certification of a CLRA claim where the requirements of section 1781 are met. (*Hogya v. Superior Court, supra,* 75 Cal.App.3d at p. 140.)

Under either analysis, the court focuses not on whether plaintiff can affirmatively prove claims at trial but on whether the class action ""will splinter into individual trials,"" given the disputed facts and defendants' due process right to present individual evidence on the triable issues. (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 810, citations omitted.) "[I]ssues affecting the merits of a case may be enmeshed with class action requirements, such as whether substantially similar questions are common to the class and predominate over individual questions or whether the claims or defenses of the representative plaintiffs are typical of class claims or defenses." (*Linder, supra,* 23 Cal.4th at p. 443.)

A.  **Numerosity and Ascertainability**

Sections 382 and 1781 both require that a plaintiff seeking certification demonstrate the proposed class members are ascertainable and sufficiently numerous that joinder is impracticable. Defendant does not dispute that plaintiffs have established these elements. The court finds the proposed class and subclass to be ascertainable and sufficiently numerous that joinder is impractical.

C.  **Typicality**

Typicality turns on whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class. (1 Newberg on Class Actions (3d ed. 1992) § 3.13, p. 3-76.) A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. (*Ibid.*) A class representative's claims are typical if the individual facts applicable to the representative are very similar, but not necessarily identical, to the facts common to the class. (*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1020 [class representative's claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical"].)

Defendant argues plaintiffs claims are not typical of those presentable on behalf of TPPs. The court agrees. Defendant presents persuasive evidence that the decisionmaking that goes into purchasing Vioxx on an individual basis is entirely distinct from the process for putting it into a group formulary. The court finds no individual plaintiffs to be typical of any TPP.

### D. Whether Common Questions of Law or Fact Predominate

Plaintiffs bear the burden of demonstrating, "with substantial evidence, that common questions of law or fact predominate over questions affecting individual members." (*Capitol People First v. State Dept. of Developmental Services* (2007) 55 Cal. App. 4th 676, 689.) To determine whether common questions of law and fact predominate the court analyzes plaintiffs' theory of recovery and inquires "whether there are issues common to the class as a whole sufficient in importance so that their adjudication on a class basis will benefit both the litigants and the court." (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 811 (*Vasquez*); *Capitol People First, supra*, at p. 690.) Common issues predominate when they would be "the principal issues in any individual action, both in terms of time to be expended in their proof and of their importance." (*Id.*, at p. 810.) A class action "'cannot be maintained where each member's right to recover depends on facts peculiar to his case . . .' because '. . . the community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the "class judgment" determining issues common to the purported class.'" (*Caro, supra*, at pp. 667-668, citations omitted.) Class certification is proper where "the issues which may be jointly tried, when compared to those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Brown v. The Regents of the University of California* (1984) 151 Cal.App.3d 982, 989.)

#### 1. Defendants' Misrepresentations And Nondisclosures Are Subject To Predominately Common Proof

Plaintiffs allege defendants engaged in a uniform marketing scheme that was likely to deceive patients and physicians because it either affirmatively misrepresented the cardiac safety profile of Vioxx or failed to disclose cardiac risks.

Defendant argues the marketing scheme was nonuniform because different information about Vioxx was available at different times and Merck made different representations, including a significant label change in 2002, from 1999 to 2004. Defendant's argument is without merit. The court discerns from defendant's evidence only one substantive change in the information available to Merck regarding the cardiac risks posed by Vioxx—the emergence of the VIGOR study in 2000. Even if, as defendant argues, the wrongfulness of its conduct must be judged against different standards based on information existing before and after the VIGOR study, that inquiry is only bifurcated, not splintered. Though bifurcation of an inquiry by definition creates two separate inquiries, they are still only two. No evidence suggests evaluation of Merck's conduct against two different standards will be particularly onerous. Defendant argues later confirmatory studies alleged by plaintiffs somehow changed the state of defendant's knowledge, thus further dividing the inquiry as to what defendant knew at the time Vioxx was prescribed. It is incorrect. A confirmatory study does not change what is known, it confirms it.

