1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
2

3      ****************************************************************

4

IN RE: VIOXX PRODUCTS
5         LIABILITY LITIGATION
                              MDL DOCKET NO. 1657
6                             NEW ORLEANS, LOUISIANA
                              WEDNESDAY, FEBRUARY 3, 2010, 2:00 P.M.
7      THIS DOCUMENT RELATES TO:

8      ALL GOVERNMENT ACTION CASES

9      ****************************************************************

10

11                TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
              HEARD BEFORE THE HONORABLE ELDON E. FALLON
12                    UNITED STATES DISTRICT JUDGE

13     APPEARANCES:

14

15     FOR THE PLAINTIFFS:      HERMAN HERMAN KATZ & COTLAR
                                BY:  RUSS M. HERMAN, ESQUIRE
16                              820 O'KEEFE AVENUE
                                NEW ORLEANS, LA 70113
17

18     FOR THE DEFENDANT:
                                STONE PIGMAN WALTHER WITTMANN, LLC
19                              BY:  DOROTHY H. WIMBERLY, ESQUIRE
                                546 CARONDELET STREET
20                              NEW ORLEANS LA 70130
                                (504) 581-3200
21

22                              DECHERT L.L.P.
                                BY:  BENJAMIN R. BARNETT, ESQUIRE
23                              CIRA CENTRE
                                2929 ARCH STREET
24                              PHILADELPHIA, PA 19104

25

```
 1  APPEARANCES CONTINUED:

 2                          O'MELVENY & MYERS
                            BY:  BRIAN ANDERSON, ESQUIRE
 3                          1625 EYE STREET
                            WASHINGTON DC  20006
 4

 5  REPRESENTING THE STATE
    OF LOUISIANA:           MURRAY LAW FIRM
 6                          BY:  JAMES R. DUGAN, II
                            650 POYDRAS STREET, SUITE 2150
 7                          NEW ORLEANS, LA 70130

 8

 9  REPRESENTING THE STATE
    OF FLORIDA:             OFFICE OF THE ATTORNEY GENERAL
10                          STATE OF FLORIDA
                            BY:  JAMES D. YOUNG, ESQUIRE
11                          1300 RIVERPLACE BLVD, SUITE 405
                            JACKSONVILLE, FLORIDA 32207
12

13
    STATE LIAISON COUNSEL:  BARRIOS, KINGSDORF & CASTIEX, LLP
14                          BY:  DAWN BARRIOS, ESQUIRE
                            701 POYDRAS STREET, SUITE 3650
15                          NEW ORLEANS, LA 70139-3650

16

17  REPRESENTING THE STATE
    OF UTAH:                STEELE & BIGGS, LLC
18                          By:  JOSEPH W. STEELE V, ESQUIRE
                            5664 SOUTH GREEN STREET
19                          SALT LAKE CITY, UT 84123

20
    ALSO PRESENT:           JUSTIN BLOOM, ESQUIRE
21

22
    OFFICIAL COURT REPORTER:    CATHY PEPPER, CCR, RPR, CRR
23                              500 POYDRAS STREET, ROOM B406
                                NEW ORLEANS, LOUISIANA 70130
24                              (504) 589-7779
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
25  PRODUCED BY COMPUTER.
```

1                              **I N D E X**

2    <u>SPEAKERS</u>                                            <u>PAGE</u>

3

4    THE COURT......................................    4

5    MR. DUGAN......................................    4

6    MR. ANDERSON...................................    6

7    MR. DUGAN......................................    8

8    MR. HERMAN.....................................    9

9    THE COURT......................................    9

10   MR. DUGAN......................................   11

11   MR. BARNETT....................................   12

12   MS. BARRIOS....................................   14

13   MR. BARNETT....................................   16

14   MS. BARRIOS....................................   17

15   MR. HERMAN.....................................   18

16   MR. DUGAN......................................   18

17   MS. BARRIOS....................................   19

18   THE COURT......................................   20

19   MR. DUGAN......................................   21

20   MR. ANDERSON...................................   21

21   THE COURT......................................   22

22   MS. BARRIOS....................................   23

23   MR. STEELE.....................................   23

24   THE COURT......................................   25

25   NEXT STATUS CONFERENCE IS FEBRUARY 26TH........   25

**P-R-O-C-E-E-D-I-N-G-S**

WEDNESDAY, FEBRUARY 3, 2010

M O R N I N G   S E S S I O N

(IN OPEN COURT)

THE DEPUTY CLERK:  Everyone rise.

THE COURT:  Good morning.  Be seated, please.  I apologize for some of the stuff on the tables.  I have a jury trial going on at this point.  I have before me and I have a number of people on the phone for a status conference for the Attorneys General claims.  I received a motion to remand at this point and a motion to expedite.  I really do think we ought to try to do our best to expedite it.  I want to give everybody an opportunity to weigh in on it and present whatever briefs they need to present, but each side, you ought to at least know where you are or where you're going to be as quickly as possible.

I know that there was some concern the defendants wanted an opportunity to brief the issue, and I understand that, and what's some suggestions?

MR. DUGAN:  Your Honor, James Dugan on behalf of the Louisiana Attorney General.

THE COURT:  Jim, would you get over to the microphone so people can hear you on the phone.

MR. DUGAN:  Good morning, Your Honor.  James Dugan on

 1   behalf of the Louisiana Attorney General.  Your Honor is correct,

 2   we're here for a status conference in that particular case.  Then

 3   following this, we have several issues with the rest of the

 4   governmental action cases.

 5        Your Honor is correct, on last Friday we filed a motion for

 6   expedited consideration or motion to remand, which is an motion

 7   to remand which has been pending since October of 2005.  And when

 8   we filed it on Friday under the local rules, we went to the web

 9   site, and your next hearing date was February 24th, so that's the

10   date that we have in that particular motion, of which, as

11   Your Honor knows, the defense have eight days before that to file

12   their response.

13        And Your Honor is absolutely correct.  What we filed was a

14   motion for expedited consideration and basically supplemented it

15   with the law that's happened since October of 1975.  There is not

16   new material there.  The core, basic issues are still the same.

17        Merck filed an opposition of November of '05, of which, I

18   would imagine, there should be a short supplemental opposition to

19   this particular motion.  So we agree, Your Honor, we would like

20   to tee it up before the February 19th dispositive motion date in

21   this case.  I understand Merck has sent a letter to Your Honor

22   the late yesterday afternoon with a different position.

23        THE COURT:  Have you had a chance to get with Merck and

24   see whether or not you can coordinate some schedule?

25        MR. DUGAN:  Yes, I have, Your Honor.  I reached out to

 1   Merck on Monday, and I received an e-mail yesterday afternoon

 2   saying that they could not agree to an expedited schedule, and

 3   then I understand there was a letter sent later on, around

 4   4 o'clock yesterday afternoon.

 5            THE COURT:  Let me hear from Merck.  Anyone?

 6            MR. ANDERSON:  Sure.  Your Honor, this is

 7   Brian Anderson.  I want to indicate that our lead trial counsel,

 8   Tarek Ismail, who you know and Travis Zales (spelled

 9   phonetically) are also on the phone.

10       We have two concerns in briefing jurisdictional issues.  The

11   first is that the briefing of the jurisdictional issues not

12   interrupt the course of preparing the case for trial.  We have

13   concerns about the timing of this -- of this filing; and,

14   frankly, I had some concerns that this is an effort to postpone

15   the trial and postpone the pretrial deadlines.  And we don't want

16   the briefing of these jurisdictional issues to interfere with

17   that.

18       And so if we're going to brief these jurisdictional issues,

19   which we're prepared to do, we want to make sure that that

20   happens without interrupting other briefs that need to be filed

21   pursuant to the pretrial schedule.

22       The second concern that we have, and I think Your Honor

23   addressed it, is that we do want to file a supplemental brief

24   speaking to jurisdictional issues.  That brief needs to respond

25   to the post 2005 cases that plaintiffs cited in their filing, as

1   well as other developments in the litigation that we think are

2   relevant to the jurisdictional issues.

3        What we would propose to, I think, satisfy everybody's

4   concerns is perhaps dispense with the formality of the motion to

5   expedite briefing and simply have the parties submit supplemental

6   briefs on the remand motion itself on February 19th.  So about

7   two and a half weeks from now.  That's the same day that the

8   summary judgment motions are due.  And then we could have, if the

9   Court wants to have a hearing on the remand motion, we could

10  schedule that hearing for March 12th, which is the same day as

11  the hearing on the summary judgment motion.

12       And in order to create room on March 12th to argue the

13  jurisdictional issues, we could perhaps defer the hearing on the

14  *Daubert* motions which was also scheduled for March 12th, push

15  that back into later in the month when we have a hearing date on

16  other motions.

17       So that would be our proposal.  It gets the jurisdictional

18  issues briefed in fairly short order, allows the Court to make a

19  decision on jurisdictional issues when it's ready to do so, but

20  it does not interfere with the pretrial schedule that we very

21  much want to adhere to.

22            THE COURT:  Brian, let me make this point:  I really

23  look to counsel, in a situation like this, to see if they can

24  have any agreement on any issues.  You're catching the plaintiffs

25  a little short just mentioning it at this time.  I would like

1   both of you all to get together, talk about it, and see whether

2   there is any agreement on any aspect of it.  I would like to hear

3   from you all in a couple of days.  If you can do it by Tuesday on

4   the phone and see whether or not you can come up with some

5   agreement.  If you can't, each side tell me what their best is,

6   and then I'll cut that through.

7       My thinking is that I do think we ought to go forward.  I've

8   got a trial set, and I don't want to take that off the trial

9   docket, but I want to get to this as quickly as we can because

10  it's appropriate that the parties know.  You've got to know

11  whether you're going to be in this jurisdiction or some other

12  jurisdiction.  It's not fair to either one of you all.

13      So I want to give you both an opportunity to present me with

14  anything you need to present me with, but we've got to tee this

15  up as quickly as we can.  Unfortunately we've got to move forward

16  on the trial, too.  I would ask that, Jim, you and Brian get

17  together and see whether or not there is any aspects you can

18  agree on, if you can.  Then tell me which ones you can't and I'll

19  set it.

