UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX Products Liability Litigation | MDL No. 1657 |
| This Document Relates to: | SECTION L |
| STATE OF LOUISIANA, ex rel. JAMES D. CALDWELL, ATTORNEY GENERAL | JUDGE ELDON E. FALLON |
| | MAGISTRATE JUDGE KNOWLES |
| Case No. 05-3700 | |

**PLAINTIFFS' OPPOSITION TO MOTION TO QUASH SUBPOENA *DUCES TECUM* SERVED ON DRUG RESEARCH SERVICES, INC.**

**INTRODUCTION**

On January 20, 2010, it was revealed for the first time during the deposition of Merck's expert witness, Dr. David Silvers, that documents pertaining to clinical trials his company Drug Research Services, Inc. ("DRS") conducted for Merck in Louisiana still existed post-Katrina. Specifically, three out of approximately 190 trials conducted by DRS were for pain drugs sponsored by Merck.  On February 1, 2010 Plaintiffs successfully served a subpoena *duces tecum* directed towards DRS upon Dr. Silvers for documents pertaining to these three studies.[1] The purpose of the subpoena was to obtain information about the Merck trials that Dr. Silvers' company performed.  Plaintiffs' subpoena *duces tecum* for these relevant materials was timely, and Movants have failed to show any particular burden associated with producing responsive materials.

**A.      The Requested Materials Are Relevant, Responsive To Prior Discovery Requests, And Have Never Been Produced**

Dr. Silvers incorporated and became President Drug Research Services, Inc. in 1994. (See Deposition of David R. Silvers ("Silvers Dep.") Exhibit 22 (attached hereto as Exhibit A)). DRS conducted clinical trials primarily for pharmaceutical companies (See Silvers Dep. (Excerpts attached hereto as Exhibit B) 127:17-128:3).  During his deposition, Dr. Silvers could not testify how much money DRS was paid to conduct any clinical trial, including those sponsored by Merck, or precisely how much money DRS earned, but that it varied from $150,000 to $400,000 per year from 1995 through 2005. (Silvers Dep. 137:17-138:14, 142:3-23). In addition to payments from sponsors, including Merck, DRS also received clinical trial study

---

[1] Plaintiffs first issued and served the subpoena *duces tecum* on January 27, 2010 upon the address listed with the Louisiana Secretary of State for the Registered Agent for Service of Process for DRS, Michael Silvers, Esq., brother of Dr. David Silvers, but the listed address was either not correct, or Mr. Silvers refused to accept service.

information, Internal Review Board materials, and supplemental information as each study progressed (Silvers Dep. 130:18-132:7).

Contrary to Merck's assertion of irrelevance, these materials from DRS are relevant for numerous purposes, including financial gain to Dr. Silvers from Merck, as well as information about the patient population, the degree of severity of their arthritis conditions, their pre-study levels of NSAID therapy, whether they were exposed to unnecessarily high levels of NSAIDs in the trials which exposed them to unnecessary risks of toxicity, the informed consent forms and whether such risks were disclosed, and the IRB review forms and whether such risks were discussed therein.

Merck's argument that the time period is somehow inappropriate in the Plaintiffs' subpoena *duces tecum* is meritless.  Merck has consistently defined the "The Relevant Time" for its discovery requests in this case from January 1, 1998 to December 31, 2006.  (See *e.g.* Defendants First Set of Interrogatories to Plaintiffs at Instruction 8 (attached hereto as Exhibit C). The three trials all commenced in the year 2000, and DRS stopped conducting clinical trials in 2005 after hurricane Katrina.  Therefore, the time period requested for these materials is entirely appropriate.

Merck also falsely asserts that Plaintiffs have not complied with proper discovery procedures.  The materials responsive to the subpoena *duces tecum* would have been responsive to numerous discovery requests including Government Action Plaintiffs' First Set of Master Document Requests at Nos. 15, 16, 18, 20, 22, 24, 27, 28, 29, 30, 33, 35, 37, 40, 41, 42, and 44 (Attached hereto as Exhibit D) and Interrogatories at Nos. 30-37 and 43 (Attached hereto as Exhibit E).   Another request for materials responsive to these discovery requests (Request No. 34) was included in the Government Action Plaintiffs' Second Set Of Master Requests For

2

Production To Defendant Merck Sharp & Dohme Corp. served on January 29, 2010.  (Attached hereto as Exhibit F) and duplicated in the Plaintiff Attorney General James D. Caldwell's Third Set of Master Requests For Production to Defendant Merck Sharp & Dohme Corp. served on January 29, 2010 (Request No. 34) (Attached hereto as Exhibit G).  The materials sought by the subpoena *duces tecum* have never been produced.

> **B.**     **Movants Do Not Show Any Burden On DRS In Producing The Responsive Materials**

Dr. Silvers has kept all materials for every clinical study he or DRS has ever performed since 1985 (Silvers Dep. 125:1-21, 133:4-11).   Although not conducting clinical trials post-Katrina, DRS cannot completely shut down because it is obligated to maintain the records of the clinical trials for the drug companies for "a long, long period of time. . ." because Dr. Silvers "still had to do searches through the files, to give the drug companies the data that they needed to finalize these trials." (Silvers Dep. 256:1-257:20).  Dr. Silvers testified he had "to keep [DRS] open to keep those files alive, and once I've gotten permission from the drug companies, I will shut it down.  It will probably be another ten years before it's completely no longer anything, …" (Silvers Dep. 256:1-257:20).  Thus, Dr. Silvers himself has already testified that he routinely goes to this stored material and retrieves information for the pharmaceutical company sponsors of the clinical trials.  *That is currently the sole reason DRS exists and the reason he retains clinical study materials going back to 1985.* Movants have made no showing of burden whatsoever that retrieving relevant materials from three out of the approximately 190 studies in storage.

## II.     CONCLUSION

For the reasons set forth above, the subpoena duces tecum served on Drug Research Services, Inc. should not be quashed.

Dated:  February 24, 2010

Respectfully submitted,

By:  /s/   Douglas R. Plymale
James R. Dugan, II,
Douglas R. Plymale
Justin Bloom
Stephen B. Murray, Jr.
Stephen B. Murray, Sr.
*Murray Law Firm*
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone:  (504) 648-0180
Facsimile:  (504) 648-0181

**CO-CHAIR OF GOVERNMENT
ACTIONS PLAINTIFFS' CASE
MANAGEMENT COMMITTEE AND
COUNSEL FOR PLAINTIFFS**

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
*Louisiana Department of Justice*
1885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
General Counsel
Kim Sullivan
*Louisiana Department of Health and
Hospitals*
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

**COUNSEL FOR PLAINTIFFS**

4

5

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiffs' Opposition to Motion to Quash Subpoena *Duces Tecum* Served On Drug Research Services, Inc., and Declaration of Douglas R. Plymale in Support of Opposition to Motion to Quash Subpoena *Duces Tecum* Served On Drug Research Services, Inc., has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U. S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance Pretrial Order No. 8B, on this the 24th day of February, 2010.

/s/   Douglas R. Plymale
Douglas R. Plymale
Murray Law Firm
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone:  (504) 648-0180
Facsimile:  (504) 648-0181