# EXHIBIT E



25516606

Jun  5 2009
11:49AM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | * | |
| In re: VIOXX Products Liability Litigation | * | MDL No. 1657 |
| | * | |
| This Document Relates to: | * | SECTION L |
| | * | |
| All Government Actions | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## GOVERNMENT ACTION PLAINTIFFS' FIRST SET OF MASTER INTERROGATORIES TO DEFENDANT MERCK & CO, INC.

TO:   Merck and Company, and its attorneys:
       Phillip A. Wittmann, Esq.
       Stone, Pigman, Walther, Wittmann, L.L.C.
       546 Carondelet Street
       New Orleans, Louisiana 70130-3588
       Merck & Co, Liaison Counsel

PLEASE TAKE NOTICE THAT, pursuant to Federal Rules of Civil Procedure 33(a) and PTO 39, the Government Action Plaintiffs, through Plaintiffs' Liaison Counsel, propound the following Master Interrogatories to Defendant Merck & Co, Inc.

Each interrogatory, as provided by law, shall be answered fully and separately in writing under oath, unless it is objected to, in which event the reasons for the objection shall be stated.   The answers are to be signed by the person making them, and the objections signed by the attorney making them.   Answers to these interrogatories, or objections in lieu thereof, shall be served within 30 days from the service of this document, as provided by PTO 39.

1

Under the Federal Rules of Civil Procedure 26(e), these interrogatories are continuing in nature. Defendant, therefore, is required to supplement its responses as new or different information becomes known.

<u>DEFINITIONS</u>

1. "Address" means the telephone number, street number, street name, city, state, and zip code of the subject person or entity. For a natural person, please provide both the home and business address.

2. "Beneficiary" means any person who is entitled to or has received coverage under a Government Health Program.

3. "Communication" means, without limitation, any act, action, oral speech, written correspondence, contact, expression of words, thoughts, and/or ideas, or transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, telex, facsimile, and/or any other process, electronic or otherwise. Communications in writing shall include printed, typed, handwritten, electronic and other readable documents.

4. "Coverage" means any payment to or reimbursement of, or agreement or obligation to pay or reimburse, in whole or in part, the costs of medical treatment, including prescription drugs.

5. "Defendant" is used to refer to defendant Merck & Co., Inc. and/or its predecessor(s).

6. "Document" is used in its broadest sense, and means the original and any non-

identical copy, regardless of origin or location. Typical categories of material included within the term document are: books, pamphlets, periodicals, memoranda (including those of telephone and in-person conversations), letters, reports, notes, telegraphs, statements, records, diaries, minutes, bulletins, circulars, brochures, studies, instructions, working papers, charts, work assignments, drawings, prints, flow sheets, graphs, invention disclosures, photographs, photomicrographs, microfilm, medical and hospital records and reports, x-ray photographs, drafts, advertisements, catalogs, paper, indices, tapes, disc, data sheet or data processing material, or any handwritten, recorded, transcribed, punched, taped, filmed or graphic matter, however, produced or reproduced in Defendant's possession, custody or control or to which Defendant has had access. "Document" includes all electronic or optical media or other information storage means, including film, tapes, computer disks or cares, databases, or personal data assistant memory. When any document contains any marking not appearing on the original or altered from the original, such item shall be considered to be separate original documents.

7. "Drug Utilization Review Board" means the advisory board to the Government Health Program consisting of physicians and pharmacists, and any agent, representative, or present or former employee thereof.

8. "Eligible Recipient" is any individual who is entitled to or has received coverage under or whose prescriptions were paid for by, in whole or in part, public funding through a Government Health Program.

3

9. "Government Entities" or "Government Entity" means, separately, those states, counties, cities, and political subdivisions that are Plaintiffs in the MDL No. 1657 collectively referred to as the "Government Action" subgroup, which currently consists of the following: Alaska ; Chautauqua County, NY; Colorado; County of Santa Clara;  the District of Columbia; Erie County, NY; Florida; Louisiana; Mississippi; Montana; New York State; New York City, Orange County, NY; Commonwealth of Pennsylvania; and Utah; and as described in PTO 38.

