# EXHIBIT G



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: VIOXX ) | | MDL NO. 1657 |
| Products Liability Litigation ) | | |
| ) | | SECTION: L |
| This Document Relates to: ) | | |
| ) | | HON. ELDON E. FALLON |
| STATE OF LOUISIANA, ex rel. ) | | |
| JAMES D. CALDWELL, ) | | MAG. JUDGE KNOWLES |
| ATTORNEY GENERAL ) | | |
| Plaintiff ) | | |
| ) | | |
| versus ) | | |
| ) | | |
| MERCK SHARP & DOHME CORP. ) | | |
| ) | | |
| Case No. 05-3700 ) | | |
| _____ ) | | |

### PLAINTIFF ATTORNEY GENERAL JAMES D. CALDWELL'S THIRD SET OF MASTER REQUESTS FOR PRODUCTION TO DEFENDANT MERCK SHARP & DOHME CORP.

TO: Merck Sharp & Dohme Corp., and its attorneys:
Phillip A. Wittmann, Esq.
Stone, Pigman, Walther, Wittmann, L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Merck Sharp & Dohme Corp., Liaison Counsel

Plaintiff serves these Requests for Production of Documents upon Defendant, Merck Sharp & Dohme Corp. ("Merck"), pursuant to Federal Rules of Civil Procedure 34. Defendant shall produce the following documents and tangible things within thirty (30) days of service of these requests, or at such other time as ordered by the Court.

### DEFINITIONS & INSTRUCTIONS

1. Whenever used in this Request, the following terms shall have the following meanings:

      a.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

      b.    "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

      c.    "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

      d.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

      e.    "Electronic data" or "data" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless

2

of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term electronic data also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

    f. "Electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

    g. "FDA" means the United States Department of Health & Human Services, United States Food & Drug Administration, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

    h. "Foreign Government Regulatory Authority" means any agency, committee, subcommittee or advisory committee of any government other than the United States of America, which bears responsibility or exercises authority over the manufacture, distribution, labeling, sale, and marketing of pharmaceutical products or human health in any jurisdiction, and any employee or agent acting as a representative thereof.

3

    i.  "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

    j.  "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

    k.  "Including" or "includes" means including, without limitation.

    l.  "Merck," "defendant," "you," or "your" means Merck Sharp & Dohme Corp., and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including attorneys and accountants.

    m.  "NSAIDs" means non-steroidal anti-inflammatory drugs, including both selective and non-selective COX-2 inhibitors.

    n.  "Person" means any natural person or any business, legal, or governmental entity or association.

    o.  "Relevant Product(s)" means any product containing rofecoxib in any form, dosage, or mode of administration, either alone or in combination with other chemicals and also includes the product sold under the brand name VIOXX, including any product against which the foregoing products were tested, compared, studied, analyzed, marketed, or sold.

    2.  The following rules of construction apply to all discovery requests:

    a.  The terms "all" and "each" shall be construed as all and each;

    b.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    c.  The use of the singular form of any word includes the plural and vice versa; and

    d.  Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

  3.  Unless otherwise specifically stated, this Request encompasses documents, which were created, received, or generated or otherwise entered into your possession, custody, or control between January 1, 1992 and the date of this Request (the "Relevant Period").

  4.  Any document falling within the scope of this Request that is withheld on the basis of a claim of privilege, work product, or any other ground is to be identified in writing and must include a statement of the ground alleged for withholding such document, shall identify its date, the identity of its author and signatories, the type of document (*e.g.*, letter), a summary of its content, its present location and custodian, a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents (or any portions thereof). Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

5

5.	If you are unable to comply fully with any of the specific requests, you shall comply to the extent possible and provide an explanation as to why full compliance is not possible. In the event that any documents called for by this Request were formerly in your possession, custody or control, or have been lost or destroyed, those documents are to be identified in writing as follows: persons who prepared or authorized the documents indicated or blind copies; dates of preparation or transmittal; subject matter; number of pages, attachments or appendices; all persons to whom distributed, shown or explained; date or dates of loss or destruction; and if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction and persons destroying the documents.

