UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF LOUISIANA, *ex rel.* JAMES D. | * | SECTION L |
|     CALDWELL, JR., Attorney General, | * | |
| | * | JUDGE ELDON E. FALLON |
|         Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|     versus | * | KNOWLES |
| | * | |
| MERCK SHARP & DOHME CORP., | * | |
| | * | |
|         Defendant. | * | |
| | * | |
| Case No. 05-3700. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* NO. 14 TO EXCLUDE THE WAXMAN MEMO AND THE MARTIN REPORT**

This motion addresses two hearsay documents that are irrelevant to Plaintiff's claims and, if admitted, will unduly prejudice Defendant Merck Sharp & Dohme Corp. ("Merck") and lead to unnecessary delay: (1) the Martin Report[1]; and (2) the Waxman Memo.[2] These documents have no relevance to the issues to be determined in this case. Evidence of an investigation by an independent body is not probative of any issue in this case. Similarly, politically charged statements made an individual member of Congress are inadmissible hearsay lacking the

---

[1] As this Court is aware, in November 2004, Merck's Board of Directors formed a Special Committee to investigate the conduct of senior Merck management with respect to the cardiovascular safety of Vioxx, and the Special Committee hired The Honorable John S. Martin Jr. of Debevoise & Plimpton LLP to conduct that independent investigation which culminated in the Martin Report. (Martin Report, attached as Ex. A.)

[2] The "Waxman Memo" referred to here is a May 5, 2005 memorandum prepared by Representative Henry A. Waxman addressed only to the "Democratic Members" of the House Committee on Government Reform, purportedly to assist them "in their preparation for the May 5, 2005 hearing on FDA and Vioxx." (Waxman Memo, attached as Exhibit B.)

1

trustworthiness required for admission under either the "public records" or "business records" exceptions to the hearsay rule. In addition to being irrelevant, the mere existence of a Vioxx investigation and the introduction of statements by a Congressman will require a disruptive and lengthy sideshow concerning these matters. Given its lack of probative value to the issues here and the attendant undue prejudice, such evidence should be excluded.

## ARGUMENT

### I. THIS COURT HAS PREVIOUSLY EXCLUDED PORTIONS OF THIS EVIDENCE IN THE PAST

In the most recent personal injury trials heard by this Court, *Mason* and *Dedrick*, the Court granted plaintiffs' motions to exclude the Martin Report. As for Merck's prior motions addressing the Waxman Memo, the Court reserved its rulings in *Plunkett I* and *Plunkett II*. Merck did not file a motion to exclude the Waxman Memo in the other MDL personal injury cases.

### II. THE COURT SHOULD PROHIBIT REFERENCE TO OR EVIDENCE OF THE MARTIN REPORT.

The Court should prohibit any mention of the Martin Report or the investigation that resulted in the Martin Report. There is no probative value to this inadmissible hearsay and improper character evidence. Moreover, allowing reference to or evidence of the Martin Report will be prejudicial because it will require undue consumption of time and judicial resources.

#### A. The Martin Report is Irrelevant and Inadmissible

The Court should exclude the Martin Report because it is not probative of any of the allegations in Plaintiff's complaint. *See* FED. R. EVID. 401-402. The nature of an investigation will, almost by definition, have a broader scope and focus than the facts at issue in a lawsuit.

An independent investigation of Merck by a private entity proves nothing about what the State of Louisiana and LDHH recognized about Vioxx's risks and benefits and what actions they

took to make Vioxx available to the State's Medicaid patients, nor what individual Louisiana physicians considered in prescribing Vioxx to their patients. This case involves its own facts, distinct issues of causation, and unique damages. *See, e.g., Yellow Bayou Plantation, Inc. v. Shell Chem., Inc.*, 491 F.2d 1239, 1242-1243 (5th Cir. 1974) (list of lawsuits and complaints against manufacturers of herbicide were properly excluded in product liability action because the "most these items could have indicated was that absent third parties had this claim against Shell from time to time."). The concerns of another entity that investigates a claim against Merck are simply not "of consequence to the determination" of this particular Plaintiff's action and should be excluded as irrelevant. *See* FED. R. EVID. 401.

