

II

109TH CONGRESS
1ST SESSION

# S. 930

To amend the Federal Food, Drug, and Cosmetic Act with respect to drug safety, and for other purposes.

---

## IN THE SENATE OF THE UNITED STATES

APRIL 27, 2005

Mr. GRASSLEY (for himself and Mr. DODD) introduced the following bill; which was read twice and referred to the Committee on Health, Education, Labor, and Pensions

---

# A BILL

To amend the Federal Food, Drug, and Cosmetic Act with respect to drug safety, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2  *tives of the United States of America in Congress assembled,*

3  **SECTION 1. SHORT TITLE.**

4    This Act may be cited as the "Food and Drug Ad-

5  ministration Safety Act of 2005".

6  **SEC. 2. CENTER FOR POSTMARKET DRUG EVALUATION**

7        **AND RESEARCH.**

8    (a) IN GENERAL.—Chapter V of the Federal Food,

9  Drug, and Cosmetic Act (21 U.S.C. 351 et seq.) is amend-

10  ed by inserting after section 506C the following:

M006F06903



2

1  **"SEC. 507. DRUG SAFETY.**

2  "(a) ESTABLISHMENT OF THE CENTER FOR

3  POSTMARKET DRUG EVALUATION AND RESEARCH.—

4  There is established within the Food and Drug Adminis-

5  tration a Center for Postmarket Drug Evaluation and Re-

6  search (referred to in the section as the 'Center'). The

7  Director of the Center shall report directly to the Commis-

8  sioner of Food and Drugs.

9  "(b) DUTIES OF THE CENTER FOR POSTMARKET

10  DRUG EVALUATION AND RESEARCH.—

11  "(1) RESPONSIBILITIES OF DIRECTOR.—The

12  Director of the Center shall—

13  "(A) conduct postmarket risk assessment

14  of drugs approved under section 505 of this Act

15  and of biological products licensed under section

16  351 of the Public Health Service Act;

17  "(B) conduct and improve postmarket sur-

18  veillance of approved drugs and licensed biologi-

19  cal products using postmarket surveillance pro-

20  grams and activities (including MedWatch),

21  risk-benefit analyses, adverse event reports, the

22  scientific literature, any clinical or observational

23  studies (including studies required under sub-

24  section (d) or (e)), and any other resources that

25  the Director of the Center determines appro-

26  priate;

MDO6F06904




3

"(C) determine whether a study is required under subsection (d) or (e) and consult with the sponsors of drugs and biological products to ensure that such studies are completed by the date, and according to the terms, specified by the Director of the Center;

"(D) contract, or require the sponsor of an application or the holder of an approved application or license to contract, with the holders of domestic and international surveillance databases to conduct epidemiologic and other observational studies;

"(E) determine, based on postmarket surveillance programs and activities (including MedWatch), risk-benefit analyses, adverse event reports, the scientific literature, and any clinical or observational studies (including studies required under subsection (d) or (e)), and any other resources that the Director of the Center determines appropriate, whether a drug or biological product may present an unreasonable risk to the health of patients or the general public, and take corrective action if such an unreasonable risk may exist;

 

4

1        "(F) make information about the safety

2    and effectiveness of approved drugs and li-

3    censed biological products available to the pub-

4    lic and healthcare providers in a timely manner;

5    and

6        "(G) conduct other activities as the Direc-

7    tor of the Center determines appropriate to en-

8    sure the safety and effectiveness of all drugs

9    approved under section 505 and all biological

10    products licensed under section 351 of the Pub-

11    lic Health Service Act.

12    "(2) DETERMINATION OF UNREASONABLE

13    RISK.—In determining whether a drug or biological

14    product may present an unreasonable risk to the

15    health of patients or the general public, the Director

16    of the Center shall consider the risk in relation to

17    the known benefits of such drug or biological prod-

18    uct.

