UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF LOUISIANA, *ex rel.* JAMES D. | * | SECTION L |
|     CALDWELL, JR., Attorney General, | * | |
| | * | JUDGE ELDON E. FALLON |
|            Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|   versus | * | KNOWLES |
| | * | |
| MERCK SHARP & DOHME CORP., | * | |
| | * | |
|            Defendant. | * | |
| | * | |
| Case No. 05-3700. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* NO. 7 FOR ORDER EXCLUDING THE FRIES LETTER

      Defendant Merck Sharp & Dohme Corp. ("Merck") hereby moves the Court to exclude evidence of or argument pertaining to a January 9, 2001 letter from Dr. James Fries to Raymond Gilmartin, then Merck's CEO (the "Fries Letter" or "Letter").  (Fries Letter, attached as Ex. A.)  The Letter contains hearsay, irrelevant, prejudicial, and untrue charges that Merck employees "attacked" certain members of the scientific community.  In the Letter, Dr. Fries complains about the alleged conduct of certain Merck employees, accusing these employees of "downplaying some unusual" side effects of Vioxx and "attack[ing] those … speakers who expressed … critical opinions."  He recounts his conversations with the physicians who were allegedly "attacked."  Dr. Fries also claims to have spoken with unnamed former Merck employees who, according to him, confirmed these incidents.

1009098v.1

The allegations contained in the Fries Letter are inadmissible hearsay with no conceivable relevance or connection to this case.  Further, admitting the Letter or any related evidence or testimony would lead to unnecessary delay.  Accordingly, the Court should exclude the Letter, as it did in the most recent personal injury trials heard by this Court, *Mason* and *Dedrick*, as well as all other evidence offered for similar purposes.

## ARGUMENT

## I.   THE COURT SHOULD EXCLUDE THE FRIES LETTER BECAUSE IT IS INADMISSIBLE HEARSAY

The Fries Letter is a textbook example of inadmissible hearsay, as it contains Dr. Fries' out-of-court statements that Plaintiff would offer for their truth.  FED. R. EVID. 801 (c).  And no exception to the hearsay rule applies.  For example, the Letter does not qualify as a record of regularly conducted activity under Federal Rule of Evidence 803(6), because it was not Dr. Fries's regular practice or duty to prepare such a document.  *See United States v. Robinson*, 700 F.2d 205, 210 (5th Cir. 1983) (finding handwritten notes inadmissible as a business record without a showing that the author regularly compiled them as part of his duties).  Indeed, Dr. Fries stated in the Letter itself that his involvement was purely "accidental."  Nor does the Fries Letter meet the trustworthiness requirement of Rule 803(6).  To the contrary, it merely recounts what other physicians, many of whom are unidentified, related to Dr. Fries.  *See Meder v. Everest & Jennings, Inc.*, 637 F.2d 1182, 1187 n.6 (8th Cir. 1981) (under the business record exception, where "there is a lack of evidence of the source of the testimony, it is inherently untrustworthy and must be kept out").  Further, because Dr. Fries merely repeats what other individuals purportedly told him, much of the Letter is also inadmissible hearsay within hearsay. FED. R. EVID. 805; *see also Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (explaining that a summary of complaints "amounts to nothing more than a summary of

2

allegations by others which constitute hearsay"); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) (finding hospital records inadmissible because patient's statements in records "must fall within another hearsay exception to be admissible").

Because the Fries Letter is nothing more than a summary of unsubstantiated allegations made by third parties, it and any related testimony or evidence are inadmissible hearsay.[1]  Thus, as it has done in prior trials, the Court should exclude the Letter and all such similar evidence.

## II.   THERE IS NO NEXUS BETWEEN PLAINTIFF'S LOUISIANA BASED CLAIMS AND THE FRIES LETTER

The Court also should exclude the Fries Letter and all other evidence purportedly showing similar misconduct by Merck employees because such evidence is completely irrelevant to any issue in this case.  *See* FED. R. EVID. 401-402.  In the Fries Letter, Dr. Fries summarizes his alleged conversations with more than eight other individuals, many of whom are unnamed, and suggests that certain physicians are concerned that Merck had understated alleged problems with Vioxx.  The Letter relays accusations that Merck employees allegedly attempted to intimidate members of the academic medical community by, for example, complaining to their academic department heads.

Even if Merck employees actually engaged in the conduct detailed in the Fries Letter, which Merck denies, there is no evidence that any of the physicians to whom this conduct was allegedly directed had any involvement with the State of Louisiana's decision to cover Vioxx prescriptions or include the drug on the Louisiana Department of Health and Hospitals ("LDHH") preferred drug list ("PDL").  Nor is there any evidence that the alleged conduct had

---

[1]     The Court should reject any attempt by Plaintiff to avoid the application of the hearsay rule by claiming that the Fries Letter should be admitted for a non-hearsay purpose.  Whether the former CEO of Merck was "on notice" of unsubstantiated, untrustworthy allegations of the kind detailed in the Letter has no logical connection with any fact issue in dispute in this case.  *See U.S. v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) ("The essential prerequisite of admissibility is relevance. . . . Implicit in [the definition of relevance] are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action.").

1009098v.1

any impact on the availability of information to the medical community at large.  For example, there is no evidence that any physician identified in the Fries Letter changed his position or findings on Vioxx because of the alleged conduct.  Thus, the Fries Letter is not probative of any issue of consequence in this case.

III.     **EVIDENCE OF ALLEGED "ATTACKS" OR SIMILAR CONDUCT BY MERCK EMPLOYEES, INCLUDING THE FRIES LETTER, SHOULD BE EXCLUDED BECAUSE ITS ADMISSION WOULD CAUSE UNDUE DELAY**

Moreover, admitting the Fries Letter and related evidence would result in an undue delay and a waste of judicial resources.  Dr. Fries identifies in his Letter eight investigators who allegedly experienced some form of pressure by Merck employees as a result of a "perceived anti-Merck bias."  If the Letter or related evidence were put into evidence, Merck would be entitled to call rebuttal witnesses to refute that charge, resulting in a distracting "trial within a trial."  That would lead to a series of evidentiary presentations and mini-trials, wasting the litigants' and the Court's time and resources.  *See, e.g., Kelly v. Boeing Petro. Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995) (upholding exclusion of evidence based in part because "the mini-trial which would necessarily follow evidence of each and every such 'other act' would amount to needless waste of judicial resources").  For this additional reason, the Court should exclude the Fries Letter and any related evidence.

4

## CONCLUSION

For these reasons, Merck respectfully requests that the Court exclude the Fries Letter and any related evidence or testimony about alleged "attacks" by Merck employees on the scientific community.

Dated: February 26, 2010                   Respectfully submitted,

                                           /s/ Dorothy H. Wimberly
                                           Phillip A. Wittman, 13625
                                           Dorothy H. Wimberly, 18509
                                           STONE PIGMAN WALTHER
                                              WITTMANN LLC
                                           546 Carondelet Street
                                           New Orleans, LA 70130
                                           Phone: (504) 581-3200
                                           Fax:    (504) 581-3361

1009098v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Memorandum in Support of Motion For An Order Excluding The Fries Letter has been served on Liaison Counsel by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Plaintiff, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 26th day of February, 2010.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1009098v.1