UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX <br>    Products Liability Litigation <br><br> This Document Relates to: <br><br>    STATE OF LOUISIANA, *ex rel.* JAMES D. <br>    CALDWELL, JR., Attorney General, <br><br>                 Plaintiff, <br><br>    versus <br><br>    MERCK SHARP & DOHME CORP., <br><br>                 Defendant. <br><br> Case No. 05-3700. | MDL No. 1657 <br><br> SECTION L <br><br> JUDGE ELDON E. FALLON <br><br> MAGISTRATE JUDGE KNOWLES |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* NO. 9 TO EXCLUDE EVIDENCE OF AND REFERENCE TO POST-MARKETING ADVERSE EVENT REPORTS**

1009101v.1

**TABLE OF CONTENTS**

                                                         **Page**

INTRODUCTION .................................................................................................... 1

      I.     ADVERSE EVENT REPORTS ARE NOT RELIABLE AS EVIDENCE OF CAUSATION ............................................................ 2

            A.     The FDA Regards Adverse Event Reports as Unreliable Evidence of Causation ................................................................ 2

            B.     Courts Regard Adverse Event Reports as Unreliable Evidence of Causation ................................................................ 5

      II.    ADVERSE EVENT REPORTS MUST BE EXCLUDED AS HEARSAY ................................................................................................. 7

      III.   ADVERSE EVENT REPORTS AND TALLIES OF ADVERSE EVENT REPORTS ARE INADMISSIBLE AS EVIDENCE OF NOTICE TO MERCK .......................................................................... 10

      IV.   ADVERSE EVENT REPORTS ARE NOT A PROPER OR RELIABLE BASIS FOR EXPERT OPINION ..................................... 12

      V.    ADMISSION OF ADVERSE EVENT REPORTS OR TESTIMONY ABOUT SUCH REPORTS WOULD DELAY THE TRIAL ............................................................................................... 13

CONCLUSION ...................................................................................................... 13

1009101v.1

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Allison v. McGhan Med. Corp.*,
  184 F.3d 1300 (11th Cir. 1999) ............................................................................... 13

*Brumbaugh v. Sandoz Pharm. Corp.*,
  77 F. Supp. 2d 1153 (D. Mont. 1999) ..................................................................... 12

*Casey v. Ohio Med. Prods.*,
  877 F. Supp. 1380 (N.D. Cal. 1995) .................................................................... 5, 11

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................................ 12

*DeLuca v. Merrell Dow Pharms., Inc.*,
  791 F. Supp. 1042 (D.N.J. 1992) .......................................................................... 9, 12

*Fowler v. Firestone Tire & Rubber Co.*,
  92 F.R.D. 1 (N.D. Miss. 1980) ................................................................................ 10

*Hagaman v. Merrell Dow Pharms., Inc.*,
  No. 84-2202-S, 1987 WL 342949 (D. Kan. June 26, 1987) ......................... 3, 5, 6, 11

*Haggerty v. Upjohn Co.*,
  950 F. Supp. 1160 (S.D. Fla. 1996) ...................................................................... 5, 12

*Hall v. Baxter Healthcare Corp.*,
  947 F. Supp. 1387 (D. Or. 1996) ............................................................................. 13

*In re Baycol Prods. Litig.*,
  495 F. Supp. 2d 977 (D. Minn. 2007) ..................................................................... 11

*In re Breast Implant Litig.*,
  11 F. Supp. 2d 1217 (D. Colo. 1998) ...................................................................... 13

*In re Carter-Wallace, Inc., Sec. Litig.*,
  220 F.3d 36 (2d Cir. 2000) ........................................................................................ 6

*Johnson v. Ford Motor Co.*,
  988 F.2d 573 (5th Cir. 1993) ..................................................................................... 7

*Matthews v. Ashland Chem., Inc.*,
  770 F.2d 1303 (5th Cir. 1985) ................................................................................. 10

