UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX <br>     Products Liability Litigation <br><br> This Document Relates to: <br><br> STATE OF LOUISIANA, *ex rel.* JAMES D. CALDWELL, JR., Attorney General, <br><br>    Plaintiff, <br><br>    versus <br><br> MERCK SHARP & DOHME CORP., <br><br>    Defendant. <br><br> Case No. 05-3700. | MDL No. 1657 <br><br> SECTION L <br><br> JUDGE ELDON E. FALLON <br><br> MAGISTRATE JUDGE KNOWLES |

**MERCK SHARP & DOHME CORP.'S OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE, OR IN THE ALTERNATIVE TO
EXCLUDE, THE EXPERT REPORT AND TESTIMONY OF STEVEN WIGGINS**

Defendant Merck Sharp & Dohme Corp. ("Merck") respectfully files this Opposition to Plaintiff State of Louisiana's Motion to Strike, or in the Alternative to Exclude, the Expert Report and Testimony of Steven Wiggins ("Pl.'s Mot."). Plaintiff moves this Court to strike or exclude the report and testimony of Dr. Wiggins, Merck's expert economist, not on any substantive grounds (*e.g.*, methodology, reliability, or relevance), but rather on the unfounded claim that Dr. Wiggins failed to produce interim data and that Dr. Wiggins used assistants at his consulting firm to perform background work. Plaintiff's motion then conclusorily argues that Dr. Wiggins's testimony fails to satisfy the standard for admissible testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). Plaintiff's motion

1

1009312v.1

misrepresents both the facts and the standard for admissible testimony set forth in *Daubert* and its progeny. Accordingly, this Court should deny Plaintiff's motion.

I.  **BACKGROUND**

Plaintiff sued Merck alleging that Merck made misrepresentations that caused the "citizens of Louisiana, the State of Louisiana, and/or DHH" to spend "millions of dollars to purchase Vioxx for persons under the Louisiana Medicaid Program." (Second Am. Compl. ¶ 193.) Plaintiff alleged several theories of liability (*see id.* ¶¶ 179-215) and retained Dr. Jeffrey Harris to opine on potential damages sustained by Plaintiff.[1] Merck retained Dr. Wiggins "to investigate damages issues and address the analyses, methodologies, and opinions of Plaintiff's economic expert, Dr. Jeffrey Harris." (Expert Report of Steven N. Wiggins ("Wiggins Rep.") at 2 (attached as Ex. A).) Dr. Wiggins graduated from the Massachusetts Institute of Technology in 1979 and has been a professor of economics at Texas A&M University ever since. (*Id.* at 1.) His fields of specialization include Industrial Organization and Econometrics and he has conducted research in the pharmaceutical industry for more than thirty years. (*Id.*) Dr. Wiggins has been qualified to testify in a variety of forums regarding economics issues, including in matters involving the pharmaceutical industry. (*Id.* at 2.)

Plaintiff now moves to strike or exclude Dr. Wiggins's testimony, but does not attack the methodology, relevance, or reliability of Dr. Wiggins's work. Rather, in support of its motion, Plaintiff advances two arguments. First, Plaintiff complains that Merck produced to Plaintiff Dr. Wiggins's back-up data 24 hours after (rather than the day) his report was produced. Plaintiff's claims of prejudice are entirely of its own making and, in any event, are totally unfounded.

---

[1] As Merck explained in its Motion for Summary Judgment, Plaintiff's "damages" expert, Dr. Harris, actually did not provide a damages opinion at all. Instead, he simply performed a series of calculations at the direction of Plaintiff's counsel that he admitted were not a measure of damages in this case. (*See* Defendant's Memorandum of Law in Support of its Motion for Summary Judgment at 33, quoting Dr. Harris's acknowledgment that his report does not provide an opinion as to economic harm to the State of Louisiana by Merck's alleged wrongdoing.)

Plaintiff did not even request Dr. Wiggins's back-up data until *after* his report was produced. Further, Plaintiff's claim that its expert, Dr. Harris, had insufficient time to analyze the data is insincere. Dr. Harris requested that his deposition take place several days before it was previously scheduled (and thereby Dr. Harris himself shortened his time to prepare a rebuttal report). In any event, Dr. Harris testified that he could have run whatever analyses he wanted on Dr. Wiggins's back-up data in a mere few hours but did not do so because of other "professional commitments." Plus, the 24 hour "delay" was harmless considering that Dr. Wiggins, unsurprisingly, relied on the same data and programs that Dr. Harris used in reaching the opinions outlined in his report. (Dep. of Steven N. Wiggins, Feb. 9, 2010 ("Wiggins Dep.") 73:22-74:8; 135:22-136:9 (attached as Ex. B).)

Second, Plaintiff claims that Dr. Wiggins's testimony should be stricken because Dr. Wiggins used staff at Charles River Associates ("CRA") to assist him in his work. Plaintiff's argument misrepresents Dr. Wiggins's testimony and does not provide a basis to exclude Dr. Wiggins's testimony under *Daubert*. Accordingly, Plaintiff's argument should be summarily rejected.

## II. ARGUMENT

Plaintiff fails to identify any sound basis to exclude the testimony of Dr. Wiggins. First, Merck has complied with Rule 26(a)(2)(B) in producing all supporting data and programs that Dr. Wiggins used to create his report. Moreover, even if Plaintiff's argument on back-up data was correct, Plaintiff was not prejudiced or harmed by any alleged one day delay in its production. Secondly, Plaintiff's argument that Dr. Wiggins's testimony is somehow unreliable because Dr. Wiggins collaborated with CRA staff members is unsupported by the evidence and by applicable law. Here, the evidence confirms that Dr. Wiggins does not fall within the

exception to the rule; he is undoubtedly qualified, his testimony is reliable, and his opinions are relevant.

### A. Merck Complied With Rule 26(a)(2)(B) In Producing Dr. Wiggins's Supporting Data And Plaintiff Was Not Harmed By The Production Of Dr. Wiggins's Data Within Twenty Four Hours Of Plaintiff's Request.

A district court has broad discretion under Rules 26 and 37 regarding the limits and manner of conducting discovery. *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1557 (9th Cir. 1994); *Williams v. Monarch Mach. Tool Co., Inc.*, 26 F.3d 228, 230 (1st Cir. 1994). In particular, the admission or exclusion of expert testimony is a matter left to the discretion of the trial court. FED. R. CIV. P. 37(c)(1); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004). Here, Plaintiff incorrectly asserts that Merck failed to comply with Rule 26(a)(2)(B). Merck complied with both the letter and spirit of Rule 26. First, Dr. Wiggins only relied on data that Plaintiff already possessed; and secondly, Merck reproduced the data immediately when it was requested. Finally, even if the Court accepts Plaintiff's argument that back-up data was produced a day tardy, such timing was harmless and Plaintiff has not been prejudiced.

#### 1. Merck complied with Rule 26(a)(2)(B) by producing Dr. Wiggins's back-up data.

Rule 26(a)(2)(B)(ii) requires an expert to produce "the data or other information considered by the witness in forming [the opinions]." FED. R. CIV. P. 26(a)(2)(B)(ii). Rule 26(a) disclosures are designed to accelerate the exchange of basic information to "help focus the discovery that is needed, and facilitate preparation for trial or settlement." FED. R. CIV. P. 26(a), advisory comm. notes (1993). The purpose of Rule 26(a)(2)(B) is to provide opposing counsel with the "essential details needed to understand and assess" the expert's conclusions. *Lava Trading Inc. v. Hartford Fire Ins. Co.*, No. 03 Civ. 7037(PKC), 2005 WL 4684238, at *7

(S.D.N.Y. Apr. 11, 2005); *see also Windom v. FM Indus., Inc.*, No. 8:00CV580, 2003 WL 21939033, at *2 (D. Neb. Aug. 12, 2003) (noting that Rule 26(a) disclosures should provide the parties "with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement").

Merck complied with its obligations under Rule 26(a)(2)(B).  First, the database from which Dr. Wiggins performed his analysis was the same database used by Dr. Harris.  There was no need to reproduce the database yet again.  Dr. Wiggins testified that the starting point for his calculations was the data and programs received from Dr. Harris.  (Wiggins Dep. at 73:22-74:8, 135:22-136:4).  As a rebuttal expert, Dr. Wiggins relied on no additional database and made only minor modifications to Dr. Harris's programs.  (*Id.* at 136:5-9.)  Indeed, these data sets originated from the State of Louisiana.  (Dep. of Jeffrey E. Harris, Jan. 29, 2010 ("Harris Dep.") 22:4-16; 23:8-12; 51:20-52:8; 54:15-55:24 (attached as Ex. C).)  Plaintiff unquestionably had all information it needed to "understand and assesses" Dr. Wiggins's conclusions.  For Plaintiff to complain that it did not have access to this data is disingenuous at best.

Plaintiff's characterization of what is required under Rule 26 is belied by its own conduct during expert discovery.  Well before Plaintiff produced Dr. Harris' report, Merck sent a written request to Plaintiff that it produce Dr. Harris' back-up material concurrently with production of his report.  Merck originally requested Plaintiff provide supporting materials for Dr. Harris's report in an October 9, 2009 discovery request.  (*See* Defendant's Second Set of Requests for Production of Documents to Plaintiffs, Request No. 1, requesting data from Plaintiff's experts.)  Merck reiterated its earlier request for production of data that formed the bases of Dr. Harris's opinions concurrently with his report.  (Ex. D, 12/9/2009 Ltr. from R. Bjork to D. Plymale.)  Five days later, Plaintiff committed to producing these materials contemporaneously with the

production of Dr. Harris's report.  (Ex. E, 12/14/2009 Ltr. from D. Plymale to R. Bjork.)  Even though this request was made weeks in advance and Plaintiff's counsel specifically agreed to do so, Plaintiff's did not produce Dr. Harris's back-up material until four days after his report was produced.[2]  If Plaintiff is correct that Rule 26 requires such data be produced concurrently with a report, then Dr. Harris's failure to do so mandates his exclusion.[3]

When it came time for Dr. Wiggins to produce his report on January 21, unlike Merck, Plaintiff had not made any request for back-up data.  Plaintiff first requested Merck produce Dr. Wiggins's programs and outputs the day following the production of Dr. Wiggins's report.  (Ex. G, 1/22/2010 email from D. Plymale to R. Bjork.)  Merck produced the majority of these outputs and programs within eight hours.  (Ex. H, 1/22/2010 email from R. Bjork to D. Plymale.)  Within twenty-four hours, Merck had produced all of the programs and outputs requested by Dr. Harris.  (Ex. I, 1/23/2010 email from R. Bjork to D. Plymale.)  Merck produced precisely the information Plaintiff requested:  the programs and output files for Merck's expert damages analysis.  (*Compare* Ex. J, 1/22/2010 email from J. Harris to D. Plymale requesting "programs or the raw output," *with* Ex. H, 1/22/2010 email from R. Bjork to D. Plymale, producing "program and output files.")

---

[2] The day after Dr. Harris produced his report without the requested back-up data, Merck again requested the back-up materials.  (Ex. F, 12/23/2009 email from R. Bjork to J. Dugan.)  Plaintiff reassured Merck that it would have the data that very same day.  (Ex. F, 12/23/2009 email from J. Dugan to R. Bjork.)  Instead, Merck received the data three days later—four days after Dr. Harris produced his report.

[3] Plaintiff's delays with regard to Dr. Harris' report go even further.  Dr. Harris' report was due on November 6 when all of Plaintiff's expert reports were due.  (Rec. Doc. No. 23897, Sept. 17, 2009 Min. Entry.)   Plaintiff received the Court's permission to delay Dr. Harris' report until December 21, ostensibly for Dr. Harris to review additional data produced by IMS, a third-party to this litigation.  (Rec. Doc. No. 26748, Nov. 5, 2009 Min. Entry.)  Despite the stated pre-production importance of this data, Dr. Harris hardly even used the data and Dr. Harris admitted during his deposition that the data was not essential to his analysis.  (Harris Dep. at 56:6-57:18.).  Given that Dr. Harris manufactured a 45 day delay in producing his report, and then waited four days to produce back-material that Merck had requested weeks earlier, it is difficult to accept Plaintiff's argument that the 24 hour wait for Dr. Wiggins's back-up data caused it some severe prejudice.

### 2. Plaintiff's allegations that Merck did not produce all the back-up materials and that Merck's production of back-up materials contains anomalies are without merit.

Plaintiff argues that Merck failed to produce all of Dr. Wiggins's reliance materials, that Merck failed to produce certain "intermediate files," and that Merck's production contains "anomalies, inconsistencies, and gaps." (Pl.'s Mot. at 1-2.) Plaintiff's allegations misrepresent the facts.

Merck produced all of the data and programs required to replicate or analyze Dr. Wiggins's work. Merck produced computer programs Dr. Wiggins used to create intermediate data sets—*precisely* the materials that Dr. Harris requested.[4] (*Compare* Ex. J, 1/22/2010 email from J. Harris to D. Plymale requesting "programs or the raw output," *with* Ex. H, 1/22/2010 email from R. Bjork to D. Plymale, producing "program and output files.") As Dr. Wiggins testified, with the computer program Merck produced to Plaintiff, the intermediate files are "easy to recreate" and because "Dr. Harris is familiar with the code . . . all he has to do is just say, 'Do it,' and he's got it." (Wiggins Dep. at 136:11-14; *see also id.* at 135:11-17.) At his deposition, Dr. Harris even acknowledged the ease with which he could have performed these calculations. (Harris Dep. at 22:4-16, 25:14-18.) Plaintiff's argument that Dr. Wiggins's opinions should be excluded because Merck produced the computer program which allowed Plaintiff to easily generate whatever interim data file it wanted, rather than producing the voluminous data files themselves, is nothing more than a red-herring.[5]

---

[4] In its motion, Plaintiff continually refers to communications about Dr. Wiggins having 10 MB of data and Merck only producing a portion of it. (Pl.'s Mot. at 1-4.) The 10 MB number was an estimate to reproduce intermediate data sets. There was and is no need or use to reproduce this intermediate data because it was not part of what Dr. Wiggins relied upon for his report, was not requested by Plaintiff or Dr. Harris, and is easily and readily replicated or printed by Dr. Harris by simply running the produced program codes on Dr. Harris's own data.

[5] Further, Merck's production did not contain "anomalies, inconsistencies, and gaps," as Plaintiff claims. Plaintiff's sole assertion on this point is that certain computer files were date stamped the day after Dr. Wiggins's report was

7

1009312v.1

> **3. Merck's production one day after the report was harmless as Plaintiff was not prejudiced by the production of Dr. Wiggins's back-up materials 24 hours after Plaintiff's request.**

Even if the Court were to find that Merck failed to timely produce information necessary to understand Dr. Wiggins's opinions (even though Dr. Wiggins's production was more timely than Dr. Harris's production), the Court should not strike Dr. Wiggins's testimony. There was no harm or prejudice to Plaintiff. Rule 37 addresses appropriate sanctions for failure to disclose information under Rule 26(a) and the Rule provides that a sanction is inappropriate where a delayed disclosure is harmless. FED. R. CIV. P. 37(c); *see also, e.g.*, *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004); *Alexander v. United States*, No. EP-02-CA-301-PRM, 2003 U.S. Dist. LEXIS 27598, at *4-*5 (W.D. Tex. May 6, 2003) ("Where the failure to make a timely disclosure is harmless, the evidence in question need not be excluded."). Plaintiff must establish that it was harmed on account of Merck's alleged failure to produce materials to Plaintiff. *See Primrose Operating Co.*, 382 F.3d at 563-64 (noting that the determination of whether delay is harmless involves four factors: (1) the importance of the evidence, (2) the prejudice to the opposing party of including the evidence, (3) the possibility of curing such prejudice by granting continuance, and (4) the explanation for the party's failure to disclose). Plaintiff cannot show that it has been prejudiced here.

As detailed above, Merck produced these materials within 24 hours of Plaintiff's request. Further, any time constraint that prevented Dr. Harris from performing desired tasks was caused by Plaintiff's and Dr. Harris's request to move up Dr. Harris's deposition for an earlier date to accommodate Dr. Harris's teaching schedule and his other professional obligations. This time constraint prevented him from re-reviewing the data and programs, an exercise he admits he

---

submitted. But the reason is as clear as it is obvious: the computer files were date stamped on the day that they were produced.

could have done in an afternoon. (Harris Dep. at 20:23-22:16.)

Prior to the production of Dr. Wiggins's report, Plaintiff requested that Dr. Harris's deposition be pushed forward from February 1 (the date which had been offered by Plaintiff's counsel and accepted by Merck) to January 29 to accommodate Dr. Harris's teaching schedule. (Ex. K, 1/20/2010 email from J. Dugan to T. Sales.) Merck agreed to this accommodation, but requested that Dr. Harris produce any rebuttal report one day earlier than previously scheduled. (Ex. K, 1/21/2010 email from T. Sales to J. Dugan.) Dr. Harris produced no such rebuttal report. Dr. Harris testified that time constraints and "other professional commitments" prevented him from completing any additional analysis. (Harris Dep. at 20:6-21:5.) Dr. Harris acknowledged that he could have easily performed all calculations necessary to fully evaluate Dr. Wiggins's report, but that he simply did not have the time to do so given his busy schedule. (*Id.* at 19:15-21; 20:2-8; 20:17-21:5; 22:4-16; 25:6-18; 113:19-21; and 163:19-164:8). For Plaintiff to now complain that Dr. Harris had inadequate time to prepare a rebuttal report due to some failure on the part of Merck would be a gross distortion of facts. Merck *accommodated* Dr. Harris's schedule in light of Dr. Harris's request to reschedule his deposition for an earlier date.

Caselaw also shows Plaintiff's motion is meritless. In *Primrose*, the Fifth Circuit found no prejudice when an expert failed to even generate an expert report or to provide any calculations or basis for calculations in his deposition. 382 F.3d at 563. The court held that there was no prejudice because opposing counsel had previously received the expert's invoices and could have performed the same calculations that the expert relied upon in his testimony. *Id.* at 564.

In the current case, much like *Primrose*, Plaintiff possessed the data that forms the basis of Dr. Wiggins's opinions at all times, Merck produced the programs within 24 hours of

Case 2:05-md-01657-EEF-DEK   Document 35730   Filed 03/01/10   Page 10 of 15

Plaintiff's request, and Dr. Harris admitted he could have performed the same calculations that Dr. Wiggins relied upon in his forming his opinions but for a lack of time due to his own professional commitments. Because Dr. Wiggins's report and materials complied with Rule 26 and because Plaintiff cannot legitimately claim that it has been harmed or prejudiced, this Court should reject Plaintiff's motion.[6]

### B. Plaintiff's Argument That Dr. Wiggins's Report Must Be Excluded Because It Is Not Dr. Wiggins's Work Is Contrary To The Law and Mischaracterizes The Facts.

The opinions expressed in Dr. Wiggins's report are entirely his own. Although Plaintiff contends that Dr. Wiggins's expert testimony should be excluded because other CRA staff members assisted Dr. Wiggins in preparing his expert report, Plaintiff has failed to provide any evidence that the opinions in Dr. Wiggins report are not his own. Even if Plaintiff had proffered evidence supporting its contentions, the Rules of Evidence and case law permit expert witnesses to collaborate with other professionals. Thus, much like its argument with respect to the production of materials, Plaintiff's argument concerning the use of assistants is factually and legally wrong.

Plaintiff's argument fails for three independent reasons. *First*, Dr. Wiggins is responsible for each and every opinion identified in his report. *Secondly*, Plaintiff's argument that Dr. Wiggins's opinions are unreliable under *Daubert* are legally wrong because the use of staff members to assist in the compilation of an expert report is allowed under the Federal Rules

---

[6] Moreover, the case Plaintiff cites in support of its motion is inapplicable here. *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 462 (E.D. Pa. 2005), involved a dispute over whether material furnished to experts for use in forming their opinions was protected from disclosure by privilege. The court held that the plaintiff "must produce those notes [from] the . . . meeting that plaintiff's expert created in his role as a testifying expert," regardless of whether the notes contained information that fell under the protection of the attorney-client privilege or the work product doctrine. *Id.* at 464. In that case, using privilege as a shield to not disclose under Rule 26, would have led to an unfair surprise for the opposing party. In this case, Merck has never attempted to unfairly surprise Plaintiff or claim privilege to retain materials. Rather, Plaintiff already had access to all information necessary to evaluate Dr. Wiggins's testimony.

1009312v.1

of Evidence and by prevailing jurisprudence. And *thirdly*, as a general rule, questions relating to the bases and sources of an expert's opinion are left to the trier of fact.

### 1. Dr. Wiggins is responsible for the opinions outlined in his report.

Dr. Wiggins made perfectly clear that the opinions in his report are entirely his own. At his deposition, Dr. Wiggins referred to the report as "my own report" (Wiggins Dep. at 35:23); he testified that he was "the primary draftsman" (*id.* at 61:16); he did not engage in discussions with other experts in preparing or reaching the conclusions in his report (*id.* at 69:12-14); he asserted that all of the conclusions that he reached were enumerated in his report. (*Id.* at 69:12-14.) Additionally, the report states, on its face, that all of the conclusions and opinions set forth therein are the result of Dr. Wiggins's own considerations and research:

> *In reaching the conclusions* expressed below, *I have considered* numerous issues, including issues raised by Plaintiff and Plaintiff's experts. Exhibit B provides a list of the materials *I have considered in connection with forming an opinion* in this matter. *In reaching the opinions set forth in this report, I also rely* on my general training in economics . . .

(Wiggins Report ¶ 5 (emphasis added).)

Despite insinuations to the contrary, Plaintiff has not identified a single opinion or methodology in Dr. Wiggins's report for which Dr. Wiggins was not responsible. Plaintiff has also failed to identify a single instance when Dr. Wiggins even implied that the report contained conclusions or opinions that were not his own. The reason is obvious: although he received administrative back-up assistance from CRA staff members, Dr. Wiggins is responsible for his report and the opinions contained therein. Plaintiff's unsupported claim to the contrary should be rejected.

### 2. Because the Rules of Evidence and prevailing jurisprudence permit experts to collaborate with staff members, Plaintiff's argument that Dr. Wiggins's testimony is unreliable is not legally grounded.

No provision of the Rules of Evidence prohibits an expert from directing staff members

to assist the expert in the preparation of a report. The principles for admissibility depend on whether the opinions in the report are those of the expert (rather than simply parroting opinions of another) and whether the expert was personally familiar with the methods employed in the review. Here, Dr. Wiggins easily satisfies those standards.[7]

Dr. Wiggins testified that the opinions and conclusions in his report are his own. Dr. Wiggins further made clear that he determined the methodology for any data review and he drew the conclusions from this review himself. (Wiggins Dep. at 35:23; 61:16.) Even though nothing in the Federal Rules requires Dr. Wiggins to identify staff members whom Dr. Wiggins directed to assist him in the preparation of the report, Dr. Wiggins readily identified those staff members during his deposition. (Wiggins Dep. 15:11-16.) The rules do not prevent Dr. Wiggins from reasonably relying on the background data research conducted by his team to reach his opinions. Plaintiff's argument is neither supported by the facts nor the law.

### 3. Any question relating to the bases or sources of Dr. Wiggins's opinions should be left to the trier of fact.

Plaintiff's criticisms of Dr. Wiggins's opinions fail to impugn either the reliability or the relevance of his analysis. At most, Plaintiff's arguments merely speak to the weight the fact-finder should give to Dr. Wiggins's opinions. Questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the fact-finder's consideration. *United States v. 14.38 Acres of Land, More or Less Situated in LeFlore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v.*

---

[7] Plaintiff cites to Federal Rule of Evidence 702 and *Daubert* in its argument that Dr. Wiggins's testimony should be excluded. (Pl.'s Mot. at 4-5.) But Rule 702 concerns the subject matter of expert testimony and permits testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The plain language of this rule excludes expert testimony when the underlying data or methods are unreliable. *See Daubert*, 509 U.S. at 589 (noting that Rule 702 "clearly contemplates some degree of regulation of the *subjects* and *theories* about which an expert may testify") (emphasis added). Because Plaintiff is not challenging Dr. Wiggins's methodologies, underlying data, or the subject of his testimony, Plaintiff's reliance on *Daubert* and Rule 702 is misplaced.

*Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).  And as the Supreme Court made clear in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  509 U.S. at 596.  Under the facts and the law, the proper procedure is for Plaintiff to cross-examine Dr. Wiggins on how such assistance may have affected his opinions, not to move to strike his opinions.  Accordingly, this Court should reject Plaintiff's motion to strike or exclude Dr. Wiggins's testimony.

**C.   Although Merck Complied With Plaintiff's Request For Information From Dr. Wiggins, Merck Still Awaits Requested Documents From Plaintiff's Experts.**

A party seeking equity must come with clean hands.  *See Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933).  Plaintiff has failed to produce countless documents responsive to Merck's subpoena *duces tecum* accompanying the deposition notices of four of Plaintiff's expert witnesses.[8]  Plaintiff cannot now argue that the testimony of one of Merck's experts should be stricken because of Merck's alleged non-compliance with Rule 26(a)(2)(B)(ii) and because Dr. Wiggins failed to bring certain internal CRA invoices to his deposition until a few days after the deposition.  While Merck has produced all of the materials requested by Plaintiff, Merck continues to await documents from several of Plaintiff's experts.[9]  Plaintiff should not be allowed to claim now that it was prejudiced by the delayed production of any data

---

[8] Dr. John Abramson testified that he has in his possession, but did not produce at his deposition, e-mails from Plaintiff's counsel, handwritten notes that are part of his work product, billing information and files and collections of documents on his computer that he relied upon in writing his report. (Abramson Dep. at 21:4-13; 23:5-17; 24:5-8; 24:9-26:15 (attached as Ex. L).)  Also, Merck has requested, but Plaintiff has failed to produce invoices, handwritten notes, e-mails with Plaintiff's counsel and other work product belonging to Dr. Terry Leach.  (Leach Dep. at 9:3-6; 8:17-19; 9:10-12 (attached as Ex. M).)

[9] Plaintiff cites Rule 26(e)—requiring supplemental disclosure—in its argument about Merck's alleged failure to disclose information under Rule 26(a)(2)(B).  Despite citing Rule 26(e), Plaintiff never contends that Merck has failed to supplement disclosures and responses under Rule 26(e).  Rightly so, as Merck has promptly produced complete information for all of its expert witnesses.  Merck, however, notes that Plaintiff also has a duty to supplement its disclosures and Plaintiff has failed to comply with Merck's requests for information from Plaintiff's expert witnesses.  *See* FED. R. CIV. P. 26(e)(2).

1009312v.1

or documents. If Dr. Wiggins should somehow be stricken or limited for alleged delay in the production of information, most of Plaintiff's experts must also be stricken, on considerably more egregious production issues.

### III. CONCLUSION

The State offers no factual or legal grounds or authority to support its motion to exclude or strike Dr. Wiggins's testimony and opinions. Dr. Wiggins's report and back-up materials were timely and completely disclosed and his opinions are his own. Accordingly, this Court should deny Plaintiff's motion to strike or exclude Dr. Wiggins's opinions and testimony.

Dated:  March 1, 2010

Respectfully submitted,

/s/Dorothy H. Wimberly
Phillip A. Wittman, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
 WITTMANN LLC
546 Carondelet Street
New Orleans, LA 70130
Phone: (504) 581-3200
Fax:   (504) 581-3361

1009312v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition has been served on Liaison Counsel by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Plaintiff, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 1st day of March, 2010.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1009312v.1