## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| This Document Relates To: | SECTION L |
| STATE OF LOUISIANA, *ex rel.*, JAMES D. CALDWELL, JR., Attorney General, | JUDGE ELDON E. FALLON |
| Plaintiffs, | MAGISTRATE JUDGE KNOWLES |
| v. | Case No. 05-3700 |
| MERCK SHARP & DOHME CORP., | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO MOTION TO EXCLUDE TESTIMONY OF CORNELIA PECHMANN, PH.D.

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................................................. 1

II.     LEGAL STANDARD ...................................................................................... 3

III.    DR. PECHMANN'S EXPERT ANALYSIS AND OPINIONS
        CONCERNING MERCK'S INTEGRATED MARKETING CAMPAIGN
        ARE RELEVANT ............................................................................................ 3

IV.     THIS COURT HAS RULED THAT DR. PECHMANN MAY TESTIFY
        THAT MERCK'S MARKETING MATERIALS ARE MISLEADING .............. 5

V.      DR. PECHMANN'S TESTIMONY CONCERNING MERCK'S
        INTEGRATED MARKETING CAMPAIGN IS ADMISSIBLE ........................ 6

        A.      This Court Has Already Ruled That Dr. Pechmann Could Testify
                About Merck's Integrated Marketing Campaign .................................... 6

        B.      Dr. Pechmann's Testimony Concerning The Integrated Marketing
                Campaign Is Relevant To This Case ...................................................... 7

VI.     DR. PECHMANN MAY TESTIFY THAT MERCK KNEW ABOUT
        VIOXX'S POTENTIAL CARDIOVASCULAR RISK ...................................... 8

VII.    DR. PECHMANN MAY TESTIFY THAT MERCK DID NOT COMPLY
        WITH FDA REGULATIONS ........................................................................... 9

VIII.   DR. PECHMANN MAY TESTIFY ABOUT MERCK'S MARKETING
        EXPENDITURES ............................................................................................ 10

IX.     CONCLUSION ................................................................................................ 10

859801.1

## I.      **INTRODUCTION**

Plaintiff urges the Court to deny Defendant Merck & Co., Inc's ("Merck") motion to exclude expert testimony of Cornelia Pechmann, Ph.D., and to allow her to testify, for the same reasons that the Court permitted her testimony and denied most of Merck's challenges in the *Barnett, Mason* and *Dedrick* cases.  Though Dr. Pechmann was not called to testify at the *Barnett* trial, the Court found that she was qualified and permitted to testify regarding Vioxx marketing issues, specifically those pertaining to Merck's integrated marketing communications campaign.  In *Mason* and in *Dedrick*, the Court similarly ruled that Dr. Pechmann was permitted to testify.  On this motion, Merck offers the same arguments that the Court rejected previously. Merck's only new argument is that Dr. Pechmann's testimony is irrelevant to the Louisiana AG case.  To the contrary, Dr. Pechmann's testimony regarding the centralized, nationwide marketing of Vioxx is particularly relevant to show that Defendant's representations and omissions did not vary from state to state, and to rebut Merck's claim that Plaintiff's proof is somehow deficient for lack of state-specific evidence.  As discussed in other oppositions filed with this motion, this issue is better addressed at the summary judgment stage.  Nevertheless, Plaintiff addresses the argument here in a preliminary manner and submits that Dr. Pechmann's testimony is not only relevant, but critical in this case.

Plaintiff retained Dr. Pechmann to review and provide opinions on Merck's comprehensive integrated marketing campaign to neutralize concerns among doctors and consumers regarding the potential cardiovascular risk associated with Vioxx.  Her expertise was and remains necessary to describe and explain the strategy and objectives of the campaign, the nature of the marketing and research studies that Merck performed to achieve those objectives, the studies' results, Merck's evaluation of the studies, how Merck adjusted its campaign to better achieve its objectives, and the campaign's success according to the data collected.  Dr.

Pechmann's testimony is at the core of Plaintiff's case for misrepresentation and failure to warn of the cardiovascular risk associated with the drug.

As the Court is aware, Dr. Cornelia Pechmann is a professor of marketing at the Paul Merage School of Business at the University of California, Irvine.  Her specialty is in integrated marketing communications campaigns, which are comprehensive and sophisticated marketing programs intended to convey a seamless integration of discrete marketing messages.  She has worked in this area for over 20 years, published over 50 articles on the subject, and has been retained by government agencies and businesses as a consultant and advisor on large integrated marketing communications campaigns.  As this Court pronounced, "She's very qualified." (7/6/06 *Barnett v. Merck*, Hearing Tr. at 47:2-6 [Declaration of Sarah R. London in Support of Plaintiffs' Opposition to Merck's Motion to Exclude the Expert Testimony of Cornelia Pechmann, Ph.D. ("SRL Decl.") Ex. 1].)

Marketing is a behavioral science, and like other behavioral sciences such as psychology and economics, is the proper subject of expert testimony.  Marketing campaigns at the level employed by Merck involve the same expertise as the natural and other behavioral sciences, in that they require identification of hypotheses, testing the hypotheses using valid methods and controlled studies, and analysis and preparation of reports.  Numerous courts, including this Court, have upheld and allowed expert testimony on marketing techniques.  *See, e.g., id.* at 52:21-53:9.

Moreover, Merck will have available to it at trial its marketing expertise in the form of its witness employees who designed and handled the campaign.  Plaintiff similarly should be allowed to have its own expert with specialization in this scientific, technical and complex area to explain the manner in which Merck used a sophisticated marketing campaign to neutralize any

859801.1

concern in the marketplace regarding Vioxx's cardiovascular risk.

Dr. Pechmann's testimony is a relevant part of the evidence that ties Merck's centralized, corporate representations and omissions to their effects throughout the U.S., including Louisiana. Merck conducted an integrated marketing campaign to "neutralize" concerns over the cardiovascular risks of Vioxx. The campaign did not vary state by state, but rather was a centralized, nationwide effort to boost the sales of Vioxx. As part of that campaign, Merck delivered messages through various channels, including through published studies based on Merck-sponsored clinical trials, which systematically promoted messages that misrepresented the safety of Vioxx and omitted negative data. Provider Synergies relied on the published studies, and was deprived of the suppressed negative data, when evaluating Vioxx and preparing the monographs upon which Louisiana's Pharmaceuticals and Therapy ("P&T") Committee relied in approving Vioxx for the Preferred Drug List ("PDL"). Accordingly, Dr. Pechmann's testimony is particularly relevant to this case.

Thus, the Court should deny Merck's motion to exclude Dr. Pechmann's testimony, and she should be allowed to testify to the extent permitted by the rulings of the Court in previous Vioxx cases.

## II.    LEGAL STANDARD

The legal standard for admission of expert testimony in federal court is set forth in the Opposition to Motion to Exclude Expert Testimony of John S. MacGregor, M.D., PhD., filed concurrently herewith and incorporated herein by reference.

## III.    DR. PECHMANN'S EXPERT ANALYSIS AND OPINIONS CONCERNING MERCK'S INTEGRATED MARKETING CAMPAIGN ARE RELEVANT

Dr. Pechmann's expert review and testimony primarily concern Merck's integrated marketing communications campaign that was implemented to neutralize doctor and patient

concerns about cardiovascular risks associated with Vioxx. The textbook definition of an

integrated marketing communications campaign is as follows:

> A concept of marketing communications planning that recognizes
> the added value of a comprehensive plan that evaluates the
> strategic roles of a variety of communication disciplines—for
> example, general advertising, direct response, sales promotion and
> public relations—and combines these disciplines to provide clarity,
> consistency, and maximum communications impact through the
> seamless integration of discrete messages.

(Pechmann Expert Report ("Pechmann Rep.") at 1 [SRL Decl. Ex. 2].)

An integrated marketing communications campaign utilizes extremely sophisticated

marketing concepts and tools which are the subject of numerous articles and academic

discussions as well as practical applications. (*Mason v. Merck*, Trial Tr. vol. 7, 1457:5-13,

November 7, 2006 [SRL Decl. Ex. 3].) The concepts and tools used in integrated marketing

campaigns apply across industries, including the pharmaceutical industry. *Id.* at 1460:7-17.

As Professor Pechmann testified in this case, Merck engaged in an integrated marketing

campaign to identify issues that were affecting the sales of Vioxx, developed marketing tools to

address those issues, conducted research studies of those tools prior to their release in the

marketplace to gauge their effectiveness, tracked the results of their campaign, and made

adjustments to continue to achieve campaign goals. *See, e.g., id.* at 1467:12-17.

Based on her review and analysis of Merck's integrated marketing campaign, Professor

Pechmann has testified and will testify as to Merck's marketing goals and objectives concerning

Merck's campaign, namely to neutralize doctor and consumer concerns about Vioxx's

cardiovascular risks and to convince doctors to prescribe Vioxx regardless of their patients'

cardiovascular risk profile. *See id.* at 1468:21-1469:2.

These opinions are clearly relevant to this case. Plaintiff alleges that Defendant engaged

in a pattern of publishing only positive analyses, representations and data regarding the CV risks

- 4 -

of Vioxx, while suppressing the negative results and analyses in their internal documents.  Dr.

Pechmann's opinions are relevant to show that the representations and omissions were made on a

systematic basis that did not vary from state to state.

## IV.     THIS COURT HAS RULED THAT DR. PECHMANN MAY TESTIFY THAT MERCK'S MARKETING MATERIALS ARE MISLEADING

In the *Daubert* hearing in the *Barnett* case, this Court set the initial parameters for Dr.

Pechmann's testimony, deferring the issue of whether she would be permitted to testify that

Merck's marketing materials were misleading until the context for such testimony had been

established:

> And I'm not sure about whether she could say this is, this is
> misleading or not misleading. She seems to be an expert in
> misleading advertising, but I don't know whether that, I'm having
> difficulty taking it out of context and giving you some guidance on
> it, because it may well be significant in a certain context and not
> significant in another context.

(7/06/06 *Barnett v. Merck*, Hearing Tr. at 56:2-7.)  This Court described this issue as

"contextual." *Id.* at 56:17-24.  In subsequent proceedings, when the context had been

established, Dr. Pechmann was permitted to testify that Merck's documents were considered

misleading.

For example, this Court allowed Dr. Pechmann to testify in the *Dedrick,* case that the

FDA criticized and disapproved of Merck's promotional materials because they were misleading.

(12/1/06 *Dedrick v. Merck* Trial Tr. at 1125:11-1131:4; 1134:15-1138:15 [SRL Decl. Ex. 4].)

Dr. Pechmann should be permitted to testify in this case to the same extent that she was

permitted to do so in *Dedrick.*

As noted during the trial in *Dedrick,* such testimony is relevant to prove that Merck was

aware that the FDA considered their marketing materials to be false and misleading, but

nevertheless continued to use the same messages in their communications with physicians and

the public.  (*See* 12/1/06 *Dedrick v. Merck* Trial Tr. at 1137:6-1138:2.)

Thus, the Court should deny Merck's motion to exclude Dr. Pechmann's testimony

concerning Merck's misleading marketing materials, and the Court should consider such

testimony in context, as in previous Vioxx cases.

## V.   DR. PECHMANN'S TESTIMONY CONCERNING MERCK'S INTEGRATED MARKETING CAMPAIGN IS ADMISSIBLE

It is undisputed that Dr. Pechmann is qualified to opine on Merck's integrated marketing

campaign.  (7/6/06 *Barnett v. Merck*, Hearing Tr. at 52:21-53:9.)   Her testimony is reliable and

relevant, and therefore admissible under *Daubert* and the Federal Rules of Evidence.

### A.   This Court Has Already Ruled That Dr. Pechmann Could Testify About Merck's Integrated Marketing Campaign

This Court has already permitted Dr. Pechmann to offer opinions about Merck's

integrated marketing campaign in the Vioxx personal injury cases.  Dr. Pechmann should be

allowed testify in this case to the same extent as in previous Vioxx cases.

As the Defendant acknowledges, Dr. Pechmann has been permitted to testify as to

Merck's goals and objectives in their Vioxx campaign, as well as their methodology, including:

press releases, advertising, direct mail, audio conferences, direct-to-consumer marketing, and

promotional pieces.  (*See* Merck's Memorandum in Support of Motion to Exclude Testimony of

Cornelia Pechmann, Ph.D. ("Merck Mem.") at 15.)

Dr. Pechmann has testified, over Merck's objections, about what Merck communicated

regarding CV risks:

> Q.  Doctor, based upon your review of all of the materials that you
> reviewed, and based upon your experience and training, do you
> have an opinion about whether the integrated marketing campaign
> that Merck had for Vioxx dealt with the issue of CV risks?
>
> A.  Yes, it did.

859801.1

Q.  Okay.  Based upon your review of the materials and your experience, do you have an opinion about whether the marketing campaign ever clearly communicated to doctors or patients that Vioxx could cause heart attacks?

Mr. Ismail:  Objection, Your Honor, beyond the scope of her qualifications.

The Court:  I think this is general enough.  I'll allow it and overrule the objection.

The Witness:  Yes, I have an opinion.

By Mr. Blizzard:

Q.  And what is that opinion?

A.  They did not clearly state the cardiovascular risks.

(11/7/06 *Mason v. Merck* Trial Tr. at 1467:11-1468:4.)

This Court has already permitted Dr. Pechmann to testify concerning Merck's integrated marketing campaign, and she should likewise be permitted to do so here to the same extent as in previous Vioxx cases.

**B.**      **Dr. Pechmann's Testimony Concerning The Integrated Marketing Campaign Is Relevant To This Case**

Dr. Pechmann's opinions are clearly relevant to the Louisiana case, and to the messages conveyed to Louisiana doctors.  First, the central premise of her testimony is that Merck conducted a nationwide, coordinated integrated marketing campaign that did not vary from state to state (*See, e.g.*,  Pechmann Rep. at 10), and Defendant has presented no evidence of such a variation.  To the contrary, Merck Regional Medical Director Fran Kaiser testified that product information was provided to the Louisiana P&T Committee from the Merck corporate Medical Services Department in Philadelphia.  (Kaiser Dep. at 49:5-50:23, January 29, 2010 [SRL Decl. Ex. 5].)  Indeed, Dr. Kaiser's emails showed that the binder of Vioxx documents put together for Oregon was used as the basis for the analogous binder sent to Louisiana, confirming the

centralized plan and lack of state-to-state variation.  (Kaiser Dep. at 49:5-50:23.)  Further, the

Court permitted Dr. Pechmann to testify regarding Defendant's market research surveys that

were addressed to the "overall" market for Vioxx, not to a particular state, and which included

tracking of survey participants' responses to statements about Vioxx and risk of heart attack.

(11/7/06 *Mason v. Merck* Trial Tr. at 1507 et seq.; P1. 2032 at 3, 24, 38 [SRL Decl. Ex. 6].)[1]

Second,  Dr. Pechmann's testimony concerning Merck's integrated marketing messages

is relevant because Merck delivered its messages through published articles that Provider

Synergies relied on in evaluating Vioxx.  For example, Dr. Pechmann testified about the "safe as

placebo" message based on the Vioxx Osteoarthritis (OA) clinical trials, which was part of

Merck's integrated marketing campaign for Vioxx.  (11/7/06 *Mason v. Merck* Trial Tr. at

1485:15-1487:4.)  The identical message was conveyed by the Reicin article referenced in the

2003 Monograph prepared by Provider Synergies and relied upon by the Louisiana P&T

Committee in approving Vioxx for the PDL.  (2003 Monograph, marked as Taylor Ex. 15;

Reicin, A., et al., 2002 at 1 [SRL Decl. Exs. 8 and 9].)

Thus, Dr. Pechmann's testimony concerning Merck's integrated marketing campaign is

relevant and reliable, and this Court should allow it to the same extent as in previous Vioxx

cases.

## VI.   DR. PECHMANN MAY TESTIFY THAT MERCK KNEW ABOUT VIOXX'S POTENTIAL CARDIOVASCULAR RISK

This Court has already ruled that Dr. Pechmann may testify that Merck had information

---

[1] Doctor Pechmann also reviewed P1. 2008, another market research survey.  The Court initially admitted the document, but it was withdrawn because it had not been disclosed on Plaintiff's list. (11/7/06, *Mason v. Merck* Trial Tr. at 1515:3-23; P1. 2008 [SRL Decl. Ex. 7].)  Like P1. 2032, the P1.2008 survey tracks "Total" ad awareness and refers to the newspaper and TV campaigns included in the Integrated Marketing program described by Dr. Pechmann.  (P1. 2008 at 3.) Among other things, the survey tracks responses to assertions that Vioxx is "as safe as a sugar pill." *Id.* at 13, 16.

that Vioxx posed a potential cardiovascular risk.  (7/6/06 *Barnett v. Merck*, Hearing Tr. at 53:19-54:6.)  In *Mason* and in *Dedrick*, Dr. Pechmann testified about the "objectives" of Merck's marketing campaign—to neutralize physicians' and the public's concerns about the CV risks associated with Vioxx.  (12/1/06 *Dedrick v. Merck*, Trial Tr. at 1115:2-24; 11/7/06 *Mason v. Merck*, Trial Tr. at 1475:3-14.)  Not only did this Court admit such testimony, but it also permitted her to opine that Merck was aware of a potential cardiovascular risk associated with Vioxx, based on her review of the marketing materials.  (7/6/06 *Barnett v. Merck* Hearing Tr. at 53:19-54:6.)

Thus, Dr. Pechmann should be permitted to testify, to the extent permitted in previous Vioxx cases, that Merck knew about the potential cardiovascular risks associated with Vioxx.

## VII.   DR. PECHMANN MAY TESTIFY THAT MERCK DID NOT COMPLY WITH FDA REGULATIONS

Merck seeks to exclude any opinion by Dr. Pechmann regarding regulatory matters. (Merck Mem. at 20-21.)  These include FDA regulations Dr. Pechmann reviewed concerning impermissible marketing and advertising regarding pharmaceutical drugs.  This Court has already allowed Dr. Pechmann to testify concerning FDA regulations with respect to sales and marketing practices.  (*See, e.g.*, 12/1/06 *Dedrick v. Merck* Trial Tr. at 1164:4-18.)

Such regulations provide Dr. Pechmann with the framework and guidelines within which Merck was to operate in its marketing efforts, and Dr. Pechmann found that they were in line with overall marketing guidelines that preclude misleading advertising.  Dr. Pechmann is qualified to review these regulations and incorporate them into her testimony, since she not only has expertise in marketing matters but specifically with regard to the application of FTC and FDA regulations to marketing campaigns.  (Pechmann Rep. at 3.)  Indeed, much of pharmaceutical marketing is governed by regulations and it is not surprising that experts like Dr.

Pechmann have sufficient expertise to be able to apply those regulations to marketing efforts.

Thus, Dr. Pechmann should be permitted to testify as to FDA matters to the extent allowed in previous Vioxx cases.

## VIII.   DR. PECHMANN MAY TESTIFY ABOUT MERCK'S MARKETING EXPENDITURES

Finally, Merck further argues that Dr. Pechmann should not testify as to how much Merck spent on its marketing and its Vioxx revenue.  (Merck Mem. at 21.)  The court has already permitted her to testify that Merck "spent thousands, if not millions of dollars" to track the success of their marketing campaign.  (12/1/06 *Dedrick v. Merck* Trial Tr. at 1123:5-11.) Moreover, these amounts will assist in understanding the sheer scope of Merck's marketing efforts, including their efforts to cover the entire nation, including Louisiana.  The resources expended will inform the court of the comprehensive, multi-layered nature of the integrated marketing plan.  This information is relevant to Plaintiffs claims of failure to warn and fraud.

In sum, the arguments raised by Merck either lack any basis or are more suited to arguments concerning credibility issues.  None of the arguments raise any legitimate basis to preclude Dr. Pechmann from testifying.

## IX.   CONCLUSION

For the reasons stated above, Dr. Pechmann's opinions are relevant and admissible.  The motion to exclude testimony should be denied.

Respectfully submitted, this 1st day of March, 2010.

/s/ James R. Dugan         _____
James R. Dugan, II (La. Bar No. 24785)
Douglas R. Plymale. (La. Bar No. 28409)
Stephen B. Murray, Jr. (La. Bar No. 23877)
Stephen B. Murray, Sr. (La. Bar No. 9858)
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
Kim Sullivan
General Counsel
Louisiana Department of Health and Hospitals
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

Counsel for Plaintiff

859801.1

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Plaintiff's Memorandum In Opposition To Motion To Exclude Testimony Of Cornella Pechmann has this day been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced, in accordance to pretrial order No. 8B, on this the 1st day of March, 2010.

/s/ James R. Dugan

859801.1