# Exhibit 4
# Part 5

**Product:** MK-0966
**Protocol/Amendment No.:** 088-04                                        68

## IV.  THE CASE REVIEW COMMITTEE

The CRC will have full responsibility for final blinded adjudication of all potential endpoints. The CRC will be composed of three voting clinicians (at least two of whom are gastroenterologists) with expertise in the diagnosis of endpoints and in the conduct of clinical trials. The voting members may not include employees of Merck. No member of the CRC may be an investigator for this study, or be directly involved in any way in the conduct of the study. The CRC will be assisted by blinded Merck personnel.

## V.  ENDPOINT ADJUDICATION CRITERIA

Endpoint adjudication criteria are shown in **Attachment A**. Criteria are given for confirmation of the diagnosis, and for determination as to whether the endpoint is clinically complicated. The CRC will adjudicate each endpoint with respect to the confirmatory criteria first, followed by adjudication with respect to the clinically complicated criteria. Potential endpoints judged to meet the confirmation criteria by a majority of the CRC (2 of 3) are adjudicated as "confirmed." Endpoints not meeting confirmation criteria will be judged "unconfirmed." Similarly, an endpoint judged to meet the clinically complicated criteria by a majority of the CRC are adjudicated as "complicated," and one not meeting the criteria will be judged "uncomplicated." Thus, there will be four classes of end points (confirmed and complicated, confirmed and uncomplicated, unconfirmed and complicated, and unconfirmed and uncomplicated). The CRC may adjudicate an event as being "not an upper-GI event", if by majority opinion the potential endpoint did not involve the upper-GI tract as defined. In addition, the CRC may reclassify a potential endpoint if there is sufficient evidence to do so. All adjudications by the committee are final.

## VI.  ADJUDICATION PROCEDURES

A Case Review Committee (CRC), consisting of 3 independent consultants, will review and adjudicate all endpoints in a blinded manner. Each CRC member will independently make a preliminary adjudication of the end point. The full CRC will convene to jointly review the preliminary judgments and form a joint, final blinded adjudication for each case. In the event of disagreement, a majority ruling on confirmation status will be made (confirmed vs. unconfirmed) following which a majority ruling will be made as to whether the case was clinically complicated (complicated vs. uncomplicated). All adjudications by the CRC will be final. Final adjudication for a given case will occur prior to any analysis (interim or final) that includes the end point, and before unblinding of the database. A SOP detailing the internal MRL procedures related to these activities is found under separate cover.

/MK-0966/CP/RP2317.DOC * APPROVED                    03-Sep-1999
U.S. (U.S. IND)

Confidential - Subject To Protective Order                                    MRK-AFV0130222

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)          **1573**

**Product:** MK-0966
**Protocol/Amendment No.:** 088-04                          69

### VII.  MAINTENANCE OF TREATMENT BLIND

Requests for waivers for reporting endpoints (i.e., PUBs) which meet the 15-day reporting criteria (serious, unexpected, and related to use of the drug) will be made to the appropriate agencies for all sites participating in the study, such that these endpoints are not reported to a regulatory agency nor unblinded until the end of the study.

In the event these waivers are not obtained, or in the event of inadvertent unblinding, additional procedures to maintain the treatment blind to the Merck personnel involved in processing the endpoint documentation, and to the CRC members have been established. These are described in the internal Merck SOP detailing such procedures.

/MK-0966/CP/RP2317.DOC * APPROVED                          03-Sep-1999
U.S. (U.S. IND)

Confidential - Subject To Protective Order                          MRK-AFV0130223

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)                    **1574**

70

Product: MK-0966
Protocol/Amendment No.: 088-04

## ATTACHMENT A

### Vigor Endpoint Adjudication Criteria

| Event | Criteria For Confirmed Event | Criteria For Confirmed Complicated Event |
|---|---|---|
| Gastric or Duodenal Perforation due to Active Gastric Ulcer (GU) or Duodenal Ulcer (DU) | Report of gastric or duodenal perforation (excluding perforation caused by a malignant ulcer) confirmed by one or more of the following:<br><br>1. Endoscopy<br>2. Surgery<br>3. Unequivocal radiographic results consistent with free intraperitoneal air or extravasation of contrast media<br>4. Autopsy | All gastric or duodenal perforations are classified as complicated. |
| Obstruction due to Active Gastric Ulcer (GU) or Duodenal Ulcer (DU) | Postprandial nausea and vomiting lasting for at least 24 hours AND evidence of narrowing of the distal stomach, pylorus, or duodenum due to a non-malignant ulcer documented by:<br><br>1. Endoscopy<br>2. Surgery<br>3. Radiography<br>4. Autopsy | All obstructions are classified as complicated |

/MK-0966/CP/RP2317.DOC • APPROVED–03-Sep-1999
U.S. (U.S. IND)

Confidential – Subject To Protective Order                    MRK-AFV0130224

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)    **1575**

71

**Product: MK-0966**
**Protocol/Amendment No.: 088-04**

## ATTACHMENT A (CONT.)

### Vigor Endpoint Adjudication Criteria

| Event | Criteria For Confirmed Event | Criteria For Confirmed Complicated Event |
|---|---|---|
| Development of Active Gastric Ulcer (GU) or Duodenal Ulcer (DU) | Report of GU or DU confirmed by one or more of the following:<br><br>1. Endoscopy<br>2. Surgery<br>3. Unequivocal radiological evidence of active GU or DU on upper-GI series with contrast<br>4. Autopsy | GU or DU associated with a confirmed upper-GI hemorrhage as defined under Development of Upper-GI Hemorrhage, criteria 1, 2, or 3. |

/MK-0966C9/RP2317.DOC * APPROVED-03-Sep-1999
U.S. (U.S. IND)

Confidential – Subject To Protective Order

MRK-AFV0130225

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)    **1576**

72

Product: MK-0966
Protocol/Amendment No.: 088-04

## ATTACHMENT A (CONT.)

### Vigor Endpoint Adjudication Criteria

| Event | Criteria For Confirmed Event | Criteria For Confirmed Complicated Event |
|---|---|---|
| Development of Upper-GI (esophageal, gastric, or duodenal) Hemorrhage | Report of upper-GI hemorrhage fulfilling one or more of the following:<br><br>1. Healthcare provider witnessed frank hematemesis (distinguished from blood tinged or streaked emesis), including coffee-grounds vomitus, **OR** healthcare provider-witnessed frank blood or coffee grounds by gastric aspiration or lavage (distinguished from scant coffee-grounds that clear rapidly).<br><br>2. Healthcare provider witnessed frank melena (distinguished from other dark stool e.g., that due to bismuth salts).<br><br>3. Active upper-GI bleeding documented by endoscopy, angiography, or surgery.<br><br>4. Heme-positive stool associated with a documented upper-GI lesion judged by the healthcare provider to be the source of the bleeding **AND** associated with either of the following:<br>  a) Significant bleeding/volume loss<br><br>(continued) | 1. Upper-GI hemorrhage associated with significant bleeding/volume loss (1). |

/MK-0966/CP/RP2317.DOC • APPROVED–03-Sep-1999
U.S. (U.S. IND)

Confidential – Subject To Protective Order

73

**Product: MK-0966**
**Protocol/Amendment No.: 088-04**

## ATTACHMENT A (CONT.)

### Vigor Endpoint Adjudication Criteria

| Event | Criteria For Confirmed Event | Criteria For Confirmed Complicated Event |
|---|---|---|
| Development of Upper-GI (esophageal, gastric, or duodenal) Hemorrhage (cont.) | b) Stigmata of recent bleeding (visible vessel, pigmented spot or clot on ulcer base) on endoscopy.<br><br>5. Patient reported hematemesis or melena associated with a documented upper-GI lesion judged by the healthcare provider to be the source of the bleeding **AND** associated with one or more of the following:<br>a) Significant bleeding/volume loss<br>b) Stigmata of recent bleeding (visible vessel, pigmented spot or clot on ulcer base) on endoscopy. | 1. Upper-GI hemorrhage associated with significant bleeding/volume loss (1) (cont.). |
| (1) Criteria for significant bleeding/volume loss. One or more of the following (a, b, c, or d)is temporally related to the event:<br>a. Decrease in hemoglobin >2 gm/dL (or 26% drop in hematocrit if hemoglobin not available).<br>b. Evidence of orthostatic (sitting to standing, or lying to sitting) changes; one or more of: i) pulse rate increase of >20 BPM, ii) decrease in SBP >20 mm Hg, iii) decrease in DBP >10 mm Hg.<br>c. Other evidence of significantly reduced circulatory volume (e.g., significant hypotension corrected by volume replacement).<br>d. Transfusion of blood or packed red blood cells. | | |

/MK-0966CP/RP2317.DOC * APPROVED–03-Sep-1999
U.S. (U.S. IND)

Confidential - Subject To Protective Order

MRK-AFV0130227

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)          **1578**

**Product:** MK-0966
**Protocol/Amendment No.:** 088-04                                    74

## APPENDIX 5

Naproxen Product Circular

/MK-0966/CP/RP2317.DOC * APPROVED                    03-Sep-1999
U.S. (U.S. IND)

Confidential – Subject To Protective Order                    MRK-AFV0130228

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)                    **1579**

**Product: MK-0966**
**Protocol/Amendment No.: 088-04**                                    75

APPENDIX 6

Standard Operating Procedure for the Surveillance, Monitoring, and
Adjudication of Acute Thromboembolic Vascular Events in
Clinical Trials of COX-2-Specific Inhibitors

/MK-0966/CP/RP2317.DOC * APPROVED                    03-Sep-1999
U.S. (U.S. IND)                                       R 01-Feb-2000

Confidential – Subject To Protective Order                    MRK-AFV0130229

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)          **1580**

**Product:** MK-0966
**Protocol/Amendment No.:** 088-04                          76

# ATTACHMENTS

/MK-0966/CF/RP2317.DOC * APPROVED                          03-Sep-1999
U.S. (U.S. IND)

Confidential - Subject To Protective Order                          MRK-AFV0130230

## FDA REGULATIONS REGARDING INFORMED CONSENT
## (CODE OF FEDERAL REGULATIONS, TITLE 21, PART 50)

50.20  General Requirements for Informed Consent

Except as provided in 50.23, no investigator may involve a human being as a subject in research covered by these regulations unless the investigator has obtained the legally effective informed consent of the subject or the subject's legally authorized representative. An investigator shall seek such consent only under circumstances that provide the prospective subject or the representative sufficient opportunity to consider whether or not to participate and that minimize the possibility of coercion or undue influence. The information that is given to the subject or the representative shall be in language understandable to the subject or the representative. No informed consent, whether oral or written, may include any exculpatory language through which the subject or the representative is made to waive or appear to waive any of the subject's legal rights, or releases or appears to release the investigator, the sponsor, the institution, or its agents from liability for negligence.

50.25  Elements of Informed Consent

(a) Basic elements of informed consent. In seeking informed consent, the following information shall be provided to each subject:
  (1) A statement that the study involves research, an explanation of the purposes of the research and the expected duration of the subject's participation, a description of the procedures to be followed, and identification of any procedures which are experimental.
  (2) A description of any reasonably foreseeable risks or discomforts to the subject.
  (3) A description of any benefits to the subject or to others which may reasonably be expected from the research.
  (4) A disclosure of appropriate alternative procedures or courses of treatment, if any, that might be advantageous to the subject.
  (5) A statement describing the extent, if any, to which confidentiality of records identifying the subject will be maintained and that notes the possibility that the Food and Drug Administration may inspect the records.
  (6) For research involving more than minimal risk, an explanation as to whether any compensation and an explanation as to whether any medical treatments are available if injury occurs and, if so, what they consist of, or where further information may be obtained.
  (7) An explanation of whom to contact for answers to pertinent questions about the research and research subjects' rights, and whom to contact in the event of a research-related injury to the subject.
  (8) A statement that participation is voluntary, that refusal to participate will involve no penalty or loss of benefits to which the subject is otherwise entitled, and that the subject may discontinue participation at any time without penalty or loss of benefits to which the subject is otherwise entitled.
(b) Additional elements of informed consent. When appropriate, one or more of the following elements of information shall also be provided to each subject:
  (1) A statement that the particular treatment or procedure may involve risks to the subject (or to the embryo or fetus, if the subject is or may become pregnant) which are currently unforeseeable.
  (2) Anticipated circumstances under which the subject's participation may be terminated by the investigator without regard to the subject's consent.
  (3) Any additional costs to the subject that may result from participation in the research.
  (4) The consequences of a subject's decision to withdraw from the research and procedures for orderly termination of participation by the subject.
  (5) A statement that significant new findings developed during the course of the research which may relate to the subject's willingness to continue participation will be provided to the subject.
  (6) The approximate number of subjects involved in the study.
(c) The informed consent requirements in these regulations are not intended to preempt any applicable Federal, State, or local laws which require additional information to be disclosed for informed consent to be legally effective.
(d) Nothing in these regulations is intended to limit the authority of a physician to provide emergency medical care to the extent the physician is permitted to do so under applicable Federal, State, or local law.

50.27  Documentation of Informed Consent

(a) Except as provided in §56.109(c), informed consent shall be documented by the use of a written consent form approved by the IRB and signed by the subject or the subject's legally authorized representative. A copy shall be given to the person signing the form.
(b) Except as provided in §56.109(c), the consent form may be either of the following:
  (1) A written consent document that embodies the elements of informed consent required by § 50.25. This form may be read to the subject or the subject's legally authorized representative but, in any event, the investigator shall give either the subject or the representative adequate opportunity to read it before it is signed.
  (2) A "short form" written consent document stating that the elements of informed consent required by § 50.25 have been presented orally to the subject or the subject's legally authorized representative. When this method is used, there shall be a witness to the oral presentation. Also, the IRB shall approve a written summary of what is to be said to the subject or the representative. Only the short form itself is to be signed by the subject or the representative. However, the witness shall sign both the short form and a copy of the summary, and the person actually obtaining the consent shall sign a copy of the summary. A copy of the summary shall be given to the subject or the representative in addition to a copy of the short form.

Confidential - Subject To Protective Order

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)          **1582**

## DRUG CONSENT FORM

You are invited to be in a research study.  You need to decide whether you want to participate or not.  Please take your time to make your decision.  Carefully read the following and ask the study doctor any questions which you may have.  The study is being conducted for Merck & Co., Inc., the Sponsor.

**Why is the study being done?**
The purpose of this study is to test the safety of the research study drug, [insert name of drug].  Another purpose is to see if [insert name of drug] has any effect on your [insert "disease" or "condition"].

**Who should not be in the study?**
[Insert exclusion criteria that the patient can assess in simple language].

**What will I be asked to do? What are my requirements?**
The study doctor or staff will ask you about your medical history and will examine you.  You will be assigned to either receive [insert name of drug] or a pill that looks the same as [insert name of drug] that has no active ingredient (or you may receive [insert name of active comparator, if any]).  You have a _____ in ___ chance of receiving the active study drug.  You and your study doctor will not know whether you are receiving the real drug or the inactive look-alike pill.  You will be required to visit the study doctor about [insert number of times].  At each visit the study doctor or staff may do any or all of the following [insert a summary of study procedures in simple language (e.g., a bulleted list, a simplified table, a check list of procedures].

**What is known about this (these) drug(s)?**
This is the first time that the drug has been used in man.  **OR**
The drug has been used in [insert approximate number of subjects (worldwide) who have taken the drug].

**How long will I be in the study?**
You will be in the study about [insert number of weeks, months, or years].

**How many other people will be participating in the study?**
About [insert number of participants at all sites] people will be participating in the study.

**Will I be paid?  [Include section only if applicable.]**
You will be paid as follows: [insert payment information]

**What adverse (bad) effects can happen to me by participating in the study?**
The following adverse effects have been reported by people taking [insert name of drug] in previous studies or seen in animal experiments: [insert any foreseeable risks or discomforts as bullets or summary].  The study doctor or staff will discuss these with you.  There can be other adverse effects that are not presently known about [insert name of drug].  It is not known how the study drug(s) may affect an unborn baby.

**If I have an adverse effect, who will pay the doctor and hospital bills?**
If you are injured or become sick directly from the Merck study drug, Merck & Co., Inc., the Sponsor of the study, will pay for the reasonable costs of medical treatment to the extent such costs are not covered by your medical or hospital insurance or third-party or governmental programs providing such coverage.  No other form of compensation is available.

**What benefit can I expect?**
If the drug works, you may have some benefit.  On the other hand, it may not work and there may be no benefit.  Also, you may be on a look-alike pill that does not contain any drug and will not provide any benefit.

**Are there any other drugs that I may be able to take or things that I can do for my condition/disease if I don't want to participate in the study?**
The following other drugs or procedures are available as alternatives to [insert name of drug]:
[Insert other drugs and/or procedures].

**Who will be able to see my records and know that I am in the study?**
If you agree to become part of this study, your name will be held in confidence.  Unless required by law, only the study doctor and staff, sponsor representatives involved in this study, independent ethics committees and inspectors from government regulatory agencies will have direct access to your medical records to check the study information.

**Will I be told if new information about the drug is discovered during the study?**
You will be told in a timely manner of any significant new information that may affect your willingness to stay in this study.

**Who do I call if I have questions?**
For questions about the study or if you have a study-related injury, call the study doctor _____ [insert name] at _____ [insert telephone number].
For questions about your rights as a participant in the study, call _____ [insert name] at _____ [insert telephone number].

**Can I refuse to be in the study and can I be asked to leave the study?**
Your participation in this study is voluntary.  You can choose not to take part in the study, or you can quit at any time.  You will not lose any benefits to which you are otherwise entitled.  If you quit the study, you can receive the standard treatment for this condition.  You will not be prevented from participating in future studies.

You may be asked to leave the study by the study doctor or Merck & Co., Inc., without your consent if you need other treatment, if you do not follow the study plan, if you have a study-related injury or for any other reason.  If you leave the study, the doctor may ask to examine you and do some final tests.

You will receive a signed copy of this consent form.

I have read and understand this consent form.  All my questions have been answered.  I volunteer to take part in this study.

Signature of Volunteer_____     Date_____
Signature of Person Conducting Review of Consent_____     Date_____

Confidential - Subject To Protective Order

FOOD AND DRUG ADMINISTRATION REGULATIONS FOR INSTITUTIONAL REVIEW BOARDS (CODE OF FEDERAL REGULATIONS, TITLE 21, PART 56)

**Subpart B — Organization and Personnel**
56.107 IRB Membership

a. Each IRB shall have at least five members, with varying backgrounds to promote complete and adequate review of research activities commonly conducted by the institution. The IRB shall be sufficiently qualified through the experience and expertise of its members, and the diversity of the members, including consideration of race, gender, cultural backgrounds, and sensitivity to such issues as community attitudes, to promote respect for its advice and counsel in safeguarding the rights and welfare of human subjects. In addition to possessing the professional competence necessary to review the specific research activities, the IRB shall be able to ascertain the acceptability of proposed research in terms of institutional commitments and regulations, applicable law, and standards of professional conduct and practice. The IRB shall therefore include persons knowledgeable in these areas. If an IRB regularly reviews research that involves a vulnerable category of subjects, such as children, prisoners, pregnant women, or handicapped or mentally disabled persons, consideration shall be given to the inclusion of one or more individuals who are knowledgeable about and experienced in working with these subjects.

b. Every nondiscriminatory effort will be made to ensure that no IRB consists entirely of men or entirely of women, including the institution's consideration of qualified persons of both sexes, so long as no selection is made to the IRB on the basis of gender. No IRB may consist entirely of members of one profession.

c. Each IRB shall include at least one member whose primary concerns are in the scientific area and at least one member whose primary concerns are in nonscientific areas.

d. Each IRB shall include at least one member who is not otherwise affiliated with the institution and who is not part of the immediate family of a person who is affiliated with the institution.

e. No IRB may have a member participate in the IRB's initial or continuing review of any project in which the member has a conflicting interest, except to provide information requested by the IRB.

f. An IRB may, in its discretion, invite individuals with competence in special areas to assist in the review of complex issues which require expertise beyond or in addition to that available on the IRB. These individuals may not vote with the IRB.

**Subpart C — IRB Functions and Operations**
56.108 IRB Functions and Operations

In order to fulfill the requirements of these regulations, each IRB shall:

a. Follow written procedures: (1) For conducting its initial and continuing review of research and for reporting its findings and actions to the investigator and the institution; (2) for determining which projects require review more often than annually and which projects need verification from sources other than the investigator that no material changes have occurred since previous IRB review; (3) for ensuring prompt reporting to the IRB of changes in research activity, and (4) for ensuring that changes in approved research, during the period for which IRB approval has already been given, may not be initiated without IRB review and approval except where necessary to eliminate apparent immediate hazards to the human subjects.

b. Follow written procedures for ensuring prompt reporting to the IRB, appropriate institutional officials, and the Food and Drug Administration of: (1) Any unanticipated problems involving risks to human subjects or others; (2) any instance of serious or continuing noncompliance with these regulations or the requirements or determinations of the IRB; or (3) any suspension or termination of IRB approval.

c. Except when an expedited review procedure is used (see § 56.110), review proposed research at convened meetings at which a majority of the members of the IRB are present, including at least one member whose primary concerns are in nonscientific areas. In order for the research to be approved, it shall receive the approval of a majority of those members present at the meeting.

56.109 IRB Review of Research

a. An IRB shall review and have authority to approve, require modifications in (to secure approval), or disapprove all research activities covered by these regulations.

b. An IRB shall require that information given to subjects as part of informed consent is in accordance with § 50.25. The IRB may require that information, in addition to that specifically mentioned in § 50.25, be given to the subjects when in the IRB's judgment the information would meaningfully add to the protection of the rights and welfare of subjects.

c. An IRB shall require documentation of informed consent in accordance with § 50.27, except that the IRB may, for some or all subjects, waive the requirement that the subject or the subject's legally authorized representative sign a written consent form if it finds that the research presents no more than minimal risk of harm to subjects and involves no procedures for which written consent is normally required outside the research context. In cases where the documentation requirement is waived, the IRB may require the investigator to provide subjects with a written statement regarding the research.

d. An IRB shall notify investigators and the institution in writing of its decision to approve or disapprove the proposed research activity, or of modifications required to secure IRB approval of the research activity. If the IRB decides to disapprove a research activity, it shall include in its written notification a statement of the reasons for its decision and give the investigator an opportunity to respond to respond in person or in writing.

e. An IRB shall conduct continuing review of research covered by these regulations at intervals appropriate to the degree of risk, but not less than once per year, and shall have authority to observe or have a third party observe the consent process and the research.

Confidential - Subject To Protective Order                                    MRK-AFV0130233

**ICH HARMONISED TRIPARTITE GUIDELINE**

**GUIDELINE FOR GOOD CLINICAL PRACTICE**

**Section 3:          INSTITUTIONAL REVIEW BOARD/INDEPENDENT ETHICS COMMITTEE (IRB/IEC)**

**3.1 Responsibilities**

3.1.1    An IRB/IEC should safeguard the rights, safety, and well-being of all trial subjects.  Special attention should be paid to trials that may include vulnerable subjects.

3.1.2    The IRB/IEC should obtain the following documents:

trial protocol(s)/amendments(s), written informed consent form(s) and consent form updates that the investigator proposes for use in the trial, subject recruitment procedures (e.g. advertisements), written information to be provided to subjects, investigator's Brochure (IB), available safety information, information about payments and compensation available to subjects, the investigator's current curriculum vitae and/or other documentation evidencing qualifications, and any other documents that the IRB/IEC may need to fulfill its responsibilities.

The IRB/IEC should review a proposed clinical trial within a reasonable time and document its views in writing, clearly identifying the trial, the documents reviewed and the dates for the following:

-approval/favourable opinion;

-modifications required prior to its approval/favourable opinion;

-disapproval/negative opinion; and

-termination/suspension of any prior approval/favourable opinion.

3.1.3    The IRB/IEC should consider the qualifications of the investigator for the proposed trial, as documented by a current curriculum vitae and/or by any other relevant documentation the IRB/IEC requests.

3.1.4    The IRB/IEC should conduct continuing review of each ongoing trial at intervals appropriate to the degree of risk to human subjects, but a least once per year.

3.1.5    The IRB/IEC may request more information than is outlined in paragraph 4.8.10 be given to subjects when, in the judgment of the IRB/IEC, the additional information would add meaningfully to the protection of the rights, safety and/or well-being of the subjects.

3.1.6    When a non-therapeutic trail is to be carried out with the consent of the subject's legally acceptable representative (see 4.8.12, 4.8.14), the IRB/IEC should determine that the proposed protocol and/or other document(s) adequately addresses relevant ethical concerns and meets applicable regulatory requirements for such trials.

3.1.7    Where the protocol indicates that prior consent of the trial subject or the subject's legally acceptable representative is not possible (see 4.8.15), the IRB/IEC should determine that the proposed protocol and/or other documents) adequately addresses relevant ethical concerns and meets applicable regulatory requirements for such trials (i.e. in emergency situations).

3.1.8    The IRB/IEC should review both the amount and method of payment to subjects to assure that neither presents problems of coercion or undue influence on the trial subjects.  Payments to a subject should be prorated and not wholly contingent on completion of the trial by the subject.

3.1.9    The IRB/IEC should ensure that information regarding payment to subjects, including the methods, amounts, and schedule of payment to trial subjects, is set forth in the written informed consent form and any other written information to be provided to subjects.  The way payment will be prorated should be specified.

**3.2 Composition, Functions and Operations**

3.2.1    The IRB/IEC should consist of a reasonable number of members, who collectively have the qualifications and experience to review and evaluate the science, medical aspects, and ethics of the proposed trial.  It is recommended that the IRB/IEC should include:

(a)       At least five members.

(b)       At least one member whose primary area of interest is in a nonscientific area.

(c)       At least one member who is independent of the institution/trial site.

Only those IRB/IEC members who are independent of the investigator and the sponsor of the trial should vote/provide opinion on a trial-related matter.

A list of IRB/IEC members and their qualifications should be maintained.

Confidential - Subject To Protective Order                                        MRK-AFV0130234

3.2.2   The IRB/IEC should perform its functions according to written operating procedures, should maintain written records of its activities and minutes of its meetings, and should comply with GCP and with the applicable regulatory requirement(s).

3.2.3   An IRB/IEC should make its decisions at announced meetings at which at least a quorum, as stipulated in its written operating procedures, is present.

3.2.4   Only members who participate in the IRB/IEC review and discussion should vote/provide their opinion and/or advise.

3.2.5   The investigator may provide information on any aspect of the trial, but should not participate in the deliberations of the IRB/IEC or in the vote/opinion of the IRB/IEC.

3.2.6   An IRB/IEC may invite non-members with expertise in special areas for assistance.

**3.3 Procedures**

The IRB/IEC should establish, document in writing, and follow its procedures, which should include:

3.3.1   Determining its composition (names and qualifications of the members) and the authority under which it is established.

3.3.2   Scheduling, notifying its members of, and conducting its meetings.

3.3.3   Conducting initial and continuing review of trials.

3.3.4   Determining the frequency of continuing review, as appropriate.

3.3.5   Providing, according to the applicable regulatory requirements, expedited review and approval/favourable opinion of minor change(s) in ongoing trials that have the approval/favourable opinion of the IRB/IEC.

3.3.6   Specifying that no subject should be admitted to a trial before the IRB/IEC issues its written approval/favourable opinion of the trial.

3.3.7   Specifying that no deviations from, or changes of, the protocol should be initiated without prior written IRB/IEC approval/favourable opinion of an appropriate amendment, except when necessary to eliminate immediate hazards to the subjects or when the change(s) involves only logistical or administrative aspects of the trial (e.g., change of monitor(s), telephone number(s) (see 4.5.2).

3.3.8   Specifying that the investigator should promptly report to the IRB/IEC:

   (a)   Deviations from, or changes of the protocol to eliminate immediate hazards to the trial subjects (see 3.3.7, 4.5.2, 4.5.4).

   (b)   Changes increasing the risk to subjects and/or affecting significantly the conduct of the trial (see 4.10.2)

   (c)   All adverse drug reactions (ADRs that are both serious and unexpected.)

   (d)   New information that may affect adversely the safety of the subjects of the conduct of the trial.

3.3.9   Ensuring that the IRB/IEC promptly notify in writing the investigator/institution concerning:

   (a)   Its trial-related decisions/opinions.

   (b)   The reasons for its decisions/opinions.

   (c)   Procedures for appeal of its decisions/opinions.

**3.4**   **Records**

The IRB/IEC should retain all relevant records (e.g., write procedures, membership lists, lists of occupations/affiliations of members, submitted documents, minutes of meetings, and correspondence) for a period of at least 3 years after completion of the trial and make them available upon request from the regulatory authority(ies).

The IRB/IEC may be asked by investigators, sponsors or regulatory authorities to provide its written procedures and membership lists.

Confidential - Subject To Protective Order

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)  **1586**

Date:_____

(insert Primary Investigator's name and address below)

_____

_____

_____

RE: Insert title of protocol and protocol number

Dear Dr. _____(insert name of Primary Investigator):

My signature below verifies that the IRB/IEC listed below operates in accordance with applicable national/local and institutional regulations and guidelines which govern IRB/ERC operations.

_____        _____
Printed Name, IRB/IEC Chairperson of        Signature, IRB/IEC Chairperson

Date  (insert name and address of IRB/IEC here)

_____

_____

_____

_____

IRB's Federal Assurance number is:_____ (optional for U.S. IRBs)

Confidential - Subject To Protective Order

## INSTRUCTIONS FOR DRUG ADVERSE EXPERIENCE (AE) FORM

### GENERAL INSTRUCTIONS

An Adverse Experience Report Form must be completed for each workbooklet even if no adverse experiences were present.

### ADVERSE EXPERIENCE DEFINITION

Adverse experiences means any unfavorable and unintended change in the structure (signs), function (symptoms), or chemistry (laboratory data) of the body, or worsening of a pre-existing condition temporally associated with any use of a Merck product whether or not considered related to the use of the product. Changes resulting from normal growth and development which do not vary significantly in frequency or severity from expected levels are not to be considered adverse experiences. Examples of this may include, but not limited to, teething, typical crying in infants and children, and onset of menses or menopause occurring at a physiologically appropriate time.

Adverse experiences may occur in the course of the use of a Merck product in clinical studies or within the follow-up period specified by the protocol, or prescribed clinical practice, from overdose (whether accidental or intentional), from abuse, or a procedure.

Adverse experiences may also occur in screened patients during any preallocation baseline period as a result of a protocol-specified intervention including washout or discontinuation of usual therapy, diet, placebo treatment, or a procedure.

### SPECIFIC INSTRUCTIONS AND DEFINITIONS

**A. "LATEST INFORMATION" DATE**

Enter the date that the information, provided on the AE form, was last updated. This date is the last date of the reporting period covered by the AE form.

**B. CLINICAL ADVERSE EXPERIENCE**

List all clinical AE's that occurred. Record discrete episodes of the same experience separately.

**NOTE: Do not list death as an adverse experience. Death may be considered an outcome of an adverse experience.**

Indicate the following for each clinical adverse experience:

**DATE AE STARTED:** Enter the date that the patient or subject first experienced the AE or symptoms related to the AE

**TIME AE STARTED:** If a column is provided for time, enter the time (military time) that the AE was first noted by the patient.

**DATE AE STOPPED:** Enter the date that the AE or symptoms relating to the AE stopped. If the AE is still present on the "latest information" date entered at the top right of the form, indicate that the AE is continuing rather than entering a stop date.

**DURATION IF LESS THAN 24 HOURS:** If the AE lasted less than 24 hours, indicate the number of hours or minutes that the AE was continuously present.

**MAXIMUM INTENSITY: FOR ADULTS OR OLDER CHILDREN**

1 = MILD — Awareness of sign or symptom, but easily tolerated.

2 = MODERATE — Discomfort enough to cause interference with usual activity.

3 = SEVERE — Incapacitating with inability to work or do usual activity.

**DID AE RESULT IN:** Indicate for each adverse experience all of the conditions that are met in this question.

D = Death

P = Persistent or significant disability/incapacity

H = Hospitalization or prolongation

N = None of the above

If one or more of the choices (other than NONE) are indicated, *IMMEDIATELY notify the Merck Clinical Monitor (U.S.) or Local Medical Director (ex-U.S.) by telephone.*

**IS THE AE:** Indicate for each adverse experience all of the conditions that are met in this question.

A = Congenital anomaly/birth defect

C = Cancer

O = Due to overdose

L = Life-threatening

M = Other important medical event

N = None of the above

If one or more of the choices (other than NONE) are indicated, *IMMEDIATELY notify the Merck Clinical Monitor (U.S.) or Local Medical Director (ex-U.S.) by telephone.*

**DID THE AE CAUSE THE TEST DRUG TO BE DISCONTINUED?** Indicate, for each adverse experience, whether that particular AE resulted in the Test Drug being discontinued from the study.

**DID THE TEST DRUG CAUSE THE ADVERSE EXPERIENCE?**

1 = DEFINITELY NOT — No relationship

2 = PROBABLY NOT — Relationship is not likely

3 = POSSIBLY — Relationship may exist

4 = PROBABLY — Relationship is likely

5 = DEFINITELY — Unquestionable relationship

**C. OTHER ADVERSE EXPERIENCE**

List all other adverse experiences identified from the Laboratory Report Form (LAB) or other special safety forms (e.g., ECG, X-RAY, etc.).

**DATE LAB SPECIMEN OBTAINED OR SPECIAL SAFETY EXAM PERFORMED:** Enter the date of the laboratory exam or special safety exam on which the adverse experience was noted.

Follow the instructions listed for "CLINICAL ADVERSE EXPERIENCE" in Section B above to complete the four questions listed below for each "OTHER ADVERSE EXPERIENCE" noted:

**DID AE RESULT IN:**

**IS THE AE:**

**DID THE AE CAUSE THE TEST DRUG TO BE DISCONTINUED?**

**DID THE TEST DRUG CAUSE THE ADVERSE EXPERIENCE?**

**D. DID PATIENT/SUBJECT DIE?**

If the patient died for any reason, *IMMEDIATELY notify Merck Clinical Monitor (U.S.) or Local Medical Director (ex-U.S.) by telephone the* and complete the following questions:

**DATE DIED:**

**PROBABLE CAUSE OF DEATH:**

**DID THE TEST DRUG CAUSE THE ADVERSE EXPERIENCE?**

Confidential - Subject To Protective Order

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)          **1588**

Confidential – Subject To Protective Order                                    MRK-AFV0130238

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)          **1589**

**Product:** MK-0966
**Protocol/Amendment No.:** 089-04

**THIS PROTOCOL AND ALL OF THE INFORMATION RELATING TO IT ARE CONFIDENTIAL AND PROPRIETARY PROPERTY OF MERCK & CO., INC., WHITEHOUSE STATION, NJ, U.S.A.**

**THIS PROTOCOL REPLACES PROTOCOL NUMBER 089-03 AND SHOULD BE SIGNED BY ALL INVESTIGATORS SIGNING THE ORIGINAL PROTOCOL NUMBER 089-03.**

## SPONSOR:

Merck & Co., Inc. (hereafter referred to as the **SPONSOR**)
One Merck Drive
P.O. Box 100
Whitehouse Station, NJ 08889-0100, U.S.A.

## TITLE:

A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-0966 or Naproxen in Patients With Rheumatoid Arthritis: International Cohort

## INVESTIGATOR(S):

PRIMARY:
SECONDARY/SUBINVESTIGATOR:

## SITE:

## INSTITUTIONAL REVIEW BOARD/ETHICAL REVIEW COMMITTEE:

/MK-0966/CP/RP2318.DOC * APPROVED
Non-U.S. (Non-U.S. IND)

08-Sep-1999
R 20-Dec-1999
R 01-Feb-2000

Confidential – Subject To Protective Order

MK-0966, Reference P088C, Appendix 3.2.1 (Cont.)       **1590**

**Product:** MK-0966
**Protocol/Amendment No.:** 089-04

## MK-0966 GI Clinical Outcomes Study

### TABLE OF CONTENTS

PAGE

PROTOCOL SYNOPSIS ......................................................................................................i

STUDY FLOW CHART.....................................................................................................iii

STUDY DESIGN ...............................................................................................................vi

SPONSOR CONTACT INFORMATION .........................................................................vii

I.   CLINICAL SECTIONS ..................................................................................... 1
    A. BACKGROUND AND RATIONALE ........................................................ 1
        1.   Introduction ................................................................................... 1
        2.   Chemistry ...................................................................................... 2
        3.   Pharmacology................................................................................ 2
        4.   Absorption, Distribution, Metabolism, and Elimination
             Studies........................................................................................... 3
        5.   Safety Assessment......................................................................... 3
        6.   Prior Clinical Experience or Anticipated Effects in Man ............ 3
        7.   Rationale for the Study.................................................................. 4
        8.   Rationale for Dose Selection and Comparator Agents.................. 5
    B. OBJECTIVES ............................................................................................ 6
    C. HYPOTHESES .......................................................................................... 7
    D. PATIENT DEFINITION............................................................................ 7
        1.   Inclusion Criteria........................................................................... 7
        2.   Exclusion Criteria.......................................................................... 8
    E. STUDY DESIGN ..................................................................................... 11
        1.   Summary of Study Design ........................................................... 11
        2.   Treatment ..................................................................................... 13
             a.   Treatment Plan ................................................................. 13
             b.   Special Handling Requirements (Endoscopy)................... 25
             c.   Prior and Concomitant Medication(s)/Treatment(s) ........ 25
             d.   Diet/Activity/Other........................................................... 26
        3.   Study Procedures.......................................................................... 27
             a.   Scheduling of Clinic Visits .............................................. 27
             b.   Completing Patient Global Assessment of Disease
                  Activity ............................................................................ 27
             c.   Stratification and GI History Definition............................ 27
             d.   Patient Enrollment—Number and Duration,..................... 28

/MK-0966/CP/RP2318.DOC * APPROVED                                    08-Sep-1999
Non-U.S. (Non-U.S. IND)

**Product:** MK-0966
**Protocol/Amendment No.:** 089-04

## MK-0966 GI Clinical Outcomes Study

### TABLE OF CONTENTS (CONT.)

PAGE

e.  Discontinuation Procedures ............................................................ 28
f.  Study Drug Administration ............................................................ 29
g.  Noncompliance With Medication .................................................. 29
h.  Nonrandomized Patients ................................................................ 29

F.  EFFICACY/PHARMACOKINETIC/IMMUNOGENICITY,
    ETC., MEASUREMENTS ...................................................................... 29

G.  SAFETY MEASUREMENTS .................................................................. 30
  1.  Evaluating and Recording Adverse Experiences ................................. 30
  2.  Immediate Reporting of Adverse Experiences to the
     SPONSOR ............................................................................................... 35
     a.  Serious Adverse Experiences .......................................................... 35
     b.  Serious Vascular Adverse Experiences ........................................... 36
     c.  Selected Nonserious Adverse Experiences ..................................... 36
  3.  Safety Measurements ......................................................................... 36

H.  STUDY DURATION AND SUBMISSION OF DATA ......................... 37

I.  DATA ANALYSIS .................................................................................. 38
  1.  Responsibility For Analysis/In-House Blinding .................................. 38
  2.  Hypotheses ............................................................................................ 38
     a.  Primary Hypotheses ........................................................................ 38
     b.  Secondary Hypothesis .................................................................... 38
     c.  Criteria to Determine Success of Study ......................................... 39
  3.  Addressed Objectives ........................................................................... 39
     a.  Primary .......................................................................................... 39
     b.  Secondary ....................................................................................... 39
  4.  Variables ................................................................................................ 39
  5.  Statistical Hypothesis and Power ....................................................... 40
     a.  Sample Size, Estimation, and Power .............................................. 40
     b.  Planned Interim Analysis, Group Sequential
       Boundary, and Early Stopping Rule ............................................... 41
  6.  Statistical Methods ............................................................................... 42
  7.  Approaches to the Analysis ................................................................. 42
  8.  Subgroup Analyses .............................................................................. 43
  9.  Multiplicity .......................................................................................... 43
  10. Routine Safety Analyses ...................................................................... 43
  11. Compliance .......................................................................................... 43

II.    ADMINISTRATIVE AND REGULATORY SECTIONS ................................. 44

/MK-0966/CP/RP2318.DOC * APPROVED                                   08-Sep-1999
Non-U.S. (Non-U.S. IND)

Confidential - Subject To Protective Order                                   MRK-AFV0130241