UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX Products Liability Litigation | MDL No. 1657 |
| This Document Relates to: | SECTION L |
| STATE OF LOUISIANA, ex rel. JAMES D. CALDWELL, ATTORNEY GENERAL | JUDGE ELDON E. FALLON |
| Case No. 05-3700 | MAGISTRATE JUDGE KNOWLES |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO MOTION TO EXCLUDE TESTIMONY OF JEFFREY HARRIS, M.D., PH.D.**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................ 1

TABLE OF AUTHORITIES ................................................................................................. 2

INTRODUCTION ................................................................................................................ 4

FACTS .................................................................................................................................. 5

ARGUMENT ........................................................................................................................ 8

      I.        Dr. Harris' Opinions Are Relevant To This Case .......................................... 9

      II.      Dr. Harris' Opinions Are Reliable................................................................ 11

            A.      Harris' Cohort Opinions   are Based on Reasonable, Rational, Scientifically Valid Methodology ............................................................. 12

            B.      Harris' Opinions That LDHH Expenditures on NSAIDS Decreased After the Withdrawal of Vioxx is Reliable and Relevant ......................... 13

            C.      Harris' Opinions on the DUR Program are Reliable ................................ 15

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*,
    356 F.3d 850 (8th Cir. 2004)……………………………………………………13

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir.2002)……………………………………………………14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)………...……………………………..............8, 9, 11, 13, 14, 17

*General Electric, Co. v. Joiner*,
    522 U.S. 136, 143 (1997),…..…………………………………………………..8

*Huss v. Gayden*,
    571 F.3d 442 (5th Cir. 2009)…………………………………………………..7

*Kennedy v. Collagen Corp.*,
    161 F.3d 1226 (9th Circ. 1998)…..……………………………………………12

*Kumho Tire v. Carmichael*,
    526 U.S. 137 (1997)………..…………………………………………………11

*Mathis v. Exxon Corp.*,
    302 F.3d 448 (5th Cir. 2002)……………………………………………………12

*McCullock v. H.B. Fuller Co.*,
    61 F.3d 1038 (2d Cir.1995)…..……………………………………….………12

*Moore v. Ashland Chem., Inc.,* ,
    151 F.3d 269, 275-76 (5th Cir. 1998)…………..………………………………..8

*Plunkett v. Merck & Co. (In re Vioxx Prods. Liab. Litig.)*,
    401 F. Supp. 2d 565, 574 (E.D. La. 2005)……………………………………..8

*Primrose Operating Co. v. National American Ins. Co.*,
    382 F.3d 546 (5th Cir. 2004)……………………………………………...13, 14

*Schwab v. Philip Morris USA*,
    449 F.Supp.2d 992 (E.D.N.Y. 2006)…………………………………………..9

*United States v. Aminy*,
    15 F.3d 258, 261 (2d Cir.1994)………………………….……………………..9

## FEDERAL RULES

Fed. R. Evid. 401……………….....…………………………………………………………..9

Fed. R. Evid. 403……………….....………………………………………………………11

Fed. R. Evid. 702……………….....………………………………...…………… 8, 17

## STATE STATUTES

La. Rev. Stat. 51:1408…….……....………………………………………………………10

## INTRODUCTION

Plaintiffs have offered the expert testimony of Jeffrey Harris, M.D., Ph.D., to help prove the amount of damages they suffered from Defendant Merck Sharp & Dohme's ("Merck") conduct with respect to the sales and marketing of Vioxx.   Merck now moves to exclude Dr. Harris' testimony.

Dr. Harris brings with his opinions in this case the unique perspective of both a very experienced medical doctor and a renowned economist.  In apparent recognition that Dr. Harris' credentials and the methodology that underlies his work are impeccable, Merck focuses its attack on the relevance of Dr. Harris' opinions to Plaintiffs' claims in this case.  Merck's motion largely parrots the criticisms of its expert report by Charles River Associates purportedly authored by Stephen Wiggins, Ph.D[1].  Merck has never provided all of the underlying reliance materials to that report so that Dr. Harris could respond to those criticisms by way of a rebuttal report. Plaintiffs reserve their rights to have Dr. Harris issue a supplemental and/or rebuttal report after Merck has produced all of the underlying reliance materials and Dr. Harris has had sufficient time to analyze them.   Neither Merck, nor Dr. Wiggins, who has no medical background, provides any basis for criticizing Dr. Harris' medical opinions or any of Dr. Harris' methodology that is based on his medical expertise.

Merck claims that Dr. Harris' opinions regarding the Louisiana Department of Health and Hospitals' ("LDHH") total expenditures on Vioxx are not relevant because of Merck's legal argument that Plaintiffs would not be entitled to recovery of those monies in this case.  Merck is

---

[1] Plaintiffs have Moved to Strike, or in the Alternative Exclude, the Report and Testimony of Stephen Wiggins, Ph.D., for failure to produce all of the underlying reliance materials and due to anomolies, inconsistencies, and gaps in the limited materials that were produced, and because Stephen Wiggins was not the primary and/or sole author of the report.  Plaintiffs Motion is incorporated by reference in its entirety herein.

simply repeating this argument from its motion for summary judgment.  Plaintiffs maintain that this issue should be deferred until the summary judgment briefing is completed, since Defendant acknowledges that its motion for summary judgment provides the legal framework upon which it relies.  As will be more fully explained in Plaintiffs' memorandum of law in opposition to that motion, Dr. Harris' opinions are relevant to the standard of proof that Plaintiffs must meet.  They will assist the trier of fact and should not be excluded.

## FACTS

Dr. Jeffrey Harris is a tenured full professor of Economics at the Massachusetts Institute of Technology ("MIT") and is part of the Harvard Medical School-MIT Program in Health Sciences and Technology ("HST"). (Report of Jeffrey E. Harris, M.D., Ph.D., December 22, 2009 ("Harris Rep.") (attached to Declaration of Douglas R. Plymale ("Plymale Decl.") Exhibit A).  Dr. Harris holds both a Ph.D in Economics and an M.D., both from the University of Pennsylvania. Dr. Harris is also a practicing physician, currently licensed to practice in Massachusetts and Rhode Island. *Id*.  Dr. Harris practiced medicine at Massachusetts General Hospital for nearly thirty years, contemporaneous with his faculty position at MIT and HST. *Id*. Dr. Harris currently practices at Blackstone Valley Community Health Care and Providence Community Health Centers in Rhode Island. *Id*.  Dr. Harris spends only five to ten percent of his professional time doing legal work, and derives only approximately twenty percent of his annual income from such work. (Deposition of Jeffrey E. Harris, January 29, 2010 ("Harris Dep.") 39:13 – 21 (Excerpts attached to Declaration of Douglas R. Plymale ("Plymale Decl.") Exhibit B).

Dr. Harris has published numerous books and articles, has consulted for various governmental agencies and other organizations, and has been accepted as an expert in several

lawsuits.

Dr. Harris offers five primary opinions in this litigation:

1.        The Louisiana Department of Health and Hospitals expended a total of $20,663,672, net of manufacturer's rebates, on Vioxx during 199-2005.

2.        If Vioxx had been withdrawn from the U.S. market by the end of March 2000, total expenditures on Vioxx, bet of rebates, by the Louisiana DHH would have been reduced by $18,316,860.

3.        The decision by the Louisiana Medicaid Pharmaceutical and Therapeutics Committee (PTC) to exclude Vioxx from its Preferred Drug List (PDL) from June 10, 2002 through July 13, 2003 markedly reduced expenditures by Louisiana DHH on Vioxx.  Based upon a cohort analysis of Medicaid recipients who had been prescribed Vioxx, Dr. Harris estimates that if Vioxx had not been excluded from the PDL, then Louisiana DHH expenditures on Vioxx, net of rebates, would have been approximately $4,200,000 greater.  Based on an aggregate linear trend model, Dr. Harris estimates that if Vioxx had remained off the PDL from July 14, 2003 until its withdrawal from the U.S. market on September 30, 2004, then Louisiana DHH expenditures, net of rebates, would have declined by approximately $2,000,000.

4.        Louisiana's Drug Utilization Review (DUR) program, instituted on March 15, 2005, significantly reduced expenditures by the Department of Health and Hospitals on the two COX-2 inhibitors Bextra and Celebrex.  Based

5.          The withdrawal of Vioxx from the U.S. market by Merck on September 30, 2004 did indeed result in a compensating increase in expenditures by the Louisiana DHH.  Based upon a cohort analysis of Medicaid recipients who had been prescribed Vioxx, Dr. Harris estimates that the withdrawal of Vioxx was associated with a monthly decrease in Vioxx expenditures of $28.74.  Concurrently, combined monthly expenditures on NSAIDs and other COX-2 inhibitors increased by $16.35. Put differently, for each $1.00 decline in expenditures on Vioxx, Dr. Harris estimates that combined expenditures on NSAIDs and the other two COX-2 inhibitors increased by $0.57.

Harris Rep. ¶8.

Merck now moves to exclude Dr. Harris' opinions, claiming that they have no relevance or are unreliable.  As noted, Defendant's arguments regarding the relevance of Dr. Harris' opinion really address the underlying legal merits of Plaintiffs' claims; Plaintiffs will respond to

that argument in full in their opposition to Merck's motion for summary judgment. For the additional reasons set forth below, Merck's motion should be denied.

## ARGUMENT

The Federal Rules of Evidence govern the admissibility of expert testimony. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). As Plaintiffs have already set forth in their motions to exclude the testimony of certain of Merck's experts, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), establishes the standard for admission of expert testimony under Rule 702 of the Federal Rules of Evidence. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

F.R.E. 702. In *Daubert*, the Supreme Court held that expert testimony is admissible under Rule 702 if: (1) the reasoning or methodology underlying the testimony is scientifically valid (the "reliability" prong); and (2) the reasoning or methodology can properly be applied to the facts in issue (the "relevance" prong). *Daubert*, 509 U.S. at 592-593. Under *Daubert*, this Court acts as a "gatekeeper," to ensure that only evidence that meets the requirements of F.R.E. 702 is presented to the jury. Whether to admit expert testimony is subject to the discretion of the Court. *General Electric, Co. v. Joiner*, 522 U.S. 136, 143 (1997). The focus is on the experts' qualifications and methodology, rather than results or conclusions. *Plunkett v. Merck & Co. (In re Vioxx Prods. Liab. Litig.)*, 401 F. Supp. 2d 565, 574 (E.D. La. 2005) (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998).

Dr. Harris' opinions in this case are both reliable and relevant.

8

## I. DR. HARRIS' OPINIONS ARE RELEVANT TO THIS CASE

Merck claims that Dr. Harris' opinion regarding the Louisiana Department of Health and Hospitals' total expenditures on Vioxx is not relevant.  Merck is simply repeating its legal arguments from its motion for summary judgment.  Plaintiffs maintain that this issue should be deferred until the summary judgment briefing is completed, since Defendant acknowledges that its motion for summary judgment provides the legal framework upon which it relies.  As will be more fully explained in Plaintiffs' memorandum of law in opposition to that motion, Dr. Harris' opinions are relevant to the standard of proof that Plaintiffs must meet.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. "[T]he Rules' basic standard of relevance ... is a liberal one," *Daubert*, 509 U.S. at 587, 113 S.Ct. 2786.  The decision to admit or exclude on these grounds is within the trial court's discretion. *See United States v. Aminy,* 15 F.3d 258, 261 (2d Cir.1994)…. The jury's fact-finding and credibility-determining abilities-the skills that our legal system relies on juries to provide-can evaluate and integrate most expert testimony. A bent towards exclusion to permit the court to take the case away from the jury is frowned upon. *Schwab,* 449 F.Supp.2d at 1133, 1135.  The Court, as the fact finder, is likewise at least as capable as a jury of evaluating and integrating most expert testimony.

Merck inappropriately cites to *Schwab*, a case where Dr. Harris proffered expert testimony, as a basis to exclude Dr. Harris' first three opinions:  1) LDHH's total expenditures on Vioxx;  2) LDHH's expenditures on Vioxx from March 2000 through withdrawal; and  3) LDHH's Vioxx expenditures that were due to Vioxx being placed on the PDL in 2003.  In *Schwab*, a consumer RICO case over the marketing of 'Lite' cigarettes, the trial court excluded

calculations of profits from both Defendants' and Plaintiffs' experts.  That Court held that under RICO the refund of the full purchase price of Lite cigarettes was not an appropriate measure of damages.  However, this case is not a RICO case, and *Schwab* is inapposite.

Instead, Plaintiffs bring several causes of action including violation of the Louisiana Unfair Trade Practices Act, redhibition, and unjust enrichment, each of which may entitle Plaintiffs to damages of the total amounts spent on Vioxx.  The Louisiana Unfair Trade Practices Act expressly empowers the Louisiana Attorney General to seek an equitable remedy of restitution  "compensate any aggrieved person for any property... which may have been acquired by means of " any deceptive trade practice. LSA-R.S. 51:1408.

Plaintiffs' evidence includes testimony from former FDA Director David Kessler, M.D., that Vioxx was not safe and effective at the time it was approved for marketing; that the FDA medical officer applied the "wrong standard" in recommending approval despite substantial unresolved concerns over CV risk that required a "larger database" to answer; and that additional testing to resolve the CV risk issue should have been done before marketing.  Report of David A. Kessler, M.D. ("Kessler Rep.") at at ¶¶18-39, pp.  4-9; (attached to Plymale Decl. Exhibit C); Deposition Transcript of David A. Kessler, M.D. ("Kessler Tr.") 132:8-134:14, 164:3-12; (excerpts attached to Plymale Decl. Exhibit D).  Sufficient testing prior to May 20, 1999 would have revealed the same excess risk that was demonstrated later, and the drug would never have been marketed if adequate pre-market testing had been done.  Thus, the facts here present a basis for causation and damages that includes the entire period during which Vioxx was sold.  Put simply, if the drug had never been approved, no doctors would have prescribed it for any patients, and the State of Louisiana would not have spent any money to reimburse for Vioxx purchases.

Plaintiffs' also have substantial evidence that the results of the VIGOR were misrepresented by Merck, in terms of both cardiovascular risk and gastrointestinal safety, as of the date of its publication in March, 2000.   See generally the expert reports of Drs. John Abramson, Neil Julie, David Graham, Cornelia Pechman, John McGregor, Richard Kronmal.

Likewise, since Dr. Harris' opinions are directly related to Plaintiffs' claims, Merck's position that these opinions are "irrelevant to any remedy in this case," and efforts seeking to exclude them based on Fed. R. Evid. 403, are without merit.

Dr. Harris' opinions on total Vioxx expenditures by LDHH will assist the trier of fact and should not be excluded.

## II.   DR. HARRIS' OPINIONS ARE RELIABLE

Scientific testimony is reliable if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known.  *Daubert*, 509 U.S. at 592-93.  In *Daubert*, the Supreme Court identified four factors to be considered when determining the scientific reliability of expert testimony:  (1) whether the theory "can be (and has been) tested;" (2) whether the theory "has been subjected to peer review and publication;" (3) "the known or potential rate of error;" and (4) whether the theory has "[w]idespread acceptance" in the relevant scientific community. *Id*. at 593-94.  These factors are not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors. See *Kumho Tire v. Carmichael*, 526 U.S. 137, 150 (1997).

Although the *Daubert* analysis is applied in order to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge

the expert conclusions themselves. *Daubert*, 509 U.S. at 593-595. The focus must be solely on the principles and methodology, rather than the conclusions generated. *Id*. at 595.

Consistent with this principle, the Supreme Court has recognized that there is a range in which experts might reasonably differ on scientific or technical issues and that such conflicting evidence should be admitted to aid the jury in deciding those issues. See *Kumho Tire*, 526 U.S. at 153; see also *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("The *Daubert* analysis should not supplant trial on the merits."). As the Ninth Circuit explained:

> Judges in jury trials should not exclude expert testimony simply because they disagree with the conclusions of the expert. The *Daubert* duty is to judge the reasoning used in forming an expert conclusion. The test is whether or not the reasoning is scientific and will assist the jury. If it satisfied these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony. In arriving at a conclusion, the fact finder may be confronted with opposing experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's testimony. But their presence should not preclude the admission of the expert's testimony – they go to the weight, not the admissibility.

*Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-31 (9th Circ. 1998); see also *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir.1995) ("[d]isputes as to the strengths of [an expert's] credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.").

Dr. Harris' opinion in this case is reliable. Other Courts have previously found his work to be admissible and his methodologies to be sound.

### A.   HARRIS' COHORT OPINIONS ARE BASED ON REASONABLE, RATIONAL, SCIENTIFICALLY VALID METHODOLOGY

Dr. Harris constructed cohorts from actual LDHH Medicaid pharmacy claims for Vioxx and other drugs to perform a "difference in differences" analysis to derive his opinions 3), 4), and 5) as set forth above. This methodology using cohort studies has long been used in

pharmaceutical economics, with peer-reviewed publications dating back to the 1980s, and in fact, Dr. Harris teaches this methodology to undergraduates at MIT.  (Harris Dep. 137:1 – 139:8).

In constructing these cohorts, Dr. Harris applied his clinical medical expertise to both cohort eligibility and 12-month follow up duration.  (Harris Report ¶26; Harris Dep. 108:19-112:16; 121:12 – 126:24; 139:9-142:14; 143:1-151:14; 160:16-161:23).  Merck's expert, Dr. Wiggins, admitted that Dr. Harris' based his opinions on clinical medical expertise (See Deposition transcript of Stephen Wiggins, Ph.D., February 9, 2010 ("Wiggins Dep.") 24:16-25:15) (Excerpts attached to Plymale Decl. as Exh. E) and that he had no medical background or training (Wiggins Dep. 27:17 – 28:2), and no criticisms for Dr. Harris' clinical medical expertise. (Wiggins Dep. 128:4-129:2).  Dr. Wiggins provides no clinical medical rational or opinion as to why the 12-month follow-up period is not appropriate, or that other follow-up periods are more appropriate or not subject to the limitations identified by Dr. Harris, and thus are scientifically inferior by design.

**B.    HARRIS' OPINIONS THAT LDHH EXPENDITURES ON NSAIDS DECREASED AFTER THE WITHDRAWAL OF VIOXX IS RELIABLE AND RELEVANT**

Merck also complains that Dr. Harris failed to properly account for: (1) the possibility that patients may have switched to drugs other than NSAIDS; (2)  other regulatory events related to Bextra and Celebrex.  At the outset, it should be noted that this is not actually a criticism of Dr. Harris' methodology, but rather a disagreement with the judgments Dr. Harris made and the conclusions he drew.  Merck's belief that other factors should have been given more weight is not an appropriate basis for a challenge.  If Defendant believes that Dr. Harris' opinions are inconsistent, they may cross-examine on that basis.  As the Fifth Circuit has explained, "As a general rule, questions relating to the basis and sources of an expert's opinion affect the weight

to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Primrose Operating Co. v. National American Ins. Co*, 382 F.3d 546 (5th Cir. 2004); *see also Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 356 F.3d 850 (8th Cir. 2004) ("Generally, the factual basis of an expert's opinion goes to credibility of the testimony, not admissibility" and "[a]n expert's opinion must be excluded only if it is so fundamentally unsupported that it can offer no assistance to the jury").  Indeed, as the Supreme Court explained in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain the traditional and appropriate means of addressing perceived weaknesses in an expert's testimony. 509 U.S. at 596; *see also Primrose Operating*, 382 F.3d at 562 ("the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system"); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir.2002) ("adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony").

In any event, Merck is wrong, because Dr. Harris does account for these factors.  (Harris Rep. Table 1).  Although, Dr. Harris considered these two other events related to Bextra and Celebrex he "did not think those events were as important as those that I specifically and explicitly took into account."  (Harris Dep. 186:16 -187:17).  Dr. Harris incorporated these other events into his analyses and explained his rationale concerning them (Harris Dep. 191:23-194:8; 194:17-196:5).   If Defendant believes that Dr. Harris' opinions are inconsistent, they may cross-examine on that basis.  However, the opinions are based on reliable methodology and are admissible.

Merck also claims that Dr. Harris' opinions that LDHH expenditures on NSAIDS decreased after the withdrawal of Vioxx that what would have occurred if Vioxx had been

withdrawn on another date are irrelevant and will not assist the trier of fact, and therefore fails to meet the "fit" requirement of *Daubert*. But Plaintiffs do not rely on Dr. Harris' work to prove the causal connection between Merck's fraud and Plaintiffs' damages. Rather, Dr. Harris' expertise is in *quantifying* those damages. Dr. Harris' analyses, if done with care, can be applied to prior dates of possible Vioxx removal. (Harris Dep. 182:21-184:10). Again, the law is clear that, in general, the factual basis of an expert's opinion goes to credibility of the testimony, not admissibility. Merck also claims that there is no evidence to support Harris' assumptions. This is not so – Dr. Harris' assumptions were based on his extensive experience as a clinician, and the extent to which Plaintiffs expert reports and testimony, among other evidence, establish a causal connection between Merck's conduct and Plaintiffs' injury will be set forth in detail in Plaintiffs' opposition to Merck's motion for summary judgment. To begin with, Plaintiffs are not required to prove their injuries individually, but rather are permitted to rely on aggregate proof. The substantive law determines what the elements of Plaintiffs' claims are and how Plaintiffs are required to prove them. Plaintiffs' aggregate damages evidence is relevant to Plaintiffs' claims because under the substantive law, Plaintiffs are permitted to prove their case that way.

With respect to Merck's attack on Harris' assumptions, what emerges from Merck's brief is simply that Merck and the Plaintiffs disagree about the facts of this case and, accordingly, Merck disputes the assumptions on which Harris relies. Because there is sufficient basis for Harris' assumptions, Merck quarrels with them are appropriate for trial on the facts and for cross-examination of Dr. Harris. Merck's criticisms do not provide any basis to exclude his testimony.

## C. HARRIS' OPINIONS ON THE DUR PROGRAM ARE RELIABLE

Merck claims Dr. Harris' analyses contains an as of yet unidentified and unspecified

15

computational error.  Dr. Wiggins did not specify the error in Dr. Harris' computer program, has not supplied the intermediate files that would allow for an examination of whether *Dr. Wiggins* made any error in running the program, and has not supplied his purportedly corrected program. Plaintiffs moved to strike Dr. Wiggins report in large part due to the lack of providing these materials, and that motion is hereby incorporated by reference.   Despite the very limited available for analyses after receiving Dr. Wiggins' report and Dr. Harris' deposition, Dr. Harris in fact re-ran his program and did not find any evidence of the errors Dr. Wiggins complained of. (Harris Dep. 14:10-16:19; 18:20-19:14).   Since Dr. Wiggins claimed in his report "[f]urther evidence of this error can be demonstrated by observing Vioxx expenditures long after Vioxx was withdrawn in 2004" (Wiggins Rep. ¶96).  Dr. Harris tested the validity of this statement. Dr. Harris found there were indeed no Vioxx expenditures after September 2004 (Harris Dep. Exh. 3.).  The Court should not take simply Dr. Wiggins word for it that there is an error in Dr. Harris' program, and this is not a proper basis to exclude Dr. Harris' report.

Merck erroneously implies that Dr. Harris did not take into account for this analyses FDA statements about COX-2 inhibitors in September, 2004 or the stopping of Celebrex trials, making his opinions not relevant.  As set forth above, Merck is simply wrong:  Dr. Harris did take these factors in to account, and gave them the appropriate weight and treatment in his professional opinion.  Again, the factual basis of an expert's opinion goes to credibility of the testimony, not admissibility.  Dr. Harris' opinions are relevant and admissible.

Dr. Harris' analyses demonstrate significant effects on Medicaid sales of the Cox-II inhibitors Bextra and Celebrex as a result of prospective DUR edits implemented by LDHH in March 2005.  Merck claims that this opinion by Dr. Harris' is irrelevant because it does not show what would have happened if LDHH had implemented prospective DUR edits for Vioxx.

Similar to reasons set forth above, Merck is repeating its legal arguments in its motion for summary judgment concerning DUR edits.  Plaintiffs will show ample evidence in their opposition to Merck's motion for summary judgment that, had the true risks and lack of benefits been known, LDHH could have, and more likely than not would have, implemented prospective DUR edits for Vioxx.  Again, Dr. Harris' expertise and opinions is in *quantifying* those damages, not determining the nature of the damages.  Dr. Harris' opinion demonstrates that prospective DUR edits have a real and substantial effect on the amount Medicaid reimbursements for the drugs on which the edits are placed.

Based on the foregoing, Harris' assumptions, rationale and methodology are reasonable and scientifically sound.  They easily pass the "reliability" prong of Rule 702 and *Daubert*.

## CONCLUSION

For all the reasons stated, the testimony and opinions of Dr. Harris are both reliable and relevant, thereby satisfying the requirements of FRE 702 and *Daubert,* and therefore should not be excluded.

Dated:  March 1, 2010

Respectfully submitted,

By:  /s/   Douglas R. Plymale
James R. Dugan, II,
Douglas R. Plymale
Justin Bloom
Stephen B. Murray, Jr.
Stephen B. Murray, Sr.
***Murray Law Firm***
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone:  (504) 648-0180
Facsimile:  (504) 648-0181

**CO-CHAIR OF GOVERNMENT
ACTIONS PLAINTIFFS' CASE**

**MANAGEMENT COMMITTEE AND COUNSEL FOR PLAINTIFFS**

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
***Louisiana Department of Justice***
1885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
General Counsel
Kim Sullivan
***Louisiana Department of Health and Hospitals***
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

**COUNSEL FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Plaintiffs' Memorandum in Opposition to Motion To Exclude The Testimony Of Jeffrey E. Harris, M.D., Ph.D., and Declaration of Douglas R. Plymale in Support of Plaintiffs' Memorandum in Opposition to Motion To Exclude The Testimony Of Jeffrey E. Harris, M.D., Ph.D., has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U. S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance Pretrial Order No. 8B, on this the 1st day of March, 2010.

/s/   Douglas R. Plymale
Douglas R. Plymale
***Murray Law Firm***
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone:  (504) 648-0180
Facsimile:  (504) 648-0181