# DECLARATION OF TERRY D. LEACH, PHARM.D.

I, Terry D. Leach, hereby state, under penalty of perjury, that the foregoing is true and correct:

## I. OPINIONS

Third party payors (TPPs) solicit the assistance of Pharmacy Benefit Managers (PBMs) to develop and maintain their drug formulary or list of drugs covered in their prescription benefit. To develop the formulary PBMs engage the services of a committee of medical professionals also know as Pharmacy & Therapeutics Committees (P&T), to review PBM-supplied medical information to determine which drugs will be included. When developing a drug formulary, P&T Committees do not conduct clinical research or make determinations for off-label drug uses, relying instead on the clinical pharmacy departments of PBMs to present the most up-to-date, information available to the public. An integral part of this publicly available clinical information is derived from the drug manufacturers, who are the only parties other than the FDA that have access to these data. It is the information, which the drug manufacturers share with PBMs and the PBMs, in turn share with their P&T Committees, which sets the foundation for sound formulary development and management. The discussion that ensures is held to determine whether, based on available information and committee expertise, a particular drug is considered appropriate to be added to the TPP formulary and, if so, how the drug should be covered.

## II. QUALIFICATIONS

Terry D. Leach, Pharm.D., earned a Bachelor of Science degree in pharmacy and a Doctor of Pharmacy degree from Ohio Northern University in Ada, Ohio. In addition, he completed an accredited residency program in hospital pharmacy at Riverside Methodist Hospitals in Columbus, Ohio. Serving the health care industry in numerous capacities, Dr. Leach has been involved in such diverse areas as hospital pharmacy, oncology pharmacy, home health care, home infusion, managed care and marketing communications. Throughout his career, he has had key roles in formulary management and P&T's. For the past 15 years, Dr. Leach has held senior management positions in managed care pharmacy, including Fidelis Care of New York, Horizon BlueCross and BlueShield of New Jersey, Mid-Atlantic Medical Services Inc. (MAMSI), and general marketing consulting assignments. Spanning his managed care career, he has served as a P&T chair, vice chairman and secretary, developed and presented drug monographs to P&T Committees, created formulary kits and dossiers on behalf of various pharmaceutical companies, and attended four major PBM P&T meetings. Dr. Leach is an active member of the Academy of Managed Care Pharmacy (AMCP). He has delivered numerous scientific presentations and has authored publications in his field of expertise.

I was compensated for preparing this report and any subsequent testimony at the rate of $250.00 per hour. A copy of the letter of agreement is attached.

1

## III. BASIS FOR OPINIONS

### Complaint

A Petition for Injunctive Relief and Damages has been filed on behalf of the state of Louisiana and the Louisiana Department of Health and Hospital against Merck & Co. Inc. (Merck), seeking damages and other monetary relief because of Merck's wrongful and illegal marketing, sales, and promotional activities on behalf of the Merck's agent Vioxx. Merck is accused of misleading potential users through aggressive marketing of Vioxx and inadequate warning of the potential serious adverse effects that could occur with its use compared with other traditional non-steroidal anti-inflammatory drugs (NSAIDS). More specifically, Merck is accused, among other things, of misleading the medical community with regard to the association of Vioxx with cardiovascular complications and other adverse events.

### Assignment

As a practicing pharmacist for over 20 years, with knowledge of formulary development, expertise in managed care, and experience with P&T Committees, I was appointed by The Dugan Law Firm to render an opinion on how P&T Committee function within a PBM to develop drug formularies.

In the preparation of this report, the attached references were consulted including the following documents provided directly by The Dugan Law Firm:
- Deposition of Ben Bearden dated October 12, 2009 and associated exhibitions.

Based on my expert opinion this document will further expand on the aforementioned information on P&T Committees and the role they play in developing drug formularies.

### Introduction

P&T Committees typically comprise medical professionals who determine which mediations are covered within a managed care organization or TPP. The document that describes these drugs-use policies is usually referred to as the TPP's formulary. Since the formulary development process can be quite complicated, it requires a level of expertise not typically possessed by TPPs. Consequently, TPPs contract with organizations that serve as the primary administrators of drug formularies – that is, PBMs.

The process of developing drug formularies, which has been evolving for decades, was first initiated by hospital pharmacies and now includes almost every drug delivery system in the United States. Like most organizations, PBMs develop their formularies with the aide of a P&T Committee. When developing a drug formulary, P&T Committees do not conduct clinical research, relying instead of the clinical pharmacy departments of PBMs to present the most up-to-date information available to the public. This information is obtained through conclusions available in such resources as published peer-reviewed articles, information provided by drug manufacturers, Food and Drug Administration (FDA) approved documentation, proceedings from medical conferences, and scientific textbooks.

Once this information has been reviewed the P&T Committee then determines by a majority vote which drugs are appropriate for the TPP to cover on behalf on its members or beneficiaries, based on safety and efficacy information provided by the PBM. Unlike the decision

2

about which drugs a TPP member or beneficiary should receive. Only prescribers who also have the information on individual patient's medical history and his or her diagnosis are licensed to prescribe drugs for that patient. Via their PBMs, TPPs merely determine which medications will be covered under the prescription drug benefits.

**Responsibilities of P&T Committees**

P&T Committees typically have several key responsibilities. The primary purpose of a P&T is to determine which drugs are to be represented on the PBM's formulary(ies) and secondarily purpose is to establish the clinical basis for utilization management programs(i.e. Prior Authorization Programs). These are important decisions whose validity is only as accurate as the information provided to the P&T for consideration. In the absence of complete and/or accurate information provided by the dug manufacturers to the PBM and then relayed to the P&T, the P&T committees are unable to exercise their responsibilities to make sound formulary drug determinations.

**Overview: P&T Committees**

A formulary system is the process used by a health care organization to establish its drug formulary. The drug formulary contains a list of all drugs that have been developed within a particular health care organization to support its policies with respect to meeting the needs of its member population. This list of drugs is developed by a Formulary Committee, which is usually referred to as a P&T Committee. Most P&T Committees comprise of practicing clinicians and organizational staff who reviews pertinent data on specific drugs to determine which medications should be considered as preferred or on-the-formulary. Once a formulary has been developed, it can then be used to accompany organizational policy.

PBMs serve as the primary administrators of drug formularies. As defined by AMCP, PBMs are "organizations that managed pharmaceutical benefits for managed care organizations, other medical providers, or employers. PBMs contract with clients interested in optimizing the clinical and economic performance of their pharmacy benefit.

The typical P&T consists of between 10 and 20 members who represent a cross section of clinical expertise. Theses individuals bring their experience and knowledge to pharmacy program development. The common voting members of P&T Committee are practicing physicians who have expertise in a particular area of clinical practice, such as family medicine, internal medicine, cardiology, infectious disease, gastroenterology, psychiatry and obstetrics/gynecology. Generally, speaking there may be other members present to provide additional expertise, such as clinical pharmacists and health economists. P&T committee members are often involved in active medical practices for academic institutions or professional organizations. All committee voting members are typically compensated or their participation.

3

PBMs present drugs for P&T Committee review under a variety of circumstances:
- New dugs receiving FDA approval
- Drugs being marketed for a new indications or use
- Drugs subject to FDA scrutiny, such as those removed from the market or those containing a new black box warning
- Drugs being voluntarily removed from the market
- Newly available significant clinical data on the safety and/or efficacy of a particular drug
- Special requests from outside physicians
- The PBM has identified a problem that warrants discussion
- The P&T committee wishes to review a particular therapeutic class

**P&T Decision-Making Process**

P&T determinations are for FDA-approve uses of drugs only; P&T Committees do not make determinations for off-label drug uses. For a new drug review, a packet of background information is provided to the P&T member so that he or she may prepare for the discussions that will take place at a the meeting. Although, this information may contain a variety of data, the most common documentation is called a drug monograph.

When a P&T Committee is routinely reviewing a therapeutic drug class, therapeutic class review documents are also prepared for P&T by the PBM. A clinical pharmacist from the PBM usually presents the information represented in the monograph, followed by a discussion and a decision on whether the drug should be placed on the formulary list.

Similarly, these documents are presented to the P&T Committee for discussion and decisions on formulary inclusion and participation in utilization management programs. The discussion that ensues is held to determine whether, base on available information and committee expertise, a particular drug is considered appropriate to be added to the TPP formulary and, if so, how the drug should be covered. The two primary areas of discussion are the safety and efficacy of the agent compared with other drugs in the same therapeutic class and what constitutes the current standard for therapy.

Regardless of whether a drug monograph or a therapeutic class review is being developed by the PBM for the P&T Committee, certain basic information is always included in these documents. The Class review with the title "Non-Steroidal Anti-inflammatories (NSAIDS) Review" provided by the PBM Provider Synergies, for this case offers a good illustration of such a document which covers the following areas:[1]
- Overview
- Pharmacology
- Indications
- Pharmacokinetics
- Clinical Trials
- Drug Interactions
- Adverse effects
- Dosage
- Recommendations
- References

---
[1] Deposition of Ben Bearden, Oct. 12, 2009. Exhibit Bearden-21.

4

The information that is use by the clinical pharmacy staff in the development of such a document is limited to the clinical evidence available within the public domain, including journal articles, abstracts from professional meetings and the product's label or manufacturer's package insert. The clinical evidence that is available in the public domain must be statistically significant and without bias to render useful recommendations and decisions.

It is important to reiterate that, PBMs do not have access to any information not in the public domain, including internal or external clinical or study data.

### Impact of P&T Committee Decisions

How and when drugs are evaluated by the P&T Committee is determined by the PBM's clinical pharmacy department. Because changes in the pharmaceutical industry are common (i.e. Introduction of new medications, new drug uses, new clinical data, availability of new generic drugs), a drug formulary is constantly evolving accommodate these changes to the prescriptions benefit plan. To reiterate, the PBM can only introduce information to the P&T if all inclusive and accurate information is made available through the drug manufacture or is available through other public sources.

All prescription benefits assign a particularly drug formulary, which serves as a guide to which drugs will be covered by what benefit. Drug formularies are typically referred to as open, incentive-based, or closed. A prescription benefit does not determine which drugs an individual member, or beneficiary can or cannot receive, rather, it determines under what circumstances a drug will be paid for or covered by the prescriptions benefit. Only
Licensed professionals who by state law are eligible to prescribe (e.g. physicians, nurse practitioners) are allowed to determine which drug is appropriate for a particular patient.

### Implications for Vioxx

Vioxx was first approved for us by the FDA in 1999. At this time The State of Louisiana Medicaid program had an open formulary which meant that all drugs were eligible for payment under their prescription benefit program. In 2001 the Louisiana legislature passed a statute to create a P&T Committee with the goal of developing a Preferred Drug List (PDL). The PDL's purpose was to define what drugs were preferred by the Louisiana Medicaid for their beneficiaries with a prescription benefit.

During the launch of Vioxx into the market there was significant marketing and sales to consumers, health care professionals and prescribers. The focus of their marketing message was equivalent efficacy to the other NSAIDS with a better safety profile. What was misleading was the message of safety. Vioxx potentially had a better safety profile for the gastrointestinal tract (e.g. stomach) than the other NSAIDS that were known for causing gastrointestinal bleeding and ulcers. What was made available in the marketing campaign was the cardiovascular safety message or the clinical evidence from which to draw statistically significant and meaningful conclusions on the cardiovascular safety. The adverse cardiovascular effects eventually lead to Merck's withdrawal of Vioxx from the Market in 2004. Consequently, without clear peer-reviewed clinical evidence for PBMs to share with their P&T Committees that developed formularies for TPPs, formularies were developed and maintained with the information that was available at that time. Safer formularies and better patient care may have resulted had cardiovascular safety information been made available to prescribers and other health care professionals.

## IV. CONCLUSION

TPPs who offer prescription drug benefits rely on their contracted PBM to develop and maintain sound prescription drug benefit, of which the formulary is an integral part. To meet the needs of TPPs, their members and beneficiaries, PBMs maintain a sound formulary management system through the professional expertise of their P&T Committee. With a thorough analysis of publicly available clinical information, P&Ts are able to secure a drug formulary that is clinically sound. An important component of this publicly available clinical information is derived from the drug manufactures, who are the only parties other than the FDA that have access to this data. It is this information, which the drug manufacturers share with PBMs that PBMs, in turn share with their P&T Committees that sets the foundation for sound formulary development and management. In situations in which relevant clinical data are made available by the drug manufacturers or are not made available in a timely fashion, P&T Committees may recommend covering medications that are not in the best interests of the TPP or their beneficiaries.

I reserve the right to supplement this report when additional information becomes available.

Dated: November 6, 2009        Signed: _____
                                       Terry D. Leach, Pharm.D.

Exhibits

    1. Curriculum Vitae
    2. Letter of Agreement
    3. References Consulted