UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF LOUISIANA, *ex rel.* JAMES D. | * | SECTION L |
|     CALDWELL, JR., Attorney General, | * | |
| | * | JUDGE ELDON E. FALLON |
|               Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|    versus | * | KNOWLES |
| | * | |
| MERCK SHARP & DOHME CORP., | * | |
| | * | |
|               Defendant. | * | |
| | * | |
| Case No. 05-3700. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**MOTION TO EXCLUDE THE TESTIMONY OF JEFFREY E. HARRIS, M.D., PH.D.**

**(Expert Challenge No. 1)**

      Plaintiff's opposition to Merck Sharp & Dohme Corp.'s ("Merck's") motion to exclude the testimony of Dr. Harris says very little in response to Merck's central argument – *i.e.*, that Plaintiff asked Dr. Harris the wrong questions and thereby elicited irrelevant, unhelpful opinions that should be barred from trial. Instead, most of Plaintiff's brief is dedicated to defending Dr. Harris's hopelessly flawed methodology. But even here, Plaintiff does not really dispute that Dr. Harris's cohort design was engineered to skew the results in Plaintiff's favor, or that Dr. Harris failed to analyze several historical events that Dr. Harris himself admitted could have affected his analysis. Rather, Plaintiff asserts that these missteps amount to nothing more than "a disagreement" with Dr. Harris's judgment and conclusions. (Pl.'s Opp'n at 13.) Plaintiff is

wrong. When an expert knowingly selects a skewed analytical vehicle and ignores alternative causes, he commits methodological error and his opinion must be excluded under *Daubert*.

For these reasons, as discussed further below, Plaintiff fails to refute Merck's arguments and Dr. Harris's testimony must be excluded.

## ARGUMENT

As Merck explained in its opening brief, Dr. Harris's testimony must be excluded because: (1) his aggregate expenditure opinions relate to the wrong measure of damages; (2) his analyses depend on cohorts that are skewed in Plaintiff's favor; (3) his opinion about the effect of the Vioxx withdrawal on the State's expenditures for pain-relief medication is both unreliable and irrelevant; and (4) his opinion about the effect of a Drug Utilization Review ("DUR") program on sales of Bextra and Celebrex is marred by a computational error and would not assist the trier of fact. Plaintiff fails to rebut any of these arguments.

### I.  DR. HARRIS'S AGGREGATE EXPENDITURE OPINIONS ARE INADMISSIBLE.

In response to specific questions proffered by Plaintiff's counsel, Dr. Harris calculated the total amount of money the Louisiana Department of Health & Hospitals ("LDHH") spent on Vioxx; the amount it spent since the "end of March 2000"; and the amount LDHH purportedly spent on Vioxx as a result of its placement on the Preferred Drug List ("PDL") in 2003. (*See* Def.'s Mem. at 19.) As Merck explained in its opening brief, these opinions are irrelevant because Louisiana law would not provide for a full refund of the purchase price of Vioxx even if Plaintiff prevailed at trial. (*See id.* (citing *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1057 (E.D.N.Y. 2006) and *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 73 F. Supp. 2d 997, 1013 (N.D. Iowa 1999)).)

Plaintiff offers two responses to this argument, both of which fail. ***First***, Plaintiff argues that "*Schwab* is inapposite" because it was "a consumer RICO case." (Pl.'s Opp'n at 9-10.) But Plaintiff does not attack *Schwab*'s basic reasoning – *i.e.*, that opinions about irrelevant measures of damages are inadmissible. Rather, Plaintiff only argues that the RICO rule barring "refund of the full purchase price" does not apply in this case. (*See id.* at 10.) This may be true but it is also beside the point; like RICO, Louisiana law does not allow "refund of the full purchase price" as a remedy in a case like this one. (*See* Def.'s Mem. at 20 (citing *Smith v. Gen. Motors Acceptance Corp.*, 542 So. 2d 831, 832 (La. Ct. App. 3d Cir. 1989); La. Civ. Code arts. 2532, 2541).) Thus, Plaintiff's effort to distinguish *Schwab* is unavailing.

***Second***, Plaintiff argues that a full refund is appropriate because the State will show at trial that Vioxx would never have been approved, or that it would have been withdrawn from the market in 2000, but for Merck's alleged misrepresentations. (*See* Pl.'s Opp'n at 10-11.) Even if Plaintiff's speculation had a basis in fact (and it does not), it would not support Plaintiff's argument. After all, Plaintiff's available remedies are dictated by the law, and as Merck explained in its opening brief, the law does not permit the remedy of a full refund – whatever causal theory Plaintiff plans to pursue at trial. (Def.'s Mem. at 20.) At most, Louisiana law would permit a claim for reduced value, as to which neither Dr. Harris nor anyone else offers any opinion or evidence. Accordingly, Dr. Harris's opinions about aggregate expenditures are irrelevant and must be excluded.[1]

---

[1] Plaintiff offers no response to Merck's argument that Dr. Harris's first two opinions – concerning aggregate expenditures on Vioxx from the time it was on the market and from March 2000 – are simple calculations that do not require expert testimony and that they must therefore be excluded. (Def.'s Mem. at 19 n.5.) *See also Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

3

## II.     DR. HARRIS'S COHORTS ARE METHODOLOGICALLY FLAWED.

Dr. Harris's remaining opinions must be excluded because they are based on methodologically flawed cohorts. As Merck explained in its opening brief, these cohorts were designed to show a decline in LDHH expenditures after certain historical events Dr. Harris studied. (Def.'s Mem. at 8.) Indeed, even Dr. Harris acknowledged that his cohort design could skew the results of his analysis. (*Id*.)

Plaintiff offers virtually no response to this argument, except to assert that "[t]his methodology using cohort studies has long been used" by other experts and Dr. Harris himself, and that the arbitrary one-year limitation on Vioxx use was justified by Dr. Harris's "clinical medical expertise." (Pl.'s Opp'n at 12-13.) These arguments lack merit.

Plaintiff's first argument – that cohort studies are nothing new – misses the point entirely. Obviously, ***properly conducted*** cohort analyses are good science and admissible under the right facts. But Dr. Harris's cohort analyses are flawed because, by Dr. Harris's own admission, the cohorts he designed are not representative of the populations he purported to study. Thus, under the precedent cited by Merck in its opening brief, Dr. Harris's cohort studies are methodologically flawed and therefore inadmissible. (*See* Def.'s Mem. at 21-22 (citing, *inter alia*, *Baker v. Chevron USA, Inc.*, No. 1:05-cv-227, 2010 U.S. Dist. LEXIS 698 (S.D. Ohio Jan. 6, 2010) and *LeBlanc v. Chevron USA Inc.*, 513 F. Supp. 2d 641, 651-53 (E.D. La. 2007)).) Once again, Plaintiff offers no legal authority in response.

Plaintiff's second argument – that Dr. Harris's experience justified his judgments about cohort design – fares no better. Plaintiff does not refer to any particular aspect of Dr. Harris's experience that suggests that many – let alone most or all – Vioxx users took the drug for less than a year. And even Dr. Harris admitted that clinical experience with Vioxx was necessary to choose the proper follow-up period. (*See id.* at 6-9.) But Dr. Harris had very little relevant

4

experience with prescribing Vioxx or with his cohort design. (*Id.* at 23-24.) Plaintiff's empty assertion that Dr. Harris "applied his clinical medical expertise" is thus no response at all; rather, it is the same kind of *ipse dixit* on which Dr. Harris rested in defending his cohort design at his deposition. (*See id.* at 23.) Because Plaintiff fails to refute Merck's argument that Dr. Harris's cohort analyses were unreliable, all of his opinions based on these analyses should be excluded.

### III.     DR. HARRIS'S WITHDRAWAL ANALYSIS IS FLAWED AND IRRELEVANT.

Plaintiff also fails to refute Merck's argument that Dr. Harris should be barred from opining that LDHH's NSAID expenditures declined after Vioxx was withdrawn from the market. As explained in Merck's opening brief, Dr. Harris's analysis is unreliable because it failed to consider alternative causes for such a decline – *e.g.*, other historical events such as the halting of a Celebrex clinical trial that could have resulted in fewer NSAID prescriptions. And Dr. Harris's opinion is also irrelevant because: (1) a decline in NSAID prescriptions does not mean painkiller prescriptions declined as a whole; and (2) even if it did, that fact would have no bearing on a damages assessment in this case.

Plaintiff argues that Dr. Harris's failure to consider alternative causes for a purported decline in NSAID expenditures relates only to "the basis and sources" of Dr. Harris's opinion – not his methodology. But Fifth Circuit precedent is clear that failure to consider alternative causes ***is*** methodological error. (Def.'s Mem. at 24 (citing *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) and *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045-46 (7th Cir. 1988)).) Plaintiff's string cite of cases is not to the contrary; rather Plaintiff's cases stand for the unexceptional – and inapposite – proposition that ***other*** types of problems are not a basis to exclude expert testimony.

5

(Pl.'s Opp'n at 14.)  Not surprisingly, Plaintiff makes no effort to apply any of its precedent to the facts of this case.  Nor could it.[2]

Plaintiff alternatively asserts that Dr. Harris *did* consider other historical events that might have affected NSAID prescription rates after 2004, quoting Dr. Harris's statement that "he 'did not think those events were as important as those that I specifically and explicitly took into account.'"  (Pl.'s Opp'n at 14 (quoting Dep. of Jeffrey E. Harris, Jan. 29, 2010 ("Harris Dep.") 186:16-187:17).)  But this is no answer at all.  Dr. Harris did nothing to test his hypothesis that the other potential causes for a decline were not as important as those" he actually analyzed.  He just assumed he was right, based on his "speculative" theory that the Vioxx withdrawal itself drove all subsequent events.  (*See* Def.'s Mem. at 25.)

Even if Dr. Harris's methodology were not so flawed, his opinion would still be inadmissible because it offers no window into what would have occurred if Vioxx had been withdrawn in March 2000 (or any other date before 2004).  Plaintiff argues conclusorily that "Dr. Harris' analyses, if done with care, can be applied to prior dates of possible Vioxx removal."  (Pl.'s Opp'n at 15.)  But like Dr. Harris, Plaintiff does not say how.  If Plaintiff simply means that it can apply the rate of decreased expenditures that Dr. Harris found in his analysis to any prior date, Plaintiff is wrong – even Dr. Harris says so.  (*See* Def.'s Mem. at 26 (citing Harris Dep. 182:21-183:10).)  In order to justify that sort of projection, Plaintiff would have to make the impossible showing that an identical mix of information that existed at the time of the September

---

[2] The only one of Plaintiff's cases that is arguably relevant here is *Amorgianos v. National Railroad Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002).  But *Amorgianos* supports Merck's position, not Plaintiff's.  In that case, the Second Circuit affirmed the exclusion of an expert who failed to follow his own methodology in assessing specific causation.  According to the expert, a proper exposure assessment would take into account a number of specified variables.  *Id.* at 268.  But the same expert "inexplicably 'did not find it necessary' to include [those variables] in his calculation" of exposure, even though "data on the additional variables was available to" him.  *Id.*  The same is true here.  Data regarding other possible causes of the purported decline in NSAID expenditures was obviously available to Dr. Harris – he identified them in his own report.  (*See* Def.'s Mem. at 24-25.)  Yet, "inexplicably," Dr. Harris declined to include these other possible causes in his analysis.

2004 withdrawal would have existed at the time of a hypothetical earlier withdrawal – for example, that doctors would have had the benefit of the same clinical trial data and analyses, and that patients would have had the same amount of information concerning the risks and benefits of NSAIDs.[3]  Because Plaintiff has no such evidence, Dr. Harris's withdrawal opinion is unreliable and irrelevant – and must be barred from trial.

## IV.     DR. HARRIS'S DUR ANALYSIS IS FLAWED AND IRRELEVANT.

Finally, Plaintiff fails to rebut Merck's argument that the Court should exclude Dr. Harris's opinion that LDHH's Bextra and Celebrex expenditures declined after the implementation of LDHH's DUR program.  As Merck argued in its opening brief, this opinion is unreliable because it contains a computational error, and it is irrelevant because it cannot be applied to the facts of this case.

Plaintiff responds by arguing that Dr. Harris determined that no error exists in his analysis.  But Plaintiff is talking about a different potential error identified by Dr. Wiggins (one that involved supposed purchases of Vioxx after its withdrawal).  Although Dr. Harris claimed at his deposition to have looked into that concern, he did not consider the error Merck raised in its opening brief, which involved the dates of Bextra/Celebrex purchases. (*See* Harris Dep. 14:10-19:21 (attached as Ex. 1) (explaining that he looked into one potential error raised by Dr. Wiggins but not this one).)  Plaintiff also attempts to obfuscate the issue by asserting that "Dr. Wiggins did not specify the error in Dr. Harris' computer program." (Pl.'s Opp'n at 16.)[4]  But

---

[3]     In any event, such a showing is barred by the need for individualized proof of causation in cases like this one. (*See* Def.'s Mot. for Summ. J. at 24-29 (citing, *inter alia*, *In re Zyprexa Prods. Liab. Litig.*, Nos. 07-cv-645, 04-md-1596, --- F. Supp. 2d ----, 2009 WL 4260857, at *56 (E.D.N.Y. Dec. 1, 2009)).)  As other courts have recognized, plaintiffs cannot short-circuit this requirement through the use of expert testimony. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 556-57 (S.D.N.Y. 2004) (excluding expert testimony because opinion as to how additional disclosures would have influenced physicians' prescribing behavior was purely speculative and therefore inadmissible).

[4]     Plaintiff attacks Dr. Wiggins throughout its brief, but this motion is about Dr. Harris, not Dr. Wiggins. Whatever the merit of Plaintiff's complaint about Dr. Wiggins's disclosures (and there is none), it is clear that Dr.

7

1010197v.1

Dr. Harris evinced a clear understanding of the potential problem at his deposition (Harris Dep. 14:10-19:21), and he admitted that he could have evaluated it in a matter of hours (*see id.* 24:4-25:16). He simply chose not to do so. (*See id.*)  As a result, Dr. Harris was forced to agree that he did not "know one way or another whether [his] Bextra-Celebrex cohort" contained a serious error. (*Id.* 217:4-9.)  Dr. Harris's analysis is obviously unreliable in light of this concession, and it is therefore inadmissible. (Def.'s Mem. at 27.)

Plaintiff again defends Dr. Harris's decision to ignore possible alternative causes for the decline in Bextra and Celebrex expenditures by arguing that Dr. Harris "did take these factors into account." (Pl.'s Opp'n at 16.)  Here, however, Dr. Harris actually disagreed with Plaintiff; at his deposition, he conceded that he "didn't take into account the FDA Advisory Committee" that met in 2005, among other things. (*See* Def.'s Mem. at 27 (quoting Harris Dep. 226:14-22).)  Instead, Dr. Harris simply dismissed these events as irrelevant, based on his own say-so. That is not a proper methodology; and the cases cited by Merck hold that experts who ignore possible alternative causes do not satisfy *Daubert*'s requirements. (*See* Def.'s Mem. at 24.)

Plaintiff's final argument – that Dr. Harris's DUR opinion is relevant because his attempts to "quantif[y]" the effects of the Bextra-Celebrex DUR program could be projected onto a hypothetical DUR program applied to Vioxx (Pl.'s Opp'n at 17) – also fails.  Plaintiff offers absolutely no explanation of how such a projection could be accomplished and again ignores the fact that Dr. Harris himself has not done this work, has not explained how anyone else could do this work, and does not believe it can be done easily.  Indeed, Dr. Harris agreed that whether his analysis could be applied to a hypothetical Vioxx DUR program "would depend upon the mix of information that patients and doctors had about alternative therapies" at the time

---

Harris understood the error Dr. Wiggins found.  Dr. Harris's decision not to investigate that error had nothing to do with whether Merck or Dr. Wiggins made sufficient disclosures to him – as Dr. Harris ultimately conceded.  (*See* Def.'s Mem. at 15-16.)

it went into effect (Harris Dep. 207:18-24), and that "there was a great deal of information about NSAIDs" available when the Bextra-Celebrex DUR program went into effect "that was not available during the time Vioxx was on the market" (*id.* 208:1-5). This is all but an admission that Dr. Harris's analysis *cannot* be applied to a hypothetical Vioxx DUR program; at a minimum, it is an admission that Dr. Harris himself would not attempt such an application. Accordingly, Dr. Harris's DUR opinion has no application to this case, and it should be excluded on this ground as well.

## CONCLUSION

For all of these reasons, and those set forth in Merck's opening brief, the Court should bar Dr. Harris from testifying at trial.

Respectfully Submitted,

_____
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

**ATTORNEYS FOR MERCK SHARP & DOHME CORP.**

1010197v.1

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Reply Brief In Support Of Motion Of Merck Sharpe & Dohme Corp. ("Merck") To Exclude Testimony Of Jeffrey E. Harris, M.D., Ph.D. has been served on Liaison Counsel by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Plaintiff, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 9th day of March, 2010.

        /s/ Dorothy H. Wimberly
        Dorothy H. Wimberly, 18509
        STONE PIGMAN WALTHER
        WITTMANN L.L.C.
        546 Carondelet Street
        New Orleans, Louisiana  70130
        Phone:  504-581-3200
        Fax:    504-581-3361
        dwimberly@stonepigman.com

        Defendants' Liaison Counsel

1010197v.1