UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF LOUISIANA, *ex rel.* JAMES D. | * | SECTION L |
|     CALDWELL, JR., Attorney General, | * | |
| | * | JUDGE ELDON E. FALLON |
|               Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|     versus | * | KNOWLES |
| | * | |
| MERCK SHARP & DOHME CORP., | * | |
| | * | |
|               Defendant. | * | |
| | * | |
| Case No. 05-3700. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF NEIL L. JULIE, M.D.

**(Expert Challenge No. 5)**

1010213v.1

## TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................................ 1

    I.    PLAINTIFF CANNOT DISPUTE THAT DR. JULIE IMPROPERLY BASED MOST OF HIS TESTIMONY ON THE CONCLUSIONS OF DR. JEWELL. .................................................................................................. 2

        A.    Plaintiff Cannot Dispute That Dr. Julie Improperly Recites Dr. Jewell's Findings With No Independent Analysis. .................................... 2

        B.    Plaintiff Fails To Refute Merck's Contention That The Jewell Report Does Not Constitute Facts Or Data "Of A Type Reasonably Relied Upon By Experts." .......................................................................... 4

    II.    DR. JULIE SHOULD BE BARRED FROM OPINING ON MERCK'S MARKETING "STRATEGIES." ....................................................................... 6

    III.    PLAINTIFF'S EFFORT TO SALVAGE A FEW STRAY OPINIONS IN DR. JULIE'S REPORT FAILS. ........................................................................ 8

CONCLUSION ........................................................................................................................... 10

1010213v.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Breast Implant Litigation*,
    11 F. Supp. 2d 1217 (D. Colo. 1998)..................................................................................... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)................................................................................................................ 1

*Eberli v. Cirrus Design Corp.*,
    615 F. Supp. 2d 1357 (S.D. Fla. 2009) ................................................................................... 3

*Johnson v. Louisville Ladder*,
    No. 07-764-KD-M, 2008 U.S. Dist. LEXIS 102031 (S.D. Ala. Nov. 14, 2008) ................... 8

*King-Indiana Forge, Inc. v. Millennium Forge, Inc.*,
    No. 1:07-cv-00341-SEB-DML, 2009 U.S. Dist. LEXIS 96131 (S.D. Ind. Sept. 29,
    2009) ....................................................................................................................................... 3

*Meadows v. Anchor Longwall & Rebuild, Inc.*,
    306 F. App'x 781 (3d Cir. 2009).............................................................................................. 8

*Out-A-Sight Pet Containment, Inc. v. Radio System Corp.*,
    No. 01-5775, 2004 U.S. Dist. LEXIS 13256 (E.D. Pa. July 9, 2004) ................................. 10

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
    461 F. Supp. 2d 271 (D.N.J. 2006)......................................................................................... 7

*Plunkett v. Merck & Co., Inc.*,
    401 F. Supp. 2d 565 (E.D. La. 2005)................................................................................. 3, 4

*In re Rezulin Products Liability Litigation*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................................................. 10

*In re Rezulin Products Liability Litigation*,
    369 F. Supp. 2d 398 (S.D.N.Y. 2005) ................................................................................... 6

*In re Seroquel Products Liability Litigation*,
    No. 6:06-md-1769-Orl-22DAB, 2009 WL 3806436 (M.D. Fla. July 20, 2009).................... 7

*Young v. Burton*,
    567 F. Supp. 2d 121 (D.D.C. 2008)........................................................................................ 7

Plaintiff's opposition to Merck Sharp & Dohme Corp.'s ("Merck's") motion to exclude the testimony of Dr. Neil L. Julie fails to refute Merck's argument that Dr. Julie's opinions regarding the alleged gastrointestinal risks of Vioxx are unreliable because they rest entirely on an attorney-commissioned report written by a non-testifying expert whose conclusions Dr. Julie never independently confirmed. Plaintiff also fails in its effort to argue that Dr. Julie's marketing opinions are in fact medical opinions and are therefore admissible. And while Plaintiff attempts to salvage a few stray sentences of Dr. Julie's otherwise inadmissible opinions, that effort fails as well. For these reasons, as discussed further below, Dr. Julie should not be allowed to testify at trial.

## ARGUMENT

Dr. Julie plans to testify that Vioxx "is harmful to the GI tract" and "did not provide a GI benefit to most patients who utilized NSAID type medications." (Report of Neil L. Julie, M.D. ("Julie Rep.") ¶¶ 11-12, Nov. 4, 2009 (attached to Def.'s Mem. as Ex. 1).) In addition, Dr. Julie plans to testify that Merck failed to disclose the gastrointestinal risks of Vioxx in its efforts to "promote Vioxx use among the general population," "persuade doctors to prescribe Vioxx," and "'convince payors of the benefits of using Vioxx.'" (*Id.* ¶¶ 45, 47-48 (quoting MRK-ABL-0001224).) As Merck explained in its opening brief, Dr. Julie's testimony fails the requirements of Federal Rules of Evidence 702 and 703 and the criteria for the admissibility of expert testimony set forth by the U.S. Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Plaintiff does not – and cannot – refute any of Merck's arguments.

*First*, Plaintiff provides no response whatsoever to Merck's argument that Dr. Julie's testimony is inadmissible because it merely parrots Dr. Jewell's conclusions without any independent analysis or assessment of Dr. Jewell's findings. Plaintiff is also unable to dispute that Dr. Julie cannot properly rely on Dr. Jewell's findings under Federal Rule of Evidence 703

1010213v.1

because Dr. Jewell's two page, attorney-commissioned report is not the type of material reasonably relied on by an expert.

***Second***, Plaintiff's effort to characterize Dr. Julie's marketing opinions as "medical" opinions is unavailing. Because Dr. Julie is not qualified as a marketing expert and because he is not permitted to provide a "history" of Merck's marketing "strategies" under the guise of expert testimony, these "opinions" must be excluded.

***Third***, and finally, Plaintiff's attempt to salvage a few stray sentences in Dr. Julie's report that purportedly do not fall within the scope of Merck's motion should also be rejected. Contrary to Plaintiff's arguments, many of those statements do in fact rely on Dr. Jewell's analysis and, as noted below, others are inadmissible for separate reasons.

## I. PLAINTIFF CANNOT DISPUTE THAT DR. JULIE IMPROPERLY BASED MOST OF HIS TESTIMONY ON THE CONCLUSIONS OF DR. JEWELL.

In its opening motion, Merck explained that: (1) Dr. Julie's opinion inappropriately parrots Dr. Jewell's report without any independent analysis or assessment of Dr. Jewell's findings; and (2) Dr. Julie's reliance on Dr. Jewell's unpublished report must be excluded under Federal Rule of Evidence 703 because it is not "of a type reasonably relied upon by experts" in the field. As set forth below, Plaintiff does not have a valid response to either argument.

### A. Plaintiff Cannot Dispute That Dr. Julie Improperly Recites Dr. Jewell's Findings With No Independent Analysis.

Plaintiff does not dispute that an expert may not adopt the findings of another individual without conducting an independent analysis to confirm those findings. Instead, Plaintiff argues that "Dr. Julie's opinions and data review were performed independently, and he reached his own conclusions" regarding the VIGOR steroid-use issue. (Pl.'s Opp'n at 4.) Plaintiff further notes that Dr. Julie reviewed the relevant documents concerning the VIGOR trial, including the VIGOR data files, the published VIGOR clinical trial article and the VIGOR Data Analysis Plan.

2

(*Id.* at 5-6.) But those are not the materials that informed Dr. Julie's opinion. Rather, Dr. Julie admits that it was **Dr. Jewell's paper** that led him to believe that the gastrointestinal benefits of Vioxx seen in the VIGOR trial were "entirely due to the effects within steroid users." (*See* Julie Rep. ¶ 34 (citation omitted).) Accordingly, that was the material he was required to analyze and verify in formulating his opinions. *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1363-64 (S.D. Fla. 2009).

He did not do so. As set forth in Merck's opening brief, Dr. Julie did not independently analyze the report, and he did not make any effort to assess Dr. Jewell's methodology. (Dep. of Neil Julie ("Julie Dep.") 50:8-20, 129:3-9, 131:4-8, 283:3-284:8, Jan. 11, 2010 (attached as Ex. 1).) Indeed, he did not even attempt to speak with Dr. Jewell about the analysis. (*Id.* 126:10-19.) Instead, Dr. Julie simply assumed that Dr. Jewell was qualified to analyze the VIGOR data based on Dr. Jewell's "title." (*Id.* 127:4-18.) Such blind adoption of another's opinions cannot constitute admissible expert evidence. *See King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07-cv-00341-SEB-DML, 2009 U.S. Dist. LEXIS 96131, at *5 (S.D. Ind. Sept. 29, 2009) (in order to satisfy Rule 702 and *Daubert*, an "expert must incorporate the information supplied to him into his underlying facts, independently review the information, and then formulate, with calculations consistent with his expertise, an opinion that relies upon that [and] any other relevant information").

Plaintiff's suggestion that Dr. Julie's reliance on Dr. Jewell's report is supported by this Court's prior evidentiary rulings in the Vioxx personal injury litigation also fails. (Pl.'s Opp'n at 7 (citing *Plunkett v. Merck & Co.*, 401 F. Supp. 2d 565 (E.D. La. 2005)).) In *Plunkett*, Merck sought to exclude the testimony of Wayne A. Ray, Ph.D. on grounds that, *inter alia*, Dr. Ray relied on the re-analysis of clinical trial data performed by another expert that "was conducted for purposes of this litigation, has not been published, and has not been subject to peer review."

3

*Plunkett*, 401 F. Supp. 2d at 585. The Court denied Merck's motion in part. *Id.* at 587. Contrary to Plaintiff's suggestion, however, the Court never explicitly discussed the appropriateness of the plaintiff's expert's reliance on the other expert's unpublished re-analysis. *Id.* at 584-87. Rather, the Court concluded that Dr. Ray's opinions were "derived from his education, training, research, experience, expertise, and review of the peer-reviewed medical literature and other publicly available documents" and that he was "adequately qualified to testify" regarding certain matters that fell within his area of expertise. *Id.* at 586. *Plunkett*, therefore, lends no support to Plaintiff's opposition in the present case.

The transcript Plaintiff cites from *Barnett v. Merck* is similarly unavailing. Plaintiff asserts that the Court permitted the plaintiff's expert in that case, John W. Farquhar, M.D., to rely on another unpublished report from Dr. Jewell. (Pl.'s Opp'n at 7.) However, the transcript reveals nothing of the sort. Rather, the ruling cited by Plaintiff was a denial of the plaintiff's motion to offer Dr. Jewell as a rebuttal expert, and in so ruling, the Court did not explicitly address the admissibility of Dr. Farquhar's testimony. *See* Tr. 82:22-83:3, *In re Vioxx Prods. Liab. Litig.*, July 6, 2006. Indeed, the transcript reveals that the admissibility of Dr. Farquhar's testimony was not at issue at that hearing and was not argued by either party. *Id.*

In sum, Dr. Julie had an obligation to independently analyze the methodology in Dr. Jewell's report before opining on his conclusions or adopting them as his own. Because he failed to do so, his opinions must be excluded at trial.

**B.   Plaintiff Fails To Refute Merck's Contention That The Jewell Report Does Not Constitute Facts Or Data "Of A Type Reasonably Relied Upon By Experts."**

Plaintiff also fails to refute Merck's contention that Dr. Julie's testimony is inadmissible under Federal Rule of Evidence 703 because the Jewell report is not the type of material "reasonably relied upon by experts in the particular field." (*See* Def.'s Mem. at 9-10.)

Plaintiff first defends Dr. Julie's reliance on the attorney-commissioned work of Dr. Jewell by arguing that Merck "exaggerate[s] Dr. Julie's reliance upon Dr. Jewell's work." (Pl.'s Opp'n at 8-9.) But this argument is belied by Dr. Julie's own report, which reveals that his conclusion regarding the VIGOR study is a ***direct quote*** from Dr. Jewell's two-page report. (Julie Rep. ¶ 34 ("'In summary, the difference between Vioxx and naproxen in the occurrence of confirmed complicated PUBs appears to be entirely due to the effects within steroid users.'") (quoting Report of Nicholas P. Jewell, M.D., Sept. 17, 2009).)

Plaintiff also asserts that Dr. Julie's reliance on Dr. Jewell's paper was permissible under Rule 703 because Dr. David Sales, Merck's expert, "confirmed Dr. Julie's view that there is no controversy as to the data or the accuracy of the statistical analysis." (Pl.'s Opp'n at 9.) In making this argument, Plaintiff apparently takes the position that Merck's expert has done Dr. Julie's work for him. According to Plaintiff, defense expert Dr. David Sales "asked defense counsel about the number of complicated PUBs in the steroid versus non-steroid users in VIGOR," "defense counsel told him the figures used by Dr. Graham were accurate," and Dr. Sales then "***conducted his own calculation that confirmed the accuracy of the incidence rate comparisons***." (*Id.* (emphasis added).) Plaintiff's argument is misleading. Dr. Sales did confirm the accuracy of the incidence *rates* relied upon by Dr. Jewell, but in so doing, Dr. Sales merely stated that Dr. Jewell's math was correct in tallying the number of GI incidents. At no point did Dr. Sales suggest that he had replicated Dr. Jewell's ***subgroup interaction test*** or confirm that the conclusions drawn from that test were accurate.

In any event, even if Plaintiff were correct in its assertion that Dr. Sales confirmed Dr. Jewell's conclusions, Plaintiff cannot rely on defense counsel and defense experts to establish the reliability of its own expert's testimony. At best, this argument merely confirms that Dr. Julie could easily have done the work necessary to confirm the reliability of Dr. Jewell's work – and

failed to do so. The issue here is not the accuracy *vel non* of Dr. Jewell's paper, but rather whether it was reasonable under Rule 703 for Dr. Julie to rely on Dr. Jewell's unpublished, attorney-commissioned report. Plaintiff has failed to refute Merck's argument that it was not.[1]

## II. DR. JULIE SHOULD BE BARRED FROM OPINING ON MERCK'S MARKETING "STRATEGIES."

Plaintiff seeks to justify Dr. Julie's attempt to opine on marketing-related issues by arguing that Dr. Julie is in fact explaining the "scientific and technical content" of marketing documents, that he has the necessary qualifications to do so, and that such testimony would assist the trier of fact. This is a distortion of Dr. Julie's testimony. In fact, Dr. Julie goes far beyond explaining the "scientific" content of specific documents – he offers broad opinions regarding Merck's overall marketing strategies, methods and plans. For example, Dr. Julie concludes, based on his review of Merck's marketing materials, that "[d]irect to consumer advertising (DTCA) was one method used by Merck to promote Vioxx use among the general population without regard to underlying risk." (Julie Rep. ¶ 45.) Dr. Julie further states that "the company invested $65 million in DTCA in 2002," resulting in $176 million of "annual gross sales influenced by DTCA." (*Id.*) Dr. Julie also describes Merck's "'physician promotion' efforts to persuade doctors to prescribe Vioxx" (*id*. ¶ 47), as well as its purported efforts to "'convince'" third-party payors of Vioxx's benefits and to "'emphasize GI safety'" (*id*. ¶ 48 (quoting MRK-ABL-0001224)). In addition, Dr. Julie purports to describe Merck's "method[s] . . . to promote

---

[1] Plaintiff also fails to refute Merck's argument that Dr. Julie's opinions are not generally accepted in the relevant scientific community. In response to this argument, Plaintiff cites to a single study that purportedly supports Dr. Julie's view regarding the gastrotoxicity of Vioxx versus other NSAIDs. (Pl.'s Opp'n at 10.) But one study is not enough to establish that Dr. Julie's opinions are generally accepted in the relevant medical community – particularly in light of the numerous contradictory studies cited in Merck's opening brief. *See In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005) (expert's opinion based on a handful of clinical studies suggesting that Rezulin could cause liver injury was unreliable where the bulk of "scientific literature contains evidence tending to refute the expert's theory"); *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1236 (D. Colo. 1998) (expert's opinion of a causal association between breast implants and neurological disorders was unreliable where he based his conclusion on one study, and several other studies indicated no support for his hypothesis).

Vioxx use among the general population without regard to underlying risk," promotional "efforts to persuade doctors to prescribe Vioxx . . . regardless of underlying risk" and strategy to "convince payors" of Vioxx's benefits. (*Id.* ¶¶ 45, 47-48.) Such opinions have nothing to do with the "medical content of Merck's marketing materials."

Plaintiff's reliance on *In re Seroquel Products Liability Litigation*, No. 6:06-md-1769-Orl-22DAB, 2009 WL 3806436 (M.D. Fla. July 20, 2009) (Pl.'s Opp'n at 12), is thus inapposite. In *Seroquel*, the court allowed three expert witnesses – a pharmacologist, an epidemiologist and a psychiatrist – to testify, in part, about the medical content of defendant's allegedly deceptive marketing for the drug Seroquel. *Id.* at *2. The court noted, however, that "Plaintiffs' counsel may not simply use these expert witnesses to provide a narrative history of [the defendant's] marketing and labeling practices" because such opinions are "proper subjects for closing argument, not expert testimony." *Id.* at *4. Thus, the court expressly forbade the experts from opining about "what a drug company intended or sought to achieve through the use of those marketing materials." *Id.*; *see also Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 461 F. Supp. 2d 271, 277 (D.N.J. 2006) (Pl.'s Opp'n at 12) (limiting a rheumatology expert's opinions regarding defendant's marketing materials to testimony regarding the accuracy of the "medical facts and science" in the materials).

The same principle bars Dr. Julie's testimony here. As set forth above, Dr. Julie does not offer scientific opinions regarding the veracity of technical content included in marketing materials; rather, he seeks to testify generally about Merck's marketing "methods," "efforts" and "strategies." This is not proper testimony for a medical witness with no background and expertise in marketing. And while Plaintiff asserts that Dr. Julie is qualified to provide scientific

---

Thus, Dr. Julie's opinions should be excluded for this reason as well. *See Young v. Burton*, 567 F. Supp. 2d 121 (D.D.C. 2008).

opinions regarding the *veracity of medical information* made in advertisements or marketing materials, Plaintiff does not claim that Dr. Julie has experience or qualifications that allow him to go further and assess Merck's marketing strategies, goals or plans generally.  (*See* Pl.'s Opp'n at 14-15.)  For this reason alone, the testimony should be excluded.

Finally, even if Plaintiff were correct that Dr. Julie's marketing opinions were limited to explaining the "scientific and technical content" of Merck's marketing materials – which they are not – those opinions would still be inadmissible because they are irrelevant to Plaintiff's claims.  Plaintiff offers no response to this argument; nor could it.  After all, Dr. Julie has already admitted that the documents cited as supporting materials in his report are general marketing documents that reflect "national" strategies – not Louisiana-specific materials.  (*See* Julie Rep. ¶¶ 45, 47-48 (citing MRK-ABI0008139 and MRK-ABL0001224).)  Thus, Plaintiff is unable to dispute that Dr. Julie's opinions regarding Merck's marketing do not "fit the facts of the case" and are therefore irrelevant.  *See Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009); *Johnson v. Louisville Ladder*, No. 07-764-KD-M, 2008 U.S. Dist. LEXIS 102031, at *32-38 (S.D. Ala. Nov. 14, 2008).  For this reason, too, Dr. Julie's marketing-related testimony should be excluded.

### III. PLAINTIFF'S EFFORT TO SALVAGE A FEW STRAY OPINIONS IN DR. JULIE'S REPORT FAILS.

Finally, Plaintiff cites a few stray sentences in Dr Julie's report that it claims do not relate to marketing or rely on the Jewell analysis.  According to Plaintiff, Dr. Julie should be allowed to testify on these matters even if his other opinions are excluded.  This argument fails too.

As an initial matter, some of the opinions Plaintiff seeks to salvage do in fact rely on the Jewell analysis.  Most notably, Plaintiff argues that Merck's motion does not challenge the basis for Dr. Julie's opinion that Vioxx is gastrotoxic because it does not address Dr. Julie's reliance

on the APPROVe study, the Alzheimer's Protocol 078 trial, and Protocol 069. (Pl.'s Opp'n at 2-3.) But there can be little doubt that Dr. Julie's opinion that Vioxx is gastrotoxic ultimately depends on his views of the VIGOR study, based on Dr. Jewell's statistical re-analysis. (*See* Julie Rep. ¶¶ 31-36.) Indeed, as discussed above, Dr. Julie's conclusion regarding the VIGOR study is a direct quote from Dr. Jewell's two-page report. Thus, Dr. Julie's review of the other studies referred to by Plaintiff is beside the point.

Similarly, Plaintiff argues that Merck has not challenged Dr. Julie's "opinion" that "the most commonly used doses of NSAIDs conferred little GI risk." (Pl.'s Opp'n at 3 (citation omitted).) In support, Plaintiff refers to Dr. Julie's reliance on "two peer-reviewed studies showing that real-world osteoarthritis patients, who predominantly use ibuprofen intermittently at doses of 1200 mg or less per day, have rates of GI adverse effects that are not distinguishable from placebo or background rates." (*Id.*) But this "opinion" regarding the toxicity of over-the-counter medications such as ibuprofen is irrelevant in a case where, as here, doctors were choosing among *prescription* pain relief medications. There is no evidence in this case that Louisiana doctors (or the P&T Committee) were making choices between over-the-counter/low dose NSAIDs and Vioxx. Moreover, Merck never claimed that Vioxx was safer than over-the-counter doses of NSAIDs from a gastrotoxicity perspective. Thus, Dr. Julie's "opinion" regarding the gastrotoxicity of "commonly used doses" of NSAIDs is utterly irrelevant.

Next, Plaintiff argues that Merck does not challenge Dr. Julie's opinion that "co-administration of low-aspirin with Vioxx eliminated any GI benefit compared to ibuprofen." (*Id.* at 4.) The support for this opinion is Study 136 – a scheduled endoscopy study (published as Laine 2004). But Dr. Julie testified at deposition that endoscopy data *is not reliable* for making clinical judgments. (Julie Dep. 315:6-13 ("endoscopic findings based on scheduled endoscopies are not a good surrogate for clinically significant ulcerative disease").) As a result, Dr. Julie's

9

"opinion" regarding co-administration of low dose aspirin with Vioxx contradicts his own sworn testimony and is therefore unreliable.

The few other stray statements identified by Plaintiff are inadmissible for other reasons. For example, Plaintiff argues that Merck failed to challenge Dr. Julie's "opinion" that Merck consultant Loren Laine "knowingly relied on 'bogus' estimates of the number of deaths attributable to NSAID related GI events to justify the introduction of Vioxx to the market place." (Pl.'s Opp'n at 4.)  But as Merck explained in its Motion To Partially Exclude The Testimony Of John David Abramson, M.D., such testimony is inadmissible because it is nothing more than an effort to "cheerlead" factual aspects of the Vioxx litigation through purported expert testimony. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (experts should not be permitted to "supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence") (citation omitted).

Finally, even if Plaintiff could identify a few random sentences in Dr. Julie's report that are not inadmissible, that is not sufficient to salvage his proposed testimony.  As other courts have recognized, where – as here – the "core" of an expert's opinions is inadmissible, the expert should be altogether barred from testifying.  *See, e.g.*, *Out-A-Sight Pet Containment, Inc. v. Radio Sys. Corp.*, No. 01-5775, 2004 U.S. Dist. LEXIS 13256, at *9-10 (E.D. Pa. July 9, 2004).

## CONCLUSION

For the foregoing reasons and those set forth in Merck's opening brief, the Court should grant Merck's motion and exclude the report and testimony of Dr. Neil L. Julie.

Respectfully Submitted,

_____
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509

10

1010213v.1

                                          STONE PIGMAN WALTHER
                                          WITTMANN L.L.C.
                                          546 Carondelet Street
                                          New Orleans, LA 70130

**ATTORNEYS FOR MERCK SHARP & DOHME CORP.**

1010213v.1

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Reply Brief In Support Of Motion Of Merck Sharpe & Dohme Corp. ("Merck") To Exclude Testimony Of Neil L. Julie, M.D. has been served on Liaison Counsel by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Plaintiff, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 9th day of March, 2010.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1010213v.1