UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF LOUISIANA, *ex rel.* JAMES D. | * | SECTION L |
|     CALDWELL, JR., Attorney General, | * | |
| | * | JUDGE ELDON E. FALLON |
|              Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
| versus | * | KNOWLES |
| | * | |
| MERCK SHARP & DOHME CORP., | * | |
| | * | |
|              Defendant. | * | |
| | * | |
| Case No. 05-3700. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF DAVID Y. GRAHAM, M.D.

**(Expert Challenge No. 4)**

Plaintiff's opposition to Merck Sharp & Dohme Corp.'s ("Merck's") motion to exclude the testimony of Dr. David Y. Graham is filled with inflammatory attacks and jury argument that have nothing to do with the admissibility of Dr. Graham's opinions. Once the rhetoric is swept away, it becomes clear that Plaintiff cannot refute Merck's argument that Dr. Graham's proffered testimony fails the requirements of Federal Rules of Evidence 702 and 703 and *Daubert* – and that it should therefore be excluded at trial.

### ARGUMENT

Dr. Graham plans to testify that Vioxx has greater gastrointestinal ("GI") risk "compared to placebo and is difficult if not impossible to differentiate from traditional NSAIDs in terms of

clinically important upper GI events especially bleeding." (Report of David Y. Graham, M.D., Regarding Rofecoxib (Vioxx) ¶ 37, Nov. 6, 2009 (attached to Def.'s Mem. as Ex. 1).) Dr. Graham bases this opinion entirely on an unpublished two-page report provided to him by Plaintiff's counsel and authored by Dr. Nicholas Jewell. (*See* Dep. of David Graham ("Graham Dep.") 27:22-29:23; 70:1-20, Jan. 15, 2010 (attached as Ex. 1).)

As Merck explained in its opening brief, Dr. Graham's testimony fails the requirements of Federal Rules of Evidence 702 and 703 and the criteria for the admissibility of expert testimony set forth by the U.S. Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Plaintiff does not – and cannot – refute any of Merck's arguments.

*First*, Plaintiff provides no response whatsoever to Merck's argument that Dr. Graham's opinion merely parrots Dr. Jewell's report without any independent analysis or assessment of Dr. Jewell's findings. Instead, Plaintiff argues that Dr. Graham analyzed numerous *other* data points – such as the VIGOR study itself. But Dr. Graham's analysis of other data says nothing about the reliability of the Jewell report. Plaintiff's argument thus fails.

*Second*, Plaintiff also fails to refute Merck's contention that Dr. Graham's testimony is inadmissible under Federal Rule of Evidence 703, which bars experts from relying on materials that are not "of a type reasonably relied upon by experts in the particular field." In response, Plaintiff merely asserts that Dr. Graham's blind reliance on Dr. Jewell's work "is typical of the standard practice of gastroenterologists." Plaintiff is incorrect.

And *third*, Plaintiff cannot persuasively undermine Merck's arguments that Dr. Graham's opinions were developed as a result of his work on this litigation, are contrary to his own scholarly research and writings, and are not generally accepted in the scientific community.

I.   **DR. GRAHAM MERELY REGURGITATED THE FINDINGS OF DR. JEWELL.**

In response to Merck's argument that Dr. Graham's opinion merely parrots Dr. Jewell's report without any independent analysis or assessment of Dr. Jewell's findings (*see* Def.'s Mem. at 6-9), Plaintiff argues that "Dr. Graham reached his opinions only after reviewing all of the relevant Merck documents concerning the VIGOR trial" such as, among other things, "the VIGOR Study Protocol, the Data Analysis Plan, [and] the published VIGOR article." (Pl.'s Opp'n at 4.) In other words, Dr. Graham reviewed and analyzed "all of the work necessary to an understanding of the steroid use issue" – except, critically, the methods and analysis *in Dr. Jewell's paper*. (*Id.*) Regardless of what else he may have reviewed, Dr. Graham testified that the key factor that changed his opinion of the VIGOR study was Dr. Jewell's two-page report. (*See* Graham Dep. 73:1-3; 51:3-6.) Thus, that is the material he was required to analyze and verify. *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1363-64 (S.D. Fla. 2009). Yet Dr. Graham admittedly made no effort to verify or independently investigate the methods or conclusions in Dr. Jewell's "report" – he simply adopted those conclusions as his own. This cannot constitute admissible expert evidence. *See King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07-cv-00341-SEB-DML, 2009 U.S. Dist. LEXIS 96131, at *5 (S.D. Ind. Sept. 29, 2009) (in order to satisfy Rule 702 and *Daubert*, an "expert must incorporate the information supplied to him into his underlying facts, independently review the information, and then formulate, with calculations consistent with his expertise, an opinion that relies upon that [and] any other relevant information").

Plaintiff's effort to excuse Dr. Graham's failure to analyze the Jewell report on the asserted ground that Merck "failed to disclose data from the VIGOR study which showed that essentially all of the reduction in complicated GI bleeds occurred in the subgroup of steroid users" (Pl.'s Opp'n at 6) also fails. As an initial matter, the assertion is false. Merck produced

the VIGOR study report and accompanying data files years ago. But even if Plaintiff's claim were accurate, it would not relieve Dr. Graham of the obligation to independently analyze the methods and conclusions in Dr. Jewell's report before opining on them. No matter how or why Dr. Graham required Dr. Jewell's assistance, he is not permitted to simply regurgitate Dr. Jewell's findings without any analysis or verification. *See In re TMI Litig.*, 193 F.3d 613, 716 (3d Cir. 1999) (expert's "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions[] demonstrate[d] that the methodology he used to formulate his opinion was flawed under *Daubert*"); *Fowler v. United States*, No. 08-216, 2009 U.S. Dist. LEXIS 78805, at *26 n.59 (W.D. La. Sept. 1, 2009) (an expert cannot "simply parrot the work actually done by another expert, who is not offered for testimony and cross-examination"). For this reason alone, Plaintiff's arguments fail.[1]

## II. PLAINTIFF FAILS TO REFUTE MERCK'S CONTENTION THAT THE JEWELL PAPER DOES NOT CONSTITUTE FACTS OR DATA "OF A TYPE REASONABLY RELIED UPON BY EXPERTS" UNDER RULE 703.

Plaintiff also fails to refute Merck's contention that Dr. Graham's testimony is inadmissible under Federal Rule of Evidence 703 because the Jewell report is not the type of material "reasonably relied upon by experts in the particular field." (*See* Def.'s Mem. at 9-11.) Plaintiff begins its defense of Dr. Graham's reliance on the attorney-commissioned work of Dr. Jewell by attempting to downplay the significance of Dr. Jewell's report. Plaintiff asserts that Dr. Graham relied on Dr. Jewell's report "for the limited purpose of testing the statistical significance of the difference in relative risks between the steroid and non-steroid users in the

---

[1] Plaintiff also argues that Merck's motion does not challenge the basis for Dr. Graham's opinion that Vioxx is gastrotoxic because it does not address Dr. Graham's reliance on the APPROVe study, the Alzheimer's Protocol 078 trial, and Protocol 069. (Pl.'s Opp'n at 2-3.) But Dr. Graham's opinion that Vioxx is gastrotoxic ultimately depends on his newly adopted views of the VIGOR study, based on Dr. Jewell's statistical reanalysis of that study. As explained in the text, Dr. Graham testified that the ***key factor*** in changing his opinion of the VIGOR study was Dr. Jewell's two-page report. (Graham Dep. 62:16-22; 73:1-3; 51:3-6.) Thus, Dr. Graham's review of other studies is beside the point.

VIGOR trial" and further states that the "statistical test itself is non-controversial."  (Pl.'s Opp'n at 7.)  But Plaintiff's argument is rebutted by Dr. Graham's own testimony.  As noted above, Dr. Graham testified that the **key factor** in changing his opinion of the VIGOR study was Dr. Jewell's two-page report.  (*See* Graham Dep. 73:1-3 ("The subgroup analysis that I'm interested in, the one that Dr. Jewell did the analysis, was not captured anywhere."); *id.* 51:3-6 ("We had to wait for Dr. Jewell to do – or to actually tell us about the analysis that they could have done with one click of a button.").)  Plaintiff's effort to downplay the significance of Dr. Graham's reliance on Dr. Jewell is thus unpersuasive.

Next, Plaintiff asserts that Dr. Graham's reliance on Dr. Jewell's paper was permissible under Rule 703 because Dr. Jewell's statistical analysis "was not challenged by the defense gastroenterologist nor any other defense expert."  (Pl.'s Opp'n at 7.)  Plaintiff apparently takes the position that Merck's expert has done Dr. Graham's work for him.  According to Plaintiff, defense expert Dr. David Sales "asked defense counsel about the number of complicated PUBs in the steroid versus non-steroid users in VIGOR," "defense counsel told him the figures used by Dr. Graham were accurate," and "he **conducted his own calculation that confirmed the accuracy of the incidence rate comparisons**."  (Pl.'s Opp'n at 8 (emphasis added).)  Plaintiff's argument is misleading.  While Dr. Sales did confirm the accuracy of the incidence **rates** relied upon by Dr. Jewell, he never suggested that he had replicated Dr. Jewell's **subgroup interaction test** or confirmed that the conclusions drawn from that test were accurate.

But even if Plaintiff were correct in its assertion regarding Dr. Sales's "confirmation," Plaintiff cannot rely on defense counsel and defense experts to establish the reliability of its own expert's testimony.  At best, this argument merely confirms that Dr. Graham could have easily done the work necessary to confirm the reliability of Dr. Jewell's work – and failed to do so.  As

5

Plaintiff takes pains to explain in another section of its opposition, the issue here is not the accuracy *vel non* of Dr. Jewell's paper, but rather whether it was reasonable under Rule 703 for Dr. Graham to rely on Dr. Jewell's unpublished, attorney-commissioned report. (*See* Pl.'s Opp'n at 22 (arguing that *Daubert* requires only general acceptance of an expert's methodologies – not his conclusions).) Plaintiff has failed to refute Merck's argument that it was not.

Plaintiff's further suggestion that Dr. Graham's reliance on Dr. Jewell's report is supported by the Court's prior evidentiary rulings in the Vioxx personal injury litigation also fails. (Pl.'s Opp'n at 7-8 (citing *Plunkett v. Merck & Co.*, 401 F. Supp. 2d 565 (E.D. La. 2005)).) In *Plunkett*, Merck sought to exclude the testimony of Wayne A. Ray, Ph.D. on grounds that, *inter alia*, Dr. Ray relied on the re-analysis of clinical trial data performed by another expert that "was conducted for purposes of this litigation, has not been published, and has not been subject to peer review." 401 F. Supp. 2d at 585. The Court denied Merck's motion in part. *Id.* at 587. Contrary to Plaintiff's suggestion, however, the Court never explicitly discussed the appropriateness of the plaintiff's expert's reliance on the other expert's unpublished re-analysis. *Id.* at 584-87. Rather, the Court concluded that Dr. Ray's opinions were "derived from his education, training, research, experience, expertise, and review of the peer-reviewed medical literature and other publicly available documents" and that he was "adequately qualified to testify" regarding certain matters that fell within his area of expertise. *Id.* at 586. The Court's opinion in *Plunkett*, therefore, lends no support to Plaintiff's opposition in the present case.

The transcript Plaintiff cites from *Barnett v. Merck* is similarly unavailing. Plaintiff asserts that the Court permitted the plaintiff's expert in that case, John W. Farquhar, M.D., to rely on another unpublished report from Dr. Jewell. (Pl.'s Opp'n at 8.) However, the transcript reveals nothing of the sort. In fact, the ruling cited by Plaintiff was a denial of the plaintiff's

motion to offer Dr. Jewell as a rebuttal expert, and in so ruling, the Court did not explicitly address the admissibility of Dr. Farquhar's testimony.  *See* Tr. 82:22-83:3, *In re Vioxx Prods. Liab. Litig.*, July 6, 2006.  Indeed, the transcript reveals that the admissibility of Dr. Farquhar's testimony was not at issue at that hearing and was not argued by either party.  *Id.*

       Plaintiff's effort to distinguish the cases cited by Merck is no more persuasive.  For example, Plaintiff asserts that *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004), is inapposite because the event counts used in Dr. Jewell's report were taken from Merck's own clinical trial data.  (Pl.'s Opp'n at 9-10.)  But the court in *In re Rezulin* did not place the same emphasis on the origin of the underlying data as Plaintiff does here.  Rather, according to the court, the "more important[]" consideration was why the expert "would, in a report prepared for this litigation," rely on the conclusions in "an unpublished study authored by another person, while eschewing his own published, peer-reviewed view" on the same subject.  *In re Rezulin*, 309 F. Supp. 2d at 562.  The same is true here, and Plaintiff's effort to distinguish *In re Rezulin* thus fails.  Plaintiff also attempts to distinguish *In re Bextra & Celebrex Marketing Sales Practices & Product Liability Litigation*, 524 F. Supp. 2d 1166 (N.D. Cal. 2007), on the ground that – although the court excluded the study at issue – the court's decision was not based on the fact that the study was not peer-reviewed or published.  (Pl.'s Opp'n at 11.)  Contrary to Plaintiff's argument, however, the court in *Bextra & Celebrex* very clearly stated that the study at issue was "unpublished [and] unreviewed" and thus "not a scientifically valid basis" for the expert to reject all other observational data to the contrary.  524 F. Supp. 2d at 1179.  Here too, Dr. Graham relies on an unpublished and unreviewed study to reject the vast majority of research on the gastrotoxicity of Vioxx.  For this reason too, the testimony should be barred.

### III. PLAINTIFF CANNOT DENY THAT DR. GRAHAM'S TESTIMONY IS UNRELIABLE UNDER *DAUBERT* FOR OTHER REASONS AS WELL.

Finally, Plaintiff fails to rebut Merck's arguments that Dr. Graham's opinions were developed as a result of his work on this litigation, are contrary to his own scholarly research and writings, and are not generally accepted in the scientific community. (*See* Def.'s Mem. at 11-14.)

The central theme of Plaintiff's argument is that Dr. Graham did not have access to all of the necessary information when he authored the numerous articles cited by Merck. (Pl.'s Opp'n at 17-19.) This argument is not persuasive. While Plaintiff is correct that "[s]cientific viewpoints *should* evolve as information becomes available" (*id.* at 18), such an "evol[ution]" is dubious at best where, as here, the newly revealed "information" is a two-page, unpublished report that was commissioned by an attorney in connection with ongoing litigation. As the United States Court of Appeals for the Seventh Circuit famously admonished, "[l]aw lags science; it does not lead it." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996). Dr. Graham's "evolving" opinions in this case violate that fundamental precept.[2]

Plaintiff also takes issue with Merck's citation to a number of Dr. Graham's earlier articles that contradict his newly adopted opinions in this case. For example, Plaintiff argues that the *Prevention* article is consistent with Dr. Graham's current opinions because he does not opine in this case "that the Vioxx arm of the VIGOR study had a lower rate of GI events than the naproxen arm of the study;" rather, he merely opines that the reduction in "serious GI events observed in VIGOR is limited" to "patients in the study that were also taking steroids." (Pl.'s

---

[2] Plaintiff also asserts that Dr. Graham's motives are beyond reproach merely because his fees are apparently paid to the Baylor College of Medicine. (Pl.'s Opp'n at 17.) This does not absolve him of litigation-related bias. In addition to earning fees, expert witnesses can be motivated by other objectives, such as the desire to be retained again in future litigation, or, in this case, the recognition of donating funds to the institution where the expert is employed.

8

1010239v.1

Opp'n at 18.)  But Dr. Graham's opinion in this case is that Vioxx is gastrotoxic compared to other NSAIDs – despite the fact that the same 2002 article concluded that COX-2 inhibitors were among the most cost-effective therapies for pain when gastrointestinal effects are considered.  *See* H.B. El-Serag, D.Y. Graham, et al., *Prevention of complicated ulcer disease among chronic users of nonsteroidal anti-inflammatory drugs: the use of a nomogram in cost-effectiveness analysis*, 162 ARCH. INTERN. MED. 2105, 2107 (2002) (attached to Def.'s Mem. as Ex. 3).  Likewise, Plaintiff asserts that the *Editorial* article is consistent with Dr. Graham's current opinions.  But Plaintiff does not reconcile that assertion with the text of the article, which states that research results "indicate an advantage for coxibs [over NSAIDS]," even though "their use is not devoid of serious gastrointestinal events."  *See* David Y. Graham & Francis K.L. Chan, *Is the Use of COX-2 Inhibitors in Gastroenterology Cost-Effective?*, 1 GASTROENTEROLOGY & HEPATOLOGY 60-61 (2004) (attached to Def.'s Mem. as Ex. 4).  Finally, while Plaintiff states that the *New Development* article contained only a few references to Vioxx and/or COX-2 inhibitors, Plaintiff cannot refute that the same article evidences Dr. Graham's opinion – as recently as 2006 – that he regarded COX-2 inhibitors as a valid means of reducing the frequency of peptic ulcer disease.  Hong Lu & David Y. Graham, *New Development in the Mechanistic Understanding of Peptic Ulcer Diseases*, 3 DRUG DISCOVERY TODAY 431-37 (2006) ("*New Development*") (attached to Def.'s Mem. as Ex. 6).

      Finally, Plaintiff asserts that Merck improperly focuses on Dr. Graham's conclusions – and not his methodology – in arguing that his opinions are not generally accepted in the relevant scientific community.  As set forth above, Merck has argued at length that Dr. Graham's methodology (to the extent he had one) ***is*** flawed.  But Dr. Graham's recently adopted views are also outside the mainstream and not generally accepted in the relevant medical community – and

that fact weighs in favor of exclusion as well. *See Young v. Burton*, 567 F. Supp. 2d 121 (D.D.C. 2008).

## **CONCLUSION**

For the foregoing reasons and those set forth in Merck's opening brief, the Court should grant Merck's motion and exclude the report and testimony of Dr. David Y. Graham.

Respectfully Submitted,

_____
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

**ATTORNEYS FOR MERCK SHARP & DOHME CORP.**

1010239v.1

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Reply Brief In Support Of Motion Of Merck Sharpe & Dohme Corp. ("Merck") To Exclude Testimony Of David Y. Graham, M.D. has been served on Liaison Counsel by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Plaintiff, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 9th day of March, 2010.

    /s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1010239v.1