# Exhibit 13

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3

 4   IN RE:  VIOXX,                )
                                   )
 5   Products liability litigation,)
                                   )
 6   This Document Relates To:     )
                                   )
 7   STATE OF LOUISIANA,           )
                                   )
 8              Plaintiff,         )
                                   )
 9   vs.                           )  Case No. 053700
                                   )
10   MERCK SHARP,                  )
                                   )
11              Defendants.        )
     _____)
12

13

14            THE VIDEOTAPED DEPOSITION OF LOREN

15   LAINE, M.D., was taken on behalf of the Plaintiffs

16   at 9:14 a.m. on Tuesday, February 2, 2010, at

17   251 S. Olive Street, Flower Room, Los Angeles,

18   California, before SERENA WONG, CSR 10250,

19   Certified Shorthand Reporter for the State of

20   California.

21

22

23

24

25

                          2
```

LOREN LAINE, M.D.

**BARKLEY** Court Reporters

```
 1   APPEARANCES:

 2        FOR THE WITNESS:

 3             BY:  JEREMY D. MISHKIN, ESQ.
                MONTGOMERY, McCRACKEN, WALKER &
 4              RHOADS, LLP
                123 South Broad Street
 5              Avenue of the Arts
                Philadelphia, Pennsylvania 19109
 6              (215)772-7246
                jmishkin@mmwr.com
 7
          FOR THE PLAINTIFF:
 8
                BY:  DONALD C. ARBITBLIT, ESQ.
 9                   SARAH LONDON, ESQ.
                LIEFF, CABRASER, HEIMANN &
10              BERNSTEIN, LLP
                275 Battery Street
11              29th Floor
                San Francisco, California  94111
12              (415) 956-1000
                darbitblit@lchb.com
13
          FOR THE DEFENDANTS:
14
                BY:  TAREK ISMAIL, ESQ.
15                   KENNETH F. BAUM, ESQ.
                GOLDMAN, ISMAIL, TOMASELLI, BRENNAN
16              BAUM, LLP
                506 Santa Monica Boulevard
17              Suite 217
                Santa Monica, California  90401
18              (310) 910-3322
                tismail@goldmanismail.com
19
                BY:  FRANK J. O'HARA
20              MERCK & CO., INC.
                351 N. Sumneytown Pike
21              North Wales, Pennsylvania  19454
                (267)305-4822
22              frank_ohara@merck.com

23        ALSO PRESENT:

24              Amy Kostka, Videographer

25


                             3
```

```
          1   your previous answer, what were you referring to?
09:35     2        A     Well, they would perhaps present us
          3   information on the COX-2 market, how the COX-2
          4   market was increasing or decreasing, issues about
          5   what doses we -- might be reasonable to be putting
          6   out there on the market, things like that.
09:35     7        Q     Is it correct that your compensation
          8   for attendance and participation in face-to-face
          9   meetings was $5,000 a day, as set forth in
         10   paragraph 3?
09:35    11        A     Yes.
09:35    12        Q     And for scheduled board meetings at a
         13   teleconference or net conference, you were paid
         14   $625 an hour?
09:36    15        A     I didn't remember that, but that's what
         16   it says there.
09:36    17        Q     Does that sound accurate?
09:36    18        A     I mean, normally my rate was $500 an
         19   hour, so I don't remember that.  But if it says
         20   that, it may be accurate.
09:36    21        Q     On page 1469, there's a July 19, 2002
         22   letter referring to a consulting agreement for
         23   services on the Steering Committee for MKO663.
09:36    24              Is that Etoricoxib?
09:36    25        A     It is.
```

27

LOREN LAINE, M.D.

BARKLEY
Court Reporters

```
 1   authors employees?
 2   A    Yes, they received money, yes.
 3   Q    Reicin and Shapiro were employees?
 4   A    That's correct.
 5   Q    They were paid by Merck?
 6   A    I assume so.  They were employees.
 7   Q    And everyone else was paid also?
 8        MR. ISMAIL:  Objection.  Leading, asked
 9   and answered.
10        MR. MISHKIN:  Objection.
11        THE WITNESS:  As I said, everybody
12   received money in one form or another, research
13   support, consulting agreement, yes.
14   Q    BY MR. ARBITBLIT:  Were some of the
15   other authors also on the Advisory Board getting
16   $5,000 a day to go to meetings?
17        MR. MISHKIN:  Objection.
18        MR. ISMAIL:  Objection.  Lack of
19   foundation.
20        THE WITNESS:  I assume somebody.  I
21   don't know the makeup.  You'd probably have to ask
22   individual people.
23   Q    BY MR. ARBITBLIT:  Did you ever go to
24   Advisory Board meetings with Dr. Schnitzer?
25   A    I've been to Advisory Board meetings
```

238

LOREN LAINE, M.D.

BARKLEY Court Reporters

1   with Dr. Schnitzer.
16:04  2       Q    And that's Merck Advisory Board
3   meetings?
16:04  4       A    I must admit I don't remember the
5   makeup of each Advisory Board.
16:04  6       Q    But you do remember Dr. Schnitzer who's
7   another author of the VIGOR paper being at
8   Advisory Board meetings where the pay was $5,000 a
9   day?
16:04 10            MR. ISMAIL:  Objection.  Foundation,
11   leading.
16:04 12            THE WITNESS:  I don't know what the pay
13   was in other Advisory Boards.  I know that I've
14   been in Advisory Board meetings with him, yes.
16:04 15       Q    BY MR. ARBITBLIT:  But your contracts
16   to be on the Advisory Board did specify that daily
17   rate; correct?
16:05 18            MR. ISMAIL:  Objection.
16:05 19            THE WITNESS:  I can only comment on
20   what my contractor agreement specified.
16:05 21       Q    BY MR. ARBITBLIT:  You don't know what
22   Dr. Schnitzer got for being on the Advisory Board?
23   Is that the point?
16:05 24            MR. ISMAIL:  Objection.  (Inaudible)
25   lacks foundation.

239

LOREN LAINE, M.D.

BARKLEY
Court Reporters

```
16:05   1              THE WITNESS:  Again, if he was on this
        2    Advisory Board, I don't, that's right.
16:05   3              (The document referred to was marked for
        4         identification by the court reporter as
        5         Plaintiff's Exhibit 36 and attached hereto.)
16:05   6         Q    BY MR. ARBITBLIT:  36 is a document
        7    that says "Coxib Advisory Boards" on the front
        8    page and ends in 2925 on the first Bates page.
16:05   9              Have you seen this before?
16:05  10         A    No.
16:06  11         Q    If you turn to -- if you turn to page
       12    ending in 3063 of the document, there's a list of
       13    advisors on the multi-disciplinary Advisory Board
       14    for Vioxx.
16:06  15              Do you see that?
16:06  16         A    I see what you're referring to, yes.
16:06  17         Q    And do you see your name third from the
       18    bottom?
16:06  19         A    I do.
16:06  20         Q    Do you see your start date on the
       21    Advisory Board March 2000?
16:06  22         A    I see that.
16:06  23         Q    Do you see the Merck relationship
       24    described as strong relationship with MRL, that's
       25    Merck Research Laboratories?
```

240

LOREN LAINE, M.D.

BARKLEY
Court Reporters

```
 1  think that's -- is that a semicolon there?  But in
 2  any event, I don't -- didn't say this.  I don't
 3  know, have any understanding of what it means.  I
 4  certainly was involved with MRL in doing the VIGOR
 5  study, so I don't know if I'd characterize it as a
 6  strong relationship but I had a significant
 7  relationship with MRL.
 8      Q    BY MR. ARBITBLIT:  And you were
 9  involved in marketing also, weren't you?
10      A    No, I wasn't.
11           MR. ISMAIL:  Objection.
12      Q    BY MR. ARBITBLIT:  Did you do video
13  news releases for the company?
14      A    I did do video news releases.  I didn't
15  view those as marketing, though.
16      Q    What were they used for?
17           MR. ISMAIL:  Objection.  Form, lacks
18  foundation.
19           MR. MISHKIN:  Objection.
20           THE WITNESS:  I don't know.  But I
21  understand that they would be used --
22  theoretically for news releases on new shows.
23      Q    BY MR. ARBITBLIT:  Did you understand
24  that Merck paid people to make those with you?
25           MR. ISMAIL:  Objection.  Form.
```

242

LOREN LAINE, M.D.

BARKLEY
Court Reporters

16:08  1            THE WITNESS:  I assume that the people
       2   who were making them would get paid, yes.
16:08  3       Q    BY MR. ARBITBLIT:  And the people who
       4   did those with you weren't newscasters, were they?
16:08  5       A    No, they weren't.
16:08  6       Q    They were public relations people,
       7   weren't they?
16:08  8            MR. ISMAIL:  Objection.  Leading.
16:08  9            MR. MISHKIN:  Objection.
16:08 10            THE WITNESS:  I think they were
      11   probably Merck people, and may have been people
      12   from public relations as well.
16:08 13       Q    BY MR. ARBITBLIT:  Going on to the next
      14   page, do you see the name of Tom Schnitzer as an
      15   advisor to Merck?
16:08 16            MR. MISHKIN:  Which page are you
      17   referring to?
16:08 18       Q    BY MR. ARBITBLIT:  Ending in 3064.
16:08 19       A    I see Tom Schnitzer is on this
      20   continued page, yes.
16:08 21       Q    And Dr. Schnitzer was an author on the
      22   VIGOR paper; right?
16:08 23       A    He was an author.
16:08 24       Q    And his start date on the Advisory
      25   Board was August 1999?

243

LOREN LAINE, M.D.

BARKLEY
Court Reporters

```
16:08   1                  MR. ISMAIL:  Objection.  Lack of
        2   foundation, leading.
16:08   3                  MR. MISHKIN:  Objection.
16:08   4                  THE WITNESS:  That's what it says here.
16:08   5         Q    BY MR. ARBITBLIT:  Do you disagree with
        6   it?
16:08   7                  MR. ISMAIL:  Objection.  Lack of
        8   foundation.
16:08   9                  MR. MISHKIN:  Objection.
16:09  10                  THE WITNESS:  I have no means to make a
       11   judgment one way or the other.  I'm only reading
       12   it with you.
16:09  13         Q    BY MR. ARBITBLIT:  Was Dr. Schnitzer
       14   described as a strong advocate, high volume
       15   speaker, good relationship with APA, A&A
       16   marketing.
16:09  17                  MR. ISMAIL:  Objection.  Lack of
       18   foundation.
16:09  19                  MR. MISHKIN:  Objection.
16:09  20                  THE WITNESS:  You're reading it
       21   correctly.
16:09  22         Q    BY MR. ARBITBLIT:  Art Weaver below
       23   Schnitzer was also on the Advisory Board with you;
       24   correct?
16:09  25                  MR. ISMAIL:  Objection.  Lack of
```

244

LOREN LAINE, M.D.

BARKLEY
Court Reporters

```
 1   foundation.
 2              THE WITNESS:  That's what this document
 3   states.
 4        Q    BY MR. ARBITBLIT:  And Dr. Weaver was
 5   an author of the VIGOR paper; right?
 6        A    He was listed as an author below the
 7   line as we talked about.
 8        Q    Because they wouldn't let you put 13
 9   authors on the top line?
10        A    Right.  Only 12 could go on.
11        Q    And was Art Weaver a strong advocate
12   for Merck?
13              MR. ISMAIL:  Objection.  Lack of
14   foundation.
15              MR. MISHKIN:  Objection.
16              THE WITNESS:  I would have no knowledge
17   of that.
18        Q    BY MR. ARBITBLIT:  He went to Advisory
19   Board meetings where you discussed marketing
20   issues; correct?
21              MR. ISMAIL:  Objection.  Leading, lacks
22   foundation.
23              MR. MISHKIN:  Objection.
24              THE WITNESS:  Certainly I see that he
25   was at Advisory Board meetings, and at some times
```

245

LOREN LAINE, M.D.

BARKLEY
Court Reporters

```
                1   marketing issues were raised.
16:10           2       Q    BY MR. ARBITBLIT:  Go to page ending in
                3   3067, please.  Is that an agenda for an Advisory
                4   Board meeting in San Francisco in 2001?
16:10           5            MR. MISHKIN:  Objection.
16:10           6            THE WITNESS:  It says agenda.  I don't
                7   know what it's for, but it says, "Agenda September
                8   2001, San Francisco."
16:10           9       Q    BY MR. ARBITBLIT:  Turn to page 3068.
               10   Do you see your name as a presenter on the focus
               11   on the gastrointestinal safety?
16:11          12       A    I do see my name there.
16:11          13       Q    Then do you see your name as a
               14   participant in team A of the breakout groups on
               15   page 3069?
16:11          16       A    Yes, I see my name here.
16:11          17       Q    And Dr. Schnitzer is part of team A on
               18   the breakout group also; correct?
16:11          19       A    He's listed here as a reporter, yes.
16:11          20       Q    On team B it has Marc Hochberg.  Do you
               21   see that name?
16:11          22       A    I see that name.
16:11          23       Q    Was he also an author on the VIGOR
               24   paper?
16:11          25       A    He was.
```

LOREN LAINE, M.D.

BARKLEY Court Reporters