# Exhibit 15

PANEL "B"

---

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents $ | OMB No. 1545-0115 | |
|---|---|---|---|---|
| MERCK & CO., INC.<br>PO BOX 2000<br>RAHWAY, NJ 07065<br>(732) 594-8555 | | 2 Royalties $ | CORRECTED (if checked) → | X |
| | | 3 Other income $ | 2005 | Miscellaneous Income |
| | | | FORM 1099-MISC | |
| PAYER'S Federal identification number<br>22-1109110 | RECIPIENT'S identification number | 4 Federal income tax withheld $ | 5 Fishing boat proceeds $ | Copy E<br>For Recipien |
| RECIPIENT'S name, street address (including apt. no.), city, state, and ZIP code<br>LOREN A LAINE MD<br><br>1118 3RD ST #505<br><br>SANTA MONICA    CA 90403 | | 6 Medical and health care payments $ | 7 Nonemployee compensation $         141,000.00 | This is important ta: information and i being furnished to the Internal Revenue Service. If you an required to file a return a negligence penalty o other sanction may be imposed on you if this income is taxable and the IRS determines tha it has not been reported |
| | | 8 Substitute payments in lieu of dividends or interest $ | 9 Payer made direct sales of $5000 or more of consumer products to a buyer (recipient) for resale ▶ | |
| | | 10 Crop insurance proceeds $ | 11 State income tax withheld $ | |
| Account number (optional) | | 12 State/Payer's state number | 13 $ | |
| Form 1099-MISC    16-0331690    (Keep for your records.) | | | Department of the Treasury - Internal Revenue Service | |

---

| | X | CORRECTED (if checked) | | |
|---|---|---|---|---|
| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents $ | OMB No. 1545-0115 | |
| MERCK & CO., INC.<br>PO BOX 1700<br>WHITEHOUSE STATION, NJ 08889-1700<br>(732) 594-8555 | | 2 Royalties $ | 2006 | Miscellaneo Incor |
| | | 3 Other income $ | Form 1099-MISC | |
| PAYER'S Federal identification number<br>22-1109110 | RECIPIENT'S identification number | 4 Federal income tax withheld $ | | Cop<br>For Recip |
| RECIPIENT'S name, street address (including apt. no.), city, state, and ZIP code<br>LOREN LAINE<br>LA COUNTY & USC MEDICAL CENTER<br>1200 N STATE ST RM 12-137<br><br>LOS ANGELES    CA 90033 | | 5 Fishing boat proceeds $ | 6 Medical and health care payments $ | This is importan information a being furnished to Internal Reve Service. If you required to file a re a negligence penal other sanction ma imposed on you if income is taxable the IRS determines It has not b repo |
| | | 7 Nonemployee compensation $         102,750.00 | 8 Substitute payments in lieu of dividends or interest $ | |
| | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ | 10 Crop insurance proceeds $ | |
| Account number (see instructions) | | | | |
| 11 | 12 | 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ | |
| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ $ | 17 State/Payer's state no. | 18 State income $ $ |
| Form 1099-MISC    (keep for your records) | | | | |

---

| | | CORRECTED (if checked) | | |
|---|---|---|---|---|
| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents $ | OMB No. 1545-0115 | |
| MERCK & CO., INC.<br>PO BOX 1700<br>WHITEHOUSE STATION, NJ 08889-1700<br>(732) 594-8555 | | 2 Royalties $ | 2007 | Miscellaneou Incom |
| | | 3 Other income $ | Form 1099-MISC | |
| PAYER'S federal identification number<br>22-1109110 | RECIPIENT'S identification number | 4 Federal income tax withheld $ | | Copy<br>For Recipier |
| RECIPIENT'S name, street address (including apt. no.), city, state, and ZIP code<br>LOREN LAINE MD<br><br>2011 ZONAL AVE HMR STE 101<br><br>LOS ANGELES    CA 90033 | | 5 Fishing boat proceeds $ | 6 Medical and health care payments $ | This is important t information and being furnished to tl Internal Revenu Service. If you a required to file a retur a negligence penalty other sanction may l imposed on you if th income is taxable ar the IRS determines th It has not bee reporte |
| | | 7 Nonemployee compensation $         57,471.45 | 8 Substitute payments in lieu of dividends or interest $ | |
| | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ | 10 Crop insurance proceeds $ | |
| Account number (see instructions) | | | | |
| 11 | 12 | 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ | |
| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ $ | 17 State/Payer's state no. | 18 State income $ |

Δ π EXHIBIT 2
Deponent Laine
Date 2-2-10 Rptr. WWW
WWW.DEPOBOOK.COM

REDACTED; CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER    LL-LAAG 01463

OMB No. 1545-0115

**Form 1099-MISC — 2002 — Miscellaneous Income**

PAYER'S name, street address, city, state, ZIP code, and telephone no.
MERCK & CO., INC.
PO BOX 2000
RAHWAY, NJ 07065
(732) 594-8555

CORRECTED (if checked) ▸ [X]

| Box | Amount |
|---|---|
| 1 Rents | $ |
| 2 Royalties | $ |
| 3 Other income | $ |
| 4 Federal income tax withheld | $ |
| 5 Fishing boat proceeds | $ |
| 6 Medical and health care payments | $ |
| 7 Nonemployee compensation | $ 136,286.00 |
| 8 Substitute payments in lieu of dividends or interest | $ |
| 9 Payer made direct sales of $5000 or more of consumer products to a buyer (recipient) for resale ▸ | |
| 10 Crop insurance proceeds | $ |
| 11 State income tax withheld | $ |
| 12 State/Payer's state number | |
| 13 | $ |

PAYER'S Federal identification number  22-1109110
RECIPIENT'S identification number  [REDACTED]

RECIPIENT'S name, street address (including apt. no.), city, state, and ZIP code
LOREN A LAINE MD
1118 3RD ST #505
SANTA MONICA    CA 90403

Account number (optional)

Copy B
For Recipient
This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Form 1099-MISC   16-0331690   (Keep for your records.)   Department of the Treasury - Internal Revenue Service

---

PANEL "B"

OMB No. 1545-0115

**Form 1099-MISC — 2003 — Miscellaneous Income**

PAYER'S name, street address, city, state, ZIP code, and telephone no.
MERCK & CO., INC.
PO BOX 2000
RAHWAY, NJ 07065
(732) 594-8555

CORRECTED (if checked) ▸

| Box | Amount |
|---|---|
| 1 Rents | $ |
| 2 Royalties | $ |
| 3 Other income | $ |
| 4 Federal income tax withheld | $ |
| 5 Fishing boat proceeds | $ |
| 6 Medical and health care payments | $ |
| 7 Nonemployee compensation | $ 180,584.50 |
| 8 Substitute payments in lieu of dividends or interest | $ |
| 9 Payer made direct sales of $5000 or more of consumer products to a buyer (recipient) for resale ▸ | |
| 10 Crop insurance proceeds | $ |
| 11 State income tax withheld | $ |
| 12 State/Payer's state number | |
| 13 | $ |

PAYER'S Federal identification number  22-1109110
RECIPIENT'S identification number  [REDACTED]

RECIPIENT'S name, street address (including apt. no.), city, state, and ZIP code
LOREN LAINE
USC SCHOOL OF MEDICINE
2025 ZONAL AVE
LOS ANGELES    CA 90033

Account number (optional)

Copy B
For Recipient
This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Form 1099-MISC   16-0331690   (Keep for your records.)   Department of the Treasury - Internal Revenue Service

---

PANEL "B"

OMB No. 1545-0115

**Form 1099-MISC — 2004 — Miscellaneous Income**

PAYER'S name, street address, city, state, ZIP code, and telephone no.
MERCK & CO., INC.
PO BOX 2000
RAHWAY, NJ 07065
(877) 435-3378

CORRECTED (if checked) ▸

| Box | Amount |
|---|---|
| 1 Rents | $ |
| 2 Royalties | $ |
| 3 Other income | $ |
| 4 Federal income tax withheld | $ |
| 5 Fishing boat proceeds | $ |
| 6 Medical and health care payments | $ |
| 7 Nonemployee compensation | $ 101,444.00 |
| 8 Substitute payments in lieu of dividends or interest | $ |
| 9 Payer made direct sales of $5000 or more of consumer products to a buyer (recipient) for resale ▸ | |
| 10 Crop insurance proceeds | $ |
| 11 State income tax withheld | $ |
| 12 State/Payer's state number | |
| 13 | $ |

PAYER'S Federal identification number  22-1109110
RECIPIENT'S identification number  [REDACTED]

RECIPIENT'S name, street address (including apt. no.), city, state, and ZIP code
LOREN A. LAINE M.D.
1118 3RD STREET #505
SANTA MONICA    CA 90403

Account number (optional)

Copy B
For Recipient
This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Form 1099-MISC   16-0331690   (Keep for your records.)   Department of the Treasury - Internal Revenue Service

REDACTED; CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER

MERCK & CO., INC.

### ADVISORY BOARD AGREEMENT
### Loren A. Laine, MD

ADVISORY BOARD AGREEMENT, dated as of April 5, 2002, by and between Merck &
Co., Inc., a New Jersey corporation ("Merck"), with offices at Sumneytown Pike, North
Wales, PA 19454 and **Loren A. Laine, MD**, an individual (the "Advisor"), having a
principal place of business at "USC School of Medicine" 2025 Zonal Ave Los Angeles, CA
90033.

IN CONSIDERATION of the mutual promises herein contained, the parties hereto agree
as follows:

1.   Advisory Services.  Merck agrees to retain the Advisor as a member of the
     **Merck's Analgesic and Anti-Inflammatory Advisory Board for VIOXX
     and ARCOXIA** (the "Board").  As a member of the Board, Advisor will provide
     confidential advice, counsel, and assistance in the development, planning, and
     execution of commercial and scientific initiatives related to Merck's analgesic and
     anti-inflammatory program and specifically VIOXX and ARCOXIA (the "Advisory
     Services").  The Advisory Services may cover topics including, but not limited to,
     market development, strategic product planning, and educational activities as
     well as the design and conduct of the clinical and preclinical development
     program.  The Advisory Services may be rendered in the form of telephone
     conferences, internet conferences, face-to-face meetings, and/or making
     presentations to Merck employees or third party audiences.  As a member of the
     Board, Advisor agrees to the following:

     a)   Attendance and participation at regularly scheduled Board meetings.  The
          time commitment for Board participation during the 2002-2003 contract
          period will total approximately 6 teleconferences, 2 netconferences, and 3
          live meetings. Each of these teleconference/netconference meetings will
          be two hours in length.  In addition, Board members may be contacted,
          from time to time, by Merck to advise on issues that require attention
          prior to the next Board meeting or on issues that may not be germane to
          the entire board.

2.   Term. The Advisor agrees to complete the work described above over the period
     of time beginning with the execution of this Agreement and continuing through
     December 31, 2003.

3.   Compensation.  The total compensation for attendance and participation for
     face-to-face meetings of the Board will be at a rate of $5,000/day.  Payment for
     scheduled board meetings in the form of a teleconference or netconference will
     be at a rate of $625/hour.  Payment will be made to Advisor following
     attendance at each of the Board Meetings.  The compensation to be paid the
     Advisor under this Agreement includes, and the Advisor shall be liable for, all
     taxes, excises, assessments and other charges levied by any government agency
     on, or because of, the Advisory Services performed hereunder, and any

- 1 -                                                04/04/02

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER                    LL-LAAG 01465

materials, equipment, services or supplies furnished or used in the performance of the Advisory Services.

4.   Expenses.  The Advisor will be reimbursed by Merck for all reasonable and documented meals, travels and lodging expenses incurred by the Advisor in connection with the performance of the Advisory Board Services rendered by the Advisor hereunder, provided that the Advisor provides Merck with a reasonable accounting, together with receipts, for such expenses.  Expenses shall only be incurred with the advance written approval of Merck and must be consistent with Merck policy.

5.   Status.  The Advisor will be an independent contractor and not an employee or agent of Merck.

6.   Confidential Information.  The Advisor acknowledges and agrees that the Advisor will have access to, or become acquainted with, Confidential Information of Merck.  For the purposes of this Agreement, "Confidential Information" shall mean any information of Merck, whether or not developed by the Advisor, including but not limited to, information which relates to all ideas, designs, methods, discoveries, improvements, products or other results of the Advisory Services, trade secrets, product data and specifications, proprietary rights, business affairs, product developments customer information or employee information. Confidential Information does not include any information that:  (i) the Advisor can prove was known to Advisor prior to the date of this Agreement and any other agreement between the parties hereto, without obligation to keep it confidential; (ii) the Advisor can prove was lawfully obtained from a third party without any obligation of confidentiality; or (iii) is or becomes part of the public domain through no act or violation of any obligation of the Advisor.  The Advisor acknowledges and agrees that the Confidential Information constitutes valuable trade secrets of Merck.  The Advisor shall keep all Confidential Information in confidence and shall not, at any time during or after the term of this Agreement, without Merck's prior written consent, disclose or otherwise make available, directly or indirectly, any item of Confidential Information to anyone.  The Advisor shall use the Confidential Information only in connection with the performance of the Advisory Services hereunder and for no other purpose.

7.   Merck Property.  The Advisor agrees not to take any documents, papers, drawings, magnetic media or other tangible property, or any copies thereof, belonging to Merck (or the cost of which was reimbursed by Merck), including but not limited to, those prepared or worked on by the Advisor, unless specifically authorized in writing by Merck to do so.  All documents, papers, drawings, magnetic media and other tangible property made, or compiled by, or made available to the Advisor and any copies thereof, whether or not they contain Confidential Information, are and shall be the property of Merck and shall be delivered to Merck by the Advisor immediately upon demand.  Merck shall own and control all worldwide rights, title and interest in and to all work, ideas, designs, methods, discoveries, improvements, products or other results that are created developed, written, conceived or made by the Advisor in connection with

-2-

04/04/02

the Advisory Services (the "Work Product"). The Advisor agrees to make full disclosure of all Work Products to Merck. The Advisor also agrees that all Work Product shall be considered "works made for hire" within the meaning of the copyright laws of the United States and that Merck is and shall be the sole author of the Work Product and sole owner of all rights therein. In the event any of the Work Product is deemed not to be a "work made for hire," then the Advisor hereby assigns to Merck all worldwide rights, title and interest in and to the Work Product, including, but not limited to, all patentable inventions, trade secrets and all works subject to copyright. The Advisor agrees to (i) execute all documents and perform all acts deemed necessary by Merck to evidence Merck's ownership of the Work Product, and (ii) assist Merck in obtaining, registering, maintaining and defending, at Merck's sole expense, all patents, copyrights, trade secret rights and other proprietary rights in and to the Work Product in any and all countries as may be determined by Merck. The Advisor hereby irrevocably appoints Merck as the Advisor's attorney-in-fact for the purpose of executing such documents in the Advisor's name.

8.     Equitable Relief. The Advisor acknowledges and agrees that the restrictions set forth in Sections 5, 6 and 7 hereof are reasonable and necessary to protect the legitimate interests of Merck and that Merck would not have entered into this Agreement in the absence of such restrictions, and that any violation or threatened violation of any provision of Section 5, 6 or 7 will result in irreparable injury to Merck. The Advisor also acknowledges and agrees that in the event of a violation or threatened violation of any provision of Section 5, 6 or 7, Merck shall be entitled to preliminary and permanent injunctive relief, as well as equitable accounting of all earnings, profits and other benefits arising from such violation, which rights shall be cumulative and in addition to any other rights or remedies to which Merck may be entitled.

9.     References to Merck. It is Merck policy that no Advisor can include references to Merck as a client or references to any of Merck products in a promotional context, including but not limited to, advertisements, interviews, presentations to prospective clients, articles, or promotional materials, without the prior written approval of Merck. This limitation does not preclude the Advisor from disclosing the fact of the advisory relationship when the Advisor speaks at educational programs, authors a manuscript, or participates in a clinical study, or otherwise as required by law.

10.    Termination. This Agreement may be terminated by either party hereto at any time upon written notice. The respective rights and obligations of the parties hereunder shall indefinitely survive the termination of this Agreement to the extent necessary to the intended preservation of such rights and obligations. Payment will be made by Merck to the Advisor for any expenses and/or time reasonably incurred pursuant to the Agreement prior to the date of termination (providing such expenses cannot be canceled or recoverable by the Advisor from third parties).

04/04/02

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER

LL-LAAG 01467

11.   Miscellaneous.  Neither party shall assign this Agreement or any of their respective rights or obligations hereunder without the prior written consent of the other party.  This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed under and in accordance with the laws of the Commonwealth of Pennsylvania without regard to principles of conflicts of laws.  This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and all prior agreements with respect thereto are superseded hereby.  No amendment or modification hereof shall be binding unless in writing and duly executed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

_____
Loren A. Laine, MD

_____
Adam Schechter
Executive Director Marketing
Arthritis and Analgesia Franchise
Business Group Merck & Co., Inc.

_____
Date

_____
Date   4-5-02

_____
Taxpayer ID No.

- 4 -                                      04/04/02

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER                    LL-LAAG 01468

Clinical Immunology & Analgesia

Merck & Co., Inc.
P.O. Box 2000
Rahway NJ 07065-1900
Cable MERCKRAH

 **MERCK**
Research Laboratories

July 19, 2002

Loren Laine, MD
GI Liver Division of
South California School of Medicine
2025 Zonal Avenue (LAC 12-137)
Los Angles, CA  90033

Dear Dr. Laine:

We would like to establish a consulting agreement with you, for your services on the Steering Committee and the Executive Committee for Merck trial MK-0663 entitled, "A Randomized, Double-Blind, Active-Comparator-Controlled, Parallel-Group Study to Evaluate the Safety of Etoricoxib in Patients With Osteoarthritis or Rheumatoid Arthritis" Protocol 066 (Domestic and International).

As Co-Chairman of the Steering Committee and member of the Executive Committee you will:

* Aid in the design of the trial;
* Aid in the analysis of, presentation of, and writing of the results of the trial;
* Be available to discuss all aspects of the trial;
* Participate in meetings with Merck personnel, consultants, investigators, and FDA;
* Monitor the performance of the Global Data Coordinating center (Merck Research Laboratories, Rahway, NJ), Merck International Subsidiaries, and the Merck Clinical Monitor and the Clinical centers; .
* Advise Merck Subsidiaries and the Merck Clinical Monitor on operational matters;
* Review and approve all proposed ancillary studies, based on written protocols;
* Review and approve all reports and publications on ancillary studies that are based upon data from the main study;
* Approve changes to the protocol;
* Determine the time to end the study based on the study protocol and on recommendations from the Data and Safety Monitoring Board (DSMB) and other available information;
* Refine and/or endorse the definitions and specifications of major endpoints of the study;
* Participate in the conduct of periodic scientific meetings with updating of study progress
* Oversee the trial to completion;

Your consulting services will commence on or about June 9, 2002 and will be completed approximately three years from study initiation (anticipated to be approximately October 1ˢᵗ, 2002) or until the Steering Committee declares the study as ended, whichever comes last.  In such a capacity, you will be considered as an independent contractor and not as an agent of Merck.

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER

During your consultantship term, you agree to be available to assist us by way of quarterly face-to-face meetings, weekly teleconferences and correspondence. In return for your services, we propose to compensate you at the rate of One Hundred Thousand Dollars ($100,000) per year plus reasonable travel expenses for any trips we may ask you to make. An initial payment of $50,000 will be made within 30 days of full execution of this Agreement, to cover the period from June 9, 2002 through December 31, 2002. Thereafter, additional payments of $25,000 each will be made at the beginning of each quarter until the termination of the study. In order that payment may be made directly to you, Merck requires that your employer, The University of Southern California, acknowledge that you will be serving as a consultant to Merck and that Merck will compensate you directly for this service. The attached letter (Attachment A) satisfactorily meets this requirement.

As is our practice with all of our consultants, we must require that you do not, without prior Merck approval, directly or indirectly use for yourself or for others, or disclose to any third party, any secret or confidential information, knowledge or data regarding our products, processes and/or research work during the term of this agreement and thereafter. As is also customary, you agree that any inventions or discoveries, whether or not patentable, which you may invent or discover or reduce to practice as a result of the consulting services you render us under this agreement, shall be the sole property of Merck & Co., Inc.

In addition, we must require that you do not consult with any other party, firm or company in the pharmaceutical industry on matters pertaining to the area covered by this agreement for a period of one (1) year from the date your consulting services are completed. Upon termination of this consultantship, or at any other time that we may ask you to do so, you agree to return all papers, materials, records and other documents which we may furnish or make available to you.

Company policy limits the term of consultantship agreements to a total of five (5) years. Thus, this agreement cannot extend beyond June 2007.

If this consultantship arrangement is acceptable to you, please sign, date and return one copy of this letter to Betty R. Schryver, Merck Research Laboratories, P. O. Box 2000, Mail Stop RY34B-638, Rahway, NJ 07065 and retain the other copy for your records. We look forward to a mutually fruitful and beneficial scientific relationship with you.

Sincerely,

Alise Reicin, MD


AGREED AND ACCEPTED:

BY:     _____
        Loren Laine, MD

DATE:   _____

SOC. SEC. NO.   ███████████

REDACTED; CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER



**MERCK & CO., INC.**
**Arthritis and Analgesia**
**ADVISORY BOARD AGREEMENT**

ADVISORY BOARD AGREEMENT, dated as of 6/1/06, by and between Merck & Co., Inc., a New Jersey corporation ("Merck"), with offices at Sumneytown Pike, North Wales, PA 19454 and Loren Laine, MD, an individual (the "Advisor"), having a principal place of business at LA County – USC Medical Center, 1200 North State St, Room 12-137, Los Angeles, CA 90033.

IN CONSIDERATION of the mutual promises herein contained, the parties hereto agree as follows:

1. Advisory Services. Merck agrees to retain the Advisor as a member of the Arthritis and Analgesia Advisory Board (the "Board"). As a member of the Board, Advisor will provide confidential advice, counsel, and assistance in the development, planning, and execution of commercial and scientific initiatives related to Merck's Arthritis and Analgesia program and specifically ARCOXIA (the "Advisory Services"). The Advisory Services may cover topics including, but not limited to, market development, strategic product planning, and educational activities as well as the design and conduct of the clinical and preclinical development program. The Advisory Services may be rendered in the form of telephone conferences, face-to-face meetings, and/or making presentations to Merck employees or third party audiences. As a member of the Board, Advisor agrees provide Advisory Services in accordance with Schedule A.

2. Term. The Advisor agrees to complete the Advisory Services over the period of time beginning with the execution of this Agreement and continuing through December 31, 2007.

3. Compensation. Attendance and participation at Board shall be compensated at the rate of $4000/day and pro-rated at a rate of $500/hour for pre-defined teleconferences or face-to-face meetings lasting less than one day.

   The compensation to be paid the Advisor under this Agreement includes, and the Advisor shall be liable for, all taxes, excises, assessments and other charges levied by any government agency on, or because of, the Advisory Services performed hereunder, and any materials, equipment, services or supplies furnished or used in the performance of the Advisory Services.

4. Expenses. The Advisor will be reimbursed by Merck for all reasonable and documented meals, travels and lodging expenses incurred by the Advisor in connection with the performance of the Advisory Services rendered by the Advisor hereunder, provided that the Advisor provides Merck with a reasonable accounting, together with receipts, for such expenses. Expenses shall only be incurred with the advance written approval of Merck and must be consistent with Merck policy. All

- 1 -                                                                  06/07/06

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER                              LL-LAAG 01471



travel arrangements should be made through Merck's designated agent. Any exception to this rule must be approved in advance by Merck.

5. **Status.** The Advisor will be an independent contractor and not an employee or agent of Merck. Furthermore, the Advisor certifies that they have reviewed with the appropriate senior management of their employer that the consultant is entering into this Agreement and Advisor's performance under this Agreement complies with all applicable policies of their employer and any institution with which they are affiliated with, including policies regarding ethics and conflicts of interests.

6. **Government Employees.** In accordance with federal regulations, Merck is not permitted to retain individuals who work for or provide services to the government if such retention presents a real or apparent conflict of interest or if the honorarium or reimbursed expenses would constitute an unlawful gift or compensation to an employee of the federal government. If you work for or provide services to the government or will do so during the time period in which your services are provided to Merck, you and your employer are required to complete and sign a Government Employee Form and return it to Merck. This signed form will remain valid for a period of three years; however, prior to providing professional services to Merck, you will be asked each time to: 1) certify that no conflict of interest exists; 2) notify Merck if you have a change in responsibilities that could present a real or apparent conflict of interest; and 3) if such change should occur, refrain from providing any services to Merck until the potential conflict is resolved.

7. **Confidential Information.** The Advisor acknowledges and agrees that the Advisor will have access to, or become acquainted with, Confidential Information of Merck. For the purposes of this Agreement, "Confidential Information" shall mean any information of Merck, whether or not developed by the Advisor, including but not limited to, information which relates to all ideas, designs, methods, discoveries, improvements, products or other results of the Advisory Services, trade secrets, product data and specifications, proprietary rights, business affairs, product developments customer information or employee information. Confidential Information does not include any information that: (i) the Advisor can prove was known to Advisor prior to the date of this Agreement and any other agreement between the parties hereto, without obligation to keep it confidential; (ii) the Advisor can prove was lawfully obtained from a third party without any obligation of confidentiality; or (iii) is or becomes part of the public domain through no act or violation of any obligation of the Advisor. The Advisor acknowledges and agrees that the Confidential Information constitutes valuable trade secrets of Merck. The Advisor shall keep all Confidential Information in confidence and shall not, at any time during or after the term of this Agreement, without Merck's prior written consent, disclose or otherwise make available, directly or indirectly, any item of Confidential Information to anyone. The Advisor shall use the Confidential Information only in connection with the performance of the Advisory Services hereunder and for no other purpose.

8. **Merck Property.** The Advisor agrees not to take any documents, papers, drawings, magnetic media or other tangible property, or any copies thereof, belonging to

- 2 -

06/07/06

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER                                    LL-LAAG 01472



Merck (or the cost of which was reimbursed by Merck), including but not limited to, those prepared or worked on by the Advisor, unless specifically authorized in writing by Merck to do so. All documents, papers, drawings, magnetic media and other tangible property made, or compiled by, or made available to the Advisor and any copies thereof, whether or not they contain Confidential Information, are and shall be the property of Merck and shall be delivered to Merck by the Advisor immediately upon demand. Merck shall own and control all worldwide rights, title and interest in and to all work, ideas, designs, methods, discoveries, improvements, products or other results that are created developed, written, conceived or made by the Advisor in connection with the Advisory Services (the "Work Product"). The Advisor agrees to make full disclosure of all Work Products to Merck. The Advisor also agrees that all Work Product shall be considered "works made for hire" within the meaning of the copyright laws of the United States and that Merck is and shall be the sole author of the Work Product and sole owner of all rights therein. In the event any of the Work Product is deemed not to be a "work made for hire," then the Advisor hereby assigns to Merck all worldwide rights, title and interest in and to the Work Product, including , but not limited to , all patentable inventions, trade secrets and all works subject to copyright.. The Advisor agrees to (i) execute all documents and perform all acts deemed necessary by Merck to evidence Merck's ownership of the Work Product, and (ii) assist Merck in obtaining, registering, maintaining and defending, at Merck's sole expense, all patents, copyrights, trade secret rights and other proprietary rights in and to the Work Product in any and all countries as may be determined by Merck. The Advisor hereby irrevocably appoints Merck as the Advisor's attorney-in-fact for the purpose of executing such documents in the Advisor's name.

9. Equitable Relief. The Advisor acknowledges and agrees that the restrictions set forth in Sections 5, 7 and 8 hereof are reasonable and necessary to protect the legitimate interests of Merck and that Merck would not have entered into this Agreement in the absence of such restrictions, and that any violation or threatened violation of any provision of Section 5, 7 or 8 will result in irreparable injury to Merck. The Advisor also acknowledges and agrees that in the event of a violation or threatened violation of any provision of Section 5, 7 or 8, Merck shall be entitled to preliminary and permanent injunctive relief, as well as equitable accounting of all earnings, profits and other benefits arising from such violation, which rights shall be cumulative and in addition to any other rights or remedies to which Merck may be entitled.

10. References to Merck. It is Merck policy that no Advisor can include references to Merck as a client or references to any of Merck products in a promotional context, including but not limited to, advertisements, interviews, and presentations to prospective clients, articles, or promotional materials, without the prior written approval of Merck. This limitation does not preclude the Advisor from disclosing the fact of the advisory relationship when the Advisor speaks at educational programs, authors a manuscript, or participates in a clinical study, or otherwise as required by law.

11. Termination. This Agreement may be terminated by either party hereto at any time upon written notice. The respective rights and obligations of the parties hereunder

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER                    LL-LAAG 01473



shall indefinitely survive the termination of this Agreement to the extent necessary to the intended preservation of such rights and obligations. Payment will be made by Merck to the Advisor for any expenses and/or time reasonably incurred pursuant to the Agreement prior to the date of termination (providing such expenses cannot be canceled or recoverable by the Advisor from third parties).

12. Miscellaneous. Neither party shall assign this Agreement or any of their respective rights or obligations hereunder without the prior written consent of the other party. This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed under and in accordance with the laws of the Commonwealth of Pennsylvania without regard to principles of conflicts of laws. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and all prior agreements with respect thereto are superseded hereby. No amendment or modification hereof shall be binding unless in writing and duly executed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

MERCK & CO., INC.

_____
Loren Laine, MD
Professor of Medicine
LA County – USC Medical Center

Matt Strasburger
Executive Director
Merck & Co. Inc.

6/12/06
_____
Date

_____
Date

_____
Taxpayer ID No.

- 4 -                                                                 06/07/06

REDACTED; CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER                    LL-LAAG 01474



## SCHEDULE A

As a member of the Advisory Board, Advisor agrees to:

_2006*_

(1)     Attend and participate in approximately 1 day of Advisory Board Meetings;

(2)     Participate in approximately 2 hours of Scheduled Teleconferences; and

(3)     Provide ad hoc advisory services related to this Agreement as reasonably necessary.

_2007*_

(1)     Attend and participate in approximately 2 days of Advisory Board Meetings;

(2)     Participate in approximately 2 hours of Scheduled Teleconferences; and

(3)     Provide ad hoc advisory services relating to this Agreement as reasonably necessary.


*The time commitments described in this schedule are estimated requirements. Merck shall compensate Advisors based on actual services rendered not based on these estimates.

- 5 -

06/07/06

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER

LL-LAAG 01475

**Amendment #1 to**
**ARTHRITIS and ANALGESIA**
**ADVISORY BOARD AGREEMENT**

This Amendment #1 modifies the agreement entitled Arthritis and Analgesia Advisory
Board Agreement between Loren Laine, M.D. and Merck & Co., Inc. dated August 4,
2006 (the "Agreement").

Now, therefore, the parties agree to amend the Agreement as follows:

1) The following Paragraph is inserted as Paragraph 15:

   *Indemnification. Merck understands that you are participating on the Advisory*
   *Board for etoricoxib and that you will perform those services at the highest*
   *professional levels. On the basis of these beliefs, and our understanding that any*
   *claim against you related to your participation on the Advisory Board may be*
   *brought strictly for tactical reasons rather than your actual service on the*
   *Advisory Board, we promise that we will indemnify, defend and hold you*
   *harmless, to the fullest extent permitted by law, from and against any and all*
   *actions, claims, and other proceedings, judgments, liabilities, settlements, costs*
   *and expenses (including without limitation attorneys' and other professionals'*
   *fees) (collectively, "Losses"), incurred by you that relate to, arise or result from*
   *your service on the Advisory Board, except for Losses resulting from your willful*
   *misconduct or gross negligence.*

2) Except as amended herein, the terms and conditions of the Agreement shall
   remain in full force and effect. The Agreement as amended herein constitutes the
   entire understanding between the parties and supersedes any and all other
   agreements, whether oral or written, between the parties with respect to the
   subject matter contained in the Agreement as amended.

Please acknowledge your acceptance of Amendment #1 by signing and dating both
copies. Retain one signed and dated copy for your file and return the other to Mark
Williams, Merck & Co., Inc., 351 North Sumneytown Pike, UG2AB-82, North Wales,
PA 19454.

**Merck & Co., Inc.**                            **Loren Laine, M.D.**

By: _____        By: _____

Title: _____

Date: ____8/7/06_____        Date: _____

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER



Business
Confidential
use only

## MERCK & CO., INC.
## RHEUMATOLOGY/GASTROENTEROLOGY
## ADVISORY BOARD AGREEMENT

ADVISORY BOARD AGREEMENT, dated as of January 6, 2004, by and between Merck & Co., Inc., a New Jersey corporation ("Merck"), with offices at 351 N. Sumneytown Pike, North Wales, PA 19454 and **Loren A. Laine, MD**, an individual (the "Advisor"), having a principal place of business at "USC School of Medicine, 2025 Zonal Avenue, Los Angeles, CA 90033".

IN CONSIDERATION of the mutual promises herein contained, the parties hereto agree as follows:

1. Advisory Services. Merck agrees to retain the Advisor as a member of the Rheumatology/Gastroenterology Advisory Board (the "Board"). As a member of the Board, Advisor will provide confidential advice, counsel, and assistance in the development, planning, and execution of commercial and scientific initiatives related to Merck's A&A Franchise program and specifically VIOXX and ARCOXIA (the "Advisory Services"). The Advisory Services may cover topics including, but not limited to, market development, strategic product planning, and educational activities as well as the design and conduct of the clinical and preclinical development program. The Advisory Services may be rendered in the form of telephone conferences, face-to-face meetings, and/or making presentations to Merck employees or third party audiences. As a member of the Board, Advisor agrees provide Advisory Services in accordance with Schedule A.

2. Term. The Advisor agrees to complete the Advisory Services over the period of time beginning with the execution of this Agreement and continuing December 31, 2005.

3. Compensation. Attendance and participation at Board shall be compensated at the rate of $5000/day and pro-rated at a rate of $625/hour for pre-defined teleconferences or face-to-face meetings lasting less than one day.

   The compensation to be paid the Advisor under this Agreement includes, and the Advisor shall be liable for, all taxes, excises, assessments and other charges levied by any government agency on, or because of, the Advisory Services performed hereunder, and any materials, equipment, services or supplies furnished or used in the performance of the Advisory Services.

4. Expenses. The Advisor will be reimbursed by Merck for all reasonable and documented meals, travels and lodging expenses incurred by the Advisor in connection with the performance of the Advisory Services rendered by the Advisor hereunder, provided that the Advisor provides Merck with a reasonable accounting, together with receipts, for such expenses. Expenses shall only be incurred with the advance written approval of Merck and must be consistent with Merck policy.

5. Status. The Advisor will be an independent contractor and not an employee or agent of Merck. Furthermore, the Advisor certifies that they have reviewed with the

12/08/03

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER

LL-LAAG 01477



appropriate senior management of their employer that the consultant is entering into this Agreement and Advisor's performance under this Agreement complies with all applicable policies of their employer and any institution with which they are affiliated with, including policies regarding ethics and conflicts of interests.

6. **Government Employees.** In accordance with federal regulations, Merck is not permitted to retain individuals who work for or provide services to the government if such retention presents a real or apparent conflict of interest or if the honorarium or reimbursed expenses would constitute an unlawful gift or compensation to an employee of the federal government. If you work for or provide services to the government or will do so during the time period in which your services are provided to Merck, you and your employer are required to complete and sign a Government Employee Form and return it to Merck. This signed form will remain valid for a period of three years; however, prior to providing professional services to Merck, you will be asked each time to: 1) certify that no conflict of interest exists; 2) notify Merck if you have a change in responsibilities that could present a real or apparent conflict of interest; and 3) if such change should occur, refrain from providing any services to Merck until the potential conflict is resolved.

7. **Confidential Information.** The Advisor acknowledges and agrees that the Advisor will have access to, or become acquainted with, Confidential Information of Merck. For the purposes of this Agreement, "Confidential Information" shall mean any information of Merck, whether or not developed by the Advisor, including but not limited to, information which relates to all ideas, designs, methods, discoveries, improvements, products or other results of the Advisory Services, trade secrets, product data and specifications, proprietary rights, business affairs, product developments customer information or employee information. Confidential Information does not include any information that: (i) the Advisor can prove was known to Advisor prior to the date of this Agreement and any other agreement between the parties hereto, without obligation to keep it confidential; (ii) the Advisor can prove was lawfully obtained from a third party without any obligation of confidentiality; or (iii) is or becomes part of the public domain through no act or violation of any obligation of the Advisor. The Advisor acknowledges and agrees that the Confidential Information constitutes valuable trade secrets of Merck. The Advisor shall keep all Confidential Information in confidence and shall not, at any time during or after the term of this Agreement, without Merck's prior written consent, disclose or otherwise make available, directly or indirectly, any item of Confidential Information to anyone. The Advisor shall use the Confidential Information only in connection with the performance of the Advisory Services hereunder and for no other purpose.

8. **Merck Property.** The Advisor agrees not to take any documents, papers, drawings, magnetic media or other tangible property, or any copies thereof, belonging to Merck (or the cost of which was reimbursed by Merck), including but not limited to, those prepared or worked on by the Advisor, unless specifically authorized in writing by Merck to do so. All documents, papers, drawings, magnetic media and other tangible property made, or compiled by, or made available to the Advisor and any copies thereof, whether or not they contain Confidential Information, are and shall

12/08/03

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER

LL-LAAG 01478


Business
Confidential
use only

be the property of Merck and shall be delivered to Merck by the Advisor immediately upon demand. Merck shall own and control all worldwide rights, title and interest in and to all work, ideas, designs, methods, discoveries, improvements, products or other results that are created developed, written, conceived or made by the Advisor in connection with the Advisory Services (the "Work Product"). The Advisor agrees to make full disclosure of all Work Products to Merck. The Advisor also agrees that all Work Product shall be considered "works made for hire" within the meaning of the copyright laws of the United States and that Merck is and shall be the sole author of the Work Product and sole owner of all rights therein. In the event any of the Work Product is deemed not to be a "work made for hire," then the Advisor hereby assigns to Merck all worldwide rights, title and interest in and to the Work Product, including, but not limited to, all patentable inventions, trade secrets and all works subject to copyright. The Advisor agrees to (i) execute all documents and perform all acts deemed necessary by Merck to evidence Merck's ownership of the Work Product, and (ii) assist Merck in obtaining, registering, maintaining and defending, at Merck's sole expense, all patents, copyrights, trade secret rights and other proprietary rights in and to the Work Product in any and all countries as may be determined by Merck. The Advisor hereby irrevocably appoints Merck as the Advisor's attorney-in-fact for the purpose of executing such documents in the Advisor's name.

9. **Equitable Relief.** The Advisor acknowledges and agrees that the restrictions set forth in Sections 5, 7, and 8 hereof are reasonable and necessary to protect the legitimate interests of Merck and that Merck would not have entered into this Agreement in the absence of such restrictions, and that any violation or threatened violation of any provision of Section 5, 7, or 8 will result in irreparable injury to Merck. The Advisor also acknowledges and agrees that in the event of a violation or threatened violation of any provision of Section 5, 7, or 8, Merck shall be entitled to preliminary and permanent injunctive relief, as well as equitable accounting of all earnings, profits and other benefits arising from such violation, which rights shall be cumulative and in addition to any other rights or remedies to which Merck may be entitled.

10. **References to Merck.** It is Merck policy that no Advisor can include references to Merck as a client or references to any of Merck products in a promotional context, including but not limited to, advertisements, interviews, presentations to prospective clients, articles, or promotional materials, without the prior written approval of Merck. This limitation does not preclude the Advisor from disclosing the fact of the advisory relationship when the Advisor speaks at educational programs, authors a manuscript, or participates in a clinical study, or otherwise as required by law.

11. **Termination.** This Agreement may be terminated by either party hereto at any time upon written notice. The respective rights and obligations of the parties hereunder shall indefinitely survive the termination of this Agreement to the extent necessary to the intended preservation of such rights and obligations. Payment will be made by Merck to the Advisor for any expenses and/or time reasonably incurred pursuant to the Agreement prior to the date of termination (providing such expenses cannot be canceled or recoverable by the Advisor from third parties).

12/08/03

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER

LL-LAAG 01479



12. Miscellaneous.  Neither party shall assign this Agreement or any of their respective rights or obligations hereunder without the prior written consent of the other party. This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed under and in accordance with the laws of the Commonwealth of Pennsylvania without regard to principles of conflicts of laws. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and all prior agreements with respect thereto are superseded hereby.  No amendment or modification hereof shall be binding unless in writing and duly executed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

MERCK & CO., INC.

Loren A. Laine, MD

Grif Bates
Senior Director, Marketing, A&A Franchise

_____

_____

_____

_____

Date

Date

_____

Taxpayer ID No.

12/08/03

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER

LL-LAAG 01480



## SCHEDULE A

As a member of the Advisory Board, Advisor agrees to:

*First year of contract: 2004\**

(1)    Attend and participate in approximately 2 days of Advisory Board Meetings; and

(2)    Provide ad hoc advisory services related to this Agreement as reasonably necessary.

*Second year of contract: 2005 \**

(1)    Attend and participate in approximately 2 days of Advisory Board Meetings; and

(2)    Provide ad hoc advisory services relating to this Agreement as reasonably necessary.

\*The time commitments described in this schedule are estimated requirements. Merck shall compensate Advisors based on actual services rendered not based on these estimates.

12/08/03

CONFIDENTIAL:SUBJECT TO PROTECTIVE ORDER

LL-LAAG 01481

John M. Amatruda, MD
Vice President, Clinical Sciences, Metabolism

Merck & Co., Inc.
126 E. Lincoln Ave.
P.O. Box 2000, RY34-A212
Rahway NJ 07065-0900
Tel 732 594 3632
Fax 732 594 3750
john_amatruda@merck.com

January 11, 2007

Loren Laine, MD
LA County - USC Medical Center
1200 North State Street
Room 12-137
Los Angeles, CA 90033



**MERCK**

Research Laboratories

Dear Dr. Laine:

We are pleased to establish an agreement with you to obtain your advice and guidance on the topic of FDA Advisory Committee Meeting preparations supporting etoricoxib. We propose that you serve as a consultant to us on this topic on January 12, 2007 to January 11, 2008. In such capacity, you will be considered as an independent contractor and not as an agent of the Company. We will compensate you for your consulting services in the amount of $ 500.00 per hour or $5,000.00 per day for a maximum of $20,000.00 and reimburse you for reasonable travel expenses for any trips we may ask you to make.

Payments shall be made to Loren Laine, MD and forward to the following address: Attention: Loren Laine, MD, LA County - USC Medical Center, 1200 North State Street, Room 12-137, Los Angeles, CA 90033

As is our practice with all of our consultants, we must require that you do not, without prior Merck approval, directly or indirectly use for yourself or for others, or disclose to any third party, any secret or confidential information, knowledge or data regarding our products, processes and/or research work at any time. As is also customary, you agree that any inventions or discoveries, whether or not patentable, which you may invent or discover or reduce to practice as a result of the consulting services you render us under this agreement, shall be the sole property of Merck & Co., Inc.

In addition, we must require that you do not consult with any other party, firm or company in the pharmaceutical industry on matters pertaining to the areas covered by this agreement for a period of one (1) year from the date your consulting services are completed. Upon completion of your consulting services, or any other time that we may ask you to do so, it is understood that you will return all materials, papers, records and other documents which we may furnish or make available to you.

If this agreement is acceptable to you, please sign, date and return the attached copy of this letter to me. We look forward to a mutually fruitful and beneficial scientific relationship with you.

Sincerely,

John M. Amatruda, MD

Attachment

AGREED AND ACCEPTED:

BY: _____
        Loren Laine, MD

DATE: _____

SOCIAL SECURITY NO.: _____ (IF APPLICABLE)

Business Confidential Use only

LL-LAAG 01482

eft

Merck & Co., Inc.
P.O. Box 2000
Rahway NJ 07065-0900

May 10, 2007



**MERCK**

Research Laboratories

Dr. Loren Laine
USC Medical Center
1200 N. State Street, LAC-Room 12-137
Los Angeles, CA 90033

Dear Dr. Laine:

Your current consulting contract with us will expire on June 1, 2007. We would like to renew this arrangement with you to retain your services as the MK-0663 Steering Committee Co-Chairman for an additional year beginning June 1, 2007 and terminating June 2007. The terms and conditions as outlined in our letter agreement dated July 19, 2002 (see attached) apply with the following agreed upon revisions for compensation:

- Compensation for services, other than for means of publication which are excluded, will be made at a rate of $350.00 per hour payable upon invoice (see attached). The maximum amount of this contract is not to exceed 100 hours or $35,000.00 with the provision that this amount may be exceeded if agreed to in writing by both parties.

Payments shall be made to Dr. Loren Laine forward to the following address: Attention: Dr. Loren Laine USC Medical Center, 1200 N. State Street, LAC-Room: 12-137, Los Angeles, CA 90033.

If the terms of this renewal are acceptable to you, please sign and date both copies of this letter agreement and return one original to Deborah Balogh, Merck and Co. Inc., P.O. Box 2000, Rahway, NJ, 07065 Mail Drop RY34-B344. All contract questions may be directed to Michelle Kress (732)594-0063 or michelle_kress@merck.com. We look forward to your continuing advice and guidance regarding our ongoing research programs.

Sincerely,

Sean Curtis
Executive Director, Clinical Research

In Duplicate
Attachment

ACCEPTED: _____
                Dr. Loren Laine

DATED: _____

Social Security NO.: ████████ _____

Business
Confidential
use only