UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX<br>    Products Liability Litigation<br><br>This Document Relates to:<br><br>    STATE OF LOUISIANA, ex rel.<br>    JAMES D. CALDWELL,<br>    ATTORNEY GENERAL<br>        Plaintiff<br><br>versus<br><br>MERCK SHARP & DOHME CORP.<br><br>Case No. 05-3700 | MDL NO. 1657<br><br>SECTION: L<br><br>HON. ELDON E. FALLON<br><br>MAG. JUDGE KNOWLES |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE EXPERT REPORT OR IN THE ALTERNATIVE TO EXCLUDE EXPERT TESTIMONY**

In opposition to Plaintiff's motion, Merck has argued that Dr. Eiswirth's testimony should not be struck pursuant to Rule 37, and that his opinions should not be excluded pursuant to Rule 702. As explained below, Merck's arguments fail.

**I.  DR. EISWIRTH'S EXPERT TESTIMONY SHOULD BE STRUCK PURSUANT TO RULE 37.**

Plaintiff moved to strike Dr. Eiswirth's testimony, pursuant to Rule 37(a), because Merck failed to timely disclose the data and information that Dr. Eiswirth relied on in forming his opinions, providing instead a list of materials without Dr. Eiswirth's input regarding the materials he considered with his expert report. (Memorandum in Support of Plaintiff's Motion to Strike Expert Report or in the Alternative to Exclude Expert Testimony ("Opening Br.") 2-3; List of Materials Reviewed, Dec. 7, 2009 ("Initial List"), Declaration of Jennifer Gross ("Gross Decl."), Ex. 1.)

- 1 -

861178.2

Merck couches a subsequent list, provided to Plaintiff the day before Dr. Eiswirth's deposition, as a "supplemental list." (Merck's Opposition to Plaintiff's Motion to Strike or in the Alternative to Exclude ("Opp. Br.") 2, 3-4.) This second list was the first and only list to incorporate Dr. Eiswirth's input regarding the materials he read, and included fifty-six new materials, most of which he had reviewed before drafting his report, and many of which he specifically relied on (but did not cite) in his report. (List of Materials Reviewed, Jan. 21, 2010 ("Revised List"), Gross Decl., Ex. 2; Dep. of Clement Eiswirth, Jan. 22, 2010 ("Eiswirth Dep.") 38:16-57:8, Gross Decl., Ex. 4.) By any name, the Initial List did not satisfy the requirements of Rule 26, and the Revised List was served well past the deadline for Expert Disclosures.

The Initial List compiled by Merck's counsel included only a selection of the materials that Dr. Eiswirth considered. All materials that were considered must be disclosed, including information that was considered but not relied on. *Colindres v. Quietflex Mfg.*, 228 F.R.D 567 (S.D. Tex. 2005). Moreover, Dr. Eiswirth testified that he had relied on many of the materials excluded from the Initial List. (Eiswirth Dep. 38:16-57:8.) The Revised List does not cure this deficiency. *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998) ("The purpose of supplementary disclosures is just that - to supplement [and] are not intended to provide an extension of the expert designation and report production deadline"); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 573 (5th Cir. 1996) (although information was provided in subsequent reports, the opposing party "should have received most of this information in initial expert disclosures a month earlier").

### A. Merck's Failure To Disclose The Materials Dr. Eiswirth Considered Is Not Harmless.

Merck argues that "Plaintiff must establish that it was prejudiced[.]" (Opp. Br. 2.) Merck misplaces the burden. "'The burden of showing that the violation was harmless is on the

- 2 -

861178.2

potentially sanctioned party.'" *Sierra Club*, 73 F.3d at 573, quoting *U.S. ex rel. Barron v. Deloitte & Touche*, 2008 WL 7136868, *5 (W.D. Tex. 2008) (rejecting a continuance in lieu of Rule 37 sanctions because "such a measure would neither punish [the offending party] for its conduct nor deter similar behavior in the future," *internal quotes omitted*). Rule 37 provides for sanctions "unless the failure was substantially justified or is harmless." Fed. R. Civ. Proc. 37(c)(1); *Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999); *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir.1996); *Current v. Atochem North America, Inc.*, 2001 WL 36101282, 2 (W.D. Tex. 2001). The court in *Current* held:

> Rule 37(c)(1) gives teeth to the Rule 26(a) disclosure requirements by forbidding, during any part of the case, the use of information required to be disclosed by Rule 26 that is not properly disclosed. The Advisory Committee Notes describe exclusion as a "self-executing," "automatic" sanction to "provide[ ] a strong inducement for disclosure of material . . . ."

2001 WL 36101282, *2, quoting Fed. R. Civ. P. 37, advisory committee's note (1993*); see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) and *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir.1998) (same).

Merck does not establish that the failure to disclose the materials Dr. Eiswirth considered is harmless, and cannot. Dr. Eiswirth's opinions rest solely on his interpretation of the published Vioxx literature – he neither conducted nor asked for an independent analysis of any data. Thus, the materials he reviewed are not merely background – they are the whole basis of his opinion, whether he cited them or not. His decision to review some articles and not others are critical to any assessment of whether his literature review was complete. Without this information, it is impossible to properly depose him about his methods in reaching his opinions. *Colindres v. Quietflex Mfg.*, 228 F.R.D 567 (S.D. Tex. 2005) ("An expert's consideration of a particular issue does not become . . . beyond the scope of expert disclosure by virtue of its omission from the

- 3 -

861178.2

expert report"); *see also See Trigon Ins. Co. v. United States,* 204 F.R.D. 277, 282 (E.D.Va.2001) ("information considered, but not relied upon, can be of great importance in understanding and testing the validity of an expert's opinion").

Merck claims that materials disclosed the day before the deposition were "specifically referenced in his expert report[.]" (Defendant's Opposition to Plaintiff's Motion to Strike or in the Alternative to Exclude ("Def. Opp.") 3, 4.) However, <u>not a single article</u> that was added to the materials reviewed list the day before the deposition was "specifically referenced" in Dr. Eiswirth's expert report. Merck also argues that the articles added to the list the day before the deposition, if not "specifically referenced" – and none were – were only for general knowledge. (Def. Opp. 4.) Yet, in his deposition, Dr. Eiswirth specifically testified that he "referenced" or relied on many of these articles in his report, although none were mentioned by name, author, or by any other identifying quality. (Eiswirth Dep. 38:16-57:8.)

Moreover, Merck is not excused from disclosing materials that are not specifically referenced in the report. *Synthes Spine Co., L.P. v. Walden,* 232 F.R.D. 460, 462-463 (E.D. Pa. 2005) ("the term 'considered' in Rule 26(a)(2)(B) exceeds the more narrow definition of 'relied upon'"); *Turnpike Ford, Inc. v. Ford Motor Co.,* 244 F.R.D. 332, 334 (S.D. W. Va. 2007) ("the exercise of receiving the information, considering it and determining whether or not it would be relied upon and used in the report falls within the broad definition of "considered").

Plaintiff's counsel could not possibly be prepared to question Dr. Eiswirth about the articles added the day before the deposition, and many were critical to properly question him about his opinions. For example, Dr. Eiswirth's report includes an opinion that "Cox-2 expression in atherosclerotic plaques is up-regulated [and that] one would expect that Cox-2 inhibitors would be beneficial in this setting, resulting in a reduction in inflammation within the

861178.2

vasculature and stabilization of atherosclerotic plaques." (Report of Clement Eiswirth, Dec. 2009 ("Eiswirth Report") at 23, Gross Decl., Ex. 3.) The Initial List did not include a single article for this proposition until the day before his deposition. At the deposition, he testified he specifically relied on six articles related articles on the Revised List in his report.[1]

Dr. Eiswirth also opines, "Animal studies using genetically altered mice with Cox-2 deficient macrophages exhibit less atherosclerosis and the administration of Cox-2 inhibitors demonstrate similar findings." (Eiswirth Report 23.) He did not cite the animal studies that supported his view in the report, but three relevant articles were cited in the Revised List.[2]

### B. Merck Provides No Justification for Failing to Disclose the Materials Dr. Eiswirth Considered.

Merck does not even attempt to provide an explanation for the Initial List, and thus fails to establish substantial justification. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999) (upholding sanctions under Rule 37 where "Appellants provided no explanation for their actions").

---

[1] Eiswirth Dep. 38:16-57:8. The six articles are Halcox JPJ, et al. "Endothelial Function Predicts Progression of Carotid Intima-Media Thickness," *Circulation* 2009; 119:1005-1012; Tikiz, C., "Selective COX-2 Inhibition with Different Doses of Rofecoxib Does Not Impair Endothelial Function in Patients with Coronary Artery Disease, *Acta Med. Okayama* 2005 Vol. 59, No. 1, pp. 11-17; Title L, et al., "Effect of Cyclooxygenase-2 Inhibition With Rofecoxib on Endothelial Dysfunction and Inflammatory Markers in Patients with Coronary Artery Disease," *Journal of Am. Coll. Cardiology*, 2003 Nov 1747:53; Voetsch, B., "Nitric Oxide Insufficiency and Atherothrombosis," *Histochemistry and Cell Biology* 10.1007/s00418-004-0675-z; Linton, M., "Cyclooxygenase-2 and atherosclerosis," *Curr. Lipidol.* 13; 497-504 (2002); Saito T. (2003), et al., "Cyclooxygenase-2 (COX-2) in acute myocardial infarction: cellular expression and use of selective COX-2 inhibitor," *Can J. Physiol. Pharmacol.* 81:144-119 (2003).

[2] Belton, O, "Cyclooxygenase Isoforms and Platelet Vessel Wall Interactions in the Apolipoprotein E Knockout Mouse Model of Atherosclerosis," Circulation. 2003; 108:3017-23. Hennan, J., "Effects of Selective Cyclooxygenase-2 Inhibition on Vascular Responses and Thrombosis in Canine Coronary Arteries," Circulation. 2001;104:820-825.
Practico, D., "Acceleration of atherogenesis by COX-1 dependent prostanoid formation in low density lipoprotein receptor knockout mice," PNAS Vol. 98, no.6, 3358-3363 (2001).

### C. Contrary to Merck's Claim, Plaintiff's Experts Disclosed the Information They Considered in Forming Their Opinions, in Full Compliance With Rule 26(a)(2).

Merck claims that Drs. Abramson, Julie, Kessler and Graham failed to provide the materials they considered in forming their opinions prior to their depositions. (Opp. Br. 5.) This claim is untrue. All four experts provided a full cite to the materials they considered with their expert reports, and each testified in deposition that the materials they relied on were cited in or with their initial expert report.

Dr. Abramson testified that he understood it was his obligation to identify all the materials he relied on, and that he intentionally sought to cite each article specifically in his report. (Dep. of John Abramson, Jan. 11, 2010, 69:19 - 70:12, Gross Decl. Ex. 5.)[3] Dr. Abramson provided both a complete list of materials reviewed with his expert report and included full citations to articles with his report. (Report of John Abramson, Gross Decl. Ex. 6; List of Materials Reviewed by John Abramson, Gross Decl. Ex. 7.)

Dr. Julie provided a list of materials he reviewed with his expert report, along with endnotes to the report itself. At his deposition, he provided two documents that he had reviewed since writing his report, and he specifically stated that he received each the day before his deposition, and he did not rely on them in writing his report. (Dep. of Neil Julie, Jan. 13, 2010, 12:13-17, 13:7-14, Gross Decl. Ex. 8; Report of Neil Julie, Gross Decl. Ex. 9; List of Materials Reviewed by Neil Julie, Gross Decl. Ex. 10.)

Dr. Graham cited the materials he considered in the report itself, and testified as such.

---

[3] Dr. Abramson also testified that in reviewing his report prior to deposition, he could think of only one document he had not cited: an internal Merck document specifying the exclusion criteria for the osteoarthritis studies. (70:19-71:9.) His acknowledgement of this single, inadvertent exclusion contrasts with Dr. Eiswirth's review of his report before his deposition, where he saw the references Merck provided with his report for the first time, and noted 56 documents to add to a supplemental list.

- 6 -

861178.2

(Dep. of David Y. Graham, Jan. 15, 2010, 24:9-14, Gross Decl. Ex. 11; Report of David Y. Graham, Gross Decl. Ex. 12.)

Dr. Kessler provided a complete list of materials that he relied on for his report. He stated in his deposition that there were two documents he reviewed that were not included on the list served with his report: an FDA document and a news article about a paper published by a colleague. He saw both for the first time after his report was served. (Dep. of David Kessler, Jan 21, 2010, 51:11-52:12, Gross Decl. Ex. 13; Report of David Kessler, Gross Decl. Ex. 14.)

On the other hand, Dr. Eiswirth did not make any attempt to include the materials he reviewed. He mentions articles in his report – without any information but the name of the clinical trial or the name of an author. He acknowledged he did not cite articles in his report. (Eiswirth Dep. 47:18-48:13.) He provided no list to Merck's counsel, indeed, he acknowledged in deposition that he did not keep a list of materials he reviewed. (*Id.*) Unlike Plaintiff's experts, Dr. Eiswirth did and could not say in deposition that the only articles missing were articles he reviewed after he wrote his report. (Eiswirth Dep. 38:16-39:12.)

## II. DR. EISWIRTH'S OPINIONS SHOULD BE EXCLUDED PURSUANT TO RULE 702.

### A. Dr. Eiswirth Is Not Qualified To Opine On General Causation.

Merck argues that Dr. Eiswirth is qualified to opine on general causation, but does not provide a single example of Dr. Eiswirth's experience or expertise that actually supports his qualifications in this respect. Nor does Merck cite a single case pertaining to this argument. Merck does not specify what clinical research experience qualifies Dr. Eiswirth to testify regarding general causation, and his CV reveals no papers in the past sixteen years.

### B. Dr. Eiswirth's Opinions Regarding Epidemiological Studies Should Be Excluded.

Merck argues that Plaintiff seeks to exclude Dr. Eiswirth's opinions on epidemiology

- 7 -

861178.2

because they do not "feature" certain studies published after the withdrawal of Vioxx. Plaintiff's concern is not that Dr. Eiswirth chose not to discuss certain studies in his report. He simply is not qualified to opine on epidemiology. He is unfamiliar with basic epidemiology, including observational studies. (*See* Opening Brief at 8, Eiswirth Dep. 89:9.)

Dr. Eiswirth's report does not cite a single epidemiological study. Merck argues that a section of Dr. Eiswirth's report addresses "observational, epidemiological studies" (Opp. Br. 8, citing Eiswirth Report at 20), however, Dr. Eiswirth testified that the same section of his report did not refer to epidemiological studies at all, but to Merck's own retrospective reviews of cardiovascular events in the osteoarthritis trials. Merck claims that Plaintiff misconstrues the record, and that Dr Eiswirth "in his report [ ] refers to [observational studies] as 'retrospective reviews'" (Opp. Brief at 9), but the record speaks for itself:

> Q. I'm looking at your paragraph on retrospective studies on Page 20 . . . What retrospective studies are you referring to here? . . .
>
> A. Right. Basically the totality. Reicin we talked about, Konstam we talked about, Mukherjee[,] . . . Weir. . . . most of my comments say retrospective reviews. That's different than retrospective study, but you are correct; in the third line from the bottom of the paragraph I said retrospective studies, and that was probably a bad term, . . . none of these were retrospective studies of cardiovascular events.

(Eiswirth Dep. 245:3 to 246:16.)

Upon questioning by Merck's counsel, Dr. Eiswirth testified for the first time that his opinion of retrospective studies applied to "the trials that had to do with like the Kaiser Permanente database, the Medicaid trial database. Some of the stuff out of yours just looked at patients who had received prescriptions, for instance. That's what this was meant to be." (Eiswirth Dep. 293:25 to 296:15.) Dr. Eiswirth never mentioned such studies in his report.

Dr. Eiswirth simply changed his mind about what he meant by the "retrospective studies" section of his paper. Any opinion that he proffers about studies of the toxicity of Vioxx should

be limited to the few studies that are discussed in his report. His general conclusions about retrospective studies should otherwise be excluded.

### C.     Dr. Eiswirth's Opinions About The Vioxx Clinical Trials Will Not Assist The Trier Of Fact.

In its opening brief, Plaintiff argued that Dr. Eiswirth's testimony regarding the Vioxx Clinical Trials should be excluded, because he provides no opinion that will assist the trier of fact in interpreting those studies. (Opening Br. 9-10.) Merck argues in response that Dr. Eiswirth "reviewed the totality of the data" and "investigated the potential mechanisms at issue . . ." (Opp. Brief at 10.) This argument is contrary to Dr. Eiswirth's testimony: that he reviewed no data whatsoever, relied solely on the articles published by Merck, did not review study protocols, did not inquire whether Merck had data or studies that it did not publish, or, in the case of APPROVe, incorporate published corrections to the published articles. (Opening Brief at 10, Eiswirth Dep. 131-32, 59-60, 260-64, 271-72.)

Dr. Eiswirth's testimony about potential mechanisms does not render his opinion of the design, data, outcomes, or statistical methods in the Vioxx clinical trials any more informative. His testimony regarding the clinical trials should be excluded, because it does no more than recite the conclusions of articles Merck has published, and that the jury can read for themselves.

### III.     DR. EISWIRTH'S OPINION THAT THE RESULTS OF THE APPROVE STUDY REFLECT AN ANOMALY IS NOT BASED ON RELIABLE SCIENTIFIC EVIDENCE ON WHICH AN EXPERT WOULD RELY.

Dr. Eiswirth's opinion that the outcome of APPROVe is due to a "marked but unexplained drop in the cardiovascular events in the placebo group" should be excluded, along with his opinion, stated at deposition, that the rate of events for the placebo arm over the three years was not "the correct rate" and that the rate of events in the first half of the study was "the correct rate." (Eiswirth Dep. 181:10-182:16, "I think that the first 18 months event rate, not the

861178.2

overall event rate, is the correct rate for the placebo group.") Dr. Eiswirth has no basis in statistics to argue that the rate for a subperiod is more reliable than the rate for the entire period of the study, nor does he cite any.

Merck argues that this opinion is grounded in bedrock medicine and his experience as a practicing cardiologist. (Opp. Br. 13.) The overall rate of events in the placebo arm of APPROVe is not a question of "bedrock medicine" nor is it one that Dr. Eiswirth would learn through experience practicing medicine. Interpretation of the distribution of events in the placebo arm of APPROVe is an issue of biostatistics. Dr. Eiswirth is not a biostatistician, nor does he provide any opinion grounded in biostatisticians to support his view that only the overall rate is less reliable than the rate over a subperiod. This opinion should be excluded.

In its Opening Brief, Plaintiff also argued that Dr. Eiswirth had not conducted a complete review of the relevant materials before forming his opinion, including the *APPROVe Correction*, which specifically addressed the difference in rates between the first and second 18 months. (Opening Brief 11.) Merck's response suggests that Dr. Eiswirth was familiar with the *Correction*, but that he had forgotten it after six hours of deposition testimony, and then found it in his file. However, Dr. Eiswirth specifically testified that he received the *Correction* after he wrote his report (Eiswirth Dep. 216:8-17), and that he had not incorporated it into opinion – he could tell, because he had not marked his copy of the APPROVe article to conform with the Correction. (Eiswirth Dep. 261:21-25).

In conclusion, the testimony of Dr. Eiswirth should be struck pursuant to Rule 37, for failure to comply with Rule 26(a). In the alternative, Dr. Eiswirth's opinions on general causation should be excluded because he is not qualified to opine on general causation, and numerous opinions should be excluded for failure to meet the requirements of Rule 702.

- 10 -

861178.2

Respectfully submitted, this 9th day of March, 2010.

/s/ James R. Dugan
James R. Dugan, II (La. Bar No. 24785)
Douglas R. Plymale. (La. Bar No. 28409)
Stephen B. Murray, Jr. (La. Bar No. 23877)
Stephen B. Murray, Sr. (La. Bar No. 9858)
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
Kim Sullivan
General Counsel
Louisiana Department of Health and Hospitals
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

Counsel for Plaintiff

861178.2

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Plaintiff's Reply In Support of Plaintiff's Motion to Strike Expert Report Or In Alternative To Exclude Expert Testimony has this day been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced, in accordance to pretrial order No. 8B, on this the 9th day of March, 2010.

/s/ James R. Dugan

861178.2