UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX Products Liability Litigation | MDL No. 1657 |
| This Document Relates to: | SECTION L |
| STATE OF LOUISIANA, ex rel. JAMES D. CALDWELL, Attorney General, | JUDGE ELDON E. FALLON |
| Case No. 05-3700 | MAGISTRATE JUDGE KNOWLES |

**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION TO STRIKE, OR IN THE ALTERNATIVE TO EXCLUDE, THE EXPERT REPORT AND TESTIMONY OF STEVEN WIGGINS**

Merck has still never disclosed all the underlying material upon which Dr. Wiggins based his opinions, in violation of Federal Rule of Civil Procedure 26. Without complete disclosure of these materials, and in particular the essential intermediate files and their input and output, Plaintiffs' experts are unable to properly analyze and double check Dr. Wiggins work. This failure to disclose is not 'harmless', but is severely prejudicial to Plaintiffs because it completely prevents any proper, scientific analyses of Dr. Wiggins work. Therefore, Dr. Wiggins' report and testimony should be stricken for failure to comply with Federal Rule of Civil Procedure 26. Dr. Wiggins' report was also authored in large part by others, and as such merely parrots the opinions of others and is properly excludable under the standard for admissible expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). Thus, in the alternative, Dr. Wiggins' report and testimony should be excluded pursuant to Federal Rule of Evidence 702, for failure to satisfy *Daubert*.

## I.  ARGUMENT

### A.  The Expert Report and Testimony of Steven Wiggins should be stricken for failure to comply with Fed. R. Civ. P. 26(a)(2)(B).

Merck and Dr. Wiggins claim Dr. Harris' analyses contains an as of yet still unidentified and unspecified computational error, but still do not point to a single line of computer code that contains any error – not in Dr. Wiggins' report, not in Dr. Wiggins' deposition, and not in any of its *Daubert* briefs for either Dr. Harris or Dr. Wiggins.  The only supporting evidence Merck has supplied are the self-serving statements in Dr. Wiggins' report, and its argument by counsel.  Dr. Wiggins' testimony in this regard should be stricken, or in the alternative excluded from trial, because there is no methodology employed in these analyses, merely conclusory statements.

Merck has still not supplied the intermediate files that would allow for an examination of whether *Dr. Wiggins* made any error in running the program, and has not supplied his purportedly corrected program[1].  Merck is correct that Dr. Harris did understand the nature of the error purportedly in his programs, but Merck has never specified what that error is, and never produced the intermediate computer files that would allow for the specific checking or verification of that error.  Despite the very limited available material for analyses after receiving Dr. Wiggins' report and prior to Dr. Harris' deposition, Dr. Harris in fact re-ran his program and did not find any evidence of the errors Dr. Wiggins complained of.  (Harris Dep. 14:10-16:19; 18:20-19:14).  Without being able to examine Dr. Wiggins' intermediate files, there was no way to determine what the error was in Dr. Wiggins' input into the programs.  Since Dr. Wiggins claimed in his report "[f]urther evidence of this error can be demonstrated by observing Vioxx expenditures long after Vioxx was withdrawn in 2004" (Wiggins Rep. ¶96).  Dr. Harris tested the

---

[1] The starting data files (Medicaid prescription claims data produced by Plaintiffs), by definition are not 'intermediate files' which Merck tries to mislead the Court in portraying as the files which Plaintiffs claim are missing.

1

validity of this statement. Dr. Harris found there were indeed no Vioxx expenditures after September 2004 (Harris Dep. 14:10-16:19; 18:20-19:14) (attached as Exh. A) (Harris Dep. Exh. 3.)(attached as Exh. B). Dr. Harris not only supplied the intermediate and log files for every analysis in his report, he supplied them for this test[2]. *Id*. Dr. Harris' reliance materials for this test serve to illustrate for the Court the nature of these multi-step, multiple variable computer analyses. *Id*. These are not simple push-of-the button "just say, 'Do it', and you've got it one-step, one-parameter algorithms. These are complicated analyses, using multiple step computer programs to manipulate gigabytes of data. Certain command parameters are entered to run the initial computer programs, which then generate data output. The data output is then used as input data and assigned to variables or parameters and used by downstream computer programs. This process repeats with each sequential computer program and additional variable parameters can be input at each level. Computer log files record each step in the process.

Dr. Wiggins claims that there was a programming error, that he made 'minor corrections' and reran the program and got different results. What has not been disclosed is exactly what those 'minor corrections' are, and the intermediate files (input and output), which would allow Plaintiffs to determine if Dr. Wiggins made an error in either running Dr. Harris' programs or in running Dr. Wiggins' version of the programs after the 'minor corrections.' The log file clearly documents each and every step in the programs, the assignment of values to different variables, how the output from one program is used as an input to downstream programs, and the exact date-time stamp from when the

---

[2] Merck's comments on the delay of production by Plaintiffs of similar materials are not accurate: Plaintiffs never refused to produce, and indeed did produce, the complete underlying reliance materials of Dr. Harris, including the intermediary files and their input and output files; the delay in the production of these files was purely logistic in they filled 5 DVDs, had to be sent by Dr. Harris (who resides in Providence, RI) to Plaintiffs' counsel in the midst of a record snowstorm that hit the northeastern U.S. on December 19-22, 2009, and were promptly sent to Merck the same day they were received, on Christmas Eve. Merck has not moved to strike Dr. Harris', or any other of Plaintiffs' expert reports, for failure to comply with Fed. R. Civ. Pro. 26, and Merck's Opposition Brief to Plaintiffs' Motion to Strike Dr. Wiggins testimony cannot be properly converted to such a motion.

programs were run (the timestamps *do not* indicate when the file was copied to a disk as Merck would have the Court believe). More importantly, the lack of disclosure of Dr.Wiggins intermediate files and their inputs and outputs makes it impossible to determine what error Dr. Wiggins made in his analyses that caused him to state that there were such errors in Dr. Harris' work. Such nondisclosure is not allowed under the Federal Rules[3], and is highly prejudicial to Plaintiffs. Seeing an example of a log file should also illustrate for the Court the glaring nature of dates in the log files supplied by Merck where the date stamp was deleted, or dated after the date that the report had been submitted. The Court should not take simply Dr. Wiggins word for it that there is an error in Dr. Harris' program. Such conclusory testimony by an expert should be stricken or excluded from trial.

**B.    The Expert Report and Testimony of Steven Wiggins should be excluded because it is not the work of the identified expert.**

Merck fails to rebut or explain Dr. Wiggins' testimony that the CRA report was the product of a team effort, with multiple authors, including Robert Maness, Vice-President of CRA, whom Dr. Wiggins described as the "Team Leader" and the other main author of the report. Although Dr. Wiggins states in his report that "Exhibit B provides a list of the materials I have considered in connection with forming an opinion in this matter". (Wiggins Rep. ¶ 5), he admitted that he did not personally review all of these documents, the other CRA team members did. (Wiggins Dep. at pp. 47:14-50:25). All the CRA team members had access to and contributed to the draft in progress of the expert report. (Wiggins Dep. at pp. 52:11-53:18, 58:3-58:11, 58:22-59:12, 59:24, 60:17-60:23, 61:2-61:18, 62:15-62:25, 134:9-136:21)(Attached as Exhibit E to Plaintiffs original Motion).

---

[3] Merck's claim that Plaintiffs needed to request these materials in written discovery flies in the face of both the letter and the spirit of Fed. R. Civ. P. 26(a)(2)(B).

3

Due to these circumstances, it is unknown which specific contributions to the report and opinion were made by the CRA Team Members, the basis for those opinions, and what principles or methodology they used to arrive at those opinions, even though Defendant has had ample opportunity to disclose these[4]. Merck failed to identify the other experts who authored their opinion contained in Dr. Wiggins' report. This has caused Plaintiffs severe prejudice by not being able to depose the other report authors, or conduct a corporate deposition of CRA, or subpoena CRA, or adequately prepare for trial.

Merck now tries to portray the activities of the other CRA Team Members as merely "assisting in the compilation" of Dr. Wiggins' report and that these individuals were "staff members" working at his direction. These positions are belied by Dr. Wiggins' deposition testimony and invoices: Dr. Wiggins is not an employee of CRA, but is an outside hired consultant through his own company, Wiggins and Associates, and as such the CRA employees are not his "staff members." Merck hired CRA to write this report, and CRA hired Dr. Wiggins as a consultant. Wiggins and Associates billed CRA for Dr. Wiggins' time spent on this project. If Merck wanted to hire Dr. Wiggins directly as an expert it was free to do so, but it did not. Robert Maness, Vice-President of CRA and Team Leader on the expert report project, and the other co-authors of the report were all employees of CRA. *Id*. Merck never disclosed the other CRA employee co-authors of Dr. Wiggins report.Robert Maness, and the other CRA Team Members were co-authors of Dr. Wiggins' report; not assistants, not 'staff members'. *Id*.

---

[4] The sections of his report authored by others may also be excluded as hearsay, but without further discovery it is impossible identify which portions were authored by Dr. Wiggins versus which were authored by Robert Maness, the Team Leader and Vice-President of Charles River Associates, or other members of the Charles River Associates team.

## II.  CONCLUSION

For all the reasons above, and those in Plaintiff's original brief, the report and testimony of Dr. Steven Wiggins should be stricken due to noncompliance with Fed. R. Civ. P. 26(a)(2)(B), or in the alternative excluded from trial in this matter because they fail to satisfy the requirements of Rule 702 and the standard for admissible expert testimony set forth in *Daubert*.

Dated:  March 9, 2010

Respectfully submitted,

By: /s/   Douglas R. Plymale
James R. Dugan, II,
Douglas R. Plymale
Justin Bloom
Stephen B. Murray, Jr.
Stephen B. Murray, Sr.
***Murray Law Firm***
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone:  (504) 648-0180
Facsimile:  (504) 648-0181

**CO-CHAIR OF GOVERNMENT ACTIONS PLAINTIFFS' CASE MANAGEMENT COMMITTEE AND COUNSEL FOR PLAINTIFFS**

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
***Louisiana Department of Justice***
1885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
General Counsel
Kim Sullivan
***Louisiana Department of Health and Hospitals***
P.O. Box 3836

Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiffs' Reply in Support of Its Motion To Strike, Or In The Alternative To Exclude, has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U. S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance Pretrial Order No. 8B, on this the 9th day of March, 2010.

/s/ Douglas R. Plymale
Douglas R. Plymale
*Murray Law Firm*
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181