UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX <br>     Products Liability Litigation <br><br> This Document Relates to: <br><br>     STATE OF LOUISIANA, *ex rel.* JAMES D. <br>     CALDWELL, JR., Attorney General, <br><br>                       Plaintiff, <br><br>     versus <br><br>     MERCK SHARP & DOHME CORP., INC., <br><br>                       Defendant. <br><br> Case No. 05-3700. | MDL No. 1657 <br><br> SECTION L <br><br> JUDGE ELDON E. FALLON <br><br> MAGISTRATE JUDGE KNOWLES |

**OPPOSITION OF MERCK SHARP & DOHME CORP. ("MERCK")**
**TO PLAINTIFF'S MOTIONS *IN LIMINE* NOS. 2, 12 AND 17.**

1010713v.1

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

ARGUMENT ................................................................................................................................... 4

    I.    PERSONAL USE OF VIOXX BY MERCK SCIENTISTS AND EXECUTIVES IS RELEVANT TO MERCK'S KNOWLEDGE OF VIOXX'S ALLEGED CARDIOVASCULAR RISKS ......................................... 4

    II.    TESTIMONY BY MERCK EMPLOYEES ABOUT THEIR PERSONAL USE OF VIOXX WILL NOT BE MISLEADING OR UNDULY PREJUDICIAL ............................................................................................... 8

    III.    PLAINTIFF'S ADDITIONAL ARGUMENTS THAT PERSONAL USE TESTIMONY SHOULD NOT BE ADMITTED ARE WITHOUT MERIT. ........................................................................................................... 9

CONCLUSION ............................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc,*
   509 U.S. 579 (1993) .......................................................................................................... 2, 9, 10

*Gulf States Utilities Co. v. Ecodyne Corp.,*
   635 F.2d 517 (5th Cir. 1981) ...................................................................................................... 9

**Rules**

Fed. R. Evid. 401 ............................................................................................................... 2, 3, 5

Fed. R. Evid. 402 ...................................................................................................................... 2

Fed. R. Evid. 403 ............................................................................................................... 2, 3, 9

Fed. R. Evid. 702 ............................................................................................................. 2, 9, 10

Fed. R. Evid. 703 ............................................................................................................. 2, 9, 10

Fed. R. Evid. 801 ...................................................................................................................... 2

Fed. R. Evid. 802 ...................................................................................................................... 2

1010713v.1

## INTRODUCTION

Plaintiff's Motions *in Limine* Nos. 2, 12 and 17 each requests that the Court exclude testimony by Merck employees that they or their family members used Vioxx. In previous Vioxx trials, the Court's rulings on this issue have depended heavily upon the context and the purpose for which the testimony was offered. And so should the Court's ruling here. In this case, Plaintiff has alleged that Merck scientists were aware that the drug carried significant cardiovascular risks and did not have the gastrointestinal benefits claimed, and that Merck, acting through these same scientists, engaged in fraudulent concealment and misrepresentation of this information, prompting Louisiana physicians to prescribe Vioxx excessively. Testimony by Merck scientists and executives that they and their family members took Vioxx themselves is highly probative of what Merck actually knew and believed about Vioxx's safety. There is, then, no cause to exclude the challenged testimony on relevancy grounds. Nor is there reason to exclude the testimony under Federal Rule of Evidence 403. Although the Court has expressed concerns in the personal injury cases that admission of testimony about personal use might be misleading if the witness had a medical history significantly different from that of the allegedly injured plaintiff or decedent, no such concerns can be present in the circumstances of this economic damages case.

Thus Merck respectfully requests that the Court deny Plaintiff's Motions *in Limine* Nos. 2, 12 and 17. Alternatively, Merck requests that the Court reserve its rulings on these motions and assess the appropriateness of the proffered testimony at trial. As explained below, testimony about witnesses' personal use of Vioxx is crucial to defending those witnesses' credibility against attacks by counsel -- particularly suggestions that Merck employees have not been forthcoming about their knowledge of Vioxx's risks and benefits or about Merck's motives in

1

continuing to market it. In prior cases, the Court has agreed and has permitted testimony about Merck employees' use of Vioxx to rebut such attacks.

## BACKGROUND

Plaintiffs moved *in limine* to exclude testimony and evidence relating to Merck employees' use of Vioxx in each of the six personal injury trials in this MDL. In the motions adopted and incorporated by Plaintiff here, plaintiffs argued that this evidence is irrelevant, that its probative value is outweighed by its likelihood of causing prejudice, that it is hearsay, and that the proposed testimony does not meet the standards for expert opinion set forth in Federal Rules of Evidence 702 and 703 and in *Daubert v. Merrell Dow Pharmaceuticals, Inc,* 509 U.S. 579 (1993).

The Court has repeatedly acknowledged that evidence of Merck's employees' personal use of Vioxx is relevant.[1] While the Court has granted plaintiffs' motions in a number of cases,[2] its rulings have been founded on Rule 403 considerations (which are not present here) -- although even these presented "a very close call."[3]

---

[1] *See* Aug. 14, 2006 *Barnett v. Merck,* Case No. 06-485, Trial Tr., attached as Ex. A, at 2274:15-2276:18 (stating testimony about personal use of Vioxx by Merck employees is relevant but the "problem with it . . . is really a 403 question); Dec. 4, 2006 *Dedrick v. Merck,* Case No. 05-2524, Trial Tr., attached as Ex. B, at 1410:4-5 (stating of testimony about personal use of Vioxx by Merck employees, "it's a 401 clear. It's relevant. It's just a 403 issue."); *see also generally id.* at 1408:15-1410:08.

[2] The Court granted plaintiffs' pretrial motions in *Plunkett v. Merck & Co.,* Case No. 05-4046 ("*Plunkett I*" and "*Plunkett II*") (Nov. 18, 2005 *Plunkett I* Order, attached as Ex. C, at 7; Feb. 6, 2006 *Plunkett II* Order, attached as Ex. D, at 2). However, the Court also stated at a pretrial hearing in *Plunkett II* that testimony from Alise Reicin about personal use would be admitted if Dr. Reicin disclosed "(1) The reason she was taking [Vioxx] and any document to show the reason she was taking it; (2) the length of time taking it; and (3) her cardiovascular condition at the time." (*Plunkett II* Feb. 3, 2006 Hearing Tr., attached as Ex. E, at 12:9-15; *see also generally id.* at 8:25-12:15.) In *Barnett,* the court reserved its ruling. (June 28, 2006 *Barnett* Order, attached as Ex. F, at 7.) Plaintiff's pretrial motions were granted in *Smith v. Merck & Co.,* Case No. 05-4379 (Sept. 6, 2006 *Smith* Order, attached as Ex. G, at 8); *Mason v. Merck & Co.,* Case No. 06-810 (Oct. 16, 2006 *Mason* Order, attached as Ex. H, at 6); and *Dedrick* (Nov. 22, 2006 *Dedrick* Order, attached as Ex. I, at 6.) However, the Court did permit testimony about personal use in *Smith.* (*See* Sept. 21, 2006 *Smith* Trial Tr., attached as Ex. J, at 2505:20-2507:12.)

[3] *See* Nov. 9, 2006 *Mason* Trial Tr., attached as Ex. K, at 2090:5-7 (stating, in connection with testimony about personal use of Vioxx by a Merck employee that "403 is always a close call.").

In *Barnett*, the Court explained that its Rule 403 concerns arose from the fact that the witness' health profile might differ significantly from that of the plaintiff who alleged injury caused by Vioxx, potentially misleading the jury about the effects of the drug:

> I'm really concerned about personal use because, as I mentioned to you before, the way I see it, I think it's relevant. I think it's a 401 relevancy. I think that the fact that somebody took Vioxx is relevant to whether or not they feel it's safe.
>
> The problem with it, with personal use, as I see it, is really a 403 question. And in 403 provides that, although relevant, evidence may be excluded if its probative is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury. It's the area of misleading to the jury more than confusion; although, there are some seepage in confusion.
>
> . . . This is the way I see it. Although it's relevant to [Alise Reicin's testimony], I think that 403 predominates in favor of not allowing her to do it. Her age is different. Her sex is different. Her stress level is different. Her cholesterol is different. The amount of heart disease is different for her. Therefore I think it's confusing and also I think it's misleading to the jury to say, "Well, I used it; therefore, it's good."

(Aug. 14, 2006 *Barnett* Trial Tr. at 2275:1-2276:2 (ruling on personal use testimony by Alise Reicin). In other words, the Court's reservations about admitting personal use testimony turned on the fact that such testimony might inappropriately influence a jury's assessment of the dangerousness of Vioxx for a particular decedent or plaintiff, by prompting the jury to conclude that if the drug was safe and effective for the employee, it must have been safe and effective for the allegedly injured party as well. Plainly, these considerations are not present in this bench trial of economic damages, where specific medical causation is not at issue.

Regardless of its pretrial rulings, the Court has permitted testimony about personal use when it concluded that plaintiffs had attacked the credibility of a witness' claim to have believed in the safety of Vioxx. (*See, e.g.,* Feb. 15, 2006 *Plunkett II* Trial Tr., attached as Ex. L, at 2053:12-21 (allowing Alise Reicin to testify about her personal use of Vioxx because "she has now been attacked rather forcefully, or will be attacked rather forcefully, and this goes to credibility"); Sept. 21, 2006 *Smith* Trial Tr. at 2505:20-2507:12 (allowing Alise Reicin to testify

3

about her personal use of Vioxx following attacks on her credibility); Dec. 5, 2005 *Plunkett I* Trial Tr., attached as Ex. M, at 1354:11-1355:2 (Edward Scolnick testifying that he used Vioxx and did not alter his use after the VIGOR results came out).)

## ARGUMENT

I. **PERSONAL USE OF VIOXX BY MERCK SCIENTISTS AND EXECUTIVES IS RELEVANT TO MERCK'S KNOWLEDGE OF VIOXX'S ALLEGED CARDIOVASCULAR RISKS.**

Plaintiff claims that Merck, including its scientists and executives, deliberately minimized, concealed and misrepresented the alleged cardiovascular risks of Vioxx while it falsely inflated the superiority of the drug's gastrointestinal safety profile. According to Plaintiff, Merck "knew" that Vioxx was "associated with an unacceptably high risk of adverse cardiovascular and cerebrovascular events, such as heart attack and stroke," but intentionally concealed these risks and marketed the drug anyway. (Pl.'s Second Supplemental and Am. Compl. for Inj. Relief and Damages at ¶ 160; *see also id.* at ¶ 43 ("The potential for cardiovascular risk of selective COX-2 inhibitors was known to Merck long before the FDA granted market approval in May of 1999."); *id.* at ¶ 85 ("Merck's scientists understood that the difference in cardiovascular events [in the two arms of the VIGOR trial] was so great that the probability it could have been arisen by chance was miniscule, and that it almost certainly involved some sort of risk inherent to Vioxx."). At the same time, Plaintiff alleges, Merck recognized that Vioxx's gastrointestinal safety was no better than that of other non-steroidal anti-inflammatory drugs ("NSAIDs"). (*See, e.g., id.* at ¶ 181 ("The Defendant knew or should have know, even prior to market launch, that Vioxx had significant cardiovascular safety risks, and did not provide better effectiveness or GI safety than other NSAIDs."). Plaintiff's experts join in this chorus, going so far as to assert that Merck scientists knew Vioxx was killing people: " [A]s early as January of 2001, Merck scientists were aware of the excess mortality associated with

4

rofecoxib across all of their studies and that much of this excess was due to cardiovascular causes." (Expert Report of Richard A. Kronmal, attached as Ex. N, at 32.)

Testimony that these same Merck scientists and executives took Vioxx themselves, or knew that their family members were doing so, unquestionably bears on what they actually knew about Vioxx's cardiovascular and gastrointestinal safety profiles. The fact that scientists intimately familiar with results of the Vioxx clinical trials, as well as the biological mechanism of the drug, took Vioxx is powerful evidence that Merck's scientists believed in the safety and efficacy of the drug and that Merck did not did not engage in any alleged fraudulent concealment. It strains credulity to assume that Merck scientists "were aware" that Vioxx was killing people, yet took the drug themselves. Personal use testimony therefore meets the relevancy requirements under Rule 401.[4]

Nevertheless, the briefs adopted by Plaintiff argue that personal use testimony is irrelevant to Merck's knowledge of Vioxx's risks and gastrointestinal benefits. They assert that individual witnesses cannot be taken as representative of what Merck scientists and executives knew as a whole:

> It is certainly possible that an individual employee, whose relative was on Vioxx, did not know of Vioxx's substantial health risks, while others in the company had full knowledge of the dangers of Vioxx. . . . [T]estimony or other statements that Merck employees or their families ingested Vioxx does not impact and is not relevant on the issue of whether the Merck corporate entity, through its officers, directors and/or medical personnel had knowledge of the drug's cardiovascular risks when it placed its product in the stream of commerce for individuals.

(*Plunkett I,* Pl's Mot. in *Limine* to Exclude Evidence that Merck Employees or Family Members of Merck Employees Took Vioxx, at 3.)

---

[4] *See* Fed. R. Evid. 401 (relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

5

This argument is patently disingenuous. Merck employees who would testify that they or their family members used Vioxx are the very scientists and executives who were centrally involved in the development, testing and labeling of Vioxx. They include:

- Raymond Gilmartin, former Chief Executive Officer of Merck & Co., Inc.;

- Edward Scolnick, former President of Merck Research Laboratories;

- David Anstice, Merck President for Human Health and former head of marketing and United States sales at Merck;

- Alise Reicin, Vice President of Clinical Research at Merck Research Laboratories, who was extensively involved in the development and testing of Vioxx;

- Alan Nies, former Senior Vice President of Clinical Research at Merck Research Laboratories, who headed the Vioxx development program;

- Louis Sherwood, former Senior Vice President of Medical and Scientific Affairs at Merck;

- Nancy Santanello, Executive Director of Epidemiology at Merck;

- Eliav Barr, a cardiologist and researcher at Merck Research Laboratories who worked on cardiovascular issues in the testing of Vioxx;

- Douglas Watson, a Director of Epidemiology at Merck who worked on the Vioxx clinical trials and post-marketing surveillance;

- Fran Kaiser, Executive Medical Director at Merck and former Merck Regional Director for the South Central division;

- Kerry Edwards, Merck Regional Director and former Associate Regional Director for the Southeast Division.[5]

It is these very employees' knowledge about Vioxx that Plaintiff intends to impute to Merck, the corporate entity. Unless Plaintiff is willing to stipulate that none of these individuals had knowledge of Vioxx's cardiovascular risks or alleged lack of gastrointestinal safety benefits,

---

[5] If necessary, Merck will make offers of proof concerning the personal use of Vioxx by these individuals.

Plaintiff cannot reasonably contend that their use of Vioxx is irrelevant to the issue of Merck's knowledge.

The briefs adopted by Plaintiff also argue that personal use testimony is irrelevant to the issue of Merck's knowledge about Vioxx because the employees in question might have been fully aware of Vioxx's alleged risks, but simply decided to assume those risks. (*Plunkett I,* Pl's Mot. in *Limine* to Exclude Evidence that Merck Employees or Family Members of Merck Employees Took Vioxx, at 3.) Plaintiff suggests that "[i]t might be that Merck executives, having knowledge of the drugs [sic] prothrombotic nature, would have also taken a blood thinning agent to minimize the risk of a thrombotic event. Or the individual had few risk factors for cardiovascular disease that would elevate the risk of an adverse event." (*Dedrick,* Pl.'s Mot. *in Limine* to Preclude Test. by Merck Employees Regarding their Personal Use of Vioxx, at 4.) These arguments are misplaced here, because Plaintiff alleges that Merck not only "knew" Vioxx carried cardiovascular risks but also "knew" its gastrointestinal safety was not superior to that of traditional NSAIDs. It would make no sense under any risk-benefit calculation for a Merck employee to take Vioxx knowing that it had no advantage over other NSAIDs yet posed greater risks.

Moreover, even if these unfounded speculations about why Merck employees took Vioxx were true, the witnesses' testimony about their personal use would still be relevant. The testimony would be probative of Plaintiff's claim that, had Vioxx's allegedly concealed risks or lack of gastrointestinal benefits been known, doctors would have written far fewer prescriptions. In providing the above scenarios, Plaintiff admits that patients fully aware of the alleged cardiovascular risks might still elect to take Vioxx for any number of reasons. This admission undercuts the very premise of Plaintiff's claim that it can calculate the costs to the State and/or

individual Louisiana citizens of Merck's alleged misrepresentations of the risks associated with Vioxx.

Finally, as the Court is aware, counsel for plaintiffs in the Vioxx personal injury cases liberally attacked the credibility and candor of Merck employees who testified that they and their colleagues believed in the safety and benefits of Vioxx, including its cardiovascular safety. The Court observed, in explaining why it admitted testimony about personal use of Vioxx from one Merck employee: "I thought [plaintiff's counsel] made her look like a cannibal, or at least they said she was a cannibal, in effect, and I felt that was a definite personal attack." (Nov. 9, 2006 *Mason* Trial Tr. at 2090:14-17; *see generally id.* at 2090:14-25.) More broadly, Plaintiff asserts that Merck, as personified by the individuals listed above, was simply indifferent to the health and safety of the people who took Vioxx. Merck is entitled to defend the credibility of its witnesses, and to counter assertions about the motives of Merck itself, by demonstrating the extent of its employees' belief in Vioxx's safety and value through testimony that they or their family members used the drug. Therefore, at a minimum, the Court should reserve its ruling on Plaintiff's motions for trial, when it can assess whether personal use testimony is justified by attacks on a given witness' credibility or motives.

## II. TESTIMONY BY MERCK EMPLOYEES ABOUT THEIR PERSONAL USE OF VIOXX WILL NOT BE MISLEADING OR UNDULY PREJUDICIAL.

As explained above, the Court has excluded personal use testimony in some Vioxx trials out of concern that jurors would be misled into believing Vioxx was necessarily safe and effective for a given plaintiff or decedent based on testimony by a Merck employee with a very different medical profile. And the Court has suggested that admission of testimony about Vioxx use by a Merck employee would require the exploration of the employee's medical history and

8

experience with their physicians.  (*See* Nov. 09, 2006 *Mason* Trial Tr. at 2091:22-2092:5.) These concerns are not germane here.

In this bench trial of Plaintiff's economic damages claims, unlike the personal injury cases, medical causation is not an issue.  Merck does not seek to offer testimony about its employees' personal use of Vioxx as evidence of the drug's safety profile in general, much less of its safety for a particular plaintiff or decedent.  Thus there is no need to evaluate a witness' use of Vioxx in the context of her or his medical history.  Rather, the core of this case is Plaintiff's allegation that Merck, acting through its employees, was engaged in fraudulent concealment and misrepresentation and that, had Louisiana physicians known what Merck knew, they would not have prescribed the drug.  It would be prejudicial to Merck *not* to permit testimony by its employees demonstrating that their personal behavior with regard to Vioxx was fully consonant with what they, and Merck, represented publicly.

The briefs adopted by Plaintiff also urge the Court to exclude testimony about Merck employees' personal use of Vioxx under Rule 403 on the grounds that it will be unduly prejudicial and "encourage the jury to overlook the scientific evidence." (*Dedrick v. Merck,* Pl.'s Mot. *in Limine* to Preclude Test. by Merck Employees Regarding Their Personal Use of Vioxx, at 7.)  These arguments are obviously not relevant to a bench trial.  *See Gulf States Utilities Co. v. Ecodyne Corp.,* 635 F.2d 517, 519 (5th Cir. 1981) (excluding relevant evidence on the basis of "unfair prejudice" at a bench trial is a "useless procedure" because a trial judge capable of applying Rule 403 is also able to identify improper inferences and exclude them from his or her mind in reaching a decision).

9

### III. PLAINTIFF'S ADDITIONAL ARGUMENTS THAT PERSONAL USE TESTIMONY SHOULD NOT BE ADMITTED ARE WITHOUT MERIT.

Plaintiffs have additionally argued that personal use testimony by Merck employees must be excluded under Federal Rules of Evidence 702 and 703 because "Merck has made no attempt to meet the rigid scientific requirements of *Daubert* and show that such evidence, if any, is scientifically reliable." (*Mason,* Pl.'s Mot. to Exclude or, in the Alternative, Mot. *in Limine* Concerning Evidence or Argument that Merck Employees, Former Employees, or their Family Members Took Vioxx Prior to the Drug's Withdrawal from the Market, at 5.) This argument is wholly without merit as Merck does not offer personal use testimony as expert scientific opinion, and therefore Rules 702 and 703 and *Daubert* do not apply. *See* Fed. R. Evid. 702 (discussing standards for admission of expert testimony about "scientific, technical or other specialized knowledge"); Fed. R. Evid. 703 (discussing permissible bases of opinion testimony by experts); *Daubert,* 509 U.S. at 585 (stating the Court granted certiorari to resolve divisions between courts regarding the admission of expert testimony).

The claim that testimony about personal use of Vioxx by Merck employees should be ruled inadmissible as hearsay is equally meritless. Clearly an employee's testimony about her or his *own* use is based on personal knowledge, and the Court can assess at trial if a witness has personal knowledge of a family member's use.

## CONCLUSION

For the reasons stated above, Merck respectfully requests that the Court deny Plaintiff's Motions *in Limine* Nos. 2, 12 and 17 or, in the alternative, reserve ruling on the motions until the testimony is presented at trial.

Dated: March 12, 2010                                    Respectfully submitted,

*/s/Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
  WITTMANN LLC
546 Carondelet Street
New Orleans, LA 70130
Phone: (504) 581-3200
Fax:    (504) 581-3361

Defendants' Liaison Counsel

11

1010713v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition of Merck Sharp & Dohme Corp. ("Merck") to Plaintiff's Motions *In Limine* Nos. 2, 12 and 17 has been served on Liaison Counsel by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Plaintiff, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 12th day of March, 2010.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1010713v.1