UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 |
| This Document Relates To: | SECTION L |
| STATE OF LOUISIANA, *ex rel.*, JAMES D. CALDWELL, JR., Attorney General, Plaintiffs | JUDGE ELDON E. FALLON |
| | MAGISTRATE JUDGE KNOWLES |
| v. | |
| MERCK SHARP & DOHME CORP., Defendants | Case No. 05-3700 |

PLAINTIFF'S OPPOSITION TO MOTION *IN LIMINE* NO. 3
TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING UNRELATED
<u>MARKETING AND PROMOTIONAL MATERIALS</u>

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.     MERCK DOCUMENTS DEMONSTRATE THAT LDHH PERSONNEL, P&T COMMITTEE MEMBERS, DUR BOARD MEMBERS AND PROVIDER SYNERGIES WERE ALL TARGETED TO RECEIVE MERCK MARKETING MATERIALS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    EVEN ASSUMING LDHH WAS NEVER DIRECTLY EXPOSED TO MERCK'S MARKETING MATERIALS, THOSE MATERIALS ARE STILL RELEVANT TO THE CLAIMS ASSERTED HEREIN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    III.   ALL OF THE MATERIALS SOUGHT TO BE EXCLUDED ARE RELEVANT. . . . . . . . . . . . 5

          A.  Internal Marketing Plans. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          B.  CV card and "Dodge Ball" instructions to sales representatives. . . . . . . . . . . 6

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF AUTHORITIES

PAGE

*Monroe Medical Clinic v. Hospital Corp. of Am.*,
　　622 So. 2d 760, 779 (La. App. 2d Cir.), writ denied, 629 So. 2d 1135 (La. 1993). . . . . . . 4

*Omnitech Int'l, Inc. v. Clorox Co.*,
　　11 F.3d 1316, 1332 (5th Cir.), cert. denied, 115 S.Ct. 71 (1994). . . . . . . . . . . . . . . . . . . 4

*Turner v. Purina Mills, Inc.*,
　　989 F.2d 1419, 1422 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


**STATE STATUTES AND REGULATIONS**

LSA-C.C. art. 2545. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LSA-R.S. 51:1408. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

MAY IT PLEASE THE COURT:

Merck seeks to exclude essentially all of the evidence that establishes that Merck engaged in a unlawful business practice in its marketing of Vioxx.  Defendant's entire argument is premised on a blatant falsehood: that supposedly there is "no evidence that P&T Committee members were exposed to Vioxx advertising or Vioxx marketing materials…" and "no evidence that any relevant decision makers ever saw or were influenced by any of the marketing-related information Plaintiff will seek to admit." (Defendants' Memorandum in Support of Motion in Limine No. 3 "Merck Memo").  Merck contends that is undisputed that LDHH personnel, members of the P&T Committee and Provider Synergies "never received any "marketing or promotion materials from Merck." (Merck Memo, p. 1).  Presumably the attorneys who authored this Motion in Limine were not among the attorneys present at the depositions of Merck personnel Mary Ogle, Warren Lambert, Stephen Shearer, Kerry Edwards, or Fran Kaiser (to name but a few), all of whom discussed providing Merck-approved marketing messages to P&T Committee members, LDHH personnel, and/or Provider Synergies.  Apparently, the authors of Merck's Motion never saw any of the many, many documents produced at these depositions which outlined Merck's plan to have Merck sales personnel target P&T Committee members to provide them with, "the latest and greatest materials on Merck products" including Vioxx.  They must never have seen the documents that specifically instruct the Louisiana sales force who targeted P&T Committee members to use such documents as the CV card, VIGOR materials and Merck "CV obstacle handling" techniques in their sales calls on doctors.  The authors of the memo must have been unaware of the call notes which demonstrate the extensive Merck sales representative calls on members of the P&T Committee both before and after formation

of the P&T Committee.[1] The authors of Merck's Motion must never have seen these materials, because if they had, their suggestion that there is no evidence that decision makers at LDHH were exposed to Merck marketing materials would be laughable, if not sanctionable. Suffice it to say, there is abundant evidence, completely ignored in Merck's memo, that demonstrates that key decision makers at LDHH were not only exposed to Merck's marketing materials, but were affirmatively targeted to receive Merck's pro-Vioxx message.

### I. MERCK DOCUMENTS DEMONSTRATE THAT LDHH PERSONNEL, P&T COMMITTEE MEMBERS, DUR BOARD MEMBERS AND PROVIDER SYNERGIES WERE ALL TARGETED TO RECEIVE MERCK MARKETING MATERIALS.

Merck's motion assertions that no decision-makers at LDHH received Merck marketing materials rely heavily on reference to Merck's Motion for Summary Judgment. By way of response, Plaintiff incorporates by reference Plaintiff's Response to Merck's Motions for Summary Judgment, Response to Statement of Undisputed Facts, and Plaintiff's Statement of Contested Facts. As Plaintiff's Statement of Contested Facts amply demonstrates, Merck directly targeted key decision makers at LDHH with its national pro-Vioxx sales message. P&T Committee chair Dr. Vincent Culotta has provided a sworn affidavit that he was detailed with Merck's pro-Vioxx message on multiple occasions. P&T member Dr. Brobson Lutz has done the same.

That these P&T Committee members were so contacted is hardly surprising, since Merck's internal documents reveal a comprehensive plan to target P&T Committee members with Merck's

---

[1] The authors' ignorance of this last fact is perhaps understandable, as such knowledge could only be gleaned from Merck sales representatives' call notes for P&T committee members, which, in spite of repeated requests from Plaintiff, were not produced until mid-January, the end of the discovery period

-2-

pro-Vioxx message. A 2002 Merck "Customer Profile for the State of Louisiana" (attached hereto as Exhibit 1) described "Merck Strategy & Tactics":

* \* Continue to work with the State of Louisiana and the DHH through Provider Synergies to ensure unrestricted access to Merck products.
* \* Maximize share for Merck products on the PDL.
* \* Continue to develop product advocates with Medicaid P&T and DUR members.

Merck National Account Executive Mary Ogle "regularly call[ed] on the chief of P&T and Pharmacy Director... to ensure that they fully understand the value that [Merck's] product portfolio provides to the appropriate patient populations vs. the competition." (May 28, 2005 Memo from Mary Ogle to Marc Dervishian re Push-Through and Pull-Through tactical plans for LA Medicaid, attached hereto as Exhibit 2). Regional Medical Direct Fran Kaiser met with members of the DUR Board to deliver Merck's clinical message re Vioxx. (See MRK-MEH0016700-701, attached hereto as Exhibit 3.) Merck's office-based sales force targeted P&T Committee members to deliver Merck's clinical message about Vioxx. (See MRK-EBES0031269-70, "The office-based team should contact P&T Committee Member to make sure that they are fully aware of the benefits and features of those products up for review," attached hereto as Exhibit 4; MRK-AGLAAD0010034, "have our representatives touch base with member of the [P&T] Committee to ensure that they have the latest and greatest information on... Vioxx," attached hereto as Exhibit 5; and MRK-AGLAAD0020750-52, "messaging with targeted P&T members prior to and immediately following P&T Meetings"). Additionally, Merck's sales force regularly called on Provider Synergies to deliver its pro-Vioxx clinical message to LDHH's formulary consultant, attached hereto as Exhibit 6. (See Merck Customer Profile for Provider Synergies, L.L.C., MRK-AGLAB0000399-400, attached hereto as

Exhibit 7 and Excerpts of the Deposition of Kerry Edwards, 81:4-82:5, attached hereto as Exhibit 8).

The record belies the the contention central to Merck's motion to exclude evidence of marketing materials. Key decision makers at LDHH did receive Merck's marketing messages regarding Vioxx. Indeed, Merck had in place a comprehensive plan to ensure that they did.

**II.   EVEN ASSUMING LDHH WAS NEVER DIRECTLY EXPOSED TO MERCK'S MARKETING MATERIALS, THOSE MATERIALS ARE STILL RELEVANT TO THE CLAIMS ASSERTED HEREIN.**

Even if Merck had not engaged in a comprehensive plan to deliver its marketing message to key decision makers at LDHH, evidence of Merck's marketing would nevertheless be probative of issues pertinent to LSA-R.S. 51:1408 restitution and LSA-C.C. art. 2545 redhibition claims.

Evidence of Merck's marketing scheme is necessary to demonstrate that Merck engaged in an unfair trade practice. To recover on this claim, the State must prove some element of fraud, misrepresentation, deception or other unethical conduct by defendants, although the State need not demonstrate actual reliance (See Opposition to Motion for Summary Judgment). A trade practice is unfair only when it offends established public policy and is immoral, unethical, oppressive or unscrupulous. *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir.), cert. denied, 115 S.Ct. 71 (1994); *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993); *Monroe Medical Clinic v. Hospital Corp. of Am.*, 622 So. 2d 760, 779 (La. App. 2d Cir.), writ denied, 629 So. 2d 1135 (La. 1993). Evidence that Merck engaged in a nation-wide scheme to misrepresent the risk/benefit profile of Vioxx is highly probative of the question of whether Merck has engaged in an unlawful trade practice, and in particular, the intent behind its non-disclosure of critical facts about Vioxx.

Similarly, a key determination under redhibition is whether the defendant was in bad faith in not disclosing the redhibitory defect. See LSA-C.C. art. 2545. Article 2545 calls on the Court to determine whether the defendant concealed a known redhibitory defect and/or represented its product as having properties which it knew it did not possess.[2] Evidence of Merck's marketing scheme bears directly on the issue of whether Merck was in bad faith for purposes of redhibition.

### III. ALL OF THE MATERIALS SOUGHT TO BE EXCLUDED ARE RELEVANT.

Merck has suggested that certain specific marketing materials are not relevant, because there is no evidence that they relate to marketing efforts within the State of Louisiana, or that the were utilized by sales representatives in Louisiana. The record demonstrates that these materials, which address a nation-wide marketing program for Vioxx, were in fact utilized in Louisiana.

#### A. Internal Marketing Plans

Merck argues that this Court should not admit internal marketing plans, because there is no evidence that anyone from Louisiana relied "ever saw, much less relied on" these materials. (Merck memorandum, p. 8). Of course no one from Louisiana ever saw Merck's internal documents. They are internal documents. However, these internal documents outline marketing plans implemented throughout the country, including Louisiana. There is ample evidence that Merck's internal documents regarding marketing plans relate not only to marketing efforts within the state of Louisiana, but also to marketing targeted at LDHH P&T Committee members. A "National Cross-Functional Team Meeting for Vioxx" attended by Warren Lambert, the sales manager

---

[2] Plaintiff notes that article 2545 creates a presumption that a manufacturer such as Merck is aware of the redhibitory defect. However, to the extent that Merck argues that presumption is rebuttable, evidence of Merck's marketing, which is probative of Merck's state of mind, is probative of this issue

responsible for directing sales call on P&T members repeatedly stressed the need for "National consistency around messaging, stated that "core messages will remain focused on EFFICACY and safety," including "GI safety" and instructed Merck sales teams how to "handle obstacles" surrounding CV issues. (See "National Cross-Function Team Meeting for Vioxx; MRK-EBES0000190-207, attached hereto as Exhibit 9.)  A January 24, 2002 memorandum from sales manager Warren Lambert instructed sales representatives calling on LDHH P&T Committee members to use marketing materials prepared by corporate headquarters in Upper Gwynedd. (MRK-EBES0031269-MRK-EBES0031270, Exhibit 4).  Vioxx tactical plans distributed to sales representatives who called on P&T Committee members instructed the sales representatives to use marketing materials such as the VIGOR study materials and CV cards created by Merck's national marketing strategists. (See "2001 Tactical Plan for Vioxx ARKLATEX Region"; MRK-EBES0000023-28, attached hereto as Exhibit 10; and "2002 Tactical Plan for Vioxx ARKLATEX Region," MRK-EBE000001-11, attached hereto as Exhibit 11.)  Moreover, Warren Lambert, the business manager who directed sales representatives to call on P&T members confirmed that the Vioxx product messages delivered by sales representatives to Medicaid P&T committee members were all developed by Merck national headquarters. (Excerpts of Deposition of Warren Lambert Depo, 68:15- 71:19, attached hereto as Exhibit 12.)

### B. CV CARD AND "DODGE BALL" INSTRUCTIONS TO SALES REPRESENTATIVES.

Merck also suggests that there is no evidence that particular marketing materials such as the CV card and "dodgeball" memoranda were ever utilized by sales representatives who called on decision makers at LDHH.  However, a 2001 tactical plan specifically instructs sales representatives

who were assigned to call on LDHH P&T Committee members to use the CV card.  (Exhibit 11).[3]

The National Cross-Functional team memo (Exhibit 9) instructed sales personnel to use materials regarding "handling obstacles" in detailing doctors.  The "dodgeball" memoranda are national directive on handling CV obstacles.  Such materials formed the bases of the messages that the sales representatives who called on P&T Committee members delivered, and as such are relevant.

## CONCLUSION

Contrary to Merck's assertions, marketing materials most definitely were directed at and relied upon by P&T committee members.  There is ample evidence that these materials, which were part of a nationwide marketing campaign for Vioxx, were used in Louisiana.  Moreover, evidence of such materials is relevant to issues of intent for purposes of fraud, restitution and the redhibition bad faith articles.  Merck's Motion in Limine to exclude these materials should be denied.

Respectfully submitted, this 12th day of March, 2010.

/s/ Stephen B. Murray, Jr.
James R. Dugan, II (La. Bar No. 24785)
Douglas R. Plymale. (La. Bar No. 28409)
Stephen B. Murray, Jr. (La. Bar No. 23877)
Stephen B. Murray, Sr. (La. Bar No. 9858)
Justin Bloom
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 525-8100

---

[3] Merck may argue that the CV card was no longer in use by the time the P&T Committee was formed, although there is evidence to suggest it was still in use well into 2002.  Regardless of whether it was in use when the P&T Committee was in existence, the record shows that sales representatives were calling on doctors who would become members of the P&T Committee as early as 1999 (See Spreadsheet indicating Merck Sales Representatives' contact with Louisiana Medicaid P&T Committee Members and Affidavit of David Franco, attached hereto as Exhibit 13).  Presumably these representatives used the CV card in their calls on these doctors, as they were instructed to do.

James D. Caldwell, Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020

Francisco H. Perez
Kim Sullivan
General Counsel
Louisiana Department of Health and Hospitals
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188

COUNSEL FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Plaintiff's Opposition to Motion *in Limine* No. 3 to Exclude Evidence or Argument Regarding Unrelated Marketing and Promotional Materials has this day been served on Liaison Counsel, Phillip A. Wittmann and Russ M. Herman, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance to Pretrial Order No. 8B, on this the 12th day of March, 2010.

/s/ Stephen B. Murray, Jr.
Counsel for Plaintiff