UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 |
| This Document Relates To: | SECTION L |
| STATE OF LOUISIANA, *ex rel.*, JAMES D. CALDWELL, JR., Attorney General, | JUDGE ELDON E. FALLON |
| Plaintiffs, | MAGISTRATE JUDGE KNOWLES |
| v. | |
| MERCK SHARP & DOHME CORP., | Case No. 05-3700 |
| Defendants. | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 11 TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING "ALL CAUSE" MORTALITY DATA FROM ALZHEIMER'S DISEASE CLINICAL TRIALS**

862045.1

I.  **THE COURT HAS PREVIOUSLY DENIED THIS MOTION IN LIMINE**

The Court previously denied Merck's motion to exclude evidence of all cause mortality in the Alzheimer's clinical trials in the *Irvin v. Merck* case. (Order, 11/20/05 at 4 ¶ 6 [Declaration of Donald C. Arbitblit (hereafter "DCA Decl.") Ex. 1].) Plaintiffs incorporate by reference the memorandum in opposition to the MIL regarding such evidence filed November 11, 2005. ([DCA Decl. Ex. 2].)

II. **PLAINTIFF'S EXPERTS EMPLOYED A RELIABLE METHODOLOGY**

In *In re Vioxx Products Liability Litigation*, 401 F. Supp. 2d 565 (E.D. La. 2005), the Court held that plaintiffs' and defendants' experts both employed reasonable methodologies by evaluating data from the same studies. The focus of the analysis under *Daubert* is on methodology, rather than conclusions. Thus, even though plaintiffs' and defendants' experts reached "different conclusions," both employed reasonable and proper methodologies. *Id.* at 596. The same is true with respect to the data from the Alzheimer's trials.

Defendant's memorandum in support of the motion is misleading in that it emphasizes the "On-Drug" analysis of cardiovascular (CV) events in the Alzheimer's trials, while failing to acknowledge that the pre-specified "Intention-To-Treat" (ITT) analysis showed an opposite result. Thus, Defendant's argument that the Alzheimer's studies did not show a statistically-significant difference in the rates of adverse cardiovascular events between Vioxx and placebo is contradicted by the ITT analysis published in *The Journal of American Medical Association* 2008, by Bruce Psaty, M.D., a professor who is not retained by any party to the litigation, in conjunction with Plaintiffs' expert, Richard Kronmal, Ph.D. That analysis found a statistically-significant excess risk of mortality due to heart disease, a cardiovascular endpoint (relative risk = 3.84, $p<0.005$), as well as a significant excess of all-cause mortality. (Psaty, B., et al., 2008, previously marked as Kaiser Ex. 22 [DCA Decl. Ex. 3].) Contrary to Merck's argument, this

data supports Plaintiff's allegations that Merck had, and failed to disclose relevant, adverse information concerning cardiovascular mortality in its randomized clinical trials (RCTs).[1]

Defendant also relies on a Merck-sponsored, incomplete data presentation in an article authored by Thal, *et al.*, to support the claim that there was no increased risk for serious vascular events in Alzheimer's Protocol 078. However, this article, which was not published until after Vioxx was off the market, presented but failed to statistically analyze the off-drug data showing seventeen deaths in the Vioxx group versus five deaths in the placebo group, including seven versus zero MI/Cardiac Arrest deaths, which were necessarily within the scope of the ITT analysis. (Thal, L., et al., 2005 at 7 [DCA Decl. Ex. 4].)

Similarly, Merck offers misleading cites to testimony of Plaintiff's experts regarding the On-Drug data, while omitting their opinions concerning the ITT analysis. Thus, Dr. McGregor's opinion, that there was a statistically-significant excess risk of both all-cause mortality and cardiovascular mortality, does not appear in Defendant's memorandum. (McGregor Rep. at 4, ¶ E [DCA Decl. Ex. 6].) Dr. Kronmal's analysis of heart disease mortality, which was published in *JAMA*, also appears at page 28 of his expert report, showing the same relative risk of 3.84, $p<0.005$, as in the peer-reviewed article, but Merck's memorandum refers only to all-cause mortality and omits reference to the significant excess in the cardiovascular component of the overall mortality endpoint.

Finally, after Merck submitted the Clinical Study Report for Protocol 078 in November 2003, the FDA medical reviewer responded to that data by reaching the conclusion that the all-cause mortality and cardiovascular information should appear in an updated Vioxx label.

---

[1] As stated in Dr. Kronmal's report: "This pattern of basing statements about the safety of rofecoxib on the on-drug data and not mentioning the full ITT results is repeated in all of Merck's presentations and publications." (Kronmal Rep. at 33 [DCA Decl. Ex. 5].)

862045.1                                       2

(Villalba, FDA medical officer review at 3, January 28, 2004 [DCA Decl. Ex. 7].)  Thus, the data that Merck seeks to exclude was recommended for labeling after it became known to FDA.

### III. THE COURT HAS PREVIOUSLY DENIED A MOTION TO EXCLUDE EVIDENCE OF UNETHICAL CONDUCT ASSOCIATED WITH CLINICAL TRIALS

Dr. Kronmal's report, and the published *JAMA* article by Psaty and Kronmal, criticize Merck's conduct in allowing the 078 Alzheimer's trial to continue for two years, after the 091 trial and 078 trial had both shown statistically significant excess risk of all-cause mentality.  This evidence is relevant to a pattern and practice of disregard for patients, character, impeachment, motive, and state of mind.  The Court previously denied Merck's MIL seeking to exclude evidence of unethical conduct associated with clinical trials.  (*Irvin v. Merck* Order, *supra*, 11/20/05, ¶ 10).  The same ruling should apply in this case, providing a further basis to deny Merck's MIL seeking exclusion of the all-cause mortality data.

### IV. CONCLUSION

The evidence of all-cause mortality and cardiovascular mortality has substantial probative value, sufficient to warrant publication in *JAMA*, which more than outweighs any possible "delay" engendered by the need to introduce such important testimony.

Therefore, the motion should be denied.

Respectfully submitted, this 12th day of March, 2010.

/s/ James R. Dugan
James R. Dugan, II (La. Bar No. 24785)
Douglas R. Plymale. (La. Bar No. 28409)
Stephen B. Murray, Jr. (La. Bar No. 23877)
Stephen B. Murray, Sr. (La. Bar No. 9858)
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096


Francisco H. Perez
Kim Sullivan
General Counsel
Louisiana Department of Health and Hospitals
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the above and foregoing Memorandum In Opposition To Defendant's Motion In Limine No. 11 To Exclude Evidence Or Argument regarding "All Cause" Mortality Data From Alzheimer's Disease Clinical Trials has this day been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced, in accordance to pretrial order No. 8B, on this the 12th day of March, 2010.

                /s/ James R. Dugan