*EXHIBIT 2*

Confidential - Subject to Protective Order

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
---oOo---

In re: VIOXX PRODUCTS           )
LIABILITY LITIGATION            ) MDL No. 1657
                                )
This Document Relates To:       ) SECTION L
                                )
    STATE OF LOUISIANA, ex rel. )
    JAMES D. CALDWELL, JR.      )
    Attorney General,           ) JUDGE ELDON E. FALLON
                                )
              Plaintiffs,       ) MAGISTRATE JUDGE
                                ) KNOWLES
         vs.                    )
                                )
    MERCK SHARP & DOHME CORP.,  ) Case No. 05-3700
                                )
              Defendants.       )
_____)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
THURSDAY, JANUARY 21, 2010

   Deposition of DAVID A. KESSLER, M.D., held at Lieff, Cabraser, Heimann & Bernstein, LLP, 275 Battery Street, 29th Floor, San Francisco, California, commencing at approximately 7:03 a.m., before KIMBERLEE SCHROEDER, CCRR, CSR No. 11414.

Confidential - Subject to Protective Order

Page 132

1  scientists at FDA were aware when it approved the Vioxx
2  New Drug Application that there had not been a
3  cardiovascular outcomes study done on Vioxx as of that
4  point; correct?
5          MR. ARBITBLIT:  Object to form.
6          THE WITNESS:  I think that would be a fair
7  statement, sir, yes.
8          MR. ISMAIL:  Q.  Do you disagree with the
9  FDA's determination in May of 1999 that adequate
10 information had been presented to demonstrate that Vioxx
11 is safe and effective for use as recommended in the
12 labeling?
13      A.   Yes.
14      Q.   You do disagree with FDA?
15      A.   After review of the medical review officer's
16 summary, I disagree, yes.
17      Q.   Had you been Dr. Villalba's boss at the time,
18 you would have thought the approval of Vioxx in 1999 was
19 a mistake, based on information that had been available
20 at the time?
21      A.   I think she got the wrong -- in reviewing
22 that, her review, I believe she got the wrong -- I think
23 she confused the standard and what the company -- the
24 burden of the company.
25           Again, I am not here to offer an expert

Confidential - Subject to Protective Order

Page 133

1  opinion about FDA.  I'm certainly aware of FDA's
2  conduct.  But I mean, I've looked at the company's
3  conduct.  I've not looked at FDA's opinion.  But I am
4  concerned, when I read the medical review officer
5  report, she -- I think she misses the burden.
6       Q.    In what way do you believe that Dr. Villalba
7  made a mistake with regard to the burden in approving a
8  New Drug Application?
9       A.    I would want to -- if you could give me her
10 report, I would want to quote her report.
11      Q.    Why don't you tell me whatever it is you
12 looked at with regard to Dr. Villalba?
13      A.    Yes.  Medical summary report.
14            And these are not indexed according to -- let
15 me just go through -- sorry about this.  This is not in
16 any -- here it is.
17            So on page, I guess MRK, last four numbers 547
18 -- this is Food and Drug Administration Division of
19 Anti-inflammatory -- this is the medical officer review,
20 signed by Dr. Villalba, and then the acting director of
21 the division.
22            My concern is that Dr. Villalba says, "With
23 the available data, it is impossible to answer with
24 complete certainty whether the risk of cardiovascular
25 and thromboembolic events is increased in patients on

Confidential - Subject to Protective Order

Page 134

1  Vioxx.  A larger database will be needed to answer this
2  and other safety comparison questions.  It is impossible
3  to answer with complete certainty whether the risk is
4  increased."
5           That misses the responsibility under the Act
6  because the burden is not to establish whether something
7  is -- with complete certainty that there is an increased
8  risk.  It is to establish that -- the obverse,
9  that the drug is safe.  And her conclusion is, I can't
10 tell you with complete certainty that it is increased.
11 And that gives me concerns.
12          And I think that was a -- she misjudged the
13 burden of proof that's necessary under the Act,
14 certainly on the safety side.
15     Q.   Certainly, all drugs have side effects; right?
16          MR. ARBITBLIT:  Object to form.
17          MR. ISMAIL:  Q.  Potential side effects.
18     A.   Yes.  That's fair.
19     Q.   There's no drug that's a hundred percent safe;
20 right?
21          MR. ARBITBLIT:  Object to form.
22          THE WITNESS:  Safety is a risk/benefit
23 equation.  The risks have to be acceptable in light of
24 the benefits.
25          MR. ISMAIL:  Q.  Do you think you've reviewed