UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 |
| This Document Relates To: | SECTION L |
| STATE OF LOUISIANA, *ex rel.*, JAMES D. CALDWELL, JR., Attorney General, | JUDGE ELDON E. FALLON |
| Plaintiffs, | MAGISTRATE JUDGE KNOWLES |
| v. | |
| MERCK SHARP & DOHME CORP., | Case No. 05-3700 |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE TESTIMONY OR ARGUMENT THAT MERCK SHOULD HAVE CHANGED THE VIOXX LABEL PRIOR TO APRIL 2002**

861822.1

I. **THE COURT DENIED THIS MOTION IN PREVIOUS VIOXX CASES, AND THE SAME RESULT SHOULD APPLY HERE**

Merck acknowledges that its motion to exclude testimony or argument that Merck should have changed the Vioxx label prior to April 2002 has previously been denied by the Court, e.g., in the *Smith v. Merck* and *Mason v. Merck* cases. (Def. Mem. at 1). There are no persuasive reasons to depart from the prior ruling on this issue.

Merck claims that the date of the label change is irrelevant to Louisiana's claims, because "until the State implemented a prior authorization requirement in June 2002, it was required under federal and state law to reimburse all purchases of Vioxx—regardless of the contents of the drug's label." (*Id.* at 2). However, plaintiff explained at length in the memorandum in opposition to defendant's motion for summary judgment that the Louisiana Department of Health and Hospitals (LDHH) could have restricted reimbursements for prescriptions of Vioxx at all times that the product was on the market. Plaintiff could and would have restricted reimbursements for Vioxx through implementation of Drug Utilization Review prospective deny edits, but did not do so because of Merck's misrepresentations and concealment as to the risks and benefits of Vioxx. The ability to restrict Vioxx prescriptions existed even before the Louisiana legislature adopted the implementation of a closed formulary in July 2001.

After July 2001, when the Louisiana legislature adopted an "open formulary" system consistent with 42 U.S.C.A. § 1396r-8, LDHH's ability to restrict and refuse reimbursements for Vioxx became much broader. The federal statute cited by Merck expressly authorized LDHH to "exclude or restrict" payments for prescriptions of drugs which are excluded from the state's formulary. 42 U.S.C.A. § 1396r-8(v)(1)(V)(iv). The statute empowers the state to exclude from its formulary any drug which, per its labeling, does not have a significant advantage over other drugs included in the formulary. 42 U.S.C.A. § 1396r-8(d)(4)(C). In its Opposition To

- 1 -

861822.1

Summary Judgment And Separate Statement Of Contested Facts, Plaintiff offered substantial evidence that Vioxx did not demonstrate a significant advantage over traditional NSAIDs, and in fact posed considerably greater risk while offering no greater efficacy. Thus, LDHH had the authority to refuse reimbursements for Vioxx by excluding it from its formulary, under the controlling statutes.

## II. DR. KESSLER'S OPINIONS ARE RELEVANT TO EXPLAIN MERCK'S CONDUCT IN RELATION TO APPLICABLE REGULATIONS

In his Report, Dr. Kessler described in detail the lack of full disclosure in the VIGOR publication and the post-VIGOR delay in changing the label. (Kessler Rep. at ¶¶ 40-51, 60-82, 88-95 [Declaration of Don C. Arbitblit (hereinafter "DCA Decl.") Ex. 1].) Dr. Kessler expressed the opinions that a drug company has an obligation to warn of a serious hazard associated with a drug when there is evidence of a reasonable association, and that proof of a cause and effect relationship is not required, under 21 U.S.C. 201.57(c). (*Id.* at ¶ 14.) Dr. Kessler further stated that a drug company has an obligation to warn of a risk associated with its product, and that it may do so prior to or without FDA approval. (*Id.* at ¶¶ 49-51.) The evidence shows that Merck did not change the Vioxx label to reflect any data from the VIGOR study for over two years after the results were known, from March 9, 2000 to April 11, 2002. While Merck has attempted to blame this delay on the FDA, claiming that it had attempted to secure a prompt label change by June 29, 2000, Dr. Kessler explains that the submission on that date was an improper attempt to explain away the VIGOR findings on the basis of the unproven hypothesis that Naproxen was cardioprotective, and that, contrary to Merck's inference of prompt and reasonable conduct in seeking a label change, the delay in warning was unreasonable and in violation of the standard of care. (*Id.* at ¶¶ 88-95.)

861822.1

The opinions summarized above are of the type permitted by the Court in that they will help the finder of fact "understand the applicable regulations and Merck's responses." *In re Vioxx Prod. Liab. Litig.,* 401 F. Supp. 2d 565 (E.D. La. 2005).

### III. MERCK'S OWN WITNESS ADMITTED THAT THE VIOXX LABEL WAS CHANGED TO STRENGTHEN SAFETY INFORMATION WITHOUT PRIOR FDA APPROVAL

The testimony of Merck scientist Thomas Bold, M.D., established that Merck had the ability to change the label to "add or strengthen a contraindication, warning, precaution, or adverse reaction," under 21 C.F.R. 314.70, the regulation referenced by Dr. Kessler. Dr. Bold admitted that Merck did unilaterally change its label to add "hypertensive crisis," a life-threatening emergency due to severely increased blood pressure, as an adverse reaction associated with Vioxx; that this revision was made through the "change being effected" procedure under 21 C.F.R. 314.70; and that this change was based upon Merck's own review of adverse event reports, without prior approval by the FDA. (Bold Dep. 379:17-381:7; 382:12-385:16; 386:2-387:8; 388:7-389:5,11-22, July 29, 2005 [DCA Decl. Ex. 2].) Merck did not submit a proposal and wait for the FDA to say it was okay (*id.*)—just the opposite of the procedure it claims it was required to follow as to the VIGOR label change.

Merck's argument that this evidence would unduly delay the trial is groundless. The Court has previously permitted similar testimony that did not unduly delay jury trials. The argument is even less meritorious with regard to a trial to the Court, where much of the evidence will undoubtedly be submitted in written or documentary form.

861822.1

- 3 -

## IV.   CONCLUSION

For the reasons set forth above, evidence that Merck delayed warning of an association between Vioxx and thrombotic cardiovascular events is relevant and admissible. Therefore, defendant's motion should be denied.

Respectfully submitted, this 12th day of March, 2010.

/s/ James R. Dugan
James R. Dugan, II (La. Bar No. 24785)
Douglas R. Plymale. (La. Bar No. 28409)
Stephen B. Murray, Jr. (La. Bar No. 23877)
Stephen B. Murray, Sr. (La. Bar No. 9858)
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
Kim Sullivan
General Counsel
Louisiana Department of Health and Hospitals
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Plaintiffs' Memorandum In Opposition To Defendant's Motion in Limine No. 5 To Exclude testimony Or Argument That Merck Should Have Changed The Vioxx Label Prior To April 2002 has this day been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced, in accordance to pretrial order No. 8B, on this the 12th day of March, 2010.

/s/ James R. Dugan

861822.1