# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:  VIOXX PRODUCTS LIABILITY LITIGATION** | **MDL No. 1657** |
| This Document Relates To: | SECTION L |
| STATE OF LOUISIANA, *ex rel.*, JAMES D. CALDWELL, JR., Attorney General, | JUDGE ELDON E. FALLON |
| Plaintiffs, | MAGISTRATE JUDGE KNOWLES |
| v. | |
| MERCK SHARP & DOHME CORP., | Case No. 05-3700 |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S OMNIBUS MOTION TO EXCLUDE EVIDENCE AND TESTIMONY RAISED BY PRIOR MOTIONS BEFORE THIS COURT

Merck's Omnibus Motion seeks to exclude four categories of evidence. This Court has routinely denied previous motions to exclude all four. As detailed below, the present motion provides no basis for this Court to reconsider its prior holdings.

## I. THE COURT SHOULD DENY MERCK'S MOTION TO EXCLUDE EVIDENCE RELATING TO THE NEW ENGLAND JOURNAL OF MEDICINE'S EXPRESSION OF CONCERN.

Merck has previously filed four Motions In Limine asking this Court to exclude the *New England Journal of Medicine* (*"NEJM"*) Expression of Concern ("EOC") and Reaffirmation of the Expression of Concern. and appendices ("Reaffirmation"). (Declaration of Jennifer Gross ("Gross Decl."), Exs. 1, 2.) This Court has never granted Merck's motion. (*See* June 28, 2006 Order re Merck's Motions in Limine at 10; Sept. 6, 2006 Order re Motions in Limine at 14; Oct. 16, 2006 Order re Motions in Limine at 13; Nov. 22, 2006 Order re Motions in Limine at 12; Gross Decl., Exs. 3, 4, 5, 6, respectively.) Merck now brings its fifth motion to exclude the EOC and Reaffirmation, arguing once again that the EOC is not relevant to the questions at issue in the case, is hearsay, and is prejudicial. The arguments have no more merit today than they did the last four times they were made.

### A. The EOC And Reaffirmation Are Relevant To Critical Issues Presented In This Case.

Merck argues that the EOC is not relevant because it was published in 2005, after the withdrawal of Vioxx. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004 (5th Cir. 1998); *U.S. v. Chavful*, 100 Fed.Appx. 226, 231 (5th Cir. 2004); Fed. R. Evid. 401.

As this Court has noted in three prior cases, the EOC is "probably admissible because of

influence and effect of original article on giving treating physicians comfort in prescribing Vioxx." (Gross Decl., Exs. 4, 5, 6.) Moreover, the EOC and Reaffirmation go to the credibility of Merck witnesses that were involved in the VIGOR submission to the NEJM, as well as the question of what Merck knew about the cardiovascular risks of Vioxx and when it knew it. (Gross Decl., Ex. 3.) For that reason, this Court allowed cross-examination of Alise Reicin on the EOC, overruling Merck's objections, "because she knows about it." (*Barnett v. Merck & Co.*, Trial Transcript of Aug. 14, 2006, 2389:9-2390:4, Gross Decl., Ex. 7.) "This is something that she has got to be able to respond to." (*Id.*)

The relevance in the present case is even more clear. Plaintiff's case alleges that Merck submitted the article to NEJM without including the prespecified analysis of serious thrombotic events, which showed a statistically significant excess of events for both aspirin-indicated and non-aspirin indicated patients. In its place, Merck submitted data on myocardial infarctions, which allowed the company to claim that Vioxx presents no cardiovascular risk to patients that are not aspirin-indicated. Had the article presented the prespecified measure of serious thrombotic events, a significantly increased risk would have been demonstrated for those who are not aspirin-indicated, as well as those patients who are. (Expert Report of John Abramson, M.D., at 50-53, Gross Decl., Ex. 8; Expert Report of David Kessler, M.D., at 46, 48; Gross Decl., Ex. 9.)

The monographs prepared by Provider Synergies for the State were compiled from Merck's label and published literature. (*See* Depo. of Valerie Taylor, Jan. 15, 2010, 19, 44-45, 81, Gross Decl., Ex. 10.) Since Merck did not disclose the prespecified analysis of serious thrombotic events, the Provider Synergies monographs did not reflect the true cardiovascular risk associated with Vioxx – particularly for those who are not aspirin-indicated.

The EOC and Reaffirmation show Merck's effort to withhold information from the *NEJM*, and thereby withholding that information from Provider Synergies and ultimately the State. The EOC and Reaffirmation present data that should have been presented in the original article — according to Merck's own prespecified analysis plan — and should be admissible here to show the "influence and effect" of the original article on the State's decision to cover the reimbursement costs of Vioxx.

### B.   The EOC And Reaffirmation Are Admissible Under Rule 803(18).

Federal Rule of Evidence 803(18) states:

> **(18) Learned treatises.** To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

It is without question that *NEJM* is a reliable authority. It is one of the premier medical periodicals in the world. Numerous experts in this case have testified to that fact. *See Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994). Testimony regarding other articles published in *NEJM* has been allowed during previous trials. In fact, the Court may take judicial notice that *NEJM* is a reliable authority in the medical field.

The EOC is no less reliable than any peer-reviewed analysis published in *NEJM*. The EOC was authored by *NEJM* editors, Drs. Gregory Curfman, Stephen Morrissey, and Jeffrey Drazen, and was peer-reviewed. (Dep. of Dr. Gregory Curfman, Jan. 24, 2006, 77:1-78:19, Gross Decl., Ex. 18.) Plaintiff's experts have relied on the "Expression of Concern" throughout the Vioxx litigation.

Contrary to Merck's claim, the EOC and Reaffirmation are not mere editorials. They

include analysis of data that was collected by Merck in the course of the VIGOR trial, and Merck does not dispute that the source of the data is accurate.  The EOC provides an analysis of the data including events that were excluded from the VIGOR paper.  It is clear about the source of those events, and Merck does not and cannot dispute that the EOC's statistical analysis is accurate. Similarly, the Reaffirmation includes appendices, one of which is the missing analysis of serious thrombotic events.  (Gross Decl., Ex. 2 at 3 (Table 3).)  Merck submitted the same data to the FDA, and cannot argue that the analysis is unreliable, or that the source data is unreliable.

It is notable that the VIGOR article, published in the New England Journal of Medicine, now appears on the NEJM website with the banner, **"An Expression Of Concern Has Been Published."**  (Gross Decl., Ex. 11.)   Therefore, the original VIGOR article is no longer an independent learned treatise, but instead inextricably linked to the EOC, on the NEJM website, as well as on medical research sites such as PubMed, sponsored by the NIH, which lists the EOC and Reaffirmation as related articles to the VIGOR article.

### C. Admission Of Evidence Relating To The "Expression Of Concern" And The Reaffirmation Would Not Cause Undue Prejudice, Confusion, Or Waste Time.

Merck's alternative argument, that evidence of the "Expression of Concern" should be excluded under Rule 403, should also be rejected. Unfair prejudice within the context of Rule 403 "means an undue tendency to suggest (a) decision on an improper basis, commonly, though not necessarily, an emotional one."  Notes of the Advisory Committee on Proposed Federal Rules of Evidence, Rule 403 at 102.  *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).

In relevant part, Federal Rule of Evidence 403 directs that relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.  Fed. R. Evid. 403.  The careful use of "substantially" demonstrates the emphasis placed on this

balancing test. "Rule 403 is an extraordinary remedy that should be used sparingly because it allows the court to exclude admittedly probative evidence." *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994). As this court has noted, "Rule 403 rulings are best made at the time of trial when the court may balance relevant factors before it." *Minshew v. Brown*, NO. 95-2507, 1996 WL 601436 (E.D.La. 1996) (Fallon, J.).

Evidence relating to the "Expression of Concern" is clearly relevant to Plaintiff's claim that Merck withheld the results of the VIGOR study, misleading the public and the healthcare community — including Provider Synergies, and ultimately the State.

## II.   THE COURT SHOULD DENY MERCK'S MOTION TO EXCLUDE COMMUNICATIONS WITH THE FDA REGARDING IMPROPER MARKETING OF VIOXX.

Merck argues that communications from the FDA related to Merck's improper marketing are not relevant to the claims brought by the State. This argument fails. This Court has routinely admitted the 2001 DDMAC Warning Letter ("Warning Letter," Gross Decl., Ex. 12) in previous trials, holding, *inter alia*, that the letter is relevant to Merck's knowledge. (Gross Decl., Ex. 3 at 9, Ex. 8 at 3; *see also* Ex. 4 at 13, Ex. 5 at 13, Ex. 6 at 12.)

In response to Merck's arguments presents the same arguments as it has in numerous prior cases, Plaintiff incorporates by reference Plaintiff's Opposition to Motion in Limine No. 4, *Plunkett v. Merck*, Nov. 11, 2005 ("*Plunkett* Opp. No. 4"), Gross Decl. Ex. 13; and Plaintiff's Opposition to Motion in Limine No. 2, *Barnett v. Merck*, June 19, 2006 ("*Barnett* Opp. No. 2"), Gross Decl. Ex. 14).

### A.   The Warning Letter Is Relevant To Plaintiff's Claim that Merck Misled the Medical Community — Including Provider Synergies and State Actors — About the Cardiovascular Safety of Vioxx and Did So With Knowledge.

The Warning Letter is evidence of Merck's knowledge that its representation of Vioxx as having a "favorable cardiovascular profile" was misleading — in the words of Thomas Abrams,

the letter's author, that claim was "simply incomprehensible given the rate of myocardial infarction and serious cardiovascular events compared to Naproxen." (Gross Decl., Ex. 12 at 6.) The Warning Letter further shows that Merck knew that the explanation it provided for VIGOR — that the difference in cardiovascular events was due to a cardioprotective effect of naproxen, not a toxic effect of Vioxx — was considered unproven and misleading by the agency that oversees marketing materials. Yet Merck continued to make that claim, in published articles, marketing materials, through their sales representatives, and other forms of literature and media.

Merck claims that there is no evidence that any decision maker or State actor "was exposed to the concerns raised in the DDMAC communications." (Def. Mem. 4.) Yet the naproxen theory was prominent in publications by the company, which are referenced in the monographs that the State relied on, and which were published long after the DDMAC letter. Thus, the letter is not only evidence of Merck's misrepresentation, it is evidence of its continued, purposeful misrepresentation that DDMAC found "simply incomprehensible."

Such evidence is highly relevant, and is properly admissible for multiple purposes, including: demonstrating that Merck's warnings were inadequate and that Merck was on notice that its promotional activities contributed to this inadequacy; rebutting claims of good character; rebutting claims of efficacy or safety of Vioxx based on the FDA's "approval" or blessing; impeachment purposes; showing Defendant's intent and/or state of mind; demonstrating a routine business practice, and pattern of misconduct for purposes of punitive damages. (*Barnett* Opp. No. 2 at 10-12; *Plunkett* Opp. No. 4 at 4-7.)

### B.    The Warning Letter Is Not Hearsay

DDMAC Warning Letters, including the September 17, 2001 Warning Letter, clearly fall under the hearsay exception for public records, reports and findings, set forth in Rule 803(8)(B)

(public records, reports and findings that set forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report" are not excluded as hearsay). With respect to Merck's claim that Warning Letters "lack trustworthiness," this argument applies to Rule 803(8)(C) (factual findings from a resulting from an investigation). The Warning Letter falls under Rule 803(8)(B) (matters observed pursuant to legal duty). (*Barnett* Opp. No. 2 at 14-15; *Plunkett* Opp. No. 4 at 10-11.)

## III.   THIS COURT SHOULD DENY MERCK'S OVERBROAD, NON-SPECIFIC MOTION TO EXCLUDE WHAT MERCK DEEMS UNRELIABLE AND IRRELEVANT MEDICAL AND SCIENTIFIC EVIDENCE.

Merck makes a sweeping request, asking the Court to exclude evidence that it does not identify — not by exhibit number, not by Bates number, not by type of evidence. This alone is reason to deny the motion or defer to address specific items individually, as this Court has done the last three times Merck has brought the same motion. (Gross Decl., Exs. 4, 5, 6, all deferring ruling because motion is "too broad"; Order of Nov. 21, 2005 at 4, Gross Decl., Ex. 15), denying motion as "Too vague and broad. This depends on proof.")

As presented here, Merck seeks exclusion of all evidence where Plaintiff's experts rely on analyses that are not statistically significant or investigator-reported adverse-event data where adjudicated data exists. (Def. Mem. 6.) Even if it Merck had identified specific items of evidence — which it must do — the argument for excluding expert evidence because the expert relies on an analysis that is not statistically significant, or incorporates investigator-reported adverse event data fails, because both types of evidence satisfy Rule 702.

Rule 702 governs the admission of expert testimony and provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the

testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

principles and methods and (3) the witness has applied the principles and methods reliably to the

facts of the case." Fed. R. Evid. 702.

### A.    Expert Evidence Need Not Be Statistically Significant To Be Reliable.

There is simply no requirement that an analysis must be statistically significant in order

for an expert to rely on it.  The sole case cited by Merck, *Cano v. Everest Minerals Corp.*, 362 F.

Supp. 2d 814, 821 (W.D. Tex. 2005), is based on Texas substantive law, not the Federal Rules of

Evidence.  And *Cano* stands alone, even in Texas.  Since then, numerous other courts have

reiterated that there is no p-value cut-off for admissibility of expert evidence, as long as the

evidence is reliable.  *Taylor v. Bristol-Myers Squibb Co.*, 2004 WL 2058796, 1 (N.D. Tex. 2004)

("this Court simply notes that the inquiry for admissibility is not the same as that for sufficiency

of the evidence to support a jury verdict"); *Lofton v. McNeil Consumer & Specialty*

*Pharmaceuticals*, ___ F.R.D. ___, 2010 WL 308754, 5 (N.D. Tex. 2010).  The *Lofton* Court

held:

> The court understands the practical decision of the court in *Cano*
> that evidence that may be admissible but that fails to be legally
> sufficient to prove general causation should be excluded.  This
> decision, however, conflates the standards under *Daubert* and the
> ultimate question of whether there is legally sufficient evidence of
> causation.  The court determines that the magistrate judge is
> correct and will follow *Taylor;* it finds that *Havner* does not
> control a federal court's determination of admissibility pursuant to
> Rule 702 and *Daubert.*

*Id.*; *In re Neurontin Marketing, Sales Practices, and Products Liability Litigation*, 612

F.Supp.2d 116, 141 (D. Mass. 2009) ("the fact that there is no statistically significant

information about Neurontin alone is not dispositive, particularly since there is statistically

significant information about the class of drugs and other indicia of reliability"); *In re Ephedra*

*Products Liability Litigation*, 2007 WL 2947451, 1 (S.D.N.Y. 2007) (the court "agrees with

*Taylor.* Sufficiency and relevancy are not the same, and there is no conceptual reason to include the former within the 'relevancy prong' of Rule 702"); *In re Viagra Prods. Liab. Litig.*, 572 F.Supp.2d 1071, 1081 (D. Minn. 2008) (expert report was reliable even though there was no statistically significant epidemiological data because it was based upon studies that were peer-reviewed, published, contained known rates of error and resulted from generally accepted experience or research data); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 289 F.Supp.2d 1230, 1241 (W.D. Wash. 2003) (lack of statistical significance under some circumstances "does not detract from the reliability of the study").

## B.   Expert Evidence Based on Investigator-Reported Events Is Admissible.

Merck seeks to exclude investigator-reported events, but only where there is adjudicated data available. Where there is no adjudicated data — for example, in the retrospective reviews of cardiovascular events in the OA studies — Merck has no objection to the use of investigator-reported events. Merck cannot have it both ways. Either investigator-reported events are reliable sources of information, or not. The Court does not weigh conflicting evidence at the admissibility stage. The admissibility of an expert evidence, including the question of reliability, is not the appropriate stage to weigh that evidence against the opposing expert's evidence.

Rule 702 governs the admission of expert testimony, and requires inter alia, that the testimony is based upon sufficient facts or data. Fed. R. Evid. 702. Rule 702 does not require the court to determine whether there are competing facts or data, and whether those data are more or less reliable. That is a question for the factfinder. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("the Daubert analysis should not supplant trial on the merits"). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.*, quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596, 113 S.Ct. 2786 (1993).

In addition, "whether an expert's testimony is reliable is a fact-specific inquiry." *See Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 583-584 (5th Cir. 2004)(citing *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 617-18 (5th Cir. 1999)). The broad generalization made by Merck in the motions in limine make such required factual inquiry impossible until trial, where the context and facts related to the evidence sought to be introduced may be analyzed by the Court.

## IV.   THE COURT SHOULD DENY MERCK'S MOTION CONCERNING DR. TOPOL'S TESTIMONY IN ITS ENTIRETY.

The present motion to exclude the testimony of Dr. Topol is the sixth such motion.  Every time the Court has ruled, it has flatly denied Merck's motion.  (Order of Feb. 6, 2006, at 2; Gross Decl. Ex. 17; Gross Decl. Ex. 4 at 13, Ex. 5 at 13, Ex. 6 at 12.)

Merck argues, once again, that Dr. Topol's testimony is irrelevant and speculative, and that Plaintiff failed to designate Dr. Topol as an expert pursuant to Rule 26.  The arguments are exactly the same as those argued in the earlier cases, in fact, Merck's argument consists entirely of references to its earlier briefs.

Merck claims a different result is appropriate here, because the present case will be tried as a bench trial, and because this is not a personal injury case.  (Def. Mem. 6.)  But Merck makes no argument regarding why the standard for relevance and admissibility should be any different in this case, nor does it make any attempt to distinguish the court's prior rulings on the facts.

## V.   CONCLUSION

For all the reasons detailed above, Merck's Omnibus Motion should be denied.

Respectfully submitted, this 12th day of March, 2010.

/s/ James R. Dugan
James R. Dugan, II (La. Bar No. 24785)
Douglas R. Plymale. (La. Bar No. 28409)
Stephen B. Murray, Jr. (La. Bar No. 23877)
Stephen B. Murray, Sr. (La. Bar No. 9858)
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
Kim Sullivan
General Counsel
Louisiana Department of Health and Hospitals
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Plaintiffs' Memorandum In Opposition To Defendant's Omnibus Motion To exclude Evidence and Testimony Raised By Prior Motions Before This Court has this day been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to Lexis-Nexis File & Serve Advanced, in accordance to pretrial order No. 8B, on this the 12th day of March, 2010.

/s/ James R. Dugan