# EXHIBIT 10

Confidential - Subject to Protective Order

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION, | ) MDL NO. 1657 ) ) SECTION L |
| This Document Relates to: | ) ) JUDGE ELDON E. FALLON |
| STATE OF LOUISIANA, ex rel. JAMES D. CALDWELL, JR., Attorney General, | ) ) MAGISTRATE ) JUDGE KNOWLES ) |
| Plaintiff, | ) |
| vs. | ) ) |
| MERCK SHARP & DOHME CORP., | ) ) NO. 05-3700 |
| Defendant. | ) |

**CONFIDENTIAL**
SUBJECT TO PROTECTIVE ORDER

- - - - -

THE VIDEOTAPED DEPOSITION OF
VALERIE E. TAYLOR, PHARM.D.
FRIDAY, JANUARY 15, 2010

- - - - -

The deposition of VALERIE E. TAYLOR, PHARM.D., called by the Defendant for examination pursuant to the Federal Rules of Civil Procedure, taken before me, the undersigned, Michele Ray, Notary Public within and for the State of Ohio, taken at Hilton Akron/Fairlawn, 3180 West Market Street, Akron, Ohio, commencing at 9:02 a.m., the day and date above set forth.

```
                                                            Page 19
 1      current, published, peer-reviewed clinical
 2      trials and information are included."  And then
 3      it talks about -- it goes on.  I'm not going to
 4      read the whole thing.
 5           My point or question would be, was it
 6      important -- let me withdraw that question and
 7      rephrase it.
 8           What you at Provider Synergies were doing
 9      in saying you would do and, in fact, did was
10      rely on independent peer-reviewed published
11      clinical data and FDA labeling and findings as
12      your primary source of information for your
13      reviews; is that correct?
14   A  Yes.
15   Q  And at the bottom paragraph, Dr. Taylor, there
16      is a statement.  First sentence, "Each
17      Therapeutic Drug Class on the PDL will be
18      reviewed at least annually."  Was that your
19      recollection of how the class reviews were done
20      with regard to Louisiana?
21   A  Yes.
22   Q  You can put those aside.  I think we have read
23      a sentence in the materials that talked about
24      there was a clinical staff.  Did you oversee
25      people that worked for you in your role as
```

Confidential - Subject to Protective Order

Page 44

1  A   Yes.
2  Q   And then at the end, he notes, "If nobody wants
3      them, they are going to the trash"; is that
4      correct?
5  A   That's correct.
6  Q   I'm sure he is being a bit facetious.  But is
7      that consistent with your recollection, that
8      the dossiers were not considered very important
9      with regard to the work you were doing as an
10     independent consultant --
11 A   Correct.
12 Q   -- for Provider?
13              MR. SALES:       Let's go ahead
14     and take a short break so we can get that copy
15     made.
16              VIDEOGRAPHER:    We are now off
17     the record at 9:52 a.m.
18              (Off the record.)
19              VIDEOGRAPHER:    We are now back
20     on record at 9:59 a.m.
21 BY MR. SALES:
22 Q   Dr. Taylor, before the short break, you talked
23     about your primary source of information being
24     peer-reviewed published data, FDA labeling and
25     findings, and we have looked at some of the

Confidential - Subject to Protective Order

Page 45

```
 1       correspondence, internal correspondence, and
 2       e-mails saying that, basically, If anybody
 3       wants the dossiers, fine; otherwise they're
 4       going in the trash, and you mentioned you don't
 5       really rely on the e-mails and marketing
 6       material.  Why is that or why was that?
 7   A   We felt that that was a biased review of
 8       information.
 9   Q   And going with the independent review of the
10       peer-reviewed published data and the FDA
11       findings would not have had that same bias?
12   A   That's correct.
13   Q   Did you find that that was the appropriate way
14       to do things?
15   A   Yes.
16   Q   Going back now to Exhibit 5.  We had on the
17       break a full copy made.  This was the monograph
18       of the COX-2 class, the original one, correct,
19       in February of '02?
20   A   Yes.
21   Q   If you go to page 6, which we now have on
22       Exhibit 5.  There is a section called
23       "Cardiovascular Concerns" and "Cardiovascular
24       Events."  Do you see that?
25   A   Yes.
```

Page 81

```
 1        Merck; is that correct?
 2   A    Correct.
 3   Q    And did Merck provide you a detailed analysis
 4        of clinical information surrounding some of
 5        these published studies?
 6   A    Yes.
 7   Q    Any reason to believe that Merck provided you
 8        inaccurate or misleading information?
 9   A    No.
10   Q    Similar to what we talked about earlier today,
11        this stuff was considered but was not the
12        primary purpose of your review, which wasn't
13        relying upon submissions from Celebrex or from
14        Pfizer or from Merck or from any other
15        manufacturer.  You would look at it and
16        consider it, but your primary review was your
17        independent review, correct?
18   A    Correct.
19   Q    I think I asked you this about the P&T
20        Committee, but I want to ask you also about the
21        Louisiana DHH employees and officials.  Have
22        any Louisiana DHH official ever told you that
23        Provider Synergies provided incorrect or
24        inaccurate or misleading information to them
25        about the COX-2 class?
```