UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 |
| This Document Relates To: | SECTION L |
| STATE OF LOUISIANA, *ex rel.*, JAMES D. CALDWELL, JR., Attorney General,<br><br>Plaintiffs,<br><br>v.<br><br>MERCK SHARP & DOHME CORP.,<br><br>Defendants. | JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE KNOWLES<br><br>Case No. 05-3700 |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION *IN LIMINE* NO. 12 TO EXCLUDE EVIDENCE OR TESTIMONY REGARDING REPORTS OF NICHOLAS JEWELL**

861904.1

I.  **INTRODUCTION**

Defendants' motion to exclude evidence or testimony regarding Professor Nicholas Jewell, Ph. D., is similar to its motions to preclude plaintiffs' experts Graham, Julie and McGregor from relying on Professor Jewell's statistical reports. The grounds for the motions are also essentially the same, raising unsupported challenges to straightforward statistical tests of Merck's own data. The purpose of Federal Rules of Evidence 703 is to promote efficiency by expanding the acceptable bases for expert testimony, to reduce the trial time needed to produce and examine as witnesses each expert upon whom another expert relies. Wright & Gold, FEDERAL RULES OF EVIDENCE (1997) Vol. 29, § 6272 at 304. Professor Jewell's reports come within the letter and spirit of Rule 703, and Plaintiff's experts have reasonably relied upon them.

Professor Jewell's statistical reports are "of a type reasonably relied upon by experts in the particular field," and therefore serve as proper basis for the expert's opinions under Rule 703, regardless of whether Professor's reports are admissible. The Court previously stated that another expert could rely upon Professor Jewell's statistical reports in the *Barnett v. Merck* case, and the same is true here.

II.  **PROFESSOR JEWELL'S STATISTICAL ANALYSIS OF THE VIGOR COMPLICATED PUBs DATA IS OF THE TYPE REASONABLY RELIED UPON BY GASTROENTEROLOGISTS**

   A.  **The Court Has Permitted Testifying Experts To Rely On Biostatistical Consultants' Analyses In Previous Vioxx Cases**

Rule 703 is liberally interpreted by the courts to permit experts to rely on the work of others where it is reasonable to do so. "As a general rule the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hartley v. Dillard's, Inc.*,

310 F.3d 1055, 1061 (8th Cir. 2002). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Id.*

When an expert's opinion is based on facts not admissible in evidence, the Court should make a threshold factual inquiry to determine whether the data providing the basis for the opinion is of a type reasonably relied on by experts in that field to form such opinions, and in making such inquiry, "deference ought to be accorded to the expert's view that experts in his field reasonably rely on such sources of information." *Greenwood Utilities Commission v. Mississippi Power Company* 751 F.2d 1484 (5th Cir. 1985), *reh'g denied*, 757 F.2d 284.

In *Plunkett v. Merck & Co. (In re Vioxx Prods. Liab. Litig.)*, 401 F. Supp. 2d 565, 574 (E.D. La. 2005), defendant moved to exclude the testimony of plaintiff's expert Wayne Ray, Ph.D., based in part on the argument that Professor Ray had relied on the biostatistical report of a nontestifying consultant, Richard Kronmal, as to issues of whether the Vioxx data supported increased CV risk with short-term use. This Court denied defendant's motion and permitted Professor Ray to testify on that issue. *In re Vioxx Litigation*, 401 F. Supp. 2d at 585-586.

Also, on July 6, 2006, this Court heard argument regarding a number of expert-related issues in *Barnett v. Merck*, including the rebuttal report of Professor Jewell, an expert whose analysis had been relied upon by a timely disclosed expert, Dr. Farquhar. The Court denied a motion to designate Professor Jewell as an additional expert because the designation came too late, but stated that "[Rule] 703 will allow Dr. Farquhar to explain that situation and deal with it." (*Barnett v. Merck*, Hearing Tr. 82:22-83:2, July 6, 2006 [Declaration of Sarah R. London ("SRL Decl.") Ex. 1].) Defendant argues that the Jewell report does not meet the Rule 703 standards as the type of matter upon which another expert may reasonably rely; however, the Court's determination of July 6, 2006 decided that Professor Jewell's report was suitable for

861904.1

another expert to rely upon and thus came within the scope of the Rule.[1] The same considerations support the conclusion that Plaintiff's experts may rely upon Dr. Jewell's report s in this case.

>   B.   **Rule 703 Permits Testifying Experts To Rely On the Reports of Other Experts Where Such Reliance Is Reasonable for Experts in the Particular Field**

The courts have frequently held that testifying experts may rely on the work of other experts where experts in a particular field commonly rely on such experts. The cases set forth below are indicative of the wide range of circumstances in which courts have permitted experts to rely on the work of others in forming their opinions.

In *Weiss v. Allstate Insurance Company*, 512 F. Supp. 2d 463 (E. Dist. La. 2007), the District Court held that plaintiff's engineering expert could rely upon a weather report prepared by another expert in forming his opinion on the cause of property damage. "[I]t is apparent from engineering reports in this case that engineers rely on weather data compiled by others informing opinions on causation of property damage." *Id.* at 477. Thus, the expert's testimony was allowed under Rule 703, even though the weather report itself was inadmissible hearsay. Similarly, in this case, the gastroenterologists rely on statisticians to conduct statistical analysis: Merck's expert gastroenterologist did not conduct the data analyses in his clinical trials (Sales Dep. 38:7–41:24, January 26, 2010 [SRL Decl. Ex. 2]), and Dr. Graham's published work states that a statistician did such tests, just as in this case. (*See* Graham, D., et al., *Arch. Intern. Med.*

---

[1] The rebuttal report itself includes sufficient indicia of reliability to support that conclusion, including Dr. Jewell's credentials as a biostatistician, professor, department head, winner of merit-based awards in his field, and author of recognized, authoritative textbooks, as well as his use of the same data that Merck itself used for analysis of CV risk and provided to plaintiffs during litigation discovery.

2002; 162:169-175, at 175 ("Dr. Huang conducted the statistical analyses for this study.") [SRL Decl. Ex. 3].)

In *Ohio Environmental Development v. Envirotest Systems*, 478 F. Supp. 2d 963 (N.D. Ohio 2007), the District Court held that plaintiff's expert could rely on facts, data, and conclusions of other experts, including a consultant's calculations of vehicle emissions, in forming his opinion. *Id.* at 974-975 (citing *Mennino v. International Manufacturing Company*, 650 F.2d 846, 851 (6th Cir. 1981) ("[T]he purpose of Rule 703 is to make available to the expert all of the kinds of things that an expert would normally rely upon in forming an opinion, without requiring that these be admissible in evidence. Under the Rule, the expert is free to give his opinion relying upon the types of data an expert would normally use in forming an opinion in his area of expertise.") *See also*, *Gussack Realty Company v. Xerox Corporation*, 224 F.3d 85 (2d Cir. 2000) ("[A]n expert may rely on data that she did not personally collect.")

*02 Micro Intern. Limited v. Monolithic Power Systems*, 420 F. Supp. 2d 1070 (N. Dist. Cal. 2006) held that the court properly admitted expert testimony that relied on testing performed by another expert. The testifying expert stated that he "didn't go to the lab and push the buttons or anything like that," but he "did specify what [he] wanted tested and how it should be tested." *Id.* at 1088. The consultants relied upon used "a well-known piece of equipment that is typically used to make" the kind of measurement at issue. He further testified, "I see no reason to doubt the report. It used a gain phase analyzer, that's a well-known device, and you know, all you do is take a picture of the front panel of the gain phase analyzer. So you know, there aren't—there isn't a lot of opportunity to massage the data there." *Id.*

These facts are analogous to the current case. Dr. Julie testified that Professor Jewell applied a "straightforward numerical calculation" of Merck's own data which Dr. Julie

personally reviewed for accuracy. "He is applying simple statistical/biostatistical analytic tools. So the numbers should not really lie...I don't suspect that there's anything wrong here." (Julie Dep. 135:19-136:11; 139:12-140:3, January 13, 2010 [SRL Decl. Ex. 4].)

    C.    **Reports Prepared for Litigation Are Not Inherently Suspect, and Neither the Data Nor the Methods in Professor Jewell's Reports Have Been Challenged**

Defendant argues that Professor Jewell's statistical analysis cannot be relied upon because it was prepared for the purpose of the litigation. However, "[t]hat a research protocol or method was conducted in anticipation of litigation does not mean that it cannot be the type of study an expert would rely upon in expressing his opinion." *United States v. Marine Shale Processors*, 81 F.3d 1361, 1370 (5th Cir. 1996). The *Daubert* decision itself emphasizes that the test of admissibility is flexible and does not depend upon any single factor. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Other *Daubert* factors, such as the known error rate and general acceptance of the methodology within the scientific community, are supportive of the admissibility of testimony based on Professor Jewell's statistical tests. Dr. Jewell's GI report uses a standard test of interaction. Defense expert Dr. Sales admitted such tests are important to show whether the results are influenced by a particular factor; that the result met the traditional test of statistical significance; that investigators want to know about interaction test results because they may "change their conclusion" about the data. (Sales Dep. 23:19-25:10.) Thus, defense expert admits that the method is generally accepted; the "error rate" factor is supportive of reasonable reliance, because, in Dr. Sales' words, significance "is a measure of whether or not, if these studies were done repeatedly, what the chance was that you would get the similar results." (Sales Dep. 46:12-48:16.)

This case is clearly distinguishable from *Soden v. Freightliner Corp.*, 714 F.2d 498 (5th Cir. 1983), upon which Merck inappropriately relies. In fact, the criteria cited in the *Soden* case to exclude evidence support the contrary results here. In the *Soden* case, plaintiffs alleged that a faulty fuel system resulted in a post-collision fuel fire that killed the driver of the truck. The District Court excluded a defense opinion based on an informal letter that bore numerous indicia of *un*reliability. In upholding the District Court's exclusion of evidence, the Court of Appeals noted that the testifying expert admitted, "for the most part, there is much slack in available data. Between moving vans and cars, and it is really hard to say, you know, heavy duty combination vehicles such as the one Mr. Soden was driving, it is hard to find good data on that." *Id.* In response to a question from defendant's counsel as to whether the fuel system usually is or is not involved in the various wrecks that these trucks get involved in, the expert stated, "I think we have heard or seen all kinds of numbers battered around back and forth here." *Id.* at 502.

Contrary to Merck's argument, "anticipation of litigation" was not a decisive factor in the ruling. Instead, the Court of Appeals addressed the defects in the underlying data in great detail. *Id.* at 503. The Court questioned the claim that 3,000 reports had been reviewed, how they had been reviewed and by whom. *Id.* at 503-504. In addition to these factors which suggested weakness in the reliability of the statistics, the Court of Appeals noted that the letter upon which the expert relied had confused post-crash fires with crashes that were *"caused* by some type of fuel fire" (emphasis added by the Court). *Id.* at 504. The Court of Appeals stated, "this doubt involved not merely the weight [the testifying expert's] statistics and opinions should have been accorded, but *whether they had meaningful relevance at all* to the frequency of post-crash fuel fires in Consolidated Freightways' fleet of Freightliner trucks." *Id.* at 505 (emphasis added). The Court of Appeals acknowledged that experts have a wide latitude in picking and choosing

the sources on which to base opinions under Rule 703; that the "district court quite properly used its discretion to exclude [the expert's] opinion until a better predicate for his statistics could be presented; and that the defendant made no further attempt to satisfy the district court's concerns." *Soden v. Freightliner Corp.*, 714 F.2d at 505.

The circumstances here are directly opposed to those in the *Soden* case. As noted above, Dr. Jewell applied a straightforward test to Merck's own data, and the numbers "should not really lie." (Julie Dep. 139:19-140:3.) Merck's own expert, Dr. Sales, admitted that the data were accurate, the test relevant, and the result significant. (Sales Dep. 35:4-37:6; 41:9-18; 43:17-20; 45:18-48:3; 48:13-16.) Where there is no substantive challenge to the data or methods, Plaintiff's experts may reasonably rely on Professor's Jewell's statistical tests.

**D.     Plaintiff's Experts Reasonably Rely on Professor Jewell's Work, Where Their Opinions Are Also Based on Their Own Evaluation of the Evidence**

In *Arkwright Mutual Insurance v. Gwinner Oil, Inc.* (8th Cir. 1997) 125 F.3d 1176, the court held that an expert was entitled to rely upon the report of another expert, where the testifying expert relied not only upon the non-testifying expert reports, but also upon his own understanding of the product in question and his own investigation. "Where an expert's opinion is partly based on hearsay which does not meet the Rule 703 requirements, his opinion is nevertheless admissible if it is supported by the other independent bases upon which he relied to form that opinion." *Id.* at 1182.

Here, Drs. Julie, Graham and MacGregor relied upon their own review of all the analyses made public by Merck concerning the VIGOR data, as well as their substantial experience in the study and treatment of NSAID-related and COX-2 inhibitor-related GI adverse events. (*See* Pl.s' Memo. in Opp. to Merck's Mot. to Exclude Expert Testimony of David Y. Graham; Pl.s' Memo. in Opp. to Merck's Mot. to Exclude Expert Testimony of Neil Julie; Plaintiffs' Pl.s' Memo. in

861904.1

Opp. to Merck's Mot. to Exclude Expert Testimony of John MacGregor [SRL Decl. Exs. 5, 6, and 7].) The sole addition to their basis for opinion is the "straightforward" statistical test of Merck's own data—a test that Merck could and should have performed but did not. Thus, Plaintiffs' experts reasonably relied upon a qualified biostatistician to perform that test in reaching their opinions.

### E. Publication and Peer Review Were Thwarted by Merck's Failure to Report Critically Important Data

The applicable case law under *Daubert* holds that the district court should consider a range of factors relevant to the reliability of the evidence, and that peer review and publication are not essential to admissibility. *See, e.g., Kannankeril v. Terminix International, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) (reliability of expert's testimony was sufficiently supported by other evidence, despite lack of publication supporting his contention that defendant's pesticide could have caused plaintiff's injuries).

Defendant nevertheless focuses on the *Daubert* criteria of publication and peer review, but this argument is not persuasive, because the lack of peer review is attributable to Merck's own failure to report or publish the analysis, not to any flaws in the data or Professor Jewell's methods. The co-author of the VIGOR article, Loren Laine, M.D., testified that the data for the complicated PUBs according to steroid use or non-use could have been analyzed by Merck, and that if the analysis had been done, showing a statistically significant interaction, he would have reported it. (Laine Dep. 120:7-11, 14-15; 121:5-6, 11-12, 21-23; 122:9-123:5, February 2, 2010 [SRL Decl. Ex. 8].)

The VIGOR Data Analysis Plan (DAP) also permitted subgroup analyses of the secondary endpoints such as complicated PUBs, and Merck reported such analyses for three of

- 8 -

861904.1

the six pre-specified subgroups[2] but did not do so for steroid use versus non-use. In addition, Merck volunteered two *post hoc* subgroup analyses during the peer review process.[3] (Laine Dep. 96:12-97:2; 97:10-98:6; 98:8-14; 98:22-99:18; 100:18-23; 100:25-101:10; 101:12-15.) Dr. Laine also testified that use of steroids was one of the "three most clinically relevant risk factors" for NSAID-related GI adverse events, and Merck reported the analyses of the complicated events endpoint for the other two of those subgroup criteria (age and prior history of GI event). (Laine Dep. 103:7-18; 104:15-105:5; 106:7-13.) Thus, it would have been reasonable and expected for Merck to report the results of the steroid user versus non-steroid user subgroup analysis for the most clinically relevant, complicated GI events (Graham Rep. ¶ 37 [SRL Decl. Ex. 9]), and such an analysis would undoubtedly have been published if it had been reported. Merck is not in a position to criticize the lack of peer reviewed publication of this data, where Merck itself is responsible for the lack of such peer review and publication.[4]

### III.   Dr. MacGREGOR'S LIMITED RELIANCE ON PROFESSOR JEWELL'S ANALYSES IS REASONABLE

Dr. MacGregor relies on Professor Jewell's statistical significance test of the OA data, and his analysis of Merck's' pooled analysis Protocol 203. These same statistical tests are found in Professor Jewell's rebuttal report that the Court ruled was within Rule 703 in the *Barnett v. Merck* decision referenced above. All of the data came from Merck's own clinical trials, and Merck does not challenge its validity. Dr. MacGregor may reasonably rely on these statistical

---

[2] Prior history of GI event, age over or under 65 years, and study site location.

[3] Analysis according to high dose GI co-medication, and *post hoc* creation of a "low risk" category.

[4] Plaintiff incorporates by reference the opposition to Defendant's *Daubert* motions as to Drs. Graham *and Julie*, which describes Merck's pattern of resisting production of data showing benefits of Vioxx were limited to steroid users in VIGOR.

tests in the context of his own substantial work on the review and analysis of the Vioxx clinical trial data.

## IV. CONCLUSION

For the foregoing reasons, Merck's motions to exclude all evidence and testimony regarding Dr. Jewell's report should be denied.

Respectfully submitted, this 12th day of March, 2010.

/s/ James R. Dugan
James R. Dugan, II (La. Bar No. 24785)
Douglas R. Plymale. (La. Bar No. 28409)
Stephen B. Murray, Jr. (La. Bar No. 23877)
Stephen B. Murray, Sr. (La. Bar No. 9858)
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
Kim Sullivan
General Counsel
Louisiana Department of Health and Hospitals
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

Counsel for Plaintiff

861904.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Plaintiffs' Memorandum in Opposition to Motion to Exclude Evidence or Testimony Regarding Reports of Nicholas Jewell** has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United State District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 12th day of March, 2010.

/s/ James R. Dugan
James R. Dugan, II (La. Bar No. 24785)
Douglas R. Plymale. (La. Bar No. 28409)
Stephen B. Murray, Jr. (La. Bar No. 23877)
Stephen B. Murray, Sr. (La. Bar No. 9858)
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130

861904.1