UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF LOUISIANA, *ex rel.* JAMES D. | * | SECTION L |
|     CALDWELL, JR., Attorney General, | * | |
| | * | JUDGE ELDON E. FALLON |
|               Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|     versus | * | KNOWLES |
| | * | |
| MERCK SHARP & DOHME CORP., | * | |
| | * | |
|               Defendant. | * | |
| | * | |
| Case No. 05-3700. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION TO STRIKE UNTIMELY AFFIDAVITS AND PLAINTIFF'S THIRD
## AMENDED WITNESS LIST

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

BACKGROUND ................................................................................................................ 1

      A.     P&T Committee Member Affidavits ................................................ 3

      B.     Expert Affidavits .......................................................................... 5

             1.     Dr. John Abramson ............................................................ 5

             2.     Terry Leach ...................................................................... 5

ARGUMENT ................................................................................................................... 7

I.     THE AFFIDAVITS OF DRS. CULOTTA, DOSKEY AND LUTZ SHOULD BE
STRICKEN BECAUSE PLAINTIFF FAILED TO TIMELY DISCLOSE THESE
WITNESSES. ............................................................................................................ 8

II.    THE AFFIDAVITS OF DR. ABRAMSON, MR. LEACH, AND MR. HOOD
SHOULD BE STRICKEN BECAUSE EACH CONTAINS NEW OPINIONS,
MANY OF WHICH CONTRADICT THEIR DEPOSITION TESTIMONY ................. 13

CONCLUSION ............................................................................................................... 18

1011020v.1

## <u>TABLE OF AUTHORITIES</u>

Page

### FEDERAL CASES

*Barrett v. Atlantic Richfield Co.*,
    95 F.3d 375 (5th Cir. 1996)..................................................................... 11

*Bridges v. Enterprise Products Co., Inc.*,
    551 F. Supp. 2d 549 (S.D. Miss. 2008) ...............................................7, 10, 11

*Fleming v. Verizon N.Y. Inc.*,
    No. 03-CIV-5639, 2006 U.S. Dist. LEXIS 68632 (S.D.N.Y. Sept. 25, 2006).................. 7, 8

*Hamburger v. State Farm Mutual Automobile Insurance Co.*,
    361 F.3d 875 (5th Cir. 2004)..................................................................7, 15, 17

*Lampe Berger USA, Inc. v. Scentier, Inc.*,
    No. 04-354-C-M2, 2008 U.S. Dist. LEXIS 60648 (M.D. La. Aug. 8, 2008) ...................... 8

*Pal v. N.Y. University*,
    No. 06 Civ. 5892, 2008 U.S. Dist. LEXIS 52620 (S.D.N.Y. July 10, 2008)...............8, 9, 11

*Robbins v. Ryan's Family Steak Houses East, Inc.*,
    223 F.R.D. 448 (S.D. Miss. 2004) ........................................................10, 12, 17

*Simmons v. Johnson*,
    No. 06-325-A-M2, 2008 U.S. Dist. LEXIS 11074 (M.D. La. Feb. 14, 2008) ................ 8, 17

*Vance v. United States*,
    No. 98-5488, 1999 U.S. App. LEXIS 14943 (6th Cir. June 25, 1999).........................15, 17

*Vaughn v. City of Lebanon*,
    18 F. App'x 252 (6th Cir. 2001)................................................................. 7

*Vujcevic v. Oglebay Norton Marine Services Co., L.L.C.*,
    No. 06-CV-14187, 2007 U.S. Dist. LEXIS 87015 (E.D. Mich. Nov. 27, 2007) ............ 8, 14

*Williams v. Gonzales*,
    No. 1:04-CV-342 2005 U.S. Dist. LEXIS 38838 (E.D. Tex. Dec. 14, 2005)............8, 12, 17

1011020v.1

Months after the deadline for witness disclosures, weeks after the deadline for filing dispositive motions and with just 30 days remaining before trial, Plaintiff has suddenly emerged with six new affidavits[1] – three of them from new witnesses who were never previously disclosed (let alone deposed) in this case.[2]  These affidavits purport to provide evidence on a wide range of matters, from the results of the VIGOR trial to what information was disclosed to the Louisiana Department of Health & Hospitals ("LDHH") regarding Vioxx – and according to Plaintiff, they demonstrate the existence of disputed issues of fact that bar summary judgment for Merck Sharp & Dohme Corp. ("Merck").  Plaintiff's untimely affidavits are a flagrant violation of the Federal Rules of Civil Procedure and the Court's scheduling orders – and Plaintiff does not even attempt to argue otherwise.  Moreover, there is no justification for Plaintiff's delay:  the new witnesses and affidavits all opine on matters that were live issues in this case long before the close of discovery.  Plaintiff's actions have but one purpose:  to sandbag Merck on the eve of trial with new evidence that Merck does not have sufficient time to analyze, challenge or rebut. Allowing Plaintiff to come in at this point and try to plug the holes revealed by Merck in its *Daubert* and dispositive motions would be grossly unfair and would turn the Court's scheduling order on its head.  The Court should not condone such improper tactics.  Instead, it should strike the new affidavits – and the State's Third Amended Witness List – and hold Plaintiff to the long-established and long-passed deadlines for fact and expert discovery in this case.

## BACKGROUND

The Court entered a scheduling order in this case in August 2009, setting an April 12, 2010 trial date.  (*See* Scheduling Order (attached as Ex. 1).)  The scheduling order required the

---

[1]     Plaintiff offers a seventh, short affidavit from Jeff Raymond, an employee of Unisys, regarding what data are available in Louisiana Medicaid claims files.  Merck believes that the information in this affidavit was already in the record and thus does not seek to exclude it.

[2]     Plaintiff purported to identify the witnesses in a "Third Amended Witness List" filed yesterday evening. Merck seeks to strike that witness list as well.

parties to file fact witness lists on November 16, 2009.  (*See* Scheduling Order.)  The court later approved a February 9, 2010 discovery deadline.  (*See* Corrected Pretrial Order No. 53 § II.A.)

The State's initial witness list included 70 witnesses as well as a generic category for "representatives of the Louisiana P&T committee."  (*See* Witness List (attached as Ex. 2).) Merck objected to the identification of a generic group of witnesses (*see* Letter from T. Sales to J. Dugan, Nov. 20, 2009 (attached as Ex. 3)), and after hearing argument on this issue in December, the Court gave the State additional time to name any witnesses from the LDHH Pharmacy & Therapeutics ("P&T") Committee.  The State amended its fact witness list on December 18, 2009, but instead of adding the names of specific P&T Committee members, it simply deleted any reference to that committee.  (*See* Second Am. Witness List (attached as Ex. 4).)  Discovery with respect to the parties' disclosed witnesses proceeded apace.  In total, the parties deposed 19 fact witnesses and 13 experts by the February 9, 2010 discovery deadline.

On February 9, 2010, the State's counsel indicated a desire to add fact witnesses and supplement expert reports.  (*See* E-mail from J. Dugan to T. Sales et al, Feb. 9, 2010 ("Feb. 9 E-mail") (attached as Ex. 5).)  The State's purported reasons to reopen discovery were that:  (1) it had not received call notes related to P&T Committee members until recently;[3] and (2) its expert reports were due prior to the majority of the depositions in this case.  Merck opposed Plaintiff's request.

On February 19, the parties filed *Daubert* and summary judgment motions based on the closed evidentiary record.  On March 9, 2010, in connection with its response to Merck's Motion For Summary Judgment, Plaintiff filed six affidavits:  four entirely new affidavits from members

---

[3]     Plaintiff did not request the call notes related to the P&T Committee members until December 15, 2009. (*See* Letter from D. Plymale to B. Barnett, Dec. 15, 2009 (attached as Ex. 6).)  At that time, Plaintiff specifically requested call notes for the 27 P&T Committee members by name.  (*Id.*)  Merck timely produced those call notes on January 8, 2010.  (*See* Letter from R. Rossel to D. Plymale, Jan. 8, 2010 (attached as Ex. 7).)  The State did not raise

1011020v.1

of the LDHH P&T Committee and two affidavits from previously designated, previously

deposed experts that supplement their prior reports and deposition testimony.  Just yesterday, the

State filed an untimely Third Amended Witness List, which lists the three P&T Committee

members as new witnesses (as well as several former P&T Committee members as "rebuttal

witnesses").

### A.      P&T Committee Member Affidavits

Plaintiff has submitted substantially identical affidavits from four former members of the

Louisiana P&T Committee:  Dr. Vincent Culotta, Dr. Richard Doskey, Dr. Brobson Lutz and

David Hood (who is also the former Secretary of LDHH).  In their affidavits, these individuals

all state that the "P&T Committee's primary concern was with" safety, not cost.  (*See* Aff. of

Vincent Culotta, M.D. ("Culotta Aff.") ¶ 4, Mar. 5, 2010 (attached to SBM Decl. as Ex. 58); Aff.

of Richard Doskey, M.D. ("Doskey Aff.") ¶ 4, Mar. 5, 2010 (attached to SBM Decl. as Ex. 59)

(same); Aff. of David Hood ("Hood Aff.") ¶ 5, Mar. 8, 2010 (attached to SBM Decl. as Ex. 77)

(same); Aff. of Brobson Lutz, M.D. ("Lutz Aff.") ¶ 4, Mar. 3, 2010 (attached to SBM Decl. as

Ex. 60) (the "P&T Committee's primary concern was with clinical aspects of safety and efficacy

of drugs").)  The affiants all further state that "Merck manipulated published literature to greatly

exaggerate the gastrointestinal (GI) benefits of Vioxx" (Culotta Aff. ¶ 9; Doskey Aff. ¶ 9; Hood

Aff. ¶ 11; Lutz Aff. ¶ 9), and that Merck "was aware that Vioxx significantly increased the risk

of serious cardiovascular harm" (Culotta Aff. ¶ 10; Doskey Aff. ¶ 10; Hood Aff. ¶ 12; Lutz Aff.

¶ 10).  The P&T Committee members claim that Vioxx was less safe, no more effective, and

more expensive than traditional NSAIDs.  (Culotta Aff. ¶ 12; Doskey Aff. ¶ 12; Hood Aff. ¶ 14;

Lutz Aff. ¶ 12.)  The affiants further state that these alleged facts were not shared with members

---

the possibility of supplemental fact witnesses and expert reports until February 9, 2010 – over a month later and on
the very day fact discovery closed.

of the P&T Committee, and that if they had been, the affiants "would not have supported the inclusion of Vioxx on the Preferred Drug List" and/or "would have recommended consideration by the Drug Utilization Review Board (DURB) of prospective edits to prevent the use of Vioxx in patients for whom Vioxx was not indicated." (Culotta Aff. ¶¶ 14-15; Doskey Aff. ¶¶ 14-15; Lutz Aff. ¶¶ 14-15; *see also* Hood Aff. ¶¶ 16, 19 (similar).)

Drs. Culotta, Doskey and Lutz were not disclosed on Plaintiff's witness list and thus were not subject to a deposition or any other discovery in this case. Mr. Hood was disclosed as a potential witness and was deposed.

Notably, the opinions Mr. Hood offers in his affidavit are contrary to his earlier deposition testimony. For example, while Mr. Hood now states that safety was more important than cost to the P&T Committee, he previously testified that Louisiana implemented a preferred drug list regime primarily to control costs, and that cost and efficacy were equally important to the P&T Committee. (*See* Dep. of David Hood ("Hood Dep.") 46:9-47:2, 69:17-70:3, Feb. 8, 2010 (attached as Ex. 8).) And while Mr. Hood now claims that no one disclosed the true risks of Vioxx to him or anyone on the P&T Committee, he conceded at his deposition that the potential cardiovascular risks of Cox-2 drugs, including Vioxx, *were* disclosed to the P&T Committee by Provider Synergies (*see id.* 116:22-118:8) and that Provider Synergies had even discussed the specific results of the VIGOR study (*see id.* 146:13-149:6). Similarly, Mr. Hood's claim that he "would have done everything within [his] power" to restrict coverage of Vioxx (Hood Aff. ¶ 18) is contradicted by his prior admission that he did not know of anything the State could have done beyond voting to remove Vioxx from the PDL to restrict access to the drug (*see* Hood Dep. 138:17-139:1). Finally, Mr. Hood's claim that he "would have approved the use of [DUR] edits" to "prevent the use of Vioxx in patients for whom Vioxx was not

4

indicated" (Hood Aff. ¶ 19) is called into question by Mr. Hood's admission at his deposition that he was not even aware of exactly how the DUR process worked (Hood Dep. 38:9-39:2).

**B.**   **Expert Affidavits**

1.   **Dr. John Abramson**

John David Abramson, M.D. was designated by Plaintiff in the fields of medicine and marketing.  He provided an expert report on November 5, 2009 and was deposed by Merck on January 11, 2010.  Merck has challenged Dr. Abramson's opinions in a pending *Daubert* motion. (*See* Mot. To Exclude The Test. Of John David Abramson, M.D., Feb. 19, 2010.)

Now, Dr. Abramson seeks to offer new, untimely opinions about:  Merck's supposed knowledge regarding the risks of Vioxx; the VIGOR study results; "the information provided by Merck . . . about Vioxx" to the P&T Committee; and the P&T Committee's "decisions about Vioxx."  (*See* Aff. of John Abramson, M.D. ("Abramson Aff.") ¶¶ 5, 10, 14, Mar. 9, 2010 (attached to SBM Decl. as Ex. 11).)  Dr. Abramson's affidavit also states that "the VIGOR trial showed that Vioxx was not only not safer than naproxen . . . but was actually significantly more dangerous."  (*Id.* ¶ 14.)  Dr. Abramson concludes that had the P&T Committee members known "the truth about the risks and benefits of Vioxx, they would have made Vioxx available to a miniscule subpopulation of Louisiana Medicaid recipients, if they made it available at all."  (*Id.* ¶ 39.)

2.   **Terry Leach**

Terry Leach is Plaintiff's "drug formulary" expert.  Like Dr. Abramson, he submitted an expert report on November 6, 2009.  He was deposed on January 22, 2010, and Merck moved to exclude his testimony in full on February 19.  (*See* Mot. To Exclude Testimony Of Terry D. Leach, Feb. 19, 2010.)

5

In his untimely affidavit, Mr. Leach states that the LDHH "P&T Committee's primary concern was with clinical aspects of safety and efficacy of drugs." (*See* Aff. of Terry D. Leach, Pharm.D. ("Leach Aff."), Mar. 8, 2010 (attached to SBM Decl. as Ex. 81), ¶ 4.) Mr. Leach further opines that the P&T Committee members' understanding that the "risks of Vioxx were outweighed by the benefits of the drug" was "based on incomplete and inaccurate information because critical information concerning the clinical risks and benefits of Vioxx were [sic] never made known to the public." (*Id.* ¶¶ 5-6.) Mr. Leach also states that "Merck consciously steered its sponsored research away from investigating" whether Vioxx "posed a cardiovascular risk." (*Id.* ¶ 12.) Mr. Leach further states that Merck failed to disclose that Vioxx was allegedly less safe and no more effective than traditional NSAIDs, "drugs which cost a fraction of the price of Vioxx." (*Id.* ¶ 13.) Mr. Leach concludes that if any of this information had been disclosed, the "P&T Committee . . . would not have included Vioxx on the LDHH PDL." (*Id.* ¶ 18.) Finally, he opines that if these alleged facts had been disclosed, "the LDHH DURB committee acting as a reasonable DURB would have implemented DUR prospective deny edits for Vioxx to restrict reimbursement for any patients not concomitantly taking corticosteroids." (*Id.* ¶ 25.)

Mr. Leach's affidavit conflicts in several ways with his prior opinions in this case. For example, contrary to his new opinion that Merck withheld risks from the Louisiana P&T Committee, Mr. Leach testified at deposition that he had not seen any evidence that he believed "shows Merck made any type of misrepresentation or provided misleading information to the P&T Committee of Louisiana." (Dep. of Terry D. Leach ("Leach Dep.") 105:22-106:4, Jan. 22, 2010 (attached as Ex. 9).) Similarly, Mr. Leach's new opinion that the P&T Committee members lacked sufficient information to properly evaluate Vioxx changes his prior sworn testimony, in which Mr. Leach admitted that he does not know "whether the right information was presented" to the P&T Committee (*id.* 73:1-74:15) and agreed that he does not "have any

6

opinion about what clinical data was or was not available about Vioxx or what should or should not have been available" (*id.* 89:21-90:2). Finally, Mr. Leach's new opinion that the P&T Committee would have kept Vioxx off the PDL or subjected Vioxx to a DUR program is contrary to his prior admission that he had no basis to conclude that Louisiana's P&T Committee would have done anything differently if more risk information had been available about the drug. (*Id.* 49:11-24, 102:21-103:3.)

## ARGUMENT

Federal Rule of Civil Procedure 37(c)(1) is intended "to prevent the practice of 'sandbagging' an opposing party with new evidence." *Fleming v. Verizon N.Y. Inc.*, No. 03-CIV-5639, 2006 U.S. Dist. LEXIS 68632, at *22 (S.D.N.Y. Sept. 25, 2006). Thus, absent a showing of "substantial justification" or that a tardy disclosure was "harmless," the proper course is to strike untimely affidavits. *See Vaughn v. City of Lebanon*, 18 F. App'x 252, 263 (6th Cir. 2001) (holding that trial court did not abuse its discretion in excluding expert affidavits at summary judgment stage where affidavits were submitted months after the deadline for disclosing experts had elapsed).

Courts in the Fifth Circuit normally consider four factors when deciding whether to preclude testimony under Rule 37: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)). Applying this standard, court after court has concluded that untimely affidavits should be stricken from the record in situations precisely like the one presented here. *See, e.g.*, *Bridges v. Enter. Prods. Co., Inc.*, 551 F. Supp. 2d 549, 555 (S.D. Miss. 2008) (concluding on post-trial motion that district court did not err by refusing to allow certain lay witnesses to testify

– pursuant to Rule 37 – where the "individuals were barred from testifying because they had not been identified as potential witnesses in discovery"); *Lampe Berger USA, Inc. v. Scentier, Inc.*, No. 04-354-C-M2, 2008 U.S. Dist. LEXIS 60648, at *18 (M.D. La. Aug. 8, 2008) (granting motion to strike supplemental report of previously disclosed expert); *Simmons v. Johnson*, No. 06-325-A-M2, 2008 U.S. Dist. LEXIS 11074, at *9-14 (M.D. La. Feb. 14, 2008) (granting motion to strike untimely supplemental report of previously disclosed expert because plaintiff failed to offer substantial justification for submitting the supplemental report after the discovery deadlines had passed and because introduction of the report would have prejudiced the defendant); *Williams v. Gonzales*, No. 1:04-CV-342 2005 U.S. Dist. LEXIS 38838, at *19 (E.D. Tex. Dec. 14, 2005) (refusing to consider late-designated witness and explaining that due to "counsel's failure to provide any explanation for the delay, and the prejudice to [the opposing party], the court will not consider [the] affidavit in ruling on the motion for summary judgment").[4]

For the reasons set forth below, Merck respectfully submits that this Court should do the same.

**I.     THE AFFIDAVITS OF DRS. CULOTTA, DOSKEY AND LUTZ SHOULD BE STRICKEN BECAUSE PLAINTIFF FAILED TO TIMELY DISCLOSE THESE WITNESSES.**

As noted above, Plaintiff provides affidavits from three new "fact witnesses" – Drs. Culotta, Doskey, and Lutz – who served on the LDHH P&T Committee.  These witnesses have never before appeared on any of Plaintiff's witness lists.  To the contrary, and as the Court is

---

[4]     Courts in other circuits have similarly stricken untimely witness disclosures and affidavits like those at issue here.  *See, e.g., Fleming*, 2006 U.S. Dist. LEXIS 68632, at *25-26 (granting motion to strike previously undisclosed fact witnesses' declarations); *Vujcevic v. Oglebay Norton Marine Servs. Co., L.L.C.*, No. 06-CV-14187, 2007 U.S. Dist. LEXIS 87015, at *5-10 (E.D. Mich. Nov. 27, 2007) (granting motion to strike supplemental report and affidavit of previously disclosed expert); *Pal v. N.Y. Univ.*, No. 06 Civ. 5892, 2008 U.S. Dist. LEXIS 52620, at *15 (S.D.N.Y. July 10, 2008) (granting motion to strike supplemental disclosure of lay witnesses where party failed to properly disclose the witnesses under Rule 26).

well aware, Plaintiff long ago disavowed any intent to rely on the testimony of P&T Committee members.  For the reasons set forth below, the Court should hold Plaintiff to that representation.

*First*, Plaintiff has not provided any justification for its failure to timely disclose the existence of these witnesses.  Nor could it.  Plaintiff has considered seeking testimony from P&T Committee members since it submitted its first witness list on November 16, 2009.  That list included 70 witnesses who were identified by name, as well as a generic category of witnesses who were identified merely as "representatives of the Louisiana P&T committee."  (*See* Witness List.)  In response to Merck's complaints to the Court regarding this generic designation, Plaintiff amended its fact witness list on December 18, 2009, deleting any reference to any P&T Committee members.  (*See* Second Am. Witness List.)  This decision signaled to Merck that Plaintiff no longer intended to rely on the testimony of any P&T Committee members.  Three months later, after the close of discovery and the submission of Merck's motion for summary judgment, Plaintiff seeks to change course – without any legitimate explanation or justification.

The closest Plaintiff has come to justifying its tardiness is its assertion over a month ago that additional witnesses were needed because it had only recently received call notes related to P&T Committee members.  But most of the opinions in the P&T Committee Members' affidavits have nothing whatsoever to do with call notes.  In any event, this justification is insufficient because Plaintiff should have disclosed in a timely manner the identity of any witnesses who "may" have been needed to support its case, even if it was not sure that it would ultimately rely on their testimony.  *See Pal v. N.Y. University*, No. 06 Civ. 5892, 2008 U.S. Dist. LEXIS 52620, at *13 (S.D.N.Y. July 10, 2008).

In *Pal*, the defendant identified fact witnesses after the close of discovery on the supposed ground that it had "only 'recently' signed a waiver which permitted [it] to disclose [the witnesses'] identities."  2008 U.S. Dist. LEXIS 52620, at *13.  The court rejected the new

9

witnesses, concluding that the defendant's explanation was "unavailing."  According to the court, Rule 26 "specifies that a party must disclose the names of any witness that the party 'may' use to support its claims or defenses."  *Id.*  Thus, the party "could have disclosed" "the fact that it hoped to call certain patients as witnesses if and when they signed waivers."  *Id.*  Instead, the defendant "steadfastly resisted" "discovery requests related to these patients."  *Id.*  The court concluded that "[b]y waiting until the final day of discovery to disclose their names, [the defendant] essentially sandbagged [the plaintiff].  This is precisely the type of conduct that Rule 37(c)(1) is meant to prevent."  *Id.*

Likewise, here, Plaintiff had ample time to disclose that it "may" rely on the testimony of Drs. Culotta, Doskey, and Lutz.  In fact, Plaintiff was repeatedly pressed for the identities of any P&T Committee members whom it intended to rely on at trial.  Obviously, Plaintiff knew long ago that all P&T Committee members could be of use to its case – as evidenced by its attempt to designate "representatives of the Louisiana P&T Committee" as a generic category of witnesses.  But after removing that generic description from its list, Plaintiff steadfastly refused to identify any such witnesses by name.  Now, in the thirteenth hour, Plaintiff has changed course.  Thus, as in *Pal*, Plaintiff's failure to offer any valid justification for its blatant violation of the Court's orders weighs strongly in favor of striking the affidavits.  *See Bridges*, 551 F. Supp. 2d at 556 (refusing to permit undisclosed lay witnesses to testify where party failed to provide any explanation as to why lay witnesses were not identified in discovery and did not seek leave to supplement discovery); *Robbins v. Ryan's Family Steak Houses East, Inc.*, 223 F.R.D. 448, 454 (S.D. Miss. 2004) ("[a]s Plaintiffs offer no explanation for the late designation, this factor favors striking" the designation).

***Second***, Plaintiff should be estopped from arguing that the testimony of the P&T Committee members is crucial to its case because of its dilatory tactics in procuring the

10

affidavits.  As noted above, Plaintiff waited until mere weeks before the trial setting to proffer the affidavits at issue; such conduct, on its face, indicates that the testimony is **not** critical to Plaintiff's case.  Even if it were, however, the U.S. Court of Appeals for the Fifth Circuit has noted that the claimed importance of untimely testimony "merely underscores the need for Plaintiffs to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not possible."  *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996).  Plaintiff has done neither.  For this reason too, the affidavits should be excluded.

*Third*, the potential prejudice to Merck from allowing Plaintiff to rely on the untimely affidavits would be substantial.  Just weeks away from trial, Plaintiff seeks to introduce new fact witnesses who have never before appeared on any of Plaintiff's witness lists – let alone been deposed.  Had these witnesses been disclosed in a timely fashion, Merck would have deposed them in the ordinary course of trial preparation – and their testimony would likely have affected Merck's depositions of other witnesses, as well as the arguments in Merck's dispositive and *Daubert* motions.  Allowing Plaintiff to proceed with its contrary approach – to wait until the dust has settled on discovery and pretrial briefing and then provide whatever evidence it thinks is missing from its case – would be grossly prejudicial.  Courts have repeatedly recognized in analogous situations that the prejudice that accompanies late designation of fact witnesses weighs strongly in favor of granting a motion to strike.  *E.g.*, *Bridges*, 551 F. Supp. 2d at 556 (reasoning that failure to timely identify lay witnesses resulted in prejudice because "Defendants did not have reason to know that these individuals would be called as witnesses and, therefore, to plan a defense"); *Pal*, 2008 U.S. Dist. LEXIS 52620, at *15 (party "would be prejudiced if the witness testimony were not struck because, among other things, discovery would have to be reopened so that [plaintiff] could seek the patients' medical records and depose them.  This

11

would not only further delay this almost-two-year-old case, but would impose further litigation costs[.]").

      ***Finally***, the prejudice cannot be repaired by a continuance.  To the contrary, a continuance would merely exacerbate the prejudice wrought by Plaintiff's improper tactics.  A year ago, Plaintiff was pressing for an earlier trial date on the ground that it was ready to try its case.  (*See* Tr. 48:18-20, Mar. 27, 2009 ("From the plaintiffs' perspective, we think these cases will be ready for trial in November [2009], and we would like to not wait . . . .").)  Now that the trial date is actually here, Plaintiff is attempting to derail it, by offering new theories and new witnesses that would require new discovery, new depositions and even new *Daubert* motions. Granting a continuance under such circumstances would establish a dangerous precedent by suggesting to litigants that any time they do not want to proceed with a trial date, all they need to do is conjure up new witnesses or new "evidence."  *See Robbins*, 223 F.R.D. at 454 (excluding supplemental expert testimony and noting that violation of scheduling order should not routinely result in a continuance); *Williams*, 2005 U.S. Dist. LEXIS 38838, at *19 ("a court should not condone dilatory conduct by routinely extending the deadline to designate" witnesses).  This Court should not tolerate such a manipulation of the basic rules of civil procedure.

      In sum, court after court has responded to conduct like Plaintiff's here by striking untimely witness designations.  As these courts have recognized, any other approach would encourage parties to ignore the Federal Rules of Civil Procedure and appear with new evidence every time they seek to continue a trial date.  Because Plaintiff has no legitimate reason for its late-in-the-day barrage of new evidence and because its strategy would cause Merck grave prejudice and jeopardize the trial date in this case, the affidavits should be stricken, and Plaintiff should be barred from relying on any fact witnesses who were not designated in a timely manner.

12

## II.      THE AFFIDAVITS OF DR. ABRAMSON, MR. LEACH, AND MR. HOOD SHOULD BE STRICKEN BECAUSE EACH CONTAINS NEW OPINIONS, MANY OF WHICH CONTRADICT THEIR DEPOSITION TESTIMONY.

Plaintiff has also offered affidavits from three witnesses who *were* previously disclosed and deposed:  Dr. Abramson, Mr. Leach, and Mr. Hood.  With respect to these witnesses, Plaintiff essentially seeks to buttress the record – to "fix" some of their deposition testimony that was not helpful to Plaintiff's position and to add new opinions based on the arguments in Merck's motion for summary judgment.  Court after court has concluded that such materials must be stricken from the record.  This Court should do the same.

*First*, as with its newly disclosed fact witnesses, Plaintiff has offered no valid justification for the untimely affidavits.  At best, Plaintiff could rely on the assertion it made over a month ago to this Court – that additional opinions were needed because its expert reports were due prior to the majority of the depositions in this case.  (Feb. 9 E-mail.)  But that is no justification at all.  Merck filed a motion to dismiss in *June 2009* that made many of the arguments set forth in its motion for summary judgment.  Thus, Plaintiff has known for at least nine months that Merck intended to rely on the theory that Plaintiff could not prove causation because federal law required LDHH to reimburse at least some Vioxx prescriptions as long as the drug was FDA-approved.  Nonetheless, Plaintiff waited until now to attempt to develop testimony responding to that argument.  Dr. Abramson, for example, states in his supplemental affidavit that he believes "Merck's actions . . . deprived the members of the [Louisiana] P&T Committee" of the ability to make "reasoned and balanced decisions about the risks and benefits of Vioxx."  (Abramson Aff. ¶ 39.)  According to Dr. Abramson, had the P&T Committee members known "the truth about the risks and benefits of Vioxx, they would have made Vioxx available to a miniscule subpopulation of Louisiana Medicaid recipients, if they made it available at all."  (*Id.*)  There is absolutely no reason why Dr. Abramson could not have reached these

13

(flawed) conclusions earlier.  Indeed, other than the untimely P&T Committee member affidavits discussed in Section I, all the materials on which he relies for his supplemental affidavit have been available to him for months, if not years.

Mr. Leach's affidavit similarly addresses the causation issue – which Plaintiff has known about for months.  Mr. Leach attests, for example, to "the understanding by LDHH P&T Committee members" that "the risks of Vioxx were outweighed by the benefits of the drug." According to Mr. Leach, the P&T Committee's decisions were "based on incomplete and inaccurate information because critical information concerning the clinical risks and benefits of Vioxx were [sic] never made known to the public."  (Leach Aff. ¶¶ 5-6.)  Notably, 19 of the 27 documents on which he relies were available when he submitted his expert report; the others are the untimely affidavits that should be stricken for the reasons set forth in Section I above and a few deposition and deposition exhibits.

Finally, Mr. Hood now seeks to testify – like the other P&T Committee members – that he would not have approved Vioxx for placement on Louisiana's PDL (Hood Aff. ¶ 16) or approved coverage for the drug at all (*id.* ¶ 17) if he had been aware of the drug's alleged risks. Again, Plaintiff has known for many months that Merck was pursuing a causation theory that attacked P&T Committee members' reliance on Merck's representations regarding the safety and efficacy of Vioxx.  Thus, Plaintiff's failure to timely supplement Mr. Hood's testimony is similarly inexcusable.

In sum, "there is no justifiable reason" why these witnesses could not have offered the very same testimony months ago – long before the close of discovery and long before Merck filed its motion for summary judgment.  *See Vujcevic*, 2007 U.S. Dist. LEXIS 87015, at *7.  For this reason alone, their affidavits should be stricken.  *Id.* at *10.

14

***Second***, Plaintiff should be estopped from arguing that the supplemental testimony of Dr. Abramson, Mr. Leach, and Mr. Hood is crucial to its case.  As set forth above, "the importance of proposed [expert] testimony cannot singularly override the enforcement of local rules and scheduling orders."  *Hamburger*, 361 F.3d at 883 (citation and internal quotations omitted). Because Plaintiff has "simply dilly-dallied too long," any argument that the affidavits are too important to strike should be soundly rejected by the Court.  *Vance v. United States*, No. 98-5488, 1999 U.S. App. LEXIS 14943, at *15 (6th Cir. June 25, 1999).

***Third***, Merck would be severely prejudiced if the Court allowed Plaintiff to rely on the supplemental affidavits.  Merck has already invested considerable time and energy in deposing Plaintiff's experts, preparing its dispositive and *Daubert* motions, and readying itself to address their testimony should the case proceed to trial.  Now Plaintiff seeks to go back and "fix" these experts' prior testimony with contradictory statements that Plaintiff hopes will save it from summary judgment.  This result would be grossly prejudicial to Merck.  If Plaintiff had provided all of its experts' purported opinions in a timely manner, Merck's counsel would have asked these experts different questions at their depositions and shown them different exhibits.  Merck's own experts may well have provided different opinions as well, and Merck would have addressed the new opinions in its now-pending *Daubert* motions.  It is hard to think of a more tangible example of prejudice than allowing experts to provide new opinions after they have been deposed and after the deadline for *Daubert* motions has passed.

As set forth above, Plaintiff's "formulary expert," Mr. Leach, seeks to change his testimony that he had not seen any evidence that "shows Merck made any type of misrepresentation or provided misleading information to the P&T Committee of Louisiana." (Leach Dep. 105:22-106:4.)  Instead, he now claims that Merck failed to provide relevant information to the Louisiana P&T Committee regarding, *inter alia*, the alleged known

15

cardiovascular risks of Vioxx, and that "the understanding by LDHH P&T Committee members" that "the risks of Vioxx were outweighed by the benefits of the drug" was "based on incomplete and inaccurate information because critical information concerning the clinical risks and benefits of Vioxx were [sic] never made known to the public." (Leach Aff. ¶¶ 5-6.) Mr. Leach also stated unequivocally at his deposition that he had no basis to conclude that Louisiana's P&T Committee would have done anything differently had more risk information about Vioxx been available (Leach Dep. 102:21-103:3) and that he was not offering any opinions regarding any DUR program (*see id.* 49:11-24). Now, he purports to opine that if the alleged facts about the risks of Vioxx had been disclosed, "the LDHH DURB committee acting as a reasonable DURB would have implemented DUR prospective deny edits for Vioxx to restrict reimbursement for any patients not concomitantly taking corticosteroids." (Leach Aff. ¶ 25.)

The same is true of Mr. Hood. At his deposition, Mr. Hood testified without ambiguity that Louisiana implemented a preferred drug list regime primarily to control costs and that cost and efficacy were equally important to the P&T Committee in deciding which drugs to put on the PDL. (*See* Hood Dep. 46:9-47:2, 69:17-70:3.) Mr. Hood also admitted at his deposition that he has no evidence that LDHH was misled in any way regarding Vioxx (*id.* 26:8-27:4) and that he did not know how the DUR program worked. All that has apparently changed. Mr. Hood now states in his affidavit that the "P&T Committee's primary concern was with clinical aspects of safety and efficacy of drugs" and that "[c]ost considerations were only applicable where there were competing drugs that were believed to be of comparable risk and benefit." (Hood Aff. ¶ 5.) He further states that he would not have approved Vioxx for placement on Louisiana's PDL (*id.* ¶ 16) or approved coverage for the drug at all (*id.* ¶ 17) if he had been aware of the drug's alleged risks. And he even goes so far as to claim that he "would have approved the use of [DUR] edits" to "prevent the use of Vioxx in patients for whom Vioxx was not indicated" (Hood

16

Aff. ¶ 19).  This contention runs headlong into his prior statement that he did not even know how the DUR program worked.  Given the stark contradictions between Mr. Hood's affidavit and his deposition testimony (which occurred just a month before the filing of his affidavit), the only possible explanations are:  (1) that he lacks personal knowledge of the matters attested to in his affidavit; or (2) that he conducted an exhaustive review of LDHH procedures and Vioxx clinical information in the brief period since he was deposed.

As other courts have recognized, disruption of an opponent's preparation – let alone utter disregard for a court's scheduling orders – constitutes sufficient prejudice to strike untimely affidavits and reports.  *See Simmons*, 2008 U.S. Dist. LEXIS 11074, at *16 n.8 (observing that disruption of the "court's schedule and the opponent's preparation" is "prejudicial"); *Vance*, 1999 U.S. App. LEXIS 14943, at *17-18 (stating that late submission of supplemental expert report was not harmless because the "defendant did not know what other opinions the expert would state until the supplement was filed" and "would have virtually no opportunity to depose the expert" because the discovery cut-off date had come and gone).  This case is no different, and this Court should do the same.

**Fourth**, as with Plaintiff's untimely disclosure of new fact witnesses, the prejudice wrought by the supplemental affidavits cannot be repaired by a continuance.  As the court recognized in *Hamburger*, rewarding a party that violates scheduling orders with a continuance would send a message that "the failure to satisfy the rules would never result in exclusion."  361 F.3d at 884.  *See also Robbins*, 223 F.R.D. at 454 (excluding supplemental expert testimony and noting that violation of scheduling order should not routinely result in a continuance); *Williams*, 2005 U.S. Dist. LEXIS 38838, at *19 ("a court should not condone dilatory conduct by routinely extending the deadline to designate" witnesses).  For this reason too, the affidavits should be stricken.

In sum, Plaintiff's last-minute effort to sandbag Merck with additional and contradictory expert and lay testimony is wholly unjustified, and if countenanced by the Court, would be grossly prejudicial.  For all of these reasons, the affidavits of Dr. Abramson, Mr. Leach, and Mr. Hood should be stricken.

## CONCLUSION

For the foregoing reasons, Merck's motion to strike should be granted.

Dated: March 16, 2010                                   Respectfully submitted,


                                                        /s/Dorothy H. Wimberly
                                                        Phillip A. Wittmann, 13625
                                                        Dorothy H. Wimberly, 18509
                                                        STONE PIGMAN WALTHER
                                                           WITTMANN LLC
                                                        546 Carondelet Street
                                                        New Orleans, LA 70130
                                                        Phone: (504) 581-3200
                                                        Fax:    (504) 581-3361

                                                        Defendants' Liaison Counsel

18

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Motion to Strike has been served on Liaison Counsel by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Plaintiff, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 16th day of March, 2010.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

19