# EXHIBIT 9

Confidential - Subject to Protective Order

```
                                                               Page 1
 1       IN THE UNITED STATES DISTRICT COURT
 2     FOR THE EASTERN DISTRICT OF LOUISIANA
 3                   -  -  -
     In Re:  VIOXX Products :  MDL No. 1657
 4   Liability Litigation   :
                            :
 5                          :
     This Document Relates  :
 6   to:                    :  Section L
                            :
 7   STATE OF LOUISIANA, ex :
     rel. JAMES D.          :  Judge Eldon
 8   CALDWELL, JR.,         :  E. Fallon
     Attorney General       :
 9                          :
          v.                :  Magistrate
10                          :  Judge Knowles
     MERCK SHARP & DOHME    :
11   CORP.                  :  Case No.
                            :  05-3700
12
                    CONFIDENTIAL -
13          SUBJECT TO PROTECTIVE ORDER
14                      -  -  -
15               January 22, 2010
16                      -  -  -
17              Expert oral deposition of
     TERRY D. LEACH, PHARM.D., taken pursuant
18   to notice, was held at the law offices of
     Lieff, Cabraser, Heimann & Bernstein, LLP,
19   250 Hudson Street, Eighth Floor, New York,
     New York, beginning at 9:11 a.m., on the
20   above date, before Kimberly A. Cahill, a
     Federally Approved Registered Merit
21   Reporter and Notary Public.
22                      -  -  -
23            GOLKOW TECHNOLOGIES, INC.
        877.370.3377 ph | 917.591.5672 fax
24               deps@golkow.com
```

Confidential - Subject to Protective Order

Page 49

```
 1         Q.    Have you ever served on a P
 2   & T Committee?
 3         A.    Yes.
 4         Q.    Which P & T Committee have
 5   you served on?
 6         A.    Riverside Methodist
 7   Hospital's in Columbus, Ohio; MAMSI
 8   Health Plan's; Horizon Blue Cross/Blue
 9   Shield of New Jersey; WIN Healthcare; and
10   Fidelis Care, my current employer.
11         Q.    We're going to go through
12   the report in detail today, but in my
13   review of it, it does not seem to
14   indicate that there's any comment on the
15   Drug Utilization Review Board or any
16   operations of the DUR in Louisiana; is
17   that correct?
18         A.    That's correct.
19         Q.    You are not offering any
20   opinion about the DUR process in
21   Louisiana or about the DUR process
22   specifically with regard to COX-2's in
23   Louisiana; is that correct?
24         A.    That's correct.
```

Confidential - Subject to Protective Order

Page 73

```
 1        A.    I understand his opinion to
 2   be that there was adequate information
 3   presented to the P & T Committee
 4   discussing cardiovascular side effects
 5   and I don't know that he or I, either
 6   one, know whether the right information
 7   was presented at that time.
 8              Some of that information --
 9   it's my understanding that some of that
10   information, you know, discusses certain
11   side effects, but does not get into the
12   specifics of the study or the -- you
13   know, what it means to have clinical
14   evidence, so it's just a differing of
15   opinion.
16        Q.    Okay.
17              But you do not have an
18   opinion, I take it, from that answer --
19   we'll go through the specifics on the
20   review list -- but you do not have an
21   opinion or a basis to form an opinion as
22   to whether or not there was any
23   misleading or inaccurate information
24   given with regard to Vioxx to the P & T
```

Confidential - Subject to Protective Order

Page 74

```
 1     Committee of Louisiana.
 2          A.    No.
 3          Q.    Double negatives can be
 4     tricky.  That is a correct statement?
 5          A.    Correct.
 6          Q.    So the record is clear, you
 7     are not offering any opinion as to
 8     whether the Provider Synergies monographs
 9     were accurate with regard to Vioxx.
10          A.    No.
11          Q.    No opinion that Merck or
12     Provider Synergies provided inaccurate or
13     misleading information to the P & T
14     Committee about Vioxx.
15          A.    No.
16          Q.    Have you ever written any --
17     have you ever had any article published?
18          A.    Yes.
19          Q.    What article?
20          A.    It's been awhile.  I'll have
21     to let you know, because I don't recall.
22          Q.    It's not listed on your
23     C.V.?
24          A.    No.
```

Confidential - Subject to Protective Order

Page 89

1   drug manufacturers or not made available
2   in a timely fashion, P & T Committees may
3   recommend covering medications that are
4   not in the best interest of the TPP or
5   their beneficiaries."
6        A.   Yes.
7        Q.   Do you have -- first of all,
8   you don't, again, know what information
9   was or was not relied upon by Provider
10  Synergies or the P & T Committee in
11  Louisiana; correct?
12       A.   Correct.
13       Q.   You do know that the FDA
14  labeling and FDA findings are important
15  for P & T Committees and PBMs; correct?
16       A.   Yes.
17       Q.   You do know that they would
18  have had access to that information about
19  Vioxx.
20       A.   Correct.
21       Q.   And you don't have any
22  opinion about what clinical data was or
23  was not available about Vioxx or what
24  should or should not have been available;

Confidential - Subject to Protective Order

Page 90

```
 1    correct?
 2          A.    No.
 3          Q.    You would agree, sir, that
 4    by 2008, four years after Vioxx had been
 5    withdrawn from the market, that this was
 6    a highly publicized scientific debate
 7    about COX-2 inhibitors and NSAIDs and
 8    potential cardiovascular risk and
 9    potential GI risk; that this was one of
10    the most heavily debated and looked at
11    issues that you've experienced?
12          A.    I would agree.
13          Q.    And that P & T Committees
14    and PBMs were very aware of those issues
15    by that time, if not earlier.
16          A.    They were aware, yes.
17          Q.    Do you know whether or not
18    -- let me strike that.
19                Do you know what the current
20    recommendations are for New York Medicaid
21    with regard to COX-2 inhibitors?
22          A.    I do not.
23          Q.    Do you know what current
24    recommendations are in Louisiana?
```

Confidential - Subject to Protective Order

Page 102

```
 1   managers to provide the clinical
 2   information to the Pharmacy &
 3   Therapeutics Committee for them to render
 4   a decision as to what drugs go on the
 5   formulary, the preferred drug list.
 6           Q.   And that's the -- that's the
 7   totality of your opinion?
 8           A.   Yeah.  And if the
 9   information is not accurate and complete
10   and that information is not presented to
11   the P & T Committee, then the P & T
12   Committee may make different decisions.
13                P & T can only make
14   decisions with the information they are
15   provided.
16           Q.   And you've done no
17   connecting of that general opinion to the
18   facts of the case in Louisiana; is that
19   correct?
20           A.   That's correct.
21           Q.   And you have no basis to, in
22   fact, offer an opinion that the --
23   Louisiana Medicaid would have taken any
24   different regulatory action with regard
```

Confidential - Subject to Protective Order

Page 103

```
 1   to Vioxx but for some event or but for
 2   some information.
 3            A.    Correct.
 4                      -  -  -
 5                 (Deposition Exhibit No.
 6            Leach-5, "Nonsteroidal
 7            Anti-inflammatories (NSAIDs)
 8            Review," MERCK-VIOXX-00793 through
 9            MERCK-VIOXX-00809, was marked for
10            identification.)
11                      -  -  -
12   BY MR. SALES:
13            Q.    Mr. Leach, Exhibit 5 to your
14   deposition is one of the reference
15   documents on Exhibit 4, specifically it's
16   number 2, which was the exhibit from Mr.
17   Bearden's deposition.
18            A.    Yes.
19            Q.    Do you recall that?
20            A.    I do.
21            Q.    Did you review this
22   document?
23            A.    I did.
24            Q.    Do you have any opinion at
```

Page 105

```
 1   cardiovascular risk and GI toxicity were,
 2   in fact, discussed in the monograph.
 3        A.    Yes, I do.
 4        Q.    But other than having
 5   reviewed it in its typical type of
 6   formatting and information for a
 7   monograph, you do not have any basis to
 8   say that there's anything false or
 9   misleading about this monograph.
10        A.    Not by information seen as
11   part of this case.
12        Q.    Not in your role as an
13   expert opinion, you do not have any basis
14   to say that this is false or misleading.
15        A.    No.
16        Q.    Do you know whether or not
17   anyone other than Provider Synergies at
18   the P & T meetings would actually make
19   presentations about clinical information
20   about drug classes being reviewed?
21        A.    I'm not aware of any.
22        Q.    I take it you have not seen
23   nor been provided any information that
24   you believe shows that Merck made any
```

Confidential - Subject to Protective Order

Page 106

```
 1   type of misrepresentation or provided
 2   misleading information to the P & T
 3   Committee of Louisiana.
 4          A.    I have not.
 5          Q.    You can put that aside.
 6                Another reference point, I'm
 7   not going to mark, is just the deposition
 8   of Ben Bearden.  You reviewed it, but to
 9   the extent anything -- you don't have any
10   disagreement with anything Mr. Bearden
11   says.
12          A.    No, no reason to disbelieve
13   that.
14          Q.    By the way, on the reference
15   list, you -- on number 4, you put the
16   AMCP format as of October 2009.
17                Do you know whether or not
18   there were any changes from the 2009
19   version to whatever was in effect back in
20   the early 2000s?
21          A.    There were some changes,
22   yes.
23          Q.    Do you recall what they
24   were?
```