**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: VIOXX Products Liability Litigation | * | |
| This Document Relates to: | * | MDL No. 1657 |
| STATE OF LOUISIANA, *ex rel.* JAMES D. CALDWELL, JR., Attorney General, | * | SECTION L |
| | * | JUDGE ELDON E. FALLON |
| Plaintiff, | * | |
| versus | * | MAGISTRATE JUDGE KNOWLES |
| MERCK SHARP & DOHME CORP., | * | |
| Defendant. | * | |
| Case No. 05-3700. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* NO. 12, TO EXCLUDE TESTIMONY OR ARGUMENT REGARDING REPORTS PREPARED BY NICHOLAS JEWELL**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ........ 1

**ARGUMENT** ........ 2

I. **CONTRARY TO PLAINTIFF'S ASSERTION, THE COURT HAS NOT PREVIOUSLY RULED THAT PROFESSOR JEWELL'S REPORTS ARE A SUITABLE BASIS FOR EXPERT OPINION OR PERMITTED EXPERTS TO SERVE AS A MOUTHPIECE FOR ANOTHER'S OPINION.** ........ 2

II. **PROFESSOR JEWELL'S REPORTS ARE NOT A SUITABLE BASIS FOR EXPERT OPINION.** ........ 4

III. **PLAINTIFF'S EXPERTS MAY NOT SERVE AS A CONDUIT FOR PROFESSOR JEWELL'S OPINIONS.** ........ 7

**CONCLUSION** ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*02 Micro International Ltd. v. Monolithic Power Systems,*
420 F. Supp. 2d 1070 (N.D. Cal. 2006) .......... 10

*6816.5 Acres of Land etc. v. United States*,
411 F.2d 834 (10th Cir. 1969) .......... 8

*Am. Key Corp. v. Cole Nat'l Corp.*,
762 F.2d 1569 (11th Cir. 1985) .......... 8

*Barnett v. Merck*,
MDL No. 1657, Case No. 2:06cv485 .......... 3

*Bryan v. John Bean Div. of FMC Corp.*,
566 F.2d 541 (5th Cir. 1978) .......... 10

*Daubert v. Merrell Dow Pharms.*,
951 F.2d 1128 (9th Cir. 1991) .......... 4

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579(1993) .......... 7

*Dura Automobile Sys. of Indiana, Inc. v. CTS Corp.,*
285 F.3d 609 (7th Cir. 2002) .......... 8

*Eberli v. Cirrus Design Corp.,*
615 F. Supp. 2d 1357 (S.D. Fla. 2009) .......... 10, 11

*Kelley v. Am. Heyer-Schulte Corp.*,
957 F. Supp. 873 (W.D. Tex. 1997) .......... 4

*McClain v. Metabolife Int'l, Inc.*,
401 F.3d 1233 (11th Cir. 2005) .......... 7

*Ohio Environmental Development v. Envirotest Systems,*
478 F. Supp. 2d 963 (N.D. Ohio 2007) .......... 9

*Plunkett v. Merck & Co. (In re Vioxx Prods. Liab. Litig.),*
401 F. Supp. 2d 565 (E.D. La. 2005) .......... 2, 3

*Robinson v. Ford Motor Co.*,
967 F. Supp. 482 (M.D. Ala. 1997) .......... 8

*Soden v. Freightliner Corp.,*
714 F.2d 498 (5th Cir. 1983) .......... 4

*Taylor v. B. Heller and Co.*,
364 F.2d 608 (6th Cir. 1966) .......... 8

*United States v. Frazier,*
387 F.3d 1244 (11th Cir. 2004) .......... 7

*United States v. Marine Shale Processors,*
81 F.3d 1361 (5th Cir. 1996) .......... 4

*Weiss v. Allstate Insurance Company*,
512 F. Supp. 2d 463 (E.D. La. 2007) .......... 9

## Rules

Fed. R. Evid. 702 .......... passim
Fed. R. Evid. 703 .......... passim
Fed. R. Evid. 802 .......... 1

**INTRODUCTION**

Merck's Motion *in Limine* No. 12 requests that the Court exclude testimony and argument about reports prepared by Plaintiff's non-testifying statistician, Professor Nicholas Jewell. These reports[1] are plainly hearsay and therefore inadmissible under Federal Rule of Evidence 802. While Plaintiff does not dispute that the reports are hearsay, it maintains that Professor Jewell's reports can serve as a proper basis for expert opinion under Rule 703, which permits an expert to rely upon otherwise inadmissible hearsay evidence if it is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences." Fed. R. Evid. 703. Specifically, Plaintiff's experts John MacGregor, Neil Julie and David Y. Graham each recite conclusions and opinions gleaned from Professor Jewell's reports in their own expert reports and seek to testify to those opinions at trial.

As set forth below, Plaintiff has failed to demonstrate that Professor Jewell's reports, prepared expressly and exclusively for litigation in this MDL proceeding, constitute data or information of a type on which medical or scientific experts would reasonably rely. In addition, Plaintiff has failed to show that testimony about Professor Jewell's reports is permissible expert opinion. Rule 702 requires that expert opinion assist the trier of facts, and federal courts have routinely held that testimony that serves merely as the conduit for the opinions of another, non-testifying expert does not fulfill this purpose.[2] The proposed testimony by Plaintiff's experts that

---

1 As noted in Merck's opening brief, the specific reports at issue include a 2-page report entitled "Analysis of Rates of Occurrence of Confirmed and Complicated PUBs in Vioxx Clinical Trials" ("PUBs Analysis"), attached to Mem. in Supp. of Def.'s Mot. *in Limine* No. 12 to Exclude Test. or Argument Regarding Reports Prepared by Nicholas Jewell ("Def.'s Mot.") as Ex. A; "Analysis of Vioxx Data From the APPROVe, VICTOR & ViP Studies – Protocol 203, Exhibit A to the Supplemental Expert Report of John W. Farquhar, M.D., *In re Vioxx Prods. Liab. Litig.* (*Dedrick v. Merck & Co.*)" ("Jewell Report"), attached to Def.'s Mot. as Ex. B; 6/21/06 Jewell Rebuttal Expert Witness Report ("Jewell Rebuttal Report"), attached to Def.'s Mot. as Ex. C.

2 Merck has discussed this issue at length in its *Daubert* motions regarding David Y. Graham, Neil Julie and James MacGregor, which are hereby incorporated by reference. *See* Def.'s Mem. of Law in Supp. of its Mot. to Exclude the Test. of David Y. Graham, M.D. (Expert Challenge No. 4) (filed Feb. 19, 2010); Def.'s Mem. of Law in Supp. of its Mot. to Exclude the Test. of Neil L. Julie, M.D. (Expert Challenge No. 5) (filed Feb.19, 2010); Mem. in

will merely parrot Professor Jewell's opinions comes within this prohibition and therefore must be excluded.

## ARGUMENT

### I. CONTRARY TO PLAINTIFF'S ASSERTION, THE COURT HAS NOT PREVIOUSLY RULED THAT PROFESSOR JEWELL'S REPORTS ARE A SUITABLE BASIS FOR EXPERT OPINION OR PERMITTED EXPERTS TO SERVE AS A MOUTHPIECE FOR ANOTHER'S OPINION.

In an effort to short-circuit the Court's examination of the issues presented by Merck's motion *in limine,* Plaintiff contends that the Court has already ruled on these matters in prior Vioxx cases. In fact, neither of the rulings cited by Plaintiff reaches the question of whether Professor Jewell's attorney-commissioned reports constitute facts or data "of a type reasonably relied upon by experts." *See* Fed. R. Evid. 703. Nor has the Court previously ruled that a designated expert may serve as the mouthpiece for the opinions of non-testifying experts.

Plaintiff claims that in *Plunkett I*, the Court permitted Professor Wayne Ray to testify based on the biostatistical report of Richard Kronmal, who was a non-testifying consultant in that case. (Pl.'s Opp'n at 2.) However, the Court's decision did not address Professor Ray's use of Professor Kronmal's report. Instead, it expressly recounted the wide range of sources on which Professor Ray relied in reaching his opinion about short-term use of Vioxx: "Professor Ray points to the raw data of these studies as support for his conclusion. Professor Ray is qualified to make an analogy *based upon all these tests* that short-term Vioxx use can cause adverse cardiovascular effects." *See Plunkett v. Merck & Co. (In re Vioxx Prods. Liab. Litig.),* 401 F. Supp. 2d 565, 586 (E.D. La. 2005) (emphasis added).

Here, by contrast, Dr. MacGregor provides no source other than Professor Jewell's Rebuttal Report for his opinion that "Protocol 203 demonstrated a statistically significant

---

Supp. of Mot. of Merck, Sharp & Dohme Corp. ("Merck") to Exclude Test. of John S. MacGregor, M.D., Ph.D. (Expert Challenge No. 8) (filed Feb. 19, 2010).

increased risk of cardiac events on Vioxx compared to placebo." (Report of John S. MacGregor, M.D., Ph.D. Regarding the Cardiovascular Effects of Vioxx (Nov. 6, 2009) ("MacGregor Rpt."), attached as Ex. A, at 6 & n.10.) Similarly, Dr. Julie merely repeats the opinion of Professor Jewell that "the difference between Vioxx and Naproxen in the occurrence of confirmed complicated PUBs [perforations, ulcers, bleeds] appears to be entirely due to the effects within steroid users." (PUBs Analysis at 1; Report of Neil L. Julie, M.D. ("Julie Rpt."), attached as Ex. B, at ¶ 34.) The propriety of such pat recitations of another's opinion were not addressed by the Court in its *Plunkett* ruling, and that ruling gives no guidance here.

Plaintiff also portrays the Court's July 6, 2006 ruling in *Barnett* as a determination "that Dr. Jewell's report was suitable for another expert to rely upon and thus came within the scope" of Rule 703. (Pl.'s Opp'n at 2-3.) But the Court's *Barnett* ruling merely held that Professor Jewell could not testify as a rebuttal witness because he had not been timely designated. (*Barnett v. Merck,* MDL No. 1657, Case No. 2:06cv485, 7/6/06 Hearing Tr., attached as Ex. C, at 82:22-83:2.) Contrary to Plaintiff's assertion, nowhere in the hearing does the Court determine that Professor Jewell's reports are a suitable basis for another expert's opinion.[3] Nor does the Court reach the question of the propriety of one expert merely repeating opinions set forth in Professor Jewell's reports. Thus the Court's previous rulings are not determinative of the issues raised by Merck's motion.

[3] Plaintiff's argument to the contrary rests upon the Court's statement that Rule 703 would allow Dr. Farquhar "to explain that situation and deal with it." (*Id.* at 83:1-2.) Given the array of issues before the Court at the *Barnett* hearing, the import and meaning of the Court's statement are unclear. The statement cannot properly be taken, by itself, to endorse testimony simply repeating Professor Jewell's opinions, in contravention of well-settled case law. As Dr. Farquhar did not testify in *Barnett*, the Court's intended meaning was not clarified.

## II. PROFESSOR JEWELL'S REPORTS ARE NOT A SUITABLE BASIS FOR EXPERT OPINION.

The central issue before the Court on Merck's motion *in limine* is whether Professor Jewell's reports constitute facts or data "of a type reasonably relied upon by experts in the particular field," such that they are an appropriate basis for expert opinion despite being inadmissible hearsay evidence. Fed. R. Evid. 703. As Merck demonstrated in its opening brief, as well as in its *Daubert* motions to exclude testimony by Drs. MacGregor, Julie and Graham, none of the Jewell reports meets this standard. Each is a reanalysis of epidemiological studies that was done expressly and exclusively for litigation purposes; none has been published or peer reviewed; and all lack indicia of trustworthiness, such as adequate documentation or full explanation of Professor Jewell's methodologies. Taken in concert, these facts render the reports unreliable under *Daubert*. *See, e.g.*, *Daubert v. Merrell Dow Pharms., Inc.*, 951 F.2d 1128, 1130-31 (9th Cir. 1991), *overruled on other grounds by* 509 U.S. 579 (1993) (overruling *Frye*) ("[T]he reanalysis of epidemiological studies is generally accepted by the scientific community only when it is subjected to verification and scrutiny by others in the field. . . . Plaintiffs' reanalyses do not comply with this standard; they were unpublished, not subjected to the normal peer review process, and generated solely for use in litigation." (citation omitted)); *Kelley v. Am. Heyer-Schulte Corp.*, 957 F. Supp. 873, 879 (W.D. Tex. 1997) (excluding expert testimony based on unpublished reanalysis).

Plaintiff attempts to refute Merck's showing by citing to *United States v. Marine Shale Processors,* 81 F.3d 1361 (5th Cir. 1996).[4] But *Marine Shale Processors* held merely that the

[4] Plaintiff also argues that in *Soden v. Freightliner Corp.,* 714 F.2d 498 (5th Cir. 1983), the fact that certain statistical analyses were prepared for litigation purposes was not a decisive factor in the Court's ruling that the statistics were an improper basis for expert opinion. (*See* Pl.'s Opp'n at 6-7.) It is true that the court considered a variety of factors in reaching its conclusion. But it expressly pointed out that the statistics "were prepared strictly in anticipation of litigation . . . and were not part of a published study." *Id.* at 503. These facts, the court stated, "properly signal a trial judge to make a critical review" of the bases of the statistics. *Id.*

fact that a "research protocol or method was conducted in anticipation of litigation" does not in *every* instance mean that such work cannot form the basis of expert opinion. *Id.* at 1370. The Court acknowledged that "the financial and other incentives of litigation [may] pose an unacceptable risk to the objectivity and neutrality of the person gathering the data." *Id.* Here there can be no question but that Professor Jewell has displayed vigorous partisanship without even a pretense of neutrality. His Rebuttal Report was prepared precisely to respond to "some issues raised by defense counsel" in a deposition in an earlier Vioxx case, and it reads as a reply brief. (*See* Jewell Rebuttal Rpt. at 1.)

Plaintiff tries to establish the reliability of Professor Jewell's most recent report, the PUBs Analysis, by reference to the deposition of Merck's expert Dr. David Sales. (*See* Pl.'s Opp'n at 5.) But Dr. Sales' deposition testimony cannot substitute for peer review or publication. Dr. Sales is a gastroenterologist, not a statistician, and therefore he cannot provide genuine peer review or validation of Professor Jewell's work. Nevertheless Plaintiff contends that Dr. Sales' deposition provides evidence that Professor Jewell's report satisfies *Daubert* factors such as "the known error rate and general acceptance of the methodology within the scientific community." (*Id.*). According to Plaintiff, Dr. Sales "admits that [Dr. Jewell's] method is generally accepted; the 'error rate' factor is supportive of reasonable reliance, because, in Dr. Sales' words, significance 'is a measure of whether or not, if these studies were done repeatedly, what the chance was that you would get the similar results.'" (*Id.*) These claims distort Dr. Sales' testimony and misapply a *Daubert* analysis.

Dr. Sales did not, in fact, comment on Professor Jewell's method or testify about his interaction calculation. He stated merely that he *assumed* interaction analyses were commonly conducted of clinical trials. (Jan. 26, 2010 Deposition of David J. Sales, M.D. ("Sales Dep."),

attached as Ex. D, at 23:19-24:22.) Dr. Sales testified that he had no reason to challenge the validity of Professor Jewell's interaction calculation, but he did not confirm its accuracy. (*Id.* at 48:7-16.) Nor did Dr. Sales offer any opinion about whether Professor Jewell's analysis itself met a test for statistical significance. What he actually testified was that his son, a statistics graduate student, had explained that "interaction" analysis was "a method of looking at different populations and that the P value is a measure of whether or not, if these studies were done repeatedly what the chance was that you would get the similar results." (Sales Dep. at 47:11-15; *see generally id.* at 46:12-47:15.) The statistical significance under discussion was that of the results of Merck's VIGOR study, and the "interaction p value" indicated the extent to which, if the VIGOR trial protocol were repeated, the outcome would be the same. Thus any comment about the statistical significance related to the potential for error in Merck's study -- not in Professor Jewell's analysis. But it is not the reliability of *Merck*'s research methods that is at issue in this motion or that is properly subject to a *Daubert* evaluation. It is the reliability of *Professor Jewell*'s report that is being questioned, and Dr. Sales' comments about statistical significance do not relate to that.

Finally, Plaintiff attempts to explain away the fact that Professor Jewell's PUBs Analysis is not published or peer reviewed by arguing that it is "attributable to Merck's own failure to report or publish" the subgroup analysis Dr. Jewell performed. (Pl.'s Opp'n at 8.) This argument entirely misses the point. As an initial matter, Merck produced the VIGOR study report and accompanying data files years ago, leaving Dr. Jewell ample time to perform and publish his own statistical analysis, had he believed it possessed adequate scientific merit. More importantly, Merck's alleged failings cannot excuse the fact that Professor Jewell's work lacks the professional validation that assure the Court that it is a suitable basis for expert opinion. The

historical reasons for lack of publication and peer review (even if they were credible) are irrelevant if the Court is left without such an assurance.

The burden of establishing the reliability of expert opinion, including its foundation, always "rests on the proponent" of the opinion. *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004). The "trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005) (quoting Fed. R. Evid. 702 advisory committee's note (2000)). Here, Plaintiff offers nothing more to validate Professor Jewell's PUBs Analysis than Dr. Sales' largely irrelevant testimony and Dr. Julie's hopeful statement: "I don't suspect that there's anything wrong here." (*See* Pl.'s Opp'n at 5, quoting Deposition of Neil Julie, M.D.) As for the Jewell Report or the Jewell Rebuttal Report, Plaintiff does not even attempt to show that they are suitable bases for expert opinion, beyond referring to Professor Jewell's qualifications as a statistician and the fact that he uses data from Merck's clinical trials. (*See* Pl.'s Opp'n at 3 n.1.) This is insufficient to validate Professor Jewell's methodology or to confirm that he has reliably applied that methodology to the facts of this case. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592-93 (1993) (the trial court is to consider whether an expert's reasoning or methodology is scientifically valid and "whether that reasoning or methodology properly can be applied to the facts in issue").

As Plaintiff has failed to establish that Professor Jewell's reports are an appropriate basis for expert opinion, testimony about the reports must be excluded.

## III. PLAINTIFF'S EXPERTS MAY NOT SERVE AS A CONDUIT FOR PROFESSOR JEWELL'S OPINIONS.

In arguing that Plaintiff's experts have made proper use of Professor Jewell's reports, Plaintiff simply disregards well-established case law holding that Rules 702 and 703 do not permit one expert to serve as a conduit or mouthpiece for the opinion of another, non-testifying

expert. *See, e.g., Am. Key Corp. v. Cole Nat'l Corp.,* 762 F.2d 1569, 1580 (11th Cir. 1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not."); *6816.5 Acres of Land etc. v. United States,* 411 F.2d 834, 839-40 (10th Cir. 1969) (holding that on retrial, "the trial court must take steps to exclude any expert opinion that is predicated upon another opinion"); *Taylor v. B. Heller and Co.,* 364 F.2d 608, 613 (6th Cir. 1966) ("[E]xpert opinion may not be based upon the opinion of others, either in evidence or not in evidence."). Specifically, courts have held that "[a]n opinion which . . . simply parrots the opinion of another does not assist the trier of fact, and thus, is inadmissible under Rule 702 of the Federal Rules of Evidence." *Robinson v. Ford Motor Co.*, 967 F. Supp. 482, 487 n.2 (M.D. Ala. 1997). In addition, "[a] scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.,* 285 F.3d 609, 614 (7th Cir. 2002).

Serving as Professor Jewell's mouthpiece is precisely what Plaintiff's experts intend to do here. Drs. Julie and Graham adopt wholesale Professor Jewell's statistical analysis of the VIGOR data, as well as his conclusion that any difference between Vioxx and naproxen in the occurrence of confirmed and complicated PUBs is confined to patients using steroids. (Julie Rpt. at ¶ 34; Report of David Y. Graham M.D. Regarding Rofecoxib (Vioxx) ("Graham Rpt."), attached as Ex. E, at ¶ 34.) Indeed, each of these experts quotes Professor Jewell in his expert report, without independent commentary. (Julie Rpt. at ¶ 34; Graham Rpt. at ¶ 34.) Likewise, Dr. MacGregor simply adopts Professor Jewell's opinion when he states, in his expert report, that Merck's "Protocol 203 demonstrated a highly statistically significant increased risk of cardiac events on Vioxx compared with placebo, with early separation of the incidence curves." (MacGregor Rpt. at 6 & n.10.) None of these experts is a statistician and none testifies that he

has made his own findings about the VIGOR or Protocol 203 data. Plaintiff asserts that Dr. Julie "personally reviewed" Professor Jewell's calculations "for accuracy." (Pl.'s Opp'n at 4-5.) But Dr. Julie testified that he merely checked *Merck*'s clinical data, not Professor Jewell's calculations. (*See* Jan. 13, 2010 Deposition of Neil Julie, M.D. ("Julie Dep."), attached as Ex. F, at 135:19-136:5 ("Well, I mean I did the data count in terms of numbers, you know, 27 versus seven, 10 versus nine. . . . But the statistics that he calculated on the basis of that, I rely on him on.").)

Plaintiff attempts to justify the second-hand testimony of Drs. Julie, Graham and MacGregor by arguing that "courts have permitted experts to rely on the work of others in forming their opinions." (Pl.'s Opp'n at 3.) But the cases cited by Plaintiff all involve instances in which the testifying expert employed findings of another expert in order to arrive at a distinct opinion. For instance, in *Weiss v. Allstate Insurance Company*, 512 F. Supp. 2d 463 (E.D. La. 2007), the testifying expert, a forensic engineering expert, relied on a weather report in preparing his opinion as to the causes of property damage. *Id.* at 477. He did not offer a conclusion about the weather, but used the weather data to formulate an opinion on a wholly distinct subject. In *Ohio Environmental Development v. Envirotest Systems Corp.,* 478 F. Supp. 2d 963 (N.D. Ohio 2007), one expert offered an opinion about the diminution of fair market value of property resulting from deferred maintenance. *Id.* at 974-75. To do so, he employed another expert's estimates of repair costs. *Id.* These circumstances are wholly different from those in the instant case, where Plaintiff's experts intend simply to reproduce Professor Jewell's conclusions and opinions without any intervening analysis, calculation or findings of their own. As noted above, this kind of recitation of another's opinion is improper expert opinion because it will not assist the assist the fact finder, as required by Rule 702. *See, e.g., Eberli v. Cirrus Design Corp.,* 615

F. Supp. 2d 1357, 1364-65 (S.D. Fla. 2009) ("The Court fails to see how Mr. Klepacki's opinion that the breather line did not freeze would assist the trier of fact, given that Dr. Butler made the flight test conclusions and Mr. Klepacki admitted that the flight test conclusions were the sole basis for his conclusion that the breather line did not freeze.").

Finally, in *02 Micro International Ltd. v. Monolithic Power Systems,* 420 F. Supp. 2d 1070 (N.D. Cal. 2006), an expert testifying to non-infringement of a patent relied upon a mechanical test performed by another expert in arriving at his opinions. *Id.* at 1088. Plaintiff tries to liken the device, a "gain phase analyzer," to Professor Jewell's supposedly "straightforward numerical calculation" in his PUBs Analysis. (Pl.'s Opp'n at 4-5.) Needless to say, Professor Jewell is not a passive device; each of his reports contains opinions about the gastrointestinal and cardiovascular risks of Vioxx and about the appropriate modes of statistical analysis that could or should have been performed on Merck's clinical data. Drs. MacGregor, Julie, and Graham do not incorporate these opinions into their own analyses, but simply repeat them. This is improper.

In addition to violating Rule 702, the recitation of Professor Jewell's opinions by Plaintiff's experts violates principles of fundamental fairness. As the Fifth Circuit has noted, "to admit the hearsay opinion of an expert not subject to cross-examination goes against the natural reticence of courts to permit expert opinion unless the expert has been qualified before the jury to render an opinion." *Bryan v. John Bean Div. of FMC Corp.,* 566 F.2d 541, 546 (5th Cir. 1978) (opinions of non-testifying experts should have been excluded in part because "the excerpts proffered by plaintiff's counsel from the [non-testifying experts'] reports lacked any independent guarantee of trustworthiness that would justify dispensing with cross-examination"). As a matter of fairness, Plaintiff should not be allowed to introduce expert testimony that cannot be

effectively cross-examined because it consists of the second-hand opinions of another. Notably, when the *Eberli* court excluded testimony that merely presented the findings of another expert, it permitted the second expert to testify about the same conclusion. *Eberli,* 615 F. Supp. 2d at 1365. Plaintiff had the option of designating Professor Jewell as a testifying expert. As Plaintiff chose not to do so, it should not be permitted to introduce Professor Jewell's opinions through the back door.

## CONCLUSION

For the reasons stated above, Merck respectfully requests the Court to grant its Motion *in Limine* No. 12 and exclude all testimony and argument regarding reports prepared by Nicholas Jewell.

Dated: March 19, 2010

Respectfully submitted,

/s/ Dorothy H. Wimberly

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone: (504) 581-3200
Fax: (504) 581-3361

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply Brief In Support Of Defendant's Motion *in Limine* No. 12 to Exclude Testimony or Argument Regarding Reports Prepared by Nicholas Jewell has been served on Liaison Counsel by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Plaintiff, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 19th day of March, 2010.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel