UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF LOUISIANA, *ex rel.* JAMES D. | * | SECTION L |
|     CALDWELL, JR., Attorney General, | * | |
| | * | JUDGE ELDON E. FALLON |
|                 Plaintiff, | * | |
| | * | MAGISTRATE JUDGE |
|     versus | * | KNOWLES |
| | * | |
| MERCK SHARP & DOHME CORP., | * | |
| | * | |
|                 Defendant. | * | |
| | * | |
| Case No. 05-3700. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* NO. 10, TO EXCLUDE EVIDENCE OR ARGUMENT ABOUT DR. DAVID J. GRAHAM'S "EXCESS EVENTS" CALCULATION**

      Plaintiff's superficial opposition to Merck's motion to exclude testimony about Dr. David J. Graham's "excess events" calculation – a *post hoc* analysis of coronary events supposedly related to Vioxx – simply asks the Court to "adopt prior briefs and its prior rulings" from the *Irvin*, *Mason*, and *Dedrick* personal injury cases. (Pl.'s Opp'n at 1.) Contrary to the arguments advanced in those briefs, Dr. Graham's calculation is unreliable and irrelevant to the State of Louisiana's claims, and the Court should exclude it for both of those reasons.

      *First*, it is not true – as the personal injury plaintiffs contended – that Dr. Graham's estimate is "derived from sound, well-founded methodology." (*E.g.*, Pl.'s Opp'n to Def.'s Mot. *in Limine* No. 3 at 3, *Mason v. Merck* ("Mason Opp'n").) To the contrary, Dr. Graham's methodology – which allowed him to reach his opinion that Vioxx caused between 88,000 to

140,000 excess cardiac events in the U.S. population (with 44 percent leading to a fatal result) – is flawed for at least three reasons:

- The calculation is based on a comparator heart attack rate from ***non-Vioxx*** studies even though, as Dr. Graham himself admitted, the comparator rate dictates the numbers. (*See* May 9, 2006 Deposition of Dr. David J. Graham ("Graham Dep."), attached as Ex. A, at 429:24-430:3 (testifying that "at the end of the day, the background rate is what drives what that actual estimate of numbers is").) Dr. Graham's decision to use non-Vioxx studies to derive the background rate of heart attacks is not scientifically justifiable.

- While Dr. Graham purports to find an excess number of heart attacks associated with Vioxx use, the underlying data that he relies on for this proposition show the exact opposite – namely, that Vioxx users had ***fewer*** heart attacks. (Graham Dep. at 428:13-19, 432:22-433:1 ("**Q:** And, again, the real life heart attack rate in both VIGOR and APPROVe was lower than what you say is the normal background rate for people who are not taking any medicine at all, right? **A:** That's correct.").)[1]

- Dr. Graham's "excess events" estimate is also at odds with the findings of his own study.[2] The Kaiser Permanente data on which his study is based demonstrated no statistically significant increased risk of heart attacks or death associated with the use of 25 mg Vioxx. (Graham Study at 4, Table 3, (Ex. A to Def.'s Mot).)

Based on these facts, it unsurprising that Dr. Graham conceded that his "excess events" estimate may not reflect a real number. (Graham Dep. at 430:6-15 (testifying that "we put a number in our paper, and what we were more concerned with was the public health impact of Vioxx exposure than we were with what were the particular numbers").) Because Dr. Graham's calculation is based on a scientifically unsound methodology it cannot pass muster under Rule 702 of the Federal Rules of Evidence, and the Court should exclude it for that reason alone.

---

[1]  Dr. Graham attempts to defend his methodologically flawed calculation on the ground that the VIGOR study supposedly excluded patients who were likely to develop coronary artery disease. (Graham Dep. at 425:1-14.) According to Dr. Graham, the rate of heart attacks reported for Vioxx users in the VIGOR study thus underestimates the "true" rate in the general population. (*Id.*) But this explanation is unavailing. Dr. Graham conceded that the VIGOR study involved rheumatoid arthritis patients, who are at a *higher* risk of heart attacks than the general population. (*Id.* at 430:16-431:11.)

[2]  It is noteworthy that the peer reviewers of Dr. Graham's study urged him to take the "excess events" calculation out of his article. (Graham Dep. at 410:1-23.)

***Second***, the other argument advanced by the personal injury plaintiffs – that the "excess events" calculation is relevant to "Merck's duty, level of conscious disregard for the safety of the consumer, and the unreasonableness of Merck's conduct" (Mason Opp'n at 3) – is plainly inapplicable here.  Duty, disregard for consumer safety, and unreasonable conduct are issues of consequence to personal injury claims based on a theory of negligence or failure-to-warn.  *See, e.g.*, *KSLA-TV, Inc. v. Radio Corp. of Am.*, 732 F.2d 441, 444 (5th Cir. 1984) (duty to warn is an element of a failure-to-warn claim); *McAlpin v. Leeds & Northrup, Co.*, 912 F. Supp. 207, 209 (W.D. Va. 1996) ("under a theory of negligence, the focus is on whether the manufacturer's failure to warn was unreasonable") (emphasis added). Those issues have no bearing on the disposition of the fraud-based claims Plaintiff has asserted here.

The gravamen of Plaintiff's complaint is that Merck's alleged misrepresentations caused the State of Louisiana to pay for Vioxx prescriptions when it otherwise would not have.  (*See, e.g.*, Compl. ¶¶ 170, 184, 192.)  But because federal law required the Louisiana Department of Health and Hospitals ("LDHH") to reimburse purchases of Vioxx once the Food and Drug Administration approved the drug as safe and effective (*see generally* Merck's Motion for Summary Judgment, filed Feb. 19, 2010; *see also* Defendant's Reply in Support of Summary Judgment, filed Mar. 16, 2010), whether Dr. Graham concluded in 2005 – months after Vioxx had been withdrawn from the market – that the drug caused "excess" coronary events is altogether beside the point.

Even if LDHH had discretion to deny coverage for Vioxx (and it did not), Dr. Graham's "excess events" calculation would still be irrelevant to Plaintiff's claims.  Unlike a personal injury suit alleging that Vioxx was defectively designed or that Merck failed to adequately warn of the drug's risks, the issues the Court will be called upon to resolve here include the content of

representations made to LDHH, the Pharmaceutical and Therapeutics Committee, and Provider Synergies; whether those representations caused Plaintiff to pay for Vioxx or Louisiana physicians to inappropriately prescribe it; and how much money the State of Louisiana and its citizens would have saved (if any) in the absence of the challenged representations. Because Dr. Graham's calculation was published *after* Merck voluntarily withdrew Vioxx from the market, his conclusions cannot possibly have been a factor in Plaintiff's reimbursement of the drug, or the decision to add it to the PDL in 2003. For this reason too, Dr. Graham's "excess events" calculation should be excluded. *See* Fed. R. Evid. 702 (expert testimony permissible only where it would help trier of fact "determine a fact in issue").

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that the Court grant its motion in its entirety.

Dated: March 19, 2010

Respectfully submitted,

/s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone: (504) 581-3200
Fax:    (504) 581-3361

1011321v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply In Support Of Defendant's Motion *In Limine* No. 10 To Exclude Evidence Or Argument About Dr. David J. Graham's "Excess Events" Calculation has been served on Liaison Counsel by U.S. Mail and e-mail or by hand delivery and e-mail, upon counsel for Plaintiff, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 19th day of March, 2010.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1011321v.1