UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX Products Liability Litigation<br><br>This Document Relates to:<br><br>STATE OF LOUISIANA, *ex rel.*<br>JAMES D. CALDWELL, Attorney General,<br>Plaintiffs<br><br>v.<br>MERCK SHARP & DOHME CORP.,<br>Defendant<br><br>Case No. 05-3700 | MDL No. 1657<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE KNOWLES |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE UNTIMELY AFFIDAVITS AND PLAINTIFFS' THIRD AMENDED WITNESS LIST**

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... 2

TABLE OF AUTHORITIES .......... 3

INTRODUCTION .......... 5

BACKGROUND .......... 5

ARGUMENT .......... 6

I. The Affidavit Of David Hood Is Not Untimely, And Is Highly Relevant And Admissible .......... 6

II. The Affidavits of Drs. Terry Leach and John Abramson are Proper Supplemental Expert Reports In The Form of Affidavit, Are Not Untimely, And Are Highly Relevant And Admissible .......... 11

A. Louisiana federal courts distinguish between supplemental expert reports that merely clarify the opinions expressed in the original report, as is the case with Dr. Terry Leach and Dr. John Abramson's supplemental report in the form of affidavit, and those that offer new and previously undisclosed opinions .......... 14

B. The deposition testimony submitted by Merck mistates the prior testimony of Drs. Leach and Abramson and should not be stricken .......... 16

C. Merck remains free to cross-examine Dr. Leach and Dr. Abramson at trial regarding any perceived discrepancies between the original report and the supplemental report in the form of affidavit .......... 17

III. The Affidavits of Drs. Culotta, Doskey, and Lutz Are Not Untimely and Are Highly Relevant And Admissible .......... 17

A. Explanation for failure to designate the witness .......... 21

B. Importance of the testimony at issue .......... 23

C. Prejudice to the movant .......... 23

D. Availability of a continuance .......... 25

CONCLUSION .......... 25

**TABLE OF AUTHORITIES**

Page

**FEDERAL CASES**

*Bailiff v. Manville Forest Products Corporation*,
772 F.Supp. 1578 (S.D. Miss. 1991)……………………………………………………19, 20

*Brennan 's Inc. v. Dickie Brennan & Co., Inc.*,
376 F.3d 356, 375 (5th Cir. 2004)………………………………………………………….14

*Bridges v. Enterprise Products Company, Inc.*,
551 F.Supp.2d 549 (S.D.Miss. 2008)……………………………………………………….24

*Geiserman v. MacDonald*,
893 F.2d 787, 792 (5th Cir. 1990)…………………………………………………………...20

*Hamburger v. State Farm Mut. Auto. Ins. Co.*,
361 F.3d 875, 882-883 (5th Cir. 2004)……………………………......................... 19, 22

*Handwerker v. AT&T Corp.*,
211 F.R.D. 203 (S.D.N.Y. 2002)………………………………………..................... 16

*Helen of Troy v. Zotos Corp.*,
235 F.R.D. 634, 637 (W.D.Tex.2006)……………………………………………….... 10

*Hipp v. BL Development Corp.*,
2010 WL 956173 (N.D.Miss. March, 11, 2010)……………….......................20,21,23,25

*Hockerson- Halberstadt, Inc. v. Saucony, Inc.*,
2005 WL 1432376 at 4 (E.D.LA 2005)…………………………………….. ……….15

*Knauff v. Dorel Juvenile Group*,
2009 WL 2408275 (W.D. Tex 2009)…………………………………………………….11

*Lampe Berger USA, Inc. v. Scentier, Inc.*,
*2008 WL 3386716 (M.D. LA. 2009)*………………………………………………….15,16

*Leibstein v. LaFarge Noth America Inc.*,
2010 WL 550158 (E.D.N.Y. 2010)……………………………………..…………..16

*Mack v. United States*,
814 F.2d 120, 124 (2d Cir.1987)…………………………………………………………..17

*Matthews v. Remington Arms Co., Inc.*,
2009 WL 1490691 (W.D. LA 2009)……………………………………….…………15

*Nichols v. Allstate Texas Lloyd's*,
2005 WL 2405922, (S.D.Tex. 2005)………………………………………….…………10

*Pal v. N.Y. University*,
2008 WL 2627614 (S.D.N.Y. 2008) ………………………………………..………...22

*Patterson v. Balsamico*,
440 F.3d 104, 117 (2d Cir. 2006)…………………………………………...………...22

*Travelers Indem. Co. v. S/S Sikorski*,
F.Supp. 1 (S.D.N.Y.1989), *affirmed* 896 F.2d 543.……………………………......………..6

*Thompson v. Barnett*,
734 F.Supp. 751, 753-54 (S.D.Miss. 1989).…………………………………….………..20

*Wendorf v. JLG Industries, Inc.*,
*2010 WL 148256*, (E.D.Mich.S.Div. 2010)..……………………………...... ……….16

**STATE CASES**

*Ballas v. Kenny's Key West, Inc.*,
836 So.2d 289 (La.App.5 Cir. 2002).……………………………………....……………19

*Higgins v. American Nat. General Ins. Co.*,
798 So.2d 1078 (La.App.5 Cir. 2001).…………………………………6

*Palace Properties, L.L.C. v. Sizeler Hammond Square Ltd. Partnership*,
839 So.2d 82 (La.App.1 Cir. 2002).……………………………………..…………19

*Smith v. Jitney Jungle of America*,
802 So.2d 988 (La.App.2 Cir. 2001).……………………………………….…………..6

## INTRODUCTION

Over Plaintiffs adamant opposition, the Court adopted Merck's proposed schedule in this case, where Plaintiffs expert reports were due three months prior to the close of discovery. Merck got the schedule it wanted, yet now complains of the consequences that inevitably followed. If the case had followed Plaintiffs' suggested schedule, where expert reports followed after the close of discovery, these issues would not now be before the Court.  As set out more fully below, all of Plaintiffs' affidavits in support of the opposition to Merck's motion for summary judgment are appropriate, timely and admissible, particularly concerning highly relevant facts and expert opinions.

## BACKGROUND

Plaintiffs initially proposed a schedule in this case where expert reports would have been submitted after the conclusion of discovery.  (See August 18, 2009 from James R. Dugan to Travis Sales (attached to Declaration of Douglas R. Plymale ("DRP Decl.") as Exhibit A; September 10, 2009 letter from James R. Dugan to the Court (attached to DRP Decl. as Exhibit B).  The Court adopted Merck's proposed schedule where Plaintiffs expert reports were due on November 3, 2009.  An enormous amount of discovery was conducted between November 3, 2009 and February 9, 2010.  Out of the 32 total depositions taken, 26 were taken after November 3, 2009, including 13 of the 19 fact witness depositions, four out of the six depositions of Louisiana Department of Health and Hospitals ("LDHH") witnesses, and all 13 depositions of experts.  Five out of the six depositions taken prior to November 3, 2009, were taken just the week before, October 26-30, 2009.  The only fact witness whose final transcript was available for review by Plaintiffs experts was that of Ben Bearden, who was deposed on October 12, 2009.

## ARGUMENT

Affidavits in support of, or in opposition to, motions for summary judgment are allowed under the Federal Rules of Civil Procedure. It is proper for both fact and expert witnesses to submit such affidavits. Contrary to Merck's authority, the affidavits at issue are not "new witnesses."

The trial judge has wide discretion in excluding testimony from witnesses not listed in pre-trial agreements.[1] Trial court's discretionary authority to disallow evidence at trial, based on party's failure to comply with discovery request, should be exercised only when ends of justice dictate such exclusion.[2] Motion to strike complaint for violation of discovery order would not be granted in absence of showing of willfulness, bad faith, or fault.[3]

### I. THE AFFIDAVIT OF DAVID HOOD IS NOT UNTIMELY, AND IS HIGHLY RELEVANT AND ADMISSIBLE

David Hood's affidavit was properly submitted in support of Plaintiffs opposition to Merck's motion for summary judgment. (See Affidavit of David Hood ("Hood Aff.") (attached to DRP Decl. as Exhibit C)). Merck moves to strike Mr. Hood's affidavit on the grounds that it is untimely and inconsistent with his deposition testimony. But, in fact, Mr. Hood's affidavit testimony is entirely consistent with his deposition testimony, and in fact extends consistently his testimony beyond the scope of the questioning by Merck's lawyers at his deposition. Thus, to the extent that there is supplemental testimony in his affidavit, this testimony is also admissible. Mr. Hood's affidavit is also critical as a rebuttal to arguments Merck raised for the first time in its motion for summary judgment, namely that the LDHH P&T committee was the P&T Committee was "thoroughly briefed on the alleged cardiovascular risks of Vioxx each time it

---

1 *Higgins v. American Nat. General Ins. Co.*, 798 So.2d 1078 (La.App.5 Cir., 2001).

2 *Smith v. Jitney Jungle of America*, 802 So.2d 988 (La.App.2 Cir. 2001).

3 *Travelers Indem. Co. v. S/S Sikorski*, F.Supp. 1 (S.D.N.Y.1989), affirmed 896 F.2d 543.

considered whether to include Vioxx on the PDL. Provider Synergies raised the issue at each meeting" yet "never acted on this risk information." (See Merck's Motion for Summary Judgment at pp. 23-24).

David Hood, as Secretary of DHH, was a voting member of the LDHH P&T committee. The LDHH P&T committee members took their job seriously, had serious discussions and debate at LDHH P&T committee meetings, and arrived at a consensus before voting.  Mr. Hood, as Secretary of DHH, was also responsible for acting on any recommendations of the LDHH P&T committee – if he didn't sign off on the committee's recommendations those recommendations did not go into effect.    Merck's suggestion that Mr. Hood's affidavit testimony is inconsistent with his deposition testimony is misleading and completely false.

Merck claims there are four inconsistencies between Mr. Hood's affidavit and deposition testimony.  First, Merck claims that Mr. Hood testified that "Louisiana implemented a preferred drug list regime primarily to control costs, and that cost and efficacy were equally important to the P&T committee" (Merck brief at p. 4 citing Dep. of David Hood ("Hood Dep.") 46:9-47:2, 69:17-70:3).  The cited testimony says no such thing.  Mr. Hoods actual testimony cited by Merck regarding the legislation in 2002, which empowered Louisiana to change its formulary but did not specify that it adopt a preferred drug list, states that "Louisiana was looking for … a better way which would measure cost effectiveness", and that the *responsibilities of*, not what was important to, the P&T committee were the safety, effectiveness, and cost-effectiveness of the drugs placed on the PDL.  This testimony is not inconsistent with anything in Mr. Hood's affidavit.  Second, Merck falsely claims that Mr. Hood's affidavit is contradicted by his prior testimony that Provider Synergies disclosed the potential cardiovascular risks of Vioxx, including the VIGOR study, to the P&T committee. (See *Id*. 116:22-118:8, 146:13-149:6).

Although Mr. Hood's deposition testimony confirmed that Provider Synergies included a section, based on published literature, on the cardiovascular issues of Cox-II inhibitors in its drug monographs supplied to the LDHH P&T committee, this testimony *does not* confirm the accuracy and completeness of the information in those monograghs, and *does not* state that the true risks of Vioxx were disclosed to the LDHH P&T committee (See generally Plaintiffs' expert reports and Plaintiffs' Opposition to Motion for Summary Judgment). The Provider Synergy monographs were based exclusively on published, public sources of information, and could not have made Mr. Hood and the other members of the LDHH P&T committee "aware … that Merck manipulated the published literature from its sponsored research to minimize the cardiovascular risks of Vioxx…. and to greatly exaggerate the gastrointestinal (GI) benefits of Vioxx." (Hood Aff. ¶11,12). Third, Merck incorrectly claims that Mr. Hood's affidavit testimony that he would have tried to restrict coverage of Vioxx is somehow inconsistent with him not recalling, other than removing Vioxx from the PDL, actions that the State of Louisiana could use to restrict reimbursement for Vioxx. On its face, this testimony concerns different issues: 1) what Mr. Hood would have done; versus 2) what the State was capable of; and it is hard to imagine how Merck construes this as contradictory testimony. Finally, Merck points out that at deposition Mr. Hood testified that he didn't recall exactly how the DUR process worked. (See *Id*. 38:9-39:2). But Mr. Hood also testified that he was not involved with the details of the DUR process, and there may have been instances, that he was not aware of, where the DUR board refused to reimburse for certain drugs. (See Deposition transcript of David Hood ("Hood Dep.") 37:9-11, 38:9-40:7 (excerpts attached attached to DRP Decl. as Exhibit D). But that is not inconsistent with his affidavit testimony that he would have approved the use of DUR edits. It was not his job as Secretary to personally know all the details and personally construct and

implement any DUR edit - that is why LDHH employed a DUR Board- but it certainly was his job to approve their edits and see that the final result is consistent with the LDHH mission of providing safe, effective, and cost-effective medical therapies available to Medicaid recipients.

Even if there were inconsistencies between Mr. Hood's affidavit and his deposition testimony, and as shown above there are none, this would not be proper grounds for striking his affidavit. His affidavit and deposition testimony can be used by Merck at trial for impeachment purposes, and any inconsistency should go to the weight of the evidence, not its admissibility.

Merck cites no authority, and has absolutely no basis for, excluding additional testimony offered by a fact witness subsequent to his deposition testimony. Plaintiffs were under no obligation whatsoever to "supplement Mr. Hood's testimony" (Merck's brief at p. 14). Mr. Hood's deposition testimony was in response to questions from Merck's lawyers. Merck's lawyers could have asked Mr. Hood any question they wanted. Merck's lawyers *never asked* Mr. Hood the questions that would have elucidated the answers he sets forth in his affidavit. Merck's lawyers *never asked* Mr. Hood what he would have done had he known of the increased cardiovascular risks, lack of gastrointestinal safety benefits, and lack of overall economic benefit of Vioxx at the time the LDHH P&T committee considered placing Vioxx on the Preferred Drug List. Merck has no basis to try and exclude Mr. Hood's answers to questions Merck's lawyers never asked him. Furthermore, Plaintiffs' have no obligation to educate fact witnesses prior to their deposition so that they know the entire universe of facts brought to light during discovery, much of which was being discovered concurrently through other fact and expert witness depositions. Although it is obvious from Mr. Hood's affidavit that he has considered additional materials since his deposition, that too is not a proper basis for striking his affidavit. Merck can cross-examine Mr. Hood at trial, and if Merck thinks there are any inconsistencies among his

deposition testimony, affidavit, and trial testimony, then that evidence is available to Merck for impeachment purposes. Plaintiffs have even offered to make Mr. Hood available for a short supplemental deposition, since his affidavit was submitted a month before trial; Merck declined. (See March 19, 2010 email from Travis Sales to James Dugan (attached to DRP Decl. as Exhibit E)). In addition, since this is a bench trial, the Court can make the determination at trial as to the weight of Mr. Hood's affidavit testimony.

In *Helen of Troy v. Zotos Corp.*, a co-defendant Spentech moved to strike an affidavit of the plaintiff's expert as untimely.[4] The affidavit was based on photographs of allegedly leaky bottles taken after Spentech inspected and manipulated the bottles at the expert's office.[5] The Court found that the affidavit was a supplement based on these photographs and was timely, noting that "it is inconsistent for Spentech to willingly participate in a discovery event and later complain that a report based on that event and mandated by the Federal Rules is untimely merely because it took place after the discovery deadline."[6] While this is not perfectly analogous to the situation of the parties in this case, it is similarly inconsistent for Merck to argue un-timeliness predicated on its own scheduling order and limits on the questioning of a fact witness.

Even if Mr. Hood's affidavit is not considered a timely disclosure on Plaintiffs' part, any untimeliness is harmless under the factors outlined in *Nichols*,[7] and should not warrant exclusion under Rule 37(c)(1).[8]

---

4 *Helen of Troy v. Zotos Corp.*, 235 F.R.D. 634, 637 (W.D.Tex.2006)

5 *Id.*

6 *Id.*

7 The four factors for a Court to consider in determining whether a failure to disclose is harmless, outlined in *Nichols v. Allstate Texas Lloyds:* "(1) the importance of the evidence; (2) prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice; and (4) any explanation for the party's failure to comply with the rule requiring disclosure." *Nichols v. Allstate Texas Lloyd's*, 2005 WL 2405922, (S.D.Tex. 2005). Applying the *Nichols* factors to this case: the affidavit of David Hood is critical to Plaintiffs because it verifies that the P&T committee members relied upon certain misrepresentations by Merck, and would have actually acted differently had they known the truth about Vioxx; any prejudice to Merck by the inclusion of Mr. Hood's

## II. THE AFFIDAVITS OF DRS. TERRY LEACH AND JOHN ABRAMSON ARE PROPER SUPPLEMENTAL EXPERT REPORTS IN THE FORM OF AFFIDAVIT, ARE NOT UNTIMELY, AND ARE HIGHLY RELEVANT AND ADMISSIBLE

The Court has repeatedly acknowledged that, given the schedule, supplemental expert reports may be necessary.  The supplemental expert reports of Drs. Terry Leach[9] and John Abramson in the form of affidavit were properly submitted in support of Plaintiffs opposition to Merck's motion for summary judgment.  (See Affidavit of Terry Leach ("Leach Aff.")(attached to DRP Decl. as Exhibit F), Affidavit of John Abramson ("Abramson Aff.")(attached to DRP Decl. as Exhibit G)).  Drs. Leach and Abramson's supplemental expert opinions are critical as rebuttal opinions to arguments Merck raised for the first time in its motion for summary judgment, namely that the LDHH P&T committee was the P&T Committee was "thoroughly briefed on the alleged cardiovascular risks of Vioxx each time it considered whether to include Vioxx on the PDL. Provider Synergies raised the issue at each meeting" yet "never acted on this risk information." (See Merck's Motion for Summary Judgment at pp. 23-24).   Merck moves to strike these two affidavits on the grounds that they are untimely and inconsistent with the prior deposition testimony of these experts.  But, in fact, the affidavit testimony of these two experts is entirely consistent with their deposition testimony.   The original reports of these two Plaintiffs' experts, submitted on November 3, 2009, did not consider the massive amount of discovery that occurred between November 3, 2009 and the discovery cutoff of February 9, 2010.  The affidavit testimony of these two experts almost entirely concerned evidence that was not available at the

---

affidavit will be *de minimis* because Merck's lawyers had the opportunity to question Mr. Hood on the items in his affidavit yet did not choose to do so, and Merck declined Plaintiff's offer to redepose Mr. Hood, which would cure any potential prejudice; and Plaintiffs had no obligation to "supplement Mr. Hood's testimony" regarding questions he was never asked.

[8] *See also Knauff v. Dorel Juvenile Group*, 2009 WL 2408275 (W.D. Tex 2009)-(Denying motion to strike supplement reports filed by Plaintiff).

[9] Terry Leach has a doctorate in pharmacy, Pharm.D., and thus, despite Merck's failure to acknowledge it, his proper salutation is 'Dr'.

time the original expert reports were submitted. Thus, these supplemental expert reports, in the form of affidavits in support of Plaintiffs' opposition to Merck's motion for summary judgment, were timely.

The only piece of discovered evidence that Dr. Leach listed was the deposition transcript of Ben Bearden, and certain exhibits thereof, in the materials that he relied upon for his original report. Notably non-existent at the time his original report was submitted were 13 out of the 19 fact witness deposition testimony, including four out of the six Plaintiffs' fact witnesses, all expert reports, and the affidavits of LDHH P&T committee members. Dr. Leach specifically reserved the right to supplement his report if additional material was made available to him. At his deposition on January 22, 2010, Dr. Leach testified that he had not reviewed additional materials at that time. At the date of his supplemental expert report, in the form of an affidavit in support of Plaintiffs' opposition to Merck's motion for summary judgment, Dr. Leach had the benefit of reviewing the discovery that had taken place since his expert report, much of which occurred after his deposition, and most of which concerned Louisiana-specific information as opposed to general and national information. Dr. Leach's affidavit testimony merely extends his deposition testimony regarding P&T committees and their activities in general, down to the specific actions of the LDHH P&T committee, in light of the additional information available to him. Merck's suggestion that his affidavit is inconsistent with his deposition testimony and/or original report is simply false. His original report and deposition testimony were based on review of very limited materials.

Each of the three purported inconsistencies in Dr. Leach's affidavit testimony, Merck contorts Dr. Leach's testimony that he was "unaware of" evidence, "had not seen any" evidence, or "had no basis to conclude" to mean that *there existed no evidence* on that issue. Testimony

that he wasn't aware of any particular fact at the time of his deposition is entirely consistent with a supplemental opinion about that fact based on review of additional materials with information concerning that fact. This is especially true for the Louisiana specific information brought out by all the LDHH fact witness depositions taken after November 3, 2009.  For example, testifying that he did not know what information was presented to the LDHH P&T committee, can not be inconsistent with his opinion after he reviewed those materials.  There are no inconsistencies among Dr. Leach's affidavit and deposition testimony.

Dr. Abramson's supplemental expert report, in the form of an affidavit in support of Plaintiffs' opposition to Merck's motion for summary judgment, is also timely.  Dr. Abramson also specifically reserved the right to supplement his original report if additional material was made available to him.  Dr. Abramson's affidavit testimony merely extends his deposition testimony regarding the available public information on Vioxx and Merck's marketing of Vioxx on the national level down to the information available to the LDHH P&T committee and Merck's marketing of Vioxx to LDHH P&T committee members.  Dr. Abramson's affidavit testimony is entirely focused on the information disclosed to the LDHH P&T committee by Merck representatives and Provider Synergies.  Dr. Abramson's affidavit opinions are primarily based on the deposition testimony of Valerie Taylor, the corporate deponent of Provider Synergies, taken January 15, 2010, and Merck Senior Medical Director, Fran Kaiser, taken January 29, 2010.  Indeed, nearly every paragraph and the 24 footnotes in the affidavit cite to this deposition testimony or an exhibit in those depositions. (See Abramson Aff.).  Therefore, it is ridiculous, not to mention a blatant attempt to mislead the Court, for Merck to claim that, other than the LDHH P&T committee member affidavits, "all the materials on which he relies for his supplemental affidavit have been available to him for months, if not years" and that Dr.

Abramson could have offered his affidavit opinions "months ago–long before the close of discovery" (Merck's brief at p.14).

Merck does not complain of any inconsistencies between Dr. Abramson's affidavit and his deposition testimony, presumably because there are none.

### A. LOUISIANA FEDERAL COURTS DISTINGUISH BETWEEN SUPPLEMENTAL EXPERT REPORTS THAT MERELY CLARIFY THE OPINIONS EXPRESSED IN THE ORIGINAL REPORT, AS IS THE CASE WITH DR. TERRY LEACH AND DR. JOHN ABRAMSON'S SUPPLEMENTAL REPORT IN THE FORM OF AFFIDAVIT, AND THOSE THAT OFFER NEW AND PREVIOUSLY UNDISCLOSED OPINIONS

Louisiana's federal courts regularly distinguish between supplemental reports that merely clarify the opinions set forth in a report, and those that assert entirely new opinions. Merck misconstrues the purpose of Rule 26(e)'s requirements. The United States Court of Appeals for the Fifth Circuit held in *Brennan 's Inc. v. Dickie Brennan & Co., Inc.* that Rule 26(e) is "properly invoked to bar evidence when a party fails to make required supplemental disclosure."[10] Thus, the rule operates for the very purpose of requiring expert witnesses to file supplemental reports in the form of affidavit. As set forth *supra*, it was anticipated by the parties and the Court that Plaintiffs experts may need to supplement their reports based on information obtained during discovery after their initial reports. Dr. Leach and Dr. Abramson's supplemental reports serve to extend and clarify their opinions, and do not give entirely different or new opinions, and are thereby consistent with the underlying purpose of the Rule, as well as its substantive requirements.

For many courts, the key factor is whether the reports provide supplemental information, or provides an outlet for new opinions. Your Honor held in *Hockerson-Halberstadt, Inc. v. Saucony, Inc.* that an expert report was properly supplemented after the deadline without

---

10 *Brennan 's Inc. v. Dickie Brennan & Co., Inc.* 376 F.3d 356, 375 (5th Cir. 2004).

prejudice to the opposing party because it "does not alter the opinion expressed" in the original report.[11] As is the case here with Drs. Leach and Abramson, the supplemental expert report at issue was submitted by the expert after the subsequent acquisition of new information that had not been available to him at the time he submitted his original report. The Court emphasized that the defendant was "not prejudiced by a supplemental report that merely further explains the expert's initial opinion, rather than changes that opinion."[12] The court in *Matthews v. Remington Arms Co., Inc.,* also emphasized that the key factor in determining whether a subsequent report constituted a permissible "supplemental" report was whether the new report contained new opinions.[13]

Here, Drs. Leach and Abramson offer no new opinions in their supplemental report, only clarification and extension of their original opinions based on additional information and sources each were not privy to during the extensive discovery which occurred after their initial reports. Moreover, as set forth *supra,* both affidavits are consistent with the opinions offered in their original report and in their deposition testimony.

This situation contrasts markedly with situations where courts have stricken so-called "supplemental" reports that amount to an altogether new report with different opinions and conclusions. For example, in *Lampe Berger USA, Inc. v. Scentier, Inc., upon* which Merck relies, the court did not allow an expert to amend her report to expand the projected damages twentyfold, increasing from approximately $132,000 in the original report to $2.47 million in the revised report.[14] The court held that revisions of this kind constituted a wholesale rewriting of the report, and that the latter report contained "new opinions", as opposed to merely clarifying or

---

11 *Hockerson- Halberstadt, Inc. v. Saucony, Inc.,* 2005 WL 1432376 at 4 (E.D.LA 2005).

12 *Id.*

13 *Matthews v. Remington Arms Co., Inc.,* 2009 WL 1490691 (W.D. LA 2009).

14 *Lampe Berger USA, Inc. v. Scentier, Inc.,* 2008 WL 3386716 (M.D. La. 2009).

supplementing previously expressed opinions.[15] The situation presented in *Lampe Berger*, however, does not remotely reflect the present situation, where the additional information considered by Drs. Leach and Abramson did not exist at the time of their original reports, and the opinions in their supplemental reports are consistent with their previously expressed opinions.

### B. THE DEPOSITION TESTIMONY SUBMITTED BY MERCK MISTATES THE PRIOR TESTIMONY OF DRS. LEACH AND ABRAMSON AND SHOULD NOT BE STRICKEN

Courts have held that striking pleadings and dismissal are the most extreme sanctions available for noncompliance with discovery obligations and are appropriate only where the noncompliance is due to willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight.[16] In deciding in its discretion whether to consider a post-deposition affidavit on summary judgment, a district court must first consider whether the affidavit directly contradicts the nonmoving party's prior sworn testimony; a directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction, but if, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue.[17]

In *Leibestein v. Lafarge North America, Inc.*, the court entertained the allegation that Leibstein's affidavit contradicted his previous deposition testimony and that Plaintiffs could not create a genuine issue of material fact by proffering a contradictory affidavit.[18] The court took notice that it is well established in the Second Circuit that "a party's affidavit which contradicts

---

15 *Id. at 3-4.*

16 *Handwerker v. AT&T Corp.*, 211 F.R.D. 203 (S.D.N.Y. 2002).

17 *Wendorf v. JLG Industries, Inc. 2010 WL 148256*, (E.D.Mich.S.Div., 2010).

18 *Leibstein v. LaFarge Noth America Inc.*, 2010 WL 550158 (E.D.N.Y. 2010).

his own prior deposition testimony should be disregarded on a motion for summary judgment."[19] In *Liebstein*, the court found it very difficult to discern whether there is a genuine contradiction between Leibstein's deposition testimony and his subsequent affidavit since it was unclear to the court what alternative warnings Leibstein was asked to consider during his deposition.[20] Accordingly, the court held that it cannot disregard Leibstein's affidavit and also concluded that the affidavit was sufficient to create a genuine issue of material fact.[21]

Similarly, the affidavits of Drs. Abramson and Leach do not contradict their prior testimony, discussed *supra*, and should not be stricken.

### C. MERCK REMAINS FREE TO CROSS-EXAMINE DR. LEACH AND DR. ABRAMSON AT TRIAL REGARDING ANY PERCEIVED DISCREPANCIES BETWEEN THE ORIGINAL REPORT AND THE SUPPLEMENTAL REPORT IN THE FORM OF AFFIDAVIT

Merck will not be prejudiced at the trial of this matter by allowing Drs. Leach and Abramson's supplemental reports in form of affidavits. Merck remains free to cross-examine both witnesses at trial regarding the contents of their affidavit, and any perceived discrepancies. Moreover, complaints of "unfair surprise" are mere hyperbole because thee affidavits do not contain new opinions, only clarifications of their previously expressed opinions, and Merck has already enjoyed the opportunity to depose them with respect to these opinions. Moreover, Plaintiffs have even offered to make Drs. Leach and Abramson available for a limited follow-up deposition, but Merck declined.

## III. THE AFFIDAVITS OF DRS. CULOTTA, DOSKEY, AND LUTZ ARE NOT UNTIMELY AND ARE HIGHLY RELEVANT AND ADMISSIBLE

The affidavits of three former LDHH P&T committee members, including two former chairs of that committee, Dr. Vincent Culotta, Dr. Richard Doskey, and Dr. Brobson Lutz, were

---

19 *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987).
20 *Id. at 7.*
21 *Id.*

properly submitted in support of Plaintiffs opposition to Merck's motion for summary judgment. (See Affidavit of Vincent Culotta ("Culotta Aff.")(attached to DRP Decl. as Exhibit H), Affidavit of Richard Doskey ("Doskey Aff.")(attached to DRP Decl. as Exhibit I), and Affidavit of Brobson Lutz ("Lutz Aff.")(attached to DRP Decl. as Exhibit J)). Merck moves to strike these three affidavits on the grounds that they are untimely because these witnesses were not disclosed in Plaintiffs Second Amended Witness List. However, a catchall category of "a member of the LDHH P&T committee" was included in Plaintiffs original and First Amended Witness lists. Merck has always known the identity of all the LDHH P&T committee members and Merck specifically targeted LDHH P&T committee members in marketing Vioxx. Although Merck's call notes LDHH P&T committee members should have been produced in response to Plaintiffs discovery requests in 2006, and again in response to Plaintiffs discovery requests in May, 2009, they were not produced until January 8, 2010 in response to a very narrowly tailored follow-up discovery request targeted at these call notes that had not been previously produced. The need to call on testimony of LDHH P&T committee members became critical to rebut the new fictions advanced by Merck in its motion for summary judgment.

The Fifth Circuit has enumerated factors to be considered when looking to a motion to strike a witness designation and noted that when a designation violates the mandates of Rule 26, the court *may* strike the designation. Those factors are: (1) the respondent's explanation for the failure to identify the witness; (2) the importance of the testimony; (3) the potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure prejudice.[22]

If a party objects to the offered testimony of a witness not listed on the pre-trial order, trial judge has great discretion in deciding whether to receive or refuse the testimony objected to

---

22 *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882-883 (5th Cir. 2004).

on the grounds of failure to abide by the discovery rules, but any doubt must be resolved in favor of receiving the information.[23] In *Ballas v. Kenny's Key West, Inc.*, a witness, who was defendant's employee, was properly allowed to testify in premises liability action, even though her name was not listed on the witness list or pre-trial order by defendant, given that defendant's witness list stated that a representative from its business would be called to testify, plaintiff knew who witness was, and plaintiff chose not to depose witness prior to trial.[24]

In *Bailiff v. Manville Forest Products Corp.*, the district court held that the affidavits would not be stricken on grounds of untimely designation of expert or failure to respond to interrogatories, where there was no real prejudice to either side.[25] The facts of that are pertinent here. There, plaintiff filed a products liability action against manufacturers and suppliers of various chemicals which allegedly caused chronic industrial asthma as a result of exposure at the workplace.[26] All defendants moved for summary judgment pursuant to F.R.C.P. 56, each contending that plaintiffs had produced no competent evidence that exposure to its product caused or contributed to the alleged injuries.[27] In support of defendants' motion for summary judgment, each defendant supplied affidavits of experts who opined that the exposure did not contribute to plaintiff's respiratory problems.[28]

In turn, plaintiff, Bailiff, responded with an affidavit of his treating physician, Dr. Allum, and defendants' moved to strike the affidavit on the basis that plaintiffs failed to timely designate Dr. Allum as an expert witness in compliance with the amended scheduling order.[29] While the

---

[23] *Palace Properties, L.L.C. v. Sizeler Hammond Square Ltd. Partnership*, 839 So.2d 82 (La.App.1 Cir. 2002); LSA-C.C.P. Art. 1551, subd. B.

[24] *Ballas v. Kenny's Key West, Inc.*, 836 So.2d 289 (La.App.5 Cir., 2002).

[25] *Bailiff v. Manville Forest Products Corporation*, 772 F.Supp. 1578 (S.D. Miss. 1991).

[26] *Id*. at 1579.

[27] *Id.*

[28] *Id.*

[29] *Id.*

plaintiffs did not designate Dr. Allum as an expert witness; they did advise defendants in an answer to each defendant's Rule 26(b)(4) interrogatory that "attending physicians may testify indicating that plaintiff does have respiratory condition alleged in complaint which was caused by defendants."[30]

Though the court was clearly authorized to strike the affidavit of an untimely designated expert or an expert as to whom information had not been provided in compliance with proper discovery requests, the court declined to impose such a sanction.[31] The court noted that each side was at least arguably made aware of the other's plans regarding the use of expert testimony and while there were undoubtedly omissions by all parties, the court perceived no real prejudice to either side in its decision to permit consideration of each of the affidavits submitted.[32]

The Court can also draw comparison from the facts presented in *Hipp v. BL Development Corp*.[33] On October 1, 2009, the plaintiffs designated treating physician Dr. Joseph Tobin[34]. The discovery deadline expired on January 4, 2010 at which time the plaintiff Janet Sauls added Dr. Charles Nivens as a treating physician.[35] The failure to designate Dr. Nivens earlier was based at least in part on Mrs. Sauls' failure to inform counsel of her referral.[36] On January 19, 2010, the defendant filed a motion to strike, arguing the designations were both inadequate and untimely.[37] The court applied the factors in *Hamburger*, to determine whether the court *may*

---

30 *Id.* at 1581.

31 *Id.* See also *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990); *Thompson v. Barnett*, 734 F.Supp. 751, 753-54 (S.D.Miss.1989).

32 *Id.*

33 *Hipp v. BL Development Corp*., 2010 WL 956173 (N.D.Miss. March, 11, 2010).

34 *Id.*

35 *Id.* at 1.

36 *Id.*

37 *Id.*

strike the designation and denied defendants' motion to strike the opinion testimony of Dr. Tobin and Nevins as they pertain to plaintiffs, Janet and James Sauls.[38]

In turn, applying the *Hamburger* test to this case:

**A. EXPLANATION FOR FAILURE TO DESIGNATE THE WITNESS**

In *Hipp*, Mrs. Sauls was referred to Dr. Nivens shortly before the designation of experts was required.[39] There appeared to be a misunderstanding between plaintiff and her counsel regarding the identity of her treating physician; however, once the miscommunication was discovered Dr. Nivens was immediately disclosed to opposing counsel.[40] The court held the explanation sufficient and noted that if there appears to be any minor prejudice; such prejudice could be cured at the deposition.[41]

Similarly, Plaintiffs' explanation of why Drs. Culotta, Dosky, and Lutz were not identified by name on prior witness lists, *supra*, should be sufficient as any prejudice to Merck would be minor and could be cured at deposition or at trial of this matter.

Merck relies heavily on *Pal v. N.Y. University*, but fails to acknowledge some of the legal language and key factual differences contained therein. In *Pal*, the court stated, "despite the mandatory language of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if the trial court finds that there is no substantial justification and the failure to disclose is not harmless."[42] Although Rule 37(c)(1) does not require a movant to show bad faith on the part of the offering party, the preclusion of witness testimony is a harsh sanction that should be imposed with caution.[43] In determining whether NYU's failure to comply with

---

38 *Id.* at 4.
39 *Id.* at 3.
40 *Id.*
41 *Hipp*, 2010 WL 956173 at 3.
42 *Pal v. N.Y. University*, 2008 WL 2627614 (S.D.N.Y.) at 3.
43 *Id.*

Rule 26(a) was either substantially justified or harmless, NYU argued that failure to disclose was justified because the witnesses "have only recently offered to get involved" in the proceedings by signing a privilege waiver.[44] The court held that NYU's delay in disclosing was not substantially justified because no evidence was presented that NYU made the appropriate efforts to secure waivers earlier in the litigation.[45] The court also balanced the factors set forth in *Hamburger*[46] and granted defendants motion to strike.

Plaintiffs reiterate that Merck knew the identity of the LDHH P&T committee members, Merck specifically targeted them for marketing, and Merck chose not to depose them or list them as potential witnesses. Plaintiffs put Merck on notice of the possibility of having LDHH P&T committee members on its witness list. Merck complained about the lack of identity on Plaintiffs witness list, even though it knew the identity of every member of the LDHH P&T committee. Plaintiffs acceded to the Courts recommendation that the catch all category be dropped from Plaintiffs witness list, and the Second Amended Witness List was filed on December 18, 2009. But thereafter, Plaintiffs were only just supplied with the actual LDHH P&T members' call notes on January 8, 2010 even though efforts were made earlier in this litigation to secure what Merck materials and to whom Merck called upon, including call notes and other materials regarding LDHH P&T members. Thus, *Pal* is distinguishable on the facts and Merck's reliance is once again misguided as to the course of discovery in this case.

---

44 *Id*. at 4.

45 *Id*. at 4.

46 *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882-883 (5th Cir. 2004). The court in Pal actually applied the factors set forth in *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) which are essentially the same as in *Hambuger*.

**B. IMPORTANCE OF THE TESTIMONY AT ISSUE**

In *Hipp*, the court understood that Dr. Nivens' opinions would be critical to any recovery sought by Mrs. Sauls and that the doctors testimony would be important for establishing her need for future medical needs and damages.[47]

The affidavits of Drs. Culotta, Doskey, and Lutz are critical to rebut the fiction Merck raised for the first time in its motion for summary judgment, namely that the LDHH P&T committee was the P&T Committee was "thoroughly briefed on the alleged cardiovascular risks of Vioxx each time it considered whether to include Vioxx on the PDL. Provider Synergies raised the issue at each meeting" yet "never acted on this risk information." (See Merck's Motion for Summary Judgment at pp. 23-24). This fiction is not in Merck's motion to dismiss. This fiction is contradicted by the fact that Merck knew its marketing team had called on these committee members and delivered Vioxx marketing materials to them. Therefore, Merck was well aware what information these P&T committee members received, and their testimony would be necessary to rebut this new fiction advanced for the first time in Merck's motion for summary judgment

**C. PREJUDICE TO THE MOVANT**

In *Hipp*, Dr. Nivens was not designated until long after the deadline to do so had passed.[48] The court found plaintiffs' explanation to be sufficient and held that defendants cannot contend they are surprised by any opinions being offered because Dr. Nivens testimony would be similar to that of her initial treating physician, Dr. Tobin.[49] Furthermore, any prejudice could be cured by deposition.

---

47 *Hipp*, 2010 WL 956173 at 3.
48 *Id.*
49 *Id.*

While the deadline to include Drs. Culotta, Doskey and Lutz on Plaintiffs' Witness List was last fall, call notes for LDHH P&T committee members were only produced in January 2010, and Merck first advanced the fiction for the first time in its motion for summary judgment, that the LDHH P&T committee was the P&T Committee was "thoroughly briefed on the alleged cardiovascular risks of Vioxx each time it considered whether to include Vioxx on the PDL. Proiver Synergies raised the issue at each meeting" yet "never acted on this risk information."

In fact, the refusal to allow the affidavits of Drs. Culotta, Dosky, and Lutz to rebut Merck's fiction *would be highly prejudicial to Plaintiffs.*

Under the third prong of the *Hamburger* test, Merck's reference to *Bridges v. Enterprise Products Company, Inc.*, is distinguishable.[50] There, the court noted that the beneficiaries did not offer any explanation as to the reason they failed to timely identify three persons as potential fact witnesses in discovery and there was no attempt to seek leave of court to supplement their discovery responses to include these individuals during the three month period between the date on which the motion for new trial was granted, and the date of the second trial.[51] With regard to the second, third and fourth factor, the testimony of the untimely designated witnesses was not critically important, the prejudice arising from allowing their testimony could have easily been remedied had beneficiaries sought to supplement their discovery responses and a continuance was not warranted because beneficiaries had sufficient time to supplement their discovery prior to second trial and chose not to.[52]

The Court is well aware of all the discovery discussions between Plaintiffs and Defendant. Once again the late production of the P & T committee member call notes, the

---

50 *Bridges v. Enterprise Products Company, Inc.*, 551 F.Supp.2d 549 (S.D.Miss. 2008).

51 *Id.*

52 *Id.*

extensive deposition taken between November 2009 and February 2010, and the identity of Drs. Culotta, Doskey and Lutz could not be supplemented before the discovery deadline because all the information concerning their affidavits and the Third Amended Witness List were not fully known until just recently. Defendants were put on notice that potential P&T committee members would be called as fact witnesses as indicated in Plaintiff's Initial Witness List and after learning of their identity, Plaintiffs have made them available for deposition; Merck has refused our proposal.

### D. AVAILABILITY OF A CONTINUANCE

In *Hipp*, the court did not find that a continuance was needed because the defendants agreed with plaintiffs to take the depositions of treating physicians outside of discovery.[53]

Similarly, Plaintiffs do not believe that a continuance is necessary in this case. Plaintiffs have offered to make Drs. Culotta, Dosky, and Lutz available for deposition, but Merck declined. These witnesses are now listed on Plaintiffs' Third Amended Witness List, and are thus incorporated by reference on Merck's Witness List. Merck can call these witnesses and cross-examine them at trial.

All of the reasons set forth above apply equally to Merck's arguments to strike Plaintiffs Third Amended Witness List.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Merck's motion in its entirety.

---

53 *Hipp*, 2010 WL 956173 at 3.

Dated: March 20, 2010

Respectfully submitted,

By: /s/ Douglas R. Plymale
James R. Dugan, II,
Douglas R. Plymale
Justin Bloom
Stephen B. Murray, Jr.
Stephen B. Murray, Sr.
***Murray Law Firm***
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181

**CO-CHAIR OF GOVERNMENT ACTIONS PLAINTIFFS' CASE MANAGEMENT COMMITTEE AND COUNSEL FOR PLAINTIFFS**

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
***Louisiana Department of Justice***
1885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020
Facsimile: (225) 326-6096

Francisco H. Perez
General Counsel
Kim Sullivan
***Louisiana Department of Health and Hospitals***
P.O. Box 3836
Baton Rouge, Louisiana 70821
Telephone: (225) 342-1188
Facsimile: (225) 342-2232

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiffs' Memorandum in Opposition to Defendant's Motion to Strike Affidavits and Plaintiffs' Third Amended Witness List and Declaration of James R. Dugan, Esq. Opposition to Defendant's Motion to Strike Affidavits and Plaintiffs' Third Amended Witness List has been served on Liaison Counsel, Phillip A. Wittman and Russ Herman, by U. S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced, in accordance Pretrial Order No. 8B, on this the 20th day of March, 2010.

/s/ Douglas R. Plymale
Douglas R. Plymale
Murray Law Firm
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181