# EXHIBIT D

David Hood

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re:  VIOXX                  §  MDL No. 1657
Products Liability            §
Litigation                    §  SECTION L
_____       §
                              §
STATE OF LOUISIANA,           §
ex rel. JAMES D. CALDWELL,    §  JUDGE ELDON E.
JR., Attorney General,        §  FALLON
                              §
       Plaintiff,             §
                              §
v.                            §  MAGISTRATE
                              §  JUDGE KNOWLES
MERCK SHARP & DOHME CORP.,    §
                              §
       Defendant.             §  Case No. 05-3700
                              §
                              §


MONDAY, FEBRUARY 8, 2010
- - -
Videotaped deposition of DAVID HOOD,
held at the Louisiana Department of Health &
Hospitals, 628 N. 4th Street, Suite 617,
Baton Rouge, Louisiana 70802, Houston, Texas
commencing at 1:14 p.m., on the above date,
before Kari Jacob-Behan, Certified Court
Reporter for the State of Louisiana.
- - -
GOLKOW TECHNOLOGIES, INC.
877.370.3377
deps@golkow.com

David Hood

1          were other programs in Medicaid that

2          had some influence over what was going

3          to be reimbursed.

4     BY MR. ISMAIL:

5          Q.     And what are those?

6          A.     The -- what's referred to as

7     the DUR Program or the Drug Utilization

8     Review Program.

9          Q.     How involved were you with the

10    Drug Utilization Program?

11         A.     Not particularly involved.

12         Q.     Can you think of any instance

13    during your tenure as secretary over the

14    Department of Health & Hospitals in which the

15    DUR Program limited which drugs would be

16    reimbursed by Medicaid?

17         A.     I'm sure there were numerous

18    instances, but I -- you know, I can't cite a

19    specific one for you.

20         Q.     Can you think of any occasion

21    in which that happened during your tenure?

22         A.     No, I can't, but -- you know, I

23    think it happened on a number of

24    occasions.

David Hood

1      Q.     On what basis do you

2   believe that the DUR Program limited which

3   drugs would be reimbursed by DHH or the State

4   under Medicaid?

5      A.     When there were instances of

6   misuse of drugs, fraudulent use of drugs and

7   so forth, the DUR Program could step in and

8   make a decision not to reimburse.

9      Q.     I understand what you're

10  saying.

11          But that -- the activities of

12  the DUR Program during your tenure as

13  secretary of DHH was to monitor and limit

14  abusive prescribing practices, correct?

15          MR. MURRAY:  Object to the form

16      of the question; mischaracterizes

17      former testimony, also lack of

18      foundation.

19          MR. ISMAIL:  You can answer.

20          THE WITNESS:  Again, I wasn't,

21      you know, involved in a detailed way

22      with DUR, so, you know,

23      there may have been examples

24      that I'm not aware of where they

David Hood

Page 39

1          had refused to reimburse for

2          certain drugs.

3    BY MR. ISMAIL:

4          Q.     Earlier I was asking whether

5    during the period of the open-formulary

6    system in Louisiana did the State have any

7    mechanism to exclude certain drugs from

8    reimbursement from Medicaid, and you

9    indicated that perhaps the DUR Program would

10   have some applicability in that scenario?

11         A.     Yes.

12         Q.     To your knowledge, during your

13   tenure as secretary of DHH, did the DUR

14   Program ever prospectively limit what drugs

15   would be reimbursed within Medicaid?

16         A.     I don't know.

17         Q.     And when you described

18   scenarios in which DUR did get involved, DUR

19   was looking retrospectively for scenarios in

20   which either the patient or the physician was

21   either writing too many prescriptions within

22   a class or writing multiple prescriptions to

23   the same patient, that kind of thing?

24              MR. MURRAY:  Object to the form

David Hood

1            of the question.

2     BY MR. ISMAIL:

3            Q.     Is that fair?

4            A.     Yeah, in part.  And as I

5     said, there may have been other

6     examples where they were involved in other

7     ways in limiting drugs.

8            Q.     Can you think of any other

9     scenario in which the DUR Program, during

10    your tenure as secretary of DHH,

11    prospectively limited with -- which drugs

12    would be covered within Medicaid?

13           A.     No, I can't think of any.

14           Q.     Do you recall any mechanism,

15    during your tenure as secretary at DHH, where

16    the State could remove a drug entirely from

17    reimbursement within Medicaid?

18                  MR. MURRAY:  Object to the form

19           of the question.  Time frame?  His

20           entire tenure?

21                  MR. ISMAIL:  I said during the

22           open-formulary period.

23                  MR. MURRAY:  I'm sorry.

24                  THE WITNESS:  Could you repeat