UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX<br>Products Liability Litigation | ) ) ) ) | MDL NO.1657 |
| | ) ) | SECTION L |
| THIS DOCUMENT RELATES TO ALL<br>ECONOMIC LOSS CASES | ) ) ) ) ) ) | JUDGE FALLON<br>MAG. JUDGE KNOWLES |

### ECONOMIC LOSS PLAINTIFFS' RESPONSE TO MOTION
### AND INCORPORATED MEMORANDUM IN
### SUPPORT OF MOTION FOR CASE MANAGEMENT
### ORDER GOVERNING ECONOMIC LOSS CASES

The Economic Loss Plaintiffs ("Plaintiffs") hereby respond to Merck Sharp & Dohme Corp.'s ("Merck") Motion and Incorporated Memorandum in Support of Motion for Case Management Order Governing Economic Loss Cases as follows:

### INTRODUCTION

Plaintiffs agree that the entry of a Case Management Order is appropriate. We respectfully contend, however, that the course that Merck proposes is inefficient and does not cost-effectively conserve the resources of the parties and the courts. As described below, Plaintiffs submit that a class certification bellwether process would be the most effective course. Further, Merck's motion provides this Court with an incomplete synopsis of the Vioxx class certification decisions which have been rendered by state courts to date. Finally, additional class certification orders which have recently been entered in various consumer fraud/economic loss class actions illustrate that the economic claims at issue are proper candidates for class certification.

864548.1

# ARGUMENT

### A. The Proper Path Forward is Through the Bellwether Class Certification Process.

Merck requests that this Court move forward with a global motion to strike the class certification allegations for the pending class actions before this MDL Court. This suggestion is both inefficient and ineffective. Many of the 30 or more Vioxx consumer class actions on file are seeking certification of statewide classes under different states' laws. See list of Consumer Cases in MDL 1657, attached as Exhibit A. Under the Defendant's global plan, the Court would have to conduct a separate choice of law and substantive case analysis for each state class being sought, which mitigates against the global ruling Merck seeks. If the Court failed to conduct this process, there would be significant due process issues resulting from such an omission.

The economic loss "master" complaint in this *Vioxx* MDL, the *Purchase Claims Master Complaint* was filed on August 2, 2005, nearly five years ago. Merck's motion to dismiss was briefed shortly thereafter, and heard in February 2006, over four years ago. Since then, much has transpired. There have been over a dozen bellwether trials on personal injury and wrongful death claims; a global settlement of such claims has been implemented; the third party payor claims asserted in the *Master Complaint* have also been settled; the Supreme Court, in *Wyeth v. Levine*, 129 S.Ct. 1187 (2009) has eliminated the federal preemption issue; two state courts (New Jersey and California) have denied certification to Vioxx economic loss claims; and one state court (Missouri) has granted class certification. No federal court has as yet ruled on either the nationwide or statewide certification of Vioxx claims under Fed. R. Civ. P. 23.

This Court recently directed the undersigned to select a small group of attorneys to focus on the remaining economic loss claims, which essentially arise under the consumer

fraud statutes (and unjust enrichment law) of multiple states.  The counsel listed on the signature block to this Response have conferred, considered the alternatives suggested by Merck, and suggest the bellwether process outlined herein.  At this juncture, Plaintiffs elect to seek class certification of the consumer economic loss claims, for trial purposes, on a statewide basis, on claims arising under the laws of their respective states, under Federal Rule 23.[1]

Plaintiffs respectfully request that this Court undertake the same process that Judge Woodcock designed in *In Re: Light Cigarettes Marketing Sales Practices Litigation*, MDL Docket No.: 09-MD-2068 ("Light Cigarettes").  In *Light Cigarettes*, Judge Woodcock, Chief United States District Judge for the District of Maine, has established a Class Certification bellwether process in which each party has selected two states from the pool of currently filed class actions.[2]  A similar approach can be adopted in the *Vioxx* litigation, from among the 30 or more class actions that have been transferred to this Court.[3]  After selection of the bellwether states, the parties would then undertake targeted discovery and expedited briefing in the bellwether cases.  The Court would rule upon the certification of those statewide test cases, so that the parties and the Court can ascertain the certifiability of these actions in the Plaintiff-selected and Defendant-selected jurisdictions.  The bellwether process has been very effective in identifying the value of litigation and would be extremely instructive in determining the value of

---

[1] The Supreme Court last week made it clear that class certification of state law class claims filed in or removed to federal court under Class Action Fairness Act, is to proceed, not under state class certification rules (and notwithstanding state law limitations on class treatment), but under the procedural criteria of Fed. R. Civ. P. 23.  *See Shady Grove Orthopedic Associates v. Allstate Ins. Co.*, ____ U.S. ____, 2010 U.S. LEXIS 2929 (2010).

[2] *See* Report of Conference Clarifying Aspects of the Procedural Order Issued October 26, 2009 and Order Setting Additional Deadlines dated November 3, 2009 (attached as Exhibit B).

[3] The list attached as Exhibit A indicates that the class action complaints before the Court seek certification of statewide classes under the laws of at least 17 states, including (in addition to New Jersey) Florida, Louisiana, Tennessee, New Mexico, Kentucky, California, Washington, West Virginia, Indiana, Illinois, New York, North and South Carolina, and Pennsylvania.

the consumer economic loss class claims. Further, the bellwether class certification process insures that all of the requirements of due process for the representative plaintiffs and absent class members are met.

Accordingly, Plaintiffs respectfully request that this Court direct the parties to submit, for Court approval, a case management Order that requires the parties to engage in a class certification bellwether process by: 1) selecting the bellwether states; 2) completing any necessary amendments and responses to the selected complaints on an expedited basis; 3) conducting expedited discovery keyed to common issues; and 4) setting a briefing and hearing schedule on class certification motions in the bellwether cases.

### B. The Vioxx Economic Claims Remain Proper Candidates For Class Treatment.

The Merck procedure—a global motion to strike class allegations—all but presumes that class treatment is foreclosed. Such is not the case. Although Merck did submit to this Court two decisions which denied certification of certain claims regarding Vioxx under New Jersey and California laws, those are not the only rulings on this issue.[4] As noted in Merck's motion, in *Plubell v. Merck and Co. Inc.*, Case No. 04cv235817-01 (pending in the Circuit Court of Jackson County, Missouri), Judge Nixon granted Plaintiff's Amended Motion for Class Certification. A copy of the Order is attached as Exhibit C. In *Plubell*, Judge Nixon certified a

---

[4] Plaintiff submits that the legal predicates in the two opinions that Merck attached, including, but not limited to the need to show actual reliance, the need to prove amount of overpayment, and the lack of a legal right to assert unjust enrichment, are inapplicable in certain states. For example, some states use an objective reliance standard, permit claims for unjust enrichment, and allow claims for return of consideration paid which eliminates the need to calculate the amount of overpayment. Moreover, after Judge Chaney issued her April 30, 2009 decision denying class certification to a California Vioxx class (see *Ruling on Motion For Class Certification* attached to Merck's motion) the California Supreme Court clarified the standing requirements and the manner of proof of the causation elements of California's relevant statutory claims (UCL and CLRA) so as to allow a new look at class certification under California law. *See In re Tobacco II Cases*, 46 Cal. 4th 298; 207 P.3d 20 (Cal. 2009).

statewide class of Missouri consumers for violations of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010, *et seq*. These claims sought solely economic damages.

The *Plubell* court specifically found that "[i]n particular, whether Merck's alleged failures to disclose, and its alleged active efforts to conceal and minimize, the adverse health risks about Vioxx and whether such actions constitute unfair and deceptive practices under the Missouri Merchandising Practices Act are crucial issues that unite the entire class." Ex. B at 6.

In ruling that predominance existed, the court found that the overriding issue was Merck's active concealment and failure to disclose the dangers of Vioxx:

> The overriding common issue in this case is whether Merck's failure to disclose and active concealment of the alleged fact that Vioxx was unsafe constitutes a violation of the MMPA. **That appears to be what this case is all about - - everything else is secondary**. That issue is plainly common to the class and easily predominates over all other issues.

*Id*. at 11 (emphasis added). Further, the *Plubell* court rejected the notion that Plaintiffs would have to show reliance and deception as to each class member. *See id*. at 14. "Thus, the alleged 'reliance' issues here simply cannot defeat predominance." *Id.* The *Plubell* court also discarded Merck's argument that each prescribing physician's knowledge about the risks of Vioxx would have to be explored as such information is irrelevant to the class certification issues. *See id*. at 18. While noting that the learned intermediary doctrine may apply at trial, the *Plubell* court noted that a fundamental requirement for application of the learned intermediary doctrine is "full and complete disclosure to doctors" which the Plaintiffs alleged did not occur. *See id*.

Finally, in *Plubell*, the court ruled that "Plaintiffs and members of the Class suffered ascertainable loss due to the simple fact that they allegedly paid artificially inflated prices for a product that Defendant advertised as safe." *Id*. at 21. "The fact that further

information may be needed to determine the exact amount of damages each Plaintiff and member of the Class suffered does not render a class unmanageable or defeat class certification." *Id*.

As to superiority of the class action vehicle, the *Plubell* court held that no single individual would, as a practical matter, be able to retain counsel and effectively prosecute this type of consumer protection claim against Merck. *See id.* at 22. Therefore the superiority prong was met. *Id*. at 23.

The Missouri Court of Appeals, Western District, affirmed the lower court's decision in May 2009, holding that "[b]ecause that issue – the legality of Merck's conduct-is common to all the Missouri class members, and because that issue is at the core of the case, the court did not abuse its discretion in finding the predominance requirement satisfied." *See In Re: Mary Plubell, et. al. vs. Merck & Co., Inc.*, 289 S.W. 3d 707; 2009 Mo. App. LEXIS 597, WD 69808 at 6 (attached as Exhibit D). The appellate court further affirmed the lower court's ruling on reliance as outlined above holding that Plaintiffs did allege an ascertainable loss under the "benefit of the bargain" rule. *Id*. at 7-10. The Missouri Supreme Court denied review on September 1, 2009. *Plubell v. Merck & Co.*, 2009 Mo. LEXIS 448. Currently the *Plubell* action is in the midst of discovery, with a trial date set for April 2011.

C.  **Additional Cases Support Class Certification.**

In addition to the *Plubell* decision, other, non-Vioxx, consumer economic claim class actions have been recently certified which provide some guidance as to the certifiability of the Vioxx economic loss claims. Two of these cases are *In Re Mercedes-Benz Tele Aid Contract Litigation*, Case No. 07-cv-02720 (MDL No. 1914), pending in the District of New Jersey before Judge Debevoise ("Tele Aid") and *Fitzpatrick v. General Mills, Inc. et al.*, Case No. 09cv60412, pending in the Southern District of Florida before Judge Huck ("Yo-Plus").

1. **Tele Aid**

In the *Tele Aid* MDL litigation, assigned to Judge Debevoise of the District of New Jersey, the Plaintiffs alleged economic loss (paying extra for the obsolete Tele Aid service) asserted causes of action for common law unjust enrichment and violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq.* ("NJCFA") stemming from the Defendants' false and misleading promotion of vehicles that were equipped with "Tele Aid," an emergency response system which links subscribers to road-side assistance operators by using a combination of global positioning and cellular technology. *See In Re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46, 48 (D.NJ 2009). Plaintiffs alleged that, during the relevant class period in which Mercedes knew that the system's technology would become obsolete and cease to work but continued to sell vehicles with the system without disclosing this fact to consumers. *See id*.

After conducting a thorough choice of law analysis, reviewing the choice-of-law rules and substantive laws of a number of states, the *Tele Aid* court certified a nationwide class under New Jersey law, certifying both the consumer protection and unjust enrichment claims. *Id*. The Court found that since the named Plaintiffs shared "at least one question of law or fact with the prospective class" that Rule 23(b)(2) commonality requirement was satisfied. *See id.* at 70-71. Further, the common fact that Defendant knew that its systems were becoming obsolete was amendable to common proof because it related to Defendant's knowledge and not that of individual class members. *See id*.

Judge Debevoise additionally held that the class members do not have to rely upon Defendant's misrepresentations to prove their claims. They only "need only show that they paid for a product and got something less than what had been promised." *Id.* at 73. "The amount of Plaintiffs' 'ascertainable loss,' which will serve as the basis for quantifying damages at trial, is

easily calculated using common proof." *Id.* The Third Circuit summarily denied the Defendant's Rule 23(f) petition. *See In re Mercedes-Benz Tele Aid Contract Litigation*, ____ F.3d ____, 2009 U.S. App. LEXIS 12478 (3d Cir. 2009).

In a detailed and thoughtfully analytical decision, Judge Debevoise recently considered, and denied, Mercedes' subsequent motion to decertify the class, and certified one of the choice-of-law issues for interlocutory review. *In Re Mercedes-Benz Tele Aid Contract Litigation*, 2010 WL 931865 at 22 (D.N.J.) (March 15, 2010).

### 2. Yo Plus

In the *Yo Plus* consumer fraud/economic loss litigation, the Court certified a class of Florida consumers under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq. See Fitzpatrick v. General Mills, Inc*., 263 F.R.D. 687 (S.D. Fla 2010). Plaintiff's claims centered on Defendant's misrepresentations regarding the digestive health benefits of an enhanced yogurt called "Yo-Plus" over normal yogurt. *Id.* Plaintiff maintained that Defendant General Mills' statements regarding the efficacy of Yo-Plus were unsubstantiated, false, misleading, and reasonably likely to deceive the public. *Id*.

In *Yo Plus*, the court noted that FDUTPA "does not require subjective evidence of reliance, as would be the case with a common law action for fraud." *Id* at 694. "The question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id.*; s*ee also Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,* 332 Fed.Appx. 565, 567 (11th Cir. June 3, 2009) (holding that "the FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct."). Therefore, Judge Huck ruled that whether General Mills' claim that Yo-Plus aids in the promotion of digestive health is "deceptive" is a mixed question of law and fact common to every class member seeking damages under the FDUTPA. *See id*. at 696-697.

Indeed, the promotion of digestive health was the "primary distinguishing feature". *Id.*

> In finding that predominance existed, the *Yo Plus* court aptly stated that:
>
> The only individual issue among the putative class members, at least as to the FDUTPA claim, is the scope of damages. The heart of this case, however, is not calculating the premium paid for Yo-Plus by particular persons.[] To the contrary, the dispute centers on the scientifically complex question of whether Yo-Plus provides a digestive health benefit, and if General Mills had an adequate basis to disseminate that message to Florida consumers. It is this thorny issue-rife with contested, bleeding-edge scientific evidence-that would overwhelmingly dominate (and hence preclude) every plaintiff's case were they forced to litigate independently. The determination of whether Yo-Plus works as advertised is also relevant to each putative class member claiming that General Mills' promise of digestive health benefits induced them to buy Yo-Plus and that General Mills breached an express warranty by providing a product that does not provide the promised digestive health benefits. This is because if General Mills had the evidence to support its claim that Yo-Plus aids in the promotion of digestive health, then the claims of every plaintiff seeking recovery for breach of express warranty on the basis that Yo-Plus is not proven to provide a digestive health benefit necessarily fail.

*Id.* at 699-700. Additionally, "the variations in how different advertising statements address Yo-Plus' purported digestive health benefit are not so significant as to preclude a fact finder from evaluating whether General Mills' overarching theme that Yo-Plus aids in the promotion of digestive health is 'deceptive.'" *Id.* at 701

## **CONCLUSION**

Based upon the reasons stated above, notably the range of precedent regarding certifiability of statewide consumer claims under the various state consumer laws, Plaintiffs respectfully suggest that a bellwether class certification process would be the most efficient and effective course to inform the parties as to the susceptibility to class treatment, merit, and value of the remaining economic loss components of the Vioxx MDL litigation.

864548.1                                       -9-

Dated:  April 5, 2010                                              Respectfully submitted,


 /s/ Elizabeth J. Cabraser                                          /s/ James D. Dugan, II
Elizabeth J. Cabraser                                              James D. Dugan, II
LIEFF, CABRASER,                                                   DUGAN & BROWNE PLC
HEIMANN & BERNSTEIN, LLP                                           650 Poydras St. Suite 2150
275 Battery Street, 29th Floor                                     New Orleans, LA 70130
San Francisco, CA  94111-3339                                      Phone:  (504) 648-0180
Phone:  (415) 956-1000                                             Fax:  (504) 648-0181
Fax:  (415) 956-1008

*Purchase Claims Committee Chair*                                  *Purchase Claims Committee Vice Chair*

Ben Barnow                                                         Dawn Barrios
BARNOW AND ASSOCIATES, PC                                          BARRIOS, KINGSDORF & CASTIEX, LLP
One North LaSalle Street, Suite 4600                               701 Poydras Street, Suite 3650
Chicago, IL  60602                                                 New Orleans, LA 70139-3650
Phone:  (312) 621-2000                                             Phone: (504) 524-3300
Fax:  (312) 641-5504                                               Fax: (504) 524-3313

Lance A. Harke, P.A.                                               Dennis Johnson
Howard Bushman, Esq.                                               JOHNSON & PERKINSON
HARKE & CLASBY LLP                                                 1690 Williston Road
155 South Miami Ave., Suite 600                                    South Burlington, VT 05403
Miami, FL                                                          Phone:  (802) 862-0030
Phone: (305) 536-8220                                              Fax:  (802) 862-0060
Fax: (305) 536-8229

*Attorneys for Consumer Plaintiffs*


864548.1                                   -10-

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing *Economic Loss Plaintiffs' Response to Motion and Incorporated Memorandum in Support of Motion for Case Management Order Governing Economic Loss Cases* has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 5th day of April, 2010.

   */s/ James D. Dugan, II*
James D. Dugan, II
DUGAN & BROWNE PLC
650 Poydras St. Suite 2150
New Orleans, LA 70130
Phone:  (504) 648-0180
Fax:  (504) 648-0181

*Purchase Claims Committee Vice Chair*