UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX®                                MDL Docket No.  1657

PRODUCTS LIABILITY LITIGATION               SECTION L

                                            Judge Eldon E. Fallon
                                            Magistrate Judge Knowles

-----------------------------------------------------------------------------------------------

THIS DOCUMENT RELATES TO:

Kathleen Ackerman, et al.,

        v.                                  Docket No.: 2:06-CV-02198

Merck & Co., Inc., et al.

**Only with regard to:**
**Debra J. Miller and Douglas Miller**

-----------------------------------------------------------------------------------------------

## AFFIDAVIT OF PLAINTIFF DEBRA J. MILLER

STATE OF _Ohio_       )
                      ) ss:
COUNTY OF _Ashland_   )

Debra J. Miller duly sworn deposes and says:

1.  I am one of the plaintiffs in the instant action and make this affirmation in support of the instant motion to vacate the November 12, 2009 order dismissing my case with prejudice on the grounds it was obtained by fraud, misconduct by Merck, and otherwise without my informed consent as I explain below.

2.  I was diagnosed with a mild case of fibromyalgia for which my rheumatologist, Ray Morris, M.D., recommended that I take Vioxx .

3.  He gave me samples of the 25 mg pill advised me to take twice a day,

which I began January 3, 2001.

4.   I ingested Vioxx twice a day continuously until my next  appointment with Dr. Morris on January 23, 2001 at which time he gave me additional samples.

5.   Dr. Morris provided an affidavit confirming he provided me the samples January 3, 2001 and he has affirmed he gave me enough pills to last through February 11, 2001. I am annexing his affirmation as **Exhibit A**.

6.   I had substantial confidence in Dr. Morris and can state without reservation that I ingested Vioxx 25 mg twice daily from January 3, 2001 through February 11, 2001.

7.   Until January 23, 2001 I was quite healthy, only being diagnosed with a mild case of fibromyalgia, and my blood pressure was normal, my cholesterol readings were normal, and I was a non-smoker and nondrinker. Moreover, I exercised usually 4 to 5 times a week. There was no heart disease in my family.

8.   On February 11, 2001, I sustained a heart attack and after going to Samaritan Hospital was transferred to Grant Medical Center in Columbus, Ohio where a heart catheterization was performed February 13, 2001.

9.   I was 45 years old, 5'4" and weighed 128 pounds. My doctors were as astonished as I that I had sustained a heart attack and were at a loss to explain the reasons for the same.

10.   I now understand I am one of many victims who sustained injury as a result of negligence by Merck in the manufacture of Vioxx, including misrepresentations the company made both to the medical community and the

general public has resulted in not only compensatory but punitive damages being ordered by juries throughout the country.

11.   I find it somewhat incredulous that after being victimized by Merck I am being victimized once again by the same company which has managed to manipulate or buy off my lawyers or otherwise cause them to mislead me about the handling of my case. More specifically they made misrepresentations to me by their statements that my case was proceeding to trial and being aggressively litigated when the complaint makes clear they never had any intention of proceeding to trial. Subsequent to filing this complaint and making the deal described below they then recommended to me I participate in a settlement that they knew or should have known was not in my best interest and was based more on their own financial interests, of which I was never advised. I want to state, before I turn to the facts and circumstances surrounding the same, that had I known their advice was so tainted by their own interests I would never have consented to participate in the settlement described below. I want to start with the events following my heart attack.

12.   They began in 2004 I when I first learned that Vioxx was being withdrawn from United States markets because of the risks involved, including but not limited to heart attacks which I had experienced back on February 11, 2001.

13.   As a result both I and my physicians felt we finally had an answer as to what triggered my heart attack.

14.   After seeing numerous advertisements by law firms throughout the

-3-

country I selected the law firm of Cellino & Barnes in Buffalo, New York because I believed the firm was competent and experienced in handling pharmaceutical litigation such as would be involved in my case.

15.   I first received a letter from the firm November 14, 2004 acknowledging my inquiry and enclosing a retainer agreement which both I and my husband executed and  returned to the firm. The retainer agreement is annexed hereto as **Exhibit B.**

16.   On December 7, 2004 I received a letter from the firm thanking me for "trusting" them to handle my case. The letter is annexed as **Exhibit C.**

17.   I want to affirm the fact that I did in fact trust this firm to manage my case, protect my own individual interests, and to keep me apprised of the events with information that was timely and accurate even if provided mostly by way of form letters.

18.   It was not until January 18, 2005 when the firm notified me that they had completed an initial review and made a finding that my case was meritorious.

19.   I was asked to return the fact sheet which ask me fairly comprehensive information and I faithfully filled it out and returned it to the firm.

20.   On December 7, 2005 I received a response in which the firm advised me they would continue to aggressively litigate my case and to move forward "without interruption". This letter is annexed as **Exhibit D.**

21.   Two days later I received another letter advising they retained the firm of Trepanier & MacGillis, P. A., to serve as local counsel and that my case may be

"grouped with other similarly situated individuals" but that this was done to benefit from strength in numbers and to reduce litigation costs. This letter is annexed as **Exhibit E**.

22.   I was not asked whether I consented to this process perhaps because no final decision had been made, but I can state I had no difficulty with the notion of joining a group to increase negotiating strength and reduce costs but only if my own individual interests were represented and not being sacrificed for some greater good.

23.   On January 5, 2006 I was advised a lawsuit was filed on my behalf. The letter told me we have formally filed "your Vioxx lawsuit" so I simply thought the group idea was abandoned and that I did have my own individual case pending as of that date. This letter is annexed hereto as **Exhibit F**.

24.   In June of 2006 I was advised that the information I provided was filed with the court and that the burden now shifted to Merck who they indicated "will do all it can to drag its feet..." which I viewed as advice that I should be patient about my claim being heard by a jury. This letter is annexed hereto as **Exhibit G**.

25.   On or about November 9, 2007 I received a letter from my attorneys advising that a settlement was reached and Merck agreed to pay $4.85 billion to resolve many of the Vioxx cases involving heart attack, sudden cardiac death and certain strokes. This letter is annexed hereto as **Exhibit H**.

26.   In the aforesaid letter I was advised this was not a class-action settlement and that each case would be reviewed on its own merits. It was a form

letter which indicated some cases may not qualify since the agreement required not only proof of a heart attack, certain cardiac death or ischemic stroke, but evidence of receiving at least 30 Vioxx tablets within 60 days of the injury, and proof of use within 14 days of the injury.

27.  It was not until January 24, 2008 that I was advised that after carefully reviewing my file the firm was recommending I participate in the settlement. My husband and I trusted the firm to do right by us so we sent in the releases that were enclosed in the letter. The letter and the enclosures which included releases we signed are annexed hereto as **Exhibit I.**

28.  Although my husband and I had numerous reservations about entering the program in the first instance, we trusted our attorneys, truly believed that they were exercising their professional judgment on our behalf, and put our reservations aside and participated in the program to the best of our ability.

29.  Our case went into the settlement, and thereafter we were advised we were not eligible for compensation under terms of the resolution program *(see Exhibit J)* resulting in the dismissal order herein dated November 12, 2009.

30.  Since we have been advised by our current attorney the machinations that transpired subsequent to our consent to participate in the settlement are not relevant to the instant motion and it is the facts and circumstances surrounding how our consent was attained that should afford relief from the order of this Court for dismissing our case with prejudice, we limit the discussion to the events that transpired prior to our agreeing to participate in the settlement.

31.  At the time neither my husband nor I realized my attorneys were being pressured to recommend we accept the settlement because there were terms in the settlement agreement that required retained attorneys such as our counsel, to recommend to 100% of their clients acceptance of the settlement or the attorney would face adverse financial consequences of failing to make such recommendation.

32.  I also learned that while we were being advised that $4.85 billion was to compensate victims, $480 million of that money was not to go to victims but to lawyers which I believe is information that should have been disclosed to us before being asked to accept the settlement.

33.  I believe I have been victimized by multiple misrepresentations from my attorneys, at least some of which were brought about by Merck's misconduct in paying attorney fees simultaneous with payment to victims such as myself out of the same pool of money, creating a conflict between my lawyer and myself, and as noted earlier by including provisions in the agreement that attorneys representing multiple plaintiffs which included my firm, had to recommend settlement to 100% of their clients.

34.  I want to also make clear that the very  first misrepresentation, in itself, would have prompted me to either terminate the law firm's representation and seek new counsel, or take whatever other steps are available to me as a party, namely, the fact that a lawsuit has been filed on my behalf.   Indeed, as noted above this misrepresentation has been compounded by the subsequent misrepresentation that my case was being aggressively prosecuted.

35. Although I am not an attorney my current counsel has explained to me that the fact that the attorneys who filed this action allegedly on my behalf made no mention whatsoever of my injuries, my ingestion, or anything else unique to my claim mentioning nothing more than my name and my husband and that the only reasonable interpretation of the complaint was that there was never any intention to prosecute my claim individually based on the merits or the facts and circumstances surrounding my ingestion of Vioxx and the onset of the injuries I sustained.

36. I was a healthy 45-year-old woman with no pre-existing heart disease, no history of heart disease in my family, was not obese, a non-smoker and non-drinker and exercised regularly. I would never have consented to being lumped together with people who have severe pre-existing cardiovascular disease; family history of cardiovascular disease, smokers, drinkers, and other people who otherwise carried numerous risk factors for heart disease.

37. Although I agree with the general proposition that there is strength in numbers and that joining for certain purposes such as reducing some types of litigation costs is reasonable, I would not do so at the cost of sacrificing being heard on the merits of my individual claim.

38. I believe that I am entitled to accurate information from my attorney at all times, and to be able to have my attorney's advice be based on his professional judgment and not tainted by his own financial interests or conflicts which in this case clearly appeared to supersede any interest the firm had in my particular

outcome as opposed to the consequences to the firm if they did not recommend I settle.

39.   I am further advised it is no answer to say you can sue your attorney for malpractice if the judgment made to recommend settlement was outside the course of conduct that lawyers exercising reasonable care on behalf of clients would make in prosecuting tort claims such as mine, because it was Merck's conduct that blatantly interfered with the exercise of professional judgment by my attorneys.

40.   In concluding on this matter I want to say that I am an honest hard-working person and have been the same all my life and so is my husband.

41.   I would never have consented to a decision about whether or not I in fact ingested Vioxx to be made by some administrator based on cold, typewritten pages without hearing a single syllable from myself or my physician which is what happened to me here and I respectfully submit the same is a travesty which robs me of my rights as an American citizen.

42.   Although I am advised the Court's order should be vacated based on conduct by my attorneys which is described above, and Merck's conduct to the extent it was an impetus to the decisions my attorneys made, I would hope the Court also give strong consideration to the fact that I sustained a devastating injury which continues to affect me in many ways on a day-to-day basis under circumstances where the tort system permits recovery based on Merck's conduct, and allow a jury of my peers to hear and determine my case.

43.   I do not believe that public policy of my state or the United States

-9-

should permit a defendant such as Merck to interfere with the relationship I have my attorneys and to lock in place an agreement that places my lawyer and substantial conflict with me and prompts him to provide me with advice that is not based on independent professional judgment as I believed it to be, and in my best interest without consideration of any other factor other than the individual pros and cons of my case, and asked the court therefore vacate the consent that was obtained because my husband and I thought we were being adequately represented by our attorneys.

44.   I must turn to one additional issue which involves requesting that this court send this motion to another judge for decision for reasons which now follow.

45.   I have been advised that this Court is Chief Administrator of the resolution program which I agreed to participate in based on representations of my attorneys as described above.

46.   I believe that the court attempting to fill the dual responsibilities of chief administrator and judge in this proceeding creates a conflict of interest, especially where a person coming out of the settlement with the compensation such as myself is seeking an impartial determination from the decision-maker who has no interest in the resolution program, which I respectfully submit concludes no responsibilities in the administration of the program.

47.   I am also advised by my current attorney that the court was involved in the day-to-day negotiations of the settlement which resulted in the resolution program and as such necessarily had some awareness of both the contractual provisions which I contend resulted in my attorney turning on me, or at least

leaving me without the professional advice I would ordinarily have received if not impeded by financial issues of personal to the attorney.

48.   As such, I  question whether or not I can get a fair and impartial judgment from this court and therefore request that this motion be referred to another judge for decision.

_Debra J. miller_
DEBRA J. MILLER

SUBSCRIBED AND SWORN TO
before me this _7ᵗʰ_ day of _April_, 2010.

_Jan L. West_
Notary Public

My commission expires:  _10-30- 2012_.

-11-

**Exhibit A to Miller Affidavit**

STATE OF NEW YORK
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Debra J. Miller

**AFFIRMATION**

v.

**Civil Action No:**
2:06-CV-02198-EEF-DEK

Merck & Co. Inc., et al.,

      Defendant
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

      Ray Morris, M.D. affirms under the penalties of perjury the following:

1.    I am a physician licensed to practice in the State of Ohio.

2.    Debra J. Miller ~~is~~ *was RP* my patient and was treated by me in my office

located at 1740 Cleveland Road, Wooster OH 44691.  I supplied Debra J. Miller with

samples of Vioxx tablets, 25mg, to be taken ~~daily~~, *prn - up to rad RP* sufficient to last between the time

period of January 3, 2001 through February 11, 2001.

Date:      December 18, 2008

                                    _____

                                Ray Morris, M.D.

**Exhibit B to Miller Affidavit**

## RETAINER AGREEMENT

I, Debra J. Miller hereby retain CELLINO & BARNES, P.C., attorneys, to prosecute my claim for injuries and damages sustained as a result of use of the prescription drug VIOXX, and agree that my attorneys shall be compensated according to the Laws and Rules of the New York State Appellate Division, and the rules of any overseeing or Multi District Court.  This retainer agreement excludes any appellate practice and is solely limited to all steps necessary to bring the action to trial or settlement and this firms responsibilities end with the procurement of a verdict or settlement.

The scope of legal services to be provided include: initial and ongoing investigation of this incident; securing potential witnesses and evidence; gathering appropriate medical records, employment records, wage records, educational records and other records; drafting, filing and responding to appropriate court documents; selection and retention of experts and investigators as necessary; appearance at court proceedings, depositions and arbitrations; conducting settlement negotiations; preparing for trial as appropriate and necessary; and maintaining appropriate contact with the client throughout.

Attorneys' fees are to be charged in accordance with New York Law, and the rules of any overseeing or Multi District Court, and will be calculated after expenses associated with prosecuting the case have been deducted from the gross settlement or award. Since this matter may require advice regarding my home state, I understand and agree local counsel may be associated and assume joint responsibility.  The total attorneys' fee will be one-third of the difference between the total sum recovered and the expenses. Out of pocket expenses such as those expended for filing, transcripts, copies, postage, records, experts and other expenses will be set forth in a settlement statement provided to the client and reimbursed to the attorney.  Interest charges for out-of-pocket expenses may be added where applicable.  The client may have the right to arbitrate any fee dispute under the New York State Fee Dispute Resolution Program. The law firm reserves the right to withdraw from representation at any time.

As outlined above our fee arrangement is such we will receive one-third of the difference between the total sum recovered and the expenses.  If it would be beneficial to the client for settlement negotiations purposes, the firm may accept its fee in future periodic payments rather than a lump sum payment.  The value on the date of settlement of all future periodic payments that we receive will not exceed our agreed upon one-third of the present value of the recovery.

**THERE WILL BE NO ATTORNEY FEE OWED WHATSOEVER UNLESS A RECOVERY IS OBTAINED.  NO SETTLEMENT SHALL BE MADE WITHOUT FULL KNOWLEDGE AND CONSENT OF BOTH ATTORNEY AND CLIENT.**

I fully understand the information above and further state that it has been explained to me in its entirety.

X _Debra J Miller_                                   _11-23-2004_
CLIENT SIGNATURE                                     Date

X _____                            _11/30/04_
ATTORNEY SIGNATURE                                   Date

**Exhibit C to Miller Affidavit**

Stephen E. Barnes
Ross M. Cellino
Richard P. Amico
Richard J. Barnes
Denis J. Bastible
Paul B. Becker
Dylan J. Brennan
Charles F. Burkwit
Stephen C. Ciocca
Olney H. Clowe
Michael J. Cooper
L. Damien Costanza
John J. Cotter, Jr.
Christopher D. D'Amato
Joseph E. Dietrich, III
Mark C. Donadio
Sandy A. Fazili
Anthony L. Fumerelle
James M. Gerlach
Brian A. Goldstein, M.D., J.D.
David M. Goodman

# Cellino & Barnes

### A T T O R N E Y S   A T   L A W

J. Gregory Hoelscher
Gregory J. Huether
Christopher G. Johnson
Stephen J. Lacher
John W. Looney
Michael J. Lovecchio
Steven A. Lucia
Jason C. Luna
David B. Mahoney
Brett L. Manske
James E. Maslyn
Mark R. Multerer
John C. Murrett, Jr.
Scott K. Rohring
Thomas J. Rzepka
Gerald W. Schaffer, Jr.
Robert J. Schreck
Jeffrey C. Sendziak
John A. Sheehan
David O. Teach
K. John Wright

December 7, 2004

Daryl P. Ciambella
Chief Operating Officer

Ms. Debra J. Miller
2052 Township Road 405
Jeromesville, OH  44840

**RE:**   **Prescription Drug Vioxx**

Dear Ms. Miller:

Thank you for trusting Cellino & Barnes to handle your claim for money damages arising from your taking the prescription drug Vioxx. We are now in the process of gathering the materials necessary for the investigation of your specific claim and coordinating with our colleagues nationally regarding the prosecution of Vioxx claims against Merck & Co., Inc. In this regard, we recently participated in a national conference in Pasadena, California. You may have read about this important event in recent articles in the *New York Times, Wall Street Journal, Cleveland Plain Dealer* and *Minneapolis Star Tribune.*

We are now involved in compiling a growing and disturbing body of evidence that demonstrates Merck's failure to take appropriate action in the face of clear warning signs relating the use of Vioxx to cardio-pulmonary risks and cardiovascular events. Indeed, as early as 1999, the U.S. Food and Drug Administration (FDA) warned Merck that Merck's marketing of Vioxx was "false and misleading" because the advertisements contained "misrepresentations of Vioxx's safety profile…" Despite this warning, Merck continued to deny that Vioxx presented patients with unacceptable health risks when in 2001 a Merck press release claimed that Vioxx had a "favorable cardiovascular safety profile". The FDA responded to this claim by advising Merck that "Your claim in the press release is simply incomprehensible… the implication that Vioxx's cardiovascular profile is superior to [competing drugs] is misleading." The FDA specifically warned Merck to stop misleading doctors about Vioxx's effect on the cardiovascular system.

A Professional Corporation

Offices in Buffalo and Rochester, New York
17 Court Street, Seventh Floor • Buffalo, New York 14202-3290 • Tel: (716) 854-2020 • Fax: (716) 854-6291

Ms. Debra J. Miller
December 7, 2004
Page Two

Throughout 2002 and 2003, Merck continued its aggressive and high profile promotions of Vioxx. In 2003 alone, Vioxx sales topped $2.5 Billion.

Despite mounting evidence, as recently as August 30, 2004, Merck continued to defend the safety of Vioxx. Less than a month later, however, when yet another study demonstrated that Vioxx can triple the risk of heart attack, Merck finally withdrew the drug from the market. Merck's conduct and statements relating to Vioxx and Vioxx marketing have now resulted in separate and ongoing investigations by the U.S. Department of Justice, the U.S. Securities and Exchange Commission and the U.S. Congress.

We are now engaged in making specific determinations regarding Vioxx's adverse health effects on our individual clients. This involves obtaining and reviewing medical and prescription records, in conjunction with our consultation with pharmacological and medical experts.

You may e-mail us at Vioxx@cellinoandbarnes.com. We look forward to keeping you advised of our continuing progress and ongoing efforts in your case as our investigation continues.

Very truly yours,

*Brian A. Goldstein*/keb

Brian A. Goldstein*
1-800-483-2050

BAG:keb
*Brian A. Goldstein is admitted to the practice of law in New York.

**Exhibit D to Miller Affidavit**



Stephen E. Barnes
Richard P. Amico
Richard J. Barnes
Denis J. Bastible
Paul B. Becker
Dylan J. Brennan
Charles F. Burkwit
Stephen C. Ciocca
Elizabeth C. Clarke
Olney H. Clowe
Michael J. Cooper
John J. Cotter, Jr.
Christopher D. D'Amato
Sandy A. Fazili
Brian A. Goldstein, M.D., J.D.
David M. Goodman
Gregory J. Huether

Stephen J. Lacher
John W. Looney
Michael J. Lovecchio
Jason C. Luna
Brett L. Manske
James E. Maslyn
John C. Murrett, Jr.
Scott K. Rohring
Thomas J. Rzepka
Robert A. Scalione
Gerald W. Schaffer, Jr.
Robert J. Schreck
Jeffrey C. Sendziak
John A. Sheehan
David O. Teach
Michael J. Williams
K. John Wright

Daryl P. Ciambella
Chief Operating Officer

December 7, 2005

Ms. Debra J. Miller
2052 Township Road 405
Jeromesville, OH  44840

**RE:    Vioxx Litigation Update**

Dear Ms. Miller:

As the year draws to a close, I wanted to wish you and your family a happy and healthy holiday season and New Year on behalf of our entire Vioxx team.   It has been a landmark year for those whose lives were unnecessarily harmed by Vioxx.

I am pleased to pass along some potentially very promising news. The Judge overseeing the multi-district federal litigation and the Judge overseeing the New Jersey State litigation both have both strongly indicated they intend to preside over only a limited number of Vioxx trials through the first quarter of next year.  They then intend to sit down with Merck to explore the possibility of a global negotiated settlement of all remaining cases.

This is the first time the possibility of settlement has seriously been discussed.   Any negotiations would be expected to extend over several months.  Although your case is already positioned to take advantage of this potential settlement opportunity, it will continue to be aggressively litigated and moved forward without interruption.  This will allow us to proceed from a position of strength through trial, if necessary, or to achieve the maximum possible settlement if Merck chooses to negotiate in good faith.

We will continue to keep you updated as we enter the promising New Year and our work and progress continues toward the resolution of your case.

Very truly yours,

*Brian A. Goldstein

*Brian A. Goldstein is admitted to the practice of law in New York.

A Professional Corporation

Offices in Buffalo and Rochester, New York

17 Court Street, Seventh Floor • Buffalo, New York 14202-3290 • Tel: (716) 854-2020 • Fax: (716) 854-6291

**Exhibit E to Miller Affidavit**

Stephen E. Barnes
Richard P. Amico
Richard J. Barnes
Denis J. Bastible
Paul B. Becker
Dylan J. Brennan
Charles F. Burkwit
Stephen C. Ciocca
Elizabeth C. Clarke
Olney H. Clowe
Michael J. Cooper
John J. Cotter, Jr.
Christopher D. D'Amato
Sandy A. Fazili
Brian A. Goldstein, M.D., J.D.
David M. Goodman
Gregory J. Huether

# THE BARNES FIRM

### ATTORNEYS AT LAW

Stephen J. Lacher
John W. Looney
Michael J. Lovecchio
Jason C. Luna
Brett L. Manske
James E. Maslyn
John C. Murrett, Jr.
Scott K. Rohring
Thomas J. Rzepka
Robert A. Scalione
Gerald W. Schaffer, Jr.
Robert J. Schreck
Jeffrey C. Sendziak
John A. Sheehan
David O. Teach
Michael J. Williams
K. John Wright

———

Daryl P. Ciambella
Chief Operating Officer

December 9, 2005

Ms. Debra J. Miller
2052 Township Road 405
Jeromesville, OH  44840

**RE:    Vioxx Litigation Update**

Dear Ms. Miller:

You were recently sent the appropriate authorizations and Plaintiff Fact Sheet necessary for the efficient management of your case in the national multi-district federal litigation.  We strongly believe the federal system is the preferred forum for your case and will allow the highest possible resolution given the stunning success of the first federal trial, the continuing advantages in that system for your particular case, and the recent win by Merck in New Jersey State Court.

We have hired the firm of Trepanier & MacGillis P.A. to serve as local counsel in order to facilitate the transfer of your case into the federal courts coordinated Vioxx litigation structure in the venue most favorable to your case.  We are employing the Trepanier firm on a limited basis for the sole purpose of expediting the filing and transfer of your case for which they will receive a flat fee.  If supplemental services are required, their fees will also be capped at an hourly rate.  You should have limited, if any, contact with the Trepanier firm during this brief period.

As an additional tactical matter, your case may be grouped with other similarly situated individuals.  The coordination of civil actions permits each individual to benefit from the "strength in numbers" of other plaintiffs and also operates to significantly reduce the litigation costs borne by each person.  This strategy is regularly employed and has proven very effective and beneficial.  Once transferred into the federal system, your case will automatically be forwarded to the national system and managed accordingly.

We will continue to keep you updated with the significant developments and progress made toward resolving your case.  As always, if you have any questions or concerns regarding the process or the strategies as outlined in this letter, please feel free to give us a call.

Very truly yours,

*Brian A. Goldstein

*Brian A. Goldstein is admitted to the practice of law in New York.

A Professional Corporation

Offices in Buffalo and Rochester, New York

17 Court Street, Seventh Floor • Buffalo, New York 14202-3290 • Tel: (716) 854-2020 • Fax: (716) 854-6291

**Exhibit F to Miller Affidavit**



Stephen E. Barnes
Richard P. Amico
Richard J. Barnes
Denis J. Bastible
Paul B. Becker
Dylan J. Brennan
Charles F. Burkwit
Stephen C. Ciocca
Elizabeth C. Clarke
Olney H. Clowe
Michael J. Cooper
John J. Cotter, Jr.
Christopher D. D'Amato
Sandy A. Fazili
Brian A. Goldstein, M.D., J.D.
David M. Goodman
Gregory J. Huether

Stephen J. Lacher
John W. Looney
Michael J. Lovecchio
Brett L. Manske
James E. Maslyn
John C. Murrett, Jr.
Scott K. Rohring
Thomas J. Rzepka
Robert A. Scalione
Gerald W. Schaffer, Jr.
Robert J. Schreck
Jeffrey C. Sendziak
John A. Sheehan
David O. Teach
Michael J. Williams
K. John Wright

Daryl P. Ciambella
Chief Operating Officer

January 5, 2006

Ms. Debra J. Miller
2052 Township Road 405
Jeromesville, OH  44840

    **RE:   Vioxx Suit**

Dear Ms. Miller:

    I am pleased to confirm that The Barnes Firm has formally filed your Vioxx lawsuit and that the planned process of removal to Federal Court is already underway.

    Evidence continues to be uncovered on an ongoing basis regarding Merck's actions with Vioxx.  The latest discovery was Merck's intentional deletion of several deaths from its Vioxx data two days before submitting the study to the New England Journal of Medicine for publication.  It is believed this newly uncovered evidence was one of the reasons a mistrial was declared in first federal trial in the multi-district litigation.   The case is expected to be rescheduled in the near future so that the additional evidence of Merck's misconduct can be introduced at trial.

    I will continue to update you as The Barnes Firm prosecutes your case as expeditiously as possible.  As always, should you have any questions, please do not hesitate to contact us toll free at 1-800-453-2050 or through our Vioxx dedicated email at Vioxx@thebarnesfirm.com.

    Very truly yours,

*Brian A. Goldstein

*Brian A. Goldstein is admitted to the practice of law in New York.

A Professional Corporation

Offices in Buffalo and Rochester, New York

17 Court Street, Seventh Floor • Buffalo, New York 14202-3290 • Tel: (716) 854-2020 • Fax: (716) 854-6291

**Exhibit G to Miller Affidavit**



Stephen E. Barnes
Richard P. Amico
Richard J. Barnes
Denis J. Bastible
Paul B. Becker
Dylan J. Brennan
Charles F. Burkwit
Stephen C. Ciocca
Elizabeth C. Clarke
Olney H. Clowe
Michael J. Cooper
John J. Cotter, Jr.
Christopher D. D'Amato
Sandy A. Fazili
Brian A. Goldstein, M.D., J.D.
David M. Goodman
Gregory J. Huether

Stephen J. Lacher
John W. Looney
Michael J. Lovecchio
Brett L. Manske
James E. Maslyn
John C. Murrett, Jr.
Stephen J. Paluch
Scott K. Rohring
Robert A. Scalione
Gerald W. Schaffer, Jr.
Robert J. Schreck
Jeffrey C. Sendziak
John A. Sheehan
David O. Teach
Michael J. Williams
K. John Wright

Thomas J. Rzepka
of Counsel

Daryl P. Ciambella
Chief Operating Officer

# THE BARNES FIRM
## ATTORNEYS AT LAW

June 16, 2006

Ms. Debra J. Miller
2052 Township Road 405
Jeromesville, OH 44840

**RE:     Vioxx Litigation Update**

Dear Ms. Miller:

I am pleased to report that, with your much appreciated assistance, your Plaintiff Profile Form and supporting documents is being finalized for filing with the Court. The burden now shifts to Merck to file similar documents specifically disclosing its interactions with your physicians in the marketing of Vioxx.

From past experience, Merck will do all it can to drag its feet in order to delay its disclosure. It was important, then, for us to have completed your documents as fully as possible and on time. I thank you for your time and effort in helping us meet the Court's deadline.

In order to continue our cooperation and compliance with the Court's directives, and to keep pressure on Merck, I am enclosing five additional authorizations. I would ask that you sign each of the **five** authorizations **and return in the enclosed envelope at your earliest opportunity.**

Because the Court typically requires periodic updated authorizations, I have taken the liberty of enclosing a Power of Attorney Short Form that allows us to affix your signature *only* to authorizations required in your Vioxx case. This one form will allow us to comply with all additional authorization requests until your Vioxx case resolves. As we proceed through the court process, the more quickly we respond to additional necessary requests, the more quickly each case moves toward resolution.

On the national Vioxx front, the third trial in New Jersey is underway. The case was brought on behalf of a 68 year old grandmother who suffered a significant heart attack after being a long term Vioxx user. Trial will last another two weeks and hopefully will bring an additional Plaintiff's verdict in Merck's home state. You may recall the last New Jersey jury found Merck knowingly misled the FDA and showed "a wanton and willful" disregard of patients' rights. With each plaintiffs' verdict there is increasing pressure on Merck to do the right thing and compensate individuals unnecessarily injured by Vioxx.

I will continue to update you as we progress. In the interim, please do not hesitate to contact us toll free at 1-800-483-2050 or through our Vioxx dedicated e-mail at Vioxx@thebarnesfirm.com.

Very truly yours,

*Brian A. Goldstein is admitted
to the practice of law in New York

*Brian A. Goldstein
A Professional Corporation

Offices in Buffalo and Rochester, New York
17 Court Street, Seventh Floor • Buffalo, New York 14202-3290 • Tel: (716) 854-2020 • Fax: (716) 854-6291

If a representative, please describe your relationship to the plaintiff and your authority to act on his/her behalf:_____

**Exhibit H to Miller Affidavit**

Stephen E. Barnes
Ross M. Cellino
Richard P. Amico
Richard J. Barnes
Denis J. Bastible
Paul B. Becker
Dylan J. Brennan
Charles F. Burkwit
Stephen C. Ciocca
Elizabeth C. Clarke
Olney H. Clowe
Michael J. Cooper
Christopher D. D'Amato
Sandy A. Fazili
Brian A. Goldstein, M.D., J.D.
David M. Goodman
Stephen J. Lacher

# Cellino & Barnes p.c.

### A T T O R N E Y S   A T   L A W

John W. Looney
Michael J. Lovecchio
Brett L. Manske
James E. Maslyn
John C. Murrett, Jr.
Gregory V. Pajak
Stephen J. Paluch
Scott K. Rohring
Robert A. Scalione
Gerald W. Schaffer, Jr.
Robert J. Schreck
Jeffrey C. Sendziak
John A. Sheehan
David O. Teach
Michael J. Williams
K. John Wright

―――――
Daryl P. Ciambella
Chief Operating Officer

November 9, 2007

Ms. Debra J. Miller
2052 Township Road 405
Jeromesville, OH  44840

RE:    *Vioxx Settlement*

Dear Ms. Miller:

I am delighted to relay the news that more than three years after Vioxx was recalled and after over five years of litigation and nineteen trials, Merck has finally stepped up and agreed to pay $4.85 Billion to resolve many of Vioxx cases involving heart attack, sudden cardiac death and certain strokes.

As we relayed in previous update letters, intensive negotiations had been taking place under the direction of the Court as increasing pressure mounted on Merck.  In the litigation to date, more than 50 million pages of documents have been produced, over 2,000 depositions have been completed, literally thousands of motions have been filed and hundreds of medical experts have been consulted.  Trials, as you are aware, have returned mixed results with Merck having prevailed more often than the plaintiffs.

This is not a class action settlement and the criterion of this settlement requires a review of each individual file since each case will stand on its own merits.  We believe individuals meeting the criteria will likely be well served by participating in the settlement, however some may not qualify since there must be objective medical proof of a heart attack, sudden cardiac death or ischemic stroke, evidence of receipt of at least 30 Vioxx tablets within 60 days of the injury, and the heart attack, death or ischemic stroke must have occurred within 14 days of the claimed use.

We are very pleased with Merck's decision to begin to compensate those who we believe were injured as a result of Vioxx.  We are evaluating your case to determine if we believe it will meet the requirements of this settlement and if we can recommend this settlement to you as the best way to maximize your recovery.  For those who qualify, at least a portion of the settlement proceeds may become payable as early as next year.

We will continue to keep you updated regarding this settlement and our evaluation of your individual case.  Please do not hesitate to contact us with any questions toll free at 1-800-483-2050 or through our Vioxx dedicated e-mail at Vioxx@cellinoandbarnes.com.

Very truly yours,

Brian A. Goldstein*
* Admitted to the practice of the law in New York.

A Professional Corporation
Offices in Buffalo and Rochester, New York
17 Court Street, Seventh Floor • Buffalo, New York 14202-3290 • Tel: (716) 854-2020 • Fax: (716) 854-6291

**Exhibit I to Miller Affidavit**

# Cellino & Barnes p.c.

A T T O R N E Y S   A t   L A W

Stephen E. Barnes
Ross M. Cellino
Richard P. Amico
Richard J. Barnes
Denis J. Bastible
Paul B. Becker
Dylan J. Brennan
Charles F. Burkwit
Stephen C. Ciocca
Elizabeth C. Clarke
Olney H. Clowe
Michael J. Cooper
Christopher D. D'Amato
Sandy A. Fazili
Brian A. Goldstein, M.D., J.D.
David M. Goodman

John W. Looney
Michael J. Lovecchio
Brett L. Manske
James E. Maslyn
John C. Murrett, Jr.
Gregory V. Pajak
Stephen J. Paluch
Scott K. Rohring
Robert A. Scalione
Gerald W. Schaffer, Jr.
Robert J. Schreck
Jeffrey C. Sendziak
John A. Sheehan
David O. Teach
Michael J. Williams
K. John Wright

Daryl P. Ciambella
Chief Operating Officer

January 24, 2008

Ms. Debra J. Miller
2052 Township Road 405
Jeromesville, OH  44840

RE:    Vioxx Settlement

Dear Ms. Miller:

As you are aware, after more than three years of difficult litigation, Merck has finally been compelled to compensate certain individuals who have suffered a documented heart attack (including sudden cardiac death) or ischemic stroke and who can also document their use of Vioxx in close proximity to the event.  Our prior letter set forth some of the basic criteria necessary to qualify for this settlement.  We are enclosing for your review the full details of the proposed settlement and we encourage you to visit the official Vioxx website www.OfficialVioxxSettlement.com.

Since the announcement of the proposed settlement we have undertaken a comprehensive review of each file, including yours, to determine if we believe you will be able to meet each of the "gates" required to qualify for this settlement.  The "gate" criterion in many cases requires proof in a different form and/or proof in addition to the materials we have previously gathered in support of your case.  We are in the process of obtaining the additional required materials and, in anticipation of continuing participation in the proposed settlement, have officially registered you in the Vioxx settlement program.  Your registration does not mandate your participation, nor does it guarantee that you will qualify for settlement under the program.

After careful review of your file, scrutiny of the proposed settlement, and consideration of the options available, **we are recommending that you do participate in the settlement process.**  For those who qualify, we believe this settlement will provide substantial settlement value with a fair allocation among all qualifying individuals.  As is often the case with global settlements, it is not possible to guarantee that you ultimately will qualify, nor is it possible to determine with certainty the settlement value of any particular case that does qualify.  Each case will be evaluated by an independent Claims Administrator.  Once the total number of qualifying cases is determined, each qualifying case is graded according to multiple criteria including the severity of injury, medical history, length of Vioxx use and other factors.   The settlement fund for qualifying heart attack/sudden cardiac death cases of $4 Billion Dollars and the fund for qualifying ischemic strokes of $850 Million Dollars will then be distributed.

The proposed settlement includes an early initial payment of 40% of the total estimated settlement to qualifying individuals who promptly submit the signed Releases, authorizations and all required medical  proofs of injury and Vioxx usage. We are  enclosing

A Professional Corporation
Offices in Buffalo and Rochester, New York
17 Court Street, Seventh Floor • Buffalo, New York 14202-3290 • Tel: (716) 854-2020 • Fax: (716) 854-6291

the required Releases, authorizations and a Spouse/Derivative Claim Information Sheet. We will continue to put forth our best effort to secure the additional documentation required in your case in order to comply with the early submission deadline, although this may not be possible in all cases.  For all qualifying individuals, the overall net settlement proceeds are expected to be paid within one to two years after all claims have been processed.

If your case does qualify, you will receive the settlement value determined by the Claims Administrator instead of waiting for your case to come up for trial.  While you do give up having your case tried and the possibility of a jury awarding more, less or no money, you should recall that over the past three years, only 5 of 17 plaintiffs have prevailed against Merck at trial.  The cost of each trial was in the millions of dollars and, to date, Merck has appealed every verdict such that not one penny has yet been paid to any Vioxx plaintiff.  If your case initially fails to qualify for this settlement, there is an option to have that decision reviewed for final determination within the settlement or we can simply choose to have your Releases returned to us and we would be able to continue your current lawsuit against Merck.  The settlement also contains a provision to pay up to an additional 2,500 cases that would not meet the settlement criteria.  As a practical matter, we will need to take a careful look at each non-qualifying case to determine if there is reasonable likelihood of sufficient proof to ultimately prevail at trial.

Please carefully review this letter and all of the enclosures, visit the official website and call or e-mail us with any questions you have.  Following your review, if you choose to follow our recommendation to participate in the proposed settlement, kindly

1.   **Sign the Releases (both you and your spouse),
      in the presence of a notary public;**

2.   **Sign the medical authorization;**

3.   **Sign the employment authorization;**

4.   **Complete the Spouse/Derivative Claim Information Sheet; and**

5.   **Return 1-4 to us in the enclosed envelope as early as possible.**

We look forward to continuing our work on your behalf to bring your Vioxx case to a successful conclusion.

Very truly yours,

Brian A. Goldstein*
1-800-483-2050

* Brian A. Goldstein is admitted to the practice of the law in New York.

**Exhibit J to Miller Affidavit**

Stephen E. Barnes
Ross M. Cellino
Richard P. Amico
Richard J. Barnes
Denis J. Bastible
Dylan J. Brennan
Charles F. Burkwit
Stephen C. Ciocca
Olney H. Clowe
Michael J. Cooper
Christopher D. D'Amato
Nicholas B. Davis
Sandy A. Fazili
Brian A. Goldstein, M.D., J.D.
David M. Goodman
John W. Looney
Michael J. Lovecchio
William J. Loyd

# Cellino & Barnes p.c.

### A T T O R N E Y S   A T   L A W

Brett L. Manske
James E. Maslyn
John C. Murrett, Jr.
Christian R. Oliver
Gregory V. Pajak
Stephen J. Paluch
Scott K. Rohring
Robert A. Scalione
Gerald W. Schaffer, Jr.
Robert J. Schreck
Jeffrey C. Sendziak
John A. Sheehan
Ellen B. Sturm
David O. Teach
Michael J. Williams
K. John Wright
———
Daryl P. Ciambella
Chief Operating Officer

April 1, 2009


RECEIVED
OCT 29 2009
By

Ms. Debra J. Miller
2052 Township Road 405
Jeromesville, OH  44840

RE:    Vioxx Settlement

Dear Ms. Miller:

As you are aware from our prior correspondence and the copy of the Master Settlement Agreement provided to you, the Vioxx Settlement Program subjects each Vioxx claim to a qualification review to determine if the claim does or does not meet the established settlement criteria.  The Claims Administrator's individual case review includes three "gate" criteria: whether the medical records document a qualified Vioxx-induced injury (myocardial infarction/heart attack, ischemic stroke or sudden cardiac death), sufficient duration of Vioxx use (whether Vioxx use was long enough to cause a potential injury) and proximity (whether Vioxx use was sufficiently close in time to the injury).

The Claims Administrator's initial review has determined that your claim did not meet all three gate criteria and therefore is not qualified for payment in the settlement program.  We are enclosing a copy of the initial determination for your review.  This initial determination is not final and triggers an automatic review by the Gate Committee.  The Gate Committee may determine that your claim does qualify or it may agree that your claim does not qualify.  If the Gate Committee finds that your claim does not qualify, there is a right to a final appeal to the Claims Administrator's office.

While we realize that this initial determination is disappointing, the program provides an opportunity to supplement your claim with any additional information which may serve to strengthen your case. There are strict deadlines for supplementing with any additional materials and you must contact us immediately if you possess or believe that additional medical or pharmacy records or other information may exist which would potentially be supportive of your case.

We will update you of the Claims Administrator's determination at each stage of review. Please do not hesitate to call us toll free at 1-800-483-2050 with any questions at any point during the ongoing review process.

Very truly yours,

Brian A. Goldstein*
1-800-483-2050

BAG:amt

*Brian A. Goldstein is admitted to the practice of law in the State of New York

A Professional Corporation

Offices in Buffalo, Rochester and Long Island, New York

350 Main Street, 25th Floor • 2500 Main Place Tower • Buffalo, New York 14202-3725 • Tel: (716) 854-2020 • Fax: (716) 854-6291
1-800-483-2050

*Confidential Information*

| V3034 | **CLAIMS ADMINISTRATOR NOTICE OF INELIGIBILTY**<br>(Date of Notice: 3/31/09) |
|---|---|

## I. CLAIMANT INFORMATION

| Claimant Name | Miller, Debra J. | | VCN | 1076336 |
|---|---|---|---|---|
| Law Firm | Cellino & Barnes, P.C. | | | |
| Primary Injury: | MI | Date of Event: | 2/11/01 | |

## II. CLAIMS ADMINISTRATOR DETERMINATION

This is an official Notice from BrownGreer PLC, the Vioxx Claims Administrator. The Claims Administrator has determined that this claim does not meet the Eligibility Requirements for the Settlement Program because it does not pass the following Gate(s):

| 1. | Injury | ☐ |
|---|---|---|
| 2. | Duration | ☒ |
| 3. | Proximity | ☒ |

## III. STATUS OF REQUIRED PME RECORDS

Section 1.3.1 and, by reference, Exhibit 1.3.1 require PME records, which, for eligibility determinations include Event Records and Proof of Vioxx Use. If either or both of the boxes in this section is checked, it is because the Claims Administrator has determined that your Claims Package did not include those required records. Without both Event Records and Proof of Use, a claim may not pass the Eligibility Requirements.

| 4. | No Event Records Submitted for Claimed Injury | ☐ |
|---|---|---|
| 5. | No Proof of Use Submitted | ☐ |

## IV. RIGHT TO SUBMIT ADDITIONAL INFORMATION

After you close out of this Notice, you will have the ability to choose one of the following three options within 14 calendar days: 1) I have not provided any additional information and do not intend on providing any additional information to the Claims Administrator. Send this Claim to the Gate Committee; 2) I need more time to gather additional information about my claim; 3) I have completed gathering all additional information about my claim, and I am submitting the following new records and information to the Claims Administrator for a Secondary Review. If you choose option 3, do not send information you previously submitted. The Claims Administrator will review any newly submitted information to determine if it renders the claim eligible. If it does, we will send you a *Claims Administrator Notice of Eligibility after Receipt of Additional Claims Material*. During the Secondary Review, the Claims Administrator may discover a passing Gate is now a failing Gate. If the additional Claims Material does not change the outcome, or if 14 days passes from the date of this Notice and you have not selected option 1, 2, or 3, we will send the claim and all information you have submitted to the Gate Committee, pursuant to Section 2.5 of the Settlement Agreement. If you choose option 2, you may change that choice before the expiration date to option 1 or 3. However, if you choose option 1 or 3, you may not change your response. Any new document submitted after the expiration of the 14 day period will be governed by Section 2.8 of the Settlement Agreement.

## V. GATE COMMITTEE REVIEW

The Gate Committee is comprised of three representatives appointed by Merck and three representatives appointed by the Negotiating Plaintiffs' Counsel. If your claim goes to the Gate Committee, it will review your submitted Claims Package and determine if you should be deemed a Qualifying Program Claimant who is eligible to receive benefits in the Settlement Program. If a majority of the Gate Committee decides that your claim is eligible, the Claims Administrator will notify you of that result and will then review the claim for Points Assessment. If the Gate Committee decides that your claim is not eligible, the Claims Administrator will send you a *Gate Committee Notice of Ineligibility*, which will outline the options available to you under the Settlement Agreement.

Stephen E. Barnes
Ross M. Cellino
Richard P. Amico
Richard J. Barnes
Denis J. Bastible
Dylan J. Brennan
Charles F. Burkwit
Stephen C. Ciocca
Michael J. Cooper
Christopher D. D'Amato
Nicholas B. Davis
Sandy A. Fazili
Brian A. Goldstein, M.D., J.D.
David M. Goodman
John W. Looney
Michael J. Lovecchio
William J. Loyd

# Cellino & Barnes p.c.

## A T T O R N E Y S   A T   L A W

Brett L. Manske
James E. Maslyn
John C. Murrett, Jr.
Christian R. Oliver
Gregory V. Pajak
Stephen J. Paluch
Scott K. Rohring
Robert A. Scalione
Gerald W. Schaffer, Jr.
Robert J. Schreck
Jeffrey C. Sendziak
John A. Sheehan
Ellen B. Sturm
David O. Teach
Robert L. Voltz
Michael J. Williams
K. John Wright
———
Daryl P. Ciambella
Chief Operating Officer

May 21, 2009

Ms. Debra J. Miller
2052 Township Road 405
Jeromesville, OH  44840

**RE:    Vioxx Settlement Program**

Dear Ms. Miller:

As you are aware, the Vioxx Claims Administrator's initial determination was that your Vioxx claim did not meet one or more of the eligibility requirements (gates) to qualify for payment in the Vioxx Settlement Program.

The Claims Administrator's second review has again determined that your claim did _not_ meet all three gate criteria.  We are enclosing a copy of the second determination for your review.  This second determination is not final and triggers an automatic review by the Gate Committee.  The Gate Committee may determine that your claim does qualify or it may agree that your claim does not qualify.  If the Gate Committee finds that your claim does not qualify, there is a right to a final appeal to the Claims Administrator's office.

We will advise you of the Gate Committee's determination as soon as it is received.  Please do not hesitate to call us toll free at 1-800-483-2050 with any questions at any point during the ongoing review process.

Very truly yours,

Brian A. Goldstein*
1-800-483-2050

BAG:jr

*Brian A. Goldstein is admitted to the practice of
law in the State of New York

A Professional Corporation

Offices in Buffalo, Rochester and Long Island, New York

350 Main Street, 25th Floor • 2500 Main Place Tower • Buffalo, New York 14202-3725 • Tel: (716) 854-2020 • Fax: (716) 854-6291

1-800-483-2050

*Confidential Information*

| | **CLAIMS ADMINISTRATOR NOTICE OF INELIGIBILITY** |
|---|---|
| **V2081** | **AFTER RECEIPT OF ADDITIONAL CLAIMS MATERIAL** |
| | (Date of Notice: 5/19/09) |

### I. CLAIMANT INFORMATION

| Claimant Name | Miller, Debra J. | | **VCN** | 1076336 |
|---|---|---|---|---|
| Law Firm | Cellino & Barnes, P.C. | | | |
| Primary Injury: | MI | Date of Event: | 2/11/01 | |

### II. CLAIMS ADMINISTRATOR DETERMINATION FOLLOWING REVIEW OF ADDITIONAL MATERIALS

This is an official Notification from BrownGreer PLC, the Vioxx Claims Administrator. After reviewing the additional claims material submitted in support of the claim, the Claims Administrator has determined that this claim does not meet the Eligibility Requirements for the Program because it does not pass the following Gate(s):

| 1. | Injury | ☐ |
|---|---|---|
| 2. | Duration | ☒ |
| 3. | Proximity | ☒ |

### III. STATUS OF REQUIRED PME RECORDS

Section 1.3.1 and, by reference, Exhibit 1.3.1 require PME records, which, for eligibility determinations include a completed Claims Form, Event Records and Proof of Vioxx Use. If any of the boxes in this section is checked, it is because the Claims Administrator has determined that your Claims Package did not include those required records. Without a completed Claims Form and both Event Records and Proof of Use, a claim may not pass the Eligibility Requirements.

| 4. | No Event Records Submitted for Claimed Injury | ☐ |
|---|---|---|
| 5. | No Proof of Use Submitted | ☐ |
| 6. | No Asserted Injury Date on Claims Form | ☐ |

### IV. STATUS OF CLAIMS FOLLOWING REVIEW OF ADDITIONAL MATERIALS

The Claims Administrator has reviewed all newly submitted information and has determined the claim to be ineligible. We will send the claim and all information you have submitted to the Gate Committee, pursuant to Section 2.5 of the Settlement Agreement. Submission of your claim to the Gate Committee is automatic and requires no further response or action on your part.

### V. GATE COMMITTEE REVIEW

The Gate Committee is comprised of three representatives appointed by Merck and three representatives appointed by the Negotiating Plaintiffs' Counsel. The Gate Committee will review your submitted Claims Package and determine if you should be deemed a Qualifying Program Claimant who is eligible to receive benefits in the Settlement Program. If a majority of the Gate Committee decides that your claim is eligible, the Claims Administrator will notify you of that result and will then review the claim for Points Assessment. If the Gate Committee decides that your claim is not eligible, the Claims Administrator will send you a *Gate Committee Notice of Ineligibility*, which will outline the options available to you under the Settlement Agreement.

VIOXX LAIMS DMINISTRATOR
BROWNGREER‖PLC

# Cellino & Barnes p.c.

A T T O R N E Y S   A T   L A W

Stephen E. Barnes
Ross M. Cellino
Richard P. Amico
Richard J. Barnes
Denis J. Bastible
Dylan J. Brennan
Charles F. Burkwit
Stephen C. Ciocca
Michael J. Cooper
Christopher D. D'Amato
Nicholas B. Davis
Sandy A. Fazili
Brian A. Goldstein, M.D., J.D.
David M. Goodman
John W. Looney
Michael J. Lovecchic
William J. Loyc
Brett L. Manske
James E. Maslyn

John C. Murrett, Jr.
Matthew R. Newborn
Christian R. Oliver
Gregory V. Fajak
Stephen J. Paluch
Scott K. Rohring
Stephen A. Saltzman
Robert A. Scalione
Gerald W. Schaffer, Jr.
Robert J. Schreck
Jeffrey C. Sendziak
John A. Sheehan
Ellen B. Sturm
David O. Teach
Robert L. Voltz
Michael J. Williams
K. John Wright

Daryl P. Ciambella
Chief Operating Officer

July 8, 2009

Ms. Debra J. Miller
2052 Township Road 405
Jeromesville, OH  44840

RE:     **Vioxx Program – Gate Committee Ineligibility**

Dear Ms. Miller:

As you are aware, the Vioxx Claims Administrator determined that your claim did not meet the three criteria required for eligibility for payment in the Vioxx Settlement Program.  We provided you with a copy of the Claims Administrator's Notice, asked you to contact us with any additional supportive information, and advised that your case would next proceed to a second review by the Gate Committee.

The Gate Committee unfortunately likewise concluded that your case did not meet all criteria and your claim therefore currently remains ineligible for payment. We are enclosing a copy of your Gate Committee Notice of Ineligibility received today.

As contained in the Notice, the Gate Committee determination of ineligibility triggers two options with very short time requirements.  The options are:  (1) appealing to the Special Master who then conducts a new, complete and final review of your case or (2) removing the case from the Settlement Program by executing a Stipulation and litigating the case in Court.  If neither option is selected in time, or if the Special Master determines the case is ineligible, the case is automatically dismissed (ended).

**We recommend that you allow us to appeal your case to the Special Master.  This must be done within 15 days and we will exercise that option for you if we do not hear from you to the contrary.**

Based upon our assessment of your case and because your case has already failed to pass both the review of the Claims Committee and the review of the Gates Committee, we believe the likelihood of litigating your case individually to a successful verdict is small.  Our recommendation of appeal to the Special Master allows a third and final possibility of payment in the established settlement program.  The Special Master has the ability to rely upon all evidence contained in your claims package as well as the discretion to rely upon all additional documentation in the Litigation Medical Records Depository.  The Special Master's decision is final and non-appealable by either side.

A Professional Corporation

Offices in Buffalo, Rochester and Long Island, New York

350 Main Street, 25th Floor • 2500 Main Place Tower • Buffalo, New York 14202-3725 • Tel: (716) 854-2020 • Fax: (716) 854-6291
1-800-483-2050

July 8, 2009
Page 2

        If we do not hear from you, we will proceed by entering the appeal to the Special Master on your behalf. If you elect the litigation option contrary to our recommendation, you will be required to sign a Stipulation which must be promptly filed and you must contact us immediately.

        As always, if your options or status are not clear to you, or if you have any other questions, please contact us as early as possible toll free at 1-800-483-2050. Otherwise we will advise you of the Special Master's decision as soon as it is received.

                                        Very truly yours,

                                        Brian A. Goldstein*
                                        1-800-483-2050

BAG:jr
Enc.

*Brian A. Goldstein is admitted to the practice of law in the State of New York

*Confidential Settlement Information*

| | **GATE COMMITTEE NOTICE OF INELIGIBILITY** |
|---|---|
| **V2065** | **(Single Injury)**<br>Date of Notice: 7/6/09<br>Deadline to Appeal to Special Master: 7/21/09<br>Deadline to Submit FES: 8/5/09 |

### I. CLAIMANT INFORMATION

| Claimant Name | Miller, Debra J. | | VCN | 1076336 |
|---|---|---|---|---|
| Law Firm | Cellino & Barnes, P.C. | | | |
| Primary Injury | MI | **Injury Date** | | 2/11/01 |

### II. GATE COMMITTEE DETERMINATION

This is an official Notice from BrownGreer PLC, the Vioxx Claims Administrator. The Gate Committee has determined this claim does not meet the Eligibility Requirements for the Program because it does not pass the following Gate(s):

| | Gate | Primary Injury |
|---|---|---|
| 1. | Injury | ☐ |
| 2. | Duration | X |
| 3. | Proximity | X |

### III. CLAIMANT'S RESPONSE TO THE NOTICE

After you close out of this Notice, you will have the ability to choose one of the following two options:

**1) Appeal to the Special Master.** You must select this option on or before the Deadline to Appeal to Special Master shown above. The Special Master's decision will be final and binding and, if the Special Master finds the claim Ineligible, the Claims Administrator will deliver the Claimant's Dismissal With Prejudice Stipulation and Release to Merck. You will not be able to submit materials to the Special Master on appeal that you have not previously submitted to the Claims Administrator.

**2) Submit a Future Evidence Stipulation.** You must submit the Future Evidence Stipulation on or before the Deadline to Submit FES shown above. Upon proper completion and delivery of the Future Evidence Stipulation, the Claimant's Dismissal with Prejudice Stipulation and Release shall, subject to Section 2.7.3.1, be returned to the Claimant.

After you have chosen one of these options, you may not change your response.

*f you neither Appeal nor submit a Future Evidence Stipulation on or before the respective deadlines shown above, the Claims Administrator shall deliver the Claimant's Dismissal With Prejudice Stipulation and Release to Merck (and, without limitation, Merck shall be free to file or cause to be filed such Dismissal With Prejudice Stipulation and/or Release in any relevant action or proceeding.)*

## IV. APPEAL TO THE SPECIAL MASTER

If you decide to appeal to the Special Master, pursuant to 2.6.3 of the Settlement Agreement, the Special Master will determine de novo whether the claim meets the Eligibility Requirements, based solely on (i) the Claims Package submitted for the claim, and (ii) in the Special Master's discretion, any records or other documentation in the Litigation Medical Records Depository available to the Special Master pursuant to Section 1.3.4 that the Special Master deems relevant. The Special Master's decision on this matter shall be binding, final and Non-Appealable. The Special Master shall notify the Claims Administrator of its decision, and the Claims Administrator shall promptly notify the Gate Committee and the Enrolled Program Claimant of the Special Master's decision.

## V. FUTURE EVIDENCE STIPULATION

If you decide to submit a Future Evidence Stipulation pursuant to 2.7.3 of the Settlement Agreement, you must first certify the Claims Package available to you on the portal. You may then view, download, and print the Future Evidence Stipulation. The Future Evidence Stipulation must be signed by the Claimant, notarized, and delivered to the Claims Administrator on or before the Deadline to Submit FES shown above. If the Stipulation is timely submitted and is properly completed, the Claimant's Release and Dismissal with Prejudice Stipulation shall, subject to Section 2.7.3.1, be returned to the Claimant. If the Claimant fails to properly execute and deliver the Stipulation on or before the FES submission deadline, then promptly thereafter, the Claims Administrator shall deliver the Claimant's Dismissal With Prejudice Stipulation and Release to Merck, and without limitation, Merck shall be free to file or cause to be filed such Dismissal With Prejudice Stipulation and/or Release in any relevant action or proceeding.

Pursuant to Pretrial Order No. 43, plaintiffs with cases pending in the United States District Court for the Eastern District of Louisiana as of November 9, 2007, must also produce within 30 days of serving a Future Evidence Stipulation on the Claims Administrator: 1) an Amended and Supplemental Plaintiff Profile Form, records requested therein, and executed Authorizations for Release of Records pursuant to Pretrial Order 18A, B or C, as applicable; and 2) a Rule 26(a)(2) case specific expert report from a medical expert. Pretrial Order 43 states that failure to comply with the terms of the order will result in the claim being dismissed with prejudice, except for good cause shown.

# Cellino & Barnes p.c.

ATTORNEYS AT LAW

Stephen E. Barnes
Ross M. Cellino
Richard P. Amico
Richard J. Barnes
Denis J. Bastible
Dylan J. Brennan
Charles F. Burkwit
Stephen C. Ciocca
Michael J. Cooper
Christopher D. D'Amato
Nicholas B. Davis
Sandy A. Fazili
Brian A. Goldstein, M.D., J.D.
David M. Goodman
John W. Looney
Michael J. Lovecchio
William J. Loyd
Brett L. Manske
James E. Maslyn

John C. Murrett, Jr.
Matthew R. Newborn
Christian R. Oliver
Gregory V. Pajak
Stephen J. Paluch
Scott K. Rohring
Stephen A. Saltzman
Robert A. Scalione
Gerald W. Schaffer, Jr.
Robert J. Schreck
Jeffrey C. Sendziak
John A. Sheehan
Ellen B. Sturm
David O. Teach
Robert L. Voltz
Michael J. Williams
K. John Wright

Daryl P. Ciambella
Chief Operating Officer

September 10, 2009

Ms. Debra J. Miller
2052 Township Road 405
Jeromesville, OH  44840

**RE:    Vioxx Claim**

Dear Ms. Miller:

As you are aware, the Claims Administrator and Gate Committee both independently determined that your Vioxx claim did not meet the criteria required for payment under the Vioxx Settlement Program. We appealed this determination to the Special Master on your behalf. The Special Master conducted an independent and final comprehensive review of your claim.

Unfortunately, the Special Master concluded – as did the Claims Administrator and the Gate Committee – that your case did not meet the necessary criteria for eligibility and payment. As you know, under the terms of the Settlement Program, the decision of the Special Master is final and non-appealable by either side. The Multi District Court has therefore ordered the dismissal of your lawsuit, which brings your Vioxx case to a close.

We truly appreciate the opportunity to have represented you and regret that we were unable to achieve a recovery for you in this matter.

Should you have any questions or concerns, or if we may be of service to you in the future in another matter, please do not hesitate to contact us at any time.

Very truly yours,

Brian A. Goldstein*

BAG:dcb
*Brian A. Goldstein is admitted to the practice of law in New York.

A Professional Corporation

Offices in Buffalo, Rochester and Long Island, New York

350 Main Street, 25th Floor • 2500 Main Place Tower • Buffalo, New York 14202-3725 • Tel: (716) 854-2020 • Fax: (716) 854-6291
1-800-483-2050

*Confidential Settlement Information*

| | SPECIAL MASTER NOTICE OF INELIGIBILITY |
|---|---|
| **V2059** | **(Single Injury)**<br>**Date of Notice: 7/27/09** |

## I. CLAIMANT INFORMATION

| Claimant Name | Miller, Debra J. | | VCN | 1076336 |
|---|---|---|---|---|
| Law Firm | Cellino & Barnes, P.C. | | | |
| Primary Injury | MI | **Injury Date** | | 2/11/01 |

## II.  SPECIAL MASTER DETERMINATION

This Special Master Notice of Ineligibility is an official notification from BrownGreer PLC, the Vioxx Claims Administrator. The Special Master has determined that this claim does not satisfy the Eligibility Requirements for the Program set forth in Section 2.2 of the Settlement Agreement because the alleged injury does not pass the following Gate(s):

| | Gate | Primary Injury |
|---|---|---|
| 1. | Injury | ☐ |
| 2. | Duration | X |
| 3. | Proximity | X |

## III.  FINAL DETERMINATION

Pursuant to Section 2.6.3 of the Settlement Agreement, the Special Master's decision on this claim is final, binding, and Non-Appealable.  In accordance with Section 2.7.2, the Claimant has no further rights under the Program with regard to this claim.

The Claims Administrator shall deliver the Claimant's Dismissal with Prejudice Stipulation and Release to Merck, and without limitation, Merck shall be free to file or cause to be filed such Dismissal with Prejudice Stipulation and/or Release in any relevant action or proceeding. The Claims Administrator has closed the file on this Claimant.