1               UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF LOUISIANA

3

    **************************************************************

4

5  IN RE:  VIOXX PRODUCTS
        LIABILITY LITIGATION

6

                    MDL DOCKET NO. 1657

7                   NEW ORLEANS, LOUISIANA
                   WEDNESDAY, JANUARY 27, 2010, 9:00 A.M.

8

  THIS DOCUMENT RELATES TO:

9

  #05-4578 *GENE WEEKS V.*

10        *MERCK & CO, INC*.

11

    **************************************************************

12

13         TRANSCRIPT OF ORAL ARGUMENT PROCEEDINGS
      HEARD BEFORE THE HONORABLE ELDON E. FALLON

14           UNITED STATES DISTRICT JUDGE

15

16  APPEARANCES:

17

18  FOR THE PLAINTIFFS'
    STEERING COMMITTEE:    HERMAN HERMAN KATZ & COTLAR

19                   BY:  RUSS M. HERMAN, ESQUIRE
                   820 O'KEEFE AVENUE

20                   NEW ORLEANS LA 70113

21

22  FOR THE PLAINTIFF:     DIEZ ARGUELLES TEJEDOR
                   BY:  MARIA D. TEJEDOR, ESQUIRE

23                    CARLOS R. DIEZ-ARGUELLES, ESQUIRE
                   520 NORTH SEMORAN BOULEVARD, SUITE 200

24                   ORLANDO FL  32807

25

1   APPEARANCES:   (CONTINUED)

2

3   FOR THE DEFENDANT:          WILLIAMS & CONNOLLY
                                BY:   DOUGLAS R. MARVIN, ESQUIRE
4                               725 TWELFTH STREET, N.W.
                                WASHINGTON DC   20005
5

6                               STONE PIGMAN WALTHER WITTMANN LLC
                                BY:   DOROTHY H. WIMBERLY, ESQUIRE
7                               546 CARONDELET STREET
                                NEW ORLEANS LA 70130
8

9

10  OFFICIAL COURT REPORTER:     CATHY PEPPER, CCR, RPR, CRR
                                 500 POYDRAS STREET, ROOM B406
11                               NEW ORLEANS LA   70130
                                 (504) 589-7779
12

13  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
    PRODUCED BY COMPUTER.
14

15

16

17

18

19

20

21

22

23

24

25

1                                **I N D E X**

2

3     SPEAKERS                                                    PAGE

4

5     THE COURT............................................    4

6     MR. HERMAN..........................................    6

7     MR. MARVIN..........................................    7

8     THE COURT..........................................   10

9     MS. TEJEDOR........................................   10

10    MR. HERMAN.........................................   14

11    THE COURT..........................................   15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **P-R-O-C-E-E-D-I-N-G-S**

2                 WEDNESDAY, JANUARY 27, 2010

3                   M O R N I N G   S E S S I O N

4                   (COURT CALLED TO ORDER)

5

6

7          THE DEPUTY CLERK:  Everyone rise.

8          THE COURT:  Be seated, please.  Good morning, ladies and

9     gentlemen.  This is a motion day.  I understand we have two

10    motions.  Let's call the first one.

11         THE DEPUTY CLERK:  MDL 1657, *In re Vioxx*.

12         THE COURT:  Counsel, make your appearance for the

13    record, please.

14         MS. TEJEDOR:  Maria Tejedor, Your Honor, and my law

15    partner Carlos Diez-Arguelles are here for the plaintiff.  We

16    represent the claimant, we did at one time, Gene Weeks.

17         MR. MARVIN:  Good morning, Your Honor.  Douglas Marvin

18    for Merck.

19         MR. HERMAN:  May it please the Court, good morning,

20    Judge Fallon, Russ Herman for the Plaintiffs' Steering Committee.

21         THE COURT:  There are several motions filed by

22    Mr. Ronald Benjamin.  I received the briefs in this matter, and

23    counsel asked for oral argument, and I traditionally give oral

24    argument when they ask for it.

25              I notified Mr. Benjamin of oral argument.  He asked

whether or not he could participate by phone.  I indicated
because of his circumstances, namely, in New York, and it would
be cheaper for him to do so, I extended him the courtesy of
participating by phone.  However, I received recently a letter
from him, which I'll put into the record, indicating that, "It is
my understanding," he says, "there will be oral argument on
January 27th.  If I am correct, then I respectfully submit I do
not have anything to add to the moving papers before the Court
and do not plan on participating," so I interpret that as waiving
his right to participate in oral argument.

This is a matter that grows out of the *Vioxx*
litigation.  The plaintiff, Mr. Weeks, had taken Vioxx from 1999
through 2001 on a regular basis.  He ceased taking Vioxx, as I
understand it, in 2001, and then three years later, in 2004,
sustained a heart attack.  He heard in the news media that Vioxx
had been removed from the market and, therefore, decided to file
a claim.  He contacted and retained counsel to represent him in
pursuing that claim.  The claim was pursued by his counsel, and
the case proceeded, and as I have mentioned on a number of
occasions, through the hard work of counsel the matters were
settled.

Mr. Weeks entered the settlement program on
March 4th of 2005.  He was initially rejected because of the
temporal problem of his not taking Vioxx for some three years
before his heart attack.  Initially one of the gates was that you

1  had to take it within a shorter period of time; however, the

2  program also provided certain opportunities for the claims

3  administrator to reevaluate and take other things into

4  consideration and, also, the parties had some opportunities.  All

5  of this was provided for in the settlement program and made part

6  of the settlement program.

7            The program proceeded in accordance with the

8  agreed-upon terms, and eventually Mr. Weeks was awarded points,

9  and his case was awarded some $300,000 or thereabouts as the

10  amount of his claim.

11            Meanwhile, in the process Mr. Weeks decided to

12  retain other counsel; that is to say, after he agreed to settle

13  but before the ultimate resolution of the points, he decided to

14  retain other counsel.  He advised his prior counsel by e-mail.

15  There is some question as to whether or not the e-mail was

16  opened.  In any event, the letters followed discharging one

17  counsel and advising that other counsel was retained.  The other

18  counsel was Mr. Benjamin.  Mr. Benjamin now comes forward and

19  files motions to void the settlement.

20            I'll hear from the parties at this time.

21       MR. HERMAN:  May it please the Court, good morning,

22  Judge Fallon.  On behalf of the PSC and the negotiating

23  committee, I would like to make a very brief statement.

24            First of all, the plan itself should recognize the

25  entitlement of the claimant to the funds to which the claim is

1  entitled.

2          Secondly, to the extent that there are ancillary

3  motions for sanctions, we are not going to, on behalf of the PSC

4  or the negotiating committee, press any motion for sanctions

5  against Mr. Benjamin, particularly in absentia.

6          As to any motions that he has filed in connection

7  with sanctions, I believe the record is clear on that, and I have

8  nothing further to add other than we believe that the sanctity of

9  the settlement agreement is important.  It should not be set

10 aside.  It was freely entered.  It was entered on advice of

11 counsel, and, frankly, the claimant may not understand the

12 difficulty of the case or that roughly a million dollars has been

13 spent litigating these cases, and he has a very good recovery

14 under the program, in our view.

15          Thank you, Your Honor.

16      MR. MARVIN:  Good morning, Your Honor.  Douglas Marvin

17 for Merck.  Like the PSC, we're not going to address the cross

18 motions for sanctions, but I would like to address Mr. Benjamin's

19 motion seeking to rescind the enrollment of Mr. Weeks in the

20 program.

21          Among the swirling set of facts, this much is

22 clear:  First, Mr. Weeks did enroll in the program.  He signed a

23 release before a notary, and he was advised, consistent with the

24 master settlement agreement, pursuant to a letter that

25 Ms. Tejedor sent to Mr. Weeks, that the decision whether to enter

1   the program was Mr. Weeks' to make, and that if he were to

2   participate in the program, he would be agreeing to the terms of

3   the program, and if he were awarded money, he was agreeing to

4   accept the settlement value.  That advice was consistent with the

5   master settlement agreement.  Once enrollment takes place, it is

6   irrevocable.

7               The second point is that a claims package was put

8   together.  The claim passed the gates.

9               The third point is that the claim has been

10  evaluated by BrownGreer.  They have awarded to Mr. Weeks points

11  that are equivalent to a little bit more than a quarter million

12  dollars, $255,000.

13              The fourth point is that checks in those amounts

14  have been prepared and have been sent for Mr. Weeks.

15              So the clear facts are:  One, he enrolled; two, his

16  claim passed the gates; three, his claim was evaluated; and,

17  four, he has been paid.

18              Your Honor, I think this case went off the tracks

19  when Mr. Weeks first received a notice of ineligibility which was

20  a first notice, and apparently Mr. Weeks understood that that

21  meant that was the end of his claim in the program and that was

22  the end of his case.  Indeed, that apparently was Mr. Benjamin's

23  understanding as well, because he says in his first papers that,

24  quote, "It was flatly against Mr. Weeks' interests to enter into

25  an irrevocable settlement process under which his claim was not

1    eligible and would be rejected, leaving him with no compensation
2    and no lawsuit."
3              The fact is is that that statement is wrong on two
4    scores.  It is not the case that his claim was ineligible.  That
5    was the first notice of ineligibility, and as Your Honor knows,
6    there are various steps along the way.  The gate committee did
7    review Mr. Weeks' claim, and the gate committee did find his
8    claim to be eligible, so that was the first instance where that
9    statement was wrong.
10             It was also wrong on the score that if he were to
11   enter the program and not pass the gates, his lawsuit would be
12   gone forever.  He would have no further claim.  Because as
13   Your Honor knows, if someone who does not pass the gates, they
14   can file a future evidence stipulation and return to the court
15   system.
16             So I think the case went off the tracks because
17   Mr. Weeks misunderstood the program, and Mr. Benjamin apparently
18   did as well.  I daresay that we probably wouldn't be here today
19   if Mr. Weeks had understood from the outset that the first notice
20   of ineligibility does not mean that his claim was over with and
21   that he could proceed in the program, and, indeed, his claim did
22   proceed in the program, and he was awarded compensation.
23             So I go back to the facts that are clear:  He did
24   enroll in the program, and there is no evidence that his
25   enrollment was not authorized by him.  His claim has been

1    processed, and he has been awarded compensation, and I think now,

2    since the Tejedor firm is primary counsel that registered him

3    with the program and there has been no other notice to the claims

4    administrator who now has the authority with respect to this

5    claim, there has been no indication that there is any other

6    counsel involved, that's where we are at this stage.

7                     For our part we don't believe that Mr. Weeks is

8    entitled to rescind the settlement, and we don't even know if

9    that's what he really wants to do at this stage.

10             THE COURT:  Okay.  Let me hear from counsel.

11             MS. TEJEDOR:  Yes, Your Honor.

12             THE COURT:  First, I'm not sure of your position here.

13   You can speak.  I'm not sure of your position.  I know you

14   represented Mr. Weeks at one time.  Do you represent him now or

15   do you feel you represent him now?

16             MS. TEJEDOR:  Your Honor, I do not represent him now.

17   He did send me a letter terminating my services.  I received that

18   letter on May 14th of 2009.

19             THE COURT:  What is your role here?  Are you looking for

20   a portion of the fee or what?

21             MS. TEJEDOR:  Yes, Your Honor.  I am.  I'm here,

22   Your Honor, asking the Court.  The monies have been paid.  The

23   claims administrator sent me the checks.  The checks are sitting

24   in my trust account.  We have not touched the monies, but the

25   common benefit fee, as well as costs, have been distributed to

1    the Plaintiffs' Steering Committee.

2             So Your Honor, what we're asking for, obviously, is

3    to -- well, first of all, Mr. Benjamin filed a motion to have the

4    settlement, you know, deemed null and void, and as a part of that

5    motion, Your Honor, he alleged in his motion that the client

6    signed the settlement agreement based on fraud and duress on my

7    part, so I felt compelled to file a response with this court.

8         THE COURT:  What is your position on that?  That's his

9    position.  He says that you had a conflict of interests and that

10   you misled the plaintiff and also forced him to sign it.

11        MS. TEJEDOR:  Yes, Your Honor.  We absolutely disagree

12   with that.  Your Honor, we believe that we ethically -- and,

13   Your Honor, let me bring to the Court's attention, I believe I

14   provided the Court -- Mr. Weeks, after hiring Mr. Benjamin, also

15   filed an ethical grievance against me with the Florida Bar.

16   Since then the Florida Bar for several months has investigated

17   the case and provided me with a detailed letter finding no

18   ethical violations and appropriate representation on my behalf,

19   and I provided the Court with that, and I have a copy of that

20   letter with me.

21             So, Your Honor, also it's my position that I

22   ethically represented Mr. Weeks at every stage in this case and

23   did not have a conflict and, in fact, served his best interests,

24   and I do believe that Mr. Weeks, willingly, knowingly wants this

25   settlement, Your Honor.

1           As evidence of that, Your Honor, is the fact that
2   he signed a contingency fee agreement in 2005 with our law firm.
3   A few months later we filed suit on his case.  The case was
4   removed to the MDL.  In November of '07, we provided him, as is
5   in the court record -- and Your Honor is very familiar with the
6   facts as I heard and I agree with on your assessment, Your Honor,
7   of the facts in this case.
8           In '07, Your Honor, we provided him with a
9   three-page letter detailing the settlement agreement, telling him
10  it's his decision.  After he got that letter, we talked about it.
11  I believe it was the very next day.  We discussed it and he said
12  he wanted to participate.  He signed the very next day --
13  November 22nd, he signed, within a day -- the election to
14  participate, so I don't think it was, you know, duress.  Within a
15  day he signed it from him receiving the settlement agreement.
16          He signed the election to participate.  He sent it
17  back.  A few months later, in January 30th of '08, just
18  two months later, he signed the release of claim.  We provided
19  the entire release to him.  He signed the release of claim.
20  Your Honor, subsequently to that, May of 4 of '09, he received
21  the initial notice of eligibility.  It's important to note,
22  Your Honor, in those 14 months, between his eligibility and him
23  signing the releases -- him signing the notice of his willingness
24  to participate, he never called us, advised us that he was under
25  duress, advised us that he didn't want the settlement.

1           Mr. Marvin really nailed it.  He really understood

2    what went on in this case, I think, being an outsider.  What set

3    this case off the track was when he received his initial notice

4    of ineligibility, where I immediately contacted him and explained

5    to him it's not the end of your case.  It's just a finding.

6    We're going to continue to work with you, and it's not a final

7    determination, but it kind of set him off.  He got very nervous

8    and I think that's what prompted him to get on chat rooms, and I

9    think that's where he found Mr. Benjamin and then contacted him.

10          I think that's what kind of got him very upset

11   because he wanted to be a part of the settlement, and he was very

12   upset at the thought that he wasn't going to receive monies in

13   the case.  So I immediately, Your Honor, told him we're going to

14   continue to work on your case and we did.  We got him approved

15   and after we got him approved, Your Honor, we also appealed his

16   case.  He initially got 229 and then we appealed it and managed

17   to get 289, somewhere in that area -- the Court was right --

18   close to 300.  We got that for him, Your Honor.

19          Your Honor, it was about 10 days after we received

20   the final notice of eligibility from him that I got the letter

21   from him in the mail telling me that I was fired.  Your Honor,

22   it's our position that we represented him for four years, met

23   every court deadline in this case, did everything we had to do,

24   never once had a motion for sanctions, never once had opposing

25   counsel -- any kind of motion saying that we did something wrong

 1  in the case or that we failed to do something, represented him

 2  for four years, did so diligently, through our efforts got him

 3  his award.  I believe it's an award -- it's a substantial award.

 4  I think it's an award that he would like to receive.

 5          I'm just asking the Court, Your Honor, to obviously

 6  deny Mr. Benjamin's motion to rescind the settlement, Your Honor,

 7  and I filed a motion asking the Court to enforce the settlement,

 8  grant our motion to enforce the settlement, and asking the

 9  Court's permission, obviously, to allow me to disburse those

10  monies I have in my trust account to pay -- give Mr. Weeks his

11  monies, obviously allow our law firm to collect fees pursuant to

12  the orders of this Court regarding the caps, and collect our

13  costs.

14          Your Honor, we had filed a motion for sanctions.

15  Your Honor, I'm not interested in pursuing motion for sanctions.

16  Mr. Benjamin filed a motion for sanctions against us.  What I

17  would like, Your Honor, is just for the parties to withdraw their

18  motions for sanctions, and if Mr. Benjamin would not agree to

19  that, Your Honor, if the Court would just dismiss the mutual

20  motions for sanction and just really rule on what's important is

21  getting this client his money and bringing this case to a close.

22          THE COURT:  All right.  Anything further from anyone?

23          MR. HERMAN:  May it please the Court, Russ Herman for

24  the PSC and the negotiating committee.  Again, I'll be brief.  I

25  just want to emphasize for the record that if the funds were

1  returned to Merck and this settlement was set aside, based on the

2  experience that Your Honor has observed and managed in this court

3  and the cases that have been tried, the claimant would be facing

4  a five or six-week trial, a million dollars worth of expense, and

5  the outcome would be, based on experience, a very, very difficult

6  case.

7           The last issue that I would like to emphasize for

8  the record is there are sanctions filed by Mr. Benjamin against

9  the plaintiffs' committee and myself.  I'm not interested in a

10 quid pro quo.  We simply will not continue our sanctions against

11 Mr. Benjamin.  It will be up to Mr. Benjamin and the Court as to

12 the cross sanctions that he's filed, and we're willing to defend

13 those, if necessary.

14       THE COURT:  All right.  I'm in the process of writing

15 something on this matter.  I'll put it out shortly.  I've heard

16 the oral argument.  I understand the issues.  I've been

17 completely familiar, actually, with the case.  I've sat through a

18 number of trials, and I've participated throughout the discovery

19 in the case.

20           One thing that Mr. Benjamin does raise is that he

21 seeks to recuse me in this matter on the basis that the

22 settlement refers to me by name and also refers to me as the

23 administrator.  The administrator role of the settlement is

24 simply a supervisory function.  It's not a substantive matter

25 other than to resolve conflicts by and between the parties.

1  Whether or not it's part of the settlement, I have that

2  responsibility and authority.

3          I didn't negotiate any of the settlements other

4  than to encourage the parties to meet and confer.  I don't see

5  any conflict or any reason that I should not deal with this

6  matter.  So to that extent, I'm going to deny his motion first

7  and then proceed to analyze the case.

8          It seems to me that the overwhelming evidence, and

9  I see nothing to the contrary, is that the person entered the

10  settlement voluntarily and understood it.  I do think that

11  counsel is correct that there was a concern, perhaps an

12  overreaction, perhaps a misunderstanding when there was a first

13  rejection of his claim, but whether or not that was a

14  misunderstanding, the fact is that there was no misunderstanding

15  when he signed the settlement agreement.  There was no

16  misunderstanding when he signed the release.  There was no

17  misunderstanding when he agreed to participate and to be bound by

18  the settlement agreement.  So that part of it means that to me

19  that he's bound by the settlement.

20          There may well be a dispute as to how to apportion

21  the fee.  That I may have to take evidence or have affidavits

22  filed or something of that sort, but as to what the plaintiff

23  attorneys did, when they did it, what contribution that made to

24  the overall resolution of the case, I don't have anything on that

25  other than what counsel has just told me, so that may have to be

1   put to one side and dealt with at another time.

2                I do feel that the settlement is a valid

3   settlement, and I'm going to put this all in writing, but I would

4   deny the motion to rescind the settlement.  I'm not quite sure

5   the prior attorney has a standing at this time to enforce the

6   settlement because they are not in it other than they are in it

7   for their portion of the fee and they have a claim.  I'll

8   interpret their claim as being a claim for a portion of the fee

9   which they have a potential lien on.

10                My thinking on it is that in my order I'm going to

11   provide that the portion attributable to Mr. Weeks be forwarded

12   to him and the other be held in escrow pending further orders of

13   the Court.  As I say, I want to afford everybody an opportunity

14   to read what I say, and I'll put the thoughts I have just

15   expressed in writing, but that's going to be my holding in the

16   case.

17                Thank you very much.  I appreciate you coming down.

18             (WHEREUPON, at 9:30 a.m., the proceedings were

19   concluded.)

20                          *     *     *

21

22

23

24

25

```
 1                        REPORTER'S CERTIFICATE

 2

 3       I, Cathy Pepper, Certified Realtime Reporter, Registered

 4   Merit Reporter, Registered Professional Reporter, Certified Court

 5   Reporter of the State of Louisiana, Official Court Reporter for

 6   the United States District Court, Eastern District of Louisiana,

 7   do hereby certify that the foregoing is a true and correct

 8   transcript, to the best of my ability and understanding, from the

 9   record of the proceedings in the above-entitled and numbered

10   matter.

11

12

13                           s/Cathy Pepper
                             _____

14                           Cathy Pepper, CRR, RMR, CCR

15                           Official Court Reporter

16                           United States District Court

17

18

19

20

21

22

23

24

25
```

# #

**#05-4578** [1] - 1:9

# $

**$255,000** [1] - 8:12
**$300,000** [1] - 6:9

# '

**'07** [2] - 12:4, 12:8
**'08** [1] - 12:17
**'09** [1] - 12:20

# 1

**10** [3] - 3:8, 3:9, 13:19
**14** [2] - 3:10, 12:22
**14th** [1] - 10:18
**15** [1] - 3:11
**1657** [2] - 1:6, 4:11
**1999** [1] - 5:12

# 2

**200** [1] - 1:23
**20005** [1] - 2:4
**2001** [2] - 5:13, 5:14
**2004** [1] - 5:14
**2005** [2] - 5:23, 12:2
**2009** [1] - 10:18
**2010** [2] - 1:7, 4:2
**229** [1] - 13:16
**22nd** [1] - 12:13
**27** [2] - 1:7, 4:2
**27th** [1] - 5:7
**289** [1] - 13:17

# 3

**300** [1] - 13:18
**30th** [1] - 12:17
**32807** [1] - 1:24

# 4

**4** [2] - 3:5, 12:20
**4th** [1] - 5:23

# 5

**500** [1] - 2:10
**504** [1] - 2:11

**520** [1] - 1:23
**546** [1] - 2:7
**589-7779** [1] - 2:11

# 6

**6** [1] - 3:6

# 7

**7** [1] - 3:7
**70113** [1] - 1:20
**70130** [2] - 2:7, 2:11
**725** [1] - 2:4

# 8

**820** [1] - 1:19

# 9

**9:00** [1] - 1:7
**9:30** [1] - 17:18

# A

**A.M** [1] - 1:7
**a.m** [1] - 17:18
**ability** [1] - 18:8
**above-entitled** [1] - 18:9
**absentia** [1] - 7:5
**absolutely** [1] - 11:11
**accept** [1] - 8:4
**accordance** [1] - 6:7
**account** [2] - 10:24, 14:10
**add** [2] - 5:8, 7:8
**address** [2] - 7:17, 7:18
**administrator** [5] - 6:3, 10:4, 10:23, 15:23
**advice** [2] - 7:10, 8:4
**advised** [4] - 6:14, 7:23, 12:24, 12:25
**advising** [1] - 6:17
**affidavits** [1] - 16:21
**afford** [1] - 17:13
**agree** [2] - 12:6, 14:18
**agreed** [3] - 6:8, 6:12, 16:17
**agreed-upon** [1] - 6:8
**agreeing** [2] - 8:2, 8:3
**agreement** [9] - 7:9, 7:24, 8:5, 11:6, 12:2,

12:9, 12:15, 16:15, 16:18
**alleged** [1] - 11:5
**allow** [2] - 14:9, 14:11
**amount** [1] - 6:10
**amounts** [1] - 8:13
**analyze** [1] - 16:7
**ancillary** [1] - 7:2
**appealed** [2] - 13:15, 13:16
**appearance** [1] - 4:12
**APPEARANCES** [2] - 1:16, 2:1
**apportion** [1] - 16:20
**appreciate** [1] - 17:17
**appropriate** [1] - 11:18
**approved** [2] - 13:14, 13:15
**area** [1] - 13:17
**Arguelles** [1] - 4:15
**ARGUELLES** [2] - 1:22, 1:23
**ARGUMENT** [1] - 1:13
**argument** [6] - 4:23, 4:24, 4:25, 5:6, 5:10, 15:16
**aside** [2] - 7:10, 15:1
**assessment** [1] - 16:7
**attack** [2] - 5:15, 5:25
**attention** [1] - 11:13
**attorney** [1] - 17:5
**attorneys** [1] - 16:23
**attributable** [1] - 17:11
**authority** [2] - 10:4, 16:2
**authorized** [1] - 9:25
**AVENUE** [1] - 1:19
**award** [4] - 14:3, 14:4
**awarded** [6] - 6:8, 6:9, 8:3, 8:10, 9:22, 10:1

# B

**B406** [1] - 2:10
**Bar** [2] - 11:15, 11:16
**based** [3] - 11:6, 15:1, 15:5
**basis** [2] - 5:13, 15:21
**BEFORE** [1] - 1:13
**behalf** [3] - 6:22, 7:3, 11:18
**benefit** [1] - 10:25
**Benjamin** [15] - 4:22, 4:25, 6:18, 7:5, 9:17, 11:3, 11:14, 13:9, 14:16, 14:18, 15:8, 15:11, 15:20

**Benjamin's** [3] - 7:18, 8:22, 14:6
**best** [2] - 11:23, 18:8
**between** [2] - 12:22, 15:25
**bit** [1] - 8:11
**BOULEVARD** [1] - 1:23
**bound** [2] - 16:17, 16:19
**brief** [2] - 6:23, 14:24
**briefs** [1] - 4:22
**bring** [1] - 11:13
**bringing** [1] - 14:21
**BrownGreer** [1] - 8:10
**BY** [6] - 1:19, 1:22, 2:3, 2:6, 2:13, 2:13

# C

**CALLED** [1] - 4:4
**caps** [1] - 14:12
**CARLOS** [1] - 1:23
**Carlos** [1] - 4:15
**CARONDELET** [1] - 2:7
**case** [27] - 5:19, 6:9, 7:12, 8:18, 8:22, 9:4, 9:16, 11:17, 11:22, 12:3, 12:7, 13:2, 13:3, 13:5, 13:13, 13:14, 13:16, 13:23, 14:1, 14:21, 15:6, 15:17, 15:19, 16:7, 16:24, 17:16
**cases** [2] - 7:13, 15:3
**CATHY** [1] - 2:10
**Cathy** [2] - 18:3, 18:14
**CCR** [2] - 2:10, 18:14
**ceased** [1] - 5:13
**certain** [1] - 6:2
**CERTIFICATE** [1] - 18:1
**Certified** [2] - 18:3, 18:4
**certify** [1] - 18:7
**chat** [1] - 13:8
**cheaper** [1] - 5:3
**checks** [3] - 8:13, 10:23
**circumstances** [1] - 5:2
**claim** [25] - 5:17, 5:18, 6:10, 6:25, 8:8, 8:9, 8:16, 8:21, 8:25, 9:4, 9:7, 9:8, 9:12, 9:20, 9:21, 9:25, 10:5, 12:18, 12:19, 16:13, 17:7, 17:8

**claimant** [4] - 4:16, 6:25, 7:11, 15:3
**claims** [4] - 6:2, 8:7, 10:3, 10:23
**clear** [4] - 7:7, 7:22, 8:15, 9:23
**CLERK** [2] - 4:7, 4:11
**client** [2] - 11:5, 14:21
**close** [2] - 13:18, 14:21
**CO** [1] - 1:10
**collect** [2] - 14:11, 14:12
**coming** [1] - 17:17
**Committee** [2] - 4:20, 11:1
**COMMITTEE** [1] - 1:18
**committee** [6] - 6:23, 7:4, 9:6, 9:7, 14:24, 15:9
**common** [1] - 10:25
**compelled** [1] - 11:7
**compensation** [3] - 9:1, 9:22, 10:1
**completely** [1] - 15:17
**COMPUTER** [1] - 2:13
**concern** [1] - 16:11
**concluded** [1] - 17:19
**confer** [1] - 16:4
**conflict** [3] - 11:9, 11:23, 16:5
**conflicts** [1] - 15:25
**connection** [1] - 7:6
**CONNOLLY** [1] - 2:3
**consideration** [1] - 6:4
**consistent** [2] - 7:23, 8:4
**contacted** [3] - 5:17, 13:4, 13:9
**contingency** [1] - 12:2
**continue** [3] - 13:6, 13:14, 15:10
**CONTINUED** [1] - 2:1
**contrary** [1] - 16:9
**contribution** [1] - 16:23
**copy** [1] - 11:19
**correct** [3] - 5:7, 16:11, 18:7
**costs** [2] - 10:25, 14:13
**COTLAR** [1] - 1:18
**counsel** [14] - 4:12, 4:23, 5:17, 5:18, 5:20, 6:12, 6:14, 6:17, 6:18, 7:11, 10:2, 10:6, 10:10, 13:25, 16:11, 16:25
**court** [5] - 9:14, 11:7,

12:5, 13:23, 15:2
**COURT** [12] - 1:1, 2:10, 4:4, 4:8, 4:12, 4:21, 10:10, 10:12, 10:19, 11:8, 14:22, 15:14
**Court** [19] - 4:19, 5:8, 6:21, 10:22, 11:14, 11:19, 13:17, 14:5, 14:7, 14:12, 14:19, 14:23, 15:11, 17:13, 18:4, 18:5, 18:6, 18:15, 18:16
**Court's** [2] - 11:13, 14:9
**COURT**.....................
.....................[3] - 3:5, 3:8, 3:11
**courtesy** [1] - 5:3
**cross** [2] - 7:17, 15:12
**CRR** [2] - 2:10, 18:14

**D**

**daresay** [1] - 9:18
**days** [1] - 13:19
**DC** [1] - 2:4
**deadline** [1] - 13:23
**deal** [1] - 16:5
**dealt** [1] - 17:1
**decided** [3] - 5:16, 6:11, 6:13
**decision** [2] - 7:25, 12:10
**deemed** [1] - 11:4
**defend** [1] - 15:12
**DEFENDANT** [1] - 2:3
**deny** [3] - 14:6, 16:6, 17:4
**DEPUTY** [2] - 4:7, 4:11
**detailed** [1] - 11:17
**detailing** [1] - 12:9
**determination** [1] - 13:7
**DIEZ** [2] - 1:22, 1:23
**Diez** [1] - 4:15
**DIEZ-ARGUELLES** [1] - 1:23
**Diez-Arguelles** [1] - 4:15
**difficult** [1] - 15:5
**difficulty** [1] - 7:12
**diligently** [1] - 14:2
**disagree** [1] - 11:11
**disburse** [1] - 14:9
**discharging** [1] - 6:16
**discovery** [1] - 15:18
**discussed** [1] - 12:11
**dismiss** [1] - 14:19

**dispute** [1] - 16:20
**distributed** [1] - 10:25
**DISTRICT** [3] - 1:1, 1:2, 1:14
**District** [3] - 18:6, 18:16
**DOCKET** [1] - 1:6
**DOCUMENT** [1] - 1:8
**dollars** [3] - 7:12, 8:12, 15:4
**DOROTHY** [1] - 2:6
**Douglas** [2] - 4:17, 7:16
**DOUGLAS** [1] - 2:3
**down** [1] - 17:17
**duress** [3] - 11:6, 12:14, 12:25

**E**

**e-mail** [2] - 6:14, 6:15
**EASTERN** [1] - 1:2
**Eastern** [1] - 18:6
**efforts** [1] - 14:2
**ELDON** [1] - 1:13
**election** [2] - 12:13, 12:16
**eligibility** [3] - 12:21, 12:22, 13:20
**eligible** [2] - 9:1, 9:8
**emphasize** [2] - 14:25, 15:7
**encourage** [1] - 16:4
**end** [3] - 8:21, 8:22, 13:5
**enforce** [3] - 14:7, 14:8, 17:5
**enroll** [2] - 7:22, 9:24
**enrolled** [1] - 8:15
**enrollment** [3] - 7:19, 8:5, 9:25
**enter** [3] - 7:25, 8:24, 9:11
**entered** [4] - 5:22, 7:10, 16:9
**entire** [1] - 12:19
**entitled** [3] - 7:1, 10:8, 18:9
**entitlement** [1] - 6:25
**equivalent** [1] - 8:11
**escrow** [1] - 17:12
**ESQUIRE** [5] - 1:19, 1:22, 1:23, 2:3, 2:6
**ethical** [2] - 11:15, 11:18
**ethically** [2] - 11:12, 11:22
**evaluated** [2] - 8:10, 8:16

**event** [1] - 6:16
**eventually** [1] - 6:8
**evidence** [5] - 9:14, 9:24, 12:1, 16:8, 16:21
**expense** [1] - 15:4
**experience** [2] - 15:2, 15:5
**explained** [1] - 13:4
**expressed** [1] - 17:15
**extended** [1] - 5:3
**extent** [2] - 7:2, 16:6

**F**

**facing** [1] - 15:3
**fact** [4] - 9:3, 11:23, 12:1, 16:14
**facts** [5] - 7:21, 8:15, 9:23, 12:6, 12:7
**failed** [1] - 14:1
**FALLON** [1] - 1:13
**Fallon** [2] - 4:20, 6:22
**familiar** [2] - 12:5, 15:17
**fee** [6] - 10:20, 10:25, 12:2, 16:21, 17:7, 17:8
**fees** [1] - 14:11
**felt** [1] - 11:7
**few** [2] - 12:3, 12:17
**file** [3] - 5:16, 9:14, 11:7
**filed** [11] - 4:21, 7:6, 11:3, 11:15, 12:3, 14:7, 14:14, 14:16, 14:18, 15:12, 16:22
**files** [1] - 6:19
**final** [2] - 13:6, 13:20
**fired** [1] - 13:21
**firm** [3] - 10:2, 12:2, 14:11
**first** [13] - 4:10, 6:24, 7:22, 8:19, 8:20, 8:23, 9:5, 9:8, 9:19, 10:12, 11:3, 16:6, 16:12
**five** [1] - 15:4
**FL** [1] - 1:24
**flatly** [1] - 8:24
**Florida** [2] - 11:15, 11:16
**followed** [1] - 6:16
**FOR** [3] - 1:18, 1:22, 2:3
**forced** [1] - 11:10
**foregoing** [1] - 18:7
**forever** [1] - 9:12
**forward** [1] - 6:18

**forwarded** [1] - 17:11
**four** [3] - 8:17, 13:22, 14:2
**fourth** [1] - 8:13
**frankly** [1] - 7:11
**fraud** [1] - 11:6
**freely** [1] - 7:10
**function** [1] - 15:24
**funds** [2] - 6:25, 14:25
**future** [1] - 9:14

**G**

**gate** [2] - 9:6, 9:7
**gates** [5] - 5:25, 8:8, 8:16, 9:11, 9:13
**Gene** [1] - 4:16
**GENE** [1] - 1:9
**gentlemen** [1] - 4:9
**grant** [1] - 14:8
**grievance** [1] - 11:15
**grows** [1] - 5:11

**H**

**hard** [1] - 5:20
**hear** [2] - 6:20, 10:10
**heard** [3] - 5:15, 12:6, 15:15
**HEARD** [1] - 1:13
**heart** [2] - 5:15, 5:25
**held** [1] - 17:12
**hereby** [1] - 18:7
**Herman** [2] - 4:20, 14:23
**HERMAN** [6] - 1:18, 1:19, 4:19, 6:21, 14:23
**HERMAN**.................
.....................[2] - 3:6, 3:10
**hiring** [1] - 11:14
**holding** [1] - 17:15
**Honor** [36] - 4:14, 4:17, 7:15, 7:16, 8:18, 9:5, 9:13, 10:11, 10:16, 10:21, 10:22, 11:2, 11:5, 11:11, 11:12, 11:13, 11:21, 11:25, 12:1, 12:5, 12:6, 12:8, 12:20, 12:22, 13:13, 13:15, 13:18, 13:19, 13:21, 14:5, 14:6, 14:14, 14:15, 14:17, 14:19, 15:2
**HONORABLE** [1] - 1:13

**I**

**immediately** [2] - 13:4, 13:13
**important** [3] - 7:9, 12:21, 14:20
**IN** [1] - 1:5
**INC** [1] - 1:10
**indeed** [2] - 8:22, 9:21
**indicated** [1] - 5:1
**indicating** [1] - 5:5
**indication** [1] - 10:5
**ineligibility** [4] - 8:19, 9:5, 9:20, 13:4
**ineligible** [1] - 9:4
**initial** [2] - 12:21, 13:3
**instance** [1] - 9:8
**interested** [2] - 14:15, 15:9
**interests** [3] - 8:24, 11:9, 11:23
**interpret** [2] - 5:9, 17:8
**investigated** [1] - 11:16
**involved** [1] - 10:6
**irrevocable** [2] - 8:6, 8:25
**issue** [1] - 15:7
**issues** [1] - 15:16
**itself** [1] - 6:24

**J**

**JANUARY** [2] - 1:7, 4:2
**January** [2] - 5:7, 12:17
**JUDGE** [1] - 1:14
**Judge** [2] - 4:20, 6:22

**K**

**KATZ** [1] - 1:18
**kind** [3] - 13:7, 13:10, 13:25
**knowingly** [1] - 11:24
**knows** [2] - 9:5, 9:13

**L**

**LA** [3] - 1:20, 2:7, 2:11
**ladies** [1] - 4:8
**last** [1] - 15:7
**law** [3] - 4:14, 12:2, 14:11
**lawsuit** [2] - 9:2, 9:11

**leaving** [1] - 9:1
**letter** [9] - 5:4, 7:24, 10:17, 10:18, 11:17, 11:20, 12:9, 12:10, 13:20
**letters** [1] - 6:16
**LIABILITY** [1] - 1:5
**lien** [1] - 17:9
**litigating** [1] - 7:13
**litigation** [1] - 5:12
**LITIGATION** [1] - 1:5
**LLC** [1] - 2:6
**looking** [1] - 10:19
**Louisiana** [2] - 18:5, 18:6
**LOUISIANA** [1] - 1:2, 1:7

## M

**mail** [3] - 6:14, 6:15, 13:21
**managed** [2] - 13:16, 15:2
**March** [1] - 5:23
**MARIA** [1] - 1:22
**Maria** [1] - 4:14
**market** [1] - 5:16
**MARVIN** [3] - 2:3, 4:17, 7:16
**Marvin** [3] - 4:17, 7:16, 13:1
**MARVIN......................
......................** [1] - 3:7
**master** [2] - 7:24, 8:5
**matter** [7] - 4:22, 5:11, 15:15, 15:21, 15:24, 16:6, 18:10
**matters** [1] - 5:20
**MDL** [3] - 1:6, 4:11, 12:4
**mean** [1] - 9:20
**means** [1] - 16:18
**meant** [1] - 8:21
**meanwhile** [1] - 6:11
**MECHANICAL** [1] - 2:13
**media** [1] - 5:15
**meet** [1] - 16:4
**mentioned** [1] - 5:19
**Merck** [3] - 4:18, 7:17, 15:1
**MERCK** [1] - 1:10
**Merit** [1] - 18:4
**met** [1] - 13:22
**million** [3] - 7:12, 8:11, 15:4
**misled** [1] - 11:10

**misunderstanding** [5] - 16:12, 16:14, 16:16, 16:17
**misunderstood** [1] - 9:17
**money** [2] - 8:3, 14:21
**monies** [5] - 10:22, 10:24, 13:12, 14:10, 14:11
**months** [5] - 11:16, 12:3, 12:17, 12:18, 12:22
**morning** [5] - 4:8, 4:17, 4:19, 6:21, 7:16
**motion** [16] - 4:9, 7:4, 7:19, 11:3, 11:5, 13:24, 13:25, 14:6, 14:7, 14:8, 14:14, 14:15, 14:16, 16:6, 17:4
**motions** [8] - 4:10, 4:21, 6:19, 7:3, 7:6, 7:18, 14:18, 14:20
**moving** [1] - 5:8
**MR** [8] - 3:6, 3:7, 3:10, 4:17, 4:19, 6:21, 7:16, 14:23
**MS** [6] - 3:9, 4:14, 10:11, 10:16, 10:21, 11:11
**mutual** [1] - 14:19

## N

**N.W** [1] - 2:4
**nailed** [1] - 13:1
**name** [1] - 15:22
**namely** [1] - 7:23
**necessary** [1] - 15:13
**negotiate** [1] - 16:3
**negotiating** [3] - 6:22, 7:4, 14:24
**nervous** [1] - 13:7
**never** [3] - 12:24, 13:24
**NEW** [4] - 1:7, 1:20, 2:7, 2:11
**New** [1] - 5:2
**news** [1] - 5:15
**next** [2] - 12:11, 12:12
**NO** [1] - 1:6
**NORTH** [1] - 1:23
**notary** [1] - 7:23
**note** [1] - 12:21
**nothing** [2] - 7:8, 16:9
**notice** [9] - 8:19, 8:20, 9:5, 9:19, 10:3, 12:21, 12:23, 13:3,

13:20
**notified** [1] - 4:25
**November** [2] - 12:4, 12:13
**null** [1] - 11:4
**number** [2] - 5:19, 15:18
**numbered** [1] - 18:9

## O

**O'KEEFE** [1] - 1:19
**observed** [1] - 15:2
**obviously** [4] - 11:2, 14:5, 14:9, 14:11
**occasions** [1] - 5:20
**OF** [2] - 1:2, 1:13
**Official** [2] - 18:5, 18:15
**OFFICIAL** [1] - 2:10
**once** [3] - 8:5, 13:24
**one** [8] - 4:10, 4:16, 5:25, 6:16, 8:15, 10:14, 15:20, 17:1
**opened** [1] - 6:16
**opportunities** [2] - 6:2, 6:4
**opportunity** [1] - 17:13
**opposing** [1] - 13:24
**ORAL** [1] - 1:13
**oral** [6] - 4:23, 4:25, 5:6, 5:10, 15:16
**order** [1] - 17:10
**ORDER** [1] - 4:4
**orders** [2] - 14:12, 17:12
**ORLANDO** [1] - 1:24
**ORLEANS** [4] - 1:7, 1:20, 2:7, 2:11
**outcome** [1] - 15:5
**outset** [1] - 9:19
**outsider** [1] - 13:2
**overall** [1] - 16:24
**overreaction** [1] - 16:12
**overwhelming** [1] - 16:8

## P

**package** [1] - 8:7
**page** [1] - 12:9
**PAGE** [1] - 3:3
**paid** [2] - 8:17, 10:22
**papers** [2] - 5:8, 8:23
**part** [7] - 6:5, 10:7, 11:4, 11:7, 13:11,

16:1, 16:18
**participate** [8] - 5:1, 5:10, 8:2, 12:12, 12:14, 12:16, 12:24, 16:17
**participated** [1] - 15:18
**participating** [2] - 5:4, 5:9
**particularly** [1] - 7:5
**parties** [5] - 6:4, 6:20, 14:17, 15:25, 16:4
**partner** [1] - 4:15
**pass** [2] - 9:11, 9:13
**passed** [2] - 8:8, 8:16
**pay** [1] - 14:10
**pending** [1] - 17:12
**PEPPER** [1] - 2:10
**Pepper** [3] - 18:3, 18:13, 18:14
**perhaps** [2] - 16:11, 16:12
**period** [1] - 6:1
**permission** [1] - 14:9
**person** [1] - 16:9
**phone** [2] - 5:1, 5:4
**PIGMAN** [1] - 2:6
**place** [1] - 8:5
**PLAINTIFF** [1] - 1:22
**plaintiff** [4] - 4:15, 5:12, 11:10, 16:22
**plaintiffs'** [1] - 15:9
**Plaintiffs'** [2] - 4:20, 11:1
**PLAINTIFFS'** [1] - 1:18
**plan** [2] - 5:9, 6:24
**point** [3] - 8:7, 8:9, 8:13
**points** [3] - 6:8, 6:13, 8:10
**portion** [4] - 10:20, 17:7, 17:8, 17:11
**position** [6] - 10:12, 10:13, 11:8, 11:9, 11:21, 13:22
**potential** [1] - 17:9
**POYDRAS** [1] - 2:10
**prepared** [1] - 8:14
**press** [1] - 7:4
**primary** [1] - 10:2
**pro** [1] - 15:10
**problem** [1] - 5:24
**proceed** [3] - 9:21, 9:22, 16:7
**proceeded** [2] - 5:19, 6:7
**PROCEEDINGS** [3] - 1:13, 2:13, 4:1
**proceedings** [2] -

17:18, 18:9
**process** [3] - 6:11, 8:25, 15:14
**processed** [1] - 10:1
**PRODUCED** [1] - 2:13
**PRODUCTS** [1] - 1:5
**Professional** [1] - 18:4
**program** [18] - 5:22, 6:2, 6:5, 6:6, 6:7, 7:14, 7:20, 7:22, 8:1, 8:2, 8:3, 8:21, 9:11, 9:17, 9:21, 9:22, 9:24, 10:3
**prompted** [1] - 13:8
**provide** [1] - 17:11
**provided** [8] - 6:2, 6:5, 11:14, 11:17, 11:19, 12:4, 12:8, 12:18
**PSC** [4] - 6:22, 7:3, 7:17, 14:24
**pursuant** [2] - 7:24, 14:11
**pursued** [1] - 5:18
**pursuing** [2] - 5:18, 14:15
**put** [6] - 5:5, 8:7, 15:15, 17:1, 17:3, 17:14

## Q

**quarter** [1] - 8:11
**quid** [1] - 15:10
**quite** [1] - 17:4
**quo** [1] - 15:10
**quote** [1] - 8:24

## R

**raise** [1] - 15:20
**RE** [1] - 1:5
**re** [1] - 4:11
**read** [1] - 17:14
**really** [4] - 10:9, 13:1, 14:20
**Realtime** [1] - 18:3
**reason** [1] - 16:5
**receive** [2] - 13:12, 14:4
**received** [7] - 4:22, 5:4, 8:19, 10:17, 12:20, 13:3, 13:19
**receiving** [1] - 12:15
**recently** [1] - 5:4
**recognize** [1] - 6:24
**record** [7] - 4:13, 5:5, 7:7, 12:5, 14:25,

15:8, 18:9
**RECORDED** [1] - 2:13
**recovery** [1] - 7:13
**recuse** [1] - 15:21
**reevaluate** [1] - 6:3
**refers** [2] - 15:22
**regarding** [1] - 14:12
**Registered** [2] - 18:3, 18:4
**registered** [1] - 10:2
**regular** [1] - 5:13
**rejected** [2] - 5:23, 9:1
**rejection** [1] - 16:13
**RELATES** [1] - 1:8
**release** [5] - 7:23, 12:18, 12:19, 16:16
**releases** [1] - 12:23
**removed** [2] - 5:16, 12:4
**REPORTER** [1] - 2:10
**Reporter** [6] - 18:3, 18:4, 18:5, 18:15
**REPORTER'S** [1] - 18:1
**represent** [5] - 4:16, 5:17, 10:14, 10:15, 10:16
**representation** [1] - 11:18
**represented** [4] - 10:14, 11:22, 13:22, 14:1
**rescind** [4] - 7:19, 10:8, 14:6, 17:4
**resolution** [2] - 6:13, 16:24
**resolve** [1] - 15:25
**respect** [1] - 10:4
**respectfully** [1] - 5:7
**response** [1] - 11:7
**responsibility** [1] - 16:2
**retain** [2] - 6:12, 6:14
**retained** [2] - 5:17, 6:17
**return** [1] - 9:14
**returned** [1] - 15:1
**review** [1] - 9:7
**rise** [1] - 4:7
**RMR** [1] - 18:14
**role** [2] - 10:19, 15:23
**Ronald** [1] - 4:22
**ROOM** [1] - 2:10
**rooms** [1] - 13:8
**roughly** [1] - 7:12
**RPR** [1] - 2:10
**rule** [1] - 14:20
**Russ** [2] - 4:20, 14:23
**RUSS** [1] - 1:19

## S

**s/Cathy** [1] - 18:13
**sanction** [1] - 14:20
**sanctions** [12] - 7:3, 7:4, 7:7, 7:18, 13:24, 14:14, 14:15, 14:16, 14:18, 15:8, 15:10, 15:12
**sanctity** [1] - 7:8
**sat** [1] - 15:17
**score** [1] - 9:10
**scores** [1] - 9:4
**seated** [1] - 4:8
**second** [1] - 8:7
**secondly** [1] - 7:2
**see** [2] - 16:4, 16:9
**seeking** [1] - 7:19
**seeks** [1] - 15:21
**SEMORAN** [1] - 1:23
**send** [1] - 10:17
**sent** [4] - 7:25, 8:14, 10:23, 12:16
**served** [1] - 11:23
**services** [1] - 10:17
**set** [5] - 7:9, 7:21, 13:2, 13:7, 15:1
**settle** [1] - 6:12
**settled** [1] - 5:21
**settlement** [32] - 5:22, 6:5, 6:6, 6:19, 7:9, 7:24, 8:4, 8:5, 8:25, 10:8, 11:4, 11:6, 11:25, 12:9, 12:15, 12:25, 13:11, 14:6, 14:7, 14:8, 15:1, 15:22, 15:23, 16:1, 16:10, 16:15, 16:18, 16:19, 17:2, 17:3, 17:4, 17:6
**settlements** [1] - 16:3
**several** [2] - 4:21, 11:16
**shorter** [1] - 6:1
**shortly** [1] - 15:15
**side** [1] - 17:1
**sign** [1] - 11:10
**signed** [11] - 7:22, 11:6, 12:2, 12:12, 12:13, 12:15, 12:16, 12:18, 12:19, 16:15, 16:16
**signing** [2] - 12:23
**simply** [2] - 15:10, 15:24
**sitting** [1] - 10:23
**six** [1] - 15:4
**six-week** [1] - 15:4
**someone** [1] - 9:13

**somewhere** [1] - 13:17
**sort** [1] - 16:22
**SPEAKERS** [1] - 3:3
**spent** [1] - 7:13
**stage** [3] - 10:6, 10:9, 11:22
**standing** [1] - 17:5
**State** [1] - 18:5
**statement** [3] - 6:23, 9:3, 9:9
**States** [2] - 18:6, 18:16
**STATES** [2] - 1:1, 1:14
**Steering** [2] - 4:20, 11:1
**STEERING** [1] - 1:18
**STENOGRAPHY** [1] - 2:13
**steps** [1] - 9:6
**stipulation** [1] - 9:14
**STONE** [1] - 2:6
**STREET** [3] - 2:4, 2:7, 2:10
**submit** [1] - 5:7
**subsequently** [1] - 12:20
**substantial** [1] - 14:3
**substantive** [1] - 15:24
**suit** [1] - 12:3
**SUITE** [1] - 1:23
**supervisory** [1] - 15:24
**sustained** [1] - 5:15
**swirling** [1] - 7:21
**system** [1] - 9:15

## T

**Tejedor** [3] - 4:14, 7:25, 10:2
**TEJEDOR** [7] - 1:22, 1:22, 4:14, 10:11, 10:16, 10:21, 11:11
**TEJEDOR.................
.........................** [1] -
3:9
**temporal** [1] - 5:24
**terminating** [1] - 10:17
**terms** [2] - 6:8, 8:2
**THE** [18] - 1:13, 1:18, 1:22, 2:3, 3:5, 3:8, 3:11, 4:7, 4:8, 4:11, 4:12, 4:21, 10:10, 10:12, 10:19, 11:8, 14:22, 15:14
**thereabouts** [1] - 6:9

**therefore** [1] - 5:16
**thinking** [1] - 17:10
**third** [1] - 8:9
**THIS** [1] - 1:8
**thoughts** [1] - 17:14
**three** [4] - 5:14, 5:24, 8:16, 12:9
**three-page** [1] - 12:9
**throughout** [1] - 15:18
**TO** [2] - 1:8, 4:4
**today** [1] - 9:18
**together** [1] - 8:8
**touched** [1] - 10:24
**track** [1] - 13:3
**tracks** [2] - 8:18, 9:16
**traditionally** [1] - 4:23
**TRANSCRIPT** [2] - 1:13, 2:13
**transcript** [1] - 18:8
**trial** [1] - 15:4
**trials** [1] - 15:18
**tried** [1] - 15:3
**true** [1] - 18:7
**trust** [2] - 10:24, 14:10
**TWELFTH** [1] - 2:4
**two** [4] - 4:9, 8:15, 9:3, 12:18

## U

**ultimate** [1] - 6:13
**under** [3] - 7:14, 8:25, 12:24
**understood** [4] - 8:20, 9:19, 13:1, 16:10
**United** [2] - 18:6, 18:16
**UNITED** [2] - 1:1, 1:14
**up** [1] - 15:11
**upset** [2] - 13:10, 13:12

## V

**valid** [1] - 17:2
**value** [1] - 8:4
**various** [1] - 9:6
**view** [1] - 7:14
**violations** [1] - 11:18
**Vioxx** [6] - 4:11, 5:11, 5:12, 5:13, 5:15, 5:24
**VIOXX** [1] - 1:5
**void** [2] - 6:19, 11:4
**voluntarily** [1] - 16:10

## W

**waiving** [1] - 5:9
**WALTHER** [1] - 2:6
**wants** [2] - 10:9, 11:24
**WASHINGTON** [1] - 2:4
**WEDNESDAY** [2] - 1:7, 4:2
**week** [1] - 15:4
**Weeks** [21] - 4:16, 5:12, 5:22, 6:8, 6:11, 7:19, 7:22, 7:25, 8:10, 8:14, 8:19, 8:20, 9:17, 9:19, 10:7, 10:14, 11:14, 11:22, 11:24, 14:10, 17:11
**WEEKS** [1] - 1:9
**Weeks'** [3] - 8:1, 8:24, 9:7
**WHEREUPON** [1] - 17:18
**WILLIAMS** [1] - 2:3
**willing** [1] - 15:12
**willingly** [1] - 11:24
**willingness** [1] - 12:23
**WIMBERLY** [1] - 2:6
**withdraw** [1] - 14:17
**WITTMANN** [1] - 2:6
**worth** [1] - 15:4
**writing** [3] - 15:14, 17:3, 17:15

## Y

**years** [4] - 5:14, 5:24, 13:22, 14:2
**York** [1] - 5:2