IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re:  VIOXX                                    :        MDL DOCKET NO. 1657

    Products Liability Litigation     :
                                                                                                                        SECTION : L

                                                                     :

This Document Relates to:

    05 - cv - 5382                                  :        JUDGE FALLON
                                                                              MAG. JUDGE KNOWLES

                                                                      :


NOTICE OF MOTION


TO:   Joshua Schiller Esquire, Phillip A. Wittmann Esquire

PLEASE TAKE NOTICE that I will apply to the above named Court, Judge Eldon E. Fallon presiding, at 500 Poydras Street, New Orleans, LA 70130, on April 29, 2010, at 9:00 A.M, for an Order which grants plaintiffs leave to answer defendant's ninth motion to dismiss and for additional relief including xtension of time to file an expert report as required under PTO 28.


*James Schneller*

James Schneller       pro se
500 East Lancaster Ave. # 111d
Radnor, PA 19087
610-688-9471

Dated: April 23, 2010

James D. Schneller          pro se
500 East Lancaster Ave. # 111d
Radnor, PA 19087
610-688-9471

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: VIOXX | MDL DOCKET NO. 1657 |
|     Products Liability Litigation | |
| | SECTION : L |
| This Document Relates to: | JUDGE FALLON |
| | MAG. JUDGE KNOWLES |
| 05 - cv - 5382 | |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE ANSWER TO MOTION TO DISMISS THE COMPLAINT

Plaintiff James D. Schneller ("plaintiff"), representing himself, and on behalf of the heirs and beneficiaries of Marjorie C. Schneller, the Estate of Marjorie Schneller, and the Estate Of George H. Schneller, applies to the Court for leave to answer the defendant's ninth motion to dismiss, rule, and incorporated memorandum, after a delay, and for leave to set for trial, and an extension of time within which to submit an expert report pursuant to Pretrial Order No. 28, stating as follows:

1) Plaintiffs, pursuant to pretrial Order 28 in section II.A.8 were required to serve on defendant by July 1, 2008 a Rule 26(a)(2) case specific expert report attesting to a reasonable

medical probability of causation by defendant's drug and certain other specific findings and attestations. This deadline was universally extended by the Court to August 1, 2008.

2) Defendant has included plaintiffs' case as worthy of dismissal in their ninth motion for rule based on Lone Pine requirements of pretrial Order No. 28. The Court has entered a rule to show cause requiring plaintiffs to comply with pretrial Order No. 28 and has in the Order dated March 4, 2010 directed plaintiffs to file, in addition to the case specific expert report, updated plaintiff profile forms, and medical records. Defendant previously withdrew plaintiffs as respondents in their seventh Lone Pine motion, and the Court, in an order dated 6/11/2009 granted an extension of time of 30 days for plaintiffs to submit a case specific expert report pursuant to plaintiffs response to the seventh motion.

## MOTION FOR LEAVE TO FILE THIS ANSWER OUT OF TIME

3) As stated in plaintiffs' letter to the Court and served on defendant, plaintiffs received absolutely no service of defendant's ninth motion to dismiss, Court orders, nor any other service whatsoever of case related documents, until receiving defendant's letter dated March 4, 2010, pointing out the series of conferences, orders and their motion. This occurred despite plaintiffs having participated in this MDL at various instances, in earnest, and having timely registered their activity with the pro se curator, and made lawful service, at times on the entire list of defendant's liaison counsel.

4) Plaintiffs swear to the verity of these claims, in the last paragraph of this pleading.

5) Defendants have served their communications and service of prior developments in this case by express mail or federal express, yet none of the four orders, notice of any status conferences, nor the ninth Lone Pine motion were served by any form of mail requiring certification and/or signature, or if such is denied, strict proof is demanded.

6) Plaintiffs immediately faxed said letter to defendant and the Court, contacted defendant, and otherwise acted in conformity with the orders and Court rules since that time, and only didn't attend the March conference because, as stated to the parties, plaintiff had been

scheduled, for a long time, for a nine hour train trip that same day, and plaintiff does not own a cell phone .

7) Plaintiffs now request leave to file this answer because, contrary to their perception of the case up to some point after March 24, 2010, that being twenty days from service of notice of the looming deadlines by defendant, new matter has arisen relevant to this PTO 28 proceeding, and plaintiff now asks leave to submit it in answer form.

8) There is no non-compliance by plaintiffs because no service was made of the Orders entered by the Court. The Court's order dated March 24, 2010 has not been served on plaintiffs by the clerk.

9) Plaintiffs last checked the docket on October 9, 2009, and no entries were present despite the fact that the ninth motion to dismiss was filed on August 11, 2010.

10) The Clerk has repeatedly not entered items in this case into the docket or has done so after substantial delay and so substantial mystery and unsureness is inflicted on plaintiffs.

11) In the event that defendant claimed service via file and serve, it is well documented in therecord that plaintiffs repeatedly requested Lexis nexis to allow them to register for file and serve, and then filed a motion for an order to that effect, but the request was denied.

12) A proposed answer is set forth as follows


## ANSWER TO LONE PINE MOTION (NINTH) OF DEFENDANT


13) Plaintiffs' burden is far less because they have shown prime facie proof of an exhibit copy of the hospital discharge notes stating diagnosis of myocarddial infarction, this incident being the claimed hospitalization occurring in the 18th month of Vioxx use, non-use of tobacco and other absences of concurrent risk factors, and have submitted and have not been contested as to, the pharmaceutical records showing Vioxx use. Plaintiff James Schneller has sworn in pleadings as to his daily witnessing and frequent administration of the Vioxx to plaintiff Marjorie C. Schneller. Plaintiff likewise will testify that he was most often the family member who laid out the weeks pharmacy regimen for Marjorie Schneller in a containerized organizer.

14) Moreso, plaintiffs, having provided defendant with accurate records, should be deemed in compliance under Lone Pine because these in conjunction with the PPF, which is sworn, support a finding of substantial evidence showing of support for the claim against defendant, especially when taking into consideration the evidence and expert evidence of record in this MDL overall. See Daubert hearings regarding cardiotoxicity of Vioxx.

15) The facts in the preceding section regarding defendant's and the Clerk's unusual lack of service support a claim that the case is a strong one and that defendants may have hoped that the case might dwindle or suffer a fatal blow by attrition.

16) In support of plaintiffs' claim of diligence, and trial-worthiness of the case, plaintiffs have, in other cases in United States District Courts, timely filed certificates of merit certifying medical liability cases pursuant to Pa.R.C.P. 1042.1 et seq, in regard to numerous medical specialties, by way of a treating physician, and other avenues available in Pennsylvania law, including the absence of a requirement for a certificate of merit under some circumstances. The Third Circuit has recognized and conceded substantive authority of this chapter since 2005. Plaintiffs encountered the same problem in said cases as they now encounter in this case, namely a statement from a cardiology expert, at the same time as refusal by the treating hospital to release echocardiogram tapes and/or discs

17) Plaintiffs timely and in a very cooperative manner submitted their PPF and related discovery-intensive records, lists, and additional requested information.

18) Plaintiffs' updated PPF and discovery material is submitted hereabouts and on or prior to April 28, 2010.

19) Sole living plaintiff James D. Schneller ("plaintiff") was expressly granted an extension of time by defendant until May 27, 2009, to serve the required expert report, and has been granted extensions by the Court, and the circumstances of thie plaintiffs' barriers to attaining an expert report has worsened or at best, remained the same.

20) Further evidence of plaintiffs' ongoing claim that experts are refusing to certify this case for unrepresented clients is seen in the declining by two experts recently recommended by the Oldfather firm, after plaintiffs and said firm, acting apparently in a capacity as assisting towards a pro se party (plaintiffs), notified defendant that this avenue would be attempted.

21) Plaintiffs have when presented with the opportunity, explained to experts their willingness to indemnify the experts in liberal fashion, and to in all available ways prevent liability of the expert from legal action by others. This was in vain.

22) Plaintiffs did not encounter the immediate and unreasoned declining of casesby experts in 2005 and 2006 that he has experienced in 2008 and since. Plaintiff claims this is evidence of a general hardening of the market to pro se litigants, a hardening of this sort to Vioxx claimants or some larger class of pro se claimants, and/or specific blackballing of plaintiff by some class of experts or regarding some sort(s) of complaints by plaintiffs.

23) Said firm has said they are unable to supply any more feasible experts. They graciously permitted plaintiffs to submit a synopsis of the case in support of their taking on the case.

24) The pro se curator has stated that they are not required nor equipped to assist plaintiffs with finding an expert who could assist with the expert report.

25) Defendant has not denied plaintiffs' claims nor requested discovery on the motion for extension of time, so all allegations may be considered by the Court as if admitted.

26) Plaintiffs' inability to submit the expert report, rather than hinging on validity of this claim, is solely a function of plaintiffs' circumstances, the milieu of the Vioxx MDL, and the fact that plaintiff represents himself. These were the circumstances when plaintiffs filed their motion for extension of time in June of 2008.

27) Plaintiffs have met with overt refusal or inaction as to their subpoenas and demands for records and certifications of completeness of said records, and intend to file motions to compel compliance with pretrial Order Nos. 28 at the earliest opportunity.

28) Plaintiff James Schneller has claimed in pleadings that he is an impoverishee and an obstructed litigant and that this intentionally inflicted state of being obstructs his ability to find and finance an expert's services. This, further, infringes continually on time and resources needed to compile data and documentation and at the same time to litigate additional cases which unfortunately, and urgently, cry out for nurturing.

29) Plaintiffs will request prior to hearing date an agreement to an extension of time from defendant.

30) Because defendant granted a case-specific extension of time to plaintiffs, added cause exists for extension of time, whether by defendant's agreement or by the Court, because the circumstances of the case warrant good faith acts to prevent injustice and see the case to a full and fair adjudication.

31) Plaintiffs have met with expert obstruction and fraud in their other litigation.

32) Plaintiffs' case meets the threshold requirements of validity and unfrivolousness by the record as it exists today. The record and facility records, which are possessed by the defendant, show that Vioxx was prescribed, purchased, and ingested daily for at least 16 months by the victim, and that the discharge notes from the hospital stay of the victim state a diagnosis of myocardial infarction. Those hospital records are arguably certified pursuant to pretrial Order No. 28 and, as stated above, were served on plaintiffs pursuant to Court order in Montgomery, PA, Court of Common Pleas in case No. 04-06045.

33) Plaintiff is encountering a lack of cooperation by potential experts that is pronounced, even taking into account his pro se status. Plaintiff at the same time persists and is convinced that he will obtain a report, and will arrange expert testimony for trial in a typical time frame.

34) Plaintiffs have acted diligently in discovery also by working out means for providing the required authorizations for release of information, offering additional assistance to defendant where needed, and ironing out issues of a HIPAA nature with third parties where possible.

35) Defendant's service of the motion is insufficient, and the insufficient notice must be remedied. The certificate of service states only service by uploading to File and Serve, but File and Serve has not permitted pro se parties to register with them for the duration of this MDL. Equally insufficient is the fact that many parties, being in the category of pending motions to withdraw as attorney, and/or as parties who have failed to comply, may be out of touch with their former or inactive attorney, or debilitating circumstances may have affected them or their attorney, and so may not be notified of the motion. In these cases the motion must be served on the plaintiff, in addition to their attorney.

36) Defendant has not provided a service list with their certificate of service. Because File and Serve has not ever permitted non attorney parties to register, unrepresented, self represented, parties have no way of serving answers to the motion without gleaning each mailing address from the Pacer docket access, which is greatly prejudicing to them. This, further, is prejudicing to their ability to meet and discuss their cases with other self-represented plaintiffs, which is a deprival of due process and of fairness, access to remedy for injury, and access to the Court.

37) As a matter of law, unequal treatment results from the Rule to show cause, because unrepresented parties are not granted additional time to submit an expert report beyond the deadline, whereas parties who have attained new or rejuvenated counsel are ordered only to file an appearance or provide the name of the attorney within the same deadline.

38) Plaintiffs have related in this Court how they have been delayed by a set of unpreventable factors which have caused substantial delay. and request that such reasons be found good cause for delay in complying with the requirement of said section.

39) Defendant has not shown prejudice to their case nor intentional acts by plaintiffs causing delay.

40) Plaintiff has related in prior pleadings the impoverishment to him and the round denials by Courts of his efforts to remedy plaintiffs' plight despite clear presence of wrongful use of proceedings, abuse of process, depletion, and many other torts and effects fraudulently inflicted upon plaintiff and the deceased, and their estates and trusts, in an extraordinary amount of error, including the absence of an indispensible party and the appointed corporate trustee.

41) Despite worthy litigation by unrepresented plaintiff, the Chester County, Pennsylvania, Orphan's Court has refused on April 4, 2010, despite submission of a new petition for review, to free the trusts and estates from the violating clutch of the defendants and otherwise grant relief and discovery. Unlawful and unconstitutional obstruction, retaliation, and intimidation pervades the trust estates. Said policy was then adopted by the court-appointed unofficial trustee, and continues up to present. A strong facet of ineffective counsel and collaboration of counsel was present in said proceedings.

42) Plaintiff is hampered in his efforts to retain counsel in any of his actions because of the new professional liability rules promulgated in Pennsylvania in 2001 Pa.R.C.P. 1042.1 et seq., the age of the victim, the contentious litigation, and by the very volume of harm, which in it's magnitude and scope causes an expensive and complex litigation.

43) The stay imposed by the Court remains in effect and the plaintiffs at the same time have complied to the best of their ability with pretrial Order No. 28

44) Defendants have shown bad faith in failing to answer plaintiffs' objections to defendant's Merck Profile Form, which stood likely to substantially affect this matter.

45) The Merck Profile Form contains so little information as to support a claim by plaintiffs that defendant conceals or delays information improperly. In addition to supporting the defense of unclean hands, this also supports plaintiffs' claim that the complaint is a strong case and a case that Merck seeks to avoid in the entirety.

46) Plaintiffs oppose the motion on the grounds that the Counts in this case numbered Counts 3 through Count 8, on behalf of James D. Schneller and Marjorie C. Schneller, and Counts 11 through 13 on behalf of James D. Schneller and George H. Schneller (Motion for Leave to Amend Complaint filed 7/25/06, granted ) are not in need of expert certification of any shape or form and so trial is warranted at this time.

47) Plaintiffs oppose the motion on the grounds that the Counts alleging emotional distress are claims that do not require a case specific expert report in the state of Pennsylvania under circumstances such as exist in this case, including that physical symptoms are claimed for all three plaintiffs.

48) Plaintiffs have shown in their answer to third motion to dismiss, and motion for reconsideration in that matter, a violation of numerous of plaintiffs' rights by parties in Pennnsylvania and Federal Courts, all of whom confer and treat plaintiffs' cases in a manner obstructive, intimidating, and retaliatory. The alleged activities, which feasibly include some means of preventing experts from negaotiating with plaintiffs or with Vioxx claimants, have directly caused plaintiffs' inability to submit an expert report, because they cannot afford the costs of an attorney and often not even the cost of an expert review of the records, and experts

who might accomplish this have disappeared from their access. Plaintiffs' inability to conform is a direct result of the actions of the defendants definitive acts which initiated the torts alleged. Had the deceased lived up to present or grown ill and passed away without the tortious acts complained of in this case, issues as to fees for expert review or attoeney would not exist.

49) Continuing violation thus exists in a degree sufficient to support the Court's dismissal of motion to dismiss.

50) Plaintiff is aware of the penalties for falsity, misrepresentation, fraud, and deception, and takes these very seriously.

51) Plaintiffs have consistently conformed with the orders of the court and schedules directed by the Court.

52) In Pennsylvania state law, filing of a motion for extension of time for certificate of merit, that being the threshold expert certification requirement, which was enabled to prevent unfounded professional liability suits, causes an indefinite period during which "There are no restrictions on the number of Orders that a Court may enter extending the [60 days'] time for filing a certificate of merit . . " Official Note to Pa.R.C.P. 1042.3 (d) [content added reflects Pa.R.C.P. 1042.3(d)]

53) Plaintiff is convinced on the basis of experience that his persistence during an additional short time will at some time result in the attaining of an expert report that will fully comply with pretrial Order No. 28.

54) Such other reasons as exist or arise.

55) The Court has stated that the case runs the risk of being dismissed with prejudice. Dismissal with prejudice however is not warranted because a) defendants have made no claim of lack of veity or other fatal flaws of the case, b) plaintiffs have made every effort to comply with discovery requirements and while they have received a number of extensions of time such numerity is not synonymous with alleviation, where the extraordinary circumstances warranted from inception only one or two extensions,  c) defendants have not shown prejudice to their case nor intentional acts by plaintiffs.

56) I, James Schneller, solemnly affirm and attest that the statements made in this motion are true and correct. I understand that false statements herein are made subject to penalty of perjury.

## CONCLUSION

WHEREFORE, plaintiffs respectfully request the Court that the case not be dismissed, but that plaintiffs be granted leave to proceed to discovery and trial regarding the Counts not requiring of an expert report, so that justice may be served.

WHEREFORE, plaintiffs respectfully request leave to file an expert report at any lawful time during the pendency of this case.

WHEREFORE, plaintiffs respectfully request in the alternative that they be permitted to register with the master Vioxx settlement trust out of time.

*/s/ James D. Schneller*

Date: April 23, 2010

James D. Schneller             pro se
500 East Lancaster Ave. # 111d
Radnor, PA 19087    610-688-9471