**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | SECTION L |
| | : | |
| THIS DOCUMENT RELATES TO | : | JUDGE FALLON |
| ALL CASES | : | MAG. JUDGE KNOWLES |

## OBJECTOR'S LIAISON COUNSEL'S MOTION FOR DISCOVERY RELATED TO THE COMMON BENEFIT FEE APPLICATION

In accordance with this Court's order during an "in chambers" conference held on April 29, 2010, liaison counsel submits the following discovery requests and basis therefore:

1.      Access to the accountant's summary of hours submitted by all Common Benefit Counsel.  This information is necessary so that the objectors have a better understanding of the number of hours submitted by partners, associates, and staff, and when and why these hours were expended.  While the allocation among counsel is not yet at issue, the gross hours submitted will assist counsel in comparing the requested fee to the actual work submitted.  To date, we have only hearsay to the effect that some approximately 500,000 hours were submitted by common benefit lawyers.  This number does not specify when the work was incurred or by who – paralegals, associates, or partners.

If 500,000 hours have been submitted, the median hourly rate at 8% total common benefit fee would exceed $900 an hour.  This seems excessive in the extreme given that the median includes not only PSC member time but a large percentage of hours submitted for staff and associate work.

2.      Depositions of the NPC and representatives from Merck regarding the inclusion of language in the MSA that attempted to supersede or vitiate fee contracts between individual lawyers and the common benefit lawyers.  As this Court is aware, these fee contracts were drafted by the PSC to apply to any settlement of VIOXX claims except class action fee petitions.  The contracts were approved by this Court and represented private agreements between the common benefit lawyers and the individual lawyers.  Depositions of NPC members and Merck are necessary to definitively establish that the NPC itself unilaterally included the vitiation language in the MSA.  Merck indicates that it took no position on the common benefit fee in paragraph 9 of the MSA.  This provision leads to a strong presumption that the NPC acted in a self serving manner in adding this to the MSA, and illegally repudiating its contracts with individual lawyers.

This issue is important because it leads to an equally strong presumption that in creating the MSA, they were not acting in the common benefit.  It also suggests that common benefit fee requests in excess of the contracts is improper and without any legal basis.  Depositions and document requests would relate to drafts of the agreement, and correspondence proving how the provision made its way into the MSA.

3.      Discovery from the NPC of any ethical opinions it received regarding the "all cases or no cases" provision in the MSA.  The NPC put the plaintiff's lawyers in an untenable position when they required that an individual lawyer submit all his or her cases into the settlement or submit none.  It appears from Mr. Herman's deposition that several ethics experts were consulted.  If the NPC was aware of the unethical nature of

the MSA's provision, there would be evidence that this settlement was not done in the common benefit, and the fee request would be impacted by that fact.

4.      Upon receipt of the foregoing information, narrowly tailored discovery may be requested based on ambiguities or questions raised.

5.      Deposition of Andrew Birchfield to discuss the drafting of the full participating, limited participating, and traditional fee contracts approved in PTO 19. This deposition includes the production of all documents relating to the reasons and preparation of such contracts.  This is necessary to demonstrate that these contracts were intended to apply to all settlements except Rule 23 class action settlements, and that there was no exception intended or written into such contracts for mass settlement of the individual cases.

6.      Finally, the objectors' liaison would request access to all contracts signed with the PSC relating to common benefit fee, and additional access to the total gross settlement of each contracting attorney through the settlement program.  This is necessary to gain information about the amount in controversy.

Dated at New Haven, Connecticut this 11Th day of May, 2010.

THE OBJECTORS,

By_____
MICHAEL A. STRATTON
OBJECTOR'S LIAISON COUNSEL
STRATTON FAXON
59 ELM STREET
NEW HAVEN, CT 06510
TEL:  203-624-9500
FAX:  203-624-9100
mstratton@strattonfaxon.com

## ORDER

AND NOW, this _____ day of May, 2010, upon consideration of Objector's Liaison Counsel's Motion for Discovery Related to the Common Benefit Fee Application, IT IS HEREBY ORDERED that Objector's motion with respect to the instant matter is GRANTED / DENIED.

BY THE COURT:

_____
Eldon E. Fallon, U.S.D.J.

## CERTIFICATION OF SERVICE

I hereby certify that the above and forgoing Motion has been served on Liaison Counsel, Russ Herman and Phillip Wittman, by U.S. Mail and email or by hand delivery and email and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of May, 2010.



Michael A. Stratton