UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: | * | |
| ALL CASES | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * *

**DEFENDANT MERCK SHARP & DOHME CORP.'S OPPOSITION TO OBJECTOR'S LIAISON COUNSEL'S MOTION FOR DISCOVERY RELATED TO THE COMMON BENEFIT FEE APPLICATION AND CROSS-MOTION FOR PROTECTIVE ORDER**

Defendant Merck Sharp & Dohme Corp. ("Merck") respectfully submits this opposition to the Objector's Liaison Counsel's Motion For Discovery Related To The Common Benefit Fee Application ("Mot.") filed by the liaison counsel for attorneys with objections to the common benefit fee application ("Objectors"). Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Merck also respectfully cross-moves the Court for issuance of a protective order to prevent the proposed discovery from going forward.

As set forth below, Objectors have been tasked by the Court with the job of acting as liaison counsel on behalf of attorneys who object to the Plaintiff Steering Committee's ("PSC's") common benefit fee application. At the Court's request, Objectors have filed a motion seeking discovery, ostensibly in furtherance of their objection to the common benefit fee application. Their proposed discovery requests, however, are utterly inappropriate. Specifically, Objectors seek depositions of "representatives from Merck regarding the inclusion of language in the MSA that attempted to supersede or vitiate fee contracts between individual lawyers and the common benefit lawyers." Such depositions could not possibly have any bearing on the Court's decision

1016838v.1

regarding the common benefit fee application. As a result, Objectors' motion should be denied and a protective order should issue.

## BACKGROUND

On November 9, 2007, after several years of litigation that included discovery of millions of documents, depositions of numerous company witnesses and experts and multiple trials, counsel for Merck and the Negotiating Plaintiffs' Counsel ("NPC") announced a private agreement to settle many Vioxx personal injury cases pending in the MDL and other jurisdictions around the country. (*See* Master Settlement Agreement, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Nov. 9, 2007) ("MSA"), *available at* http://www.browngreer.com/vioxxsettlement.) The MSA established a $4.85 billion fund to resolve cases pending on November 9, 2007, in which plaintiffs claimed that Vioxx caused a heart attack, ischemic stroke or sudden cardiac death. (*Id.*, Recitals.) Notably, in contrast to a class settlement, the MSA purported to bind only those claimants who affirmatively consented to its terms and opted into the resolution program it created.

The MSA also provided for an assessment of common benefit fees to compensate the common benefit attorneys in the Vioxx MDL. (*Id.* § 9.2.) According to the MSA, "an assessment of common benefit attorneys' fees will be imposed at no more than 8% of the gross amount recovered for every client that registers under the terms of the Settlement Agreement." (*Id.* § 9.2.1.) The assessment for common benefit fees would supersede the assessment provided to MDL common benefit attorneys pursuant to Pretrial Order No. 19 ("PTO 19"). (*Id.*) Notably, the MSA explicitly states that "***Merck takes no position regarding, and has no responsibility or Liability for, the award of common benefit attorneys' fees and the reimbursement of costs under this Section, or the allocation of the same, and waives the right to contest these matters***." (*Id.* § 9.2.6 (emphasis added).)

2

On January 20, 2009, Plaintiffs' Liaison Counsel ("PLC") filed a Motion For Award Of Plaintiffs' Common Benefit Counsel Fees And Reimbursement Of Expenses. (*See* Dkt. 17642.) In that motion, "the affiliated Common Benefit Counsel request[ed] an award of 8% of the $4.85 billion fund or $388 million for attorneys['] fees." (*Id.* at 3-4 (footnote omitted).) Thereafter, on April 16, 2009, the Court issued an Order directing any party who objected to that motion to file a Notice of Objection and serve it on the PLC on or before May 8, 2009. Numerous objections were filed. On May 5, 2009, counsel Michael Stratton filed his objection to that motion. (*See* Stratton Faxon's Notice Of Objection To The PSC Fee Request, Dkt. 18649.) On September 15, 2009, the Court held a status conference to discuss the PSC's motion. (*See* Sept. 15, 2009 Minute Entry, Dkt. 23893.) At that conference, the "parties indicated that they will meet and confer to discuss their proposals regarding a discovery schedule for the issue, as well as the scope of discovery and any other relevant issues." (*Id.*) The Court advised that if "the parties are unable to resolve these issues on their own, they are directed to submit their competing proposals to the Court, who will settle any existing disputes." (*Id.*) The Court appointed Mr. Stratton as Liaison Counsel for Common Benefit Fee Application Objectors on September 30, 2009. (*See* Pretrial Order No. 52, Dkt. 24522.)

On October 15, 2009, Mr. Stratton filed a Motion For A Discovery/Briefing Schedule Relating To The Common Benefit Fee Application Objections. In that motion, Mr. Stratton, purportedly on behalf of Objectors, sought permission to depose a corporate representative from Merck regarding, among other things, PTO 19. On November 3, 2009, Merck filed an opposition to Objectors' motion and sought a protective order that the discovery sought not be had. On March 23, 2010, the Court ordered that "Mr. Stratton and Plaintiff's Liaison Counsel, Russ Herman, shall each make themselves available to be deposed by the other." (*See* Dkt. 37826.) The Court reserved ruling on the discovery issues raised by Merck.

3

On April 29, 2010, the Court held a status conference to discuss the common benefit fee application. At that conference, "Mr. Stratton indicated that [he] felt that further discovery would be necessary." (*See* Minute Order, Dkt. 41065.) As a result, the Court ordered that "Mr. Stratton identify to the Court what discovery is needed, and why." (*Id.*) On May 10, 2010, Mr. Stratton filed a Motion For Discovery Related To The Common Benefit Fee Application. In that motion, Mr. Stratton seeks depositions of representatives "from Merck regarding the inclusion of language in the MSA that attempted to supersede or vitiate fee contracts between individual lawyers and the common benefit lawyers." (Mot. at 2.) The motion further states that "[d]epositions and document requests would relate to drafts of the agreement," and seeks "correspondence proving how the provision made its way into the MSA." (*Id.*)

Merck now files an opposition to Objectors' motion and seeks a protective order that the discovery sought not be had.

## ARGUMENT

Federal Rule of Civil Procedure 26 permits discovery of unprivileged information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The purpose of this rule, as amended in 2000, is to "'focus [discovery] on the actual claims and defenses involved in the action.'" *See Collens v. City of New York*, 222 F.R.D. 249, 252 (S.D.N.Y. 2004) (citing Fed. R. Civ. P. 26, Advisory Committee Notes to 2000 Amendments). Accordingly, "courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition'" regarding matters "not related to the alleged claims or defenses." *Id.* at 253; *see also Diaz-Padilla v. Bristol Myers Squibb Holding Ltd. Liab. Co.*, No. 04-1003, 2005 U.S. Dist. LEXIS 5879, at *3-5 (D.P.R. Apr. 4, 2005) (denying motion to compel information about all other employees in employment discrimination case; the 2000 amendments to Rule 26 were

1016838v.1

intended to "confine discovery to the claims and defenses asserted in the pleadings") (citation omitted).

As set forth below, the Court should deny Objectors' motion and prevent the requested discovery from going forward for two reasons: (1) the requested discovery will not lead to the discovery of information germane to the PSC's common benefit fee application; and (2) discovery related to settlement negotiations is inappropriate absent a compelling rationale such as evidence of collusion.

*First*, the depositions requested by the Objectors will not lead to the discovery of information germane to the Objectors' purported concerns about the common benefit fee application. The Objectors' challenge to the 8% fee application is legal in nature; they do not believe the MSA terms should be permitted to supersede the full participation option contracts set forth in PTO 19. But that is a straight question of legal interpretation – no discovery could possibly be relevant to the Court's analysis of that issue.

Moreover, even if it were possible that some discovery would shed light on any issue related to the PSC's fee application or § 9.2 of the MSA, it is virtually impossible that Merck would possess relevant information or documents. After all, the dispute here concerns the fees to be awarded to attorneys whose work was dedicated to the common benefit of Vioxx *plaintiffs*. That is a matter between plaintiffs' counsel and the Court. As noted above, the MSA explicitly states that "Merck takes no position regarding, and has no responsibility or Liability for, the award of common benefit attorneys' fees and the reimbursement of costs under this Section, or the allocation of the same, and waives the right to contest these matters." (MSA § 9.2.6.) And the Objectors themselves acknowledge that "Merck indicates that it took no position on the common benefit fee in paragraph 9 of the MSA." (Mot. at 2.) Merck's failure to take such a position is not surprising. After all, Merck's exposure was capped by the amount of the

5

settlement, and Merck had no real interest in – or basis for – weighing in on how plaintiffs' attorneys should be compensated.

In any event, the challenge is spurious. As the Court is aware, the MSA established a settlement program that permitted plaintiffs to "opt in" if they so chose. By enrolling in the program, a given plaintiff and his counsel agreed to abide by the terms of the MSA; under Section 1.2.4, "[b]y submitting an Enrollment Form, the *Enrolling Counsel*, and all Program Claimants covered by such Enrollment Form . . . shall be deemed to have agreed to be bound by all of the terms and conditions of this Agreement." (MSA § 1.2.4.) One of the terms that participating plaintiffs were required to accept establishes a Common Benefit Fund that supersedes the PTO 19 assessment. Participating plaintiffs and their counsel were free to enroll in the MSA and thereby agree to its terms – or not. But having enrolled, a plaintiff or his counsel cannot agree to abide by those terms he likes and disregard those he does not. In short, the MSA constituted an offer, the Objectors accepted that offer by enrolling in the MSA, and they are now bound by all of its terms – including the establishment of a Common Benefit Fund, which superseded the PTO 19 assessment.

***Second***, Objectors' request should also be rejected because they have shown no evidence of impropriety or collusion. As numerous courts have recognized, settlement negotiations are not a proper subject of discovery absent such evidence. *E.g.*, *In re Lupron(R) Mktg. & Sales Practices Litig.*, MDL No. 1430, No. 01-10861-RGS, 2005 U.S. Dist. LEXIS 4039, at *7 (D. Mass. Mar. 16, 2005) (denying motion to compel discovery related to settlement negotiations in MDL proceeding); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987) ("[d]iscovery of settlement negotiations in ongoing litigation is unusual because it would give a party information about an opponent's strategy"); *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 221 (N.D. Ill. 2001) ("Further, the Court agrees with the

authorities that generally find it unwise to allow one party to obtain discovery about the private settlement positions of opposing parties in ongoing litigation.").

In *Lupron*, for example, plaintiffs in a state court action that ran parallel to a federal MDL action asserted that "the parties to the MDL settlement . . . refused to comply with their requests for discovery concerning the MDL settlement negotiations, thereby hindering their ability to formulate a fully developed objection to the settlement." 2005 U.S. Dist. LEXIS 4039, at *2-3. The plaintiffs argued "that they need[ed] information about the settlement negotiations" to discover "(1) the extent of the discovery undertaken in the MDL case and the MDL plaintiffs' counsel's evaluation of the likelihood of success; (2) plaintiffs' demands in the settlement negotiations; and (3) whether defendants, faced with Intervenors' parallel litigation, conducted a 'reverse auction' with the collusion of plaintiffs' counsel." *Id.* at *5-6. The court disagreed and denied the motion. The court began by observing that "[c]lass members who object to a class action settlement do not have an absolute right to discovery; the Court may, in its discretion, limit the discovery or presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement." *Id.* (citation omitted). Moreover, the "burden is higher when a party seeks discovery of settlement negotiations." *Id.* at *7. Although in "exceptional cases, circumstantial evidence may demonstrate collusion between class counsel and defendants to a degree sufficient to warrant discovery into settlement negotiations[,]" *Lupron* was not such a case. *Id.* at *8. On the contrary, the court noted that the "MDL action has been litigated in this court since 2001, and has been the subject of dozens of heated motions and oral arguments," and "based on a thorough review of the settlement, the court has preliminarily found that the settlement is fair." *Id.* at *9-10. *See also Mars Steel*, 834 F.2d at 680, 684 ("[d]iscovery of settlement negotiations in ongoing litigation . . . would give a party information about an

opponent's strategy" and is thus permitted only where the party seeking it lays an evidentiary foundation "that the settlement may be collusive" or other, similar "hanky-pank").

The same result is appropriate here. The Court should not permit Objectors to take discovery regarding the highly sensitive communications and negotiations that ultimately led to the formation and consummation of the MSA. Objectors have made no showing whatsoever that the settlement itself is collusive or the result of any "hanky-pank." Nor could they. As the Court is well aware, the NPC and Merck worked tirelessly to craft terms acceptable to both sides, and each and every provision is the result of months of arm's-length negotiation. For this reason as well, Objectors' request should be denied.[1]

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that the Court deny Objectors' motion and issue a protective order preventing the proposed discovery from going forward.

Dated:  May 17, 2010                                          Respectfully submitted,


                                                              /s/ Dorothy H. Wimberly
                                                              Phillip A. Wittmann, 13625
                                                              Dorothy H. Wimberly, 18509
                                                              STONE PIGMAN WALTHER
                                                              WITTMANN L.L.C.
                                                              546 Carondelet Street
                                                              New Orleans, LA 70130

---

[1] Merck also notes that the Court should deny Objectors' request because the discovery they seek – even assuming it existed – would impinge on privileged attorney-client communications. For example, Objectors are seeking information regarding "the inclusion of language in the MSA that attempted to supersede or vitiate fee contracts between individual lawyers and the common benefit lawyers," as well as discovery related to "drafts of the agreement, and correspondence proving how the provision made its way into the MSA." (Mot. at 2.) As the Court knows, Merck's counsel played a substantial role in the development of the settlement program. Requiring the Company to reveal the substance of the discussions involved in creating those provisions – as well as communications by Merck representatives that mention them – would inevitably call for the disclosure of countless attorney-client communications and attorney work product materials.

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP & DOHME CORP.

1016838v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Opposition/Cross-Motion has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 17th day of May, 2010.

                                                          */s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax: 504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1016838v.1