UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| This document relates to: | * | |
| | * | MAGISTRATE JUDGE |
| KATHLEEN ACKERMAN, et al., | * | KNOWLES |
| | * | |
| Plaintiffs, | * | |
| | * | |
| V. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| Civil Action No. 2:06cv02198 | * | |
| | * | |
| *As to only:* | * | |
| *Debra J. Miller and Douglas Miller* | * | |

**********************************************************************

**DEFENDANT MERCK & CO., INC.'S MEMORANDUM IN OPPOSITION TO MILLER
PLAINTIFFS' RULE 60(b)(3) MOTION TO VACATE DISMISSAL**

Defendant Merck & Co., Inc. ("Merck"), through its undersigned counsel, hereby submits

this memorandum in opposition to Plaintiffs Debra Miller's and Douglas Miller's Motion

Pursuant to Federal Rule of Civil Procedure 60(b)(3) to Vacate, Rescind or Declare the Release

of All Claims and Other Consent They Gave to Accept the Terms of the Master Settlement

Agreement Null, Void and Unenforceable, and to Vacate This Court's Order of November 12,

2009, Dismissing Their Action With Prejudice, and Restore the Action to the Court's Docket,

and for the Court's Recusal and Referral of the Instant Motions to Another Judge for Determination, and states as follows:

Attorney Ronald Benjamin has filed this motion attacking the dismissal of the claims of Plaintiffs Debra Miller and Douglas Miller ("Miller Plaintiffs") who enrolled in the Vioxx Resolution Program, and whose claims were ultimately extinguished after all level of review had been exhausted, including review by a Special Master. Although the motion is styled as a Rule 60(b)(3) motion which requires some showing of "fraud . . . misrepresentation, or misconduct by an opposing party," Plaintiffs' supporting papers do not establish any fraud or misconduct of any kind on the part of Merck. All of the Merck conduct of which Plaintiffs complain is embodied in the written terms of the Master Settlement Agreement—terms that were publicly disclosed in a wide variety of fora in 2007, including via posting on the internet. A review of the relevant materials shows that the Miller Plaintiffs' true complaints concern issues they have with their former counsel. Merck has fully complied with its obligations under the MSA, and in doing so, no fraud, misrepresentations or misconduct has transpired. The motion should be denied.

* * *

1.      The Miller Plaintiffs claims were dismissed pursuant to entry of a Stipulation of Voluntary Dismissal that was delivered to Merck by the Claims Administrator for the Vioxx Resolution Program. As described below, the Miller Plaintiffs were provided the opportunity to present their claims in the Resolution Program, and were provided multiple opportunities to present relevant evidence supporting their claims. However, they failed to provide the required threshold evidence of Vioxx usage, and they waived their rights to submit an FES. Accordingly, entry of the stipulation of dismissal was proper and should not be set aside.

2

**Relevant Provisions of the Resolution Program and Settlement Agreement**

2.       The history of the Vioxx Resolution Program is well known to this Court.  On
November 9, 2007, the parties in this litigation announced the establishment of the Vioxx
Resolution Program.  The requirements of that Program are set out in the Master Settlement
Agreement ("Agreement" or "MSA").  By submitting an Enrollment Form, claimants and their
enrolling counsel agree to be bound by all of the terms and conditions of the Agreement.  *See*
MSA § 1.2.4.

3.       Under the terms of the MSA, each counsel who enrolls clients in the Program
must "exercise his or her independent judgment in the best interest of each client individually
before determining whether to recommend enrollment in the Program."  *See* § 1.2.2 of
January 17, 2008 Amendment to Settlement Agreement (amending MSA § 1.2.8.1).

4.       Submission of an Enrollment Form is irrevocable, and a claimant may not, other
than as specifically provided for under the Agreement, withdraw an Enrollment Form, request
the return of his Release or Stipulation for Dismissal With Prejudice or otherwise unilaterally
exit the Program.  *See* MSA § 1.2.3.

5.       As part of the settlement process, claimants must submit to the Claims
Administrator (BrownGreer) complete Claims Packages, including all of the required pharmacy,
medical and event records, as well as properly and fully executed Releases and Medical and
Employment Record Authorization Forms.  *See* MSA §§ 1.3.1, 1.2.2.1.  Additionally, claimants
with lawsuits pending against Merck must provide properly and fully executed Stipulations for
Dismissal With Prejudice.  *See* MSA § 1.2.2.1.

6.       In order to be eligible for payment, claimants must meet, among other criteria, the
injury, duration, and proximity gate criteria as defined in the MSA and as determined by the

Claims Administrator.  *See* MSA §§ 2.1, 2.2, 2.3.  If the Claims Administrator determines that a claimant does not meet the requisite gate requirements, the Gate Committee takes a further review.  *See* MSA § 2.5.  If the Gate Committee also determines that a claimant is not eligible, the claimant may appeal the Gate Committee's determination to the Special Master as set forth in the MSA.  *See* MSA § 2.6.  The Special Master's decision on whether the claimant is eligible is binding, final, and non-appealable.  *See* MSA § 2.6.3.

7.      Alternatively, program claimants who choose not to appeal the Gate Committee's determination of ineligibility may exit the Resolution Program, and obtain return of their release and stipulation of dismissal, by properly executing and delivering a Future Evidence Stipulation within thirty days of the Claims Administrator's notice to the claimant or their counsel of the notice of ineligibility.  See MSA § 2.7.3.  A claimant is given notice at each step of the process as to the status of the claim and, the claimant has multiple opportunities to submit additional information for consideration of the decision maker.

**Relevant Facts Regarding Miller Plaintiffs' Claims**

8.      The Miller Plaintiffs commenced the process of enrolling in the Vioxx Resolution Program on or about March 31, 2008.  *See* Vioxx Claims Administrator Summary of Claims Event Notices ("Claims Administrator Summary") (attached as Exhibit A).  The Miller Plaintiffs became enrolled as of August 28, 2008.  *Id* at 1.

9.      Notwithstanding the submission of enrollment materials, Plaintiffs failed to submit the required Claims Package, including a basic claims form and pertinent medical records.  The Claims Administrator issued three separate Notices of Claims Package Deficiency to Primary Counsel for Miller Plaintiffs, apprising Primary Counsel of the materials that were missing.  *See id.* at 1 ¶¶ 6, 7, 9.  Finally, on December 29, 2008, Primary Counsel submitted a

claims form, pharmacy records, medical records and event records ("PME Records") and the claim proceeded to Gates Review.  *Id.* at 2.

10.     On March 31, 2009, Primary Counsel for the Miller Plaintiffs received a Claims Administrator Notice of Ineligibility.  The Notice indicated that the Miller claim failed the Duration and Proximity Gates because all of the drug proof submitted showed that the Vioxx usage occurred only ***after*** the alleged Event.  *Id.* at 2 ¶ 13.  Miller Plaintiffs were provided 14 calendar days to send the claim to the Gate Committee, request more time to gather additional information supporting eligibility, or submit additional documentation and request a Secondary Review from the Claims Administrator.

11.     On March 31, 2009, Primary counsel requested additional time to gather information about the claim.  On that same date, Counsel re-submitted the pharmacy records previously submitted on December 29, 2009.  *See* Claims Administrator Summary at 2 ¶ 14. Although the Miller Plaintiffs attach an affirmation from Dr. Ray Morris, in support of their Rule 60(b)(3) Motion to this Court, stating that he provided Debra Miller with Vioxx samples sufficient to cover the period of January 3, 2001 through February 11, 2001 (the date of Plaintiff's MI), *see* Exhibit A to Affidavit of Plaintiff Debra J. Miller, and although Dr. Morris's Affirmation is dated December 18, 2008, that Affirmation was not included in the December 29, 2008 Claims Package submitted to the Claims Administrator, nor at any time thereafter.  *See* Claims Administrator Summary at 4 ¶ 26.

12.     On May 14, 2009, Primary Counsel re-submitted the same pharmacy records previously submitted on December 29, 2009 and March 31, 2009.  *See* Claims Administrator Summary at 2 ¶ 15.  Again, this submission did not include the December 18, 2008 Affirmation of Dr. Morris.  *See* Claims Administrator Summary at 4 ¶ 26.

13.     On May 19, 2009, the Claims Administrator issued another Notice of Ineligibility that the claim failed the Duration and Proximity Gates.  *See* Claims Administrator Summary at 2 ¶ 15.  The Claims Package was forwarded to the Gate Committee for review.  Based on that package – which showed no documentation of any Vioxx usage prior to Ms. Miller's February 11, 2001 event – the Gate Committee determined that the claim did not pass the Duration and Proximity Gates.  *Id.* at 3 ¶ 18.

14.     Notice of this Gate Committee determination issued on July 6, 2009.  That Notice informed Counsel that claimants had the option of either appealing the Gate Committee determination to the Special Master or submitting a Future Evidence Stipulation.  *Id.*  On July 21, 2009, Primary Counsel informed the Claims Administrator that the Miller Plaintiffs would pursue the option of appealing to the Special Master.  *Id.* at 3 ¶ 21.

15.     The Claims Package was forwarded to the Special Master for review.  Based on that package – which showed no documentation of any Vioxx usage prior to Ms. Miller's February 11, 2001 event – the Special Master likewise determined that the claim did not pass the Duration and Proximity Gates.  *Id.* at 3 ¶ 22.

16.     On July 27, 2009, the Claims Administrator informed Primary Counsel of the Special Master's determination.  Primary Counsel was also informed that the Claims Administrator would deliver the Miller Plaintiffs stipulations of dismissal and release to Merck and close the file.  *Id.*

17.     At no point in time prior to the final closure of the Miller Plaintiffs' claim was the Claims Administrator, the Gate Committtee, or the Special Master ever provided with the Dr. Ray Morris Affirmation.  The Claims Administrator first heard that such a document existed on September 15, 2009 when it received an email directly from Ms. Debra Miller.  *Id.* at 4 ¶ 26.

1016916v.1

**The Valid Order of Dismissal Should Not Be Disturbed**

18.     Plaintiffs do not contest that they voluntarily enrolled in the Resolution

Program.  Ms. Miller acknowledges that she and her husband executed the relevant release

and "put our reservations aside and participated in the program to the best of our ability."

Miller Aff. ¶¶ 27-28.

19.     By enrolling in the Vioxx Resolution Program, Plaintiffs agreed to be bound

by the terms of the Agreement.

20.     Provision 2.7.2 of the MSA provides:

"If (i) an Enrolled Program Claimant receives a notice from the Claims
Administrator pursuant to Section 2.5.6 [Gate Committee Notice of Ineligibility], and (ii)
such Enrolled Program Claimant makes and loses an appeal to the Special Master
pursuant to Section 2.6, such Enrolled Program Claimant immediately shall cease to have
any further rights under the Program, and the Claims Administrator **shall** deliver the
Enrolled Program Claimant's Dismissal With Prejudice Stipulation and Release to Merck
(**and, without limitation, Merck shall be free to file or cause to be filed such Dismissal
With Prejudice Stipulation and/or Release in any relevant action or proceeding**).

(Emphasis added).

21.     The foregoing provision is clear and unambiguous.  It has been an integral

part of this Agreement since its inception.  As such, it must be enforced by its express

terms. *See, e.g., Wilder v. Bernstein,* 153 F.R.D. 524, 527-28 (S.D.N.Y. 1994) ("if the

language of the settlement agreement is unambiguous, its meaning must be discerned within

the 'four corners' of that document"); *Northrup Contracting, Inc. v. Village of Bergen*, 129

A.D.2d 1002, 1003 (N.Y.A.D. 1987) ("Since the terms of the settlement agreement are

unambiguous, it is the responsibility of the court to interpret it, and its meaning must be

gleaned from the face of the instrument.").[1]

---
[1]     New York law governs interpretation of the MSA.  *See* MSA § 16.3.

7

22.     Both the Plaintiffs and their new counsel appear to have a fundamental misunderstanding of the Resolution Program and the basis on which Plaintiffs' claims were evaluated in the Program.  Plaintiffs assert that Ms. Miller received and ingested fifty-eight Vioxx pills within the 60 days immediately prior to her heart attack.  Pl. Mem. At 6.  If documentation of such usage had been provided to the Claims Administrator, then the Miller Claim would clearly have passed the Duration and Proximity Gates.  The Duration Gate requires only a showing of the issuance of thirty (30) Vioxx pills within a sixty (60) day period.  *See* MSA Exhibit 2.2.1.2.  The Proximity Gate can be satisfied by showing that at least 30 pills were dispensed within the 56 days preceding the alleged event.  *See* MSA Exhibit 2.2.1.3.

23.     In contrast to the assertions made in these motion papers, the Claims Package submitted on behalf of the Plaintiffs did not provide documentation of ***any*** Vioxx usage prior to the date of Ms. Miller's heart attack.  Neither the Claims Administrator, the Gates Committee, nor the Special Master was presented with the physician's affidavit attached to Plaintiffs' motion.

24.     Although Plaintiffs, through their new counsel, assert that their prior attorneys were acting against Ms. Miller's interest because they recommended enrolling in a Program that "on its face, would reject her claim" and leave her with "no compensation and no lawsuit," Pl. Mem. at 8, 9, the alleged facts presented by Plaintiffs establish the contrary. Had Plaintiffs provided documentation for the usage Ms. Miller alleges, she unquestionably would have been deemed eligible.  Moreover, based on the facts alleged by Ms. Miller regarding her age, physical condition, usage and lack of risk factors, such a claim would have been entitled to compensation.

25.     Pursuant to the terms of the MSA, which the Miller Plaintiffs voluntarily agreed to by enrolling in the Program, their claim received numerous layers of detailed review by trained reviewers at the Claims Administrator, by representatives of the PSC and Merck on the Gates Committee, and again by Merck.  Plaintiffs also elected to have this claim evaluated by a Special Master.  (Plaintiffs could have instead chosen to preserve their ability to litigate their claims in court pursuant to an FES.)  The Resolution Program provided multiple levels of substantive review, but the participants charged with reviewing claims can only review the evidence actually submitted to them for review.  These multiple levels of detailed review involved a substantial expense borne by Merck, pursuant to its obligations under the Agreement.

26.     Merck has fully complied with its obligations under the MSA.  Plaintiffs and their counsel were required to provide documentation for their claims.  Any error or omissions that may have occurred in the compilation of Plaintiffs' Claims Package by Plaintiffs and their counsel does not constitute fraud or misconduct on the part of Merck. There is, therefore, no basis for granting Plaintiffs' motion under Rule 60(b)(3).

**Motion for Recusal**

27.     Mr. Benjamin has launched numerous challenges to the Resolution Program in this Court and others over the past 2 ½ years..  In doing so, Mr. Benjamin has also sought this Court's recusal from addressing the merits of his various challenges.  Mr. Benjamin again asks that this Court recuse itself from ruling on this controversy.  For the reasons previously stated by this Court, this request for recusal should be denied:  "The Court played no role in drafting the private settlement agreement reached by the parties; the Court has taken no position as to what types of claims should or should not have been included in the settlement; and, finally, the Court

has consistently stated it neither encourages nor discourages participation in the settlement."
*Agard v. Merck*, December 10, 2008 Order at 6.  Mr. Benjamin's effort to take his case to another adjudicator should be denied once again.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs; Motion should be denied.

Dated:  May 17, 2010

Respectfully submitted,

By:*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

—and—

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

1016916v.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Opposition has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 17th day of May, 2010.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

11

1016916v.1