UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Vioxx<br>PRODUCTS LIABILITY<br>LITIGATION | ) MDL Docket No. 1657<br>)<br>) SECTION L<br>)<br>) JUDGE FALLON<br>)<br>) MAGISTRATE JUDGE KNOWLES<br>)<br>) |

THIS DOCUMENT RELATES TO:
**Kathleen Ackerman, et al. vs. Merck & Co., Inc., No 2:06-cv-02198-EEF-DEK**
(pertaining to **Debra Miller** only)

**Cellino & Barnes, P.C.'s Expedited Motion to File an Amicus Curiae Brief in Partial Support of Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 60(b)(3) to Vacate, Rescind or Declare the Release of All Claims and Other Consent They Gave to Accept the Terms of the Master Settlement Agreement Null, Void and Unenforceable, and to Vacate This Court's Order of November 12, 2009, Dismissing with Prejudice, and Restore the Action to the Court's Docket and for the Court's Recusal and Referral of the Instant Motions to Another Judge for Determination**

Cellino & Barnes, P.C., former counsel for plaintiff, respectfully requests the opportunity to file an amicus curiae brief in support of certain portions of Mrs. Miller's pending motion. Having reviewed Merck's opposition, this firm believes it is in possession of information potentially beneficial to Mrs. Miller specifically responsive to factual issues raised by Merck for the first time. The firm accordingly seeks leave of this Court to provide this information to the extent it may assist in resolving Mrs. Miller's pending motion.

Rule 60(b) of the Federal Rules of Civil Procedure permits relief from a final order of dismissal for "mistake, inadvertence, surprise, or excusable neglect" or for "any other reason that justifies relief." Relief under these provisions

1

remains timely. Fed. R. Civ. P. 60(c)(1). This firm does not address those portions Mrs. Miller's motion with regard to the Master Settlement Agreement (MSA) as this is a purely legal issue addressed by current counsel and the text of section 1.2.8 as modified by the Amendment to the Settlement Agreement at section 1.22. (*See also* Motion, Exhibit I.) However, this firm wishes to offer information and support with regard to the factual elements that may underlie a Rule 60(b) motion.

Initially, and contrary to Merck's insinuation, Mrs. Miller's claim form and required PME records were timely submitted within the extensions granted to all claimants under the resolution program. Where appropriate, this firm's continued efforts to procure evidence in support of a claim required a claimant to make use of each possible time extension.

As Mrs. Miller indicated in her e-mail to the Claims Administrator, she asserts that she "was given samples that the doctor did not document in [her] file" and that, according to Mrs. Miller, such samples were documented only on a "Sample Sign Out Log" which she claims was "destroyed" prior to the Vioxx recall (Opposition, Exh. A, p. 13.) The ongoing efforts regarding her claims of pre-event Vioxx use make the December 29, 2008 submission both timely and appropriate.

With specific regard to the affirmation of Ray Morris, M.D. dated December 18, 2008, this document was unavailable for the December 29, 2008 submission. This firm procured documents from Dr. Morris as early as 2005. The firm made several additional but unsuccessful attempts to obtain

2

supplemental materials. As the submission deadline approached, a preformatted and predated affirmation was prepared and forwarded to Dr. Morris based upon Mrs. Miller's recollections.

The letter to Dr. Morris was returned as undeliverable with no forwarding address. No prior correspondence to that address had been returned. Further investigation revealed that Dr. Morris had retired and moved to Texas. This firm then re-sent Dr. Morris the affirmation (still dated December 18, 2008) to his newly identified address. Dr. Morris ultimately changed some of the substantive statements (but not the date) and signed and returned the affirmation. It was logged in on February 23, 2009.

This firm employed a standardized process for submitting newly received documents such as Dr. Morris' affirmation. This process was successfully employed by this firm to manage each and every one of our Program cases. Upon receipt, each such document was promptly scanned and converted into portable document format (PDF). Each PDF document was sent directly to a case specific file used only for submissions to the Claims Administrator (H:\VIOXX\AAA_SETTLEMENT PREP\A SUBMISSION) and immediately submitted. The unique purpose of this submission folder was to provide a place for the immediate uploading of documents to the Claims Administrator. Accordingly, any document contained in the submissions folder was there because it had been entered and immediately submitted to the Claims Administrator. Dr. Morris' affirmation is such a document and is found in Mrs. Miller's submission folder.

On March 31, 2009, the Claims Administrator notified this firm that a standardized Notice of Ineligibility had been prepared for Mrs. Miller's claim. These forms are viewed either for electronic download and storage or for printing by staff members, one of whom also responded by resubmitting Mrs. Miller's pharmacy records since her claim was deemed ineligible due to the lack of documented Vioxx use. As Dr. Morris' affirmation and records were contained in Mrs. Miller's submission folder, any reviewer here would understand that these records had previously been submitted. Staff members downloading these notices were trained to identify the prescription records to evidence Vioxx use based on the same exhibits Merck identifies in its Opposition.

Merck references these exhibits in conjunction with its discussion that Mrs. Miller currently alleges consumption of fifty-eight Vioxx tablets within the 60 days prior to her event. Merck references Master Settlement Agreement (MSA) Exhibits 2.2.1.2 and 2.2.1.3 for the proposition that "[i]f documentation of such usage had been provided to the Claims Administrator, then the Miller Claim would clearly have passed the Duration and Proximity Gates." However, as Merck knows, evidence supporting sample usage is governed by MSA Exhibit 2.2.2 at par. 3 which requires "contemporaneous documentation (in physician or hospital records) that the product user was given samples in a specific quantity (credit will only be given for the number of pills noted as dispensed)." Unfortunately, as Mrs. Miller acknowledges, Dr. Morris' records are devoid of any pre-event reference to Vioxx use or samples. The exception at MSA Exhibit

2.2.1.3(e) also does not apply since Mrs. Miller's event records at two hospitals contain no evidence of contemporaneous Vioxx use.

Nor does the MSA Exhibit 2.2.2 Limited Document Exception apply as it also requires "contemporaneous compelling evidence of usage" and there were no such contemporaneous records. This exception also requires that "[t]he alleged usage may not be inconsistent with the PME Records or other evidence." Mrs. Miller's email to the Claims Administrator refers to part of a note somewhat over two months after her event. The remaining portion of the note continues on with the statement that Mrs. Miller "took Vioxx only two days." Accordingly, the prescription record constituted the only MSA-permitted evidence of Vioxx use and was uploaded in response to the Notice of Ineligibility.

Merck asserts that had "documentation" of Vioxx usage been tendered, that Mrs. Miller's claim would have qualified her for compensation. Merck does not, however, equate Dr. Morris' affirmation with such documentation since such a position would be contrary to the terms of the MSA.

Merck may be intending to communicate that it would consider Mrs. Miller's claim under other mechanisms that have been used in the past. Under such circumstances, Merck still retains the unilateral right to offer a resolution.

For an example of this authority, one claimant represented by this firm was dropped from the resolution program when the Claims Administrator inadvertently mistook her for a similarly named plaintiff. When the error was recognized, after Special Master review had already terminated the case, her claim was reinstated at a lower level of administrator review and she was able to

qualify for settlement funds. In a second instance, a myocardial infarction claimant was not reviewed prior to final myocardial infarction payments being made. That claimant's submission was reviewed during the ischemic stroke review period and was qualified with a myocardial infarction.

While neither of those claimants met the technical requirements for qualification, including one claimant whose case had been completely resolved as ineligible, both were nonetheless compensated through communication with counsel, Merck, and the Claims Administrator. As Merck's opposition papers indicate that it has conducted a thorough review of Mrs. Miller's claim, there would appear to be no impediment to the same type of resolution occurring for her prior to final payments. However, any discussion regarding such a resolution rests with Merck and Mrs. Miller's current counsel.

Finally, this firm respectfully asks this Court to recognize the reality that no program, no matter how ably administered, operates without error. For example, Merck's opposition indicates a May 14, 2009 upload from Mrs. Miller in response to a Claims Administrator Notice of Ineligibility. (Opposition, Exh. A, p. 2.) However, the Upload feature on which counsel must rely lacks any entry for this date. (Exhibit A, redacted to protect other claimants' confidentiality.) When such events have occurred in the past, the Claims Administrator and the parties have worked to resolve them. This firm had no reason to question, until receipt of Merck's opposition, that the affirmation was claimed not to have been received by the Claims Administrator.

Whether Mrs. Miller's case should be reopened is a matter within this Court's sound discretion. Whether Mrs. Miller's claim may still be resolved within the resolution program is a matter to be addressed by her, her newly retained counsel and defendant Merck with this Court's sound guidance.

As former counsel, Cellino & Barnes, P.C. respectfully submits that what may have been a newly identified transmission or reception issue is surmountable, permitting this Court or the parties to reach a just resolution. Accordingly, former counsel respectfully requests that this Court permit it to appear as amicus curiae to address the factual background under which this issue might be fully considered and to add support to that portion of Mrs. Miller's motion.

## CONCLUSION

Based upon the foregoing, former counsel Cellino & Barnes, P.C. respectfully requests that this Court grant it leave to file this amicus curiae brief and consider its contents to the extent possible in support of the addressed portions of Mrs. Miller's motion. A proposed order granting this relief is respectfully submitted for this Court's convenience.

/s/ Brian A. Goldstein
Brian A. Goldstein
Amicus Curiae
Cellino & Barnes, P.C.
350 Main Street, 25th Floor
Buffalo, NY 14202-3725
1-800-483-2050
Fax: 1-716-854-6291
Brian.goldstein@cellinoandbarnes.com