```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA
 2

 3      ****************************************************************

 4

        IN RE:  VIOXX PRODUCTS
 5          LIABILITY LITIGATION
                                     MDL DOCKET NO. 1657
 6                                   NEW ORLEANS, LOUISIANA
                                     THURSDAY, JUNE 3, 2010, 10:48 A.M.
 7      THIS DOCUMENT RELATES TO:

 8      ALL GOVERNMENT ACTION CASES

 9      ****************************************************************

10

11                      TRANSCRIPT OF GOVERNMENT ACTION CASES
                         STATUS CONFERENCE PROCEEDINGS
11                  HEARD BEFORE THE HONORABLE ELDON E. FALLON
12                      UNITED STATES DISTRICT JUDGE

13

14      APPEARANCES:

15

16      FOR THE PLAINTIFFS:     BEASLEY ALLEN CROW METHVIN
                                PORTIS & MILES
17                              BY:  ANDY D. BIRCHFIELD, JR., ESQUIRE
                                     P. LEIGH O'DELL, ESQUIRE
18                              234 COMMERCE STREET
                                POST OFFICE BOX 4160
19                              MONTGOMERY, AL 36103

20
                                DECHERT L.L.P.
21                              BY:  EBEN S. FLASTER, ESQUIRE
                                CIRA CENTRE
22                              2929 ARCH STREET
                                PHILADELPHIA, PA 19104
23

24      FOR THE DEFENDANTS:     O'MELVENY & MYERS
                                BY:  BRIAN ANDERSON, ESQUIRE
25                              1625 EYE STREET
                                WASHINGTON DC  20006
```

```
 1   REPRESENTING THE STATE
     OF LOUISIANA:              MURRAY LAW FIRM
 2                              BY:  JAMES R. DUGAN, II
                                650 POYDRAS STREET, SUITE 2150
 3                              NEW ORLEANS, LA 70130

 4
     REPRESENTING THE STATE
 5   OF FLORIDA:                OFFICE OF THE ATTORNEY GENERAL
                                STATE OF FLORIDA
 6                              OFFICE OF THE ATTORNEY GENERAL
                                SPECIAL COUNSEL
 7                              BY:  JAMES D. YOUNG, ESQUIRE
                                1300 RIVERPLACE BLVD, SUITE 405
 8                              JACKSONVILLE, FLORIDA 32207

 9
     REPRESENTING THE STATE
10   OF NEW YORK:               OFFICE OF ANDREW M. CUOMO
                                NEW YORK STATE ATTORNEY GENERAL
11                              OFFICE OF THE ATTORNEY GENERAL
                                MEDICAID FRAUD CONTROL UNIT
12                              BY:  RANDALL M. FOX, ESQUIRE
                                120 BROADWAY, 13TH FLOOR
13                              NEW YORK, NY 10271

14
     REPRESENTING THE COUNTY
15   OF SANTA CLARA,
     CALIFORNIA:                KLAFTER OLSEN & LESSER LLP
16                              BY:  SETH R. LESSER, ESQUIRE
                                1250 CONNECTICUT AVE., N.W., SUITE 200
17                              WASHINGTON, DC 20036

18
     REPRESENTING THE STATE
19   OF MISSISSIPPI:            BOSSIER & ASSOCIATES, PLLC
                                BY:  SHEILA BOSSIER, ESQUIRE
20                              1520 NORTH STATE STREET
                                JACKSON, MISSISSIPPI 39202
21

22   REPRESENTING THE
     NEW YORK COUNTIES OF
23   CHAUTAUQUA, ERIE, AND
     ORANGE:                    LEVY PHILLIPS & KONINGSBERG, LLP
24                              800 THIRD AVE. 13TH FLOOR
                                BY:  ROXANNE DE FRANCESCO, ESQUIRE
25                              NEW YORK, NY 10022
```

```
 1  REPRESENTING THE STATE
    OF UTAH:                    STEELE & BIGGS, LLC
 2                              By:  JOSEPH W STEELE V, ESQUIRE
                                5664 SOUTH GREEN STREET
 3                              SALT LAKE CITY, UT 84123

 4

 5  STATE LIAISON COUNSEL:  BARRIOS, KINGSDORF & CASTIEX, LLP
                            BY:  DAWN BARRIOS, ESQUIRE
 6                          701 POYDRAS STREET, SUITE 3650
                            NEW ORLEANS, LA 70139-3650
 7

 8  GOVERNMENT ACTIONS
    EXECUTIVE COMMITTEE:        LIEFF CABRASER HEIMANN & BERNSTEIN,
 9                              BY:  ELIZABETH J. CABRASER, ESQUIRE
                                EMBARCADERO CENTER WEST
10                              275 BATTERY STREET, SUITE 3000
                                SAN FRANCISCO, CA 94111-3339
11

12  ALSO PRESENT:               TIMOTHY HOWARD, ESQUIRE

13

14  ALSO PRESENT VIA TELEPHONE:  ALICIA SOLOMON, ESQUIRE
                                 TONY COVENY, ESQUIRE
15                               DAVID DICKENS, ESQUIRE

16                               CLARK TROUT, ESQUIRE
                                 ELIZABETH NETTER, ESQUIRE
17                               DAVID STALLARD, ESQUIRE
                                 DAVID WARD, ESQUIRE
18

19

20  OFFICIAL COURT REPORTER:    CATHY PEPPER, CCR, RPR, CRR
                                500 POYDRAS STREET, ROOM B406
21                              NEW ORLEANS, LOUISIANA 70130
                                (504) 589-7779
22

23  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
    PRODUCED BY COMPUTER.
24

25
```

1                    **P-R-O-C-E-E-D-I-N-G-S**

2                   THURSDAY, JUNE 3, 2010

3            M O R N I N G   S E S S I O N

4                     (IN CHAMBERS)

5

6

7        THE DEPUTY CLERK:  Everyone rise.

8        THE COURT:  Good morning, this is Judge Fallon.  Who's

9   on the line?

10       MR. FOX:  Your Honor, this is Randy Fox from New York.

11       MS. SOLOMON:  Your Honor, Alicia Solomon from O'Melveny

12  & Meyers in DC.

13       MR. COVENY:  Tony Coveny for the State of Oklahoma in

14  Houston, Texas.

15       MR. DICKENS:  Good morning, Your Honor, David Dickens

16  from the Miller firm on behalf of the State of Montana.

17       MS. BOSSIER:  Your Honor, Sheila Bossier and Clark Trout

18  on behalf of the State of Mississippi.

19       MS. NATTER:  Good morning, Your Honor, this is

20  Elizabeth Natter, assistant attorney general in Kentucky for the

21  Commonwealth of Kentucky.

22       THE COURT:  Anyone else?

23       MS. DeFRANCESCO:  Good morning, Your Honor.  This is

24  Roxanne DeFrancesco from Levy, Phillips and Konigsberg on behalf

25  of the three New York counties.

1          MR. STEELE:  And this is Joe Steele from Utah.

2          MR. STALLARD:  And also David Stallard in Utah.

3          MR. WARD:  David Ward in Utah.

4          MR. LESSER:  Seth Lesser from Klafter, Olsen & Lesser on

5    behalf of Santa Clara County.

6          THE COURT:  Anyone else?  Okay folks, we've got

7    everybody else in the conference room.  Let me hear from the

8    parties.

9          MR. ANDERSON:  Thank you, Your Honor.  The two sides in

10   the government actions have met and conferred about a schedule to

11   complete discovery in the MDL.  And because they were not able to

12   agree on what that schedule should look like, each of us

13   submitted to the Court on May 24th a proposed schedule along with

14   a letter that explained their respective schedules.  Thereafter,

15   on May 28th, each side submitted to the Court a letter commenting

16   on the other party's schedule.

17          From Merck's standpoint, I would say that the

18   objective of this MDL proceeding has been and should continue to

19   be to complete the discovery process that can be done efficiently

20   and uniformly, and then and only then remand these government

21   action cases back to either federal transfer award courts or to

22   state courts.

23          It is putting the cart before the horse to

24   arbitrarily set a date to remand the cases and to contemplate

25   remanding those cases, whether or not discovery has been done.

1              Our view is that the discovery that ought to be

2    done in the MDL should be both mutual and it should be complete,

3    and then and only then should we remand the cases.

4              As the numbers that we presented attached to our

5    May 24th letter at Exhibit C show unmistakably, there is

6    generally speaking a huge imbalance between the quantity of

7    documents that Merck has produced to various plaintiffs, all of

8    the plaintiffs in the government actions, and the quantity of

9    documents that the plaintiffs in those actions have produced to

10   Merck.

11             Merck has had no trouble complying with its

12   discovery obligations in the MDL.  The problem is that many of

13   the plaintiffs have been dragging their feet in producing the

14   discovery that they owe to Merck.

15             And so it is important that the schedule for the

16   completion of discovery in the MDL ensure that both sides

17   complete the discovery that needs to be done before we move on to

18   another court.

19             And we would submit that the schedule that Merck

20   has presented is designed to ensure that that happens.  We would

21   also submit that the schedule the plaintiff has submitted is

22   designed to lock in the lack of progress of many of the

23   plaintiffs in these cases, let them have their remand even though

24   they have not done what they need to do, and then continue taking

25   discovery of Merck after the remand is done, all of which is

1   inconsistent with the mutuality goal.

2            It is also important that discovery be completed or

3   substantially completed in this MDL before cases are remanded.

4   We should finish the production of documents, each of us, that

5   needs to be done in these cases.  We should produce the database

6   extracts that the Court deems to be relevant to the claims.  We

7   should get full and complete responses to interrogatories,

8   including contention interrogatories.  We should finish the fact

9   depositions, and Merck believes we should conduct the expert

10  report and expert deposition process in this Court.

11           And if both sides cooperate with that effort, I am

12  confident that we can get these cases ready for remand, and

13  indeed cases can be remanded individually as soon as all of that

14  is done.

15           The chief point of contention between the two

16  sides' submissions relates to the plaintiffs' proposal that at

17  this juncture, June 2010, the Court declared that the only

18  discovery that would be done in the MDL will be what they call

19  state-specific discovery.  Or, let me strike that.  That

20  state-specific discovery will be done after remand and anything

21  that they deem to be state specific will not be done here in the

22  MDL.

23           Now, that is contrary to the practice that we have

24  been engaged in throughout this MDL proceeding.  Merck has

25  produced millions of pages of what plaintiffs would call

1    state-specific discovery to each of the plaintiffs, namely,

2    packages of evidence that relate to Florida and New York and

3    Pennsylvania.  It has had no trouble completing that.

4              And so the states have gotten the benefit of what

5    they would now call state-specific discovery within the MDL.

6              What this MDL is doing is coordinating common

7    categories of discovery.  We would submit that's what the Court

8    has meant when it says we are going to conduct common mutual

9    discovery in this case.

10             We should have common, consistent rules across all

11   of the cases about what is the scope of relevant evidence.  What

12   databases should Merck have to produce?  What databases should

13   the states have to produce?  Should the states have to answer the

14   same kinds of contention interrogatories in each case?  Should

15   the states have to produce documents memorializing their

16   communications with Merck?  Those are all common categories of

17   discovery, and it makes great sense to get rulings from the

18   Court, consistent rulings across all of the cases, about what is

19   the boundary of that discovery so that the states can produce

20   what they owe Merck and Merck can produce what they owe the

21   states.  So that's what we mean when we talk about common

22   discovery.

23             If the Court were at this point to sign an order

24   that says no state-specific discovery will be done in the MDL,

25   that will, as a practical matter, lock in the imbalance of

1   discovery that we have today.  The states will take the position

2   that they do not owe Merck any more discovery responses because

3   by their view anything they would produce would be specific to

4   their state and, hence, should not be done in this Court.

5           Meanwhile, they would bank all of the discovery

6   that Merck has produced to the states over the last several

7   years, and then after remand, they would start a new round of

8   discovery of Merck on the grounds that they are seeking

9   state-specific discovery.

10          So it would be an opportunity for them to

11  relitigate any category of discovery that the Court here says is

12  out of bounds once they get back to their state courts.  That's

13  not fair and it makes a mockery of all of the work that we've

14  done over the last several years.

15          So our view is that while we should work diligently

16  to get the discovery done so the cases can be remanded, cases

17  should be remanded once and only once this Court has certified

18  that mutual discovery has been completely done.  We have proposed

19  a schedule that allows that to happen.

20          Another source of disagreement is in the phasing of

21  the cases that we have.  Presently there are 12 cases that are in

22  active discovery mode.  Merck proposes that they be divided into

23  three groups of four cases each, with the cases that are the

24  farthest advanced in the first group.  And then we stagger the

25  second and third groups.  Not hugely, only by about two months,

1   but stagger them enough so that we can focus on a smaller group

2   of cases, have whatever discovery meet and confers we need to

3   have in the context of a smaller number of cases, have any

4   motions to compel that we need to have in the context of a

5   smaller number of cases, and get rulings from the Court about the

6   scope of permissible discovery.  So that with those rulings or

7   with those agreements, we can take the principles that emanate

8   from that process and apply them to the other eight cases.

9          That bellwether strategy, if you will, is

10   consistent with the way that this Court has managed myriad other

11   categories of *Vioxx* litigation.  It's consistent with the fact

12   the Court held a bellwether trial of the Louisiana case, and it

13   seems to us a logical extension of that principal to now take the

14   four cases that are the farthest advanced and work them up

15   through the discovery process and let the other eight cases ride

16   in their wake.

17          As a practical matter, and I know this because I've

18   been trying to deal with this, it is much easier to focus on

19   discovery disputes in a small number of cases than to try to

20   simultaneously argue, debate, negotiate those issues around

21   10 cases.  It's just harder to do.

22          THE COURT:  Let me hear from the states on that aspect

23   of the case.  What is your input as to reducing the numbers so

24   that we can focus together on those areas?

25          MR. YOUNG:  Your Honor, it's James Young from the

 1    Florida Attorney General's office and on behalf of the executive

 2    committee and the groups of the government plaintiffs here.

 3              With regard to grouping the plaintiffs, at one

 4    point we did agree to prioritize certain of our group, namely,

 5    Florida, New York, Pennsylvania, and Oklahoma.  And the thought

 6    process behind that was that one of those four larger states,

 7    larger claims would serve as a second bellwether.

 8              As Mr. Anderson mentioned, we did have the

 9    Louisiana case as a bellwether.  That is still in front of

10    Your Honor and we haven't heard back on that yet.  And that had

11    value.  That had value to the states.  And yet, at the same time,

12    because of the jurisdictional issues and the sovereignty issues

13    and these weighty issues, as I think you've called them, states

14    are reticent, I think, to subject themselves to another

15    bellwether trial to jurisdiction in this Court.

16              And so we've made it very clear to Merck that there

17    is not going to be another voluntary, bellwether volunteer to

18    step forward.  So the thought process behind the grouping of the

19    prioritization of the states has dissipated.  There was another

20    reason, which was Merck's concerns about resources, and as

21    Mr. Anderson mentioned how it's easier to focus on a handful

22    rather than the full group, but our prospective has clarified

23    which is, and this is really what today's discussion comes down

24    to is if the remaining discovery to be done is truly common

25    discovery, in other words, it's not specific to individual

 1    states, then there is no reason, in fact, the rules in the manual

 2    for complex litigation and multidistrict proceedings dictate that

 3    the coordination affect all of the states together.  All of the

 4    entities should get the benefit of this.  There shouldn't be a

 5    focus on a handful while the others sit back and wait.  There is

 6    case law that talks about that.  That's really our position.

 7              The defendants cite their work in preparing the

 8    Texas and Louisiana cases for trials, and ultimately in Texas

 9    there was a summary judgment granted.  But that's not applicable;

10    these cases are not bellwethers, they are not up for trial.  So

11    the work that needs to be done, the focus, the case-specific

12    aspect isn't in play here.

13              So there are, in effect, in our proposal, ten

14    states in group one and three states in group two.  Some of those

15    are late entries, such as Kentucky, but the others are ready to

16    go and there has been much work done on the states' end to get

17    their end of the discovery up to snuff.

18              Our proposal relies on common sense in putting that

19    together, rather than sort of the lack of resources to focus on

20    the handful of states that Merck wishes to do.

21              THE COURT:  What are the four states?

22              MR. ANDERSON:  Pennsylvania, New York, Florida and

23    Oklahoma.

24              THE COURT:  Those are the ones that you initially

25    thought of?  Yes.  I like that idea, frankly, if you're

1    comfortable with those states.  I'm better able to give you my

2    attention and my focus if I'm looking at a smaller number.

3            Now, by that I don't mean that the other states are

4    going to all be "me-tooed" because that's not way I see it.  When

5    we finish this, sometime in the future we'll get those other

6    states.  We need a specific timeframe so that the other states

7    know that they are not neglected.

8            Then when we get to the other states, I'm

9    interested in determining with you what is applicable to those

10   other states from the four that we've dealt with, and what is

11   not.  And then we deal with the what is not, if there are things

12   that are what is not.

13           I don't think it's harmful to the other states.  In

14   fact, it's best from the standpoint of information.  They can see

15   it unfolding.  They can at least see the Court's view.  They can

16   meet that at the next stage if they disagree with it.  I don't

17   see any disadvantage, and it seems to me to be the most orderly

18   process for teeing up motions for production, for teeing up

19   responses, for teeing up motions for production from Merck, for

20   teeing up responses.

21           The likelihood is that my rulings for those four

22   states against Merck will be "me-tooed" to the other states; I

23   don't see any difference.  But I don't know whether it's the same

24   for the states.  It may well be different.  What New York is

25   required to produce may not exist in Utah.

1              MR. YOUNG:  If I could just give one example of

2     something:  Merck is seeking significant information about what

3     has been termed relevant drugs, okay, and that includes drugs

4     other than COX-2's.  In Florida, we're taking, it's a consumer

5     protection case brought the attorney general, and we're going to

6     take the position that that information is not relevant to the

7     proceeding, that the defendant is not entitled to a set-off

8     defense.

9              THE COURT:  You may be right about that.  I'm not saying

10    you are or you aren't.

11             MR. YOUNG:  And that ruling, if it's in front of

12    Your Honor, that may be inapplicable to the other states that

13    might be flying under different theories.

14             THE COURT:  No, I understand that and I'm aware of that.

15    It's just easier for me to focus on four than it is for ten.  It

16    just is, because I'm going to get a lot of "me-too" motions from

17    those ten and then differences.  It just seems structurally that

18    it makes more sense to me to focus on a smaller number.

19                  But I do think that we need some timeframes.  Now,

20    I look to both of you for guidance there, but I don't want to

21    just go at four and when we get through with four, take the other

22    six.  I don't think that's going to work.

23                  I can't do this in a week or two or a month, so

24    you're going to have to get together and give me some timeframes

25    that you can live with.  I'm not saying that these are not

1   timeframes, but I would like your input with the view that we're

2   going to do four.

3            With regard to state-specific discovery and not, I

4   really need more details on that.  I need you to tee it up in the

5   form of a motion to give the response, and let respondents tell

6   me what their view is so that I can deal with it.

7       MR. ANDERSON:  One way to do that is, if we get to a

8   point where a state, for example, objects to some of Merck's

9   discovery requests on the grounds that it pertains only to that

10  one state and it should not be done in the MDL, perhaps at that

11  point we could file a Motion to Compel and you can decide if it

12  makes sense to do it here versus later.

13      THE COURT:  My thinking really is that when, I've got to

14  get rid of these cases, folks.  I really have to get rid of these

15  cases.  I have to, if they are remanded, they've got to be

16  remanded.  I don't want this to just go on forever.  I can't do

17  it.  I've got other things that I'm dealing with.

18           But when I remand them, I really hope to either

19  give them to the next judge or me over there as a package that

20  they don't have much work to do at all in the case.  It's got to

21  be just about finished.  There are some twists and turns that

22  some states may need some specific discovery, but that ought not

23  to be the tail wagging the dog.  We ought to have that down to a

24  couple of weeks or thereabouts as opposed to years of discovery

25  to the states because I will have given them nothing then if they

1    have to start from ground zero and take a year or two to discover

2    the case.  I don't see that.  I mean, the advantage of the MDL,

3    if anything, is to allow the parties to do the bulk of the

4    discovery.  When these cases go back in a personal injury format,

5    we have two doctors that they take depositions of, and they are

6    ready to try the case for the most part.

7              Now, that may not work for the states because this

8    is a different deal, but the amount of discovery has got to be

9    very, very small compared to the other discovery; otherwise,

10   there is no reason to be in the MDL.  Or maybe you've argued that

11   all along.

12             MS. BARRIOS:  You're stealing his argument, Judge.

13             MR. YOUNG:  Your Honor, from our perspective we feel

14   like wayward philosophers, and we ask, Why are we here?  What is

15   the meaning of life in the MDL?  And the jurisdictional issues

16   are significant.  We don't often find ourselves in a federal

17   court or specifically MDLs.  This is my first foray in this forum

18   and I've enjoyed it immensely.

19             THE COURT:  You like New Orleans.

20             MR. YOUNG:  The food in New Orleans is quite good, but

21   they invoke very significant issues here, federalism and states'

22   rights and sovereignty.

23             THE COURT:  Yes, I know that.

24             MR. YOUNG:  And when you get into nuances of

25   state-specific issues like expert witnesses and damages models

1   and the different types of statutory remedies that are available,

2   I think if we try to jam that in the MDL, it's going to be

3   problematic.

4         THE COURT:  I got that.  I frankly think from the

5   states' standpoint, the MDL has got to be designed to give the

6   states more advantage than it is to Merck's advantage.  When I

7   say that I mean it just seems to me that the discovery of Merck

8   by the states is more common than vice versa.  And hopefully

9   smaller states have been able to profit from the discovery that

10  has gone on in the MDL, both in personal injury as well as other

11  discovery, trial packages, things of that sort.  And when they

12  get back to their briar patch, they'll have material in the

13  format and in an economically satisfactory way that they'll be

14  able to pitch their cases better than they would have without it.

15  I mean, if every state had to start from square one and discover

16  nine million documents and take two thousand depositions and have

17  no trials to look at, I mean, that just doesn't make sense.

18        MR. YOUNG:  Judge, I think that's really our

19  perspective, is that we've sort of squeezed the juice out of the

20  lemon here.  You know, electronics are incredible and I enjoyed

21  Mr. Juneau's presentation today, and we did have the ability to

22  capture all of that information so that all of the AGs have it.

23  And if they want the trial packages, they can get the trial

24  packages.  And we had the bellwether trial.  So I think all of

25  that is available and we've got that.

```
 1              And all that's really left to do for us, the only

 2  remaining matter at hand is this remaining discovery before

 3  you're comfortable hearing our remand motions, and I guess from

 4  our perspective it's still, even sitting here, it's still

 5  unclear.

 6              And the best example of the confusion in this area

 7  is that both parties actually cited your prior instructions at

 8  status conferences in support of their positions in the briefing

 9  materials.

10         THE COURT:  Yes, well, I think you've gotten a lot of

11  material, and I hope that that's been helpful at least to view

12  the cases, consider the cases and, if necessary, try the cases.

13              I also think that it's a two-way street.  I think

14  that Merck should have the opportunity to utilize the vehicle to

15  get some information from the states and to get some common

16  issues that are common to all of the states, some issues that are

17  common to all of the states handled one time as opposed to 50

18  times or 20 times, however many we're dealing with.

19              I want to make sure that that's done.  I'm looking

20  at this point, and I just have to do some prioritizing myself,

21  but we're at the point now where we've got to get these cases, if

22  they are going back, they are going to have to go back soon.  I'm

23  not just going to be sitting on them.

24         MR. YOUNG:  That's what's nice about our position here

25  is we've got an endpoint, a firm endpoint in mind that would hold
```

1  the respective party's feet to the fire.  We could have said with

2  our scheduling order with some degree of certainty, that this

3  year this will be out of your Court.

4          Now, the beauty of the scheduling order on either

5  side is that it's got built into it the ability of the other side

6  to have accountability for the production on the other party,

7  right, so if the states, if Merck's position is that the states

8  are dragging their feet, well, either scheduling order, frankly,

9  has built into it timelines and cure provisions and remedies that

10 can be done, and the fundamental difference between us is --

11         THE COURT:  Six months.

12         MR. YOUNG:  Yeah, we say --

13         THE COURT:  January of 2011 and they say August of 2011.

14 Isn't that basically it?  You're telling me we're fighting for

15 six months kind of thing?  You know how a judge does.  He says,

16 Well, how about three months?  That's the deal --

17         MS. BARRIOS:  And then, Judge, we'll say let's put that

18 on the table -- and I'm sorry, it's Dawn Barrios for the record.

19 I'm sorry to interrupt, but as liaison counsel for all of these

20 governmental entities, I hear this on a daily basis.  We need a

21 date certain, we need the end game, we need the light at the end

22 of the tunnel, and that's what bringing this scheduling order to

23 Your Honor, really, we hope to accomplish.

24         If you give us an end date, then we'll work

25 backwards with Merck and make that happen according to

1  Your Honor's wishes with the type of discovery you want done in

2  the MDL.  But, you know, as a student of yours for so many years,

3  I know how you want everyone to benefit from your common

4  discovery.  We have it.  The AGs have all of the PSC's work

5  product.

6          THE COURT:  I hear that.  What's wrong with having a

7  date?  Now, you know and I know that if another hurricane beats

8  us up, we may have to move that date.  I don't know whether,

9  other than a hurricane or an oil spill or anything else that's

10  looming, that we can move the date.  If it's something that we

11  need to move, I will at least consider it.  I'm not going to say

12  that I will move it, but you've got to understand that I don't

13  have any problem with final dates.  I don't have any problem

14  with --

15          MR. ANDERSON:  Your Honor, we don't have any problem

16  with final dates either, and indeed, we've built in mutual rigor

17  into the timetable that we proposed.  But we're also trying to

18  build in being realistic.  And the general five-month period for

19  the document discovery, save for the group one, which we think we

20  can do faster because we're down the road, was based rigorously

21  on both sides sitting around the table saying, Okay, how long is

22  it going to take to do each step, and you add it up, it's five

23  months.  So five months, that's why we've got that in there.  And

24  then the five months --

25          THE COURT:  You all had input that on that and you agree

1    that it's five months?

2         MR. YOUNG:  Yes, but that was over a month ago or so or

3    thereabouts, so I think what happened as a result of the document

4    that we submitted was it rolled forward another month.

5         MR. ANDERSON:  Actually, not really.  You may have

6    noticed I've been sending a lot of deficiency letters out, so we

7    have been working.

8         MS. BARRIOS:  Love notes from Merck.

9         MR. ANDERSON:  So we're working on that, and then the

10   five months that we budget for fact and expert depositions is

11   based on the experience we've had in two governmental cases and

12   knowing how many depositions both sides tend to take in those

13   kinds of cases.

14             Now, arguably that can be squeezed as we move on,

15   because people will have been deposed in the Florida case, to

16   pick a case, or maybe somebody downstream, Montana is happy to

17   take that deposition.  But we're simply trying to be realistic

18   and I think this is realistic.

19        THE COURT:  He wants to remand the group one cases on

20   March and remand the second group on June and remand the third

21   group on August.  You want to do what?

22        MR. YOUNG:  Our position is that --

23        THE COURT:  You want to remand them all in March?

24        MR. YOUNG:  The majority of them actually this year,

25   December of this year.  And put our schedule in place, hold our

1    feet to the fire, we'll get our production to them, hopefully

2    they'll get their production to us, and we'll be ready to go home

3    by the end of the year.

4             I read your *Law Review* article on bellwether trials

5    in preparation for today and something struck me.  I think one of

6    the theories in your article is that there is a triangle in the

7    MDL process which is made up of sort of a common discovery is one

8    side of the triangle; the bellwether trial is another.  And those

9    two work in conjunction to create pressure to cause the

10   environment ripe for a global settlement.

11            I would argue that in cases like this, involving

12   the AGs with questionable jurisdiction and these weighty issues

13   that we've talked about on the jurisdiction side, there is a

14   fourth.  It's not a triangle; it's more of a square or a

15   rectangle.  And the fourth side is the remand issue.  And Merck

16   would be happy to stay it here and drag their feet.  It took us

17   two months to get data dictionaries from them that were already

18   available and readily produced.  They would be happy to drag

19   their feet and stay in this thing until Eben's second child is

20   born.  But for practical purposes we need to set a date.  We need

21   to have an endpoint.

22            THE COURT:  I agree.  There is no question about that in

23   my mind.  The reason that I'm focused on it now and the reason I

24   didn't focus on it before is I had other things to focus on,

25   frankly.  It wasn't that I am just going to leave them.  I need

1    to get rid of them.  I really do.

2          MR. ANDERSON:  Your Honor, I mean, I think we can talk

3    and we can try to tighten these periods, but what is most

4    important to us is that we get the discovery done that needs to

5    be done before we remand the cases.  We not create an incentive

6    for one side to just run out the clock, you know, promise them

7    dessert before they've eaten their meat and potatoes.

8          THE COURT:  That's why you need to get me involved in

9    it, though.  You've got to be able to meet and confer, and if

10   there is an issue, then you need to get it to me.  You can't just

11   wait.

12          It's easier, frankly, if you get to me, if you have

13   a problem, get me on the phone and I'll resolve the problem

14   immediately.  Let's not waste a lot of time dealing with

15   memorandum and motions.

16         MR. ANDERSON:  One more observation that I need to make,

17   because if I don't, Mr. Flaster will, and that is, part of the

18   discipline of living with a schedule is constraining your

19   appetite for the amount of discovery you demand of the other

20   side.  We can't set a schedule that says we're going to finish

21   document discovery in September of 2010 and then in June of 2010

22   have one side demand huge quantities of databases from the other

23   that simply physically cannot be produced in that period of time.

24          So we need to concentrate and focus on what

25   discovery do we really need to prepare these cases for trial.

1    And I would suggest that both sides have a fair amount of

2    experience in making those kinds of choices now.  And if, and we

3    know what we need, and, you know, Mr. Dugan has shown what a

4    state needs, and if we live within that --

5              THE COURT:  See, that's the advantage, frankly, of me

6    doing four and so forth, because it's easier to do it that way

7    than it is to do ten at a time.  It just is.

8              Let me do this:  I would like you all to get

9    together and within a week give me a scheduling order, a joint

10   scheduling order.  If you can't, then give me two.  I like the

11   grouping.  I think it ought to be shorter than August.  You've

12   got to make it realistic, though, both of you.  There is no sense

13   in me giving you September, December, October, and then later on

14   finding out that that's not doable and then I have to give you

15   another date.

16             So I don't know whether it can be done in the next

17   however many months to get you finished with the year, but I do

18   hope it can be done before August.  I mean all of them.

19             MR. YOUNG:  Regarding the initial issue, I think you

20   instructed the parties to brief or for them to, for Merck to

21   bring a motion on the scope of discovery.

22             THE COURT:  I'll listen to you on that.  They told me

23   but you haven't.  From the standpoint of scope of discovery I

24   need a little bit more specifics.  I like the scope of discovery

25   that it be meaningful discovery and that it be consistent with

1    what I said about when they go back to the states that they just

2    have a little small amount, not a great amount.  But I don't know

3    what that amount is.  I don't know what we're talking about.

4              MR. YOUNG:  I think we envision almost the wagon wheel

5    graphic where Merck is hub on that wagon wheel.  These cases are

6    directed to them.  Traditionally with attorneys general, not to

7    get back into the jurisdictional issues, but traditionally there

8    is not extensive discovery of attorneys general on bringing

9    consumer protection actions.  That's one of the bases for my

10   objection to the relevant drugs information.  But traditionally

11   the discovery is really directed by the AGs to the defendants.

12   And we have that here.  The database issue is a perfect example

13   of that.  Regardless of whether we focus on four parties, ten

14   parties or all of the plaintiffs, it's the same system that's

15   being accessed on Merck's side.  It's one, many databases but

16   it's one entity, Merck, that's getting that information.  It's

17   our position that this can be done fairly easily for all of the

18   parties.  Now, I'm not a database expert, I'm not familiar with

19   the process that they went through in the MDL originally.  For

20   the PI cases I know it was extensive.  But they are going to get

21   a request from us for database information that is common to all

22   of the plaintiffs.

23              We see that as really the lone remaining sort of

24   thing to get done here, and we agreed to provide what might be

25   termed state-specific information about our databases and our

1    systems to Merck, almost in exchange to get this done in the MDL.
2    That's really the limitation on what we think the states'
3    production should be.  Experts shouldn't be a part of this, other
4    than experts that the states might all agree upon that we're
5    going to use that maybe Mr. Dugan used in the Louisiana trial.
6    If we can all agree that certain of those experts should be
7    shared by the states and we're going to share the costs and
8    whatnot, then we can agree on that.  But as far as *Daubert*
9    motions and whatnot, you've got different sovereign state rules
10   that are applying, the different sovereign state laws are going
11   to be admissibility of experts and their testimony.  And then, as
12   I mentioned, things like specific defenses that Merck has here
13   against our unique claims are going to be different.  So when you
14   try to hodgepodge that together in the MDL, we just don't think
15   it will work.  We think that the focus on the remaining discovery
16   should be on the hub.
17            That's what gets this case moving is when Merck
18   produces the information to us, we then are in a situation best
19   situated to try the cases, to go back and try the cases where
20   there isn't a lot of heavy lifting for us to do.  Maybe there are
21   some depositions that they'll need to take on remand of
22   state-specific individuals that are just not common.  They are
23   not appropriate to be handled in the MDL.  But other than, that
24   we think we could leave here and be fairly ready to go.
25            THE COURT:  Except you wouldn't be ready to go.  Then

1   Merck would be required to come into your state and discover all

2   of the material that's common to you that's dealing with your

3   state.  Or would you put on any evidence at all?  Or should I say

4   no more evidence from either side?

5            MR. YOUNG:  I think that the states have largely agreed

6   and are in the midst of production of the database, on the

7   database side of the utilization of the drugs.  Of course, I

8   don't want to get back into the relevant drugs issues, but our

9   systems and our IT and database side of things, we're producing

10  that.  Many states are heavily involved in it.  I know I am.

11  I've spent far too much time with IT people in Tallahassee

12  getting this teed up.  So other than that, perhaps they want to

13  take some specific depositions that aren't appropriate in MDL.

14           THE COURT:  Well, from an MDL judge, I sit in other

15  areas, so maybe the way to do it is that before you leave the MDL

16  you give a list of witnesses that you intend to call.  Then you

17  decide whether you need to take the depositions or not, and I can

18  sit as a judge in other areas of the country from an MDL

19  standpoint, because that's one of the things that you do with an

20  MDL, that's one of the powers of an MDL judge, that they have the

21  authority in other districts to make rulings.  But that may be a

22  way of doing it.  Then if you know what your case is going to be,

23  then you should be able to give the witnesses that you're going

24  to call or the documents that you're going to produce and maybe

25  that's the way to do it.

1          MR. ANDERSON:  Your Honor, if I could respond.  You saw

2     how the Louisiana case played out, and it played out into two

3     halves.  There was a Louisiana institution putting on evidence

4     about things that Merck said or did not say to the decision

5     makers in Louisiana.  And then there was another half of the case

6     in which Merck presented information about what decision makers

7     in Louisiana knew about the risks of Vioxx, what their

8     consultants told them about the risks of Vioxx and what they did

9     or did not do with that information.  That's how the Louisiana

10    case played out, and regardless of differences in state law to

11    state law, fundamentally that's what all of these cases are

12    about.

13         And what we found in Louisiana was that a lot of

14    the same kinds of documents, communications from a consultant to

15    a department of health and hospitals, communications from the

16    health and hospitals department to a P&T committee, deliberations

17    of a P&T committee, work with consultants, communications to

18    doctors, those categories of information will exist in every

19    state.  And so when we say we ought to do the common discovery

20    here, what we say is they should, as they have been doing for

21    several years, been getting the documents that memorialize what

22    did Merck say to the Florida decision makers, the Montana

23    decision makers, the Pennsylvania decision makers.  And then they

24    are going to want to depose certain categories of Merck people,

25    the public affairs people, the doctor and so forth.  And we're

1  going to want to get the documents from those states

2  memorializing what they knew.

3            If we do that kind of discovery on both sides, as

4  Merck is already starting to do for the states, we would like it

5  back from the states, we can get these cases ready for trial.  So

6  that's what we say.  And to license, you know, a requirement that

7  says we're not going to do any discovery in the MDL that is state

8  specific is simply a license for the states to bank the millions

9  of pages of discovery that Merck has already given them that

10 could be characterized as state specific and then have them shut

11 off the flow of documents to us, sit around until December or

12 January or February or whatever it is, saying, We're done, and

13 then Merck will have to hope that after these cases are remanded

14 to a court in Florida or Montana or whatever, we can persuade the

15 judge in the state's home state to let us have the discovery that

16 we need to defend ourselves at trial.  That slows the process

17 down.

18            MR. DUGAN:  Your Honor, can I make an observation?

19            THE COURT:  Yes.

20            MR. DUGAN:  I think that's the problem.  The problem,

21 the disconnect between the parties here is there is no bright

22 line between what is common discovery and state-specific

23 discovery.  Exactly what Mr. Anderson described, you know, I see

24 one side saying, That's state-specific, we're not giving you

25 that.

1        So I guess, Your Honor, if you could discuss a mechanism

2   with how you think we need to handle it, whether it's on a

3   case-by-case basis or whether it's we serve discovery on Florida,

4   Florida objects to it and you have a hearing on a Motion to

5   Compel on it, and you handle it that way.  I think all of the

6   parties would benefit from a mechanism.

7        THE COURT:  Yes, that's a mechanism.  I think that's why

8   four makes sense, because I think some of the issue might be like

9   in New York, you say, it's irrelevant in New York.  Well, it may

10  be irrelevant in New York, I don't know whether it is or it

11  isn't, but it may be relevant in Florida, Oklahoma and

12  Pennsylvania.  So what you need to do is, and I don't need a book

13  on it, but we need some specifics, what you need from these four

14  states.

15       MR. ANDERSON:  Okay.

16       THE COURT:  Then let me hear you as to what you agree to

17  and what you disagree and why, and then I'll make that cut, and

18  then we'll go to the next group.

19       MR. ANDERSON:  And the schedule provides for that.

20       THE COURT:  Get together.  I would like to do it in a

21  week.  On dates.  If you can't, then you give me your wish list,

22  you give me yours, and I'll come up with it.

23       MR. DUGAN:  I'll also note the next status conference

24  isn't until July 27th.  If we need to talk to you --

25       THE COURT:  Give it to me beforehand.

```
 1          MR. DUGAN:  If we need a conference before then, you're
 2   going to --
 3          MS. BARRIOS:  We can't wait two months.
 4          THE COURT:  Just give it to me in a week and then we'll
 5   start something, and I'm going to have to be meeting with you all
 6   every two weeks, even if we do it by phone, so that we can get
 7   this thing started.  I really want to get it started.  We have to
 8   jump start this.  Okay?
 9          MS. BARRIOS:  Thank you, Your Honor.
10          VOICES:  Thank you, Your Honor.
11          THE COURT:  Thank you very much.
12          (WHEREUPON, at 11:37 a.m. the proceedings were
13   concluded.)
14                              *    *    *
15
16
17
18
19
20
21
22
23
24
25
```

```
1                       REPORTER'S CERTIFICATE

2

3       I, Cathy Pepper, Certified Realtime Reporter, Registered

4  Merit Reporter, Registered Professional Reporter, Certified Court

5  Reporter of the State of Louisiana, Official Court Reporter for

6  the United States District Court, Eastern District of Louisiana,

7  do hereby certify that the foregoing is a true and correct

8  transcript, to the best of my ability and understanding, from the

9  record of the proceedings in the above-entitled and numbered

10 matter.

11

12

13                          s/Cathy Pepper
                            _____
14                          Cathy Pepper, CRR, RMR, CCR

15                          Official Court Reporter

16                          United States District Court

17

18

19

20

21

22

23

24

25
```

**1**

**10** [1] - 10:21
**10022** [1] - 2:25
**10271** [1] - 2:13
**10:48** [1] - 1:6
**11:37** [1] - 31:12
**12** [1] - 9:21
**120** [1] - 2:12
**1250** [1] - 2:16
**1300** [1] - 2:7
**13TH** [2] - 2:12, 2:24
**1520** [1] - 2:20
**1625** [1] - 1:25
**1657** [1] - 1:5
**19104** [1] - 1:22

**2**

**20** [1] - 18:18
**200** [1] - 2:16
**20006** [1] - 1:25
**20036** [1] - 2:17
**2010** [5] - 1:6, 4:2, 7:17, 23:21
**2011** [2] - 19:13
**2150** [1] - 2:2
**234** [1] - 1:18
**24th** [2] - 5:13, 6:5
**275** [1] - 3:10
**27th** [1] - 30:24
**28th** [1] - 5:15
**2929** [1] - 1:22

**3**

**3** [2] - 1:6, 4:2
**3000** [1] - 3:10
**32207** [1] - 2:8
**36103** [1] - 1:19
**3650** [1] - 3:6
**39202** [1] - 2:20

**4**

**405** [1] - 2:7
**4160** [1] - 1:18

**5**

**50** [1] - 18:17
**500** [1] - 3:20
**504** [1] - 3:21
**5664** [1] - 3:2
**589-7779** [1] - 3:21

**6**

**650** [1] - 2:2

**7**

**701** [1] - 3:6
**70130** [2] - 2:3, 3:21
**70139-3650** [1] - 3:6

**8**

**800** [1] - 2:24
**84123** [1] - 3:3

**9**

**94111-3339** [1] - 3:10

**A**

**A.M** [1] - 1:6
**a.m** [1] - 31:12
**ability** [3] - 17:21, 19:5, 32:8
**able** [6] - 5:11, 13:1, 17:9, 17:14, 23:9, 27:23
**above-entitled** [1] - 32:9
**accessed** [1] - 25:15
**accomplish** [1] - 19:23
**according** [1] - 19:25
**accountability** [1] - 19:6
**action** [1] - 5:21
**ACTION** [2] - 1:8, 1:10
**actions** [4] - 5:10, 6:8, 6:9, 25:9
**ACTIONS** [1] - 3:8
**active** [1] - 9:22
**add** [1] - 20:22
**admissibility** [1] - 26:11
**advanced** [2] - 9:24, 10:14
**advantage** [4] - 16:2, 17:6, 24:5
**affairs** [1] - 28:25
**affect** [1] - 12:3
**ago** [1] - 21:2
**agree** [8] - 5:12, 11:4, 20:25, 22:22, 26:4, 26:6, 26:8, 30:16
**agreed** [2] - 25:24,

27:5
**agreements** [1] - 10:7
**AGs** [4] - 17:22, 20:4, 22:12, 25:11
**AL** [1] - 1:19
**ALICIA** [1] - 3:14
**Alicia** [1] - 4:11
**ALL** [1] - 1:8
**ALLEN** [1] - 1:16
**allow** [1] - 16:3
**allows** [1] - 9:19
**almost** [2] - 25:4, 26:1
**ALSO** [2] - 3:12, 3:14
**amount** [6] - 16:8, 23:19, 24:1, 25:2, 25:3
**AND** [1] - 2:23
**ANDERSON** [12] - 1:24, 5:9, 12:22, 15:7, 20:15, 21:5, 21:9, 23:2, 23:16, 28:1, 30:15, 30:19
**Anderson** [3] - 11:8, 11:21, 29:23
**ANDREW** [1] - 2:10
**ANDY** [1] - 1:17
**answer** [1] - 8:13
**APPEARANCES** [1] - 1:14
**appetite** [1] - 23:19
**applicable** [2] - 12:9, 13:9
**apply** [1] - 10:8
**applying** [1] - 26:10
**appropriate** [2] - 26:23, 27:13
**arbitrarily** [1] - 5:24
**ARCH** [1] - 1:22
**area** [1] - 18:6
**areas** [3] - 10:24, 27:15, 27:18
**arguably** [1] - 21:14
**argue** [2] - 10:20, 22:11
**argued** [1] - 16:10
**argument** [1] - 16:12
**article** [2] - 22:4, 22:6
**aspect** [2] - 10:22, 12:12
**assistant** [1] - 4:20
**ASSOCIATES** [1] - 2:19
**attached** [1] - 6:4
**attention** [1] - 13:2
**attorney** [2] - 4:20, 14:5
**ATTORNEY** [4] - 2:5, 2:6, 2:10, 2:11
**Attorney** [1] - 11:1

**attorneys** [2] - 25:6, 25:8
**August** [4] - 19:13, 21:21, 24:11, 24:18
**authority** [1] - 27:21
**available** [2] - 17:1, 17:25, 22:18
**AVE** [2] - 2:16, 2:24
**award** [1] - 5:21
**aware** [1] - 14:14

**B**

**B406** [1] - 3:20
**backwards** [1] - 19:25
**bank** [2] - 9:5, 29:8
**Barrios** [1] - 19:18
**BARRIOS** [7] - 3:5, 3:5, 16:12, 19:17, 21:8, 31:3, 31:9
**based** [2] - 20:20, 21:11
**bases** [1] - 25:9
**basis** [2] - 19:20, 30:3
**BATTERY** [1] - 3:10
**BEASLEY** [1] - 1:16
**beats** [1] - 20:7
**beauty** [1] - 19:4
**BEFORE** [1] - 1:11
**beforehand** [1] - 30:25
**behalf** [5] - 4:16, 4:18, 4:24, 5:5, 11:1
**behind** [2] - 11:6, 11:18
**believes** [1] - 7:9
**bellwether** [9] - 10:9, 10:12, 11:7, 11:9, 11:15, 11:17, 17:24, 22:4, 22:8
**bellwethers** [1] - 12:10
**benefit** [4] - 8:4, 12:4, 20:3, 30:6
**BERNSTEIN** [1] - 3:8
**best** [4] - 13:14, 18:6, 26:18, 32:8
**better** [2] - 13:1, 17:14
**between** [5] - 6:6, 7:15, 19:10, 29:21, 29:22
**BIGGS** [1] - 3:1
**BIRCHFIELD** [1] - 1:17
**bit** [1] - 24:24
**BLVD** [1] - 2:7
**book** [1] - 30:12
**born** [1] - 22:20
**Bossier** [1] - 4:17

**BOSSIER** [3] - 2:19, 2:19, 4:17
**boundary** [1] - 8:19
**bounds** [1] - 9:12
**BOX** [1] - 1:18
**BRIAN** [1] - 1:24
**briar** [1] - 17:12
**brief** [1] - 24:20
**briefing** [1] - 18:8
**bright** [1] - 29:21
**bring** [1] - 24:21
**bringing** [2] - 19:22, 25:8
**BROADWAY** [1] - 2:12
**brought** [1] - 14:5
**budget** [1] - 21:10
**build** [1] - 20:18
**built** [3] - 19:5, 19:9, 20:16
**bulk** [1] - 16:3
**BY** [13] - 1:17, 1:21, 1:24, 2:2, 2:7, 2:12, 2:16, 2:19, 2:24, 3:5, 3:9, 3:23, 3:23

**C**

**CA** [1] - 3:10
**CABRASER** [2] - 3:8, 3:9
**CALIFORNIA** [1] - 2:15
**cannot** [1] - 23:23
**capture** [1] - 17:22
**cart** [1] - 5:23
**case** [20] - 8:9, 8:14, 10:12, 10:23, 11:9, 12:6, 12:11, 14:5, 15:20, 16:2, 16:6, 21:15, 21:16, 26:17, 27:22, 28:2, 28:5, 28:10, 30:3
**case-by-case** [1] - 30:3
**case-specific** [1] - 12:11
**CASES** [2] - 1:8, 1:10
**cases** [48] - 5:21, 5:24, 5:25, 6:3, 6:23, 7:3, 7:5, 7:12, 7:13, 8:11, 8:18, 9:16, 9:21, 9:23, 10:2, 10:3, 10:5, 10:8, 10:14, 10:15, 10:19, 10:21, 12:8, 12:10, 15:14, 15:15, 16:4, 17:14, 18:12, 18:21, 21:11, 21:13, 21:19, 22:11, 23:5, 23:25, 25:5,

25:20, 26:19, 28:11, 29:5, 29:13
**CASTIEX** [1] - 3:5
**categories** [5] - 8:7, 8:16, 10:11, 28:18, 28:24
**category** [1] - 9:11
**CATHY** [1] - 3:20
**Cathy** [2] - 32:3, 32:14
**CCR** [2] - 3:20, 32:14
**CENTER** [1] - 3:9
**CENTRE** [1] - 1:21
**certain** [4] - 11:4, 19:21, 26:6, 28:24
**certainty** [1] - 19:2
**CERTIFICATE** [1] - 32:1
**certified** [1] - 9:17
**Certified** [2] - 32:3, 32:4
**certify** [1] - 32:7
**CHAMBERS** [1] - 4:4
**characterized** [1] - 29:10
**CHAUTAUQUA** [1] - 2:23
**chief** [1] - 7:15
**child** [1] - 22:19
**choices** [1] - 24:2
**CIRA** [1] - 1:21
**cite** [1] - 12:7
**cited** [1] - 18:7
**CITY** [1] - 3:3
**claims** [3] - 7:6, 11:7, 26:13
**Clara** [1] - 5:5
**CLARA** [1] - 2:15
**clarified** [1] - 11:22
**CLARK** [1] - 3:16
**Clark** [1] - 4:17
**clear** [1] - 11:16
**CLERK** [1] - 4:7
**clock** [1] - 23:6
**comfortable** [2] - 13:1, 18:3
**commenting** [1] - 5:15
**COMMERCE** [1] - 1:18
**committee** [3] - 11:2, 28:16, 28:17
**COMMITTEE** [1] - 3:8
**common** [18] - 8:6, 8:8, 8:10, 8:16, 8:21, 11:24, 12:18, 17:8, 18:15, 18:16, 18:17, 20:3, 22:7, 25:21, 26:22, 27:2, 28:19, 29:22
**Commonwealth** [1] - 4:21

**communications** [4] - 8:16, 28:14, 28:15, 28:17
**compared** [1] - 16:9
**Compel** [2] - 15:11, 30:5
**compel** [1] - 10:4
**complete** [5] - 5:11, 5:19, 6:2, 6:17, 7:7
**completed** [2] - 7:2, 7:3
**completely** [1] - 9:18
**completing** [1] - 8:3
**completion** [1] - 6:16
**complex** [1] - 12:2
**complying** [1] - 6:11
**COMPUTER** [1] - 3:23
**concentrate** [1] - 23:24
**concerns** [1] - 11:20
**concluded** [1] - 31:13
**conduct** [2] - 7:9, 8:8
**confer** [1] - 23:9
**CONFERENCE** [1] - 1:11
**conference** [3] - 5:7, 30:23, 31:1
**conferences** [1] - 18:8
**conferred** [1] - 5:10
**confers** [1] - 10:2
**confident** [1] - 7:12
**confusion** [1] - 18:6
**conjunction** [1] - 22:9
**CONNECTICUT** [1] - 2:16
**consider** [2] - 18:12, 20:11
**consistent** [5] - 8:10, 8:18, 10:10, 10:11, 24:25
**constraining** [1] - 23:18
**consultant** [1] - 28:14
**consultants** [2] - 28:8, 28:17
**consumer** [2] - 14:4, 25:9
**contemplate** [1] - 5:24
**contention** [3] - 7:8, 7:15, 8:14
**context** [2] - 10:3, 10:4
**continue** [2] - 5:18, 6:24
**contrary** [1] - 7:23
**CONTROL** [1] - 2:11
**cooperate** [1] - 7:11
**coordinating** [1] - 8:6
**coordination** [1] -

12:3
**correct** [1] - 32:7
**costs** [1] - 26:7
**COUNSEL** [2] - 2:6, 3:5
**counsel** [1] - 19:19
**COUNTIES** [1] - 2:22
**counties** [1] - 4:25
**country** [1] - 27:18
**COUNTY** [1] - 2:14
**County** [1] - 5:5
**couple** [1] - 15:24
**course** [1] - 27:7
**court** [3] - 6:18, 16:17, 29:14
**Court** [21] - 5:13, 5:15, 7:6, 7:10, 7:17, 8:7, 8:18, 8:23, 9:4, 9:11, 9:17, 10:5, 10:10, 10:12, 11:15, 19:3, 32:4, 32:5, 32:6, 32:15, 32:16
**COURT** [34] - 1:1, 3:20, 4:8, 4:22, 5:6, 10:22, 12:21, 12:24, 14:9, 14:14, 15:13, 16:19, 16:23, 17:4, 18:10, 19:11, 19:13, 20:6, 20:25, 21:19, 21:23, 22:22, 23:8, 24:5, 24:22, 26:25, 27:14, 29:19, 30:7, 30:16, 30:20, 30:25, 31:4, 31:11
**Court's** [1] - 13:15
**courts** [3] - 5:21, 5:22, 9:12
**COVENY** [2] - 3:14, 4:13
**Coveny** [1] - 4:13
**COX-2's** [1] - 14:4
**create** [2] - 22:9, 23:5
**CROW** [1] - 1:16
**CRR** [2] - 3:20, 32:14
**CUOMO** [1] - 2:10
**cure** [1] - 19:9
**cut** [1] - 30:17

# D

**daily** [1] - 19:20
**damages** [1] - 16:25
**data** [1] - 22:17
**database** [7] - 7:5, 25:12, 25:18, 25:21, 27:6, 27:7, 27:9
**databases** [5] - 8:12, 23:22, 25:15, 25:25
**date** [8] - 5:24, 19:21,

19:24, 20:7, 20:8, 20:10, 22:20, 24:15
**dates** [3] - 20:13, 20:16, 30:21
**Daubert** [1] - 26:8
**DAVID** [3] - 3:15, 3:17, 3:17
**David** [3] - 4:15, 5:2, 5:13
**Dawn** [1] - 19:18
**DAWN** [1] - 3:5
**DC** [3] - 1:25, 2:17, 4:12
**deal** [5] - 10:18, 13:11, 15:6, 16:8, 19:16
**dealing** [4] - 15:17, 18:18, 23:14, 27:2
**dealt** [1] - 13:10
**debate** [1] - 10:20
**December** [3] - 21:25, 24:13, 29:11
**DECHERT** [1] - 1:20
**decide** [2] - 15:11, 27:17
**decision** [5] - 28:4, 28:6, 28:22, 28:23
**declared** [1] - 7:17
**deem** [1] - 7:21
**deems** [1] - 7:6
**defend** [1] - 29:16
**defendant** [1] - 14:7
**DEFENDANTS** [1] - 1:24
**defendants** [2] - 12:7, 25:11
**defense** [1] - 14:8
**defenses** [1] - 26:12
**deficiency** [1] - 21:6
**DeFrancesco** [2] - 4:23, 4:24
**DEFRANCESCO** [1] - 2:24
**degree** [1] - 19:2
**deliberations** [1] - 28:16
**demand** [2] - 23:19, 23:22
**department** [2] - 28:15, 28:16
**depose** [1] - 28:24
**deposed** [1] - 21:15
**deposition** [2] - 7:10, 21:17
**depositions** [8] - 7:9, 16:5, 17:16, 21:10, 21:12, 26:21, 27:13, 27:17
**DEPUTY** [1] - 4:7
**described** [1] - 29:23
**designed** [3] - 6:20,

6:22, 17:5
**dessert** [1] - 23:7
**details** [1] - 15:4
**determining** [1] - 13:9
**Dickens** [1] - 4:15
**DICKENS** [2] - 3:15, 4:15
**dictate** [1] - 12:2
**dictionaries** [1] - 22:17
**difference** [2] - 13:23, 19:10
**differences** [2] - 14:17, 28:10
**different** [7] - 13:24, 14:13, 16:8, 17:1, 26:9, 26:10, 26:13
**diligently** [1] - 9:15
**directed** [2] - 25:6, 25:11
**disadvantage** [1] - 13:17
**disagree** [2] - 13:16, 30:17
**disagreement** [1] - 9:20
**discipline** [1] - 23:18
**disconnect** [1] - 29:21
**discover** [3] - 16:1, 17:15, 27:1
**discovery** [71] - 5:11, 5:19, 5:25, 6:1, 6:12, 6:14, 6:16, 6:17, 6:25, 7:2, 7:18, 7:19, 7:20, 8:1, 8:5, 8:7, 8:9, 8:17, 8:19, 8:22, 8:24, 9:1, 9:2, 9:5, 9:8, 9:9, 9:11, 9:16, 9:18, 9:22, 10:2, 10:6, 10:15, 10:19, 11:24, 11:25, 12:17, 15:3, 15:9, 15:22, 15:24, 16:4, 16:8, 16:9, 17:7, 17:9, 17:11, 18:2, 20:1, 20:4, 20:19, 22:7, 23:4, 23:19, 23:21, 23:25, 24:21, 24:23, 24:24, 24:25, 25:8, 25:11, 26:15, 28:19, 29:3, 29:7, 29:9, 29:15, 29:22, 29:23, 30:3
**discuss** [1] - 30:1
**discussion** [1] - 11:23
**disputes** [1] - 10:19
**dissipated** [1] - 11:19
**District** [2] - 32:6, 32:16
**DISTRICT** [3] - 1:1,

1:1, 1:12
**districts** [1] - 27:21
**divided** [1] - 9:22
**doable** [1] - 24:14
**DOCKET** [1] - 1:5
**doctor** [1] - 28:25
**doctors** [2] - 16:5, 28:18
**document** [3] - 20:19, 21:3, 23:21
**DOCUMENT** [1] - 1:7
**documents** [10] - 6:7, 6:9, 7:4, 8:15, 17:16, 27:24, 28:14, 28:21, 29:1, 29:11
**dog** [1] - 15:23
**done** [31] - 5:19, 5:25, 6:2, 6:17, 6:24, 6:25, 7:5, 7:14, 7:18, 7:20, 7:21, 8:24, 9:4, 9:14, 9:16, 9:18, 11:24, 12:11, 12:16, 15:10, 18:19, 19:10, 20:1, 23:4, 23:5, 24:16, 24:18, 25:17, 25:24, 26:1, 29:12
**down** [4] - 11:23, 15:23, 20:20, 29:17
**downstream** [1] - 21:16
**drag** [2] - 22:16, 22:18
**dragging** [2] - 6:13, 19:8
**drugs** [5] - 14:3, 25:10, 27:7, 27:8
**Dugan** [2] - 24:3, 26:5
**DUGAN** [5] - 2:2, 29:18, 29:20, 30:23, 31:1

## E

**easier** [5] - 10:18, 11:21, 14:15, 23:12, 24:6
**easily** [1] - 25:17
**Eastern** [1] - 32:6
**EASTERN** [1] - 1:1
**eaten** [1] - 23:7
**EBEN** [1] - 1:21
**Eben's** [1] - 22:19
**economically** [1] - 17:13
**effect** [1] - 12:13
**efficiently** [1] - 5:19
**effort** [1] - 7:11
**eight** [2] - 10:8, 10:15
**either** [6] - 5:21, 15:18, 19:4, 19:8,

20:16, 27:4
**ELDON** [1] - 1:11
**electronics** [1] - 17:20
**Elizabeth** [1] - 4:20
**ELIZABETH** [2] - 3:9, 3:16
**emanate** [1] - 10:7
**EMBARCADERO** [1] - 3:9
**end** [6] - 12:16, 12:17, 19:21, 19:24, 22:3
**endpoint** [3] - 18:25, 22:21
**engaged** [1] - 7:24
**enjoyed** [2] - 16:18, 17:20
**ensure** [2] - 6:16, 6:20
**entities** [2] - 12:4, 19:20
**entitled** [2] - 14:7, 32:9
**entity** [1] - 25:16
**entries** [1] - 12:15
**environment** [1] - 22:10
**envision** [1] - 25:4
**ERIE** [1] - 2:23
**ESQUIRE** [20] - 1:17, 1:17, 1:21, 1:24, 2:7, 2:12, 2:16, 2:19, 2:24, 3:2, 3:5, 3:9, 3:12, 3:14, 3:14, 3:15, 3:16, 3:16, 3:17, 3:17
**evidence** [5] - 8:2, 8:11, 27:3, 27:4, 28:3
**exactly** [1] - 29:23
**example** [4] - 14:1, 15:8, 18:6, 25:12
**except** [1] - 26:25
**exchange** [1] - 26:1
**executive** [1] - 11:1
**EXECUTIVE** [1] - 3:8
**Exhibit** [1] - 6:5
**exist** [2] - 13:25, 28:18
**experience** [2] - 21:11, 24:2
**expert** [5] - 7:9, 7:10, 16:25, 21:10, 25:18
**experts** [4] - 26:3, 26:4, 26:6, 26:11
**explained** [1] - 5:14
**extension** [1] - 10:13
**extensive** [2] - 25:8, 25:20
**extracts** [1] - 7:6
**EYE** [1] - 1:25

## F

**fact** [5] - 7:8, 10:11, 12:1, 13:14, 21:10
**fair** [2] - 9:13, 24:1
**fairly** [2] - 25:17, 26:24
**Fallon** [1] - 4:8
**FALLON** [1] - 1:11
**familiar** [1] - 25:18
**far** [2] - 26:8, 27:11
**farthest** [1] - 9:24, 10:14
**faster** [1] - 20:20
**February** [1] - 29:12
**federal** [2] - 5:21, 16:16
**federalism** [1] - 16:21
**feet** [6] - 6:13, 19:1, 19:8, 22:1, 22:16, 22:19
**fighting** [1] - 19:14
**file** [1] - 15:11
**final** [2] - 20:13, 20:16
**finish** [4] - 7:4, 7:8, 13:5, 23:20
**finished** [2] - 15:21, 24:17
**fire** [2] - 19:1, 22:1
**firm** [2] - 4:16, 18:25
**FIRM** [1] - 2:1
**first** [2] - 9:24, 16:17
**five** [6] - 20:18, 20:22, 20:23, 20:24, 21:1, 21:10
**five-month** [1] - 20:18
**flaster** [1] - 23:17
**FLASTER** [1] - 1:21
**FLOOR** [2] - 2:12, 2:24
**Florida** [11] - 8:2, 11:1, 11:5, 12:22, 14:4, 21:15, 28:22, 29:14, 30:3, 30:4, 30:11
**FLORIDA** [3] - 2:5, 2:5, 2:8
**flow** [1] - 29:11
**flying** [1] - 14:13
**focus** [15] - 10:1, 10:18, 10:24, 11:21, 12:5, 12:11, 12:19, 13:2, 14:15, 14:18, 22:24, 23:24, 25:13, 26:15
**focused** [1] - 22:23
**folks** [2] - 5:6, 15:14
**food** [1] - 16:20
**FOR** [2] - 1:16, 1:24
**foray** [1] - 16:17

**foregoing** [1] - 32:7
**forever** [1] - 15:16
**form** [1] - 15:5
**format** [2] - 16:4, 17:13
**forth** [2] - 24:6, 28:25
**forum** [1] - 16:17
**forward** [2] - 11:18, 21:4
**four** [14] - 9:23, 10:14, 11:6, 12:21, 13:10, 13:21, 14:15, 14:21, 15:2, 24:6, 25:13, 30:8, 30:13
**fourth** [2] - 22:14, 22:15
**Fox** [1] - 4:10
**FOX** [2] - 2:12, 4:10
**FRANCISCO** [1] - 3:10
**frankly** [6] - 12:25, 17:4, 19:8, 22:25, 23:12, 24:5
**FRAUD** [1] - 2:11
**front** [2] - 11:9, 14:11
**full** [2] - 7:7, 11:22
**fundamental** [1] - 19:10
**fundamentally** [1] - 28:11
**future** [1] - 13:5

## G

**game** [1] - 19:21
**GENERAL** [4] - 2:5, 2:6, 2:10, 2:11
**general** [5] - 4:20, 14:5, 20:18, 25:6, 25:8
**General's** [1] - 11:1
**generally** [1] - 6:6
**given** [2] - 15:25, 29:9
**global** [1] - 22:10
**goal** [1] - 7:1
**GOVERNMENT** [3] - 1:8, 1:10, 3:8
**government** [4] - 5:10, 5:20, 6:8, 11:2
**governmental** [2] - 19:20, 21:11
**granted** [1] - 12:9
**graphic** [1] - 25:5
**great** [2] - 8:17, 25:2
**GREEN** [1] - 3:2
**ground** [1] - 16:1
**grounds** [2] - 9:8, 15:9
**group** [11] - 9:24, 10:1, 11:4, 11:22, 12:14, 20:19, 21:19,

21:20, 21:21, 30:18
**grouping** [3] - 11:3, 11:18, 24:11
**groups** [3] - 9:23, 9:25, 11:2
**guess** [2] - 18:3, 30:1
**guidance** [1] - 14:20

## H

**half** [1] - 28:5
**halves** [1] - 28:3
**hand** [1] - 18:2
**handful** [3] - 11:21, 12:5, 12:20
**handle** [2] - 30:2, 30:5
**handled** [2] - 18:17, 26:23
**happy** [3] - 21:16, 22:16, 22:18
**harder** [1] - 10:21
**harmful** [1] - 13:13
**health** [2] - 28:15, 28:16
**hear** [5] - 5:7, 10:22, 19:20, 20:6, 30:16
**heard** [1] - 11:10
**HEARD** [1] - 1:11
**hearing** [2] - 18:3, 30:4
**heavily** [1] - 27:10
**heavy** [1] - 26:20
**HEIMANN** [1] - 3:8
**held** [1] - 10:12
**helpful** [1] - 18:11
**hence** [1] - 9:4
**hereby** [1] - 32:7
**hodgepodge** [1] - 26:14
**hold** [2] - 18:25, 21:25
**home** [2] - 22:2, 29:15
**Honor** [19] - 4:10, 4:11, 4:15, 4:17, 4:19, 4:23, 5:9, 10:25, 11:10, 14:12, 16:13, 19:23, 20:15, 23:2, 28:1, 29:18, 30:1, 31:9, 31:10
**Honor's** [1] - 20:1
**HONORABLE** [1] - 1:11
**hope** [5] - 15:18, 18:11, 19:23, 24:18, 29:13
**hopefully** [2] - 17:8, 22:1
**horse** [1] - 5:23
**hospitals** [2] - 28:15, 28:16

**Houston** [1] - 4:14
**HOWARD** [1] - 3:12
**hub** [2] - 25:5, 26:16
**huge** [2] - 6:6, 23:22
**hugely** [1] - 9:25
**hurricane** [2] - 20:7, 20:9

**I**

**idea** [1] - 12:25
**II** [1] - 2:2
**imbalance** [2] - 6:6, 8:25
**immediately** [1] - 23:14
**immensely** [1] - 16:18
**important** [3] - 6:15, 7:2, 23:4
**IN** [2] - 1:4, 4:4
**inapplicable** [1] - 14:12
**incentive** [1] - 23:5
**includes** [1] - 14:3
**including** [1] - 7:8
**inconsistent** [1] - 7:1
**incredible** [1] - 17:20
**indeed** [2] - 7:13, 20:16
**individual** [1] - 11:25
**individually** [1] - 7:13
**individuals** [1] - 26:22
**information** [13] - 13:14, 14:2, 14:6, 17:22, 18:15, 25:10, 25:16, 25:21, 25:25, 26:18, 28:6, 28:9, 28:18
**initial** [1] - 24:19
**injury** [2] - 16:4, 17:10
**input** [3] - 10:23, 15:1, 20:25
**institution** [1] - 28:3
**instructed** [1] - 24:20
**instructions** [1] - 18:7
**intend** [1] - 27:16
**interested** [1] - 13:9
**interrogatories** [3] - 7:7, 7:8, 8:14
**interrupt** [1] - 19:19
**invoke** [1] - 16:21
**involved** [2] - 23:8, 27:10
**involving** [1] - 22:11
**irrelevant** [2] - 30:9, 30:10
**issue** [5] - 22:15, 23:10, 24:19, 25:12, 30:8

**issues** [12] - 10:20, 11:12, 11:13, 16:15, 16:21, 16:25, 18:16, 22:12, 25:7, 27:8
**IT** [2] - 27:9, 27:11

**J**

**JACKSON** [1] - 2:20
**JACKSONVILLE** [1] - 2:8
**jam** [1] - 17:2
**James** [1] - 10:25
**JAMES** [2] - 2:2, 2:7
**January** [2] - 19:13, 29:12
**Joe** [1] - 5:1
**joint** [1] - 24:9
**JOSEPH** [1] - 3:2
**JR** [1] - 1:17
**judge** [7] - 15:19, 17:18, 19:15, 27:14, 27:18, 27:20, 29:15
**JUDGE** [1] - 1:12
**Judge** [3] - 4:8, 16:12, 19:17
**judgment** [1] - 12:9
**juice** [1] - 17:19
**July** [1] - 30:24
**jump** [1] - 31:8
**juncture** [1] - 7:17
**JUNE** [2] - 1:6, 4:2
**June** [3] - 7:17, 21:20, 23:21
**Juneau's** [1] - 17:21
**jurisdiction** [3] - 11:15, 22:12, 22:13
**jurisdictional** [3] - 11:12, 16:15, 25:7

**K**

**Kentucky** [3] - 4:20, 4:21, 12:15
**kind** [2] - 19:15, 29:3
**kinds** [4] - 8:14, 21:13, 24:2, 28:14
**KINGSDORF** [1] - 3:5
**Klafter** [1] - 5:4
**KLAFTER** [1] - 2:15
**knowing** [1] - 21:12
**Konigsberg** [1] - 4:24
**KONINGSBERG** [1] - 2:23

**L**

**L.L.P** [1] - 1:20

**LA** [2] - 2:3, 3:6
**lack** [2] - 6:22, 12:19
**LAKE** [1] - 3:3
**largely** [1] - 27:5
**larger** [2] - 11:6, 11:7
**last** [2] - 9:6, 9:14
**late** [1] - 12:15
**LAW** [1] - 2:1
**law** [3] - 12:6, 28:10, 28:11
**Law** [1] - 22:4
**laws** [1] - 26:10
**least** [3] - 13:15, 18:11, 20:11
**leave** [3] - 22:25, 26:24, 27:15
**left** [1] - 18:1
**LEIGH** [1] - 1:17
**lemon** [1] - 17:20
**Lesser** [2] - 5:4
**LESSER** [3] - 2:15, 2:16, 5:4
**letter** [3] - 5:14, 5:15, 6:5
**letters** [1] - 21:6
**Levy** [1] - 4:24
**LEVY** [1] - 2:23
**LIABILITY** [1] - 1:5
**liaison** [1] - 19:19
**LIAISON** [1] - 3:5
**license** [2] - 29:6, 29:8
**LIEFF** [1] - 3:8
**life** [1] - 16:15
**lifting** [1] - 26:20
**light** [1] - 19:21
**likelihood** [1] - 13:21
**limitation** [1] - 26:2
**line** [2] - 4:9, 29:22
**list** [2] - 27:16, 30:21
**listen** [1] - 24:22
**LITIGATION** [1] - 1:5
**litigation** [2] - 10:11, 12:2
**live** [2] - 14:25, 24:4
**living** [1] - 23:18
**LLC** [1] - 3:1
**LLP** [3] - 2:15, 2:23, 3:5
**lock** [2] - 6:22, 8:25
**logical** [1] - 10:13
**lone** [1] - 25:23
**look** [3] - 5:12, 14:20, 17:17
**looking** [2] - 13:2, 18:19
**looming** [1] - 20:10
**Louisiana** [10] - 10:12, 11:9, 12:8, 26:5, 28:2, 28:3, 28:5,

28:7, 28:9, 28:13, 32:5, 32:6
**LOUISIANA** [4] - 1:1, 1:6, 2:1, 3:21
**love** [1] - 21:8

**M**

**majority** [1] - 21:24
**makers** [5] - 28:5, 28:6, 28:22, 28:23
**managed** [1] - 10:10
**manual** [1] - 12:1
**March** [2] - 21:20, 21:23
**material** [3] - 17:12, 18:11, 27:2
**materials** [1] - 18:9
**matter** [4] - 8:25, 10:17, 18:2, 32:10
**MDL** [33] - 1:5, 5:11, 5:18, 6:2, 6:12, 6:16, 7:3, 7:18, 7:22, 7:24, 8:5, 8:6, 8:24, 15:10, 16:2, 16:10, 16:15, 17:2, 17:5, 17:10, 20:2, 22:7, 25:19, 26:1, 26:14, 26:23, 27:13, 27:14, 27:15, 27:18, 27:20, 29:7
**MDLs** [1] - 16:17
**me-too** [1] - 14:16
**me-tooed** [2] - 13:4, 13:22
**mean** [8] - 8:21, 13:3, 16:2, 17:7, 17:15, 17:17, 23:2, 24:18
**meaning** [1] - 16:15
**meaningful** [1] - 24:25
**meant** [1] - 8:8
**meanwhile** [1] - 9:5
**meat** [1] - 23:7
**MECHANICAL** [1] - 3:23
**mechanism** [3] - 30:1, 30:6, 30:7
**MEDICAID** [1] - 2:11
**meet** [3] - 10:2, 13:16, 23:9
**meeting** [1] - 31:5
**memorandum** [1] - 23:15
**memorialize** [1] - 28:21
**memorializing** [2] - 8:15, 29:2
**mentioned** [3] - 11:8, 11:21, 26:12
**Merck** [40] - 6:7, 6:10,

6:11, 6:14, 6:19, 6:25, 7:9, 7:24, 8:12, 8:16, 8:20, 9:2, 9:6, 9:8, 9:22, 11:16, 12:20, 13:19, 13:22, 14:2, 17:7, 18:14, 19:25, 21:8, 22:15, 24:20, 25:5, 25:16, 26:1, 26:12, 26:17, 27:1, 28:4, 28:6, 28:22, 28:24, 29:4, 29:9, 29:13
**Merck's** [6] - 5:17, 11:20, 15:8, 17:6, 19:7, 25:15
**Merit** [1] - 32:4
**met** [1] - 5:10
**METHVIN** [1] - 1:16
**Meyers** [1] - 4:12
**midst** [1] - 27:6
**might** [4] - 14:13, 25:24, 26:4, 30:8
**MILES** [1] - 1:16
**Miller** [1] - 4:16
**million** [1] - 17:16
**millions** [2] - 7:25, 29:8
**mind** [2] - 18:25, 22:23
**Mississippi** [1] - 4:18
**MISSISSIPPI** [2] - 2:19, 2:20
**mockery** [1] - 9:13
**mode** [1] - 9:22
**models** [1] - 16:25
**Montana** [4] - 4:16, 21:16, 28:22, 29:14
**MONTGOMERY** [1] - 1:19
**month** [4] - 14:23, 20:18, 21:2, 21:4
**months** [12] - 9:25, 19:11, 19:15, 19:16, 20:23, 20:24, 21:1, 21:10, 22:17, 24:17, 31:3
**morning** [4] - 4:8, 4:15, 4:19, 4:23
**most** [3] - 13:17, 16:6, 23:3
**motion** [2] - 15:5, 24:21
**Motion** [2] - 15:11, 30:4
**motions** [7] - 10:4, 13:18, 13:19, 14:16, 18:3, 23:15, 26:9
**move** [6] - 6:17, 20:8, 20:10, 20:11, 20:12, 21:14

moving [1] - 26:17
MR [37] - 4:10, 4:13,
4:15, 5:1, 5:2, 5:3,
5:4, 5:9, 10:25,
12:22, 14:1, 14:11,
15:7, 16:13, 16:20,
16:24, 17:18, 18:24,
19:12, 20:15, 21:2,
21:5, 21:9, 21:22,
21:24, 23:2, 23:16,
24:19, 25:4, 27:5,
28:1, 29:18, 29:20,
30:15, 30:19, 30:23,
31:1
MS [9] - 4:11, 4:17,
4:19, 4:23, 16:12,
19:17, 21:8, 31:3,
31:9
multidistrict [1] - 12:2
MURRAY [1] - 2:1
mutual [4] - 6:2, 8:8,
9:18, 20:16
mutuality [1] - 7:1
MYERS [1] - 1:24
myriad [1] - 10:10

### N

N.W [1] - 2:16
namely [2] - 8:1, 11:4
NATTER [1] - 4:19
Natter [1] - 4:20
necessary [1] - 18:12
need [32] - 6:24, 10:2,
10:4, 13:6, 14:19,
15:4, 15:22, 19:20,
19:21, 20:11, 22:20,
22:25, 23:8, 23:10,
23:16, 23:24, 23:25,
24:3, 24:24, 26:21,
27:17, 29:16, 30:2,
30:12, 30:13, 30:24,
31:1
needs [5] - 6:17, 7:5,
12:11, 23:4, 24:4
neglected [1] - 13:7
negotiate [1] - 10:20
NETTER [1] - 3:16
NEW [9] - 1:6, 2:3,
2:10, 2:10, 2:13,
2:22, 2:25, 3:6, 3:21
New [11] - 4:10, 4:25,
8:2, 11:5, 12:22,
13:24, 16:19, 16:20,
30:9, 30:10
new [1] - 9:7
next [5] - 13:16, 15:19,
24:16, 30:18, 30:23
nice [1] - 18:24

nine [1] - 17:16
NO [1] - 1:5
NORTH [1] - 2:20
note [1] - 30:23
notes [1] - 21:8
nothing [1] - 15:25
noticed [1] - 21:6
nuances [1] - 16:24
number [5] - 10:3,
10:5, 10:19, 13:2,
14:18
numbered [1] - 32:9
numbers [2] - 6:4,
10:23
NY [2] - 2:13, 2:25

### O

O'DELL [1] - 1:17
O'MELVENY [1] - 1:24
O'Melveny [1] - 4:11
objection [1] - 25:10
objective [1] - 5:18
objects [2] - 15:8,
30:4
obligations [1] - 6:12
observation [2] -
23:16, 29:18
October [1] - 24:13
OF [14] - 1:1, 1:10,
2:1, 2:5, 2:5, 2:6,
2:10, 2:11, 2:15,
2:19, 2:22, 3:1
OFFICE [5] - 1:18, 2:5,
2:6, 2:10, 2:11
office [1] - 11:1
Official [2] - 32:5,
32:15
OFFICIAL [1] - 3:20
often [1] - 16:16
oil [1] - 20:9
Oklahoma [4] - 4:13,
11:5, 12:23, 30:11
OLSEN [1] - 2:15
Olsen [1] - 5:4
once [3] - 9:12, 9:17
one [21] - 11:3, 11:6,
12:14, 14:1, 15:7,
15:10, 17:15, 18:17,
20:19, 21:19, 22:5,
22:7, 23:6, 23:16,
23:22, 25:9, 25:15,
25:16, 27:19, 27:20,
29:24
ones [1] - 12:24
opportunity [2] - 9:10,
18:14
opposed [2] - 15:24,
18:17

ORANGE [1] - 2:23
order [7] - 8:23, 19:2,
19:4, 19:8, 19:22,
24:9, 24:10
orderly [1] - 13:17
originally [1] - 25:19
ORLEANS [4] - 1:6,
2:3, 3:6, 3:21
Orleans [2] - 16:19,
16:20
otherwise [1] - 16:9
ought [5] - 6:1, 15:22,
15:23, 24:11, 28:19
ourselves [2] - 16:16,
29:16
owe [4] - 6:14, 8:20,
9:2

### P

P&T [2] - 28:16, 28:17
PA [1] - 1:22
package [1] - 15:19
packages [4] - 8:2,
17:11, 17:23, 17:24
pages [2] - 7:25, 29:9
part [3] - 16:6, 23:17,
26:3
parties [9] - 5:8, 16:3,
18:7, 24:20, 25:13,
25:14, 25:18, 29:21,
30:6
party [1] - 19:6
party's [2] - 5:16, 19:1
patch [1] - 17:12
Pennsylvania [5] -
8:3, 11:5, 12:22,
28:23, 30:12
people [4] - 21:15,
27:11, 28:24, 28:25
PEPPER [1] - 3:20
Pepper [3] - 32:3,
32:13, 32:14
perfect [1] - 25:12
perhaps [2] - 15:10,
27:12
period [2] - 20:18,
23:23
periods [1] - 23:3
permissible [1] - 10:6
personal [2] - 16:4,
17:10
perspective [3] -
16:13, 17:19, 18:4
persuade [1] - 29:14
pertains [1] - 15:9
phasing [1] - 9:20
PHILADELPHIA [1] -
1:22

Phillips [1] - 4:24
PHILLIPS [1] - 2:23
philosophers [1] -
16:14
phone [2] - 23:13,
31:6
physically [1] - 23:23
PI [1] - 25:20
pick [1] - 21:16
pitch [1] - 17:14
place [1] - 21:25
plaintiff [1] - 6:21
PLAINTIFFS [1] - 1:16
plaintiffs [11] - 6:7,
6:8, 6:9, 6:13, 6:23,
7:25, 8:1, 11:2, 11:3,
25:14, 25:22
plaintiffs' [1] - 7:16
play [1] - 12:12
played [3] - 28:2,
28:10
PLLC [1] - 2:19
point [7] - 7:15, 8:23,
11:4, 15:8, 15:11,
18:20, 18:21
PORTIS [1] - 1:16
position [7] - 9:1,
12:6, 14:6, 18:24,
19:7, 21:22, 25:17
positions [1] - 18:8
POST [1] - 1:18
potatoes [1] - 23:7
powers [1] - 27:20
POYDRAS [3] - 2:2,
3:6, 3:20
practical [3] - 8:25,
10:17, 22:20
practice [1] - 7:23
preparation [1] - 22:5
prepare [1] - 23:25
preparing [1] - 12:7
PRESENT [2] - 3:12,
3:14
presentation [1] -
17:21
presented [3] - 6:4,
6:20, 28:6
presently [1] - 9:21
pressure [1] - 27:9
principal [1] - 10:13
principles [1] - 10:7
prioritization [1] -
11:19
prioritize [1] - 11:4
prioritizing [1] - 18:20
problem [8] - 6:12,
20:13, 20:15, 23:13,
29:20
problematic [1] - 17:3

proceeding [3] - 5:18,
7:24, 14:7
PROCEEDINGS [3] -
1:11, 3:23, 4:1
proceedings [3] -
12:2, 31:12, 32:9
process [10] - 5:19,
7:10, 10:8, 10:15,
11:6, 11:18, 13:18,
22:7, 25:19, 29:16
produce [9] - 7:5,
8:12, 8:13, 8:15,
8:19, 8:20, 9:3,
13:25, 27:24
PRODUCED [1] - 3:23
produced [6] - 6:7,
6:9, 7:25, 9:6, 22:18,
23:23
produces [1] - 26:18
producing [2] - 6:13,
27:9
product [1] - 20:5
production [8] - 7:4,
13:18, 13:19, 19:6,
22:1, 22:2, 26:3,
27:6
PRODUCTS [1] - 1:4
Professional [1] -
32:4
profit [1] - 17:9
progress [1] - 6:22
promise [1] - 23:6
proposal [3] - 7:16,
12:13, 12:18
proposed [3] - 5:13,
9:18, 20:17
proposes [1] - 9:22
prospective [1] -
11:22
protection [2] - 14:5,
25:9
provide [1] - 25:24
provides [1] - 30:19
provisions [1] - 19:9
PSC's [1] - 20:4
public [1] - 28:25
purposes [1] - 22:20
put [2] - 19:17, 21:25,
27:3
putting [3] - 5:23,
12:18, 28:3

### Q

quantities [1] - 23:22
quantity [2] - 6:6, 6:8
questionable [1] -
22:12
quite [1] - 16:20

# R

**RANDALL** [1] - 2:12
**Randy** [1] - 4:10
**rather** [2] - 11:22, 12:19
**RE** [1] - 1:4
**read** [1] - 22:4
**readily** [1] - 22:18
**ready** [7] - 7:12, 12:15, 16:6, 22:2, 26:24, 26:25, 29:5
**realistic** [4] - 20:18, 21:17, 21:18, 24:12
**really** [16] - 11:23, 12:6, 15:4, 15:13, 15:14, 15:18, 17:18, 18:1, 19:23, 21:5, 23:1, 23:25, 25:11, 25:23, 26:2, 31:7
**Realtime** [1] - 32:3
**reason** [5] - 11:20, 12:1, 16:10, 22:23
**record** [2] - 19:18, 32:9
**RECORDED** [1] - 3:23
**rectangle** [1] - 22:15
**reducing** [1] - 10:23
**regard** [2] - 11:3, 15:3
**regarding** [1] - 24:19
**regardless** [2] - 25:13, 28:10
**Registered** [2] - 32:3, 32:4
**relate** [1] - 8:2
**relates** [1] - 7:16
**RELATES** [1] - 1:7
**relevant** [7] - 7:6, 8:11, 14:3, 14:6, 25:10, 27:8, 30:11
**relies** [1] - 12:18
**relitigate** [1] - 9:11
**remaining** [5] - 11:24, 18:2, 25:23, 26:15
**remand** [17] - 5:20, 5:24, 6:3, 6:23, 6:25, 7:12, 7:20, 9:7, 15:18, 18:3, 21:19, 21:20, 21:23, 22:15, 23:5, 26:21
**remanded** [7] - 7:3, 7:13, 9:16, 9:17, 15:15, 15:16, 29:13
**remanding** [1] - 5:25
**remedies** [2] - 17:1, 19:9
**report** [1] - 7:10
**REPORTER** [1] - 3:20
**Reporter** [6] - 32:3,

32:4, 32:5, 32:15
**REPORTER'S** [1] - 32:1
**REPRESENTING** [7] - 2:1, 2:4, 2:9, 2:14, 2:18, 2:22, 3:1
**request** [1] - 25:21
**requests** [1] - 15:9
**required** [2] - 13:25, 27:1
**requirement** [1] - 29:6
**resolve** [1] - 23:13
**resources** [2] - 11:20, 12:19
**respective** [2] - 5:14, 19:1
**respond** [1] - 28:1
**respondents** [1] - 15:5
**response** [1] - 15:5
**responses** [4] - 7:7, 9:2, 13:19, 13:20
**result** [1] - 21:3
**reticent** [1] - 11:14
**Review** [1] - 22:4
**rid** [3] - 15:14, 23:1
**ride** [1] - 10:15
**rights** [1] - 16:22
**rigor** [1] - 20:16
**rigorously** [1] - 20:20
**ripe** [1] - 22:10
**rise** [1] - 4:7
**risks** [2] - 28:7, 28:8
**RIVERPLACE** [1] - 2:7
**RMR** [1] - 32:14
**road** [1] - 20:20
**rolled** [1] - 21:4
**ROOM** [1] - 3:20
**room** [1] - 5:7
**round** [1] - 9:7
**ROXANNE** [1] - 2:24
**Roxanne** [1] - 4:24
**RPR** [1] - 3:20
**rules** [3] - 8:10, 12:1, 26:9
**ruling** [1] - 14:11
**rulings** [6] - 8:17, 8:18, 10:5, 10:6, 13:21, 27:21
**run** [1] - 23:6

# S

**s/Cathy** [1] - 32:13
**SALT** [1] - 3:3
**SAN** [1] - 3:10
**SANTA** [1] - 2:15
**Santa** [1] - 5:5
**satisfactory** [1] -

17:13
**save** [1] - 20:19
**saw** [1] - 28:1
**schedule** [12] - 5:10, 5:12, 5:13, 5:16, 6:15, 6:19, 6:21, 9:19, 21:25, 23:18, 23:20, 30:19
**schedules** [1] - 5:14
**scheduling** [6] - 19:2, 19:4, 19:8, 19:22, 24:9, 24:10
**scope** [5] - 8:11, 10:6, 24:21, 24:23, 24:24
**second** [4] - 9:25, 11:7, 21:20, 22:19
**see** [9] - 13:4, 13:14, 13:15, 13:17, 13:23, 16:2, 24:5, 25:23, 29:23
**seeking** [2] - 9:8, 14:2
**sending** [1] - 21:6
**sense** [7] - 8:17, 12:18, 14:18, 15:12, 17:17, 24:12, 30:8
**September** [2] - 23:21, 24:13
**serve** [2] - 11:7, 30:3
**set** [4] - 5:24, 14:7, 22:20, 23:20
**set-off** [1] - 14:7
**Seth** [1] - 5:4
**SETH** [1] - 2:16
**settlement** [1] - 22:10
**several** [3] - 9:6, 9:14, 28:21
**share** [1] - 26:7
**shared** [1] - 26:7
**SHEILA** [1] - 2:19
**Sheila** [1] - 4:17
**shorter** [1] - 24:11
**show** [1] - 6:5
**shown** [1] - 24:3
**shut** [1] - 29:10
**side** [14] - 5:15, 19:5, 22:8, 22:13, 22:15, 23:6, 23:20, 23:22, 25:15, 27:4, 27:7, 27:9, 29:24
**sides** [7] - 5:9, 6:16, 7:11, 20:21, 21:12, 24:1, 29:3
**sides'** [1] - 7:16
**sign** [1] - 8:23
**significant** [3] - 14:2, 16:16, 16:21
**simply** [3] - 21:17, 23:23, 29:8
**simultaneously** [1] - 10:20

**sit** [4] - 12:5, 27:14, 27:18, 29:11
**sitting** [3] - 18:4, 18:23, 20:21
**situated** [1] - 26:19
**situation** [1] - 26:18
**six** [3] - 14:22, 19:11, 19:15
**slows** [1] - 29:16
**small** [3] - 10:19, 16:9, 25:2
**smaller** [6] - 10:1, 10:3, 10:5, 13:2, 14:18, 17:9
**snuff** [1] - 12:17
**SOLOMON** [2] - 3:14, 4:11
**Solomon** [1] - 4:11
**sometime** [1] - 13:5
**soon** [2] - 7:13, 18:22
**sorry** [2] - 19:18, 19:19
**sort** [5] - 12:19, 17:11, 17:19, 22:7, 25:23
**source** [1] - 9:20
**SOUTH** [1] - 3:2
**sovereign** [2] - 26:9, 26:10
**sovereignty** [2] - 11:12, 16:22
**speaking** [1] - 6:6
**SPECIAL** [1] - 2:6
**specific** [22] - 7:19, 7:20, 7:21, 8:1, 8:5, 8:24, 9:3, 9:9, 11:25, 12:11, 13:6, 15:3, 15:22, 16:25, 25:25, 26:12, 26:22, 27:13, 29:8, 29:10, 29:22, 29:24
**specifically** [1] - 16:17
**specifics** [2] - 24:24, 30:13
**spent** [1] - 27:11
**spill** [1] - 20:9
**square** [2] - 17:15, 22:14
**squeezed** [2] - 17:19, 21:14
**stage** [1] - 13:16
**stagger** [2] - 9:24, 10:1
**Stallard** [1] - 5:2
**STALLARD** [2] - 3:17, 5:2
**standpoint** [5] - 5:17, 13:14, 17:5, 24:23, 27:19
**start** [5] - 9:7, 16:1, 17:15, 31:5, 31:8

**started** [2] - 31:7
**starting** [1] - 29:4
**State** [4] - 4:13, 4:16, 4:18, 32:5
**STATE** [9] - 2:1, 2:4, 2:5, 2:9, 2:10, 2:18, 2:20, 3:1, 3:5
**state** [30] - 5:22, 7:19, 7:20, 7:21, 8:1, 8:5, 8:24, 9:4, 9:9, 9:12, 15:3, 15:8, 15:10, 16:25, 17:15, 24:4, 25:25, 26:9, 26:10, 26:22, 27:1, 27:3, 28:10, 28:11, 28:19, 29:7, 29:10, 29:15, 29:22, 29:24
**state's** [1] - 29:15
**state-specific** [12] - 7:19, 7:20, 8:1, 8:5, 8:24, 9:9, 15:3, 16:25, 25:25, 26:22, 29:22, 29:24
**states** [51] - 8:4, 8:13, 8:15, 8:19, 8:21, 9:1, 9:6, 10:22, 11:6, 11:11, 11:13, 11:19, 12:1, 12:3, 12:14, 12:20, 12:21, 13:1, 13:3, 13:6, 13:8, 13:10, 13:13, 13:22, 13:24, 14:12, 15:22, 15:25, 16:7, 17:6, 17:8, 17:9, 18:15, 18:16, 18:17, 19:7, 25:1, 26:4, 26:7, 27:5, 27:10, 29:1, 29:4, 29:5, 29:8, 30:14
**States** [2] - 32:6, 32:16
**STATES** [2] - 1:1, 1:12
**states'** [4] - 12:16, 16:21, 17:5, 26:2
**status** [2] - 18:8, 30:23
**STATUS** [1] - 1:11
**statutory** [1] - 17:1
**stay** [2] - 22:16, 22:19
**stealing** [1] - 16:12
**Steele** [1] - 5:1
**STEELE** [3] - 3:1, 3:2, 5:1
**STENOGRAPHY** [1] - 3:23
**step** [2] - 11:18, 20:22
**still** [3] - 11:9, 18:4
**strategy** [1] - 10:9
**STREET** [9] - 1:18, 1:22, 1:25, 2:2, 2:20,

3:2, 3:6, 3:10, 3:20
**street** [1] - 18:13
**strike** [1] - 7:19
**struck** [1] - 22:5
**structurally** [1] - 14:17
**student** [1] - 20:2
**subject** [1] - 11:14
**submissions** [1] - 7:16
**submit** [3] - 6:19, 6:21, 8:7
**submitted** [4] - 5:13, 5:15, 6:21, 21:4
**substantially** [1] - 7:3
**suggest** [1] - 24:1
**SUITE** [5] - 2:2, 2:7, 2:16, 3:6, 3:10
**summary** [1] - 12:9
**support** [1] - 18:8
**system** [1] - 25:14
**systems** [2] - 26:1, 27:9

**T**

**table** [2] - 19:18, 20:21
**tail** [1] - 15:23
**talks** [1] - 12:6
**Tallahassee** [1] - 27:11
**tee** [1] - 15:4
**teed** [1] - 27:12
**teeing** [4] - 13:18, 13:19, 13:20
**TELEPHONE** [1] - 3:14
**ten** [5] - 12:13, 14:15, 14:17, 24:7, 25:13
**tend** [1] - 21:12
**termed** [2] - 14:3, 25:25
**testimony** [1] - 26:11
**Texas** [3] - 4:14, 12:8
**THE** [46] - 1:11, 1:16, 1:24, 2:1, 2:4, 2:5, 2:6, 2:9, 2:11, 2:14, 2:18, 2:22, 3:1, 4:7, 4:8, 4:22, 5:6, 10:22, 12:21, 12:24, 14:9, 14:14, 15:13, 16:19, 16:23, 17:4, 18:10, 19:11, 19:13, 20:6, 20:25, 21:19, 21:23, 22:22, 23:8, 24:5, 24:22, 26:25, 27:14, 29:19, 30:7, 30:16, 30:20, 30:25, 31:4, 31:11
**themselves** [1] - 11:14

**theories** [2] - 14:13, 22:6
**thereabouts** [2] - 15:24, 21:3
**thereafter** [1] - 5:14
**they've** [2] - 15:15, 23:7
**thinking** [1] - 15:13
**THIRD** [1] - 2:24
**third** [2] - 9:25, 21:20
**THIS** [1] - 1:7
**thousand** [1] - 17:16
**three** [4] - 4:25, 9:23, 12:14, 19:16
**throughout** [1] - 7:24
**THURSDAY** [2] - 1:6, 4:2
**tighten** [1] - 23:3
**timeframe** [1] - 13:6
**timeframes** [3] - 14:19, 14:24, 15:1
**timelines** [1] - 19:9
**timetable** [1] - 20:17
**TIMOTHY** [1] - 3:12
**TO** [1] - 1:7
**today** [3] - 9:1, 17:21, 22:5
**today's** [1] - 11:23
**together** [7] - 10:24, 12:3, 12:19, 14:24, 24:9, 26:14, 30:20
**Tony** [1] - 4:13
**TONY** [1] - 3:14
**tooed** [2] - 13:4, 13:22
**took** [1] - 22:16
**traditionally** [3] - 25:6, 25:7, 25:10
**transcript** [1] - 32:8
**TRANSCRIPT** [2] - 1:10, 3:23
**transfer** [1] - 5:21
**trial** [12] - 10:12, 11:15, 12:10, 17:11, 17:23, 17:24, 22:8, 23:25, 26:5, 29:5, 29:16
**trials** [3] - 12:8, 17:17, 22:4
**triangle** [3] - 22:6, 22:8, 22:14
**trouble** [2] - 6:11, 8:3
**TROUT** [1] - 3:16
**Trout** [1] - 4:17
**true** [1] - 32:7
**truly** [1] - 11:24
**try** [8] - 10:19, 16:6, 17:2, 18:12, 23:3, 26:14, 26:19
**trying** [3] - 10:18, 20:17, 21:17

**tunnel** [1] - 19:22
**turns** [1] - 15:21
**twists** [1] - 15:21
**two** [16] - 5:9, 7:15, 9:25, 12:14, 14:23, 16:1, 16:5, 17:16, 18:13, 21:11, 22:9, 22:17, 24:10, 28:2, 31:3, 31:6
**two-way** [1] - 18:13
**type** [1] - 20:1
**types** [1] - 17:1

**U**

**ultimately** [1] - 12:8
**unclear** [1] - 18:5
**under** [1] - 14:13
**unfolding** [1] - 13:15
**uniformly** [1] - 5:20
**unique** [1] - 26:13
**UNIT** [1] - 2:11
**UNITED** [2] - 1:1, 1:12
**United** [2] - 32:6, 32:16
**unmistakably** [1] - 6:5
**up** [13] - 10:14, 12:10, 12:17, 13:18, 13:19, 13:20, 15:4, 20:8, 20:22, 22:7, 27:12, 30:22
**UT** [1] - 3:3
**Utah** [4] - 5:1, 5:2, 5:3, 13:25
**UTAH** [1] - 3:1
**utilization** [1] - 27:7
**utilize** [1] - 18:14

**V**

**value** [2] - 11:11
**various** [1] - 6:7
**vehicle** [1] - 18:14
**versa** [1] - 17:8
**versus** [1] - 15:12
**VIA** [1] - 3:14
**vice** [1] - 17:8
**view** [7] - 6:1, 9:3, 9:15, 13:15, 15:1, 15:6, 18:11
**VIOXX** [1] - 1:4
**Vioxx** [3] - 10:11, 28:7, 28:8
**VOICES** [1] - 31:10
**voluntary** [1] - 11:17
**volunteer** [1] - 11:17

**W**

**wagging** [1] - 15:23
**wagon** [2] - 25:4, 25:5
**wait** [2] - 12:5, 23:11, 31:3
**wake** [1] - 10:16
**wants** [1] - 21:19
**WARD** [2] - 3:17, 5:3
**Ward** [1] - 5:3
**WASHINGTON** [2] - 1:25, 2:17
**waste** [1] - 23:14
**wayward** [1] - 16:14
**week** [4] - 14:23, 24:9, 30:21, 31:4
**weeks** [2] - 15:24, 31:6
**weighty** [2] - 11:13, 22:12
**WEST** [1] - 3:9
**whatnot** [2] - 26:8, 26:9
**wheel** [2] - 25:4, 25:5
**WHEREUPON** [1] - 31:12
**wish** [1] - 30:21
**wishes** [1] - 12:20, 20:1
**witnesses** [3] - 16:25, 27:16, 27:23
**words** [1] - 11:25

**Y**

**year** [6] - 16:1, 19:3, 21:24, 21:25, 22:3, 24:17
**years** [5] - 9:7, 9:14, 15:24, 20:2, 28:21
**York** [9] - 4:10, 4:25, 8:2, 11:5, 12:22, 13:24, 30:9, 30:10
**YORK** [5] - 2:10, 2:10, 2:13, 2:22, 2:25
**Young** [1] - 10:25
**YOUNG** [16] - 2:7, 10:25, 14:1, 14:11, 16:13, 16:20, 16:24, 17:18, 18:24, 19:12, 21:2, 21:22, 21:24, 24:19, 25:4, 27:5

**Z**

**zero** [1] - 16:1