1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
2

3    ********************************************************************

4

     IN RE:  VIOXX PRODUCTS
5        LIABILITY LITIGATION
                              MDL DOCKET NO. 1657
6                             NEW ORLEANS, LOUISIANA
                              TUESDAY, MAY 11, 2010, 9:15 A.M.
7    THIS DOCUMENT RELATES TO:

8    GERTRUDE GUFFEY, VCN 1023736

9    ********************************************************************

10

                     TRANSCRIPT OF HEARING PROCEEDINGS
11            HEARD BEFORE SPECIAL MASTER PATRICK JUNEAU

12

13   APPEARANCES:

14

15   FOR THE PLAINTIFF:        DAVIS & NORRIS
                               BY:  TYLER C. VAIL, ESQUIRE
16                             2154 HIGHLAND AVENUE
                               BIRMINGHAM, AL  35205
17

18   FOR THE CLAIMS
     ADMINISTRATOR:            BROWN GREER
19                             BY:  ROMA PETKAUSKAS, ESQUIRE
                                    PHILIP R. STRUNK, ESQUIRE
20                             115 SOUTH 15TH STREET
                               SUITE 400
21                             RICHMOND, VA  23219

22

     SPECIAL MASTER:           JUNEAU DAVID
23                             BY:  PATRICK A. JUNEAU, ESQUIRE
                               THE HARDING CENTER
24                             1018 HARDING STREET, SUITE 202
                               P.O. DRAWER 51268
25                             LAFAYETTE, LA  70505

```
1    OFFICIAL COURT REPORTER:       CATHY PEPPER, CCR, RPR, CRR
                                    500 POYDRAS STREET, ROOM B406
2                                   NEW ORLEANS, LOUISIANA 70130
                                    (504) 589-7779
3

4    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.
5
```

1                              **I N D E X**

2

3    SPEAKERS                                              Page

4

5    SPECIAL MASTER JUNEAU.................................    4

6    ROMA PETKAUSKAS......................................    6

7    TYLER VAIL..........................................   14

8    SPECIAL MASTER JUNEAU...............................   25

9    MR. VAIL...........................................   28

10

11                           E X H I B I T S

12

13   DESCRIPTION                                           PAGE

14

15   SPECIAL MASTER 1....................................    4

16   SPECIAL MASTER 2....................................    4

17   SPECIAL MASTER 3....................................    4

18   SPECIAL MASTER 4....................................    4

19   SPECIAL MASTER 5....................................    4

20   SPECIAL MASTER 6....................................    5

21   GUFFEY 1...........................................   17

22   GUFFEY 2...........................................   20

23   GUFFEY 3...........................................   20

24   GUFFEY 4...........................................   20

25   GUFFEY 5...........................................   21

1                          **P-R-O-C-E-E-D-I-N-G-S**

2                      M O R N I N G   S E S S I O N

3                        TUESDAY, MAY 11, 2010

4                      (COURT CALLED TO ORDER)

5

6

7            THE DEPUTY CLERK:   All rise.

8            SPECIAL MASTER JUNEAU:   We'll open court.   I'm

9    Patrick Juneau, the appointed Special Master in this litigation.

10   We have before us a hearing.   This is in the case of *In re:*

11   *Vioxx Products Liability Litigation*, MDL No. 1657, Section "L."

12        Let me put into evidence some basic documents in this case,

13   which we may have reference to.

14        I'll mark the first document as Special Master 1.   That is

15   the audit notice of BrownGreer in the matter involving Gertrude

16   Guffey, G-U-F-F-E-Y.

17        Special Master 2 is an e-mail from Mr. Tyler Vail, an

18   attorney involved in the case, with an initial response to the

19   audit notice.

20        Special Master 3 is the claimant's formal response to the

21   audit notice.

22        Special Master 4 is BrownGreer, the claims administrator's

23   response to the claimant's response.

24        Special Master 5 is a reply, plaintiff's response to the

25   claims administrator's reply.   That letter is dated April 27,

1    2010.  It's a letter from Mr. Vail to the claims administrator.

2         Lastly, I have Special Master 6 is the notice of this actual

3    hearing, which is actually filed of record.

4              (Exhibits Special Master 1 through 6 were entered in

5    evidence.)

6              SPECIAL MASTER JUNEAU:  What we're here for today is to

7    have an actual hearing on the audit notice which was issued in

8    this case involving Gertrude Guffey.  I might add at this point

9    that what we call the *VCN number*, that's the identification

10   number in this Vioxx claim litigation, for Gertrude Guffey is

11   1023736.

12        First of all, I'm going to give everybody a chance to speak

13   and go through these matters, and we'll try to get isolated on

14   the issue, but I would first like to have BrownGreer, since the

15   audit notice was initiated by BrownGreer, to appear at the

16   podium, and I'll swear you in and let me ask you some questions

17   regarding this matter.

18        Give us your name, please.

19        You're going to have to speak up so everybody will have to

20   hear you.

21              MS. PETKAUSKAS:  Roma Petkauskas.

22              SPECIAL MASTER JUNEAU:  Raise your right hand, please.

23        Do you swear to tell the truth and nothing but the

24   truth, so help you God?

25              THE WITNESS:  I do.

**ROMA PETKAUSKAS**

1

2   was called as a witness and, after being first duly sworn by the

3   special master, was examined and testified on her oath as

4   follows:

5          SPECIAL MASTER JUNEAU:  Now, you are employed by whom?

6          MS. PETKAUSKAS:  I'm employed by BrownGreer and I'm an

7   attorney with the firm.  We are located at 115 South 15th Street,

8   Suite 400, Richmond, Virginia.

9          (WHEREUPON, there was a pause in the proceedings.)

10         SPECIAL MASTER JUNEAU:  Give us your name again for the

11  record.

12         MS. PETKAUSKAS:  Roma Petkauskas.  I'm associated with

13  BrownGreer.  We are located at 115 South 15th Street, Suite 400,

14  in Richmond, Virginia 23219.  We are the Vioxx claims

15  administrator office, and I'm an attorney working with

16  BrownGreer.

17         SPECIAL MASTER JUNEAU:  Did your office conduct an audit

18  analysis or audit of this particular claim?  I'm talking about

19  the particular claim of Gertrude Guffey.  That's VCN No. 1023736.

20         MS. PETKAUSKAS:  Yes, we did.

21         SPECIAL MASTER JUNEAU:  I have your report before me.

22  That's Special Master 1.  Is that, in fact, the product of your

23  analysis of this claim as reflected in Special Master 1, that's

24  original -- or notice of audit?

25         MS. PETKAUSKAS:  Yes, it is.  We analyzed the claim and

1    all our findings and conclusions are in this notice.

2            SPECIAL MASTER JUNEAU:  That's contained in

3    Special Master 1, correct?

4            MS. PETKAUSKAS:  Correct.

5            SPECIAL MASTER JUNEAU:  Now, as I understand, one of the

6    primary issues in this case had to do with the production of the

7    totality of the medical records, correct?

8            MS. PETKAUSKAS:  That's correct.

9            SPECIAL MASTER JUNEAU:  In the initial submissions that

10   we have in this case, there was an issue of whether or not

11   BrownGreer had received, I think it's 856 pages of the Huntsville

12   Hospital records; is that correct?

13           MS. PETKAUSKAS:  That is correct.

14           SPECIAL MASTER JUNEAU:  According to your records, did

15   y'all initially receive those records?

16           MS. PETKAUSKAS:  We did not receive the 856 pages of

17   Huntsville Hospital records.  We reviewed all of the submissions

18   from the counsel, and none of the submissions contain the records

19   from the Huntsville Hospital.

20           SPECIAL MASTER JUNEAU:  I'm not sure I understand the

21   last statement.  You said some of the records what?

22           MS. PETKAUSKAS:  The records that the counsel submitted

23   did not contain 856 pages of the Huntsville Hospital records.

24           SPECIAL MASTER JUNEAU:  Where did you obtain those

25   records, that's 856 pages of the Huntsville Hospital?

1        MS. PETKAUSKAS:  Correct.  During our audit review, we

2   have access to the -- I want to get the name right -- Litigation

3   Medical Records Depository, also referred to as *LMI*.  That's the

4   depository that has collected records for the purposes of

5   litigation, and we, as the Vioxx claims administrator's office,

6   have access to that database.

7        Through that database, we downloaded the records available

8   there for the claimant Gertrude Guffey.  Through that process we

9   obtained the file records from Huntsville Hospital, 856 pages of

10  those records.

11       SPECIAL MASTER JUNEAU:  Did you receive from counsel for

12  Ms. Guffey some subsequent records?

13       MS. PETKAUSKAS:  Yes, we actually received -- we

14  received from counsel several hard copy submissions and several

15  uploads through the web portal.

16       The first submission we received from counsel regarding this

17  claimant came in in November of 26 of 2008, and it included

18  several sets of records.  We've received 20 pages from a

19  Scottsboro hospital.  We've received another 25 pages from

20  Alabama Cardiology relating to Dr. Katta, K-A-T-T-A.  Both of

21  these said -- had stamps, Bates stamps notating that they came

22  from LMI.  So we could tell that these records, that counsel --

23  presumably counsel downloaded this these records from LMI.

24       In addition to this initial submission we received 13 pages

25  from Jackson County Hospital.

1        Then we received a two-page fax that was relating to the
2   June 25, 2003, hospitalization of Gertrude Guffey.  This
3   hospitalization is the event that Ms. Guffey claims to have
4   suffered her eligible event.
5        So that history and physical that we received was from
6   Huntsville Hospital, but these are the only -- the history and
7   physical is the only record that we received from the
8   Huntsville Hospital relating to that hospitalization.
9        Also, on November 26th we received, in that same hard copy
10  package, we received a one-page progress note from Dr. McDowell
11  and a certification of records signed by counsel.
12       We also received -- just being clear, that none of these
13  submissions contained the 856 pages of Huntsville Hospital
14  records, which is the complete set of records that we
15  subsequently found on LMI.
16       Subsequently to this initial submission of the claims
17  package on November 26th, we received -- on December 1st of 2008,
18  we received four copies of the affidavit from Gertrude Guffey
19  relating to her Vioxx use.
20       Then subsequently to that, on the 11th of December, we
21  received a one-page letter from Dr. Fore, F-O-R-E, that described
22  prescriptions and typical Vioxx use for Gertrude Guffey.
23       So these three submissions were the only hard copy
24  submissions that we received relating to this claimant.  The
25  November 26, 2008, was the most sizeable one.  Then it was

1   followed by the December 1st and December 11th submission.

2          Then, as I mentioned, we received several submissions from

3   counsel via uploads through the web portal.  Those came in in

4   May 28th of 2009.  We received ten pages of additional records,

5   and those we received in response to the notice of ineligibility

6   that we issued for the claimant.

7          Most of these pages, they all have been included with a

8   prior submission, and they included the history and physical for

9   the June 25, 2003, event.

10          There were a couple new pages that -- there was a

11   declaration of Dr. Fore and the affidavit of Gertrude Guffey.

12   Those related to the proof of use of Vioxx.  There were two

13   additional pages, one is to another of the claimants represented

14   by the firm belonging to Mary Ann Guffey.

15          To conclude, the submissions on October 13, 2009, we

16   received from counsel, in response to our notice of incomplete

17   claims package, we received a letter from counsel stating that

18   there were no additional neurology follow-up or proof of use

19   records.

20          This concludes -- sorry, and then in response to the notice

21   of points award, on December 23rd of 2009, we received three

22   pages as part of the appeal of the points award for the claimant,

23   and those three pages contained the same history and physical

24   relating to the June 25, 2003, event and another previous

25   submitted record.

1      So I just -- these are all the submissions that we received

2  from counsel relating to these claimants through hard copies and

3  the uploads.

4          SPECIAL MASTER JUNEAU:  I have in the submission of

5  Special Master 3, there was a record submitted from the

6  Highlands Medical Center, Scottsboro, Alabama.  This was

7  submitted by plaintiff's counsel.

8      Are you familiar with that record, ma'am?

9          MS. PETKAUSKAS:  I believe.

10          SPECIAL MASTER JUNEAU:  It's a history and physical.

11          MS. PETKAUSKAS:  Yes.

12          SPECIAL MASTER JUNEAU:  This was a document that was

13  submitted that talked about the possible transient ischemic

14  attack, and it referred to a diagnosis of ischemic attack.

15      Do you note that, ma'am?

16          MS. PETKAUSKAS:  Yes.  I just want to make sure, I

17  believe you are referring to the record that counsel included in

18  his response.

19          SPECIAL MASTER JUNEAU:  That's correct.

20          MS. PETKAUSKAS:  Okay.  That record is from the

21  Highlands Medical Center.  There is no date to identify it, but

22  it refers to the witness on the left side, "possible transient

23  ischemic attack."

24          SPECIAL MASTER JUNEAU:  The patient's name is who?

25          MS. PETKAUSKAS:  It's Guffey, Mary Ann.

 1          SPECIAL MASTER JUNEAU:  Now, the claimant that we have

 2    in this case is Gertrude Guffey, correct?

 3          MS. PETKAUSKAS:  Correct.

 4          SPECIAL MASTER JUNEAU:  Do y'all have another claimant

 5    by the name of Mary Ann Guffey, or do you know?

 6          MS. PETKAUSKAS:  Actually, counsel of Davis & Norris,

 7    the law firm, they represent another claimant named

 8    Guffey, Mary Ann.

 9          SPECIAL MASTER JUNEAU:  It's my understanding that this

10    record really then has nothing to do with Gertrude Guffey; is

11    that correct?  Is that your analysis or not?  Tell me what your

12    analysis is.

13          MS. PETKAUSKAS:  Correct.  This record we received from

14    counsel on several occasions.  First we received it as part of

15    the response to the notice of ineligibility on May 28, 2009.

16    Then this same record was attached to counsel's e-mail response

17    dated April 6, 2010, and to counsel's response dated April 15,

18    2010.

19       This record belongs to another claimant.  It's not for

20    Gertrude Guffey.  It's a record for Guffey, Mary Ann, and not for

21    Gertrude Guffey for whom this hearing is being conducted.

22          SPECIAL MASTER JUNEAU:  Let me ask you this question,

23    ma'am, to get to the meat of the coconut:  Really the issue there

24    involved in this matter is the material that goes to this Gate

25    Committee, which is part of this process, we want to make sure

1   that all of the material is given to the Gate Committee so they

2   can make an assessment.  The question is whether or not all of

3   the data that's gathered is given to that Gate Committee.  More

4   precisely, there's a question, I believe, as to whether or not

5   those records of the Huntsville Hospital, that's the 856 pages,

6   was given to the Gates Committee.

7        When this thing was originally submitted to the Gates

8   Committee, was that 856 pages submitted?

9        MS. PETKAUSKAS:  No.  Most noticeably, within these 856

10  pages there was a discharge summary for the claimant

11  Gertrude Guffey relating to her June 25, 2003, event that has a

12  discharge diagnosis of transient ischemic attack.

13       By the definition of the settlement agreement that is a

14  rule-out diagnosis for a qualifying event.  So, in other words,

15  the settlement agreement would not allow a claim to pass through

16  the injury gate based on the diagnosis of transient ischemic

17  attack.

18       SPECIAL MASTER JUNEAU:  My primary focus of the question

19  is, according to your records and the analysis that were done in

20  this case, those records, that is, the 856 pages of the

21  Huntsville Hospital, was not submitted to the Gates Committee

22  when it made its initial review; is that correct?

23       MS. PETKAUSKAS:  Correct.

24       SPECIAL MASTER JUNEAU:  Now, other than the questions

25  I've asked you, and, of course, I'm putting into evidence the

1  findings of the audit, is there anything else you have that would

2  be relevant or germane to the issue we're talking about here

3  today?

4         MS. PETKAUSKAS:  No, I don't believe so.

5         SPECIAL MASTER JUNEAU:  Thank you, ma'am.

6      Mr. Vail.  Good morning, how do you do?  Do you want to

7  state your name, please?

8         MR. VAIL:  Yes, sir.  Tyler Vail.

9         SPECIAL MASTER JUNEAU:  Do you want to raise your right

10 hand, please?

11        MR. VAIL:  Yes, sir.

12        SPECIAL MASTER JUNEAU:  Do you swear to tell the truth

13 and nothing but the truth, so help you God?

14        MR. VAIL:  Yes, sir.

15                          **TYLER VAIL**

16 was called as a witness and, after being first duly sworn by the

17 special master, was examined and testified on his oath as

18 follows:

19        SPECIAL MASTER JUNEAU:  Mr. Vail, tell me, you're a

20 practicing lawyer, of course, in Alabama?

21        MR. VAIL:  Yes, sir.

22        SPECIAL MASTER JUNEAU:  Identify your firm and your

23 relationship with this case.

24        MR. VAIL:  Yes, sir.  Tyler Vail with the law firm of

25 Davis & Norris located in Birmingham, Alabama, 2154 Highland

1   Avenue South, Birmingham, Alabama, 35205.

2       I am here representing Gertrude Guffey, a claimant in the

3   *Vioxx* claims process.

4           SPECIAL MASTER JUNEAU:  Okay.  Let me see if I can just

5   quickly get to the precise issue that we have before us today.

6   You had received, I assume, Mr. Vail, the original audit notice

7   by BrownGreer?

8           MR. VAIL:  Yes, sir, I did.

9           SPECIAL MASTER JUNEAU:  You heard my reference to your

10  responses?

11          MR. VAIL:  Yes, sir.

12          SPECIAL MASTER JUNEAU:  Which I'm just putting those of

13  record.

14      It seems to me that there are actually two issues here.  We

15  have a dispute apparently as to whether or not the records of the

16  Huntsville Hospital were originally submitted and reviewed by the

17  Gates Committee.

18      As I understand, your position is you said you submitted

19  those documents initially --

20          MR. VAIL:  Yes, sir.

21          SPECIAL MASTER JUNEAU:  -- to BrownGreer?

22          MR. VAIL:  Yes, sir.  Well, I can say this:  I do not

23  specifically remember any set of records that we did.  We sent in

24  over 2,000 sets, so I can't say I specifically remember.

25      What I can do is, this is two years ago, back in 2008, to go

1  through the process of how we handled the records, go back to my

2  office and try to find a trail of evidence, as much as I can.  We

3  did not submit electronically.  We submitted only hard copy form.

4  So I can only go back and determine, go back through the process

5  and see, okay, there is a trail that these records were sent in

6  and it appears that they did.

7      One of the things I did was try to get in touch with what's

8  been referred to as *LMRD*, the Litigation Medical Records

9  Depository, and *LMI*, the head of their archive department, to get

10  some proof that those shows that we downloaded all of the records

11  from their site, which would in turn imply that we did get the

12  records in our possession and forwarded them on to BrownGreer.

13      She sent me an e-mail that they are unable to do that.  They

14  don't maintain records about anybody accessing the sites or the

15  dates of anything that was downloaded or anything like that.  So

16  it was a dead end.

17      I'm trying anything to support our position.  But it's --

18  trying to prove you did something two years ago, there's really

19  not a whole lot of record for it.  It's tough.  So finally I'm in

20  the position of, what else can I do?  I've reached out to all

21  sources trying to get this.

22      If you would like to have this e-mail, I will submit it as

23  Special Master No. 7 at this time.

24           SPECIAL MASTER JUNEAU:  You want to put that in?

25           MR. VAIL:  Certainly.

1          SPECIAL MASTER JUNEAU:  You're handing me an e-mail, and

2     I'll mark that Guffey 1.

3          MR. VAIL:  Okay.

4          SPECIAL MASTER JUNEAU:  All right.  Sir, and I'm going

5     to allow that into evidence.

6          (Exhibit Guffey 1 was entered in evidence.)

7          MR. VAIL:  So the basic process of how we did it is we

8     would receive the records.  If they were LMI records, we would

9     download them all, print them all off, stack them up under the

10     claimant's file.  We would eventually review them and send them

11     in.

12          Prior to sending them in, they would have to be scanned into

13     a database so we would have a record of exactly what was sent to

14     the claims office.  This one database only contained records that

15     were sent in to the claims office.

16          As soon as I got this audit notice, I went to our *Vioxx*

17     database that had submitted records, clicked, I go up to

18     Gertrude Guffey, her event records were on there.  It would

19     indicate that they were sent in.  The only records on the

20     database were records that were scanned in prior to being mailed

21     out.

22          The last step, before they went out, they came to me.  I

23     reviewed what had been highlighted and tagged on each set of

24     records, and I made a personal injury database for every

25     claimant, not what they allege, but what was actually in the

1  medical records, whether it said small infarct, MI, stints, TIA,

2  anything like that.

3      You know, I pulled that database out, client injury

4  database.  You can ignore the highlighting and some of the

5  writing on here, but when I go to Gertrude Guffey, the injuries I

6  have for her are an MI in August of 2005, which is also an injury

7  that was submitted that ultimately failed, small stroke/TIA on

8  3/24/04.

9      I reviewed records that said she had a TIA, and I put this

10  in our personal database, which every client would have which was

11  submitted.  So she's in there.

12      All I can say is that's about all of the evidence I can get

13  that shows we submitted records.

14      One of the things that Roma had just said, that the first

15  submission they have from us was in November of 2008.  On the

16  originating claims form that was supposed to be sent in with

17  every claims package, Gertrude Guffey's, it states that a claims

18  package was sent in.  The claims form and profile form, as

19  defined in the settlement agreement, is dated 6/18/08, and has my

20  signature.

21      This is probably something they may not have with them, but

22  I'm sure they would have on file at their office.  So my first

23  submission or our first submission shows submission in June of

24  2008 as opposed to November.

25      Again, were these records in the submission?  I cannot say

1    and I will not say.

2         SPECIAL MASTER JUNEAU:  I understand what you're saying.

3    Let me ask you this additional question:  You heard the question

4    I asked of her earlier that in your response to this audit

5    notice, specifically addressing the issue of what was said in

6    diagnosis, for example, whether it was a diagnosis of transient

7    ischemic attack, you had submitted a record of, in support of

8    your position, of the Highlands Medical Center, Scottsboro,

9    Alabama, on a Mary Ann Guffey.  Now that's not the same person.

10        MR. VAIL:  No, sir, that's a mistake on our part.

11    We have several claimants with the same names and that has

12    happened before, but in this case, they actually had the same

13    providers.  There are two sets of records.  On Gertrude Guffey,

14    one from Highlands Medical Center and one from Jackson Hospital.

15    Mary Ann Guffey also has records from Highlands and records from

16    Jackson County Hospital.

17        So they have the same provider, same name, but that is no

18    way the same person.  That is a mistake.

19        SPECIAL MASTER JUNEAU:  But the submission, as we have

20    it here, your position was that when you submitted it, those

21    documents, that's how I would have read it, were to be submitted

22    and considered the claimant, but you're telling us here today

23    that that's an error regarding Mary Ann Guffey.  That record

24    should not be considered.

25        MR. VAIL:  In the Gertrude Guffey file, that's correct,

1    should not be considered.

2         SPECIAL MASTER JUNEAU:  I have reviewed in detail your

3    response insofar as what you thought the administrator had done,

4    had not done or whether records were submitted or not.  Do you

5    have, Mr. Vail, anything to add other than what you've said here

6    today and what's articulated in that written response to the

7    Special Master 5?

8         MR. VAIL:  Well, with regard to whether the records were

9    sent in, you know, everything we have would give me the

10   impression that our office did have possession of those records

11   and they were sent in.  It appears in the final database.  We

12   have her as a TIA/small stroke.  I was hoping LMI, the company

13   who archives these records, would help us out, but they don't

14   keep records of that.

15        I truly believe -- I have affidavits from my four employees

16   who were apparently working on this case that I'd also like to

17   introduce, if I could.  It just says they never withheld,

18   knowingly withheld any records and absolutely were never

19   instructed by me or anybody else.

20        SPECIAL MASTER JUNEAU:  Certainly you can put those in.

21   I'm going to mark these as Guffey 2.  That's the affidavit of

22   Robin Owens.

23        Guffey 3 is the affidavit of Bradley Miller.

24        Guffey 4 is the affidavit of, Lakecia, L-A-K-E-C-I-A,

25   Whitfield.

1      Guffey 5 is affidavit of Jared Parrish.

2      All of those will be offered into evidence.

3          (Exhibits Guffey 2 through 5 were entered in evidence.)

4      I understand your argument.  Any other documents that you

5  want to put in?  I'll be glad to receive them.

6          MR. VAIL:  No, sir, not relating to whether the records

7  were ever submitted.  That's it.

8      I would also just like to add, since it's on the record,

9  that our firm has handled several hundreds of these case.  There

10  is absolutely no pattern or practice of anything that we've done.

11  It appears to be an isolated incident.

12      Both sides have made mistakes in the past and usually it's

13  corrected with e-mails and maybe an incomplete claims package

14  notice or those sorts of things.  So we've both gone both ways

15  trying to get things done, trying to do the best we can, and

16  there's absolutely no intent on my part on these records.

17      With regard to her claim in the -- what the Gate Committee

18  reviewed or had access to, they may know exactly what they

19  reviewed.  We don't.  The process is not that transparent, and it

20  would take ten years to administer this thing if we were advised

21  of everything everybody was looking at when they were looking at

22  it.  I understand that part of it.

23      One of the questions, the way it was phrased in their reply

24  to the audit, did the Gate Committee ever have access to the

25  discharge summary that stated TIA from Huntsville Hospital, and

 1   they, in fact, put a no with a period.  I cited some sections of

 2   the settlement agreement which clearly give them access to all of

 3   the records that they had, all the records I submitted, all the

 4   records on the depositories that whether they were submitted or

 5   not or they could even go out and get additional records if they

 6   felt necessary.

 7       So what the Gate Committee had access to is not limited at

 8   all by whatever submissions that were actually given to them in

 9   hard copy.  They still had the available -- had access to go and

10   get whatever they wanted to get.

11       Try to substitute the decision what the claims administrator

12   did on the first stage for what the Gate Committee did in this

13   case is two totally different animals.  The Gate Committee or the

14   Special Master, special administrator -- claims administrator had

15   a very bright-line test.  Did they meet these three things and

16   that's it.

17       The Gate Committee was the crew put in charge to make the

18   decision about borderline cases.  What do we do?  This is a tough

19   case.  It may not be exact, it's does not meet the terms of the

20   settlement agreement, that's why we're here.  So I got this case,

21   and then they've looked at it and made a decision.  I think there

22   is plenty of evidence as far as Gertrude Guffey to put her in the

23   gray category at the very worst.

24       The CVA versus TIA, I would like to submit a few things on

25   that.

1    The first is the history and physical that was done in
2 Huntsville Hospital that they did have access to where the doctor
3 said it's small strokes.  She has recurrent strokes.  Strokes was
4 the term in everything.  It's the exact same doctor who did the
5 discharge summary the same day.  So it's not like we have
6 conflicting medical opinions from two different doctors.  It's
7 the exact same doctor calling it two different terms.
8    When you get into exactly what is a TIA versus a CVA, you
9 know, the mechanisms in the body are the same.  It's caused by
10 the same.  The symptoms are exactly the same.  The only
11 difference is, you know, in TIA your symptoms usually resolve in
12 24 hours.  If it's longer than 24 hours, there is lingering
13 symptoms, it will be classified as a *CVA*.
14    Ms. Guffey was in the hospital for three days.  She went on
15 the 25th, wasn't discharged until the 27th.  They gave her
16 three days.  She had lingering symptoms which require physical
17 therapy.  They gave her a prescription for physical therapy.  On
18 physical therapy it notes that she had a stroke.
19    So, right, there are some issues there.  The document says
20 *TIA*.  There is also eight documents that refer to it as a *stroke*.
21 I think that's where the Gate Committee really had to juggle
22 these cases and make a call.
23    We had, not to call them out by name -- and hopefully
24 nothing will happen to their status right now -- but we had 13
25 TIAs, clear TIAs get in by the Gate Committee.  We had several

1  cases that just absolutely were not qualified according to the
2  claims administrator that the Gate Committee let in.  They did
3  that for everybody.  That's why the percentage finally crept up
4  to about 50 percent for the case overall.

5      I tried to get with Andy Birchfield.  He's been busy dealing
6  with some other things about the Plaintiff's Steering Committee
7  fees with Judge Fallon so he didn't have the time to kind of come
8  in here and meet with us.  He's the chief member of the
9  Plaintiff's Steering Committee.  He's also a member of the Gate
10 Committee, and they let in cases that may or may not should have
11 gotten in.

12     I don't know why this case would have to be singled out by
13 saying there's absolutely no TIAs in here and a TIA would never
14 get in, it's an absolutely terminal record and that would never
15 happen, that's just not true.

16     The claims administrator did review this case, saw the TIA
17 in the record and failed it based on just stroke, which it seems
18 if they were missing that record, it makes you think about TIA
19 records, they would at least pass the injury phase on the claims
20 administrator review, but they did not.  They failed it.

21     In the boxes when you look at their, the notice, and it
22 talks about any of the records that may have been missing, you
23 know, the event record is submitted and the box is never checked,
24 so it's interesting.  They don't have the event records, or they
25 claim they don't, but they never let me know why.

1     If they did not have the claims records that shows TIA, then

2  she probably should have passed on the injury phase, but they

3  failed her too.

4     So the claims administrator's review of the case is entirely

5  different from the Gates Committee.  I hate -- if it happens,

6  that's fine.  I will accept whatever the Special Master's ruling

7  is on this, but from my client's perspective -- we know she

8  failed the claims administrator.  That's why she went to the

9  Gates Committee.  The Gates Committee let her in.  Then we got

10  the forms to deal with that phase of the settlement.

11     The claims administrator has now come back in -- the Gate's

12  Committee is rendering its own judgement.  Well, we already know

13  they failed her once, of course they are going to fail her again.

14  It's almost like this would have to go back to the Gate Committee

15  to review based on all of these records and see if they have any

16  different opinions as opposed to just the Special Master.

17     SPECIAL MASTER JUNEAU:  I'll issue a formal ruling, but

18  orally I will state that I do not find that there was any fraud

19  or deception or ill practice on the part of yourself or your

20  firm.

21     MR. VAIL:  Thank you, sir.

22     SPECIAL MASTER JUNEAU:  I do believe, though, that the

23  Gate Committee may very well pass this claim.  The issue on the

24  table is, do they have all the records before them?  Because

25  that's what the settlement agreement -- that's our obligation to

1  fulfill that requirement.

2       So what I'm going to rule is that this case should be

3  submitted to the Gate Committee with the full records in this

4  case involving the records of the Huntsville Hospital.  They may

5  very well pass the case, but I want them to have the entirety of

6  the record, excluding the submission that you made on

7  Mary Ann Guffey.

8       Now, one comment about that.  When you fire -- when you pull

9  a trigger on a gun, you're going to have live ammunition.  There

10  was no ill practice or fraud on your part, and I'm not finding

11  that.  Your firm has been very reputable and you have too, in

12  this case.

13       The same thing applies to the court administrator.  They are

14  doing their job under court order, and the records there for the

15  court order and the settlement agreement requires the submission

16  of certain medical records.

17       We have an issue in this case whether they were submitted or

18  not.  I don't find any ill practices on your part, but I know

19  that when the thing originally went to that Gates Committee, and

20  I'm convinced, that they didn't have those original records.

21  That may not change a thing about what we're talking about here,

22  but it will fulfill the functions of this agreement.

23       When I say pull the trigger of live ammunition, no ill

24  practice.  The court administrator, they did exactly what they

25  are supposed to do.

 1          The other comment is, we have to be very careful, you and

 2     your office should be, and it's true, your firm represents a

 3     multiple listing of claims in this action, but you have an

 4     obligation to submit to the Court, to submit the records you

 5     submit relating to those, to the issue that is before the Court.

 6     You had submitted a record of, even when we are in the litigation

 7     phase of this case, a record of Mary Ann Guffey, which has

 8     nothing to do -- and if we had picked that up, it would have been

 9     misleading if we'd not checked that.

10          I will encourage you to look for the live ammunition before

11     you fire the bullet, make sure you have the right information.

12          What I'm going to rule is, is that this case is to go back

13     through the Gate Committee.  There is no fraud, no deceit.

14     That's, in essence, what the ruling will say.  The case will

15     proceed in its normal fashion.

16          That's going to be done rather quickly, because, as you

17     know, we're trying to close the gap on all of these cases, and

18     this claim may very well pass it, but at least we'll know that

19     all of the records have been submitted.  If what you say has been

20     the case, well, then she'll stay in the situation that she's in.

21          So I'll issue just a short, formal ruling to that so it will

22     be of record, but the context of what I indicated verbally will

23     be what's in the ruling.

24               MR. VAIL:  Thank you.

25               SPECIAL MASTER JUNEAU:  I will inform the court

1   administrator that they are to immediately turn this matter over

2   to the Gates Committee for their review, excluding one record but

3   including the other records.

4        MR. VAIL:  Here are the entire set of the records that

5   have been brought that they never received, the Huntsville

6   Hospital 800 and some page set.  I can offer this to the Court to

7   make use of as I'm submitting the records.

8        SPECIAL MASTER JUNEAU:  I don't want to burden the

9   record.

10      I want to make sure, do you have these records?  You have

11  these records now?

12       MS. PETKAUSKAS:  Yes.

13       SPECIAL MASTER JUNEAU:  I think they have them.  That's

14  the point.  They had gotten them.  They got them after they

15  requested it from the depository, right?

16       MS. PETKAUSKAS:  Correct.

17       SPECIAL MASTER JUNEAU:  So they have the records --

18       MR. VAIL:  Okay.

19       SPECIAL MASTER JUNEAU:  -- so that there won't be any

20  delay in getting this thing processed.  I want you to know they

21  are as anxious to get this done as you are.

22      All of the documents that have been submitted will be

23  received in evidence and be part of the record in this matter.

24      I appreciate everybody coming, and thank you very much.

25       MR. VAIL:  Thank you, sir.

1          (WHEREUPON, at 10:04 a.m. the proceedings were

2  concluded.)

3                          *    *    *

4

5                       REPORTER'S CERTIFICATE

6

7

8      I, Cathy Pepper, Certified Realtime Reporter, Registered

9  Merit Reporter, Registered Professional Reporter, Certified Court

10 Reporter of the State of Louisiana, Official Court Reporter for

11 the United States District Court, Eastern District of Louisiana,

12 do hereby certify that the foregoing is a true and correct

13 transcript, to the best of my ability and understanding, from the

14 record of the proceedings in the above-entitled and numbered

15 matter.

16

17

18

19                          *s/Cathy Pepper*

20                          Cathy Pepper, CRR, RMR, CCR

21                          Official Court Reporter

22                          United States District Court

23

24

25

## 1

**1** [7] - 4:14, 5:4, 6:22, 6:23, 7:3, 17:2, 17:6
**1**...............................
......  [1] - 3:15
**1**...............................
...............  [1] - 3:21
**1018** [1] - 1:24
**1023736** [5] - 6:18, 5:11, 6:19
**10:04** [1] - 29:1
**11** [2] - 1:6, 4:3
**115** [3] - 1:20, 6:7, 6:13
**11th** [2] - 9:20, 10:1
**13** [3] - 8:24, 10:15, 23:24
**14** [1] - 3:7
**15** [1] - 12:17
**15th** [2] - 6:7, 6:13
**15TH** [1] - 1:20
**1657** [2] - 1:5, 4:11
**17** [1] - 3:21
**1st** [2] - 9:17, 10:1

## 2

**2** [3] - 4:17, 20:21, 21:3
**2,000** [1] - 15:24
**2**...............................
......  [1] - 3:16
**2**...............................
...............  [1] - 3:22
**20** [4] - 3:22, 3:23, 3:24, 8:18
**2003** [4] - 9:2, 10:9, 10:24, 13:11
**2005** [1] - 18:6
**2008** [6] - 8:17, 9:17, 9:25, 15:25, 18:15, 18:24
**2009** [4] - 10:4, 10:15, 10:21, 12:15
**2010** [5] - 1:6, 4:3, 5:1, 12:17, 12:18
**202** [1] - 1:24
**21** [1] - 3:25
**2154** [2] - 1:16, 14:25
**23219** [2] - 1:21, 6:14
**23rd** [1] - 10:21
**24** [2] - 23:12
**25** [6] - 3:8, 8:19, 9:2, 10:9, 10:24, 13:11
**25th** [1] - 23:15
**26** [2] - 8:17, 9:25
**26th** [2] - 9:9, 9:17

**27** [1] - 4:25
**27th** [1] - 23:15
**28** [2] - 3:9, 12:15
**28th** [1] - 10:4

## 3

**3** [3] - 4:20, 11:5, 20:23
**3**...............................
......  [1] - 3:17
**3**...............................
...............  [1] - 3:23
**3/24/04** [1] - 18:8
**35205** [2] - 1:16, 15:1

## 4

**4** [8] - 3:5, 3:15, 3:16, 3:17, 3:18, 3:19, 4:22, 20:24
**4**...............................
...............  [1] - 3:18
**4**...............................
...............  [1] - 3:24
**400** [3] - 1:20, 6:8, 6:13

## 5

**5** [5] - 3:20, 4:24, 20:7, 21:1, 21:3
**5**...............................
...............  [1] - 3:19
**5**...............................
...............  [1] - 3:25
**50** [1] - 24:4
**500** [1] - 2:1
**504** [1] - 2:2
**51268** [1] - 1:24
**589-7779** [1] - 2:2

## 6

**6** [4] - 3:6, 5:2, 5:4, 12:17
**6**...............................
...............  [1] - 3:20
**6/18/08** [1] - 18:19

## 7

**7** [1] - 16:23
**70130** [1] - 2:2
**70505** [1] - 1:25

## 8

**800** [1] - 28:6
**856** [10] - 7:11, 7:16, 7:23, 7:25, 8:9, 9:13, 13:5, 13:8, 13:9, 13:20

## 9

**9:15** [1] - 1:6

## A

**a.m** [1] - 29:1
**A.M** [1] - 1:6
**ability** [1] - 29:9
**above-entitled** [1] - 29:9
**absolutely** [6] - 20:18, 21:10, 21:16, 24:1, 24:13, 24:14
**accept** [1] - 25:6
**access** [8] - 8:2, 8:6, 21:18, 21:24, 22:2, 22:7, 22:9, 23:2
**accessing** [1] - 16:14
**according** [3] - 7:14, 13:19, 24:1
**action** [1] - 27:3
**actual** [2] - 5:2, 5:7
**add** [3] - 5:8, 20:5, 21:8
**addition** [1] - 8:24
**additional** [5] - 10:4, 10:13, 10:18, 19:3, 22:5
**addressing** [1] - 19:5
**administer** [1] - 21:20
**administrator** [14] - 5:1, 6:15, 20:3, 22:11, 22:14, 24:2, 24:16, 24:20, 25:8, 25:11, 26:13, 26:24, 28:1
**ADMINISTRATOR** [1] - 1:18
**administrator's** [4] - 4:22, 4:25, 8:5, 25:4
**advised** [1] - 21:20
**affidavit** [6] - 9:18, 10:11, 20:21, 20:23, 20:24, 21:1
**affidavits** [1] - 20:15
**ago** [2] - 15:25, 16:18
**agreement** [7] - 13:13, 13:15, 18:19, 22:2, 22:20, 25:25, 26:15,

26:22
**AL** [1] - 1:16
**Alabama** [6] - 8:20, 11:6, 14:20, 14:25, 15:1, 19:9
**allege** [1] - 17:25
**allow** [2] - 13:15, 17:5
**almost** [1] - 25:14
**ammunition** [3] - 26:9, 26:23, 27:10
**analysis** [4] - 6:18, 6:23, 12:11, 12:12, 13:19
**analyzed** [1] - 6:25
**Andy** [1] - 24:5
**animals** [1] - 22:13
**Ann** [10] - 10:14, 11:25, 12:5, 12:8, 12:20, 19:9, 19:15, 19:23, 26:7, 27:7
**anxious** [1] - 28:21
**appeal** [1] - 10:22
**appear** [1] - 5:15
**APPEARANCES** [1] - 1:13
**applies** [1] - 26:13
**appointed** [1] - 4:9
**appreciate** [1] - 28:24
**April** [3] - 4:25, 12:17
**archive** [1] - 16:9
**archives** [1] - 20:13
**argument** [1] - 21:4
**articulated** [1] - 20:6
**assessment** [1] - 13:2
**associated** [1] - 6:12
**assume** [1] - 15:6
**attached** [1] - 12:16
**attack** [6] - 11:14, 11:23, 13:12, 13:17, 19:7
**attorney** [3] - 4:18, 6:7, 6:15
**audit** [14] - 4:15, 4:19, 4:21, 5:7, 5:15, 6:17, 6:18, 6:24, 8:1, 14:1, 15:6, 17:16, 19:4, 21:24
**August** [1] - 18:6
**available** [2] - 8:7, 22:9
**Avenue** [1] - 15:1
**AVENUE** [1] - 1:16
**award** [2] - 10:21, 10:22

## B

**B406** [1] - 2:1
**based** [3] - 13:16,

24:17, 25:15
**basic** [2] - 4:12, 17:7
**Bates** [1] - 8:21
**BEFORE** [1] - 1:11
**belonging** [1] - 10:14
**belongs** [1] - 12:19
**best** [2] - 21:15, 29:9
**Birchfield** [1] - 24:5
**Birmingham** [2] - 14:25, 15:1
**BIRMINGHAM** [1] - 1:16
**body** [1] - 23:9
**borderline** [1] - 22:18
**box** [1] - 24:23
**boxes** [1] - 24:21
**Bradley** [1] - 20:23
**bright** [1] - 22:15
**bright-line** [1] - 22:15
**brought** [1] - 28:5
**BROWN** [1] - 1:18
**BrownGreer** [11] - 4:15, 4:22, 5:14, 5:15, 6:6, 6:13, 6:16, 7:11, 15:7, 15:21, 16:12
**bullet** [1] - 27:11
**burden** [1] - 28:8
**busy** [1] - 24:5
**BY** [5] - 1:15, 1:19, 1:23, 2:4, 2:4

## C

**CALLED** [1] - 4:4
**cannot** [1] - 18:25
**Cardiology** [1] - 8:20
**careful** [1] - 27:1
**case** [28] - 4:10, 4:12, 4:18, 5:8, 7:6, 7:10, 12:2, 13:20, 14:23, 19:12, 20:16, 21:9, 22:13, 22:19, 22:20, 24:4, 24:12, 24:16, 25:4, 26:2, 26:4, 26:5, 26:12, 26:17, 27:7, 27:12, 27:14, 27:20
**cases** [5] - 22:18, 23:22, 24:1, 24:10, 27:17
**category** [1] - 22:23
**CATHY** [1] - 2:1
**Cathy** [2] - 29:6, 29:12
**caused** [1] - 23:9
**CCR** [2] - 2:1, 29:12
**Center** [4] - 11:6, 11:21, 19:8, 19:14
**CENTER** [1] - 1:23

certain [1] - 26:16
certainly [2] - 16:25, 20:20
CERTIFICATE [1] - 29:5
certification [1] - 9:11
Certified [2] - 29:6, 29:7
certify [1] - 29:8
chance [1] - 5:12
change [1] - 26:21
charge [1] - 22:17
checked [2] - 24:23, 27:9
chief [1] - 24:8
cited [1] - 22:1
claim [10] - 5:10, 6:18, 6:19, 6:23, 6:25, 13:15, 21:17, 24:25, 25:23, 27:18
claimant [13] - 8:8, 8:17, 9:24, 10:6, 10:22, 12:1, 12:4, 12:7, 12:19, 13:10, 15:2, 17:25, 19:22
claimant's [3] - 4:20, 4:23, 17:10
claimants [3] - 10:13, 11:2, 19:11
CLAIMS [1] - 1:18
claims [26] - 4:22, 4:25, 5:1, 6:14, 8:5, 9:3, 9:16, 10:17, 15:3, 17:14, 17:15, 18:16, 18:17, 18:18, 21:13, 22:11, 22:14, 24:2, 24:16, 24:19, 25:1, 25:4, 25:8, 25:11, 27:3
classified [1] - 23:13
clear [2] - 9:12, 23:25
clearly [1] - 22:2
CLERK [1] - 4:7
clicked [1] - 17:17
client [2] - 18:3, 18:10
client's [1] - 25:7
close [1] - 27:17
coconut [1] - 12:23
collected [1] - 8:4
coming [1] - 28:24
comment [2] - 26:8, 27:1
Committee [29] - 12:25, 13:1, 13:3, 13:6, 13:8, 13:21, 15:17, 21:17, 21:24, 22:7, 22:12, 22:13, 22:17, 23:21, 23:25, 24:2, 24:6, 24:9, 24:10, 25:5, 25:9,

25:12, 25:14, 25:23, 26:3, 26:19, 27:13, 28:2
company [1] - 20:12
complete [1] - 9:14
COMPUTER [1] - 2:4
conclude [1] - 10:15
concluded [1] - 29:2
concludes [1] - 10:20
conclusions [1] - 7:1
conduct [1] - 6:17
conducted [1] - 12:21
conflicting [1] - 23:6
considered [3] - 19:22, 19:24, 20:1
contain [2] - 7:18, 7:23
contained [4] - 7:2, 9:13, 10:23, 17:14
context [1] - 27:22
convinced [1] - 26:20
copies [2] - 9:18, 11:2
copy [5] - 8:14, 9:9, 9:23, 16:3, 22:9
correct [17] - 7:3, 7:4, 7:7, 7:8, 7:12, 7:13, 8:1, 11:19, 12:2, 12:3, 12:11, 12:13, 13:22, 13:23, 19:25, 28:16, 29:8
corrected [1] - 21:13
counsel [16] - 7:18, 7:22, 8:11, 8:14, 8:16, 8:22, 8:23, 9:11, 10:3, 10:16, 10:17, 11:2, 11:7, 11:17, 12:6, 12:14
counsel's [2] - 12:16, 12:17
County [2] - 8:25, 19:16
couple [1] - 10:10
course [3] - 13:25, 14:20, 25:13
court [6] - 4:8, 26:13, 26:14, 26:15, 26:24, 27:25
COURT [3] - 1:1, 2:1, 4:4
Court [8] - 27:4, 27:5, 28:6, 29:7, 29:7, 29:8, 29:13, 29:13
crept [1] - 24:3
crew [1] - 22:17
CRR [2] - 2:1, 29:12
CVA [3] - 22:24, 23:8, 23:13

D

data [1] - 13:3
database [11] - 8:6, 8:7, 17:13, 17:14, 17:17, 17:20, 17:24, 18:3, 18:4, 18:10, 20:11
date [1] - 11:21
dated [4] - 4:25, 12:17, 18:19
dates [1] - 16:15
DAVID [1] - 1:22
DAVIS [1] - 1:15
Davis [2] - 12:6, 14:25
days [2] - 23:14, 23:16
dead [1] - 16:16
deal [1] - 25:10
dealing [1] - 24:5
deceit [1] - 27:13
December [5] - 9:17, 9:20, 10:1, 10:21
deception [1] - 25:19
decision [3] - 22:11, 22:18, 22:21
declaration [1] - 10:11
defined [1] - 18:19
definition [1] - 13:13
delay [1] - 28:20
department [1] - 16:9
depositories [1] - 22:4
Depository [2] - 8:3, 16:9
depository [1] - 8:4, 28:15
DEPUTY [1] - 4:7
described [1] - 9:21
DESCRIPTION [1] - 3:13
detail [1] - 20:2
determine [1] - 16:4
diagnosis [6] - 11:14, 13:12, 13:14, 13:16, 19:6
difference [1] - 23:11
different [5] - 22:13, 23:6, 23:7, 25:5, 25:16
discharge [4] - 13:10, 13:12, 21:25, 23:5
discharged [1] - 23:15
dispute [1] - 19:8
District [3] - 29:8, 29:13
DISTRICT [2] - 1:1, 1:1
DOCKET [1] - 1:5
doctor [3] - 23:2, 23:4, 23:7
doctors [1] - 23:6

document [3] - 4:14, 11:12, 23:19
DOCUMENT [1] - 1:7
documents [6] - 4:12, 15:19, 19:21, 21:4, 23:20, 28:22
done [8] - 13:19, 20:3, 20:4, 21:10, 21:15, 23:1, 27:16, 28:21
download [1] - 17:9
downloaded [4] - 8:7, 8:23, 16:10, 16:15
Dr [4] - 8:20, 9:10, 9:21, 10:11
DRAWER [1] - 1:24
duly [2] - 6:2, 14:16
during [1] - 8:1

E

e-mail [5] - 4:17, 12:16, 16:13, 16:22, 17:1
e-mails [1] - 21:13
EASTERN [1] - 1:1
Eastern [1] - 29:8
eight [1] - 23:20
electronically [1] - 16:3
eligible [1] - 9:4
employed [2] - 6:5, 6:6
employees [1] - 20:15
encourage [1] - 27:10
end [1] - 16:16
entered [3] - 5:4, 17:6, 21:3
entire [1] - 28:4
entirely [1] - 25:4
entirety [1] - 26:5
entitled [1] - 29:9
error [1] - 19:23
ESQUIRE [4] - 1:15, 1:19, 1:19, 1:23
essence [1] - 27:14
event [9] - 9:3, 9:4, 10:9, 10:24, 13:11, 13:14, 17:18, 24:23, 24:24
eventually [1] - 17:10
evidence [11] - 4:12, 5:5, 13:25, 16:2, 17:5, 17:6, 18:12, 21:2, 21:3, 22:22, 28:23
exact [3] - 22:19, 23:4, 23:7
exactly [5] - 17:13, 21:18, 23:8, 23:10,

26:24
examined [2] - 6:3, 14:17
example [1] - 19:6
excluding [2] - 26:6, 28:2
Exhibit [1] - 17:6
Exhibits [2] - 5:4, 21:3

F

fact [2] - 6:22, 22:1
fail [1] - 25:13
failed [6] - 18:7, 24:17, 24:20, 25:3, 25:8, 25:13
Fallon [1] - 24:7
familiar [1] - 11:8
far [1] - 22:22
fashion [1] - 27:15
fax [1] - 9:1
fees [1] - 24:7
felt [1] - 22:6
few [1] - 22:24
file [8] - 8:9, 17:10, 18:22, 19:25
filed [1] - 5:3
final [1] - 20:11
finally [2] - 16:19, 24:3
findings [2] - 7:1, 14:1
fine [1] - 25:6
fire [2] - 26:8, 27:11
firm [9] - 6:7, 10:14, 12:7, 14:22, 14:24, 21:9, 25:20, 26:11, 27:2
first [12] - 4:14, 5:12, 5:14, 6:2, 8:16, 12:14, 14:16, 18:14, 18:22, 18:23, 22:12, 23:1
focus [1] - 13:18
follow [1] - 10:18
follow-up [1] - 10:18
followed [1] - 10:1
follows [2] - 6:4, 14:18
FOR [2] - 1:15, 1:18
Fore [2] - 9:21, 10:11
FORE [1] - 9:21
foregoing [1] - 29:8
form [4] - 16:3, 18:16, 18:18
formal [3] - 4:20, 25:17, 27:21
forms [1] - 25:10
forwarded [1] - 16:12
four [2] - 9:18, 20:15
fraud [3] - 25:18, 26:10, 27:13

fulfill [2] - 26:1, 26:22
full [1] - 26:3
functions [1] - 26:22

**G**

G-U-F-F-E-Y [1] - 4:16
gap [1] - 27:17
Gate [17] - 12:24, 13:1, 13:3, 21:17, 21:24, 22:7, 22:12, 22:13, 22:17, 23:21, 23:25, 24:2, 24:9, 25:14, 25:23, 26:3, 27:13
gate [1] - 13:16
Gate's [1] - 25:11
Gates [9] - 13:6, 13:7, 13:21, 15:17, 25:5, 25:9, 26:19, 28:2
gathered [1] - 13:3
germane [1] - 14:2
GERTRUDE [1] - 1:8
Gertrude [21] - 4:15, 5:8, 5:10, 6:19, 8:8, 9:2, 9:18, 9:22, 10:11, 12:2, 12:10, 12:20, 12:21, 13:11, 15:2, 17:18, 18:5, 18:17, 19:13, 19:25, 22:22
given [4] - 13:1, 13:3, 13:6, 22:8
glad [1] - 21:5
God [2] - 5:24, 14:13
gray [1] - 22:23
GREER [1] - 1:18
Guffey [40] - 4:16, 5:8, 5:10, 6:19, 8:8, 8:12, 9:2, 9:3, 9:18, 9:22, 10:11, 10:14, 11:25, 12:2, 12:5, 12:8, 12:10, 12:20, 12:21, 13:11, 15:2, 17:2, 17:6, 17:18, 18:5, 19:9, 19:13, 19:15, 19:23, 19:25, 20:21, 20:23, 20:24, 21:1, 21:3, 22:22, 23:14, 26:7, 27:7
GUFFEY [6] - 1:8, 3:21, 3:22, 3:23, 3:24, 3:25
Guffey's [1] - 18:17
gun [1] - 26:9

**H**

hand [2] - 5:22, 14:10
handing [1] - 17:1

handled [2] - 16:1, 21:9
hard [6] - 8:14, 9:9, 9:23, 11:2, 16:3, 22:9
HARDING [2] - 1:23, 1:24
hate [1] - 25:5
head [1] - 16:9
hear [1] - 5:20
heard [2] - 15:9, 19:3
HEARD [1] - 1:11
hearing [4] - 4:10, 5:3, 5:7, 12:21
HEARING [1] - 1:10
help [3] - 5:24, 14:13, 20:13
hereby [1] - 29:8
HIGHLAND [1] - 1:16
Highland [1] - 14:25
Highlands [5] - 11:6, 11:21, 19:8, 19:14, 19:15
highlighted [1] - 17:23
highlighting [1] - 18:4
history [6] - 9:5, 9:6, 10:8, 10:23, 11:10, 23:1
hopefully [1] - 23:23
hoping [1] - 20:12
Hospital [19] - 7:12, 7:17, 7:19, 7:23, 7:25, 8:9, 8:25, 9:6, 9:8, 9:13, 13:5, 13:21, 15:16, 19:14, 19:16, 21:25, 23:2, 26:4, 28:6
hospital [2] - 8:19, 23:14
hospitalization [3] - 9:2, 9:3, 9:8
hours [2] - 23:12
hundreds [1] - 21:9
Huntsville [16] - 7:11, 7:17, 7:19, 7:23, 7:25, 8:9, 9:6, 9:8, 9:13, 13:5, 13:21, 15:16, 21:25, 23:2, 26:4, 28:5

**I**

identification [1] - 5:9
identify [2] - 11:21, 14:22
ignore [1] - 18:4
ill [4] - 25:19, 26:10, 26:18, 26:23
immediately [1] - 28:1

imply [1] - 16:11
impression [1] - 20:10
IN [1] - 1:4
incident [1] - 21:11
included [4] - 8:17, 10:7, 10:8, 11:17
including [1] - 28:3
incomplete [2] - 10:16, 21:13
indicate [1] - 17:19
indicated [1] - 27:22
ineligibility [2] - 10:5, 12:15
infarct [1] - 18:1
inform [1] - 27:25
information [1] - 27:11
initial [5] - 4:18, 7:9, 8:24, 9:16, 13:22
initiated [1] - 5:15
injuries [1] - 11:8
injury [6] - 13:16, 17:24, 18:3, 18:6, 24:19, 25:2
insofar [1] - 20:3
instructed [1] - 20:19
intent [1] - 21:16
interesting [1] - 24:24
introduce [1] - 20:17
involved [2] - 4:18, 12:24
involving [3] - 4:15, 5:8, 26:4
ischemic [6] - 11:13, 11:14, 11:23, 13:12, 13:16, 19:7
isolated [2] - 5:13, 21:11
issue [11] - 5:14, 7:10, 12:23, 14:2, 15:5, 19:5, 25:17, 25:23, 26:17, 27:5, 27:21
issued [2] - 5:7, 10:6
issues [3] - 7:6, 15:14, 23:19

**J**

Jackson [3] - 8:25, 19:14, 19:16
Jared [1] - 21:1
job [1] - 26:14
Judge [1] - 24:7
judgement [1] - 25:12
juggle [1] - 23:21
June [5] - 9:2, 10:9, 10:24, 13:11, 18:23
Juneau [1] - 4:9
JUNEAU [51] - 1:11,

1:22, 1:23, 4:8, 5:6, 5:22, 6:5, 6:10, 6:17, 6:21, 7:2, 7:5, 7:9, 7:14, 7:20, 7:24, 8:11, 11:4, 11:10, 11:12, 11:19, 11:24, 12:1, 12:4, 12:9, 12:22, 13:18, 13:24, 14:5, 14:9, 14:12, 14:19, 14:22, 15:4, 15:9, 15:12, 15:21, 16:24, 17:1, 17:4, 19:2, 19:19, 20:2, 20:20, 25:17, 25:22, 27:25, 28:8, 28:13, 28:17, 28:19
JUNEAU.....................
............. [2] - 3:5, 3:8

**K**

K-A-T-T-A [1] - 8:20
Katta [1] - 8:20
keep [1] - 20:14
kind [1] - 24:7
knowingly [1] - 20:18

**L**

LA [1] - 1:25
LAFAYETTE [1] - 1:25
Lakecia [1] - 20:24
LAKECIA [1] - 20:24
last [2] - 7:21, 17:22
Lastly [1] - 5:2
law [2] - 12:7, 14:24
lawyer [1] - 14:20
least [2] - 24:19, 27:18
left [1] - 11:22
letter [4] - 4:25, 5:1, 9:21, 10:17
LIABILITY [1] - 1:5
Liability [1] - 4:11
limited [1] - 22:7
line [1] - 22:15
lingering [2] - 23:12, 23:16
listing [1] - 27:3
litigation [4] - 4:9, 5:10, 8:5, 27:6
LITIGATION [1] - 1:5
Litigation [3] - 4:11, 8:2, 16:8
live [3] - 26:9, 26:23, 27:10
LMI [7] - 8:3, 8:22, 8:23, 9:15, 16:9, 17:8, 20:12

LMRD [1] - 16:8
located [3] - 6:7, 6:13, 14:25
look [2] - 24:21, 27:10
looked [1] - 22:21
looking [2] - 21:21
Louisiana [2] - 29:7, 29:8
LOUISIANA [3] - 1:1, 1:6, 2:2

**M**

ma'am [4] - 11:8, 11:15, 12:23, 14:5
mail [5] - 4:17, 12:16, 16:13, 16:22, 17:1
mailed [1] - 17:20
mails [1] - 21:13
maintain [1] - 16:14
mark [3] - 4:14, 17:2, 20:21
Mary [10] - 10:14, 11:25, 12:5, 12:8, 12:20, 19:9, 19:15, 19:23, 26:7, 27:7
master [2] - 6:3, 14:17
Master [16] - 4:9, 4:14, 4:17, 4:20, 4:22, 4:24, 5:2, 5:4, 6:22, 6:23, 7:3, 11:5, 16:23, 20:7, 22:14, 25:16
MASTER [58] - 1:11, 1:22, 3:5, 3:8, 3:15, 3:16, 3:17, 3:18, 3:19, 3:20, 4:8, 5:6, 5:22, 6:5, 6:10, 6:17, 6:21, 7:2, 7:5, 7:9, 7:14, 7:20, 7:24, 8:11, 11:4, 11:10, 11:12, 11:19, 11:24, 12:1, 12:4, 12:9, 12:22, 13:18, 13:24, 14:5, 14:9, 14:12, 14:19, 14:22, 15:4, 15:9, 15:12, 15:21, 16:24, 17:1, 17:4, 19:2, 19:19, 20:2, 20:20, 25:17, 25:22, 27:25, 28:8, 28:13, 28:17, 28:19
Master's [1] - 25:6
material [2] - 12:24, 13:1
matter [6] - 4:15, 5:17, 12:24, 28:1, 28:23, 29:10
matters [1] - 5:13

**MAY** [2] - 1:6, 4:3
**McDowell** [1] - 9:10
**MDL** [2] - 1:5, 4:11
**meat** [1] - 12:23
**MECHANICAL** [1] - 2:4
**mechanisms** [1] - 23:9
**medical** [4] - 7:7, 18:1, 23:6, 26:16
**Medical** [6] - 8:3, 11:6, 11:21, 16:8, 19:8, 19:14
**meet** [3] - 22:15, 22:19, 24:8
**member** [2] - 24:8, 24:9
**mentioned** [1] - 10:2
**Merit** [1] - 29:7
**MI** [2] - 18:1, 18:6
**might** [1] - 5:8
**Miller** [1] - 20:23
**misleading** [1] - 27:9
**missing** [2] - 24:18, 24:22
**mistake** [2] - 19:10, 19:18
**mistakes** [1] - 21:12
**morning** [1] - 14:6
**most** [3] - 9:25, 10:7, 13:9
**MR** [22] - 3:9, 14:8, 14:11, 14:14, 14:21, 14:24, 15:8, 15:11, 15:20, 15:22, 16:25, 17:3, 17:7, 19:10, 19:25, 20:8, 21:6, 25:21, 27:24, 28:4, 28:18, 28:25
**MS** [25] - 5:21, 6:6, 6:12, 6:20, 6:25, 7:4, 7:8, 7:13, 7:16, 7:22, 8:1, 8:13, 11:9, 11:11, 11:16, 11:20, 11:25, 12:3, 12:6, 12:13, 13:9, 13:23, 14:4, 28:12, 28:16
**multiple** [1] - 27:3

## N

**name** [8] - 5:18, 6:10, 8:2, 11:24, 12:5, 14:7, 19:17, 23:23
**named** [1] - 12:7
**names** [1] - 19:11
**necessary** [1] - 22:6
**neurology** [1] - 10:18
**never** [7] - 20:17,

20:18, 24:13, 24:14, 24:23, 24:25, 28:5
**new** [1] - 10:10
**NEW** [2] - 1:6, 2:2
**NO** [1] - 1:5
**none** [2] - 7:18, 9:12
**normal** [1] - 27:15
**NORRIS** [1] - 1:15
**Norris** [2] - 12:6, 14:25
**notating** [1] - 8:21
**note** [2] - 9:10, 11:15
**notes** [1] - 23:18
**nothing** [5] - 5:23, 12:10, 14:13, 23:24, 27:8
**notice** [17] - 4:15, 4:19, 4:21, 5:2, 5:7, 5:15, 6:24, 7:1, 10:5, 10:16, 10:20, 12:15, 15:6, 17:16, 19:5, 21:14, 24:21
**noticeably** [1] - 13:9
**November** [6] - 8:17, 9:9, 9:17, 9:25, 18:15, 18:24
**number** [2] - 5:9, 5:10
**numbered** [1] - 29:9

## O

**oath** [2] - 6:3, 14:17
**obligation** [2] - 25:25, 27:4
**obtain** [1] - 7:24
**obtained** [1] - 8:9
**occasions** [1] - 12:14
**October** [1] - 10:15
**OF** [2] - 1:1, 1:10
**offer** [1] - 28:6
**offered** [1] - 21:2
**office** [9] - 6:15, 6:17, 8:5, 16:2, 17:14, 17:15, 18:22, 20:10, 27:2
**Official** [2] - 29:7, 29:13
**OFFICIAL** [1] - 2:1
**once** [1] - 25:13
**one** [13] - 7:5, 9:10, 9:21, 9:25, 10:13, 16:7, 17:14, 18:14, 19:14, 21:23, 26:8, 28:2
**one-page** [2] - 9:10, 9:21
**open** [1] - 4:8
**opinions** [2] - 23:6, 25:16

**opposed** [2] - 18:24, 25:16
**orally** [1] - 25:18
**order** [2] - 26:14, 26:15
**ORDER** [1] - 4:4
**original** [3] - 6:24, 15:6, 26:20
**originally** [3] - 13:7, 15:16, 26:19
**originating** [1] - 18:16
**ORLEANS** [2] - 1:6, 2:2
**overall** [1] - 24:4
**Owens** [1] - 20:22
**own** [1] - 25:12

## P

**P.O** [1] - 1:24
**package** [6] - 9:10, 9:17, 10:17, 18:17, 18:18, 21:13
**Page** [1] - 3:3
**page** [4] - 9:1, 9:10, 9:21, 28:6
**PAGE** [1] - 3:13
**pages** [19] - 7:11, 7:16, 7:23, 7:25, 8:9, 8:18, 8:19, 8:24, 9:13, 10:4, 10:7, 10:10, 10:13, 10:22, 10:23, 13:5, 13:8, 13:10, 13:20
**Parrish** [1] - 21:1
**part** [10] - 10:22, 12:14, 12:25, 19:10, 21:16, 21:22, 25:19, 26:10, 26:18, 28:23
**particular** [2] - 6:18, 6:19
**pass** [5] - 13:15, 24:19, 25:23, 26:5, 27:18
**passed** [1] - 25:2
**past** [1] - 21:12
**patient's** [1] - 11:24
**PATRICK** [2] - 1:11, 1:23
**Patrick** [1] - 4:9
**pattern** [1] - 21:10
**pause** [1] - 6:9
**PEPPER** [1] - 2:1
**Pepper** [3] - 29:6, 29:12, 29:12
**percent** [1] - 24:4
**percentage** [1] - 24:3
**period** [1] - 22:1
**person** [2] - 19:9,

19:18
**personal** [2] - 17:24, 18:10
**perspective** [1] - 25:7
**Petkauskas** [2] - 5:21, 6:12
**PETKAUSKAS** [27] - 1:19, 5:21, 6:1, 6:6, 6:12, 6:20, 6:25, 7:4, 7:8, 7:13, 7:16, 7:22, 8:1, 8:13, 11:9, 11:11, 11:16, 11:20, 11:25, 12:3, 12:6, 12:13, 13:9, 13:23, 14:4, 28:12, 28:16
**PETKAUSKAS.........**
**..............................** [1] - 3:6
**phase** [4] - 24:19, 25:2, 25:10, 27:7
**PHILIP** [1] - 1:19
**phrased** [1] - 21:23
**physical** [9] - 9:5, 9:7, 10:8, 10:23, 11:10, 23:1, 23:16, 23:17, 23:18
**picked** [1] - 27:8
**PLAINTIFF** [1] - 1:15
**Plaintiff's** [2] - 24:6, 24:9
**plaintiff's** [2] - 4:24, 11:7
**plenty** [1] - 22:22
**podium** [1] - 5:16
**point** [2] - 5:8, 28:14
**points** [2] - 10:21, 10:22
**portal** [2] - 8:15, 10:3
**position** [5] - 15:18, 16:17, 16:20, 19:8, 19:20
**possession** [2] - 16:12, 20:10
**possible** [2] - 11:13, 11:22
**POYDRAS** [1] - 2:1
**practice** [4] - 21:10, 25:19, 26:10, 26:24
**practices** [1] - 26:18
**practicing** [1] - 14:20
**precise** [1] - 15:5
**precisely** [1] - 13:4
**prescription** [1] - 23:17
**prescriptions** [1] - 9:22
**presumably** [1] - 8:23
**previous** [1] - 10:24
**primary** [2] - 7:6, 13:18

**print** [1] - 17:9
**proceed** [1] - 27:15
**PROCEEDINGS** [3] - 1:10, 2:4, 4:1
**proceedings** [3] - 6:9, 29:1, 29:9
**process** [7] - 8:8, 12:25, 15:3, 16:1, 16:4, 17:7, 21:19
**processed** [1] - 28:20
**PRODUCED** [1] - 2:4
**product** [1] - 6:22
**production** [1] - 7:6
**Products** [1] - 4:11
**PRODUCTS** [1] - 1:4
**Professional** [1] - 29:7
**profile** [1] - 18:18
**progress** [1] - 9:10
**proof** [3] - 10:12, 10:18, 16:10
**prove** [1] - 16:18
**provider** [1] - 19:17
**providers** [1] - 19:13
**pull** [2] - 26:8, 26:23
**pulled** [1] - 18:3
**purposes** [1] - 8:4
**put** [8] - 4:12, 16:24, 18:9, 20:20, 21:5, 22:1, 22:17, 22:22
**putting** [2] - 13:25, 15:12

## Q

**qualified** [1] - 24:1
**qualifying** [1] - 13:14
**questions** [3] - 5:16, 13:24, 21:23
**quickly** [2] - 15:5, 27:16

## R

**raise** [2] - 5:22, 14:9
**rather** [1] - 27:16
**re** [1] - 4:10
**RE** [1] - 1:4
**reached** [1] - 16:20
**read** [1] - 19:21
**really** [4] - 12:10, 12:23, 16:18, 23:21
**Realtime** [1] - 29:6
**receive** [5] - 7:15, 7:16, 8:11, 17:8, 21:5
**received** [29] - 7:11, 8:13, 8:14, 8:16,

8:18, 8:19, 8:24, 9:1, 9:5, 9:7, 9:9, 9:10, 9:12, 9:17, 9:18, 9:21, 9:24, 10:2, 10:4, 10:5, 10:16, 10:17, 10:21, 11:1, 12:13, 12:14, 15:6, 28:5, 28:23
**record** [31] - 5:3, 6:11, 9:7, 10:25, 11:5, 11:8, 11:17, 11:20, 12:10, 12:13, 12:16, 12:19, 12:20, 15:13, 16:19, 17:13, 19:7, 19:23, 21:8, 24:14, 24:17, 24:18, 24:23, 26:6, 27:6, 27:7, 27:22, 28:2, 28:9, 28:23, 29:9
**RECORDED** [1] - 2:4
**records** [79] - 7:7, 7:12, 7:14, 7:15, 7:17, 7:18, 7:21, 7:22, 7:23, 7:25, 8:4, 8:7, 8:9, 8:10, 8:12, 8:18, 8:22, 8:23, 9:11, 9:14, 10:4, 10:19, 13:5, 13:19, 13:20, 15:15, 15:23, 16:1, 16:5, 16:10, 16:12, 16:14, 17:8, 17:14, 17:17, 17:18, 17:19, 17:20, 17:24, 18:1, 18:9, 18:13, 18:25, 19:13, 19:15, 20:4, 20:8, 20:10, 20:13, 20:14, 20:18, 21:6, 21:16, 22:3, 22:4, 22:5, 24:19, 24:22, 24:24, 25:1, 25:15, 25:24, 26:3, 26:4, 26:14, 26:16, 26:20, 27:4, 27:19, 28:3, 28:4, 28:7, 28:10, 28:11, 28:17
**Records** [2] - 8:3, 16:8
**recurrent** [1] - 23:3
**refer** [1] - 23:20
**reference** [2] - 4:13, 15:9
**referred** [3] - 8:3, 11:14, 16:8
**referring** [1] - 11:17
**refers** [1] - 11:22
**reflected** [1] - 6:23
**regard** [2] - 20:8, 21:17
**regarding** [3] - 5:17, 8:16, 19:23
**Registered** [2] - 29:6,

29:7
**related** [1] - 10:12
**RELATES** [1] - 1:7
**relating** [10] - 8:20, 9:1, 9:8, 9:19, 9:24, 10:24, 11:2, 13:11, 21:6, 27:5
**relationship** [1] - 14:23
**relevant** [1] - 14:2
**remember** [2] - 15:23, 15:24
**rendering** [1] - 25:12
**reply** [3] - 4:24, 4:25, 21:23
**report** [1] - 6:21
**Reporter** [6] - 29:6, 29:7, 29:7, 29:13
**REPORTER** [1] - 2:1
**REPORTER'S** [1] - 29:5
**represent** [1] - 12:7
**represented** [1] - 10:13
**representing** [1] - 15:2
**represents** [1] - 27:2
**reputable** [1] - 26:11
**requested** [2] - 28:15
**require** [1] - 23:16
**requirement** [1] - 26:1
**requires** [1] - 26:15
**resolve** [1] - 23:11
**response** [15] - 4:18, 4:20, 4:23, 4:24, 10:5, 10:16, 10:20, 11:18, 12:15, 12:16, 12:17, 19:4, 20:3, 20:6
**responses** [1] - 15:10
**review** [8] - 8:1, 13:22, 17:10, 24:16, 24:20, 25:4, 25:15, 28:2
**reviewed** [7] - 7:17, 15:16, 17:23, 18:9, 20:2, 21:18, 21:19
**Richmond** [2] - 6:8, 6:14
**RICHMOND** [1] - 1:21
**rise** [1] - 4:7
**RMR** [1] - 29:12
**Robin** [1] - 20:22
**Roma** [3] - 5:21, 6:12, 18:14
**ROMA** [3] - 1:19, 3:6, 6:1
**ROOM** [1] - 2:1
**RPR** [1] - 2:1
**rule** [3] - 13:14, 26:2, 27:12

**rule-out** [1] - 13:14
**ruling** [5] - 25:6, 25:17, 27:14, 27:21, 27:23

**S**

**s/Cathy** [1] - 29:12
**saw** [1] - 24:16
**scanned** [2] - 17:12, 17:20
**Scottsboro** [3] - 8:19, 11:6, 19:8
**Section** [1] - 4:11
**sections** [1] - 22:1
**see** [3] - 15:4, 16:5, 25:15
**send** [1] - 17:10
**sending** [1] - 17:12
**sent** [10] - 15:23, 16:5, 16:13, 17:13, 17:15, 17:19, 18:16, 18:18, 20:9, 20:11
**set** [5] - 9:14, 15:23, 17:23, 28:4, 28:6
**sets** [3] - 8:18, 15:24, 19:13
**settlement** [8] - 13:13, 13:15, 18:19, 22:2, 22:20, 25:10, 25:25, 26:15
**several** [8] - 8:14, 8:18, 10:2, 12:14, 19:11, 21:9, 23:25
**short** [1] - 27:21
**shows** [4] - 16:10, 18:13, 18:23, 25:1
**side** [1] - 11:22
**sides** [1] - 21:12
**signature** [1] - 18:20
**signed** [1] - 9:11
**singled** [1] - 24:12
**site** [1] - 16:11
**sites** [1] - 16:14
**situation** [1] - 27:20
**sizeable** [1] - 9:25
**small** [3] - 18:1, 18:7, 23:3
**soon** [1] - 17:16
**sorry** [1] - 10:20
**sorts** [1] - 21:14
**sources** [1] - 16:21
**SOUTH** [1] - 1:20
**South** [3] - 6:7, 6:13, 15:1
**SPEAKERS** [1] - 3:3
**SPECIAL** [58] - 1:11, 1:22, 3:5, 3:8, 3:15, 3:16, 3:17, 3:18,

3:19, 3:20, 4:8, 5:6, 5:22, 6:5, 6:10, 6:17, 6:21, 7:2, 7:5, 7:9, 7:14, 7:20, 7:24, 8:11, 11:4, 11:10, 11:12, 11:19, 11:24, 12:1, 12:4, 12:9, 12:22, 13:18, 13:24, 14:5, 14:9, 14:12, 14:19, 14:22, 15:4, 15:9, 15:12, 15:21, 16:24, 17:1, 17:4, 19:2, 19:19, 20:2, 20:20, 25:17, 25:22, 27:25, 28:8, 28:13, 28:17, 28:19
**special** [3] - 6:3, 14:17, 22:14
**Special** [17] - 4:9, 4:14, 4:17, 4:20, 4:22, 4:24, 5:2, 5:4, 6:22, 6:23, 7:3, 11:5, 16:23, 20:7, 22:14, 25:6, 25:16
**specifically** [3] - 15:23, 15:24, 19:5
**stack** [1] - 17:9
**stage** [1] - 22:12
**stamps** [1] - 8:21
**state** [2] - 14:7, 25:18
**State** [1] - 29:7
**statement** [1] - 7:21
**STATES** [1] - 1:1
**states** [1] - 18:17
**States** [2] - 29:8, 29:13
**stating** [1] - 10:17
**status** [1] - 23:24
**stay** [1] - 27:20
**Steering** [2] - 24:6, 24:9
**STENOGRAPHY** [1] - 2:4
**step** [1] - 17:22
**still** [1] - 22:9
**stints** [1] - 18:1
**Street** [2] - 6:7, 6:13
**STREET** [3] - 1:20, 1:24, 2:1
**stroke** [4] - 20:12, 23:18, 23:20, 24:17
**stroke/TIA** [1] - 18:7
**strokes** [3] - 23:3
**STRUNK** [1] - 1:19
**submission** [14] - 8:16, 8:24, 9:16, 10:1, 10:8, 11:4, 18:15, 18:23, 18:25, 19:19, 26:6, 26:15
**submissions** [11] -

7:9, 7:17, 7:18, 8:14, 9:13, 9:23, 9:24, 10:2, 10:15, 11:1, 22:8
**submit** [6] - 16:3, 16:22, 22:24, 27:4, 27:5
**submitted** [28] - 7:22, 10:25, 11:5, 11:7, 11:13, 13:7, 13:8, 13:21, 15:16, 15:18, 16:3, 17:17, 18:7, 18:11, 18:13, 19:7, 19:20, 19:21, 20:4, 21:7, 22:3, 22:4, 24:23, 26:3, 26:17, 27:6, 27:19, 28:22
**submitting** [1] - 28:7
**subsequent** [1] - 8:12
**subsequently** [3] - 9:15, 9:16, 9:20
**substitute** [1] - 22:11
**suffered** [1] - 9:4
**SUITE** [2] - 1:20, 1:24
**Suite** [2] - 6:8, 6:13
**summary** [3] - 13:10, 21:25, 23:5
**support** [2] - 16:17, 19:7
**supposed** [2] - 18:16, 26:25
**swear** [3] - 5:16, 5:23, 14:12
**sworn** [2] - 6:2, 14:16
**symptoms** [4] - 23:10, 23:11, 23:13, 23:16

**T**

**table** [1] - 25:24
**tagged** [1] - 17:23
**talks** [1] - 24:22
**ten** [2] - 10:4, 21:20
**term** [1] - 23:4
**terminal** [1] - 24:14
**terms** [2] - 22:19, 23:7
**test** [1] - 22:15
**testified** [2] - 6:3, 14:17
**THE** [5] - 1:15, 1:18, 1:23, 4:7, 5:25
**therapy** [2] - 23:17, 23:18
**they've** [1] - 22:21
**THIS** [1] - 1:7
**three** [6] - 9:23, 10:21, 10:23, 22:15, 23:14, 23:16
**TIA** [11] - 18:1, 18:9,

21:25, 22:24, 23:8,
23:11, 23:20, 24:13,
24:16, 24:18, 25:1
**TIA/small** [1] - 20:12
**TIAs** [3] - 23:25, 24:13
**TO** [2] - 1:7, 4:4
**today** [5] - 5:6, 14:3,
15:5, 19:22, 20:6
**totality** [1] - 7:7
**totally** [1] - 22:13
**touch** [1] - 16:7
**tough** [2] - 16:19,
22:18
**trail** [2] - 16:2, 16:5
**transcript** [1] - 29:9
**TRANSCRIPT** [2] -
1:10, 2:4
**transient** [5] - 11:13,
11:22, 13:12, 13:16,
19:6
**transparent** [1] -
21:19
**tried** [1] - 24:5
**trigger** [2] - 26:9,
26:23
**true** [3] - 24:15, 27:2,
29:8
**truly** [1] - 20:15
**truth** [4] - 5:23, 5:24,
14:12, 14:13
**try** [4] - 5:13, 16:2,
16:7, 22:11
**trying** [6] - 16:17,
16:18, 16:21, 21:15,
27:17
**TUESDAY** [2] - 1:6,
4:3
**turn** [2] - 16:11, 28:1
**two** [9] - 9:1, 10:12,
15:14, 15:25, 16:18,
19:13, 22:13, 23:6,
23:7
**two-page** [1] - 9:1
**TYLER** [3] - 1:15, 3:7,
14:15
**Tyler** [3] - 4:17, 14:8,
14:24
**typical** [1] - 9:22

### U

**ultimately** [1] - 18:7
**unable** [1] - 16:13
**under** [2] - 17:9, 26:14
**United** [2] - 29:8,
29:13
**UNITED** [1] - 1:1
**up** [6] - 5:19, 10:18,
17:9, 17:17, 24:3,

27:8
**uploads** [3] - 8:15,
10:3, 11:3

### V

**VA** [1] - 1:21
**Vail** [8] - 4:17, 5:1,
14:6, 14:8, 14:19,
14:24, 15:6, 20:5
**VAIL** [23] - 1:15, 14:8,
14:11, 14:14, 14:15,
14:21, 14:24, 15:8,
15:11, 15:20, 15:22,
16:25, 17:3, 17:7,
19:10, 19:25, 20:8,
21:6, 25:21, 27:24,
28:4, 28:18, 28:25
**VAIL..........................
..................** [1] - 3:7
**VAIL..........................
..................** [1] - 3:9
**VCN** [3] - 1:8, 5:9,
6:19
**verbally** [1] - 27:22
**versus** [2] - 22:24,
23:8
**via** [1] - 10:3
**Vioxx** [9] - 4:11, 5:10,
6:14, 8:5, 9:19, 9:22,
10:12, 15:3, 17:16
**VIOXX** [1] - 1:4
**Virginia** [2] - 6:8, 6:14

### W

**ways** [1] - 21:14
**web** [2] - 8:15, 10:3
**WHEREUPON** [2] -
6:9, 29:1
**Whitfield** [1] - 20:25
**whole** [1] - 16:19
**withheld** [2] - 20:17,
20:18
**WITNESS** [1] - 5:25
**witness** [3] - 6:2,
11:22, 14:16
**words** [1] - 13:14
**worst** [1] - 22:23
**writing** [1] - 18:5
**written** [1] - 20:6

### Y

**y'all** [2] - 7:15, 12:4
**years** [3] - 15:25,
16:18, 21:20
**yourself** [1] - 25:19