

Brian Loncar*
William E. Hymes*
Susan Allen†
Geoffrey B. Dashner*
Nicholas C. Wiseman*
Gorge M. Rubio*
John Curington*
Darren Grant*

Shawn Thompson*
David J. LaRue*
Thomas W. Kelty*
James M. Bridge*
Sergio E. Aleman*
Paul R. Weiss, III*
Franklin D. Azar■

ATTORNEYS AT LAW   Dallas • Tyler • Wichita Falls • Beaumont • El Paso • McAllen

January 6, 2005

**RECEIVED JUN 4 2010**

**Via Regular Mail**
Dorothy Griffin
3801 Magnolia Street #31
Texarkana, TX. 75503

    RE:    Vioxx Litigation

Dear Ms. Griffin:

    Thank you for contacting Loncar and Associates.

    We have recently received your contract, information package and proof of use. After reviewing your file, you indicated to our office that you **did** sustain an injury from the use of Vioxx.

    In order for our office to obtain your records regarding your Heart Attack, Stroke, Kidney Failure or Pulmonary Embolism, our office must have in writing the name and address of the facility to which you were treated. Please complete the enclosed Medical History and return it immediately, so we can begin working on your case. We have enclosed a postage-paid return envelope for you to return the medical history.

    Also, if at any time you move or change your phone numbers, this must be sent to our office in writing as well. We will be in contact with you within the next few months upon receiving any new information regarding your case.

    Thank you for your attention to this matter. Should you have any questions or concerns, please feel free to email our office at LoncarVioxx@yahoo.com.

Very truly yours,

Brian Loncar

10440 N. Central Expwy. Suite 1000 Dallas, TX 75231
214-747-0422 • 800-285-4878 • Fax: 214-382-5838 • Litigation Fax: 214-382-5841
www.brianloncar.com
† Board certified personal injury trial law - Texas board of legal specialization   * Not certified by the Texas board of legal specialization   ■ Licensed in Colorado



Brian Loncar
William E. Hymes
Gorge M. Rubio*
John Curington
Mark Rosenbloom*

David J. LaRue
James M. Bridge
Paul R. Weiss, III
John C. Wren
Brandon Ramsey

ATTORNEYS AT LAW    Dallas • Tyler • Wichita Falls • Beaumont • El Paso • McAllen

August 11, 2008

**Via regular mail**
Dorothy Griffin
1426 Hillside Circle
Lindale, TX 75771

       Re:  Vioxx Settlement Disclosure

Dear Ms. Griffin:

  After more than three years of hard-fought and difficult litigation, Merck has agreed to a settlement program to resolve certain Vioxx-related claims involving plaintiffs who have suffered a heart attack (including sudden cardiac death) or stroke. As you might have heard through the media, Merck has agreed to pay one sum, $4.85 billion, which will be allocated among thousands of qualifying clams based upon an evaluation of each claimant's medical records by a Claims Administrator. Details regarding the Settlement Program, including eligibility requirements and the claims valuation process, are enclosed.

  As your legal counsel, we have carefully reviewed the details of the Settlement Program Agreement and believe that it is in the best interest of each of our qualifying clients. We therefore strongly recommend that you agree to participate.

  Our strong recommendation that each of our qualifying clients participates is based in large part, on the following facts:

- To date, throughout the country there have been 16 Vioxx trials involving 17 plaintiffs. Of these trails, plaintiffs have won 5, Merck has won 7, and the remaining 5 are awaiting a new trial. Merck has appealed each of the five cases in which the plaintiff was victorious, and all of those appeals are still pending.

- To Date, not even the five plaintiffs with hard fought victories against Merck at trail have received any money from Merck. The first verdict in favor of a plaintiff was in August 2005, more than two years ago. Merck has not yet paid a single dollar of that verdict, and has no legal obligation to do so unless and until all appeals are exhausted and the verdict in favor of the plaintiff is upheld.

- If Merck insists on taking each individual case to trail, it could take decades to obtain verdicts in all the Vioxx-related cases currently pending against Merck, and additional years for Merck to exhaust its appeals in cases in which the plaintiff prevailed.

- There is one case currently pending before the United States Supreme Court that could result in changes in the law that would limit the ability of

424 S. Central Expwy. Dallas, TX 75201
214-747-0422 • 800-285-4878 • Fax: 214-382-5838 • Litigation Fax: 214-382-5841
www.brianloncar.com
*Board Certified-Personal Injury Trial Law-Texas Board of Legal Specialization  *Licensed in Illinois

plaintiffs to recover against drug companies if a drug has been approved for marketing by the FDA.

Given all of the above, we believe that the claim valuation process and the estimated settlement values ranges under the Settlement Program Agreement are fair ones. We further believe that participation in the Settlement Program is the best opportunity for you to receive fair compensation for your Vioxx claims in the foreseeable future.

**If you choose to follow our recommendation and agree to participate in this Settlement Program, you should <u>carefully review</u> all of the enclosed documents, and then sign and return this letter (where indicated at the end)** as soon as possible. Your properly executed Release and your medical records must be submitted to the Claims Administrator for your claim to be processed. Please note, however, that Merck has the option not to fund the Settlement Program and to terminate the Settlement Program if a minimum number of potentially eligible Claimants nationwide doe's not agree to participate. In the event of such termination by Merck any Release you sign in the future would be void, your claim would return to the tort system, and you would be returned essentially to the same position you are in today.

You should also note that at this time neither we nor anyone else can tell you or any other Claimant what your precise settlement value will be under the Settlement Program. This is because the settlement fund of Claimants alleging a heart attack/myocardial infarction ("MI") under the Settlement Program is limited to $4 billion, and the settlement fund for Claimants alleging a stroke ("IS") is limited to $850 million, from which all potentially eligible, participating claimants must be paid. The Claims Administrator will not be able to determine the precise value of any claim until he knows: (a) how many of the potentially eligible Claimants nationwide will be participation in the Settlement Program; and (b) what each participating Claimant's medical records state regarding each Claimant's injury type, level of injury, duration of Vioxx use, and certain other aspects of the Claimant's Vioxx use and medical history that would be expected to affect the value of the Claimant's claim within the tort system.

Due to the volume of cases to be reviewed by the Claims Administrator, we anticipate that the clam review and valuation process will take one to two years. Participating Claimant's precise settlement values will not known until that process is complete. However, an interactive website is available for you to input basic information about your claim to determine an estimate of its gross settlement value (before attorney's fees and expenses are deducted) based on the information you input. To access the claim valuation calculator, go to www.OfficialVioxxSettlement.com.

In addition, the Settlement Program provides that an initial payment of approximately forty percent (40%) of a qualifying Claimant's estimated final gross settlement value will be made to each participating Claimant whose properly executed Release and medical records are timely submitted to the Claims Administrator. These initial payments to qualifying MI Claimants may be as early as September 2008, and may be as early as March 2008 for qualifying IS Claimants. The remainder of qualifying Claimant's final gross settlement value will be paid when all eligible, participating claims

nationwide have been fully processed, which is currently expected to be in approximately one to two years.

**The decision whether to participate in the Settlement Program is yours to make but we strongly recommend that you participate.** If you wish to follow our recommendation and agree to participate, please note that by doing so you are agreeing **both** to give up your right to a trial against Merck **and** to accept the settlement value that your claim will be accorded through the Settlement Program.

As you know, trail is risky because you could win or lose your case against Merck. If you go to trial, the jury could award you more, less or no money from this Defendant. In addition, even if you are successful at trial, a Defendant always has the right to appeal your jury award. The appeal process may take several years to complete and will result in addition costs and expenses in your case. Any monies awarded by the jury cannot be paid to you until the appeal process is complete and a finding has been made in your favor. Further, an appeal could also result in a new trail being ordered and the entire litigation process would then start over again. Thus, provided you have a qualifying claim, there is little doubt that you will receive compensation for your claim more quickly under the Settlement Program than through the tort system. You should also note that if you decline your settlement offer, we may be obligated under the terms of the Settlement Program to seek permission form the court to withdraw as your counsel to the extent permitted by the rules of legal ethics. Whether we would remain counsel-of-record in your case would then be determined by the court.

The enclosed Description of Settlement Program and Claim Valuation Examples explain the Program in more detail. Please review them carefully.

We are in receipt of the materials you returned to us from our November 21, 2007 mailing. Recently we attended a seminar in New Orleans concerning the settlement. At that time, it was explained that some of the documents you executed will need to be re-signed. This is because the Claims Administrators will be bar coding some of the documents and the ones you have previously executed contained no bar codes. The January 15, 2008 deadline will not be affected by this change. We will forward your bar code documents for signature as soon as the Trust prepares them. YOU DO NOT NEED TO RESPOND TO THIS LETTER. THIS CORRESPONDENCE IS FOR INFORMATIONAL PURPOSES ONLY.

Should you have immediate questions, please feel free to call us at (800) 285-4878 and ask for John Coveney at extension 3232. We look forward to continuing to serve you over the coming months as we work to bring your Vioxx claim to a successful resolution.

Very truly yours,

*Brian Loncar*

Brian Loncar

I accept the recommendation of my attorney and agree to participate in the Settlement Program as described in this letter and the enclosed "Description of Settlement Agreement."

Signature: _____    _____
           Dorothy A Griffin                   Date

# VIOXX CONTINGENCY FEE CONTRACT

The completion and submission of this questionnaire, or photocopy thereof, establishes an attorney-client relationship and provides preliminary information necessary to evaluate the merits of a prospective claim as a result of client's ingestion of Vioxx (Refoxibe).

## I. PERSONAL INFORMATION

First Name: _____ Last Name: _____ Sex: Male _____ Female _____

Address: _____ City: _____ State: _____ Zip: _____

Home Ph.: _____ Alt. Phone No. _____ Date of Birth: _____

## II. PURPOSE OF REPRESENTATION

, the undersigned, hereby constitute, appoint and employ, Brian Loncar and Loncar & Associates, P.C., of 424 South Central Expressway, Dallas, Texas 75201 as attorneys at law, and in fact, to investigate the feasibility of the client's potential Vioxx claim or suit, prepare and prosecute any claim or suit for damages, injuries, both statutory and actual, suffered by the above mentioned client. Said attorney is hereby authorized to make claim and, if necessary, to bring individual suit, against **"any wrongful party"**, any other person, entity or corporation that is legally responsible.

I hereby also grant authority to my attorney to include my claim in a Class Action. I understand my case will be one (1) of many similar cases and if this happens then the court will determine any and all fees. The attorney is authorized to refer my case and/or involve any additional attorney or multiple attorneys, referenced as an attorney group, they deem appropriate.

The Client authorizes the Firm to sign for the Client and in the Client's name: powers of attorney, authorizations, letters of protection, pleadings/documents filed with the court, checks, drafts, endorsements, and all other documents necessary to further Client's claims. The Firm is further authorized to endorse the Client's name to all checks and drafts or other instruments necessary to pay or settle said claims, and to execute for, and on behalf of the Client, any and all receipts, releases, and discharges necessary to effect settlement. The Firm is vested with full right to collect and pay all Attorney's fees, monies, and expenses then owing and incurred by the Client, including but not limited to, physicians, hospitals and those described in paragraph V. The Client agrees that after giving the Attorney verbal authority to settle their claim, they will execute a release of the defendant and their insurance company before a disbursement sheet will be prepared, before any medical reductions are attempted, and before any hospital liens and/or LOP's are satisfied. The final settlement check will then be ordered from the insurance company.

## III. ATTORNEY'S FEES- NO FEE UNLESS YOU WIN

I hereby grant The Attorney group retains a lien on the attorney's file, cause of action, settlements and judgments, to the extent of the share and sums herein mentioned as attorney fees, costs and expenses. This lien remains in effect not withstanding premature termination of this contract by me. The Attorney Group retains the discretion to withdraw as my attorney if in the attorney's opinion probable recovery would not justify litigation. The undersigned also hereby sells, transfers and conveys, and agrees to pay and deliver to said attorney:

> 40 % of whatever amount may be collected from any party, prior to and including the institution and filing of an action in the appropriate court of competent jurisdiction;

## IV. EXPENSES- NO CLIENT COSTS UNLESS YOU WIN

Said attorney is hereby given a lien of the cause of action for expenses properly incurred in the investigation, preparation, and prosecution of this claim or suit, including, but not limited to, court costs, deposition fees, witness expenses, expenses for photographs and exhibits, and any other cost expended in said cause unless otherwise agreed. All such expenses shall be reimbursed out of the amount collected.

## V. STATUTE OF LIMITATIONS

Statutes of limitations are laws, which state the time periods within which certain types of lawsuits must be filed. Any actionable claim you may have could be barred forever should you not file suit within the appropriate time. The legal evaluation of the client's case may take six (6) months after the attorney group receives the signed contract, and any and all required documents necessary before the attorney group has completed the evaluation of the merits of the prospective claim. The client acknowledges and accepts the risk of such delay and waives any claim against the attorney group if Statute of Limitations period expires during this period of review.

Signature _____ Date _____

## COMPLETE, SIGN AND RETURN TO:
### LONCAR & ASSOCIATES
*424 S Central Expy*
*Dallas, Texas 75201*
*Ph. 214-747-0422 Fax. 214-382-4163*

# GOVERNMENT MEDICAL LIEN QUESTIONNAIRE

## A. ENROLLING CLAIMANT INFORMATION

| Name | First Name | MI | Last Name |
|---|---|---|---|
| SSN | | | |

## B. GOVERNMENT MEDICAL BENEFITS

1) **ENTITLEMENT TO GOVERNMENT BENEFITS:** Check all of the government programs below for which you have been entitled for any amount of time since your first date of ingestion of Vioxx:

   ❑ Medicare           ❑ Indian Health Services
   ❑ Medicaid           ❑ TRICARE
   ❑ Department of Veterans Affairs (VA)
   ❑ Other Government Healthcare Program: _____
   ❑ Check here if you have **NOT** been entitled to any of the above-mentioned governmental benefits at any time since your first date of ingestion of Vioxx.

2) Have any of the agencies listed above sent you any correspondence or made inquiries about your claim against Merck and / or potential Settlement Payment?
   ❑ Yes   ❑ No

3) If you answered "Yes" to #2 above, please check below which agencies have sent you any correspondence or made inquiries about your claim against Merck and / or potential Settlement Payment. Please include a copy of any correspondence when you return this Questionnaire to your attorney.

   ❑ Medicare           ❑ Indian Health Services
   ❑ Medicaid           ❑ TRICARE
   ❑ Department of Veterans Affairs (VA)
   ❑ Other Government Healthcare Program: _____

Please return this Questionnaire (and any documents related to #3 above) immediately to your attorney so that he / she can provide this information to the Claims Administrator **VOID** deadline.

1/24/2008                                    1

# DESCRIPTION OF SETTLEMENT AGREEMENT

Merck & Co. ("Merck") has entered into a Settlement Agreement ("Agreement") with certain plaintiffs' counsel ("Negotiating Plaintiffs' Counsel") in order to establish a nationwide settlement program to resolve the claims of certain individuals who have suffered a heart attack, stroke, or sudden cardiac death resulting from their use of Vioxx (the "Vioxx Claimant(s)").

## Activation of the Settlement Program

In order for claims to be paid under the Settlement Program, counsel representing Vioxx Claimants must file with the relevant court no later than January 15, 2008, a Registration Affidavit for every Vioxx client they represent as primary counsel, regardless of whether the client suffered a heart attack, ischemic stroke, or sudden cardiac death resulting from Vioxx. The Registration Affidavit will contain basic information about each client and the injury the client alleges.

After the Registration Affidavits have been submitted, the Claims Administrator will calculate the total number of Vioxx Claimants that are eligible to participate ("Eligible Claimants") in the Settlement Program. A Vioxx Claimant will be considered eligible to participate in the Settlement Program if:

- the Claimant has a filed Vioxx lawsuit pending in any jurisdiction or a Vioxx claim that was tolled under the Tolling Agreement established by the MDL Court; and
- the Claimant alleged in his/her lawsuit or tolling paperwork that the Claimant (or the Deceased or minor for whom the Claimant is the Legal Representative) suffered a heart attack, ischemic stroke, or sudden cardiac death as a result of Vioxx ingestion.

In order for the Settlement Program to be activated and for Merck to be required to fund the settlement, at least 85% of all Eligible Claimants must agree to participate in the Settlement Program. All documents necessary for a Vioxx Claimant to participate in the Settlement Program must be submitted to the Claims Administrator by March 1, 2008. Sufficient numbers of Eligible Claimants from each of the following categories must agree to participate in the Settlement Program in order for the Program to be Activated:

- Vioxx Claimants registered as alleging a heart attack or myocardial infarction or qualifying myocardial infarction or sudden cardiac death ("MI Eligible");
- Vioxx Claimants registered as alleging a stroke or other qualifying ischemic cerebrovascular event ("IS Eligible");
- Vioxx Claimants registered as alleging use of Vioxx for more than 12 months prior to a qualifying heart attack ("MI") or qualifying stroke ("IS");
- Vioxx Claimants registered as alleging death as an injury.

## Eligible Claimants – Required Documents

The following documents (the "Claims Package") must be submitted to the Claims Administrator in order for an Eligible Claimant to participate in the Settlement Program:

- a Release and Dismissal Stipulation, signed by the Eligible Claimant (and, under some circumstances, by any other individual who may have an interest in the claim ("Derivative Claimant")) must be submitted to the Claims Administrator by the Eligible Claimant's lawyer no later than February 29, 2008; and
- medical records documenting the injury ("Event Records"), including a death certificate and autopsy report (if performed) in death and/or sudden cardiac death cases, follow-up medical records, and records documenting Vioxx usage, (together, the "Claims Package") all must be submitted no later than July 1, 2008.

## Qualifying for Compensation in the Settlement Program

In order for an Eligible Claimant to qualify for compensation through the Settlement Program, the following threshold criteria must be met:

- medical records must confirm that the Eligible Claimant suffered a heart attack, ischemic stroke, or sudden cardiac death; and
- medical or pharmacy records must establish that the Eligible Claimant received at least 30 Vioxx pills within 60 days prior to the injury; and
- medical or pharmacy records must confirm that Vioxx was being used by the Eligible Claimant within 14 days of the Vioxx-related heart attack, ischemic stroke, or sudden cardiac death.

**Please note that there is no need for an Eligible Claimant to contact his/her attorneys regarding proof of medical condition or Vioxx use. An Eligible Claimant's Primary Counsel will contact the Eligible Claimant if further information is needed.**

A determination by the Claims Administrator that an Eligible Claimant does not qualify for payment through the Settlement Program will be reviewed by a Committee. The Claims Administrator shall give written notice of the Committee's decision to the relevant Eligible Claimant's Primary Counsel.

If the Eligible Claimant is determined not to qualify for payment under the terms of the Program, the Eligible Claimant may (a) return to the tort system and receive back the Release and Dismissal Stipulation, upon the submission of a Future Evidence Stipulation to the Claims Administrator; or (b) take no action for thirty (30) days, after which the Eligible Claimant's Vioxx case shall be dismissed; or (c) appeal the negative determination to the Special Master, who will undertake a de novo review of the Eligible Claimant's complete Claims Package. If the Eligible Claimant appeals the negative determination to the Special Master and loses the appeal, the Eligible Claimant's case

shall be dismissed and the Eligible Claimant shall have no further rights under the Settlement Program or in the tort system. If the Eligible Claimant wins his/her appeal to the Special Master, the relevant claim shall be submitted to the Program's valuation process.

If an Eligible Claimant is determined by the Claims Administrator, Committee, or Special Master to qualify for payment under the Settlement Program (the "Qualifying Claimant"), the value of the claim will then be assessed by the Claims Administrator using a grid point system. Claims shall be evaluated by the Claims Administrator in the order in which the Claims Administrator receives a complete Claims Package.

## Valuation Process for Qualifying Claims

A point system is being used in order to ensure that the valuation of claims is consistent across similarly situated Qualifying Claimants and reflects the likely relative value of each claim within the tort system. Once the total number of Qualifying Claimants is known, as well as all Qualifying Claimants' verified injury levels and risk factors, the Claims Administrator will be able to determine the precise dollar value of each valuation point. To determine the precise dollar value of each MI point, the Claims Administrator will divide the total number of points awarded to Qualifying Claimants who alleged a heart attack or sudden cardiac death into the total MI Aggregate Settlement Amount of approximately $4 billion. Similarly, the total number of points assigned to Qualifying Claimants who alleged an ischemic stroke or death from stroke will be divided into the total IS Aggregate Settlement Amount of approximately $850 million to determine the precise dollar value of each IS point.

Under the point system, the Claims Administrator will be individually evaluating the medical records in support of each Qualifying Claimant along several dimensions. The claim will first be assigned a base point total, which will reflect the Qualifying Claimant's injury type (i.e., MI or IS), level of injury within the injury type, age at the time of the MI or IS, and duration of Vioxx use. Claims involving longer Vioxx use, a younger Vioxx Claimant, and a more severe injury will be assigned more points than claims involving briefer Vioxx use, an older Vioxx Claimant, and a less severe injury.

Each Qualifying Claimant's base point total will then be adjusted by the Claims Administrator based on various standardized liability adjustments and risk factor adjustments. These adjustments reflect aspects of the Qualifying Claimant's Vioxx use and medical history that would be expected to affect the value of the Qualifying Claimant's claim within the tort system, and will be based upon a Qualifying Claimant's Event Records, follow-up records, and any Profile Form submitted to Merck or the Court.

The liability adjustments are:
- consistency of the Qualifying Claimant's Vioxx usage in the twelve (12) months preceding the Event; and

3

- whether the Qualifying Claimant's Vioxx use and the MI or IS occurred prior to March 9, 2000, between March 10, 2000 and April 12, 2002, or after the April 12, 2002 label change.

The <u>risk factor adjustments</u> are:
- smoking history
- high cholesterol
- hypertension
- diabetes
- obesity
- family history of heart attack or ischemic stroke or other ischemic event;
- alcohol abuse
- heart attack or coronary artery bypass surgery (CABG) before starting Vioxx
- coronary artery disease (CAD) before starting Vioxx
- illicit drug use within 5 years of the event
- diagnosed vascular diseases before starting Vioxx
- stroke or TIA (transient ischemic attack) before starting Vioxx (IS cases only)
- carotid artery disease or carotid artery procedure before starting Vioxx (IS cases only)
- atrial fibrillation or heart failure before starting Vioxx (IS cases only)
- migraine headaches (IS cases only)
- use of hormone replacement therapy within 1 month of event if initiated within 1 year of event (IS cases only)
- vigorous exercise within two hours of event
- gambling
- total joint arthroplasty or other major surgery within 5 days of event
- head trauma within 5 days of event (IS cases only).

The Claims Administrator shall notify each Qualifying Claimant of his/her total point award. A Qualifying Claimant may appeal that award to the Special Master, who shall undertake a de novo review of the claim; this means that the number of points accorded the claim by the Special Master may increase, decrease, or stay the same relative to the number of points originally awarded by the Claims Administrator. The decision of the Special Master shall be final, binding, and non-appealable.

Because, as explained above, each Qualifying Claimant's total number of points is ultimately subject to determination by the Claims Administrator upon a review of the Qualifying Claimant's medical and other records, and because the precise dollar value of each MI and IS point cannot be known with certainty until the total number of points of all Qualifying MI and IS Claims is known, the precise settlement value of a claim cannot be known at this time. In the meantime, however, a Vioxx Claimant may calculate the *approximate likely range* of values for his/her claim, assuming that the claim qualifies, by completing the questionnaire available on the internet at www.OfficialVioxxSettlement.com. In addition, three examples of Claims Valuation calculations are attached to this "Description of Settlement Agreement."

4

## Total Value of Settlement and
## Number of Potentially Qualifying Claimants

The total gross payments to be made to Qualifying Claimants under the Agreement is $4.85 billion, with approximately $4 billion of that sum to be allocated among MI Qualifying Claimants and approximately $850 million of that sum to be allocated among IS Qualifying Claimants. At the present time, there are estimated to be approximately 29,000 potentially eligible Claimants nationwide alleging MI, and approximately 17,000 potentially eligible Claimants nationwide alleging IS.

In addition to the above funds, Merck shall deposit an initial $3 million into an Administrative Expenses Fund to pay for the claims evaluation and other processes under the Settlement Agreement. In addition, the net investment earnings on the funds deposited by Merck into each of the MI and IS Settlement Funds shall be periodically transferred by the Escrow Agent to the Administrative Expenses Fund.

## Payment of Qualifying Claims

Interim Settlement Payments

Qualifying Claimants who have submitted a properly and fully executed Release no later than February 29, 2008, and who are not eligible for a Fixed Payment (see below) shall be eligible for an Interim Payment. No Interim Payment to any Qualifying MI or IS Claimant shall be less than $5,000.

The amount of such Interim Payments for MI claims shall be determined by the Claims Administrator after approximately August 1, 2008. The Claims Administrator shall estimate the total number of points that will ultimately be awarded to all Qualifying MI Claimants, and the estimated value of each MI point. Interim payments in the amount of 40% of each Qualifying MI Claimant's gross estimated Final Settlement Payment shall be made on a rolling basis.

Similarly, the amount of such Interim Payments for Qualifying IS Claimants shall be determined by the Claims Administrator after approximately February 1, 2009. The Claims Administrator shall estimate the total number of points that will ultimately be awarded to all Qualifying IS Claimants, and the estimated value of each IS point. Interim payments in the amount of 40% of each Qualifying IS Claimant's gross estimated Final Settlement Payment shall be made on a rolling basis.

The per-point value of Interim Payments may change as more claims are processed and better information is available regarding the likely ultimate value of each MI and IS point.

Fixed Payments

Qualifying Claimants who are notified by the Claims Administrator that their total MI or IS points are less than a specified amount shall have the option to receive a gross Fixed Payment of $5,000 instead of the (likely much smaller) award they would receive if all appropriate risk factor and liability adjustments were made to their base point total. Qualifying Claimants eligible for the Fixed Payment who do not choose to receive the Fixed Payment shall receive de novo review of their claim by the Special Master. The Special Master shall award 0 to 5 points to each such MI claim, and shall award 0 to 1 point for each such IS claim, and the determination of the Special Master shall be final and non-appealable.

Extraordinary Injury Payments

Qualifying Claimants who would like their claim to be considered as an Extraordinary Injury may apply through their Primary Counsel to receive an Extraordinary Injury Payment ("EI Payment"). Such Qualifying Claimants may be eligible for an EI Payment if: (a) the Qualifying Claimant is not eligible for a Fixed Payment; and (b) the Qualifying Claimant submits records reflecting an injury that is not adequately reflected within the point grid; and/or (c) the Qualifying Claimant has specified, documented, economic damages of at least $250,000. Such damages include the Qualifying Claimant's past or future out-of-pocket medical expenses and the Qualifying Claimant's past lost wages to the extent that such expenses or lost wages are the result of the Qualifying Claimant's heart attack or stroke and have neither been reimbursed nor are eligible for reimbursement from any other source.

Each Qualifying Claimant who qualifies for, and timely applies for, an EI Payment shall receive such a payment in an amount to be based on criteria to be determined by the Claims Administrator. Any such EI Payment shall be in addition to the Qualifying Claimant's Final Payment (see below). EI Payments for all Qualifying MI Claimants shall not in the aggregate exceed $195 million; EI Payments for all Qualifying IS Claimants shall not in the aggregate exceed $105 million. All proposed EI Payments shall be reduced pro rata if necessary to meet these restrictions.

Final Payments

After, and only after, (i) all Qualifying Claimants have completed the claims valuation process and all points awards have become final; and (ii) all possible Fixed Payments and Extraordinary Injury Payments have been determined; and (iii) all audits have been completed, the Claims Administrator shall determine the MI and IS Point Values.

The total gross value of each Qualifying MI and IS Claimant's claim can then be determined by multiplying the Qualifying Claimant's total number of points by the MI or IS Point Value, as appropriate. The final gross payment to be made to each such

6

Qualifying Claimant shall be the total value of the claim, minus any Interim Payment made to the Qualifying Claimant. In addition, prior to receiving any settlement payment, the Claimant and his/her Primary Counsel must represent and warrant that any and all Vioxx-related statutory (e.g., Medicare and Medicaid) liens that exist on the Qualifying Claimant's settlement monies have been satisfied and discharged.

## Attorneys' Fees and Litigation Costs and Expenses

The attorneys' fees to be paid by each settling Qualifying Claimant to his/her individual attorney(s) shall not exceed those set forth in the Qualifying Claimant's attorney-client contract. In order to compensate the "Common Benefit Attorneys" who developed the Vioxx litigation against Merck and ultimately negotiated the Settlement Program, an assessment of common benefit attorneys' fees will be imposed at no more than 8% of the gross amount recovered for every Qualifying Claimant who is registered under the terms of the Agreement. This common benefit attorneys' fees assessment shall not increase the total attorneys' fees payable by any Qualifying Claimant, but shall be deducted from the total amount of attorneys' fees payable by each Qualifying Claimant under his/her individual attorney-client contract.

The total expenses to be reimbursed by each settling Qualifying Claimant may include case-specific expenses and general expenses (consistent with the terms of the Qualifying Claimant's individual attorney-client contract), as well as common benefit expenses. Case-specific expenses are those that benefit a specific client (e.g., the costs of obtaining a particular client's medical or pharmacy records). General expenses are those that benefit a larger group of clients represented by the same attorney (e.g., the fees paid a medical expert), and are allocated equally or on a pro-rata basis (depending on the terms of the individual attorney-client contract) across the group of benefited clients. Common benefit expenses are those incurred by the Common Benefit Attorneys in their work on behalf of Vioxx Claimants nationwide, and shall be as approved by the Claims Administrator.

## Irrevocability of the Submission of a Release

**Submission of a Release by an Eligible Claimant or the Eligible Claimant's Primary Counsel is irrevocable.** No Eligible Claimant may under any circumstances or for any reason request the return of his/her Release or Dismissal Stipulation, or otherwise unilaterally exit the Settlement Program, unless specifically provided for in the Settlement Program Agreement.

**By submitting the Release, the Eligible Claimant is agreeing to be bound by all terms and conditions of the Settlement Program, including agreeing to accept the final value accorded the Eligible Claimant's claim under the Program's claim valuation process, if the Eligible Claimant qualifies for compensation through the Settlement Program.**

7

Case 2:05-md-01657-EEF-DEK   Document 44555-2   Filed 06/14/10   Page 15 of 19

Page 1 of 1

| Store #: 0468 | Connexus Pharmacy System | 01/01/1995 TO 11/18/2004 |
| Report Date: 11/13/2004 | Wal-Mart Pharmacy 10-0468 | |
| | Medical Expenses Report | |

**MEDICAL EXPENSES**

Patient: GRIFFIN, DOROTHY A
Resp. Party:

2021 COLLEGE DR #2026

TEXARKANA TX-75503          NABP:0413548

Birthdate: 1/22/1956

Wal-Mart Pharmacy
133 ARKANSAS BLVD
TEXARKANA AR-71854

ID:AW2935952

| Last Fill Written | Rx # Fill ID | Drug Name NDC/DIN | DS | Qty Refill # | DAW | Physician Name Physician DEA | Patient Paid | TP Ref # |
|---|---|---|---|---|---|---|---|---|
| 01/31/2000 01/31/2000 | 7119561 2027030 | VIOXX 12.5MG TAB 00006-0074-68 | 5 | 10 0 | 0 | LORBER,ARTHUR MD AL8064987 | $0.00 | TPS |
| 02/15/2000 02/15/2000 | 7121804 2032431 | DICLOFEN POT 50MG TAB 00093-0948-01 | 14 | 42 0 | 0 | ERLEWINE,STEVE ACNP MAR ME0446977 | $0.00 | TPS |
| 02/15/2000 02/15/2000 | 7121805 2032432 | CYCLOBENZAPR 10MG TAB 00378-0751-01 | 10 | 30 0 | 0 | ERLEWINE,STEVE ACNP MAR ME0446977 | $0.00 | TPS |
| 03/06/2000 03/06/2000 | 7125135 2040035 | CYCLOBENZAPR 10MG TAB 00378-0751-01 | 10 | 30 0 | 0 | ERLEWINE,STEVE ACNP ME0446977 | $0.00 | TPS |
| 03/06/2000 03/06/2000 | 7125136 2040036 | PREDNISONE 20MG TAB 00364-0442-01 | 9 | 18 0 | 0 | ERLEWINE,STEVE ACNP ME0446977 | $0.00 | TPS |
| 03/24/2000 03/24/2000 | 7128053 2046500 | PROCTOSOL HC 2.5% CRE 63304-0407-01 | 10 | 30 0 | 0 | MACHAUER,MALCOLM AM BM0307771 | $15.92 | |

Total: $15.92

Report Date: 11/18/2004
Attested To By: _____
                 Registered Pharmacist

**\*\*CONFIDENTIAL-IF YOU RECEIVE THIS REPORT IN ERROR, PLEASE RETURN TO WAL\*MART PHARMACY IMMEDIATELY.
WAL\*MART STORES, INC.**

# ADULT FORM
☐ EMERGENCY DEPARTMENT ☑ MINOR CARE

0045

GRIFFIN, DOROTHY A
Phys: SMITH, CATHY SCHINDL
RACE: F DOB: 01/22/56 46Y
MCC KT ERS
B0209900416
000191127

| DATE | TRIAGE TIME | CONDITION ON ADMISSION | | | |
|---|---|---|---|---|---|
| 4-9-02 | 1941 | GOOD ☑ FAIR ☐ SERIOUS ☐ CRITICAL | | | |
| ED BED ASSIGNMENT | | GEN. CALL ☑ | PRIVATE MD | | OTHER |
| 6 @ 2145 | | | Wilson | | |

PATIENT NAME: Griffin, Dorothy
ADDRESS: 807 W. 38th St
CITY: Texarkana TX
ZIP CODE: 75503

AGE: 46 DATE OF BIRTH: 1-22-56 RACE/SEX: B/F TELEPHONE: 794-7791
RELIGION: NEXT OF KIN: TELEPHONE:

ARRIVAL MODE: WALK ☑ AUTO ☐ CARRY ☐ WC ☐ AMBULANCE ☐
ALLERGIES: Codeine, Vioxx
Latex YES ☐ NO ☑

CHIEF COMPLAINT: arm, back, hip pain
LEARNING NEEDS YES OR NO (EXPLAIN NO)
LEARNING BARRIER YES OR NO (EXPLAIN YES)

HISTORY: MVA 1-10-2000
WEIGHT: ACTUAL/STATED
VITAL SIGNS B/P 140/94 P 70 R 16 T 99.0 OXIMETRY 100 PAIN 20

NUTRITION: ☐ WELL NOURISHED ☐ OBESE ☐ MALNOURISHED ☐ SPECIAL DIET
PROBLEM

IMMUNIZATIONS: ☐ CURRENT ☐ NOT CURRENT ☐ UNKNOWN ☐ STATED ☐ WRITTEN PROOF
LMP ___ GR ___ PARA ___ ABO ___

TETANUS ___ <5 yrs ___ >5 yrs
LAST INTAKE:
HOME MEDICATIONS / HERBAL SUPPLEMENTS:

TRIAGE PRIORITY: NON URGENT ☑ URGENT ☐ EMERGENT ☐
RX PTA: SPLINT ☐ BACKBOARD ☐
N/A ☑ O2 ☐ IV ☐ C COLLAR ☐

TRIAGE NURSE SIGNATURE: H. Brouette RN

NURSING ASSESSMENT: pts c/o pain not getting bttr
c/o arm + back + hip since wreck 1/00

PSYCHOSOCIAL HABITS
TOBACCO X ALCOHOL ○ DRUG SCREENING ○ N/A
SENSORY IMPAIRMENT ☐ YES ☑ NO EXPLAIN YES
PHYSICAL IMPAIRMENT ☑ YES ☐ NO EXPLAIN YES

SUPPORT SYSTEM
LIVES ALONE ☐ PERFORMS ADL'S ☑ YES ☐ NO
FAMILY/SIGNIFICANT OTHER ☑

SEE FLOW SHEET YES ☐ NO ☐
BEHAVIORAL STATUS:
CO-OPERATIVE ☑ CONFUSED ☐ ANXIOUS ☐
IS THERE EVIDENCE/SUSPICION OF ABUSE/NEGLECT YES ☐ NO ☐
DEPRESSED ☐ AGITATED ☐ AGGRESSIVE ☐
IF YES NOTIFY MD ☐ POLICE ☐ CASE MANAGER/SOCIAL WORKER ☐ DHS ☐

ROOM ORIENTATION/SAFETY
BED RAILS ☐ CALL LIGHT ☐ TELEPHONE ☐
INSTS GIVEN VERBALLY TO:
PATIENT ☐ FAMILY MEMBER ☐ PARENT ☐
PATIENT AT HIGH RISK FOR FALLS ☐ YES ☐ NO

| NEURO (GCS) | TIME | B/P | P | R | T | P.OX | PAIN |
|---|---|---|---|---|---|---|---|
| N/A | | | | | | | |
| EYE OPENING | | | | | | | |
| 4 Spontaneous | | | | | | | |
| 3 To voice | | | | | | | |
| 2 To pain | | | | | | | |
| 1 None | | | | | | | |

IV THERAPY

VERBAL RESPONSES
5 Oriented
4 Confused
3 Inappropriate
2 Incomprehensible
1 None

| MEDICATIONS | | | | | |
|---|---|---|---|---|---|
| DRUG | DOSE | ROUTE | TIME | RESPONSE | BY |

| SOLUTION / IV CATH / SITE | TIME |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |

BEST MOTOR RESPONSE
6 Obeys
5 Localizes to Pain
4 Withdraws to Pain
3 Flexion (decorticate)
2 Extension (decerebrate)
1 None

| | INTAKE | OUTPUT |
|---|---|---|
| PO | | URINE |
| IV | | EMESIS |
| OTHER | | OTHER |
| TOTAL | | TOTAL |

Total GCS: 15

Pain Scale: 0 · 1 · 2 · 3 · 4 · 5 · 6 · 7 · 8 · 9 · 10
Medication Response Scale (if applicable): 1. Complete Relief 2. Moderate Relief 3. Minimal Relief 4. No Relief

PHYSICIAN ORDERS
PHYSICIAN EXAM

PRINTED BY: coulta
DATE: 10/10/2008

DIAGNOSIS: Chronic Pain

PT BELONGINGS YES ☐ NO ☐ GIVEN TO FAMILY ☐ SECURITY ☐
DESCRIPTION:
PT's Meds: ☐ To Family ☐ To Floor ☐ No Meds
DECEASED / NOTIFIED: CORONER ☐ OPO REFERRAL ☐ POLICE ☐
☐ FUNERAL HOME
CONSENT TO DIAGNOSIS AND TREATMENT AT CHRISTUS ST. MICHAEL HEALTH SYSTEM
RELEASE OF INFORMATION SIGNED ☐ YES ☐ NO
SIGNED: Dorothy A Griffin (Patient)
OR _____ (Nearest Relative)
_____ (Relationship to Patient)

EDUCATION INSTRUCTIONS: ☑ Verbal ___ Written
___ Verbalized Understanding ☑ Demonstrates Understanding
DISCHARGE CONDITION:
☑ Good ___ Fair ___ Serious ___ Critical ___ Deceased ___ Improved
DISCHARGE MODE:
☑ Walk ___ Carried ___ Ambulance ___ Wheelchair ___ Stretcher
ACCOMPANIED BY:
☑ Self ___ Police ___ Relative ___ Ambulance ___ Friend ___ Other
DISCHARGED/DISPOSITION/CARE LEVEL: I
☑ Discharged ___ Admitted ___ LWBS 2143
___ Transferred RN
___ Expired MD/Phys
Did Doctor See pt: YES ☑ NO ☐ Time 2120
Nurse's Signature
DATE/TIME ____ M.D.

0045 Rev. 11/01
Christus St. Michael Health System

GriffinD - CPME - 931561 - 000088

GRIFFIN, DOROTHY A
Phys: WADE, BILLY K    0 05/26/03
Race: BLACK F DOB: 01/22/56 47Y
ERS ER SP
B0314600064
Unit: 000191127

Name Griffin, Dorothy
Date 5-26-03  Time ___  Age 47  M/F
**Chief Complaint**
neck pain, indigestion
Nausea, c-worse c...

☐ Incomplete due to patient's condition

Historian: Patient
Caregiver  Relative  EMS  Witness

**HPI – Guidelines**
Brief (3)    One to three elements of the HPI
Extended (5) Four or more elements of the HPI
Context (who / what / when / where of CC)

[handwritten notes:]
Pt to chest
...
Neck
radiates to
... 
Pt reports SOB
...
Some ...

Location (where body symptom occurred)
Chest ___

Quality (adjective description of CC)

Severity (or intensity) mild mod severe

Onset (when symptoms first began)
☐ PTA

Timing (# occurrences or frequency)

Modifying Factors (↑ or ↓ by what)

Associated Signs & Symptoms

PRINTED BY: coulta
DATE 10/10/2008

Revised 073102

---

**GENERAL ADULT FEMALE (GF)**
**ROS - Guidelines**
Extended (4)  Two to nine Areas
Complete (5)  Ten or more areas
NAD = No Abnormality Detected or Disclosed
HCFA Guidelines: The ED physician MUST record his/her own HPI. Ancillary staff (Nurse) may record the CC, ROS and PFSH.

☐ Incomplete due to patient's condition

☑ NAD  **CONSTITUTIONAL**
↓ appetite  chills  faint  fatigue
clammy  fever  myalgia  weight loss

☑ NAD  **EYES**
↓ acuity  blurred vision  pain

☐ NAD  **ENMT**
↓ hearing  nasal / sinus  dental pain  choking

☐ NAD  **NECK**
stiffness  pain  swelling

☐ NAD  **CARDIAC**
chest pain  palpitations  HTN

☐ NAD  **RESPIRATORY**
dyspnea  cough  hemoptysis

☐ NAD  **GI / ABDOMEN**
constipation  nausea  vomiting  diarrhea  GB Dis

☐ NAD  **GU**
urgency  frequency  dysuria  blood in urine
G___  P___  LMP___/___/___

☐ NAD  **MS SYSTEM**
swelling  pain  ↓ ROM  weakness

☐ NAD  **SKIN**
rash  mass  itching  bruises

☐ NAD  **NEUROLOGICAL**
HA  weakness  tingling  seizure  syncope

☐ NAD  **PSYCHIATRIC**
anxiety  depression  insomnia

☐ All other systems were reviewed and are negative

ED Physician Medical Record

---

**Past, Family & Social HX - Guidelines**
Pertinent (4)  One of Three History Areas
Complete (5)  Two of Three History Areas
☑ Incomplete due to patient's condition

**PAST HISTORY:** Illnesses
☐ Unremarkable    ☐ see old / attached notes

Immunization current for age?  Yes  No
**Medications**  ☐ None  ☐ see old/attached notes

**Allergies**  ☐ NKDA    **Surgeries** ☐ None
☐ see old/attached notes   Most recent @ ___

**FAMILY HISTORY** ☐ Unremarkable
☐ see old/attached notes
ASCVD  HTN  CHF  COPD  DM  Seizure

**SOCIAL HISTORY** ☐ Unremarkable
☐ see old/attached notes
Resides @ Home  NH ___
Marital Status: Married  Single  Divorced  Widowed
Habits: Alcohol  Tobacco  Drugs

**Notes**
[handwritten:]
Pt. who
c/o N/V
denies SOB
no ch___
N ___ for
~ 3 yrs.

Compliance Precision Reimbursement © 2002

For PE Elements examined, ☒ if normal / NAD. Circle if abnormal finding or contains written comment.   General Female (GF)

**CONSTITUTIONAL**
- ☒ Nurse's VS / Assessment reviewed _____
- ☐ Appearance NAD & nml _____

Comprehensive exam not done due to "constraints imposed by the urgency of the patient's clinical condition and/or mental status" specifically _____

**EYES**
- ☒ nml Conjunctivae / Lids pale injected icteric _____
- ☐ PERRL Pupil & Iris unequal fixed irregular _____

**EARS, NOSE, THROAT**
- ☒ nml Inspect Ears & Nose scars lesions masses _____
- ☐ nml Otoscopic exam cerumen bulging / erythematous / dull TM R / L
- ☒ nml Nasal mucosa, septum & turbinates bleeding discharge polyps
- ☒ nml Lips, Teeth, & Gums cyanosis edentulous caries _____
- ☐ nml Oropharynx dry mucosa coated tongue pharyngeal / tonsil exudate

**NECK STRUCTURES**
- ☐ supple Neck tender ↓ ROM bruit meningismus flat / ↑JVD
- ☒ nml Thyroid scar thyromegaly _____

**RESPIRATORY**
- ☒ nml Palpation tender fremitus _____
- ☐ nml Auscultation wheezes rales stridor _____

**CARDIOVASCULAR**
- ☐ nml Palpation abn location ↑size thrills _____
- ☐ nml Heart Sounds murmur gallop click rub _____
- ☐ nml Carotid pulses _____ ☐ nml AA pulse ↑ AA @ ___ cm
- ☐ nml Fem. pulses _____ ☐ nml Pedal pulses ↓ / absent R / L
- ☐ nml Extremities edema ulcer varicosity _____

**CHEST (Breasts & Axillae)**
- ☐ nml Inspection asymmetry nipple discharge R / L _____
- ☐ nml Palpation mass / lump tender R / L _____

**GI / ABDOMEN**
- ☐ nml Exam distended scar masses (tender) ↑ ↓ BS _____
- ☐ nml Liver & Spleen ↑ ↓ size _____
- ☐ nml Perineum hemorrhoids mass ↑ ↓ sphincter tone ☐ neg Guaiac pos

**GENITOURINARY**
- ☐ nml Ext. Genitalia / Vagina lesion discharge cystocele rectocele
- ☐ nml Urethra mass tender _____
- ☐ nml Bladder fullness mass tender _____
- ☐ nml Cervix lesion discharge _____
- ☐ nml Uterus ↑ ↓ size tender position _____
- ☐ nml Adnexa mass tender _____

**MUSCULOSKELETAL EXAM of** _____
- ☐ nml Gait & Station shuffling ataxic _____
- ☒ nml Inspect & Palpation crepitation misalign tender effusion
- ☐ nml ROM pain contracture limitation _____
- ☒ nml Stability dislocation sublux laxity _____

**SKIN & SUBCUTANEOUS TISSUE**
- ☐ nml Inspect intact rash _____
- ☐ nml Palpate induration tender _____

**LYMPHATIC**
- ☐ nml Neck swollen tender R / L _____
- ☐ nml Axillae swollen tender R / L _____
- ☐ nml Groin swollen tender R / L _____

**NEUROLOGIC**
- ☐ nml CN II – XII facial droop absent gag nystagmus _____
- ☐ nml DTRs + Babinski ↑ ↓ plantar _____
- ☐ nml Sensation _____

**PSYCHIATRIC**
- ☐ nml Orientation Not person place time _____
- ☐ nml Mood depressed anxious _____

PRINTED BY: coult
DATE 10/10/2008

**ECG** - 3 of the following elements
Rate _____ Axis _____
Rhythm _____
Block ☐ none SA AV ___ bundle
ST-T waves _____
Q waves _____
☐ Compared w/ prior tracing _____
Interpretation _____
☐ I Interpreted ECG

Hrt Monitor ☐ nml _____
Pulse Ox ____% on _____
CBC ☐ nml   CHEM ☐ nml   ABG ☐ nml   UA ☐ nml
☐ Drawn by Dr.

**X-Ray / US / CT** ☐ NAD
_____
☐ Compared w/ prior films / scans
☐ Discussed w/ radiologist _____

Preg Test + / –

Comments _____

Treat as Critical Care - Total time (excl. procedure) ☐ 30' – 74'  ☐ 75' – 104'

**ED TREATMENT**
- ☐ OTC Meds _____
- ☐ Presc Meds/ Inhale / O2 / IVF
- ☐ Parenteral Controlled Substance

**PLAN**
- ☐ Discussed with Dr. _____
- ☐ Discussed case w/ other provider
- ☐ Treat with OTC medications
- ☐ Treat / Continue / Discontinue Prescription meds
1. _____
2. _____
3. _____

**COUNSEL PATIENT / FAMILY**
- ☐ Lab Results
- ☐ Treatment Plan
- ☐ Medications
- ☐ Drug Toxicity Monitoring
- ☐ Upcoming Studies
- ☐ Need for hospitalization
- ☐ Refer For Ancillary Services

**RECORD REVIEW**
☐ Requested   ☐ Reviewed old MR

**DISPOSITION** Home/NH
Referral  Transfer/Admit  Deceased

**CONDITION**
Improved  Unchanged  Stable  Fair
Critical  Serious

**CLINICAL IMPRESSION(S)**
_____

Physician signature: _____

GriffinD - CPME - 931561 - 000111

For PE Elements examined, ☑ if normal / NAD. Circle if abnormal finding or contains written comment.  General Female (GF)

**CONSTITUTIONAL**
- ☑ Nurse's VS / Assessment reviewed _____
- ☑ Appearance NAD & nml _____

**EYES**
- ☐ nml Conjunctivae / Lids  pale  injected  icteric _____
- ☐ PERRL Pupil & Iris  unequal  fixed  irregular _____

**EARS, NOSE, THROAT**
- ☐ nml Inspect Ears & Nose  scars  lesions  masses _____
- ☐ nml Otoscopic exam  cerumen  bulging / erythematous / dull TM  R / L _____
- ☐ nml Nasal mucosa, septum & turbinates  bleeding  discharge  polyps _____
- ☐ nml Lips, Teeth, & Gums  cyanosis  edentulous  caries _____
- ☐ nml Oropharynx  dry mucosa  coated tongue  pharyngeal / tonsil exudate _____

**NECK STRUCTURES**
- ☑ supple Neck  tender  ↓ ROM  bruit  meningismus  flat / ↑JVD _____
- ☐ nml Thyroid  scar  thyromegaly _____

**RESPIRATORY**
- ☐ nml Palpation  tender  fremitus _____
- ☐ nml Auscultation  wheezes  rales  stridor _____

**CARDIOVASCULAR**
- ☐ nml Palpation  abn location  ↑size  thrills _____
- ☐ nml Heart Sounds  murmur  gallop  click  rub _____
- ☐ nml Carotid pulses _____  ☐ nml AA pulse  ↑ AA @ ___ cm
- ☐ nml Fem. pulses _____  ☐ nml Pedal pulses ↓ / absent  R / L
- ☐ nml Extremities  edema  ulcer  varicosity _____

**CHEST (Breasts & Axillae)**
- ☐ nml Inspection  asymmetry  nipple discharge  R / L _____
- ☐ nml Palpation  mass / lump  tender  R / L _____

**GI / ABDOMEN**
- ☐ nml Exam  distended  scar  masses  tender  ↑ ↓ BS _____
- ☐ nml Liver & Spleen  ↑ ↓ size _____
- ☐ nml Perineum  hemorrhoids  mass  ↑ ↓ sphincter tone  ☐ neg Guaiac  pos

**GENITOURINARY**
- ☐ nml Ext. Genitalia / Vagina  lesion  discharge  cystocele  rectocele
- ☐ nml Urethra  mass  tender _____
- ☐ nml Bladder  fullness  mass  tender _____
- ☐ nml Cervix  lesion  discharge _____
- ☐ nml Uterus  ↑ ↓ size  tender  position _____
- ☐ nml Adnexa  mass  tender _____

**MUSCULOSKELETAL EXAM of** (R) arm
- ☐ nml Gait & Station  shuffling  ataxic _____
- ☐ nml Inspect & Palpation  crepitation  misalign  tender  effusion — No 2° injuries
- ☐ nml ROM (pain) contracture  limitation _____
- ☐ nml Stability  dislocation  sublux  laxity _____

**SKIN & SUBCUTANEOUS TISSUE**
- ☑ nml Inspect  intact  rash _____
- ☑ nml Palpate  induration  tender _____

**LYMPHATIC**
- ☐ nml Neck  swollen  tender  R / L _____
- ☐ nml Axillae  swollen  tender  R / L _____
- ☐ nml Groin  swollen  tender  R / L _____

**NEUROLOGIC**
- ☐ nml CN II – XII  facial droop  absent gag  nystagmus _____
- ☐ nml DTRs  + Babinski  ↑ ↓ plantar _____
- ☐ nml Sensation _____

**PSYCHIATRIC**
- ☐ nml Orientation  Not  person  place  time
- ☐ nml Mood  depressed  anxious _____

PRINTED BY: coulte
DATE  10/10/2008

---

Comprehensive exam not done due to "constraints imposed by the urgency of the patient's clinical condition and/or mental status" specifically: _____

**ECG** - 3 of the following elements
Rate _____ Axis _____
Rhythm _____
Block ☐ none  SA  AV ___ bundle
ST-T waves _____
Q waves _____
☐ Compared w/ prior tracing _____
Interpretation _____
☐ I Interpreted ECG

Hrt Monitor ☐ nml _____
Pulse Ox ___ % on _____
CBC ☐ nml  CHEM ☐ nml  ABG ☐ nml  UA ☐ nml
☐ Drawn by Dr.

**X-Ray / US / CT**  ☐ NAD
☐ Compared w/ prior films / scans
☐ Discussed w/ radiologist

Preg Test + / -

**Comments**
(2) Pt wants Darvocet
   Vicodin #30
(1) Flexeril #30
   Pt requests Valium — refused
   Boxtra 30 mg #30
(3) Feldene 20 #10
   T poqd
   Ones 10 mg po for pain management

Treat as **Critical Care** - Total time (excl. procedure) ☐ 30'–74'  ☐ 75'–104'

**ED TREATMENT**
- ☐ OTC Meds
- ☐ Presc Meds / Inhale / O2 / IVF
- ☐ Parenteral Controlled Substance

**PLAN**
- ☐ Discussed with Dr. _____
- ☐ Discussed case w/ other provider
- ☐ Treat with OTC medications
- ☐ Treat / Continue / Discontinue Prescription meds

**COUNSEL PATIENT / FAMILY**
- ☐ Lab Results
- ☑ Treatment Plan
- ☑ Medications
- ☐ Drug Toxicity Monitoring
- ☐ Upcoming Studies
- ☐ Need For Hospitalization
- ☐ Refer For Ancillary Services

**RECORD REVIEW**
- ☐ Requested   ☐ Reviewed old MR

**DISPOSITION** Home / NH
Referral  Transfer/Admit  Deceased

**CLINICAL IMPRESSION(S)**
Chronic pain

Physician signature: _____

(4) Atarax for sleep 50 mg qHS #30

GriffinD - CPME - 931561 - 000087