**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE VIOXX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>------------------------------------------------------<br><br>GOLDHABER RESEARCH ASSOCIATES, LLC,<br><br>               Plaintiff,<br><br>        -AGAINST-<br><br>TOMMY JACKS, P.C. D/B/A THE JACKS LAW FIRM and BLIZZARD, MCCARTHY & NABERS, LLP,<br><br>             Defendants. | MDL Docket No.: 1657<br><br>CIVIL ACTION NO.: 2:07-cv-2062-EEF-DEK<br><br>Hon. Eldon E. Fallon<br><br>ECF CASE |

**DEFENDANTS' RESPONSE AND INCORPORATED MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 F.R.C.P.**

Defendants Tommy Jacks, P.C. d/b/a The Jacks Law Firm ("Defendant Jacks") and

Blizzard, McCarthy & Nabers, LLP ("Defendant BM&N") respectfully request that this Court

deny Plaintiff Goldhaber Research Associates, LLC's Motion for Summary Judgment Pursuant

to Rule 56 F.R.C. P. ("Plaintiff's Motion") for the following reasons:

(a)      Plaintiff has failed to meet its burden of demonstrating the absence of a genuine issue of material fact as to each and every element of the cause of action for account stated.

(b)      Because there is no evidence that Plaintiff presented an account to Defendant BM&N, as a matter of law Plaintiff cannot establish that Defendant BM&N accepted the account as correct or promised to pay the amounts stated.

(c)     Defendant Jacks neither expressly nor impliedly accepted Plaintiff's account as correct or promised to pay the amounts stated.

## I.
## BACKGROUND

This is a suit by a New York limited liability corporation, Goldhaber Research Associates, LLC ("Plaintiff Goldhaber"), against Defendant BM&N, a law firm located in Houston, Texas, and Defendant Jacks, a law firm located in Austin, Texas. The action alleges Defendants failed to pay Plaintiff Goldhaber's expert consulting fees in connection with services allegedly rendered in the Vioxx litigation.

On two occasions in 2005, Tommy Jacks, an employee of Defendant Jacks, met with Gerald Goldhaber, the president of Plaintiff Goldhaber, regarding his consulting with his law firm concerning certain warnings issues in Vioxx litigation. *See* Ex. 1 at ¶3. Over the course of the next ten months, Defendant Jacks received five invoices from Goldhaber in the approximate amount of $45,000 in connection with the time spent meeting with Tommy Jacks and in reviewing certain materials sent to Goldhaber in 2005. *See id.*; *see also,* Exs. 1-10 to Plaintiff's Motion. Full payment was issued to Plaintiff Goldhaber by Defendant Jacks on those five invoices. *See* Ex. A at ¶4; *see also,* Exs. 1-10 to Plaintiff's Motion. Following payment of the fifth invoice dated November 22, 2005, Defendant Jacks did not request or authorize Plaintiff Goldhaber to perform any further work of any kind in relation to the Vioxx litigation. *See* Ex. 1 at ¶ 4.

In 2006, Defendant Jacks was asked by Ed Blizzard, a partner of Defendant BM&N, to arrange a meeting between himself and Gerald Goldhaber to discuss the *possibility* of retaining his services as a consulting or testifying expert in *Mason v. Merck & Co. Inc.*, which was set to be tried by Defendant BM&N in this Court that fall. *See id.* at ¶ 5; *see also,* Ex. 2 at ¶ 3. Prior to

the meeting, Defendant BM&N provided transcripts of the depositions of certain witnesses and previous Vioxx trials and a few scientific studies pertaining to Vioxx to Gerald Goldhaber to review in preparation for his upcoming meeting with Ed Blizzard. *See* Ex. 2 at ¶ 4. On May 1, 2006, Ed Blizzard met with Gerald Goldhaber. *See* Ex. 2 at ¶ 3. Ultimately, however, Defendant BM&N decided against retaining Gerald Goldhaber's services. *See id.* at 5. Neither Ed Blizzard, nor anyone else at BM&N, had any further contact with Gerald Goldhaber after his meeting with Ed Blizzard. *See id.* Defendant BM&N has never received a single invoice directly from Plaintiff Goldhaber and has never issued any payments to Plaintiff Goldhaber. *See id.*

Though Plaintiff Goldhaber was not authorized by Defendants to perform any further services in the Vioxx litigation, an additional four invoices totaling approximately $156,000 were sent to Defendant Jacks between late May and August 2006.[1] *See* Ex. 1 at ¶ 7. According to these invoices, Goldhaber allegedly spent 218 hours reviewing trial transcripts, 84 hours reviewing depositions, and 4.5 hours reviewing two scientific studies published in The New England Journal of Medicine. *See* Exs. 13-16 to Plaintiff's Motion. Tommy Jacks, believing these invoices represented services performed by Plaintiff Goldhaber at the request of Defendant BM&N, forwarded the invoices to Defendant BM&N. *See* Ex. 1 at ¶ 6, 7. At no time did Defendant Jacks make any payment of any amounts stated in those four invoices. *See* Ex. 1 at ¶ 4

As soon as Defendants realized that neither had requested or authorized Plaintiff Goldhaber to perform the services reflected in the four invoices, Defendant Jacks sent an e-mail and letter to Plaintiff Goldhaber advising that Defendants were unaware that Plaintiff Goldhaber continued to perform work in the Vioxx litigation and instructing him to "stop working immediately." *See* Ex. 1 at ¶ 7, *see also*, Exhibits A and B to the Declaration of Tommy Jacks

---

[1] The invoices, which as attached as Exs. 13-16 to Plaintiff's Motion are as follows: (1) L4342 dated May 18, 2006 in the amount of $28,708.72; (2) L4352 dated July 24, 2006 in the amount of $74,447.50; (3) L4352 dated July 28, 2006 in the amount of $30,700.00; and (4) L4354 dated August 3, 2006 in the amount of $23,280.00.

(Ex. 1).   Upon receiving a "demand letter" from Plaintiff Goldhaber's counsel, Murray J. Grashow, on October 30, 2006, Defendant Jacks sent a letter to Mr. Grashow a day later, on October 31, 2006, further disputing Plaintiff Goldhaber's claim. *See* Ex. 1 at ¶ 8, 9; *see also*, Exhibits C and D to Declaration of Tommy Jacks (Ex. 1).

The *Mason* case was tried before Judge Fallon between October 30, 2006 and November 15, 2006.   Goldhaber was not designated as an expert in *Mason*, did not give a deposition in the case, had no involvement as a consultant or in preparing for trial, and did not testify at trial.   Ex. 2 at ¶ 7. Rather, Defendant BM&N retained and presented another expert, Cornelia Pechmann, Ph.D., to provide testimony on the topic of warnings in the *Mason* case.  *See id*. Dr. Pechmann reviewed Vioxx materials, prepared a report, gave her deposition and testified at trial. *See id*. For these services, Dr. Pechmann was paid a total of $28,232.00 in fees and expenses.  *See id*.  In contrast, Plaintiff Goldhaber alleges that he is owed more than $200,000 for his alleged review of transcripts and a few Vioxx studies.   Notably, Plaintiff Goldhaber has never presented Defendants with any written comments, notes, summaries or other work product generated from his alleged 300 plus hours of review of transcripts and scientific studies. *See id*. at ¶ 6.

## II.
## ARGUMENT AND AUTHORITY

A.   **SUMMARY JUDGMENT STANDARD**

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The movant must show that there is not a single genuine issue of material fact and that its contentions are completely established as a matter of law. *See Topalian v. Ehrman*, 954 F.2d 1125, 1137 (5th Cir. 1992). A plaintiff moving for summary judgment has a

heavy burden of showing that no genuine issue of material fact exists and that the plaintiff is entitled to judgment as a matter of law. *Pitts v. Shell Oil Co.*, 463 F.2d 331 (5th Cir.1972).  The Court never weighs the evidence or finds the facts; instead, the Court's role is narrowly limited to the threshold issue of whether a genuine issue exists as to material facts requiring trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Thus, the evidence of non-moving parties must be believed as true, all doubts are to be resolved against the movant, and all reasonable inferences are to be drawn in the nonmovant's favor. *See Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999).

**B.    ELEMENTS OF AN ACCOUNT STATED**

An account stated is an account, balanced and rendered, with an assent to the balance either express or implied so that the demand is essentially the same as if a promissory note had been given for the balance.  *See, e.g., Interman Indus. Prods. v. R. S. M. Electron Power,* 37 N.Y. 2d 151, 153 (N.Y. 1975).  "[T]he very meaning of an account stated is that the parties have come together and agreed upon the balance of indebtedness, *insimul computassent*, so that an action to recover the balance as upon an implied promise of payment may thenceforth be maintained."  *Newburger-Morris Co. v Talcott*, 219 NY 505, 512 (N.Y. 1916).  To prove an account stated, a party must show: (1) an account was presented; (2) it was accepted as correct; and (3) a debtor promised to pay the amount stated.  *See e.g., IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395 (S.D.N.Y. 2009).

**C.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AS TO DEFENDANT BM&N AS PLAINTIFF GOLDHABER FAILED TO PRESENT AN ACCOUNT TO DEFENDANT BM&N AND THUS CANNOT ESTABLISH ANY ELEMENT OF ITS CLAIM.**

It is well settled that "there can be no account stated where no account was presented or where any dispute about the account is shown to have existed." *See Reisman, Peirez & Reisman,*

*L.L.P. v. Gazzara*, 839 N.Y.S.2d 436 (N.Y. Sup. Ct. 2007); *Abbott, Duncan & Wiener v. Ragusa*, 214 A.D.2d 412 (N.Y. App. Div. 1st Dep't 1995); *Waldman v. Englishtown Sportswear*, 92 A.D.2d 833, 836 (N.Y. App. Div. 1st Dep't 1983); *Volkening v. De Graaf*, 81 N.Y. 268 (N.Y. 1880). In the cases cited by Plaintiff Goldhaber, the defendants all received invoices from the plaintiffs. *Lankler Siffert & Wohl, LLP v. Rossi*, 287 F. Supp. 2d 398, 401 (S.D.N.Y. 2003); *Ally & Gargano, Inc. v. Comprehensive Accounting Corp.*, 615 F. Supp. 426, 429 (S.D.N.Y. 1985); *Chisholm-Ryder Co. v. Sommer & Sommer*, 70 A.D.2d 429, 431–33 (N.Y. App. Div. 4th Dep't 1979). In the present case, despite Plaintiff Goldhaber's claim that it "regularly submitted invoices to defendants,"[2] Defendant BM&N never received a single invoice directly from Plaintiff Goldhaber. *See* Ex. 2 at ¶ 5. Defendant BM&N's name does not appear on any of Plaintiff Goldhaber's invoices. *See* Exs. 13-16 to Plaintiff's Motion. Therefore, as a matter of law, Plaintiff cannot establish the first element of his cause of action for account stated against Defendant BM&N. As Plaintiff Goldhaber cannot present evidence that it presented an account to Defendant BM&N, it certainly cannot establish that Defendant BM&N accepted the account as correct or promised to pay the amounts stated. *See Volkening*, 81 N.Y. at 272 (no assent where there was no account delivered). Therefore, Plaintiff's Motion as to Defendant BM&N should be denied.

**D.   PLAINTIFF'S MOTION SHOULD BE DENIED AS TO BOTH DEFENDANTS BECAUSE THERE WAS NO MUTUAL ASSENT TO THE SUM OF THE ACCOUNT ALLEGEDLY DUE.**

In order to prevail on an account stated claim, "there must be a manifested mutual assent to a stated sum as the amount due." *Daube v. United States*, 289 U.S. 367, 370 (U.S. 1933); *Newburger-Morris, Co v. Talcott*, 219 N.Y. 505, 512 (N.Y. 1916). As the evidence

---

[2] *See* Plaintiff's Memorandum In Support of Motion for Summary Judgment Pursuant to Rule 56 F.R.C.P ("Plaintiff's Memorandum"), p. 3. As Plaintiff's Memorandum does not contain page numbers, Defendants must refer to the PDF page numbers.

demonstrates, Defendants were unaware that Plaintiff Goldhaber continued to review materials after the meeting with Ed Blizzard on May 1, 2006. *See* Ex. 1 at ¶ 5; Ex. 2 at ¶ 6.  Therefore, there could be no "mutual assent" to the account stated or to the work being performed by Plaintiff Goldhaber. *See Paul, Weiss, Rifkind, Wharton & Garrison v. Berezin*, 1980 U.S. Dist. LEXIS 14012, *7 (S.D.N.Y. 1980) (denying summary judgment where "defendants not only vigorously contest the amount of plaintiff's bill and claim that it is excessive, but also allege that they never acquiesced in the stated sum"); *Tri-State Envtl. Contr., Inc. v. M.H. Kane Constr., Inc.*, 2006 NY Slip Op 240, *1 (N.Y. App. Div. 1st Dep't 2006) (holding that defendant made a showing of a "meritorious defense to plaintiff's account stated claim, by specifying instances where plaintiff's performance of work was allegedly unauthorized or poorly performed resulting in defendant suffering damages.").  If Plaintiff Goldhaber contends, as it apparently does, that Defendant BM&N instructed Gerald Goldhaber to continue his review of deposition and trial transcripts following his May 1, 2006 meeting with Ed Blizzard (*see* Ex. 17 to Plaintiff's Motion), which Defendant BM&N expressly denies, a fact issue clearly exists, thereby precluding summary judgment.

E.  **PLAINTIFF'S MOTION SHOULD BE DENIED AS TO DEFENDANT JACKS BECAUSE PLAINTIFF GOLDHABER HAS FAILED TO DEMONSTRATE THE ABSENCE OF A GENUINE ISSUE OF MATERIAL FACT WITH RESPECT TO THE SECOND AND THIRD ELEMENTS OF HIS CAUSE OF ACTION.**

Plaintiff Goldhaber does not allege that Defendants expressly accepted its account as correct or promised to pay the amounts stated.  Rather, Plaintiff Goldhaber incorrectly avers that Defendants "made partial payments on the account" and "did not question the accuracy of the invoices," thus suggesting that Defendants *impliedly* accepted the account as correct and agreed to pay the amounts stated. *See* Plaintiff's Memorandum, p. 3.

The acceptance of the account as correct and a promise to pay the amount stated may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time or makes a partial payment on an account. *Houbigant, Inc*, 679 F. Supp. 2d at 395. Whether a party objects to an account stated within a reasonable time is a question for the jury. *See Gazzara*, 839 N.Y.S.2d at 436 (holding that "whether, under the circumstances of this case, a delay of five months before challenging the statement of an account was reasonable, is a question of fact"); *Shea & Gould v. Burr*, 194 A.D.2d 369, 370 (N.Y. App. Div. 1st Dep't 1993) (holding that five months is a reasonable time for objections to bills to be made); *Genuity v. Nortel*, 2002 U.S. Dist. LEXIS 23849, *1 (S.D.N.Y. 2002) ("[W]here the question is whether the alleged debtor retained a statement of account without objecting within a reasonable time," the issue "almost always is for the jury").

In the present, full payment was made by Defendant Jacks for the *authorized and mutually agreed upon work* that Plaintiff Goldhaber performed at the request of Defendant Jacks in 2005. *See* Ex. 1 at ¶4. However, no payments have ever been made by either Defendant for the 2006 invoices representing the *unauthorized* work allegedly performed by Plaintiff Goldhaber. *See id.*; *see also*, Ex. 2 at ¶ 5. In fact, shortly after receiving the 2006 invoices, Tommy Jacks sent a letter and e-mail to Gerald Goldhaber stating as follows:

> I had assumed Ed Blizzard has asked you to do this work in anticipation of his upcoming MDL trial, and had been forwarding these bills to him for payment. Ed advised me today that he hasn't talked to you since he met with you in May and that he had no idea you were doing this work…for my own part, I haven't spoken with you or anyone in your office since I helped set up your meeting with Ed in early May. Please stop working immediately.

*See* Exs. A and B to Declaration of Tommy Jacks (Ex. 1). Furthermore, upon receiving a "demand letter" from Plaintiff Goldhaber's counsel, Defendant Jacks sent a letter the very next

day further disputing Plaintiff Goldhaber's claim. *See* Ex. 1 at ¶ 8, 9; *see also*, Exhibits C and D to Declaration of Tommy Jacks (Ex. 1).

In a case markedly similar to this one, the defendants informed the plaintiff by e-mail that "no further payments would be made on outstanding invoices issued with respect to two of the projects, pending a review of plaintiff's progress and the amounts billed." *RPI Professional Alternatives, Inc. v. Citigroup Global Mkts. Inc.*, 61 A.D.3d 618 (N.Y. App. Div. 1st Dep't 2009). The court found that "Plaintiff's acknowledged receipt of such written objection negates the inference that defendant assented to the outstanding invoices for those projects." *Id.*; *see also Interpetrol Bermuda, Ltd. v. Rosenwasser*, 1987 U.S. Dist. LEXIS 8512, at *3 (S.D.N.Y. Sept. 21, 1987) ("In New York, a timely and vigorous protest after receiving a bill is probative of the fact that no account is stated."); *Pepper's Steel & Alloys, Inc. v. Lissner Minerals & Metals, Inc.*, 494 F. Supp. 487, 496 (S.D.N.Y. 1979). Defendant Jacks clearly disputed the invoices presented by Plaintiff Goldhaber and its attorney, and made it clear that the work detailed in the invoices was unauthorized. Plaintiff Goldhaber acknowledged these protests. *See* Exs. 17, 18 to Plaintiff's Motion. Therefore, Plaintiff Goldhaber cannot establish as a matter of law that Defendants impliedly accepted the account as correct and agreed to pay the amounts stated.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court deny Plaintiff's Motion for Summary Judgment.

Respectfully Submitted,

SEEGER WEISS LLP

s/Christopher A. Seeger
Christopher A. Seeger (CS-4880)
One William Street
New York, New York 10004

Tel. 212-584-0700

Attorneys for Blizzard, McCarthy & Nabers, LLP, and Tommy Jacks, P.C. d/b/a The Jacks Law Firm

Dated:  June 15, 2010

## CERTIFICATE OF SERVICE

I, J. Daniel Mora, hereby certify that on June 15, 2010 I caused to be served a true and

correct copy of the foregoing document:

> DEFENDANTS' RESPONSE AND INCORPORATED MEMORANDUM IN
> OPPOSITIONTO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
> PURSUANT TO RULE 56 F.R.C.P.

by hand delivery on the following attorney of record for plaintiff at the following address:

> **Robert Lawrence Cohen**
> Law Office of Robert L. Cohen, Esq.
> 1350 Broadway, Suite 2500
> New York, NY 10018
> T. (212) 736-6800

J. Daniel Mora

# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
--------------------------------------------------X

GOLDHABER RESEARCH ASSOCIATES, LLC,

Plaintiff,

-AGAINST-

TOMMY JACKS, P.C. D/B/A THE JACKS LAW
FIRM and BLIZZARD, MCCARTHY
& NABERS, LLP,

Defendants.

--------------------------------------------------X

VIOXX PRODUCT
LIABILITY LITIGATION
MDL NO. 1657

## DECLARATION OF EDWARD F. BLIZZARD

I, EDWARD BLIZZARD, declare under penalty of perjury that the foregoing is true and correct:

1.      My full name is Edward Francis Blizzard.  I am over the age of 18, have never been convicted of any felony or crime of moral turpitude, and have personal knowledge of the facts stated in this declaration.

2.      I am an attorney licensed to practice in Texas.  I am a partner of Blizzard, McCarthy & Nabers, LLP, a limited liability partnership located in Houston, Texas.

3.      I was introduced to Gerald Goldhaber, who I believe is the President of Goldhaber Research Associates, LLC, by Tommy Jacks, an attorney with the Austin law firm of Tommy Jacks, PC.  I met with Gerald Goldhaber on May 1, 2006 in New York regarding his consulting with my law firm and possibly providing expert services concerning certain "warnings" issues in

*Mason v. Merck & Co., Inc.*, a case filed by my firm which was scheduled to be tried in the MDL 1657 before Judge Eldon E. Fallon beginning on October 30, 2006.

4.      Prior to our meeting, my office provided Goldhaber with some materials to review so that he would be prepared for the meeting.  Those materials included depositions of various witnesses in the Vioxx litigation, scientific studies pertaining to Vioxx, and some Vioxx trial transcripts, including *Plunkett v. Merck & Co., Inc.* which was the first case tried before Judge Fallon in MDL 1657.

5.      Ultimately, I decided against retaining Gerald Goldhaber as an expert.  I had no further contact with him after May 2006.  To my knowledge, no one else with Blizzard, McCarthy & Nabers, LLP had any further contact with him.  Blizzard, McCarthy & Nabers, LLP did not pay Goldhaber's retainer fee, did not receive invoices, bills or statements directly from Goldhaber Research Associates, LLC, and did not issue any payments to Goldhaber Research Associates, LLC.

6.      I later learned that Goldhaber Research Associates, LLC. sent invoices to Tommy Jacks, PC. for the approximate amount of $156,000 for services allegedly rendered between May and August of 2006 in connection with the Vioxx litigation.  Tommy Jacks, PC forwarded the invoices to me.  I was never contacted by Gerald Goldhaber or any other representative or employee of Goldhaber Research Associates, LLC requesting prior authorization to perform the work described in those invoices.  I have never received any written comments, notes, summaries or other work product from Goldhaber.  I was not aware that Goldhaber had reviewed any documents since prior to his meeting with me on May 1, 2006.

7.      Blizzard, McCarthy & Nabers, LLP tried the *Mason* case before Judge Fallon from October 30, 2006 to November 15, 2006.  Goldhaber was not designated as an expert in the

2

case, did not prepare a report or give a deposition in the case, had no involvement as a consultant or in preparing for the trial, and did not testify at trial.   Rather, BM&N retained Cornelia Pechmann, Ph.D., a marketing professor at the Paul Merage School of Business at the University of California in Irvine, California, who presented expert testimony on the subject of warnings in the *Mason* case.  Dr. Pechmann reviewed Vioxx materials, prepared a report, gave her deposition and testified at trial.   For these services, Dr. Pechmann charged and was paid a total of $28,232.00 in fees and expenses.

Dated, Houston, Texas
June 15, 2010

EDWARD F. BLIZZARD

Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
--------------------------------------------------X

GOLDHABER RESEARCH ASSOCIATES,
LLC,

                                 Plaintiff,

       -against-

TOMMY JACKS, P.C. d/b/a THE JACKS
LAW FIRM AND BLIZZARD, MCCARTHY
& NABERS, LLP,

                             Defendants.
--------------------------------------------------X

VIOXX PRODUCT
LIABILITY LITIGATION
MDL NO. 1657

## DECLARATION UNDER PENALTY OF
## PERJURY OF WILLIAM THOMAS JACKS

    I, WILLIAM THOMAS JACKS, acting under penalty of perjury pursuant to 28 U.S.C.

§1746, state:

    1.     My full name is William Thomas Jacks. I am the same person who was originally

sued under the name "Tommy Jacks" when this case was originally filed in the transferor court

(and was later dismissed pursuant to a stipulation of dismissal). I am over the age of 18, have

never been convicted of any felony or crime of moral turpitude, and have personal knowledge of

the facts stated in this declaration.

    2.     I am an attorney licensed to practice in Texas. I have been licensed to practice law

in Texas since September 1971. I am an employee of Tommy Jacks, P.C., a Texas professional

corporation that does business as the Jacks Law Firm. I am also an officer and director of

Tommy Jacks, P.C., and am its sole shareholder. For some relevant time periods, Tommy Jacks,

P.C., was a partner with Richard Warren Mithoff, P.C., in the firm of Mithoff & Jacks, LLC. Mithoff & Jacks, LLC, was dissolved in March 2005.

3.      I met on two occasions with Gerald Goldhaber, who I believe is the President of Goldhaber Research Associates, LLC, in 2005, regarding his consulting with my law firm concerning certain "warnings" issues in Vioxx litigation filed by our firm on behalf of its clients. These meetings took place in New York. My law firm received billings from Goldhaber in connection with the time he spent with me in those meetings and in looking at certain materials sent to him in 2005 at or after the time of those meetings. Goldhaber Research Associates, LLC, sent billings to my law firm in 2005 and all of those billings were paid in full. All payments to Goldhaber Research Associates, LLC, for that 2005 work were made by check from the operating account of Tommy Jacks, P.C..

4. True copies of the 2005 invoices my firm, Tommy Jacks, P.C., d/b/a/ Jacks Law Firm, received from Goldhaber Research Associates, LLC, for work performed in 2005, and true copies of the checks issued by Tommy Jacks, P.C., (or in one instance by Tommy Jacks, P.C.'s partner at the time, Richard Warren Mithoff, P.C., in payment for those invoices, are attached as Exhibits 1 – 10 to the Plaintiff's Motion for Summary Judgment filed herein. Specifically, invoices were sent by Plaintiff, and checks were issued by Tommy Jacks, P.C., or Richard Warren Mithoff, P.C., as follows:

| Invoice No.(Date) | Invoice Amt. | Check No./Date | Check Amount |
|---|---|---|---|
| L4276 (3/14/05) | $8,500 | 54791 (3/15/05) | $8,500[1] |
| L4304 (8/22/05) | $7,140[2] | 7623 (10/14/05) | $7,140 |
| L4307 (10/12/05) | $13,943.75 | 7748(10/26/05) | $13,943.75 |

---

[1] The check dated March 15, 2005, was issued by Tommy Jacks P.C.'s partner, Richard Warren Mithoff, P.C..
[2] Invoice L4304 was for a total amount of $15,640, which was reduced to a net amount due of $7,140 after deducting the initial payment of $8,500 as a retainer.

| L4308 (10/12/05) | $13,822.50 | 7749(10/26/05) | $13,928.50 |
| L4314 (11/22/05) | $1,455 | 8233(3/28/06) | $1,455 |

The foregoing invoices represent billings by Plaintiff for all services for which Plaintiff was engaged by Tommy Jacks, P.C. in connection with the Vioxx litigation.  All of these invoices were paid in full. Following the rendering of the services reflected in Plaintiff's Invoice No. L4314 dated November 22, 2005, Tommy Jacks P.C. did not request or authorize Plaintiff to perform any further work of any kind in relation to the Vioxx litigation. More specifically, Tommy Jacks, P.C. did not request or authorize plaintiff to render any of the services or perform any of the work reflected in the four invoices at issue in this case, true copies of which are attached to Plaintiff's Motion for Summary Judgment as Exhibits 13, 14, 15 and 16, being Invoice No. L4342 dated May 18, 2006, in the amount of $28,708.72, Invoice No. L4351 dated July 24, 2006, in the amount of $74,447.50, Invoice No. L4352 dated July 28, 2006, in the amount of $30,070.00, and Invoice No. L4354 dated August 3, 2006, in the amount of $23,280. Tommy Jacks, P.C., made no payment of any amount on any of these four invoices. Thus, it would be erroneous for Plaintiff to claim that Tommy Jacks, P.C., made any "partial payment" of the billings that comprise Plaintiff's claim herein.

5.     In 2006, I was asked by a friend of mine, Ed Blizzard of Blizzard, McCarthy & Nabers, LLP, a Houston, Texas law firm, to help arrange a meeting with Gerald Goldhaber, and I did so. Mr. Blizzard was preparing for a trial to be conducted by the United States District Court for the Eastern District of Louisana, the Honorable Eldon Fallon presiding, in MDL-1657, the court to which all of the Vioxx cases filed in or removed to federal courts in Vioxx-related litigation had been transferred by the Judicial Panel on Multidistrict Litigation.  I believe Mr. Blizzard met with Gerald Goldhaber in May 2006 in New York, New York. I did not attend that

3

meeting. I have no personal knowledge of what occurred at that meeting, and I have no personal knowledge of Gerald Goldhaber's having reached any agreement with anyone to have Plaintiff perform any further services or work of any kind following that meeting. I do know that neither I nor any person acting on behalf of Tommy Jacks, P.C., ever discussed or otherwise communicated with Gerald Goldhaber or any other person at Goldhaber Research Associates, LLC, about rendering any services or performing any work at or after the time of that May 2006 meeting, and I know that neither I nor any other person acting on behalf of Tommy Jacks, P.C., either requested or authorized the performance of any such services or work, and did not agree to pay for the performance of any such services or work.

6. When I received from Plaintiff Invoice No. L432 dated May 18, 2006, I knew that neither I nor anyone associated with Tommy Jacks, P.C., had requested or authorized Plaintiff to perform any of the work reflected therein. I assumed that the invoice had been sent to me in error and must relate to work that Ed Blizzard had asked Dr. Goldhaber to perform when they met earlier in May, so I directed someone in my office to forward the invoice to Mr. Blizzard's office.

7. Later in the summer of 2006 I received three further invoices from Plaintiff and, again, forwarded these to Mr. Blizzard's office.  Subsequently, in late August 2006, someone from Plaintiff's office called my office to inquire about Invoice No. L4342 dated May 18, 2006. Soon after my office received that inquiry, I spoke with Mr. Blizzard on or about August 30, 2006. Mr. Blizzard advised me that he had not talked with Gerald Goldhaber since their meeting in early May 2006 and had no idea that Gerald Goldhaber was doing the work reflected in these three invoices. Mr. Blizzard also told me that while he did have an MDL trial coming up in the fall of 2006, he had not asked Gerald Goldhaber to be an expert witness in that trial.  On or about

August 30, 2006, I also spoke with an attorney named Joe Alexander who is with the Richard Warren Mithoff, P.C., law firm, who advised me that, like Mr. Blizzard, he, too, had not had any communication with anyone at Plaintiff's firm in recent months. That same day, August 30, 2006, I communicated with Gerald Goldhaber in writing by sending both an email and an identically worded letter by fax. A true copy of the faxed letter, along with a copy of the confirmation that it was sent and received, is attached hereto as Exhibit A, and a true copy of the email I sent is attached as Exhibit B.[3]  In those two communications I advised Gerald Goldhaber of my conversations with Mr. Blizzard and Mr. Alexander. I added, "For my own part, I haven't spoken with you or anyone in your office since I helped set up the meeting with Ed in early May." Fearing that Plaintiff might perform still more unauthorized work and attempt to bill for it, I also told Gerald Goldhaber to "stop working immediately."

8. On or about October 30, 2006, I received a letter dated October 24, 2006, from an attorney named Murray J. Grashow of Williamsville, New York, who stated that he was writing on behalf of plaintiff regarding the billings in dispute in this case.  He demanded payment of the sum of $156,506.22 for statements issued by plaintiff between May 18, 2006, and September 18, 2006, and said he would commence suit if payment in full was not received on or before October 31, 2006.  A true copy of this letter is attached hereto as Exhibit C.

9. On October 31, 2006, I directed a letter to Mr. Murray J. Grashow in response to his October 24, 2006, letter. A true copy of my October 31, 2006, letter, along with the fax confirmation showing it was sent and received on that same date, is attached hereto as Exhibit D. In my response I stated, in pertinent part:

As I understand it Dr. Goldhaber's charges relate primarily to his reading of

---

[3]  I know that Mr. Goldhaber received the email because it is reproduced at the bottom of the email strings contained in Exhibits 17 and 18 filed with Plaintiff's Motion for Summary Judgment, and his Exhibit 17 indicates he responded to it the same day, August 30, 2006.

trial transcripts from one or more Vioxx trials. Neither I nor anyone in my law firm sent Dr. Goldhaber any trial transcripts or had any conversation or communication with him about any trial transcripts, let alone authorized, requested or directed him to read any trial transcripts. Except for my efforts to help arrange a meeting between Dr. Goldhaber and another Texas lawyer, Ed Blizzard, in May neither I nor anyone in my office has initiated any communication with Dr. Goldhaber since 2005, prior to my having sent him an email in August after his Office called to inquire about a May 2006 billing.

I did not attend the meeting Dr. Goldhaber had with Mr. Blizzard, nor did anyone else attend on my behalf. Any work Dr. Goldhaber did after that meeting was not done for me or my law firm, or at our request, or with our authority or permission.

The statements quoted above from my October 31, 2006, letter to Mr. Grashow were and are true and correct. That letter was sent over a month before Plaintiff filed this suit in the transferor court on December 1, 2006. Thus, the statement in the Memorandum in Support of Motion for Summary Judgment Pursuant to Rule 56, F.R.C.P. ("Plaintiff's Memorandum") that "[a]n objection to an account stated that is first made only *after litigation on the account stated has commenced* is, as a matter of law, not made in a reasonable time" is inapplicable to the facts of this case, where Plaintiff was placed on notice in writing on August 30, 2006, and again on October 31, 2006, that neither me or my law firm nor Mr. Blizzard's law firm had requested, authorized or directed Plaintiff or its principal, Gerald Goldhaber, to perform the work for which he seeks payment in this action. *See* Plaintiff's Memorandum at 2-3 (emphasis added).

Dated, Austin, Texas
June 14, 2010

WILLIAM THOMAS JACKS





# Jacks Law Firm

TOMMY JACKS ♦ LAURA RUTH JACKS ♦ MARK GUERRERO

August 30, 2006

**VIA FACSIMILE**

Gerald Goldhaber
Goldhaber Research Associates
1525 Amherst Manor Drive, Suite 907
Williamsville, NY 14221

RE:    Vioxx

Dear Gerry:

We've received three invoices from you in recent weeks totaling almost $128,000, apparently for reading Vioxx trial transcripts.  These are in addition to an earlier bill for $28,708.72.

I had assumed Ed Blizzard had asked you to do this work in anticipation of his upcoming MDL trial, and had been forwarding these bills to him for payment.  Ed advised me today that he hasn't talked to you since he met with you in May and that he had no idea you were doing this work.

I also called Joe Alexander in Richard Mithoff's office, and Joe said that he hadn't had any communications with you in recent months either.

For my own part, I haven't spoken with you or anyone in your office since I helped set up your meeting with Ed in early May.

Please stop working immediately.  Richard Mithoff and I have no trials set and no hope of getting any trials set any time in the next 12 months.  Ed Blizzard does have a trial coming up in the MDL but apparently has not asked you to be an expert witness in that trial.

Sincerely,

Tommy Jacks

TJ/dcs

P. 1

* * * COMMUNICATION RESULT REPORT ( AUG. 30. 2006  3:41PM ) * * *

FAX HEADER 1:  JACKS LAW FIRM      512-478-5015
FAX HEADER 2:

TRANSMITTED/STORED : AUG. 30. 2006  3:34PM

| FILE | MODE | OPTION | ADDRESS | RESULT | PAGE |
|------|------|--------|---------|--------|------|
| 0038 | MEMORY TX | G3 : | 7166893342 | OK | 2/2 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL          E-2) BUSY
E-3) NO ANSWER                     E-4) NO FACSIMILE CONNECTION
E-5) MAIL SIZE OVER



# Jacks Law Firm
Tommy Jacks ♦ Laura Ruth Jacks ♦ Mark Guerrero

## FACSIMILE TRANSMISSION

| | |
|---|---|
| Transmission Date: | August 30, 2006 |
| Client/Style: | Vioxx |
| Transmitted To: | Gerald Goldhaber, PhD        716-689-3342 |
| Transmitted By: | Debbie Schumann |
| Transmitted For: | Tommy Jacks |
| Number of Pages (including cover): | 2 |

Original Will Not Follow:      _XX_

Original Will Follow:          _____

NOTES:    **Please see attached letter.**

Should you encounter any difficulties with the reception and/or quality of this transmission, please call us at 512-478-4422.

### Confidentiality Note

The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

1205 Rio Grande Street ♦ Austin, Texas 78701-1709
(512) 478-4422 ♦ Fax (512) 478-5015 ♦ www.jackslawfirm.com



**Debbie Schumann**

| | |
|---|---|
| **From:** | Tommy Jacks |
| **Sent:** | Wednesday, August 30, 2006 2:58 PM |
| **To:** | 'geraldgoldhaber@yahoo.com' |
| **Cc:** | Ed Blizzard Office (E-mail); Dolores (E-mail); Joe Alexander (E-mail); Debbie Schumann |
| **Subject:** | Vioxx |

Gerry:

We've received three invoices from you in recent weeks totaling almost $128,000, apparently for reading Vioxx trial transcripts. These are in addition to an earlier bill for $28,708.72.

I had assumed Ed Blizzard had asked you to do this work in anticipation of his upcoming MDL trial, and had been forwarding these bills to him for payment. Ed advised me today that he hasn't talked to you since he met with you in May and that he had no idea you were doing this work.

I also called Joe Alexander in Richard Mithoff's office, and Joe said that he hadn't had any communications with you in recent months either.

For my own part, I haven't spoken with you or anyone in your office since I helped set up your meeting with Ed in early May.

Please stop working immediately. Richard Mithoff and I have no trials set and no hope of getting any trials set any time in the next 12 months. Ed Blizzard does have a trial coming up in the MDL but apparently has not asked you to be an expert witness in that trial.

Sincerely,

Tommy

Jacks Law Firm
1205 Rio Grande
Austin, Texas 78701
(512)478-4422

1

OCT 30 2006

# GRASHOW LAW OFFICES

5780 Main Street
Williamsville, New York 14221

Tel: 716-634-7400
Fax: 716-634-6236
grashlaw@choiceonemail.com
NOT FOR ELECTRONIC SERVICE OF PROCESS

October 24, 2006



EXHIBIT

C

**_Via Fax (512-478-5015) & U.S. Mail_**
Tommy Jacks, Esq.
Jacks Law Firm
1205 Rio Grande
Austin, TX   78701-1709

Dear Mr. Jacks:

This office represents Goldhaber Research Associates, LLC. My client has forwarded a matter involving your law firm for collection.

As you are aware, Dr. Goldhaber, President and C.E.O. of Goldhaber Research, LLC, was engaged by your firm with regard to Vioxx litigation as an expert witness. I have been furnished copies of the statements of account as provided to you between the dates of May 18, 2006 and September 18, 2006. I have also been forwarded copies of the email transmissions which were forwarded by Dr. Goldhaber and your responses thereto.

I have been instructed by my client to commence an action for the collection of monies due which total $156,506.22, together with accrued interest.

It would certainly be our hope that payment will be forthcoming in order to avoid protracted litigation.

However, my client has instructed me to take such actions as are necessary to protect the interests of Goldhaber Research Associates, LLC, with regard to this matter unless payment is received in full on or before October 31, 2006.

If you wish to discuss this matter further, please contact me at your convenience.

Sincerely,

GRASHOW LAW OFFICES

_Murray J. Grashow L_

Murray J. Grashow
(Signed in Attorney's Absence)

MJG:fsb
cc:   Gerald M. Goldhaber, PhD
      **_(Via Fax (689-3342) and by Email geraldgoldhaber@yahoo.com)_**

C:\data\MyFiles\data\Collections\Goldhaber Research v. Jacks\Correspondence\Jacks (10-24-06).wpd





TOMMY JACKS ♦ LAURA RUTH JACKS ♦ MARK GUERRERO

October 31, 2006

Murray J. Grashow
Grashow Law Offices
5780 Main Street
Williamsville, NY 14221

RE:   Goldhaber Research Associates, LLC

Dear Mr. Grashow:

I received your letter of October 24, 2006, relating to charges by Goldhaber
Research Associates. As I understand it, Dr. Goldhaber's charges relate primarily to his
reading of trial transcripts from one or more Vioxx trials. Neither I nor anyone in my law
firm sent Dr. Goldhaber any trial transcripts or had any conversation or communication
with him about any trial transcripts, let alone authorized, requested or directed him to
read any trial transcripts. Except for my efforts to help arrange a meeting between Dr.
Goldhaber and another Texas lawyer, Ed Blizzard, in May, neither I nor anyone in my
office has initiated any communication with Dr. Goldhaber since 2005, prior to my
having sent him an email in August after his office called to inquire about a May 2006
billing.

I did not attend the meeting Dr. Goldhaber had with Mr. Blizzard, nor did anyone
else attend on my behalf. Any work Dr. Goldhaber did after that meeting occurred was
not done for me or my law firm, or at our request, or with our authority or permission.

If Dr. Goldhaber has any interest in trying to work something out, doing so will
necessarily involve including other lawyers in the loop, not just me. Mr. Blizzard has just
begun a Vioxx trial in federal court in New Orleans and will be totally unavailable for the
next few weeks. Any further discussions would have to take place after he is out of trial.

Please feel free to get in touch with me if you have any further questions.

Sincerely,

Tommy Jacks

# HP LaserJet *3330*



JACKS LAW FIRM
512-457-8916
Oct-31-2006    4:05PM

## Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 247 | 10/31/2006 | 4:04:18PM | Send | 917166346236,2227 | 1:26 | 2 | OK |


### Jacks Law Firm
Tommy Jacks • Laura Ruth Jacks • Mark Overaido

**FACSIMILE TRANSMISSION**

| | |
|---|---|
| Transmission Date: | October 31, 2006 |
| Client/Style: | Goldhaber Research Associates, LLC |
| Transmitted To: | Murray J. Grashow    716-634-6236 |
| Transmitted By: | Debbie Schumann |
| Transmitted For: | Tommy Jacks |
| Number of Pages (including cover): | 2 |
| Original Will Not Follow: | _XX_ |
| Original Will Follow: | ____ |

NOTES:    Please see attached letter. Thank you.

Should you encounter any difficulties with the reception and/or quality of this transmission, please call us at 512-478-4422.

**Confidentiality Note**

The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

1205 Rio Grande Street ◆ Austin, Texas 78701-1709
(512) 478-4422 ◆ Fax (512) 478-5015 ◆ www.jackslawfirm.com