# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AvMed, Inc.; Aetna, Inc.; Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company; HMO Partners, Inc. d/b/a Health Advantage; USAble Life; BCBSD, Inc. d/b/a Blue Cross Blue Shield of Delaware; Blue Cross & Blue Shield of Mississippi; Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Arizona, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; Blue Cross and Blue Shield of Vermont; Blue Cross Blue Shield Association; BlueCross and BlueShield of Florida, Inc.; BlueCross BlueShield of Tennessee; CareFirst, Inc.; Connecticut General Life Insurance Company; Government Employee's Health Association, Inc.; Great-West Life & Annuity Insurance Company; Group Health Incorporated; The Guardian Life Insurance Company of America; Harvard Pilgrim Health Care, Inc.; Hawaii Medical Service Association; Health Net, Inc.; Highmark, Inc.; Highmark West Virginia Inc. d/b/a Mountain State Blue Cross and Blue Shield; HIP Health Plan of New York; Humana, Inc.; Johns Hopkins Health Care LLC; KPS Health Plans; Noridian Mutual Insurance Company; Priority Health; Regence BlueCross BlueShield of Oregon; Regence BlueCross BlueShield of Utah; Regence BlueShield of Idaho; Regence BlueShield; Asuris Northwest Health; Regence Life and Health Insurance Company; Trustmark Life Insurance Company and Trustmark Insurance Company; UnitedHealth Group Incorporated; Vista Healthplan, Inc.; Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa; Wellmark of South Dakota, Inc. d/b/a Wellmark | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § CIVIL ACTION NO. 2:08-cv-1633 SECTION L   MAG. 3 In Relation to: Docket No. 1657 In Re: VIOXX PRODUCTS LIABILITY LITIGATION JUDGE FALLON MAGISTRATE JUDGE KNOWLES |

| | |
|---|---|
| Blue Cross and Blue Shield of South Dakota; Wellmark Health Plan of Iowa, Inc.; and WellPoint, Inc. | §<br>§<br>§<br>§<br>§ |
| | §<br>§ |
| v. | §<br>§ |
| Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, PC; The Branch Law Firm; Cohen Placitella & Roth; Cohen Seglias Pallas Greenhall & Furman PC; Hovde Dassow & Deets; Kasowitz, Benson, Torres & Freidman, PC; Kline & Specter, PC; The Lanier Law Firm; Morelli Ratner, PC; Locks Law Firm; Parks Crump, PC; and Weitz & Luxenberg, PC *(formerly the "John Doe" Defendants)* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## CORRECTED SECOND AMENDED COMPLAINT

For their Second Amended Complaint, Plan Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.     Plan Plaintiffs AvMed, Inc. ("AvMed"); Aetna, Inc. ("Aetna"); Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company ("Arkansas BCBS"); HMO Partners, Inc. d/b/a Health Advantage ("Health Advantage"); USAble Life ("USAble"); BCBSD, Inc. d/b/a Blue Cross Blue Shield of Delaware ("BCBS Delaware"); Blue Cross & Blue Shield of Mississippi ("BCBS Mississippi"); Blue Cross & Blue Shield of Rhode Island ("BCBS Rhode Island"); Blue Cross and Blue Shield of Arizona, Inc. ("BCBS Arizona"); Blue Cross and Blue Shield of Kansas, Inc. ("BCBS Kansas"); Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBS Massachusetts"); Blue Cross and Blue Shield of North Carolina ("BCBS North Carolina"); Blue Cross and Blue Shield of Vermont ("BCBS Vermont"); Blue Cross Blue Shield Association

("BCBS Association"); Blue Cross and Blue Shield of Florida, Inc. ("BCBS Florida"); Blue Cross Blue Shield of Tennessee ("BCBS Tennessee"); CareFirst, Inc. ("CareFirst"); Connecticut General Life Insurance Company ("CGLIC"); Government Employee's Health Association, Inc. ("GEHA"); Great-West Life & Annuity Insurance Company ("Great-West"); Group Health Incorporated ("GHI"); The Guardian Life Insurance Company of America ("Guardian"); Harvard Pilgrim Health Care, Inc. ("Harvard Pilgrim"); Hawaii Medical Service Association ("HMSA"); Health Care Service Corporation ("HCSC"); Health Net, Inc. ("Health Net"); Highmark, Inc. ("Highmark"); Highmark West Virginia Inc. d/b/a Mountain State Blue Cross and Blue Shield ("BCBS Mountain State"); HIP Health Plan of New York ("HIP"); Humana, Inc. ("Humana"); Johns Hopkins Health Care LLC ("Johns Hopkins"); KPS Health Plans ("KPS"); Noridian Mutual Insurance Company ("Noridian"); Priority Health ("Priority"); Regence BlueCross BlueShield of Oregon ("RBCBS Oregon"); Regence BlueCross BlueShield of Utah ("RBCBS Utah"); Regence BlueShield of Idaho ("RBS Idaho"); Regence BlueShield ("RBS"); Asuris Northwest Health ("Asuris"); Regence Life and Health Insurance Company ("Regence Life"); Trustmark Life Insurance Company and Trustmark Insurance Company ("Trustmark"); United HealthCare Services, Inc. on behalf of its affiliates and subsidiaries ("UHC"); Vista Healthplan, Inc. ("Vista"); Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa ("Wellmark BCBS Iowa"); Wellmark of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue Shield of South Dakota ("Wellmark South Dakota"); Wellmark Health Plan of Iowa, Inc. ("Wellmark Iowa"); and WellPoint, Inc. ("Wellpoint") (collectively, "Plan Plaintiffs") bring this action for constructive trust and reimbursement of certain identified funds held or soon to be held in trust by Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, PC ("Anapol Schwartz"); The Branch Law Firm ("Branch"); Cohen Placitella & Roth ("Cohen Placitella");

Cohen Seglias Pallas Greenhall & Furman PC ("Cohen Seglias"); Hovde Dassow & Deets ("Hovde Dassow"); Kasowitz, Benson, Torres & Freidman, PC ("Kasowitz Benson"); Kline & Specter, PC ("Kline & Specter"); The Lanier Law Firm ("Lanier"); Locks Law Firm ("Locks") Morelli Ratner, PC ("Morelli Ratner"); Parks Crump, PC ("Parks Crump"); and Weitz & Luxenberg, PC ("Weitz & Luxenberg") (collectively, the "Defendant Law Firms").

2.        These funds have been paid by Merck & Co., Inc. ("Merck") to settle personal injury claims of persons either (a) covered by Plan Plaintiffs under contracts of insurance or (b) provided services under plans sponsored or administered by Plan Plaintiffs.  Plan Plaintiffs seek all available relief, including (a) equitable relief under § 502(a)(3) of The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1123(a)(3); (b) legal and equitable relief under The Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.*; and (d) legal relief as Medicare Advantage providers as defined in the Balanced Budget Act of 1997, the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, and federal regulations promulgated under those laws.  Under principles of equity and as provided by these federal statutes, Plan Plaintiffs are entitled to reimbursement of medical expenses that they paid on behalf of settling plan members' medical treatment attributed to their use of Vioxx.

3.        Plan Plaintiffs provide health insurance or administrative services for health plans that have provided medical benefits associated with their members' use of Vioxx and that have equitable and legal rights to reimbursement for those benefits from identifiable settlement funds paid by third-party tortfeasors to settle claims asserted by such plan members.  Plan Plaintiffs bring this Complaint on behalf of themselves; their subsidiaries and affiliates that are sponsors, administrators, or carriers; and the self-funded health plans they administer and that have authorized them to pursue recoveries of plan-related losses.

4.        On November 9, 2007, Merck and a steering committee of personal injury lawyers (the "Plaintiffs' Steering Committee" or "PSC") reached a nationwide, global settlement (the "Settlement Agreement") with Claimants asserting personal injury claims associated with their use of Vioxx (the "Vioxx Claimants" or "Claimants"). Pursuant to the Settlement Agreement, Merck provided $4.85 billion for the creation of a settlement trust fund (the "Settlement Fund") to resolve the personal injury claims of qualifying Vioxx Claimants.

5.        Plan Plaintiffs have researched public records and identified a partial list of individual Vioxx Claimants, all of whom have been given notice through their respective counsel that they owe and are due to pay specific settlement funds to Plan Plaintiffs. Plan Plaintiffs have also given notice to the Defendant Law Firms that Plan Plaintiffs have medical liens against the monies that they have received or will receive from the Vioxx Settlement Administrator.

6.        This action is brought to (a) enforce Plan Plaintiffs' lien rights and rights of reimbursement out of the specific settlement funds that the claims administrator has identified as belonging to specific Vioxx Claimants represented by the Defendant Law Firms, (b) seek restitution for the medical expenses Plan Plaintiffs' incurred on behalf of Vioxx Claimants from such settlement funds, and (c) seek other appropriate equitable and legal relief.

7.        This action is brought against The Defendant Law Firms solely in their capacity as custodians for settlement monies received on behalf of Vioxx Claimants. The Vioxx Claimants who are the subject of this lien enforcement proceeding have rejected the Court's private payer lien resolution program, so the fruits of the discounts negotiated with Plan Plaintiffs and the other participating private insurers are no longer available to them. Accordingly, Plan Plaintiffs, through this action, seek restitution under federal and state law for the full amount of their liens, regardless of whether any settlement monies remain for distribution to Vioxx Claimants.

## PARTIES

8.        Plaintiff BCBS Association is organized and existing under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.

9.        Plan Plaintiff BCBS Florida is a nonprofit corporation organized and existing under the laws of the State of Florida with its principal place of business in Jacksonville, Florida.

10.       Plan Plaintiff BCBS Kansas is a mutual life insurance company organized and existing under the laws of the State of Kansas with its principal place of business in Topeka, Kansas.

11.       Plan Plaintiff BCBS North Carolina organized and existing under the laws of the State of North Carolina with its principal place of business in Durham, North Carolina.

12.       Plan Plaintiff BCBS Rhode Island is a nonprofit medical and hospital service corporation organized and existing under the laws of the State of Rhode Island with its principal place of business in Providence, Rhode Island.

13.       Plan Plaintiff CareFirst is organized and existing under the laws of the State of Maryland with its principal place of business in Owings Mills, Maryland.

14.       Plan Plaintiff HCSC is organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois.

15.       Plan Plaintiff HMSA is a mutual benefit society organized and existing under the laws of the State of Hawaii with its principal place of business in Honolulu, Hawaii.

16.       Plan Plaintiff Humana is organized and existing under the laws of the State of Delaware with its principal place of business in Louisville, Kentucky.

17.       Plan Plaintiff Noridian is a not-for-profit corporation organized and existing under the laws of the State of North Dakota with its principal place of business in Fargo, North Dakota.

18.       Plan Plaintiff Priority is a not-for-profit corporation organized and existing under the laws of the State of Michigan with its principal place of business in Grand Rapids, Michigan.

19.       Plan Plaintiff UHC is organized and existing under the laws of the State of Minnesota with its principal place of business in Minnetonka, Minnesota.

20.       Each Plan Plaintiff offers coordinated health benefits and insurance coverage and related services to employer groups, government-sponsored plans, and individuals.

21.       Each Plan Plaintiff provided health insurance benefits to Vioxx Claimants represented by Defendant Law Firms in order to treat medical problems that Vioxx Claimants allege were caused by Vioxx.

22.       Plan Plaintiffs BCBS Florida, BCBS Kansas, BCBS North Carolina, BCBS Rhode Island, CareFirst, HCSC, HMSA, Humana, Noridian, Priority, and UHC (collectively, the "ERISA Plan Plaintiffs") are insurers or claims administrators for "employee welfare benefits plans" as defined by 29 U.S.C. § 1002(1) of ERISA, and thus have authority to bring these actions to recover sums for which reimbursement is due under the reimbursement provisions of these plans.  Upon information and belief, The ERISA Plan Plaintiffs insure or insured some identifiable Vioxx Claimants represented by Defendant Law Firms.

23.       Plan Plaintiffs Humana, UHC, and BCBS Association (collectively, the "FEHBA Plan Plaintiffs") are qualified healthcare companies that have contracted with the Federal Office of Personnel Management to provide health insurance to federal employees under FEHBA. Upon information and belief, The FEHBA Plan Plaintiffs insure or insured identifiable Vioxx Claimants represented by Defendant Law Firms.

24.       Plan Plaintiffs Humana and UHC (collectively, the "Medicare Advantage Plan Plaintiffs") are qualified healthcare companies that have contracted with the Center for Medicare

and Medicaid Services ("CMS") to administer Medicare benefits to Medicare beneficiaries under Parts C and D of the Medicare Act. Upon information and belief, The Medicare Advantage Plan Plaintiffs provide or provided insurance to identifiable Vioxx Claimants represented by Defendant Law Firms.

25.     Does 1, 2, 3, etc. are individuals or entities who are known to Defendant Law Firms but not to Plan Plaintiffs, who or which (a) have exercised or will exercise control over the disposition of aforesaid Settlement Fund; (b) have received medical benefits from Plan Plaintiffs' Health Benefit Plans, including ERISA, FEHBA, and Medicare Advantage plans, for medical treatment attributable to their use of Vioxx and who have claimed or will claim money from the Funds; or (c) are agents or attorneys of individuals identified in subsection (b) herein.

26.     Defendant Anapol Schwartz is a Philadelphia law firm located at 1710 Spruce Street, Philadelphia, Pennsylvania 19103.

27.     Defendant Branch is a New Mexico law firm located at 2025 Rio Grande Boulevard Northwest, Albuquerque, NM 87104.

28.     Defendant Cohen Placitella is a Philadelphia law firm located at 2100 Market Street, Philadelphia, Pennsylvania 19013.

29.     Defendant Cohen Seglias is a Philadelphia law firm located at 30 South 17th Street, 19th Floor, Philadelphia, PA 19103. Cohen Seglias also has offices in New Jersey, Delaware, and West Virginia.

30.     Defendant Hovde Dassow is an Indiana law firm located at 201 West 103rd Street, Indianapolis, IN 46290.

31.     Defendant Kasowitz Benson is a New York law firm located at 1633 Broadway, New York, New York 10019.  Kasowitz Benson also has offices located in Houston, Texas; Atlanta, Georgia; Miami, Florida; San Francisco, California; and Newark, New Jersey.

32.     Defendant Kline & Specter is a Pennsylvania law firm located at 1525 Locust Street, Philadelphia, Pennsylvania 19102.

33.     Defendant Lanier is a Texas law firm with offices in Houston, Texas, Los Angeles, California, Palo Alto, California and New York, New York.

34.     Defendant Locks is a New Jersey law firm located at 457 Haddonfield Road, Suite 500, Cherry Hill, New Jersey 08002.  Locks also has offices located in New York and Pennsylvania.

35.     Defendant Morelli Ratner is a New York law firm located at 950 Third Avenue, New York, New York 10022.

36.     Defendant Parks Crump is a Florida law firm located at 240 North Magnolia Drive, Tallahassee, Florida  32301.

37.     Defendant Weitz & Luxenberg is a New York law firm located at 700 Broadway, New York, New York 10003.

## JURISDICTION AND VENUE

38.     This Court has jurisdiction over Plan Plaintiffs' claims related to ERISA and Medicare Advantage pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

39.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plan Plaintiffs' claims related to FEHBA, because those claims are so related to Plan Plaintiffs' other claims that they form part of the same case or controversy under Article III of the United States Constitution.

40.     Pursuant to 29 U.S.C. § 1332(e)(2), venue is proper in this Court because this Court is overseeing the Multidistrict Vioxx proceedings and the Settlement Fund has been and will be administered in this district.

## FACTUAL ALLEGATIONS

41.     Vioxx is an anti-inflammatory drug and pain reliever containing rofecoxib.  It is a cox-2 specific inhibitor and is among the class of drugs known as NSAIDs.

42.     Merck obtained Food and Drug Administration ("FDA") approval for Vioxx in or about May 1999 and began the distribution and sale of Vioxx throughout the United States immediately thereafter.

43.     On September 30, 2004, Merck pulled Vioxx from the market due to concerns that the drug increased the risk of heart attacks and strokes in users.  By the time it was withdrawn from the market, more than 20 million people in the United States had taken Vioxx.

44.     As a result of the safety issues associated with Vioxx, tens of thousands of individuals filed personal injury claims in the United States against Merck.

45.     On November 9, 2007, Merck and the PSC entered into the Settlement Agreement.

46.     Pursuant to the Settlement Agreement, Merck created a $4.85 billion Settlement Fund to resolve certain personal injury claims alleged to be associated with Vioxx.

47.     The Settlement Agreement provided that an Escrow Agent, pursuant to an Escrow Agreement, would oversee various Escrow Funds into which Merck would pay the $4.85 billion. The Agreement defined the Escrow Funds to include an Administrative Expenses Fund, an MI (Myocardial Infarction) Settlement Fund, and an IS (Ischemic Stroke) Settlement Fund.  The

Settlement Agreement defined "Escrow Agent" to mean U.S. Bancorp (or some other entity later appointed to so serve).

48.     The claims that are subject to the Settlement Agreement included (a) claims asserted in lawsuits pending in various state and federal courts, and (b) claims subject to a tolling agreement with Merck.  Individuals who owned such claims were collectively referred to in the Settlement Agreement as "Eligible Claimants."

49.     Those "Eligible Claimants" who properly completed certain enrollment forms by March 1, 2008 became "Enrolled Program Claimants."

50.     Those Enrolled Program Claimants who then meet certain Eligibility Requirements became "Qualifying Program Claimants" and were entitled to varying levels of settlement payments from the Settlement Fund.

51.     The Settlement Agreement provided mechanisms to respect the reimbursement rights of governmental, but not private, providers of health benefits.  For example, pursuant to § 12.1.1 of the Settlement Agreement, each Enrolled Program Claimant was required to identify to Merck and a settlement administrator all <u>governmental</u> third-party payers who were known to hold or assert a statutory lien over any settlement payment to be made by the Settlement Fund.  No such requirement existed with respect to non-governmental third-party payers' liens.

52.     Similarly, pursuant to § 12.1.3 of the Settlement Agreement, Enrolled Program Claimants were required to establish for Merck and the Claims Administrator the satisfaction of all <u>governmental</u> third-party payer liens before said Claimants could receive any settlement payments from the Settlement Fund.  No such requirement existed with respect to the satisfaction of non-governmental third-party payers' liens.

53.     Plan Plaintiffs paid medical expenses incurred by Enrolled Program Claimants as a consequence of Vioxx-related medical conditions.  These benefits were provided to Enrolled Program Claimants under agreements and coverage documents that give Plan Plaintiffs, among other rights: (a) rights of reimbursement, which create a lien for restitution from any identifiable funds recovered by the Health Benefit Plan member from a tortfeasor to pay for the Health Benefit Plan's Vioxx-related expenditures for healthcare benefits from the Enrolled Program Claimants; (b) rights to prompt notice from covered persons who initiate or settle claims against third party tortfeasors for medial treatment of Vioxx-related conditions paid for by said Health Benefit Plans; and (c) other similar rights that are necessary to protect Health Benefit Plans' ability to enforce their reimbursement rights.

54.     For example, Aetna is a health benefit plan that paid medical expenses incurred by Enrolled Program Claimants as a consequence of Vioxx-related Medical conditions.  Aetna provided said benefits to plan members in California from August 2003 until the present pursuant to coverage documents that provided:

> The Member specifically acknowledges the HMO's right of reimbursement.  This right of reimbursement attaches, to the fullest extent permitted by law, when HMO has provided health care benefits for injuries or illness for a which a third party is or may be responsible and the Member and/or the Member's representative has recovered any amounts from the third party or any part making payments on the third party's behalf.   By using any benefit under this EOC, Member grants, to the extent permitted by law, an assignment of the proceeds of any settlement, judgment or other payment received by the Member to the extent of the value of all benefits provided by HMO.

55.     The list of individuals who are Eligible Claimants (and those who became Qualifying Program Claimants) was and is not publicly available.  Thus, the identities of the Eligible Claimants are known to Merck and to the Defendant Law Firms but are unknown to Plan Plaintiffs.

56.     It is not possible through reasonable diligence for Plan Plaintiffs to utilize publicly-available materials to identify all of the participants in the Vioxx Settlement Program.  First, there is no publicly-available listing of those Claimants who entered into tolling agreements with Merck but who otherwise did not initiate litigation.

57.     Second, although Plan Plaintiffs' records may contain information identifying individuals who were prescribed Vioxx and who suffered from Vioxx-related medical conditions, it is not possible to generate a complete list of Vioxx Claimants by cross-referencing those individuals with publicly-available information identifying Plaintiffs in Vioxx lawsuits. For example, a "John Smith" who files a Vioxx lawsuit could have a name that matches any number of Vioxx-prescribed "John Smiths" in a health plan's records.  However, without a social security number or other unique identifier, it is impossible for the health plan to know which of its plan members with the name "John Smith"—if any—is the same "John Smith" who filed the Vioxx lawsuit.  Also, although a particular Plaintiff may have provided health care coverage to a "John Smith" suffering from a stroke, an entirely different plan may have provided the prescription drug benefits that covered "John Smith's" Vioxx use.  Thus, the Plaintiff's records would not link the stroke to Vioxx use.

58.     It is for reasons like these that Plan Plaintiffs' coverage documents frequently require plan members to notify their health plans when they initiate or settle claims against third party tortfeasors for medical treatment of conditions that have been covered by the health plans.  For example, the Aetna plan documents referenced above require plan members and their representatives to "[n]otify HMO promptly and in writing when notice is given to any third party of the intention to investigate or pursue a claim to recover damages or obtain compensation due

to injuries or illness sustained by the Member than may be the legal responsibility of a third party."

59.       Vioxx Claimants have largely ignored these contractual obligations to give notice to the Plaintiff health plans.  Approximately 70% of all individuals in the United States have private health insurance, and Plan Plaintiffs collectively represent the plans that provided coverage to approximately 70% of those individuals who do.  Accordingly, based on the roughly 50,000 Claimants who have enrolled in the Vioxx Settlement Program, Plan Plaintiffs should have received notice of litigation and/or settlement from between 20,000 and 25,000 of their members. In truth, less than 100 have done so.

60.       On April 14, 2008, Plan Plaintiffs filed suit against Brown Greer and U.S. Bancorp in this Court seeking equitable relief under Section 502(a)(3) of ERISA.  The Injunction Claimants sought to preliminarily enjoin distribution of interim payments of settlement funds pending the assertion of their equitable rights against the settlement funds.  This Court denied that motion. *See In re Vioxx Prods. Liab. Litig.*, No. 08-1633, 2008 WL 3285912 (E.D. La. Aug. 7, 2008). The Court reasoned that the Injunction Claimants' motion was premature insofar as they were unable to identify, for the relevant health insurance contracts, (a) specific beneficiaries; (b) the amount owed by these beneficiaries; and (c) the specific contracts themselves, whose terms gave rise to the Injunction Claimants' claim for equitable relief under ERISA.  *Id.* at *7 ("The Plaintiffs are unable to identify their own insureds against whom they wish to proceed, the precise amount of money they wish to collect, or the particular plan provisions they seek to enforce").  On Appeal, the Fifth Circuit adopted the Court's reasoning and affirmed.  *See AvMed, Inc. v. Brown Greer, PLC*, 300 Fed. Appx. 261 (5th Cir. Nov. 17, 2008).

61.      Following this Court's denial of preliminary injunction, Plan Plaintiffs continued to discuss settlement of their medical liens with the PSC.  In January 2009, after several months of negotiations, counsel for several of the Plan Plaintiffs reached an agreement with the PSC to establish a voluntary private lien resolution program (the "Lien Resolution Program" or "PLRP").

62.      This Court approved the PLRP at a January 22, 2009 status conference.  As part of the program, participating health insurance providers, including all Plan Plaintiffs in this case, agreed to (a) reduce automatically all injury-related lien amounts by 50%, and (b) limit or "cap" all liens according to the following formula: (i) 15% of a Vioxx Claimant's gross settlement amount (before attorneys' fees and litigation expenses are deducted) up to the first $100,000; (ii) 12.5% of a Vioxx Claimant's gross settlement amount over $100,000 and up to $250,000; or (iii) 10% of a Vioxx Claimant's gross settlement amount exceeding $250,000.  The Vioxx Settlement Administrator disseminated notice to Vioxx Claimants of the Lien Resolution Program, which set a deadline for ECs to elect to participate in the program.  22,408 of the approximately 50,000 total Vioxx Claimants opted to participate in the PLRP.

63.      Over the past eighteen months, Plan Plaintiffs have conducted an exhaustive independent review to determine the identity of the remaining nonparticipating Vioxx Claimants. First, Plan Plaintiffs searched public filings in federal and state courts to identify Vioxx Claimants and their attorneys.  Plan Plaintiffs focused their attention on pleadings made in this Court and in the courts of certain states where large numbers of Vioxx-related claims had been filed.  Plan Plaintiffs' search generated a list of approximately 16,000 names—well short of the roughly 28,000 unidentified Vioxx Claimants nationwide.  This shortfall was unavoidable,

because there is not and never has been any public record identifying Vioxx Claimants that signed tolling agreements with Merck.

64.     Each plaintiff cross-referenced this list of names against their own lists of insureds, identifying covered Vioxx Claimants using NDC codes for Vioxx and ICD9 codes for strokes and heart attacks. This process yielded a list of approximately 6,000 names for individuals (the "Non-Cooperating Vioxx Claimants") who (a) took Vioxx and subsequently suffered one or more heart attacks or strokes; and (b) had the same first and last name as a Vioxx Claimant who did not participate in the Lien Resolution Program.

65.     As a result, Plan Plaintiffs are now able to identify some Non-Cooperating Vioxx Claimants that they believe they insure and that are represented by Defendant Law Firms. Plan Plaintiffs have the medical lien information and the precise dollar amount of each lien. Plan Plaintiffs have also identified the particular plan provisions they seek to enforce for each non-cooperative Vioxx Claimant. (*See, e.g.*, Ex. A (plan language for Virginia Miller, a Vioxx Claimant that Plan Plaintiffs believe was represented by Defendant Branch and insured by Plaintiff Humana).) Finally, in September 2009, the Claims Administrator notified all Vioxx Claimants that it had adjudicated all of their claims and identified how much money they are owed under the Settlement Fund. Accordingly, there is a specifically identifiable fund due and owing to the Non-Cooperating Vioxx Claimants.

66.     Approximately 750 law firms represented one or more Vioxx Claimants identified by Plan Plaintiffs. Of those, 123 law firms represented one or more Non-Cooperating Vioxx Claimants. The vast majority of those firms, however, represented only one or two Non-Cooperating Vioxx Claimants. The eleven named Defendant Law Firms represent the majority of the Non-Cooperating Vioxx Claimants identified by Plan Plaintiffs.

67.     Plan Plaintiffs provided heath care benefits to and paid medical expenses and other costs incurred by the Non-Cooperating Vioxx Claimants as a consequence of the medical conditions they suffered as a result of ingestion of Vioxx.  Plan Plaintiffs provided these health care benefits to Vioxx Claimants under agreements and coverage documents that give Plan Plaintiffs various rights to reimbursement for those benefits, including: (a) rights of subrogation, or the right to pursue claims for medical expenses directly against the alleged tortfeasors that caused the underlying medical condition; (b) rights of reimbursement, or the right to recover their expenditures for the health care benefits from the Vioxx Claimants or the custodian of settlement funds; (c) rights to prompt notice from covered persons who initiate or settle claims against third parties that are allegedly liable for medical conditions covered by Plan Plaintiffs; and (4) other similar rights that are necessary to protect Plan Plaintiffs' ability to enforce their subrogation and reimbursement rights.

68.     Unless judicial action is taken now to safeguard Plan Plaintiffs' reimbursement rights, Plan Plaintiffs will be irreparably harmed.  Unless appropriate relief is granted, Non-Cooperating Vioxx Claimants will receive settlement payments from the Settlement Fund, co-mingle those payments with other monies, and will thereby dissipate any identifiable corpus of settlement funds.

69.     Defendant Anapol Schwartz has been notified by the Vioxx Settlement Administrator and by Plan Plaintiffs' counsel that at least fifteen of its clients are Vioxx claimants entitled to specified funds from the Settlement Fund.  Defendant Anapol Schwartz or its co-counsel either have received or will imminently receive funds on behalf of such Vioxx Claimants.  At least fifteen Vioxx Claimant clients of Defendant Anapol Schwartz have declined to participate in the private third party payer Lien Resolution Program established by this Court.

70.     Defendant Branch has been notified by the Vioxx Settlement Administrator and by Plan Plaintiffs' counsel that at least thirty-two of its clients are Vioxx claimants entitled to specified funds from the Settlement Fund.  Defendant Branch or its co-counsel either have received or will imminently receive funds on behalf of such Vioxx Claimants.  At least thirty-two Vioxx Claimant clients of Defendant Branch have declined to participate in the private third party payer Lien Resolution Program established by this Court.

71.     Defendant Cohen Placitella has been notified by the Vioxx Settlement Administrator and by Plan Plaintiffs' counsel that at least thirty of its clients are Vioxx Claimants entitled to specified funds from the Settlement Fund.  Defendant Cohen Placitella or its co-counsel either have received or will imminently receive funds on behalf of such Vioxx Claimants.  At least thirty Vioxx Claimant clients of Defendant Cohen Placitella have declined to participate in the private third party payer Lien Resolution Program established by this Court.

72.     Defendant Cohen Seglias has been notified by the Vioxx Settlement Administrator and by Plan Plaintiffs' counsel that at least four of its clients are Vioxx Claimants entitled to specified funds from the Settlement Fund.  Defendant Cohen Seglias or its co-counsel either have received or will imminently receive funds on behalf of such Vioxx Claimants.  At least four Vioxx Claimant clients of Defendant Cohen Seglias have declined to participate in the private third party payer Lien Resolution Program established by this Court.

73.     Defendant Hovde Dassow has been notified by the Vioxx Settlement Administrator and by Plan Plaintiffs' counsel that at least seven of its clients are Vioxx Claimants entitled to specified funds from the Settlement Fund.  Defendant Hovde Dassow or its co-counsel either have received or will imminently receive funds on behalf of such Vioxx Claimants.  At least

seven Vioxx Claimant clients of Defendant Hovde Dassow have declined to participate in the private third party payer Lien Resolution Program established by this Court.

74.      Defendant Kasowitz Benson has been notified by the Vioxx Settlement Administrator and by Plan Plaintiffs' counsel that at least seventeen of its clients are Vioxx Claimants entitled to specified funds from the Settlement Fund.  Defendant Kasowitz Benson or its co-counsel either have received or will imminently receive funds on behalf of such Vioxx Claimant clients. At least seventeen Vioxx Claimant clients of Defendant Kasowitz Benson have declined to participate in the private third party payer Lien Resolution Program established by this Court.

75.      Defendant Kline & Specter has been notified by the Vioxx Settlement Administrator and Plan Plaintiffs' counsel that at least seventeen of its clients are Vioxx Claimants entitled to specified funds from the Settlement Fund.  Defendant Kline & Specter or its co-counsel have received or will imminently receive settlement funds on behalf of such Vioxx Claimant clients. At least seventeen Vioxx Claimant clients of Defendant Kline & Specter have declined to participate in the private third party payer Lien Resolution Program established by this Court.

76.      Defendant Lanier has been notified by the Vioxx Settlement Administrator and Plan Plaintiffs' counsel that at least thirty-nine of its clients are Vioxx Claimants entitled to specified funds from the Settlement Fund.  Defendant Lanier or its co-counsel have received or will imminently receive settlement funds on behalf of such Vioxx Claimant clients.  At least thirty-nine Vioxx Claimant clients of Defendant Lanier have declined to participate in the private third party payer Lien Resolution Program established by this Court.

77.      Defendant Locks has been notified by the Vioxx Settlement Administrator and Plan Plaintiffs' counsel that at least twenty-two of its clients are Vioxx Claimants entitled to specified funds from the Settlement Fund.  Defendant Locks or its co-counsel have received or will

imminently receive settlement funds on behalf of such Vioxx Claimant clients. At least twenty-two Vioxx Claimant clients of Defendant Locks have declined to participate in the private third party payer Lien Resolution Program established by this Court.

78.     Defendant Morelli Ratner has been notified by the Vioxx Settlement Administrator and Plan Plaintiffs' counsel that at least thirty of its clients are Vioxx Claimants entitled to specified funds from the Settlement Fund. Defendant Morelli Ratner or its co-counsel have received or will imminently receive settlement funds on behalf of such Vioxx Claimant clients. At least thirty Vioxx Claimant clients of Defendant Morelli Ratner have declined to participate in the private third party payer Lien Resolution Program established by this Court.

79.     Defendant Parks Crump has been notified by the Vioxx Settlement Administrator and by Plan Plaintiffs' counsel that at least twelve of its clients are Vioxx Claimants entitled to specified funds from the Settlement Fund. Defendant Parks Crump or its co-counsel either has received or will imminently receive funds on behalf of such Vioxx Claimant clients. At least twelve Vioxx Claimant clients of Defendant Parks Crump have declined to participate in the private third party payer Lien Resolution Program established by this Court.

80.     Defendant Weitz & Luxenberg has been notified by the Vioxx Settlement Administrator and by Plan Plaintiffs' counsel that at least 118 of its Vioxx Claimants clients are entitled to specified funds from the Settlement Fund. Defendant Weitz & Luxenberg or its co-counsel either have received or will imminently receive funds on behalf of such Vioxx Claimant clients. At least 118 Vioxx Claimant clients of Defendant Weitz & Luxenberg have declined to participate in the private third party payer Lien Resolution Program established by this Court.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF FOR EQUITABLE REMEDIES UNDER ERISA
## (CONSTRUCTIVE TRUST, DECLARATORY RELIEF, AND INJUNCTION)

81.     Plan Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

82.     Plan Plaintiff BCBS Florida's policy language uniformly includes provisions giving it subrogation and reimbursement rights.

83.     Plan Plaintiff BCBS Florida insures Vioxx Claimants represented by Defendants Branch, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg.  Plan Plaintiff BCBS Florida paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries.  Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund.  These identifiable monies are or soon will be in the possession of Defendants Branch, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg.

84.     Plan Plaintiff BCBS Kansas's policy language uniformly includes provisions giving it subrogation and reimbursement rights.

85.     Plan Plaintiff BCBS Kansas insures Vioxx Claimants represented by Defendants Anapol Schwartz and Weitz & Luxemberg.  Plan Plaintiff BCBS Kansas paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries.  Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund. These identifiable monies are or soon will be in the possession of Defendants Anapol Schwartz and Weitz & Luxemberg.

86.     Plan Plaintiff BCBS North Carolina's policy language uniformly includes provisions giving it subrogation and reimbursement rights.

87.     Plan Plaintiff BCBS North Carolina insures Vioxx Claimants represented by Defendants Anapol Schwartz, Branch, Cohen Placitella, Cohen Seglias, Hovde Dassow, Kasowtiz Benson, Kline & Specter, Lanier, Morelli Ratner, and Weitz & Luxemberg. Plan Plaintiff BCBS North Carolina paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries.   Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund.  These identifiable monies are or soon will be in the possession of Defendants Anapol Schwartz, Branch, Cohen Placitella, Cohen Seglias, Hovde Dassow, Kasowtiz Benson, Kline & Specter, Lanier, Morelli Ratner, and Weitz & Luxemberg.

88.     Plan Plaintiff BCBS Rhode Island's policy language uniformly includes provisions giving it subrogation and reimbursement rights.

89.     Plan Plaintiff BCBS Rhode Island insures Vioxx Claimants represented by Defendants Anapol Schwartz, Cohen Placitella, Hovde Dassow, Lanier, and Weitz & Luxemberg.  Plan Plaintiff BCBS Rhode Island paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries.  Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund.  These identifiable monies are or soon will be in the possession of Defendants Anapol Schwartz, Cohen Placitella, Hovde Dassow, Lanier, and Weitz & Luxemberg.

90.     Plan Plaintiff CareFirst's policy language uniformly includes provisions giving it subrogation and reimbursement rights.

91.     Plan Plaintiff CareFirst insures a Vioxx Claimant represented by Defendant Kline & Specter.  Plan Plaintiff CareFirst paid the medical bills for this Vioxx Claimant to cover his Vioxx-related injuries.  This Vioxx Claimant has been and/or will be compensated for his

injuries out of the Settlement Fund. These identifiable monies are or soon will be in the possession of Defendant Kline & Specter.

92.     Plan Plaintiff HCSC's policy language uniformly includes provisions giving it subrogation and reimbursement rights.

93.     Plan Plaintiff HCSC insures Vioxx Claimants represented by Defendants Anapol Schwartz, Branch, Cohen Placitella, Hovde Dassow, Lanier, and Weitz & Luxemberg. Plan Plaintiff HCSC paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries. Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund. These identifiable monies are or soon will be in the possession of Defendants Anapol Schwartz, Branch, Cohen Placitella, Hovde Dassow, Lanier, and Weitz & Luxemberg.

94.     Plan Plaintiff HMSA's policy language uniformly includes provisions giving it subrogation and reimbursement rights.

95.     Plan Plaintiff HMSA insures Vioxx Claimants represented by Defendants Anapol Schwartz, Branch, Kline & Specter, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg. Plan Plaintiff HMSA paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries. Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund. These identifiable monies are or soon will be in the possession of Defendants Anapol Schwartz, Branch, Kline & Specter, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg.

96.     Plan Plaintiff Humana's policy language uniformly includes provisions giving it subrogation and reimbursement rights.

97.      Plan Plaintiff Humana insures Vioxx Claimants represented by Defendants Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Parks & Crump, and Weitz & Luxemberg.  Plan Plaintiff Humana paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries.  Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund.  These identifiable monies are or soon will be in the possession of Defendants Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Parks & Crump, and Weitz & Luxemberg.

98.      Plan Plaintiff Noridian's policy language uniformly includes provisions giving it subrogation and reimbursement rights.

99.      Plan Plaintiff Noridian insures a Vioxx Claimant represented by Defendant Branch. Plan Plaintiff Noridian paid the medical bills for this Vioxx Claimant to cover his Vioxx-related injuries.  This Vioxx Claimant has been and/or will be compensated for his injuries out of the Settlement Fund.  These identifiable monies are or soon will be in the possession of Defendant Branch.

100.     Plan Plaintiff Priority's policy language uniformly includes provisions giving it subrogation and reimbursement rights.

101.     Plan Plaintiff Priority insures Vioxx Claimants represented by Defendants Anapol Schwartz, Kline & Specter, and Weitz & Luxemberg.  Plan Plaintiff Priority paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries.  Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund.  These identifiable monies are or soon will be in the possession of Defendants Anapol Schwartz, Kline & Specter, and Weitz & Luxemberg.

102.     Plan Plaintiff UHC's policy language for the identified Vioxx Claimants includes provisions giving UHC subrogation and reimbursement rights.

103.     Plan Plaintiff UHC insures Vioxx Claimants represented by Defendants Anapol Schwartz, Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg.  Plan Plaintiff UHC paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries.  Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund.  These identifiable monies are or soon will be in the possession of Defendants Anapol Schwartz, Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg.

104.     The ERISA Plan Plaintiffs seek equitable relief in the form of restitution of the amounts which they paid for medical treatments for Vioxx Claimants attributable to their use of Vioxx.  Plan Plaintiffs also seek imposition of a constructive trust over a portion of the Settlement Fund and/or Defendant Law Firms trusts in an amount necessary to fully reimburse Plan Plaintiffs for such monies.  Further, Plan Plaintiffs seek imposition of an equitable lien to enforce the reimbursement terms of ERISA plans for which they provide insurance or claims administration services.

105.     If the settlement funds are disbursed from the Settlement Fund or Defendant Law Firm's trust funds to individual Vioxx Claimants, Plan Plaintiffs will have no adequate remedy at law.

106.     Because of their clear contractual rights to some of the Vioxx settlement funds, Plan Plaintiffs are likely to succeed on the merits of its claim.

107.     A balancing of the equities favors the issuance of a preliminary injunction in favor of Plan Plaintiffs.  The injunctive relief that Plan Plaintiffs request would do no more than require all parties to temporarily suspend the distribution of the Vioxx settlement funds until such time as the Court can make a final decision concerning Plan Plaintiffs' entitlement to the funds.

## SECOND CLAIM FOR RELIEF FOR EQUITABLE REMEDIES UNDER FEHBA (CONSTRUCTIVE TRUST, DECLARATORY RELIEF, AND INJUNCTION)

108.     Plan Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

109.     FEHBA contracts have standardized language providing all FEHBA Plan Plaintiffs with rights of subrogation and reimbursement.

110.     As a FEHBA provider, Plan Plaintiff BCBS Association insures Vioxx Claimants represented by Defendant Anapol Schwartz, Branch, Cohen Placitella, Cohen Seglias, Kasowitz Benson, Kline & Specter, Lanier, Locks, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg.  Plan Plaintiff BCBS Association paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries.  Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund.  These identifiable monies are or soon will be in the possession of Defendants Anapol Schwartz, Branch, Cohen Placitella, Cohen Seglias, Kasowitz Benson, Kline & Specter, Lanier, Locks, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg.

111.     As a FEHBA provider, Plan Plaintiff Humana insures Vioxx Claimants represented by Defendants Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Parks & Crump, and Weitz & Luxemberg.  Plan Plaintiff Humana paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries.  Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund.

These identifiable monies are or soon will be in the possession of Defendants Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Parks & Crump, and Weitz & Luxemberg.

112.    As a FEHBA provider, Plan Plaintiff UHC insures Vioxx Claimants represented by Defendants Anapol Schwartz, Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg.  Plan Plaintiff UHC paid the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries.  Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund.  These identifiable monies are or soon will be in the possession of Defendants Anapol Schwartz, Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg.

113.    Pursuant to 5 U.S.C. §8901 *et seq.*, federal common law, and the plain terms of their contracts with Non-Cooperating Vioxx Claimants, the FEHBA Plan Plaintiffs seek reimbursement of the full amounts of any funds owed to them and held in trust by Defendant Law Firms.

114.    If the settlement funds are disbursed from the Settlement Fund or Defendant Law Firm's trust funds to individual Vioxx Claimants, Plan Plaintiffs will not have any adequate remedy at law.

115.    Because of their clear contractual rights to some of the Vioxx settlement funds, Plan Plaintiffs are likely to succeed on the merits of its claim.

116.    A balancing of the equities favors the issuance of a preliminary injunction in favor of Plan Plaintiffs.  The injunctive relief that Plan Plaintiffs request would do no more than require

all parties to temporarily suspend the distribution of the Vioxx settlement funds until such time as the Court can make a final decision concerning Plan Plaintiffs' entitlement to the funds.

### THIRD CLAIM FOR RELIEF FOR DAMAGES
### MEDICARE SECONDARY PAYER REGULATIONS

117.     Plan Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

118.     The Medicare Advantage Plan Plaintiffs are "MA Organizations" that manage "MA Plans" as defined by 42 C.F.R. § 422.2.  Vioxx Claimants represented by one or more Defendant Law Firms are MA beneficiaries who were enrolled in those MA Plans and on whose behalf the Medicare Advantage Plan Plaintiffs advanced conditional payments of Medicare benefits with respect to medical treatment required to treat the beneficiaries' Vioxx-related injuries.  "Conditional payments" are defined by 42 U.S.C. § 1395y(b)(2) and 42 C.F.R. § 411.21.

119.     Pursuant to 42 C.F.R. § 422.108(f), the Medicare Advantage Plan Plaintiffs exercise the same rights to recover from primary plans, entities, or individuals that the Secretary of Health and Human Services exercises under the Medicare Secondary Payer ("MSP") regulations set forth in 42 C.F.R. § 411.20 through 42 C.F.R. §411.54.

120.     Merck is a primary payer as defined by 42 C.F.R. § 411.21.  The Settlement Fund includes primary payments made to Vioxx Claimants instead of to Medicare.  The Medicare Advantage Plan Plaintiffs made secondary payments as defined by 42 C.F.R. § 411.21 and are entitled to reimbursement from the Settlement Fund under 42 C.F.R. § 411.24.

121.     CMS requires each Medicare Advantage organization to issue a standardized booklet, written by CMS, to each beneficiary enrolled in an MA Plan to explain the enrollee's rights and responsibilities.  CMS refers to this booklet as the "Evidence of the Coverage" or "EOC."  The EOC has standardized language explaining that the MA Plan Plaintiffs must coordinate benefits

with primary payers and reimbursement of conditional payments when the liability of a primary payer is determined.

122.     Plan Plaintiff Humana is an MA Organization that administered Medicare benefits for certain Vioxx Claimants represented by Defendants Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Parks & Crump, and Weitz & Luxemberg.  Plan Plaintiff Humana made conditional payments of Medicare benefits for the medical bills for each of these Vioxx Claimants to cover their Vioxx-related injuries.  Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund.  These identifiable monies are or soon will be in the possession of Defendants Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Parks & Crump, and Weitz & Luxemberg.

123.     Plan Plaintiff UHC is an MA Organization that administered Medicare benefits for certain Vioxx Claimants represented by Defendants Anapol Schwartz, Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg.  Plan Plaintiff UHC made conditional payments of Medicare benefits for each of these Vioxx Claimants to cover their Vioxx-related injuries.  Each of these Vioxx Claimants has been and/or will be compensated for their injuries out of the Settlement Fund. These identifiable monies are or soon will be in the possession of Defendants Anapol Schwartz, Branch, Cohen Placitella, Hovde Dassow, Kasowitz Benson, Kline & Specter, Lanier, Morelli Ratner, Parks & Crump, and Weitz & Luxemberg.

124.     The unwillingness of the Defendant Law Firms and their clients to cooperate in reimbursing the Medicare Advantage Plan Plaintiffs for the secondary payments they made to Vioxx Claimants has necessitated the present suit.  Accordingly, the Medicare Advantage Plan

Plaintiffs are entitled to recovery of the lesser of the full amount of the primary payments or the full amount of payment from the Trust Fund, directly from Defendant Law Firms, pursuant to 42 C.F.R. § 411.24(g).

## FOURTH CLAIM FOR RELIEF FOR DECLARATORY RELIEF

125.     Pursuant to 28 U.S.C. § 2201 *et. seq.*, the Plan Plaintiffs are entitled to declaratory relief concerning their rights and other legal relations regarding any monies yet to be put into trusts of the Defendant Law Firms.

126.     Plan Plaintiffs have a right to declaratory relief declaring, among other things:

a.     that Plan Plaintiffs have contractual rights to reimbursement of any monies they paid or medical benefits that they otherwise furnished on behalf of any Qualifying Program Claimants;

b.     the extent of each of Plan Plaintiffs' lien rights, if any, in the Vioxx settlement funds resulting from Plan Plaintiffs' payment of past medical expenses or medical benefits otherwise provided by Plan Plaintiffs;

c.     that Plan Plaintiffs are entitled to disclosure of the names of any Vioxx Claimant they were unable to identify through their own efforts; and

d.     that Plan Plaintiffs are entitled to receive payment in satisfaction of their lien rights for medical expenses paid or medical benefits otherwise furnished to any Vioxx Claimant prior to any disbursement from any Vioxx settlement funds to such Claimants.

## PRAYER FOR RELIEF

WHEREFORE, Plan Plaintiffs respectfully request that this Court grant the following relief:

1.      An order imposing a constructive trust in favor of the Plan Plaintiffs upon the Vioxx settlement funds;

2.      An order declaring that Plan Plaintiffs are the rightful owners of the Vioxx settlement funds to the extent necessary to satisfy Plan Plaintiffs' rights of reimbursement;

3.      A preliminary injunction enjoining and directing the Defendant Law Firms to refrain from distributing Vioxx settlement funds to Vioxx Claimants until such time as Plan Plaintiffs have had an opportunity to assert their reimbursement rights with respect to those Claimants, and the Court has had an opportunity to determine the extent of Plan Plaintiffs' reimbursement rights as they relate to settlement funds held in trust by Defendant Law Firms;

4.      An order enjoining all member Vioxx Claimants to execute any and all documents necessary to transfer the Vioxx settlement funds to Plan Plaintiffs, to the extent of Plan Plaintiffs' interest therein;

5.      An order enjoining Defendant Law Firms from transferring or disposing of the Vioxx settlement funds in any manner that would prejudice, frustrate or impair Plan Plaintiffs' ability to recover those funds;

6.      Declaratory relief in the manner set forth above; and

7.      An order granting such other and further relief to which Plan Plaintiffs are entitled under ERISA, FEHBA, and Medicare Advantage.

Dated:  June 22, 2010

Respectfully submitted,

LOWEY DANNENBERG COHEN & HART, P.C

By: *Peter St. Phillip / Ki*

Richard W. Cohen
Peter D. St. Phillip
Gerald Lawrence

Karen Iannace
White Plains Plaza
Fifth Floor
One North Broadway
White Plains, New York  10601
Telephone:  (914) 997-0500
Facsimile:   (914) 997-0035

RAWLINGS & ASSOCIATES, PLLC
Mark D. Fischer
Jeffrey C. Swann
Robert Griffith
One Eden Parkway
LaGrange, Kentucky  40031
Telephone:  (502) 587-1279
Facsimile:   (502) 584-8580

*Attorneys for the Plan Plaintiffs*