**SHEARER, STEPHEN, DEPOSITION OF 11/18/09**

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| Defendant's Counter Designations are highlighted. Plaintiffs Affirmative Designations are not. **11/18/09 DEPOSITION** | | |
| SHEARER, STEPHEN, W., (Pages 5:18 to 6:7) <br> 5 <br> 18  Mr. Shearer, could you <br> 19  state your full name for the record, <br> 20  please? <br> 21      A.   Stephen W. Shearer. <br> 22      Q.   And what is your business <br> 23  address? <br> 24      A.   It would be 132 Holly <br> 6 <br> 1  Reserve Parkway, Canton, Georgia. <br> 2      Q.   And by whom are you <br> 3  currently employed? <br> 4      A.   Merck & Co. <br> 5      Q.   And what position do you <br> 6  currently hold with Merck & Co.? <br> 7      A.   National Account Executive. | | |
| SHEARER, STEPHEN, W., (Page 8:17 to 8:24) <br> 8 <br> 17  Q.   Okay.  Thank you.  Sir, <br> 18  what is your educational background? <br> 19      A.   I have a bachelor's in <br> 20  pharmacy from West Virginia <br> 21  University.  It's actually a B.S.  I <br> 22  have a master's in hospital pharmacy <br> 23  from the University of North <br> 24  Carolina, Chapel Hill. | | |
| SHEARER, STEPHEN, W., (Page 9:4 to 9:15) <br> 9 <br> 4  Q.   How does hospital pharmacy <br> 5  differ from pharmacy in general? <br> 6      A.   Well, it dealt -- the <br> 7  master's dealt with hospital and <br> 8  clinical pharmacy with a minor in <br> 9  healthcare administration. <br> 10          So it was master's-level <br> 11  work, postgraduate work, and it dealt <br> 12  with a number of topics in clinical <br> 13  science, the administration of <br> 14  pharmacy, the interaction with other <br> 15  healthcare professionals. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 9:17 to 9:24)<br>9<br>17   A.   And I have an American<br>18   Society of Health Systems Pharmacists<br>19   residency from, at the time, the<br>20   North Carolina Memorial Hospital.<br>21      Q.   Have you ever practiced in<br>22   the field of pharmacy outside of your<br>23   work for Merck?<br>24      A.   Yes. | | |
| SHEARER, STEPHEN, W., (Pages 13:22 to 14:18)<br>13<br>22   Q.   How is it that you came to<br>23   go to Merck?  Were you head hunted or<br>24   did you apply?<br>14<br>1      A.   I applied.<br>2      Q.   Were you applying for a<br>3   specific position?<br>4      A.   Yes.<br>5      Q.   And what position was that?<br>6      A.   National Account Executive.<br>7      Q.   And when was that?<br>8      A.   When did I start with<br>9   Merck?<br>10      Q.   Yes, sir.<br>11      A.   February of 1997.<br>12      Q.   And what were your job<br>13   duties when you started with Merck as<br>14   a National Account Executive?  Can<br>15   you tell the Court what is meant by<br>16   National Account Executive?<br>17      A.   I was the interface between<br>18   Merck and several health plans. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 15:11 to 16:1)<br>15<br>11    Q.   What did you mean by being<br>12   the interface between Merck and these<br>13   health plans?<br>14       A.   I was Merck's<br>15   representative to the health plan, so<br>16   I represented Merck.<br>17       Q.   Were you a sales<br>18   representative?<br>19       A.   No.<br>20       Q.   As a representative, what<br>21   were you responsible for?<br>22       A.   I was responsible for<br>23   access to Merck's products by the<br>24   health plan, appropriate utilization<br>16<br>1   of Merck's products. | Irrelevant | |
| SHEARER, STEPHEN, W., (Pages 16:19 to 17:16)<br>16<br>19   I'm just trying to<br>20   get an understanding of what you mean<br>21   when you say access to Merck<br>22   products.<br>23       A.   Merck's philosophy is that<br>24   physicians and patients should have<br>17<br>1   access to their products.  And I<br>2   would work with the health plan to<br>3   provide -- to help them provide<br>4   access to their -- for their<br>5   customers for Merck's products.<br>6       Q.   And what would that help<br>7   entail?<br>8       A.   It might entail providing<br>9   the health plan with information<br>10   about the products that was FDA<br>11   approved and other materials that<br>12   Merck would provide me with that were<br>13   FDA approved.<br>14       Q.   And would that include<br>15   clinical information about the<br>16   products? | Page 16:19-17:16<br>Irrelevant<br><br>Page 17:14-16<br>Vague/ambiguous, leading | Overruled |

3

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 17:23 to 18:18)<br>17<br>23  A.  It would include clinical<br>24  information that was approved by the<br>18<br>1  FDA.<br>2    Q.  Did you have any role in<br>3  the drafting of information that you<br>4  would provide to healthcare providers<br>5  in your role as a National Account<br>6  Executive?<br>7    A.  No.<br>8    Q.  Who provided you with the<br>9  information that you would provide to<br>10  -- and am I using the right term if I<br>11  say healthcare provider customers?<br>12    A.  That's reasonable.<br>13    Q.  Who would provide you with<br>14  the information that you would<br>15  provide to Merck's healthcare<br>16  provider customers?<br>17    A.  That would be those back in<br>18  the corporate office of Merck. | Irrelevant, lacks personal knowledge | Overrule |
| SHEARER, STEPHEN, W., (Page 20:1 to 20:12)<br>20<br>1    Q.  Okay.  So in the case of a<br>2  PIR, if a PIR would come in, you<br>3  would refer that question to Medical<br>4  Services and then Medical Services<br>5  would answer that question; is that<br>6  correct?<br>7    A.  It's correct that if I<br>8  received an unsolicited question from<br>9  a customer, I would refer that to<br>10  Medical Services.  Medical Services<br>11  would discuss the answer with the<br>12  customer. | Page 20:1-12<br>Irrelevant, speculative<br><br>Page 20:10-12<br>Lacks personal knowledge | Overrule |
| SHEARER, STEPHEN, W., (Page 24:15 to 24:21)<br>24<br>15    Q.  And then you said another<br>16  aspect of your role as a National<br>17  Account Executive was appropriate<br>18  utilization?<br>19    A.  Yes.<br>20    Q.  Okay.  What did you mean by<br>21  appropriate utilization?  What was | Page 24:15-21<br>Irrelevant<br><br>Page 24:20-21<br>Stricken | Overrule |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 24:23 to 25:1)<br>24<br>23      What was your role in<br>24   providing or facilitating appropriate<br>25<br>1   utilization of Merck products? | Irrelevant, ambiguous/vague | Overruled |
| SHEARER, STEPHEN, W., (Pages 25:4 to 26:8)<br>25<br>4      THE WITNESS:  Appropriate<br>5   utilization, as far as Merck is<br>6   concerned, is utilization of the<br>7   product within the approved FDA<br>8   label.  So I would be sure that the<br>9   customer understood that and that --<br>10   and that's it.<br>11   BY MR. MURRAY:<br>12      Q.  How would you go about<br>13   ensuring that the customer understood<br>14   what the appropriate utilization for<br>15   Merck products was?<br>16      A.  I would make sure they<br>17   completely understood the label and<br>18   that I probed them and answered any<br>19   questions they might have so that<br>20   they understood how the product<br>21   should be appropriately used.<br>22      Q.  In fulfilling that task,<br>23   did you have materials that were<br>24   provided to you by Merck?<br>26<br>1   A.  Yes.<br>2      Q.  And would those materials,<br>3   like the materials that we spoke<br>4   about previously with respect to<br>5   information about products, have been<br>6   provided to you by the corporate<br>7   offices?<br>8      A.  Yes. | Irrelevant, ambiguous/vague | Provided |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 31:10 to 31:22)<br>31<br>10  Q.   Okay.  I think we've just<br>11  covered what your job was as a<br>12  National Account Executive in the<br>13  1997 time frame when you first came<br>14  on.  Has that job function changed<br>15  over time?<br>16      A.   No.<br>17      Q.   So you are still<br>18  responsible for -- I'm sorry, still a<br>19  National Account Executive with<br>20  responsibility for access to Merck<br>21  products with healthcare plans?<br>22      A.   Yes. | | |
| SHEARER, STEPHEN, W., (Page 35:3 to 35:16)<br>35<br>3      Q.   As a National Account<br>4  Executive interfacing with healthcare<br>5  plans, who were the people with the<br>6  healthcare plans with whom you would<br>7  interface?<br>8          That is, were you<br>9  interfacing with P&T committees?<br>10  Were you interfacing with a certain<br>11  type of executive?  Would it vary<br>12  from company to company?<br>13          Can you just help me with<br>14  that as to who your contacts would be<br>15  at the healthcare plans that you<br>16  interfaced with? | Irrelevant, ambiguous/vague | |
| SHEARER, STEPHEN, W., (Page 35:19 to 35:23)<br>35<br>19          THE WITNESS:  Generally, it<br>20  would have been the pharmacy<br>21  director, medical directors, various<br>22  -- and beyond that it varies<br>23  significantly from plan to plan. | Question omitted, overbroad, irrelevant | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 36:10 to 38:7) | Page 38:1-7 Vague/ambiguous, overbroad | *Overrule* |

SHEARER, STEPHEN, W., (Pages 36:10 to 38:7)

36

10   Q.   At any point in your career
11   as a National Account Executive with
12   Merck, did you have responsibility
13   for interface with a company called
14   Provider Synergies?
15     A.   Yes, I did.
16     Q.   Okay.  At what point did
17   you begin to have interface with
18   Provider Synergies?
19     A.   My recollection is that it
20   was sometime in 2001 for
21   approximately a year.
22     Q.   After that year did you no
23   longer have an interface
24   responsibility with Provider

37

1   Synergies?
2     A.   Yes, that's correct.
3     Q.   Who were your contacts at
4   Provider Synergies for that year, if
5   you recall?
6     A.   In general, my general
7   recollection of that period is that I
8   would have talked to a Terry Taylor,
9   someone who was the number two at the
10   company whose name I've since
11   forgotten, and I might have had
12   conversations with a Valerie Taylor.
13     Q.   At any point in the year
14   that you had responsibility for
15   interface with Provider Synergies,
16   was Provider Synergies doing work on
17   behalf of Louisiana Department of
18   Health and Hospitals?
19     A.   Yes.
20     Q.   Did you have involvement
21   with Provider Synergies prior to
22   their beginning work for Louisiana
23   Department of Health and Hospitals?
24     A.   I don't recall.

38

1     Q.   Would your contacts with
2   Provider Synergies have followed the
3   description of responsibilities for
4   providing access and assuring
5   appropriate utilization that you gave
6   me generally with respect to your
7   role as a National Account Executive?

7

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 38:10 to 38:20)<br>38<br>10   THE WITNESS:  In general.<br>11   It's been a long time ago.  In<br>12   general, yes, it would have.<br>13   BY MR. MURRAY:<br>14      Q.   And in particular with<br>15   respect to providing information to<br>16   help ensure access, again, focusing<br>17   on Provider Synergies, would you have<br>18   obtained the information that you<br>19   provided from corporate offices at<br>20   Merck? | Page 38:10-23<br>Overbroad<br><br>Page 38:14-20<br>Assumes facts not in<br>evidence | _Overruled_ |
| SHEARER, STEPHEN, W., (Pages 38:23 to 39:8)<br>38<br>23   THE WITNESS:  Any<br>24   information that I would have<br>39<br>1   provided to Provider Synergies would<br>2   have been consistent with the<br>3   FDA-approved label of whatever drug I<br>4   was talking to them about.<br>5          Any materials I would have<br>6   shown them or left with them or<br>7   talked to them about would have been<br>8   FDA approved. | | |
| SHEARER, STEPHEN, W., (Page 39:10 to 39:13)<br>39<br>10   Q.  And again, would those<br>11   materials have come from Merck<br>12   corporate offices?<br>13      A.  Yes, they would have. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 40:20 to 42:5)<br>40<br>20   Q.   During the year that you<br>21   were responsible -- I'm sorry, that<br>22   you were the National Account<br>23   Executive assigned to Provider<br>24   Synergies, were there any other<br>41<br>1   National Account Executives assigned<br>2   to work with Provider Synergies?<br>3     A.  No.<br>4     Q.   And was it Michael Fevurly<br>5   that took over from you as National<br>6   Account Executive responsible for<br>7   interface with Provider Synergies?<br>8     A.  No.<br>9     Q.   Who was that person?<br>10     A.   It was John Fevurly.<br>11     Q.   I'm sorry, John Fevurly.<br>12     A.   Yes.<br>13     Q.   Mr. Fevurly.  I apologize.<br>14        Do you know why you were<br>15   moved off the account and Mr. Fevurly<br>16   was moved onto it?<br>17     A.   It's my general<br>18   recollection John had a better<br>19   working relationship with Mr. Taylor.<br>20     Q.   Was John Fevurly new to the<br>21   company?<br>22     A.   No.<br>23     Q.   And I guess what I'm trying<br>24   to understand is that if you were the<br>42<br>1   only National Account Executive who<br>2   worked with Provider Synergies in the<br>3   year that you worked, how is it that<br>4   Mr. Taylor had a previous working<br>5   relationship with Provider Synergies? | Page 41:13-19<br>Speculative,<br>irrelevant, lacks<br>personal knowledge<br><br>Page 41:23-42:5<br>Calls for<br>speculation,<br>irrelevant | |
| SHEARER, STEPHEN, W., (Page 42:8 to 42:11)<br>42<br>8   THE WITNESS:  I'm not sure<br>9   how John related to Mr. Taylor, but<br>10   he had a better working relationship<br>11   with Mr. Taylor. | Speculative,<br>irrelevant | *overrule* |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 42:13 to 42:20)<br>42<br>13　Q.　Is it your understanding<br>14　that he had some prior dealings with<br>15　Mr. Taylor but you don't know what<br>16　those dealings are?　Is that an<br>17　accurate depiction of your<br>18　understanding?<br>19　　A.　That's a general<br>20　description of what was going on. | Irrelevant, lacks personal knowledge | *handwritten* |
| SHEARER, STEPHEN, W., (Pages 43:23 to 45:3)<br>43<br>23　Q.　Other than Provider<br>24　Synergies, did you have any direct<br><br>44<br>1　contact with anyone that, to your<br>2　knowledge, was working on behalf of<br>3　Louisiana Department of Health and<br>4　Hospitals or Louisiana Medicaid?<br>5　　A.　I'm sorry, would you say<br>6　that again?<br>7　　Q.　Other than Provider<br>8　Synergies, did you have any contact<br>9　with anyone working on behalf of<br>10　Louisiana Department of Health and<br>11　Hospitals or Louisiana Medicaid?<br>12　　A.　No.<br>13　　Q.　Okay.　Did you have any<br>14　direct contact with Louisiana<br>15　Department of Health and Hospitals,<br>16　anyone at LDHH?<br>17　　A.　No.<br>18　　Q.　Do you know whether or<br>19　recall any direct contact with anyone<br>20　at University of Louisiana at Monroe<br>21　School of Pharmacy?<br>22　　A.　No.<br>23　　Q.　How about did you have any<br>24　direct contact with any members of<br><br>45<br>1　the Louisiana Department of Health<br>2　and Hospitals P&T Committee?<br>3　　A.　No. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 45:11 to 45:13)<br>45<br><br>11   Q.   Mr. Shearer, I wanted to<br>12   ask you, what did you do to prepare<br>13   for your deposition today? | | |
| SHEARER, STEPHEN, W., (Page 45:16 to 45:17)<br>45<br><br>16   THE WITNESS:  I met with my<br>17   attorney. | | |
| SHEARER, STEPHEN, W., (Pages 45:19 to 46:9)<br>45<br><br>19   Q.   Okay.  How many meetings<br>20   did you have with attorneys?<br>21      A.   Two.<br>22      Q.   Two meetings?<br>23      A.   Uh-huh.<br>24      Q.   And how long were those<br>46<br>1   meetings?<br>2      A.   I really don't recall.<br>3      Q.   Were they over the course<br>4   of two different days?<br>5      A.   Yes.<br>6      Q.   Were they the better part<br>7   of a day or half a day?<br>8      A.   I really don't -- several<br>9   hours. | | |
| SHEARER, STEPHEN, W., (Page 52:2 to 52:10)<br>52<br><br>2   Q.   Do you have any<br>3   recollection of interfacing with<br>4   Provider Synergies with respect to<br>5   Merck's product VIOXX?<br>6      A.   I have general recollection<br>7   of interfacing with Provider<br>8   Synergies.<br>9      Q.   And is that with respect to<br>10   the product VIOXX? | Page 52:9-10<br>Vague/ambiguous | *Overruled* |
| SHEARER, STEPHEN, W., (Page 52:13 to 52:15)<br>52<br><br>13   THE WITNESS:  I don't have<br>14   specific recollection of interfacing<br>15   with Provider Synergies around VIOXX. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 52:17 to 54:7)<br><br>52<br>17   Q.   Did you have any<br>18   understanding as to what Provider<br>19   Synergies' role was as a pharmacy<br>20   benefit management for Louisiana<br>21   Department of Health and Hospitals?<br>22      A.   Yes.<br>23      Q.   What was your understanding<br>24   of Provider Synergies' role as the<br>53<br>1   PBM for the Louisiana Department of<br>2   Health and Hospitals?<br>3      A.   They were functioning as a<br>4   PBM and would provide consulting<br>5   services.<br>6      Q.   What did you understand<br>7   that would entail?<br>8      A.   It's my general<br>9   recollection that they would be<br>10   consulting on a preferred drug list.<br>11      Q.   Do you know what consulting<br>12   on a preferred drug list entailed?<br>13      A.   In general --<br>14      Q.   Yes.<br>15      A.   -- it was probably making<br>16   recommendations to the State.<br>17      Q.   Was it your understanding<br>18   that the State would make the<br>19   ultimate decision as to what would go<br>20   on a preferred drug list?<br>21      A.   I had -- I have no<br>22   recollection of what the State's<br>23   responsibilities would be.<br>24      Q.   Okay.  Well, you said<br>54<br>1   recommendation.  I'm just wondering<br>2   if you had an understanding that<br>3   Provider Synergies would make<br>4   recommendations which it was then up<br>5   to the State to adopt or reject.<br>6      A.   I just knew they would make<br>7   recommendations. | Page 53:17-54:7<br>Speculative, lacks<br>personal knowledge | *Overruled* |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 54:17 to 54:23)<br>54<br>17   Q.  Did you as a National<br>18   Account Executive provide information<br>19   to Provider Synergies about Merck<br>20   products in an attempt to ensure<br>21   access to Merck products through<br>22   Louisiana Department of Health and<br>23   Hospitals? | Ambiguous/vague, overbroad | *Overruled* |
| SHEARER, STEPHEN, W., (Page 55:2 to 55:8)<br>55<br>2        THE WITNESS:  I would have<br>3   provided information to Provider<br>4   Synergies within Merck guidelines.<br>5   That information would have been<br>6   completely consistent with the label<br>7   of any drug at the time that I was<br>8   talking to them. | Ambiguous/vague, overbroad | |
| SHEARER, STEPHEN, W., (Page 57:12 to 57:14)<br>57<br>12   And I'd like to refer you<br>13   to the document at tab 1.  And for<br>14   the record, that document bears the | | |
| SHEARER, STEPHEN, W., (Page 57:15 to 57:16)<br>57<br>15   Bates marking MRK-MEH0007587 through<br>16   7588. | | |
| SHEARER, STEPHEN, W., (Page 57:20 to 57:21)<br>57<br>20   I have no recollection of seeing this<br>21   document before. | | |
| SHEARER, STEPHEN, W., (Page 57:22 to 57:24)<br>57<br>22   Q.  Does it appear to you to be<br>23   in the format that internal memoranda<br>24   at Merck were generated in? | Overbroad, calls for speculation | |
| SHEARER, STEPHEN, W., (Page 58:3 to 58:6)<br>58<br>3        THE WITNESS:  It's in the<br>4   form of a memorandum.  Whether all<br>5   memorandum were written this way, I<br>6   don't know. | Lacks personal knowledge, speculative | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 58:8 to 60:9)<br><div align="right">58</div>8   Q.   I'm just asking whether you<br>9   have any reason to believe this isn't<br>10   a Merck memorandum.<br>11      A.   I have no reason to believe<br>12   it is not a Merck memorandum.<br>13      Q.   Okay.  And I see that<br>14   you're copied on this memorandum<br>15   which is from Holly Jacques to a<br>16   number of individuals; is that<br>17   correct?<br>18      A.   Yes.<br>19      Q.   You're Steve Shearer in<br>20   Atlanta?<br>21      A.   Yes, I am.<br>22      Q.   Okay.  Do you recall<br>23   discussions regarding Louisiana P&T<br>24   Committee meetings that you were a<br><div align="right">59</div>1   part of?<br>2      A.   I was never a part of the<br>3   Medicaid P&T Committee meeting.<br>4      Q.   No, I'm sorry.  I want to<br>5   make sure you answer my question.<br>6   I'm asking whether you recall<br>7   discussions about P&T Committee<br>8   meetings, Medicaid P&T Committee<br>9   meetings, when you were a National<br>10   Account Executive in this time frame,<br>11   March 2002?<br>12      A.   No, I have no recollection.<br>13      Q.   Okay.  Let me refer you to<br>14   the second paragraph, the sentence<br>15   that begins After a brief<br>16   explanation.<br>17         It says, After a brief<br>18   explanation of the Florida program,<br>19   the chair of the P&T Committee,<br>20   Dr. Vincent Culotta, asked the P&T<br>21   Committee for approval to allow DHH<br>22   to negotiate a contract with Provider | Page 58:8-12<br>Overbroad,<br>speculative<br><br>Page 59:13-60:9<br>Lacks foundation,<br>overbroad, asked<br>and answered | Overruled |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 23   Synergies to develop a preferred<br>24   product list and to negotiate          60<br>1   supplemental rebates.<br>2       Do you have any<br>3   recollection -- and then it says, I'm<br>4   sorry, it says the P&T Committee<br>5   approved this request.<br>6       Do you have any<br>7   recollection of Louisiana approving a<br>8   contract with Provider Synergies to<br>9   develop a preferred product list? | | |
| SHEARER, STEPHEN, W., (Page 60:13 to 60:14)<br>                    60<br>13   THE WITNESS:  I have no<br>14   recollection of this. | | |
| SHEARER, STEPHEN, W., (Page 61:2 to 61:15)<br>                    61<br>2     Q.  I gather from what<br>3   Ms. Jacques has written here that<br>4   Provider Synergies had worked with<br>5   the state of Florida in assisting<br>6   them in developing a preferred<br>7   product list.  Is that your<br>8   recollection?<br>9       That is, do you know<br>10   whether Provider Synergies had worked<br>11   with the state of Florida?<br>12     A.  I have a general<br>13   recollection that Provider Synergies<br>14   was working with the state of<br>15   Florida. | Irrelevant, overbroad, lacks foundation | _Overruled_ |
| SHEARER, STEPHEN, W., (Page 61:16 to 61:24)<br>                    61<br>16   Q.  And I think we've already<br>17   gone over this, you don't recall<br>18   whether you had contact with Provider<br>19   Synergies prior to this request being<br>20   approved, that is, prior to Louisiana<br>21   Department of Health and Hospitals<br>22   agreeing to contract with Provider<br>23   Synergies?<br>24     A.  That's correct. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 62:1 to 62:17)<br>62<br>1   Q.  Okay.  Based on the timing<br>2  of document, that is, March of 2002,<br>3  assuming that it was at this time,<br>4  that is, March of 2002 that Louisiana<br>5  first decided to contract with<br>6  Provider Synergies, would it be your<br>7  belief that you had contact with<br>8  Provider Synergies prior to Louisiana<br>9  contracting with them?<br>10   A.  I have no recollection of<br>11  when I contacted Provider Synergies.<br>12   Q.  The reason I ask, I think<br>13  earlier you testified that you<br>14  believed your involvement with<br>15  Provider Synergies would have begun<br>16  in 2001.<br>17   A.  That's possible. | Speculative, lacks personal knowledge | *overruled* |

16

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 63:1 to 64:17)<br>63<br>1    Q.   Okay.  The next sentence<br>2   writes, Dr. Culotta announced that<br>3   the next P&T Committee meeting -- I'm<br>4   sorry, that at the next P&T Committee<br>5   meeting Provider Synergies would<br>6   present their recommendations for a<br>7   preferred product list for between 15<br>8   and 18 therapeutic categories.<br>9         Does that correspond with<br>10  your recollection of what Provider<br>11  Synergies was doing for Louisiana?<br>12     A.   In general, but I have no<br>13  recollection of numbers of<br>14  therapeutic categories.<br>15     Q.   And let me refer you to the<br>16  next page.  It's written, in<br>17  addition, Secretary Hood was asked<br>18  the following questions.<br>19         One, what would happen to<br>20  the information that pharmaceutical<br>21  manufacturers had already submitted<br>22  to the University of Louisiana<br>23  College of Pharmacy at Monroe ULM?<br>24         I gather from your earlier<br>64<br>1   testimony that you don't have any<br>2   knowledge as to what information had<br>3   previously been provided to<br>4   University of Louisiana College of<br>5   Pharmacy at Monroe?<br>6     A.   That's correct.<br>7     Q.   Then the next sentence<br>8   there says, Secretary Hood's only<br>9   comment was that the information<br>10  would be forwarded to Provider<br>11  Synergies for their consideration.<br>12         Do you know whether that<br>13  happened?<br>14    A.   No.<br>15         MR. MURRAY:  We'll go ahead<br>16  and attach that document as<br>17  Shearer-LA-1, please.  I actually | Lacks foundation, lacks personal knowledge | Overruled |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 65:3 to 66:21) | | |

SHEARER, STEPHEN, W., (Pages 65:3 to 66:21)

65

3   number MRK-MEF0002427.  Do you
4   recognize this document form?
5      A.  Yes.
6      Q.  Okay.  Is that something
7   you would have seen when you were a
8   National Account Executive in the
9   2002 time frame?
10     A.  Yes.
11     Q.  Okay.  This is just sort of
12  a notice of a teleconference?
13     A.  Yes, it appears to be.
14     Q.   Did you receive these sorts
15  of notices when you were National
16  Account Executive in the 2002 time
17  frame?
18     A.  Yes, I did.
19     Q.  Okay.  This notice says,
20  subject, Louisiana Medicaid Provider
21  Synergies.  The document is dated
22  March 13, 2002 or, rather, it refers
23  to a conference call, I suppose, on
24  March 13, 2002, to take place between

66

1   4:00 p.m. and 5:00 p.m.
2        Is that a correct
3   interpretation?
4      A.  Yes.
5      Q.  All right.  And then it
6   says, The participants will be Mike
7   Kelly, yourself, Holly Jacques, Terri
8   Lee, Mary Ogle, and Fran Kaiser.
9        Do you recall working with
10  those individuals with respect to
11  Provider Synergies?
12     A.  I recall generally working
13  with all these individuals.
14  Specifics around Provider Synergies,
15  I don't recall.
16     Q.  Do you remember who Mike
17  Kelly was --
18     A.  Yes.
19     Q.  -- what his title was?
20     A.  Yes.  He was a senior
21  director.

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 67:1 to 67:14)<br>67<br>1   Q.   Okay.  How about Holly<br>2  Jacques?<br>3      A.   At the time or maybe now<br>4  she was in Government Affairs.<br>5      Q.   Is Terri Lee also in<br>6  Government Affairs?<br>7      A.   To the best of my<br>8  knowledge.<br>9      Q.   How about Mary Ogle?<br>10     A.   I do not know.<br>11     Q.   Okay.  Fran Kaiser?<br>12     A.   The Fran Kaiser I know<br>13  would have been a medical director, a<br>14  physician. | | |
| SHEARER, STEPHEN, W., (Page 68:14 to 68:15)<br>68<br>14  I'm sorry.  That would be<br>15  Shearer-LA-2.  And the tabs will | | |
| SHEARER, STEPHEN, W., (Pages 70:20 to 71:9)<br>70<br>20     Q.   And during that year or so<br>21  that you were assigned to Provider<br>22  Synergies, about how often would you<br>23  meet with people from Provider<br>24  Synergies in your capacity as a<br>71<br>1  National Account Executive for Merck?<br>2      A.   You know, I don't recall.<br>3      Q.   Would it have been maybe<br>4  once a month, more or less?<br>5      A.   I really don't recall.<br>6      Q.   Do you know whether you had<br>7  more than one meeting with people<br>8  from Provider Synergies?<br>9      A.   No. | Lacks foundation, lacks personal knowledge | |
| SHEARER, STEPHEN, W., (Page 88:4 to 88:5)<br>88<br>4   Q.   Okay.  Referring you now to<br>5  Shearer-6, Bates MRK-AGLAAB0000373 | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 88:13 to 88:16)<br>88<br><br>13   Q.   Have you seen the document<br>14   before?<br>15      A.   No.  I don't have any<br>16   recollection of seeing this thing. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 88:17 to 90:5)<br><br>88<br>17   Q.   Does this appear to be a<br>18   chain of e-mails on which you were<br>19   copied?<br>20      A.   Yes, it does.<br>21      Q.   Okay.  And does this appear<br>22   to follow the format that e-mails<br>23   within Merck were prepared in the<br>24   2002 time frame?<br><br>89<br>1      A.   Yes, it does.<br>2      Q.   Let me refer you to the<br>3   subject line where it says, Re:<br>4   Provider Synergies Rebate Request for<br>5   Louisiana Medicaid on the first<br>6   e-mail in this chain -- I'm sorry,<br>7   the first one that appears on this<br>8   page.  Does that appear to be from<br>9   Allan Goldberg, who we discussed<br>10   earlier?<br>11      A.   Yes, I see his From up<br>12   here.<br>13      Q.   And Dr. Goldberg writes,<br>14   Colleagues, based on Holly's<br>15   response, we should plan submitting<br>16   dossiers for the following products<br>17   to Provider Synergies, even though<br>18   these dossiers were submitted to the<br>19   state of Louisiana.  And then VIOXX<br>20   is listed among the products; is that<br>21   correct?<br>22      A.   Yes, it is.<br>23      Q.   Okay.  Does this refresh<br>24   your recollection as to whether<br><br>90<br>1   dossiers were submitted --<br>2      A.   No, it doesn't.<br>3      Q.   I'm sorry -- to Provider<br>4   Synergies with respect to VIOXX?<br>5      A.   No, it doesn't.  I'm sorry. | Page 88:17-89:1<br>Overbroad,<br>speculative<br><br>Page 88:17-90:5<br>Lacks foundation,<br>speculative | |

21

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 90:12 to 91:1)<br>90<br>12   Q.   And then if I can refer you<br>13   to page -- the one that ends in the<br>14   Bates number 375. I see there's an<br>15   e-mail from you, looking at the --<br>16   close to the bottom of the page.<br>17     A.   Yes.<br>18     Q.   There's an e-mail, it's<br>19   from you to Holly Jacques, Fran<br>20   Kaiser, Michael Kelly, Terri Lee, and<br>21   Mary Ogle. It says, Subject,<br>22   Louisiana P&T Meeting, but there's no<br>23   content to that message; is that<br>24   correct?<br>91<br>1     A.   Yes, that is correct. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 91:2 to 92:5) <br><br> 91 <br> 2  Q.  Does it appear to you that <br> 3  you were forwarding -- that this <br> 4  e-mail from you is forwarding this <br> 5  e-mail from Lori Brown at Provider <br> 6  Synergies to the individuals who are <br> 7  copied on this e-mail? <br> 8    A.  Yes, it does. <br> 9    Q.  Okay.  Do you have any <br> 10  recollection of getting a request <br> 11  from -- actually, let me ask, do you <br> 12  have any recollection of Lori Brown, <br> 13  of a Lori Brown at Provider <br> 14  Synergies? <br> 15    A.  No, I don't know who this <br> 16  person is. <br> 17    Q.  Do you have any <br> 18  recollection of getting a request for <br> 19  information about Merck products, <br> 20  including VIOXX, from anyone at <br> 21  Provider Synergies in the April 2002 <br> 22  time frame? <br> 23    A.  No. <br> 24    Q.  Would forwarding a request <br><br> 92 <br> 1  from Provider Synergies to the people <br> 2  copied on this e-mail be consistent <br> 3  with your role as a National Account <br> 4  Executive? <br> 5    A.  Yes. | Page 91:2-92:5 <br> Lacks foundation <br><br> Page 90:24-92:5 <br> Lacks foundation, <br> speculative | *Sustained* |
| SHEARER, STEPHEN, W., (Page 95:9 to 95:10) <br><br> 95 <br> 9  Q.  And moving on to <br> 10  Shearer-8.  Take a moment to review | Lacks foundation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 95:20 to 96:4) <br> 95 <br> 20    Q.   Does it appear to you to be <br> 21   an e-mail or a chain of e-mails that <br> 22   forwards a memorandum to the <br> 23   recipients? <br> 24      A.   Yes, it does. <br> 96 <br> 1    Q.   Okay.  And are you among <br> 2   the recipients to whom that e-mail <br> 3   appears to have been forwarded?  And <br> 4   I'll refer you to -- | Lacks foundation | |
| SHEARER, STEPHEN, W., (Pages 96:20 to 97:9) <br> 96 <br> 20    Q.   Okay.  The memo that's <br> 21   forwarded to you appears to be a memo <br> 22   from Holly Jacques to a number of <br> 23   individuals, including yourself, with <br> 24   the subject line Summary of the P&T <br> 97 <br> 1   Committee Hearing on 5/9/02 and <br> 2   Summary of the Joint House and Senate <br> 3   Health and Welfare Committee Hearing <br> 4   on 5/10/02. <br> 5      Do you recall having any <br> 6   discussions about Louisiana P&T <br> 7   Committee in May of -- P&T Committee <br> 8   meeting in May of 2002? <br> 9      A.   No, I don't. | Lacks foundation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 97:10 to 98:8)<br>97<br>10  Q.  Okay.  The document begins<br>11  on Wednesday, May 9th, Louisiana P&T<br>12  Committee met to review the Preferred<br>13  Drug List (PDL) recommendations by<br>14  Provider Synergies in 15 therapeutic<br>15  categories.<br>16        And it says, Terry Taylor<br>17  and Valerie Taylor presented the<br>18  recommendations to the committee on<br>19  behalf of Provider Synergies.<br>20        Do you have any<br>21  recollection of Terry Taylor and/or<br>22  Valerie Taylor from Provider<br>23  Synergies making a presentation at<br>24  the Louisiana P&T Committee?<br>98<br>1  A.  No, I don't.<br>2  Q.  And I take it you don't<br>3  have any recollection of any<br>4  conversation that you may have had<br>5  about the presentations that those<br>6  individuals may have made to the P&T<br>7  Committee?<br>8  A.  No, I don't. | | |
| SHEARER, STEPHEN, W., (Page 99:18 to 99:22)<br>99<br>18   Do you know whether<br>19   Provider Synergies had received any<br>20   information from Merck with respect<br>21   to cardiovascular side effects of<br>22   VIOXX? | Calls for speculation | |
| SHEARER, STEPHEN, W., (Page 100:1 to 100:11)<br>100<br>1   THE WITNESS:  What I can<br>2   only tell you is what I would have<br>3   done.  Any request they would have<br>4   provided me would have been<br>5   consistent with the label at the<br>6   time.<br>7        Any additional information<br>8   that they would have requested I<br>9   would have forwarded that to Medical<br>10   Services and they would have provided<br>11   it. | Speculative, lacks personal knowledge | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 100:13 to 100:16)<br>100<br><br>13  Q.  Okay.  Do you know whether<br>14  you provided any information that was<br>15  not solicited about cardiovascular<br>16  side effects of VIOXX -- | Asked and answered | _overruled_ |
| SHEARER, STEPHEN, W., (Pages 100:22 to 101:1)<br>100<br><br>22  THE WITNESS:  I would have<br>23  only provided them with information<br>24  that was consistent with the FDA<br>101<br>1  labeling at the time. | Speculative | |
| SHEARER, STEPHEN, W., (Page 101:3 to 101:16)<br>101<br><br>3  Q.  And again, that information<br>4  that you would have provided them<br>5  would have come from Merck corporate<br>6  offices?<br>7     A.  Yes, it would have.<br>8     Q.  The next sentence says,<br>9  Provider Synergies did not mention<br>10  the fact that VIOXX has a GI<br>11  protective indication.<br>12        Do you have any<br>13  recollection as to whether you<br>14  provided any information to Provider<br>15  Synergies with respect to GI<br>16  protective indication for VIOXX? | Page 101:3-7<br>Speculative<br><br>Page 101:8-16<br>Asked and answered | |
| SHEARER, STEPHEN, W., (Page 101:19 to 101:24)<br>101<br><br>19  THE WITNESS:  I would have<br>20  provided any information around GI<br>21  productivity -- protection as it<br>22  relates to whatever the indication on<br>23  the label was at that point in time,<br>24  and that's all I would have done. | Speculative | |
| SHEARER, STEPHEN, W., (Page 102:2 to 102:5)<br>102<br><br>2  Q.  And again, that information<br>3  would have come from Merck corporate<br>4  offices?<br>5     A.  Yes, it would have. | Speculative | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 104:8 to 104:9)<br><br>104<br><br>8   Q.   Referring you to what's<br>9   been marked as Shearer-LA-9. | | |
| SHEARER, STEPHEN, W., (Pages 104:22 to 105:19)<br><br>104<br><br>22   Q.   Okay.  And, Mr. Shearer,<br>23   does that appear to be an e-mail<br>24   chain dated May 16, 2002?<br><br>105<br><br>1   A.   Yes.  Yes, it is.<br>2   Q.   Okay.  Does it appear that<br>3   the top e-mail on the page was one<br>4   that was sent by you?<br>5   A.   Yes, it does.<br>6   Q.   Okay.  Does that appear to<br>7   be something you would have sent in<br>8   your capacity as a National Account<br>9   Executive in that time frame?<br>10   A.   Yes.<br>11   Q.   Okay.  And I see that the<br>12   Re line, the Subject line is<br>13   Louisiana Medicaid Revised Memo.<br>14   That was also the subject line of the<br>15   e-mail that was marked as Shearer-LA-<br>16   8; is that correct?<br>17   A.   Well, it's the same subject<br>18   line.  I don't know if it's the same<br>19   chain of e-mails. | Page 105:2-19<br>Overbroad,<br>speculative,<br>vague/ambiguous | |
| SHEARER, STEPHEN, W., (Pages 105:20 to 106:3)<br><br>105<br><br>20   Q.   And that was going to be my<br>21   next question.  Do you know whether<br>22   this chain of e-mails relates to the<br>23   chain of e-mails that's discussed or<br>24   the memo, rather, that's discussed in<br><br>106<br><br>1   Shearer-8?<br>2   A.   No, I have no -- no<br>3   recollection. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 108:18 to 110:7)<br>108<br>18   Q.   Okay.  Thank you.  And it<br>19   looks like in this top e-mail you<br>20   write -- does it appear to you that<br>21   you are writing in response to the<br>22   e-mail below from Charles Grezlak?<br>23      A.   Yes, it has that --<br>24      Q.   Okay.<br>109<br>1      A.   -- that tone to it.<br>2      Q.   Okay.  And Mr. Grezlak had<br>3   written to a number of individuals,<br>4   including yourself.  Again, memo with<br>5   the same Re line, Louisiana Medicaid<br>6   Revised Memo.  He writes, Holly and<br>7   Terri:  Please discuss how we should<br>8   go about this.<br>9         And the next sentence he<br>10   writes, Steve:  Given our recent<br>11   strategy with Provider Synergies, are<br>12   you certain we will not undermine our<br>13   efforts by seeking this info?<br>14         Does it appear to you that<br>15   that question was directed to you?<br>16      A.   Yes, it does.<br>17      Q.   Okay.  Do you know what<br>18   he's referring to when he says to<br>19   recent strategy with Provider<br>20   Synergies?<br>21      A.   No.<br>22      Q.   Do you recall, again,<br>23   irrespective of the document, a<br>24   strategy that Merck had with respect<br>110<br>1   to Provider Synergies?<br>2      A.   No.<br>3      Q.   And there's nothing you can<br>4   tell me about any strategy that Merck<br>5   had with respect to Provider<br>6   Synergies?<br>7      A.   No. | Page 108:18-109:1<br>Speculative | *Overrule* |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 110:22 to 111:12)<br>110<br>22   Q.   Okay.  And then you write,<br>23   I think we need this information to<br>24   better understand their issues with<br>111<br>1   the various categories and to<br>2   construct future tactics.<br>3         Do you know what you're<br>4   referring to there in that sentence<br>5   where you write about constructing<br>6   future tactics?<br>7      A.  No, I don't.<br>8      Q.  Okay.  Do you have any<br>9   recollection as to what tactics may<br>10   have been developed by you or anyone<br>11   at Merck with respect to dealing with<br>12   Provider Synergies? | Page 110:22-111:7<br>Lacks personal<br>knowledge<br><br>Page 111:8-12<br>Assumes facts not in<br>evidence, calls for<br>speculation | |
| SHEARER, STEPHEN, W., (Page 111:16 to 111:17)<br>111<br>16   THE WITNESS:  No, I have no<br>17   recollection. | | |
| SHEARER, STEPHEN, W., (Pages 111:19 to 112:12)<br>111<br>19   Q.  Do you recall any tactics<br>20   that you may have developed with<br>21   respect to dealing with Provider<br>22   Synergies?<br>23      A.  No, I do not.<br>24      Q.  Okay.  Do you recall -- do<br>112<br>1   you recall whether having<br>2   office-based sales force call on P&T<br>3   Committee members was part of the<br>4   strategy developed by Merck with<br>5   respect to Provider Synergies?<br>6      A.  No, I have no recollection<br>7   of that.<br>8      Q.  Do you recall whether<br>9   providing dossiers to Provider<br>10   Synergies was a part of Merck's<br>11   tactics with respect to Provider<br>12   Synergies? | Assumes facts not in<br>evidence,<br>speculative | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 112:17 to 112:21)<br>112<br>17  THE WITNESS:  I don't know<br>18  about our -- I don't remember our<br>19  tactics.  If Provider Synergies asked<br>20  for dossiers, I would have forwarded<br>21  that to Medical Affairs. | Speculative, lacks personal knowledge | |
| SHEARER, STEPHEN, W., (Page 114:3 to 114:4)<br>114<br>3   Q.   And moving on to<br>4   Shearer-10, MRK-MEH0016259 through | | |
| SHEARER, STEPHEN, W., (Page 114:13 to 114:17)<br>114<br>13  Q.  Have you seen the document<br>14  before, or do you recall the<br>15  document?<br>16      A.  I don't recall the<br>17  document. | | |
| SHEARER, STEPHEN, W., (Pages 114:18 to 115:3)<br>114<br>18   Q.   Does it appear to be a<br>19  string of e-mails, the top e-mail of<br>20  which is one from yourself to a<br>21  number of individuals, including Fran<br>22  Kaiser, Allan Goldberg, Eugene Sun,<br>23  Terri Lee, Michael Kelly, and others?<br>24      A.   Yes, it does.<br>115<br>1    Q.   Okay.  Does this appear to<br>2  be dated May 16, 2002?<br>3      A.   Yes. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 115:12 to 117:11)<br>115<br>12  Q.  And does it appear that the<br>13  body of the e-mail drafted by you is<br>14  addressed to Fran Kaiser?<br>15     A.  Yes, it is.  Well, it's<br>16  addressed to Fran Kaiser and a bunch<br>17  of other people.<br>18     Q.  And you write in the first<br>19  paragraph, Fran, Michael Davis and I<br>20  are trying to arrange a meeting with<br>21  Terry Taylor between now and May<br>22  24th.<br>23        Does that refresh your<br>24  recollection as to whether you had a<br>116<br>1  meeting with Terry Taylor in May of<br>2  2002?<br>3     A.  No, it doesn't.<br>4     Q.  Does that appear to be<br>5  Terry Taylor of Provider Synergies<br>6  that you're referring to in that<br>7  sentence?<br>8     A.  Yes.<br>9     Q.  Okay.  And then you provide<br>10  some background information on<br>11  Provider Synergies; is that correct?<br>12     A.  Yes.<br>13     Q.  Do you know the source of<br>14  that background information that you<br>15  provided in this memo?<br>16     A.  No, I do not.<br>17     Q.  And then if I can refer you<br>18  to the last sentence at the bottom of<br>19  the page.  You write, As for<br>20  submitting more data, I think we need<br>21  to work on a system whereby we<br>22  submitted updates to PS of any new<br>23  information on our products.<br>24        Do you recall making that<br>117<br>1  recommendation?<br>2     A.  No, I don't.<br>3     Q.  Okay.  Do you think PS<br>4  there refers to Provider Synergies?<br>5     A.  Yes, I do.<br>6     Q.  Okay.  Do you know whether<br>7  a system was put in place whereby<br>8  updated information on Merck products<br>9  could be provided to Provider<br>10  Synergies?<br>11     A.  No, I do not. | Page 115:12-117:11<br>Lacks foundation,<br>lacks personal<br>knowledge<br><br>Page 117:6-11<br>Overbroad,<br>vague/ambiguous | |

31

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 118:16 to 119:13)<br>118<br>16  Q.   And then referring you to<br>17  the e-mail from Dr. Kaiser to which<br>18  it appears you were responding,<br>19  Dr. Kaiser writes in the second<br>20  paragraph -- I'm sorry, second<br>21  sentence of that e-mail, this is on<br>22  page 260.<br>23         Does it appear that you<br>24  were copied on this e-mail from<br>119<br>1  Dr. Kaiser?<br>2      A.   Yes, it does.<br>3      Q.   Okay.  And does it appear<br>4  that your e-mail is responding to<br>5  this e-mail from Dr. Kaiser?<br>6      A.   Yes, it does.<br>7      Q.   Okay.  Dr. Kaiser writes,<br>8  AMCP dossiers were provided for<br>9  Zocor, VIOXX, and Singulair.<br>10         Do you have any reason to<br>11  doubt the veracity of that statement<br>12  by Dr. Kaiser?<br>13      A.   No, I do not. | Page 118:16-119:13<br>Lacks foundation<br><br>Page 119:7-13<br>Lacks personal knowledge, speculative | |
| SHEARER, STEPHEN, W., (Page 122:19 to 122:20)<br>122<br>19  Q.   Referring you to<br>20  Shearer-11, MRK-MFX0015436. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 122:22 to 123:17)<br>122<br>22　Q.　Does this appear to be an<br>23　e-mail?<br>24　　A.　Yes, it does.<br>123<br>1　　Q.　On which you were copied?<br>2　　A.　Yes, it does.<br>3　　Q.　Appear to be dated<br>4　September 29, 2002, with the subject<br>5　of PBM Report?<br>6　　A.　Yes.<br>7　　Q.　And then it says, Updates<br>8　on Wisconsin and Iowa.  Will send<br>9　Louisiana and Indiana as soon as we<br>10　get it.  Regards, Heidi Bortner.  Do<br>11　you know who Heidi Bortner was?<br>12　　A.　No, I don't.<br>13　　Q.　Okay.  And my question is,<br>14　would you have had any role in<br>15　providing a PBM report with respect<br>16　to Louisiana?<br>17　　A.　I don't recall. | Page 122:22-123:17<br>Lacks foundation<br><br>Page 123:10-12<br>Irrelevant<br><br>Page 123:13-17<br>Lacks personal<br>knowledge | |
| SHEARER, STEPHEN, W., (Page 123:18 to 123:21)<br>123<br>18　Q.　You don't have any<br>19　recollection of the subject matter of<br>20　this e-mail?<br>21　　A.　No.  No, I do not. | | |
| SHEARER, STEPHEN, W., (Page 124:3 to 124:3)<br>124<br>3　Q.　Turning to Shearer-12, | | |
| SHEARER, STEPHEN, W., (Page 124:17 to 124:19)<br>124<br>17　Q.　Have you seen the document?<br>18　　A.　No, I have no recollection<br>19　of this. | | |

33

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Pages 125:10 to 127:8) | Speculative, lacks foundation | |

SHEARER, STEPHEN, W., (Pages 125:10 to 127:8)

125

10   Q.   Okay.  In it the author of
11   the document writes, Working with
12   Government Affairs and MCO NAE on
13   Medicaid.  Let me ask you, do you
14   know what the MCO -- I think NAE is
15   the National Account Executive;
16   correct?
17      A.   Yes, that's how Merck uses
18   that.
19      Q.   Do you know what the MCO
20   refers to there?
21      A.   Probably Managed Care
22   Organization.
23      Q.   Okay.  Would that acronym
24   have referred to you at that time?

126

1   Were you a Managed Care Organization
2   National Account Executive?
3      A.   Well, the answer is I've
4   been a Managed Care Organization, an
5   account executive, but I don't know
6   the time frame of this --
7      Q.   Okay.
8      A.   -- so I don't know if that
9   refers to me.
10      Q.   Let me ask you about 2002.
11   Were you a Managed Care Organization
12   National Account Executive in 2002?
13      A.   Yes.
14      Q.   And then the author of this
15   document goes on to write, Have --
16   said, Working with Government Affairs
17   and MCO NAE on Medicaid.
18           Have facilitated
19   coordinating and providing dossiers
20   for LSU School of Pharmacy and now
21   Provider Synergies, the PBM charged
22   with creating a Preferred Drug List
23   for Louisiana.
24           And let me ask you whether

127

1   this refreshes your recollection as
2   to whether you had any involvement in
3   the submission of dossiers to either
4   Louisiana School of Pharmacy or
5   Provider Synergies.
6      A.   No, it does not.
7      Q.   Do you have any reason to
8   doubt the veracity of this statement?

34

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 127:11 to 127:14)<br>127<br>11   THE WITNESS:  Since I have<br>12   no recollection, it's hard to make a<br>13   judgment call as to whether this is<br>14   true or not. | Speculative, lacks personal knowledge, overbroad | |
| SHEARER, STEPHEN, W., (Pages 127:16 to 128:6)<br>127<br>16   Q.   Other than not having a<br>17   recollection, do you have any other<br>18   reason that you would doubt the<br>19   veracity of the statement?<br>20      A.  No, I do not.<br>21      Q.   Okay.  And then the author<br>22   writes, Have had discussions with<br>23   Steve Shearer.<br>24         Do you know what that's<br>128<br>1   referring to there?<br>2      A.  No, I do not.<br>3      Q.  Do you recall having<br>4   discussions with Fran Kaiser about<br>5   the submission of dossiers to<br>6   Provider Synergies? | Page 127:16-20<br>Speculative, lacks personal knowledge, overbroad<br><br>Page 127:21-128:2<br>Lacks foundation<br><br>Page 128:3-6<br>Misstates contents of exhibit, lacks foundation | |
| SHEARER, STEPHEN, W., (Page 128:9 to 128:9)<br>128<br>9   THE WITNESS:  No, I do not. | | |
| SHEARER, STEPHEN, W., (Page 128:11 to 128:18)<br>128<br>11   Q.  Do you recall having<br>12   discussions with Fran Kaiser about<br>13   Louisiana Medicaid?<br>14      A.  No, I do not.<br>15      Q.   And do you have any reason<br>16   to doubt the veracity of the author's<br>17   statement that they had discussions<br>18   with you per this reference line? | Page 128:15-18<br>Vague/ambiguous, calls for speculation | |
| SHEARER, STEPHEN, W., (Page 128:21 to 128:23)<br>128<br>21   THE WITNESS:  There's no<br>22   way I can judge this one way or<br>23   another since I have no recollection. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 138:16 to 138:21)<br>138<br>16   Q.   Was it your recollection<br>17   that during the time that you were<br>18   the National Account Executive for<br>19   Provider Synergies, VIOXX was subject<br>20   to a prior authorization in the state<br>21   of Louisiana? | Overbroad | *Sustained* |
| SHEARER, STEPHEN, W., (Pages 138:24 to 139:4)<br>138<br>24   THE WITNESS:  Okay.  It's<br>139<br>1   my recollection that in general<br>2   during that period of time that there<br>3   was a prior authorization on VIOXX.<br>4   I can't tell you when it started. | Lacks personal knowledge | |
| SHEARER, STEPHEN, W., (Page 139:6 to 139:11)<br>139<br>6   Q.   And as part of your charge<br>7   to ensure access to Merck products,<br>8   would it have been within your<br>9   responsibility to attempt to remove<br>10   VIOXX from that prior authorization<br>11   requirement? | Misstates prior testimony, assumes facts not in evidence, overbroad, vague/ambiguous | |
| SHEARER, STEPHEN, W., (Page 139:15 to 139:17)<br>139<br>15   THE WITNESS:  It would have<br>16   been my responsibility to attempt to<br>17   improve access for Merck products. | | |
| SHEARER, STEPHEN, W., (Page 139:19 to 139:21)<br>139<br>19   Q.   And would improving access<br>20   entail getting VIOXX to not be<br>21   subject to a prior authorization? | | |
| SHEARER, STEPHEN, W., (Pages 139:24 to 140:1)<br>139<br>24   THE WITNESS:  Not<br>140<br>1   necessarily. | Incomplete-Add 140:3-15, 140:18-20 | |

36

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| SHEARER, STEPHEN, W., (Page 143:3 to 143:8)<br>143<br>3   MR. SALES:  Pass the<br>4   witness?<br>5       MR. MURRAY:  Yes, pass the<br>6   witness, but reserve the right to<br>7   follow up on any questions that<br>8   Merck's counsel may ask. | Attorney Colloquy | |
| SHEARER, STEPHEN, W., (Page 144:7 to 144:17)<br>144<br>7   Do you recall while you<br>8   were the National Account Executive<br>9   dealing with Provider Synergies<br>10   whether Merck had agreed to give<br>11   supplemental rebates to Provider<br>12   Synergies for Louisiana Medicaid?<br>13       A.   They had not agreed to give<br>14   supplemental rebates.<br>15       Q.   Did that present a<br>16   challenge?<br>17       A.   Yes, it did. | | |
| SHEARER, STEPHEN, W., (Page 145:1 to 145:14)<br>145<br>1   Q.   Okay.  Did you ever take<br>2   VIOXX yourself?<br>3       A.   Yes, I did.<br>4       Q.   What did you take VIOXX<br>5   for?<br>6       A.   Osteoarthritis.<br>7       Q.   And how did it work for<br>8   you?<br>9       A.   Fine.<br>10       Q.   Did it relieve your pain?<br>11       A.   Yes, it did.<br>12       Q.   Did you have any adverse<br>13   events or problems with it?<br>14       A.   No, I did not. | Relevance – MIL Ruling | overrule |
| End | | |