GOLDBERG, MD, ALLAN, DEPOSITION OF 11/5/09

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| Defendant's Counter Designations are highlighted.<br>Plaintiffs Affirmative Designations are not. | | |
| **11/5/09 DEPOSITION** | | |
| GOLDBERG, M.D., ALAN, (Pages 7:20 to 8:11)<br>        7<br>20  Q.  Okay.  Dr. Goldberg, would<br>21  you state your name and your business<br>22  address, please.<br>23     A.  Yes.  It's Allan I.<br>24  Goldberg.  Address is 351 Sumneytown<br><br>        8<br>1  Pike, North Wales, Pennsylvania,<br>2  19454.<br>3     Q.  Okay.  And what's your<br>4  current employment status?<br>5     A.  I'm employed with Merck and<br>6  Company.<br>7     Q.  So you're still with Merck?<br>8     A.  I am.<br>9     Q.  And your title now is?<br>10     A.  I'm a Regional Director of<br>11  Medical Affairs. | | |
| GOLDBERG, M.D., ALAN , (Pages 8:22 to 9:7)<br>        8<br>22  Dr. Goldberg, what did you do to<br>23  prepare for your deposition today?<br>24     A.  I met with my attorneys.<br><br>        9<br>1     Q.  Okay.  How many meetings<br>2  did you have with your counsel?<br>3     A.  Two meetings.<br>4     Q.  Okay.  How long were those<br>5  meetings?<br>6     A.  Approximately day-long<br>7  meetings each. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 9:20 to 10:1)<br><br>9<br>20   Q.   Did you have -- did you<br>21   understand that the attorneys there<br>22   were present representing Merck or<br>23   representing you?<br>24      A.   Mr. Goldman represents me,<br><br>10<br>1   and the others represent Merck. | | |
| GOLDBERG, M.D., ALAN I., (Page 10:10 to 10:12)<br><br>10<br>10   Mr. Goldman's services are being paid<br>11   for my Merck?<br>12      A.   That's my understanding. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, MD, ALLAN (Page 14:8 to 15:17)<br><br>14<br>8   Q.   With that limitation, can<br>9   you tell me the subject matter of any<br>10   of the PowerPoints that you reviewed<br>11   that refreshed your recollection?<br>12       A.   One in particular does come<br>13   to mind.  It was a presentation that<br>14   I was part of, given in August, I<br>15   believe, of '01 at the request of a<br>16   customer.<br>17       Q.   Okay.  Do you recall the<br>18   customer at whose request the<br>19   presentation was given?<br>20       A.   General Electric.<br>21       Q.   And what was the subject<br>22   matter of the presentation?<br>23       A.   It was a discussion on<br>24   Vioxx.<br><br>15<br>1       Q.   Anything in particular with<br>2   Vioxx that you can recall?<br>3       A.   It was a presentation on<br>4   the GI effects, as well as the<br>5   cardiovascular safety profile.<br>6       Q.   And you say that was in<br>7   August of '01; is that correct?<br>8       A.   I believe that's correct.<br>9       Q.   Okay.  Are there any other<br>10   Power -- I'm sorry, who prepared the<br>11   PowerPoint?  Was that a PowerPoint<br>12   prepared by you for the presentation?<br>13       A.   It was a PowerPoint that<br>14   was put together from other sources.<br>15   More than likely it came from<br>16   scientists in the Merck Research<br>17   Labs, not of my own authorship. | 401; 602 (lacks foundation) | *(handwritten ruling)* |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 14:8 to 15:17)<br><br>14<br>8   Q.  With that limitation, can<br>9   you tell me the subject matter of any<br>10   of the PowerPoints that you reviewed<br>11   that refreshed your recollection?<br>12      A.   One in particular does come<br>13   to mind.  It was a presentation that<br>14   I was part of, given in August, I<br>15   believe, of '01 at the request of a<br>16   customer.<br>17      Q.   Okay.  Do you recall the<br>18   customer at whose request the<br>19   presentation was given?<br>20      A.   General Electric.<br>21      Q.   And what was the subject<br>22   matter of the presentation?<br>23      A.   It was a discussion on<br>24   Vioxx.<br><br>15<br>1      Q.   Anything in particular with<br>2   Vioxx that you can recall?<br>3      A.   It was a presentation on<br>4   the GI effects, as well as the<br>5   cardiovascular safety profile.<br>6      Q.   And you say that was in<br>7   August of '01; is that correct?<br>8      A.   I believe that's correct.<br>9      Q.   Okay.  Are there any other<br>10   Power -- I'm sorry, who prepared the<br>11   PowerPoint?  Was that a PowerPoint<br>12   prepared by you for the presentation?<br>13      A.   It was a PowerPoint that<br>14   was put together from other sources.<br>15   More than likely it came from<br>16   scientists in the Merck Research<br>17   Labs, not of my own authorship. | | |
| GOLDBERG, M.D., ALAN , (Page 16:1 to 16:5)<br><br>16<br>1   Q.   But your recollection is<br>2   that the data contained in the<br>3   PowerPoint came from Merck research<br>4   scientists?<br>5      A.   Yes. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 18:15 to 18:24)  18<br><br>15   Q.  Dr. Goldberg, can you tell<br>16   me your educational background.<br>17      A.   Undergraduate, University<br>18   of Illinois.  Medical school, Chicago<br>19   Medical School.<br>20      Q.   What was your undergraduate<br>21   degree in?<br>22      A.   Biology, chemistry.<br>23      Q.   Sort of premed?<br>24      A.   Yes. | | |
| GOLDBERG, M.D., ALAN , (Page 19:4 to 19:15)  19<br><br>4   Q.  And what year did you<br>5   receive that degree?<br>6      A.   I believe 1970.<br>7      Q.   Okay.  And from the<br>8   University of Illinois?<br>9      A.   From the University of<br>10   Illinois.<br>11      Q.   No, I'm sorry, from --<br>12      A.   Oh, beyond the University<br>13   of Illinois?<br>14      Q.   Beyond the University of<br>15   Illinois. | | |
| GOLDBERG, M.D., ALAN , (Pages 19:16 to 20:2)  19<br><br>16   A.   Went to Chicago Medical<br>17   School, graduated in 1973.<br>18      Q.   Did you have any area of<br>19   concentration, focus, specialization?<br>20      A.   That -- well, so beyond<br>21   that, I did my postgraduate training<br>22   at Baylor College of Medicine,<br>23   Houston, Texas.  I'm Board certified<br>24   in internal medicine.  I did a<br><br>1   fellowship in nephrology.  I'm Board  20<br>2   certified in nephrology. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| **GOLDBERG, M.D., ALAN , (Page 20:3 to 20:14)**<br>                                                                          20<br>3   Q.   Where did you do your<br>4   fellowship in nephrology?<br>5      A.   Baylor.<br>6      Q.   That was also at Baylor?<br>7      A.   Yes.<br>8      Q.   So -- and you're -- I take<br>9   it you did an internship in internal<br>10  medicine?<br>11     A.   Yes.<br>12     Q.   A residency?<br>13     A.   In internal medicine,<br>14  internship residency. | | |
| **GOLDBERG, M.D., ALAN , (Page 20:18 to 20:24)**<br>                                                                          20<br>18     Q.   Have you published any<br>19  peer-review articles?<br>20     A.   I have.<br>21     Q.   How many?<br>22     A.   Somewhere in the<br>23  neighborhood of 20 to 25, one book<br>24  chapter. | | |
| **GOLDBERG, M.D., ALAN , (Page 24:6 to 24:15)**<br>                                                                          24<br>6   Other than your internal<br>7   medicine degree, do you have any<br>8   specialized treatment -- I mean<br>9   specialized education in the field of<br>10  treatment of heart disease?<br>11     A.   I'm -- no.  Nephrology.<br>12     Q.   And for the benefit of the<br>13  jury and for myself, nephrology<br>14  relates to kidneys; is that correct?<br>15     A.   Correct, kidney disease. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 25:24 to 27:4) <br><br> 25 <br> 24   Q.  Dr. Goldberg, I'd like to <br><br> 26 <br> 1   move on to your employment history. <br> 2       After completing your <br> 3   internships at Baylor, your <br> 4   postgraduate work at Baylor, what was <br> 5   your next job? <br> 6       A.  So I was on the faculty at <br> 7   Baylor, as well as in private <br> 8   practice in Houston, Texas, in <br> 9   nephrology. <br> 10       Q.  How many years were you in <br> 11   private practice? <br> 12       A.  From '82 to '85 in Houston, <br> 13   and then back in Chicago from '85 <br> 14   until the end of '88, very beginning <br> 15   of '89. <br> 16       Q.  Was your practice in <br> 17   Chicago also in nephrology? <br> 18       A.  Primarily, yes. <br> 19       Q.  Okay.  Were you associated <br> 20   with a hospital -- let me -- first in <br> 21   Houston, when you were in private <br> 22   practice in Houston, were you <br> 23   associated with a hospital? <br> 24       A.  The Baylor affiliates, as <br><br> 27 <br> 1   well as Diagnostic Center Hospital. <br> 2       Q.  How about in Chicago? <br> 3       A.  Yes.  Lutheran General <br> 4   Hospital, outside of Chicago. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 27:10 to 27:22)<br>27<br>10  Q.  How many patients did you<br>11  generally see in a given month during<br>12  your tenure in private practice?  And<br>13  if it changed, you can tell me that<br>14  it changed.<br>15      A.  Oh, goodness, it changes.<br>16          As a nephrologist, a lot of<br>17  my work was consultative, so a lot of<br>18  it's dependent on the volume of<br>19  consults.  And then there was also an<br>20  office practice as well, too, which<br>21  was a mix of nephrology and internal<br>22  medicine. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN (Pages 30:20 to 32:18) **30**<br>20  Q.  And in Chicago, was your<br>21  focus as it was in Houston, that is<br>22  primarily nephrology with some<br>23  internal medicine?<br>24     A.  That's correct. **31**<br>1     Q.  And after Chicago, what was<br>2  your next employment?<br>3     A.  I came to Merck in January<br>4  of 1989.<br>5     Q.  Okay.  What was your first<br>6  job title at Merck?<br>7     A.  Associate Director of<br>8  Cardiovascular Clinical Research.<br>9     Q.  And how did you come to<br>10  have that position?<br>11     A.  I applied to Merck and was<br>12  brought in.<br>13     Q.  Did anyone from Merck<br>14  encourage you to apply?<br>15     A.  No.<br>16     Q.  So you weren't headhunted<br>17  or --<br>18     A.  Correct, I was not.<br>19     Q.  What made you decide to<br>20  apply for a position with Merck?<br>21     A.  I was in solo nephrology in<br>22  Chicago.  It's a very -- it was 24/7,<br>23  and was looking to enter another<br>24  nephrology practice. **32**<br>1        At the time I was not able<br>2  to find another nephrology practice<br>3  to join in the Chicago area, so I was<br>4  looking to have to relocate at that<br>5  point.  I made a decision that I<br>6  might also join pharma.  I'd always<br>7  wanted to do research.<br>8     Q.  Had you had any experience<br>9  in research prior to going to Merck?<br>10     A.  I did some preclinical<br>11  research as a nephrology fellow.<br>12     Q.  Was that when you were --<br>13     A.  At Baylor.<br>14     Q.  -- at Baylor?<br>15        And what was the subject<br>16  matter of that research?<br>17     A.  It was a $CO_2$ transport<br>18  internal bladder. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 32:22 to 33:9)<br><br>32<br>22   Q.   Did you have any experience<br>23   in the conduct of clinical trials<br>24   prior to going to Merck?<br><br>33<br>1    A.   No.<br>2    Q.   And your first title was<br>3   Assistant Director of<br>4   Cardiovascular --<br>5    A.   Associate.<br>6    Q.   I'm sorry, Associate<br>7   Director of Cardiovascular Clinical<br>8   Research?<br>9    A.   Correct. | | |
| GOLDBERG, M.D., ALAN , (Page 33:10 to 33:18)<br><br>33<br>10   Q.   If your specialty had been<br>11   in nephrology, how is it that you<br>12   came to be involved in cardiovascular<br>13   clinical research?<br>14    A.   Cardiovascular is the<br>15   general categorization of the area<br>16   that I was in that had multiple<br>17   different therapeutic areas.  My<br>18   specific area was in hypertension. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 33:19 to 35:15)<br>33<br>19   Q.   What were your<br>20   responsibilities in that position as<br>21   Associate Director of Cardiovascular<br>22   Clinical Research?<br>23      A.   Principally drafting<br>24   protocols; summarizing data from the<br>34<br>1   protocols after the clinical trials<br>2   were conducted; monitoring clinical<br>3   trials; putting together New Drug<br>4   Application documents; participating<br>5   on project teams; running project<br>6   teams.<br>7      Q.   What is meant by "project<br>8   teams"?<br>9      A.   Project team is an<br>10   aggregation of cross-functional<br>11   individuals from different<br>12   departments that participate in the<br>13   drug development process.<br>14      Q.   What different departments<br>15   would be part of a project team?<br>16      A.   Clinical Research, of which<br>17   I was a member; Regulatory Affairs;<br>18   Pharmaceutical Research and<br>19   Development; Product Safety, which is<br>20   like toxicology; Preclinical<br>21   Pharmacology; Clinical Pharmacology,<br>22   if I didn't mention it.<br>23          And another -- a number of<br>24   other disciplines.<br>35<br>1      Q.   Can you recall any of the<br>2   other disciplines?<br>3      A.   Patents.  That's pretty<br>4   much the hub of it.<br>5      Q.   Anyone from Sales or<br>6   Marketing involved in any of the<br>7   project teams --<br>8      A.   Yes.<br>9      Q.   -- when you were in that<br>10   position?<br>11      A.   Yes.  Marketing.<br>12      Q.   What was Marketing's role<br>13   in just patient and product --<br>14   project teams with respect to<br>15   clinical research? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 35:24 to 36:2)<br><br>35<br>24   A.   Primarily to understand the<br><br>36<br>1   development program, to be able to<br>2   develop a perspective on the product. | | |
| GOLDBERG, M.D., ALAN , (Page 36:8 to 36:16)<br><br>36<br>8   Q.   And how long did you hold<br>9   the position of Associate Director of<br>10   Cardiovascular Clinical Research?<br>11       A.   I was eventually promoted<br>12   to Director.  I don't recall exactly<br>13   those time frames.  The CV will<br>14   reflect that.  But after a several-<br>15   year period or so, I was promoted to<br>16   Director. | | |
| GOLDBERG, M.D., ALAN , (Page 38:13 to 38:23)<br><br>38<br>13   Q.   Was Vioxx one of the agents<br>14   that you conducted clinical research<br>15   with respect to when you were at<br>16   Merck Research Labs?<br>17       A.   No.<br>18       Q.   Did you ever have<br>19   responsibility for the conduct of<br>20   clinical research with respect to<br>21   Vioxx, either before or after your<br>22   tenure with Merck Research Labs?<br>23       A.   No. | | |
| GOLDBERG, M.D., ALAN , (Pages 39:22 to 40:2)<br><br>39<br>22   Q.   What was your next position<br>23   after Director of Cardiovascular<br>24   Clinical Research for Merck Research<br><br>40<br>1   Labs?<br>2       A.   Senior Research Physician. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 40:6 to 40:13)<br>40<br>6   Q.  Do you recall the time<br>7   frame when you were in that position?<br>8      A.  I was in Merck Research<br>9   Labs for approximately 12 and a half<br>10  years, so maybe sort of a quarter of<br>11  the time spent in each position, give<br>12  or take.  The CV will reflect dates<br>13  more accurately. | | |
| GOLDBERG, M.D., ALAN , (Page 40:14 to 40:24)<br>40<br>14   Q.  Okay.  What was the<br>15  difference between your<br>16  responsibilities as Director of<br>17  Cardiovascular Clinical Research and<br>18  Senior Research Physician, if any?<br>19      A.  Yes, not a great deal.  But<br>20  at that point in time I assumed<br>21  responsibility for running project<br>22  teams and actually had had some prior<br>23  to that as well, too, but on more<br>24  visible programs. | | |
| GOLDBERG, M.D., ALAN , (Page 41:5 to 41:20)<br>41<br>5   Did the running of project<br>6   teams become the primary focus of<br>7   your employment when you were a<br>8   Senior Research Physician?<br>9      A.  That's a part of the<br>10  responsibility.<br>11      The day-to-day is writing<br>12  protocols; evaluating the data from<br>13  the protocols; summarizing the data,<br>14  meeting with investigators who are<br>15  conducting the clinical trials;<br>16  monitoring the clinical trials.<br>17      Q.  Were those clinical trials<br>18  conducted by Merck or were they<br>19  conducted by entities outside of<br>20  Merck -- | | |
| GOLDBERG, M.D., ALAN , (Page 41:24 to 41:24)<br>41<br>24  Q.  -- under contract to Merck? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 42:3 to 42:20)<br>42<br>3   THE WITNESS:  The trials<br>4   are sponsored by Merck.  They're run<br>5   by investigative sites outside of the<br>6   entity of Merck.<br>7   BY MR. MURRAY:<br>8      Q.  Would that be true with<br>9   respect to all of the clinical trials<br>10   with which you were involved during<br>11   your tenure at Merck Research Labs?<br>12      A.  Can you clarify, please?<br>13      Q.   You had said that trials<br>14   were sponsored by Merck but run by<br>15   investigative sites that were outside<br>16   of Merck.<br>17         Was that true for all of<br>18   the clinical trials that you were<br>19   involved in when you were employed by<br>20   Merck Research Labs? | | |
| GOLDBERG, M.D., ALAN , (Page 42:23 to 42:24)<br>42<br>23   THE WITNESS:  That's<br>24   correct. | | |
| GOLDBERG, M.D., ALAN , (Page 44:3 to 44:20)<br>44<br>3   What do you mean by<br>4   investigative sites?<br>5      A.  The PI, or primary --<br>6   principal investigator, primary<br>7   investigator, is tasked with<br>8   recruitment of patients, appropriate<br>9   patients into the clinical trials per<br>10   the protocol that we write and<br>11   follows the protocol to its<br>12   conclusion and then submits the data<br>13   from the trial back to the company<br>14   for summarization.<br>15      Q.  You said that the<br>16   investigator -- the investigative<br>17   sites would conduct the<br>18   investigations per protocols drafted<br>19   by Merck.<br>20         Was that always the case? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 44:24 to 45:2)<br>24   Q.   In your experience in the<br><div align="right">44</div><br><div align="right">45</div>1   marketing -- I'm sorry, in Merck<br>2   Research Labs. | | |
| GOLDBERG, M.D., ALAN , (Page 45:5 to 45:6)<br><div align="right">45</div>5   THE WITNESS:  We would<br>6   draft the protocols. | | |
| GOLDBERG, M.D., ALAN , (Page 45:8 to 45:15)<br><div align="right">45</div>8   Q.   You're not aware of any<br>9   instance where the protocol was<br>10   drafted by a party other than<br>11  Merck --<br>12    A.  No.<br>13    Q.   -- for a trial sponsored by<br>14  Merck?<br>15    A.  No, not in my experience. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| **GOLDBERG, M.D., ALAN, (Page 47:1 to 47:24)**<br><br>47<br>1  Q.  Did I understand correctly<br>2  or hear correctly from your testimony<br>3  that you were involved as a Clinical<br>4  Monitor with respect to clinical<br>5  trials sponsored by Merck when you<br>6  were with Research Labs?<br>7  A.  Correct.<br>8  Q.  What were your<br>9  responsibilities as a Clinical<br>10  Monitor?<br>11  A.  Clinical Monitor is more --<br>12  another term for what I did day to<br>13  day as I described to you.<br>14  So despite my title,<br>15  Associate, Director, Senior Research<br>16  Physician, Clinical Monitor.  It's a<br>17  very broad categorization.<br>18  Q.  So that would include all<br>19  the things we talked about before<br>20  such as drafting protocols?<br>21  A.  Yes.<br>22  Q.  Interfacing with the<br>23  project team?<br>24  A.  Yes. | | |
| **GOLDBERG, M.D., ALAN, (Pages 48:21 to 49:1)**<br><br>48<br>21  Q.  Well, we were talking about<br>22  your roles as Clinical Monitor or<br>23  Director of Research, Senior Research<br>24  Physician, and your involvement in<br><br>49<br>1  Merck-sponsored clinical trials. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 49:2 to 49:14)<br>49<br>2   And you said one of the<br>3   things that you would do is summarize<br>4   results in manuscript form and submit<br>5   manuscripts.<br>6        And my question was, in<br>7   your experience in those positions,<br>8   was it always the case that someone<br>9   from Merck would be responsible for<br>10  fulfilling that task, that is,<br>11  summarizing the results and<br>12  submitting them in manuscript form<br>13  with respect to clinical trials<br>14  sponsored by Merck? | | |
| GOLDBERG, M.D., ALAN , (Pages 49:17 to 50:2)<br>49<br>17  THE WITNESS:  We frequently<br>18  work with the scientific individuals<br>19  on the outside as well.<br>20        So the scientific<br>21  investigators, the principal<br>22  investigators that I mentioned<br>23  before, very frequently would appear<br>24  in the same manuscript with us and<br><br>50<br>1   help write it, help summarize the<br>2   results. | | |
| GOLDBERG, M.D., ALAN , (Page 50:4 to 50:12)<br>50<br>4   Q.  Were there ever any<br>5   instances where the outside, the<br>6   investigative sites drafted the<br>7   summaries without input from Merck<br>8   with respect to Merck-sponsored<br>9   studies during your tenure as Senior<br>10  Research Physician or -- well,<br>11  actually, during your tenure at Merck<br>12  Research Labs? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 50:19 to 51:4)<br><br>19   THE WITNESS:  In my<br>20   experience, the manuscripts that I<br>21   worked on, to the best of my<br>22   recollection, we would generally<br>23   provide first input into a draft and<br>24   then have the clinical investigators<br><br>1   on the outside edit, add to, subtract<br>2   from.<br>3         So it was a collaborative<br>4   effort. |  |  |
| GOLDBERG, M.D., ALAN , (Page 51:6 to 51:9)<br>                       51<br>6   Q.  And when you used -- when<br>7   you say "we" in that last answer, you<br>8   were referring to Merck, Merck<br>9   Research Labs? |  |  |
| GOLDBERG, M.D., ALAN , (Pages 51:12 to 52:5)<br>                       51<br>12   THE WITNESS:  We meaning<br>13   ourselves and the investigators on<br>14   the outside.<br>15   BY MR. MURRAY:<br>16   Q.  Well, I'm just trying to<br>17   understand that.<br>18         You said that we would<br>19   submit a first draft and then the<br>20   investigative sites would have input<br>21   into the edits.<br>22         So that's what I'm trying<br>23   -- that's the stage at which I'm<br>24   trying to understand where we, is<br><br>1   that Merck or is that --<br>2   A.  Yes, we as Merck.<br>3         But more than just the<br>4   edits, really, into the intellectual<br>5   input of the manuscript. |  |  |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN ; (Page 55:4 to 55:14) 55<br>4   Q.   So we have MRL conducting<br>5   research in support of drug<br>6   development, research in support of<br>7   drug approval, and post-approval<br>8   research as well.<br>9        Is there any other<br>10  responsibility, and I'm talking about<br>11  in the general sense, housed within<br>12  MRL, or does that cover the blanket<br>13  of what it is MRL is charged with<br>14  doing within the company? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 55:17 to 57:19) | | |

GOLDBERG, M.D., ALAN , (Pages 55:17 to 57:19)

55
17   THE WITNESS:  It's a very,
18   very complex organization, and I'd be
19   very concerned to directly answer the
20   question and then have you or the
21   jury assume that I've covered the
22   whole gambit of things that the
23   Research Labs do.
24       One of the principal

56
1   activities, other than what we've
2   discussed post-approval, is pharmaco-
3   vigilance, which is continuing to
4   follow, once a drug is marketed, the
5   safety of the product.
6       Another role that I had in
7   the Research Labs, postmarketing
8   safety surveillance and epidemiology.
9   BY MR. MURRAY:
10   Q.  And the term that you used
11   for that was, I'm sorry, "pharmaco-
12   vigilance"?
13   A.  Yes.  Or postmarketing
14   safety and epidemiology.
15   Q.  Would that include the
16   monitoring of Adverse Event Reports
17   and -- actually, let me, would that
18   include, the pharmaco-vigilance task,
19   would that include the monitoring of
20   Adverse Event Reports?
21   A.  Amongst other things,
22   correct.
23   Q.  Would that also include the
24   reporting of Adverse Event Reports to

57
1   the FDA?
2   A.  The department -- the role
3   that I had was not in direct
4   submission to FDA.  That's done by
5   another department.
6       But reports that are
7   created, in all adverse experiences
8   that are of a certain nature in terms
9   of their urgency, are reported.
10   Others get reported as defined by the
11   FDA within time frames in other
12   report summaries.
13   Q.  Okay.  When you said that
14   the actual reporting to the FDA

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| **GOLDBERG, M.D., ALAN , (Page 57:15 to 57:19)**<br>57<br>15  aspect was covered by another<br>16  department, do you know what<br>17  department that was?<br>18     A.  Regulatory has direct<br>19  contact with the agency. | | |
| GOLDBERG, M.D., ALAN , (Pages 61:9 to 62:1)<br>61<br>9   Q.   So your tenure with MRL<br>10  which began in, I think you said<br>11  January of '89, lasted until July of<br>12  2001; is that correct?<br>13     A.   Correct.<br>14     Q.   Where did you go in July of<br>15  2001?<br>16     A.  I came over to the Human<br>17  Health side within the Medical<br>18  Affairs function.<br>19     Q.  I have seen, relative to<br>20  the time frame 1999 to 2004,<br>21  documents referring to an acronym<br>22  within Merck of USHH.<br>23        Is that Human Health?<br>24     A.   That's correct, U.S. Human<br>62<br>1  Health. | | |
| GOLDBERG, M.D., ALAN , (Page 63:3 to 63:19)<br>63<br>3   Q.   What is the Medical Affairs<br>4  function within USHH?<br>5     A.   It's changed over time<br>6  because of reorganization, but<br>7  generally speaking it has several<br>8  departments, which when I came into<br>9  it in 2001 had a group known as<br>10  Clinical Development, which did<br>11  postmarketing clinical trials after<br>12  approval of clinical trials,<br>13  generally.<br>14        An Outcomes Research group,<br>15  a Medical Services group, an Academic<br>16  and Professional Affairs group, a<br>17  Conventions and Exhibits group, and a<br>18  Region Medical Director group, to the<br>19  best of my recollection. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 70:13 to 71:2)<br>70<br>13   Q.   What was your first title<br>14   when you first went to USHH in July<br>15   of 2001?<br>16      A.   Senior Director.  Senior<br>17   Region Medical Director.<br>18      Q.   You listed a number of<br>19   functions, at least when you first<br>20   came on at USHH, were housed within<br>21   the Medical Affairs Department, and<br>22   one of them was Medical Directors<br>23   group.<br>24         Was that your group?<br><br>71<br>1      A.   Region Medical Directors<br>2   group. | | |
| GOLDBERG, M.D., ALAN , (Page 71:5 to 71:19)<br>71<br>5   And what is the function of<br>6   the Region Medical Directors group?<br>7      A.   The principal role of the<br>8   regional medical director is to<br>9   represent the company across<br>10   therapeutic areas from a scientific<br>11   and a clinical perspective before<br>12   managed care, pharmacy directors,<br>13   medical directors, directors within<br>14   PBMs, and state Medicaid to represent<br>15   our products for formulary<br>16   consideration or to purvey important<br>17   scientific and clinical information<br>18   about our products, both safety and<br>19   efficacy | | |
| GOLDBERG, M.D., ALAN , (Page 72:1 to 72:5)<br>72<br>1   Q.   And as Regional Medical<br>2   Director in July of 2001, who was<br>3   your direct report?  In other words,<br>4   who was your direct boss?<br>5      A.   Cary Edwards. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 73:16 to 74:21)<br><br>73<br>16  Q.  We talked about the<br>17  functions that were contained within<br>18  the Medical Affairs Department of<br>19  U.S. Human Health.<br>20        Do you know what other<br>21  functions were contained within U.S.<br>22  Human Health besides Medical Affairs?<br>23     A.   Very broadly, Sales,<br>24  Marketing for the U.S.<br><br>74<br>1     Q.  Okay.  So we have Medical<br>2  Affairs, Sales Marketing.<br>3        Is there another function?<br>4     A.  Sales and Marketing.<br>5     Q.  Sales and Marketing.<br>6        That's one function, Sales<br>7  and Marketing, or are they separate?<br>8     A.  Separate.<br>9     Q.  Separate functions.  Okay.<br>10  So Sales is a function, Marketing is<br>11  a function, Medical Affairs is a<br>12  function.<br>13        Are there any others, as<br>14  you sit here, that you can recall?<br>15     A.   Government Affairs.<br>16     Q.  Okay.<br>17     A.   Managed Care.<br>18        That, to the best of my<br>19  knowledge, those are the major<br>20  functions as they existed at the<br>21  time. | | |
| GOLDBERG, M.D., ALLAN , (Pages 74:22 to 75:6)<br><br>74<br>22  Q.  How long did you hold the<br>23  title of Senior Medical Director<br>24  within Medical Affairs of USHH?<br><br>75<br>1     A.  I was promoted within a<br>2  couple years, maybe, to Executive<br>3  Director.<br>4     Q.  Did your functions change<br>5  with that promotion?<br>6     A.  Not -- no. | Incomplete -Add 75:4-6 | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 75:14 to 76:5)<br>75<br>14 Q. And how long did you hold<br>15 the Executive Director function<br>16 within Regional Medical Director –<br>17 A. I'm technically still at<br>18 the same band.<br>19 They re-- over time, they<br>20 changed the names. So when I came<br>21 into my current role, which was in<br>22 April of '06 as a Regional Director<br>23 of Scientific Affairs, I'm still the<br>24 Executive Director level. But<br><br>76<br>1 they've just retitled us.<br>2 So the Executive Director<br>3 doesn't appear in the title. So I'm<br>4 now RDMA, Regional Director, Medical<br>5 Affairs. | | |
| GOLDBERG, M.D., ALAN , (Pages 77:23 to 78:17)<br>77<br>23 Q. In July of 2001, what was<br>24 your geographic area?<br><br>78<br>1 A. MidAtlantic.<br>2 Q. And what was included in<br>3 MidAtlantic?<br>4 A. To the best of my<br>5 recollection, included in the<br>6 MidAtlantic region would be<br>7 Pennsylvania, Maryland, Kentucky,<br>8 Virginia, West Virginia. I believe<br>9 that's correct.<br>10 Q. Did you at some point in<br>11 time obtain responsibility for a<br>12 geographic region that included the<br>13 State of Louisiana?<br>14 A. No.<br>15 Q. Louisiana was never one of<br>16 your assigned geographic regions?<br>17 A. That's correct. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 79:2 to 80:2)<br>            79<br>2  Q.  I've seen some documents<br>3  where you are contacted with respect<br>4  to submissions in Louisiana.<br>5     If your geographic regions<br>6  were Pennsylvania, Maryland,<br>7  Kentucky, Virginia, and West<br>8  Virginia, do you know why it was you<br>9  would have been contacted with<br>10  respect to Louisiana?<br>11    A.  It might help to look at<br>12  documents.<br>13    Q.  And we can do that.<br>14     I'm just asking generally<br>15  if that was something that occurred<br>16  commonly or you recall your<br>17  involvement with the State of<br>18  Louisiana, if any.<br>19    A.  One of my roles as an RMD,<br>20  since I was also in headquarters, was<br>21  to help facilitate communication such<br>22  that if a dossier was requested by<br>23  the state, to communicate that to the<br>24  appropriate department in Medical<br><br>            80<br>1  Affairs and let them know that a<br>2  dossier had been requested. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 81:1 to 81:18)<br>                  81<br>1   Q.  Okay.  Do you know Fran<br>2  Kaiser?<br>3    A.  I do.<br>4    Q.  Okay.  Was Dr. Kaiser at<br>5  the same level as you, as a senior<br>6  RMD?<br>7    A.  I know at some point we<br>8  were both executive medical<br>9  directors.  Fran might have been<br>10  executive ahead of me, but --<br>11    Q.  Okay.  Focusing on the time<br>12  frame, let's say July 2001, those<br>13  first couple years when you were,<br>14  through let's say sometime in 2003,<br>15  did Dr. Kaiser fulfill a similar role<br>16  to you with respect to a different<br>17  geographic region?<br>18    A.  Correct. | | |
| GOLDBERG, M.D., ALAN , (Pages 83:11 to 84:6)<br>                  83<br>11   Q.  With respect to that<br>12  function of facilitating furnishing<br>13  of dossiers, which apparently<br>14  expanded outside of your geographic<br>15  region, were you the only RMD that<br>16  fulfilled that particular function?<br>17    A.  As I stated, because of the<br>18  fact I was in headquarters, that was<br>19  something that was specifically<br>20  assigned to me.<br>21    Q.  Can you elaborate a little<br>22  bit more on that role of facilitating<br>23  furnishing dossiers?  What exactly is<br>24  it that you mean by "facilitating"?<br><br>                  84<br>1    A.  Merely just being a<br>2  conduit.  I was assigned at that<br>3  point responsibility, a request comes<br>4  from the outside.  It was really set<br>5  up to be for a specific type of<br>6  dossier in the AMCP format.  And -- | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 84:9 to 84:20)<br><br>84<br>9  A.   And so if there was a<br>10  request for an AMCP format dossier<br>11  for a specific product, that request<br>12  would come to me from the field<br>13  personnel.<br>14         I would then, in turn, pass<br>15  it on to the Medical Services<br>16  function that we mentioned earlier<br>17  within Medical Affairs.  And those<br>18  individuals would be responsible for<br>19  putting the dossier together and<br>20  making the submission -- | | |
| GOLDBERG, M.D., ALAN , (Pages 84:22 to 85:9)<br><br>84<br>22  A.   -- back to the state or the<br>23  third party responsible for handling<br>24  it.<br><br>85<br>1      Q.  So you did not have<br>2  responsibility for actually<br>3  determining what went into an AMCP<br>4  dossier; is that correct?<br>5      A.  Yes, that's correct.<br>6      Q.  Okay.  That function would<br>7  have been fulfilled by someone in<br>8  Medical Services?<br>9      A.  Correct. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 93:14 to 95:11)<br>93<br>14   We talked about that, with<br>15   respect to states outside of your<br>16   region, you may have had some<br>17   involvement in facilitating<br>18   preparation of AMCP dossiers.<br>19         Are you aware of any other<br>20   role that you may have had in<br>21   connection with Merck's contacts with<br>22   Louisiana and Vioxx?<br>23      A.   Let me just correct<br>24   something you said.<br>94<br>1         I facilitated getting the<br>2   documents as originating from a<br>3   request back out, but did not<br>4   participate in creation of any of the<br>5   document.<br>6      Q.   And I understand that.<br>7   Thank you for the clarification.<br>8         With respect -- and so my<br>9   question is, other than that function<br>10   that you've just clarified, is there<br>11   any other involvement that you're<br>12   aware of that you would have had with<br>13   the State of Louisiana as relates to<br>14   Vioxx?<br>15      A.   To the best of my<br>16   knowledge, the best of my<br>17   recollection, no.<br>18      Q.   And I think you testified<br>19   earlier that the person who did<br>20   prepare dossiers, or persons who<br>21   would have prepared dossiers, would<br>22   have been the Medical Services<br>23   Department?<br>24      A.   Correct.<br>95<br>1      Q.   And how many persons in the<br>2   Medical Services Department did you<br>3   work with in that capacity preparing<br>4   AMCP dossier -- or, I'm sorry, the<br>5   capacity of asking them to prepare<br>6   AMCP dossiers?<br>7      A.   I'd only be guessing, but<br>8   my contacts with Medical Services<br>9   across therapeutic areas might have<br>10   involved approximately half a dozen,<br>11   maybe more or less individuals. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 99:8 to 99:8)<br>99<br>8   MRK-MEH 0003530 through 3535. | | |
| GOLDBERG, M.D., ALAN , (Pages 99:18 to 100:13)<br>99<br>18   Q.  Dr. Goldberg, have you had<br>19   an opportunity to review the<br>20   document?<br>21     A.  I did.<br>22     Q.  Do you recognize the<br>23   document?<br>24     A.  It does look vaguely<br><br>100<br>1   familiar, yes.  Vaguely familiar.<br>2     Q.  I see the document is<br>3   titled Regional Medical Director<br>4   (RMD) Activities.<br>5       Do you recall in your<br>6   tenure as regional medical director<br>7   at USHH receiving documents such as<br>8   this that outlined the activities of<br>9   regional medical director?<br>10     A.  As in the course of any<br>11   position, I've received multiple<br>12   documents and, as I stated, this<br>13   looks vaguely familiar to me. | | |
| GOLDBERG, M.D., ALAN , (Pages 104:18 to 105:3)<br>104<br>18   Did you ever meet with<br>19   Louisiana State Medicaid P&T?<br>20     A.  No.<br>21     Q.  Okay.  I'm sorry, P&T<br>22   committee members.<br>23     A.  No.<br>24     Q.  Did you ever perform this<br><br>105<br>1   function of P&T presentations to<br>2   Louisiana State Medicaid?<br>3     A.  No. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 106:6 to 106:13)<br>106<br>6   Q.  Medical Services, where is<br>7   Medical Services housed, that is,<br>8   which division is Medical Services<br>9   housed within Merck as of the time<br>10   period July 2001 through August 2004?<br>11      A.  So as we stated, it was in<br>12   Medical Affairs, which is within<br>13   Human Health. | | |
| GOLDBERG, M.D., ALAN , (Pages 106:19 to 107:6)<br>106<br>19   Can you generally tell me<br>20   what the Medical Services function<br>21   is?<br>22      A.  Again, without risking<br>23   being all-inclusive, some of the<br>24   activities are they prepare dossiers;<br><br>107<br>1   they prepare PIRs; they prepare<br>2   training materials for the field<br>3   personnel; background medical --<br>4   medical backgrounders to train the<br>5   field personnel on disease and<br>6   product. | | |
| GOLDBERG, M.D., ALAN , (Page 112:2 to 112:10)<br>112<br>2   Q.  Okay.  And is this document<br>3   correct in showing that RMD provides<br>4   support to the Franchise Business<br>5   Group and their function?<br>6      A.  At various points in time,<br>7   yes, in terms of some of these<br>8   activities.  In a scientific support,<br>9   clinical support context, not in a<br>10   commercial context. | | |
| GOLDBERG, M.D., ALAN , (Page 112:13 to 112:14)<br>112<br>13   (Exhibit Goldberg-LA-1 was<br>14   marked for identification.) | | |
| GOLDBERG, M.D., ALAN , (Page 112:21 to 112:22)<br>112<br>21   Q.  This is a document we'll<br>22   mark as Goldberg-LA-2.  For reference | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 113:13 to 114:5)<br>113<br>13   Q.   Okay.  Does it appear to be<br>14   an e-mail from you to various<br>15   recipients at Merck?  I'll refer you<br>16   to the From line.<br>17       A.   I have to see the From<br>18   line.  I see the CC.  There, yes,<br>19   from me.<br>20       Q.   Having reviewed the subject<br>21   matter of the document, does that<br>22   appear to be the sort of document<br>23   that you would have prepared in your<br>24   function as regional medical<br>114<br>1   director?<br>2       A.   In my function as we<br>3   described it in terms of this being a<br>4   conduit for requests for the AMCP<br>5   formatted dossiers. | | |
| GOLDBERG, M.D., ALAN , (Page 115:3 to 115:10)<br>115<br>3   Q.   Let me ask you to look<br>4   through these recipients and see if<br>5   you can identify, it's a pretty<br>6   voluminous list of recipients, see if<br>7   you can identify the person or<br>8   persons within Medical Services to<br>9   whom you would have forwarded this<br>10   dossier request. | | |
| GOLDBERG, M.D., ALAN , (Pages 115:20 to 116:5)<br>115<br>20   A.   So a number of individuals,<br>21   most notably in the To line, were in<br>22   Medical Services at that time.<br>23   There's probably only one individual<br>24   that I can identify definitively who<br>116<br>1   would have had responsibility for<br>2   Vioxx within Medical Services.<br>3       Q.   And who is that individual?<br>4       A.   That would be Dr. Jeffrey<br>5   M. Melin. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN (Pages 116:6 to 117:9)<br>116<br>6  Q.  M-e-l-i-n?<br>7     A.  Correct.<br>8     Q.  Okay.  Do you recall<br>9  Dr. Melin's title?<br>10    A.  Either Director, Senior<br>11  Director.<br>12    Q.  Is he --<br>13    A.  Well, could -- let me --<br>14  could have been Associate Director.<br>15  I honestly don't recall what his<br>16  title was, but a physician in Medical<br>17  Services.<br>18    Q.  And it was your<br>19  understanding he had responsibility<br>20  for Vioxx?<br>21    A.  Yes.<br>22    Q.  Who are the other people on<br>23  this document who are within Medical<br>24  Services, understanding that they may<br>117<br>1  or may not have had responsibility<br>2  for Vioxx?<br>3     A.  Other individuals on this<br>4  e-mail who were, to the best of my<br>5  recollection, in Medical Services at<br>6  this time would include Dr. Mark<br>7  Greco, Dr. Margaret Loveland,<br>8  Dr. Charles Alexander, Dr. Bram<br>9  Greenberg. | | |
| GOLDBERG, MD, ALLAN (Page 117:21 to 118:6)<br>117<br>21  Q.  Let me ask you if you<br>22  recognize any of the other recipients<br>23  and if you can tell me what their<br>24  capacities are, if you know.<br>118<br>1       Elizabeth Powell?<br>2    A.  Attorney.<br>3    Q.  Do you know why attorneys<br>4  were copied on letters involving<br>5  dossier requests?<br>6    A.  I don't recall. | 401; 602 | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 118:13 to 119:4)<br><br>118<br>13   Q.   Okay.  Muna Bhanji?<br>14      A.   Senior executive on the<br>15   commercial side.  I don't recall what<br>16   Muna's role was at the time.<br>17      Q.   What does that mean on the<br>18   commercial side?<br>19      A.   Marketing, Sales side.<br>20      Q.   Mark Degatano?<br>21      A.   The same.<br>22      Q.   A senior executive on the<br>23   commercial side?<br>24      A.   Yes.<br><br>119<br>1      Q.   Do you know why senior<br>2   executives on the commercial side<br>3   would have been copied on this<br>4   document? | 401; 602 | |
| GOLDBERG, MD, ALLAN (Page 119:7 to 119:12)<br>119<br>7   THE WITNESS:  I don't<br>8   recall why I did it.  They certainly<br>9   might have interest since some of<br>10   them were also in the Managed Care<br>11   area for just knowing of the<br>12   existence of the request. | 401; 602 | |
| GOLDBERG, M.D., ALAN , (Pages 120:22 to 121:5)<br>120<br>22   Q.   And at the beginning of<br>23   this document you write, As per my<br>24   MVX of yesterday to many of you, we<br><br>121<br>1   have now received a letter requesting<br>2   information from the State of<br>3   Louisiana Medicaid.<br>4         What is an MVX?<br>5      A.   Voice mail. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 121:10 to 122:16)<br>121<br>10   You write, At this time I<br>11   am not planning to schedule any<br>12   meetings directly related to the work<br>13   output as we have just recently gone<br>14   through this exercise for Oregon<br>15   Medicaid.<br>16        In connection with your<br>17   role in facilitating the preparation<br>18   of dossiers in response to requests,<br>19   did you schedule meetings?<br>20   A.   My best recollection is<br>21   that that was not typical, but we<br>22   were just getting our hands around<br>23   the AMCP format.  It was something<br>24   that was relatively newly introduced.<br><br>122<br>1        And there probably would<br>2   have -- the purpose of such a meeting<br>3   probably would have been just to make<br>4   sure that the various constituents<br>5   that would participate in the<br>6   execution and genesis of it, just to<br>7   make sure everyone got on the same<br>8   page because it was a very unfamiliar<br>9   format to different parts of the<br>10   organization.<br>11   Q.   Would you have attended the<br>12   meetings that were scheduled with<br>13   respect to preparing AMCP dossiers?<br>14   A.   I might have.  I don't<br>15   recall for certain that I did or did<br>16   not. | | |
| GOLDBERG, M.D., ALAN , (Page 126:7 to 126:8)<br>126<br>7   document we'll mark as Goldberg-LA-<br>8   3. For identification purposes it's | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 126:12 to 127:16)<br><br>126<br>12   Q.  Now, Doctor, have you had a<br>13   chance to review the document now?<br>14     A.   Yes.<br>15     Q.   Okay.  And do you recognize<br>16   the document?<br>17     A.   I don't recall it.<br>18   Obviously we just saw my original<br>19   e-mail that triggered this e-mail.<br>20     Q.   And that was going to be my<br>21   next question.<br>22        Does this appear to be a<br>23   further e-mail in the chain from or<br>24   in response to the e-mail that we<br><br>127<br>1   just marked as Goldberg-LA-2?<br>2     A.   So I sent my e-mail Friday,<br>3   February 18th, 2002, at 9:36 a.m.<br>4   This e-mail comes on the same day at<br>5   1700 hours.  So it appears to be<br>6   responsive, and it's from Holly<br>7   Jacques addressing me, so it appears<br>8   to be responsive to my e-mail.<br>9     Q.   Okay.  And in the letter,<br>10   Ms. Jacques writes, Between now and<br>11   February 11th, Merck will send a<br>12   letter to Dr. Gina Biglane with the<br>13   University of Louisiana College of<br>14   Pharmacy informing her that we are<br>15   submitting dossiers for the<br>16   categories up for review. | | |
| GOLDBERG, M.D., ALAN , (Page 132:22 to 132:24)<br><br>132<br>22   Q.  Doctor, I show you a<br>23   document we have -- we will mark as<br>24   Goldberg-LA-4. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 133:12 to 134:4)<br><br>133<br>12  Q.  And do you recognize the<br>13  document?<br>14     A.  I've not seen this before.<br>15  I mean, I realize that my name is<br>16  attached to it, but I don't recall it<br>17  from before.<br>18     Q.  Does it appear to be a<br>19  string of e-mails in which you were<br>20  either copied or were writing --<br>21     A.  That's correct.<br>22     Q.  -- in your -- and that<br>23  would -- your receipt and/or drafting<br>24  of these would have been in your<br><br>134<br>1  capacity as Regional Medical Director<br>2  of Merck?<br>3     A.  In my capacity as the<br>4  conduit for AMCP requests. | | |
| GOLDBERG, M.D., ALAN , (Pages 136:23 to 137:14)<br><br>136<br>23     Q.  Yes, sir.  There's an<br>24  e-mail from you in this chain of<br><br>137<br>1  e-mails to a number of individuals.<br>2        It looks like you're<br>3  reporting the state of information as<br>4  requested.  I'm sorry, Provider<br>5  Synergies has requested rebate<br>6  information on behalf of the State of<br>7  Louisiana for the following products,<br>8  one of which was Vioxx.<br>9     A.  Uh-huh.<br>10     Q.  Did you work with -- did<br>11  you work -- did you have<br>12  responsibility for submitting<br>13  clinical information to Provider<br>14  Synergies? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 138:4 to 138:18)<br>138<br>4  A.  I did not have direct<br>5  responsibility.  Again, I would be --<br>6  be behaving as a conduit only.  So I<br>7  would catch the request and forward<br>8  the request.<br>9    Q.   Now, that would be with<br>10  respect to the dossiers submitted to<br>11  state Medicaid or to, in this case,<br>12  to Provider Synergies on behalf of<br>13  Louisiana State Medicaid?<br>14    A.   Correct.<br>15    Q.   Did you have any<br>16  responsibility for or make<br>17  presentations directly to Provider<br>18  Synergies? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 139:2 to 140:9)<br>139<br>2  Q.  -- with respect to Vioxx.<br>3     A.  Correct.  I do recall at<br>4  some point during my time as a region<br>5  medical director having been at<br>6  Provider Synergies.  I don't recall<br>7  what product the discussion was on,<br>8  however.<br>9        But I have made -- I do<br>10  recall having made a visit to<br>11  Provider Synergies.<br>12    Q.   Would your visit to<br>13  Provider Synergies have been limited<br>14  in scope to the states for which you<br>15  were responsible?<br>16    A.   Not necessarily.<br>17    Q.   Is that because Provider<br>18  Synergies has responsibility for many<br>19  states, some of which may be or may<br>20  be -- may or may not be within your<br>21  geographical area?<br>22    A.   So my recollection is that<br>23  Provider Synergies not only worked<br>24  for state Medicaid, but they were<br><br>140<br>1  also PBM for other managed care<br>2  organizations and/or employers.<br>3        So I don't recall for what<br>4  purpose the visit was, as it could<br>5  have related to a commercial plan, as<br>6  it could have related to a state<br>7  Medicaid, and do not recall the<br>8  substance of the discussion in terms<br>9  of product. | | |
| GOLDBERG, M.D., ALAN , (Page 140:10 to 140:17)<br>140<br>10  Q.  Okay.  Though I gather from<br>11  that answer, then, that you don't<br>12  recall whether you had any<br>13  conversations or -- I'm sorry,<br>14  whether you had any meetings with<br>15  Provider Synergies with respect to<br>16  Vioxx.<br>17    A.  Correct. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, MD, ALLAN (Page 141:12 to 141:21) 141<br>12   And my question was, when<br>13   you were giving presentations to<br>14   Provider Synergies, or had meetings<br>15   with Provider Synergies about Merck<br>16   products, did you have an<br>17   appreciation at that time that that<br>18   presentation might relate to -- say<br>19   relate to a number of their clients,<br>20   not just to a particular state or a<br>21   particular client? | 602 | |
| GOLDBERG, MD, ALLAN (Page 141:24 to 142:12) 141<br>24   THE WITNESS: So I, again,<br><br>142<br>1   I don't specifically recall what<br>2   product, what therapeutic area was<br>3   for.<br>4        Specific to your question,<br>5   I don't believe that any of our<br>6   meetings, to the best of my<br>7   recollection, had a specific name or<br>8   customer of the meeting attached to<br>9   it.<br>10        So it would be supposition<br>11   on my part as to how they were going<br>12   to ultimately use the information. | 602 | |
| GOLDBERG, M.D., ALAN , (Page 142:14 to 142:18) 142<br>14   Q.  You say that you recall one<br>15   meeting.  Do you recall any other<br>16   meetings with Provider Synergies?<br>17   A.  To the best of my<br>18   recollection, one meeting. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 143:12 to 143:22)<br>143<br>12  Q.  We saw a document that<br>13  indicated that the AMCP dossier<br>14  prepared for Louisiana followed form<br>15  to the Oregon submission.<br>16        Do you have a recollection<br>17  as to whether there were different<br>18  AMCP dossiers presented to each state<br>19  or whether they all, because by<br>20  virtue of their being AMCP dossiers<br>21  for a given product, they all would<br>22  have been pretty much the same form? | | |
| GOLDBERG, M.D., ALAN , (Pages 144:12 to 145:6)<br>144<br>12  A.  So I believe what I'm<br>13  making reference to is the fact that,<br>14  given that that's what was submitted<br>15  to the State of Oregon in the AMCP<br>16  format, that we should be doing the<br>17  same thing.<br>18        So it's a format that has a<br>19  certain structure about it and<br>20  certain elements of content that are<br>21  expected within that format.  So --<br>22     Q.  I guess my question is,<br>23  given the fact that it was a document<br>24  that had certain structure and<br><br>145<br>1  format, do you know whether there was<br>2  any substantive difference between an<br>3  AMCP dossier submitted for Oregon<br>4  versus one submitted for Louisiana<br>5  versus others that were submitted for<br>6  other states? | | |
| GOLDBERG, M.D., ALAN , (Page 145:9 to 145:14)<br>145<br>9  THE WITNESS:  I'm not the<br>10  subject matter expert for actually<br>11  constructing the document, so I<br>12  wouldn't know, beyond my having<br>13  requested a submission, that there<br>14  would be any content changes to it. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Page 145:17 to 145:19)<br>145<br>17   A.   I see no reference from the<br>18   State that they're requesting<br>19   anything specific. | | |
| GOLDBERG, M.D., ALAN , (Page 168:4 to 168:5)<br>168<br>4   MR. MURRAY:  And we will<br>5   mark this as Goldberg-LA-8. | | |
| GOLDBERG, M.D., ALAN , (Pages 168:13 to 169:18)<br>168<br>13   Q.   Does it appear that you<br>14   were copied on the document?<br>15   A.   Yes.<br>16   Q.   It appears that Ms. Jacques<br>17   was writing, the recipients<br>18   identified in the document are Allan<br>19   Goldberg, Jeffrey Melin, Robert<br>20   Calder and Ruth Stolz.<br>21   Jeffrey Melin, that's the<br>22   individual at -- within Medical<br>23   Services that you recall having<br>24   responsibility for Vioxx?<br><br>169<br>1   A.   Correct.<br>2   Q.   How about Ruth Stolz?<br>3   A.   Ruth Stolz, another<br>4   physician in Medical Services.<br>5   Q.   Do you recall whether<br>6   Dr. Stolz had responsibility for<br>7   Vioxx?<br>8   A.   No.  I believe she would<br>9   have had responsibility for Cozaar<br>10   and Hyzaar.<br>11   Q.   Okay.  This e-mail is dated<br>12   January 8th, 2002; is that correct?<br>13   A.   Yes.<br>14   Q.   Okay.  And the re line is<br>15   Emergency Request For Information.<br>16   A.   It's actually "fo<br>17   information."  There's no "r."<br>18   Q.   Yes, "fo information." | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 169:24 to 170:8)<br><br>24  Ms. Jacques writes to you   169<br><br>1  and other recipients, This is a PIR  170<br>2  request.  The request was<br>3  communicated to me verbally.<br>4  Thanks.  Holly.<br>5     Let's see.  Do you recall<br>6  receiving a PIR request with respect<br>7  to Louisiana Medicaid?<br>8   A.  I do not. | | |
| GOLDBERG, M.D., ALAN , (Page 173:15 to 173:24)<br><br>15  Q.  And then the PIR to which  173<br>16  Holly Jacques refers is at the bottom<br>17  page where there is an e-mail from<br>18  Holly Jacques to yourself?<br>19   A.  Yes.<br>20   Q.  Okay.  And Holly Jacques<br>21  writes, I spoke to Dr. Vincent<br>22  Culotta, the Chair of the Louisiana<br>23  P&T Committee, and he asked for the<br>24  following information. | | |
| GOLDBERG, M.D., ALAN , (Page 174:1 to 174:6)<br><br>        174<br>1  Let me ask you, have you<br>2  ever had any contact with Dr. Vincent<br>3  Culotta?<br>4   A.  No.<br>5   Q.  Have any idea who he is?<br>6   A.  No. | | |
| GOLDBERG, M.D., ALAN , (Page 174:8 to 174:12)<br>        174<br>8  for the following information:  one,<br>9  heart protection study; two, the<br>10  comparison of GI outcomes between<br>11  Celebrex, Bextra, and Vioxx; and<br>12  three, the Renaal study. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 174:22 to 175:18)<br><br>174<br>22  One, do you know what she<br>23  means by the heart protection study?<br>24      A.   That was the study that was<br><br>175<br>1   with -- done with Zocor,<br>2   Simvastatin.  It's a large multi-year<br>3   study looking at cardiovascular<br>4   outcomes.  So that would be for<br>5   lipids, lipid-lowering agents.<br>6      Q.  Do you know whether that<br>7   study had any relevance to Vioxx?<br>8      A.   None.<br>9      Q.   Okay.  And then the<br>10  comparison of GI outcomes between<br>11  Celebrex, Bextra and Vioxx had<br>12  something to do with Vioxx,<br>13  obviously.<br>14          Do you recall what study,<br>15  if any, that request is referring to?<br>16      A.   It's -- well, there was no<br>17  direct head-to-head comparison.  So<br>18  it likely, again, I -- | | |
| GOLDBERG, M.D., ALAN , (Pages 175:21 to 176:1)<br><br>175<br>21     THE WITNESS:  It likely<br>22  represents material abstracted from<br>23  the literature and what might exist<br>24  in product labels and a summary made<br><br>176<br>1   back to the requester. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| GOLDBERG, M.D., ALAN , (Pages 176:3 to 177:2)<br>**176**<br>3   Q.   Let me ask you whether you,<br>4   as RMD, would have had any<br>5   responsibility for doing that<br>6   extraction of information in response<br>7   to this request, or was that a<br>8   function that you would -- I'm sorry,<br>9   that Medical Services would<br>10  undertake?<br>11      A.   That's Medical Services,<br>12  and that's why my follow-up e-mail<br>13  goes to Jeff, Bob and Ruth.  Jeff<br>14  specifically being the Vioxx person.<br>15      Q.   Okay.  So what you're doing<br>16  is simply --<br>17      A.   Funneling.  Funneling.<br>18      Q.   Funneling.  Fair enough.<br>19      A.   Channeling.<br>20      Q.   And then finally the Renaal<br>21  study?<br>22      A.   That was the study for<br>23  Cozaar/Hyzaar and renal -- and<br>24  diabetic nephropathy.<br><br>**177**<br>1   Q.   Nothing to do with Vioxx?<br>2   A.   Correct. | | |
| GOLDBERG, M.D., ALAN , (Page 190:11 to 190:23)<br>**190**<br>11  Q.   Okay.  Would I be correct<br>12  in saying that any request for an<br>13  AMCP dossier would be funneled to<br>14  Medical Services in Upper Gwynedd?<br>15      A.   Yes.  Yes.  And at some<br>16  point Medical Services was in West<br>17  Point, so -- but within the same<br>18  geography.<br>19           They're all electronic<br>20  requests, so it matters not where the<br>21  individual resides, but, yes.<br>22      Q.   So it would be Merck<br>23  headquarters, if you will.<br>24      A.   Correct.  Medical Services. | | |
| | | |
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |