**OGLE, MARY, DEPOSITION OF 12/16/09**

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| Defendant's Counter Designations are highlighted.<br>Plaintiffs Affirmative Designations are not. | | |
| OGLE, MARY, (Page 9:7 to 9:18)   9<br><br>7   Q.  Ms. Ogle, what did you do<br>8  to prepare for your deposition?<br>9    A.  I met with these gentlemen<br>10  two times.<br>11    Q.  By "these gentlemen,"<br>12  you're referring to the lawyers that<br>13  are at the table here?<br>14    A.  Yes.<br>15    Q.  Were all three lawyers<br>16  present at that meeting, Mr. Howard<br>17  and --<br>18    A.  Yes, they were, and then | 401 | |
| OGLE, MARY, (Page 9:20 to 9:20)   9<br><br>20  MR. ISMAIL:  Mr. Ismail. | 401 | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 9:22 to 10:18)<br><br>**9**<br>22  Q.  Mr. Ismail and Mr. Boxer?<br>23    A.  Correct.<br>24    Q.  And I understand Mr. Boxer<br><br>**10**<br>1   is an attorney for you; he's<br>2   representing you.  Do you understand<br>3   that?<br>4     A.  Yes.<br>5     Q.  Do you know who's paying<br>6   for Mr. Boxer's services?<br>7     A.  I do.<br>8     Q.  And who's that?<br>9     A.  Merck.<br>10    Q.  How many meetings did you<br>11  have?<br>12    A.  Two.<br>13    Q.  And do you recall<br>14  approximately when those meetings<br>15  took place?<br>16    A.  One was yesterday and one<br>17  was before Halloween.  I forget the<br>18  actual date in October. | 401 | |
| OGLE, MARY, (Page 12:6 to 12:10)<br>**12**<br>6   Q.  And did I ask you how long<br>7   that meeting took place?<br>8     A.  You did.  It was yesterday<br>9   9:30 to 3:00 and the first time it<br>10   was about 9:30 to 4:00 actually. | 401 | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 26:16 to 27:5)<br><br>                                                    26<br>16    Q.   What is your educational<br>17  background?<br>18     A.   I have a Bachelor of Arts<br>19  in education and a masters in<br>20  business.<br>21     Q.   Where did you receive your<br>22  Bachelor of Arts?<br>23     A.   Michigan State University.<br>24     Q.   What year?<br><br>                                                    27<br>1     A.   1988.<br>2     Q.   And how about your masters<br>3  in business?<br>4     A.   At Villanova University,<br>5  May 2009. | | |
| OGLE, MARY, (Page 27:7 to 27:10)<br><br>                                                    27<br>7  see if I understand correctly.  At<br>8  the time you were at Merck you did<br>9  not have an MBA?<br>10     A.   Correct. | | |
| OGLE, MARY, (Page 27:14 to 27:17)<br><br>                                                    27<br>14     Q.   Did you have any other<br>15  postgraduate training when you were<br>16  at Merck?<br>17     A.   No. | | |
| OGLE, MARY, (Page 29:5 to 29:11)<br><br>                                                    29<br>5  with Merck.  Do you recall when it<br>6  was that you started with Merck?<br>7     A.   September 24, 1989.<br>8     Q.   And what was your first<br>9  position with Merck?<br>10     A.   Professional sales<br>11  representative. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 29:17 to 30:5)<br><br>                            29<br>17    Q.  Would a professional sales<br>18  representative, was that the same as<br>19  what I've seen referred to in<br>20  documents as an OBR?<br>21    A.  Yes.<br>22    Q.  That's an office based<br>23  representative; is that correct?<br>24    A.  That is correct.<br><br>                            30<br>1    Q.  That's a field sales<br>2  position?<br>3    A.  Correct.<br>4    Q.  You called on physicians?<br>5    A.  Yes. | | |
| OGLE, MARY, (Pages 30:10 to 31:3)<br><br>                            30<br>10    Q.  Were you in U.S. health or<br>11  were you managed care or any<br>12  particular area?<br>13    A.  U.S. Health.  USHH.<br>14    Q.  And what was your next<br>15  position after professional sales<br>16  representative?<br>17    A.  Then I was a health<br>18  education liaison based in Columbus,<br>19  Ohio.<br>20    Q.  All right.  What is a<br>21  health education liaison?<br>22    A.  So I coordinated with field<br>23  sales in helping implement the<br>24  educational programs.<br><br>                            31<br>1    Q.  Is that educational<br>2  programs for physicians?<br>3    A.  Correct. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 31:15 to 31:23)<br><br>                31<br>15   Q.  So these were Merck<br>16  educational programs about Merck<br>17  products?<br>18   A.  Exactly.<br>19   Q.  How long did you hold that<br>20  position?<br>21   A.  I don't recall the exact<br>22  dates, but it was approximately a<br>23  year and a half. | | |
| OGLE, MARY, (Pages 31:24 to 32:14)<br><br>24  Q.  About what time frame?   31<br><br>                 32<br>1  Again, if you can say early 90s<br>2  or --<br>3   A.  Oh, okay.<br>4   Q.  -- I'm just trying to get a<br>5  very rough idea.<br>6   A.  Okay.<br>7   Q.  -- as to whether or not<br>8  that would have pertained to any time<br>9  during this lawsuit that Vioxx was on<br>10  the market.<br>11   A.  Oh, no, not at all.  So<br>12  that was a year and a half.  So let's<br>13  see.  It was about 1991 to '92, in<br>14  that frame.  Well before, absolutely. | | |
| OGLE, MARY, (Page 36:1 to 36:10)<br><br>                36<br>1  business works.  What's the<br>2  difference between marketing and<br>3  field sales?  Seems to me that --<br>4  aren't they all doing marketing or<br>5  can you explain what the distinction<br>6  is?<br>7   A.  Marketing will set the<br>8  strategy.  Field sales is tactical<br>9  and executes on the strategy set<br>10  forth by marketing. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 36:12 to 36:23)<br><br>                                   36<br>12      Is marketing all located at<br>13  headquarters at the facility in Upper<br>14  Gwynedd or Lower Gwynedd?<br>15    A.  At that time, no.  It was<br>16  all off of Church Road in West<br>17  Point.  Different offices.<br>18    Q.  But at headquarters?<br>19    A.  Yes.<br>20    Q.  And field sales I take it<br>21  are dispersed throughout the United<br>22  States?<br>23    A.  Correct. | | |
| OGLE, MARY, (Page 37:3 to 37:8)<br><br>                                   37<br>3      When we see, for instance,<br>4  promotional materials that field<br>5  sales representatives use in making<br>6  their sales calls, are those<br>7  generated by marketing?<br>8    A.  Yes. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY. (Pages 37:9 to 39:2)<br>9  Q.  So one of your<br>10  responsibilities was to communicate<br>11  promotional materials or how to use<br>12  promotional materials from marketing<br>13  to the field sales?<br>14     A.  Not in that capacity.  My<br>15  role within that job was more around<br>16  meeting planning.  I focused more on<br>17  the meeting planning.  So I did not<br>18  do the role you described.<br>19     Q.  You were more of a<br>20  coordinator getting the right people<br>21  in the right places together at the<br>22  right time?<br>23     A.  Correct.<br>24     Q.  As opposed to being someone<br>                                          38<br>1  who would actually communicate<br>2  messages from the marketing entity to<br>3  the field sales entity?<br>4     A.  Correct.<br>5     Q.  Maybe sort of like a<br>6  go-between?<br>7     A.  Yeah, liaison.<br>8     Q.  Liaison, go-between.  I<br>9  think they mean the same thing.  I<br>10  understand.  Thank you.<br>11       And again, roughly what<br>12  time frame did you hold that field<br>13  communications coordinator position?<br>14     A.  I think between -- within<br>15  the time frame of 1992 to '93<br>16  roughly.  No.  No.  Had to have been<br>17  earlier.  Probably 19 -- I would have<br>18  to get my resume out.<br>19     Q.  I might be able to short-<br>20  circuit things a little or short-cut<br>21  things here.<br>22       In any event, well before<br>23  Vioxx --<br>24     A.  Yes.<br>                                          39<br>1  Q.  -- was on the market?<br>2     A.  Yes.  Correct. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 46:8 to 46:22)<br><br>46<br>8    Q.  What was your next position<br>9  after health liaison?<br>10    A.  It was district sales<br>11  manager in Columbus, Ohio.<br>12    Q.  Briefly can you tell me<br>13  what a district sales manager does.<br>14    A.  So I was responsible for<br>15  the coaching and development of sales<br>16  professionals within the Columbus<br>17  district.<br>18      We had at the time office<br>19  based sales representatives, and I<br>20  believe a couple hospital sales<br>21  representatives.  I think I had 17<br>22  people. | | |
| OGLE, MARY, (Pages 47:13 to 48:5)<br><br>47<br>13    Q.  But in any event, you think<br>14  you had responsibility for training<br>15  both office based personnel and<br>16  hospital based personnel?<br>17    A.  Correct.<br>18    Q.  What kind of training were<br>19  you responsible for giving them?  And<br>20  to clarify a little bit, were you<br>21  training them on specific products or<br>22  was it more just training them sort<br>23  of how to go about making a sales<br>24  call?<br><br>48<br>1    A.  So we coached and developed<br>2  them around sales calls, and there's<br>3  a separate training department that<br>4  handled the official training of the<br>5  representatives. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 48:8 to 50:4)<br>8    Q.  So they would get training<br>9   and then as they were in the field<br>10   you would coach them and hone those<br>11   skills?<br>12    A.  Correct.<br>13    Q.  What kind of things would<br>14   you do to help hone those skills as a<br>15   coach?<br>16    A.  So we worked with them in<br>17   the field and observed their calls<br>18   and then we would provide feedback<br>19   based on what we saw.<br>20    Q.  Did you do role playing<br>21   exercises?<br>22    A.  Yes.<br>23    Q.  By role playing exercises,<br>24   one person would be the doctor and<br>                  49<br>1   the other person would be the<br>2   salesperson making a call on that<br>3   doctor; correct?<br>4    A.  Yes.<br>5    Q.  Was that practice of role<br>6   playing exercises and in the coaching<br>7   of office based representatives, was<br>8   that still in place at Merck when you<br>9   were -- well, let me turn the time<br>10   frame to 1999 to 2004 when Vioxx was<br>11   on the market.<br>12    A.  Yes.<br>13    Q.  Were district sales<br>14   managers -- let me back up.<br>15        Does the title district<br>16   sales always refer to someone who<br>17   does coaching, or are they different<br>18   sales managers that do different<br>19   kinds of jobs?<br>20    A.  At that time?<br>21    Q.  Yes.<br>22    A.  The scope and<br>23   responsibility of a district sales<br>24   manager in my estimation and | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 50:1 to 50:4)<br><div align="right">50</div>1  recollection was the same across the<br>2  organization.<br>3     Q.  Would that have also been<br>4  true in 1999 to 2004? | | |
| OGLE, MARY, (Page 50:11 to 50:11)<br><div align="right">50</div>11        THE WITNESS:  I believe so. | | |
| OGLE, MARY, (Pages 50:19 to 51:3)<br><div align="right">50</div>19   Q.  In about what time and,<br>20  again, I'm not trying to nail you<br>21  down or hold you down to dates, just<br>22  trying to get a general sense of<br>23  time, about what time did you leave<br>24  that position?<br><br><div align="right">51</div>1      A.  I was in that role for two<br>2  years.  Probably left that position<br>3  in 1995. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 51:10 to 52:10)<br><br>        51<br>10 Q.  In about 1995, when you<br>11  left the district sales manager<br>12  position, where did you go?<br>13 A.  I moved to Atlanta, Georgia<br>14  as a cardiovascular specialty<br>15  district manager.<br>16 Q.  How did that district<br>17  manager role vary from the district<br>18  sales manager role that you held<br>19  previously?<br>20 A.  So we focused only on<br>21  cardiovascular disease and we had a<br>22  larger geography.  So I as a district<br>23  specialty manager supported an entire<br>24  region.<br><br>        52<br>1 Q.  Did you have the same<br>2  coaching responsibility?<br>3 A.  Yes.<br>4 Q.  And am I correct in<br>5  understanding that as a CV specialty<br>6  district manager, your coaching focus<br>7  would be on how to make sales calls<br>8  on doctors treating cardiovascular<br>9  disease?<br>10 A.  Correct. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 52:16 to 53:17)<br><br>                               52<br>16    Q.  About how long did you hold<br>17  that position?<br>18    A.  Approximately three years.<br>19    Q.  So now we're getting into<br>20  the 1998, 1999 time frame?<br>21    A.  Correct.<br>22    Q.  And what position did you<br>23  move into at that time?<br>24    A.  I moved back into the home<br><br>                                 53<br>1  office as a product manager in<br>2  marketing for the hypertensive/heart<br>3  failure business unit.<br>4    Q.  Okay.  So product manager.<br>5  Now, your focus is switching to<br>6  products?<br>7    A.  Marketing.<br>8    Q.  Marketing of products?<br>9    A.  Yes.  Cozaar and Hyzaar.<br>10    Q.  That was my next question.<br>11  And what responsibilities did you<br>12  have as a product manager for Cozaar<br>13  and Hyzaar?<br>14    A.  So I was responsible for<br>15  the coordination of speaker<br>16  development of market research<br>17  specific to advisory boards. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 56:19 to 58:8) | | |

OGLE, MARY, (Pages 56:19 to 58:8)

                                                     56
19    Q.  You talked about
20   coordination of speaker development.
21   Can you tell me a little bit about
22   what that entailed.
23      A.   So we were responsible for
24   developing the approved slide decks

                                                     57
1    that the speakers would use.  I
2    coordinated the speaker training.
3    That's it.
4       Q.   What speakers are you
5    referring to?  Are these thought
6    leaders that were speaking at Merck
7    presentations?
8       A.   They were the approved
9    speakers that worked with and gave
10   dinner programs to the physicians.
11      Q.   So they were themselves
12   physicians?
13      A.   Correct.
14      Q.   And you would develop the
15   slide decks that those physicians
16   would use?
17      A.   In working with a cross-
18   functional team.  It wasn't just
19   myself, but yes, I was responsible
20   for the approval of the decks, making
21   sure they were -- the speakers were
22   trained and the decks utilized.
23      Q.   And Merck would train the
24   physicians that spoke at Merck

                                                     58
1    dinners, Merck presentations about
2    its products?
3       A.   Correct.
4       Q.   And if you know, would the
5    product manager for marketing for
6    Vioxx have had that same coordination
7    of speaker development role?
8       A.   More than likely, yes.

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 61:24 to 62:2)<br><br>61<br>24     Q.   And it was from there that<br><br>62<br>1   you moved into the national accounts<br>2   -- | | |
| OGLE, MARY, (Page 62:4 to 62:5)<br><br>62<br>4     Q.   -- executive position?<br>5     A.   Correct. | | |
| OGLE, MARY, (Page 64:1 to 64:11)<br><br>64<br>1     Q.   Okay.  Tell me what a<br>2   national account executive does.<br>3     A.   My responsibility as a<br>4   national account executive was to<br>5   ensure optimal access for our Merck<br>6   portfolio.<br>7     Q.   By that you mean optimal<br>8   access to Merck products through<br>9   whatever managed care organization<br>10   you were working with?<br>11     A.   Correct. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 64:18 to 65:17)<br><br>                                    64<br>18   record.  We just got into your<br>19   position as a national account<br>20   executive.<br>21        I think you said you took<br>22   that position in 2001 or thereabouts?<br>23   A.  Yes.<br>24   Q.  Do you recall when in 2001?<br><br><br>                                    65<br>1    A.  June or July.<br>2    Q.  Are national account<br>3    executives, do they work solely in<br>4    the managed care arena?<br>5    A.  Yes.<br>6    Q.  What managed care<br>7    organizations were you assigned to?<br>8    Am I correct in assuming you were<br>9    assigned to specific managed care<br>10   organizations?<br>11   A.  Correct.<br>12   Q.  What were the managed care<br>13   organizations that you were assigned<br>14   to in June or July of 2001?<br>15   A.  So for the State of<br>16   Louisiana the major insurance<br>17   companies within the state. | | |
| OGLE, MARY, (Pages 65:18 to 66:1)<br>18   Q.  Were you assigned to        65<br>19   Louisiana Medicaid or Louisiana<br>20   Department of Health and Hospitals at<br>21   that time in July of 2001?<br>22   A.  No.  I never had the<br>23   Department of Human Health.<br>24   Q.  Health and Human –<br><br>1    A.  Right.                     66 | Repetitive/Confusing | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 66:2 to 66:15) <br> 66 <br> 2    Q.  How about Louisiana <br> 3  Medicaid? <br> 4    A.  I just had responsibility <br> 5  for working with Medicaid but not the <br> 6  Department of Health. <br> 7    Q.  Do you have any <br> 8  understanding as to whether Louisiana <br> 9  Medicaid is administered by Louisiana <br> 10  Department of Health and Human <br> 11  Services? <br> 12    A.  Yes. <br> 13    Q.  Is it your understanding <br> 14  that they were? <br> 15    A.  Yes. | | |
| OGLE, MARY, (Pages 66:16 to 67:2) <br> 66 <br> 16  Q.  Okay.  Did you have <br> 17  responsibility for Louisiana Medicaid <br> 18  starting when you first started that <br> 19  job or was that something that arose <br> 20  later? <br> 21    A.  That arose later. <br> 22    Q.  So when you first started <br> 23  the job, it was with the major <br> 24  insurance companies within the State <br> 67 <br> 1  of Louisiana; correct? <br> 2    A.  Yes. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 67:14 to 68:15)<br><br>67<br>14    Q.  Now, you said that your<br>15   role was to, as a national account<br>16   executive, to ensure optimal access<br>17   to Merck portfolios.<br>18        How would you go about<br>19   fulfilling that role?<br>20    A.  So my customers were<br>21   primarily the pharmacy directors and<br>22   I would provide them with information<br>23   on our brands per label.<br>24    Q.  Would those like office<br><br>68<br>1   based sales calls that you were<br>2   making but to pharmacy directors as<br>3   opposed to doctors?<br>4    A.  Correct.<br>5    Q.  Okay.  What else would you<br>6   do?<br>7    A.  I would work with field<br>8   sales and communicate the access of<br>9   Merck brands as they pertained to the<br>10   managed care organizations'<br>11   formularies.<br>12    Q.  So you would let the field<br>13   sales know where Merck products fell<br>14   on the formularies; correct?<br>15    A.  Yes. | | |
| OGLE, MARY, (Page 68:16 to 68:20)<br>68<br>16   Q.  Would you work with field<br>17   sales in any other regards other than<br>18   letting them know where Merck<br>19   products fall on the formularies?<br>20    A.  No. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 68:21 to 69:15) <br><br> 68 <br> 21   Q.  Did you have any role with <br> 22   coordinating sales efforts in attempt <br> 23   to increase demand for products so <br> 24   that they would get put on <br><br><br> 69 <br> 1   formularies? <br> 2   A.  Do you mean coordinating -- <br> 3   I didn't have responsibility for <br> 4   providing -- did not have <br> 5   responsibility for providing <br> 6   direction to field sales. <br> 7      I would work with the field <br> 8   sales leadership and they would <br> 9   provide direction to the field sales <br> 10   representatives. <br> 11      So I primarily worked with <br> 12   field sales leadership and then they <br> 13   would provide direction and <br> 14   coordination for the field sales <br> 15   reps. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 69:16 to 71:17)<br><br>69<br>16  Q.  Did you ever hear the terms<br>17  used at Merck push through or<br>18  pull-through with respect to sales as<br>19  they related to managed care<br>20  organizations?<br>21    A.  Yes.<br>22    Q.  What was your understanding<br>23  of what those terms meant?<br>24    A.  In regards to push, it was<br><br>70<br>1  communicating the access of our<br>2  brands based on formularies so our<br>3  customers being that the physician<br>4  would understand the availability of<br>5  our drugs so that they could<br>6  communicate it to the patient so that<br>7  they could get the right medicine to<br>8  the right patients.<br>9      In regards to pull, that<br>10  would be making sure that the -- our<br>11  physician customers understood the<br>12  access of our products so that they<br>13  could communicate to their patients<br>14  the access as it pertained to managed<br>15  care.<br>16    Q.  I understand what you meant<br>17  by pull, but it sounded like it was<br>18  very similar to how you described<br>19  push.<br>20      So let me see if I'm just<br>21  not hearing you right or not<br>22  understanding.  So is pull, it's<br>23  advising the physicians of where the<br>24  drug is on a formulary so they can<br><br>71<br>1  help their patients with that.<br>2    A.  Uh-huh.<br>3    Q.  How is that different from<br>4  how you described push?<br>5    A.  It's just the access is the<br>6  differentiation.  So from a push<br>7  perspective, which the doctor needs<br>8  to understand the co-pay will be | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 9   higher for that patient so they need<br>10  to understand that.<br>11       From a pull, they need to<br>12  understand that actually the co-pay<br>13  will be less for the patient.<br>14      Q.  Uh-huh.<br>15      A.  So it's basically the<br>16  positioning of the product on the<br>17  formulary.<br><br><br>OGLE, MARY, (Page 71:13 to 71:17)     71<br>13  will be less for the patient.<br>14      Q.  Uh-huh.<br>15      A.  So it's basically the<br>16  positioning of the product on the<br>17  formulary. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 73:17 to 74:15)<br><br>73<br>17  record I asked you to review what<br>18  we've marked as Ogle 1.<br>19        Now that you've had a<br>20  chance to review it, do you recognize<br>21  the document?<br>22     A.  No.<br>23     Q.  The document has the title<br>24  Role of the National Account<br><br>74<br>1  Executive, Who, What & Where.  Then<br>2  it says Part of Customer Knowledge<br>3  Module 3 presented by and it has a<br>4  blank and National Account Executive.<br>5        And it appears to be a<br>6  slide show.  Would you agree with me<br>7  there?<br>8     A.  Yes.<br>9     Q.  It looks to me like it's a<br>10  slide show for national account<br>11  executives to present to field sales<br>12  force.<br>13        Is that what it appears to<br>14  be?  I mean is that what it appears<br>15  to be to you. | Lack of foundation | *Overruled* |

21

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 74:22 to 75:11)<br><br>74<br>22   A.  That's what it appears to<br>23   be.<br>24       Q.  And my question is, do you<br><br>75<br>1   recall ever giving a slide show of<br>2   this sort, if not this particular<br>3   one, in other words, a slide show<br>4   explaining the role of an national<br>5   account executive to field sales<br>6   forces?<br>7       A.  I don't recall at this<br>8   time.  It's six years ago.  No, I do<br>9   not.<br>10       Q.  Does that sound like<br>11   something you would have done? | Lack of foundation | |
| OGLE, MARY, (Page 75:16 to 75:16)<br><br>75<br>16   A.  I'm not sure. | Lack of foundation | |
| OGLE, MARY, (Page 76:16 to 76:17)<br><br>76<br>16       Q.  Let me refer you to the<br>17   page that's ten pages in. | | |
| OGLE, MARY, (Page 76:19 to 76:20)<br><br>76<br>19       MR. MURRAY:  It's says<br>20   Managed Care Team.  I don't know if | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 77:3 to 78:10) |  |  |

OGLE, MARY, (Pages 77:3 to 78:10)

77

3    Q.  Were you ever part of
4  anything that was referred to as a
5  managed care team when you were a
6  national account executive?  Is that
7  a term of art that you recall being
8  used at Merck?
9    A.  I don't recall the term,
10  but yes, I would have been part of
11  this team.
12    Q.  You recall being part of
13  teams that were made up a national
14  account executive, customer manager,
15  point BMs, PRs, HSA, medical
16  director, HMS, IHS and analyst?
17    A.  Correct.
18    Q.  Let me get you to help me
19  with some of these acronyms,
20  abbreviations here.  National account
21  executive was the title you held.
22      Customer manager at West
23  Point.  West Point was headquarters;
24  correct?

78

1    A.  Yes.
2    Q.  What was a customer
3  manager?
4    A.  They were also in managed
5  care.  They supported the managed
6  markets team to look -- when there
7  was a contract they did the analysis
8  to determine potential rebate
9  offers.  They were the financial
10  component support.

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 80:2 to 80:24)<br><br>                  80<br>2    Q.  Let's see.  Point BMs.<br>3  What is a Point BM?<br>4    A.  Business manager.<br>5    Q.  Okay.  And then PRs.<br>6    A.  Professional<br>7  representatives.<br>8    Q.  That would be like the<br>9  office based representatives,<br>10  hospital based representatives?<br>11    A.  Correct.<br>12    Q.  Okay.  The field sales<br>13  force?<br>14    A.  Correct.<br>15    Q.  Okay.  HSA.<br>16    A.  Health science associate.<br>17    Q.  We went through your term.<br>18  I think you were health science<br>19  liaison but not a health science<br>20  associate.<br>21       Is that the same kind of<br>22  position or is it something<br>23  different?<br>24    A.  Same position. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 81:4 to 81:23)<br><br>          81<br>4    Q.  A medical director?<br>5    A.  (Witness nods.)<br>6    Q.  I've heard the term<br>7  regional medical director.  Would<br>8  that be the same, same person?<br>9    A.  I'm not sure with this<br>10  document, because I don't recognize<br>11  it.<br>12    Q.  Now I'm asking you not so<br>13  much with respect to this document,<br>14  but with respect to -- you said that<br>15  you were parts of teams like the one<br>16  described in this document.<br>17     So with respect to the team<br>18  that you were part of, would a<br>19  regional medical director be the<br>20  person that would be a part of that<br>21  team, or is that someone<br>22  distinguished from a medical<br>23  director? | | |
| OGLE, MARY, (Page 82:3 to 82:7)<br><br>          82<br>3    Q.  And again, I'm referring to<br>4  the team you were on.<br>5    A.  I'm not sure, because I<br>6  didn't write this document to know<br>7  what this specifically is. | Non-responsive | |
| OGLE, MARY, (Page 82:13 to 82:22)<br><br>          82<br>13     And the teams that you were<br>14  a part of, was there a regional<br>15  medical director that was a part of<br>16  that team?<br>17    A.  Yes.<br>18    Q.  Was there someone called a<br>19  medical director that was part of<br>20  that team that was different from a<br>21  regional medical director?<br>22    A.  No. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 84:3 to 84:22)<br>                  84<br>3    Q.  And then analyst.  In<br>4  connection with the managed care -- I<br>5  mean, I'm sorry, the teams that you<br>6  described that had these components,<br>7  do you recall what an analyst was<br>8  that was part of those teams?<br>9    A.  No, I don't recall their<br>10  responsibility as part of these<br>11  teams.<br>12    Q.  You recall working with<br>13  someone called an analyst when you<br>14  were part of those teams?<br>15    A.  We had an analyst in our...<br>16    Q.  Do you recall what the<br>17  analyst did?<br>18    A.  Yes.  They looked at the<br>19  market and analyzed the business.<br>20    Q.  Did they analyze market<br>21  data?<br>22    A.  Correct. | | |
| OGLE, MARY, (Page 85:11 to 85:15)<br>                  85<br>11  That is, one example, the impact of<br>12  being on or off a PDL on the market?<br>13  Was that the sort of thing the<br>14  analyst would look at?<br>15    A.  Sure. | | |
| OGLE, MARY, (Page 85:16 to 85:23)<br>                  85<br>16  Q.  And with respect to<br>17  Louisiana Medicaid, do you recall an<br>18  analyst looking at the impact of<br>19  certain Merck products being off of<br>20  the PDL?<br>21    A.  I didn't work directly with<br>22  the analyst.  That would have been<br>23  John and Michael. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 86:10 to 86:13)<br><br>86<br>10  Q.  I'll turn you to the next<br>11  page.  Again, this document refers to<br>12  something called a Managed Care Team<br>13  and it appears to be a grid. | Lack of foundation | *Sustained* |
| OGLE, MARY, (Pages 88:14 to 89:14)<br><br>88<br>14     Q.   And then another little<br>15  block of people on this flow chart.<br>16  We see OBR.  That would be office<br>17  based representative?<br>18     A.  Again, not the author of<br>19  the slide, I would assume so, but I<br>20  wasn't the author.<br>21     Q.  I'm just asking based on<br>22  your experience as national account<br>23  executive at Merck.<br>24     A.  I would say yes.<br><br>89<br>1     Q.  Okay.  BM, business<br>2  manager?<br>3     A.  Yes.<br>4     Q.  Specialty rep.  That isn't<br>5  a term we've come across before, have<br>6  we, in the course of this deposition.<br>7  Are you familiar with the term<br>8  specialty rep as it might have been<br>9  used at Merck during your tenure as<br>10  national account executive?<br>11     A.  Yes.<br>12     Q.  What was a specialty rep?<br>13     A.  Focus on a specific<br>14  therapeutic area. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 90:2 to 90:10)<br>90<br><br>2    Q.  What are some of the other<br>3   areas that are specialty areas within<br>4   Merck or were at that time frame 1999<br>5   to 2004?<br>6      A.  Osteo, cardiovascular.<br>7   Those are the two I remember.<br>8      Q.  Was there an arthritis?<br>9      A.  Oh, yes.<br>10     Q.  Rheumatoid and arthritis? | | |
| OGLE, MARY, (Pages 90:19 to 90:24)<br>90<br><br>19     Q.  Again, based on your<br>20   experience as national account<br>21   executive at Merck, do you ever<br>22   recall RMD referring to regional<br>23   medical director?<br>24     A.  Yes. | | |
| OGLE, MARY, (Page 91:6 to 91:8)<br>91<br><br>6     Q.  Okay.  In this flow chart<br>7   at the top we have the NAE, national<br>8   account executive. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 91:10 to 92:5)<br><br>                               91<br>10    Q.  Interacting with over to<br>11   the right this group CM SBD MC HMS<br>12   and down below OBR, BM specialty rep,<br>13   SBD, RMD, HSA, and then there's a<br>14   line between the NAE and managed care<br>15   organization, a line to the office<br>16   based representatives, and then a<br>17   line to physicians.<br>18        Does that correspond with<br>19   your recollection of the interactions<br>20   of the various components of managed<br>21   care marketing at Merck when you were<br>22   a national account executive?<br>23    A.  Yes.<br>24    Q.  So the NAE would have the<br><br>                               92<br>1   interface with the managed care<br>2   organization and also have interface<br>3   with the individuals who are calling<br>4   on physicians?<br>5    A.  Correct. | | |
| OGLE, MARY, (Page 92:6 to 92:17)<br>                                 92<br>6   Q.  What kind of interface<br>7   would the NAE have with the<br>8   individuals who were calling on<br>9   physicians?<br>10    A.  Communicating the formulary<br>11   positioning of our products.<br>12    Q.  Would you have any role in<br>13   formulating strategies for how those<br>14   individuals would communicate with<br>15   physicians?<br>16    A.  No.  I don't provide<br>17   direction, no. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 95:3 to 95:11)<br><br>95<br>3     Q.  Next page with the caption<br>4   Role of an NAE.  It says to manage<br>5   the business relationship between<br>6   Merck and assigned managed care<br>7   accounts.<br>8         Does that correspond with<br>9   your understanding of your role as a<br>10   national account executive at Merck?<br>11     A.  Yes. | | |
| OGLE, MARY, (Pages 96:10 to 97:13)<br><br>96<br>10     Does this role of an NAE<br>11   description accurately describe your<br>12   role as the national account<br>13   executive assigned to Louisiana<br>14   Medicaid?<br>15     A.  It's hard for me to answer,<br>16   because the document with business<br>17   relationship -- I'm not sure the<br>18   intent of that language to be able to<br>19   answer it correctly.<br>20         So my answer would be no,<br>21   because I'm not sure what this<br>22   document refers to as business<br>23   relationship, and I wasn't the<br>24   author, so...<br><br>97<br>1     Q.  Okay.  So while --<br>2     A.  It's vague.<br>3     Q.  But you did think that that<br>4   was accurate or generally accurate<br>5   with respect to --<br>6     A.  With accounts, my accounts.<br>7   But managed care Medicaid is<br>8   different than managed care insurance<br>9   company accounts.<br>10     Q.  Okay.  Managed care with<br>11   Louisiana is a little more<br>12   complicated I guess?<br>13     A.  Yes. | Lack of foundation | _overruled_ |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 98:17 to 98:21)<br><br>98<br>17   Q.   So again, with respect to<br>18   Louisiana Medicaid, your hesitancy to<br>19   answer I think is because there were<br>20   just a lot more moving parts with<br>21   respect to Louisiana Medicaid? | Lack of foundation | |
| OGLE, MARY, (Pages 98:24 to 99:5)<br><br>98<br>24   THE WITNESS:  My hesitancy<br><br>99<br>1   is within the language of this.  I<br>2   wasn't the author. I'm not sure the<br>3   intent of this business relationship,<br>4   the definition, so it's difficult for<br>5   me to answer. | Lack of foundation | |
| OGLE, MARY, (Page 99:7 to 99:21)<br><br>99<br>7   Q.   Moving on to the next page,<br>8   NAE Mission is the title of the<br>9   page.  And it states the NAE mission<br>10   is to increase access and sales for<br>11   Merck products with managed care<br>12   customers, and it's got an<br>13   exclamation at the end of it.<br>14        Does that accurately<br>15   describe your mission as a national<br>16   account executive with respect to<br>17   Louisiana Medicaid?<br>18     A.   No.  I'm not sure the<br>19   context.  This isn't my document.  I<br>20   would say no.  I don't know where<br>21   this came from. | Lack of foundation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 99:22 to 100:24)<br>99<br><br>22    Q.  Let's forget about the<br>23  context and let me just ask you.  If<br>24  someone were to say as an NAE, is<br>100<br>1  your job to increase access and sales<br>2  for Merck products with managed care<br>3  customers, would you agree or<br>4  disagree with that statement?<br>5    A.  I would disagree.<br>6    Q.  And why?<br>7    A.   My role was to increase<br>8  access for our brands.  I don't even<br>9  think at the time I had a sales -- I<br>10  can't recall, but I don't recall if I<br>11  had a sales budget that I was<br>12  responsible for.<br>13      I don't believe so, but I<br>14  don't recall.  It's been so long.<br>15  But I do know my role and my focus<br>16  was access.<br>17    Q.   Is the purpose of<br>18  increasing access to increase Merck<br>19  sales?<br>20    A.   The purpose is to increase<br>21  access so that the right patients get<br>22  the right medicine.  So the physician<br>23  can have fewer barriers to make the<br>24  right choice for the patient. | | |
| OGLE, MARY, (Page 102:5 to 102:10)<br>102<br>5  rephrase it as well.  When you were a<br>6  national account executive, was it<br>7  not your understanding that the<br>8  purpose of increasing access for<br>9  Merck products is to increase Merck's<br>10  sales? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 102:13 to 102:18)<br><br>102<br><br>13    THE WITNESS: I can tell<br>14  you my focus was on access to make<br>15  sure there were fewer barriers for<br>16  the patients so that doctors could<br>17  make good decisions for their<br>18  patients based on labeling. | | |
| OGLE, MARY, (Pages 102:20 to 103:1)<br><br>102<br><br>20    Q. And Merck does that just<br>21  because they want to have patients<br>22  have access to everybody's products<br>23  or they want to do it so that<br>24  patients can have access to Merck's<br><br>103<br>1  products? | | |
| OGLE, MARY, (Page 103:8 to 103:13)<br><br>103<br><br>8    A. I can't answer for Merck.<br>9  It's not my responsibility, my scope.<br>10    Q. I mean you were a national<br>11  account executive at Merck. You<br>12  can't answer for Merck with respect<br>13  to that question? | Argumentative; Lack of foundation | _Sustain!_ |
| OGLE, MARY, (Page 103:20 to 103:24)<br><br>103<br><br>20    A. I'm uncomfortable<br>21  answering. If we could move on. I<br>22  did provide an answer.<br>23    Q. I'm uncomfortable answering<br>24  is not an answer. | Argumentative; Lack of foundation | |
| OGLE, MARY, (Page 104:8 to 104:12)<br><br>104<br><br>8  "Q. I mean you were a<br>9  national account executive at Merck.<br>10  You can't answer for Merck with<br>11  respect to that question?")<br>12    THE WITNESS: No. | Argumentative; Lack of foundation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 104:14 to 104:19)<br><br>104<br>14   Q.   Okay.  Under the question<br>15   of NAE Mission and to increase<br>16   access, I think you did agree that<br>17   your mission was to increase access<br>18   if not sales; is that correct?<br>19      A.  I answered access. | Argumentative; Lack of foundation | |
| OGLE, MARY, (Page 116:5 to 116:16)<br><br>116<br>5   contractual out of it.  How about<br>6   establishing and maintaining<br>7   favorable relationships with managed<br>8   care customers?<br>9         Would that have been within<br>10   your purview as national account<br>11   executive assigned to Louisiana<br>12   Medicaid?<br>13      A.  My role was to provide the<br>14   information to our customers on our<br>15   products based on labeling and<br>16   balanced.  That was my role. | Lack of foundation | |
| OGLE, MARY, (Pages 135:22 to 136:9)<br><br>135<br>22         Do you recall field sales<br>23   personnel having responsibility to<br>24   identify P & T members to you?<br><br>136<br>1      A.  I don't recall that as a<br>2   stated responsibility, because I<br>3   didn't manage them.<br>4      Q.  Do you recall them doing<br>5   that?<br>6      A.  Doing what?<br>7      Q.  Identifying P & T committee<br>8   members to you.<br>9      A.  Yes. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 136:10 to 136:12)<br><br>136<br>10   Q.  Do you know why they were<br>11   identifying P & T committee members<br>12   to you? | Lack of foundation | *Overruled* |
| OGLE, MARY, (Pages 136:19 to 137:6)<br><br>136<br>19   THE WITNESS:  I'm not sure<br>20   the why and there's a context all<br>21   around that question.<br>22   BY MR. MURRAY:<br>23      Q.   Okay.  They were providing<br>24   information to you.   Do you recall<br><br>137<br>1   field sales personnel identifying P &<br>2   T committee members to you?  You said<br>3   you remembered that happening.<br>4      A.   Yes.<br>5      Q.   And the question simply is,<br>6   do you know why they did it? | Lack of foundation | |
| OGLE, MARY, (Page 137:9 to 137:10)<br><br>137<br>9   THE WITNESS:  I'd have to<br>10   have a specific -- | Lack of foundation | |
| OGLE, MARY, (Page 137:12 to 137:13)<br><br>137<br>12   Q.  The answer is you don't<br>13   know why? | Lack of foundation | |
| OGLE, MARY, (Page 137:17 to 137:21)<br><br>137<br>17      Q.   You said you would have to<br>18   a specific instance.  In those<br>19   instances where you recall them doing<br>20   it, as you sit here today, you don't<br>21   know why they did it? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 137:24 to 138:4)<br><br>137<br>24      THE WITNESS:  You asked me<br><br>138<br>1   if I recalled representatives<br>2   identifying.  I do recall in a broad<br>3   manner.  The specifics I do not<br>4   recall, no. | | |
| OGLE, MARY, (Page 138:6 to 138:9)<br><br>138<br>6   Q.   Okay.  As national account<br>7   executive, do you have any idea why<br>8   they would have provided you with the<br>9   identity of P & T members? | Lack of foundation; speculation | |
| OGLE, MARY, (Page 138:12 to 138:13)<br><br>138<br>12   THE WITNESS:  Not exactly,<br>13   no. | Lack of foundation; speculation | |
| OGLE, MARY, (Page 138:15 to 138:16)<br><br>138<br>15   Q.   Not exactly.  Does that<br>16   mean you have some idea? | Lack of foundation; speculation | |
| OGLE, MARY, (Page 138:19 to 138:20)<br><br>138<br>19   THE WITNESS:  What's your<br>20   question? | Lack of foundation; speculation | |
| OGLE, MARY, (Pages 138:22 to 139:5)<br><br>138<br>22   Q.   The question was, do you<br>23   have any idea in those instances<br>24   where sales personnel identified P &<br><br>139<br>1   T committee members to you?  Do you<br>2   have any idea why they did or why<br>3   they would have done so in your<br>4   capacity as a national account<br>5   executive? | Lack of foundation; speculation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 139:9 to 139:12)<br><br>139<br>9   Q.   Based on your experience as<br>10   a national account executive, do you<br>11   know or have any idea why they would<br>12   have done so? | Lack of foundation; speculation | |
| OGLE, MARY, (Page 139:15 to 139:17)<br><br>139<br>15   THE WITNESS:  I would have<br>16   to speculate all the whys so I would<br>17   have to say no. | Lack of foundation; speculation | |
| OGLE, MARY, (Pages 141:17 to 142:3)<br><br>141<br>17        When you were national<br>18   account executive with respect to<br>19   Louisiana Medicaid, did you provide<br>20   field salespeople with co-marketing<br>21   pieces or promotional materials?<br>22       A.   I facilitated the pieces<br>23   that were approved from marketing to<br>24   field sales, correct.<br><br>142<br>1   Q.   Do you recall any of the<br>2   pieces that you would have provided?<br>3   A.   Not offhand, no. | | |
| OGLE, MARY, (Page 147:11 to 147:12)<br><br>147<br>11        (Exhibit Ogle 2 was marked<br>12   for identification.) | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 147:14 to 148:12)<br><br>                      147<br>14     Q.  Ms. Ogle, this is a<br>15  document dated July 20, 2001,<br>16  apparently written by Warren J.<br>17  Lambert to four recipients, including<br>18  yourself.<br>19      July 20, 2001, that would<br>20  have been fairly shortly after you<br>21  took on the national account<br>22  executive role for -- at Merck;<br>23  correct?<br>24     A.  I can't remember the exact<br><br>                      148<br>1  date, but I'm thinking it's in the<br>2  time frame, yes, of my beginning.<br>3     Q.  In this memorandum<br>4  Mr. Lambert writes about the fact<br>5  that Louisiana Medicaid will be<br>6  implementing prior authorization and<br>7  it talks about what Merck is going to<br>8  do in response to that issue.<br>9      Do you recall being<br>10  involved in a Merck response to<br>11  Louisiana's implementation of prior<br>12  authorization in July of 2001? | | |
| OGLE, MARY, (Page 148:15 to 148:19)<br>                      148<br>15      THE WITNESS:  Are you<br>16  asking -- are you asking if I'm<br>17  involved in -- what are you asking?<br>18  As it pertains to this document or<br>19  are you asking something separate? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 148:21 to 149:2)<br>148<br>21    Q.  Well, I'm asking you just<br>22  in general do you recall being<br>23  involved with Merck's response to the<br>24  implementation of prior authorization<br><br>149<br>1  by Louisiana Medicaid in this time<br>2  frame? | | |
| OGLE, MARY, (Page 149:5 to 149:8)<br>149<br>5       THE WITNESS:  When you say<br>6  Merck's response, I do not recall.<br>7  I'm not sure what you're referencing<br>8  for Merck's response. | | |
| OGLE, MARY, (Pages 149:10 to 150:6)<br>149<br>10    Q.  You don't recall being<br>11  involved in the issue of what Merck<br>12  might do because Louisiana had passed<br>13  prior authorization?<br>14    A.  I do recall being involved<br>15  in an issue what they might do, but I<br>16  don't recall what Merck's response<br>17  was.<br>18    Q.  I was just asking you if<br>19  you were involved in what they might<br>20  do.  That's what I meant by Merck's<br>21  response.<br>22    A.  Okay.  Yes.<br>23    Q.  So you were involved with<br>24  that at that time?<br><br>150<br>1    A.  Yes.<br>2    Q.  Do you recall working with<br>3  these individuals with respect to<br>4  what Merck might do, that is, John<br>5  Fevurly, Holly Jacques, Rob Kincaid,<br>6  and Warren J. Lambert? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 150:9 to 150:12)<br><br>150<br>9    THE WITNESS:  I don't<br>10  recall Rob, but I do recall working<br>11  with John and Holly on Merck Medicaid<br>12  issues. | | |
| OGLE, MARY, (Pages 150:14 to 151:19)<br><br>150<br>14    Q.  And how about Warren<br>15  Lambert?<br>16    A.  Yes.<br>17    Q.  Do you recall Warren<br>18  Lambert's job title?<br>19    A.  No.  Not his exact title,<br>20  no.<br>21    Q.  Do you recall receiving<br>22  this document?<br>23    A.  No.<br>24    Q.  Does it appear to you to be<br><br>151<br>1  in the format that Merck memoranda<br>2  was sent to you?<br>3    A.  Sure.<br>4    Q.  Do you have any reason to<br>5  believe that you did not receive this<br>6  document?<br>7    A.  No.<br>8    Q.  In the memo Mr. Lambert<br>9  writes, The purpose of this message<br>10  is to request your assistance in<br>11  thinking through the implication of<br>12  the attached document for Arkansas<br>13  and Louisiana and what we can<br>14  proactively do to position Merck's<br>15  interest favorably.<br>16    I take it you don't know<br>17  what the attachment would have been<br>18  to this?<br>19    A.  No. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 152:1 to 152:5)<br><br>                                         152<br><br>1     Q.  The next thing Mr. Lambert<br>2  goes on to discuss is, he writes,<br>3  Mary and John.  I'm presuming that's<br>4  you and John Fevurly?<br>5     A.  I'm presuming as well, yes. | | |
| OGLE, MARY, (Page 154:3 to 154:4)<br><br>                                         154<br><br>3          (Exhibit Ogle 3 was marked<br>4  for identification.) | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 154:16 to 157:10) | | |

OGLE, MARY, (Pages 154:16 to 157:10)

154

16    Q.  Having had a chance to
17  review the document, do you know
18  whether you've seen it before?
19    A.  I don't recall seeing this.
20    Q.  Do you recall the subject
21  matter of the document?
22    A.  Yes, I do.
23    Q.  Okay.  It says Attached.
24  Looks like it's an e-mail cover to a

155

1  memo.  You're copied on the memo.
2        It says, Attached is a
3  summary of the meeting that Mary Ogle
4  and I had with Dr. Gina Biglane.
5  Please let me know if you have any
6  questions.  Holly.
7        Do you remember
8  Dr. Biglane?
9    A.  Yes, I do.
10    Q.  Do you remember meeting
11  with Dr. Biglane?
12    A.  Yes, I do.
13    Q.  Who was Dr. Biglane?
14    A.  Her title, I don't recall.
15  I know she was involved in -- with
16  the University of Monroe College of
17  Pharmacy and providing recommendation
18  to Louisiana Medicaid.  I don't
19  recall her title.
20    Q.  Do you recall how often you
21  would have met with Dr. Biglane?
22    A.  I believe I only met with
23  her once.
24    Q.  My understanding of

156

1  national account executive role from
2  our earlier discussions that you are
3  the point person with respect to
4  contacts with managed care
5  organizations under your purview;
6  correct?
7    A.  Correct.
8    Q.  Who were your contacts at

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 156:10 to 157:10)<br><br>156<br>9  Louisiana Medicaid?<br>10    A.  I did not have formal<br>11  contacts, if you will.  I don't<br>12  recall a list of owned contacts.<br>13    Q.  What does that mean?  I<br>14  haven't heard that term before,<br>15  although I've seen it in some<br>16  documents, owned contacts.<br>17    A.  Oh, just who I'm<br>18  responsible for.  It's a misspeech.<br>19    Q.  Do you recall who at<br>20  Louisiana Medicaid you would have had<br>21  contact with?  I mean not<br>22  responsibility for contact, but who<br>23  you actually had interactions with,<br>24  if anyone.<br><br>157<br>1    A.  Louisiana Medicaid?<br>2    Q.  Uh-huh.<br>3    A.  As a whole?  No, I don't<br>4  think I talked -- I'm not sure the<br>5  body of what you're referring to, but<br>6  Medicaid, I'm not sure.<br>7    Q.  I mean --<br>8    A.  So I know I talked with<br>9  Gina, but she's with the ULM, right?<br>10    Q.  Right. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 159:3 to 159:22)<br>159<br>3      Q.  Did you ever provide<br>4  promotional materials to anyone<br>5  acting on behalf of Louisiana<br>6  Medicaid?<br>7      A.  I don't recall.  That would<br>8  be someone else's role.<br>9      Q.  Whose role would it be?  If<br>10  you know.<br>11      A.  Depending on what they<br>12  asked for, that's how it would<br>13  differ.  So if it was a medical<br>14  clinical, it would come from our home<br>15  office, that department.<br>16          Anything that was<br>17  promotional in nature meaning label,<br>18  I could provide them label.  I could<br>19  provide them approved resources,<br>20  meaning a detail aid, but that<br>21  wouldn't have even been appropriate<br>22  for them.  I don't recall ever. | | |
| OGLE, MARY, (Page 163:15 to 163:16)<br>163<br>15          (Exhibit Ogle 4 was marked<br>16  for identification.) | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 163:22 to 164:13)<br><br>163<br>22   Q.  You have seen this<br>23   document?<br>24      A.  Uh-huh.<br><br>164<br>1      Q.  When did you see the<br>2   document?<br>3      A.  Yesterday.<br>4      Q.  Okay.  It was in the<br>5   process of reviewing for your<br>6   deposition?<br>7      A.  Correct.<br>8      Q.  Did this document refresh<br>9   your recollection as to events that<br>10  occurred --<br>11     A.  No.<br>12     Q.  -- in 2002?<br>13     A.  No. | 401 | Overruled |
| OGLE, MARY, (Page 168:9 to 168:17)<br><br>168<br>9   Did you have any.<br>10  involvement working with the college<br>11  of pharmacy to provide information<br>12  that has been requested and to<br>13  position Merck favorably?<br>14     A.  That would not have been my<br>15  role to provide information, no.<br>16  That would come from our internal<br>17  folks. | | |
| OGLE, MARY, (Page 168:18 to 168:21)<br><br>168<br>18     Q.  Did you have any role in<br>19  meeting with key decision makers to<br>20  learn more and to educate on Merck<br>21  products with policy? | | |
| OGLE, MARY, (Pages 168:24 to 169:1)<br><br>168<br>24        THE WITNESS:  I'm not sure<br><br>169<br>1   what he was referring to here. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
| --- | --- | --- |
| OGLE, MARY, (Pages 169:3 to 171:9) | | |

169

3    Q.  You just don't know what
4  he's referring to there so you can't
5  answer the question?
6    A.  Right.  I'm not sure who
7  he's referring to as key decision
8  makers.  I didn't -- yeah.  I don't
9  know.
10    Q.  Do you remember meeting
11  with anyone in connection with
12  Louisiana Medicaid?  And it may not
13  necessarily have been from Medicaid.
14      Now I'm just asking you, in
15  connection with Louisiana Medicaid,
16  in order to educate them on Merck
17  products, question mark.
18    A.  We provided information
19  based on requests so our role was to
20  provide information.
21    Q.  You don't recall any
22  face-to-face meetings other than the
23  one we discussed with Dr. Biglane
24  where you discussed providing

170

1  information on Merck products?
2    A.  I had other meetings, yes.
3    Q.  Okay.  What were those
4  other meetings?
5    A.  We had -- we met with
6  Dr. Vincent Culotta.  We met with
7  Senator Hood.  And outside of that, I
8  don't recall any others.
9    Q.  Okay.  Do you recall
10  providing them information on Merck
11  products during those meetings?
12    A.  No, I don't.
13    Q.  Do you know whether you
14  discussed Merck products with them
15  during those meetings?
16    A.  I don't really remember the
17  discussions of the meeting because it
18  was six years ago.  I can remember
19  being there, but I can't tell you --

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 170:23 to 171:9)<br><br>170<br>20  I can't remember how the discussion<br>21  ensued and what the content was<br>22  exactly.<br>23      Q.  Okay.  Do you know whether<br>24  you provided any materials,<br><br>171<br>1  promotional materials, to them at<br>2  those meetings?<br>3      A.  I don't remember.<br>4      Q.  Do you think the meetings<br>5  with Dr. Culotta and Dr. Biglane and<br>6  Secretary Hood were the meetings with<br>7  key decision-makers that Warren<br>8  Lambert is referring to in this memo?<br>9      A.  I have no idea. | | |
| OGLE, MARY, (Page 171:4 to 171:9)<br><br>171<br>4      Q.  Do you think the meetings<br>5  with Dr. Culotta and Dr. Biglane and<br>6  Secretary Hood were the meetings with<br>7  key decision-makers that Warren<br>8  Lambert is referring to in this memo?<br>9      A.  I have no idea. | Speculation | Sustained |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 175:20 to 176:10)<br><br>                       175<br>20    Q.  We were discussing the<br>21  individuals with whom you met with<br>22  respect to Louisiana Medicaid PDL<br>23  formulation.  I believe we discussed<br>24  Secretary Hood, Dr. Culotta, Vincent<br><br>                       176<br>1  Culotta.<br>2    A.  Yes.<br>3    Q.  And Dr. Biglane.  Is there<br>4  anyone else that you met with with<br>5  respect to that issue who was either,<br>6  to your knowledge, employed by or<br>7  acting on behalf of Louisiana<br>8  Medicaid?<br>9    A.  I don't remember anyone<br>10  else. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 177:2 to 179:4) | | |

OGLE, MARY, (Pages 177:2 to 179:4)

177

2   Q.  How about Secretary Hood?
3  Do you recall meetings with him?
4   A.  One.
5   Q.  How many?
6   A.  One.
7   Q.  Just one?
8   A.  Uh-huh.
9   Q.  Do you recall any details
10  of that meeting, where it took place?
11   A.  We were at the capital in
12  Baton Rouge.  It was facilitated by
13  our government affairs individual.
14  She, she -- it was really her
15  meeting.  I was with her.  She led
16  and ran the meeting.
17   Q.  Okay.
18   A.  Other than that, I don't
19  remember much about it.  I don't
20  remember the discussion to be honest.
21  I just remember being in the room.
22  It was six years ago.
23   Q.  Was Holly Jacques the
24  government affairs person who was

178

1  there in the meeting?
2   A.  Yes.
3   Q.  And you just recall that
4  you were there; you don't recall the
5  subject matter?
6   A.  I don't recall the
7  discussion and I do know I was there.
8   Q.  I guess you do recall the
9  subject matter had something to do
10  with the PDL.
11   A.  I don't recall exactly what
12  it had to do with.  Obviously, it was
13  probably around that, but I don't
14  remember exactly, because I don't
15  even remember the time and place in
16  terms of sequence and events.
17   Q.  Do you recall whether any
18  Merck products were discussed?

49

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 178:22 to 179:4)<br>178<br>19    A.  No.  I don't recall.<br>20    Q.  The meetings with<br>21  Dr. Culotta, how many meetings were<br>22  there with Dr. Culotta?<br>23    A.  I remember two.<br>24    Q.  What can you tell me about<br><br>179<br>1  those meetings?<br>2    A.  They were dinner meetings.<br>3  It was myself, Holly, Fran Kaiser,<br>4  and Dr. Culotta for one. | | |
| OGLE, MARY, (Page 180:2 to 180:6)<br>180<br>2    Q.  Again, do you recall<br>3  whether any Merck products were<br>4  discussed during that meeting?<br>5    A.  I don't remember the topic<br>6  of discussion. | | |
| OGLE, MARY, (Page 180:15 to 180:17)<br>180<br>15    Q.  Do you recall whether the<br>16  PDL was discussed at those meetings?<br>17    A.  No, I don't recall. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 182:16 to 183:12) <br><br>182<br>16    Q.  Were you ever involved in<br>17  any discussions with anyone at Merck<br>18  regarding whether Merck would provide<br>19  supplemental rebates to Louisiana<br>20  Medicaid with respect to Merck<br>21  products?<br>22    A.  Yes.<br>23    Q.  With whom would you have<br>24  had those discussions?<br><br>183<br>1    A.  It was a cross functional<br>2  team and I really wasn't -- my role<br>3  in participating in that call was not<br>4  to be deciding whether or not we<br>5  would provide -- I was there as a<br>6  cross functional member, a different<br>7  stake holder, the field, you know,<br>8  point contact.<br>9        But who was on there, I<br>10  don't remember specifically.  I can't<br>11  make an assumption.  I don't remember<br>12  who. | | |
| OGLE, MARY, (Page 189:9 to 189:13) <br><br>189<br>9    Q.  Do you know whether any<br>10  clinical information regarding Vioxx<br>11  was provided by Merck to anyone<br>12  acting on behalf of Louisiana<br>13  Medicaid? | | |
| OGLE, MARY, (Page 189:16 to 189:19) <br><br>189<br>16        THE WITNESS:  That wouldn't<br>17  have been my role.  So I can't say<br>18  yes or no.  That would have been<br>19  someone else's responsibility. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 189:21 to 190:1)<br><br>                          189<br>21    Q.  I'm just asking whether you<br>22  knew whether that happened, and I<br>23  guess the answer is no.<br>24    A.  No.  I can't confirm it or<br><br>                          190<br>1  deny it, because I just -- | | |
| OGLE, MARY, (Page 190:6 to 190:8)<br>                          190<br>6    Q.  I refer you to a document<br>7  marked as Ogle 10.  I'm sorry, it's<br>8  Ogle 6. | | |
| OGLE, MARY, (Pages 191:23 to 192:23)<br>                          191<br>23  And that memo is likewise addressed<br>24  to you and others by Holly Jacques.<br><br>                          192<br>1    A.  Okay.<br>2    Q.  And the subject is Summary<br>3  of a P & T committee hearing on April<br>4  9, '02 and Summary of the Joint House<br>5  and Senate Health and Welfare<br>6  committee meeting on 5/10/02.<br>7       Do you recognize that<br>8  document?<br>9    A.  No.<br>10    Q.  Do you recall Holly Jacques<br>11  reporting to you on P & T committee<br>12  meetings for Louisiana Medicaid?<br>13    A.  Yes.<br>14    Q.  Okay.  Is that something<br>15  that happened?<br>16    A.  She would do that, yes.<br>17    Q.  Is that something she would<br>18  do regularly?<br>19    A.  That was her role, yes.<br>20    Q.  So whenever there was a P &<br>21  T committee meeting you would get a<br>22  report on it?<br>23    A.  Correct. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 194:6 to 194:14)<br><br>194<br><br>6    Q.  She goes on to write,<br>7  Provider Synergies stated that there<br>8  are no conclusions on this issue at<br>9  this time referring to the<br>10  cardiovascular side-effects.<br>11        Do you recall Holly Jacques<br>12  reporting that Provider Synergies had<br>13  made that statement to Louisiana<br>14  Medicaid? | | |
| OGLE, MARY, (Page 194:17 to 194:18)<br><br>194<br><br>17        THE WITNESS:  I do not<br>18  recall. | | |
| OGLE, MARY, (Pages 194:20 to 195:1)<br><br>194<br><br>20    Q.  Do you know whether anyone<br>21  acting on behalf of Merck made any<br>22  statements to anyone acting on behalf<br>23  of Louisiana Medicaid in response to<br>24  this inquiry about cardiovascular<br><br>195<br>1  side-effects? | | |
| OGLE, MARY, (Page 195:4 to 195:5)<br><br>195<br><br>4        THE WITNESS:  I don't<br>5  recall, no. | | |
| OGLE, MARY, (Page 195:7 to 195:15)<br><br>195<br><br>7    Q.  Holly goes on to write,<br>8  Provider Synergies did not mention<br>9  the fact that Vioxx has a GI<br>10  protective indication.<br>11        Do you recall anyone from<br>12  Merck making any statements to anyone<br>13  acting on behalf of Louisiana<br>14  Medicaid with respect to whether<br>15  Vioxx has a GI protective indication? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 195:18 to 195:19)<br><br>              195<br><br>18       THE WITNESS:  I don't<br>19  recall. | | |
| OGLE, MARY, (Page 195:21 to 195:24)<br><br>              195<br><br>21    Q.   Do you know whether Vioxx<br>22  having a GI protective indication was<br>23  part of Vioxx -- I'm sorry -- Merck's<br>24  marketing strategy for Vioxx? | | |
| OGLE, MARY, (Page 196:3 to 196:4)<br><br>              196<br><br>3       THE WITNESS:  I don't<br>4  recall. | | |
| OGLE, MARY, (Page 196:6 to 196:9)<br><br>              196<br><br>6    Q.   And by that I mean, do you<br>7  know whether that was part of the<br>8  message that was to be delivered to<br>9  Merck customers? | | |
| OGLE, MARY, (Page 196:12 to 196:13)<br><br>              196<br><br>12       THE WITNESS:  I don't<br>13  recall. | | |
| OGLE, MARY, (Pages 196:15 to 197:1)<br><br>              196<br><br>15    Q.   Do you recall discussing GI<br>16  protective indications with any of<br>17  your managed care organizations that<br>18  you work with as a national account<br>19  executive?<br>20    A.   I don't remember the<br>21  discussions, no.<br>22    Q.   You don't remember that<br>23  being a part of the --<br>24    A.   I couldn't say one way or<br><br>              197<br><br>1  the other.  I don't remember. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 197:5 to 197:18)<br><br>                                197<br>5    Q.  You don't remember that<br>6  being a part of any of the<br>7  promotional messages that you would<br>8  have delivered to managed care<br>9  organizations?<br>10    A.  I don't remember delivering<br>11  those messages.<br>12    Q.  But I am correct in<br>13  understanding, not with respect to<br>14  Louisiana Medicaid, but with respect<br>15  to the private managed care<br>16  organizations you work with, you did<br>17  deliver promotional messages; is that<br>18  correct? | | |
| OGLE, MARY, (Page 197:21 to 197:21)<br><br>                                197<br>21        THE WITNESS:  Correct. | | |
| OGLE, MARY, (Pages 197:23 to 198:10)<br><br>                                197<br>23    Q.  You just don't recall<br>24  whether those promotional messages<br><br>                                198<br>1  for Vioxx would have included a<br>2  reference to the GI protective<br>3  indication?<br>4    A.  I don't recall my<br>5  discussions.  It's been six years.<br>6    Q.  Do you recall whether your<br>7  discussions with any of your managed<br>8  care customers with respect to Vioxx<br>9  would have involved potential<br>10  cardiovascular side-effects of Vioxx? | | |
| OGLE, MARY, (Page 198:13 to 198:14)<br><br>                                198<br>13        THE WITNESS:  I don't<br>14  recall my discussions. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 198:16 to 198:23)<br><div align="center">198</div>16    Q.  So you can't say either<br>17  way?<br>18    A.  Right.  Right.<br>19    Q.  And is it fair to say you<br>20  don't know what, if anything, Merck<br>21  may have said or done in response to<br>22  the inquiry that's reported in this<br>23  memorandum that was sent to you? | | |
| OGLE, MARY, (Page 199:2 to 199:3)<br><div align="center">199</div>2        THE WITNESS:  I don't know<br>3  how this was followed up, no. | | |
| OGLE, MARY, (Page 206:19 to 206:20)<br><div align="center">206</div>19        This is Ogle 7 Bates number<br>20  MRK-EBER0050388 through 50391.  Okay. | | |
| OGLE, MARY, (Page 207:1 to 207:7)<br><div align="center">207</div>1        Does it appear that the<br>2  revised e-mail from Holly Jacques to<br>3  yourself and Fran Kaiser is forwarded<br>4  by Fran Kaiser to some other<br>5  individuals with some comments and<br>6  then one of those individuals<br>7  forwarded that e-mail to you? | | |
| OGLE, MARY, (Page 207:15 to 207:15)<br><div align="center">207</div>15        THE WITNESS:  Yes. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 207:18 to 208:16)<br><br>                    207<br>18    Q.  That's correct, okay.  And<br>19  then that e-mail is then forwarded<br>20  again with some other comments and<br>21  you are again copied on it?<br>22    A.  Yes.<br>23    Q.  Okay.  Forwarded again with<br>24  other comments and you're copied?<br><br>                    208<br>1    A.  Yes.<br>2    Q.  Forward or responded to<br>3  again with other comments and you're<br>4  copied?<br>5    A.  Yes.<br>6    Q.  Okay.  And then all the way<br>7  up to the -- I'm sorry.  One more<br>8  time.  And you were copied all the<br>9  way up to the first e-mail in the<br>10  chain?<br>11    A.  Yes.<br>12    Q.  Based on your experience<br>13  with Merck's system, would it be your<br>14  anticipation that every time you<br>15  received this e-mail you would have<br>16  received the whole chain? | | |
| OGLE, MARY, (Page 208:19 to 208:19)<br>                    208<br>19      THE WITNESS:  I don't know. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 208:21 to 210:8)<br><br>208<br>21  Q.  Is that usually how it<br>22  worked at Merck on e-mail?  You get<br>23  an e-mail and everybody -- all the<br>24  history leading up to it is there?<br><br>209<br>1  You may not read it all, but...<br>2     A.  It depends on the sender.<br>3     Q.  Depends on the sender?<br>4     A.  Right.<br>5     Q.  Anyway, in the second<br>6  e-mail in this chain chronologically,<br>7  it's the one from Dr. Kaiser right<br>8  under the big black-out box.<br>9     A.  Uh-huh.<br>10    Q.  Dr. Kaiser writes, I am<br>11  enclosing the memo received from<br>12  Holly Jacques in government affairs<br>13  re: the recommendations from Provider<br>14  Synergies to the State of Louisiana.<br>15       Dr. Kaiser writes, I will<br>16  be going to Louisiana with Holly in<br>17  the hope of setting some of the<br>18  clinical issues to right with<br>19  legislators.  She goes on to write,<br>20  Any comments you would have would be<br>21  helpful.<br>22       She writes, Obviously, we<br>23  wish to clarify the ARB and coxib<br>24  class clinical issues and ask for<br><br>210<br>1  reconsideration of Vioxx and<br>2  Cozaar/Hyzaar if possible.<br>3       Does that refresh your<br>4  recollection as to what, if anything,<br>5  Merck may have done in response to<br>6  the subject matter reported in Holly<br>7  Jacques' e-mail regarding the May 9,<br>8  2002 P & T committee meeting? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 210:11 to 210:11)<br>210<br>11      THE WITNESS:  No. | | |
| OGLE, MARY, (Page 210:13 to 210:20)<br>210<br>13     Q.  You don't have any personal<br>14   knowledge about whether or not<br>15   Dr. Kaiser went to meet with anyone<br>16   in Louisiana in the hope of setting<br>17   some of the clinical issues to right,<br>18   open and close quote, in the hope of<br>19   setting some of the clinical issues<br>20   to right? | | |
| OGLE, MARY, (Pages 210:23 to 211:2)<br>210<br>23       THE WITNESS:  No.  I'm not<br>24   sure what she's referencing with her<br><br>211<br>1   words and how she followed up, no, I<br>2   don't have a recollection. | | |
| OGLE, MARY, (Page 211:4 to 211:16)<br>211<br>4     Q.  Do you know whether she had<br>5   any meetings with anyone acting on<br>6   behalf of Louisiana Medicaid?<br>7     A.  The only meetings I knew<br>8   were when I was with her.<br>9     Q.  The ones that you attended?<br>10     A.   That I just referenced that<br>11   I remember.<br>12     Q.  Do you know whether that<br>13   meeting is the one that she's<br>14   referring to in this memo?<br>15     A.  No, I could not tie the two<br>16   together. | | _Sustained_ |
| OGLE, MARY, (Page 211:21 to 211:22)<br>211<br>21   (Exhibit Ogle 8 was marked<br>22   for identification.) | Lack of foundation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 211:24 to 214:20)<br><br>24    Q.  Ogle 8 bears the Bates <sup>211</sup><br><br>1    number MRK-EBBL0066045 through <sup>212</sup> 6050.<br>2    Take a minute to flip through that<br>3    and tell me if you've ever seen that<br>4    document.<br>5      A.  I do not recognize this<br>6    document, no.<br>7      Q.  Let me ask you if you are<br>8    familiar with the subject matter of<br>9    the document, which is Medicaid<br>10   Physician -- at least according to<br>11   the title is -- Medicaid Physician<br>12   Targeting Updated Using Updated<br>13   Medical Flags?<br>14     A.  I understand what that<br>15   means, yes.<br>16     Q.   Okay.  What does that mean?<br>17     A.  So the representatives have<br>18   electric call, how they managed their<br>19   call lists, and the flag would be a<br>20   way of identifying, differentiating<br>21   -- we had flags for many different<br>22   things, but flag means they would<br>23   have something specific to identify<br>24   if that physician had Medicaid<br><br>1    patients. <sup>213</sup><br>2      Q.   So this is referring to a<br>3    computerized list of physicians that<br>4    sales representatives would call on?<br>5      A.  I'm not sure what this is<br>6    referring to, because I don't<br>7    recognize it.<br>8      Q.  Okay.<br>9      A.  But I understood what that<br>10   meant.<br>11     Q.   Medicaid Physician<br>12   Targeting Using Updated Medical<br>13   Flags, that subject refers to what | Lack of foundation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 213:14 to 214:20)<br><br>213<br>14  you're talking about, the<br>15  computerized list for --<br>16    A.  Correct.<br>17    Q.  -- calling on doctors?<br>18    A.  Correct.<br>19    Q.  And that refers to letting<br>20  doctors know that this is someone who<br>21  prescribes for Medicaid?<br>22    A.  No.<br>23    Q.  Okay.  What does that refer<br>24  to, Medicaid Flag, using Updated<br><br>214<br>1  Medicaid Flags?<br>2    A.  The flag is an internal<br>3  tool, if you will, to identify or<br>4  differentiate different aspects of<br>5  their customers.<br>6    Q.  Okay.  So just that flag is<br>7  a way of telling us that this call<br>8  could have something to do with<br>9  Medicaid?<br>10    A.  No.  Nothing to do with the<br>11  call.  It identifies -- it<br>12  differentiates the customers for the<br>13  representative.<br>14    Q.  I see.  So it's advising<br>15  the representative that the physician<br>16  that they're making the call on has<br>17  something to do with Medicaid?<br>18    A.  Advising, I'm not sure.<br>19  It's just a differentiating factor to<br>20  show the profile of the doctors. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 215:8 to 217:4)<br><br>215<br>8  Q.  Ogle 9 is a document that<br>9  on the first page bears the title and<br>10  actually continues through the second<br>11  page just because the way the<br>12  documents were produced, I think it<br>13  was probably a wide piece of paper,<br>14  and they tried to put it on three<br>15  different pages, that says Louisiana<br>16  Medicaid Tactic, and if you flip to<br>17  the second page, al Plan, so Tactical<br>18  Plan, and then it has notes.<br>19    A.  It just keeps going.<br>20    Q.  I think it might be a<br>21  spreadsheet of sorts.  Let me ask<br>22  you, do you recall seeing a Louisiana<br>23  Medicaid Tactical Plan?<br>24    A.  I recall this from<br><br>216<br>1  yesterday.  I saw this yesterday.<br>2    Q.  Okay.  Do you recall being<br>3  involved with the implementation of a<br>4  Louisiana Medicaid Tactical Plan?<br><br>5    A.  So the tactical plan would<br>6  be executed by field sales.<br>7    Q.  Okay.<br>8    A.  My role was not to direct<br>9  them.  So involved meaning?<br>10    Q.  Did you have any role in<br>11  the development of the plan?<br>12    A.  I would not have had a role<br>13  in what they were to execute and do.<br>14  That was not my call.  I didn't have<br>15  the responsibility or authority to do<br><br>16  such.<br>17    Q.  Do you know whether there<br>18  was a team that was put together to<br>19  develop the plan and, if so, were you<br>20  a part of that team?<br>21    A.  I can't recall how this<br>22  plan was put together.<br>23    Q.  Do you recall receiving a<br>24  tactical plan for the Louisiana | Lack of foundation | _Sustained_ |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 217<br>1  Medicaid at the time that you were<br>2  national account executive for<br>3  Louisiana Medicaid?<br>4     A.  I don't remember any.<br><br> OGLE, MARY, (Page 217:10 to 217:15)<br>217<br>10   Q.  Do you recall receiving<br>11  documents called tactical plans,<br>12  whether they related to Louisiana<br>13  Medicaid or some other segment of the<br>14  market, when you were a national<br>15  account executive? | Lack of foundation | Sustained |
| OGLE, MARY, (Page 217:18 to 217:19)<br>217<br>18   THE WITNESS:  I don't<br>19  recall specifics, no. | Lack of foundation | |
| OGLE, MARY, (Page 217:21 to 217:24)<br>217<br>21   Q.  Do you recall receiving<br>22  those types of things?<br>23     A.  I don't recall receiving<br>24  them. | Lack of foundation | |
| OGLE, MARY, (Page 223:7 to 223:8)<br>223<br>7        (Exhibit Ogle 10 was marked<br>8  for identification.) | | |
| OGLE, MARY, (Page 223:10 to 223:13)<br>223<br>10     Q.  This is a memo and an<br>11  attachment.  It bears Bates number<br>12  MRK-AGLAAD0009565 and it goes through<br>13  9679. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 224:14 to 225:15)<br><br>224<br>14    Q.  I refer you to the first<br>15  page of that document.  It appears to<br>16  be an e-mail from Howard Ranita.<br>17    A.  Oh, yes, Ranita.<br>18    Q.  I'm sorry.  Ranita Howard.<br>19    A.  One way it's a male; one<br>20  way it's a female.<br>21    Q.  Right.  To a number of<br>22  individuals, including yourself on<br>23  the, I'm sorry, the very top.<br>24        Actually it looks like it<br><br>225<br>1  was Ranita Howard forwarded a<br>2  document from -- forwarded a document<br>3  that she had also sent to others and<br>4  then forwarded it to you and Holly<br>5  Jacques.<br>6        Do you recognize the<br>7  document?<br>8    A.  No.  I recognize this --<br>9  I recognize a portion.  I don't<br>10  recognize the top page.<br>11    Q.  You recognize the second<br>12  portion as another version of that<br>13  tactical plan document that we just<br>14  looked at as Ogle 9?<br>15    A.  Yes.  Yeah. |  |  |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 225:20 to 226:6)<br><br>                             225<br>20     Q.  Do you remember working<br>21  with Ranita Howard with respect to<br>22  your role as national account<br>23  executive for Louisiana Medicaid?<br>24     A.  I do.<br><br>                             226<br>1     Q.  Okay.  What was Ranita<br>2  Howard's role?<br>3     A.  She was a district manager.<br>4     Q.  Field sales personnel<br>5  reported to her?<br>6     A.  Correct. |  |  |
| OGLE, MARY, (Page 234:17 to 234:22)<br>                             234<br>17   Q.  Let me ask whether you've<br>18  seen the Medicaid FAQ section of this<br>19  document before whether you saw it in<br>20  this document or in something else?<br>21    A.  I don't believe I've seen<br>22  this document. |  |  |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 234:23 to 235:17)<br>234<br>23    Q.  Okay.  And referring you to<br>24   page 9581 where it says Update on<br><br>235<br>1   Medicaid resources per Mary Ogle.  Do<br>2   you see that?<br>3      A.  Uh-huh.<br>4      Q.  It says, The prior<br>5   authorization piece will be going to<br>6   the legal board on Friday.<br>7          We should have approval on<br>8   this in a day or so and then all we<br>9   need to do is wait for the phone<br>10   number and fax number to be dropped<br>11   in and then they should be ready to<br>12   go to print.<br>13         Do you know what that's<br>14   referring to?<br>15      A.  I'm assuming it is for a --<br>16   I'm not specifically sure.  I can't<br>17   recall. | | |
| OGLE, MARY, (Page 235:20 to 235:24)<br>235<br>20      Q.  Okay.  If a document went<br>21   to legal board --<br>22      A.  Uh-huh.<br>23      Q.   -- would that be referring<br>24   to a promotional material? | | |
| OGLE, MARY, (Page 236:3 to 236:3)<br>236<br>3          THE WITNESS:  I'm not sure. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 236:5 to 236:22)<br>                  236<br>5    Q.  Do you have any<br>6  recollection of a prior authorization<br>7  piece being drafted?<br>8    A.  I do.<br>9    Q.  Okay.  Did you have any<br>10  role in the drafting of a prior<br>11  authorization piece?<br>12    A.  I don't recall.<br>13    Q.  Do you know anything about<br>14  the prior authorization piece?<br>15    A.  I believe it was approved<br>16  -- I don't recall.  I don't -- I<br>17  don't know exactly.<br>18    Q.  Do you recall whether it<br>19  was a document that was intended to<br>20  be used by sales force when calling<br>21  on physicians?<br>22    A.  Yes. | | |
| OGLE, MARY, (Page 241:21 to 241:23)<br>                  241<br>21    Q.  Ms. Ogle, am I correct that<br>22  you never attended any Louisiana P &<br>23  T committee meetings? | | |
| OGLE, MARY, (Page 242:3 to 242:17)<br>                  242<br>3    A.  I did attend Louisiana P &<br>4  T meetings.<br>5    Q.  Oh, you did.  How many<br>6  Louisiana P & T committee meetings<br>7  did you attend?<br>8    A.  I don't remember.<br>9    Q.  More than one?<br>10    A.  I think so.<br>11    Q.  Did you ever make<br>12  presentations at those meetings?<br>13    A.  No.<br>14    Q.  What was the purpose for<br>15  your attending those meetings?<br>16    A.  Observing the meetings and<br>17  the outcome. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 243:1 to 243:5) <br> 243 <br> 1   Q.  Do you recall being present <br> 2  at any meetings of the P & T <br> 3  committee where Vioxx was discussed? <br> 4    A.  I don't remember which <br> 5  meetings I attended, no. | | |
| OGLE, MARY, (Page 243:16 to 243:20) <br> 243 <br> 16    Q.  Do you recall whether you <br> 17  were present at meetings where <br> 18  Provider Synergies made <br> 19  presentations? <br> 20    A.  Yes. | | |
| OGLE, MARY, (Page 244:12 to 244:16) <br> 244 <br> 12    Q.  Do you recall anyone from <br> 13  Merck making any presentations at any <br> 14  of the P & T committee meetings that <br> 15  you attended? <br> 16    A.  No. | | |
| OGLE, MARY, (Page 247:1 to 247:2) <br> 247 <br> 1       (Exhibit Ogle 11 was marked <br> 2  for identification.) | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 247:4 to 248:13)<br>247<br>4    Q.  I've just handed you a<br>5  document Bates marked<br>6  MRK-AGLAAD009803 through 9857 and I<br>7  ask you whether you've seen that<br>8  document before.<br>9     A.  I don't remember this<br>10  document, no.<br>11     Q.  It appears to be an e-mail<br>12  from a Brian Clark to a large number<br>13  of individuals including yourself.<br>14  Do you know Brian Clark?<br>15     A.  No.<br>16     Q.  I refer you to the first<br>17  page of the document.  Subject line<br>18  Medicaid Segment: Communications and<br>19  Training Pre-work/Region Templates.<br>20         The author writes, Hi<br>21  Everyone, As promised at the recent<br>22  Medicaid segment strategy and<br>23  communication/training<br>24  teleconferences July 12 and 16,<br><br>248<br>1  attached are several documents<br>2  designed to assist your pull-through<br>3  efforts at the regional level.<br>4         Were you involved with --<br>5  did you have any role on a Medicaid<br>6  segment strategy in<br>7  communication/training<br>8  teleconference?<br>9     A.  I don't remember.<br>10     Q.  Was there a working group<br>11  within Merck called Medicaid Segment<br>12  Strategy and Communication/Training?<br>13     A.  I don't recall. | | |