| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| **OGLE, MARY, (Pages 248:22 to 249:1)**<br>248<br>22    Q.  Did you have any<br>23  responsibility for training sales<br>24  personnel within the Medicaid<br>249<br>1   segment? | | |
| **OGLE, MARY, (Page 249:4 to 249:4)**<br>249<br>4    THE WITNESS:  No. | | |
| **OGLE, MARY, (Page 249:6 to 249:9)**<br>249<br>6   Q.  Did you have any<br>7   responsibility for developing<br>8   strategy with respect to the Medicaid<br>9   segment? | | |
| **OGLE, MARY, (Page 249:12 to 249:13)**<br>249<br>12    THE WITNESS:  It wasn't my<br>13   responsibility, no. | | |
| OGLE, MARY, (Page 251:18 to 251:19)<br>251<br>18        (Exhibit Ogle 13 was marked<br>19   for identification.) | | |
| OGLE, MARY, (Pages 251:24 to 252:6)<br>251<br>24      Q.  Do you recognize the<br>252<br>1   document?<br>2     A.  No.<br>3     Q.  The document discusses<br>4   prior authorization with respect to<br>5   Vioxx; is that correct?<br>6     A.  Yes. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 252:10 to 252:13)<br><div align="right">252</div>10    Q.  Is this the prior<br>11   authorization piece that you recalled<br>12   seeing and discussing in your<br>13   testimony? | | |
| OGLE, MARY, (Page 252:16 to 252:17)<br><div align="right">252</div>16     THE WITNESS:  No.  No idea<br>17   to link the two. | | |
| OGLE, MARY, (Pages 252:19 to 253:4)<br><div align="right">252</div>19    Q.  You see the first heading<br>20   in the box.<br>21    A.  Uh-huh.<br>22    Q.  It says Vioxx, "The First<br>23   and only COX-2 Specific Inhibitor<br>24   with Proven GI Risk Reductions."<br><div align="right">253</div>1     Do you recall seeing that<br>2   claim with respect to Vioxx in<br>3   promotional materials produced by<br>4   Merck? | | |
| OGLE, MARY, (Page 253:7 to 253:8)<br><div align="right">253</div>7     THE WITNESS:  No, I don't<br>8  recall. | | |
| OGLE, MARY, (Page 253:10 to 253:17)<br><div align="right">253</div>10    Q.  Do you recall whether that<br>11   message that Vioxx was the first and<br>12   only COX-2 specific inhibitor with<br>13   proven GI risk reductions was a<br>14   message that you presented in any of<br>15   your calls not to Louisiana but to<br>16   any of your managed care organization<br>17   contacts? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 253:20 to 253:23)<br><br>              253<br>20     THE WITNESS:  I don't<br>21  recall.<br>22     (Exhibit Ogle 14 was marked<br>23  for identification.) | | |
| OGLE, MARY, (Page 254:1 to 254:23)<br><br>              254<br><br>1    Q.  I've just handed you a<br>2  document that we've marked<br>3  MRK-EBBL0058983 through 984 and ask<br>4  whether you recognize that document.<br>5    A.  I do not.<br>6    Q.  Does it appear that you<br>7  were copied on the document?<br>8    A.  Yes.<br>9    Q.  The document was sent by<br>10  Ranita Howard; is that correct?<br>11    A.  Yep.<br>12    Q.  I refer you to the bottom<br>13  paragraph of the document, Update on<br>14  Medicaid Resources per Mary Ogle.<br>15     It says the legal board has<br>16  approved the prior authorization<br>17  piece.  This piece is available in<br>18  ROME and is being direct-shipped to<br>19  representatives' homes.<br>20     Does that refresh your<br>21  recollection as to your involvement<br>22  of having seen the prior<br>23  authorization piece? | | |
| OGLE, MARY, (Page 255:2 to 255:2)<br><br>              255<br>2     THE WITNESS:  It does not. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 255:4 to 255:12)<br>255<br>4    Q.  Would it have fallen within<br>5   your purview to advise other people<br>6   within Merck whether prior<br>7   authorization pieces had been<br>8   approved by legal?<br>9    A.  Yes.<br>10    Q.  Who would be the people<br>11   that you would be responsible for<br>12   providing that information to? | | |
| OGLE, MARY, (Page 255:15 to 255:17)<br>255<br>15        THE WITNESS:  That would be<br>16   the field sales managers, regional<br>17   director. | | |
| OGLE, MARY, (Page 255:19 to 255:22)<br>255<br>19   Q.  So that would be the field<br>20   sales managers could then properly<br>21   advise their field sales call<br>22   personnel? | | |
| OGLE, MARY, (Page 256:2 to 256:5)<br>256<br>2    Q.  On whatever matter is<br>3   contained within the prior<br>4   authorization piece?<br>5    A.  Yes. | | |
| OGLE, MARY, (Page 256:11 to 256:12)<br>256<br>11       (Exhibit Ogle 15 was marked<br>12   for identification.) | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 256:14 to 257:1)<br><br>256<br>14   Q.  Ms. Ogle, I've just handed<br>15  you a document we've marked as Ogle<br>16  15 bears its Bates number<br>17  MRK-AGLAAD0009894 through 9917.  I<br>18  ask you to take a moment to look<br>19  through that document to tell me if<br>20  you've seen that before.<br>21    A.  I don't remember seeing<br>22  this document, no.<br>23    Q.  Okay.  Does it appear that<br>24  you're copied on the document?<br><br>257<br>1   A.  Yes. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 257:11 to 258:17)<br>257<br>11   Q.  Do you recall if the<br>12  ArkLaTex and Texas region analyst<br>13  would have been the analyst that was<br>14  part of your team?<br>15   A.  No. It would have been<br>16  John Harrington, who I refer to as my<br>17  analyst on my team.<br>18   Q.  John Harrington was the<br>19  analyst on your team?<br>20   A.  Correct.<br>21   Q.  This appears to be a<br>22  document forwarding a presentation<br>23  that at least per the first page of<br>24  the presentation was by Warren<br><br>258<br>1 Lambert.<br>2    Were you present at any<br>3 presentation by Warren Lambert<br>4 regarding State of Louisiana<br>5 Medicaid?<br>6   A.  I don't recall that I was<br>7 present here, no.<br>8   Q.  The next page refers to<br>9 Measuring the Impact.<br>10   A.  Uh-huh.<br>11   Q.  It says, The impact of the<br>12 Medicaid PDL began with June '02<br>13 data.<br>14    Do you have any<br>15 recollection being in any discussions<br>16 regarding the impact of Louisiana<br>17 Medicaid PDL on Merck sales? | | |
| OGLE, MARY, (Page 258:20 to 258:21)<br>258<br>20    THE WITNESS: I don't<br>21 recall, no. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 258:23 to 259:18) <br><br> 258 <br> 23   Q.  Do you recall being present <br> 24  in any discussions regarding the <br><br> 259 <br> 1  impact of Medicaid, the <br> 2  implementation of Louisiana <br> 3  Medicaid's PDL on March 6? <br> 4    A.  I can remember Warren <br> 5  coming over to my boss and discussing <br> 6  it.  It was their discussion.  I was <br> 7  like in the room on the side and he <br> 8  came in.  I remember that discussion. <br> 9    Q.  Do you remember when that <br> 10  discussion would have taken place? <br> 11    A.  No, I do not. <br> 12    Q.  Who was your boss that <br> 13  Warren was -- <br> 14    A.  Mike Kelly. <br> 15    Q.  Mike Kelly.  And what was <br> 16  Mike Kelly's title? <br> 17    A.  He was our managed care <br> 18  director. | | |
| OGLE, MARY, (Pages 260:20 to 261:4) <br><br> 260 <br> 20    Q.  Do you have any independent <br> 21  recollection of what the impact of <br> 22  Vioxx not being placed on Louisiana's <br> 23  preferred drug list was on Merck <br> 24  sales? <br><br> 261 <br> 1    A.  Not specifically, no. <br> 2    Q.  Okay.  How about generally? <br> 3    A.  Generally, we lost <br> 4  business, yes. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 261:9 to 261:14)<br>261<br>9    Q.  Was it a significant loss<br>10  in the Medicaid market?  In other<br>11  words, not referring to the market in<br>12  general or what their sales in<br>13  general were, but just with respect<br>14  to the Louisiana Medicaid market? | | |
| OGLE, MARY, (Page 261:17 to 261:18)<br>261<br>17        THE WITNESS:  I would say<br>18  yes. | | |
| OGLE, MARY, (Pages 261:20 to 262:8)<br>261<br>20    Q.  Do you recall when Vioxx<br>21  was given preferred drug status in<br>22  the Louisiana Medicaid program?<br>23    A.  I don't remember the exact<br>24  time, no.<br><br>262<br>1    Q.  I mean do you recall that<br>2  that happened?<br>3    A.  Yes, I believe so.<br>4    Q.  Do you have any<br>5  recollection as to the impact of that<br>6  event on Merck sales of Vioxx in the<br>7  Louisiana Medicaid?<br>8    A.  No.  I left shortly after. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 263:8 to 263:23)<br>263<br>8     Q.  Let me refer you to the<br>9   page ending 901.<br>10     A.  Okay.<br>11     Q.  It says Forecasting Sales.<br>12     A.  Uh-huh.<br>13     Q.  Does that refresh your<br>14   recollection as to whether analysts<br>15   at Merck had any involvement in<br>16   forecasting sales as a result of the<br>17   implementation of Louisiana Medicaid<br>18   preferred drug list?<br>19     A.  I wasn't part of those<br>20   discussions to see it happen or not<br>21   happen.<br>22     Q.  You don't have any reason<br>23   to believe that it didn't happen? | | |
| OGLE, MARY, (Page 264:2 to 264:3)<br>264<br>2       THE WITNESS:  I don't know<br>3   one way or the other. | | |
| OGLE, MARY, (Page 265:9 to 265:10)<br>265<br>9       (Exhibit Ogle 16 was marked<br>10   for identification.) | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 265:12 to 268:2) | | |

265

12    Q.  I ask you to take a minute
13  to review that document and let me
14  know if you've seen it before,
15  please.
16    A.  Sure.  Yes.
17    Q.  Okay.  You have seen the
18  document before?
19    A.  Yes.
20    Q.  When have you seen the
21  document before?
22    A.  Yes.
23    Q.  Do you recall seeing it
24  before yesterday?

266

1    A.  I don't remember this
2  document before yesterday.
3    Q.  Did seeing this document
4  refresh your recollection as to
5  whether you were -- whether you had
6  drafted the customer profile for
7  Louisiana Medicaid?
8    A.  It did not refresh my
9  memory, no.
10    Q.  Do you know whether you
11  were involved in drafting a customer
12  profile for Louisiana Medicaid?
13    A.  I'm sure I was because my
14  name's on it.
15    Q.  But you have no independent
16  recollection of having done so?
17    A.  I don't, no.
18    Q.  You've got to let me
19  finish.
20        Yes, you have no
21  independent recollection of having
22  prepared a customer profile for
23  Louisiana Medicaid?
24    A.  No.

267

1    Q.  I refer you to the page of
2  the document ending in 293.  Under
3  Total Drug Spend and Total Merck
4  Product Spend.  Do you see that

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 265:12 to 268:2)<br>267<br>5 heading?<br>6    A.  I do.<br>7    Q.  Okay.  Do you see where it<br>8 says, The overall loss in 2002 due to<br>9 June '02 implementation of the PDL is<br>10 estimated to be 6.7 M.<br>11      Is that referring to<br>12 million?<br>13    A.  I assume so, yes.<br>14    Q.  As the author of the<br>15 document you would believe that<br>16 refers to 6.7 million?<br>17    A.  One of the authors of the<br>18 document, yes.<br>19    Q.  Do you know whether you<br>20 were the author of this section?<br>21    A.  I do not recall, no.<br>22    Q.  Do you know what the source<br>23 of that information would have been?<br>24    A.  I don't.<br><br>268<br>1    Q.  Do you believe that would<br>2 have been your analyst? | | |
| OGLE, MARY, (Page 268:5 to 268:7)<br>268<br>5     THE WITNESS:  I don't<br>6 remember where this came from to<br>7 answer that one way or the other. | | |
| OGLE, MARY, (Page 268:10 to 268:16)<br>268<br>10    A.  It could have been from<br>11 Holly.  I don't know.<br>12    Q.  If I represented to you<br>13 that I took Ms. Jacques' deposition<br>14 and she said it came from you, would<br>15 you have any reason to disagree with<br>16 her? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 268:19 to 268:20)<br>          268<br>19     THE WITNESS:  I do not know<br>20  one way or the other.  I don't. | | |
| OGLE, MARY, (Page 272:7 to 272:20)<br>          272<br>7   Q.  Do you know who the<br>8  intended audience of this customer<br>9  profile was?<br>10    A.  I don't remember the<br>11  document to know what my intent was<br>12  in sending it.  I can see who it is<br>13  sent to, but I don't recall the<br>14  intent.<br>15    Q.  Let me refer you to page<br>16  ending 295 where you write with<br>17  respect to Merck Strategy and<br>18  Tactics.  Do you recall drafting any<br>19  documents with respect to Merck<br>20  Strategy and Tactics? | | |
| OGLE, MARY, (Pages 272:23 to 273:1)<br>          272<br>23     THE WITNESS:  I don't<br>24  recall.  I don't know that I put that<br><br>          273<br>1  in specifically. | | |
| OGLE, MARY, (Page 273:3 to 273:6)<br>          273<br>3   Q.  If Holly Jacques<br>4  represented that it was you that put<br>5  that in there, do you have any reason<br>6  to disagree with her? | | |
| OGLE, MARY, (Page 273:9 to 273:12)<br>          273<br>9     THE WITNESS:  I could have<br>10  pulled it from someplace else,<br>11  someone else.  These documents have<br>12  many authors, gathering data. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 273:14 to 274:23)<br><br><div align="center">273</div>14    Q.  I'm not referring to what<br>15  the source of that information was.<br>16  I'm referring to who of the two<br>17  authors would have put it in.<br>18     A.  I don't recall to be<br>19  honest.  I don't recall this.<br>20     Q.  Did you have any<br>21  responsibility for developing --<br>22  having seen this, does this refresh<br>23  your recollection as to whether you<br>24  had any responsibility for developing<br><br><div align="center">274</div>1  Merck Strategy and Tactics with<br>2  respect to Louisiana Medicaid?<br>3     A.  Merck would have ultimately<br>4  been the author of the strategy.<br>5     Q.  Who at Merck would have<br>6  been the author of the strategy?<br>7     A.  I don't recall.<br>8     Q.  You have no idea?<br>9     A.  No.<br>10     Q.  You were the national<br>11  account executive of Louisiana<br>12  Medicaid and you have no idea who the<br>13  Merck person would be?<br>14     A.  It's about five percent of<br>15  what I do --<br>16     Q.  I'm sorry.  You have to let<br>17  me finish the question.<br>18     A.  Sure.<br>19     Q.  You have no idea who the<br>20  Merck person responsible for<br>21  developing strategy for Louisiana<br>22  Medicaid would have been?<br>23         MR. ISMAIL:  Objection to | | |
| OGLE, MARY, (Page 275:1 to 275:2)<br><br><div align="center">275</div>1         THE WITNESS:  I can't<br>2  remember six years ago. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 275:4 to 275:15)<br>275<br><br>4    Q.   Under the first bullet<br>5   point, Continue to work with the<br>6   State of Louisiana and the DHH<br>7   through Provider Synergies to ensure<br>8   unrestricted access for key Merck<br>9   products.<br>10        Do you recall that being a<br>11   part of Merck's strategy with respect<br>12   to Louisiana Medicaid?<br>13    A.  I don't recall, no.<br>14    Q.  Do you have any idea what<br>15   you meant when you wrote that? | | |
| OGLE, MARY, (Page 275:18 to 275:18)<br>275<br>18        THE WITNESS:  I don't. | | |
| OGLE, MARY, (Pages 275:20 to 276:1)<br>275<br><br>20    Q.  Do you have any idea of<br>21   what would have been entailed in<br>22   working with the State of Louisiana<br>23   and the DHH through Provider<br>24   Synergies to ensure unrestricted<br><br>276<br><br>1   access for key Merck products? | | |
| OGLE, MARY, (Page 276:4 to 276:6)<br>276<br><br>4        THE WITNESS:  I don't<br>5   remember the exact processes any<br>6   more. | | |
| OGLE, MARY, (Page 276:8 to 276:11)<br>276<br><br>8    Q.  Do you know whether sales<br>9   personnel calling on Louisiana P & T<br>10   committee members would have been<br>11   part of that strategy? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 276:14 to 276:15)<br>276<br>14　　　THE WITNESS:  No.  I don't<br>15  remember. | | |
| OGLE, MARY, (Page 276:17 to 276:20)<br>276<br>17　　Q.  You don't recall?<br>18　　A.  I don't recall, no.<br>19　　Q.  You can't say whether it<br>20  was, can't say whether it wasn't? | | |
| OGLE, MARY, (Page 276:23 to 276:24)<br>276<br>23　　　THE WITNESS:  Again, I<br>24  don't recall. | | |
| OGLE, MARY, (Page 277:2 to 277:21)<br>277<br>2　　Q.  Do you know who would have<br>3  been involved in implementing this<br>4  strategy identified here as continue<br>5  to work with the State of Louisiana<br>6  and DHH through Provider Synergies to<br>7  ensure unrestricted access for key<br>8  Merck products?<br>9　　A.  No.  Because I don't<br>10  remember -- I don't recall the<br>11  context of that, no.<br>12　　Q.  How about here where you<br>13  write, Maximize share for Merck<br>14  products preferred on the PDL.<br>15　　　Do you know what that's<br>16  referring to?<br>17　　A.  I'm not sure I wrote that,<br>18  and I'm not sure the context.<br>19　　Q.  Again, if Holly Jacques<br>20  said that you wrote that, do you have<br>21  any reason to disagree with that? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 277:24 to 278:2) <br><br> 277 <br> 24      THE WITNESS:  I don't know <br><br> 278 <br> 1  one way or the other.  It's six years <br> 2  ago. | | |
| OGLE, MARY, (Pages 278:4 to 279:1) <br><br> 278 <br> 4    Q.  But you have no independent <br> 5  recollection of a strategy to <br> 6  maximize share for Merck products <br> 7  preferred on the PDL? <br> 8    A.  I don't recall writing <br> 9  this. <br> 10    Q.  I'm not asking just about <br> 11  this now.  I'm just asking whether <br> 12  you have any independent recollection <br> 13  what it means to maximize the share <br> 14  for Merck products preferred on the <br> 15  PDL? <br> 16    A.  No. <br> 17    Q.  How about here in the final <br> 18  bullet point where it says, Continue <br> 19  to develop product advocates with <br> 20  Medicaid P & T and DUR committee <br> 21  members. <br> 22     Do you have any <br> 23  recollection of that being a strategy <br> 24  that was implemented with respect to <br><br> 279 <br> 1  Louisiana Medicaid? | | |
| OGLE, MARY, (Page 279:4 to 279:5) <br><br> 279 <br> 4    THE WITNESS:  In this <br> 5  context, no. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 279:7 to 279:15)<br><br>279<br><br>7    Q.  Do you understand the<br>8   context in which you wrote this?<br>9    A.  I don't know if I wrote<br>10  this.  I can't remember.  I don't.<br>11    Q.   Do you know who would have<br>12  been responsible for implementing the<br>13  strategy to develop product advocates<br>14  with Medicaid P & T and DUR committee<br>15  members? | | |
| OGLE, MARY, (Page 279:18 to 279:21)<br><br>279<br><br>18       THE WITNESS:  I'm not sure<br>19  what the strategy looks like, or I'm<br>20  not sure, no.  I would have to know<br>21  more.  I don't remember. | | |
| OGLE, MARY, (Pages 279:23 to 280:3)<br><br>279<br><br>23  Q.  So if the strategy -- you<br>24  can't say one way or the other<br><br>280<br><br>1   whether the strategy would have<br>2   involved sales representatives<br>3   calling on P & T committee members? | Lack of foundation; speculation | *Overruled* |
| OGLE, MARY, (Page 280:6 to 280:6)<br><br>280<br><br>6   THE WITNESS:  I don't know. | Lack of foundation; speculation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 280:8 to 280:23)<br><br>                                  280<br>8  Q.  You can't say it did<br>9  happen; you can't say it didn't?<br>10    A.  Right.  Because I didn't<br>11  lead the field sales office and they<br>12  were not under my jurisdiction.<br>13    Q.  You would have no idea as<br>14  to what sales materials may have been<br>15  used or may not have been used on any<br>16  calls on P & T committee members?<br>17    A.  I don't recall, no.<br>18    Q.  You have no idea what<br>19  messages may have been delivered to P<br>20  & T committee members in this effort<br>21  to develop product advocates with<br>22  Medicaid P & T and DUR committee<br>23  members? | Lack of foundation; speculation | |
| OGLE, MARY, (Page 281:2 to 281:2)<br><br>                                    281<br>2  THE WITNESS:  No. | Lack of foundation; speculation | |
| OGLE, MARY, (Page 281:17 to 281:23)<br><br>                                  281<br>17    Q.  Have you ever heard the<br>18  term value proposition with respect<br>19  to Merck products, the value<br>20  proposition?<br>21    A.  I've heard the term, yes.<br>22    Q.  Do you know what that term<br>23  means? | | |
| OGLE, MARY, (Page 282:2 to 282:3)<br><br>                                    282<br>2      THE WITNESS:  Not<br>3  specifically, no. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 282:5 to 282:14)<br><br>282<br>5    Q.  Do you have a general idea<br>6  as to what that term meant as it was<br>7  used in Merck?<br>8    A.  Yes.<br>9    Q.  As a general proposition<br>10  what does that mean?<br>11    A.  Probably the benefit of the<br>12  drug based on the price of the drug,<br>13  but I'm not sure exactly definition<br>14  of value. | | |
| OGLE, MARY, (Page 283:16 to 283:21)<br><br>283<br>16   Q.  Do you have any idea<br>17  whether the concept of value<br>18  proposition was used in connection<br>19  with this strategy of developing<br>20  product advocates with Medicaid P & T<br>21  and DUR members? | Lack of foundation; speculation | _Sustained_ |
| OGLE, MARY, (Pages 283:24 to 284:3)<br><br>283<br>24   THE WITNESS:  I have no<br><br>284<br>1  idea what that is referring to nor<br>2  linking your question of value<br>3  proposition to it. | Lack of foundation; speculation | |
| OGLE, MARY, (Page 284:5 to 284:7)<br><br>284<br>5    Q.  You can't say it did<br>6  happen; you can't say it didn't;<br>7  correct? | Lack of foundation; speculation | |
| OGLE, MARY, (Page 284:10 to 284:11)<br><br>284<br>10    THE WITNESS:  Just can't<br>11  link the two to answer. | Lack of foundation; speculation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 284:13 to 284:16)<br><br>284<br>13  Q.  Just so we're clear, you<br>14  can't say that there is a link; you<br>15  can't say that there is not a link;<br>16  correct? | Lack of foundation; speculation | |
| OGLE, MARY, (Pages 284:20 to 285:3)<br><br>284<br>20  Q.  You're not here testifying<br>21  no, there's no link, you're wrong and<br>22  I'll tell you why?<br>23    A.  Right.<br>24    Q.  And would that be true of<br><br>285<br>1  these other bullet points as well,<br>2  maximizing share for Merck products<br>3  preferred on the PDL? | Lack of foundation; speculation | |
| OGLE, MARY, (Page 285:6 to 285:7)<br><br>285<br>6   THE WITNESS:  To what?  To<br>7  what?  I'm not sure of your question. | Lack of foundation; speculation | |
| OGLE, MARY, (Page 285:9 to 285:12)<br><br>285<br>9  Q.  The same question I asked<br>10  before.  You can't say whether<br>11  there's a link between that and the<br>12  value proposition? | Lack of foundation; speculation | |
| OGLE, MARY, (Page 285:15 to 285:15)<br><br>285<br>15   THE WITNESS:  No. | Lack of foundation; speculation | |
| OGLE, MARY, (Page 285:20 to 285:22)<br><br>285<br>20  Q.  And again, you can't say<br>21  there was a link; you can't say there<br>22  wasn't? | Lack of foundation; speculation | |
| OGLE, MARY, (Page 286:1 to 286:1)<br><br>286<br>1   THE WITNESS:  No. | Lack of foundation; speculation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 286:3 to 286:12)<br><br>3   Q.  And again, is that also<br>4   true, you can't say that there was a<br>5   link; you can't say that there wasn't<br>6   with respect to this first bullet<br>7   point of strategy and tactics which<br>8   is, Continue to work with the State<br>9   of Louisiana and the DHH through<br>10  Provider Synergies to ensure<br>11  unrestricted access to key Merck<br>12  products?<br><br>286 | Lack of foundation; speculation | |
| OGLE, MARY, (Page 286:15 to 286:18)<br><br>15   THE WITNESS:  I'm not even<br>16   sure the reference of this versus<br>17   value proposition, so I just can't<br>18   answer it.<br><br>286 | Lack of foundation; speculation | |
| OGLE, MARY, (Page 286:20 to 286:21)<br><br>20   Q.  You just can't answer it?<br>21   A.  Right.<br><br>286 | Lack of foundation; speculation | |
| OGLE, MARY, (Pages 286:22 to 287:3)<br><br>22   Q.  And again, just so we're<br>23   clear, you're not going to come back<br>24   later and say, Oh, no, Mr. Murray,<br><br>1   what I meant was there's no link<br>2   between the two and here, I'll tell<br>3   you why?<br><br>286<br><br>287 | Argumentative | |
| OGLE, MARY, (Page 287:15 to 287:16)<br><br>15   THE WITNESS:  I'm insulted.<br>16   I understand what you're asking.  No.<br><br>287 | Argumentative | |
| OGLE, MARY, (Page 288:8 to 288:9)<br><br>8        (Exhibit Ogle 17 was marked<br>9   for identification.)<br><br>288 | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 288:8 to 288:11)<br>288<br>8      (Exhibit Ogle 17 was marked<br>9  for identification.) | | |
| OGLE, MARY, (Page 288:11 to 288:14)<br>288<br>11  Q.  Take a second to look at<br>12  Bates number MRK-AGLAAD0010034<br>13  through 37 and let me know if you've<br>14  seen that document before. | | |
| OGLE, MARY, (Page 288:18 to 288:18)<br>288<br>18      THE WITNESS:  Yes, I have. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 288:20 to 290:2)<br><br>288<br>20    Q.  When did you see that<br>21  document?<br>22    A.  At one of our reviews I<br>23  believe.  I really can't recall if<br>24  yesterday was the first but I have<br><br>289<br>1  seen it, yes.<br>2    Q.  Does this refresh your<br>3  recollection as to whether you had<br>4  any involvement in directing sales<br>5  representatives to call on P & T<br>6  committee members?<br>7    A.  I had no -- it does not<br>8  refresh any recollection of directing<br>9  representatives to call on P & T<br>10  members.<br>11    Q.  Well, in this document<br>12  Holly Jacques writes to you Mary,<br>13  here's a list of members of Louisiana<br>14  P & T committee.<br>15        In preparation for the<br>16  upcoming meeting on May 21st, it<br>17  would be helpful to have our<br>18  representatives touch base with the<br>19  members of the committee to ensure<br>20  that they have the latest and<br>21  greatest information on the following<br>22  products up for review, and then it<br>23  lists Vioxx.<br>24    A.  Uh-huh.<br><br>290<br>1    Q.  Do you know why Ms. Jacques<br>2  sent that to you? | | |
| OGLE, MARY, (Page 290:5 to 290:7)<br>290<br>5      THE WITNESS:  I can't<br>6  recall the why exactly, because it's<br>7  six years ago, no. | | |

92

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 290:9 to 291:8)<br><br>                      290<br>9    Q.  Did you have any role in<br>10  seeing that representatives touch<br>11  base with members of the committee to<br>12  ensure that they have the latest and<br>13  greatest information on Vioxx?<br>14    A.  No.  That wasn't in my<br>15  scope of responsibilities to direct<br>16  the field sales force.<br>17    Q.  Did you send this request<br>18  on to anyone?<br>19    A.  I don't recall.<br>20    Q.  Do you know whether that<br>21  happened?  Do you know whether<br>22  representatives called on members of<br>23  the P & T committee --<br>24    A.  I don't recall.<br><br>                      291<br>1    Q.  -- to give them the latest<br>2  and greatest in preparation for this<br>3  May 21st meeting?<br>4    A.  I don't recall.<br>5    Q.  You don't recall whether<br>6  that happened.  I hate to belabor the<br>7  point, but you can't say that it<br>8  didn't happen; correct? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 290:9 to 291:8)<br><br>290<br><br>9    Q.   Did you have any role in<br>10  seeing that representatives touch<br>11  base with members of the committee to<br>12  ensure that they have the latest and<br>13  greatest information on Vioxx?<br>14    A.   No.  That wasn't in my<br>15  scope of responsibilities to direct<br>16  the field sales force.<br>17    Q.   Did you send this request<br>18  on to anyone?<br>19    A.   I don't recall.<br>20    Q.   Do you know whether that<br>21  happened?  Do you know whether<br>22  representatives called on members of<br>23  the P & T committee --<br>24    A.   I don't recall.<br><br>291<br><br>1    Q.   -- to give them the latest<br>2  and greatest in preparation for this<br>3  May 21st meeting?<br>4    A.   I don't recall.<br>5    Q.   You don't recall whether<br>6  that happened.  I hate to belabor the<br>7  point, but you can't say that it<br>8  didn't happen; correct? | | |
| OGLE, MARY, (Page 291:11 to 291:14)<br><br>291<br><br>11  THE WITNESS:  I don't<br>12  recall one way or the other.  It<br>13  wasn't my responsibility to direct<br>14  them. | | |
| OGLE, MARY, (Page 291:16 to 291:20)<br><br>291<br><br>16    Q.   If it wasn't your<br>17  responsibility to direct them, then<br>18  why is this directive being sent to<br>19  you or this request being sent to<br>20  you? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 291:23 to 291:24) 291<br><br>23      THE WITNESS:  I don't<br>24   recall. | | |
| OGLE, MARY, (Page 292:2 to 292:5) 292<br><br>2   Q.  Well, based on your role as<br>3   national account executive, do you<br>4   have any understanding as to why it<br>5   would have been sent to you? | Speculation | |
| OGLE, MARY, (Page 292:8 to 292:11) 292<br><br>8   THE WITNESS:  No.  It's six<br>9   years ago, no.<br>10       (Exhibit Ogle 18 was marked<br>11   for identification.) | Speculation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 292:17 to 294:18)<br><div align="center">292</div>17   Q.  Take a moment to look at<br>18  that document and let me know if<br>19  you've seen it before.<br>20   A.  I saw this yesterday.<br>21   Q.  Did you write this<br>22  document?<br>23   A.  It appears I did.<br>24   Q.  You have no reason to<br><br><div align="center">293</div>1  believe that you didn't, right?<br>2   A.  No.  I don't remember the<br>3  document, though.<br>4   Q.  You don't recall seeing it<br>5  before your review yesterday?<br>6   A.  No.<br>7   Q.  Subject line is<br>8  Push-through - Pull-through Tactical<br>9  Plans for Louisiana Medicaid.  Do you<br>10  know what that's referring to or you<br>11  were referring to when you wrote<br>12  this?<br>13   A.  No.  I don't recall which<br>14  plans to be specific, no.  I don't<br>15  recall this memo even.<br>16   Q.  Okay.  And you write to<br>17  Marc Dervishian.  Do you remember<br>18  Marc Dervishian?<br>19   A.  I remember him, but I do<br>20  not remember what role he was in when<br>21  I sent this to him.<br>22   Q.  Okay.<br>23   A.  And why I sent it to him.<br>24  I don't recall to be honest.<br><br><div align="center">294</div>1   Q.  Do you remember what roles<br>2  he held at any time?<br>3   A.  I remember he was a region<br>4  sales director in Atlanta, and I<br>5  remember at the very end of my tenure<br>6  I reported in to him.  What month<br>7  that was in, I cannot tell you. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 8      Q.  So he was your direct<br>9  report, your boss?<br>10     A.  At one point for a very<br>11  short time, but I don't recall if he<br>12  was my boss here, and I don't believe<br>13  so, because this is May and I left in<br>14  the back end of the year and I only<br>15  worked for him for maybe, I don't<br>16  even think it was two months.<br>17        But I don't remember<br>18  exactly.<br><br>OGLE, MARY, (Page 295:2 to 295:24)<br>                                   295<br>2        You write, Hi Marc, Above<br>3  are two examples of the tactical<br>4  plans that the office based and<br>5  specialty teams have successfully<br>6  implemented in Louisiana in an effort<br>7  to push and pull-through Merck<br>8  business in response to the Medicaid<br>9  PDL.<br>10        Does that refresh your<br>11  recollection as to whether you ever<br>12  received the tactical plan that we<br>13  saw earlier?<br>14     A.  No, it does not.<br>15     Q.  You don't know if this is<br>16  referring to the Louisiana Medicaid<br>17  Tactical Plan?<br>18     A.  I don't know what this is<br>19  referring to.  I don't recall.<br>20     Q.  Do you have any reason to<br>21  believe that the document that we saw<br>22  labeled tactical plan for Louisiana<br>23  Medicaid is something other than this<br>24  document referenced in here? | | |
| OGLE, MARY, (Page 296:3 to 296:3)<br>                                   296<br>3        THE WITNESS:  I don't. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 296:5 to 296:20)<br>296<br>5     Q.  It says, that the office<br>6   based and specialty teams have<br>7   successfully implemented in<br>8   Louisiana.  That's referring to the<br>9   sales teams, isn't it?<br>10     A.  I would believe so.<br>11     Q.  Okay.  What did you mean<br>12   when you said that they successfully<br>13   implemented their tactical plans in<br>14   Louisiana?<br>15     A.  I have no idea.  It was six<br>16   years ago.<br>17     Q.  Do you think you were<br>18   referring to the fact that Vioxx was<br>19   selected to be on the Louisiana<br>20   Medicaid preferred drug list? | | |
| OGLE, MARY, (Page 296:23 to 296:24)<br>296<br>23     THE WITNESS:  I can't tell<br>24   from this memo. | | |
| OGLE, MARY, (Page 297:2 to 297:4)<br>297<br>2     Q.  You just don't know either<br>3   way?  You can't say it didn't happen?<br>4     A.  I can't tell from the memo. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 297:14 to 298:11)<br><br>         297<br>14    Q.  It says, These plans were<br>15  developed in collaboration with the<br>16  managed care, office and specialty<br>17  sales teams, and are used as<br>18  templates for each therapeutic area.<br>19      Then you go on to write, I<br>20  conduct monthly teleconferences with<br>21  each of the product teams to ensure<br>22  that the plans make sense and are<br>23  successfully implemented.<br>24      Did I read that correctly?<br><br>         298<br>1    A.  Yes.<br>2    Q.  Do you know what you meant<br>3  when you wrote that the plans were<br>4  developed in collaboration with the<br>5  managed care office and specialty<br>6  sales teams?<br>7    A.  No.  Because I'm not sure<br>8  which plans they're referring to, no,<br>9  I do not.<br>10    Q.  You don't think it's<br>11  referring to the tactical plans? | | |
| OGLE, MARY, (Page 298:14 to 298:15)<br>         298<br>14      THE WITNESS:  I don't know<br>15  specifically. | | |
| OGLE, MARY, (Page 298:17 to 298:19)<br>         298<br>17    Q.  As the author of the<br>18  document, is there any other way that<br>19  you interpret this? | | |
| OGLE, MARY, (Page 298:22 to 298:24)<br>         298<br>22      THE WITNESS:  I don't know<br>23  how to interpret it, no.  I don't<br>24  recall the memo.  It's six years ago. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 299:2 to 299:4)<br>            299<br>2    Q.  As the author of the<br>3  document, can you tell me that's an<br>4  unreasonable interpretation? | | |
| OGLE, MARY, (Page 299:7 to 299:10)<br>            299<br>7      THE WITNESS:  I don't<br>8  remember writing it, so I'm sure I<br>9  did, but I don't remember.  So I<br>10  can't tell you. | | |
| OGLE, MARY, (Page 299:12 to 299:23)<br>            299<br>12    Q.  I understand that.  But you<br>13  know how you use words.  I mean you<br>14  know how --<br>15    A.  No, I don't.  Not six years<br>16  ago versus now.  I've had -- I've<br>17  learned an awful lot and changed.<br>18  No, I do not know what I was thinking<br>19  six years ago.<br>20    Q.  So you can't tell me<br>21  whether or not an interpretation of<br>22  this document is reasonable even<br>23  though you yourself wrote it? | | |
| OGLE, MARY, (Page 300:2 to 300:4)<br>            300<br>2      THE WITNESS:  I'm telling<br>3  you I can't recall what I was<br>4  thinking six years ago. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 300:6 to 302:3) | | |

OGLE, MARY, (Pages 300:6 to 302:3)

                                          300
6     Q.  Were you reporting directly
7  that you conduct monthly telephone
8  conferences with each of the product
9  teams?
10    A.  I would assume so, yes.
11    Q.  You recall doing that,
12  conducting monthly --
13    A.  No, I don't remember it.
14    Q.  Do you know what you meant
15  by product teams?
16    A.  I would say brand teams.
17    Q.  Okay.  Does that include
18  sales force?
19    A.  No.
20    Q.  Okay.  What is a brand
21  team?
22    A.  Marketers, the marketing
23  teams.
24    Q.  They're the ones that come
                                          301
1  up with the strategies?
2     A.  Correct.
3     Q.  And you were holding
4  monthly telephone conferences with
5  them to come up with strategies?
6     A.  No.  To understand the
7  strategy.
8     Q.  Okay.  And to make sure
9  that the plans are successfully
10  implemented; correct?
11    A.  To ensure that they're
12  aligned with strategy.
13    Q.  Explain that to me.  How is
14  it that your -- if you have no
15  responsibility for implementing
16  strategy, how is it that you ensure
17  that the plans are successfully
18  implemented?
19    A.  Then I would talk to my
20  field sales leadership team to share
21  what I learned and then it's their
22  decision as to how they implement.
23    Q.  But you have no

101

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 24  recollection as to what those<br>                              302<br>1   strategies were that they<br>2   implemented?<br>3   A.  No, I do not. | | |
| OGLE, MARY, (Pages 302:6 to 304:10)<br>                              302<br>6   sorry, not the end -- fifth paragraph<br>7   down.<br>8         You write, The OBRs have<br>9   worked very closely with their<br>10  specialty sales counterparts to<br>11  ensure that the targets Medicaid MCIs<br>12  are motivated to action.<br>13        Do you know what MCIs is<br>14  referring to there?<br>15     A.  I do not.  I don't<br>16  remember.<br>17     Q.  Do you know how it was that<br>18  you would have known that the OBRs<br>19  were working very closely with<br>20  special sales counterparts?<br>21     A.  No.  Because I don't recall<br>22  any conversations or where this came<br>23  -- I just don't recall this.<br>24     Q.  Well, you said you didn't | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS<br>&<br>DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 303<br>1  have any role for -- I mean any role<br>2  in directing sales forces.<br>3     A.  Uh-huh.<br>4     Q.  Does this change your<br>5  recollection?<br>6     A.  No.<br>7     Q.  It says you work very<br>8  closely with the specialty sales<br>9  counterparts to ensure that the<br>10  targets Medicaid MCIs are motivated<br>11  to action.<br>12        MR. ISMAIL:  No.  It says<br>13  the OBRs work very closely.  Not her.<br>14        MR. MURRAY:  I'm sorry.<br>15  You're correct.<br>16  BY MR. MURRAY:<br>17     Q.  How did you gain that<br>18  knowledge that the OBRs were working<br>19  very closely to ensure that the<br>20  targets Medicaid MCIs are motivated<br>21  to action?<br>22     A.  I don't remember the<br>23  process.<br>24     Q.  You also write, In addition<br><br>304<br>1  to working with the OBRs, I also work<br>2  very closely with the government<br>3  affairs and the SC region medical<br>4  director to regularly call on the<br>5  chief of P & T pharmacy director.<br>6     A.  Dr. Culotta.<br>7     Q.  Does this refresh your<br>8  recollection as to whether you<br>9  regularly called on the chief of P &<br>10  T pharmacy? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 304:1 to 304:10) <br> 304 <br> 1  to working with the OBRs, I also work <br> 2  very closely with the government <br> 3  affairs and the SC region medical <br> 4  director to regularly call on the <br> 5  chief of P & T pharmacy director. <br> 6     A.  Dr. Culotta. <br> 7     Q.  Does this refresh your <br> 8  recollection as to whether you <br> 9  regularly called on the chief of P & <br> 10  T pharmacy? | | |
| OGLE, MARY, (Page 304:13 to 304:14) <br> 304 <br> 13       THE WITNESS:  We only <br> 14  called on him twice. | | |
| OGLE, MARY, (Page 304:16 to 304:24) <br> 304 <br> 16     Q.  Does that not correspond <br> 17  with calling on him twice? <br> 18     A.  I don't know.  I don't <br> 19  remember what I was thinking or when <br> 20  we called him and versus where this <br> 21  memo was.  No, I do not know. <br> 22     Q.  Does this memo indicate <br> 23  that you called on him more than <br> 24  twice? | | |
| OGLE, MARY, (Page 305:3 to 305:4) <br> 305 <br> 3       THE WITNESS:  It doesn't <br> 4  say how many times I called on him. | | |
| OGLE, MARY, (Page 305:6 to 305:13) <br> 305 <br> 6     Q.  Well, as the author of this <br> 7  document, how do you use the word <br> 8  regularly? <br> 9     A.  I don't remember what I was <br> 10  thinking six years ago. <br> 11     Q.  How do you use the word <br> 12  regularly now?  Does it mean more <br> 13  than twice? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 305:15 to 305:15)<br><br>                 305<br>15   THE WITNESS:  I don't know. | | |
| OGLE, MARY, (Pages 305:17 to 306:2)<br><br>                 305<br>17    Q.  Okay.  You go on to write,<br>18  Our goal is to ensure that they fully<br>19  understand the value that our product<br>20  portfolio provides to the appropriate<br>21  patient population versus the<br>22  competition.<br>23     Is that a correct statement<br>24  of the goal that you had in working<br><br>                 306<br>1  with OBRs, government affairs and SC<br>2  regional medical director? | | |
| OGLE, MARY, (Page 306:5 to 306:8)<br><br>                 306<br>5    THE WITNESS:  I don't<br>6  remember what I meant by that to be<br>7  honest.  I don't know who they is,<br>8  so... | | |
| OGLE, MARY, (Page 306:10 to 306:12)<br><br>                 306<br>10    Q.  Do you think they is<br>11  referring to the chief of the P & T<br>12  and the pharmacy director? | | |
| OGLE, MARY, (Page 306:15 to 306:17)<br><br>                 306<br>15    THE WITNESS:  It doesn't<br>16  say -- probably.  I don't know.  I<br>17  don't know. | | |
| OGLE, MARY, (Page 307:1 to 307:2)<br><br>                 307<br>1    (Exhibit Ogle 19 was marked<br>2  for identification.) | | |
| OGLE, MARY, (Page 307:21 to 307:21)<br><br>                 307<br>21  MRK-EBE10027930. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 308:3 to 308:18)<br>308<br>Q. Do you recognize the document?<br>A. No.<br>Q. Don't recall ever seeing it before?<br>A. No.<br>Q. Okay. The document is dated July 8, 2003. It appears to be an e-mail, e-mail chain that first forwards -- I'm sorry -- first is an e-mail to you from Lisa Bishop. Do you remember working with Lisa Bishop?<br>A. Yes.<br>Q. The first e-mail is dated June 27, 2003. What was Ms. Bishop's | | |
| OGLE, MARY, (Page 309:15 to 309:18)<br>309<br>Q. Do you think she was referring to the success in getting Merck products on the Louisiana preferred drug list? | Lack of foundation; speculation | Sustained |
| OGLE, MARY, (Page 309:21 to 309:22)<br>309<br>THE WITNESS: I can't -- I can't tell by this document, no. | Lack of foundation; speculation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 309:24 to 311:3)<br><br>309<br>24    Q.  She goes on to write, I<br><br>310<br>1   have ordered your PA piece from ROME<br>2   and I wondered if you would share<br>3   your tactical plan that you spoke<br>4   about during your presentation.<br>5   Thank you in advance.<br>6         Do you know what tactical<br>7   plan she's referring to?<br>8     A.  I do not, no.<br>9     Q.  Do you recall giving<br>10   presentations where you presented a<br>11   tactical plan to other national<br>12   account executives?<br>13     A.  I do not remember this, no.<br>14     Q.  But you wrote back to her,<br>15   did you not?<br>16     A.  It appears I did, yes.<br>17     Q.  And you wrote back to her<br>18   on July 8, 2003; is that correct?<br>19     A.  Yep.<br>20     Q.  And you write Hi Lisa, I'm<br>21   just back for vacation and read your<br>22   e-mail.  I will send the examples in<br>23   my next e-mail.<br>24         So it would appear at least<br><br>311<br>1   at that time you knew what she was<br>2   talking about when she asked you to<br>3   share your tactical plan; correct? | | |
| OGLE, MARY, (Page 311:6 to 311:8)<br>311<br>6       THE WITNESS:  I don't know<br>7   what I was thinking six years ago in<br>8   that e-mail, no. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 311:10 to 311:12)<br>311<br><br>10    Q.  Well, you didn't contradict<br>11  her and say well, it's not my<br>12  tactical plan, did you? | | |
| OGLE, MARY, (Page 311:15 to 311:18)<br>311<br><br>15        THE WITNESS:  I don't know<br>16  what she was referring to, is your<br>17  question, and I can't tell from that<br>18  e-mail. | | |
| OGLE, MARY, (Page 311:20 to 311:22)<br>311<br><br>20    Q.  At least in this e-mail it<br>21  does not appear that you said it was<br>22  not your tactical plan? | | |
| OGLE, MARY, (Page 311:20 to 311:22)<br>311<br><br>20    Q.  At least in this e-mail it<br>21  does not appear that you said it was<br>22  not your tactical plan? | | |
| OGLE, MARY, (Page 312:2 to 312:3)<br>312<br><br>2  what tactical plan she's referring<br>3  to, no. | | |
| OGLE, MARY, (Page 312:5 to 312:11)<br>312<br><br>5    Q.  I understand that you don't<br>6  know what tactical plan she's<br>7  referring to but, again, at least as<br>8  far as this e-mail it doesn't -- you<br>9  didn't say anything in the return<br>10  e-mail that contradicted her, did<br>11  you? | | |
| OGLE, MARY, (Page 312:14 to 312:16)<br>312<br><br>14        THE WITNESS:  But it<br>15  doesn't say what I'm sending in the<br>16  next e-mail. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 312:18 to 312:22)<br><br>312<br><br>18   Q.  That doesn't answer my<br>19  question, though.  My question is, is<br>20  there anything in this e-mail where<br>21  you say, No, it's not my tactical<br>22  plan? | | |
| OGLE, MARY, (Page 313:1 to 313:4)<br><br>313<br><br>1    THE WITNESS:  I do not see<br>2  that, no.<br>3    (Exhibit Ogle 20 was marked<br>4  for identification.) | | |
| OGLE, MARY, (Page 313:12 to 313:13)<br><br>313<br><br>12   Q.  You've seen it before?<br>13   A.  No.  I don't recall it. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 313:19 to 315:17)<br><br>313<br>19  there.  It's an e-mail string;<br>20  correct?<br>21     A.  Uh-huh.<br>22     Q.  And one of the e-mails is<br>23  one that we discussed earlier?<br>24     A.  Correct.<br><br>314<br>1     Q.  And then there's an e-mail<br>2  that appears to be you forwarding<br>3  that e-mail with some comments; is<br>4  that correct?  I'm talking about the<br>5  very top of the page, the top e-mail.<br>6     A.  Uh-huh.  Yes.  Correct.<br>7     Q.  Okay.  It's from you to<br>8  Eric Smith?<br>9     A.  Uh-huh.<br>10     Q.  And he's a national account<br>11  executive it looks like?<br>12     A.  I don't recall who he was,<br>13  no.<br>14     Q.  In parens you see there NAE<br>15  USHH - MC.  Would that lead you to<br>16  believe he's a national account<br>17  executive with USHH managed care?<br>18     A.  Yes.<br>19     Q.  Michael Pond.  Do you<br>20  recall Michael Pond?<br>21     A.  No, I do not.<br>22     Q.  Okay.  We already discussed<br>23  Holly Jacques.<br>24     A.  Uh-huh.<br><br>315<br>1     Q.  And in this e-mail dated<br>2  June 27, 2003 you write, Hi All, Each<br>3  of you had mentioned that you may<br>4  like a copy of the tactical plans<br>5  that I referenced this past week.<br>6  Below are two examples.<br>7        The Excel template is the<br>8  OBR plan and the one-page plan is an<br>9  example of our template plans for<br>10  specialty.<br>11        I'm forwarding this message | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 12  as it captures some of our activities<br>13  as well.  I hope this helps.<br>14         Does that refresh your<br>15  recollection as to what tactical plan<br>16  you were referring to in that earlier<br>17  e-mail?<br><br>OGLE, MARY, (Page 315:20 to 315:20)<br>           315<br>20        THE WITNESS:  No.<br><br>OGLE, MARY, (Pages 315:22 to 316:15)<br>           315<br>22    Q.  Does the reference to it<br>23  being an Excel template refresh your<br>24  recollection in any way?<br><br>           316<br>1      A.  No.<br>2      Q.  Are you familiar with Excel<br>3  templates?<br>4      A.  I'm assuming it's an Excel<br>5  blank file, yes.<br>6      Q.  Excel spreadsheet, you're<br>7  familiar with that?<br>8      A.  Yes.<br>9      Q.  Do you know who those look<br>10  when they're printed out?<br>11    A.  Yes.<br>12    Q.  We had those tactical plans<br>13  that looked like they were on some<br>14  kind of spreadsheet.  Does that look<br>15  like an Excel template to you? |  |  |
| OGLE, MARY, (Page 316:18 to 316:18)<br>           316<br>18  THE WITNESS:  I can't tell. |  |  |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 316:20 to 317:2)<br><br>316<br>20     Q.  I'm sorry.  Did you answer<br>21   that last question as to whether it<br>22   appeared to be an Excel template<br>23   for -- whether the earlier document<br>24   we saw that said Louisiana Tactical<br><br>317<br>1   Plan appeared to be an Excel template<br>2   to you? | | |
| OGLE, MARY, (Page 317:5 to 317:5)<br>317<br>5       THE WITNESS:  I'm not sure. | | |
| OGLE, MARY, (Page 317:11 to 317:17)<br>317<br>11   Q.  How often did you work with<br>12   Excel templates when you were --<br>13     A.  I don't recall how often.<br>14     Q.  Once a month?<br>15     A.  I really couldn't answer<br>16   that.  I don't recall.<br>17     Q.  Once in your career? | Argumentative | |
| OGLE, MARY, (Pages 317:21 to 318:6)<br>317<br>21   Q.  Was it a very rare<br>22   occurrence that you worked with<br>23   Excel?<br>24     A.  I don't recall how often I<br><br>318<br>1   worked with Excel.  The majority of<br>2   my time 95 -- 90 percent was talking,<br>3   communicating.  I don't recall how<br>4   often I used Excel.<br>5     Q.  You can't recall whether<br>6   you used it more than once or twice? | Argumentative | |
| OGLE, MARY, (Page 318:9 to 318:11)<br>318<br>9   THE WITNESS:  I'm sure I<br>10   used it more than once or twice, but<br>11   I can't recall how often. | Argumentative | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 318:13 to 318:14)<br><br>13   Q.   More than 20 times in your   318<br>14   life? | Argumentative | |
| OGLE, MARY, (Page 318:17 to 318:20)<br><br>17     THE WITNESS:  I would say   318<br>18   more than 20 times in my life, yes.<br>19          (Exhibit Ogle 21 was marked<br>20   for identification.) | Argumentative | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY 318:22 to 320:14)<br>22    Q.   Take a minute to review the<br>23   document which bears the Bates<br>24   numbers MRK-AGLAAD0020720 through<br>                        319<br>1   752.  I ask you if you've ever seen<br>2   that document before.<br>3    A.  I'm actually not sure if I<br>4   saw this or not over the course of<br>5   the last -- yesterday or the first<br>6   visit.  I don't remember this<br>7   document, but I'm not sure if I saw<br>8   it or not.<br>9    Q.   Okay.  In any event, is it<br>10  safe to say you don't have any<br>11  recollection of this document aside<br>12  from possibly having seen it in your<br>13  deposition review?<br>14   A.   Correct.  I don't remember<br>15  it.<br>16   Q.   Again, this is a document<br>17  prepared by you; is it not?<br>18   A.  I don't know.<br>19   Q.   It appears to be an e-mail<br>20  from you to John Fevurly and Holly<br>21  Jacques?<br>22   A.   It does appear -- this is a<br>23  memo from me, yes.<br>24   Q.   And you copied Michael<br>                        320<br>1   Kelly on it?<br>2    A.   Correct.<br>3    Q.   Okay.<br>4    A.   But that doesn't mean this<br>5   was made by me.  More than likely<br>6   this is a -- that big<br>7   cross-functional team we talked<br>8   about.<br>9    Q.   Uh-huh.<br>10   A.   The manager Ranita Howard<br>11  would have populated, you know, like<br>12  for each area, and I would collate,<br>13  because I would be like the collator<br>14  and then push back out for people. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 320:20 to 322:19)<br>320<br>20    Q.  In the document, in the<br>21  first page of the document the e-mail<br>22  portion you write, Attached is an<br>23  updated tactical plan for the LA<br>24  Medicaid market.<br>321<br>1    A.  Uh-huh.<br>2    Q.  This is intended to be used<br>3  for all Merck products to encourage,<br>4  one, strong pull-through for Merck<br>5  products on the Medicaid PDL.  Then<br>6  there's a blank and then enhanced<br>7  advocate relationships with the P & T<br>8  members.<br>9        Do you know what you were<br>10  referring to when you talked about<br>11  strong pull-through for Merck<br>12  products on the Medicaid PDL?<br>13    A.  I don't know exactly what I<br>14  was referring to six years ago, no.<br>15        But in terms of what I<br>16  would think was just making sure that<br>17  if we're on formulary for<br>18  pull-through that our products are<br>19  communicated to the physicians that<br>20  they are available at a lower co-pay<br>21  for the patients.<br>22        So to make sure they're<br>23  aware of the formulary change.<br>24    Q.  Okay.  And then you were<br>322<br>1  also writing about enhanced advocate<br>2  relationships with P & T members.  Do<br>3  you know what you were referring to<br>4  there?<br>5    A.  I really do not.<br>6    Q.  And then on the second page<br>7  you see where it says Objectives?<br>8    A.  Uh-huh.<br>9    Q.  To continue to enhance and<br>10  foster long-term relationships with<br>11  the members of the Louisiana Medicaid<br>12  P & T.  Do you know what that's | | |

115

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 322:14 to 322:19)<br><br>               322<br>13   referring to?<br>14    A.  No, I don't recall.<br>15    Q.  You have no recollection of<br>16   what efforts may have been undertaken<br>17   to enhance and foster long-term<br>18   relationships with members of the<br>19   Louisiana Medicaid P & T? | | |
| OGLE, MARY, (Page 322:22 to 322:23)<br><br>               322<br>22      THE WITNESS:  I don't<br>23   remember writing that let alone... | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 323:1 to 325:9)<br><br>                          323<br>1    Q.  The next point says, To<br>2  grow share among Medicaid physicians<br>3  based on addition of second tier<br>4  status on PDL for Vioxx, Zocor,<br>5  Maxalt -- it lists a whole bunch of<br>6  others, but Vioxx is one of them.  Do<br>7  you know what is meant by there?<br>8    A.  No.  I don't recall the<br>9  origin of this template and who drove<br>10  or approved it.  So it could have<br>11  been actually written by many.  So I<br>12  don't recall, no.<br>13    Q.  Okay.  Look where it says<br>14  Tactics/Actions.  It says, Conduct<br>15  teleconference with managers --<br>16    A.  Where are you?<br>17    Q.  I'm sorry.  Very first<br>18  line.<br>19    A.  Right here?<br>20    Q.  Yes.<br>21    A.  Okay.<br>22    Q.  It says Tactics/Actions.<br>23  Conduct teleconference with managers<br>24  and point representatives, review<br><br>                          324<br>1  tactical plan pull/push-through,<br>2  targeting, messaging and potential<br>3  obstacles.<br>4      Then you'll see next to<br>5  that it says Point BM, NAE under<br>6  Responsibility.<br>7      Do you recall that you had<br>8  responsibility for conducting -- that<br>9  as a national account executive you<br>10  had responsibility for conducting<br>11  teleconferences with managers and<br>12  point representatives?<br>13    A.  This would have more than<br>14  likely meant the manager was<br>15  conducting a call.  I would be<br>16  listening in, because it was<br>17  referring to the tactical plan, the | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 18  messaging, etcetera to the<br>19  representatives.<br>20      So I would have been there<br>21  to listen in.  The manager would have<br><br>OGLE, MARY, (Pages 324:21 to 325:9)<br>                                      324<br>21  to listen in.  The manager would have<br>22  been conducting it more than likely.<br>23      Q.  The point BM?<br>24      A.  Uh-huh.<br><br>                                      325<br>1      Q.  That's the point business<br>2  manager?<br>3      A.  I believe so, yes.<br>4      Q.  Having listened in on those<br>5  teleconferences, do you know what was<br>6  done to target message -- to review<br>7  the tactical plan, pull/push through,<br>8  and target message and potential<br>9  obstacles with respect to Vioxx? | | |
| OGLE, MARY, (Page 325:12 to 325:14)<br>                                      325<br>12      THE WITNESS:  I don't<br>13  recall the teleconferences, to answer<br>14  the question. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 325:16 to 326:20)<br>325<br>16    Q.  Do you have any reason to<br>17  believe that you would not have<br>18  participated in those<br>19  teleconferences?<br>20    A.  Sure.<br>21    Q.  Why is that?  You just<br>22  testified that you said that you<br>23  would have been --<br>24    A.  It doesn't mean --<br><br>326<br>1    Q.  -- on those calls and<br>2  listened in?<br>3    A.  It doesn't, it doesn't mean<br>4  that I was on every call.  It wasn't<br>5  -- at the end of the day, I could not<br>6  be on and the work would still be<br>7  done, because the manager would be<br>8  running it.<br>9       So if I had competing<br>10  priorities, it's very likely that I<br>11  wouldn't have been on all calls,<br>12  because they reported directly to the<br>13  manager.  It was ultimately the<br>14  manager's responsibility to<br>15  communicate the messaging, so...<br>16    Q.  So your interpretation of<br>17  the document is that where it says<br>18  Responsibility, your only<br>19  responsibility was to listen in on<br>20  those calls? | | |
| OGLE, MARY, (Pages 326:23 to 327:4)<br>326<br>23       THE WITNESS:  I can't<br>24  remember my full responsibility, but<br><br>327<br>1  I can tell you for direction,<br>2  messaging, that's the responsibility<br>3  of the manager.  That person would<br>4  have led those conversations. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 327:6 to 328:5)<br><br>327<br>6   Q.  Do you know what it means<br>7  here where it says Measurement<br>8  Completion?<br>9   A.  No.<br>10   Q.  Okay.  Dropping down to the<br>11  next page of the document where it<br>12  says Government Affairs.  It says<br>13  Tactics/Actions.  It says, Work with<br>14  the NAE and medical director to<br>15  generate a letter online for the<br>16  field to use with high Medicaid<br>17  physicians.<br>18      Do you remember anyone<br>19  working with you and a medical<br>20  director to generate a letter for the<br>21  field to use with high Medicaid<br>22  physicians?<br>23   A.  Not at all, no.<br>24   Q.  Sound like something you<br><br>328<br>1  would have done?<br>2   A.  Not me, no.  I don't --<br>3  I don't recall what this is in<br>4  reference to, you know, as a<br>5  government affairs responsibility. | | |
| OGLE, MARY, (Page 328:9 to 328:21)<br>328<br>9      The next one says, Work<br>10  with the NAE and field to train OBRs,<br>11  specialty representatives and<br>12  managers on effective communication<br>13  and messaging with targeted P & T<br>14  members prior to and immediately<br>15  following P & T meetings.<br>16      Do you recall working with<br>17  anyone at government affairs to train<br>18  OBRs and specially representatives<br>19  and managers on effective<br>20  communication and messaging with<br>21  targeted P & T members? | | |

120

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 328:24 to 328:24)<br>                                  328<br>24          THE WITNESS:  No, I do not. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 329:2 to 330:19) | | |

OGLE, MARY, (Pages 329:2 to 330:19)

329

2   Q.  Now, here under
3  Responsibility it's listed that the
4  parties with responsibility for that
5  are government affair manager, NAE,
6  and PT BM.
7     Does that show that that's
8  within your area of responsibility?
9   A.  What -- I can't recall what
10  this training program was or
11  specifically what this was about, but
12  I can tell you again the manager
13  would be training.
14     We would have made sure the
15  manager knew what the access was for
16  our products so that they could then
17  conduct the training.
18     So the responsibilities
19  around whatever my role was, so I
20  would have to be part of it to make
21  sure the manager had the information.
22  That would be my role.
23   Q.  So you had no role in
24  determining what the message would be

330

1  to targeted P & T members?
2   A.  That would be the manager's
3  responsibility to determine that.  I
4  would just want to make sure that
5  they had accurate information.
6   Q.  Having worked with them,
7  you don't have any knowledge as to
8  what the message would have been?
9   A.  I don't recall what the
10  message would have been.
11   Q.  When it comes to messaging
12  for a product, is that developed at
13  the local level or is that developed
14  at strategy national?
15   A.  Any product message, any --
16  it has to be on label and ultimately
17  approved by the company.
18   Q.  When you say "by the
19  company," it comes from headquarters?

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 330:22 to 331:2)<br><br>330<br>22      THE WITNESS:  It's approved<br>23   through the regulatory group that's<br>24   assigned to whatever it is they're<br><br>331<br>1   working on, whatever brand, whatever<br>2   message. | | |
| OGLE, MARY, (Page 331:4 to 331:8)<br><br>331<br>4      Q.  I'm not talking about who<br>5   approves it but in terms of who<br>6   develops that strategy.  In other<br>7   words, the messages, did they come<br>8   from headquarters? | | |
| OGLE, MARY, (Page 331:11 to 331:17)<br><br>331<br>11      THE WITNESS:  I don't -- I<br>12   don't recall.  It could come from<br>13   headquarters.  It could be something<br>14   that a field sales thinks could be<br>15   worthwhile; then they take it inside.<br>16   It's approved and then comes back<br>17   out. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 331:19 to 332:10) <br> 331 <br> 19   Q.  Okay.  They have to take -- <br> 20  I'm sorry, I didn't mean to cut you <br> 21  off. <br> 22   A.  And I can't recall what the <br> 23  process was six years ago.  It could <br> 24  be -- it could have been very <br> <br> 332 <br> 1  different than it is today.  So I <br> 2  can't recall the actual process six <br> 3  years ago. <br> 4   Q.  Well, let's take the <br> 5  example that you just gave us where a <br> 6  field representative comes up with an <br> 7  idea.  They have to send that to <br> 8  headquarters before they can deliver <br> 9  that message; correct? <br> 10   A.  Correct. | | |
| OGLE, MARY, (Page 332:13 to 332:14) <br> 332 <br> 13     THE WITNESS:  I would think <br> 14  so. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 332:16 to 333:14)<br><br>                                332<br>16    Q.  Then we see, Conduct along<br>17  with NAE and RMD quarterly dinner<br>18  meetings with P & T chair.<br>19      Does that refresh your<br>20  recollection as to whether you had<br>21  more than two meetings with the P & T<br>22  chair?<br>23    A.  We only ever had two.<br>24    Q.  Did you just not fulfill<br><br>                                  333<br>1  this action here where it says that's<br>2  the responsibility?<br>3    A.  Right.<br>4    Q.  I'm on the last line where<br>5  it says Point BMs, Develop and<br>6  execute an advocate development<br>7  tactical plan for the two pharmacists<br>8  that sit on the Medicaid P & T.<br>9      Do you know whether point<br>10  business managers did in fact<br>11  undertake that activity?<br>12    A.  I do not recall.<br>13      (Exhibit Ogle 22 was marked<br>14  for identification.) | | |
| OGLE, MARY, (Page 333:19 to 333:21)<br>                                333<br>19    Q.  Did you recognize the<br>20  document?<br>21    A.  No. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 334:3 to 334:24)<br><br>                          334<br>3    Q.  Does it appear to be a<br>4  document that you drafted?<br>5    A.  Uh-huh.<br>6    Q.  And it looks like you sent<br>7  it to Michael Kelly?<br>8    A.  Correct.<br>9    Q.  Okay.  And he's a senior<br>10  director of managed care?<br>11    A.  He was my boss.<br>12    Q.  You write, With the strong<br>13  Merck product formulary access now in<br>14  place for LA Medicaid patients the<br>15  following resources and ideas should<br>16  be considered as part of the 2004<br>17  profit planning exercise for the<br>18  Medicaid segment, and then it says<br>19  Vioxx and Zocor QCP pieces covered by<br>20  FPG.<br>21    Do you know what that<br>22  refers to?<br>23    A.  No, I do not.  I cannot<br>24  remember. | | |
| OGLE, MARY, (Page 335:6 to 335:12)<br><br>                          335<br>6    Q.  Do you know what a 2004<br>7  profit planning exercise to the<br>8  Medicaid segment is?<br>9    A.  I can't recall what that<br>10  exercise was, no.<br>11    (Exhibit Ogle 23 was marked<br>12  for identification.) | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 335:14 to 336:16)<br>335<br>14   Q.  This appears to be a chain<br>15  of e-mails forwarding an updated<br>16  customer profile.<br>17      Let me just ask you, do you<br>18  have any reason to believe that you<br>19  did not participate with Holly<br>20  Jacques in preparing a customer<br>21  profile update for the State of<br>22  Louisiana dated August 25, 2003?<br>23   A.  No reason.<br>24   Q.  It does appear to be an<br><br>336<br>1  e-mail from you forwarding that<br>2  document?<br>3   A.  Yes.<br>4   Q.  I have another updated<br>5  profile, customer profile.  This one<br>6  appears to be dated September 18,<br>7  2003.<br>8   A.  Do you want this one put<br>9  away then?<br>10   Q.  All I want to do is confirm<br>11  that --<br>12   A.  Okay.  I see.<br>13   Q.  -- that the document was<br>14  prepared.<br>15      (Exhibit Ogle 24 was marked<br>16  for identification.) | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 336:23 to 339:4) <br><br> 336 <br> 23   Q.  Again, this appears now to <br> 24  be a September 19, 2003 memo <br><br> 337 <br> 1  forwarding a version of the Louisiana <br> 2  customer profile updated September <br> 3  18, 2003.  The memo forwarding it was <br> 4  drafted by yourself; is that correct? <br> 5    A.  Yes. <br> 6    Q.  You have no reason to <br> 7  believe that you didn't participate <br> 8  in the preparation of the customer <br> 9  profile that's attached to it? <br> 10    A.  No. <br> 11      (Exhibit Ogle 25 was marked <br> 12  for identification.) <br> 13  BY MR. MURRAY: <br> 14    Q.  Take a second to look at <br> 15  that document and let me know if <br> 16  you've seen it. <br> 17    A.  I have seen this, yes. <br> 18    Q.  When did you see it? <br> 19    A.  Yesterday. <br> 20    Q.  You recall seeing it before <br> 21  seeing it in connection with your <br> 22  deposition preparation? <br> 23    A.  I did not recognize it, no. <br> 24    Q.  It appears to be a <br><br> 338 <br> 1  memorandum from yourself to Suzanne <br> 2  Freiberg. <br> 3    A.  Uh-huh. <br> 4    Q.  I'm sorry, Freinberg. <br> 5    A.  Uh-huh. <br> 6    Q.  F-R-E-I-N-B-E-R-G.  Do you <br> 7  know who Ms. Freinberg is? <br> 8    A.  Yes, I do. <br> 9    Q.  Okay.  Who is she or what <br> 10  was her role in September of 2003? <br> 11    A.  She was an account <br> 12  executive and she had New Mexico and <br> 13  I believe she was the point for our <br> 14  managed care group for Vioxx. <br> 15    Q.  Explain what that means to | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 16  be an account executive and a point<br><br>OGLE, MARY, (Pages 338:17 to 339:4)<br>                          338<br>17  for managed care group for Vioxx.<br>18    A.  So within our area we --<br>19  let me back up and say we were<br>20  responsible for the full product<br>21  portfolio.  So in order for all of us<br>22  to stay abreast, we had product<br>23  points within the managed care team<br>24  within our region.  So she had Vioxx.<br><br>                          339<br>1      So she tried to stay ahead<br>2  of the game to make sure we were<br>3  updated on Vioxx information from the<br>4  corporation. | | |
| OGLE, MARY, (Pages 339:12 to 340:9)<br>                          339<br>12    Q.  But she was a national<br>13  account executive for -- in other<br>14  words, she fulfilled the same role as<br>15  you in New Mexico?<br>16    A.  Correct.<br>17    Q.  And the subject here is<br>18  Louisiana Medicaid PDL - Vioxx<br>19  question for Bus Review.  Is that<br>20  short for business review?<br>21    A.  I'm assuming so, yes.<br>22    Q.  Okay.  Looks like Mary<br>23  wrote -- I'm sorry -- Suzanne<br>24  Freinberg wrote to you and says,<br><br>                          340<br>1  Mary, Can you give me more details on<br>2  formulary change for Vioxx and<br>3  Louisiana Medicaid PDL.<br>4      She writes, Celebrex was<br>5  preferred and they made Vioxx<br>6  preferred over Celebrex in July.<br>7  Then she writes, What do you think<br>8  our potential upside is for Vioxx for<br>9  remainder of the year. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 340:18 to 341:23)<br><br>340<br>18   Q.  And then you responded,<br>19  Last year Vioxx was taken off and<br>20  Celebrex and Bextra were preferred on<br>21  the PDL.<br>22        Does that correspond with<br>23  your recollection of what happened<br>24  with respect to Vioxx and the PDL?<br><br>341<br>1    A.  I don't recall what you're<br>2  referring to.  So are you talking<br>3  about this sentence?<br>4    Q.  Yes, that sentence.<br>5    A.  What are you asking?<br>6    Q.  My question was, does that<br>7  correspond with your recollection<br>8  which was in 2002 Vioxx was not on<br>9  the PDL and Celebrex and Bextra were<br>10  put on it?  That was your<br>11  recollection?<br>12    A.  Yes.<br>13    Q.  Okay.  Then you write, I<br>14  think this occurred last May if I<br>15  remember correctly, and you write<br>16  Vioxx share plummeted.  What did you<br>17  mean by plummeted?<br>18    A.  I don't remember what I<br>19  meant exactly by plummeted six years<br>20  ago.<br>21    Q.  Would that indicate a<br>22  marketshare loss of greater than 50<br>23  percent? | | |
| OGLE, MARY, (Page 342:2 to 342:4)<br><br>342<br>2        THE WITNESS:  I don't -- I<br>3  can't answer the amount.  I would say<br>4  it meant a share loss. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 342:6 to 342:11)<br>342<br>6   Q.  Plummeted means a sharp<br>7  fall; correct?<br>8    A.  I would say, yes.<br>9    Q.  You're the author of the<br>10  document and that's how you used the<br>11  word plummeted; correct? | | |
| OGLE, MARY, (Page 342:14 to 342:16)<br>342<br>14        THE WITNESS:  I don't know<br>15  what I was thinking six years ago for<br>16  that. | | |
| OGLE, MARY, (Page 345:14 to 345:15)<br>345<br>14        (Exhibit Ogle 27 was marked<br>15  for identification.) | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 345:20 to 348:20)<br>345<br>20    Q.  Do you recognize the<br>21  document?<br>22    A.  I do not recognize the<br>23  document.<br>24    Q.  Okay.  Does it appear that<br>346<br>1  you drafted the document?<br>2    A.  It appears that I drafted<br>3  the e-mail.<br>4    Q.  Okay.  An e-mail from<br>5  yourself to Holly Jacques and John<br>6  Fevurly?<br>7    A.  Correct.<br>8    Q.  Okay.  That's December 10,<br>9  2003.  So this is right about the<br>10  time before you left the company;<br>11  correct?<br>12    A.  Uh-huh.<br>13    Q.  This says Master Influencer<br>14  Medicaid template.  Do you know what<br>15  that little icon is --<br>16    A.  I do not.<br>17    Q.  -- or refers to?<br>18    A.  No.<br>19    Q.  And you write John and<br>20  Holly, Attached is a draft template<br>21  to manage the key targets for<br>22  Medicaid.  Do you know what key<br>23  targets from Medicaid is referring<br>24  to?<br>347<br>1    A.  I do not.  I can't recall<br>2  what I would have meant back then.  I<br>3  don't remember this.<br>4    Q.   Looking at the template, do<br>5  you know what this template is<br>6  referring to?<br>7    A.  I don't remember doing<br>8  this.  So I'm sure I -- I don't<br>9  remember, no.<br>10    Q.  You write, As you know,<br>11  each state and team has their own<br>12  version.  Our intent is to create a | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 13  document that is approved by the<br><br>OGLE, MARY, (Pages 347:14 to 348:20)<br>                                                   347<br>14  medical/legal board for use in each<br>15  active state.<br>16          This will allow all members<br>17  of the state Medicaid team to manage<br>18  the key targets.<br>19          Do you remember being<br>20  involved in the creation of a<br>21  document for use in each active<br>22  state?<br>23     A.  No, I do not.  Don't<br>24  remember this.<br><br>                                                   348<br>1     Q.  Again, you don't know<br>2  what's meant by the phrase that you<br>3  use here of manage the key targets?<br>4     A.  I do not.<br>5     Q.  Looking at the grid itself,<br>6  do you think key targets refers to<br>7  physicians of some sort?<br>8     A.  I do not know.<br>9     Q.  Do you see where it says<br>10  Key Influencer?<br>11     A.  No.  Where?<br>12     Q.  On the second page of the<br>13  printout.<br>14     A.  I do.<br>15     Q.  Okay.  Do you know what key<br>16  influencer is referring to?<br>17     A.  I do not.<br>18     Q.  Do you think that could be<br>19  referring to influential positions<br>20  with respect to Medicaid? |  |  |
| OGLE, MARY, (Pages 348:23 to 349:1)<br>                                                   348<br>23          THE WITNESS:  I don't<br>24  recall what that is reference to six<br><br>                                                   349<br>1  years ago. |  |  |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 349:3 to 349:12)<br>349<br>3   Q.  Do you know whether that's<br>4  referring to P & T committee members?<br>5   A.  No, I do not.<br>6   Q.  In it you wrote and asked<br>7  John and Holly to let you know if<br>8  they have any edits.<br>9     Do you have any<br>10  recollection of whether they provided<br>11  you with any edits?<br>12   A.  No, I don't. | | |

134

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 342:18 to 344:3)<br><br>342<br>18    Q.  Do you remember the source<br>19  of your information that Vioxx share<br>20  plummeted?<br>21    A.  No, I do not.<br>22    Q.   Then you write, The PDL<br>23  placed Vioxx and Bextra on the<br>24  preferred list and it went into<br><br><br>343<br>1  effect in July of '03.<br>2        Does that correspond with<br>3  your recollection?<br>4    A.   Yes.<br>5    Q.  So the Vioxx was off of the<br>6  PDL until July '03 and then on July<br>7  '03 it was available on the PDL?<br>8    A.  Uh-huh.<br>9    Q.  And then you write Matt,<br>10  could you share the projections with<br>11  Suzanne.  Thanks, Mary.<br>12        Who is the Matt?<br>13    A.  Matt Forney took John<br>14  Harrington's place.  So he was my<br>15  analyst.  Not my -- he actually<br>16  reported in to my boss, but he would<br>17  be the analyst --<br>18    Q.  He was --<br>19    A.   -- that took John<br>20  Harrington's place that I referenced<br>21  earlier.<br>22    Q.  Do you know whether Matt<br>23  prepared projections for Vioxx as a<br>24  result of Vioxx being placed on the<br><br>344<br>1  PDL?<br>2    A.  I do not recall what he<br>3  did, no. | | |

135

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS<br>&<br>DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Pages 350:4 to 351:22)<br>350<br>4  Q.  Good afternoon, Ms. Ogle.<br>5  I know it's been a long day; we've<br>6  been here for about nine hours.  So<br>7  I'll just try to be brief.  Okay?<br>8      Just so folks have an<br>9  understanding of what the scope of<br>10  your position was while you were at<br>11  Merck, can you confirm for us whether<br>12  prior to mid-2001 you had any<br>13  responsibility for Vioxx?<br>14   A.  I did not, no.<br>15   Q.  I think you indicated in<br>16  response to counsel's questions that<br>17  you left the company in late 2003 for<br>18  other opportunities?<br>19   A.  Correct.<br>20   Q.  Have you had any occasion<br>21  over the past six years, six and a<br>22  half years, to think about or go over<br>23  any of the concepts or materials that<br>24  counsel asked you this afternoon<br>351<br>1  this morning?<br>2   A.  Not at all, no.<br>3   Q.  When you were a national<br>4  account executive from mid-2001 to<br>5  the end of 2003, were you just<br>6  dealing with Louisiana Medicaid<br>7  issues?<br>8   A.  No.<br>9   Q.  Can you give us a sense of<br>10  what percentage of your time had to<br>11  deal with Louisiana Medicaid issues?<br>12   A.  Five percent.<br>13   Q.  And that five percent of<br>14  your time that you dealt with<br>15  Louisiana Medicaid issues, was that<br>16  just on Vioxx?<br>17   A.  No.  I was responsible for<br>18  the full portfolio.<br>19   Q.  So would your time that you<br>20  spent relating to Vioxx and Louisiana<br>21  Medicaid be much less than five<br>22  percent? | Leading | Overruled |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| OGLE, MARY, (Page 352:1 to 352:10)<br><br>352<br>1   THE WITNESS:  It would be<br>2   less, yes.<br>3   BY MR. ISMAIL:<br>4      Q.   And during the time that<br>5   you were in Louisiana Medicaid, did<br>6   your responsibility include<br>7   contracting or preparing materials,<br>8   clinical materials, or the like for<br>9   the state to review?<br>10     A.   No, not at all. | Leading | |