

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |
| | [401,402,403] subject of MIL re Merck employee's use of Vioxx | |
| | [401,402,403] subject of MIL re Merck employee's use of Vioxx | |
| | [401,402,403] subject of MIL re Merck employee's use of Vioxx | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 920:10-920:24<br><br>920:10    Q.    Did you ever share your thoughts<br>920:11  after you had seen all the data relating to naproxen<br>920:12  and Vioxx and placebo, did you ever share your<br>920:13  feeling that you believed there was no safety<br>920:14  problem with Vioxx?<br>920:15    A.    Yes.  I told people that all the<br>920:16  evidence we had was completely consistent with the<br>920:17  fact that naproxen was cardioprotective, that one<br>920:18  could not exclude any effect of Vioxx, because that<br>920:19  was trying to prove a negative, and that was very<br>920:20  difficult to do in science, and those were the kinds<br>920:21  of statements I would make to people.<br>920:22    Q.    Dr. Scolnick, I want to show you a<br>920:23  document we'll mark as Exhibit 105.  It has the<br>920:24  numbers MRK-ACT0009918. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 921:6-922:4<br><br>921: 6    Q.    Can you identify for us the e-mail<br>921: 7  that appears in the middle of the page on Exhibit<br>921: 8  105?<br>921: 9    A.    Yes.  It is an e-mail from myself to<br>921:10  Alan Nies, Alise Reicin and Harry Guess.  The<br>921:11  subject is: "A word of Praise."<br>921:12    Q.    What is the date of this e-mail?<br>921:13    A.    February 4, 2001.<br>921:14    Q.    What was the context for sending this<br>921:15  e-mail to that group on February 4 of 2001?<br>921:16    A.    I believe they were getting close to<br>921:17  the FDA Advisory Committee on the VIGOR results, and<br>921:18  I wanted to tell them that they had done a terrific<br>921:19  job, and I was no longer worried about the safety of<br>921:20  the drug and all the issues that we've covered and,<br>921:21  again, thank them for the enormous amount of work<br>921:22  they had done so well.  They were extremely<br>921:23  thorough.<br>921:24    Q.    Your e-mail says towards the middle<br>921:25  "We all worried to death about the CV events last<br><br>922<br>922: 1  Spring."  Then it says:  "But I was sick at the<br>922: 2  thought we might be doing harm to patients."  Do you<br>922: 3  see that?<br>922: 4    A.    Yes, I do. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 922:8-923:9<br><br>922: 8    Q.    What is that referring to?<br>922: 9    A.    It is referring to my major concern<br>922:10  which was, as I told you earlier, I always regarded<br>922:11  myself as a physician first and as president of MRL<br>922:12  second.  And the thought that I had initially that<br>922:13  Vioxx might be harming patients was really quite<br>922:14  upsetting to me, and we worried about it, we looked<br>922:15  for whether it was the case or not, and as I've<br>922:16  stated here, I told them that, I knew that they all<br>922:17  thought the same way, and told them that I was no<br>922:18  longer worried, that we had done so much analysis<br>922:19  and had so much other data that I had been reassured<br>922:20  that the drug was safe.<br>922:21    Q.    Your e-mail goes on to say:  "I KNOW<br>922:22  each of you well enough to know you felt the same<br>922:23  way.  With all the data now available I am no longer<br>922:24  worried."  Do you see that?<br>922:25    A.    Yes, I do.<br><br>923<br>923: 1    Q.    Did that reflect your state of mind<br>923: 2  about the safety of Vioxx as of February 4, 2001?<br>923: 3    A.    Yes.  That's what I said in the<br>923: 4  e-mail.<br>923: 5    Q.    Did Merck continue to study and<br>923: 6  analyze data relating to Vioxx?<br>923: 7    A.    Yes.  Again, other ongoing trials<br>923: 8  were done.  They were all analyzed in the same way<br>923: 9  with the same standard operating procedure. | | |
| ▅▅▅▅▅▅▅▅▅▅▅▅▅▅<br>▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅<br>▅▅▅▅▅▅▅▅▅▅▅▅▅▅<br>▅▅▅▅▅▅<br>▅▅▅▅▅▅▅▅<br>▅▅▅▅▅▅▅▅▅▅▅<br>▅▅▅▅▅▅▅▅▅ | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |



| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |
| | | |
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| ██████████████████ | | |
| ████████████████████ | | |
| ██████████████████████ | | |
| ██████████████████████ | | |
| ████████████████ | | |
| ██████████████████████ | | |
| ████████ | | |
| ████████████████████ | | |
| ███████████ | | |
| █████████ | | |
| ██████████████████████ | | |
| █████████ | | |
| ████████████████ | | |
| ██████████████████ | | |
| ██████████████████ | | |
| ████████████████████ | | |
| ██████████████████████ | | |
| ██████████████ | | |
| █████████████████████ | | |
| ████████████████████ | | |
| ██████████████████ | | |
| █████ | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |



| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| █████████████████ | | |
| █████████████████ | | |
| █████████ | | |
| ████████████████████ | | |
| █████████████ | | |
| █████████████████ | | |
| ████████████ | | |
| ██████████ | | |
| █████████ | | |
| ████████████████████ | | |
| ████████████████████ | | |
| █████████████████ | | |
| ██████████ | | |
| ████████████████ | | |
| █████████████████ | | |
| █████████████████ | | |
| ████████████████████ | | |
| ████ | | |
| █████████████ | | |
| █████████████ | | |
| ████████████ | | |
| ████████████████ | | |
| █████████████ | | |
| █████████████ | | |
| █████████████████ | | |
| ████████████████ | | |
| ███████ | | |
| █████████████ | | |
| █████████████ | | |
| █████████████████ | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| ▊▊▊▊▊▊▊ | | |
| ▊▊▊▊▊▊▊▊ | 94 [sic] (Plaintiff assumes passage begins on page 944.) hearsay; speculation | |
| ▊▊▊▊▊▊▊▊ | 94 [sic] (Plaintiff assumes passage begins on page 944.) hearsay; speculation | |
| ▊▊▊▊▊▊▊▊ | Lack of foundation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| ███████████████████████<br>███████████████████████████<br>██████████████████████████████<br>██████████████████████████████<br>██████████████████████████████<br>██████████████████████████<br>███████████████████ | Lack of foundation | |
| ███████████████████████<br>███████████████████████████<br>██████████████████████████████<br>██████████████████████████████<br>████████████ | | |
| 951:13-951:22<br><br>951:13     Q.     Dr. Scolnick, can you please identify<br>951:14   Exhibit 111?<br>951:15     A.     Yes.  It is an e-mail from myself to<br>951:16   Dr. Alise Reicin.  It is November 7, 2001.  The<br>951:17   subject is "Comfort."<br>951:18     Q.     Dr. Scolnick, in looking at this<br>951:19   e-mail, does this refresh your memory as to whether<br>951:20   you told any of your colleagues at Merck near the<br>951:21   end of 2001 that you were comfortable with the data<br>951:22   and felt you didn't have any problems with Vioxx? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 951:24-952:12<br><br>951:24       THE WITNESS:  I don't recall this<br>951:25  memo, but it's clear I wrote it.<br><br>952<br>952: 1  BY MR. RABER:<br>952: 2      Q.    Can you read to us what it says,<br>952: 3  please?<br>952: 4      A.    "Alise Thanks for the update today.<br>952: 5  The rates in the Alzheimer's study and the large<br>952: 6  numbers of patients included make me very<br>952: 7  comfortable with the data and that we do not have<br>952: 8  any problems.  Many thanks again/ Ed."<br>952: 9      Q.    Does this e-mail that you wrote on<br>952:10  November 7, 2001 accurately reflect your state of<br>952:11  mind about the safety of Vioxx at that time?<br>952:12      A.    Yes, it does. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|



| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |
| | | |
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| ████████████████████████ | [401,402,403] | |
| ████████████████████████ | | |
| ██████████████████████████ | | |
| ███████████████████████████████ | | |
| ███████████████████████████ | | |
| ██████████████████████████████ | | |
| ████████████████████████████ | | |
| ███████████████████████████ | | |
| █████████████████████████ | | |
| ████████████████████████ | | |
| ███████████████████████████ | | |
| ████████████████████████████ | | |
| ██████████████████ | | |
| ██████████████████████ | | |
| ████████████ | | |
| ███████████████ | | |
| ██████████████████████ | | |
| ████████████████████████ | | |
| ██████████████████████████ | | |
| ████████████████████████ | | |
| ██████████████████████ | | |
| ██████████████████ | | |
| ████████████████████████ | | |
| ██ | | |
| █████████████████████ | | |
| ██████████████ | | |
| █████████████████████ | | |
| ██████████████████████ | | |
| █████████████████████████████ | | |
| ███████████████████████████ | | |
| ██████████████████████ | | |
| ████████████████████████ | | |
| ██████████ | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| ████████████████████ ████████████████████████ ██████████████████████████ ████████████████████████████ ██████████████████████████ ██████████████████████████ █████████████████████████ | | |
| ████████████████████████ ████████████████ | | |
| ████████████████████ ██████████████████████ ██████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████ ██████████████████████████████ ██████████████████████ ████████████████████ ██████████████████████████████ ██████████████████████ ████████████████ | 966:45-967:7 [401,402,403] | Overruled |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | [401,402,403] | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| ███ | Lack of foundation; speculation | *Sustained* |
| ███ | Lack of foundation; speculation | |
| ███ | Lack of foundation; speculation | |
| ███ | Lack of foundation; speculation | |
| ███ | Lack of foundation; speculation | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | Lack of foundation; speculation | |
| | Lack of foundation; speculation | |
| | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| | Calls for speculation; hearsay; move to strike nonresponsive answer | *Sustained* |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| ████████████████ | | |
| | 8/16/05 Deposition | |
| 1138:3-1138:8

1138: 3     Q.     You said in writing, sir, in an
1138: 4 e-mail that for Vioxx, the CV outcomes study is the
1138: 5 only essential study, and you were saying that as of
1138: 6 September 17, 2001, long after the VIGOR results
1138: 7 were known; correct?
1138: 8     A.     That is correct.  And a study to get | | |
| ████████████████ | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 1249:12 -1249:17<br><br>1249:12   Q.     Did Merck Research Lab or Merck ever<br>1249:13 do a study to evaluate adverse events of most<br>1249:14 concern, heart attacks and unstable angina, prior to<br>1249:15 approval, where they gave people aspirin?<br>1249:16   A.     I'm not aware that that study was<br>1249:17 done. | | |
| es81605 - Vol. I, (Page 1249:18 to 1249:21)<br>                                     1249<br>18      Q.     Why didn't you do it?<br>19      A.     I'm unaware of this data, I don't<br>20   know why, and so the suggestion never came up, and<br>21   so I can't answer your question. | Misleading; foundation; lack of personal knowledge (see 1247:22-1248:3) (sustained in Mason) | *Sustained* |
| 1249:22 -1250: 9<br><br>1249:22   Q.     Did you ever do it?<br>1249:23   A.     Did we evaluate Vioxx in the presence<br>1249:24   of aspirin?<br>1249:25   Q.     Yes.<br><br>1250<br>1250: 1   A.     Yes, we did endoscopy studies with<br>1250: 2 that.<br>1250: 3   Q.     When?<br>1250: 4   A.     After the VIGOR trial.<br>1250: 5   Q.     You did it after approval; right?<br>1250: 6   A.     Yes.<br>1250: 7   Q.     Prior to approval, you didn't let<br>1250: 8 people take aspirin in your endoscopy studies, did<br>1250: 9 you? | | |
| 1250:11-1250:17<br><br>1250:11        THE WITNESS:  No.  Because we thought<br>1250:12 aspirin would cloud the results of the endoscopy<br>1250:13 studies --<br>1250:14 BY MR. BUCHANAN:<br>1250:15   Q.     It was worse --<br>1250:16   A.     -- because aspirin is gastric<br>1250:17 irritative. | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 1250:24-1251:2<br><br>1250:24 BY MR. BUCHANAN:<br>1250:25    Q.    You didn't want to give people<br>1251: Page 1251<br>1251: 1 aspirin because you knew it would eliminate the GI<br>1251: 2 benefit to the drug? | | |
| 1251:4-1251:7<br><br>1251: 4          THE WITNESS:  We did not think --<br>1251: 5 certainly I didn't think that it would eliminate the<br>1251: 6 complete GI benefit of the drug.  It would simply<br>1251: 7 make the studies very complicated to interpret. | | |
| [redacted] | | |
| 1266:23- 1266:24<br><br>1266:23    Q.    Well, let's go through this then,<br>1266:24    sir. | | |
| es81605 - Vol. I, (Pages 1266:25 to 1267:9)<br>                                     1266<br>25              It continues, "Yet, the possibility<br><br>                                     1267<br>1  of increased CV events is of great concern."  Do you<br>2  see that?<br>3      A.    Yes, I see her comments, yes.<br>4      Q.    Then it states, "(I just can't wait<br>5  to be the one to present those results to senior<br>6  management!)"  She gave us another exclamation<br>7  point, didn't she?<br>8      A.    Yes, she did.<br>9      Q.    That's you? | Foundation; lack of personal knowledge (see 1261:23-25, 1262:7-9) | Sustained |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| es81605 - Vol. I, (Page 1267:12 to 1267:17)<br>1267<br>12      THE WITNESS:  I am a member of senior<br>13  management, yes.  I'm one of senior management.<br>14  BY MR. BUCHANAN:<br>15      Q.    It wouldn't have made you happy to<br>16  have an outcomes trial that showed that Vioxx<br>17  increased the rate of CV events, would it? | Foundation; lack of personal knowledge (see 1261:23-25, 1262:7-9) | *Sustained* |
| es81605 - Vol. I, (Pages 1267:19 to 1268:1)<br>1267<br>19      THE WITNESS:  Obviously not.  If I<br>20  had known -- obviously, not.  No one wanted to see a<br>21  result where -- a question whether Vioxx elevated or<br>22  naproxen lowered the rate of events.<br>23  BY MR. BUCHANAN:<br>24      Q.    So, we have a solution, right, in the<br>25  next sentence?  She says how we solve this dilemma,<br><br>1268<br>1  doesn't she | Foundation; lack of personal knowledge (see 1261:23-25, 1262:7-9) | |
| es81605 - Vol. I, (Page 1268:4 to 1268:15)<br>1268<br>4      Q.    Do you see the next sentence, sir?<br>5      A.    I see the next sentence.<br>6      Q.    What's she say?<br>7      A.    "What about the idea of excluding<br>8  high risk CV patients - ie those that have already<br>9  had MI, CABG or PTCA?  This may decrease the CV<br>10  event rate so that a difference between the two<br>11  groups would not be evident.  The only problem would<br>12  be - Would we be able to recruit any patients?"<br>13  That's the rest of the paragraph.<br>14      Q.    Her solution is to exclude high risk<br>15  CV patients, isn't it? | Foundation; lack of personal knowledge (see 1261:23-25, 1262:7-9) | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| es81605 - Vol. I, (Pages 1268:17 to 1269:12)<br><br>                1268<br>17      THE WITNESS:  That's correct, so they<br>18  wouldn't require low-dose aspirin.<br>19  BY MR. BUCHANAN:<br>20    Q.    So you wouldn't see a CV effect?<br>21    A.    So there wouldn't be a<br>22  cardioprotective effect of the NSAID that was going<br>23  to be compared to because it blocked COX-1 and Vioxx<br>24  did not because aspirin blocks COX-1.  That's what<br>25  she's talking about.<br><br>                1269<br>1    Q.    Why don't we look at the document,<br>2  sir?<br>3    A.    That's what she's talking about.<br>4    Q.    "This may decrease the CV event rate<br>5  so that a difference between the two groups would<br>6  not be evident."  Do you see that?<br>7    A.    Yes, I do, and I understand what she<br>8  meant by that.<br>9    Q.    So, what you're doing here is you're<br>10  excluding aspirin so that you can see a GI benefit<br>11  from your outcomes trial; true?<br>12    A.    That is correct. | Foundation; lack of personal knowledge (see 1261:23-25, 1262:7-9) | Sustained |
| 1271:4-1271:7<br><br>1271: 4    Q.    I'm asking you, sir, that in<br>1271: 5 aspirin-using patients, the results from the VIGOR<br>1271: 6 trial don't present a GI benefit that extends to<br>1271: 7 them; isn't that right? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 1271:9-1273:14<br><br>1271: 9      THE WITNESS:  You cannot extrapolate<br>1271:10 the magnitude of the benefit from the nonlow-dose<br>1271:11 aspirin-using population to a low-dose aspirin<br>1271:12 population.  That is correct.<br>1271:13 BY MR. BUCHANAN:<br>1271:14      Q.      In fact, you actually did do a test,<br>1271:15 Vioxx plus aspirin, compared to traditional NSAIDs<br>1271:16 after the VIGOR trial, didn't you?<br>1271:17      A.      We did.  We did an endoscopy study.<br>1271:18      Q.      It didn't show any benefit, did it?<br>1271:19      A.      The study showed that using aspirin<br>1271:20 in the presence of Vioxx elevated the rate over<br>1271:21 aspirin alone, that subsequent studies showed that<br>1271:22 that rate was still lower than standard NSAID used<br>1271:23 with low-dose aspirin.<br>1271:24      Q.      Sir --<br>1271:25      A.      It still showed a benefit, although<br><br>1272<br>1272: 1 not as great a benefit as in the absence of aspirin.<br>1272: 2              - - -<br>1272: 3          (Whereupon, Deposition Exhibit<br>1272: 4          Scolnick-66, E-mails, MRK-ACR0009295 -<br>1272: 5          MRK-ACR0009296, was marked for<br>1272: 6          identification.)<br>1272: 7              - - -<br>1272: 8 BY MR. BUCHANAN:<br>1272: 9      Q.      Sir, I'm passing you over what we<br>1272:10 just marked as Exhibit 66.  I would like you to look<br>1272:11 at the earliest in time e-mail.  This is November<br>1272:12 19, 2001, the bottom of the first page.<br>1272:13      A.      Yes.<br>1272:14      Q.      It's from you to, who is that to?<br>1272:15      A.      Raymond Gilmartin and David | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 1272:16   Q.     Okay.<br>1272:17          Mr. Gilmartin is your boss; right?<br>1272:18   A.     Yes, he was.<br>1272:19   Q.     You sent it with high importance?<br>1272:20 You will see it on the next page.<br>1272:21   A.     Okay.  Yes.<br>1272:22   Q.     It says, "Ray" and it says "dn" you<br>1272:23 meant "and"?<br>1272:24   A.     Yes.  I don't type well.<br>1272:25   Q.     "Ray and David.  Not a good result.<br><br>1273<br>1273: 1 Low dose aspirin and Vioxx equal almost ibuprofen."<br>1273: 2 That's Advil; right?<br>1273: 3   A.     Yes.<br>1273: 4   Q.     "Higher than ASA alone"?<br>1273: 5   A.     Yes.<br>1273: 6   Q.     "It is clear why their class study<br>1273: 7 failed now."  That's with the Celebrex study; right?<br>1273: 8   A.     Yes.<br>1273: 9   Q.     What you're saying here is in the<br>1273:10 Celebrex study, the manufacturers of Celebrex<br>1273:11 allowed aspirin users in their study; right?<br>1273:12   A.     Yes, I believe that's true.<br>1273:13   Q.     And they showed no GI benefit in<br>1273:14 terms of PUBs in that outcomes study; right? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 1273:16-1274:25<br><br>1273:16          THE WITNESS:  I think they showed a<br>1273:17 quantitative benefit, but they did not get<br>1273:18 statistical significance.<br>1273:19 BY MR. BUCHANAN:<br>1273:20     Q.    And if they don't have statistical<br>1273:21 significance, that's not good enough for the FDA, is<br>1273:22 it?<br>1273:23     A.    It will not allow them to make a<br>1273:24 conclusion that the PUBs are reduced.  That is<br>1273:25 correct.<br><br>1274<br>1274: 1     Q.    So, what you're saying here is the<br>1274: 2 reason why they didn't show a statistically<br>1274: 3 significant benefit on PUBs is because they allowed<br>1274: 4 aspirin users in; right?<br>1274: 5     A.    That was how I interpreted their<br>1274: 6 results seeing our result in this endoscopy study.<br>1274: 7     Q.    Then you continue and say:  "I do not<br>1274: 8 think we should announce the CV outcomes study now<br>1274: 9 since now I am not at all sure what the design<br>1274:10 should be."  Do you see that?<br>1274:11     A.    I do.<br>1274:12     Q.    How do they tie together, sir?<br>1274:13     A.    I'm not sure what I was thinking<br>1274:14 because -- I don't know what the design was at this<br>1274:15 time.  I really can't remember what I was thinking<br>1274:16 at this point because we went through many, many<br>1274:17 discussions about different trial designs.<br>1274:18     Q.    What you were concerned about, sir,<br>1274:19 is if you did what you wanted to do in your CV<br>1274:20 outcome trial and allowed aspirin in that trial,<br>1274:21 there would be a Merck-sponsored clinical trial that<br>1274:22 would show that Vioxx, in fact, does not prevent<br>1274:23 PUBs in a population of high risk CV users using<br>1274:24 aspirin?  That's what you were concerned about,<br>1274:25 isn't it? | | |

| PLAINTIFF'S AFFIRMATIVE DESIGNATIONS & DEFENDANT'S COUNTER DESIGNATIONS | ALL OBJECTIONS | COURT RULING |
|---|---|---|
| 1275:2-1275:10<br><br>1275: 2      THE WITNESS:  I am not sure what I<br>1275: 3 was thinking because I don't know what trial designs<br>1275: 4 were being considered.<br>1275: 5 BY MR. BUCHANAN:<br>1275: 6     Q.    Well, you'd agree, sir, that if you<br>1275: 7 were considering a CV outcome trial that was going<br>1275: 8 to allow aspirin users, that would also have a<br>1275: 9 potential negative effect of revealing that Vioxx<br>1275:10 did not prevent the incidence of PUBs? |  |  |
| 1275:12-1275:20<br><br>1275:12      THE WITNESS:  No.  I think that the<br>1275:13 data without aspirin would show what the maximal<br>1275:14 potential benefits of Vioxx would be, and that in<br>1275:15 the presence of aspirin, what the diminution of<br>1275:16 those benefits would be, and in the subsequent<br>1275:17 endoscopy studies we did, the magnitude of the ulcer<br>1275:18 incidence was still less than it was if you used<br>1275:19 aspirin with another drug, another nonsteroidal that<br>1275:20 was not selected. |  |  |