# EXHIBIT 4

COMMONWEALTH OF KENTUCKY
COURT OF APPEALS


ACTION NO. 2010-CA-_____


MERCK & CO., INC.                                          PETITIONER

v.

HON. STEPHEN D. COMBS
Pike Circuit Court, Division II                           RESPONDENT

JAMES RATLIFF, on behalf of himself          REAL PARTIES IN INTEREST
and all others similarly situated            Plaintiffs in Civil Action No. 04-CI-01493


MEMORANDUM OF LAW IN SUPPORT OF MERCK'S PETITION
FOR RELIEF IN THE NATURE OF A WRIT OF
MANDAMUS PURSUANT TO CR 76.36


SUSAN J. POPE
FROST BROWN TODD LLC
250 W. Main Street, Suite 2800
Lexington, KY 40507-1749
(859) 231-0000

*Counsel for Petitioner Merck Sharp &
Dohme Corp., f/k/a Merck & Co., Inc.*

AND

JOHN H. BEISNER
JESSICA DAVIDSON MILLER
NINA H. RAMOS
SKADDEN, ARPS, SLATE,
MEAGHER
& FLOM LLP
1440 New York Avenue, NW
Washington, DC 20005

*Of Counsel for Petitioner
Pro Hac Vice Requests Pending*

M014625659

## I.    INTRODUCTION

This suit was brought by plaintiff James Ratliff on behalf of Kentucky residents who: (1) purchased the prescription pain reliever Vioxx; (2) do not allege any physical injury from the drug; and (3) claim to have paid for medical consultations to assess their risks from taking Vioxx – or that they will pay for such consultations in the future. The Circuit Court issued a pair of orders – one denying summary judgment and one granting class certification – that defy controlling precedent from this Court and the Supreme Court of Kentucky. Remarkably, the Circuit Court saw no need to explain why it was ignoring binding Kentucky law that bars plaintiff's claims, or how plaintiff's fraud suit – which requires proof of reliance and causation – can possibly satisfy the requirements for class certification. Instead, the court simply entered verbatim the one-sentence conclusory findings submitted by plaintiff. Absent immediate review, these orders will work a grave injustice by compelling defendant Merck Sharp & Dohme Corp. ("Merck") to choose between facing a trial that lacks fundamental due process protections or settling utterly meritless claims.

The Circuit Court's orders were rife with error:

- The court allowed Mr. Ratliff to proceed with a tort lawsuit seeking reimbursement for the purchase of Vioxx and recovery for supposed doctors' visits even though such suits have been expressly barred by the Kentucky Supreme Court absent an allegation of injury. As the Supreme Court recognized in *Wood v. Wyeth-Ayerst Laboratories*, 82 S.W.3d 849, 853-54 (Ky. 2002), "a plaintiff must have sustained some physical injury before a cause of action [in tort] can accrue. To find otherwise would force us to stretch the limits of logic and ignore a long line of legal precedent." Nonetheless, the Circuit Court ignored that "long line of legal precedent" without offering any explanation for its ruling.

- The court allowed Mr. Ratliff – who did not buy his Vioxx from Merck – to proceed with a claim under the Kentucky Consumer Protection Act ("KCPA") even though this Court has held that a plaintiff bringing consumer fraud claims based on the sale of a product must establish that he or she purchased

M014625660

the product directly from the defendant. *See Skilcraft Sheetmetal, Inc. v. Kentucky Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. App. 1992) ("The legislature intended that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act.").

- The court found that the requirements for class certification were satisfied without addressing the need for individualized inquiries under the reliance/causation prongs of plaintiff's common law fraud and KCPA claims. As court after court has recognized, prescription drug cases like this one are highly unsuited for class certification because doctors base prescription decisions on the individualized medical profiles of their patients. Thus, proving causation and/or reliance would require individualized evidence of each class member's medical and pharmaceutical history – and how his or her prescribing doctor(s) would have responded to more information about the risks of Vioxx in light of that history. For this reason, common issues do not predominate and there is no fair way to resolve plaintiff's claims on a classwide basis.

- The court found Mr. Ratliff to be a proper class representative even though his primary-care physician testified that he never visited her for a consultation regarding Vioxx – and even though Mr. Ratliff does not remember what doctor he saw for the supposed consultation, where that doctor is located or what the doctor did. All he remembers is that the supposed visit – for which he has no receipt or any other documentary evidence – cost him $180. Which he says he paid in cash.

In short, if there was ever a class certification order that required interlocutory review, this is it. The Circuit Court's order certifying an illegitimate class – combined with the order denying Merck's motion for summary judgment – was clearly intended to force a settlement between the parties, making judicial review impossible. Accordingly, these orders, if left to stand, will place Merck in the impossible position of choosing between an inherently unfair trial or settlement without the opportunity for appeal. For all of these reasons, the Court should grant a writ of mandamus.

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

Vioxx is a prescription non-steroidal anti-inflammatory drug ("NSAID") that was manufactured by Merck and was available in the U.S. from May 1999 until it was voluntarily withdrawn from the market in September 2004. Vioxx is a type of NSAID

M014625661

that blocks only the "Cox-2" enzyme and is therefore less likely to cause the gastrointestinal problems associated with traditional NSAIDs such as ibuprofen and naproxen.  During the time Vioxx was on the market, the United States Food & Drug Administration ("FDA") approved Vioxx for the treatment of various conditions, including osteoarthritis, rheumatoid arthritis, acute pain, primary dysmenorrhea and migraine headaches.

Plaintiff James Ratliff is a former Vioxx user who contends that Merck "deceived [him] and the members of the proposed class in violation of the Consumer Protection Act by promoting and/or allowing the sale of Vioxx with the use of unfair, false, misleading or deceptive acts or practices in the conduct of the trade and/or commerce of Vioxx." (Am. Compl. ¶ 30 (Evidentiary Appendix, Appendix C).)  He further claims that as a proximate result of such conduct, he and other members of the proposed class:  "(a) purchased and used Vioxx when he would not have otherwise done so; (b) suffered economic losses consisting of the cost of purchasing the drugs; (c) suffered and/or will suffer additional economic losses in complying with the recommended medical consultation and any follow-up procedures he has undergone or will undergo; and (d) suffered and will suffer additional economic losses incidental to the medical consultation and any related procedures, including lost income and related expenses." (*Id.* ¶ 33.)

Based on these allegations, Mr. Ratliff asserts claims for violations of the KCPA (Count I; *see id.* ¶¶ 28-33); fraudulent concealment and/or misrepresentation (Count II; *see id.* ¶¶ 34-38); negligent and/or grossly negligent misrepresentation (Count III; *see id.* ¶¶ 39-44); and unjust enrichment (Count IV; *see id.* ¶¶ 45-47).

3

M014625662

### The Named Plaintiff

Mr. Ratliff was prescribed Vioxx to control the inflammation associated with his osteoarthritis and rheumatoid arthritis. (*See* Dep. of James Ratliff ("Ratliff Dep.") 24:23-25:16; 39:12-18, Mar. 10, 2009 (Evidentiary Appendix, Ex. 3 to Appendix F).) According to his deposition testimony, Mr. Ratliff took 25 mg of Vioxx per day for approximately three years. (*See id.* 26:3-4; 36:19-37:4.) Mr. Ratliff stopped taking Vioxx at some point before it was withdrawn from the market. (*See id.* 26:9-14.)

Mr. Ratliff has taken several different types of prescription painkillers in addition to Vioxx. (*See id.* 40:19-42:9 (Ratliff takes or has taken Celebrex, Daypro, Oxycontin and Percocet).) He took two very strong painkillers with widely publicized risks – Oxycontin and Percocet – "before, during, and after" the time he took Vioxx. (*See id.* 64:23-65:11.) And when Mr. Ratliff stopped taking Vioxx, he replaced it with Daypro, another prescription drug in the same general class of drugs as Vioxx. (*See id.* 42:10-14.) Notably, Mr. Ratliff continued to take Daypro even after the manufacturer added a warning about potential cardiovascular risks. (*See id.* 128:5-10.) Nonetheless, plaintiff's counsel claimed in his briefing – and at the class certification hearing – that if Mr. Ratliff had been told about the risks of Vioxx, he would have switched to an herbal remedy. (*See* Tr. ("Hearing Tr.") 76:2-3, Feb. 26, 2010 (hearing on motion for class certification) (Evidentiary Appendix, Appendix G).)

Mr. Ratliff seeks reimbursement for the cost of a medical examination he supposedly underwent to determine whether Vioxx caused him any long-term cardiovascular injury. (*See* Ratliff Dep. 52:11-23.) However, Mr. Ratliff does not remember any details of this examination, including the physician's name, when the

M014625663

examination occurred, what tests were performed, or even where the examination took place; nor does he have any documentation regarding the examination, such as a receipt. (*See id.* 30:2-21; 52:24-53:24.) Indeed, he did not even know he was seeking recovery for such an alleged visit until after a break in his deposition. (*Id.*) All Mr. Ratliff now purports to remember about the visit is that he paid cash. (*Id.*) Mr. Ratliff's medical records do not contain any record of – or reference to – this alleged examination.

### The Named Plaintiff's Physicians

Two different physicians prescribed Vioxx to Mr. Ratliff – Drs. K.D. Gibson and Jayalakshmi Pampati. Dr. Gibson prescribed Celebrex and Vioxx to Mr. Ratliff for both pain relief and anti-inflammatory purposes. (Dep. of K. Gibson ("Gibson Dep.") 21:17-21, Mar. 10, 2009 (Evidentiary Appendix, Ex. 5 to Appendix F).) Dr. Gibson testified that determining whether a particular NSAID like Vioxx would work for an individual patient such as Mr. Ratliff was a "trial and error" process, and that "[i]t's all on an individual basis." (*Id.* 22:18-23:1.) Dr. Gibson also testified that he was aware of the potential cardiovascular ("CV") risks of Vioxx while it was on the market (*id.* 42:6-9) and that if Vioxx were on the market today, he would still prescribe it to some patients (*id.* 37:21-38:1).

Dr. Pampati has treated Mr. Ratliff since 1999 for, among other things, rheumatoid arthritis. (*See* Dep. of J. Pampati ("Pampati Dep.") 19:3-14, Mar. 11, 2009 (Evidentiary Appendix, Ex. 6 to Appendix F).) Dr. Pampati became aware of the potential CV risks of Vioxx "sometime in the early 2000s," and this knowledge affected her prescribing decisions for the drug depending on the individual patient's circumstances. (*Id.* 50:17-51:8.) Dr. Pampati also testified that her knowledge regarding Vioxx and its possible risks changed over the time the drug was on the market. (*Id.* 52:3-

M014625664

10.) She further testified that the various label changes over the time Vioxx was on the market affected her decision whether to prescribe the drug. (*Id.* 47:12-24.)

Dr. Pampati testified that she still believes Cox-2 drugs like Vioxx are safer than traditional NSAIDs for certain patients, and she still prescribes the Cox-2 drugs Celebrex and Meloxicam. (*See id.* 49:5-11.) Dr. Pampati would also prescribe Vioxx "to a select group of patients" if the drug were still on the market. (*Id.* 52:20-53:1.)

**Procedural History**

Plaintiff moved to certify a class of every Kentucky resident who ever took Vioxx and either sought a medical consultation after the drug was withdrawn from the market – or still plans to do so more than four years later. Merck opposed plaintiff's motion on the grounds that: (1) plaintiff's causes of action require proof of causation and reliance, which would entail individualized inquiries that are unsuited for a class trial; (2) Mr. Ratliff is neither a typical nor adequate class representative; and (3) the proposed class definition is unworkable because there is no practical way to ascertain class membership.

Merck also moved for summary judgment on Mr. Ratliff's claims on grounds that: (1) Kentucky law does not allow product liability actions where the plaintiff was not injured by the product's alleged defect; (2) Mr. Ratliff has not suffered any actual economic loss because under his prescription drug plan, he paid the exact same co-pay for Vioxx as he did for the prescription pain medication he would have taken in lieu of Vioxx; and (3) Mr. Ratliff lacks privity with Merck as required by Kentucky law to assert a claim under the KCPA.

The Circuit Court heard argument on both motions on February 26, 2010. On April 1, 2010, the court denied Merck's motion for summary judgment and granted

M014625665

plaintiff's motion for class certification, adopting verbatim plaintiff's two-page proposed

class certification order and one-page proposed summary judgment order.  The orders do

not include any analysis of plaintiff's claims.  For example, the order denying summary

judgment merely states:

> IT IS ORDERED AND ADJUDGED that the Motion for Summary
> Judgment of the Defendant Merck should be, and hereby is, denied in all
> respects.

(Order Overruling Mot. of Def. for Summ. J. at 1, Apr. 2, 1010 (Evidentiary Appendix,

Appendix A).)  The Circuit Court's class certification order is similarly brief and does not

address the key issue raised by Merck:  that the causation/reliance elements of the

proposed class members' common law fraud and KCPA claims cannot be proven based

on common evidence.  Instead, the Order simply states:

> IT IS ORDERED AND ADJUDGED that the Motion of the Plaintiff
> Ratliff to certify this action as a Class Action pursuant to Rules 23.01 and
> 23.02(c) should be, and hereby is, granted; and
>
> IT IS FURTHER ORDERED AND ADJUDGED that this action is
> certified as a Class Action with such Class being comprised of all
> Kentucky residents who have purchased and taken VIOXX during the
> period of May 1999 through September 30, 2004 and who, upon
> recommendation and advice of the FDA and Merck have or will contact
> physicians to seek advice regarding their Vioxx use[.]

(Order Certifying Class Action ("Class Certification Order") at 1, Apr. 2, 2010

(Evidentiary Appendix, Appendix B).)[1]

### III.   ARGUMENT

Under Kentucky law, a writ of mandamus is proper where the petitioner can

establish that "the lower court is acting or is about to act erroneously . . . and there exists

---

[1]      The class certification order also contains one additional clause ordering plaintiff to prepare a
"proposed Notion of Class certification to be disseminated to potential members of the Class now certified
by the Court."  (*Id.* at 1-2.)

M01462S666

no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004); *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961).  A writ of mandamus is appropriate in this case because, absent review, the Circuit Court's erroneous orders will force Merck to either face a single trial in which the claims of Kentucky Vioxx users will be decided – without considering whether any of those individuals can establish the basic elements of their causes of action – or settle those claims despite their lack of merit.  The injury caused by the Circuit Court's orders goes far beyond simply requiring Merck to bear the cost of a class trial.  *See Indep. Order of Foresters v. Chauvin*, 175 S.W.3d 610, 616 (Ky. 2005) (noting that "being forced to bear the cost of defending a lawsuit simply does not rise to the level of great and irreparable injury"); *Garrard County Bd. of Educ. v. Jackson*, 12 S.W.3d 686, 689 (Ky. 2000) (holding that "the appellants have not demonstrated that an erroneous class certification . . . would prejudice them in a manner which the courts cannot address on appeal").  Rather, the Circuit Court's orders – in combination – are tantamount to a command to settle this case or "roll the dice" on a class trial in which the plaintiffs are not held to their burden of proof and Merck is denied basic due process protections.  Where, as here, a flawed class certification order unfairly requires the defendant to choose between an inherently unfair, potentially crippling trial and settling a case regardless of merit, appellate courts regularly grant immediate review.  *See Garrard County*, 12 S.W.3d at 690 n.1 (citing *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995) and other "medical products" class actions in which courts have held that the "disregard of class action procedures was of such severity" that immediate review was necessary to correct potential due process violations).

M014625667

This case cries out for such review.  As set forth below, the Circuit Court ignored every legal obstacle that stood between plaintiff and a class trial and instead granted certification of illegitimate claims brought on behalf of an illegitimate class by an illegitimate class representative.  The Circuit Court's "disregard" of Kentucky law and "class action procedures was of such severity" that there is no way to conduct a trial that comports with due process.  Rather, the Circuit Court's orders – in combination – appear intended to force Merck to enter a class settlement involving invalid claims and thereby rob Merck of its appellate rights.  For all of these reasons, a writ of mandamus should issue.

## A.   The Circuit Court Ignored Controlling Kentucky Law.

The Circuit Court first erred by allowing plaintiff to proceed – whether individually or on behalf of a class – with claims that have been barred by the Kentucky Supreme Court in *Wood* and by this Court in *Skilcraft*.

In *Wood*, just as in this case, the plaintiff alleged product liability claims on behalf of users of a drug that she claimed "significantly increased risk of serious injury and disease." 82 S.W.3d at 851.  The plaintiff asserted claims for negligence, strict liability, concert of action and enterprise liability, seeking reimbursement of the amount she paid for the drug, as well as medical examination and monitoring costs. *Id.*  Because plaintiff did not allege that she actually suffered any present physical injury as a result of taking the drug, the trial court, intermediate appellate court and Kentucky Supreme Court all agreed that her claims failed as a matter of law.  In its opinion affirming dismissal of the plaintiff's claims, the Supreme Court held that tort claims based on allegedly defective products are barred under Kentucky law where the plaintiff was not physically injured by the product.  The Supreme Court's ruling could not have been more emphatic: "[n]o

M014625668

cause of action accrues" under Kentucky law "until the potentially harmful exposure actually 'causes injury that produces loss or damage.'" *Id.* at 855 (quoting *Capital Holding v. Bailey*, 873 S.W.2d 187, 192 (Ky. 1994) (holding that "mere ingestion of a toxic substance does not constitute sufficient physical harm upon which to base a claim for damages")). According to the Supreme Court, "[w]ithout an actual injury requirement, any subjective harm suffered by any person could give rise to tort liability." *Id.* at 856. The court explained that such a requirement was especially important "[i]n the arena of toxic or harmful substances" where "any exposure might result in litigation, supported only by speculative fears of future injury and costs." *Id.* Thus, the court concluded, "a plaintiff must have sustained some physical injury" to state a claim in tort; "[t]o find otherwise would force us to stretch the limits of logic and ignore a long line of legal precedent." *Id.* at 854.

Plaintiff's claims here are just like those rejected in *Wood*. Mr. Ratliff alleges that Merck failed to disclose the cardiovascular risks of Vioxx. But Mr. Ratliff does not claim to have suffered any cardiovascular injury as a result of using Vioxx. Instead, his claims are premised on the notion that he ***could*** have been injured as a result of taking the drug. As the Supreme Court made clear in *Wood*, this is not a valid allegation of injury capable of giving rise to a tort claim – it is simply "speculative fear[] of future injury and costs." *Id.* at 856.

At oral argument, plaintiff's counsel did not even attempt to distinguish the *Wood* ruling. Instead, he merely asserted that whether Mr. Ratliff "suffered physical harm because of Vioxx is not the claim here. It's just not. And it's not the claim for anyone else. The claim is did they adequately disclose it and did people rely on it and buy the

M014625669

substance?" (Hearing Tr. 74:20-25.)   The Circuit Court similarly did not ask either side

any questions about *Wood* and did not address *Wood* in its ruling.   Rather, the Circuit

Court simply ignored this controlling decision – and the fact that it dooms plaintiff's

claims.   The Court should grant mandamus to correct this manifest and prejudicial error.[2]

The Circuit Court also ignored this Court's holding that a plaintiff suing under the

KCPA must be in privity with the defendant.   *See Skilcraft*, 836 S.W.2d 907 (affirming

summary judgment in favor of defendant on KCPA claim because the plaintiff did not

buy the construction vehicle at issue directly from the defendant).   As this Court

explained in *Skilcraft*, "[t]he legislature intended that privity of contract exist between the

parties in a suit alleging a violation of the Consumer Protection Act." *Id.* at 909.   Indeed,

the very "language of the [KCPA] plainly contemplates an action by a purchaser against

his immediate seller." *Id.*   Based on this holding, courts have consistently held that

individuals who did not engage in a direct business transaction with the defendant cannot

state a claim under the KCPA. *See, e.g., Alfred v. Mentor Corp.*, No. 05-483-C, 2007

WL 708631, at *7-8 (W.D. Ky. Mar. 5, 2007) (granting summary judgment in

defendant's favor on KCPA claim due to lack of privity); *Ky. Laborers Dist. Council v.*

*Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 772-73 (W.D. Ky. 1998) (dismissing KCPA

---

[2]        Even if Kentucky law recognized product liability claims based solely on economic loss – rather
than personal injury – Mr. Ratliff's claims would still be barred because he had no loss.  While Mr. Ratliff
now claims that he would have used a less expensive herbal remedy to treat the symptoms for which he was
prescribed Vioxx if he had known of the drug's risks (*see* Hearing Tr. 76:2-3), there is absolutely no
support for this allegation in the record.  To the contrary, the record shows that after he stopped using
Vioxx, Mr. Ratliff switched to another prescription pain medication called Daypro. (*See* Ratliff Dep.
40:19-42:5.)  Mr. Ratliff was still taking Daypro at the time of his deposition. (*Id.*)  And under Mr.
Ratliff's insurance plan, he paid the same co-pay for Vioxx as he did for Daypro.  In other words, Mr.
Ratliff paid $5 a month when he took Vioxx – and he paid $5 a month when he stopped taking Vioxx and
switched to another drug. (*See id.* 33:15-34:4.)

M01462567.0

claim due to lack of privity); *Tallon v. Lloyd & McDaniel*, 497 F. Supp. 2d 847, 854-55 (W.D. Ky. 2007) (same).

Mr. Ratliff – and the absent class members – cannot satisfy the privity requirement because they bought Vioxx from retail pharmacies and not from Merck. Once again, the Circuit Court ignored on-point precedent and allowed plaintiff to go forward – on behalf of what he claims are 200,000 absent class members – with causes of action that this Court has held are illegitimate. For this reason too, a writ of mandamus should issue to the Circuit Court.

B.   **The Circuit Court's Class Certification Order Endorses A Class Trial That Manifestly Fails The Requirements Of Rule 23.02.**

Like its perfunctory summary judgment order, the Circuit Court's class certification order was not simply erroneous – rather, it reflects a total disregard for the requirements of Kentucky law. Of greatest concern, the Circuit Court utterly failed to address how the predominance and superiority requirements of Rule 23.02(c) can possibly be satisfied in a case such as this one, where each class member must separately prove that his or her doctor would have prescribed a different drug if more information had been available about the alleged risks of Vioxx.

A plaintiff seeking class certification under Rule 23.02(c) must demonstrate "that common questions of law or fact predominate over any questions affecting an individual member and that a class action is the best method available for a fair and efficient adjudication." *Trabue v. Tichenor*, 695 S.W.2d 432, 434 (Ky. App. 1985). The predominance requirement asks whether the proposed class members' claims are sufficiently similar that a trial of the named plaintiffs' claims will fairly resolve the claims of all the putative class members. *See Adams v. Fed. Materials Co.*, No. 5:05-CV-

M014625671

90-R, 2006 WL 3772065, at *10-11 (W.D. Ky. Dec. 19, 2006) (class certification is not appropriate where questions related to individual class members would "overwhelm commonly decided issues"). Similarly, a plaintiff cannot show that a class action is the "superior" mechanism to resolve the putative class members' claims if a "combined adjudication of class members' claims would involve individual determinations" on key issues, rendering the trial unmanageable. *See id.* at *11. The Circuit Court's order ignores these requirements altogether, offering no explanation as to how they can possibly be met where, as here, each proposed class member's claims turn on individualized evidence related to causation.

Mr. Ratliff alleges a claim for common law fraud and a claim under the KCPA. In order to prevail on these claims, it is not enough – as plaintiff suggested at oral argument – to simply allege a misrepresentation. (*See* Hearing Tr. 50:13-17.) Rather, a plaintiff must prove causation to prevail under the KCPA and reliance to prevail on a claim for common law fraud. *Denzik v. Denzik*, 197 S.W.3d 108, 110 (Ky. 2006) (common law fraud actions require proof that the plaintiff "acted in reliance" on a material misrepresentation, therefore "causing injury"); Ky. Rev. Stat. Ann. § 367.220(1) (plaintiff must prove an "ascertainable loss of money or property . . . as a result of the use" of a prohibited act). Moreover, the fact that this is a class action does not vitiate the substantive elements of Kentucky law. *See Richey v. Richey*, 389 S.W.2d 914, 919 (Ky. 1965) ("Rules of court are procedural. They cannot affect substantive law."); *see also Elk Horn Coal Corp. v. Cheyenne Res., Inc.*, 163 S.W.3d 408, 423 n.68 (Ky. 2005).

Nonetheless, the Circuit Court again turned a blind eye to Kentucky law, simply adopting – without explanation – plaintiff's proposed order, which summarily states that

13

M014625672

"a Class Action pursuant to Rules 23.01 and 23.02(c) should be, and hereby is, granted."
(*See* Class Certification Order at 1.)  Had the Circuit Court properly considered what
evidence each class member would have to present to prove his or her fraud claims, it
would have almost certainly recognized that because the elements of reliance and
causation can only be proven through individualized evidence, plaintiff's class fails both
the predominance and superiority requirements of Rule 23.02(c).  Indeed, court after
court has rejected similar class actions for this very reason.  *See, e.g., Kleinman v. Merck*,
Nos. ATL-L-3954-04, ATL-L-3954-05, 2009 WL 699939, slip op. at 13-14 (N.J. Super.
Ct. Law Div. Mar. 17, 2009) (denying certification of Vioxx claims asserted under the
New Jersey Consumer Fraud Act because the causation inquiry would be highly
individualized; "[t]he decision of whether to prescribe a medication is made upon a host
of individualized factors, including other risk factors the plaintiffs possessed and whether
other drugs were effective in relieving the plaintiff's pain"); *In re Vioxx Class Cases*, 180
Cal. App. 4th 116, 134 (Cal. App. 2d Dist. 2009) (affirming trial court's refusal to certify
class of Vioxx users alleging consumer fraud claims, in part because of the individualized
nature of the necessary reliance inquiry; "[s]ome patients would still take [Vioxx] today .
. . [and] some physicians would still prescribe it . . . because, for some patients, the
benefits outweigh the risks"); *In re St. Jude Med., Inc.*, 522 F.3d 836, 838-40 (8th Cir.
2008) (reversing certification of alleged economic loss claims involving medical device;
"resolution of [defendant's] potential liability to each plaintiff under the consumer fraud
statutes will be dominated by individual issues of causation and reliance"); *In re
Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 331 (D. Mass.
2009) (refusing to certify class of Neurontin users asserting consumer fraud claims based

M014625673

on allegation that defendant drug company marketed drug for off-label uses because of the individualized nature of the causation inquiry); *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 567 (E.D. Ark. 2005) (denying certification of claims involving hormone replacement therapy; plaintiffs' consumer fraud claims "require individualized proof" regarding causation, including "[w]hether a plaintiff saw an advertisement; whether the particular advertisement was fraudulent; whether that plaintiff relied on the advertisement[]; and whether the plaintiff was damaged as a result of the advertisement"); *In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003) (refusing to certify class of users of prescription anti-depressant Paxil alleging consumer fraud and other claims because, *inter alia*, "[w]hether, and to what extent, Paxil" is a reasonable treatment for each patient varies based on "the underlying illnesses and medical history of each individual plaintiff" and therefore requires individualized evidence); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 67-69 (S.D.N.Y. 2002) ("while there no doubt are common questions concerning the characteristics of Rezulin and the manner in which FDA approval was obtained, individual questions, particularly but not limited to causation and reliance, overwhelm those common issues").

The Circuit Court here should have reached the same conclusion.  In order to satisfy the causation and reliance elements of their KCPA and common law fraud claims, the class members must prove that:  (1) their doctors would have refused to prescribe Vioxx if more risk information had been provided by Merck; or (2) they would have refused to take the drug if it was prescribed to them.  The record before the Circuit Court made it clear that the proposed class members could only prove these elements of their claims through highly individualized evidence, making class certification inappropriate.

15

M014625674

First, the record before the Circuit Court was clear that doctors would have reacted differently to more information about the alleged risks of Vioxx depending on their own prescribing habits and, more importantly, their patients' individual needs. As Mr. Ratliff's own physicians made clear, the decision to prescribe a drug to a particular patient is made "on an individual basis" using a "trial and error" process. (Gibson Dep. 22:18-23:1; *see also* Pampati Dep. 31:23-32:4 ("the assessment of what is an appropriate treatment for pain and inflammation for a particular patient, is . . . a very individualized decision").) Accordingly, doctors may prescribe drugs with known risks if the particular patient's need for the drug outweighs those risks. Indeed, Dr. Pampati has testified that she would still prescribe Vioxx today to a "select group of patients" whose need for the drug would outweigh the risks. (*See* Pampati Dep. 49:24-50:1.) Similarly, plaintiff's other prescribing physician – Dr. Gibson – stated that he would still prescribe Vioxx if it were on the market. (*See* Gibson Dep. 37:21-38:1.) According to Dr. Gibson, Vioxx is still a "useful drug" for a number of patients. (*Id.* 43:5-8.)

Second, the record before the Circuit Court was also clear that the only way to determine whether class members would have agreed to take Vioxx – if their doctors had continued to prescribe it – would be to conduct individual mini-trials on causation/reliance. Again, Mr. Ratliff's own allegations and experiences highlight the problem. Mr. Ratliff claims that he would have used herbal supplements to treat his arthritis pain if he had been given more information about Vioxx's alleged risks. (*See* Hearing Tr. 76:2-3.) But the evidence in the record shows that when Mr. Ratliff stopped taking Vioxx, he began taking another prescription NSAID – Daypro – which now carries a warning about cardiovascular risks. (*See* Ratliff Dep. 42:10-14.) At his deposition, Mr.

M014625675

Ratliff admitted that he had never read the Daypro warning label – and that he was still taking the drug despite the strengthened warning. (*Id.* 128:5-8) Mr. Ratliff has also taken prescription narcotics and other pain relievers such as Oxycontin with no apparent concern about their well-publicized risks. (*Id.* 40:19-42:9.) A jury would have to weigh all of this evidence to determine whether Mr. Ratliff would have in fact stopped taking Vioxx if Merck had disclosed more risk information. And the same type of individualized inquiry would then be necessary for each of the Kentucky residents included in the proposed class.[3]

At oral argument, plaintiff's counsel did not even attempt to demonstrate that causation and reliance could be proven on a classwide basis. Instead, he claimed that these elements should be read out of the KCPA and centuries of established common law fraud jurisprudence: "the only issue in this case is this: Did [Merck] tell the truth? If it didn't, then [Merck is] liable for having negligently misrepresented the risks or failed to disclose the risks associated with the use of Vioxx." (Hearing Tr. 50:13-17.) According to plaintiff, "this is a reimbursement case" – not a personal injury action – and therefore there is no need to consider individualized evidence of causation or reliance.[4] (*Id.* 51:9-

---

[3]     The Circuit Court should have denied certification of plaintiff's unjust enrichment claims for similar reasons. After all, a claim for unjust enrichment requires proof that the defendant received a benefit at the plaintiff's expense under circumstances that would make it "unjust" for the defendant to retain it. *Tractor & Farm Supply, Inc. v. Ford New Holland, Inc.,* 898 F. Supp. 1198, 1206 (W.D. Ky. 1995). This necessarily requires an inquiry into the reasons why each class member used Vioxx, the benefit he or she received from it, and whether that benefit was outweighed by the alleged risks. For this reason, courts have recognized that unjust enrichment claims – like consumer fraud claims – are not certifiable where they turn on allegedly undisclosed risks of a prescription drug. *See, e.g., In re Rezulin,* 210 F.R.D. at 69; *In re Vioxx,* 180 Cal. App. 4th at 135 n.20; *Kleinman v. Merck,* 2009 WL 699939, slip. op. at 15; *In re Prempro,* 230 F.R.D. at 567.

[4]     This argument contradicted the allegations in plaintiff's complaint – which clearly pled causation as an element of his fraud-based claims (*see* Am. Compl. ¶¶ 33, 37-38) – as well as plaintiff's counsel's statement during argument on Merck's motion for summary judgment that plaintiff's fraud claims require

*(cont'd)*

M014625676

14.)  Plaintiff's counsel further argued – without citation to any legal precedent – that the

elements of causation and reliance can simply be presumed if plaintiff is able to establish

that Merck made a misrepresentation about Vioxx.  (*Id.* 59:14-20.)

In adopting plaintiff's one-sentence order granting class certification, the Circuit

Court appears to have accepted this deeply flawed argument.  That erroneous approach

sets the stage for a trial in which core elements of the KCPA and common law fraud are

thrown out the window – and Merck is denied the ability to fairly defend itself against the

class members' allegations.  The Circuit Court thus gave Merck a Hobson's choice:  to

undergo a trial that cannot possibly comport with due process or settle plaintiff's

meritless claims and thereby forgo judicial review of an order that flouts established

Kentucky law.  For this reason too, a writ of mandamus should issue.

### C.   The Circuit Court Erroneously Certified A Class Even Though Mr. Ratliff Manifestly Fails The Adequacy Requirement Of Rule 23.01.

The Circuit Court's certification order was all the more improper and unfair

because Mr. Ratliff is a wholly inadequate class representative.  The Circuit Court

certified a class that consists of "all Kentucky residents who have purchased and taken

VIOXX . . . *and who, upon recommendation and advice of the FDA and Merck have or*

*will contact physicians to seek advice regarding their Vioxx use.*"  (Class Certification

Order at 1 (emphasis added).)  But plaintiff does not have a single shred of evidence that

he ever consulted a doctor about the alleged risks of Vioxx.  As a result, it is not even

clear that Mr. Ratliff has standing to represent the class – and any class trial will

---

*(cont'd from previous page)*
proof that the proposed class members "rel[ied] on" Merck's alleged misrepresentations in buying Vioxx.
(Hearing Tr. 74:20-25.)

MDL4625677

inevitably focus on the veracity of Mr. Ratliff's claims to the detriment of the absent class members.

Under Kentucky law, class certification is proper only where "the representative parties will fairly and adequately protect the interests of the class." *See* Ky. R. Civ. P. 23.01(d). The adequacy prerequisite "is essential to due process, because a final judgment in a class action is binding on all class members." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). As courts have recognized, a proposed class representative is inadequate if his claims suffer from unique weaknesses that compromise the representative's ability to fairly act as a surrogate for absent class members. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998) (citation and internal quotations omitted). This is because "[a] class representative should not be permitted to impose . . . a disadvantage on the [absent] class" members that they would not face if they were to try their claims individually. *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006). As the U.S. Supreme Court has recognized, class action defendants have a legitimate interest in challenging the adequacy of a proposed class representative because inadequately represented class members may try to mount a collateral due process attack on any decision in favor of the defendants. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985).

Here, the Circuit Court's order allows Mr. Ratliff to stand in the place of Vioxx users throughout the State, whose claims will rise and fall on Mr. Ratliff's ability to prove that he lost money as a result of paying for a medical consultation after Vioxx was withdrawn. But there is absolutely no evidence that Mr. Ratliff ever underwent such a consultation. As set forth above, Mr. Ratliff is unable to provide any details about the

19

M014625678

name of the physician who allegedly examined him, the date of the alleged examination, what types of tests were performed, or even where the consultation took place. (*See* Ratliff Dep. 30:2-21; 52:24-53:24.)  Indeed, he did not even know he was seeking recovery for such an alleged visit until after a break in his deposition. (*Id.* 52:9-23.)  In addition, none of Mr. Ratliff's medical records contain any reference to this supposed examination, and Mr. Ratliff – who claims he paid $180 in cash for his medical consultation – does not have any documentary evidence that the visit in fact occurred. (*Id.* 30:2-21; 52:24-53:24; 53:13-15.)  Under such circumstances, the adequacy requirement cannot be satisfied. *See Solo v. Bausch & Lomb Inc.*, Nos. 2:06-MN-77777-DCN, No. 2:06-CV-02716-DCN, 2009 U.S. Dist. LEXIS 115029, at *21-22 (D.S.C. Sept. 25, 2009) (denying class certification where proposed class representative offered "inconsistent testimony" about her claimed purchase and discard of allegedly defective contact lens solution, raising questions about whether she was even a member of the proposed class).

As with all the other problems discussed above, the Circuit Court ignored this one too, allowing Mr. Ratliff to go forward as the sole representative of the absent class members – even though he has no real evidence that he is even a member of the class. For this reason too, the Circuit Court's order was in error, and a writ should issue to correct it.[5]

---

[5]    Finally, the Circuit Court's order was also erroneous because it certifies a class that is not ascertainable. *Eversole v. EMC Mortgage Corp.*, No. 05-124-KSF, 2007 U.S. Dist. LEXIS 38892, at *12-13 (E.D. Ky. May 29, 2007) (a "class must be sufficiently defined" so that it will be "administratively feasible for the court to determine whether a particular individual is a member").  This is so for two reasons.  First, the class definition includes "all Kentucky residents who have purchased and taken Vioxx and who, upon the recommendation and advice of the FDA and Merck, have *or will* contact their physicians to seek advice regarding their use of Vioxx." (*See* Am. Compl. ¶ 3 (emphasis added).)  Thus, part of the class definition is contingent on future actions by potential class members.  Obviously, it is impossible to

*(cont'd)*

M014625679

IV.    **CONCLUSION**

For the foregoing reasons, Merck's petition for a writ of mandamus should be granted, and the Court should issue an order directing the Circuit Court to enter judgment in Merck's favor or, at a minimum, to vacate its order certifying the class.

Dated:  May 6, 2010

Respectfully submitted,

*Susan J. Pope*

SUSAN J. POPE
FROST BROWN TODD LLC
250 W. Main Street, Suite 2800
Lexington, KY 40507-1749
(859) 231-0000

*Counsel for Petitioner Merck Sharp &
Dohme Corp., f/k/a Merck & Co., Inc.*

AND

JOHN H. BEISNER
JESSICA DAVIDSON MILLER
NINA H. RAMOS
SKADDEN, ARPS, SLATE,
MEAGHER
& FLOM LLP
1440 New York Avenue, NW
Washington, DC 20005

*Of Counsel for Petitioner
Pro Hac Vice Requests Pending*

---

*(cont'd from previous page)*
determine whether individuals will seek a medical consultation at some point *in the future*. As a result, the class is not "sufficiently defined." Second, even as to the portion of the class definition that includes individuals who did "contact their physicians to seek advice regarding their use of Vioxx," the class definition will require mini-trials simply to determine class membership. This is evidenced by the uncertainty over whether Mr. Ratliff himself is a member of the class. For this reason too, a writ should issue.

M014625680

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via hand delivery or U.S. mail on this the 6th day of May, 2010, to the following:

Richard A. Getty
Kris Collman
Getty & Childers, PLLC
250 West Main Street, Suite 1900
Lexington, KY 40507
*Via Hand Delivery*

Honorable Steven Combs
Pike Circuit Court
423 Hall of Justice
172 Division Street
Pikeville, KY 41501
*Via U.S. Mail*

*Susan J. Pope*
*Counsel for the Petitioner*

M014625681