**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re:  VIOXX ) | MDL NO. 1657 |
| ) | |
| PRODUCTS LIABILITY LITIGATION ) | SECTION: L |
| ) | |
| ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| ) | |
| ALL PURCHASE CLAIMS CLASS ) | JURY TRIAL DEMANDED |
| ACTION COMPLAINTS PENDING OR ) | |
| SUBJECT TO TRANSFER TO ) | PURCHASE CLAIMS MASTER |
| MDL 1657 ) | CLASS |
| ) | |

## MEMORANDUM IN SUPPORT OF MERCK'S MOTION FOR JUDGMENT ON THE PLEADINGS OR TO STRIKE CLASS ALLEGATIONS IN PURCHASE CLAIMS MASTER COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

BACKGROUND ............................................................................................................. 3

ARGUMENT ................................................................................................................... 8

I.     MERCK IS ENTITLED TO JUDGMENT ON THE PLEADINGS BECAUSE
PLAINTIFFS CANNOT STATE CLAIMS FOR RELIEF. ............................................ 9

     A.     Plaintiffs Fail To Allege Any Plausible Claims – Or To Plead Their Fraud-
Based Claims With The Requisite Particularity.................................................... 10

     B.     Plaintiffs Cannot State Claims For Relief Because They Do Not Allege A
Cognizable Injury. ............................................................................................ 16

     C.     Plaintiffs' Claims Fail For Other Reasons As Well. ........................................... 20

II.    THE COURT SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS................ 29

CONCLUSION .............................................................................................................. 40

1021834v.1

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### FEDERAL CASES

*Aguilar v. Allstate Fire & Casualty Insurance Co.*,
   No. 06-4660 Section "F," 2007 U.S. Dist. LEXIS 16073 (E.D. La. Mar. 6, 2007) ........... 30

*In re Air Bag Products Liability Litigation*,
   7 F. Supp. 2d 792 (E.D. La. 1998) ................................................................................. 16

*Alfred v. Mentor Corp.*,
   No. 05-483-C, 2007 WL 708631 (W.D. Ky. Mar. 5, 2007) ............................................. 23

*Allgood v. General Motors Corp.*,
   No. 1:02-cv-1077-DFH-TAB, 2006 U.S. Dist. LEXIS 70764 (S.D. Ind. Sept. 18,
   2006) .............................................................................................................................. 28

*Aschroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................. 9, 10, 11

*In re Baycol Products Litigation*,
   265 F.R.D. 453 (D. Minn. 2008) ..................................................................................... 37

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 9, 11

*Blain v. SmithKline Beecham Corp.*,
   240 F.R.D. 179 (E.D. Pa. 2007) ..................................................................................... 39

*Blommer Chocolate Co. v. Bongards Creameries, Inc.*,
   635 F. Supp. 911 (N.D. Ill. 1985) ................................................................................... 25

*Bober v. Glaxo Wellcome, PLC*,
   246 F.3d 934 (7th Cir. 2001) ...................................................................................... 22-23

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*,
   288 F.3d 1012 (7th Cir. 2002) ........................................................................................ 16

*Briehl v. General Motors Corp.*,
   172 F.3d 623 (8th Cir. 1999) .......................................................................................... 16

*Castano v. American Tobacco Co.*,
   84 F.3d 734 (5th Cir. La. 1996) ................................................................................... 2, 31

*Chin v. Chrysler Corp.*,
   182 F.R.D. 448 (D.N.J. 1998) ........................................................................................ 16

*Clay v. American Tobacco Co., Inc.*,
   188 F.R.D. 483 (S.D. Ill. 1999) ...................................................................................... 37

*Cohen v. Implant Innovations, Inc.*,
   259 F.R.D. 617 (S.D. Fla. 2008) .................................................................................... 36

1021834v.1

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) .......................................................................... 28

*Cunningham v. Interlake Steamship Co.*,
    No. 5:06-cv-1641, 2007 U.S. Dist. LEXIS 9583 (N.D. Ohio Feb. 8, 2007) ...................... 15

*De Pue v. Sears, Roebuck & Co.*,
    No. 1:89-CV-972, 1992 U.S. Dist. LEXIS 14931 (W.D. Mich. May 20, 1992) ............... 14

*Dewitt Construction Inc. v. Charter Oak Fire Insurance Co.*,
    307 F.3d 1127 (9th Cir. 2002) .......................................................................... 14

*Flexicorps, Inc. v. Trend Techs., Inc.*,
    No. 01 C 1754, 2002 U.S. Dist. LEXIS 16994 (N.D. Ill. Sept. 10, 2002) ......................... 28

*Garcia v. Wyeth-Ayerst Laboratories*,
    385 F.3d 961 (6th Cir. Mich. 2004) .................................................................... 21

*General Telephone Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982) ...................................................................................... 29

*Gonzalez v. Bristol-Myers Squibb Co.*,
    No. 3:07-cv-00902 (FLW), 2009 U.S. Dist. LEXIS 121093 (D.N.J. Dec.
    30, 2009) .........................................................................................11, 12, 15

*Heindel v. Pfizer, Inc.*,
    381 F. Supp. 2d 364 (D.N.J. 2004) .................................................................... 18

*Henry v. Allstate Insurance Co.*,
    No. 07-1738 Section "F", 2007 U.S. Dist. LEXIS 57822 (E.D. La. Aug. 8, 2007) ........... 29

*Holeman v. Neils*,
    803 F. Supp. 237 (D. Ariz. 1992) ...................................................................... 14

*Hubbard v. General Motors Corp.*,
    No. 95 Civ. 4362 (AGS), 1996 U.S. Dist. LEXIS 6974 (S.D.N.Y. May 22, 1996) ........... 25

*Kentucky Laborers District Council v. Hill & Knowlton, Inc.*,
    24 F. Supp. 2d 755 (W.D. Ky. 1998) .................................................................. 23

*Luna v. Del Monte Fresh Produce (Southeast), Inc.*,
    354 F. App'x 422 (11th Cir. 2009) .................................................................... 31

*Moore v. Dallas Independent School District*,
    No. 08-11220, 2010 U.S. App. LEXIS 5432 (5th Cir. Mar. 12, 2010) ............................. 9

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation*,
    257 F.R.D. 315 (D. Mass. 2009) ........................................................................ 33

*In re Norplant Contraceptive Products Liability Litigation*,
    955 F. Supp. 700 (E.D. Tex. 1997) .................................................................... 33

*In re Paxil Litigation*,
    212 F.R.D. 539 (C.D. Cal. 2003) .................................................................... 2, 39

*In re Prempro Products Liability Litigation*,
    230 F.R.D. 555 (E.D. Ark. 2005) .................................................................... 2, 33

1021834v.1

*In re Rezulin Products Liability Litigation,*
210 F.R.D. 61 (S.D.N.Y. 2002)....................................................................2, 18, 37, 38

*Rivera v. Wyeth-Ayerst Laboratories,*
283 F.3d 315 (5th Cir. 2002)...............................................................................17, 18, 20

*Roberts v. Solideal Tire, Inc.,*
No. 06-14-DLB, 2007 U.S. Dist. LEXIS 75512 (E.D. Ky. Oct. 10, 2007) ....................... 26

*Sanders v. Apple, Inc.,*
672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................................... 30

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,*
No. 2:06-cv-5774, 2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009) ........................ 17

*Schlenk v. Ford Motor Credit Co.,*
308 F.3d 619 (6th Cir. 2002)..................................................................................... 14

*Smith v. Lyons, Doughty & Veldhuius, P.C.,*
No. 07-5139, 2008 U.S. Dist. LEXIS 56725 (D.N.J. July 23, 2008) ................................. 30

*Stepp v. Takeuchi Manufacturing Co.,*
No. C07-5446RJB, 2008 U.S. Dist. LEXIS 80809 (W.D. Wash. Oct. 2, 2008)................. 26

*Tallon v. Lloyd & McDaniel,*
497 F. Supp. 2d 847 (W.D. Ky. 2007)....................................................................... 23

*Thompson v. Merck & Co., Inc.,*
No. 2:01cv1004, 2004 U.S. Dist. LEXIS 540 (E.D. Pa. Jan. 6, 2004) ......................... 29-30

*Tilton v. Playboy Entertainment Group, Inc.,*
No. 8:05-cv-692-T-30TGW, 2007 U.S. Dist. LEXIS 1393 (M.D. Fla. Jan. 8, 2007)......... 27

*In re Toshiba America HD DVD Marketing & Sales Practices Litigation,*
No. 08-939 (DRD), 2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 10, 2009).....12, 13, 15, 16

*In re Vioxx Products Liability Litigation,*
239 F.R.D. 450 (E.D. La. 2006) ............................................................................. 2, 4

*Weaver v. Chrysler Corp.,*
172 F.R.D. 96 (S.D.N.Y. 1997)................................................................................ 16

*Westways World Travel, Inc. v. AMR Corp.,*
265 F. App'x 472, 476 (9th Cir. 2008) ................................................................. 36-37

*Willett v. Baxter International, Inc.,*
929 F.2d 1094 (5th Cir. 1991)...............................................................................18, 19

*Williams v. Purdue Pharm. Co.,*
297 F. Supp. 2d 171 (D.D.C. 2003).......................................................................... 19

*Zehel-Miller v. AstraZenaca Pharm., LP,*
223 F.R.D. 659 (M.D. Fla. 2004) .............................................................................. 2

*Zinser v. Accufix Research Institute, Inc.,*
253 F.3d 1180 (9th Cir. 2001).................................................................................. 31

iv

## STATE CASES

*A&M Supply Co. v. Microsoft Corp.*,
No. 274164, 2008 Mich. App. LEXIS 433 (Mich. Ct. App. Feb. 28, 2008) ...................... 27

*American Bumper & Manufacturing Co. v. Transtechnology Corp.*,
652 N.W.2d 252 (Mich. Ct. App. 2002) .......................................................................... 25

*Atlantic Pipe Corp. v. R. J. Longo Construction Co.*,
622 N.E.2d 279 (Mass. App. Ct. 1993) ........................................................................... 25

*Avery v. State Farm Mutual Automobile Insurance Co.*,
835 N.E.2d 801 (Ill. 2005) .............................................................................................. 14

*Brick Construction Corp. v. CEI Development Corp.*,
710 N.E.2d 1006 (Mass. App. Ct. 1999)......................................................................... 27

*C.F. Seabrook Co. v. Beck*,
417 A.2d 89 (N.J. Super. Ct. App. Div. 1980) ................................................................ 10

*Captain & Co. v. Stenberg*,
505 N.E.2d 88 (Ind. Ct. App. 1987) ................................................................................ 14

*Castro v. NYT Television*,
851 A.2d 88 (N.J. Super. App. Div. 2004)...................................................................... 10

*Connick v. Suzuki Motor Co.*,
675 N.E.2d 584 (Ill. 1996) .............................................................................................. 25

*Duronio v Merck & Co, Inc.*,
No. 267003, 2006 Mich. App. LEXIS 1841 (Mich. Ct. App. June 31, 2006) ..............21, 22

*Flory v. Silvercrest Industrial Inc.*,
633 P.2d 383 (Ariz. 1981)............................................................................................... 26

*Forton v. Laszar*,
622 N.W.2d 61 (Mich. 2001) .......................................................................................... 22

*General Motors Acceptance Corp. v. Laesser*,
718 So. 2d 276 (Fla. Dist. Ct. App. 1998) ...................................................................... 14

*Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*,
840 N.E.2d 526 (Mass. 2006)......................................................................................... 14

*International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.,
Inc.*,
929 A.2d 1076 (N.J. 2007).............................................................................................. 10

*Johnson v. Microsoft Corp.*,
802 N.E.2d 712 (Ohio Ct. App. 2003)............................................................................ 27

*Kleinman v. Merck & Co., Inc.*,
No. ATL-L-3954-04, 2009 WL 699939 (N.J. Super. Ct. Law Div. Mar. 17, 2009).....passim

1021834v.1

*Kraft v. Detroit Entertainment, LLC,*
    683 N.W.2d 200 (Mich. Ct. App. 2004) ......................................................................... 22

*In re Lead Paint Litigation,*
    924 A.2d 484 (N.J. 2007)................................................................................................. 10

*Lynx, Inc. v. Ordnance Products, Inc.,*
    327 A.2d 502 (Md. App. Ct. 1974)............................................................................. 25-26

*McClure Oil Corp. v. Murray Equip., Inc.,*
    515 N.E.2d 546 (Ind. Ct. App. 1987) ............................................................................ 25

*Mulligan v. QVC, Inc.,*
    888 N.E.2d 1190 (Ill. Ct. App. 2008) ............................................................................ 17

*Plubell v. Merck & Co., Inc.,*
    No. 04-CV-235817 (Mo. Cir. Ct. Jackson County July 19, 2006)................................... 34

*Plubell v. Merck & Co.,*
    No. 04-CV-235817-01 (Mo. Cir. Ct. Jackson County June 12, 2008)................................ 2

*Porter v. Merck & Co., Inc.,*
    No. 04-CV-586, 2005 WL 3719630 (Kan. Dist. Ct. Aug. 19, 2005) ................................ 19

*Russell v. Atkins,*
    679 A.2d 333 (Vt. 1996) ................................................................................................. 14

*Scannell v. Attorney General,*
    872 N.E.2d 1136 (Mass. App. Ct. 2007)........................................................................ 17

*Sinclair v. Merck & Co., Inc.,*
    948 A.2d 587 (N.J. 2008)................................................................................................. 10

*Skilcraft Sheetmetal, Inc. v. Kentucky Mach., Inc.,*
    No. 91-CA-862-MR, 1992 Ky. App. LEXIS 175 (Ky. App. July 24, 1992)................22, 23

*Stearns v. Select Comfort Retail Corp.,*
    No. 08-2746 JF (PVT), 2009 WL 4723366 (N.D. Cal. Dec. 4, 2009) ............................... 30

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ...................................................................................................... 6

*Tokar v. Crestwood Imports, Inc.,*
    532 N.E.2d 382 (Ill. App. Ct. 1998) .............................................................................. 26

*In re Vioxx Class Cases,*
    180 Cal. App. 4th 116 (2d Dist. Ct. App. 2009)......................................................passim

*In re Vitamins Antitrust Litigation,*
    Nos. MISC 99-197, MDL 1285, 2001 WL 849928 (D.D.C. Apr. 11, 2001)..................... 27

*Weiss v. Johansen,*
    898 So. 2d 1009 (Fla. Dist. Ct. App. 2005) .................................................................. 26

*Wood v. Wyeth-Ayerst Laboratories,*
    82 S.W.3d 849 (Ky. 2002) .............................................................................................. 20

**FEDERAL RULE**

Fed. R. Civ. P. 12(c) ................................................................................................................ 9

**STATUTES**

815 Ill. Comp. Stat. §505/10b(1) ............................................................................................ 22

U.C.C. § 2-607 ...................................................................................................................... 24

**OTHER AUTHORITY**

Clark & Smith, *The Law of Product Warranties*, ¶ 10.01[1], at 10-3 (1984) ............................ 24

1021834v.1

Plaintiffs are former users of Vioxx who claim that Merck's alleged misrepresentations about Vioxx induced physicians to prescribe the drug – and consumers to purchase it. But plaintiffs' Master Complaint does not identify any misrepresentations that they, or their doctors, actually saw or heard about Vioxx, much less explain how any such alleged misrepresentation affected their doctors' decisions to prescribe the drug – or their decision to use it. As a result, plaintiffs have failed to allege any connection between their Vioxx purchases and the alleged wrongdoing by Merck. In addition, plaintiffs have not alleged that they suffered any injury as a result of purchasing Vioxx. Plaintiffs do not claim that they experienced physical ailments as a result of using Vioxx or that the drug did not work for them. Instead, plaintiffs' apparent theory – rejected by court after court, including the U.S. Court of Appeals for the Fifth Circuit – is that they are entitled to recover simply because Vioxx had a *risk* of physical injury, which they admittedly never suffered. As set forth below, these (and other) fundamental deficiencies in plaintiffs' allegations are fatal to each of their causes of action.

Moreover, even if plaintiffs had legitimate claims, those claims could not be tried on a classwide basis because they turn on highly individualized proof. As Judge Carol Higbee recognized in denying certification of identical claims in the New Jersey Vioxx coordinated proceeding, "the decision of whether to prescribe a medication is made upon a host of individualized factors, including other risk factors the plaintiffs possessed and whether other drugs were effective in relieving the plaintiffs' pain." *See Kleinman v. Merck & Co., Inc.*, No. ATL-L-3954-04, 2009 WL 699939, at 13 (N.J. Super. Ct. Law Div. Mar. 17, 2009) (attached as Ex. 1) (page nos. in slip op.) (refusing to certify a class alleging New Jersey Consumer Fraud Act ("NJCFA") claims). As a result, "an individualized determination would be required for each plaintiff to determine if the concealment of the CV risk information had a causal relationship on

the decision made as to whether or not the patient used Vioxx." *Id.*; *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 134 (2d Dist. Ct. App. 2009) (because "physicians consider many patient-specific factors in determining which drug to prescribe, including the patient's history and drug allergies, the condition being treated, and the potential for adverse reactions with the patient's other medications," it could not be presumed that any one statement by Merck was the material factor that drove all physicians' prescribing decisions); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 461 (E.D. La. 2006) (denying nationwide certification of various claims where "numerous individualized issues such as[] the alleged injury; what Merck knew about the risks of the alleged injury . . . what Merck told physicians and consumers . . . and whether the plaintiffs' physicians would still have prescribed Vioxx had stronger warnings been given" "preclude[d] a finding of predominance"); *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 567 (E.D. Ark. 2005) (denying motion for class certification of consumer fraud and other claims in prescription drug case because individual questions of fact predominated); *Zehel-Miller v. AstraZenaca Pharm., LP*, 223 F.R.D. 659, 663-64 (M.D. Fla. 2004) (refusing to certify refund class in prescription drug case because "[i]ndividual issues [] abound"); *In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003) (finding that common issues of fact did not predominate in proposed class action where drug's effect on plaintiffs varied); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 65-67 (S.D.N.Y. 2002) (denying class certification in prescription drug case where claims "raise[d] a host of individual issues").[1]

---

[1]     In their most recent filing with this Court, plaintiffs argue that causation is not an obstacle to class certification in Vioxx cases, citing *Plubell v. Merck & Co.*, No. 04-CV-235817-01 (Mo. Cir. Ct. Jackson County June 12, 2008) (attached as Ex. 2).  In that case, a Missouri trial court did certify a class of Missouri Vioxx purchasers alleging violations of the state's consumer protection law.  The *Plubell* decision is inapposite, however, because that court certified plaintiffs' claims under Missouri's class certification standard, which it held was satisfied as long as there is "[a] single common issue" that applies to all proposed class members' claims.  *Id.*  This is not the standard for certification under Federal Rule 23.  *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) (under Rule 23, it is clear that "a cause of action, as a whole [not just one small part], must satisfy the predominance requirement of (b)(3)").  A Kentucky trial court also certified a Vioxx economic loss class action

For these reasons, the Court should enter judgment on the pleadings in favor of Merck or strike plaintiffs' class claims.

## BACKGROUND

Plaintiffs' Purchase Claims Master Class Action Complaint ("Master Complaint" or "Compl.") originally asserted claims on behalf of 27 named plaintiffs from 12 states and the District of Columbia.  Those named plaintiffs included:  (1) individual consumers who bought Vioxx for themselves and are the subject of this motion; (2) third-party payor ("TPP") entities such as health insurance plans that paid for Vioxx for their members and/or insureds (and have since settled their claims against Merck); and (3) interest groups apparently seeking to interpose claims on behalf of their members (who appear to no longer be pursuing their claims).  The individual consumers included in the Master Complaint are from nine states:  Arizona, Florida, Illinois, Indiana, Kentucky, Massachusetts, Michigan, Vermont and Washington.

Plaintiffs claim that Merck "intentionally, recklessly, and/or negligently concealed, suppressed, omitted, and misrepresented the dangers, defects, and disadvantages of Vioxx." (Compl. ¶ 2.)  Plaintiffs further claim that Merck engaged in a "marketing campaign [that] specifically targeted third party payors, physicians, and consumers, and was designed to convince them of both the therapeutic and economic value of Vioxx."  (*Id.* ¶ 9.)  Plaintiffs argue that despite Merck's representations, Vioxx "was no more effective than traditional and less expensive NSAIDs."  (*Id.* ¶ 11.)  Plaintiffs further allege that, as a result of Merck's "omission, suppression, and concealment of this important information," Vioxx was "sold to, and purchased, or paid for by, the End-Payors at a grossly inflated price."  (*Id.* ¶ 12.)

---

in a one-sentence order devoid of any analysis.  *See* Order Certifying Class Action, *Ratliff v. Merck & Co., Inc.*, No. 04-CI-01493 (Ky. Cir. Court Pike County, Apr. 2, 2010) (attached as Ex. 3).  Merck has sought mandamus review of that order.  *See* Mem. Of Law In Supp. Of Merck's Pet. For Relief In The Nature Of A Writ Of Mandamus, *Ratliff v. Merck & Co., Inc.*, No. 2010-CA-000873 (Ky. Ct. App.) (attached as Ex. 4).

1021834v.1

Based on these allegations, plaintiffs assert claims for violation of the NJCFA (Count I, Compl. ¶¶ 199-209) (even though none of the named plaintiffs is from New Jersey), violations of the consumer protection laws of other states (Count II, Compl. ¶¶ 210-262), unjust enrichment (Count III, Compl. ¶¶ 263-267) and breach of implied warranty (Count IV, Compl. ¶¶ 268-324). Plaintiffs seek actual, compensatory and punitive damages, as well as costs and attorneys' fees. (Compl., Prayer for Relief.)  Plaintiffs originally sought certification of a nationwide class, proposing that New Jersey law be applied to all Vioxx users nationwide.  (Compl. ¶ 4.)  In the alternative, plaintiffs sought certification of a number of single-state classes, proposing a novel procedure by which the cases would be officially "remand[ed]" to their transferor federal district courts, after which this Court would nonetheless sit "by *ad hoc* designation" in those various transferor districts to resolve class certification issues.  (*Id*. ¶¶ 186-87.)[2]

Merck moved to dismiss the Master Complaint on September 15, 2005.  The Court held oral argument on that motion on February 2, 2006, but never ruled on it.  Instead, the Court stated on several occasions that it wanted to give Judges Higbee and Chaney an opportunity to rule on the class certification motions pending in the economic loss class actions in the New Jersey and California state court coordinated proceedings.  (*See, e.g.*, Tr. 20:10-21:11, Mar. 5, 2009 (attached as Ex. 5).)

Those rulings have now been issued.  In the New Jersey action (*Martin/Kleinman*), Judge Higbee denied plaintiffs' motion for class certification on March 17, 2009, concluding that

---

[2]      In their opposition to Merck's Motion For Case Management Order Governing Economic Loss Cases, plaintiffs indicated that they have dropped their proposed nationwide class claims.  (*See* Economic Loss Plaintiffs' Response To Motion And Incorporated Memorandum In Support Of Motion For Case Management Order Governing Economic Loss Cases at 2 (Apr. 5, 2010) ("Pls.' Br.") (arguing that there are currently "30 or more Vioxx consumer class actions on file . . . seeking certification of *statewide* classes under different states' laws" and urging the Court to hold bellwether trials under the law of each of the relevant states) (emphasis added).)  Presumably, plaintiffs have abandoned the nationwide class proposal in light of this Court's holding that New Jersey law cannot be applied uniformly to Vioxx claims alleged by plaintiffs across the country.  *In re Vioxx*, 239 F.R.D. at 456 ("the law of each plaintiff's home jurisdiction [applies] to his or her respective claims").

plaintiffs' claims turn on highly individualized proof that precludes findings of predominance, superiority and typicality. *See Kleinman*, 2009 WL 699939. Judge Higbee found predominance lacking because resolution of plaintiffs' New Jersey Consumer Fraud Act claims would require individualized evidence regarding causation. According to her ruling, "the decision of whether to prescribe a medication is made upon a host of individualized factors, including other risk factors the plaintiffs possessed and whether other drugs were effective in relieving the plaintiffs' pain." *Id*. at 13. Thus, "an individualized determination would be required for each plaintiff to determine if the concealment of the CV risk information had a causal relationship on the decision made as to whether or not the patient used Vioxx." *Id*.

Judge Higbee reached the same conclusion regarding plaintiffs' unjust enrichment claims, noting that there is "no law in New Jersey that allows such a recovery in this type of claim." *Id*. at 15. In her order denying plaintiffs' motion for reconsideration, Judge Higbee further explained that plaintiffs were unable to "demonstrate [any] New Jersey law which would allow recovery" in the form of disgorgement of all profits Merck allegedly obtained from the sale of Vioxx "under the facts alleged in this matter." *See* Mem. Of Decision On Mot. For Reconsideration at 8, *Kleinman v. Merck & Co., Inc.*, No. ATL-L-3954-04 (N.J. Super. Ct. Aug. 13, 2009) (attached as Ex. 6).

Judge Higbee also found "typicality" lacking in *Martin-Kleinman* because of the "multiple differences" in the named plaintiffs' prescription drug histories, holding that: "[a]lthough each plaintiff took Vioxx and paid some price for the drug, the similarities between the two plaintiff[s] end there." *Kleinman*, 2009 WL 699939, at 15-16. For example, one named plaintiff's physician "indicated that he would still prescribe Vioxx if it was available, and he himself continued to take it after it was withdrawn from the market," making that plaintiff

5

atypical of others whose doctors might refuse to prescribe the drug if it were available today.  *Id.*

Finally, Judge Higbee found that a class action would not be "superior to other available

methods" of adjudication for similar reasons, noting that it "would be unfair to Merck to certify a

class and allow a jury to reach a uniform determination of liability where results could vary from

plaintiff to plaintiff."  *Id.* at 16-17.[3]

In the California Vioxx actions, Judge Chaney similarly refused to certify a proposed

class of all California Vioxx consumers and TPPs in April 2009.  In her order denying class

certification, Judge Chaney noted that in order to prevail on their claims under California law,

"each class member must demonstrate . . . that the misrepresentation or nondisclosure influenced

[his or her] prescription decisionmaking."  *In re Vioxx Consol. Class Action*, No. JCCP 4247,

slip op. at 9 (Cal. Super. Ct. Los Angeles County Apr. 30, 2009) (attached as Ex. 7).  The court

found that this inquiry could not possibly be conducted on a classwide basis because of the

myriad, patient-specific factors that influenced physicians to prescribe Vioxx.  *Id.* at 10-11.

Emphasizing that "[n]o evidence suggests prescription decisions are made uniformly on the basis

of advertising," the court held that reliance was not subject to common proof.  *Id.* at 11.

Similarly, Judge Chaney noted that whether each TPP would have decided to cover Vioxx if

more information had been revealed was "an individualized question" not appropriate for a

single class trial.  *Id.*

Plaintiffs appealed Judge Chaney's order to the California Court of Appeal, arguing, *inter*

*alia*, that the California Supreme Court's ruling in *In re Tobacco II Cases*, 46 Cal. 4th 298

(2009), overruled the decision.  The Court of Appeal disagreed and affirmed the denial of class

certification in an opinion issued December 15, 2009.  According to that opinion, even though *In*

---

[3]      Plaintiffs unsuccessfully sought appellate review of Judge Higbee's order.  Their motion for leave to appeal
the order to the New Jersey Appellate Division was denied on September 29, 2009, and their motion for leave to

*re Tobacco II* held that plaintiffs alleging class claims under California's Unfair Competition Law ("UCL") need not prove that the absent class members meet the standing requirements of causation or injury, Vioxx claims still cannot be proven on a classwide basis.  *In re Vioxx*, 180 Cal. App. 4th at 136.  As the court explained, in order to obtain classwide restitution under the UCL, plaintiffs need to establish the "difference between what the [proposed class members] paid and the value of what the [proposed class members] received."  *Id.* at 131.  Thus, "[e]ven if plaintiffs establish, class-wide, that Merck misrepresented the cardiovascular risks of Vioxx . . . no plaintiff would be able to recover without first identifying a proper comparator drug, the cost of which would provide the actual value to the patient of the Vioxx received."  *Id.* at 136. Because "the issue of a proper comparator was a patient-specific issue, incorporating the patient's medical history, treatment needs and drug interactions," the appeals court held that "the trial court properly concluded that restitution could not be calculated on a class-wide basis."  *Id.* Plaintiffs' petition for review by the California Supreme Court was denied on February 10, 2010.

In light of the Court's statements and the rulings in the New Jersey and California actions, Merck moved for a case management order governing the remaining economic loss claims in this litigation on February 22, 2010.  In response, plaintiffs filed a brief in which they argued that a large number of claims not included in the master complaint should be considered active, and that the Court should undertake a "bellwether" process with respect to the remaining, pending class actions.  The Court requested that Merck prepare briefing that sets forth its arguments as to why the consumer class action claims must fail.  This is that briefing.[4]

---

appeal to the New Jersey Supreme Court was denied on January 12, 2010.

[4]      The claims alleged in other supposedly "active" economic loss cases not encompassed by the Master Complaint fail for many of the same reasons set forth herein.  While the substantive law governing those other claims will vary, plaintiffs' generalized allegations are insufficient to plead injury or causation, which are required elements of plaintiffs' claim under any state's law.  In addition, plaintiffs' economic loss claims are patently uncertifiable regardless of which state's law applies because they turn on highly individualized evidence regarding

## **ARGUMENT**

This lawsuit lacks merit.  Plaintiffs do not allege that Vioxx failed to relieve their pain or that it caused them any physical injury.  Nor do they allege that their purchase of Vioxx was in any way related to any specific representation or omission by Merck.  Rather, plaintiffs' theory is that the alleged revelation of misconduct by Merck somehow devalued the Vioxx purchases with which they had previously been satisfied.  That is not a legally actionable theory because it fails to establish a causal nexus between Merck's conduct and the plaintiffs' alleged "injury" and because it rests on a price-inflation theory of injury that has been roundly rejected and even ridiculed by other courts, including the Fifth Circuit.  Moreover, plaintiffs' claims fail under many of the applicable states' laws for other claim-specific reasons.

But even if plaintiffs' claims had any merit as individual actions, it is clear on the face of the complaint that they cannot proceed as a class.  This is so because the claims asserted by plaintiffs are hopelessly individualized and thus fail the predominance and superiority requirements of Rule 23.  As this Court knows, Vioxx users saw different advertisements (or no advertisements at all); took Vioxx for different reasons; received different advice from their doctors; had different experiences with the drug; and would have made different decisions about whether to take Vioxx – and if not, what to take instead – if more risk information had been disclosed.  Thus, there is no way that proof of one plaintiff's claim could serve as proof for all the claims of the proposed class members.

For these reasons, the Court should grant Merck judgment on the pleadings or, at a minimum, strike the class allegations.

---

the reasons why each proposed class member was prescribed (and took) Vioxx and how additional risk information would have affected those decisions.

1021834v.1

## I.     MERCK IS ENTITLED TO JUDGMENT ON THE PLEADINGS BECAUSE PLAINTIFFS CANNOT STATE CLAIMS FOR RELIEF.

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  This motion is properly brought under Rule 12(c) because it is brought after the answer was filed.  *Id.*

Where, as here, a Rule 12(c) motion alleges a plaintiff's failure to state a claim for which relief can be granted, a court should analyze the motion under the same standard as a Rule 12(b)(6) motion to dismiss.  *Moore v. Dallas Indep. Sch. Dist.*, No. 08-11220, 2010 U.S. App. LEXIS 5432, at *4 (5th Cir. Mar. 12, 2010).  In order to survive a motion for judgment on the pleadings, "a plaintiff must plead enough facts to state a claim to relief that is plausible on its face."  *Id.* (citation and internal quotation marks omitted).  The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully."  *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Rather, a complaint must contain "[f]actual allegations . . . [that] raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As set forth below, plaintiffs fail to state a claim for relief that is plausible on its face (let alone to state such a claim with the requisite particularity).  To begin with, all of plaintiffs' claims fail because they are based solely on conclusory allegations; most notably, plaintiffs do not plead any facts that tie their purchase and use of Vioxx to any alleged misrepresentations or omissions by Merck.  Further, plaintiffs do not allege that they were injured as a result of purchasing and using Vioxx.  In addition, plaintiffs' claims are barred under the applicable states' laws for a number of other, independent reasons.  Because plaintiffs have not stated a

1021834v.1

valid claim under any of the relevant states' laws, Merck is entitled to judgment on the pleadings.[5]

**A.** **Plaintiffs Fail To Allege Any Plausible Claims – Or To Plead Their Fraud-Based Claims With The Requisite Particularity.**

Plaintiffs' claims fail because they are based entirely on conclusory legal allegations, which are not "entitled to be assumed true" at the motion-to-dismiss stage. *See Iqbal*, 129 S. Ct. at 1951. Most notably, plaintiffs have not pled any facts tying their purchase of Vioxx to any alleged statements, advertisements, representations, or omissions made by Merck.

Plaintiffs' theory of relief is predicated on the allegation that Merck failed to disclose the potential cardiovascular risks posed by Vioxx and that Merck promoted Vioxx as a "safe and effective alternative" to ibuprofen and naproxen. (*See* Compl. ¶¶ 10-12.) In support of this theory, plaintiffs claim that "Merck engaged in a promotional and marketing campaign that featured an advertising blitz directly targeted to consumers, that touted Vioxx as a safer drug than other drugs in its class, while uniformly failing to disclose the health risks of Vioxx." (*Id.* ¶ 14.) These highly generalized and conclusory allegations are insufficient to state a claim under the plausibility standard enunciated by the U.S. Supreme Court in *Iqbal* and *Twombly*. *Iqbal*,

---

[5]   Since none of the named plaintiffs is from New Jersey, and New Jersey law does not apply to their claims under applicable choice-of-law principles (see n.2, supra), this brief does not address in detail why plaintiffs' claims would fail under New Jersey law. However, if New Jersey law did apply, plaintiffs' claims would fall short of pleading a proper cause of action under the New Jersey Consumer Fraud Act because that statute – like other states' laws – includes a causation requirement. *See Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007). Moreover, all of plaintiffs' claims would fail because the New Jersey Products Liability Act ("NJPLA") subsumes all claims alleging loss or injury as a result of an alleged product defect – and bars claims in which the plaintiff has not been physically injured. *See In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007) (the NJPLA replaced all pre-existing product liability claims with "one unified statutorily defined theory of recovery for harm caused by a product") (citation and internal quotation marks omitted); *Sinclair v. Merck & Co., Inc.*, 948 A.2d 587, 596 (N.J. 2008) (NJCFA claim barred where "[t]he heart of plaintiffs' case is the potential for harm caused by [the defendant's] drug" even though plaintiffs did not allege they were currently injured). Finally, New Jersey law bars implied warranty claims absent notice, *C.F. Seabrook Co. v. Beck*, 417 A.2d 89, 98 (N.J. Super. Ct. App. Div. 1980), and does not recognize unjust enrichment under these circumstances, *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. App. Div. 2004) (New Jersey "does not recognize unjust enrichment as an independent tort cause of action"); *Kleinman*, 2009 WL 699939, at 15 ("There is no law in New Jersey that allows [] a recovery [for unjust enrichment] in this type of claim.").

1021834v.1

129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.  After all, plaintiffs fail to allege that they ever saw or heard the alleged misrepresentations contained in the "advertising blitz," or that they purchased Vioxx because of them.  Nor do plaintiffs allege facts suggesting that their physicians prescribed – or that they purchased – Vioxx because of Merck's alleged failure to disclose certain risks posed by Vioxx.  As a result, plaintiffs have failed to allege any facts to support a claim that Merck's alleged misrepresentations or omissions had any connection to their Vioxx purchases.  This is not sufficient to state a cause of action under federal pleading rules.

For example, in *Gonzalez v. Bristol-Myers Squibb Co.*, No. 3:07-cv-00902 (FLW), 2009 U.S. Dist. LEXIS 121093, at *13 (D.N.J. Dec. 30, 2009), the plaintiff alleged that the manufacturers of the prescription drug Plavix falsely promoted the drug as being more effective and safer than aspirin in preventing heart attacks and strokes.  *Id*. at *7.  According to the plaintiff, the defendants "misinform[ed] physicians and consumers through false and misleading promotional materials and advertising," as well as through false statements by drug representatives.  *Id*. at *9.  The court found that these general allegations did not state a valid claim for relief.  According to the court, the plaintiff "failed to allege sufficient facts to support" a finding that the plaintiff "reasonably relied on [the defendants'] false representations to his detriment," which was a required element of the plaintiff's misrepresentation claim.  *Id*. at *22. This was because the plaintiff's complaint "lack[ed] any allegations regarding which misrepresentations were made to [p]laintiff or his prescribing physician, and what was relied upon in connection with his decision to take Plavix and his physician's decision to prescribe the drug."  *Id*. at *23.  "In the absence of such information, [p]laintiff's allegations regarding reasonable reliance amount to nothing more than mere legal conclusion[s] and do not state a

11

plausible claim upon which relief may be granted." *Id*.  Thus, the court granted defendants'
motion to dismiss.  *Id*.

Similarly, in *In re Toshiba America HD DVD Marketing & Sales Practices Litigation*,
No. 08-939 (DRD), 2009 U.S. Dist. LEXIS 82833, at *19-20 (D.N.J. Sept. 10, 2009), the court
dismissed claims for, *inter alia*, consumer fraud, unjust enrichment and breach of implied
warranty on the ground that plaintiffs had not alleged sufficient facts to support any of these
causes of action.  There, the plaintiffs alleged that Toshiba, the manufacturer of an HD DVD
player, led consumers to believe that HD DVD was state-of-the-art technology and would be the
preferred format for viewing movies – but then abandoned the HD DVD format in favor of a
new technology called Blu-ray Discs.  *Id*. at *4-5.  The plaintiffs claimed that Toshiba had failed
to disclose its knowledge that HD DVD technology was on the decline.  *Id*. at *12-13.  As a
result of the company's alleged omissions and misstatements, the plaintiffs claimed that they
"paid a significant premium for the HD DVD capability, which is of little or no value now that
the driving force behind the HD DVD format withdrew its support, and HD DVD software for
the Players is unavailable." *Id*. at *17.  Toshiba moved to dismiss the plaintiffs' claims on the
ground that the plaintiffs had not stated a valid cause of action, and the court granted the motion.

The court held that the plaintiffs' implied warranty claim was barred because plaintiffs
had failed to plead facts supporting their allegation that the HD DVD players were "not fit for
the ordinary purpose for which [they were] intended." *Id*. at *51.  Absent an allegation that "the
HD DVD [p]layers cannot be used to play HD DVDs," the plaintiffs could not state a claim for
breach of the implied warranty of merchantability.  *Id*. at *54-55.  The plaintiffs' unjust
enrichment claims failed for similar reasons:  they did not allege that they received anything
other than what they paid for – functioning HD DVD players.  *Id*. at *45-46.  While the plaintiffs

12

generally claimed that the HD DVD players were worth less than the plaintiffs paid for them, the court held that they had not pled specific facts to support that allegation.  *Id*.

The court dismissed the plaintiffs' statutory consumer fraud claims for similar reasons, noting that the plaintiffs were required not only to "state a claim to relief that is plausible on its face" – but also to "state the circumstances of [the defendant's] alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Id*. at *19, *25 (citation and internal quotation marks omitted).  The plaintiffs failed to do so for a number of reasons.  Most notably, the plaintiffs failed to allege sufficient facts to support a finding that they had actually suffered a loss, or that "there was a causal relationship between the unlawful conduct and the loss." *Id*. at *39.  According to the court, the plaintiffs did not sufficiently plead a loss because they failed "to allege where (and for all [p]laintiffs but three – when) they purchased their HD DVD Players; how much they paid for the HD DVD Players; and how much regular DVD players cost at the time (i.e., how much of a "premium" they claim to have paid for their HD DVD Players)." *Id*. at *40.  In addition, the plaintiffs did not adequately plead causation because they "fail[ed] to allege when [the defendant] made its alleged misrepresentations and when, if ever, the [p]laintiffs were exposed to those misrepresentations." *Id*.  As a result, the court held that the plaintiffs' consumer fraud claims failed.

Plaintiffs' claims here fail for all the same reasons.  Plaintiffs assert claims for breach of implied warranty, statutory consumer fraud, and unjust enrichment – all based on the allegation that Merck misrepresented the safety and efficacy of Vioxx and failed to disclose the potential cardiovascular risks posed by the drug.  (Compl. ¶¶ 10-12.)  But every one of these claims requires proof of much more than an alleged misstatement or omission by Merck; they all require

13

plaintiffs to establish that Merck's purported misrepresentations and omissions had some impact on their purchase of Vioxx.  Plaintiffs have not alleged any facts to that effect.

*First,* plaintiffs cannot state a valid claim for breach of implied warranty.  Like the plaintiffs in *Toshiba*, plaintiffs generally claim that the Vioxx they purchased was "not fit for its intended use" (*id.* ¶ 272), but they do not allege sufficient facts to support this allegation.  Most importantly, plaintiffs do not allege that their use of Vioxx failed to provide them with medical benefits.

*Second*, plaintiffs have not alleged their statutory consumer fraud claims with the particularity required under Rule 9(b).  Each of the applicable states' consumer fraud laws requires some showing that the plaintiff sustained a loss as a result of the defendant's alleged misrepresentation – or that the plaintiff relied on the defendant's statements to his or her detriment.[6]  But plaintiffs have not alleged sufficient facts to support a finding that they suffered a loss at all – much less a loss caused by Merck's alleged misrepresentations or omissions.  Just as in *Gonzalez*, plaintiffs' complaint "lack[s] any allegations regarding which misrepresentations were made to [plaintiffs] or [their] prescribing physician[s], and what was relied upon in

---

[6]        *See, e.g.,* **Arizona**: *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992) (proximate causation is a required element under the Arizona Consumer Fraud Act); **Florida**:  *Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. Dist. Ct. App. 1998) ("to be actionable an unfair or deceptive trade practice must be the cause of loss or damage to the consumer"); **Illinois**: *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) ("a plaintiff must prove that he or she was actually deceived by" the defendant's alleged misconduct "in order to establish the element of proximate causation"); **Indiana**: *Captain & Co. v. Stenberg*, 505 N.E.2d 88, 98 (Ind. Ct. App. 1987) ("recovery [under the Indiana Deceptive Consumer Sales Act] must be limited to those damages which were the proximate result of the deceptive act"); **Kentucky**:  *Schlenk v. Ford Motor Credit Co.*, 308 F.3d 619, 622 (6th Cir. 2002) (affirming dismissal of claim under Kentucky law because plaintiff "failed to show any loss suffered as a result of [defendant's allegedly unlawful conduct]"); **Massachusetts**: *Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc.*, 840 N.E.2d 526, 534 (Mass. 2006) (under Massachusetts law, consumer fraud plaintiffs must show a "causal connection between the deceptive act and an adverse consequence or loss"); **Michigan**: *De Pue v. Sears, Roebuck & Co.*, No. 1:89-CV-972, 1992 U.S. Dist. LEXIS 14931, at *20-21 (W.D. Mich. May 20, 1992) (plaintiffs alleging consumer fraud claims must offer "evidence to support a finding that defendant's alleged misrepresentations caused the injury for which plaintiff seeks relief"); **Vermont**: *Russell v. Atkins*, 679 A.2d 333, 335-36 (Vt. 1996) (consumer fraud claims fail where this is "no evidence . . .  that plaintiffs either relied on or were damaged by any false or misleading representations"); **Washington**: *Dewitt Constr. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1138 (9th Cir. 2002) (plaintiffs asserting claims for consumer fraud under Washington law must establish "a causal link between the unfair or deceptive act and the injury suffered").

connection with [plaintiffs'] decision to take [Vioxx] and [their] physician[s'] decision to prescribe the drug." 2009 U.S. Dist. LEXIS 121093, at *23. Thus, plaintiffs' allegations "amount to nothing more than mere legal conclusion[s] and do not state a plausible claim upon which relief may be granted." *Id. See also Toshiba*, 2009 U.S. Dist. LEXIS 82833, at *40 (plaintiffs cannot adequately plead causation where they "fail to allege . . . when, if ever, the [p]laintiffs were exposed to [the alleged] misrepresentations" or omissions at issue).

*Third*, and finally, plaintiffs have also failed to allege a claim for unjust enrichment because they have not pled specific facts demonstrating that the circumstances of their Vioxx purchases were "unjust." Plaintiffs' unjust enrichment claims – like their fraud allegations – are based on the assertion that Merck misrepresented and failed to disclose the potential cardiovascular risks posed by Vioxx. (Compl. ¶¶ 263-65.) Thus, their claims must be pled with particularity. *Cunningham v. Interlake Steamship Co.*, No. 5:06-cv-1641, 2007 U.S. Dist. LEXIS 9583, at *7-8 (N.D. Ohio Feb. 8, 2007). But plaintiffs do not provide *any* factual detail at all to support their unjust enrichment allegations. For example, plaintiffs do not allege that they bought Vioxx because they believed that it did not pose any cardiovascular risks. Nor do they allege what alternative medications they would have purchased, what risks were posed by those medications, or what those alternative medications would have cost.

In short, plaintiffs' general assertion that Merck misrepresented and failed to disclose the potential cardiovascular risks posed by Vioxx – without any facts to connect those alleged misrepresentations to the plaintiffs and their purchase of Vioxx – is insufficient to allege a valid claim under any of plaintiffs' theories of recovery. For this reason alone, Merck is entitled to judgment on the pleadings.

**B.** **Plaintiffs Cannot State Claims For Relief Because They Do Not Allege A Cognizable Injury.**

Plaintiffs' claims all fail for a second reason as well: they have not pled a cognizable injury. The claims asserted in the Master Complaint are premised on the core factual allegation that Vioxx is unreasonably dangerous and unsafe for ingestion. (*See, e.g.*, Compl. ¶ 2.) However, **none** of the named plaintiffs alleges any health problems resulting from his or her ingestion of Vioxx. This failure to allege injury requires dismissal of plaintiffs' claims under the laws of all the relevant states.

"No injury, no tort, is an ingredient of **every** state's law." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (emphasis added). And in product liability cases like this one, the plaintiff has not suffered any injury if the product at issue "performs satisfactorily and never exhibits the alleged defect." *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997); *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) (if a product "never exhibits an alleged defect, **no cause of action lies**") (emphasis added); *see also Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460 (D.N.J. 1998) ("unless a product actually manifests the alleged defect, no cause of action for breach of . . . warranty or fraud is actionable"), *rev'd on other grounds*, 1999 U.S. Dist. LEXIS 23493 (D.N.J. Dec. 14, 1999). The "no injury" rule applies no matter what causes of action plaintiffs pursue (i.e., claims for consumer fraud, breach of warranty, or unjust enrichment) or what relief plaintiffs seek (i.e., equitable claims and legal claims are equally barred). This is because "the absence of manifest injury is so fundamental a deficiency in tort or implied warranty claims that such claims are more appropriately dismissed than preserved." *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 804 (E.D. La. 1998); *see also Toshiba*, 2009 U.S. Dist. LEXIS 82833, at *51-54 (dismissing implied warranty of merchantability claim because plaintiffs failed to allege that the DVD

16

players at issue were actually defective); *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1198-99 (Ill. Ct. App. 2008) (affirming summary judgment in favor of merchant on consumer fraud claim because plaintiff failed to allege a cognizable injury; "If the plaintiff is not materially harmed by the defendant's conduct, however flagrant it may have been, there may be no recovery.") (citation and internal quotation marks omitted); *Scannell v. Attorney General*, 872 N.E.2d 1136, 1141 (Mass. App. Ct. 2007) (affirming order dismissing unjust enrichment claim for failure to "allege a cognizable detriment").

Courts have repeatedly applied these principles in rejecting product liability actions against pharmaceutical companies by uninjured users of pharmaceuticals in cases that are indistinguishable from this one.  *See, e.g.*, *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 U.S. Dist. LEXIS 58900, at *80 (D.N.J. July 10, 2009).  And courts have consistently rejected "this sort of market-based injury as having no application in the context of claims for recovery of the purchase price for prescription drugs." *Id.* at *77.

For example, in *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002), the U.S. Court of Appeals for the Fifth Circuit was faced with claims nearly identical to those here: "[Plaintiff's] claim to injury runs something like this:  Wyeth sold Duract; Rivera purchased and used Duract; Wyeth did not list enough warnings on Duract, and/or Duract was defective; other patients were injured by Duract; Rivera would like her money back." *Id.* at 319.  Notably, like the named plaintiffs here, the plaintiffs in *Rivera* did not claim the drug "caused them physical or emotional injury, was ineffective as a pain killer, or has any future health consequences to [the user].  Instead, they assert that their loss of cash is an 'economic injury.'" *Id.*  The court concluded that plaintiffs were really complaining about conduct that had harmed others, and that

17

"they were not among the injured." *Id.* at 320.  Plaintiffs fared no better by recasting their product liability claims under contract principles.  The court observed that "[t]he plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury." *Id.* at 320-21.  But "[m]erely asking for money," the court found, is insufficient to establish a cognizable injury. *Id.* at 319.  "By plaintiff['s] own admission, [she] paid for an effective pain killer, and she received just that – the benefit of her bargain." *Id.* at 320.  *See also Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099-1100 (5th Cir. 1991) (expressing "serious concerns about permitting recovery for [] fear [that a heart valve will fail] absent actual failure of the valve").

Similarly, in *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364 (D.N.J. 2004), the court rejected consumer fraud and warranty claims like those alleged here concerning Vioxx and Celebrex.  There – as here – plaintiffs asserted that the drugs were deceptively marketed to conceal alleged health risks, and sought a full or partial refund of their purchase price. *Id.* at 369.  Relying on *Bridgestone/Firestone*, the court noted that plaintiffs were attempting to move their case from tort to contract by seeking damages for "economic loss." *Id.* at 379.  But, as the court explained, "breach of implied warranty claims are not intended to address hypothetical economic loss; they are meant to compensate a buyer who has not gotten the benefit of her bargain because the product in question does not meet generally accepted standards or disappoints consumer expectations." *Id.*  Plaintiffs' claim for a return of the purchase price failed under that standard because it was apparent that the drugs were effective for them and that they "got the effective arthritis remedy that they bargained for." *Id.* at 379-80.  *See also In re Rezulin*, 210 F.R.D. at 68-69 ("Plaintiffs' contention that everyone who took Rezulin sustained an ascertainable loss presumes that Rezulin was worthless.  But that is not a defensible position.  Even plaintiffs'

18

experts acknowledge that Rezulin was enormously beneficial to many patients.  Those patients presumably got their money's worth and suffered no economic injury.") (footnote omitted).

Other courts have agreed.  For example, in *Porter v. Merck & Co., Inc.*, No. 04-CV-586, 2005 WL 3719630 (Kan. Dist. Ct. Aug. 19, 2005), a Vioxx purchaser alleged claims under the Kansas Consumer Protection Act based on Merck's alleged concealment of information concerning Vioxx's cardiovascular risks.  *Id.* at *1.  There, plaintiff sought a refund of the money she spent to purchase Vioxx.  *Id.*  However, the court found that plaintiff had "suffered no physical injury and received a drug that provided relief for her pain."  *Id.* at *3.  As a result, the court concluded that the plaintiff "ha[d] no loss" capable of giving rise to a consumer protection claim.  *Id.  See also Williams v. Purdue Pharm. Co.*, 297 F. Supp. 2d 171, 176 (D.D.C. 2003) (rejecting consumer fraud claim based on allegation that plaintiffs paid too much for a drug that was not as safe as advertised because plaintiffs did not "allege that [the drug] failed to provide them effective pain relief or that they suffered any adverse consequences" from the drug).

The "no injury" rule is grounded in important public policy concerns.  As Judge Minor Wisdom explained in *Willett*, allowing unharmed individuals to seek compensation for the mere **potential** risk of physical or financial injuries that may never materialize would ultimately be harmful to broader consumer interests.

> Because [under a regime permitting no injury causes of action] no loss-spreading occurs, the money flows in a circle, from each patient (in the form of a higher price) to the company back to the same patient (in the form of a fear recovery), with a substantial portion of the higher price skimmed off for attorneys' fees.  In addition, the higher price will place the product beyond the economic reach of at least some of the patients, forcing them to turn to the next best (affordable) alternative.  We see little reason to adopt such a system.

*Willett*, 929 F.2d at 1100 n. 20.

19

Here, as in *Rivera*, *Heindel* and *Porter*, the economic loss asserted by plaintiffs is entirely hypothetical.  Plaintiffs have not alleged that Vioxx was not an effective pain reliever or that they themselves were injured by their ingestion of Vioxx.  Rather, they are asserting that "[Merck] sold [Vioxx]; [plaintiffs] purchased and used [Vioxx]; [Merck] did not list enough warnings on [Vioxx], and/or [Vioxx] was defective; other patients were injured by [Vioxx]; [and plaintiffs] would like [their] money back."  *Rivera*, 283 F.3d at 319.  This allegation – that Vioxx is worth less than what plaintiffs paid because they ***might have*** suffered side effects – is insufficient to make out a cognizable claim of injury.  Instead, "a plaintiff must have sustained some physical injury before a cause of action [in tort] can accrue."  *Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849, 853-854 (Ky. 2002) (rejecting product liability claims on behalf of users of a drug that plaintiff claimed "significantly increased [the] risk of serious injury and disease" for lack of injury).  Otherwise, "any exposure" to an allegedly dangerous substance or product "might result in litigation, supported only by speculative fears of future injury and costs."  *Id*. For this reason, too, plaintiffs' claims fail.

### C.   Plaintiffs' Claims Fail For Other Reasons As Well.

Even if plaintiffs had properly alleged a cognizable injury and properly pled causation, many of their claims would still fail as a matter of law for a number of state-specific reasons.  As set forth below, the Michigan plaintiff's claims are barred by statute, as are the Illinois plaintiffs' consumer fraud claims.  And plaintiffs' statutory consumer protection claims are barred under several of the other applicable states' statutes.  In addition, each of the plaintiffs' implied warranty of merchantability claims fails for lack of notice and/or privity.  Finally, a number of the plaintiffs cannot prevail on a theory of unjust enrichment because they have failed to allege that – in buying Vioxx from retailers – they conferred any direct benefit on Merck.  And other plaintiffs' unjust enrichment claims are barred under their states' laws because they arise from

1021834v.1

the same allegations as plaintiffs' failed tort claims.  For these additional reasons, plaintiffs' claims should be dismissed.

> 1.      **The Michigan Plaintiff's Claims All Fail.**

Plaintiff Seitz's claims all fail under Michigan law for an independent reason:  they are barred by Michigan Compiled Law § 600.2946(5), which precludes any "product liability action" against a drug manufacturer whose drug has been approved by the FDA.  *See Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 963-64 (6th Cir. Mich. 2004) ("The State of Michigan has adopted a drug products liability statute that immunizes drug manufacturers from liability from damages in suits contending that their drug was defective or unreasonably dangerous" if the drug was approved by the FDA.); *see also Duronio v Merck & Co, Inc.*, No. 267003, 2006 Mich. App. LEXIS 1841 (Mich. Ct. App. June 31, 2006).  In *Duronio*, the Michigan Court of Appeals rejected economic loss claims like those asserted here, finding that they were, "in substance," product liability claims and thus barred by the statute.  According to the Court:

> Because plaintiff brought the claim for damage to property (money) caused by or resulting from the production (marketing, selling, advertising, packaging, or labeling) of Vioxx, plaintiff's pleaded common-law fraud claim for a refund of the cost of purchasing Vioxx is, in substance, a product liability action within the meaning of MCL 600.2945(h) [and therefore is barred].

*Id.* at *15.

Although the *Duronio* court held that MCL 600.2946(5) does not apply to claims brought under the Michigan Consumer Protection Act ("MCPA") because "the legislature intended the MCPA to provide an enlarged remedy for consumers," *id.* at *18 (a conclusion with which Merck disagrees), it nonetheless dismissed the MCPA claims on other grounds, finding that the exception in the MCPA for "transaction[s] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the

21

United States," precludes MCPA suits involving FDA-approved drugs.  *See* 2006 Mich. App. LEXIS 1841, at *20-21 (citing Mich. Comp. Laws § 445.904(1)(a)).  According to the court, because "the general marketing and advertising activities" undertaken by Merck with regard to Vioxx were "authorized and regulated under laws administered by the FDA," plaintiff's consumer fraud allegations were barred as well.  *Id.  See also, e.g.*, *Forton v. Laszar*, 622 N.W.2d 61, 61-62 (Mich. 2001) (Corrigan, C.J., concurring) (consumer protection act bars claims relating to regulated industries such as the sale of residential homes); *Kraft v. Detroit Entm't, LLC*, 683 N.W.2d 200, 204-05 (Mich. Ct. App. 2004) (barring consumer fraud claims involving slot machines because the activities were governed and authorized by the Michigan Gaming Control Board).

Plaintiff Seitz's claims thus fail for these reasons as well.

### 2.    The Illinois And Kentucky Plaintiffs' Consumer Protection Claims Fail.

(a)    The Consumer Protection Claims Of Plaintiffs Benoit, Lowery, Williams And Murphy All Fail Under Illinois Law.

Plaintiffs Benoit, Lowery, Williams and Murphy cannot maintain their consumer protection claims under Illinois law because Vioxx was explicitly approved by the FDA.

The Illinois Consumer Fraud Act ("ICFA") exempts from its coverage "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States."  815 Ill. Comp. Stat. §505/10b(1).  Pursuant to this provision, ICFA "will not impose higher disclosure requirements" on prescription drug manufacturers "than those that are sufficient to satisfy federal regulations" and requirements adopted by the FDA.  *Bober v. Glaxo Wellcome, PLC*, 246 F.3d 934, 941 (7th Cir. 2001).  As courts have recognized, "the pharmaceutical industry is highly regulated," and "recognizing the primacy of federal law in this field, the Illinois statute itself protects companies

from liability if their actions are authorized by federal law." *Id.* at 942.  Here, plaintiffs admit

that the FDA permitted the sale of Vioxx, and that the medication was, at all relevant times, an

FDA-approved drug.  (Compl. ¶ 48.)  Thus, under the plain terms of the ICFA, plaintiffs' claims

fail as a matter of law.

> (b)     Plaintiff Anderson's Consumer Protection Claim Fails Under
>         Kentucky Law For Lack of Privity.

It is well settled that the KCPA requires privity in order to state a claim – i.e., a plaintiff

bringing a consumer fraud claim based on the sale of a product must be able to establish that he

or she purchased the product directly from the defendant.  *See, e.g.*, *Alfred v. Mentor Corp.*, No.

05-483-C, 2007 WL 708631, at *7-8 (W.D. Ky. Mar. 5, 2007) (granting summary judgment in

defendant's favor on KCPA claim due to lack of privity); *Skilcraft Sheetmetal, Inc. v. Ky. Mach.,

Inc.*, No. 91-CA-862-MR, 1992 Ky. App. LEXIS 175, at *5 (Ky. App. July 24, 1992) ("The

legislature intended that privity of contract exist between the parties in a suit alleging a violation

of the Consumer Protection Act."); *Ky. Laborers Dist. Council v. Hill & Knowlton, Inc.*, 24 F.

Supp. 2d 755, 772-73 (W.D. Ky. 1998) (dismissing KCPA claim due to lack of privity); *Tallon v.

Lloyd & McDaniel*, 497 F. Supp. 2d 847, 854-55 (W.D. Ky. 2007) (same).  This is so because the

"[t]he language of the [KCPA] plainly contemplates an action by a purchaser against his

immediate seller."  *Skilcraft*, 1992 Ky. App. LEXIS 175, at *5.

In *Skilcraft*, for example, an equipment purchaser bought a wheel loader "as is" from a

company that acquired the product from a machinery company.  *Id.* at *1.  After the wheel

loader's transmission failed – and the machinery company made the necessary repairs – the

equipment purchaser refused to pay for the repairs.  *Id.* at *2.  The machinery company thereafter

commenced an action against the equipment purchaser to recover the cost of the repairs.  *Id.*  The

equipment purchaser asserted several counterclaims, including one for violation of the KCPA.

*Id.* at *3.  The trial court granted summary judgment in favor of the defendant machinery company, and the Court of Appeals affirmed that ruling.  *Id.* at *1, *10.  According to the appellate court, a purchaser "may not maintain an action [under the KCPA] against a seller with whom he did not deal or who made no warranty for the benefit of the subsequent purchaser."  *Id.* at *5.  Because the defendant machinery company was not the immediate seller of the wheel loader, the counterclaimant "lack[ed] standing to bring an action against" the defendant "alleging a violation of the Consumer Protection Act."  *Id.* at *8

The same result is appropriate here.  Just as in *Skilcraft*, there was no privity of contract between Vioxx purchasers and Merck.  Rather, plaintiffs purchased their Vioxx from pharmacies, which – in turn – purchased Vioxx from Merck.  Accordingly, plaintiff Anderson has failed to state a claim for violation of the KCPA.

### 3.    Plaintiffs' Implied Warranty Of Merchantability Claims Fail For Lack Of Notice And/Or Privity.

Plaintiffs' implied warranty claims fail under all of the relevant states' laws because plaintiffs have failed to allege that they provided Merck with notice of the alleged breach of the implied warranty of merchantability.  In addition, plaintiffs' claims fail under Arizona, Florida, Illinois, Kentucky and Washington law because plaintiffs do not allege that they are in privity of contract with Merck.

*First*, all of the plaintiffs' implied warranty claims must be dismissed because they fail to allege timely notice of breach as required by U.C.C. § 2-607.  Notice of breach is an essential element of a claim for breach of the implied warranty of merchantability.  *See* White & Summers, Uniform Commercial Code (4th ed. 1995), at 511; U.C.C. § 2-607.  This rule applies in ***all*** of the relevant states.  Thus, plaintiffs' failure to allege that they provided Merck with timely notice of an alleged breach requires that their warranty claims be dismissed.  *See, e.g.*,

24

*Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362 (AGS), 1996 U.S. Dist. LEXIS 6974, at *13-14 (S.D.N.Y. May 22, 1996) ("Plaintiff's complaint lacks any allegation that plaintiff notified [the defendant], or the dealer from which he purchased the vehicle, of the claimed defect. Accordingly, the Court grants defendant's motion to dismiss plaintiff's claims for breach of [] implied warranty for failure to allege notice."); *Am. Bumper & Mfg. Co. v. Transtechnology Corp.*, 652 N.W.2d 252, 257 (Mich. Ct. App. 2002) (affirming summary disposition of plaintiff's claim for breach of express and implied warranty because "plaintiff failed to give adequate notice . . . for the alleged breach, thus barring plaintiff from pursuing any remedy"); *Atl. Pipe Corp. v. R. J. Longo Constr. Co.*, 622 N.E.2d 279, 282 (Mass. App. Ct. 1993) (plaintiff was "barred from recovery for any alleged breach of [express and implied] warranty" due to lack of timely notice to the defendant of the alleged defect).

Importantly, courts have consistently held that the notice requirement is a ***substantive element*** of a breach-of-warranty claim, not a technicality that is satisfied simply by filing a claim. *Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 635 F. Supp. 911, 918 (N.D. Ill. 1985) (Illinois law) ("[N]otice to the seller of a breach of warranty is a substantive requirement of a later breach of warranty action."). In other words, the notice requirement is a condition precedent that must be satisfied in order for a claim to exist. *See McClure Oil Corp. v. Murray Equip., Inc.*, 515 N.E.2d 546, 554 (Ind. Ct. App. 1987) ("[t]imely notice of a breach of warranty is a substantive condition precedent to recovery" for an asserted breach of warranty). Accordingly, bringing a lawsuit does not satisfy the notice requirement. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996) (the "section 2-607 notice requirement was not fulfilled by filing a breach of warranty complaint"); *Lynx, Inc. v. Ordnance Prods., Inc.*, 327

A.2d 502, 514 (Md. App. Ct. 1974) ("the institution of an action by the buyer to recover damages cannot by itself be regarded as a notice of the breach contemplated [by the UCC]").

Because plaintiffs have failed to allege that they provided Merck with notice of – or the opportunity to cure – its alleged breach of warranty before they brought this action, their implied warranty claims should be dismissed for this reason as well.

**Second**, many of the plaintiffs' implied warranty claims are barred under their states' laws because the plaintiffs are not in vertical privity with Merck.  Arizona, Florida, Illinois, Kentucky and Washington all have privity requirements for maintaining a breach-of-warranty claim.[7]  Because plaintiffs have not alleged that they purchased Vioxx directly from Merck, application of the privity requirement means that the claims of the named plaintiffs from Arizona, Florida, Illinois, Kentucky and Washington must be dismissed for this reason too.

    **4.**    **Plaintiffs' Unjust Enrichment Claims Are Barred as a Matter of Law.**

Plaintiffs' unjust enrichment claims are also barred for additional reasons.  First, the Florida, Massachusetts and Michigan plaintiffs' claims must be dismissed because they have not adequately alleged that they conferred a benefit directly on Merck.  And second, the Illinois, Indiana and Washington plaintiffs' claims must be dismissed because unjust enrichment is not an independent theory of recovery in those states and therefore does not apply where all of plaintiffs' tort claims fail.

---

[7]    *See, e.g.*, **Arizona:** *Flory v. Silvercrest Indus. Inc.*, 633 P.2d 383, 386-88 (Ariz. 1981) (plaintiff is unable to recover for damages for economic loss against manufacturer for breach of implied warranty in the absence of privity); **Florida:** *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. Dist. Ct. App. 2005) ("[I]n order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant."); **Illinois:** *Tokar v. Crestwood Imports, Inc.*, 532 N.E.2d 382, 385 (Ill. App. Ct. 1998) (affirming dismissal of implied warranty claim because there was no vertical privity between automobile purchaser and manufacturer); **Kentucky:** *Roberts v. Solideal Tire, Inc.*, No. 06-14-DLB, 2007 U.S. Dist. LEXIS 75512, at *7-8 (E.D. Ky. Oct. 10, 2007) (granting summary judgment in favor of defendant manufacturer because plaintiff was not in vertical privity with defendant tire manufacturer); **Washington:** *Stepp v. Takeuchi Mfg. Co.*, No. C07-5446RJB, 2008 U.S. Dist. LEXIS 80809, at *28-29 (W.D. Wash. Oct. 2, 2008) (defendant excavator manufacturer was entitled to summary judgment on breach of implied warranty claim because plaintiff "does not allege any facts establishing privity with [defendant]").

1021834v.1

*First*, the Florida, Massachusetts and Michigan plaintiffs' claims fail because each of these states requires a plaintiff seeking recovery for unjust enrichment to prove that he or she "conferred a benefit" *directly* on the defendant that was unjustly retained.  *See Tilton v. Playboy Entm't Grp., Inc.*, No. 8:05-cv-692-T-30TGW, 2007 U.S. Dist. LEXIS 1393, at *10-11 (M.D. Fla. Jan. 8, 2007) (granting motion to dismiss unjust enrichment claim under Florida law because, *inter alia*, "[p]laintiff does not allege, and can not allege, that she conferred a direct benefit on the [d]efendants"); *Brick Constr. Corp. v. CEI Dev. Corp.*, 710 N.E.2d 1006, 1008 (Mass. App. Ct. 1999) (unjust enrichment claim failed under Massachusetts law where there was no direct transaction between the parties); *A&M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 Mich. App. LEXIS 433, at *6-7 (Mich. Ct. App. Feb. 28, 2008) (affirming dismissal of unjust enrichment claim under Michigan law because plaintiffs failed to adequately allege any direct payment or benefit from plaintiffs to defendant).

Plaintiffs here do not allege – nor could they – that they conferred a benefit directly on Merck.  This is because Merck does not sell Vioxx directly to consumers.  Instead, Merck's prescription drugs are sold at a profit by retailers after having paid Merck.  Thus, the only parties on whom plaintiffs "conferred a benefit" in this case are the third-party retailers from which they purchased their Vioxx.  Courts have held, in similar circumstances, that without an allegation that plaintiffs gave a benefit to the defendant directly, plaintiffs' claims fail as a matter of law. *See, e.g.*, *Johnson v. Microsoft Corp.*, 802 N.E.2d 712, 719 (Ohio Ct. App. 2003) (affirming dismissal of unjust enrichment claim against software supplier where "the only direct benefit [plaintiff] or members of the putative class conferred was the money that they paid to the retailers"), *aff'd*, 834 N.E.2d 791 (Ohio 2005); *In re Vitamins Antitrust Litig.*, Nos. MISC 99-197, MDL 1285, 2001 WL 849928, at *9 (D.D.C. Apr. 11, 2001) (dismissing unjust enrichment

claim where plaintiff was an indirect purchaser).  The same rule applies here, and the Florida, Massachusetts and Michigan plaintiffs' unjust enrichment claims should be dismissed for this independent reason.

**Second**, plaintiffs' claims fail under Illinois, Indiana and Washington law because courts in those states have held that plaintiffs cannot plead unjust enrichment claims based on a theory of tort where all of plaintiffs' other tort claims fail.  *See Flexicorps, Inc. v. Trend Techs., Inc.*, No. 01 C 1754, 2002 U.S. Dist. LEXIS 16994, at *32-34 (N.D. Ill. Sept. 10, 2002); *Allgood v. Gen. Motors Corp.*, No. 1:02-cv-1077-DFH-TAB, 2006 U.S. Dist. LEXIS 70764, at *108-09 (S.D. Ind. Sept. 18, 2006); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1041 (9th Cir. 2010). As the court explained in *Flexicorps*, where plaintiffs assert a claim for unjust enrichment based on the same allegations as their tort claims, the unjust enrichment claim is essentially subsumed by the tort causes of action.  2002 U.S. Dist. LEXIS 16994, at *32-34.  Thus, if plaintiffs' tort claims fail, then the "claim of unjust enrichment, which is based on these tort theories, [also] fails as a matter of law."  *Id*.  Similar rules apply in Indiana and Washington, both of which have made clear that plaintiffs cannot assert independent unjust enrichment claims based on failed tort allegations.  *See also Allgood*, 2006 U.S. Dist. LEXIS 70764, at *108-09 (an unjust enrichment claim that "overlap[s]" with plaintiffs' tort allegations cannot go forward as an independent cause of action under Indiana law); *Coto Settlement*, 593 F.3d at 1041 (under Washington law, "[u]njust enrichment is essentially another way of stating a tort claim and, consequently, once the underlying tort claim is dismissed, so is the unjust enrichment claim").

Here, plaintiffs' unjust enrichment claims are premised on the same theory as their consumer protection claims – i.e., that Merck misrepresented the alleged risks of Vioxx. Because unjust enrichment is not an independent tort under Illinois, Indiana or Washington law,

the unjust enrichment claims alleged by the plaintiffs from these states are subsumed by their consumer protection allegations and fail for the same reasons.  Accordingly, the unjust enrichment claims of the plaintiffs from Illinois, Indiana and Washington should be dismissed on this ground as well.

## II.      THE COURT SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS.

Even if plaintiffs' claims were viable as individual actions, plaintiffs cannot possibly satisfy the predominance, superiority and typicality requirements of Rule 23 – and their class claims should thus be stricken.  *See In re Vioxx*, No. JCCP 4247 (refusing to certify consumer fraud and unjust enrichment claims brought by California Vioxx users based on the highly individualized nature of the process by which physicians determine whether and what to prescribe as medication"), *aff'd*, 180 Cal. App. 4th at 128-131 (upholding trial court's order denying class certification and determining that doctors' prescribing decisions depended on each user's particular medical needs); *Kleinman*, 2009 WL 699939, at 12 (denying class certification of consumer fraud claims brought under New Jersey law where "[t]he issue of causal nexus between the loss sustained by each member of the class and the consumer fraud [] create[d] an insurmountable barrier" to a class action).

Where – as here – it is clear from the pleadings that plaintiffs cannot satisfy the requirements for class certification under Rule 23, the best course is to forgo class certification discovery and simply strike the class allegations.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[s]ometimes the issues are plain enough from the pleadings" to show that a class should not be certified).  *See also, e.g.*, *Henry v. Allstate Ins. Co.*, No. 07-1738 Section "F", 2007 U.S. Dist. LEXIS 57822, at *6-7 (E.D. La. Aug. 8, 2007) (striking class allegations where "complaint fail[ed] to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate"); *Thompson v. Merck & Co., Inc.*, No. 2:01cv1004, 2004 U.S.

1021834v.1

Dist. LEXIS 540, at *8-9 (E.D. Pa. Jan. 6, 2004) (striking class allegations because, *inter alia*, "[n]o amount of additional class discovery [would] alter" conclusion that the plaintiff's claims could not meet Rule 23 requirements); *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. 07-5139, 2008 U.S. Dist. LEXIS 56725, at *12 (D.N.J. July 23, 2008) (granting motion to strike "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met . . . even if discovery has not yet taken place") (citation and internal quotation marks omitted). As these courts have recognized, it is in the interests of both the Court and the parties to strike obviously uncertifiable class claims in order to "avoid the expenditure of time and money that must arise from litigating spurious" class allegations. *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (citation and internal quotation marks omitted). *See also Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2009 WL 4723366, at *14 (N.D. Cal. Dec. 4, 2009) ("[I]t is procedurally proper to strike futile class claims at the outset of litigation to preserve time and resources."). That is the case here. Plaintiffs have proposed a complex "bellwether" class certification process under which the parties would spend substantial time and resources conducting class certification discovery in each individual MDL class action and then briefing and arguing class certification in each case. (*See* Pls.' Br. at 2-3.) But such an exercise would be futile because no amount of discovery can change the fact that plaintiffs' claims dramatically fail Rule 23(b)(3)'s predominance and superiority requirements.

The test for predominance "is far more demanding than the commonality requirement of Rule 23(a), because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Aguilar v. Allstate Fire & Cas. Ins. Co.*, No. 06-4660 Section "F," 2007 U.S. Dist. LEXIS 16073, at *6 (E.D. La. Mar. 6, 2007) (citation and internal quotation marks omitted). Accordingly, where plaintiffs will have to "introduce a great deal of

30

individualized proof . . . to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Luna v. Del Monte Fresh Produce (Southeast), Inc.*, 354 F. App'x 422, 424 (11th Cir. 2009) (citations omitted). Rule 23(b)(3) also requires courts to consider whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (citation and internal quotation marks omitted). When "the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Id.* at 1192. *See also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. La. 1996) (the superiority requirement is not met where the issues are "replete with individual circumstances" that would overwhelm a class trial and undermine any possible efficiency benefit offered by classwide adjudication).

This case fails both the predominance and superiority requirements with respect to all three causes of action asserted in the Master Complaint: consumer fraud, breach of implied warranty and unjust enrichment.

### 1.    Plaintiffs' Consumer Fraud Claims Fail To Satisfy The Predominance Requirement.

Plaintiffs' consumer fraud claims cannot be tried on a classwide basis because they will turn on highly individualized evidence regarding causation. *See Kleinman*, 2009 WL 699939, at 13-14 (finding that "[t]he individual proofs required to show [causation] preclude" a class action). *See also, e.g., In re Vioxx*, No. JCCP 4247, slip op. at 11 (finding that "plaintiffs' and their physicians' reliance on defendant's representations or nondisclosures [were] not subject to common proof"), *aff'd*, 180 Cal. App. 4th at 133-134 (Cal. Ct. App. 2009) (upholding trial court's order denying class certification because, *inter alia*, different Vioxx users and their

doctors placed different levels of importance on risk information depending on the user's particular medical needs).

In *Kleinman*, discussed *supra*, the court held that the plaintiffs' NJCFA claims could not be certified because they required a showing of a causal nexus between Merck's alleged failure to disclose safety risks and each physician's decision to prescribe Vioxx.  2009 WL 699939, at 12-14.  As Judge Higbee explained, the "[t]he decision of whether to prescribe a medication is made upon a host of individualized factors, including other risk factors the plaintiffs possessed and whether other drugs were effective in relieving [each] plaintiff['s] pain." *Id.* at 13.  As a result, an "individualized determination would be required for each plaintiff to determine if the concealment of the [cardiovascular] risk information had a causal relationship on the decision made as to whether or not the patient used Vioxx." *Id.*  These "individual proofs required to show a causal nexus preclude[d] a class action." *Id.* at 14.

Similarly, in *In re Vioxx*, the California Court of Appeal upheld Judge Chaney's refusal to certify consumer fraud and unjust enrichment claims asserted by California Vioxx users because proof of causation would be individualized.  According to the court, the evidence in the record made it clear that different Vioxx users – and their doctors – placed different levels of importance on risk information depending on the user's particular medical needs.  180 Cal. App. 4th at 134.  Indeed, "[s]ome patients would still take Vioxx today if it were on the market [and] some physicians would still prescribe it . . . because, for some patients, the benefits outweigh the risks." *Id.*  In addition, the importance of Merck's alleged misrepresentations would vary from class member to class member depending on whether his or her doctor believed them to begin with.  The court recognized that "[f]or those physicians with a distrust of statements made by the pharmaceutical industry, Merck's statements could not have been material." *Id.*  For these

reasons, "individual issues prevailed over common issues, [which] justif[ied] denial of class certification."  *Id.  See also, e.g., In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 333 (D. Mass. 2009) (denying renewed motion for class certification in third-party payor case because plaintiffs would be required to present "individualized proof of causation" and, thus, "common questions w[ould] not predominate"); *In re Prempro*, 230 F.R.D. at 567-68 (denying certification; plaintiffs' consumer fraud claims "require individualized proof" regarding causation including "[w]hether plaintiff saw an advertisement; whether the particular advertisement was fraudulent; whether that plaintiff relied on the advertisements; and whether the plaintiff was damaged as a result of the advertisement").

Plaintiffs' proposed classes are indistinguishable from those that were rejected by Judges Higbee and Chaney and thus fail for the same reasons.  In order to satisfy the causation element of plaintiffs' consumer fraud claims, each putative class member would have to prove that his or her physician would have made a different prescribing decision if more information had been available about the alleged risks of Vioxx – and that the plaintiff would have paid less for pain relief under that alternative decision.  But the relevant evidence for proving such claims will vary dramatically from plaintiff to plaintiff for several reasons:

***Each putative class member's physician knew different things about Vioxx's alleged risks.***  If a particular physician knew about the alleged risks of Vioxx at the time that he or she prescribed the drug to the class member, then Merck's alleged failure to warn could not have been the cause of the prescribing decision.  *See In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 711 (E.D. Tex. 1997) ("when the prescribing physician was aware of the possible side effects of a drug, yet, chose to use it regardless of the adequacy of the warning, then as a matter of law, the adequacy of the warning was not a producing cause of the plaintiff's

injury").  Thus, in order to determine whether a particular physician prescribed Vioxx to a particular plaintiff "as a result of" Merck's alleged misrepresentations, the jury would first need to examine what information that particular physician knew about Vioxx's safety profile at the time of the prescription.  This will vary from physician to physician.

   ***Different doctors would have reacted differently to more information about the risks of Vioxx.***  The causation question will also vary from one Vioxx user to the next because some doctors have testified that they would still prescribe Vioxx today – at least to some patients – belying any claim that Merck's statements uniformly affected all physicians' prescribing decisions.  This is not surprising.  The decision to prescribe a certain drug is highly patient-specific, depending on varying risks and benefits of the drug that result from the patient's unique medical status.  *See Kleinman*, 2009 WL 699939, at 13 ("[t]he decision of whether to prescribe a medication is made upon a host of individualized factors").

   The fact that many doctors would continue to prescribe Vioxx with full knowledge of its alleged risks (while others would not) is confirmed by depositions of physicians in other Vioxx cases.  One physician deposed in a New Jersey case testified that he had prescribed Vioxx to his daughter, that he would still use it, and that he still had it at home after its withdrawal.  *See* Dep. of Peter Schludermann, M.D. 52:3-25, *Henderson v. Merck & Co., Inc.*, No. ATL-L-1564-03-MT (N.J. Super. Ct. Law Div. Nov. 4, 2004) (attached as Ex. 8).  By contrast, other doctors have testified that they would be hesitant to prescribe Vioxx if it were still available for sale and thus might prescribe it to some patients but not others.  *See* Dep. of Bruce Williams, D.O. 33:23-34:5, *Plubell v. Merck & Co., Inc.*, No. 04-CV-235817 (Mo. Cir. Ct. Jackson County July 19, 2006) (attached as Ex. 9) ("[i]f [Vioxx] were still on the market, knowing everything I know about it, I

1021834v.1

would be very reluctant to prescribe it, but I know that I would have patients that would ask for it.").

In short, plaintiffs cannot prove that every proposed class member was injured "as a result" of Merck's alleged conduct through the introduction of common proof.  Rather, plaintiffs would have to separately show that each proposed class member's physician would have prescribed a cheaper drug if Merck had not made the alleged misrepresentations about the drug's risks.  Because such a showing cannot be made on a classwide basis, plaintiffs' consumer fraud claims manifestly fail the requirements of Rule 23(b)(3).

## 2. Plaintiffs' Implied Warranty Claims Fail To Satisfy The Predominance Requirement.

Plaintiffs' effort to certify their implied warranty claims is also doomed for several reasons.  As explained above, all of plaintiffs' implied warranty claims must fail as a matter of law because, *inter alia*, plaintiffs have not alleged that the Vioxx they received did not provide them with any medical benefit and therefore was not fit for its ordinary purpose.  *See* pp. 12-15, *supra*.  However, to the extent the Court rejects that argument and allows plaintiffs' implied warranty claims to proceed to trial, Merck would be allowed to present individualized evidence that each plaintiff's Vioxx prescription served its ordinary purpose by providing the user with pain relief.  As a result, any class trial of plaintiffs' implied warranty claims would devolve into an endless series of mini-trials regarding each plaintiff's experience with Vioxx and whether he or she obtained a medical benefit from the drug.

In addition, as set forth above, each of the relevant states' laws requires proof that the plaintiff notified the defendant of an alleged breach "within a reasonable time" – and allowed the defendant an opportunity to cure – before bringing implied warranty claims.  *See* pp. 24-26, *supra*.  Courts have recognized that the need for individualized proof of notice precludes

35

certification of implied warranty claims.  In *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 625 (S.D. Fla. 2008), for example, the court refused to certify a class of dentists alleging claims for breach of warranty based on their purchase of dental implant products.  Applying Florida law, the court found that "each putative class member must demonstrate that he or she gave the required notice of the breach to [d]efendant within a reasonable time."  *Id.* at 625.  "[C]learly," the court concluded, "this is an individualized factual inquiry, as some potential class members may have provided timely notice, while others may have provided untimely notice of [d]efendant's alleged breach or no notice at all."  *Id.*  For this and other reasons, the court concluded that "individual questions of fact predominate over those common to the class."  *Id.*  Here too, in order to determine whether the notice requirements have been met, the jury would have to examine each putative class member's interactions with Merck.  For these reasons, plaintiffs' implied warranty claims fail both the predominance and superiority requirements for class certification.

### 3.    Plaintiffs' Unjust Enrichment Claims Fail To Satisfy The Predominance Requirement.

Plaintiffs' unjust enrichment claims are also uncertifiable.  As set forth above, a plaintiff seeking damages for unjust enrichment must prove that the circumstances of his or her purchase of Vioxx make it unjust for Merck to retain the money that he or she paid for it.  *See* pp. 26-29, *supra*.  Such a showing will turn on highly individualized facts related to the specific circumstances of each proposed class member's Vioxx use – and therefore cannot be made on a classwide basis.

Courts across the country have recognized that unjust enrichment claims are inherently individualized because they depend on the specific circumstances of the interaction between the parties and whether those circumstances were "unjust."  *See, e.g.*, *Westways World Travel, Inc. v.*

*AMR Corp.*, 265 F. App'x 472, 476 (9th Cir. 2008) (rejecting class certification in unjust enrichment case because such claims require individualized inquiries into the defendant's "legal and contractual relationship with each class member"); *In re Baycol Prods. Litig.*, 265 F.R.D. 453, 458 (D. Minn. 2008) (refusing to certify unjust enrichment and other claims because "[i]ndividual evidence would be necessary as to each member of the putative class to determine whether the individual person benefited from or was injured by [the medication]"); *In re Rezulin*, 210 F.R.D. at 68-69; *Clay v. Am. Tobacco Co., Inc.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) (rejecting class certification in unjust enrichment case because "the defendant's liability for unjust enrichment to a particular plaintiff depends on the factual circumstances of the particular purchase at issue").  For example, in *In re Rezulin*, the court refused to certify a class of users of the prescription drug Rezulin who asserted unjust enrichment and other claims based on the defendant's alleged failure to disclose certain potential side effects of the drug.  210 F.R.D. at 64. The court explained that plaintiffs' unjust enrichment claims could not be tried on a classwide basis because the plaintiffs would need to demonstrate that they were harmed by the defendant's conduct, that the risks of the drug outweighed its benefits to each plaintiff and/or that the defendant's conduct inflated the price of the drug or resulted in some other inequity that would make it appropriate to transfer money to the plaintiffs.  "Every one of these theories would involve issues individual to the particular class member."  *Id.* at 68 (footnotes omitted).  As a result, the court concluded that the need for individualized evidence precluded class treatment.

The same is true with respect to plaintiffs' unjust enrichment claims here.  There is simply no way for a jury to determine whether it was "unjust" for Merck to retain the money spent by putative class members on Vioxx without considering "whether [Vioxx] benefited [each] individual and whether the benefits sufficiently outweigh any harm, even in the form of

enhanced risk, that the individual sustained." *In re Rezulin*, 210 F.R.D. at 69.  The answers to these questions will vary significantly among the proposed class members based on a variety of individualized factors, including:

    *a) The benefit each purchaser received from Vioxx.*  Many Vioxx purchasers used the drug because it was effective in treating their pain.  *See* Dep. of Edgar Lee Boyd 170:10-17, *Boyd v. Merck*, No. ATL-L-1615-03 (N.J. Super. Ct. July 7, 2004) (attached as Ex. 10) (plaintiff testified that if someone could experience sudden onset of problems from taking Vioxx, he "wouldn't have probably believed them, and [] wouldn't have gotten off of [Vioxx] anyway" because of the relief it provided).  And other Vioxx users have stated that they would continue to take Vioxx today.  *See* Dep. of Joseph Goble 16:22-24, *Goble v. Merck*, No. ATL-L-2260-03 MT (N.J. Super. Ct. June 7, 2005) (attached as Ex. 11) (**Q.** "If Vioxx were still on the market today, would you take it?"  **A.** "I'd say yes.").  One former Vioxx user has even written to the Wall Street Journal, stating that without Vioxx he "can hardly walk even after trying many types of medications" and "would gladly give up a few days of life if [h]e could live them without pain" by using Vioxx.  *See* Richard Loftfield, Letter to the Editor, *Vioxx Helped Me Live a Lot Better And I'd Like It Back*, Wall St. J., June 14, 2008, at A10 (attached as Ex. 12).

    A jury could well find that individuals who received relief from Vioxx and would still take it today derived a benefit from the drug for which Merck was justly compensated.  By contrast, the same jury could determine that some of the putative class members who report less pain relief from Vioxx did not receive any benefit at all.  As such, plaintiffs could not possibly prove on a classwide basis that it was "unjust" for Merck to retain the price each consumer paid for Vioxx.

**(b) The benefit conveyed by each purchaser.**  Plaintiffs' unjust enrichment claims will also vary based on the size of the benefit – i.e., amount of money – paid by each Vioxx purchaser.  Each Vioxx purchaser paid a different price for Vioxx based on whether he or she had insurance and the co-pay amount assigned to Vioxx by his or her insurance company.  Thus, the jury would not only have to consider whether each purchaser received a benefit from Vioxx, but also whether the benefit each purchaser received justified the specific price he or she paid for the drug.  Such fact-specific inquiries would further derail a class trial.  For these reasons, the unjust enrichment claims asserted by plaintiffs are also inherently uncertifiable.

In sum, plaintiffs' proposed class claims manifestly fail the predominance and superiority requirements for class certification and should be stricken.[8]

---

[8]      It is also a certainty – without any need for discovery – that plaintiffs' claims will fail Rule 23(a)'s typicality requirement because there is no "typical" Vioxx user.  As Judge Higbee noted in *Kleinman*, each Vioxx user – and his or her doctor – had a different experience with the drug that would set his or her claims apart from those of other proposed class members.  2009 WL 699939, at 15-16.  Because individuals took Vioxx for different reasons, based on the recommendations of different doctors who knew different things about the drug's risks, no Vioxx user can be typical of an absent class in this case.  *Id.  See also, e.g., Blain v. SmithKline Beecham Corp.*, 240 F.R.D. 179, 187 (E.D. Pa. 2007) ("numerous factual [] differences between the two representatives themselves, and among the class members" – including fact that representatives and class members "took varying doses of [defendant's drug], for varying indications, at various times, at different developmental stages" – "reveal[] how marked the differences are," which "defy[] typicality" and adequacy of representation in putative personal injury class action); *In re Paxil*, 212 F.R.D. at 549-50 (determining that named plaintiffs were atypical and inadequate because "there is no 'generic' plaintiff properly typified by the class representatives").

1021834v.1

## CONCLUSION

For the foregoing reasons, Merck's motion for judgment on the pleadings should be granted or plaintiffs' class allegations should be stricken.

Dated:  June 30, 2010                    Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
Nina H. Ramos
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

40

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing memorandum has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 30th day of June, 2010.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1021834v.1