# EXHIBIT 1



FILED

MAR 1 7 2009

Carol E. Higbee, P.J.Cv.

24247601

Mar 17 2009
1:52PM

<u>**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE COMMITTEE ON OPINIONS**</u>

## SUPERIOR COURT OF NEW JERSEY
### COUNTIES OF
### ATLANTIC AND CAPE MAY

**CAROL E. HIGBEE, P.J.Cv.**

1201 Bacharach Boulevard
Atlantic City, NJ 08401-4527
(609) 343-2190

<u>MEMORANDUM OF DECISION ON MOTION</u>
<u>Pursuant to Rule 1:6-2(f)</u>

| | |
|---|---|
| *CASE:* | **Kleinman v. Merck & Co., Inc.; Martin v. Merck & Co., Inc.** |
| *DOCKET #:* | **ATL-L-3954-04, ATL-L-24-05** |
| *DATE:* | **March 17, 2009** |
| *MOTION:* | **Class Certification on behalf of Individual Consumer Plaintiffs** |
| *ATTORNEYS:* | **Plaintiffs –** **Theodore M. Lieverman; Jeffrey L. Kodroff; Steve W. Berman; Craig R. Spiegel; Thomas M. Sobol; Elizabeth A. Fegan; David J. Cohen; Christoper M. Cosley** |
| | **Defendants –** **John H. Beisner; Diane P. Sullivan; Elliot M. Gardner; Christina S. Keddie; Jessica D. Miller; Nina H. Ramos** |

Having carefully reviewed the papers submitted and any response received, I have ruled on the above Motion as follows:

The plaintiffs Elaine Kleinman and Ronald Martin submitted a renewed motion for class certification on May 15, 2008. Plaintiffs bring claims under the New Jersey Consumer Fraud Act ("CFA"), <u>N.J.S.A.</u> 56:8-1 to -181, and for common law unjust enrichment. The class would include any individual consumer of Vioxx, excluding third-party payors, and seeks compensation for economic harm, rather then personal injury.

*"The Judiciary of New Jersey is an equal Opportunity/Affirmative Action Employer"*

## I.    Background

At issue in this matter is whether Merck was aware of the cardiovascular ("CV") risks and failed to disclose knowledge of this risk during the period that Vioxx was on the market, from June 1, 1999 to October 1, 2004.  Plaintiffs allege the existence of internal memorandums and other documents indicating that Merck was aware of the CV risks as early as 1996, that Merck engaged in a uniform deceptive marketing campaign to hide evidence of the CV risks, and that Merck's clinical studies, specifically the VIGOR study, were designed to minimize the evidence of CV risks in order to demonstrate the safety of the drug.

The results of the VIGOR study were published in 2000 in The New England Journal of Medicine.  Plaintiffs claim the journal article misrepresented the results of the VIGOR study and the safety of Vioxx, specifically by forwarding the hypothesis that the CV results were a result of cardio protective nature of naproxen, the comparator drug, and participants were not taking aspirin.  Plaintiffs focus on this article and its subsequent republication to the medical community to demonstrate the misrepresentations and omissions made by Merck.

Additionally, plaintiffs allege that Merck trained its sales force to avoid answering questions about Vioxx's CV risks, and point to documents ranging from October 1999 to February 2001 which show the intent to mislead or misdirect questions from doctors about CV risks.

Finally, the plaintiffs also note that the direct to consumer advertising campaign further mislead consumers because it failed to identify the CV risks.  Rather, the "common theme" in the advertisements was safety and effectiveness.  Plaintiffs argue these advertisements demonstrate the commonality and uniformity of the marketing of Vioxx.

M01OF57196

The first representative of the class is Elaine Kleinman, who indicated she used Vioxx at various points over the course of three years. Ms. Kleinman took Vioxx at the recommendation of her doctor and did not see any advertising for Vioxx. She stated that Tylenol and Aleve were as effective in relieving her pain. After Vioxx was withdrawn from the market, her doctor recommended Tylenol for her pain. However, her doctor has testified that, if available, he would continue to prescribe this drug to his patients.

The second representative of the class is Ronald Martin, who indicated he took Vioxx intermittently between 1999 and July 2004. He testified that Vioxx did not relieve his back pain, and he continued to take hydrocodone at the same time for his back pain. At other times, he took Vioxx for pains related to surgery or other illnesses. Mr. Martin did see advertisements for Vioxx, and did ask his physician for a prescription for Vioxx, but he stated he did not do so because of the advertisements he saw. Mr. Martin has also used Bextra, Celebrex, and prescription strength ibuprofen for his pain.

The class definition the plaintiffs propose is:

> All individual consumers in the United States (other than consumers in California) who from June 1, 1999 to October 1, 2004, inclusive paid some or all of the purchase price for the prescription drug Vioxx, manufactured by defendant Merck & Co., Inc. "Individual consumers" means those individual end-users who paid for all or any part of a prescription of Vioxx and does not include third-party payors. Excluded from the Class are (i) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors, assigns, and employees, and (ii) the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

[Pl.'s Mot. Class Cert. 1.]

Although the class proposed is nationwide, plaintiffs would exclude California, because of a pending class action certification there. Plaintiffs seek to apply New Jersey substantive law to the class. However, if the Court declines to apply New Jersey law to a nationwide class, the

3

M01OF57197

plaintiffs propose a class of New Jersey consumers only.  Plaintiffs allege that a trial can focus

on the decision to develop Vioxx, the knowledge of the CV dangers, and the sales and marketing

scheme that relied on common misrepresentations and omissions.  Plaintiffs seek to have a jury

determine liability based on these common facts and to assess the amount of aggregate liability.

The individual damages portion of the trial would be conducted by a master appointed by the

Court.  A Special Master would approve individual claims under a calculation formulated by the

plaintiff's experts and approved by the jury.

Defendant asserts three reasons for the denial of the motion: (1) a governmental interest

analysis points to substantive issues with the law of the other fifty states, which render the class

unmanageable; (2) even if a New Jersey only class is certified, there is no way to resolve claims

based on common factual proof because an overwhelming number of individual factual proofs

would be required; and (3) a class action is not a superior mechanism for resolving claims.

Defendant focuses on the challenges of applying New Jersey law to the entire class as a primary

reason for the denial, but argues that even the alternative New Jersey only class cannot be

granted because of the highly individualized circumstances in which the plaintiffs were

prescribed Vioxx.  Defendant points to the fact that each potential class member took the drug

for a different reason, paid a different amount for the drugs, and would have made different

decisions about continuing to take the drug had the CV risk information been revealed earlier.

Defendant argues these individualized issues present themselves in the histories of the class

representatives themselves, making their claims not typical of the potential plaintiffs claims.

Further, the defendant argues that the theory of ascertainable loss and causation forwarded by the

plaintiffs is identical to the fraud on the market theory rejected as inapplicable to the CFA in

International Union of Operating Engineers Local 68 Welfare Fund v. Merck & Co. (*Local 68*),

M01DF57198

192 N.J. 389 (2007).  Defendant also asserts a class action is not a superior mechanism of

adjudicating these claims because of the settlement already reached in Vioxx litigation.

## II.    Standards for Certification

New Jersey Court Rule 4:32-1 governs the certification of a class action in New Jersey.

The rule must be liberally construed, particularly in cases involving consumer fraud.  In re

Cadillac V8-6-4, 93 N.J. 412, 435 (1983).  A request for class action certification should be

granted "'unless there is a clear showing that it is inappropriate or improper.'" Delgozzo v.

Kenny, 266 N.J. Super. 169, 180 (App. Div. 1993) (quoting Lusky v. Capasso Bros., 118 N.J.

Super. 369, 373 (App. Div. 1972)).

Despite this deference, a trial court must undertake a "'rigorous analysis'" to determine if

the requirements of the rule are met.  Carroll v. Cellco Partnership, 313 N.J. Super. 499, 495

(App. Div. 1998) (citation omitted).  "Although class certification may not be denied based on

the *factual* merits of a complaint, some preliminary analysis of the legal theory on which the

action is based is required." Fink v. Ricoh Corp., 365 N.J. Super. 520, 538 (Law Div. 2003)

(emphasis added); accord Delgozzo, supra, 266 N.J. Super. at 180-181 (stating a court must not

"make a preliminary determination of the merits of the underlying claims").  "'The court is

bound to take the substantive allegations of the complaint as true, thus necessarily making the

class order speculative in the sense that the plaintiff may be altogether unable to prove his

allegations.'" Delgozzo, supra, 255 N.J. Super. at 181 (quoting Blackie v. Barrack, 524 F.2d

891, 901 n. 7 (9th Cir. 1975), certif. denied, 429 U.S. 816)).  The legal analysis undertaken by

the court must extend "beyond the pleadings," in that "'a court must understand the claims,

defenses, relevant facts, and applicable substantive law in order to make a meaningful

M01DF57199

determination of the certification issue.'" Carroll, supra, 313 N.J. Super. at 495 (quoting Castano

v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)).

There are several prerequisites to maintaining a class action.  Part (a) of R. 4:32-1 states

that a class action can be maintained only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there
> are questions of law or fact common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests of the class.

In addition, one of the requirements of Part (b) of the rule must also be met.  Plaintiffs

submit that they satisfy the conditions of (b)(3), which specifically requires the court to find that:

> the questions of law or fact common to the members of the class predominate
> over questions affecting only individual members, and that a class action is
> superior to other available methods for the fair and efficient adjudication of the
> controversy.  The factors pertinent to the findings include:
>
> (A) the interest of members of the class in individually controlling the prosecution
> or defense of separate actions; (B) the extent and nature of any litigation
> concerning the controversy already commenced by or against members of the
> class; (C) the desirability or undesirability in concentrating the litigation of the
> claims in the particular forum; and (D) the difficulties likely to be encountered in
> the management of a class action.
>
> [R. 4:32-1(b)(3).]

Plaintiffs assert that all of the requirements of R. 4:32-1 have been established.  The

numerosity requirement specifically requires the class to be so numerous that joinder would be

impracticable.  R. 4:32-1(a)(1).  Merck does not challenge the numerosity requirement.  The

numbers of the class are unknown, but are estimated to be around 20 million people in the United

States.  Certainly, this is a sufficiently large number to satisfy the requirement.

The Court recognizes the existence of common questions of law or fact, as required by R.

4:32-1(a)(2).  Multiple common questions exist, including whether Merck disseminated false or

misleading statements related to the safety of Vioxx, whether Merck knowingly omitted material

6

information related to the safety and efficacy of the drug, and whether Merck's representations and conduct had the capacity to mislead consumers about the safety of Vioxx.  Pl.'s Mot. Class Cert. 11.  Merck does not challenge the existence of these common questions of law or fact.

Merck does vigorously challenge the predominance, typicality, and superiority requirements.  The Court addresses these issues in turn below.

### i. Predominance

Questions of law or fact common to the members of the class must predominate over any questions affecting individual members.  R. 4:32-1(b)(3).  In this matter, Merck asserts that individualized issues overwhelm the existence of any common issues.  Specifically, Merck notes the varying reasons for the prescription of Vioxx, the differing amounts paid for the drug, and the different prescription decisions that patients and doctors may have made if more risk information was revealed.

Plaintiffs bear the burden of establishing that the predominance requirements are met.  In re Cadillac, supra, 93 N.J. at 426.  The predominance inquiry focuses on "whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"  Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 108 (2007) (citation omitted).   The Iliadis Court further enumerated the requirements for a finding of predominance.

> First, the number and, more important, the significance of common questions must be considered. *Second, a court must decide whether the "benefit from the determination in a class action [of common questions] outweighs the problems of individual actions.*"  Third, predominance requires, at a minimum, "a common nucleus of operative facts."
>
> Notably, predominance does not require the absence of individual issues or that the common issues dispose of the entire dispute.  Individual questions of law or fact may remain following resolution of the common questions. Predominance does not require that all issues be identical among class members or that each class member be affected in precisely the same manner.

M010F57201

[Iliadis, supra, 191 N.J. at 108-109 (emphasis added) (citations omitted).]

Individualized questions, therefore, do not alone require rejection of a class certification request. However, the benefit of a class action must outweigh the problems of an unmanageable amount of mini-trials that may result after a uniform determination of common questions, such as liability. Steering Committee v. Exxon Mobil Corp., 461 F.3d 598, 602 (5th Cir. 2006).

In assessing predominance, the New Jersey Supreme Court required "an evaluation of the legal issues and the proof needed to establish them," and "a close analysis of the facts and law [rather] than by recourse to reported decisions." In re Cadillac, supra, 93 N.J. at 430, 435. Assuming I adopt plaintiff's argument that the New Jersey law should apply to a nationwide class, I now examine whether common facts predominate under the requirements set forth in Iliadis.

### a. Consumer Fraud Act

The Consumer Fraud Act makes unlawful:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise..., whether or not any person has in fact been misled, deceived or damaged thereby....

> [N.J.S.A. 56:8-2.]

The Consumer Fraud Act allows:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act...[to] bring an action....

> [N.J.S.A. 56:8-19.]

To state a CFA claim, a plaintiff must therefore allege "three elements: (1) unlawful conduct...; (2) an ascertainable loss...; and (3) a causal relationship between the defendants'

M010F57202

unlawful conduct and the plaintiffs ascertainable loss." New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12 (App. Div. 2003), certif. denied., 178 N.J. 249 (2003).   The first requirement, unlawful conduct, can be grouped "into three…categories: affirmative acts, knowing omissions, and regulatory violations." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994).  "A practice can be unlawful even if no person was in fact mislead or deceived thereby." Ibid. It is only the "capacity to mislead" that it significant.  Ibid.  Additionally, when "the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud." Id. at 17-18.  However, if the consumer fraud alleged is an affirmative act, intent is not required. Id. at 18.

    To establish unlawful conduct, the plaintiffs allege that Merck "engaged in a uniform campaign of misrepresentation and omissions that violated the Consumer Fraud Act and was common to all individual consumers." Pl.'s Mot. Class Cert. 18.  Specifically, plaintiffs allege that Merck knew of the risks of Vioxx and that Vioxx was not superior to other NSAIDs already on the market, but "devised and carried out an elaborate marketing campaign to misrepresent or conceal these facts…." Ibid.  The Court accepts that the plaintiffs would indeed be able to produce evidence that Merck knew of the risks of Vioxx at the time of the product launch, that Merck intended to omit or to misrepresent these facts, and over time continued to misrepresent the risks so that plaintiffs can establish unlawful conduct.  Defendant argues, however, that this showing cannot be made on a uniform basis.  Defendant asserts that Merck's knowledge of Vioxx changed over the period in question.  Defendant specifically points to the VIGOR study, which was not completed till after 1999, and asserts they could not warn patients of the results of that study prior to its completion.  However, the plaintiffs present evidence that directly contradicts this point—specifically, that Merck had internal knowledge long before VIGOR was

9

completed of the risks and effects of Vioxx, and uniformly withheld this knowledge over the period in question. Accordingly, this is not a reason to deny class certification.

Defendant also argues that the representations of Merck changed over the period in question. Plaintiffs respond that the slight variations in representations made over the course of the period would not change the common issues presented, and the effects would not vary among the class members. In our <u>Local 68</u> opinion, this Court found that any variations in marketing did not render the misrepresentations inconsistent. ATL-L-3015-03 (Law Div. Nov. 8, 2004) (slip op. at 13). The opinion of this Court is unchanged. There may have been slight changes to the marketing and representations made over the course of the class period, but these changes do not render the class uncertifiable. The Court should be "willing to look past minor variations among a defendant's misrepresentations, particularly with respect to a centrally-orchestrated fraudulent scheme, where '[t]he center of gravity of the fraud transcends the specific details of [the] … communications.'" <u>In re Neurontin Marketing & Sale Practices Litig.</u>, 244 <u>F.R.D.</u> 89, 109 (D. Mass. 2007) (quoting <u>In re Am. Cont'l Corp./Lincoln Sav. and Loan Sec. Litig.</u>, 140 <u>F.R.D.</u> 425, 431 (D. Ariz. 1992)). In this instance, the plaintiffs assert they can prove that the misrepresentations made by Merck were indeed centrally orchestrated. That is that the omission in question—the CV risks—was consistent over the relevant period and part of a continuing fraud. Whether Merck's conduct fell under the title of consumer is a common question that could be resolved in a class action.

Ascertainable loss is the second requirement of the CFA. An ascertainable loss occurs when the plaintiffs receive "something less than, and different from, what they reasonably expected in view of defendant's presentations." <u>Miller v. American Family Publishers</u>, 284 <u>N.J. Super.</u> 67, 90-91 (Ch. Div. 1995). Ascertainable loss requires "a private plaintiff [to] produce

M010F57204

evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss."

Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005). A loss can be

demonstrated by expert proof of a loss in value or "out of pocket expenses…." Romano v.

Galaxy Toyota, 399 N.J. Super. 470, 479 (App. Div. 2007). The evidence must not be

hypothetical or illusory; rather, it must be quantifiable or measurable. Thiedemann, supra, 183

N.J. at 248. However, the precise amount of damages need not be known as long as the damages

are measurable. Talalai v. Cooper Tire & Rubber Co., 360 N.J. Super. 547, 564 (Law. Div.

2001).

  In addition to ascertainable loss, the plaintiffs must also make a showing of a causal

nexus between the loss itself and the unlawful conduct. Gross v. Johnson & Johnson, 303 N.J.

Super. 335, 345 (Law Div. 1997). A causal nexus is not reliance, as required by common law

fraud. Varacello v. Mass. Mutual Life Insurance Co., 332 N.J. Super. 31, 48 (App. Div. 2000).

If the harm suffered was not the result of the defendant's unlawful conduct, the plaintiff is not

entitled to damages. Cox, supra, 138 N.J. at 23. The unlawful conduct does not have to be the

sole cause of the harm, however. Varacello, supra, 332 N.J. Super. at 48. While ascertainable

loss does not have to be specifically calculated at this point in the litigation, and unlawful

conduct does not need to be the sole cause of loss, plaintiff must still demonstrate an ability to

establish both elements on a class wide basis.

  The plaintiffs first method of demonstrating ascertainable loss is based on the purchase

price of Vioxx. This theory of recovery asserts that "Merck sold to the class a drug that was not

only less than what was promised, but a drug that was actively dangerous to a significant portion

of the class…," and therefore, defendant should refund the entire purchase price. Pl.'s Mot.

Class Cert. 23. The defendant asserts that this theory does not demonstrate that the plaintiffs

M010F57205

actually suffered a loss from the defendants conduct; rather, it just articulates what damages would be available, if an ascertainable loss was shown.

In Romano v. Galaxy Toyota, the court examined a damages award under the CFA. The court found that the correct measure of damages was not the entire purchase price of the product in question (an automobile), but rather, the difference between the value of the product as represented and the actual value of the product received. Supra, 399 N.J. Super. at 483-484. Romano recognized that the damages granted in a fraud case seek to "make 'an injured party whole,' and...are designed to fairly and reasonably compensate the injured party for the damages or losses proximately caused by the alleged consumer fraud." Id. at 483 (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11 (2004)). The reward of the entire price in that case went beyond what was required to fairly compensate the plaintiff because he plaintiff received a benefit from the transaction (an automobile). Ibid. A fair calculation of damages for each consumer presents a problem in this action, but an individualized calculation of damages alone does not always merit denial of class status. If the damages in question "differ in degree," this difference should not act as a bar to certification; however, if the damages differ in type, then the differences may act as a bar. Delgozzo, supra, 266 N.J. Super. at 187 (quoting In re Asbestos School Litigation, 104 F.R.D. 422, 430 (E.D.Pa. 1984)) (emphasis added). The question of how damages can fairly be proven is a difficult one, but probably not an insurmountable one. The issue of causal nexus between the loss sustained by each member of the class and the consumer fraud, however, creates an insurmountable barrier to a class action.

The plaintiffs present two theories of causation which would provide a nexus between Merck's unlawful conduct and the class members purchase of the drug. First, plaintiffs argue

M010F57206

that Merck's withholding of information with the intent that consumers would rely on it is prima

facie proof of causation.  The plaintiffs rely on <u>Varacello</u> for this theory, which stated:

> If the plaintiffs succeed in proving that [the defendant] withheld material
> information with the intent that consumers would rely on it in purchasing [the
> defendant's] policy, the purchase of the policy by a person who was shown the
> literature would be sufficient to establish prima facie proof of causation.

> [<u>Supra</u>, 332 <u>N.J. Super</u>. at 49.]

Although <u>Varacello</u> does indeed establish an instance in which there may be prima facie

causation, the plaintiffs in <u>Local 68</u> were subject to the same allegations of misrepresentation as

alleged in this matter, but the Supreme Court there did not find prima facie proof of causation.

The Court found there was no evidence that the plaintiffs "reacted in a uniform or even similar

manner" to the representations of Merck.  <u>Supra</u>, 192 <u>N.J.</u> at 390.  Rather, the plaintiffs made

individualized decisions "concerning the benefits that would be available to its members for

whom Vioxx was prescribed."  <u>Id.</u> at 391.

The same applies to the purchase of Vioxx by each consumer.  The decision of whether

to prescribe a medication is made upon a host of individualized factors, including other risk

factors the plaintiffs possessed and whether other drugs were effective in relieving the plaintiffs

pain.  Doctors react to medical warnings differently depending on the patient's condition and

medical history.  An individualized determination would be required for each plaintiff to

determine if the concealment of the CV risk information had a causal relationship on the decision

made as to whether or not the patient used Vioxx.  Taking into consideration these individualized

issues, "the commonality of defendant's behavior is but a small piece of the required proofs."

<u>Local 68</u>, <u>supra</u>, 192 <u>N.J.</u> at 391.  In this context, as in <u>Local 68</u>, application of a prima facie

causation would not be supported by the record.  This does not mean there must be proof of

M01OF57207

reliance, but there still must be a "nexus" and in order to fairly determine if a nexus exists for an individual, numerous factors must be considered that differ from consumer to consumer.

The very expert that the plaintiffs rely on reveals the individualized nature of the issues. Dr. Rosenthal asserts that Vioxx can be compare to naproxen because naproxen is a product with "the same therapeutic characteristics" as Vioxx, or alternatively that "had Class members understood there was an equally effective (and possibly safer) product at naproxen's price they would not have been willing to pay more than that amount for Vioxx." Rosenthal Declaration, 13. Neither one of these statements can be demonstrated on a class wide basis without specific information on each consumer. An examination into what "therapeutic characteristics" naproxen has for potential plaintiffs is an individualized inquiry. What the class members were willing to pay for Vioxx, or naproxen, or any other drug of this category, depends on a multitude of factors including levels of insurance coverage and a subjective determination of effectiveness. For these potential plaintiffs to obtain a recovery of damages on these grounds, a jury would need to consider facts applicable to each plaintiff. Some plaintiffs may have never used another painkiller other than Vioxx. Other may have used naproxen and numerous other NSAIDs without relief of pain before using Vioxx. Some may have gotten significant pain relief. The individual proofs required to show a causal nexus preclude a class action.

### b.  Unjust enrichment

Plaintiffs also advance a claim for unjust enrichment. Plaintiffs state that they "will show, using the same evidence used to prove the CFA violation, that Merck acted unjustly through its overarching scheme [of] misrepresentations and omissions about the safety and efficacy of Vioxx." Pl.'s Mot. Class Cert. 37. As in the CFA claim, defendant asserts that an

M010F57208

unjust enrichment claim cannot be made on a class wide basis, because individualized issues overwhelm common issues and therefore predominance does not exist.

The intention of an unjust enrichment cause of action is to receive a "disgorgement" of the profits retained by the defendant.  Unjust enrichment "involves a two part test: plaintiff must show both that the defendant received a benefit, and that the retention of the benefit without payment would be unjust." Russell-Stanley Corp. v. Plant Industries Inc., 250 N.J. Super. 478, 510 (Ch. Div. 1991).  Retention without payment is unjust if, had "the true facts [been] known to the plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 109 (App. Div. 1966).

Disgorgement of profits is a punitive, not a compensatory, form of damages.  There is no law in New Jersey that allows such a recovery in this type of claim.

**ii. Typicality**

R. 4:32-1 requires the claims of the representatives to be "typical of the claims or defenses of the class." In re Cadillac, supra, 93 N.J. at 425.  The representatives' claims must have the same "'essential characteristics common to the claims of the class.'" Ibid (quoting 3B Moore's Federal Practice ¶ 23.06-2 (1982)).

Plaintiffs allege that Kleinman and Martin's claims are typical of the class, because plaintiffs will have to prove the same course of conduct as other class members.  The defendant asserts in response that the individualized issues of the representatives claims demonstrate that common issues do not predominate.

There are multiple differences presented in the histories of the representatives.  Ms. Kleinman found that Aleve and Tylenol were as effective as Vioxx.  Ms. Kleinman's physician indicated that he would still prescribe Vioxx if it was available, and he himself continued to take

M01QF57209

it after it was withdrawn from the market.  Mr. Martin found that Vioxx was not always effective and he took hydrocodone at the same time for his pain.

These representatives received a different benefit from the drug.  Further, Ms. Kleinman's doctor may have chosen to continue to prescribe the drug, even knowing of the CV risks.  From this brief examination of their histories, it is apparent that these plaintiffs may not be typical of many of class representatives.  Some doctors believe they were deceived by Merck and would have not prescribed the drug if they knew its true risk factors  The patients of these doctors would not be well served by the testimony of Ms. Kleinman's doctor.  Although each plaintiff took Vioxx and paid some price for the drug, the similarities between the two plaintiff end there.

### iii. Superiority

To grant certification, the Court must find "that a class action is superior to other available methods" of adjudication.  R. 4:32-1(b)(3).  A court must consider, in doing so, "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class," and "the difficulties likely to be encountered in the management of a class action."  R. 4:32-1(b)(3).  The New Jersey Supreme Court has provided additional requirements for a finding of superiority.  The superiority requirement "demands (1) an informed consideration of alternative methods of adjudication of each issue, (2) a comparison of the fairness to all whose interests may be involved between such alternative methods and a class action, and (3) a comparison of the efficiency of adjudication of each method."  Iliadis, supra, 191 N.J. at 114-115.

Manageability is a significant issue in considering the superiority of a class action.  Id. at 117.  Denial of class status may be merited if there are "serious difficulties with respect to

M010F57210

notification and opt-out procedures," or if there are issues with "divergent or various governing law." Id. at 119. The reasons for denial cannot be "mere speculation of complications that may arise." Ibid. The potential problems with opt-out procedures and notice that defendant points to are ambiguous and speculative, and are accordingly not a reason for denial of certification.

The New Jersey Supreme Court has recognized that a class action may be the only form of resolution for some claims, and failure to grant a class action may sound a "death knell" for the claims of the individuals in those instances. Id. at 117. In this matter, there may not be an alternative, superior form of resolution for these claims, considering the small size of the damages alleged for each member of the class. This decision may indeed be a death knell to the claims of most individual consumers. However, the Court cannot find that a class action is a superior form of resolution, either. The lack of predominance creates manageability issues. Establishing a "causal nexus" examination would require individualized inquiries into the plaintiffs histories and backgrounds. Even if a New Jersey-only class is granted, problems with individualized issues of proof would be unmanageable.

There have been inconsistent outcomes in previous litigation of CFA claims in Vioxx cases. The defendant points out that that a CFA claim was rejected in Doherty v. Merck. ATL-L-0638-05-MT (Law Div. March 29, 2007) (slip op. at 1). Additionally, Boyd v. Merck was summarily dismissed when the plaintiff testified that he would still take Vioxx, knowing of the risks. ATL-L-1615-03-MT (Law Div. Jan. 30, 2006) (slip op. at 1). These inconsistent outcomes demonstrate that it would be unfair to Merck to certify a class and allow a jury to reach a uniform determination of liability where results could vary from plaintiff to plaintiff. For all these reasons, the Court cannot find that a class action is a superior mechanism for adjudication of these claims.

17

### III.   Choice of Law

Despite the issues presented with choice of law in Local 68, the New Jersey Supreme Court declined to find choice of law as the "lynchpin for class certification." Supra, 192 N.J. at 388. Rather, in that decision, the Court choose to "analyz[e] more generally the assertions about predominance and superiority." Ibid. The Court specifically expressed "no view" about the Appellate Division's choice of law analysis. Id. at 388 n. 3.

This decision also does not focus on choice of law, though extensively briefed, as the reason for denial of the certification. An examination into the requirements of the CFA demonstrates that an overwhelming number of individualized issues predominate. The lack of predominance, of common issues and need for the jury to consider multiple individual factors in order to find a causal nexus under the CFA and the issues discussed in the superiority assessment provide a sufficient basis for denial of the request for class certification.

CAROL E. HIGBEE, P.J.Cv.

18

# EXHIBIT 2

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE, MISSOURI

MARY PLUBELL, et al.,

                Plaintiffs,

vs.                                   Case No:  04CV235817-01
                                   DIVISION 5

MERCK AND CO INC

                Defendants.

**ORDER GRANTING**
**PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION**

UPON FULL CONSIDERATION, the Court, having reviewed Plaintiffs's PLAINTIFFS'

AMENDED MOTION FOR CLASS CERTIFICATION, and the Court having reviewed all

evidence, pleadings and arguments of record related to said motion, and being fully advised in

the premises, the Court makes the followings findings of fact, conclusions of law and orders:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

I.    **Background**

Plaintiffs filed this action as a putative class action against Defendant Merck & Co., Inc.

("Merck")  to recover economic damages for violations of the Missouri Merchandising Practices

Act (the "MMPA"), Mo. Rev. Stat. § 407.010, *et seq.*  Plaintiffs, on behalf of themselves and the

putative class, seek damages suffered as a result of their purchases of Merck's prescription drug

Vioxx.

The parties submitted substantial briefing and evidence, and the Court held a hearing on

October 26, 2006, at which additional argument was presented.

After having carefully considered all arguments and evidence presented, the requirements

for class certification contained in Rule 52.08, Mo. R. Civ. P. and case law interpreting those

M011D37722

requirements, the Court is convinced that Plaintiffs have satisfied the requirements of Rule 52.08 and that the most fair and efficient manner for this action to proceed is as a class action.

## II.    Standard for Class Certification

Plaintiffs move for class certification pursuant to Rule 52.08, Mo.R.Civ.P., and § 407.025.3 Mo. Rev. Stat.  Rule 52.08 sets forth standards for class certification and is restated verbatim in § 407.025.3.  The Court construes the statute as a legislative indication that class certification is appropriate, in proper cases, for claims brought under the MMPA.  The Court will apply Rule 52.08 as the standard for certification.

In evaluating Plaintiffs' Motion, the Court relies primarily on Missouri case law applying Rule 52.08.  While Missouri courts sometimes look to federal cases interpreting Federal Rules of Civil Procedure Rule 23 as persuasive authority, Missouri courts are not bound by such federal precedents.  *See Dale v. DaimlerChrysler Corporation,* - - S.W.3d - --, 2006 WL 1792414 at *5 (Mo. Ct. App. 2006); *Hemme v. Bharti* , 183 S.W.3d 593, 597 (Mo. 2006)(where "the Missouri and federal rules are essentially the same, federal precedents constitute persuasive, although not binding, authority.").

This Order resolves only the question of whether the prerequisites of a class action are met.  *Id.; see also State ex rel. Byrd v. Chadwick*, 956 S.W.2d 369, 380 (Mo. Ct. App. 1997).  This Order should not be construed as resolving any disputed factual issue.  It would be improper and unfair to the parties to require them to prove the merits of their claims or defenses at the class certification stage because of its preliminary nature and the very limited opportunity for discovery.  Moreover, the class determination under Rule 52.08 does not depend on the merits of the Plaintiffs' claims.  *See Reinhold v. Fee Fee Trunk Sewer, Inc.,* 664 S.W.2d 599, 602 (Mo. Ct. App. 1984).

### III.   Nature of the Case

Plaintiffs Mary Plubell and Ted Ivey are Missouri residents who allege that they purchased and consumed Vioxx. They bring this action on behalf of themselves and all Missouri residents who purchased Vioxx. Vioxx is the brand name of rofecoxib, one of a class of drugs called "prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis and muscle pain. Defendant launched Vioxx in the United States in 1999 and has marketed and sold it in more than 80 countries.

Plaintiffs allege that Merck engaged in a series of unlawful, unfair and deceptive acts and practices in connection with the sale, distribution or advertisement of Vioxx in violation of Missouri's Merchandising Practices Act. It is undisputed that each of the class representatives was prescribed the prescription drug Vioxx and that they each received and ingested the drug. The class representatives both alleged in their Petition and testified under oath that they purchased the drug Vioxx in the State of Missouri. Both class representatives alleged in their Petition and testified under oath that they were harmed by Merck because the Vioxx they purchased was falsely represented and because Merck failed to disclose to them the true nature and extent of Vioxx's side effects: namely, the high incidences of heart attack, stroke and death. Plaintiffs seek economic losses resulting from their purchases of Vioxx. Plaintiffs do not seek damages related to, or claim, personal injury, and specifically exclude from the class those claiming personal injury as a result of taking Vioxx.

IV.    **Application of Rule 52.08**

Rule 52.08 authorizes the Court in its discretion to certify a class of plaintiffs when the following factors are present: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representative parties are typical of the class or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class. *See* Rule 52.08(a), Mo. R. Civ. P.; *see also State ex rel. American Family Mut. Ins. Co. v. Clark,*106 S.W.3d 483, 486 (Mo. banc 2003). These elements are commonly referred to as "numerosity," "commonality," "typicality" and "adequacy."

Additionally, one of the three factors set forth in Rule 52.08(b) must also be present. In this case, Plaintiffs seek class certification based on Rule 52.08(b)(3), which requires a finding that (i) the questions of law or fact "predominate over any questions affecting only individual members," and (ii) that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *See* Rule 52.08(b)(3); *Clark*, 106 S.W.3d at 487-88. These elements are commonly referred to as "predominance" and "superiority."

The determination of whether to certify a class action under Rule 52.08 ultimately rests within the sound discretion of the trial court. *See Dale v. DaimlerChrysler Corporation*, - - S.W.3d. - - - , 2006 WL 1792414 at *5 (Mo. Ct. App. 2006); *Clark*, 106 S.W.3d at 486. "[B]ecause class certification is subject to later modification, a court should err in favor of, and not against, allowing maintenance of the class action." *Dale*, 2006 WL 1792414 at *6.

Plaintiffs seek to certify a class defined as follows: All Missouri residents who purchased Vioxx for personal or family use. Excluded from the Class are Defendant, including any parent,

M011D37725

subsidiary, affiliate or controlled person of Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families. Also excluded from the Class are those claiming they have suffered a personal injury as a result of taking Vioxx.

### A. Numerosity

Rule 52.08(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable. There is no "magic number" of class members that automatically satisfies the numerosity requirement. Rather, a common sense approach should be used in analyzing whether the class is so numerous that joinder is impracticable. *See Newberg on Class Actions*, § 3.06 at 254;[1] *see also Biben v. Card,* No. 84-0844-CV-W-6, 1986 WL 1199, at *3 (W.D. Mo. Jan. 6, 1986) (*quoting Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 785 (N.D. Ill. 1984) ("Though we do not now have before us any information as to the number of persons who bought Waste Management stock during the class period, as opposed to the number of shares traded during that period, we are entitled to make 'common sense assumptions' in order to support a finding of numerosity.").

Plaintiffs estimate that the class numbers in the thousands and Defendant does not dispute that the class is numerous. In fact, various public reports have indicated that more than 20 million Americans purchased Vioxx. Impracticability of joinder may be presumed where a class numbers as few as forty members. *Newberg*, § 3.05 at 247 ("[I]n light of the prevailing precedent, the difficulty inherent in joining as few as [forty] class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger

---

[1] Missouri courts, including the Missouri Supreme Court in *Clark*, have relied heavily on Professor Newberg's comprehensive treatise on class actions. Supreme Court Judge Laura Stith wrote that Professor Newberg is "the leading commentator in the area." *State ex rel. Byrd v. Chadwick*, 956 S.W.2d at 381.

M011D37726

should meet the tests of Rule 23(a)(1) on that fact alone."). Therefore, the Court finds that the class is sufficiently numerous to satisfy Rule 52.08(a)(1).

### B. Commonality

Rule 52.08(a)(2) requires a finding that "there are questions of law or fact common to the class." A single common issue can be sufficient to satisfy this requirement. As Professor Newburg explains:

> The test or standard for meeting [the commonality] prerequisite is qualitative rather than quantitative; that is, <u>there need be only a single issue common</u> to all member of the class. Therefore, this requirement is <u>easily met</u> in most cases.

<u>Newberg on Class Actions</u> § 3.10 at 272-277 (emphasis added).

Defendant does not challenge the commonality requirement in its briefing, and the Court finds that there are common questions of law and fact. In particular, whether Merck's alleged failures to disclose, and its alleged active efforts to conceal and minimize, the adverse health risks about Vioxx and whether such actions constitute unfair and deceptive trade practices under the Missouri Merchandising Practices Act are crucial issues that unite the entire class. Significantly, the resolution of these issues have far-reaching consequences for all parties that make class resolution highly desirable. The Court finds there are plainly issues of fact and law that are common to the class.

M011D37727

## C. Typicality

Rule 52.08(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement is fairly easily met so long as other class members have claims similar to the named plaintiff. *See Bradford v. AGCO Corp.,* 187 F.R.D. 600, 603 (W.D. Mo. 1999). Typicality does not require that the claims be identical. *See Kuenz v. Goodyear Tire and Rubber Co.,* 104 F.R.D. 474, 477 (E.D. Mo. 1985). As Professor Newberg explains:

> [A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

Newberg on Class Actions § 3.13 at 328-329. Different individual fact patterns, differences in damage claims and the prospect that the named plaintiff may be subject to certain defenses does not preclude a finding of typicality. Newberg § 3.15-3.16; 7A Wright, Miller & Kane, Federal Practice and Procedure, § 1764 at 235-41. In fact, "[f]actual variations in the individual claims will not normally preclude class certification if the *claim arises from the same event or course of conduct as the class claims,* and gives rise to the same legal or remedial theory." *Dale,* 2006 WL 1792414 at *11 (*quoting Carpe v. Aquila,* 224 F.R.D. 454, 457 (W.D. Mo. 2004)). The typicality requirement, pursuant to Rule 52.08, is satisfied "even where there is a variance in the underlying facts of the representative's claims and the putative class members' claims." *Id* at *12. Further, the existence of an affirmative defense against a class representative does not make his claim atypical. *Dale* at *14

M011D37720

Merck asserts that Plaintiff Mary Plubell is not a typical representative of the class because "she did not pay for Vioxx. . . ." Merck also argues that Plaintiff Ted Ivey is an atypical class representative because "he cannot prove that he suffered any loss 'as a result of' Merck's allegedly misleading statements about Vioxx."

The Court finds that Defendant's typicality arguments are without merit. The named Plaintiffs are asserting claims on behalf of themselves and the Class that uniformly arise out of the same course of conduct by Defendant and that are based on the same legal theory. Thus, the claims of the Plaintiffs are typical of the claims of the class. The question of whether Ms. Plubell actually purchased Vioxx or whether Mr. Ivey actually suffered loss as a result of Merck's conduct goes to the merits of the case. Such alleged credibility issues do not make the named plaintiffs' claims atypical of those of the class and will not "swamp" this litigation "so long as the named plaintiffs' claim arises from the same event or practice or course of conduct." *Bellinder v. Microsoft Corp.*, 2001 WL. 1397995 at * 3 (Kan. Dist. Ct. Sept. 7, 2001). *See also Kronfeld v. Trans World Airlines*, 104 F.R.D. 50, 52 (S.D.N.Y.) (Claim that "plaintiff's credibility is subject to attack upon cross examination on trial because of alleged inconsistencies between his deposition testimony and statements contained in other documents" does not disqualify plaintiff as a class representative.) Moreover, these issues do not make Plaintiffs' claims atypical of the claims of the class in any event. The Court finds that the typicality requirement is satisfied.

### D. Adequacy of Representation

Rule 52.08(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Under this requirement, the Court must make separate findings with respect to the adequacy of both the named plaintiffs and their counsel to represent the Class as a whole. *See Union Planters Bank, N.A. v. Kendrick,* 142 S.W.3d 729, 735 (Mo. banc 2001). In doing so, the Court must consider whether the named representative "has any conflicts of interest that will adversely affect the interests of the class." *Dale,* 2006 WL 1792414 at *15; *Union Planters Bank, N.A.,* 142 S.W.3d at 735-36.

Defendants typically contest the adequacy of the class representatives, but courts have recognized that these statements should be viewed skeptically and they are often rejected. As the Seventh Circuit succinctly put it in *Eggleston v. Chicago Journeyman Plumbers Local Union No. 130,* 657 F.2d 890 (7th Cir. 1981), *cert. denied,* 455 U.S. 1017 (1982):

> [I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether 'the representative parties will fairly and adequately protect the interest of the class,' or the plaintiffs' ability to finance the litigation, it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house. *Id.* at 895.

Merck argues that Plaintiff Plubell is not an adequate class representative because "she received her Vioxx for free and thus does not have standing to bring a claim under the [MMPA]," and that Plaintiff Ivey is not an adequate class representative because he testified in his deposition that he would never take a drug with a serious cardiovascular risk yet admitted that he does not know the risks of any of the medications he takes. However, as stated above, credibility issues do not make class representatives inadequate as long as their interests do not

M011D37730

conflict with the interests of the putative class and the class is vigorously prosecuted. Merck has pointed to no such conflicts and is not contesting that the class claims have not been and will not be vigorously prosecuted by the parties and counsel.

The Court finds that Mary Plubell and Ted Ivey have no interests adverse to those of the proposed class and that they have vigorously prosecuted this action. Both of the class representatives in this case have been actively involved with the litigation, reviewed documents, provided discovery responses, produced documents, made themselves available for deposition at convenient times for Merck, and stated, in no uncertain terms, that they are looking out for the best interests of the class and will actively pursue the litigation. For all these reasons, the Court finds that the named plaintiffs are adequate class representatives.

The Court also finds that Plaintiffs' counsel are qualified to be named as class counsel. Both firms representing the Plaintiffs have significant experience in complex commercial litigation, in class actions, in consumer fraud cases and in cases involving pharmaceutical companies. Both firms are willing to devote the resources necessary to prosecute these claims and zealously represent the Plaintiffs and the Class. Merck does not dispute the adequacy of counsel in this case. Therefore, this Court finds that the counsel is adequate to represent the Class.

### E. Predominance

In addition to the four requirements of subsection (a), Rule 52.08(b)(3) requires plaintiffs to demonstrate that questions of law or fact common to the members of the class "predominate" over any questions affecting only individual members, and that a class action is superior to other methods for fair and efficient adjudication of their claims.

Defendant's argument opposing class certification hinges heavily on its argument that "highly individualized" factual inquiries would be necessary to resolve the proposed class members' MMPA claims.  For the reasons expressed below, the Court finds Merck's arguments unpersuasive and that questions of law or fact common to the members of the class predominate over any individual questions.

    **1.   Predominance Is Satisfied Because Questions Of Law Or Fact Common To The Class Predominate Over Any Questions Affecting Only Individual Members.**

Predominance is satisfied because questions of law or fact common to the class predominate over any questions affecting only individual members.  The overriding common issue in this case is whether Merck's failure to disclose and active concealment of the alleged fact that Vioxx was unsafe constitutes a violation of the MMPA.  That appears to be what this case is all about - - everything else is secondary.  That issue is plainly common to the class and easily predominates over all other issues.

Merck has attempted to defeat predominance by attempting to create numerous "individual" issues (most of which are irrelevant to Plaintiffs' claims as explained below), and then claiming that the individual issues somehow outweigh the common issues and thereby defeat predominance.  As the Missouri Supreme Court made clear in *Clark*, this tactic is inappropriate and does not defeat predominance.  *Clark* held that the predominance requirement is not a numerical test that compares the sheer number of common issues with the number of individual issues. Rather, the Supreme Court emphasized that a single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous individual issues:

> The "predominance" requirement . . . does not demand that every single issue in the case be common to all the class members, but only

M011D37732

that there are substantial common issues which "predominate" over the individual issues. The predominate issue need not be dispositive of the controversy or even be determinative of the liability issue involved. The need for inquiry as to individual damages does not preclude a finding of predominance. **A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions**.

106 S.W.3d at 488 (emphasis added).

The Supreme Court in *Clark* further made clear that the "predominance of the common issues is not defeated simply because individual questions may remain . . . questions of damages or possible defenses to the individual claims." *Id. See also Doyle v. Fluor Corp.*, 199 S.W.3d 784 (Mo. Ct. App. 2006) (affirming class certification). "The fundamental question is whether the group aspiring to class status is **seeking to remedy a common legal grievance**." *Dale*, 2006 WL 1792414 at *18 (emphasis added). "If, to make a prima facie showing *on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* at *19 (emphasis in original0; *Craft*, 190 S.W.3d at 382. "[T]he fact that some issues may require individualized fact-finding does not prevent the satisfaction of the common-question-predominance question." *Id.* at *20 (affirming the trial court's certification of the class). Thus, even if the "individual" issues raised by Merck were relevant to Plaintiffs' claim, they would be wholly insufficient under *Clark* to defeat predominance.

### 2. The "Reliance" or "Causation" Issues Identified By Defendant Do Not Exist In This Case And Would Not Prevent Class Certification In Any Event.

Virtually all of the "individual" issues raised by Merck are irrelevant to Plaintiffs' actual claims. Thus, these supposed "individual" issues are also wholly irrelevant to this Court's class certification determination.

#### a.  Plaintiffs Have Not Alleged Reliance.

Merck argued throughout much of its brief and at the hearing that predominance is defeated by individual issues regarding reliance. However, Plaintiffs simply have not alleged reliance (and as explained below have no need to allege reliance under Missouri law). Rather, Plaintiffs have alleged:

> 53.  The acts and practices engaged in by Defendant, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Missouri Merchandising Practices Act, Mo. Ann. Stat. §§ 407.010 *et seq.*

> 54.  Defendant engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of Vioxx in violation of Mo. Rev. Stat. § 407.020.

> 55.  Plaintiffs purchased Vioxx, a product that was falsely represented, as stated above, in violation of the Missouri Merchandising Practices Act and as a result Plaintiffs suffered economic damages in that the product they and other class members purchased was worth less than the product they thought they had purchased had Defendant's representations been true.

Second Amended Class Action Petition at ¶¶ 53-55.

In virtually identical circumstances, a Missouri appellate court recently upheld class certification in a Missouri consumer fraud case brought against the manufacturers of "light

M011D37734

cigarettes." *Craft v. Phillip Morris Companies, Inc.*, 190 S.W.3d 368 (Mo. Ct. App. 2005).

Plaintiffs in *Craft* - - like Plaintiffs here - - did not allege reliance.  190 S.W.3d at 374-75.

Defendants in that case - - much like Merck here - - argued that class certification was

inappropriate because plaintiffs could not demonstrate reliance on a class-wide basis and would

have to show deception as to each class member.  190 S.W.3d at 383.  The Court flatly rejected

that argument in language equally applicable here:

> However, plaintiff did not allege reliance or deception in her petition,
> and she did not base the theory of this lawsuit on reliance or
> deception.  Therefore, under the theory of the lawsuit, the individual
> reasons for purchase are not issues and do not predominate over the
> common questions.

*Id.*  Thus, the alleged "reliance" issues here simply cannot defeat predominance.[2]

### 3. Merck's Allegedly Different Knowledge at Different Times Does Not Defeat Predominance.

Like the portions of its brief devoted to the issue of reliance, Merck's argument that its

"knowledge about the safety of Vioxx changed over time" is equally irrelevant and does not

defeat predominance.  Like reliance, Merck's knowledge is not an element of Plaintiffs' claim.

15 CSR 60-9.020 ("Knowledge of deception, intent to mislead or deceive, or any other culpable

mental state such as recklessness or negligence, are not elements of deception as used in Section

407.020.1, RSMo.")  *See also Craft*, 2003 WL 23139381 at *3 (the MMPA eliminates the intent

---

[2] Plaintiffs were not required to allege reliance because it is not an element of a claim under Missouri's consumer protection statute.  Because reliance is not an element in a claim under the Missouri's Merchandising Practices Act, individual reliance issues are irrelevant and cannot defeat predominance in this case. *See Hess v. Chase Manhattan Bank USA*, 2006 WL 768513 at *13 (Mo. Ct. App. 2006) ("The MPA serves as a supplement to the definition of common law fraud, whose purpose is 'to preserve fundamental honesty, fair play and right dealings in public transactions.' **The MPA eliminates the need to prove an intent to defraud or reliance.**") (citation omitted); *Schuchmann v. Air Services Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 232 (Mo. Ct. App. 2006)("Defendant's Point II argument also ignores the plethora of case law holding that the MMPA serves as a supplement to the definition of common law fraud; it eliminates the need to prove intent to defraud or reliance."); *State ex rel. Nixon v. Beer Nuts, et al.*, 29 S.W.3d 828, 837 (Mo. Ct. App. 2000); *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (Mo. Ct. App. 1988) ("We also do not find that proof of reliance by customers is a necessary element of such cases.").

---

M011D37735

to deceive requirement of common law fraud); *State ex rel. Webster*, 756 S.W.2d at 635 ("It is the defendant's conduct, not his intent, which determines whether a violation has occurred."). It is likewise irrelevant to any class certification issue, including predominance. Regardless of what Merck knew at various times during the class period, Plaintiffs have alleged a consistent pattern of deception during the entire class period (from the time the drug came onto the market until the time it was withdrawn) regarding the safety of Vioxx. Plaintiffs allege that Merck was violating the MMPA at any point and at all points during the class period. Whatever differing degrees of knowledge Merck may have had at different points of time therefore does not affect commonality or predominance.

### 4. The Alleged Varying Nature of Merck's Representations Do Not Defeat Predominance.

Merck claims that because it allegedly made so many different deceptions over time, those allegedly victimized by the varying deceptions are somehow barred from maintaining a class action. Merck's argument is unpersuasive.

First, as explained above, reliance is not an element in Plaintiffs' claim. Therefore, the varying nature of Merck's alleged misrepresentations does not present individual questions because Plaintiffs do not need to show reliance on any misrepresentation.

Moreover, as mentioned above, Plaintiffs have alleged a consistent pattern of deception over the entire class period, which involved primarily failures to disclose and active concealment of the true facts. Defendant allegedly spent over $160 million per year in direct-to-consumer advertising beginning in 1999 and continuing until September 2004 when Vioxx was recalled due to safety concerns. Plaintiffs have alleged that this advertising campaign consistently and uniformly failed to disclose, actively concealed, and otherwise downplayed scientific studies and other evidence showing that the use of Vioxx led to substantially increased risk of heart attack

and strokes and that there was no evidence that Vioxx was any more effective than much cheaper alternatives.  Defendant allegedly not only failed to disclose and minimized the known risks of Vioxx, it also took affirmative steps throughout the class period to conceal the truth from the consuming public and prescribing physicians.  Because Plaintiffs have alleged uniform conduct - - primarily through a failure to disclose and active concealment of the true facts - - throughout the Class period, the fact that some of Merck's misrepresentations may have varied is irrelevant.

Similar arguments have been made by defendants in securities class actions who have released a variety of information over a period of time.   In *In re McDonnell Douglas Corporation Securities Litigation*, 98 F.R.D. 613 (E.D. Mo. 1982), for example, defendants argued that constantly changing conditions at McDonnell Douglas required complicated factual determinations to establish liability for each alleged insider sale.   *In re McDonnell Douglas Corporation Securities Litigation*, 98 F.R.D. 613 (E.D. Mo. 1982).   The court found the defendant's argument unpersuasive and noted that other courts had also addressed and dismissed arguments that various disclosures over time defeated class certification because they created a "continuously changing factual mix of available information."   *Id.*   (*citing Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D. N.Y. 1981)).   The court, in granting plaintiffs' motion for class certification, found that the plaintiffs had a common interest in determining whether the defendant's conduct was actionable in general, especially "when plaintiffs allege a common course of conduct by defendants."   *Id.* (*citing Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)); *see also Katz v. Comdisco, Inc.,* 117 F.R.D. 403, 412 (N.D. Ill. 1987) ("the few factual variations that did occur during the revised class period do not affect the question common to all class members with respect to defendants' liability – i.e., whether Comdisco and its officers engaged in a common scheme to conceal the company's contingent tax liability.");

Plubell v Merck & Co., Inc.          Case No. 04CV235817-01

*see also Steiner v. Equimark Corporation*, 96 F.R.D. 603, 608 (W.D. Pa. 1983) (granting motion for class certification and holding that "[t]he perpetuation of the alleged wrong over a lengthy period of time and through a variety of different documents does not defeat a class certification motion. Nor is such a motion defeated by fluctuations in the underlying facts over the class period.").[3]

To support its argument that different representations over time must defeat class certification, Merck relies heavily on an unreported Missouri Court of Appeals decision in *State ex rel. Leader Motors, Inc. v. Koehr*, 1992 WL 151844 (Mo. Ct. App. 1992), *transferred to Missouri S. Ct.* (Sept. 22, 1992), *writ quashed* (Feb. 23, 1993). That opinion cannot properly be relied upon (or even cited), because the Missouri Supreme Court granted transfer and quashed the writ issued by the Court's of Appeals in the case cited by Merck. That opinion therefore is a nullity. *Gerlach v. Missouri Commission on Human Rights*, 980 S.W.2d 589, 594 (Mo. Ct. App. 1998) "The decision of the court of appeals in a case subsequently transferred is of no precedential effect."). Indeed, the Missouri Supreme Court in deciding to quash the writ, obviously disagreed with the rationale and holding expressed in the Court of Appeals decision so heavily relied upon by Merck.[4]

---

[3] Theses securities cases, in this context, are quite helpful and analogous because, like any claim under the MMPA, the courts have found that securities fraud claims simply do not require a finding of reliance on any misrepresentation.

[4] In any event, *Koehr* is easily distinguished from the facts at hand. In *Koehr*, plaintiffs sought certification of a class of individuals who purchased an automobile from Leader on the representation that the auto was a "demo" when the automobile had been previously owned and used by a rental car agency. *Id.* The trial court ordered the class certified, but the court of appeals issued a writ of prohibition to prevent the entry of the order, stating that "[a]lthough plaintiff's petition includes allegations of written representations in advertising, the primary focus of plaintiff's action involves disputed oral misrepresentations which relators or their agents allegedly told purchasers in individual sales transactions," and therefore "[e]ach purchaser's claim will of necessity require proof of the alleged misrepresentations made in that individual transaction." *Id.* at *6. The court also found that each automobile was different from all others and that issues of liability were dependent upon differing statements allegedly made by individual salespersons to individual purchasers. *Id.* at *9. In contrast, the

M011D37738

### 5. The Reasons Physicians Prescribed Vioxx To Patients Is Irrelevant To Class Certification.

Defendant argues that each prescribing physician's knowledge about the risks of Vioxx would have to be explored and, as a result, individual questions will predominate. That type of "derivative reliance" argument is irrelevant here because it is again based upon the assumption that reliance is required under the MMPA. As explained above, Plaintiffs do not allege reliance under their MMPA claim and the learned intermediary doctrine cannot, therefore, defeat class certification in this case.

At the class certification stage the Court need not decide whether, at trial, the learned intermediary doctrine *may* apply. This Court notes, however, that a fundamental requirement for application of the learned intermediary doctrine is full and complete disclosure to doctors. Plaintiffs here have specifically alleged that Defendant withheld information from the "health care industry," which obviously includes doctors. Second Amended Class Action Petition at ¶ 25. Plaintiffs further alleged that Defendant fraudulently "caused the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with Vioxx . . ." *Id.* That fraudulent study was allegedly published for and directed at the health care industry and doctors specifically. Accordingly, the doctrine may not apply. Moreover, the learned intermediary doctrine is an

---

Vioxx purchased by Plaintiffs and the members of the Class did not differ from one purchaser to the next, and the primary focus of Plaintiffs' action involves misrepresentations made by Merck to the general public and health care providers - - these misrepresentations (or perhaps more importantly its omissions and failures to disclose) did not vary from individual to individual. Therefore, the misrepresentations do not require individualized inquiries. Defendant relies on *In re Prempro Products Liability Litigation*, 230 F.R.D. 555 (E.D. Ark. 2005), though in that case the court' decision not to certify the class was not based solely on individual questions of fact - - instead, the court found that "the state-by-state variations in law trump the common issues of law or fact, and preclude a finding that common issues predominate." *Id.* at 566. For the reasons stated above, Defendant's reliance upon *In re Rezulin Prods. Liab. Litig* and *Sweet v. Pfizer*, other pharmaceutical products liability cases, are distinguishable for the very same reasons.

M011D37739

affirmative defense that should not alone defeat class certification in this case. *See Dale v. DaimlerChrysler Corporation,* - - S.W.3d - --, 2006 WL 1792414 at *14 (Mo. Ct. App. 2006). For all these reasons, the Court rejects Defendant's arguments that the learned intermediary doctrine and reliance on the part of Plaintiffs or Plaintiffs' physicians somehow defeats the common issues in this case.[5]

### 6. Plaintiffs Have Pleaded Ascertainable Loss On A Class-Wide Basis.

Defendant argues that the jury would need to engage in an individualized inquiry to determine which proposed class members suffered ascertainable loss. Plaintiffs are not required to prove ascertainable loss at the class certification stage - - they are merely required to plead ascertainable loss and have done so. Plaintiffs have alleged that they have "suffered economic

---

[5] Although the Court need not decide this legal issue at the class certification stage based upon the above findings, another reason the learned intermediary doctrine may have no application at trial here is that it is a <u>common law</u> defense and may not apply to a <u>statutory</u> claim, particularly one based upon a remedial statute designed to protect the consuming public. It may be inconsistent with the spirit and intent of the MMPA to apply such a defense to provide immunity to drug manufacturers that allegedly misled the public. Other courts in similar circumstances have so held. *See e.g., Griffith v. Blatt,* 51 P.3d 1256 (Or. 2002) (defense of learned intermediary doctrine, a common law defense, could not be asserted in statutory product liability action); *Larkin v. Pfizer, Inc.,* 153 S.W.3d 758, 767 (Ky. 2004).

The Court further notes that, given the massive direct-to-consumer advertising alleged here, the fundamental justification for the doctrine - - that patients rely solely on their doctors to choose which prescription drugs they take - - simply may not exist in this case. "The learned intermediary doctrine arises when a product manufacturer has little or no contact with the ultimate user." *Bean v. Baxter Healthcare Corp.,* 965 S.W.2d 656 (Tex. Ct. App. 1998). Courts have held that "consumer-directed advertising of pharmaceuticals thus belies each of the premises on which the learned intermediary doctrine rests." *Perez v. Wyeth Laboratories, Inc.,* 161 N.J. 1, 19, 734 A.2d 1245 (N.J. 1999). The New Jersey Supreme Court has specifically rejected application of the learned intermediary doctrine in cases of direct-to-consumer advertising. *Id.* In *Perez,* the court observed that "[w]hen mass marketing of prescription drugs seeks to influence a patient's choice of a drug, a pharmaceutical manufacturer that makes direct claims to consumers for the efficacy of its product should not be unqualifiedly relieved of a duty to provide proper warnings of the dangers or side effects of the product." *Id.* at 5 (holding that when a drug manufacturer has advertised its drug directly to consumers, the role of the physician in prescribing drugs does not break the chain of causation for manufacturer's failure to warn patient of harmful side effects); *see also Stephens v. G.D. Searle & Co.,* 602 F. Supp. 379 (E.D. Mich. 1985) (applying Michigan law); *Hill v. Searle Laboratories,* 884 F.2d 1064, 1070-71 (8th Cir. 1989) (holding that manufacturers of contraceptives are required to warn the consumers of their products based, in part, on the fact that they directly advertise the product to consumers); *Garside v. Osco Drug, Inc.,* 764 F. Supp. 208, 211 n.4 (D. Mass. 1991) (recognizing the validity of the direct-to-consumer advertising exception to the learned intermediary doctrine), *rev'd on other grounds,* 976 F.2d 77 (1st Cir. 1992).

M011D37740

damages in that the product they and other class members purchased was worth less than the product they thought they had purchased had Defendant's representations been true." Second Amended Class Action Petition at ¶ 55. Economic damages plainly constitute an "ascertainable loss of money" under the MMPA. Mo. Rev. Stat. §407.025.1. Thus, Plaintiffs have easily satisfied the requirement that they plead ascertainable loss. *See e.g., Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 900-01 (reversing trial court's decision to dismiss MMPA action on the ground the plaintiff had failed to sufficiently allege ascertainable loss). Plaintiffs also have plainly done so on a class-wide basis - - the product all "class members purchased was worth less than the product they thought they had purchased." Second Amended Class Action Petition at ¶ 55.

In *Craft*, the court rejected defendants' argument that plaintiff had suffered no economic damages. *Craft*, 2003 WL 23139381 at *1.[6] The court pointed out that "[g]iven a broad and liberal intendment," plaintiff's allegations of economic loss were all that were required under the MMPA. *Id.* at *5. The court then pointed out that Missouri, unlike many states, has adopted the more "liberal benefit-of-the-bargain rule" as the appropriate measure of damages for claims brought under the MMPA. *Id.* at *6-9. Under that rule, plaintiff was entitled to prove damages by showing the actual value of the Marlboro Lights purchased as compared to the value of the Marlboro Lights if they had been as represented (i.e., lower tar and nicotine and therefore safer from a health perspective). *Id.* As in *Craft*, there can be no logical question that Vioxx would have been worth more if it had been as represented (i.e. relatively safe) than it actually was (i.e.

---

[6] This Court acknowledges that the Circuit Court's opinion in *Craft* is not controlling authority because it was superseded on appeal. The Missouri Court of Appeals held that the trial court's analysis of the benefit of the bargain rule was "surplusage" because it is "not appropriate to resolve damage theories at the class certification stage." *Craft*, 190 S.W.3d at 385 (citation omitted). This Court will disregard Merck's damage theory argument because it is not appropriate to consider such theories at this stage of the litigation.

significantly more likely to cause heart attack and stroke than other, less costly, equally efficacious pain medications).

Defendant argues that, in order to determine ascertainable loss, the jury would need to determine whether each putative class member would have stopped taking Vioxx, what, if any, alternative treatment a plaintiff would have used in light of the plaintiff's medical history, and whether the alternative drug would have cost more or less than Vioxx. Defendant is mistaken because each Plaintiff has suffered an ascertainable loss by having made some form of payment for Vioxx. The fact that further information may be needed to determine the exact amount of damages each Plaintiff and member of the Class suffered does not render a class unmanageable or defeat class certification. *See Doyle v. Fluor Corporation*, 2006 WL 1735221 at *4 (Mo. Ct. App. 2006).

Plaintiffs and the members of the Class suffered ascertainable loss due to the simple fact that they allegedly paid artificially inflated prices for a product that Defendant advertised as safe. In certifying this class, the Court will adopt the reasoning of the *Craft* court:

> As the Court sees it, however, whether the product is jewelry or a pack of Light cigarettes, it simply doesn't matter what reason or motivation individual class members may have had for choosing to purchase the product. They purchased a product that was misrepresented and that, if Plaintiff's allegations here are to be believed, would have had greater economic value if the false representations had been true. That is consumer fraud if the allegations are true, and is compensable under the benefit-of-the-bargain rule.

*Craft*, 2003 WL 23355745 at *8. The Court finds that Plaintiffs have met the test for ascertainable loss.

In summary, none of Merck's arguments cause this Court to believe that common issues do not predominate over individual issues. Specifically, the Court finds that whether Merck's failure to disclose and active concealment of Vioxx's alleged adverse health risks constitute a

violation of the MMPA is a common issue that predominates over any individual issues in the case. Therefore, the Court finds that the predominance test is satisfied here.

## F. Superiority

Certification under Rule 52.08(b)(3) requires that the Court find that the class action is "superior" to other available methods for the fair and efficient adjudication of the controversy. Rule 52.08(b)(3) lists four factors "pertinent" to a finding of superiority:  "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action."

The Court finds no single individual would, as a practical matter, be able to retain counsel and effectively prosecute this type of consumer protection claim against Merck.  The Court thus finds that no class member has an incentive to control the prosecution of an individual case.  Joinder of or intervention by the thousands of class members as actual parties in this case would be impractical or unmanageable.  With thousands of class members, clearly no superior method to a class action exists to efficiently consider and resolve thousands of claims in the State of Missouri.  The Court is convinced that the issues proposed to be resolved by the Plaintiffs in this case can be effectively tried in a single case and that this case will be manageable. Certifying this case as a class action on these issues will materially advance the litigation and be far more efficient than separately hiring experts in each case and having the same issues tried multiple times in different courts around the state with many potentially differing results.  In making this finding, the Court is aware that questions concerning the *amount* of damages may

remain for some class members even if Plaintiffs are successful.   For these reasons, the superiority requirement is satisfied.

## **ORDERS**

IT IS HEREBY ORDERED that Plaintiffs' Amended Motion for Class Certification is GRANTED and that this action shall proceed as a class action.

IT IS FURTHER ORDERED that Plaintiffs, Mary Plubell and Ted Ivey, are appointed as representatives of a class of Plaintiffs defined as:

All Missouri residents who purchased Vioxx for personal or family use.[7]

IT IS FURTHER ORDERED that Stueve Siegel Hanson Woody LLP and Gray, Ritter & Graham, P.C. are appointed as class counsel.

IT IS FURTHER ORDERED that within 30 days of this Order, or within 30 days of the mandate to this Court after any appeal of this Order, the parties shall meet and confer on the issue of class notice and submit a joint proposal for giving notice of this action to the Class.   If the parties cannot agree on a joint proposal, they shall submit separate proposals to the Court.

Dated:  JUNE 12, 2008

W STEPHEN NIXON
Judge

---

[7] Excluded from the Class are: Defendant, including any parent, subsidiary, affiliate or controlled person of Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families.  Also excluded from the Class are those claiming they have suffered a personal injury as a result of taking Vioxx.

M011D337744

**Certificate of Service**

This is to certify that a copy of
the foregoing was mailed postage
pre-paid or hand delivered to the
following on JUNE 12, 2008.

Copies to:

JOHN CHRISTIAN AISENBREY
1201 WALNUT, SUITE 2800
KANSAS CITY, MO 64108

PATRICK JOSEPH STUEVE
STUEVE SIEGEL HANSON LLP
460 NICHOLS ROAD, SUITE 200
KANSAS CITY, MO 64112

JOHN H BEISNER
1625 EYE ST N.W
WASHINGTON, DC 20006

JESSICA DAVIDSON MILLER
1625 EYE ST N.W
WASHINGTON, DC 20006

*/s/ Sue Akers*

Judicial Administrative Assistant

M011D37745

# EXHIBIT 3



PIKE CIRCUIT COURT
35TH JUDICIAL CIRCUIT
DIVISION II

Case No. 04-CI-01493

JAMES RATLIFF, On Behalf Of Himself
and All Others Similarly Situated                               PLAINTIFFS

V.                    ORDER CERTIFYING CLASS ACTION

MERCK & COMPANY, INC.                                          DEFENDANT

\* \* \* \* \* \* \*

The Plaintiff, James Ratliff ("Ratliff"), through counsel, having moved the Court to

certify this action as a Class Action pursuant to Rules 23.01 and 23.02(c) of the Kentucky Rules

of Civil Procedure, and the Court having heard arguments of counsel for Ratliff and counsel for

the Defendant, Merck & Company, Inc. ("Merck"), and being duly and sufficiently advised,

IT IS ORDERED AND ADJUDGED that the Motion of the Plaintiff Ratliff to certify this

action as a Class Action pursuant to Rules 23.01 and 23.02(c) should be, and hereby is, granted;

and

IT IS FURTHER ORDERED AND ADJUDGED that this action is certified as a Class

Action with such Class being comprised of all Kentucky residents who have purchased and taken

VIOXX during the period of May 1999 through September 30, 2004 and who, upon

recommendation and advice of the FDA and Merck have or will contact physicians to seek

advice regarding their VIOXX use; and

IT IS FURTHER ORDERED AND ADJUDGED that counsel for the Plaintiff Class shall prepare and provide to the Court the form of a proposed Notice of Class Certification to be disseminated to potential members of the Class now certified by the Court.

Done this 1ST day of ____April____, 2010.

STEPHEN D. COMBS, JUDGE
PIKE CIRCUIT COURT

TENDERED BY:

RICHARD A. GETTY
        and
JOE F. CHILDERS
GETTY & CHILDERS, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507
Telephone: (859) 259-1900
Facsimile: (859) 259-1909

COUNSEL FOR PLAINTIFFS
JAMES RATLIFF, ON BEHALF OF
HIMSELF AND ALL OTHERS SIMILARLY
SITUATED

2

M014625755

## CLERK'S CERTIFICATE OF SERVICE

A copy of the foregoing Order Certifying Class Action was mailed, postage prepaid, to the following on this the _____ day of _____, 2010:

Richard A. Getty, Esq.
     and
Joe F. Childers, Esq.
Getty & Childers, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507

Susan J. Pope, Esq.
Frost Brown Todd, LLC
250 West Main Street, Suite 2800
Lexington, Kentucky 40507-1749


_____
CLERK, PIKE CIRCUIT COURT

ragpld3192

M014625756