Via Certified U.S. Mail

June 28, 2010



Chief Judge Sarah Vance
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C255
New Orleans, LA 70130

Re: Vioxx Case Number VCN 1057715 aka BC 340272

To Chief Judge Sarah Vance:

I am enclosing copies of letters sent to Mr. Phil Strunk at Browngreer PLC and to Judge Eldon E. Fallon pertaining recent discoveries into the erroneous way in which points were allocated to the above case by Browngreer when they indeed had all the Medical records.

I understand that the overseeing Court should have been conducting random audits into how these cases were being administered by Browngreer and ensuring that there was no fraud.

Mr. Phil Strunk has notified me that they are not able to correct their errors because the appeals time has elapsed.

We relied on the Claims Administrator to properly review and administer our claim. We as the Claimants should not ever have had to audit their work. That is what the Court's job was supposed to be.

I am asking the Court to intervene and take the appropriate action which would be to instruct Browngreer to correct the errors they made.

I await response from your Court.

Sincerely,

*Vivian Ross*

Vivian Ross

Via Certified U.S. Mail

June 28, 2010

Eldon E. Fallon
United States District Judge
Eastern District of Louisiana
500 Poydras Street, Room C456
New Orleans, LA 70130

Re: Vioxx Case Number VCN 1057715 aka BC 340272

To District Judge Eldon E. Fallon:

I am enclosing copies of letter sent to Mr. Phil Strunk at Browngreer PLC pertaining recent discoveries into the erroneous way in which points were allocated to the above case by Browngreer when they indeed had all the Medical records.

I understand that the overseeing Court should have been conducting random audits into how these cases were being administered by Browngreer and ensuring that there was no fraud.

Mr. Phil Strunk has notified me that they are not able to correct their errors because the appeals time has elapsed.

We relied on the Claims Administrator to properly review and administer our claim. We as the Claimants should not ever have had to audit their work. That is what the Court's job was supposed to be.

I am asking the Court to intervene and take the appropriate action which would be to instruct Browngreer to correct the errors they made.

I await response from your Court.

Sincerely,


Vivian Ross

June 7, 2010

Philip Strunk
Browngreer PLC
115 S. 15th Street, Suite 400
Richmond, Virginia 23219-4209

Re: Louis Ross – VCN 1057715

Dear Mr. Strunk:

As per your request on June 3, 2010, I am writing this letter in order to have Browngreer correct the errors it made in the settlement amount of the above case.

It just recently came to my attention that Browngreer had deducted 55% of the point award based on a nurse's note of an MI in 98-99 <u>which is not supported or otherwise documented by any hospital or physician's records</u>.

Exhibit 2.2.1.1 Injury Gate Criteria of the Settlement Agreement states that the definition of a Myocardial Infarction is based on a diagnosis or affirmative finding in the medical records (e;g., a report of consultation) by a cardiologist of a myocardial infarction.

As you know, this note was made by a nurse at the Emergency room during intake on June 18, 2003. The same nurse also wrote my father's birth date incorrectly as 8/6/16.

This paper also indicates that my father was not accompanied by anyone at the time. The box "Self" is checked. My father was hard of hearing and this paperwork was filled out based on questions that were asked my father by the nurse at the time of intake. Any questions presented could have been easily misheard or not heard at all by my father and any answers could have been misinterpreted or misunderstood by the nurse.

I am enclosing notes and letters from my father's Cardiologist who treated my father since 1995.

As you might notice Dr. Shi takes extreme care to list each and every one of the conditions and accidents or attacks on his letter dated September 6, 2000. Something as major as an MI would have certainly been on the top of this list if it had occurred.

Also, all the Doctor's visits during 1998 and 1999 are noted as 'Patient Feeling Fine".
except for the April 1998 visit in which a CVA exam is recommended.
The CVA exam was performed on 4/21/98 and the impression was "Negative"
as to a Stroke.

Browngreer had all the medical records for the above years which were
carefully examined and which did not document an MI in 1998-1999.

Despite this, Browngreer deducted 55% of the total point award in an effort to minimize
the compensation amount.

Furthermore, Ms. Diane Bates should have discussed with me all the points
deducted and the basis for the deductions, which she did not.
As a matter of fact when I asked her what CABG meant her only response was
that this is what they referred to as "Cabbage", she laughed and dismissed the question.

The next concern is that the Injury level seems to have been miscalculated as Level 5.

Exhibit 3.2.1. of the Settlement Agreement states that if a Qualifying Claimant meets the
criteria for more than one Injury Level, the most serious Injury Level controls.

The Ejection Fraction of 20 to 25% on the date of the event should have qualified for
Level 3 injury.

There also exists an EF reading within 3 years prior to the Eligible Event which was
52% on 6/21/2001. The post-Eligible Event EF reduction was greater than 5%,
thus the Claimant is not moved to the next lower Injury Level.

Because it appears that these errors were committed solely by Browngreer, and
that the actions taken deviate from the terms of the Settlement Agreement,
I do expect that provisions will be made for correction.

It is my sincere hope that I will not have to seek help outside of Browngreer
to resolve this matter.

Sincerely,

Vivian Ross