# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
In re: EPHEDRA PRODUCTS LIABILITY       :    04 M.D. 1598 (JSR)
LITIGATION                              :
                                        :
----------------------------------------X
PERTAINS TO ALL CASES


<u>STATUS ORDER (INCLUDING CASE MANAGEMENT ORDER NO.7)</u>


JED S. RAKOFF, U.S.D.J.

     At the monthly status conference held on November 10, 2004,

the Court made the following rulings, which are hereby confirmed

(and in some instances elaborated or modified), as follows:

     1. As previously ordered, the next monthly status conference

will be held on <u>December 9, 2004.</u>  Because, however, the Court

will be conducting a jury trial on that date, the starting time

of the conference will, regretfully, be <u>4:30 p.m.</u>, rather than

2:30 p.m.  If necessary, the conference will continue into the

evening until all items on the agenda are concluded.

     2. The motion of Plaintiffs' Coordinating Counsel (PCC) for

an order assessing 6% of each plaintiff's recovery to accumulate

funds out of which the Court may later award fees and expenses

incurred for plaintiffs' common benefit is granted on the

following terms and conditions:

          (a)  The Clerk of the Court shall establish an

     Ephedra Plaintiffs' Common Attorney Fee Fund (the "Fee

1

11-30-04

Fund") and an Ephedra Plaintiffs' Common Expense Fund
(the "Expense Fund").  The Court shall receive payments
into the Funds from time to time by check payable to the
order of "Clerk, USDC" and sent to Clerk, U.S. District
Court for the Southern District of New York, Room 120,
U.S. Courthouse, 500 Pearl Street, New York, NY 10007,
Attn.: Financial Administrator.  Five-sixths of the
funds received with respect to each individual case
shall be paid into the Fee Fund and one-sixth into the
Expense Fund.  The Funds shall be maintained in
interest-bearing accounts according to the Court's usual
practice when it is custodian of funds pursuant to
orders in pending cases, and the Clerk shall deduct from
the Funds a serving fee equal to ten per cent (10%) of
the interest earned, but not exceeding the fee
authorized by the Judicial Conference of the United
States and set by the Director of the Administrative
Office.

    (b)  The Court will shortly retain a qualified
certified public accountant (the "CPA") to keep detailed
records of all deposits and withdrawals and to prepare
tax returns and other tax filings.  An order to be
issued thereupon shall specify hourly rates for the CPA
and for the CPA's clerks, who shall be utilized where

2

appropriate.  The CPA shall submit periodic detailed bills to the Court with copies by e-mail to the Special Master.  Upon court approval, the bills will be paid out of the Expense Fund.

(c)  With respect to settlements and judgments that become binding after the date of this order upon defendants involved with the manufacture, distribution, or sale of ephedra-containing products ("Ephedra Defendants"), the Ephedra Defendants shall pay into the Court an assessment of 6% of the gross value.  Such payment shall operate as *pro tanto* satisfaction of the settlement or judgment.  Gross value includes the present value of any fixed and certain payments to be made in the future.  Ephedra Defendants shall pay the assessment to the Court at the same time as they make the first payment on the settlement or judgment, except that payments into the Court that would thereby be made in 2004 shall be made instead on January 3, 2005.  Payments shall be accompanied by a statement prepared by the payer ("Payer Statement") setting forth (1) the name and docket number of the individual case and the court in which it is pending, (2) the name, full contact information and signature of the payer(s), payer's attorney, and payer's agent in charge of satisfying the

3

settlement or judgment, (3) the name and address of the
settling or judgment plaintiffs and full contact
information for their counsel of record, (4) the tax
identification number of plaintiffs' counsel of record,
and (5) the amounts of the gross settlement or judgment
and of the payment to the Court, together with any
calculation or breakdown used by the payer to determine
those amounts.  If the terms of settlement are
confidential pursuant to written agreement, the Payer
Statement shall be marked "CONFIDENTIAL by agreement
dated [date]."  The payer shall send a copy of the Payer
Statement to the CPA and plaintiffs' counsel of record,
shall e-mail a copy to the Special Master, and shall
mail a copy to the plaintiff(s) together with a copy of
this paragraph and any other portions of this order or
of other orders of this Court governing assessments on
plaintiffs' recovery.  The Special Master may provide
defendants' liaison counsel with a standard form to be
used in preparing the Payer Statement.  The Ephedra
Defendants shall make no payment in satisfaction of a
settlement or judgment until they have notice that this
Court (or, after remand, the trial court) has found
plaintiffs' attorney's fees to be reasonable.  For
settlements in MDL cases prior to remand and in Twinlabs

4

cases, such notice shall be given by the Special Master as set forth below.

(d)   After a settlement or judgment, counsel of record for plaintiffs shall prepare a Confidential Breakdown of the amount to be paid to the plaintiff and the amount to be paid in fees, expenses and disbursements to all attorneys who worked on behalf of the individual plaintiff(s).  Counsel shall e-mail the Confidential Breakdown to the Special master and send a copy to the client.  For MDL cases prior to remand and Twinlabs cases, after the Court reviews the Confidential Breakdown the Special Master shall inform the settling parties' counsel by e-mail that the Court has found plaintiff's attorney's fees to be reasonable or that plaintiff's counsel shall make further submissions in preparation for a hearing on reasonableness.  In the usual case, a contingency fee will be approved without a hearing if the aggregate fees of all attorneys do not exceed 1/3 of the net recovery after deduction of law office expenses and payments to non-attorney third parties.  *Cf.*, 22 NYCRR § 603.7.  Plaintiff's counsel shall base any contingency fee on the net amount after deducting the 1% paid into the Expense Fund.  The 5% paid into the Fee Fund shall not reduce the client's

5

recovery and shall satisfy *pro tanto* any obligation of the client for the fees of individual counsel.

(e)  The Clerk, CPA, and Special Master shall preserve Payer Statements received by them until otherwise ordered and shall not disclose their contents except as necessary to administer the Funds.  The Special Master may from time to time disclose the total amount held in the Funds.

(f)  When the PCC has concluded its work, it shall submit to the Court, with a copy by e-mail to the Special Master, a request for fees payable out of the Fee Fund to members of the PCC and other counsel who performed work assigned by the PCC.  The Court reserves decision on the method it will use for awarding fees and for distributing rebates of any excess in the Fee Fund to plaintiff's individual counsel.  Attorneys performing work for the PCC shall maintain detailed time records to support any fee applications.  The Court approves in principle the proposal of the plaintiffs in *Dicus v. Twinlabs* to set a maximum contribution from any one case but reserves decision on the amount of such cap until the excess subject to rebate, if any, is known.

(g)  The PCC may from time to time submit *ex parte* requests for reimbursement from the Expense Fund with a

copy by e-mail to the Special Master.  Such requests
shall be deemed confidential unless otherwise ordered.
In approving reimbursement, the Court will consider the
reasonableness of such expenses, the balance accumulated
in the Expense Fund, and the prospect of later requests
for reimbursement.  After ruling on the PCC's final
request for reimbursement, the Court will order rebate
of any excess in Expense Fund for the benefit of
plaintiffs and their individual counsel.  Rebates from
the Expense Fund may be calculated using a cap on
contribution from any one case to be determined after
the excess, if any, is known.

(h)  The PCC is authorized to enter into work product
sharing agreements with counsel in state court ephedra
cases that provide for a percentage of state court
recoveries to be paid into the Funds.  Such agreements
may provide for state court plaintiffs or their
attorneys to participate in any distribution of excess
accumulated in Funds if, and only if, the payments from
state court payers have been accompanied by a Payer
Statement distributed as set forth above.  Payments
received shall be divided between the Fee Fund and
Expense Fund in the same proportion as set forth above.

(i)  The PCC shall serve signed copies of this order

7

upon the Clerk and the Financial Deputy of the Court.

3. TL's motion for summary judgment dismissing *Tiffany Smith v. Twinlabs*, No. 03 Civ. 9282, is denied without prejudice to TL's reasserting the statute of limitations defense at trial. The parties agree that the action would be time-barred under applicable California law unless plaintiff shows that she is entitled to benefit from "deferred accrual" under California cases, which hold that an action in products liability accrues when the plaintiff "at least suspects" that her injury was caused by wrongdoing of some kind. Here, when plaintiff was being treated for primary pulmonary hypertension (PPH), she asked her PPH specialist whether PPH could be caused by TL's product, and the doctor replied that there was no known link. Plaintiff then went to an experienced products liability lawyer, who declined the case, saying there was no known link between ephedra and PPH. TL argues that plaintiff "at least suspected," as of the time she consulted the doctor and lawyer, that her PPH was caused by TL's product, and that her action is therefore untimely. Notwithstanding some dicta to this effect in certain California opinions, however, the Court is of the view that defendant misinterprets the thrust of those cases and that, in fact, the California Supreme Court would deny summary judgment if presented with the instant dispute. To hold otherwise would tend to force plaintiffs to sue even when a reasonable investigation tells them

8

they have no grounds -- a perverse result that California courts
would surely have avoided if presented with these facts.

4. TL's motion to dismiss with prejudice *Hawkinson v. Twin
Laboratories Inc.*, No. 04 Civ. 0539 -- because of plaintiff's
failure to serve a Fact Sheet as required by Case Management
Order No. 1 -- is granted as unopposed.

5. TL's motion to dismiss with prejudice *Ashment V.
Twinlab Corp.* et al., No. 04 Civ. 0538, is adjourned to the
December conference upon joint application of the parties.

6. TL's motion to transfer the following cases to this
Court for trial as provided in 28 U.S.C. § 157(b)(5) is granted
as unopposed: (a) *Felts v. Twinlab Corporation, et al.,* United
States District Court, Eastern District of Michigan, Case No. 02-
CV-72977; (b) *Lackowski v. Twinlab Corporation, et al.,* United
States District Court, Eastern District of Michigan, Case No. 00-
75058; (c) *Nagel v. Twinlab Corporation., et al.,* Superior Court
of California, Orange County, Case No. 01CC06932; (d) *Roland v.
Wal-Mart Corporation, et al.,* Circuit Court of Benton County,
Arkansas, Case No. CV2004-1271-4; and (e) *McMorris v. Twinlab,
Inc., et al.,* United States District Court, Middle District of
Louisiana, Case No. 01-418.

7. TL's motion to transfer *Barr v. Twinlab Corp.* et al.,
Superior Court of California, Orange County, Case No. 02CC00244,
on the authority of 28 U.S.C. § 1334(b) is denied without

9

prejudice to possible transfer on other statutory authority.   The
Court hereby withdraws the reference to Bankruptcy Court of the
*Barr* plaintiffs' pending motion to lift the automatic stay.   That
motion shall be heard at the December conference.   All interested
parties are directed to deliver courtesy copies of any papers
they wish considered in support or opposition to lifting the
stay, including any new papers addressing the issues raised at
the November conference, on or before December 2, 2004, with
copies by e-mail to the Special Master.   TL's motion to withdraw
the reference with respect to the entire *Barr* claim is adjourned
to the December conference.

  8. Plaintiff's motion for reconsideration of the order
entered in Case Management Order No. 5 ¶ 6, which granted TL
leave to file a third-party complaint in *Harvey Levine v. Twin
Laboratories Inc.*, No. 03 Civ. 9268, is denied.

  9. Upon the PCC's representation that only three or four
cases will require expert testimony on PPH, the PCC's motion to
withdraw its designation of generic PPH experts is granted.   All
plaintiffs who intend to offer expert testimony that ephedra can
cause PPH shall make joint expert disclosure about such testimony
on or before April 8, 2005.   Depositions of plaintiffs' PPH
experts shall be completed by June 8, 2005.   Defendants may
designate rebuttal PPH experts on or before June 8, in which case
plaintiffs may take their depositions on or before August 8.   If

10

plaintiffs' PPH experts are challenged on *Daubert* grounds, the plaintiffs shall file joint papers in response and provide a joint defense at the hearing.  *Daubert* motions with respect to all PPH experts (including those already designated by the PCC and DCC) may be filed on or before August 22, 2005.

10. Upon the DCC's request to take videotaped depositions of their own experts for possible use after remand of the MDL cases in lieu of trial testimony, the Court ruled that such trial depositions may be noticed only with prior court approval. Requests for approval may be made by e-mail to the Special Master after consultation with adverse coordinating counsel as to timing and arrangements.  Such depositions should normally be taken, if at all, after the completion of discovery.  Under these principles, the DCC's notice to take the deposition of Arne Astrup, M.D. on November 16 was quashed.  For cases tried in this Court, live testimony of experts is required.

11. No party shall notice depositions without prior consultation of the primary interested parties as to date and location.  Counsel shall take reasonable steps to accommodate the schedule of colleagues and witnesses.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       November 29, 2004

11