# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO | |
| DONNA HALAC, et al. | |
| v | |
| AMERICAN HOME PRODUCTS CORPORATION, et al. | C A NO. 00-20112 |

PRETRIAL ORDER NO. 1492

AND NOW, TO WIT, this 8th day of November, 2000, presently before the court is plaintiffs Donna Halac, et al.'s ("Plaintiffs") Motion Seeking a Determination of the Application of the Plaintiffs' Management Committee's ("PMC") Common Fund Fee on a Particular Action, the PMC's Response thereto, Plaintiffs' Reply to the PMC's Response; the PMC's Supplemental Brief, Plaintiffs' Reply to the PMC's Supplemental Brief and the PMC's Supplemental Memorandum in Response to Plaintiffs' motion. For the reasons set forth below, the motion is DENIED.

This action, involving claims for injuries from the ingestion of diet drugs, is one of hundreds of similar lawsuits transferred to this court by the Judicial Panel for Multidistrict Litigation under 28 U.S.C. § 1407 for coordinated discovery and consolidated pretrial proceedings. On April 19, 2000, three months after this case was transferred, Plaintiffs settled with defendant American Home Products Corporation ("AHP"). Plaintiffs

seek an order declaring them exempt from the 9% assessment for common benefit fees imposed in Pretrial Orders Nos. 467 & 517.[1]

The PMC is the steering committee appointed by the court to oversee the conduct of consolidated/coordinated pretrial proceedings on behalf of plaintiffs who allege that they have suffered, <u>inter alia</u>, heart valvulopathy from the ingestion of the diet drugs at issue in this case. (Pretrial Order No. 6.) Since its creation on February 5, 1998, the PMC has set up and administered a document depository, organized and analyzed over 5,000,000 documents of potential relevance to this litigation, deposed both fact and expert witnesses, administered notification to individual plaintiffs' counsel of hearings held and orders issued by the court, and represented the plaintiffs at hearings and status conferences in the district court and the court of appeals. It has attended dozens of Special Master's meetings and negotiation sessions. The PMC was the primary force that negotiated the $4.8 billion Nationwide Class Action Settlement, recently approved by the court, between the PMC and certain other plaintiffs' counsel and defendant AHP.

In Pretrial Orders Nos. 467 and 517, the court provided for sequestration of 9% of any plaintiff's attorney's fee in this MDL 1203 to be set aside into a fund for the ultimate payment of fees to the PMC for common benefit attorneys ("CBAs"). A CBA is an

---

[1] Pretrial Order No. 467 limited the assessment to those cases transferred from California. Pretrial Order No. 517 extended this assessment to all cases within MDL 1203.

2

attorney authorized by the court to perform work in furtherance of the PMC's goals, i.e. work that confers a common benefit upon the plaintiffs in this MDL. Because it is deducted from an attorney's fee, the 9% assessment does not affect the amount ultimately recovered by any plaintiff.

Plaintiffs claim that the settlement reached with AHP in their case is solely due to the work of their own attorneys and not the result of any of the PMC's efforts. Plaintiffs assert that because they have not used, received or in any way traded upon MDL work product, the court should not require them to pay the 9% assessment and that to require Plaintiffs to do so would confer unjust enrichment upon the PMC. Furthermore, Plaintiffs contend that they filed a motion to remand in which they disputed this court's jurisdiction under 28 U.S.C. § 1332, and that the motion was not ruled on.[2] Thus, Plaintiffs argue that it would be unjust to impose the 9% assessment because Plaintiffs were in federal court improperly and against their will.

The court's power to designate lead counsel to work on behalf of a class or group of plaintiffs in consolidated cases and class actions is well established. See, e.g., In re Air Crash Disaster at Florida Everglades, 549 F.2d 1006, 1014-1015

---

[2] Plaintiffs' motion to remand is not reflected on this court's docket or on the certified copy of the docket sent to this court from the United States District Court for the District of Nebraska. For purposes of the instant motion, the court will assume that it has jurisdiction. If Plaintiffs still wish to contest jurisdiction, they can file a motion for reconsideration, attaching a copy of the asserted previously filed motion to remand for the court's consideration.

(5th Cir. 1977) (discussing designation of lead counsel for all plaintiffs in consolidated case), Manual for Complex Litigation, Third (1995) § 20.221 at 27 (discussing appointment of lead counsel in consolidated proceedings). Plaintiffs in the instant case do not dispute the existence or exercise of that power by the court.

The district court possesses inherent equitable power to "allow counsel fees and litigation expenses out of the proceeds of a fund that has been created, increased or protected by successful litigation." In re Air Crash Disaster, 549 F.2d at 1017. It is out of this common fund rationale that the Common Benefit Doctrine originates, under which an attorney whose efforts confer a common benefit on a class of litigants beyond himself or his own clients is awarded reasonable compensation for those efforts. Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2000) (citing Boeing v. Van Gemert, 444 U.S. 472, 478 (1980)); see Savoie v. Merchants Bank, 84 F.3d 52, 56 n.3 (2d Cir. 1996) (noting that common benefit doctrine allows recovery of costs even where no "fund" is recovered, so long as costs are spread proportionately among class members); Rosenbaum v. McCallister, 64 F.3d 1439, 1444 (10th Cir. 1995) (discussing origins of doctrine). The doctrine reflects the rationale that those who obtain the benefits of a lawsuit without contributing to its costs are unjustly enriched. Boeing, 444 U.S. at 478. Federal Rule of Civil Procedure 23 recognizes the applicability of the common benefit doctrine to class actions, and provides a quasi-

4

substantive predicate for fee allowances. *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296, 1304 (E.D.N.Y. 1985), *modified on other grounds*, 818 F.2d 226 (2d Cir. 1987). The court's authority to deduct a reasonable fraction of a plaintiff's recovery is not limited to class members, but extends also to putative class members who have opted out of the class. *See In re Agent Orange*, 611 F. Supp. at 1317 (assessing common benefit fees on class members who had opted out).

Plaintiffs' argument that the 9% common benefit assessment should not apply to their case is unavailing. First of all, some of Plaintiffs' individually retained attorneys' discovery efforts were duplicative, and thus frustrated the goal of efficiently conducting discovery through a plaintiffs' committee for the benefit of all plaintiffs in an MDL. Secondly, even if Plaintiffs' attorneys did not choose to use common benefit work product in the prosecution of Plaintiffs' case and its ultimate settlement, Plaintiffs' clearly benefitted from the efforts of the PMC.

Indeed, AHP most assuredly has been deeply involved with the PMC from the outset. To assume that AHP's legal position on most questions, including questions regarding settlement, has not been influenced by their adversarial engagement with the PMC is unrealistic. For example, the PMC's voluminous discovery depository was available for Plaintiffs to make use of in their case if they so wished. These materials are in the possession of numerous plaintiffs' attorneys throughout the country. The court

5

can legitimately assume that the availability of these materials and the efforts of the PMC in developing a case for liability against AHP substantially influenced AHP's evaluation of every plaintiffs' case and its decision to settle. The court does not have the time or capacity to make individualized factual determinations as to whether an individual plaintiff actually used any common benefit material or whether the availability of that material actually influenced AHP's decision to settle a case. To engage in such a process would frustrate the goals of consolidated proceedings - the achievement of efficiency and economy. See Manual for Complex Litigation § 24.21 at 194 (stating that "[f]ee applications should not be permitted to result in substantial additional litigation").

Lastly, the court notes that the PMC and other CBAs are not necessarily entitled to all of the 9% assessment from Plaintiffs' attorneys' fee. Rather, the PMC and other CBAs must apply for fees at the end of this litigation. If the court determines that the application for fees does not establish an entitlement to the 9% assessment under the court's audit and standards, then any remaining balance will be returned to the "hometown attorney" who honored the assessment. See Tr. 1/14/00 at 7-8 (noting that ultimate entitlement to fees from the 9% set-aside has yet to be determined). Thus, Plaintiffs' motion is also premature as the court has not made an ultimate fee determination. See Aserinsky v. A.H. Robins, Inc., et al., No. 99-2020 (3d Cir. July 26, 2000) (dismissing appeal from denial of similar motion for lack of

6

jurisdiction), <u>In re Diet Drugs Product Liab. Litig.</u>, No. 99-1326 (3d Cir. June 17, 1999) (same); Pretrial Orders Nos. 1012, 1105 & 1473 (denying motions similar to Plaintiffs')

SO ORDERED

_____
LOUIS C. BECHTLE, J.