IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

-------------------------------------------------------x

AvMed Inc, et al.
          Plaintiffs,

      vs.

BrownGreer PLC, U.S.
Bancorp, Inc. and John Does
         Defendants.

       :    CIVIL ACTION
       :    NO. 08-1633
       :
       :
       :    SECTION L, MAG. 3
       :
       :
       :    HONORABLE ELDON E. FALLON
       :    HONORABLE DANIEL E. KNOWLES, III
       :
       :    In relation to: MDL No. 1657
       :
       :
       :    In re: Vioxx Products Liability Litigation
       :

-------------------------------------------------------x

**NAMED LAW FIRMS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
RESPONSE IN OPPOSITION TO PLAINTIFFS' CORRECTED MOTION: (A) TO
IDENTIFY THE LAW FIRMS REPRESENTING CERTAIN ELIGIBLE PLAINTIFFS
IN PLACE OF THE "JOHN DOE" DEFENDANTS; (B) TO ADD FEDERAL
EMPLOYEE HEALTH BENEFITS ACT ("FEHBA") AND MEDICARE ADVANTAGE
REIMBURSEMENT CLAIMS; (C) TO SEAL THAT PORTION OF THE CORRECTED
DECLARATION OF MARK D. FISCHER, ESQ. THAT CONTAINS PROTECTED
HEALTH INFORMATION UNDER THE HEALTH INSURANCE PORTABILITY AND
ACCOUNTABILITY ACT OF 1996 ("HIPAA"); AND (D) FOR A PRELIMINARY
INJUNCTION IMPOSING A CONSTRUCTIVE TRUST AND PROHIBITING
<u>DISTRIBUTION OF IDENTIFIED SETTLEMENT FUNDS</u>**

Sol H. Weiss, Esquire
Gregory S. Spizer, Esquire
ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.
1710 Spruce Street
Philadelphia, PA 19103
Telephone: (215)735-1130
Facsimile: (215) 875-7722

Turner W. Branch, Esquire
Brent M. Ferrel, Esquire
BRANCH LAW FIRM
2025 Rio Grande Boulevard, NW
Albuquerque, NM 87104
Telephone: (800) 243-3500
Facsimile: (713) 224-1622

Harry M. Roth, Esquire
Christopher Placitella, Esquire
COHEN, PLACITELLA & ROTH, P.C.
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 567-3500
Facsimile: (215) 567-6019

Robert T. Dassow, Esquire
HOVDE, DASSOW & DEETS, LLC
One Meridian Plaza
10585 North Meridian Street, Suite 205
Indianapolis, IN 46290
Telephone: (317) 818-3100
Facsimile: (317) 818-3111

Christopher P. Johnson, Esquire
KASOWITZ, BENSON, TORRES
& FRIEDMAN, LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

W. Mark Lanier, Esquire
Richard D. Meadow, Esquire
THE LANIER LAW FIRM
126 East 56th Street, Tower 56, 6th Floor
New York, NY 10022
Telephone: (212) 421-2800
Facsimile: (212) 421-2878

David S. Ratner, Esquire
MORELLI RATNER, PC
95 Third Avenue
New York, NY 10022
Telephone: (212) 751-9800
Facsimile: (212) 751-0046

Lee Balefsky, Esquire
Michelle L. Tiger, Esquire
KLINE & SPECTER
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-0420
Facsimile: (215) 735-0960

James J. Pettit, Esquire
LOCKS LAW FIRM, LLC
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08002
Telephone: (856) 663-8200
Facsimile: (856) 661-8400

Edward Seglias, Esquire
Edward T. DeLisle, Esquire
COHEN SEGLIAS PALLAS
GREENHALL & FURMAN, PC
United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA  19103
Telephone (215) 564-1700
Facsimile: (267) 238-4418

Glenn Zuckermann, Esquire
WEITZ & LUXENBERG, P.C.
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Telephone: (856) 755-1115
Facsimile: (856) 755-1995

## **TABLE OF CONTENTS**

I. FACTUAL BACKGROUND – VIOXX LITIGATION ........................................................ 1

II. PROCEDURAL HISTORY – PRESENT MOTIONS ............................................................ 3

III. ARGUMENT ........................................................................................................................ 6

    A. Legal Standard ........................................................................................................ 6

    B. Procedural Failures ................................................................................................. 7

    C. Substantive Failures ................................................................................................ 8

        1. Plaintiffs' Motion to Amend Should Be Denied Due To Plaintiffs' Undue Delay 8

        2. Plaintiffs' Motion to Amend Should Be Denied Due To the Undue Prejudice the Named Law Firms Shall Suffer by Virtue of the Motions' Allowance ................. 9

        3. Plaintiffs' Motion to Amend Should Be Denied Due to the Futility of the Proposed Amendment ........................................................................................... 13

            a) Plaintiffs' claims are futile as the authorities upon which they rely do not confer an affirmative duty on law firms to satisfy unperfected liens .................. 14

            b) The case law relied upon by Plaintiffs is inapplicable ................................... 20

    D. The Public Interest Is Best Served By Denial Of Plaintiffs' Motion ......................... 21

    E. Plaintiffs' Motion For A Preliminary Injunction Imposing A Constructive Trust And Prohibiting Distribution Of Identified Settlement Funds Should Be Denied ............. 22

IV. CONCLUSION ..................................................................................................................... 23

## TABLE OF AUTHORITIES

### CASES

*Addington v Farmer's Elevator Mut. Ins. Co.,*
650 F.2d 663 (5th Cir. 1981) ................................................................ 6

*AvMed, Inc. v. BrownGreer, PLC,*
2008 U.S. App. LEXIS 23747 (5th Cir. Nov. 17, 2008) ........................... 4

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (U.S. 2007) .................................................................. 13

*Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough,*
354 F.3d 348 (5th Cir. 2003) .......................................................... 16, 17

*Care Choices HMO v. Engstrom,*
330 F.3d 786 (6th Cir. 2003) .............................................................. 15

*Coventry v. United States Steel Corp.,*
856 F.2d 514 (3d Cir. 1988) ................................................................. 9

*Empire Healthchoice Assurance, Inc. v. McVeigh,*
547 U.S. 677 (2006) ......................................................................... 19

*FMC Corp. v. Holliday,*
498 U.S. 52 (1990) ........................................................................... 16

*Glassman v. Computervision Corp.,*
90 F.3d 617 (1st Cir. 1996) ............................................................... 13

*Gregory v. Mitchell,*
634 F.2d 199 (5th Cir. 1981) ............................................................... 6

*Home Depot v. Nat'l Fire Ins. Co.,*
2007 U.S. Dist. LEXIS 66696 (N.D. Tex. Sept. 10, 2007) ...................... 10

*Hotel Employees & Restaurant Employees Internat'l. Union Welfare Fund v. Gentner,*
50 F.3d 719 (9th Cir.1994) ................................................................ 11

*Hyde v. Hoffman-La Roche Inc.,*
2008 U.S. Dist. LEXIS 57683 (N.D. Tex. July 30, 2008) ......................... 9

*In re Burlington Coat Factory Sec. Litig.,*
114 F.3d 1410 (3d Cir. N.J. 1997) ...................................................... 13

*In re Vioxx Prod. Liab. Litig., MDL No. 1657,*
2008 WL4681368 (E.D. La. Oct. 21, 2008) ............................................ 3

*In re Vioxx Prods. Liab. Litig.,*
2008 U.S. Dist. LEXIS 60269 (E.D. La. Aug. 7, 2008) ................... passim

*In re Vioxx Prods. Liab. Litig.,*
360 F. Supp. 2d 1352 (J.P.M.L. 2005) ................................................... 2

*In re Vioxx Prods. Liab. Litig., MDL 1657 (E.D. La. Nov. 9, 2007) ........... 2

*Longaberger Co. v. Kolt,*
  586 F.3d 459 (6th Cir. 2009) ................................................................. 20

*Lowrey v. Texas A & M Univ. System,*
  117 F.3d 242 (5th Cir. 1997) ................................................................. 9, 13

*Massarsky v. General Motors Corp.,*
  706 F.2d 111 (3d Cir. 1983) ................................................................. 13

*Nott v. Aetna U.S. Healthcare, Inc.,*
  303 F.Supp.2d 565 (E.D.Pa. 2004) ................................................................. 15

*Pope v. MCI Telecom. Corp.,*
  937 F.2d 258 (5th Cir. 1991) ................................................................. 9

*Popowski v. Parrott,*
  461 F.3d 1367 (11th Cir. 2006) ................................................................. 11

*Sereboff v. Mid-Atlantic Medical Services, Inc.,*
  547 U.S. 356 (2006) ................................................................. 1, 17, 18

*Southern Council of Industrial Workers v. Ford,*
  83 F.3d 966 (8th Cir. 1996) ................................................................. 11

*Southmark Corp. v. Schulte Roth & Zabel,*
  88 F.3d 311 (5th Cir. 1996) ................................................................. 8, 9

*Stripling v. Jordan Prod. Co.,*
  234 F.3d 863 (5th Cir. 2000) ................................................................. 13

*Wimm v. Jack Eckerd Corp.,*
  3 F.3d 137 (5th Cir. 1993) ................................................................. 9

*WRR Industries v. Prologis,*
  2006 U.S. Dist. LEXIS 46210, 2006 WL 1814126 (N.D. Tex. Jun. 30, 2006) ................... 9

*Zenith Radio Corp. v. Hazeltine Research,*
  401 U.S. 321 (U.S.1971) ................................................................. 6

## STATUTES

18 U.S.C. § 1002(32) and (33) ................................................................. 16

18 U.S.C. § 1003 (b) ................................................................. 16

28 U.S.C. § 1407 ................................................................. 2

29 U.S.C. § 1144 ................................................................. 16

42 U.S.C. § 1395mm(e)(4)(A) ................................................................. 15

42 U.S.C. § 1395mm(e)(4)(B) ................................................................. 15

42 U.S.C. § 1395w-22(a)(4)(A) ................................................................. 15

42 U.S.C. § 1395w-22(a)(4)(B) ........................................................................... 15

42 U.S.C. § 1395y(b)(2)(B)(iii) ........................................................................... 15

5 U.S.C. § 8901 *et seq* ......................................................................................... 1

### OTHER AUTHORITIES

Rec. Doc. 15362, Minute Entry, July 17, 2008 ....................................................... 3

The Plan Plaintiffs seek leave to amend their First Amended Complaint to name twelve (12) law firms as defendants.  Plaintiffs allege that the Named Law Firms represent eligible claimants to the Vioxx Settlement Program who encompass the following: "(1) settled claims against Merck for medical expenses paid by Plan Plaintiffs; (2) are members of plans under the Employee Retirement Security Act ("ERISA") that include reimbursement language qualifying those plans for equitable relief under *Sereboff v. Mid-Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006); and have chosen to forego the Private Lien Resolution Program approved by this Court." *See* Plaintiffs' Corrected Memorandum of Law, p. 1-2.  In addition, Plaintiffs also seek leave to add claims for reimbursement as Medicare Advantage Organizations under the Medicare Secondary Payer Act of 1980 ("MSP") and as contracting plans under the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq. Id.* Finally, Plaintiffs move for a preliminary injunction imposing a constructive trust and prohibiting distribution of identified settlement funds.

As demonstrated and fully explained *infra*, Plaintiffs' motion is procedurally and substantively flawed. Accordingly, their motion should fail.

## I.    FACTUAL BACKGROUND – VIOXX LITIGATION

The underlying claims in this matter involve the prescription medication, Vioxx, which was designed, manufactured and distributed by Merck & Co., Inc. ("Merck"). On May 20, 1999 the Food and Drug Administration approved Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain and migraine headaches.

Following reports of adverse cardiovascular events associated with Vioxx, a small number of product liability lawsuits were filed in New Jersey state courts as early as 2002 and 2003.  By Order dated May 20, 2003, the New Jersey Supreme Court centralized management of the New Jersey Vioxx cases before The Honorable Carol E. Higbee, Atlantic County.  Despite

this centralization, the Vioxx litigation remained relatively small (approximately 350 filed cases in New Jersey as of the Summer of 2004).

However, the scope of the litigation changed on September 30, 2004, when Vioxx was withdrawn from the market. Thereafter, thousands of individual lawsuits and multiple class actions were filed in federal courts throughout the country as well as in various state courts. On February 16, 2005, the Judicial Panel on Multidistrict Litigation conferred multidistrict litigation status for those federally filed Vioxx lawsuits. All such actions were transferred to this Honorable Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005).

For the next two and a half years, the Vioxx litigation was exhaustively pursued. Millions of documents were produced, thousands of depositions were taken, hundreds of experts were consulted and countless motions were filed. Numerous trials were also conducted. This Honorable Court held six trials and during the same time period, thirteen cases were tried in various state court jurisdictions. Along the way, the media reported extensively on the litigation as a whole and on the trials in particular. The world, including the Plan Plaintiffs, was no doubt aware of this historic litigation.

The trials helped pave the way for in-depth settlement discussions between Merck and the Negotiating Plaintiffs' Counsel ("NPC"). On November 9, 2007, Merck and the NPC formally announced that they had reached a Settlement Agreement. *See Settlement Agreement, In re Vioxx Prods. Liab. Litig.*, MDL 1657 (E.D. La. Nov. 9, 2007) ("Settlement Agreement"). As part of the Settlement Agreement, a Lien Resolution Administrator ("LRA") was appointed to establish "procedures and protocols... to identify and resolve Governmental Authority Third Party Payor/Provider Statutory Liens." *Id.* § 12.1.8. The Agreement also set forth that the

"satisfaction and discharge of any and all Governmental Authority Third Party Providers/Payors statutory Liens must be established to the satisfaction of the Claims Administrator [Brown Greer, PLC] and Merck before any Settlement Payment can be disbursed." *Id.* § 12.1.3.9.  On July 17, 2008, Merck formally announced that the thresholds necessary to trigger funding of the Vioxx Settlement Program were met.  *See* Rec. Doc. 15362, Minute Entry, July 17, 2008.

Given Merck's approval, interim payments were readied for those eligible claimants who had timely fulfilled all of their filing obligations.  *See* Settlement Agreement, § 4.1. The interim payments were entitled to begin on August 1, 2008 or the date on which the Claims Administrator has determined ...." *Id.*

## II.   PROCEDURAL HISTORY – PRESENT MOTIONS

Before any interim payments were disseminated, the Plan Plaintiffs filed its original Complaint in this matter on April 14, 2008. They then amended their Complaint as of right on April 18, 2008. *See In re Vioxx Prod. Liab. Litig.,* MDL No. 1657, 2008 WL4681368, *3 (E.D. La. Oct. 21, 2008). The First Amended Complaint named Brown Greer, PLC (hereinafter "Brown Greer"), U.S. Bancorp, and certain "John Does" as defendants.

On June 9, 2008, the Plan Plaintiffs filed motions for a temporary restraining order and preliminary injunction. *See In re Vioxx Prods. Liab. Litig., 2008 U.S. Dist. LEXIS 60269 (E.D. La. Aug. 7, 2008).* The Plans sought to compel Brown Greer, the Settlement's appointed Claims Administrator, to disclose the names of those eligible claimants who had participated in the Vioxx settlement. *Id.* Additionally, the Plans requested that no settlement funds be distributed pending Plan Plaintiffs' assertion of their reimbursement/subrogation rights against such claimants. *Id.* Brown Green opposed the filed motions. *Id.*

On June 11, 2008, the Court held a status conference to address the AvMed Plaintiffs' motion.  The Court denied the temporary restraining order, but withheld ruling on the

- 3 -

preliminary injunction request. *Id.* at *13. During a June 27, 2008, regularly scheduled Vioxx status conference the parties agreed to pursue settlement discussions with respect to Plaintiffs' request for a preliminary injunction. As such, the parties subsequently withdrew their motions without prejudice, but reserved their right to refile at a later date. *Id.* After failing to reach an agreement, the parties reinstated their motions on July 14, 2008. *Id.* On July 24, 2008, the Court heard oral argument on AvMed's motion. *Id.* On August 7, 2008, this Court issued an Order and Opinion denying AvMed's motion. *Id.* This Court ruled that the Plan Plaintiffs had failed to satisfy any of the four (4) prongs required for the imposition of a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) irreparable injury; (3) a favorable balance of hardships; and (4) no adverse effect on the public interest. *Id.* The Fifth Circuit affirmed this Court's Order. *See AvMed, Inc. v. BrownGreer, PLC*, 2008 U.S. App. LEXIS 23747 (5th Cir. Nov. 17, 2008).

In order to address the assertions raised in the Plan Plaintiffs' First Amended Complaint, an unprecedented voluntary Private Lien Resolution Program (hereinafter "PLRP") was established. The program was announced at the January 22, 2009 monthly status conference[2]. The Court appointed the Garretson Firm Resolution Group, Inc. ("Garretson") to oversee the program as Lien Resolution Administrator. In a January 30, 2009 e-mail to counsel the optional private lien resolution program was announced. The email contained an informational packet which counsel was to send to their clients announcing the program. The email also contained an enrollment form and HIPAA medical release authorization which claimants needed to complete, sign and return to Garretson by March 20, 2009 if they elected to enroll in the program. On

---

[2]     Plaintiffs' failure to act upon their alleged reimbursement rights is all the more unbelievable when one considers the unparalleled public access to the Vioxx litigation and settlement, including this Honorable Court's monthly status conferences. The status conferences are accessible by both personal attendance and teleconference. In addition, the Court publishes minutes following each conference: http://vioxx.laed.uscourts.gov/.

March 27, 2009, the Court was advised that 17,000 eligible claimants had agreed to participate in the resolution program.

On April 7, 2009 the Plan Plaintiffs announced that they would not exercise its "walk away" rights given the large enrollment in the PLRP.  On April 23, 2009, counsel received an e-mail from BrownGreer announcing an extension for claimants to enroll in the PLRP until May 29, 2009.[3] On June 29, 2009, the Garretson Firm informed the Court that over 20,000 claimants had enrolled in the PLRP.  On September 15, 2009, the Court issued Pre-Trial Order No. 48 which required counsel to send formal written notice of the PLRP to those claimants who had not yet received formal written notice of same.

On October 9, 2009, the Court signed Pre-Trial Order No. 54.  Attached to Pre-Trial Order No. 54 as Exhibit "F" was a list of claimants who allegedly did not enroll in the PLRP.[4] The Order stated: "Primary Counsel for Eligible Claimants identified on Exhibit "F"… are hereby enjoined from making payments of any of the final 15% of settlement proceeds to those Eligible Claimants identified on Exhibit "F" of the Fisher Declaration until such time as Primary Counsel certifies in writing that it has:  (i) complied with Pretrial Order No. 48, and (ii) all represented Eligible Claimants have been afforded a reasonable opportunity to opt into the Private Lien Resolution Program." *See* Pre Trial Order No. 54. As evidenced by the Affidavits and Certifications attached hereto as Exhibit "A", each of the undersigned Law Firm has complied with its Court-Ordered obligations.

---

[3]    Subsequent extensions to enroll in the program were issued by the Court and the Claims Administrator. Enrollment in the program was extended until February 2010. By the final enrollment date more than 25,000 claimants voluntarily enrolled in the PLRP, allowing substantial monies to be paid to the participating plans.

[4]    Exhibit "F" to Pre-Trial Order No. 54 was littered with errors and misidentifications. For example, numerous claimants who enrolled in the PLRP were listed as non-enrollees.

- 5 -

Substantial work was undertaken by the Named Law Firms to satisfy its obligations to both their respective clients and this Honorable Court. In addition, Plaintiffs have not provided constructive notice of their alleged liens. Nevertheless, Plaintiffs filed the instant Motion on June 17, 2010. A corrected motion was subsequently filed on June 22, 2010. Plan Plaintiffs' now seek permission to amend their First Amended Complaint to name the aforementioned twelve law firms as defendants.

For the foregoing reasons, Plaintiffs' motion should fail.

### III.   ARGUMENT

#### A.   Legal Standard

Federal Rule of Civil Procedure (15)(a)(2) allows an amended pleading if there is either written consent of the opposing party or by leave of court. *See* Fed R. of Civ. P. 15(a)(2). The Rule further states that "the Court should freely give leave when justice so requires." *Id.* However, leave to amend "is by no means automatic." *Addington v Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir. 1981).

The Fifth Circuit has held that the decision to grant or deny a motion for leave to amend lies within the sound discretion of the court. *Id.* In exercising its discretion, the court considers factors such as, "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Gregory v.Mitchell,* 634 F.2d 199, 203 (5th Cir. 1981). *See also Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321 (U.S.1971) ("Leave to amend should be denied when doing so is required for fairness to the party opposing the motion for leave to amend").

### B.     Procedural Failures

Plaintiffs' motion fails to provide the necessary information so that the Named Law Firms can adequately and appropriately respond. Attached as Exhibit "A" to Plaintiffs' motion is a purported list of claimants who did not enroll in the PLRP. In the interest of HIPAA compliance, Plaintiffs' filed motion redacted the claimants' names. However, the copies served on the Named Law Firms were also redacted.[5] Given this, the Named Law Firms do not know the identity of the "eligible claimants" which Plaintiffs reference. Obviously, the Named Law Firms cannot be expected to provide a response to Plaintiffs' allegations when the claimants at-issue remain unknown.

Another glaring deficiency with Plaintiffs' motion is its failure to include the relevant plan language upon which its arguments rely.[6] According to Plaintiffs' Exhibit "A", there are thirteen (13) Health Plans which were allegedly harmed by various claimants' failure to resolve their Vioxx-related liens. However, Plaintiffs' motion only attached health plan policy/language for Humana. Of the 350 alleged claimants listed on Plaintiffs' Exhibit "A" Humana is cited as the plan for only seventeen (17) claimants, which is less than five percent (5%).

It seems that Plaintiffs want the Named Law Firms and our respective clients to take their word that the Humana plan language and other necessary self-funded documentation is applicable to the other twelve (12) plans. With due respect to Plaintiffs, the Named Law Firms cannot make that assumption. Nor should Plaintiffs expect that this Honorable Court rely on such an unsubstantiated claim.

---

[5]     Named Law Firms note that we have similarly redacted any reference to clients' identifying information in to protect privacy interests. The copies served on Plaintiffs will also contain redacted Exhibits, as the Exhibits attached to the instant Memorandum of Law were created by Plaintiffs and/or previously forwarded to Plaintiffs in a non-redacted format. As such, Plaintiffs are already aware of the referenced claimants' information.

[6]     It is notable that this deficiency has remained unresolved since this Honorable Court addressed same in its August 2008 Order.

C.      **Substantive Failures**

Plaintiffs want this Court to believe that it took them nearly two (2) years to identify

those claimants who were allegedly provided insurance coverage for Vioxx-related medical care.

This claim is made despite fact that Plan Plaintiffs had sufficient time and information to identify

any and all claimants for which they have alleged reimbursements rights.

1.      **Plaintiffs' Motion to Amend Should Be Denied Due To
        Plaintiffs' Undue Delay**

Plaintiffs had years to perfect any alleged reimbursement rights. The following facts

demonstrate same: (1) any and all Complaints filed relative to the Vioxx litigation were public

records. Each complaint, at a minimum, contained the claimant's name, address and date of

injury, as well as the contact information for claimant's counsel; (2) the Vioxx litigation, as a

collective whole, was pending for nearly six (6) years (three of which were after the highly

publicized withdrawal of Vioxx) prior to settlement. The Plan Plaintiffs had more than adequate

time to properly place claimants and their law firms on notice if they wished to do so; and (3) the

Vioxx Settlement was well publicized in the media immediately after it was announced.[7] Plan

Plaintiffs most certainly could have placed claimants and/or their law firms on notice of their

alleged liens, but yet again, they failed to do so.

This undue delay is sufficient reason for their Motion for Leave to Amend to be denied

as a trial court may properly consider (1) an "unexplained delay" and (2) "whether the facts

underlying the amended complaint were known to the party when the original complaint was

filed..." in exercising its discretion to deny leave to amend a complaint. *Southmark Corp. v.

Schulte Roth & Zabel*, 88 F.3d 311, 316 (5th Cir. 1996) (internal citations omitted); *See also*

---

[7]        Examples of the Settlement Agreement's media publicity can be gleamed from a simple keyword search of
the phrase "Vioxx Settlement". Results of the keyword search via the Google and Bing search engines are
exhaustive, but include: http://www.msnbc.msn.com/id/21701212/;
http://money.cnn.com/2007/11/09/news/companies/merck_vioxx/index.htm;
http://www.cbsnews.com/stories/2008/07/17/business/main4269301.shtml

*Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 140 (5th Cir. 1993) (upholding denial of motion to amend filed nine months after the originally filed complaint because movant "knew from the outset of the litigation about the facts which formed the basis for the motion to amend"); *Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 315-16 (5th Cir. 1996) ("Liberality in pleading does not bestow a litigant the privilege of neglecting her case for a long period of time."); *Pope v. MCI Telecom. Corp.*, 937 F.2d 258, 263 (5th Cir. 1991) (denying motion to amend where the proposed new claim is based on same facts as the previous claims); *WRR Industries v. Prologis*, 2006 U.S. Dist. LEXIS 46210, 2006 WL 1814126, at *14 (N.D. Tex. Jun. 30, 2006) (denying motion to amend where the proposed new claims were known to the Plaintiff since case's inception).

This Circuit has clearly recognized that unwarranted delays and failure to take action is not to be rewarded. In this instance, the Plan Plaintiffs took no steps to perfect their supposed interests. Only now, at this belated juncture, do they attempt to act.[8] The Plan Plaintiffs are too late, and as a result, their motion should fail.

> **2.  Plaintiffs' Motion to Amend Should Be Denied Due To the Undue Prejudice the Named Law Firms Shall Suffer by Virtue of the Motions' Allowance**

It is well established that the potential for undue prejudice to the nonmoving party is, "the touchstone for the denial of leave to amend." *Lowrey v. Texas A & M Univ. System,* 117 F.3d 242, 246 (5th Cir. 1997); *Coventry v. United States Steel Corp.,* 856 F.2d 514, 519 (3d Cir. 1988). Precedential case law recognizes the prejudice to defendants if plaintiffs are seeking leave to amend at a "late date" whereby they "thwart resolution" of a matter.  *Hyde v. Hoffman-La Roche Inc.,* 2008 U.S. Dist. LEXIS 57683 (N.D. Tex. July 30, 2008). *See also Home Depot v.*

---

[8] Named Law Firms note that even this last minute effort is still insufficient notice of any alleged claims.

*Nat'l Fire Ins. Co.*, 2007 U.S. Dist. LEXIS 66696 (N.D. Tex. Sept. 10, 2007) ("The court has frequently found prejudice when a party seeks leave to amend after the opposing party has filed a summary judgment motion").

As previously detailed, the Vioxx litigation has been ongoing for the better part of six (6) years. This Honorable Court has frequently commented on the length of this litigation. *See In re Vioxx Prods. Liab. Litig., 2008 U.S. Dist. LEXIS 60269 (E.D. La. Aug. 7, 2008)*. Only now, after the distribution of all funds related to this settlement and when the parties are so close to a final resolution of this matter, do the Plan Plaintiffs seek to amend their Complaint in order to impede resolution.

This behavior is unduly prejudicial to the Named Law Firms who have complied with every obligation and deadline associated with the Vioxx Settlement. To *now* be forced to defend themselves against this baseless action would be unjust, especially considering the fact that the Plan Plaintiffs could have asserted their alleged rights on multiple occasions instead of sitting dormant for nearly six (6) years.

In an attempt to combat this prejudice, Plaintiffs argue that the Named Law Firms were aware of this litigation through their previous filing against "John Doe" defendants. As evidenced by the Plaintiffs' decision to cherry pick the eligible claimants and law firms they now wish to pursue, the Named Law Firms had no inclination that they were the "likely defendants in this action". *See* Plaintiffs' Corrected Memorandum of Law, p. 11. Moreover, Plaintiffs' prior complaints and motions were not served on the Named Law Firms.

Further still, Plaintiffs allege that they provided notice of their claimed liens and intention to file suit in correspondence forwarded to counsel. *Id.* This argument is groundless as the Named Law Firms note that this alleged "notice" was not provided until May 2010, long after

- 10 -

the majority of the settlement process had been completed. Moreover, Plaintiffs neglect to inform the Court that many of the Named Law Firms responded to Plaintiffs by conveying the following message: their correspondence did not constitute notice and was thoroughly erred. *See* various responding correspondence from Named Law Firms attached hereto as Exhibit "B".

Moreover, it is fundamentally improper to name law firms representing personal injury claimants as defendants to the Plaintiff health plans' purported reimbursement claims where there is no contractual relationship between the law firms and the health plans. Law firms who are strangers to the health plan contract, who are not signatories to any subrogation agreement and who have not otherwise guaranteed any interest of a health plan simply cannot be held to any substantive liability on a health plan's claim. *See Hotel Employees & Restaurant Employees Internat'l. Union Welfare Fund v. Gentner*, 50 F.3d 719 (9th Cir.1994); *Southern Council of Industrial Workers v. Ford*, 83 F.3d 966 (8th Cir. 1996). With respect to such reimbursement claims, liability -- if any at all – would rest solely with the plan participant and only according to the specific terms of the particular health plan contract sought to be enforced. To the extent that a "constructive trust" might be imposed over certain identifiable client funds in an attorney's possession, at a minimum such relief necessarily depends on the existence of an actual claim against a specific individual according to the express terms of his or her particular health plan contract. [9]

Here, however, despite years of opportunity to investigate the bases for their claims, the Plaintiffs have not even attempted to bring actions against their individual members, nor have

---

[9]     Furthermore, it is the specific language employed by the relevant provisions of a particular health plan that determines the nature of any rights created by the plan contract and whether such plan-based claims are even cognizable under federal law. *See, e.g., Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006) (comparing and contrasting language of two health plans to determine that only one supported an equitable claim under ERISA).

they identified what specific contractual obligations are actually applicable to each such plan member under the terms of his or her particular plan, nor have they identified any particular client funds in the possession of any individual over which to impose a constructive trust. Allowing the Plan Plaintiffs to now assert such inchoate claims against their members' attorneys with respect to funds that may not even exist cannot help but be unduly prejudicial.

As a practical matter, the Named Law Firms note that virtually all of the alleged claimants are no longer clients of the respective Law Firms.  As the Named Law Firms immediately distributed their respective clients' monies following the October 6, 2009 myocardial infarction (MI) final payment distribution and the June 14, 2010 ischemic stroke (IS) final payment distribution, the cases are now closed.

All parties involved in the Vioxx litigation, as well as this Honorable Court, have been preparing and readying for its resolution for many years.  The Plan Plaintiffs have unduly prejudiced the Named Law Firms by, in essence, failing to take action in this lengthy period. Additionally, the Plaintiffs have failed to do any of the following: (1) provide notice of any specifically alleged reimbursement rights prior to the distribution of settlement funds; (2) identify claimants for which they have an alleged specific lien amount; and (3) to identify the plans they seek to enforce. After this prolonged period of inaction, during which both the distribution of final payments in the MI cases[10] and IS cases[11] occurred, Plaintiffs bring forth a motion which only now attempts to assert their alleged rights. Such action has denied the Named

---

[10]     The final payment for the myocardial infarction (MI) cases was issued by the Claims Administrator on October 6, 2009.  The Named Law Firms released individual payments to their respective MI claimants immediately thereafter.

[11]     The final payment for the ischemic stroke (IS) cases was issued by the Claims Administrator on June 14, 2010. The Named Law Firms began to release individual payments to their respective IS claimants immediately thereafter.

Law Firms proper and timely notice of the nature of the complaint against them.[12] As noted by the Fifth Circuit, "[t]he touchstone of the inquiry under Rule 15(a) is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint." *Lowrey,* 117 F.3d at 246.

### 3.   Plaintiffs' Motion to Amend Should Be Denied Due to the Futility of the Proposed Amendment

For leave to amend to be granted by a Court, the proposed amendment must not be futile. *Id.* Plaintiffs do not clear this hurdle. Their motion suffers from significant deficiencies, many of which are the same or substantially similar to the deficiencies contained in Plaintiffs' June 2008 Motion for Preliminary Injunction. *See In re Vioxx Prods. Liab. Litig., 2008 U.S. Dist. LEXIS 60269 (E.D. La. Aug. 7, 2008).* While courts in the Fifth Circuit have not specifically defined "futility", they have generally adopted the definition used by "sister circuits". These circuits interpret futility, "to mean that the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 873 (5th Cir. 2000). Federal Courts of Appeals have further defined an amendment as futile if it advances a claim or defense that is legally insufficient on its face. *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir. 1983).

As such, "[i]n assessing futility, the district court applies the same standard of legal sufficiency as it applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. N.J. 1997) (citing *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996)). *See also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (U.S. 2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

---

[12]   The Named Law Firms are further denied notice of the nature of Plaintiffs' complaints due to the procedural and substantive deficiencies described in Subsection (C), *infra.*

labels and conclusions…[the] factual allegations [made] must be enough to raise a right to relief above the speculative level….").

   a)   Plaintiffs' claims are futile as the authorities upon which they rely do not confer an affirmative duty on law firms to satisfy unperfected liens

The Vioxx Settlement Agreement called for the appointment of a Lien Resolution Administrator ("LRA") in order to establish "procedures and protocols… to identify and resolve Governmental Authority Third Party Payor/Provider Statutory Liens." *See Settlement Agreement*, §12.1.8. The Agreement further required that all statutory liens be satisfied and discharged prior to the distribution of payments. *Id.* § 12.1.3.9.

In accordance with the requirements of the Settlement Agreement, the Lien Resolution Administrator properly communicated and negotiated the statutory liens of thousands of claimants with Medicare, Medicaid or other governmental lienholders. To the extent that Plaintiffs now seek to bring additional claims as contractors providing health insurance under Medicare-substitute plans, their attempt to characterize their alleged reimbursement rights as being "the same" as those of the federal Medicare program is baseless and directly contradicted by federal case law. In fact, the reimbursement rights of Medicare-substitute plans offered by private insurance companies are governed by separate statutes that provide no statutory cause of action and expressly limit whatever contractual reimbursement rights, if any, that an insurer might include in its policy.

Federal courts considering the issue have held that whatever the Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b)(2), may provide in terms of the Medicare program's reimbursement rights, it is applicable to the federal government, not to private Medicare-substitute plans, which are governed by separate statutes: 42 U.S.C. § 1395mm(e)(4) and 42 U.S.C. § 1395w-22(a)(4) (regulating "Medicare Advantage" and "Medicare+ Choice" plans,

- 14 -

respectively, under "Medicare Part C"). *See Care Choices HMO v. Engstrom*, 330 F.3d 786, 789

(6th Cir. 2003) and *Nott v. Aetna U.S. Healthcare, Inc.*, 303 F.Supp.2d 565, 570 (E.D.Pa. 2004).

These courts have specifically held that the relevant statutes create no private right of action at

all for a Medicare Part C insurer, either express or implied. Indeed, as a threshold matter, there

is simply no mechanism for enforcing a claimed reimbursement right if the insurer has not

actually included a reimbursement provision in its contract. *Id.*

Here, the Plan Plaintiffs have not even alleged that their Medicare-substitute contracts in

fact contain any reimbursement provision at all. On this deficiency alone any purported claim to

reimbursement must necessarily fail. Yet even a contractual right to reimbursement, if one

exists, would be so limited by the governing statutes that it could not be enforced in this case.

Specifically, the statutes allow for a reimbursement claim against another insurer -- and not a

beneficiary – only where a "law, plan or policy" requires the other insurer to pay for the covered

service. 42 U.S.C. § 1395mm(e)(4)(A) and 42 U.S.C. § 1395w-22(a)(4)(A). The statutes permit

a claim against a beneficiary only where the individual has actually received payment for the

medical expenses under such "law, plan or policy." 42 U.S.C. § 1395mm(e)(4)(B) and 42

U.S.C. § 1395w-22(a)(4)(B).

Here, again the Plaintiff Plans have identified no "law, plan or policy" under which any

Vioxx claimant has received any compensation in respect of medical expenses covered by a

Medicare-substitute plan. In fact, under the terms of the Settlement Agreement, whatever

recovery may have been obtained by any Vioxx claimant was expressly based on the injury

suffered, not the medical expenses that were incurred. And of course, nothing in the governing

statutes authorizes a Medicare-substitute plan to bring any reimbursement action whatsoever

against a beneficiary's attorney. *Cf.* 42 U.S.C. § 1395y(b)(2)(B)(iii) (authorizing "the United

States [to] recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity") .

In short, Plaintiffs here are private insurance carriers. As this Court has previously stated, "the public interest is not served by placing private healthcare providers such as the Plaintiffs on the same footing as governmental providers such as Medicare/Medicaid." *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, *69 (E.D. La. Aug. 7, 2008). Accordingly, there is no relief afforded to Plaintiffs under the Medicare statutes.

Plan Plaintiffs further allege that they are entitled to reimbursement under ERISA and FEHBA. Again, Plaintiffs fail to show that the affected claimants are subject to these statutes. *See* Plaintiffs' Corrected Memorandum of Law, p. 10.  Significantly, Plaintiffs at the outset fail to distinguish in any manner between the insured health plans they represent – which may be subject to modification by state insurance law, including anti-subrogation rules that prohibit reimbursement claims – and those plans that are fully self-funded and may rely on preemption of state law under ERISA.[13]  *See* 29 U.S.C. § 1144 (ERISA §514) and *FMC Corp. v. Holliday*, 498 U.S. 52, 58-61 (1990).  Obviously, to the extent that state anti-subrogation law may govern, any existing reimbursement claims would be precluded.

With respect to any existing plans that may actually be subject to ERISA, Plaintiffs rely on *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348 (5th Cir. 2003). In *Bombardier*, an ERISA plan brought suit against a plan participant and the participant's law firm to obtain a constructive trust over settlement funds, for reimbursement of medical benefits. The *Bombardier* court set forth a three-part test to determine whether a claim qualified for relief: Does the Plan seek to recover funds (1) that are specifically

---

[13]    Plaintiffs also fail to indicate whether any of the plans at issue may be provided by state or local government employers, Indian tribe employers, or by church employers, all of which are specifically exempted from regulation by ERISA.  See 18 U.S.C. § 1002(32) and (33) and 18 U.S.C. § 1003 (b).

identifiable; (2) that belong in good conscience to the Plan; and (3) that are within the possession and control of the defendant beneficiary. *Id.* at 356.

Here, the facts are completely opposite to those of *Bombardier*. First, the funds are not specifically identifiable due to the fact that the Plan Plaintiffs have yet to properly identify the specific claimant, plans supposedly harmed, or the lien amounts that are sought. Secondly, there is no evidence that the funds belong in good conscience to the Plan. No information has been offered with respect to the specific plans and/or plan language they allegedly seek to enforce.[14] Third, the funds which Plaintiffs' seek are not within the possession and control of the Named Law Firms they wish to name as defendants. The funds have been distributed nearly one (1) year ago in many instances.  As such, Plaintiffs fail the *Bombardier* test.

Moreover, Plan Plaintiffs misinterpret the Supreme Court's decision in *Sereboff v. Mid Atlantic Services, Inc.*, 547 U.S. 356 (U.S. 2006).  In *Sereboff*, the plaintiffs were injured in an automobile accident. Shortly after suit was commenced, Mid Atlantic, the Sereboffs' health insurer, served the Sereboffs' counsel with numerous letters asserting a lien to a portion of the Sereboffs' recovery. *Id.* at 360. The Sereboffs then settled their lawsuit. All of the settlement proceeds were distributed to the Sereboffs by their attorney and none were provided to Mid Atlantic. *Id.*  As a result, Mid Atlantic filed suit to recover its expended funds from the Sereboffs. *Id.* By agreement, the Sereboffs set aside the claimed lien amount in an escrow account until such time as the litigation was resolved. *Id.* Ultimately, the Supreme Court affirmed the lower court's opinion which required the Sereboffs to repay the escrowed to funds to Mid Atlantic. *Id.*

---

[14]     As this Court recognized, due to variances in Plan language and/or annual amendments within a single ERISA plan, "there may be material differences as to the plan language at the time that any individual beneficiary took Vioxx, including whether the plan language differed pre- or post-label adjustment, or whether it contained issues related to proof of causation." *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, *46-47 (E.D. La. Aug. 7, 2008).

- 17 -

This Court previously recognized the *Sereboff* test for determining whether an insurance place's reimbursement language qualifies them for equitable relief in accordance with ERISA. *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, *34 (E.D. La. Aug. 7, 2008). The *Sereboff* test requires that the plan language identify: (1) "a particular fund, separate from the [defendants'] general assets"; and (2) "a particular share of that fund to which [the lienholder] was entitled – 'that portion of the total recovery which is due [the lienholder] for benefits paid.'"*Id. See also Sereboff, supra.*

Plan Plaintiffs fail both factors of the *Sereboff* test. First, the funds which Plaintiffs seek are not within the possession and control of the Named Law Firms and were in fact distributed many months ago. Secondly, the Plan Plaintiffs have not properly identified the particular funds to which they seek entitlement. Plaintiffs have continually failed to provide constructive notice to the Named Law Firms of the claimants, the plans and/or amounts at-issue. Without same, Plaintiffs are not entitled to the reimbursement they seek.

Yet even if these basic preconditions could be met, any reimbursement rights a self-funded ERISA plan might have are totally dependent on the specific language incorporated into the individual health plan contracts. ERISA itself provides no authority for subrogation or reimbursement rights, but merely requires that contract terms be enforced as written without modification by state insurance law. The wide variation among contract provisions among different companies' health plans makes it impossible to determine the enforceability and scope of the Plan Plaintiffs' claims without detailed review and analysis of each applicable plan provision. [15] In providing only one "exemplar" plan, Plaintiffs have failed to show any factual basis supporting the claims of all other plans.

---

[15]     The variances which may exist include, but are not limited to, whether the plans create any reimbursement rights against beneficiaries as opposed to only subrogation rights against third parties; whether they affirmatively

Similarly, with respect to health plans issued by insurers pursuant to contracts with the government under FEHBA, a prerequisite to any plan reimbursement right is that the health plan actually includes a reimbursement provision.  Plaintiffs have provided nothing beyond their own conclusory statements that such provisions exist in their plans.  Moreover, even if such provisions do in fact exist, the Supreme Court has indicated that their enforceability may be limited.  In *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), the Court opted for a most narrow reading of FEHBA preemption:

> [The statute's] text does not purport to render inoperative *any and all* State laws that in some way bear on federal employee-benefit plans. 29 U.S.C. § 1144(a) (portions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan")…given that § 8902(m)(1) declares no federal law preemptive, but instead, terms of an OPM-BCBSA negotiated contract, a modest reading of the provision is in order. Furthermore, a reimbursement right of the kind Empire here asserts stems from a personal-injury recovery, and the claim underlying that recovery is plainly governed by state law. We are not prepared to say, based on the presentations made in this case, that under § 8902(m)(1), an OPM-BCBSA contract term would displace every condition state law places on that recovery.
>
> As earlier observed, the BCBSA Plan's statement of benefits links together the carrier's right to reimbursement from the insured and its right to subrogation. Empire's subrogation right allows the carrier, once it has paid an insured's medical expenses, to recover directly from a third party responsible for the insured's injury or illness. Had Empire taken that course, no access to a federal forum could have been predicated on the OPM-BCBSA contract right. The tortfeasors' liability, whether to the insured or the insurer, would be governed not by an agreement to which the tortfeasors are strangers, but by state law, and § 8902(m)(1) would have no sway.
>
> In sum, the presentations before us fail to establish that §8902(m)(1) leaves no room for any state law potentially bearing

---

and unambiguously abrogate the made-whole and/or common-fund doctrines; whether they provide for first-priority status of their claim; whether they impose any conditions or limitations on plan recovery rights; whether they sufficiently limit recovery rights to an identified fund rather than creating a general obligation; and whether they include submission to state-law recovery rules.

on federal employee-benefit plans in general, or carrier-
reimbursement claims in particular.

*Id*. at 2136. (Internal citations omitted). Thus, the Supreme Court has suggested that state law

recovery rules may operate as a defense to reimbursement claims of a FEHBA-governed plan.

### b)   The case law relied upon by Plaintiffs is inapplicable

The cases cited by Plaintiffs in support of their motion are completely inapplicable to the

facts here.  As described *supra*, the Vioxx litigation was a mass tort, multi-district litigation

which involved thousands of claimants while the cases generally cited by Plaintiffs involve

individual claims.  *See* Plaintiffs' Corrected Memorandum of Law. In the primary case cited,

Plaintiffs' counsel was made aware of the lienholder's alleged interest(s) prior to the resolution

of the claim and distribution of funds, but failed to protect same. *Longaberger Co. v. Kolt*, 586

F.3d 459 (6th Cir. 2009).[16] In *Longaberger*, the facts indicate that the plaintiff attorney was put

on notice of the lienholders' interests on at least three (3) separate occasions. *Id*. at 462.

Additionally, the *Longaberger* opinion reflects that the attorney went so far as to attempt to

negotiate the lien on behalf of his client prior to the conclusion of the underlying lawsuit and

prior to the distribution of funds. *Id*. Only then was the attorney deemed to be responsible for the

lienholder's interest.

Longaberger is not even remotely comparable to the present facts. As detailed herein, the

Plaintiffs have continuously failed to provide notice of their alleged interest(s) in this matter to

claimants or the Named Law Firms. Plaintiffs noticeably gloss over this subject in its motion by

stating that "their attorneys have received several notices…", but the record shows otherwise.

*See* Plaintiffs' Corrected Memorandum of Law, p. 15.  A letter from a third-party insurance plan

administrator which lists plaintiff names and then separately lists the insurance companies that it

---

[16]      As detailed *supra*, Plaintiffs similarly misinterpret the *Sereboff* case, as the lienholder in *Sereboff* perfected
its lien prior to settlement and distribution.

represents does not constitute adequate notice. *See* Plaintiffs' October 2008 correspondence attached hereto as Exhibit "C". The Named Law Firms had no proper knowledge of the Plaintiffs' alleged subrogation interest(s) and, therefore, no *Longaberger* obligation attached.

**D.      The Public Interest Is Best Served By Denial Of Plaintiffs' Motion**

The Vioxx Litigation was one of the largest mass torts in history. The litigation involved approximately 48,500 plaintiffs with cases pending in both Federal and State jurisdictions. *See* Section I, *supra.* The settlement was also exceptional in its size and scope. As part of this settlement, a truly unique and one-of-a kind private lien resolution program, commonly known and referred to herein as the PLRP, was established to satisfy private insurance health care subrogation interests. This Court strongly encouraged the development of the PLRP and issued multiple Orders requiring all counsel to advise their clients of same. As indicated by Exhibit "A", the Named Law Firms have satisfied every obligation required of them by this Court.

An unprecedented 25,000 claimants voluntarily enrolled in the PLRP and the participating plans were paid millions as a result. The PLRP has been a huge success. It seems that even Plan Plaintiffs would have to agree with the success of the plan, given the Affidavit of Professor Glenn Alan Melnick submitted in support of their initial Preliminary Injunction request. *See* Rec. Doc. 14640-4, AvMed Pl.'s Mot. TRO & Prelim. Inj., Melnick Aff. ¶¶ 28-30. Professor Melnick performed a statistical analysis and it was his opinion that the AvMed Plaintiffs have provided Vioxx-related healthcare benefits ranging from 15,400 claimants to 17,604 claimants. *Id.* This means that more claimants enrolled in the PLRP than the Plaintiffs originally estimated were provided with Vioxx-related healthcare benefits.

By filing this motion, Plaintiffs seek to impose a duty on counsel that would cripple mass tort resolution. If Plan Plaintiffs obtain the relief sought, counsel in future mass litigations will feel compelled to hold all funds for some indefinite period of time just in case a dormant private

- 21 -

insurer elects to bring an action against counsel years after settlement and distribution of funds. This cannot be the desired effect of our justice system.

As stated by this Honorable Court, "the public interest would be far better served by requiring the private health insurance companies to devise a more effective means for identifying their own insureds against whom they seek to assert a claim." *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, *69-70 (E.D. La. Aug. 7, 2008). Nor does Plaintiffs' motion encourage parties interested in resolving a long-standing litigation through settlement. As this Court noted, "Requiring the negotiating parties to resolve all private, non-statutory healthcare liens prior to disbursement would have shifted a burden of such magnitude onto the parties that it could have potentially frustrated settlement discussions". *Id.* at *69.

> **E.** **Plaintiffs' Motion For A Preliminary Injunction Imposing A Constructive Trust   And Prohibiting Distribution Of Identified Settlement Funds Should Be Denied**

For the reasons set forth above, Plaintiff's Motion for Leave to Amend should fail.  As Plaintiffs' ability to amend its Complaint to include the Named Law Firms as Defendants should be denied, their accompanying Motion for Preliminary Injunction is moot and untimely.

IV.   **CONCLUSION**

As justice does not require that Plaintiffs be granted leave to amend their pleadings,

Plaintiffs' Motion for Leave to Amend their First Amended Complaint should be **DENIED**.

Subsequently, Plaintiffs' Motion for Preliminary Injunction is moot and should be **DENIED**.

Respectfully submitted,

Sol H. Weiss, Esquire
Gregory S. Spizer, Esquire
ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.
1710 Spruce Street
Philadelphia, PA 19103
Telephone: (215)735-1130
Facsimile: (215) 875-7722

Turner W. Branch, Esquire
Brent M. Ferrel, Esquire
BRANCH LAW FIRM
2025 Rio Grande Boulevard, NW
Albuquerque, NM 87104
Telephone: (800) 243-3500
Facsimile: (713) 224-1622

Harry M. Roth, Esquire
Christopher Placitella, Esquire
COHEN, PLACITELLA & ROTH, P.C.
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 567-3500
Facsimile: (215) 567-6019

- 23 -

Robert T. Dassow, Esquire
HOVDE, DASSOW & DEETS, LLC
One Meridian Plaza
10585 North Meridian Street, Suite 205
Indianapolis, IN 46290
Telephone: (317) 818-3100
Facsimile: (317) 818-3111

Christopher P. Johnson, Esquire
KASOWITZ, BENSON, TORRES
& FRIEDMAN, LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Lee Balefsky, Esquire
Michelle L. Tiger, Esquire
KLINE & SPECTER
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-0420
Facsimile: (215) 735-0960

W. Mark Lanier, Esquire
Richard D. Meadow, Esquire
THE LANIER LAW FIRM
126 East 56th Street, Tower 56, 6th Floor
New York, NY 10022
Telephone: (212) 421-2800
Facsimile: (212) 421-2878

- 24 -

James J. Pettit, Esquire
LOCKS LAW FIRM, LLC
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08002
Telephone: (856) 663-8200
Facsimile: (856) 661-8400

David S. Ratner, Esquire
MORELLI RATNER, PC
95 Third Avenue
New York, NY 10022
Telephone: (212) 751-9800
Facsimile: (212) 751-0046

Edward Seglias, Esquire
Edward T. DeLisle, Esquire
COHEN SEGLIAS PALLAS
GREENHALL & FURMAN, PC
United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA 19103
Telephone (215) 564-1700
Facsimile: (267) 238-4418

Glenn Zuckermann, Esquire
WEITZ & LUXENBERG, P.C.
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Telephone: (856) 755-1115
Facsimile: (856) 755-1995

## CERTIFICATE OF SERVICE

The undersigned attorneys hereby certify that a true and correct copy of the foregoing

Response and Memorandum in Opposition To Plaintiffs' Corrected Motion: (A) To Identify the

Law Firms Representing Certain Eligible Plaintiffs in Place Of the "John Doe" Defendants; (B)

To Add Federal Employee Health Benefits Act ("FEHBA") and Medicare Advantage

Reimbursement Claims; (C) To Seal That Portion Of the Corrected Declaration Of Mark D.

Fischer, Esq. that Contains Protected Health Information Under the Health Insurance Portability

and Accountability Act Of 1996 ("HIPAA"); and (D) For a Preliminary Injunction Imposing a

Constructive Trust and Prohibiting Distribution Of Identified Settlement Funds, was served on

the following party via electronic mail and United States first class, certified mail:

> Peter D. St. Phillip, Jr., Esq.
> Lowey Dannenberg Cohen & Hart, P.C.
> One North Broadway, Suite 509
> White Plains, NY 10601

Respectfully,

Sol H. Weiss, Esquire
Gregory S. Spizer, Esquire
ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.
1710 Spruce Street
Philadelphia, PA 19103
Telephone: (215)735-1130
Facsimile: (215) 875-7722