IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

```
-------------------------------------------------x
AvMed Inc, et al.                    :     CIVIL ACTION
                    Plaintiffs,      :     NO. 08-1633
                                     :
        vs.                          :     SECTION L, MAG. 3
                                     :
BrownGreer PLC, U.S.                 :     HONORABLE ELDON E. FALLON
Bancorp, Inc. and John Does          :     HONORABLE DANIEL E. KNOWLES, III
                    Defendants.      :
                                     :     In relation to: MDL No. 1657
                                     :
                                     :     In re: Vioxx Products Liability Litigation
-------------------------------------------------x
```

**NAMED LAW FIRMS' RESPONSE IN OPPOSITION TO PLAINTIFFS' CORRECTED MOTION: (A) TO IDENTIFY THE LAW FIRMS REPRESENTING CERTAIN ELIGIBLE PLAINTIFFS IN PLACE OF THE "JOHN DOE" DEFENDANTS; (B) TO ADD FEDERAL EMPLOYEE HEALTH BENEFITS ACT ("FEHBA") AND MEDICARE ADVANTAGE REIMBURSEMENT CLAIMS; (C) TO SEAL THAT PORTION OF THE CORRECTED DECLARATION OF MARK D. FISCHER, ESQ. THAT CONTAINS PROTECTED HEALTH INFORMATION UNDER THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 ("HIPAA"); AND (D) FOR A PRELIMINARY INJUNCTION IMPOSING A CONSTRUCTIVE TRUST AND <u>PROHIBITING DISTRIBUTION OF IDENTIFIED SETTLEMENT FUNDS</u>**

     In accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of the Eastern District of Louisiana, those Law Firms named in Plan Plaintiffs' June 22, 2010 Motion respectfully file the instant response. [1]

     The Plan Plaintiffs seek leave to amend their First Amended Complaint to name the following twelve (12) law firms as defendants:  Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.;  Branch Law Firm; Cohen Placitella & Roth; Cohen, Segalis, Pallas, Greenhall & Furman, P.C.; Hovde, Dassow & Deets; Kasowitz, Benson, Torres & Friedman; Kline &

---

[1]     As the Named Law Firms vehemently deny that they are rightful parties to this action, the title "Defendants" will not be used in the instant Motion or Memorandum.  Further, the instant Motion and Memorandum are only filed on behalf of the undersigned law firms.

Specter; Lanier Law Firm; Locks Law Firm; Morelli Ratner; Parks & Crump; and Weitz &

Luxenberg, (hereinafter, "Named Law Firms"). In addition, Plaintiffs also seek leave to add

claims for reimbursement as Medicare Advantage Organizations under the Medicare Secondary

Payer Act of 1980 ("MSP") and as contracting plans under the Federal Employee Health

Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq*. Further, Plaintiffs request permission to seal

that portion of the Corrected Declaration of Mark D. Fischer, Esq. that contains protected health

information under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

Lastly, Plaintiffs seek a preliminary injunction imposing a constructive trust and prohibiting the

Named Law Firms from distributing the identified settlement funds.

Plaintiffs allege that the Named Law Firms represent eligible claimants to the Vioxx

Settlement Program who have done the following: "(1) settled claims against Merck for medical

expenses paid by Plan Plaintiffs; (2) are members of plans under the Employee Retirement

Security Act ("ERISA") that include reimbursement language qualifying those plans for

equitable relief under *Sereboff v. Mid-Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006); and

(3) chosen to forego the Private Lien Resolution Program approved by this Court." *See*

Plaintiffs' Corrected Memorandum of Law, p. 1-2.

For the reasons set forth in the foregoing Memorandum of Law, and the supporting

Affidavits and Exhibits, Plaintiffs' motion is procedurally and substantively flawed. The relief

sought is not supported by this litigation's factual history nor is it endorsed by the precedential

case law.  As such, the Named Law Firms respectfully request that this Honorable Court deny

Plaintiffs' requested relief.

Respectfully submitted,

Sol H. Weiss, Esquire
Gregory S. Spizer, Esquire
ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.
1710 Spruce Street
Philadelphia, PA 19103
Telephone: (215)735-1130
Facsimile: (215) 875-7722

Turner W. Branch, Esquire
Brent M. Ferrel, Esquire
BRANCH LAW FIRM
2025 Rio Grande Boulevard, NW
Albuquerque, NM 87104
Telephone: (800) 243-3500
Facsimile: (713) 224-1622

Harry M. Roth, Esquire
Christopher Placitella, Esquire
COHEN, PLACITELLA & ROTH, P.C.
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 567-3500
Facsimile: (215) 567-6019

Robert T. Dassow, Esquire
HOVDE, DASSOW & DEETS, LLC
One Meridian Plaza
10585 North Meridian Street, Suite 205
Indianapolis, IN 46290
Telephone: (317) 818-3100
Facsimile: (317) 818-3111

- 3 -

Christopher P. Johnson, Esquire
KASOWITZ, BENSON, TORRES
& FRIEDMAN, LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Lee Balefsky, Esquire
Michelle L. Tiger, Esquire
KLINE & SPECTER
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-0420
Facsimile: (215) 735-0960

W. Mark Lanier, Esquire
Richard D. Meadow, Esquire
THE LANIER LAW FIRM
126 East 56th Street, Tower 56, 6th Floor
New York, NY 10022
Telephone: (212) 421-2800
Facsimile: (212) 421-2878

James J. Pettit, Esquire
LOCKS LAW FIRM, LLC
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08002
Telephone: (856) 663-8200
Facsimile: (856) 661-8400

David S. Ratner, Esquire
MORELLI RATNER, PC
95 Third Avenue
New York, NY 10022
Telephone: (212) 751-9800
Facsimile: (212) 751-0046

Edward Seglias, Esquire
Edward T. DeLisle, Esquire
COHEN SEGLIAS PALLAS
GREENHALL & FURMAN, PC
United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA  19103
Telephone (215) 564-1700
Facsimile: (267) 238-4418

Glenn Zuckerman, Esquire
WEITZ & LUXENBERG, P.C.
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Telephone: (856) 755-1115
Facsimile: (856) 755-1995

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

```
-----------------------------------------------x
AvMed Inc, et al.                          :
                     Plaintiffs,           :
                                           :
                                           :
        vs.                                :
                                           :
                                           :
BrownGreer PLC, U.S.                       :
Bancorp, Inc. and John Does               :
                     Defendants.           :
                                           :
                                           :
                                           :
-----------------------------------------------x
```

CIVIL ACTION
NO. 08-1633

SECTION L, MAG. 3

HONORABLE ELDON E. FALLON
HONORABLE DANIEL E. KNOWLES, III

In relation to: MDL No. 1657

In re: Vioxx Products Liability Litigation

**NAMED LAW FIRMS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
RESPONSE IN OPPOSITION TO PLAINTIFFS' CORRECTED MOTION: (A) TO
IDENTIFY THE LAW FIRMS REPRESENTING CERTAIN ELIGIBLE PLAINTIFFS
IN PLACE OF THE "JOHN DOE" DEFENDANTS; (B) TO ADD FEDERAL
EMPLOYEE HEALTH BENEFITS ACT ("FEHBA") AND MEDICARE ADVANTAGE
REIMBURSEMENT CLAIMS; (C) TO SEAL THAT PORTION OF THE CORRECTED
DECLARATION OF MARK D. FISCHER, ESQ. THAT CONTAINS PROTECTED
HEALTH INFORMATION UNDER THE HEALTH INSURANCE PORTABILITY AND
ACCOUNTABILITY ACT OF 1996 ("HIPAA"); AND (D) FOR A PRELIMINARY
INJUNCTION IMPOSING A CONSTRUCTIVE TRUST AND PROHIBITING
DISTRIBUTION OF IDENTIFIED SETTLEMENT FUNDS**

Sol H. Weiss, Esquire
Gregory S. Spizer, Esquire
ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.
1710 Spruce Street
Philadelphia, PA 19103
Telephone: (215)735-1130
Facsimile: (215) 875-7722

Harry M. Roth, Esquire
Christopher Placitella, Esquire
COHEN, PLACITELLA & ROTH, P.C.
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 567-3500
Facsimile: (215) 567-6019

Turner W. Branch, Esquire
Brent M. Ferrel, Esquire
BRANCH LAW FIRM
2025 Rio Grande Boulevard, NW
Albuquerque, NM 87104
Telephone: (800) 243-3500
Facsimile: (713) 224-1622

Robert T. Dassow, Esquire
HOVDE, DASSOW & DEETS, LLC
One Meridian Plaza
10585 North Meridian Street, Suite 205
Indianapolis, IN 46290
Telephone: (317) 818-3100
Facsimile: (317) 818-3111

Christopher P. Johnson, Esquire
KASOWITZ, BENSON, TORRES
& FRIEDMAN, LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

W. Mark Lanier, Esquire
Richard D. Meadow, Esquire
THE LANIER LAW FIRM
126 East 56th Street, Tower 56, 6th Floor
New York, NY 10022
Telephone: (212) 421-2800
Facsimile: (212) 421-2878

David S. Ratner, Esquire
MORELLI RATNER, PC
95 Third Avenue
New York, NY 10022
Telephone: (212) 751-9800
Facsimile: (212) 751-0046

Lee Balefsky, Esquire
Michelle L. Tiger, Esquire
KLINE & SPECTER
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-0420
Facsimile: (215) 735-0960

James J. Pettit, Esquire
LOCKS LAW FIRM, LLC
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08002
Telephone: (856) 663-8200
Facsimile: (856) 661-8400

Edward Seglias, Esquire
Edward T. DeLisle, Esquire
COHEN SEGLIAS PALLAS
GREENHALL & FURMAN, PC
United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA  19103
Telephone (215) 564-1700
Facsimile: (267) 238-4418

Glenn Zuckermann, Esquire
WEITZ & LUXENBERG, P.C.
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Telephone: (856) 755-1115
Facsimile: (856) 755-1995

## TABLE OF CONTENTS

I.   FACTUAL BACKGROUND – VIOXX LITIGATION.............................................. 1

II.  PROCEDURAL HISTORY – PRESENT MOTIONS.............................................. 3

III. ARGUMENT ............................................................................................................ 6

    A.   Legal Standard ................................................................................................. 6

    B.   Procedural Failures ......................................................................................... 7

    C.   Substantive Failures ........................................................................................ 8

        1.   Plaintiffs' Motion to Amend Should Be Denied Due To Plaintiffs' Undue Delay  8

        2.   Plaintiffs' Motion to Amend Should Be Denied Due To the Undue Prejudice the Named Law Firms Shall Suffer by Virtue of the Motions' Allowance ................. 9

        3.   Plaintiffs' Motion to Amend Should Be Denied Due to the Futility of the Proposed Amendment ............................................................................. 13

            a)   Plaintiffs' claims are futile as the authorities upon which they rely do not confer an affirmative duty on law firms to satisfy unperfected liens ................. 14

            b)   The case law relied upon by Plaintiffs is inapplicable.................................... 20

    D.   The Public Interest Is Best Served By Denial Of Plaintiffs' Motion......................... 21

    E.   Plaintiffs' Motion For A Preliminary Injunction Imposing A Constructive Trust  And Prohibiting Distribution Of Identified Settlement Funds Should Be Denied ............ 22

IV.  CONCLUSION....................................................................................................... 23

## TABLE OF AUTHORITIES

### CASES

*Addington v Farmer's Elevator Mut. Ins. Co.,*
   650 F.2d 663 (5th Cir. 1981) ......................................................................... 6

*AvMed, Inc. v. BrownGreer, PLC,*
   2008 U.S. App. LEXIS 23747 (5th Cir. Nov. 17, 2008) .................................. 4

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (U.S. 2007)............................................................................... 13

*Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough,*
   354 F.3d 348 (5th Cir. 2003) ................................................................... 16, 17

*Care Choices HMO v. Engstrom,*
   330 F.3d 786 (6th Cir. 2003) ........................................................................ 15

*Coventry v. United States Steel Corp.,*
   856 F.2d 514 (3d Cir. 1988).............................................................................. 9

*Empire Healthchoice Assurance, Inc. v. McVeigh,*
   547 U.S. 677 (2006)....................................................................................... 19

*FMC Corp. v. Holliday,*
   498 U.S. 52 (1990)......................................................................................... 16

*Glassman v. Computervision Corp.,*
   90 F.3d 617 (1st Cir. 1996).............................................................................. 13

*Gregory v.Mitchell,*
   634 F.2d 199 (5th Cir. 1981) ........................................................................... 6

*Home Depot v. Nat'l Fire Ins. Co.,*
   2007 U.S. Dist. LEXIS 66696 (N.D. Tex. Sept. 10, 2007)..................................... 10

*Hotel Employees & Restaurant Employees Internat'l. Union Welfare Fund v. Gentner,*
   50 F.3d 719 (9th Cir.1994) ........................................................................... 11

*Hyde v. Hoffman-La Roche Inc.,*
   2008 U.S. Dist. LEXIS 57683 (N.D. Tex. July 30, 2008) .................................... 9

*In re Burlington Coat Factory Sec. Litig.,*
   114 F.3d 1410 (3d Cir. N.J. 1997) .................................................................. 13

*In re Vioxx Prod. Liab. Litig., MDL No. 1657,*
   2008 WL4681368 (E.D. La. Oct. 21, 2008) .................................................... 3

*In re Vioxx Prods. Liab. Litig.,*
   *2008 U.S. Dist. LEXIS 60269 (E.D. La. Aug. 7, 2008)* .......................... passim

*In re Vioxx Prods. Liab. Litig.,*
   360 F. Supp. 2d 1352 (J.P.M.L. 2005).............................................................. 2

*In re Vioxx Prods. Liab. Litig., MDL 1657 (E.D. La. Nov. 9, 2007)* ............................................. 2

*Longaberger Co. v. Kolt,*
    586 F.3d 459 (6th Cir. 2009) ........................................................................ 20

*Lowrey v. Texas A & M Univ. System,*
    117 F.3d 242 (5th Cir. 1997) ..................................................................... 9, 13

*Massarsky v. General Motors Corp.,*
    706 F.2d 111 (3d Cir. 1983) ......................................................................... 13

*Nott v. Aetna U.S. Healthcare, Inc.,*
    303 F.Supp.2d 565 (E.D.Pa. 2004) ............................................................. 15

*Pope v. MCI Telecom. Corp.,*
    937 F.2d 258 (5th Cir. 1991) .......................................................................... 9

*Popowski v. Parrott,*
    461 F.3d 1367 (11th Cir. 2006) .................................................................... 11

*Sereboff v. Mid-Atlantic Medical Services, Inc.,*
    547 U.S. 356 (2006).......................................................................... 1, 17, 18

*Southern Council of Industrial Workers v. Ford,*
    83 F.3d 966 (8th Cir. 1996) .......................................................................... 11

*Southmark Corp. v. Schulte Roth & Zabel,*
    88 F.3d 311 (5th Cir. 1996) ........................................................................ 8, 9

*Stripling v. Jordan Prod. Co.,*
    234 F.3d 863 (5th Cir. 2000) ....................................................................... 13

*Wimm v. Jack Eckerd Corp.,*
    3 F.3d 137 (5th Cir. 1993) .............................................................................. 9

*WRR Industries v. Prologis,*
    2006 U.S. Dist. LEXIS 46210, 2006 WL 1814126 (N.D. Tex. Jun. 30, 2006) ........................ 9

*Zenith Radio Corp. v. Hazeltine Research,*
    401 U.S. 321 (U.S.1971)................................................................................. 6

## STATUTES

18 U.S.C. § 1002(32) and (33)........................................................................ 16

18 U.S.C. § 1003 (b) ................................................................................. 16

28 U.S.C. § 1407..................................................................................... 2

29 U.S.C. § 1144..................................................................................... 16

42 U.S.C. § 1395mm(e)(4)(A) ........................................................................ 15

42 U.S.C. § 1395mm(e)(4)(B) ........................................................................ 15

42 U.S.C. § 1395w-22(a)(4)(A) ...................................................................... 15

42 U.S.C. § 1395w-22(a)(4)(B) ................................................................ 15

42 U.S.C. § 1395y(b)(2)(B)(iii) ............................................................. 15

5 U.S.C. § 8901 *et seq.*............................................................................ 1

## OTHER AUTHORITIES

Rec. Doc. 15362, Minute Entry, July 17, 2008.......................................... 3

The Plan Plaintiffs seek leave to amend their First Amended Complaint to name twelve (12) law firms as defendants. Plaintiffs allege that the Named Law Firms represent eligible claimants to the Vioxx Settlement Program who encompass the following: "(1) settled claims against Merck for medical expenses paid by Plan Plaintiffs; (2) are members of plans under the Employee Retirement Security Act ("ERISA") that include reimbursement language qualifying those plans for equitable relief under *Sereboff v. Mid-Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006); and have chosen to forego the Private Lien Resolution Program approved by this Court." *See* Plaintiffs' Corrected Memorandum of Law, p. 1-2. In addition, Plaintiffs also seek leave to add claims for reimbursement as Medicare Advantage Organizations under the Medicare Secondary Payer Act of 1980 ("MSP") and as contracting plans under the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq. Id.* Finally, Plaintiffs move for a preliminary injunction imposing a constructive trust and prohibiting distribution of identified settlement funds.

As demonstrated and fully explained *infra*, Plaintiffs' motion is procedurally and substantively flawed. Accordingly, their motion should fail.

## I.      FACTUAL BACKGROUND – VIOXX LITIGATION

The underlying claims in this matter involve the prescription medication, Vioxx, which was designed, manufactured and distributed by Merck & Co., Inc. ("Merck"). On May 20, 1999 the Food and Drug Administration approved Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain and migraine headaches.

Following reports of adverse cardiovascular events associated with Vioxx, a small number of product liability lawsuits were filed in New Jersey state courts as early as 2002 and 2003. By Order dated May 20, 2003, the New Jersey Supreme Court centralized management of the New Jersey Vioxx cases before The Honorable Carol E. Higbee, Atlantic County. Despite

this centralization, the Vioxx litigation remained relatively small (approximately 350 filed cases in New Jersey as of the Summer of 2004).

However, the scope of the litigation changed on September 30, 2004, when Vioxx was withdrawn from the market.  Thereafter, thousands of individual lawsuits and multiple class actions were filed in federal courts throughout the country as well as in various state courts.  On February 16, 2005, the Judicial Panel on Multidistrict Litigation conferred multidistrict litigation status for those federally filed Vioxx lawsuits. All such actions were transferred to this Honorable Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407.  *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005).

For the next two and a half years, the Vioxx litigation was exhaustively pursued. Millions of documents were produced, thousands of depositions were taken, hundreds of experts were consulted and countless motions were filed. Numerous trials were also conducted.  This Honorable Court held six trials and during the same time period, thirteen cases were tried in various state court jurisdictions.  Along the way, the media reported extensively on the litigation as a whole and on the trials in particular.  The world, including the Plan Plaintiffs, was no doubt aware of this historic litigation.

The trials helped pave the way for in-depth settlement discussions between Merck and the Negotiating Plaintiffs' Counsel ("NPC").  On November 9, 2007, Merck and the NPC formally announced that they had reached a Settlement Agreement.  *See Settlement Agreement, In re Vioxx Prods. Liab. Litig.*, MDL 1657 (E.D. La. Nov. 9, 2007) ("Settlement Agreement"). As part of the Settlement Agreement, a Lien Resolution Administrator ("LRA") was appointed to establish "procedures and protocols... to identify and resolve Governmental Authority Third Party Payor/Provider Statutory Liens." *Id.* § 12.1.8.  The Agreement also set forth that the

"satisfaction and discharge of any and all Governmental Authority Third Party Providers/Payors statutory Liens must be established to the satisfaction of the Claims Administrator [Brown Greer, PLC] and Merck before any Settlement Payment can be disbursed." *Id.* § 12.1.3.9.  On July 17, 2008, Merck formally announced that the thresholds necessary to trigger funding of the Vioxx Settlement Program were met.  *See* Rec. Doc. 15362, Minute Entry, July 17, 2008.

Given Merck's approval, interim payments were readied for those eligible claimants who had timely fulfilled all of their filing obligations.  *See* Settlement Agreement, § 4.1. The interim payments were entitled to begin on August 1, 2008 or the date on which the Claims Administrator has determined ...." *Id.*

## II.   **PROCEDURAL HISTORY – PRESENT MOTIONS**

Before any interim payments were disseminated, the Plan Plaintiffs filed its original Complaint in this matter on April 14, 2008. They then amended their Complaint as of right on April 18, 2008. *See In re Vioxx Prod. Liab. Litig.,* MDL No. 1657, 2008 WL4681368, *3 (E.D. La. Oct. 21, 2008). The First Amended Complaint named Brown Greer, PLC (hereinafter "Brown Greer"), U.S. Bancorp, and certain "John Does" as defendants.

On June 9, 2008, the Plan Plaintiffs filed motions for a temporary restraining order and preliminary injunction. *See In re Vioxx Prods. Liab. Litig., 2008 U.S. Dist. LEXIS 60269 (E.D. La. Aug. 7, 2008).* The Plans sought to compel Brown Greer, the Settlement's appointed Claims Administrator, to disclose the names of those eligible claimants who had participated in the Vioxx settlement. *Id.* Additionally, the Plans requested that no settlement funds be distributed pending Plan Plaintiffs' assertion of their reimbursement/subrogation rights against such claimants. *Id.* Brown Green opposed the filed motions. *Id.*

On June 11, 2008, the Court held a status conference to address the AvMed Plaintiffs' motion.  The Court denied the temporary restraining order, but withheld ruling on the

preliminary injunction request. *Id.* at *13. During a June 27, 2008, regularly scheduled Vioxx status conference the parties agreed to pursue settlement discussions with respect to Plaintiffs' request for a preliminary injunction. As such, the parties subsequently withdrew their motions without prejudice, but reserved their right to refile at a later date. *Id.* After failing to reach an agreement, the parties reinstated their motions on July 14, 2008. *Id.* On July 24, 2008, the Court heard oral argument on AvMed's motion. *Id.* On August 7, 2008, this Court issued an Order and Opinion denying AvMed's motion. *Id.* This Court ruled that the Plan Plaintiffs had failed to satisfy any of the four (4) prongs required for the imposition of a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) irreparable injury; (3) a favorable balance of hardships; and (4) no adverse effect on the public interest. *Id.* The Fifth Circuit affirmed this Court's Order. *See AvMed, Inc. v. BrownGreer, PLC*, 2008 U.S. App. LEXIS 23747 (5th Cir. Nov. 17, 2008).

In order to address the assertions raised in the Plan Plaintiffs' First Amended Complaint, an unprecedented voluntary Private Lien Resolution Program (hereinafter "PLRP") was established. The program was announced at the January 22, 2009 monthly status conference[2]. The Court appointed the Garretson Firm Resolution Group, Inc. ("Garretson") to oversee the program as Lien Resolution Administrator. In a January 30, 2009 e-mail to counsel the optional private lien resolution program was announced. The email contained an informational packet which counsel was to send to their clients announcing the program. The email also contained an enrollment form and HIPAA medical release authorization which claimants needed to complete, sign and return to Garretson by March 20, 2009 if they elected to enroll in the program. On

---

[2]     Plaintiffs' failure to act upon their alleged reimbursement rights is all the more unbelievable when one considers the unparalleled public access to the Vioxx litigation and settlement, including this Honorable Court's monthly status conferences. The status conferences are accessible by both personal attendance and teleconference. In addition, the Court publishes minutes following each conference: http://vioxx.laed.uscourts.gov/.

March 27, 2009, the Court was advised that 17,000 eligible claimants had agreed to participate in the resolution program.

On April 7, 2009 the Plan Plaintiffs announced that they would not exercise its "walk away" rights given the large enrollment in the PLRP.   On April 23, 2009, counsel received an e-mail from BrownGreer announcing an extension for claimants to enroll in the PLRP until May 29, 2009.[3] On June 29, 2009, the Garretson Firm informed the Court that over 20,000 claimants had enrolled in the PLRP.  On September 15, 2009, the Court issued Pre-Trial Order No. 48 which required counsel to send formal written notice of the PLRP to those claimants who had not yet received formal written notice of same.

On October 9, 2009, the Court signed Pre-Trial Order No. 54.  Attached to Pre-Trial Order No. 54 as Exhibit "F" was a list of claimants who allegedly did not enroll in the PLRP.[4] The Order stated: "Primary Counsel for Eligible Claimants identified on Exhibit "F"… are hereby enjoined from making payments of any of the final 15% of settlement proceeds to those Eligible Claimants identified on Exhibit "F" of the Fisher Declaration until such time as Primary Counsel certifies in writing that it has:  (i) complied with Pretrial Order No. 48, and (ii) all represented Eligible Claimants have been afforded a reasonable opportunity to opt into the Private Lien Resolution Program." *See* Pre Trial Order No. 54. As evidenced by the Affidavits and Certifications attached hereto as Exhibit "A", each of the undersigned Law Firm has complied with its Court-Ordered obligations.

---

[3]        Subsequent extensions to enroll in the program were issued by the Court and the Claims Administrator. Enrollment in the program was extended until February 2010. By the final enrollment date more than 25,000 claimants voluntarily enrolled in the PLRP, allowing substantial monies to be paid to the participating plans.

[4]        Exhibit "F" to Pre-Trial Order No. 54 was littered with errors and misidentifications. For example, numerous claimants who enrolled in the PLRP were listed as non-enrollees.

Substantial work was undertaken by the Named Law Firms to satisfy its obligations to both their respective clients and this Honorable Court. In addition, Plaintiffs have not provided constructive notice of their alleged liens. Nevertheless, Plaintiffs filed the instant Motion on June 17, 2010. A corrected motion was subsequently filed on June 22, 2010. Plan Plaintiffs' now seek permission to amend their First Amended Complaint to name the aforementioned twelve law firms as defendants.

For the foregoing reasons, Plaintiffs' motion should fail.

## III.   ARGUMENT

### A.   Legal Standard

Federal Rule of Civil Procedure (15)(a)(2) allows an amended pleading if there is either written consent of the opposing party or by leave of court. *See* Fed R. of Civ. P. 15(a)(2). The Rule further states that "the Court should freely give leave when justice so requires." *Id.* However, leave to amend "is by no means automatic." *Addington v Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir. 1981).

The Fifth Circuit has held that the decision to grant or deny a motion for leave to amend lies within the sound discretion of the court. *Id.* In exercising its discretion, the court considers factors such as, "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Gregory v.Mitchell,* 634 F.2d 199, 203 (5th Cir. 1981). *See also Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321 (U.S.1971) ("Leave to amend should be denied when doing so is required for fairness to the party opposing the motion for leave to amend").

### B.     Procedural Failures

Plaintiffs' motion fails to provide the necessary information so that the Named Law Firms can adequately and appropriately respond. Attached as Exhibit "A" to Plaintiffs' motion is a purported list of claimants who did not enroll in the PLRP. In the interest of HIPAA compliance, Plaintiffs' filed motion redacted the claimants' names. However, the copies served on the Named Law Firms were also redacted.[5] Given this, the Named Law Firms do not know the identity of the "eligible claimants" which Plaintiffs reference. Obviously, the Named Law Firms cannot be expected to provide a response to Plaintiffs' allegations when the claimants at-issue remain unknown.

Another glaring deficiency with Plaintiffs' motion is its failure to include the relevant plan language upon which its arguments rely.[6] According to Plaintiffs' Exhibit "A", there are thirteen (13) Health Plans which were allegedly harmed by various claimants' failure to resolve their Vioxx-related liens. However, Plaintiffs' motion only attached health plan policy/language for Humana. Of the 350 alleged claimants listed on Plaintiffs' Exhibit "A" Humana is cited as the plan for only seventeen (17) claimants, which is less than five percent (5%).

It seems that Plaintiffs want the Named Law Firms and our respective clients to take their word that the Humana plan language and other necessary self-funded documentation is applicable to the other twelve (12) plans. With due respect to Plaintiffs, the Named Law Firms cannot make that assumption. Nor should Plaintiffs expect that this Honorable Court rely on such an unsubstantiated claim.

---

[5]     Named Law Firms note that we have similarly redacted any reference to clients' identifying information in to protect privacy interests. The copies served on Plaintiffs will also contain redacted Exhibits, as the Exhibits attached to the instant Memorandum of Law were created by Plaintiffs and/or previously forwarded to Plaintiffs in a non-redacted format. As such, Plaintiffs are already aware of the referenced claimants' information.

[6]     It is notable that this deficiency has remained unresolved since this Honorable Court addressed same in its August 2008 Order.

## C.   Substantive Failures

Plaintiffs want this Court to believe that it took them nearly two (2) years to identify those claimants who were allegedly provided insurance coverage for Vioxx-related medical care. This claim is made despite fact that Plan Plaintiffs had sufficient time and information to identify any and all claimants for which they have alleged reimbursements rights.

### 1.   Plaintiffs' Motion to Amend Should Be Denied Due To Plaintiffs' Undue Delay

Plaintiffs had years to perfect any alleged reimbursement rights. The following facts demonstrate same: (1) any and all Complaints filed relative to the Vioxx litigation were public records. Each complaint, at a minimum, contained the claimant's name, address and date of injury, as well as the contact information for claimant's counsel; (2) the Vioxx litigation, as a collective whole, was pending for nearly six (6) years (three of which were after the highly publicized withdrawal of Vioxx) prior to settlement. The Plan Plaintiffs had more than adequate time to properly place claimants and their law firms on notice if they wished to do so; and (3) the Vioxx Settlement was well publicized in the media immediately after it was announced.[7] Plan Plaintiffs most certainly could have placed claimants and/or their law firms on notice of their alleged liens, but yet again, they failed to do so.

This undue delay is sufficient reason for their Motion for Leave to Amend to be denied as a trial court may properly consider (1) an "unexplained delay" and (2) "whether the facts underlying the amended complaint were known to the party when the original complaint was filed…" in exercising its discretion to deny leave to amend a complaint. *Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 316 (5th Cir. 1996) (internal citations omitted); *See also*

---

[7]    Examples of the Settlement Agreement's media publicity can be gleamed from a simple keyword search of the phrase "Vioxx Settlement". Results of the keyword search via the Google and Bing search engines are exhaustive, but include: http://www.msnbc.msn.com/id/21701212/; http://money.cnn.com/2007/11/09/news/companies/merck_vioxx/index.htm; http://www.cbsnews.com/stories/2008/07/17/business/main4269301.shtml

*Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 140 (5th Cir. 1993) (upholding denial of motion to amend filed nine months after the originally filed complaint because movant "knew from the outset of the litigation about the facts which formed the basis for the motion to amend"); *Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 315-16 (5th Cir. 1996) ("Liberality in pleading does not bestow a litigant the privilege of neglecting her case for a long period of time."); *Pope v. MCI Telecom. Corp.*, 937 F.2d 258, 263 (5th Cir. 1991) (denying motion to amend where the proposed new claim is based on same facts as the previous claims); *WRR Industries v. Prologis*, 2006 U.S. Dist. LEXIS 46210, 2006 WL 1814126, at *14 (N.D. Tex. Jun. 30, 2006) (denying motion to amend where the proposed new claims were known to the Plaintiff since case's inception).

This Circuit has clearly recognized that unwarranted delays and failure to take action is not to be rewarded. In this instance, the Plan Plaintiffs took no steps to perfect their supposed interests. Only now, at this belated juncture, do they attempt to act.[8] The Plan Plaintiffs are too late, and as a result, their motion should fail.

> **2.   Plaintiffs' Motion to Amend Should Be Denied Due To the Undue Prejudice the Named Law Firms Shall Suffer by Virtue of the Motions' Allowance**

It is well established that the potential for undue prejudice to the nonmoving party is, "the touchstone for the denial of leave to amend." *Lowrey v. Texas A & M Univ. System,* 117 F.3d 242, 246 (5th Cir. 1997); *Coventry v. United States Steel Corp.,* 856 F.2d 514, 519 (3d Cir. 1988). Precedential case law recognizes the prejudice to defendants if plaintiffs are seeking leave to amend at a "late date" whereby they "thwart resolution" of a matter. *Hyde v. Hoffman-La Roche Inc.,* 2008 U.S. Dist. LEXIS 57683 (N.D. Tex. July 30, 2008). *See also Home Depot v.*

---

[8] Named Law Firms note that even this last minute effort is still insufficient notice of any alleged claims.

*Nat'l Fire Ins. Co.*, 2007 U.S. Dist. LEXIS 66696 (N.D. Tex. Sept. 10, 2007) ("The court has frequently found prejudice when a party seeks leave to amend after the opposing party has filed a summary judgment motion").

As previously detailed, the Vioxx litigation has been ongoing for the better part of six (6) years. This Honorable Court has frequently commented on the length of this litigation. *See In re Vioxx Prods. Liab. Litig., 2008 U.S. Dist. LEXIS 60269 (E.D. La. Aug. 7, 2008).* Only now, after the distribution of all funds related to this settlement and when the parties are so close to a final resolution of this matter, do the Plan Plaintiffs seek to amend their Complaint in order to impede resolution.

This behavior is unduly prejudicial to the Named Law Firms who have complied with every obligation and deadline associated with the Vioxx Settlement. To *now* be forced to defend themselves against this baseless action would be unjust, especially considering the fact that the Plan Plaintiffs could have asserted their alleged rights on multiple occasions instead of sitting dormant for nearly six (6) years.

In an attempt to combat this prejudice, Plaintiffs argue that the Named Law Firms were aware of this litigation through their previous filing against "John Doe" defendants. As evidenced by the Plaintiffs' decision to cherry pick the eligible claimants and law firms they now wish to pursue, the Named Law Firms had no inclination that they were the "likely defendants in this action". *See* Plaintiffs' Corrected Memorandum of Law, p. 11. Moreover, Plaintiffs' prior complaints and motions were not served on the Named Law Firms.

Further still, Plaintiffs allege that they provided notice of their claimed liens and intention to file suit in correspondence forwarded to counsel. *Id.* This argument is groundless as the Named Law Firms note that this alleged "notice" was not provided until May 2010, long after

the majority of the settlement process had been completed. Moreover, Plaintiffs neglect to inform the Court that many of the Named Law Firms responded to Plaintiffs by conveying the following message: their correspondence did not constitute notice and was thoroughly erred. *See* various responding correspondence from Named Law Firms attached hereto as Exhibit "B".

Moreover, it is fundamentally improper to name law firms representing personal injury claimants as defendants to the Plaintiff health plans' purported reimbursement claims where there is no contractual relationship between the law firms and the health plans. Law firms who are strangers to the health plan contract, who are not signatories to any subrogation agreement and who have not otherwise guaranteed any interest of a health plan simply cannot be held to any substantive liability on a health plan's claim. *See Hotel Employees & Restaurant Employees Internat'l. Union Welfare Fund v. Gentner*, 50 F.3d 719 (9th Cir.1994); *Southern Council of Industrial Workers v. Ford*, 83 F.3d 966 (8th Cir. 1996). With respect to such reimbursement claims, liability -- if any at all – would rest solely with the plan participant and only according to the specific terms of the particular health plan contract sought to be enforced. To the extent that a "constructive trust" might be imposed over certain identifiable client funds in an attorney's possession, at a minimum such relief necessarily depends on the existence of an actual claim against a specific individual according to the express terms of his or her particular health plan contract. [9]

Here, however, despite years of opportunity to investigate the bases for their claims, the Plaintiffs have not even attempted to bring actions against their individual members, nor have

---

[9]      Furthermore, it is the specific language employed by the relevant provisions of a particular health plan that determines the nature of any rights created by the plan contract and whether such plan-based claims are even cognizable under federal law. *See, e.g., Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006) (comparing and contrasting language of two health plans to determine that only one supported an equitable claim under ERISA).

they identified what specific contractual obligations are actually applicable to each such plan member under the terms of his or her particular plan, nor have they identified any particular client funds in the possession of any individual over which to impose a constructive trust. Allowing the Plan Plaintiffs to now assert such inchoate claims against their members' attorneys with respect to funds that may not even exist cannot help but be unduly prejudicial.

As a practical matter, the Named Law Firms note that virtually all of the alleged claimants are no longer clients of the respective Law Firms. As the Named Law Firms immediately distributed their respective clients' monies following the October 6, 2009 myocardial infarction (MI) final payment distribution and the June 14, 2010 ischemic stroke (IS) final payment distribution, the cases are now closed.

All parties involved in the Vioxx litigation, as well as this Honorable Court, have been preparing and readying for its resolution for many years. The Plan Plaintiffs have unduly prejudiced the Named Law Firms by, in essence, failing to take action in this lengthy period. Additionally, the Plaintiffs have failed to do any of the following: (1) provide notice of any specifically alleged reimbursement rights prior to the distribution of settlement funds; (2) identify claimants for which they have an alleged specific lien amount; and (3) to identify the plans they seek to enforce. After this prolonged period of inaction, during which both the distribution of final payments in the MI cases[10] and IS cases[11] occurred, Plaintiffs bring forth a motion which only now attempts to assert their alleged rights. Such action has denied the Named

---

[10]    The final payment for the myocardial infarction (MI) cases was issued by the Claims Administrator on October 6, 2009. The Named Law Firms released individual payments to their respective MI claimants immediately thereafter.

[11]    The final payment for the ischemic stroke (IS) cases was issued by the Claims Administrator on June 14, 2010. The Named Law Firms began to release individual payments to their respective IS claimants immediately thereafter.

Law Firms proper and timely notice of the nature of the complaint against them.[12] As noted by the Fifth Circuit, "[t]he touchstone of the inquiry under Rule 15(a) is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint." *Lowrey,* 117 F.3d at 246.

3.      <strong><u>Plaintiffs' Motion to Amend Should Be Denied Due to the Futility of the Proposed Amendment</u></strong>

For leave to amend to be granted by a Court, the proposed amendment must not be futile. *Id.* Plaintiffs do not clear this hurdle. Their motion suffers from significant deficiencies, many of which are the same or substantially similar to the deficiencies contained in Plaintiffs' June 2008 Motion for Preliminary Injunction.  *See In re Vioxx Prods. Liab. Litig., 2008 U.S. Dist. LEXIS 60269 (E.D. La. Aug. 7, 2008).* While courts in the Fifth Circuit have not specifically defined "futility", they have generally adopted the definition used by "sister circuits". These circuits interpret futility, "to mean that the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Federal Courts of Appeals have further defined an amendment as futile if it advances a claim or defense that is legally insufficient on its face. *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir. 1983).

As such, "[i]n assessing futility, the district court applies the same standard of legal sufficiency as it applies under Rule 12(b)(6)."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. N.J. 1997) (citing *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996)). *See also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (U.S. 2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

---

[12]      The Named Law Firms are further denied notice of the nature of Plaintiffs' complaints due to the procedural and substantive deficiencies described in Subsection (C), *infra.*

labels and conclusions…[the] factual allegations [made] must be enough to raise a right to relief above the speculative level….").

> a) <u>Plaintiffs' claims are futile as the authorities upon which they rely do not confer an affirmative duty on law firms to satisfy unperfected liens</u>

The Vioxx Settlement Agreement called for the appointment of a Lien Resolution Administrator ("LRA") in order to establish "procedures and protocols… to identify and resolve Governmental Authority Third Party Payor/Provider Statutory Liens." *See Settlement Agreement,* §12.1.8. The Agreement further required that all statutory liens be satisfied and discharged prior to the distribution of payments. *Id.* § 12.1.3.9.

In accordance with the requirements of the Settlement Agreement, the Lien Resolution Administrator properly communicated and negotiated the statutory liens of thousands of claimants with Medicare, Medicaid or other governmental lienholders. To the extent that Plaintiffs now seek to bring additional claims as contractors providing health insurance under Medicare-substitute plans, their attempt to characterize their alleged reimbursement rights as being "the same" as those of the federal Medicare program is baseless and directly contradicted by federal case law. In fact, the reimbursement rights of Medicare-substitute plans offered by private insurance companies are governed by separate statutes that provide no statutory cause of action and expressly limit whatever contractual reimbursement rights, if any, that an insurer might include in its policy.

Federal courts considering the issue have held that whatever the Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b)(2), may provide in terms of the Medicare program's reimbursement rights, it is applicable to the federal government, not to private Medicare-substitute plans, which are governed by separate statutes: 42 U.S.C. § 1395mm(e)(4) and 42 U.S.C. § 1395w-22(a)(4) (regulating "Medicare Advantage" and "Medicare+ Choice" plans,

respectively, under "Medicare Part C"). *See Care Choices HMO v. Engstrom*, 330 F.3d 786, 789

(6th Cir. 2003) and *Nott v. Aetna U.S. Healthcare, Inc.*, 303 F.Supp.2d 565, 570 (E.D.Pa. 2004).

These courts have specifically held that the relevant statutes create no private right of action at

all for a Medicare Part C insurer, either express or implied.  Indeed, as a threshold matter, there

is simply no mechanism for enforcing a claimed reimbursement right if the insurer has not

actually included a reimbursement provision in its contract.  *Id.*

      Here, the Plan Plaintiffs have not even alleged that their Medicare-substitute contracts in

fact contain any reimbursement provision at all.  On this deficiency alone any purported claim to

reimbursement must necessarily fail.  Yet even a contractual right to reimbursement, if one

exists, would be so limited by the governing statutes that it could not be enforced in this case.

Specifically, the statutes allow for a reimbursement claim against another insurer -- and not a

beneficiary – only where a "law, plan or policy" requires the other insurer to pay for the covered

service.  42 U.S.C. § 1395mm(e)(4)(A) and 42 U.S.C. § 1395w-22(a)(4)(A).  The statutes permit

a claim against a beneficiary only where the individual has actually received payment for the

medical expenses under such "law, plan or policy."  42 U.S.C. § 1395mm(e)(4)(B) and 42

U.S.C. § 1395w-22(a)(4)(B).

      Here, again the Plaintiff Plans have identified no "law, plan or policy" under which any

Vioxx claimant has received any compensation in respect of medical expenses covered by a

Medicare-substitute plan.  In fact, under the terms of the Settlement Agreement, whatever

recovery may have been obtained by any Vioxx claimant was expressly based on the injury

suffered, not the medical expenses that were incurred.  And of course, nothing in the governing

statutes authorizes a Medicare-substitute plan to bring any reimbursement action whatsoever

against a beneficiary's attorney.  *Cf.* 42 U.S.C. § 1395y(b)(2)(B)(iii) (authorizing "the United

States [to] recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity") .

In short, Plaintiffs here are private insurance carriers. As this Court has previously stated, "the public interest is not served by placing private healthcare providers such as the Plaintiffs on the same footing as governmental providers such as Medicare/Medicaid." *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, *69 (E.D. La. Aug. 7, 2008). Accordingly, there is no relief afforded to Plaintiffs under the Medicare statutes.

Plan Plaintiffs further allege that they are entitled to reimbursement under ERISA and FEHBA. Again, Plaintiffs fail to show that the affected claimants are subject to these statutes. *See* Plaintiffs' Corrected Memorandum of Law, p. 10.  Significantly, Plaintiffs at the outset fail to distinguish in any manner between the insured health plans they represent – which may be subject to modification by state insurance law, including anti-subrogation rules that prohibit reimbursement claims – and those plans that are fully self-funded and may rely on preemption of state law under ERISA.[13]  *See* 29 U.S.C. § 1144 (ERISA §514) and *FMC Corp. v. Holliday*, 498 U.S. 52, 58-61 (1990).  Obviously, to the extent that state anti-subrogation law may govern, any existing reimbursement claims would be precluded.

With respect to any existing plans that may actually be subject to ERISA, Plaintiffs rely on *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough,* 354 F.3d 348 (5th Cir. 2003). In *Bombardier*, an ERISA plan brought suit against a plan participant and the participant's law firm to obtain a constructive trust over settlement funds, for reimbursement of medical benefits. The *Bombardier* court set forth a three-part test to determine whether a claim qualified for relief: Does the Plan seek to recover funds (1) that are specifically

---

[13]     Plaintiffs also fail to indicate whether any of the plans at issue may be provided by state or local government employers, Indian tribe employers, or by church employers, all of which are specifically exempted from regulation by ERISA.  See 18 U.S.C. § 1002(32) and (33) and 18 U.S.C. § 1003 (b).

identifiable; (2) that belong in good conscience to the Plan; and (3) that are within the possession and control of the defendant beneficiary. *Id.* at 356.

Here, the facts are completely opposite to those of *Bombardier*. First, the funds are not specifically identifiable due to the fact that the Plan Plaintiffs have yet to properly identify the specific claimant, plans supposedly harmed, or the lien amounts that are sought. Secondly, there is no evidence that the funds belong in good conscience to the Plan. No information has been offered with respect to the specific plans and/or plan language they allegedly seek to enforce.[14] Third, the funds which Plaintiffs' seek are not within the possession and control of the Named Law Firms they wish to name as defendants. The funds have been distributed nearly one (1) year ago in many instances.  As such, Plaintiffs fail the *Bombardier* test.

Moreover, Plan Plaintiffs misinterpret the Supreme Court's decision in *Sereboff v. Mid Atlantic Services, Inc.,* 547 U.S. 356 (U.S. 2006).  In *Sereboff*, the plaintiffs were injured in an automobile accident. Shortly after suit was commenced, Mid Atlantic, the Sereboffs' health insurer, served the Sereboffs' counsel with numerous letters asserting a lien to a portion of the Sereboffs' recovery. *Id.* at 360. The Sereboffs then settled their lawsuit. All of the settlement proceeds were distributed to the Sereboffs by their attorney and none were provided to Mid Atlantic. *Id.*  As a result, Mid Atlantic filed suit to recover its expended funds from the Sereboffs. *Id.* By agreement, the Sereboffs set aside the claimed lien amount in an escrow account until such time as the litigation was resolved. *Id.* Ultimately, the Supreme Court affirmed the lower court's opinion which required the Sereboffs to repay the escrowed to funds to Mid Atlantic. *Id.*

---

[14]        As this Court recognized, due to variances in Plan language and/or annual amendments within a single ERISA plan, "there may be material differences as to the plan language at the time that any individual beneficiary took Vioxx, including whether the plan language differed pre- or post-label adjustment, or whether it contained issues related to proof of causation." *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, *46-47 (E.D. La. Aug. 7, 2008).

This Court previously recognized the *Sereboff* test for determining whether an insurance place's reimbursement language qualifies them for equitable relief in accordance with ERISA. *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, *34 (E.D. La. Aug. 7, 2008). The *Sereboff* test requires that the plan language identify: (1) "a particular fund, separate from the [defendants'] general assets"; and (2) "a particular share of that fund to which [the lienholder] was entitled – 'that portion of the total recovery which is due [the lienholder] for benefits paid.'"*Id. See also Sereboff, supra.*

Plan Plaintiffs fail both factors of the *Sereboff* test. First, the funds which Plaintiffs seek are not within the possession and control of the Named Law Firms and were in fact distributed many months ago. Secondly, the Plan Plaintiffs have not properly identified the particular funds to which they seek entitlement. Plaintiffs have continually failed to provide constructive notice to the Named Law Firms of the claimants, the plans and/or amounts at-issue. Without same, Plaintiffs are not entitled to the reimbursement they seek.

Yet even if these basic preconditions could be met, any reimbursement rights a self-funded ERISA plan might have are totally dependent on the specific language incorporated into the individual health plan contracts. ERISA itself provides no authority for subrogation or reimbursement rights, but merely requires that contract terms be enforced as written without modification by state insurance law. The wide variation among contract provisions among different companies' health plans makes it impossible to determine the enforceability and scope of the Plan Plaintiffs' claims without detailed review and analysis of each applicable plan provision. [15] In providing only one "exemplar" plan, Plaintiffs have failed to show any factual basis supporting the claims of all other plans.

---

[15]    The variances which may exist include, but are not limited to, whether the plans create any reimbursement rights against beneficiaries as opposed to only subrogation rights against third parties; whether they affirmatively

Similarly, with respect to health plans issued by insurers pursuant to contracts with the government under FEHBA, a prerequisite to any plan reimbursement right is that the health plan actually includes a reimbursement provision. Plaintiffs have provided nothing beyond their own conclusory statements that such provisions exist in their plans. Moreover, even if such provisions do in fact exist, the Supreme Court has indicated that their enforceability may be limited. In *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), the Court opted for a most narrow reading of FEHBA preemption:

> [The statute's] text does not purport to render inoperative *any and all* State laws that in some way bear on federal employee-benefit plans. 29 U.S.C. § 1144(a) (portions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan")…given that § 8902(m)(1) declares no federal law preemptive, but instead, terms of an OPM-BCBSA negotiated contract, a modest reading of the provision is in order. Furthermore, a reimbursement right of the kind Empire here asserts stems from a personal-injury recovery, and the claim underlying that recovery is plainly governed by state law. We are not prepared to say, based on the presentations made in this case, that under § 8902(m)(1), an OPM-BCBSA contract term would displace every condition state law places on that recovery.
>
> As earlier observed, the BCBSA Plan's statement of benefits links together the carrier's right to reimbursement from the insured and its right to subrogation. Empire's subrogation right allows the carrier, once it has paid an insured's medical expenses, to recover directly from a third party responsible for the insured's injury or illness. Had Empire taken that course, no access to a federal forum could have been predicated on the OPM-BCBSA contract right. The tortfeasors' liability, whether to the insured or the insurer, would be governed not by an agreement to which the tortfeasors are strangers, but by state law, and § 8902(m)(1) would have no sway.
>
> In sum, the presentations before us fail to establish that §8902(m)(1) leaves no room for any state law potentially bearing

---

and unambiguously abrogate the made-whole and/or common-fund doctrines; whether they provide for first-priority status of their claim; whether they impose any conditions or limitations on plan recovery rights; whether they sufficiently limit recovery rights to an identified fund rather than creating a general obligation; and whether they include submission to state-law recovery rules.

> on federal employee-benefit plans in general, or carrier-
> reimbursement claims in particular.

*Id.* at 2136. (Internal citations omitted). Thus, the Supreme Court has suggested that state law

recovery rules may operate as a defense to reimbursement claims of a FEHBA-governed plan.

**b)**       <u>The case law relied upon by Plaintiffs is inapplicable</u>

The cases cited by Plaintiffs in support of their motion are completely inapplicable to the

facts here. As described *supra*, the Vioxx litigation was a mass tort, multi-district litigation

which involved thousands of claimants while the cases generally cited by Plaintiffs involve

individual claims. *See* Plaintiffs' Corrected Memorandum of Law. In the primary case cited,

Plaintiffs' counsel was made aware of the lienholder's alleged interest(s) prior to the resolution

of the claim and distribution of funds, but failed to protect same. *Longaberger Co. v. Kolt*, 586

F.3d 459 (6th Cir. 2009).[16] In *Longaberger*, the facts indicate that the plaintiff attorney was put

on notice of the lienholders' interests on at least three (3) separate occasions. *Id.* at 462.

Additionally, the *Longaberger* opinion reflects that the attorney went so far as to attempt to

negotiate the lien on behalf of his client prior to the conclusion of the underlying lawsuit and

prior to the distribution of funds. *Id.* Only then was the attorney deemed to be responsible for the

lienholder's interest.

*Longaberger* is not even remotely comparable to the present facts. As detailed herein, the

Plaintiffs have continuously failed to provide notice of their alleged interest(s) in this matter to

claimants or the Named Law Firms. Plaintiffs noticeably gloss over this subject in its motion by

stating that "their attorneys have received several notices…", but the record shows otherwise.

*See* Plaintiffs' Corrected Memorandum of Law, p. 15. A letter from a third-party insurance plan

administrator which lists plaintiff names and then <u>separately</u> lists the insurance companies that it

---

[16]       As detailed *supra*, Plaintiffs similarly misinterpret the *Sereboff* case, as the lienholder in *Sereboff* perfected
its lien prior to settlement and distribution.

represents does not constitute adequate notice.  *See* Plaintiffs' October 2008 correspondence attached hereto as Exhibit "C". The Named Law Firms had no proper knowledge of the Plaintiffs' alleged subrogation interest(s) and, therefore, no *Longaberger* obligation attached.

### D.      The Public Interest Is Best Served By Denial Of Plaintiffs' Motion

The Vioxx Litigation was one of the largest mass torts in history.  The litigation involved approximately 48,500 plaintiffs with cases pending in both Federal and State jurisdictions.  *See* Section I, *supra.*   The settlement was also exceptional in its size and scope.  As part of this settlement, a truly unique and one-of-a kind private lien resolution program, commonly known and referred to herein as the PLRP, was established to satisfy private insurance health care subrogation interests.  This Court strongly encouraged the development of the PLRP and issued multiple Orders requiring all counsel to advise their clients of same. As indicated by Exhibit "A", the Named Law Firms have satisfied every obligation required of them by this Court.

An unprecedented 25,000 claimants voluntarily enrolled in the PLRP and the participating plans were paid millions as a result.  The PLRP has been a huge success. It seems that even Plan Plaintiffs would have to agree with the success of the plan, given the Affidavit of Professor Glenn Alan Melnick submitted in support of their initial Preliminary Injunction request.  *See* Rec. Doc. 14640-4, AvMed Pl.'s Mot. TRO & Prelim. Inj., Melnick Aff. ¶¶ 28-30. Professor Melnick performed a statistical analysis and it was his opinion that the AvMed Plaintiffs have provided Vioxx-related healthcare benefits ranging from 15,400 claimants to 17,604 claimants.  *Id.* This means that more claimants enrolled in the PLRP than the Plaintiffs originally estimated were provided with Vioxx-related healthcare benefits.

By filing this motion, Plaintiffs seek to impose a duty on counsel that would cripple mass tort resolution. If Plan Plaintiffs obtain the relief sought, counsel in future mass litigations will feel compelled to hold all funds for some indefinite period of time just in case a dormant private

- 21 -

insurer elects to bring an action against counsel years after settlement and distribution of funds. This cannot be the desired effect of our justice system.

As stated by this Honorable Court, "the public interest would be far better served by requiring the private health insurance companies to devise a more effective means for identifying their own insureds against whom they seek to assert a claim." *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, *69-70 (E.D. La. Aug. 7, 2008). Nor does Plaintiffs' motion encourage parties interested in resolving a long-standing litigation through settlement. As this Court noted, "Requiring the negotiating parties to resolve all private, non-statutory healthcare liens prior to disbursement would have shifted a burden of such magnitude onto the parties that it could have potentially frustrated settlement discussions". *Id.* at *69.

        **E.**    **Plaintiffs' Motion For A Preliminary Injunction Imposing A Constructive Trust   And Prohibiting Distribution Of Identified Settlement Funds Should Be Denied**

For the reasons set forth above, Plaintiff's Motion for Leave to Amend should fail.  As Plaintiffs' ability to amend its Complaint to include the Named Law Firms as Defendants should be denied, their accompanying Motion for Preliminary Injunction is moot and untimely.

## IV.   **CONCLUSION**

As justice does not require that Plaintiffs be granted leave to amend their pleadings,

Plaintiffs' Motion for Leave to Amend their First Amended Complaint should be **DENIED**.

Subsequently, Plaintiffs' Motion for Preliminary Injunction is moot and should be **DENIED**.

Respectfully submitted,

Sol H. Weiss, Esquire
Gregory S. Spizer, Esquire
ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.
1710 Spruce Street
Philadelphia, PA 19103
Telephone: (215)735-1130
Facsimile: (215) 875-7722

Turner W. Branch, Esquire
Brent M. Ferrel, Esquire
BRANCH LAW FIRM
2025 Rio Grande Boulevard, NW
Albuquerque, NM 87104
Telephone: (800) 243-3500
Facsimile: (713) 224-1622

Harry M. Roth, Esquire
Christopher Placitella, Esquire
COHEN, PLACITELLA & ROTH, P.C.
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 567-3500
Facsimile: (215) 567-6019

Robert T. Dassow, Esquire
HOVDE, DASSOW & DEETS, LLC
One Meridian Plaza
10585 North Meridian Street, Suite 205
Indianapolis, IN 46290
Telephone: (317) 818-3100
Facsimile: (317) 818-3111

Christopher P. Johnson, Esquire
KASOWITZ, BENSON, TORRES
& FRIEDMAN, LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Lee Balefsky, Esquire
Michelle L. Tiger, Esquire
KLINE & SPECTER
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-0420
Facsimile: (215) 735-0960

W. Mark Lanier, Esquire
Richard D. Meadow, Esquire
THE LANIER LAW FIRM
126 East 56th Street, Tower 56, 6th Floor
New York, NY 10022
Telephone: (212) 421-2800
Facsimile: (212) 421-2878

James J. Pettit, Esquire
LOCKS LAW FIRM, LLC
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08002
Telephone: (856) 663-8200
Facsimile: (856) 661-8400


David S. Ratner, Esquire
MORELLI RATNER, PC
95 Third Avenue
New York, NY 10022
Telephone: (212) 751-9800
Facsimile: (212) 751-0046


Edward Seglias, Esquire
Edward T. DeLisle, Esquire
COHEN SEGLIAS PALLAS
GREENHALL & FURMAN, PC
United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA  19103
Telephone (215) 564-1700
Facsimile: (267) 238-4418


Glenn Zuckermann, Esquire
WEITZ & LUXENBERG, P.C.
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Telephone: (856) 755-1115
Facsimile: (856) 755-1995

# EXHIBIT "A"

## AFFIDAVIT OF ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C. ("ANAPOL")

The undersigned attorney, being duly sworn according to law, hereby deposes and says that the following actions were undertaken in order to properly and fully inform our clients of the Vioxx Private Lien Resolution Program ("PLRP"):

1.     At the January 22, 2009 Vioxx Status Conference, the PLRP was announced. A January 30, 2009 email to counsel detailed the PLRP's terms and enrollment procedures.  Within one week of receiving this email, Anapol forwarded correspondence to all of our Vioxx clients as well as our co-counsel to explain the lien program. Materials from The Garretson Law Firm were included with the correspondence to further describe the PLRP. In addition, Anapol advised its clients that two (2) telephone conferences would be conducted where clients would have the opportunity to receive additional information about the PLRP.

2.     On February 18, 2009 and February 19, 2009, Anapol conducted the aforementioned telephone conferences. Those clients who called the toll-free number heard details about the lien program, its terms and benefits, as well as the enrollment requirements and deadline. [1]

3.     During late February, 2009 and early March, 2009, Anapol attorney Gregory S. Spizer, had numerous telephone conversations with individual clients in order to address specific concerns.

4.     On April 23, 2009, counsel was advised via an email from the Vioxx Settlement's Claims Administrator that the enrollment deadline for the PLRP was extended until May 29, 2009.

5.     During the week of April 27, 2009, Anapol sent correspondence to all Vioxx clients who did not enroll in the PLRP. Clients were advised of the extension and the additional opportunity to enroll in the lien program.

---

[1]     The original enrollment deadline was March 20, 2009.

6.      Following this second correspondence, Gregory Spizer again had several phone calls with individual clients to discuss the lien program.

7.      On October 9, 2009, this Honorable Court issued Pre-Trial Order 54. Attached to PTO 54 as Exhibit "F" was a list of claimants who had not enrolled in the PLRP. [2]

8.      Following the issuance of this Order, Anapol took steps to make sure that those clients who were identified on Exhibit "F" were aware of the PLRP and that there was still an opportunity to enroll in the program.

9.      Specifically, letters were sent to each non-enrolled client to inform them of the last opportunity to enroll. Anapol attorney Amber Racine also personally spoke with a number of non-enrolled clients listed on Exhibit "F" to again inform them of the PLRP.

10.      After taking all of these steps, Anapol signed and submitted the Certification of Compliance as required by PTO 54. The Certification was only to be signed by those attorneys who has advised their clients of the PLRP. A true and correct copy of Anapol's signed Certification is attached to this Affidavit.

11.      On January 29, 2010, counsel was advised that there was one final opportunity for ischemic stroke (IS) cases to enroll in the PLRP.

12.      On or about February 5, 2010, Anapol sent correspondence to all non-enrolled IS claimants advising them of this final opportunity to enroll in the PLRP.

---

[2]      As noted in the Named Law Firms' Memorandum of Law, Exhibit "F" contained numerous errors.

As described herein, Anapol satisfied all obligations required by this Honorable Court, the Master Settlement Agreements and all other rules, regulations and Orders.

Gregory S. Spizer, Esquire

Dated: 20 July 2010

Sworn to me and subscribed
before me this 20th day
of July          , 2010.

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Linda E. Kolla, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires March 31, 2012
Member, Pennsylvania Association of Notaries

*In Re: VIOXX Products Liability Litigation*
MDL No. 1657

## CERTIFICATION BY PRIMARY COUNSEL REGARDING WRITTEN NOTICE
## TO CLIENTS OF THE PRIVATE LEIN RESOLUTION PROGRAM

Principal Attorney: _GREGORY_    _STEVEN_    _SPIZER_
                               First                   Middle                Last

Firm Name: _Anapol, Schwartz_

In accordance with the Order Concerning Certain Health Plans' Motion For Preliminary Injunction entered on [DATE] in *In Re: Vioxx Products Liability Litigation*, MDL Docket No. 1657, I hereby certify as follows:

_X_        I have complied with Pretrial Order No. 48 and all Clients have been afforded a reasonable opportunity to opt into the Private Lien Resolution Program.

Signed this _15th_ day of _October_, 20_09_, under the PAINS and PENALTIES of perjury.

                                                _[signature]_
                                    NAME: _GREGORY S. SPIZER_

## AFFIDAVIT OF TURNER W. BRANCH

STATE OF NEW MEXICO      :
                                : ss

COUNTY OF BERNALILLO      :

    I, Turner W. Branch, being of lawful age and certainly over the age of 21 years, hereby make a statement voluntarily and of my own free volition, under oath in compliance with the laws of the State of New Mexico.

1.     I am an attorney, duly licensed to practice law and in good standing in the States of New Mexico, Colorado, Texas, Washington D.C. and in New Jersey by special motion of the New Jersey Supreme Court;

2.     Our law practice has a principal place of business in Albuquerque, New Mexico;

3.     I am an attorney at the Branch Law Firm;

4.     I have worked on hundreds of Vioxx cases at the Branch Law Firm;

5.     As such, I am intimately familiar with the Matters of Protocol and Practice in regards to Branch Law Firm's notification of Vioxx clients regarding current developments in the litigation, and particularly in regards to the notification each and every client of Branch Law Firm received concerning the Private Lien Resolution Program ("PLRP");

6.     An exemplar of such a communication is attached hereto and marked as Exhibit "A" and is incorporated herein by reference;

7.     Further, many of our clients were not participants in the PLRP due to fact that they received no compensation for their injuries or such minimal compensation that they fell under the protective provisions of the Master Settlement Agreement;

8.     Further, we never received proper notice of any lien claims prior to being served with the Complaint on Tuesday June 22, 2010 at approximately 4:04 PM (MDT);

9.     We feel that we have complied with the Court's instructions, the Master Settlement Agreement and all other rules, regulations and orders that have been disseminated to us and our clients and it is our firm belief that our clients have been compliant with the same;


FURTHER AFFIANT SAYETH NAUGHT.

Turner W. Branch

Subscribed and sworn to before me this 25ᵗʰ day of JUNE, 2010.

Notary Public

My Commission Expires: 12-04-2011

OFFICIAL SEAL
Patricia R. Sanchez
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 12-04-2011

*In Re: VIOXX Products Liability Litigation*
MDL No. 1657

## CERTIFICATION BY PRIMARY COUNSEL REGARDING WRITTEN NOTICE TO CLIENTS OF THE PRIVATE LEIN RESOLUTION PROGRAM

Principal Attorney:  Turner         W.         Branch
                     _____      _____    _____
                     First         Middle      Last

Firm Name:    Branch Law Firm, LLP
              _____

In accordance with the Order Concerning Certain Health Plans' Motion For Preliminary Injunction entered on [DATE] in *In Re: Vioxx Products Liability Litigation*, MDL Docket No. 1657, I hereby certify as follows:

   X
 _____     I have complied with Pretrial Order No. 48 and all Clients have been
              afforded a reasonable opportunity to opt into the Private Lien Resolution
              Program.

Signed this 13th day of October , 20 09 under the PAINS and PENALTIES of perjury.

                                   NAME: Turner W. Branch

## Affidavit of Cohen, Placitella & Roth, P.C.

Harry M. Roth, Esquire, being duly sworn according to law, hereby deposes and says that the following actions were undertaken in order to properly and fully inform our clients of the Vioxx Private Lien Resolution Program ("PLRP"):

1.       I have been chiefly responsible for coordination among clients enrolled in the the Vioxx Settlement Program and coordinating with co-counsel.

2.       We provided our co-counsel and clients of notices regarding the terms of the settlement program including the opportunity to enroll in the private lien resolution program.

3.       On September 19, 2009, this Honorable Court issued Pre-Trial Order 48 directing that primary counsel send notice to all claimants about the PLRP and affording the opportunity to opt into that program.

3.       By letter dated September 24, 2009, we provided those clients not enrolled in the PLRP with notice of and information regarding enrollment in the PLRP.

4.       On October 9, 2009, this Honorable Court issued Pre-Trial Order 54. Attached to PTO 54 as Exhibit "F" was a list of claimants who had not enrolled in the PLRP.

5.       Thereafter I forwarded Pre-trial Order 54 to all of our co-counsel who's clients were identified as not enrolled in the PLRP and requested confirmation that each was provided notice of and the opportunity to enroll in the PLRP and verified that individual clients of Cohen, Placitella & Roth, PC listed on exhibit F had received written notice of and the opportunity to opt into the PLRP.

6.       Additionally, I spoke with CPR clients who had questions about the PLRP program in response to my letter of September 24, 2009.

6.       After taking all of these steps, and receiving written confirmation from co-counsel that all clients who were not yet enrolled in the PLRP received notice in compliance with PTO 54, I signed and submitted the Certification of Compliance as required by PTO 54. The Certification was only to be signed by those attorneys who had advised their clients of the PLRP.

A true and correct copy of the Certification I executed on behalf of Cohen, Placitella & Roth is attached to this Affidavit.

   As described herein, Cohen, Placitella & Roth, P.C. satisfied all obligations required by this Honorable Court, the Master Settlement Agreements and all other rules, regulations and Orders.

Dated: _7/20/10_

                                           _____
                                           Harry M. Roth, Esquire

Sworn to me and subscribed
before me this _20th_ day
of _July_              , 2010.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARGARET RHEINSTADTER, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 11, 2011

_Margaret Rheinstadter_
**Notary Public**

*In Re: VIOXX Products Liability Litigation*
MDL No. 1657

## CERTIFICATION BY PRIMARY COUNSEL REGARDING WRITTEN NOTICE TO CLIENTS OF THE PRIVATE LEIN RESOLUTION PROGRAM

Principal Attorney:   Harry       M.       Roth

                             First           Middle          Last

Firm Name:      Cohen, Placitella & Roth, P.C.

In accordance with the Order Concerning Certain Health Plans' Motion For Preliminary Injunction entered on [DATE] in *In Re: Vioxx Products Liability Litigation*, MDL Docket No. 1657, I hereby certify as follows:

      X        I have complied with Pretrial Order No. 48 and all Clients have been afforded a reasonable opportunity to opt into the Private Lien Resolution Program.

Signed this 15 day of October, 2009 under the PAINS and PENALTIES of perjury.

                                      NAME:

## AFFIDAVIT OF HOVDE DASSOW & DEETS, LLC ("DASSOW")

The undersigned attorney, being duly sworn according to law, hereby deposes and says that the following actions were undertaken in order to properly and fully inform our clients of the Vioxx Private Lien Resolution Program ("PLRP"):

1. Beginning in May 2008, Dassow forwarded correspondence to all of our Vioxx clients enclosing the Claimant Education Material On Government Medical Liens/Obligations. *See Exhibit A.*  In the letter, Dassow requested that each client contact them immediately should they be aware of any liens and to return the signature page if the client is not aware of any liens at that time.

2. Dassow received close to a 100% response rate of signed and returned letters from their clients concerning their potential lien obligation.  Further, if the letter was not received, Nickie Eisele followed-up with letters and phone calls.

3. Since that time, Robert T. Dassow and his paralegal, Nickie Eisele, were in constant communication with the clients if at any time they were made aware of any alleged liens.

4. After the September 17, 2009 Case Management Conference, Dassow sent specific letters via Federal Express overnight mail to all of their clients enclosing the PLRP's terms and enrollment procedures.  Dassow even offered advice on the advantages and disadvantages in entering the program.  Numerous clients contacted Mr. Dassow for additional information in which he spoke to them directly concerning the same.  *See Exhibit B.*

5. Further, at the time of any distribution to the clients, the clients were again instructed and informed of the lien process and of the PLRP program.

6. On October 9, 2009, this Honorable Court issued PTO 54 which listed claimants who had not enrolled in the PLRP.

7. Following the issuance of this Order, Dassow took steps to ensure that those who were identified on Exhibit F to the PTO 54 were again reminded of their decision to not voluntarily enter the program by having the clients sign an acknowledgment at the time of settlement.  This acknowledgment was executed by every client.

AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.

Robert T. Dassow, Esq. #15145-64
Hovde Dassow & Deets, LLC

STATE OF INDIANA )
) SS:
COUNTY OF _Mano_ )

      Subscribed and sworn to before me, a Notary Public, in and for said County and State, this _15th_ day of _July_____, 2000.

My Commission Expires:
_6.26.16_____

County of Residence:
_Hamilton___

_____
Notary Public

_April N. Eisele_____
Printed Name

APRIL N. EISELE
Hamilton County
My Commission Expires
May 26, 2016

*In Re: VIOXX Products Liability Litigation*
MDL No. 1657

## CERTIFICATION BY PRIMARY COUNSEL REGARDING WRITTEN NOTICE TO CLIENTS OF THE PRIVATE LIEN RESOLUTION PROGRAM

Principal Attorney:            Robert T. Dassow

Firm Name:                     Hovde Dassow & Deets, LLC


In accordance with the Order Concerning Ceratin Health Plans' Motion for Preliminary Injunction entered on _____ in *In Re: Vioxx Products Liability Litigation*, MDL Docket No. 1657, I hereby certify as follows:

✓          I have complied with Pretrial Order No. 48 and all Clients have been afforded a reasonable opportunity to opt into the Private Lien Resolution Program.


Signed this 15th day of October, 2009, under the PAINS and PENALTIES of perjury.


Robert T. Dassow

## DECLARATION OF KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Christopher P. Johnson, Esq., declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a partner in the New York office of Kasowitz, Benson, Torres & Friedman LLP ("KBTF"), a proposed named firm in what I understand is Plaintiffs' pending motion to amend.  I submit this declaration in opposition to the Plaintiffs' motion to amend.  I make this certification based upon personal knowledge and/or upon information and belief derived from my review of firm records.

2.      On September 21, 2009, KBTF received email notification from the Vioxx Settlement Claims Administrator that Judge Eldon E. Fallon had entered Pretrial Order No. 48 ("PTO 48"), which required that written notice of the Private Lien Resolution Program ("PLRP") be sent to the Eligible Vioxx claimants that KBTF represents.

3.      The next day, September 22, 2009, to comply with PTO 48, KBTF mailed written notice of the PLRP to all 215 of our then-Eligible Vioxx claimants.

4.      On September 30, 2009, KBTF certified its compliance with PTO 48, via email to the Vioxx Lien Resolution Administrator, and attached a spreadsheet listing the names and Vioxx Claim Numbers of all Eligible claimants to whom we sent written notice pursuant to PTO 48.  That spreadsheet contained all of KBTF's then-Eligible claimants.

5.      On October 9, 2009, KBTF received email notification from the Vioxx Settlement Claims Administrator that Judge Fallon had entered Pretrial Order No. 54 ("PTO 54"), which enjoined Primary Counsel for any Claimants listed in Exhibit F to the Order from paying any part of the final 15% of settlement proceeds received in the Vioxx Program until such time as the

Primary Counsel certified in writing that: (1) it had complied with PTO No. 48; and (2) all represented Eligible Claimants had been afforded a reasonable opportunity to opt into the PLRP.

6.      Consistent with PTO 54, on October 12, 2009, KBTF submitted via email to the Vioxx Lien Resolution Administrator the Certification of Christopher P. Johnson Regarding Written Notice to Clients of the Private Lien Resolution Program for Kasowitz, Benson, Torres & Friedman, LLP.

7.      KBTF has, at all times, complied with this Court's instructions, the Vioxx Master Settlement Agreement, and all other applicable rules regarding lien resolution.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2010.

Christopher P. Johnson

*In Re: VIOXX Products Liability Litigation*
MDL No. 1657

## CERTIFICATION BY PRIMARY COUNSEL REGARDING WRITTEN NOTICE
## TO CLIENTS OF THE PRIVATE LEIN RESOLUTION PROGRAM

Principal Attorney: _Christopher_    _P._    _Johnson_
                     First         Middle        Last

Firm Name: _Kasowitz, Benson, Torres + Friedman LLP_

In accordance with the Order Concerning Certain Health Plans' Motion For Preliminary
Injunction entered on [DATE] in *In Re: Vioxx Products Liability Litigation*, MDL Docket
No. 1657, I hereby certify as follows:

√          I have complied with Pretrial Order No. 48 and all Clients have been
           afforded a reasonable opportunity to opt into the Private Lien Resolution
           Program.

Signed this _12th_ day of _October_, 2009, under the PAINS and PENALTIES of
perjury.

                              NAME: _Christopher P. Johnson_

### AFFIDAVIT OF KLINE & SPECTER, P.C.

The undersigned attorney, being duly sworn according to law, hereby deposes and says that the following actions were undertaken in order to properly and fully inform our clients of the Vioxx Private Lien Resolution Program ("PLRP"):

1.      At the January 22, 2009 Vioxx Status Conference, the PLRP was announced. A January 30, 2009 email to counsel detailed the PLRP's terms and enrollment procedures. On February 6, 2009, Kline & Specter, P.C. forwarded correspondence to all of our Vioxx clients to explain the lien program. Materials from The Garretson Law Firm were included with the correspondence to further describe the PLRP. The clients were encouraged to contact Kline & Specter, P.C. counsel by telephone or e-mail with any questions.

2.      Along with the informational material mailed to all clients on February 6, 2009, was a form on which each client was asked to indicate whether they would or would not participate in the PLRP. Telephone follow-up was made to those clients who did not promptly return the form indicating their choice.

3.      From early February, 2009 through March 6, 2009, Kline & Specter, P.C. attorneys, Lee B. Balefsky and Michelle L. Tiger had numerous telephone conversations with clients to address specific concerns regarding the PLRP.

4.      On April 23, 2009, counsel was advised via an email from the Vioxx Settlement's Claims Administrator that the enrollment deadline for the PLRP was extended until May 29, 2009.

5.      Following the April 23, 2009 notification, attorneys Lee B. Balefsky and Michelle L. Tiger again had numerous conversations with clients who had not yet decided whether to enroll in the PLRP.

6.     On October 9, 2009, this Honorable Court issued Pre-Trial Order 54. Attached to PTO 54 as Exhibit "F" was a list of claimants who had not enrolled in the PLRP. [1]

7.     Following the issuance of this Order, Kline & Specter, P.C. attorneys Lee B. Balefsky and Michelle L. Tiger reviewed the list of claimants to make sure that each client had either responded to the February 6, 2009 letter or had an opportunity to speak to either Mr. Balefsky or Ms. Tiger regarding their choice and that they were either properly enrolled in the PRLP or intentionally opting out.  All clients were accounted for at that time.

8.     After taking all of these steps, Kline & Specter, P.C. signed and submitted the Certification of Compliance as required by PTO 54. The Certification was only to be signed by those attorneys who has advised their clients of the PLRP.

As described herein, Kline & Specter, P.C. satisfied all obligations required by this Honorable Court, the Master Settlement Agreements and all other rules, regulations and Orders.

_____
Michelle L. Tiger, Esquire

Dated:  7/16/10

Sworn to me and subscribed
before me this 16th day
of July , 2010.

_____
**Notary Public**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DANIELLE SERAD, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 2, 2012

_____

[1]     As noted in the Named Law Firms' Memorandum of Law, Exhibit "F" contained numerous errors.

*In Re: VIOXX Products Liability Litigation*
MDL No. 1657

## CERTIFICATION BY PRIMARY COUNSEL REGARDING WRITTEN NOTICE TO CLIENTS OF THE PRIVATE LEIN RESOLUTION PROGRAM

Principal Attorney:   *Maura* _____ *Kolb* _____
First                    Middle                    Last

Firm Name:   *Lanier Law Firm* _____

In accordance with the Order Concerning Certain Health Plans' Motion For Preliminary Injunction entered on [DATE] in *In Re: Vioxx Products Liability Litigation*, MDL Docket No. 1657, I hereby certify as follows:

____X____   I have complied with Pretrial Order No. 48 and all Clients have been afforded a reasonable opportunity to opt into the Private Lien Resolution Program.

Signed this *12th* day of *October*, 2009, under the PAINS and PENALTIES of perjury.

NAME:   *Maura Kolb* _____

## AFFIDAVIT OF LOCKS LAW FIRM, LLC ("LOCKS")

The undersigned attorney, being duly sworn according to law, hereby deposes and says that the following actions were undertaken in order to properly and fully inform our clients of the Vioxx Private Lien Resolution Program ("PLRP"):

1.    At the January 22, 2009 Vioxx Status Conference, the PLRP was announced. A January 30, 2009 email to counsel detailed the PLRP's terms and enrollment procedures.  Locks forwarded correspondence to all of our Vioxx clients as well as our co-counsel to explain the lien program. Materials from The Garretson Firm were included with the correspondence to further describe the PLRP.

2.    Locks communicated with every client who advised us he/she had questions. Locks provided details about the PLRP, its terms, and related requirements.

3.    On April 23, 2009, counsel was advised via an email from the Vioxx Settlement's Claims Administrator that the enrollment deadline for the PLRP was extended until May 29, 2009.

4.    Locks again communicated with every client who advised us he/she had questions.

5.    On October 9, 2009, this Honorable Court issued Pre-Trial Order 54. Attached to PTO 54 as Exhibit "F" was a list of claimants who had not enrolled in the PLRP. [1]

6.    Following the issuance of this Order, Locks took steps to make sure that those clients who were identified on Exhibit "F" were aware of the PLRP and that there was still an opportunity to enroll in the program.

7.    After taking all of these steps, Locks signed and submitted the Certification of Compliance as required by PTO 54 on or about November 16, 2009. The Certification was only

---

[1]    As noted in the Named Law Firms' Memorandum of Law, Exhibit "F" contained numerous errors.

to be signed by those attorneys who had advised their clients of the PLRP. A true and correct copy of Lock's signed Certification is attached to this Affidavit.

    As described herein, Locks satisfied all obligations required by this Honorable Court, the Master Settlement Agreements and all other rules, regulations and Orders.

_____
James J. Pettit, Esquire

Dated: 7/15/2010

Sworn to me and subscribed before me this 15th day of July , 2010.

_____
**Notary Public**

PAMELA L. WELKER
A Notary Public of New Jersey
My Commission Expires October 26, 2012

*In Re: VIOXX Products Liability Litigation*
MDL No. 1657

## CERTIFICATION BY PRIMARY COUNSEL REGARDING WRITTEN NOTICE TO CLIENTS OF THE PRIVATE LEIN RESOLUTION PROGRAM

Principal Attorney: _James_____ _S._____ _Pehit_____
                     First        Middle          Last

Firm Name: _Leeks law firm, LLC_____

In accordance with the Order Concerning Certain Health Plans' Motion For Preliminary Injunction entered on [DATE] in *In Re: Vioxx Products Liability Litigation*, MDL Docket No. 1657, I hereby certify as follows:

_✓___  I have complied with Pretrial Order No. 48 and all Clients have been afforded a reasonable opportunity to opt into the Private Lien Resolution Program.

Signed this __10th__ day of __December__, 20__07__, under the PAINS and PENALTIES of perjury.

NAME: _James J. Pehit_____

## AFFADAVIT OF MORELLI RATNER PC

The undersigned attorney, being duly sworn according to law, hereby deposes and says that the following actions were undertaken in order to properly and fully inform our clients of the Vioxx Private Lien Resolution Program ("PLRP"):

1. At the January 22, 2009 Vioxx Status Conference, the PLRP was announced. A January 30, 2009 email to counsel detailed the PLRP's terms and enrollment procedures. Morelli Ratner PC thereafter forwarded correspondence to all of our Vioxx clients to explain the lien program. Materials from The Garretson Law Firm were included with the correspondence to further describe the PLRP. In addition, Morelli Ratner PC advised its clients that two (2) telephone conferences would be conducted where clients would have the opportunity to receive additional information about the PLRP.

2. On February 18, 2009 and February 19, 2009, Morelli Ratner PC conducted the aforementioned telephone conferences. The clients heard details about the lien program, its terms and benefits, as well as the enrollment requirements and deadline.[1]

3. Beginning on October 15, 2009, Morelli Ratner attorneys and paralegals had numerous telephone conversations with individual clients in order to address specific concerns.

4. On April 23, 2009, counsel was advised via an email from the Vioxx Settlement's Claims Administrator that the enrollment deadline for the PLRP was extended until May 29, 2009.

5. On October 9, 2009, this Honorable Court issued Pre-Trial Order 54. Attached to PTO 54 as Exhibit "F" was a list of claimants who had not enrolled in the PLRP.[2]

---

[1] The original enrollment deadline was March 20, 2009.

[2] As noted in the Named Law Firms' Memornadum of Law, Exhibit "F" contained numerous errors.

6. Following the issuance of this Order, Morelli Ratner PC took steps to ensure that those clients who were identified on Exhibit "F" were aware of the PLRP and that there was still an opportunity for them to enroll in the program.

7. Specifically, letters were sent to each non-enrolled client to inform them of the last opportunity to enroll.

8. After taking all of these steps, Morelli Ratner PC signed and submitted the Certification of Compliance as required by PTO 54. The Certification was only to be signed by those attorneys who had advised their clients of the PLRP. A true and correct copy of Morelli Ratner's signed Certification is attached to this Affadavit.

As described herein, Morelli Ratner PC satisfied all obligations required by this Honorable Court, the Master Settlement Agreements and all other rules, regulations and Orders.

David S. Ratner, Esq.

Dated: 7/8/10

Sworn to me and subscribed before me this 8 day of , 2010.

**Notary Public**

THOMAS BERNARD
NOTARY PUBLIC-STATE OF NEW YORK
No. 02BE6162891
Qualified in New York County
My Commission Expires March 19, 2011

# EXHIBIT "B"

# Rawlings&Associates PLLC

Post Office Box 49
LaGrange, Kentucky 40031-0049

One Eden Parkway
LaGrange, Kentucky 40031-8100

Telephone (502) 814-2139
Telecopier (502) 584-8580

Mark D. Fischer, Chairman
Attorney at Law

Offices Also In:
Florence, Kentucky
Los Angeles, California

MAY 11 2010

May 7, 2010

Sol Weiss, Esq.
Anapol Schwartz
1040 Kings Hwy N
Cherry Hill, NJ 08034

Dear Mr. Weiss:

My firm, Lowey Dannenberg Cohen & Hart, P.C., and Hagens Berman Sobol Shapiro LLP, represent the plans listed in the "Health Plan" column on the attached exhibit. You are receiving this notice because information we have indicates that you or your firm represent the Vioxx plaintiffs listed in the attached exhibit who did not participate in the Private Lien Resolution Program. We are amending our complaint in MDL 1657 to assert claims against your firm as trustee of settlement funds for these individuals.

If you or your firm have never represented one or more of the plaintiffs listed on the attached exhibit please contact me by noon Eastern Time on May 23rd, and provide me with information indicating which plaintiffs you do not represent and I will remove them from the complaint. Likewise, if any of the plaintiffs you or your firm represents or has represented on the attached exhibit have not received and will not receive any settlement proceeds related to their usage of Vioxx, please contact me by noon Eastern Time on May 23rd, and provide me with information indicating which plaintiffs will not receive settlement proceeds and I will remove them from our complaint.

Please be aware that this is not the final list liens our clients may assert. As additional Vioxx plaintiffs are identified which we believe you or your firm represents, we will notify you.

If you have any questions, please contact me at your convenience.

Sincerely,

RAWLINGS & ASSOCIATES PLLC

Mark D. Fischer

Enclosure

| CaseNo | CaseName | LawFirm | FirstName | LastName | LeinAmount | Health Plan |
|---|---|---|---|---|---|---|
| REDACTED | | Anapol Schwartz | | | $450,336.71 | BCBSFL |
| | | Anapol Schwartz | | | $6,308.55 | BCBSNC |
| | | Anapol Schwartz | | | $566.93 | BCBSNC |
| | | Anapol Schwartz | | | $21,760.85 | BCBSNC |
| | | Anapol Schwartz | | | $57,026.62 | BCBSNC |
| | | Anapol Schwartz | | | $61,831.50 | BCBSRI |
| | | Anapol Schwartz | | | $6,288.20 | HCSC |
| | | Anapol Schwartz | | | $128,881.83 | HCSC |
| | | Anapol Schwartz | | | $1,062.53 | HealthNet |
| | | Anapol Schwartz | | | $246,969.41 | HealthNet |
| | | Anapol Schwartz | | | $15,369.87 | HMSA |
| | | Anapol Schwartz | | | $103,327.28 | Humana |
| | | Anapol Schwartz | | | $7,073.20 | Priority Health |
| | | Anapol Schwartz | | | $240,312.57 | United Healthcare |
| | | Anapol Schwartz | | | $220,143.88 | United Healthcare |
| | | Anapol Schwartz | | | $55,502.59 | United Healthcare |

Anapol Schwartz

$756,510.86 | United Healthcare

$2,379,273.38



**A T T O R N E Y S   A T   L A W**

Sol H. Weiss, Esquire
1710 Spruce Street
Philadelphia PA 19103
sweiss@anapolschwartz.com

(215) 735-2098 Direct Dial
(215) 875-7701 Direct Fax

May 21, 2010

Mark D. Fischer, Esquire
Rawlings & Associates PLLC
One Eden Parkway
LaGrange, Kentucky 40031

**Re:    Vioxx**

Dear Mark:

Kindly accept this letter as a response to yours of May 7, 2010. Your letter does not provide qualified notice of your clients' alleged subrogation interests. See specifically our November 14, 2008 letter in response to your October 2008 form letter which simply contained a list of health insurance companies and a separate list of Vioxx plaintiffs. You did not respond to same.

Your May 7th letter suffers from the same deficiencies: it is not notice and requires no further response from us. However, without confirming your proposed claim and without waiving any right or position asserted above, we respond as follows:

-   Our firm does not represent ███████████████. While we filed the case, we are not the law firm representing this claim in the settlement.

-   Both the ████████████████████████████████, cases were included with your May 7th correspondence. However, both ████████ ████████ enrolled in the Vioxx Private Lien Resolution Program ("PLRP"). The Lien Administrator determined that both claimants' lien obligations are $0.00.

-   The ████████ matter, ████████████, is a "fixed payment", $5,000 case. As private liens are being waived for the fixed payment cases, this should also be removed from your spreadsheet.

-   The ████████████████████, involves a claimant who essentially died at home. He was found non-responsive in his kitchen. An ambulance was called and he was transported to the hospital, but was pronounced dead on arrival. The bills from the ER visit are *de minimis* and certainly not $240,312.57 as identified in your letter. Moreover, United Healthcare, the plan who is now asserting a lien, did not pay these minor expenses. In addition, ████████ estate was opened and widely advertised in

Washington County, Pennsylvania following his passing.  If United Healthcare did have a lien with respect to ███████ which it did not, the time to act upon that lien was after the estate was opened and advertised.  As such, United Healthcare has no assertable lien in this matter.

In closing, our firm is not the constructive trustee of any settlement funds to which you or your clients allege to be lienholders.  In the event you claim otherwise in any Complaint or other pleading, we will vigorously defend ourselves and this letter puts you and your clients on notice of our intention to seek the recovery of any and all legal fees and costs which are incurred as a result of any litigation we need to defend.

Please be guided accordingly.  Thank you.


Very truly yours,

Sol H. Weiss


SHW:AMR

*VIA FACSIMILE AND REGULAR MAIL*

**Rawlings&Associates** PLLC

Post Office Box 49
LaGrange, Kentucky 40031-0049

One Eden Parkway
LaGrange, Kentucky 40031-8100

Telephone (502) 814-2139
Telecopier (502) 584-8580

Offices Also In:
Florence, Kentucky
Los Angeles, California

Mark D. Fischer, Chairman
Attorney at Law

June 8, 2010

JUN 1 0 2010

Sol Weiss, Esq.
Anapol Schwartz
1040 Kings Hwy N
Cherry Hill, NJ 08034

Dear Mr. Weiss:

My firm, Lowey Dannenberg Cohen & Hart, P.C., and Hagens Berman Sobol Shapiro LLP, represent the Blue Cross Blue Shield Association as listed in the "Health Plan" column on the attached exhibit. You are receiving this notice because information we have indicates that you or your firm represent the Vioxx plaintiffs listed in the attached exhibit who did not participate in the Private Lien Resolution Program. As mentioned in our letter of May 7, 2010, we are amending our complaint in MDL 1657 to assert claims against your firm as trustee of settlement funds for these individuals.

If you or your firm has never represented one or more of the plaintiffs listed on the attached exhibit, please contact me by noon Eastern Time on June 16 and provide me with information indicating which plaintiffs you do not represent, and I will remove them from the complaint. Likewise, if any of the plaintiffs you or your firm represents or have represented on the attached exhibit have not received and will not receive any settlement proceeds related to their use of Vioxx, please contact me by noon Eastern Time on June 16 and provide me with information indicating which plaintiffs will not receive settlement proceeds, and I will remove them from our complaint.

Please be aware that this is not the final list liens our clients may assert. As additional Vioxx plaintiffs are identified that we believe you or your firm represents, we will notify you.

If you have any questions, please contact me at your convenience.

Sincerely,

RAWLINGS & ASSOCIATES PLLC

Mark D. Fischer /es
Mark D. Fischer

Enclosure

| Case Name | Law Firm | First Name | Last Name | Lein Amount | Health Plan |
|---|---|---|---|---|---|
| | Anapol Schwartz | | | $68,800.58 | BCBS Association |
| | Anapol Schwartz | | | $15,191.78 | BCBS Association |
| | Anapol Schwartz | | | $3,186.54 | BCBS Association |
| | Anapol Schwartz | | | $7,954.89 | BCBS Association |
| | Anapol Schwartz | | | $67,229.13 | BCBS Association |
| | Anapol Schwartz | | | $14,957.08 | BCBS Association |
| | Anapol Schwartz | | | $63,919.48 | BCBS Association |
| | Anapol Schwartz | | | $8,884.75 | BCBS Association |
| | Anapol Schwartz | | | $18,555.27 | BCBS Association |
| | Anapol Schwartz | | | $22,206.38 | BCBS Association |

# Anapol Schwartz
### A T T O R N E Y S   A T   L A W

**Sol H. Weiss, Esquire**
1710 Spruce Street
Philadelphia PA  19103
sweiss@anapolschwartz.com

(215) 735-2098 Direct Dial
(215) 875-7701 Direct Fax

June 16, 2010

**VIA FACSIMILE (502) 584-8580**
Mark D. Fischer, Esquire
Rawlings & Associates PLLC
One Eden Parkway
LaGrange, Kentucky 40031

       **Re:**   **Vioxx**

Dear Mark:

     Kindly accept this letter as a response to yours of June 8, 2010.

     Your letter does not provide qualified notice of your clients' alleged subrogation interests. See specifically our November 14, 2008 letter in response to your October 2008 form letter which simply contained a list of health insurance companies and a separate list of Vioxx You did not respond to same.

     Your June 8th letter suffers from precisely the same deficiencies: it is not notice and requires no further response from us. However, without confirming your proposed claim and without waiving any right or position asserted above, we respond as follows:

-     Our firm does not represent ███████████████████. While we filed the case, we are not the law firm representing this claim in the settlement.

-     Both the ████████████████████████████████ cases were included with your June 8th correspondence.  However, both ██████████ ████ are now working with The Garretson Firm in order to have their liens satisfied under the terms of the Vioxx Private Lien Resolution Program ("PLRP").

In closing, as previously advised, our firm is not the constructive trustee of any settlement funds to which you or your clients allege to be lienholders.  In the event you claim otherwise in any Complaint or other pleading, we will vigorously defend ourselves and this letter puts your and your clients on notice of our intention to seek the recovery of any and all legal costs which are incurred as a result of any litigation we need to defend.

Please be guided accordingly.  Thank you.

Very truly yours,

Sol H. Weiss

SHW:jac

# Rawlings&Associates PLLC

Post Office Box 49
LaGrange, Kentucky 40031-0049

One Eden Parkway
LaGrange, Kentucky 40031-8100

Telephone (502) 814-2139
Telecopier (502) 584-8580

Offices Also In:
Florence, Kentucky
Los Angeles, California

Mark D. Fischer, Chairman
Attorney at Law

May 7, 2010

MAY 1 0 2010

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP.

David P. Matthews, Esq.
Kasowitz, Benson, Torres & Friedman LLP
700 Louisiana St., Ste. 2200
Houston, TX 77002

Dear Mr. Matthews:

My firm, Lowey Dannenberg Cohen & Hart, P.C., and Hagens Berman Sobol Shapiro LLP, represent the plans listed in the "Health Plan" column on the attached exhibit.  You are receiving this notice because information we have indicates that you or your firm represent the Vioxx plaintiffs listed in the attached exhibit who did not participate in the Private Lien Resolution Program.  We are amending our complaint in MDL 1657 to assert claims against your firm as trustee of settlement funds for these individuals.

If you or your firm have never represented one or more of the plaintiffs listed on the attached exhibit please contact me by noon Eastern Time on May 23rd, and provide me with information indicating which plaintiffs you do not represent and I will remove them from the complaint.  Likewise, if any of the plaintiffs you or your firm represents or has represented on the attached exhibit have not received and will not receive any settlement proceeds related to their usage of Vioxx, please contact me by noon Eastern Time on May 23rd, and provide me with information indicating which plaintiffs will not receive settlement proceeds and I will remove them from our complaint.

Please be aware that this is not the final list liens our clients may assert.  As additional Vioxx plaintiffs are identified which we believe you or your firm represents, we will notify you.

If you have any questions, please contact me at your convenience.

Sincerely,

RAWLINGS & ASSOCIATES PLLC

Mark D. Fischer

Enclosure

| CaseNo | CaseName | LawFirm | FirstName | LastName | LeinAmount | Health Plan |
|---|---|---|---|---|---|---|
| REDACTED | | Kasowitz, Benson, Torres & Fredman | | | $3,145,308.28 | BCBSFL |
| | | Kasowitz, Benson, Torres & Fredman | | | $123,846.98 | BCBSFL |
| | | Kasowitz, Benson, Torres & Fredman | | | $785.71 | BCBSNC |
| | | Kasowitz, Benson, Torres & Fredman | | | $100,082.49 | BCBSNC |
| | | Kasowitz, Benson, Torres & Fredman | | | $284,665.53 | Humana |
| | | Kasowitz, Benson, Torres & Fredman | | | $19,211.84 | United Healthcare |
| | | Kasowitz, Benson, Torres & Fredman | | | $295,827.38 | United Healthcare |

# Rawlings&Associates PLLC

MARK D. FISCHER, CHAIRMAN
ATTORNEY AT LAW

Post Office Box 49
LaGrange, Kentucky 40031-0049

One Eden Parkway
LaGrange, Kentucky 40031-8100

Telephone (502) 814-2139
Telecopier (502) 584-8580

Offices Also In:
Florence, Kentucky
Los Angeles, California

June 8, 2010

David P. Matthews, Esq.
Kasowitz, Benson, Torres & Friedman LLP
700 Louisiana St., Ste. 2200
Houston, TX 77002

JUN 0 9 2010

KASOWITZ, BENSON · · · · · ·

Dear Mr. Matthews:

My firm, Lowey Dannenberg Cohen & Hart, P.C., and Hagens Berman Sobol Shapiro LLP, represent the Blue Cross Blue Shield Association as listed in the "Health Plan" column on the attached exhibit. You are receiving this notice because information we have indicates that you or your firm represent the Vioxx plaintiffs listed in the attached exhibit who did not participate in the Private Lien Resolution Program. As mentioned in our letter of May 7, 2010, we are amending our complaint in MDL 1657 to assert claims against your firm as trustee of settlement funds for these individuals.

If you or your firm has never represented one or more of the plaintiffs listed on the attached exhibit, please contact me by noon Eastern Time on June 16 and provide me with information indicating which plaintiffs you do not represent, and I will remove them from the complaint. Likewise, if any of the plaintiffs you or your firm represents or have represented on the attached exhibit have not received and will not receive any settlement proceeds related to their use of Vioxx, please contact me by noon Eastern Time on June 16 and provide me with information indicating which plaintiffs will not receive settlement proceeds, and I will remove them from our complaint.

Please be aware that this is not the final list liens our clients may assert. As additional Vioxx plaintiffs are identified that we believe you or your firm represents, we will notify you.

If you have any questions, please contact me at your convenience.

Sincerely,

RAWLINGS & ASSOCIATES PLLC

Mark D. Fischer

Mark D. Fischer

Enclosure

| Case Name | Law Firm | First Name | Last Name | Lein Amount | Health Plan |
|---|---|---|---|---|---|
| | Kasowitz, Benson, Torres & Fredman | | | $8,882.49 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $9,856.86 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $12,211.27 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $9,390.50 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $73,260.62 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $28,291.85 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $333.26 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $302,652.80 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $6,842.24 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $9,599.88 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $7,573.35 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $14,010.86 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $15,199.58 | BCBS Association |

| Case Name | Law Firm | First Name | Last Name | lein Amount | Health Plan |
|---|---|---|---|---|---|
| | Kasowitz, Benson, Torres & Fredman | | | $80,312.21 | BCBS Association |
| | Kasowitz, Benson, Torres & Fredman | | | $315.44 | BCBS Association |

Page 1 of 1

## Miriam Benor

| | |
|---|---|
| **From:** | Robert C. Griffith [rg1@rawlingsandassociates.com] |
| **Sent:** | Wednesday, June 23, 2010 11:59 AM |
| **To:** | Miriam Benor |
| **Cc:** | Mark D. Fischer |
| **Subject:** | Vioxx |

Dear Ms. Benor,

I will be sending by encrypted e-mail the letter we discussed in our conversation today.  It and the other two letters already in your possession list lien amounts for Vioxx claimants that we believe your firm represents or represented.

Mark Fischer and I have discussed your firm's decision to disburse nearly all of your clients' settlement funds. Using the attachments to the three letters, please let us know the names of the Vioxx claimants that (a) Kasowitz represented and (b) received settlement funds from Kasowitz, so that we may pursue reimbursement claims against them rather than Kasowitz.

As to the remaining claimant ███████████, we will be assembling the information you requested and forwarding it to you shortly.  Just to verify, I believe you requested the relevant lien language from ██ ██████plan as well as a breakdown of the asserted liens.  Please let me know if you need anything else.

Very Truly Yours,

**Rob Griffith**
Rawlings & Associates PLLC
P. O. Box 49
1 Eden Pkwy.
LaGrange, KY  40031

Direct:  (502) 814-2157
Fax:  (502) 584-8580
Email:  rg1@rawlingsandassociates.com

- - - - - - - - - - - - - - - - - - - - - - - -
**IMPORTANT WARNING:** This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information is STRICTLY PROHIBITED.  If you have received this message in error, please notify us immediately and delete the related message.

7/1/2010

Message                                                                    Page 1 of 2

## Miriam Benor

**From:**    Miriam Benor
**Sent:**    Thursday, July 01, 2010 11:41 AM
**To:**      'Robert C. Griffith'
**Cc:**      Mark D. Fischer
**Subject:** RE: Vioxx

Mr. Griffith –

I write to follow up on the materials we requested for ████████████  We are still awaiting the itemization of the claimed charges as well as the relevant plan language.  Please send these as soon as possible as we are holding this client's settlement money.  Also, please send this third letter that you mentioned you had sent to this David Matthews person by pdf attachment so that we do not have to register for a website with which we are not familiar in order to access it.

Thanks for your prompt attention to the above matters,
Miriam Benor


Miriam Benor, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Tel. (212) 508-1705
Fax (212) 835-5005
MBenor@kasowitz.com


          -----Original Message-----

**From:** Robert C. Griffith [mailto:rg1@rawlingsandassociates.com]
**Sent:** Wednesday, June 23, 2010 11:59 AM
**To:** Miriam Benor
**Cc:** Mark D. Fischer
**Subject:** Vioxx

Dear Ms. Benor,

I will be sending by encrypted e-mail the letter we discussed in our conversation today.  It and the other two letters already in your possession list lien amounts for Vioxx claimants that we believe your firm represents or represented.

Mark Fischer and I have discussed your firm's decision to disburse nearly all of your clients' settlement funds.  Using the attachments to the three letters, please let us know the names of the Vioxx claimants that Kasowitz represented and (b) received settlement funds from Kasowitz, so that we may pursue reimbursement claims against them rather than Kasowitz.

As to the remaining claimant ████████████, we will be assembling the information you requested and forwarding it to you shortly.  Just to verify, I believe you requested the relevant lien language from

7/1/2010

Message                                                                    Page 2 of 2

██████████ plan as well as a breakdown of the asserted liens.  Please let me know if you need
anything else.

Very Truly Yours,

**Rob Griffith**
Rawlings & Associates PLLC
P. O. Box 49
1 Eden Pkwy.
LaGrange, KY  40031

Direct:  (502) 814-2157
Fax:  (502) 584-8580
Email:  rg1@rawlingsandassociates.com

• • • • • • • • • • • • • • • • • • • • • • • •

**IMPORTANT WARNING**:  This message is intended for the use of the person or entity to which it is addressed and may contain information
that is privileged and confidential, the disclosure of which is governed by applicable law.  If the reader of this message is not the intended
recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination,
distribution or copying of this information is STRICTLY PROHIBITED.  If you have received this message in error, please notify us immediately
and delete the related message.

7/1/2010

# EXHIBIT "C"

# Rawlings&Associates PLLC

MARK D. FISCHER, CHAIRMAN
ATTORNEY AT LAW

Post Office Box 49
LAGRANGE, KENTUCKY 40031-0049

One Eden Parkway
LAGRANGE, KENTUCKY 40031-8100

TELEPHONE (502) 814-2139
CELLULAR (502) 387-8524
TELECOPIER (502) 584-8580

OFFICES ALSO IN:
FLORENCE, KENTUCKY
LOS ANGELES, CALIFORNIA

October 30, 2008

Sol Weiss, Esq.
Anapol, Schwartz, Weiss, Cohan,
Feldman & Smalley, P.C.
402 Park Boulevard
Cherry Hill, NJ 08002

Re:  Reimbursement Notice

Dear Mr. Weiss:

Rawlings & Associates PLLC, Lowey Dannenberg Cohen & Hart PC, and Susman Godfrey LLC, represent the health plans listed on Attachment A to this letter (the "Health Plans"). One or more of our listed Health Plan clients have identified Vioxx pharmacy and/or medical payments made on behalf of their members listed on Attachment B to this letter.

You are receiving this notice because court records indicate that you or your firm have appeared as counsel of record on behalf of the named individuals listed on Attachment B. **You and your firm are on direct notice that the Health Plans' have subrogation and/or reimbursement claims regarding their members on the attached list, to the extent of pharmacy or medical benefits paid, and that such subrogation and/or reimbursement rights will survive any purported release given by any party other than the Health Plans.  You are on further direct notice not to settle, release, compromise, or in any other manner impede or impair the Health Plans' subrogation or reimbursement rights.**

Attached is the "AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO 45 C.F.R. § 164.508 (HIPAA)", required by Pretrial Order 35, MDL Docket No. 1657, In re: VIOXX PRODUCTS LIABILITY LITIGATION.

Any request from you or your firm for information regarding Health Plan pharmacy payments, medical payments, contractual policy language, or any other information regarding heath care coverage information related to the members listed on Attachment B, must include a fully completed Authorization.  To request such information, please fill out all sections of the Authorization COMPLETELY, have it signed by your client, and send it along with your request to:

> Rawlings & Associates, PLLC
> Attn.  Laurette C. Smith
> One Eden Parkway
> LaGrange, KY 40031

**Rawlings&Associates** PLLC

Sol Weiss, Esq.
October 30, 2008
Page 2

Due to HIPAA constraints, we will not release any information of any nature to you or your firm or answer any questions specific to the members listed on Attachment B, prior to receiving the required, fully completed, Authorization.

Please note that the individuals listed in Attachment B are not a comprehensive list of those individuals whom you may represent and on behalf of whom our clients may have paid Vioxx-related pharmacy and/or medical benefits. If you are aware of any additional clients represented by you or your firm who are participating in any Vioxx-related settlement and have received health benefits from any of the Health Plans, you are similarly on notice as to those clients of the subrogation/reimbursement rights discussed above.

We are currently litigating the issue of whether we will be entitled to receive complete identifying information for Vioxx settlement participants on behalf of whom our clients may have paid Vioxx-related pharmacy and/or medical benefits.

Sincerely,

RAWLINGS & ASSOCIATES, PLLC

Mark D. Fischer

/lcs
cc:     Brown Greer, PLC.

*ATTACHMENT A*

AETNA, Inc.
Anthem Blue Cross and Blue Shield
  (in the following states: CO, CT, IN, KY, ME, MO, NH, NV, OH, VA, WI)
Anthem Blue Cross Life and Health Insurance Company
Anthem Health Insurance Company of Nevada
Anthem Health Plans of Kentucky, Inc.
Anthem Health Plans of Maine, Inc.
Anthem Health Plans of New Hampshire, Inc.
Anthem Health Plans of Virginia, Inc. f/k/a Trigon Insurance Company, Inc.
Anthem Health Plans, Inc.
Anthem HMO of Nevada
Anthem Insurance Companies, Inc.
Anthem Prescription Management, LLC
Arkansas Blue Cross and Blue Shield
AvMed
BC Life and Health Insurance Company
Blue Cross and Blue Shield Association
Blue Cross and Blue Shield of Florida
Blue Cross and Blue Shield of Georgia, Inc.
Blue Cross and Blue Shield of Kansas, Inc.
Blue Cross and Blue Shield of Massachusetts
Blue Cross and Blue Shield of Mississippi
Blue Cross and Blue Shield of Montana
Blue Cross and Blue Shield of North Carolina
Blue Cross and Blue Shield of Rhode Island
Blue Cross and Blue Shield of Tennessee
Blue Cross and Blue Shield of Vermont
Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.
Blue Cross Blue Shield of Hawaii
Blue Cross Blue Shield of Kansas City
Blue Cross Blue Shield of North Dakota
Blue Cross Blue Shield of Wisconsin
Blue Cross Life & Health Insurance Company
Blue Cross of California
Blue Cross of California Partnership Plan
Blue Shield of California
CareFirst BlueCross BlueShield
CIGNA HealthCare, Inc.
Claims Management Services, Inc.
Community Insurance Company
Compcare Health Services Insurance Corporation
Coventry Health Care
Empire Blue Cross Blue Shield
Empire HealthChoice Assurance, Inc.
Empire HealthChoice HMO, Inc.
Golden Rule Insurance Company
Golden West Health Plan, Inc.
Government Employees Health Association, Inc.
Great-West Life & Annuity Insurance Company
Harvard Pilgrim Health Care
Hawaii Medical Service Association
Health Net, Inc.
HealthKeepers, Inc.
HealthLink HMO
HealthLink, Inc.
HealthPartners, Inc.
Healthy Alliance Life Insurance Company

*ATTACHMENT A*

Highmark West Virginia Inc.
Highmark, Inc.
HMO Colorado, Inc.
HMO Missouri, Inc.
Horizon Blue Cross Blue Shield
Humana Inc.
Inova Health Care Services
Inova Health System Employee Health Benefits Plan
Johns Hopkins HealthCare
KPS Health Plans
Machigonne, Inc.
Matthew Thornton Health Plan, Inc.
Medica Health Plans
Medical Mutual of Ohio
Mid Atlantic Medical Services, LLC
Mountain State Blue Cross Blue Shield
Noridian Mutual Insurance Co.
OneNation Benefit Administrators, Inc.
OneNation Insurance Company
Oxford Health Plans, LLC
PacifiCare Health Systems, LLC
Peninsula Health Care, Inc.
Premera Blue Cross
Priority Health
Priority Health Care, Inc.
QualChoice Select, Inc.
Regence BlueCross BlueShield of Oregon
Regence BlueCross BlueShield of Utah
Regence BlueShield
Regence BlueShield of Idaho
RightCHOICE Insurance Company
RightCHOICE Managed Care, Inc.
Rocky Mountain Health Care Corporation
Rocky Mountain Hospital and Medical Service, Inc.
The Guardian Life Insurance Company of America
Trustmark Insurance Company and Trustmark Life Insurance
Tufts Associated Health Maintenance Organization, Inc.
UniCare
UniCare Health Benefit Services of Texas, Inc.
UniCare Health Insurance Company of Texas
UniCare Health Insurance Company of the Midwest
UniCare Health Plan of Kansas, Inc.
UniCare Health Plan of Oklahoma, Inc.
UniCare Health Plan of South Carolina, Inc.
UniCare Health Plan of West Virginia, Inc.
UniCare Health Plans
UniCare Health Plans of Texas, Inc.
UniCare Health Plans of the Midwest, Inc.
UniCare Life & Health Insurance Company
UniCare of Texas Health Plans, Inc.
United HealthCare Services, Inc.
Verizon Communications, Inc.
Vista Healthplan, Inc.
WellChoice Insurance of New Jersey, Inc.
WellChoice New Jersey
Wellmark Health Plan of Iowa
Wellmark of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue Shield of South Dakota
Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa
WellPoint, Inc.

ATTACHMENT B

1.
2.
3.
4.
5.
6.
7.
8.
9.
10.
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.
29.
30.
31.
32.
33.
34.
35.
36.
37.
38.
39.



40.
41.
42.
43.
44.
45.
46.
47.
48.
49.
50.
51.
52.
53.
54.
55.
56.
57.
58.
59.
60.
61.
62.
63.
64.
65.
66.
67.
68.
69.
70.
71.
72.
73.
74.
75.
76.
77.
78.
79.
80.
81.



82.
83.
84.
85.
86.
87.
88.
89.
90.
91.
92.
93.
94.
95.
96.
97.
98.
99.
100.
101.
102.
103.
104.
105.
106.
107.
108.
109.
110.
111.
112.
113.
114.
115.
116.
117.
118.
119.
120.
121.
122.
123.



124.
125.
126.
127.
128.
129.
130.
131.
132.
133.
134.
135.
136.
137.
138.
139.
140.
141.
142.
143.
144.
145.
146.
147.
148.
149.
150.
151.
152.
153.
154.
155.
156.
157.
158.
159.
160.
161.
162.
163.
164.
165.



166.
167.
168.
169.
170.
171.
172.
173.
174.
175.
176.
177.
178.
179.
180.
181.
182.
183.
184.
185.
186.
187.
188.
189.
190.
191.
192.
193.
194.
195.
196.
197.
198.
199.
200.
201.
202.
203.
204.
205.
206.
207.



208.
209.
210.
211.
212.
213.
214.
215.
216.
217.
218.
219.
220.
221.
222.
223.
224.
225.
226.
227.
228.
229.
230.
231.
232.
233.
234.
235.
236.
237.
238.
239.
240.
241.
242.
243.
244.
245.
246.
247.
248.
249.



250.
251.
252.
253.
254.
255.
256.
257.
258.
259.
260.
261.
262.
263.
264.
265.
266.
267.
268.
269.
270.
271.
272.
273.
274.
275.
276.
277.
278.
279.
280.
281.
282.
283.
284.
285.
286.
287.
288.
289.
290.
291.



292.
293.
294.
295.
296.
297.
298.
299.
300.
301.
302.
303.
304.
305.
306.
307.
308.
309.
310.
311.
312.
313.
314.
315.
316.
317.
318.
319.
320.
321.
322.
323.
324.
325.
326.
327.
328.
329.
330.
331.
332.
333.



334.
335.
336.
337.
338.
339.
340.
341.
342.
343.
344.
345.
346.
347.
348.
349.
350.
351.
352.
353.
354.
355.
356.
357.
358.
359.
360.
361.
362.
363.
364.
365.
366.
367.
368.
369.
370.
371.
372.
373.
374.
375.





**ANAPOL SCHWARTZ**

ATTORNEYS AT LAW

SOL H. WEISS, ESQUIRE
1710 SPRUCE STREET
PHILADELPHIA, PA 19103
SWEISS@ANAPOLSCHWARTZ.COM

ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.

DIRECT DIAL (215) 735-2098, FAX (215) 875-7701

November 14, 2008

Mark D. Fischer, Esquire
Rawlings & Associates PLLC
One Eden Parkway
LaGrange, KY 40031-0049

      *Re:*    *Vioxx Reimbursement Notice*

Dear Mark:

Anapol Schwartz does not acknowledge that your October 30, 2008 letter constitutes valid notice of any subrogation and/or reimbursement claim for any Health Plan listed on Attachment A. Further, years ago, our law firm contracted with the Garretson Firm to represent all of our Vioxx clients who may be obligated to satisfy governmental or private liens. We have discussed this letter with them and I understand Garretson has a dialogue with your or your colleagues. Finally, I am surprised that you would send out a letter with so many inaccuracies.

Very truly yours,

Sol H. Weiss

SHW/pm

cc:    Matt Garretson
      Jason Wolf
      Brown Greer

1710 Spruce Street
Philadelphia, PA 19103

230 N. Monroe Street
Media, PA 19063

1040 Kings Hwy. North, Suite 304
Cherry Hill, NJ 08034

146 N. 6th Street
Reading, PA 19601

209 State Street
Harrisburg, PA 17101

WWW.ANAPOLSCHWARTZ.COM
MAIN TEL. 215-735-1130 or TOLL FREE 866-735-ASWC (2792)

## CERTIFICATE OF SERVICE

The undersigned attorneys hereby certify that a true and correct copy of the foregoing Response and Memorandum in Opposition To Plaintiffs' Corrected Motion: (A) To Identify the Law Firms Representing Certain Eligible Plaintiffs in Place Of the "John Doe" Defendants; (B) To Add Federal Employee Health Benefits Act ("FEHBA") and Medicare Advantage Reimbursement Claims; (C) To Seal That Portion Of the Corrected Declaration Of Mark D. Fischer, Esq. that Contains Protected Health Information Under the Health Insurance Portability and Accountability Act Of 1996 ("HIPAA"); and (D) For a Preliminary Injunction Imposing a Constructive Trust and Prohibiting Distribution Of Identified Settlement Funds, was served on the following party via electronic mail and United States first class, certified mail:

Peter D. St. Phillip, Jr., Esq.
Lowey Dannenberg Cohen & Hart, P.C.
One North Broadway, Suite 509
White Plains, NY 10601

Respectfully,

Sol H. Weiss, Esquire
Gregory S. Spizer, Esquire
ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.
1710 Spruce Street
Philadelphia, PA 19103
Telephone: (215)735-1130
Facsimile: (215) 875-7722

- 26 -

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

-------------------------------------------------x

| | | |
|---|---|---|
| AvMed Inc, et al. | : | CIVIL ACTION |
| Plaintiffs, | : | NO. 08-1633 |
| | : | |
| vs. | : | SECTION L, MAG. 3 |
| | : | |
| BrownGreer PLC, U.S. | : | HONORABLE ELDON E. FALLON |
| Bancorp, Inc. and John Does | : | HONORABLE DANIEL E. KNOWLES, III |
| Defendants. | : | |
| | : | In relation to: MDL No. 1657 |
| | : | |
| | : | In re: Vioxx Products Liability Litigation |

-------------------------------------------------x

**PROPOSED ORDER DENYING PLAN PLAINTIFFS' MOTION: (A) TO IDENTIFY THE LAW FIRMS REPRESENTING CERTAIN ELIGIBLE PLAINTIFFS IN PLACE OF THE "JOHN DOE" DEFENDANTS; (B) TO ADD FEDERAL EMPLOYEE HEALTH BENEFITS ACT ("FEHBA") AND MEDICARE ADVANTAGE REIMBURSEMENT CLAIMS; (C) TO SEAL THAT PORTION OF THE CORRECTED DECLARATION OF MARK D. FISCHER, ESQ. THAT CONTAINS PROTECTED HEALTH INFORMATION UNDER THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 ("HIPAA"); AND (D) FOR A PRELIMINARY INJUNCTION IMPOSING A CONSTRUCTIVE TRUST AND PROHIBITING DISTRIBUTION OF IDENTIFIED SETTLEMENT FUNDS**

The Court having considered Plaintiffs' Motion: (A) to identify the law firms representing certain eligible Plaintiffs in place of the "John Doe" Defendants; (B) to add Federal Employee Health Benefits Act ("FEHBA") And Medicare Advantage Reimbursement Claims; (C) to seal that portion of the Corrected Declaration of Mark D. Fischer, Esq. that contains protected health information under the Health Insurance Portability And Accountability Act Of 1996 ("HIPAA"); and (D) for a Preliminary Injunction imposing a constructive trust and prohibiting distribution of identified settlement funds; and the Named Law Firms Response in Opposition thereto; it is hereby ORDERED and DECREED that Plan Plaintiffs' Motion is DENIED in its entirety.

New Orleans, Louisiana, this _____ day or _____, 2010.


_____
Honorable Eldon E. Fallon
U.S. District Court Judge