UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:    VIOXX : | |
| Products Liability Litigation : | |
| : | MDL Docket No.: 1657 |
| THIS DOCUMENT RELATES TO : : | SECTION L |
| : | JUDGE FALLON |
| Gene Weeks v. Merck & Co., Inc., : | MAG. JUDGE KNOWLES |
| Case No.: 05-cv-4578 : | |
| : | Special Master Patrick A. Juneau |
| Attorney Fee Lien Dispute of : | |
| Maria D. Tejedor v. Gene Weeks : | |

## MOTION, RULE AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DISMISSING THE ATTORNEY FEE LIEN CLAIM OF MARIA D. TEJEDOR ARISING OUT OF THE SETTLEMENT BETWEEN MERCK AND PLAINTIFF GENE WEEKS

Plaintiff Gene Weeks, by and through his counsel Ronald R. Benjamin, hereby moves this Court pursuant to Fed.R.Civ.Pr. 56 for an order granting him summary judgment dismissing the attorney fee lien claim of his former counsel Maria D. Tejedor arising out of the settlement of the instant litigation between plaintiff and defendant Merck & Co., Inc. ("Merck").

### INTRODUCTION

It is respectfully submitted that because the Tejedor firm withdrew from representing Mr. Weeks, it is not entitled to any fee arising from the settlement of his Vioxx

injury claims against Merck. The Tejedor firm forfeited any fees to which it may have been entitled by discharging plaintiff as a client before the settlement award, nor can the firm receive a fee for any unauthorized work that was carried out regardless of whether the same was to benefit of the plaintiff since the firm had not only discharged plaintiff as a client, it was expressly told not to take any action on plaintiff's behalf, and ultimately made a motion in direct opposition to the one filed by the plaintiff to rescind his consent to the MSA.

Since the background regarding the Vioxx litigation has been described in numerous decisions by Judge Fallon the focus of the instant motion will turn directly to issues pertaining to the dispute presently before the Court. Plaintiff now moves for summary judgment dismissing the Tejedor claim for attorney fee lien payment, and turns to his statement of the relevant facts, including the facts that are not in dispute and entitle him to judgment as a matter of law.

## STATEMENT OF FACTS

Gene Weeks was injured at work in December of 1994 causing him damage to the cervical spine, and in August of 1999 was prescribed Vioxx which he ingested until July of 2001, and almost 2 ½ years later on March 5, 2004 sustained a heart attack that left him unable to work since that time. *4/21/2009 Affidavit of Plaintiff, annexed hereto as* **Exhibit A,** at *paras. 3-6.*

On March 4, 2005, Mr. Weeks entered into a written contingency retainer agreement with the law firm of Martinez, Manglardi, Diez-Arguelles & Tejedor (hereafter "Tejedor firm") in Florida with respect to his claim for personal injury stemming from his ingestion

of Vioxx. *(Retainer and Statement of Client Rights, annexed as "Exhibit A" to July 21, 2010 Plaintiff's Counsel, Maria Tejedor's, Memorandum in Support of Lien for Attorney's Fees and Costs.)* The aforesaid contingency retainer agreement was entered into in the State of Florida, and is governed by the rules of the Florida State Bar with respect to fee issues. *(Id., Statement of Client Rights, at p.3.)*

On October 5, 2005 the Tejedor firm filed a complaint naming Mr. Weeks as plaintiff against defendant Merck & Co., Inc., in this Court, and his action was subsequently consolidated with MDL 1657. *(Complaint, Weeks Document No. 1.)*

On November 9, 2007, a Master Settlement Agreement (MSA) was announced between Merck and the Negotiating Plaintiff's Counsel ("NPC"), under which Merck would pay some $4.85 billion to resolve Vioxx personal injury claims pending in MDL 1657 and state courts around the country. *(Exhibit B to Plaintiff's Counsel, Maria Tejedor's, Memorandum in Support of Lien for Attorney's Fees and Costs.)*

The MSA imposed obligations on retained counsel who sought to participate in the settlement including a requirement that they recommend to 100% of their clients to accept the terms of the MSA and that they withdraw from representing any client who does not accept the terms of the MSA. *(Id., MSA Section 1.2.8.1.)* Moreover, among the eligibility requirements for compensation under the MSA is included the requirement that a a claimant must demonstrate proximity by establishing ingestion of 30 pills of Vioxx within 60 days of his or her heart attack. *(Id., MSA Sec. 2.2, and MSA Exhibit 2.2.1.3.)* The fact of plaintiff's case did not change at any time during the time the Tejedor firm represented

him. To the contrary, plaintiff's injury was a heart attack that he suffered more than two (2) years after he last ingested Vioxx, and as such he was ineligible for compensation under the MSA criteria.

Despite the facts of his case, on or about November 21, 2007, Maria Tejedor, Esq., sent Mr. Weeks a letter with the "strong recommendation" that he accept the terms of the MSA. *(Id., Ex. B, 11/21/2997 Tejedor letter to Gene Weeks.)* More than one year later, on December 18, 2008, the Tejedor firm sent plaintiff Weeks a letter informing him that his claim was denied by the settlement program's Claims Administrator, together with the form entitled "Claims Administrator Notice of Ineligibility." *(4/21/2009 Affidavit of Plaintiff, at para. 27.)*

On December 20, 2008, the Tejedor firm sent plaintiff a letter advising him there were "no grounds" to dispute the notice of ineligibility because he did not meet the "proximity factor" of the settlement agreement, and that the firm would not represent him in any independent tort action and that, upon his withdrawal of his claim from the settlement agreement he will "no longer be represented by the law firm of Martinez, Manglardi, Diez- Arguelles & Tejedor". *Id., Exhibit F.*

The firm's position was made clear to Mr. Weeks at a meeting on January 7, 2009, at the Orange County Courthouse with two counsel from the Tejedor firm, including Tejedor and "John" who told Mr. Weeks they would no longer represent him, and that in fact they were working on a referral for him. *Id., at para. 30.* At the aforesaid meeting on January 7, 2009, attorney Tejedor turned over the plaintiff's file to him stating they were going to

make a motion to withdraw. *5/20/2009 Reply Affidavit of Plaintiff, annexed hereto as* **Exhibit B**, *at para. 4.* Tejedor admitted that the firm had withdrawn in a January 16, 2009, Tejedor wrote to plaintiff stating that plaintiff had "elected to allow us to withdraw as your counsel and you have elected to seek alternative counsel to file your lawsuit." *(Exhibit G to 4/21/09 Plaintiff's Aff., supra.)* In the aforesaid January 16 letter, Tejedor even stated her firm was going to be filing a "notice of withdraw[a]l". *Id.*

After receiving a letter from Tejedor indicating her firm had a change of plan, plaintiff e-mailed Tejedor on January 23, 2009, advising he had retained the Benjamin law firm, that he wanted her to take no more action on his behalf, and that any questions should be directed to Ronald Benjamin. *(Exhibit A to 5/20/2009 Reply Aff.)* On February 20, 2009 the Benjamin firm sent a notice of appearance on behalf of plaintiff in the action pending in this Court, and on April 22, 2009, Benjamin filed a motion to rescind and vacate the plaintiff's consent to participate in the settlement program, which was supported by plaintiff's aforesaid affidavits.

Thereafter, on May 4, 2009 the Tejedor firm received a Notice of Eligibility from the Claims Administrator advising that plaintiff Weeks was awarded 120.74 points, which translated to some $229,406 under the the terms of the MSA. Without the plaintiff's consent or authorization, the Tejedor firm filed a Notice of Points Awarded Appeal because the Claims Administrator misconstrued plaintiff's cholesterol level, and the same apparently resulted in an increase to $286,834.

There was no intervening event between the April 22, 2009 motion and the May 4,

2009 decision by the Gates Committee declaring Mr. Weeks eligible and awarding him $229,406.00, which amount was subsequently increased to $286,834.00. There was no explanation provided as to the basis for changing the decision from ineligible to eligible./*[1]

On or about July 2, 2009, in direct opposition to the plaintiff's April 22 motion to rescind his consent, Tejedor filed a motion to enforce the settlement between Weeks and Merck. In a decision dated February 18, 2010, the Honorable Eldon E. Fallon held Tejedor did not have standing to bring a motion on to enforce the settlement. The court further noted that if Tejedor felt she was entitled to fees for the work she completed on behalf of Mr. Weeks, the appropriate remedy would be to assert a fee lien in compliance with Pretrial Order 47. *Id.*

## ARGUMENT

### WITHDRAWAL BY THE TEJEDOR FIRM IN LIGHT OF THEIR CONTINGENY FEE AGREEMENT NECESSARILY RESULTS IN A FORFEITURE OF ANY RIGHT TO COMPENSATION

Although the Tejedor firm appears to have represented Mr. Weeks from approximately March 4, 2005, it is respectfully submitted their representation came to an end on or about December 20, 2008, following a December 18, 2008 denial of eligibility the firm received stating Mr. Weeks would receive no compensation because he did not

---

[1]*/A discovery demand to Merck to elicit information on this issue is presently outstanding.

meet the proximity gate required by the Master Settlement Agreement (MSA), or certainly no later than January 7, 2009, when two of the firm's attorneys met plaintiff and told him they were no longer representing him and turned over his file to him at that time. They even indicated to plaintiff that they were working on getting him referred to another lawyer.

The firm's termination of Mr. Weeks as a client was confirmed by a letter dated January 16, 2009, in which Ms. Tejedor referred to the January 7 in-person meeting and confirmed that "you have elected to allow us to withdraw as your counsel and you have elected to seek alternative counsel to file your lawsuit". At that time the recovery obtained by the Tejedor firm was zero.

Of course, it was clear that plaintiff had not "elected to allow" them to withdraw, but rather he had been given no choice but to accept their withdrawal at the January 7 meeting, which he did. Mr. Weeks promptly retained undersigned counsel's firm, and thereafter confirmed the same in an e-mail to Tejedor on January 23, 2009, in which he told Tejedor he already had a new lawyer and to take no further action involving his claims.

In light of the fact that the Tejedor firm cannot dispute the letters of December 20, 2009 or January 16, 2009, or that they turned over the file to Mr. Weeks at the meeting on January 7. Together with the submission of their contingency retainer agreement, this documentation and conduct by the firm compel the conclusion they have forfeited the right to any compensation. See Carbonic Consultants Inc., v. Herzfeld & Ruben Inc., 669 So. 2d 321, 323 (Fla. App. 1997); Kyle v. Lichtman, 2001 WL 3599 6143 ( E. D. La.).

Indeed, in Faro v. Romani, 641 So. 2d 69, 70 (Sup.Ct. Fla. 1994), the court

addressed the question of "whether an attorney who voluntarily withdraws in a contingent fee case before the happening of the contingency is entitled to a fee." In the face of the contingency retainer in that case, the court ruled:

> Once Romani voluntarily wihdrew from representation, the contingency agreement, like the attorney-client relationship was terminated. We hold that when an attorney withdraws from representation upon his own volition, and the contingency has not occurred, the attorney forfeits all rights to compensation.

*Id.,* 641 So. 2d at 71. In the case at bar the Tejedor firm withdrew from representing Mr. Weeks of their own volition, giving him his file and telling him to get other counsel following the determination of ineligibility, and nothing he had done before or after being found ineligible rose to an ethical reason to do so that would preserve their right to claim a fee on his award. Thus, it is respectfully submitted that, as the court in Faro ruled, "The record in this case cannot support a finding that [Weeks] breached the attorney contract or legally caused it to be breached. Nor does it support a finding that his conduct placed [Tejedor] in an ethical dilemma." *Id.* This Court should reach the conclusion reached by the court in Faro, namely, that the Tejedor firm "abandoned [its] right to any compensation when [it] withdrew from [its] contingent fee contract, and thus is not entitled to recover a fee." *Id.*

It is respectfully submitted that the Tejedor firm has no enforceabe charging lien for its fees. *See* In re Naturally Beautiful Nails, Inc., 2004 WL 2931367, at *2 (Bankr.M.D.Fla. 2004)./*[2] Clearly, "Florida...does distinguish between those situations

---

[2]*/Plaintiff does not dispute that Tejedor retains a lien for its costs. *Id.*

where a client unjustifiably discharges an attorney and where an attorney unjustifiably terminates his relationship with a client." Kay v. Home Depot, Inc., 623 So.2d 764, 766 (Fla.App. 5 Dist. 1993). In the case at bar, not only did the Tejedor firm terminate its relationship with Mr. Weeks because it had no intention of proceeding any further, Mr. Weeks clearly was justified in notifying them that he had retained other counsel and that Tejedor should take no further action on his case.

Moreover, it is clear that the Tejedor firm accepted the terms of the MSA with respect to its Vioxx clients and was compelled to withdraw. Indeed, it appears that MSA Sections 1.2.8, 1.2.8.1 and 1.2.8.2 of the MSA were a major factor in the firm withdrawing their representation of Mr. Weeks, as evinced by the December 20, 2008 and January 16, 2009 letters the firm wrote to plaintiff indicating that starting after the announcement of the MSA in November 2007 they sought to enroll all of their clients in the settlement program, including Mr. Weeks, and to abandon anyone who was found ineligible or wanted to pursue litigation. Indeed, Rule 4-1.7(b) of the Rules Regulating the Florida Bar states: "A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest...." In the case at bar, plaintiff respectfully submits, the Tejedor firm's independent professional judgment was limited by its voluntarily-accepted responsibilities to the other Vioxx clients the firm was representing and to Merck due to the MSA terms, and by its own interest in receiving fees from the MSA program.

After abandoning their client upon being advised of his ineligibility under the MSA the Tejedor firm is entitled to no fee from the award made after its services were terminated. It is respectfully submitted that the documentary evidence of the December 20 and January 16 letters, as well as the proof that the Tejedor firm gave Mr. Weeks the file to find another attorney are facts not in dispute and entitle him to summary judgment on Tejedor's attorney fee lien claim herein.

## CONCLUSION

Plaintiff respectfully submits that this Court should grant his instant motion for summary judgment dismissing the attorney fee lien claim of Maria D. Tejedor and her firm, along with such other and further relief as is just and proper.

Dated:   August 20, 2010
         Binghamton, New York

                                        Respectfully submitted,

                                        _____
                                        Ronald R. Benjamin/Fed Bar Roll No.: 101131
                                        Law Office of Ronald R. Benjamin
                                        126 Riverside Drive, PO Box 607
                                        Binghamton, New York 13902
                                        (607)- 772-1442
                                        ronbenjaminlaw@stny.rr.com