04/21/2009  03:36   3525894510                SUNSTAR                      PAGE  02/10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX®                          MDL Docket No. 1657

PRODUCTS LIABILITY LITIGATION          SECTION L
-------------------------------------------------------------
                                       Judge Eldon E. Fallon
                                       Magistrate Judge Knowles
-------------------------------------------------------------
THIS DOCUMENT RELATES TO:

   Gene Weeks v. Merck & Co., Inc.,     Case No. 2:05-cv-4578-EEF-DEK

-------------------------------------------------------------

### AFFIDAVIT OF PLAINTIFF

STATE OF __FLORIDA__          )
                              ) ss:
COUNTY OF __LAKE__            )

       GENE WEEKS, being duly sworn upon oath according to law, states the following
matters:

       1.  I am the plaintiff in the above individual action pending before this Court, and
make this affidavit in support of my motion to vacate, rescind or declare the Release of All
Claims and other consent I gave to accept the terms of the Master Settlement Agreement
(MSA) null, void and unenforceable, and, in the event a stipulation of discontinuance is filed
by the defendant, that it be stricken and my action restored to this Court's trial calendar
without prejudice, and for the Court to recuse itself and refer to another judge for
determination of the instant motions.

       2.  I was born on September 6, 1956, and am currently 52 years of age.

       3.  I sustained a fall while at work in December of 1994, which caused damage to my
cervical spine.  As a result of that injury, I had neck surgery and was prescribed Vioxx in
1999.

       4.  As confirmed by my medical and pharmacy records, between approximately
August 1999 and the end of July 2001, I was prescribed and took Vioxx 25 mg, one tablet

USCA5 3430

daily, on a continuous basis. *See* copy of pharmacy records annexed hereto as Exhibit A.

5.   I was employed as a front-end maintainer with Ball Corporation and earned $40,000 annually, but have been on Social Security Disability since November of 2002.

6.   On or about March 5, 2004, at the age of 47, I had a heart attack while still on Social Security Disability and have been unable to work since then.

7.   The limitations I have since my heart attack include fatigue, shortness of breath, anxiety, depression, high blood pressure, muscle weakness, and sleep deprivation.

8.   As a result of advertisements I saw in or about the fall of 2004 when Vioxx was taken off the market, I contacted and ultimately retained the firm of Martinez Manglardi Diez-Arguelles & Tejedor to represent me in seeking a recovery from defendant Merck & Co., Inc.

9.   From the outset of and throughout the firm's representation of me, they were aware of the fact that I had stopped taking Vioxx for more than two years before I sustained the heart attack in March 2004.

10.   The firm filed suit on my behalf by filing a Complaint in this Court in or about October 2005.

11.   On January 7, 2006, attorney Maria D. Tejedor forwarded to Merck's counsel my Verified Plaintiff Profile Form ("PPF"), which stated I took Vioxx on a continuous basis from approximately 1999-2001, and that my heart attack occurred on March 5, 2004.

12.   A few weeks later, I received a letter from attorney Tejedor dated February 1, 2006, in which she indicates her office was in receipt of my 1999 and 2001 pharmacy records, but they needed 2004 pharmacy records because "it is vital that we obtain pharmacy information to confirm that you were taking Vioxx at the time of your heart attack". *See* copy of 2/1/2006 letter attached hereto as Exhibit B.

13.   The pharmacy information was not going to change, however, as evinced by

-2-

USCA5 3431

another PPF prepared by my counsel which I signed on July 16, 2006, in which I reiterated my lengthy use of Vioxx occurred far more than 60 days prior to my heart attack. My counsel was well aware of the time gap between my ingestion of Vioxx and my injury, and Ms. Tejedor and I had some communications about this matter in the interim between 2006 and the 2007 settlement with Merck.

14. I found out about the possibility of a settlement and shortly after it was announced on November 9, 2007, I did some basic research on the internet, in the process of which I went to the website calculator and it was my impression that I met only two of the three criteria gates in that the facts of my case clearly did not meet the proximity requirements.

15. From that time until the day in January 2008 when I signed the Release of All Claims that put me into the settlement program, I had a series of communications with the attorneys and paralegals at Ms. Tejedor's firm regarding my eligibility under the terms of the settlement during which I repeatedly raised my concern that I did not meet the proximity requirements, and my concerns were met with their assurances that intentionally misinformed me about my eligibility for payment and how my claim would be treated under the settlement program in order to induce me to signed the Release and other papers necessary to enter the program, as a result of which I initially indicated my willingness to elect to participate.

16. For example, on November 22, 2007, I received two letters from Ms. Tejedor dated November 21, the contents of which indicated they were boilerplate or generic letters sent to all of her firm's Vioxx clients, not just me. (I was not and am not aware of how many other Vioxx clients were being represented by the firm at that time.)   The two letters confused me, because they seemed to ignore the concerns I had already expressed to the firm's employees about the proximity requirements, as well as my medical and pharmacy

-3-

USCA5 3432

records the firm had had for a lengthy period of time which flatly indicated I did not ingest

Vioxx at the time of, nor within 60 days of, my heart attack.

17.  One of the November 21 letters was 3 pages long, in which attorney Tejedor

states:

> As your legal counsel, we have carefully reviewed the details of the
> Settlement Program Agreement and believe that it is in the best interest of
> each of our qualifying clients.  We therefore strongly recommend that you
> agree to participate.

*See* Exhibit C.  In the second November 21 letter, Ms. Tejedor states, "In order to recover

monies in the Vioxx settlement we will need to get past three gates." *See* letter annexed as

Exhibit D.  Thus, despite the facts of my ingestion and injury readily available in the file,

her letter directs me to provide proof that I "took at least 30 pills of Vioxx within 60 days of

the event." *Id.*   In conclusion, the letter states, "Without this proof of documentation you

will be unable to recover in this case." *Id.*

18.  Because I was confused about the two letters which appeared to be contradictory

as to the facts of my case and eligibility under the program given those facts, I called the

firm to find out if they knew something I did not know that made me eligible for

compensation under the settlement program even though my case met only two of the three

criteria gates.

19.  When I spoke directly to Ms. Tejedor and expressed to her my serious concerns

about not meeting the proximity requirement for purposes of receiving a settlement under

the agreement, she represented to me that the firm's best estimate, based on medical

evaluation of my case by their consultants as being viable under the program, was that it

was in my best interest to sign onto the settlement, and that I really had no option but to

join the settlement.

20.  Instead of taking steps to assist me in recovering in the action which they filed

-4-

upon my behalf, I was browbeaten by counsel into accepting the terms of the settlement by, in the first instance, advising me I would never get to trial if I did not participate in the settlement, and that if I did not agree to the terms of the settlement the firm would not represent me any further in my action.

21.  Based on counsel's communications which I discuss below, I felt I had no choice but to execute the settlement documents.

22.  The same day, November 21, in a separate letter, Ms. Tejedor advised me that in order to be eligible for the settlement I would have to prove that I took at least 30 pills of Vioxx within 60 days of my heart attack, and took Vioxx at least two weeks prior to the heart attack.

23.  I made it very clear to Ms. Tejedor that I could not meet either of those requirements because when I had my heart attack I had not ingested Vioxx for about 20 months. She seemed to ignore this fact and continued to demand that I accept the terms of the settlement and further advised me that a medical person was contracted to review my case. At that time, in a conversation by phone in January of 2008, Ms. Tejedor insisted that I comply and sign onto the settlement program under the M.S.A. This attorney stated that her understanding was the M.S.A. would be lenient on these type cases. I was reluctant under these circumstances to do so and advised the same once again to counsel who then insisted it was the only way to go, so I agreed to sign on.

24.  I want to say that as a matter of commonsense I would never consent to an agreement which by its very terms excluded me from any compensation, but I indicated my willingness to participate in the settlement program based on her legal advice at that time, which I now realize misrepresented the settlement to me in order to get me to sign on because of terms in the MSA under which Merck required attorneys to withdraw from representing any of their clients who did not elect to participate in the program.

-5-

25.  I relied on my attorney to provide me with independent advice on all the circumstances involved, and to make full disclosure of any conflicts of interest the agreement caused in the firm's attorney-client relationship with me and obligations to me as their client, but prior to my signing the Release and other consent papers in or about January 2008, the firm made no disclosures to me about the settlement terms requiring them to withdraw from my case while at the same time recommending that I enter the settlement because I allegedly had no other option.

26.  After signing the Release, I cooperated with my counsel's efforts to meet the documentation requirements, which centered on the proximity of my ingestion of Vioxx and my injury.  Because the firm continued to demand that I produce pharmacy or medical records which obviously did not exist, I tried to research the issues on my own, and on October 18, 2008, had written Ms. Tejedor advising her of scientific articles that demonstrated the risk for heart attack persisted for at least one year in the hope that bringing the same to her attention would assist the firm in advocating on my behalf.  (A copy of my October 18, 2008, letter is annexed hereto as **Exhibit E**.)

27.  Two months later, in a letter dated December 18, 2008, my same counsel stated, "Your claim has been denied by the claims administrator." This came along with the Form V3034, CLAIMS ADMINISTRATOR NOTICE OF INELIGIBILITY.

28.  Another letter from my counsel dated December 20 2008, informed me that her office had "determined that there are no grounds to dispute your notice of ineligibility as you do not meet the proximity factor of the Settlement Agreement." *See* **Exhibit F**, at p. 2. The letter went on to set forth the process after an ineligibility determination, including:

1.  You may withdraw your settlement claim and seek relief through the tort system.  Please be advised, however, that our firm will not represent you in such an action.  Furthermore, if you pursue a separate tort claim, you may not admit any additional medical or pharmacy records as part of your case, other than the ones submitted to the Claims Administration.  You will also

-6-

need to complete the attached form entitled "future evidence stipulation."

*Id.*   After advising of the appeal process, the letter stated that if I have no additional

records, I should "select one of the three options" (*id.*, at p. 2), including the following:

> ____ - I am choosing to withdraw my claim under the Settlement Agreement
> and preserve my right to file an independent tort action against Merck.  ...I
> further understand that the law firm of Martinez, Manglardi, Diez-Arguellas
> & Tejedor <u>will not be representing me in this independent tort action</u> and that
> upon the withdrawal of my claim, I will no longer be represented by the law
> firm of Martinez, Manglardi, Diez-Arguellas & Tejedor.

*Id.*, attached form.

29.   At no time during the process before the denial was I informed by my counsel nor

did I understand that agreeing to enter the settlement program was irrevocable and that

Merck could pay me no compensation whatsoever even though I met two of the three criteria

gates, while at the same time I would lose my right to continue pursuing my lawsuit against

Merck.

30.   After I met with my counsel about the matter on January 7, 2009, I received a

letter from her dated January 16, 2009, which underestimates the firm's conflict and brow-

beating and attributes voluntary statements to me that are not true in the following text:

> During our meeting, you confirmed and did not dispute the fact that you do not
> meet the proximity gate since it had been over two years since you had last
> ingested Vioxx prior to your heart attack.  Therefore, you have elected to allow
> us to withdraw as your counsel and you have elected to seek alternative
> counsel to file your lawsuit.  We will be filing a notice of withdrawl [sic] in the
> very near future and provide you with notice of the same.

*See* 1/16/2009 letter annexed as Exhibit G.  In fact, at the January 7 meeting, Ms. Tejedor

and co-counsel John and myself were in attendance and at no time did I knowingly want or

"elect" to allow my counsel to withdraw, nor was I aware that the firm's withdrawal was

required by the settlement agreement.  Furthermore, it was their emphatic statements about

withdrawing that forced my question, "Can you refer me if you elect to withdraw?"  The reply

from lead counsel was, "Yes, we been working on your referral."

USCA5 3436

31.  I think it is clear the Tejedor firm failed to act in my best interest, nor did they give my case individual representation since, given the facts known to them throughout their representation about the proximity gate, if they did they would never have recommended I participate in a settlement program that excluded me from any compensation, and then withdrew from representing me when my claim was rejected by the program.

32.  Upon information and belief, other considerations were involved in the firm's repeated recommendation to sign on to the program did not involve my case, but related to other terms of the agreement which required counsel to recommend to each of their clients they participate in the settlement and then to withdraw from representing any such client who refused to accept the terms of the settlement.

33.  I have been advised that the above requirements of the MSA contravene the code of professional responsibility that governs the conduct of lawyers and improperly interferes with the attorney-client relationship.

34.  It is further my understanding that this Court entered orders consistent with the terms of the agreement that required retained counsel such as my attorneys to recommend 100% participation of all of their clients in the settlement and to withdraw from representing any client who refused to accept the terms of the settlement.

35.  It is further my understanding that the Court incorporated certain terms of the settlement including compensating plaintiffs who sustained heart attacks, or ischemic strokes or sudden cardiac death, but excluded plaintiffs who sustained other cardiovascular injuries, as well as conditions such as the duration and proximity gate in the MSA

36.  I also understand that the Court is Chief Administrator under the MSA and will be enforcing terms and conditions including those that would exclude me from compensation under the MSA and result in dismissing my lawsuit. Although I do not know the extent of the Court's participation in monitoring the settlement negotiations that resulted in the MSA,

-8-

in light of the obvious conflicts between the conditions set forth in the MSA for compensation and what would be otherwise admissible in proving my case if permitted to proceed under applicable state tort law it seems to me the Court cannot fairly and impartially adjudicate any of the issues that are the subject matter of the instant motion.

37.  This is especially true in connection with the terms of the MSA that either required or played a significant role in my counsel repeatedly recommending that I participate in the settlement agreement without using her independent professional judgment as to the circumstances of my individual case and the probability of recovery.

38.  I respectfully ask this Court to grant my motion to refer and then refer my motion to another judge for determination of the relief I seek.

_Gene A. Weeks II_
GENE A. WEEKS II

SUBSCRIBED AND SWORN TO before me
this __2-1__ day of __April__, 2009.

_Marc S Spence_
Notary Public

> Notary Public State of Florida
> Marc A Spence
> My Commission DD727735
> Expires 10/22/2011

-9-

USCA5 3438

EXHIBIT A

TO

AFFIDAVIT OF PLAINTIFF GENE WEEKS

USCA5 3439

CVS PHARMACY
PATIENT PRESCRIPTION RECORD
BETWEEN 01/01/1998 AND 12/08/2004
PHARMACY # 4538

PAGE: 1
RUN DATE: 12/08/2004  TIME: 13:53:49
REQUEST NBR: 1123659

| | |
|---|---|
| PHARMACY NAME: | CVS/REVCO #4538 |
| ADDRESS: | 1912 S MAIN |
| CITY, ST, ZIP: | MOULTRIE  GA 31768 |
| PATIENT KEY: | 453876551 |
| PATIENT NAME: | WEEKS GENE |
| ADDRESS | 1336 GA HWY 111 |
| CITY, ST, ZIP: | MOULTRIE GA 31776 |

TELEPHONE: 912-890-1177
BIRTHDATE: 09/06/1956

ALLERGIES:
00   NONE

CONDITIONS:   None communicated by the patient.

Notified:   08/20/2001          Deactivated:

| RX NUMBER | REL | NDC NUMBER | DRUG DESCRIPTION | PRESCRIBER NAME | DATE FILLED | RPH INT | QUANT DISP | PRIMARY PAYER # | SCDRY PAYER # | TOTAL PRICE | PRIMARY PD AMT | SCDRY PD AMT | PATIENT PD AMT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 188240 | 0 | 00004015949 | ACCUTANE 40MG CAPSULE | CULLISON, DAVID A | 01/14/1998 | BC | 10 | 4000 | | 51.42 | 0.00 | 0.00 | 51.42 |
| 188240 | 0 | 00004015949 | ACCUTANE 40MG CAPSULE | CULLISON, DAVID A | 02/15/1998 | LB | 10 | 4000 | | 52.65 | 37.65 | 0.00 | 15.00 |
| 230788 | 0 | 00713050312 | ANUCORT-HC 25MG SUPPOSITORY | LODGE, C G | 05/10/1998 | LB | 12 | 4000 | | 7.74 | 0.00 | 0.00 | 7.74 |
| 235595 | 0 | 00713050312 | ANUCORT-HC 25MG SUPPOSITORY | SMITH, KIRBY Q | 08/02/1998 | EC | 14 | 4000 | | 16.99 | 0.00 | 0.00 | 16.99 |
| 236876 | 0 | 00006011058 | VIOXX 25MG TABLET | HAJEK, PHILLIP | 08/14/1999 | BC | 15 | 4000 | 1 | 33.80 | 0.00 | 0.00 | 33.80 |
| 236876 | 1 | 00006011058 | VIOXX 25MG TABLET | HAJEK, PHILLIP | 09/18/1999 | BC | 15 | 4000 | | 33.82 | 18.82 | 0.00 | 15.00 |
| 236876 | 2 | 00006011058 | VIOXX 25MG TABLET | HAJEK, PHILLIP | 10/13/1999 | BC | 30 | 4000 | | 65.83 | 50.83 | 0.00 | 16.00 |
| 235749 | 0 | 00054423701 | OXYCODONE W/APAP 5/325 TAB | LASKOWSKI, W | 09/11/1999 | JW | 40 | 4000 | | 5.80 | 0.00 | 0.00 | 5.80 |
| 236746 | 0 | 52544008701 | CLINDAMYCIN HCL 150MG CAPS | LASKOWSKI, W | 09/11/1998 | JW | 30 | 4000 | | 23.27 | 0.00 | 0.00 | 23.27 |
| 238749 | 0 | 00045085850 | HYDROCODONE/APAP 7.5/750 TB | LASKOWSKI, W | 09/17/1999 | JW | 40 | 4000 | | 6.34 | 0.00 | 0.00 | 6.34 |
| 242138 | 0 | 00045065960 | ULTRAM 50MG TABLET | MOREE, CHIP | 09/17/1999 | JW | 60 | 4000 | | 41.11 | 26.11 | 0.00 | 15.00 |
| 247140 | 0 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 11/09/1999 | JW | 10 | 4000 | | 97.99 | 0.00 | 0.00 | 97.99 |
| 247140 | 1 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 01/20/2000 | BC | 20 | 4000 | | 189.99 | 0.00 | 0.00 | 189.99 |
| 247140 | 2 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 02/07/2000 | JW | 10 | 4000 | | 60.03 | 28.86 | 0.00 | 54.07 |
| 247140 | 3 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 02/29/2000 | BC | 20 | 4000 | | 159.87 | 144.87 | 0.00 | 16.00 |
| 247140 | 4 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 03/27/2000 | BC | 20 | 4000 | | 159.87 | 144.87 | 0.00 | 15.00 |
| 247140 | 5 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 03/05/2000 | BC | 20 | 4000 | | 159.87 | 144.87 | 0.00 | 15.00 |
| 247140 | 6 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 06/02/2000 | BC | 20 | 4000 | | 159.87 | 144.87 | 0.00 | 15.00 |
| 247140 | 7 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 07/03/2000 | MH | 20 | 4000 | | 156.27 | 141.27 | 0.00 | 15.00 |
| 247140 | 8 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 08/05/2000 | KJ | 20 | 4000 | | 156.27 | 141.27 | 0.00 | 15.00 |
| 247140 | 9 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 09/05/2000 | BC | 20 | 4000 | | 156.27 | 141.27 | 0.00 | 15.00 |
| 247140 | 10 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 10/07/2000 | KJ | 20 | 4000 | | 156.27 | 141.27 | 0.00 | 15.00 |
| 247140 | 11 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 11/17/2000 | EC | 20 | 4000 | | 156.27 | 141.27 | 0.00 | 15.00 |
| 247140 | 12 | 00069421030 | VIAGRA 50MG TABLET | LODGE, C G | 12/29/2000 | EC | 20 | 4000 | | 156.27 | 141.27 | 0.00 | 15.00 |
| 249877 | 0 | 00472051112 | HEMORRHOIDAL HC 25MG SUPPOS | LODGE, C G | 01/17/2001 | JW | 10 | 4000 | | 81.07 | 16.67 | 0.00 | 65.00 |
| 256723 | 0 | 00186074231 | PRILOSEC 20MG CAPSULE DR | LODGE, C G | 02/03/2000 | BC | 14 | 4000 | | 10.93 | 0.00 | 0.00 | 10.93 |
| 256723 | 1 | 00186074231 | PRILOSEC 20MG CAPSULE DR | LASKOWSKI, W | 08/19/2000 | KJ | 30 | 4000 | | 110.65 | 95.65 | 0.00 | 15.00 |
| 256723 | 2 | 00186074231 | PRILOSEC 20MG CAPSULE DR | LASKOWSKI, W | 08/14/2000 | KJ | 30 | 4000 | | 110.65 | 95.65 | 0.00 | 16.00 |
| 256723 | 3 | 00186074231 | PRILOSEC 20MG CAPSULE DR | LASKOWSKI, W | 08/16/2000 | KJ | 30 | 4000 | | 110.65 | 95.65 | 0.00 | 15.00 |
| 256723 | 4 | 00186074231 | PRILOSEC 20MG CAPSULE DR | LASKOWSKI, W | 11/14/2000 | AB | 30 | 4000 | | 110.65 | 95.65 | 0.00 | 16.00 |
| 256723 | 5 | 00186074231 | PRILOSEC 20MG CAPSULE DR | LASKOWSKI, W | 02/16/2001 | LG | 30 | 4000 | | 110.65 | 95.65 | 0.00 | 15.00 |
| 257486 | 0 | 00093314701 | CEPHALEXIN 500MG CAPSULE | BEDELL, RHONDA | 07/03/2000 | MH | 38 | 4000 | | 10.20 | 5.20 | 0.00 | 5.00 |
| 257486 | 0 | 51285086802 | OXYCODONE W/APAP 5/500 CAP | BEDELL, RHONDA | 07/03/2000 | MH | 6 | 4000 | | 3.96 | 0.00 | 0.00 | 3.96 |
| 257488 | 0 | 00044072302 | VICOPROFEN 200/7.5 TABLET | GIATRAS, ANTHONY G | 09/15/2000 | KJ | 45 | 4000 | | 41.00 | 26.00 | 0.00 | 15.00 |
| 259832 | 0 | 00044072302 | VICOPROFEN 200/7.5 TABLET | GIATRAS, ANTHONY G | 08/28/2000 | KJ | 45 | 4000 | | 41.00 | -26.00 | 0.00 | 15.00 |
| 259832 | 1 | 00044072302 | VICOPROFEN 200/7.5 TABLET | GIATRAS, ANTHONY G | 09/18/2000 | KJ | 45 | 4000 | | 41.00 | 26.00 | 0.00 | 15.00 |

USCA5 3440

*Prescription Profile:* 11/19/96 - 11/11/04

**Crystal Pharmacy**
**PO Box 8**

Fed ID# 58 2255311
NABP# 1101942
Phone# 229/985-4137

**Moultrie, Ga 31776**

*We are pleased to provide this service to our valued customer.*

**WEEKS, GENE**
**1338 GA HIWAY 111**

**MOULTRIE, GA 31768**

| Rx# | Ref | Date | Doctor | Qty | Drug | NDC# | Type |
|---|---|---|---|---|---|---|---|
| 193869 | 2 | 11/19/96 | ASTHANI, MAHER | 100 | NEURONTIN 100MG CAPSULES | 00071080324 | CASH |
| 193870 | 1 | 11/19/96 | ASTHANI, MAHER | 30 | CYCLOBENZAPRINE HCL TAB 10MG | 50111056303 | CASH |
| 193870 | 2 | 01/21/97 | ASTHANI, MAHER | 30 | CYCLOBENZAPRINE HCL TAB 10MG | 50111056303 | CASH |
| 199246 | | 02/14/97 | ALEXANDER, GREGG | 40 | SKELAXIN TAB CARNICK | 00086006250 | CASH |
| 199246 | 1 | 02/25/97 | ALEXANDER, GREGG | 40 | SKELAXIN TAB CARNICK | 00086006250 | CASH |
| 199246 | 2 | 03/12/97 | ALEXANDER, GREGG | 40 | SKELAXIN TAB CARNICK | 00086006250 | CASH |
| 199246 | 3 | 04/02/97 | ALEXANDER, GREGG | 40 | SKELAXIN TAB CARNICK | 00086006250 | CASH |
| 201811 | | 04/17/97 | ALEXANDER, GREGG | 60 | ROBAXIN 750MG TAB ROBINS | 00091744963 | CASH |
| 201811 | 1 | 05/07/97 | ALEXANDER, GREGG | 60 | ROBAXIN 750MG TAB ROBINS | 00091744963 | CASH |
| 204335 | | 05/27/97 | ALEXANDER, GREGG | 60 | SKELAXIN TAB CARNICK | 00086006250 | CASH |
| 236917 | | 01/26/99 | RANDLE, J MICHAE | 40 | HYDROAPAP 7.5MG/750MG TABLET | 00591038705 | CASH |
| 236917 | 1 | 02/06/99 | RANDLE, J MICHAE | 40 | HYDROAPAP 7.5MG/750MG TABLET | 00591038705 | CASH |
| 236917 | 2 | 02/26/99 | RANDLE, J MICHAE | 40 | HYDROAPAP 7.5MG/750MG TABLET | 00591038705 | CASH |
| 236917 | 3 | 04/01/99 | RANDLE, J MICHAE | 40 | HYDROAPAP 7.5MG/750MG TABLET | 00591038705 | CASH |
| 262187 | | 02/07/00 | HAJEK, PHILLIP D | 30 | VIOXX 25MG TABLETS | 00006011082 | CASH |
| 262187 | 1 | 03/05/00 | HAJEK, PHILLIP D | 30 | VIOXX 25MG TABLETS | 00006011082 | CASH |
| 262187 | 2 | 03/27/00 | HAJEK, PHILLIP D | 30 | VIOXX 25MG TABLETS | 00006011082 | CASH |
| 262187 | 3 | 04/24/00 | HAJEK, PHILLIP D | 30 | VIOXX 25MG TABLETS | 00006011082 | CASH |
| 269049 | | 05/22/00 | HAJEK, PHILLIP D | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 269049 | 1 | 06/21/00 | HAJEK, PHILLIP D | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 269049 | 2 | 07/24/00 | HAJEK, PHILLIP D | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 269049 | 3 | 08/28/00 | HAJEK, PHILLIP D | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 269049 | 4 | 10/24/00 | HAJEK, PHILLIP D | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 269948 | | 06/06/00 | HAJEK, PHILLIP D | 30 | CARISOPRODOL 350 MG | 53489011010 | INS. |
| 269948 | 1 | 06/21/00 | HAJEK, PHILLIP D | 30 | CARISOPRODOL 350 MG | 53489011010 | INS. |
| 269948 | 2 | 07/18/00 | HAJEK, PHILLIP D | 30 | CARISOPRODOL 350 MG | 53489011010 | INS. |
| 269948 | 3 | 07/24/00 | HAJEK, PHILLIP D | 30 | CARISOPRODOL 350 MG | 53489011010 | INS. |
| 273885 | | 08/10/00 | HAJEK, PHILLIP D | 60 | ZANAFLEX 4MG TABLETS | 59075059415 | INS. |
| 277913 | | 10/11/00 | GIATRAS, ANTHONY | 45 | VICOPROFEN TABLETS KNOLL | 00044072302 | INS. |
| 277913 | 1 | 10/11/00 | GIATRAS, ANTHONY | 45 | VICOPROFEN TABLETS KNOLL | 00044072302 | INS. |
| 277913 | 2 | 10/24/00 | GIATRAS, ANTHONY | 45 | VICOPROFEN TABLETS KNOLL | 00044072302 | INS. |
| 277913 | 3 | 11/10/00 | GIATRAS, ANTHONY | 45 | VICOPROFEN TABLETS KNOLL | 00044072302 | INS. |
| 277913 | 3 | 11/28/00 | GIATRAS, ANTHONY | 45 | VICOPROFEN TABLETS KNOLL | 00044072302 | INS. |
| 277915 | | 10/11/00 | GIATRAS, ANTHONY | 30 | PRELOPTOL TABLETS 300MG | 00078033705 | INS. |
| 281136 | | 11/28/00 | GIATRAS, ANTHONY | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 281136 | 1 | 01/16/01 | GIATRAS, ANTHONY | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 281136 | 2 | 03/15/01 | GIATRAS, ANTHONY | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 282550 | | 12/15/00 | GIATRAS, ANTHONY | 45 | VICOPROFEN TABLETS KNOLL | 00044072302 | INS. |
| 282550 | 1 | 12/29/00 | GIATRAS, ANTHONY | 45 | VICOPROFEN TABLETS KNOLL | 00044072302 | INS. |
| 282550 | 2 | 01/16/01 | GIATRAS, ANTHONY | 45 | VICOPROFEN TABLETS KNOLL | 00044072302 | INS. |
| 285078 | | 01/22/01 | MORSE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 287887 | | 02/26/01 | MORSE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 289272 | | 03/15/01 | MORSE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 291162 | | 04/10/01 | LASKOWSKI, W | 30 | PRILOSEC 20MG CAP ASTRA | 00186074231 | INS. |
| 291162 | 1 | 07/20/01 | LASKOWSKI, W | 30 | PRILOSEC 20MG CAP ASTRA | 00186074231 | INS. |
| 291162 | 2 | 08/17/01 | LASKOWSKI, W | 30 | PRILOSEC 20MG CAP ASTRA | 00186074231 | INS. |
| 291162 | 3 | 09/17/01 | LASKOWSKI, W | 30 | PRILOSEC 20MG CAP ASTRA | 00186074231 | INS. |
| 291162 | 4 | 10/09/01 | LASKOWSKI, W | 30 | PRILOSEC 20MG CAP ASTRA | 00186074231 | INS. |
| 291162 | 5 | 11/13/01 | LASKOWSKI, W | 30 | PRILOSEC 20MG CAP ASTRA | 00186074231 | INS. |
| 291163 | | 04/10/01 | MORSE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |

PO Box 8

Moultrie, Ga 31776

NABP# 1101942
Phone# 229/985-4137

*We are pleased to provide this service to our valued customer.*

WEEKS, GENE
1338 GA HIWAY 111

MOULTRIE, GA 31768

| Rx# | Ref | Date | Doctor | Qty | Drug | NDC# | Type |
|---|---|---|---|---|---|---|---|
| 293104 | | 04/10/01 | MOREE, LAMAR HOU | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 293409 | | 05/10/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010210 | INS. |
| 295130 | | 06/01/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 295131 | | 06/01/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 295132 | | 06/01/01 | MOREE, LAMAR HOU | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 295233 | | 05/01/01 | SPAIN, STEPHEN D | 30 | NORVASC 5MG TAB | 00069152068 | INS. |
| 295133 | 1 | 09/17/01 | SPAIN, STEPHEN D | 30 | NORVASC 5MG TAB | 00069153068 | INS. |
| 295133 | 2 | 10/06/01 | SPAIN, STEPHEN D | 30 | NORVASC 5MG TAB | 00069153068 | INS. |
| 295133 | 3 | 11/13/01 | SPAIN, STEPHEN D | 30 | NORVASC 5MG TAB | 00069153068 | INS. |
| 295136 | | 06/01/01 | SPAIN, STEPHEN D | 30 | PROZAC 20MG CAPS LILLY | 00777310502 | INS. |
| 297409 | | 06/29/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 297410 | | 06/29/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 297411 | | 06/29/01 | MOREE, LAMAR HOU | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 299421 | | 07/26/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 299422 | | 07/26/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 299423 | | 07/26/01 | MOREE, LAMAR HOU | 60 | CELEBREX 200MG CAPS | 00025152531 | INS. |
| 299423 | 1 | 08/17/01 | MOREE, LAMAR HOU | 60 | CELEBREX 200MG CAPS | 00025152531 | INS. |
| 301256 | | 08/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 301257 | | 08/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 303845 | | 09/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 303846 | | 09/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 303847 | | 11/13/01 | MOREE, LAMAR HOU | 60 | CELEBREX 200MG CAPS | 00025152531 | INS. |
| 305682 | | 10/09/01 | SPAIN, STEPHEN D | 30 | PROZAC 40MG CAPSULES | 00777310730 | INS. |
| 305682 | 1 | 11/05/01 | SPAIN, STEPHEN D | 30 | PROZAC 40MG CAPSULES | 00777310730 | INS. |
| 305682 | 2 | 12/13/01 | SPAIN, STEPHEN D | 30 | PROZAC 40MG CAPSULES | 00777310730 | INS. |
| 306485 | | 10/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 306486 | | 10/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 308528 | | 11/09/01 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 0.5MG TABLETS | 00781107710 | INS. |
| 308528 | 1 | 11/29/01 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 0.5MG TABLETS | 00781107710 | INS. |
| 309078 | | 11/15/01 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 311673 | | 12/13/01 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 311673 | 1 | 01/11/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 311673 | 2 | 02/07/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 311673 | 3 | 03/05/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 311673 | 4 | 03/27/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 312006 | | 12/17/01 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 312007 | | 12/17/01 | MOREE, LAMAR HOU | 45 | CELEBREX 200MG CAPS | 00025152531 | INS. |
| 314106 | | 01/11/02 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 316466 | | 02/07/02 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 319295 | | 03/08/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | INS. |
| 319295 | 1 | 05/07/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | INS. |
| 319295 | 2 | 06/13/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | INS. |
| 319295 | 3 | 06/27/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | INS. |
| 319295 | 4 | 10/18/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | INS. |
| 319295 | 5 | 12/18/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | CASH |
| 319295 | 6 | 02/21/03 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | CASH |
| 321019 | | 03/22/02 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 323482 | | 04/18/02 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 323483 | | 04/18/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 323483 | 1 | 05/10/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |

**Crystal Pharmacy**
**PO Box 8**

Moultrie, Ga 31776

Fed ID# 58 2255311
NABP# 1101942
Phone# 229/985-4137

*We are pleased to provide this service to our valued customer.*

WEEKS, GENE
1338 GA HIWAY 111

MOULTRIE, GA 31768

| Rx# | Ref | Date | Doctor | Qty | Drug | NDC# | Type |
|-----|-----|------|--------|-----|------|------|------|
| 293154 | | 04/10/01 | MOREE, LAMAR HOU | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 293409 | | 05/10/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 295130 | | 06/01/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 295131 | | 06/01/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 295132 | | 06/01/01 | MOREE, LAMAR HOU | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 295133 | | 06/01/01 | SPAIN, STEPHEN D | 30 | NORVASC 5MG TAB | 00069153068 | INS. |
| 295133 | 1 | 09/17/01 | SPAIN, STEPHEN D | 30 | NORVASC 5MG TAB | 00069153068 | INS. |
| 295133 | 2 | 10/09/01 | SPAIN, STEPHEN D | 30 | NORVASC 5MG TAB | 00069153068 | INS. |
| 295133 | 3 | 11/13/01 | SPAIN, STEPHEN D | 30 | NORVASC 5MG TAB | 00069153068 | INS. |
| 295134 | | 06/01/01 | SPAIN, STEPHEN D | 30 | PROZAC 20MG CAPS LILLY | 00777310502 | INS. |
| 297409 | | 06/29/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 297410 | | 06/29/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 297411 | | 06/29/01 | MOREE, LAMAR HOU | 30 | VIOXX 25MG TABLETS | 00006011068 | INS. |
| 299421 | | 07/26/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 299422 | | 07/26/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 299423 | | 07/26/01 | MOREE, LAMAR HOU | 60 | CELEBREX 200MG CAPS | 00025152531 | INS. |
| 299423 | 1 | 08/17/01 | MOREE, LAMAR HOU | 60 | CELEBREX 200MG CAPS | 00025152531 | INS. |
| 301256 | | 08/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 301257 | | 08/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 303845 | | 09/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 303846 | | 09/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 303847 | | 11/13/01 | MOREE, LAMAR HOU | 60 | CELEBREX 200MG CAPS | 00025152531 | INS. |
| 305682 | | 10/09/01 | SPAIN, STEPHEN D | 30 | PROZAC 40MG CAPSULES | 00777310730 | INS. |
| 305682 | 1 | 11/05/01 | SPAIN, STEPHEN D | 30 | PROZAC 40MG CAPSULES | 00777310730 | INS. |
| 305682 | 2 | 12/13/01 | SPAIN, STEPHEN D | 30 | PROZAC 40MG CAPSULES | 00777310730 | INS. |
| 306485 | | 10/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 20MG TABLETS | 59011010310 | INS. |
| 306486 | | 10/17/01 | MOREE, LAMAR HOU | 30 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 308528 | | 11/09/01 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 0.5MG TABLETS | 00781107710 | INS. |
| 308528 | 1 | 11/29/01 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 0.5MG TABLETS | 00781107710 | INS. |
| 309078 | | 11/15/01 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 311673 | | 12/13/01 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 311673 | 1 | 01/11/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 311673 | 2 | 02/07/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 311673 | 3 | 03/05/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 311673 | 4 | 03/27/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 312006 | | 12/17/01 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 312007 | | 12/17/01 | MOREE, LAMAR HOU | 45 | CELEBREX 200MG CAPS | 00025152531 | INS. |
| 314104 | | 01/11/02 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 316666 | | 02/07/02 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 319295 | | 03/05/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | INS. |
| 319295 | 1 | 05/07/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | INS. |
| 319295 | 2 | 06/13/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | INS. |
| 319295 | 3 | 06/27/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | INS. |
| 319295 | 4 | 10/18/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | INS. |
| 319295 | 5 | 12/18/02 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | CASH |
| 319295 | 6 | 02/21/03 | SPAIN, STEPHEN D | 6 | VIAGRA TABLETS 100MG | 00069422030 | CASH |
| 321019 | | 03/22/02 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 323482 | | 04/18/02 | MOREE, LAMAR HOU | 90 | OXYCONTIN 10MG TABLETS | 59011010010 | INS. |
| 323483 | | 04/18/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |
| 323483 | 1 | 05/10/02 | SPAIN, STEPHEN D | 60 | ALPRAZOLAM 1MG TABLETS | 00781107910 | INS. |

USCA5 3443

EXHIBIT B

TO

AFFIDAVIT OF PLAINTIFF GENE WEEKS

USCA5 3444



**ATTORNEYS**
TRIAL GROUP

*Martinez, Manglardi, Diez-Arguelles & Tejedor*

*Maria D. Tejedor*
*Board Certified Civil Trial Lawyer*

February 1, 2006

Mr. Gene Weeks
35241CR 439
Eustis FL 32736

### RE: *Gene Weeks vs. Merck & Co. Inc.*

Dear Mr. Weeks:

We are in receipt of your pharmacy records for 1999 and 2001. However, it appears that we do not have the pharmacy records for 2004 at the time that you had your heart attack. Please obtain the pharmacy records from the pharmacy from which you were obtaining vioxx in the year 2004. It is vital that we obtain that information to confirm that you were taking vioxx at the time of your heart attack.

Please contact my office to advise me of when we can expect to receive the same.

Your cooperation in this matter is appreciated.

Sincerely,

Maria D. Tejedor

MDT/ldm

540 North Semoran Boulevard • Orlando, Florida 32807 • Telephone (407) 381-4123
www.attorneystrialgroup.com



# ATTORNEYS
## TRIAL GROUP

*Martinez, Manglardi, Diez-Arguelles & Tejedor*

*Maria D. Tejedor*
*Board Certified Civil Trial Lawyer*

February 1, 2006

Mr. Gene Weeks
35241CR 439
Eustis FL 32736

### RE: *Gene Weeks vs. Merck & Co. Inc.*

Dear Mr. Weeks:

This will confirm our telephone conference scheduled on Thursday, Feb. 9, 2006, at 2:00 pm.  We will contact you at your home number.

Sincerely,

Maria D. Tejedor

MDT/bjk

540 North Semoran Boulevard ◆ Orlando, Florida 32807 ◆ Telephone (407) 381-4123
www.attorneystrialgroup.com



**ATTORNEYS**
TRIAL GROUP

*Martinez, Manglardi, Diez-Arguelles & Tejedor*

*Maria D. Tejedor*
*Board Certified Civil Trial Lawyer*

April 20, 2006

Mr. Gene Weeks
35241CR 439
Eustis FL 32736

    *RE: Gene Weeks vs. Merck & Co. Inc.*

Dear Mr. Weeks:

    This letter serves to confirm our telephone conference to discuss your case on Friday, April 28, 2006 at 1:00 p.m. We will initiate the call.

Sincerely,

Maria D. Tejedor

MDT/ldm

EXHIBIT C

TO

AFFIDAVIT OF PLAINTIFF GENE WEEKS

USCA5 3448



**MARTINEZ MANGIARDI
DIEZ-ARGUELLES & TEJEDOR**

Maria D. Tejedor
Board Certified Civil Trial Lawyer

540 N. Semoran Blvd., Orlando, FL 32807
(407) 381-4123 · mmdtlaw.com

November 21, 2007

Gene Weeks
35241 C.R. 439
Eustis, FL 32736

     *RE: Gene Weeks vs. Merck & Co. Inc.*

Dear Mr. Weeks:

After more than three years of hard-fought and difficult litigation, Merck has agreed to a settlement program to resolve certain Vioxx-related claims involving plaintiffs who have suffered a heart attack (including sudden cardiac death) or stroke. As you might have heard through the media, Merck has agreed to pay one sum, $4.85 billion, which will be allocated among thousands of qualifying claims based upon an evaluation of each claimant's medical records by a Claims Administrator. Details regarding the Settlement Program, including eligibility requirements and the claims valuation process, are enclosed.

As your legal counsel, we have carefully reviewed the details of the Settlement Program Agreement and believe that it is in the best interest of each of our qualifying clients. We therefore strongly recommend that you agree to participate.

Our strong recommendation that each of our qualifying clients participates is based, in large part, on the following facts:

- To date, throughout the country, there have been 16 Vioxx trials involving 17 plaintiffs. Of these trials, plaintiffs have won 5, Merck has won 7, and the remaining 5 are awaiting a new trial. Merck has appealed each of the five cases in which the plaintiff was victorious, and all of those appeals are still pending.

- To date, not even the five plaintiffs with hard fought victories against Merck at trial have received any money from Merck. The first verdict in favor of a plaintiff was in August 2005, more than two years ago. Merck has not yet paid a single dollar of that verdict, and has no legal obligation to do so unless and until all appeals are exhausted and the verdict in favor of the plaintiff is upheld.

- If Merck insists on taking each individual case to trial, it could take decades to obtain verdicts in all the Vioxx-related cases currently pending against Merck, and additional years for Merck to exhaust its appeals in cases in which the plaintiff prevailed.

• There is one case currently pending before the United States Supreme Court that could result in changes in the law that would limit the ability of plaintiffs to recover against drug companies if a drug has been approved for marketing by the FDA.

Given all of the above, we believe that the claim valuation process and the estimated settlement values ranges under the Settlement Program Agreement are fair ones. We further believe that participation in the Settlement Program is the best opportunity for you to receive fair compensation for your Vioxx claims in the foreseeable future.

**If you choose to follow our recommendation and agree to participate in this Settlement Program, you should carefully review all of the enclosed documents, and then sign and return the enclosed Election to Participate form** as soon as possible. Once we receive your signed Election to Participate form, we will forward you a Release for your signature. Your signed Release and your medical records must be submitted to the Claims Administrator for your claim to be processed. Please note, however, that Merck has the option not to fund the Settlement Program and to terminate the Settlement Program if a minimum number of potentially eligible Claimants nationwide does not agree to participate. In the event of such a termination by Merck, any Release you sign in the future would be void, your claim would return to the tort system, and you would be returned essentially to the same position you are in today.

You should also note that at this time neither we nor anyone else can tell you or any other Claimant what your precise settlement value will be under the Settlement Program. This is because the settlement fund for Claimants alleging a heart attack/myocardial infarction ("MI") under the Settlement Program is limited to $4 billion, and the settlement fund for Claimants alleging a stroke is limited to $850 million, from which all potentially eligible, participating claimants must be paid. The Claims Administrator will not be able to determine the precise value of any claim until he knows: (a) how many of the potentially eligible Claimants nationwide are participating in the Settlement Program; and (b) what each participating Claimant's medical records state regarding each Claimant's injury type, level of injury, duration of Vioxx use, and certain other aspects of the Claimant's Vioxx use and medical history that would be expected to affect the value of the Claimant's claim within the tort system.

Due to the volume of cases to be reviewed by the Claims Administrator, we anticipate that the claim review and valuation process will take one to two years. Participating Claimants' precise settlement values will not be known until that process is complete. However, an interactive website is available for you to input basic information about your claim to determine an estimate of its settlement value based on the information you input. To access the claim valuation calculator, go to www.OfficialVioxxSettlement.com.

In addition, the Settlement Program provides that an initial payment of approximately forty percent (40%) of a qualifying Claimant's estimated final gross settlement value will be made to each participating Claimant whose properly executed Release and medical records are timely submitted to the Claims Administrator. The remainder of a Claimant's final gross settlement value will be paid when all eligible, participating claims nationwide have been fully processed, which is

currently expected to be in approximately one to two years.

**The decision whether to participate in the Settlement Program is yours to make but we strongly recommend that you participate.** If you wish to follow our recommendation and agree to participate, please note that by doing so you are agreeing both to give up your right to a trial against Merck and to accept the settlement value that your claim will be accorded through the Settlement Program.

As you know, trial is risky because you could win or lose you case against Merck. If you go to trial, the jury could award you more, less, or no money from this Defendant. In addition, even if you are successful at trial, a Defendant always has the right to appeal your jury award. The appeal process may take several years to complete and will result in additional costs and expenses in your case. Any monies awarded by the jury cannot be paid to you until the appeal process is complete and a finding has been made in your favor. Further, an appeal could also result in a new trial being ordered and the entire litigation process would then start over again. Thus, provided you have a qualifying claim, there is little doubt that you will receive compensation for your claim more quickly under the Settlement Program than through the tort system.

The enclosed Description of Settlement Program and Claim Valuation Examples explain the Program in more detail. Please remember that you must keep the terms of this Settlement Program, including the estimated amount of your settlement, confidential.

Thank you for the privilege of representing you. We look forward to continuing to serve you over the coming months as we work to bring your Vioxx claim to a successful resolution.

Sincerely,

Signed in Ms. Tejedor's
Absence to Avoid delay

Maria D. Tejedor

MDT/mjv
Enclosures

Examples of Claim Valuation Calculations

### Example 1 – Qualifying Heart Attack (MI/SCD) Claimant

A 50-year-old heart attack (MI/SCD) Qualifying Program Claimant who sustained a Level 2 Injury (e.g., coronary artery bypass surgery plus resulting complications within 6 months of the heart attack) and used Vioxx for an Overall Duration of 18-30 months. The Claimant's heart attack occurred on April 4, 2001. In the 12 months prior to the heart attack, the Claimant was dispensed 214 pills. The Claimant suffered from the following risk factors: (1) Obesity (BMI of 33.4 at Eligible Event); (2) Controlled Cholesterol; (3) Controlled Hypertension; and (4) Ambiguous Family History of heart disease.

| | |
|---|---|
| Basis Points | 572.92 |
| -- Label Adjustment | +15% |
| -- Consistency Adjustment | -10% |
| Sub-Total Points | 601.57 |
| -- Obesity | -17.5% |
| | 496.30 |
| -- Controlled Cholesterol | -20% |
| | 397.04 |
| -- Controlled HTN | -20% |
| | 317.63 |
| -- Ambiguous Family History | -15% |
| **TOTAL POINTS:** | **269.98** |

If each MI Point is ultimately valued at $2,000, the Example 1 claim will have a gross value (before attorneys' fees and costs are deducted) of approximately $539,960; if each MI Point is ultimately valued at $1,500, the claim will have a gross value of approximately $404,970; if each MI Point is ultimately valued at $1,200, the claim will have a gross value of approximately $323,976.

EXHIBIT D

TO

AFFIDAVIT OF PLAINTIFF GENE WEEKS



MARTINEZ MANGLARDI
DIEZ-ARGUELLES & TEJEDOR

Maria D. Tejedor
Board Certified Civil Trial Lawyer

540 N. Semoran Blvd., Orlando, FL 32807
(407) 381-4123 · mmdtlaw.com

November 21, 2007

Gene Weeks
35241 C.R. 439
Eustis, FL 32736

RE: *Gene Weeks vs. Merck & Co. Inc.*

Dear Mr. Weeks:

In order to recover monies in the Vioxx settlement we will need to get past three gates.

First, we will need to prove that an event occurred. In order to prove the event occurred we will need for you to provide us with medical record documentation of proof of either your heart attack or stroke. I will need this information no later than January 1, 2008.

Second, we will need to prove that you took at least 30 pills of Vioxx within 60 days of the event. Again, this information can be found in either your doctor's medical records who prescribed the Vioxx or at the pharmacy where you had the Vioxx filled shortly before you had your heart attack or stroke.

Third, we must prove that you took the Vioxx at least two weeks before your stroke or heart attack. Again, these records can be found at your doctor's office who prescribed the Vioxx or at the pharmacy where you had the Vioxx filled. It is imperative that you please present to the doctor's office and/or the pharmacy and obtain these necessary medical records. Without this proof of documentation you will be unable to recover in this case.

We appreciate your cooperation in this regard. Please feel free to contact me if you have any questions or concerns.

Sincerely,

Signed in Ms. Tejedor's
Absence to Avoid delay

Maria D. Tejedor

MDT/mjy



MARTINEZ MANGLARDI
DIEZ-ARGUELLES & TEJEDOR

MARIA D. TEJEDOR
BOARD CERTIFIED CIVIL TRIAL LAWYER

540 N. SEMORAN BLVD., ORLANDO, FL 32807
(407) 381-4123 · MMDTLAW.COM

January 29, 2008

Gene Weeks
35241 C.R. 439
Eustis, FL 32736

RE: *Gene Weeks vs. Merck & Co. Inc.*

Dear Mr. Weeks:

　　Enclosed please find the release of all claims that must be read and signed by you on page no. 9 before a notary public. If you need assistance with a notary you may present to my office. Also enclosed, is an authorization for release of medical records and employment records that must be signed by you. I have enclosed a self-addressed pre-stamped envelope for your convenience. Please comply with these requests as soon as possible as we are under strict time constraints.

　　Thank you for your immediate attention to this matter.

Sincerely,

Maria D. Tejedor

MDT/mjv
Enclosures

## RELEASE OF ALL CLAIMS

### CLAIMANT

| Name | First | | Middle | | Last | |
|---|---|---|---|---|---|---|
| | Gene | | | | Weeks | |

| Address | Street | | | | | |
|---|---|---|---|---|---|---|
| | 35241CR 439 | | | | | |
| | City | | | State | | Zip |
| | Eustis | | | Florida | | 32736 |

| Social Security Number | 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 | Date | 1 / 14 / 2008 |
|---|---|---|---|
| | | | (month)   (day)   (year) |

### DERIVATIVE CLAIMANTS (If none, check here: ☒)

| Name | First | Middle | Last |
|---|---|---|---|
| | | | |

| Address | Street | | |
|---|---|---|---|
| | City | State | Zip |
| | | | |

| Social Security Number | | Date | / / |
|---|---|---|---|
| | | | (month)   (day)   (year) |

### CLAIMANT'S COUNSEL

| Law Firm | Martinez, Manglardi, Diez-Arguelles, & Tejedor, P.A. |
|---|---|

Weeks, Gene      1080867

1

USCA5 3456

## RELEASE OF ALL CLAIMS

I, the undersigned Releasor, am a plaintiff or tolling agreement claimant in the Merck & Co., Inc., a New Jersey corporation ("Merck"), Products Liability Litigation. I have enrolled to participate in the program (the "Program") set forth in the Settlement Agreement (the "Agreement") dated as of November 9, 2007. I understand that the terms of the Agreement govern the resolution of my claim. I further understand that, in order to submit my claim into the Program under the Agreement, I am required to submit a release of any and all claims I and the other Releasing Parties (as defined under "Releases" below) have, or may have in the future, against the Released Parties (as defined under "Releases" below) concerning and/or connected with VIOXX (sometimes referred to as "Vioxx" or "rofecoxib") ("VIOXX") and/or with any injury I (and/or any other Releasing Party) have ever claimed, or may at any time in the future claim, VIOXX caused in whole or in part.

Accordingly, in consideration for Merck's agreement to establish the Program, the significant expenses being incurred by Merck in connection with the Program, Merck's waiver of defenses (except as reflected in the Program criteria themselves) solely in the context of the application of the Program, and the opportunity to submit my claim into the Program, I hereby agree and make the following releases, waivers, acknowledgements and agreements for the benefit of the Released Parties (this "Release"). This Release is also entered into by any Derivative Claimant (as defined under "Releases" below) who executes a signature page hereto, in which case the agreement of such Derivative Claimant set forth on its signature page is incorporated in, and is part of, this Release. By signing this Release, both I and any such Derivative Claimant understand and acknowledge that there is no assurance as to the amount, if any, of payment to be made to any claimant under the Program, and this fact shall in no way affect the validity or effect of this Release.

1.   Releases.

(a) On my own behalf and on behalf of each other Releasing Party, I hereby knowingly and voluntarily release, remise, acquit and forever discharge the Released Parties from (i) any and all rights, remedies, actions, claims, demands, causes of action, suits at law or in equity, verdicts, suits of judgments and/or Liens (as defined under "Liens and Other Third-Party Payor Claims" below), of any kind whatsoever ("Claims"), which I or any other Releasing Party may have ever had, may now have or at any time hereafter may have against any Released Party and (ii) any and all debts, liabilities, obligations, covenants, promises, contracts, agreements and/or obligations, of any kind whatsoever ("Liabilities"), which any Released Party may have ever had, may now have or at any time hereafter may have to me or any other Releasing Party, in the case of clause (i) and clause (ii), to any extent, or in any way, arising out of, relating to, resulting from and/or connected with VIOXX and/or with any injury I (and/or any other Releasing Party) have ever claimed, or may at any time hereafter claim, VIOXX caused in whole or in part. These Claims and Liabilities are the "Released Claims and Liabilities".

(b) The term "Released Parties" means all the parties, past, present and/or future, in any way and/or at any time connected with VIOXX and/or with any injury I (or any other Releasing Party) have ever claimed, or hereafter claim, VIOXX caused in whole or in part, including, but not limited to, Merck, all named defendants in any pending action concerning VIOXX and/or any such injury to

USCA5 3457

which I am (and/or any other Releasing Party is) a party, and all those who may have acted in concert with Merck, together with their respective insurers.  These parties, past, present and/or future, in any way and/or at any time connected with VIOXX and/or with any injury I (or any other Releasing Party) have ever claimed, or hereafter claim, VIOXX caused in whole or in part, also include, but are not limited to, manufacturers; suppliers of materials; distributors; other persons involved in development, design, manufacture, formulation, testing, distribution, marketing, labeling, regulatory submissions, advertising and/or sale of any product; physicians, pharmacists and other healthcare providers; sales representatives; pharmacies, hospitals and other medical facilities; advertisers; manufacturers of other products that I used before, while or after taking VIOXX; the respective past, present, and/or future parents, subsidiaries, divisions, affiliates, joint venturers, predecessors, successors, assigns, and transferees of the parties referred to in this paragraph; and the respective past, present and/or future shareholders (or the equivalent thereto), directors (or the equivalent thereto), officers (or the equivalent thereto), managers, principals, employees, consultants, advisors, attorneys, agents, servants, representatives, heirs, trustees, executors, estate administrators and personal representatives (or the equivalent thereto) of the parties referred to in this paragraph.

(c)  The term "Releasing Parties" means (i) myself and (ii) any and all persons who have or assert the right to sue Merck or any other Released Party, independently, derivatively or otherwise, by reason of their personal relationship with me, and/or otherwise by, through or under, or otherwise in relation to, me ("Derivative Claimants").  Derivative Claimants include, but are not limited to, my heirs, beneficiaries, surviving spouse (including, but not limited to, a putative or common law spouse), surviving domestic partner and/or next of kin, if any.

(d)  I acknowledge that I (and/or any other Releasing Party) may in the future learn of additional and/or different facts as they relate to VIOXX, the Released Parties' activities as they relate to VIOXX, and/or any injury I (and/or any other Releasing Party) have ever claimed, or may at any time in the future claim, VIOXX caused in whole or in part.  I understand and acknowledge the significance and consequences of releasing all of the Released Claims and Liabilities and hereby (on my own behalf and on behalf of each other Releasing Party) assume full risk and responsibility for any and all such additional and/or different facts and any and all Released Claims and Liabilities that I (and/or any other Releasing Party) may hereinafter incur or discover.  To the extent that any law, statute, ordinance, rule, regulation, case or other legal provision or authority (each, a "Law") may at any time purport to preserve my and/or any other Releasing Party's right to hereinafter assert any such unknown and/or unanticipated Claims and/or Liabilities, I hereby (on my own behalf and on behalf of each other Releasing Party) specifically and expressly waive (to the fullest extent permitted by applicable Law) each Releasing Party's rights under such Law.  I further acknowledge having had an opportunity to obtain advice of counsel of my choosing regarding this waiver, and having discussed it with such counsel to my satisfaction.

(e)  On my own behalf and on behalf of each other Releasing Party, I acknowledge and agree that the releases set forth in this Release are irrevocable and unconditional, inure to the benefit of each Released Party, and are intended to be as broad as can possibly be created.

USCA5 3458

(f)   WITHOUT LIMITATION OF THE FOREGOING, THIS RELEASE IS
SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE EVEN IF IT IS
ALLEGED, CHARGED OR PROVED THAT SOME OR ALL OF THE RELEASED CLAIMS
AND LIABILITIES ARE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE,
NEGLIGENCE PER SE, GROSS NEGLIGENCE, BREACH OF WARRANTY, VIOLATION
OF LAW, DEFECTIVE PRODUCT, MALICE, AND/OR CONDUCT OF ANY TYPE BY
MERCK, ANY OF THE OTHER RELEASED PARTIES, ANY RELEASING PARTY
AND/OR ANY OTHER PERSON.  THIS RELEASE IS SPECIFICALLY INTENDED TO
AND DOES INCLUDE, BUT IS NOT LIMITED TO, A RELEASE OF, AND COVENANT
NOT TO SUE FOR, ANY WRONGFUL DEATH CLAIM THAT MAY BE BROUGHT AT
ANY TIME BY OR ON BEHALF OF ANY OF THE RELEASING PARTIES IN
CONNECTION WITH ANY OF THE FACTS, EVENTS AND/OR INCIDENTS THAT GAVE
RISE TO ANY OF THE RELEASED CLAIMS AND LIABILITIES.

2.   **Attorneys' Fees; Division of Any Settlement Payment.**  I understand that the Released
Parties are not responsible for any attorneys' fees or costs I have incurred or may at any time incur,
including, but not limited to, entering into this Release and any other documents.  I understand that,
with respect to any payment that may be made to me under the Program (a "Settlement Payment"),
any division of such Settlement Payment between me, any Derivative Claimant executing this Release
and our respective counsel (if any) executing a Certification of Counsel attached to this Release shall
be determined by me and such other person(s), and such division, or any dispute in relation to such
division, shall in no way affect the validity of this Release.

3.   **Pursuit of Certain Claims.**  I agree that I will never (i) take any legal or other action to
initiate, pursue or maintain, or otherwise attempt to execute upon, collect or otherwise enforce, any of
the Released Claims and Liabilities of or against any Released Party, (ii) institute or participate in any
new legal action against any Released Party to any extent, or in any way, arising out of, relating to,
resulting from and/or connected with VIOXX and/or with any injury I (and/or any other Releasing
Party) have ever claimed, or may at any time hereafter claim, VIOXX caused in whole or in part or
(iii) attempt to execute or collect on, or otherwise enforce, any judgment that may be entered against
any Released Party in any legal action described in clause (ii) or my pending legal action against
Merck.

4.   **Liens and Other Third-Party Payor Claims.**

(a)   I agree that prior to the first time, if any, that a Settlement Payment is made to me, I shall
identify to Merck and to the Lien Resolution Administrator for the Program all governmental
authorities that are Third Party Providers/Payors (as defined below) known to me to hold or assert any
lien, pledge, charge, security interest, assignment, encumbrance, subrogation right, third-party interest
or other adverse claim of any nature whatsoever ("Lien") pursuant to any applicable statute with
respect to any Settlement Payment (and/or the right to receive such Settlement Payment), through
procedures and protocols to be established by the Lien Resolution Administrator, subject to approval
by the Claims Administrator for the Program.



Weeks, Gene      1080867

4

USCA5 3459

(b)  A "Third Party Provider/Payor" is any provider or payor (public or private) of (i) health, hospital, medical, physician, healthcare and/or pharmaceutical services, products or expenses and/or (ii) any other form of compensation, including, but not limited to, federal and state governmental authorities (or other persons) providing Medicare and/or Medicaid services or benefits.

(c)  I understand and acknowledge that satisfaction and discharge of any and all Liens with respect to any Settlement Payment (and/or the right to receive any Settlement Payment) is the sole responsibility of me, any Derivative Claimant executing this Release and our respective counsel (if any) executing a Certification of Counsel attached to this Release and must, in relation to all governmental authorities that are Third Party Providers/Payors who hold or assert any Liens pursuant to any applicable statute, be established to the satisfaction of the Claims Administrator and Merck before any Settlement Payment (if any) can be disbursed to me.

(d)  Prior to the first time, if any, that a Settlement Payment is made to me, I shall, jointly and severally with any Derivative Claimant executing this Release (and with our respective counsel (if any) executing a Certification of Counsel attached to this Release), represent and warrant that any and all Liens with respect to any and all Settlement Payments (and/or the right to receive any and all Settlement Payments) have been satisfied and discharged.  Furthermore, upon request to the Lien Resolution Administrator, Merck shall be entitled to proof of satisfaction and discharge of any or all such Liens pursuant to any applicable statute in relation to all governmental authorities that are Third Party Providers/Payors.

(e)  In addition to and without limitation of the foregoing, I hereby agree, jointly and severally with any Derivative Claimant executing this Release (and with our respective counsel (if any) executing a Certification of Counsel attached to this Release), to indemnify and hold harmless the Merck Released Parties (as defined below) from and against (i) any and all Claims made or asserted at any time against any Merck Released Party by (x) any Third Party Provider/Payor in relation to, (y) any person at any time holding or asserting any Lien in relation to and/or (z) any other person at any time claiming by, through or under, me or any Derivative Claimant executing this Release, with respect to any funding payment by or for the account of Merck under the Program and/or any Settlement Payment (and/or the right to receive any such Settlement Payment) and (ii) any and all damages, losses, costs, expenses (including, but not limited to, legal fees and expenses) and/or Liabilities incurred or suffered by, or imposed on, any Merck Released Party in connection with, arising out of or resulting from any Claim described in clause (i) of this sentence (including, but not limited to, any amount paid or to be paid in satisfaction of any such Claim).

(f)  The term "Merck Released Parties" means (i) Merck and (ii) all other Released Parties, past, present and/or future, in any way and/or any time related to Merck, including, but not limited to, Merck's past, present and/or future parents, subsidiaries, divisions, affiliates and joint venturers; the respective past, present and/or future predecessors, successors, assigns and transferees of the parties referred to in this paragraph; and the respective past, present and/or future insurers, shareholders (or the equivalent thereto), directors (or the equivalent thereto), officers (or the equivalent thereto), managers, principals, employees, consultants, advisors, attorneys, agents, servants, representatives, heirs, trustees, executors, estate administrators and personal representatives (or the equivalent thereto) of the parties referred to in this paragraph.

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

Weeks, Gene      1080867

USCA5 3460

5

5.   <u>Indemnification for Released Claims and Liabilities.</u>

(a)  I hereby agree, jointly and severally with any Derivative Claimant executing this Release, to indemnify and hold harmless each Released Party from and against (i) any and all Claims that may be asserted, made or maintained at any time against any Released Party by, on behalf of or for the benefit of, or otherwise through or under, any Releasing Party with respect to any of the Released Claims and Liabilities and (ii) any and all damages, losses, costs, expenses (including, but not limited to, legal fees and expenses) and/or Liabilities incurred or suffered by, or imposed on, any Released Party in connection with, arising out of or resulting from any Claim described in clause (i) of this sentence (including, but not limited to, any amount paid or to be paid in satisfaction of any such Claim) and/or, without limitation of the foregoing, any breach by me (or any Derivative Claimant executing this Release) of any of the terms of this Release.

(b)  Without limitation of the foregoing paragraph, I further agree, jointly and severally with any Derivative Claimant executing this Release, to indemnify and hold harmless the Merck Released Parties from and against (i) any and all Claims made or asserted (prior to, on or after the date of my claim under the Program) against any Merck Released Party by any Released Party that is not an Merck Released Party (a "<u>Non-Merck Released Party</u>") arising out of any Claim made or asserted at any time by me and/or any other Releasing Party against any Non-Merck Released Party to any extent, or in any way, arising out of, relating to, resulting from and/or connected with VIOXX and/or any injury I (and/or any other Releasing Party) have ever claimed, or may at any time hereafter claim, VIOXX caused in whole or in part and (ii) any and all damages, losses, costs, expenses (including, but not limited to, legal fees and expenses) and/or Liabilities incurred or suffered by, or imposed on, any Merck Released Party in connection with, arising out of or resulting from any Claim described in clause (i) of this sentence (including, but not limited to, any amount paid or to be paid in satisfaction of any such Claim).

(c)  Merck has the right to setoff all or any portion of any amount payable to any Merck Released Party pursuant to the indemnification provisions of the Release against an equal amount of any Settlement Payment.

6.   <u>Confidentiality</u>.  I agree to maintain in confidence, and shall not disclose to any person, the amount of any Settlement Payment (if any),  except as may be required by applicable Law; <u>provided,</u> that I understand that I may disclose such information to my immediate family members and to my counsel, accountants and/or financial advisors, if any (each of whom I shall, upon such disclosure, instruct to maintain and honor the confidentiality of such information).  I agree that if I breach this confidentiality provision, money damages would not be a sufficient remedy and, accordingly, without limitation of any other remedies that may be available at law or in equity, Merck shall be entitled to specific performance and injunctive or other equitable relief as remedies for such breach.

7.   <u>Medical Documentation Authorization</u>.  I have authorized my counsel to obtain and supply (or if I am not represented by counsel, I will obtain and supply) to Merck, the Claims Administrator, the Lien Resolution Administrator, the Special Master (and any Deputy Special



Weeks, Gene      1080867

6

USCA5 3461

Master) for the Program, the Chief Administrator for the Program, members of the Gate Committee for the Program, all other persons provided for under the terms of the Agreement to consider claims, and their respective attorneys, agents, servants, employees and independent auditors and others deemed necessary by each to assist them, the medical or other documentation required for approval of an award under the Program along with any and all authorizations for the release of medical records required in my Enrollment Form under the Program or that may be required by a provider of such documentation, including, but not limited to, a specific authorization required by a particular hospital, pharmacy, physician or any other source of documentation.  I agree to cooperate fully in providing any authorization for the release of records requested in the Program.  I also authorize the foregoing persons to have access to my medical and other documentation available in any electronic depository through which Merck delivers medical records it collects by way of authorization or subpoena to counsel for plaintiffs in the VIOXX litigation.

8. **ACKNOWLEDGEMENT OF COMPREHENSION; NO GUARANTEE OF PAYMENT.** I AM ENTERING INTO THIS RELEASE FREELY AND VOLUNTARILY, WITHOUT BEING INDUCED, PRESSURED OR INFLUENCED BY, AND WITHOUT RELYING ON ANY REPRESENTATION OR OTHER STATEMENT MADE BY OR ON BEHALF OF, MERCK OR ANY OTHER PERSON.  I UNDERSTAND AND ACKNOWLEDGE THE NATURE, VALUE AND SUFFICIENCY OF THE CONSIDERATION DESCRIBED IN THE SECOND PARAGRAPH OF THIS RELEASE.  I ACKNOWLEDGE THAT I HAVE READ THIS RELEASE AND THE AGREEMENT, AND I HAVE HAD AN OPPORTUNITY TO OBTAIN ADVICE FROM, AND ASK QUESTIONS OF, COUNSEL OF MY CHOOSING REGARDING THE TERMS AND LEGAL EFFECT OF THESE DOCUMENTS AND MY DECISION TO ENROLL TO PARTICIPATE IN THE PROGRAM.  I FURTHER ACKNOWLEDGE THAT I HAVE DISCUSSED ALL THESE MATTERS WITH THE COUNSEL TO ME EXECUTING A "CERTIFICATION OF COUNSEL" ATTACHED TO THIS RELEASE, AND SUCH COUNSEL HAS ANSWERED ALL MY QUESTIONS TO MY SATISFACTION.  I FURTHER ACKNOWLEDGE THAT I UNDERSTAND THIS RELEASE AND THE AGREEMENT AND THAT THERE IS NO GUARANTEE THAT I WILL RECEIVE ANY SETTLEMENT PAYMENT OR, IF ANY SETTLEMENT PAYMENT IS MADE, THE AMOUNT THEREOF.

9. **Waiver of Certain Provisions Regarding Timing of Any Payments.** If I have any civil action pending in any jurisdiction that has enacted, promulgated or otherwise adopted any Law containing provisions that establish specific time periods within which settlement funds, if any, must be paid to me in connection with the settlement of such civil action and/or impose sanctions, penalties or other similar obligations against the paying party if the settlement funds are not paid within such time periods and/or invalidate or otherwise affect the terms of the settlement of such civil action (including, but not limited to, Pennsylvania Rule of Civil Procedure 229.1), I hereby (i) specifically and expressly waive (to the fullest extent permitted by applicable Law) my rights under any such provisions and (ii) agree that payment of any Settlement Payment shall be made solely in accordance with the terms and conditions of the Program.

10. **No Admission of Fault.** I understand and agree that Merck has entered into this Release and the Agreement solely by way of compromise and settlement.  These documents are not, and shall



Weeks, Gene       1080867

USCA5 3462

not be construed at any time to be, an admission of liability, responsibility or fault of or by Merck or any other Released Party.

11. <u>Representations and Warranties</u>. I hereby represent and warrant that: I have full power, authority and capacity to enter into this Release, which is enforceable in accordance with its terms. Except as set forth in the second sentence under "<u>Attorneys' Fees; Division of Any Settlement Payment</u>" above, I have the sole right to receive any and all Settlement Payments, if any, with respect to my claim under the Program. Neither I nor any other Releasing Party has sold, assigned, transferred or otherwise disposed of, or pledged or otherwise encumbered, any of the Released Claims and Liabilities in whole or in part.

12. <u>GOVERNING LAW</u>. THIS RELEASE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE SUBSTANTIVE LAW OF NEW YORK, WITHOUT REGARD TO ANY CHOICE-OF-LAW RULES THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION.

13. <u>Severability</u>. I agree that if any provision of this Release is adjudicated to be invalid, illegal or unenforceable in any jurisdiction, the relevant provision shall be deemed modified to the extent necessary to make it enforceable in such jurisdiction and, if it cannot be so modified, this Release shall be deemed amended to delete herefrom the invalid or unenforceable provision, and this Release shall be in full force and effect as so modified. Any such modification or amendment in any event shall apply only with respect to the operation of this Release in the particular jurisdiction in which such adjudication was made and shall not affect such provision in any other jurisdiction. To the fullest extent permitted by applicable Law, I hereby (on my own behalf and on behalf of each other Releasing Party) specifically and expressly waive any provision of Law that renders any provision of this Release invalid, illegal or unenforceable in any respect.

14. <u>Legal Representatives</u>. If I am signing this Release as a legal representative of a VIOXX user, then (i) all references in this Release to my use of, or injury from, VIOXX shall also mean the use of, or injury from, VIOXX by or of such VIOXX user, all references in this Release to any person claiming by, through or under, or in relation to, me shall also mean any person claiming by, through or under, or in relation to, such VIOXX user, and all references to me in the definition of Derivative Claimant shall also mean such VIOXX user, (ii) if such VIOXX user is not deceased, he or she shall also be a "Releasing Party", (iii) if such VIOXX user is deceased, I am executing this Release both individually and on behalf of the estate of such VIOXX user, and (iv) prior to the first time, if any, that a Settlement Payment is made to me, I will obtain judicial approval of this Release to the extent required under applicable Law.

[The remainder of this page is intentionally left blank.]



IN WITNESS WHEREOF, I have executed this Release effective as of the date set forth under my name below:

RELEASOR:

By _Gene Weeks_

Name: Gene Weeks

Title:

Social Security No.: 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

Dated: _1/30/08_

## NOTARIZATION OF RELEASOR'S SIGNATURE

STATE OF _Florida_, COUNTY OF _Lake_ SS.:

I hereby certify that on _January 30_, 200_8_ _Gene Weeks_ 

personally came before me and acknowledged under oath to my satisfaction that this person: (a) is

named and personally signed this document; and (b) signed, sealed and deliver this document as his or

her act and deed.

ROBIN L. DAVIS
MY COMMISSION # DD410064
EXPIRES: March 22, 2009

Notary Public of the State of _Florida_



Weeks, Gene        1080867

9

CERTIFICATION OF COUNSEL

(COUNSEL FOR RELEASOR)

I, _Maria Taylor_ , hereby represent and declare that _Gene Weeks_ ("Releasor") has at all relevant times been represented by the undersigned counsel. I have provided Releasor a copy of the Release to which this Certification of Counsel is attached and have made available to Releasor a copy of the Settlement Agreement referred to in the Release (which copies include all attachments). I discussed with Releasor the terms and legal effect of all of the foregoing documents and Releasor's decision to enroll to participate in the Program (as defined in the Release), and I answered any and all questions Releasor may have had. I hereby certify that, having had a full opportunity to read, understand, and inquire of counsel about the terms and conditions of the foregoing documents, Releasor does not have, and I do not have, any objection to the terms of this Release or any of the other foregoing documents. I further agree to be bound by the "Confidentiality" section in this Release and my joint and several obligations to provide representations and warranties regarding the satisfaction of, and indemnification with respect to, Liens set forth under "Liens and Other Third-Party Payor Claims".

BY COUNSEL FOR RELEASOR:

By

Name: _Maria Taylor_

Title:

Dated: _2-18-08_

Weeks, Gene    1080867

10

### SIGNATURE PAGE AND AGREEMENT BY DERIVATIVE CLAIMANT

I am a person having or asserting the right to sue Merck by reason of my relationship with Releasor (or, if Releasor is a legal representative of a VIOXX user, such VIOXX user). I hereby enter into the Release to which this signature page is attached and agree to be bound by all of its terms (and, without limitation, hereby give and make all releases, waivers, acknowledgements, agreements, representations and warranties therein) on the same basis as Releasor set forth therein (including, but not limited to, all joint and several indemnification obligations set forth therein). This agreement is effective as of the date set forth beneath my name below.

DERIVATIVE CLAIMANT:

By _Gene Weeks_

Name: Gene Weeks

Title:

Social Security No.: 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

Dated: 1/30/08

### NOTARIZATION OF DERIVATIVE CLAIMANT'S SIGNATURE

STATE OF Florida , COUNTY OF Lake SS.:

I hereby certify that on January 30, 2008 Gene Weeks personally came before me and acknowledged under oath to my satisfaction that this person: (a) is named and personally signed this document; and (b) signed, sealed and deliver this document as his or her act and deed.

_____
Notary Public of the State of _____

ROBIN L. DAVIS
MY COMMISSION #DD410064
EXPIRES: March 22, 2009

## CERTIFICATION OF COUNSEL

## (COUNSEL FOR DERIVATIVE CLAIMANT)

I,_____, hereby represent and declare that _____ ("Derivative Claimant") has at all relevant times been represented by the undersigned counsel.  I have provided Derivative Claimant a copy of the Release to which this Certification of Counsel is attached and have made available to Derivative Claimant a copy of the Settlement Agreement referred to in the Release (which copies include all attachments).  I have discussed with Derivative Claimant the terms and legal effect of all of the foregoing documents and I answered any and all questions Derivative Claimant may have had.  I hereby certify that, having had a full opportunity to read, understand, and inquire of counsel about the terms and conditions of the foregoing documents, Derivative Claimant does not have, and I do not have, any objection to the terms of this Release or any of the other foregoing documents.  I further agree to be bound by the "Confidentiality" section of this Release and my joint and several obligations to provide representations and warranties regarding the satisfaction of, and indemnification with respect to, Liens set forth under "Liens and Other Third-Party Payor Claims".

BY COUNSEL FOR DERIVATIVE CLAIMANT:

By _____
Name:
Title:
Dated: _____

Weeks, Gene        1080867

12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Gene Weeks | MDL NO. 1657 |
| Plaintiff(s), | |
| v. | SECTION: L |
| MERCK & CO., INC., | |
| Defendant(s). | |

## STIPULATION OF DISMISSAL WITH PREJUDICE AS TO ALL DEFENDANTS

Pursuant to the rule applicable to the voluntary dismissal of an action, the undersigned counsel hereby stipulate that all claims of plaintiff Gene Weeks , against defendant Merck & Co., Inc. and all other named defendants be dismissed in their entirety with prejudice, each party to bear its own costs.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct of the forgoing has been furnished Federal Express to Claims Administrator 115 S. 15th Street, Suite 400, Richmond, Virginia 23219-4209. This ____ of February, 2008.

Maria D. Tejedor, Esq.
Martinez, Manglardi, Diez-Arguelles &
Tejedor
540 N. Semoran Blvd.
Orlando, FL 32807
407-381-4123
FBN: 0095834

Attorney for Merck & Co., Inc

Dated: _____

Dated:  2- 18 - 08

EXHIBIT E

TO

AFFIDAVIT OF PLAINTIFF GENE WEEKS

USCA5 3469

October 18, 2008
35241 C. R. 439
Eustis, FL 32736

Maria Tejedor Esq.
540 North Semoran Blvd.
Orlando, FL 32807

RE: Latest News Regarding Vioxx Risks

Ms. Tejedor,

Dr. Robert Bresalier, professor, medicine, M.D. Anderson Cancer, university

Of Texas, Houston; Eric J. Topol, M.D., director, Scripps Translational Science Institute,

Chief academic officer, Scipps Health, a Jolla, Calif., have issued statements as early as

last week, based on a new study.

'This research revealed the risk factors increased two fold for M.I. and persisted for at

least one year as stated by Dr. Bresalier, after stopping the drug."

Dr. Harlan Krumholtz, Yale University Cardiologist, who is assisting Vioxx plaintiffs

"states this is an important warning about how we asses medications long term. Including

after use stops".

I wonder if this latest news has come to your attention, and want to know if these expert

statements will impact the settlement process ongoing?

Regards, Gene A. Weeks II



MARIA D. TEJEDOR
BOARD CERTIFIED CIVIL TRIAL LAWYER

540 N. SEMORAN BLVD., ORLANDO, FL 32807
(407) 381-4123 · MMDTLAW.COM

October 28, 2008

Mr. Gene Weeks
35241 CR 439
Eustis, FL 32736

    Re:   *Vioxx Claim*

Dear Mr. Weeks:

    Thank you for your letter dated October 18, 2008.  Please be advised that I recently attended a Vioxx seminar and these cases are currently being reviewed significant cases are being approved.  To date we have received approval of some of our Vioxx cases we anticpate hearing on your case in the very near future and we will keep you updated.

    Thank you for your attention to this matter.

Sincerely,

Maria D. Tejedor

MDT/mjv

EXHIBIT F

TO

AFFIDAVIT OF PLAINTIFF GENE WEEKS

USCA5 3472



MARIA D. TEJEDOR
BOARD CERTIFIED CIVIL TRIAL LAWYER

MARTINEZ MANGLARDI
DIEZ-ARGUELLES & TEJEDOR

540 N. SEMORAN BLVD., ORLANDO, FL 32807
(407) 381-4123 · MMDTLAW.COM

December 20, 2008

Mr. Gene Weeks
35241 CR 439
Eustis, FL 32736

Re:    *Vioxx MDL Settlement Claim*

Dear Mr. Weeks:

We have reviewed your file and determined that there are no grounds to dispute your notice of ineligibility as you do not meet the proximity factor of the Settlement Agreement. If you have any additional pharmacy records which would show you filled a Vioxx perscription within 60 days of your MI event, please forward them to my office IMMEDIATELY. If you do not have the records but believe there is a pharmacy who does have them, please advise me of the name of the pharmacy so we can obtain the records.

At this time, your options are as follows:

1.   You may withdraw your settlement claim and seek relief through the tort system. Please be advised, however, that our firm will not represent you in such an action. **Furthermore, if you pursue a separate tort claim, you may not admit any additional medical or pharmacy records as part of your case, other than the ones submitted to Claims Adminstrator. You will also need to complete the attached form entitled "future evidence stipulation".**

2.   You can do nothing and allow the Gate committee to review your claim. Although unlikely, the Gate committee still may determine you are eligible for payment although you have not met the three criteria. This determination is solely within the power of the Gate committee and we cannot do anything to influence it. **If the Gate committee does not make an exception and approve your claim you have two options:**

     i.    You can do nothing and accept the denial, **at which point you have no further relief for your Vioxx related injuries either in tort or under the Settlement Agreement.**

     ii.   You can appeal the determination to the Special Master who will review your claim. If the Special Master approves you claim, you will move forward to the claims valuation process. **If the Special Master does not grant your appeal you have no further relief for your Vioxx related injuries either in tort or under the Settlement Agreement.**

3.   If you have any additional records, we can appeal the Notice of Ineligibility and wait for a new determination.

At this time, we do not have any additional records which would support an appeal of the Notice of Ineligibility. As such, please select one of the three options on the next page; sign and date; and return this page to my office.

If you have any questions, please do not hesistate to contact me.

Sincerely,

Maria D. Tejedor

MDT/JS
Enc: As stated

## Choose ONE of the Following

_____ - I am submitting additional records which support my claim and I am instructing you to appeal the Notice of Ineligibility.


_____ - I am choosing to <u>not submit any additional records</u> and am allowing my claim to proceed to the Gate committee. I further understand that a special approval by the Gate committee is highly unlikely. Should the Gate committee not rule in my favor and an appeal to the Special Master be denied I understand that I will have <u>no futher rights against Merck in either the tort system or this Settlement Agreement.</u>


_____ - I am choosing to withdraw my claim under the Settlement Agreement and preserve my right to file an independent tort action against Merck. I have signed and return the attached "future evidence stipulation". I further understand that the law firm of Martinez, Manglardi, Diez-Arguelles & Tejedor <u>will not be representing me in this independent tort action</u> and that upon the withdrawal of my claim, I will no longer be represented by the law firm of Martinez, Manglardi, Diez-Arguelles & Tejedor.


_____ (Signature)

_____ (Print Name)

_____ (Date)

Exhibit 2.7.3

FUTURE EVIDENCE STIPULATION

This Stipulation pertains to the Settlement Agreement ("the Agreement") dated November __, 2007, incorporated herein by reference, including but not limited to the program for resolution of claims relating to the use of Vioxx described therein (generally and collectively referred to herein as the "Resolution Program" or "the Program")

· I hereby stipulate and agree to the following:

1.       I have received a determination from the Claims Administrator that I have not been found to be a Qualifying Program Claimant under the terms of the Agreement.  I understand that the Claims Administrator has found under the terms of the Agreement that I [or the individual for whom I act as an agent or representative with respect to their claims, or as personal representative of their estate, or the individual with respect to whom I brought a derivative claim] (a) did not experience a myocardial infarction ("MI" or heart attack), sudden cardiac death ("SCD"), or ischemic stroke, as those injuries are defined by the Agreement; and/or (b) did not have sufficient evidence to establish receipt of thirty (30) Vioxx pills within a 60 day period as required by the Program; and/or (c) did not experience a MI, SCD or stroke within fourteen days of my last use of Vioxx as required by the Program.  I further understand that the Gates Committee has not subsequently overturned the determination of the Claims Administrator, or otherwise deemed me to be a Qualifying Program Claimant.

2.       I understand that I now have the option of (a) seeking an appeal within the terms of the Program or (b) exiting from the Program under the terms of the Agreement.

3.       By executing this Stipulation, I elect not to appeal the claim in the Program, and I understand that, under the terms of the Agreement, upon execution of this Stipulation, the Release and Stipulation of Dismissal I provided under the Agreement will be returned to me.

4.       I further understand and specifically acknowledge and stipulate that if I should decide to pursue the claim outside of the Program, I may not make any allegations or introduce any evidence regarding (a)  Vioxx usage, including but not limited to the dose, duration, consistency of Vioxx usage, and/or alleged proximity of use of Vioxx to the date of alleged injury; (b) medical history, and/or (c) alleged injury, other than as were made and included in the Program through the Claims Package associated with my claim.

5.       I further understand and stipulate that the limitations imposed under paragraph four, above, remain applicable even if I obtain new evidence or documentation after the date of this Stipulation.  However, I also understand that if I do obtain new evidence, I can re-submit the claim to the Program in which case the claim will be reviewed anew in accordance with the Program's criteria and procedures.    I understand that I may submit new evidence at any time prior to the Enrollment Deadline Date, but not thereafter.  New evidence will only be considered for the program if the Claims Administrator determines that (i) I was not aware of the new evidence at the time I submitted my original claims package, or that I had made a diligent and

2

good faith attempt to produce the new evidence as part of my original claims package, and (ii) the new evidence is material to a determination as to whether I meet the program's Eligibility Requirements. I also understand I will be required to execute and deliver a new Release and Dismissal With Prejudice Stipulation, as well as all other materials required for Enrollment.

6.      I stipulate that I will not attempt to introduce in any court of law or tribunal any evidence contrary to, or in addition to, the allegations, facts or records that were presented to the Program's Claims Administrator, as set forth in or appended to my Claims Package, or allege an injury connected with Product other than the injury I claimed through the Program.

Name _____
Address _____
Social Security No. _____
Program Claim No. _____

_____
Signature

Subscribed and sworn before me this _____ day of _____, 20___.

_____
Notary Public

EXHIBIT G

TO

AFFIDAVIT OF PLAINTIFF GENE WEEKS

USCA5 3478



**MARTINEZ MANGLARDI
DIEZ-ARGUELLES & TEJEDOR**

MARIA D. TEJEDOR
BOARD CERTIFIED CIVIL TRIAL LAWYER

540 N. SEMORAN BLVD., ORLANDO, FL 32807
(407) 381-4123 · MMDTLAW.COM

January 16, 2009

Mr. Gene Weeks
35241 CR 439
Eustis, FL  32736

  Re: *Vioxx MDL Settlement Claim*

Dear Mr. Weeks:

 This is to confirm the meeting we had on January 7, 2009 at 2:00p.m. at the Orange County Courthouse. At that time we discussed the fact that your case was not approved through the Vioxx MDL as a claim that qualified due to the fact that the records that we have show the last time you took Vioxx was in 2001 and that you did not meet the proximity gate as required by the Vioxx Settlement Requirements. During our meeting, you confirmed and did not dispute the fact that you do not meet the proximity gate since it had been over two years since you had last ingested Vioxx prior to your heart attack. Therefore, you have elected to allow us to withdraw as your counsel and you have elected to seek alternative counsel to file your lawsuit. We will be filing a notice of withdrawl in the very near future and provide you with notice of the same. It has been my pleasure to have had the opportunity to work with you and we wish you the very best off luck in the future.

 If you have any questions or concerns please feel free to contact my office.

     Sincerely,

     Maria D. Tejedor

MDT/mjv

USCA5 3479

01/23/2009   04:38   3525894510                    SUNSTAR                          PAGE   02/02



**MARTINEZ MANGLARDI**
**DIEZ-ARGUELLES & TEJEDOR**

MARIA D. TEJEDOR
BOARD CERTIFIED CIVIL TRIAL LAWYER

540 N. SEMORAN BLVD., ORLANDO, FL 32807
(407) 381-4123 · MMDTLAW.COM

January 22, 2009

Mr. Gene Weeks
35241 CR 439
Eustis, FL 32736

RE: *Gene Weeks v.s Merck & Co. Inc.*

Dear Mr. Weeks:

Pursuant to your request we are in the process of submitting your future evidence stipulation to the Claims Administrator however, we have been informed by the Claims Administrator that the submission at this point is premature as your claim still may make it through the gates committee. After a determination by Merck of whether or not your claim will make it through the gates committee we will then have an opportunity to resubmit your future evidence stipulation and withdraw your claim into the tort system.

Please be advised that Martinez, Manglardi, Diez-Arguelles & Tejedor will continue to represent you during this settlement process and up until the point in which you either receive an award from the Gates Committee or your future evidence stipulation is approved and accepted by Merck.

Thank you for your attention to this matter.

Sincerely,

Maria D. Tejedor

MDT/JRS/mjv