IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

```
-----------------------------------------------x
AvMed, Inc., et al.                 :    CIVIL ACTION
            Plaintiffs,             :
                                    :    No. 08-1633
        vs.                         :
                                    :    SECTION L, MAG. 3
BrownGreer PLC, U.S.                :
Bancorp, Inc. and John Does         :    HONORABLE ELDON E.FALLON
                                    :    HONORABLE DANIEL E. KNOWLES, III
            Defendants.             :
                                    :    In relation to:  MDL No. 1657
                                    :
                                    :    In re: Vioxx Products Liability Litigation
                                    :
-----------------------------------------------x
```

**HEALTH PLANS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
CORRECTED MOTION: (A) TO IDENTIFY LAW FIRMS REPRESENTING
CERTAIN ELIGIBLE PLAINTIFFS IN PLACE OF THE "JOHN DOE"
DEFENDANTS; (B) TO ADD THE FEDERAL EMPLOYEE HEALTH BENEFITS
ACT ("FEHBA") AND MEDICARE ADVANTAGE REIMBURSEMENT CLAIMS;
AND (C) TO SEAL THAT PORTION OF THE CORRECTED DECLARATION OF
MARK D. FISCHER, ESQ. THAT CONTAINS PROTECTED HEALTH
INFORMATION UNDER THE HEALTH INSURANCE PORTABILITY AND
ACCOUNTABILITY ACT OF 1996 ("HIPAA")[1]**

---

[1] The motion originally sought preliminary injunctive relief. This request is now moot and has been withdrawn. (Docket No. 48684). Further, the Court has granted the request to seal, making that portion of the requested relief moot.  (Docket No. 45428).

{1851 / BRF / 00103612.DOC v1}

This should be an uncontroversial procedural motion to amend the Health Plans' complaint. The case law under Fed. R. Civ. P. 15(a) overwhelmingly favors granting leave to amend complaints. And yet, the Named Law Firms resist the Health Plans' motion, treating the Health Plans' pursuit of their reimbursement rights like a game of cat and mouse.

The Health Plans first moved to protect their right to recover thousands of medical liens created by the Vioxx settlement more than two years ago. At that time, the Court refused to "assume the worst," namely, that "the attorneys for the beneficiaries . . . [would] improperly disperse settlement funds prior to the resolution of healthcare liens," and declined to enjoin the Health Plans' attorneys from distributing settlement funds to Eligible Claimants ("ECs"). *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2008 WL 3285912, *17 (E.D. La. Aug. 7, 2008). The Court's optimism proved warranted: most of the attorneys representing ECs acted responsibly and resolved their clients' liens (through participation in the Court's voluntary Private Lien Resolution Program ("PLRP")) before distributing settlement funds. The eleven law firms[2] the Health Plans seek to name as defendants (the "Named Law Firms"), however, did not.

Named Law Firms rejected the opportunity to reduce their client's reimbursement obligations by at least half, disbursed all settlement proceeds, and willfully ignored Health Plan liens. Under Fifth Circuit and Supreme Court precedent, these firms are now responsible for the Health Plans' valid liens.

Health plans depend on the reimbursement claims system provided under the Employee Retirement Income Security Act ("ERISA"), the Medicine Secondary Pay Act ("MSP"), and the Federal Employee Health Benefits Act ("FEHBA") to protect the health and financial interests of

---

[2] Since filing their motion, the Health Plans settled all outstanding liens they asserted against clients of the former twelfth Named Law Firm, Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz"). (*See* Griffith Decl. ¶¶ 26-28.) Accordingly, the Health Plans have withdrawn that portion of their motion that sought to name Kasowitz as a

themselves and their members.  Plans beneficiaries who settle with tortfeasors without honoring their reimbursement obligations unfairly burden their health plans.  In mass tort cases such as this, law firms' decisions to disregard their clients' contractual obligations cost health plans billions of dollars annually.  Under ERISA, MSP, and FEHBA, health plans have a right to enforce their reimbursement rights, and all participants in tort settlements have potential liability to third-party payers for this collusive activity.

The Named Law Firms' arguments against the motion are meritless. There has been no undue delay.  The Named Law Firms will suffer no legal prejudice from having to account for their behavior.  The Named Law Firms are proper defendants under ERISA, MSP, and FEHBA. The Named Law Firms' arguments about "procedural failures" rely on a material mischaracterization of the facts preceding this motion.  The motion to amend the Complaint should be granted.

## FACTS

On April 18, 2008, Health Plans filed a First Amended Complaint seeking to enforce their health care liens under ERISA.  On June 9, 2008, Health Plans moved the Court to enjoin BrownGreer from distributing settlement funds until Health Plans' pending reimbursement claims were resolved.  On August 7, 2008, the Court denied Plaintiffs' motion.  The Fifth Circuit affirmed the Court's denial.

On January 15, 2009, the Health Plans and the Plaintiffs' Steering Committee ("PSC") established the PLRP. The Health Plans agreed to reduce by *half* their liens against individual participating ECs, and further agreed to cap total recoveries so that no EC would have to

---

defendant.

reimburse his Plan for more than 15% of his recovery.[3]  As of the May 29, 2009 deadline, approximately 44% of ECs had voluntarily participated in the PLRP.

On May 19, 2009, the Court ordered that a matching process take place to try to identify which non-participating EC's were covered by the Health Plans.  The matching process revealed approximately 6,700 ECs who may owe reimbursements to the Health Plans but had not enrolled in the PLRP.

On September 15, 2009, the Court ordered counsel for all ECs to provide notice of the PLRP to their clients.  Pretrial Order No. 48.  On October 9, 2009, the Court enjoined the release of the final 15% of settlement proceeds to certain identified non-participating ECs until their counsel certified in writing that (i) it had complied with pretrial Order No. 48, and (ii) all of its EC clients had been afforded a reasonable opportunity to opt into the Private Lien Resolution Program.  Pretrial Order No. 54.  The Order did not purport to absolve such counsel of any of their independent legal obligations.

From late 2009 until mid 2010, Rawlings reviewed various state and federal dockets to try to identify additional non-participating ECs who had filed personal injury lawsuits involving Vioxx.  The Health Plans then compared the names of these Vioxx plaintiffs with their enrollment records.

In May and June of 2010, Health Plan counsel, Rawlings & Associates, sent multiple letters to the Named Law Firms, identifying their clients found via the above-described matching processes and their potential reimbursement obligations, seeking to confirm and resolve these

---

[3] The maximum lien amount any EC would need to pay to resolve all liens under the LRP is 15% of the EC's gross recovery up to the first $100,000, 12.5% of the EC's gross recovery between $100,000 and $250,000 and 10% of the EC's gross recovery exceeding $250,000.  If the EC's actual lien amounts, based upon Health Plan records, is less than the maximum lien amount, the EC is only obligated to pay this lesser amount.

obligations cooperatively. (*See* August 20, 2010 Declaration of Robert Griffith) ("Griffith Declaration").

Of the 11 remaining Named Law Firms, three—the (1) Branch, (2) Cohen Seglias, and (3) Kline & Specter firms—simply ignored Health Plans' letters. (*See id.* ¶¶ 12-13, 19-20, 29-30.); four more—(4) Anapol Schwartz, (5) Hovde Dassow, (6) Lanier, and (7) Morelli Ratner—insisted that the information provided was somehow "insufficient notice" to "perfect" Health Plans' liens "in subrogation" (*See id.* ¶¶ 7-8, 22, 32, 47.); three more—(8) Cohen Placitella, (9) Weitz & Luxenberg, and (10) Parks Crump—challenged the validity of certain liens while remaining silent about the rest (*see id.* ¶¶ 14-17, 51-52, 53-58), and the one other firm—(11) Locks—sent a two-sentence response denying that it represented any identified ECs who received settlement proceeds (*see id.* ¶¶ 40-43). Counsel for Health Plans sent reply letters to the eight firms that responded to its initial correspondence, offering to provide relevant plan language and breakouts of asserted liens upon submission of a completed HIPAA release form for each EC. (*See id.* ¶¶ 9-10, 17, 23-24, 37-38, 48-49, 57-58.) Only one former Named Law Firm—Kasowitz Benson—accepted this invitation (*see id.* ¶¶ 26-28). As a consequence of the outcome of that process, we have resolved liens and agreed not to seek to add it as a defendant. Three other law firms that Health Plans initially identified as representing a disproportionate number of nonparticipating ECs also cooperated with Health Plans in resolving their liens and thus did not become Named Law Firms for purposes of this motion. (*see id.* ¶¶ 60-62.)

On June 17, 2010, only after these processes had occurred and been exhausted, did the Health Plans move to amend their complaint.

## ARGUMENT

The Named Law Firms oppose the motion on three grounds:  (1) undue delay; (2) undue prejudice; and (3) futility.  Defs.' Resp. Br. ("Resp.") at 8-21.  The Health Plans' timely motion is neither prejudicial nor futile.  Leave to amend should be granted.

### A.     The Health Plans Motion is Timely

Timeliness of a motion for leave to amend is a low hurdle.  In fact, "delay alone is an insufficient basis for denial of leave to amend: The delay must be undue, *i.e.*, it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Mayeaux v. Louisiana Health Service and Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004).

The Named Law Firms argue that the Health Plans' Motion is untimely because "Plaintiffs had years to perfect any alleged reimbursement rights." (Resp. at 8.)  However, nowhere do the Named Law Firms explain what they mean by "perfecting" such rights.

The Health Plans informed the Named Law Firms of their clients' reimbursement obligations, at minimum, more than a year and a half ago in the court-ordered notices sent under the PLRP.  In May 2010, before disbursement of the final stroke payments, Health Plans identified (i) more than 300 of the Named Law Firms' EC clients who owed reimbursements for the Health Plans' payment of their Vioxx-related medical bills, and (ii) the amounts owed.  (*See* Griffith Decl. at ¶¶ 2-4.)  The health plans cannot give more detailed information than this without the Named Law Firms' cooperation or discovery.

The Named Law Firms argue further that the "nearly six (6) year" pendency of the Vioxx litigation and the widespread publicity of the settlement is further evidence of undue delay. (Resp. at 8).  However, this Court has already ruled that the Health Plans' causes of action ripened only when the Named Law Firms received money from the settlement administrator:

> It bears repeating that the Plaintiffs likely do not have any right to pursue reimbursement at all at this stage of the settlement proceedings: there is no identifiable fund against which the Plaintiffs may assert their equitable liens; the unallocated settlement fund at issue does not belong to the health plans; and the beneficiaries do not have possession or legal control over the unallocated settlement fund.

*See Vioxx Prods. Liab. Litig., supra*, at \*17.

The Health Plans filed their Motion on June 17, 2010, just three days after BrownGreer disbursed settlement funds for claims related to ischemic stroke and only eight months after it disbursed funds for claims related to myocardial infarction. Under the strictest possible interpretation of the applicable statute of limitations for the ERISA claims, the Health Plans' claims are timely until October 2012. *See Ratford v. Gen. Dynamics Corp.*, 151 F.3d 396, 399 (5th Cir. 1998) (holding that the limitations period in 29 U.S.C. § 1113 is the earlier of six years from the date of the last act constituting a part of the breach of fiduciary duty or three years from the date plaintiff had actual knowledge of the breach applies to ERISA Section 502(a)(3) claims). Accordingly, Health Plans' *Sereboff* claims are timely as a matter of law. Further, the claims under MSP and for FEHBA plans *must* be timely, because <u>no</u> applicable statute of limitation is shorter than one year in length. *See, e.g., Manning v. Utils. Ins. Co., Inc.*, 254 F.3d 387, 394 (2d Cir. 2009) (six-year statute of limitation for private right of action under MSP).

The Named Law Firms argue further that the Health Plans' Motion is untimely because "any and all Complaints filed relative to the Vioxx litigation were public records" that contained information concerning the names, addresses and dates of injury as well as the name of claimants' counsel. (Resp. at 8.) This assertion is false and irrelevant. Many ECs never sued (they signed tolling agreements) and many of their complaints did not include their addresses. Without a social security number or birthdate, a health plan cannot identify their members with

any degree of certainty.   More significantly, no law requires a health plan to scour every docket in America to discover potential liens.  Health benefit plans universally require members to notify them of any tort recoveries so that reimbursement obligations can be resolved before the settlement money is disbursed.

Motions to amend complaints are routinely granted by courts in this Circuit in far more mature proceedings than those at bar.[4]  The proposed amendment is timely.

**B.      The Named Law Firms Will Suffer No Legally Cognizable Prejudice If The Health Plans Are Given Leave To Amend Their Complaint**

Prejudice under Rule 15(a) "means that the party opposing the amendment would be hindered in the preparation of its case, or would have been prevented from taking some measure in support of its position."  61A AM. JUR. 2D *Pleading* § 776; *Tommaseo v. U.S.*, 80 Fed. Cl. 366, 373-74 (2008).  To justify denial of a motion to amend, the prejudice "must be undue or substantial since almost every amendment of a pleading will result in some 'practical prejudice' to the opposing party."  *Id.* (citations omitted).  Undue prejudice can arise only when litigation has progressed to the point where granting the motion would place an undue, irreversible, or unavoidable burden on the non-movant.  *See Dussouy*, 660 F.2d 594, 599.

The Named Law Firms argue prejudice on the grounds that they did not receive notice of Health Plans intent to sue until May 2010, and even then, Health Plans' correspondence "did not constitute notice and was thoroughly erred," in part because the Named Law Firms were not given relevant plan language for each EC.  (*Id.* at 11.)  However, the Named Law Firms' were

---

[4] *See Bamm, Inc. v. GAF Corp.*, 651 F.2d 389, 391-92 (5th Cir. 1981) (granting motion to amend when discovery was ongoing and a trial date had been scheduled); *Dussouy v. Gulf Coast Inv. Corp*, 660 F.2d 594, 598 (5th Cir. 1981) ("Instances abound in which appellate courts on review have required that leave to amend be granted after dismissal or entry of judgment."); *id.* at 599 (reversing denial of a motion to amend); *Clark v. Am. Favorite Chicken Co.*, 896 F. Supp 611, 615 (E.D. La. 1995) (holding that there was no undue prejudice even though a trial date had been scheduled and "substantial discovery ha[d] already been completed"); *cf. Morse v. Perot Sys. Corp.*, 1999 U.S. Dist. Lexis 13638, *2 (N.D. Tex. Aug. 27, 1999) (holding that there was no undue prejudice even though discovery

given ample opportunity to review the plan language they now claim they need before they unilaterally decided to disburse the settlement money (*See* Griffith Decl. at ¶¶ 9-10, 17, 23-24, 37-38, 48-49, 57-58).   They rejected the offer.  The Named Law Firms are seasoned mass tort lawyers whom the Court may reasonably infer recognized that many of their clients were insured under ERISA, MA Organization or FEHBA plans administered by Health Plans that obligate the members to reimburse their plans from tort recoveries.  At best, they chose to be willfully blind to these obligations, and cannot cry "prejudice" as a result.

## C.     The Health Plans' Motion Is Not Futile

For futility, "there is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim." *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 n.10 (5th Cir. 2010) (citation omitted).  The Health Plans' additional claims under the MSP Act and FEHBA easily satisfy this standard.

The Named Law Firms argue that ECs, not their law firms, are the only proper defendants to this suit. (Resp. at 11).  These out-of-circuit cases were decided years before the Fifth Circuit held that ERISA plans are entitled to impose constructive trusts against law firms representing plan beneficiaries. *See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 354 (5th Cir. 2003) (holding that "a law firm, as counsel for the plan participant and stake holder of specifically identifiable settlement funds in a trust account— on that beneficiary's behalf—fits comfortably within the 'universe of possible defendants' subject to suit").  Further, *Bombadier* expressly relied on precedent that directly contradicts Plaintiffs' position. *See Harris Trust and Sav. Bank v. Salomon SmithBarney, Inc.*, 530 U.S.

---

deadlines and trial had already been scheduled).

238, 246 (2000) (§ 502(c)(3) "admits of no limit . . . on the universe of possible defendants").

The Named Law Firms' attempt to distinguish *Bombardier* and *Longaberger,* arguing that "the

Health Plans have yet to properly identify the specific claimant, plans supposedly harmed, or the

lien amounts that are sought." (Resp. at 17, 20.)  As discussed above and in Mr. Griffith's

Declaration, the Health Plans did provide, or offered to provide, the Named Law Firms with all

such information on at least two occasions.

The MSP rules, which MA Organization Plans must enforce under 42 C.F.R.

§ 422.108(f), expressly provide a right of recovery against attorneys that have received a primary

payment, including settlement funds from a tortfeasor. *See* 42 C.F.R. § 411.24(g).  The Named

Law Firms cite only cases decided before that regulation was promulgated in 2005, which the

regulation rendered inapposite.

Finally, with respect to FEHBA, the Named Law Firms claim that they may have some

(unidentified) state law defenses to the Health Plans' reimbursement claims.  (Resp. at 20.)  The

Named Law Firms may raise any such defenses in their Rule 12 response to the amended

complaint.

With the law against them, the Named Law Firms resort to the "practical futility"

argument that since they already disbursed the settlement funds, "as a practical matter," Health

Plans cannot be reimbursed.  (Resp. at 12.)  These presumptive ethical breaches[5] cannot shield

the Named Law Firms from liability. *See Longaberger Co. v. Kolt*, 586 F.3d 459, 471 (6th Cir.

2009); 42 C.F.R. § 411.24(g).

---

[5] *See* Rule 1.15(d) of the Louisiana Rules of Professional Conduct (requiring a lawyer to "promptly notify" a third person "[u]pon receiving funds . . . in which [said] third person has an interest . . . ."). The Plaintiffs' liens here qualify as protected by this canon because they emanate from "a written agreement by the client . . . guaranteeing payment out of those funds . . . ." *Id.*

**D.      The Health Plans' Complaint Satisfies Rule 8(a)(2) – and Thus Has No Procedural Defects**

The Named Law Firms argue that because Health Plans redacted the names of ECs (to comply with HIPAA), and pleaded only exemplar plan language rather than the specific language from each of the more than 300 nonparticipating ECs previously identified to their respective Named Law Firms, the complaint is deficient and they cannot respond.  (Resp. at 7.)

The Named Law Firms' argument that the Health Plans' failure to identify ECs by name in their motion (at which point they would probably accuse us of violating HIPAA) and file with their motion every relevant plan constitutes a procedural failure under Fed. R. Civ. P. 15, warranting denial of the motion to amend is baseless.  As a matter of law, the Named Law Firms are simply wrong.[6]

In fact, the Named Law Firms know the identity of these ECs and were given an opportunity to receive the relevant plan language for each ECs, but refused the Health Plans' offer to provide it.  (*See* Griffith Decl. and the summary thereof at pages 3-4 of this brief, *supra*).

## CONCLUSION

This Court should grant the Health Plans' motion for leave to amend their complaint to identify the 11 Named Law Firms and proceed to have the Health Plans' claims against them determined on their merits.

---

[6] The federal rules do not require a party to attach a contract to its complaint. *E.g., City Bank v. Compass Bank,* 2010 WL 2680585, *7 (W.D. Tex. July 2, 2010) ("[W]hile it is permissible to attach critical documents, such as contracts, to the pleadings in a civil case, [defendant] points to no rule of law requiring such attachments, or allowing negative inferences to be drawn from their absence.") (emphasis original) (citing *Kennedy v. Chase Manhattan Bank,* 369 F.3d 833, 839 (5th Cir. 2004)); *Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.,* 2007 WL 2729935, *9 (N.D. Tex. Sept. 18, 2007) (Plaintiff "is not required at the pleading stage to attach the contract and/or identify specific contract language"); *In re Dann Marine Towing, LC,* 2004 WL 744881 (E.D. La. Apr. 6, 2004) (same); *Coyne v. Lucky M.K., Inc.,* 2005 WL 1309267, *4 (M.D. Fla. May 31, 2005) ("Defendant's argument that the complaint must be dismissed for failing to attach the signed contracts is without merit. There is no requirement that such contracts be attached, and the complaint adequately alleges the existence of such contracts").

Dated:   August 20, 2010

Respectfully submitted,
LOWEY DANNENBERG COHEN & HART, P.C.

By: _____

Richard W. Cohen
Peter D. St. Phillip
Gerald Lawrence
Karen Iannace
One North Broadway, Suite 509
White Plains, New York  10601
Telephone:      (914) 997-0500
Facsimile:       (914) 997-0035

RAWLINGS & ASSOCIATES, PLLC

Mark D. Fischer
Jeffrey C. Swann
Robert Griffith
One Eden Parkway
LaGrange, Kentucky  40031
Telephone:      (502) 587-1279
Facsimile:       (502) 584-8580

*Attorneys for the Health Plans*

{1851 / BRF / 00103612.DOC v1}                                11