# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In re:  VIOXX | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
|  | MAGISTRATE JUDGE KNOWLES |
| ALL PURCHASE CLAIMS CLASS ACTION COMPLAINTS PENDING OR SUBJECT TO TRANSFER TO MDL 1657 |  |


**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS
OR TO STRIKE CLASS ALLEGATIONS
IN THE PURCHASE CLAIMS MASTER COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND BACKGROUND ................................................................. 1

ARGUMENT ........................................................................................................... 2

I.   PLAINTIFFS HAVE PROPERLY PLEAD CLAIMS UNDER THE
     CONSUMER FRAUD STATUTES ....................................................... 7

     A.   Plaintiffs Have Alleged Their Claims With The Required
          Particularity ............................................................................... 7

          1.   Rule 9(b) Does Not Apply To All Consumer Fraud
               Statutes ............................................................................. 7

               a.   Florida ................................................................... 8

               b.   Massachusetts ........................................................ 8

               c.   Washington ............................................................ 9

          2.   Rule 9(b) Only Requires That Allegations Of Fraudulent
               Conduct, Not All Elements Of A Consumer Fraud Claim,
               Be Alleged With Particularity .......................................... 9

     B.   Plaintiffs State A Claim Under The Consumer Fraud Statutes ................ 11

          1.   Arizona ............................................................................. 11

          2.   Florida .............................................................................. 12

          3.   Illinois .............................................................................. 14

          4.   Indiana .............................................................................. 15

          5.   Kentucky ........................................................................... 16

          6.   Massachusetts ................................................................... 17

          7.   Michigan ........................................................................... 19

          8.   Vermont ............................................................................ 20

          9.   Washington ....................................................................... 22

II.  PLAINTIFFS STATE CLAIMS FOR UNJUST ENRICHMENT ..................... 23

     A.   Plaintiffs' Unjust Enrichment Claims Satisfy Rule 9(b)
          Requirements .......................................................................... 23

     B.   Plaintiffs Allege Actionable Unjust Enrichment Claims ......................... 23

          1.   Arizona ............................................................................. 23

          2.   Florida .............................................................................. 24

          3.   Illinois .............................................................................. 25

          4.   Indiana .............................................................................. 25

890017.2

# TABLE OF CONTENTS
(continued)

**Page**

    5.    Kentucky ........................................................................ 25

    6.    Massachusetts .............................................................. 26

    7.    Michigan ...................................................................... 26

    8.    Vermont ........................................................................ 27

    9.    Washington .................................................................. 28

III.    PLAINTIFFS STATE BREACH OF IMPLIED WARRANTY CLAIMS ........ 28

    A.    Merck Had Proper Notice Pursuant To UCC 2-607 ............................... 28

    B.    Privity Is Not Required To State A Breach Of Implied Warranty Claim Under Washington Law. ............................................................ 33

IV.    THE COURT SHOULD DENY MERCK'S MOTION TO STRIKE THE CLASS ALLEGATIONS. .................................................................. 35

    A.    Federal Courts Disfavor Motions To Strike Class Allegations. ............. 35

    B.    It Is Far From "Beyond Doubt" That Vioxx Statewide Classes Cannot Be Certified, When Identical Claims Have Been Certified And Affirmed Under Missouri Law And The Certifiability Of Consumer Claims Has Been Recently Recognized By Federal Appellate Courts. .................................................................. 37

    C.    Common Questions Of Law And Fact Predominate Over Individual Issues. .................................................................. 39

CONCLUSION ........................................................................................... 45

890017.2

## TABLE OF AUTHORITIES

**Page**

**Cases**

*A & M Supply Co. v. Microsoft Corp.,*
252 Mich. App. 580, 654 N.W.2d 572 (Mich. App. 2002) ..................................... 27

*Adelman v. Christy,*
90 F. Supp.2d 1034 (D. Ariz. 2000) ........................................................ 24

*Alfred v. Mentor Corp.,*
2007 WL 70863 (W.D. Ky. Mar. 5, 2007) ............................................. 17

*American Bumper & Mfg. Co. v. Transtechnology Corp.,*
252 Mich. App. 340, 652 N.W.2d 252 (Mich. App. 2002) ..................................... 32

*Arcor, Inc. v. Textron, Inc.,*
960 F.2d 710 (7th Cir. Ill. 1992) ........................................................ 29

*Arnold & Assocs. v. Misys Healthcare Sys.,*
275 F Supp. 2d 1013 (D. Ariz. 2003) .................................................... 23

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (U.S. 2009) ................................................................. 3

*Back Bay Farm, LLC v. Collucio,*
230 F. Supp. 2d 176 (D. Mass. 2002) .............................................. 8, 9

*Bailie Comm. Ltd. v. Trend Bus. Sys., Inc.,*
810 P.2d 12 (Wash. Ct. App. 1991) .................................................... 28

*Barron v. Edwards,*
45 Mich. App. 210, 206 N.W.2d 508 (Mich. Ct. App. 1973) ............................... 31

*Baughn v. Honda Motor Co., Ltd.,*
727 P.2d 655 (Wash. 1986) .............................................................. 34

*Bayh v. Sonnenburg,*
573 N.E.2d 398 (Ind. 1991) ............................................................. 25

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (U.S. 2007) ................................................................... 3

*Bextra and Celebrex Marketing Sales Practices and Product Liab. Litig.,*
495 F. Supp. 2d 1027 (N.D. Cal. 2007) ............................................... 20

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. C.A. 1975) .................................................... 40

*Brooks v. Valley Nat'l Bank,*
548 P.2d 1166 (Ariz. 1976) ............................................................. 24

*Broughton v. Adams Pontiac Buick GMC Truck, Inc.,*
272 Fed. Appx. 491 (6th Cir. 2008) .................................................. 16

<u>**TABLE OF AUTHORITIES**</u>

(continued)

<u>**Page**</u>

*Burge v. Freelife Intern., Inc.*
2009 WL 3872343 (D. Ariz. 2009) ......................................................................... 10

*Center v. Mad River Corp.*,
151 Vt. 408, 561 A.2d 90 (Vt. 1989) ...................................................................... 27

*City and County of San Francisco v. Philip Morris, Inc.*,
957 F. Supp. 1130 (N.D. Cal. 1997) ....................................................................... 26

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,
332 Fed. Appx. 565 (11th Cir. Fla. 2009) ............................................................... 13

*Collins v. Pfizer, Inc.*,
2009 WL 126913 (S.D. Ind. Jan. 20, 2009) ............................................................ 33

*Community Guardian Bank v. Hamlin*,
898 P.2d 1005 (Ariz. Ct. App. Div. 1995) .............................................................. 24

*Connick v. Suzuki Motor, Co., Ltd.*,
675 N.E.2d 584 (Ill. 1996) ...................................................................................... 15

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. Wash. 2010) ...................................................................... 28

*Cova v. Harley Davidson Motor Co.*,
182 N.W.2d 800 (Mich. Ct. App. 1970) ................................................................... 5

*Craig & Bishop, Inc. v. Piles*,
247 S.W.3d 897 (Ky. 2008) ..................................................................................... 16

*Cummings v. Warren Henry Motors, Inc.*,
648 So. 2d 1230 (Fla. 4th 1995) ............................................................................... 8

*Daigle v. Ford Motor Co.*,
__ F. Supp. 2d __, 2010 WL 1875521 (D. Minn. May 10, 2010) ........................... 36

*Dare To Be Great, Inc. v. Commonwealth*,
511 S.W.2d 224 (Ky. 1974) ..................................................................................... 16

*Davenport v. Washington Educ. Ass'n*,
197 P.3d 686 (Wash. Ct. App. 2008) ....................................................................... 28

*Davis v. Powertel, Inc.*,
776 So. 2d 971 (Fla. App. 1st 2000) .................................................................. 12, 13

*Duronio v. Merck & Co., Inc.*,
2006 WL 1628516 (Mich. App. June 13, 2006) ...................................................... 19

*Erickson v. Pardus*
551 U.S. 89 (2007) ..................................................................................................... 3

*Ewing v. Coca Cola Bottling Co. of New York, Inc.*,
2001 WL 767070 (S.D.N.Y. June 25, 2001) ........................................................... 36

## TABLE OF AUTHORITIES
(continued)

**Page**

*Fitzpatrick v. General Mills, Inc.*,
263 F.R.D. 687 (S.D. Fla. 2010)....................................................................... 13, 14

*Florida v. Tenet Healthcare Corp.*,
420 F. Supp. 2d 1288 (S.D. Fla. 2005) ...................................................................... 8

*Forton v. Laszar*,
463 Mich. 969, 622 N.W.2d 61 (Mich. 2001) ......................................................... 19

*Galstaldi v. Sunvest Communities USA, LLC*,
637 F. Supp. 2d 1045 (S.D. Fla. 2009) ...................................................................... 8

*General Telephone Co. of Southwest v. Falcon*,
457 U.S. 147 (U.S. Tex., 1982) .............................................................................. 37

*Giammanco v. Giammanco*,
625 N.E.2d 990 (Ill. App. Ct. 1993) ....................................................................... 15

*Gonzalez v. Kay*
577 F.3d 600 (5th Cir. 2009) .................................................................................... 3

*Graham v. Wyeth Laboratories, a Div. of American Home Products Corp.*,
666 F. Supp. 1483, Prod. Liab. Rep. (CCH) ¶ 11539 (D. Kan. 1987)...................... 32

*Guarantee Elec. Co. v. Big Rivers Elec. Corp.*,
669 F. Supp. 1371 (W.D. Ky. 1987)........................................................................ 25

*Hanson Hams, Inc. v. HBH Franchise Co., LLC*,
2003 WL 22768687 (S.D. Fla. 2003) ........................................................................ 8

*Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*,
445 Mass. 790, 840 N.E.2d 526 (Mass. 2006)......................................................... 18

*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*,
545 N.E.2d 672 (Ill. 1989)....................................................................................... 25

*Hue v. Farmboy Spray Co., Inc.*,
896 P.2d 682 (Wash. 1995) ................................................................................ 33, 34

*Iannacchino v. Ford Motor Co.*,
451 Mass. 623, 888 N.E.2d 879 (Mass. 2008)......................................................... 19

*In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation*,
495 F.Supp.2d 1027 (N.D.Cal. 2007) ...................................................................... 15

*In re Cardizem CD Antitrust Litigation*,
105 F. Supp.2d 618 (E.D.Mich.2000)................................................................... 3, 27

*In re Katrina Canal Breaches Litigation*
524 F.3d 700 (5th Cir. 2008) .................................................................................. 44

*In re Southwest Supermarkets, LLC*,
325 B.R. 417 (Bk. D. Ariz. 2005)............................................................................ 24

## TABLE OF AUTHORITIES
(continued)

**Page**

*In re Terazosin Hydrochloride Antitrust Litigation*,
  220 F.R.D. 672 (S.D. Fla. 2004) ................................................................ 41, 42

*In re Vioxx Prod. Liab. Litig.*,
  2010 U.S. Dist. Lexis 64388 (E.D.La. June 29, 2010) .............................. 6

*In re Vioxx Prods. Liab. Litig.*,
  2010 U.S. Dist. LEXIS 24275 (E.D.La. February 18, 2010) ...................... 2

*In re Vytorin Erisa Litigation*,
  2010 U.S. Dist. LEXIS 12344 (D. N.J. 2010) ............................................ 3

*In re:  First Alliance Mortgage Co.*,
  471 F.3d 977 (9th Cir. Cal. 2006) ............................................................. 40

*Jones v. TT of Longwood, Inc.*,
  2006 WL 2789140 (M.D. Fla. 2006) ......................................................... 36

*Klay v. Humana, Inc.*
  382 F.3d 1241 (11th Cir. Fla. 2004) ......................................................... 41

*Kuehn v. Stanley*
  91 P.3d 346 (Ariz. Ct. App. 2004) ............................................................ 11

*Ky Laborers Dist. Council Health and Welfare Trust Fund v. Hill & Knowlton, Inc.*,
  24 F. Supp. 2d 755 (W.D. Ky 1998) ......................................................... 26

*Lawson v. Affirmative Equities Co., L.P.*
  341 F. Supp. 2d 51 (D. Mass. 2004) ......................................................... 9

*Lunsford v. United States*
  570 F.2d 221 (8th Cir.1977) ...................................................................... 35

*MacMorris v. Wyeth, Inc.*
  2005 WL 1528626 (M.D. Fla. 2005) ......................................................... 24

*Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*,
  412 F.3d 215 (1st Cir. Mass. 2005) ........................................................... 26

*Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*,
  552 F.3d 47 (1st Cir. Mass. 2009) .............................................................. 18, 26

*Massachusetts v. Mylan Labs.*,
  357 F. Supp. 2d 314 (D. Mass. 2005) ....................................................... 26

*Media Services Group, Inc. v. Bay Cities Communications, Inc.*
  237 F.3d 1326 (11th Cir. Fla. 2001) ......................................................... 24

*Meijer, Inc. v. Ferring B.V.*,
  585 F.3d 677 (2d Cir. N.Y. 2009) ............................................................. 10

*Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*,
  761 So. 2d 1256 (Fla. 3rd DCA 2000) ...................................................... 14

## TABLE OF AUTHORITIES
(continued)

**Page**

*Misra v. Decision One Mortg. Co., LLC*,
   673 F. Supp. 2d 987 (C.D. Cal. 2008) .................................................................... 36

*Murdock-Bryant Const., Inc. v. Pearson*,
   703 P.2d 1197 (Ariz. 1985) ..................................................................................... 24

*Nelson v. Appleway Chevrolet, Inc.*,
   157 P.3d 847 (Wash. 2007) ..................................................................................... 28

*Nichols v. McNeilab, Inc.*,
   850 F. Supp. 562 (E.D. Mich. 1993)......................................................................... 4

*North Am. Steel Corp. v. Siderius, Inc.*,
   75 Mich. App. 391, 254 N.W.2d 899 (Mich. Ct. App. 1977)................................. 31

*Palmer v. A.H. Robins Co., Inc.*,
   684 P.2d 187, 38 U.C.C. Rep. Serv. 1150 (Colo. 1984)......................................... 32

*Payne v. Goodyear Tire & Rubber Co.*,
   216 F.R.D. 21 (D. Mass. 2003)............................................................................... 40

*Peabody v. P.J.'s Auto Village, Inc.*,
   153 Vt. 55, 569 A.2d 460 (Vt. 1989)...................................................................... 21

*Peacock v. Damon Corp.*,
   458 F.Supp.2d 411 (W.D. Ky. 2006)....................................................................... 16

*Pella v. Saltzman*
   606 F.3d 391 (7th Cir. 2010) ............................................................... 15, 37, 43, 44

*Perez v. Wyeth Lab. Inc.*,
   734 A.2d 1245 (N.J. 1999) ....................................................................................... 4

*Plubell v. Merck & Co. Inc.*
   289 S.W.3d 707 (W.D. Mo.App. 2009); *transfer denied*, 209 Mo. LEXIS 448 (Mo.,
   Sept. 1, 2009)....................................................................................................... 1, 5

*Poulin v. Ford Motor Co.*,
   147 Vt. 120, 513 A.2d 1168 (Vt. 1986)................................................................. 21

*Poulos v. Summit Hotel Properties, LLC*,
   Slip Copy, 2010 WL 2034634 (D.S.D. 2010) ........................................................ 35

*Quality Air Servs., LLC v. Milwaukee Valve Co.*,
   671 F. Supp. 2d 36 (D.D.C. 2009)........................................................................... 30

*Rimbert v. Eli Lilly & Co.*,
   577 F. Supp. 2d 1174 (D.N.M. 2008) .................................................................. 4, 5

*Rios v. State Farm Fire and Cas. Co.*,
   469 F. Supp. 2d 727 (S.D. Iowa 2007) .............................................................. 36, 37

## TABLE OF AUTHORITIES
(continued)

**Page**

*Robinson v. Toyota Motor Credit Corp.*,
   775 N.E.2d 951 (Ill. 2002) ............................................................. 14, 15

*Romano v. Motorola, Inc.*,
   2007 WL 4199781 (S.D. Fla. 2007) ....................................................... 12

*Sanft v. Winnebago Indus., Inc.*,
   214 F.R.D. 514 (N.D. Iowa 2003) ......................................................... 36

*Schnall v. AT&T Wireless Servs., Inc.*,
   225 P.3d 929 (Wash. 2010) ............................................................... 22

*Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*,
   899 So. 2d 1222 (Fla. 1st 2005) ......................................................... 24

*Silva v. Stevens*,
   156 Vt. 94 (Vt. 1991) .................................................................. 10, 11

*Simonet v. Smithkline Beecham Corp.*,
   506 F. Supp. 2d 77 (D.P.R. 2007) ....................................................... 4, 7

*Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.*,
   836 S.W.2d 907 (Ct. App. Ky. 1992) ....................................................... 17

*Slaney v. Westwood Auto, Inc.*,
   366 Mass. 688 (Mass. 1975) ............................................................. 18

*Smilow v. Southwestern Bell Mobile Systems, Inc.*,
   323 F.3d 32 (Mass. 1st Cir. 2003) ....................................................... 40

*Smith v. Behr Process Corp.*,
   54 P.3d 665 (Wash. Ct. App. 2002) ....................................................... 35

*Source One, USA, Inc v. Challenge, Inc.*,
   2009 WL 3464707 (E.D. Michigan 2009) ................................................... 26

*St. Ansgar Mills, Inc. v. Streit*,
   613 N.W.2d 289 (Iowa 2000) ............................................................. 31

*Stafford v. Cross Country Bank*,
   262 F. Supp. 2d 776 (W.D. Ky. 2003) ..................................................... 16

*Stanbury Law Firm v. IRS*,
   221 F.3d 1059 (C.A. 8th Cir. 2000) ....................................................... 35

*State, Office of the Att'y Gen. v. Commerce Commercial Leasing, LLC*,
   946 So. 2d 1253 (Fla. 1st 2007) ......................................................... 13

*Stepp v. Takeuchi Mfg. Co.*,
   2008 U.S. Dist. LEXIS 80809, at *28-29 (W.D. Wash. October, 2 2008) ..................... 34

*Swanson v. Citibank, N.A.*,
   __ F.3d __, 2010 U.S. App. LEXIS 15761 (7th Cir. May 26, 2010) .......................... 3

## TABLE OF AUTHORITIES
(continued)

**Page**

*Swindell v. Crowson*,
  712 So. 2d 1162 (Fla. 2d DCA 1998) ................................................. 24

*Tallon v. Lloyd & McDaniel*,
  497 F. Supp.2d 847 (W.D. Ky. 2007) ................................................. 17

*Thongchoom v. Graco Children's Products, Inc.*,
  71 P.3d 214 (Wash. Ct. App. 2003) ................................................. 34

*Thorogood v. Sears, Roebuck & Co.*
  547 F.3d 742 (7th Cir. 2008) ................................................. 44

*Tooltrend, Inc. v. CMT Utensili, SRL*,
  198 F.3d 802 (Fla. 11th Cir. 1999) ................................................. 24

*Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Construction, Inc.*
  831 P.2d 724 (Wash. 1992) ................................................. 34

*Unified School Dist. No. 500 v. U.S. Gypsum Co.*
  788 F. Supp. 1173 (D. Kan. 1992) ................................................. 33

*Veal v. Crown Auto Dealerships, Inc.*
  2006 WL 844561 (M.D. Fla. March 30, 2006) ................................................. 42

*Warren v. Monahan Beaches Jewelry Center, Inc.*
  548 So. 2d 870 (Fla. 1st A 1989) ................................................. 8

*Witherspoon v. Philip Morris Inc.*
  964 F. Supp. 455 (D.D.C. 1997) ................................................. 29

*Wolin v. Jaguar Land Rover North America, LLC*
  __ F.3d __, 2010 WL 3222091 (9th Cir. August 17, 2010) ................................................. 43

*Zekman v. Direct American Marketers, Inc.*,
  695 N.E.2d 853 (Ill. 1998) ................................................. 14

*Zlotnick v. Premier Sales Group, Inc.*
  480 F.3d 1281 (11th Cir. Fla. 2007) ................................................. 13

*Zoeller v. East Chicago Second Century, Inc.*,
  904 N.E.2d 213 (Ind. 2009) ................................................. 25

**Statutes**

815 ILCS 505/10(a) ................................................. 17

815 ILCS 505/2 ................................................. 17

9 V.S.A. § 2453(a) ................................................. 25

9 V.S.A. § 2461(b) ................................................. 25

A.R.S. § 44-1522 ................................................. 13

Fla. Stat. § 501.204(1) ................................................. 14

# TABLE OF AUTHORITIES
(continued)

**Page**

Ind. Code § 24-5-0.5-3 ............................................................................ 18

KRS § 367.170(1) .................................................................................... 19

M.C.L. § 440.2314 *et seq.* ...................................................................... 37

M.C.L. § 440.2607 *et seq.* ...................................................................... 38

M.G.L. c 93A .................................................................................... 10, 21

Michigan Anti-Trust Reform Act, MCL 445.778(2) ............................... 34

Missouri Merchandising Practices Act, V.A.M.S. § 407.010 *et seq.* ........... 47

Title 940 Code Mass. Regs. § 3.16(2) ..................................................... 22

Washington Consumer Protection Act, RCW § 19,86.010, *et. seq.* ............ 26

Washington Product Liability Act, RCW 7.72. *et seq.* ............................ 42

**Other Authorities**

Jamie Talan, "Answers for Users of the Recalled Drug," Newsday, at A6 (Oct. 1, 2004) ........................................................................................... 5

Richard E. Speidel, "Warranty Theory, Economic Loss, and the Privity Requirement: Once More into the Void," 67 B.U.L. Rev. 9, 45 (Jan. 1987) .................... 5

William F. Keane, Merck & Co., Inc. Vice President, U.S. Medical & Scientific Affairs, "Merck Announces Voluntary Worldwide Withdrawal of Vioxx," (undated) ........................................................................................ 5

**Rules**

Fed. R. Civ. P.
23(c)(4) ............................................................................................. 1
8(a)(2) ............................................................................................. 17
23 ........................................................................................................ 6
23(b)(3) ...................................................................................... 1, 41
9(b) .................................................................................... 7, 8, 9, 23

**Treatises**

2 *Moore's Federal Practice* § 12.37[1] (3d ed. 2000) ............................. 36

26 Williston & Lord, *A Treatise on the Law of Contracts* § 68:5 (4th ed. 1993) ........ 26

89 A.L.R. 5th 319, *Sufficiency and Timeliness of Buyer's Notice Under UCC § 2-607(3)(a) of Seller's Breach of Warranty*, (2001) ................................ 31

Wright & Miller, *Federal Practice and Procedure* § 1296 (3d ed. 2004) .................................................................................... 10

Wright & Miller, *Federal Practice and Procedure* § 1297 at 72 (3d ed. 2004) ........... 9

## INTRODUCTION AND BACKGROUND

Plaintiffs in the nine states highlighted in Plaintiffs' Purchase Claims Master Class Action Complaint ("Master Complaint" or "MC") have actionable claims, these claims present common questions of fact and law that can be adjudicated on a classwide basis under Fed. R. Civ. P. 23(b)(3)/(c)(4), and Defendant Merck Sharp & Dohme Corp.'s ("Merck" or "Defendant") motion for judgment on the pleadings or to strike class allegations should be denied.[1] Defendant's motion to strike class allegation lacks merit as an across-the-board solution to the appropriate adjudication and disposition of Vioxx consumers' economic loss claims.

As this Court is well aware, Vioxx-related state court proceedings have addressed the issue of class treatment of such claims.  In the New Jersey and California state court systems, as Merck points out, nationwide class certification has been denied.  But in Missouri, statewide consumer class certification has been granted, has been affirmed on appeal, and the class claims are proceeding to trial.[2]  The experience of Vioxx consumer class claims in the various states suggests that it is most appropriate, under the particular circumstances of the Vioxx litigation as it has developed, for the remaining class claims to be determined on a state-by-state basis, with the benefit of focused discovery, pursuant to formal class certification motions, and within the context of a specific state's law.

The statewide approach to class certification would suggest that, at this juncture, the consumer claims be remanded to their transferor courts for certification where they will be tried.  Plaintiffs appreciate that such an approach is in tension with the MDL ideal of global resolution;

---

[1] Merck's motion addresses only claims in those 9 states.  Approximately 23 states' laws are invoked in class actions pending in the MDL.  Thus, there are at least 14 more jurisdictions that are within the current jurisdiction of the MDL.

[2] *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707 (Mo.App. 2009); *transfer denied*, 209 Mo. LEXIS 448 (Mo., Sept. 1, 2009).

a resolution in which, at this stage of the Vioxx litigation, the parties and the Court have, or should have, a strong interest, in light of the successful settlement of personal injury and third party payor claims in these MDL proceedings.  Plaintiffs thus respectfully recommend that this Court deny Merck's motion, and, as a next step toward closure, determine:  1)  whether it wishes to select one or more states for further proceedings on class certification and/or a bellwether trial on common issues in the MDL, in order to inform the parties as to the merits and feasibility of class treatment of the consumer claims; 2) whether and when it wishes to remand the remaining claims to their respective transferor districts; and 3) whether the consumer claims can be resolved, on a comprehensive basis, prior to remand, while they remain in the MDL.[3]

## ARGUMENT

Plaintiffs affected by Merck's motion are the consumers of Vioxx who, pursuant to their doctors' prescriptions, paid for Vioxx prior to Merck's withdrawal of it from the market in September 2004.  Pursuant to the Court's order, the Master Complaint was filed on August 2, 2005.  Defendants filed, and the parties fully briefed, a comprehensive motion to dismiss which was heard in February 2006.  It has been under advisement since then, as this MDL has proceeded, discovery has been conducted, 16 bellwether cases have been tried to verdict, and a comprehensive $4.85 billion personal injury settlement has been negotiated, administered and essentially completed.[4]  The third party payors whose claims were asserted in the Master Complaint have also settled and released their claims.[5]  Merck knows everything there is to know

---

[3] Because we are at the stage of this litigation where such practical considerations are paramount, Plaintiffs further note that an appropriate negotiated resolution could take the form, for example, of the court's approval and supervision, as a class or mass settlement, of a Merck-funded program to refund the outstanding costs of the consumers' own Vioxx purchases.

[4] For a summary of the bellwether trial process and the resulting settlement in the MDL, *see In re Vioxx Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 24275 (E.D.La. February 18, 2010).

[5] Merck's U.S. Vioxx sales approximated $8 billion.  TPPs paid for most, but not all of this:  as other drug purchase class action settlements reflect, consumers' own payments can range from 10%-45% of total sales.  *See, e.g., In re*

about the nature of the consumer Plaintiffs' claims, but feigns ignorance and attaches, again, the Master Complaint.  *Iqbal* and *Twombly* notwithstanding, Plaintiffs' claims possess the requisite specificity and plausibility to proceed.[6]

As the Seventh Circuit recently put it in *Swanson v. Citibank, N.A.*, __ F.3d __, 2010 U.S. App. LEXIS 15761, *5 (7th Cir. May 26, 2010) (reversing dismissal) (Wood, J., Easterbrook, C.J.; with Posner, J., dissenting in part), "On the one hand, the Supreme Court [in *Twombly*, *Erickson*, and *Iqbal*] has adopted a "plausibility" standard, but on the other hand, it has insisted that it is not requiring fact pleading, nor is it adopting a single pleading standard to replace Rule 8, Rule 9 and specialized regimes like the one in the "PSLRA" … ."  Rule 8 has not been tossed "out the window," but is alive and well; it simply requires that a claim "be stated with brevity, conciseness, and clarity …" and that it "discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the pleader's claim and a general indication of the type of litigation that is involved. …"  *Swanson*, *Id*. at *6.  As *Swanson* observes:

> As *Erickson* underscored, '[specific facts] are not necessary.' 551 U.S. at 93.  The Court has not engaged in a *sub rosa* campaign to reinstate the old fact-pleading system called for by the Field Code or even more modern codes.  We know that because it said so in *Erickson*:  'the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests.' *Id*. at *7.

The consumers' case is a simple one:  consumers purchased Vioxx as a proximate result of Merck's Vioxx marketing campaign that misrepresented the benefits and concealed the risks associated with Vioxx over other pain medications on the market.  In exchange for their money,

---

*Vytorin Erisa Litigation*, 2010 U.S. Dist. LEXIS 12344 (D. N.J. 2010) *Merck & Co., Inc.* (approving settlement allocating 30% to consumer subclass) *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 516 (E.D.Mich. 2003) (approving settlement allocating 45% to consumers).

[6] *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (U.S. 2007); *Erickson v. Pardus*, 551 U.S. 89 (2007); *see also Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) discussing standard..

the consumers received a drug that Merck determined was so unfit for its intended use that Merck withdrew it from the market.  They paid money for a drug without knowing the whole truth about it, and they thus got more risk and less efficacy than they bargained for.  While the consumers needed a prescription from their doctors to obtain Vioxx, both consumers and their doctors reasonably relied on Merck:  "[g]enerally, the role of the private physician is one of passive reliance on the manufacturer as the expert" regarding the efficacy and safety of particular drugs.  *Rimbert v. Eli Lilly & Co.*, 577 F. Supp. 2d 1174, 1221 (D.N.M. 2008).

Courts have required pharmaceutical manufacturers to directly warn end-users — particularly where, as here, the "drug's side effects are [allegedly] discovered only after the physician has received and relied upon the drug manufacturer's initial marketing literature." *Rimbert*, 577 F. Supp. 21 at 1121; *Simonet v. Smithkline Beecham Corp.,* 506 F. Supp. 2d 77, 88-89 (D.P.R. 2007) (denying motion to dismiss nationwide consumer class claims against a drug manufacturer for economic losses where plaintiff alleged the drug manufacturer represented, in package inserts, prescribing information, the PDR, and other marketing literature distributed to physicians, patients, and the general public that PaxilCR was of merchantable quality, fit, effective, safe, and otherwise not injurious to the health and well-being of patients)[7].  Despite its consumer-directed advertising of Vioxx's alleged benefits over other products on the market, Merck made no attempt to directly warn any Vioxx end-users of the circumstances that it knew or should have known would lead it to withdraw Vioxx from the market.

Although the consumer plaintiffs here are in one sense the lucky ones — they did not die and they were not physically injured by Vioxx — they did not get what they paid for.  It is unfair

---

[7] *See also Perez v. Wyeth Lab. Inc.,* 734 A.2d 1245, 1256-57 (N.J. 1999) (holding that manufacturers have a direct duty to warn end-users when they engage in consumer-directed advertising of pharmaceuticals); *Nichols v. McNeilab, Inc.,* 850 F. Supp. 562 (E.D. Mich. 1993) (indicating that pharmaceutical manufacturers may have a direct duty to warn end-users "where the alleged failure to warn does not involve the *prescribing* of a drug by a physician, but the *withdrawal* of a product from the market by its manufacturer")

to expect the consumers to purchase the Vioxx that Merck offered for sale and use, and then find it "suitable only for the junk pile."  *See* Speidel, "Warranty Theory, Economic Loss, and the Privity Requirement: Once More into the Void," 67 B.U.L. Rev. 9, 45 (Jan. 1987) (*citing Cova v. Harley Davidson Motor Co.,* 182 N.W.2d 800, 804 (Mich. Ct. App. 1970) ("On principle the manufacturer should be required to stand behind his … product and held to be accountable to the end user even though the product caused neither accident nor personal injury.  The remote seller should not be insulated from direct liability where he has merely mulcted the consumer."); *see also Rimbert,* 577 F. Supp. 2d 1174 at 1226 ("[I]t is more fair that the cost of an unreasonable risk of harm lie with the product and its possibly innocent manufacturer than it is to visit the entire loss upon the often unsuspecting consumer" who legitimately expects the product to be fit for its marketed use.).[8]

Notably, Merck has demonstrated that it can easily and quickly disgorge the money that it unjustly received from Vioxx consumers.  Merck instituted a *worldwide* consumer refund program for *unused* Vioxx (returned in the original container with a pharmacy receipt) within a *day* of withdrawing Vioxx from the market.[9]  Yet, Merck has retained the vast majority of money that the consumers paid for this unfit withdrawn product for almost six years, forcing consumers to take legal action to obtain relief.  At this point, near the end of the day for the Vioxx litigation, the consumers contend that a last, just, and proportionate measure of judgment or resolution is due and owing to them under their states' laws, and that any adjudication of their claims involves

---

[8] As *Plubell* points out in affirming statewide Vioxx consumer class certification, with respect to Missouri's Merchandising Practices Act (a typical consumer protections statute), "the purpose [of the MMPA] is to preserve fundamental honesty, fairplay and right dealings in public transactions."   Merck was not exempted from these standards.  289 S.W.3d 707, 711.

[9] *See* Jamie Talan, "Answers for Users of the Recalled Drug," *Newsday,* at A6 (Oct. 1, 2004); *see also* William F. Keane, Merck & Co., Inc. Vice President, U.S. Medical & Scientific Affairs, "Merck Announces Voluntary Worldwide Withdrawal of Vioxx" (undated).

predominantly common issues of fact and law regarding Merck's conduct, knowledge, product, and duty.

Merck touts the class certification denials by New Jersey and California state courts as a justification to strike class allegations here and forego the preferred practice of discovery-informed class certification motions under Rule 23.  If the state courts' experience is to provide a basis for federal MDL court decision-making here, account must also be taken of the Missouri state court system's experience in *Plubell,* in which a Vioxx consumer class was certified under Missouri's consumer protection law and affirmed on appeal.  Merck attempts to explain away *Plubell* in a footnote, contending that Missouri's class certification standard is more lenient than Federal Rule 23, and that the Missouri standard lacks a predominance requirement.  This is not the case.  The appellate decision in *Plubell* affirming class certification makes it clear that the Missouri and Federal Rule 23 certification requirements "are essentially identical," and that Missouri's rule includes a "predominance requirement" (Rule 52.08(b)(3) identical to Federal Rule 23(b)(3).   289 S.W.3d at 712.  *Plubell* goes farther, stating that "Merck mischaracterizes the showing required" under Missouri law.  *Id*. at 713.[10]

The identification of common questions of fact that apply to all consumer economic loss claims is informed by this Court's recent decision in the bench trial of the Louisiana Attorney General's economic loss claims.  *See In re Vioxx Prod. Liab. Litig.*, 2010 U.S. Dist. Lexis 64388 (E.D. La. June 29, 2010).  These Findings of Fact & Conclusions of Law include fact findings that relate generally to Merck's research, developing, marketing, and sales of Vioxx, the medical

---

[10] Merck discounts the *Plubell* decision as "inapposite," because it was made under Missouri's state class certification standards, not Federal Rule 23.  Of course, the California and New Jersey decisions were also made under those states' class certification rules.  At best for Merck, the state court experience is a wash.  However, the most objective interpretation of this experience is that some states' substantive consumer laws support class certification, under state class certification standards, while others may not.  This is not a basis for the wholesale striking of class action allegations in the Master Complaint, which are, of course, governed by Federal Rule 23.

characteristics of Vioxx, and its ultimate removal from the market in late 2004.  These do not vary from consumer to consumer:  at any point in time, during any applicable class period, the facts as to Merck's knowledge, conduct, and product are identical.  At any such point in time, the legal questions under a specific state's law are likewise identical, with respect to the duties arising, on Merck's part, from those facts, and whether Merck breached or fulfilled such duties to its consumers.  The questions of remedy are likewise identical within each state, regarding whether the state's consumers are entitled to disgorgement and restitution, compensatory and/or punitive damages, or other equitable and injunctive relief based upon the underlying fact.  In short, for each state's class, a class-wide trial can be readily structured.  Under most states' laws, as this brief will show, the only individualized issues relate to the unsurprising and routine need, as in any class action, for individual class members to prove the timing and amounts of their own Vioxx purchases.  Such is an administrative undertaking readily manageable by the court(s), utilizing special masters and/or settlement administrators.[11]

## I.  PLAINTIFFS HAVE PROPERLY PLEAD CLAIMS UNDER THE CONSUMER FRAUD STATUTES

### A.  Plaintiffs Have Alleged Their Claims With The Required Particularity.

Merck argues that Plaintiffs' consumer fraud claims are not plead with the particularity required under Federal Rule of Civil Procedure 9(b).  Merck is wrong.

#### 1.  Rule 9(b) Does Not Apply To All Consumer Fraud Statutes.

Rule 9(b) does not apply to statutory consumer fraud claims under the law of all states, as the specific examples of Florida, Massachusetts, and Washington demonstrate:

---

[11]*See, e.g., Simonet v. Smithkline Beecham Corp.*, Slip Opinion, No. 06-1230 (D.P.R. July 6, 2009 (slip opinion) (approving $28 million nationwide settlement between consumer and third-party payor purchasers and a drug manufacturer for economic losses after denying drug manufacturer's motion to dismiss), *see also* Settlement Agreement dated July 6, 2009.

### a.   __Florida__

The "requirements of Rule 9(b) do not apply to claims under the FDUTPA." *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045 (S.D. Fla. 2009) (denying motion to dismiss; applying *Twombly* and *Iqbal* standards); *see also Hanson Hams, Inc. v. HBH Franchise Co., LLC*, 2003 WL 22768687 (S.D. Fla. 2003) (motion to dismiss FDUTPA claim measured by pleading standard requiring "short and plain statement of the claim"); *Cummings v. Warren Henry Motors, Inc.*, 648 So. 2d 1230, 1233 (Fla. 4th 1995); *Warren v. Monahan Beaches Jewelry Center, Inc.*, 548 So. 2d 870, 873 (Fla. 1st A 1989).  This is because the Florida legislature sought to simplify consumer fraud claims, not to set up barriers to such claims.  "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, and therefore, 'the plaintiff need not prove the elements of fraud to sustain an action under the statute.'" *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005).  "Because Rule 9(b) does not apply to FDUTPA claims, its requirements cannot serve as a basis to dismiss Plaintiffs claims." *Galstaldi*, 637 F. Supp. 2d at 1058.

### b.   __Massachusetts__

Federal courts in Massachusetts have also held that the heightened pleading standards of Rule 9(b) do not apply to claims made under the Massachusetts' consumer protection statute, M.G.L. c 93A ("93A").  "[W]ith respect to chapter 93A, the Massachusetts Supreme Judicial Court has held that 'the existence of unfair acts and practices must be determined from the circumstances of each case.'" *Back Bay Farm, LLC v. Collucio*, 230 F. Supp. 2d 176, 179 (D. Mass. 2002) *quoting Nader v. Citron*, 372 Mass. 96, 360 N.E.2d 870, 876 (1977); *Lawson v. Affirmative Equities Co., L.P.*, 341 F. Supp. 2d 51, 67 (D. Mass. 2004).  Additionally, it is premature to determine whether plaintiffs have met their burden of proving a 93A claim at the

pleadings stage.   The "factual nuances" of a 93A claim may "require elaboration through discovery and development at trial," *Back Bay Farm, Id.*

> While a Chapter 93A claim sounds in fraud ('unfair or deceptive acts'), *Swierkiewicz* 'sounded the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil Rule requires that result.'  While G.L. c. 93A, § 9(3), requires specificity, it does so in the demand letter.

*Lawson v. Affirmative Equities Co., L.P.*, 341 F. Supp. 2d 51, 67 n. 25 (D. Mass. 2004), *quoting Hernandez*, 367 F.3d at 66.

### c.   Washington

Merck has not cited any Washington authority that applies or even mentions the requirements of Rule 9(b) in relation to a WCPA claim and Plaintiffs' review of Washington authority has uncovered no such case.   This is for good reason.   Fraud is not mentioned in the WCPA.   Rather, the circumstances deemed unlawful under the WCPA are:  "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW § 19.86.020.

### 2.   Rule 9(b) Only Requires That Allegations Of Fraudulent Conduct, Not All Elements Of A Consumer Fraud Claim, Be Alleged With Particularity.

Merck does not dispute that Plaintiffs have pled Merck's alleged misrepresentations and omissions, (i.e., the circumstances constituting fraud) with the requisite particularity.   Its sole argument is that it lacks sufficient notice of how the circumstances constituting fraud proximately caused Plaintiffs' injuries.   At this stage of the Vioxx proceedings, after 16 trials, this is a specious argument; moreover, it is addressed to a complaint filed in fall 2005, long before *Twombly* or *Iqbal* (and which, if the Court deems necessary, could easily be amended). Moreover, *Twomby* and *Iqbal* did not abolish or alter Rule 8 (see *Swanson, Id*. at ** 6-8) and

Rule 9(b) does not require plaintiffs to plead all of the elements of a claim arising from fraudulent conduct with particularity. Wright & Miller, *Federal Practice and Procedure* § 1297 at 72 (3d ed. 2004) ("It is not necessary to prove all [elements of common law fraud] to prevail on a fraud claim under certain federal statutes, or under the fraud law of certain states, or certain state statutes … the application of Rule 9(b) must be adjusted accordingly."). *Silva v. Stevens*, 156 Vt. 94, 106 (Vt. 1991) 589 A .2d 852, *citing Federal Practice and Procedure* § 1296 ("Rule 9(b) requires only the circumstances of fraud to be stated with particularity"); *Burge v. Freelife Intern., Inc.*, 2009 WL 3872343, *3 (D. Ariz. 2009).[12]  Plaintiffs here have appropriately plead the circumstances constituting fraud with the requisite particularity.

"Rule 9(b) requires only the circumstances of fraud to be stated with particularity; knowledge itself can be alleged generally." *Meijer, Inc. v. Ferring B.V.*, 585 F.3d 677, 695 (2d Cir. N.Y. 2009) (pleading held sufficient under *Twombly/Iqbal*).  For example, relying upon *Federal Practice & Procedure*, the Vermont Supreme Court has stated that only that the elements of the claim need to be specified to satisfy the state equivalent of 9(b).

> [O]ne of the primary objectives of Rule 9(b) is to provide the defendant with sufficient information to enable him or her to effectively prepare a response. [Citation.]  This objective was satisfied here, as the pleadings otherwise complied with the Rule by specifying the elements of plaintiffs' fraudulent concealment theory.

---

[12] "Here, Plaintiffs have adequately identified the identities of the parties to the alleged misrepresentations; namely, Freelife and Plaintiffs. Plaintiffs have stated the time of the alleged misrepresentations by alleging when each of the Plaintiffs were solicited to purchase and/or distribute Freelife's products.  Although Plaintiffs have not alleged the exact place or location where the misrepresentations took place, the Court does not believe that place is in anyway integral to Plaintiffs' claims.  The most significant allegations with respect to Rule 9(b) are the specific content of the alleged misrepresentations so that Freelife may adequately defend Plaintiffs' allegations. Plaintiffs have satisfied this requirement."  The same is true in this case.

*Silva v. Stevens*, 156 Vt. 94, 106 (1991) 589 A .2d 852, citing *Federal Practice & Procedure* § 1296.[13]

Defendant broadly summarizes the class claims while ignoring those distinctions that do not comport with its analysis. Judgment on the pleadings should be denied: Plaintiffs have made claims for relief that are plausible on their face.

**B.** **Plaintiffs State A Claim Under The Consumer Fraud Statutes.**

Plaintiffs have adequately alleged the elements of consumer fraud under the applicable state statutes.[14]

**1.** **Arizona**

An action for violations of the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1522, *et seq*., exists whenever there are misrepresentations or concealment of information in connection with the sale or advertisement of merchandise and proximate injury results from the misrepresentations or concealment. *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004).

Plaintiffs have alleged proximate causation under the ACFA (and under all the other state claims addressed herein), and have supplied Merck with sufficient specific facts to meet any extant, plausible or potential pleading standard. They allege that "[a]s a proximate result of the Defendant's misrepresentations and omissions, Plaintiffs and the members of the Class have suffered ascertainable losses, in an amount to be determined at trial." MC ¶ 260. Plaintiffs provide specific descriptions of those losses (primarily the purchase price of the Vioxx). *See*, *e.g.*, ¶ 12 (omission, suppression, and concealment of safety risks and denials of inefficacy enabled Vioxx to be purchased by End-Payors at grossly inflated prices); ¶ 14

---

[13] Plaintiffs have generally alleged all elements of the VCFA throughout the Purchase Claims Master Class Action Complaint ("Master Complaint"), and specifically in ¶¶ 212, 254 and 262.

[14] Plaintiffs no longer advance claims under the Michigan consumer fraud statute.

(misrepresentations of safety and omission of health risks allowed Merck to unjustifiably inflate the price Vioxx at almost 100 times the cost of generic aspirin); ¶ 16 (intentional concealment and omission of Vioxx risks from purchasers, the public, the medical community and the regulators prevented reasonable purchasers from obtaining information needed to decide to whether to purchase Vioxx), ¶ 17 (Merck's systematic concealment, omissions, suppression, and conduct caused purchasers to pay for Vioxx and the losses asserted herein), ¶ 174 (Vioxx 8 times as expensive as other NSAIDs) and ¶ 214 (Merck's violative conduct caused consumers to purchase Vioxx).

## 2.   **Florida**

FDUTPA allows any aggrieved party to bring an action against a company that has engaged in unconscionable, unfair, or deceptive acts or practices.  Fla. Stat. § 501.204(1).  A plaintiff need not prove the elements of fraud to sustain an action under the statute, "because the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances."  *Romano v. Motorola, Inc.*, 2007 WL 4199781 at *1 (S.D. Fla. 2007) (*quoting Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. App. 1st 2000).  Thus, for example, the bare allegation that an action arose from the "deceptive and unlawful conduct in designing, manufacturing, distributing and selling defectively designed Razr cellular phones" is sufficient to state a cause of action under FDUTPA.  *Motorola*, 2007 WL 4199781 at *2.

In this action, Plaintiffs have exhaustively outlined and alleged Merck's wrongful conduct.  Specifically, in addition to the 59 pages of concrete factual allegations of wrongdoing which were incorporated into Plaintiffs' FDUTPA claims, Plaintiffs made specific allegations in ¶¶ 212, 262 of the MC.  These allegations, in the context of the entire Master Complaint, clearly meet the operative, post-*Twombly*/*Iqbal* standards for pleading a claim under FDUTPA.

Merck argues that under FDUTPA, Plaintiffs must show that each class member was deceived by, and relied on, Merck's fraudulent conduct.  Individualized reliance is not an element of a FDUTPA claim.  *Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687 (S.D. Fla. 2010) (Under FDUTPA, the causation element "does not require subjective evidence of reliance, as would be the case with a common law action for fraud."); *Davis*, 776 So. 2d at 974.

FDUTPA's reliance requirement is an objective one, and is satisfied by a showing that a reasonable consumer would have been deceived under the same circumstances.  "The question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id.*  As Florida's jurisprudence explains, "A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."  *State, Office of the Att'y Gen. v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st 2007).  The Eleventh Circuit agrees.  In *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed. Appx. 565, 567 (11th Cir. Fla. 2009) it held that "the FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct."

FDUTPA does not require plaintiffs or class members to prove individually that the misrepresentations or omissions caused them to do anything; rather, the causation requirement is resolved based on how an objective reasonable person would behave under the circumstances. *Cold Stone*, *supra*; *see also Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. Fla. 2007) (explaining that plaintiff must show "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer," *citing Millennium Commc'ns & Fulfillment,*

*Inc. v. Office of the Att'y Gen.*, 761 So.2d 1256, 1263 (Fla. 3rd DCA 2000) ("the new standard considers as material only deceptions that are likely to cause injury to a reasonable relying consumer, whereas the old standard reached deceptions that a consumer might have considered important").  Thus, to satisfy the FDUTPA's causation requirement, each plaintiff is required to prove only that the deceptive practice would, objectively, deceive a reasonable consumer.  *See Fitzpatrick* at 695.  Plaintiffs have amply alleged FDUTPA causation, stating that "[a]s a result of Merck's indifference to and reckless disregard of the health and safety of Vioxx patients, they suffered both physical and economic harm, and all end-payors incurred economic damages."  MC ¶ 262.  It is a result of Defendants' outrageous and illegal conduct that the consumer class purchased millions of dollars worth of a dangerous and misrepresented product.  Had Merck properly disclosed the dangers of Vioxx as these became known [and what Merck knew and when Merck knew it are quintessential common questions], it would not have been able to sell Vioxx to the public.

### 3.     <u>Illinois</u>

Under the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. ("ICFA") Plaintiffs must plead and prove:  (1) that the defendant engaged in an unfair and/or deceptive act or practice; (2) that the defendant intended for the plaintiff to rely on the unfair and/or deceptive act or practice; (3) that the unfair and/or deceptive act or practice occurred in the course of conduct involving trade or commerce; (4) that the plaintiff suffered actual damage; and (5) as a result of the unfair act and/or deceptive acts or practices.  *See e.g., Zekman v. Direct American Marketers, Inc.*, 695 N.E.2d 853, 860-61 (Ill. 1998); 815 ILCS 505/2, 10a.  An act or practice is unfair if it: (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; (3) causes substantial injury to consumers.  *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) "All three factors do not need to be satisfied to support a finding of unfairness.  A

practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.*  Deceptive acts or practices include, *inter alia*, the use or employment of any deception; misrepresentation; fraud; or concealment, suppression, or omission of any material fact.  Plaintiffs plead that Illinois class members suffered actual damage as a result of Merck's unfair and/or deceptive practices.  815 ILCS 505/10(a).  Actual damage is the actual loss, hurt, or harm which results from the illegal invasion of a legal right.  *Giammanco v. Giammanco*, 625 N.E.2d 990, 997 (Ill. App. Ct. 1993).  Plaintiffs ultimately establish ICFA's proximate cause element on a common basis:  by proving that Merck misrepresented and/or omitted material information — the type of information upon which a buyer would be expected to rely in making a decision whether to purchase.  *Connick v. Suzuki Motor, Co., Ltd.*, 675 N.E.2d 584, 595 (Ill. 1996).  The Seventh Circuit recently upheld class certification of, *inter alia*, Illinois and Florida consumer statute and warranty claims in *Pella v. Saltzman*, 606 F.3d 391 (7th Cir. 2010)

### 4.   Indiana

"The Indiana Deceptive Consumer Sales Act ("IDCSA") identifies a litany of acts or representations defined as unlawful "deceptive acts."  Ind. Code § 24-5-0.5-3.  The IDCSA provides for a private right of action for damages suffered "as a result of defendants' deceptive acts."  The IDSCA gives a private right of action to "a person" "for the damages actually suffered as a consumer" as a result of the deceptive acts. Ind.Code § 24-5 -0.5-4(a).  Thus, Indiana consumers will have standing to bring claims under the Indiana Act if they are (1) a person, (2) who suffered damages as a consumer as a result of defendants' deceptive acts.  *See In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation*, 495 F.Supp.2d 1027, 1036 (N.D.Cal. 2007)  The language of IDSCA's list of deceptive acts includes

the same language of the FDUTPA that suggested Rule 23(b)(3) consider class certification in *Wolin v. Land Rover*, discussed in Sec. IV.B., below.

 5.  **Kentucky**

Kentucky's Consumer Protection Act ("KCPA") prohibits "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce … ."  KRS § 367.170(1).  A private cause of action exists under this statute for persons who purchase goods "primarily for personal, family or household purposes … ." § 367.220(1).  *Broughton v. Adams Pontiac Buick GMC Truck, Inc*., 272 Fed. Appx. 491, 495 (6th Cir. 2008).  "Kentucky courts have asserted that the language of the KCPA is broad and that the terms "false, misleading and deceptive have meanings which are generally well understood by those who want to understand them."  *Dare To Be Great, Inc. v. Commonwealth*, 511 S.W.2d 224, 227 (Ky. 1974); *Peacock v. Damon Corp*., 458 F.Supp.2d 411, 419 (W.D. Ky. 2006).

Merck's argument that Plaintiffs need to show privity under the Kentucky Consumer Protection Act ("KCPA") is wrong.  Merck engaged in a fraudulent  consumer-directed campaign to compel individual consumers to "purchase" Vioxx  the only way possible in this context : by getting their doctors to prescribe them.  Merck treated Plaintiffs as purchasers "for all practical purposes," thus waiving an absence of privity argument.  *See Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 793 (W.D. Ky. 2003) (bank not immune from KCPA on privity grounds even though plaintiff had not entered into contract with the bank because it treated plaintiff as a purchaser)[15]; *see also Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897 (Ky. 2008) (nothing in KCPA explicitly requires a contract for a consumer damaged by an unfair

---

[15] *Stafford* also distinguished *Ky Laborers Dist. Council v. Hill & Knowlton*, 24 F. Supp. 2d 755 (W.D.Ky. 1998), on which Merck relies here, in that the plaintiffs (trust funds) were in not in the class protected by the KCPA.

trade practice to recover).[16]

Merck ignores the authority allowing a waiver of the privity requirement and the allegations necessitating waiver here.  Its cases are distinguishable.  *See*, *e.g.*, *Alfred v. Mentor Corp.*, 2007 WL 70863, at *7 (W.D. Ky. Mar. 5, 2007) (while noting that the strict requirement of privity could be waived, finding that "the plaintiff has offered no response" to the privity argument in that case); *Tallon v. Lloyd & McDaniel*, 497 F. Supp.2d 847 (W.D. Ky. 2007) (plaintiffs' debt collection claim could not stand against bank given bank had sold the claim and conduct complained of involved claim purchaser's counsel); *Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.*, 836 S.W.2d 907 (Ct. App. Ky. 1992) ("as is" purchaser of used wheel loader who owed money for repairs unable to bring counterclaim under KCPA against the original manufacturer who had sold the new machine).  Here, Merck is the direct wrongdoer.  If Merck's technical privity argument were correct, drug manufactures would enjoy *de facto* immunity under the KCPA for any treatment serious enough to require a prescription.  Finally, determination of whether Merck has treated consumers as purchasers "for all practical purposes" is necessarily a fact inquiry that is inappropriate and premature on this motion, and which is also a **common** question.

### 6.   Massachusetts

Although Rule 8(a) (2) requires only a short and plain statement of a 93A claim, Plaintiffs have exceeded that requirement by pleading all elements of the consumer fraud statute in this case.  Under 93A, Plaintiffs must satisfy the following elements:  Plaintiff must be a consumer, and must demonstrate a misleading or deceptive act in commerce, which was material to the transaction, and which caused a loss causally connected to the deceptive act.  The Master

---

[16] In *Piles*, the prospective used car purchaser had developed an equitable interest in the used car though it never bought the car.  *Piles* supports the general proposition that the privity requirement cannot be interpreted  in a hypertechnical fashion.

Complaint alleges misleading and deceptive acts by Merck in withholding from the market information regarding Vioxx risk factors and side effects. "To demonstrate that a business act or practice is 'unfair or deceptive,' … a plaintiff must merely show that an act or practice (1) falls '[w]ithin at least the penumbra of some … established concept of unfairness; (2) … is immoral, unethical, oppressive, or unscrupulous; [or] (3) … causes substantial injury to consumers.'" *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. Mass. 2009). The Master Complaint pleads the required elements, *see* ¶¶ 212 and 262. The misrepresentations of the risks and side effects associated with Vioxx were not only deceptive, but were material and would have influenced a buyer. "[A]n act or practice is a violation of M.G.L. c. 93A, § 2, if … [a]ny person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." *Title 940 Code Mass. Regs.* § 3.16(2). Section 3.16(2). The risk factors and side effects certainly would influence a prospective buyer. Thus, the only element left to satisfy, and the only 93A element contested in Merck's brief, is a causal connection between the statement or omission and purchase, and that connection is easily met here.

93(A) does not require actual reliance, simply a causal connection between the deceptive conduct and the purchase. "[P]roof of actual reliance by the plaintiff on a representation is not required." *Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 801 840 N.E.2d 526 (Mass. 2006) (*quoting Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703 (Mass. 1975)). Contrary to Merck's brief, Massachusetts consumers have pled facts tying their purchase to alleged deceptive omissions made by Merck. A recent decision from the Supreme Judicial Court of Massachusetts distinguishes the case cited by Merck (see fn. 6 of Merck brief) and

supports Plaintiffs, holding that the required causal connection standard for reliance can be met when regulated products involve misrepresentation. The consumer is not required to tie the omission to her purchase. Instead, the fact that a misrepresentation occurred with a regulated product (even if Plaintiffs were unaware of the regulation) is enough to satisfy the causal connection requirement. "[E]ven if the plaintiffs did not know of the Federal safety requirements, because certified compliance with the requirements is necessary for [a product] to get to market, the alleged misrepresentation would be causally related to the plaintiffs' purchase of the [product] and therefore to their loss." *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 888 N.E.2d 879 n. 12 (Mass. 2008). The Master Complaint alleges numerous misrepresentations and omissions made by Merck to hide the risk factors and side effects of Vioxx from the FDA, doctors, and the public. The fact that these deceptive acts and omissions took place with a regulated product satisfies the causal connection requirement in the Commonwealth of Massachusetts. All elements of 93A have been met in this case.

### 7.   <u>Michigan</u>

Merck acknowledges that the Michigan law precluding product liability actions in connection with drugs approved by the FDA does not apply to the MCPA claims. However, relying on *Duronio v. Merck & Co., Inc.*, 2006 WL 1628516 (Mich. App. June 13, 2006), an unpublished opinion, Merck argues that Plaintiffs' Michigan Consumer Protection Act (MCPA) claim must be dismissed because the sale of Vioxx was authorized by the FDA. The MCPA creates an overall exemption for conduct "specifically authorized under laws administrated by a regulatory board … acting under statutory authority of … the United States." This exemption is Merck's to prove. *See Forton v. Laszar*, 463 Mich. 969, 622 N.W.2d 61, 62 (Mich. 2001). Merck has not made a convincing argument to collapse the distinction between Michigan's drug product liability statute and the MCPA exemption in the context here, *i.e.*, given that the FDA

recalled the product and withdrew its authorization for Merck to sell it.   Plaintiffs thus respectfully disagree with the holding in *Duronio* and agree with — and submit this Court should adopt — other authority allowing MCPA claims to proceed in instances involving recalled drugs. *See Bextra and Celebrex Marketing Sales Practices and Product Liab. Litig.*, 495 F. Supp. 2d 1027 (N.D. Cal. 2007) (overturning dismissal of third-party payor claims under Michigan's CPA).   Indeed, if initial FDA approval, without more, were sufficient to preclude the claim, the Michigan legislature could have included MCPA claims within the ambit of its drugs product liability statute.  It did not.

### 8.   <u>Vermont</u>

The Vermont Consumer Fraud Act is broader than Defendant acknowledges.   The protection it extends does not require intent or damage when an aggrieved consumer demands the return of consideration paid.   The alleged conduct is viewed through a lens of whether the misleading or deceptive act generally distorted consumer choice rather than whether the consumer reasonably relied upon the deceptive acts or omissions.   The VCFA provides that "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful." 9 V.S.A. § 2453(a).  The VCFA further provides that aggrieved parties are entitled to bring civil claims under 9 V.S.A. § 2461(b) which provides a choice of three independent remedies:

> (b) Any consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title, or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title, or prohibited by any rule or regulation made pursuant to section 2453 of this title, may sue for appropriate equitable relief and may sue and recover from the seller, solicitor or other violator the amount of his damages, or the consideration or the value of the consideration given by the consumer, reasonable attorney's fees, and exemplary damages not

exceeding three times the value of the consideration given by the consumer.

9 V.S.A. § 2461(b). The statute does not condition the remedy available based upon how the claim arose. When a plaintiff chooses return of consideration, damage is not an element of a claim for liability under the Act. *See Peabody v. P.J.'s Auto Village*, Inc., 153 Vt. 55, 57, 569 A.2d 460, 463 (Vt. 1989) (damage is not an element of a claim under the Act).[17]

The VCFA has no reliance requirement. The standard for a deceptive or unfair act or practice is an objective one. A VCFA claim requires only that the conduct of the Defendant distorts the choice or actions the plaintiff would take absent the deceptive practices. "All plaintiff must show … is that the deceptive omission is 'likely to influence a consumer's conduct' by 'distort[ing]' the buyer's 'ultimate exercise of choice.'" *Peabody, Id.* Thus, rather than focus on the subjective reliance of the consumer, reliance can be demonstrated objectively. The analysis focuses on the "risk of consumer harm" rather than actual harm. *Peabody*, 569 A.2d at 463. The deceptive act must be material. For a deceptive practice to be "material" under the VCFA it must be "likely to affect consumers' conduct or decision[s]." *Poulin v. Ford Motor Co.*, 147 Vt. 120, 124-25, 513 A.2d 1168, 1171-72 (Vt. 1986). Merck's withholding of information regarding Vioxx's potentially deadly risk factors and side effects were unmistakably material in that they were likely to (and in fact did) affect the decisions and choices made by Vermont consumers.

The fact that reliance is not element of a claim under the VCFA renders Defendant's analysis inaccurate regarding the proposed class. Defendant states that all Plaintiffs must "tie their purchase and use of Vioxx to any alleged misrepresentations or omissions by Merck." In

---

[17] In *Greene v. Stevens Gas*, 177 Vt. 90, 96, 858 A.2d 238 (2004), the Vermont Supreme Court held that damage is an element of a claim "[i]n a *damage* action under the Consumer Fraud Act" but affirmed the holding in *Peabody* that when return of consideration paid is sought, no damage need be demonstrated "we read broadly the requirement that there be injury, see *Peabody v. P.J.'s Auto Village, Inc.*" *Id.*

addition, Defendant claims plaintiffs are required to "reasonably [rely] upon [the defendants']

false representations to his detriment."  Neither of these assertions has a basis in Vermont Law.

### 9. <u>Washington</u>

Plaintiffs have adequately pled their Washington Consumer Protection Act, RCW

§ 19.86.010, *et seq.* ("WCPA"), claim.  An action exists for violations of the WCPA whenever

there is (1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a

public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link

between the unfair or deceptive act and the injury suffered.  *Schnall v. AT&T Wireless Servs.,*

*Inc.*, 225 P.3d 929, 939 (Wash. 2010).

Merck does not dispute that Plaintiffs have adequately pled Merck's unfair and deceptive

acts and practices that occurred in trade and commerce, which affected a public interest.  Its sole

argument is that it lacks sufficient notice of how the properly alleged circumstances constituting

unlawful conduct pursuant to the WCPA proximately caused Plaintiffs' injuries to their business

or property.

The Master Complaint expressly alleges that "[a]s a proximate result of the Defendant's

misrepresentations and omissions, Plaintiffs and the members of the Class have suffered

ascertainable losses, in an amount to be determined at trial."  MC ¶ 260.  Moreover, the Master

Complaint goes further by providing specific descriptions of those losses (primarily the purchase

price of the Vioxx) are spelled out elsewhere throughout the complaint.  *See*, *e.g.*, ¶¶ 12

(omission, suppression, and concealment of safety risks and denials of inefficacy enabled Vioxx

to be purchased by End-Payors at grossly inflated prices); ¶ 14 (misrepresentations of safety and

omission of health risks allowed Merck to unjustifiably inflate the price Vioxx at almost 100

times the cost of generic aspirin); ¶ 16 (intentional concealment and omission of Vioxx risks

from purchasers, the public, the medical community and the regulators prevented reasonable

purchasers from obtaining information needed to decide to whether to purchase Vioxx), ¶ 17 (Merck's systematic concealment, omissions, suppression, and conduct caused purchasers to pay for Vioxx and the losses asserted herein); and ¶ 214 (Merck's violative conduct caused the Subclass to purchase Vioxx that was not made for resale).  *See also* MC ¶¶ 2, 9-17, 69-73, 89-161, 174.  Accordingly, Plaintiffs not only properly alleged proximate causation under the WCPA, but have exceeded it by supplying Merck with facts they rely upon to support this allegation.

## II.  PLAINTIFFS STATE CLAIMS FOR UNJUST ENRICHMENT

### A.  Plaintiffs' Unjust Enrichment Claims Satisfy Rule 9(b) Requirements.

Merck argues that Plaintiffs' unjust enrichment claims fail to meet Rule 9(b)'s heightened standard.  As explained above, Rule 9(b) requires that plaintiffs allege the fraudulent *conduct* with particularity — not every element of the claim.  To the extent that Plaintiffs' unjust enrichment claim arises from fraudulent conduct, that conduct is alleged with the requisite particularity.  *See* discussion at Section I.A., *supra*.  *See also Arnold & Assocs. v. Misys Healthcare Sys.,* 275 F Supp. 2d 1013, 1025 (D. Ariz. 2003) (allowing unjust enrichment claim to proceed despite dismissing plaintiff's fraud claim for failing to plead with particularity under Rule 9(b)).

### B.  Plaintiffs Allege Actionable Unjust Enrichment Claims

#### 1.  Arizona

Under Arizona unjust enrichment law, a plaintiff must allege that "(1) it conferred a benefit upon defendant, (2) defendant's benefit is at plaintiff's expense, and (3) it would be unjust to allow defendant to keep the benefit." *Arnold & Assocs. v. Misys Healthcare Sys.,* 275 F Supp. 2d 1013, 1025 (D. Ariz. 2003) (citing *Murdock-Bryant Const., Inc. v. Pearson,* 703 P.2d

1197, 1202 (Ariz. 1985)).[18]  Although Merck does not address Arizona unjust enrichment claims, the Master Complaint (*See* ¶¶263-67) properly pleads this claim.

### 2.   Florida

Under Florida law, "[t]he elements of a cause of action for unjust enrichment are: (1) the Plaintiff has conferred a benefit on the Defendant; (2) the Defendant has knowledge of the benefit; (3) the Defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value." *Media Services Group, Inc. v. Bay Cities Communications, Inc.,* 237 F.3d 1326, 1330-31 (11th Cir. Fla. 2001); citing *Swindell v. Crowson,* 712 So. 2d 1162, 1163 (Fla. 2d DCA 1998); *see also Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (Fla. 11th Cir. 1999); *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.,* 899 So. 2d 1222, 1227 (Fla. 1st 2005).

Merck's argument in support of its request to dismiss the Florida unjust enrichment claim is that Plaintiffs failed to allege that they conferred a "direct" benefit upon Merck.  There is no such requirement.  In Florida, an indirect relationship between defendant and plaintiff has long been sufficient for an unjust enrichment claim.  *MacMorris v. Wyeth, Inc*., 2005 WL 1528626 (M.D. Fla. 2005) (rejecting defendants' direct relationship assertion and holding that privity is not a requirement for unjust enrichment).  "Plaintiff is correct that indirect purchasers have been allowed to bring an unjust enrichment claim against a manufacturer."  *Id*.  Plaintiffs have pled

---

[18] Arizona courts state the elements as "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and impoverishment; and (5) the absence of a remedy provided by law."  *Community Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. Div. 1995).  The requirement that there be an absence of a legal remedy is restricted to a contract setting.  *See, e.g., Brooks v. Valley Nat'l Bank,* 548 P.2d 1166, 1171 (Ariz. 1976) ("where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application").  Even where there is arguably a contract, Arizona courts allow unjust enrichment to be pled in the alternative and pursued, while noting that there cannot be a "double" recovery under both theories.  *Adelman v. Christy,* 90 F. Supp.2d 1034, 1045-46 (D. Ariz. 2000); *In re Southwest Supermarkets, LLC,* 325 B.R. 417, 429 (Bk. D. Ariz. 2005) (same).  There is no contract here by which class members consented to purchasing an unsafe and ineffective product.

that they conferred a benefit on Merck by paying monies for Vioxx, that Merck knowingly and voluntarily accepted and maintained that benefit by accepting those payments, and that it would be inequitable for Merck to retain the benefit of those payments at Plaintiffs' expense.  MC at ¶¶ 263-267.

### 3.   Illinois

Contrary to Merck's argument, there is a claim for unjust enrichment under Illinois law. To establish it, Plaintiffs must plead and prove that:  (1) the defendant unjustly retained a benefit; (2) the defendant's retention of a benefit was to Illinois Class members' detriment; and (3) the defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.  *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).  They have done so in the Master Complaint at MC ¶¶ 263-7.

### 4.   Indiana

Contrary to Merck's argument, there is a claim for unjust enrichment under Indiana law. To prevail on a claim for unjust enrichment, a plaintiff must establish that "a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust."  *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408-09 (Ind. 1991), *Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (reversing dismissal of unjust enrichment claim).  These allegations are made at MC ¶¶ 263-7.

### 5.   Kentucky

Under Kentucky law, the three elements of unjust enrichment are (1) a benefit conferred on the defendant by the plaintiff, (2) that benefit resulting in the defendant's appreciation (knowledge) of it, and (3) the retention of the benefit being inequitable.  *See Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371 at 1380-1381 (W.D. Ky. 1987).  The benefit conferred need not be direct.  *See Ky Laborers Dist. Council Health and Welfare Trust Fund v.*

*Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 775 (W.D. Ky 1998), *citing City and County of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130, 1144-45 (N.D. Cal. 1997) ("If defendant [tobacco companies] have indeed been unjustly enriched, in that their profits were increased as a result of wrongful conduct, the enrichment was at the expense of the individual smokers").

6.    <u>Massachusetts</u>

Under Massachusetts law, the elements of unjust enrichment are "unjust enrichment of one party and unjust detriment to the other party." *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 (1st Cir. Mass. 2005) (A "plaintiff need only establish that [the Defendant] was unjustly enriched, and that [the plaintiff] suffered an unjust detriment"), *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. Mass. 2009), *citing* 26 Williston & Lord, *A Treatise on the Law of Contracts* § 68:5 (4th ed. 1993) (unjust enrichment requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value).   These elements are properly pled in the MC ¶¶ 263-7.   Under Massachusetts law, there is no "direct benefit" requirement. *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 323-4 (D. Mass. 2005) ("unjust enrichment does not require that a defendant receive direct payments from a plaintiff"); *Mass. Eye and Ear Infirmary*, 552 F.3d at 57 ("a claim for unjust enrichment does not require consideration").

7.    <u>Michigan</u>

To state a claim for unjust enrichment under Michigan law, plaintiff must allege that he or she conferred a benefit upon the defendant; the defendant accepted and retained the benefit; and it would be unjust for the defendant not to pay the plaintiff the value of the benefit. *Source One, USA, Inc v. Challenge, Inc.*, 2009 WL 3464707 (E.D. Michigan 2009).   Plaintiffs have

adequately plead they conferred a benefit on Merck by paying monies for Vioxx and defendant knowingly, voluntarily and unjustly acquired those profits and other monetary benefits through its unlawful conduct.  MC ¶ 263-267.

Merck's sole argument in support of its request to dismiss Plaintiff's claims for unjust enrichment under Michigan law is that Plaintiff failed to allege that it conferred a "direct" benefit upon Merck.  Michigan law does not require a "direct" relationship for unjust enrichment.  *In re Cardizem CD Antitrust Litigation*, 105 F. Supp.2d 618, 671 (E.D.Mich.2000) ("Whether or not the benefit is directly conferred on the defendant is *not* the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct.")  Merck directly engaged in a promotional and marketing campaign aimed at increasing sales and drug utilization in consumers and the medical community.  While engaging in such activity Merck consistently failed to disclose the truth about Vioxx and had Merck done so, it would not and could not have reaped the billions of dollars in Vioxx sales that it achieved as a direct result of its concealment, omission, and suppression of the truth.[19]

## 8.    Vermont

The elements of unjust enrichment in Vermont mirror those of the states above.  *Center v. Mad River Corp.*, 151 Vt. 408, 412, 561 A.2d 90, 93 (Vt. 1989) "(1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such

---

[19] Merck's only basis for dismissal of unjust enrichments claims under Michigan law rests on the shoulders of *A & M Supply Co. v. Microsoft Corp.*  That case involved the Michigan Anti-Trust Reform Act, MCL 445.778(2) ("MARA"); plaintiff A & M Supply Co. alleged that defendant Microsoft illegally monopolized the personal computer software market in Michigan, harming the plaintiff and many other residents who purchased certain Microsoft products.  *A   M Supply Co. v. Microsoft Corp.*, 252 Mich. App. 580, 654 N.W.2d 572 (Mich. App. 2002).  On appeal, the Court determined that plaintiff failed to make an appropriate showing that the persons within the proposed class suffered "actual damages" under the Michigan Anti-Trust Reform Act.  *A & M Supply Co. v. Microsoft Corp.*, 2008 WL 540883 at 2 (Mich. Ct. App. 2008).  Upon remand, plaintiff attempted to avoid the "actual damages" requirement of MARA by seeking to amend its complaint to allege an unjust enrichment theory of recovery.  *Id.*  The court agreed with defendant that an unjust enrichment claim was not viable under the particular antitrust inflected facts of that case.

circumstances that it would be inequitable for defendant not to compensate plaintiff for its value." The Master Complaint properly pleads a claim for unjust enrichment under Vermont law. *See* MC ¶¶ 263-7.

### 9.    Washington

In Washington, unjust enrichment occurs when one retains money or benefits which in justice and equity belong to another. *Bailie Comm. Ltd. v. Trend Bus. Sys., Inc.,* 810 P.2d 12, 18 (Wash. Ct. App. 1991). The Master Complaint properly pleads these elements. MC ¶¶ 263-67,

Merck, however, misstates Washington law in asserting that unjust enrichment is not an independent theory of recovery in Washington where plaintiffs' other tort claims fail. In this regard, Merck inexplicably relies on a federal case, which itself relies upon a treatise — not Washington law — for this argument. (Motion at 28, *citing Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1041 (9th Cir. Wash. 2010).) On this state substantive law issue, Washington precedent views unjust enrichment or restitution as an independent theory of recovery. *Nelson v. Appleway Chevrolet, Inc.,* 157 P.3d 847, 854 (Wash. 2007) (plaintiff class brought an independent claim of unjust enrichment/restitution); *Davenport v. Washington Educ. Ass'n,* 197 P.3d 686, 696-98 (Wash. Ct. App. 2008) (while a class of non-union teachers could not sue for the tort of conversion, it nevertheless had a valid independent claim for unjust enrichment/restitution, which only required the enrichment to be unjust, not wrongful).

## III.    PLAINTIFFS STATE BREACH OF IMPLIED WARRANTY CLAIMS

### A.    Merck Had Proper Notice Pursuant To UCC 2-607

Merck argues that no warranty-based remedy is available to any consumer who does not provide notice of breach under UCC section 2-607, effect of acceptance of goods, and asserts that because class members did not provide sufficient notice prior to the commencement of the this proposed class action, all class members are barred from any remedy whatsoever for

accepting Vioxx without knowing its hidden attendant risks and side effects. This is clearly inapposite to the UCC's official comments regarding commercial bad faith, and case law. The reasonableness of the notice by a retail consumer is viewed under a sliding scale approach to discourage commercial bad faith, as discussed in the official comment No. 4. The comment articulates different standards for retail and wholesale customers and requires notice from consumers sufficient to "let the seller know that the transaction is still troublesome and must be watched." Class certification discovery will provide additional details with respect to Merck's alleged commercial bad faith, such as withholding material information from regulators and the public, and will clarify the notice that was received by Merck. However, the required notice does not need to be actual notice.

The notice requirement of 2-607 can also be met by constructive notice. "Constructive notice, if established, will also satisfy the notice requirement under section 28:2-607." *Witherspoon v. Philip Morris Inc.,* 964 F. Supp. 455, 464 (D.D.C. 1997). Merck was on constructive notice that Vioxx was troublesome and must be watched when elevated risks and side effects were observed by Merck employees. "[T]he buyer is deemed to have met the notice requirement when the seller has actual knowledge of the product's failure based on the seller's own observations. When a seller's employee actually observes the failure of a product, this constitutes notice to the seller." *Arcor, Inc. v. Textron, Inc.,* 960 F.2d 710, 715 (7th Cir. Ill. 1992) (internal citations omitted). Merck cannot credibly assert that they did not know that Vioxx risks and side effects were troublesome and must be watched after it received the results from the several studies of the drug, among other information its employees observed.

Merck was on constructive notice that Vioxx was troublesome from the response to its own rebate program and any of the other contacts from aggrieved members of the proposed class

in this case.  "[T]his Court has found that where a plaintiff has received numerous inquiries as to the potential hazards of its products, there is at least a genuine issue of fact as to constructive notice."  *Quality Air Servs., LLC v. Milwaukee Valve Co*., 671 F. Supp. 2d 36, 47 (D.D.C. 2009) (internal citations omitted).   Class certification discovery, and reference to completed adjudications in this litigation, will provide additional details with respect to what Merck knew and when, which favors denying Merck's motion in full.

Merck argues that Plaintiffs' implied warranty claims fail under Michigan law because "notice of breach" was not timely provided as required by U.C.C. § 2-607.  This argument fails. Implied warranty of merchantability claims fall under the auspices of Michigan complied laws, M.C.L. § 440.2314 *et seq.*; which provide:

> "(1) Unless excluded or modified, a Warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind … (2) Goods to be merchantable must be at least such as … (2)(c) are fit for the ordinary purposes for which such goods are used; and (2)(f) conform to the promises or affirmations of fact made on the container or label if any."

The Master Complaint alleges that Merck introduced Vioxx into the consumer marketplace, class members were influenced to purchase the drug due to the affirmations of fact that Vioxx provided superior safety and efficacy, and Merck breached those promises because Vioxx was not of merchantable quality and was not fit for its intended use, because it caused an increase in serious cardiovascular and cerebrovascular adverse events such as heart attacks and strokes along with other harmful health effects.  *See* MC ¶ 268 272.

Merck attempts to refrain from addressing the heart of plaintiffs' implied warranty claims by advocating a strict interpretation of timeliness and sufficiency of notice of breach under U.C.C. § 2-607.  For example, Michigan law provides that when a tender has been accepted, the

buyer must, within a *reasonable* time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy.  *MCL* § 440.2607 *et seq.*  Notice of breach is an essential element of a claim for breach of implied warranty of merchantability, but the requirement of notice is not to be as strictly construed, as Merck would like to impose.

U.C.C. § 2-607(3)(a) does not set forth in its notice requirement either exact wording or specific time frames to which a party seeking to recover under a breach of warranty claim must adhere or be barred from recovery.  89 A.L.R. 5th 319, *Sufficiency and Timeliness of Buyer's Notice Under UCC § 2-607(3)(a) of Seller's Breach of Warranty*, (2001).  Instead, it instructs in general terms what the notice must inform the seller or manufacturer of, and specifies that the notice must be given within a reasonable time after discovery of the product's defects.  *Id.* at § 2(a).

Merck takes a hard line approach to defining "reasonableness" and "sufficiency" that is not only inconsistent with other courts' views, but also ignores the fact that as Vioxx's manufacturer, Merck was in a superior position to obtain knowledge of any potential defects and distribute such information to consumers and the medical community.   Under the Michigan U.C.C., "what is a 'reasonable time' depends upon 'the nature, purpose and circumstances' of the action."  *North Am. Steel Corp. v. Siderius, Inc.*, 75 Mich. App. 391, 254 N.W.2d 899, 905 (Mich.Ct.App.1977) (quoting Mich. Comp. Laws § 440.1204(2)).  Because of this fact-intensive inquiry into "nature, purpose, and circumstances," reasonableness is normally a question for the trier of fact.  *Barron v. Edwards*, 45 Mich. App. 210, 206 N.W.2d 508, 510 (Mich.Ct.App.1973); *see also St. Ansgar Mills, Inc. v. Streit*, 613 N.W.2d 289, 295-96 (Iowa 2000) (collecting cases, from numerous jurisdictions, holding that the determination of reasonableness under the UCC is a factual question inappropriate for summary judgment.)

Merck relies on *Am. Bumper & Mfg. Co. v. Transtechnology Corp.*, 252 Mich. App. 340, 652 N.W.2d 252 (Mich. App. 2002) for a strict interpretation of the notice requirement. Its facts bear no resemblance to the *Vioxx* litigation, which are catalyzed by *Merck's* abrupt withdrawal of its product.[20]

Other state courts, on more analogous facts, have held that filing a lawsuit is sufficient to satisfy the U.C.C. notice requirement. In an analogous case, *Graham v. Wyeth Laboratories, a Div. of American Home Products Corp.*, 666 F. Supp. 1483, Prod. Liab. Rep. (CCH) ¶ 11539 (D. Kan. 1987) (applying Kansas law), the court held that the filing of a lawsuit against a drug manufacturer by parents of a child whose vaccination for diphtheria, whooping cough, and tetanus which resulted in severe and irreversible brain damage provided sufficient notice of the alleged breach of Warranty under UCC § 2-607. *See also Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 38 U.C.C. Rep. Serv. 1150 (Colo. 1984) (rejecting the contention made by a birth control device manufacturer regarding lack of notice as without merit, discussing the reasonableness of the notice given by the filing of the plaintiff's breach of warranty suit, and noting substantial evidence in the record establishing manufacturer's notice of similar complaints).

In a more recent interpretation on the debate on whether a lawsuit is sufficient to satisfy the "notice" requirement of the U.C.C. § 2-607, the court in *Collins v. Pfizer* denied the defendants' motion to dismiss since it was unclear how the defendant was hampered by not

---

[20] The plaintiff in *American Bumper* entered into an express agreement with the Ford Motor Company to manufacture the front bumpers for Ford F-series pickup trucks. *Id.* at 343. Ford Motor approved and a third party provided plaintiff with U-nuts used in the bumper assembly; however, it was later determined that the U-nuts were defective. *Id.* Investigations were conducted and several reports issued, but it was not until three and a half years later that plaintiff notified defendants by filing a lawsuit alleging breach of implied Warranty. *Id.* at 347. The court held that pursuant to the facts of the case, the buyer's notice was insufficient to put the supplier on notice of its alleged breach; rather than allow the seller to cure any defects, buyer simply canceled the contract and later filed suit. *Id.* at 347.

being notified until litigation had started, and it was difficult to resolve such an issue on the pleadings. *Collins v. Pfizer, Inc.*, 2009 WL 126913 at *1 (S.D. Ind. Jan. 20, 2009). *See also Unified School Dist. No. 500 v. U.S. Gypsum Co.*, 788 F. Supp. 1173 (D. Kan. 1992) (applying Kansas law).

Here, the September 2004 recall of Vioxx was followed by numerous lawsuits, many of which were coordinated in this MDL. The consumer claims gathered in the Master Complaint were no surprise. Merck took the recall action advised by the FDA, acknowledging, as a practical matter, that Vioxx had no place in the marketplace, and offering, for a time, to refund the price of unused Vioxx. These events leave no functions to be served by the type of "notice" Merck would now impose to bar breach of implied warranty claims. [21]

**B.      Privity Is Not Required To State A Breach Of Implied Warranty Claim Under Washington Law.**

Merck's privity argument with respect to Washington law is misplaced. Merck's only argument in support of dismissing the warranty claims is lack of privity under Washington law. The Washington Product Liability Act, RCW 7.72, *et seq.* ("WPLA"), provides "a claimant" with a cause of action for harm proximately caused by a product that "was not reasonably safe because it did not conform to the manufacturer's implied warranties under Title 62A RCW." RCW 7.72.030(2). The warranty of merchantability encompasses considerations of fitness for ordinary purposes as well as the adequacy of the package and label. RCW 62A.2.314(2). *Hue v. Farmboy Spray Co., Inc.*, 896 P.2d 682, 694 (Wash. 1995). A "claimant" is "any" person who suffers harm "even though the claimant did not buy the product from, or enter into any contractual relationship with," the seller. RCW 7.72.010(5).

---

[21] Plaintiffs are not pursuing the claim for breach of warranty under Arizona, Illinois, Florida or Kentucky law.

Plaintiffs have properly alleged a claim for implied warranty of merchantability under Washington law.  MC ¶¶ 272 (Vioxx was not of merchantable quality and was not fit for its intended use because it causes increased risk of serious cardiovascular and cerebrovascular adverse events); ¶ 320 (Merck breached its implied warranty that Vioxx was of merchantable quality and fit for such use in violation of RCW 62A.2-314); ¶ 324 (as a proximate cause of Merck's breach of warranty, Plaintiffs and the Class suffered ascertainable losses, injuries and damages as specified herein in an amount to be determined at trial).

Merck relies upon a federal decision in seeking to add a privity requirement to this claim. Merck Br. at 26 n.7 (citing *Stepp v. Takeuchi Mfg. Co.,* 2008 U.S. Dist. LEXIS 80809, at *28-29 (W.D. Wash. October 2, 2008).  *Stepp* noted that claims for breach of the implied warranty of merchantability generally require privity of contract, citing *Thongchoom v. Graco Children's Products, Inc.,* 71 P.3d 214, 219 (Wash. Ct. App. 2003).  In making this observation regarding privity, however, *Thongchoom* relied upon a case to which the products liability act did not apply because the injury occurred before the act's enactment.  *Thongchoom,* 71 P.3d at 219 (citing *Baughn v. Honda Motor Co., Ltd.,* 727 P.2d 655, 668 (Wash. 1986)).

The Washington Supreme Court was itself presented with the issue of whether privity was required for implied warranty claim under the WPLA in *Hue v. Farmboy Spray Co.*, 896 P.2d 682, 694 (Wash. 1995).  The manufacturer contended that privity was required under the UCC for an implied warranty claim, citing *Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Construction, Inc.,* 831 P.2d 724 (Wash. 1992), and argued that the plaintiffs' implied warranty claim was properly dismissed because privity was not present.  The Supreme Court disagreed that *Touchet* was dispositive of the issue, stating that it had not yet decided whether privity is required under the WPLA. *Hue*, 896 P.2d at 694 (Wash. 1995). *Touchet* addressed the

types of horizontal and vertical connections required for breach of warranty claims brought under the UCC, but expressly did not address these issues with regard to the WPLA. *Id.*

Although the Supreme Court again declined to decide this issue in *Hue,* the plain language of the statute provides the answer — the WPLA provides for strict liability in connection with an alleged breach of implied warranty regardless of privity:   A product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was … not reasonably safe because it did not conform to the manufacturer's … implied warranties under Title 62A RCW.  A "claimant" is "any" person who suffers harm "even though the claimant did not buy the product from, or enter into any contractual relationship with," the seller.   RCW 7.72.010(5).   RCW 7.72.030(2); RCW 7.72.010(5).  Indeed, purchasers from retailers have been awarded summary judgment against a product manufacturer on WPLA breach of implied warranty claims.  *Smith v. Behr Process Corp.,* 54 P.3d 665, 671-72 (Wash. Ct. App. 2002).

## IV.    THE COURT SHOULD DENY MERCK'S MOTION TO STRIKE THE CLASS ALLEGATIONS.

### A.    Federal Courts Disfavor Motions To Strike Class Allegations.

An order to strike class allegations is a drastic remedy that is rarely appropriate. "Because striking a pleading 'is an extreme measure,' motions to strike are 'viewed with disfavor and are infrequently granted.'"  *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000), *quoting Lunsford v. United States*, 570 F.2d 221, 229 (C.A. 8th Cir.1977)." *Poulos v. Summit Hotel Properties, LLC*, Slip Copy, 2010 WL 2034634 (D.S.D. 2010), *see also* 2 *Moore's Federal Practice* § 12.37[1] (3d ed. 2000) ("Courts disfavor the motion to strike, because it 'proposes a drastic remedy'").  Motions to strike class allegations are very rarely appropriate at the pleading stage.  In *Rios v. State Farm Fire and Cas. Co*., 469 F. Supp. 2d 727, 741-42 (S.D.

Iowa 2007), the court denied the motion to strike class allegations at the pleading stage, because "it is unclear what state laws will be involved, or what claims will ultimately remain after the completion of class discovery" (*citing Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 519 (N.D. Iowa 2003) (certification "determination should be predicated on more information than the pleadings will provide").  In *Rios*, the court held:

> [T]he Court will be required to conduct a rigorous analysis … at the certification stage … and may ultimately conclude that Plaintiffs cannot meet the commonality requirement.  … However, at this time, on State Farm's motion to strike and dismiss, *it does not appear beyond doubt* that Plaintiffs cannot establish an actionable class action lawsuit.  *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997).

*Rios*, 469 F. Supp. 2d at 741-42, *emphasis added*.

Federal courts across the country have denied similar motion for exactly these reasons.

Very recently, in *Daigle v. Ford Motor Co.*, the court held:

> The Court finds that this case is not so unique or different that a motion to strike at the pleading stage is appropriate. Accordingly, the Court will deny the motion to strike the class allegations, and allow discovery as to class allegations.

*Daigle v. Ford Motor Co.*, __ F. Supp. 2d __, 2010 WL 1875521, *8-*9 (D. Minn. May 10, 2010).  Similarly, in *Misra v. Decision One Mortgage Co.*, the court held:

> As to the remaining arguments, the Court finds that none merit striking the class allegations at this stage. Defendants' arguments have been tested previously, and there is little, if any, authority in the Ninth Circuit or its district courts to support striking the Rule 23 class claims at this stage of the litigation in a motion to strike.

*Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 994 (C.D. Cal. 2008).[22]

---

[22] *See also Ewing v. Coca Cola Bottling Co. of New York, Inc.*, 2001 WL 767070 at *8-*9 (S.D.N.Y. June 25, 2001) ("in the context of a fully litigated motion for class certification, [the court is] in a position to resolve factual disputes and make findings necessary to determine whether a class should be certified"); *Jones v. TT of Longwood, Inc.*, 2006 WL 2789140 (M.D. Fla. 2006) (refusing to consider class certification issues on a motion to dismiss because such arguments are "premature").

Merck fails to acknowledge the vast authority in opposition to its position, and cites largely unpublished decisions that are easily distinguished from the present case.  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (U.S. Tex., 1982), while indeed a leading decision on several class action issues, is wholly inapposite to Merck's motion to strike; indeed, it supports its denial.  *Falcon* did not involve a motion to strike class allegations; instead, the *Falcon* court reviewed a lower court's order granting the plaintiffs' motion for class certification, and explained the hybrid nature of class certification, which requires an exploration of the facts and the law underlying the claims:

> As we noted in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351, "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"  *Id*. at 469, 98 S.Ct., at 2458 (*quoting Mercantile Nat. Bank v. Langdeau, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523*).

457 U.S. 160.  It is exactly **because** the Rule 23 determination is "enmeshed in the factual and legal issues" that the determination cannot be made on the pleadings in a complex case, including this one.  That is why "There is not and should not be a rule that [consumer fraud class actions] can never be certified."  *Pella v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010)

### B.   It Is Far From "Beyond Doubt" That Vioxx Statewide Classes Cannot Be Certified, When Identical Claims Have Been Certified And Affirmed Under Missouri Law And The Certifiability Of Consumer Claims Has Been Recently Recognized By Federal Appellate Courts.

As shown above, a motion to strike class allegations must be denied unless it is "beyond doubt that Plaintiffs cannot establish an actionable class action lawsuit."  *Rios*, 469 F. Supp. 2d at 741-42.  Although Merck discusses at great length the two cases where class certification of similar claims was denied (after certification motions were made and fully briefed, which has not yet occurred here), it fails to properly address the third case, which certified Vioxx consumer claims and was upheld on appeal.  *Plubell v Merck & Co*., 289 S.W.3d 707, 710 (Mo. App.

2009).  The *Plubell* plaintiffs were Vioxx consumers who brought a claim for violation of the

Missouri Merchandising Practices Act, V.A.M.S. § 407.010 *et seq.* ("MMPA"), and alleged, as

Plaintiffs here, that Merck "engaged in unlawful practices, 'including deception, false promises,

misrepresentation, and/or the concealment, suppression, or omission of material facts,' by failing

to disclose and actively concealing the drug's risks" and that they "suffered economic damages

in that the product they and other class members purchased was worth less than the product they

thought they had purchased had Merck's representations been true.'"  *Plubell*, 289 S.W.2d at 711,

*see also* MC ¶¶ 74-135, 212.

Moreover, "The requirements for an MMPA class action are essentially identical to the

requirements under Rule 52.08 and Federal Rule 23, and the MMPA provides that a class action

under it should be maintained consistently with those rules."  *Plubell*, 289 S.W.2d at 712.

Merck made the same arguments in opposition to certification in *Plubell* as it does

here — that Plaintiffs cannot show deception, ascertainable loss and causation with common

proof, and that individual issues regarding "each prescribing physician's knowledge of the risks,

[and] whether a different representation would have affected the class member's taking of

Vioxx," overwhelm common questions.  *Id.* at 713, Motion at 31-34.  The *Plubell* court rejected

these arguments, and held that Plaintiffs "are not required to prove they or their physicians relied

on Merck's alleged misrepresentations about Vioxx, and consequently, they are not required to

offer individualized proof that the misrepresentation colored the decision to take Vioxx."

With respect to causation and ascertainable loss, the *Plubell* court held,

> [A] plaintiff's loss should be a result of the defendant's unlawful
> practice, but the statute does not require that the purchase be
> caused by the unlawful practice. Therefore, the class members are
> not individually required to show what they would or would not
> have done had the product not been misrepresented and the risks
> known.

> Nor does the MMPA require each Plaintiff to prove "loss" by individually showing the cost of alternative therapy. Plaintiffs alleged, "[t]he product they and other class members purchased was worth less than the product they thought they had purchased had Merck's representations been true." The trial court found they had alleged an ascertainable loss under the benefit of the bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction. [Citation.] The rule is part of our standard instructions for damages in misrepresentation cases. [Citation.] The rule is also applicable in MMPA cases to meet the element of ascertainable loss. [Citation.] Here, because Plaintiffs alleged Vioxx was worth less than the product as represented, they stated an objectively ascertainable loss under the MMPA using the benefit of the bargain rule. …
>
> Consequently, Merck has not shown that individualized issues predominate over common ones.

*Plubell*, 289 S.W.2d at 714-15.

Merck's  motion to strike cannot be granted unless it is "beyond doubt" that a class cannot be certified, and so Merck attempts to argue that it is "clear from the pleadings" these claims "dramatically fail Rule 23(b)(3)'s predominance and superiority requirements."  Motion at 29-30.  What Merck does not, and cannot, explain is how the Missouri Court of Appeal held exactly otherwise, or explain away the recent federal appellate decisions that have affirmed the certification of consumer statutory claims on federal Rule 23 commonality, predominance, and superiority grounds, such as *Wolin v. Land Rover* and *Pella v. Saltzman*, discussed below.

## C.    <u>Common Questions Of Law And Fact Predominate Over Individual Issues.</u>

Predominance requires a determination that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R Civ. P. 23(b)(3).  "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625

(1997), *quoting* Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendments[23]; *see also In re First Alliance Mortgage Co.,* 471 F.3d 977, 990 (9th Cir. Cal. 2006); *Smilow v. Southwestern Bell Mobile Systems, Inc*., 323 F.3d 32, 42 (Mass. 1st Cir. 2003); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. C.A. 1975) ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions"). *See Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 29 (D. Mass. 2003) ("[c]lasses … of consumers are especially likely to satisfy the predominance requirement.")

Plaintiffs' consumer fraud claims arise from a common course of conduct towards all consumer purchasers of Vioxx.  Specifically, Merck engaged in a common course of conduct in omitting, suppressing, and concealing the safety risks and inefficacy of Vioxx toward all consumer purchasers of Vioxx that caused them to purchase Vioxx, and to do so at grossly inflated prices relative to other medications.  Answers to the paramount questions of whether Vioxx posed an increased risk over traditional NSAIDS of blood clots, heart attack, stroke, unstable angina, cardiac clotting and hypertension; whether Merck should have known or did know of the dangers associated with Vioxx; whether Merck failed to disclose the health risks of Vioxx from the medical community, regulators, and the consumers; and whether Merck's conduct induced Plaintiffs and class members to purchase or authorize the purchase of Vioxx will directly and substantially impact every class member's liability case and entitlement to relief

---

[23] As the Advisory Committee Note states:  "It is only where this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."  Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendments, Subdivision (b)(3))

under the consumer fraud statutes. "Common issues of fact and law 'predominate' if they have direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir. Fla. 2004). Many of the consumer fraud statutes at issue do not require reliance, and reliance is also often presumed or inferred from the materiality of misrepresentations/omissions, and/or the act of purchase. *See* Section I, *infra*; *see also*, *e.g.*, *Siemer v. Assocs. First Capital Corp.*, 2001 U.S. Dist. LEXIS 12810, at **14-15 (D. Ariz. Mar. 30, 2001) (certifying ACFA claim under Rule 23(b)(3), holding that reliance can be shown by purchasing the misrepresented product; *Grays Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) (certifying a WCPA claim, noting that the presumption of reliance was appropriate to the current CPA fraud claim, just as it was in the Securities and Bankruptcy cases in which it has already been applied).

Plaintiffs' unjust enrichment claims are based on Merck's common course of conduct in omitting, suppressing, and concealing the safety risks and inefficacy of Vioxx. These claims satisfy the predominance of common issues requirement as well. In *In re Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. 672, 697 (S.D. Fla. 2004), the court certified a nationwide unjust enrichment class, holding that the substantive elements of an unjust enrichment claim are "virtually identical" across the nation, and suited to class treatment:

> [T]he question of whether Defendants were unjustly enriched is susceptible to proof using common, generalized evidence. Section 1 of the Restatement (First) of Restitution provides that a "person who has been unjustly enriched at the expense of another is required to make restitution to the other." … [T]he Restatement sets forth a four-part test for claims of unjust enrichment: (1) the unjust; (2) retention of; (3) a benefit received: (4) at the expense of another.
>
> … ***As is the nature of unjust enrichment claims, this common evidence will focus on the defendant's gain and not on the***

> ***plaintiff's loss.***  Accordingly, it is evident that success or failure in proving this unjust enrichment claim will mean success or failure for the class as a whole, not for individual class members.

220 F.R.D. at 697, 698 (emphasis added).  Similarly, *Veal v. Crown Auto Dealerships, Inc.*, 2006 WL 844561 (M.D. Fla. March 30, 2006), the court certified a nationwide unjust enrichment class, holding the issues of whether defendant's receipt of income from deceptive scheme was at the expense of class members, and resulted in profits that, as a matter of equity, should be returned to class members, was susceptible to generalized, classwide proof.  The same is true for this case.  The focus is on the Defendant and its ill-gotten gains, not on any individual plaintiff.  Merck has enjoyed $8 billion in U.S. Vioxx sales.[24]  The common question is whether, and how much of, this constitutes unjust enrichment.

Implied warranty claims are also appropriate for class certification where "the putative class members' claims [arise] from a common nucleus of operative facts involving the formulation, manufacture, and sale of [defendant's] allegedly defective products.  *Smith v. Behr Process Corp.*, 54 P.3d 665, 671-72, 674-75 (Wash Ct. App. 2002) (certifying implied warranty class under Rule 23(b)(3) in product liability case where "the core of the putative class's claims was that Behr's products were defective and that Behr's product labeling was inadequate" and the class claimed that the manufacturer had "engaged in a common course of conduct toward all potential class members in the formulation, manufacture, and sale of the challenged products.")

Merck argues at length that individual issues regarding causation overwhelm these common issues.  Motion at 1-2.  This is the same argument that was rejected in *Plubell*.  *289*

---

[24] *See* Merck's discovery responses in *In re: Vioxx Products Liability Litigation*, MDL No. 1657, "Response of Defendant Merck & Co., Inc. to Plaintiff Steering Committee's First Set of Interrogatories, Response to Interrogatory No. 10 regarding gross sales of Vioxx, minus discounts and rebates, for the following years:  1999 ($402.9 MM), 2000 ($1,630.6 MM), 2001 ($1,653.9 MM), 2002 ($1,680.1 MM), 2003 ($1,537.5 MM), and 2004 ($1,123.6 MM), equaling roughly $8 billion in gross U.S. sales.

*S.W.2d at 713:* "Because Plaintiffs alleged Vioxx was worth less than the product as represented, they stated an objectively ascertainable loss."

The Ninth Circuit recently held in *Wolin v. Jaguar Land Rover North America, LLC,* __ F.3d __, 2010 WL 3222091, 4 (9th Cir. August 17, 2010), <u>reversing</u> the denial of Rule 23(b)(3) certification of consumer fraud, breach of warranty, and unjust enrichment claims:

> The district court erred when it concluded, without discussion, that certification is inappropriate because Gable and Wolin did not prove that the defect manifested in a majority of the class's vehicles. The appellants allege a violation of the Michigan Consumer Protection Act and the Florida Deceptive and Unfair Trade Practices Act, because, for example, Land Rover represented that the vehicles had particular characteristics or were of a particular standard when they were of another, and Land Rover failed to reveal material facts about the vehicles. Gable alleges breach of implied warranty because the vehicles were defective and not of merchantable quality at the time they left Land Rover's possession. Common issues predominate such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so.
> …
> What Land Rover argues is whether class members can win on the merits. For appellants' claims regarding the existence of the defect and the defendant's alleged violation of consumer protection laws, this inquiry does not overlap with the predominance test.

Merck argues that Plaintiffs cannot show its misrepresentations caused them to purchase Vioxx. As held in *Plubell,* causation does not require individual inquiry. *Plubell* at 714. As held in *Wolin,* whether or not Plaintiffs can show causation on an aggregate level (they can) is not a question of merits, and not relevant to the predominance inquiry, which focuses on the predominating issues of defendant's product, knowledge, and conduct. *Wolin,* *Id.* In *Pella v. Saltzman,* 606 F.3d 391 (7th Cir. 2010) the *per curiam* opinion (of a panel comprised of Judge Posner, Williams, and Tinder) affirmed the certification of a nationwide 23(b)(2) class and six statewide consumer fraud 23(b)(3) liability classes, rejecting the argument they were ineligible

for class certification because of individualized issues of causation (reliance) and damages.  A common issue trial focusing on the defendant's product and conduct qualified the case for class treatment, because such questions predominated under Rule 23(b)(3):

> "the central questions are the same for all class members—whether [the product] suffered from an inherent defect when they left the factory, whether and when [defendant] knew of this defect, the scope of [defendant's] warranty . . ."  605 F.3d at 394.

The *Pella* decision assumed there could be individualized issues, including those of damages and proximate cause (reliance).  *Id*. at 394.  Nonetheless, it applied Rule 23(b)(3)'s predominance standard, and its superiority considerations (access, proportionality, and economy), and reaffirmed these principles:

> In *Thorogood*, the court noted that there are times when class certification is "a sensible and legally permissible alternative to remitting all the buyers to individual suits each of which would cost orders of magnitude more to litigate than the claims would be worth to the plaintiffs."  547 F.3d at 748.  We reassert that proposition here and hold that the district court properly weighed the facts before it and exercised its discretion to conclude that the common predominant issue of whether the windows suffer from a single, inherent design defect leading to wood rot is the essence of the dispute and is better resolved by class treatment.  The district court reasonably determined that the individual issues that necessarily arise in a consumer fraud action would not prevent class treatment of the narrow liability issues here.

606 F.3d at 393, citing *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 748 (7th Cir. 2008).[25]

---

[25] *Pella* recognized that "a district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments." *Id.*  (Citing cases).  The Fifth Circuit made similar observations in *In re Katrina Canal Breaches Litigation*, 524 F.3d 700, n. 48 (5th Cir. 2008) (discussing the "broad discretion" of district court under, *inter alia*, Rule 23(c)(4), "to take any of those parts of a lawsuit which lend themselves to convenient use of the class action motif," to bifurcate liability and damages, etc.)  Here, many of the state claims have no such individualized elements; *Pella* and *Katrina* stand for the principle that even those that may involve individualized proof nonetheless qualify for the class treatment of common issues, making Merck's motion to strike especially inapt.

## <u>CONCLUSION</u>

Wherefore, on the basis of the Plaintiffs' memorandum in opposition to the previous motion to dismiss, this memorandum, and the pleading and papers on file in this litigation, Plaintiffs respectfully urge this Court to deny the Defendants' Motion for Judgment on the Pleadings or to Strike Class Allegations with respect to consumers' economic loss claims.


Date:  August 23, 2010                         Respectfully submitted,


/s/ Dawn M Barrios                             /s/ Elizabeth J. Cabraser
Dawn M. Barrios                                Elizabeth J. Cabraser
BARRIOS, KINGSDORF & CASTEIX, LLP              LIEFF      CABRASER      HEIMANN &
701 Poydras Street, Suite 3650                 BERNSTEIN, LLP
New Orleans, LA  70139                         275 Battery Street, 29th Floor
Telephone:  (504) 524-3300                     San Francisco, CA  94111-3339
Facsimile:  (504) 524-3313                     Telephone:  (415) 956-1000
                                               Facsimile:  (415) 956-1008

                                               Chair, PSC Purchase Claims Committee

                                               James R.  Dugan, II
                                               THE DUGAN LAW FIRM
                                               650 Poydras Street, Suite 2150
                                               New Orleans, LA  70130
                                               Telephone:  (504) 648-0180
                                               Facsimile:  (504) 648-0181

                                               Vice Chair, PSC Purchase Claims Committee

                                               Dennis Johnson
                                               Eben F. Duval
                                               JOHNSON & PERKINSON
                                               P.O. Box 2305
                                               1690 Williston Road
                                               South Burlington, VT  05403
                                               Telephone:  (802) 862-0030
                                               Facsimile:  (802) 862-0060

Amy N. L. Hanson
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone:  (206) 623-1900
Facsimile:   (206) 623-3384

Lance A. Harke, P.A.
Howard M. Bushman, Esq.
HARKE CLASBY & BUSHMAN LLP
9699 NE Second Avenue
Miami, FL  33138
Telephone:  (305) 536-8220
Facsimile:   (305) 536-8229

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL  60602
Telephone:  (312) 621-2000
Facsimile:   (312) 641-5504

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel,

Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail,

upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading

same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that

the foregoing was electronically filed with the Clerk of Court of the United States District Court

for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of

Electronic Filing in accord with the procedures established in MDL 1657, on this 23rd day of

August, 2010.


/s/ Dawn M. Barrios
Dawn M. Barrios