IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AvMed, Inc., et al.,<br><br>                      Plaintiffs,<br><br>vs.<br><br>BrownGreer PLC, U.S. Bancorp, Inc., and John Does,<br><br>                      Defendants. | CIVIL ACTION<br><br>No. 08-1633<br><br>SECTION L, MAG. 3<br><br>HONORABLE ELDON E. FALLON<br>HONORABLE DANIEL E. KNOWLES, III<br><br>In relation to:     MDL No. 1657<br><br>In re: Vioxx Products Liability Litigation |

### DECLARATION OF ROBERT C. GRIFFITH, ESQ.

I, Robert C. Griffith, Esq., declare, pursuant to 28 U.S.C. § 1746, that:

1. I am an attorney at Rawlings and Associates, PLLC ("Rawlings"), co-counsel for the Plaintiff Plans in this case. On behalf of Rawlings and the Plaintiff Plans, I have been involved in ongoing communications with attorneys at law firms who represent or represented Eligible Claimants ("ECs") who did not participate in the Private Lien Resolution Program (the "PLRP"). These law firms include Proposed Defendant Law Firms named in the Proposed Second Amended Complaint. I make this Declaration on personal knowledge.

2. On May 7, 2010, Rawlings' Chairman, Mark D. Fischer, Esq., sent notice letters to twelve law firms that represent identified ECs who did not participate in the PLRP. True and correct copies of these letters are attached as Exhibit A. Recipients of these letters included: (a) Sol Weiss, Esq., of the law firm Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, PC ("Anapol Schwartz"); (b) Bruce Regenstreich, Esq., of Burrell Regenstreich LLC ("Burrell Regenstreich") (c) Stewart Cohen, Esq., of Cohen Placitella & Roth ("Cohen Placitella"); (d) George E. Pallas, Esq., of Cohen, Seglias, Pallas, Greenhall & Furman ("Cohen Seglias"); (e) Michael A. Ferrara, Jr., Esq., of The Ferrara Law Firm ("Ferrara"); (f) David P. Matthews, Esq., of Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz"); (g) Shanin Specter, Esq., of Kline & Specter, PC ("Kline & Specter"); (h) Mark Lanier, Esq., of The Lanier Law Firm PC ("Lanier"); (i) Gene Locks, Esq., of Locks Law Firm ("Locks"); (j) Benedict P. Morelli, Esq., of Morelli Ratner, PC ("Morelli Ratner"); (k) Benjamin Crump, Esq., of Parks Crump PC ("Parks Crump"); and (l) Perry Weitz, Esq., of Weitz & Luxenberg, PC ("Weitz & Luxenberg").

3. On June 8, 2010, Mr. Fischer sent a second set of notice letters to twelve law firms. True and correct copies of these letters are attached as Exhibit B. Recipients of these letters

1

included: (a) Anapol Schwartz; (b) Turner Branch, Esq., of The Branch Law Firm ("Branch"); (c) Cohen Placitella; (d) Cohen Seglias; (e) Ferrara; (f) Kasowitz; (g) Kline & Specter; (h) Lanier; (i) Locks; (j) Morelli Ratner; (k) Parks Crump; and (l) Weitz and Luxenberg.

4. These letters enclosed charts listing ECs and lien amounts for identified clients of the Proposed Defendant Law Firms. In particular, the enclosed charts identified ECs by first and last name, case name, lien amount, and health plan. The first and last names and the case names associated with these ECs were <u>not</u> redacted on any of these letters.

5. I was responsible for tracking all subsequent responses to these notice letters. These varied significantly by law firm, as described below. While some of this correspondence helped to resolve certain liens asserted against ECs of certain law firms, the vast majority of these liens were never addressed. The following chart summarizes the number of liens and total lien amounts associated with each firm as of the present:

| Firm | Total Number of Liens | Total Lien Amount |
|---|---|---|
| Anapol Schwartz | 10 | $300,209.27 |
| Branch | 66 | $3,243,282.01 |
| Cohen Placitella | 15 | $688,132.54 |
| Cohen Seglias | 5 | $155,454.75 |
| Hovde Dassow | 7 | $124,987.37 |
| Kline & Specter | 21 | $872,192.81 |
| Lanier | 46 | $2,051,466.92 |
| Locks | 21 | $426,799.88 |
| Morelli Ratner | 30 | $829,741.43 |
| Parks Crump | 16 | $2,007,306.42 |
| Weitz & Luxenberg | 70 | $3,189,636.88 |
| **Total:** | 307 | $13,889,210.28 |

**Correspondence with Proposed Defendant Law Firms:**

<u>Anapol Schwartz:</u>

6. Mr. Fischer sent notice letters to Anapol Schwartz dated May 7 and June 8, 2010. Anapol Schwartz responded to both of these letters. True and correct copies of each response letter are attached hereto as Exhibit C.

7. Anapol Schwartz responded to Mr. Fischer's letter of May 7 by letter dated May 21, 2010. Anapol Schwartz denied that Rawlings had provided "qualified notice" of our clients' "alleged subrogation interests" and asserted that Anapol Schwartz had no obligation to respond to Mr. Fischer's correspondence at all. Anapol Schwartz did, however, identify five Vioxx plaintiffs named in Mr. Fischer's first letter who either (a) were not represented by Anapol Schwartz; (b) had enrolled in the PLRP; (c) had received a fixed payment of $5,000; or (d) were otherwise improperly identified as a nonparticipating EC. In response, Rawlings removed these plaintiffs from the exhibits it

2

was preparing in support of its Motion to Amend and Proposed Second Amended Complaint.

8. Anapol Schwartz responded to Mr. Fischer's letter of June 8 by facsimile dated June 16, 2010. Anapol Schwartz again denied that Mr. Fischer's letter provided "qualified notice" of our clients' "alleged subrogation interests" and asserted that Anapol Schwartz had no obligation to respond to Mr. Fischer's letter. Anapol Schwartz did, however, identify three Vioxx plaintiffs named in Mr. Fischer's second letter who either (a) were not represented by Anapol Schwartz or (b) had subsequently decided to participate in the PLRP. Rawlings once again removed these plaintiffs from the exhibits it was preparing in support of its Motion to Amend and Proposed Second Amended Complaint.

9. I sent a reply letter to Anapol Schwartz on July 12, 2010. A true and correct copy of that letter is attached hereto as Exhibit D.

10. My reply indicated that Rawlings did not intend to pursue reimbursement claims related to any of the ECs that Anapol Schwartz claimed were improperly identified. I also clarified that (a) our clients were pursuing claims for reimbursement, not subrogation, and, as such, "notice," as that term is used in subrogation cases, was not required; and (b) that Anapol Schwartz's clients had received adequate notice when they signed insurance contracts with our clients providing them with rights to reimbursement. I also assured Anapol Schwartz that Rawlings would provide relevant plan language and a list of asserted liens for each Anapol Schwartz client upon Anapol Schwartz's submission of an attached HIPAA release form for that client. To date, Rawlings has received no response to this letter.

11. Anapol Schwartz's correspondence did not account for ten liens asserted against nine of its clients totaling $300,209.27.

### Branch

12. In a two letters received from Weitz & Luxenberg, Rawlings learned that Branch represented a large number of ECs who had not participated in the PLRP. Mr. Fischer subsequently sent Branch a notice letter on June 8, 2010. To date, Branch has not communicated with Rawlings regarding this letter.

13. Branch has not accounted for 66 liens asserted against 50 of its clients totaling $3,243,282.01.

### Cohen Placitella

14. Mr. Fischer sent notice letters to Cohen Placitella dated May 7 and June 8, 2010. Cohen Placitella responded with letters dated June 14 and June 24, 2010. True and correct copies of these letters are attached as Exhibit E.

15. Cohen Placitella's response letters identified certain Cohen Placitella clients who (a) had participated in the PLRP; or (b) had not received settlement funds from Merck. Rawlings

3

subsequently removed these plaintiffs from the exhibits it was preparing in support of its Motion to Amend and Proposed Second Amended Complaint.

16. After filing its Motion to Amend and Proposed Second Amended Complaint, Rawlings learned from Motley Rice LLC that it had served as primary counsel in a number of cases where Cohen Placitella had served as local counsel. (*See* ¶ 62, *infra*.) None of Cohen Placitella's earlier communications had apprised Rawlings of this situation. Rawlings intends to amend certain exhibits to its Motion to Amend and Proposed Second Amended Complaint to reflect this change.

17. On July 12, 2010, I replied to all of this correspondence by letter to Cohen Placitella. A true and correct copy of that letter is attached as Exhibit F. I requested that Cohen Placitella identify the status of additional Cohen Placitella clients who had not been addressed by any of these letters. I assured Cohen Placitella that I would provide relevant plan language and a list of asserted liens for each client upon Cohen Placitella's submission of an attached HIPAA release form for each of these clients. To date, Rawlings has received no response to this letter.

18. Cohen Placitella has not accounted for fifteen liens asserted against eleven of its clients totaling $688,132.54.

## Cohen Seglias

19. Mr. Fischer sent notice letters to Cohen Seglias dated May 7 and June 8, 2010. To date, Cohen Seglias has not communicated with Rawlings regarding either of these letters.

20. Cohen Seglias has not accounted for five liens asserted against four of its clients totaling $155,454.75.

## Hovde Dassow

21. On May 18, 2010, Rawlings received a letter from Hovde Dassow responding to Mark Fischer's letter to Ferrara of May 7. (*See* ¶ 61, *infra*.) Hovde Dassow's letter confirmed that it represented seven ECs as primary counsel in cases handled by Ferrara as local counsel. A true and correct copy of that letter is attached as Exhibit G.

22. Hovde Dassow's response requested "a copy of any notice that was sent to us that purports to put us on notice of any liens as well as the legal basis for such liens" for these seven ECs.

23. I responded to that letter on July 12, 2010. A true and correct copy of that letter is attached as Exhibit H.

24. My letter stated that (a) our clients were pursuing claims for reimbursement, not subrogation, and, as such, "notice," as that term is used in subrogation cases, was not required; and (b) that Hovde Dassow's clients had received adequate notice when they

4

        had signed insurance contracts with our clients providing our clients with rights to reimbursement. I assured Hovde Dassow that I would provide the relevant plan language and a list of asserted liens for each client upon Hovde Dassow's submission of an attached HIPAA release form for that client. To date, Rawlings has received no response to this letter.

25.        Prior to the filing of Plaintiffs' Motion to Amend, Hovde Dassow had not accounted for seven liens asserted against six of its clients totaling $124,987.37.

### Kasowitz

26.        Mr. Fischer sent notice letters to Kasowitz dated May 7 and June 8, 2010. On or about June 23, 2010, I spoke to Miriam Benor, a Kasowitz attorney, regarding the status of these liens. She notified me that, with the exception of one identified EC for whom Kasowitz still held settlement funds in trust, Kasowitz had distributed all settlement funds to the clients identified in Mr. Fischer's letters in 2009.

27.        On July 12, after various exchanges by e-mail, I sent Ms. Benor a response letter by facsimile and U.S. mail. A true and correct copy of that letter is attached as Exhibit I. The letter requested that Kasowitz submit a completed HIPAA release form for the Kasowitz client who still had settlement funds held in trust by Kasowitz, upon receipt of which Rawlings would forward relevant plan language and lien information for that Kasowitz client. Ms. Benor returned a completed HIPAA release the next day.

28.        After review of the HIPAA release form, Rawlings was able to confirm that the Kasowitz client's date of birth and social security number did not match the records for the lien asserted by our client. I subsequently apprised Ms. Benor of this situation, and Rawlings agreed to voluntarily dismiss its clients' claims against Kasowitz.

### Kline & Specter

29.        Mr. Fischer sent notice letters to Kline & Specter dated May 7 and June 8, 2010. To date, Kline & Specter has not communicated with Rawlings regarding either of these letters.

30.        Kline & Specter has not accounted for twenty-one liens asserted against sixteen of its clients totaling $872,192.81.

### Lanier

31.        Mr. Fischer sent notice letters to Lanier dated May 7 and June 8, 2010. Lanier responded by letter dated June 17, 2010. A true and correct copy of Lanier's response is attached hereto as Exhibit J.

32.        Lanier's response stated that Mr. Fischer's letters "do not provide the information and/or notice necessary to perfect any of the alleged subrogation interests. As such, the letters do not require a substantive response on our part and we will not specifically address any individual you have listed in the attachments to your letters."

33. Lanier's response further stated that it "does not hold funds in constructive trust for most of the claimants listed in the attachments to your letters," and that an unspecified number of former Lanier clients had already received any settlement money owed to them. Lanier, however, did not identify any of these former clients by name.

34. Lanier's response also indicated that several of the Lanier clients identified in Mr. Fischer's letters had participated in the PLRP. Lanier, however, did not identify any of these clients by name.

35. Lanier's letter concluded: "Any actions by or on behalf of your client, short of legal and proper assertion of a subrogation interest, will be met with a defense that will seek any and all legal costs incurred as a result of such actions."

36. Lanier's response did not identify any current or former Lanier client by name who (a) had already received settlement funds; (b) had not been paid settlement funds currently held in trust by Lanier; or (c) had participated in the PLRP.

37. I replied to Lanier's response on July 12. A true and correct copy of Lanier's response is attached hereto as Exhibit K.

38. My reply stated that without additional information, it was impossible for Rawlings to determine which Lanier clients had already received settlement funds or had participated in the PLRP. I also clarified that (a) our clients were pursuing claims for reimbursement, not subrogation, and, as such, "notice," as that term is used in subrogation cases, was not required; and (b) that Lanier's clients had received adequate notice when they had signed insurance contracts with our clients providing our clients with rights to reimbursement. I assured Lanier that I would provide the relevant plan language and a list of asserted liens for each client upon Lanier's submission of an attached HIPAA release form for each client. To date, Rawlings has received no response to this letter.

39. Lanier has not accounted for forty-six liens asserted against thirty-eight of its clients totaling $2,051,466.92.

<u>Locks</u>

40. Mr. Fischer sent notice letters to Locks dated May 7 and June 8, 2010. Locks responded to the first of these letters. A true and correct copy of this response is attached hereto as Exhibit L.

41. In its entirety, the body of Locks's response stated: "We have reviewed the list [of identified ECs] enclosed with your letter dated May 7, 2010. Without waiving any defenses, objections or other legal positions, no plaintiff represented by this firm who received or will receive settlement proceeds related to their usage of Vioxx, are on that list."

42. I sent a reply to Locks on July 12, 2010. A true and correct copy of that letter is attached as Exhibit M. I requested that Locks identify whether Locks represents or represented the ECs identified in Mr. Fischer's letters of May 7, and, if so, the reasons why the ECs

6

had not received settlement proceeds. My reply also requested that Locks respond to Mr. Fischer's letter of June 8.

43. To date, Rawlings has received no response from Locks to Mr. Fischer's letter of June 8 or my letter of July 12, 2010.

44. Locks has not accounted for twenty-one liens asserted against twenty-one of its clients totaling $426,799.88.

## Morelli Ratner

45. Mr. Fischer sent notice letters to Morelli Ratner dated May 7 and June 8, 2010. Morelli Ratner responded to both of these letters. True and correct copies of these responses are attached hereto as Exhibit N.

46. Morelli Ratner's responses identified Morelli Ratner clients who were listed in Mr. Fischer's two earlier letters but had not received settlement funds. In response, Rawlings removed these plaintiffs from the exhibits it was preparing in support of its Motion to Amend and Proposed Second Amended Complaint.

47. Morelli Ratner's responses further requested "a copy of any notice that was sent to us that purports to put us on notice of any liens as well as the legal basis for such liens" for certain identified Morelli Ratner clients.

48. I sent a reply to Morelli Ratner on July 12, 2010. A true and correct copy of this reply is attached hereto as Exhibit O.

49. My reply indicated that Rawlings did not intend to pursue reimbursement claims related to any of the ECs that Morelli Ratner claimed had not received settlement funds. I also clarified that (a) our clients were pursuing claims for reimbursement, not subrogation, and, as such, "notice," as that term is used in subrogation cases, was not required; and (b) that Morelli Ratner's clients had received adequate notice when they had signed insurance contracts with our clients providing our clients with rights to reimbursement. I assured Morelli Ratner that I would provide the relevant plan language and a list of asserted liens for each client upon Morelli Ratner's submission of an attached HIPAA release form for that client. To date, Rawlings has received no response to this letter.

50. Morelli Ratner has not accounted for thirty liens asserted against twenty-eight of its clients totaling $829,741.43.

## Parks Crump

51. Mr. Fischer sent notice letters to Parks Crump dated May 7 and June 8, 2010. To date, Parks Crump has not communicated with Rawlings regarding either of these letters.

52. Prior to the filing of Plaintiffs' Motion to Amend, Parks Crump has not accounted for sixteen liens asserted against twelve of its clients totaling $2,007,306.42.

7

### Weitz & Luxenberg

53. Mr. Fischer sent notice letters to Weitz & Luxenberg dated May 7 and June 8, 2010. Weitz & Luxenberg responded to both of these letters. True and correct copies of these responses are attached hereto as Exhibit P.

54. Weitz & Luxenberg's two letters identified, in attached charts, ECs who (a) were represented by primary counsel other than Weitz & Luxenberg; (b) participated in the PLRP; (c) did not receive settlement funds; (d) received $5,000 fixed payments; or (e) were represented by Weitz & Luxenberg and received settlement funds. After receipt of these letters, Rawlings removed ECs falling into the first four categories from the exhibits it was preparing to support its Motion to Amend and Proposed Second Amended Complaint.

55. In addition, Weitz & Luxenberg's responses indicated that it would "respond under separate cover to your threat of litigation against Weitz and Luxenberg 'as trustee of settlement funds.'" Rawlings, however, received no subsequent response on this issue.

56. I replied to Weitz & Luxenberg's correspondence on July 12, 2010. A true and correct copy of that letter is attached hereto as Exhibit Q.

57. My reply verified that Rawlings did not intend to pursue claims involving ECs who (a) were represented by primary counsel other than Weitz & Luxenberg; (b) participated in the PLRP; (c) did not receive settlement funds; or (d) received $5,000 fixed payments.

58. My reply also raised the issue of ECs whom Weitz & Luxenberg had identified as its clients. I asked Weitz & Luxenberg to submit completed copies of an attached HIPAA release form, upon receipt of which Rawlings would provide plan language and lien amounts for each self-identified Weitz & Luxenberg client. To date, Rawlings has received no response to this letter.

59. Weitz & Luxenberg has not accounted for seventy liens asserted against sixty of its clients totaling $3,189,636.88.

### Correspondence with Other Law Firms:

60. Mr. Fischer sent one notice letter to Burrell Regenstreich dated May 7, 2010. Burrell Regenstreich promptly responded by letter on May 10. A true and correct copy of that letter is attached as Exhibit R. Burrell Regenstreich's letter notified Rawlings that it had served only as local counsel for two other firms in the Vioxx litigation. Rawlings subsequently notified Burrell Regenstreich that it would not be named as a defendant in the present dispute.

61. Mr. Fischer sent two notice letters to Ferrara dated May 7 and June 8, 2010. Ferrara contacted Rawlings directly to notify Rawlings that Ferrara had served only as local counsel for other firms in the Vioxx litigation. Rawlings subsequently notified Ferrara it would not be named as a defendant in the present dispute.

8

62. Rawlings also received a letter from Motley Rice LLC, a law firm that had served as primary counsel in fourteen cases in which Cohen Placitella had served as local counsel. A true and correct copy of that letter is attached as Exhibit S. That letter indicated the status of each case. Subsequent communications with the firm confirmed that all Motley Rice clients either (a) had received settlement funds in 2009; (b) had not received settlement funds from Merck; or (c) were not subject to the liens asserted in Rawlings's communications with Cohen Placitella. Rawlings subsequently notified Motley Rice LLC that it did not intend to name it as a defendant in the present dispute.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   August 20, 2010
               LaGrange, Kentucky

_____
ROBERT C. GRIFFITH, ESQ.

*Emily Kimmer*
Commission No. 423726
My Commission Expires July 24, 2014

9