U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED  AUG 27 2010
LORETTA G. WHYTE
CLERK

United States Court of Appeals
Fifth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

**FILED**
July 16, 2010

Lyle W. Cayce
Clerk

No. 09-30446

D.C. Docket No. 2:05-MD-1657

IN RE: VIOXX PRODUCTS LIABILITY LITIGATION

---

GLENN L. DIER,

    Plaintiff - Appellant

v.

MERCK AND COMPANY, INC., A Foreign Corporation,

    Defendant - Appellee

---

RODNEY DARROW; RONALD R. O'CONNOR,

    Plaintiffs - Appellants

v.

MERCK AND COMPANY, INC., A Foreign Corporation,

    Defendant - Appellee

---

ADNAN AJIBORY; ROSANNA ROBINSON,

    Plaintiffs - Appellants

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee

---

_____ Fee_____
_____ Process_____
X   Dktd_____
_____ CtRmDep_____
_____ Doc. No._____

ROSEMARY HOLOBOSKY; ET AL,

    Plaintiffs - Appellants

v.

MERCK AND COMPANY, INC., A Foreign Corporation,

    Defendant - Appellee

------------------------------------------------

ALPHONSE DEROSA; ET AL,

    Plaintiffs - Appellants

v.

MERCK AND COMPANY, INC., A Foreign Corporation,

    Defendant - Appellee

------------------------------------------------

CARLO DEVINCENTIIS; ET AL,

    Plaintiffs - Appellants

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee

------------------------------------------------

ROBERT D. GATES; ET AL,

    Plaintiffs - Appellants

v.

MERCK AND COMPANY, INC., A Foreign Corporation,

    Defendant - Appellee

------------------------------------------------

KATHLEEN HOFFNER; ET AL,

    Plaintiffs - Appellants

v.

MERCK AND COMPANY, INC., A Foreign Corporation,

    Defendant - Appellee

------------------------------------------------------------

MARJORIE CONNOLLY; ET AL,

    Plaintiffs - Appellants

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee

------------------------------------------------------------

GERALDINE M. ALAPECK,

    Plaintiff - Appellant

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee

------------------------------------------------------------

MARY J. MAHAR,

    Plaintiff - Appellant

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee

------------------------------------------------------------

MARIANNE RAFTIS,

    Plaintiff - Appellant

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee,

------------------------------------------------------------

SAMUELLA CADWELL; ET AL,

    Plaintiffs - Appellants

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee

------------------------------------------------------------

DEAN SANTACROSE,

    Plaintiff - Appellant

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee

------------------------------------------------------------

MARGARET STEINHOFF,

    Plaintiff - Appellant

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee

------------------------------------------------------------

KEVIN PITCHER,

    Plaintiff - Appellant

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee

------

CAROLINE S. CROFT,

    Plaintiff - Appellant

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee

------

HELEN BILIK; ET AL,

    Plaintiffs - Appellants

v.

MERCK AND COMAPNY, INC.,

    Defendant - Appellee

------

CAROL ADELBERG; ET AL,

    Plaintiffs - Appellants

v.

MERCK AND COMPANY, INC.,

    Defendant - Appellee

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before GARWOOD, STEWART, and CLEMENT, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that appellants pay to appellee the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE:   27 AUG 2010

A True Copy
Attest   27 AUG 2010

Clerk, U.S. Court of Appeals, Fifth Circuit
By: _____
       Deputy

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 16, 2010

No. 09-30446

Lyle W. Cayce
Clerk

IN RE: VIOXX PRODUCTS LIABILITY LITIGATION

---

GLENN L. DIER, ET AL.,

        Plaintiffs - Appellants

v.

MERCK AND COMPANY, INC., A Foreign Corporation

        Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:05-MD-1657

Before GARWOOD, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

  In this mass tort multidistrict litigation (MDL) proceeding, thousands of plaintiffs alleged personal injuries resulting from the use of Vioxx, a drug manufactured by defendant Merck and Company, Inc. (Merck). Many of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

litigants have arrived at an opt-in Master Settlement Agreement (MSA) to resolve claims for those plaintiffs who meet certain criteria. Glenn L. Dier and his fellow plaintiffs-appellants (the Dier plaintiffs) have not opted into the MSA. The district court issued a series of pre-trial orders, including pre-trial order 28 (PTO 28), which required that non-settling plaintiffs each produce a report from a doctor linking the alleged injury to use of Vioxx. The district court issued a show cause order for the Dier plaintiffs' failure to comply with PTO 28 and later dismissed the Dier plaintiffs' cases on that basis. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 2004, Merck withdrew Vioxx from the market when data revealed an increased risk of cardiovascular thrombotic events associated with the drug. *See In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565, 571 (E.D. La. 2005). Litigation soon followed and thousands of claims were filed around the country. *Id.*

### 1. Multidistrict Litigation

In February 2005, the Judicial Panel on Multidistrict Litigation ordered that the Vioxx litigation be "centralized, designated as an MDL, and assigned to" Judge Eldon Fallon. *Id.* Judge Fallon then directed the parties to address whether a class of personal injury plaintiffs could be certified under Rule 23. In November 2006, he denied certification of a nationwide class because the plaintiffs' claims raised choice-of-law hurdles and numerous individualized questions of fact. *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 458–59, 461 (E.D. La. 2006).

### 2. The Master Settlement Agreement

Settlement negotiations resulted in the MSA, which the parties presented to the district court on November 9, 2007. The MSA established threshold criteria for plaintiffs' eligibility to opt in. Section 1.2.8 of the MSA imposed the requirement that any plaintiffs' counsel enrolling clients in the MSA must affirm

2

that she had recommended to 100% of her clients that they accept the terms of the MSA and must attempt to withdraw from representing clients who refused to accept the MSA terms. The MSA also designated Judge Fallon as its chief administrator.

### 3. The Pre-trial Orders

On November 9, 2007 the district court entered several pre-trial orders with respect to the claims of those plaintiffs who could not or chose not to participate in the MSA. PTO 28[1] required non-settling plaintiffs to notify their healthcare providers that they must preserve evidence pertaining to the plaintiffs' use of Vioxx. Plaintiffs were also required to produce pharmacy records and medical authorizations, answers to interrogatories, and a Rule 26(a)(2) report from a medical expert attesting that the plaintiff sustained an injury caused by Vioxx and that the injury occurred within a specified time period. Failure to comply could result in dismissal of the plaintiffs' claims with prejudice.[2]

Pre-trial order 30 (PTO 30) imposed a stay of discovery so that plaintiffs could consider the MSA, with exceptions for discovery activities required by PTO 28 and previously scheduled *de bene esse* depositions. Pre-trial order 31 (PTO 31) enforced the terms of Section 1.2.8 of the MSA by requiring all counsel of record for plaintiffs to register all claims in which they had an interest and sign a "Registration Affidavit," in which they had to attest to whether they agreed to the terms of the MSA and would recommend that their clients enroll in the MSA.

---

[1] PTO 28 is characterized as a *Lone Pine* order, named for *Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 WL 637507 (N.J. Super. Ct. Law Div. Nov. 18, 1986). "*Lone Pine* orders are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[2] Pre-trial Order 29 (PTO 29) is virtually identical to PTO 28, differing primarily because it applies to plaintiffs whose claims were transferred to the MDL after November 9, 2007 and therefore sets different deadlines.

4. <u>Dier Plaintiffs' Dismissal</u>

The Dier plaintiffs brought their Vioxx suits against Merck in state and federal courts in New York. Each case was then transferred to the MDL. The Dier plaintiffs have not opted into the MSA.

Shortly after the MSA was announced and the pre-trial orders were entered, a group of plaintiffs (the Oldfather plaintiffs) filed a motion in the district court requesting modification or suspension of PTO 28 on the basis that its requirements were premature and unfairly burdensome. The district court rejected the Oldfather plaintiffs' arguments, but nonetheless extended the deadlines for PTO 28 "to ensure that all Plaintiffs have a fair opportunity to comply with this provision of PTO 28." *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 745 (E.D. La. 2008).

One month after the Oldfather ruling, in June 2008, another group of plaintiffs (the Agard plaintiffs)[3] filed a motion making substantially the same arguments as the Oldfather plaintiffs in opposition to PTO 28. They requested another extension and sought to eliminate the expert report requirement of PTO 28. The Agard plaintiffs also argued that Judge Fallon's roles as MSA chief administrator and as coordinating judge of the MDL proceeding created an incurable conflict of interest, requiring Judge Fallon to resign as MSA administrator. They further asserted that the MSA should be vacated or declared void because it had not been subject to the requirements of Rule 23. In December 2008, the district court denied the Agard motion in its entirety.

In October 2008, the district court entered an order (the Conference Order) instructing eligible but non-settling plaintiffs to appear at one of three conferences to be held in different locations nationally. The stated purpose of the order was "to ensure that plaintiffs who are eligible for the Vioxx settlement

---

[3] The Agard plaintiffs were also represented by the Law Office of Ronald R. Benjamin, counsel for the Dier plaintiffs. The Agard plaintiffs included some of the Dier plaintiffs.

4

program but who have not enrolled in the program . . . have all necessary information available to them so that they can make informed choices." The order directed counsel and plaintiffs themselves to appear in person at one of the conferences, although it expressly allowed plaintiffs to avoid this requirement for reasons of "physical or economic hardship." Many of the Dier plaintiffs claimed hardship and were excused from attendance. The Dier plaintiffs also moved the district court to vacate the order, contending that the only conceivable purpose of the conferences was for the court to engage in "advocacy for the settlement in an environment that is necessarily going to be viewed as coercive by the individual plaintiffs." The district court denied the motion.

In November 2008, Merck moved for an Order to Show Cause as to sixty-one plaintiffs (including the Dier plaintiffs) for "failure to provide a case-specific expert report as required by . . . PTO 28." In December 2008, the district court issued an Order to Show Cause. The Dier plaintiffs filed responses, arguing that they were in substantial compliance with PTO 28 and that New York law only required general causation proof. In April 2009, the district court dismissed the Dier plaintiffs' complaints with prejudice for failure to comply with PTO 28.

## II. DISCUSSION

### A. Standing to Challenge the MSA

The Dier plaintiffs first challenge the validity of the MSA. Standing, however, is a prerequisite to this court's exercise of jurisdiction. *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 n.1 (5th Cir. 2007) (en banc). This court has recognized that, in the context of class settlements, non-settling parties generally have no standing to challenge the settlement. *Transam. Refining Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992); *see also Agretti v. ANR Freight Sys.*, 982 F.2d 242, 246 (7th Cir. 1992) ("'[N]on-settling defendants in a multiple defendant litigation context have no standing to object

to the fairness or adequacy of the settlement by other defendants.'") (quoting 2 HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11.54 (2d ed. 1985)). The rationale behind this general rule is that settlement will not affect any substantive legal rights of non-settling parties. *Transam. Refining Corp.*, 952 F.2d at 900.

An exception to the general rule may apply if the settlement agreement strips non-settling parties of rights to contribution or indemnity, *see id.*, or in some other manner results in "plain legal prejudice" to a non-settling party. *Agretti*, 982 F.2d at 246–47; *see also Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1160 n.10 (5th Cir. 1985) (stating that the court may consider "an attempt by a non-party to the settlement to void portions of the agreement that purport to affect the rights of non-settlors"). But "[m]ere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Agretti*, 982 F.2d at 247.

Because the MSA was structured as an "opt-in" private settlement rather than an "opt-out" agreement, the Dier plaintiffs cannot show that they have suffered the type of legal prejudice that would afford them standing to challenge the MSA. The Dier plaintiffs therefore lack standing to challenge the MSA.

## B. Judge Fallon's Decision to Not Recuse

The Dier plaintiffs contend that Judge Fallon cannot serve as both presiding judge in the Vioxx MDL and chief administrator of the MSA without presenting the appearance of partiality. They assert that Judge Fallon's dual roles "clearly permit[ ] an inference" that he encouraged participation in the MSA. Therefore, they argue, Judge Fallon must either recuse himself from the case or resign as chief administrator of the MSA.

Addressing the Dier plaintiffs' contentions in its order of December 10, 2008, the district court declined to recuse on the basis that:

The facts of the instant case do not warrant recusal. As Chief Administrator of the [MSA], the Court serves in an administrative capacity that has no substantive effect on its management of the MDL proceedings. *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2008 WL 4091672, at *2 (E.D. La. Aug. 27, 2008) (explaining that the Court "has consistently exercised its inherent authority over the MDL proceedings in coordination with its express authority under the terms of the Settlement Agreement to ensure that the settlement proceedings move forward in a uniform and efficient manner"). The Court played no role in drafting the private settlement agreement reached by the parties; the Court has taken no position as to what types of claims should or should not have been included in the settlement; and, finally, the Court has consistently stated that it neither encourages nor discourages participation in the settlement.

"A motion to disqualify is committed to the sound discretion of the judge and her decision will only be reversed if there has been an abuse of that discretion." *In re Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993). The federal recusal statute provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988) (citing S. REP. NO. 93-419, at 5 (1974) and H.R. REP. NO. 93-1453, at 5 (1974)). "Thus, it is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question [the judge's] impartiality." *Id.* In applying § 455, the court employs an objective test, finding recusal warranted "if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 378 (5th Cir. 2002) (quotation omitted).

1. Encouraging Participation in Settlement

The Dier plaintiffs submit that the district court's statement that it "has consistently stated that it neither encourages nor discourages participation in

7

No. 09-30446

the settlement" takes "too myopic a view" of the court's role as both chief administrator of the MSA and as presiding judge in the MDL litigation. They point to the Conference Order, which required all non-settling plaintiffs to appear at conferences "to ensure that plaintiffs who are eligible for the Vioxx settlement program but who have not enrolled in the program have all necessary information available to them so they can make informed choices," and argue that this order permits the inference that the district court encouraged settlement. The Conference Order, however, did not inappropriately encourage settlement. It "is not unusual to require the parties as well as counsel to appear at settlement conferences." *Bilello v. Abbott Labs.*, 825 F. Supp. 475, 479 (E.D.N.Y. 1993). For example, Federal Rule of Appellate Procedure 33 authorizes courts of appeals to "direct the attorneys—and, when appropriate, the parties—to participate in one or more conferences to address any matter that may aid in disposing of the proceedings, including . . . discussing settlement. A judge or other person designated by the court may preside over the conference." FED. R. APP. P. 33. Nothing about the settlement conferences would give a reasonable observer any doubt about Judge Fallon's impartiality.

    2. <u>Appearance of Partiality</u>

    In support of their argument that the district court's impartiality could reasonably be questioned, the Dier plaintiffs assert that at least one plaintiff lacked confidence in the district court's impartiality as a result of its dual responsibilities. But because the test for impartiality is an objective one, *see IQ Prods. Co.*, 305 F.3d at 378, an individual plaintiff's subjective beliefs are irrelevant to the analysis.

    For the reasons articulated by Judge Fallon, his decision not to recuse falls well within the bounds of his discretionary authority.

**C. Pre-Trial Order 28 Requiring Production of a Doctor's Report**

No. 09-30446

The Dier plaintiffs' final argument is that it was an abuse of discretion for the district court to issue the case-specific expert disclosure requirement in PTO 28. They contend that Merck was aware of the nature of their alleged injuries and the injuries' purported link to Vioxx. They further assert that even if issuance of PTO 28 was generally within the district court's discretion, in instances where state law requires no expert opinion as part of the evidence to support the claim, imposing such a requirement is an abuse of discretion and contravenes the *Erie* doctrine. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938).

### 1. The Court and Merck were Already Apprised of Plaintiffs' Injuries

A district court's adoption of a *Lone Pine* order and decision to dismiss a case for failing to comply with a *Lone Pine* order are reviewed for abuse of discretion. *Acuna*, 200 F.3d at 340–41.

Relying on *Acuna*, the district court stated that "it is not too much to ask a plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury." *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d at 744. In *Acuna*, over 1,000 plaintiffs brought personal injury claims allegedly arising from uranium mining activities. The district court issued pre-discovery *Lone Pine* orders that required plaintiffs to provide expert affidavits specifying the injuries suffered by each plaintiff, the substances causing the injury, the dates and circumstances of exposure to the injurious materials, and the scientific and medical bases for the expert's opinions. *Acuna*, 200 F.3d at 338. The district court ultimately dismissed plaintiffs' claims for failure to comply with the *Lone Pine* orders. *Id.* at 340. On appeal, plaintiffs challenged the *Lone Pine* orders as imposing too high a burden at too early a stage in the litigation. *Id.* This court stated that "[i]n the federal courts, such orders are issued under the wide discretion afforded district judges over the management of discovery under FED. R. CIV. P. 16." *Id.* The court then held that the *Lone Pine* orders

9

essentially required that information which plaintiffs should have had before filing their claims pursuant to FED. R. CIV. P. 11(b)(3). Each plaintiff should have had at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries.

*Id.* (citing *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 165 (5th Cir. 1999)). Thus, the *Acuna* court concluded that the district court did not commit an abuse of discretion by dismissing plaintiffs' claims for failure to comply with the *Lone Pine* order. *Id.* at 341.

The Dier plaintiffs contend that this case is distinguishable from *Acuna* because here the plaintiffs have alleged precise injuries and both the court and Merck are on notice of the nature of the injuries and the injuries' relationship to Merck's conduct. These grounds are insufficient, however, to warrant bypassing the clear holding in *Acuna* that it is within a court's "discretion to take steps to manage the complex and potentially very burdensome discovery that the cases would require." *Id.* at 340.

### 2. Requirement of Proof of Physical Injury for Emotional Distress Claims

The Dier plaintiffs also argue that PTO 28 was improper because expert testimony is not required for claims of negligent infliction of emotional distress under New York law.[4] But the Dier plaintiffs all pleaded physical injuries, and none attempted to withdraw those physical injury claims. Thus, PTO 28 would apply regardless of whether the Dier plaintiffs might have had a viable negligent infliction of emotional distress claim along with their physical injury claims.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4] "[T]he substantive law of each plaintiff's home jurisdiction must be applied to his or her respective claims." *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 458 (E.D. La. 2006).