IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

```
--------------------------------------------x
AvMed, Inc., et al.                  :      CIVIL ACTION
                    Plaintiffs,      :
                                     :      No. 08-1633
          vs.                        :
                                     :      SECTION L, MAG. 3
BrownGreer PLC, U.S.                 :
Bancorp, Inc. and John Does          :      HONORABLE ELDON E.FALLON
                                     :      HONORABLE DANIEL E. KNOWLES, III
                    Defendants.      :
                                     :      In relation to:  MDL No. 1657
                                     :
                                     :      In re: Vioxx Products Liability Litigation
                                     :
--------------------------------------------x
```

## THE HEALTH PLANS' MEMORANDUM REGARDING JURISDICTION

At the August 26, 2010 hearing on the Health Plans' Motion to Amend their Complaint,

this Court invited supplemental briefing to address its concerns over whether it has jurisdiction

over the Health Plans' Proposed Amended Complaint.  As shown herein, this Court has personal

jurisdiction over the Named Law Firms and subject matter jurisdiction over the Health Plans'

claims.  Judicial economy and common sense require that one Court preside over the Health

Plans' claims, not numerous federal courts around the country.  That one Court can only be this

Court, which has unparalleled experience with the private liens claims at issue here, the attorneys

involved, and the process that has brought us up to this point.

Personal jurisdiction over the Named Law Firms cannot reasonably be contested.  The

Fifth Circuit has held that personal jurisdiction for Employee Retirement Income Security Act

("ERISA") claims requires only minimum contacts with the United States, due to ERISA's

nationwide service of process provisions.  *See Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97

F.3d 822, 825-26 (5th Cir. 1996).  The Court has pendent personal jurisdiction over the Named

Law Firms for the Medicare Secondary Payer ("MSP") Act and Federal Employees Health

Benefits Act ("FEHBA") claims because they arise out of distributions from the same Vioxx

Settlement that the Court administers.  The Named Law Firms have all appeared before the Court

in connection with the Vioxx settlement, have received millions of dollars in fees from the

settlement, and have specifically availed themselves of the Court's jurisdiction.

Subject matter jurisdiction is straightforward.  The Health Plans' First Amended

Complaint asserted an ERISA reimbursement claim and the proposed amendment asserts the

same ERISA reimbursement claim against the Named Law Firms.[1]  The Fifth Circuit has held

that this Court has subject matter jurisdiction over a health plan's ERISA claim for imposition of

a constructive trust over identifiable settlement funds including the portion of such funds

constituting  a plan beneficiaries' counsel's contingency fee, and neither the claim nor the

Court's jurisdiction can be defeated by such counsel's distribution of settlement proceeds to

Eligible Claimants ("ECs").  *See Bombardier Aerospace Employee Benefits Plan v. Ferrer,*

*Poirot and Wansbrough*, 354 F. 3d 348, 357 (5th Cir. 2003).  The Court also has federal question

jurisdiction over the Health Plans' proposed MSP Act claims and supplemental jurisdiction over

their FEHBA claims.

The Court should permit the Health Plans' amendment to allow the plans to proceed with

their prosecution of these important reimbursement obligations, the nonpayment of which

adversely affect all plan beneficiaries.  As another federal court recently observed in a similar

context,

---

[1] The Health Plans' First Amended Complaint was never withdrawn or dismissed.  Additionally, the Health Plans never withdrew their First Amended Complaint as a condition or result of their participation in the Private Lien Resolution Program.

[r]eimbursement inures to the benefit of all participants and beneficiaries by reducing the total cost of the Plan. If O'Hara were relieved of his obligation to reimburse Zurich for the medical benefits it paid on his behalf, the cost of those benefits would be defrayed by other plan members and beneficiaries in the form of higher premium payments. . . . Because maintaining the financial viability of self-funded ERISA plans is often unfeasible in the absence of reimbursement and subrogation provisions like the ones at issue in this case, denying Zurich the right to reimbursement would harm other plan members and beneficiaries by reducing the funds available to pay those claims.

*Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1237-38 (11th Cir. 2010) (citations omitted).

## PROCEDURAL HISTORY

The Health Plans filed their initial Complaint on April 14, 2008 and amended it as of right on April 18, 2008. (*See* "Complaint," Docket No. 14188.) The Complaint named BrownGreer, U.S. Bancorp, and certain "John Does" as defendants. (*Id.* ¶ 54.) Specifically, the Complaint alleged that "John Does 1, 2, 3, etc. are . . . entities . . . which (b) have received medical benefits from Plaintiffs' Health Benefit Plans, including ERISA plans, for medical treatment attributable to their use of Vioxx and who will claim money from the [settlement] funds; or (c) are **agents or attorneys** of individuals identified in subsection (b) herein." *Id.* (Emphasis added).

On June 9, 2008, the Health Plans filed a Motion for a Preliminary Injunction. (Docket No. 15280.) Its denial (Docket No. 15482) was later affirmed on appeal (Docket No. 17273.) This Court determined, and the Fifth Circuit agreed, that the Health Plans' claims were not ripe, effectively putting a hold on the Health Plans' claims until settlement funds were disbursed. Once the settlement funds were in the hands of the Named Law Firms, the Health Plans' claims ripened, and the Health Plans brought the present Motion to Amend. At no point was the Health Plans' Complaint withdrawn or dismissed.

Nor did the Private Lien Resolution Program ("PLRP") serve to withdraw, nullify or obviate the Health Plans' ERISA reimbursement claims against any non-participants. The Health Plans worked with counsel for ECs in good faith to establish the PLRP. By doing so, the Health Plans sought to resolve the majority of ECs' reimbursement obligations (under terms that were extremely favorable to participating ECs) without having to pursue their pending litigation against individual ECs or their counsel. While the PLRP resolved the reimbursement obligations of participating ECs, the Named Law Firms represent or represented ECs who rejected the PLRP, leaving their reimbursement obligations unsatisfied. The PLRP, in other words, absolved only its participants of their reimbursement obligations.

On June 17, 2010, the Health Plans filed the present Motion, which identifies the John Doe law firms by name and adds claims against those law firms under the MSP Act and FEHBA. (*See* Proposed 2d Am. Compl. ¶¶ 6-7, 26-37.) This Proposed Amended Complaint, which was attached as an exhibit to the Health Plans' Motion to Amend, states that "[t]his Court has jurisdiction over Plan Plaintiffs' claims related to ERISA and Medicare Advantage pursuant to 28 U.S.C. § 1331" (*id.* ¶ 38), and that "[p]ursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plan Plaintiffs' claims related to FEHBA, because those claims are so related to Plan Plaintiffs' other claims that they form part of the same case or controversy under Article III of the United States Constitution" (*id.* ¶ 39).

In their response to the Health Plans' Motion to Amend, the Named Law Firms claim that they had already disbursed certain portions of the settlement funds to the ECs that they represent.[2] In light of this representation, the Health Plans withdrew their motion to

---

[2] *See* Named Law Firms' Resp. ("Resp.") at 12 ("As a practical matter, the Named Law Firms note that virtually all of the alleged claimants are no longer clients of the respective Law Firms. As the Named Law Firms immediately distributed their respective clients' monies following the October 6, 2009 myocardial infarction (MI) final payment

preliminarily enjoin disbursement of funds as moot (*see* Health Plans' Repl. n.1), leaving their

claims against the attorneys under FEHBA, ERISA, and the MSP Act otherwise intact.

**ARGUMENT**

**I.      The Court Has Personal Jurisdiction Over the Named Law Firms.[3]**

The Court has personal jurisdiction for all claims because the Named Law Firms

purposefully availed themselves of the benefits of this jurisdiction. *See Clemens v. McNamee*,

No. 09-20625, ___ F.3d ___, 2010 WL 3175979, at *2 (Aug. 12, 2010) (discussing "purposeful

availment" requirement of minimum contacts test as "ensuring that a defendant will not be haled

into a jurisdiction solely as a result of random, fortuitous or attenuated contacts"). The Named

Law Firms represented ECs in this Court for years, participated on their behalf in the Vioxx

settlement program overseen by this Court, and received settlement funds that were *in custodia

legis* until the Court authorized the Garretson Firm, as the Court-appointed settlement

administrator, to pay the funds to the Named Law Firms. Further, the exercise of jurisdiction

over these Named Law Firms does not offend traditional notions of fair play and substantial

justice. *Id.* It is consistent with fair play and substantial justice for the Named Law Firms, each

of which (1) received millions of dollars for their representation of Vioxx claimants in this Court

and (2) received that money from funds overseen by the Court's settlement program, to answer

claims that some of that money was subject to private liens in this Court. Under these facts, the

Court has personal jurisdiction over *all* of the Health Plans' claims, which are all based on the

allegation that these funds were subject to valid liens at the time they were disbursed to the

---

distribution and the June 14, 2010 ischemic stroke (IS) final payment distribution, the cases are now closed."). The Named Law Firms still have that portion of the settlement funds that they claim entitlement to due to their contingency fee agreements with their clients.

[3] The Named Law Firms have not contested personal jurisdiction, but may do so in a pre-answer motion to dismiss if the Health Plans' motion is granted. *See* Fed. R. Civ. P. 12(b)(2) & (h)(B) (stating that the defense of lack of

Named Law Firms.

As to the Health Plans' ERISA claims, Fifth Circuit precedent confirms the Court's personal jurisdiction over the Named Law Firms for the Health Plans' ERISA claims. Under § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), Congress granted ERISA plaintiffs nationwide service of process for ERISA defendants. The Fifth Circuit has squarely held that this provision confers personal jurisdiction over ERISA defendants based on their contacts with the United States as a whole, not contacts within a specific jurisdiction. *See Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 825-26 (5th Cir. 1996) ("[W]e . . . hold that the district court properly exercised personal jurisdiction over Blue Cross [under § 1132(e)(2)] based on its contacts with the United States.").

As to the MSP Act and FEHBA claims,[4] the Court has pendent personal jurisdiction over the Named Law Firms because these claims arise from the same nucleus of operative facts. *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008) (citations omitted). While no Fifth Circuit case has expressly adopted this principle, every circuit that has considered the issue has. *See Vanderbilt Mortg. & Fin., Inc. v. Flores*, No. C-09-312, 2010 WL 1875799, at *5 (S.D. Tex. May 6, 2010). District courts in this Circuit routinely invoke this tenet, especially when the basis for personal jurisdiction in one claim is a statutory provision allowing for nationwide service of process. *See Rolls-Royce Corp.*, 576 F. Supp. 2d at 783 (adopting pendent personal jurisdiction when primary claim allowed for nationwide service of process).[5] Notably, a district court in this Circuit determined that it had pendent personal jurisdiction over a plaintiff's

---

personal jurisdiction waived if not raised in answer or pre-answer motion).

[4] These claims will be added to the Health Plans' Complaint if the Court grants the pending Motion to Amend.

[5] *See also, David v. Signal Int'l, LLC*, 588 F. Supp. 2d 718, 724 (E.D. La. 2008) (same); *Conwill v. Greenberg Traurig*, L.L.P., 2009 WL 5178310, at *9 (E.D. La. Dec. 21, 2009) (same); *Enron Corp. Secs v. Citigroup, Inc.*, 2009 WL 311311, at *1 (S.D. Tex. Feb. 9, 2009) (same); *Oblio Telecom, Inc. v. Patel*, 2008 WL 4936488, at *5

state law claims when the sole basis for personal jurisdiction was a claim brought under ERISA. *See Team Healthcare/Diagnostic Corp. v. Aetna Life Ins. Co.*, No. 3:07-cv-0214-O, 2008 WL 483366, at *6-7 (N.D. Tex. Feb. 22, 2008).

In the unlikely event the Court finds there exist any unresolved factual issues standing in the way of its assertion of *in personam* jurisdiction, the Health Plans must be given an opportunity to take jurisdictional discovery before the Court rules. *See Kelly v. Syria Schell Petroleum Dev., Inc.*, 213 F.3d 841, 855 (5th Cir. 2000).

## II.     This Court Has Subject Matter Jurisdiction over the Health Plans' Claims.

28 U.S.C § 1331 provides that federal courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Under 28 U.S.C. § 1331, a court will have subject matter jurisdiction over any civil action arising under the "laws" of the United States when "there appears on the face of the complaint some substantial, disputed question of federal law." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995) (citing *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 12 (1983)). The Health Plans' claims under ERISA and the MSP Act easily satisfy this standard.

### A.     This Court Had Federal Question Jurisdiction Over the Health Plans' ERISA Claims When They Were Originally Filed, And Subsequent Events Have Not Changed That Fact.

A district court's subject matter jurisdiction is "determined at the time that the complaint is filed." *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir. 1994); *see also Home Capital Collateral v. FDIC*, 96 F.3d 760, 762 (5th Cir. 1996). Federal question subject matter jurisdiction exists even if a Plaintiff subsequently is unable to prove "the cause of action on which jurisdiction was originally based." *Mobil Oil Corp. v. Kelly*, 493 F.2d 784, 786 (5th Cir.),

---

(N.D. Tex. Nov. 18, 2008) (same); *Allen v. Byrne*, 2008 WL 763066, at *4 (N.D. Tex. Mar. 24, 2008) (same).

*cert. denied*, 419 U.S. 1022, 1022 (1974) (citations omitted); *see also Freeport McMoran, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (observing that the Supreme Court has "consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events") (citations omitted).

The Health Plans filed their original and First Amended Complaints in April 2008, after the Master Settlement Agreement ("MSA") was announced but well before (1) the administration of the MSA; (2) the creation and administration of the PLRP; (3) the disbursement of funds to attorneys, including the Named Law Firms, of settlement funds owed to ECs; and (4) the disbursement of funds by the Named Law Firms to the ECs they represent. No one challenged the Court's subject matter jurisdiction. The Court had subject matter jurisdiction over the Health Plans' ERISA claim. *See Bombardier*, 354 F.3d at 362 (acknowledging the district court's subject matter jurisdiction over a health plan's ERISA claim).

Subsequent events have not changed this result. The Health Plans' original Complaint was never dismissed. The Health Plans never withdrew their Complaint as a condition or as a result of their participation in the PLRP. And only those who participated in the PLRP resolved their reimbursement obligations which have been the subject of this action from day one. The proposed amendment concerns only the minority of ECs and their law firms who chose not to resolve their claims via the PLRP. They now argue for a free pass, which, if granted, would unravel the entire justification for the PLRP. Why participate and pay half your reimbursement obligation, if the result of not participating is to pay nothing?

The resolution and subsequent dismissal of the ECs' underlying tort claims had no effect on the Court's jurisdiction over the Health Plans' reimbursement claims. The ECs' tort claims against Merck are legally and factually distinct from any claims asserted in any version of the

Health Plans' Complaint, and resolution of the former does not affect the Court's jurisdiction over the latter.  To the contrary, resolving the EC's claims was necessary to ripen the Health Plans' claims.  *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2008 WL 3285912 (E.D. La. Aug. 7, 2008).

Nor does any Named Law Firm's distribution of a portion of settlement proceeds to ECs impair the Court's jurisdiction.  *See Bombardier,* 354 F.3d at 357 ("The pre-existing obligation to the Plan precluded [the client] from contracting away to the law firm that which he did not own himself, namely, the right to all or any portion of the [lawyer's contingency fee share] that rightfully belonged to the Plan.")

> **B.      Under *Bombardier*, the Court Has Subject Matter Jurisdiction Over Claims Related To That Portion of Identifiable Settlement Funds Retained By The Law Firms In Satisfaction of Their Contingency Fee Contracts With the ECs.**

In *Bombardier*, the Fifth Circuit dealt squarely with subject matter jurisdiction over ERISA claims identical to those asserted by the Health Plans in this case.  In that case, the court held that federal courts have subject matter jurisdiction under ERISA when a law firm retains a portion of specifically identifiable settlement funds in satisfaction of a contingency fee contract with its client.  Specifically, in discussing a contingency fee contract, the Court determined that "[t]he fact that [a client] may have to satisfy some part or even all of this personal obligation out of his own pocket in no way diminishes his pre-existing reimbursement obligation to the Plan vis-à-vis the funds recovered from his tortfeasor." *Id.* at 357.  The Court stated that it "is satisfied that neither [the client's] contingency fee agreement with the law firm . . . affects his legal 'possession and control'" over the disputed contingency fee share of the settlement proceeds. *Id.*  Further, as the United States Supreme Court emphasized in *Sereboff v. Atlantic*

*Med. Servs, Inc.*, 547 U.S. 356, 364-65 (2006), these funds are not subject to strict tracing requirements. Accordingly, under *Bombardier*, this Court has subject matter jurisdiction over the Health Plans' ERISA claims to that portion of the specifically identifiable settlement funds retained by the Named Law Firms in satisfaction of their clients' attorneys' fees.[6]

**C.     This Court Has Subject Matter Jurisdiction Over the Health Plans' Claims Under The MSP Act.**

Because regulations promulgated by the Secretary of Health and Human Services under the MSP Act provide a private cause of action against the Named Law Firms, the Health Plans' MSP claims arise under federal law. As described in the Health Plans' Proposed Amended Complaint, certain Health Plans (*see* Compl. ¶ 24) are "MA Organizations" that manage "MA Plans" as defined by 42 C.F.R. § 422.2 (*id.* ¶ 118). Under the plain terms of 42 C.F.R. § 422.108(f), these plans have a private right—and indeed, an obligation—to enforce the Medicare Secondary Payer Rules. *See* 42 C.F.R. § 422.108(f) ("The MA organization *will* exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter."). This private right of action includes rights of reimbursement from attorneys who receive secondary payments. *See* 42 C.F.R. § 411(g). The pertinent regulations set forth no statute of limitations for such a claim, and even if they did, under federal rule this additional claim would relate back to the date of the original pleading. *See* Fed. R. Civ. P. 15(c)(1)(B) (allowing relation back of additional claims that arise "out of the conduct, transaction or occurrence set out . . . in the original pleading.")

---

[6] The Sixth Circuit—the only other circuit court to address the question—agrees. *See Longaberger*, 586 F.3d at 469 (recognizing ERISA reimbursement claim against counsel for an allegedly injured individual).

**III.    This Court Has Supplemental Jurisdiction Over the Health Plans' FEHBA Claims.**

28 U.S.C. § 1367 provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

The Health Plans' Proposed Amended Complaint specifically alleges that this Court has supplemental jurisdiction over the Health Plans' FEHBA claims under 28 U.S.C. § 1367 (2d Am. Compl. ¶ 39), and also alleges facts to support this conclusion.  Specifically, the Proposed Amended Complaint alleges that FEHBA Health Plans, like the ERISA and Medicare Advantage Plans, (1) insure or insured certain identified ECs who did not participate in the PLRP and were or are represented by the Named Law Firms; (2) paid for the medical treatment of these ECs' Vioxx-related injuries and, pursuant to plan language creating rights of reimbursement, hold valid liens in equity against any settlement funds received by these ECs; (3) gave notice to the Named Law Firms of their rights to reimbursement and are entitled to reimbursement of specifically identified funds held in trust by the Named Law Firms; and (4) are entitled to creation of a constructive trust and equitable relief to recover these funds.  Accordingly, the Court has supplemental jurisdiction over these claims.

## CONCLUSION

For the stated reasons, this Court has subject matter jurisdiction over the claims in the Health Plans proposed amended complaint and personal jurisdiction over the Named Law Firms.

Dated:  September 2, 2010

Respectfully submitted,
LOWEY DANNENBERG COHEN & HART, P.C.

By: _Peter D. St. Phillip /Ki_

Richard W. Cohen
Peter D. St. Phillip
Gerald Lawrence
Karen Iannace
One North Broadway, Suite 509
White Plains, New York  10601
Telephone:    (914) 997-0500
Facsimile:    (914) 997-0035

RAWLINGS & ASSOCIATES, PLLC

Mark D. Fischer
Jeffrey C. Swann
Robert Griffith
One Eden Parkway
LaGrange, Kentucky  40031
Telephone:    (502) 587-1279
Facsimile:    (502) 584-8580

*Attorneys for the Health Plans*