**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| _____ ) | | |
| In re:  VIOXX | ) | MDL NO. 1657 |
| | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION: L |
| | ) | |
| | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| | ) | |
| ALL PURCHASE CLAIMS CLASS | ) | JURY TRIAL DEMANDED |
| ACTION COMPLAINTS PENDING OR | ) | |
| SUBJECT TO TRANSFER TO | ) | PURCHASE CLAIMS MASTER |
| MDL 1657 | ) | CLASS |
| | ) | |
| _____) | | |

**REPLY MEMORANDUM IN SUPPORT OF MERCK'S MOTION FOR JUDGMENT
ON THE PLEADINGS OR TO STRIKE CLASS ALLEGATIONS IN PURCHASE
CLAIMS MASTER COMPLAINT**

1031600v.1

# TABLE OF CONTENTS

Page

ARGUMENT .............................................................................................................1

I.  MERCK IS ENTITLED TO JUDGMENT ON THE PLEADINGS......................1

    A.  Plaintiffs Have Failed To Adequately Plead Causation..............................1

        1.  Plaintiffs Must Satisfy Rule 8, As Interpreted By The U.S. Supreme Court, And Rule 9(b). .........................................................1

        2.  Plaintiffs' Efforts To Write Causation Out Of The Relevant Consumer Fraud Statutes Should Be Rejected. ............................5

    B.  Plaintiffs Do Not Dispute That They Have Not Alleged A Cognizable Injury Under Any State's Law.................................................8

    C.  Plaintiffs' Claims Fail For A Variety Of Other Reasons.............................9

        1.  Plaintiff Seitz's Claims All Fail Under Michigan Law. .................9

        2.  The ICFA Claims Of Plaintiffs Benoit, Lowery, Williams And Murphy Are Barred Because Vioxx Was Approved By The FDA. .......................................................................................10

        3.  Plaintiff Anderson's KCPA Claim Fails For Lack Of Privity.............................................................................................10

        4.  Plaintiffs' Claims For Breach Of The Implied Warranty Of Merchantability Fail For Lack Of Notice And/Or Privity. ...........11

        5.  Plaintiffs' Unjust Enrichment Claims Are Barred As A Matter Of Law............................................................................13

II. THE COURT SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS..................................................................................................17

    A.  No Amount Of Additional Discovery Would Make Plaintiffs' Proposed Classes Certifiable...................................................................17

    B.  The Fact That A Few Outlier Courts Have Certified Consumer Fraud, Implied Warranty And Unjust Enrichment Claims Is Irrelevant. .................................................................................................19

CONCLUSION.......................................................................................................22

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Actimmune Marketing Litigation*,
  No. C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ...................................3

*Alfred v. Mentor Corp.*,
  No. 05-483-C, 2007 U.S. Dist. LEXIS 15535 (W.D. Ky. Mar. 5, 2007) ...........................11

*Aschroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ...........................................................................................................2

*Azko Nobel Coatings, Inc. v. Automobile Paint & Supply of Lakeland, Inc.*,
  No. 8:09-CV-2453-T-30TBM, 2010 U.S. Dist. LEXIS 84544 (M.D. Fla. July 16, 2010) ....3

*In re Baycol Products Litigation*,
  218 F.R.D. 197 (D. Minn. 2003) .........................................................................................22

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................................2

*In re Bextra & Celebrex Marketing Sales Practices & Product Liability Litigation*,
  495 F. Supp. 2d 1027 (N.D. Cal. 2007) ................................................................................9

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001) ...............................................................................................10

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*,
  288 F.3d 1012 (7th Cir. 2002) ...............................................................................................8

*Buckman Co. v. Pls.' Legal Committee*,
  531 U.S. 341 (2001)...............................................................................................................8

*In re Cardizem CD Antitrust Litigation*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000) ..............................................................................15

*Chance v. Richards Manufacturing Co.*,
  499 F. Supp. 102 (E.D. Wash. 1980)....................................................................................13

*Cohen v. Implant Innovations, Inc.*,
  259 F.R.D. 617 (S.D. Fla. 2008)..........................................................................................22

*Collins v. Pfizer, Inc.*,
  No. 1:08-cv-0888-DFH-JMS, 2009 WL 126913 (S.D. Ind. Jan. 20, 2009) ........................12

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) .............................................................................................16

*Dardar v. City of Morgan City*,
  Nos. 6:09cv1967, 6:09cv1968, 2010 WL 2025497 (W.D. La. Apr. 30, 2010) .....................2

1031600v.1

*Fidelity Mortg. Corp. v. Seattle Times Co.*,
    213 F.R.D. 573 (W.D. Wash. 2003) ............................................................................3

*In re Ford Motor Co. Speed Control Deactivation Switch Products Liability Litigation*,
    No. 2:05-md-01718, 2007 U.S. Dist. LEXIS 62483 (E.D. Mich. Aug. 24, 2007) ..............12

*Greenwald v. Chase Manhattan Mortgage Corp.*,
    241 F.3d 76 (1st Cir. 2001) ....................................................................................15

*Hall v. Bristol-Myers Squibb Co.*,
    Nos. 06-5203 (FLW), 06-6050 (FLW), 2009 U.S. Dist. LEXIS 121057 (D.N.J. Dec. 30,
    2009) .......................................................................................................................3, 7

*Huntsman Packaging Corp. v. Kerry Packaging Corp.*,
    992 F. Supp. 1439 (M.D. Fla. 1998) ......................................................................14

*Johnson Controls, Inc. v. Jay Indus.*,
    459 F.3d 717 (6th Cir. 2006) .................................................................................12

*Livick v. Gillette Co.*,
    492 F. Supp. 2d 1 (D. Mass. 2007) ........................................................................15

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ...................................................................................2

*Martell v. Turcheck*,
    No. 2:07-cv-14068, 2008 WL 2714210 (E.D. Mich. July 7, 2008) .......................15

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
    552 F.3d 47 (1st Cir. 2009) ....................................................................................15

*Massachusetts v. Mylan Laboratories*,
    357 F. Supp. 2d 314 (D. Mass. 2005) ....................................................................15

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation*,
    257 F.R.D. 315 (D. Mass. 2009) ............................................................................19

*Nova Info. Sys., Inc. v. Greenwich Ins. Co.*,
    No. 6:00CV1703ORL31 KRS, 2002 WL 32075792 (M.D. Fla. Dec. 13, 2002) ...........14

*In re Paxil Litigation*,
    212 F.R.D. 539 (C.D. Cal. 2003) ...........................................................................20

*Pella v. Saltzman*,
    606 F.3d 391 (7th Cir. 2010) .................................................................................21

*Pop's Pancakes, Inc. v. NuCO2, Inc.*,
    251 F.R.D. 677 (S.D. Fla. 2008) ..............................................................................7

*In re Prempro Products Liability Litigation*,
    230 F.R.D. 555 (E.D. Ark. 2005) ...........................................................................19

*In re Rezulin Products Liability Litigation*,
    210 F.R.D. 61 (S.D.N.Y. 2002) .........................................................................20, 22

*Rios v. State Farm Fire & Casualty Co.*,
    469 F. Supp. 2d 727 (S.D. Iowa 2007) ..................................................................17

1031600v.1

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06-cv-5774 (SRC), 2009 WL 2043604 (D.N.J. July 10, 2009) ...................................3

*Smith v. Bristol-Myers Squibb Co.*,
    No. 3:06-cv-6053 (FLW), 2009 WL 5216982 (D.N.J. Dec. 30, 2009) .................................3

*In re St. Jude Medical, Inc.*,
    522 F.3d 836 (8th Cir. 2008) ...............................................................................................19

*Stafford v. Cross Country Bank*,
    262 F. Supp. 2d 776 (W.D. Ky. 2003) ................................................................................11

*Stefan v. Singer Island Condominiums Ltd.*,
    No. 08-80039-CIV, 2009 WL 426291 (S.D. Fla. Feb. 20, 2009) ...........................................7

*Stepp v. Takeuchi Manufacturing Co.*,
    No. C07-5446RJB, 2008 U.S. Dist. LEXIS 80809 (W.D. Wash. Oct. 2, 2008) .................13

*Taviere v. Precision Motor Cars, Inc.*,
    No. 8:09-c 2010 WL 557347 (M.D. Fla. Feb. 12, 2010) .......................................................7

*Tambourine Comercio International S.A. v. Solowsky*,
    No. 06-20682-Civ., 2007 WL 689466 (S.D. Fla. Mar. 4, 2007) .........................................14

*TLH International v. Au Bon Pain Franchising Corp.*,
    No. 86-2061-MA, 1986 U.S. Dist. LEXIS 17755 (D. Mass. Nov. 13, 1986) .......................3

*Tietsworth v. Sears, Roebuck & Co.*,
    No. 5:09-CV-00288, 2010 U.S. Dist. LEXIS 44053 (N.D. Cal. Mar. 31, 2010) ...............22

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
    No. 08-939 (DRD), 2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 10, 2009).....................4-5

*Tuscan Electric Power Co. v. El Paso Electric Co.*,
    No. 08-680-TUC-CKJ, 2009 WL 2929431 (D. Ariz. Sept. 10, 2009) .................................2

*UFCW Local 1776 v. Eli Lilly & Co.*,
    No. 09-0222-cv, 2010 U.S. App. LEXIS 18959 (2d Cir. Sept. 10, 2010)......................1, 20

*In re Vioxx Products Liability Litigation*,
    239 F.R.D. 450 (E.D. La. 2006) ..........................................................................................18

*Weaver v. Chrysler Corp.*,
    172 F.R.D. 96 (S.D.N.Y. 1997) .............................................................................................8

*Wiand v. Waxenberg*,
    611 F. Supp. 2d 1299 (M.D. Fla. 2009)...............................................................................14

*Wolin v. Jaguar Land Rover North America, LLC*,
    Nos. 09-55104, 09-55105, -- .3d -- 2010 WL 3222091 (9th Cir. 2010)..............................21

*Zafarana v. Pfizer, Inc.*,
    No. 09-cv-4026, 2010 WL 2854170 (E.D. Pa. July 20, 2010) .........................................1, 4

1031600v.1

## STATE CASES

*A & M Supply Co. v. Microsoft Corp.*,
    No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008) .........................................15

*American Safety Insurance Serv., Inc. v. Griggs*,
    959 So. 2d 322 (Fla. Dist. Ct. App. 2007) .........................................................................13

*Auburn Mechanical, Inc. v. Lydig Const., Inc.*,
    951 P.2d 311 (Wash. Ct. App. 1998)..................................................................................16

*Black Diamond Properties, Inc. v . Haines*,
    940 So. 2d 1176 (Fla. Dist. Ct. App. 2006) ..........................................................................7

*Brick Construction Corp. v. CEI Development Corp.*,
    710 N.E.2d 1006 (Mass. App. Ct. 1999) ...........................................................................14

*Bushey v. Crown Plaza Corp.*,
    No. 35831-6-I, 1996 WL 442776 (Wash. Ct. App. Aug. 5, 1996) ....................................16

*Craig & Bishop, Inc. v. Piles*,
    247 S.W.3d 897 (Ky. 2008)...............................................................................................11

*Davenport v. Washington Education Association*,
    197 P.3d 686 (Wash. Ct. App. 2008)..................................................................................16

*De Bouse v. Bayer AG*,
    922 N.E.2d 309 (Ill. 2009)...................................................................................................5

*Duronio v Merck & Co, Inc.*,
    No. 267003, 2006 Mich. App. LEXIS 1841 (Mich. Ct. App. June 31, 2006)......................9

*Fourmost Construction, Inc. v. Johnson*,
    No. 16774-7-III, 1998 WL 306576 (Wash. Ct. App. June 1, 1998)....................................16

*Estate of Johnson v. Melvin Rose, Inc.*,
    No. WOCV200400622, 2007 WL 1832029 (Mass. Super. Ct. May 9, 2007).....................14

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*,
    1 So. 3d 400 (Fla. Dist. Ct. App. 2009) .............................................................................14

*McDarby v. Merck & Co., Inc.*,
    949 A.2d 223 (N.J. Super. Ct. App. Div. 2008) ..................................................................8

*Nelson v. Appleway Chevrolet, Inc.*,
    157 P.3d 847 (Wash. 2007) ...............................................................................................16

*New Dimension Development, Inc. v. Orchard,  Hiltz & McCliment, Inc.*,
    No. 262565, 2005 WL 2806234 (Mich. Ct. App. Oct. 27, 2005).......................................15

*Paulsen v. Department of Social & Health Services*,
    898 P.2d 353 (Wash. Ct. App. 1995)..................................................................................16

*Peoples National Bank of Commerce v. 1st Union National Bank of Fla.*,
    667 So. 2d 876 (Fla. Dist. Ct. App. 1996) .........................................................................14

v

*Philip Morris  USA Inc v. Hines*,
    883 So. 2d 292 (Fla. Dist. Ct. App. 2004) ............................................................................6

*Price v. Philip Morris, Inc.*,
    848 N.E.2d 1 (Ill. 2005) ....................................................................................................10

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. Dist. Ct. App. 2007) ............................................................................6

*Russell v. Atkins*,
    679 A.2d 333 (Vt. 1996) ....................................................................................................6

*Skilcraft Sheetmetal, Inc. v. Ky. Machine, Inc.*,
    836 S.W.2d 909 (Ky. Ct. App. 1992) ..................................................................................10

## STATE STATUTE

Rev. Code Wash. § 7.72.010(6) ....................................................................................................13

1031600v.1

Plaintiffs' opposition to Merck's motion for judgment on the pleadings or, in the alternative, to strike plaintiffs' class allegations, seeks to distract attention from the legal arguments in Merck's brief by talking about the maturity of the litigation and suggesting that the long pendency of this action entitles plaintiffs to some recovery regardless of whether their claims have any merit.  But in focusing on the "maturity" of the case, plaintiffs merely highlight the poverty of their legal arguments.  At this stage of the litigation, five years after Vioxx was withdrawn from the market, plaintiffs are still unable to articulate a viable theory of causation that:  (1) satisfies the requirements of Federal Rules of Procedure 8 and 9(b); or (2) can be proven on a classwide basis.  In the few months since Merck filed its opening brief, two more courts have rejected proposed pharmaceutical class actions on these very grounds.  *See Zafarana v. Pfizer, Inc.*, No. 09-cv-4026, 2010 WL 2854170 (E.D. Pa. July 20, 2010) (granting motion to dismiss consumer fraud and other claims involving various medications because plaintiffs did not allege facts sufficient to establish that "in the absence of Defendants' conduct [each plaintiff] would have been prescribed a different medication" by his or her physician); *UFCW Local 1776 v. Eli Lilly & Co.*, No. 09-0222-cv, 2010 U.S. App. LEXIS 18959 (2d Cir. Sept. 10, 2010) (reversing certification of third-party payor claims involving Zyprexa because plaintiffs could not prove causation on a classwide basis; "[a]ny reliance by doctors on misrepresentations as to the efficacy and side effects of a drug . . . was not a but-for cause of the price that TPPs ultimately paid for each prescription").  This Court should do the same.

## ARGUMENT

## I.   MERCK IS ENTITLED TO JUDGMENT ON THE PLEADINGS.

### A.   Plaintiffs Have Failed To Adequately Plead Causation.

#### 1.   Plaintiffs Must Satisfy Rule 8, As Interpreted By The U.S. Supreme Court, And Rule 9(b).

The best legal argument plaintiffs can muster in response to Merck's argument that they do not plead a viable theory of causation is that the federal pleading standards do not apply to them.[1]  (Pls.' Opp'n at 3.)  According to plaintiffs, the fact that their claims were filed before the United States Supreme Court decided *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), somehow exempts them from the requirements of Rules 8 and 9(b).  Not so.  *Iqbal* and *Twombly* did not create prospective pleading rules; they merely clarified prior pleading standards.  Otherwise, *Iqbal* and *Twombly* would not have been dismissed themselves.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257-58 (5th Cir. 2009) (noting that "[a]lthough *Twombly* provides new insight into Rule 8(a)(2) by reading the Rules as implying a 'plausibility' standard, it merely explicates, rather than alters, the meaning of the Rule"); *Dardar v. City of Morgan City*, Nos. 6:09cv1967, 6:09cv1968, 2010 WL 2025497, at *3 (W.D. La. Apr. 30, 2010) (same); *see also Tuscan Elec. Power Co. v. El Paso Elec. Co.*, No. 08-680-TUC-CKJ, 2009 WL 2929431, at *5 (D. Ariz. Sept. 10, 2009) (noting that *Twombly* simply "clarifies that a pleading must comply with the requirements" of the Federal Rules; it does not alter the pleading requirements).

Nor is there any truth to plaintiffs' argument that Rule 9(b) only requires plaintiffs to plead with particularity the facts pertaining to Merck's alleged misrepresentations and omissions – not the other elements of their claims.  (Pls.' Opp'n at 9-11.)  To the contrary, courts have repeatedly held that consumer fraud claims based on the sale of a prescription drug fail as a matter of law under Rule 9(b) where – as here – the complaint does not sufficiently connect the allegedly deceptive conduct to the plaintiff's doctor's decision to prescribe the medication.  *See Hall v. Bristol-Myers Squibb Co.*, Nos. 06-5203 (FLW), 06-6050 (FLW), 2009 U.S. Dist. LEXIS

---

[1]     Notably, plaintiffs fail to offer any response to Merck's argument that they have not pled their implied warranty and unjust enrichment claims with sufficient specificity to state a valid claim under federal pleading

121057, at *26 (D.N.J. Dec. 30, 2009) (dismissing Florida Deceptive and Unfair Trade Practices ("FDUTPA") claim under Rule 9(b) where plaintiffs "fail[ed] to allege with specificity the connection between Defendants' [misrepresentations and omissions] and Plaintiffs' resultant injury"); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2009 WL 2043604, at *25, *31-35 (D.N.J. July 10, 2009) (dismissing, *inter alia*, New Jersey Consumer Fraud Act claims under Rule 9(b) where the plaintiffs did "not plead a single instance in which they, themselves, or any of their prescribing doctors received a misrepresentation of fact from Defendants and relied upon that misrepresentation in deciding to prescribe one of the Subject Drugs to Plaintiffs"); *see also Smith v. Bristol-Myers Squibb Co.*, No. 3:06-cv-6053 (FLW), 2009 WL 5216982, at *7 (D.N.J. Dec. 30, 2009); *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 WL 3740648, at *11 (N.D. Cal. Nov. 6, 2009).[2]

For example, in *Hall*, plaintiffs brought claims under FDUTPA against the manufacturers of the prescription drug Plavix, alleging that they falsely promoted Plavix as more effective and safer than aspirin in preventing heart attacks and strokes.  2009 U.S. Dist. LEXIS 121057, at *7. The court dismissed plaintiffs' consumer fraud claim pursuant to Rule 9(b).  According to the court, it is well settled that "allegations [in support of a consumer fraud claim] must be pled with the heightened specificity of Rule 9(b)."  *Id.* at *19.  Because FDUTPA "requires proof of

---

standards.

[2]      Plaintiffs' argument that Rule 9(b) does not apply to claims brought under the consumer fraud laws of Florida, Massachusetts and Washington is also wrong.  (Pls.' Opp'n at 7-9.)  Federal courts interpreting these states' consumer fraud statutes have consistently held that plaintiffs' allegations must satisfy Rule 9(b).  *See Azko Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.*, No. 8:09-CV-2453-T-30TBM, 2010 U.S. Dist. LEXIS 84544, at *13 (M.D. Fla. July 16, 2010) (dismissing counterclaim under FDUTPA because counterclaimant failed to allege "specific facts to support a violation" as required by Rule 9(b)); *TLH Int'l. v. Au Bon Pain Franchising Corp.*, No. 86-2061-MA, 1986 U.S. Dist. LEXIS 17755, at *5 n.2 (D. Mass. Nov. 13, 1986) ("The purpose of the [9(b) particularity] rule, as it pertains to this case, is to provide the defendants with clear notice of the grounds on which the plaintiff's fraud claim rests, whether labeled as a RICO claim or as a claim under the Massachusetts Unfair and Deceptive Practices statute . . . ."); *Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003) (because the Washington Consumer Protection Act ("WCPA") claim "mirrors the elements of an action for fraud . . . [p]laintiff's Complaint is thus 'grounded in fraud' and subject to Rule 9(b)").

1031600v.1

causation," allegations of causation must be pled with sufficient particularity.  *Id.* at *22-25.

However, plaintiffs "fail[ed] to allege with specificity the connection between Defendants'

[misrepresentations and omissions] and Plaintiffs' resultant injury."  *Id.* at *25-26.  In particular,

plaintiffs "fail[ed] to identify which, if any, of the promotional or marketing materials were

received, viewed or relied upon by [plaintiffs], and if they were, when these materials were

viewed and how they were relied upon."  *Id.* at *26.  In addition, plaintiffs did not "allege that

[plaintiffs'] physicians personally received a misrepresentation of fact from Defendants and

relied upon that misrepresentation in deciding to prescribe Plavix to [plaintiffs]."  *Id.* at *27.

Because plaintiffs neglected "to inject precision and some measure of substantiation to support

their [FDUTPA] claim," the claim failed as a matter of law.  *Id.* at *31; *see also Zafarana*, 2010

WL 2854170, at *7 (plaintiffs failed to plead a valid claim because they did not allege facts

sufficient to establish that "in the absence of Defendants' conduct [each plaintiff] **would** have

been prescribed a different medication" by his or her physician) (emphasis added).

   This case is no different.  Plaintiffs' complaint contains only general allegations that

Merck "proximately caused" Vioxx users to suffer "losses" by misrepresenting the alleged risks

of the drug.  They have not identified what misrepresentations were made to their physicians; nor

have they pled any facts tying their purchase of Vioxx to any alleged statements, advertisements,

representations or omissions made by Merck.  Specifically, they have not pled facts sufficient to

establish that they would have been prescribed a different, cheaper medication in the absence of

Merck's alleged misrepresentations.  *See id.*[3]  For these reasons alone, all of their claims must be

dismissed.

---

[3]      Plaintiffs are also unable to refute that their implied warranty claims fail because they have not alleged facts to support their allegation that the Vioxx they purchased was "not fit for its intended use."  As Merck explained in its opening motion, plaintiffs were required to allege that the Vioxx they purchased did not work as intended, i.e. that it did not provide them with a medical benefit.  *See In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,

4

### 2.   Plaintiffs' Efforts To Write Causation Out Of The Relevant Consumer Fraud Statutes Should Be Rejected.

Plaintiffs' alternative argument – that they need not allege causation because four of the relevant states (Illinois, Vermont, Florida and Massachusetts) only require an allegation that Merck's statements were "likely to deceive" consumers – is also wrong.

*First*, plaintiffs' assertion that they can recover under the Illinois Consumer Fraud Act ("ICFA") based on a general allegation that Merck misrepresented and/or omitted "information upon which a buyer would be expected to rely in making a decision whether to purchase" Vioxx. (Pls.' Opp'n. at 15) was rejected by the Illinois Supreme Court in *De Bouse v. Bayer AG*, 922 N.E.2d 309 (Ill. 2009).  In *De Bouse*, a plaintiff brought claims under ICFA on behalf of a proposed class of drug users, alleging that the defendant had concealed information about the "negative side effects of the defendant's cholesterol-lowering drug."  *Id.* at 311.  The defendant moved for summary judgment on the ground that the plaintiff had not seen or heard any of the defendant's alleged misrepresentations and thus could not establish that she was actually deceived by the defendant's conduct.  *Id.*  In response, the plaintiff argued that she could satisfy ICFA's causation requirement by merely alleging that the defendant had generally deceived "consumers, the medical community, the health care insurance industry, and the public."  *Id.* at 319 (internal quotation marks omitted).  The Illinois Supreme Court unequivocally rejected plaintiff's "market causation theory," holding that in order to establish proximate cause, "the plaintiff must actually be deceived by a statement or omission" alleged.  *Id.* at 316.  Plaintiffs do not address *DeBouse* in their brief, relying instead on prior (rejected) caselaw.

*Second*, plaintiffs are also wrong that the Vermont Consumer Fraud Act ("VCFA") only requires an allegation that the defendant engaged in a deceptive practice that is "likely to affect

---

No. 08-939 (DRD), 2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 10, 2009) (Merck's Mot. at 14).  Plaintiffs offer no

consumers." (Pls.' Opp'n at 21 (citation omitted).)  The Vermont Supreme Court has clearly

held that plaintiffs asserting claims under the VCFA must allege reliance or causation.  *See*

*Russell v. Atkins*, 679 A.2d 333, 336 (Vt. 1996).  In *Russell*, the Vermont Supreme Court

affirmed a grant of summary judgment on VCFA claims because plaintiffs failed to allege that

they relied on the defendants' misrepresentation.  *Id.* at 335-36.  According to the court, a cause

of action under the VCFA is only available if plaintiffs can show that they relied on "or

sustain[ed] damages as a result of" the defendant's "false or misleading representations."  *Id.* at

336 (citing 9 V.S.A. § 2461(b)).

     *Third*, plaintiffs are also wrong that they need only allege that Merck's conduct was

likely to mislead an "objective" consumer in order to state a claim under FDUTPA.  FDUTPA

allows recovery only where the plaintiff can establish "three elements:  (1) a deceptive act or

unfair practice; (2) causation; and (3) actual damage." *Rollins, Inc. v. Butland*, 951 So. 2d 860,

869 (Fla. Dist. Ct. App. 2007).  Plaintiffs argue that FDUTPA's causation requirement is an

"objective one" that can be resolved "based on how an objective reasonable person would

behave under the circumstances." (Pls.' Opp'n at 13.)  In support of their argument, plaintiffs

cite a few class certification decisions and Attorney General actions holding that the causation

element of FDUTPA claims can be proven based on common evidence where the defendant

made the same misrepresentation to all consumers that was "likely to deceive a consumer acting

reasonably in the same circumstances" as proposed class members.  (*See id.* at 12 (citation

omitted).)  However, a number of other Florida courts have criticized this approach as failing to

give "fair consideration to the principle of causation" required under FDUTPA.  *Philip Morris*

*USA Inc v. Hines*, 883 So. 2d 292, 295 (Fla. Dist. Ct. App. 2004); *see also Black Diamond*

---

response to this argument anywhere in their opposition.

*Props., Inc. v . Haines*, 940 So. 2d 1176, 1179 n.1 (Fla. Dist. Ct. App. 2006) (same).  Courts have also held that class action plaintiffs alleging FDUTPA claims are required to produce individualized evidence of causation in cases – like this one – where the defendant made different statements to different proposed class members at different times, and where there is evidence that different class members, due to their individual knowledge and/or understanding, may have reacted differently to the defendant's alleged misrepresentations.  *See, e.g.*, *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 685-86 (S.D. Fla. 2008) (noting that "[p]laintiffs' contention that a deceptive [practice] for one, would necessarily be a deceptive practice for all, is not true" when the determination of whether a statement was deceptive depends upon the "knowledge and/or understanding" of each plaintiff).  Further, courts have held that the causation element of FDUTPA claims must be pled with particularity.  *See Stefan v. Singer Island Condominiums Ltd.*, No. 08-80039-CIV, 2009 WL 426291, at *15 (S.D. Fla. Feb. 20, 2009) (holding that plaintiff's failure to "allege[] that the deceptive act or unfair practice actually caused plaintiff's claimed damages" was "fatal to [p]laintiff's claim") (citation omitted); *Taviere v. Precision Motor Cars, Inc.*, No. 8:09-cv-467-T-TBM, 2010 WL 557347, at *5 (M.D. Fla. Feb. 12, 2010) (noting that claims arising under FDUTPA must be "pled with particularity" and dismissing plaintiff's FDUTPA claims where complaint "proffer[ed] no allegations demonstrating causation").  Specifically, FDUTPA plaintiffs' pleadings must "identify which, if any, of the promotional or marketing materials were received, viewed or relied upon by [plaintiffs], and if they were, when these materials were viewed and how they were relied upon."  *Hall*, 2009 U.S. Dist. LEXIS 121057, at *26.  Plaintiffs have done none of these things.

**Fourth**, plaintiffs are also wrong that they have included sufficient causation allegations in the complaint to state a Chapter 93A claim under Massachusetts law.  Plaintiffs argue that because they pled that Merck made misrepresentations about Vioxx to the FDA, they need not

7

allege any additional causal connection between Merck's alleged statements and their Vioxx purchases under Massachusetts law.  (Pls.' Opp'n at 18-19.)  But the United States Supreme Court has explicitly held that a plaintiff cannot allege state-law consumer fraud claims based solely on alleged misstatements to the FDA because such claims are preempted by the federal Food, Drug & Cosmetic Act.  *See Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341 (2001).  Consistent with *Buckman*, courts have held that consumer fraud claims predicated on an alleged "fraud on the FDA" are preempted.  *See McDarby v. Merck & Co., Inc.*, 949 A.2d 223 (N.J. Super. Ct. App. Div. 2008) (rejecting Vioxx consumers' claims where plaintiffs' theory of causation turned on defendant's alleged failure to provide the FDA with "complete" information).  Thus, the only way plaintiffs can proceed with their Chapter 93A claim is to allege a causal connection between Merck's alleged misrepresentations and each Massachusetts plaintiff's Vioxx purchases – an allegation they fail to make.

### B.    Plaintiffs Do Not Dispute That They Have Not Alleged A Cognizable Injury Under Any State's Law.

As explained in Merck's opening brief, "[n]o injury, no tort, is an ingredient of *every* state's law."  *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (emphasis added).  And in product liability cases like this one, a plaintiff has not suffered any injury if the product at issue "performs satisfactorily and never exhibits the alleged defect."  *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997).  Plaintiffs make no attempt to respond to this argument.  Nor do they distinguish the long line of cases cited in Merck's opening brief rejecting consumer fraud claims based on the sale of prescription drugs on the ground that the plaintiffs had not alleged a viable theory of injury because they got exactly what they paid for – an effective medical treatment for their symptoms.  (*See* Merck's Mot. at

8

17-20 (collecting cases).)  Accordingly, Merck is entitled to judgment on the pleadings for this reason, too.

### C.   Plaintiffs' Claims Fail For A Variety Of Other Reasons.

#### 1.   Plaintiff Seitz's Claims All Fail Under Michigan Law.

As Merck set forth in its opening brief, Michigan law bars *all* product liability claims involving prescription drugs.  Plaintiffs do not contest Merck's arguments with respect to their warranty and unjust enrichment claims.  Thus, those claims must be dismissed.

With respect to Mr. Seitz's claims under the Michigan Consumer Protection Act ("MCPA"), plaintiffs' brief is confused.  On the one hand, they state in a footnote that they are dismissing this claim.  (*See* Pls.' Opp'n at 11 n.14.)  On the other hand, they urge the Court to ignore the Michigan Court of Appeals' holding in *Duronio v Merck & Co, Inc*., No. 267003, 2006 Mich. App. LEXIS 1841 (Mich. Ct. App. June 31, 2006), that the MCPA does not apply to regulated transactions such as the sale of pharmaceutical drugs.  Assuming plaintiffs do intend to proceed with their MCPA claims, this argument fails.  The only case plaintiffs cite in urging the Court to reject *Duronio* is *In re Bextra & Celebrex Marketing Sales Practices & Product Liability Litigation*, 495 F. Supp. 2d 1027, 1032 (N.D. Cal. 2007) (Pls.' Opp'n at 19-20).  But even if it were appropriate to follow a California federal court's interpretation of Michigan law instead of an interpretation by the Michigan Court of Appeals, plaintiffs' arguments would still fail.  This is so for a simple reason:  the *Bextra* decision does not address Merck's arguments. Instead, that decision merely addressed whether third-party payors have standing to bring consumer protection claims even though they are not consumers, an issue that is irrelevant to this case.  *Id*. at 1033-34.  Thus, *Bextra* does not even mention – let alone reject – the Michigan Court of Appeals' ruling in *Duronio*, which explicitly precludes plaintiff Seitz's consumer fraud claim.

9

In sum, plaintiff Seitz's claims have been abandoned and/or are barred by Michigan law. Accordingly, they should be dismissed.

### 2.     The ICFA Claims Of Plaintiffs Benoit, Lowery, Williams And Murphy Are Barred Because Vioxx Was Approved By The FDA.

Plaintiffs' opposition brief does not address Merck's argument that they cannot bring claims under ICFA because Merck's conduct in marketing and selling Vioxx was authorized by federal regulation. (*See* Merck's Mot. at 22-23.) As set forth in Merck's opening brief, the FDA explicitly approved Vioxx for sale, it approved Merck's labeling of the drug (including risk information), it regulated Merck's advertisements, it regulated Merck's contacts with physicians, and it had the ability to sanction Merck if it failed to follow federally set guidelines regarding the marketing of prescription drugs. Thus, the misrepresentations alleged by plaintiffs are "entitled to protection under section 10(b)1 of the CFA" as they "fall within the boundaries established by federal law." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001); *see also Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 50-51 (Ill. 2005) (same). For this reason too, plaintiffs' claims under ICFA should be dismissed.

### 3.     Plaintiff Anderson's KCPA Claim Fails For Lack Of Privity.

As set forth in Merck's opening brief, a plaintiff bringing a consumer fraud claim under Kentucky law must establish that he or she is in privity with the defendant. *See*, *e.g.*, *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 909 (Ky. Ct. App. 1992). Plaintiffs argue in response that the privity requirement does not apply because Merck engaged in "fraudulent consumer-directed" conduct and therefore "waived" the privity requirement by "treating plaintiffs as purchasers 'for all practical purposes.'" (Pls.' Opp'n at 16.) But plaintiffs' cases say no such thing.

10

In their first case, *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897 (Ky. 2008) (Pls.' Opp'n at 16-17), privity **did** exist.  And their second case, *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776 (W.D. Ky. 2003) (Pls.' Opp'n at 16), crafted only a narrow exception to the privity requirement that does not apply here.  In *Stafford*, a bank began collection proceedings against a plaintiff for debts accumulated on his account as a result of identity theft.  The plaintiff sued for consumer fraud, and the bank moved to dismiss.  In rejecting the bank's privity argument, the court held that the entire action arose from the bank's continued assertion that the plaintiff **was** responsible for the account in his name.  *Id*. at 793.  According to the court, "the Bank's own continued assumption of privity, coupled with its alleged unfair, false, and misleading tactics, is enough to overcome" the assertion that the parties did not have a contractual relationship.  *Id*. Here, by contrast, there is no allegation that Merck treated the named plaintiffs as though they were "customers" of the Company – or sought to recover from them in a manner that would estop Merck from asserting privity.  Thus, *Stafford* is irrelevant.  *See Alfred v. Mentor Corp*., No. 05-483-C, 2007 U.S. Dist. LEXIS 15535, at *21 n.4 (W.D. Ky. Mar. 5, 2007) (rejecting application of *Stafford* in a case involving the sale of an allegedly defective breast implant).

For this reason too, plaintiff Anderson's claim under the KCPA must be dismissed.

### 4.   Plaintiffs' Claims For Breach Of The Implied Warranty Of Merchantability Fail For Lack Of Notice And/Or Privity.

Plaintiffs concede that they cannot assert breach-of-warranty claims under Arizona, Florida, Illinois and Kentucky law, presumably because they lack privity with Merck.  (*See* Pls.' Opp'n at 33 n.1.)  As to the other states, plaintiffs argue that their claims are valid because:  (1) the notice requirement is satisfied either under a theory of constructive notice or by the filing of this lawsuit; and (2) Washington does not require privity for breach-of-warranty claims.  Both arguments are meritless.

11

***First***, all of the plaintiffs' implied warranty claims must be dismissed because they fail to allege timely notice of breach.  Relying almost exclusively on the laws of states that are not implicated here, plaintiffs argue that notice was unnecessary in this case because Merck was on "constructive notice" that Vioxx "was troublesome and must be watched," or that the requirement was fulfilled by filing this lawsuit.  (Pls.' Opp'n at 29, 31.)  But in all the states at issue here, the law is clear that a manufacturer must be given ***pre-suit*** notice that a ***particular buyer's*** product exhibited an alleged defect, so that it can gather evidence and investigate facts.[4] *See, e.g., Johnson Controls, Inc. v. Jay Indus.*, 459 F.3d 717, 730 (6th Cir. 2006) (applying Michigan law) (holding that UCC § 2-607 "mandate[s] notice regardless [of] whether either or both parties had actual knowledge of breach") (citation and internal quotation marks omitted).[5] Thus, even if plaintiffs are correct that Merck knew of general problems associated with Vioxx, they were still required to provide notice that they personally had complaints about the product. Because plaintiffs do not allege that they did so, their implied warranty claims fail.

***Second***, plaintiffs' implied warranty claims are barred under Washington law because plaintiffs are not in privity with Merck.  Plaintiffs argue that privity is unnecessary under the Washington Product Liability Act ("WPLA").  (Pls.' Opp'n at 33 (citing RCW 7.72 *et seq.*).)  But in their Complaint, they allege breach of warranty under Washington Revised Code § 62A.2-

---

[4]     Plaintiffs do cite one case under Indiana law but they misconstrue its ruling.  According to plaintiffs, the court in *Collins v. Pfizer, Inc.*, No. 1:08-cv-0888-DFH-JMS, 2009 WL 126913 (S.D. Ind. Jan. 20, 2009) (applying Indiana law), "denied defendants' motion to dismiss [plaintiff's warranty claims on notice grounds] since it was unclear how the defendant was hampered by not being notified until litigation had started, and it was difficult to resolve such an issue on the pleadings."  (Pls.' Opp'n at 32-33.)  Not so.  *Collins* merely addressed whether Indiana's notice requirement applies *in personal injury actions –* not how that requirement can be satisfied where, as here, it does apply.  2009 WL 126913, at *2, *5.

[5]     *See also In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, No. 2:05-md-01718, 2007 U.S. Dist. LEXIS 62483, at *19 (E.D. Mich. Aug. 24, 2007) (applying Florida, Texas, and Illinois law) ("Here, Plaintiffs did not provide any notice, but rather allege that individual notice was unnecessary, because Defendants had knowledge of the nature of the alleged defect.  Recall notices do not satisfy the notice requirement. . . . Even if a manufacturer is aware of problems with a particular product line, the notice requirement of § 2-607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer.") (internal quotations and citations omitted).

1031600v.1

314 (Compl. ¶ 320) – the state's codification of the UCC – not the WPLA.[6]  Plaintiffs do not

dispute that Washington courts addressing § 62A breach-of-warranty claims consistently hold

that such claims require privity; nor could they.  *See Stepp v. Takeuchi Mfg. Co.*, No. C07-

5446RJB, 2008 U.S. Dist. LEXIS 80809, at *28-29 (W.D. Wash. Oct. 2, 2008); *Chance v.*

*Richards Mfg. Co.*, 499 F. Supp. 102, 105 (E.D. Wash. 1980) ("contractual privity is a

requirement in Washington for recovery under the implied warranties of the Uniform

Commercial Code").  Thus, plaintiff Aguero's implied warranty claim fails for this additional

reason.

### 5.    Plaintiffs' Unjust Enrichment Claims Are Barred As A Matter Of Law.

#### (a)    Plaintiffs' Claims For Unjust Enrichment Fail Under Florida, Massachusetts And Michigan Law.

Plaintiffs' claims for unjust enrichment fail under Florida, Massachusetts and Michigan

law because they cannot allege that Merck received a direct benefit from plaintiffs' alleged

purchases of Vioxx.  Plaintiffs argue that none of these states requires conferral of a direct

benefit.  (*See* Pls.' Opp'n at 24-25, 26-27.)  Plaintiffs are mistaken.  In fact, courts in these

jurisdictions have repeatedly rejected unjust enrichment claims absent a showing that the

defendant received a direct benefit from the plaintiff.

In Florida, for example, it is well-settled that "plaintiffs must show they directly

conferred a benefit on the defendants."  *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331

(Fla. Dist. Ct. App. 2007).  Plaintiffs cite just one case – an unpublished decision from a federal

court (Pls.' Opp'n at 24) – that cites no authority for its interpretation of Florida law.  In contrast,

---

[6]      Even if plaintiffs had alleged their warranty claims under the WPLA, they would still fail.  This is because the WPLA does not apply to claims seeking only economic loss.  *See* Rev. Code Wash. § 7.72.010(6) ("'Harm' includes any damages recognized by the courts of this state: PROVIDED, That the term 'harm' does not include direct or consequential economic loss under Title 62A RCW.").

cases from Florida state courts have made it clear that a direct benefit is required for a claim of unjust enrichment. *See, e.g.*, *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. Dist. Ct. App. 2009) (dismissing unjust enrichment claim because "[p]laintiff [could] not allege nor establish that it ***conferred a direct benefit*** upon [defendant]") (emphasis added); *Peoples Nat'l Bank of Commerce v. 1st Union Nat'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996) ("Here, the plaintiff, Peoples National, could not and did not allege that it had ***directly conferred a benefit*** on the defendants . . . . [T]he trial court properly dismissed with prejudice that count . . . ."). Indeed, federal courts have reached the same result – including the same court that issued the unpublished decision on which plaintiffs rely (in a later, published decision). *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) ("[Defendant] correctly argues that Florida law provides that a plaintiff must ***directly confer a benefit*** on the defendant in order to recover pursuant to an unjust enrichment theory.") (emphasis added); *see also, e.g.*, *Tambourine Comercio Int'l S.A. v. Solowsky*, No. 06-20682-Civ., 2007 WL 689466, at *8 (S.D. Fla. Mar. 4, 2007) (similar); *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, No. 6:00CV1703ORL31 KRS, 2002 WL 32075792, at *10 (M.D. Fla. Dec. 13, 2002) (similar); *Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998) (similar).

Courts applying Massachusetts law have likewise required a direct benefit to sustain an unjust enrichment claim. *See, e.g.*, *Estate of Johnson v. Melvin Rose, Inc.*, No. WOCV200400622, 2007 WL 1832029, at *39 (Mass. Super. Ct. May 9, 2007) (rejecting unjust enrichment claim because the plaintiffs presented no "quantifiable evidence of the direct benefit received by the defendants"); *Brick Constr. Corp. v. CEI Dev. Corp.*, 710 N.E.2d 1006, 1008 (Mass. App. Ct. 1999) (similar); *see also Livick v. Gillette Co.*, 492 F. Supp. 2d 1, 11 (D. Mass. 2007) (similar).

1031600v.1

Plaintiffs cite two cases for the contrary proposition.  (*See* Pls.' Opp'n at 26.)  The first, *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 323 (D. Mass. 2005), purported to rest its holding that no direct benefit is required on *Greenwald v. Chase Manhattan Mortgage Corp.*, 241 F.3d 76, 81 (1st Cir. 2001).  *See Mylan Labs.*, 357 F. Supp. 2d at 323.  But the court in *Greenwald* **rejected** the unjust enrichment claim and suggested that the absence of a direct benefit defeats an unjust enrichment claim.  *See* 241 F.3d at 81.  Plaintiffs' second case, *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009), says nothing regarding the direct benefit requirement at all; indeed, under the facts of that case, the defendant's improper use of the confidential research without paying for it directly caused the defendant's enrichment and the plaintiff's impoverishment.  *Id.* at 59-62.

Finally, Michigan law, too, requires a showing of direct benefit.  Plaintiffs rely on one case – *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000) – for the proposition that no direct benefit is required under Michigan law.  (Pls.' Opp'n at 27.)  But *Cardizem* does not cite a single Michigan case in support of this proposition.  By contrast, the case cited by Merck in its opening brief is clear that an unjust enrichment claim fails where "there was no direct receipt of any benefit by defendant . . . from the persons seeking class certification."  *A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) (per curiam); *see also New Dimension Dev., Inc. v. Orchard, Hiltz & McCliment, Inc.*, No. 262565, 2005 WL 2806234, at *6 (Mich. Ct. App. Oct. 27, 2005) (per curiam) (rejecting unjust enrichment claim because "defendant never received payments **directly from plaintiffs**") (emphasis added); *Martell v. Turcheck*, No. 2:07-cv-14068, 2008 WL 2714210, at *11 (E.D. Mich. July 7, 2008) ("Plaintiffs' argument in their Reply is unpersuasive in light of recent authority indicating that the benefit must have been provided **directly** to the defendant and that this involves direct contact between the parties.") (emphasis added).

15

Here, as demonstrated in the opening brief, Merck received no direct benefit from plaintiffs' alleged purchases of Vioxx.  (*See* Merck's Mot. at 27-28.)  Thus, plaintiffs' unjust enrichment claims necessarily fail under Florida, Massachusetts and Michigan law.

(b)   Plaintiffs' Claims For Unjust Enrichment Also Fail Under Illinois, Indiana And Washington Law.

Plaintiffs' unjust enrichment claims also fail under Illinois, Indiana and Washington law because these states have held that unjust enrichment claims are not actionable when a plaintiff's other, tort-based causes of action fail.  Plaintiffs do not (and cannot) contest this point as to Illinois or Indiana.  Instead, they argue that these states generally acknowledge a cause of action for unjust enrichment.  (*See* Pls.' Opp'n at 25.)  But that argument is nonresponsive – what matters is that these states do not allow unjust enrichment claims *where other tort claims fail* – as is the case here.

Washington follows the same rule.  Plaintiffs contend otherwise, arguing that the case cited in Merck's opening brief, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1041 (9th Cir. 2010), "misstates Washington law."[7]  (Pls.' Opp'n at 28.)  But plaintiffs' two supposedly contrary cases do not support their argument.  The first, *Nelson v. Appleway Chevrolet, Inc.*, 157 P.3d 847, 854 (Wash. 2007), merely confirmed that Washington recognizes an unjust enrichment cause of action – a fact not in dispute.  The second, *Davenport v. Washington Education Association*, 197 P.3d 686, 696-98 (Wash. Ct. App. 2008), did not address the question whether unjust enrichment claims are actionable as fall-back tort claims.

---

[7]     Plaintiffs also criticize the Ninth Circuit's reliance on George E. Palmer, *Law of Restitution* § 2.1 (1978 & Supp. 2010), in *Coto Settlement*.  (Pls.' Opp'n at 28.)  However, Washington courts have frequently relied on this treatise.  *See, e.g.*, *Fourmost Constr., Inc. v. Johnson*, No. 16774-7-III, 1998 WL 306576, at *2 (Wash. Ct. App. June 1, 1998); *Auburn Mech., Inc. v. Lydig Const., Inc.*, 951 P.2d 311, 314-15, 315 nn.18-22, 317 nn.40-41 (Wash. Ct. App. 1998); *Bushey v. Crown Plaza Corp.*, No. 35831-6-I, 1996 WL 442776, at *1 (Wash. Ct. App. Aug. 5, 1996); *Paulsen v. Dep't of Social & Health Servs.*, 898 P.2d 353, 354-55 (Wash. Ct. App. 1995).  Thus, the Ninth Circuit reasonably relied on Palmer's scholarship to aid its interpretation of Washington law.

1031600v.1

Accordingly, the unjust enrichment claims based on Illinois, Indiana and Washington law should also be dismissed.

## II.   THE COURT SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS.

Even if the Court were to determine that plaintiffs' substantive claims are sufficiently pled to withstand judgment on the pleadings, it should – at the very least – strike the class action allegations contained in plaintiffs' complaint.  Plaintiffs argue that Merck's motion to strike should be denied because:  (1) additional discovery is needed before the Court can resolve plaintiffs' class allegations; and (2) the many individualized questions relevant to plaintiffs' consumer fraud, implied warranty and unjust enrichment claims do not preclude class certification.  Neither argument has merit.

### A.   No Amount Of Additional Discovery Will Make Plaintiffs' Proposed Classes Certifiable.

Plaintiffs first argue that motions to strike are inappropriate as a general rule because "the Rule 23 determination is 'enmeshed in the factual and legal issues'" of a case and therefore cannot be made without class certification discovery.  (Pls.' Opp'n at 37.)  In support of this proposition, plaintiffs cite to a handful of cases that have refused to grant motions to strike class action allegations on the ground that there were not enough facts in the record to determine whether plaintiffs' claims could be tried on a classwide basis.  (*See id*. at 35-37.)  But those cases involved litigation where vital information about plaintiffs' claims (and the potential variations among class members) was not yet available to the court – a far cry from the circumstances presented here.  *See, e.g., Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727 (S.D. Iowa 2007) (Pls.' Opp'n at 36) (denying motion to strike class claims in insurance class action because the parties had not made any showing as to what states' laws governed the claims).

17

This Court has been overseeing the Vioxx litigation for more than five years.  It has presided over numerous Vioxx trials involving consumer fraud allegations, and it is privy to the results of numerous other Vioxx trials in other jurisdictions.  It has received hundreds of pages of briefing on both the substantive merit of plaintiffs' claims and class certification issues – briefing that relies on testimony from dozens of Vioxx users and their doctors about their experiences with Vioxx.  It has the benefit of thoughtful rulings by two state court judges who presided over coordinated Vioxx proceedings in California and New Jersey.  And it has already decided that class certification is inappropriate in Vioxx personal injury actions, in part because each Vioxx purchaser's claim will vary based on when he or she purchased the drug, what Merck knew about its risks at the time, and what information his or her doctors received.  *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006).  As the Court explained in denying certification of plaintiffs' proposed personal injury class:

> [A]llegations that Merck failed to warn doctors adequately regarding the alleged health risks of Vioxx . . . necessarily turn on numerous individualized issues such as:  the alleged injury; what Merck knew about the risks of the alleged injury when the patient was prescribed Vioxx; what Merck told physicians and consumers about those risks in the Vioxx label and other media, what the plaintiffs' physicians knew about these risks from other sources, and whether the plaintiffs' physicians would still have prescribed Vioxx had stronger warnings been given.

*Id.* at 461.  Moreover, the Court noted that "during the approximately five years that Merck marketed Vioxx, the package insert and label changed several times . . . further frustrat[ing] a finding of predominance."  *Id*.  As a result, "there is no uniform body of representations to which all physicians and putative class members were exposed."  *Id*.  In other words, this Court has already implicitly held that plaintiffs' claims should not be certified.  If there were ever a case where a motion to strike class claims were proper, this is it.

18

**B.**   **The Fact That A Few Outlier Courts Have Certified Consumer Fraud, Implied Warranty And Unjust Enrichment Claims Is Irrelevant.**

Plaintiffs urge the Court to ignore a knee-deep pile of federal and state court rulings refusing to certify claims based on the sale of Vioxx and other prescription drugs – and instead follow a lone decision by a Missouri state court.  (Pls.' Opp'n at 42-43 (citing *Plubell v. Merck & Co*., 289 S.W.3d 707 (Mo. Ct. App. 2009).)  As explained in Merck's opening brief, however, the *Plubell* decision is inapposite because that court held that class certification was appropriate under ***Missouri's*** class certification standard as long as there is "[a] single common issue" that applies to all proposed class members' claims – which is not the standard for certification under Rule 23.  (*See* Merck's Mot. at 2 n.1 (internal quotation marks omitted).)  *Plubell* is thus contrary to a long line of federal court cases refusing to certify fraud claims involving medical products on the ground that the patient-specific nature of physician prescribing decisions makes it impossible to prove causation on a classwide basis.  *See, e.g.*, *In re St. Jude Med., Inc.*, 522 F.3d 836, 838-40 (8th Cir. 2008) (reversing certification of alleged economic-loss claims involving medical device; "resolution of [defendant's] potential liability to each plaintiff under the consumer fraud statutes will be dominated by individual issues of causation and reliance"); *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig*., 257 F.R.D. 315, 331 (D. Mass. 2009) (refusing to certify class of Neurontin users asserting consumer fraud claims based on allegation that defendant drug company marketed drug for off-label uses because of the individualized nature of the causation inquiry); *In re Prempro Prods. Liab. Litig*., 230 F.R.D. 555, 567 (E.D. Ark. 2005) (denying certification of claims involving hormone replacement therapy; plaintiffs' consumer fraud claims "require individualized proof" regarding causation, including "[w]hether a plaintiff saw an advertisement; whether the particular advertisement was fraudulent; whether that plaintiff relied on the advertisement[]; and whether the plaintiff was damaged as a result of

19

the advertisement"); *In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003) (refusing to certify class of users of prescription anti-depressant Paxil alleging consumer fraud and other claims because, *inter alia*, "[w]hether, and to what extent, Paxil" is a reasonable treatment for each patient varies based on "the underlying illnesses and medical history of each individual plaintiff" and therefore requires individualized evidence); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 67-69 (S.D.N.Y. 2002) ("while there no doubt are common questions concerning the characteristics of Rezulin and the manner in which FDA approval was obtained, individual questions, particularly but not limited to causation and reliance, overwhelm those common issues").

Moreover, the "benefit-of-the-bargain" approach to causation embraced by the *Plubell* court has been rejected by one court after another.  Just this month, the U.S. Court of Appeals for the Second Circuit reversed certification of a class of third-party payors alleging consumer fraud claims based on the sale of the allegedly risky prescription drug Zyprexa for precisely this reason.  *See UFCW Local 1776*, 2010 U.S. App. LEXIS 18959.  According to the court, "[t]he market for prescription drugs is quite inelastic, meaning that the price of a medication rarely has significant impact on the demand for that medication."  *Id.* at *7-8.  In addition, "[t]he initial price set by a pharmaceutical company is 'sticky' in that the price does not respond to market demand.  Rather, the price is generally increased over time as a routine matter by the manufacturer."  *Id.* at *8.  Thus, "[e]ven if negative information is released about a medication, the demand for the drug may go down, but the price generally remains the same."  *Id.*  Indeed, a "drug company may even increase the price of a drug when it is expected that negative information will lower the demand, so that the price increase will compensate for the decrease in quantities sold and the overall profits of the company will not fall."  *Id.*  Moreover, the court recognized that "prescribing doctors do not generally consider the price of a medication when

20

deciding what to prescribe for an individual patient." *Id.* at \*32. Thus, "[a]ny reliance by doctors on misrepresentations as to the efficacy and side effects of a drug . . . was not a but-for cause of the price that TPPs ultimately paid for each prescription." *Id.* Accordingly, the court held that plaintiff could not prove on a classwide basis that Lilly's alleged misrepresentations about Zyprexa caused proposed class members to pay more for the drug than it was worth. *Id.*

The same is true here. There is no evidence that all Vioxx users paid more for the drug than they otherwise would have if more information had been released about its alleged risks. Nor is there any way to determine – on a classwide basis – whether all Vioxx users paid more for Vioxx than it was "worth" to them. This is because different Vioxx users had different experiences with the drug and received different relief from it. (*See* Merck's Mot. at 34-35.)

Plaintiffs' further assertion that a number of "recent federal appellate decisions have affirmed" that consumer fraud claims are especially well-suited for class treatment (Pls.' Opp'n at 39) is grossly exaggerated and, in any event, does not identify any prescription drug cases (besides *Plubell*) in which certification was approved by an appellate court. Instead, their main case, *Pella v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) (Pls.' Opp'n at 43-44), involved rotting windows. Because all of the class members' windows had in fact rotted in that case, the question of causation was less complex. *Wolin v. Jaguar Land Rover North America, LLC*, Nos. 09-55104, 09-55105, -- F.3d --, 2010 WL 3222091 (9th Cir. 2010) (Pls.' Opp'n at 43) – another non-prescription-drug case – is equally irrelevant. There, plaintiffs brought consumer protection and other claims based on a vehicle manufacturer's failure to disclose that the tires on its cars were defective and had a tendency to wear prematurely. *Id.* at \*1. The trial court initially denied certification of the class on the ground that individualized inquiries would be necessary to determine whether each proposed class member's tires had in fact worn prematurely. *Id.* at \*2. The Court of Appeals reversed, holding that the question whether the proposed class members'

21

tires had exhibited an alleged defect was a merits issue that should be addressed in dispositive motions – not at class certification. *Id.* at \*4. The court did not address the question of causation, apparently assuming that information that the tires on a vehicle were likely to experience premature failure would have affected all consumers' purchasing decisions. As set forth in Merck's opening brief, such an assumption is inappropriate in a prescription drug case because a physician's decision to prescribe medication is inherently individualized and will vary based on a specific patient's medical needs, experiences with other medication and reaction to the drug. (*See* Merck's Mot. at 31-35.)[8]

## CONCLUSION

For the foregoing reasons, and those set forth in Merck's opening brief, Merck's motion for judgment on the pleadings should be granted, or plaintiffs' class allegations should be stricken.

---

[8]   Plaintiffs' arguments regarding their warranty and unjust enrichment claims are no more persuasive. As other courts faced with similar prescription drug cases have recognized, such claims fail the class certification requirements for all the same reasons as fraud-based claims. *See In re Baycol Prods. Litig.*, 218 F.R.D. 197, 213-214 (D. Minn. 2003) (refusing to certify unjust enrichment and implied warranty claims for class treatment because, under either claim, the plaintiffs "would have to demonstrate that they were either injured by [the medication], or that [the medication] did not provide them any health benefits" and therefore individualized issues predominated); *In re Rezulin*, 210 F.R.D. at 68-69 (unjust enrichment claims alleged by prescription drug users cannot be tried on a classwide basis because the plaintiffs would need to demonstrate that they were harmed by the defendant's conduct, that the risks of the drug outweighed its benefits to each plaintiff and/or that the defendant's conduct inflated the price of the drug or resulted in some other inequity that would make it appropriate to transfer money to the plaintiffs – all of which "would involve issues individual to the particular class member"); *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288, 2010 U.S. Dist. LEXIS 44053 (N.D. Cal. Mar. 31, 2010) (striking plaintiff's proposed warranty class because the "implied warranty claim would require an individual determination of whether the plaintiff's [product] was fit for its ordinary purpose given that the defect could render certain [products] more inoperable than others. This is a significant concern for class certification . . . ."); *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 625 (S.D. Fla. 2008) (refusing to certify warranty claims because whether each putative class member gave the required notice of breach to the defendant was clearly "an individualized factual inquiry, as some potential class members may have provided timely notice, while others may have provided untimely notice of Defendant's alleged breach or no notice at all").

1031600v.1

Dated:  September 23, 2010

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
Nina Ramos Rose
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

23

1031600v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Reply has been served on Liaison

Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-

mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve

Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically

filed with the Clerk of Court of the United States District Court for the Eastern District of

Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord

with the procedures established in MDL 1657, on this 23rd day of September, 2010.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1031600v.1