UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DORA WILLARS,<br><br>    Plaintiff, Interpleaded Defendant, and Cross-Defendant,<br><br>v.<br><br>WAL-MART STORES, TEXAS, LLC dba WAL-MART STORES, TEXAS 2007, LLC; WAL-MART STORES, INC.; WAL-MART STORES EAST, INC. WAL-MART STORES EAST, LP; and WAL-MART LIMITED PARTNERSHIP,<br><br>    Defendants and Interpleading Plaintiffs,<br><br>COUNSEL FINANCIAL SERVICES, LLC,<br><br>    Interpleaded Defendant and Cross-Plaintiff in Interpleader. | CIVIL NO. SA-08-CA-695-OLG |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

TO:   Honorable Orlando L. Garcia
       United States District Judge

Pursuant to the Order of referral in the above-styled and numbered cause of action[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(i)(B) and rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration of the referred matters.

---

[1] Docket no. 37 (Sept. 17, 2009) (referring docket nos. 31 and 35) and docket no. 44 (Oct. 16, 2009).

## I. JURISDICTION

Upon removal, the Court has original subject matter jurisdiction of the underlying claims involving Ms. Willars and Wal-Mart based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 and 42 U.S.C. § 1441.

## II. SUMMARY OF SELECTED PROCEDURAL HISTORY

Plaintiff Dora Willars ("Ms. Willars" or "Willars") initiated this proceeding in the 407th Judicial District Court of Bexar County, Texas on June 6, 2008, when she filed an original petition docketed in Cause Number 2008-CI-08972, against Wal-Mart Stores Texas, LLC dba Wal-Mart Stores Texas 2007, LLC, Wal-Mart Stores, Inc., Wal-Mart Stores East, Inc., Wal-Mart Stores East, LP, and Wal-Mart Limited Partnership (hereafter, a times, collectively, "Wal-Mart").[2] On August 15, 2009, Wal-Mart removed Ms. Willars' case to this Court.[3] On July 30, 2009, Counsel Financial Services, LLC ("CFS") filed a motion to intervene based on its understanding that a settlement between Ms. Willars and Wal-Mart was imminent and would result in funds being paid to counsel of record for Ms. Willars, Mr. David McQuade Leibowitz ("Leibowitz") and his firm, the Law Offices of David McQuade Leibowitz, P.C. aka Law Offices of David Leibowitz and David McQuade Leibowitz, P.C. (the "Law Firm").[4] CFS represented that it had a lien against such funds pursuant to a judgment CFS obtained from the Supreme Court of the State of New York state against Leibowitz and the Law Firm in the total amount of

---

[2] Docket no. 1, exhibit A ("plaintiff's original petition").

[3] Id.

[4] Docket no. 31.

2

$5,506,180.96.[5] Accordingly, CFS sought to intervene, as the parties had not assured CFS that settlement moneys payable to Leibowitz or the Law Firm would be made directly to CFS. CFS argued its application to intervene was timely, CFS has an interest in the property or transaction that is the subject of the action, the disposition of this action may impair CFS's ability to protect its interest, and CFS's interests are not adequately represented by Wal-Mart.[6]

On August 25, 2009, CFS filed its first amended motion to intervene, presenting argument as to why it should be permitted to intervene as a matter or right and submitted a proposed complaint in intervention, to respond to the argument in Leibowitz and the Law Firm's preliminary response that the motion to intervene should be denied until such time as CFS has complied with Fed.R.Civ.P. 24 by submitting an affirmative pleading.[7] More specifically, CFS argued it was entitled to intervene as a matter of right because: its application was timely; CFS had a security interest in the accounts receivable of Leibowitz and the Law Firm and a perfected security interest in any attorney's fees and costs that will be paid to Leibowitz and the Law Firm as a part of the settlement of this case, although it acknowledged that Bexar County District Judge John Gabriel had entered an Order that the New York judgment is not entitled to full faith and credit in Texas, a decision then being reviewed by the Texas Fourth Court of Appeals; Leibowitz and the Law Firm had acknowledged that they owed some money, and at least

---

[5] Id. at 1-8.

[6] Id.

[7] Docket no. 35 at 2-3 and exhibit J.

$100,000, to CFS, irrespective of the enforceability of the New York judgment in Texas;[8] an interest in attorney's fees and costs was sufficient to support intervention; the disposition of this action could impair CFS's ability to protect its interest; and CFS's interests were not adequately represented by Ms. Willars or Wal-Mart.[9] The proposed complaint in intervention alleged, among other things, that CFS understood Leibowitz had a contingency fee with Ms. Willars and holds a contingent interest in Ms. Willars' lawsuit and in the proceeds of this action; CFS has a valid, enforeceable lien against any of the settlement funds that may be paid to Leibowitz for attorneys's fees and costs; the parties had conferred about a possible agreed order by which "the settlement proceeds will be . . . paid into the registry of the Court," "the original parties to the proceeding be dismissed," and the funds in the registry will be distributed in accordance with further orders of the Court on entitlement of fees between CFS, Plaintiff [Ms. Willars], and Leibowitz," but the parties had not yet been able to resolve issues regarding the payment of the Medicare liens.[10] Alternatively to its claim to the funds and for interpleader, CFS asserted a claim for declaratory relief asking the Court to declare:

> (a) Leibowitz is in default of the Note; (b) the funds in the registry or to be in the registry of the Court are accounts or proceeds of accounts of Leibowitz; (c) CFS has a duly perfected security interest in the accounts and proceeds of same from Leibowitz; and (d)

---

[8] Id. at 7-8. CFS states the attorney for Leibowitz and the Law Firm made this concession in a May 26, 2009 hearing held on CFS's motion to intervene in Arnold v. City of San Antonio, et al., SA-07-CA-877-XR, a case in which plaintiff, represented by Leibowitz and his law practice Leibowitz, P.C., and the remaining defendants settled their claims and CFS sought to intervene to collect any portion of the settlement funds to be paid to Leibowitz and his law practice for fees and costs (docket no. 35 at 8 citing docket no. 81 at 4-5).

[9] Docket no. 35 at 3-10.

[10] Id., exhibit J at 2-3, 5.

4

the funds in the registry or to be in the registry of the Court should be distributed in their entirety to CFS pursuant to the Security Agreement.[11]

In connection with its request for declaratory relief, CFS asked for an award of reasonable and necessary attorney's fees and costs against the Law Firm.[12]

CFS attached a number of exhibits to it amended motion, including copies of the following:[13] the February 1, 2006 security agreement between CFS and Leibowitz and the Law Firm;[14] related loan documents in which Leibowitz and the Law Firm agreed to pay the loan amount, with interest and fees;[15] relevant UCC-1 filings recorded by CFS in Texas;[16] the November 25, 2008 order and judgment CFS obtained against Leibowitz and the Law Firm on the notes and agreement in question in the Supreme Court of New York in the total amount of $5,506,800.96;[17] the January 26, 2009 ruling of Bexar County District Judge John D. Gabriel

---

[11] Id. at 6.

[12] Id.

[13] Leibowitz and the Law Firm's response did not contest the authenticity or relevancy of any of the documents. See docket no. 36.

[14] Docket no. 35, exhibit A. The agreement was dated by the notary on Feb. 24, 2006, but the agreement itself is dated Feb. 1, 2006. Id. at 24 & 27. The security agreement provides the Law of the State of New York governs the agreement "provided, however, that if any of the Collateral shall be located in any jurisdiction other than New York, the laws of such jurisdiction shall govern the method, manner and procedure for the foreclosure of the Secured Party's lien upon such Collateral and the enforcement of Secured Party's other remedies in respect to such Collateral to the extent that the laws of such jurisdiction are different from or inconsistent with the laws of New York." Id. at 24. Both Leibowitz and the Law Firm assigned all interest "now owned or hereafter acquired" including any right to a monetary payment. Id. at 28.

[15] Id., exhibit B.

[16] Id., exhibit C.

[17] Id., exhibit D. Leibowitz and the Law Firm have referred to this judgment as a "Default Judgment." See e.g., docket no. 36 at 2. The face of the New York order and judgment states, in

granting Leibowitz and the Law Firm's motion for relief from enforcement of the New York judgment on two grounds ("Defendants' default in the New York Action is . . . the result of accident or mistake;" and defendants have "established . . . meritorious defenses;"[18]) four orders of the Texas Fourth Court of Appeals setting dates for Leibowitz and the Law Firm to file a response to CFS's petition for writ of mandamus and their responsive brief on direct appeal;[19] the May 19, 2009 agreed order on CFS's cross claim in Arnold v. City of San Antonio in which the City was ordered to pay a sum certain to plaintiff, pursuant to the settlement between plaintiff and defendants, and to pay the remaining funds into the registry of the Court "to be distributed in accordance with further orders of this Court on entitlement to such fees as between C[FS . . .]

---

part: (a) Leibowitz appeared by telephone for a hearing, asked for more time to file opposition papers in response to CFS's motion for summary judgment and was granted until Nov. 13. 2008 to file such opposition papers (see docket no. 35, exhibit D at 2); (b) an attorney entered an appearance for Leibowitz and the Law Firm on Nov. 14, 2008 and was present at a Nov. 20, 2008 hearing held on CFS's motion for summary judgment (id.); and (c) at the Nov. 20, 2008 hearing, the Court granted CFS's motion for summary judgment in the amount of $5,506,800.96, including interest through Nov. 20, 2008, late fees, returned funds fees, and other costs, fees and expenses as specified (id.). Again, the judgment was entered against Leibowitz individually and David McQuade Leibowitz, P.C. (id.). The enforceability of the New York judgment in Texas was at issue in CFC's appeal pending from Judge Gabriel's order granting Leibowitz's motion to vacate the New York judgment pending in the Texas Fourth Court of Appeals.

[18] Id., exhibit E at 1-2. See note immediately above.

[19] Id., exhibits F-H. The initial order inviting a response to the petition for writ of mandamus, stated: "This court is of the opinion that a serious question concerning the relief sought requires further consideration." Id., exhibit F. Thereafter, legislative continuances were sought and approved. Id., exhibits G & H. The three orders of the Texas Fourth Court of Appeals indicate that the mandamus arises out of two Bexar County District Court civil cases, one pending in the 225th Judicial District Court and the second pending in the 285th Judicial District Court, but the mandamus concerns orders entered by Bexar County District Judge John D. Gabriel, presiding in the 131st Judicial District Court. Id., exhibits F, G, & H at 1.

6

and Plaintiff and Plaintiff's counsel;"[20] and a copy of CFS's proposed complaint in intervention with its attachments.[21]

On September 15, 2009, Leibowitz and the Law Firm filed a response to the amended motion to intervene.[22] Leibowitz and the Law Firm represented that CFS's challenge to the Bexar County District Court ruling that its New York judgment against Leibowitz was not entitled to full faith and credit in Texas was the subject of two appeals and a mandamus that were pending before the Texas Fourth Court of Appeals, as well as Leibowitz's suit for damages from CFS for allegedly interfering with Leibowitz's contracts with clients pending in Hidalgo County.[23] Further, Leibowitz and the Law Firm argued that intervention as of right was not proper because CFS's "contingent interest," a "disputed contractual right to collect under its contract with Leibowitz, was insufficient to support intervention, was not related to Ms. Willars' action against Wal-Mart, and CFS had not shown that intervention is the only way CFS can protect its interests in any sums to be paid Leibowitz and the Law Firm under the settlement.[24] Moreover, Judge Rodriguez denied CFS's motion to intervene in Arnold, finding that CFS's interest does not relate to the claims at issue between the parties in the Arnold case and that CFS

---

[20] Id., exhibit I at 1-3.

[21] Id., exhibit J.

[22] Docket no. 36.

[23] Id. at 2-3.

[24] Id. at 4-8.

had other avenues to protect its interest.[25] The response did not address the specific proposal included in the allegations of the proposed complaint in intervention that, in sum, the parties be allowed to conclude their settlement by requiring Wal-Mart to pay into the registry of this Court contested settlement moneys which then can be disbursed pursuant to the directives of the Court. Nor did the response discuss that, in Arnold, although the District Judge denied CFS's motion to intervene, the Arnold Court did require that the settlement proceeds be paid into the registry of the Court.[26] Finally, the response noted the parties had requested and received a ninety-day extension of time to file final settlement papers "to allow Leibowitz to resolve the Medicare Liens prior to funding."[27] Until the settlement is final, there are no fees (or costs) to which CFS's liens could attach.

On September 17, 2009, the District Judge referred the original and first amended motions to intervene to the undersigned and the undersigned scheduled a hearing for October 2, 2009. Upon the joint request of the parties, the hearing was re-set to October 6, 2009, and, on that date, the Court heard argument on matters related to CFS's proposed intervention. In brief, the parties discussed: (1) the making final of the settlement agreement in this case; and (2) CFS's alleged interest in moneys to be paid Leibowitz and the Law Firm in connection with the settlement of this case. Although Leibowitz argued that the amount of money he and his law

---

[25] Id. at 8; see Arnold v. City of San Antonio, SA-07-CA-877, docket no. 92, Order denying CFS's amended motion to intervene (Sept. 14, 2009).

[26] See, e.g., Arnold, SA-07-CA-877, docket no. 72 (cross claim and counterclaim of defendants (May 12, 2009)); docket no. 76 (agreed order on cross claim and counterclaim (May 19, 2009)); docket no. 88 (Order for deposit of $142,388.98 into the registry of the Court (June 12, 2009)).

[27] Docket no. 36 at 4.

8

practice(s) owe CFS is less than the amount provided in the New York judgment and otherwise contests the enforceability of the New York judgment in Texas, Leibowitz did not appear to contest that he owed CFS some money on the promissory note and security agreement in question.[28] The parties' settlement agreement in this case was contingent upon the payment by Ms. Willars to Medicare certain amounts owed ("Medicare liens").[29] The settlement had not been made final by the time of the hearing because Leibowitz and the Law Firm were attempting to negotiate an agreement with Medicare to satisfy the liens and then, once the settlement funded, to pay those liens on behalf of Ms. Willars. Leibowitz proffered that the dollar value of Ms. Willars' Medicare liens was "believed to be in excess of Ms. Willars' share of the proceeds of the Settlement Agreement."[30] Wal-Mart and Ms. Willars had reached an impasse in consummating their settlement agreement because Wal-Mart did "not want to turn the funds over to the Plaintiff before the Medicare Liens are satisfied [. . . a]nd CFS will not agree to Leibowitz holding the settlement proceeds in trust for payment of the Medicare Liens."[31] Thus, the hearing focused on how to resolve the practical impasse so that Ms. Willars' case could be settled

---

[28] Leibowitz proffered he is suing CFS in Texas state court and the damages to which he is entitled could exceed the amount he owes CFS, but, unless the New York judgment is set aside or is held by a Texas Court to be unenforceable in Texas, he presented no case authority to show enforcement of the judgment must be stayed pending the disposition of his claims against CFS.

[29] Docket no. 36 at 3.

[30] Id.

[31] Id.

9

without impairing CFS's right to argue it may be entitled to any portion of the settlement sums payable to Leibowitz and/or the Law Firm.[32]

At the conclusion of the hearing, following consideration of the written and hearing record, the undersigned issued a report on October 29, 2009, recommending that CFS's motion and amended motion to intervene be denied. Among other things, that report noted the prior ruling of Judge Rodriguez in the Arnold case and its persuasive (if not dispositive) authority (to the undersigned) regarding the resolution of CFS's application to intervene.[33] The docket sheets do not show the filing of any objections to the recommendations made in that report.

On November 2, 2009, Wal-Mart filed a complaint in interpleader against Ms. Willars and CFS.[34] In sum, Wal-Mart asserted that Ms. Willars and Wal-Mart had settled their claims and Wal-Mart wished to pay the settlement amount to Ms. Willars to allow the dismissal of all of her claims against Wal-Mart, but CFS had filed its application to intervene and Wal-Mart faced a

---

[32] In addition to amounts owed Medicare, Leibowitz or the Law Firm indicated it may owe a referral fee regarding its representation of Ms. Willars. Further, Leibowitz and the Law Firm may have incurred expenses in connection with its representation of Ms. Willars which can be reimbursed, apart from fees Leibowitz or the Law Firm have or will charge Ms. Willars in connection with legal services rendered on behalf of Ms. Willars in this case. For example, in Arnold, Leibowitz filed a motion to pay West Publishing for Westlaw research fees as well as a court reporter for deposition expenses. See SA-07-CA-877-XR, docket no. 90 (motion to pay expenses from registry of the Court (July 30, 2009)). As discussed at the hearing, it could well be that little or no money remains after the payment of liens and approved expenses. If so, as a practical matter, CFS may not wish to pursue further legal action to establish any claim to any sums remaining. In Arnold, after the District Judge denied CFS's motion to intervene, the Court denied CFS's motion to reconsider and ordered the disbursement of all funds interpleaded into the registry of the Court to counsel for plaintiff "to be distributed according to his contract of employment with his client." Id. at 4.

[33] Docket no. 45.

[34] Docket no. 47.

possibility of multiple liability. Thus, Wal-Mart wished to pay into the registry of the Court the settlement amount so it could be discharged even if CFS and Leibowitz "argue over the proper distribution of the settlement proceeds."[35] On November 9, 2009, CFS filed its answer to the complaint in interpleader and a cross-claim against Ms. Willars "for the portion of the interpleaded funds that she has contracted to pay or is otherwise determined to be obligated to pay to or for the benefit of the Leibowitz Law Firm."[36]

On December 17, 2009, Wal-Mart filed an agreed motion to dismiss all claims in Ms. Willars' case against Wal-Mart, approving the payment into the registry of the Court the interpleaded settlement funds for disbursement based on further Orders of the Court, but dismissing all of Ms. Willars' claims against Wal-Mart.[37] On December 18, 2009, the District Judge accepted the October 29 report and denied CFS' application to intervene.[38] On December 28, 2009, the Court granted Wal-Mart's agreed motion to dismiss.[39] The finance department of the District Clerk's Office has informed the undersigned that the exact amount of the check that Wal-Mart deposited into the registry of the Court pursuant to Judge Garcia's December 28, 2009 Order was $50,000.00, representing the total amount of the settlement moneys.

The only matter remaining concerns the disbursement of the settlement funds to be paid into the registry of the Court. On December 29, 2009, the undersigned filed an Order and

---

[35] Id. at 6.

[36] Docket no. 49 at 3.

[37] Docket no. 55.

[38] Docket no. 57.

[39] Docket no. 59.

Advisory, which recited aspects of the procedural history possibly relevant to a decision on the disbursement of the interpleaded funds and, as the October 29, 2009 report, discussed the precedential impact of Arnold.[40] Specifically, the Order required

> Ms. Willars, Leibowitz, the Law Firm, Wal-Mart and CFS . . . [to] . . . **show cause** and file any opposition to the Court entering an Order that – following the precedent in Arnold – would direct the Clerk of Court to (1) discharge the $50,000.00 now held in the registry of the Court, paying all funds to Ms. Willars' counsel for further distribution: (a) to fully satisfy Ms. Willars' Medicare liens (in the amount as agreed to by Medicare and Ms. Willars) and (b) according to Ms. Willars' attorney's contract of employment with Ms. Willars; and (2) close the case.[41]

On January 14, 2010, CFS filed a response to the show cause Order and opposition to the dismissal of the remaining proceedings.[42] CFS argues, in sum, that the Court "is vested with jurisdiction to determine interpleader actions, and it has a duty to exercise that jurisdiction in this case."[43] CFS argues the Court should "adjudicate CFS' pending Cross-Claim against Willars . . . [and], since no one else has appeared as a party to assert any competing interest, CFS is entitled to judgment for that portion of the interpleaded funds which constitute attorney's fees and costs owed by Willars."[44] CFS argues that intervention and interpleader are two different procedural devices and simply because CFS was not allowed to intervene does not mean that CFS cannot pursue its cross-claim against Ms. Willars in the interpleader, as diversity exists between CFS

---

[40] Docket no. 60.

[41] Id. at 12 (emphasis in original).

[42] Docket no. 61.

[43] Id. at 1.

[44] Id. at 1-2.

12

and Ms. Willars and more than $500 is in dispute.[45] No other party has filed a response to the December 29 Order to show cause which, based on Arnold, proposes dismissal of all remaining matters and disbursement of the interpleaded funds to Ms. Willars' counsel.

### III. ANALYSIS

Ms. Willars has fully and finally released Wal-Mart from all claims and Ms. Willars' and Wal-Mart have settled their dispute. Also, the Court has now formally denied CFS's motion and amended motion to intervene. The amount of money interpleaded into the registry of the Court is the sum of $50,000.00.[46] The Court now must take up the questions of the status of Wal-Mart's complaint in interpleader, CFS's cross claim against Ms. Willars in the interpleader action, and the timely and proper disbursement of interpleaded funds.

When the Court allowed the filing of CFS's complaint in interpleader, the Court had not yet entered a ruling on CFS's motion to intervene and the settlement of Ms. Willars' claims against Wal-Mart were represented to be imminent. Thus, allowing Wal-Mart to file a complaint in interpleader was a way to insure that CFS's asserted rights to any portion of the settlement funds was preserved pending the District Judge's final ruling on the amended motion to intervene. The District Judge has now denied CFS's motion to intervene.

---

[45] Id. at 3-4.

[46] At the Oct. 6, 2009 hearing, it was proffered that Leibowitz and the Firm are assisting Ms. Willars to resolve Medicare liens to be satisfied with funds payable to Ms. Willars under the settlement; of the moneys owed by Ms. Willars for legal representation, Leibowitz and the Firm are obliged to pay a twenty-five percent referral fee; and Leibowitz and the Firm reasonably estimate they might receive approximately $22,000 of the settlement moneys. See Oct. 6, 2009 hearing exhibits 1-3.

13

In Arnold, too, settlement moneys were paid into the registry of the Court while the District Judge considered CFS's argument it should be entitled to intervene in the underlying case.[47] More specifically, after CFS filed its motion to intervene in Arnold, and before the Court ruled on the intervention, settling defendants filed a combined cross-claim against CFS and counterclaim against Ms. Arnold and asked for the entry of an Order that would allow them to pay the settlement moneys into the registry of the Court so that Ms. Arnold and defendants' dispute could be dismissed.[48] As in this case, after a hearing at which, among other things, it was clear no party objected to the proposal while the Court considered CFS's application to intervene and status, the Court approved the application and the settlement moneys were paid into the registry of the Court – in effect, interpleaded[49] – and the parties' claims were dismissed pursuant to their settlement.[50] Ultimately, the District Judge in Arnold denied CFS's application to intervene. The Court in Arnold also considered – and rejected – CFS's argument that as the Court had allowed interpleader and provided that the interpleaded funds were "to be distributed in accordance with further Orders of this Court," the Court should determine the final rights CFS

---

[47] Arnold, SA-07-CA-877-XR, docket no. 76 (Agreed Order on Cross-claim against CFS, counterclaim against Ms. Arnold, and request for expedited hearing).

[48] Arnold, SA-07-CA-877-XR, docket no. 72.

[49] That the payment of the settlement funds into the registry of the Court was effectively an interpleader was acknowledged by CFS in its Sept. 18, 2009, "Motion to reconsider Order on motion to intervene and stay disbursement of *interplead[ed]* funds." See Arnold, SA-07-CA-877-XR, docket no. 94 (emphasis added). See Arnold, SA-07-CA-877-XR, docket no. 92 at 2-3 ("Defendants in the underlying lawsuit, City of San Antonio and William McManus, filed their own Responses to the Motion to Intervene, seeking to *interplead* the $250,000 agreed upon by the original parties in the settlement agreement into the Court in order to remove their responsibility in the case.") (emphasis added). See also Arnold, SA-07-CA-877-XR, docket no. 95 at 3-4.

[50] Arnold, SA-07-CA-877-XR, docket no. 76.

14

may have to any portion of the funds.[51] Rather, the Arnold Court emphasized that CFS had not cited to the Court any case in which a creditor of a lawyer intervened in a lawsuit "to enforce a security agreement" between the lawyer and the creditor.[52] Thus, the Arnold Court ordered the Clerk to discharge the funds held in the registry of the Court by paying the money to the attorney for the plaintiff, for distribution according to the attorney's contract of employment with his client, and close the case.[53] The Court denied as moot Leibowitz and the Firm's motion to disburse some interpleaded funds to pay law firm expenses.[54] Both in its Order denying CFS's application to intervene and its Order denying CFS's motion to reconsider, the Arnold Court considered and distinguished or rejected the authorities and arguments advanced by CFS;[55] CFS cites no new authorities or arguments[56] that require detailed analysis here.

CFS has filed a response to the Court's December 29 Order to show cause, but no other party objects to the disbursement of the money interpleaded into the registry of the Court as outlined in the December 29 Order. Following the District Judge's ruling, CFS's application to intervene was denied. Thus, even though the Court has jurisdiction over the *res* interpleaded into

---

[51] Arnold, SA-07-CA-877-XR, docket no. 95 at 3, 4 (Order denying CFS's motion to reconsider the denial of CFS' motion to intervene and denying a motion to stay disbursement of interpleaded funds (Oct. 2, 2009)).

[52] Arnold, SA-07-CA-877-XR, docket no. 92 at 6 and docket no. 95 at 5.

[53] Arnold, SA-07-CA-877-XR, docket no. 95 at 6.

[54] Arnold, SA-07-CA-877-XR, docket nos. 90 and 95. CFS has filed a response to the motion, objecting to any disbursement of funds from the registry to pay legal expenses. Docket no. 91.

[55] Arnold, SA-07-CA-877-XR, docket nos. 92 and 95.

[56] See docket no. 61.

15

the registry of the Court and even though CFS has filed a cross-claim against Ms. Willars "for the portion of the interpleaded funds that she has contracted to pay or is otherwise determined to be obligated to pay to or for the benefit of the Leibowitz Law Firm,"[57] if this Court follows Arnold, the Court should order the disbursement of the interpleaded funds to the law firm.

Although it is clear CFS objects to the proposed dismissal, other than the procedural distinction arising from the fact that, here, CFS has filed a cross-claim against Ms. Willars "for the portion of the interpleaded funds that she has contracted to pay or is otherwise determined to be obligated to pay to or for the benefit of the Leibowitz Law Firm,"[58] CFS has not identified any other ground on which this case may be distinguished from Arnold. In Arnold, the District Judge emphasized that CFS had not cited to the Court any case in which a creditor intervened in a lawsuit to obtain fees owed to the party's attorney. The Arnold Court ordered the Clerk to discharge the funds held in the registry of the Court by paying the money to the attorney for the plaintiff, for distribution according to the attorney's contract of employment with his client, and close the case.[59] Importantly, the Arnold Court, in response to the CFS's motion to reconsider, expressly rejected CFS' arguments that: (1) when asserting jurisdiction to disburse the

---

[57] Docket no. 49 at 3. In its Jan. 14, 2010 response to the Order to show cause, CFS argues the Court should "adjudicate CFS' pending Cross-Claim against Willars . . . [and], since no one else has appeared as a party to assert any competing interest, CFS is entitled to judgment for that portion of the interpleaded funds which constitute attorney's fees and costs owed by Willars." Docket no. 61 at 1-2. The Court notes that CFS claims an entitlement not only to the fees Leibowitz and the Firm earned in representing Ms. Willars, but also to the reimbursement the lawyer and the Firm might expect for costs incurred in furtherance of that representation.

[58] Id.

[59] Id. at 6. Specifically, the Arnold Court ruled: "The funds will flow from the registry of this Court to the originally intended party, Plaintiff's counsel, to be distributed according to his contract of employment with his client." Id.

16

interpleaded funds, the Court was indicating its "intention to determine the final rights and claims CFS may have upon the funds;" and/or (2) because the settlement funds had now been interpleaded, "'their distribution is a matter that must be decided regardless of [CFS's] intervention.'"[60] The Arnold Court made clear that it "was only asserting jurisdiction [over the interpleaded funds] to consider the interpleader claim; not to decide any alleged debt owed by Plaintiff's counsel."[61]

As Ms. Arnold, Ms. Willars owes no money to CFS. Ms. Willars has no interest in incurring legal fees to defend against CFS's cross-claim against her. Ms. Willars' interests could be prejudiced by the delay in the further disbursement of the settlement funds as those funds include moneys she will pay Medicare to satisfy Medicare liens and settle claims for medical services she received as well as any money which she may be entitled to receive personally pursuant to the settlement. As in Arnold, "there . . . [is] . . . no legal or practical impediment preventing CFS from obtaining a judgment against Respondents in another action."[62] As reflected in the summary of the procedural history of this case, in connection with the October hearing on CFS's amended motion to intervene, the parties presented information on the status of then-pending litigation in state courts of Texas addressing CFS's ability to enforce the security agreements between CFS and Leibowitz. The parties have not provided the Court with up-dated information on the status of that state litigation since the October hearing. To the point, CFS has

---

[60] Arnold, SA-07-CA-877-XR, docket no. 95 at 3-4 (citation omitted).

[61] Id. at 4. ("Also, as *CFS may still protect its security interest* against Plaintiff's counsel by bringing suit against Leibowitz and/or Leibowitz P.C., intervention is not appropriate.") (citation omitted; emphasis in original).

[62] Arnold, SA-07-CA-877-XR, docket no. 92 at 6-7 (citation omitted).

17

not argued or demonstrated that this Court's disposition of CFS's proposed intervention and cross-claim against Ms. Willars will prevent CFS from pursuing pending civil actions addressing its ability to enforce its security agreements with Leibowitz.[63] "As the subject of the underlying case is not the *disputed* debt between CFS and respondents, but rather Plaintiff's counsel's compensation for the alleged acts of Defendants, there is scant basis to support anything other than a *prospective* ability to collect on a *potential* debt."[64]

In sum, Arnold is binding precedent for the undersigned; CFS has advanced no argument in its response to the December 29 Order to show cause that would allow the undersigned to conclude otherwise or to distinguish the analysis. If the District Judge to whom this case is assigned follows Arnold, the Court should enter an Order to direct the Clerk of Court to: (1) discharge the $50,000.00 now held in the registry of the Court, paying all funds to Ms. Willars' counsel for further distribution according to Ms. Willars' attorney's contract of employment with Ms. Willars and fully satisfy Ms. Willars' Medicare liens (in the amount as agreed to by Medicare and Ms. Willars); and (2) close the case.[65]

## IV. RECOMMENDATIONS

Based upon the foregoing analysis, it is recommended that the Court should enter an Order to direct the Clerk of Court to: (1) discharge the $50,000.00 now held in the registry of the Court, paying all funds to Ms. Willars' counsel for further distribution according to Ms. Willars' attorney's contract of employment with Ms. Willars and fully satisfy Ms. Willars' Medicare liens

---

[63] See id. at 6.

[64] Id. at 7 (emphasis added).

[65] See note 59, above.

18

(in the amount as agreed to by Medicare and Ms. Willars); (2) dismiss CFS's cross-claim against Ms. Willars "for the portion of the interpleaded funds that she has contracted to pay or is otherwise determined to be obligated to pay to or for the benefit of the Leibowitz Law Firm;"[66] and (3) close the case.

## V. INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.

As provided in 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within **14 days** after being served with a copy, unless this time period is modified by the District Court. A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a de novo

---

[66] Docket no. 49 at 3.

19

determination by the District Court.[67] Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[68]

**ORDERED, SIGNED** and **ENTERED** this 19th day of January, 2010.

*/s/ Pamela A. Mathy*
PAMELA A. MATHY
UNITED STATES MAGISTRATE JUDGE

---

[67] See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).

[68] Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir.1996).