IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE VIOXX PRODUCTS LIABILITY LITIGATION | § § § | MDL No. 1657<br>Section L |

**COUNSEL FINANCIAL SERVICES, LLC'S MEMORANDUM IN OPPOSITION TO THE LEIBOWITZ PARTIES' MOTION TO ABSTAIN AND/OR MOTION TO DISMISS OR ABATE THE ATTORNEY FEE LIEN CLAIM (DOCUMENT NO. 53883)**

TO THE HONORABLE U.S. DISTRICT COURT JUDGE ELDON E. FALLON:

NOW COMES Counsel Financial Services, LLC ("**CFS**") and files this Memorandum in Opposition to the Leibowitz Parties' Motion to Abstain and/or Motion to Dismiss or Abate the Attorney Fee Lien Claim (Document No. 53883) (the "**Motion to Abstain**"), respectfully showing as follows:

### I. Summary

1.  Abstention (or its cousin, discretionary stay) under the *Colorado River* doctrine is not available under these facts. Resolution of this lien dispute by private dispute resolution process was contractually agreed to by David McQuade Leibowitz, P.C. d/b/a Law Offices of David Leibowitz, P.C. (the "**Leibowitz Firm**") and David McQuade Leibowitz ("**Mr. Leibowitz**") (collectively, the "**Leibowitz Debtors**") when they elected to enroll in the VIOXX settlement program created under the Settlement Agreement dated November 9, 2007 and entered in this MDL (the "**VIOXX MDL Settlement Agreement**"). The fact that this Honorable Court is involved in the private dispute resolution process is not a basis for abstention under *Colorado River*, which can only possibly apply when there are parallel proceedings in federal and state courts. Even if the *Colorado River* doctrine could apply, its application here is not warranted because of the complete absence of the "clearest of justifications" and the complete absence of "exceptional circumstances," both of which are necessary for the extraordinary relief sought by the Leibowitz Debtors.

## II. Factual Background

2.      CFS is an assignee, secured creditor, and judgment creditor of the Leibowitz Debtors. That is beyond dispute. The Leibowitz Debtors themselves admit to borrowing over $4.5 million from CFS since 2004. *See* Memorandum in Support of Motion to Abstain (Document No. 53883-1) at ¶ 1.1.

3.      In fact, CFS loaned money to the Leibowitz Firm pursuant to that certain Revolving Promissory Note dated as of August 31, 2007, in the principal amount of $5,005,845.45 (the "**Principal Amount**") payable to CFS and acknowledged by Mr. Leibowitz in his capacity as President of the Leibowitz Firm (the "**Note**"). A true and correct copy of the Note is attached hereto as **Exhibit A**.

4.      The Note amended and restated the following Revolving Promissory Notes executed by the Leibowitz Firm: (1) a note in the maximum principal amount of $3,500,000.00 dated as of February 1, 2006; (2) a first amended and restated note in the maximum principal amount of $4,500,000.00 dated as of September 25, 2006; (3) a second amended and restated note in the maximum principal amount of $4,600,000.00 dated as of May 4, 2007; and (4) a third amended and restated note in the maximum principal amount of $4,700,000.00 dated as of May 18, 2007.

5.      The Note is secured by that certain Amendment No. 4 to the Security Agreement, executed by Mr. Leibowitz, in his individual capacity and as President of the Leibowitz Firm. Amendment No. 4 to the Security Agreement amended and restated the original Security Agreement to which CFS and the Leibowitz Debtors are parties, dated February 1, 2006, and as amended on September 25, 2006, May 4, 2007, and May 18, 2007 (collectively, the "**Security Agreement**"). A true and correct copy of the latest Security Agreement is attached hereto as **Exhibit B**.

6.      The Security Agreement covers personal property, including but not limited to the Leibowitz Firm's accounts and accounts receivable, and all attorneys' fees and reimbursed expenses owing in connection with any representation by the Leibowitz Debtors (the "**Collateral**").

7.  Pursuant to the Security Agreement, the Leibowitz Firm not only granted CFS a security interest in the Collateral, which CFS duly perfected by, among other actions, filing with the Texas Secretary of State; but they also assigned the Collateral to CFS. Paragraph 2 of the Security Agreement reads:

> **GRANT OF SECURITY INTEREST**. To secure the payment and performance of the Obligations, **the [Leibowitz Firm]** grants to [CFS] a security interest in and **assigns**, pledges and hypothecates **to [CFS] the Collateral**. Each Security Interest is a continuing, absolute and unconditional security interest or other lien.

*See* Exhibit B at ¶ 2 (emphasis added).

8.  The Note is further secured by that certain Guaranty of Payment and Performance, executed by Leibowitz in his individual capacity (the "**Guaranty**"). A true and correct copy of the Guaranty is attached hereto as **Exhibit C**.

9.  Pursuant to the Note, Security Agreement and Guaranty (collectively, the " **Loan Documents**"), the Leibowitz Debtors agreed to repay the Principal Amount to CFS with interest and fees, if any. The Leibowitz Firm defaulted under the Loan Documents for failure to pay the Note in accordance with its terms. Mr. Leibowitz has likewise defaulted on his obligations under the Guaranty.

10. On or about August 29, 2008, CFS initiated an action in a New York state court against the Leibowitz Debtors. Mr. Leibowitz made an initial appearance in the New York action on behalf of himself and the Leibowitz Firm. During this appearance before the New York state court, Mr. Leibowitz sought and was granted additional time to file an opposition to the summary judgment motion.

11. On or about November 25, 2008, a hearing on the summary judgment motion was held. The Leibowitz Debtors were represented at the hearing by New York counsel, Bruce S. Zeftel. At the conclusion of the hearing, CFS was awarded a final summary judgment against the Leibowitz

Debtors in the amount of $5,506,180.96 (the "**New York Judgment**"). A true and correct copy of the New York Judgment is attached hereto as **Exhibit D**. The Leibowitz Debtors' attempts to appeal the New York Judgment have been met by failure at each step.

12. On December 2, 2008, CFS domesticated the New York Judgment in Texas (the "**Texas Judgment**") pursuant to the UNIFORM ENFORCEMENT OF FOREIGN JUDGMENTS ACT, Chapter 35 of the TEXAS CIVIL PRACTICES & REMEDIES CODE. Under Texas law, the domestication action automatically and immediately resulted in a judgment against the Debtors (the "**Texas Judgment**"). *See Walnut Equipment Leasing Co., Inc. v. Wu*, 920 S.W.2d 285, 286 (Tex. 1996).

13. On December 29, 2008, the Leibowitz Debtors filed a Motion for Relief from Enforcement of Foreign Judgment. The trial court refused to enforce the Texas Judgment and unjustifiably ordered the New York court to give the Leibowitz Debtors a new trial. On February 10, 2010, however, the San Antonio Court of Appeals reversed the trial court and rendered judgment that the New York Judgment is "entitled to full faith and credit and is fully enforceable in Texas." *See Counsel Fin. Servs., LLC v. David McQuade Leibowitz, P.C.*, 311 S.W.3d 45, 57 (Tex. App. – San Antonio 2010, pet. denied). This resulted in the immediate reinstatement of the Texas Judgment. *See Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 393 (Tex. 2009).

14. On August 20, 2010, the Texas Supreme Court denied the Leibowitz Debtors' petition for review in a decision without published opinion. *See Leibowitz v. Counsel Financial Servs., LLC*, Case No. 10-0358, 2010 Tex. LEXIS 588 (Tex. 2010). A true and correct copy of this order is attached hereto as **Exhibit E**. On October 15, 2010, the Texas Supreme Court denied the Leibowitz Debtors' motion for rehearing of petition for review. *See Leibowitz v. Counsel Financial Servs., LLC*, Case No. 10-0358, 2010 Tex. LEXIS 778 (Tex. 2010). A true and correct copy of this order is attached hereto as **Exhibit F**.

15. In accordance with the law, the Loan Agreements, the VIOXX MDL Settlement Agreement, Pretrial Order 47A (Document No. 30190) ("**PTO 47A**"), and Order Dated March 18, 2010 (Document No. 37739), CFS has notified various parties owing money to the Leibowitz

Debtors of its security interest and assignment, including but not limited to the notice that was provided to Special Master Juneau.

16. In addition, CFS has intervened in certain actions to protects its rights in the Collateral. The Leibowitz Debtors subsequently and strategically intervened into at least two of these lawsuits.

17. In *Anzaldua v. K-Mart Corporation*, Cause No. C-856-06-G, in the 370th Judicial District Court of Hidalgo County, Texas (a personal injury case to which the Leibowitz Debtors refer as the "**Texas State Court Case**"), CFS intervened to protect its Collateral. Thereafter, the Leibowitz Debtors also intervened and launched a collateral attack on the New York judgment by, among other things, asserting for the first time manufactured claims for money damages, declaratory relief, and injunctive relief against CFS.

18. On March 19, 2010, a hearing on the Leibowitz Debtors' application for temporary injunction in the Texas State Court Case was heard without proper notice and over the objection of CFS. During the hearing, the Leibowitz Debtors actually argued to the court that the bond for the requested injunction should be nominal because CFS had somewhere between $375,000 and $425,000 of security in the form of attorneys' fees due to the Leibowitz Debtors that were in the registry of this VIOXX MDL Court. A true and correct copy of the relevant portions of the hearing transcript is attached hereto as **Exhibit G**. In fact, the state court order granting the temporary injunction recites there is over $400,000 on deposit with the VIOXX MDL Court and purports to restrain this very Court from distributing these funds except upon order of the Hidalgo County district court which, of course, is inherently void as an encroachment upon the authority of the federal judiciary.[1] A true and correct copy of the Order Granting Temporary Injunction (which is under appeal) is attached hereto as **Exhibit H**.

---

[1] *See, e.g., General Atomic Co. v. Felter*, 434 U.S. 12, 16, 54 L. Ed. 2d 199, 98 S. Ct. 76 (1977); *Meridian Investing & Development Corp. v. Suncoast Highland Corp.*, 628 F.2d 370, (5th Cir. 1980); *Leake v. Merrill Lynch, Pierce, Fenner & Smith*, 213 A.D.2d 155, 156 (N.Y. App. 1st Div. 1995); *Ex Parte Evans*, 939 S.W.2d 142, 143-44 (Tex. 1997). This is especially so here because the United States District Court for the Eastern District of Louisiana already has in rem jurisdiction over the attorneys' fees to the exclusion of any of court, state or federal. *Id.*

19.     CFS appealed the state court's entry of the Order Granting Temporary Injunction to the Thirteenth Court of Appeals, and CFS also filed a Motion for Emergency Temporary Relief with the Thirteenth Court of Appeals. On May 10, 2010, the Thirteenth Court of Appeals issued an Order Granting CFS's Motion for Emergency Relief and modified the injunction pending determination of the appeal. A true and correct copy of the Thirteenth Court of Appeals' May 10, 2010 Emergency Order is attached hereto as **Exhibit "I."** Oral argument on the merits of this appeal is scheduled for October 28, 2010.

20.     Virtually no activity has taken place in the Texas State Court Case. At the outset, CFS filed a number of motions, all of which remain pending without decision, including: (1) Motion to Transfer Venue; (2) Second Motion to Transfer Venue; (3) Plea to Jurisdiction; (4) Motion to Strike Intervention; and (5) Motion to Dismiss for Forum-Selection Clause. The Motion to Transfer Venue has been heard, but the state court has failed to enter any order despite the passage of many months. Under unique Texas procedural law (known as the due-order-of-pleadings rule), a motion to transfer venue must be heard and ruled upon prior to the hearing of any other motion. *See* TEX. R. CIV. P. 86(1). Therefore, the state court's refusal to rule upon the motions to transfer venue means that virtually no other activity has occurred in the case other than the entry of the temporary injunction, which is the subject of a pending interlocutory appeal (set for oral argument on October 28, 2010). The Texas State Court Case is no where near ready for trial.

21.     On November 25, 2009, CFS also filed suit against the Leibowitz Debtors in Case No. 09-CV-1025 in the United States District Court for the Western District of New York. A true and correct copy of the Complaint is attached hereto as **Exhibit J**. The basis for the suit was the Leibowitz Debtors' additional post-judgment breaches of the Loan Documents, including the Leibowitz Debtors' attempts to collaterally attack and litigate in forums (i.e., Hidalgo County, Texas) other than those specified in the Loan Documents (i.e., Erie County, New York).

22. On August 25, 2010, CFS also had the New York Judgment domesticated and made executory in the Civil District Court, Orleans Parish, Louisiana, Docket No. 10-8699. A true and correct copy of said Louisiana Judgment is attached hereto as **Exhibit K**.

### III. Arguments & Authorities

#### A. This Lien Claim is Subject to Private Dispute Resolution Before Special Master Juneau

23. On November 9, 2007, the VIOXX MDL Settlement Agreement (the "**Settlement Agreement**") was entered in this MDL action and established a pre-funded, structured private settlement program to resolve, in lieu of further litigation, the claims of all Eligible Claimants who elected to participate (the "**Program**"). *See* Settlement Agreement at p. 2, Recital E. CFS requests the Court to take judicial notice of the existence and terms of the Settlement Agreement.[2]

24. Section 8.1.1 of the Settlement Agreement reads:

> Each Party and, by submitting an Enrollment Form, each Program Claimant and Enrolling Counsel, agrees that authority over the process contemplated by the Program, including Claims submitted under the Program, resides with those Persons appointed pursuant to this Agreement to exercise that authority, as such authority is specified in this Agreement.

*See* Settlement Agreement at p. 33.

25. "Enrolling Counsel" is defined as "any lawyer or law firm who files an Enrollment Form." *See* Settlement Agreement at p. 56, § 17.1.25. The Leibowitz Debtors fall within the purview of this definition. The only reason the attorneys' fees at issue in this dispute even exist is because the Leibowitz Debtors filed Enrollment Forms for at least 17 of their clients to seek recovery under the terms of the Settlement Agreement. *See* **Exhibit L**, true and correct copy of Brown Greer Email and Attachment Identifying Claimants Enrolled by the Leibowitz Debtors. Therefore, the Leibowitz Debtors voluntarily submitted to the dispute resolution procedures outlined in the Settlement Agreement.

---

[2] Available here: http://www.browngreer.com/vioxxsettlement/images/pdfs/mastersa.pdf

26. On December 17, 2009, this Court entered Pretrial Order 47A (Document No. 30190) ("**PTO 47A**"), which applies to any claim asserted against the attorneys' fees portion of a Vioxx Settlement Payment. Paragraph 9 of PTO 47A reads in part:

> A Lien Claimant, Primary Counsel, or Pro Se Claimant may submit to this Court for resolution under Section 8.1.2 and Section 8.1.3 of the Settlement Agreement any Fee Lien not resolved by agreement among the parties. Each Lien Claimant is deemed to have consented to the resolution of the Fee Lien under Section 8.1.2 and Section 8.1.3 of the Settlement Agreement.

27. A "Lien Claimant" is defined to include a party that asserts a claim against the attorneys' fees portion of a Vioxx Settlement Payment. *See* PTO 47A at ¶ 1. Because CFS filed a claim to the attorneys' fees payable to the Leibowitz Debtors, CFS constitutes a "Lien Claimant" within the meaning of PTO 47A.

28. Section 8.1.2 of the Settlement Agreement reads:

> ...any dispute that arises under or otherwise in connection with (i) this Agreement and/or any Program Claim and/or (ii) any other Administrative Agreement under which disputes are agreed to be handled in the manner set forth in this Article 8, shall be submitted to the [Honorable Eldon E. Fallon[3]] who shall sit as a binding arbitration panel and whose decision shall be final, binding and Non-Appealable. If any such dispute is brought to the [Honorable Eldon E. Fallon], each party who has a stake shall have 15 days (or as the [Honorable Eldon E. Fallon] shall otherwise order) to submit papers and supporting evidence and be heard on oral argument if the [Honorable Eldon E. Fallon] desires oral argument.

*See* Settlement Agreement at p. 33.

29. Section 8.1.3 of the Settlement Agreement reads:

> If the [Honorable Eldon E. Fallon] concludes, for whatever reason, that he should not determine an issue arising under this Agreement or otherwise in connection with this Agreement and/or any Program Claim, the Special Master shall sit as a binding arbitration panel to decide the issue.

---

[3] On January 17, 2008, the Amendment to Settlement Agreement (the "**First Amendment**") was entered. CFS requests the Court to take judicial notice of the existence and terms of the First Amendment, which is available at http://www.browngreer.com/vioxxsettlement/images/pdfs/amend_msa.pdf . Pursuant to Section 1.2.1 of the First Amendment, all references in the Settlement Agreement to "Chief Administrator" were amended to read "Honorable Eldon E. Fallon", which was defined pursuant to Section 1.2.10 to mean "the Honorable Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana." *See* First Amendment at pp. 1-2.

*See* Settlement Agreement at p. 33. The "Special Master" is defined as the Person or Persons from time to time appointed by the [Honorable Eldon E. Fallon.]" *See* Settlement Agreement a p. 63, § 17.1.83. The Special Master that was appointed here is Patrick A. Juneau. *See* Order (Document No. 13228) Dated January 14, 2008; Order (Document No. 37739) Dated March 19, 2010.

30. The March 19, 2010, Order (Document No. 37739) confirms that the Honorable Eldon E. Fallon has elected not to determine this attorney fee lien dispute and has instead delegated this task to Special Master Juneau pursuant to Section 8.1.3 of the Settlement Agreement. CFS has complied with all requests of Special Master Juneau and CFS was prepared to attend the final hearing scheduled for 9:00 a.m., October 25, 2010, in New Orleans. *See* **Exhibit M**, true and correct copy of June 16, 2010, Letter from Special Master Setting Deadlines for Arbitration (the "**Special Master Letter**"). The hearing was continued by order of the Court (Document No. 54124) after the Leibowitz Debtors filed their Motion to Abstain and/or Motion to Dismiss or Abate the Attorney Fee Lien Claim (Document No. 53883).

31. The Leibowitz Debtors cannot avoid their obligation to resolve this dispute before Special Master Juneau, which they voluntarily assumed by enrolling in the Program established by the Settlement Agreement. "The *Colorado River* doctrine applies only when there are pending parallel proceedings **in federal and state court** involving the same parties and issues." *Nationstar Mortg., LLC v. Knox*, 351 Fed. Appx. 844, 851 (5th Cir. 2009) (emphasis added). Here, the proceeding for which the Leibowitz Debtors seek abstention is a private dispute resolution process that is being administered by a special master appointed by a federal judge.[4] The *Colorado River*

---

[4] As Mr. Arnold Levin, an architect of the VIOXX MDL Settlement Agreement described it, "We've come up with something that probably is the prototype for how to handle these cases in the future, and it's quasi. There is a jurisdictional input from the judiciary, and there is a private contract that allows for a meeting of the minds between the defendants and the plaintiffs who accept the contract, and as a result, the aftermath of this particular settlement will not give rise to the second rounds of litigation that other settlements have and class actions have, because, in essence, what we have here is a private contract administered as a private contract with input from the judiciary. Those that go into this contract go in knowing full well what the terms of the contract are, and they are bound by the contract, and there will not be appellate appeals to the Fifth Circuit, to the Supreme Court, and various hearings because everything is spelled out with specificity." *See* Transcript of November 9, 2007, Status Conference at 13:9-23 (emphasis added), available at http://vioxx.laed.uscourts.gov/Transcripts/11-9-07.pdf.

doctrine simply has no application to these facts.[5]

**B. Extraordinary Doctrine of Abstention Not Warranted Under *Colorado River***

32. Again, the *Colorado River* doctrine applies only when there are pending parallel proceedings in federal and state court involving the same parties and issues. *Nationstar Mortg., LLC*, 351 Fed. Appx. at 851. The doctrine rests on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. *Id.* Notwithstanding, the doctrine applies only in exceptional circumstances, and only the clearest of justifications will warrant abstention. *Id.*

33. There are six factors for determining whether exceptional circumstances exist to warrant abstention. They are: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Id.* No single factor is necessarily determinative. *Id.* Nevertheless, in assessing whether abstention is warranted, the balance should be heavily weighted in favor of the exercise of jurisdiction. *Shermohmad v. N.Y. Life Ins. Co.*, Civil Action No. 05-6072 Section "L" (2), 2006 U.S. Dist. LEXIS 61546 at *7 (E.D. La. 2006).

34. The first factor – assumption of res – militates against abstention. This Court presided over complex multi-district litigation that culminated in the entry of the Settlement Agreement. Though no court has assumed jurisdiction over the res in dispute here, this Court has accepted its role to administer and facilitate the terms of the Settlement Agreement, including the

---

[5] For these same reasons, the Leibowitz Debtors' contentions (Memorandum in Support of Motion to Abstain at, e.g., ¶ 1.8) that CFS has attempted to intervene miss the mark. CFS does not seek to intervene and has no need to intervene in the VIOXX MDL. Though styled as a standing argument (Memorandum in Support of Motion to Abstain at, e.g., ¶ 2.3), the associated collateral estoppel argument fares no better. CFS has invoked the private dispute resolution process to which the Leibowitz Debtors contractually agreed by enrolling their clients in the Program under the Settlement Agreement. Regardless, CFS is entitled under NY UCC 9-406 and 9-607, and/or TEX. BUS. & COM. CODE §§ 9.406 and 9.607 to notify Special Master Juneau of the Leibowitz Debtors' assignment of attorneys' fees to CFS and request direct payment.

role of the Honorable Eldon E. Fallon or upon his designee, Special Master Juneau, in hearing and resolving attorney fee lien disputes such as this.

35. The second factor – relative inconvenience of the fora – militates against abstention. Contrary to the Leibowitz Debtors' contention, Hidalgo County, Texas is not a convenient forum for any party to this dispute. The Leibowitz Debtors reside in Bexar County, Texas, which is over 230 miles from Hidalgo County, Texas. Hidalgo County, Texas is not local for them. From CFS' perspective, New Orleans is a far more convenient forum. Not only is New Orleans over 600 miles closer to CFS' principal place of business in Amherst, Erie County, New York, but New Orleans is also serviced by a modern airport with a wide selection of routes and flights, including numerous flights from the residence of the Leibowitz Debtors and CFS. The Hidalgo County Courthouse is located in Edinburgh, Texas. Edinburgh has no large commercial airport. It is only accessible by small plane at the regional McAllen Airport,[6] or at the Valley International Airport in Harlingen, Texas,[7] which is still approximately 40 miles away from Edinburgh. More importantly, CFS has challenged the propriety of the forum in Hidalgo County, Texas. As noted previously, CFS has filed two motions to transfer venue of the Texas State Court Case to Bexar County, Texas for multiple reasons, including that the Hidalgo County court lacks subject-matter jurisdiction to entertain the claims the Leibowitz Debtors have asserted. The first Motion to Transfer Venue has been pending since March 19, 2010, with no ruling.[8] In addition, once the Texas State Court Case has been transferred to Bexar County, Texas, CFS intends to move for dismissal of the entire case based upon the mandatory forum-selection clause designating Erie County, New York as the exclusive forum

---

[6] Flight schedules are posted here: http://www.mcallenairport.com/flights.aspx

[7] Flight schedules can be found here: http://www.flythevalley.com/

[8] CFS filed its Second Motion to Transfer Venue on October 26, 2010, to address a new claim pled by Leibowitz for the first time on August 31, 2010. The new claim under the Texas Finance Code provides for mandatory venue in Bexar County (San Antonio) Texas - not Hidalgo County.


for the claims of the Leibowitz Debtors.[9] These challenges, and the unlikelihood that this dispute even remains in Texas (much less Hidalgo County, Texas), counsel against abstention.

36.     The third factor – avoidance of piecemeal litigation – militates against abstention. To protect its collateral, CFS has been and will in the future be forced to appear in whatever jurisdictions its collateral may be situated.[10] Although the Leibowitz Debtors have, for a time, obtained an improper anti-suit and anti-execution injunction (which was modified by emergency action of the Thirteenth Court Appeals and which is set for oral argument on the merits on October 28, 2010), there will still be a need for CFS to appear in the jurisdictions in which its collateral may be situated, even if the Leibowitz Debtors were to prevail in their lawsuit. The fact remains that a $5.5 million plus judgment exists in favor of CFS against the Leibowitz Debtors, which has been upheld time and time again on numerous appeals. CFS has the right and will continue to undertake efforts to collect on its judgments and under its other agreements with the Leibowitz Debtors. The Leibowitz Debtors' arguments on this score regarding defenses and offsets are without merit. First, the Leibowitz Debtors had an adequate remedy available under Texas law to suspend enforcement of the judgment, e.g. posting a bond. The Leibowitz Debtors have failed to avail themselves of these remedies. Second, long-established Texas law holds a judgment debtor cannot offset an unliquidated claim against a judgment, which is exactly what the Leibowitz Debtors' are attempting to do here. *See, e.g., Castle Tex. Prod. Ltd. P'ship v. Long Trusts*, 161 S.W.3d 673, 674-75 (Tex. App. – Tyler 2005, no pet.); *Howard v. Randolph*, 11 S.W. 495, 496-97 (Tex. 1889).

37.     The fourth factor – the order in which jurisdiction was obtained by the concurrent fora – is not applicable (or to the extent otherwise, it at least militates against abstention). As noted above, the attorney fee lien dispute is not pending as an ordinary matter before this Court. Instead, it is pending in the private dispute resolution process being overseen by this Court. <u>Here, CFS</u>

---

[9] Unlike the Leibowitz Debtors, CFS is entitled under the forum-selection clauses to bring suit in any jurisdiction where its collateral may be found, including in the Eastern District of Louisiana.

[10] This, of course, assumes the Leibowitz Debtors continue with their current pattern of secreting collateral and refusing to voluntarily pay their admitted debts.

asserted its attorney fee lien claim in the VIOXX proceeding at least as far back as May 13, 2009. *See* **Exhibit N**, true and correct copy of CFS Letter Dated May 13, 2009. It was nearly five months later when the Leibowitz Debtors first intervened and asserted claims against CFS in the Texas State Court Lawsuit on October 7, 2009. *See* **Exhibit O**, true and correct copy of file stamped first page of Leibowitz Debtors' Mis-Named Original Answer & Counterclaim. For purposes of this factor, priority should also be evaluated based upon how much progress has been made in the two actions. *Shermohmad*, 2006 U.S. Dist. LEXIS 61546 at *9 (E.D. La. 2006). Unfortunately, there is no quick end in sight for the Texas State Court Action. Not even the preliminary motions going to venue and jurisdiction have been determined yet, and they have been pending for over seven (7) months. An interlocutory appeal is currently pending to challenge the temporary injunction. A right of interlocutory appeal and of mandamus also exist for the denial of the venue motions and the motion to dismiss based upon the forum-selection clause, both of which will be invoked if necessary. On the other hand, the final hearing on attorney fee lien dispute with respect to the VIOXX attorneys fees would have already occurred on October 25, 2010, but for the Leibowitz Debtors' filing of the Motion to Abstain. All deadlines specified in the Special Master Letter (**Exhibit M**) have passed, and the parties have already exchanged and submitted all memoranda, briefing replies, and trial exhibits to Special Master Juneau. This lien dispute is ready to be determined in this proceeding now. The only items left are the hearing and issuance of a decision.

      38.      The fifth factor – the extent federal law provides the rules of decision on the merits – also militates against abstention. "The presence of a federal law issue must always be a major consideration weighing against surrender of jurisdiction, whereas the presence of state law issues weighs in favor of surrender only in rare circumstances." *Shermohmad*, 2006 U.S. Dist. LEXIS 61546 at *10 (E.D. La. 2006). Though state law normally governs contract principles, the contract at issue here – the Settlement Agreement – was entered to resolve a massive MDL products liability case pending before this Court. The Settlement Agreement must also be evaluated alongside PTO

47A, which is an order entered by this Court. This Court's interpretation of its own orders, along with a contract entered to resolve a MDL pending before this Court, weigh against abstention.

39. The sixth factor – the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction – militates against abstention. "<u>This factor can only be a neutral factor or one that weighs against, not for, abstention.</u>" *Shermohmad*, 2006 U.S. Dist. LEXIS 61546 at *11 (E.D. La. 2006). The Texas State Court Case offers no protection to CFS. First, the Hidalgo County, Court lacks jurisdiction to even entertain most of the claims. Second, a Texas state court has no ability to attach property beyond the boundaries of Texas. Third, a Texas state court has no authority over a federally-administered settlement of a federal MDL lawsuit. If CFS' rights to the private dispute resolution process are removed under the notion of abstention, then the Leibowitz Debtors will do as they have in all other cases – abscond with the collateral that belongs to CFS.

**C. Discretionary Stay Not Available and Is Unwarranted**

40. Relying on *PPG Indus., Inc. v. Continental Oil Co.*, 478 F.2d 674, 679 (5th Cir. 1973), the Leibowitz Debtors contend federal courts have discretionary power – apparently distinct from that of *Colorado River* abstention – to stay a federal action in deference to a parallel state action. *See* Memorandum in Support of Motion to Abstain (Document No. 53833-1) at ¶ 2.4.1. A closer read and review of subsequent opinions reveals this contention to be without merit.

41. The holding of *PPG Industries* was this: "in an equity suit, the federal district court has discretionary power to stay its hand pending the outcome of a parallel state action." *Id.* at 681. Because the attorney fee lien dispute at issue here is legal – not equitable – in nature, *PPG Industries* has no application.

42. More importantly, recent decisions of the Fifth Circuit demonstrate that the same considerations at issue with *Colorado River* abstention apply with equal force to a decision to stay litigation in favor of a pending state court case. *See, e.g., Trent v. Nat'l City Bank of Ind.*, 145 Fed. Appx. 896, 898 (5th Cir. 2005) ("[W]hen an action also involves a demand for monetary or other relief, the district court's discretion to dismiss the suit is 'narrowly circumscribed' and the propriety

is governed by the broader 'exceptional circumstances' standard articulated in *Colorado River*[.]"); *New England Ins. Co. v. Barnett*, 561 F.3d 392, 394-95 (5th Cir. 2009) (noting that *Brillhart* standard may be used to stay a purely declaratory judgment action, but *Colorado River* abstention factors must be applied otherwise). The only other case the Leibowitz Debtors cite in support of their position – *Jackson v. Dep't of Public Safety* – recognizes this very principle. 562 F. Supp. 2d 324, 328 (M.D. La. 1983) ("But because the staying of a federal action often has the same practical effect as a dismissal, the same considerations present in a *Colorado River* abstention-type case are likewise applicable to a decision of whether or not to stay a federal action.").

43. For the same reasons that abstention is not appropriate under *Colorado River*, a discretionary stay of these proceedings is likewise improper.

### IV. Prayer

**WHEREFORE, PREMISES CONSIDERED,** CFS prays the Court deny the Leibowitz Debtors' Motion to Abstain (Document No. 53883), dissolve the Order (Document No. 54124) staying the hearing before the Special Master, order the Special Master to reset the hearing without delay, and award CFS all such other and further relief, both general and special, at law or in equity, to which CFS may be entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: _____
Elliott S. Cappuccio
Texas State Bar No. 24008419
ecappuccio@pulmanlaw.com
Lance H. "Luke" Beshara
Texas State Bar No. 24045492
lbeshara@pulmanlaw.com

**ATTORNEYS FOR COUNSEL FINANCIAL SERVICES, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2010, a true and correct copy of the above and foregoing Memorandum in Opposition to the Leibowitz Parties' Motion to Abstain and/or Motion to Dismiss or Abate the Attorney Fee Lien Claim (Document No. 53883) was transmitted in accordance with the requirements of the FEDERAL RULES OF CIVIL PROCEDURE, addressed as follows:

*__Certified Mail # 7009 1680 0002 0189 6355:__*
Mr. Peter J. Stanton
Law Offices of Peter J. Stanton
111 Soledad, Suite 1350
San Antonio, Texas 78205

*__Certified Mail #7009 1680 0002 0189 6362:__*
Mr. David McQuade Leibowitz
Law Offices of David McQuade Leibowitz, PC
6243 IH 10 West, Suite 1000
San Antonio, Texas 78201

_____
Elliott S. Cappuccio