# FOURTH AMENDED AND RESTATED
## REVOLVING PROMISSORY NOTE
### Counsel Financial Services LLC

Delivered in Buffalo, New York

$5,005,845.45 US
September  , 2007
As of 8|31|07

1.    **DEFINITIONS.** For purposes of this Note:

a.    **Borrower.** The "Borrower" means David McQuade Leibowitz, P.C., a Texas professional corporation, having an office located at 2000 Riverview Towers, 111 Soledad, San Antonio, TX 78205.

b.    **Collateral.** "Collateral" means any collateral, subordination, guaranty, endorsement or other security or assurance of payment, whether now existing or hereafter arising or accruing, that now or hereafter secures the payment of or is otherwise applicable to any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note and remaining unpaid.

c.    **Credit.** The "Credit" means a revolving credit facility made available by the Lender to the Borrower in the maximum principal amount equal to the Limiting Principal Amount.

d.    **Event of Default.** An "Event of Default" occurs or exists if:

(i)    the Borrower defaults in the payment when due of any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note and such default continues uncured for five days;

(ii)    the Borrower or any Guarantor defaults in the performance when due, whether by acceleration or otherwise, of any obligation (including, but not limited to, any obligation to pay any money (except as described in clause (i) of this Section 1(d), whether for any principal, interest, fee, charge, cost or expense or otherwise), whether now existing or hereafter arising or accruing, to the Holder or any third party, the maturity of any such obligation is accelerated or there occurs or exists any event or condition that, whether immediately or after notice, lapse of time or both notice and lapse of time and whether or not waived, would constitute a default with respect to or permit the acceleration of the maturity of any such obligation;

(iii)    the Borrower or any Guarantor fails to provide the Lender with (A) copies of the Borrower's and Guarantor's annual federal tax return to be delivered on the sooner of (i) three days after filing or (ii) October 15th of each year for the immediately preceding fiscal year; (B) an updated case and status list with respect to the clients and cases of the Borrower as of  December 31st and June 30th each year with such lists to be delivered on or before January 15th and July 15th of each year, (C) a current updated personal or financial statement for each Guarantor to be delivered on or before April 15th of each year in the form completed by the Guarantor and delivered to Lender on or before execution of this Note, (D) evidence of current malpractice insurance for the Borrower and life insurance coverage of Guarantor on the anniversary date of coverage; (E) notice of any material change in the business, clients or prospects of the Borrower, (F) copies of any notice of cancellation, revocation or non-

2

Initials

renewal of any life insurance policy assigned to Lender as part of the Collateral within five (5) business days after receipt thereof by the Borrower or the Guarantor, (G) copies of any default notice or notice of the existence of facts or circumstances that with the passage of time will constitute a default under any obligation of Borrower that are received by Borrower, (H) a weekly settlement sheet on or before Thursday of each week for the immediately preceding week, or (I) copies of the Borrower's monthly bank statement(s) for all attorney trust account(s) within three (3) days of receipt from the bank(s);

(iv)    the Borrower or any Guarantor is dissolved, ceases to exist, participates or agrees to participate in any merger, consolidation or other absorption (unless the Borrower or such Guarantor is the surviving entity with respect thereto), assigns or otherwise transfers or disposes of a majority of his, her or its assets, makes or permits what might be a fraudulent transfer or fraudulent conveyance of any of his, her or its assets, becomes insolvent (however such insolvency is evidenced), generally fails to pay his, her or its debts as they become due, fails to pay, withhold or collect any tax as required by applicable law, suspends or ceases its business or has served, filed or recorded against him, her or it or any of his, her or its assets any judgment, order or award of any court, other governmental authority or arbitrator or any lien;

(v)     any Guarantor dies, becomes incompetent or purports to terminate his, her or its obligations pursuant to any guaranty or other agreement evidencing obligations of such Guarantor to the Lender; or David McQuade Leibowitz fails to maintain in effect life insurance on his life in a minimum amount equal to $5,500,000 that is subject to an effective collateral assignment to the Holder of this Note at all times hereunder; or David McQuade Leibowitz sells, gifts, transfers or otherwise disposes of assets or incurs indebtedness that reduces his personal net worth (including Borrower's assets or assets held as joint tenants) of such Guarantor to less than $15,000,000.

(vi)    the Borrower or any Guarantor has any receiver, trustee, custodian or similar Person for him, her or it or any of his, her or its assets appointed (whether with or without his, her or its consent), makes any assignment for the benefit of creditors or commences or has commenced against him, her or it any bankruptcy or insolvency proceeding or any formal or informal proceeding for the dissolution, liquidation or winding up of the affairs of or the settlement of claims against him, her or it;

(vii)   any representation or warranty heretofore made to the Lender or hereafter made to the Holder, or any financial statement heretofore provided to the Lender or hereafter provided to the Holder, by or on behalf of the Borrower or any Guarantor proves, as of the date thereof, to have been incorrect or misleading in any material respect or before the execution and delivery to the Lender by the Borrower of this Note there occurred and was not disclosed to the Lender any material adverse change in any information disclosed in any such representation or warranty heretofore so made or in any such financial statement heretofore so provided;

(v)     Holder's estimate of the future aggregate legal fees collectible by Borrower from the Collateral at any time is less than eight times the Outstanding Principal Amount plus interest on this Note whether such estimate is based on (A) the actual client files of Borrower from time to time, (B) the amount of any indebtedness or obligation of Borrower having priority over the collection rights of Holder, or (C) any law, judicial decision, administrative order, or professional ethics opinion limiting the rights of law firms to sue clients for the collection of legal fees or expenses;

3

Initials

(ix)   there occurs any change in the management of, or the beneficial ownership of any stock of or other ownership interest in, the Borrower that is, in the opinion of the Holder, adverse to its interest and is not corrected to its full satisfaction within 30 days after it gives to the Borrower a notice that it considers such change adverse to its interest;

(x)    there occurs any change in the value of the Collateral or Borrower's or any Guarantor's ownership interest in the Collateral, that is, in the opinion of the Holder, adverse to its interest and is not corrected to its full satisfaction within 10 days after it gives to the Borrower a notice that it considers such change adverse to its interest;

(xi)   Borrower incurs after the date of this Note or repays after the date of this Note any indebtedness or liability except (A) indebtedness to the Lender, (B) trade payables, or (C) liabilities incurred in the ordinary course of business;

(xii)  there occurs or exists any event or condition of default for purposes of any (A) indebtedness or liability of Borrower or (b) security agreement or other writing evidencing or relating to any Collateral;

(xiii) Borrower creates, assumes or suffers to exist any mortgage, security interest, judgment or lien on any of its assets now or hereafter acquired other than purchase money liens relating to the acquisition of fixed assets;

(xiv)  Borrower or Guarantor refuses to execute an Affidavit of Confession of Judgment with respect to this Note or the Guaranty within 10 days following receipt of a written request from Lender;

(xv)   Borrower fails to permit Lender access to its premises and books, records and case files to conduct audits of Borrower's assets and operations from time to time with the frequency of such audits determined in Lender's sole discretion; or

(xvi)  Borrower fails to provide Lender, within fourteen (14) days of the date hereof, copies of checks or other written evidence of the use of the funds advanced hereunder.

For purposes of (xi) above, the restrictions on incurring or repaying any indebtedness or liability of Borrower includes any indebtedness or liability to any Guarantor or any affiliate of any Guarantor.

e.     **Guarantor.** "Guarantor" means, other than the Borrower, any Person (i) who or that is now or hereafter liable, whether directly or indirectly or absolutely or contingently, for the payment of any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note or (ii) any asset of whom or which now or hereafter directly or indirectly secures the payment of any of the Outstanding Principal Amount or any such interest or other amount

f.     **Holder.** The "Holder" means the Lender or any transferee of this Note.

g.     **Lender.** The "Lender" means Counsel Financial Services LLC, a Delaware limited liability company having its chief executive office at 90 Bryant Woods South, Suite 100, Amherst, NY 14228.

h.     **Limiting Principal Amount.** "Limiting Principal Amount" means $5,005,845.45, US currency.

4

Initials

i.     **Loan.** "Loan" means any loan by the Holder pursuant to the Credit.

j.     **Loan Request.** "Loan Request" means any oral (including, but not limited to, telephonic), written or other (including, but not limited to, facsimile) request for a Loan.

k.     **Maturity Date.** The "Maturity Date" means as provided in Section 4 of this Note.

m.     **Outstanding Principal Amount.** The "Outstanding Principal Amount" means the outstanding principal amount of this Note.

n.     **Person.** "Person" means (i) any individual, corporation, partnership, limited liability company, joint venture, trust or unincorporated association, (ii) any court or other governmental authority or () any other entity, body, organization or group.

2.     **PROMISE TO PAY.** For value received, the Borrower promises to pay to the order of the Holder in lawful money of the United States and immediately available funds at any of the offices of the Holder:

a.     The Outstanding Principal Amount and interest as described in Section 3 of this Note by paying the amounts described in Section 4 of this Note;

b.     If any amount of Outstanding Principal Amount or any payment of interest payable pursuant to this Note is not paid by the date it becomes due, on demand by the Holder, a late charge of the greater of (i) 5% thereof or (ii) $50; and

c.     On demand by the Holder, each cost and expense (including, but not limited to, the reasonable fees and disbursements of counsel, whether retained for advice, litigation or any other purpose) incurred by the Holder in endeavoring to (i) collect any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note, (ii) preserve or exercise any right or remedy of the Holder pursuant to this Note or () preserve or exercise any right or remedy of the Holder relating to, enforce or realize upon any Collateral.

3.     **INTEREST.** The Borrower shall pay interest, calculated on the basis of a 360 day year, as applicable, on the Outstanding Principal Amount from and including the date of this Note to but not including the date the Outstanding Principal Amount is paid in full. On each day prior to the occurrence or existence of any Event of Default, the rate per year shall be **Eighteen Percent (18%)** for the first **$4,600,000** borrowed and **Twenty-One Percent (21%)** for all amounts borrowed in excess of **$4,600,000** provided, however, that if at any time the prime rate as announced by Citibank, N.A. as its prime rate, exceeds 10%, such interest rate shall, from time to time, increase by an amount equal to the difference between Citibank's prime rate and 10%. On the day of and on each day after the occurrence or existence of any Event of Default, the rate per year shall be the lesser of (i) 25% or (ii) the maximum rate permitted by applicable law;. Notwithstanding the foregoing, (A) in no event shall such interest be payable at a rate in excess of the maximum rate permitted by applicable law and (B) solely to the extent necessary to result in such interest not being payable at a rate in excess of such maximum rate, any amount that would be treated as part of such interest under a final judicial interpretation of applicable law shall be deemed to have been a mistake and automatically canceled, and, if received by the Holder, shall be refunded to the Borrower, it being the intention of the Lender and the Borrower that such interest not be payable at a rate in excess of

5

Initials

such maximum rate.

4.     PAYMENTS. The Borrower shall  (a) pay the Outstanding Principal Amount in nine (9) equal installment payments commencing on September 1, 2008 and continuing monthly thereafter with the final payment due and payable on  May 1, 2009 (the "Maturity Date") and (b) pay monthly interest as described in Section 3 of this Note that has accrued on the Outstanding Principal Amount through the last day of any calendar month, beginning with the calendar month containing the date of this Note, all such payments of principal or interest by the 10th day of the succeeding calendar month. In addition, the Borrower shall at all times prior to the Maturity Date (i) maintain an interest reserve (the "Reserve") with the Holder equal to 30 days' interest based on the Outstanding Principal Amount on the later of the date of the first Loan under this Note or the last day of the most recently ended calendar month during the term of this Note and (ii) maintain an authorization for electronics funds transfer by Lender at a bank and account designated by Borrower for payments under this Note. The Lender may, but shall not be obligated to, deduct from the proceeds of any Loan an amount sufficient to fund the Reserve,  may commingle the Reserve with its other funds, shall have no obligation to pay any interest on the Reserve and shall be entitled to set off against the Reserve, or authorize an electronics funds transfer for,  any amount that is not paid to the Lender when due under this Note.

5.     LOAN REQUESTS.

       (a) At any time prior to September 1, 2008,  the Borrower may make a Loan Request, which Request shall be irrevocable, that specifies (i) the amount requested as the principal amount of the Loan and (ii) the business day of the Holder on which such Loan is requested to be made.  Notwithstanding the foregoing, no Loan shall be made with respect to any principal amount prepaid under Section 9 of this Note until at least one (1) business day after the date of such prepayment.  Notwithstanding anything contained in this Note to the contrary and without limiting Holder's discretion with respect to any Loan Request, (i) no Loan Request will be approved that when aggregated with all previously approved Loan Requests under this Note would exceed 50% of all principal repayments under this Note  and (ii) commencing September 1, 2008, Borrower shall not be permitted to make any further Loan Requests under this Note.

       (b)  The decision whether to honor such Loan Request and make such Loan shall be in the sole discretion of the Holder. The Holder may treat as made by the Borrower and rely upon, and the Borrower shall be bound by, any Loan Request that the Holder in good faith believes to be valid and to have been made in the name or on behalf of the Borrower by any officer, manager, member, partner or other individual authorized to act on behalf of the Borrower, and the Holder shall not incur any liability to the Borrower or any other Person as a direct or indirect result of honoring such Loan Request and making such Loan.

6.     LIMITATION ON OUTSTANDING PRINCIPAL AMOUNT. The Borrower shall not at any time permit, and the Lender shall not at any time be obligated to permit, the Outstanding Principal Amount to exceed the Limiting Principal Amount.

7.     SCHEDULE OF ADVANCES OR LOAN ACCOUNT. There shall be payable as principal pursuant to this Note only so much of the Limiting Principal Amount as shall have been advanced by the Holder as a Loan or Loans and is outstanding.  The Holder shall set forth on the schedule attached to and made a part of this Note or any similar schedule or loan account (including, but not limited to, any similar schedule or loan account maintained in computerized  records) annotations evidencing (a) the date and principal amount of each Loan, (b) the date and amount of each payment applied to the Outstanding Principal Amount and (c) the Outstanding Principal Amount after each Loan and each such payment. Each such annotation shall, in the

6

Initials

absence of manifest error, be conclusive and binding upon the Borrower. No failure by the Holder to make and no error by the Holder in making any annotation on such attached schedule or any such similar schedule or loan account shall affect the Borrower's obligation to repay the principal amount of each Loan, the Borrower's obligation to pay interest on the outstanding principal amount of each Loan or any other obligation of the Borrower to the Holder pursuant to this Note or otherwise.

8.    **OPTIONAL PREPAYMENT.** The Borrower shall have the option of prepaying, without penalty or premium, the Outstanding Principal Amount to the Holder in full or part at any time and from time to time provided, that upon prepaying the Outstanding Principal Amount in full, the Borrower shall pay to the Holder all interest and other amounts payable to this Note and remaining unpaid. With respect to prepayments made on or after September 1, 2008, any partial prepayment shall not result in a reduction in the term of this Note, and Lender will recalculate the monthly principal amortization for the remaining term of the Note as of the first day of the month immediately following the date of prepayment.

9.    **MANDATORY PREPAYMENT.** Borrower shall be required to pay Lender an amount equal to 30% of all Net Fees received by Borrower in excess of $25,000 commencing on the date hereof (collectively, the "Mandatory Prepayments") until the Outstanding Principal Amount and interest thereon has been paid in full. Mandatory Prepayments shall be applied first to the payment of interest and then to the payment of principal. All Mandatory Prepayments must be paid to Lender within three (3) business days after receipt thereof by Borrower and shall be applied first to the payment of any outstanding interest and then to repay the Outstanding Principal Amount. For purposes of the preceding sentence, "Net Fees" means all legal fees and reimbursed expenses resulting from any client representation or referral after payment of all amounts owing to third party lawyers (other than employees or partners of Borrower) for assistance or referral with respect to such client representation. Until payment is remitted to Lender, any such funds payable to the Borrower shall be held in Borrower's trust account. Borrower shall continue to escrow any and all such funds received until payment of the mandatory amount is transmitted to Lender. Funds in Borrower's trust account in which the Lender has an interest shall not be paid to anyone except Lender. With respect to prepayments made on or after September 1, 2008, any partial prepayment shall not result in a reduction in the term of this Note, and Lender will recalculate the monthly principal amortization for the remaining term of the Note as of the first day of the month immediately following the date of prepayment.

10.    **PURPOSE OF LOANS.** The Borrower shall not obtain or use the proceeds of any Loan for any purpose other than for working capital of the Borrower. The Borrower acknowledges, warrants and represents to, and agrees with, the Lender that no Loan proceeds shall be used by the Borrower for other than a business or commercial purpose of the Borrower.

11.    **AMOUNTS IMMEDIATELY DUE.** Upon or at any time or from time to time after the occurrence or existence of any Event of Default other than, with respect to the Borrower, an Event of Default described in clause (vi) of the definition of Event of Default set forth in Section 1(d) of this Note, the Outstanding Principal Amount and all interest and other amounts payable pursuant to this Note and remaining unpaid shall, at the sole option of the Holder and without any notice, demand, presentment or protest of any kind (each of which is knowingly, voluntarily, intentionally and irrevocably waived by the Borrower), become immediately due. Upon the occurrence or existence of, with respect to the Borrower, any Event of Default described in such clause (vi), the Outstanding Principal Amount and all such interest and other amounts shall, without any notice, demand, presentment or protest of any kind (each of which is knowingly, voluntarily, intentionally and irrevocably waived by the Borrower), automatically become immediately due.

7

Initials

12.     **CHANGES AND WAIVERS.** No course of conduct pursued, accepted or acquiesced in, and no oral, written or other agreement or representation made, by or on behalf of the Holder in the future will change this Note or waive any right or remedy of the Holder under or arising as a result of this Note. Any change in this Note or waiver of any right or remedy of the Holder under or arising as a result of this Note must be made in a writing signed by or on behalf of the Holder.

13.     **GOVERNING LAW.** This Note shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York and, to the extent applicable, the federal law of the United States, without regard to the law of any other jurisdiction.

14.     **CONSENT TO JURISDICTION.** AS PART OF THE CONSIDERATION FOR NEW VALUE RECEIVED AND REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF BORROWER OR HOLDER, BORROWER HEREBY CONSENTS AND AGREES THAT ANY FEDERAL OR STATE COURT LOCATED IN ERIE COUNTY, NEW YORK, SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN BORROWER AND HOLDER PERTAINING TO THIS NOTE OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS NOTE; PROVIDED, HOWEVER, HOLDER MAY AT ITS OPTION, COMMENCE ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION TO OBTAIN EQUITABLE RELIEF OR TO ENFORCE ANY JUDGMENT OR ORDER OBTAINED BY HOLDER AGAINST BORROWER, TO ENFORCE ANY OTHER RIGHT OR REMEDY UNDER THIS NOTE, OR TO OBTAIN ANY OTHER RELIEF DEEMED APPROPRIATE BY HOLDER. BORROWER EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY FEDERAL OR NEW YORK COURT LOCATED IN ERIE COUNTY, AND BORROWER HEREBY WAIVES ANY OBJECTION WHICH BORROWER MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY ANY FEDERAL OR NEW YORK COURT LOCATED IN ERIE COUNTY. BORROWER REPRESENTS AND WARRANTS THAT IT HAS REVIEWED THIS CONSENT TO JURISDICTION PROVISION WITH ITS LEGAL COUNSEL, AND HAS MADE THIS WAIVER KNOWINGLY AND VOLUNTARILY.

15.     **WAIVER OF TRIAL BY JURY.** THE BORROWER KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT THE BORROWER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO (a) THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY OTHER WRITING HERETOFORE OR HEREAFTER EXECUTED IN CONNECTION WITH THE CREDIT OR ANY LOAN OR COLLATERAL, (b) ANY TRANSACTION ARISING OUT OF OR OTHERWISE RELATING TO THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY SUCH OTHER WRITING OR (c) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY SUCH OTHER WRITING.

15.     **REPLACEMENT NOTE.**     This Note evidences but does not extinguish or satisfy, and is not a novation of, preexisting indebtedness of Borrower to Lender and amends and restates (i) that certain Revolving Promissory Note executed by Borrower to Holder in the maximum principal amount of $3,500,000 dated as of February 1, 2006, (ii) that certain First Amended and Restated Revolving Promissory Note executed by Borrower to Holder in the maximum principal amount of $4,500,000 dated

8

Initials

as of September 25, 2006,  (iii) that certain Second Amended and Restated Revolving Promissory Note executed by Borrower to Holder in the maximum principal amount of $4,600,000 dated as of May 4, 2007, and (iv)  that certain Third Amended and Restated Revolving Promissory Note executed by Borrower to Holder in the maximum principal amount of $4,700,000 dated as of May 18, 2007 (collectively the "Prior Notes").  The Borrower hereby acknowledges that the outstanding principal balance under the Prior Notes as of the date hereof is $4,700,000.

Dated:  September    , 2007                DAVID MCQUADE LEIBOWITZ, P.C.

By_____

David McQuade Leibowitz, President

9

Initials

**SCHEDULE A**
**LIST OF ADVANCES, INTEREST RATES AND PAYMENTS**

| Date Advanced | Principal Amount Advanced | Interest Rate | Principal Repaid To Date | Principal Amount Outstanding | Approving Person |
|---|---|---|---|---|---|
| Outstanding Under Prior Note | $ 4,700,000 | 18% | - | $ | |
| 9/  /07 | | 21% | | | |

11

Initials

### ACKNOWLEDGMENT FOR NOTE

STATE OF TEXAS        )
                                           : SS.
COUNTY OF

    On the 9th day of September in the year 2007 before me, the undersigned, a notary public in and for said state, personally appeared David McQuade Leibowitz personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as President of **DAVID MCQUADE LEIBOWITZ, P.C.**, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.



EMMA G. CARREON
Notary Public, State of Texas
My Commission Expires
**JUNE 25, 2009**

_____
Notary Public

**ALLONGE TO FOURTH AMENDED AND RESTATED REVOLVING PROMISSORY NOTE, DATED SEPTEMBER 1, 2007, ISSUED BY DAVID MCQUADE LEIBOWITZ, P.C. TO COUNSEL FINANCIAL SERVICES LLC**

NOTICE:  THIS NOTE IS SUBJECT TO A SECURITY INTEREST GRANTED BY COUNSEL FINANCIAL SERVICES LLC TO CITIBANK, N.A. PURSUANT TO A CREDIT AND SECURITY AGREEMENT BETWEEN SUCH PARTIES, AS SUCH CREDIT AND SECURITY AGREEMENT MAY BE AMENDED, SUPPLEMENTED, REPLACED, RESTATED OR OTHERWISE MODIFIED FROM TIME TO TIME

12

Initials

## GUARANTY OF PAYMENT AND PERFORMANCE

**THIS GUARANTY** (the "Guaranty") from David McQuade Leibowitz, individually (the "Guarantor") to COUNSEL FINANCIAL SERVICES, LLC a Delaware limited liability company with a place of business at 90 Bryant Woods South, Suite 100, Amherst, NY 14228 (the "Lender").

### W I T N E S S E T H:

**WHEREAS,** David McQuade Leibowitz, P.C. ("Borrower") is, on the date hereof, entering into a that certain Fourth Amended and Restated Revolving Promissory Note in the principal amount of $5,005,845.45 (as the same may be amended from time to time ("Note") pursuant to which Lender is extending certain credit facilities (the "Credit Facilities") to Borrower; and

**WHEREAS,** the Lender is unwilling to extend the Credit Facilities to the Borrower unless it receives this Guaranty; and

**WHEREAS,** the Guarantor is willing to enter into this Guaranty in order to induce the Lender to extend the Credit Facilities and the Guarantor has approved the form and substance of each and all of the documents relating to the Credit Facilities including the Revolving Promissory Note, Security Agreement, certifications, letters and other documentation (the "Loan Documents").

**NOW, THEREFORE,** in order to induce the Lender to extend the Credit Facilities to the Borrower and in consideration of the premises and of other good and valuable consideration, the Guarantor intends to guarantee absolutely and unconditionally (and jointly and severally if there be more than one Guarantor) to the Lender, the punctual payment of the collectively (i) the outstanding principal amount of the Note at any time and all interest and other amounts now or in the future payable under the Note and (ii) all other obligations of the Borrower to the Lender for the payment of money, however evidenced, regardless of the purpose for which incurred and whether for the payment of any principal, interest, fee or expense or otherwise, existing now or coming into existence in the future or absolute or contingent (the " Obligations") and such further payment and performance as may be set forth in Article 2 hereof.

### ARTICLE 1
### REPRESENTATIONS AND WARRANTIES OF THE GUARANTOR

The Guarantor hereby represents and warrants to Lender (if the Guarantor is more than one party, said representations and warranties are made only with respect to the particular party) that;

**Section 1.1**   **Capacity of the Guarantor.**   Guarantor:

(A)      Has the capacity to enter into this Guaranty.

(B)      Has his or her address at the address set forth at the head of this Guaranty.

**Section 1.2**   **No Violation of Restrictions.**   Neither the execution and delivery of this Guaranty, the consummation of the transactions contemplated hereby nor the fulfillment of or compliance with the

13

Initials

provisions of this Guaranty will conflict with or result in a breach of any of the terms, covenants, conditions or provisions of any agreement, judgment or order to which the Guarantor is a party or by which the Guarantor is bound, or will constitute a default under any of the foregoing, or result in the creation or imposition of any lien of any nature whatsoever.

Section 1.3    Compliance with Law.  The Guarantor is not in violation of any law, ordinance, governmental rule, regulation, order or judgment to which the Guarantor may be subject which is likely to materially affect the financial condition of the Guarantor.

Section 1.4    Financial Statements..The financial statements submitted by the Guarantor to Lender fairly represent the financial condition as of the date of each statement and there has been no material adverse change in the financial condition of the Guarantor since the date of the respective statements submitted to Lender.

Section 1.5    Solvency of Guarantor and Borrower.  The Guarantor is solvent and has made an appropriate financial investigation of the Borrower and has determined that the Borrower is solvent at the time of execution of this Guaranty.

## ARTICLE 2
## COVENANTS AND AGREEMENTS

Section 2.1    Guaranty of Payment.  The Guarantor irrevocably, absolutely and unconditionally guarantees to the Lender:

(A)    The punctual payment of the Obligations.

(B)    The full and prompt performance of any and all obligations of the Borrower to Lender under the Loan Documents.

Section 2.2    Obligations Unconditional.  This Guaranty shall remain in full force and effect until the Obligations and all sums due thereunder are paid in full, irrespective of any interruptions in the business relationships of the Borrower and the Guarantor with the Lender.  The Guarantor's obligation hereunder shall not be affected, modified or impaired by any state of facts or the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of the Guarantor:

(A)    The invalidity, irregularity, illegality or unenforceability of, or any defect in any Loan Document or any collateral security for the Credit Facilities (the "Collateral" as defined in the Security Agreement).

(B)    Any present or future law or order of any government (de jure or de facto) or of any agency thereof purporting to reduce, amend or otherwise affect any Loan Document or any other obligation of the Borrower or any other obligor or to any other terms of payment.

(C)    The waiver, compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower under any Loan Document or of the Guarantor under this Guaranty, or of any other guarantor of the Credit Facilities or any part thereof, or of any other party who has given collateral as security for the payment of the Credit Facilities or any part thereof.

14

Initials

(D)     The failure to give notice to the Guarantor of the occurrence of an event of default under any Loan Document.

(E)     The loss, release, sale, exchange, surrender or other change in any Collateral.

(F)     The extension of the time for payment of any principal of or interest on the Obligations or of the time for performance of any other obligations, covenants or agreements under or arising out of any Loan Document or the extension or the renewal of any thereof.

(G)     The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in any Loan Document.

(H)     The performance of, or the omission to perform, any of the actions referred to in any Loan Document.

(I)     Any failure, omission or delay on the part of the Lender to enforce, assert or exercise any right, power or remedy conferred on the Lender in any Loan Document.

(J)     The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting the Guarantor or the Borrower or either of their assets, or any allegation or contest of the validity of any Loan Document.

(K)     The default or failure of the Guarantor to fully perform any obligations set forth in this Guaranty.

(L)     Any event or action that would, in the absence of this paragraph, result in the release or discharge of the Guarantor from the performance or observance of any obligation, covenant or agreement contained in this Guaranty (other than payment in full of the Obligations or a written release provided by Lender to the Guarantor).

(M)     Any other circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or a guarantor.

Section 2.3     Waiver by Guarantor.  The Guarantor hereby waives:

(A)     Notice of acceptance of this Guaranty.

(B)     Diligence, presentment and demand for payment of the Credit Facilities.

(C)     Protest and notice of protest, dishonor or default to the Guarantor or to any other party with respect to the Loans.

(D)     Any and all notices to which the Guarantor might otherwise be entitled.

(E)     Any demand for payment under this Guaranty.

(F)     Any and all defenses to payment including, without limitations any defenses and counterclaims of

15

Initials

the Guarantor or the Borrower based upon fraud, negligence or the failure of any condition precedent or claims of offset or defenses involving the invalidity, irregularity or unenforceability of all or any part of the liabilities herein guaranteed or any defense otherwise available to the Guarantor or the Borrower.

(G)     Until such time as the Obligations are paid in full and the Lender has received all other sums due under the terms of the Loan Documents, any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against the Borrower or any other person directly or contingently liable for the Credit Facilities guaranteed hereunder, or against or with respect to any of the Borrower's property (including, without limitation, property collateralizing the Credit Facilities), arising from the existence or performance of this Guaranty and whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.

**Section 2.4     Nature of Guaranty.**  This Guaranty is a guaranty of payment and not of collection and the Guarantor hereby waives the right to require that any action be brought first against the Borrower or any other guarantor, or to require any security, or to require that resort be made to any security or to any balance of any deposit account or credit on the books of the Lender in favor of the Borrower or of the Guarantor.

**Section 2.5     Continuation of Guaranty.**  The Guarantor further agrees that the obligations hereunder shall continue to be effective or reinstated, as the case may be, if at any time payment or any part thereof of the Credit Facilities is rescinded or must otherwise be restored by the Lender upon the bankruptcy or reorganization of the Borrower, the Guarantor or otherwise.

**Section 2.6     Subordination of Debt.**  The Guarantor hereby subordinates any and all indebtedness of the Borrower now or hereafter owed to the Guarantor to all indebtedness of the Borrower to Lender and agrees with Lender that, from and after the date whereon Lender notifies Guarantor that an event of default under one or more of the Loan Documents has occurred and is continuing, Guarantor shall not demand or accept any payment from the Borrower of any such indebtedness, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any interest in any of the security described in and encumbered by the Loan Documents; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and paid over to Lender on account of the indebtedness of such Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty except to the extent the principal amount of such outstanding indebtedness shall have been reduced by such payment.

**Section 2.7     Financial Statements.**  Guarantor agrees to deliver to Lender within thirty (30) days after the end of each year, personal financial statements and information applicable to the Guarantor on Lender's standard form or other form acceptable to Lender.

**Section 2.8     Transfer of Interest.**  Except as permitted pursuant to the Loan Documents, the Guarantor agrees not to make or permit to be made, by voluntary or involuntary means, any transfer of the interest of the Guarantor in the Borrower, without first obtaining the prior written consent of Lender.

**ARTICLE 3**
**EVENTS OF DEFAULT**

16

Initials

**Section 3.1**   Events of Default Defined.   An "Event of Default" shall exist if any of the following events occurs and is continuing:

(A)   The Guarantor fails to perform or observe any covenant contained herein.

(B)   Any warranty, representation or other statement by or on behalf of the Guarantor contained in this Guaranty is false or misleading in any material respect when made.

(C)   A receiver, liquidator or trustee of the Guarantor or any of his or its property is appointed by court order, or any party named as a Guarantor is adjudicated bankrupt or insolvent or any of his or its property is sequestered by court order and such order remains in effect for more than sixty (60) days, or a petition is filed against the Guarantor under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, and is not dismissed within ninety (90) days of such filing.

(D)   The Guarantor files a petition in voluntary bankruptcy or seeks relief under any provision of any reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, or consents to the filing of any petition against it under any such law.

(E)   The Guarantor makes an assignment for the benefit of creditors or admits in writing inability to pay debts generally as they become due, or consents to the appointment of a receiver, trustee or liquidator of all or any part of his or its property.

(F)   The occurrence of an Event of Default under the Note or any other Loan Document.

**Section 3.2**   Remedies on Default.   If an Event of Default exists, Lender may proceed to enforce the provisions hereof and to exercise any other rights, powers and remedies available to the Lender after two (2) business days' prior written notice to the Guarantor.

**Section 3.3**   Waiver and Notice.

(A)   No remedy herein conferred upon or reserved to the Lender is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Guaranty now or hereafter existing at law or in equity or by statute.

(B)   No delay or omission to exercise any right or power accruing upon the occurrence of any Event of Default shall impair any such right or power or shall be construed to be a waiver thereof, but any such right or power may be exercised from time to time and as often as may be deemed expedient.

(C)   In order to entitle the Lender to exercise any remedy reserved to it in this Guaranty, it shall not be necessary to give any notice, other than such notice as may be expressly required in this Guaranty.

(D)   No waiver, amendment, release or modification of this Guaranty shall be established by conduct, custom or course of dealing.

17

Initials

## ARTICLE 4
## MISCELLANEOUS

**Section 4.1** _Construction._ If this Guaranty is executed by two or more parties, they shall be jointly and severally liable hereunder and the phrase Guarantor whenever used herein shall be construed to refer to each of the parties in the same manner and with the same effect as if each party had signed a separate guaranty.

**Section 4.2** _Governing Law._ This Guaranty shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of laws.

**Section 4.3** _Successors and Assigns._ This Guaranty shall inure to the benefit of and be binding upon the successors and assigns of each of the parties hereto.

**Section 4.4** _Notices._ Any notices required or permitted to be given hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes at the time of delivery in person, one day after delivery to a nationally recognized overnight courier with receipt requested to the parties at the addresses set forth at the head of this Guaranty, or such other addresses as the parties may for themselves designate in writing as provided herein for the purpose of receiving notices hereunder.

**Section 4.5** _Entire Agreement._ This Guaranty and the Loan Documents constitute the entire understanding between the Borrower, the Guarantor and Lender and to the extent that any writings not signed by Lender or oral statements or conversations at any time made or had are inconsistent with the provisions of this Guaranty or the other Loan Documents, the same shall be null and void.

**Section 4.6** _Amendments._ No amendment, change, modification, alteration or termination of this Guaranty shall be made except upon the written consent of Lender and the Guarantor.

**Section 4.7** _Assignment._ This Guaranty is assignable by Lender in whole or in part in conjunction with an assignment of the Loan Documents and any assignment hereof or any transfer or assignment of the Loan Documents or portions thereof shall operate to vest in any such assignee the rights and powers, in whole or in part, as appropriate, herein conferred upon and granted to Lender.

**Section 4.8** _Partial Invalidity._ The invalidity or unenforceability of any one or more phrases, sentences, clauses or sections in this Guaranty shall not affect the validity or enforceability of the remaining portions of the Guaranty or any part thereof.

**Section 4.9** _Submission to Jurisdiction._ The Guarantor hereby irrevocably and unconditionally agrees that any suit, action or proceeding arising out of or relating to this Guaranty shall be brought in the state courts of the State of New York or federal district court therein located in Erie County and waives any right to object to jurisdiction within either of the foregoing forums by Lender. Nothing contained herein shall prevent Lender from bringing any suit, action or proceeding or exercising any rights against any security and against any Guarantor personally, and against any property of the Guarantor, within any other jurisdiction and the initiation of such suit, action or proceeding or taking of such action in any such other jurisdiction shall in no event constitute a waiver of the agreements contained herein with respect to the laws of the State of New York governing the rights and obligations of the parties hereto or the agreement of the Guarantor to submit to personal jurisdiction within the State of New York.

18

Initials

**Section 4.10** <u>WAIVER OF JURY TRIAL</u>. THE GUARANTOR HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS IT MAY HAVE TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS GUARANTY OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS GUARANTY OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE, AND THE GUARANTOR HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND LENDER MAY FILE AN ORIGINAL COUNTERPART OF A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE GUARANTOR'S CONSENT TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY. THE GUARANTOR REPRESENTS AND WARRANTS THAT IT HAS REVIEWED THIS JURY WAIVER PROVISION WITH ITS LEGAL COUNSEL, AND HAD MADE THIS WAIVER KNOWINGLY AND VOLUNTARILY.

**Section 4.11** Unlimited Guaranty. This Guaranty is unlimited in amount.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty as of the day and year set forth.

Dated: September   , 2007

_____
DAVID MCQUADE LEIBOWITZ

19

_____   Initials

**Exhibit "A," Page 17 of 24**

ACKNOWLEDGMENT (GUARANTY)

STATE OF TEXAS )
COUNTY OF )

      On the 9th day of ~~September~~ October in the year 2007, before me, the undersigned, a notary public in and for said state, personally appeared David McQuade Leibowitz personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

EMMA G. CARREON
Notary Public, State of Texas
My Commission Expires
JUNE 25, 2009

20

Initials

## AMENDMENT NO. 4 TO
## SECURITY AGREEMENT

This AMENDMENT NO. 4 TO SECURITY AGREEMENT dated as of September    , 2007 (this "Amendment") between Counsel Financial Services LLC, a Delaware limited liability company having its chief executive offices at 90 Bryant Woods South, Suite 100, Amherst, NY 14228 (the "Secured Party") and David McQuade Leibowitz, P.C. organized under Texas law, and David McQuade Leibowitz, individually, having offices at 2000 Riverview Towers, 111 Soledad, San Antonio, TX 78205 (collectively the "Debtor").

Introductory Statement. Secured Party and the Debtor are parties to that certain Security Agreement dated February 1, 2006 as amended on September 25, 2006, May 4, 2007 and May 18, 2007 ("Security Agreement") pursuant to which Secured Party has made certain loans and financial accommodations available to David McQuade Leibowitz, P.C. (the "Borrower").   Borrower as of the date of this Amendment has executed a Fourth Amended and Restated Promissory Note to the Secured Party in the principal amount of $5,005,845.45 ("Fourth Amended and Restated Note"). The parties now desire to amend, ratify and confirm the Security Agreement as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises and agreements contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Debtor agrees as follows:

1.   Each defined term used herein and not otherwise defined herein shall have the meaning ascribed to such term in the Security Agreement.

2.   The definition of "Revolving Promissory Note" as used in the Security Agreement shall include the Fourth Amended and Restated Note.

3.   The definition of "Obligations" anticipates and includes the Fourth Amended and Restated Note.

4.   The Security Agreement, as amended by this Amendment remains in full force and effect and remains the valid and binding obligation of Debtor enforceable against Debtor in accordance with its terms.  Debtor hereby ratifies and confirms the Security Agreement, as amended.

IN WITNESS WHEREOF, Debtor has caused this Amendment to be duly executed and delivered by its duly authorized officer as of the date first above written.

David McQuade Leibowitz , Individually

DAVID MCQUADE LEIBOWITZ, P.C.

By:_____
David McQuade Leibowitz, President

21

Initials

ACKNOWLEDGMENT (SECURITY AGREEMENT)

STATE OF TEXAS
COUNTY OF _October_

On the 9th day of September, 2007 before me, the undersigned, a notary public in and for said state, personally appeared David McQuade Leibowitz personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as President of David McQuade Leibowitz, P.C., and that by his signature on the instrument, the entity upon behalf of which the individual noted, executed the instrument.

EMMA G. CARREON
Notary Public, State of Texas
My Commission Expires
JUNE 25, 2009

_____
Notary Public

STATE OF TEXAS
COUNTY OF

On the 9th day of September, 2007 before me, the undersigned, a notary public in and for said state, personally appeared David McQuade Leibowitz personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

EMMA G. CARREON
Notary Public, State of Texas
My Commission Expires
JUNE 25, 2009

_____
Notary Public

22

Initials

## BORROWER'S CERTIFICATE

I certify to Counsel Financial Services LLC, a Delaware limited liability company, (the "Lender") and its successors and assignees as follows:

1.   I am [check applicable box:]

   the duly elected and qualified Secretary
   the duly appointed Manager or other authorized Member
   a duly authorized Partner          of DAVID MCQUADE LEIBOWITZ, P.C.

2.   The resolutions attached to this Borrowing Certificate as Exhibit A (collectively the "Resolutions") were duly adopted either (a) at a meeting of the board of directors, members or partners of the Borrower duly called and held on [specify date] _____, 2007 . which meeting a quorum was present and participated, or (b) by unanimous written consent of the directors, members or partners of the Borrower.

3.   None of the Resolutions has been rescinded, revoked or modified in any way.

4.   All of the Resolutions are in full force and effect.

5.   Neither any of the Resolutions nor any action taken or to be taken pursuant to any of the Resolutions (a) violates or will violate applicable law, any judgment or order of any court, agency or other governmental body by which the Borrower is bound, the Certificate of Incorporation, Articles of Organization, By-Laws, Operating Agreement, Partnership Agreement or other governing document of the Borrower or any resolution or other action of record of the shareholders, directors or partners of the Borrower, (b) violates, will violate or constitutes or will constitute any default under any agreement, or instrument or other document by which the Borrower is bound or (c) requires or will require any authorization of, notice to or other act by or relating to any individual, any court, agency or other governmental body or any other entity, body, organization or group (including, but not limited to, any shareholder, director, member, manager or partner of the Borrower) that has not been duly obtained, given or done and is not in full force and effect.

6.   Each of the persons whose names are set forth on the list attached to this Borrowing Certificate as Exhibit B (individually a "Signer") (a) if the Borrower is a corporation or a limited liability company, has been duly elected to and qualified for and holds the office of the Borrower set opposite his or her name thereon, or (b) if the Borrower is a partnership, together constitute all of the partners of such partnership.

7.   The signature set opposite each Signer's name on the list attached to this Borrowing Certificate as Exhibit B is a true specimen of such Signer's signature.

8.   The Borrower has not granted or incurred any liens against its assets since its formation.

9.   With respect to the borrowing of $5,005,845.45 by David McQuade Leibowitz, P.C. from Counsel Financial Services LLC, (i) the terms of the borrowing were negotiated in the State of New York, (ii) the drafting of the loan documents and the funding of the loan was in the State of New York (iii) the laws of the State of New York are intended by the parties to apply with respect to the construction, interpretation and choice of law governing all documents executed by the Borrower; and (iv) Counsel Financial Services LLC and its legal counsel are located within the State of New York. The loan was intended by the lender and Borrower as a New York loan to be construed under New York law regardless of any other location of the Borrower or any guarantor.

23

Initials

IN WITNESS WHEREOF, I have executed this Borrowing Certificate this September      , 2007.

David McQuade Leibowitz

24

Initials

## EXHIBIT A

Resolutions

## DAVID MCQUADE LEIBOWITZ, P.C.
Organized under the laws of Texas

RESOLVED, that any officer, manager, member or partner of the Borrower (individually an "Authorized Person") be, and he or she hereby is, authorized, directed and empowered, acting alone, in the name or on behalf of the Borrower or otherwise, to transact with and through Counsel Financial Services LLC (the "Lender") all such business as he or she shall deem necessary or appropriate upon such terms as he or she shall deem necessary or appropriate (including, but not limited to, obtaining loans and other extensions of credit, guaranteeing or otherwise becoming contingently liable for obligations of others, applying for loans and other forms of credit and pledging, hypothecating, assigning, encumbering, granting security interests in and otherwise creating liens upon accounts, general intangibles and other personal property, whether tangible or intangible ("Property") as security for loans and other extensions of credit and guaranties and other contingent liabilities) and, in connection with any such transaction of business, to do all such acts and other things as he or she shall deem necessary or appropriate (including, but not limited to, signing, drawing, endorsing, executing and delivering notes, guaranties, assignments, pledges, hypothecations, security agreements, powers of attorney, indemnifications, receipts, waivers, releases and other agreements, instruments and other documents, making and receiving delivery of any Property, accepting, receiving, withdrawing and waiving demands and notices and incurring and paying liabilities, costs and expenses); and be it further

RESOLVED, that, without limiting the generality of the foregoing resolution, any Authorized Person be, and he or she hereby is, authorized, directed and empowered, acting alone, in the name or on behalf of the Borrower or otherwise, to obtain from the Lender revolving loans the total of the outstanding principal amounts of which does not at any time exceed $5,005,845.45 and to pledge, hypothecate, assign, encumber, grant security interests in and otherwise create liens on Property as security for such loans; and be it further

RESOLVED, that all loans and other extensions of credit heretofore obtained by the Borrower from the Lender, all actions heretofore taken by the Lender with respect to any Property of the Borrower and all transactions and agreements occurring or entered into between the Borrower and the Lender are ratified, approved and confirmed in all respects; and be it further

RESOLVED, that notwithstanding the dissolution or termination of existence of the Borrower or any change in the identity of or any modification or termination of any authority of any Authorized Person, the Lender may rely upon and act in accordance with the foregoing resolutions until it shall receive and have a reasonable time to act on a written notice to the contrary from an Authorized Person.

25

Initials

EXHIBIT B

**DAVID MCQUADE LEIBOWITZ, P.C.**
Organized under the laws of Texas

Signers

| Office/Title | Name | Signature |
| --- | --- | --- |
| President | David McQuade Leibowitz | |
| Secretary | | |

26

Initials