## SECURITY AGREEMENT
## COUNSEL FINANCIAL SERVICES, LLC

In consideration of Counsel Financial Services LLC, a Delaware limited liability company having its chief executive office at 90 Bryant Woods South, Suite 100, Amherst, NY 14228 (the "Secured Party") heretofore or hereafter (1) extending or agreeing to extend any credit or other financial accommodation to or relying on any guaranty, endorsement or other assurance of payment of DAVID MCQUADE LEIBOWITZ, P.C., having an office at 2000 Riverview Towers, 111 Soledad, San Antonio, TX 78205 ("Borrower") or (2) agreeing to any direct or indirect extension, renewal, refinancing or other modification or replacement of or waiving or forbearing from exercising any right or remedy relating to any obligation heretofore or hereafter arising or accruing as a result of any such credit or other financial accommodation to Borrower, and for other valuable consideration, the receipt of which is acknowledged, DAVID MCQUADE LEIBOWITZ, P.C., and DAVID MCQUADE LEIBOWITZ, individually (individually and collectively the "Debtor") agrees with the Secured Party as follows:

1. DEFINITIONS. In this Agreement:

a. Collateral. The "Collateral" means collectively, all right, title and interest of the Debtor in and to:

With respect to Debtor David McQuade Leibowitz, P.C., : All right, title and interest of the Debtor, whether now owned or hereafter acquired or now existing or hereafter arising or accruing, in and to (i) Accounts (including, but not limited to, Accounts consisting of any right to payment of a monetary obligation, whether or not earned by performance, for legal services rendered or to be rendered or for legal disbursements incurred or to be incurred by the Debtor) and General Intangibles (including, but not limited to, any interest in a partnership or limited liability company, and (ii) to the extent not referred to in clause (i) of this sentence (A) Supporting Obligations incident to, arising or accruing pursuant to or otherwise relating to any of the things referred to in clause (i) of this sentence, whether arising or accruing from any action taken by the Debtor or the Secured Party or otherwise, (B) Proceeds and other proceeds of any of the things referred to in clauses (i) and (ii) (A) of this sentence and (C) records (in whatever medium inscribed or stored ) relating to any of the things referred to in clause (i) of this sentence. In addition, all personal property and fixtures of the Debtor or in which the Debtor has an interest, in each case whether now or hereafter existing or now owned or hereafter acquired and whether subject to the Uniform Commercial Code including all goods, money, instruments, Accounts, inventory, equipment, documents, chattel paper, securities and General Intangibles and all interest, dividends and other distributions thereon paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all products and proceeds of, all of the foregoing.

With respect to Debtor David McQuade Leibowitz: All right, title and interest of the Debtor, whether now owned or hereafter acquired or now existing or hereafter arising or accruing, in and to (i) Accounts (including, but not limited to, Accounts consisting of any right to payment of a monetary obligation, whether or not earned by performance, for legal services rendered or to be rendered or for legal disbursements incurred or to be incurred by the Debtor) and General Intangibles (including, but not limited to, any interest in a partnership or limited liability company, and (ii) to the extent not referred to in clause (i) of this sentence (A) Supporting Obligations incident to, arising or accruing

14

pursuant to or otherwise relating to any of the things referred to in clause (i) of this sentence, whether arising or accruing from any action taken by the Debtor or the Secured Party or otherwise, (B) Proceeds and other proceeds of any of the things referred to in clauses (i) and (ii) (A) of this sentence and (C) records (in whatever medium inscribed or stored ) relating to any of the things referred to in clause (i) of this sentence.

b.  Event of Default. An "Event of Default" occurs or exists if

(i)  there occurs or exists any event or condition of default for purposes of any promissory note (A) now or hereafter evidencing any of the Obligations or (B) the payment of which is now or hereinafter guaranteed by the Debtor (including, but not limited to, a Revolving Promissory Note, dated the date of this Agreement, issued by Borrower to the Secured Party, or any direct or indirect extension, renewal, refinancing or other modification or replacement of any such promissory note; or

(ii)  there occurs or exists any event or condition of default under any guaranty of the Obligations; or

(ii).  the Secured Party deems itself insecure with respect to the Obligations or is of the opinion that the Collateral is or may not be sufficient or has decreased or may decrease in value, whether or not the Secured Party has sought any Other Collateral from the Debtor or any Guarantor.

c.  Obligations. The "Obligations" means collectively all obligations to the Secured Party for the payment of any money (whether for the payment of any principal, interest, fee, charge, cost or expense or otherwise) or the performance of any other obligation (including, but not limited to, pursuant to this Agreement), however evidenced, regardless of kind, class or form, incurred for any business or commercial purpose or otherwise, now existing or hereafter arising or accruing, created directly or by any assignment or other transfer, direct or indirect, absolute or contingent (whether pursuant to any guaranty, endorsement or other assurance of payment or otherwise), similar or dissimilar or related or unrelated and whether or not arising or accrued subsequent to any commencement of or made, proved, voted or allowed as a claim in any case or other proceeding pursuant to any bankruptcy, insolvency or similar statute, that have been heretofore or are hereafter incurred by, whether alone or otherwise, the Debtor, the Borrower, any direct or indirect successor of the Debtor or the Borrower or any direct or indirect assignee or other transferee of all or substantially all of the assets of the Debtor or the Borrower.

d.  Other Collateral. "Other Collateral" means, other than the Collateral, any collateral, subordination, guaranty, endorsement or other security or assurance of payment, whether now existing or hereafter arising or accruing, that now or hereafter secures the payment of or is otherwise applicable to any of the Obligations.

e.  Guarantor. "Guarantor" means any Person, including David McQuade Leibowitz, who or that is now or hereafter liable, whether directly or indirectly or absolutely or contingently, for the payment of any of the Obligations.

f.  Permitted Lien. "Permitted Lien" means (i) whether now existing or hereafter arising or accruing, any security interest in or other lien on any of the Collateral in favor of the Secured Party or (ii) any security interest in or other lien on any of the Collateral (A) fully and accurately described in the response to question 6 contained in the Questionnaire set forth in Exhibit A attached to and made a part of this Agreement and (B) consented to in writing by the Secured Party.

15

g.  Person. "Person" means (i) any individual, corporation, partnership, limited liability company, joint venture, trust, unincorporated association, government or political subdivision, (ii) any court, agency or other governmental body or (iii) any other entity, body, organization or group.

h.  Record. "Record" means any information that is now or hereafter (i) inscribed on a tangible medium or (ii) stored in an electronic or other medium and retrievable in perceivable form, except to the extent constituting confidential information (whether contained in any client file of the Debtor or otherwise) that the Debtor is not permitted to disclose to the Secured Party by reason of any ethical or disciplinary rule, regulation or law governing the Debtor's conduct.

i.  Security Interest. "Security Interest" means any security interest or other lien granted or otherwise created pursuant to the first sentence of Section 2 of this Agreement.

j.  Uniform Commercial Code. "Uniform Commercial Code" means the Uniform Commercial Code in effect at any time in the jurisdiction where any Collateral is located.

k.  Other Terms. Each of the following terms has the meaning given it for purposes of Article 9 of the Uniform Commercial Code (i) Account, (ii) Account Debtor, (iii) Deposit Account, (iv) General Intangible, (v) Instrument, (vi) Proceeds, (vii) Registered Organization and (viii) Supporting Obligation.

2.  GRANT OF SECURITY INTEREST. To secure the payment and performance of the Obligations, the Debtor grants to the Secured Party a security interest in and assigns, pledges and hypothecates to the Secured Party the Collateral. Each Security Interest is a continuing, absolute and unconditional security interest or other lien.

3.  REINSTATEMENT OF OBLIGATIONS. Each portion of the Obligations heretofore or hereafter paid or satisfied by any of the Collateral, or any money or Other Collateral, heretofore or hereafter received, applied or retained by the Secured Party and later recovered from the Secured Party as a result of any claim (including, but not limited to, any claim involving any allegation that any money constituted trust funds or that the receipt, application or retention of any of the Collateral or any money or Other Collateral or the grant, perfection or other creation or protection of any security interest in or other lien on any of the Collateral or any Other Collateral constituted a preference or fraudulent conveyance or transfer), however asserted and whether now existing or hereafter arising or accruing, shall be reinstated as part of the Obligations for purposes of this Agreement as of the date it originally arose or accrued.

4.  COVENANTS.

a.  Affirmative Covenants. The Debtor shall (i) maintain complete and accurate Records relating to the Collateral, (ii) before the end of any applicable grace period, pay each tax, assessment, fee and charge imposed by any government or political subdivision upon any of the Collateral, this Agreement or any agreement, instrument or other Record evidencing any of the Collateral or any of the Obligations, (iii) defend the Collateral against each demand, claim, counterclaim, setoff and defense asserted by any Person (including, but not limited to, any Account Debtor) other than the Secured Party

16

and (iv) promptly notify the Secured Party of (A) any threat or commencement of any action or other legal proceeding, any entry of any judgment or order of any court, agency or other governmental body, or any assertion by any Person (including, but not limited to, any Account Debtor) other than the Secured Party of any demand, claim, counterclaim, setoff or defense, relating to any of the Collateral, (B) any occurrence or existence of any Event of Default, any event or condition that, after notice, lapse of time or both notice and lapse of time, would constitute any Event of Default or any event or condition that has or will or might have any material adverse effect on (I) any of the Collateral, (II) the Debtor, (III) any Guarantor or (IV) the business, operations, assets, affairs or condition (financial or other) of the Debtor or any Guarantor and (C) any change in the location of the chief executive office of the Debtor.

b.  Negative Covenants. Without the prior written consent of the Secured Party, the Debtor shall not (i) sell or otherwise dispose of any of the Collateral or any interest or right in any of the Collateral except in the ordinary course of business, or (ii) provide to the Secured Party or permit to be provided to the Secured Party on his, her or its behalf any certificate, financial statement or other Record that contains any statement of fact that is incorrect or misleading in any material respect or omits to state any fact necessary to make any statement of fact contained therein not incorrect or misleading in any material respect, (iii) execute or otherwise authenticate or permit to be filed or remain on file in any public office any financing statement or amendment of any financing statement relating to any of the Collateral and naming any Person other than the Secured Party as a secured party, except for any financing statement or amendment of any financing statement heretofore consented to by the Secured Party in writing or relating solely to any Permitted Lien, or (iv) upon or at any time after any occurrence or existence of any Event of Default, (A) enforce, extend, renew, refinance or otherwise modify or replace, request, demand, accept, collect or otherwise realize upon, compromise, cancel, discharge, subordinate, accelerate, give any receipt, release or discharge relating to, commence, prosecute or settle any action or other legal proceeding relating to, waive or forbear from exercising any right or remedy relating to or adversely affect any obligation of any Person (including, but not limited to, any Account Debtor obligated with respect to any of the Collateral) relating to any of the Collateral, or (B) agree or otherwise incur any obligation to do anything described in clause (iv)(A) of this sentence, or (v) without giving the Secured Party at least 30 days' prior written notice (A) change its location for purposes of Article 9 of the Uniform Commercial Code (including, but not limited to, its jurisdiction of organization if it is a Registered Organization), (B) make any change in its name, identity or structure or (C) participate in any merger, consolidation or other absorption, or (vi) grant or otherwise create, permit to exist or agree or otherwise incur any obligation to grant or otherwise create or permit to exist any security interest in or other lien on any of the Collateral other than Permitted Liens, or (vii) use any money of the Borrower, funds in any Deposit Account of the Borrower or funds represented by any certificate of deposit of the Borrower in partial or complete satisfaction of any obligation of the Borrower except for obligations incurred in the ordinary course of the business of the Borrower, or (viii) create, incur, assume or have any indebtedness or other obligation (A) arising from the borrowing of any money or (B) pursuant to any guaranty or other contingent obligation, except for indebtedness and other obligations (I) to the Secured Party, (II) constituting unsecured normal trade debt incurred upon customary terms in the ordinary course of its business, (III) arising from the endorsement in the ordinary course of its business of any check or other negotiable instrument for deposit or collection or (IV) fully and accurately described under the heading "Permitted Indebtedness" in Exhibit A attached to and made a part of this Agreement.

c.  Additional Covenants Triggered by Request of Secured Party. Promptly upon the request of the Secured Party, the Debtor shall (i) deliver to the Secured Party each financing statement,

17

amendment of any financing statement and other Record, and take each other action (including, but not limited to, making any endorsement), requested by the Secured Party to perfect, maintain the validity, perfection or priority of or enforce any Security Interest, otherwise protect the interest of the Secured Party in or collect, sell or otherwise dispose of or otherwise realize upon any of the Collateral, whether under applicable law or otherwise, verify any of the Collateral or otherwise accomplish any purpose of this Agreement, (ii) deliver to the Secured Party each Record included in the Collateral, together with each endorsement, instrument of assignment and other Record that the Secured Party requests to accomplish the assignment or other transfer of such Record to the Secured Party, and, until such delivery, hold such Record in trust for the Secured Party, (iii) cause each Instrument representing Proceeds or other proceeds of any of the Collateral to be made payable, as requested by the Secured Party, to the Secured Party alone or the Secured Party and the Debtor jointly, (iv) provide to the Secured Party all information requested by the Secured Party and relating to (A) any of the Collateral, (B) any Person (including, but not limited to, any Account Debtor) obligated with respect to any of the Collateral, (C) the Debtor, (D) any Guarantor or (E) the business, operations, assets, affairs or condition (financial or other) of the Debtor or any Guarantor (including, but not limited to, financial statements prepared in a form satisfactory to the Secured Party and, if requested by the Secured Party, audited, reviewed or compiled by an independent certified public accountant satisfactory to the Secured Party) and (v) permit each Officer, employee, accountant, attorney and other agent of the Secured Party to inspect the Collateral and audit, copy and extract each Record included in the Collateral.

5. **POWER OF ATTORNEY.** Upon the occurrence or existence of any Event of Default, The Debtor irrevocably and unconditionally appoints the Secured Party as the attorney-in-fact of the Debtor, with full power of substitution and revocation, to take, in the name and on behalf of the Debtor or otherwise, each action relating to any of the Collateral that the Debtor could take (subject to the limitations contained in Section 12(j) of this Agreement, including, but not limited to (a) receiving and collecting any mail addressed to the Debtor, directing the place of delivery of any such mail, opening any such mail and removing from any such mail and retaining any enclosure evidencing or relating to any of the Collateral and (b) taking any action described in Section 6 of this Agreement. The power of attorney given pursuant to the preceding sentence is coupled with an interest in favor of the Secured Party.

6. **CERTAIN RIGHTS, REMEDIES AND DUTIES.**

a. **Rights and Remedies Pursuant to Applicable Law.** With respect to the Collateral, the Secured Party shall have each applicable right and remedy pursuant to applicable law (including, but not limited to, the Uniform Commercial Code) or this Agreement.

b. **Additional Rights Without Event of Default.** The Secured Party shall have the right to (i) file in any public office each financing statement or amendment of any financing statement relating to any of the Collateral that the Secured Party desires to file and (ii) verify any of the Collateral in any manner or through any medium, whether directly with any Person (including, but not limited to, any Account Debtor) obligated with respect thereto or otherwise or in the name of the Debtor or otherwise.

c. **Additional Rights Upon or After Event of Default.** Upon or at any time after any occurrence or existence of any Event of Default, the Secured Party shall have the right to, for the purpose of preserving or enhancing the value of any of the Collateral or exercising any right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement, (i) perform each obligation of the Debtor pursuant to this Agreement and (ii) notify each Person

18

(including, but not limited to, any Account Debtor) obligated with respect to any of the Collateral of the interest of the Secured Party therein, direct such Person to make each payment with respect thereto directly and solely to the Secured Party and take control of all Proceeds and other proceeds thereof.

d. Application of Proceeds. The Secured Party shall apply all proceeds received by the Secured Party from any collection, sale or other disposition of or other recovery upon or otherwise on account of any of the Collateral (including, but not limited to, as money payable pursuant to any insurance on any of the Collateral) first to liabilities, costs and expenses described in Section 7 of this Agreement and then to the remainder of the Obligations, whether due or not due, in any order determined by the Secured Party.

7. EXPENSES; INDEMNIFICATION.

a. Expenses. The Debtor shall pay to the Secured Party on demand each cost and expense (including, but not limited to, if the Secured Party retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) heretofore or hereafter incurred by the Secured Party in (i) searching for, filing or recording or obtaining any information relating to any financing statement, amendment of any financing statement or other Record relating to any of the Collateral or otherwise obtaining any information relating to the Debtor or any of the Collateral or (ii) endeavoring to (A) enforce any obligation of the Debtor pursuant to this Agreement or preserve or exercise any right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement or (B) preserve or exercise any right or remedy relating to or collect, sell or otherwise dispose of or otherwise realize upon any of the Collateral. After such demand for the payment of any cost or expense incurred by the Secured Party in performing any obligation of the Debtor pursuant to this Agreement, the Debtor shall pay interest at an annual rate equal to the lesser of 25% or the highest rate permitted by applicable law on the portion of such cost or expense remaining unpaid.

b. Indemnification. The Debtor shall indemnify the Secured Party and each officer, employee, accountant, attorney and other agent of the Secured Party on demand, without any limitation as to amount, against each liability, cost and expense (including, but not limited to, if the Secured Party retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) heretofore or hereafter imposed on, incurred by or asserted against the Secured Party or such officer, employee, accountant, attorney or other agent as a result of any claim (including, but not limited to, any claim involving any allegation of any violation of applicable law (including, but not limited to, any criminal statute)), however asserted and whether now existing or hereafter arising or accruing, arising out of any collection, sale or other disposition of any of the Collateral or any breach by the Debtor of any representation or warranty or any covenant or other agreement contained in, or any other fact or circumstance relating to, this Agreement, except to the extent any such liability, cost or expense is caused by the gross negligence, bad faith or willful misconduct of the Secured Party or such officer, employee, accountant, attorney or other agent.

8. TERMINATION. This Agreement shall remain in full force and effect until and shall terminate only upon (a) the actual receipt by an officer of the Secured Party at the chief executive office of the Secured Party of a written notice of (i) the termination of this Agreement by any one of the Debtor, (ii) if any of the Debtor is an individual, the death of the individual Debtor or the judicial declaration of any individual Debtor's incompetence or (iii) if any of the Debtor is not an individual, the dissolution or cessation of existence of the Debtor, (b) the expiration of a reasonable period of time for the Secured Party to act upon such written notice and (c) the final and indefeasible payment in full of (i) each

19

portion of the Obligations (A) arising or accrued before such receipt of such written notice and the expiration of such period of time, (B) thereafter arising or accruing as a result of any credit or other financial accommodation theretofore committed or otherwise agreed to by the Secured Party or (C) thereafter arising or accruing as a result of any of the Obligations described in clause (c)(i)(A) or (B) of this sentence (including, but not limited to, (I) all interest, fees, charges, costs and expenses thereafter arising or accruing with respect to any of the Obligations described in such clause (c)(i)(A) or (B) and (II) all of the Obligations thereafter arising or accruing as a result of any direct or indirect extension, renewal, refinancing or other modification or replacement of any of the Obligations described in such clause (c)(i)(A) or (B)) and (ii) each liability, cost and expense that the Debtor is obligated to pay pursuant to Section 7 of this Agreement, whether theretofore or thereafter arising or accruing.

9. **REPRESENTATIONS AND WARRANTIES.** The Debtor represents and warrants to the Secured Party as follows:

   a. **Authority.** The execution, delivery to the Secured Party and performance of this Agreement and the grant or other creation of each Security Interest by the Debtor (i) do not and will not violate applicable law, any judgment or order of any court, agency or other governmental body by which the Debtor is bound or, if the Debtor is not an individual, any certificate or articles of incorporation or organization, by-laws, operating or partnership agreement or other charter, organizational or other governing document of the Debtor or any resolution or other action of record of any shareholders, members, directors or managers of the Debtor, (ii) do not and will not violate or constitute any default under any agreement, instrument or other Record by which the Debtor is bound, (iii) if the Debtor is not an individual, are and will be in furtherance of the purposes and within the power and authority of the Debtor and (iv) do not and will not require any authorization of, notice to or other act by or relating to any Person (including, but not limited to, any Account Debtor or, if the Debtor is not an individual, any shareholder, member, director or manager of the Debtor) that has not been duly obtained, given or done and is not in full force and effect.

   b. **Enforceability.** This Agreement is enforceable in accordance with its terms against the Debtor. All of Debtor's accounts, chattel paper, deposit accounts, documents, general intangibles, instruments, investment property, letter of credit rights and other liens, contracts, leases and agreements constituting the Collateral are and shall be valid, genuine and legally enforceable obligations and rights belonging to Debtor and not subject to any claim, defense, set-off, or counterclaim of any kind.

   c. **Ownership.** Debtor is, and shall remain owner of the Collateral.

   d. **Questionnaire.** Each answer contained in any questionnaire submitted by or on behalf of the Debtor to the Secured Party in connection with this Agreement (including, but not limited to, the Questionnaire set forth in Exhibit A attached to and made a part of this Agreement) is complete and accurate.

   e. **Rights and Obligations with Respect to Collateral.** Except as heretofore disclosed by the Debtor to the Secured Party in writing, there exists (i) no security interest in or other lien on any of the Collateral other than Permitted Liens, (ii) no presently effective financing statement or amendment of any financing statement relating to any of the Collateral and naming any Person other than the Secured Party as a secured party other than those relating solely to Permitted Liens, (iii) no contractual or other restriction on the grant or other creation of any security interest in or assignment, pledge or hypothecation of any of the Collateral, and (iv) no demand, claim, counterclaim, setoff or defense, no

20

action or other legal proceeding, and no outstanding judgment or order of any court, agency or other governmental body, relating to any of the Collateral. Debtor (i) shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein; (ii) shall cooperate with Secured Party in obtaining and maintaining control with respect to all deposit accounts, investment property, letter of credit rights and electronic chattel paper consituting the Collateral; (iii) shall not become a party to any restructuring of its form of business or participate in any consolidation, merger, liquidation or dissoultion without Secured Party's prior written consent; (iv) shall not change its state of location without first notifying Secured Party in writing; (v) shall immediately advise Lender in writing of any change in address of Debtor or the Collateral; and (vi) shall provide Secured Party with possession, as appropriate, of all chattel paper, documents, instruments and investment property constituting the Collateral.

f. **Actions with Respect to Collateral.** Except as heretofore disclosed by the Debtor to the Secured Party in writing, the Debtor has not (i) sold or otherwise disposed of any of the Collateral or any interest or right in any of the Collateral or (ii) extended, renewed, refinanced or otherwise modified or replaced, compromised, canceled, discharged, subordinated, accelerated, waived, forborne from exercising any right or remedy relating to or adversely affected any obligation of any Person (including, but not limited to, any Account Debtor) relating to any of the Collateral.

g. **Accounts and General Intangibles.** Each Account, and General Intangible included in the Collateral is or, if not now existing, will be genuine, in all respects what it purports to be and enforceable in accordance with its terms against each Person (including, but not limited to, any Account Debtor) obligated with respect thereto, subject to no demand, claim, countetclaim, setoff or defense.

h. **Incorrect or Misleading Information.** The Debtor has not provided to the Secured Party or pemitted to be provided to the Secured Party on his, her or its behalf any certificate, financial statement or other Record that contains any statement of fact that is incorrect or misleading in any material respect or ornits to state any fact necessary to make any statement of fact contained therein not incorrect or misleading in any material respect.

## 10. CERTAIN CONSENTS AND WAIVERS.

a. **Consents.** Except to the extent expressly provided in this Agreement, this Agreement shall not be modified or terminated, no Security Interest, no obligation of the Debtor pursuant to this Agreement and no right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement shall be impaired or otherwise adversely affected, and no such right or remedy shall be waived, by any act, ommission or other thing, whether heretofore occurred or hereafter occurring. The Debtor knowingly, voluntarily, intentionally and irrevocably consents, without any notice, to each act, omission and other thing, whether heretofore occurred or hereafter occurring, that would or might, but for such consent, modify or terminate this Agreement, impair or otherwise adversely affect any Security Interest or any such obligation, right or remedy or operate as a waiver of any such right or remedy.

b. **Waivers.** The Debtor knowingly, voluntarily, intentionally and irrevocably waives, without any notice, each act and other thing upon which, but for such waiver, any Security Interest, any obligation of the Debtor pursuant to this Agreement or any right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement would or might be conditioned.

21

11.  **NOTICES AND OTHER COMMUNICATIONS.** Each notice and other communication relating to this Agreement (i) shall be given in writing, (ii) if given by facsimile, shall be directed to the Secured Party at (716) 568-0266 and to the Debtor at his, her or its facsimile number set forth on the signature page of this Agreement, (iii) if given otherwise in writing, shall be directed to the Secured Party or the Debtor at their respective addresses indicated at the beginning of the Agreement or on the Signature Page to this Agreement and (iv) if sent by mail or overnight courier service, shall be deemed to have been given when deposited in the mail, first-class or certified postage prepaid, or accepted by any post office or overnight courier service for delivery, and to have been received by the Secured Party or the Debtor upon such Person's actual receipt thereof. Address and facsimile information may be updated by any notice sent in accordance with the preceding sentence. Each requirement under applicable law of reasonable notice of any event by the Secured Party to the Debtor shall be deemed to have been met if a notice of such event is given by the Secured Party to the Debtor at least 10 days before the date on or after which such event is to occur.

12.  **MISCELLANEOUS.**

a.  **Reliance by Other Persons.** Each Person (including, but not limited to, any Account Debtor) obligated with respect to any of the Collateral may accept without any question any exercise by the Secured Party of any right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement.

b.  **Limitation on Security Interest.** The payment of the Obligations shall not be secured by any Security Interest to the extent of any amount in excess of the maximum amount the payment of which can be so secured without rendering such Security Interest unenforceable under applicable law as a fraudulent conveyance or transfer.

c.  **Obligations Relating to Collateral.** The grant or other creation of any Security Interest shall not constitute any assignment by the Debtor to the Secured Party of any obligation of the Debtor relating to any of the Collateral. The Debtor shall remain obligated to perform each such obligation, and the Secured Party shall not be obligated to perform any such obligation, whether or not the Secured Party exercises any right or remedy pursuant to this Agreement or arising or accruing as a result of this Agreement. The only obligations of the Secured Party relating to the Collateral shall be, to the extent required by applicable law, to act in a commercially reasonable manner in exercising with respect to any of the Collateral any right or remedy pursuant to this Agreement or arising or accruing as a result of this Agreement.

d.  **Liability.** If more than one Person executes this Agreement, (i) each of them shall be jointly and severally liable pursuant to this Agreement, and (ii) this Agreement shall be construed, interpreted and enforced, whether in any action or other legal proceeding or otherwise, as to each of them as though each of them had executed and delivered to the Secured Party a separate agreement identical to this Agreement.

e.  **Assignment or Grant of Participation.** In conjunction with any assignment or other transfer of or grant of any participation in any of the Obligations by the Secured Party, the Secured Party shall have the right to assign or otherwise transfer or grant any participation in this Agreement, any Security Interest, any obligation of the Debtor pursuant to this Agreement or any right or remedy of the Secured

22

Party pursuant to this Agreement or arising or accruing as a result of this Agreement.

f. **Binding Effect.** This Agreement shall be binding upon the Debtor and each direct or indirect legal representative, successor and assignee of the Debtor and shall inure to the benefit of and be enforceable by the Secured Party and each direct or indirect successor and assignee of the Secured Party.

g. **Entire Agreement, Modifications and Waivers.** This Agreement contains the entire agreement between the Secured Party and the Debtor with respect to the subject matter of this Agreement and supersedes each action heretofore taken or not taken, each course of conduct heretofore pursued, accepted or acquiesced in, and each oral, written or other agreement and representation heretofore made, by or on behalf of the Secured Party with respect thereto. No action heretofore or hereafter taken or not taken, no course of conduct heretofore or hereafter pursued, accepted or acquiesced in, no oral, written or other agreement or representation heretofore made, and no agreement or representation hereafter made other than in writing, by or on behalf of the Secured Party shall modify or terminate this Agreement, impair or otherwise adversely affect any Security Interest, any obligation of the Debtor pursuant to this Agreement or any right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement or operate as a waiver of any such right or remedy. No modification of this Agreement or waiver of any such right or remedy shall be effective unless made in a writing duly executed by the Secured Party and specifically referring to such modification or waiver.

h. **Rights and Remedies Cumulative.** All rights and remedies of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement shall be cumulative, and no such right or remedy shall be exclusive of any other such right or remedy.

i. **Extent of Consents and Waivers.** Each consent and waiver of the Debtor contained in this Agreement shall be deemed to have been given to the extent permitted by applicable law.

j. **Exercise of Rights; Requests.** Except as expressly provided in this Agreement, each right and remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement may be exercised (i) at any time and from time to time, (ii) in the sole discretion of the Secured Party, (iii) without any notice or demand of any kind and (iv) whether or not any Event of Default or any other event or condition of default relating to any of the Obligations, any of the Collateral or any Other Collateral has occurred or existed, but the Secured Party shall not be obligated to exercise any such right or remedy. Each such right and remedy maybe exercised only to the extent that the exercise thereof does not (i) violate applicable law or (ii) if requiring the Debtor to take any action, require the Debtor to violate any ethical or disciplinary rule, regulation or law governing non-disclosure of confidential information by an attorney or prohibiting the unauthorized practice of law. Each request by the Secured Party pursuant to this Agreement may be made (i) at any time and from time to time, (ii) in the sole discretion of the Secured Party and (iii) whether or not any Event of Default or any other event or condition of default relating to any of the Obligations, any of the Collateral or any Other Collateral has occurred or existed.

k. **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any such provision shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other

23

such provision being prohibited or invalid.

l.  Governing Law. This Agreement shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York without regard to the law of any other jurisdiction; provided, however, that if any of the Collateral shall be located in any jurisdiction other than New York, the laws of such jurisdiction shall govern the method, manner and procedure for foreclosure of Secured Party's lien upon such Collateral and the enforcement of Secured Party's other remedies in respect of such Collateral to the extent that the laws of such jurisdiction ar different from or inconsistent with the laws of New York.

m.  Headings. In this Agreement, headings of sections are for convenience of reference only and have no substantive effect.

13. CONSENTS AND WAIVERS RELATING TO LEGAL PROCEEDINGS.

a.  JURISDICTIONAL CONSENTS AND WAIVERS. THE DEBTOR KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY CONSENTS IN EACH ACTION AND OTHER LEGAL PROCEEDING COMMENCED BY THE SECURED PARTY AND ARISING OUT OF OR OTHERWISE RELATING TO THIS AGREEMENT, ANY OF THE OBLIGATIONS, ANY OF THE COLLATERAL OR ANY OTHER COLLATERAL, TO THE EXCLUSIVE PERSONAL JURISDICTION OF ANY COURT LOCATED IN ERIE COUNTY, NEW YORK, THAT IS EITHER A COURT OF RECORD OF THE STATE OF NEW YORK OR A COURT OF THE UNITED STATES LOCATED IN ERIE COUNTY; PROVIDED, HOWEVER, SECURED PARTY MAY, AT ITS OPTION, COMMENCE ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER APPROPRIATE FORUM OR JURISDICITON TO OBTAIN POSSESSION OR FORECLOSURE UPON ANY COLLATERAL, TO OBTAIN EQUITABLE RELIEF OR TO ENFORCE ANY JUDGMENT OR ORDER OBTAINED BY SECURED PARTY AGAINST DEBTORS OR WITH RESPECT TO ANY COLLATERAL, TO ENFORCE ANY OTHER RIGHT OR REMEDY UNDER THIS AGREEMENT OR TO OBTAIN ANY OTHER RELIEF DEEMED APPROPRIATE BY SECURED PARTY. DEBTORS EXPRESSLY SUBMIT AND CONSENT IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY FEDERAL OR NEW YORK COURT LOCATED IN ERIE COUNTY, AND DEBTORS HEREBY WAIVE ANY OBJECTIONS WHICH DEBTORS MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENT TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH NEW YORK OR FEDERAL COURT.

b.  WAIVER OF TRIAL BY JURY. THE DEBTOR KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT THE DEBTOR MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY ACTION OR OTHER LEGAL PROCEEDING, WHETHER BASED ON ANY CONTRACT OR NEGLIGENT, INTENTIONAL OR OTHER TORT OR OTHERWISE, ARISING OUT OF OR OTHERWISE RELATING TO THIS AGREEMENT, ANY OF THE OBLIGATIONS, ANY OF THE COLLATERAL OR ANY OTHER COLLATERAL.

Dated: As of February 1, 2006                David McQuade Leibowitz, P.C.

24

_____
David McQuade Leibowitz, Individually
2000 Riverview Towers
111 Soledad
San Antonio, TX 78205
Facsimile No.

By: _____
 David McQuade Leibowitz, President
Facsimile No.   210-472-0458

25

## EXHIBIT A

## QUESTIONNAIRE

1. What is the Borrower's legal name?

2. What is the Borrower's jurisdiction of organization and business structure:

    A limited liability partnership under the laws of Texas

3. What is the Borrower's Federal Employer Identification Number?

4. What is the address (including state, county and zip code) of a business office of the Borrower?

    2000 Riverview Towers, 111 Soledad, San Antonio, TX 78205.

5. What is the address (including state, county and zip code) of each location at which any Record included in the Collateral is or will be kept other than the locations the addresses of which are indicated in the answers to question 4?

    2000 Riverview Towers, 111 Soledad, San Antonio, TX 78205

6. In the case of any security interest or other lien covering any of the Collateral and existing on the date of this Agreement in favor of any Person other than the Secured Party, what are the complete name and address of each such Person in whose favor such security interest or other lien exists, and what is the nature of such security interest or other lien?

    | Name of Person | Address | Nature of Security Interest/Lien |
    |---|---|---|

    Permitted Indebtedness (see clause (vi) of Section 4b);

    NONE, unless otherwise described below:

26

ACKNOWLEDGMENT (SECURITY AGREEMENT)

STATE OF TEXAS
COUNTY OF

On the 24th day of February, 2006 before me, the undersigned, a notary public in and for said state, personally appeared David McQuade Leibowitz personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as President of David McQuade Leibowitz, P.C., and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

[Notary stamp: EMMA G. CARREON, Notary Public, State of Texas, My Commission Expires JUNE 25, 2009]

STATE OF TEXAS
COUNTY OF

On the 24th day of February, 2006 before me, the undersigned, a notary public in and for said state, personally appeared David McQuade Leibowitz personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

[Notary stamp: EMMA G. CARREON, Notary Public, State of Texas, My Commission Expires JUNE 25, 2009]

27

## DESCRIPTION OF COLLATERAL
## UCC-1 FINANCING STATEMENT

With respect to Debtor David McQuade Leibowitz, P.C.,: All right, title and interest of the Debtor, whether now owned or hereafter acquired or now existing or hereafter arising or accruing, in and to (i) Accounts (including, but not limited to, Accounts consisting of any right to payment of a monetary obligation, whether or not earned by performance, for legal services rendered or to be rendered or for legal disbursements incurred or to be incurred by the Debtor) and General Intangibles (including, but not limited to, any interest in a partnership or limited liability company, and (ii) to the extent not referred to in clause (i) of this sentence (A) Supporting Obligations incident to, arising or accruing pursuant to or otherwise relating to any of the things referred to in clause (i) of this sentence, whether arising or accruing from any action taken by the Debtor or the Secured Party or otherwise, (B) Proceeds and other proceeds of any of the things referred to in clauses (i) and (ii) (A) of this sentence and (C) records (in whatever medium inscribed or stored ) relating to any of the things referred to in clause (i) of this sentence. In addition, all personal property and fixtures of the Debtor or in which the Debtor has an interest, in each case whether now or hereafter existing or now owned or hereafter acquired and whether subject to the Uniform Commercial Code including all goods, money, instruments, Accounts, inventory, equipment, documents, chattel paper, securities and General Intangibles and all interest, dividends and other distributions thereon paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all products and proceeds of, all of the foregoing.

With respect to Debtor David McQuade Leibowitz: All right, title and interest of the Debtor, whether now owned or hereafter acquired or now existing or hereafter arising or accruing, in and to (i) Accounts (including, but not limited to, Accounts consisting of any right to payment of a monetary obligation, whether or not earned by performance, for legal services rendered or to be rendered or for legal disbursements incurred or to be incurred by the Debtor) and General Intangibles (including, but not limited to, any interest in a partnership or limited liability company, and (ii) to the extent not referred to in clause (i) of this sentence (A) Supporting Obligations incident to, arising or accruing pursuant to or otherwise relating to any of the things referred to in clause (i) of this sentence, whether arising or accruing from any action taken by the Debtor or the Secured Party or otherwise, (B) Proceeds and other proceeds of any of the things referred to in clauses (i) and (ii) (A) of this sentence and (C) records (in whatever medium inscribed or stored ) relating to any of the things referred to in clause (i) of this sentence.

28

## GENERAL ASSIGNMENT AND BILL OF SALE

This General Assignment and Bill of Sale is made by DAVID MCQUADE LEIBOWITZ, P.C., an Texas professional corporation("Assignor") to Counsel Financial Services LLC ("Assignee") in connection with and only to the extent of the obligations secured by that certain Security Agreement, dated as of February 1, 2006, executed by Assignor in favor of Assignee ("Security Agreement"). Assignor, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby grant, bargain, sell, convey, transfer, assign, set over and deliver unto Assignee all of the Assignor's right, title and interest in and to the Collateral, as such term is defined in the Security Agreement (the "Assets"). Assignor, its successors and assigns, hereby covenant and agree with Assignee to execute and deliver such other and further assignments, instruments of transfer, bills of sale, conveyances or other documents as may be necessary to more fully vest in Assignee title to the Assets. This General Assignment and Bill of Sale shall be governed by and construed and interpreted in accordance with the laws of the State of New York.

Notwithstanding the foregoing, solely for the purpose of complying with the applicable code of professional conduct and the ethical rules thereunder, Assignor reserves the right to commence or consent to the commencement by Assignee (such consent not to be unreasonably withheld) of any action to collect for legal fees owing for services rendered by Assignor to its clients and preserves for its clients all claims or defenses they may have against Assignor with respect to the rendering of such legal services and payment of legal fees.

IN WITNESS WHEREOF, Assignor has caused this General Assignment and Bill of Sale to be executed on its behalf by a duly authorized officer as of the 1st of February, 2006.

DAVID MCQUADE LEIBOWITZ, P.C.

By: _____
David McQuade Leibowitz, President

29