UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | **MDL Docket No. 1657** |
| | * | |
| PRODUCTS LIABILITY | * | **SECTION L** |
| LITIGATION | * | |
| | * | **JUDGE FALLON** |
| This document relates to: | * | |
| | * | **MAGISTRATE JUDGE** |
| *Safdar Lilak* | * | **KNOWLES** |
| | * | |
| *v.* | * | |
| | * | |
| Merck & Co., Inc. | * | |
| Docket No. 2:06-cv-08318-EEF-DEK | | |

*************************************************************************

**DEFENDANT MERCK & CO., INC.'S OPPOSITION TO
PLAINTIFF'S "MOTION FOR SUMMARY JUDGMENT" FOR RELIEF OF CLAIMS,
& FOR EXPEDITED RESOLUTION TO CONTROVERSY(S) OF CLAIMS**

Defendant Merck & Co., Inc. ("Merck"), through its undersigned counsel, opposes Plaintiff Safdar Lilak's motion, styled as a "'Motion For Summary Judgment' For Relief of Claims, & For Expedited Resolution To Controversy(s) Of Claims" (filed on September 23, 2010). Mr. Lilak chose to participant in the VIOXX Resolution Program, he has fully availed himself of every level of review available under the Program, and has received final settlement payment for his VIOXX injury claims. Consistent with the terms of his agreement with Merck under the Program, he has submitted a Stipulation of Dismissal with Prejudice of his claims against Merck that are pending in this Court, and Merck intends to file such Stipulation and ask for the dismissal of the above-captioned case. Merck has fulfilled each of its contractual obligations to Plaintiff under the terms of their settlement agreement, and there is no legal basis for the judicial relief he now requests.

In further opposition to the motion, Merck specifically states as follows:

1. As this Court is aware, on November 9, 2007, the parties in this litigation announced the establishment of the VIOXX Resolution Program. The requirements of that Program are set out in the Master Settlement Agreement ("Agreement" or "MSA"). By submitting an Enrollment Form, claimants agreed to be bound by all of the terms and conditions of the Agreement. *See* MSA § 1.2.4 (*available at* http://www.browngreer.com/vioxxsettlement/osa.htm).

2. Submission of an Enrollment Form is irrevocable, and a claimant may not, other than as specifically provided for under the Agreement, withdraw an Enrollment Form or otherwise unilaterally exit the Program. *See* MSA § 1.2.3.

3. As part of the settlement process, claimants were required to submit to the Claims Administrator (BrownGreer) complete Claims Packages, including pharmacy, medical and event records, as well as properly and fully executed Releases and Medical and Employment Record Authorization Forms. *See* MSA §§ 1.3.1, 1.2.2.1. Additionally, claimants with lawsuits pending against Merck were required to provide properly and fully executed Stipulations for Dismissal With Prejudice. *See* MSA § 1.2.2.1.

4. In order to be eligible for payment under the Program, claimants must meet, among other criteria, certain injury, duration, and proximity "gate criteria" as defined in the MSA. *See* MSA §§ 2.1, 2.2, 2.3. If a claimant was determined to be qualified to enter the Program and his claims package was complete, the Claims Administrator processed the claim through the claims valuation process set forth in the MSA. *See* MSA § 3.

5. A qualified claimant was entitled to receive a monetary payment based on the number of points he was awarded during the valuation process. The points valuation process considered, without limitation, the extent of the injury, age, consistency of VIOXX usage,

duration of VIOXX usage, risk factors, and the date of the eligible event.  *See* MSA § 3.2.2.  After the valuation process was completed for a particular claimant, the Claims Administrator notified the claimant of his or her points award.  *See* MSA § 3.2.3.   Each claimant then had the opportunity to appeal his or her points award to a Special Master for a *de novo* review.  MSA §3.2.4.  The monetary value of the points awarded to each claimant was determined after all qualified claimants had completed the valuation process.  MSA § 3.1.

6. In addition to the claims valuation process set forth in §3 of the MSA, the MSA also allowed qualifying claimants to apply for additional "Extraordinary Injury Payments" ("EI Payments") based on a showing of an extraordinary medical injury that was not reflected in the injury criteria within the claims valuation process, and/or properly documented economic damages (*i.e.*, medical expenses and lost wages) in excess of $250,000.  Under the terms of the MSA, all determinations concerning claimants' eligibility to receive EI Payments, and the amount thereof, were to be made by the Claims Administrator, and were to "be final, binding and Non-Appealable."  MSA § 4.2.7.

7. The rules of the EI Payments Program are set forth in detail in the Claims Administrator's Review Criteria Manual, and the Instruction Manual for Unrepresented Claimants on the Vioxx Extraordinary Injury Program (*available at* http://www.browngreer.com/vioxxsettlement/ei.htm).

8. To substantiate an EI claim, claimants were required to submit certain specific documents, such as medical bills and cancelled checks, as set forth in the Review Criteria Manual.  The Claims Administrator reviewed each EI claim and supporting documentation, and issued to each EI claimant a Notice of EI Assessment, setting forth assessed amount of the EI claim, and explaining how the assessment was determined and how any missing documentation

affected the assessment.  Review Criteria Manual § VII.A.  A claimant then had the opportunity to submit additional documentation and request a second review of his or her EI claim by the Claims Administrator.  *Id.* § VII.A.2(b).  After a second review, the Claims Administrator issued a Notice of Second Review of EI Assessment to explain the determinations made in the second review.  *Id.* § VII.B.2.

9. After the second review by the Claims Administrator, claimants were permitted to appeal the Second Review EI Assessment to a Special Master.  Review Criteria Manual § VII.C.  The decision of the Special Master was returned to the Claims Administrator to make any necessary adjustments to the EI Assessment required by the Special Master's decision, and at that point, the EI Assessment became final, and "not . . . subject to any further appeal."  *Id.* § VII.C.6(b).

10. Plaintiff enrolled in the VIOXX Resolution Program and thereby agreed to be bound by the terms and conditions of the MSA.  As part of his enrollment in the Program, Plaintiff executed and submitted to the Claims Administrator a Stipulation for Dismissal with Prejudice of his claims against Merck.

11. Plaintiff's claim subsequently proceeded through the review process set forth in the MSA.  On October 22, 2009, Plaintiff received a Notice of Points Award for his ischemic stroke ("IS") claim, which stated that he was to receive 27.07 points.[1]  Plaintiff appealed this Points Award to first to the Claims Administrator and then to the Special Master, and both reviews upheld the original determination of 27.07 points.  *See* Ex. A (Claims Administrator Post-Appeal Notice of Points Award), and Ex. B (Notice of Special Master Points Determination).  On January 29, 2010, the Claims Administrator issued an interim payment of

---

[1] Plaintiff also originally asserted a myocardial infarction ("MI") claim, which he abandoned after it failed to meet the gate criteria.

$19,598.68 to Plaintiff, and on June 14, 2010, the Claims Administrator issued a final payment of $24,998.24.  In accordance with the terms of the MSA, *see* MSA § 7.3, the Claims Administrator then delivered Plaintiff's Stipulation for Dismissal with Prejudice of his claims to Merck on July 6, 2010.  Under the MSA, Merck is free to file Plaintiff's Stipulation in any relevant proceeding.  MSA § 7.3.

12.     In addition to his IS claim, on September 1, 2009, Plaintiff also submitted an EI claim requesting compensation for medical expenses and lost wages.[2]  On March 31, 2010, his EI claim was denied by the Claims Administrator because he failed to submit sufficient documentation to substantiate his claimed medical expenses and lost wages.  *See* Ex. C (July 7, 2010 letter to Plaintiff from VIOXX Claims Administrator and attachments) at 2, 25-33.

13.     Plaintiff requested a second review of his EI claim, and on April 26, 2010, his EI claim was denied again by the Claims Administrator because the submitted documentation was determined to be insufficient to substantiate Plaintiff's claim.  *See* Ex. C at 15-24.

14.     After his EI claim failed the second review by the Claims Administrator, Plaintiff submitted an appeal to the Special Master, who upheld the Claims Administrator's denial of the claim based on Plaintiff's failure to provide sufficient documentation of his claim.  *See* Ex. C at 3-14.

15.     On September 23, 2010, the Plaintiff filed the instant motion.  Though he has styled his motion as, among other things, a "Motion for Summary Judgment," he acknowledges that "there are no issues of Law which are tri-able." (Mot. at 2.)  Instead, the relief he requests is

---

[2] Plaintiff made an additional EI claim based on a special medical injury, but he failed to submit any documentation for that claim until after the deadline for EI claims submissions had passed. That claim was not considered by the Claims Administrator. *See* Ex. C at 32.

the reversal of the Special Master's decision upholding the denial of his EI claim under the terms of the MSA. (Mot. at 15-16, 19.)

16. Plaintiff voluntarily and irrevocable elected to participate in the Settlement Program for the resolution of his VIOXX claims, and he has accepted payment under the Program for his IS claim. Having availed himself of every available level of review within the Settlement Program with respect to all of his claims, Plaintiff has received all the process that he is contractually entitled to under the terms of his agreement with Merck. The fact that he is unsatisfied with the final amount of settlement payments he received under the Program does not permit him to unilaterally exit the Program and revive his claims against Merck in this Court.

17. Merck is in possession of Plaintiff's Stipulation for Dismissal with Prejudice of his claims, and, consistent with the terms of the MSA, Merck intends to file the Stipulation in this Court and request the dismissal of Plaintiff's lawsuit with prejudice.

18. Accordingly, there is no legal basis for relief Plaintiff requests, and his motion should therefore be denied.

## **CONCLUSION**

For the foregoing reasons, Merck respectfully requests that the Court enter an order denying Plaintiff's motion, and granting Merck leave to file Plaintiff's Stipulation of Dismissal of his lawsuit.

Dated: October 27, 2010

Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

 —and—

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Opposition to Plaintiff's "Motion For Summary Judgment" For Relief of Claims, & For Expedited Resolution To Controversy(s) Of Claims has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 27th day of October, 2010.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel