UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | |
|     Products Liability Litigation | * | |
| | * | |
| This Document Relates to: | * | MDL No. 1657 |
| | * | |
| STATE OF OKLAHOMA, *ex rel* | * | SECTION L |
|   OKLAHOMA HEALTHCARE | * | |
|   AUTHORITY, | * | JUDGE ELDON E. FALLON |
| | * | |
|            Plaintiff, | * | MAGISTRATE JUDGE |
| | * | KNOWLES |
|   versus | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
|           Defendant. | * | |
| | * | |
| Case No. 2:09-cv-07218-EEF-DEK | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**<ins>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS</ins>**

## TABLE OF CONTENTS

**PAGE**

I.  ALL OF PLAINTIFF'S CLAIMS FAIL BECAUSE THE OHA HAS NOT
    PROPERLY PLED CAUSATION. ....................................................................................5

II. PLAINTIFF'S CLAIMS FAIL FOR OTHER REASONS AS WELL. ...........................12

    A.  Plaintiff Fails To State A Claim Under The ODTPA (Count I). ..........................12

    B.  Plaintiff Fails To State A Claim Under The OCPA (Count II) For Multiple
        Reasons. ...............................................................................................................16

    C.  Plaintiff Fails To State A Claim For Unjust Enrichment (Count III)
        Because It Has Asserted Other Legal Theories Of Relief. ...................................19

    D.  Plaintiff Fails To State A Claim For Deceit/Fraud And Misrepresentation
        (Counts IV, V). .....................................................................................................20

    E.  Plaintiff's Negligent Misrepresentation Claim (Count VI) Fails For
        Multiple Reasons. .................................................................................................22

    F.  Plaintiff Fails To State Claims For Negligence, Gross Negligence And
        Product Liability (Counts VII, VIII and X). .........................................................25

    G.  Plaintiff's Warranty-Based Claims (Count IX) Fail For Several Additional
        Reasons. ...............................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

### FEDERAL CASES

*Alexander v. Smith & Nephew, P.L.C.*,
  98 F. Supp. 2d 1310 (N.D. Okla. 2000) ................................................................6

*Arnett v. Mylan, Inc.*,
  No. 2:10-cv-00114, 2010 U.S. Dist. LEXIS 50460 (S.D. W. Va. May 20, 2010)..............18

*Aschroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ........................................................................................5

*Baker v. Velocity Express, Inc.*,
  No. CIV-08-417-M, 2008 U.S. Dist. LEXIS 69849 (W.D. Okla. Sept. 16, 2008) .............21

*Benchmark Electrics, Inc. v. J.M. Huber Corp.*,
  343 F.3d 719 (5th Cir. 2003)................................................................................21

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001)............................................................................15, 16

*Boggs v. Great N. Insurance Co.*,
  659 F. Supp. 2d 1199 (N.D. Okla. 2009) .................................................................6

*Brewer Construction Co. v. Sw. Bell Telegraph, L.P.*,
  No. CIV-06-518-F, 2007 U.S. Dist. LEXIS 28106 (W.D. Okla. Apr. 16, 2007) .........23, 24

*Buford White Lumber Co. Profit Sharing & Sav. Plan & Trust v. Octagon Properties,*
  *Ltd.*,
  740 F. Supp. 1553 (W.D. Okla. 1989) ..........................................................21, 22, 23

*Chapman v. Chase Manhattan Mortg. Corp.*,
  No. 04-C 2007 U.S. Dist. LEXIS 70655 (N.D. Okla. Sept. 24, 2007)...............................14

*Cimino v. Raymark Industries*,
  151 F.3d 297 (5th Cir. 1998)...........................................................................11, 12

*In re GMC*,
  No. 03-1546, 2005 U.S. Dist. LEXIS 23260 (W.D. Okla. Aug. 8, 2005)...........................14

*Harrison v. Leviton Mfg. Co.*,
  No. 05-C 2006 U.S. Dist. LEXIS 76334 (N.D. Okla. Oct. 19, 2006).................................26

*In re Katrina Canal Breaches Litigation*,
  495 F.3d 191 (5th Cir. 2007)..................................................................................7

*Kleier Advertising, Inc. v. Premier Pontiac, Inc.*,
  921 F.2d 1036 (10th Cir. 1990)...............................................................................6

*Lillard v. Stockton*,
  267 F. Supp. 2d 1081 (N.D. Okla. 2003) .................................................................21

*Melvin v. Credit Collections, Inc.*,
  No. CIV-00-211-T, 2001 U.S. Dist. LEXIS 24402 (W.D. Okla. Apr. 5, 2001) .................17

*Moore v. Dallas Indep. Sch. Dist.*,
  370 F. App'x 455 (5th Cir. 2010) ...........................................................................5

*Occidental Hotels Management, S.L. v. Hargrave Arts, LLC*,
  No. 09-CV-526-GKF-PJC, 2010 U.S. Dist. LEXIS 34012 (N.D. Okla. Apr. 6,
  2010).............................................................................................................6

*Parks v. AT&T Mobility, LLC*,
  No. 5:2009cv00212, 2010 U.S. Dist. LEXIS 19699 (W.D. Okla. Mar. 4, 2010) ...............22

*In re Pharm. Industry Average Wholesale Price Litigation*,
  252 F.R.D. 83 (D. Mass. 2008) ............................................................................17

*Qassas v. Daylight Donut Flour Co., LLC*,
  No. 09-CV-0663-CVE-PJC, 2010 U.S. Dist. LEXIS 58478 (N.D. Okla. June 10,
  2010).............................................................................................................25

*Quarles v. Little River Energy Co.*,
  No. 00-CV-913-GKF-PJC, 2008 U.S. Dist. LEXIS 4128 (N.D. Okla. Jan. 18, 2008) ....6, 20

*South Carolina Electric & Gas Co. v. Westinghouse Electric Corp.*,
  826 F. Supp. 1549 (D.S.C. 1993) .....................................................................24, 25

*Tillman v. Camelot Music, Inc.*,
  408 F.3d 1300 (10th Cir. 2005) ...........................................................................20

*Travelers Indem. Co. v. Hans Lingl Anlagenbau Und Verfahrenstechnik GMBH & Co.
  KG*,
  189 F. App'x 782 (10th Cir. 2006) ..........................................................................6

*In re USG Corp.*,
  290 B.R. 223 (Bankr. Del. 2003) ...........................................................................11

*United Golf, LLC v. Westlake Chem. Corp.*,
  No. 05-CV-0495-CVE-PJC, 2006 U.S. Dist. LEXIS 57531 (N.D. Okla. Aug. 15,
  2006).........................................................................................................26, 27

*Vanguard Environmental, Inc. v. Kerin*,
  528 F.3d 756 (10th Cir. 2008) ..............................................................................16

*In re Vioxx Products Liability Litigation*,
  239 F.R.D. 450 (E.D. La. 2006) .......................................................................13, 26

*In re Vioxx Products Liability Litigation*,
  No. 2:05-md-1657, 2008 WL 3285912 (E.D. La. Aug. 7, 2008)...................................4

*Wilder v. Virginia Hospital Association*,
  496 U.S. 498 (1990) ...........................................................................................7

*In re Zyprexa Products Liability Litigation*,
  671 F. Supp. 2d 397 (E.D.N.Y 2009)............................................................... passim

## STATE CASES

*American Fertilizer Specialists, Inc. v. Wood*,
  635 P.2d 592 (Okla. 1981) ..........................................................................29, 30

*Austin v. Cockings*,
  1994 OK 29 (Okla. 1994)....................................................................................21

*Clinesmith v. Harrell*,
  992 P.2d 926 (Okla. Civ. App. 1999)................................................................22

*Commercial Financial Services v. Arthur Andersen LLP*,
  94 P.3d 106 (Okla. Civ. App. 2004)..................................................................25

*Conatzer v. American Mercury Insurance Co.*,
  15 P.3d 1252 (Okla Civ. App. 2000)..................................................................14

*Debrah F. Fink, D.M.D., MS, PC v. Ricoh Corp.*,
  839 A.2d 942 (N.J. Super. Ct. 2003)..................................................................19

*Duronio v. Merck & Co.*,
  No. 267003, 2006 Mich. App. LEXIS 1841 (Mich. Ct. App. June 13, 2006) ...................16

*Grand Ventures v. Whaley*,
  622 A.2d 655 (Del. Super. Ct. 1992) .................................................................15

*Hardesty v. Andro Corp.-Webster Division*,
  555 P.2d 1030 (Okla. 1976) ...............................................................................28

*Hester v. Purex Corp. Ltd.*,
  534 P.2d 1306 (Okla. 1975) ...............................................................................28

*Estate of Hicks v. Urban East, Inc.*,
  92 P.3d 88 (Okla. 2004) .....................................................................................17

*Hutchinson v. Carter*,
  2001 OK Civ App. 124 (Okla. Ct. App. 2001) ..................................................21

*Hydro Turf, Inc. v. International Fidelity Insurance Co.*,
  91 P.3d 667 (Okla. Civ. App. 2004)...................................................................20

*Murray v. D&J Motor Co.*,
  958 P.2d 823 (Okla. Civ. App. 1998)..................................................................17

*Nichols v. Pray, Walker, Jackman, Williamson & Marler*,
  144 P.3d 907 (Okla. Civ. App. 2006).................................................................22

*Patterson v. Beall*,
  19 P.3d 839 (Okla. 2000) ......................................................................................6

*Prince v. B.F. Ascher Co., Inc.*,
  90 P.3d 1020 (Okla. Civ. App. 2004)....................................................................6

*Ritter v. Custom Chemicides, Inc.*,
  912 S.W.2d 128 (Tenn. 1995) ............................................................................24

*Rogers v. Meiser*,
  68 P.3d 967 (Okla. 2003) ................................................................................23

*Waggoner v. Town & Country Mobile Homes, Inc.*,
  808 P.2d 649 (Okla. 1990) .........................................................................26, 27

*Wooten v. Motorola Commc'ns & Electrics, Inc.*,
  488 P.2d 1284 (Okla. 1971) ............................................................................29

## FEDERAL STATUTES & RULE

42 U.S.C. § 1396r-8(d)(1)(B) .............................................................................8

42 U.S.C. § 1396r-8(k)(2)(A)(i) ..........................................................................7

Fed. R. Civ. P. 12(c) ..........................................................................................5

## STATE STATUTES

Okla. Stat. tit. 12 .........................................................................................28, 29

Okla. Stat. tit. 15, § 751 .....................................................................................4

Okla. Stat. tit. 15, § 754(2) ...............................................................................17

Okla. Stat. tit. 15, § 761.1B ..........................................................................18, 19

Okla. Stat. tit. 78, § 51 .......................................................................................4

Okla. Stat. tit. 78, § 54A ...................................................................................15

Okla. Stat. tit. 78, § 54C ...................................................................................16

Okla. Stat. tit. 78, § 55A(1) ...............................................................................15

## OTHER AUTHORITY

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure (3d ed. 2004) ....................7

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

The Oklahoma Healthcare Authority ("OHA") seeks to recover all of the money it spent on Vioxx on behalf of Oklahoma citizens through Medicaid.[1]  In pursuing such relief, the OHA proceeds on the same two alternative, fundamentally flawed theories of causation that this Court recently rejected in a similar suit brought by the Louisiana Attorney General – i.e., that:  (1) the OHA would not have covered Vioxx at all but for Merck's conduct; or (2) the OHA's beneficiaries would not have purchased Vioxx but for Merck's conduct.  Just as in the Louisiana AG case, neither theory works.  The first fails because state and federal law ***required*** the OHA to cover prescriptions for FDA-approved drugs like Vioxx.  Notably, the OHA's Complaint offers no theory of how it could have avoided the obligation to cover Vioxx – it does not allege, for example, that it would have altered its formulary in any way.  The OHA's second causation theory – that Oklahoma physicians would not have prescribed Vioxx to their patients but for Merck's misrepresentations – is likewise insufficient to state a viable cause of action because of the highly individualized evidence that would be necessary to prove such a claim.

Each of Plaintiff's claims also fails because of other pleading deficiencies.  For example:

- Plaintiff's claim under the ***Oklahoma Deceptive Trade Practices Act*** ("ODTPA") fails because:  (1) that statute only regulates anticompetitive conduct – which is not alleged here; (2) Plaintiff has not alleged a claim for injunctive relief, which is a necessary predicate to monetary relief under the ODTPA; and (3) Merck's marketing of Vioxx complied with FDA regulations and therefore cannot give rise to a claim under the ODTPA.

- Plaintiff's claim under the ***Oklahoma Consumer Protection Act*** ("OCPA") fails for many of the same reasons.  In addition, the OCPA claim is barred because the OHA is not a "consumer" (and did not engage in a "consumer transaction" with Merck) and therefore lacks standing to sue.

---

[1]     Plaintiff's Complaint refers generally to providing "health and prescription benefits for persons dependent on the State of Oklahoma for necessary medical care, including Medicaid recipients" (Compl. ¶ 1), but never identifies any other program.

- Plaintiff's claim for **unjust enrichment** fails because Plaintiff has asserted other legal theories of relief – and Oklahoma only allows unjust enrichment claims where the plaintiff alleges that it does not have an adequate remedy at law.

- Plaintiff's claims for **statutory deceit** and **common law fraud** fail because the OHA has not identified any affirmatively false statements by Merck on which it relied – and Merck did not have a relationship with the OHA capable of giving rise to a duty to disclose that would support a claim for concealment.

- Plaintiff's claim for **negligent misrepresentation** is also barred because:  (1) a negligent misrepresentation claim cannot be based on an omission under Oklahoma law; (2) even if such a claim could be based on an omission, Plaintiff has failed to adequately allege a duty to disclose; and (3) Oklahoma does not recognize negligent misrepresentation claims in product liability cases like this one.

- To the extent that Plaintiff's **negligence** and **gross negligence** claims seek reimbursement for prescriptions, those claims are barred by the "no injury" doctrine or the economic-loss doctrine.

- Plaintiff's claims for **breach of implied warranty** and **breach of express warranty** both fail because:  (1) the OHA was not a "buyer" of Vioxx; (2) Plaintiff does not allege that it gave pre-suit notice to Merck of its claims; and (3) the individualized-proof rule bars implied warranty claims insofar as individualized evidence will be necessary to prove that Vioxx was "unmerchantable" for every OHA beneficiary.

- Finally, Plaintiff's cause of action for **"product liability"** – like its negligence-based claims – is barred under the economic-loss doctrine.

For all of these reasons, the Court should grant Merck judgment on the pleadings.

## BACKGROUND

Vioxx is a prescription nonsteroidal anti-inflammatory and pain-relief drug ("NSAID") manufactured by Merck.  (*See* Compl. ¶¶ IV.A.1-3.)  The United States Food & Drug Administration ("FDA") approved the sale and distribution of Vioxx on May 20, 1999.  (*See id.* ¶ IV.A.1.)  Vioxx was available in the U.S. from May 1999 until it was voluntarily withdrawn from the market in September 2004.  (*See id.* ¶¶ IV.A.1, IV.M.2.)

As the Court knows, Merck and the Negotiating Plaintiffs' Counsel settled approximately 47,000 lawsuits brought by Vioxx users asserting personal injuries in November 2007.

Governmental entities were not a party to the settlement; under the Master Settlement Agreement negotiated by the parties, "Enrolled Program Claimants and their respective counsel shall be solely responsible to negotiate the satisfaction and discharge of all" governmental liens, including liens under state Medicaid programs.  (*See* Master Settlement Agreement § 12.1.1 (attached as Ex. 1).)

After the announcement of the Master Settlement Agreement and the commencement of the resolution program it created, this Court turned its attention to a group of lawsuits filed by state attorneys general against Merck.  In the main, these suits allege that state Medicaid programs paid money for Vioxx prescriptions that they would not have paid but for Merck's conduct.  The Court addressed the first of these cases earlier this year – *Louisiana ex rel. Caldwell v. Merck & Co.*  Prior to trial, the Court granted partial summary judgment to Merck, holding that the plaintiff could not proceed to trial on any causation theory that depended upon individualized showings – e.g., that Merck's conduct caused doctors to prescribe, and patients to purchase, Vioxx.  Order & Reasons, D.38,797, *In re Vioxx Prods. Liab. Litig.*, No. 05-md-1657, at 12-15 (Mar. 31, 2010) ("*Caldwell* Order").  Instead, the plaintiff would have to prove that Merck's conduct caused *it* to cover Vioxx in the first place – and that, absent such conduct, the plaintiff would have denied coverage of Vioxx altogether.  *Id.* at 8-12.  The plaintiff proceeded to trial on the basis of that limited causation theory, and it failed to prove its case.  *See generally* Findings Of Fact & Conclusions Of Law, D.45,739, *In re Vioxx Prods. Liab. Litig.*, No. 05-md-1657 (June 29, 2010).

This is another government action, brought by the OHA to recover funds it spent on Vioxx.  The Complaint alleges that Oklahoma incurred losses both by paying for Vioxx it would not otherwise have paid for and by paying a premium price for Vioxx over "other viable, less

expensive, pharmaceutical treatments." (*See, e.g.*, Compl. ¶ V.A.6.)  With respect to some causes of action, the OHA also seeks relief for "pay[ments] for related health problems following heart attacks and strokes." (*See, e.g., id.* ¶ V.E.5 (negligent misrepresentation).)[2]

The Complaint asserts eight causes of action:  (1) a claim under the ODTPA, Okla. Stat. tit. 78, §§ 51 et seq. (Compl. ¶ V.A); (2) a claim under the OCPA, Okla. Stat. tit. 15, §§ 751 et seq. (Compl. ¶ V.B); (3) unjust enrichment (Compl. ¶ V.C); (4) fraud/deceit and misrepresentation (Compl. ¶ V.D); (5) negligent misrepresentation (Compl. ¶ V.E); (6) negligence and gross negligence (Compl. ¶ V.F); (7) breach of implied and express warranties (Compl. ¶ V.G); and (8) product liability (Compl. ¶ V.H).  The OHA seeks damages, punitive damages, restitution, penalties and costs and fees.  (Compl. ¶¶ VIII.1, XI.3-.9.)

## ARGUMENT

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

Where, as here, a Rule 12(c) motion is premised on a plaintiff's failure to state a claim for which relief can be granted, a court should analyze the motion under the same standard as a Rule 12(b)(6) motion to dismiss.  *Moore v. Dallas Indep. Sch. Dist.*, 370 F. App'x 455, 457 (5th Cir. 2010).  In order to survive a motion for judgment on the pleadings, "a plaintiff must plead enough facts to state a claim to relief that is plausible on its face."  *Id.* (citation and internal quotation marks omitted).  The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully."  *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Rather,

---

[2]      Plaintiff seeks such recovery even though the Master Settlement Agreement included a lien program to ensure that states were compensated for such expenditures.  *See In re Vioxx Prods. Liab. Litig.*, No. 2:05-md-1657, 2008 WL 3285912, at *3 (E.D. La. Aug. 7, 2008).

a complaint must contain "[f]actual allegations . . . [that] raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, Plaintiff has failed to state a plausible claim against Merck with regard to any of its causes of action. ***First***, all of Plaintiff's claims fail because Plaintiff has not alleged a viable theory of causation. ***Second***, Plaintiff has also failed to sufficiently plead the required elements of its ODTPA, OCPA, unjust enrichment, fraud, negligent misrepresentation, negligence, breach of warranty and product liability claims. For all of these reasons, the Court should grant judgment on the pleadings to Merck.

## I.   ALL OF PLAINTIFF'S CLAIMS FAIL BECAUSE THE OHA HAS NOT PROPERLY PLED CAUSATION.

Plaintiff's claims first fail because it has not pled a viable theory of causation. As a preliminary matter, each of Plaintiff's causes of action requires an allegation of causation:

- ***ODTPA:*** *See Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1046 (10th Cir. 1990) (ODTPA plaintiff must prove that he or she sustained "actual damages as a result of" the defendant's allegedly deceptive conduct);

- ***OCPA:*** *Patterson v. Beall*, 19 P.3d 839, 846-47 (Okla. 2000) (OCPA) ("plaintiff [must] prove that his or her damages were caused by the defendant's unlawful practice");

- ***Unjust enrichment:*** *Quarles v. Little River Energy Co.*, No. 00-CV-913-GKF-PJC, 2008 U.S. Dist. LEXIS 4128, at *4-5 (N.D. Okla. Jan. 18, 2008) (noting that one of the requirements for a claim for unjust enrichment under Oklahoma law is "a connection between the enrichment and impoverishment");

- ***Fraud:*** *Occidental Hotels Mgmt., S.L. v. Hargrave Arts, LLC*, No. 09-CV-526-GKF-PJC, 2010 U.S. Dist. LEXIS 34012, at *7 (N.D. Okla. Apr. 6, 2010) (one of the elements of fraud is that the "plaintiff acted in reliance upon [defendant's fraud] . . . and [] that he thereby suffered injury");

- ***Negligent misrepresentation:*** *Boggs v. Great N. Ins. Co.*, 659 F. Supp. 2d 1199, 1212 (N.D. Okla. 2009) (granting summary judgment on negligent misrepresentation claim because, *inter alia*, plaintiff failed to show "a causal connection between the alleged negligent misrepresentations and the property damage");

- **Negligence:** *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310, 1319 (N.D. Okla. 2000) ("there must be a causal connection between Defendant's actions and the injury");

- **Breach of warranty:** *Travelers Indem. Co. v. Hans Lingl Anlagenbau Und Verfahrenstechnik GMBH & Co. KG*, 189 F. App'x 782, 787 (10th Cir. 2006) ("Our conclusion that [plaintiff's] evidence of causation is insufficient to resist summary judgment as to its products-liability claims also defeats its breach-of-warranty claims[.]");

- **Product liability:** *Prince v. B.F. Ascher Co., Inc.*, 90 P.3d 1020, 1026 (Okla. Civ. App. 2004) ("[t]o maintain a products liability action, a plaintiff must prove [that] the product was the cause of the injury").

Plaintiff pleads two theories of causation:  (1) the OHA would not have included Vioxx on its list of approved drugs but for Merck's alleged misrepresentations (Compl. ¶ IV.Q.3); and (2) absent Merck's alleged misrepresentations, the OHA would have paid for other, less expensive drugs – instead of Vioxx – because doctors would not have prescribed the drug (*id.* ¶ IV.Q.4-.6).  Neither theory is viable.  In addition, Plaintiff also seeks to recover for treating Medicaid beneficiaries with alleged Vioxx-related injuries (*see, e.g.*, Compl. ¶¶ V.E.5, V.C.4), which would only compound the individualized nature of the causation inquiry.

*First*, Plaintiff's theory that the OHA would not have covered Vioxx if Merck had provided more information about the drug's risks suffers a fatal flaw:  state and federal law required the OHA to cover prescriptions for drugs like Vioxx, notwithstanding their purported risks, as long as they were FDA-approved.  Thus, even if the OHA had wanted to deny reimbursement to Medicaid participants who took Vioxx, it lacked discretion to do so.

A state, like Oklahoma, that elects to participate in Medicaid in order to receive federal funds must comply with certain federal rules.  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502 (1990).  One such rule is that a state generally may not refuse to pay for prescriptions of a "covered outpatient drug" that is subject to a rebate agreement between the Secretary and the

manufacturer.  42 U.S.C. § 1396r-8(k)(2)(A)(i).  At all relevant times, Vioxx was a "covered outpatient drug" that was subject to a rebate agreement between the Secretary and Merck.  (*See* Rebate Agreement (attached as Ex. 2).)[3]  There are a number of exceptions to the general rule that a state must pay for covered outpatient drugs,[4] but none applies here, and Plaintiff does not allege otherwise.  Accordingly, at all relevant times, the OHA was required by federal law to reimburse Medicaid participants who purchased Vioxx.  As a result, the OHA cannot go forward on a theory that it would not have covered Vioxx if Merck had disclosed more or different risk information about the drug.

**Second**, the OHA's theory that Merck's alleged misrepresentations led Oklahoma physicians to prescribe Vioxx and Oklahoma patients to take it – thereby causing the OHA to pay a "premium price" for Vioxx, rather than less expensive alternatives – is barred under the individualized-proof rule.  *See Caldwell* Order at 12-15; *In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 453-54 (E.D.N.Y 2009).

As this Court recognized in the Louisiana AG action, government entities cannot pursue claims against Merck based on the general theory that "Merck's misrepresentations led to the

---

[3]     The Court may consider the fact that Merck has a rebate agreement with the Secretary at this stage.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("because the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss"); 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 376 (3d ed. 2004) ("The court is not limited to the four corners of the complaint . . . [courts] have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record . . . these items may be considered by the district judge without converting the motion into one for summary judgment."); *see also* 5C *id.* § 1371, at 276 (explaining that the same rules apply to a motion for judgment on the pleadings).

[4]     *See* 42 U.S.C. § 1396r-8(d)(1)(B)(i), (k)(6) (off-label prescriptions may be denied if the prescribed use is not medically accepted as described in the FDA-approved label or in federally-sanctioned medical literature); *id.* § 1396r-8(d)(1)(B)(ii), (d)(2) (coverage may be denied if the drug belongs to a statutorily specified category (such as barbiturates) or is prescribed for a statutorily specified treatment (such as smoking cessation)); *id.* § 1396r-8(d)(1)(B)(iii) (if the Secretary approves it, the state may execute a special rebate agreement with the manufacturer restricting coverage of the drug); *id.* § 1396r-8(d)(1)(B)(iv), (d)(4) (instead of an "open formulary" (under which the state must cover all FDA-approved drugs), a state may adopt an "exclusive formulary," which allows exclusion of particular uses of particular drugs under certain circumstances).

prescription of Vioxx." *Caldwell* Order at 14.  There, the Louisiana Attorney General brought

economic loss claims very similar to those alleged in this case.  One of the Louisiana Attorney

General's causation theories was that fewer Vioxx prescriptions would have been written – and

thus fewer Medicaid dollars spent – but for Merck's alleged misrepresentations and omissions

about Vioxx.  (*See* Louisiana Atty. Gen.'s Mem. of Law in Opp'n to Merck's Mot. to Dismiss

Pl.'s Am. Compl. at 16 (attached as Ex. 3).)  The Court held that such a theory of causation was

barred as a matter of law because of the highly individualized evidence that would be necessary

to prove such a claim.  According to the Court, "[e]ach decision by each doctor and each patient

was different," and therefore, the "effect that any alleged misrepresentations had on each

[prescribing] decision is unique." *Caldwell* Order at 14.  For instance, "[m]any patients may

have chosen to use Vioxx even if they had been fully informed of the risks associated with it,"

and "many doctors may have weighed the risks and benefits of  the drug and felt that in a

specific case, prescribing Vioxx was an acceptable risk." *Id*.  As a result, it would be "simply

impossible, or close to it, to determine the individual thought process of each of the thousands of

doctors and patients involved" in a single trial. *Id.* at 14.  As a result, the Court held that the

Louisiana AG could not go forward with its claims based on this theory of recovery.

The Court's ruling in the Louisiana AG action was based in large part on Judge

Weinstein's rejection of consumer fraud claims arising from the State of Mississippi's Medicaid

payments for the prescription drug Zyprexa. *See In re Zyprexa*, 671 F. Supp. 2d at 453.  In that

case, the State of Mississippi asserted claims under Mississippi's Medicaid fraud statute, the

Mississippi Product Liability Act, the Mississippi Consumer Protection Act, and for common-

law fraud, negligence and unjust enrichment.  One of the State's theories of causation was that

the defendant's alleged misconduct caused more Zyprexa to be prescribed to Medicaid

beneficiaries, either because doctors prescribed Zyprexa for off-label use more than they otherwise would have, or because doctors would have been more hesitant to prescribe the drug if it had come with a stronger warning. *Id.* at 454. Judge Weinstein granted the defendant's motion for summary judgment on this theory, holding that the State could not prove its theory of causation on an aggregate basis. Judge Weinstein began by explaining that, as a practical matter, Mississippi's theories of relief turned the suit into a functional class action, even though the State itself was a single party and Rule 23 had not been invoked. The court reasoned that "[c]onceptually and structurally," "the State's suit is predicated on numerous acts of fraud . . . alleged to have individually affected a statewide population of prescribing physicians and patients." *Id.* at 433. Judge Weinstein went on to hold than an individualized-proof rule applies in a structural class action just as it does in a traditional class action under Rule 23. Such a rule requires plaintiffs to prove causation on an individual basis and thus bars aggregate adjudication of claims that include a causation element. *Id.* at 434.

Applying the individualized-proof rule to Mississippi's theories of relief, Judge Weinstein held that the State could not prevail on any theory of causation that depended upon individualized showings – including the State's theory that it had spent money on prescriptions that were made as a result of the defendant's representations or warnings. *Id.* at 454-55. Judge Weinstein reasoned that "[i]ndividualized proof is needed . . . to overcome the possibility that a Mississippi patient was prescribed Zyprexa for some reason other than belief in the accuracy of Lilly's warnings or representations. Whether a more adequate warning by Lilly would have prevented any particular patient's injuries requires consideration of what the prescribing physician knew and the cost-benefit analysis that applied to the individual patient suffering from a variety of serious mental problems . . . ." *Id.*

This case is no different.  The OHA claims that "[a]s a direct and proximate result of [Merck's] wrongful conduct . . . Plaintiff" and "its agents . . . have sustained financial losses . . . including paying for Vioxx that they would not have otherwise paid and economic losses incurred by paying a premium price for Vioxx, as opposed to other viable, less expensive, pharmaceutical treatments."  (Compl. ¶ V.A.6.)  Just as in *Caldwell* and *Zyprexa*, Plaintiff's claims will turn on each doctor's decision to prescribe – and each patient's decision to take – Vioxx.  As a result, the OHA will need to make thousands of individualized showings on causation that would turn this case into a "structural" class action and entail an inquiry that "is impractical and beyond the resources of [this] [C]ourt."  *Zyprexa*, 671 F. Supp. 2d at 459.

Nor can Plaintiff prove its claims through the use of statistical sampling – i.e., by establishing causation for only a segment of its beneficiaries and extrapolating to the rest.  *See Cimino v. Raymark Indus.*, 151 F.3d 297 (5th Cir. 1998); *Zyprexa*, 671 F. Supp. 2d at 438.  In *Cimino*, the plaintiffs in a quasi-class action consisting of more than 3,000 individuals claimed that the defendants were liable for personal injuries stemming from exposure to asbestos-containing insulation.  The trial court allowed plaintiffs to "prove" damages for all claimants based on a "sample" of 160 cases that plaintiffs argued were "reliably representative" of the entire pool of cases.  On appeal, however, the Fifth Circuit reversed, holding that "causation and damages are determined respecting plaintiffs as individuals, not groups."  151 F.3d at 313 (internal quotation marks omitted).  According to the court, the jury's findings regarding "the actual damages of each of the" 160 sample plaintiffs "cannot control the determination of, or afford any basis for denial of [defendants'] Seventh Amendment rights to have a jury determine, the distinct and separable issues of the actual damages of each of the" other plaintiffs at issue. *Id*. at 320-21.

10

Relying on *Cimino*, Judge Weinstein explained in *Zyprexa* that sampling is not a legitimate means of avoiding the individualized-proof rule in cases like this one because doing so would contravene the Seventh Amendment right to a jury trial on all claims.  *See* 671 F. Supp. 2d at 438; *see also In re USG Corp.*, 290 B.R. 223, 226 (Bankr. Del. 2003) (affirmative defenses may not be proven as to a percentage of claimants and "extrapolate[d]" to "the entire claimant pool to arrive at an estimated total allowed claim" because such an approach would violate the claimants' Seventh Amendment rights).  This case is no different.  Because "[e]ach decision by each doctor and each patient was different," the "effect that any alleged misrepresentation had on each [prescribing] decision is unique."  *Caldwell* Order at 14.  It would thus be unfair to assume that an analysis of a particular sample of Vioxx purchases could accurately predict causation for much broader groups of purchases.  To the contrary, Merck has a "Seventh Amendment right[] to have a jury determine . . . the distinct and separable issue[]" of causation with regard to each Vioxx purchase allegedly affected by Merck's purported misstatements.  *Cimino*, 151 F.3d at 320-21.

Sampling would also impermissibly replace jurors with experts.  While the governmental action plaintiffs have not explained how they intend to try a case based on sampling, the case would presumably be tried in the abstract through competing expert testimony about the attributes of the purchasers.  In essence, such an approach would put the experts in the place of fact-finders, since the jurors would never hear direct evidence about any Vioxx purchases – or render verdicts on specific cases.  And even if plaintiffs were to present the jury with evidence on a minuscule percentage of the relevant Vioxx purchases, any effort to extrapolate those findings to the entire body of purchases would realistically be left to the experts.  Thus, the experts would be usurping the job of the jury with respect to the overwhelming majority of

transactions.  For these reasons, there would be no way to conduct a trial based on sampling that is consistent with the proper function of juries and experts.

*Finally,* to the extent the OHA is seeking reimbursement for sums it allegedly spent on treating Medicaid beneficiaries with alleged Vioxx-related injuries, such claims are clearly barred by the individualized-proof rule – and this Court's ruling denying class certification of Vioxx-related personal injury claims.  *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 461 (E.D. La. 2006).  As the Court recognized in that ruling, resolving personal injury allegations requires "highly individualized inquir[ies]" to determine "whether Vioxx specifically caused the injury alleged by each plaintiff in light of his or her medical history, family history, other risk factors, and use of the drug."  *Id*. at 462.  Accordingly, the "number, uniqueness, singularity, and complexity of the factual scenarios surrounding" each patient's allegation that he or she was injured as a result of taking Vioxx – as opposed to some other cause – would "swamp" any aggregate trial on personal injury issues.  *Id*. at 462-63.  Judge Weinstein similarly recognized in *Zyprexa* that "the variation in individual cases" is too great in a personal injury action to allow recovery based on "aggregate evidence."  *See* 671 F. Supp. 2d at 454, 460.  For all of these reasons, it would be impossible for the OHA to prove in a single trial that the injuries allegedly sustained by its Medicaid beneficiaries were caused by their use of Vioxx.

## II.   PLAINTIFF'S CLAIMS FAIL FOR OTHER REASONS AS WELL.

Even if the OHA could properly state a cognizable theory of causation, all of its claims would still fail as a matter of law for a number of other, claim-specific reasons.

### A.    Plaintiff Fails To State A Claim Under The ODTPA (Count I).

Plaintiff has failed to properly allege a violation of the ODTPA because:  (1) the ODTPA only regulates anticompetitive conduct – and not consumer fraud; (2) the OHA does not assert a claim for injunctive relief, which is a necessary predicate to monetary relief under the ODTPA;

and (3) the marketing of Vioxx in compliance with FDA regulations is exempt from the ODTPA's reach.

*First*, Plaintiff has failed to properly allege a violation of the ODTPA because the statute only covers anticompetitive conduct, which is not alleged in the Complaint. As several courts have recognized, "the [ODTPA] only provides a remedy for wronged business competitors, not consumers." *In re GMC*, No. 03-1546, 2005 U.S. Dist. LEXIS 23260, at *11-*12 (W.D. Okla. Aug. 8, 2005) (dismissing ODTPA claim involving allegedly defective vehicle because ODTPA "requires a showing that the defendants are competitors of the plaintiff" to bring suit) (citing *VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1108 (10th Cir. 1982)); *Chapman v. Chase Manhattan Mortg. Corp.*, No. 04-CV-0859-CVE-FHM, 2007 U.S. Dist. LEXIS 70655, at *12 n.8 (N.D. Okla. Sept. 24, 2007) ("it has been 'definitively established that [the ODTPA] protect[s] competing business interests and do[es] not present a basis for suit by consumers'") (citation omitted).

For example, in *Conatzer v. American Mercury Insurance Co.*, individual plaintiffs brought a putative class action against an insurance company and an automobile seller, alleging violations of the ODTPA. 15 P.3d 1252, 1253-54 (Okla Civ. App. 2000). The basis of the complaint was that the defendant insurance company allegedly failed to obtain the salvage certificate of title for a vehicle purchased from the defendant automobile seller. *Id.* at 1254. The trial court held – and the appellate court agreed – that the plaintiffs' ODTPA claims were not "valid" because the statute only regulates anticompetitive practices. *Id.* The court explained that because "[p]laintiffs are not business competitors of either of the two [] defendants," their ODTPA claims failed as a matter of law. *Id.*

Similarly here, there is no allegation that the OHA is a competitor of Merck or that Merck engaged in anticompetitive practices.  Instead, Plaintiff's claims are based on the allegation that the OHA – as a payor – was defrauded by Merck's alleged misrepresentations. (*See, e.g.*, Compl. ¶ V.A.4.)  As a result, the OHA cannot state a valid claim under the ODTPA.

**Second**, Plaintiff's ODTPA claim also fails because the OHA does not seek injunctive relief.  The ODTPA statute only authorizes monetary relief "in addition to injunctive relief." Okla. Stat. tit. 78, § 54A (2010).  Courts applying similar provisions in other states' consumer protection statutes have agreed that a claim for monetary relief necessarily fails absent a predicate claim for injunctive relief.  For example, in *Grand Ventures v. Whaley*, 622 A.2d 655, 661 (Del. Super. Ct. 1992), the court held that a plaintiff bringing suit under Delaware's Deceptive Trade Practices Act could not go forward with a claim for damages absent proof that it was entitled to injunctive relief.  In so holding, the court noted that Delaware's statute was similar to Oklahoma's, which provides that a plaintiff "must first have standing to seek an injunction before obtaining damages."  *Id*. (citing 78 Okla. St. Ann. § 54(a)).  Accordingly, because the OHA does not plead a claim for injunctive relief, its claim for damages under the ODTPA is barred.

**Third**, the OHA's claim under the ODTPA also fails because it is based on conduct that is beyond the reach of the statute.  The ODTPA expressly exempts conduct that is "in compliance with the orders or rules of, or a statute administered by, a federal . . . governmental agency."  Okla. Stat. tit. 78, § 55A(1) (2010).  Courts applying similar provisions in other states' consumer protection statutes have agreed that claims arising from the sale of an FDA-approved drug fail as a matter of law.  *See, e.g.*, *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001) (holding that Illinois Consumer Fraud Act claim arising from the marketing of certain

14

over-the-counter drugs was barred by statutory exemption because the Act does not apply to "[a]ctions . . . specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States") (citing 815 Ill. Comp. Stat. 505/10b(1)).  In *Bober*, for example, the court observed that the analogous Illinois statutory exemption recognizes "the primacy of federal law in th[e] field" of pharmaceutical drugs by "protect[ing] companies from liability if their actions are authorized by federal law."  246 F.3d at 942.  According to the court, "the pharmaceutical industry is highly regulated," and Illinois made a policy decision not to "impose higher disclosure requirements on parties than those that are sufficient to satisfy federal regulations."  *Id.* at 941-42; *see also Duronio v. Merck & Co.*, No. 267003, 2006 Mich. App. LEXIS 1841, at *20-21 (Mich. Ct. App. June 13, 2006) (holding that consumer fraud claim involving Vioxx was barred under Michigan law immunizing conduct "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States").  The same is true here.  The FDA expressly permitted the sale of Vioxx, and it was, at all relevant times, an FDA-approved drug. Thus, Plaintiff's claim fails for this reason too.[5]

---

[5]    The OHA's claim for attorneys' fees under the ODTPA is also barred under the individualized-proof rule. Except in cases of willful conduct or bad faith, any award of attorneys' fees under the ODTPA is vested in the trial court's discretion. *See* Okla. Stat. tit. 78, § 54C ("[i]n any action instituted under the provisions of this act, the court may, in its discretion, award reasonable attorneys' fees to the prevailing party" unless the court finds that the conduct was willful or carried out in bad faith); *Vanguard Envtl., Inc. v. Kerin*, 528 F.3d 756, 758-59 (10th Cir. 2008) (noting same).  In *Zyprexa*, Judge Weinstein held that the exercise of discretion in awarding statutory penalties under Mississippi law would run into the same problems of individualized proof that foreclosed many of the State's other claims.  *See* 671 F. Supp. 2d at 459.  According to the court, "[d]ue to the nature of the alleged misconduct and injuries in the instant case, and in light of the discretion invested in the court to set the amount of the CPA penalty, proper assessment of the claimed penalties would require individualized consideration of the circumstances of each prescription alleged to be in violation of the statute."  *Id.*  Similarly, here, the decision whether to award fees would depend upon the "nature of the alleged misconduct and injuries in the" case.  In order to determine whether the OHA has established "bad faith or willful conduct," the Court would have to analyze every possible prescription of Vioxx giving rise to Plaintiff's claim and determine whether attorneys' fees are warranted – and if so, in what amount – with respect to each prescription.  It would be impossible for Plaintiff to present such "individualized information relating to each prescription" at an aggregate trial.  *Id.* at 459.

**B.     Plaintiff Fails To State A Claim Under The OCPA (Count II) For Multiple Reasons.**

The OHA's claim for violation of the OCPA also fails because:  (1) the OHA is not a "consumer" and therefore did not engage in a "consumer transaction" with Merck, which is a requirement under the statute; (2) like the ODTPA, the OCPA exempts conduct authorized by the FDA; and (3) even if Plaintiff had properly alleged a claim under the OCPA, its claim for statutory penalties would still fail under the individualized-proof rule.

*First*, Plaintiff's claim under the OCPA fails because the OHA is not a "consumer" who engaged in a "consumer transaction" with respect to Vioxx – and it therefore lacks standing to sue under the statute.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 109 (D. Mass. 2008).  In *Average Wholesale Price*, for example, the court acknowledged that the OCPA was one of a number of state consumer-protection statutes that "do not afford a legal remedy to commercial entities like TPPs."  *Id.* at 109; *see also, e.g.*, *Murray v. D&J Motor Co.*, 958 P.2d 823, 832 (Okla. Civ. App. 1998) (describing as essential element of OCPA claim that the plaintiff "is a consumer and a consumer transaction is involved"); *Melvin v. Credit Collections, Inc.*, No. CIV-00-211-T, 2001 U.S. Dist. LEXIS 24402, at *7-8 (W.D. Okla. Apr. 5, 2001) (granting motion to dismiss OCPA claim because debt collection practices did not constitute "consumer transactions").  Just like the commercial third-party payors in *Average Wholesale Price*, the OHA was not a "consumer" of Vioxx and did not engage in a "consumer transaction" with Merck.  Instead, it merely paid for purchases made by its beneficiaries. Accordingly, the OHA lacks standing to sue under the OCPA.

*Second*, the OHA's claims are also barred because FDA-regulated drugs are exempted from the OCPA's provisions.  Like the ODTPA, the OCPA exempts transactions governed by federal regulations.  *See* Okla. Stat. tit. 15, § 754(2) (exempting "[a]ctions or transactions

16

regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state or the United States"); *Estate of Hicks v. Urban East, Inc.*, 92 P.3d 88, 95 (Okla. 2004) (dismissing claim under the OCPA stemming from provision of care and medical services at nursing home because such conduct was regulated under laws administered by the Oklahoma Department of Health). Courts have recognized that where – as here – a prescription drug has been approved by the FDA, OCPA claims based on the sale of that drug are barred. *See*, *e.g.*, *Arnett v. Mylan, Inc.*, No. 2:10-cv-00114, 2010 U.S. Dist. LEXIS 50460, at *1-2 (S.D. W. Va. May 20, 2010). In *Arnett*, the plaintiff husband asserted OCPA and other claims against manufacturers of a patch that administers pain relief through the skin after the plaintiff's wife died while wearing one of the patches. *Id.* The core allegation in the plaintiff's complaint was that the defendant manufacturers failed to disclose information regarding the health risks posed by the patches. *Id.* at *4. The defendants moved to dismiss the OCPA claim on the ground that Section 754(2) of the statute exempts conduct regulated by the FDA. *Id.* at *4-5. The court granted the motion, holding that "[t]he distribution and sale of pharmaceutical drug products is a comprehensively regulated activity under the federal Food, Drug, and Cosmetic Act." *Id.* at *9-10. The court explained that because "defendants' marketing and distribution of the patch constitutes a transaction that is regulated by federal law[,]" the OCPA claim failed as a matter of law. *Id.* at *10.

This case is no different. The FDA explicitly approved Vioxx and authorized its sale. Accordingly, Merck's conduct in marketing and distributing Vioxx was regulated by the FDA at all relevant times. Moreover, even if the OHA had alleged that Merck violated FDA regulations – which it has not – the statutory exemption contained in the OCPA would still bar liability under the statute because the exemption "focuses solely on whether there is regulation, not

whether there is compliance." *Id.* at *10.  Thus, under the plain terms of the OCPA, Plaintiff's claim fails for this reason as well.

      **Third**, even if the OHA had properly stated a claim under the OCPA, its claim for penalties is nonetheless barred because the award of penalties under the OCPA is discretionary and therefore implicates the individualized-proof rule.  An award of penalties under the OCPA must be supported by a finding that the violation was "unconscionable."  Okla. Stat. tit. 15, § 761.1B (2010) ("[t]he commission of any act or practice declared to be a violation of the Consumer Protection Act, if such act or practice is also found to be unconscionable, shall render the violator liable to the aggrieved customer for the payment of a civil penalty").  If a court finds that the violation of the OCPA was "unconscionable," the court may exercise its discretion in determining the proper amount for a civil penalty.  *Id.* (providing that the defendant is liable for "a sum set by the court of not more than Two Thousand Dollars ($ 2,000.00) for each violation"); *Debrah F. Fink, D.M.D., MS, PC v. Ricoh Corp.*, 839 A.2d 942, 981 (N.J. Super. Ct. 2003) (noting that under the OCPA, "the court has discretion to award a civil penalty against defendant of up to $ 2000 for each violation").

      Here, determining whether penalties are justified under the OCPA would require a fact-intensive inquiry regarding the circumstances under which each Oklahoma Medicaid beneficiary was prescribed Vioxx.  *See Zyprexa*, 671 F. Supp. 2d at 459 (explaining that the individualized inquiries necessary to determine whether statutory penalties were appropriate doomed the plaintiffs' claims).  For example, with respect to each beneficiary for which Plaintiff claims entitlement to relief, the Court would have to consider whether Merck "took advantage of a consumer reasonably unable to protect his or her interests because of his or her age, physical infirmity, ignorance . . . ."  Okla. Stat. tit. 15, § 761.1B (2010).  In addition, the Court would

have to determine whether Merck "knew or had reason to know that the transaction he or she induced the consumer to enter into was excessively one-sided." *Id.* These case-specific factors would overwhelm the resources of the Court and transform this action into a multitude of mini-trials on the issue of penalties. For this reason, too, Plaintiff's claim for penalties under the OCPA fails.

### C. Plaintiff Fails To State A Claim For Unjust Enrichment (Count III) Because It Has Asserted Other Legal Theories Of Relief.

The OHA has not properly pled an equitable claim for unjust enrichment because it has also asserted legal claims, including, *inter alia*, breach of warranty, fraud and violation of consumer protections statutes. Under Oklahoma law, a plaintiff seeking to recover on a theory of unjust enrichment must demonstrate that he or she does not have an adequate remedy at law. *See Hydro Turf, Inc. v. Int'l Fidelity Ins. Co.*, 91 P.3d 667, 673 (Okla. Civ. App. 2004) ("Because an adequate remedy at law is available to [plaintiff] through its negligence claim, it was not necessary for the trial court to invoke its equitable jurisdiction on the unjust enrichment issue."); *Tillman v. Camelot Music, Inc.*, 408 F.3d 1300, 1309 (10th Cir. 2005) (affirming grant of summary judgment in favor of defendant on unjust enrichment claim because, *inter alia*, "Oklahoma law provides that courts are not to invoke their equitable jurisdiction when an adequate legal remedy is available"); *see also Quarles*, 2008 U.S. Dist. LEXIS 4128, at *4-5 (granting judgment in favor of the defendant because the plaintiffs "have an adequate remedy at law"). Here, Plaintiff has failed to allege that it has no adequate remedy at law. To the contrary, the OHA explicitly pleads that it has numerous legal claims for relief. Because the OHA has alleged that an "adequate remedy at law is available," its claim for unjust enrichment must be dismissed. *Hydro Turf*, 91 P.3d at 673.

### D.   Plaintiff Fails To State A Claim For Deceit/Fraud And Misrepresentation (Counts IV, V).

Even if the OHA had adequately stated a cognizable theory of causation, its claims for deceit/fraud and misrepresentation would still fail because:  (1) it has not alleged that Merck made any affirmative misrepresentations on which it relied; and (2) it has not alleged that Merck had a duty to disclose capable of giving rise to a claim for fraud by omission.

While the OHA offers conclusory allegations that Merck "made many material *misrepresentations* to Plaintiff" (Compl. ¶ V.D.4 (emphasis added)), it does not point to any specific statement by Merck on which it relied, as required to state a claim for fraud under Oklahoma law.  *See Austin v. Cockings*, 1994 OK 29, 35 (Okla. 1994); *Hutchinson v. Carter*, 2001 OK Civ App. 124, at *6 n.4 (Okla. Ct. App. 2001) (fraud and deceit actions fail absent proof of reliance).  Instead, Plaintiff's Complaint contains only a generalized allegation that the OHA acted in "complete and foreseeable reliance" on Merck's conduct in marketing and selling Vioxx.  (Compl. ¶ V.D.6.)  Under Federal Rule of Civil Procedure 9(b), that is not enough; rather, Plaintiff was required to allege with specificity "the who, what, when, where, and how" of Merck's allegedly fraudulent misstatements.  *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation omitted); *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1112-13 (N.D. Okla. 2003) (recommending dismissal of common-law fraud and deceit claims pursuant to Rule 9(b) because "[p]laintiffs failed to allege with particularity any misrepresentations or omissions by [d]efendants which have caused them harm") (magistrate opinion and report affirmed and adopted by, 267 F. Supp. 2d 1081 (N.D. Okla. 2003)).  In addition, Plaintiff was required to plead reliance with particularity.  *Baker v. Velocity Express, Inc.*, No. CIV-08-417-M, 2008 U.S. Dist. LEXIS 69849, at *4 (W.D. Okla. Sept. 16, 2008) (dismissing common-law fraud claim arising out of failure-to-pay wages under Rule 9(b) because, *inter alia*, "plaintiff has not

pled that . . . [she] actually relied upon defendant's representation"); *Buford White Lumber Co. Profit Sharing & Sav. Plan & Trust v. Octagon Props., Ltd.*, 740 F. Supp. 1553, 1569-70 (W.D. Okla. 1989) (dismissing common-law fraud claims stemming from misrepresentations regarding the sale of securities where plaintiffs failed to plead reliance with sufficient particularity under Rule 9(b)). Plaintiff has not done so. Nowhere in the Complaint is there any allegation that the OHA was exposed to a specific false statement by Merck – much less that the OHA relied on that statement in providing coverage for Vioxx. Thus, Plaintiff cannot proceed with a claim for fraud based on any alleged affirmative representations.

Nor can Plaintiff proceed with a claim for fraud by omission. It is well settled under Oklahoma law that fraud claims based on an alleged omission require proof that the defendant had a special duty to disclose information to the plaintiff. *See, e.g.*, *Parks v. AT&T Mobility, LLC*, No. 5:2009cv00212, 2010 U.S. Dist. LEXIS 19699, at *11 (W.D. Okla. Mar. 4, 2010) ("A claim of fraud . . . based on nondisclosure of information requires the existence of a duty to disclose") (citation omitted); *Nichols v. Pray, Walker, Jackman, Williamson & Marler*, 144 P.3d 907, 912 (Okla. Civ. App. 2006) ("Both [fraud and deceit] . . . require a duty to speak before silence can be considered actionable."); *Clinesmith v. Harrell*, 992 P.2d 926, 928 (Okla. Civ. App. 1999). Specifically, a claim for fraudulent omission "requires the existence of a fiduciary duty, or a duty based upon a confidential relationship." *Buford White Lumber Co. Profit Sharing & Sav. Plan & Trust v. Octagon Props., Ltd.*, 740 F. Supp. at 1570 (dismissing actual fraud and constructive fraud claims in case arising out of the sale of certain securities because, *inter alia*, "[n]o facts establishing or from which such a legally cognizable duty [to disclose] may be inferred have been alleged by Plaintiffs").

Here, the OHA does not allege that it had a fiduciary or other confidential relationship with Merck capable of giving rise to a duty to disclose.  To the contrary, the OHA merely claims that Merck manufactured prescription drugs used by the OHA's beneficiaries – and that the OHA paid for those prescriptions.  Thus, the OHA had no direct relationship with Merck at all – much less the type of "fiduciary" or "confidential" relationship that would give rise to a duty to disclose under Oklahoma law.  For this reason too, the OHA's fraud claim fails.

### E.    Plaintiff's Negligent Misrepresentation Claim (Count VI) Fails For Multiple Reasons.

Plaintiff's claim for negligent misrepresentation fails as a matter of law for three separate reasons:  (1) Oklahoma does not recognize negligent misrepresentation claims based on omissions; (2) even if Oklahoma did recognize such a claim, it would fail in this case because the OHA has not alleged that Merck had a duty to disclose information to it; and (3) Oklahoma has not – and would not – allow negligent misrepresentation claims based on product liability allegations.

*First*, the OHA's negligent misrepresentation claim fails because "a cause of action for negligent misrepresentations does not apply to omissions."  *Buford White Lumber Co.*, 740 F. Supp. at 1562 (plaintiff could not state claim for negligent misrepresentation in case involving alleged securities fraud where plaintiff's theory of liability was based on defendant's alleged failure to disclose).  The OHA bases its negligent misrepresentation claim entirely on the alleged "omission, suppression or concealment of material facts" related to Vioxx.  (Compl. ¶ V.E.4.)  Thus, its negligent misrepresentation claim fails for this reason alone.

*Second*, even if Oklahoma did recognize negligent misrepresentation claims based on alleged omissions, the OHA's claim would still fail because the Complaint does not allege that Merck had a special duty to disclose information.  Oklahoma law provides that a cause of action

for negligent misrepresentation requires "a breach of some legal or equitable duty." *Rogers v. Meiser*, 68 P.3d 967, 971 n.7 (Okla. 2003), *overruled on other grounds*, *White v. Heng Ly Lim*, 224 P.3d 679 (Okla. 2009). Simply alleging that the defendant failed to act reasonably is not sufficient. *See, e.g.*, *Brewer Constr. Co. v. Sw. Bell Tel., L.P.*, No. CIV-06-518-F, 2007 U.S. Dist. LEXIS 28106, at *6 (W.D. Okla. Apr. 16, 2007) (rejecting plaintiff's theory that defendant "owed a duty to [plaintiff] to conduct its operations in a reasonable manner, that [it] negligently breached that duty"). In *Brewer*, for example, the plaintiff company brought suit against the defendant company asserting claims for, *inter alia*, negligence and negligent misrepresentation. *Id.* at *8. The action arose out of a contract between the plaintiff and the City of Oklahoma City under which the plaintiff was to make substantial utility improvements for the city. *Id.* at *2. According to the plaintiff, in order to perform under the contract with the city, the defendant telephone company had to relocate underground cables it owned. *Id.* at *6. However, when the defendant failed to relocate the cables in a timely manner, the plaintiff sustained delay damages and subsequently filed suit against the defendant. *Id.* The court rejected the negligent misrepresentation claim, finding that the defendant did not owe the plaintiff any statutory, regulatory, or contractual duty to relocate the cables in a manner acceptable to the plaintiff. *Id.* at *9-10. As a result, the court resolved that "in the absence of any duty owed by [defendant] to [plaintiff] . . . [the negligent misrepresentation] claim must [] fail as a matter of law." *Id.* at *11.

While Plaintiff here generally asserts that Merck "had *a duty* to warn which arose when it knew, or with reasonable care should have known, that Vioxx users had exhibited repeated instances of serious and often deadly side effects" (Compl. ¶ V.E.3), it cannot point to any common-law, statutory, regulatory or contractual duty that required Merck to disclose the

23

information allegedly withheld.  Thus, Plaintiff's negligent misrepresentation claim fails for this reason, too.

**Third**, no Oklahoma court has held that claims for negligent misrepresentation can be based on the purchase of an allegedly risky product – and courts in many other states have explicitly held that they cannot.  *See, e.g.*, *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 133 (Tenn. 1995) (finding that negligent misrepresentation claim could not be maintained in case involving purely economic losses stemming from purchase of allegedly defective product); *South Carolina Elec. & Gas Co. v. Westinghouse Elec. Corp.*, 826 F. Supp. 1549, 1557 (D.S.C. 1993) (dismissing negligent misrepresentation claim claims arising out of plaintiffs' purchase of allegedly defective products).

In *South Carolina Electric & Gas*, for example, the court dismissed negligent misrepresentation claims based on the plaintiffs' purchase of allegedly defective nuclear power materials.  The court explained that negligent misrepresentation claims are only cognizable in "situations in which one is in the business of supplying information for the guidance of others in their business transactions, thus limiting such tort actions to the 'sale' of information, not products."  826 F. Supp. at 1557.  All indications are that Oklahoma courts would hold similarly. For example, in *Commercial Financial Services v. Arthur Andersen LLP*, the court held that a claim for negligent misrepresentation is "limited in relevant part to losses suffered 'by the person or one of a limited group of persons' who the supplier of the false information intends to supply."  94 P.3d 106, 113 (Okla. Civ. App. 2004); *see also Qassas v. Daylight Donut Flour Co., LLC*, No. 09-CV-0663-CVE-PJC, 2010 U.S. Dist. LEXIS 58478, at *35-36 (N.D. Okla. June 10, 2010) (questioning whether tort of negligent misrepresentation even applies outside of banking or securities trading context).

Here, there is no allegation that Merck was in the business of "selling" information. Instead, Plaintiff's claims are based on the allegation that Merck failed to disclose information in connection with its sale of a prescription drug. No Oklahoma court has ever recognized a negligent misrepresentation claim under these circumstances. For this reason too, Plaintiff's claim for negligent misrepresentation should be dismissed.

F.   **Plaintiff Fails To State Claims For Negligence, Gross Negligence And Product Liability (Counts VII, VIII and X).**

Plaintiff's claims for negligence, gross negligence and "product liability" also fail because its efforts to recover for the cost of Vioxx prescriptions under these theories are barred by the economic-loss doctrine.[6]

Under Oklahoma law, "purely economic losses are not recoverable in products liability"; thus, "no action lies in manufacturers' products liability for injury only to the product itself resulting in purely economic loss." *Waggoner v. Town & Country Mobile Homes, Inc*., 808 P.2d 649, 653 (Okla. 1990); *see also United Golf, LLC v. Westlake Chem. Corp.*, No. 05-CV-0495-CVE-PJC, 2006 U.S. Dist. LEXIS 57531, at *7 (N.D. Okla. Aug. 15, 2006) (dismissing negligence and product liability claims because under "the economic loss rule . . . a manufacturers' products liability claim is not available 'for injury only to the product itself resulting in purely economic loss'") (quoting *Waggoner*, 808 P.2d at 653); *Harrison v. Leviton Mfg. Co.*, No. 05-CV-0491-CVE-FHM, 2006 U.S. Dist. LEXIS 76334, at *18 (N.D. Okla. Oct. 19, 2006) (a "purely economic loss for an intrinsic product defect can not be recovered with a tort claim").

---

[6]   As noted above, Plaintiff appears to seek recovery for expenses related to its beneficiaries' alleged personal injuries as well, but it is not clear whether it seeks such relief under these causes of action. To the extent it does, those claims would be foreclosed by the individualized-proof rule as set forth in Section I, *supra*; indeed, this Court has already rejected aggregate adjudication of Vioxx-related personal injury claims. *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. at 462-63.

For example, in *United Golf*, a general contractor and subcontractor brought suit against the defendant manufacturers of piping for a sprinkler installation project that allegedly leaked and caused economic damages.  2006 U.S. Dist. LEXIS 57531, at *2.  The plaintiffs asserted multiple claims, including claims for negligence and product liability.  The defendants moved to dismiss, and the court granted the motion.  *Id.*  According to the court, it is well settled in Oklahoma that the economic-loss doctrine "provides that a manufacturers' products liability claim is not available 'for injury only to the product itself resulting in purely economic loss.'" *Id.* at *7 (quoting *Waggoner*, 808 P.2d at 653).  In cases where the only alleged injury is to the product itself, "the UCC provides a comprehensive remedy for plaintiff's economic injury."  *Id.* Because the plaintiffs' injuries were entirely economic in nature, the court concluded that "plaintiffs [were] not allowed to pursue a products liability claim" and thus dismissed plaintiffs' negligence-based claims.  *Id.* at *17.

The same result is appropriate here.  To the extent that the OHA seeks reimbursement of the cost of Vioxx prescriptions through its negligence, gross negligence and product liability claims, its alleged injuries are purely economic and therefore fall within the scope of the UCC. *Waggoner*, 808 P.2d at 653.  Moreover, allowing Plaintiff's negligence and product liability claims to proceed would "undermine the UCC's comprehensive and finely tuned statutory mechanism for dealing with the rights of parties to a sales transaction with respect to economic losses."  *Id.* (citation and internal quotation marks omitted).  Plaintiff's claims for negligence, gross negligence and product liability thus fail for this reason too.

### G.   Plaintiff's Warranty-Based Claims (Count IX) Fail For Several Additional Reasons.

Plaintiff's claims for breach of express warranty and breach of implied warranty also fail as a matter of law because:  (1) the OHA was not a purchaser of Vioxx and therefore cannot

assert warranty-based claims; (2) the OHA did not provide Merck with pre-suit notice of an alleged breach of warranty, as required under Oklahoma law; and (3) the OHA's implied warranty claims are barred under the individualized-proof rule.

*First*, the OHA cannot assert a claim for breach of warranty because it was not a purchaser of Vioxx.  Under Oklahoma law, warranties – both express and implied – run from "sellers" to "buyers."  *See* Okla. Stat. tit. 12A, § 2-318(1) (2010) ("A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.").  Although this Court rejected a similar argument in the Louisiana Attorney General case with respect to the Louisiana redhibition statute, *see Caldwell* Order at 18, Oklahoma's warranty law is much narrower.  Unlike the Louisiana redhibition statute, the Oklahoma warranty statute expressly limits who, other than the purchaser of a product, has standing to sue – i.e., only members of the buyer's household or family and a buyer's guests in his home.  Okla. Stat. tit. 12A, § 2-318(1) (2010) ("A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.").  In light of this express enumeration, the Oklahoma Supreme Court has refused to extend standing for warranty claims to other individuals or entities.  *See, e.g.*, *Hardesty v. Andro Corp.-Webster Div.*, 555 P.2d 1030, 1034 (Okla. 1976) ("until the Legislature elects to change this statute, we hold that the U.C.C. Section 2-318" should not be "extended by judicial decision") (citation and internal quotation marks omitted).

For example, in *Hester v. Purex Corp. Ltd.*, 534 P.2d 1306, 1308 (Okla. 1975), the Oklahoma Supreme Court affirmed the trial court's dismissal of a breach-of-warranty claim against the manufacturer of a product because, *inter alia*, the plaintiff was not the direct purchaser of the product at issue. *Id.* at 1308. In that case, the plaintiff brought a breach-of-implied-warranty action, alleging that he was injured as a result of using a cleaning product manufactured by the defendant and purchased by the plaintiff's employer. *Id.* at 1306. On appeal, Oklahoma's highest court agreed with the trial court that under U.C.C. Section 2-318, the plaintiff lacked standing to bring a claim for breach of warranty against the manufacturer. According to the court, "[t]he UCC has to do with commercial transactions and presupposes a buyer in privity with a seller, the concept being extended only as provided by the Legislature." *Id.* at 1308. Because the plaintiff was simply a third party to the transaction between the defendant and the product purchaser – rather than a member of the purchaser's "business family or household" – the court held that the plaintiff could not maintain a warranty claim against the manufacturer. *Id.*

The same result is appropriate here. The OHA did not purchase Vioxx from Merck: it never gained ownership or possession of the Vioxx that it financed on behalf of Oklahoma citizens. Instead, Plaintiff simply paid a portion of the cost of the drug that was purchased by others. As a result, the OHA does not qualify as a "buyer" under Oklahoma law, and Plaintiff's warranty-based claims fail as a matter of law.

**Second**, Plaintiff's warranty-based claims also fail for lack of notice. In order to prevail on a claim for breach of warranty, a plaintiff must demonstrate that he or she provided the defendant with adequate notice of the alleged breach within a reasonable period of time. Okla. Stat. tit. 12 A, § 2-607(3)(a) (2010) ("the buyer must within a reasonable time after he discovers

28

or should have discovered any breach notify the seller of breach or be barred from any remedy"). A warranty claim fails as a matter of law if the plaintiff does not satisfy the notice requirement in a reasonable time period.  *See, e.g.*, *Am. Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592, 596 (Okla. 1981) ("The purpose of the statutory requirement of notice to the seller of breach of warranty is to enable the seller to minimize damages in some manner, such as correcting the defect, and also to give the seller some immunity against stale claims."); *Wooten v. Motorola Commc'ns & Elecs., Inc.*, 488 P.2d 1284, 1286 (Okla. 1971) (affirming judgment in favor of defendant because "there was no evidence that [plaintiff] *notified* [defendant's agent] that he wished to rescind his acceptance of the equipment because it was . . . not as warranted impliedly or expressly").  Here, there is no allegation that Plaintiff gave Merck any notice of the alleged breach prior to filing this action – much less within a reasonable time.  Thus, the OHA's claims for breach of warranty fail for this reason as well.

*Third*, and finally, Plaintiff's claim for breach of the implied warranty of merchantability fails under the individualized-proof rule.  As set forth above, this Court has already recognized that government entities cannot prevail on theories of liability that require "a showing of individualized proof" related to each Vioxx purchaser and his or her doctor.  *Caldwell* Order at 13.  Here, the OHA's claim for breach of the implied warranty of merchantability requires proof that the Vioxx that each of its beneficiaries was prescribed, and that OHA paid for, was not "fit for the ordinary purpose[] for which" it was sold – i.e., providing pain relief.  *American Fertilizer Specialists*, 635 P.2d at 593.  Because different Vioxx users had different reactions to the medication – and received different amounts of pain relief from it – it will be impossible to determine whether Merck breached the implied warranty of merchantability without considering the individual circumstances of each patient's Vioxx use.  Such an individualized inquiry "is

29

impractical and beyond the resources of [this] [C]ourt." *Zyprexa*, 671 F. Supp. 2d at 459.  For

this reason too, Merck is entitled to judgment on the pleadings.

<u>**CONCLUSION**</u>

     For the foregoing reasons, the Court should grant judgment on the pleadings to Merck.

Dated:  October 27, 2010                 Respectfully submitted,

                                         */s/ Dorothy H. Wimberly*
                                         Phillip A. Wittmann, 13625
                                         Dorothy H. Wimberly, 18509
                                         STONE PIGMAN WALTHER
                                         WITTMANN L.L.C.
                                         546 Carondelet Street
                                         New Orleans, LA 70130

                                         Douglas R. Marvin
                                         WILLIAMS & CONNOLLY LLP
                                         725 Twelfth St., N.W.
                                         Washington, DC 20005

                                         John H. Beisner
                                         Jessica Davidson Miller
                                         Nina H. Rose
                                         SKADDEN, ARPS, SLATE, MEAGHER &
                                         FLOM LLP
                                         1440 New York Avenue, N.W.
                                         Washington, DC 20005

                                         ATTORNEYS FOR MERCK SHARP &
                                         DOHME CORP.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Defendant's Memorandum of Law in Support of it Motion for Judgment on the Pleadings** has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 27th of October, 2010.

_/s/ Dorothy H. Wimberly_
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel