UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
CASE NO. 2:05-MD-01657-EEF

***ELECTRONICALLY FILED***

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| This document relates to: | * | JUDGE FALLON |
| | * | |
| *Commonwealth of Kentucky* | * | |
| *v. Merck Sharp & Dohme Corp.* | * | MAG. JUDGE KNOWLES |
| *(No. 2:10-cv-01115-EEF)* | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA
OR ENLARGE THE TIME FOR COMPLIANCE**

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

COMES the Plaintiff, the Commonwealth of Kentucky, by counsel, and for its Memorandum in Support of its Motion to Quash the Subpoena Duces Tecum served on the University of Kentucky College of Pharmacy by the Defendant Merck Sharp & Dohme Corp. (hereinafter, "Merck"), hereby states as follows.

**ARGUMENT**

**I.   STANDARD OF REVIEW AND BURDEN OF PERSUASION**

This Court has broad discretion to decide matters related to the enforcement of subpoenas to non-parties. "Determinations of issues of 'undue burden' are committed to the discretion of the trial court." Jones v. Hirschfeld, 219 F.R.D. 71, 74 (S.D.N.Y. 2003) (citing In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 68-70 (2d Cir.2003)). The advisory committee's 1970 comment to Rule 26(c) stated that the rule "confers broad powers on the courts to regulate or

prevent discovery even though the materials sought are within the scope of [Fed.R.Civ.P.] 26(b), and these powers have always been freely exercised."

The burden is on Merck to demonstrate that its discovery request is reasonable. "By analogy to Rule 34, when a party objects to the enforcement of a subpoena, the burden is upon the party seeking the production to show 'good cause' – that is, that the requested documents are necessary to establish his claim or defense, or that denial of production would unduly prejudice the preparation of his case or cause him hardship or injustice." United States v. Am. Optical Co., 39 F.R.D. 580, 583 (N.D. Cal. 1966) (citing 4 Moore, Federal Practice, para. 34.08, at 2450 (2d ed. 1963)). "[W]hen a party objects to the enforcement of a subpoena, enforcement depends preliminarily on a showing of good cause by the party seeking production. … [T]he burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents." Boeing Airplane Co. v. Coggeshall, 280 F.2d 654, 659 (D.C. Cir. 1960).

But good cause alone is not enough to sustain a subpoena. If the terms of a subpoena are unreasonable and oppressive, a showing of good cause for soliciting the discovery does not cure the defects in the subpoena. See Jack Loeks Enterprises, Inc. v. W.S. Butterfield Theatres, Inc., 20 F.R.D. 303, 307 (E.D. Mich. 1957).

The factors a Court considers in evaluating a subpoena are well-established:

> Whether a subpoena imposes an undue burden upon a witness is a case specific inquiry that turns on "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure. Demonstrating relevance is the burden of the party seeking discovery.

2

Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc., 211 F.R.D. 658, 662–663 (D. Kan. 2003) (internal citations omitted).

## II.    THE INDIVIDUAL REQUESTS CONTAINED WITHIN THE SUBPOENA ARE OBJECTIONABLE FOR NUMEROUS REASONS

The Defendant has served an expansive and incredibly broad subpoena on the University of Kentucky College of Pharmacy. The subpoena includes twenty-two (22) separate and discreet document requests. Each of these requests is in itself very broad. The subpoena defines the "relevant time period" for the documents requests as encompassing eight (8) years, from January 1, 1999, through December 31, 2006. A number of the requests refer to all "relevant drugs." The subpoena defines "relevant drugs" to mean ten (10) separate drugs, including Vioxx, Arthrotec, Bextra, Celebrex, Daypro, prescription ibuprofen, Mobic, naproxen, Relafen, and Voltaren. Several of these include multiple brand names or separate formulations of the medication.

### a.    Many individual requests are overly broad and therefore imposes an undue burden on the College of Pharmacy.

The specific requests are unreasonably broad as well. For instance, request number two (2) seeks all communication between the College and the Plaintiff regarding all relevant drugs during the entire (eight-year) relevant time period. Request number three (3) seeks all documents the College provided to the Commonwealth regarding all relevant drugs during the relevant time period. Request number five (5) seeks all minutes, transcripts, agendas, notes, videos, recordings, and other documents, relating to several relevant committees for all relevant drugs during the entire relevant time period. Request number seven (7) seeks all clinical documents for all relevant drugs during the relevant time period. Request number eleven (11) request all studies, reports, analysis, abstracts, and other documents reviewed or relied upon in developing the terms and conditions for the Medicaid program for all relevant drugs during the

3

relevant time period. Request number twelve (12) seeks equally broad documentation as request number eleven (11), relating to use of proton pump inhibitors with all relevant drugs. Request number fifteen (15) seeks all documents referring to any potential alleged or actual cardiovascular risks associated with all relevant drugs. Request number seventeen (17) seeks quarterly financial information relating to all relevant drugs for the entire relevant time period. Requests number eighteen (18) and nineteen (19) seek the total costs that the Commonwealth incurred for all relevant drugs during the entire relevant time period.

These are onerous requests on a college at a major state university that has vast undertakings and no doubt generates voluminous pages of records, notes, clinical reports, and other documents each year. In addition, very little time was allowed for the search.

The threshold for a "reasonable burden" is higher when the subpoena is served on a non-party, like the College of Pharmacy. See Travelers Indem. Co. v. Metro. Life Ins. Co., 228 F.R.D. 111, 114 (D. Conn. 2005). In Travelers, the court held that a subpoena would not be enforced when it required a non-party to search through thousands of documents, when there was no showing that the target of the subpoena was the only available source of the documents requested. Id. Here, there has been no such showing, and it can be reasonable inferred from the breadth of the requests that the volume of documents the College of Pharmacy would have to search in order to respond would be at least as great as the burden to be undertaken in Travelers.

### b.     Various requests seek confidential or protected information that relates to individuals who are not parties to this action.

Certain requests also implicate protected patient information. Request number four (4) seeks communication regarding the potential risks or benefits of Vioxx between the College and Medicaid programs, healthcare plans, and pharmacy benefit managers for the entire relevant time period. Request number seven (7) seeks all clinical documents relating to all relevant drugs

during the entire relevant time period, which were provided to Medicaid, healthcare plans, or pharmacy benefit managers. Request number twenty (20) seeks all documents reflecting communication between the college and the Commonwealth regarding switching of patients beneficiaries from one prescription drug to another for all relevant drugs during the relevant time period.

These requests refer to "all relevant drugs". Thus, they seek not only protected patient information related to the subject matter of this lawsuit, but also protected patient information for patients who were never prescribed and never used Vioxx. Because more than ten (10) drugs are listed as relevant drugs, a potentially very large number of patient records are implicated, which likely have little relation to the subject matter of this action.

    **c.    Various requests seek confidential or proprietary information that relates to the target of the subpoena or two business competitors of the Defendant.**

Other requests seek information that is potentially confidential and proprietary. Request number nine (9) seeks recommendations made by the college to Medicaid programs, healthcare plans, and pharmacy benefit managers for all relevant drugs during the relevant time period. Request number thirteen (13) seeks documents relating to communication between the college and supplier or manufacturer of each of the relevant drugs. Again, it should be noted that this request extends beyond proprietary information relating to Vioxx, to include proprietary information created by or shared with many of Merck's competitors, who developed and manufactured competing drugs that are included among the relevant drugs.

Requests number five (5) seeks minutes, transcripts, agendas, notes, videos, recordings, or other documents reflecting or referring to various committees and boards within the college. This may include preliminary documents that are protected as attorney/client work product,

preliminary investigations or reports, or under other protections provided by the Federal Rules of Civil Procedure.

Request number seventeen (17) seeks the total amount of payments that the Plaintiff made on behalf of plan beneficiaries for all relevant drugs.  This is overly broad because it extends far beyond Vioxx, which is the subject matter of this case.  It also implicates potentially proprietary information of Merck's competitors, who are the developers and manufacturers of the other relevant drugs.

> Fed.R.Civ.P. 45(c)(3)(B)(i) allows the court to quash, modify or condition a subpoena to protect a person affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information. … [T]he court finds that the information detailing Dr. Meyers's out-going telephone calls on his cellular phone [which would identify his patients] qualify as confidential commercial information subject to protection under Fed.R.Civ.P. 45(c)(3)(B)(i). Further, even if Fed.R.Civ.P. 45(c)(3)(B)(i) does not apply, the court may modify or quash to protect individuals from undue annoyance as provided by Fed.R.Civ.P. 26(c).

Syposs v. United States, 181 F.R.D. 224, 226–227 (W.D.N.Y. 1998) (internal citation omitted). The information at stake here is similar. Whether or not it identifies individual patient information, it likely includes confidential trade secrets not only of the College of Pharmacy, but also of the direct competitors of the Defendant.

### d.     At least one request seeks information that is equally available to Defendant from other sources.

Request number eleven (11) seeks all studies, reports, analysis, abstracts, or other documents that the college reviewed or relied upon in considering the terms and conditions upon which the college the Plaintiff or Medicaid programs provided coverage for relevant drugs during the relevant time period.  These studies, reports, or analysis are presumably publicly available and published sources.  While it may be fair to ask a representative of the college

6

which documents and treatises were relied upon, it is overly burdensome to ask the college to produce documents that are equally available to Merck.

In In re Penn Cent. Commercial Paper Litig., 61 F.R.D. 453 (S.D.N.Y. 1973), the Court held that it would not compel a non-party witness to produce a document that was available from a publicly-available source other than the witness. Id. at 467. The same principle applies here. In addition, Merck should be required to demonstrate that it cannot obtain these documents from any other source before the College of Pharmacy is required to search for an produce them. "Necessity for production is sharply reduced where an available alternative for obtaining the desired evidence has not been explored." Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 40 F.R.D. 318, 328 (D.D.C 1966).

      **e.**    **At least one request seeks information that is already in Defendant's possession.**

Request number fourteen (14) seeks all communications between the college and Merck. Since Merck, by definition, is a party to these communications and is the party propounding this request, presumably Merck is requesting documents that it already has in its possession. It is overly burdensome to ask the college to produce documents that Merck already has. Another Court that has considered this question held that even a party would not be compelled to produce information that is in the other party's possession. "Until defendants show from facts in the record that they cannot find their own copies of this correspondence, or that some other good cause exists for requiring plaintiff to conduct a search for [the correspondence between the parties] … plaintiffs will not be required to produce the documents." Fastener Corp. v. Spotnails, Inc., 43 F.R.D. 204, 207 (N.D. Ill. 1967). Here, the College of Pharmacy is not even a party to the litigation, but is being asked to produce Merck's own documents.

7

### f. The subpoena is procedurally deficient.

The subpoena itself is deficient in numerous ways. Pursuant to Fed.R.Civ.P. 45(c)(3)(A)(i), the subpoena fails to allow reasonable time for the college to comply. While no date of service is available, the subpoena was served sometime after October 15, 2010 (which is the date the subpoena was issued), and requires production no later than November 5, 2010. Given the incredible number of documents implicated by this request, this period of less than twenty (20) days to gather, duplicate, and produce all relevant documents is wholly unreasonable and burdensome to the college. If the Motion to Quash is denied, then this Court should instead enlarge the time for compliance by the College of Pharmacy in order to allow adequate time for the College to locate, compile, and duplicate the voluminous documents.

The subpoena fails to comply with Fed.R.Civ.P. 45(c)(3)(A)(ii) because it requires a college to produce the documents in Washington, D.C. That is contrary to the civil rule. The college and pharmacy is located in Lexington, Kentucky. Which is more than 500 miles from Washington, D.C. This is far beyond the territorial limits of the subpoena rule, which requires that a non-party must not be required to travel more than 100 miles in order to comply with the terms of a subpoena. This subpoena makes no provision for allowing inspection of the documents at the College of Pharmacy's facility in Lexington, Kentucky.

This limitation has been enforced in reported cases. "[T]he limitation in Rule 45 unequivocally applies both to attending a deposition to testify and to being required to produce documents at a distance more than 100 miles from one's home. It draws no distinction whatsoever between being compelled to testify and being compelled to produce documents at a certain place." Miller v. Holzmann, 471 F. Supp. 2d 119, 121 (D.D.C. 2007).

As discussed above, the subpoena requires disclosure of privileged or protected information. This is in contravention of Fed.R.Civ.P. 45(c)(3)(A)(iii). The rule does make an

8

exception for waivers of privilege. There is no issue of waiver in this case. A possible exception is entry of the Protective Order in the case, but the Plaintiff herein is not a party to that Protective Order at this time and therefore objects to the disclosure of privileged information to which the Plaintiff itself would not have access.

Finally, as stated above, the subpoena subjects the college of pharmacy to an undue burden by requiring it to produce voluminous pages of documents and other recordings when the college of pharmacy is not a party to this case, and those documents appear to be at best tangentially related to the case, and the requests are not narrowly tailored to be the least burdensome possible. This is all in contravention of Fed.R.Civ.P. 45(a)(3)(A)(iv).

Each of these violations of Fed.R.Civ.P. 45(a)(3)(A) requires mandatory quashing of this subpoena by the Court pursuant to the Rules of Civil Procedure, which state that "upon timely motion the issuing Court **must** quash or modify a subpoena" Fed.R.Civ.P. 45(a)(3)(A) (emphasis added). Therefore, this Court has no choice but to quash the subpoena for multiple procedural and technical failures.

In addition, pursuant to Fed.R.Civ.P. 45(c)(3)(B) the Court is permitted to quash a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." As stated above, the subpoena at issue in this case violates each subpart of this rule, as the correspondence or documents relating to the various manufacturers of the "relevant drugs" potentially implicates trade secrets and confidential research development in commercial information of each of the drug manufacturers who are competitors to Merck. It also implicates the confidential work product and trade secrets of the college of pharmacy and its conducting of proprietary academic research. For those reasons as well, the Court should quash the subpoena.

## **CONCLUSION**

For all the foregoing reasons, the subpoena served on the college of pharmacy by Merck Sharp & Dohme Corp., is in contravention of the Federal Rules of Civil Procedure and therefore should be quashed by this Court. In the alternative, the Court should enlarge the time for the College of Pharmacy to comply.

            Respectfully submitted,

            ATTORNEYS FOR PLAINTIFF

         BY:   /s/ William R. Garmer
           William R. Garmer
           Kentucky Bar No. 24370
           Jerome P. Prather
           Kentucky Bar No. 91397
           Garmer & Prather, PLLC
           141 North Broadway
           Lexington, KY 40507
           Telephone:  (859) 254-9351
           Facsimile:   (859) 233-9769
           Email:  bgarmer@garmerprather.com
           Email:  jprather@garmerprather.com

           Scott A. Powell
           Don P. McKenna
           Matthew C. Minner
           Hare, Wynn, Newell & Newton
           2025 3rd Avenue North, Suite 800
           Birmingham, AL 35203
           Telephone:  (205) 328-5330
           Facsimile:  (205) 324-2165
           Email:  scott@hwnn.com
           Email:  don@hwnn.com
           Email:  matt@hwnn.com

## CERTIFICATE OF SERVICE

      I hereby certify that on November 3, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record in this matter.

                                        BY: /s/ William R. Garmer
                                              ATTORNEY FOR PLAINTIFF