UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------

In Re:   **VIOXX PRODUCTS**             :        **MDL Docket No.: 1657**
         **LIABILITY LITIGATION**       :
                                        :        **SECTION L**
                                        :        **JUDGE FALLON**
                                        :        **MAG. JUDGE KNOWLES**

---------------------------------------------------------

**THIS DOCUMENT RELATES TO :**
**Gene Weeks v. Merck & Co., Inc.,**
**Case No.: 05-4578**

---

**MEMORANDUM OF LAW OF PLAINTIFF'S COUNSEL RONALD R.
BENJAMIN IN SUPPORT OF HIS OBJECTIONS TO THE
OCTOBER 26, 2010 REPORT AND RECOMMENDATION OF
THE SPECIAL MASTER REGARDING ATTORNEY FEES AND
EXPENSES DISPUTE OF TEJEDOR-WEEKS/BENJAMIN**

Counsel for plaintiff Gene Weeks, Ronald R. Benjamin, Esq. ("Benjamin" or "objectant"),

pursuant to Fed.R.Civ.Pr. 53(f), makes the following objections to the October 26, 2010 Report

and Recommendation of Special Master Regarding Attorney Fees and Expenses Dispute of

Tejedor-Weeks/Benjamin, signed Special Master Patrick A. Juneau (MDL Rec.Doc. 54246), and

submits the instant memorandum of law in support of his request that this Court reject or modify

the same.

**STATEMENT OF FACTS**

On March 18, 2010, this Court issued an order in all cases with pending attorneys

fee liens filed pursuant to Pretrial Order 47A in which "Special Master Juneau, by this Order is

hereby authorized to evaluate all disputed liens for attorneys' fees and expenses relating to Vioxx

Settlement Payments... and issue a report and recommendation to the Court."  *See Order, Rec.*

*Doc. 37739, at p.1.*

In a June 14, 2010 letter to counsel, Special Master Juneau scheduled a hearing on the instant fee dispute for October 19, 2010, in the U. S. District Courthouse in New Orleans. *See, MDL Rec.Doc. 53477-2, copy of 6/14/10 scheduling letter annexed as Exhibit A to Benjamin motion for stay.* Among other pre-hearing requirements in said letter, Special Master Juneau set various deadlines, including July 21, 2010 for the parties to exchange memoranda, August 20 for depositions, September 7 for reply memoranda, September 13 "for all involved parties to have an in-person meeting to try to amicably resolve this dispute" and September 20 "for the Special Master to receive from each party a separate 3-ring binder of materials" which must include, *inter alia*, certification that counsel met in person and an affidavit describing all work performed and expenses incurred *Id., at 1-3.*

Thereafter, each of the parties exchanged memoranda and no depositions were noticed. With respect to the in-person settlement meeting, in a letter to the Special Master dated August 10, 2010, Benjamin objected to the in-person meeting stating, "it does not seem useful to have an in-person meeting since matters are sufficiently polarized to make that a significant waste of time and money." *See MDL Rec.Doc. 53477-3, 8/10/10 Benjamin letter annexed to motion to stay as Exhibit B, at 1.* He also indicated he would "be making a motion for summary judgment which I believe should be dispositive on the issue of entitlement [to] fees." *Id.*

Special Master Juneau responded to the parties in a letter dated August 17, 2010, in which he stated, "If you cannot reach an agreement on an amicable date and location for the in-person meeting, please advise and I will select the date and schedule the meeting to take place in New Orleans." *See MDL Rec.Doc. 53477-4, Juneau letter annexed as Exhibit C to Benjamin motion for stay.* Thereafter, in a letter to counsel dated September 2, Special Master Juneau stated, "In

view of the continued difficulties in scheduling the mandatory in-person meeting, please be advised that I am hereby scheduling the meeting to take place at 10:00 a.m. on Monday, September 13, 2010 in New Orleans." *See MDL Rec.Doc. 53477-5, Juneau letter annexed as Exhibit D to Benjamin motion for stay.*   The meeting was to "be held at the Hilton Hotel," and the Special Master stated: "Recall that this is a <u>mandatory</u> meeting, and all involved parties must attend the meeting in person.  *Id.*

In the interim, on August 20, 2010, Benjamin filed the motion for summary judgment he had forecast, including a lengthy statement of material facts that do not remain in dispute.  *See MDL Rec. Doc. 49974.*   On September 3, 2010, this Court issued an Order referring the motion for summary judgment to Special Master Juneau, "who shall take all appropriate steps to address the disputed lien and issue a report and recommendation to the Court." *See Order, Rec. Doc. 50995, at p.1.*

On September 3, 2010, Benjamin wrote to Special Master Juneau requesting that he "adjourn if not dispense with the mandatory meeting...., at least until the summary judgment motion which is pending has been decided." *See MDL Rec.Doc. 53477-6, Benjamin letter annexed as Exhibit E to motion for stay.*  Benjamin noted he had been "unable to get through to Ms. Tejedor by telephone so it is difficult to discern the purpose of the mandatory meeting since it is obvious she has no intent to discuss settlement but is simply going through the motions for reasons known only to her." *Id.*   Benjamin also stated that, "under the current circumstances the mandatory in-person meeting is purely punitive" and requested that:

> ...the matter be adjourned until after the summary judgment motion is decided with leave to move to dispense with the requirement or develop a mechanism that would make any settlement discussions meaningful rather than a waste of time and expenses.

*Id.* At no time prior to September 13 did Special Master Juneau respond to Benjamin's September 3rd letter with respect to the reasonable requests therein to dispense with or, at minimum, adjourn the in-person meeting.

Three days later, on September 16, 2010, Tejedor filed a motion entitled, "Plaintiff's Counsel, Maria Tejedor's, Motion to Strike Pleadings of Ronald Benjamin and Deny Mr. Benjamin's Request for Attorney's Fees and Costs." *See MDL Rec. Doc. 52083.* This motion did not comport with the requirements of Rule 11, and did not indicate the legal basis for seeking such relief other than in generalities./*[1]

On September 22, 2010, Benjamin filed his timely opposition to Tejedor's motion to strike. *See MDL Rec., Doc. 52375.*

Thereafter, the special master required counsel to participate in a brief telephone conference on October 5, 2010, which he indicated was for the sole purpose of asking two questions related to whether or not there had been compliance with the September 13 in-person meeting requirement and the submission of a trial binder by the deadline of September 20. In the course of the conference, the Special Master indicated the hearing was going forward as scheduled.

At no time prior to the October 19 hearing did the special master mention or rule on Benjamin's motion for summary judgment that had been referred by this Court on September 3. Moreover, Tejedor never filed an opposition to the motion for summary judgment, nor did she respond to Benjamin's statement of undisputed facts that was filed with the motion at any time.

The special master proceeded to the hearing on October 19, and on October 26, the special

---

[1]*/ This Court did not refer Tejedor's motion to the special master until a month later, in conjunction with this Court's order denying a motion to stay filed by Benjamin. *See MDL Rec.Doc. 53885.*

master issued the Report and Recommendation to which these objections are made.  The special

master found (on page 1) that Benjamin failed to meet in-person with Tejedor without addressing

the facts showing that Benjamin had properly requested adjourning or dispensing until the meeting

showing that such a meeting was objected to and would be futile, or the fact that the special master

had not responded to the requests prior to September 13.  *See MDL Rec.Doc. 53477-3, Benjamin*

*8/10/10 letter annexed to motion to stay as Exhibit B, at 1.*

The special master found, at pages 1-2, that Benjamin had not submitted the separate binder

required by the scheduling order, even though Benjamin would not be able to submit a complete

binder due to the scheduling order calling for the binder to contain certification by parties of their

in-person meeting.

The special master found that "Benjamin and Tejedor <u>both</u> filed Motions for Summary

Judgment.  Tejedor also filed a Motion to Strike."  *Id., at p. 2.*  However, while Tejedor filed a

motion to strike, she did not file a  motion for summary judgment, which would require a statement

of material facts not in dispute which she never filed.  The special master's report also fails to

mention that, at no time prior to the October 19 hearing did Tejedor file an opposition to

Benjamin's motion for summary judgment or respond to his statement of undisputed material facts,

and thus became subject to the Court's Local Rule 56(e)(2),  "All material facts set forth in the

statement required to be served by the moving party will be deemed admitted, for purposes of the

motion, unless controverted as required by this rule."

The report also concluded that the April 22, 2010 Motion to Rescind and Vacate Mr.

Weeks' enrollment in the Settlement Program that Benjamin had filed on his behalf "had nothing

to do with the obtaining of the monetary award."  (*Id.*)   The report does not address the facts

raised in Benjamin's motion for summary judgment, such as his entry of appearance as plaintiff's

counsel and motion to rescind preceding the monetary award, which appears to have been the

result of overriding  the proximity gate criteria of the Master Settlement Agreement for

undiscoverable reasons that may establish that Benjamin's appearance and motion were

instrumental in the process.   Moreover, this finding/conclusion completely ignores the fact that

Tejedor and her firm abandoned the plaintiff in January 2009, and he was represented by Benjamin

thereafter.

> The special master's report goes on to find that:

> Tejedor continued to work on this matter for Mr. Weeks, **at his request**, including
> gathering medical records, retaining experts to review those records, submitting the
> profile form, contesting awards and filing an appeal.  All of these efforts of Tejedor
> **through May of 2009** resulted in a substantial award for Mr. Weeks who has in fact
> received and accepted the award.  There is no evidence whatsoever that any
> involvement or effort by Ronald Benjamin assisted in obtaining of the awrd for Mr.
> Weeks.  The efforts of Maria Tejedor resulted in a monetary award of $286,834.00
> to Mr. Weeks.

*Report, at page 3 [emphases added].*   These findings and conclusions fail to consider Mr. Weeks'

affidavit and the documents submitted in support of the motion for summary judgment, and do not

address the facts showing that Tejedor's efforts before and after convincing Mr. Weeks the Master

Settlement was his only option, and then trying to rescind the abandonment after he had already

gotten a new attorney, and opposing his motion to rescind and vacate his consent to enter the MSA

program, are not relevant since she abandoned the plaintiff and his case in early January 2009, and

she was  unauthorized to act on his behalf "through May 2009" and failed to honor the plaintiff's

lawful objectives.

The special master's report recommends that, "The Motions for Summary Judgment of

Tejedor and Benjamin should be denied and referred to the merits".  *Id., at p. 3.*   However,

Tejedor did not file a motion for summary judgment, nor did she oppose Benjamin's motion for

summary judgment, and the special master clearly appears to have failed to consider and improperly denied Benjamin's motion for summary judgment in light of the fact that Tejedor's failure to oppose the same meant that Benjamin's statement of material facts in dispute were deemed admitted, and therefore, she and her firm abandoned the plaintiff's case prior to the award.

The report also recommends that monetary sanctions be imposed on Benjamin as follows:

> 3)   Ronald Benjamin be sanctioned for his flagrant abuse and disregard of the judicial process as follows:
>
> a)   Pay Maria Tejedor $2,000.00 (8 hours at $250.00 per hour) plus expenses of $495.15, for not appearing at the in-person meeting set for September 13, 2010; and
>
> b)   Pay to Clerk, United States District Court the sum of $5,000.00 in sanctions for his flagrant abuse and disregard of the judicial process.

*Id., at pp. 3-4.*   It is respectfully submitted the aforesaid recommendation is based on the special master's erroneous conclusion that, "The failure of Benjamin to follow the clear requirements of the scheduling order were flagrant abuse of the judicial process and warrant the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure." *Id., at p. 2.*   The sanctions also appear to include non-monetary sanctions in that the special master's report and recommendation of denial of Benjamin's summary judgment motion out of hand appear to constitute striking the motion as another improper penalty against Benjamin.

Objectant now turns to his argument.

## ARGUMENT

Under Fed.R.Civ. Pr. 53 (f)(3) and (4), this Court must decide de novo all objections to findings of fact and conclusions of law made or recommended by a master.  With respect to procedural matters, Fed.R.Civ.Pr. 53(f)(5) provides: "Unless the appointing order establishes a different standard of review, the court may set aside a master's rulings on a procedural matter only

for an abuse of discretion."   In the case at bar, objectant submits that the only procedural matter under review by this Court is whether the special master abused his discretion with respect to ordering the in-person meeting and failing to exercise his discretion to amend or modify the scheduling order to adjourn or dispense with the in-person meeting and other deadlines after this Court referred objectant's motion for summary judgment on September 3, 2010.   It is submitted the remaining objections as to the denial of Benjamin's summary judgment motion and the imposition of monetary sanctions, as objected to, are subject to de novo review by this Court and are argued below.

## I.

### This Court Should Reject or Modify the Special Master's Report and Recommendation on the Basis of Objections 3, 4, 5, and 6, and Instead Grant Benjamin's Motion for Summary Judgment on the Merits and Because Tejedor Utterly Failed to Oppose That Motion Pursuant to Fed.R.Civ.Pr. 56 and This Court's LR 56.2, and, Thus, Tejedor Should Be Deemed to Have Admitted the Facts Showing She and Her Firm Forfeited Any Right to a Fee Due to the Events in Early January 2009.

The record in this case establishes that Tejedor did not oppose Benjamin's motion for summary judgment that this Court had referred to the special master on September 3, and, therefore, never disputed the affidavit of plaintiff Weeks, or the statement of material facts objectant filed thereon averring that she told and wrote Mr. Weeks that the firm would no longer represent him and to get another attorney and turned over the file to him before there was any recovery.

There was no delay by Benjamin in filing the summary judgment motion and in seeking to have it heard prior to October 19.   Nonetheless, at least one month before the October 19 hearing, Tejedor had already utterly failed to meet her obligations under Fed.R.Civ.Pr. 56(e)(2) to respond to Benjamin's motion, and, therefore, the special master failed to rule on or meet the requirements

of this Court's LR56.2 that "All material facts set forth in the statement required to be served by the moving party *will be deemed admitted*, for purposes of the motion, unless controverted as required by this rule." [Emphasis added.]  This default by Tejedor should have resulted in summary judgment being entered in Benjamin's favor based on the undisputed facts set forth in his moving papers that would properly be deemed admitted and were dispositive that as a matter of law Tejedor was not entitled to claim a fee from the recovery due to abandoning the plaintiff and his case, and her later attempts to jump back in once the winds were more favorable were unavailing.

Therefore, it is submitted this Court should reject the special master's report, which makes no mention of Tejedor's complete failure to oppose Benjamin's motion for summary judgment, and in it de novo review, this Court should grant Benjamin's motion for summary judgment on the merits particularly in light of the facts deemed admitted by Tejedor.

It also cannot be disputed that the Tejedor firm represented Mr. Weeks under a contingency retainer agreement, and, thus, the documentation in the letters and the conduct by its attorneys compel the conclusion the Tejedor firm  forfeited the right to any compensation under the contingency retainer. *See* Carbonic Consultants Inc., v. Herzfeld & Ruben Inc., 669 So. 2d 321, 323 (Fla. App. 1997); Kyle v. Lichtman, 2001 WL 3599  6143 ( E. D. La.).   Indeed, not only must Tejedor be deemed under this Court's rules to have admitted the material facts set forth in Benjamin's motion, it is clear the Tejedor firm could not truthfully dispute the contents of the letters it wrote to Mr. Weeks dated December 20, 2009 and January 16, 2009, or that Ms. Tejedor and another attorney from the firm turned over the file to Mr. Weeks at the meeting on January 7 and washed their hands of the case, telling Mr. Weeks to get another attorney as they had no intention of representing him any further.

The laws of Louisiana and Florida where Tejedor practices do not conflict in this regard.

Clearly, "Florida...does distinguish between those situations where a client unjustifiably discharges an attorney and where an attorney unjustifiably terminates his relationship with a client." Kay v. Home Depot, Inc., 623 So.2d 764, 766 (Fla.App. 5 Dist. 1993). Indeed, in Faro v. Romani, 641 So. 2d 69, 70 (Sup.Ct. Fla. 1994), the court addressed the question of "whether an attorney who voluntarily withdraws in a contingent fee case before the happening of the contingency is entitled to a fee." In the face of the contingency retainer in that case, the court ruled:

> Once Romani voluntarily withdrew from representation, the contingency agreement, like the attorney-client relationship was terminated. We hold that when an attorney withdraws from representation upon his own volition, and the contingency has not occurred, the attorney forfeits all rights to compensation.

Id., 641 So. 2d at 71. This Court should reach the conclusion reached by the court in Faro, namely, that the Tejedor firm "abandoned [its] right to any compensation when [it] withdrew from [its] contingent fee contract, and thus is not entitled to recover a fee." Id.

The special master's report does not take into consideration the facts deemed admitted, and this Court should reject the factual findings and conclusions that, "All of the efforts of Tejedor through May of 2009 resulted in a substantial award for Mr. Weeks" in the amount of $286,834.00," and that, "There is no evidence whatsoever that any involvement or effort by Ronald Benjamin assisted in the obtaining of the award for Mr. Weeks." Report, at p. 3. It is respectfully submitted that, based on forfeiture as a matter of law, the Tejedor firm has no enforceable charging lien for its fees. See In re Naturally Beautiful Nails, Inc., 2004 WL 2931367, at *2 (Bankr.M.D.Fla. 2004)./*[2] This makes Tejedor's proof of services and amount claimed immaterial.

Likewise, in light of the forfeiture, this Court should reject the special master's finding that

_____

[2]*/Plaintiff does not dispute that Tejedor retains a lien for its costs. Id.

the April 22, 2010 motion filed by Benjamin seeking to rescind and vacate Mr. Weeks' enrollment

in the Settlement Program "had nothing to do with the obtaining of the monetary award."   Report,

at p. 2.   Not only would forfeiture terminate any dispute, there is no cite to anything in the record

that substantiates this finding; to the contrary, the record confirms  the monetary award to Mr.

Weeks occurred after that motion to rescind and vacate was filed, and the motion was opposed by

defendant Merck who was obviously involved in the Settlement Program and participated in

review of the prior denial of Mr. Weeks' claim, based on which Tejedor abandoned the client.

It is respectfully submitted the Tejedor firm's withdrawal after the rejection of Mr. Weeks'

claim clearly appears to have been based on their reading of the terms of the Master Settlement

Agreement that compelled plaintiff's attorneys to withdraw under Sections 1.2.8, 1.2.8.1 and

1.2.8.2 .   Whether or not Tejedor was reading the MSA correctly, her firm's affirmative conduct in

abandoning Mr. Weeks in early January 2009 clearly infers those provisions of the MSA were a

major factor in the firm's conduct of sending him the December 20, 2008 and January 16, 2009

letters indicating that starting after the announcement of the MSA in November 2007 they sought

to enroll all of their clients in the settlement program, including Mr. Weeks, and to abandon

anyone who was found ineligible or wanted to pursue litigation.

Rule 4-1.7(b) of the Rules Regulating the Florida Bar states: "A lawyer shall not represent a

client if the lawyer's exercise of independent professional judgment in the representation of that

client may be materially limited by the lawyer's responsibilities to another client or to a third

person or by the lawyer's own interest...."   In the case at bar, the Tejedor firm's independent

professional judgment was limited by its voluntarily-accepted responsibilities to the other Vioxx

clients the firm was representing and to Merck due to the MSA terms, and by its own interest in

receiving fees from the MSA program, and its forfeiture of the fees here stems from its own

conduct in abandoning Mr. Weeks and turning over the file to him indicating cessation of their representation without identifying any ethical reason imputable to Mr. Weeks.   The Tejedor firm abandoned the client of its own volition upon being advised of his ineligibility under the MSA and is entitled to no attorney's fee or lien from the monetary award that was indisputedly made months afterwards when they were no longer his counsel, as this Court ruled.

The special master did not address Benjamin's factual showings in the affidavits and documentary evidence supporting the motion for summary judgment that establish that Tejedor abandoned Mr. Weeks and even turned over his file at their January 7, 2009 meeting in Florida. The special master's report should be rejected and this Court should rule there was a forfeiture by Tejedor and her firm of the contingent fee and any enforceable lien therefor.  Further, this Court should review de novo and grant Benjamin's motion for summary judgment based on the facts of this case that must be deemed admitted, as well as the applicable law on the merits of the motion in the first instance.

## II.

### The Special Master Abused His Discretion by Not Granting Adjournment or Dispensing with the Meeting and Binder Requirements and Deadlines in Light of Objectant's Summary Judgment Motion Referred to Him by This Court, and the In-Person Meeting Directive Constituted An Improper and Wasteful Coercion of Settlement Negotiations.

With respect to Objection 1, objectant respectfully submits the special master's finding on the in-person meeting deadline is incomplete since he fails to acknowledge that objectant filed his motion for summary judgment and it was referred by this Court on September 3, 2010, and then timely and reasonably requested that the in-person meeting be adjourned or dispensed with altogether in light of the circumstances showing that such a meeting was objected to and would be

futile in any event.   The special master abused his discretion by failing to grant the adjournment or to dispense with the in-person meeting, and to take into consideration the unnecessary expense and time and the unwillingness of Benjamin to participate in compelled settlement negotiations with Maria Tejedor.

In this regard, the record reflects that the scheduling order was entered by the special master without input from the parties, and before their legal memoranda and Benjamin's motion for summary judgment were filed.   The scheduling order did not accommodate dispositive motions, and the special master appears to have treated the scheduling order as irrevocable, failing to consider any effort to seek to amend or modify the same.   It is well settled that federal courts have discretion to amend a scheduling order.   *See* Geiserman v. MacDonald, 893 F.2d 787, 790 (C.A.5 1990).   The record confirms the special master below merely stonewalled Benjamin's request for adjournment, even though good cause existed to amend that scheduling order under the circumstances that had arisen in the course of motions practice in the attorney lien proceeding.

Moreover, because the scheduling order compelled settlement negotiations, it should have been dispensed with and this Court should flatly reject it as an improper predicate for finding any kind of misconduct or bad faith on Benjamin's part.   This Court's reference order did not specifically require settlement negotiations, and, while it is doubtful the special master is authorized to compel the parties to have settlement negotiations over the telephone or in person, it is respectfully submitted it was an abuse of his discretion to take inappropriate steps to evaluate the fee lien dispute by scheduling and later not considering adjourning or dispensing with the in-person meeting, and subjecting the parties to the cost and time of meeting at a great distance from where the parties practice.

It is respectfully submitted the special master was not authorized by the Federal Rules of

Civil Procedure to mandate such an in-person, out-of-court meeting in the first instance, nor were

there proper grounds to impose sanctions in this case for failure to appear at same, because, while

judicial encouragement of settlement is laudable, compelling the parties to engage in settlement

negotiations is not contemplated by Fed.R.Civ.Pr. 16 or any other rule or statute.  In that regard,

the Fifth Circuit has stated the underlying principles as follows:

> Obviously, there is no meaningful difference between coercion of an offer and
> coercion of a settlement:  if a party is forced to make a settlement offer because of
> the threat of sanctions, and the offer is accepted, a settlement has been achieved
> through coercion.  Such a result cannot be tolerated.  *See National Ass'n of Gov't
> Employees, Inc. v. National Federation of Fed. Employees,* 844 F.2d 216, 223 (5th
> Cir.1988) ("[f]ailure to compromise a case ... even pursuant to terms suggested by
> the court, does not constitute grounds for imposing sanctions"); *see also In re
> Ashcroft,* 888 F.2d 546, 547 (8th Cir.1989) ("[p]retrial-conference discussion of
> settlement is designed to encourage and facilitate settlement ... but it is not designed
> to impose settlement upon unwilling litigants"); *G. Heileman Brewing Co. v. Joseph
> Oat Corp.,* 871 F.2d [648,] 653 (7th Cir. 1989)  ("If this case represented a situation
> where ... [a party] was sanctioned because [it] refused to make an offer to pay
> money--that is, refused to submit to settlement coercion--we would be faced with a
> ... situation we would not countenance"); *Kothe v. Smith,* 771 F.2d 667, 669 (2d
> Cir.1985) ("the law ... does not sanction efforts by trial judges to effect settlements
> through coercion"); *Abney v. Patten,* 696 F.Supp. 567, 568 (W.D.Okla.1987) ("The
> horses may be led to water.  Whether they drink is up to them.").

Dawson v. United States, 68 F.3d 886, 898 (5th Cir. 1995).  In the Abney v. Patten case cited by

the Fifth Circuit, *supra,* the district court made clear, referring to Rule 16, that:

> Obviously the Rule does not permit compelled settlements, **nor even the
> imposition of settlement negotiations on unwilling litigants**. *See* Report of the
> Advisory Committee on Federal Civil Rules, 97 F.R.D. 165, 211 (1982).

*Id.,* 696 F.Supp. at 568 [emphasis added].   Likewise, in G. Heileman Brewing Co. v. Joseph Oat

Corp., *supra*, the court explained that the Advisory Committee "Notes clearly draw a distinction

between being required to attend a settlement conference and being required to participate in

settlement negotiations." *Id.*, 871 F.2d at 653.

Not only was the mandatory in-person meeting in the case at bar not a scheduled court

conference, and the cost and time consumption did not justify mandating the meeting in the face of

unwillingness and deadlock, the use of any inherent power would not be proper because it compels

settlement negotiations.  The following rulings of the Seventh Circuit in G. Heileman Brewing Co.

v. Joseph Oat Corp., *supra*, are pertinent:

> [C]ircumstances could arise in which requiring ... any litigant ...  to appear at a
> pretrial settlement conference would be so onerous, so clearly unproductive, or so
> expensive in relation to the size, value, and complexity of the case that it might be
> an abuse of discretion. Moreover, "[b]ecause inherent powers are shielded from
> direct democratic controls, they must be exercised with restraint and discretion."
> Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65
> L.Ed.2d 488 (1980) (citation omitted).

*Id.,* 871 F.2d at 654.  In the case at bar, Benjamin informed the special master of the parties'

unwillingness to engage in settlement negotiations based on contacts with Tejedor, and Benjamin's

unwillingness to participate in light of his pending dispositive  motion for summary judgment

seeking a ruling that Tejedor's fee was forfeited.  Moreover, with the October 19 hearing set to

occur in New Orleans a month later, it was onerous, unreasonable and unproductive to require the

in-person meeting in the first instance and in particular to require that it take place in New Orleans,

when Tejedor was in Florida and Benjamin was in New York.

It is respectfully submitted the special master's failure to recognize or exercise its discretion

with respect to adjourning the scheduling order in any respect and waiting until after the hearing to

summarily deny objectant's motion for summary judgment, despite the fact that it would have

obviated the time and expense of the evidentary hearing, constituted an abuse of discretion to

amend or modify or extend the scheduling order in light of other events.  *See, e.g.,* Sherrod v.

American Airlines, Inc., 1999 WL 172281, *5 n.1 (N.D.Tex.) ["the court advised that Defendant's

trial brief would be treated as a motion to dismiss or in the alternative as a motion for summary

judgment and in order to reduce time and expense, the trial was continued pending disposition of

the merits of Defendant's motion."]   Here, the special master abused its discretion by not

adjourning or extending the scheduling order for "good cause," in that the summary judgment

motion clearly narrowed or obviated the matters to be tried, and had been filed well in advance of

the October 19 hearing date.

Under Rule 53(a)(3), the appointment of a master "must protect against unreasonable

expense or delay."   The time and cost for these two attorneys to meet in person, and particularly to

meet in person in New Orleans, is clearly an unreasonable expense to be protected against.

Moreover, the mandatory in-person meeting in the scheduling order becomes coercive where one

or both of the parties is or are clearly unwilling to participate in settlement negotiations or incur

unreasonable expense associated therewith.   Here, there is no indication that Tejedor had an

intention of reducing her claim to 100% of the attorney's fees, and Benjamin not only asked to

dispense with or adjourn the in-person meeting, but filed a motion for summary judgment that, if

granted, would obviate any need for any settlement discussions because it would mean Tejedor

forfeited any fee by abandoning the client.   Benjamin's request to dispense or adjourn was not

ruled upon by the special master.   Further, assuming *arguendo* that the in-person meeting

directive was proper, this Court's prior September 3 referral of the summary judgment motion to

the special master obviated or should have resulted in, at minimum, adjourning the in-person

meeting, as well as the evidentiary hearing of October 19, until the motion was decided.

Objection 2 involves the separate requirement in the scheduling order that each party

submit a separate 3-ring binder for the hearing by September 20.  Objectant submits the special

master failed to recognize and properly exercise his discretion since he was already aware of

Tejedor's motion to strike Benjamin's pleadings due to not showing up for the in-person meeting,

and, therefore, Benjamin would not have been able to submit a complete binder because the

scheduling order required  "certification by parties of their in-person meeting".  At the same time,

the special master had not ruled on Benjamin's requests for adjournment or dispensing with the in-

person meeting at the time of the September 20 binder deadline, and Tejedor had in any event

already filed her motion to strike all of Benjamin's "pleadings" on September 16, 2010, prior to the

binder due date.

Benjamin notes that he had partially complied with the scheduling order at the time he filed

the motion for summary judgment, having submitted the required memorandum of law and later

contacted Tejedor by telephone to discuss possible resolution, which she rejected, showing he was

not flagrantly abusing the scheduling order.   The special master failed to take into consideration

Benjamin's motion for summary judgment for any purpose, and, therefore, failed properly to

recognize or exercise the discretion he had in procedural matters.   The special master's report

should be rejected, or at minimum modified, in light of his failure to respond or exercise discretion

at all with respect to Benjamin's requests for adjournment, and of the insistence on an in-person

meeting regardless of its utility or expense to the parties, and in spite of the unwillingness to

participate.

Objectant now turns to the sanctions that the special master predicated upon the above

procedural matters to which objection is made.

### III.

**This Court Should Reject or Modify the Special Master's
Report and Recommendation for Sanctions Against Benjamin,
and Upon De Novo Review Should Rule That There Was No
"Flagrant Abuse" Violations of the Scheduling Order Nor
Any Proper Basis to Impose Sanctions Under Rule 11.**

With respect to Objection 7, it appears clear the special master predicated the

recommendation of sanctioning objectant monetarily "for his flagrant abuse and disregard of the

judicial process" solely on the failure to meet the scheduling order's requirements to participate in the in-person meeting with Tejedor and to submit a separate 3-ring binder of materials.   *Report, at p. 2, 3*.   Therefore, it is clear the sanctions recommendation is not based on the fact that Benjamin did not appear at the hearing on October 19, but rather is limited to noncompliance with the aforesaid meeting and binder directives in the scheduling order.

The monetary sanctions are based on the special master's erroneous conclusion that, "The failure of Benjamin to follow the clear requirements of the scheduling order were [sic] flagrant abuse of the judicial process and warrant the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure." *Id., at p. 2*.   With all due respect, even if objectant did not meet with Tejedor and did not submit a binder, Rule 11 is inapplicable to the conduct identified by the special master.   It is well settled that Rule 11 governs the specific conduct of signing pleadings, motions and other papers as well as making representations to the court, none of which has been identified in the report.

The record below confirms the sanctions for "flagrant abuse" were reported and recommended on the special master's own initiative.   There was no motion by Tejedor for Rule 11 sanctions, the procedure for which is that such a motion "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."   Tejedor did not file such a separate motion, nor could she, under the events herein, meet the 21-day safe harbor requirement set forth in Rule 11(c)(2) for filing a sanctions motion, inasmuch as her "motion to strike", which sought attorney's fees and sanctions for Benjamin's nonappearance at the in-person meeting on September 13, was filed on or about September 16, only about 3 days afterwards. Indeed, the special master denied her motion to strike in any event, thus confirming the sanction awarding her attorney's fees and expenses was based solely on the court's own initiative in

utilizing Rule 11.

Although Rule 11 provides for the imposition of a penalty to be paid into court, this Court should reject the report and recommendation of sanctions here because the special master failed to follow Rule 11's requirement of entry of an "order...to show cause why conduct specifically described in the order has not violated Rule 11(b)." Rule 11(c)(3).   Not only was this procedure not followed by the special master, objectant respectfully submits, the special master did not and should not issue such a show cause or recommend the sanction since the conduct identified does not violate Rule 11 in any event.

It appears clear Rule 11 does not apply to the special master's award of fees and costs to Tejedor, since it is solely based on Benjamin's failure to appear at the hotel to meet in-person with Tejedor for settlement discussions, which is specifically cited by the special master as part of "[t]he failure of Benjamin to follow the clear requirements of the scheduling order" that "warrant the imposition of sanctions under Rule 11...." Report, p. 2.   Moreover, the recommendation of attorney's fees and costs and the substantial $5,000.00 "penalty" fails to consider lesser sanctions that would be proper under the circumstances.   *See, e.g.,* Luna v. Int'l Ass'n of Machinists & Aerospace Workers Local # 36, 614 F.2d 529, 531 (5th Cir.1980); Watson v. U.S. ex rel. Lerma, 285 Fed.Appx. 140, 2008 WL 2725506 (5th Cir.).   As previously argued, no sanction should have been attached to the coerced settlement negotiations.   As to the binder, the scheduling order had a built-in sanction for not submitting the binder, to wit, limiting or precluding evidence.   It is respectfully submitted the sanctions recommended here actually appear to include denial of Benjamin's summary judgment motion out of hand, in essence striking the motion as another penalty against Benjamin, in addition to monetary sanctions, making the recommendation even more draconian.

-19-

Parenthetically, it is noted that, while Rule 11 includes among the permissible sanctions "an order to pay a penalty into court," the same cannot be said for the other rules and statutes that might arguably be invoked by the special master or this Court to impose sanctions in this matter. In that regard, it is clear the $5,000.00 sanction recommended by the special master be levied against objectant cannot derive from 28 U.S.C. §1927. In the first instance, it is only necessary to note that:

> In order for [28 U.S.C.] § 1927 to be applicable, there must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings. Under the plain statutory language, objectionable conduct-even "unreasonable and vexatious" conduct-is not sanctionable unless it results in proceedings that would not have been conducted otherwise.

Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997). Even if there were such extra proceedings, however, it is well settled that 28 U.S.C. § 1927 "only allows the court to award costs and attorney fees payable to the opposing party, not payable to the court." Prosser v. Prosser, 186 F.3d 403, 407 (3d Cir. 1999). As the court in Prosser explained:

> The 'excess costs' allowable as a sanction under §1927 are limited to those costs enumerated under 28 U.S.C. § 1920. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 757-59, 100 S.Ct. 2455, 2459-62, 65 L.Ed.2d 488 (1980). Section 1920 does not include fines for "harm to the judicial system." Id.

Id. Because of the punitive nature of sanctions under 28 U.S.C. § 1927, it "is to be strictly construed...." Baulch v. Johns, 70 F.3d 813, 817 (5th Cir.1995), citing Browning v. Kramer, 931 F.2d 340, 344 (5th Cir.1991). The special master and Tejedor would be hard pressed to show that imposition of her fees and costs are based on any conduct of Benjamin's that could be viewed as having "exhibited the degree of recklessness, bad faith, or improper motive required for a finding that the attorney has multiplied the proceedings 'unreasonably and vexatiously'." Manax v. McNamara, 842 F.2d 808, 814 (5th Cir. 1988); see also Edwards v. Gen. Motors Corp., 153 F.3d

-20-

242, 246 (5th Cir.1998) [requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."].   To the contrary, Benjamin's timely and reasonable requests for adjournments in light of the summary judgment motion he had filed, which are not mentioned and were never ruled on by the special master, were clearly reasonable and rational attempts to *reduce* not multiply, the proceedings.

These matters are detailed in objectant's show cause application for a stay filed in this case (*MDL Rec.Doc. 53477*), incorporated by reference in these objections,  which was denied by this Court on October 14, 2010 (*MDL Rec.Doc. 53885*), and shows Benjamin pursued orderly attempts to seek reasonable adjournments of the fast-track pre-trial order that did not even provide for making dispositive motions in advance of the hearing.   Moreover, the record confirms Benjamin advised Tejedor sufficiently in advance that he would not appear in the New Orleans hotel on September 13.   *See Opposition to Motion to Strike, MDL Rec.Doc. 52375-7, at p. 1.*

Nor would the recommended sanctions be authorized under Fed.R.Civ.Pr.16(f)(2), since it only permits imposing "reasonable expenses" (fees and costs) "because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."   Here, the special master does not mention and did not rule on Benjamin's reasonable requests for adjournment or to dispense with the coerced settlement negotiations and the other terms of the scheduling order pending disposition of his motion for summary judgment.   Benjamin even filed a show cause application to stay the hearing of October 19, particularly since the hearing would have been obviated if he was granted summary judgment, but this Court denied the same, and left the matter to the discretion of the special master who abused the discretion as argued above.

Inherent power is not and should not be invoked to impose sanctions here.   There is no

basis on which to impose sanctions in the exercise of inherent power in light of the  Fifth Circuit's rulings that:

> The trial court's discretion to impose sanctions under its inherent power is even more limited. We have confined sanctions under the district court's inherent power to instances of bad faith or willful abuse of the judicial process. *See Breazeale v. Smith,* 857 F.2d 258, 261 (5th Cir.1988); *Matter of Thalheim,* 853 F.2d 383, 389 (5th Cir.1988). We have also noted that in the context of the federal court's inherent power, "bad faith" is judged by "necessarily stringent" standards. *Batson v. Neal Spelce Associates, Inc.,* 805 F.2d 546, 550 (5th Cir.1986).

Pressey v. Patterson, 898 F.2d 1018, 1021 (5th Cir. 1990).   Further, the Fifth Circuit "has reversed sanctions awards when, as here, the district court merely made a generalized complaint about the sanctioned party's conduct." Pillar Panama, S.A. v. DeLape, 326 Fed.Appx. 740, 744, 2009 WL 1181632, *3 (5th Cir. 2009), citing Goldin v. Bartholow, 166 F.3d 710, 722-23 (5th Cir.1999); Elliott v. Tilton, 64 F.3d 213, 217 (5th Cir.1995).  The Court in that case ruled:

> "Moreover, the standard for the imposition of sanctions using the court's inherent powers is extremely high. The court must find that the very temple of justice has been defiled by the sanctioned party's conduct." *Goldin,* 166 F.3d at 722-23 (internal quotation marks and citation omitted). Because "[n]othing in the record reflects conduct that reaches this level[,] ... the imposition of sanctions using the court's inherent powers ... constitutes an abuse of discretion," and requires reversal. *Id.* at 723.

*Id.*   Here, the special master uses the in-person meeting and binder as the predicate for sanctions, and it is respectfully submitted the same provide no grounds for invoking this Court's inherent power in order to sanction Benjamin.

In this case, this Court denied a stay, deferring to the special master, but the special master never responded to the adjournment requests, and now, having put the hearing cart before the dispositive motion horse, recommends denial of Benjamin's motion for summary judgment out of hand, which denial appears to be part of the Rule 11 sanction against Benjamin since it is not considered in any manner in the report.  Indeed, the report utterly fails to mention Benjamin's

central argument and proof supporting his summary judgment motion that Tejedor and her firm

abandoned plaintiff Weeks before there was any recovery and thereby forfeited the fee she claimed.

It is respectfully submitted that the special master's recommendation that this Court

sanction Benjamin under Rule 11 by imposing attorney's fees and expenses as well as $5,000.00

should be rejected. These particular sanctions are unwarranted and an abuse of discretion. To the

extent the denial of his motion for summary judgment operates as a further sanction, it likewise

should be rejected. This Court should decline to impose any of the sanctions recommended by the

special master.

## CONCLUSION

WHEREFORE, it is respectfully submitted that this Court should reject the October 26,

2010 Report and Recommendation of Special Master Patrick Juneau in its entirety, or, in the

alternative, modify the same to grant Benjamin's motion for summary judgment and strike the

monetary and other sanctions recommended against Benjamin.

Respectfully submitted,

Ronald R. Benjamin  Fed.Bar No. 101131
LAW OFFICE OF RONALD R. BENJAMIN
Attorneys for Plaintiff
126 Riverside Drive, P. O. Box 607
Binghamton, New York 13902-0607
607/772-1442