Page 1

--- F.R.D. ----, 2010 WL 4282106 (S.D.Fla.)
(Cite as: 2010 WL 4282106 (S.D.Fla.))

Only the Westlaw citation is currently available.

United States District Court,
S.D. Florida.
Allison NELSON, on behalf of herself and all others similarly situated, Plaintiff,
v.
MEAD JOHNSON NUTRITION COMPANY and Mead Johnson & Company, Defendants.
No. 09-CV-61625-COHN/SELTZER.

Nov. 1, 2010.

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION

JAMES I. COHN District Judge.

**\*1** THIS CAUSE is before the Court on Plaintiff's Motion for Class Certification [DE 51] ("Motion"). The Court has carefully reviewed the Motion, Defendant's Opposition [DE 64], Plaintiff's Reply [DE 75], has heard argument of counsel in open court on the record, and is otherwise advised in the premises.

### I. BACKGROUND

Plaintiff Allison Nelson alleges that Defendant Mead Johnson & Company engages in unfair competition and unfair and deceptive trade practices by misrepresenting the qualities of one of its products: Enfamil ® LIPIL ® infant formula. Specifically, Plaintiff alleges that Defendant has "sought to increase sales by falsely representing to consumers that Enfamil LIPIL is the only baby formula that contains DHA and ARA." DE 1 ¶ 4 ("Complaint"). Plaintiff further alleges that "other brands of baby formula, including lower-priced store brands and private labels, contain DHA and ARA in amounts equal to or greater than those contained in Defendant['s] products." *Id.* ¶ 5. Moreover, Plaintiff alleges that "[b]ecause of Defendant['s] false representations regarding the nature of their Product, Plaintiff and Class members paid more for Defendant ['s] Products than they otherwise would have, mistakenly believing that they were purchasing the only infant formula that provides certain nutrients essential to the brain and eye development of their babies." *Id.* ¶ 6. Indeed, Plaintiff alleges that she "read the representations on the Product container and had viewed Defendant['s] advertisements" and that she "reasonably relied on Defendant['s] representations in making her purchasing decisions." *Id.* ¶¶ 33, 37. According to Plaintiff, had she known that Enfamil "was not the only infant formula available that contains DHA and ARA, she would not have paid as much ... for the product and would have bought one of the less expensive brands available on the market." *Id.* ¶ 38.

Accordingly, on October 13, 2009, Plaintiff filed a class action complaint. *Id.* ¶ 39. The Complaint alleged three counts: 1) a violation of Florida's Deceptive and Unfair Trade Practices Act, section 501.201, *et seq.,* Florida Statutes ("FDUTPA" or "the Act"); 2) False and Misleading Advertising in violation of section 817.41, Florida Statutes; and 3) Unjust Enrichment. Defendant filed a motion to dismiss the Complaint, which the Court granted in part and denied on March 8, 2010: *See* DE 31. Consequently, only the FDUTPA and false advertising claims remain before the Court.

On May 19, 2010, Plaintiff filed her Motion for Class Certification. Plaintiff seeks certification of her FDUTPA claim on behalf of "[a]ll Florida consumers who purchased Enfamil ® LIPIL ® within the applicable statute of limitations."[FN1] DE 46 at 2 ("the Proposed Class"). Defendant opposes the Motion for Class Certification. According to Defendant, the Court should not certify the Proposed Class for four reasons: (1) Plaintiff is an inadequate class representative; (2) Plaintiff cannot satisfy the typicality requirement of Federal Rule of Civil Procedure 23(a); (3) Plaintiff cannot satisfy the pre-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



dominance requirement of Federal Rule of Civil Procedure 23(b); and (4) individualized issues of proof render this case unsuitable for class treatment. For the reasons set forth below, the Court rejects Defendant's arguments and will grant Plaintiff's Motion for Class Certification.

> FN1. Plaintiff excludes from the class definition "all purchases of Enfamil LIPIL products made through the Federal Special Supplemental Nutrition Program for Women, Infants, and Children." DE 46 at 2, n. 3.

## II. DISCUSSION

### A. Legal Standard

*1. Federal Rule of Civil Procedure 23*

**\*2** Plaintiff seeks class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Rule 23 provides in pertinent part:

(a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

...

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed.R.Civ.P. 23. Thus, Plaintiff can maintain her case as a class action only "if all four prerequisites of Rule 23(a) are satisfied and, in addition, the requirements of one of the three subsections of Rule 23(b) are also met." *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir.1997).

"The district court has broad discretion in determining whether to certify a class." *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569 (11th Cir.1992); *see also Heaven,* 118 F.3d at 737 ("The district court's decision whether to certify a class may only be overturned if it constitutes an abuse of discretion."). Nonetheless, the Court may certify a class only if the court is satisfied, "after a rigorous analysis," that the prerequisites of Rule 23 have been met. *Gilchrist v. Bolder,* 733 F.2d 1551, 1555 (11th Cir.1984). "The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action." *Heaven,* 118 F.3d at 737 (citing *Gilchrist,* 733 F.2d at 1556; *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir.1981)).

*2. FDUTPA*

The FDUTPA is a creature of Florida law. As such, the undersigned is bound to follow Florida appellate court decisions interpreting that law. *Fla. Family Policy Council v. Freeman,* 561 F.3d 1246, 1256 (11th Cir.2009) (citing *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.,* 710 F.2d 678, 690 (11th Cir.1983) ("A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.")). With that rule in mind, the Court turns to the FDUTPA.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Supreme Court of Florida has not set forth the elements of a FDUTPA claim. The decisions of the Florida District Courts of Appeal, therefore, guide this Court's analysis. *See Fla. Family Policy Council,* 561 F.3d at 1256. The Court finds Judge Padavano's opinion in *Davis v. Powertel,* 776 So.2d 971, 974 (Fla.Dist.Ct.App.2000), particularly instructive. In *Davis,* Judge Padavano recognized that the Florida Deceptive and Unfair Trade Practices Act provides a cause of action "against a party who has engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' but it does not define the elements of such an action." *Id.* at 974 (citing § 501.204(1), Fla. Stat. (1999)). "Instead, the statute provides that the Florida courts must give 'due consideration and great weight' to Federal Trade Commission and federal court interpretations of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C § 45(a)(1). See § 501.204(2), Fla. Stat. (1999)." *Id.* Federal decisions provide that "a deceptive practice is one that is 'likely to mislead' consumers." *Id.* (citing *In re Int'l Harvester Co.,* 104 F.T.C. 949 (1984); *In re Cliffdale Assocs., Inc.,* 103 F.T.C. 110 (1984); *Sw. Sunsites, Inc. v. FTC,* 785 F.2d 1431 (9th Cir.1986)). According to Judge Padavano, however, "this standard does not require subjective evidence of reliance, as would be the case with a common law action for fraud." *Id.; see also State, Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Int'l. Inc.,* 869 So.2d 592, 598 (Fla.Dist.Ct.App.2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *Latman v. Costa Cruise Lines, N.V.,* 758 So.2d 699 (Fla.Dist.Ct.App.2000) ("It is sufficient if a reasonable person would have relied on the representations."). Thus, in a FDUTPA action "the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id.*[FN2]

FN2. Some Florida District Courts of Appeal have determined that causation is an element of a consumer FDUTPA action for damages. *See, e.g., Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla.Dist.Ct.App.2006). Because those cases identify a causation element, they appear to be at odds with *Davis* and *Latman.* Indeed, the concepts of causation and reliance can be deeply intertwined, for a deceptive practice seemingly cannot have *caused* an aggrieved party damages unless the aggrieved party *relied* on the deceptive practice. Upon closer inspection, however, a deceptive practice can cause a consumer damages even if the consumer does not rely on the deceptive practice when purchasing a particular product. Ostensibly, a deceptive practice allows a manufacturer or vendor to charge a premium for a product that the manufacturer would not be able to command absent the deceptive practice. Thus, even if an individual consumer does not rely on a deceptive practice when deciding to purchase that product, the consumer will have paid more for the product than she otherwise would have. Consequently, the consumer suffers damages.

The undersigned finds Judge Padavano's decision in *Davis* particularly persuasive. To find otherwise would eviscerate the protections that FDUTPA is designed to afford consumers. Indeed, if the Act requires a consumer to prove reliance, it becomes impossible for a court to ever certify a class in a FDUTPA action. In many instances, if consumers cannot attain class certification, they cannot pursue their claim. For example, in FDUTPA actions like the case at bar, the amount in controversy for an individual plaintiff is too insignificant to make the claim worth pursuing. This is particularly true given the enormous expense

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 4282106 (S.D.Fla.)
**(Cite as: 2010 WL 4282106 (S.D.Fla.))**

associated with litigating the complex questions that invariably arise when a consumer challenges a defendant manufacturer's representations about the qualities or contents of a particular product. Because a reliance element would effectively deprive those plaintiffs of a remedy, the Court agrees with Judge Padavano that FDUPTA does not require plaintiffs to prove reliance.

### B. Class Certification

#### 1. Rule 23(a)

*3 As set forth above, to certify a class, a plaintiff must satisfy the four prerequisites of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *See* Fed.R.Civ.P. 23(a). Here, Defendant does not challenge numerosity. Furthermore, Defendant does not overtly challenge commonality or adequacy. However, in the section of Defendant's Opposition dedicated to typicality, Defendant raises arguments that implicate the commonality and adequacy prerequisites.

##### a. Commonality

Rule 23(a)(2)'s commonality requirement demands "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). It is a "relatively light burden" that "does not require that all the questions of law and fact raised by the dispute be common ... or that the common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir.2009) (internal quotations omitted). Rather, it requires only "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir.2009) (internal quotations omitted).

The case at bar involves several issues of law or fact that are common to the Proposed Class, including the following: (1) whether Defendant's representations about Enfamil ® LIPIL ® were true; (2) whether Defendant's allegedly deceptive conduct would deceive an objective consumer acting reasonably in the circumstances; (3) the proper measure of Plaintiff's and class members' loss, if any; and (4) whether Plaintiff and class members are entitled to injunctive relief. Plaintiff, therefore, has satisfied the commonality requirement.

##### b. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984), *cert. denied*, 470 U.S. 1004 (1985): *see also CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D.Fla.1992). As the Supreme Court has noted, the "commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tele. Co. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982); *see also Griffin v. Dugger*, 823 F.2d 1476, 1489 n. 31 (11th Cir.1987).

Defendant offers five reasons why Plaintiff does not satisfy the typicality requirement:

(1) she lacks standing, (2) she did not purchase any of the thirteen products that the purported class purchased, (3) the representations regarding the thirteen products identified in her Motion did not contain the language purportedly viewed by Plaintiff, (4) in contrast to the alleged putative class, Plaintiff could not have purchased Enfamil ® LIPIL ® based on a belief that it was the only infant formula with DHA and ARA; and (5) the "only brand clinically proven" language that Plaintiff claims to have read before purchasing Enfamil ® LIPIL ® did not appear on the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 4282106 (S.D.Fla.)
(Cite as: 2010 WL 4282106 (S.D.Fla.))

product's packaging until more than one year after Plaintiff first purchased the product, well after the start of the time period encompassed by the putative class and at approximately the time Plaintiff stopped purchasing the product.

*4 DE 64 at 8-9. For the reasons set forth below, the Court finds Defendant's arguments unpersuasive.

### i. Plaintiff's Standing

Defendant contends that Plaintiff does not satisfy the typicality requirement because she lacks standing to assert a FDUTPA claim. Plaintiff's standing, or lack thereof, implicates the adequacy prerequisite rather than the typicality prerequisite. Accordingly, the Court addresses Defendant's standing argument further below.

### ii. Plaintiff Purchased Enfamil ® LIPIL ®

Alternatively, Defendant argues that Plaintiff "cannot satisfy the typicality requirement because she did not purchase any of the products purchased by the putative class, nor did she view the representations for those products." DE 64 at 10. As with standing, this argument appears to implicate the adequacy of Plaintiff's representation rather than the typicality prerequisite. Notwithstanding, the Court addresses it here.

Defendant's position appears to place form before substance. As noted above, the Complaint defines the Proposed Class as "[a]ll persons in Florida who, within the applicable statute of limitations, purchased Enfamil LIPIL." Complaint ¶ 39. The Motion for Class Certification, however, defines "Enfamil LIPIL" to include thirteen different infant formulas manufactured by Defendant, none of which is actually Enfamil ® LIPIL ®.[FN3]

> FN3. Plaintiff's Motion for Class Certification states the following:
>
> "Enfamil LIPIL ®" refers to Defendant's Enfamil LIPIL ® line of infant formula products. These products, each containing DHA and ARA (explained below) under the made-up name "LIPIL," include: Enfamil Premium LIPIL with Triple Health Guard, Enfamil Restfull LIPIL, Enfamil Gentlease LIPIL, Enfamil A.R. LIPIL, Nutramigen LIPIL with Enflora LGG, Enfamil ProSobee LIPIL, Enfamil Nutramigen LIPIL, Enfamil LactoFree LIPIL, Enfamil EnfaCare LIPIL, Enfamil Premature LIPIL, Enfamil Enfaport LIPIL, Enfamil Pregrstimil LIPIL, and Enfamil Nutramigen AA LIPIL.
>
> DE 46 at 1, n. 1.

Plaintiff, undisputedly, purchased only Enfamil ® LIPIL ®. "Thus," Defendant contends, "Plaintiff's claims regarding her purchase of Enfamil ® LIPIL ® do nothing to advance the interest of putative class members who purchased other products and viewed other representations." DE 64 at 11. In other words, because the definition of "Enfamil LIPIL" set forth in the Motion for Class Certification includes several products manufactured by Defendant, but fails to include Enfamil ® LIPIL ®, Defendant argues that Plaintiff has not purchased the product at issue.

Plaintiff basically admits this point in her Reply. She states,

> [i]n addition to the Enfamil ® LIPIL ® product, Mead Johnson manufactures thirteen other infant formulas that contain "LIPIL" in their product name, which Plaintiff made reference to in her Motion for Class Certification. Plaintiff has since learned that the deceptive superiority misrepresentations at issue did not consistently appear on these product labels and no longer seeks to include these products in the Class.

DE 75 at 4, n. 7. If Plaintiff no longer seeks to in-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

clude the thirteen products referred to in the Motion for Class Certification, and the Court holds Plaintiff to her own definition of "Enfamil LIPIL," the Court must deny Plaintiff's Motion for Class Certification. Stated differently, if Plaintiff no longer seeks to include the thirteen products in the Class, there are no products in the Class. If there are no products in the Class, Plaintiff cannot possibly maintain a FDUTPA or false advertising action.

The Court, however, finds that Enfamil ® LIPIL ® is implicitly included within the class of products that Plaintiff broadly called "Enfamil LIPIL" even if Plaintiff failed to include that specific product within the definition that appears in a footnote in the Motion for Class Certification. Indeed, throughout this case the parties have litigated over the product Enfamil ® LIPIL ® and engaged in considerable discovery regarding Enfamil ® LIPIL ®. *See, e.g.,* DE 13 (Defendant's Motion to Dismiss). Thus, even if Plaintiff mistakenly omitted "Enfamil ® LIPIL ®" from the list of products that comprise "Enfamil ® LIPIL ®" as that term is defined in the Motion for Class Certification, the Court will construe the term "Enfamil LIPIL" in the Motion for Class Certification to include Enfamil ® LIPIL ® and only Enfamil ® LIPIL ®. The Court therefore rejects Defendant's argument that Plaintiff did not purchase any of the products purchased by the Proposed Class.

iii. Plaintiff Testified that She Was Deceived by Defendant's Representations

*5 Defendant argues that Plaintiff "fails the typicality requirement because the representations identified in her Complaint did not lead her to believe that only Enfamil ® LIPIL ® has DHA and ARA." DE 64 at 11. Specifically, Defendant contends that Plaintiff was not deceived by Defendant's advertisements "and that she continued to purchase [Enfamil ® LIPIL ®] not because she thought it was superior to other brands, but because she knew that it was working for her child." *Id.* at 12. Because Plaintiff continued to use Enfamil ® LIPIL ® after she learned that it was not the only formula that contained DHA and ARA, Defendant submits that "Plaintiff's claims do not have the same characteristics of the alleged putative class." *Id.* at 13.

Defendant's argument seizes upon isolated sections of Plaintiff's deposition testimony. Nonetheless, Plaintiff maintains that even though she learned that other formulas contained DHA and ARA, Defendant's representations about Enfamil ® LIPIL ® led her to believe that Enfamil ® LIPIL ® contained something that other formulas did not. For example, Plaintiff testified that she bought Enfamil ® LIPIL ® because of her belief that Enfamil ® LIPIL ® was "[t]he only one that had LIPIL that's going to improve the brain and eye development." *See* Nelson depo. at 91-92. Because Plaintiff asserts that she bought Enfamil ® LIPIL ® based on a belief that the product contained something that other infant formulas did not, the Court finds that Plaintiff's claim has "the same *essential* characteristics as the claims of the class at large." *See Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985) (quoting *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F .2d 225, 232 (7th Cir.1983)), *overruled on other grounds by Green v. Mansour,* 474 U.S. 64 (1985).

Defendant devotes much attention to specific representations regarding the quality and contents of Enfamil ® LIPIL ®, and which ones Plaintiff viewed or relied upon.[FN4] Defendant, however, ignores the "essential characteristics" of Plaintiff's claim. Although the precise wording of the representations is varied, the bedrock of Plaintiff's FDUTPA claim is consistent: Defendant deceptively led the consuming public to believe that Enfamil ® LIPIL ® provided infants with something that other infant formulas did not. Moreover, as set forth above, Plaintiff need not have relied on the representations to prove a FDUTPA claim. Defendant's argument, therefore, is unpersuasive.

> FN4. The Complaint alleges that the Enfamil label states that "Enfamil LIPIL is the "Only Brand CLINICALLY PROVEN

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 4282106 (S.D.Fla.)
(Cite as: 2010 WL 4282106 (S.D.Fla.))

to Improve VISUAL AND MENTAL DEVELOPMENT." Complaint ¶ 18. The Complaint further alleges that print advertisements circulated by Defendants contain the following statements: 1) "Only Enfamil has LIPIL, our blend of DHA and ARA, important nutrients found in breast milk"; 2) "[I]t's the only formula shown in published independent clinical studies to [i]mprove brain development [and] [i]mprove eye development"; 3) "[C]hoose Enfamil LIPIL-the only infant formula that's clinically proven to improve vision"; 4) "En-Fact: Enfamil LIPIL's unique formulation is not available in any store brand"; 5) "It may be tempting to try a less expensive store brand, but only Enfamil LIPIL is clinically proven to improve brain and eye development"; and 6) "Store brands may cost less, but Enfamil gives your baby more." Complaint ¶¶ 18-23.

### iv. Even if Class Members Viewed Different Enfamil ® LIPIL ® Labels, that Fact Does Not Defeat Typicality

Defendant submits that "Plaintiff could not have relied on the language of which she complains when she [first] purchased Enfamil ® LIPIL ®." DE 64 at 13. Specifically, Defendant maintains that the message "Clinically proven to improve the brain and eye development" did not appear on cans of Enfamil ® LIPIL ® until December 2005, more than one year after Plaintiff started purchasing LIPIL. *Id.* Thus, Defendant argues, if the cans did not contain that representation, Plaintiff cannot be typical of the class.

*6 Defendant's argument conflates the typicality requirement with Plaintiff's ability to prove a FDUTPA claim. Essentially, Defendant argues that Plaintiff's claim is not typical of the class because Plaintiff cannot satisfy the reliance component of a FDUTPA claim. The Court finds Defendant's argument unpersuasive for three interrelated reasons.

First, as stated above, the Proposed Class is "[a]ll Florida consumers who purchased Enfamil ® LIPIL ® within the applicable statute of limitations." If Plaintiff bought LIPIL ® within the relevant time period, she is a member of the class regardless of *why* she purchased LIPIL ®. Defendant does not dispute that Plaintiff bought at least some Enfamil ® LIPIL ® within the applicable statute of limitations. Plaintiff's claim, therefore, is typical of the claims of the class.

Second, as discussed at length in section II.A.2, *supra,* Plaintiff need not prove that she relied on any particular representation when she decided to purchase Enfamil ® LIPIL ®. *See Davis v. Powertel,* 776 So.2d 971, 974 (Fla.Dist.Ct.App.2000); *see also Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,* 332 Fed. App'x 565 (11th Cir.2009) ("FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct."); *Fitzpatrick v. General Mills, Inc.,* 263 F.R.D. 687, 694 (S.D.Fla.2010). Because Plaintiff can prove a FDUTPA claim without proving that she relied on a particular representation, Defendant's argument that other members of the class viewed different representations than Plaintiff does not render Plaintiff's claim atypical of the class.

Third, Plaintiff testified that she first purchased Enfamil ® LIPIL ® after receiving an informational flier and coupons that contained the "clinically proven" representation. DE 75 at 7. Plaintiff also maintains that even if the product container did not contain the clinically proven message when Plaintiff first purchased Enfamil ® LIPIL ®, Plaintiff was exposed to the following messages when she first purchased that product: "Enfamil LIPIL has a unique blend of DHA and ARA" and "Enfamil LIPIL gives you more than store brands, which may cost less." *Id.* at 6. Because Plaintiff was exposed to those messages, the Court finds Plaintiff's claim typical of other Proposed Class members' claims.[FN5]

> FN5. Defendant makes much of the relationship between Plaintiff and her counsel.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 4282106 (S.D.Fla.)
(Cite as: 2010 WL 4282106 (S.D.Fla.))

*See, e.g.,* Opposition at 4-5. In particular, Defendant draws attention to the fact that Plaintiff's counsel, a childhood friend of Plaintiff's husband, first contacted Plaintiff regarding the subject matter of this litigation. In other words, Defendant points out that Plaintiff had no intention of commencing a FDUTPA action against Defendant until her lawyer suggested it. Essentially, Defendant takes the position that this case has been manufactured by Plaintiff's counsel. Even if true, however, such a development has no bearing on the merits of Plaintiff's Motion for Class Certification.

c. Adequacy

Defendant argues that Plaintiff lacks standing to assert a FDUTPA or false advertising claim because "the four-year statute of limitations expired nearly a year before the filing of this lawsuit in October 2009." DE 64 at 9. Therefore, Defendant submits, Plaintiff's claims are not typical of the class she seeks to represent. *Cf. Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341, 1347 (11th Cir.2001) ("[A] class representative whose claim is time-barred cannot assert the claim on behalf of the class.").

Plaintiff concedes that she cannot state a claim predicated on purchases she made in August 2004 (i.e., the date of her first purchases of Enfamil ® LIPIL ® as alleged in the Complaint). *See* DE 75 at 8. Nonetheless, Plaintiff maintains that she can state a claim for the roughly fifty purchases she made between October 2005 and January 2006. *See id.* The latter purchases, she argues, occurred within four years from the date she filed her Complaint and therefore within the statue of limitations. *See id.* Because Plaintiff purchased Enfamil within the four-year statute of limitations, the Court finds that Plaintiff has standing to assert a FDUTPA or false advertising claim against Defendant. Accordingly, the Court rejects Defendant's argument that Plaintiff is an inadequate class representative. Plaintiff, therefore, has satisfied Rule 23(a)'s four prerequisites.

2. *Rule 23(b)(3)*

a. Predominance

*7 Before a district court can certify a class pursuant to Rule 23(b)(3), the plaintiff must demonstrate that common issues predominate over individualized issues. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 594 (1997). To satisfy the predominance requirement, "the issues in the class action that are subject to generalized proof and, thus, applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Nichols v. Mobile Bd. of Realtors, Inc.,* 675 F.2d 671, 676 (5th Cir. Unit B 1982).

Common issues can predominate only if they have a "direct impact on every class member's effort to establish liability that is more substantial than the impact of individual issues in resolving the claim or claims of each class member." *Vega,* 564 F.3d 1270. Indeed, if plaintiffs must introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their claim, the action is not suitable for class certification under Rule 23(b)(3). *See Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir.2004).

Here, Defendant argues that "Plaintiff cannot certify a class in this case because under FDUTPA, every class member must prove causation and damages, and the individual nature of such determinations precludes class treatment." DE 64 at 14. As to damages, the Court recognizes that the Proposed Class members will likely have to produce individualized evidence. Nonetheless, individualized damages determinations generally do not preclude class certification if liability may be determined

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 4282106 (S.D.Fla.)
**(Cite as: 2010 WL 4282106 (S.D.Fla.))**

class-wide. *See Klay,* 382 F.3d at 1260.

The liability issue is therefore dispositive here. Stated differently, if every class member must establish causation via individualized proof, the Court cannot certify the class. The class members, however, need not submit individualized proof to establish causation. *See* section II.A.2, *supra* (citing *Davis v. Powertel,* 776 So.2d 971, 975 (Fla.Dist.Ct.App.2000) ("Because proof of reliance is unnecessary, the plaintiffs' inability to show reliance in every case cannot be used to justify a finding that individual issues will predominate over the class claims."); *Latman v. Costa Cruise Lines, N.V.,* 758 So.2d 699 (Fla.Dist.Ct.App.2000) (finding class in FDUTPA action should be certified); *see also Fitzpatrick v. General Mills, Inc.,* 263 F.R.D. 687, 697 (S.D.Fla.2010) ("[B]ecause each plaintiff seeking damages under the FDUTPA is only required to prove that [defendant's] conduct would deceive an objective reasonable consumer, and not that the deceptive act motivated their particular purchase decision ... the putative class members would rely on the same pool of evidence to prove their claims.")).FN6

> FN6. Subsequent to his opinion in *Davis,* Judge Padavano authored an opinion in *Egwuatu v. South Lubes, Inc.,* 976 So.2d 50 (Fla.Dist.Ct.App.2008), wherein he affirmed a trial court's decision not to certify a class in a FDUTPA action. Defendant cites this case to support its argument that the Court should not certify the Proposed Class. In *Egwuatu,* however, the defendant submitted evidence that it affirmatively advised some proposed class members about the truth behind the alleged misrepresentation. *See id.* at 53. As a result, the trial court judge concluded that it would be necessary to make a number of individual inquiries to determine which potential class members had received actual knowledge from defendant regarding the truth behind the alleged misrepresentation. *Id.* Reviewing the trial judge's decision for abuse of discretion, Judge Padavano affirmed.
>
> Here, Defendant has offered no evidence that it made any attempt to explain to consumers that Enfamil ® LIPIL ® is nutritionally equivalent to other, less expensive infant formulas. Moreover, in *Egwuatu,* Judge Padavano explicitly reaffirmed his holding in *Davis. See id.* at 52 n. 1. Indeed. *Egwuatu* merely stands for the proposition that even though a FDUTPA case may be certified as a class action, a plaintiff must still satisfy all of the prerequisites for class certification. *See id.* at 53.

In other words, individual class members may establish a FDUTPA claim by submitting identical proof that Defendant's representations about Enfamil ® LIPIL ® would deceive an objective reasonable consumer. Likewise, individual class members should be able to submit identical proof to establish that Defendant's representations about Enfamil ® LIPIL ® are not true. Stated differently, the predominate issues in this case are (1) whether it is true that Enfamil ® LIPIL ® contains something that other brands of infant formula do not; and (2) whether Defendant's representations about Enfamil ® LIPIL ® would deceive an objective reasonable consumer. Because plaintiffs may prove the essential issues in this case with common proof, the Court concludes that class-wide issues predominate over individualized issues.

b. Superiority

*8 In many respects, the predominance analysis has a tremendous impact on the superiority analysis because when common issues predominate over individual issues, a class action lawsuit becomes more desirable as a vehicle for adjudicating the plaintiffs' claims. *See Klay,* 382 F.3d at 1269. Here, the proposed class members' claims are predicated on a common set of facts and concern the same allegedly

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

deceptive practice. Thus, it will be unnecessary to hear testimony from every individual class member. In addition, because this controversy involves many common questions of law and fact, a class action will be superior to other available methods for fairly and efficiently adjudicating this controversy. Accordingly, this Court is convinced, based on the record before it, that Plaintiffs have met their burden to show that the requirements of Rule 23(b)(3) have been met.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Class Certification [DE 51] is **GRANTED.**

**DONE AND ORDERED.**

S.D.Fla.,2010.
Nelson v. Mean Johnson Nutrition Co.
--- F.R.D. ----, 2010 WL 4282106 (S.D.Fla.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.