BARRIOS KINGSDORF & CASTEIX, L.L.P.

## MEMORANDUM

### FACTS

- James Ira Smith (hereinafter referred to as "Smith"), was a client of James Minge & Associates (hereinafter referred to as "Minge") for purposes of a Vioxx related injury in 2004.

- Minge referred Smith's case to Barrios, Kingsdorf & Casteix (hereinafter referred to as "Barrios") in November 2004.

- Smith, Minge and Barrios signed the Attorneys' Contingent Fee and Cost Employment Agreement (hereinafter referred to as "Agreement"), attached hereto as Exhibit A.

- The Agreement provided for Smith's payment of attorneys fees in the sum of 40% of all sums recovered by the effort of the attorneys to Barrios[1] and Minge and of all reasonable costs in the event of a recovery.

- Barrios', Minge's, and Barrios' staff's expended numerous hours of work on Smith's case, including but not limited to the collection and analysis of medical records, review of written statements in client questionnaires and notes faxed by Smith, telephone conversations with Smith, including those with Minge, Mrs. Smith, and an attorney relative of Smith, lengthy in person meetings with Smith and members of his family, letters to the IRS seeking tax returns, consultation with a Certified Public Accountant for an EIF claim, letters to and from Smith, getting Smith's complaint reinstated in the MDL,

---

[1] Barrios had a joint venture arrangement with 4 other firms in the representation of Vioxx clients. The other 4 firms are Neblett, Beard & Arsenault; Lundy & Davis; Aylstock, Witkin, Kreis & Overholtz, and Andrus & Boudreaux (hereinafter also referred to as "Barrios").

1



**EXHIBIT
B**

BARRIOS KINGSDORF & CASTEIX, L.L.P.

obtaining Smith's consent to enter the Vioxx Resolution Program (hereinafter "VRP"), registration and enrollment of Smith in the VRP, correction of the error of Smith not being recognized as being entitled to an Interim Payment, submission of all paperwork necessary for claimants in the VRP, compilation of and presentation of an electronic claim form, electronic bookmarking and submission of the claim's supporting relevant medical records, and a successful appeal of the initial award.

- As a result of the above described efforts, Smith was awarded 229.32 points, attached hereto as Exhibit B. The Interim Payment was $175,659.12.

- The 40% Initial Payment was wired on December 23, 2010 for Smith's claim, and a disbursement statement was prepared and forwarded to Smith for his approval.

- Due to Smith's refusal to execute the disbursement statement prepared on his Interim Payment and various irreconcilable differences, Barrios released Smith as a client on January 6, 2009 and gave him a copy of his file.

- Barrios' staff was concerned about Smith's reaction when Barrios announced she would no longer represent him, so Barrios had an unarmed security officer from One Shell Square in her reception area when Smith and his wife arrived. Smith and his wife left Barrios' office with the file, a letter advising of the withdrawal of representation, and exited without any incident.

- Barrios and Minge represented Smith for more than 4 years, from November 2004 until January 2009.

2

BARRIOS KINGSDORF & CASTEIX, L.L.P.

- Barrios' and Minge's work produced an award to Smith (adjusted for the final point value) of $427,684.09.

- Following Judge Fallon's Order restricting attorneys' fees to 32%, the attorneys' fees Smith owes Barrios and Minge is $136,858.90.

- Under the Agreement Smith was responsible for all reasonable costs incurred by Barrios and Minge in his representation.   Those costs total $4,029.62; cost print outs are attached en globo as Exhibit C.

**LAW**

- Louisiana law allows for a lawyer to enter into a written contingency fee contract with a client.  *See* La. R.S. 37:218A.

- Pursuant to this statute, "an attorney may acquire an interest in a lawsuit of a client," and that "that interest operates as a privilege on funds eventually obtained in the lawsuit." *Hall v. St. Paul Fire and Marine Ins. Co.,* 868 So.2d 910, 912.

- "The obvious intent of R.S. 37:218 is to prevent a client's discharging an attorney and thereby depriving the attorney of his earned fee." *Hall,* 868 So.2d at 912, *citing Scott v. Kemper Ins. Co.,* 377 So.2d 66 (La. 1979).

## VIOXX LITIGATION
### ATTORNEYS' CONTINGENT FEE & COST EMPLOYMENT AGREEMENT

James Minge & Associates and

I, the client, hereby retain and employ Barrios, Kingsdorf & Casteix, LLP of New Orleans, Louisiana (hereinafter referred to as "Attorneys") to represent me in my claim against the manufacturers for damages arising out of use of a certain drug commonly known as Vioxx. Client specifically authorizes, directs and instructs Attorneys not to bring any claims (including but not limited to medical negligence claims) against any physicians, health care providers, doctors, or hospitals. Client acknowledges that certain statutes of limitations and/or prescriptive periods may apply to claims which are not being brought and after those periods expire, those claims are forever barred. Attorneys are not taking any position on the merits or availability of the claims which are not being brought and are not discouraging Client from pursuing these. In medical negligence cases, statutes of limitations have certain exceptions. Client should seek other legal counsel immediately regarding this issue if Client intends to pursue these type claims.

### 1. CONTINGENT FEE

For such professional services I agree to pay attorneys' fees and the costs incurred. The attorneys fees shall be 40% out of the total amount recovered, whether by settlement or suit, which fee is calculated on the total gross recovery before reduction of costs, court imposed fees or assessments, and expenditures.

In the event that a court-awarded fee is collected which exceeds the percentages as set forth above, the court-awarded fee shall apply in lieu of the above amounts.

This employment is upon a contingent fee basis and unless a recovery is made there will be no obligation by the client to pay attorneys' fees to the firm.

### 2. COSTS

This employment is on a contingent basis and unless a recovery is made there will be no obligation to pay costs incurred by the firm. If a recovery is made, then I will be responsible for all costs and expenses incurred in the handling of client's case. However, my responsibility for paying costs shall not exceed the gross recovery amount. I will be responsible for paying the attorneys' fees noted above in addition to costs.

Costs shall include, but not be limited to, cash and noncash expenditures for filing fees; subpoenas; depositions; witness fees; in-house and outside investigation services; expert witness fees; medical records and reports; Lexis/Nexis/Westlaw and other computer research and on-line service costs; photographs; in-house and outside photocopies; facsimiles; long-distance telephone calls; postage and federal express, UPS and other overnight service charges; mediation fees; travel costs; out-of-town hotel, food and transportation charges; in-house and outside trial exhibits; in-house and outside multi-media services; outside legal fees and costs for estate, guardianship, bankruptcy and probate matters; and all other costs necessary for performance of legal services. Costs shall also include, if applicable, any "MDL Assessment" imposed by any Multi-District Litigation ("MDL") Court or withheld from any settlement or favorable judgment by any defendant.



EXHIBIT

A

the total of all clients' minimum authorized settlement values and attempts to settle the group for at least the minimum authorized by the clients. Finally, under some circumstances, the defendants offer to pay a certain sum to all the firm clients regardless of the circumstances of the individual cases. Thus, each client receives the same amount of money even though the clients may have different levels of injuries or liability. Just because a client's case settles with a group of others will not take away the client's right to approve or not approve his/her individual settlement. Moreover, if one client in the group does not wish to settle that does not affect another client's ability to settle or not to settle his/her case. Each client will always have the right to approve or not to approve his/her individual settlement.

5.    **RECOVERY**

I expressly grant power to the Attorneys to endorse and deposit into the attorneys' Trust Account any checks in the client's name, and authorize the Attorneys to deduct fees, costs, and expenses, and to pay all hospital and medical bills from my share of the recovery. Any unpaid bills for medical care shall remain my obligations.

6.    **ESTATE, GUARDIANSHIP AND/OR PROBATE**

The employment for an estate, guardianship, or probate matter is based on hourly work and is not covered under the contingent fee agreement. In the event a recovery is made, charges include attorney and paralegal fees plus probate costs. However, there remains no obligation to reimburse fees or costs incurred on my behalf if the firm makes no recovery.

7.    **LEGAL CONSTRUCTION**

In case any provision, or any portion of any provision, contained in this Agreement shall for any reason be held to be invalid, illegal and/or unenforceable in any respect, such invalidity, illegality and/or unenforceability shall not affect the validity and/or enforceability of any other provision or portion thereof, and this Agreement shall be construed as if such invalid, illegal and/or unenforceable provision or portion thereof was never contained herein.

Signed this 19 day of November, 2004.

APPROVED BY:

By: _____
        Client                                                    11-19-04
                                                                    Date
James I Smith
Print Name

By: _____
        BARRIOS, KINGSDORF & CASTEIX, LLP                          12/1/04
                                                                    Date
By: _____
        JAMES MINGE                                                11-19-04
F:\V\xxx\ClientPkg\FinalRA.wpd                                      Date

*Confidential Information*

| V2046B | POST-APPEAL NOTICE OF POINTS AWARD<br>Date of Notice: 11/19/08 |
|---|---|

## I. IDENTIFYING INFORMATION

| Claimant Name | Smith, James L | | Social Security Number | |
|---|---|---|---|---|
| Law Firm | Neblett, Beard & Arsenault | | | |
| VCN Number | 1014244 | **Enrollment Status** | IP Enrolled | **First Confirmed Vioxx Use** | 5/21/01 |

## II. TOTAL POINTS CALCULATION

### A. BASIS POINTS

| | | | |
|---|---|---|---|
| 1. | Qualifying Event/Level | MI Injury Level : 5 | Date of Event: 12/10/01 |
| 2. | Age at Event | 40 to 44 years | |
| 3. | Overall Duration of Vioxx Use | 6-18M | |
| 4. | **Basis Points** | | **265.42** |

### B. LABEL AND CONSISTENCY ADJUSTMENTS

| | | | | |
|---|---|---|---|---|
| 5. | Label | | +15 % | |
| 6. | Consistency | | +20 % | |
| 7. | **Adjustment Total %** | | +35 % | |
| 8. | **Subtotal Points** | (Row 4 x Row 7) | | **358.32** |

### C. RISK FACTOR ADJUSTMENTS

| | Risk Factors | Finding | Adjustment | Cumulative Points |
|---|---|---|---|---|
| 9. | High Cholesterol | Controlled | - 20 % | 286.65 |
| 10. | Hypertension | Controlled | - 20 % | 229.32 |
| 11. | **TOTAL POINTS** | | | **229.32** |

### III. POINTS AWARD DETERMINATION

The Claims Administrator has issued this Post-Appeal Notice of Points Award  in response to your appeal under Section 3.2.4 of the Settlement Agreement. After receiving notice of your appeal, the Claims Administrator conducted a *de novo* review of your claim and assessed the point value above. This determination supersedes that which you previously appealed.

### IV. ACCEPTANCE OF POINTS AWARD

If you wish to accept this Post-Appeal Notice of Points Award, select the button "Accept Points Award." Acceptance of this determination will end your appeal and place this claim in line for payment (see Section VIII of this Notice), assuming that this claimant is IP Enrolled and that the claim is not selected for audit pursuant to Article 10. Check the claimant's Enrollment Status in Section I of this Notice to determine whether the claimant is IP Enrolled or Enrolled.

EXHIBIT

B

*Confidential Information*

## V.  APPEAL

This determination takes the place of the one you previously appealed. If this determination provides all the relief requested in your appeal, your entire claim will be deemed accepted and placed in line for payment, subject to the provisions of Article 10. If it grants some but not all of the relief you requested, any issue on which there is agreement will be considered resolved and deemed accepted. For any issue on which there is disagreement you will receive an explanation of the Claims Administrator's decision which you can view on the secure web-portal.

After reviewing the Claims Administrator's explanation as to each issue you appealed, you may choose whether to appeal any or all issues directly to the Special Master or to withdraw any or all issues. If you withdraw all issues on appeal, your claim will be placed in line for payment, subject to the provisions of Article 10. If you choose to submit your appeal to the Special Master, you do not need to provide additional explanation for each issue you appealed. Your original comments on appeal and the Claims Administrator's explanation will be forwarded to the Special Master for consideration, along with your entire claims submission.

If this determination assesses for the first time a risk factor or applies an adjustment that is different from your original Points Award determination, you may appeal that aspect of this Post-Appeal Notice of Points Award. To appeal a new finding by the Claims Administrator, select the "Appeal" button and submit comments on the secure web-portal as you did when noting your original appeal. The process will then repeat itself as to the new issue. Any appeal to the Special Master on the original Notice of Points Award will be held until you decide whether to appeal the new issue to avoid piecemeal submissions to the Special Master.

Upon receipt of an appeal, the Special Master will conduct a *de novo* review of your claim, which may decrease its value if additional factors are uncovered. Any determination of the Special Master shall be final, binding and not subject to further appeal. The Special Master will notify the Claims Administrator of its determination, and the Claims Administrator will promptly following receipt of such notice notify counsel (or the claimant directly if he/she is unrepresented), Merck and the NPC of the Special Master's determination.

## VI.  FIXED PAYMENT

Pursuant to Section 3.3 of the Settlement Agreement, if the Total Points in this Notice are less than ten points, the Claimant may elect a Fixed Payment of $5,000 by selecting the "Accept $5,000 Fixed Payment" button on the secure web portal. If the Claimant fails to elect a Fixed Payment within 30 days, the claim shall be reviewed *de novo* by the Special Master, in accordance with Section 3.4 of the Settlement Agreement.

## VII.  GOVERNMENTAL LIEN RESOLUTION

A previous communication entitled *Claimant Education Materials on Government Medical Liens/Obligations* explained that the Lien Resolution Administrator ("LRA") is responsible for establishing a formal process for satisfying and discharging any statutory obligations to Medicare, Medicaid and/or other specific government healthcare programs for Enrolling Claimants who have been or who currently are entitled to such state or federal benefits. **Under the terms of the Vioxx Settlement Program, any such Vioxx-related statutory obligations must be resolved in order for any settlement monies to be released.** However, the LRA has established procedures and protocols to allow disbursement of Interim Payments while the obligations (if any) described below are satisfied.

The LRA is resolving federal Medicare (Part A & B) and Medicaid's interest (if any) in the settlement awards of claimants determined to be entitled to federal Medicare and/or state Medicaid based upon the Social Security Numbers (SSNs) provided to the Claims Administrator. The LRA, Medicare and Medicaid assume no responsibility for the correctness of the SSNs provided to the Claims Administrator by claimants or their counsel. If the claimant's SSN in Section I of the Notice of Points Award is incorrect, the claimant or their counsel must contact the Claims Administrator immediately, as it could affect the correctness of the claimant's governmental lien obligations listed below. In addition to federal Medicare and state Medicaid, the LRA is resolving any reimbursement obligations associated with Other Government Programs, such as Veterans Affairs (VA), TRICARE, Department of Defense (DOD), or Indian Health Services (IHS) which were reported to the LRA by the claimant or claimant's counsel. The previous communication entitled *Claimant Education Materials on Government Medical Liens/Obligations* instructed claimants and claimants' counsel on how to report liens asserted by Other Government Programs.

*Confidential Information*

| | A. OBLIGATIONS TO GOVERNMENT HEALTHCARE PROGRAMS | |
|---|---|---|
| 1. | State Medicaid Participant | No |
| 2. | Medicaid Holdback Percentage | 0% |
| 3. | Federal Medicare Participant | Yes |
| 4. | Global Medicare Resolution Category and Amount | **Resolution Category 2**<br>**$116.62** |
| 5. | Other Government Program Obligations | No |
| 6. | Resolution of Other Government Program Obligations (not to exceed the relevant Program's actual injury-related care expenditures on behalf of Claimant) | 0% |

### B. GOVERNMENTAL LIEN/ CLAIM RESOLUTION PROCEDURES

**Identification of Participants in Government Healthcare Programs.**

If "No" is displayed in any of Rows 1, 3 or 5 of Section VII.A above, then you were determined by the LRA not to be a participant in that particular government program and you, therefore, do not have any liens to satisfy with respect to that healthcare program/agency. If "Yes" is displayed in any of Rows 1, 3 or 5 of Section VII.A above, the LRA determined that you are entitled to federal Medicare (Part A & B) and/or state Medicaid benefits and/or Other Government Programs (VA, TRICARE, DOD or IHS) and that you will have to satisfy reimbursement obligations or liens associated with injury-related care benefits that you received from those respective healthcare programs. Additional information about the procedures used by the LRA to identify and resolve these obligations are included within the separate, posted document titled *Information About Resolving Governmental Medical Liens for the Vioxx Settlement Program.* **It is imperative that all claimants and counsel review the information above in Section VII. A to confirm that it is correct. Claimants and/or their counsel should contact the office of the Lien Resolution Administrator at (877)-774-1130 immediately if the information in Section VII.A** *Obligations to Government Healthcare Programs* **is thought to be inaccurate.**

All counsel should also download the document entitled *Information About Resolving Governmental Medical Liens for the Vioxx Settlement Program,* read it carefully, and provide it to their clients/claimants. This document is available on the "Lien" section of your secure web portal.

### VIII. PAYMENTS AND WITHOLDINGS

Claimants who are IP Enrolled and are not Special Marker QPC Claimants will receive a 40% Interim Payment after the Points Award is accepted or the appeal is resolved, and no deductions will be made from the Interim Payment. A Special Marker QPC who elects the $5,000 Fixed Payment will receive the entire amount in one payment, less any applicable governmental or private liens. The $5,000 Fixed Payment will not be subject to a Common Benefit Fee deduction. The LRA (explained in Section VII) is not responsible for resolving private liens, which remain the responsibility of the Claimant and Primary Counsel. On August 27, 2008, the United States District Court for the Eastern District of Louisiana, which supervises the implementation of the Settlement Program, entered in Order (Document # 15722) that limited the attorneys' fees payable out of payments in the Settlement Program, including any Interim Payments, to 32%.

## Vioxx Litigation
## Costs for James I. Smith

| | |
|---|---|
| Barrios, Kingsdorf & Casteix, L.L.P. | $3,846.55 |
| Neblett, Beard & Arsenault/ Vioxx Litigation Group | $67.97 |
| James Minge & Associates | $115.10 |
| | $4,029.62 |



EXHIBIT
C

BARRIOS, KINGSDORF & CASTEIX, L.L.P.
701 POYDRAS STREET
SUITE 3650
NEW ORLEANS LA  70139
(504) 524-3300

July 20, 2010

Vioxx Products Lititgation
BKC Clients

| Invoice #: | 5952 |
| Billed through: | June 30, 2010 |
| Account #: | 3508 00013 |

RE:   Vioxx Client - Smith, James

TOTAL FEES FOR THIS MATTER                                         $0.00

DISBURSEMENTS

| Date | Description | Amount |
|---|---|---|
| 01/31/08 | Summary of Postage | 0.41 |
| 01/31/08 | Summary Copying Charges | 0.50 |
| 02/21/08 | FEDEX; Invoice # 2-549-50601; Delivery to James Smith on 2/18/08 | 18.24 |
| 02/21/08 | FEDEX; Invoice # 2-549-50601; Delivery to James Smith on 2/19/08 | 23.68 |
| 02/28/08 | FEDEX; Invoice # 256223362; Overnight Courier Service - Delivery to Michael Bollinger from Neblett,Beard & Arsenault on Smith on 2/21/2008. | 13.34 |
| 02/29/08 | Summary of Postage | 0.41 |
| 02/29/08 | Summary Copying Charges | 20.50 |
| 02/29/08 | Summary Color Copying Charges | 0.50 |
| 03/31/08 | Summary of Postage | 6.07 |
| 03/31/08 | Summary Copying Charges | 9.75 |
| 04/03/08 | Nell McCallum & Associates, Inc.; Invoice # 71468; Records charge for James Smith from City Rexall Drugs (Pharmacy) in Picayune, Mississippi on 3/10/2008 | 46.70 |
| 04/03/08 | Nell McCallum & Associates, Inc.; Invoice # 71467; Records charge for James Smith from Dr. Walter E. Gipson, IV (Billing) in Picayune, Mississippi on 3/10/2008 | 63.70 |
| 04/04/08 | Nell McCallum & Associates, Inc.; Invoice # 71583; Medical Records from Louisiana Medical Center & Heart Hospital (Billing) on 3-10-2008 | 75.37 |
| 04/07/08 | Nell McCallum & Associates, Inc.; Invoice # 71680; Records from Dr.John R. Breaux/Cardio-Thoracic Surgery, PA (Billing) on 3-10-2008 | 48.70 |
| 04/07/08 | Nell McCallum & Associates, Inc.; Invoice # 71682; Records from Dr. John R. Breaux/Cardio-Thoracic Surgery, PA (Medical) on 3-10-2008 | 100.71 |

3508      00013                                        Invoice # 5952      Page      2

| Date | Description | Amount |
|------|-------------|-------:|
| 04/09/08 | Nell McCallum & Associates, Inc.; Invoice # 71818; Records from Louisiana Medical Center & heart Hospital (Medical) on 3-10-2008 | 114.00 |
| 04/15/08 | Nell McCallum & Associates, Inc.; Invoice # 72185; Records from Northshore Regional Medical Center ( Medical) on 03/10/2008. | 378.79 |
| 04/15/08 | Nell McCallum & Associates, Inc.; Invoice # 72187; Records from Northshore Regional Medical Center ( Billing ) on 03/10/2008. | 88.06 |
| 04/18/08 | Nell McCallum & Associates, Inc.; Invoice # 72492; Records from Dr. Ahmed Haidar (Billing) on 3/10/2008. | 14.50 |
| 04/18/08 | Nell McCallum & Associates, Inc.; Invoice # 72493; Records from Dr. Ahmed Haidar (Medical) on 3/10/2008. | 14.50 |
| 04/22/08 | Nell McCallum & Associates, Inc.; Invoice # 72612; Records from Slidell Memorial Hospital (Medical) on 3/10/2008. | 286.47 |
| 04/30/08 | Summary of Postage | 5.13 |
| 04/30/08 | Summary Copying Charges | 205.25 |
| 05/07/08 | Nell McCallum & Associates, Inc.; Invoice # 74023; records Dr. Walter E. Gipson, IV (Medical) on 3/10/2008. | 14.50 |
| 05/08/08 | Nell McCallum & Associates, Inc.; Invoice # 74080; recos from Dr. Glenn A. Butt (Medical) on 3/10/2008. | 155.45 |
| 05/21/08 | Nell McCallum & Associates, Inc.; Invoice # 75081;records for Crosby memorial hospital (billing) on 3/10/2008. | 56.50 |
| 05/29/08 | FEDEX; Invoice # 2-729-11440; Overnight Courier Service - Delivery to James Smith on 5/22/2008 | 16.26 |
| 05/31/08 | Summary of Postage | 2.10 |
| 05/31/08 | Summary Copying Charges | 11.00 |
| 06/17/08 | Nell McCallum & Associates, Inc.; Invoice # 77041; Misc. Expenses - Medical Records - Slidell Memorial Hospital (Billing). | 129.48 |
| 06/18/08 | Nell McCallum & Associates, Inc.; Invoice # 77144; Misc. Expenses - Medical Records - Dr. Glenn A. Butt (Billing). | 61.50 |
| 06/27/08 | Nell McCallum & Associates, Inc.; Invoice # 77907; Records from St. Tammany Parish Hospital (Medical) on 6/18/2008. | 16.92 |
| 06/30/08 | Summary of Postage | 2.52 |
| 06/30/08 | Summary Copying Charges | 13.75 |
| 07/07/08 | Nell McCallum & Associates, Inc.; Invoice # 78279; Records from Dr. Anthony Morales, Jr. (Medical) on 3/10/2008. | 103.52 |
| 07/09/08 | FEDEX; Invoice # 2-778-94253; Overnight Courier Service - Delivery to James Smith on 6/18/08. | 17.14 |
| 07/09/08 | FEDEX; Invoice # 2-791-48950; Overnight Courier | 16.65 |

3508        00013                                    Invoice # 5952        Page      3

|  |  |  |
|---|---|---|
|  | Service - Delivery to James Smith on 6/30/08. |  |
| 07/10/08 | FEDEX; Invoice # 2-803-09916; Overnight Courier Service - Delivery to Claims Administrator at Brown Greer on 7/8/08. | 21.68 |
| 07/15/08 | Nell McCallum & Associates, Inc.; Invoice # 78983; Records from University of Mississippi Medical Center (Billling) on 3/10/2008. | 102.36 |
| 07/15/08 | Nell McCallum & Associates, Inc.; Invoice # 78982; Records from University of Mississippi Medical Center (Medical) on 3/10/2008 | 285.13 |
| 07/17/08 | Nell McCallum & Associates, Inc.; Invoice # 79321; Records from Dr. Fidel F. Sendra/Cardiovascular & Thoracic Surgery Associates (Medical) on 6/18/2008. | 106.96 |
| 07/31/08 | Summary Copying Charges | 8.25 |
| 07/31/08 | Nell McCallum & Associates, Inc.; Invoice # 79953; Records from Crosby Memorial Hospital (Medical) on 3/10/2008. | 49.51 |
| 08/25/08 | Nell McCallum & Associates, Inc.; Invoice # 80901; Records from Dr. Anthony Morales, Jr. (Medical) on 3/10/2008. | 121.50 |
| 08/25/08 | Nell McCallum & Associates, Inc.; Invoice # 80902; Records from Rite-Aid Pharmacy (Pharmacy) on 3/10/2008. | 121.62 |
| 11/30/08 | Summary of Postage | 2.19 |
| 11/30/08 | Summary Copying Charges | 3.75 |
| 12/31/08 | Summary of Postage | 1.18 |
| 12/31/08 | Summary Copying Charges | 3.50 |
| 01/31/09 | Summary of Postage | 22.44 |
| 01/31/09 | Summary Copying Charges | 438.50 |
| 01/31/09 | Summary Color Copying Charges | 136.50 |
| 02/02/09 | Reed Elsevier, Inc.; Invoice # 2009010062866601; Court Costs - Cost for Online File & Serve:  Motion to Withdraw, Exhibit A, Exhibit B and Proposed Order. | 57.00 |
| 03/31/09 | Summary of Postage | 4.77 |
| 03/31/09 | Summary Copying Charges | 8.75 |
| 04/03/09 | Pacer Service Center | 2.88 |
| 07/06/09 | Pacer Service Center. | 8.24 |
| 09/30/09 | Summary of Postage | 13.38 |
| 09/30/09 | Summary Copying Charges | 33.75 |
| 10/01/09 | Reed Elsevier, Inc.; Invoice # 2009090062866601; Documents pertaining to Motion to Set Mediation on 9-9-2009 and half of the paper Invoice fee. | 22.00 |
| 10/05/09 | Pacer Service Center | 17.20 |
| 01/31/10 | Summary of Postage | 0.44 |
| 01/31/10 | Summary Copying Charges | 58.00 |

3508        00013                                      Invoice # 5952        Page        4

| Date | Description | Amount |
|---|---|---|
| 01/31/10 | Summary Color Copying Charges | 1.00 |
| 02/23/10 | Reed Elsevier, Inc.; Invoice # 2010010052866601; Summary of Legal Research - Filing/Service Charges - Motion to Set Hearing on Atty. Fees and Exhibits on 1/28/10 - LA USDC - Eastern District. | 19.50 |
| 04/13/10 | Pacer Service Center; Invoice # BK0177-Q12010;  1st Qtr. 2010.; Summary of Legal Research. | 8.16 |
| 06/30/10 | Summary of Postage | 12.84 |
| 06/30/10 | Summary Copying Charges | 1.00 |
|  | TOTAL DISBURSEMENTS FOR THIS MATTER | $3,846.55 |

BILLING SUMMARY:

| | |
|---|---|
| TOTAL DISBURSEMENTS | $3,846.55 |
| TOTAL NEW CHARGES FOR THIS INVOICE | $3,846.55 |
| PLUS NET BALANCE FORWARD | $0.00 |
| **TOTAL BALANCE DUE NOW** | **$3,846.55** |

**Neblett, Beard & Arsenault**
Cost Summary Report with Details
(104.05940) Smith, James I

07/20/2010
12:37:24PM

For Transactions Dated Through:07/20/2010

Page 1 of 1

**104.05940 - Smith, James I**

**120000    CLIENT EXPENSE-120000**

| Date | Reference | Payee | Comment | Amount |
|------|-----------|-------|---------|--------|
| 02/12/2009 | | | CHK#: 134538 TO: FEDEX, FOR: SMITH-1/8 SHIPMENT | $8.07 |
| | | | CLIENT EXPENSE-120000 | $8.07 |

**120020    PHONE POSTAGE COPY/ FAX-120020**

| Date | Reference | Payee | Comment | Amount |
|------|-----------|-------|---------|--------|
| 09/18/2006 | | | POSTAGE | 0.87 |
| 01/09/2008 | | | Copy Charges | 32.00 |
| 01/14/2008 | | | POSTAGE | 4.60 |
| | | | PHONE POSTAGE COPY/ FAX-120020 | $37.47 |
| | | | Total: | $45.54 |

**Payables**

| Invoice Date | Invoice # | Payee | Comment | Amount |
|--------------|-----------|-------|---------|--------|
| | | | Total Payables: | |
| | | | GRAND TOTAL: | $45.54 |

2:12 PM
07/20/10
Accrual Basis

# Vioxx Litigation Group
## Transaction Detail by Account
### All Transactions

| Type | Date | Num | Name | Memo | Clr | Split | Amount | Balance |
|------|------|-----|------|------|-----|-------|--------|---------|
| **Specific Client Costs** | | | | | | | | |
| **Medical Records** | | | | | | | | |
| Check | 05/10/2006 | 1406 | Smith, James I. | Discharge Su... | | The Vioxx Litig... | 22.43 | 22.43 |
| **Total Medical Records** | | | | | | | 22.43 | 22.43 |
| **Total Specific Client Costs** | | | | | | | 22.43 | 22.43 |
| **TOTAL** | | | | | | | 22.43 | 22.43 |

Client Name - Case Ledger
Run Date - 07/20/2010
Case ID - 04-204
Report Filter -

STYLE
Smith, James
vs.

STATUS
PENDING

| CASEID 04-204 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Invoice Date/No. | Check Date/No. | Description | Payee | | Cost Category | Amount | Bank Account | |
| 12/21/2005 0512-384 | 04/20/2006 17142 | Medical records | UNIVHOSP | | 502006 | 115.10 | CCB&T - CLIENT COST ACCOUN | |

| Trust Funds: | 0.00 | Advances: | 0.00 | CourtCost: | 0.00 |
|---|---|---|---|---|---|
| Expense: | 115.10 | UnReimbursed: | 115.10 | Assignments: | 0.00 |
| Fees Earned: | 0.00 | Miscellaneous Income: | 0.00 | Cost Limit: | |

Page Number   1