UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION  L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | |
| FILER: Robert E. Arceneaux/Pascal Calogero, Jr. | * | December 8, 2010 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### MEDMORANDUM IN SUPPORT OF ERIC WEINBERG, CHRIS PLACITELLA AND COHEN, PLACITELLA AND ROTH'S SUPPLEMENTAL  JOINT MOTION FOR ACCESS TO CERTAIN DOCUMENTS AND THINGS

MAY IT PLEASE THE COURT:

On Nov. 29, 2010 this Court granted movers the right of access to certain items that they contended were necessary for them to evaluate any recommendation that might be made as to the common benefit fees that would be awarded to them. The PSC opposed this motion on the ground that it was premature until a recommendation was made. On December 2, 2010, the Fee Allocation Committee made its recommendation, and pursuant to Pre-Trial Order 6D, movers were notified by Brown and Greer of the amount that the fee allocation committee recommended that they be awarded. However, no papers were filed with this Court placing the recommendation on the public record, nor have movers been able to gather any information as to how the recommendation was determined by the Fee Allocation Committee.

In granting movers' prior request for access to information, this Court cited *In re High Sulfur Content Gasoline Products Liabiltiy Litigation,* 517 F.3d 220 (5th Cir. 2008). In that case, the PSC made a fee allocation recommendation to the district court in an *ex parte* meeting, and the court accepted the recommendation and made it the order of the court without a hearing, and

also sealed all records of the recommendation and how it was calculated. In finding this conduct

to be an abuse of the district court's discretion, the Fifth Circuit stated the following:

> [A]a district court has the discretion to seal a record, "but we think that this discretion should be used with care and exercised only where the justifications for doing so appear considerably stronger than those" presented by the Fee Committee. *In re Equal Employment Opportunity Commission*, 709 F.2d 392, 402 n. 7 (5th Cir.1983). The only justification posited for sealing the record here is to discourage internecine fee sharing disputes among the plaintiffs' lawyers. This is a weak and unconvincing reason for dispensing with the public nature of our judicial proceedings. Sealing the record protects no legitimate privacy interest that would overcome the public's right to be informed.
>
> On a broad public level, fee disputes, like other litigation with millions at stake, ought to be litigated openly. Attorneys' fees, after all, are not state secrets that will jeopardize national security if they are re-leased to the public. As the Third Circuit has noted, "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record sup-porting the court's decision sealed from public view." *United States v. Cianfrani,* 573 F.2d 835, 851 (3d Cir.1978). From the perspective of class welfare, publicizing the process leading to attorneys' fee allocation may discourage favoritism and unsavory dealings among attorneys even as it enables the court better to conduct oversight of the fees. If the attorneys are inclined to squabble over the generous fee award, they are well positioned to comment-publicly-on each other's relative contribution to the litigation.

517 F.3d at 231.

> Appellees also contend that the court's post-allocation procedures for hearing or reconsidering objections to fee awards provided Appellants an adequate opportunity to be heard. They did not. Because the court sealed the fee allocation list and placed a gag order on plaintiffs' attorneys, **Appellants could not compare their awards to those of other attorneys. They were not** furnished with the hours and rates that other attorneys submitted or **informed of the Fee Committee's process, yet such information was essential to enable them to challenge how the Fee Committee valued their work.** *See In re Vitamins Antitrust Litig.*, 398 F.Supp.2d 209, 234 (D.D.C.2005) (lead counsel responsible for fee allocation must "apply a universally fair standard of allocation to all participants, including itself"). **One cannot even compare apples to oranges without knowing what the oranges are.**

The district court was similarly handicapped in its review of Appellants' objections to their fee awards. The order approving the Fee Committee's allocation limited the court's review of a fee award to its specific circumstances and the relationship between the award and the attorney's contributions to the common benefit of the

class. The court should not have so limited itself and should have been able to compare the contributions of all plaintiffs' attorneys in order to determine if the fee allocation was equitable. After all, **"[a]llocation means proportion; how does the share [one] counsel is taking compare to the shares others are getting?"** *In re Vitamins Antitrust Litig.*, 398 F.Supp.2d at 234. Because Appellants were deprived of information necessary to contest their fee awards, and the court's review did not allow comparison between Appellants' and other attorneys' awards, the procedures for reviewing Appellant's objections were inherently flawed.

517 F.3d at 232 (emphasis added).

Now that the Fee Allocation Committee has made a recommendation, but it is effectively sealed from public inspection, movers have asked for the following additional items:

(1)    a copy of the recommendation of the Fee Allocation Committee that shows the amount of the recommendation made by it for each claimant for common benefit fees;

(2)    any supplemental paperwork such as work papers, minutes of meetings, spreadsheets, memoranda, or other documents which reflect or pertain to how the recommendation was made, calculated, and approved

(3)    a written explanation of any formula or point system that was used in the calculation of the recommendation, and the right to depose a member of the Fee Allocation Committee with regard to this system and how it was derived, agreed upon and applies;

These requests are supported by *In re High Sulfur Gasoline Products Liability Litigation, supra*, in that the information requested is necessary for movers to be able to compare apples to apples, and determine whether the recommended allocation, relatively speaking, is fair and acceptable.

Movers have also asked for an order requiring all claimants for common benefit fees to disclose, by a date determined by the Court, any and all fee sharing agreements, settlements, or side agreements between themselves and any other persons that impact upon the ultimate amount of common benefit fees each claimant may receive despite the amount awarded by this Court. Side agreements that impact upon actual allocation, and expose the true amount each claimant will receive, should be public, so that apples can be compared to apples. *See* Manual Complex Lit. § 14.223 (4th ed.) ("In class actions, all agreements or understandings made in connection with a

settlement must be described in writing and may have to be disclosed."). In *In re Agent Orange Product Liability Litigation,* 818 F.2d 216 (2nd Cir), *cert. denied*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987), the Court invalidated a fee sharing arrangement that allowed PSC members to be "investors" in the litigation by allocating fees based upon the amount of their investment in the case. In so doing, it noted the following:

> There is authority for a court, under certain circumstances, to award a lump sum fee to class counsel in an equitable fund action under the lodestar approach and then to permit counsel to divide this lodestar-based fee among themselves under the terms of a private fee sharing agreement. *E.g., Ruskay v. Jensen*, No. 71-3169, slip op. at 10-13 (S.D.N.Y. Sept. 18, 1981); *In re Magic Marker Securities Litigation,* [1979 Transfer Binder] *Fed.Sec.L.Rep.* (CCH) ¶ 97,116, at 96,195 (E.D.Pa. Sept. 16, 1979); *Valente v. Pepsico, Inc.*, [1979 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,921, at 95,863 (D.Del. June 4, 1979), appeal dismissed, 614 F.2d 772 (3d Cir.1980); *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 395, 400 (D.D.C.1978); *Del Noce v. Delyar Corp.,* 457 F.Supp. 1051, 1055 (S.D.N.Y.1978). **We reject this authority, however, to the extent it allows counsel to divide the award among themselves in any manner they deem satisfactory under a private fee sharing agreement. Such a division overlooks the district court's** role as protector of class interests under Fed.R.Civ.P. 23(e) and its **role of assuring reasonableness in the awarding of fees in equitable fund cases**. *See Kamens v. Horizon Corp.*, [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,007, at 91,218 & n. 4 (S.D.N.Y. May 26, 1981); *Steiner v. BOC Financial Corp.*, [1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,656, at 98,490 (S.D.N.Y. Oct. 10, 1980); *cf. Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 884 (2d Cir.1983) ("if the court finds good reason to do so, it may reject an agreement as to attorneys' fees just as it may reject an agreement as to the substantive claims"), *cert. denied*, 466 U.S. 944, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984). **In addition, this approach overlooks the class attorneys' "duty ... to be sure that the court, in passing on [the] fee application, has all the facts" as well as their "fiduciary duty to the ... class not to overreach."** *Lewis v. Teleprompter Corp.*, 88 F.R.D. 11, 18 (S.D.N.Y.1980).

818 F.2f at 223 (emphasis added).

Likewise, here, disclosure of side agreements, settlements, and fee sharing arrangements are necessary for this Court to be able to assess the reasonableness of the allocation of fees. *See e.g., In Re Factor XIII Concentrate Litigation*, MDL-986 (N.D. Ill), where Judge John Grady entered a similar order. *See also In re FPI/Agretech Securities Litigation*, 105 F.3d 469 (9th Cir. 1997) (Court has power and duty to invalidate fee sharing agreements that result in attorney

receiving fees not in proportion to services rendered).  *But see Bowling v. Pfizer, Inc*., 102 F.3d

777 (6th Cir. 1996), where fee sharing agreements were only ordered to be produced for *in

camera* inspection.  Presumably, the Court will have access to all of the requested documents, but

if objections are in order, and if those objections are to be meaningful or serve to assist the Court's

analysis, movers must have the information and formulae that informed the Fee Allocation

committee's recommendations. This should include any side agreements that impact upon the

ultimate amount each claimant will actually receive.


Respectfully submitted,

Robert E. Arceneaux

_____
Robert E. Arceneaux, La Bar No. 01199
ROBERT E. ARCENEAUX LLC
47 Beverly Garden Drive
Metairie, LA 70001
(504) 833-7533 office
(504) 833-7612 fax
rea7001@cox.net

Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com


Attorneys for Eric H. Weinberg, Chris Placitella, and Cohen, Placitella and Roth

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Joint Motion for Access has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail, and by upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this 7th day of December, 2010.

*Robert E Arceneaux*

_____