

Jul 9 2009 5:17PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: VIOXX                              *
     Products Liability Litigation          *
                                           *
This Document Relates to:                 *      MDL No. 1657
                                           *
STATE OF LOUISIANA, ex rel JAMES D.       *
CALDWELL, JR. Attorney General,           *      SECTION L
               Plaintiff,              *
                                           *      JUDGE FALLON
     versus                               *
                                           *      MAG. JUDGE KNOWLES
MERCK & CO., INC.,                        *
             Defendant                 *
                                           *
     **CASE NO. 05-3700**                   *
* * * * * * * * * * * * * * * * * *

## LOUISIANA ATTORNEY GENERAL'S MEMORANDUM OF LAW IN OPPOSITION TO MERCK'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

-1-

M0DEF46122

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PERTINENT ALLEGATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.    LDHH HAS THE AUTHORITY TO REFUSE TO PAY FOR VIOXX. . . . . . . . . . . . . . . . . . 11

II.   THE ATTORNEY GENERAL HAS ALLEGED A VIABLE CAUSE OF ACTION REGARDLESS
      OF WHETHER LDHH COULD REFUSE TO PAY FOR VIOXX PRESCRIPTIONS. . . . . . . . . . . . 15

      A.    RESTITUTION UNDER LA.-R.S. 51:1408 DOES NOT REQUIRE
            RELIANCE ON THE PART OF THE PURCHASER. . . . . . . . . . . . . . . . . . . . . . . . . . 16

      B.    LOUISIANA'S REDHIBITION CAUSE OF ACTION DOES NOT REQUIRE
            RELIANCE ON THE PART OF THE PURCHASER. . . . . . . . . . . . . . . . . . . . . . . . . . 19

      C.    THE ATTORNEY GENERAL HAS ALLEGED ACTIONABLE INJURY
            ARISING FROM THE OVERPRICING OF VIOXX. . . . . . . . . . . . . . . . . . . . . . . . . . 20

III.  CLAIMS ON BEHALF OF THE LDHH ARE ACTIONABLE UNDER LUTPA. . . . . . . . . . . . . . . 20

      A.    THE LOUISIANA ATTORNEY GENERAL IS EXPRESSLY EMPOWERED
            TO BRING ACTIONS ON BEHALF OF THE STATE FOR RESTITUTION. . . . . . . . . . . . . . 21

      B.    LDHH'S PAYMENTS FOR VIOXX ARE "CONSUMER TRANSACTIONS"
            AS THAT TERM IS DEFINED UNDER LUTPA. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      C.    CASES CITED BY MERCK DO NOT SUPPORT ITS ASSERTION THAT
            THE ATTORNEY GENERAL CANNOT BRING RESTITUTION CLAIMS ON
            BEHALF OF LDHH UNDER 51:1408. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      D.    THE STATE STANDS IN THE SHOES OF MEDICAID BENEFICIARIES. . . . . . . . . . . . . . 25

IV.   LPLA DOES NOT PRECLUDE RESTITUTION UNDER LA.-R.S. 51:1408. . . . . . . . . . . . . . 25

V.    THE STATE IS A "BUYER" FOR PURPOSES OF REDHIBITION CLAIM. . . . . . . . . . . . . . . 27

VI.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

M00EF46123

TABLE OF AUTHORITIES

**FEDERAL CASES**

*Central Healthcare Services, Inc. v. Eterna Petersburg, Inc.*,
  No. Civ. A 04-580, 2004 WL 1823036 (E.D. La. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*,
  975 F.2d 1192 (5th Cir. 1192). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Desiano v. Warner-Lambert Co.*,
  326 F.3d 339 (2nd Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Dorsey v. Northern Life Ins. Co.*,
  No. Civ. A. 04-0342, 2005 WL 2036738 (E.D. La. 2005). . . . . . . . . . . . . . . . . . . . . . . . 24

*Edmonds v. Levine*,
  417 F.Supp.2d 1323, 1238 (S.D. Fla. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15

*In re Lupron*,
  295 F.Supp.2d 148, 175 (D. Mass. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Rezulin Prods. Liab. Litig.*,
  392 F.Supp.2d 597 (S.D.N.Y. 2005) ("Rezulin I"). . . . . . . . . . . . . . . . . . . . . . . . 20, 28, 29

*In re Rezulin Prods. Liab. Litig.*,
  524 F.Supp.2d 436 (S.D.N.Y. 2007) ("Rezulin II). . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*In re Zyprexa Prods. Liab. Litig.*,
  493 F.Supp.2d 491 (E.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Orthopedic & Sports Injury Clinic v. Wang Labs. Inc*,
  922 F.2d 220 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Pharmaceutical Research and Mfrs. of America v. Meadows*,
  304 F.3d 1197, 1202 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Surface Preparation & Coating Enters., Inc. v. Martin Marietta Manned Space Sys.*,
  No. 91-4401, 1992 WL 193478 (E.D. La. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

M00EF46124

## STATE CASES

*Aucoin v. Southern Quality Homes, LLC*,
    2007-1014 (La. 2/26/08), 984 So.2d 685. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Mire v. EatelCorp, Inc.*,
    02-1705, pp. 5-6 (La.App. 1 Cir. 5/9/03), 849 So.2d 608, 613-14. . . . . . . . . . . . . . . . . 19

*State ex. rel. Guste v. General Motors Corp.*,
    354 So.2d 770 (La.App. 4th Cir.1978), *aff'd and remanded*
    370 So.2d 477 (La.1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 25, 26

*State ex rel. Guste v. Orkin Exterminating Co., Inc.*,
    528 So.2d 198, 204 (La. App. 4th Cir. 1988), *writ denied* 533 So.2d 18 (La. 1988). . . . . 17

*State ex rel. Ieyoub v. Classic Soft Trim, Inc.*,
    95-804 (La.App. 5 Cir. 10/20/95),
    663 So.2d 835, *writ denied*, 95-2604 (La. 1/26/96), 666 So.2d 669. . . . . . . . . . . . . . . . 21

M00EF46125

**STATUTES AND RULES**

42 U.S.C.A. § 1396r-8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

42 U.S.C.A. §1396r-8(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C.A. §1396r-8(d)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

42 U.S.C.A. §1396r-8(d)(1)(B)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C.A. §1396r-8(d)(4)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13, 15

42 U.S.C.A. §1396r-8(d)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

La.-R.S. 9:2800.52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

La.-R.S. 9:2800.53(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

La.-R.S. 46:153.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

La.-R.S. 51:1401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

La.-R.S. 51:1402(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

La. Rev. Stat. Ann. § 51:1404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

La. Rev. Stat. Ann. § 51:1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 21

La. Rev. Stat. Ann. § 51:1408 . . . . . . . . . . . . . . . . . . . . . 10, 16, 17, 18, 21, 22, 24, 25, 26

La. Rev. Stat. Ann. § 51:1409 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 26

LSA-C.C. art. 2439 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

LSA-C.C. art. 2520 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

LSA-R.S. 46:446 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 30

M00EF46126

## INTRODUCTION

The Louisiana Attorney General has brought this action under LSA-51:1407 and 51:1408, which expressly authorize the Attorney General to bring actions to redress deceptive trade practices such as those used by Merck to turn Vioxx, a drug no more effective than aspirin but with undisclosed life threatening side effects, into a blockbuster premium priced drug. The Attorney General seeks to vindicate the rights of the Louisiana Department of Health and Hospitals (LDHH) and Louisiana consumers, who spent millions upon millions of dollars on a drug which, had Merck revealed what it knew about its deadly side effects, would never have been purchased in such quantities, and certainly not a such a premium price. Merck suggests that even taking all the allegations of the Complaint regarding Merck's unconscionable fraudulent scheme to push a deadly drug on the consuming public as true, Louisiana law would not allow the AG to bring this action. Fortunately for the people of Louisiana, Merck is wrong.

Merck's Rule 12 motion depends on two erroneous premises. First, that Louisiana is precluded by law from refusing to pay for a drug subject to a rebate agreement with the Secretary of Health & Human Services. And second, that in order to prevail under the causes of action asserted herein, the Louisiana Attorney General must prove direct reliance on the part of LDHH. The failure of *either* premise is fatal to Merck's Rule 12 Motion. Merck is wrong on both counts.

## PERTINENT ALLEGATIONS:

This Court is by now well familiar with the factual background of this litigation. However, certain specific factual allegations pertinent to Merck's Rule 12 Motion bear noting. The Attorney General has alleged that both Louisiana consumers and LDHH suffered economic injury as a result of Merck's unfair and deceptive trade practices in the marketing of Vioxx. The AG has alleged that

-6-

M00EF46127

by misrepresenting the attributes and risks of Vioxx to the consuming public, LDHH and the medical community as a whole, Merck was able to sell Vioxx at a premium price over other NSAIDS. Additionally, through this fraud perpetrated on consumers and the medical community alike, Merck was able to sustain blockbuster sales of the drug at this premium price. As a result of this fraudulent marketing, Louisiana consumers and the state of Louisiana through LDHH suffered considerable economic injury in the form of payments for prescriptions of Vioxx at a premium price.

Allegations setting forth the conduct which form the basis for this claim, which this Court must accept as true for purposes of Merck's Rule 12 motion, include:

38.   Even without a label that allowed Merck to legitimately claim superior safety, Merck and its representatives and agents misrepresented the safety profile of Vioxx to consumers, the medical community, healthcare providers, and third party payors. (December 16, 1999 Warning Letter from FDA to Merck, concerning misrepresentation of safety information for Vioxx.)  Merck promoted, marketed, sold, and distributed Vioxx as a much safer and more effective pain reliever than other NSAIDs, such as aspirin, naproxen, and ibuprofen.

110.   In the face of mounting evidence that Vioxx was associated with an increased risk of serious cardiovascular adverse events, Merck fought with the FDA to keep a warning about this data out of the drug's label.  The company's sales forecasts show plainly why it took this action.  Merck predicted that including a description of cardiovascular risks in the Warning section of the label, as opposed to Precaution section, would cost the company $1 billion per year in sales.

121.   The reason for Merck's refusal to add the FDA's proposed warning is simple: warning about the risks would have cost the company hundreds of millions in sales.  Merck carefully studied the effect a warning would have had on sales of Vioxx, going as far as creating sophisticated forecasts to determine the damage in dollars.  In September 2000, six months after learning the results of VIGOR, and a year and a half before any change was made to the label to reflect this data, Merck executives had determined that if the company was unable to neutralize safety concerns about Vioxx, it would lose $437 million in sales, in 2001 alone.  A year later, these same executives determined that the addition of a warning, as opposed to a precaution, would cost the company $1 billion in sales annually.

M0DEF46128

170. As a result of Merck's claims, Plaintiff purchased and/or paid for Vioxx even though, at $72 for a monthly supply (in 1999, increasing to $128 for a monthly supply by February, 2004), Vioxx was much more expensive than other NSAIDs, which sold for $6.67 or less for the same month's supply.

171. To justify the disparity of Vioxx's pricing as compared to other NSAIDs and to ensure that physicians would prescribe and that third party payors would purchase and pay for the drug, Merck misrepresented the safety and efficacy of Vioxx and omitted, concealed, and suppressed the risks, dangers, and disadvantages of the drug. Consequently, Vioxx captured a large market share of anti-inflammatory drugs prescribed for and used by patients. In 2000 alone, sales of Vioxx exceeded $2 billion, which represented 23% of the total NSAIDs market, despite the significantly higher cost of Vioxx as compared to other pain relievers in the same family of drugs.

172. Merck's deceptive and misleading marketing campaign resulted in inflated payments by consumers and third party payors, including Plaintiff for, in whole or in part, the costs of Vioxx. Millions of third party payors including Plaintiff, have already paid for, and/or purchased and consumed Vioxx at prices based on the proposed wholesale price, which was about one hundred times the cost of a generic aspirin. These third party payors paid more than they would have or should have because Vioxx was promoted and advertised as a premium drug with reduced side effects for the purpose of deceiving consumers and third party payors about Vioxx's adverse cardiovascular and cerebrovascular effects.

183. Had the citizens of Louisiana known of such redhibitory defects, they would not have purchased Vioxx, nor would Plaintiffs have approved and paid for such purchases.

Based on the foregoing allegations, the Louisiana Attorney General, both on behalf of Louisiana citizens in a *parens patriae* capacity and on behalf of the Louisiana Department of Health & Hospitals, brought an action for injunctive relief and restitution of moneys paid for Vioxx as a result of Merck's unlawful marketing of the drug. The specific allegations setting forth those claims are as follows:

185. Under the Louisiana laws of Redhibition, the Defendant is liable to Plaintiffs for a return of the purchase price of Vioxx paid for by Plaintiffs and the citizens of Louisiana, including interest, all expenses occasioned by the sale, all damages sustained by Plaintiffs, as well as costs, penalties, and reasonable attorneys' fees.

M00EF46129

191. As Merck voluntarily withdrew Vioxx from the U.S. market, Merck could at any time voluntarily return Vioxx to the U.S. market, which would lead to additional LUTPA violations and would subject the State of Louisiana and its citizens to additional financial losses and damages. Upon information and belief, Merck has already made efforts to return Vioxx to the U.S. market. Petitioner, the Louisiana Attorney General, is specifically authorized under LUTPA to seek to enjoin (temporarily and/or permanently) all such unlawful acts pursuant to La. Rev. Stat. Ann. § 51:1407.

192. As a direct and proximate result of the Defendant's wrongful conduct in violation of LUTPA, Plaintiffs and citizens of Louisiana have sustained financial losses in amounts as will be established at the trial of this matter, including paying for Vioxx that they would not have otherwise paid and economic losses incurred by paying a premium price for Vioxx, as opposed to other viable, less expensive, pharmaceutical treatments. Plaintiffs are entitled to recover from the Defendant all such losses.

193. Pursuant to LUTPA, Plaintiffs are entitled to a permanent injunction against the Defendant to prevent them from returning Vioxx to the Louisiana market (La. Rev. Stat. Ann. § 51:1407) as well as financial restitution and such other ancillary monetary damages sustained by them (La. Rev. Stat. Ann. § 51:1408), all of which will be established at the trial of this matter. Furthermore, Plaintiffs, citizens of Louisiana, the State of Louisiana and/or DHH, which, due to the Defendant's unlawful conduct in violation of LUTPA, spent millions of dollars to purchase Vioxx for persons covered under the Louisiana Medicaid program, are entitled to all remedies afforded under La. Rev. Stat. Ann. §51:1409, including actual damages, reasonable attorney's fees, and costs. Finally, Plaintiffs seek any and all other and further remedies to which they are entitled under LUTPA.

212. The Defendant has been enriched from the selling and manufacturing of a defective product, and Plaintiffs have been correspondingly impoverished by purchasing or paying for the defective product and/or paying an unjust premium price for the product as opposed to other viable, less expensive, pharmaceutical treatments.

The foregoing allegations set forth the claims and theories of recovery under which the Louisiana Attorney General has brought this action, both on behalf of Louisiana citizens who purchased and consumed Vioxx and on behalf of the LDHH, which paid for prescriptions of Vioxx. It is against these allegations, and not Merck's mis-characterizations, generalizations, and selective recitations of Plaintiffs' claims that this Court must weigh Merck's Rule 12 Motion. These

M00EF46130

allegations set forth viable causes of action under the Louisiana Unfair Trade Practices Act "LUTPA" (La.-R.S. 51:1401, et seq.), the Louisiana law of Redhibition, or alternatively, the Louisiana law of "Unjust Enrichment."

## ARGUMENT

The lynchpin of Merck's entire motion to dismiss is the assertion that the state of Louisiana cannot demonstrate causation, because purportedly LDHH was not allowed to refuse to pay for prescriptions of Vioxx, a drug subject to a rebate agreement with the Secretary of Health and Human Services. At the outset, it should be noted that this causation argument has no bearing whatsoever on several of the claims brought by the Attorney General, including claims for injunctive relief and restitution brought on behalf of Louisiana consumers pursuant to the Louisiana Unfair Trade Practices Act, La.-R.S. 51:1407, 1408, which those provisions expressly authorize the Attorney General to pursue. With respect to those claims, brought on behalf of Louisiana consumers, whether the LDHH had authority to refuse to pay for prescriptions is absolutely immaterial.

In addition to the claims brought on behalf of consumers, as to which the LDHH's ability to refuse payment has no bearing whatsoever, the Attorney General has brought claims on behalf of the LDHH. Merck's argument regarding LDHH's ability to refuse payment is of no avail with respect to these claims either. LDHH has suffered an actionable injury in the form of payments for Vioxx prescriptions which would not have been written but for Merck's fraud, or which would have cost considerably less but for Merck's fraud. While, contrary to Merck's assertion, LDHH certainly can show that it both could have and would have refused to pay for those prescriptions had it been aware of the falsity of Merck's representations, whether LDHH can do so is not determinative of the causation question. LDHH has alleged both that it would have refused to pay for prescriptions of

-10-

M00EF46131

Vioxx had the information been available, *and* that Merck's misrepresentations caused prescriptions to be written for Louisiana consumers for which LDHH had to bear the cost, regardless of whether LDHH could have or would have refused payment.  Either claim, that LDHH would have refused to reimburse prescriptions but for Merck's misrepresentations *or* that Merck's fraudulent marketing campaign induced doctors to write prescriptions for which LDHH bore the cost, is actionable under Louisiana law.

I.      **LDHH** HAS THE AUTHORITY TO REFUSE TO PAY FOR **VIOXX.**

Merck's lynchpin assertion, that LDHH could not have refused payment for Vioxx even if it had been made aware of Merck's fraudulent misrepresentations about Vioxx, is simply wrong. The federal statute cited by Merck expressly authorizes LDHH to "exclude or restrict" payments for prescriptions of drugs which are excluded from the state's formulary.  42 U.S.C.A. § 1396r-8(d)(1)(B)(iv).  The statute empowers the state to exclude from its formulary any drug which, per its labeling, does not have a significant advantage over other drugs included in the formulary.  42 U.S.C.A. §1396r-8(d)(4)(C). The Attorney General has expressly alleged that the labeling of Vioxx did not demonstrate any significant advantage of Vioxx over other NSAIDs. (Complaint, ¶38). Hence, pursuant to the very federal statutes cited by Merck, LDHH had the authority to exclude Vioxx from its formulary.

Section (d)(4)(C) of the Medicaid statute cited by Merck provides that states can exclude covered drugs from their formularies under circumstances alleged in the complaint.  Section (d)(4)(C) provides:

> A covered outpatient drug may be excluded with respect to the treatment of a specific disease or condition for an identified population (if any) only if, based on the drug's labeling... the excluded

M0DEF46132

> drug does not have a significant, clinically meaningful therapeutic advantage in terms of safety, effectiveness, or clinical outcome of such treatment for such population over other drugs included in the formulary and there is a written explanation (available to the public) of the basis for the exclusion.
>
> (42 U.S.C.A. 1396r-8(d)(4)( C) (portion pertaining to drugs not covered by Food, Drug and Cosmetics Act omitted).

Hence, 42 U.S.C.A. 1396r-8 specifically authorizes a state to exclude covered drugs from its formulary under the circumstances alleged in the Complaint.  The Complaint alleged not only that the Vioxx label showed no advantage in terms of safety or efficacy over other NSAIDs, but that had Merck properly labeled Vioxx, it would have had to disclose a considerable disadvantage of Vioxx as compared to other NSAIDs.

Courts interpreting section (d)(4)( C) have construed it to mean that a state can lawfully refuse payment for a Medicaid eligible drug by excluding the drug from its formulary, as long as the decision is based on issues of clinical safety and effectiveness.  *Pharmaceutical Research and Mfrs. of America v. Meadows*, 304 F.3d 1197, 1202 (11th Cir. 2002); *Edmonds v. Levine*, 417 F.Supp.2d 1323, 1238 (S.D. Fla. 2006).  Here, the Louisiana Attorney General has alleged that LDHH would have refused to pay for Vioxx had Merck not misrepresented the safety and efficacy of the drug.  Accepting this allegation as true, which this Court must for purposes of this Rule 12 Motion, LDHH can assert that it would have excluded Vioxx from its formulary, and thus could have legally refused payment for Vioxx, had it known the truth about Merck's misrepresentations.

Ignoring this key provision of §1396r-8, Merck cites to a lone district court decision which held that the purported inability of LDHH to exclude coverage for drugs subject to a rebate agreement was fatal to LDHH's fraudulent marketing claims.  See *In re Rezulin Prods. Liab. Litig.*,

M00EF46133

524 F.Supp.2d 436 (S.D.N.Y. 2007) ("Rezulin II).  Merck's reliance on *Rezulin II* is misplaced. Indeed, the *Rezulin II* court held that in the situation presented here, where a drug was on the market after June 13, 2001, the state of Louisiana was *not* barred from refusing payment for drugs subject to a rebate agreement.

While the *Rezulin II* court noted the general rule that §1396r-8 requires states to cover drugs subject to a rebate agreement, that decision turned on the fact that La.-R.S. 46:153.3, as it was written when Rezulin was on the market, precluded the LDHH from adopting a closed formulary. Since Louisiana law at the time barred LDHH from adopting a restrictive formulary, the *Rezulin II* court held that the exception established 42 U.S.C.A. §1396(d)(4)(C) did not apply.  *Id.*, 524 F.Supp. at 440.  However, long before Vioxx was taken off the market, the Louisiana legislature had repealed its ban on the closed formulary.

As the *Rezulin II* court noted, effective June 13, 2001, La.-R.S.46:153.3 was amended to remove the ban on a restrictive formulary.  The *Rezulin II* court found that since Rezulin had been removed from the market in March of 2001, prior to the Louisiana legislature's repeal of its ban on a closed formulary, Louisiana could not avail itself of the exception provided in §1396r-8(d)(4)(C). Nevertheless, the *Rezulin II* court acknowledged that had Rezulin still been on the market after June 13, 2001, the defendant's causation/reliance argument would have failed.   *Id.*, 524 F.Supp.2d at 440, n. 17.   In the instant case, Vioxx remained on the market until September 30, 2004. (Complaint, ¶1).  Thus, even under the *Rezulin II* holding cited by Merck, LDHH would have viable claims with respect to any purchases of Vioxx from June 13, 2001 through the drug's removal from the market on September 30, 2004.

-13-

M00EF46134

The only other authority Merck offers for its suggestion that LDHH was banned by federal law from excluding Vioxx from its formulary is a Florida district court case regarding the use of prior authorizations under 42 U.S.C.A. § 1396r-8(d)(5). *Edmonds v. Levine*, 417 F.Supp. 2d 1323 (S.D.Fla. 2006). As with the *Rezulin II* decision, that holding actually supports Plaintiff's assertion that LDHH could have excluded Vioxx from its formulary. Merck cites the *Edmonds* holding for the proposition that a state may not use its prior authorization procedure to deny payments for a covered drug. However, Merck utterly ignores the *Edmonds* court's observation that a state *can* choose to exclude a drug from its formulary when its formulary committee decides to exclude the drug based on clinical factors. The *Edmonds* court held, "the state may not exclude that drug from coverage *except through its formulary committee based solely on clinical factors.*" *Edmond*, 417 F.Supp. 2d at 330 (emphasis added).

In *Edmonds*, the state of Florida had not excluded the drug at issue, Neurontin, from its formulary. The state of Florida did not have a formulary committee and had not adopted a restricted formulary. The *Edmonds* court held that since Florida had not followed the procedure for excluding drugs from a formulary, it could not avail itself of the exception to the rule applicable to covered drugs excluded from the state's formulary. Since the state of Florida did not have a formulary, and could not avail itself of the exception of section (d)(4), the state argued that it could refuse coverage through its prior authorization process. The *Edmond* court held that the state could not use a prior authorization process to exclude coverage, holding that the only permissible way to exclude a drug was for a formulary committee to exclude it from the state's formulary based on clinical considerations.

-14-

M00EF46135

While the *Edmonds* court held that a state could not use prior authorizations to deny reimbursements for a covered drug, the *Edmonds* court also held that a state *could* deny coverage for a drug by removing it from its formulary.  The *Edmonds* court held:

> The Medicaid Act permits a state (through its formulary committee) to remove a Medicaid-eligible drug from the formulary, with the result that the drug will no longer be covered for reimbursement, if the drug that "does not have a significant, clinically meaningful therapeutic advantage in terms of safety, effectiveness, or clinical outcome" over other drugs included in the formulary. § 1396r-8(d)(4)(C). The committee's decision to exclude a drug from the formulary is generally limited to issues of clinical safety and effectiveness. *Id.*; *see Meadows*, 304 F.3d at 1202. The committee must provide a written explanation, available to the public, of the basis for excluding a drug from the formulary. § 1396r-8(d)(4)(C). As the *Meadows* court explained, **the exclusion of a drug from a state formulary "has the effect of actually denying coverage of, or payment for, certain Medicaid-eligible drugs."** 304 F.3d at 1207.

> *Id.*, 417 F.Supp.2d at 1328 (emphasis added).

The lynchpin of Merck's motion to dismiss is a fallacy.  LDHH had the authority to refuse to pay for Vioxx by removing it from its formulary.  The statute cited by Merck specifically empowers the state to refuse payment by excluding Vioxx from its formulary.  42 U.S.C.A. § 1396r-8(d)(4)(C).  If there is any doubt on that score, this Court need look no further than the cases cited by Merck, both of which hold that when a state, like Louisiana after June 13, 2001, has a closed formulary, that state's formulary committee can deny coverage for Medicaid-eligible drugs by excluding them from the formulary.

## II.    THE ATTORNEY GENERAL HAS ALLEGED A VIABLE CAUSE OF ACTION REGARDLESS OF WHETHER LDHH COULD REFUSE TO PAY FOR VIOXX PRESCRIPTIONS.

Even assuming that 42 U.S.C.A. §1396r-8(d) did not authorize LDHH to remove Vioxx from its formulary, the Attorney General has still alleged a viable injury, both on the part of Louisiana

-15-

M00EF46136

consumers on whose behalf the Attorney General is authorized by statute to represent, and on the part of LDHH.  The Complaint specifically alleges that Louisiana consumers and LDHH alike were harmed by paying an unjustified premium price for Vioxx and by paying for prescriptions that would not have been written but for Merck's fraudulent marketing scheme.  Hence the state of Louisiana, through LDHH, and the citizens of Louisiana, as aggrieved consumers, suffered actionable economic injury as a result of Merck's fraudulent conduct, regardless of whether LDHH itself could have refused to pay for Vioxx.

Merck's suggestion that the Attorney General has no cause of action because the LDHH could not refuse to pay for Vioxx, assumes that in order to assert the claims brought in this action, the Attorney General must prove direct reliance on the part of LDHH.  None of the Louisiana laws under which the state has asserted claims require direct reliance by the plaintiffs as an element. Rather, the Louisiana laws at issue require only that the fraudulent acts caused the plaintiff's harm, and in the case of restitution under La.-R.S. 51:1408, even that causation requirement is relaxed.

In this case, plaintiffs have alleged, *inter alia*, that Merck's fraudulent marketing of Vioxx caused doctors to prescribe Vioxx, when they would not have done so had Merck not misrepresented the drug's attributes and deadly risk profile.  This allegation is sufficient to establish causation, even if the state were unable to demonstrate that it directly relied on any misrepresentation by Merck or that it could have refused payment had it been aware of Merck's misrepresentations.

A.   RESTITUTION UNDER LA.-R.S. 51:1408 DOES NOT REQUIRE RELIANCE ON THE PART OF THE PURCHASER.

LUTPA does not have any reliance element, particularly with respect to claims for injunctive relief, civil penalties, and restitution, which the statute gives the state Attorney General exclusive authority to bring.  LUTPA authorizes the Attorney General to seek restitution on behalf of "any

M00EF46137

aggrieved person" whose property "*may* have been acquired by means of" a deceptive trade practice. La.-R.S. 51:1408. This broad restitution remedy, which gives courts flexibility to fashion equitable remedies to redress unfair trade practices, does not require the Attorney General to demonstrate reliance on the part of any aggrieved person. It does not even require the Attorney General to show causation for any injury. By it's very language, the restitution provision merely requires the Attorney General to demonstrate that victims' property "*may* have been acquired by means of a deceptive trade practice." *Id.*

Louisiana courts have recognized that La.R.S. 51:1408 authorizes the Attorney General to seek a broad remedy of restitution to provide redress to anyone who may have been affected by an unfair or deceptive trade practice. *State ex. rel. Guste v. General Motors Corp.*, 354 So.2d 770 (La.App. 4th Cir.1978), *aff'd and remanded* 370 So.2d 477 (La.1979); *State ex rel. Guste v. Orkin Exterminating Co., Inc.*, 528 So.2d 198, 204 (La. App. 4th Cir. 1988), *writ denied* 533 So.2d 18 (La. 1988). The court in *Orkin* held:

> Initially, we note that where injunctive actions are brought by the state, Louisiana's Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1408 allows the court to issue additional orders or render judgments against any party, as may be necessary to compensate any aggrieved person for any property, movable or immovable, corporeal or incorporeal, which may have been acquired from such person by means of any method act or practice declared unlawful by La.R.S. 51:1405...Under this section, restitution, as compensation to an aggrieved party, may be sought in deceptive trade practice cases. *State ex. rel. Guste v. General Motors Corp.*, 354 So.2d 770 (La.App. 4th Cir.1978), aff'd and remanded 370 So.2d 477 (La.1979).

> *Id.,* 528 So.2d at 204.

M00EF46138

The causation element of §1408's restitution provision is featherweight at most. The statute grants courts broad powers to "compensate *any* aggrieved person for any property... which *may* have been acquired by means of " any deceptive trade practice. This flexible language provides "broad powers of restitution, adapted to give relief when due, yet narrowly drawn so as to be equitable." *Id.* Noting that the restitution was broad and equitable in nature, the *Orkin* court affirmed a trial court's order requiring the defendant to reinstate all cancelled exterminating contracts, even though the Attorney General had made no showing that all of the clients whose contracts were cancelled had relied on the deceptive trade practice at issue. Rather than require any specific showing of reliance, the statute provides the court broad, equitable powers to compensate victims of deceptive trade practices such as those complained of herein.

Nowhere in this language is there any requirement of direct reliance on the part of the aggrieved party. The Court can award restitution if the Attorney General shows that the defendant acquired property through a deceptive trade practice. The complaint is replete with allegations that Merck fraudulently bolstered sales of Vioxx, causing the state to pay the unwarranted premium price for Vioxx prescriptions that otherwise would never have been written. These allegations more than satisfy any causation requirement under 1408's broad restitution remedy.

Indeed, under the express language of 1408, the Attorney General need not even show that the deceptive trade practice was the actual cause of the loss. Rather, the Attorney General need only show that property "may have been acquired" by means of a deceptive practice. As Louisiana courts have noted, the purpose of the restitution provision is to give courts the ability to fashion a broad yet equitable remedy to redress deceptive trade practices where proof of causation may be difficult.

-18-

M0DEF46139

B.   **LOUISIANA'S REDHIBITION CAUSE OF ACTION DOES NOT REQUIRE RELIANCE ON THE PART OF THE PURCHASER.**

Louisiana law of redhibition has no requirement of reliance.  Indeed, the cause of action for redhibition is triggered by features of the thing sold, not by any action on the part of the buyer.  To establish a cause of action in redhibition, a buyer need not allege that he relied on any misrepresentation or omission on the part of the seller, but need only show, a "defect" in the thing sold which "renders the thing useless, or its use so inconvenient *that it must be presumed that* a buyer would not have bought the thing had he known of the defect" or when the defect "without rendering the thing totally useless, it diminishes its usefulness or its value so *that it must be presumed that* a buyer would still have bought it but for a lesser price." LSA-C.C. art. 2520 (emphasis added).  The buyer need not show that he or she would not have bought the thing had he known of the defect, only that the defect was such that a reasonable buyer would not have bought the thing.  "The inquiry under a redhibition claim does not involve the buyer's subjective knowledge or reliance, but rather is an objective inquiry into the deficiency and whether it diminishes the product's value or renders it so inconvenient that the reasonable buyer would not have purchased it had he known of the deficiency." *Mire v. EatelCorp, Inc.*, 02-1705, pp. 5-6 (La.App. 1 Cir. 5/9/03), 849 So.2d 608, 613-14.

Under Louisiana's unique remedy of redhibition, plaintiffs can assert a claim in redhibition merely by showing that Vioxx had an unknown defect which would cause a reasonable person not purchase the item or to purchase the item at a lower price.  The plaintiff need not show that the plaintiff himself would not have purchased the item, much less that the plaintiff relied on any misrepresentation or omission on the part of the seller.

-19-

M00EF46140

### C. THE ATTORNEY GENERAL HAS ALLEGED ACTIONABLE INJURY ARISING FROM THE OVERPRICING OF VIOXX.

The Attorney General has alleged that LDHH and Louisiana consumers have suffered an injury in that they paid a fraudulently inflated price for Vioxx.  This allegation gives rise to a cause of action under both restitution under LUTPA and redhibition, regardless of whether consumers or LDHH relied directly on Merck's misrepresentations.  Merck argues that this sort of pricing injury is "too indirect" to support plaintiffs' claims. (Merck Brief, p. 13).  However, upon consideration of a fully developed factual record, the Eastern District of New York recently denied a drug manufacturer's motion for summary judgment on just this sort of pricing injury claim. *In re Zyprexa Prods. Liab. Litig.*, 493 F.Supp.2d 491 (E.D.N.Y. 2007).  Similarly, the court in *In re Lupron* rejected as "bordering on the frivolous" an argument that such injuries were too indirect.  *In re Lupron*, 295 F.Supp.2d 148, 175 (D. Mass. 2003).  In light of these holdings, plaintiffs should be afforded the opportunity to develop a factual record on this issue before their claims are dismissed as being "too indirect."

### III. CLAIMS ON BEHALF OF THE LDHH ARE ACTIONABLE UNDER LUTPA.

Merck contends that the Attorney General cannot assert claims on behalf of LDHH under LUTPA, because LDHH is not a "consumer" and LDHH's payments for Vioxx are not "consumer transactions."  This argument ignores the fact that LUTPA expressly empowers the Louisiana Attorney General to seek compensation for any property acquired by an unfair or deceptive trade practice.  Additionally, under the plain, broad language of LUTPA, the LDHH's payments for Vioxx are unquestionably "consumer transactions" within the ambit of LUTPA.

-20-

M00EF46141

A.    THE LOUISIANA ATTORNEY GENERAL IS EXPRESSLY EMPOWERED TO BRING ACTIONS ON BEHALF OF THE STATE FOR RESTITUTION.

Regardless of whether LDHH is a consumer or its payments for Vioxx are "consumer transactions", the Attorney General is expressly empowered under LSA-R.S. 51:1407 and 1408 to seek injunctive relief and restitution on behalf of the state against anyone who utilized unfair and deceptive trade practices. LSA-R.S. 51:1407; LSA-R.S. 51:1408; *State ex rel. Ieyoub v. Classic Soft Trim, Inc.*, 95-804 (La.App. 5 Cir. 10/20/95), 663 So.2d 835, *writ denied*, 95-2604 (La. 1/26/96), 666 So.2d 669. The *Classic Soft* court held:

> the legislature has enacted certain regulations concerning commerce in this state and has directly empowered the Attorney General to enforce those laws both criminally and civilly, and to seek redress against violators on behalf of both the state and private parties.

> *Id.*, 663 So.2d at 837.

Regardless of whether LDHH is a consumer, the Attorney General has been "directly empowered... to seek redress against violators on behalf of the state."

The Attorney General's powers to act under LUTPA are not confined to "consumer transactions" or actions on behalf of "consumers" as those terms are defined under LUTPA, but extend to all "consumer interests." LSA-R.S. 51:1404. "Consumer Interests" are broadly defined as "those acts, practices, or methods that *affect* the economic welfare of a consumer." LSA-R.S. 51:1404 (emphasis added). Consumer is broadly defined as "any person who uses, purchases or leases good or services." Undoubtedly, the marketing of Vioxx, including the marketing of Vioxx to LDHH, is a matter of "consumer interest", i.e., a matter that "affects" consumers, as to which the Attorney General has been expressly and broadly empowered to act.

M00EF46142

Additionally, the Attorney General is empowered to act with respect to "commercial and trade practices in the distribution, financing and furnishing of goods and services to or *for the use of consumers*." LSA-R.S. 51:1404 (emphasis added). Even assuming that the LDHH's payments for Vioxx are not "consumer transactions" as that term is defined under LUTPA, the Attorney General is nevertheless vested with broad powers to bring actions against Merck for those activities, because they concern "distribution, financing and furnishing of goods... for the use of consumers."

Included among the Attorney General's broad powers to act under LUTPA is the power to seek redress on behalf of "any aggrieved person." LSA-R.S. 51:1408. Tellingly, the legislature did not limit the persons on behalf of whom the Attorney General could seek redress, but rather broadly authorized the Attorney General to act on behalf of "any aggrieved person." No court has ever limited the Attorney General's authority to seek retribution to "consumers" or "business competitors" or "consumer transactions." Nevertheless citing 51:1408 as authority, Merck states "aggrieved persons" under 51:1408 "means consumers and business competitors." (Merck Brief, p. 11). Section 1408 says absolutely nothing of the sort, and no court has ever held that claims for restitution asserted by the Attorney General are so limited. The broad power to seek restitution is encompassed within the Attorney General's mandate to regulate all practices that affect consumers and is not subject to the limitations that Merck suggests.

### B. LDHH'S PAYMENTS FOR VIOXX ARE "CONSUMER TRANSACTIONS" AS THAT TERM IS DEFINED UNDER LUTPA.

Even assuming arguendo that LDHH's payments for "Vioxx" had to be a "consumer transaction" in order for the Attorney General to assert a restitution claim on its behalf under LSA-R.S. 51:1408, those transactions easily fall within the definition of "consumer transaction." In

-22-

M0DEF46143

contending that the transactions at issue are not "consumer transactions" Merck focuses exclusively on the fact that LDHH is not a natural person and did not purchase Vioxx for its own personal use. However, the definition is much broader than purchases by natural persons for personal consumption.

LUTPA defines "consumer transaction" as "any transaction *involving* trade or commerce to a natural person, the *subject* of which transaction is primarily intended for personal, family or household use." LSA-R.S. 51:1402(3) (emphasis added). Under this broad definition, LDHH's dealings with Merck unquestionably constitute "consumer transactions." LDHH's payments for Vioxx "involv[ed] commerce to natural persons [Medicaid recipients], the subject of which [Vioxx]... is primarily intended for personal... use." While LDHH is not a "natural person," for purposes of LUTPA it does not have to be. Rather, the transaction at issue need only *involve* commerce to natural persons. Merck's marketing of Vioxx, the purpose of which was to get Louisiana consumers, including Medicaid recipients, to use the consumer product Vioxx is most definitely a consumer transaction under the Act.

**C.    CASES CITED BY MERCK DO NOT SUPPORT ITS ASSERTION THAT THE ATTORNEY GENERAL CANNOT BRING RESTITUTION CLAIMS ON BEHALF OF LDHH UNDER 51:1408.**

In support of its assertion that the Attorney General cannot assert LUTPA claims on behalf of LDHH, Merck has cited to a handful of cases which deal with private rights of action under LSA-R.S. 51:1409. None of those cases even address, much less attempt to limit, the Louisiana Attorney General's broad powers of restitution under LUTPA §1408. Additionally, none of those cases involved consumer transactions as defined under LUTPA.

-23-

M00EF46144

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 975 F.2d 1192 (5ᵗʰ Cir. 1192) involved a claim by a farm implement franchise dealer against the manufacturer of farm implement equipment for wrongful termination of its franchise agreement.  The transaction at issue, a dispute over a franchise agreement, in no way involved a  consumer transaction, and hence was correctly found not to fall within the ambit of LUTPA §1409.  *Orthopedic & Sports Injury Clinic v. Wang Labs. Inc*, 922 F.2d 220 (5ᵗʰ Cir. 1991) involved claims by an orthopedic clinic arising out of the purchase of specialized business computer software, and hence the subject of the transaction was not "primarily intended for personal, family or household use."  The Fifth Circuit held that such a claim in no way involved a "consumer transaction" and rejected the LUTPA claims.

The other cases cited by Merck, all of which are unreported district court decisions, likewise involve transactions which had nothing whatsoever to do with sale of goods for personal, family or household use.  *Dorsey v. Northern Life Ins. Co.*, No. Civ. A. 04-0342, 2005 WL 2036738 (E.D. La. 2005) (dispute over insurance agency agreements between independent insurance agents insurance company); *Surface Preparation & Coating Enters., Inc. v. Martin Marietta Manned Space Sys.*, No. 91-4401, 1992 WL 193478 (E.D. La. 1992) (claim by contractor for money due on a project owned by Martin Marietta); *Central Healthcare Services, Inc. v. Eterna Petersburg, Inc.*, No. Civ. A 04-580, 2004 WL 1823036 (E.D. La. 2004) (dispute between hospital and shipping company over hospital bills for treatment of injured seaman).

In stark contrast to the easily distinguished cases upon which Merck relies, LDHH's payments for Vioxx unquestionably involve commerce to consumers of a drug, Vioxx, primarily intended for personal use.  Moreover, none of the cases cited by Merck involved claims for restitution brought by the Louisiana Attorney General pursuant to LSA-R.S. 51:1408.

-24-

M00EF46145

### D. THE STATE STANDS IN THE SHOES OF MEDICAID BENEFICIARIES.

Finally, even assuming that party on whose behalf the Attorney General is asserting a claim for restitution must be a natural person and a "consumer", the Attorney General can nevertheless assert the "consumer's" claim for restitution on behalf of LDHH, because by statute, LDHH is authorized to assert claims that Medicaid beneficiaries could assert against third parties for reimbursement of benefits paid. LSA-R.S. 46:446. Thus, LDHH stands in the shoes of the Medicaid beneficiaries, who are undoubtedly consumers engaged in consumer transactions.

## IV. THE LOUISIANA PRODUCTS LIABILITY ACT (LPLA) DOES NOT PRECLUDE RESTITUTION UNDER LA.-R.S. 51:1408.

Restitution under La.-R.S. 51:1408 is not a claim for damage as to which the LPLA's exclusivity provision would apply. The exclusivity provision of the LPLA provides that the LPLA provides the exclusive theories of liability "for manufacturers for *damage* caused by their products." La.-R.S. 9:2800.52 (emphasis added). Restitution under 51:1408 is not "damages." *State ex. rel. Guste v. General Motors*, 354 So.2d 770, 755 (La.App. 4th Cir.1978), *aff'd and remanded* 370 So.2d 477 (La.1979). The court in *Guste v. General Motors* held that restitution was not "damages," finding "damages... mean relief other than refund of the purchase price and the return to the status quo that constitute restitution." *Id.*

As the Louisiana Fourth Circuit held in *Guste*, the only case to consider the question of whether restitution constitutes "damages", restitution is *not* "damages." Rather, it is an equitable remedy asserted exclusively by the Louisiana Attorney General which, as is discussed *supra*, is awarded not as damages for harm caused by a product, but as redress for funds which "may have been acquired by means of" a deceptive trade practice.

-25-

M0DEF46146

While a handful of courts – all in cases involving claims of bodily injury caused by a defective product – have held that claims for "damages" under the private right of action afforded by LSA-R.S. 51:1409 are barred by the exclusivity provision of the LPLA, no court has held that LPLA bars an Attorney General action for restitution under §1408 of LUTPA.   Notably, the *Guste v. General Motors* court held that "actual damages" under §1409 were not "restitution" under LSA-R.S. 51:1408.  *Id.* at 755.

Moreover, the *Guste* court held that restitution under §1408 was the equivalent of restitution under redhibition.  *Id.*  The Louisiana Supreme Court has held that the restitution remedy under redhibition is not "damage" for purposes of the LPLA.  *Aucoin v. Southern Quality Homes, LLC*, 2007-1014 (La. 2/26/08), 984 So.2d 685.  The Louisiana Supreme Court held:

> The LPLA defines 'damage' by explicitly excluding amounts recoverable under redhibition for damage to the product and economic loss arising from a deficiency in or loss of use of the product. La. R.S. 9:2800.53(5). Thus, while the LPLA is the exclusive remedy against manufacturers for damages resulting from a defective product, a manufacturer can still be liable for damages in redhibition.
>
> *Id.*, 984 So.2d at 691 n. 8.

Since damages under redhibition are the equivalent of restitution under LSA-R.S. 51:1408, the LPLA's exclusivity provision does not act to bar actions for restitution by the Louisiana AG under §1408.

Additionally, the exclusivity provision of LPLA requires that the "damage" be "caused by a product."   The claim for restitution not only is not "damage" but it also is not "caused by a product."  Rather, the restitution remedy arises because funds were acquired by means of a deceptive trade practice.

-26-

M00EF46147

## V.   THE STATE IS A "BUYER" FOR PURPOSES OF REDHIBITION CLAIM.

Without citing a single Louisiana or Fifth Circuit authority, Merck asserts that the state of Louisiana does not have a cause of action in redhibition, because the state is not a "buyer" of Vioxx. Merck contends that because the state merely paid for the drug, but did not personally take possession of the drug, it cannot be considered a "buyer" entitled to redhibition.  Not only is this argument entirely without support in Louisiana statutory law or jurisprudence, but it also ignores the nature of the Medicaid transaction, and effectively removes the claim of redhibition from any Medicaid purchase of pharmaceuticals.

Even though LDHH paid the entire purchase price for Vioxx prescribed to Medicaid beneficiaries, Merck contends that LDHH is not the "buyer" of Vioxx, because LDHH never acquired possession of Vioxx.  No Louisiana court has ever embraced this restrictive definition of "buyer" and Merck's proposed definition finds no support in the statutes governing sale.  The term "buyer" is not even defined anywhere in the Louisiana Civil Code articles governing sales. However, sale is defined as the transfer "of ownership of a thing to another for a price in money." LSA-C.C. art. 2439.  Here, there is no disputing that LDHH is the one who paid the price in money for the transfer of ownership, even assuming that "ownership" did not transfer to LDHH.

There is nothing in the Civil Code that says that the buyer is the person who acquires ownership in a thing, as opposed to the person who pays the price in money.  Of course, in most situations, the person to whom ownership is transferred and the person who pays the price for that transfer of ownership are one and the same.  However, in the unique situation presented under Medicaid, arguably the one who pays the price and the one to whom ownership is transferred are two

M0DEF46148

different entities.[1]  In that unique situation, it would stand to reason that the one who paid the price is the "buyer" for purposes of redhibition.  To hold otherwise would be to find drug manufacturers effectively immune from redhibition with respect to Medicaid prescriptions.

Because of the unique situation presented by Medicaid prescriptions, Merck's position would result in a sale without a buyer for purposes of redhibition.  In redhibition, the buyer is entitled to a refund of the purchase price or the difference between what the buyer paid and what a buyer would have paid.  However, in Medicaid, the person prescribed the drug, who Merck suggests is the only "buyer," would have no remedy, because that person did not pay anything for the drug.  Under Merck's reasoning, the state, who has suffered the harm of purchasing the drug with the redhibitory defect, would have no claim in redhibition, because, according to Merck, the state is not the "buyer." This Catch-22 scenario finds no support in either the Civil Code articles on redhibition or controlling jurisprudence.

Merck's sole support for its novel theory that the state cannot pursue a claim in redhibition, even though the state is the *only* party who pays for Medicaid prescriptions, is a lone New York district case, *In re Rezulin Prods. Liab. Litig.*, 392 F.Supp.2d 597 (S.D.N.Y. 2005) ("Rezulin I"), which is not only distinguishable, but which also has never been followed by any court in Louisiana or the Fifth Circuit, and is in direct conflict with the United States Second Circuit's earlier decision *in the same case*.

*Rezulin I* is easily distinguished, in that *Rezulin I* did not address the unique situation presented by Medicaid prescriptions.  Rather, *Rezulin I* dealt with prescription reimbursements by

---

[1]  Arguably, the state acquires "ownership" of the prescription drug, which right of ownership it confers on the Medicaid beneficiary.

-28-

M00EF46149

health benefit providers (i.e. private health plans) who reimburse a portion of their clients' medical expenses.  *Rezulin I* did not address the question of whether the state, who pays the whole of a prescription cost, is the purchaser of a drug prescribed to a Medicaid beneficiary.  Moreover, *Rezulin I* was decided on summary judgment, upon presentation of evidence that the health benefit providers (HBP's) claiming redhibition only contracted with pharmacy benefit managers (PBM's), who actually purchased the drugs from the manufacturers.  This summary judgment ruling, rendered on a fully developed record regarding the nature of payments by private payors, cannot support Merck's Rule 12 Motion to dismiss redhibition claims brought by a state for reimbursement of Medicaid prescriptions.

More importantly, the validity of the *Rezulin I* holding is particularly questionable, since it is in direct conflict with the United States Second Circuit's earlier decision *in the same case*. See *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2nd Cir. 2003).  In *Desiano*, overruling the *Rezulin I* court's grant of a motion to dismiss on the grounds that third party payors were not purchasers, the Second Circuit held:

> The district court characterized Plaintiffs as "essentially financial intermediaries," rather than direct purchasers of Rezulin. Although this court has not to date held that insurance companies are, in all instances, the "purchasers" of the drugs for which they reimburse pharmacies, we, like several other courts, have indicated that in a variety of contexts **they are the buyers**.

> *Id.*, 326 So.2d at 350 (emphasis added).

The Second Circuit has not been called upon to review the lower court's apparent disregard for its holding that third party payors are "buyers," but there can be no reconciling the *Rezulin I* decision with the earlier ruling of the Second Circuit.

-29-

M0DEF46150

Even assuming that LDHH is not the buyer for purposes of the redhibition statute, Louisiana law broadly empowers LDHH to stand in the shoes of persons on whose behalf it paid Medicaid benefits to collect the amounts paid in benefits.  LSA-R.S. 46:446.  Under LSA-R.S. 46:446, LDHH has the right to proceed directly against the third party liable to the person on whose behalf LDHH has paid benefits.  Hence, assuming, as Merck contends, the Medicaid beneficiary to whom Vioxx was prescribed is the purchaser for purposes of redhibition, LDHH is authorized by statute to assert the redhibition claim of that beneficiary to recover the moneys that LDHH expended for Vioxx.

## VI.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM

Plaintiffs have asserted a claim of unjust enrichment in the alternative, in the event that this Court finds that plaintiffs do not have a remedy under the law of redhibition or LUTPA.

Merck suggests that no claim for unjust enrichment lies, because the unjust enrichment has occurred by operation of law.  This argument is nonsense.  As alleged, the unjust enrichment occurred not by operation of law, but by Merck's fraudulent marketing practices.  LDHH was not injured because it is required to pay for Medicaid prescriptions pursuant to 42 U.S.C.A. 1396r-8(d)(a) (faulty premises in itself), but because Merck propelled Vioxx to blockbuster sales through fraudulent promotion.

## CONCLUSION

The Louisiana Attorney General has asserted viable causes of action under LUTPA and redhibition, both on behalf of the state of Louisiana through the Department of Health and Hospitals and on behalf of Louisiana consumers.  Merck's Motion to Dismiss should be denied.

Respectfully submitted this 9th day of July, 2009.

SIGNATURE BLOCK ON NEXT PAGE

-30-

M00EF46151

BY:   MURRAY LAW FIRM

*s/ Stephen B. Murray, Jr.*

James R. Dugan, II  (24785)
Stephen B. Murray  (9858)
Stephen B. Murray, Jr. (23877)
Douglas R. Plymale (28409)
Justin Bloom
650 Poydras Street, Suite 1100
New Orleans, Louisiana 70130
T:      504.525.8100
F:      504.584.5249
*Plaintiff's Lead and Liaison Counsel*

James D. Caldwell
Attorney General
Trey Phillips
Bryan McMinn
L. Christopher Styron
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
1885 North Third Street - 6th Floor
Baton Rouge, Louisiana 70802
T:      225.326.6020
F:      225.326.6096

Francisco H. Perez
General Counsel
LOUISIANA DEPARTMENT OF HEALTH AND
HOSPITALS
P.O. Box 3836
Baton Rouge, Louisiana 70821
T:      225.342.1188
F:      225.342.2232

CERTIFICATE OF SERVICE

I hereby certify that on July 9th, 2009, I electronically filed the foregoing Memorandum of Law In Opposition to Merck's Motion to Dismiss with the Clerk of Court via the CM/ECF system which will send a Notice of Filing to all parties accepting electronic service.  I further certify that I mailed the forgoing pleading and Notice of Electronic Filing by first class mail, postage paid, to all parties who are not CM/ECF participants.

*/s/ Stephen B. Murray, Jr.*
Stephen B. Murray, Jr.

-31-