UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  VIOXX PRODUCTS LIABILITY LITIGATION | MDL No. 1657 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| ALL PURCHASE CLAIMS CLASS ACTION COMPLAINTS PENDING OR SUBJECT TO TRANSFER TO MDL 1657 | MAGISTRATE JUDGE KNOWLES |

## PLAINTIFFS' THIRD NOTICE OF SUPPLEMENTAL AUTHORITY

Class Plaintiffs in Plaintiffs' Purchase Claims Master Class Action Complaint respectfully submit this Third Notice of Supplemental Authority in further support of their opposition to Defendant Merck's Motion for Judgment on the Pleadings or to Strike Class Allegations in the Purchase Claims Master Complaint.

Defendant Merck recently filed a Notice of Supplemental Authority (D. 56957), submitting to this Court a November 24, 2010, decision denying class certification in *In re Light Cigarettes Marketing & Sales Practices Litigation*, No. 09-md-02068, 2010 U.S. Dist. LEXIS 124774 (D. Me. Nov. 24, 2010).   Merck failed, however, to also submit as supplemental authority a November 22, 2010, order <u>granting</u> class certification under New Hampshire's Consumer Protection Act in *Lawrence v. Philip Morris, USA, Inc.*, No. 09-CV-518 (NH Sup. Ct. Nov. 22, 2010) (Smukler, J.).  Plaintiffs in both *Lawrence* and *In re Light Cigarettes* seek redress stemming from the same conduct by the same defendant selling the same product.  A copy of the *Lawrence* decision is annexed as Exhibit A.

On December 2, 2010, the defendant in *Lawrence* filed a Motion for Reconsideration of the grant of class certification in that case.  The plaintiffs in *In re Light Cigarettes* litigation filed a Rule 23(f) petition to reverse the denial of class certification in the First Circuit Court of Appeal on December 8, 2010.  Each will presumably be citing the other court's decision to argue that the grant or denial of class certification, under the circumstances presented by both cases, was in error.

These two decisions, handed down virtually simultaneously in cases presenting the same facts under similar statutes, demonstrate that different courts can and do reach different decisions on the issue of class certification when such are fully briefed and argued.  While Defendant Merck and Plaintiffs definitely disagree on which court – *In re Light Cigarettes* or *Lawrence* –

committed error in its class certification ruling, these rulings prove the point that striking the class allegations at the pleadings stage on the basis that they are categorically incapable of class certification would be inappropriate.

Four additional opinions issued since oral argument in this matter support the proposition that striking class allegations at the pleadings stage in a Rule 12 motion is inappropriate. Plaintiffs also annex these four decisions – *Downey v. Alfa Ins. Corp.*, No. 10-cv-438, 2010 WL 4683612 at *2 (M.D.Ala. Nov. 10, 2010) (finding motion to dismiss arguments based upon Rule 23 "more appropriately raised at the class certification stage"), *Gomez v. Service Employees Int'l Union Local 87*, No. 10-1888, 2010 WL 4704407 at *6 (N.D. Cal. Nov. 12, 2010) ("arguments that plaintiffs' allegations are too dissimilar and too insufficiently pled for plaintiffs to properly represent a class...are more appropriately addressed during a motion for class certification under FRCP Rule 23 than through a motion to dismiss under FRCP Rule 12(b)."), *Tourgeman v. Collins Financial Services, Inc.*, No. 08-CV-1392, 2010 WL 4817990 at *7 (S.D. Cal. Nov. 22, 2010) ("Class allegations are rarely tested at the pleading stage.  Rather, Courts test class allegations through a motion for class certification.") (internal citation omitted), and *Degenhart v. AIU Holdings, Inc.*, No. 10-5172, 2010 WL 4852200, at *5 (W.D. Wash. Nov. 26, 2010) ("Defendants' [Rule 12] motion to strike plaintiffs' class allegations because individualized issues necessarily predominate is likewise denied.  The Court will deal with that issue if and when a motion for certification of the class is presented to the Court.") – as Exhibit B, Exhibit C, Exhibit D, and Exhibit E, respectively, in the belief that they further support Plaintiffs' opposition.

Dated: December __, 2010                    Respectfully Submitted,


/s/ Dawn M Barrios                          /s/ Elizabeth J. Cabraser
Dawn M. Barrios                             Elizabeth J. Cabraser
BARRIOS, KINGSDORF & CASTEIX, LLP           LIEFF      CABRASER      HEIMANN &
701 Poydras Street, Suite 3650              BERNSTEIN, LLP
New Orleans, LA 70139                       275 Battery Street, 29th Floor
Telephone: (504) 524-3300                   San Francisco, CA 94111-3339
Facsimile: (504) 524-3313                   Telephone: (415) 956-1000
                                            Facsimile: (415) 956-1008

                                            Chair, PSC Purchase Claims Committee

                                            James R. Dugan, II
                                            THE DUGAN LAW FIRM
                                            650 Poydras Street, Suite 2150
                                            New Orleans, LA 70130
                                            Telephone: (504) 648-0180
                                            Facsimile: (504) 648-0181

                                            Vice Chair, PSC Purchase Claims Committee

                                            Dennis Johnson
                                            Eben F. Duval
                                            JOHNSON & PERKINSON
                                            P.O. Box 2305
                                            1690 Williston Road
                                            South Burlington, VT 05403
                                            Telephone: (802) 862-0030
                                            Facsimile: (802) 862-0060

                                            Amy N. L. Hanson
                                            KELLER ROHRBACK L.L.P.
                                            1201 Third Avenue, Suite 3200
                                            Seattle, WA 98101-3052
                                            Telephone: (206) 623-1900
                                            Facsimile: (206) 623-3384

Lance A. Harke, P.A.
Howard M. Bushman, Esq.
HARKE CLASBY & BUSHMAN LLP
9699 NE Second Avenue
Miami, FL  33138
Telephone:  (305) 536-8220
Facsimile:   (305) 536-8229

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL  60602
Telephone: (312) 621-2000
Facsimile:   (312) 641-5504

## CERTIFICATE OF SERVICE

I herby certify that the above and foregoing Motion for Leave to File Third Notice of Supplemental Authority has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this __ day of December, 2010.

/s/ Dawn M. Barrios



# THE STATE OF NEW HAMPSHIRE

**MERRIMACK, SS.**                                        **SUPERIOR COURT**

Karen Lawrence
and all others similarly situated

v.

Philip Morris, USA, Inc.

No. 09-CV-518

\*\*\*

Shelby Peters

v.

Philip Morris, USA, Inc.

No. 09-CV-519

## ORDER

Plaintiffs Karen Lawrence and Shelby Peters brought this action against the defendant, Philip Morris USA, Inc. ("Philip Morris") on behalf of themselves and those similarly situated, seeking damages for unfair and deceptive marketing of Marlboro Lights cigarettes, contrary to RSA chapter 358-A—the Consumer Protection Act ("CPA"). On February 19, 2010, the court granted Ms. Peters' assented-to motion for voluntary nonsuit of her claims with prejudice. Before the court is Ms. Lawrence's motion for class certification. Philip Morris objects. Because Ms. Lawrence has sustained her burden of showing that class certification is appropriate, her motion is GRANTED.



- 2 -

## BACKGROUND

Karen Lawrence is a resident of New Hampshire who purchased and consumed approximately 1.5 to 2 packs of Marlboro Lights per day for approximately 30 years. Ms. Lawrence switched from regular Marlboro cigarettes to Marlboro Lights between 1973 and 1974, believing that "light" cigarettes marketed as "lowered tar and nicotine" presented reduced health risks. Ms. Lawrence purchased her last pack of Marlboro Lights on February 28, 2001.

On March 29, 2002, Ms. Lawrence filed this class action lawsuit against Philip Morris to recover damages under the CPA on behalf of herself and "everyone who purchased Marlboro Lights ... 'low-tar' filtered cigarettes manufactured, distributed and/or sold by defendant ... in the State of New Hampshire." Plaintiffs' Writ, ¶ 1. Ms. Lawrence alleges that Philip Morris falsely represented that Marlboro Lights cigarettes "contained lower levels of tar and nicotine by using words such as 'Lights,' ... and 'Lowered Tar and Nicotine.'" *Id.*, ¶ 18. Ms. Lawrence also alleges that Philip Morris failed to disclose, mark, or instruct consumers that: (1) Marlboro Lights had ventilation holes in the filter that diluted the tar and nicotine per puff, as measured by the industry standard testing apparatus; (2) consumers had to refrain from obstructing the ventilation holes and increasing their puff volume or frequency in order to receive lowered tar and nicotine; (3) Philip Morris had intentionally altered the nicotine levels in Marlboro Lights to maximize nicotine delivery; (4) Philip Morris intentionally designed Marlboro Lights to fool certain machine tests; and (5) Philip Morris' design changes increased the harmful effects tar has on smokers.

Ms. Lawrence alleges that she suffered damages because she did not receive what she paid for—a lower tar and nicotine cigarette. She requests as relief actual damages, in the form of either a refund or all profits that the defendant made selling Marlboro Lights to her, or statutory

- 3 -

liquidated damages in the amount of $1,000, whichever is greater, tripled. *Id.*, Prayer for Relief

2.

## STANDARD

Ms. Lawrence argues that she is entitled to class certification under RSA 358-A:10-a.

Philip Morris objects, arguing that individual issues of fact and law predominate over common

issues and a class action is not a superior method for resolving Ms. Lawrence's CPA claim.

The CPA contemplates class actions. Under RSA 358-A:10-a, II, an action may be main-

tained as a class action if:

(a) The class is so numerous that joinder of all members is impracticable; and

(b) There are questions of law or fact common to the class; and

(c) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(d) The representative parties will fairly and adequately protect the interests of the class; and, in addition

(e)(1) The prosecution of a separate action by or against individual members of the class would create a risk of:

A. Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

B. Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the

- 4 -

> controversy already commenced by or against members of the class; the
> desirability or undesirability of concentrating the litigation of the claims in the
> particular forum; and the difficulties likely to be encountered in the management
> of a class action.

Because RSA 358-A:10-a, II is substantively similar to Federal Rule of Civil Procedure

("FRCP") 23, the court will rely on cases interpreting the federal rule for guidance. *Cf. Cantwell
v. J&R Props. Unlimited*, 155 N.H. 508, 511 (2007) (relying on cases interpreting FRCP 23 for

guidance in interpreting Superior Court Rule 27-A).

"Under Federal Rule of Civil Procedure 23, trial courts 'must conduct a rigorous analysis

of the prerequisites established by [the] Rule … before certifying a class.'" *Id.*, quoting *Smilow v.

Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). "Such a 'rigorous analysis'

ordinarily involves looking beyond the allegations of plaintiff's complaint." *Id.*, citing *In re Pub-

lic Offering Sec. Lit.*, 471 F.3d 24, 38 (2d Cir. 2006). This is not the same as a review of the mer-

its. "A trial court has no authority to conduct a preliminary inquiry into the merits of a lawsuit

when it is determining whether that lawsuit may be maintained as a class action." *Craft v. Philip

Morris Co., Inc.*, 190 S.W.3d 368, 377 (Mo. App. E.D. 2005), citing *Eisen v. Carlisle & Jacquel-

in*, 417 U.S. 156, 177 (1974). "The issue is not whether the plaintiff has stated a cause of action

or will prevail on the merits, but rather whether [the] plaintiff has met the requirements for a

class action." *Id.*

"'A class action is designed to promote judicial economy by permitting the litigation of

the common questions of law and fact of numerous individuals in a single proceeding.'" *Id.*,

quoting *Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 735 (Mo. 2004). Under the

CPA, class certification requires that: (1) the class be so numerous that joinder of all members is

impracticable; (2) the existence of issues of law or fact common to the class; (3) the common

issues of law and fact predominate over individual issues; (4) a class action is superior to other

- 5 -

available methods for the fair and efficient adjudication of the controversy; (5) the claims of the representative parties are typical of the claims of the class; and (6) the representative parties will fairly and adequately protect the interests of the class. In addition to the above requirements, the class seeking certification must be ascertainable or adequately defined so that class members can be identified. *Van West v. Midland Nat'l Life Ins. Co.*, 199 F.R.D. 448, 451 (D.R.I. 2001). The party seeking class certification bears the burden to demonstrate that each of the above elements is met. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). Mindful of this standard, the court will examine each factor in turn.

## ANALYSIS

### Numerosity

Ms. Lawrence argues that she has satisfied the numerosity requirement because she "seek[s] certification of a class of all individuals who purchased Marlboro Lights cigarettes in New Hampshire at any time from the date [the defendant] introduced them into New Hampshire's stream of commerce until the date of trial." Plaintiffs' Mot. For Class Cert. at 32. Courts have recognized "'the difficulty inherent in joining as few as 40 class members,'" and have suggested that such a number "'should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the [numerosity requirement] on that fact alone.'" *City of Goodlettsville v. Priceline.com, Inc.*, 2010 WL 1609964, at *3 (M.D. Tenn), quoting 1 William B. Rubenstein, Alba Conte, and Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 3.5 (4th ed.) ("Conte & Newberg").

In this case, Ms. Lawrence asserts, and the defendant does not dispute, that Philip Morris sold "hundreds of millions of packs of Marlboro Lights cigarettes in New Hampshire during the class period." Plaintiffs' Mem. in Support of Mot. For Class Cert. at 32. Given this number, Ms. Lawrence estimates that "the number of Class members who purchased those cigarettes is in the

- 6 -

hundreds of thousands." *Id.* This estimate is compelling. Based on the size of plaintiff's proposed

class, Ms. Lawrence has satisfied the numerosity requirement.

### Commonality and Predominance

Ms. Lawrence also argues that common issues of law and fact exist in this case and that

these common issues predominate over issues affecting individual class members. Philip Morris

does not dispute that common issues of law and fact exist. Rather, it argues that Ms. Lawrence

cannot show that common issues predominate over issues affecting only individual class mem-

bers.

> Satisfying commonality requires meeting a relatively low threshold. This
> requirement will be satisfied if the proposed class members share at least one
> significant question of law or fact in common with each other.
>
> The predominance requirement, however, is far more demanding. To satisfy the
> predominance test, the issues common to the proposed class must outweigh the
> issues that are particular to the individual class members. The purpose of the
> predominance test is to promote the 'economies of time, effort, and expense, and
> promote uniformity of decision as to persons similarly situated.... To achieve
> these pragmatic goals, the trial court must consider how the case will be tried by
> identifying the substantive issues that will control the outcome of the case,
> assessing which issues will predominate, and determining whether those issues
> are common to the class.

*Petition of Bayview Crematory*, 155 N.H. 781, 785-86 (2007) (citations omitted).

"'The 'predominance' requirement ... does not demand that every single issue in the case

be common to all class members, but only that there are substantial common issues which 'pre-

dominate' over the individual issues.'" *Am. Family Ins. v. Clark*, 106 S.W.3d 483, 486 (Mo.

2003), quoting *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 331 (D.S.C. 1991). "The

predominant issue need not be 'dispositive of the controversy or even be determinative of the

liability issues involved.'" *Id.*, quoting Conte & Newberg § 4:25, at 169. Moreover, "[t]he need

for inquiry as to individual damages does not preclude a finding of predominance." *Id.* Indeed,

"'[a] single common issue may be the overriding one in the litigation, despite the fact that the

- 7 -

suit also entails numerous remaining individual questions.'" *Id.* at 381-82, quoting Conte & Newberg § 4:25, at 172.

Under the CPA, it is "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce" within New Hampshire. RSA 358-A:2. In determining whether an act or practice under RSA 358-A:2 is unfair or deceptive, the court considers the following factors:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers....

*Milford Lumber Co. v. RCB Realty*, 147 N.H. 15, 19 (2001), quoting *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n. 5 (1972). The court also considers whether the act or practice falls within one of the specifically delineated categories of proscribed commercial actions listed under RSA 358-A:2.

If the act or practice is unfair or deceptive but does not fall within one of the specifically delineated categories of proscribed conduct, the court applies the "rascality" test. *See State v. Moran*, 151 N.H. 450, 452 (2004) ("Because of the difficulty often associated with determining which commercial actions, not specifically delineated, are covered by the act, we employ[] the rascality test."). Under the rascality test, the "objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Id.* (quotations omitted).

In this case, common issues of law and fact predominate over individual issues. Among these common issues of law and fact are the following: (1) whether each class member is a "person" within the meaning of RSA 358-A:1, I; (2) whether Philip Morris was engaged in "trade or

- 8 -

commerce" within New Hampshire when it committed the alleged unlawful or deceptive acts or practices at issue; (3) whether Philip Morris engaged in unlawful or deceptive acts or practices under the CPA; (4) whether the alleged unlawful or deceptive acts or practices fall within one of the specifically delineated categories of proscribed commercial conduct listed under RSA 358-A:2; (5) if Philip Morris's alleged unlawful or deceptive acts or practices do not fall within one of the categories of proscribed commercial conduct, whether its alleged unlawful or deceptive conduct meets the rascality test; (7) whether each class member must prove reliance, deception, or some other form of causation to recover under the CPA; (8) if causation is an element under the CPA, whether a single understanding of the labeling of Marlboro Lights as "lights" and "lowered tar and nicotine" exists; (9) whether a damages theory exists under which each class member's damages can be measured; and (10) when each class member knew, or reasonably should have known, of Philip Morris' alleged unfair or deceptive conduct, RSA 358-A:3, IV-a.

Philip Morris argues that common questions of law and fact do not predominate over individual questions because whether a smoker received lower tar and nicotine depends on his or her individual smoking behavior. The court disagrees. Ms. Lawrence alleges in her writ that she purchased a product designed and manufactured to manipulate test results, resulting in a misrepresented and mislabeled product. She also alleges that she failed to receive the qualities and economic value of a low tar, low nicotine cigarette. These allegations go to the condition and labeling of Philip Morris' product at the time it was sold. *See Craft*, 190 S.W.3d at 382. Neither allegation makes Philip Morris's liability dependent on each class member's smoking behavior. *See id.* Thus, evidence of individual smoking behavior does not predominate over common issues of law and fact.

- 9 -

Philip Morris also argues that individual questions of law and fact predominate over common questions because individuals purchased Marlboro Lights for many reasons, including reasons unrelated to lower tar and nicotine. The court again disagrees. Ms. Lawrence has not alleged reliance, deception, or causation in her writ. In fact, Ms. Lawrence contests whether she must prove reliance, deception, or causation under the CPA. Thus, at this stage of the proceedings, each class members' reasons for purchase are not issues and do not predominate over common questions. *See id.* at 383.

Philip Morris next argues that individual issues predominate over common issues because smokers varied in their knowledge about whether Marlboro Lights delivered lower tar and nicotine. Philip Morris asserts that knowledge is a defense to the CPA, which would defeat a claim or cut it off at a certain time. Consequently, each consumer's individual knowledge is a predominant issue. Philip Morris raises a similar argument with respect to the statute of limitations. The court disagrees that knowledge is a predominant issue. Whether and to what extent knowledge is a defense under the CPA is a common issue of law and fact that the court must resolve. If knowledge is not a defense, it will not be an issue. If knowledge is a defense, it would not necessarily create a predominant individual issue.

"As a general matter, the fact that an affirmative defense may be available against certain individual class members and affect them differently does not, by itself, show that individual issues predominate." *Id.*, citing *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 138 (2nd Cir. 2001). "'[A] trial court can resolve individual questions, particularly those relating to damages and defenses, after making a determination on the predominant issue.'" *Id.*, quoting *Am. Family Ins.*, 106 S.W.3d at 489 n. 7. "If knowledge is a defense under the [CPA] and serves to cut off a claim, its application would be similar to the application of a statute of limitations

- 10 -

defense." *Id.* "Differences in the application of the statute of limitations to individual class members do not preclude certification." *Id.*, citing *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 924 (3rd Cir. 1992). Thus, each class member's individual knowledge and Philip Morris' statute of limitations defense do not create individual issues that predominate over common issues.

Next, Philip Morris argues that individual issues predominate over common issues because each class member has no means of establishing that he or she suffered an injury as a result of its alleged conduct. The court disagrees. Ms. Lawrence has shown that each class member could prove recoverable damages on a class-wide basis under the benefit-of-the-bargain rule. Under the benefit-of-the-bargain rule, a plaintiff may recover "the difference between the actual value of the cigarettes and the value the cigarettes would have had if they had truly been as represented—*i.e.*, a true low-tar, low-nicotine cigarette," regardless of the actual price paid for the cigarettes. *Collora v. R.J. Reynolds Tobacco Co.*, 2003 WL 23139377, at * 3 (Mo. Cir. Dec. 31, 2003); *Craft v. Philip Morris Co., Inc.*, 23139381, at *6 (Mo. Cir. Dec. 31, 2003); *see also* 37 AM. JUR. 2D FRAUD AND DECEIT §§ 385, 409, 416 (2010). Thus, contrary to Philip Morris' assertions, Ms. Lawrence has asserted a potentially viable theory for determining class-wide damages and shown that the fact of damages is an issue common to the class.

Finally, Philip Morris argues that individual issues predominate because each class member's damages will require individualized assessment. The court again disagrees. "The need for inquiry into individual damages does not preclude a finding of predominance." *Craft*, 190 S.W.3d at 381, quoting *Am. Family Ins.*, 106 S.W.3d at 489 n. 7. It is well-settled that class action rules allow trial courts "to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie v. Household Int'l, Inc.*, 376

- 11 -

F.3d 656, 661 (7th Cir. 2004). Thus, a trial court may "modify its class certification order, sever liability and damages, or even decertify the class if such an action ultimately became necessary." *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d at 141. At this stage of the proceedings, common issues of law and fact predominate over individual issues of each class member's damages. Should individual issues of each class member's damages come to predominate over common issues of law and fact, however, the court may modify its class certification order, sever liability and damages, or decertify the class, whichever is appropriate.

Ms. Lawrence also appears to request that the court resolve certain questions of law relating to damages, such as whether she may seek a refund of the purchase price or claim statutory damages under the CPA. The court declines Ms. Lawrence's invitation to resolve these issues at this stage of the proceedings because "[i]t is inappropriate to resolve competing damages theories on a motion for class certification." *Craft*, 190 S.W.3d at 385. Resolution of these questions at this time is premature.

### Typicality

Ms. Lawrence bears the burden of proving that her claims are typical of the claims and defenses of the class. "A sufficient nexus is established [to show typicality] if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. 672, 686 (S.D. Fla. 2004). "Although [the plaintiff] may not have suffered identical damages, that is of little consequence to the typicality determination when the common issue of liability is shared." *In re Lorazepam & Clorazepate Antitrust Litigation*, 202 F.R.D. 12, 28 (D.D.C. 2001). To satisfy the typicality requirement, "plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of absent members." *Randle v. Spec-*

- 12 -

*tran*, 129 F.R.D. 386, 391 (D. Mass. 1988). Typicality is not a demanding test. *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993).

Here, Ms. Lawrence has shown substantial identity between her claims and defenses and the claims and defenses of absent class members. Ms. Lawrence and absent class members purchased Marlboro Lights cigarettes during the relevant class period. Ms. Lawrence and absent class members were unaware of Philip Morris' conduct with respect to the manufacturing, marketing, and distribution of Marlboro Lights and, as a result, received a misrepresented and mislabeled product. Based on these facts, Ms. Lawrence's claims and defenses under the CPA are typical of the claims and defenses of the absent class members.

### Adequacy

Ms. Lawrence must also show that the representative parties will fairly and adequately protect the interests of the class. "The adequacy rule has two parts. The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Co.*, 780 F.2d 124, 130 (1st Cir. 1985).

In this case, Ms. Lawrence has shown that her interests are the same as other class members—they will not conflict. Additionally, Ms. Lawrence has shown, and Philip Morris does not dispute, that class counsel is qualified, experienced, and able vigorously to conduct the proposed litigation. Thus, Ms. Lawrence has sustained her burden with respect to the adequacy requirement.

### Superiority and Manageability

Ms. Lawrence also bears the burden of showing that she meets the superiority and manageability requirements. She argues that she has met this burden because her claims arise out of a

- 13 -

single course of conduct and common issues of law and fact predominate. Philip Morris objects.
It contends that a class action is not superior because: (1) individual issues predominate over
common questions; (2) the plaintiff has not submitted a "trial plan" describing the issues likely to
be presented at trial and whether they are susceptible to class-wide proof; and (3) during the
1990s, forty state attorneys general filed suit against the tobacco company seeking reimburse-
ment of healthcare costs. The court agrees with Ms. Lawrence that she has met the superiority
and manageability requirements.

The superiority requirement is met where "a class action would achieve [the] economies
of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situ-
ated, without sacrificing procedural fairness or bringing about other undesirable results." *Am-
chem Products, Inc. v. Windor*, 521 U.S. 591, 615 (1997).

Here, as stated earlier, common issues of law and fact predominate over individual issues.
Also, the CPA does not require Ms. Lawrence to submit a "trial plan" describing the issues likely
to be presented at trial and whether they are susceptible to class-wide proof. Additionally, the
court cannot ascertain how litigation during the 1990s in which forty state attorneys general filed
suit against various tobacco companies has any bearing on this case, especially where Philip
Morris has not indicated whether it or the New Hampshire Attorney General was involved in a
similar lawsuit in New Hampshire. In any event, "'litigation by a government agency will not
preclude a private party from vindicating a wrong that arises from related facts but generates a
distinct individual cause of action.'" *Engle v. Ligget Group, Inc.*, 945 So. 2d 1246, 1261 (Fla.
2006), quoting *Southwest Airlines Co. v. Texas Intern. Airlines, Inc.*, 546 F.2d 84, 98 (5th Cir.
1977).

- 14 -

In its supplemental memorandum, Philip Morris argues that a class action would be un-manageable because RSA 358-A:10-a, X "expressly provides that no judgment may be entered until after a determination of whether: (1) each individual is a member of the class; (2) whether that individual suffered any injury; and (3) the amount of damages suffered by the individual." Philip Morris, USA Inc.'s Supp. Memo. In Opposition to Pl.'s Mot. For Class Cert., at 11. The court disagrees.

"Failure to certify an action on the sole ground that it would be unmanageable is disfa-vored...." *Craft*, 190 S.W.3d at 386, citing *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d at 140. "While it is almost inevitable that a class will include some people who have not been injured by the defendant's conduct because at the outset of the case many members may be unknown, or facts bearing on their claims may be unknown, this possibility does not preclude class certification." *Pella Corp.*, 606 F.3d at 394. Moreover, "the existence of administrative complications in managing the distribution of different damages awards to a class does not by itself make a class unmanageable." *Craft*, 190 S.W.3d at 386.

In this case, the requirements of RSA 358-A:10-a, X do not preclude class certification. While the possibility that the class includes some people who have not been injured by the de-fendant's conduct may preclude entry of a final judgment under RSA 358-A:10-a, X, it does not preclude class certification at this stage of the proceedings. Similarly, the possibility that each class member will have to prove individual damages or that different damages awards will need to be managed does not preclude class certification. Should the class become unmanageable, the court may modify its class certification order, sever liability and damages, or even decertify the class. *See Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 864 (3rd Cir. 1977)

- 15 -

("Thus, after a determination of liability, the district court is free to decertify the class for a proper reason, and unmanageability would be such a circumstance.").

### Ascertainability

Finally, the court must determine whether Ms. Lawrence has sustained her burden of showing that she meets the ascertainability requirement. "[A] proposed class must be precisely defined and its members must be ascertainable through the application of 'stable and objective factors' so that a court can decide, among other things, 'who will receive notice, who will share in any recovery, and who will be bound by the judgment.'" *Van West v. Midland Nat'l Life Ins. Co.*, 199 F.R.D. 448, 451 (D.R.I. 2001).

According to Ms. Lawrence's pleadings, she seeks to certify the following class: "[A]ll individuals who purchased Marlboro Lights cigarettes in New Hampshire at any time from the date [the defendant] introduced them into New Hampshire's stream of commerce until the date of trial." Plaintiff's Mot. For Class Cert. at 32. Such a class is readily ascertainable through the application of stable and objective factors.

## CONCLUSION

Based on the foregoing, the court finds and rules that Ms. Lawrence has sustained her burden of establishing the requirements for class certification under the CPA. Accordingly, Ms. Lawrence's motion for class certification is GRANTED.

So ORDERED.

Date: November 22, 2010

LARRY M. SMUKLER
PRESIDING JUSTICE

Slip Copy, 2010 WL 4683612 (M.D.Ala.)
(Cite as: 2010 WL 4683612 (M.D.Ala.))

**H**Only the Westlaw citation is currently available.

United States District Court,
M.D. Alabama,
Eastern Division.
Susan DOWNEY, Plaintiff,
v.
ALFA INSURANCE CORPORATION, Defendant.
Civil Action No. 2:10cv438-WHA.

Nov. 10, 2010.

Daniel Eduardo Arciniegas, Jon Craig Goldfarb, Wiggins Childs Quinn & Pantanzis, PC, Birmingham, AL, for Plaintiff.

Shannon Leigh Miller, David Turner Wiley, Thomas Andrew Davis, Jackson Lewis LLP, Birmingham, AL, for Defendant.

### MEMORANDUM OPINION AND ORDER

W. HAROLD ALBRITTON, Senior District Judge.

### I. FACTS AND PROCEDURAL HISTORY

**\*1** This cause is before the court on a Renewed Motion to Dismiss Plaintiff's Class Claims (Doc. # 16), filed on October 7, 2010.

The Plaintiff, Susan Downey ("Downey"), filed a Class Action Complaint on May 18, 2010. Downey brings claims for gender discrimination on behalf of herself and all other female individuals who are similarly situated, under Title VII of the Civil Rights Act of 1964, as amended.

The Defendant, Alfa Insurance Corporation ("Alfa"), filed a Motion to Dismiss which was directed to the class action aspect of the Plaintiff's Complaint. That motion was granted, but the Plaintiff was given an opportunity to replead her Complaint to identify the continuing injury which she contends gives her standing to raise class claims in this case, including standing to bring claims for declaratory and injunctive relief.

Downey filed an Amended Complaint on September 23, 2010. In her Amended Complaint, Downey alleges that because she was denied a Claims Adjuster position in October 2008 and did not receive the position until April 2009, she has suffered damage in the form of a lower rate of pay from October 2008 to April 2009; lost bonus amounts, including a 2008 holiday promotion bonus; and lower matching 401(k) contributions and pension benefits. Downey also alleges that her service time in the Claims Adjuster position is shorter by over a year than it would have been in the absence of discrimination, resulting in decreased opportunities for future promotion. Downey seeks both damages and injunctive and declaratory relief on behalf of a class. Amended Complaint at ¶¶ 29-32.

### II. MOTION TO DISMISS

The court accepts the plaintiff's allegations as true, _Hishon v. King & Spalding_, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, _Duke v. Cleland_, 5 F.3d 1399, 1402 (11th Cir.1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. See _Ashcroft v. Iqbal_, --- U.S. ----, 129 S.Ct. 1937, 1949-50 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 555 (2007). _Id._ (citation omitted). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." _Id._ at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." _Id._ at 555.

### III. DISCUSSION

Alfa continues to challenge Downey's standing on the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 4683612 (M.D.Ala.)
**(Cite as: 2010 WL 4683612 (M.D.Ala.))**

basis that Downey has been given the Claims Adjuster position which formed the basis of her EEOC charge of discrimination, and therefore has failed to allege that she personally continues to be injured by Alfa.

*2 Constitutional standing requires a showing that (1) the plaintiff alleges an actual or imminent injury, (2) the injury must be traceable to the alleged unlawful conduct, (3) the relief requested must be likely to remedy the plaintiff's injury. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1537 (11th Cir.1994). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury." *Wooden v. Board of Regents of University System of Georgia*, 247 F.3d 1262, 1284 (11th Cir.2001).

Downey has alleged that she has not been made whole by being given the Claims Adjuster position, but is instead due monetary damages, and that she has standing to claim such damages on behalf of a class. Alfa does not appear to challenge Downey's standing to assert damages based on past discrimination. Alfa's arguments with regard to Downey's requested monetary relief are instead that monetary damages are highly individualized and, therefore, preclude certification under Rule 23. Such arguments, however, are more appropriately raised at the class certification stage. *Cf. Daigle v. Ford Motor Co.*, 713 F.Supp.2d 822, 832 (D.Minn.2010) (denying **motion to strike class allegations** where movant argued that plaintiff's damage claims required individualized proof).

With respect to the requested declaratory and injunctive relief, Alfa argues that Downey's Amended Complaint does not sufficiently cure the deficiencies of her original complaint with regard to standing. Alfa originally argued, and continues to argue, that because Downey challenged the denial of a position which she now holds, and only vaguely refers to future promotions, she cannot establish standing to seek injunctive or declaratory relief.

In response, Downey has clarified in her Amended Complaint that the future promotions which she has identified are promotional opportunities based on length of service with Alfa. In her Amended Complaint, she requests, on behalf of herself and the class she seeks to represent, an order restoring her and the

class into jobs they would now be occupying but for discrimination, and to remedy the effects of past discrimination. Amended Complaint at p. 22-3, ¶ e, h. In her brief, she argues that she is seeking injunctive relief to restore her service date to the date she would have been promoted in the absence of alleged discrimination. She relies on case law which recognizes that restoration of seniority may constitute appropriate relief for past discrimination. *See Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 770 (1976).

Alfa responds that *Franks* is to be distinguished because the plaintiff in *Franks* was not employed with the defendant. The employment status of the plaintiff in *Franks* is different from this case as a factual matter. That difference, however, does not undermine the legal proposition that length of service credit can be awarded as a remedy, nor Downey's standing as a currently-employed person seeking to be made whole through restoration of length of service credit. Downey ultimately may fail to obtain any injunctive relief on her own behalf, or on behalf of a class, should one be certified, but she has sufficiently identified an on-going injury she seeks to remedy through injunctive relief to establish standing.

*3 The court concludes that Downey has identified a sufficient interest to establish her standing to seek damages and declaratory and injunctive relief on behalf of a class.[FN1] Other arguments raised by Alfa as to Downey's ability to prove that a class should be certified under Rule 23 will be evaluated if Alfa raises them again in response to a motion for class certification filed at the appropriate time by Downey.

> FN1. Having found standing on these bases, the court need not address Downey's other arguments as to her standing to assert claims in this case.

## IV. CONCLUSION

For the reasons discussed, the Renewed Motion to Dismiss Plaintiff's Class Claims (Doc. # 16) is due to be and is hereby ORDERED DENIED.

M.D.Ala.,2010.
Downey v. Alfa Ins. Corp.
Slip Copy, 2010 WL 4683612 (M.D.Ala.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4683612 (M.D.Ala.)
**(Cite as: 2010 WL 4683612 (M.D.Ala.))**

**END OF DOCUMENT**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2010 WL 4704407 (N.D.Cal.)
(Cite as: 2010 WL 4704407 (N.D.Cal.))

Only the Westlaw citation is currently available.

United States District Court, N.D. California,
San Francisco Division.
Marta GOMEZ, Ramona Hernandez, Maria Herrera,
Elsa Acevedo, Maria Alvarez, Salvador Gallardo,
Maria Vega, Tarcisio Vega, Jose Tasayco, Olga
Loaiza, Esperanza J. Lopez, Manual Lopez, Jose A.
Luna, Rutilio Rivas, and Carolina Rodriguez, indivi-
dually and on behalf of all others similarly situated
Plaintiffs,
v.
SERVICE EMPLOYEES INTERNATIONAL UN-
ION LOCAL 87, Service Employees International
Union, and Does 1 through 10, inclusive, Defendants.
No. C 10-01888 RS.

Nov. 12, 2010.

Michael Stuart Strimling, Alan R. Plutzik, Bramson
Plutzik Mahler & Birkhaeuser, LLP, Walnut Creek,
CA, Stuart I. Goldware, Frankel & Goldware, LLP,
San Ramon, CA, Wayne Lewis Lesser, Wayne Lewis
Lesser Law Office, San Francisco, CA, for Plaintiffs.

**ORDER (1) GRANTING IN PART AND DENY-
ING IN PART MOTION TO DISMISS; (2) DE-
NYING MOTION FOR A MORE DEFINITE
STATEMENT; (3) GRANTING MOTION TO
STRIKE DOE DEFENDANTS; AND (4) DENY-
ING MOTION TO STRIKE CLASS ALLEGA-
TION**

RICHARD SEEBORG, District Judge.

## I. INTRODUCTION

*1 This case arises out of alleged discrimination
against certain members of Local 87 of the Service
Employees International Union ("Local 87" or the
"union"). Plaintiffs First Amended Complaint
("FAC") states claims for relief for violations of Title
VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e
("Title VII"), and for violations of the California Fair
Employment and Housing Act ("FEHA"). Cal. Gov't
Code §§ 12940, et seq. Local 87 has filed a motion to
dismiss or, in the alternative, a motion for a more

definite statement. For the reasons stated below, the
motion to dismiss is granted with leave to amend in
part and is denied in part, and the motion for a more
definite statement is denied. In the motion to dismiss,
Local 87 also moves the Court to strike the use of Doe
defendants and requests that the Court deny class
certification. For the reasons stated below, the request
to deny class certification is denied without prejudice
and the motion to strike the use of Doe defendants is
granted.

## II. BACKGROUND

Plaintiffs are janitors of Hispanic origin and members
of Local 87, the local affiliate of the Service Em-
ployees International Union, AFL-CIO. Local 87 has
over 3,000 members consisting mainly of janitorial
employees working under contracts between the union
and building maintenance companies. These compa-
nies in turn contract with various buildings in which
the union members work. The union, a "labor organ-
ization" as defined under Title VII, is the duly certi-
fied collective bargaining representative for its
members and operates a "hiring hall" that is the ex-
clusive means of hiring for positions that the members
fill. As alleged in the FAC, Local 87 and the main-
tenance companies have a Collective Bargaining
Agreement ("CBA") that establishes, for example,
rules of seniority governing how union members must
be hired, working terms and conditions, and proce-
dures for grievances to be pursued by the union on
behalf of its members for employer violations of the
CBA.

The FAC alleges that, in or about 2005, plaintiffs
perceived a pattern of discrimination against Hispanic
members in the leadership of Local 87. In particular,
the FAC avers, Local 87 discriminated in the follow-
ing ways: (1) by denying Hispanic members em-
ployment positions or referring them to inferior posi-
tions; (2) by advancing members of other ethnicities
and national origins in contravention of the seniority
rules; (3) by failing to pursue grievances against em-
ployers on behalf of Hispanic members; (4) by failing
to hire representatives who would defend the interests
of Hispanic members; (5) by denying Hispanic
members certain rights of union membership, such as
the right to attend meetings and to hold union posi-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 4704407 (N.D.Cal.)
(Cite as: 2010 WL 4704407 (N.D.Cal.))

tions; (6) by harassing Hispanic members in the union hall; (7) by providing less opportunities for training and support to Hispanic members than those given to non-Hispanic members; (8) by requiring Hispanic members to take positions in less preferred locations as a condition of promotion or hiring; (9) and by retaliating against those Hispanic members who complained of rules violations. In addition to operating the union in a discriminatory and harassing manner, the FAC avers that union leadership, including president Olga Miranda and vice-president Ahmed Abozayd, made a number of discriminatory comments that betray the biased manner in which they made decisions. For instance, Miranda allegedly said, "The only [members] I care about are the Chinese and Arabic members," and refused to approve eight positions at a potential employer "because they are all Latino." FAC ¶¶ 36, 61. Similarly, Abozayd allegedly asked a union foreman who had attempted to assist an Hispanic member, "Why are you helping these stupid Latinos?" FAC ¶ 58.

*2 The FAC also makes a number of averments regarding specific acts of discrimination experienced by each of the named plaintiffs. For instance, according to the FAC, Miranda and Abozayd actively sought to bar plaintiff Herrera from attaining certain union offices or from attending meetings in retaliation for her complaints about the union's failure to represent Hispanic members in their complaints for discrimination and for her actions as a whistleblower concerning discriminatory enforcement of the CBA. In other examples, the FAC avers that when plaintiff Jose Tasayco was passed over for a position by a Middle Eastern man with less seniority, Abozayd told him, "I'm not going to take out an Arab for you," and when plaintiff Salvador Gallardo was fired on a pretextual basis to facilitate the hiring of a Middle Eastern janitor, the union refused to represent him. FAC ¶¶ 50-51.

According to the FAC, each of the named plaintiffs filed charges of national origin discrimination against Local 87 with the United States Equal Employment Opportunity Commission ("EEOC"). They all received a right-to-sue notice issued on February 2, 2010, as well as a letter in 2007 in which the EEOC determined that there was "reasonable cause to believe that [Local 87] discriminated against [plaintiffs] and a class of similarly situated individuals based on their race/national origin, Hispanic." FAC ¶¶ 65-79. The plaintiffs also each received a right-to-sue notice from

the California Department of Fair Employment and Housing that permits suit under FEHA.

Plaintiffs then exercised their right to sue, and filed this action on April 30, 2010. The FAC's first claim for relief alleges that Local 87 violated Title VII by discriminating against the named plaintiffs and the class they represent on the basis of national origin. The second claim for relief, also for a violation of Title VII, alleges discrimination based upon national origin and/or gender. The third claim for relief alleges a violation of FEHA for discrimination based upon national origin and/or gender. Defendants move to dismiss the FAC for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative request a more definite statement under FRCP Rule 12(e). Although not stated in the caption of the motion, defendants also move to strike the use of Doe defendants as well as to dismiss the class action under FRCP Rule 23. The parties appeared for oral argument on the motion on September 2, 2010.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A motion to dismiss a complaint under FRCP Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. See Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir.1995). Dismissal under FRCP Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1988). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. Twombly, 550 U.S. at 570). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to de-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4704407 (N.D.Cal.)
(Cite as: 2010 WL 4704407 (N.D.Cal.))

feat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.1996); *see also Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are not taken as true)).

**\*3** When dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir.1995). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir.1996). In addition, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed.R.Civ.P. 12(e). Motions for a more definite statement, however, are disfavored and are "proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." *Bender v. LG Elecs. U.S.A., Inc.*, 2010 WL 889541 at \*2 (N.D.Cal. Mar.11, 2010) (citing *Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072, 1077 (C.D.Cal.1994)).

The use of "Doe" defendants is disfavored in the Ninth Circuit. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980). Where the identity of alleged defendants cannot be known prior to the filing of a complaint, however, the plaintiff should be given an opportunity through discovery to identify them. *Id.*

### IV. DISCUSSION

#### A. *Claims Based Upon Gender Discrimination*

Although the FAC focuses primarily on national origin-based discrimination, the second and third claims for relief also allege violations of Title VII and FEHA, premised on gender-based discrimination. As to these gender-based claims, plaintiffs have failed to allege exhaustion of their administrative remedies.

To establish federal subject matter jurisdiction, plaintiffs must exhaust their EEOC administrative remedies before filing their case in federal court. *See EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994) (citing *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990)). "The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both

the EEOC charge and the EEOC investigation." *Id.* (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990) (internal citations omitted)). Although the "specific claims made in district court ordinarily must be presented to the EEOC," the district court "has jurisdiction over any charges of discrimination that are 'like or reasonably related to' the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir.2003) (citing *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 385 (9th Cir.1990) and *Sosa*, 920 F.2d at 1456). Claims that rely on differing theories of discrimination, however, may be unrelated. *See id.* (EEOC investigation of alleged discrimination on basis of race, color, religion, sex, national origin, and/or age was not related to disability discrimination claim under the Rehabilitation Act); *see also Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir.2001) (upholding dismissal of disability discrimination claim when plaintiff's complaint with the California Department of Fair Employment and Housing alleged only race-based discrimination, and finding that "[a]llegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust."); *Stallcop v. Kaiser Found. Hosp.*, 820 F.2d 1044, 1051 (9th Cir.1987) (finding that, even if plaintiff did use the words "sex" and "age" in bringing her complaint to the California Department of Fair Employment and Housing, the charge she actually brought was only for national origin discrimination and therefore the district court properly dismissed the sex and age discrimination claims for failure to exhaust administrative remedies). The exhaustion of administrative remedies requirement applies equally to cases brought under Title VII as to those alleging violations of the FEHA. *See Yurick v. Superior Court*, 209 Cal.App.3d 1116, 1121, 257 Cal.Rptr. 665 (1989).

**\*4** Here, the FAC avers that each of the named plaintiffs filed charges of national origin discrimination against Local 87 with the EEOC, and that they all received a letter in which the EEOC determined that there was "reasonable cause to believe that [Local 87] discriminated against [plaintiffs] and a class of similarly situated individuals based on their race/national origin, Hispanic." FAC ¶¶ 65-79. Plaintiffs fail to allege that they never raised the issue of gender discrimination with the EEOC in making their complaints. Moreover, although they argue that the FAC

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4704407 (N.D.Cal.)
(Cite as: 2010 WL 4704407 (N.D.Cal.))

alleges Middle Eastern men were treated differently, they fail to offer support for the proposition that " 'the original EEOC investigation would have encompassed the additional charges' made in the court complaint but not included in the EEOC charge itself." *Sosa*, 920 F.2d at 1456 (citing *Green v. Los Angeles County Superintendent of Sch.*, 883 F.2d 1472, 1480 (9th Cir.1989)). Indeed, while the gender-based claims involve alleged discrimination by Middle Eastern men against Hispanic women, four of the named plaintiffs are themselves men. Gender and national origin represent two separate theories of discrimination, and the fact that here each allegedly flowed from the same factual scenario does not make the allegations relative to gender "like or reasonably related to" the charges of national origin-based discrimination made before the EEOC. The two claims involve different kinds of alleged discrimination, and investigation into one claim would not likely lead to investigation of the other. Therefore, to the extent the second and third claims for relief are based upon alleged gender discrimination, plaintiffs have failed to exhaust their administrative remedies and the claims must be dismissed without leave to amend.

B. *Claims Based Upon National Origin Discrimination*

Under Title VII, it is unlawful "for a labor organization: (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his ... national origin; (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's ... national origin; or (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section." 42 U.S.C.2000e-2(c). Similarly, labor organizations may not "discriminate against any individual because of his ... national origin in admission to, or employment in, any program established to provide apprenticeship or other training." 42 U.S.C. § 2000e-2(d). In Title VII cases, "Courts have recognized two bases on which plaintiffs may proceed: disparate treatment and disparate impact." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 853 (9th Cir.2000) (citing *International*

*Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). Disparate treatment arises when an employer or labor union "treats some people less favorably than others because of their ... national origin," while disparate impact means that a practice is "facially neutral ... but ... in fact fall[s] more harshly on one group than another." *Id.*[FN1]

> FN1. Title VII is the federal counterpart to FEHA, and courts may look to federal authority regarding Title VII and similar civil rights statutes when interpreting statutory provisions of that state statute. *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 n. 4 (9th Cir.2001) (citing *Mora v. ChemTronics, Inc.*, 16 F.Supp.2d 1192, 1201 (S.D.Cal.1998); *Yurick*, 209 Cal.App.3d at 1121, 257 Cal.Rptr. 665; *Baker v. Children's Hosp. Med. Ctr.*, 209 Cal.App.3d 1057, 1063, 257 Cal.Rptr. 768 (1989).

*5 Here, although the FAC alleges that Local 87's conduct has had a "disparate impact on Hispanic and female members," plaintiffs point to no facially neutral practice that more harshly impacts them than it does other groups. Indeed, at oral argument counsel for plaintiffs clarified that this case involves only disparate treatment. Therefore, to the extent the FAC alleges disparate impact, the motion to dismiss is granted without leave to amend.

As to the claims based upon disparate treatment, however, plaintiffs have alleged sufficient facts to satisfy the pleading requirements of FRCP Rule 8. Contrary to defendants' assertions otherwise, plaintiffs' allegations need not be the "more plausible" explanation of the facts, nor must they specify the "who, what, where, when, and how" of the charged conduct; such heightened pleading requirements are reserved for FRCP Rule 9(b) and allegations sounding in fraud. See *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997). Rather than provide detailed factual allegations, then, plaintiffs must simply state a claim that "is plausible on its face," meaning only that the FAC's averments allow the Court "to draw the reasonable inference that the defendant [s are] liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Here, the FAC alleges a pattern of discrimination against Hispanic members of Local 87 beginning in or around 2005. In support of these allegations, the FAC makes

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4704407 (N.D.Cal.)
**(Cite as: 2010 WL 4704407 (N.D.Cal.))**

general averments, such as the union's failure to en-
force the seniority rules for Hispanic members or its
refusal to pursue grievances against employers on
behalf of those members, as well as specific aver-
ments, such as specific actions taken against the
named plaintiffs and discriminatory comments made
by the union president and vice-president. Accepting
the FAC's material allegations as true, then, plaintiffs
have presented a cognizable legal theory as well as
sufficient factual allegations to state a plausible claim
for relief for violations of Title VII and the FEHA. *See
id.* Therefore, to the extent the motion to dismiss tar-
gets plaintiffs' allegations of national origin-based
discrimination, it must be denied.

### C. *More Definite Statement*

As stated above, while a party may move for a more
definite statement in response to a vague or ambiguous
pleading, such motions are disfavored and are "proper
only where the complaint is so indefinite that the
defendant cannot ascertain the nature of the claim
being asserted." *Bender,* 2010 WL 889541 at *2. A
more definite statement is not warranted under the
circumstances here. While defendants maintain that
the FAC is "devoid of any factual support," the detail
with which the motion to dismiss itself summarizes
the complaint's allegations indicates that the FAC does
include sufficient factual particularity such that it is
neither vague nor ambiguous. Indeed, the FAC in-
cludes both general averments as to the union's beha-
vior as well as specific allegations as to actions taken
against the named plaintiffs. Therefore, the motion for
a more definite statement must be denied.

### D. *Doe Defendants*

*6 The use of "Doe" defendants is generally disfa-
vored in federal court. *See Gillespie,* 629 F.2d at 642.
While plaintiff should be given an opportunity
through discovery to identify any unknown defendants
who could not be known before the filing of the
complaint, plaintiffs have presented no plausible
reason why denying the use of Doe defendants would
prejudice them in any way here. *Id.* The Doe defen-
dants are, therefore, dismissed from this action with-
out prejudice. Should plaintiffs learn the identity of
any Doe defendants through discovery, they may
move to file an amendment to the complaint to add
those individuals as named defendants. *See Brass v.
County of Los Angeles,* 328 F.3d 1192, 1195-98 (9th

Cir.2003).

### E. *Class Claims*

Although defendants do not separately move the Court
to deny plaintiffs' class claims, peppered throughout
the motion to dismiss are arguments that plaintiffs'
allegations are too dissimilar and too insufficiently
pled for plaintiffs properly to represent a class. While
rarely courts have granted **motions to strike class
allegations** at the pleading stage when it is clear that
no class action can be certified, *see Sanders v. Apple
Inc.,* 672 F.Supp.2d 978, 990 (N.D.Cal., 2009), the
arguments raised by defendants are more appro-
priately addressed during a motion for **class certifi-
cation** under FRCP Rule 23 than through a motion to
dismiss under FRCP Rule 12(b). Therefore, defen-
dants' request to deny class certification must be de-
nied without prejudice.

### F. *Conclusion*

For the reasons stated above, the motion to dismiss is
granted without leave to amend to the extent it is based
upon plaintiffs' allegations of gender-based discrimi-
nation and is denied to the extent it is based upon
plaintiffs' allegations of national origin-based dis-
crimination. The motion for a more definite statement
is denied. The request to dismiss plaintiffs' class
claims is denied without prejudice, as is the motion to
dismiss the Doe defendants.

IT IS SO ORDERED.

N.D.Cal.,2010.
Gomez v. Service Employees Intern. Union Local 87
Slip Copy, 2010 WL 4704407 (N.D.Cal.)

**END OF DOCUMENT**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2010 WL 4817990 (S.D.Cal.)
(Cite as: 2010 WL 4817990 (S.D.Cal.))

**H**Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
David TOURGEMAN, Plaintiff,
v.
COLLINS FINANCIAL SERVICES, INC.; Nelson &
Kennard; Dell Financial Services, L.P.; et al., Defendants.
No. 08-CV-1392 JLS (NLS).

Nov. 22, 2010.

Brett M. Weaver, Derek J. Wilson, Francis A. Bottini,
Frank J. Johnson, Jr., Keith M. Cochran, Johnson
Bottini, LLP, Daniel Peter Murphy, Law Offices of
Daniel P. Murphy, San Diego, CA, for Plaintiff.

Jeffrey Alan Topor, Tomio B. Narita, Arvin Cero
Lugay, Michael R. Simmonds, Robin M. Bowen,
Simmonds & Narita LLP, San Francisco, CA, for
Defendants.

**ORDER: (1) GRANTING PLAINTIFF'S EX
PARTE APPLICATION TO STRIKE ERIN
TOWNS'S DEPOSITION TESTIMONY AND (2)
GRANTING PLAINTIFF'S MOTION FOR
LEAVE TO FILE A THIRD AMENDED COM-
PLAINT**

JANIS L. SAMMARTINO, District Judge.

*1 Presently before the Court is Plaintiff's motion for
leave to file a third amended complaint. (Doc. No.
125; see Doc. No. 125-1 (Mem. ISO Mot. to Amend).)
Also before the Court are Defendants Collins Finan-
cial Services (Collins) and Nelson & Kennard's (N &
K) notice of non-opposition (Doc. No. 133), Defen-
dant Dell Financial Services' (DFS) opposition (Doc.
Nos. 135 (Opp'n to Mot. to Amend)), and Plaintiff's
reply (Doc. No. 138 (Reply)). Plaintiff has also moved
ex parte to strike portions of Erin Towns's deposition
errata sheet, which DFS relies upon in opposition to
Plaintiff's motion for leave to amend. (Doc. No. 141
(Mem. ISO Mot. to Strike).) DFS opposes Plaintiff's
ex parte application. (Doc. No. 150 (Opp'n to Mot. to
Strike).) Having reviewed the parties' arguments and

the law, the Court **GRANTS** Plaintiff's ex parte ap-
plication to strike and **GRANTS** Plaintiff's motion for
leave to amend.

## BACKGROUND

On July 31, 2008, Plaintiff filed a complaint against,
inter alia, Collins, N & K, and DFS alleging violations
of the Fair Debt Collection Practices Act (FDCPA)
and California Rosenthal Act, invasion of privacy, and
negligence. (Doc. No. 1 (Compl.).) On April 6, 2009,
Plaintiff amended his complaint to add class allega-
tions and a claim for violation of California Business
and Professions Code § 17200 (UCL claim). (Doc.
No. 34(FAC).) Plaintiff amended his complaint again
on August 27, 2009 to, inter alia, tether its UCL claim
to alleged violations of the FDCPA and Rosenthal
Act. (Doc. No. 60(SAC); see also Doc. No. 58, at
11-12 (dismissing without prejudice Plaintiff's UCL
claim against DFS for failure to state specific provi-
sions of the FDCPA or Rosenthal Act that DFS alle-
gedly violated to trigger UCL).)

More than a year later, on October 4, 2010, Plaintiff
filed the present motion for leave to amend to change
the proposed class definition, allege additional facts,
and add defendants.[FN1] (See Mem. ISO Mot. to Amend
1; see also Doc. No. 137-1 (Proposed TAC).) Plaintiff
wishes to allege newly discovered facts regarding
DFS' alleged sale of nonexistent debts to Collins.
(Mem. ISO Mot. to Amend 3-4; see Proposed TAC ¶¶
20-22.) Plaintiff also wishes to join as defendants
Collins Financial Services USA, Inc. (Collins USA)
and Paragon Way, Inc., which Plaintiff claims are alter
egos of Collins. (Mem. ISO Mot. to Amend 4-5; see
Proposed TAC ¶¶ 7-8.) Finally, Plaintiff wishes to
amend its class allegations to incorporate newly dis-
covered facts. (See Proposed TAC ¶¶ 35-53.)

> FN1. The most recent scheduling order to
> address the issue set a January 5, 2009 dead-
> line for motions to join parties and amend the
> pleadings. (Doc. No. 77, at 1.)

## DISCUSSION

**1. Motion to Strike Portions of Erin Towns's Er-**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 4817990 (S.D.Cal.)
(Cite as: 2010 WL 4817990 (S.D.Cal.))

rata Sheet

Plaintiff's motion for leave to amend depends, at least in part, on Ms. Towns's deposition errata sheet. *(See* Opp'n to Mot. to Amend 5-6, 13.) Accordingly, the Court first addresses Plaintiff's motion to strike portions of that errata sheet.

On September 8, 2010, Plaintiff deposed Ms. Towns, DFS' "senior recovery manager," in Austin, Texas. (Mem. ISO Mot. to Strike 1; *see* Doc. No. 147-1 (Towns Dep.).) [FN2] During the deposition, Ms. Towns testified that loans DFS sold to Collins consisted entirely of loans originated by CIT Online Bank (CIT). *(E.g.,* Towns Dep. 56:21-57:2; 84:19-23.) On October 3, 2010-the day before Plaintiff moved to amend his complaint-Ms. Towns submitted an errata sheet purporting to correct the original deposition transcript. (Doc. No. 147-2 (Errata Sheet).) The changes range from corrections of transcription errors to outright contradictions. *(See id.)* Relevant here, Ms. Towns changed her testimony to say that CIT, DFS, and American Investment Bank originated the loans DFS sold to Collins, rather than just CIT. *(Compare, e.g.,* Towns Dep. 56:19-21 ("[Question:] To your knowledge, were any debts besides those originated by CIT included in this portfolio? [Answer:] My understanding, they were CIT loans."), *with* Errata Sheet 1 ([Page/Line:] 56:21 [Change & Reason:] "To my understanding it consisted of AIB, CIT[,] and DFS loans.").)

> FN2. The Court's citations to Plaintiff's memorandum in support of its application to strike portions of Ms. Towns's deposition testimony and the exhibits thereto refer to the unredacted application filed under seal. *(See* Doc. No. 140 (Plaintiff's motion to file portions of application under seal); Doc. No. 142 (Order granting Plaintiff's motion to file portions of application under seal); Doc. No. 147 (unredacted version of application).) A redacted version of the application is available at docket number 141.

*2 Federal Rule of Civil Procedure 30(e) allows changes to deposition testimony "in form or substance" if made within thirty days of being notified that the transcript is available and accompanied by a statement of the reasons for making them. [FN3] Although the Rule, by its terms, allows changes "in form

or substance," Fed.R.Civ.P. 30(e)(1)(B), Ninth Circuit authority limits the Rule's application to "corrective, and not contradictory, changes," *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.,* 397 F.3d 1217, 1226 (9th Cir.2005). "The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses.... A deposition is not a take home examination." *Garcia v. Pueblo Country Club,* 299 F.3d 1233, 1242 n. 5 (10th Cir.2002) (quoting *Greenway v. Int'l Paper Co.,* 144 F.R.D. 322, 325 (W.D.La.1992)); *accord Bartos v. Pennsylvania,* 2010 WL 1657284, at *5-6 (M.D.Pa. Apr.23, 2010); *Citgo Petroleum Corp. v. Ranger Enters., Inc.,* 632 F.Supp.2d 878, 883-84 (W.D.Wis.2009); *Wyeth v. Lupin Ltd.,* 252 F.R.D. 295, 296-97 (D.Md.2008); *Donald M. Durkin Contracting, Inc. v. City of Newark,* 2006 WL 2724882, at *5 (D.Del. Sept.22, 2006); *Adams v. Allied Sec. Holdings,* 236 F.R.D. 651, 652 (C.D.Cal.2006).

> FN3. Rule 30(e)(1) provides:
>
> > On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in the form or substance, to sign a statement listing the changes and the reasons for making them.
>
> Fed.R.Civ.P. 30(e)(1).

Further, Rule 30(e) requires that any changes to deposition testimony be accompanied by a statement of reasons explaining the changes. Fed.R.Civ.P. 30(e)(1)(B); *accord Hambleton Bros.,* 397 F.3d at 1224. Courts insist on strict compliance with Rule 30(e)'s technical requirements, including the requirement of a statement of reasons. *Hambleton Bros.,* 397 F.3d at 1224-26; *Bartos,* 2010 WL 1657284, at *5 (collecting cases); *Brokaw v. Qualcomm, Inc.,* 2003 U.S. Dist. LEXIS 26519, at *26 (S.D.Cal. Mar. 4, 2003); *Holland v. Cedar Creek Mining,* 198 F.R.D. 651, 653 (S.D.W.Va.2001). Without a statement of reasons, a reviewing court cannot determine "whether the alterations have a legitimate purpose." *Hambleton Bros.,* 397 F.3d at 1224-25.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4817990 (S.D.Cal.)
**(Cite as: 2010 WL 4817990 (S.D.Cal.))**

Having analyzed Ms. Towns's proposed changes, it is apparent that her errata sheet runs afoul of Rule 30(e)'s procedural and substantive requirements. First, as a procedural matter, the errata sheet is not accompanied by a statement of reasons explaining the changes.<u>FN4</u> This alone justifies striking the errata sheet.<u>FN5</u> *See, e.g., Hambleton Bros.,* 397 F.3d at 1224-26. Second and more troubling is the substance of Ms. Towns's changes. Although some of the changes merely correct typographical errors (*see* Errata Sheet 1), others directly contradict Ms. Towns's sworn deposition testimony (*see* Mem. ISO Mot. to Strike 2-3 (summarizing contradictory changes)). Changing "yes" to "no" and "correct" to "no not correct" are paradigmatic examples contradiction, rather than correction. *Hambleton Bros.,* 397 F.3d at 1226. Contradiction is not a proper use of an errata sheet.

> FN4. Ms. Towns arguably does explain some of her changes inasmuch as her errata sheet identifies "Typo[s]" in the original transcription. (*See* Errata Sheet 1.) However, Ms. Towns does not attempt to justify the contradictory changes that Plaintiff and the Court are concerned with here.

> FN5. DFS' statement that it "is willing to provide an errata sheet delineating the reason for Ms. Towns'[s] corrections" is unavailing. (Opp'n to Mot. to Strike 6.) Rule 30(e) required DFS to submit a statement of reasons along with the original errata sheet, and the time for submitting a statement of reasons has since elapsed. *See* Fed.R.Civ.P. 30(e)(1) (allowing deponent thirty days to submit corrections); Errata Sheet 2 (dated October 3, 2010); *see also Blackthorne v. Posner,* 883 F.Supp. 1443, 1454 n. 16 (D.Or.1995) (excluding untimely errata sheet).

*3 DFS' arguments in opposition to Plaintiff's motion to strike are thoroughly unavailing. First, DFS contends that the Court may strike an errata sheet under *Hambleton Brothers* only if the deponent attempts to use the errata sheet to manufacture a genuine issue of material fact to defeat summary judgment. (Opp'n to Mot. to Strike 3.) Thus, DFS contends, the Court should not strike Ms. Towns's errata sheet because "[n]o dispositive motion is presently on file." (*Id.*) The Court, however, does not read *Hambleton Brothers* so narrowly. Courts strike errata sheets in contexts

beyond summary judgment. *See, e.g., Bartos,* 2010 WL 1657284, at *8 (striking errata sheets for all purposes); *Wyeth,* 252 F.R.D. at 295 (precluding use of errata sheet at trial). The Court sees DFS' reliance on Ms. Towns's errata sheet in opposition to Plaintiff's motion for leave to amend as analogous to the use of a contradictory errata sheet to create a factual dispute to defeat summary judgment. (*See* Opp'n to Mot. to Amend 5 (arguing that "the facts refute" that CIT originated all of the loans DFS sold to Collins and citing Ms. Towns's errata sheet); *id.* at 13 (arguing that "[t]he accounts sold to Collins included accounts from CIT, AIB, and DFS" and citing Ms. Towns's errata sheet).) Accordingly, the Court agrees with Plaintiff that *Hambleton Brothers* controls.

Second, DFS contends that the Court should not strike Ms. Towns's errata sheet because witness and documentary evidence corroborates Ms. Towns's changes to her deposition testimony. (Opp'n to Mot. to Strike 4-5.) Whether or not DFS is correct, this argument misses the point. DFS chose Ms. Towns as its Rule 30(b)(6) designee and should have prepared her accordingly. (*See id.* at 2 (noting that DFS designated Ms. Towns to speak to DFS' business relationship with Collins, CIT, and AIB).) DFS produced documents during Ms. Towns's deposition-documents that DFS contends corroborate Ms. Towns's errata sheet changes-that Ms. Towns should have reviewed. (*Id.* at 5; Doc. No. 150-1 (Ammerman Decl. in Opp'n to Mot. to Strike) Ex. B.) DFS had an opportunity to cross examine Ms. Towns to clear up any inaccuracies. *See* Fed.R.Civ.P. 30(c)(1). To allow the proposed changes now would undermine the Rule 30(b)(6) deposition and convert it to a "take home examination." *Greenway,* 144 F.R.D. at 325.

Third, DFS contends that Plaintiff's requested relief-striking the contradictory portions of Ms. Towns's errata sheet-is not necessary because Plaintiff can impeach Ms. Towns using her original deposition testimony. (Opp'n to Mot. to Strike 6.) But the Court does not see why DFS should suffer no penalty for its misuse of Rule 30(e). Contrary to DFS' apparent suggestion, it will not lose its only bite at the apple if the Court disallows the contradictory portions of Ms. Towns's errata sheet. DFS may, consistent with the rules of procedure and rules of evidence, present to the trier of fact the changes and additions that DFS seeks to make to Ms. Towns's testimony through the errata sheet. Further, imposing no remedy at all for DFS'

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4817990 (S.D.Cal.)
(Cite as: 2010 WL 4817990 (S.D.Cal.))

clearly improper use of an errata sheet would render null Rule 30(e)'s procedural and substantive requirements.

*4 Accordingly, Plaintiff's motion to strike is **GRANTED.** The Court **STRIKES** and deems inadmissible for all further proceedings the following portions of Ms. Towns's errata sheet: 56:21, 56:23, 57:2, 84:9, 84:13-14, 84:17-18, 84:21, 84:23, and 105:9.

## 2. Motion for Leave to File a Third Amended Complaint

### A. Legal Standard

Leave to amend the complaint should be freely given "when justice so requires." Fed.R.Civ.P. 15(a)(2). But while Rule 15 should be interpreted liberally, leave to amend should not be granted automatically. _Jackson v. Bank of Haw._, 902 F.2d 1385, 1387 (9th Cir.1990). A trial court may deny leave to amend if permitting an amendment "would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit." _Id._

If there is a deadline for amendment set by a scheduling order, and the deadline has passed, an amendment to the pleadings requires that the scheduling order be modified. _Coleman v. Quaker Oats Co._, 232 F.3d 1271, 1294 (9th Cir.2000). The scheduling order may be modified by leave of court on a showing of good cause and with the judge's consent. Fed.R.Civ.P. 16(b)(4).

### B. Analysis

Plaintiff's proposed amendments to the complaint are purportedly the products of information disclosed during recent depositions. (Mem. ISO Mot. to Amend 2-5; Doc. No. 125-2 (Weaver Decl. ISO Mot. to Amend) ¶¶ 2-5.) The Court addresses each category of proposed amendments in turn.

### (1) Additional Facts

Plaintiff wishes to allege additional facts relating to his recent discovery that CIT Online Bank was the creditor on 85,292 allegedly unpaid accounts that DFS sold to Collins, Plaintiff's among them. (Mem. ISO Mot. to Amend 1, 3-4; _see_ Proposed TAC ¶¶ 21-22, 36-37.) Plaintiff also wishes to allege facts regarding DFS' alleged creation of "10,000 American Investment Bank loan agreements that did not actually exist." (Mem. ISO Mot. to Amend 4; _see_ Proposed TAC ¶ 36.)

DFS, for its part, asserts that "the new allegations are not new information" (Opp'n to Mot. to Amend 3, 11-13) and that it will be unduly prejudiced by an amendment alleging additional facts (_id._ at 3-4, 9-11). DFS also contends that the allegations in the Proposed TAC are futile. (_Id._ at 13-19.)

### (a) Undue Delay

DFS' contention that the new allegations are not new information appears to be premised upon the fact that Plaintiff's FAC dismissed AIB and named CIT as a defendant. (Opp'n to Mot. to Amend 12.) At that time, however, Plaintiff believed that "[Collins' and N & K's] naming of the wrong original creditor was an isolated incident that resulted from [their] lack of meaningful involvement in the collection of debts." (Reply 2.) Until Ms. Towns's deposition, Plaintiff had no reason to believe that Collins' and N & K's naming of the wrong creditor resulted from DFS' alleged creation of 10,000 AIB accounts that never actually existed. (_See_ Weaver Decl. ISO Mot. to Amend ¶ 5.) Accordingly, DFS' contention that "Plaintiff has known about the AIB/CIT mix up since at least January 2009" lacks merit. (Opp'n to Mot. to Amend 3.)

*5 Nor is the Court persuaded that Plaintiff's recent discovery of the subject information resulted from undue delay. DFS contends that Plaintiff delayed in taking Ms. Towns's deposition "because Plaintiff was in a discovery dispute with Collins and N & K, not with DFS." (Opp'n to Mot. to Amend 12.) The facts do not bear DFS' contention out. As Plaintiff's counsel's declaration summarizes, Plaintiff's multiple postponements of DFS' deposition largely resulted from DFS' refusals to respond to written discovery.[FN6] (_See_ Doc. No. 138-1 (Weaver Decl. ISO Reply) ¶¶ 2-5.) Plaintiff did not act unreasonably in waiting to conduct DFS' deposition until DFS responded to written discovery.

> FN6. In summary, Plaintiff propounded its first set of written discovery on DFS and originally noticed DFS' deposition in April

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4817990 (S.D.Cal.)
(Cite as: 2010 WL 4817990 (S.D.Cal.))

2009. (Weaver Decl. ISO Reply ¶¶ 2, 3.) DFS generally refused to respond to written discovery while dispositive motions were pending. (*Id.* ¶ 2.) Accordingly, Plaintiff had to postpone DFS' deposition. (*Id.* ¶ 3.) On November 23, 2009, the Court granted in part and denied in part DFS' motion to dismiss and denied Defendants' motions for summary judgment. (Doc. Nos.89, 90.) Plaintiff then asked DFS to supplement its discovery responses and re-noticed its deposition for late January 2010. (Weaver Decl. ISO Reply ¶ 2.) As of January 14, 2010, DFS had not responded to Plaintiff's discovery requests, and Plaintiff was again forced to postpone DFS' deposition. (*Id.* ¶ 3 & Ex. 1.) In April 2010, Plaintiff propounded a second set of discovery requests on DFS. (*Id.* ¶ 4.) After the parties met and conferred, DFS produced documents and supplemented its discovery responses in June 2010 and July 2010, respectively. (*Id.*) With those documents and responses in hand, Plaintiff re-noticed DFS' deposition for September 2010. (*Id.* at ¶ 5.)

(b) Prejudice

DFS also argues that Plaintiff's proposed amendments would prejudice DFS because "Plaintiff's proposed amendments are tantamount to bringing a new class action lawsuit." (Opp'n to Mot. to Amend 9.) The Court disagrees. Plaintiff has long contended that DFS sold inaccurate account information to Collins. (*See, e.g.,* FAC ¶ 24 ("As a result of its failure to process payments properly, Defendants [DFS] and CIT falsely indicated the existence of an alleged debt by Plaintiff, which alleged debt Defendants [DFS] and/or CIT subsequently sold to Defendant Collins....").) Plaintiff's proposed amendments simply allege newly discovered facts that explain *why* DFS sold inaccurate account information to Collins. (*See* Proposed TAC ¶¶ 20-22, 35-36.) Notably, Plaintiff does not seek to allege any new causes of action. *Cf. Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990) (affirming denial of motion for leave to amend to add claim under Racketeer Influenced and Corrupt Organizations Act). Accordingly, the Court is not convinced that allowing Plaintiff's proposed amendments would "greatly alter[ ] the nature of the litigation." *Id.*

DFS also notes that Plaintiff's motion for leave to amend "comes on the eve of the discovery cut-off[,] leaving Defendants without the time or allowable written discovery available to inquire into this new case." (*Id.* at 10.) Courts do not look favorably on motions for leave to amend made at or near the close of discovery. *See, e. g., Solomon v. North Am. Life & Cas. Ins. Co.,* 151 F.3d 1132, 1139 (9th Cir.1998). Here, however, the late hour of Plaintiff's motion for leave to amend does not reflect a lack of diligence on Plaintiff's part. Rather, it was DFS' obstreperousness in discovery that prevented Plaintiff from learning the facts that give rise to his proposed amendments. This fact warrants an exercise of discretion in Plaintiff's favor.[FN7]

> FN7. Nevertheless, the Court will permit a limited extension of the discovery deadline and pretrial dates to allow the parties to conduct additional discovery on Plaintiff's new allegations.

(c) Futility of Amendment

DFS also argues that the Court should deny Plaintiff leave to amend because the Proposed TAC's allegations are futile. (*See* Opp'n to Mot. to Amend 13-19.) "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988).

*6 First, DFS argues that amendment of Plaintiff's negligence claim would be futile because DFS owed Plaintiff no independent duty of care. (Opp'n to Mot. to Amend 16-17.) At this stage and with limited briefing, the Court is reluctant to hold as a matter of law that DFS owed Plaintiff no duty of care. Plaintiff cites persuasive authority suggesting that DFS, as a creditor, owed Plaintiff, its customer and debtor, "a duty of reasonable care in the handling of his account, which includes the collection of his debt." *Colo. Capital v. Owens,* 227 F.R.D. 181, 188 (E.D.N.Y.2005). Accordingly, the Court cannot conclude that amendment of Plaintiff's negligence claim would be clearly futile.

Second, DFS argues that Plaintiff's amended negligence claim would be time-barred. (Opp'n to Mot. to Amend 17-19.) The Court disposed of DFS' statute of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4817990 (S.D.Cal.)
(Cite as: 2010 WL 4817990 (S.D.Cal.))

limitations defense in ruling on DFS' motion to dismiss Plaintiff's FAC:

> Based on the facts as Plaintiff alleges them, the first time he reasonably could [have] become aware that his debt had been mismanaged by DFS was when the state collection action was filed against him in 2007. Since Plaintiff filed the instant action in mid-2008, the two[-]year statute of limitations on his negligence claim had yet to run.

(Doc. No. 58, at 14.) The same holds true here. (*See* Proposed TAC ¶ 29.) DFS' argument to the contrary demonstrates remarkable bad faith.

DFS also contends that the Proposed TAC's allegations do not relate back to the original complaint. "The relation-back doctrine requires that the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original complaint." *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 981 P.2d 79, 96 (Cal.1999). As discussed above, Plaintiff has long contended that DFS sold inaccurate account information to Collins and that Plaintiff suffered injury from DFS' sale of inaccurate account information. (*See* FAC ¶ 24.) The Proposed TAC's allegations do not materially differ in this respect. Accordingly, the proposed amendments relate back.

Third, DFS argues that Plaintiff lacks standing to bring a claim under California Business and Professions Code section 17200 (the UCL) because Plaintiff is a resident of Mexico. (Opp'n to Mot. to Amend 19.) "[S]ection 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California." *Churchill Vill., LLC v. Gen. Elec. Co.,* 169 F.Supp.2d 1119, 1126 (N.D.Cal.2000). Here, Plaintiff's claim unquestionably has a nexus with California-Plaintiff alleges that (1) his computer was shipped to a California address, (2) DFS provided Collins with a California address for Plaintiff, (3) Defendants sent letters to Plaintiff at California addresses, (4) N & K filed suit against Plaintiff in California state court, and (5) N & K served process on Plaintiff's father in California. (Proposed TAC ¶¶ 16, 24, 27, 29, 31.) Plaintiff also proffers evidence that "California was 'in the top five' when it came to the number of alleged debtors in the debt portfolio DFS sold to Collins." (Weaver Decl.

ISO Reply ¶ 8.) Accordingly, the Court is unconvinced that "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim" under the UCL.[FN8] *Miller,* 845 F.2d at 214; *see Keilholtz v. Lennox Hearth Prods. Inc.,* 268 F.R.D. 330, 339-40 (N.D.Cal.2010) (applying UCL where nineteen percent of defendant's sales occurred in California, seventy-six percent of defendant's products were partially manufactured in California, and three percent of defendant's products were manufactured exclusively in California).

> FN8. DFS' cited authorities do not convince the Court otherwise. *See Churchill Vill.,* 169 F.Supp.2d at 1126-27; *Norwest Mortg.., Inc. v. Superior Court,* 72 Cal.App.4th 214, 85 Cal.Rptr.2d 18, 23-25 (Cal.Ct.App.1999). In *Churchill Village,* the court held that in-state sales alone did not establish a nexus with California because only ten percent of the defendant's total sales occurred in California. 169 F.Supp.2d at 1127. In *Norwest Mortgage,* the court held the UCL inapplicable to non-California residents for whom the Defendant's conduct occurred in states other than California. 85 Cal.Rptr. at 23-25, 466 P.2d 244. DFS has given the Court no reason to believe Plaintiff can prove no set of facts that would establish his and the class members' standing to pursue claims under the UCL.

### (2) Joinder of Collins USA and Paragon Way

*7 Federal Rules of Civil Procedure 19 and 20 govern who may be joined as a party. Rule 20(a)(2) allows for the permissive joinder of defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a)(2).

Plaintiff proposes to join Collins USA and Paragon Way as defendants because newly discovered facts suggest that the proposed defendants are alter egos of Collins. (Mem. ISO Mot. to Amend 4-5; Weaver Decl. ISO Mot. to Amend ¶ 5.) Notably, Collins does not oppose the proposed amendment. (Doc. No. 133.) DFS, in a footnote, contends that "the additions of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4817990 (S.D.Cal.)
(Cite as: 2010 WL 4817990 (S.D.Cal.))

Collins USA and Paragon Way adds nothing to the Complaint. If what Plaintiff alleges is true, that these entities are alter egos of the already existing Defendant Collins ..., adding these defendants is a sham." (Opp'n to Mot. to Amend 13 n.1.)

Based upon the facts Plaintiff cites in support of the alleged alter ego relationship and the Proposed TAC's allegations, the Court finds that Collins USA and Paragon Way can be properly joined as defendants in this action. (*See* Weaver Decl. ISO Mot. to Amend ¶ 5 & Ex. C; Proposed TAC ¶¶ 7-9, 13, 15; Fed R. Civ. P. 20(a) (2).) Plaintiff's claims against Collins USA and Paragon Way arise from the same series of transactions as its claims against Collins, N & K, and DFS-DFS' sale of charged off debts to Collins and Collins' attempt to collect on those debts. (*See* Compl. ¶¶ 9, 13, 15.) Plaintiff's claims will require the Court to determine whether Defendants' actions violated California and federal law. Joinder of Collins USA and Paragon Way is therefore permissible.[FN9]

> FN9. The Court also gives great weight to the acquiescence of Collins, which presumably has the most to lose from Collins USA and Paragon Way's joinder. (*See* Doc. No. 133.) As to DFS' unsupported, two-sentence opposition to the proposed defendants' joinder, the Court can neither conceive of a legitimate reason for DFS to oppose the joinder of Collins USA and Paragon Way nor understand why these companies statuses as Collins' alter egos renders their joinder a "sham."

*(3) Class Definitions*

Finally, DFS argues that "the class definitions in the [Proposed TAC] are incomprehensible, overbroad, and have no nexus whatsoever with the alleged wrongdoing by DFS." (Opp'n to Mot. to Amend 15.) Class allegations are rarely tested at the pleading stage. *Gillibeau v. City of Richmond,* 417 F.2d 426, 432 (9th Cir.1969). Rather, Courts test **class allegations** through a motion for **class certification**. *In re Wal-Mart Stores, Inc. Wage & Hour Litig.,* 505 F.Supp.2d 609, 615 (N.D.Cal.2007). As to the Court stated in its order denying DFS' motion to dismiss Plaintiff's FAC:

> District courts must take a "close look" at the claims and evidence to determine the validity of a class

certification. A separate hearing to determine class certification thus respects the language of the [Federal Rules of Civil Procedure] and precedents of the Supreme Court and Ninth Circuit, as well as the value of class action litigation.

(Doc. No. 58, at 14 (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)) (citation omitted).) DFS' challenge to the class definitions in the Proposed TAC is therefore premature. DFS may challenge the **class allegations** at the **class certification** stage.

## CONCLUSION

*8 For the reasons stated, Plaintiff's ex parte application to strike Ms. Towns's errata sheet is **GRANTED**. (Doc. No. 141.) Plaintiff's motion for leave to file a third amended complaint is also **GRANTED**, and the scheduling order is **MODIFIED** accordingly. (Doc. No. 125.) Plaintiff shall file his third amended complaint *within seven days of the date that this Order is electronically docketed. Within seven days of the date Plaintiff files his amended complaint,* the parties **SHALL SUBMIT** to Judge Stormes a joint motion to extend the pretrial dates to accommodate a limited reopening of discovery to investigate Plaintiff's new allegations.

IT IS SO ORDERED.

S.D.Cal.,2010.
Tourgeman v. Collins Financial Services, Inc.
Slip Copy, 2010 WL 4817990 (S.D.Cal.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2010 WL 4852200 (W.D.Wash.)
(Cite as: 2010 WL 4852200 (W.D.Wash.))

Only the Westlaw citation is currently available.

United States District Court, W.D. Washington,
at Tacoma.
Harold and Sally DEGENHART, Plaintiffs,
v.
AIU HOLDINGS, INC., (f/k/a AIG), presently known
as Chartis, Inc.; and AIU Insurance Company, De-
fendants.
No. C10-5172RBL.

Nov. 26, 2010.

ORDER REGARDING DEFENDANTS' MOTION
TO DISMISS AND/OR STRIKE PLEADING
PURSUANT TO FED. R. CIV. P. 12

RONALD B. LEIGHTON, District Judge.

**\*1** THIS MATTER comes before the Court on dual
motions to dismiss various claims in the Complaint
pursuant to Fed.R.Civ.P. 12. The first motion seeks a
dismissal of the Class Action Complaint [Dkt. # 28]
citing lack of standing and failure to state a claim
under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The second
motion asks the Court to strike Class Allegations
pursuant to Fed.R.Civ.P. 12(f) [Dkt. # 29]. The Court
has reviewed the materials for and against the motion
and has heard oral argument of counsel. For the rea-
sons that follow, the motions are **GRANTED IN
PART AND DENIED IN PART.**

*FACTS*

On October 30, 2007, plaintiffs' vehicle was damaged
in a collision with an uninsured motorist. The estimate
to repair the vehicle was $14,924.94. Plaintiffs' in-
surance policy issued by AIU Insurance included
coverage for property damage caused by an underin-
sured motorist (UIM). A claim was made to AIU and
AIU paid the cost of the repairs under the UIM pro-
visions of the policy. Shortly thereafter plaintiffs filed
this lawsuit, claiming that their vehicle suffered "di-
minished value" as a result of the accident and that the
AIU policy entitles plaintiffs to be compensated for
such damage. They seek to represent a nationwide
class of all AIU Insurance insureds who allegedly

were not paid for "diminished value" following
physical damage to their vehicles caused by underin-
sured motorists. Plaintiffs assert claims for (1) breach
of their insurance contract, (2) declaratory relief, and
(3) injunctive relief.

*ANALYSIS*

**I. Plaintiffs Lack Standing to Sue Defendant
Chartis.**

To establish Article III standing, plaintiffs must show
that they (1) suffered an injury in fact that is (2) fairly
traceable to the alleged conduct of the defendant, and
that is (3) likely to be redressed by a favorable deci-
sion. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,
560-61 (1992). In their complaint, plaintiffs asserted
claims against AIU Holdings, Inc. (formerly known as
AIG), presently known as Chartis, Inc. and AIU In-
surance Company. The company that issued the sub-
ject policy, evaluated the subject claim, and paid for
the repairs was AIU, not Chartis. Chartis is a holding
company and plaintiffs make no claim in their com-
plaint that Chartis participated in the decisions, or in
setting policies leading to the decisions, allegedly
causing plaintiffs' injury. In the absence of such an
allegation, plaintiffs cannot fairly argue that their
injuries are fairly traceable to any conduct of Chartis.
Similarly, because there is no dispute (claim) there is
no reason to apply the "juridical link" exception that
applies where there is "some type of legal relationship
which relates all defendants in a way that would make
single resolution of a dispute preferable to a multip-
licity of similar actions." *Leer v. Washington Educ.
Ass'n*, 172 F.R.D. 439, 447 (W.D.Wash.1997). As
was true in *Shin v. Esurance Ins. Co.*, 2009 WL
688586 (W.D.Wash.2009) this Court refuses to em-
brace the notion that all related companies may be
haled into Court for the actions of one of those inter-
related but distinct companies, merely because they
may have agreed on common practices.

**\*2** Defendants' motion to dismiss plaintiffs' claims
against Chartis is **GRANTED**. The motion for leave
to take discovery and amend the complaint to allege
additional facts and/or to join additional parties is
**DENIED**.



© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4852200 (W.D.Wash.)
(Cite as: 2010 WL 4852200 (W.D.Wash.))

## II. Plaintiffs Lack Standing to Bring Mischaracterization Claims.

In their complaint, plaintiffs allege, on information and belief, that AIU sometimes mischaracterizes what is properly a UIM claim as a claim under its collision or comprehensive liability provisions. Such a practice, if it occurred, would cause damage to an insured because claims under collision or comprehensive general liability provisions routinely have higher deductibles and accidents so classified impact the insured's experience rating making future premium calculations higher. Plaintiffs acknowledge that their claim was not mischaracterized. It was handled under the UIM provisions of their AIU policy.

Plaintiffs argue that the issue is a "typicality" inquiry, normally addressed at class certification, and that it is therefore not properly before the Court on a motion to dismiss. They assert that class members whose UIM claims were mischaracterized were victims of the same wrongful claims estimating practices, giving rise to identical legal claims for which plaintiffs and class members seek the same legal remedies. See Hicks v. Morgan Stanley & Co., 2003 WL 21672085, at *5 (S.D.N.Y. July 16, 2003). Even in a class action, "constitutional standing requirements [must be] satisfied before proceeding to the merits." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir.2007).

In fact, plaintiffs' mischaracterization claims do not arise from the same conduct as their diminished value claims, nor do they involve the same legal theories. Plaintiffs are free to seek class representative status for AIU insureds who were improperly denied diminished value damages, whether the claim was handled under collision, comprehensive general liability or UIM provisions of the AIU policy. They do not, however, have standing to make a claim, as a class representative or otherwise, for damages arising from increased deductibles or adverse ratings caused by mischaracterization of the claims of others. They suffered no such loss and lack standing to assert the claim. A proposed class representative may not assert a litany of claims against a defendant merely because the plaintiff has standing for one such claim. Shin 2009 WL 688586 at *4. Defendants' motion to dismiss plaintiffs' mischaracterization claims for lack of standing is GRANTED. Plaintiffs' request for leave to amend to add additional plaintiffs is DENIED.

## III. Defendants' Motion to Dismiss and/or Strike Plaintiffs' Declaratory Judgment Claims is Premature.

Defendants seek to dispatch plaintiffs' claim for Declaratory Relief by arguing that it is duplicative of their breach of contract claim for which they seek damages. They point out that the declaratory relief plaintiffs seek merely requires a process by which their damages and those of class members are determined and paid. Specifically, plaintiffs ask this Court to order AIU to reevaluate prior claims, assess diminished value loss and pay that amount to each insured. This process mirrors the relief plaintiffs seek in their breach of contract claim: "reassessment of their claims for diminished value and equitable compensation or, alternatively, damages for receiving less than they had contracted for." Complaint, ¶ 7.7 [Dkt. # 1].

*3 While a plaintiff may plead claims in the alternative in certain situations, there is Ninth Circuit authority allowing the Court to dismiss a declaratory relief cause of action when it only seeks a declaration of defendants' liability for damages which are sought by other causes of action. See Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir.2007). The relief sought by defendants, if granted, would not alter the course of this litigation in any material respect. Discovery issues would not change and issues of class certification would remain the same. The Court sees neither benefit nor prejudice to any party regardless of its decision on this issue. As a matter of simple case management the Court DENIES defendants' motion to dismiss the declaratory judgment claims WITHOUT PREJUDICE to reassert the motion at a subsequent time when the outcome of this issue matters.

## IV. Defendants' Motion to Dismiss and/or Strike Plaintiffs' Claim for Injunctive Relief is Premature.

Defendants seek to have claims for injunctive relief dismissed because remedies available at law are adequate to compensate for plaintiffs' alleged injury. See eBay, Inc. v. Merc Exchange, L.L. C., 547 U.S. 388, 391 (2006). Defendants seek to have the class action claims for injunctive relief stricken under Fed.R.Civ.P. 12(f) also because plaintiffs predominantly seek damages in their complaint. As with the attack on the Declaratory Relief claims, defendants'

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4852200 (W.D.Wash.)
(Cite as: 2010 WL 4852200 (W.D.Wash.))

motion here has no current impact on the litigation whatsoever. The ramp-up to the class certification motion will not be affected at all. Not one extra hour of time will be spent by either party. The Court may have discretion to dismiss or strike the claim at this early juncture but it would be unwise to do so. The motions to dismiss and/or strike the individual and class claims for injunctive relief are **DENIED WITHOUT PREJUDICE.**

**V. Plaintiffs Present a Viable Claim for Diminished Value Damages Under the AIU Policy.**

The core issue in this case is whether plaintiffs are entitled to diminished value damages under the facts and circumstances present here. Given the repair option chosen by AIU, the pertinent provisions of the subject policy are as follows:

> Subject to the Underinsured Property Damage limit of liability stated on *your Declaration Page,* if you pay the premium for Underinsured Motorists Property Damage Coverage, we will pay for *property damage* caused by an *auto accident* which an *insured* is legally entitled to recover from the *owner* or operator of an *underinsured motor vehicle.*

The Policy also provide that "C. *Property damage* means injury to or destruction of the property of an *insured."*

Further, the Policy states that AIU Insurance's liability is limited as follows:

**C. Property Damage Limit of Liability-Our Limit of Liability under this Part C for Property Damage to a covered auto from any one *accident* is the lowest of:**

> ....

*\*4 3. The amount needed to restore the covered *auto* to its pre-loss condition, reduced by the applicable deductible;

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). Review is limited to the

content of the complaint [and properly incorporated documents], and all allegations of material fact must be taken as true, and construed in the light most favorable to the non-moving party. *Fed'n of African Am. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir.1996).

In Washington, insurance policies are construed as contracts. *Quadrant Corp. v. Am. States Ins. Co.,* 154 Wash.2d 165, 171 (2005). A court must consider an insurance policy as a whole and give it a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Id.* If the language of an insurance policy is clear and unambiguous, the Court must enforce the policy as written; a Court may not modify it or create ambiguity where none exists. *Id.*

UIM coverage policies are evaluated to ensure that statutorily mandated coverage is "neither whittled away nor eroded." *Greengo v. Pub. Employees Mut. Ins. Co.,* 135 Wash.2d 799, 806 (1998). The UIM statute will not, however, be interpreted in a manner that would unduly impair the parties' rights to contract freely. *Daley v. Allstate Ins. Co.,* 135 Wash.2d 777 (1998).

The UIM statute requires that issuers of automobile insurance policies offer UIM coverage

> For the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage resulting therefrom....

RCW 48.22.030(2). The statute further provides:
Property damage coverage required under [RCW 48.22.020(2) ] shall mean *physical damage* to the insured motor vehicle unless the policy specifically provides coverage for the contents thereof or other forms of property damage.

RCW 48.22.030(3).

While the source of the obligation to offer UIM is statutory, the scope of the coverage is contractual, subject only to the minimum coverage requirements set forth in the UIM statute. The UIM statute estab-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4852200 (W.D.Wash.)
(Cite as: 2010 WL 4852200 (W.D.Wash.))

lishes a floor, but not a ceiling for UIM coverage. *See Mansker v. Farmers Ins. Co. of Wa.*, W.D. WA. Cause No. C10-511JLR.

With that contractual and statutory background, plaintiffs complain that AIU did not pay them (and presumably thousands of other insureds) for diminished value suffered as the result of an accident with an underinsured motorist. In their complaint, plaintiffs do not define what they mean by diminished value. The term has meant different things to different people over the years. In some cases, it is referred to as Inherent Diminished Value. In those cases, and others, the concept of diminished value is broad enough to include stigma damage which refers to the taint that may reduce a vehicle's value due to the perception that because of an accident it may have residual problems despite being fully repaired. *See Allgood v. Meridian Security Ins. Co., 836 N.E.2d 243, 248 (Ind.2005); Hovenkotter v. Safeco Ins. Co., 2010 WL 3984828 *1, 7 (W.D.Wash.2010).*

*5 In Washington, stigma damages are not considered diminished value. Rather, diminished value loss arises when a vehicle sustains physical damage in an accident, but due to the nature of the damage, it cannot be fully restored to its pre-loss condition. The remaining physical damage, such as weakened metal which cannot be repaired results in diminished value. *See Moeller v. Farmers Ins. Co. of Wa., 155 Wash.App. 133 (Div.2, 2010).*

The UIM statute requires insurers to offer UIM coverage for insureds who are otherwise entitled to damages because of property damage resulting from an accident caused by an underinsured motorist. To trigger entitlement to coverage, physical damage to the vehicle must occur. Although the parties may contract for greater benefits, the UIM statute requires that coverage at a minimum, be provided for the physical damage sustained by the vehicle. RCW 48.22.030(3).

The contract between the parties gave AIU the option to limit its liability to "the amount needed to restore the covered auto to its pre-loss condition." Defendants argue that if some forms of physical damage remain after all repairable damage has been fixed, then by the terms of the policy, coverage is not extended. The argument is not consistent with the fair, reasonable, and sensible construction the average purchaser of insurance would give to the policy. Neither does it meet the minimal requirements of the UIM statute.

Given the definition of diminished value adopted by the *Moeller* court, post-repair residual physical damage to an accident vehicle represents diminished value. Because it is actual physical damage, the UIM statute requires that it be covered. The plain meaning of the applicable AIU policy provisions properly provides coverage for such damage. The restoration of a covered auto to its pre-loss condition requires that an insured be compensated for all physical damage incurred, to include, for example, unrepaired dents, bends or stress to the vehicle's structure, and damage to the function or appearance of the vehicle. *See Scammell v. Farmers Insurance Exchange*, No. 01-2-13321-2 (Pierce County Superior Court). While this list is not exhaustive, the definition of diminished value in Washington does not include stigma damage: metaphysical loss attributable to the fear that unproven damage remains following a repair of the vehicle. Coverage for such damage is not required by the UIM statute and is not provided for by the AIU policy. In short, residual physical damage is covered under the AIU policy. Stigma damage is not.

At trial, plaintiffs will be required to demonstrate that their vehicle was physically damaged even after the repair authorized by AIU. The need for expert testimony makes the Court skeptical that this is a case where class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed.R.Civ.P. 23(b)(3). Defendants argue (and the Court tends to agree) that the kind of showing required under Washington law to establish diminished value makes group generalizations about the fact of injury or the amount of damage inappropriate. They also urge the Court to focus on the differences between UIM statutes from state to state and the different definitions given the term "diminished value" from one state to another and to reject class certification here and now. The Court will, however, decline defendants' suggestion that Class Certification be denied at this early stage of the litigation. Plaintiffs will have the opportunity to conduct discovery and to propose certification of some class that could potentially be tried collectively notwithstanding differences in state laws and the obvious problems of proof identified by the Court. Plaintiffs have sufficiently alleged facts that support a plausible legal theory. Defendants' motion to dismiss for failure to state a claim is **DE-**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 4852200 (W.D.Wash.)
**(Cite as: 2010 WL 4852200 (W.D.Wash.))**

**NIED.** Defendants' **motion to strike** plaintiffs' **class allegations** because individualized issues necessarily predominate is likewise **DENIED.** The Court will deal with that issue if and when a motion for certification of the class is presented to the Court.

### CONCLUSION

*6 The defendants' Motion to Dismiss Claims Against Chartis [Dkt. # 28] is **GRANTED.** The motion to dismiss mischaracterization claims [Dkt. # 28] is **GRANTED.** The Motions to Dismiss Claims for Declaratory Relief and for Injunctive Relief [Dkt. # 28] are **DENIED WITHOUT PREJUDICE.** The Motion to Strike Class Allegations for Injunctive Relief [Dkt. # 29] is **DENIED WITHOUT PRE-JUDICE.** The Motion to Dismiss Complaint for Failure to State a Claim [Dkt. # 28] is **DENIED.** The Motion to Strike Class Allegations Pursuant to F.R.Civ. P. 23(b)(3) and 12(f) is **DENIED.**

W.D.Wash.,2010.
Degenhart v. AIU Holdings, Inc.
Slip Copy, 2010 WL 4852200 (W.D.Wash.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.