UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| *This document relates to* | * | |
| | * | MAGISTRATE JUDGE |
| *Jon Guthmiller, et al. v. Merck & Co., Inc., et al.,* | * | KNOWLES |
| 2:06-cv-05552-EEF-DEK | * | |
| | * | |
| Only with regard to: | * | |
| Maureen Welch | * | |

**************************************************************************

### DEFENDANT MERCK & CO., INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REINSTATE CLAIM AND/OR FOR RELIEF FROM DEADLINES OF THE SETTLEMENT PROGRAM DUE TO EXCUSABLE NEGLECT AND NO FAULT OF CLAIMANT OR HER CURRENT ATTORNEY

Defendant Merck & Co., Inc. ("Merck"), through its undersigned counsel, hereby opposes Plaintiff Maureen Welch's Motion to Reinstate Claim and/or for Relief from Deadlines of the Settlement Program Due to Excusable Neglect and No Fault of Claimant or Her Current Attorney.

Ms. Welch filed her underlying lawsuit on June 6, 2006, claiming injuries from her use of Vioxx. After the Vioxx Resolution Program was established, Ms. Welch attempted to enroll in the Program, and her then-counsel initiated that process on January 13, 2008. Ms. Welch, however, never completed the enrollment process, and her claim was eventually closed. Ms. Welch's underlying lawsuit in this Court was subsequently dismissed with prejudice on February 3, 2009 for failure to comply with a series of Court orders. Almost two years later, Ms. Welch now asks this Court to "reinstate [her] into the settlement program," and seeks an Order instructing the Administrator for the Resolution Program "to allow her to re-enroll under

1

reasonable conditions." Mot. at 1, 3. As this Court is well aware, the Resolution Program is largely completed, and the vast majority of funds have been disbursed.[1] The relief sought by Ms. Welch is neither appropriate nor available. Her motion should be denied.

In further opposition to the motion, Merck specifically states as follows:

### *Ms. Welch Defaults on Her Claims*

1. On November 9, 2007, the parties in this litigation announced the establishment of the Vioxx Resolution Program. The requirements of that Program are set out in the Master Settlement Agreement ("MSA"). Under the terms of the MSA, claimants who wanted to enroll in the Resolution Program were required to submit to the Claims Administrator (BrownGreer) an Enrollment Form, a signed Release and Stipulation of Dismissal with Prejudice, and other enrollment documents by March 1, 2008, which was later extended to October 30, 2008. *See* MSA § 1.2.2.

2. Plaintiff never submitted any enrollment materials to the Claims Administrator, and Plaintiff's claim was therefore closed by the Claims Administrator for failure to enroll in the Program.[2] *See* Ex. A (May 4, 2010 letter from the Vioxx Claims Administrator to Ginger DeForest) at 1.

---

[1] There are some funds that have been allocated but not yet disbursed due to outstanding administrative issues, such as issues with estates.

[2] Even if Plaintiff had enrolled in the Resolution Program within the deadlines provided by the MSA, it is likely that she would not have been eligible for any payment under the MSA because she does not appear to assert an eligible injury. Based on her Plaintiff Profile Form, Ms. Welch asserts that because of her use of Vioxx she suffered ulcers, worsening arthritis, leg cramping and "serious bruising." *See* Ex. B (Plaintiff Profile Form dated July 11, 2007). Only claimants who could demonstrate that they suffered a heart attack, ischemic stroke, or sudden cardiac death were eligible for settlement payments under the Program. *See* MSA Recital E.

3. On February 3, 2009, the same day that her case before this Court was dismissed with prejudice, the Court granted a motion to withdraw filed by Plaintiff's original counsel, Cellino & Barnes. On February 5, 2009, Plaintiff's current counsel, Ms. Ginger DeForest, entered this case as counsel of record.

4. Shortly after learning of Ms. DeForest's appearance as counsel of this record in this case, on February 10, 2009, the Claims Administrator emailed to Ms. DeForest a user name and password for access to the "Vioxx Portal" maintained by the Claims Administrator. *See* Ex. A ¶5. This login information was again provided by the Claims Administrator to individuals within Ms. DeForest's law firm, at their request, at least two additional times, on May 26, 2009 and November 19, 2009. *See* Ex. A ¶¶ 8, 10.

5. On February 12, 2009, the Claims Administrator emailed to Ms. DeForest a "Request for Relief from Deadlines Form," in which she could provide an explanation for Plaintiff's failure to submit the required enrollment materials, but no Request for Relief from Deadlines Form was ever received by the Claims Administrator for Plaintiff. *See* Ex. A ¶6.

6. In response to inquiries from individuals at Ms. DeForest's law firm, the Claims Administrator notified those individuals on June 30, 2009, January 25, 2010, and May 4, 2010 that all deadlines for enrolling in the Program had passed, that no enrollment documents were ever received for Plaintiff, and that Plaintiff's claim had therefore been closed for failure to enroll. Ex. A ¶¶ 9, 13.

***Ms. Welch's Requested Relief is Not Available: The Resolution Program is Closed***

7. Plaintiff requests that this Court take action to reinstate her claim into the settlement program. Mot. at 1, 3. As an initial matter, there is no provision in the MSA for the Court to unilaterally admit a claimant into the Program. But, in any event, Ms. Welch's request

3

comes far too late.  The Resolution Program is essentially concluded.  The Claims Administrator issued its final report on July 27, 2010.  All of the monies have been allocated, and the vast majority have been disbursed.[3] *See* Claims Administrator Final MDL Status Conference Report, July 27, 2010, at 71.

8.      There is no legal basis whatsoever for Plaintiff's request for "this Court to reinstate [her] into the settlement program."  Mot. at 1.  Though the Vioxx Resolution Program has been supervised by this Court, the terms of that agreement were negotiated and agreed to by plaintiff and defense counsel and memorialized in a private contractual agreement, namely the MSA.

9.      The terms of the MSA clearly set forth the deadlines for enrollment and other deadlines, and the MSA provides that "Eligible Claimants who have not enrolled by the Enrollment Deadline Date shall not be eligible to participate in the Program except by consent of Merck."  MSA §1.2.2.2.  Simply put, because Plaintiff failed to ever enroll in the Program, she has no rights under the MSA.

### *No Additional Relief is Appropriate*

10.     Although Ms. Welch cites no authority for the proposition that this Court can belatedly insert her back into the Resolution Program, her motion papers refer to principles typically invoked in a Rule 60(b) motion.  Even if her motion were construed as a Rule 60(b) motion to revive her underlying lawsuit, granting that request would also not be appropriate.

---

[3]     Plaintiff erroneously asserts that there would be no prejudice to Merck if plaintiff were allowed to "reactivate her membership in the settlement program" because no settlement payments have yet been made under the Program.  Mot. at 2.  To the contrary, final settlement payments issued to over 20,000 individuals who claimed heart attack injuries and over 12,000 individual who claimed stroke injuries.  *See* Claims Administrator Final MDL Status Conference Report, July 27, 2010, at 49, 51.

11.     Plaintiff's motion refers to "excusable neglect" and asserts that any missed deadlines within the Resolution Program were "no fault of Ms. Welch." To the extent it can be construed as a motion for relief from the Court's dismissal of her case, Rule 60(b)(1) of the Federal Rules of Civil Procedure would govern. *See Harcon Barge Co. v. D & G Boat Rentals*, 784 F.2d 665, 667 (5th Cir. 1986) (en banc) (Any motion that requests relief beyond correction of a purely clerical error served more than ten days after judgment treated as a Rule 60(b) motion). That rule permits a court to grant relief from judgment at its discretion when the party seeking relief has established at least one of six "exacting substantive requirements," *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir. 1990), including "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. Pro. 60(b)(1).

12.     However, the Rule is unambiguous that a party may only seek relief under Rule 60(b)(1) "no more than a year after the entry of the judgment or order." Fed. R. Civ. Pro. 60(c)(1). If this motion is to be construed as a motion under Rule 60(b)(1), therefore, it must be denied as untimely.

13.     Moreover, even if this motion had been filed within a year of the dismissal of Plaintiff's case, well-established precedent makes clear that Rule 60(b) relief is an "extraordinary" remedy that will be afforded only in "unique circumstances," for courts are disinclined to disturb final judgments. *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir.1985); *see also Carter v. Fenner*, 136 F.3d 1000, 1007 (5th Cir. 1998) ("[T]he desire for a judicial process that is predictable mandates caution in reopening judgments." (citations and quotations omitted)). Plaintiff's motion would fail on substantive grounds as well as timeliness grounds, for she has asserted no "extraordinary" or "unique" circumstances that would justify disturbing the finality of the twenty-two-month old dismissal.

1041061v.1

14. Indeed, the motion lacks any explanation whatsoever for Plaintiff's failure to seek relief in this Court for almost two years after the dismissal of her case. Instead, Plaintiff's motion recounts efforts that her counsel made on her behalf to contact the Claims Administrator regarding her participation in the Vioxx Resolution Program. As shown by the Claims Administrator's records, the Claims Administrator had extensive contact with Plaintiff's counsel and has made numerous efforts to explain the status of Plaintiff's claim. *See* Ex. A. More importantly, however, Plaintiff had already missed the October 30, 2008 deadline to enroll in the Resolution Program by many months by the time her case was dismissed with prejudice by this Court in February 2009. Her subsequent contacts with the Claims Administrator have no bearing on whether her inaction before this Court could be deemed excusable under Rule 60(b)(1).[4]

15. Therefore, even if Plaintiff's motion can be construed as a motion under Rule 60, which is not clear despite her use of the phrase "excusable neglect," Plaintiff has failed to establish, or even to allege, any grounds to reopen her long-dismissed case.

16. In sum, given her failure to ever enroll in the Vioxx Resolution Program, Plaintiff has no rights under the MSA, and there is therefore no basis whatsoever in law or contract for Plaintiff's request that the Court order her "reinstatement" into the Program. Moreover, no basis exists for the Court to reopen her long-dismissed lawsuit against Merck.

---

[4] In addition to the assertions in Plaintiff's motions about her attorney's contacts with the Claims Administrator, Plaintiff also asserts that any missed deadlines within the Resolution Program were the fault of her previous counsel or even her current counsel. Mot. at 3. Any such mistakes by counsel, however, do not justify relief under Rule 60(b), for "it has long been held, particularly in civil litigation, that the mistakes of counsel, who is the legal agent of the client, are chargeable to the client" *Pryor*, 769 F.2d at 288-89 ("Were this Court to make an exception to finality of judgment each time a hardship was visited upon the unfortunate client of a negligent or inadvertent attorney . . . meaningful finality of judgment would largely disappear.").

**CONCLUSION**

For the foregoing reasons, Merck respectfully requests that the Court enter an order denying Plaintiff's motion.

Dated: December 20, 2010

Respectfully submitted,

 /s/ Dorothy H. Wimberly
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

  —and—

Douglas R. Marvin
Eva Petko Esber
M. Elaine Horn
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck & Co., Inc.

1041061v.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Opposition has been served on Plaintiff's counsel Ginger K. DeForest by U.S. Mail at:

501 Clearview Parkway
Metairie, LA 70001

I also hereby certify that the above and foregoing Memorandum in Opposition has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 20th day of December, 2010.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1041061v.1