## APPLICATION OF THE BECNEL LAW FIRM, LLC
## AS PER PRE-TRIAL ORDER NO. 6(D)

Well over one and one-half years prior to the withdrawal of Vioxx from the marketplace, our office began investigating the possible effects of Vioxx which may have caused heart attacks and/or strokes. A great deal of medical research was conducted and numerous articles were researched concerning toxic responses of the heart and vascular system caused by this drug. Dr. Daniel Acosta, Jr., from the Department of Pharmacology and Toxicology at the University of Texas and Cincinnati was consulted. Medline research was begun and numerous cardiologists were consulted, including Dr. John Markis from Harvard and Dr. Paul Nathan from Louisiana. Daniel E. Becnel, Jr., on behalf of the PSC, also worked with Dr. Suzanne Parisian, a FDA Expert, at the request of John Restaino and others. Our office then began a cooperative effort, prior to the recall, with the Beasley Allen office in Montgomery, Alabama, as Beasley Allen and Chris Seeger's office were leaders prior to the MDL and additionally because document depositories had been set up in Montgomery and New York. Our office supplied lawyers full time to begin the review of documents. Our office sent teams of lawyers each week to work in Montgomery on document review and document preparation for depositions in state court actions and provided hotel accommodations for the lawyers in both Montgomery and New York. My office required that they share rooms and travel over 700 miles round trip to Montgomery. We did not bill for travel time which took over four hours each direction. Our office supplied a vehicle to have these lawyers transported to and from Montgomery.

Among the lawyers who worked on this case prior to and after the Vioxx recall are the following: Meghan Becnel (3 year lawyer), Michael Breinin (12 year lawyer), Salvadore Christina, Jr. (8 year lawyer), Caroline Donlon (25 year lawyer), Monica Gant (7 year lawyer), Barbara Harris (nurse), Kevin Klibert (8 year lawyer), Holly Lamarche (4 year lawyer), Mary Lorenz (4 year lawyer), Juanita Marino (4 year lawyer), Judge Ruche J. Marino, retired (46 year lawyer), Matthew Moreland (12 year lawyer), Kelly Morton (2 year lawyer), Margaret Parker (4 year lawyer), William Percy (26 year lawyer), Darla Sanderson (6 year lawyer, 10 year pharmacy technician), Deanne Sirmon (6 year lawyer) and Rebecca Todd (10 year lawyer, 10 year paralegal). These individuals included lawyers and nurses, as well as a retired state judge. Many of the lawyers had extensive training having worked in the past as defense lawyers for major firms and on many previous MDL's. Our office was immediately assigned to do page and line summaries of all depositions that had been taken and our lawyers did one-fifth of all state and/or MDL deposition summaries. Our office consulted with Dr. Cyril Wecht, a forensic pathologist, concerning death cases and how proof of death from Vioxx could be proven under *Daubert* standards. Our office took Dr. Nachman Brautbar to Las Vegas, at the request of Mike Papantonio, to give a lecture to other lawyers concerning death cases involving Vioxx. This occurred at Mass Torts Made Perfect. Our office provided airfare, hotel and an honorarium to Dr. Wecht for performing this service.

Numerous meetings were held in California, Texas, New York, Washington, D.C., Miami and New Orleans in an effort to organize this case for over a year prior to the MDL. My office initiated many of these meetings and I undertook to have a consensus built for electing leadership and for the sharing of information. Our office has collected and disseminated information on a weekly basis monitoring the development of the Vioxx case.

After our office filed a motion for MDL status we were able, at these numerous meetings, to put forth a group of judges and districts which we would recommend. This consensus resulted in six jurisdictions being sought by plaintiffs – a reduction from fifty-four jurisdictions which were originally asked for by plaintiffs. A full discussion was had concerning each potential district, district judge and appellate court regarding, *inter alia*, the status of the law in each jurisdiction and in each appeals court.



My case, *Christina v. Merck,* was filed in the Eastern District of Louisiana on October 1, 2004. This case was allotted to Judge Eldon E. Fallon, and I subsequently then moved for the MDL Panel to allot this case to Judge Fallon. After my oral argument, the case was indeed allotted to Judge Fallon.

Information including but not limited to deposition notebooks, and "hot" documents have been distributed freely through the cooperative effort of Chris Seeger, Andy Birchfield, Richard Arsenault and myself provided a Confidentiality Agreement has been signed. In over thirty-nine years of practicing law, I have never seen such cooperation among the Plaintiffs' Bar as in this case.

Developing leadership in this case involved hundreds of lawyers from across the country and was of utmost importance to the success of this litigation. I personally called a meeting at Antoine's Restaurant in New Orleans, at my expense, and invited every lawyer who had a filed case or was interested in the litigation to meet and confirm leadership. At this meeting I made a motion that the group unanimously ask Judge Fallon to appoint Chris Seeger and Andy Birchfield as Lead Counsel. There was not a consensus for Liaison Counsel at that time and, therefore, a number of people stated they would simply submit their application to the Court and, Russ Herman was appointed. Although I was not personally appointed to the Plaintiffs' Committee, I undertook to have people continue to work in both New York and Montgomery until a MDL depository was established. Once the MDL Depository was established, members of my firm continued to work full time on this litigation. These lawyers did document review/coding, prepared page and line deposition summaries, and prepared trial cuts on depositions.

Rebecca Todd of my office was asked by Mark Robinson, because she was familiar with all of the documents, to assist him as chairman of the Trial Team in the Barnett case. Rebecca worked with the plaintiff and Mark on a day and night basis under Mark's direction. All of the lawyers who worked in the MDL Depository were given assignments through the Seeger, Birchfield and Herman offices. Many of the lawyers of my firm worked on reviewing clinical trials and the documents related to those trials. Many were involved in preparing deposition notebooks at the depository which were then sent to various firms conducting the depositions. Will Percy and Rebecca Todd worked in New York. Mr. Percy worked 14 straight months, eight or more hours each day, in the New Orleans depository. He also worked extensively in Montgomery, Alabama. He reviewed custodial files, Data Safety Monitoring Board documents, FDA documents and Worldwide Adverse Experience System documents. He and Rebecca reviewed the New Drug Applications, as well as FDA documents, Advertising, Marketing and Promotional documents.

Daniel E. Becnel, Jr. was asked by ATLA to be the judge at a two day mock trial on Vioxx held in New Orleans. This included over 500 lawyers with over 25 lawyers having roles in the presentation of the mock trial for both plaintiffs and defense. Three mock trial juries were debriefed and their findings used to assist in upcoming trials in Texas, New Jersey, California, Houston and New Orleans. At this mock trial, Daniel E. Becnel, Jr. had Dr. John Markis, a cardiologist; Dr. Augustine Aruna, a pharmacologist; Dr. Daniel Acosta, Jr., a pharmacologist; Dr. Cyril Wecht, a forensic pathologist; and Dr. Nachman Brautbar, an internal medicine and toxicology specialist, at his expense, monitor the mock trial and attend meetings with both Shelly Sanford and Carlene Lewis. These experts were asked to review documents, make comments, to listen to the mock trial and give their opinion as to what was or was not effective on behalf of the plaintiffs and what potential defenses to the plaintiffs' case could be utilized. Hundreds of hours prior to the formation of the MDL had been logged by the Becnel Law Firm. Since many of the projects which were worked on prior to the formation of the MDL were done by Matt Moreland, Sal Christina, Rebecca Todd, Kevin Klibert and others, much of this time was not logged because in most instances, MDL time does not become logged until after the formation of a MDL and the appointment of a PSC.

Probably the single most important event in the entire litigation was having Judge Eldon E. Fallon appointed as the MDL Judge as it was through his leadership that this case was ultimately resolved, even after the plaintiff's lost most of our cases.

Daniel E. Becnel, Jr. served on many committees, including Science and Experts, and attended nearly every status conference and phone conferences of those committees to discuss strategy, experts, peer-reviewed publications, clinical trials, the NDA, marketing, as well as product development over the course of the litigation. He continually worked with Richard Arsenault, Gerald Meunier and John Restaino on various projects concerning causation. Susan Williams, a nurse, and Darla Sanderson, who was a pharmacy technician, as well as an attorney, reviewed many of the studies and medical literature at the request of the Plaintiffs' Steering Committee.

Daniel E. Becnel, Jr. personally performed more than 500 hours on most of the above projects prior to the MDL and disseminated this information through the Vioxx Litigation Group through seminars and by sending constant updates to lawyers in both state and federal courts. In addition, after the MDL started, Daniel E. Becnel, Jr. logged 396 hours on various committees. Daniel E. Becnel, Jr. did not bill for review of all of the "hot" documents and the supervision of all of the lawyers who were performing work in Montgomery, New York and the MDL document depository. He would work with and discuss issues dealing with science, "hot" documents and the direction of the litigation with the lawyers he assigned to the above-mentioned document depositories. This was done due to the fact that there was a constant need for lawyers to do this work and a constant call by the MDL to firms throughout the country to supply personnel to do this work. However, he spent more than a thousand hours directing his team of lawyers on document review, the NDA's, clinical trials and the like.

It should be noted that one of Daniel E. Becnel, Jr.'s paralegals, Carlis Griffin, who had previously been assigned to the document depository with Penny Herman in the Propulsid Litigation, was asked to work for the PSC on the Vioxx Litigation. Rather than having Ms. Griffin return to the Becnel office, he allowed her to be employed by the PSC as a secretary/paralegal and administrator of the document depository in New Orleans after Hurricane Katrina. She has continually remained at that position in the employ of the PSC.

Respectfully submitted,

Daniel E. Becnel, Jr. (#2926)
Becnel Law Firm, LLC
P. O. Drawer H
Reserve, LA 70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
E-mail: dbecnel@becenllaw.com

# VIOXX
## TIME BREAKDOWN
### OCTOBER 2004 – AUGUST 2008

| Name | Hours |
|---|---|
| Daniel E. Becnel, Jr. | 1896.00 hrs |
| Meghan Becnel | 98.75 hrs |
| Michael Breinin | 2,617.75 hrs |
| Salvadore Christina, Jr. | 90.00 hrs |
| Caroline Donlon | 29.50 hrs |
| Monica Gant | 109.30 hrs |
| Barbara Harris | 14.50 hrs |
| Kevin Klibert | 6.40 hrs |
| Holly Lamarche | 1,144.00 hrs |
| Mary Lorenz | 1,883.00 hrs |
| Juanita Marino | 315.50 hrs |
| Ruche J. Marino | 724.20 hrs |
| Matthew Moreland | 115.10 hrs |
| Kelly Morton | 127.75 hrs |
| Margaret Parker | 501.50 hrs |
| William Percy | 2,525.00 hrs |
| Darla Sanderson | 782.75 hrs |
| Deanne Sirmon | 24.00 hrs |
| Rebecca Todd | 3,162.50 hrs |