| | |
|---|---|
| IN RE: VIOXX ) <br>      PRODUCTS LIABILITY ) <br>      LITIGATION ) | UNITED STATES DISTRICT COURT <br> EASTERN DISTRICT OF LOUISIANA |

IN RE: VIOXX            )
     PRODUCTS LIABILITY  )
     LITIGATION       )
                 )
                 )
                 )
                 )
                 )
                 )
                 )
                 )
                 )

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MDL No.: 1657
Section L: Judge Fallon
Magistrate Judge Knowles

MORELLI RATNER PC'S
OBJECTION TO THE FAC'S
ALLOCATION OF COMMON
BENEFIT FUND FEES

**PLEASE TAKE NOTICE** that Morelli Ratner PC, former attorneys for Plaintiffs in this matter, hereby formally objects to its allocation of attorneys' fees from the Common Benefit Fund, and hereby applies to the United States District Court, Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana, for an Order approving a reasonable and just allocation of attorneys fees to Morelli Ratner PC from the Common Benefit Fund.  The moving party will rely upon the annexed papers.

This application is submitted for ruling on the moving papers and oral argument.

Dated: New York, New York
       February 2, 2011

Yours, etc.,

Benedict P. Morelli, Esq.
**MORELLI RATNER PC**
950 Third Avenue, 11th Floor
New York, New York 10022
(212) 751-9800

1

IN RE: VIOXX                          )     UNITED STATES DISTRICT COURT
     PRODUCTS LIABILITY            )     EASTERN DISTRICT OF LOUISIANA
     LITIGATION                    )
                          )     MDL No.: 1657
                          )     Section L: Judge Fallon
                          )     Magistrate Judge Knowles
                          )
                          )     MORELLI RATNER PC'S
                          )     APPLICATION IN SUPPORT OF ITS
                          )     OBJECTION TO THE FAC'S
                          )     ALLOCATION OF COMMON
_____)     BENEFIT FUND FEES

This Application is submitted in support of Morelli Ratner's Objection to the Fee

Allocation Committee's ("FAC's") January 20, 2011 Allocation of Common Benefit Fund Fees.

On June 27, 2008, Morelli Ratner submitted its initial petition for a reasonable allocation

of Common Benefit Fund fees to the FAC.  (*See* Exhibit A, June 27, 2008 Correspondence and

Declaration.)  Morelli Ratner's request was based upon its significant contribution as part of the

trial team that won the very first Vioxx trial in the country, Ernst v. Merck & Co., Inc. (Brazoria

County District Court-Texas 2005) ($253.4 million plaintiff's verdict), and won a second

plaintiff's verdict in Cona/McDarby v. Merck & Co., Inc., (New Jersey Superior Court - Atlantic

County 2009)($22.9 million plaintiff's verdict.)

On or about October 29, 2008, Morelli Ratner supplemented its initial petition with the

declaration of its founding partner, Benedict P. Morelli, Esquire.  (*See* Exhibit B, October 29,

2008 Declaration.)

During the first week of December 2008, Morelli Ratner's founding partner Benedict P.

Morelli, Esquire and managing partner David S. Ratner, Esquire appeared in Atlantic City, New

Jersey before the Fee Allocation Committee to present Morelli Ratner's petition for reasonable attorneys fees.

On or about December 2, 2010, Morelli Ratner received Notice of the Fee Allocation Committee's initial determination of its fee award. Despite the significance of its contribution to the overall success of the Vioxx litigation, Morelli Ratner was only allocated $1,274,129.03 as its share of the fees. (*See* Exhibit C, December 2, 2010 Notice of Recommended Award.)

On December 13, 2010, Benedict P. Morelli, Esquire participated in a telephone conference with Russ Herman, Esquire and Andy Birchfield, Esquire from the Fee Allocation Committee. During this conference, Mr. Morelli discussed in detail the basis for Morelli Ratner's objection to the FAC's initial fee allocation to Morelli Ratner. At the conclusion of this conference, Mr. Morelli was encouraged to submit his argument in its entirety in writing to the FAC for further review.

On December 15, 2010, Morelli Ratner submitted a letter to the Fee Allocation Committee formally objecting to its recommended fee award. (Exhibit D, December 15, 2010 Objection.) This correspondence set forth in detail the basis for Morelli Ratner's objection and the firm's entitlement to $12,000,000 in fees.

On or about January 19, 2011, the FAC submitted its final recommendations for fee allocations to this Court. Without explanation or cause, the FAC *reduced* Morelli Ratner PC's allocation to $750,000, some $525,000 *less* than its initial recommendation. (*See* Exhibit E, January 19, 2011 FAC Recommendation Table at page 3.) This reduction was made without explanation or cause.

A cursory glance at FAC's Recommendation Table reveals that the Fee Allocation

3

Committee employed an arbitrary analysis.  For instance, the breakdown submitted by FAC reflects that Morelli Ratner's 1,833.50 hours were multiplied by .923 so that the firm was ultimately paid $409.05 per hour.  (*See* Exhibit E, FAC Table at page 3.)  At the same time, the Mithoff Law Firm was paid more than twice that amount hourly, i.e. $937.50 hourly, for its sixteen hour contribution to the Vioxx litigation.  (Id.)  While perhaps FAC justified this increased hourly rate by the limited hours worked by Mithoff (and thus the relatively small allocation it received), the Table further reflects that Gainsburgh, Benjamin, Davis, Meunier & Warshauer, LLC's 1,220 hours were multiplied by 4.974 so that it was paid.$2,204.92 per hour, more than *five times* the hourly rate awarded Morelli Ratner.  As a result, the Gainsburgh firm was awarded some $2.690 million in fees, nearly two million dollars more than Morelli Ratner, even though it expended 600 hours less time than Morelli Ratner.  (Exhibit E, FAC Recommendation Table at page 2.)  These discrepancies are not justified in the FAC's decision, and are not warranted under the circumstances.

These fee allocations are particularly disturbing in light of the FAC's decision to allocate approximately $230 million of the approximately $311 million total Common Benefit Fund Fees (or approximately 74% of the total fund) to the nine law firms that compromise the FAC. Collectively, those firms constituting the FAC and PSC were awarded approximately $284 million of the approximately $311 million total Common Benefit Fund Fees (or approximately 91% of the total fund.)

Moreover, the evidence suggests that those firms that filed objections to the FAC's initial determination were almost universally punished for doing so, receiving even lower allocations than those initially awarded by the Fee Allocation Committee.  (*See* Exhibit F, Table.)  For

instance, despite the fact that Snapka, Turman & Waterhouse was one of the few law firms in the United States, along with Morelli Ratner, that tried and won verdicts for plaintiffs in this litigation [(Snapka won a $32 million verdict, including $25 million in punitive damages, in Garza v. Merck & Co., Inc., (29th District Court, Starr County, TX - 2006)], Snapka's initial allocation of $582,000 was dramatically reduced to a $25 hourly rate after it filed an objection. (*See* Exhibit E, FAC Recommendation Table at page 3.)  Moreover, Snapka's request for $31 million in fee was answered with a Final Determination of $75,000, roughly 13% of its original allocation.  (*See* Exhibit F, Table.)

Similarly, Escobedo Tippet's award of $1.1 million was reduced to *zero dollars* after it filed its objection: this was so even though the Escobedo firm was co-counsel with Snapka in the successful Garza trial.  (*See* Exhibit E, FAC Recommendation Table at page 2; Exhibit F, Table.)[1]  Conversely, Blizzard, McCarthy & Nabers, LLP was awarded $11.6 million even though it *lost* its Vioxx trial, (Mason v. Merck & Co., Inc., USDC -ED LA 2006- *defense verdict*.)  (*See* Exhibit G, January 20, 2011 Order *attaching* Final FAC Recommendation Table at page 1.)

So too at bar, Morelli Ratner's request for $12 million in fee was answered with an approximately 42% reduction in award, from $1,274,129.03 down to $750,000.  Unfortunately, this unwarranted reduction in fee allocation appears to be nothing more than punitive in nature.

Nevertheless, on January 20, 2011, this Court issued an Order attaching the FAC's final

---

[1]  Curiously, Barrios, Kingsdorf & Casteix, LLP was awarded $1.7 million as its fee allocation after claiming its greatest contribution to the litigation was getting Garza v. Merck & Co., Inc. remanded for trial.  (*See* Exhibit G, Table page. 1.)  Yet the Barrios firm played no role in litigating and trying Garza: the two firms that did were awarded a pittance totaling $75,000.

recommended allocations. (Exhibit G, January 20, 2011 Order *attaching* Final FAC Recommendation Table.) Morelli Ratner respectfully objects to this determination, and respectfully requests a reasonable allocation of the Common Benefit Fund for the extraordinary work it performed in the Vioxx litigation.

For the foregoing reasons, Morelli Ratner objects to the FAC's final determination and respectfully renews its request for a reasonable fee allocation of $12 million.

Respectfully submitted,

Benedict P. Morelli, Esq.
**MORELLI RATNER PC**
950 Third Avenue, 11th Floor
New York, New York 10022
Tel: (212) 751-9800
Fax: (212) 751-0046

6

# Exhibit

# A



**MORELLI RATNER**<sub>PC</sub>
ATTORNEYS AT LAW

950 THIRD AVENUE
NEW YORK NY 10022
212.751.9800 OF.
212.751.0046 FX.
877.9800 TR
WWW.MORELLILAW.COM

BENEDICT P. MORELLI
DAVID S. RATNER
———————
ARTHUR L. SALMON
MARTHA M. MCBRAYER

STEVEN C. NOVEMBER
JENNIE L. SHATYNSKI
THOMAS P. O'MALLEY
STEVEN M. GERSHOWITZ
VICTORIA J. MANIATIS
NICOLE V. GURKIN
SARAH BERNETT
SCOTT J. KREPPEIN

OF COUNSEL
TAI & SOBILOFF PC
DAVID L. SOBILOFF
ALLAN Y. TAI

OF COUNSEL
RORY I. LANGMAN

June 27, 2008

Russ M. Herman
Plaintiff's Liason Counsel
Herman, Herman, Katz & Cotlar
820 O'Keefe Ave.
New Orleans, LA 70113

Dear Mr. Herman and the Common Benefit Fund Committee:

I am in a unique position in submitting my application to you for compensation. I was not on the Plaintiff's Steering Committee in either the MDL or New Jersey litigation, nor did I have the opportunity to try any of our cases, although they were ready for trial. The lion's share of my involvement was working on cases other than my own to further the overall litigation. I did this without any arrangement to receive any compensation. I got involved in both trials to assist Mark Lanier and further the global litigation. My only prospect for being compensated was from my 33 1/3% contingency fee retainers with my clients.

In the fall of 2004, Mark Lanier requested my assistance in the numerous depositions he was to take of high ranking Merck executives. I agreed and we took depositions of Reicin, Scolnick, Anstice, Kim and Gilmartin. I reviewed documents, provided my opinions on questions to be asked, framed additional and follow-up questions prior to each deposition. I then attended each deposition with Mark Lanier and assisted him with my professional expertise.

I also deposed the national sales manager, James Dunn, in New York myself while Mr. Lanier was busy in Houston preparing other aspects of the upcoming Ernst trial.

After the completion of all the necessary depositions, The Lanier Law Firm moved to have me admitted Pro Hac Vice in Texas to become co-trial counsel with Mark Lanier on the first case to be tried – Ernst v. Merck.

As co-trial counsel and a member of the Ernst trial team, I participated in all aspects of the trial, from jury selection to summation. I was involved in preparing witnesses, reviewing documents, formulating the opening statement, determining which witnesses to call as well as the order of those witnesses. I argued all the motions in limine,



MORELLI
RATNER&
ATTORNEYS AT LAW

prepared and questioned the economist on the stand, and prepared and delivered a summation to Mark and the team to help frame the final arguments. I also assisted Mark with the crucial video deposition of the coroner, which was then presented on video in court for the jury.

During, the approximately seven weeks of trial, while living in a hotel in Houston, we regularly worked late into the night reviewing documents, testimony and preparing witnesses and determining their order. In addition to working nights, we worked many hours on the weekends. Even on the weekends I returned to New York, I worked on the plane and at home reviewing documents and preparing for the closing arguments. Mark Lanier and I forged a powerful trial team which had a very positive impact on the global litigation for a number of reasons: it was the first trial, it was a huge verdict, and it paved the way for the entire litigation to go forward and ultimate global settlement. I believe that both Mark Lanier and Rick Meadow will attest to the dedicated work I did on both trials as co-counsel.

In March, 2006, I became a member of the Cona/McDarby trial team, again as co-counsel to Mark Lanier. This trial continued for approximately six weeks. During that time I again lived in a hotel in Atlantic City, NJ, leaving for home some weekends. My role was similar to the Ernst case, from jury selection to verdict. In Cona, I reviewed documents (including medical records), assisted in preparing witnesses, including the plaintiff and both plaintiff's daughters, participated in determining the order of witnesses, etc. In addition, I questioned the plaintiff's daughter in front of the jury and prepared and delivered the closing arguments for the Cona case. In this case, again, I had no arrangement to be compensated.

Due to the fact that I manage my own law firm, which has fifteen associates and approximately thirty in staff, my time away for extended periods in Houston and Atlantic City had a significant and deleterious effect on the firm's finances.

After the Cona/McDarby trial, Judge Higbee asked plaintiff's counsel for volunteers in forming a trial team to try ten cases in one trial. I again volunteered which resulted in five of my firm's cases being placed on the list that became known as the "original 39". Four of out cases were totally prepared and ready for trial to further the common benefit of the global litigation. This list was then pared down to a total of eight cases, three of which were ours.

Our office volunteered, and was ready for trial, when the list was again pared down to six. We then had two cases remaining on this list. My firm expended much time



**MORELLI
RATNER&**
ATTORNEYS AT LAW

and money to fully prepare all of these cases originally selected for trial. On the eve of trial, after all preparations were made and the paring ultimately went to two cases, our cases were closed out from trial. We were ready and willing to try cases alone or with a trial team.

I believe that we are entitled to share in this fund because of the work we did as described above which helped to significantly advance the Vioxx litigation. It was the readiness and willingness of firms like ours to expend time, money and effort which led to this national global settlement. Following is a specific breakdown of time spent, documents reviewed, and cases and witnesses prepared to the best of my recollection and that of my team. Please consider my request for common benefit funds in that regard.

Very truly yours,

Benedict P. Morelli

# Exhibit

# B

I, BENEDICT P. MORELLI, depose and state under penalty of perjury:

1.     I am a member of Morelli Ratner PC.  This affidavit is submitted in support of the
application submitted on behalf of my firm as part of its application to receive common
benefit fees and expenses for work we performed to advance the Vioxx litigation.

2.     We are entitled to share in the common benefit fund because both my firm and I devoted
a substantial amount of time, effort and resources for the common benefit of all the clients
and attorneys involved in the global Vioxx litigation.

3.     Although we were not involved in the litigation before the withdrawal of Vioxx from the
market on September 30, 2004, we entered the litigation shortly thereafter.  At that time,
we took an extremely active role; we did not just gather and warehouse cases.

4.     All of our cases were venued in New Jersey and we worked closely with the New Jersey
P.S.C., Seeger Weiss LLP, and Sol Weiss of Anapol Schwartz, to coordinate our efforts to
meet Judge Higbee's requests and move the entire litigation forward.

5.     When Judge Higbee asked for ten cases to be worked up and tried together, four of our
cases were selected out of the ten.  Preparing these cases required the commitment of a
great deal of our resources, both in personnel and money.  This time, effort and expense
was designed to put pressure on Merck to move the litigation toward a final global
resolution.  Our effort told the defendants that plaintiffs' lawyers were serious in pressing
our clients' claims.  In order to accomplish this goal, five attorneys, including me and my
partner, David Ratner, Esq., worked daily on this undertaking.  The effort we put into the
Vioxx litigation, naturally, had an effect on the rest of our practice since we could not
devote as much time and energy to other aspects of our practice.

6.     Our practice is comprised of Mass Tort Pharmaceutical, Employment Discrimination,

Medical Malpractice, and individual Personal Injury cases. The lawyers working on the Vioxx cases were taken off their normal case load responsibilities. Also, it became more difficult to retain new matters because Mr. Ratner and I were not available for meetings and intake interviews on significant matters with injured clients and of counsel attorneys. As a result, the fiscal well being of the firm suffered. When Judge Higbee ultimately reduced the trial list, from ten cases to two, none of our cases was included. I therefore asked for, and was granted, the next trial slot for two of our cases. This never came to pass because of the global settlement.

7.   In 2005, Mark Lanier, Esq., asked me to help him prepare and try the first Vioxx case in Angleton, Texas. I agreed. Not only did I assist in conducting five depositions, and conducted a sixth myself, of Merck executives, but also, I participated in the trial as co-counsel for seven weeks during the summer of 2005. During that time I could not fulfill my duties at my firm or as President of the New York State Trial Lawyers Association. Many things suffered during this period but I was focused on winning the very first Vioxx trial. The verdict of $253 million certainly paved the way for the ultimate global settlement.

8.   In March 2006, again on Mark Lanier's request, and with the knowledge and consent of the New Jersey P.S.C., I became part of the Cona / McDarby trial team. I was again away from my office and my firm duties for six weeks in Atlantic City, New Jersey. I delivered one of the summations at that trial. My motivation was consistent and constant: we had to press Merck and continue to try cases to effectuate a global settlement. I believe this was another trial that certainly was instrumental in the final outcome of the Vioxx settlement.

9.  I trust you understand that my firm and I stayed committed throughout this litigation. We were always in the forefront; volunteering and preparing our cases for trial for the relentless pursuit of the final global settlement.

10. Finally, during the pendency of the litigation, I appeared at all the monthly status conferences with Judge Higbee.

11. Accordingly, it is respectfully requested that our application for common benefit fees and expenses be at a level commensurate with our commitment.

BENEDICT P. MORELLI

Sworn to before me this
29th day of October, 2008

NOTARY PUBLIC

MARIBEL MATOS
Notary Public, State of New York
No. 01MA6014598
Qualified in Putnam County
Commission Expires October 19, 20 10

# Exhibit

# C

# Vioxx MDL 1657

# Fee Allocation Committee

December 2, 2010

Common Benefit Fee Attorney

The Fee Allocation Committee has completed its extensive review of the common benefit work done in the Vioxx litigation and, in accordance with the terms of the Vioxx Settlement Agreement and Pretrial Order 6D, hereby notifies you that the Committee will recommend to Judge Fallon that you receive the common benefit fee award stated on the attached form.

In making its recommendation the Committee has taken into consideration a wide array of information, including your affidavit, presentation (if applicable), and time and cost submissions, as well as the collective knowledge of the members of the Fee Allocation Committee. The Committee has also considered the various factors listed in Pretrial Order 6D and the law applicable to awards of common benefit fees. For those firms receiving a recommendation of $0, the submitted time, if any, was not deemed to be compensable common benefit work.

Pretrial Order 6D provides that you have 14 days to notify the Committee whether you object to this recommendation. Please use the attached form to indicate your acceptance or objection. If you object, you must state in detail the basis of your objection and also indicate the specific amount of common benefit fee award to which you claim you are entitled. This information will be provided to Judge Fallon and any Special Master appointed by Judge Fallon to consider your objection.

The Fee Allocation Committee's recommendation is just that – a recommendation. Under the terms of the Settlement Agreement, Judge Fallon will make the final common benefit fee award. The Committee hopes that the overwhelming majority of common benefit fee applicants will accept the recommendation of the Committee and that Judge Fallon will authorize a prompt interim payment of the award. However, the Committee can guarantee neither the amount nor the timing of payment of the Committee's recommended award to you.

Please return the attached forms with all of the requested information to the Chair of the Fee Allocation Committee, **Russ Herman**, located at 820 O'Keefe Avenue, New Orleans LA 70113, **by December 16,** 2010 **and** the Secretary of the Fee Allocation Committee, **Andy Birchfield,** located at 218 Commerce Street, Montgomery, AL 36104.

Very truly yours,

Russ Herman, Chairman

# COMMON BENEFIT FEES AWARD FORM

## A. INSTRUCTIONS

1. The Fee Allocation Committee has completed its review of your application for common benefit fees under the terms of the Vioxx Settlement Agreement.
2. The Committee will recommend to Judge Fallon that you be awarded the common benefit fee indicated in this Form (the "Recommended Award").
3. Pursuant to Pretrial Order 6D, you must respond to accept or object to the Recommended Award within 14 days. Accordingly, you must return this completed Form no later than **December 16, 2010**.
4. If you accept the Recommended Award, indicate your acceptance by checking in the appropriate box in Section B below.
5. If you object to the Recommended Award, indicate your objection by checking the appropriate box in Section B below, fill in specific amount of common benefit award to which you believe you are entitled and attach to this From an Objection to Recommended Award stating in detail the basis of your objection and for the award requested.
6. Sign this Form in the appropriate space in Section C below.
7. Return this completed Form (and attachment, if there is an Objection) by (1) email; **and** (2) mail or overnight delivery no later than **December 16, 2010**, to:

Russ M. Herman
Chair of the Fee Allocation Committee
820 O'Keefe Avenue
New Orleans, LA 70113
rherman@hhkc.com

Andy Birchfield
Secretary of the Fee Allocation Committee
218 Commerce Street
Montgomery, AL 36104
andy.birchfield@beasleyallen.com

## B. RECOMMENDED AWARD AND RESPONSE

| Recommended Award: | $1,274,129.03 |
|---|---|

Response to Recommended Award: Check only one of the following:

☐ I accept the Recommended Award as my award of common benefit fees.

☐ I object to the Recommended Award and request this amount as my award: $ _____

(NOTE: You must attach an Objection stating in detail the basis of the objection and for the award requested.)

## C. SIGNATURE

| Signature | | | Date | ___/___/___ (month) (day) (year) |
|---|---|---|---|---|
| Printed Name | First | MI | Last | |
| Firm Name | Morelli Ratner PC | | | |

#379620

# Exhibit

# D

December 15, 2010

**VIA FEDERAL EXPRESS:**
Russ M. Herman, Esq.
Chair of the Fee Allocation Committee
Herman, Herman, Katz & Cotlar
820 O'Keefe Avenue
New Orleans, LA 70113

Andy Birchfield, Esq.
Secretary of the Fee Allocation Committee
218 Commerce St.
Montgomery, AL 36104

Re:   <u>Vioxx Common Benefit Fund Application</u>

Dear Mr. Herman, Mr. Birchfield, and the Common Benefit Fund Committee:

We object to the recommended compensation award given Morelli Ratner PC by the Common Benefit Fund Committee. The amount does not come close to compensating us for the work we did, nor does it take into account, my unique contribution in advancing the Vioxx litigation.

While we previously provided an outline of the work we performed in advancing the Vioxx litigation (and will try not to repeat what has already been presented), we never provided the back story. Instead, because he was in a position to do so, I naively relied on Mark Lanier to stand up for me and attest to my significant contribution to the trial team that won the $253.4 million verdict in the very first Vioxx trial, <u>Ernst v. Merck & Co., Inc.</u>, (Brazoria County District Court- Texas 2005), and a second plaintiff's verdict of $22.9 million in <u>Cona/McDarby v. Merck & Co., Inc.</u>, (New Jersey Superior Court – Atlantic County 2009.)

1

Indeed, on numerous occasions Mark Lanier told me he could not have won <u>Ernst</u> without me, praised my extraordinary contribution to <u>Cona/McDarby,</u> and assured me that he would convey his feelings to the committee. Based on the committee's award, I find it hard to believe that Mr. Lanier did so.

While one might argue that a firm's contribution to the litigation should be measured solely by the hours worked, in this case I would argue that my contribution was not only time-consuming, but also singularly unique and significant at a time when the success of the litigation hung in the balance. My participation in the litigation's early bellwether cases was particularly selfless: despite my personal professional accomplishments, and at great personal and professional expense, I was willing to do and ultimately did whatever necessary to advance the Vioxx litigation.

Mark Lanier called me out of the blue (I did not know him) in fall 2004 to assist with the <u>Ernst</u> litigation. He did so because he required my expertise. I first gained trial experience in comparable litigation handling and trying DES cases in the 1980's and 1990's. [*See, e.g.*, <u>Taragan v. Eli Lilly, Inc.</u> (New York County Supreme Court 1990.)] I agreed to help Mr. Lanier on <u>Ernst</u> knowing that I would not receive *any* portion of any attorneys fees recovered in the case. Instead, I worked for the common benefit of all the plaintiffs in this litigation.

As previously outlined, I assisted Mr. Lanier with all the key depositions he conducted for the Vioxx Litigation. In addition, during <u>Ernst</u> we conducted the coroner's deposition. The questions I told Mr. Lanier to ask, after he had completed his questions, were the only questions the jury asked to have read back from the record during their deliberations.

In addition, I worked as a member of the <u>Ernst</u> trial team for some seven weeks in Texas. As I previously outlined, this work was exhaustive as I assisted in every aspect of the trial preparation, from arguing motions *in limine* and assisting with jury selection to preparing a closing argument. I believe that my contribution during the trial also directly impacted the outcome. For instance, I dissuaded Mr. Lanier from presenting a closing argument to the jury that failed to include a recommendation of an appropriate award for the family. While Mr. Lanier did not want to make any specific recommendation, I told him to ask for at least $200 million; he ultimately did so. I suspect that the jury in Brazoria County would not have awarded the Ernst family $253.4 million had Mr. Lanier not followed my advice.

The time I expended on this case was at considerable personal, professional and monetary expense. My tenure as President of the New York State Trial Lawyers Association ("NYSTLA") had only commenced in June 2005. As many of you know, such a position offers a unique opportunity to market oneself and one's firm as well as advance the interests of all plaintiffs. Unfortunately, because of my work on <u>Ernst</u> as well as <u>Cona/McDarby</u>, I spent a significant portion of my time working for the common benefit at the expense of my duties as President of NYSTLA. Indeed, during the <u>Ernst</u> trial alone, I missed leading several NYSTLA executive

2

committee board meetings in New York, as well as representing New York at the ATLA national convention in Toronto.

Moreover, because of my work for the common benefit, I had to postpone the trial of one of the most significant cases in my office at the time, Tenuto v. Lederle Laboratories, a pharmaceutical product liability (polio vaccine) case scheduled for trial the same summer as Ernst. In order to accommodate Ernst, I was forced to ask the Court to remove Tenuto from the trial calendar: it wound up being postponed four years. In 2009, I won a $22.5 million verdict in Tenuto in Richmond County Supreme Court. However, I believed it was important that I instead assist Mr. Lanier in the Ernst trial, even at the expense of my firm's profits.

During the same year, I also devoted significant time and effort as a member of the trial team for the Cona/McDarby trials in Atlantic City. A liability verdict was won in both of these cases. This too was significant. As you know, Merck won defense verdicts in 13 of the 18 cases tried before the Vioxx Settlement Agreement. Moreover, plaintiff was awarded $22.9 million in the McDarby case.

What you might not know is that I did the closing argument in Cona. Since Mr. Lanier was lead counsel in Cona case, you might wonder how this came about. The trial team recognized early on that we could not win causation in Cona because we had no proof of Vioxx use. Not only were there no medical or pharmaceutical records establishing Vioxx use, but Cona's treating physician refused to testify that he had either prescribed Vioxx or provided Vioxx samples to Mr. Cona. On the other hand, we recognized the strong chance of obtaining a plaintiff's verdict in McDarby. Regardless, Mr. Lanier refused to take a defense verdict. In fact, rather than doing so, Mr. Lanier wanted a mistrial. I realized it was important to the overall litigation for plaintiffs to obtain a positive verdict, and that we could do so in McDarby, so we made a deal; he would not cause a mistrial and I would do the closing. I therefore agreed to "take one for the team." I have spent decades building a professional record of success in the courtroom. I knew that it was impossible to win Cona where we had no proof of Vioxx use. Nevertheless I agreed to sum up knowing that plaintiff would lose and knowing that the verdict was broadcast nationally on television. (As it was, despite the flaws in the case, the jury deliberated two days before handing down a defense verdict in Cona.)

I previously discussed how close two of the cases from my firm, Schiff v. Merck, and Weiss v. Merck, came to being selected for trial. These two cases were part of the final four cases lined up for trial in Atlantic County Superior Court, and were removed from that final trial list virtually on the eve of trial. As it was, I was ready, willing and able to try these cases. Curiously, these cases were not selected even though they were significantly stronger than Cona. Not only could we readily prove Vioxx use, but both concerned the death of active, professional men without serious prior cardiac issues. In addition, the prescribing doctors in these cases testified that they would not have prescribed Vioxx had they been told the real risks and the treating doctors testified that Vioxx was a substantial factor in causing the heart attacks and deaths. In fact, Schiff and Weiss were commonly recognized as the strongest cases in the batch.

3

Also, what the committee may not know is that just before my partner David Ratner and I met with the Committee concerning our initial application for compensation, I received a call from Mark Lanier. Mr. Lanier yet again informed me that my contribution had been invaluable and assured me that he would let the Committee know this. During the same conversation, Mr. Lanier also asked me to diminish one of the Committee member's contributions to enhance mine. I felt Mr. Lanier really wanted me to enhance his contribution. I refused to do so. I therefore understand how the committee arrived at its recommended award. Mr. Lanier never spoke on my behalf during our presentation to the committee and probably did not speak for me when you met behind closed doors.

I am passionate in my conviction that while my contribution cannot be pigeonholed or categorized, it aided the Vioxx litigation in ways not reflected by an accountant's review of hours. I am committed to pursuing fair and just compensation for my work.

As per our previous discussion, it is difficult to ask for a specific monetary award in a vacuum. However, in light of the above, I think my contribution should be valued closer to $12 million than the $1.2 million the committee has awarded. Thank you for your consideration.

Respectfully submitted,

Benedict P. Morelli

BPM:jl

4

5

# Exhibit

# E

| Firm | Allocation | Hours | [Rate] | |
|---|---|---|---|---|
| Alley, Clark, Greiwe & Fulmer | $365,000.00 | 1,611.25 | $226.53 | 0.511 |
| Alvarez Law Firm | $15,000.00 | 30.00 | $500.00 | 1.128 |
| Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C. | $3,400,000.00 | 8,430.00 | $403.32 | 0.910 |
| Anastopoulo & Clore LLC | $15,000.00 | 607.75 | $24.68 | 0.056 |
| Andrews & Thornton | $600,000.00 | 2,005.00 | $299.25 | 0.675 |
| Ashcraft & Gerel LLP | $9,000,000.00 | 6,791.50 | $1,325.19 | 2.989 |
| Audet & Partners LLP | $1,165,000.00 | 7,666.00 | $151.97 | 0.343 |
| Aylstock, Witkin, Kreis & Overholtz LLC | $225,000.00 | 841.50 | $267.38 | 0.603 |
| Balkin & Eisbrouch | $15,000.00 | 25.75 | $582.52 | 1.314 |
| Balser, Brian K. Co., LPA | $130,000.00 | 592.25 | $219.50 | 0.495 |
| Barnow | $15,000.00 | 67.25 | $223.05 | 0.503 |
| Barrios, Kingsdorf & Casteix, LLP | $1,700,000.00 | 3,439.25 | $494.29 | 1.115 |
| Bartimus, Frickleton, Robertson & Gorny | $15,000.00 | 30.00 | $500.00 | 1.128 |
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | $40,900,000.00 | 36,747.75 | $1,012.99 | 2.511 |
| Becnel Law Firm, LLC | $455,000.00 | 13,038.25 | $34.90 | 0.079 |
| Bencomo | $327,500.00 | 1,513.50 | $216.39 | 0.488 |
| Bossier & Associates, PLLC | $20,000.00 | 102.50 | $195.12 | 0.440 |
| Branch Law Firm | $0.00 | 7,087.50 | $0.00 | 0.000 |
| Brandi Law Firm | $970,000.00 | 5,214.95 | $186.00 | 0.420 |
| Brown & Crouppen, PC | $73,000.00 | 783.75 | $93.14 | 0.210 |
| Bruce E. Dean | $0.00 | 10.50 | $0.00 | 0.000 |
| Burg, Simpson, Eldredge, Hersh & Jardine, PC | $500,000.00 | 2,599.75 | $192.33 | 0.434 |
| Cafferty Faucher | $30,000.00 | 207.50 | $144.58 | 0.326 |
| Capshaw Goss | $0.00 | 152.50 | $0.00 | 0.000 |
| Carey & Danis, LLC | $0.00 | 5,518.25 | $0.00 | 0.000 |
| Charfoos | $0.00 | 396.75 | $0.00 | 0.000 |
| Childers, Buck & Schlueter | $0.00 | | | 0.000 |
| Cohen Milstein | $750,000.00 | 2,003.75 | $374.30 | 0.844 |
| Cohen, Placitella & Roth, PC | $500,000.00 | 4,964.00 | $100.73 | 0.227 |
| Cunard law Firm | $100.00 | 2,790.75 | $0.04 | 0.000 |
| Cuneo, Gilbert & LaDuca LLP | $0.00 | 1,321.00 | $0.00 | 0.000 |
| Dugan & Browne | $0.00 | 114.25 | $0.00 | 0.000 |

exhibit C

1

| Firm | | | | |
|---|---|---|---|---|
| Engstrom, Lipscomb & Lack | $390,000.00 | 6,866.95 | $56.79 | 0.128 |
| Escobedo Tippet | $0.00 | 14,886.75 | $0.00 | 0.000 |
| Fayard and Honeycutt | $15,000.00 | 416.00 | $36.06 | 0.081 |
| Fibich, Hampton & Leebron, LLP | $610,000.00 | 2,021.25 | $301.79 | 0.681 |
| Freese & Goss, PLLC | $0.00 | 794.00 | $0.00 | 0.000 |
| Friedman Law Offices | $6,500.00 | 20.50 | $317.07 | 0.715 |
| Gainsburgh, Benjamin, Davis, Meunier & Warshauer, LLC | $2,690,000.00 | 1,220.00 | $2,204.92 | 4.974 |
| Gallagher Law Firm (TX) | $40,000.00 | 1,219.50 | $32.80 | 0.074 |
| Gancedo & Nieves LLP | $600,000.00 | 3,649.25 | $164.42 | 0.371 |
| Gianni-Petoyan, Attorneys at Law | $30,000.00 | 314.75 | $95.31 | 0.215 |
| Goldenberg Heller | $0.00 | | | 0.000 |
| Hagens Berman | $0.00 | 236.00 | $0.00 | 0.000 |
| Heins Mills | $4,000.00 | 12.50 | $320.00 | 0.722 |
| Heninger Garrison Davis, llc | $1,000,000.00 | 5,044.00 | $198.26 | 0.447 |
| Herman, Herman, Katz & Cotlar, LLP | $32,500,000.00 | 29,483.50 | $1,102.31 | 2.487 |
| Hovde Dassow & Deets, LLC | $1,165,000.00 | 8,546.50 | $136.31 | 0.308 |
| Irpino | $877,000.00 | 2,920.00 | $300.34 | 0.678 |
| Jacobs Burns | $0.00 | | | 0.000 |
| John Hornbeck | $300,000.00 | 1,390.00 | $215.83 | 0.487 |
| Johnson & Perkinson | $15,000.00 | 847.00 | $17.71 | 0.040 |
| Jones Verras | $30,000.00 | 841.00 | $35.67 | 0.080 |
| Kasowitz, Benson, Torres & Friedman llP | $1,100,000.00 | 4,395.40 | $250.26 | 0.565 |
| Keller Rohrback | $0.00 | 323.00 | $0.00 | 0.000 |
| Kerpsack | $10,000.00 | 54.50 | $183.49 | 0.414 |
| Kline & Specter, PC | $4,000,000.00 | 25,391.25 | $157.53 | 0.355 |
| Labaton Sucharow | $0.00 | 389.00 | $0.00 | 0.000 |
| Langston Law Firm | $0.00 | 597.50 | $0.00 | 0.000 |
| Levin Fishbein Sedran & Berman | $21,400,000.00 | 27,282.75 | $784.38 | 1.769 |
| Levin Simes Kaiser & Gornick, llP | $15,000.00 | 90.00 | $166.67 | 0.376 |
| Levin Papantonio Thomas Mitchell Eshner & Proctor P.A. | $15,600,000.00 | 8,191.75 | $1,904.35 | 4.296 |
| Lewis & Roberts, PLLC | $0.00 | 3,208.00 | $0.00 | 0.000 |
| Lieff, Cab raser, Heimann & Bernstein, LLP | $6,000,000.00 | 24,391.00 | $245.99 | 0.555 |

| | | | | |
|---|---|---|---|---|
| Lockridge, Grindal, Nauen PLLP | $350,000.00 | 4,712.50 | $74.27 | 0.168 |
| Locks law Firm, LLC | $585,000.00 | 8,881.50 | $65.87 | 0.149 |
| Lopez, Hodes, Restaino, Milman & Skikos | $1,500,000.00 | 5,104.25 | $293.87 | 0.663 |
| Lundy & Davis | $100,000.00 | 550.00 | $181.82 | 0.410 |
| Martin & Jones | $0.00 | 1,943.00 | $0.00 | 0.000 |
| Matthews & Associates | $1,400,000.00 | 10,668.50 | $131.23 | 0.296 |
| Mithoff Law Firm | $15,000.00 | 16.00 | $937.50 | 2.115 |
| Morelli Ratner PC | $750,000.00 | 1,833.50 | $409.05 | 0.923 |
| Motley, Rice LLC | $195,000.00 | 3,289.50 | $59.28 | 0.134 |
| Murray Law Firm | $162,000.00 | 2,203.50 | $73.52 | 0.166 |
| Neblett, Beard & Arsenault | $1,450,000.00 | 7,396.50 | $196.04 | 0.442 |
| Panish & Shea | $1,640,000.00 | 3,975.75 | $412.50 | 0.931 |
| Price Waicukauski & Riley, LLCC | $15,000.00 | 756.00 | $19.84 | 0.045 |
| Richardson, Patrick, Westbrook & Brickman | $15,000.00 | 111.50 | $134.53 | 0.303 |
| Robert J. DeBry | $15,000.00 | 31.00 | $483.87 | 1.092 |
| Robert M. Becnel | $30,000.00 | 924.25 | $32.46 | 0.073 |
| Robins, Kaplan, Miller & Ciresi LLP | $850,000.00 | 2,400.75 | $354.06 | 0.799 |
| Robinson, Catcagnie & Robinson | $6,000,000.00 | 21,840.25 | $274.72 | 0.620 |
| Roda Nast, P.C. | $45,000.00 | 1,267.75 | $35.50 | 0.080 |
| Sanders Viener Grossman, LLP | $15,000.00 | 112.50 | $133.33 | 0.301 |
| Sanford, Shelly A., PLLC (predecessor was PSC member until 6/8/06) | $6,800,000.00 | 13,946.00 | $487.60 | 1.100 |
| Seeger Weiss LLP | $40,900,000.00 | 57,693.50 | $708.92 | 1.599 |
| Sheller, P.C. | $65,000.00 | 1,824.25 | $35.63 | 0.080 |
| Silverman & Fodera | $73,000.00 | 327.00 | $223.24 | 0.504 |
| Singleton Law Firm | $180,000.00 | 2,388.75 | $75.35 | 0.170 |
| Snapka, Turman & Waterhouse, LLP | $75,000.00 | 2,926.50 | $25.63 | 0.058 |
| Ted Kanner | $1,350.00 | 6.75 | $200.00 | 0.451 |
| Texas Consortium | $20,095,000.00 | 21,002.25 | $956.80 | 2.158 |
| Ranier, Gayle & Elliot, LLC | | 5,576.50 | | |
| Williams Kherkher | | 9,032.00 | | |
| Provost Umphrey | | 274.25 | | |
| Watts Law Firm | | 3,530.50 | | |
| Grant Kaiser | | 2,589.00 | | |
| The Holman law Firm | $0.00 | 212.50 | $0.00 | 0.000 |

| | | | | |
|---|---|---|---|---|
| Ury & Moskow LLC | $0.00 | 3.00 | $0.00 | 0.000 |
| Weinberg, Eric H., law Firm of | $220,000.00 | 10,361.75 | $21.23 | 0.048 |
| White Meany & Wetherall | $0.00 | 1,412.75 | $0.00 | 0.000 |
| Whitehead law Firm | $45,000.00 | 504.75 | $89.15 | 0.201 |
| Williamson & Williams | $15,000.00 | 84.25 | $178.04 | 0.402 |
| Wold | $580.00 | 4.25 | $136.47 | 0.308 |
| Zimmerman, Reed PLLP | $0.00 | 204.75 | $0.00 | 0.000 |
| Zink, Diane K. | $0.00 | | | 0.000 |
| **TOTALS** | **$311,885,030.00** | **563,289.80** | | |

members of PSC as of the final    $230,000,000.00    240,010.25

yellow indicates PSC committee membership
orange indicates both committee memberships

# Exhibit

# F

| FIRM | FORMAL RESPONSE | ALLOCATION | AMOUNT REQUESTED |
|---|---|---|---|
| Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, PC | Objection | $3,400,00.00 | $14,169,042.94 |
| Audet & Partners, LLP | Objection | $1,165,00.00 | $2,697,960.00 |
| Aylstock, Witkin, Kreis & Overholtz, LLC | Objection | $225,000.00 | $317,213.37 |
| Becnel Law Firm, LLC | Objection | $455,000.00 | $4,041,875.00 |
| Branch Law Firm | Objection | $0.00 | $3,688.425.00 |
| Cary & Danis, LLC | Objection | $0.00 | $2,446,185.00 |
| Cohen, Placitella & Roth | Objection | $500,000.00 | |
| Cunard Law Firm | Objection | $100,000.00 | $476,981.00 |
| Escobedo, Tippett | Objection | $0.00 | - |
| Freese & Goss, PLLC | Objection | $0.00 | $244,000.00 |
| Gancedo & Nieves, LLP | Objection | $600,000.00 | $1,750,000.00 |
| Heninger, Garrison, Davis, LLC | Objection | $1,000,000.00 | $2,424,595.00 |
| Hovde, Dassow & Deets, LLC | Objection | $1,165.000.00 | $2,877.081.00 |
| Kline & Specter, PC | Objection | $4,000,000.00 | $12,080,690.00 |
| Lewis & Roberts, PLLC | Objection | $0.00 | $494,153.00 |
| Lockridge, Grindal, Nauen, PLLP | Objection | $350,000.00 | $1,211,250.00 |
| Locks Law Firm, LLC | Objection | $585,000.00 | $6,518,226.00 |
| Martin & Jones | Objection | $0.00 | $324,445.00 |
| Matthews & Associates | Objection | $1,400,000.00 | $13,000,000.00 |
| Morelli Ratner, PC | Objection | $750,000.00 | $12,000,000.00 |
| Motley, Rice LLC | Objection | $195,000.00 | $5,039,542.00 |
| Murray Law Firm 1 | Objection | $162,000.00 | $1,622,460.00 |
| Roda Nast, PC | Objection | $45,000.00 | $503,783.00 |
| Sheller, PC | Objection | $65,000.00 | $566,142.00 |
| Snapka, Turman & Waterhouse | Objection | $75,000.00 | $31,000,000.00 |
| Weinberg, Eric H., Law Firm of | Objection | $220,000.00 | |
| White, Meany & Wetherall | Objection | $0.00 | $414,325.00 |

# Exhibit

# G

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: VIOXX<br>        PRODUCTS LIABILITY LITIGATION | : <br> : <br> : <br> : <br> : <br> : | MDL NO. 1657 <br><br> SECTION: L <br><br> JUDGE FALLON <br> MAG. JUDGE KNOWLES |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO:        ALL CASES**

<u>**ORDER**</u>

Nearly all of the litigants who qualified under the Vioxx Settlement Program have received their funds.[1]  It is now appropriate to focus on common benefit fees for the attorneys who performed common benefit work in this MDL and in the coordinated state litigation.  The common benefit fee has been set by the Court at 6.5%.  This fee is to come out of the 32% attorney's fee which the Court has set and not as an additional fee for the claimants.  It is now necessary to allocate this fee.

The Court has previously detailed the procedure it intends to follow with respect to allocating common benefit attorney's fees in Pretrial Order 6D as well as orally at the Monthly Status Conference held on January 6, 2011.  To capsulize, the procedure is as follows:

From an early stage in this litigation, the Court indicated that any plaintiff attorney wishing to do common benefit work would have that opportunity whether or not they were on the Plaintiff's Steering Committee.  They were required, however, to work under the direction of the PSC and to report their time and expenses to the Court-appointed CPA.  Over 100 attorneys

---

[1]There are approximately seven claimants whose funds have not been distributed due to estate issues and other matters.

1

report that they have done common benefit work and have filed a fee application. The Court appointed a Fee Allocation Committee ("FAC") to receive and analyze applications for common benefit fees. The Court set forth procedures for the FAC to take evidence from common benefit fee applicants regarding their efforts in the Vioxx litigation, and guidelines for assessing the relative contribution of each fee applicant.

Using these procedures and guidelines the FAC was directed to prepare a preliminary allocation of common benefit fees and present that allocation to each applicant for input. If the individual applicant was dissatisfied with a suggested allocation, he or she could present the reasons for that dissatisfaction to the FAC to consider and possibly amend before presenting the Court with a final recommended allocation. This was done and the FAC now submits its final recommendation.

In accordance with the Court's previous statements, the Court now publishes the recommendation and associated materials for all to see. Anyone having any objection to this proposed distribution shall file with the Court an objection setting forth the reasons for their objection and describing the amount they feel they should be entitled to and why. Anyone who did not object to the FAC's preliminary allocation may object now. Anyone who did object to the FAC's preliminary allocation may object again, and should file with the Court the materials they submitted to the FAC in connection with their prior objection, as well as any additional materials they may wish to provide. Objections shall be due on February 4, 2011.

After the time for objection has expired, the Court will convene a meeting of all objectors, if any. The Court will require the objectors to elect a lead and liaison counsel, and the FAC will elect a lead and liaison counsel. The Court will confer with those counsel to set a schedule for discovery, briefing, and if necessary a hearing, to be supervised by the Court's

2

Special Master, Patrick Juneau.  At the conclusion of this process, the Special Master will prepare an independent recommended allocation based on all the materials provided by the objectors and the FAC.  With the benefit of the FAC's recommendation, the Special Master's recommendation, and all materials submitted by the FAC and any objectors, the Court will then allocate the common benefit fund.

New Orleans, Louisiana, this 20th day of January, 2011.

UNITED STATES DISTRICT JUDGE

3

# HERMAN HERMAN
# KATZ & COTLAR

—— L.L.P. ——
ATTORNEYS AT LAW
*Est. 1942*

820 O'Keefe Avenue
New Orleans, Louisiana
70113-1116

p: 504.581.4892
f: 504.561.6024
e: info@hhkc.com

hhkc.com

Herman Herman (1913-1987)
Russ M. Herman*
Maury A. Herman*
Morton H. Katz*
Sidney A. Cotlar*
Steven J. Lane
Leonard A. Davis*
James C. Klick*
Stephen J. Herman

Eldon D. Katz
Steven E. Calamusa

Daniel E. Cain
Jennifer J. Greene
John S. Creevy
Joseph S. Liptcin*
Edward H. Pana
Joseph A. Kott, et al. (Of Counsel)

Offices in New Orleans
and Gulfport, Louisiana

Its Rus-related attorneys are
licensed in Herman Katz LLP,
offices in California and Texas,
Louisiana, Mississippi, etc.

*Also licensed in Louisiana,
Mississippi, New York
and Washington, D.C.*

## *VIA HAND DELIVERY*

January 19, 2011

Honorable Eldon E. Fallon
c/o United States District Court
Eastern District of Louisiana
500 Poydras Street
Room C456
New Orleans, LA 70130

            RE:    **MDL No. 1657 - Section L**
                   ***In Re:* Vioxx Products Liability Litigation**

Dear Judge Fallon:

In Compliance with the Court's Pre-Trial Orders 6D, 32 and your Honor's Statements on the Record at the January 6, 2011 Status Conference in Open Court, the Fee Allocation Committee attaches its Recommendation which includes Exhibits A, B & C.

                   Respectfully submitted,

                   By      Russ M. Herman, Chairman
                   By:     Andy Birchfield, Secretary


                   RUSS M. HERMAN, ESQ.


RMH/jsr
Attachments
cc:    Fee Allocation Committee

1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | * | MDL Docket No. 1657 |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | Section L |
| | * | |
| | * | Judge Fallon |
| | * | Mag. Judge Knowles |
| | * | |

## Recommendation of Fee Allocation Committee

The Fee Allocation Committee, pursuant to the Court's Pretrial Order No. 32, has undertaken an extensive review of the common benefit work done in this litigation and is now prepared to make its recommendation to the Court. In reaching this recommendation the Fee Allocation Committee reviewed the detailed affidavits submitted by common benefit fee applicants. Additionally, the Fee Allocation Committee conducted hearings in Atlantic City, New Jersey; New Orleans, Louisiana; Houston, Texas; and Los Angeles, California. At these hearings, common benefit fee applicants were given the opportunity to present additional testimony in support of their common benefits application. The Fee Allocation Committee reviewed the time and expense submissions of the applicant firms as well as reports provided by the Court-appointed CPA, Phil Garrett. In preparing this recommendation, the Fee Allocation Committee has rigorously applied the *Johnson* factors to each applicant, as well as the additional factors set forth in Pretrial Order No. 6D.

In determining the appropriate amount of common benefit compensation for each applicant, the Fee Allocation Committee has considered the type of work that was performed and the value the work contributed to the litigation, adopting the views expressed by the Court in *Turner v. Murphy Oil*, 582 F. Supp.2d 797 (E.D. La. 2008):

> Hours spent taking depositions, participating in hearings, or trials, actively participating in developing the appropriate litigation strategies and tactics (through moot court presentations or similar practices), drafting briefs, actively participating in Court conferences, arguing motions, negotiating with opposing counsel to reach a settlement, and actively managing and organizing the administrative aspects of the case are some of the more significant types of work that a case of this sort requires and deserves the most recognition. This, of course, is not the only type of work that such a case requires. Documents must be reviewed, categorized, and analyzed: emails must be read and responded to; claimants must be kept advised; meetings must be attended and in general the litigation must be monitored. This work while necessary and often time consuming, does not deserve equal treatment when allotting fees.

2.

*Turner,* 582 F.Supp.2d. at 810-811.

For most common benefit applicants, time was not recorded contemporaneously with the work that was done. Plaintiffs' lawyers do not traditionally record time. This is particularly true for work performed in connection with the state-consolidated litigations where Pretrial Order No. 6 was not in effect. Therefore, the Committee has given due consideration to the time submitted by each common benefit fee applicant, but the number of hours submitted was not the dominant factor. Instead, hours were used to cross-check the amount of the recommended allocation.

The members of the Fee Allocation Committee are well situated to evaluate the fee applications. The Fee Allocation Committee is comprised of individuals who:

- Pioneered the Vioxx litigation, having filed and litigated Vioxx cases for more than three years before the formation of the MDL;
- Served as Plaintiffs' Liaison Counsel, Co-Lead Counsel, and the Executive Committee of the MDL, and served in leadership positions in the coordinated litigations in California, Texas and New Jersey;
- Served as Lead or Co-Lead Counsel in five of the six MDL bellwether trials;
- Served as Lead or Co-Lead Counsel in 13 of the 19 total jury trials (state and federal);
- Represented 25% of the total participants enrolled in the Settlement Program;
- Served as Chairs or Co-Chairs of the Law and Briefing Committee, Trial Committee, Discovery Committee and Administrative Committee in the MDL;
- Comprised the entire Plaintiffs' Negotiating Committee that negotiated the Master Settlement Agreement over a period of eleven months; and
- Provided leadership in every aspect of the Vioxx litigation.

Using the *Johnson* factors, the members of the Fee Allocation Committee carefully weighed all testimony and evidence submitted by the applicants. The Fee Allocation Committee members also drew upon their own knowledge regarding the roles of each applicant.

In addition, the Fee Allocation Committee developed a point system to assist in an objective evaluation of the nature and value of each applicant firm's contribution to the overall litigation. After careful consideration, the Fee Allocation Committee made an initial determination as to the appropriate common benefit allocation for each applicant firm. This amount was then communicated to each firm on an individual basis. To ensure due process, each applicant was afforded 14 days to object to the preliminary recommendation and to set forth the basis for the objection in writing. The Fee Allocation Committee considered each objection, made appropriate adjustments and is now prepared to present the recommendation to the Court.

Exhibit A is a list of common benefit fee applicants and the Fee Allocation Committee's recommended common benefit award.

3

Exhibit B is a list of applicant firms that accepted the preliminary recommendation of the Fee Allocation Committee.

Exhibit C is a list of applicant firms that objected to the preliminary recommendation of the Fee Allocation Committee with the amount requested by each objector.

| Firm | Final Allocation |
|------|------------------|
| Alley, Clark, Greiwe & Fulmer | $365,000 |
| Alvarez Law Firm | $15,000 |
| Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C. | $3,400,000 |
| Anastopoulo & Clore, LLC | $15,000 |
| Andrews & Thornton | $600,000 |
| Ashcraft & Gerel LLP | $9,000,000 |
| Audet & Partners, LLP | $1,165,000 |
| Aylstock, Witkin, Kreis & Overholtz, LLC | $225,000 |
| Balkin & Eisbrouch | $15,000 |
| Balser, Brian K., Co., LPA | $130,000 |
| Barnow | $15,000 |
| Barrios, Kingsdorf & Casteix, LLP | $1,700,000 |
| Bartimus, Frickleton, Robertson & Gorny | $15,000 |
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | $40,900,000 |
| Becnel Law Firm, LLC | $455,000 |
| Bencomo | $327,500 |
| Blizzard, McCarthy & Nabers, LLP | $11,600,000 |
| Bossier & Associates, PLLC | $20,000 |
| Branch Law Firm | $0 |
| Brandi Law Firm | $970,000 |
| Brown & Crouppen, PC | $73,000 |
| Bruce C. Dean | $0 |
| Burg, Simpson, Eldredge, Hersh & Jardine, PC | $500,000 |
| Cafferty Faucher | $30,000 |
| Capshaw Goss | $0 |
| Carey & Danis, LLC | $0 |
| Charfoos | $0 |
| Childers, Buck & Schlueter | $0 |
| Cohen Milstein | $750,000 |
| Cohen, Placitella & Roth, PC | $500,000 |
| Cunard Law Firm | $100,000 |
| Cuneo, Gilbert & LaDuca LLP | $0 |
| Dugan & Browne | $0 |
| Engstrom, Lipscomb & Lack | $390,000 |
| Escobedo Tippet | $0 |
| Fayard & Honeycutt | $15,000 |
| Fibich, Hampton & Leebron, LLP | $610,000 |
| Freese & Goss, PLLC | $0 |
| Friedman Law Offices | $6,500 |
| Gainsburgh, Benjamin, Davis, Meunier & Warshauer, LLC | $2,690,000 |
| Gallagher Law Firm (TX) | $40,000 |
| Gancedo & Nieves LLP | $600,000 |
| Gianni-Petoyan, Attorneys at Law | $30,000 |
| Girardi & Keese | $20,100,000 |
| Goldenberg Heller | $0 |

| Firm | Final Allocation |
|---|---|
| Hagens Berman | $0 |
| Heins Mills | $4,000 |
| Heninger Garrison Davis, LLC | $1,000,000 |
| Herman, Herman, Katz & Cotler, LLP | $32,500,000 |
| Hovde Dassow & Deets, LLC | $1,165,000 |
| Irpino | $877,000 |
| Jacobs Burns | $0 |
| John Hornbeck | $300,000 |
| Johnson & Perkinson | $15,000 |
| Jones Verras | $30,000 |
| Kasowitz, Benson, Torres & Friedman LLP | $1,100,000 |
| Keller Rohrback | $0 |
| Kerpsack | $10,000 |
| Kline & Specter, PC | $4,000,000 |
| Labaton Sucharow | $0 |
| Langston Law Firm | $0 |
| Lanier Law Firm, PC | $27,000,000 |
| Levin Fishbein Sedran & Berman | $21,400,000 |
| Levin Simes Kaiser & Gornick, LLP | $15,000 |
| Levin, Papantonio, Thomas, Mitchell, Eshner & Proctor P.A. | $15,600,000 |
| Lewis & Roberts, PLLC | $0 |
| Lieff, Cabraser, Heimann & Bernstein, LLP | $6,000,000 |
| Lockridge, Grindal, Nauen PLLP | $350,000 |
| Locks Law Firm, LLC | $585,000 |
| Lopez, Hodes, Restaino, Milman & Skikos | $1,500,000 |
| Lundy & Davis | $100,000 |
| Martin & Jones | $0 |
| Matthews & Associates | $1,400,000 |
| Mithoff Law Firm | $15,000 |
| Morelli Ratner PC | $750,000 |
| Motley, Rice LLC | $195,000 |
| Murray Law Firm 1 | $162,000 |
| Neblett, Beard & Arsenault | $1,450,000 |
| Panish & Shea | $1,640,000 |
| Price Waicukauski & Riley, LLC | $15,000 |
| Richardson, Patrick, Westbrook & Brickman | $15,000 |
| Robert J. DeBry | $15,000 |
| Robert M. Becnel | $30,000 |
| Robins, Kaplan, Miller & Ciresi L.L.P. | $850,000 |
| Robinson, Calcagnie & Robinson | $6,000,000 |
| Roda Nast, P.C. | $45,000 |
| Sanders Viener Grossman, LLP | $15,000 |
| Sanford, Shelly A., PLLC | $6,800,000 |
| Seeger Weiss LLP | $40,900,000 |
| Sheller, P.C. | $65,600 |

| Firm | Final Allocation |
|---|---|
| Silverman & Fodera | $73,000 |
| Singleton Law Firm | $180,000 |
| Snapka, Turman & Waterhouse, L.L.P | $75,000 |
| Ted Kanner | $1,350 |
| Texas Consortium (Ranier, Gayle & Elliot, L.L.C.; Williams Kherkher; Provost Umphrey; Watts Law Firm; Grant Kaiser) | $20,095,000 |
| The Holman Law Firm | $0 |
| Ury & Moskow LLC | $0 |
| Weinberg, Eric H., Law Firm of | $220,000 |
| Weitz & Luxenberg, P.C. | $20,000,000 |
| White Meany & Wetherall | $0 |
| Whitehead Law Firm | $45,000 |
| Williamson & Williams | $15,000 |
| Wold | $580 |
| Zimmerman, Reed PLLP | $0 |
| Zink, Diane K. | $0 |

| Firm | Formal Response |
|---|---|
| Ailey, Clark, Greiwe & Fulmer | Accepted |
| Alvarez Law Firm | Accepted |
| Anastopoulo & Clore, LLC | Accepted |
| Andrews & Thornton | Accepted |
| Ashcraft & Gerel LLP | Accepted |
| Balser, Brian K., Co., LPA | Accepted |
| Barnow | Accepted |
| Barrios, Kingsdorf & Casteix, LLP | Accepted |
| Bartinus, Frickleton, Robertson & Gorny | Accepted |
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | Accepted |
| Bencomo | Accepted |
| Blizzard, McCarthy & Nabers, LLP | Accepted |
| Bossier & Associates, PLLC | Accepted |
| Brandi Law Firm | Accepted |
| Burg, Simpson, Eldredge, Hersh & Jardine, PC | Accepted |
| Cafferty Faucher | Accepted |
| Charfoos | Accepted |
| Cohen Milstein | Accepted |
| Engstrom, Lipscomb & Lack | Accepted |
| Fayard & Honeycutt | Accepted |
| Fibich, Hampton & Leebron, LLP | Accepted |
| Gainsburgh, Benjamin, Davis, Meunier & Warshauer, LLC | Accepted |
| Gianni-Petoyan, Attorneys at Law | Accepted |
| Girardi & Keese | Accepted |
| Goldenberg Heller | Accepted |
| Herman, Herman, Katz & Cotlar, LLP | Accepted |
| Irpino | Accepted |
| Jacobs Burns | Accepted |
| Johnson & Perkinson | Accepted |
| Kasowitz, Benson, Torres & Friedman LLP | Accepted |
| Lanier Law Firm, PC | Accepted |
| Levin Fishbein Sedran & Berman | Accepted |
| Levin Simes Kaiser & Gornick, LLP | Accepted |
| Levin, Papantonio, Thomas, Mitchell, Eshner & Proctor P.A. | Accepted |
| Lieff, Cabraser, Heimann & Bernstein, LLP | Accepted |
| Lopez, Hodes, Restaino, Milman & Skikos | Accepted |
| Mithoff Law Firm | Accepted |
| Neblett, Beard & Arsenault | Accepted |
| Panish & Shea | Accepted |
| Price Waicukauski & Riley, LLC | Accepted |
| Richardson, Patrick, Westbrook & Brickman | Accepted |
| Robert J. DeBry | Accepted |
| Robert M. Becnel | Accepted |
| Robins, Kaplan, Miller & Ciresi L.L.P. | Accepted |
| Robinson, Calcagnie & Robinson | Accepted |
| Sanders Viener Grossman, LLP | Accepted |
| Sanford, Shelly A., PLLC | Accepted |
| Seeger Weiss LLP | Accepted |
| Silverman & Fodera | Accepted |
| Singleton Law Firm | Accepted |
| Ted Kanner | Accepted |
| Texas Consortium (Ranier, Gayle & Elliot, L.L.C.; Williams Kherkher; Provost Umphrey; Watts Law Firm; Grant Kaiser) | Accepted |
| Ury & Moskow LLC | Accepted |
| Weitz & Luxenberg, P.C. | Accepted |
| Whitehead Law Firm | Accepted |
| Williamson & Williams | Accepted |
| Wold | Accepted |

EXHIBIT B

| Firm | Formal Response | |
|------|-----------------|---|
| Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C. | Objection | |
| Audet & Partners, LLP | Objection | |
| Aylstock, Witkin, Kreis & Overholtz, LLC | Objection | |
| Becnel Law Firm, LLC | Objection | |
| Branch Law Firm | Objection | |
| Carey & Danis, LLC | Objection | |
| Cohen, Placitella & Roth, PC | Objection | |
| Cunard Law Firm | Objection | |
| Escobedo Tippet | Objection | |
| Freese & Goss, PLLC | Objection | |
| Gancedo & Nieves LLP | Objection | |
| Heninger Garrison Davis, LLC | Objection | |
| Hovde Dassow & Deets, LLC | Objection | |
| Kline & Specter, PC | Objection | |
| Lewis & Roberts, PLLC | Objection | |
| Lockridge, Grindal, Nauen PLLP | Objection | |
| Locks Law Firm, LLC | Objection | |
| Martin & Jones | Objection | |
| Matthews & Associates | Objection | |
| Morelli Ratner PC | Objection | |
| Motley, Rice LLC | Objection | |
| Murray Law Firm 1 | Objection | |
| Roda Nast, P.C. | Objection | |
| Sheller, P.C. | Objection | |
| Snapka, Turman & Waterhouse, L.L.P | Objection | |
| Weinberg, Eric H., Law Firm of | Objection | |
| White Meany & Wetherall | Objection | |

EXHIBIT C