IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

------------------------------------------------------x
                                                       :      CIVIL ACTION
                                                       :      NO. 08-1633
                                                       :
                                                       :
In Re: Vioxx Products Liability Litigation             :
                                                       :      SECTION L, MAG. 3
                                                       :
                                                       :      HONORABLE ELDON E. FALLON
                                                       :      HONORABLE DANIEL E. KNOWLES, III
                                                       :
                                                       :      In Relation To: MDL No. 1657
                                                       :
                                                       :
                                                       :
------------------------------------------------------x

### ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN AND SMALLEY, P.C.'S OBJECTION TO THE VIOXX FEE ALLOCATION COMMITTEE'S COMMON BENEFIT FEE RECOMMENDATION

The Vioxx Fee Allocation Committee recommended Anapol, Schwartz, Weiss, Cohan, Feldman and Smalley, P.C. (hereinafter "Anapol") receive $3,400,000.00 for common benefit work. Anapol believes it should receive an award of at least $9,000,000.00, based upon initial time reporting submissions, subsequent submissions requested by the Fee Allocation Committee and after reviewing the proposed allocations posted on the Eastern District of Louisiana, Vioxx MDL website. As Co-Lead Liaison Counsel in the massive New Jersey Consolidated State Court Vioxx Litigation, Anapol performed quality work, different and apart from the MDL litigation, that furthered this litigation.

## I.    INTRODUCTORY STATEMENT

Anapol's recommended award of $3,400,000.00 is insufficient, on its face, because it failed to include the numerous supplemental hours that the Fee Committee requested it submit and appears to disregard Anapol's integral State Court involvement as it was awarded almost no enhancement to its non supplemented lodestar.

- 1 -

## A.     Additional Hours

As required by Pretrial Orders No. 6, 6(B) and 6(C), Anapol submitted time reports setting forth the hours it spent on common benefit-related work. Time was submitted for the period of December, 2001 – May, 2008. Time was also submitted for work Anapol undertook on the *Hatch* matter, a bellwether case slated for trial in late 2006. This work totaled 8,430 hours. When these 8,430 hours were multiplied by the corresponding, and extremely reasonable, Anapol hourly rates ($500.00 per hour for senior partners; $250.00 per hour for senior associates; and $125.00 per hour for paralegals), it equaled $3,306,026.20, which is almost exactly what Anapol was awarded by the Fee Allocation Committee.[1]   Apparently, the time Anapol submitted for the period of December, 2001 – May, 2008 and the *Hatch* claim was granted by the Fee Allocation Committee.

In early January, 2009, Anapol submitted an additional 4,617.5 hours for common benefit consideration. These hours were related to work performed by Anapol in nine (9) bellwether cases, six of which were slated to go to trial in January, 2008 – just two months after settlement was announced. During Anapol's December 1, 2008 presentation to the Fee Allocation Committee in Atlantic City, New Jersey, it was the Committee that advised Anapol to submit the hours it spent on these bellwether cases, as they were to the benefit of all plaintiffs. Accordingly, on January 8, 2009, Anapol submitted an additional 4,617.5 hours to the Fee Allocation Committee's designated accountant, Wegmann, Dazet & Company. Attached hereto, as Exhibit "A", is a January 8, 2009 letter to Wegmann, Dazet and the accompanying time reports. The 4,617.5 hours amounted to an additional $1,373,875.00 in lodestar fees, which increases the Anapol lodestar to $4,773,875.00.

## B.     Anapol's Award Should Be Enhanced

Anapol played a pivotal role in the Vioxx Litigation before most firms even knew the Vioxx litigation existed. As early as 2001, Anapol was attending organizational and strategy sessions in order to prosecute the Vioxx cases. Anapol's efforts only intensified as the litigation

---

[1]     Anapol assumes that it was given a very slight upward adjustment to account for the approximately $94,000.00 difference between the hours submitted and the hours awarded.

progressed.  Just a few examples include:  (1) Anapol filed what was believed to be the first New Jersey Vioxx lawsuit; (2) Sol H. Weiss and David Jacoby, two Anapol senior partners with extensive experience prosecuting mass tort pharmaceutical claims, were appointed as Co-Lead Counsel for the New Jersey Coordinated Vioxx Litigation;[2] (3) Anapol negotiated or argued many of the issues, motions, orders, findings and rulings that were handed down in the New Jersey Consolidated Litigation; (4) Anapol was instrumental in developing generic and case specific experts in support of plaintiffs' positions; and (5) Anapol worked on numerous bellwether trial cases.  When analyzing common benefit fee allocations, courts uniformly recognize and reward these efforts.  Therefore, Anapol's common benefit fee award of $4,773,875.00 deserves, at a minimum, an enhancement to at least nine-million dollars, ($9,000,000.00).

## II.   STATEMENT OF FACTS

### A.   Bellwether Trials – Additional Hours

On December 1, 2008, Anapol met with the Fee Allocation Committee in Atlantic City, New Jersey.  When the Committee heard that Anapol had only submitted hours for one of its bellwether trial cases, they instructed Anapol to submit its hours on their other bellwether cases as well.  Anapol then did so.  *See* Exhibit "A".

As set forth in Exhibit "A", Anapol submitted hours in nine (9) bellwether cases: *Abdel-Malek; Kimmelman; Ortiz; Rodemoyer; Groff; Biehls; Levinson; DiTrolio; and Williams-McCray.*  All of these cases had trial schedules at some point in time during the New Jersey Vioxx Litigation.  These cases were worked up extensively:  depositions of plaintiffs, family members/witnesses and treating physicians were taken; expert reports were proffered; expert depositions were conducted; motion practice was undertaken in anticipation of trial; and trial preparation was in full mode.  None of the cases ultimately went to trial as, on two occasions, other cases were selected and, on a third occasion, the settlement was announced.  However, the work done in preparing these bellwether cases for trial and their impact on motivating Merck to settle was not lost on the Committee during the December 1, 2008 presentation.

---

[2]     David Buchanan, a partner at Seeger Weiss, was also appointed as Co-Lead Liaison Counsel.

### B.      Enhanced Award

The MDL Court has provided that the factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), commonly referred to as the *Johnson* factors, should serve as a basis for appropriate fee allocations.  In addition to the *Johnson* factors, Judge Fallon has also recognized that descriptions of counsel's common benefit contributions should also be taken into consideration.  *See* Pretrial Order 6(D).  The Court identified fourteen (14) such factors which best describe a firm's common benefit participation.  *Id*.  These factors compel awarding a fair multiplier above the base lodestar.

The fourteen (14) factors identified by the Court are as follows:

### 1.      The extent to which each common benefit firm made a substantial contribution to the outcome of the litigation.

Anapol filed, what it believed to be, the first New Jersey Vioxx case in 2002.  After additional Vioxx cases were filed, including many by Anapol, the New Jersey Supreme Court designated Vioxx as a mass tort in June 2003.  All pending and newly filed Vioxx cases were assigned to The Honorable Carol E. Higbee of Atlantic County, New Jersey.  Shortly thereafter, Anapol senior partners, Sol H. Weiss and David Jacoby, were named Co-Lead Counsel for the New Jersey Vioxx Litigation, along with David Buchanan.  In this capacity, Anapol worked on many aspects of an initially coordinated litigation, including, but not limited to, the following: preparation of a Short Form Complaint; negotiation of a 34 page comprehensive Plaintiff Fact Sheet (each plaintiff needed to complete); negotiation of early Pretrial Orders; and generally laying the groundwork for how the New Jersey cases would be litigated in the future.

Once Vioxx was withdrawn from the market, the litigation exploded.  At its peak, almost 16,000 Vioxx cases were pending in New Jersey.  Anapol had Lead/Liaison Counsel responsibilities with respect to all the various firms that filed cases in New Jersey.  Anapol also continued to work on all global litigation issues such as resolving fact sheet disputes; relieving plaintiffs from responding to endless threats of dispositive motions for minor fact sheet deficiencies; the housing and checking of Merck's 10 million pages of sales representative information to the respective plaintiffs' firms; continued negotiation of case management orders; selection of cases for trial, as well as negotiation of trial issues; and negotiations with Merck's

- 4 -

counsel on a laundry list of items.  Anapol also participated in countless motion arguments and conferences with the Court which all had bearing on the litigation's successful resolution.

The New Jersey Vioxx Litigation was the second largest coordination behind the MDL. Five trials were held in New Jersey, including two victories.  Had the New Jersey litigation not been run efficiently and successfully, it would have had an impact on both Merck's willingness to settle and the value upon which it agreed to settle.  Anapol successfully performed its Lead Counsel duties, along with Seeger Weiss, in getting proper cases trial ready for selection of bellwether cases.

**2.      The quality of each firm's work.**

Anapol provided quality common benefit work.  A perfect example of this is the time Anapol spent finding and working with experts who would provide a valuable contribution to the litigation.

Dr. Steven Rich, a Clinical Internist at the University of Rochester with a Bachelor's Degree in Pharmokinetics, was an early critic of Vioxx.  He sat on his hospital's Formulary Committee and spoke out against Vioxx being included.  He also had a letter published in the New England Journal of Medicine which detailed Vioxx's risk.  Anapol developed a relationship with Dr. Rich and, ultimately, he was proffered as a general liability expert.  Dr. Rich submitted an extensive report in the *Humeston*, *Abdel-Malek* and *Kimmelman* cases.  Merck also deposed him for days.  Dr. Rich was not called to testify in any of the New Jersey trials, but he was deemed competent to testify at the trials over Merck's objection and had the litigation not resolved, he would have appeared at the Anapol bellwether cases of *Rodemoyer, Groff, DiTrolio, Biehls* and *Levinson*, as well as in the North Carolina cases also scheduled in New Jersey.

Anapol also introduced Dr. Nicholas DePace, a noted Philadelphia cardiologist, to the Vioxx Litigation.  Due to a prior working relationship, Anapol prepared Dr. DePace to serve as a case specific expert for the Vioxx cases.  Anapol supplied Dr. DePace with extensive materials on Vioxx, spent numerous hours working with Dr. DePace on Vioxx's various medical and scientific issues and allowed other firms, such as Seeger Weiss and Morelli Ratner, to testify at trial on behalf of their clients.  After much time and preparation, Dr. DePace became a well-

credentialed Vioxx expert.  Dr. DePace served as an expert in the *Humeston I* and *Cona/McDarby* trials.

### 3.   The consistency quantum, duration and intensity of each firm's commitment to the litigation.

Anapol was invested in Vioxx from the outset.  Our firm had a minimum of five (5) attorneys working on Vioxx at all times and often other attorneys contributed, as well.  Anapol also had no less than five (5) paralegals who devoted their entire workday to Vioxx.  For years, Anapol's Pharmaceutical Litigation Department worked almost primarily on Vioxx.

### 4.   The level of partner participation by each firm.

Sol Weiss and David Jacoby are senior partners at Anapol.  Both have over thirty plus years of litigation experience, including vast experience in mass tort pharmaceutical cases.  Mr. Weiss and Mr. Jacoby both spent considerable time on Vioxx.  They served as Lead Counsel in New Jersey and were involved with Vioxx on a daily basis.  This was not a project that was handled by young associates – it was handled by Anapol's most senior members.

### 5.   Membership in the Plaintiffs' Executive Committee ("PEC"),  Plaintiffs' Steering Committee ("PSC"), or the NPC.

As indicated, Anapol served as Co-Lead Counsel in the coordinated New Jersey Vioxx Litigation.

### 6.   The jurisdiction in which non-MDL common benefit work occurred

Anapol performed its common benefit work in New Jersey.  New Jersey was an active coordination and a vital cog in the Vioxx wheel.

### 7.   Activities surrounding trials of individual Vioxx claimants, including bellwether trials and non-MDL trials that impacted proceedings on a common benefit level.

In addition to the nine (9) bellwether cases cited above, Anapol was also engaged in individual case discovery on a number of other files.  Before Vioxx was even withdrawn from the market, Anapol participated in case specific depositions of plaintiffs and their treating physicians.  Throughout the course of the litigation, Anapol estimates that it took at least 200

case specific depositions of physicians, witnesses and Merck sales representatives in its individual cases.   It is believed few other firms accepted such a heavy case specific workload.

The strategy in New Jersey was to work up as many cases as possible to keep the litigation pressure on Merck.  Judge Higbee also wanted an aggressive discovery schedule. While many firms sought to avoid having to perform discovery, Anapol dug in.  Anapol did not submit its time or substantial expenses in these non-bellwether individual cases, but for purposes of enhancement, it certainly bears noting that Anapol's efforts kept the heat on Merck.

8.      **Leadership positions on regular committees engaged in common benefit work**.

In New Jersey's coordinated litigation, Anapol was active in all areas.  We reviewed documents.  We took key depositions of Merck witnesses.  We briefed a number of legal issues for the Court's consideration, including testing the attorney/client privilege over documents Joanne Lahner, an in house Merck lawyer, revised, authored or received in her business capacity, rather than as a lawyer.  In fact, Judge Higbee conducted an in camera hearing on this issue. Anapol deposed and discredited many cardiologists Merck offered as generic experts in the New Jersey litigation.  We analyzed cases for trial selection purposes in every group proposed before Judge Higbee.  David Jacoby, at the request of Seeger Weiss, sat through and helped select the jury and provide daily commentary to Seeger Weiss in *Humeston I*.  We participated in extensive bellwether case discovery.  At Judge Higbee's request, Anapol prepared a compendium list of all exhibits admitted into evidence at New Jersey trials with a page and line reference.  Anapol also provided its work product to the Law Firm of Gene Locks, who tried but lost an individual case in New Jersey.

9.      **Participation in ongoing activities, such as the Allocation Committee and the Gates Committee, that are intended to provide common benefits**.

Anapol is not a member of either the Gates or Allocation Committee.  However, as New Jersey Co-Lead Counsel, Anapol addressed various post-settlement issues in New Jersey.  For example, an issue involving individual case costs arose under New Jersey law.  Anapol briefed the issue and prevailed, a ruling which all New Jersey counsel could rely.  Anapol also addressed ethical issues of the settlement before Judge Higbee.

- 7 -

10. **Whether counsel was already involved in the Vioxx litigation prior to the withdrawal of Vioxx from the market on September 30, 2004.**

11. **Whether counsel was involved in the Vioxx litigation prior to the JPMDL, and the time and expense incurred during such time that was for common benefit.**

In 2001, reports began to surface that Vioxx was associated with an increased risk of myocardial infarctions and strokes. Most law firms either disregarded or ignored this fact, but Anapol did the opposite. Anapol immediately contributed substantial financial and personnel resources to understand how Vioxx increased the risk of cardiovascular events. We were one of a handful of firms at an organizational meeting in late 2001 to discuss the prospects of a Vioxx Litigation. After the first cases were filed and documents were produced, Anapol devoted additional resources to review documents and depose Merck employees to understand the "Vioxx Story" which served as the basis for the general liability proofs at trial years later.

When Vioxx was eventually withdrawn from the market, Anapol had already performed/completed the following: we had been named Co-Lead Counsel for the New Jersey coordination; we had approximately fifty (50) cases on file; we had reviewed internal Merck documents; we had taken depositions of Merck witnesses; we were actively developing the case's theories of liability; we had negotiated the terms of a Plaintiffs' Fact Sheet, Short Form Complaint, as well as many other global issues; many of our own plaintiffs had been deposed; and treating physicians had also had their depositions taken.

12. **Whether counsel made significant contributions to the funding of the litigation.**

Anapol made a substantial financial investment in the Vioxx Litigation, a part of which was made long before Vioxx was withdrawn from the market. Anapol received over $600,000.00 in reimbursed common benefit costs. Additionally, Anapol spent hundreds of thousands of dollars prosecuting individual cases that were selected to be considered as trial cases and were worked up as such.

**13.    When a number of verdicts were adverse to plaintiffs, those PSC members or committee members whose commitment to the litigation did not ebb.**

Anapol never wavered in its commitment to the Vioxx effort.  In fact, Anapol increased its investment.  Not only did we continue to work as Co-Lead Counsel, but also, six (6) of our cases were scheduled for trial in January, 2008.

**14.    Any other relevant factors**

For over five (5) years, Anapol devoted five (5) attorneys and multiple support staff to the Vioxx cause.  It spent considerable monies on experts, travel, documents, etc. in order to keep the litigation moving forward.  As in many mass tort litigations, many firms were happy to take a seat at the back of the bus and let others do the work for them and their clients.  Anapol was one of those firms that drove the bus allowing others to reap the benefits.

## III.    LEGAL ARGUMENT

### A.    Hours

In Pretrial Order 6(D), Judge Fallon directs the Fee Allocation Committee to look to general fee jurisprudence to identify the factors that should be applied in making appropriate allocations.  *See* PTO 6(D).  The Court finds that the *Johnson* factors are applicable to this litigation and should be considered in addition to other matters considered by the courts to evaluate fee allocations.

The *Johnson* factors are as follows:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d 714, 717-19 (5th Cir. 1974).

The *Johnson* factors are then considered to determine whether the firm's lodestars or time submissions were appropriately compensable.  Here, the Fee Allocation Committee found that

the hours Anapol submitted from December, 2001 – May, 2008 and in the *Hatch* matter were clearly for common benefit work and appropriately compensable under the *Johnson* factors. The Committee has now recommended an award of $3,400,000.00.

This award is deficient in that failed to account for the supplemental hours Anapol submitted for its work on bellwether trials. The work Anapol performed on nine (9) bellwether cases inured to the benefit of all plaintiffs and their firms. The Fee Allocation Committee recognized as much when it instructed Anapol during its December 1, 2008 presentation that these hours should be submitted. Following the December, 2008 presentation, Anapol submitted an additional 4,617.5 hours which, according to the *Johnson* factors, are appropriate.

Accordingly, the supplemental 4,617.5 hours, which total an additional $1,373,875.00 in common benefit fee, should rightly be awarded to Anapol.

**B.**   **Enhancement**

In Pretrial Order 6(D), the Court recognized that a common benefit fee award should include more than just hours. The Court made a distinct point of identifying factors, in addition to the *Johnson* factors, that call for more than just a simple hourly calculation. *See* PTO 6(D).

As detailed above, Anapol's value to the Vioxx Litigation cannot be measured in hours alone. Anapol was an integral part of this litigation at the beginning, middle and end. Its work helped propel the successful settlement that all plaintiffs and their counsel reaped. Courts have held that enhancements are necessary when firms, such as Anapol, have gone above and beyond the call of duty. *See In re: Guidant Corp.*, 2008 U.S. Dist. LEXIS 103736 at * 110 (D. Minn. 2008) (The Court agreed to an enhancement for firms that were consistently, deeply involved in nearly every portion of the litigation and made themselves available to the Court, to Claimants, and to Guidant for a significant portion of time). The *Guidant* Court also approved a greater multiplier for attorneys that were invested in the litigation early on and shouldered a significant amount of risk, especially before the court's ruling on preemption. *Id.*

Anapol satisfies all of the above. We were all in on Vioxx – committing substantial personnel and financial resources for over seven (7) years. This type of commitment deserves a considerable enhancement.

- 10 -

IV.     **CONCLUSION**

For the reasons set forth above, Anapol's base award should be increased to $4,773,875.00.  This amount should then be enhanced for a total award of at least $9,000,000.00.

**ANAPOL, SCHWARTZ, WEISS, COHAN,
FELDMAN & SMALLEY, P.C.**

**SOL H. WEISS
GREGORY S. SPIZER**

**Dated:** 2-4-2011

- 11 -

**EXHIBIT "A"**



# ANAPOL SCHWARTZ

### ATTORNEYS AT LAW

SOL H. WEISS, ESQUIRE
1710 SPRUCE STREET
PHILADELPHIA, PA 19103
SWEISS@ANAPOLSCHWARTZ.COM

ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.

DIRECT DIAL (215) 735-2098, FAX (215) 875-7701

January 8, 2009

Jason W. Fontenot, CPA
Wegmann, Dazet & Company
111 Veterans Blvd., Suite 800
Metairie, LA 70005

Re: Vioxx Litigation

Dear Jason:

I am enclosing additional common benefit time for hours worked on trial cases. This is pursuant to the instructions received from the Vioxx Fee Allocation Committee on December 1, 2008. It is my understanding from the Fee Allocation Committee that we could submit these hours in block time per case.

If you have any questions, please contact me.

Very truly yours,

Sol H. Weiss

SHW:jmc
Enclosure

1710 Spruce Street
Philadelphia, PA 19103

230 N. Monroe Street
Media, PA 19063

1040 Kings Hwy. North, Suite 304
Cherry Hill, NJ 08034

209 State Street
Harrisburg, PA 17101

146 N. 6th Street
Reading, PA 19601

WWW.ANAPOLSCHWARTZ.COM
MAIN TEL. 215-735-1130 or TOLL FREE 866-735-ASWC (2792)

| Anapol Schwartz Weiss Cohan Feldman & Smalley, P.C. | | | |
|---|---|---|---|
| **Abdel-Malek** | | **Number of Hours** | **Description** |
| Sol H. Weiss | | 18.5 | Preparation of witness list, preparation for and attendance at deposition of Dr. Vorchheimer and Dr. DePace. |
| David Jacoby | | 45 | Review of file including depositions of client and wife and review of depositions of expert witness Dr. DePace.  Review of general liability expert reports, both plaintiff and defense.  Review of treating physician and prescribing physician reports.  Review of all medical records and clinical findings.  Review of medical literature. |
| Gregory S. Spizer | | 400 | Preparation for and attendance at the depositions of the following:  Plaintiff, Plaintiff's wife, Dr. Arora, Dr. Benz, and Plaintiff's son.  Consultations with Dr. DePace regarding Expert report and supplemental Expert Report.  Review of Defendant's Expert Reports. Review of all medical records and other relevant records. Review of Merck sales representative files. |
| Tracy A. Finken | | 25 | Preparation for and attendance at the depositions of the following:  Dr. Saad and Mary Sorial  Travel to and from deposition of Mary Sorial which was cancelled.  Review of medical records. |
| Michael C. Schafle | | n/a | n/a |
| Pamela A. Myers | | 40 | Assist with assembly of documents for depositions; organize medical records for review; conferences with S. Weiss and G. Spizer regarding trial preparation needs. |
| Amber Racine | | 3 | Preparation and Service of Dep Notices for the following Depositions: Dr. Silver, Dr. Stevens, Dr. Eskin, Dr. Vorchheimer;  Amended/Continued Notices for Dr. Eskin and Dr. Stevens |
| | **TOTAL** | **531.5** | |

| Kimmelman | | Number of Hours | Description |
|---|---|---|---|
| Sol H. Weiss | | 6 | Preparation for Dr. DePace deposition. |
| David Jacoby | | 285 | Review of file including all clinical findings.  Meetings with client and his wife.  Review of hospital records regarding first heart attack and expert report regarding first heart attack.  Review for inclusion as trial case.  Review of deposition transcripts all all expert defense reports.  Preapare client and his wife for depositions and attendance at depositions.  Review all expert and medical reports re second heart attack. Numerous meetings with expert Dr. Altobelli regarding his report and to prepare him for his deposition.  Meet with Judge Higbee in Atlantic City to discuss trial issues on numerous occasions.  Review all Plaintiff and defense documents for trial.  Numerous conferences with Dr. Rich regarding his expert report.  Review and organize all defense reports on liability and causation.  Conferences with clients re trial preparation. |
| Gregory S. Spizer | | 500 | Preparation for and attendance at the depositions of the following:  Plaintiff, Plaintiff's wife, Dr. Pressman, Dr. Austin, Dr. Gaulker, and Pamela Holland.  Consultations with Dr. DePace regarding Expert reports. Consultations with Dr. Altobelli regarding Expert Report.  Review of Defendant's Expert Reports.  Review of all medical records and other relevant records. Review of Merck sales representative files.  Preparation for trial (listed in trial pool twice).  All day to day work on file. |
| Tracy A. Finken | | n/a | n/a |
| Michael C. Schafle | | n/a | n/a |
| Pamela A. Myers | | 50 | Assist with assembly of documents for depositions; organize medical records for review; conferences with S. Weiss and G. Spizer regarding trial preparation needs. |
| Amber Racine | | 3 | Preparation and Service of Dep Notices for the following Depositions: Dr. Stevens, Dr Eskin, Dr. Barry Rayburn, Dr. Tyberg, Carol Yandle; Amended/Continued Notice for Dr. Stevens |
| | TOTAL | 844 | |

| Ortiz | | Number of Hours | Description |
|---|---|---|---|
| Sol H. Weiss | | n/a | n/a |
| David Jacoby | | 120 | Review of file inlcuding medical and liability expert materials.  Review prescribing doctor reports.  Multiple meetings with client.  Multiple meetings in New Brunswick and teleconferences with Dr. Altobelli regarding his expert report.  Prepare client for deposition and attendance at deposition of client.  Review literature re steroid use.  Attendance at numerous meetings regarding liability issues. |
| Gregory S. Spizer | | 150 | Preparation for and attendance at the depositions of the following:  Plaintiff, Plaintiff's wife, Dr. Stern and Dr. Vukasin.  Consultations with Dr. Altobelli regarding Expert report.  Review of all medical records and other relevant records. Research issue of steroid use.  Attendance at trial strategy meetings. |
| Tracy A. Finken | | n/a | n/a |
| Michael C. Schafle | | n/a | n/a |
| Pamela A. Myers | | 15 | Assist with assembly of documents for depositions; organize medical records for review; conferences with S. Weiss and G. Spizer regarding trial preparation needs. |
| Amber Racine | | n/a | n/a |
| | TOTAL | 285 | |

| Levinson | | Number of Hours | Description |
|---|---|---|---|
| Sol H. Weiss | | n/a | n/a |
| David Jacoby | | 260 | Review file including all clinical findings. Review treating physician records, prescribing physican records and statements by client. Review deposition of client. Meet with client in Philadelphia. Conference with prescribing physician and review and analyze prescribing physician deposition. Conference with expert Dr. Altobelli re findings and report in New Brunswick. Multiple telephone and personal conferences with Dr. Altobelli re preparation of report and deposition. Multiple conferences with Dr. Rich re preparation of report and deposition. Complete review of all defense expert reports re general liability and case specific reports. Numerous conferences in office and meetings with Judge Higbee re case preparation for trial. Preparation for and attendance at Merck sales representative deposition. Discussion with fact witnesses re activities prior to event. Preparation of timeline and review of Merck documents to be used at trial. |
| Gregory S. Spizer | | 400 | Preparation for and attendance at the depositions of the following: Plaintiff, Plaintiff's husband, Dr. Kleiber (2 days), Dr. Dowd, and Dr. Zawid. Consultations with Dr. Altobelli regarding Expert Report. Review of Defendant's Expert Reports. Review of all medical records and other relevant records. Review of Merck sales representative files. Preparation for and attendance at depositions of Merck sales representatives Maureen Abate and Erika Befumo . Preparation for trial (listed in trial pool twice). |
| Tracy A. Finken | | 50 | Preparation for and attendance at the depositions of the following: Dr. Kleiber, Dr. McCarthy and Dr. Kauffman. Review of all medical records. |
| Michael C. Schafle | | n/a | n/a |
| Pamela A. Myers | | 20 | Assist with assembly of documents for depositions; organize medical records for review; conferences with S. Weiss and G. Spizer regarding trial preparation needs. |
| Amber Racine | | 1 | Preparation and Service of Dep Notices for the following Depositions: Maureen Abate and Erika Befumo |
| | TOTAL | 731 | |

| Groff | | Number of Hours | Description |
|---|---|---|---|
| Sol H. Weiss | | n/a | n/a |
| David Jacoby | | 55 | Review of complete file inlcuding treating and prescribing doctor records. Review of all expert material and all clinical findings.  Multiple meetings with clients.  Assist with deposition preparation of client and his wife.  Review deposition transcripts and discuss with expert.  Prepare summary of factual and medical information for use at trial.  Review of defense expert reports. |
| Gregory S. Spizer | | 175 | Preparation for and attendance at the depositions of the following:  Plaintiff, Plaintiff's wife, Dr. Koerner, and Dr. Kadissi.  Review of all medical records and other relevant records. Review of personal journal of Gina Groff.  Review of Merck sales representative files.  Preparation for and attendance at depositions of Merck sales representative Celeste Kohl.  Meetings with clients.  Examination of wage loss claim. |
| Tracy A. Finken | | n/a | n/a |
| Michael C. Schafle | | n/a | n/a |
| Pamela A. Myers | | 15 | Assist with assembly of documents for depositions; organize medical records for review; conferences with S. Weiss and G. Spizer regarding trial preparation needs. |
| Amber Racine | | n/a | n/a |
| | TOTAL | 245 | |

| DiTrolio | | Number of Hours | Description |
|---|---|---|---|
| Sol H. Weiss | | 15 | Preparation for and attendance at deposition of Dr. Sing. |
| David Jacoby | | 15 | Review clinical findings in hospital and other medical records.  Review of all expert reports. Meetings with expert Dr. DePace regarding his report.  Review of deposition transcripts.  Review statements of associate doctors re Vioxx use of plaintiff. |
| Gregory S. Spizer | | 300 | Preparation for and attendance at the depositions of the following:  Plaintiff, Plaintiff's wife, and Dr. Pisano. Preparation for deposition of Dr. Sing. Meetings with Client. Consultations with Dr. DePace regarding Expert Report.  Review of Defendant's Expert Reports. Review of all medical records and other relevant records. Review of Merck sales representative files.  Preparation for and attendance at depositions of Merck sales representatives Vincent Avitello and Eric Sharpe.  Research regarding ectopic arteries, medical issues, samples of Vioxx. |
| Tracy A. Finken | | n/a | n/a |
| Michael C. Schafle | | n/a | n/a |
| Pamela A. Myers | | 30 | Assist with assembly of documents for depositions; organize medical records for review; conferences with S. Weiss and G. Spizer regarding trial preparation needs. |
| Amber Racine | | 1.5 | Preparation and Service of Dep Notices for the following Depositions: Vincent Avitello, Eric Sharpe; Amened/Continued Notice for Eric Sharpe |
| | TOTAL | 361.5 | |

| Biehls | | Number of Hours | Description |
|---|---|---|---|
| Sol H. Weiss | | n/a | n/a |
| David Jacoby | | 70 | Review file including all medical and factual records and clinical findings.  Meet with client in Pittsburgh and Philadelphia.  Conferences with expert Dr. DePace and review of report.  Meet with expert Dr. Altobelli to discuss marijuana use. Review defense expert reports both liability and damages.  Attendance at numerous trial strategy meetings.  Preparation for and attendance at sales representative Miller deposition in Boston.  Prepare medical and factual summary for use at trial. |
| Gregory S. Spizer | | 400 | Preparation for and attendance at the depositions of the following:  Plaintiff, Plaintiff's wife, Dr. Lloyd, Dr. Chiu, Brenda Nuhfer, Jay Champion, and Julie Champion. Consultations with Dr. DePace regarding Expert Report.  Review of Defendant's Expert Reports. Review of all medical records and other relevant records. Trial preparation. |
| Tracy A. Finken | | 60 | Preparation for and attendance at the deposition of Plaintiff.  Review of medical records.  Review of Merck sales representative files.  Preparation for and attendance at deposition of Merck sales representative Bridget Valone. |
| Michael C. Schafle | | 25 | Legal research regarding admissability of marijuana use for potential motion in limine. Medical research regarding marijuana and cardiovascular events. Attendance at trial strategy meetings. |
| Pamela A. Myers | | 10 | Assist with assembly of documents for depositions; organize medical records for review; conferences with S. Weiss and G. Spizer regarding trial preparation needs. |
| Amber Racine | | 1 | Preparation and Service of Dep Notices for the following Depositions: Joanne Miller and Bridget Mallone |
| | TOTAL | 566 | |

| Rodemoyer | | Number of Hours | Description |
|---|---|---|---|
| Sol H. Weiss | | n/a | n/a |
| David Jacoby | | 60 | Review all medical and factual data including review of hospital records and clinical findings. Meetings with Client in Pittsburgh. Attendance at trial strategy meetings. Telephone conferences with client. Review of deposition transcripts. Conferences with Dr. DePace, plaintiff's expert. Thorough review of all activities on date of death. Review of hospital records re: knee operation and use of Vioxx. Review of prescribing doctor depositions. |
| Gregory S. Spizer | | 550 | Preparation for and attendance at the depositions of the following: Plaintiff, Ryan Rodemoyer, Eric Rodemoyer, Dr. Stigliano (discovery and trial), Dr. Charleton (discovery and trial). Consultations with Dr. DePace regarding Expert Report and supplemental Expert Report. Review of Defendant's Expert Reports. Review of all medical records and other relevant records. Review of Merck sales representative files. Preparation for and attendance at depositions of Merck sales representatives August Zuccaro and Nancy Beer. Trial preparation. |
| Tracy A. Finken | | 60 | Preparation for and attendance at the depositions of the following: Dr. DiGioia, Lori Gaydosh, and Bernadette Kovac. Review all medical records and other relevant records. Review label information and Merck document production in preparation for depositions. |
| Michael C. Schafle | | 100 | Legal research on admissability of evidence of remarriage in wrongful death actions. Draft motion in limine to preclude evidence of client's remarriage at trial. Legal research on current status of failure to warn products liability law in PA and draft brief regarding same. Attendance at trial strategy meetings. |
| Pamela A. Myers | | 40 | Assist with assembly of documents for depositions; organize medical records for review; conferences with S. Weiss and G. Spizer regarding trial preparation needs. |
| Amber Racine | | 2 | Preparation and Service of Dep Notices for the following Depositions: Nancy Beer, August Zuccaro, Dr. Glen Charlton, Dr. Anthony Digiola |
| | TOTAL | 812 | |

| Williams-McCray | | Number of Hours | Description |
|---|---|---|---|
| Sol H. Weiss | | n/a | n/a |
| David Jacoby | | 50 | Review of file inlcuding treating doctor records.  Review of expert reports, both liability and causation.  Preparation for and attendance at deposition of sales representative in Florida on 10/17/2006.  Review all hospital records and clinical findings. |
| Gregory S. Spizer | | 150 | Preparation for and attendance at the depositions of the following:  Plaintiff, Quentin Nicholson, Dr. Diaz, Dr. Tiomico, and Dr. Seals.  Review of all medical records and other relevant records. Review of Merck sales representative files. Preparation for and attendance at depositions of Merck sales representative Jeffrey Popp. |
| Tracy A. Finken | | 30 | Prepare for and attendance at the depositions of the following:  Dr. Casey, Dr. Sobolewski.  Review of medical records and other relevant documents. |
| Michael C. Schafle | | n/a | n/a |
| Pamela A. Myers | | 10 | Assist with assembly of documents for depositions; organize medical records for review; conferences with S. Weiss and G. Spizer regarding trial preparation needs. |
| Amber Racine | | 1.5 | Preparation and Service of Dep Notices for the following Depositions: Jeff Popp, Dominic Pavlinic; Amended/Continued Notice for Dominic Pavliniv. |
| | TOTAL | 241.5 | |
| | Grand Total | 4617.5 | |