UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX PRODUCTS | * | |
| LIABILITY LITIGATION | * | MDL DOCKET NO. 1657 |
| | * | |
| | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| | * | |

_____

**OBJECTION OF THE MURRAY LAW FIRM TO
THE FEE ALLOCATION COMMITTEE'S RECOMMENDATION**

NOW INTO COURT, comes the Murray Law Firm, and pursuant to this Court's Order of January 20, 2011, hereby objects to the Fee Allocation Committee's (FAC) recommendation for common benefit fee allocation to the Murray Law Firm. Although the Murray Law Firm submitted nearly three thousand hours of attorney time, with a collective hourly billing lodestar at prevailing rates (without multiplier) of over one million dollars, the FAC has recommended an allocation of only $162,000.00.[1] All of the time submitted by the Murray Law Firm in support of its common benefit fee application was performed at the behest of lead counsel. The vast majority of the attorney work for which the Murray Law Firm has sought a common benefit fee award was performed under the direct supervision of lead counsel. With the exception of a supplementation of time incurred prior to April 20, 2005, which was specifically authorized by Pre-Trial Order 6D, time was submitted as the case progressed in response to requests for time submissions by lead counsel. At no point

---

[1] This amount was increased from an original recommendation of $72,000.00.

subsequent to any of these time submissions was the Murray Law Firm advised that the time that it had billed was unauthorized, excessive, or otherwise not contributory to the common benefit effort.

A considerable portion of Murray Law Firm time, some 2,000 hours, was for document review conducted by Murray Law Firm attorney Justin Bloom (an attorney with over 10 years experience), at the law offices of Seeger, Weiss under the direct supervision of co-lead counsel, Chris Seeger. Murray Law Firm senior partner Steve Murray had numerous conversations with Chris Seeger in which Murray inquired into lead counsel's satisfaction with Mr. Bloom's work. On each such occasion, Mr. Seeger indicated that Mr. Bloom's work under his direction was more than satisfactory. Mr. Seeger confirmed that Mr. Bloom not only participated in the document review, but also served as a shift supervisor in the document depository. It is worth noting that, at the time the Murray Law Firm sent Mr. Bloom to work full-time on the document review project, the Vioxx litigation had suffered a number of set-backs and a positive result appeared questionable. When the Murray Law Firm furnished Mr. Bloom to work full-time in the document review effort, lead counsel had indicated that, as a result of recent defense verdicts, they were having a difficult time finding attorneys willing to undertake such common benefit work.

Additionally, the time submitted for Murray Law Firm attorneys Julie Jacobs, Damon Kirin, Jessica Hayes, Dominick Impastato and James Murray was all for work performed at the PSC document depository at the request of and under the direct supervision of lead counsel. Notably, the Murray Law Firm's travel expenses incurred in sending these attorneys to the depository has all been approved for reimbursement. At no time did lead counsel indicate that the work performed by these attorneys at the document depository was unsatisfactory or not contributory to the common benefit effort.

Finally, as co-chair of the law and briefing sub-committee, Murray Law Firm Senior partner Steve Murray performed work at the direction and request of lead counsel, specifically his co-chair, PSC member Gerald Meunier. All of the time submitted by Mr. Murray, Sr. was for work performed in his capacity as co-chair of the law committee. Mr. Stephen Murray, Jr. also served on the law and briefing sub-committee. The vast majority of Mr. Murray, Jr.'s submitted time was for briefing and research conducted at the request and direction of PSC member Gerald Meunier, who at no time gave any indication that Mr. Murray Jr.'s work was in any way unsatisfactory or not contributory to the common benefit effort.

At all times throughout the litigation, the Murray Law Firm undertook every task asked of it by lead counsel. At no time did the Murray Law Firm attorneys bill for any work that was not undertaken at the behest of lead counsel. To suggest that the Murray Law Firm's time was not contributory to the common benefit effort, when all of the Murray Law Firm's work was performed at the direction of lead counsel, and lead counsel never once voiced an objection to the hours submitted, is patently unfair.

The United States Fifth Circuit has held that, under the lodestar method required in this Circuit, when determining appropriate common benefit awards the Court is bound to center its inquiry on the number of hours reasonably expended by the attorneys and the reasonable rates charged for such services. *Strong v. Bellsouth Telecommunications, Inc.*, 137 F.3d 844 at 850. Only *after* the Court has determined a reasonable fee based on the hours billed and the customary rates for such services does the Court then consider whether to adjust the lodestar upwards or downwards based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974). *Id.* Importantly, however, " "[t]he lodestar may be adjusted according to a *Johnson*

factor only if that factor is not already taken into account by the lodestar." *Transamerican Natural Gas Corp. v. Zapata Partnership, Ltd. ( In re Fender)*, 12 F.3d 480, 487 (5th Cir.1994). Nothing in this analysis suggests that where a court has decided to award an enhancement under the *Johnson* factors, it may do so by applying a discount to the award to other attorneys whose hours and fees are deemed reasonable under the lodestar analysis.

To award on attorney *less* than the prevailing rates for undisputed common benefit work, on the sole basis some attorneys performed work that, in the subjective view of a financially interested fee committee, was deemed more contributory to the result, is not only contrary to Fifth Circuit precedent, but also discourages participation in MDL common benefit work. No attorneys would be willing to undertake common benefit work, which is necessarily performed on contingency, if even in the event that the case is successful, they will be compensated at less than the prevailing rate for such services when not undertaken with the inherent risks of contingency – just so that others can get more than the prevailing rate. While Objectors recognize that, in a successful case such as the instant suit, some attorneys deserve to be compensated well above prevailing rates, such compensation should not come on the backs of attorneys who have performed undisputed work, by paying those attorney considerably *less* than the value of their services.

This Court recognized the critical role of hours expended and prevailing rates when it determined the overall common benefit fee. This Court based its common benefit fee award of $315,250,000.00 on a total lodestar of 562,943.55 hours. The Murray Law Firm's hours were included in this lodestar calculation. Notably, this Court mentioned the areas in which the Murray Law Firm participated at the direction of the PSC – drafting of pleadings and review of 50,000,000 documents – in justifying the common benefit fee award. This Court found that an average rate of

$560 per hour was appropriate compensation for the work performed on behalf of plaintiffs participating in the settlement. While the Murray Law Firm recognizes that some services deserve to be compensated above the average rate (*e.g.* work undertaken by attorneys with decades of experience in leadership capacities), and other services should be compensated below the average rate set by this Court (*e.g.* comparatively menial tasks performed by newly admitted attorneys), the Murray Law Firm's contribution is such that compensation at the average rate set by this Court would be appropriate. Accordingly, the Murray Law Firm is entitled to compensation for its 2,897.25 hours of time devoted to the Vioxx common benefit effort at the average rate awarded by the Court of $560.00, for a total fee entitlement of $1,622,460.00.

At this point in time, the Fee Committee has offered scant explanation for its fee allocation recommendation. What is known at this time is that the FAC has recommended a fee allocation to the Murray Law Firm that works out to approximately $55 dollars per hour. A this rate, the Murray Law Firm is suffering a significant loss on its contribution to the common benefit effort. Such paltry compensation for time that was submitted in accordance with established protocols, for work by attorneys with more than 10 years' average experience, that was performed at the behest of lead counsel, as to which lead counsel never once voiced any concern when the time was submitted, and upon which the Court relied in justifying its total fee award, is unquestionably inadequate. This rate of compensation falls well below prevailing rates for such work by attorneys with similar experience on cases that are *not* undertaken on contingency.

The inequity of such a drastic discount to the Murray Law Firm's lodestar is made glaring when viewed in the light of the significant enhancements over lodestar in the FAC's recommendations for allocations to certain firms. Members of the FAC received average hourly

compensation of $958.26, considerably more than prevailing rates in any market. The FAC's recommendations include rates of hourly compensation that represent even greater enhancements over prevailing rates. The two highest hourly rates recommended by the FAC were $1,904 (to a firm that belonged both the PSC and the FAC) and $2,204 (to a member of the PSC). While the Murray Law Firm certainly lauds the work of those in leadership positions, and recognizes their right to an enhancement over lodestar, such generous enhancements should not come at the expense of firms whose lodestars have been discounted to the point where these firms are actually losing money on their contributions to the common benefit effort.

The Murray Law Firm, whose hours were included among those considered by the Court in justifying the total fee award, is entitled to compensation at prevailing rates, together with an enhancement in consideration of the fact that the work was undertaken on contingency, at a time when ultimate success in the litigation appeared questionable.

The Murray Law Firm reserves the right to supplement this objection as the reasoning and complete recommendations of the fee committee are disclosed through discovery.

Respectfully Submitted:

BY:   MURRAY LAW FIRM

DATE: 4 February 2011

*s/ Stephen B. Murray*
Stephen B. Murray  (9858)
smurray@murray-lawfirm.com
Stephen B. Murray, Jr. (23877)
smurrayjr@murray-lawfirm.com
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
T:   504.525.8100

CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Objection of the Murray Law Firm to the Fee Allocation Committee's Recommendation has been served upon all parties by electronically uploading same to LexisNexis File & Serve Advanced in accordance with PreTrial Order No. 8, that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the *CM/ECF* system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, and via email and U.S. Mail to Russ Herman and Andy Birchfield, on this 4th day of February, 2011.

          *s/ Stephen B. Murray*
          Stephen B. Murray

# VIOXX MDL 1657 COMMON BENEFIT TIME
# (MURRAY LAW FIRM)

| ATTORNEY | HOURS | COMMITTEE / LOCATION |
|---|---|---|
| Stephen B. Murray | 145.25* | Co-chair Law & Briefing Sub-Committee |
| Stephen B. Murray, Jr. | 101.5* | Law & Briefing Sub-Committee |
| Justin Bloom | 2035.0 | Doc Review @ Seeger Weiss -NY & Los Angeles |
| Julie A. Jacobs | 167.75 | 143.0 (Doc review in NY & NO)<br>18.0 Law Committee<br>4.5 Science Committee<br>2.0 Daubert Sub-Committee |
| Robert J. Diliberto | 116.0 | Purchase Claims Committee |
| Damon A. Kirin | 51.5 | Doc Review @ Seeger Weiss - NY |
| Dominic F. Impastato, III | 29.25 | |
| | <72.0>** | (Jan. '05 Doc Rev @ Seeger Weiss-NY) |
| James Murray | 214.0 | (Doc Review @ Seeger Weiss - NY & Montgomery, AL) |
| Jessica W. Hayes | 56.75 | (Feb. '05 Doc Review @ Seeger Weiss-NY) |
| | 2989.0 | **TOTAL COMMON BENEFIT HOURS SUBMITTED** |

\* See attached Affidavit of Stephen B. Murray In Support of Common Benefit Fee Application

\*\* Hours not included in time submission or total Murray Law Firm hours. However, travel expenses for these dates were timely submitted and approved for reimbursement.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE VIOXX PRODUCTS LIABILITY | * | |
| LITIGATION | * | MDL DOCKET NO. 1657 |
| | * | |
| | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE KNOWLES |
| | * | |
| | * | |

### AFFIDAVIT OF STEPHEN B. MURRAY
### IN SUPPORT OF COMMON BENEFIT FEE APPLICATION

STATE OF LOUISIANA
PARISH OF ORLEANS

      Before me, the undersigned authority, personally came and appeared Stephen B. Murray, who did depose and state the following:

1. I am the founder of the Murray Law Firm in New Orleans. I have forty years trial experience in civil litigation. I am board certified in civil trial advocacy by the National Board of Trial Advocates. I have served in leadership positions in a number of national class actions and MDL consolidations.

2. The attorneys of the Murray Law Firm have made persistent and valuable contributions to the common benefit effort in this MDL since its inception, fulfilling every request for assistance made to them by the leadership.

3. I served as co-chair of the law committee. In that capacity, I personally authored several reports to the PSC at the request of the executive committee, including a comprehensive report on the tolling effect of the pendency of class actions on individual cases under the laws of the fifty states. I participated in numerous face-to-face meetings and conference calls with my co-chair Gerald Meunier and other members of the executive committee to identify legal issues and formulate litigation strategies. Additionally, I oversaw several research projects, on issues ranging from class certification and medical monitoring to FDA preemption, likewise at the behest of the law committee. These research projects helped shape the strategy used throughout the litigation. In order to keep abreast of the litigation and fulfill my role as PSC co-chair, I attended most MDL status conferences

throughout the litigation. When unable to attend myself, I sent senior attorneys from the firm, who then reported to me.

4. Stephen B. Murray, Jr. also served on the law committee. Stephen B. Murray, Jr. is a Martindale-Hubble AV rated attorney with over thirteen years' experience. He has been appointed to and served on numerous national class action and MDL consolidation steering committees and sub-committees. At the request of Gerald Meunier, Stephen Murray, Jr. played a critical role in the class certification briefing effort. While the Court ultimately decided against class certification, the pendency of the class action assisted in tolling the claims of many individuals who are now participating in the global settlement. Mr. Murray, Jr. also drafted and/or participated in the drafting of sundry reports to the PSC on legal issues of medical monitoring, class certification, and FDA preemption. Additionally, Mr. Murray, Jr. assisted in the effort to contact and depose former Merck sales representatives who detailed Vioxx. This effort helped develop the theory of the case and provided evidence of unlawful marketing practices with respect to Vioxx.

5. Multiple staff attorneys from the Murray Law Firm also performed common benefit work at the direction of the PSC. When the PSC requested attorneys to perform review of the voluminous document production, the Murray Law Firm sent experienced, staff-member attorneys to assist in that effort. Each attorney provided by the Murray Law Firm for document review was a full-fledged associate of the firm listed on the firm's letterhead. During the course of the litigation, the Murray Law Firm provided the following associates to assist in document review: Justin Bloom (10+ years' experience); Damon Kirin (10+ years' experience); Julie Jacobs (10+ years' experience); Jessica Hayes (5+ years' experience); Robert Diliberto (10+ years' experience); Dominic Impastato (1+ years' experience); James Murray (1+ years' experience).

6. Justin Bloom, a New York licensed attorney is an associate with the Murray Law Firm and appears on the firm's letterhead. Bloom worked almost exclusively on Vioxx document review from 2003 until the settlement was reached in 2007. Mr. Bloom has over twelve years' experience in environmental and class action litigation, and has particular experience in the operation of document depositories in pharmaceutical litigation. In addition to his civil litigation experience, he has served as a clinic supervisor at Columbia School of Law and as a staff attorney for Robert Kennedy, Jr.'s flagship environmental organization. Bloom not only conducted document review, but also oversaw and coordinated the efforts of the Murray Law Firm attorneys who participated in the document review.

7. In the period following Hurricane Katrina, some Murray Law Firm time records were lost. Murray Law Firm attorneys worked on Vioxx during this period. In September 2005, Stephen B. Murray, Jr. traveled to Las Vegas for a Vioxx PSC discovery preparation meeting to discuss depositions of Merck sales representatives. No time for this trip was submitted. A conservative estimate of the unrecorded time for the period following Hurricane Katrina is forty hours of Stephen B. Murray, Jr.'s time, and ten hours of Stephen B. Murray, Sr.'s time.

8. Throughout the Vioxx litigation the Murray Law Firm answered each and every request for assistance in the common benefit effort from the PSC leadership. In each such instance, the Murray Law provided skilled staff attorneys with the requisite experience to perform the task.

Further affiant sayeth not.

Thus, done and signed, this 30th day of October, 2008.

_____
STEPHEN B. MURRAY

Sworn to and subscribed before this me
this 30th day of October, 2008.

_____
Stephen B. Murray, Jr.
Notary Public

**STEPHEN B. MURRAY, JR.**
**Notary Public, Bar No. 23877**
**State of Louisiana**
**My Commission is issued for Life**

| | |
|---|---|
| **COMMON BENEFIT FEES AWARD FORM** ||
| **A. INSTRUCTIONS** ||
| 1. The Fee Allocation Committee has completed its review of your application for common benefit fees under the terms of the Vioxx Settlement Agreement.<br>2. The Committee will recommend to Judge Fallon that you be awarded the common benefit fee indicated in this Form (the "Recommended Award").<br>3. Pursuant to Pretrial Order 6D, you must respond to accept or object to the Recommended Award within 14 days. Accordingly, you must return this completed Form no later than **December 16, 2010**.<br>4. If you accept the Recommended Award, indicate your acceptance by checking in the appropriate box in Section B below.<br>5. If you object to the Recommended Award, indicate your objection by checking the appropriate box in Section B below, fill in specific amount of common benefit award to which you believe you are entitled and attach to this From an Objection to Recommended Award stating in detail the basis of your objection and for the award requested.<br>6. Sign this Form in the appropriate space in Section C below.<br>7. Return this completed Form (and attachment, if there is an Objection) by (1) email; **and** (2) mail or overnight delivery no later than **December 16, 2010**, to:<br><br>Russ M. Herman　　　　　　　　　　　　　Andy Birchfield<br>Chair of the Fee Allocation Committee　　　　Secretary of the Fee Allocation Committee<br>820 O'Keefe Avenue　　　　　　　　　　　218 Commerce Street<br>New Orleans, LA 70113　　　　　　　　　　Montgomery, AL 36104 ||
| **B. RECOMMENDED AWARD AND RESPONSE** ||
| **Recommended Award:** | $72,807.37 |

Response to Recommended Award:  Check only one of the following:

☐ I accept the Recommended Award as my award of common benefit fees.

☒ I object to the Recommended Award and request this amount as my award: $ 1,622,460.00

(NOTE: You must attach an Objection stating in detail the basis of the objection and for the award requested.)

| | **C. SIGNATURE** | | | |
|---|---|---|---|---|
| **Signature** | *[signed] Stu L B Mur—* | **Date** | 12 / 15 / 2010<br>(month) (day) (year) | |
| **Printed Name** | First: Stephen | MI: B | Last: Murray | |
| **Firm Name** | Murray Law Firm 1 | | | |

#379620

IN RE VIOXX

OBJECTION TO FEE ALLOCATION RECOMMENDATION

  The Murray Law Firm hereby advises the Fee Committee of its objection to the Fee Committee's recommendation for common benefit fee allocation to the Murray Law Firm. Although the Murray Law Firm submitted nearly three thousand hours of attorney time, with a collective hourly billing loadstar (without multiplier) of well over one million dollars, the fee committee has recommended an allocation of only $72,000.00. All of the time submitted by the Murray Law Firm in support of its common benefit fee application was performed at the behest of lead counsel. The vast majority of the attorney work for which the Murray Law Firm has sought a common benefit fee award was performed under the direct supervision of lead counsel. With the exception of a supplementation of time incurred prior to April 20, 2005, which was specifically authorized by Pre-Trial Order 6D, time was submitted as the case progressed in response to requests for time submissions by lead counsel. At no point subsequent to any of these time submissions was the Murray Law Firm advised that the time that it had billed was unauthorized, excessive, or otherwise not contributory to the common benefit effort.

  A considerable portion of Murray Law Firm time, some 2,000 hours, was for document review conducted by Murray Law Firm attorney Justin Bloom (an attorney with over 10 years experience), at the law offices of Seeger, Weiss under the direct supervision of co-lead counsel, Chris Seeger. Murray Law Firm senior partner Steve Murray had numerous conversations with Chris Seeger in which Murray inquired into lead counsel's satisfaction with Mr. Bloom's work. On each such occasion, Mr. Seeger indicated the Mr. Bloom's work under his direction was more than satisfactory. Mr. Seeger confirmed that Mr. Bloom not only participated in the document review, but also served as a shift supervisor in the document depository. It is worth noting that, at the time the Murray Law Firm sent Mr. Bloom to work full-time on the document review project, the Vioxx litigation had suffered a number of set-backs and a positive result appeared unlikely. When the Murray Law Firm furnished Mr. Bloom to work full-time in the document review effort, lead counsel had indicated that as a result of recent defense verdicts, they were having a difficult time finding attorneys willing to undertake common benefit work.

  Additionally, the time submitted for Murray Law Firm attorneys Julie Jacobs, Damon Kirin, Jessica Hayes, Dominick Impastato and James Murray was all for work performed at the PSC document depository at the request of and under the direct supervision of lead counsel. Notably, the Murray Law Firm's travel expenses incurred in sending these attorneys to the depository has all been approved for reimbursement. At no time did lead counsel indicate that the work performed by these attorneys at the document depository was unsatisfactory or not contributory to the common benefit effort.

  Finally, as co-chair of the law and briefing sub-committee, Murray Law Firm Senior partner Steve Murray performed work at the direction and request of lead counsel, specifically his co-chair, PSC member Gerald Meunier. All of the time submitted by Mr. Murray, Sr. was for work performed in his capacity as co-chair of the law committee. Mr. Stephen Murray, Jr. also served on the law and briefing sub-committee. The vast majority of Mr. Murray, Jr.'s submitted

time was for briefing and research conducted at the request and direction of PSC member Gerald Meunier, who at no time gave any indication that Mr. Murray Jr.'s work was in any way unsatisfactory or not contributory to the common benefit effort.

  At all times throughout the litigation, the Murray Law Firm undertook every task asked of it by lead counsel. At no time did the Murray Law Firm attorneys bill for any work that was not undertaken at the behest of lead counsel. To suggest that the Murray Law Firm's time was not contributory to the common benefit effort, when all of the Murray Law Firm's work was performed at the direction of lead counsel, is patently unfair.

  Judge Fallon based his common benefit fee award of $315,250,000.00 on a total lodestar of 562,943.55 hours. The Murray Law Firm's hours were included in this lodestar calculation. Notably, Judge Fallon mentioned the areas in which the Murray Law Firm participated at the direction of the PSC, pleadings and review of 50,000,000 documents, in justifying the common benefit fee award. The Court found that an average lodestar billing rate of $443.29 was reasonable. The Court further increased this rate by a multiplier of 1.2633, producing an average rate of $560.00 per hour. The Murray Law Firm's contribution to the common benefit warrants compensation commensurate with the lodestar that the Court used in determining the overall common benefit fee award. Accordingly, the Murray Law Firm is entitled to compensation for its 2,897.25 hours of time devoted to the Vioxx common benefit effort at the average rate awarded by the Court of $560.00, for a total fee entitlement of $1,622,460.00.

  At this point in time, the Fee Committee has offered no explanation for its fee allocation recommendation. All that is known at this time is that fee committee has recommended a fee allocation to the Murray Law Firm that works out to less than $25 dollars per hour. Such paltry compensation for time that was submitted in accordance with established protocols, for work by attorneys with more than 10 years' average experience, that was performed at the behest of lead counsel, as to which lead counsel never once voiced any concern when the time was submitted, and upon which the Court relied in justifying its total fee award, is unquestionably inadequate. The Murray Law Firm, whose hours were included among those considered by the Court in justifying the total fee award, is entitled to compensation at the average rate the Court determined appropriate in settling the common benefit award

  The Murray Law Firm reserves the right to supplement this objection as the reasoning and complete recommendations of the fee committee are disclosed.