# Exhibit B

# LOCKS LAW FIRM, LLC
# SUBMISSION
# ON VIOXX COMMON BENEFIT

1. JURY VERDICT OF LIABILITY

Locks Law Firm successfully obtained a unanimous verdict that Merck was liable in Doherty v. Merck in July of 2006. The jury found, 7-0, that Merck failed to provide an adequate warning of risks that it knew or should have known. This jury result means that the 5 ½ - week long jury trial resulted in the jury being persuaded that Vioxx risks existed; that Merck knew them or should have known them, and that Merck should have adequately warned Mrs. Doherty and did not. The jury unfortunately found "overwhelming" (their word, reported in the lay press) other risk factors. Merck certainly took into account the number of adverse liability verdicts as well as ultimate verdicts when it approached global settlement negotiations.

2. DIRECT TO CONSUMER

In Doherty, Locks Law Firm obtained a ruling from the Honorable Carol Higbee that Merck had a duty to warn not only the prescribing physician, but also the patient directly, of the potential health hazards of Vioxx. Direct to Consumer ("DTC") liability arises from Perez v. Wyeth, 161 N.J. 1 (1999). Doherty was the first time in New Jersey that a court has charged a jury on DTC liability. It was also the first such charge in a Vioxx case, although several New Jersey trials preceded Doherty. The ruling that Merck had a direct duty to the consumer was, in the Doherty case, and it would be in future Vioxx cases, a "game changer."

Merck tried to establish early on that Mrs. Doherty relied on her prescribing physician, not the plethora of Vioxx commercials and ads, to learn of the risks and benefits on Vioxx. The testimony of the prescriber was not helpful to plaintiffs. The reliance which Mrs. and Mr. Doherty placed on Merck's ads had to be shepherded through Merck's scathing attacks on plaintiffs as well as its legal challenges. At trial, Mrs. Doherty testified that the Vioxx commercials reassured her that the drug was safe, and Mr. Doherty's testimony was slightly more forceful; he testified that his wife relied on these commercials for her belief that Vioxx was safe and effective.

Motions in limine, oppositions and supplemental pleadings were filed with the Court. Merck strenuously argued that DTC should NOT apply in Doherty, and cited to the fact that Judge Higbee denied plaintiffs' applications for DTC in the prior cases of Humeston, Cona and McDarby. Seven lawyers spent 2 ½ days arguing over the jury charge, and the majority of that time was spent on the DTC issue. To distinguish prior rulings, we argued the factual predicate of the Dohertys' testimony and also that Mrs. Doherty was in an analogous position to asbestos workers; that is, Merck had a non-delegable duty to warn Mrs Doherty, similar to an asbestos manufacturer's non-delegable duty to warn even where a sophisticated employer intervenes.

The jury was asked two (2) questions on liability, one on the failure to warn plaintiff's prescribing physician, and one on Merck's failure to warn plaintiff. The jury found, 5-2, that Merck did not breach its duty to warn plaintiff's prescribing physician, but found, 7-0, that Merck did breach its duty to warn plaintiff directly. If the jury had found in favor of plaintiff on medical causation, Doherty would have been a plaintiffs' verdict.

Thus, the import of this DTC ruling and charge cannot be over-stated. The fact that other plaintiffs could get a similar ruling certainly factored into Merck's decision to engage in global settlement talks.

3. **TRIAL PRESENTATION OF MERCK PUBLIC RELATIONS LIABILITY DEPOSITIONS**

Locks lawyers analyzed, prepared and litigated page and line designations for all Merck liability witnesses and successfully argued admissibility issues with special emphasis on the public relations personnel, especially Mary Blake, Dr. Loren Laine and Dr. Laura Demopoulos. The Blake, Laine and Demopoulos testimony was used for the first time at trial by Locks lawyers, and this testimony played a key role in the jury's verdict that Merck should have warned Ms. Doherty directly about the dangers of Vioxx. The testimony as litigated and presented was available for other plaintiffs' counsel to use in subsequent trials.

4. **APPROVE ITT AND EXTENSION DATA**

This data was released just days before jury selection in <u>Doherty</u> and Locks lawyers along with expert Dr. John MacGregor performed an analysis of this data in advance of all law firms. This analysis led Dr. MacGregor to conclude - as would others later - that Merck's assertion that an increased risk of thrombotic events required 18 months of Vioxx exposure was not borne out by Merck's own study and analysis. Locks lawyers reviewed the supplemental report of Merck's expert on this data and prepared trial cross-examination. Locks lawyers also prepared for and defended Dr. MacGregor's deposition on this new data, as well as presented the data at trial as part of plaintiff's general causation case. This was the first time such an analysis had been performed, and it was the first time the data was presented at trial.

5. **USE OF FDA OFFICER TO COUNTER FDA APPROVAL DEFENSE**

Locks Law Firm was the first firm to utilize an FDA Officer, Dr. Suzanne Parisian, to counter the defense that the FDA approved Vioxx. This defense is statutory in New Jersey and a number of other states. The court in <u>Doherty</u> permitted several days of testimony on FDA procedures and under-staffing.

6. **RULE 104 HEARING ON 4/6/05 FDA SUMMARY RESULTING IN EXCLUSION OF DOCUMENT**

Locks lawyers prepared for and cross examined Dr. George Taylor in a Rule 104 Hearing during trial to determine the trial admissibility of the 4/6/05 FDA Memorandum. After the hearing, the Court ruled the document inadmissible. Dr. Taylor, although deposed and noticed as an expert by Merck, did not appear at trial after being cross-examined at the hearing. While the 4/6/05 FDA Memorandum had been the basis for motion practice in other trials, this was the first Rule 104 hearing directly on the issue of both the overall admissibility of the document, and the associated issue of Merck's "Cox-2 Class Effect" defense. This ruling by the Court was the first time in New Jersey that the document had been stricken after a hearing with a ruling having precedential effect.

7. **FDA PREAMBLE**

Merck aggressively sought to have the January 2006 FDA Preamble admitted in Doherty, and Locks Law Firm briefed and argued the issue. We achieved a successful ruling barring its admissibility. This document was one of the centerpieces of Merck's defense of federal preemption at the jury level; that is, that FDA approval should persuade the jury that Merck was not liable.

8. **PREPARATION OF TOPOL AND GRAHAM TRANSCRIPTS FOR TRIAL PRESENTATION**

As part of the Doherty trial presentation, lawyers from the Locks firm worked closely with firms involved in the MDL depositions of both Drs. Topol and Graham. For the first time in any Vioxx trial various evidentiary issues, including exhibit presentation and page and line designations related to both these depositions were litigated by Locks Law Firm in such a manner that no rulings from the Court were required that could have been precedential in nature or potentially binding on plaintiffs in subsequent trials. Significant portions of both depositions related to liability and causation were presented to the Doherty jury, the first time any jury had seen this testimony.

9. **DR. JOHN MacGREGOR UTILIZED BY OTHER FIRMS**

Dr. MacGregor received a PhD in biochemistry from Cornell University, and did his PhD thesis under the direction of a world-renowned biochemist, B. L. Horecker. He did 2 post-doctoral fellowships, the second one under Gerald Edelman, a world-renowned biochemist who won the Nobel prize for medicine. He graduated the Cornell Medical School and performed a fellowship at Columbia University College of Physicians and Surgeons and in Cardiology at UCSF, and then went on to do a fellowship in interventional cardiology. He is board-certified in internal medicine, cardiology and interventional cardiology.

The Locks Law firm was the first firm to assist Dr MacGregor in his research regarding Vioxx medicine. Dr MacGregor testified for three days live in Atlantic County. While the Doherty trial resulted in a defense verdict on causation, we firmly believe that was due to Mrs. Doherty's many co-morbid risk factors. Judge Higbee and Merck's attorneys both stated separately off the record that Dr MacGregor was an impressive witness. Steven Stein from California has used Dr MacGregor as an expert on numerous Vioxx cases, as has Paul Sizemore from Girardi and Keese, and Jerry Kristal from Weitz and Luxemberg. We believe that each of these attorneys will vouch as to how well versed Dr MacGregor was in Vioxx medicine before they began prepping him.

10. **STI DOCUMENT REVIEW PROJECT**

Locks lawyers played a substantial role in reviewing the substantial production of documents and other materials produced to plaintiffs from Scientific Therapeutics Inc. in relation to the funding of Merck's efforts to seed the medical literature with favorable Vioxx medical "articles." This project also exposed Merck's extensive use of ghostwriters and "educational

seminars" for physicians to promote Vioxx. The work product included a review and analysis of funding sources for Merck's effort to saturate the medical literature with articles favorable to Vioxx which certainly would have been utilized in future Vioxx trials to illustrate Merck's conduct in relation to the medical profession and its effort to "sell" Vioxx to the at-large medical community.

11. **SINGLE LAW FIRM**

Locks Law Firm is the only firm which has tried a Vioxx jury trial by itself. That is not to ignore the clear benefit of our being able to use the attorney work product from the prior years of discovery and from the prior trials. Rather, it is a factor which inures to the "common benefit" because Merck saw that a single law firm is capable of trying Vioxx cases and can achieve a unanimous jury verdict on liability (see above discussion). That is, a single law firm can marshall countless fact, medical and liability issues and items of evidence, and can present them efficiently, effectively and successfully. Secondly, a single law firm can make the very large financial commitment necessary to try a Vioxx case. Third, a single law firm can successfully achieve numerous legal rulings of benefit to most plaintiffs. This is one of the factors in a mass tort becoming a "mature" mass tort; namely, when defendant can begin to expect single law firms trying jury trials.

12. **CONSISTENCY, QUANTITY, DURATION AND INTENSITY**

Locks Law Firm committed a huge amount of partner and associate time and sophisticated work product, plus paralegal and secretarial time, plus a large expenditure of funds, to litigate Vioxx cases. We conducted depositions of sales representatives, defended depositions of treating physicians and of plaintiffs, achieved a stellar record of conducting written discovery without judicial intervention, and contributed to the effort to force Merck to defend multiple cases in multiple states at the same time. Not only did our commitment not ebb after a number of adverse verdicts occurred, but we litigated a number of cases which were on the New Jersey trial docket as future bellwether trials, such as Klug, Ellis, Pritch and others.

13. **FUNDING**

In addition to funding our own cases (including the jury trial in Doherty and the trial preparation of a number of future bellwether cases involving depositions, motions and management conferences, and including the handling of all our Vioxx cases), Locks Law Firm also contributed fifteen thousand dollars ($15,000.00) to New Jersey Plaintiffs Law Firms to assist in pre-trial work.

# Exhibit C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | MDL NO. 1657<br><br>JUDGE: ELDON E. FALLON |

## OBJECTIONS BY THE LOCKS LAW FIRM TO THE DECEMBER 2, 2010 VIOXX COMMON BENEFIT FEE ALLOCATION

1. The time and labor which Locks Law Firm spent, which accrued to the common benefit, were not properly considered.
2. The efficiency Locks Law Firm brought to its litigation, avoiding duplicative work and achieving important results without wasting time and labor, especially in comparison to other firms, was not properly considered.
3. The novelty and difficulty of litigating specific issues, which were not litigated elsewhere, or which were not litigated to as successful a result, were not properly considered.
4. The skill brought to the litigation from prior pharmaceutical litigation was not properly considered.
5. The impact on defendant of Locks Law Firm having obtained successful liability findings from the jury, especially in New Jersey, one of the main Vioxx litigation centers, was not properly considered.
6. The impact on defendant of Locks Law Firm having obtained successful legal rulings, pre-trial and trial, especially in New Jersey, one of the main Vioxx litigation centers, was not properly considered.
7. The effect on Locks Law Firm of expending time, labor and finances on this litigation to the exclusion of other work and other legal commitments, was not properly considered.
8. The hourly rates of Locks Law Firm was not properly considered.
9. The fact that the Locks Law Firm litigation, which resulted in a common benefit, involved risk, was not properly considered.
10. The experience, reputation and ability of the Locks Law Firm attorneys, known to defendant prior to the Doherty trial and reinforced during the Doherty trial, especially where future New Jersey Vioxx trials where we were counsel were already being managed in pre-trial status by the Honorable Carol Higbee, were not properly considered.
11. The oral presentation made by Locks Law Firm was not properly considered
12. The thirteen (13) issues submitted in writing to the Fee Allocation Committee (a copy of which is enclosed) were not properly considered.

13. Locks Law Firm expects to receive some materials today, December 16, 2010 from the Fee Allocation Committee. Locks Law Firm reserves the right to object further once we have had the opportunity to review the materials. We believe that we may have objections to the methodology used [point system, weight given to certain tasks, weight given because of membership on the Plaintiff Steering Committee (PSC), creation of task assignments by the PSC for the PSC, etc]. We believe we may have objections to duplicative and wasteful work assignments in the PSC. We believe we may have objections to the PSC self-evaluation of its "trial package" and other work product in comparison to the work product made available to other counsel by Locks Law Firm. We believe we may have objections to the acceptance by the Committee of hourly rates, hours, and other criteria presented by other law firms, all of which is documented in materials we do not yet possess. We do not yet know what will be produced by the Fee Allocation Committee and reserve our rights to object further.

14. We object to the decision of the Fee Allocation Committee not to make its methodology and point system (and the underlying materials) available to Locks Law Firm (or others) until the small 14-day period between the December 2 allocation and the December 16 deadline to object. We do not have sufficient time to document and set forth objections, and we respectfully reserve the right to do so in the future.

15. We object to the lack of transparency of the fee allocation process; for example, a decision by the committee on the value of a certain task might seem appropriate on its face, but not when the decision is viewed in relation to an earlier decision to assign that task, in what one court has called "a pre-arranged compact". As another example, prior relationships (positive or negative) among or between counsel may have surfaced during the decision-making process which affected the decisions.

16. Locks Law Firm respectfully reserves the right to object further, to the full extent permitted by law, and to seek further materials and perhaps testimony to the full extent permitted by law.

## BASES FOR THE AWARD REQUESTED

A chart totalling the hours, the hourly rate, and the total hours for each individual is attached. There are 7,678.95 attorney hours ("A"), and 1,059.05 paralegal hours ("P"). The total lodestar is $4,345,483.75. A 1.5 multiplier results in an award of $6,518,226.50, which is the award requested.

Respectfully submitted,

LOCKS LAW FIRM LLC

By: _____
James J. Pettit

Dated: December 16, 2010

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX PRODUCTS LIABILITY LITIGATION | MDL NO. 1657<br><br>JUDGE: ELDON E. FALLON<br><br>CERTIFICATE OF SERVICE |

I, Pamela Welker, hereby certify that the above and foregoing Motion to Suspend has been served on Liaison Counsel, Russ Herman and Philip Wittmann, by U.S. Mail and email, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No. 8, on this date, February 3, 2011

                                        LOCKS LAW FIRM, LLC
                                        Attorneys for Plaintiff/Appellant

                                        By: _____
                                            Pamela Welker, Legal Assistant

Dated: February 3, 2011

**LOCKS LAW FIRM, LLC**

457 Haddonfield Road, Suite 500
Cherry Hill, New Jersey 08002
T 856.663.8200
T 866.LOCKSLAW
F 856.661.8400
www.lockslaw.com

Gene Locks
James J. Pettit[tt]
Michael A. Galpern[tt]
Karl Friedrichs

Steven P. Knowlton
Michael B. Leh
Jonathan W. Miller
Jerry A. Lindheim

Jennifer E. Troast
Franklin Solomon
Pamela A. Lee
Andrew J. Dupont
Stefanie G. Ebert

*Of Counsel:*
Lee S. Goldsmith, M.D., LLB[c*]
Goldsmith Ctorides & Rodriguez, LLP[c*]
*www.goldsmithlegal.com

[tt]CERTIFIED BY THE SUPREME COURT
OF NJ AS A CIVIL TRIAL ATTORNEY

RECEIVED
FEB 4 2011

February 3, 2011

**VIA ELECTRONIC FILING AND OVERNIGHT DELIVERY**

Hon. Eldon E. Fallon
Section L
United States District Court
500 Poydras Street, Room C456
New Orleans, LA 70130

  Re: MDL 1657 – In re Vioxx Products Liability Litigation
     Eric Weinberg, Esq., Chris Placitella, Esq., and Cohen, Placitella and Roth

Dear Judge Fallon:

  Enclosed is a copy of the objections of Locks Law Firm to the January 20, 2011 recommendation of the Fee Allocation Committee, which has been filed with the Clerk of the United States District Court Eastern District of Louisiana.

  Thank you for your attention in this matter.

               Respectfully submitted,

               LOCKS LAW FIRM, LLC

               James J. Pettit

JJP/pw
cc: Chris Placitella, Esquire (via e-mail and overnight delivery with enclosure)