

35778233

Feb 4 2011
3:51PM

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  VIOXX | ) | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | Section L |
| | ) | |
| THIS DOCUMENT RELATES | ) | JUDGE FALLON |
| TO ALL CASES | ) | MAGISTRATE KNOWLES |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## THE BRANCH LAW FIRM'S OBJECTION TO THE FEE ALLOCATION COMMITTEE'S RECOMMENDATION OF COMMON BENEFIT FEES; SUPPORTING DECLARATIONS OF TURNER W. BRANCH AND CYNTHIA L. ZEDALIS

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

Pursuant to this Court's January 20, 2011 Order, claimant THE BRANCH LAW FIRM hereby respectfully submits the following Objection to the Fee Allocation Committee's Recommendations of January 20, 2011.

### Preliminary Statement

The recommended common benefit fee awards submitted by the Fee Allocation Committee ("FAC") are so completely devoid of any logical basis that an alarming pall is cast on the FAC's purported methodology used in devising the awards as well as its function in fairly representing the interests of not only the Branch Law Firm ("Branch"), but all Vioxx counsel who performed work for the benefit of Vioxx claimants.

Branch spent 7,087.5 common benefit hours. This time was (1) approved by the Court-appointed accounting firm of Wegmann-Dazet & Company; (2) reported to the Court in filed affidavits by Phillip A. Garrett, a certified public accountant for Wegmann-Dazet; and (3)

1

formed the basis of the Court's total common benefit fee award of $315,250,000 based on the

total common benefit hours in the amount of 562,943.55 hours. Despite the fact that Branch had

*11 cases on the trial calendar in New Jersey*—more than any other firm with cases in that venue-

-as well as one case set for trial in the Texas MDL, the FAC recommends that Branch be

awarded an amount of $281,521.84 (or $0, depending on whether the recommended award has

been withdrawn). Branch objects to this proposal on the grounds that it is unjustified,

inexcusable, and lacking any rational basis. As discussed in more detail below[1], the FAC failed

to properly analyze the time and work performed by Branch, and in making its award, failed to

apply the lodestar/*Johnson* factors as enunciated by the Fifth Circuit Court of Appeals. In

addition, the award is contrary to the instructions and reasoning set forth by this Court in its

October 19, 2010 Order & Reasons[2] granting common benefit fees and by the express terms of

the Vioxx Master Settlement Agreement.

Therefore, Branch requests that it be fairly compensated for its common benefit work.

Because Branch's common benefit time (7,087.50 hours) is 1.2523 percent of the total common

benefit time (565,943.55 hours), it should be awarded 1.2523 percent of the total award of

$315,250,000; *i.e.,* $3,947,875.75. Accordingly, Branch respectfully requests that the Court

reject the proposed award to Branch in the amount of $281,521.84 and award Branch

$3,947,875.75.

### Statement of Relevant Facts

<u>Work Performed by Branch</u>: Branch is a nationally-recognized litigation firm known for

handling complex litigation and catastrophic injury and wrongful death cases. The firm has

---

[1]   Contemporaneously with this filing, Branch has filed a Notice of Joinder in the Joint
Objection of Eric Weinberg, Chris Placitella, and Cohen, Placitella and Roth to the Fee
Allocation Committee's Jan. 20, 2011 Recommendation dated February 2, 2011.

[2]   The October 19, 2010 Order & Reasons is hereafter referred to as the "10/19/10 Order."

offices in Houston, Texas, Albuquerque, New Mexico and Washington, D.C. It filed lawsuits against Merck & Co., Inc. on behalf of 2,494 claimants, and registered all of those individuals in the Vioxx Settlement Program. Of the 2,494 cases, 780 were filed in the MDL, 1,109 were filed in the New Jersey Litigation, 197 were filed in the Texas MDL, 238 were filed in federal court in New Mexico, and 170 were filed in Washington, D.C. *See* the accompanying Declaration of Turner W. Branch dated February 4, 2011 ("Branch Dec."), ¶ 2.

Branch played a major role in the Vioxx litigation since its inception. For example, the firm was State Liaison Counsel for New Mexico in the MDL, and firm attorneys were assigned to the Discovery and Science Committee by the Plaintiffs' Steering Committee ("PSC"). In October 2005, the firm resigned as State Liaison Counsel in the MDL and joined a consortium of several other firms with a large number of cases filed in the New Jersey Litigation (including, among others, Weitz & Luxenberg, P.C. and the Lanier Law Firm) in order to form a cohesive prosecution team of lawyers experienced in mass tort litigation. This group pooled money and attorney time in an effort to analyze, select, and prepare the best possible cases for trial in New Jersey for the benefit of all plaintiffs in that forum and in others. *Id.,* ¶ 3.

The firm was very active in the New Jersey Litigation.[3] In fact, New Jersey Superior Court Judge Carole E. Higbee placed ***eleven (11)*** Branch cases on the trial calendar, *more than any other law firm with cases filed in New Jersey. Id.,* ¶ 4. (In the Texas MDL, Branch also had a case scheduled for trial, *i.e., Hobart Miller v. Merck & Co., Inc.*) Branch conducted extensive

---

[3]   It is important to recognize that several members of the Fee Allocation Committee played no active or discernable role in the litigation before Judge Higbee in New Jersey or in the Texas MDL[3], where Branch had cases calendared for trial; consequently, they may not understand the valuable contributions Branch made in those forums. Detailed records relating to attorney time invested for the common benefit of all Vioxx clients in both New Jersey and in the Texas MDL are available, were made available, and were received, accepted, and approved by the Court-appointed accounting firm and reported to this Court in Mr. Garrett's affidavits.

discovery and trial preparation for those New Jersey cases set for trial, and firm lawyers personally attended every status conference in New Jersey and attended, either personally or telephonically, every MDL status conference. *Id.* In addition, the firm contributed both time and money participating in a statistical analysis study conducted by John B. Kostis, M.D., a specialist in cardiovascular diseases and hypertension and Professor and Chair of Medicine, University of Medicine and Dentistry of New Jersey. Dr. Kostis, who was retained as an expert by Branch and other firms participating in the New Jersey Litigation, was expected to testify at trial as to the likelihood that Vioxx caused the cardiovascular event at issue in the particular case from a statistical standpoint. *Id.*, ¶ 5.

Experience of Branch Lawyers: Four attorneys working for or on behalf of Branch; *i.e.*, Turner W. Branch, Margaret Moses Branch, Cynthia L. Zedalis, and Richard A. Sandoval, were involved in the oversight and management of all the Vioxx cases the firm filed.[4] These attorneys were assisted by mid-level and junior associates, paralegals, and law clerks, each with vast experience in mass tort litigation. Mr. Branch has practiced law since 1965, and has extensive trial experience in a variety of complex litigation matters including securities, defective products, wage and hour, toxic torts, pharmaceuticals, civil rights, catastrophic injury, consumer fraud, and wrongful death cases. Mr. Branch is a 1965 graduate of Baylor Law School where he was section editor of the *Baylor Law Review*. Upon graduation, he returned to Albuquerque, New Mexico to practice law. He is a member of the States Bars of New Mexico, Colorado, and Texas, and the Bar Association of the District of Columbia.

---

[4] Other attorneys at Branch (for example, former New Mexico Supreme Court Justice Harry E. Stowers) worked on the Vioxx litigation but not to the extent as Mr. Branch, Ms. Branch, Ms. Zedalis or Mr. Sandoval.

Mr. Branch was elected Fellow in the International Academy of Trial Lawyers, an organization of only 500 lawyers throughout the world, and serves on that organization's Board of Directors.  He is a life member of the Association of Trial Lawyers of America, and served as the New Mexico representative for the Association of Trial Lawyers of America for twelve years.  Mr. Branch is also a diplomate of trial advocacy for the Association of Trial Lawyers of American National College of Advocacy, and of the American Board of Trial Advocates, National Board of Directors of the American Board of Trial Advocates.  He is certified as a civil trial specialist by the State Bar of New Mexico.

Mr. Branch has vast experience with multidistrict litigations.  He has served as a member of the Plaintiffs' Steering Committee for the Avandia MDL in the Eastern District of Pennsylvania; is currently a member of the Discovery Committee for the Dupuy Orthopaedics Inc. ASR Hip Implant Products litigation in the Northern District of Ohio; was vice chair of the Plaintiffs' Steering Committee in litigation involving EMS (Eosinophlia Myalgia Syndrome) in the United States District Court in Columbia, South Carolina; served as co-chair of MDL 1208 of the Eastern District of Texas in the Norplant contraceptive litigation brought against American Home Products; served as Vice Chair of the Plaintiffs' Steering Committee for L-Tryptophan Litigation, MDL No. 863; Liaison Counsel for Breast Implant Litigation, MDL No. 926; Member of Executive Committee for Castano Tobacco Litigation in the United States District Court for the Eastern District of Louisiana; a member of the  Plaintiffs' Steering Committee for Amtrak Bayou Canot case in Mobile Alabama, MDL No. 1003; National Liaison Counsel in Omniflox Litigation in the United States District Court in Chicago, Illinois, MDL No. 1004; and Co-Chair of Plaintiffs' Steering Committee for the Norplant Litigation in the Eastern District of Texas, MDL No. 1038.

Importantly, Mr. Branch was State Liaison Counsel for New Mexico in the Vioxx MDL and firm members were assigned to the Discovery and Science Committee by the PSC. In October 2005, at the advice and urging of members of the PSC, Branch resigned its position in the MDL and joined a consortium of other firms with large number of cases pending in New Jersey in order to form a cohesive prosecution team of lawyers experienced in mass tort litigation. This group pooled funds and attorney time in an effort to analyze, select, and prepare the best possible cases for trial in New Jersey for the benefit of all plaintiffs in that forum and in others. Branch's effort was extensive and wholly contributed to the successful settlement of the Vioxx litigation.

Ms. Branch has been a practicing attorney for the past 30 years and is a partner of Branch. In 2010, she was awarded the Lifetime Achievement Award by the New Mexico Commission for the Status of Women at the 25th Annual Governor's Awards for Outstanding New Mexico Women. Ms. Branch is a member of the American Board of Trial Advocates and International Women's Forum. She serves on the Board of Directors of the New Mexico Trial Lawyers Association and the Board of Directors of the Center for Civic Values (Interest on Legal Trust Accounts). In her practice, Ms. Branch has been particularly interested in women's health issues. She has served on the Executive Committee of the Failure to Diagnose Breast Cancer ATLA Litigation Group. She served on the Plaintiffs' Steering Committee of the Breast Implant MDL, for was chair of the Mentor Committee that negotiated a section 23b(1)(B) limited fund class settlement of $25.8 million. Ms. Branch was also actively involved in the L-Tryptophan MDL No. 865 in the District of South Carolina.

Ms. Zedalis graduated *cum laude* from Occidental College in 1981 and from the University of California, Davis, School of Law in 1984, where she was an Executive Editor of

the U.C. Davis Law Review.  Following graduation from law school, Ms. Zedalis did

commercial litigation for Morgan, Lewis & Bockius and Quinn Emanuel Urquhart & Sullivan in

Los Angeles, California, and for Hall Dickler Kent Friedman & Wood (now Reed Smith) in New

York, New York, before moving to New Mexico with her family and associating with Branch.

She has significant litigation and trial experience in both state and federal courts in the areas of

consumer fraud, oil and gas, intellectual property, and appellate matters.

Mr. Sandoval (no longer associated with Branch) attended the University of New Mexico

School of Law following his honorable discharge from the United States Army First Infantry

Division.  While at UNM Law School, he received a scholarship in his senior year for

demonstrating tenacity and interest in all areas of law. Throughout law school, he actively

participated in state and federal litigation while working as a law clerk for the Albuquerque City

Attorney's office.

Mr. Sandoval has served as an Assistant District Attorney, an Assistant City Attorney for

the City of Albuquerque, and a Senior Litigation Attorney for the State of New Mexico Risk

Management Division.  While at Branch, he was a member of the Vioxx MDL Discovery

Committee, where he has been appointed to the Privilege Log and Case Chronology projects.  In

addition to products liability, his practice includes wrongful death, personal injury, medical

malpractice, and nursing home abuse.

Time Reported to the FAC and the Proposed Award That Followed:  In support of its

motion to award common benefit fees, the FAC submitted the affidavit of Philip A. Garrett, CPA

of Wegmann-Dazet & Company dated January 20, 2009.  In that affidavit, Mr. Garrett stated that

he and his firm reviewed time and expenses from 109 separate law firms and, in paragraph 5,

confirmed that "where it was determined that a submission was not in compliance with PTO No.

7

6, or the procedures established by the [FAC], the submitting law firm was advised of this determination and given an opportunity to correct it." At no time did Mr. Garrett or any Court-approved accountant inform Branch that its hours did not comply with PTO No. 6.

In his January 2009 affidavit, Mr. Garrett advised the Court that the total number of common benefit counsel hours was 503,185. In an updated affidavit on July 30, 2010, Mr. Garrett determined that the total number of common benefit counsel hours had increased to 562,943.55. *See* the 10/19/10 Order at pp. 32-33. Of these total hours, 7,087.5 were expended by Branch. In ruling that the amount of $315,250,000 should be awarded as common benefit fees, the Court relied on the total hours of common benefit counsel time submitted by Mr. Garrett. Such total hours were "checked and approved by the Court-appointed CPA," which the Court found "to be reliable." *Id.* at pp. 33.

The Court's award of $315,250,000 was confirmed by using a lodestar crosscheck of an hourly billable rate of $443.29 and a benchmark increase of .5 %, to reach an award equal to 6.5% of the Vioxx settlement amount of $4.85 billion. Further, in the 10/19/10 Order, the Court stated that the fact that an attorney was not on the Plaintiffs' Steering Committee ("PSC") *is not a factor that calls "for adjustment of the benchmark percentage in this case,"* recognizing that "[t]here were many excellent, hard-working attorneys who did not make it on to the PSC simply due to limitations of committee size." *Id.* at p. 28-29 (emphasis added).

On December 2, 2010, the Fee Allocation Committee ("FAC") notified Branch that the FAC proposed a common benefit fee award to Branch in the amount of $281,521.84. *See* Exhibit A to Branch Dec., ¶ 7. Branch lodged its objection to the award as instructed (a copy of which is attached to Branch Dec. as Exhibit B), and reviewed various documents the FAC purportedly analyzed in making its proposed awards, which the FAC made available for

8

inspection, on Friday, December 10, 2010, at Mr. Herman's office in New Orleans, Louisiana. *See* Zedalis Dec., ¶ 2. As discussed below and in the Zedalis Dec., Branch's common benefit time submission, complete with time records and other supporting materials, was not among the documents in the FAC's possession as of December 10, 2010, despite email confirmations indicating that it had, in fact, been sent electronically to Mr. Garrett and to the FAC as instructed.

On January 20, 2011, this Court issued an Order announcing the proposed awards and setting forth the procedure for further objections. The spreadsheet attached as an exhibit to the Court's Order, prepared by the FAC, listed the law firms that sought common benefit fees and the proposed awards, if any, and also identified the firm that accepted and/or objected to the proposed awards. Without explanation--typical of the manner in which the FAC undertook its task of allocating common benefit fees--the amount of Branch's award was identified as $0, even though $281,521.84 was previously suggested.[5]

## Argument

I.  **ALTHOUGH BRANCH HAD 7,087.5 APPROVED HOURS, THE PROPOSED AWARD SEEKS TO COMPENSATE IT FOR LESS THAN TEN PERCENT OF THOSE HOURS, ILLUSTRATING THE PAC'S FAILURE TO CORRECTLY APPLY THE LODESTAR/*JOHNSON* FACTORS, AS REQUIRED BY THE MASTER SETTLEMENT AGREEMENT AND THE FIFTH CIRCUIT**

Mr. Garrett, the Court-appointed accounting firm, reported 7,087.5 hours of Branch common benefit time. In its 10/19/10 Order, the Court accepted those hours as accurate and as forming the basis of its award of common benefit fees in the amount of $315,250,000. The Court reasoned that the amount of fees was justified by using a "lodestar" crosscheck of an hourly billable rate of $443.29 and a benchmark increase of .5 %, to reach an award equal to

---

[5]   It is unclear from the spreadsheet whether the FAC withdrew the recommended awards to firms, like Branch, which objected to the their proposed fee awards as some sort of a penalty or whether the zero next to the objectors' names just means that the award is disputed.

6.5% of the Vioxx settlement amount of $4.85 billion. Thus, based on (1) the Court's common benefit fee award; (2) the calculations employed by the Court-appointed accountants; and (3) Branch's approved hours of 7,087.5, Branch is entitled to an award of $3,947,875.75. This amount represents 1.2523 percent of the total common benefit counsel hours (*i.e.*, 562,943.55).

Rather than awarding Branch $3,947,875.75, however, the FAC instead proposed the meager award of $281,521.84--which, for no explanation, is now identified as "zero" in the list of awards and objectors the FAC presented to the Court that is attached to the Court's January 20, 2011 Order. The proposed award to Branch signifies that the FAC ***discounted more than 90 percent of Branch's accepted common benefit hours*** and/or essentially assigned an hourly attorney fee of $42.81. As discussed above, Branch had more than 11 cases set for trial in New Jersey (the most of any one firm in that venue) and one in Texas, and spent thousands of hours preparing those cases for trial and in performing other work for the common benefit of all Vioxx claimants. That it filed nearly lawsuits for nearly 2,500 claimants was a contributing factor in Merck's settlement of nearly $5 billion. Thus, Branch's proposed fee allocation is so shockingly low--especially compared to those awards the FAC proposes to allocate to its own participating firms and PSC member firms--that the methodology the FAC used in allocating common benefit fees, if any, is more than suspect, let alone unreasonable, arbitrary, and highly irregular.

It is well founded that the process of dividing and allocating attorneys' fees among competing counsel is the same as making any other kind of attorney fee award. The Fifth Circuit has uniformly held that the starting point of any proper analysis in allocating common benefit fees must be a lodestar calculation. *See Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). Initially, the Court must "determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer." *Id.* (citing *Louisiana*

*Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.), *cert. denied,* 516 U.S. 862, 116 S. Ct. 173 (1995). The lodestar is then computed by multiplying the number of hours reasonably spent by the reasonable hourly rate. *Id.*

Although the District Court may adjust the lodestar upward or downward depending on the respective weights of the twelve factors enunciated by the Court in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* factors"), the failure to base an award or allocation of fees upon a lodestar calculation is in the first instance reversible error. *See Riley v. City of Jackson, Miss.,* 99 F.3d 757, 760 (5th Cir. 1996). The *Johnson* factors, which have been adjusted over time by Courts in this Circuit (*see, e.g., Walker v. U.S. Dept. of Housing and Urban Dev.,* 99 F.3d 761, 771 n. 12 (5th Cir. 1996); *Saizan v. Delta Concrete Prods. Co., Inc.,* 448 F.3d 795, 800 (5th Cir. 2006); *Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir. 1999), requires the Court to consider the following: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the customary fee; (4) the amount involved and the results obtained; and (5) the experience, reputation, and ability of the attorneys.

Here, in arriving at the common benefit fee award of $315,250,000, the District Court considered and applied the lodestar calculation and *Johnson* factors. *See* 10/19/10 Order. However, the allocation of the common benefit fees does not stop with the total award by the District Court. Pursuant to the Vioxx Master Settlement Agreement, which this Court approved, the FAC was instructed to allocate awards based on "established Fifth Circuit precedent . . . ." *See MSA at* ¶ 9.2.3 9. Such precedent was specifically identified as the *Johnson* and *Forbush* cases, as stated above, as well as *Blum v. Stenson,* 465 U.S. 886, 900 (1984), *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 583 n. 15 (5th Cir. 1980), *Strong v. BellSouth Telecomms.,*

11

*Inc.*, 137 F.3d 884, 851-52 & n. 5 (5th Cir. 1998), and *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp.2d 830 (E.D. La. 2007).

The FAC ignored the overwhelming precedent of allocating common benefit fees based on a lodestar calculation. For example, the FAC's recommendation of the meager amount of $281,521.84 reflects that it improperly, and without justification or excuse, places a higher value on attorneys who served on committees in the MDL greater than other attorneys' time in direct contravention of the 10/19/10 Order. On pages 28 and 29 of that Order, the Court stated that the fact an attorney was not on the Plaintiffs' Steering Committee ("PSC") *is not a factor that calls "for adjustment of the benchmark percentage in this case,"* recognizing that "[t]here were many excellent, hard-working attorneys who did not make it on to the PSC simply due to limitations of committee size." (Emphasis added.)

Presumably the PAC used a point system to determine common benefit "worth." Notwithstanding the PAC's attempt to create a system of "objective" factors (such as time spent in trial, participating in committees, and the like), the system is inherently subjective because it completely ignores the lodestar analysis. The wholly unfair, unreasonable, and arbitrary system is apparent when cross-checked against the lodestar method, which should have resulted in a proposed award to Branch in the amount of $3,994,875.75 for the 7,087.5 hours the firm spent in prosecuting its nearly 2,500 cases in New Jersey, the MDL, Texas, New Mexico, and the District of Columbia. The resulting attorney fee of $42/hour for common benefit work--in which the members of the PSC and FAC awarded themselves a fee in excess of $1,000/hour[6]--would be laughable if it were not so egregiously wrong.

---

[6]    For example, records reviewed in New Orleans at Mr. Herman's office reflected that Beasley, Allen reported 36,747.75 in common benefit time and its recommended award is $40,900,000, which represents a blended hourly billable rate of $1,112.99. Zedalis Dec., ¶ 8. Similarly,

II.    **A REVIEW OF THE FAC'S RECORDS IN DECEMBER 2010 REFLECTED THAT, AT LEAST WITH RESPECT TO BRANCH AND A FEW OTHER FIRMS SEEKING COMMON BENEFIT FEES, SUPPORTING FEE SUBMISSION DOCUMENTS WERE EITHER MISSING OR INACCURATELY RECORDED**

In arriving at its proposed award to Branch in the amount of $281,521.84, it is unclear what documentation the FAC reviewed and analyzed. It appears as if the FAC was *not in possession* of Branch's common benefit fee submission, including time sheets and a description of the work performed, which Branch submitted to Mr. Herman on June 30, 2008 until *after* the December 2, 2010 recommendation was made.

Pursuant to the FAC's invitation, Ms. Zedalis traveled to Russ Herman's office in New Orleans on December 10, 2010, in order to review the common benefit fee materials that the FAC made available for inspection on that date. Zedalis Dec., ¶ 2. For a few hours that afternoon, Ms. Zedalis took notes of the materials Mr. Herman identified as "everything" pertaining to common benefit fee allocation. *Id.* ¶¶ 3 & 4. For example, two binders contained the Vioxx Fee Committee Presentations of 43 firms, and three binders contained counsel's common benefit fee submissions. *Id.*, ¶ 4. Mr. Herman said that a fourth binder was at Andy Birchfield's office. The index to Volume 3 (the third binder) indicated that Branch's fee submission follows tab 5; however, *no time sheets, counsel certification of hours, or any document whatsoever followed tab 5. Id.* When Ms. Zedalis asked Mr. Herman the location of Branch's fee submission, Mr. Herman replied that he did not know where it was, and called Mr. Birchfield. *Id.*, ¶ 5. Mr. Birchfield stated that he was in possession of volume 4, which contained the submission of the Robinson firm, and indicated that he would look for Branch's

---

Blizzard, McCarthy & Nabers reported 9,173.25 in common benefit time and its proposed award is $11,600,000, representing a blended hourly billable rate of $1,274.54. *Id.* Moreover, at the high end, the FAC's top-compensated firm would be paid a blended rate of $2,205/hour.

materials. When Ms. Zedalis explained that the affidavit was emailed to Mr. Herman in June
2008, Mr. Herman requested his staff to review their emails, but his office was not able to locate
the submission by the time Ms. Zedalis completed her review of the fee materials. At Mr.
Herman's request, Branch then emailed that afternoon another complete submission. *Id.,* ¶¶ 6 &
7. As Exhibits A and B to the Zedalis Dec. reflect, the submission had previously been emailed
to Mr. Herman on June 30, 2008.

Therefore, the fact that the FAC either misplaced or ignored Branch's submission calls
into question its proposed recommendation in its entirety. Without the description of the
common benefit work the firm conducted, the FAC could not have undertaken any meaningful
analysis in arriving at an award. Curiously, documentation at Mr. Herman's office showed that
Branch had spent 7,087.50 hours of the 563,290.3 hours the FAC represented to the Court as
common benefit time, but documentation supporting those hours were not in Mr. Herman's
office or at Mr. Birchfield's office in Birmingham, Alabama. Again, the FAC's failure to
consider Branch's time records when making its recommendation is alarming.

### III.  THE FAC'S RECOMMENDATIONS ARE NOT TO BE "RUBBER-STAMPED" BY THE COURT BUT SHOULD BE CLOSELY SCRUTINZED

Although fee allocation committees may recommend the division of common benefit
fees, the Court must "maintain close supervision of the committee and 'closely scrutinize' any
recommendation from the committee . . . because there are conflicts of interest inherent in
appointing a fee committee: the members of the committee suggest to the court a division of a
limited fund among themselves and other firms." *Turner v. Murphy Oil USA, Inc.,* 582 F. Supp.
2d 797, 801 n. 8 (E.D. La. 2008) (citing *In re High Sulfur Content Gasoline Prods. Liab. Litig.,*
517 F.3d 221, 235 (5th Cir. 2008). The Fifth Circuit has also acknowledged that "our precedents
do not permit courts to defer to a fee allocation proposed by a select committee of attorneys, in

14

no small part, because "counsel have inherent conflict." *In re High Sulfur Content I*, 517 F.3d at 234-235.  As Judge Ambro stated in *In re Diet Drugs Products Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005), "[t]hey make recommendations on their own fees and thus have a financial interest in the outcome.  How much deference is due the fox who recommends how to divvy up the chickens?"

In this case, a member of the PSC told undersigned counsel that the Court will "rubber stamp" the fee recommendation and queried why counsel was objecting when so many other firms have "settled" their awards.  This admission is disturbing given the Fifth Circuit's caution that "affording substantial deference [to an allocating committee's recommendations] is inappropriate." *In re High Sulfur Content II*, 517 F.3d at 235 (quoting *In re Diet Drugs*, 401 F.3d at 173-74 (Ambro, J. concurring).  The recommendations should be fully scrutinized in order to ensure compliance with the law.

## Conclusion

WHEREFORE, the Branch Law Firm respectfully requests that the Court award it common benefit fees of $3,947,857.75, an amount which is fair, reasonable, and consistent with case law, this Court's prior Orders, and the Vioxx Master Settlement Agreement, and for such other and further relief as this Court may deem just and proper.

Dated: February 4, 2011

BRANCH LAW FIRM

Turner W. Branch
tbranch@branchlawfirm.com
2025 Rio Grande Blvd. NW
Albuquerque, New Mexico 87104
(505) 243-3500 (telephone)
(505) 243-3534 (telephone)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing the Branch Law Firm's Objections to the

Fee Allocation Committee's Recommendation of Common Benefit Fees; Supporting

Declarations of Turner W. Branch and Cynthia L. Zedalis has been served upon all parties by

electronically uploading the same to LexisNexis File & Service Advanced in accordance with

Pretrial No. 8, and via email and U.S. Mail to Russ Herman and Andy Birchfield on this 4th day

of February, 2011.

## DECLARATION OF TURNER W. BRANCH

I, TURNER W. BRANCH, declare and affirm as follows:

1.      I am an attorney-at-law admitted to practice law in New Mexico, Texas, Colorado and Washington, D.C., and am a partner of the claimant Branch Law Firm ("Branch") in this matter.  I have personal and first-hand knowledge of the facts set forth below, and if called and sworn as a witness, I could and would competently testify as to each of them.

2.      Branch filed lawsuits against Merck & Co., Inc. on behalf of 2,494 claimants, and registered all of those individuals in the Vioxx Settlement Program.  Of the 2,494 cases, 780 were filed in the MDL, 1,109 were filed in the New Jersey Litigation, 197 were filed in the Texas MDL, 238 were filed in federal court in New Mexico, and 170 were filed in Washington, D.C.

3.      Branch played a major role in the Vioxx litigation since its inception.  The firm acted as State Liaison Counsel for New Mexico in the MDL, and firm attorneys were assigned to the Discovery and Science Committee by the Plaintiffs' Steering Committee.  In October 2005, the firm resigned as State Liaison Counsel in the MDL and joined a consortium of several other firms with a large number of cases filed in the New Jersey Litigation (including, among others, Weitz & Luxenberg, P.C. and the Lanier Law Firm) in order to form a cohesive prosecution team of lawyers experienced in mass tort litigation.  This group pooled money and attorney time in an effort to analyze, select, and prepare the best possible cases for trial in New Jersey for the benefit of all plaintiffs in that forum and in others.  The firm's resignation as State Liaison Counsel was done at the urging and insistence of several firms which are members of the Fee Allocation Committee.

1

4.      The firm was very active in the New Jersey Litigation.  New Jersey Superior Court Judge Carole E. Higbee placed *__eleven (11)__* Branch cases on the trial calendar, which was *more than any other law firm with cases filed in New Jersey*.  In the Texas MDL, the firm also had a case scheduled for trial.  Branch conducted extensive discovery and trial preparation for those New Jersey cases set for trial, and firm lawyers personally attended every status conference in New Jersey and attended, either personally or telephonically, every MDL status conference.

5.      In addition, the firm contributed both time and money participating in a statistical analysis study conducted by John B. Kostis, M.D., a specialist in cardiovascular diseases and hypertension and Professor and Chair of Medicine, University of Medicine and Dentistry of New Jersey.  Dr. Kostis, who was retained as an expert by Branch and other firms participating in the New Jersey Litigation, including Eric Weinberg and Chris Placitella, was expected to testify at trial as to the likelihood that Vioxx caused the cardiovascular event at issue in the particular case from a statistical standpoint.

6.      On December 2, 2010, I received notification that the FAC proposed a common benefit fee award to Branch in the amount of $281,521.84.  A true and correct copy of the notice is attached as Exhibit A hereto.  The firm objected to the award as instructed.  A true and correct copy of the objection is attached hereto as Exhibit B.

7.      Attached to the objection (as Exhibit A thereto) is a copy of a letter dated December 9, 2008 from from Clifton W. Newlin, CPA of Wegmann-Dazet & Company to the Branch Law Firm stating that the accounting firm *__accepted__* Branch's submission of common benefit hours and only requested further data in support of the firm's claimed common benefit expenses.  *No request was made* with respect to Branch's common benefit hours at that time or at any time prior to the December 2, 2010 notice of the firm's proposed common benefit fee award.

2

I declare under penalty of perjury that the foregoing is true and correct.

Turner W. Branch