UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION  L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | February 18, 2011 |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION AND INCORPORATED MEMORANDUM TO SHORTEN RESPONSE TIME AND TO COMPEL PRODUCTION OF FULL RESPONSES TO FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION BY OBJECTORS' LEAD COUNSEL TO FEE ALLOCATION COMMITTEE

NOW COME Robert E. Arceneaux and Margaret E. Woodward, co-Lead Counsel for Objectors, and move to shorten the response time and to compel the production of the information and documents requested by the following Interrogatories and Requests for Production, upon showing that:

1.      By Order dated November 29, 2010 (Rec. Doc. 56731), this Court granted a motion filed by undersigned counsel on behalf of Chris Placitella and the firm of Cohen Placitella and Roth, and Eric Weinberg and the Law Offices of Eric Weinberg for access to Certain Documents and things.  (Rec. Doc. 54315).  The Court observed that the requested materials were "essential to enable [movants] to challenge how the Fee Committee valued their work," quoting *In re High Sulfur Content Gasoline Prods. Liability Litig.,* 517 F. 3d 220, 231 (5th Cir. 2008).

-1-

2.      The FAC made partial disclosure of some of the materials requested, but failed to provide most of the data at all, and provided some of it in unusable form.[1]

3.      After the FAC made its formal allocation recommendation and during the objection period, undersigned counsel filed a joint motion to produce the FAC's allocation grid, asserting that the document was essential to their preparation of a meaningful objection. The Court denied this motion, stating that further discovery would not be permitted until after the objections had been submitted and the matter had been turned over to the Special Master.

4.      In a hearing conducted on February 17, 2011, this Court referred the fee allocation process to Special Master Pat Juneau for study. Prior to that hearing, undersigned counsel, selected but not yet confirmed as Lead Counsel for the Objectors, propounded in draft form to the FAC the following interrogatories and requests for production, with two exceptions[2].

_____

[1] Ordered by the Court to produce Garrett's time records, the FAC delivered the hours in a devilishly unusable format: on a chart that listed each worker *alphabetically*- not even sorted by firm. The material was also saved into pdf, so that it could not be rearranged into a sensible list.

[2] At the hearing on February 17, 2011, Ms. Snapka advised the Court that she had received a check purportedly distributed out of the common benefit fund in settlement of her objection to the court-ordered percentage to be contributed to the common benefit fund. Mr. Herman indicated that he had entered into what he believed as a secret settlement with the principal objector, Mr. Stratton, who claimed to have authority to act on behalf of all objectors (although Ms. Snapka indicated that she had been unaware of any negotiations conducted on her behalf until after the settlement was confected). He said that he then disbursed common benefit funds pursuant to the settlement. This Court advised that it had been unaware of the settlement and did not enter any order directing disbursement of common benefit funds. As a result of these disturbing developments and other intimations of impropriety , undersigned counsel added discovery requests directed to the FAC's consultation with an ethicist.
      On reports that the FAC had maliciously modified certain Objectors' claims, undersigned counsel also sought discovery of any documents that might reflect dialog concerning specific

5.      At the hearing, Mr. Herman delivered to undersigned counsel additional materials, which he indicated were all the FAC was willing to produce, and all the Objectors were entitled to receive. In support of the claim that Objectors were entitled to the work already conducted by the Court-appointed accountants, Mr. Arceneaux made the statement that Wagmen Dauzet charged in excess of $700,000 to complete their audit of common benefit fees and costs.  Mr. Herman disputed this.

Attached is a copy of the affidavit of Phil Garrett explaining exactly what Wagmen Dauzet performed, how long it took, and what it cost. That substantial body of work, already completed at common expense,  is critical to an evaluation of whether the fees awarded to the acceptors and the objectors are appropriate. This involved auditing and tabulation of hours reported, presumably by various category of timekeeper, such as partner, associates, paralegal or clerical staff, the rates changed for each category of time keeper, and presumably when these hours were recorded, such as pre-or post settlement. Also, presumably Wagmen Dauzet has information related to the lodestar rates each firm actually charges, which of course vary based upon geography and experience. Judge Fallon in his October 19, 2010 order approving a 6.5% assessment approved of the Wagmen Dauzet audited hours and its "average" lodestar hourly rate of $449.23. But, he expressly stated that "the Court has not been provided with the individual attorney billing rates used by Mr. Garrett to calculate the

objectors.  Request for Production No. 13.

lodestar...." One of the major items of our requested discovery is access to Wagmen Dauzet's workpapers and excel spreadsheets, so that we can delve into these numbers and suggest how they should be weighted according to our understanding of what the law provides. The purpose of this discovery is not only to allow us to make our appellate record, but more immediately, to facilitate the Special Master and the Court in making a decision that is properly informed by the information which the case law unequivocally declares is relevant in deciding how to allocate fees.

6.   Undersigned counsel has reviewed the materials provided by Mr. Herman and finds them insufficient to the task at hand- a "challenge [of] how the Fee Committee valued their work."  Moreover, it does not comply with this Court's November 29th Order in its omission of the following documents:

(1) pre-trial orders from each case that was tried as part of the MDL, including a list of all witnesses that testified and the exhibits introduced at trial;

(2) a list of all depositions that the PSC has identified as "common benefit" depositions;

(3) access to all time records submitted by attorneys or firms who submitted requests for common benefit fees, in usable form;

(5) access to all costs records submitted by attorneys or firms who submitted requests for common benefit fees.

7.   On February 17, Special Master Juneau instructed counsel to confer about requested discovery and report back to him on February 24, 2011.  Undersigned counsel have this date served on Lead Counsel for the FAC a request for a Rule 3.11 conference,

which they will attempt to conclude in advance of the February 24th meeting with Mr. Juneau.

8.      The schedule established in the hearing on February 17, 2011 contemplates that discovery will conclude rapidly, the Special Master will complete his review of the allocation process, and the Court will enter its final allocation order within sixty days.  Although Mr. Juneau has not yet established a firm schedule for discovery, and has allowed the parties until February 24, 2011 to arrive at a mutually agreed-upon schedule, he indicated that in order to comply with the Court's timetable, he anticipated that discovery would have to be completed within thirty days.

9.      As previously advised by letter dated February 16, 2011, which transmitted their draft discovery requests, undersigned counsel will need to complete written discovery before taking depositions.  That discovery cannot be formally propounded and answered within the ordinary time periods established by the Federal Rules in the 29 days now remaining under the Special Master's unofficial discovery schedule.  Undersigned counsel presume, then, that the Court and the Special Master contemplate an expedited course of discovery.   They request that the FAC be allowed a period of seven (7) days to respond to these requests.  It should be noted that the materials already exist and have been available to the FAC for the many months during which the FAC conducted its analysis.

10.      Accordingly, in an effort to comply with a timetable which has not yet been formally established but which appears impossible to adhere to, undersigned counsel hereby propound the following discovery, request a response within seven days, assert that

the failure to produce any information or documents requested impairs their ability

to make an appropriate challenge to the FAC's work, and move to compel responses

to each of the following interrogatories and  requests:

**Definitions:**

"Identify" when used in reference to a document means that the source and preparer of each such document should be stated, along with the date of its preparation or receipt.  In the event that the document does not bear a clear and self-explanatory title, its purpose or import should also be stated.

Each Request for Production includes each and every medium upon which information is or can be printed, recorded, or reproduced by mechanical means, by hand or by any other method, that is or has been within your possession, custody, control, or of which you have knowledge or access, including without limitation, the following: advertisements; affidavits; agreements; aperture cards; applications; books; brochures; calculations; cards; certifications; charts; circulars; codes; computer records or printouts; communications; contracts; copies; correspondence; data processing cards; degrees; descriptions; diaries; diplomas; discs or tapes; directives; drafts; drawings; e-mail or electronic mail; file folders; files; films; forms; graphs; indexes; inspection reports; journals; ledgers; letters; local, state and federal government hearing records and reports; magnetic tapes, cards, or discs or other products of any device for recording sound or electronic impulses; maps; memoranda; minutes or other records of meetings or conferences; motion picture films; negatives; newspaper stories or clippings; notes; notebooks; notices; notices of deficiencies; notices of rejections; notifications; numbers; opinions or reports of consultants; orders; pamphlets; petitions; photographs; pictures; plans; position papers; press releases; progress reports; publications; reports; reports of studies; reviews; schedules schedule revisions; sketches; specifications; statements; statistical data; status reports; stenographic or handwritten notices; stenographic or wire or magnetic recordings; studies; summaries; summaries of agreements; summaries or records of conversations or interviews or telephone conversations; summaries or reports of investigations or negotiations; surveys, telegrams; transcripts; trip reports; videotapes; voice recordings in any form; writings; and working papers.

**The term "document" also includes the original and every copy which is not identical to the original, specifically including every copy which contains any commentary, marginalia or notation whatsoever that does not appear on the original. The term "document" also includes all drafts of each of the foregoing.**

## Request for Production No. 1

Identify and produce each and every document, "penciled in" or otherwise, whether

submitted to the Court, claimants, or used as an internal working document, and whether written

-6-

or otherwise recorded, of each and every allocation of common benefit attorneys' fees in the captioned matter.

**Interrogatory No. 1**

Identify each and every person participating in the preparation of each document produced in response to the preceding Request; and to the extent the participants differed in the preparation of each document, please list the participants separately.

**Request for Production No. 2**

Identify and produce each and every document received from any claimant in response to any recommended allocation of common benefit fees, including acceptances, objections, or other reply.

**Interrogatory No. 2**

Identify each and every claimant with whom any member of the FAC (regardless of title) met informally (outside of the transcribed hearings) to discuss the claimant's allocation, and for each such meeting, identify the dates, participants, and substance of the discussion.

**Request for Production No. 3**

Identify and produce each and every document, reflecting or recording any individual claimant's points as described in the Point System Guide.

**Interrogatory No. 3**

For each document produced in response to the preceding Request, please: a) identify each and every person who assisted in its preparation; b) state the date on which the document was prepared; and c) state whether that draft or version was submitted to the Court or Mr. Juneau.

**Request for Production No. 4**

Identify and produce each and every document reflecting, recording, or otherwise defining the contents of each and every fund available for the payment of common benefit attorneys' fees, including any fund established by Court order, by Chapter 9 of the Master Settlement Agreement,  or otherwise reserved,  set-aside, contributed to, or under the control of the PSC, FAC, NPC, or available to those entities or any one of them to satisfy the claims of those seeking common benefit fees.  This request includes but is not limited to a complete accounting of all moneys deposited into any fund from which attorneys fees to claimants for common benefit work might be paid

**Interrogatory No. 4**

Identify any and all amounts available to satisfy any and all claims to common benefit fees, including interest thereon, identify the sources of those funds, and identify each and every person under whose administration and control those funds are held.

**Request for Production No. 5**

Identify and produce each and every document reflecting, recording, or otherwise relating to any agreement, understanding, or proposal between the PSC, FAC, NPC or any of its members, and themselves, each other, or any claimant, to any fund established for the payment of common benefit attorneys' fees or  to any allocation or distribution of funds identified in response to the preceding Interrogatory.  This Request includes but is not limited to any arrangement involving the Vioxx Litigation Consortium and the objectors represented by Michael Stratton as lead counsel; and it includes but is not limited to any notice to any claimants and any Court orders, rulings, or informal approvals of any such agreements.

**Interrogatory No. 5**

For each and every agreement, understanding, or proposal defined by the preceding Request, state whether any member of the PSC, FAC, or NPC objected to it, and if so, identify each such objector to each agreement, understanding, or proposal, and state the basis of the objection;  and state  whether the Court approved it,  identifying each and every Court order reflecting such approval.

**Request for Production No. 6**

Identify and produce any and all documents exchanged or circulated among the FAC, PSC, or NPC or any of their members, relating to the allocation or distribution of common benefit attorneys' fees, including but not limited to any documents referring or relating to the formation of the allocation committee, the work of the allocation committee, or any considerations relating to the work of the allocation committee. This Request includes but is not limited to any and all court orders or instructions (not contained in the public record) relating to allocations or distributions.

**Request for Production No. 7**

A. Identify and produce the pre-trial orders, exhibit lists, transcripts, and final judgments of each of the 17 Vioxx trials.

B. Produce a complete electronic version of the MDL trial packet, encompassing every item listed in the index previously provided, which version must be produced as previously organized and stored and susceptible of easy searches.

**Interrogatory No. 6**

A. List each and every deposition contained in the MDL repository, and identify each that

has been designated a "case-specific" deposition.

B. State whether you contend that any time reported by any claimant was not expended for the common benefit, was contrary to or detrimental to the common benefit, or was unauthorized by either the PSC, or any other Vioxx lead counsel, committee or subcommittee (federal or state) with authority to coordinate work effort in the jurisdiction in which it operated; and for each such hour identified,  state when and by whom such contention was first made, and whether each and every member of the FAC concurs in the arguable disallowance.

**Request for Production No. 8**

Identify and produce copies of all documents or work papers used to calculate the amount of common  benefit hours reported to the Court, and all costs incurred for the common benefit.

**Request for Production No. 9**

A. Identify and produce copies of all documents or work papers used to calculate the lodestar of common benefit hours, including the actual lodestars of each claimant and each member of each claimant's staff, as well as the average blended lodestar of $443.29.  The term "work papers" includes: 1) any physical documents or digital files, such as data produced by claimants in support of the hours expended and the claimed rates, together with any multiplier arguably applicable to those hours; and 2)  any analysis, reworking, reconfiguration, or reorganization related to such data, or supporting any alternate theory of common benefit work, entered in any digital database or Excel, Quattro Pro, or any other spreadsheet format, including but not limited to any analysis or consideration of hours, rates, or costs in relation to any factors recited by *Johnson v. Georgia Highway Express, Inc*., or taking into account geography of claimant, time period when hours were performed, expenses incurred, or forum in which the work

was performed.

B. Identify and produce all documents reflecting the amount of money contributed to a common benefit fund or spent toward the common benefit of all Vioxx cases.

**Interrogatory No. 7**

State which claimants maintained and submitted hours to the FAC and which claimants did not maintain and submit hours to the FAC

**Interrogatory No. 8**

State whether any member of the FAC at any time analyzed the considerations outlined by *Johnson v. Georgia Highway Express, Inc*. in calculating the fees it proposed to allocate to any claimant; and if so, identify each and every person conducting such analysis  and state when each such calculation was performed.

**Interrogatory No. 9**

With respect to each and every claimant whose fee recommendation was reduced after the initial  publication of the FAC's preliminary recommendations, explain in detail the methodology employed for each reduction, the factual basis for each reduction, the date on which each reduction was made, and the person(s) participating in each reduction.

**Request for Production No. 10**

Identify and produce any documents relating to or reflecting any communications with the Court or Pat Juneau concerning any aspect of common benefit attorneys' fees, whether related to the Court's order to cap attorneys fees at 32% , to enter an order creating a set-aside or assessment for common benefit fees or expenses, to award common benefit costs or fees to any claimants alleging that the performance of common benefit work or the incurring of common

benefit costs, or to any funds available for such purposes.

**Request for Production No. 11**

Identify and produce any and all documents reflecting or recording the terms of any and all settlements reached with Merck in any Vioxx-related litigation by the PSC, FAC, NPC, or any of its members, including third party litigation and settlements of Vioxx personal injury cases tried against Merck, and amount of attorneys fees earned., excepting any settlement or fee earned for any individuals compensated through the MSA.

**Interrogatory No. 10**

For each claimant, state whether any time currently billed to common benefit work was initially performed in whole or in part to benefit any claim other than a personal injury claim.  For all such transactions, state the case, the fee collected, and the lodestar.

**Request for Production No. 12**

Identify and produce all time records related to the billing to common benefit work of claims other than personal injury claims.

**Request for Production No. 13**

Identify and produce each and every note, letter, or email of any person who served on the FAC which contains the name of any specific Claimant (or any of their employees or members).

**Interrogatory No. 11**

State, in terms of dollar amount only, the amounts offered by Merck for settlement of the MDL litigation, from the first to the final offer, and for each offer reported, state the date of the offer and the claims (described generally) included within such offer.

**Interrogatory No. 12 and Request for Production No. 14**

State whether any member of the FAC consulted with an ethicist as to any action taken,

agreement entered into, or recommendation made with respect to the allocation of common benefit

attorneys' fees, any agreement made or proposed to or by any claimant, and any disbursement of

funds; and if so, identify the ethicist consulted, state the date(s) of each and every consultation, and

identify and produce each and every document recording or relating to any opinion offered

## CONSULTATION CERTIFICATE

     Undersigned counsel certifies that she has this date notified co-Lead counsel for the FAC of her desire to confer with them concerning the preceding requests and their responses thereto. The schedule currently contemplated by the Court and Special Master do not permit her to await their responses before filing the instant Motion to Compel.  However, she will continue to attempt resolution of these issues prior to February 24, 2011, the date on which the next meeting with the Special Master has been fixed, and on which expedited hearing of the motion has been requested.

Robert E. Arceneaux, La Bar No. 01199
ROBERT E. ARCENEAUX LLC
47 Beverly Garden Drive
Metairie, LA 70001
(504) 833-7533 office
(504) 833-7612 fax
rea7001@cox.net

/s/ Margaret E. Woodward
_____
Margaret E. Woodward, La. Bar No. #13677
3701 Canal Street, Suite C
New Orleans, Louisiana  70119
(504) 301-4333 office
(504) 301-4365 fax
mewno@aol.com

CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER

-13-

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion to Compel has been served on co-lead counsel Russ Herman and Christopher Seeger, and Liaison Counsel, Andy Birchfield, as well as Defendant's Liaison Counsel Phillip Wittmann, by e-mail, and  upon all parties by electronically uploading the same to Lexis Nexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, February 18, 2011.


/S/ Robert E. Arceneaux
_____

-14-