UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | |
| FILER: Robert E. Arceneaux/ | * | |
| Margaret Woodward | * | February 28, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN OPPOSITION TO THE FAC'S MOTION TO QUASH
BROWN GREER SUBPOENA *DUCES TECUM* AND FOR PROTECTIVE ORDER,
AND IN REPLY TO BROWN GREEN LETTER CONTESTING SUBPOENA**

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of the Objectors to the FAC's proposed fee allocation, in opposition to the FAC's Motion to Quash the Subpoena issued by Objectors to Brown Greer and Motion for Protective Order.

In Objectors' Motion for Additional Discovery and for Partial Summary Judgment, they explained at length the basis for their issuance of a records subpoena to Brown Greer. In short, the FAC's apparently unauthorized side deals and disbursement of common benefit funds in the Stratton matter raises questions how the moneys were disbursed from the Court-established trust funds, whether other side deals and disbursements have been made, and what moneys remain in the fund. The FAC has sought to block Objectors' access to that information by every avenue Objectors have taken. This memorandum opposes the FAC's Motion to Quash and for

–1–

Protective Order.

The FAC and PSC do not have standing to move to quash or to seek a protective order. "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought. This personal right or privilege standard has been recognized in numerous cases." Wright and Miller, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.), *citing inter alia Brown v. Braddick,*, 595 F.2d 961, 967 (C.A.5th, 1979). *See e.g., Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346 ( D.C.N.Y.1967) (The defendants, who were neither in possession nor control of documents involved in a subpoenas duces tecum, nor the persons to whom the subpoenas were directed, lacked standing to move to quash the subpoenas.).

The subpoena is not, as the FAC contends, overly broad. "[T]he movant has the burden of persuasion on a motion to quash a subpoena." Wright and Miller, *supra*. "The burden of proving that a subpoena duces tecum imposes an undue burden is on the person who seeks to have it quashed as unreasonable or oppressive. *Id.*  A court must evaluate all the circumstances and balance, inter alia, the requesting party's need for the information and the potential prejudice imposed on the requested party. *See Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1210 (Fed.Cir.1987).

> [A] subpoena need not necessarily be quashed because the documents themselves are voluminous and cumbersome and significant difficulty and expense will be involved in producing them. Subpoenas of this kind are inevitable in the type of highly complex cases that are now common in the federal courts. The problem has been exacerbated in recent years by the extraordinary growth of electronically stored information, and its importance in so many litigation contexts, which motivated the rulemakers to include references to that form of material in various

places in Rule 45 in 2006.

Wright and Miller *supra.*

The FAC and Brown Greer ("BG") have challenged the subpoena on the erroneous ground that it is overly broad and burdensome.1  In fact, the subpoena was thoughtfully and carefully drawn to be as narrow as possible but still include all necessary information.  It requested:

> 1. Copies of all bank statements of all accounts established by you, under your control, or for which you serve any administrative or clerical function, in connection with the duties and responsibilities given to you by court order in MDL 1657, In re Vioxx Products Liability Litigation;
>
> 2. Copies of all correspondence, letters, e-mails, or other documents, written or electronic, including Court orders , or directives of any person or entity, instructing disbursement of any funds from any such accounts to any attorney or law firm;
>
> 3. Copies of any and all documents or work papers or spreadsheets, written or electronic, which show the amount of money that has been paid to any individual or firm, or any tabulation of the total thereof, from any fund that is under your control or administration which was established for the payment of fees or costs to those individuals or firms who have made or will make a claim for entitlement to "common benefit" fees and expenses, including funds established by Court order or by Chapter 9 of the Master Settlement Agreement;
>
> 4. Copies of any and all documents or work papers or spreadsheets, written or electronic, which show the amount of money any individual or firm has contributed to the fund that has been awarded to the claimants for common benefit fees in the order of the Court dated October 19, 2010.

*See* Exhibit B hereto.

---

[1] Brown and Greer have written an e-mail stating that it will refuse to comply with the subpoena, but have filed no formal pleadings. *See* Exhibit A. The FAC  hand-filed a Motion to Quash and for Protective Order which bears Record Document Number 62411.

Item 1 relates to bank statements, which are stored electronically these days, and so their production is simply a matter of copying digital files. If they are not in BG's possession electronically, they are available from the bank in digital form, and so can easily be produced. Item 2 seeks disbursement orders and directives, but is limited to orders directing payments "to any attorney or law firms." Thus, the FAC and BG are simply wrong when they complain that the BG subpoena seeks thousands and thousands of documents relating to payments made to claimants (injured parties). Those payments are not covered by the subpoena. Likewise, Item 3 is limited to documents relating to "the payment of fees or costs to those individuals or firms who have made or will make a claim for entitlement to "common benefit" fees and expenses." Finally, Item 4 is similarly limited to producing documents which show how much attorneys, not claimants, have put into the common benefit fund: "the amount of money any individual or firm has contributed to the fund that has been awarded to the claimants for common benefit fees." The FAC cannot fairly makes its "chicken little" argument that "[i]n other words, Objectors seek documentation of all monies received and monies paid out for any purpose for the duration of the Vioxx Resolution Program." *See* Record Document 62411-1, at 1. The sky is not falling; the subpoena duces tecum doesn't seek production of millions of pieces of paper, nor everything that has been done in connection with the global settlement.

The BG subpoena seeks only relevant material. Bank statements are necessary to confirm exactly how much is available in the accounts that are to satisfy whatever allocation this Court ultimately determines is appropriate, including interest earned thereon. Such statements are also necessary to confirm the FAC's statement before Master Juneau on Feb 24, 2011 that no

–4–

payments have been made to any attorney except the Stratton $19,000,000 (and the refund of the 1.5% ordered by this Court on October 19, 2010) . Item 2 of the subpoena is meant to allow this Court to determine how the Stratton disbursement, or any other, happened – it seeks the authority under which Brown Greer has made disbursements out of a trust account over which it served as custodian. Item 3 asks for a list of payments made to attorneys or firms out the so-called "cost and fee funds," a request obviously relevant to the Stratton and other potential side deals.  Item 4 seeks information enabling the objectors to compare how much they contributed to these funds, in proportion to the amounts put in by other persons, including the FAC members and acceptors. Because, as Judge Jones wisely observed, "allocation means proportion," *see Re High Sulfur*, 517 F.3d 220, 232 (5th Cir. 2008), this information is relevant to a proper allocation of the fees.

Even if it were true that the subpoena is overly broad, it should be modified and narrowed; quashing it not an appropriate remedy.  "[M]odification of an overly broad subpoena might be preferable to quashing....' *Tiberi v. CIGNA* Ins. Co., 40 F.3d 110, 112 (5th Cir.1994).2

> The court has various options other than quashing the subpoena. The district judge has the power to modify the scope of the subpoena and thereby remove the objectionable features from it while preserving the rest of the subpoena.

*Wright and Miller, supra* (emphasis added). Here, if the subpoena is too broad, the Court should exclude those materials which it feels are not necessary, and enforce the balance. If it is unduly

---

²In *Tiberia*, the court held that while modification is preferable, courts are not required to use that lesser remedy first, and a court may use its discretion "by combining its decision to quash the overbroad subpoena with an expressed willingness to entertain thereafter a more narrowly-drawn subpoena."

–5–

burdensome, the Court may impose costs on the requesters to defray expenses. Neither of these concerns by the FAC and BG – if they are the real reason for their resistance to the subpoena – are insurmountable obstacles that dispense with the obligation of providing relevant discovery.

Finally, BG raises a host of specious objections in its letter, each of which is easily rejected. It raises the "confidentiality" issue, which Mr. Herman has said is already covered by previous court orders, and for which, in any event, we have provided a new order. BG argues that it does not know who the attorney "claimants" are (an unbelievable contention considering the information it supplied to the FAC in the FAC's work in making its allocation). However, those firms are listed in the Court's Order of Jan 20, 2011, to which the FAC's recommended allocation identify each and every claimant firm is attached. *See* Record Document 60391). BG asserts that "[w]e have no work papers or spreadsheets that provide the information you request. All the data is housed in the Vioxx Claims Database that we created for the Resolution Program and would have to be created from it. You have not specified any form in which electronically stored information would be produced, if produced." While we are not exactly sure what this means, it sounds as if BG is claiming that it might have to alter some of the columns and formulas in its Excel spread sheets in order to comply with the request, which is hardly burdensome. We do know, for a certainty, that Brown Greer has given to the FAC the exact amount each attorney claimant put into the common benefit fund, and also how much they received in settlements from the cases that they put into the Master Settlement Agreement ("MSA"), because Mr. Herman quoted those numbers to the undersigned when they met in Mr. Herman's office to discuss Eric Weinberg and Chris Placitella's allocation (presumably, Mr.

–6–

Herman got those numbers from Brown Greer).  BG claims that the information we seek is available from the final report it filed with the court (#29), and on its website. Attached as Exhibit C is the only page of that report that *might* contain information about the fees and costs paid and escrowed, and as can be seen, that page only gives an aggregate number, which is useless (except that it raises serious questions as to why the number is so much higher than would have been the product of the 8% assessment originally imposed by the Court).

The BG data is critical to an understanding of how the "trust" funds at issue in this litigation were handled, and also to provide the Court with information pertinent to a proper allocation – such as how much each applicant put into the fund, and also how much each applicant earned in other cases, both in the MSA and outside the MSA.  Brown Greer should be made to comply with the subpoena, either as served, or as modified by the Court.

Respectfully submitted,

/s/ Robert E. Arceneux

/s/ Margaret E. Woodward

_____
Robert E. Arceneaux, La Bar No. 01199
ROBERT E. ARCENEAUX LLC
47 Beverly Garden Drive
Metairie, LA 70001
(504) 833-7533 office
(504) 833-7612 fax
rea7001@cox.net

_____
Margaret E. Woodward, La. Bar No. #13677
3701 Canal Street, Suite C
New Orleans, Louisiana  70119
(504) 301-4333 office
(504) 301-4365 fax
mewno@aol.com

**CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER**

Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

**LIAISON COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion for Leave has been filed served on co-lead counsel Russ Herman and Christopher Seeger, and Liaison Counsel, Andy Birchfield, as well as Defendant's Liaison Counsel Phillip Wittmann, by U.S. Mail and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, February 28, 2011.

/S/ Robert E. Arceneaux
_____