UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | |
| FILER: Robert E. Arceneaux/ | * | |
| Margaret Woodward | * | February 28, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN OPPOSITION TO THE FAC'S MOTION TO QUASH
BROWN GREER SUBPOENA *DUCES TECUM* AND FOR PROTECTIVE ORDER,
AND IN REPLY TO BROWN GREEN LETTER CONTESTING SUBPOENA**

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of the Objectors to the FAC's proposed fee allocation, in opposition to the FAC's Motion to Quash the Subpoena issued by Objectors to Brown Greer and Motion for Protective Order.

In Objectors' Motion for Additional Discovery and for Partial Summary Judgment, they explained at length the basis for their issuance of a records subpoena to Brown Greer. In short, the FAC's apparently unauthorized side deals and disbursement of common benefit funds in the Stratton matter raises questions how the moneys were disbursed from the Court-established trust funds, whether other side deals and disbursements have been made, and what moneys remain in the fund. The FAC has sought to block Objectors' access to that information by every avenue Objectors have taken. This memorandum opposes the FAC's Motion to Quash and for

–1–

Protective Order.

The FAC and PSC do not have standing to move to quash or to seek a protective order. "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought. This personal right or privilege standard has been recognized in numerous cases." Wright and Miller, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.), *citing inter alia Brown v. Braddick,*, 595 F.2d 961, 967 (C.A.5th, 1979). *See e.g., Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346 ( D.C.N.Y.1967) (The defendants, who were neither in possession nor control of documents involved in a subpoenas duces tecum, nor the persons to whom the subpoenas were directed, lacked standing to move to quash the subpoenas.).

The subpoena is not, as the FAC contends, overly broad. "[T]he movant has the burden of persuasion on a motion to quash a subpoena." Wright and Miller, *supra*. "The burden of proving that a subpoena duces tecum imposes an undue burden is on the person who seeks to have it quashed as unreasonable or oppressive. *Id.* A court must evaluate all the circumstances and balance, inter alia, the requesting party's need for the information and the potential prejudice imposed on the requested party. *See Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1210 (Fed.Cir.1987).

> [A] subpoena need not necessarily be quashed because the documents themselves are voluminous and cumbersome and significant difficulty and expense will be involved in producing them. Subpoenas of this kind are inevitable in the type of highly complex cases that are now common in the federal courts. The problem has been exacerbated in recent years by the extraordinary growth of electronically stored information, and its importance in so many litigation contexts, which motivated the rulemakers to include references to that form of material in various

places in Rule 45 in 2006.

Wright and Miller *supra.*

The FAC and Brown Greer ("BG") have challenged the subpoena on the erroneous ground that it is overly broad and burdensome.1  In fact, the subpoena was thoughtfully and carefully drawn to be as narrow as possible but still include all necessary information.  It requested:

> 1. Copies of all bank statements of all accounts established by you, under your control, or for which you serve any administrative or clerical function, in connection with the duties and responsibilities given to you by court order in MDL 1657, In re Vioxx Products Liability Litigation;
>
> 2. Copies of all correspondence, letters, e-mails, or other documents, written or electronic, including Court orders , or directives of any person or entity, instructing disbursement of any funds from any such accounts to any attorney or law firm;
>
> 3. Copies of any and all documents or work papers or spreadsheets, written or electronic, which show the amount of money that has been paid to any individual or firm, or any tabulation of the total thereof, from any fund that is under your control or administration which was established for the payment of fees or costs to those individuals or firms who have made or will make a claim for entitlement to "common benefit" fees and expenses, including funds established by Court order or by Chapter 9 of the Master Settlement Agreement;
>
> 4. Copies of any and all documents or work papers or spreadsheets, written or electronic, which show the amount of money any individual or firm has contributed to the fund that has been awarded to the claimants for common benefit fees in the order of the Court dated October 19, 2010.

*See* Exhibit B hereto.

---

[1]Brown and Greer have written an e-mail stating that it will refuse to comply with the subpoena, but have filed no formal pleadings. *See* Exhibit A. The FAC  hand-filed a Motion to Quash and for Protective Order which bears Record Document Number 62411.

Item 1 relates to bank statements, which are stored electronically these days, and so their production is simply a matter of copying digital files. If they are not in BG's possession electronically, they are available from the bank in digital form, and so can easily be produced. Item 2 seeks disbursement orders and directives, but is limited to orders directing payments "to any attorney or law firms." Thus, the FAC and BG are simply wrong when they complain that the BG subpoena seeks thousands and thousands of documents relating to payments made to claimants (injured parties). Those payments are not covered by the subpoena. Likewise, Item 3 is limited to documents relating to "the payment of fees or costs to those individuals or firms who have made or will make a claim for entitlement to "common benefit" fees and expenses." Finally, Item 4 is similarly limited to producing documents which show how much attorneys, not claimants, have put into the common benefit fund: "the amount of money any individual or firm has contributed to the fund that has been awarded to the claimants for common benefit fees." The FAC cannot fairly makes its "chicken little" argument that "[i]n other words, Objectors seek documentation of all monies received and monies paid out for any purpose for the duration of the Vioxx Resolution Program." *See* Record Document 62411-1, at 1. The sky is not falling; the subpoena duces tecum doesn't seek production of millions of pieces of paper, nor everything that has been done in connection with the global settlement.

The BG subpoena seeks only relevant material. Bank statements are necessary to confirm exactly how much is available in the accounts that are to satisfy whatever allocation this Court ultimately determines is appropriate, including interest earned thereon. Such statements are also necessary to confirm the FAC's statement before Master Juneau on Feb 24, 2011 that no

–4–

payments have been made to any attorney except the Stratton $19,000,000 (and the refund of the 1.5% ordered by this Court on October 19, 2010) . Item 2 of the subpoena is meant to allow this Court to determine how the Stratton disbursement, or any other, happened – it seeks the authority under which Brown Greer has made disbursements out of a trust account over which it served as custodian. Item 3 asks for a list of payments made to attorneys or firms out the so-called "cost and fee funds," a request obviously relevant to the Stratton and other potential side deals.  Item 4 seeks information enabling the objectors to compare how much they contributed to these funds, in proportion to the amounts put in by other persons, including the FAC members and acceptors. Because, as Judge Jones wisely observed, "allocation means proportion," *see Re High Sulfur*, 517 F.3d 220, 232 (5th Cir. 2008), this information is relevant to a proper allocation of the fees.

Even if it were true that the subpoena is overly broad, it should be modified and narrowed; quashing it not an appropriate remedy.  "[M]odification of an overly broad subpoena might be preferable to quashing....' *Tiberi v. CIGNA* Ins. Co., 40 F.3d 110, 112 (5th Cir.1994).2

> The court has various options other than quashing the subpoena. The district judge has the power to modify the scope of the subpoena and thereby remove the objectionable features from it while preserving the rest of the subpoena.

*Wright and Miller, supra* (emphasis added). Here, if the subpoena is too broad, the Court should exclude those materials which it feels are not necessary, and enforce the balance. If it is unduly

---

[2]In *Tiberia*, the court held that while modification is preferable, courts are not required to use that lesser remedy first, and a court may use its discretion "by combining its decision to quash the overbroad subpoena with an expressed willingness to entertain thereafter a more narrowly-drawn subpoena."

burdensome, the Court may impose costs on the requesters to defray expenses. Neither of these concerns by the FAC and BG – if they are the real reason for their resistance to the subpoena – are insurmountable obstacles that dispense with the obligation of providing relevant discovery.

Finally, BG raises a host of specious objections in its letter, each of which is easily rejected. It raises the "confidentiality" issue, which Mr. Herman has said is already covered by previous court orders, and for which, in any event, we have provided a new order. BG argues that it does not know who the attorney "claimants" are (an unbelievable contention considering the information it supplied to the FAC in the FAC's work in making its allocation). However, those firms are listed in the Court's Order of Jan 20, 2011, to which the FAC's recommended allocation identify each and every claimant firm is attached. *See* Record Document 60391). BG asserts that "[w]e have no work papers or spreadsheets that provide the information you request. All the data is housed in the Vioxx Claims Database that we created for the Resolution Program and would have to be created from it. You have not specified any form in which electronically stored information would be produced, if produced." While we are not exactly sure what this means, it sounds as if BG is claiming that it might have to alter some of the columns and formulas in its Excel spread sheets in order to comply with the request, which is hardly burdensome. We do know, for a certainty, that Brown Greer has given to the FAC the exact amount each attorney claimant put into the common benefit fund, and also how much they received in settlements from the cases that they put into the Master Settlement Agreement ("MSA"), because Mr. Herman quoted those numbers to the undersigned when they met in Mr. Herman's office to discuss Eric Weinberg and Chris Placitella's allocation (presumably, Mr.

–6–

Herman got those numbers from Brown Greer). BG claims that the information we seek is available from the final report it filed with the court (#29), and on its website. Attached as Exhibit C is the only page of that report that *might* contain information about the fees and costs paid and escrowed, and as can be seen, that page only gives an aggregate number, which is useless (except that it raises serious questions as to why the number is so much higher than would have been the product of the 8% assessment originally imposed by the Court).

The BG data is critical to an understanding of how the "trust" funds at issue in this litigation were handled, and also to provide the Court with information pertinent to a proper allocation – such as how much each applicant put into the fund, and also how much each applicant earned in other cases, both in the MSA and outside the MSA. Brown Greer should be made to comply with the subpoena, either as served, or as modified by the Court.

Respectfully submitted,

/s/ Margaret E. Woodward
_____

/s/ Robert E. Arceneux
_____   Margaret E. Woodward, La. Bar No. #13677
Robert E. Arceneaux, La Bar No. 01199   3701 Canal Street, Suite C
ROBERT E. ARCENEAUX LLC   New Orleans, Louisiana  70119
47 Beverly Garden Drive   (504) 301-4333 office
Metairie, LA 70001   (504) 301-4365 fax
(504) 833-7533 office   mewno@aol.com
(504) 833-7612 fax
rea7001@cox.net

**CO-LEAD COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER**

Pascal F. Calogero, Jr., La. Bar No. 03802
AJUBITA, LEFTWICH & SALZER, L.L.C.
1100 Poydras Street
New Orleans LA 70163-1950
(504) 582-2300 office
(504) 582-2310 fax
pcalogero@alsfirm.com

**LIAISON COUNSEL FOR OBJECTORS IDENTIFIED IN FEB. 8, 2011 ORDER**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion for Leave has been filed served on co-lead counsel Russ Herman and Christopher Seeger, and Liaison Counsel, Andy Birchfield, as well as Defendant's Liaison Counsel Phillip Wittmann, by U.S. Mail and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, on this date, February 28, 2011.

/S/ Robert E. Arceneaux
_____

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Louisiana

| IN RE: VIOXX ) | |
|---|---|
| *Plaintiff* ) | |
| v. ) | Civil Action No.  MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION ) | |
| ) | (If the action is pending in another district, state where: ) |
| *Defendant* ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:   BROWN GREER, PC

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:   SEE ATTACHMENT

| Place: Margaret E. Woodward, 3701 Canal St., Ste. C, New Orleans, LA., or via email to mewno@aol.com | Date and Time: 02/28/2011 1:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   02/18/2011

*CLERK OF COURT*

OR

_____     s/ Margaret Woodward
*Signature of Clerk or Deputy Clerk*     *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  those persons identified as Objectors in Feb. 8, 2011 Court Order , who issues or requests this subpoena, are:

Margaret E. Woodward, 3701 Canal St., Suite C, New Orleans, LA. 70119, (504) 301-4333, mewno@aol.com,  co-lead counsel for Objectors

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  MDL NO. 1657

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Case 2:05-md-01657-EEF-DEK   Document 62589   Filed 02/28/11   Page 11 of 17

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

   **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information;
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
     **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION  L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL CASES | * | MAG. JUDGE KNOWLES |
| | * | |
| FILER: Robert E. Arceneaux/Margaret Woodward | * | February 21, 2011 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ATTACHMENT A TO BROWN GREER PC SUBPOENA DUCES TECUM**

1. Copies of all bank statements of all accounts established by you, under your control, or for which you serve any administrative or clerical function, in connection with the duties and responsibilities given to you by court order in MDL 1657, *In re Vioxx Products Liability Litigation*;

2. Copies of all correspondence, letters, e-mails, or other documents, written or electronic, including Court orders , or directives of any person or entity, instructing disbursement of any funds from any such accounts to any attorney or law firm;

3. Copies of any and all documents or work papers or spreadsheets, written or electronic, which show the amount of money that has been paid to any individual or firm, or any tabulation of the total thereof,  from any fund that is under your control or administration which was established for the payment of fees or costs to those individuals or firms who have made or will make a claim for entitlement to "common benefit" fees and expenses, including funds established by Court order or by Chapter 9 of the Master Settlement Agreement;

4. Copies of any and all documents or work papers or spreadsheets, written or electronic, which show the amount of money any individual or firm has contributed to the fund that has been awarded to the claimants for common benefit fees in the order of the Court dated October 19, 2010.

**Subject:** Subpoena to BrownGreer
**From:** "Orran L. Brown" <OBrown@browngreer.com>
**Date:** Tue, 22 Feb 2011 17:12:46 -0500
**To:** "'Mewno@aol.com'" <Mewno@aol.com>
**CC:** "andy.birchfield@beasleyallen.com" <andy.birchfield@beasleyallen.com>, "rherman@hhkc.com" <rherman@hhkc.com>, "cseeger@seegerweiss.com" <cseeger@seegerweiss.com>, "'pwittmann@stonepigman.com'" <pwittmann@stonepigman.com>, "'paj@juneaudavid.com'" <paj@juneaudavid.com>, "'rea7001@cox.net'" <rea7001@cox.net>, "'pcalogero@alsfirm.com'" <pcalogero@alsfirm.com>

Ms. Woodward:

We received your emailed subpoena requesting BrownGreer to produce, on seven days' notice, voluminous records and electronically stored information relating to the proceedings over the distribution of common benefit fees and expenses. We object to this subpoena and to the production or inspection it would require and ask that you withdraw it. Here are several of the grounds for this objection:

(1)     We have concluded the administration of the Vioxx Resolution Program and rendered our Final Report to the Court in July 2010. We are not a party and are not involved in any proceedings before the Court concerning common benefit fees or expenses.

(2)     The scope of the materials you request is overly broad and would impose an excessive and unreasonable burden on BrownGreer if production were required. You ask for all documents, emails, and other records relating to all payments under the Vioxx Program, which involved a number of rounds of payments of different types and at many different times to over 1,000 Primary Counsel involving thousands of claimants.

(3)     Production is not possible on a seven-day timeframe and such a request is unreasonable.

(4)     The payment information you request is confidential under the terms of the Vioxx Settlement Agreement and we cannot produce it without permission from the United States District Court for the Eastern District of Louisiana.

(5)     The information you seek is available to you through other less burdensome means.

(6)     We do not know what law firms have applied for an award of common benefit fees or expenses and thus cannot comply with your request.

(7)     Your request is vague and ambiguous. For example, we do not understand what this means in Paragraph 4 of your request: "the amount of money any individual or firm has contributed to the fund that has been awarded to the claimants for common benefit fees."

(8)     We have no work papers or spreadsheets that provide the information you request. All the data is housed in the Vioxx Claims Database that we created for the Resolution Program and would have to be created from it. You have not specified any form in which electronically stored information would be produced, if produced.

(9)     That Vioxx claims database is confidential and cannot be accessed by third parties without permission from the United States District Court for the Eastern District of Louisiana.

(10)    You have not made any provision for the costs in time it would require for BrownGreer, a

non-party to this fee dispute, to prepare and produce any of this material.

Please consider this a written objection to your subpoena under Fed.R.Civ.P.45(c)(2)(B).  I have copied on this email the counsel or parties whom you copied on your email sending your subpoena.

**Orran L. Brown**

**BROWNGREER PLC**
115 S. 15th Street, Suite 400
Richmond, Virginia  23219-4209
Direct Dial:  (804) 521-7201
Facsimile:  (804) 521-7299
www.browngreer.com

*This electronic mail is intended to be received and read only by certain individuals. It may contain information that is privileged or protected from disclosure by law. If it has been misdirected, or if you suspect you received this in error, please notify me by replying and then delete this message and your reply. These restrictions apply to any attachment to this email.*

**Subject:** RE: Subpoena to BrownGreer
**From:** "Orran L. Brown" <OBrown@browngreer.com>
**Date:** Tue, 22 Feb 2011 18:04:30 -0500
**To:** "'Mewno@aol.com'" <Mewno@aol.com>
**CC:** "paj@juneaudavid.com" <paj@juneaudavid.com>, "pcalogero@alsfirm.com" <pcalogero@alsfirm.com>, "rherman@hhkc.com" <rherman@hhkc.com>, "cseeger@seegerweiss.com" <cseeger@seegerweiss.com>, "andy.birchfield@beasleyallen.com" <andy.birchfield@beasleyallen.com>, "rea7001@cox.net" <rea7001@cox.net>

I am not sure what evidence you feel all this information would lead you to discover, or what your purpose is in asking for all data on all payments to all claimants and others from the funds created under the Vioxx Settlement Agreement. It seems that the only real issue is the amount of funds remaining to be awarded as Common Benefit Fees. The parties to the Vioxx Settlement Agreement have that information.

Our Final Report that we submitted on July 27, 2010, is a public document available on the Vioxx website, www.browngreer.com/vioxxsettlement. Go to that website and click on the button in the left menu called "MDL Status Conference Reports." There you can see that Report and the 28 other Reports we submitted over the course of the Program. I do not think you need Mr. Herman to send it to you and I doubt Mr. Herman has any other of the information requested in your subpoena. The Final Report (#29) on July 27 shows you the dollars paid from the MI Fund and the IS Fund.

Orran Brown

---

**From:** Mewno@aol.com [mailto:Mewno@aol.com]
**Sent:** Tuesday, February 22, 2011 5:40 PM
**To:** Orran L. Brown
**Cc:** paj@juneaudavid.com; pcalogero@alsfirm.com; rherman@hhkc.com; cseeger@seegerweiss.com; andy.birchfield@beasleyallen.com; rea7001@cox.net
**Subject:** Re: Subpoena to BrownGreer

In a message dated 2/22/2011 4:13:00 P.M. Central Standard Time, OBrown@browngreer.com writes:

> 5)      The information you seek is available to you through other less burdensome means.

Dear Mr. Brown,

I don't want to burden you or your firm unnecessarily. Please advise whence the information may be otherwise obtained. Please be assured too, that the 7-day time limit on your response represented our attempt to comply with a tight schedule imposed by the court.

By copy of this letter, I am asking Mr. Herman to provide us with a copy of your July 2010 report, together with any materials in his possession that may be responsive to our subpoena.

I expect to meet with Mr. Herman tomorrow, and the court-appointed Special Master, Pat Juneau, on Thursday, February 24. I will advise after the later meeting whether we will be able to withdraw our request of you. Thanking you for your prompt response and awaiting your further advices on the availability of the information from other sources, I am,

Margaret Woodward

BROWNGREER ‖ PLC

# VIOXX CLAIMS ADMINISTRATOR

# COURT REPORT NO. 29
## July 27, 2010

**BROWNGREER ‖ PLC**

# SETTLEMENT FUND RECONCILIATION

| 1. | Starting Fund | $4,850,000,000 |
|---|---|---|
| 2. | MI Payments Issued | $3,609,160,215 |
| 3. | IS Payments Issued | $696,300,966 |
| 4. | EI Payments Issued | $47,690,883 |
| 5. | Unpaid MI/IS Claims | $16,604,008 |
| 6. | Unpaid EI Claims | $262,159 |
| 7. | Withholdings | $479,981,769 |
| 8. | Unallocated Funds | $0 |

71