Defendant argues that over the five-plus years that Vioxx was on the market, the package insert changed sixteen times and the patient package insert changed fifteen times. Most significantly, defendant argues, the packaging changed substantially in 2002 after release of the VIGOR study results. Defendant overstates the changes. The court discerns from defendant's evidence only one substantive change in the representations made by Merck—the label change in 2002. Again, at most, this change divides, not splinters, the inquiry.

Giving all deference to defendant's arguments about what it knew about the cardiac risks posed by Vioxx and when, and what it disclosed about those risks and when, the court finds evaluation of defendant's misrepresentations will split into, at most, three closely related inquiries. Though the inquiries will not be "common," they will not be so disparate or diversionary, in terms either of time to be expended in their proof or their importance, that their separate adjudication would outweigh the benefit of class treatment of common issues.

M01360643

2.   Information Available To Physicians Is Subject To Predominately Common Proof

Defendant also argues class members' physicians had a constantly changing mix of information about Vioxx's safety profile, as different studies produced progressively more information from 1999 to 2004. (The argument goes to the issue of reliance, which the court discusses at greater length below.) Defendant argues, for example, that reports issued in 2000, 2001 and 2002 publicized the potential cardiac risks posed by Vioxx. Therefore, defendant argues, physicians had different information at different times.

The court is not satisfied that the nature of prescription pharmaceutical litigation need materially change with the advent of each new confirmatory pharmaceutical study. Later studies that reinforce earlier ones do not create a constantly evolving mix of information. (Later studies that contradict earlier ones, finding for example that Vioxx does not increase cardiac risks, would not be pertinent because they would not further defendant's thesis—that physicians were apprised of the risks.) At best, the information available to members' physicians materially changed once, in 2000. Assuming that pre- and post-2000 inquiries will be different, again, they will not be so disparate or diversionary, in terms either of time to be expended in their proof or their importance, that their separate adjudication would outweigh the benefit of class treatment of common issues.

3.   Plaintiffs' And Their Physicians' Reliance Is Not Subject To Common Proof

A CLRA plaintiff must prove damage suffered "as a result of" a deceptive practice (Civ. Code, § 1780, subd. (a)), i.e., "not only that a defendant's conduct was deceptive but that the deception caused" the alleged harm. (*Massachusetts Mutual* (2002) 97 Cal.App.4th 1282, 1292, 1293.) Similarly, under the UCL and FAL, restitution may be granted only "as may be necessary to restore to any person . . . any money or property, real or personal, which may have been acquired by means of such unfair competition." (Bus. & Prof. Code, § 17203, italics added; see *Fletcher v. Security Pacific National*

*Bank* (1979) 23 Cal.3d 442, 452; *Akkerman v. Mecta Corp., Inc.* (2007) 152 Cal.App.4th 1094, 1103 [individual claim for restitution requires showing of reliance and causation].) A cause of action for unjust enrichment is a claim for restitution. (*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793 [unjust enrichment is "synonymous with restitution"].) The cause of action requires "receipt of a benefit and unjust retention of the benefit at the expense of another." (*Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726.) (Plaintiffs seek not only restitution but also injunctive relief. To the extent they do so, a showing of reliance is arguably unnecessary. However, to that same extent, so is class treatment unnecessary.)

Under all of plaintiffs' causes of action, a central issue will be whether defendant's alleged misrepresentations or nondisclosures were material to those who purchased Vioxx. """A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment. Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did."""" (*Caro, supra*, 18 Cal.App.4th at p. 668, citations omitted.) To recover, therefore, each class member must demonstrate, or it must be inferable classwide, that the misrepresentation or nondisclosure influenced each class member's prescription decisionmaking.

Plaintiffs argue they need not establish class members relied on any misrepresentation or nondisclosure, they need establish only that the misrepresentation or nondisclosure was objectively and reasonably likely to deceive. To an extent, the court agrees. In 2004, Proposition 64 made changes to the UCL and FAL. These changes affected the standing of representative plaintiffs but did not change the underlying elements of the causes of action. In that sense, to state a deception claim under the UCL or FAL "one [still] need only show that members of the public are likely to be deceived." (See *Prata v. Superior Court* (2001) 91 Cal.App.4th 1128, 1136; see also *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; *Committee on Children's Television, Inc. v. General Foods Corp*. (1983) 35 Cal.3d 197, 210.)

But stating a violation of the UCL or FAL does not suffice. Plaintiffs must also establish class members are entitled to the remedy of restitution (as opposed only to injunctive relief). Here, reliance is key, because restitution may be granted only "as may be necessary to restore . . . any money . . . acquired *by means of* such unfair competition." (Bus. & Prof. Code, § 17203, italics added.) To demonstrate class members lost money by means of defendants' misrepresentations or nondisclosures, plaintiffs will have to show the misrepresentations or nondisclosures were material, i.e., that they relied on them.

To determine whether the cardiac risks posed by Vioxx were material to any given class member requires an examination of the member's medical needs and history. Plaintiffs adduce no evidence indicating the inquiry can be conducted on a classwide basis. Defendant adduces overwhelming evidence, particularly the declaration of Dr. David Silver, that it cannot be.

First, "The process by which a physician decides whether and what to prescribe for a pain patient requires an individualized approach that applies a physician's clinical judgment to each patient's unique situation. This decision requires a physician to assess a number of factors which vary from patient to patient, including, among others: a) The condition being treated, including the nature, location, and extent of the pain; b) The risks and benefits associated with the drug; c) The anticipated dose and duration of the prescription; d) The patient's medical history, including any past gastrointestinal problems or drug reactions or allergies; e) The potential for adverse interactions with a patient's other medications; f) The anticipated degree of patient compliance; g) The drug's cost and the patient's insurance coverage; and h) The patient's concerns regarding treatment and his or her perception of the severity of the pain." (Silver decl., ¶ 10) Dr. Silver's declaration on this point is definitive.

An additional individual-specific inquiry would be required to determine the patient's desires. Defendant's adduce anecdotal, persuasive evidence that some class members would rather assume the known risk of taking Vioxx in exchange for pain relief. (E.g. Voelz decl., Exh. 22.) Plaintiffs' own histories indicate Vioxx was

prescribed to them for several different, non-interchangeable reasons. Their evidence only confirms the need for individualized inquiry into the prescription decision. No evidence suggests prescription decisions are made uniformly on the basis of advertising.

Any class member who did or would have purchased Vioxx despite defendant's misrepresentations or nondisclosures was not deprived of money "by means of" unfair competition. The law has no interest in awarding a windfall to persons to whom the misrepresentations or nondisclosures were immaterial. Plaintiffs adduce no evidence that will distinguish between class members to whom the cardiac risks posed by Vioxx were material and those to whom they were not.

The court finds plaintiffs' and their physicians' reliance on defendant's misrepresentations or nondisclosures are not subject to common proof.

4.   TPP Reliance Is Not Subject To Common Proof

Given the court's finding that plaintiffs are not typical of TPPs and the finding immediately above that physician and patient reliance requires an individualized inquiry, an in-depth discussion of the reliance inquiry as it pertains to TPPs is unnecessary. Briefly, the court is well satisfied that TPP decisionmaking is almost as variegated as is individual physician/patient decisionmaking. Some TPPs used an open formulary, basically deferring risk assessment to physicians. Others used closed formularies. Even those that used closed formularies sometimes include cardio-risk drugs. Whether any particular TPP would have included Vioxx in its formulary is thus an individual question.

5.   No Inference of Reliance Can Be Made

Plaintiffs argue that even if they must establish reliance to recover, they can do so presumptively by making a classwide inference of reliance. The argument is without merit. True, "The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger

M013600647

and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect." (*Vasquez, supra*, 4 Cal.3d at p. 814, citations omitted.) However, to permit a classwide presumption of reliance on uniform representations the representations must indeed be uniform and must "have been made in regard to a material matter." (*Ibid.*) Here, there is little if any common evidence as to what consumers perceived or what they would find material. Therefore, the issue of causation (i.e., whether defendants' nondisclosures induced consumers to purchase Vioxx) "would vary from consumer to consumer." (*Caro, supra*, 18 Cal.App.4th at p. 668.) Because materiality of the representation is not uniform, reliance on it cannot be inferred classwide.

6.  Class Injuries Are Probably Subject to Common Proof

Plaintiffs' theory is that they and class members would not have purchased Vioxx, or would not have paid so much for it, had they known of the cardiac risks Vioxx posed. They term this a "benefit of the bargain" theory, while defendant styles it as a "fraud on the market" theory. Defendant further argues plaintiffs present no metric by which a monetary value can be placed on the risk posed by Vioxx.

The court is satisfied the injury alleged would be subject to classwide proof. While the court is not satisfied that comparison to other NSAIDs is particularly appropriate or helpful, it can imagine a scenario where a jury is permitted to place a value on the indignity an individual suffers when he or she is exposed to false advertising. The court is unwilling to wave such an injury away and does not believe the advent of Proposition 64 requires it to do so. (See *Kwikset Corp. v. Superior Court* (2009) 171 Cal.App.4th 645, 656 [subjection to misrepresentation constitutes injury in fact].)

M01360648

7.  Class Damages Are Not Subject to Common Proof

Plaintiffs propose to measure the monetary value (or detriment) of cardiac risk by comparing Vioxx to safer NSAIDs. Insofar as the inquiry is patient specific, it fails the community of interest test, as discussed above. Furthermore, there appears to be no uniformity among even the named plaintiffs as to how much they paid for Vioxx, and no greater uniformity appears to exist among class members, different individuals having paid different amounts at different times. Overarchingly, no evidence indicates any particular safer NSAID would be a proper comparator for each class member (though the court is confident plaintiffs could come up with an appropriate damages metric eventually).

Inability to commonly value each class member's loss does not weigh too heavily against finding that a community of interest exists, as the plaintiffs' bar has become adept at using matrices and statistical models to assess individual damages in a way that does not infringe on the due process rights of culpable defendants. But for what it is worth, the court finds the amount of money lost as a result of defendant's alleged wrongdoing is not subject to common proof.

E.  **Adequacy of representation**

Adequacy of representation depends on whether plaintiff's attorney is qualified to conduct the litigation and whether the named plaintiff's interests are not antagonistic to, or in conflict with, the interests of the other class members. (*McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 450.) "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.) "Most differences in situation or interest among class members . . . should not bar class suit." (*Id.* at p. 473.)

Defendant argue plaintiffs' counsel cannot adequately represent the class because plaintiffs are individuals, while some class members are TPPs. This is a typicality

argument, not an adequacy argument. The court is satisfied that plaintiffs' counsel is very experienced and highly capable in litigating class actions and would adequately represent the class, and that no plaintiff has interests antithetical to those of any TPP.

**F.    Superiority of the Class Action Vehicle**

Finally, courts are required to carefully weigh respective benefits and burdens of class treatment and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts. (*Linder v. Thrifty Oil Co.*, supra, 23 Cal.4th at p. 435.)

Given the above reasoning, the court is not satisfied substantial benefits would accrue to the litigants or court from class treatment here.

**In sum:**

**Plaintiffs' motion for certification is DENIED.**

IT IS SO ORDERED.

Dated: 4/30/09

Victoria Gerrard Chaney
Judge