20          MR. DUGAN:  I'll be more than happy to do that,

21  Your Honor.  But you're absolutely right, we're getting a very

22  short time frame here.  We filed a motion.  It's set.  And a

23  response is due February 16th.  I mean, I'm trying to, as we sit

24  here, I'm trying to figure out how it's going to -- how it can

25  possibly work.  And if we wait another week, Your Honor, then I

1   can see that my position is probably not going to change, and if

2   we wait another week Merck is going to say, Well, we have a whole

3   other week so we have to go later on down the line.

4           THE COURT:  That's why I don't want to wait long, but I

5   do want to give you all at least an opportunity to speak about

6   it.  It seems to me that both sides should get together and talk

7   about it and see what you can come up with.

8           MR. DUGAN:  Your Honor, we would like to get a response

9   by noon tomorrow; is that okay?

10          THE COURT:  That's fine.  Touch base first.  Talk to

11  them.  Let's see where it is.  See what you have.  I can meet

12  with you on Monday.  I've got another trial starting then, so

13  I'll be here.  If Tuesday is not enough, Monday I can meet with

14  you.

15          MR. ANDERSON:  We can do that, Your Honor.

16          THE COURT:  Let me set it for some time.  I'll do a

17  telephone conference 1:30 on Monday.

18          MR. HERMAN:  Judge Fallon, Russ Herman.  I've been on

19  the call.  I just wanted to report to you that I received an

20  order to get in touch with Mr. Stratton on scheduling other

21  matters in *Vioxx*.  I've done that, and we he have a conference

22  set today.

23          THE COURT:  Okay.  I'm sorry, 2 o'clock on Monday.

24  Two o'clock our time here in New Orleans.  We'll cut through some

25  of this.

1      Let me just talk in terms of all of the attorneys general.

2  My thinking on this case, when I had the motions for remand, I

3  thought it would be helpful for the attorneys general to at least

4  stay in the litigation until they had the advantage of some

5  discovery.  A sizable amount of discovery was anticipated

6  originally and actually occurred in this litigation.  Some 9,

7  10 million documents, 20 trials, and a lot of activity, trial

8  plans, and various things were prepared.

9      With the attorneys general as a group being a part of this

10  litigation, I felt it was to their advantage, they had the

11  opportunity to participate in the proceedings, to get copies of

12  everything, to hopefully learn from what was going on, and it

13  would shorten their discovery time and give them a lot of

14  information not necessarily free of charge but certainly at a

15  better cost than if they each had to do it themselves.  So that

16  was my thinking.

17      Also, there is an opportunity in a case like this to have

18  everything in one place so that both sides can look at it

19  globally to see whether or not the matter can be resolved.  I

20  encourage the parties to do that.

21      You know and I know there has been some activity since then

22  with several opinions coming down that may have changed

23  landscapes one way or the other in some people's opinion, in any

24  event, so it makes it more challenging, more difficult, but that

25  was the reason for not focusing on the motions for remand.

1    They are serious motions to remand.  It's not just a

2  perfunctory one, and so each side has to realize that this is a

3  critical motion from the attorneys general as a group.  If we get

4  to the point, and we may have gotten to the point, but if we get

5  to the point where there is no more to be gained from a joint

6  discovery and no more to be gained from an opportunity to

7  globally resolve the matter, then it's time to make a decision on

8  these matters.

9    Now, the other governmental actions, as I understand, there

10  were some still some opportunities we ought to take advantage of

11  with case management orders.  What is that about, Jim?

12    MR. DUGAN:  That's correct, Your Honor.  On Monday

13  afternoon, Ms. Barrios submitted to Merck a proposed motion to

14  remand schedule basically, and I believe the rub here,

15  Your Honor, is that in an effort to obviously move this case

16  forward and to try to get an end game, two things were going to

17  happen:  Set additional trials here in the MDL, and do a motions

18  to remand schedule.

19    The issue has come up -- it's kind of the

20  chicken-and-the-egg situation, Your Honor -- Merck doesn't want

21  to focus on the motion to remand schedule because they want us to

22  tell them exactly what the next trial date will be in the case,

23  and we're still trying to work that out.  The State of

24  Pennsylvania has an interest in possibly trying its case here in

25  the MDL.  He's still trying to get full authority to do that.

1  We'll get back to Your Honor very soon.

2      The State of Oklahoma has a potential -- they would like

3  Your Honor to possibly try their case in federal court in

4  Oklahoma.  We have several.  There is another third-party payor

5  case actually filed here in the MDL, so we will have some

6  potential trial selections.

7      In addition, we have the motion to remand schedule, like I

8  said, we submitted to Your Honor.  And once again, we would like

9  to meet and confer with Merck, and if the parties can't agree on

10 it, get something to Your Honor very soon.

11      THE COURT:  Now, what is that aspect?  Anybody on the

12 phone wishes to speak on that?

13      MR. BARNETT:  Yes, Judge Fallon.  Good morning.  It's

14 Ben Barnett.  I'm not sure I fully followed what Jim was saying,

15 but just to take one step back and address the nonLouisiana AG

16 matters.

17          When we met with the AG folks, including Dawn and

18 Jim and others after the January conference, they basically said,

19 Here is our plan:  We want to do a section trial in the MDL, and

20 we want to work out a schedule to set that second trial, and then

21 we want to come up with a plan for further common discovery.

22      And my understanding, and Jim or Dawn can correct me if I'm

23 wrong, I think we learned a couple of days ago that Pennsylvania

24 was the second trial selection.  And that's fine, and we'll work

25 with them on coming up with a schedule.

 1      What we've said to them, and I think this is -- I think this

 2 dovetails with your experience, Your Honor, is that if we're

 3 going to focus on trials, let's get a schedule in place.  Let's

 4 be realistic about that timing and apply, you know, sort of our

 5 recent experiences in Louisiana in setting that schedule, and

 6 then thereafter let's talk about what additional common discovery

 7 is necessary to prepare these cases either for trial or for

 8 remand.

 9      And so what's happened in the meantime is that we're

10 starting to get -- we're starting -- Merck is starting get served

11 with some of this common discovery.  We got a second set of

12 master discovery requests, which under PTO 39 they are required

13 to meet and confer with us about.  Honestly, that didn't happen.

14      And Dawn did send, I guess has now supplied the Court with

15 this proposed pretrial order.  And quite honestly, we really have

16 not had any sort of discussion about that prior to its

17 submission.  And it envisions a discovery cutoff date of June 1,

18 2010, and given what still needs to be done, particularly on the

19 AG side in terms of production, we just don't know that that's

20 realistic.

21      So long story short, I agree with Jim's ultimate point,

22 which is we do need to meet and confer.  The PTO 39 requires that

23 the parties meet and confer before there is any additional

24 discovery.  And I just think the guiding principal has to be if,

25 in fact, there is going to be a second trial, that that schedule

1    needs to be put in place.  We need to figure out, you know,

2    what's going to be required to get that second case,

3    Pennsylvania, Oklahoma, whatever it is, ready, and then

4    realistically assess where are both sides in terms of their

5    production?

6         Merck has been making productions.  Some of the states have.

7    There is probably going to be cleanup on both sides that needs to

8    be done, but let's figure out what really needs -- what can and

9    should be done in the MDL to try to get common discovery wrapped

10   up.

11        THE COURT:  Dawn do you have something?

12        MS. BARRIOS:  Yes, Your Honor.  Thank you.  Dawn Barrios

13   for the nonLouisiana governmental entities.  Mr. Barnett is

14   right.  We did serve them with the second master set of discovery

15   before I had a chance to confer with Mr. Anderson, and I did so

16   because it was the identical discovery that Louisiana had done.

17        I did have a lengthy conversation with Mr. Anderson to alert

18   him as to what we were going to put in this proposed pretrial

19   order 39(a).  That conversation exactly mirrored what occurred in

20   your jury room after the last status conference.

21        I expressed the total frustration and impatience of every

22   other attorney general other than Louisiana.  They are put on the

23   back burner.  They are constantly told by Merck that we can't

24   really do all that much on your case because we have to do

25   Louisiana.  And so I'm here today, Your Honor, on their behalf

1    seeking a way to get them out of the black hole.

2         You heard what Mr. Barnett said, Okay, let's do the second

3    trial, and then we'll worry about everybody else when we finish

4    the second trial.  Judge, many of these cases were filed in 2005.

5    They are just sitting around.  Merck certainly has enough

6    counsel, enough resources to be able to devote discovery for

7    every one of these attorneys general.

8         So I had to pull the plug to move the game along.  Without

9    this proposed pretrial order 39(a), I couldn't get the issue to

10   Your Honor.  We put up the Pennsylvania case, as Jim just

11   described.  Mr. Schultz has not received the formal, explicit

12   approval of the general in Pennsylvania.  He believes he can get

13   it.  Mr. Schultz has some trial schedules in the summer.  We need

14   to be able to work around that, and I know the Court and all the

15   parties will, but we had to move off of first base.

16        We put in the order a discovery cutoff date of common

17   discovery of June 1st.  Obviously that date is negotiable.

18   Obviously we are going to work with Merck on it, but if we don't

19   have some sort of date certain we'll be here and you'll have

20   *Chinese Drywall* complete before we ever get to the last of the

21   governmental action cases.  And I apologize for my impatience,

22   but it's been building on our side for so long because we're

23   viewed as a stepchild.

24        What I'm here today to ask Your Honor is if you give Merck

25   and our side 30 days to iron out this proposed pretrial order,

1   come to you with what we can agree to, allow Your Honor to decide

2   what we have, whatever we can agree to, but I do want to have in

3   the pretrial order information and timelines for discovery for

4   the nontrial cases.

5           THE COURT:  Okay.  Ben, what I'm hearing -- and I'm sure

6   you've heard, too -- is that there are some political problems

7   with attorneys general.  When you're dealing with 50 attorneys

8   general from the 50 states, or however many states we have,

9   everybody wants to be first, and nobody wants to wait behind

10  Louisiana.  That's a problem for them.  So we've got to figure

11  out some way of having that problem solved.  It's a significant

12  one.  It may just be more appearance than substance, but it has

13  to be dealt with.

14       I think it's a good idea that Dawn has that you and she get

15  together and see if you can work this out.  You have to pull me

16  in it rather than wait until the end.  Pull me in in between some

17  of these discussions or during these discussions.

18          MS. BARRIOS:  Yes, Your Honor.

19          MR. BARNETT:  And, Your Honor, I'm happy to meet with

20  Dawn, and I think the idea of setting some period of time to try

21  to resolve this issue makes a lot of sense.  I guess I would just

22  offer two observations.  And you're right, we're well aware of

23  the level of frustration among the AGs and their desire to get

24  things moving.

25       I only note that Merck has not been sitting idle on the

1   other AG matters and is solely focusing on Louisiana.  I mean,

2   for example, in the Pennsylvania case, we've already produced

3   over a million pages of documents.  We've produced over 500,000

4   pages in the New York case.  And I'm not going to go through all

5   of them, but we -- we negotiated with the AG counsel, you know,

6   essentially a structure which said, because there is a trial in

7   Louisiana, we are necessarily going to focus first and foremost

8   on Louisiana, but then we asked them for priorities after that,

9   and we focused on New York, Pennsylvania, and Florida.  And we

10  have been rolling these productions out on a regular basis.  And

11  so there has, in fact, been work done.  There is clearly going to

12  need to be additional work done on both sides, and we're happy to

13  talk about that.

14      The only other thing that I would throw in is if we are

15  going to have a meaningful discussion about a realistic schedule,

16  then I think that the recent discovery that we received should be

17  suspended until after those discussions are completed because if

18  the goal here is to try to hit that balance between what it is

19  people need and setting a realistic timetable to get this wrapped

20  that, that may impact what both sides ask of the other side in

21  terms of discovery, so I don't know whether you think that's

22  advisable, but it seems to me if we are going to hammer this out,

23  we shouldn't have a gun pointed at our head.

24      MS. BARRIOS:  Ben, I have no problem with that.  We'll

25  work it all out in one global resolution.  I just want to make

1   clear and to seek the Judge's counsel on this is that when we

2   work on this pretrial order, I don't want the pretrial order just

3   to be concentrated on the first trial up, that we have to have

4   some discovery cutoffs in place for the 12 governmental actions

5   behind it.  And, Judge, that's where our rub really is with

6   Merck.

7            THE COURT:  I understand.

8            MS. BARRIOS:  They want to concentrate on what's before

9   them, and we need to keep our eye on the ball down the field --

10  Go Saints.

11           THE COURT:  Ben, let's do it that way.  Just be

12  conscious of what Dawn is trying to say.

13           MR. ANDERSON:  I hear Dawn loud and clear.  And it might

14  actually be worthwhile, Dawn, for us to come down and meet in

15  person.  That may expedite the discussion.

16           THE COURT:  I think so.  Dawn, set up a meeting and let

17  me know when the meeting is set up.

18           MS. BARRIOS:  Yes, Your Honor.  We certainly will.  We

19  appreciate your time today.

20           THE COURT:  What else, Jim?

21           MR. HERMAN:  Judge, this is Russ Herman again.  I want

22  to apologize to you and the folks on the AG call for interrupting

23  before.  I thought that was the end of the conversation.

24           MR. DUGAN:  Just to be clear, Your Honor, we'll get you

25  a position in the Louisiana AG case by noon tomorrow on the

1    scheduling of the motion for expedited consideration of motion to

2    remand, correct?

3           THE COURT:  Monday I want to hear from you all.

4    Tomorrow I'm not going to be in town but Monday I will be.

5           MR. DUGAN:  So you want a status conference by phone,

6    Your Honor?

7           THE COURT:  Yes, at 2 o'clock.

8               Dawn, you're going to meet with Ben.

9           MS. BARRIOS:  Yes, Your Honor.

10          THE COURT:  He's going to come down here in 30 days.

11          MS. BARRIOS:  I hope within 14.

12          MR. DUGAN:  The next status conference, I believe,

13   Your Honor, is reset for February 26th.

14          THE COURT:  Get down here as quickly as you can.

15          MR. ANDERSON:  I think we should try to meet well before

16   then, because I have a feeling this is going to be an extended

17   conversation.

18          MS. BARRIOS:  Your Honor, I'm sorry, I have one other

19   matter that I would like you to address, because I understand

20   there is several governmental action counsel on the line, and we

21   had been in your presence and read in the transcript of your

22   thought to have common discovery completed while you're in the

23   MDL.

24       In our internal discussions, there have been issues raised

25   on exactly what you mean by the term *common discovery*.  Do you

1   mean discovery that is relevant only to one particular state so

2   that upon remand or transfer back to the transferor court a

3   particular state could continue or begin their particular state

4   discovery?  We're interpreting *common discovery* as being that

5   applicable to Merck across the board.  Am I correct in that

6   assumption?

7            THE COURT:  Yes, I think that's right.  These cases are

8   a little different than the other cases that I've seen, but in

9   the other cases, we dealt with general causation and specific

10  causation in each of those cases.  Some of the specific causation

11  was very specific to those particular cases, and that was not

12  common.  The common was more of the general causation in those

13  matters.

14       Now, this is a little different, the Attorney General

15  litigation, so there may be a way of trying to have the attorneys

16  general kind of put their heads together and see whether or not,

17  while everybody is here and piggyback off everybody else, we can

18  come up with some kind of template that is maybe fact specific

19  but at least is general enough that they can benefit, that they

20  can say this is what the case-specific areas or boundaries are,

21  this is what we need, and that would be the case specific

22  discovery.

23       I think that you folks would know more than I would as to

24  whether you've got enough out of the MDL.  Trial plans and

25  watching the trials and developing the general information,

1   getting all the depositions and things of that sort, I can't help

2   but feel that that's helped you, so that's what you get out of

3   being in the MDL.  This is where I was hoping that by having one

4   place and an opportunity to globally resolve all of these cases,

5   that would also be an opportunity, but if that opportunity has

6   gone by the wayside, then I don't think that's to anyone's

7   advantage, so I really suggest that you take another look at it.

8   But once that opportunity has gone by the wayside, then I've got

9   to focus on where the cases go and who goes with them, if anyone.

10          MR. DUGAN:  Your Honor, we appreciate that.  One more

11  point of clarification is that, in our schedule, can we get your

12  thoughts on expert discovery?  Because in our schedule, you know,

13  some folks, their understanding is that common discovery will get

14  to a point and that you'll consider remand, and it will get sent

15  back.  Others, for example, in the Louisiana case, we've done the

16  expert discovery, so some folks have asked for a clarification

17  from Your Honor on whether you want the expert discovery to be in

18  that internal structure before you consider remand or after?

19          THE COURT:  Does anybody else have any view of that?

20          MR. ANDERSON:  Your Honor, this is Brian Anderson.  A

21  number of these issues about the scope or the line between common

22  discovery and case-specific discovery and expert discovery is

23  addressed in PTO Number 39.  I think it contemplates that the

24  parties are going to discuss these matters among themselves

25  before asking the Court for definitive ruling.

1           On things like common discovery, there was always

2     the recognition that part of the concept of common discovery was

3     drawing uniform rules around such things as the scope of

4     discovery or the types of depositions that would be taken, even

5     if the substance of that might vary from state to state.

6           And, of course, a principle of this was to ensure that the

7     vast majority of discovery would be done in this court such that

8     post remand we don't reopen the floodgates again, thus defeating

9     the purpose of common discovery.  So I think those are all issues

10    that the parties ought to be discussing initially in order to

11    fulfill the spirit of PTO 39.

12          THE COURT:  Yes.  Well, from the standpoint, though,

13    Jim, of the experts, it just seems to me that motions on the

14    experts, it's better to get some consistency than inconsistency.

15    I can deal with *Daubert* and those sorts of things and the same

16    way with depositions of the experts.

17          As a practical matter, you may have to have some additional

18    development when you get back, if you get back to various states,

19    I don't know, but I've seen that happen before where some issue

20    comes up that's specific to that particular case or specific to

21    that particular state's law that needs to be dealt with in some

22    way.  That's potentially there, but hopefully you'll have a

23    package that you'll just have to go -- if you go back, you'll

24    just try the package rather than get, gear up for discovery.

25    Hopefully it will be all finished by the time you leave here.

1          MS. BARRIOS:  Your Honor, just as an aside to what Brian

2     was saying, there are two types of expert.  You have general

3     experts that are going to deal with Merck's liability, but then

4     you have case-specific experts, and I think that's what Jim was

5     alluding to.  We want to be able to take our case-specific

6     experts on the statisticians and the compilation of the damages.

7     We don't see that as being within the purview of common discovery

8     in the MDL.

9          THE COURT:  It may well be.

10         MR. STEELE:  Your Honor, if it would be alright, I would

11    like to speak for the Utah Attorney General.

12         THE COURT:  Sure.  Why don't you make the appearance for

13    the record.

14         MR. STEELE:  Yes, Your Honor.  Thank you.  This is

15    Joe Steele and I'm appearing on behalf of the Utah

16    Attorney General.

17         If I could digress for just a moment.  We, of course, were

18    involved in the trying of the *State of Alaska v. Eli Lilly*.  And

19    that was a case that was handled completely within the state

20    court system.  And so we had the experience of shepherding that

21    case through trial, including the dispositive motions and dealing

22    with the state-specific law and all of the evidentiary issues

23    that came up under very state-specific law.

24         What I can tell the Court is, from my experience, we're

25    dealing with 12 very different sets of laws and 12 very different

 1  sets of payors, so the rules from system to system vary
 2  tremendously.
 3       That being the case, I think that people's damage models
 4  and, therefore, their experts are going to vary widely.  I also
 5  think that the standard of proof under a particular state's law
 6  varies widely.  It makes it problematic to do some kinds of
 7  *Daubert* motions in the MDL because, of course, you would need to
 8  know how specifically are you trying to prove a particular thing
 9  and to what standard?
10       So many of the standards are not what, I think, the Court
11  would be used to dealing with.  I know that the Alaska standard
12  under the Unfair Trade Practices Act is similar to the federal,
13  but not identical.
14       So to me, I think we would have tremendous problems
15  completing our expert discovery.  I mean, I could see some of the
16  experts, not just Mr. Dugan's, that will be done, and hopefully
17  those experts will be usable by some of us.  Obviously in
18  Mr. Dugan's case, if there are *Daubert* motions those will be
19  dealt with.  But if we do get to the issue of whether we're going
20  to do discovery in the MDL of experts or not, we would like an
21  opportunity to brief the issue.  I think it's quite complex.
22       Our approach is very state specific, and it is driven by
23  that data.  So for example, if people wanted to know how many
24  myocardial infarctions there were 18 months after Medicaid
25  recipients began receiving Vioxx, I could tell you what occurred

1  in Utah.  I could tell you how many ischemic strokes there were

2  and so on.  It's a very fact-driven, data-driven, specific

3  approach to proving consequential damages.

4      So I would like the opportunity, and perhaps others would,

5  to brief the issue of what we intend to prove and why that would

6  be better done when you do state-specific kind of discovery.

7      THE COURT:  I see that, Joe.  I think Brian was saying

8  basically the same thing.  I think I've set that out in a

9  pretrial order, and I think you all have discussed it.  If there

10 is any areas that you feel is case specific, then that seems to

11 me to be beyond the purview of the MDL, so I can see that.

12     MR. STEELE:  Thank you.

13     THE COURT:  Anyone else?  Okay, folks, I'll see you all

14 during the next status conference, which is February 26th.  Thank

15 you very much.

16     MS. BARRIOS:  I'm sorry.

17     MR. DUGAN:  Your Honor, we're going to talk Monday at

18 2 o'clock, though, right?

19     THE COURT:  Right.  Thank you.

20     MR. DUGAN:  Thank you, Your Honor.

21     MS. BARRIOS:  Thank you, Your Honor.

22     (WHEREUPON, at 9:09 a.m., the proceedings were

23 concluded.)

24                          *    *    *

25

REPORTER'S CERTIFICATE

I, Cathy Pepper, Certified Realtime Reporter, Registered Merit Reporter, Registered Professional Reporter, Certified Court Reporter of the State of Louisiana, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.


                              _s/Cathy Pepper_____

                              Cathy Pepper, CRR, RMR, CCR

                              Official Court Reporter

                              United States District Court

**'** 

**'05** [1] - 5:17

# 1

**1** [1] - 13:17
**10** [1] - 10:7
**11** [1] - 3:10
**12** [4] - 3:11, 18:4, 23:24
**12th** [3] - 7:10, 7:12, 7:14
**1300** [1] - 2:11
**14** [2] - 3:12, 19:11
**16** [1] - 3:13
**1625** [1] - 2:3
**1657** [1] - 1:5
**16th** [1] - 8:23
**17** [1] - 3:14
**18** [3] - 3:15, 3:16, 24:23
**19** [1] - 3:17
**19104** [1] - 1:24
**1975** [1] - 5:15
**19th** [2] - 5:20, 7:6
**1:30** [1] - 9:17
**1st** [1] - 15:17

# 2

**2** [3] - 9:23, 19:7, 25:17
**20** [2] - 3:18, 10:7
**20006** [1] - 2:3
**2005** [3] - 5:7, 6:25, 15:4
**2010** [3] - 1:6, 4:2, 13:18
**21** [2] - 3:19, 3:20
**2150** [1] - 2:6
**22** [2] - 3:21, 3:22
**23** [1] - 3:23
**24th** [1] - 5:9
**25** [2] - 3:24, 3:25
**26th** [2] - 19:13, 25:13
**26TH** ............... [1] - 3:25
**2929** [1] - 1:23
**2:00** [1] - 1:6

# 3

**3** [2] - 1:6, 4:2
**30** [2] - 15:25, 19:10
**32207** [1] - 2:11
**3650** [1] - 2:14

**39** [4] - 13:12, 13:22, 21:22, 22:10
**39(a** [1] - 15:9
**39(a)** [1] - 14:19

# 4

**4** [3] - 3:4, 3:5, 6:4
**405** [1] - 2:11

# 5

**50** [2] - 16:7, 16:8
**500** [1] - 2:23
**500,000** [1] - 17:3
**504** [2] - 1:20, 2:24
**546** [1] - 1:19
**5664** [1] - 2:18
**581-3200** [1] - 1:20
**589-7779** [1] - 2:24

# 6

**6** [1] - 3:6
**650** [1] - 2:6

# 7

**701** [1] - 2:14
**70113** [1] - 1:16
**70130** [3] - 1:20, 2:7, 2:23
**70139-3650** [1] - 2:15

# 8

**8** [1] - 3:7
**820** [1] - 1:16
**84123** [1] - 2:19

# 9

**9** [3] - 3:8, 3:9, 10:6
**9:09** [1] - 25:21

# A

**a.m** [1] - 25:21
**ability** [1] - 26:8
**able** [3] - 15:6, 15:14, 23:4
**above-entitled** [1] - 26:9
**absolutely** [2] - 5:13, 8:21

**Act** [1] - 24:11
**action** [3] - 5:4, 15:21, 19:20
**ACTION** - 1:8
**actions** [2] - 11:9, 18:4
**activity** - 10:7, 10:21
**addition** [1] - 12:7
**additional** [5] - 11:17, 13:6, 13:23, 17:12, 22:16
**address** - 12:15, 19:19
**addressed** [2] - 6:23, 21:22
**adhere** [1] - 7:21
**advantage** [4] - 10:4, 10:10, 11:10, 21:6
**advisable** [1] - 17:22
**afternoon** [4] - 5:22, 6:1, 6:4, 11:13
**AG** [7] - 12:15, 12:17, 13:19, 17:1, 17:5, 18:22, 18:25
**ago** [1] - 12:23
**agree** [7] - 5:19, 6:2, 8:18, 12:9, 13:21, 16:1, 16:2
**agreement** [3] - 7:24, 8:2, 8:5
**AGs** [1] - 16:23
**Alaska** [3] - 23:17, 24:10
**alert** [1] - 14:17
**ALL** [1] - 1:8
**allow** [1] - 16:1
**allows** [1] - 7:18
**alluding** [1] - 23:4
**alright** [1] - 23:9
**ALSO** [1] - 2:20
**amount** [1] - 10:5
**ANDERSON** [6] - 2:2, 6:6, 9:15, 18:13, 19:15, 21:19
**Anderson** [4] - 6:7, 14:15, 14:17, 21:19
**ANDERSON** ............. ........................ [2] - 3:6, 3:20
**anticipated** [1] - 10:5
**apologize** [3] - 4:9, 15:21, 18:22
**appearance** [2] - 16:12, 23:11
**APPEARANCES** [2] - 1:13, 2:1
**appearing** [1] - 23:14
**applicable** [1] - 20:5
**apply** [1] - 13:4

**appreciate** [2] - 18:19, 21:9
**approach** [2] - 24:21, 25:2
**appropriate** [1] - 8:10
**approval** [1] - 15:12
**ARCH** [1] - 1:23
**areas** [2] - 20:20, 25:9
**argue** [1] - 7:12
**aside** [1] - 22:25
**aspect** [2] - 8:2, 12:11
**aspects** [1] - 8:17
**assess** [1] - 14:4
**assumption** [1] - 20:6
**Attorney** [5] - 4:22, 5:1, 20:14, 23:10, 23:15
**ATTORNEY** [1] - 2:9
**attorney** [1] - 14:22
**attorneys** [8] - 10:1, 10:3, 10:9, 11:3, 15:7, 16:7, 20:15
**Attorneys** [1] - 4:12
**authority** [1] - 11:25
**AVENUE** [1] - 1:16
**aware** [1] - 16:22

# B

**B406** [1] - 2:23
**balance** [1] - 17:18
**ball** [1] - 18:9
**BARNETT** [3] - 1:22, 12:13, 16:19
**Barnett** [3] - 12:14, 14:13, 15:2
**BARNETT** ................... ........................ [2] - 3:11, 3:13
**Barrios** [2] - 11:13, 14:12
**BARRIOS** [13] - 2:13, 2:14, 14:12, 16:18, 17:24, 18:8, 18:18, 19:9, 19:11, 19:18, 22:25, 25:15, 25:20
**BARRIOS** ................. ........................ [4] - 3:12, 3:14, 3:17, 3:22
**base** [2] - 9:10, 15:15
**basic** [1] - 5:16
**basis** [1] - 17:10
**BEFORE** [1] - 1:11
**began** [1] - 24:24
**begin** [1] - 20:3
**behalf** [4] - 4:21, 5:1, 14:25, 23:14
**behind** [2] - 16:9, 18:5

**believes** [1] - 15:12
**Ben** [4] - 12:14, 16:5, 18:11, 19:8
**ben** [1] - 17:24
**benefit** [1] - 20:19
**BENJAMIN** [1] - 1:22
**best** [3] - 4:14, 8:5, 26:8
**better** [3] - 10:15, 22:13, 25:5
**between** [3] - 16:16, 17:18, 21:20
**beyond** [1] - 25:10
**BIGGS** [1] - 2:17
**black** [1] - 15:1
**BLOOM** [1] - 2:20
**BLVD** [1] - 2:11
**board** [1] - 20:5
**boundaries** [1] - 20:20
**Brian** [6] - 6:7, 7:22, 8:16, 21:19, 22:25, 25:6
**BRIAN** [1] - 2:2
**brief** [6] - 4:19, 6:18, 6:23, 6:24, 24:20, 25:4
**briefed** [1] - 7:18
**briefing** [4] - 6:10, 6:11, 6:16, 7:5
**briefs** [3] - 4:15, 6:20, 7:6
**building** [1] - 15:22
**burner** [1] - 14:23
**BY** [9] - 1:15, 1:19, 1:22, 2:2, 2:6, 2:10, 2:14, 2:24, 2:25

# C

**CARONDELET** [1] - 1:19
**case** [29] - 5:2, 5:21, 6:12, 10:2, 10:17, 11:11, 11:15, 11:22, 11:24, 12:3, 12:5, 14:2, 14:24, 15:10, 17:2, 17:4, 18:25, 20:20, 20:21, 21:14, 21:21, 22:19, 23:3, 23:4, 23:18, 23:20, 24:2, 24:17, 25:9
**case-specific** [4] - 20:20, 21:21, 23:3, 23:4
**cases** [13] - 5:4, 6:25, 13:7, 15:4, 15:21, 16:4, 20:7, 20:8, 20:9, 20:10, 20:11, 21:3, 21:8

**CASES** [1] - 1:8
**CASTIEX** [1] - 2:13
**catching** [1] - 7:24
**CATHY** [1] - 2:22
**Cathy** [2] - 26:3, 26:14
**causation** [4] - 20:9, 20:10, 20:12
**CCR** [2] - 2:22, 26:14
**CENTRE** [1] - 1:23
**certain** [1] - 15:19
**certainly** [3] - 10:14, 15:5, 18:18
**CERTIFICATE** [1] - 26:1
**Certified** [2] - 26:3, 26:4
**certify** [1] - 26:7
**challenging** [1] - 10:24
**chance** [2] - 5:23, 14:15
**change** [1] - 9:1
**changed** [1] - 10:22
**charge** [1] - 10:14
**chicken** [1] - 11:20
**chicken-and-the-egg** [1] - 11:20
**Chinese** [1] - 15:20
**CIRA** [1] - 1:23
**cited** [1] - 6:25
**CITY** [1] - 2:19
**claims** [1] - 4:12
**clarification** [2] - 21:10, 21:15
**cleanup** [1] - 14:7
**clear** [3] - 18:1, 18:13, 18:24
**clearly** [1] - 17:11
**CLERK** [1] - 4:7
**coming** [2] - 10:22, 12:25
**common** [16] - 12:21, 13:6, 13:11, 14:9, 15:16, 19:22, 19:25, 20:4, 20:12, 21:12, 21:20, 21:25, 22:1, 22:8, 23:6
**compilation** [1] - 23:5
**complete** [1] - 15:20
**completed** [2] - 17:17, 19:22
**completely** [1] - 23:18
**completing** [1] - 24:14
**complex** [1] - 4:20
**COMPUTER** [1] - 2:25
**concentrate** [1] - 18:8
**concentrated** [1] - 18:3
**concept** [1] - 22:1

**concern** [2] - 4:18, 6:22
**concerns** [4] - 6:10, 6:13, 6:14, 7:4
**concluded** [1] - 25:22
**confer** [5] - 12:9, 13:13, 13:22, 13:23, 14:15
**CONFERENCE** [2] - 1:10, 3:25
**conference** [9] - 4:11, 5:2, 9:17, 9:21, 12:18, 14:20, 19:5, 19:12, 25:13
**conscious** [1] - 18:12
**consequential** [1] - 25:2
**consider** [2] - 21:13, 21:17
**consideration** [3] - 5:6, 5:14, 19:1
**consistency** [1] - 22:13
**constantly** [1] - 14:23
**contemplates** [1] - 21:22
**continue** [1] - 20:3
**CONTINUED** [1] - 2:1
**conversation** [4] - 14:17, 14:19, 18:23, 19:17
**coordinate** [1] - 5:24
**copies** [1] - 13:13
**core** [1] - 5:16
**correct** [8] - 5:1, 5:5, 5:13, 11:12, 12:22, 19:2, 20:5, 26:7
**cost** [1] - 10:15
**COTLAR** [1] - 1:15
**counsel** [6] - 6:7, 7:23, 15:6, 17:5, 18:1, 19:20
**COUNSEL** [1] - 2:13
**couple** [2] - 8:3, 12:23
**course** [4] - 6:12, 22:5, 23:16, 24:6
**COURT** [31] - 1:1, 2:22, 4:4, 4:8, 4:23, 5:23, 6:5, 7:22, 9:4, 9:10, 9:16, 9:23, 12:11, 14:11, 16:5, 18:7, 18:11, 18:16, 18:20, 19:3, 19:7, 19:10, 19:14, 20:7, 21:18, 22:11, 23:8, 23:11, 25:6, 25:12, 25:18
**court** [4] - 12:3, 20:2, 22:6, 23:19
**Court** [12] - 7:9, 7:18,

13:14, 15:14, 21:24, 23:23, 24:9, 26:4, 26:5, 26:6, 26:15, 26:16
**COURT.......................
.......................** [5] - 3:4, 3:9, 3:18, 3:21, 3:24
**create** [1] - 7:12
**critical** [1] - 11:3
**CRR** [2] - 2:22, 26:14
**cut** [2] - 8:6, 9:24
**cutoff** [2] - 13:17, 15:16
**cutoffs** [1] - 18:4

**D**

**damage** [1] - 24:2
**damages** [2] - 23:5, 25:2
**data** [2] - 24:22, 25:1
**data-driven** [1] - 25:1
**date** [9] - 5:9, 5:10, 5:20, 7:15, 11:22, 13:17, 15:16, 15:17, 15:19
**Daubert** [4] - 7:14, 22:14, 24:6, 24:17
**Dawn** [2] - 12:17, 12:22, 13:14, 14:11, 14:12, 16:14, 16:20, 18:12, 18:13, 18:14, 18:16, 19:8
**DAWN** [1] - 2:14
**days** [5] - 5:11, 8:3, 12:23, 15:25, 19:10
**DC** [1] - 2:3
**deadlines** [1] - 6:15
**deal** [2] - 22:14, 23:2
**dealing** [4] - 16:7, 23:20, 23:24, 24:10
**dealt** [4] - 16:13, 20:9, 22:20, 24:18
**DECHERT** [1] - 1:22
**decide** [1] - 16:1
**decision** [2] - 7:19, 11:7
**defeating** [1] - 22:7
**DEFENDANT** [1] - 1:18
**defendants** [1] - 4:18
**defense** [1] - 5:11
**defer** [1] - 7:13
**definitive** [1] - 21:24
**depositions** [3] - 20:25, 22:12, 22:15
**DEPUTY** [1] - 4:7
**described** [1] - 15:11

**desire** [1] - 16:23
**developing** [1] - 20:24
**development** [1] - 22:17
**developments** [1] - 7:1
**devote** [1] - 15:6
**different** [5] - 5:22, 20:8, 20:14, 23:24
**difficult** [1] - 10:24
**digress** [1] - 23:16
**discovery** [43] - 10:5, 10:13, 11:6, 12:21, 13:6, 13:11, 13:12, 13:17, 13:24, 14:9, 14:14, 14:16, 15:6, 15:16, 15:17, 16:3, 17:16, 17:21, 18:4, 19:22, 19:25, 20:1, 20:4, 20:21, 21:11, 21:12, 21:15, 21:16, 21:21, 21:25, 22:1, 22:3, 22:6, 22:8, 22:23, 23:6, 24:14, 24:19, 25:5
**discuss** [1] - 21:23
**discussed** [1] - 25:8
**discussing** [1] - 22:9
**discussion** [3] - 13:16, 17:15, 18:15
**discussions** [4] - 16:17, 17:17, 19:24
**dispense** [1] - 7:4
**dispositive** [2] - 5:20, 23:20
**District** [3] - 26:6, 26:16
**DISTRICT** [3] - 1:1, 1:1, 1:11
**docket** [1] - 8:9
**DOCKET** [1] - 1:5
**DOCUMENT** [1] - 1:7
**documents** [2] - 10:7, 17:3
**done** [11] - 9:21, 13:18, 14:8, 14:9, 14:16, 17:11, 17:12, 21:14, 22:6, 24:15, 25:5
**DOROTHY** [1] - 1:19
**dovetails** [1] - 13:2
**down** [6] - 9:3, 10:22, 18:9, 18:14, 19:10, 19:14
**drawing** [1] - 22:2
**driven** [3] - 24:21, 25:1
**Drywall** [1] - 15:20
**due** [2] - 7:8, 8:23
**Dugan** [2] - 4:21, 4:25

**DUGAN** [13] - 2:6, 4:21, 4:25, 5:25, 8:20, 9:8, 11:12, 18:24, 19:5, 19:12, 21:9, 25:16, 25:19
**Dugan's** [2] - 24:15, 24:17
**DUGAN.......................
.......................** [5] - 3:5, 3:7, 3:10, 3:16, 3:19
**during** [2] - 16:17, 25:13

**E**

**e-mail** [1] - 6:1
**Eastern** [1] - 26:6
**EASTERN** [1] - 1:1
**effort** [2] - 6:14, 11:15
**egg** [1] - 11:20
**eight** [1] - 5:11
**either** [2] - 8:12, 13:7
**ELDON** [1] - 1:11
**Eli** [1] - 23:17
**encourage** [1] - 10:20
**end** [3] - 11:16, 16:16, 18:23
**ensure** [1] - 22:5
**entities** [1] - 14:13
**entitled** [1] - 26:9
**envisions** [1] - 13:17
**ESQUIRE** [8] - 1:15, 1:19, 1:22, 2:2, 2:10, 2:14, 2:18, 2:20
**essentially** [1] - 17:6
**event** [1] - 10:24
**evidentiary** [1] - 23:21
**exactly** [1] - 11:22, 14:19, 19:25
**example** [3] - 17:2, 21:14, 24:22
**expedite** [4] - 4:13, 4:14, 7:5, 18:15
**expedited** [4] - 5:6, 5:14, 6:2, 19:1
**experience** [3] - 13:2, 23:19, 23:23
**experiences** [1] - 13:5
**expert** [6] - 21:11, 21:15, 21:16, 21:21, 23:1, 24:14
**experts** [10] - 22:12, 22:13, 22:15, 23:2, 23:3, 23:5, 24:3, 24:15, 24:16, 24:19
**explicit** [1] - 15:11
**expressed** [1] - 14:21
**extended** [1] - 19:16

**EYE** [1] - 2:3
**eye** [1] - 18:9

## F

**fact** [4] - 13:25, 17:11, 20:18, 25:1
**fact-driven** [1] - 25:1
**fair** [1] - 8:12
**fairly** [1] - 7:18
**FALLON** [1] - 1:11
**Fallon** [2] - 9:18, 12:13
**FEBRUARY** [3] - 1:6, 3:25, 4:2
**February** [6] - 5:9, 5:20, 7:6, 8:23, 19:13, 25:13
**federal** [2] - 12:3, 24:11
**felt** [1] - 10:10
**field** [1] - 18:9
**figure** [4] - 8:24, 14:1, 14:8, 16:10
**file** [2] - 5:11, 6:23
**filed** [8] - 5:5, 5:8, 5:13, 5:17, 6:20, 8:22, 12:5, 15:4
**filing** [2] - 6:13, 6:25
**fine** [2] - 9:10, 12:24
**finish** [1] - 15:3
**finished** [1] - 22:24
**FIRM** [1] - 2:5
**first** [6] - 6:11, 9:10, 15:15, 16:9, 17:7, 18:3
**floodgates** [1] - 22:7
**FLORIDA** [3] - 2:9, 2:10, 2:11
**Florida** [1] - 17:9
**focus** [4] - 11:21, 13:3, 17:7, 21:8
**focused** [1] - 17:9
**focusing** [2] - 10:25, 17:1
**folks** [6] - 12:17, 18:22, 20:22, 21:12, 21:15, 25:12
**followed** [1] - 12:14
**following** [1] - 5:3
**FOR** [2] - 1:15, 1:18
**foregoing** [1] - 26:7
**foremost** [1] - 17:7
**formal** [1] - 15:11
**formality** [1] - 7:4
**forward** [3] - 8:7, 8:15, 11:16
**frame** [1] - 8:22
**frankly** [1] - 6:14

**free** [1] - 10:14
**Friday** [2] - 5:5, 5:8
**frustration** [2] - 14:21, 16:23
**fulfill** [1] - 22:10
**full** [1] - 11:25
**fully** [1] - 12:14

## G

**gained** [2] - 11:5, 11:6
**game** [2] - 11:16, 15:8
**gear** [1] - 22:23
**GENERAL** [1] - 2:9
**General** [6] - 4:12, 4:22, 5:1, 20:14, 23:10, 23:15
**general** [15] - 10:1, 10:3, 10:9, 11:3, 14:22, 15:7, 15:12, 16:7, 16:8, 20:9, 20:12, 20:15, 20:19, 20:24, 23:1
**given** [1] - 13:18
**global** [1] - 17:25
**globally** [3] - 10:19, 11:7, 21:3
**goal** [1] - 17:18
**GOVERNMENT** [1] - 1:8
**governmental** [6] - 5:4, 11:9, 14:13, 15:21, 18:4, 19:20
**GREEN** [1] - 2:18
**group** [2] - 10:9, 11:3
**guess** [2] - 13:14, 16:21
**guiding** [1] - 13:24
**gun** [1] - 17:23

## H

**half** [1] - 7:7
**hammer** [1] - 17:22
**handled** [1] - 23:18
**happy** [3] - 8:20, 16:19, 17:12
**head** [1] - 17:23
**heads** [1] - 20:16
**hear** [5] - 4:24, 6:5, 8:2, 18:13, 19:3
**heard** [2] - 15:2, 16:6
**HEARD** [1] - 1:11
**hearing** [7] - 5:9, 7:9, 7:10, 7:11, 7:13, 7:15, 16:5
**help** [1] - 20:25
**helped** [1] - 21:1

**helpful** [1] - 10:3
**hereby** [1] - 26:7
**HERMAN** [5] - 1:15, 1:15, 9:18, 18:21
**Herman** [2] - 9:18, 18:21
**HERMAN...................
...................... [2] -
3:8, 3:15
**hit** [1] - 17:18
**hole** [1] - 15:1
**honestly** [2] - 13:13, 13:15
**Honor** [45] - 4:21, 4:25, 5:1, 5:5, 5:11, 5:13, 5:19, 5:21, 5:25, 6:6, 6:22, 8:21, 8:25, 9:8, 9:15, 11:12, 11:15, 11:20, 12:1, 12:3, 12:8, 12:10, 13:2, 14:12, 14:25, 15:10, 15:24, 16:1, 16:18, 16:19, 18:18, 18:24, 19:6, 19:9, 19:13, 19:18, 21:9, 21:16, 21:19, 22:25, 23:9, 23:13, 25:16, 25:19, 25:20
**HONORABLE** [1] - 1:11
**hope** [1] - 19:11
**hopefully** [4] - 10:12, 22:21, 22:24, 24:15
**hoping** [1] - 21:2

## I

**idea** [2] - 16:14, 16:20
**identical** [2] - 14:16, 24:12
**idle** [1] - 16:25
**II** [1] - 2:6
**imagine** [1] - 5:18
**impact** [1] - 17:20
**impatience** [2] - 14:21, 15:21
**IN** [2] - 1:4, 4:4
**including** [2] - 12:17, 23:20
**inconsistency** [1] - 22:13
**indicate** [1] - 6:7
**infarctions** [1] - 24:23
**information** [3] - 10:14, 16:3, 20:24
**intend** [1] - 25:4
**interest** [1] - 11:24
**interfere** [2] - 6:16, 7:20

**internal** [2] - 19:24, 21:17
**interpreting** [1] - 20:4
**interrupt** [1] - 6:12
**interrupting** [2] - 6:20, 18:22
**involved** [1] - 23:17
**iron** [1] - 15:25
**IS** [1] - 3:25
**ischemic** [1] - 24:25
**Ismail** [1] - 6:8
**issue** [8] - 4:19, 11:19, 15:9, 16:21, 22:18, 24:18, 24:20, 25:4
**issues** [16] - 5:3, 5:16, 6:10, 6:11, 6:16, 6:18, 6:24, 7:2, 7:13, 7:18, 7:19, 7:24, 19:24, 21:20, 22:8, 23:21
**itself** [1] - 7:6

## J

**JACKSONVILLE** [1] - 2:11
**James** [2] - 4:21, 4:25
**JAMES** [2] - 2:6, 2:10
**January** [1] - 12:18
**Jim** [10] - 4:23, 8:16, 11:11, 12:14, 12:18, 12:22, 15:10, 18:20, 22:12, 23:3
**Jim's** [1] - 13:21
**Joe** [2] - 23:14, 25:6
**joint** [1] - 11:5
**JOSEPH** [1] - 2:18
**JUDGE** [1] - 1:11
**Judge** [4] - 9:18, 12:13, 18:5, 18:21
**judge** [1] - 15:4
**Judge's** [1] - 18:1
**judgment** [2] - 7:8, 7:11
**June** [2] - 13:17, 15:17
**jurisdiction** [2] - 8:11, 8:12
**jurisdictional** [9] - 6:10, 6:11, 6:16, 6:18, 6:24, 7:2, 7:13, 7:17, 7:19
**jury** [2] - 4:9, 14:20
**JUSTIN** [1] - 2:20

## K

**KATZ** [1] - 1:15
**keep** [1] - 18:9

**kind** [4] - 11:19, 20:15, 20:18, 25:5
**kinds** [1] - 24:5
**KINGSDORF** [1] - 2:13
**knows** [1] - 5:11

## L

**L.L.P** [1] - 1:22
**LA** [4] - 1:16, 1:20, 2:7, 2:15
**LAKE** [1] - 2:19
**landscapes** [1] - 10:23
**last** [3] - 5:5, 14:20, 15:20
**late** [1] - 5:22
**LAW** [1] - 2:5
**law** [5] - 5:15, 22:20, 23:21, 23:22, 24:4
**laws** [1] - 23:24
**lead** [1] - 6:7
**learn** [1] - 10:12
**learned** [1] - 12:23
**least** [4] - 4:16, 9:5, 10:3, 20:19
**leave** [1] - 22:24
**lengthy** [1] - 14:17
**letter** [2] - 5:21, 6:3
**level** [1] - 16:23
**LIABILITY** [1] - 1:5
**liability** [1] - 23:2
**LIAISON** [1] - 2:13
**Lilly** [1] - 23:17
**line** [3] - 9:3, 19:20, 21:20
**litigation** [4] - 7:1, 10:4, 10:6, 10:10
**LITIGATION** [1] - 1:5
**LLC** [2] - 1:18, 2:17
**LLP** [1] - 2:13
**local** [1] - 5:8
**look** [3] - 7:23, 10:18, 21:6
**loud** [1] - 18:13
**LOUISIANA** [4] - 1:1, 1:6, 2:5, 2:23
**Louisiana** [14] - 4:22, 5:1, 13:5, 13:16, 14:16, 14:22, 14:25, 16:10, 17:1, 17:7, 17:8, 18:25, 21:14, 26:5, 26:6

## M

**mail** [1] - 6:1

**majority** [1] - 22:6
**management** [1] - 11:11
**March** [3] - 7:10, 7:12, 7:14
**master** [2] - 13:12, 14:14
**material** [1] - 5:16
**matter** [5] - 10:19, 11:7, 11:9, 19:19, 22:16, 26:10
**matters** [6] - 9:21, 11:8, 12:16, 17:1, 20:13, 21:23
**MDL** [13] - 1:5, 11:17, 11:25, 12:5, 12:19, 14:9, 19:23, 20:23, 21:2, 23:7, 24:6, 24:19, 25:10
**mean** [5] - 8:23, 17:1, 19:25, 20:1, 24:14
**meaningful** [1] - 17:15
**meantime** [1] - 13:9
**MECHANICAL** [1] - 2:24
**Medicaid** [1] - 24:23
**meet** [10] - 9:11, 9:13, 12:9, 13:13, 13:22, 13:23, 16:19, 18:14, 19:8, 19:15
**meeting** [2] - 18:16, 18:17
**mentioning** [1] - 7:25
**Merck** [18] - 5:17, 5:21, 5:23, 6:1, 6:5, 9:2, 11:13, 11:20, 12:9, 13:10, 14:6, 14:23, 15:5, 15:18, 15:24, 16:25, 18:6, 20:5
**Merck's** [1] - 23:2
**Merit** [1] - 26:4
**met** [1] - 12:17
**microphone** [1] - 4:23
**might** [2] - 18:13, 22:4
**million** [2] - 10:7, 17:3
**mirrored** [1] - 14:19
**models** [1] - 24:2
**moment** [1] - 23:16
**Monday** [9] - 6:1, 9:12, 9:13, 9:17, 9:23, 11:12, 19:3, 19:4, 25:16
**month** [1] - 7:15
**months** [1] - 24:23
**morning** [3] - 4:8, 4:25, 12:13
**motion** [20] - 4:12, 4:13, 5:5, 5:6, 5:10, 5:14, 5:19, 5:20, 7:4,

7:6, 7:9, 7:11, 8:22, 11:3, 11:13, 11:21, 12:7, 19:1
**motions** [11] - 7:8, 7:14, 7:16, 10:2, 10:25, 11:1, 11:17, 22:12, 23:20, 24:6, 24:17
**move** [4] - 8:15, 11:15, 15:8, 15:15
**moving** [1] - 16:24
**MR** [36] - 3:5, 3:6, 3:7, 3:8, 3:10, 3:11, 3:13, 3:15, 3:16, 3:19, 3:20, 3:23, 4:21, 4:25, 5:25, 6:6, 8:20, 9:8, 9:15, 9:18, 11:12, 12:13, 16:19, 18:13, 18:21, 18:24, 19:5, 19:12, 19:15, 21:9, 21:19, 23:9, 23:13, 25:11, 25:16, 25:19
**MS** [15] - 3:12, 3:14, 3:17, 3:22, 14:12, 16:18, 17:24, 18:8, 18:18, 19:9, 19:11, 19:18, 22:25, 25:15, 25:20
**MURRAY** [1] - 2:5
**MYERS** [1] - 2:2
**myocardial** [1] - 24:23

**N**

**necessarily** [2] - 10:14, 17:7
**necessary** [1] - 13:7
**need** [11] - 4:16, 6:20, 8:14, 13:22, 14:1, 15:13, 17:12, 17:19, 18:9, 20:21, 24:6
**needs** [6] - 6:24, 13:18, 14:1, 14:7, 14:8, 22:20
**negotiable** [1] - 15:17
**negotiated** [1] - 17:5
**new** [1] - 5:16
**New** [3] - 9:24, 17:4, 17:9
**NEW** [1] - 1:6, 1:16, 1:20, 2:7, 2:15, 2:23
**next** [4] - 5:9, 11:22, 19:12, 25:13
**NEXT** [1] - 3:25
**NO** [1] - 1:5
**nobody** [1] - 16:9
**nonLouisiana** [2] - 12:15, 14:13

**nontrial** [1] - 16:4
**noon** [2] - 9:9, 18:25
**note** [1] - 16:25
**November** [1] - 5:17
**Number** [1] - 21:22
**number** [2] - 4:11, 21:20
**numbered** [1] - 26:9

**O**

**o'clock** [5] - 6:4, 9:23, 9:24, 19:7, 25:17
**O'KEEFE** [1] - 1:16
**O'MELVENY** [1] - 2:2
**observations** [1] - 16:22
**obviously** [4] - 11:15, 15:17, 15:18, 24:16
**occurred** [3] - 10:6, 14:19, 24:24
**October** [2] - 5:7, 5:15
**OF** [7] - 1:1, 1:10, 2:5, 2:9, 2:10, 2:17
**offer** [1] - 16:22
**OFFICE** [1] - 2:9
**Official** [2] - 26:5, 26:15
**OFFICIAL** [1] - 2:22
**Oklahoma** [3] - 12:2, 12:4, 14:3
**once** [2] - 12:8, 21:7
**one** [12] - 8:12, 10:18, 10:23, 11:2, 12:15, 15:7, 16:12, 17:25, 19:18, 20:1, 21:2, 21:9
**ones** [1] - 8:18
**OPEN** [1] - 4:4
**opinion** [1] - 10:23
**opinions** [1] - 10:22
**opportunities** [1] - 11:10
**opportunity** [13] - 4:15, 4:19, 8:13, 9:5, 10:11, 10:17, 11:6, 21:3, 21:4, 21:7, 24:20, 25:3
**opposition** [2] - 5:17, 5:18
**order** [13] - 7:12, 7:18, 9:20, 13:15, 14:19, 15:9, 15:16, 15:25, 16:3, 18:2, 22:9, 25:8
**orders** [1] - 11:11
**originally** [1] - 10:6
**ORLEANS** [6] - 1:6, 1:16, 1:20, 2:7, 2:15,

2:23
**Orleans** [1] - 9:24
**ought** [5] - 4:13, 4:16, 8:7, 11:10, 22:9

**P**

**P.M** [1] - 1:6
**PA** [1] - 1:24
**package** [2] - 22:22, 22:23
**PAGE** [2] - 3:2
**pages** [2] - 17:3, 17:4
**part** [2] - 10:9, 22:1
**participate** [1] - 10:11
**particular** [11] - 5:2, 5:10, 5:19, 20:1, 20:3, 20:11, 22:19, 22:20, 24:4, 24:7
**particularly** [1] - 13:18
**parties** [8] - 7:5, 8:10, 10:20, 12:9, 13:23, 15:15, 21:23, 22:9
**party** [1] - 12:4
**payor** [1] - 12:4
**payors** [1] - 23:25
**pending** [1] - 5:7
**Pennsylvania** [7] - 11:24, 12:23, 14:3, 15:10, 15:12, 17:2, 17:9
**people** [4] - 4:11, 4:24, 17:19, 24:22
**people's** [2] - 10:23, 24:2
**Pepper** [3] - 26:3, 26:13, 26:14
**PEPPER** [1] - 2:22
**perfunctory** [1] - 11:2
**perhaps** [5] - 7:4, 7:13, 25:3
**period** [1] - 16:20
**person** [1] - 18:15
**PHILADELPHIA** [1] - 1:24
**phone** [6] - 4:11, 4:24, 6:9, 8:4, 12:12, 19:5
**phonetically** [1] - 6:9
**piggyback** [1] - 20:17
**PIGMAN** [1] - 1:18
**place** [5] - 10:18, 13:3, 14:1, 18:4, 21:3
**plaintiffs** [2] - 6:25, 7:24
**PLAINTIFFS** [1] - 1:15
**plan** [2] - 12:19, 12:21
**plans** [2] - 10:8, 20:23
**plug** [1] - 15:8
**point** [9] - 4:10, 4:13,

7:22, 11:4, 11:5, 13:21, 21:10, 21:13
**pointed** [1] - 17:23
**political** [1] - 16:6
**position** [3] - 5:22, 9:1, 18:25
**possible** [1] - 4:17
**possibly** [3] - 8:25, 11:24, 12:3
**post** [2] - 6:25, 22:7
**postpone** [2] - 6:14, 6:15
**potential** [2] - 12:2, 12:6
**potentially** [1] - 22:21
**POYDRAS** [3] - 2:6, 2:14, 2:23
**practical** [1] - 22:16
**Practices** [1] - 24:11
**prepare** [1] - 13:7
**prepared** [2] - 6:19, 10:8
**preparing** [1] - 6:12
**presence** [1] - 19:21
**PRESENT** [1] - 2:20
**present** [4] - 4:15, 4:16, 8:13, 8:14
**pretrial** [11] - 6:15, 6:21, 7:20, 13:15, 14:18, 15:9, 15:25, 16:3, 18:2, 25:8
**principal** [1] - 13:24
**principle** [1] - 22:5
**priorities** [1] - 17:8
**problem** [3] - 16:10, 16:11, 17:24
**problematic** [1] - 24:5
**problems** [2] - 16:6, 24:13
**proceedings** [3] - 10:11, 25:21, 26:9
**PROCEEDINGS** [3] - 1:10, 2:24, 4:1
**PRODUCED** [1] - 2:25
**produced** [2] - 17:2, 17:3
**production** [2] - 13:19, 14:5
**productions** [2] - 14:6, 17:10
**PRODUCTS** [1] - 1:4
**Professional** [1] - 26:4
**proof** [1] - 24:4
**proposal** [1] - 7:17
**propose** [1] - 7:3
**proposed** [5] - 11:13, 13:15, 14:18, 15:9, 15:25
**prove** [2] - 24:7, 25:4

**proving** [1] - 25:2
**PTO** [4] - 13:12, 13:22, 21:22, 22:10
**pull** [3] - 15:8, 16:15, 16:16
**purpose** [1] - 22:8
**pursuant** [1] - 6:21
**purview** [2] - 23:6, 25:10
**push** [1] - 7:14
**put** [6] - 14:1, 14:18, 14:22, 15:10, 15:16, 20:16

## Q

**quickly** [4] - 4:17, 8:9, 8:15, 19:14
**quite** [2] - 13:15, 24:20

## R

**raised** [1] - 19:24
**rather** [2] - 16:16, 22:23
**RE** [1] - 1:4
**reached** [1] - 5:25
**read** [1] - 19:21
**ready** [2] - 7:19, 14:3
**realistic** [4] - 13:4, 13:20, 17:15, 17:19
**realistically** [1] - 14:4
**realize** [1] - 11:2
**really** [7] - 4:13, 7:22, 13:15, 14:8, 14:24, 18:5, 21:6
**Realtime** [1] - 26:3
**reason** [1] - 10:25
**received** [5] - 4:12, 6:1, 9:19, 15:11, 17:16
**receiving** [1] - 24:24
**recent** [2] - 13:5, 17:16
**recipients** [1] - 24:24
**recognition** [1] - 22:1
**record** [2] - 23:12, 26:9
**RECORDED** [1] - 2:24
**Registered** [2] - 26:3, 26:4
**regular** [1] - 17:10
**RELATES** [1] - 1:7
**relevant** [2] - 7:2, 20:1
**remand** [18] - 4:12, 5:6, 5:7, 7:6, 7:9, 10:2, 10:25, 11:1,

15:13
**scope** [2] - 21:20, 22:2
**seated** [1] - 4:8
**second** [9] - 6:22, 12:20, 12:24, 13:11, 13:25, 14:2, 14:14, 15:2, 15:4
**section** [1] - 12:19
**see** [17] - 5:24, 7:23, 8:1, 8:4, 8:17, 9:1, 9:7, 9:11, 10:19, 16:15, 20:16, 23:6, 24:14, 25:6, 25:10, 25:12
**seek** [1] - 18:1
**seeking** [1] - 15:1
**selection** [1] - 12:24
**selections** [1] - 12:6
**send** [1] - 13:14
**sense** [1] - 16:21
**sent** [3] - 5:21, 6:3, 21:13
**serious** [1] - 11:1
**serve** [1] - 14:14
**served** [1] - 13:10
**set** [12] - 8:8, 8:19, 8:22, 9:16, 9:22, 11:17, 12:20, 13:11, 14:14, 18:16, 18:17, 25:7
**sets** [2] - 23:24, 23:25
**setting** [3] - 13:5, 16:20, 17:19
**several** [4] - 5:3, 10:22, 12:4, 19:20
**shepherding** [1] - 23:19
**short** [5] - 5:18, 7:18, 7:25, 8:22, 13:21
**shorten** [1] - 10:13
**side** [7] - 4:16, 8:5, 11:2, 13:19, 15:22, 15:25, 17:20
**sides** [6] - 9:6, 10:18, 14:4, 14:7, 17:12, 17:20
**significant** [1] - 16:11
**similar** [1] - 24:11
**simply** [1] - 7:5
**sit** [1] - 8:23
**site** [1] - 5:9
**sitting** [2] - 15:5, 16:25
**situation** [2] - 7:23, 11:20
**sizable** [1] - 10:5
**solely** [1] - 17:1
**solved** [1] - 16:11
**soon** [2] - 12:1, 12:10
**sorry** [3] - 9:23, 19:18,

25:15
**sort** [4] - 13:4, 13:16, 15:19, 20:25
**sorts** [1] - 22:14
**SOUTH** [1] - 2:18
**SPEAKERS** [1] - 3:2
**speaking** [1] - 6:24
**specific** [17] - 20:9, 20:10, 20:11, 20:18, 20:20, 20:21, 21:21, 22:19, 23:3, 23:4, 23:21, 23:22, 24:21, 25:1, 25:5, 25:9
**specifically** [1] - 24:7
**spelled** [1] - 6:8
**spirit** [1] - 22:10
**standard** [3] - 24:4, 24:8, 24:10
**standards** [1] - 24:9
**standpoint** [1] - 22:11
**starting** [4] - 9:12, 13:10
**STATE** [5] - 2:5, 2:9, 2:10, 2:13, 2:17
**state** [10] - 20:1, 20:3, 22:4, 23:18, 23:21, 23:22, 24:21, 25:5
**State** [4] - 11:23, 12:2, 23:17, 26:5
**state's** [2] - 22:20, 24:4
**state-specific** [3] - 23:21, 23:22, 25:5
**states** [3] - 14:6, 16:8, 22:17
**STATES** [2] - 1:1, 1:11
**States** [2] - 26:6, 26:16
**statisticians** [1] - 23:5
**status** [6] - 4:11, 5:2, 14:20, 19:5, 19:12, 25:13
**STATUS** [1] - 1:10, 3:25
**stay** [1] - 10:4
**Steele** [1] - 23:14
**STEELE** [5] - 2:17, 2:18, 23:9, 23:13, 25:11
**STEELE...................
...................... [1] -
3:23
**STENOGRAPHY** [1] -
2:24
**step** [1] - 12:15
**stepchild** [1] - 15:23
**still** [5] - 5:16, 11:10, 11:23, 11:25, 13:18
**STONE** [1] - 1:18
**story** [1] - 13:21

**Stratton** [1] - 9:20
**STREET** [7] - 1:19, 1:23, 2:3, 2:6, 2:14, 2:18, 2:23
**strokes** [1] - 24:25
**structure** [2] - 17:6, 21:17
**stuff** [1] - 4:9
**submission** [1] -
13:17
**submit** [1] - 7:5
**submitted** [2] - 11:13, 12:3
**substance** [2] - 16:12, 22:4
**suggest** [1] - 21:6
**suggestions** [1] - 4:20
**SUITE** [3] - 2:6, 2:11, 2:14
**summary** [2] - 7:8, 7:11
**summer** [1] - 15:13
**supplemental** [3] -
5:18, 6:23, 7:5
**supplemented** [1] -
5:14
**supplied** [1] - 13:14
**suspended** [1] - 17:17
**system** [3] - 23:19, 23:25

## T

**tables** [1] - 4:9
**Tarek** [1] - 6:8
**tee** [2] - 5:20, 8:14
**telephone** [1] - 9:17
**template** [1] - 20:18
**term** [1] - 19:25
**terms** [9] - 10:1, 13:19, 14:4, 17:21
**THE** [41] - 1:11, 1:15, 1:18, 2:5, 2:9, 2:9, 2:17, 3:4, 3:9, 3:18, 3:21, 3:24, 4:7, 4:8, 4:23, 5:23, 6:5, 7:22, 9:4, 9:10, 9:16, 9:23, 12:11, 14:11, 16:5, 18:7, 18:11, 18:16, 18:20, 19:3, 19:7, 19:10, 19:14, 20:7, 21:18, 22:11, 23:8, 23:11, 25:6, 25:12, 25:18
**themselves** [2] -
10:15, 21:23
**thereafter** [1] - 13:6
**therefore** [1] - 24:3
**thinking** [3] - 8:7,

11:14, 11:18, 11:21, 12:7, 13:8, 19:2, 20:2, 21:13, 21:17, 22:7
**reopen** [1] - 22:7
**report** [1] - 9:19
**REPORTER** [1] - 2:22
**Reporter** [6] - 26:3, 26:4, 26:5, 26:15
**REPORTER'S** [1] -
26:1
**REPRESENTING** [3] -
2:5, 2:9, 2:17
**requests** [1] - 13:12
**required** [2] - 13:12, 14:2
**requires** [1] - 13:22
**reset** [1] - 19:13
**resolution** [1] - 17:25
**resolve** [3] - 11:7, 16:21, 21:3
**resolved** [1] - 10:19
**resources** [1] - 15:6
**respond** [1] - 6:24
**response** [3] - 5:12, 8:23, 9:8
**rest** [1] - 5:3
**rise** [1] - 4:7
**RIVERPLACE** [1] -
2:11
**RMR** [1] - 26:14
**rolling** [1] - 17:10
**room** [2] - 7:12, 14:20
**ROOM** [1] - 2:23
**RPR** [1] - 2:22
**rub** [2] - 11:14, 18:5
**rules** [3] - 5:8, 22:2, 23:25
**ruling** [1] - 21:24
**RUSS** [1] - 1:15
**Russ** [2] - 9:18, 18:21

## S

**s/Cathy** [1] - 26:13
**Saints** [1] - 18:10
**SALT** [1] - 2:19
**satisfy** [1] - 7:3
**schedule** [17] - 5:24, 6:2, 6:21, 7:10, 7:20, 11:14, 11:18, 11:21, 12:7, 12:20, 12:25, 13:3, 13:5, 13:25, 17:15, 21:10, 21:11
**scheduled** [1] - 7:14
**schedules** [1] - 15:13
**scheduling** [2] - 9:20, 19:1
**Schultz** [2] - 15:11,

10:2, 10:16
**third** [1] - 12:4
**third-party** [1] - 12:4
**THIS** [1] - 1:7
**thoughts** [1] - 21:11
**throw** [1] - 17:14
**timelines** [1] - 16:3
**timetable** [1] - 17:19
**timing** [2] - 6:13, 13:4
**TO** [1] - 1:7
**today** [4] - 9:22, 14:25, 15:24, 18:19
**together** [5] - 8:1, 8:17, 9:6, 16:15, 20:16
**tomorrow** [3] - 9:9, 18:25, 19:4
**total** [1] - 14:21
**touch** [2] - 9:10, 9:20
**town** [1] - 19:4
**Trade** [1] - 24:11
**TRANSCRIPT** [2] - 1:10, 2:24
**transcript** [2] - 19:21, 26:8
**transfer** [1] - 20:2
**transferor** [1] - 20:2
**Travis** [1] - 6:8
**tremendous** [1] - 24:13
**tremendously** [1] - 24:1
**Trial** [1] - 20:23
**trial** [22] - 4:10, 6:7, 6:12, 6:15, 8:8, 8:16, 9:12, 10:7, 11:22, 12:6, 12:19, 12:20, 12:24, 13:7, 13:25, 15:3, 15:4, 15:13, 17:6, 18:3, 23:20
**trials** [4] - 10:7, 11:17, 13:3, 20:24
**true** [1] - 26:7
**try** [8] - 4:14, 11:16, 12:3, 14:9, 16:20, 17:18, 19:15, 22:23
**trying** [9] - 8:23, 8:24, 11:23, 11:24, 11:25, 18:12, 20:15, 23:17, 24:7
**Tuesday** [2] - 8:3, 9:13
**two** [6] - 6:10, 7:7, 9:24, 11:16, 16:22, 23:1
**types** [2] - 22:3, 23:1

## U

**ultimate** [1] - 13:21

**under** [5] - 5:8, 13:12, 23:22, 24:4, 24:11
**Unfair** [1] - 24:11
**unfortunately** [1] - 8:15
**uniform** [1] - 22:2
**UNITED** [2] - 1:1, 1:11
**United** [2] - 26:6, 26:16
**up** [16] - 5:20, 8:4, 8:15, 9:7, 11:19, 12:21, 12:25, 14:10, 15:10, 18:3, 18:16, 18:17, 20:18, 22:19, 22:23, 23:22
**usable** [1] - 24:16
**UT** [1] - 2:19
**UTAH** [1] - 2:17
**Utah** [3] - 23:10, 23:14, 24:25

## V

**varies** [1] - 24:5
**various** [2] - 10:8, 22:17
**vary** [3] - 22:4, 23:25, 24:3
**vast** [1] - 22:6
**view** [1] - 21:18
**viewed** [1] - 15:23
**VIOXX** [1] - 1:4
**Vioxx** [2] - 9:21, 24:24

## W

**wait** [5] - 8:25, 9:2, 9:4, 16:9, 16:16
**WALTHER** [1] - 1:18
**wants** [3] - 7:9, 16:9
**WASHINGTON** [1] - 2:3
**watching** [1] - 20:24
**wayside** [2] - 21:5, 21:7
**web** [1] - 5:8
**WEDNESDAY** [2] - 1:6, 4:2
**week** [3] - 8:25, 9:2, 9:3
**weeks** [1] - 7:7
**weigh** [1] - 4:15
**WHEREUPON** [1] - 25:21
**whole** [1] - 9:2
**widely** [2] - 24:3, 24:5
**WIMBERLY** [1] - 1:19
**wishes** [1] - 12:12

**WITTMANN** [1] - 1:18
**worry** [1] - 15:3
**worthwhile** [1] - 18:14
**wrapped** [2] - 14:9, 17:19

## Y

**yesterday** [3] - 5:22, 6:1, 6:4
**York** [2] - 17:4, 17:9
**YOUNG** [1] - 2:10

## Z

**Zales** [1] - 6:8