10. "Government Program" or "Government Health Program" means any of the government-sponsored or administered programs for which the Government Entities seek herein to recover damages of any kind, and includes, but is not limited to, the programs themselves (such as a State Medicaid program), and all persons employed by the Government Entities sponsoring or administering such programs and all persons contracted to or otherwise acting to effectuate the goals of such programs, including, but not limited to, any third party administrator, managed care organization, pharmacy benefit manager, wholesaler or administrator acting on behalf of such Government Entity with respect to the reimbursement for, or purchase of, pharmaceuticals, as well as any government sponsored employee health benefit plan.

11. "Health Care Provider" means any physician (including interns and residents), nurse, psychologist, psychiatrist, counselor, pharmacist, pharmacy, dispensary, hospital, clinic, or nursing home, or any other individual or entity who or which provides or assists in the provision of any medical, pharmaceutical or mental health treatment.

4

12. "Identify" means the following:

    (a)    When used in reference to a natural person, it means to state the person's full name, title, present (or last known) address, telephone number, occupation, present business affiliation or employer, business address, and exact duties and responsibilities of that individual; in addition, when used in reference to a Health Care Professional, it means to additionally state that person's medical specialty, if any, and to state whether that person has ever prescribed VIOXX to persons in your jurisdiction.

    (b)    When used in reference to an injury, it means to state formally the diagnosis, the features of the injury upon which the diagnosis is based, the treatment of the injury, and all known information concerning the cause of the injury.

    (c)    When used in reference to a drug, it means to state the registered or trademark name of the drug, the generic name or active ingredient for the drug, and if applicable, the relevant dosage.

    (d)    When used in reference to an entity, it means to state the full name of the company, organization, association, partnership, committee, board, or other business or government enterprise, its present address or, if no longer existing, its last-known address, and the name of the person(s) who controls the operations of or otherwise heads that entity.

13. "Including" means "including but not limited to" and "including without limitation."

14. "Indirect Funding" means the funding of an activity or event useful to Defendant's pharmaceutical business, when such activity or event was not directly paid for by the Defendant, but was paid for by a person or vendor with whom the Defendant had contracted, and one of the expected services with the contracting party was the funding of such activities and events.

15. "Indirect Payments" means payments made to a third party by or through a person or vendor that has directly contracted with the Defendant where one of the expected services provided by the contracting party is the payment of third parties who are providing services useful to Defendant's pharmaceutical business.

16. "Merck Contract File" is defined as how Merck uses this term in its ordinary course of business, and shall include all Documents or other materials that Merck has in its possession that relate to any Government Entity.

17. "NSAIDs" means non-steroidal anti-inflammatory drugs.

18. "Payment" is a tender or payment of money or money's worth in goods or services, including but not limited to any form of remuneration, grant, honorarium, speaker fee, gift, grant, free travel or accommodation, compensation or other benefit, and includes Indirect Payments and Indirect Funding.

19. "PDR" is the Physicians' Desk Reference.

20. "Person" means any natural person and any entity, including any corporation, association, partnership, or other business or government enterprise.

21. "Relate to" or "Relating to" means referring to, mentioning, reflecting, containing, pertaining to, evidencing, involving, describing, discussing, responding to, supporting, opposing, constituting or being a draft, copy or summary of, in whole or in part.

22. "Vendor" is a person or entity which, in the ordinary course of its business, provides one or more of the following services to healthcare or pharmaceutical entities: (a) assistance in organizing, coordinating, planning or managing meetings or events; (b) assistance in writing, editing, placing, publishing or distributing medical articles or medical publications; or (c) assistance or consultation with marketing.

23. "VIOXX" is the drug Rofecoxib, also known by the brand name VIOXX, and any predecessor or non-final derivation of the drug that later became VIOXX. Rofecoxib is used interchangeably with VIOXX or MK-0966 and includes Rofecoxib, VIOXX, MK-0966 or any other method of identifying the composition (or any portion thereof) of the drug that is now known as VIOXX.

24. "VIOXX Representatives" or "Professional Representatives" means persons employed or contracted, directly or indirectly, by Merck to promote VIOXX to Health Care Providers, including but not limited to professional representatives, field personnel, office based representatives, hospital representatives, A&A specialty representatives, A&A HSAs, CV specialty representatives, CV specialty HSAs, national account executives, customer services managers and customer managers.

25.  "You," "Your," "Yours," or "MERCK" refers to Defendant MERCK & CO., Inc. as well as all its partners, directors, officers, employees, servants, agents, attorneys, joint ventures, or other representatives, including all corporations and entities affiliated with MERCK & CO., Inc. The terms "You" or "Your" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or other representatives. The terms "You" or "Your" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or other representatives.

<u>INSTRUCTIONS</u>

A.  Each demand hereinafter set forth not only calls for Your knowledge, but also for all knowledge that is available to You by reasonable inquiry, including inquiry of Your employees, representatives, agents, and attorneys.

B.  If You cannot answer the following demands in full and complete detail after exercising due diligence to secure the information to do so, please so state and answer to the extent possible, specifying in each instance your inability to answer the remainder and stating whatever information or knowledge You have concerning the unanswered portions, and to the best of Your knowledge the names, addresses and telephone numbers of all persons and organizations where such information is, will be or is believed to be.

C.  In answering these Interrogatories, You are requested to answer each Interrogatory and subdivision thereof fully, completely and separately. You are

8

hereby notified that at least as to those Interrogatories that are unanswered or as to which You claim an inability to answer fully and completely for the reason that discovery is continuing, these Interrogatories are continuing; upon acquiring any information response thereto after the service of answers hereto, You will be required to serve supplemental answers containing such later acquired information; and You will be precluded at the trial of this action from introducing evidence relating to the subject matter of these Interrogatories which You have not disclosed by these answers or by supplemental answers thereto.

D.   If You assert that burden or expense of responding to any Interrogatory or part thereof would outweigh its likely benefit, describe in detail the steps that would have to be taken to respond fully to the interrogatory and the costs associated with taking such steps.

E.   If any Interrogatory is deemed to call for the production of privileged or otherwise protected information or materials, You must provide the following information in a written response, designating and identifying such information withheld from production on grounds of privilege:

(a)   The reason for withholding the information

(b)   A statement of the legal basis for the claim of privilege, work product or other ground for non-disclosure

(c)   A brief description of the information, including:

(i)   The date;

(ii)   The number of pages, attachments, and appendices if a document;

9

(iii)    The name(s) of the source(s) or preparer(s) of the information and identification by employment and title of each such person;

(iv)    The name of each person who was involved with or has had access to or custody of the information, together with an identification of each such person;

(v)    The present custodian(s); and

(vi)    The subject matter of the information, and in the case of any information relating or referring to a meeting or conversation, identification of such meeting or conversation, in sufficient detail to enable the Court to determine the propriety of any claim of privilege.

F.   Where the name or identity of a person is requested, please state the full name, last known home address, telephone number, and, if known, business address, job position, date of hire, date of termination or separation, and name of supervisor.

G.   Unless otherwise indicated, these Interrogatories refer to the time, place and circumstances of the occurrence mentioned or complained of in the pleadings.

H.   Where knowledge or information in the possession of a party is requested, such request includes knowledge of the party's agents, representatives, and, unless privileged, state the name, address, and title of the person supplying the information for this Interrogatory and the source of his/her information.

I.   Where the identity of Documents, records, and/or reports is requested in the Interrogatories, state the name of the person who created the document, record, and or/or report, the date it was created, and specify where it is currently located.

J.   Where the description of real evidence is requested, name the present custodian and the date such object was produced or obtained.

K.   Where the identity of expert witnesses is requested, state the area of expertise, education, qualifications, experience and field of practice of each.

L.   Where the identity of experts' memoranda, reports, and records, etc., is requested, state the name of the person who prepared such report, and its present custodian.

M.   "Document" and "Record" refer to both paper documents and electronically and/or digitally stored bits of information kept on computer disks, servers, hard drives and/or other devices.

N.   Each Interrogatory herein extends to any information in the possession, custody or control of any of Your present or former employees, agents, representatives, or attorneys, including any of the attorneys or law firms representing You in this litigation.

O.   Each Interrogatory herein shall be construed independently, and no Interrogatory shall be viewed as limiting the scope of any other Interrogatory.  Please indicate where any portion of Your response to an Interrogatory has been covered in Your response to another Interrogatory, and please specify the Interrogatory numbers at issue.

P.   If You claim that any information responsive to any Interrogatory is lost, destroyed, erased or otherwise is no longer in Your possession, (a) identify and

11

describe such information, (b) describe how the information was lost or destroyed, and (c) state when the information was lost or destroyed.

Q. If You claim that any information responsive to any Interrogatory is already in the possession of Plaintiffs, please Identify the information with Bates ranges or other sufficient specificity to allow Plaintiffs to locate it.

R. The singular herein includes the plural and vice versa; the words "and" and "or" shall be construed as "and/or" in order to bring all information within the scope of the Interrogatory.  The words, "each," "all," and "any," mean "any and all" or "each and every."

S. Please provide a separate response, as much as practicable, for each Government Entity for each Interrogatory.


<u>MASTER INTERROGATORIES</u>

1. Please state whether You maintain any records and/or documents about the total sales and utilization of VIOXX by any Eligible Recipient  who resided within the jurisdiction of the Government Entities from 1999 through 2004, and, if so, describe separately for each Government Entity those records and/or documents.

2. Please state whether You received payment directly from any Government Program for any of the VIOXX prescribed for Eligible Recipients residing within the jurisdiction of  the Government Entities from 1999 through 2004, and if so, please set forth separately for each Government Entity (a) all such payments and the dates thereof, (b) specify the number of units (by NDC) purchased under this arrangement by these payments, (c) state the total revenue from such sales each

12

year, and (d) identify all documents, records or policies that describe the annual dollar sales from 1999 through 2004.

3. Please state whether You received payment from a Prescription Benefit Plan, Pharmacy Benefit Manager, Third Party Administrator, Pharmacy or wholesaler, acting as a subcontractor or agent for any Government Program, for any of the VIOXX prescribed for Eligible Recipients residing within the jurisdiction of the Government Entities, and if so, please set forth with detail, separately for each Government Entity, (a) all such payments, (b) the date on which they were received, (c) specify the number of units (by NDC) purchased by these payments, and (d) identify documents, records, or policies that describe these payments.

4. Please state whether any Eligible Recipient obtained VIOXX through any pharmacy, wholesaler or Prescription Benefit Plan, not previously identified in Interrogatories Nos. 1 through 3, from 1999 through 2004, and, if so, please state, separately for each Government Entity, (a) the number of units (by NDC) dispensed by such entities, (b) the payment received by You for these units, (c) the date on which payment was received, and (d) identify documents, records, or policies that describe the total utilization, sale, and payments.

5. Please identify with particularity and separately for each Government Entity, (a) each agent and/or employee of the Government Programs, if any, to whom You or Your agents presented any invoices, claims or request for payment respecting the VIOXX purchased for use by Eligible Recipients who reside within the jurisdiction of the Government Entities, and (b) all records and documents that reflect these invoices, claims, and requests for payment.

6.  Please identify all Merck personnel (including, but not limited to National Account Executives, Customer Contract Managers, medical Directors and Directors) whose job responsibilities included (i)  sale of VIOXX to Government Programs, (ii) negotiating or paying, directly or indirectly rebates or discounts associated with the payment for VIOXX by Government Programs, (iii) promotion or marketing of VIOXX to Government Programs; (iv) promotion or marketing of VIOXX to Health Care Providers who treat Eligible Recipients, (v) sales of VIOXX for use by Eligible Recipients, (vi) providing information regarding the risks and efficacy of VIOXX to Government Programs, (vii) promoting or marketing of VIOXX to Eligible Recipients, (viii) overseeing the VIOXX sales program for the Government Entities.

7.  Please Identify all of Your present and/or former employees, representatives, and/or other Persons acting on Your behalf whose job duties related to any program by which You offered to refund, or refunded, the purchase price of VIOXX, including but not limited to the VIOXX Consumer Refund Program implemented by You after VIOXX was recalled.

8.  Please describe by volume per Government Program the number of refunds You provided under the VIOXX Consumer Refund Program implemented by Merck after the recall.  Identify all documents regarding the offer of the refunds, the refunds sought, and the refunds given, and separately for each Government Entity identify each payee and the date and amount of each Payment for any Eligible Recipient or Government Program.

9.  Please describe each agreement concerning VIOXX You and any Government Program entered into.

10. Separately for each Government Entity, describe in detail and by calendar quarter, all rebates paid for VIOXX and the sales of VIOXX to which those rebates relate by dollar volume, units and National Drug Code (NDC) from 1999 through 2004.

11. Please describe separately for each Government Entity, Merck's cost of selling VIOXX to Eligible Recipients and the net amount earned by Merck in revenue from those sales.

12. Identify each agreement and/or contract with Minnesota Multistate Contracting Alliance for Pharmacy (MMCAP) for VIOXX.

13. What was Merck's gross income earned from the sale of VIOXX, by calendar quarter and by Government Entity?

14.  For each calendar quarter and National Drug Code for VIOXX, please state the WAC, AWP, AMP, and Best Price.

15. Please state whether agents and representatives of Merck presented any written materials or other communications that mentioned VIOXX to Government Programs, including but not limited to Drug Utilization Review Board members and pharmacy staff, between 1999 and 2004 and, if so, identify all of the documents, records, and other materials given to them.

16. Please state whether agents and employees of Merck communicated with the agents and representatives of the Government Entities between 1999 and 2004 and, if so, please provide, separately for each Government Entity, the following:

a) the date of each such communication;

15

b) the substance, in details, of each communication including the identity of the representative of Merck and the representative of Government Entity who were parties to the communication; and

c) identify each document or record that memorializes and/or refers to the communication.

17. Please state whether agents and/or employees of Merck met with any person with responsibility for administering the prescription benefits of each Government Entity's Medicaid program, including where relevant, but not limited to, Drug Utilization Review Board members and pharmacy staff, between 1999 and 2004, and in the course of such visit mentioned or discussed VIOXX. If so, please state separately for each Government Entity:

a) the name and address of each agent or representative of Merck who did so;

b) identify the location of the meeting and the persons attending:

c) the date and time that each such visit occurred; and

d) describe and identify all documents and records that reference or discuss each such face-to-face visit.

18. Respecting each Government Entity, please identify all VIOXX Representatives with any authority to present information to, meet or visit with, negotiate with, sell to, communicate with or contract with a Government Entity from1999 through 2004.

19. For each person listed in answer to Interrogatory No. 18, please identify, by Government Entity, the Health Care Providers the VIOXX Representatives were

16

assigned to visit, including their contact information, and for each such Health Care Provider, state whether Merck knew or believed the Health Care Provider treated Eligible Recipients.

20. For each of the VIOXX Representatives listed in your response to Interrogatory No. 18, and the Health Care Providers listed in your response to Interrogatory No. 19, please identify, separately for each Government Entity, all notes, records, and documents that discuss or describe the contact, sales, and communication between Merck and the Health Care Provider.

21. Please state whether you were aware of the clinical trial known as "VIOXX Gastrointestinal Outcomes Research" ("VIGOR Study") published in the New England Journal of Medicine on November 23, 2000, and, if so, please state when You or any of Your agents or representatives first became aware of this study, and how You or Your agents and representatives became aware of this study.

22. Please state whether You and/or Your representatives ever discussed the VIGOR Study with any of the Health Care Providers listed in your response to Interrogatory No. 19. If so, please state separately for each such Health Care Providers, by Government Entity:

   a) the date of each such communication;

   b) the identity of the parties to the communication;

   c) the substance of each such communication; and

   d) the identity of each and every document or record that discusses, records, and/or makes reference to these communications.

17

23. Please state whether VIOXX Representatives of Merck ever used "The Cardiovascular Card" or quoted, and/or summarized the information on "The Cardiovascular Card" in the course of communicating with any of the persons listed in your Response to Interrogatory No. 18 or other Health Care Providers.  If so, please state separately for each such person, by Government Entity:

    a)  the date of each such communication;

    b)  the identity of the parties to the communication;

    c)  the substance of each such communication, and,

    d)  the identity of each and every document or record that discusses, records, and/or makes reference to these communications.

24. Please state whether, with respect to each Government Entity, agents and employees of Merck developed a sales and marketing plan for the Government Entity and the Government Programs; and whether a marketing plan was specifically devised for any Government Entity or Government Program, or not, please describe Your efforts to promote, distribute and sell VIOXX to the Government Programs between 1999 and 2004.

25. Please identify per Government Program and describe per Government Program all records, documents, and/or materials that describe or discuss this plan and Your efforts to implement the plan.

26. For the period of 1999 through 2004, identify all medications (by NDC code, brand name and/or generic name) other than VIOXX, available either over the counter or by prescription, that were available in the arthritis or analgesic market

during the time VIOXX was on the market, which were indicated for the same conditions for which VIOXX was prescribed.

27. With respect to any of the sales data requested in any interrogatory above, please state whether this information is maintained in electronic format. If so, describe the format and state whether your software can produce reports containing the requested sales data in Excel or Access format, and whether these reports can be subdivided or otherwise searched by Government Entity.

28. Please state whether agents or representatives from any of the Government Programs herein ever communicated with You about the safety or efficacy of VIOXX, and if so, please state separately for each Government Program, (a) the identity of the agents or representatives of the Government Program and Merck, (b) the substance of each such communication and Your response thereto, and (c) identify any records or documents that memorialize and/or make reference to these communications.

29. Please state whether agents or representatives of any Government Program ever reported any adverse health incident involving any Eligible Recipients. If so, please state separately for each Government Program:

   a) the substance of each such report;

   b) the date of each such report;

   c) the identity of the person who made the report on behalf of the Government Program;

   d) the identity of the person who received the information for Merck;

   e) the description of the adverse event and injury reported;

19

f)   each and every action You took in response to the report; and,

g)   whether You recorded any of the information responsive to subsections (a) through (f), and if so, please identify each such record.

30. Please identify all training and educational programs that discussed VIOXX sponsored in whole or in part by You or Your agents, and attended by any Health Care Provider who worked in the state, county, city or political subdivisions represented by the Government Entities.

31. Please state whether You or Your agents presented payments, honoraria, and/or gifts out of funds budgeted for VIOXX promotion, to any Health Care Provider who worked in one of the political subdivisions represented by the Government Entities.

32. Please Identify all Payments by You or on Your behalf to physicians, physician's offices, hospitals, practice groups, or other Health Care Providers concerning VIOXX, within a political subdivision represented by the Government Entities, setting forth for each Payment 1)  the name and business address of the physician, physician's office, hospital, practice group, or other Health Care Provider , 2)  the date and amount of each Payment, 3) a description of the reason each Payment was made, and 4) the names of Your agents or employees who authorized and processed the Payment. In addition, please identify each and every document or record by specific Government Entity that memorializes and/or makes reference to the Payment, gift, or honoraria and/or the reasons for such Payment, gift, or honoraria.

20

33. Please identify each Health Care Provider who worked in a political subdivision represented by the Government Entities and who was identified by Merck as a "Medicaid Influencer."

34. Please identify each Health Care Provider who worked in a political subdivision represented by the Government Entities to whom Merck assigned a "Medicaid Flag" in the Insight system.

35. Please identify each Health Care Provider who worked in a political subdivision represented by the Government Entities whom Merck identified as a "target" or "hypertarget" for VIOXX.

36. Please identify each Health Care Provider who worked in a political subdivision represented by the Government Entities who received a PIR letter from You or Your agents, and identify each and every document concerning the provisions of the PIR letter to each such provider.

37. Please identify each "Thought Leader" or consultant for VIOXX designated by You to communicate with Health Care Providers in the political subdivisions represented by the Government Entities.

38. Please state, separately and for each Government Entity, the amount budgeted by Merck for promotion of VIOXX in the political subdivisions represented by the Government Entity for each quarter, and please state, separately and for each Government Entity, the amounts spent each quarter.

39. Please identify all communications between Merck and the Center for Medicare and Medicaid Services ("CMS," formerly known as the Health Care Finance Administration or "HCFA") concerning VIOXX.

21

40. Please identify all outside Vendors or third parties retained by Merck to (i) communicate directly with Health Care Providers concerning VIOXX, (ii) arrange for or promote physician advocates for VIOXX, (iii) arrange for or promote educational sessions and other programs concerning VIOXX that were attended by Health Care Providers, (iv) arrange for, organize, or promote clinical studies of VIOXX; and for each such vendor and/or third party describe and identify all documents setting forth the full scope of the duties and obligations under its agreement with Merck to provide these services.

41. Please identify all taskforces, units, and other groups within Merck that had as one of their purposes to promote or assist in the promotion of VIOXX in the Medicaid segment or otherwise for use by Eligible Recipients, and for each such taskforce, unit or group, describe fully its mission and goals, and state when it was formed and identify the persons who were the leaders and members.

42. Identify all NDC codes for VIOXX.

43. Identify each database or electronic system Merck used concerning the promotion of VIOXX and communications with Health Care Providers concerning VIOXX, and for each such database or electronic system, (a) describe the business purpose for which Merck used the database or system; (b) identify the type of database or system (*e.g.*, Access, DB2, *etc.*); (c) identify the tables contained in such database or system, and for each table, list the fields and their data definition; (d) state the size of the database or system (*e.g.*, in megabytes, gigabytes, terabytes, *etc.*); and (e) state the volume of data (*e.g.*, in megabytes, gigabytes, terabytes, *etc.*) in such database or system relating to promotions and/or communications concerning

22

VIOXX with respect to each Government Entity and Health Care Providers within the jurisdiction of each Government Entity.

44. Please Identify all databases within Merck's control containing any information relating to VIOXX.

45. Did Merck employ or use the same promotional efforts for VIOXX with all Health Care Providers, regardless of whether the Health Care Providers treated patients who were Medicaid Eligible Recipients?  If Your response is anything other than an unequivocal "Yes", describe each way Merck's promotional efforts concerning Health Care Providers who treated or who were believed to have treated Medicaid Eligible Recipients differed from the promotional efforts concerning Health Care Providers who did not treat Medicaid Eligible Recipients, and identify all documents which indicate the differing promotional efforts.

46. Did Merck employ or use the same promotional efforts for VIOXX in every jurisdiction of every Government Entity?  If Your response is anything other than an unequivocal "Yes", describe each way Merck's promotional efforts differed depending on the jurisdiction, and identify all documents which indicate the differing promotional efforts.

47. Identify any and all communications and contacts with and between Merck and Cardinal Health and all of Cardinal Health's affiliates and subsidiaries.

48.  Please Identify all governmental investigations initiated by any governmental entity, including, the United States Senate, the United States House of Representatives, the United States Senate, the United States Food and Drug Administration ("FDA"), the United States Department of Justice and any state

23

Attorney General, that relate to the development, manufacture, testing, marketing, sales or distribution of VIOXX.

49. Identify all expert witnesses You intend to use at trial, including their likely testimony.

50. Identify all fact witnesses You intend to call at trial, including their likely testimony.

Plaintiffs' Liaison Counsel files this as an accommodation and for the benefit of Government Action Plaintiffs and pursuant to Pretrial Order No. 2.

Respectfully submitted,

/s/ Russ M. Herman

**Russ M. Herman (Bar No. 6819)**
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***Herman, Herman, Katz & Cotlar, LLP***
820 O'Keefe Avenue
New Orleans, LA  70113
PH:    (504) 581-4892
FAX:  (504) 561-6024
**Plaintiffs' Liaison Counsel**

24

**Dawn Barrios**
BARRIOS, KINGSDORF & CASTIEX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139-3650
Tel: (504) 524-3300
Fax: (504) 524-3313
dbarrios@bkc-law.com
**State Liaison Counsel**

**Sheila Bossier**
BOSSIER & ASSOCIATES, PLLC
1520 North State Street
Jackson, Mississippi 39202
Tel: (601) 352-5450
Fax: (601) 352-5452
sbossier@bossier-law.com
**Representing the State of Mississippi**

**Elizabeth J. Cabraser**
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
Embarcadero Center West
275 Battery Street, Suite 3000
San Francisco, CA 94111-3339
Tel:  (415) 956-1000
Fax:  (415) 956-1008
ECABRASER@lchb.com
**Representing the Plaintiffs Steering Committee**
**Purchase Claims Committee**

**James R. Dugan, II**
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Tel: (504) 648-0180
Fax:(504) 648-0181
jdugan@dugan-lawfirm.com
**Representing the State of Louisiana**

**Randall M. Fox**
OFFICE OF ANDREW M. CUOMO, NEW YORK
STATE ATTORNEY GENERAL
Office of the Attorney General, Medicaid Fraud
Unit
120 Broadway – 13th Floor
New York, NY 10271
Tel: (212) 417-5390
Fax: (212) 417-5335
randall.fox@oag.state.ny.us
**Representing the State of New York**

**H. Vincent McKnight**
ASHCRAFT & GEREL, LLP
2000 L Street, N.W., Suite 400
Washington, D.C.20036
Tel: (202) 783-6400
Fax: (202) 416-6392
vmcknight@ashcraftlaw.com
**Representing the District of Columbia in a**
**Taxpayer Representative Capacity**

**Diane Paolicelli**
LEVY PHILLIPS & KONINGSBERG, LLP
800 Third Ave. 13th Floor
New York, NY 10022
Tel: (212) 605-6250
Fax: (212) 605-6290
dpaolicelli@lpklaw.com
**Representing the New York Counties of**
**Chautauqua, Erie, and Orange**

**Bill Rossbach**
ROSSBACH HART BECHTOLD, PC
401 North Washington Street
P.O. Box 8988
Missoula, Montana 59807
Tel: (406) 543-5156
Fax: (406) 728-887
bill@rossbachlaw.com
**Representing the State of Montana**

**Shelly Sanford**
SANFORD BARLOW, LLP
2016 Bissonnet Street
Houston, TX 77005
Tel: (713) 524-6677
ssanford@sanfordbarlow.com

**Mark C. Schultz**
COHEN, PLACITELLA & ROTH
2001 Market St., Suite 2900
Philadelphia, PA 19103
Tel: (215) 567-3500
mschultz@cprlaw.com
**Representing the Commonwealth of**
**Pennsylvania**

<table>
<tr>
<td>

**Seth R. Lesser**
KLAFTER OLSEN & LESSER LLP
1250 Connecticut Ave., N.W., Suite 200
Washington, DC 20036
Tel: (202) 261-3553
Fax: (202) 261-3533
slesser@klafterolsen.com
**Representing the County of Santa Clara, California**

**John Low-Beer**
NEW YORK CITY LAW DEPARTMENT
Affirmative Litigation Division
100 Church Street
New York, NY 10007
Tel: (212) 788-1007
JLowBeer@law.nyc.gov
**Representing the City of New York**

</td>
<td>

**Pam Slate**
SLATE KENNEDY, LLC
One Commerce Street, Suite 850
Montgomery, Alabama 36104
Tel: (334) 262-3300
Fax: (334) 262-3301
pslate@slatekennedy.com

**James D. Young**
OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA
Office of the Attorney General, Special Counsel
1300 Riverplace Blvd, Suite 405,
Jacksonville, Florida 32207
Tel: (904) 348-2720
Fax: (904) 858-6918
james.young@myfloridalegal.com
**Representing the State of Florida**

</td>
</tr>
</table>

### PROPOSED CO-CHAIRS AND COMMITTEE MEMBERS

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8 on this 5th day of June, 2009.

/s/ Russ M. Herman
**Russ M. Herman** (Bar No. 6819)
***Herman, Herman, Katz & Cotlar, L.L.P.***
820 O'Keefe Ave.
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024
rherman@hhkc.com