6.	This Request is directed to all documents within your possession, custody or control, or within the possession of any agent of Merck, or within the possession of any entity associated with Merck, or within the possession, custody, or control of such entity's directors, officers, agents, servants, employees, consultants, and professionals.

7.	Documents are to be produced in full and in their unexpurgated form. Redacted documents shall not constitute compliance with this Request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

8.	This Request is intended to be consistent with R. 4: 10-2(a). This Request is a continuing one and requires further and supplemental production by you as and whenever you acquire or create additional responsive documents after the time of the initial production hereunder.

9.	All documents produced in response to this Request shall be organized and labeled either to correspond with the number of the specific request to which the documents

are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.

        10. If you believe that some or all documents responsive to a request have previously been provided, please identify all such previously produced documents by Bates range and the request to which each document is responsive.

## DOCUMENTS TO BE PRODUCED

        1. All DOCUMENTS concerning "Measurements of Treatment Compliance" in Protocol 078, such as those described at MRK-I2690007950-51, including but not limited to:

        (a) Records showing that the "number of tablets in the medication bottle was counted, reviewed, and recorded" for each patient;

        (b) Records showing how such numbers were "used to calculate patient compliance" for each patient;

        (c) Records compiled at the individual study sites regarding treatment compliance;

        (d) Data compilations regarding treatment compliance, including any data sets compiled for interim data;

        (e) Summaries and/or internal correspondence regarding treatment compliance;

        (f) Reports and analyses of treatment compliance; and

        (g) DOCUMENTS or data provided to the FDA regarding treatment compliance.

        2. All DOCUMENTS concerning the discontinuation of patients enrolled in Protocol 078, including but not limited to:

7

    (a)  Records of discontinuations, compiled at the individual study sites;

    (b)  Data compilations regarding discontinuations, including any compilations of interim data;

    (c)  Summaries and/or internal correspondence regarding discontinuations;

    (d)  Reports and analyses of discontinuations; and

    (e)  DOCUMENTS or data provided to the FDA regarding discontinuations.

3. All DOCUMENTS concerning "a renal safety analysis" (as referenced at MRK-ABP0015346), including but not limited to the decision to conduct or not to conduct "a renal safety analysis."

4. All DOCUMENTS concerning a manuscript referred to as "Position Paper on Cox II Inhibitors and Hypertension [and] Edema" at MRK-AFI0130592-0614, including but not limited to DOCUMENTS identifying the author(s) of the Position Paper; persons to whom the Position Paper was distributed; and all drafts, edits and revisions of the Position Paper.

5. All DOCUMENTS concerning proposed publication, publication or submission of results of any and all studies comparing safety and efficacy of Vioxx, Bextra, and Celebrex, including but not limited to results of Protocols 112 and/or 116, as referenced at MRK-AFI0130595.

6. All DOCUMENTS concerning or setting forth the presentation of Protocol 112 at EULAR 2001, as referenced in defendant's Appendix A to its Answers to Interrogatory Nos. 40(a), et al., dated September 15, 2005, p. 17 of 23.

7. All DOCUMENTS concerning Protocol 112 results that were "shared with a sub-committee of the CST," and the "additional analyses" that were being conducted, as referenced at MRK-ABP0016040.

8

8. All DOCUMENTS concerning the decision to submit or not to submit for publication a manuscript presenting the results of Protocol 906, including, but not limited to, emails, memoranda, preliminary drafts, edits, or statistical analyses.

9. All DOCUMENTS concerning the "manuscript under development" referred to as "Cardiovascular Safety in Phase III OA Studies" at MRK-ABP0015352, including, but not limited to, engagement letters, or correspondence with authors or potential authors; contracts; protocols; data analysis plans; status reports; raw data; data sets; summary of findings; internal memorandum; draft manuscripts; final manuscripts; scheduling of the "target submission date T-Dec00"; journals targeted for publication; submissions to publishers; submissions to FDA; or discussions, communications or analyses of interim, preliminary or final results.

10. All DOCUMENTS concerning the data compiled regarding "Cardiovascular Safety in Phase III OA studies," as referenced at MRK-ABP0016021, and the decision not to publish this data, as reflected at MRK-ABP0016021 ("plans to publish this data have been terminated").

11. All DOCUMENTS concerning the "VIGOR closeout plan" referred to at MRK-ABP0008020-21, including, but not limited to, changes to the "VIGOR closeout plan," and all versions of the "VIGOR closeout plan."

12. The following DOCUMENTS referenced at MRK-NJ0120261-263:

    (a) "Protocol 088 events.xls;"

    (b) "Protocol 089 events.xls;"

    (c) "SOP final.doc;"

    (d) "CDOC 061 Jan 99.doc;"

    (e) "CDOC Minutes 01-06-99.doc;"

9

    (f) "Changes to the VIGOR Data Analysis Plan 12-1-99.doc."

13. All DOCUMENTS concerning a "Celecoxib Hypertension Pilot Study "as referenced at MRK-ABP0015372 and MRK-ABP0016041, including but not limited to emails, memoranda, protocols/draft protocols, data analysis plans/drafts, data, results, statistical analyses, reports, and manuscripts/drafts of manuscripts.

14. All DOCUMENTS concerning the submission of blood pressure data from Protocol 905 to the "Amer. Soc. of Hypertension," as referenced at MRK-ABP0016021.

15. All DOCUMENTS concerning the hiring of a "contract writer" to "rapidly prepare a manuscript," including but not limited to contracts, correspondence, data provided, draft and final manuscript, submissions to journals, and responses from journals and reviewers, with respect to the data referenced in the preceding request for production.

16. The custodial file of Jeffrey Melin from 1996-2004.

17. All DOCUMENTS concerning or setting forth the agendas for meetings with Dr. William White between January 1, 2000, and December 31, 2001.

18. All DOCUMENTS concerning "whether or not to submit to DDMAC" the results of Protocol 116, as referenced at MRK-ABP0015459.

19. All DOCUMENTS concerning the draft(s) and final manuscript, "Brater Renal Safety Review Article," referenced at MRK-ABP0015352, including but not limited to emails, memoranda, data, statistical analyses, correspondence to and from medical journals and reviewers, correspondence to and from Dr. Brater, and responses/drafts of responses to reviewers.

20. All DOCUMENTS concerning "Renal Safety in Phase III OA studies," referenced at MRK-ABP0015352, including but not limited to emails, memoranda, data,

10

statistical analyses, correspondence to and from medical journals and reviewers, and the "draft manuscript available" referenced at MRK-ABP0015352.

21. All DOCUMENTS referencing Craig Brater, MD from 1996-2004, including but not limited to Dr. Brater's consulting, advisory and financial relationship to Merck.

22. All DOCUMENTS referencing Matthew Weir, MD from 1996-2004, including but not limited to Dr. Weir's consulting, advisory and financial relationship to Merck.

23. All DOCUMENTS concerning Merck's attempts to create a "modified tablet shape to minimize the potential for halving of the 25mg tablet by patients and physicians," including but not limited to emails, memoranda, discussions of the reasons for these attempts, discussions of patients and/or physicians halving or breaking Vioxx tablets, discussion and results of "compression force" tests, as referenced at MRK-ABP0015357.

24. All DOCUMENTS concerning the "Three Expert Reports" referenced at MRK-ABP0015375, including but not limited to draft and final reports, edits, revisions, emails, memoranda, correspondence with R. Collins, Dr. Collins' request for meta-analysis of CV data, all interior, draft and final analyses prepared pursuant to that request, and financial compensation to Dr. Collins between March 2000 and December 2002.

25. All DOCUMENTS concerning the development, creation and operation of a "Cardiology/Nephrology Advisory Board" as referenced at MRK-AFI0130597, including but not limited to emails, memoranda, CRRC/CDOC minutes, correspondence to and from members and/or potential members of the Advisory Board, financial compensation to members of the Advisory Board, meeting schedules and agendas, background packages and materials provided to members of the Advisory Board, minutes and/or summaries of meetings, publications and/or

draft publications prepared by Advisory Board members regarding Vioxx, and all correspondence to and from medical journals regarding such publications.

26. All DOCUMENTS concerning a study conducted by Garrett Fitzgerald, referenced at MRK-ABT0078701, including but not limited to emails, memoranda, protocols/drafts, data analysis plans/drafts, reports, data, statistical analyses, and publications/drafts.

27. All DOCUMENTS concerning the preparation, submission and/or rejection of the "endoscopic ulcers (044/045)" article referenced at MRK-ABP0016021, including but not limited to submissions to, and/or rejections by, Lancet, Annals of Internal Medicine, and British Medical Journal.

28. All DOCUMENTS concerning draft versions of the VIGOR manuscript, and/or transmittal of draft versions of the VIGOR manuscript between any Merck employees, including but not limited to Alise Reicin and Deborah Shapiro, and any other authors of the VIGOR article, including but not limited to Bombardier, Laine, Burgos-Vargas, Davis, Day, Ferraz, Hawkey, Hochberg, Schnitzer and Kvien; and including the text of transmitted drafts, transmittal letters, e-mails or fax coversheets, proposed revisions, and hard copy versions of tracked changes or other electronic edits.

29. All DOCUMENTS concerning a proposed trial of Vioxx plus aspirin compared to ibuprofen plus aspirin or any other NSAID plus aspirin, including but not limited to Protocol 158, and concerning the decision to conduct or not conduct such a trial.

30. All DOCUMENTS concerning the article, "Selective COX-2 Inhibition and Cardiovascular Effects: A Review of the Rofecoxib Development Program," MRK-ADY0005153-166, including but not limited to: all draft manuscripts; all emails transmitting

draft manuscripts between Merck employees; all communications with Matthew Weir, M.D., regarding the article, including but not limited to transmittal of draft manuscripts, revisions, and/or compensation for Dr. Weir's participation as an author; all communications with American Heart Journal, including transmittal correspondence for the initial manuscript and any revisions, reviewer comments, and responses or proposed responses of the authors to such comments; and all DOCUMENTS concerning the plan to publish the article.

31. All DOCUMENTS concerning the article, "Comparison of Cardiovascular Thrombotic Events in Patients with Osteoarthritis," etc., Reicin, et al., Am J Cardiol 2002; 89:204-209, including but not limited to all draft manuscripts, and all communications with American Journal of Cardiology, including transmittal correspondence for the initial manuscript and any revisions, reviewer comments, and responses or proposed responses of the authors to such comments.

32. All DOCUMENTS concerning the Article, "Cardiovascular Thrombotic Events in Controlled, Clinical Trials of Rofecoxib," MRK-ABA00004431-440, including but not limited to: all draft manuscripts; all emails transmitting draft manuscripts between Merck employees; all communications between Merck employees and Marvin Konstam, M.D., regarding the article, including but not limited to transmittal of draft articles, revisions, and/or compensation to Dr. Konstam for his participation as an author; reviewer comments; and correspondence with the journal, "Circulation."

33. The "written transcript" of the September 28, 1996 Consultants' Meeting, referenced at MRK-NJ0231937, and any and all written transcripts of the GI Outcomes Trial Consultants' meetings between August 1996 and March 1997.

34. All DOCUMENTS related to any identified expert in this case for Plaintiffs and Defendant, including any materials responsive to Government Action Plaintiffs' First Set of Master Document Requests at Nos. 15, 16, 18, 20, 22, 24, 27, 28, 29, 30, 33, 35, 37, 40, 41, 42, and 44 and Interrogatories at Nos. 30-37 and 43.

Dated: January 29, 2010                                      Respectfully submitted,

**MURRAY LAW FIRM**

/s/ James R. Dugan, II
James R. Dugan, II
Douglas R. Plymale
Justin Bloom
Stephen B. Murray, Jr.
Stephen B. Murray, Sr.
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone:    (504) 648-0180
Facsimile:    (504) 648-0181

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
1885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
Kim Sullivan
General Counsel
Louisiana Department of Health and Hospitals
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff Attorney General James D. Caldwell's Third Set of Master Requests For Production Of Documents has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U. S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance Pretrial Order No. 8B.

/s/ James R. Dugan, II