      **B.**      **The Martin Report is Inadmissible Hearsay**

In addition, the Martin Report should not be admitted into evidence for yet another reason: it is inadmissible hearsay. *See Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (describing plaintiff's summary of lawsuits, claims and complaints against defendant as "nothing more than a summary of allegations by others which constitute hearsay"). Investigations lack the trustworthiness required to be excepted from the hearsay rule. *See* FED. R. EVID. 803(6) and (8). Because such evidence does not satisfy any exception to the hearsay rule, the contents of any record of investigation against Merck for alleging wrongdoing with regard to Vioxx, like the Martin Report, is inadmissible.

Indeed, courts across the country have routinely held similar hearsay evidence inadmissible. *See, e.g., Johnson*, 988 F.2d at 579-81; *Tincombe v. Colo. Constr. & Supply Corp.*, 681 P.2d 533, 534 (Colo. Ct. App. 1984) (overturning trial court's inclusion of file of consumer complaints lodged with attorney general's office as inadmissible hearsay not subject to exception because, in part, they lack the requisite trustworthiness because they comprise unsubstantiated allegations rather than factual findings); *Bernstein v. Maimes*, 126 Cal. App. 2d 468, 475-76; 272

P.2d 529, 533-34 (Cal. Dist. Ct. App. 1954) (finding no error in trial court's exclusion of letter from city prosecutor stating that as a result of its investigation the office was prepared to file a criminal complaint against appellants). The existence of the investigation proves nothing concerning any matter at issue in this litigation.

### C. The Martin Report is Impermissible Character Evidence

Evidence of investigation into alleged misconduct by Merck relating to Vioxx also violates the rule that evidence of other wrongs is "not admissible to prove the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b). Evidence of other acts may be admissible only if: (1) it is relevant to a material issue in dispute other than Merck's "character" and similar in kind; and (2) its probative value is not outweighed substantially by its inherent prejudice. *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978); *see also Reyes v. Missouri Pac. R.R. Co.*, 589 F.2d 791, 793 (5th Cir. 1979) (stating that "[t]his general rule of exclusion [is] applicable to both civil and criminal proceedings").

As discussed above, the Martin Report is neither relevant to the materials facts at issue in this case nor is it sufficiently similar in kind. Finally, as discussed below, the prejudice created by introducing evidence of the Martin Report easily outweighs any minimal probative value the evidence may have. *See, e.g., Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 142 (Tex. 2004) ("[P]roduct defects must be proved; they cannot simply be inferred from a large number of complaints. If the rule were otherwise, product claims would become a self-fulfilling prophecy – the more that are made, the more likely all must be true.").

### D. The Martin Report Will Cause Undue Delay

Putting aside the other evidentiary hurdles to introducing the Martin Report, the danger of undue delay also dictates that such evidence be excluded. *See* FED. R. EVID. 403. The introduction of such evidence will create a distracting sideshow on matters that are at best

4

collateral to the State's claims here. *See, e.g., Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 472 (E.D. La. 2007) (excluding evidence under Rule 403 where it would lead to "time wasting on collateral issues"). For this reason too, the Martin Report should be excluded.

### III. THE COURT SHOULD EXCLUDE THE WAXMAN MEMO

As the Court is no doubt aware, in November 2004, just weeks after Merck voluntarily withdrew Vioxx from the market, Congress began hearings to address both the FDA's regulation of drugs and the marketing of Vioxx and other drugs. Politicians have since drafted legislation, and promised to draft future legislation, to address various drug safety issues. (*See* Food and Drug Administration Safety Act of 2005, S. 930, 109th Cong. (2005) ("Senate Bill 930"), attached as Ex. C; *Kennedy Working on Bill to Address Drug Safety Concerns*, FDA Week (Inside Washington Publishers, Washington D.C.), Apr. 29, 2005, attached as Ex. D.) Various politicians, including Congressman Henry Waxman, made public statements and speeches, wrote articles, and discussed their views about Merck, Vioxx, and the FDA's drug-approval and monitoring practices. The Waxman Memo was written by one member of the House Committee on Government Reform, solely on his own behalf. A cursory review of the Waxman Memo proves that it was neither prepared pursuant to any duty nor did it memorialize the findings of Congress or any other governmental body. The Waxman Memo was sent just to members of Congressman Waxman's political party in preparation for the Committee's hearing.

While such political debate may be helpful to the democratic determination of policy, it certainly has no place in a trial. Congressional proceedings are not subject to the rules of evidence. Accordingly, the Waxman Memo and any statements made in connection with it are inadmissible hearsay. The Waxman Memo is also irrelevant and, if admitted, would cause unnecessary delay. As such, it should therefore be excluded.

A. **The Court Should Exclude the Waxman Memo Because it is Inadmissible Hearsay**

The Waxman Memo is a classic example of inadmissible hearsay, as it contains Congressman Waxman's statements made in connection with Congressional hearings that Plaintiff would offer for their truth. FED. R. EVID. 801(c) (defining hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). And no exceptions to the hearsay rule apply. FED. R. EVID. 802.

1. **The public records exception does not apply**

Rule 803(8) provides that "public records and reports" may qualify as an exception to the hearsay rule, so long as statements contained therein are sufficiently trustworthy. *See* FED. R. EVID. 803(8). Under Rule 803(8), statements made in connection with political proceedings regarding Vioxx are not "public records," nor do they possess the level of legal trustworthiness deserving of an exception to the hearsay rule.

In determining whether such statements are admissible, the Court should keep in mind the broad-ranging scope and essentially free-form nature of Congressional hearings in general:

> A hearing is a meeting or session of a Senate, House, Joint, or Special Committee of Congress, usually open to the public, to obtain information and opinions on proposed legislation, conduct an investigation, or evaluate/oversee the activities of a government department or the implementation of a Federal law. In addition, hearings may also be purely exploratory in nature, providing testimony and data about topics of current interest.

Congressional Hearings: About, GPO Access, http://www.gpoaccess.gov/chearings/about.html (last visited Feb. 17, 2010). Statements that come out of this context, like the memo of Congressman Waxman criticizing Merck's marketing methods and the FDA approval process, are not made pursuant to a Congressional duty to act or report. Rather, they are driven by individual political agendas and are rife with the author's personal opinions and conclusions.

6

They do not constitute "official writings" of Congress. Specifically, the Waxman Memo is not even an "official writing" of the House Committee on Government Reform ("HCGR"), let alone an "official writing" of Congress as a whole. It was written by one member of that committee, solely on his behalf. It does not memorialize ultimate findings of Congress, the HCGR, or any other body.

Statements made in connection with the political process also lack the indicia of trustworthiness that the "public records" exception requires. *See* FED. R. EVID. 803(8)(c). As one federal court put it:

> [C]ongressional committee hearings are oft time conducted in a circus atmosphere, with a gracious plenty of posturing by the politicians for T.V. publicity in large part for the benefit of constituents back home . . . .
>
> This "circus" is hardly conducive to the development of facts, but more to entertainment of the television audience. The Court does not look to the reports of such activities as productive of any facts which would persuade the Court one way or the other.

*Knight Publ'g Co. v. United States Dep't of Justice*, 631 F. Supp. 1175, 1178 (W.D.N.C. 1986) (declining to consider statements contained in a Congressional report as "facts" to illustrate and support allegations of bad faith in a law enforcement investigation). On this basis, the court in *Anderson v. City of New York* found a Congressional Committee report inadmissible to support a motion for summary judgment. 657 F. Supp. 1571, 1579-80 (S.D.N.Y. 1987). Citing *Knight Publishing*, the court found that Congressional hearings and subsequent reports "are frequently marred by political expediency and grandstanding" and that the report at issue in Anderson "suffer[ed] from the same apparent motivational flaws." *Id*. at 1579. The court was particularly concerned that the report was the result of hearings that lacked procedural due process protections and was based on testimony of interested parties. *See id*. Other courts have reached the same conclusion and excluded such statements as inadmissible hearsay. *See e.g., Baker v.*

7

*Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986) (report of Congressional investigation not trustworthy because it "did not contain the factual findings necessary to an objective investigation, but consisted of the rather heated conclusions of a politically motivated hearing."); *Richmond Med. Ctr. for Women v. Hicks*, 301 F. Supp. 2d 499, 512 (E.D. Va. 2004) ("The House Report . . . represents the political position of the representatives who voted for it. It is untrustworthy and inadmissible."), *aff'd*, 409 F.3d 619 (4th Cir. 2005).

The Waxman Memo and similar documents are no different. They were generated in the context of a highly-publicized and politically-charged process that included testimony from self-interested witnesses and statements by politicians who were championing legislative agendas. The hearings attracted significant media attention and were televised on C-Span. They focused heavily on politicians' and witnesses' agendas regarding the FDA and the regulation of drugs generally, using Vioxx as a vehicle to make a political point. Indeed, following these hearings, Senators Grassley and Dodd introduced a bill to amend the Federal Food, Drug and Cosmetic Act with respect to drug safety. (*See* Senate Bill 930.) Documents like the Waxman Memo simply lack the requisite evidentiary trustworthiness to be admissible under a hearsay exception.

### 2. The business records exception does not apply

Nor is the Waxman Memo a "business record." Rule 803(6) requires the same degree of evidentiary trustworthiness as Rule 803(8). Reports and records, while frequently generated by members of Congress, do not meet the requirements of Rule 803(6) for a business record of a regular business practice. Congressional hearings are called on an ad-hoc, interest-driven basis, and there is no "regular practice of that business activity" to make the record. FED. R. EVID. 803(6).

### B. The Waxman Memo is Irrelevant

Plaintiff cannot plausibly identify a reason why the Waxman Memo has any bearing on any issue in this litigation. There is no logical connection between Plaintiff's claims and documents that were made as part of the political process about the safety and marketing of Vioxx and the FDA's regulatory procedures or that were created in the context or aftermath of those hearings. Accordingly, the Waxman Memo and similar evidence should be excluded on that basis as well. *See* FED. R. EVID. 402.

### C. Admission of the Waxman Memo Would Unnecessarily Prolong the Trial

The Waxman Memo and other similar statements by members of Congress should also be excluded because they would cause undue delay of the trial. *See* FED. R. EVID. 403. Merck would be compelled (and entitled) to introduce rebuttal evidence. Under such circumstances, courts have upheld the exclusion of such evidence to avoid a mini-trial within a trial. *See, e.g., Samson v. Apollo Res., Inc.*, 242 F.3d 629, 641-42 (5th Cir. 2001) (upholding trial court's exclusion of collateral issues that would have required additional days of testimony without shedding light on the central issue in the case). Accordingly, the Waxman Memo should be excluded.

1009093v.1

## **CONCLUSION**

For the reasons discussed above, the Court should exclude the Martin Report and the Waxman Memo.

Dated: February 26, 2010                              Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittman, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
  WITTMANN LLC
546 Carondelet Street
New Orleans, LA 70130
Phone: (504) 581-3200
Fax:    (504) 581-3361

1009093v.1

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Memorandum in Support of Motion to Exclude the Waxman Memo and the Martin Report has served on Liaison Counsel by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Plaintiff, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 26th day of February, 2010.

      /s/ Dorothy H. Wimberly  
      Dorothy H. Wimberly, 18509  
      STONE PIGMAN WALTHER WITTMANN L.L.C.  
      546 Carondelet Street  
      New Orleans, Louisiana  70130  
      Phone:  504-581-3200  
      Fax:     504-581-3361  
      dwimberly@stonepigman.com

      Defendants' Liaison Counsel

1009093v.1