19    "(c) SECRETARIAL AUTHORITY.—

20    "(1) IN GENERAL.—Approval of a drug under

21    section 505 of this Act or issuance of a license for

22    a biological product under section 351 of the Public

23    Health Service Act may be subject to the require-

24    ment that the sponsor conduct 1 or more postmarket

25    studies as described in subsection (d) or (e) of this

M006F06906

 

5

1     section, or other postmarket studies as required by

2     the Secretary, to validate the safety and effective-

3     ness of the drug or biological product.

4          "(2) DEFINITION.—For purposes of this sec-

5     tion, the term 'postmarket' means—

6             "(A) with respect to a drug, after approval

7     of an application under section 505; and

8             "(B) with respect to a biological product,

9     after licensure under section 351 of the Public

10    Health Service Act.

11    "(d) PREAPPROVAL REVIEW.—

12         "(1) REVIEW OF APPLICATION.—

13            "(A) IN GENERAL.—

14               "(i) REVIEW.—At any time before a

15    drug is approved under section 505 of this

16    Act or a biological product is licensed

17    under section 351 of the Public Health

18    Service Act, the Director of the Center

19    shall review the application (or supplement

20    to the application), and any analyses asso-

21    ciated with the application, of such drug or

22    biological product.

23               "(ii) EFFECT OF APPROVAL OR LI-

24    CENSURE.—The approval of a drug under

25    section 505 or the licensure of a biological

MDL0FO6907

6

1         product under such section 351 shall not

2         affect the continuation and completion of a

3         review under clause (i).

4         "(B) LIMITATION.—In no case shall the

5    review under subparagraph (A) delay a decision

6    with respect to an application for a drug under

7    section 505 of this Act or for a biological prod-

8    uct under section 351 of the Public Health

9    Service Act.

10    "(2) RESULT OF REVIEW.—The Director of the

11    Center may, based on the review under paragraph

12    (1)—

13         "(A) require that the sponsor of the appli-

14         cation agree to conduct 1 or more postmarket

15         studies to determine the safety or effectiveness

16         of a drug or biological product, including such

17         safety or effectiveness as compared to other

18         drugs or biological products, to be completed by

19         a date, and according to the terms, specified by

20         the Director of the Center; or

21         "(B) contract, or require the sponsor of

22         the application to contract, with a holder of a

23         domestic or an international patient database to

24         conduct 1 or more epidemiologic or other obser-

25         vational studies.

M006F06908

 

7

1    "(e) POSTMARKETING STUDIES OF DRUG SAFETY.—

2    "(1) IN GENERAL.—At any time after a drug is

3    approved under section 505 of this Act or a biologi-

4    cal product is licensed under section 351 of the Pub-

5    lic Health Service Act, the Director of the Center,

6    may—

7        "(A) require that the holder of an ap-

8        proved application or license conduct 1 or more

9        studies to determine the safety or effectiveness

10       of such drug or biological product, including

11       such safety and effectiveness as compared to

12       other drugs or biological products, to be com-

13       pleted by a date, and according to the terms,

14       specified by such Director; or

15       "(B) contract, or require the holder of the

16       approved application or license to contract, with

17       a holder of a domestic or an international pa-

18       tient database to conduct 1 or more epidemio-

19       logic or other observational studies.

20       "(2) REVIEW OF OUTSTANDING STUDIES.—Not

21   later than 90 days after the date of enactment of

22   the Food and Drug Administration Safety Act of

23   2005, the Director of the Center shall—

24       "(A) review and publish a list in the Fed-

25       eral Register of any postmarketing studies out-

MDO6FO6909

 

8

1  standing on the date of enactment of the Food

2  and Drug Administration Safety Act of 2005;

3  and

4      "(B) as the Director determines appro-

5      priate, require the sponsor of a study described

6      in subparagraph (A) to conduct such study

7      under this subsection.

8  "(f) PUBLICATION OF PROGRESS REPORTS AND

9  COMPLETED STUDIES.—

10      "(1) IN GENERAL.—The Director of the Center

11  shall require that the sponsor of a study under sub-

12  section (d) or (e) submit to the Secretary—

13      "(A) not less frequently than every 90

14      days, an up-to-date report describing the

15      progress of such study; and

16      "(B) upon the completion date of such

17      study, the results of such study.

18      "(2) COMPLETION DATE.—For purposes of this

19  section, the completion date of such study shall be

20  determined by the Director of the Center.

21  "(g) DETERMINATIONS BY DIRECTOR.—

22      "(1) RESULTS OF STUDY.—The Director of the

23  Center shall determine, upon receipt of the results of

24  a study required under subsection (d) or (e)—

9

1       "(A) whether the drug or biological prod-
2       uct studied may present an unreasonable risk to
3       the health of patients or the general public; and

4       "(B) what, if any, corrective action under
5       subsection (k) shall be taken to protect patients
6       and the public health.

7       "(2) RESULTS OF EVIDENCE.—The Director of
8       the Center may, at any time, based on the empirical
9       evidence from postmarket surveillance programs and
10      activities (including MedWatch), risk-benefit anal-
11      yses, adverse event reports, the scientific literature,
12      any clinical or observational studies (including stud-
13      ies required under subsection (d) or (e)), or any
14      other resources that the Director of the Center de-
15      termines appropriate—

16      "(A) make a determination that a drug or
17      biological product may present an unreasonable
18      risk to the health of patients or the general
19      public; and

20      "(B) order a corrective action under sub-
21      section (k) be taken to protect patients and the
22      public health.

23      "(3) REQUIRED CONSULTATION AND CONSIDER-
24      ATIONS.—Before making a determination under
25      paragraph (2), ordering a study under subsection

•S 990 IS

M006F06911

 

10

1      (d) or (e), or taking a corrective action under sub-

2     section (k), the Director of the Center shall—

3          "(A) consult with the Director of the Cen-

4         ter for Drug Evaluation and Research or the

5         Director of the Center for Biologics Evaluation

6         and Research, as appropriate; and

7          "(B) consider—

8            "(i) the benefit-to-risk profile of the

9          drug or biological product;

10          "(ii) the effect that a corrective ac-

11         tion, or failure to take corrective action,

12         will have on the patient population that re-

13         lies on the drug or biological product; and

14          "(iii) the extent to which the drug or

15         biological product presents a meaningful

16        therapeutic benefit as compared to other

17        available treatments.

18    "(h) PUBLIC INFORMATION.—Periodically, but not

19  less often than every 90 days, the Secretary shall make

20  available to the public, by publication in the Federal Reg-

21  ister and posting on an Internet website, the following in-

22  formation:

23         "(1) Studies required under subsection (d) or

24     (e) including—

25          "(A) the type of study;

M006F0691Z

 

11

1  "(B) the nature of the study;

2  "(C) the primary and secondary outcomes

3  of the study;

4  "(D) the date the study was required

5  under subsection (d) or (e) or was agreed to by

6  the sponsor;

7  "(E) the deadline for completion of the

8  study; and

9  "(F) if the study has not been completed

10  by the deadline under subparagraph (E), a

11  statement that explains why.

12  "(2) The periodic progress reports and results

13  of completed studies described under subsection (f).

14  "(3) Any determinations made by the Director

15  of the Center under subsection (g), including—

16  "(A) reasons for the determination, includ-

17  ing factual basis for such determination;

18  "(B) reference to supporting empirical

19  data; and

20  "(C) an explanation that describes why

21  contrary data is insufficient.

22  "(i) DRUG ADVISORY COMMITTEE.—The Drug Safe-

23  ty and Risk Management Drugs Advisory Committee with-

24  in the Center of the Food and Drug Administration

25  shall—




12

1    "(1) meet not less frequently than every 180

2    days; and

3        "(2) make recommendations to the Director of

4    the Center with respect to—

5            "(A) which drugs and biological products

6        should be the subject of a study under sub-

7        section (d) or (e);

8            "(B) the design and duration for studies

9        under subsection (d) or (e);

10           "(C) which drugs and biological products

11       may present an unreasonable risk to the health

12       of patients or the general public; and

13           "(D) appropriate corrective actions under

14       subsection (k).

15   "(j) PENALTIES.—

16       "(1) IN GENERAL.—If the Secretary deter-

17   mines, after notice and opportunity for an informal

18   hearing, that a sponsor of a drug or biological prod-

19   uct or other entity has failed to complete a study re-

20   quired under subsection (d) or (e) by the date or to

21   the terms specified by the Secretary under such sub-

22   section, the Secretary may order such sponsor or

23   other entity to—

24           "(A) complete the study in a specified

25       time;



13

1           "(B) revise the study to comply with the

2      terms specified by the Secretary under sub-

3      section (d) or (e); or

4           "(C) pay a civil penalty.

5      "(2) AMOUNT OF PENALTIES.—

6           "(A) IN GENERAL.—The civil penalty or-

7      dered under paragraph (1) shall be $250,000

8      for the first 30-day period after the date speci-

9      fied by the Secretary that the study is not com-

10     pleted, and shall double in amount for every 30-

11     day period thereafter that the study is not com-

12     pleted.

13         "(B) LIMITATION.—In no case shall a pen-

14     alty under subparagraph (A) exceed $2,000,000

15     for any 30-day period.

16     "(3) NOTIFICATION OF PENALTY.—The Sec-

17     retary shall publish in the Federal Register any civil

18     penalty ordered under this subsection.

19     "(k) RESULT OF DETERMINATION.—

20         "(1) IN GENERAL.—If the Director of the Cen-

21     ter makes a determination that a drug or biological

22     product may present an unreasonable risk to the

23     health of patients or the general public under sub-

24     section (g), such Director shall order a corrective ac-

25     tion, as described under paragraph (2).

MOO6F06915

 

14

1        "(2) CORRECTIVE ACTIONS.—The corrective ac-

2 tion described under subsection (g)—

3      "(A) may include—

4         "(i) requiring a change to the drug or

5 biological product label by a date specified

6 by the Director of the Center;

7         "(ii) modifying the approved indica-

8 tion of the drug or biological product to re-

9 strict use to certain patients;

10         "(iii) placing restriction on the dis-

11 tribution of the drug or biological product

12 to ensure safe use;

13         "(iv) requiring the sponsor of the

14 drug or biological product or license to es-

15 tablish a patient registry;

16         "(v) requiring patients to sign a con-

17 sent form prior to receiving a prescription

18 of the drug or biological product;

19         "(vi) requiring the sponsor to monitor

20 sales and usage of the drug or biological

21 product to detect unsafe use;

22         "(vii) requiring patient or physician

23 education; and

•S 930 IS

M006F06916

 

15

1         "(viii) requiring the establishment of

2         a risk management plan by the sponsor;

3         and

4     "(B) shall include the requirements with

5 respect to promotional material under sub-

6 section (l)(1).

7 "(3) PENALTIES.—

8     "(A) IN GENERAL.—If the Secretary deter-

9 mines, after notice and opportunity for an in-

10 formal hearing, that a sponsor of a drug or bio-

11 logical product has failed to take the corrective

12 action ordered by the Director of the Center

13 under this subsection or has failed to comply

14 with subsection (l)(2), the Secretary may order

15 such sponsor to pay a civil penalty.

16     "(B) AMOUNT OF PENALTIES.—

17         "(i) IN GENERAL.—The civil penalty

18         order under subparagraph (A) shall be

19         $250,000 for the first 30-day period that

20         the sponsor does not comply with the order

21         under paragraph (1), and shall double in

22         amount for every 30-day period thereafter

23         that the order is not complied with.

M006F06917

 

16

1            "(ii) LIMITATION.—In no case shall a

2            penalty under clause (i) exceed $2,000,000

3            for any 30-day period.

4            "(C) NOTIFICATION OF PENALTY.—The

5            Secretary shall publish in the Federal Register

6            any civil penalty ordered under this paragraph.

7      "(l) PROMOTION MATERIAL.—

8            "(1) SAFETY ISSUE.—If the Director of the

9      Center makes a determination that a drug or bio-

10      logical product may present an unreasonable risk to

11      the health of patients or the general public under

12      subsection (g), such Director, in consultation with

13      the Division of Drug Marketing, Advertising, and

14      Communications of the Food and Drug Administra-

15      tion, shall—

16            "(A) notwithstanding section 502(n), re-

17            quire that the sponsor of such drug or biologi-

18            cal product submit to the Director of the Cen-

19            ter copies of all promotional material with re-

20            spect to the drug or biological product not less

21            than 30 days prior to the dissemination of such

22            material; and

23            "(B) require that all promotional material

24            with respect to the drug or biological product

25            include certain disclosures, which shall be dis-

MDO6F06918

 

17

played prominently and in a manner easily un-
derstood by the general public, including—

"(i) a statement that describes the
unreasonable risk to the health of patients
or the general public as determined by the
Director of the Center;

"(ii) a statement that encourages pa-
tients to discuss potential risks and bene-
fits with their healthcare provider;

"(iii) a description of the corrective
actions required under subsection (k);

"(iv) where appropriate, a statement
explaining that there may be products
available to treat the same disease or con-
dition that present a more favorable ben-
efit-to-risk profile, and that patients should
talk to their healthcare provider about the
risks and benefits of alternative treat-
ments;

"(v) a description of any requirements
of outstanding clinical and observational
studies, including the purpose of each
study; and

"(vi) contact information to report a
suspected adverse reaction.

M006F06919

 

18

1     "(2) NEW PRODUCTS; OUTSTANDING STUD-

2     IES.—For the first 2-year period after a drug is ap-

3     proved under section 505 of this Act or a biological

4     product is licensed under section 351 of the Public

5     Health Service Act, and with respect to drugs and

6     biological products for which there are outstanding

7     study requirements under subsection (d) or (e), the

8     Director of the Center, in consultation with the Divi-

9     sion of Drug Marketing, Advertising, and Commu-

10     nications of the Food and Drug Administration,

11     shall—

12         "(A) notwithstanding section 502(n), re-

13         quire that the sponsor of such drug or biologi-

14         cal product submit to the Director of the Cen-

15         ter copies of all promotional material with re-

16         spect to the drug or biological product not less

17         than 30 days prior to the dissemination of such

18         material; and

19         "(B) require that all promotional material

20         with respect to the drug or biological product

21         include certain disclosures, which shall be dis-

22         played prominently and in a manner easily un-

23         derstood by the general public, including—

24             "(i) a statement explaining that the

25             drug or biological product is newly ap-

MDL0F06920

 

19

1      proved or licensed or the subject of out-
2      standing clinical or observational studies,
3      as the case may be, and, as a result, not
4      all side effects or drug interactions may be
5      known;
6           "(ii) the number of people in which
7      the drug or biological product has been
8      studied and the duration of time during
9      which the drug or biological product has
10     been studied;
11          "(iii) a statement that encourages pa-
12     tients to discuss the potential risks and
13     benefits of treatment with their healthcare
14     provider;
15          "(iv) a description of any require-
16     ments of outstanding clinical and observa-
17     tional studies, including the purpose of
18     each study; and
19          "(v) contact information to report a
20     suspected adverse reaction.
21     "(3) EFFECT OF VOLUNTARY SUBMISSION.—
22     Paragraphs (1)(A) and (2)(A) shall not apply to the
23     sponsor of a drug or biological product if such spon-
24     sor has voluntarily submitted to the Division of
25     Drug Marketing, Advertising, and Communications

M00FO6921

20

1    of the Food and Drug Administration all pro-

2    motional material with respect the drug or biological

3    product prior to the dissemination of such material.

4    "(m) WITHDRAWAL OR SUSPENSION OF APPROVAL

5    OR LICENSURE.—

6        "(1) IN GENERAL.—The Director of the Center,

7    may withdraw or suspend approval of a drug or li-

8    cense of a biological product using expedited proce-

9    dures (as prescribed by the Secretary in regulations

10    promulgated not later than 1 year after the date of

11    enactment of the Food and Drug Administration

12    Safety Act of 2005, which shall include an oppor-

13    tunity for an informal hearing) after consultation

14    with the Director of Center for Drug Evaluation and

15    Research or the Director of the Center for Biologics

16    Evaluation and Research, as appropriate, and any

17    other person as determined appropriate by the Di-

18    rector of the Center, if—

19        "(A) the Director of the Center makes a

20        determination that the drug or biological prod-

21        uct may present an unreasonable risk to the

22        health of patients or the general public, and

23        that risk cannot be satisfactorily alleviated by a

24        corrective action under subsection (k); or




21

1    "(B) the sponsor fails to comply with an

2    order or requirement under this section.

3    "(2) PUBLIC INFORMATION.—The Secretary

4    shall make available to the public, by publication in

5    the Federal Register and posting on an Internet

6    website, the details of the consultation described in

7    paragraph (1), including—

8        "(A) the reason for the determination to

9        withdraw, suspend, or failure to withdraw or

10       suspend, approval for the drug or licensure for

11       the biological product;

12       "(B) the factual basis for such determina-

13       tion;

14       "(C) reference to supporting empirical

15       data;

16       "(D) an explanation that describes why

17       contrary data is insufficient; and

18       "(E) the position taken by each individual

19       consulted.

20   "(n) EFFECT OF SECTION.—The authorities con-

21   ferred by this section shall be separate from and in addi-

22   tion to the authorities conferred by section 505B.

23   "(o) ADMINISTRATION OF SECTION.—The provisions

24   of this section shall be carried out by the Secretary, acting

25   through the Director of the Center.".




22

1   (b) MISBRANDING.—Section 502 of the Federal
2   Food, Drug, and Cosmetic Act (21 U.S.C. 352) is amend-
3   ed by inserting after subsection (j) the following:
4        "(k) If it is a drug or biological product for which
5   the sponsor of an application or holder of an approved ap-
6   plication or license has not complied with an order or re-
7   quirement under section 507.".
8   (c) REPORT ON DEVICES.—Not later than 6 months
9   after the date of enactment of this Act, the Secretary of
10  Health and Human Services, in consultation with the
11  Commissioner of Food and Drugs, the Director of the
12  Center for Postmarket Drug Evaluation and Research,
13  and the Director of the Center for Devices and Radio-
14  logical Health, shall submit to Congress a report that—
15       (1) identifies deficiencies in the current process
16       of postmarket surveillance of devices approved under
17       the Federal Food, Drug, and Cosmetic Act (21
18       U.S.C. 321 et seq.);
19       (2) includes recommendations on ways to im-
20       prove deficiencies of postmarket surveillance of de-
21       vices; and
22       (3) identifies the changes in authority needed to
23       make those improvements, recognizing the legitimate
24       differences between devices and other medical prod-

 

23

1 ucts regulated by the Food and Drug Administra-

2 tion.

3 (d) TRANSFER OF FUNCTIONS.—The functions and

4 duties of the Office of Drug Safety, including the Drug

5 Safety and Risk Management Drugs Advisory Committee,

6 of the Food and Drug Administration on the day before

7 the date of enactment of this Act shall be transferred to

8 the Center for Postmarket Drug Evaluation and Research

9 established under section 507 of the Federal Food, Drug,

10 and Cosmetic Act (as added by this section). The Center

11 for Postmarket Drug Evaluation and Research shall be

12 a separate entity within the Food and Drug Administra-

13 tion and shall not be an administrative office of the Center

14 for Drug Evaluation and Research or the Center for Bio-

15 logics Evaluation and Research.

16 (e) AUTHORIZATION OF APPROPRIATIONS.—There

17 are authorized to be appropriated to carry out this Act

18 (and the amendments made by this Act)—

19 (1) $50,000,000 for fiscal year 2006;

20 (2) $75,000,000 for fiscal year 2007;

21 (3) $100,000,000 for fiscal year 2008;

22 (4) $125,000,000 for fiscal year 2009; and

23 (5) $150,000,000 for fiscal year 2010.

○