1009101v.1

*McClain v. Metabolife Int'l, Inc.*,
   401 F.3d 1233 (11th Cir. 2005) .................................................................................. 5, 12

*Muzzey v. Kerr-McGee Chem. Corp.*,
   921 F. Supp 511 (N.D. Ill. 1996) ...................................................................................... 13

*New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
   537 F.3d 35 (1st Cir. 2008) .............................................................................................. 11

*Rock v. Huffco Gas & Oil Co.*,
   922 F.2d 272 (5th Cir. 1991) ............................................................................................. 8

*Ryman v. Sec'y of Dept. of Health and Human Servs.*,
   65 Fed. Cl. 35 (2005) ........................................................................................................ 5

*Saari v. Merck & Co.*,
   961 F. Supp. 387 (N.D.N.Y. 1997) .................................................................................... 7

*Siharath v. Sandoz Pharms. Corp.*,
   131 F. Supp. 2d 1347 (N.D. Ga. 2001) ........................................................................ 5, 6

*Smith v. Isuzu Motors, Ltd.*,
   137 F.3d 859 (5th Cir. 1998) ........................................................................................... 10

*Swallow v. Emergency Med. of Idaho, P.A.*,
   67 P.3d 68 (Idaho 2003) .................................................................................................... 6

*Toole v. McClintock*,
   999 F.2d 1430 (11th Cir. 1993) ....................................................................................... 10

*United States v. Pazsint*,
   703 F.2d 420 (9th Cir. 1983) ............................................................................................. 9

*United States v. Young Bros., Inc.*,
   728 F.2d 682 (5th Cir. 1984) ............................................................................................. 7

*Wade-Greaux v. Whitehall Labs., Inc.*,
   874 F. Supp. 1441 (D.V.I. 1994) ..................................................................................... 13

*Weir v. Crown Equip. Corp.*,
   217 F.3d 453 (7th Cir., 2000) ............................................................................................ 7

*Wilson v. Zapata Off-Shore Co.*,
   939 F.2d 260 (5th Cir. 1991) ............................................................................................. 8

## Regulations

Center for Drug Evaluation and Research, Food and Drug Administration, *CDER 2002 Report to the Nation: Improving Public Health Through Human Drugs* ("*2002 CDER Report*") (May 12, 2003) ............................................................................... 3

Food and Drug Administration, *Drugs: Adverse Event Reporting System (AERS)* ("*AERs System*"), *available at* http:www.fda.gov/Drugs/ GuidanceComplianceRegulatoryInformation/ Surveillance/AdverseDrugEffects/ default.htm ........................................................... 3, 4

Office of Epidemiology and Biostatistics, Food and Drug Administration, *Annual Adverse Drug Experience Report: 1996* (Oct. 30, 1997) ("*Annual ADE Rpt.: 1996*") ............................................................................................................................. 4, 11

## Rules

Fed. R. Evid. 401 ............................................................................................................... 6

Fed. R. Evid. 402 ........................................................................................................... 2, 6

Fed. R. Evid. 403 ............................................................................................................. 13

Fed. R. Evid. 703 ............................................................................................................. 12

Fed. R. Evid. 801 ............................................................................................................... 7

Fed. R. Evid. 802 ............................................................................................................... 7

Fed. R. Evid. 803 ............................................................................................................. 10

Fed. R. Evid. 803(4) .......................................................................................................... 9

Fed. R. Evid. 803(6) ...................................................................................................... 7, 8

Fed. R. Evid. 803(8) ..................................................................................................... 9, 10

## Treatises

21 C.F.R. § 314.80(a) ........................................................................................................ 2

21 C.F.R. § 314.80(c) ..................................................................................................... 2, 9

21 C.F.R. § 314.80(c)(1)(i) ............................................................................................... 2

21 C.F.R. § 314.80(c)(2) .................................................................................................... 2

21 C.F.R. § 314.80(k) ........................................................................................................ 4

1009101v.1

## **INTRODUCTION**

Defendant Merck Sharp & Dohme Corp. ("Merck") anticipates that Plaintiff will attempt to introduce evidence of and/or testimony about postmarketing adverse event reports ("AERs") in an effort to establish Vioxx's alleged cardiovascular risks or to prove that Merck had notice of the alleged risks prior to its voluntary withdrawal of Vioxx from the marketplace in September 2004. Federal regulations require pharmaceutical manufacturers to submit periodical reports to the Food and Drug Administration ("FDA") containing information they have received about "adverse drug experiences" suffered by individuals using their drugs -- regardless of whether there is any evidence that the drug actually caused the adverse health event. The information that triggers this obligation to report comes from a variety of unregulated sources: individual patients, caretakers, health care providers, and attorneys actively involved in pharmaceutical litigation. In addition, some of these individuals voluntarily report adverse events directly to the FDA. Due to their diverse sources and the unverified nature of the information they contain, postmarketing adverse event reports are highly unreliable, as the FDA itself has cautioned.

Merck therefore respectfully requests that, in accordance with the overwhelming weight of authority, the Court (1) exclude all evidence of and references to postmarketing adverse event reports because they are unreliable and irrelevant hearsay evidence; (2) exclude references to tallies of the numbers of adverse event reports as evidence of notice to Merck of Vioxx's alleged cardiovascular risks; and (3) bar expert testimony based on such adverse event reports.[1]

---

[1] The Court has previously denied Merck's motions *in limine* to exclude adverse event reports, finding the motions "too broad and vague." (*See, e.g., Plunkett v. Merck,* Case No. 05-4046, 11/20/05

1

I.  **ADVERSE EVENT REPORTS ARE NOT RELIABLE AS EVIDENCE OF CAUSATION.**

Plaintiff may seek to offer adverse event reports, or testimony about such reports, as proof that Vioxx caused a variety of side effects, including adverse cardiovascular events. It is widely recognized, however, that adverse event reports are not reliable evidence of causation and are not properly admissible for this purpose. All evidence of and testimony about adverse event reports offered to prove causation should therefore be excluded as irrelevant. Fed. R. Evid. 402.

A.  **The FDA Regards Adverse Event Reports as Unreliable Evidence of Causation.**

FDA regulations define an adverse drug experience as "[a]ny adverse event associated with the use of a drug in humans, *whether or not considered drug related. . . .*" 21 C.F.R. § 314.80(a) (emphasis added). The FDA requires a prescription drug manufacturer to submit to the FDA an adverse event report ("AER")[2] any time it receives information that a patient taking one of its drugs suffered an "adverse drug experience." 21 C.F.R. § 314.80(c). Reports are submitted to the FDA periodically (21 C.F.R. § 314.80(c)(2)), but when the "adverse drug experience " is "both serious and unexpected," as defined by the regulations, an "Alert report" must be submitted no later than 15 days after initial receipt of the information by the manufacturer. 21 C.F.R. § 314.80(c)(1)(i). Such adverse event reports submitted to the FDA by pharmaceutical manufacturers are based on information voluntarily submitted to the manufacturer by physicians, other healthcare professionals or individual patients and caretakers. The FDA

---

Order re Merck's Motions in *Limine* at 5.) Merck has attempted to cure any vagueness or lack of specificity in its prior motions. Given the FDA's own commentary on this topic, as well as the considerable body of case law, Merck requests that the court revisit this issue in the context of this economic injury case.

[2]    Adverse event reports are also referred to as "adverse experience reports," "drug experience reports," "adverse drug experience reports," "adverse drug event reports," and "adverse reaction reports."

2

also receives reports of suspected adverse drug experiences submitted directly to the Agency by individuals, most often healthcare practitioners. *See* Food and Drug Administration, *Drugs: Adverse Event Reporting System (AERS)* ("*AERs System*"), *available at* http:www.fda.gov/Drugs/ GuidanceComplianceRegulatoryInformation/ Surveillance/AdverseDrugEffects/ default.htm (*last accessed* 2/21/2010); Center for Drug Evaluation and Research, Food and Drug Administration, *CDER 2002 Report to the Nation: Improving Public Health Through Human Drugs* ("*2002 CDER Report*") (May 12, 2003), attached as Ex. A. Reported adverse experiences range from life-threatening reactions observed first-hand by a treating physician, to a headache reported by individual patient, to an unproven allegation in a lawsuit that the manufacturer diligently reports to the FDA even while contesting the suit.

Adverse event reports submitted to the FDA -- whether by a manufacturer or an individual -- have not been verified as accurate accounts of the conditions or events they report. By their very nature, they are anecdotal evidence from persons who have no accountability for what they say. The individuals who submit the information to pharmaceutical manufacturers or the FDA are not under oath and cannot be cross-examined. In addition, many reports of adverse events are prompted by threatened or existing litigation. *See Hagaman v. Merrell Dow Pharms., Inc.,* No. 84-2202-S, 1987 WL 342949, at *8 (D. Kan. June 26, 1987).

Not surprisingly, then, FDA regulations expressly caution against drawing any inference of causation from AERs:

> A report or information submitted by an applicant under this section (and any release by FDA of that report or information) *does not necessarily reflect a conclusion by the applicant or FDA that the report*

3

> *or information constitutes an admission that the drug caused or contributed to an adverse effect.*

21 C.F.R. § 314.80(k) (emphasis added). The FDA itself has reiterated this caution:

> *For any given [AER], there is no certainty that the suspected drug caused the ADE [adverse drug experience].* This is because physicians and consumers are encouraged to report all suspected ADEs, not just those that are already known to be caused by the drug. The adverse event may have been related to an underlying disease for which the drug was given, to other concomitant drugs, or may have occurred by chance at the same time the suspect drug was administered.

Office of Epidemiology and Biostatistics, Food and Drug Administration, *Annual Adverse Drug Experience Report: 1996* (Oct. 30, 1997) ("*Annual ADE Rpt.: 1996*"), attached as Ex. B, at 1. The FDA currently emphasizes the limitations of AERs on its website, noting that "FDA does not require that a causal relationship between a product and event be proven, and reports do not always contain enough detail to properly evaluate an event." *AERs System*.

The FDA also cautions against drawing any inference of causation from a count of the number of adverse drug reports associated with a given drug.

> Accumulated [AERs] *may not be used to calculate incidences or estimates of drug risk.* Numbers from these data should be carefully interpreted as reporting rates and not occurrence or incidence rates.

*Annual ADE Rpt.: 1996* at 2; *see also AERS System* ("AERs cannot be used to calculate the incidence of an adverse event in the U.S. population."). This is because many factors affect whether a suspected adverse event is reported, including publicity about an event.[3] *AERs System*.

---

[3] Merck does not intend to suggest by this motion that adverse event reports serve no legitimate purpose. For example, the FDA uses such reports in connection with its ongoing oversight of FDA-approved products that are on the market. (*See AERs System*.) But the use of such reports within the FDA regulatory framework does not mean that they are sufficiently reliable or complete to meet the standards of admissibility in a judicial proceeding. As courts have observed, the FDA reporting standards are "much lower than is required in a court of law." *Siharath v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1370

4

### B. Courts Regard Adverse Event Reports as Unreliable Evidence of Causation.

Like the FDA, federal courts across the country have consistently acknowledged that adverse event reports are inherently unreliable. The Eleventh Circuit has described adverse event reports as "reflect[ing] complaints called in by product consumers without any medical controls or scientific assessment." *McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1250 (11th Cir. 2005). Not only may the reports be filed by anyone, courts note, but the data contained within them is unverified and is not collected or analyzed according to scientific methods. *See Casey v. Ohio Med. Prods.,* 877 F. Supp. 1380, 1385 (N.D. Cal. 1995) (AERs are irrelevant as they "simply describe[] reported phenomena without comparison to the rate at which the phenomena occur in the general population or in a defined control group; do not isolate and exclude potentially alternative causes; and do not investigate or explain the mechanism of causation"); *Ryman v. Sec'y of Dept. of Health and Human Servs.,* 65 Fed. Cl. 35, 39-40, 43 (2005) (affirming special master's conclusion that adverse event report evidence "is not reliable . . . . These reports can be filed by anyone."); *Hagaman,* 1987 WL 342949, at *8 ("[T]here exists no procedure to ensure the accuracy of the information provided in [AERs]."); *see also Haggerty v. Upjohn Co.,* 950 F. Supp. 1160, 1164 (S.D. Fla. 1996) (expert admitted drug experience reports contained "significant but unquantifiable error" and were affected by bias and methodological flaws).

More specifically, courts have held that adverse event reports are not proper evidence of medical causation, particularly since the generation of such reports -- by pharmaceutical manufacturers or the FDA -- does *not* depend upon proof or even

---

(N.D. Ga. 2001), *aff'd. sub nom.*

5

1009101v.1

consideration of whether a drug *caused* the reported adverse health event. *See, e.g., In re Carter-Wallace, Inc., Sec. Litig.,* 220 F.3d 36, 41 (2d Cir. 2000) (noting that adverse medical reports from the FDA do not establish a causal link between a drug and adverse side effects because the FDA creates the adverse event report "regardless of whether or not the illness had anything to do with [the drug]."); *Swallow v. Emergency Med. of Idaho, P.A.,* 67 P.3d 68, 73-74 (Idaho 2003) (holding that the lower court did not abuse its discretion in refusing to admit adverse reaction reports because they do not provide scientific evidence of causation, as the FDA regulations "clearly indicate that the reporting requirement is purely associational; no causal relationship need be proved and reports must be submitted whether or not the noted reaction is considered drug related").

Among other problems, AERs do not provide information sufficient to rule out potential causes of the reported injuries other than ingestion of the medication; they do not explain the mechanism for causation; and they do not have adequate controls. *See, e.g., Siharath,* 131 F. Supp. 2d at 1359 (defendant's adverse event reports for Parlodel excluded because "case reports in general do not satisfy the requirements of the scientific method sufficient to establish general causation"). There simply is no way to ensure the accuracy of the information provided in AERs. *See Hagaman,* 1987 WL 342949, at *8.

Because adverse event reports are unreliable evidence of causation, they are not admissible to show that Vioxx created adverse cardiovascular events in those patients who took the drug. Thus evidence of and testimony about AERs offered to prove causation must be excluded as irrelevant under Rules 401 and 402.

## II.     ADVERSE EVENT REPORTS MUST BE EXCLUDED AS HEARSAY.

Adverse event reports are also inadmissible under Federal Rule of Evidence 802 as they are indisputably hearsay; by definition, they are out-of-court statements submitted

6

for the truth of the matter asserted. *See* Fed. R. Evid. 801, 802. Moreover, AERs may contain multiple levels of hearsay. They obviously contain the hearsay statements of the individuals -- the pharmaceutical manufacturer's employees, physicians, or consumers -- who prepared the reports. But when the person preparing the report does not have firsthand knowledge of the adverse health event or its symptoms, as is almost always the case when the report is prepared by a manufacturer, the reports themselves will be second- or third-hand accounts. *See Saari v. Merck & Co.,* 961 F. Supp. 387, 398 (N.D.N.Y. 1997) (physician's "report to the FDA was simply a report of what plaintiff told him about what she believed was her reaction to the vaccine").[4] As the proponent of such evidence, Plaintiff bears the burden of proving that adverse event reports it seeks to introduce fall within a recognized exception to the hearsay rule.[5] Plaintiff cannot carry this burden, however, because adverse event reports do not come within the scope of the business records or public records exceptions -- the only colorable exceptions on which Plaintiff could possibly rely. Fed. R. Evid. 802.

Federal Rule of Evidence 803(6), the "business records exception," exempts from the hearsay rule

> [a] memorandum, report, record, or data compilation, in any form, of
> acts, events, conditions, opinions, or diagnoses, made at or near the
> time by, or from information transmitted by, a person with knowledge,
> if kept in the course of a regularly conducted business activity, and if it
> was the regular practice of that business activity to make the
> memorandum, report, record or data compilation, all as shown by the
> testimony of the custodian or other qualified witness, or by certification

---

[4] *Cf. Johnson v. Ford Motor Co.,* 988 F.2d 573, 579 (5th Cir. 1993) (summary of complaints "amounts to nothing more than a summary of allegations by others which constitute hearsay"); *Weir v. Crown Equip. Corp.,* 217 F.3d 453, 458 (7th Cir., 2000) ("the accident reports were of all kinds and were not created exclusively by [the defendant] but rather collected from a variety of sources. The reports were not uniform and contained different levels of detail . . . [t]here was an obvious hearsay problem under Fed. R. Evid. 802.").

[5] *See, e.g., United States v. Young Bros., Inc.,* 728 F.2d 682, 693-94 (5th Cir. 1984) (explaining that party must lay foundation for admission of hearsay on the basis of the business records exception).

> that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6). Plaintiff cannot establish that postmarketing adverse event reports are business records within the meaning of Rule 803(6) for multiple reasons. First, Plaintiff cannot show that third parties who supply the data on which AERs are based kept such data as part of a regularly conducted business activity. However, "each participant in the making of the record must be acting in his normal course of business before the record becomes admissible under the Rule 803(6) exception." *Rock v. Huffco Gas & Oil Co.,* 922 F.2d 272, 279 (5th Cir. 1991). As the Fifth Circuit has explained, "Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person. If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6). . . . However, if the source of the information is an outsider . . . Rule 803(6) does not, by itself, permit the admission of the business record." *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) (internal citation omitted). In *Rock,* for instance, the court held that medical records are not admissible under the business records exception because patients are "not acting in the usual course of [their] business" when they consult with their doctors.[6] *Rock,* 922 F.2d at 279; *see also Wilson,* 939 F.2d at 271 (hospital records inadmissible because patient's statements in records "must fall within another hearsay exception to be admissible"); *United States v. Pazsint*, 703 F.2d 420, 424

---

[6] In some instances, patient statements might come within other exceptions to the hearsay rule, as "[s]tatements made for purposes of medical diagnosis or treatment" (Fed. R. Evid. 803(4)) or statements of "then existing . . . physical condition." Fed. R. Evid. 803(3). But AERs in nearly all cases are not sufficiently detailed to determine whether a hearsay exception would apply to the patient statements reported.

(9th Cir. 1983) (tape-recorded emergency calls were not admissible under the business records exception because witnesses who gave the recorded statements were under no business duty to report).

Second, adverse event reports, even if they otherwise qualify as business records, are not sufficiently trustworthy to be admissible. As discussed above, courts have routinely held that the reports lack indicia of reliability. *See, e.g., DeLuca v. Merrell Dow Pharms., Inc.*, 791 F. Supp. 1042, 1050 (D.N.J. 1992) ("[E]ven if ADR [Adverse Drug Reaction Report] or DER [Drug Experience Report] information were accurately reported, ADRs have inherent biases as they are second- or third-hand reports, are affected by medical or mass media attention, and are subject to other distortions.").

Similarly, adverse event reports are not admissible under Federal Rule of Evidence 803(8) as public records or reports. The "public records exception" applies to

> [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . or (C) . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803(8).

Adverse event reports, whether submitted voluntarily by individuals or by a pharmaceutical manufacturer pursuant to 21 C.F.R. § 314.80(c), are not writings made by a public office or agency; nor do they reflect an act performed or observed by a public official. They also do not set forth "factual findings resulting from an investigation." As detailed above, the FDA expressly cautions against drawing any inference of causation

9

from AERs and does not officially approve or adopt AERs as agency findings.[7]

Moreover, even if they otherwise met the requirements of Rule 803(8), adverse event reports would still be inadmissible because, again, they do not possess the requisite reliability to be deemed trustworthy evidence.[8]  Finally, adverse event reports are not admissible as public records because, as noted above, they contain hearsay within hearsay, and Plaintiff cannot show that second-hand statements in AERs fall within an exception provided in Rule 803.

### III.  ADVERSE EVENT REPORTS AND TALLIES OF ADVERSE EVENT REPORTS ARE INADMISSIBLE AS EVIDENCE OF NOTICE TO MERCK.

Plaintiff may attempt to skirt the hearsay prohibition by arguing that testimony about adverse event reports is admissible as evidence of notice to Merck of Vioxx's alleged cardiovascular risks.  Such an argument is without merit.  Because adverse event reports are not sufficiently reliable to show any causal link between Vioxx and the reported event, as explained above, the reports could not possibly have provided notice to Merck that such a causal link exists.

Nor may Plaintiff properly rely upon tallies of the total number of adverse event reports as evidence of notice.  The FDA has strongly cautioned against employing adverse event reports to draw conclusions about the rate of health problems or the degree of risk associated with a given drug:

---

[7] *Cf. Smith v. Isuzu Motors, Ltd.*, 137 F.3d 859, 861-62 (5th Cir. 1998) (agency staff memos relating to automobile safety standards did not constitute "factual findings" of the National Highway Transportation Safety Administration Agency); *Toole v. McClintock*, 999 F.2d 1430, 1434-35 (11th Cir. 1993) (holding that admission of preliminary FDA report was an abuse of discretion because it was not final).

[8] *See Matthews v. Ashland Chem., Inc.*, 770 F.2d 1303, 1310 (5th Cir. 1985) (excluding firefighter's report on the cause of the fire because the author's lack of qualifications and less than thorough investigation made the report untrustworthy); *see also Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1, 2 (N.D. Miss. 1980) (NHTSA and congressional reports lacked "indicia of reliability" necessary to qualify as 803(8)(C) hearsay exception).

> Accumulated [AERs] may not be used to calculate incidences or estimates of drug risk. Numbers from these data should be carefully interpreted as reporting rates and *not occurrence or incidence rates.*

*See Annual Adverse Drug Experience Rpt.: 1996* at 2 (emphasis added). There are good reasons for the FDA's caution. As one federal court has pointed out, adverse event reports "simply describe[] reported phenomena without comparison to the rate at which the phenomena occur in the general population or in a defined control group." *Casey,* 877 F. Supp. at 1385; *see also In re Baycol Prods. Litig.,* 495 F. Supp. 2d 977, 987 (D. Minn. 2007). In addition, a single adverse event may be reported multiple times, sometimes by different parties, rendering even the tally of such reports unreliable. *New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.,* 537 F.3d 35, 53 n.19 (1st Cir. 2008) ("[P]laintiffs appear to count each reported adverse event as a new adverse event, even if some of the reports were follow-up reports to already-reported adverse events. This resulted in higher counts of adverse events, since one adverse event involving one patient was counted multiple times." (citations omitted).); *see also Hagaman,* 1987 WL 342949, at *8.

In sum, adverse event reports and tallies of the number of adverse event reports are no more relevant to the issue of Merck's notice of Vioxx's alleged risks than they are to the issue of medical causation. Thus any argument that AERs are admissible as evidence of notice is insufficient to overcome the hearsay rule.

### IV. ADVERSE EVENT REPORTS ARE NOT A PROPER OR RELIABLE BASIS FOR EXPERT OPINION.

Federal Rule of Evidence 703 provides that expert opinion must be based upon "facts or data" that are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. And under

11

*Daubert,* the Court must determine whether the reasoning or methodology underlying expert testimony is scientifically valid. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592 (1993).

Expert opinion based on adverse event reports does not meet these standards. The Eleventh Circuit, for example, observed that an expert's reliance on the FDA's adverse event reports "shows that he relied on data that lacks the indicia of reliability," noting that "[u]ncontrolled anecdotal information offers one of the least reliable sources to justify opinions about both general and individual causation." *McClain,* 401 F.3d at 1250. Indeed, courts repeatedly conclude that adverse event reports cannot serve as the basis of expert opinion because they are merely anecdotal, lack controls and scientific assessment, and cannot establish causation. *See, e.g., Brumbaugh v. Sandoz Pharm. Corp.,* 77 F. Supp. 2d 1153, 1156 (D. Mont. 1999) ("[Adverse Drug Experiences] are compilations of occurrences, and have been rejected as reliable scientific evidence supporting expert opinion so as to meet the requirements set forth in *Daubert.*" (citations omitted); *DeLuca,* 791 F. Supp. at 1057 (to the extent an expert used FDA adverse drug reaction reports as the basis for his conclusion that Bendectin is a teratogen, "the methodology produces inaccurate and unreliable results because such data are unreliable for determining causation"), *aff'd,* 6 F.3d 778 (3d Cir. 1993), *cert. denied,* 510 U.S. 1044 (1994); *Haggerty,* 950 F. Supp. at 1164 (rejecting expert's testimony premised on anecdotal reports of adverse medical events because "according to the FDA, [such reports provide] no certainty that the suspect drug caused the reaction"), *aff'd,* 158 F.3d 588 (11th Cir. 1988); *Wade-Greaux v. Whitehall Labs., Inc.,* 874 F. Supp. 1441, 1481 (D.V.I. 1994) (physicians cannot base opinions that Primatene caused birth defects on Drug Experience

12

Reports that "represent anecdotal information of chance associations, do not purport to assess cause and effect and have no epidemiological significance").[9]

Because adverse event reports are an unscientific and unsound basis for expert opinion, Court must exclude all discussion of such reports by Plaintiff's experts.

V. **ADMISSION OF ADVERSE EVENT REPORTS OR TESIMONY ABOUT SUCH REPORTS WOULD DELAY THE TRIAL.**

Even if the Court concludes that adverse event reports are admissible, they should still be excluded under Federal Rule of Evidence 403.  Any marginal value of the reports is considerably outweighed by the likelihood that admission of AERs or testimony about them will delay the trial.  Merck would be compelled and entitled to rebut the significance of the reports with testimony about the regulations governing them, as well as the methods by which they are compiled.

### CONCLUSION

For the foregoing reasons, Merck respectfully requests that the Court (1) exclude all evidence of and references to postmarketing adverse event reports; (2) exclude references to tallies of the numbers of adverse event reports as evidence of notice to Merck of Vioxx's alleged cardiovascular risks; and (3) bar expert testimony based on such adverse event reports.

---

[9] The adverse event reports generated by pharmaceutical manufacturers and the FDA are a species of case reports, which "are universally regarded as an insufficient basis for a conclusion regarding causation because case reports lack controls." *Hall v. Baxter Healthcare Corp.,* 947 F. Supp. 1387, 1411 (D. Or. 1996); *see also Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1316 (11th Cir. 1999) (affirming trial court ruling that expert's reliance on case studies constituted "improper methodology"); *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1228 (D. Colo. 1998) (case reports noting symptoms or signs of a new atypical syndrome allegedly associated with breast implants "cannot be a scientifically reliable basis for an opinion on causation"); *Muzzey v. Kerr-McGee Chem. Corp.*, 921 F. Supp 511, 519 (N.D. Ill. 1996) (physicians not allowed to testify in reliance on case studies because such studies are "not reliable bases to form a scientific opinion about a causal link" between exposure to a drug and alleged injury).

13

Dated:  February 26, 2010                                  Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum In Support of Motion to Exclude Evidence of and Reference to Post-Marketing Adverse Event Reports has been served on Liaison Counsel by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Plaintiff, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 26th day of February, 2010.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel